# EXHIBIT D

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>        as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>        Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>        as a representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>        Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY, PEAJE INVESTMENTS LLC, and THE BANK OF NEW YORK MELLON, as Fiscal Agent<br><br>        Defendants. | PROMESA<br>Title III<br><br>Adv. Proc. 20-00005-LTS |

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**RESPONSES AND OBJECTIONS OF AAFAF (IN ITS OWN CAPACITY AND AS
SUCCESSOR TO GDB AS FISCAL AGENT TO GDB), HTA, AND TREASURY TO THE
SUBPOENAS OF DEFENDANTS FOR THE PRODUCTION OF DOCUMENTS IN
<ins>CONNECTION WITH HTA REVENUE BOND ADVERSARY PROCEEDING</ins>**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure made applicable to this adversary proceeding by Rule 9016 of the Federal Rules of Bankruptcy Procedure pursuant to Section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), in its own capacity, and as successor to the Government Development Bank for Puerto Rico ("GDB") as fiscal agent, the Puerto Rico Highways and Transportation Authority ("HTA"), and the Puerto Rico Department of Treasury ("Treasury") (together, the "Government Entities") hereby respond and object (the "Responses and Objections") to the subpoenas of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company (together, the "Defendants") in connection with the HTA Revenue Bond Adversary Proceeding (Adv. Proc. No. 20-00005) (the "Subpoenas"), which were served upon the Government Entities, respectively, on February 8, 2021, and which include document requests (collectively, the "Requests," and each a "Request") attached as an exhibit thereto.

## PRELIMINARY STATEMENT

The Government Entities have not yet completed their investigation and review of documents.  These Responses and Objections, and any subsequent document productions, are based and will be based only upon the information that is currently available to and specifically known to the Government Entities as of the date hereof.  The Government Entities reserve the right to amend or supplement these Responses and Objections at any time in light of future investigation, research, or analysis, and also expressly reserve the right to rely on, at any time, including in any other proceeding, subsequently discovered information, or information omitted from these Responses and Objections as a result of mistake, error, or inadvertence.  The Government Entities have made reasonable efforts to respond to the Subpoenas, to the extent they have not been

objected to, as the Government Entities understand and interpret the Subpoenas.  If the Defendants subsequently assert a meritorious interpretation of the Subpoenas that differs from the Government Entities' interpretation, the Government Entities reserve the right to supplement these Reponses and Objections.

## GENERAL OBJECTIONS

1.      The Government Entities object to the Subpoenas, and to each and every Request, as unduly burdensome to the extent they seek information beyond the information the Court authorized Defendants to seek in the *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, dated January 20, 2021 [Case No. 20-00005, ECF No. 129] ("HTA 56(d) Order").   The Government Entities further object to the Subpoenas, and to each and every Request, to the extent they purport to impose burdens inconsistent with, not otherwise authorized by, or exceeding those required by the Federal Rules of Civil Procedure as incorporated into the Federal Rules of Bankruptcy Procedure, the local rules for the United States Bankruptcy Court for the District of Puerto Rico, or this Court's chambers practices and case management orders (collectively, together with the HTA 56(d) Order, the "Governing Rules").  The Government Entities will construe and respond to the Subpoenas and Requests in a manner consistent with its obligations under the Governing Rules, and not otherwise.

2.      The Government Entities object to the Subpoenas, and to each and every Request, as unduly burdensome to the extent they seek information irrelevant to the parties' claims or defenses applicable to the *Notice of Motion and Motion of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056*

4

*for Partial Summary Judgment Disallowing Claims*, dated April 28, 2020 [Case No. 20-00005, ECF No. 55], or proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).

3.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they seek documents or information not in its possession, custody, or control.  Subject to the other general and specific objections set forth herein, the Government Entities will use reasonable diligence to obtain responsive documents in their possession, custody, or control based on an examination of those files reasonably expected to yield responsive documents.  Documents produced by the Government Entities in response to specific Requests should not be construed as a representation that every document in their possession, custody, or control has been examined.

4.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they seek materials already provided to Defendants in connection with the *Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative, Adequate Protection*, dated January 16, 2020 [Case No. 17-03567, ECF No. 673] (the "HTA Lift Stay Motion").  Pursuant to the 56(d) Order, those documents will not be produced again in this proceeding.

5.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they place an unreasonable burden on the Government Entities, including without limitation by seeking documents and information equally or more readily available from public sources or otherwise already available to Defendants.

6.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they require the search of archives, backup files, or any information not readily accessible, including but not limited to any audio, video, electronic recordings, telephone records,

calendar entries, text messages or similar forms of electronic messaging, which would be unduly burdensome and not proportional to the needs of the case.

7.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they expressly or impliedly seek documents or information protected from disclosure by the Attorney-Client Privilege, the Attorney Work-Product Doctrine, the Executive Privilege, the Deliberative Process Privilege, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  Nothing in these Responses and Objections is intended as, nor shall in any way be deemed, a waiver of any of these privileges, doctrines, or immunities.  Documents and information protected by these privileges, doctrines, or immunities are not subject to disclosure, and the Government Entities will not provide them.  The Government Entities intend to and do assert any and all such privileges with respect to all such documents and information.  The inadvertent production of any such protected document or other item shall not constitute a waiver of any privilege or protection or any other ground for objection to discovery with respect to the information contained therein, nor shall such inadvertent production waive the Government Entities' right to object to the use of any such document or the information contained therein in connection with this proceeding or any subsequent proceeding. Upon notification that such disclosure was inadvertent, the document(s)/item(s) and any copies thereof shall be returned or destroyed immediately.

8.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they (i) imply the existence of facts or circumstances that do not or did not exist, or (ii) state or assume legal or factual conclusions.  By providing these Responses and Objections, the Government Entities do not admit any factual or legal premise in the Subpoenas.

9.     To the extent any term defined or used in the Subpoenas and Requests is used in responding to the Subpoenas and Requests, it is not accepted or conceded that any such term or definition is appropriate, descriptive, or accurate.

10.     The Government Entities object to the Subpoenas, and to each and every Request, as unduly burdensome to the extent they are cumulative or duplicative of other discovery requests.

11.     The Government Entities object to the definition of "Act 30 and 31 Revenues" to the extent it asserts a legal conclusion that revenues collected pursuant to Act No. 30-2013 and Act No. 31-2013 are pledged to the repayment of HTA Bonds.  By responding to these Requests, the Government Entities do not concede the relevance of Act 30 and 31 Revenues to the above-captioned adversary proceeding.

12.     The Government Entities object to the definition of the term "Bond Documents" as vague and overbroad, particularly insofar as it includes documents "relating to" or "otherwise related to" the HTA Bonds, and "statutes, executive orders, or official memoranda governing the Excise Taxes."  The Government Entities will construe the term "Bond Documents" to refer to the Bond Resolutions and the official statements.

13.     The Government Entities object to the definition of the term "BPPR" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "BPPR" to mean Banco Popular de Puerto Rico and its employees reasonably likely to possess information relevant to this proceeding.

14.     The Government Entities object to the definition of the term "Communication" to the extent it means "oral" transmittal of information, including "any document evidencing the date, participants, subject matter, and consent of any such oral communication," on the grounds it is

vague, overly broad, unduly burdensome, and not proportional to the needs of the case, and seeks to impose requirements or obligations beyond the scope of, or different from, those imposed by the Governing Rules.

15. The Government Entities object to the definition of the term "Excise Taxes" as overbroad and beyond the scope of discovery allowed in the HTA 56(d) Order. The Government Entities will construe the term "Excise Taxes" to refer to the HTA Allocable Revenues as defined in the *Memorandum Of The Commonwealth Of Puerto Rico, By And Through The Financial Oversight And Management Board, In Support Of Motion Pursuant To Bankruptcy Rule 7056 For Partial Summary Judgment Disallowing Claims*, dated April 28, 2020 [Case No. 20-00005, ECF No. 56].

16. The Government Entities object to the definition of "Flow of Funds" or "Flow" as vague and overbroad to the extent it refers to an "ultimate disposition" of funds. The Government Entities further object to the definition as unintelligible to the extent that it presumes cash proceeds are deposited into a "Fund" or other accounting designation. The Government Entities will construe "Flow of Funds" and "Flow" to encompass (i) the bank accounts previously identified by bank account number in the flow of funds summary provided in connection with the HTA Lift Stay Motion (Case No. 17-3283, ECF No. 13004-48) ("HTA Flow of Funds Summary"), (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present.

17. The Government Entities object to the definitions of "Fund," "Fund 278," and "HTA Accounts" to the extent they incorrectly presume particular accounting designations, such as PRIFAS fund code 278, have the same documentation (such as account statements) associated with deposit accounts.

8

18.     The Government Entities object to the definition of "HTA Pledged Revenues" on the ground that it asserts a legal conclusion.  By responding to the Requests, the Government Entities do not concede any of the Excise Taxes or Toll Revenues are pledged or that Defendants have a security interest in those revenues.

19.     The Government Entities object to the definition of PRIFAS as overbroad on the ground that it includes PRIFAS and "any other accounting and fiscal control systems used by the Commonwealth, the Department of Treasury, and HTA."  The Government Entities will construe PRIFAS to refer to the Puerto Rico Integrated Financial Accounting System.

20.     The Government Entities object to the definition of the term "Resolutions" as overbroad to the extent it includes any resolutions other than the 1968 and 1998 Resolutions.  In responding to the Requests, the Government Entities will construe "Resolutions" to refer to the 1968 and 1998 Resolutions.

21.     The Government Entities object to the definition of the term "Signatories" on the ground that the phrase "otherwise manifested their consent" is vague and ambiguous.  The Government Entities will construe the term "Signatories" to mean "any and all Persons, individuals, entities, corporations, agencies, instrumentalities, or representatives thereof, who have signed a Document as a party, or on behalf of a party."

22.     The Government Entities object to the definition of the term "Treasury" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "Treasury" to mean Treasury and its employees reasonably likely to possess information relevant to this proceeding.

9

23.     The Government Entities object to the definition of the term "TSA" to the extent it includes bank accounts within the Treasury Single Account that never received the Excise Taxes. The Government Entities will construe the term "Treasury Single Account" to refer to the TSA Operational bank account (depending on the time period, either GDB -0006 or BPPR -9458) and the TSA Colecturia bank account (BPPR -5191).

24.     The Government Entities object to the definition of the terms "You" and "Your" as overbroad because they encompass individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "You" and "Your" to mean the Government Entities, as applicable, and their employees reasonably likely to possess information relevant to this proceeding.

25.     The Government Entities object to each and every Instruction to the extent that they require procedures that are inconsistent with, not authorized by, or exceed those required by the Governing Rules.

26.     The Government Entities object to Instruction No. 1 to the extent it calls for the production of documents not within their possession, custody, or control.  *See Quinones v. U. of Puerto Rico*, 2015 WL 3604152, at *5 n.4 (D.P.R. June 8, 2015) (noting a party's obligation to produce documents in its possession, custody or control).

27.     The Government Entities object to Instruction No. 7, which seeks to require the Government Entities to produce documents even if "a document has or will be produced by another plaintiff, third party, or other party to these or related proceedings," on the ground that this instruction exceeds what is permitted by the Governing Rules.  The Government Entities are not required to produce documents that have already been produced and reserve the right to direct Defendants to documents produced or that will be produced by other parties.

28.     The Government Entities object to Instruction No. 8 because it purports to impose burdens that differ from or exceed those imposed by the Governing Rules.  The Government Entities object to providing a privilege log unless necessary to substantiate a claim of privilege, consistent with the Governing Rules.  The Government Entities expressly reserve the right to provide a categorical privilege log.

29.     Any documents that the Government Entities produce will only be produced subject to the *Stipulation and Amended Protective Order*, dated June 17, 2020 [Case No. 20-00005, ECF No. 76] (the "Protective Order") and with the same production specifications that were used for the productions made in connection with the HTA Lift Stay Motion.

30.     The above General Objections are incorporated into each of the following specific Objections and Responses.

## SPECIFIC OBJECTIONS AND RESPONSES

## REQUEST FOR PRODUCTION NO. 1:

All Documents governing the terms of the HTA Bonds, including all versions of the Bond Resolutions, and documents identifying the Signatories to and/or those bound by the Bond Resolutions, from creation to present.  This request includes, without limitation,

a) all versions of Bond Resolutions relating to HTA Bonds;

b) all amendments and supplements to such Bond Resolutions;

c) any other Resolutions adopted in connection with the HTA Bonds;

d) any Resolution, act, approval or decision of HTA's Board of Directors issued concerning: (1) the authority of the Executive Director to enter into the Security Agreement, dated as of February 7, 2002, or (2) any security interest, pledge or other property interest in respect of the HTA Bonds;

e) all closing binders relating to all of the HTA Bonds (and any amendments and supplements thereto); and

f) all Documents identifying the Signatories to and/or those bound by such Bond Resolutions or Resolutions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

In addition to their General Objections, incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  The Government Entities further object to this Request on the ground that the word "governing" is undefined and requires the Government Entities to draw legal conclusions or make legal determinations to ascertain which documents are sought.  In responding to this Request, the Government Entities will construe the phrase "governing the terms of the HTA Bonds" to refer to the 1968 and 1998 Resolutions. The Government Entities further object to this Request to the extent its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed in the HTA 56(d) Order.  Further, subparts (a), (c), (d), and (e) are improper on the ground that they seek documents and communications "relating to," "in connection with," and "concerning" the HTA Bonds, rather than documents governing the HTA Bonds.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF directs Defendants to the bound volumes for the bonds insured by Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company that it produced in connection with the HTA Lift Stay Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, directs Defendants to the materials produced in connection with

the HTA Lift Stay Motion, and will produce Bond Documents and non-privileged documents identifying signatories to and/or those bound by the Bond Resolutions to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in GDB's archived file of HTA-related materials.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: any responsive documents Treasury may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent.  Accordingly, Treasury directs Defendants to the response of AAFAF, in its capacity as successor to GDB as fiscal agent.

Subject to and without waiving the foregoing general and specific objections, HTA responds as follows: any responsive documents HTA may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent.  Accordingly, HTA directs Defendants to the response of AAFAF, in its capacity as successor to GDB as fiscal agent.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents governing the Flow of Excise Taxes and HTA Pledged Revenues following their collection by the Commonwealth, including all Documents governing Fund 278 and its sub-accounts, and any other accounts or designated Funds (including the TSA) into or through which such funds are or have been transferred (including the HTA Accounts), including without limitation contracts, side agreements, security agreements, account control agreements, account opening documents, account statements, deeds of trust on accounts, or supplements thereto, and identifying the Signatories to and/or those bound by such agreements, from creation of any such account, Fund, Fund sub-account and Fund designation to present.  This request includes, without limitation,

   a)     all such Documents governing or describing the process of deposit of Excise Taxes and HTA Pledged Revenues to any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts);

   b)     all such Documents governing or describing the process of retention by the Commonwealth of Excise Taxes and HTA Pledged Revenues;

    c)     all Documents governing or describing the process of transfer of Excise Taxes and HTA Pledged Revenues to and from any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts);

    d)     all Documents governing or describing the process of such retentions and deposits, withdrawals, and transfers to and from Fund 278 and its sub-accounts; and

    e)     all Documents relating to the opening or establishment of any account, Fund, Fund sub-account and Fund designation into which or from which Excise Taxes and HTA Pledged Revenues was deposited, withdrawn or transferred (including the HTA Accounts).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

In addition to their General Objections, incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. The Government Entities further object to this Request to the extent it seeks documents "from creation of any such account, Fund, Fund sub-account and Fund designation to present" as overbroad. Documents will be produced only from January 1, 2014 onward. The Government Entities further object to this Request to the extent particular accounting designations, such as PRIFAS fund code 278, do not have the same documentation (such as "account statements") associated with deposit accounts.

The Government Entities further object to this Request on the ground that the word "governing" is undefined and requires the producing parties to draw legal conclusions or make legal determinations to ascertain which documents are sought. The Government Entities will construe the phrases "governing the Flow of Excise Taxes and HTA Pledged Revenues," "governing . . . the process of deposit of Excise Taxes and HTA Pledged Revenues," "governing . . . the process of retention by the Commonwealth of Excise Taxes and HTA Pledged Revenues," "governing . . . the process of transfer of Excise Taxes and HTA Pledged Revenues to and from

any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts),"
and "governing . . . the process of such retentions and deposits, withdrawals, and transfers to and
from Fund 278 and its sub-accounts" to refer to the 1968 and 1998 Resolutions, and regulations,
circular letters, policies, procedures, or other official documents directing the transfer of Excise
Taxes and Toll Revenues.  The Government Entities further object to this Request on the ground
that its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed
in the HTA 56(d) Order.  Further, subparts (a), (b), (c), (d), and (e) are overbroad, unduly
burdensome and beyond the scope of discovery allowed in the HTA 56(d) Order to the extent they
seek all documents "describing" or "relating to" the additional topics set forth in those subparts
rather than documents governing the topic authorized by the HTA 56(d) Order.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in
its own capacity, responds as follows: AAFAF directs Defendants to the HTA Flow of Funds
Summary, and the bank account statements, opening materials, transfer orders, bound volumes,
Treasury regulation, reporting for revenues that have the Fund 278 accounting designation, and
workbook identifying PRIFAS codes, which were produced in connection with the HTA Lift Stay
Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in
its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as
successor to GDB as fiscal agent, directs Defendants to its response to Request No. 1.  In addition,
AAFAF, in its capacity as successor to GDB as fiscal agent, will produce the following materials
to the extent those materials were not already provided in connection with the HTA Lift Stay
Motion and may be located in GDB's account-records archive or GDB's archived file of HTA-
related materials:

15

- from January 1, 2014 onward, bank account statements for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- bank account opening materials for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present.

- from January 1, 2014 onward, transfer orders or similar documents directing the transfer of Excise Taxes into or out of (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- policies and procedures for transferring Excise Taxes from the Commonwealth's TSA bank accounts to HTA from January 1, 2014 onward.

Any other responsive documents AAFAF, in its capacity as successor to GDB as fiscal agent, may have would be cumulative of documents in the possession, custody, or control of Treasury and HTA. Accordingly, AAFAF, in its capacity as successor to GDB as fiscal agent, directs Defendants to the responses of those entities.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: Treasury will produce the following materials to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in Treasury's possession, custody or control pursuant to a reasonably diligent search of centralized files:

- from January 1, 2014 onward, bank account statements for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- bank account opening materials for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- from January 1, 2014 onward, transfer orders or similar documents directing the transfer of Excise Taxes into or out of (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- policies and procedures for transferring Excise Taxes from the Commonwealth's TSA bank accounts to HTA from January 1, 2014 onward.

Treasury will also make reasonable efforts to export data available in PRIFAS pertaining to Fund 278 from January 1, 2014 onward.

Subject to and without waiving the foregoing general and specific objections, HTA responds as follows: HTA will produce the following materials to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in HTA's possession, custody, or control pursuant to a reasonably diligent search of centralized files:

- from January 1, 2014 onward, bank account statements for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- bank account opening materials for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- from January 1, 2014 onward, transfer orders or similar documents directing the transfer of Excise Taxes and Toll Revenues into or out of (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- policies and procedures for requesting transfer of Excise Taxes from the Commonwealth's TSA bank accounts to HTA from January 1, 2014 onward.

## REQUEST FOR PRODUCTION NO. 3:

All records reflecting the actual Flow of Funds into and out of Fund 278 and its subaccounts, and any other accounts into which Excise Taxes and HTA Pledged Revenues have been deposited (including the HTA Accounts) from January 2014 to the present. This request includes, without limitation,

a) records reflecting the actual deposit of Excise Taxes and HTA Pledged Revenues to any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts);

b) records reflecting the actual retention by the Commonwealth of Excise Taxes and HTA Pledged Revenues;

c) records reflecting the actual transfer of Excise Taxes and HTA Pledged Revenues to and from any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts);

d) any instructions regarding use or transfer of such funds;

e) any refusal by Treasury to sign any SC-735 vouchers or other withdrawal/transfer Documents relating to Fund 278 and its sub-accounts approved by HTA or any amendments or changes requested by Treasury;

f) records concerning transfers from Commonwealth bank account BPPR-9458;

g) records concerning the Flow of Funds for Act 30 and 31 Revenues;

h) records reflecting the balance from January 2014 to present of Fund 278 and its specific subaccounts, and any changes, increases, and decreases of such balances and the reasons therefor;

i) Documents attaching, and constituting instructions or policies for attaching Fund, account, Fund 278 sub-account and DeptID number designations such as 278−660000 to received Excise Taxes and HTA Pledged Revenues;

j) Documents and other Commonwealth records that can be generated using the PRIFAS accounting system or other accounting systems such as ledgers, reports, cash flow statements, statements, Fund accreditation reports and reconciliations relating to the Flow of Excise Taxes and HTA Pledged Revenues, including the reporting of the Flow of such funds;

k)     account statements of any account or Fund or Fund sub-account or designation into which Excise Taxes and HTA Pledged Revenues were deposited, transferred or in which such funds were retained (including the HTA Accounts);

l)     communications with auditors regarding the Flow of Excise Taxes and HTA Pledged Revenues or any bank account, Fund, Fund designation or Fund sub-account into or from which Excise Taxes and HTA Pledged Revenue were deposited, withdrawn, transferred or retained (including the HTA Accounts), including auditor workpapers and supporting documentation related to the presentation of HTA Pledged Revenues in Commonwealth and HTA audited financial statements; and

m)     records reflecting the budget and expenditure of any Excise Taxes and HTA Pledged Revenues.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

In addition to their General Objections, incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  The Government Entities further object to this Request to the extent that particular accounting designations, such as PRIFAS fund code 278, do not have the same documentation (such as "account statements") associated with deposit accounts.

The Government Entities further object to this Request on the ground that its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed in the HTA 56(d) Order.  Further, subparts (a), (c), (d), (f), (g), and (k) seek documents that do not exist to the extent they purport to require the Government Entities to attempt to trace the use of Excise Taxes or Toll Revenues after they have been commingled in cases where no voucher or transfer order specifically identifies the source of the transferred amounts; subparts (h), (i), (l), and (m) are improper on the ground that they seek discovery that was not authorized under the HTA 56(d) Order; subparts (d),

(f), (g), and (j) are overbroad, unduly burdensome and beyond the scope of discovery allowed in the HTA 56(d) Order to the extent they seek information "concerning" the topics in those subparts or to the extent they are not tethered to the HTA Bonds.  The Government Entities further object to this Request on the ground it requests "all" documents, because such a request (i) exceeds the scope of the HTA 56(d) Order and (ii) is otherwise overbroad and unduly burdensome because it is not limited to seeking documents sufficient to show the requested information.  Finally, the Government Entities object to subpart (d) to the extent it seeks information regarding the "use" of funds as being beyond the scope of discovery authorized by the HTA 56(d) Order.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF directs Defendants to the HTA Flow of Funds Summary, and the bank account statements and transfer orders produced in connection with the HTA Lift Stay Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, will produce the following materials to the extent those materials were not already provided in connection with the HTA Lift Stay Motion and may be located in GDB's account-records archive or GDB's archived file of HTA-related materials:

- from January 1, 2014 onward, bank account statements for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

21

- from January 1, 2014 onward, transfer orders or similar documents directing the transfer of Excise Taxes into or out of (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: Treasury will produce the following materials to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in Treasury's possession, custody or control pursuant to a reasonably diligent search of centralized files:

- from January 1, 2014 onward, bank account statements for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- from January 1, 2014 onward, transfer orders or similar documents directing the transfer of Excise Taxes into or out of (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present.

Treasury will also make reasonable efforts to export data available in PRIFAS pertaining to Fund 278 from January 1, 2014 onward.

Subject to and without waiving the foregoing general and specific objections, HTA responds as follows: HTA will produce the following materials to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in HTA's possession, custody or control pursuant to a reasonably diligent search of centralized files:

- from January 1, 2014 onward, bank account statements for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- from January 1, 2014 onward, transfer orders or similar documents directing the transfer of Excise Taxes and Toll Revenues into or out of (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents concerning the Treasury's role in the approval of transfers to HTA and the extent to which excise tax revenues were or have been made available to HTA. The request includes, without limitation,

a)     any instructions, approvals or denials regarding any transfers of Excise Taxes;

b)     any instructions, approvals or denials of requested transfers of Excise Taxes;

c)     policies and controls concerning transfers of Excise Taxes; and

d)      the delegation of any purported authority over transfer activity relating to Excise
Taxes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

In addition to their General Objections, incorporated herein by this reference, the
Government Entities object to this Request to the extent it seeks documents protected by the
Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative
Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines,
or immunities protecting information from disclosure.  The Government Entities further object to
this Request on the ground it requests "All Documents," which is overbroad and unduly
burdensome, rather than documents sufficient to show the requested information.

The Government Entities further object to this Request on the ground that its subparts are
overbroad and unduly burdensome and beyond the scope of discovery allowed in the HTA 56(d)
Order.  Further, subparts (a), (b), (c), and (d) are overbroad, unduly burdensome and beyond the
scope of discovery allowed in the HTA 56(d) Order to the extent they seek documents "regarding,"
"concerning," and "relating to" Excise Taxes transfers in general, rather than documents
concerning Treasury's role in the approval of transfers to HTA and the extent to which Excise
Taxes were or have been made available to HTA.  Further, subpart (d) is unintelligible because it
demands documents concerning "delegation of purported authority" as opposed to delegation of
authority.  From the perspective of the Government Entities, there was authority, not purported
authority and there is no basis to believe authority was delegated.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in
its own capacity, responds as follows: AAFAF directs Defendants to the vouchers, transmittal
letters, and Circular Letter No. 1300-22-16, which were produced in connection with the HTA Lift
Stay Motion.

24

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, will produce documents, from January 1, 2014 onward, concerning Treasury's role in the approval of transfers of Excise Taxes to HTA and the extent to which Excise Taxes were or have been made available to HTA, to the extent those materials were not already provided in connection with the HTA Lift Stay Motion and may be located in GDB's archived file of HTA-related materials:

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: Treasury will produce documents, from January 1, 2014 onward, concerning Treasury's role in the approval of transfers of Excise Taxes to HTA and the extent to which Excise Taxes were or have been made available to HTA, to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in Treasury's possession, custody or control pursuant to a reasonably diligent search of centralized files.

Subject to and without waiving the foregoing general and specific objections, HTA responds as follows: HTA will produce documents, from January 1, 2014 onward, concerning Treasury's role in the approval of transfers of Excise Taxes to HTA and the extent to which Excise Taxes were or have been made available to HTA to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in HTA's possession, custody or control pursuant to a reasonably diligent search of centralized files.

**REQUEST FOR PRODUCTION NO. 5:**

All policies and procedures related to the Flow of Excise Taxes and HTA Pledged Revenues pursuant to the Bond Documents.  This request includes, without limitation,

a)      policies, procedures, and controls reflecting instructions relating to the use or transfer of any of such funds, from creation to present;

b)      policies, procedures, and controls regarding the collection of Excise Taxes and HTA Pledged Revenues, from creation to present;

c)      policies, procedures, and controls regarding the retention by the Commonwealth of such funds, from creation to present;

d)      policies, procedures, and controls regarding the reporting of the Flow of Excise Taxes and HTA Pledged Revenues, from creation to present;

e)      policies, procedures, and controls regarding the recording and accounting of Excise Taxes and HTA Pledged Revenues from creation to present, including charts of accounts (including HTA Accounts), PRIFAS reports, ledgers, policies, procedures and supporting documentation used in the presentation and treatment of the HTA Pledged Revenues;

f)      Documents sufficient to identify the individuals responsible for policies and procedures related to the Flow of Excise Taxes and HTA Pledged Revenues, including those overseeing or approving transactions involving the reporting, recording, transfer and accounting for any of such funds;

g)      policies and procedures regarding, and Documents related to, the "HTA Pass Throughs" and "Non-General Fund Pass Throughs" for HTA and the Excise Taxes identified in TSA Cash Flow Reports for the period beginning in July 2017 and continuing through June 2020;

h)      policies and procedures regarding, and Documents reflecting and related to, the presentation of Excise Taxes as "General Fund Collections" for the period July 2020 to present, including all documents substantiating the reason and justification for such change in presentation;

i)      policies and procedures regarding the presentation of HTA Pledged Revenues in the audited financial statements of the Commonwealth and HTA for fiscal years 2014 to present, including auditor workpapers and supporting documentation;

j)      policies and procedures related to the Commonwealth and HTA's implementation of Governmental Accounting Standards Board Statement No. 54 as to the HTA Pledged Revenues, for fiscal years 2014 to present, including documents evidencing the manner of such implementation;

k)      policies and procedures relating to the accounting and fiscal control of restrictions on monies in the TSA, including the HTA Pledged Revenues and federal funds, for fiscal years 2014 to present;

l)      policies and procedures relating to the "Special Revenue Fund" for HTA identified on Page 11 of the Board's December 17, 2020 presentation styled Creditor Mediation Cash Support Materials, including the materials related to Footnote 4 therein;

26

m)   policies and procedures pertaining to the Commonwealth's ability or obligation to transfer money to HTA upon request; and

n)   auditor workpapers related to the testing of the above-identified policies and procedures.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

In addition to their General Objections, incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  The Government Entities further object to this Request on the ground that its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed in the HTA 56(d) Order.  Further, subparts (d), (e), (f) , (g), (h), (i), (j), (k), (*l*), and (n) are improper on the ground that they seek discovery that was not authorized under the HTA 56(d) Order, and subparts (a), (b), (c), (d), and (m) are overbroad, unduly burdensome and beyond the scope of discovery allowed in the HTA 56(d) Order to the extent they seek documents "regarding" or "pertaining" to the topics in those subparts, to the extent they are not tethered to the HTA Bonds or the Flow of Funds, and to the extent they seek documents prior to January 1, 2014.  Finally, the Government Entities also object to subpart (a) to the extent it seeks information regarding the "use" of funds as being beyond the scope of discovery authorized by the HTA 56(d) Order.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF, in its own capacity, directs Defendants to Treasury Regulation 49.  Any other responsive documents AAFAF, in its own capacity, may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as

successor to GDB as fiscal agent, Treasury, and HTA.  Accordingly, AAFAF, in its own capacity, directs Defendants to the responses of those entities.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, will produce policies and procedures, from January 1, 2014 onward, related to the flow of Excise Taxes pursuant to the Bond Documents through (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present, to the extent such documents were not already provided in connection with the HTA Lift Stay Motion and may be located in GDB's archived file of HTA-related materials.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: Treasury will produce policies and procedures, from January 1, 2014 onward, related to the flow of Excise Taxes pursuant to the Bond Documents through (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present, to the extent such documents were not already provided in connection with the HTA Lift Stay Motion and may be located in Treasury's possession, custody, or control after a reasonably diligent search of centralized files.

Subject to and without waiving the foregoing general and specific objections, HTA responds as follows: HTA will produce policies and procedures, from January 1, 2014 onward, related to the flow of Excise Taxes and Toll Revenues pursuant to the Bond Documents through

(i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present, to the extent such documents were not already provided in connection with the HTA Lift Stay Motion and may be located in HTA's possession, custody, or control after a reasonably diligent search of centralized files.

Dated: February 22, 2021
       San Juan, Puerto Rico

Respectfully submitted,

**O'MELVENY & MYERS LLP**

*/s/ Elizabeth L. McKeen*

John J. Rapisardi
(Admitted *Pro Hac Vice*)
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
Email: jrapisardi@omm.com

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
Email: pfriedman@omm.com

Elizabeth L. McKeen
(Admitted *Pro Hac Vice*)
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: +1-949-823-6900
Fax: +1-949-823-6994
Email: emckeen@omm.com
      apavel@omm.com

*Attorneys for the Government Entities*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify on February 22, 2021, I caused service on the person(s) listed below by

electronic transmission of the document titled:

**RESPONSES AND OBJECTIONS OF AAFAF (IN ITS OWN CAPACITY AND
AS SUCCESSOR TO GDB AS FISCAL AGENT TO GDB), HTA, AND TREASURY TO
THE SUBPOENAS OF DEFENDANTS FOR THE PRODUCTION OF DOCUMENTS IN
CONNECTION WITH THE HTA REVENUE BOND ADVERSARY PROCEEDING**

| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP | PROSKAUER ROSE, LLP |
| Robert Berezin, Esq. | Ehud Barak, Esq. |
| Gregory Silbert, Esq. | Margaret A. Dale, Esq. |
| 767 Fifth Avenue | Michael T. Mervis, Esq. |
| New York, NY 10153 | Jennifer L. Jones, Esq. |
| robert.berezin@weil.com | Laura Stafford, Esq. |
| gregory.silbert@weil.com | Eleven Times Square |
| | New York, NY 10036-8299 |
| *Counsel for National Public Finance Guarantee Corporation* | Tel: (212) 969-3000 |
| | Fax: (212) 969-2900 |
| | ebarak@proskauer.com |
| | mdale@proskauer.com |
| | mmervis@proskauer.com |
| | jljones@proskauer.com |
| | lstafford@proskauer.com |
| | |
| | *Counsel for The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority* |

PAUL HASTINGS LLP

Luc A. Despins, Esq.
G. Alexander Bongartz, Esq.
Nicholas Bassett, Esq.
875 15th Street  NW
Washington, DC 20005
lucdespins@paulhastings.com
alexbongartz@paulhastings.com
nicholasbassett@paulhastings.com

*Counsel for the Official Committee of
Unsecured Creditors*

CADWALADER, WICKERSHAM & TAFT LLP

William J. Natbony
Thomas J. Curtin
Casey J. Servais
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Email: bill.natbony@cwt.com
thomas.curtin@cwt.com
casey.servais@cwt.com

*Counsel for Assured Guaranty Corp., and
Assured Guaranty Municipal Corp.*

MILBANK LLP

Atara Miller
Grant R. Mainland
John J. Hughes, III
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email:
amiller@milbank.com
gmainland@milbank.com
jhughes2@milbank.com

*Counsel for Ambac Assurance Corporation*

REED SMITH LLP

Jared S. Roach
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email: jroach@reedsmith.com

*Counsel for The Bank of New York Mellon*

BUTLER SNOW LLP

Martin A. Sosland
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
Email: martin.sosland@butlersnow.com

James E. Bailey III
Adam M. Langley
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: jeb.bailey@butlersnow.com
adam.langley@butlersnow.com

*Counsel for Financial Guaranty Insurance
Company*

HOGAN LOVELLS US LLP

Ronald J. Silverman
Michael C. Hefter
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
ronald.silverman@hoganlovells.com
michael.hefter@hoganlovells.com

*Counsel for U.S. Bank Trust National
Association, in its Capacity as Trustee to
PRIFA Bondholders*

Dated this 22nd day of February, 2021.

*/s/ Ashley M. Pavel*
Ashley M. Pavel

33