# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors. [1] | |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | Adv. Proc. No. 20-00003-LTS |
| Plaintiff, | |
| v. | |
| AMBAC ASSURANCE CORPORATION, *et al.*, | |
| Defendants. | |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | Adv. Proc. No. 20-00005-LTS |
| Plaintiff, | |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

v.

AMBAC ASSURANCE CORPORATION, *et al.*,

    Defendants.

**GOVERNMENT PARTIES'
URGENT MOTION FOR PROTECTIVE ORDER REGARDING
SUBPOENAS *DUCES TECUM* TO GOVERNMENT PARTIES' LAW FIRMS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 4

RELIEF REQUESTED ........................................................................................ 8

LEGAL STANDARD .......................................................................................... 8

ARGUMENT ...................................................................................................... 9

    I.     IT IS IMPROPER FOR DEFENDANTS TO USE THIRD-PARTY
           SUBPOENAS TO CIRCUMVENT THE GOVERNMENT PARTIES'
           OBJECTIONS.............................................................................. 9

    II.    IT IS IMPROPER FOR DEFENDANTS TO USE THIRD-PARTY
           SUBPOENAS TO EXPAND THE SCOPE OF DISCOVERY. .......................... 11

CONCLUSION ................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cardona v. Vivint Solar, Inc.*,
   2019 WL 4686556 (E.D. Pa. Sept. 26, 2019) ........................................................ 13

*Heard v. Costco Wholesale Corp.*,
   2020 WL 515841 (D. Nev. Jan. 31, 2020) .............................................................. 9

*IDS Prop. Casualty Ins. Co. v. Gov't Emps.' Ins. Co.*,
   985 F.3d 41 (1st Cir. 2021) ..................................................................................... 8

*In re Fin. Oversight & Mgt. Bd. for P.R.*,
   618 B.R. 619 (D.P.R. 2020) .................................................................................... 13

*In re Grand Jury Procs.*,
   802 F.3d 57 (1st Cir. 2015) ..................................................................................... 10

*McCall v. State Farm Mut. Auto. Ins. Co.*,
   2017 WL 3174914 (D. Nev. July 26, 2017) ...................................................... 9, 13

*Ratliff v. Davis Polk & Wardwell*,
   354 F.3d 165 (2d Cir. 2003) ................................................................................... 11

*Richardson v. Spouse Abuse Research Ctr.*,
   270 F.R.D. 223 (D. Md. 2010) ............................................................................... 10

*Robbins & Myers, Inc. v. J.M. Huber Corp.*,
   2011 WL 3359998 (W.D.N.Y. Aug. 3, 2011) ....................................................... 11

*Shevlin v. Phoenix Life Ins. Co.*,
   2012 WL 13034075 (D.N.J. May 24, 2012) ..................................................... 12, 13

*Tara Prods., Inc. v. Hollywood Gadgets, Inc.*,
   2014 WL 1047411 (S.D. Fla. Mar. 18, 2014) ........................................................ 11

**Other Authorities**

473 ABA Formal Opinion (Feb. 17, 2016), *available at*
   https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/aba_
   formal_opinion_473.authcheckdam.pdf ....................................................... 1, 10, 11

MODEL CODE OF PRO. CONDUCT 1.16(d) (AM. BAR ASS'N 2020) ................................ 9

**Rules**

D.P.R. Local Rule 83E(a) ............................................................................................ 9

**To the Honorable United States Magistrate Judge Judith Gail Dein:**

The Financial Oversight and Management Board for Puerto Rico ("Oversight Board"), as representative of the Commonwealth of Puerto Rico ("Commonwealth") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[2] and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF")[3] respectfully submit this motion (the "Motion") requesting the Court to enter a protective order regarding fourteen subpoenas *duces tecum* (collectively, the "Subpoenas"), dated between February 19, 2021 and April 24, 2021 served on seven different law firms that served as counsel to PRIFA and/or HTA in connection with the issuance of certain bonds at issue in these adversary proceedings.[4]

In support of the Motion, the Oversight Board and Government Entities (together, the "Government Parties") respectfully state as follows:

## PRELIMINARY STATEMENT

1.      In a formal opinion, the American Bar Association concluded that law firms subpoenaed for client documents must consult with their client and assert appropriate objections to any subpoena.[5]  Thus, it should have come as no surprise to Defendants that former counsel for HTA and PRIFA had been conferring with the Government Parties' counsel in these adversary cases regarding how to respond to Defendants' subpoenas, entirely consistent with their ethical

---

[2] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3] AAFAF moves in its own capacity, as successor to the Government Development Bank for Puerto Rico ("GDB") as fiscal agent, and as representative pursuant to Act 2-2017 of the Commonwealth, the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Infrastructure Financing Authority ("PRIFA"), the Puerto Rico Convention Center District Authority ("CCDA"), and the Puerto Rico Tourism Company ("Tourism Company" and, together with AAFAF, the Commonwealth, HTA, PRIFA, and CCDA, the "Government Entities").

[4] *See* Exhibits B-O.  Five of the subpoenas (Exhibits D, F, I, L, N) are duplicate subpoenas issued by different individual defendants.

[5] *See* 473 ABA Formal Opinion (Feb. 17, 2016),  *available at* https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/aba_formal_opinion_473.authcheckdam.pdf.

obligations to their former clients.[6]  Defendants then asked the Court, on mere hours' notice to the Government Parties and without any motion practice, to enjoin all such future conversations between current and former counsel.  *See* April 16, 2021 Joint Status Report (the "Joint Status Report"), Ex. J, ¶ 4 (Apr. 16, 2021) (ECF No. 156)[7] (proposed order directing that the "Government shall refrain from any further communications with subpoena recipients" except to assert privilege or state the Government Parties have filed a motion to quash).  In other words, Defendants sought to prevent exactly the kind of communication in furtherance of client interests that applicable ethical rules not only encourage, but require.  And they did it to prevent the Government Parties from ensuring their legitimate objections to the production of certain materials outside the scope of the Court's discovery order could be implemented consistently, regardless of where such files were located.  The Court should rein in this harassing behavior so the permitted, but limited, targeted and proportional discovery can proceed to an efficient conclusion.  The scope of the Government Parties' objections should be decided through direct discussions between counsel representing the parties in these cases and, if needed, motion practice between the parties, not offline conversations with an additional seven law firms not involved in litigating the current dispute.

2.      Judge Swain's Rule 56(d) order allowed "limited, targeted, proportional, and efficient" discovery on a narrow set of topics, including documents governing the HTA and PRIFA

---

[6] In some cases, the Subpoenaed Firms (as defined below) represent one or more of the Government Entities, but they are not counsel in these adversary cases and the Subpoenas seek documents generated in connection with those firms' prior representations.

[7] References to "ECF No. __" refer to Electronic Case Filing numbers in Case No. 20-00003 unless stated otherwise. Further, unless indicated otherwise, the documents in Case No. 20-00003 have also been filed in Case Nos. 20-00004 and 20-00005.

bonds.  *See* Rule 56(d) Order at 6.[8]  That is precisely what the Government Parties produced to Defendants:  bound volumes and other executed resolutions and agreements governing the bond issuances.  But the Government Parties objected to producing materials, like emails and other draft documents, that were not "governing."  Defendants continued to pursue such documents through subpoenas to the Government Entities' current and former law firms, notwithstanding the Government Parties' objections.  Defendants conducted teleconferences and sent correspondence to these law firms, pressuring them to release files that the Government Parties had objected to producing, all without including the Government Parties' current lawyers in these adversary cases in the meet and confer process or notifying them that these conversations were occurring.

3.     The Government Parties do not contend, as Defendants have suggested during the meet and confer process, that law firm client files are categorically beyond the scope of discovery, nor do they object to HTA's and PRIFA's former counsel producing the governing documents contemplated by the Rule 56(d) Order from their client files.  Indeed, many of the firms have already produced such governing documents in response to subpoenas.  But it is entirely improper for Defendants to attempt to circumvent the Government Parties' objections by conducting separate discovery processes regarding the production of the Government Entities' documents with a half a dozen different sets of lawyers who are unfamiliar with the Government Parties' position in these adversary proceedings.  This disjointed approach to discovery is designed to sow chaos in the hopes of eliciting documents the Government Parties object to producing from firms unfamiliar with the litigation and flies in the face of this Court's directive that discovery be efficient.

---

[8] *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, dated January 20, 2021 [ECF No. 115].

4.    Defendants declined to withdraw their subpoenas to these law firms and negotiate with the Government Parties directly regarding the client materials held by the law firms, forcing the Government Parties to seek relief.  This Court should prevent Defendants from using third-party subpoenas as an end-run around the Government Parties' objections and creating inefficient and wasteful workstreams involving numerous law firms unnecessarily.  Accordingly, the Government Parties seek a protective order, substantially in the form attached hereto as **Exhibit A**, requiring Defendants to seek client files of former or current Government law firms through the Government Parties' counsel in this adversary proceeding, not through other means.

## FACTUAL BACKGROUND

5.    By order dated January 20, 2021, Judge Swain allowed limited, targeted, proportional, and efficient discovery of, among other things, documents "governing" the PRIFA and HTA bonds.  Rule 56(d) Order at 7, 11.  Defendants nonetheless sought broad discovery, including requests to the Government Parties for "[a]ll Documents . . . governing the Flow of Rum Tax Remittances . . .  including: . . . (d) Documents . . . that *relate to* the Rum Taxes" (ECF No. 126-2) (emphasis added), and "documents governing *or otherwise related* to the HTA Bonds" (ECF No. 126-4) (emphasis added).

6.    In response to Defendants' discovery requests, the Government Entities agreed to produce documents "governing" the bonds—the final deal documents and executed resolutions that govern the bonds.  *E.g.*, ECF No. 126-7, at 13 (Government Entities' responses and objections to HTA-related subpoenas) (agreeing to produce "Bond Documents and non-privileged documents identifying signatories to and/or those bound by the Bond Resolutions").  The Government Parties made clear at the outset of discovery they objected to producing documents that did not "govern" the bond issuances and were therefore beyond the scope of the Rule 56(d) Order.  Letter from Gov. Parties at 7 (Mar. 4, 2021), ECF No. 129-1 ("[T]he Government does not agree with Defendants'

4

contention that documents governing the bonds could include documents that are not legally operative."). The Government Parties further specified that "[t]o the extent the Government locates official statements or agreements related to the PRIFA, CCDA, or HTA bonds, it will produce them." *Id.* at 4. The Government Parties also explained that overbroad requests for documents "concerning" or "referring" to the bonds were not sufficiently specific to enable the Government Parties to understand what was actually being sought. *Id.* at 12.

7. Separately, Defendants served fourteen subpoenas on the following seven law firms that in the past served as bond counsel[9] to one or more of the Government Entities: (i) Greenberg Traurig, LLP ("Greenberg");[10] (ii) Hawkins Delafield & Wood LLP ("Hawkins");[11] (iii) McConnell Valdes (solely in its capacity as bond counsel for the PRIFA 1988 bond issuance);[12] (iv) Nixon Peabody LLP ("Nixon");[13] (v) Sidley Austin LLP (solely in its capacity as bond counsel for the PRIFA 1997/1998, 2005 and 2006 issuances, and HTA 1977, 1998 and 2003 issuances);[14] (vi) Squire Patton Boggs ("Squire");[15] and (vii) Winston & Strawn LLP ("Winston") (collectively, the "Subpoenaed Firms").[16] The Subpoenas requested "[a]ll Documents and Communications governing or referring to the terms" of the bonds, "[a]ll Documents and Communications

---

[9] Certain of the firms served as bond counsel to PRIFA and/or HTA on certain issuances and underwriter's counsel on others. This Motion is directed solely to Defendants' subpoenas for client files those firms maintained as bond counsel.

[10] *See* Exhibits B - D.

[11] *See* Exhibits E - F.

[12] *See* Exhibit G.

[13] *See* Exhibits H - I.

[14] *See* Exhibits J - L.

[15] *See* Exhibits M - N.

[16] *See* Exhibit O.

constituting, governing or referring to Resolutions" issued in connection with the bonds, and other materials "governing or referring to" the bonds.[17]

8.      Counsel for Hawkins, Greenberg, Nixon, and Squire understandably sought guidance from the Government Parties' counsel in these cases about current counsel's legal position regarding the response to the respective Subpoenas for production of HTA's or PRIFA's documents.  Current counsel communicated their clients' legal position to these firms, and consistent with that position, directed the firms to interpose the same objections to the Subpoenas for client files that the Government Parties had interposed to Defendants directly in response to requests for production of the same documents in the Government Entities' files.  As a result, the law firms agreed to provide Defendants with exactly the same types of documents from their client files that the Government Parties had themselves agreed to provide.

9.      The Government Parties did not become aware that the intent of Defendants' subpoenas was to circumvent the Government Parties' objections (as opposed to seeking collection of governing documents that may no longer exist in the Government Entities' records) until April 16, 2021.  During a 6:00 p.m. Eastern meet and confer regarding multiple issues on April 15, 2021, Defendants for the first time asked the Government Parties to tell them the content of any communications they had with subpoenaed third parties, including the Subpoenaed Firms.[18]  *See* Joint Status Report ¶ 48.  Concerned with potentially revealing work product or privileged content with respect to such communications, the Government Parties advised that they would consider Defendants' request and revert with their position.  *Id.*  At noon Eastern the next day, Defendants

---

[17] *See e.g.*, Exhibit B, at 13.

[18] At the Government Parties' request, Defendants had provided a letter with the subject matters they intended to discuss on the call in advance earlier that day.  This entire subject matter was conspicuously absent from that list, notwithstanding that Defendants submitted nine pages of briefing about it to the Court the very next day.  *See* April 16, 2021 Joint Status Report, Exhibit C (refiled Apr. 19, 2021) (ECF No. 158-3).

improperly inserted into what was supposed to be a simple joint status report (due the same day) accusations that the Government Parties had acted improperly by coordinating a consistent approach to objections in response to requests for the Government Entities' documents. *See* Joint Status Report ¶¶ 32-38 (arguing that the Government Parties' instructions to law firms "to withhold documents, on the basis of the Government's subjective views of the proper scope, are improper"). Without any notice or opportunity for the Government Parties to meaningfully respond, Defendants also requested an order enjoining the Government Parties' current lawyers from communicating to the Subpoenaed Firms the Government Entities' position on the production of their own documents. *See* Joint Status Report, Ex. J.

10.     The Government Parties informed Defendants, both in their portions of the April 16, 2021 joint status report and in meet and confer letters dated April 20, 2021 and April 21, 2021, that it was improper for Defendants to seek production of the Government Entities' documents from their former lawyers notwithstanding the Government Parties' objections, and that it was particularly egregious to exclude the Government Entities' current counsel from the discussions with their mutual clients' other law firms.  Exhibit P, Letter from Government Parties at 3 (Apr. 20, 2021); Exhibit Q, Letter from Government Parties at 4 (Apr. 21, 2021).

11.     Nevertheless, on April 20, 2021, Defendant Assured continued its meet and confer campaign with several of the Subpoenaed Firms behind the backs of the Government Parties' current lawyers, sending letters to Hawkins, Greenberg, and Nixon in which Assured continued to urge these firms to take a different position from the Government Parties with respect to documents in their client files—all without copying or notifying the Government Parties' current counsel. *E.g.*, Exhibits R - T, Letters from counsel to Assured to counsel for Greenberg, Nixon, and

7

Hawkins.  The Government Parties only learned of these communications through the Subpoenaed Firms themselves.

12.     Accordingly, the Government Parties seek relief from this Court to ensure that future discovery on these issues is coordinated and that Defendants do not use their subpoenas to the Subpoenaed Firms to obtain documents from their applicable client files to which the clients themselves object to producing.

## RELIEF REQUESTED

13.     To prevent Defendants from using the Subpoenas to frustrate the Government Parties' discovery objections, and to prevent further inefficiencies associated with multiple negotiations concerning the same materials, the Government Parties respectfully request that this Court enter a protective order, substantially in the form of the proposed order attached hereto as **Exhibit A**, (i) requiring Defendants to negotiate the production of the Government Entities' documents through the Government Parties' current lawyers, and (ii) directing Defendants to cease any and all efforts to obtain from the Subpoenaed Firms production of documents that the Government Entities themselves have not agreed to produce.

## LEGAL STANDARD

14.     The District Court has "broad discretion to rule on discovery motions in order to design protective orders that prevent unnecessarily burdensome or problematic discovery requests." *IDS Prop. Casualty Ins. Co. v. Gov't Emps.' Ins. Co.*, 985 F.3d 41, 50 (1st Cir. 2021). A party may "move for a protective order in regard to a subpoena issued to a non-party if it believes its own interest is jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." *Heard v. Costco Wholesale Corp.*, 2020 WL 515841, at *1, *3 (D. Nev. Jan. 31,

8

2020) (quashing subpoenas in part because their "scope exceeds what is proportional to the needs

of this case").

## ARGUMENT

## I.   IT IS IMPROPER FOR DEFENDANTS TO USE THIRD-PARTY SUBPOENAS TO CIRCUMVENT THE GOVERNMENT PARTIES' OBJECTIONS.

15.   Where, as here, a party served discovery requests on an opposing party to which

the latter objected, "it is not proper to avoid the opposing party's objections by requesting the same

documents or information through another discovery device." *McCall v. State Farm Mut. Auto.

Ins. Co.*, 2017 WL 3174914, at \*6 (D. Nev. July 26, 2017); *see also Heard*, 2020 WL 515841, at

\*3 ("[T]hird party discovery is not to be used as a means to circumvent Rule 33 or 34, but rather,

to the extent that Defendants have found Plaintiff's written discovery responses deficient, they

should meet and confer and seek to compel that information in accordance with Rule 37.").  Here,

the Government Parties objected to producing anything beyond final agreements and resolutions

in response to the Rule 56(d) Order's directive to produce documents governing the HTA and

PRIFA bonds.  Rather than meet and confer with the Government Parties' counsel or move to

compel, Defendants opted to pursue discovery of drafts and email communications referring to the

bond documents from the Government Entities' client files held by the Subpoenaed Firms, all

without alerting lawyers for the Government Parties, much less including them in their

communications with the Subpoenaed Firms.

16.   The documents at issue belong to the Government Entities, notwithstanding that

they are in possession of their former law firms.  *See* MODEL CODE OF PRO. CONDUCT 1.16(d) (AM.

BAR ASS'N 2020) (incorporated by D.P.R. Local Rule 83E(a)) (a client is entitled to the return of

its documents from its former counsel); *see also In re Grand Jury Procs.*, 802 F.3d 57, 68 (1st Cir.

9

2015) (documents within the possession of a client's former attorneys remain within the client's control).

17.    Consistent with their ethical obligations, counsel for Hawkins, Greenberg, Nixon, and Squire sought direction from the Government Entities' current counsel as to their former clients' legal position regarding the response to subpoenas for production of HTA's or PRIFA's documents.  Indeed, the ethics rules require a lawyer receiving a subpoena for client documents to "consult [with] the client about how to respond to the demand" and, if instructed by the client, "assert all reasonable claims against disclosure and seek to limit the subpoena or other initial demand on any reasonable ground."  473 ABA Formal Opinion at 1, 8.

18.    Yet, in full awareness of the Government Entities' objections, Defendants pressured the Government's former counsel to provide the Government Entities' documents notwithstanding their objections to the contrary.  *E.g.*, Exhibits R - T, Letters from counsel for Assured to counsel for Greenberg, Hawkins, and Nixon (Apr. 20, 2021).  Defendants also sought Court intervention, on mere hours' notice, in the form of an order demanding the Government Parties produce all non-privileged documents (including emails and drafts of governing documents), notwithstanding their objections.  *See* Joint Status Report, Ex. J, ¶ 2.[19]

19.    Defendants' attempts to interfere with the Government Entities' attorney-client relationship is patently improper.  Putting ethical issues aside, a "subpoena is not a proper means for obtaining documents previously sought through a Rule 34 production request, after the adverse party objected to the request."  *Richardson v. Spouse Abuse Research Ctr.*, 270 F.R.D. 223, 226 (D. Md. 2010).

---

[19] Later, on April 28, 2021, counsel for Winston sought direction from the Government Entities' current counsel as to its former client's legal position.  It is the Government Parties' current understanding that Defendants have not sought production of Government documents from Winston that are beyond the scope of what the Government already agreed to provide.

20.     The cases Defendants cite in the April 16, 2021 status report are wholly distinguishable.  Defendants principally rely on *Ratliff v. Davis Polk & Wardwell*, in which the Second Circuit stated that "absent privilege, [a law firm's client files] are as susceptible to subpoena as those stored in a warehouse within the district court's jurisdiction."  Joint Status Report ¶ 35 (citing *Ratliff*, 354 F.3d 165, 170-71 (2d Cir. 2003)).  The holding of *Ratliff*, however, is simply that a law firm's client files are susceptible to subpoena; the law firm in *Ratliff* had broadly claimed that documents are "not available from a lawyer custodian."  *Ratliff*, 354 F.3d at 167.  The Government Parties are not claiming that subpoenas to law firms are *per se* improper— rather, they contend subpoenas cannot be used as a tool to circumvent the Government Parties' objections with respect to the production of the Government Entities' own documents.[20]

21.     Defendants' attempts to do an end-run around both the Government Parties' current counsel and their objections to Defendants' patently overbroad discovery requests are wholly improper.  This Court should preclude Defendants from continuing to engage in this conduct.

## II.     IT IS IMPROPER FOR DEFENDANTS TO USE THIRD-PARTY SUBPOENAS TO EXPAND THE SCOPE OF DISCOVERY.

22.     A "subpoena may not be used to circumvent or do an 'end-run' around the discovery rules that apply to a party."  *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 2014 WL 1047411, at *3 (S.D. Fla. Mar. 18, 2014).  Where a court order limits the scope of discovery, as the Rule 56(d) Order does here, a party "cannot get through the back door what the Court prevented it from obtaining through the front door."  *Shevlin v. Phoenix Life Ins. Co.*, 2012 WL 13034075,

---

[20] Defendants also cited *Robbins & Myers, Inc. v. J.M. Huber Corp.* to suggest the Government Entities' current counsel may not confer with the Subpoenaed Firms.  Joint Status Report ¶ 33 (citing *Robbins*, 2011 WL 3359998, at *1 (W.D.N.Y. Aug. 3, 2011)).  But *Robbins* involved a subpoena to the party's auditor, not its former counsel and therefore did not implicate the same issues as here.  *Robbins*, 2011 WL 3359998, at *2.  The consultations that took place between counsel for the Government Parties and the Subpoenaed Firms are not only permissible, they are exactly what the ethical rules require.  *See* 473 ABA Formal Opinion at 1.

11

at *2 (D.N.J. May 24, 2012).

23.    The Rule 56(d) Order allowed only limited discovery on specifically enumerated topics—as relevant here, documents "governing" the PRIFA and HTA bonds.  Rule 56(d) Order at 6-7, 11.  As the Government Parties explained in opposition to Defendants' March 10, 2021 motion to compel, "governing" documents cannot be construed to include email communications concerning the bonds.  *See* Opposition, ECF No. 129, ¶ 35.  As this Court acknowledged in the Lift Stay Motions, "[n]o one is arguing ambiguity that's going to be straightened out by some e-mail that somebody sent someplace along the line."  *See* Tr. of Motion to Compel Hearing at 230:22-24 (Mar. 4, 2020).  The same logic applies equally to non-final drafts that, by definition, are not documents "governing" the bonds.

24.    It is not credible to suggest that the scope of Defendants' claimed security interest under those documents would be determined by a one-off email or a draft document to which the parties did not agree rather than the operative legal documents.  Defendants even admit that drafts and emails are not relevant to the issues before the Court.  As one of the Defendants' lawyers told the First Circuit on an appeal of the Lift Stay Motions, "[w]e think that on the face of the statutes and on the face of the bond resolutions, that's all you need."  ECF No. 122-1, Ex. 5 at 9:20-24.

25.    Assured's correspondence to counsel for Greenberg demonstrates that Defendants understand these kinds of documents are not "governing."  Assured explained that it is not looking for the governing documents the 56(d) Order allows, but rather for parol evidence of the parties' subjective understandings:

> Non-final documents – including, for example, communications and drafts exchanged during an arms-length negotiation – are highly probative of the parties' understanding of their obligations with relation to the HTA Bonds.

12

Exhibit R, Letter from counsel for Assured to counsel for Greenberg at 2 (Apr. 20, 2021).  The

56(d) Order, however, does not authorize discovery into "the parties' understanding of their

obligations."  *Id.*  As Judge Swain and this Court already held in connection with the Lift Stay

Motions, subjective state of mind is not relevant.  *In re Fin. Oversight & Mgt. Bd. for P.R.*, 618

B.R. 619, 636 (D.P.R. 2020) (Swain, J.) ("Regardless of how, as a factual matter, Fund 278 monies

were treated, even implicit 'recognition' of authority cannot itself confer authority."); Tr. of

Motion to Compel Hearing at 230:19-21 (Mar. 4, 2020) (Dein, Mag. J.) ("[I]t seems to me that

state of mind is not an issue.  Individuals' understanding of things is not the issue.").

26.    The 56(d) Order's references to "governing" documents mean what they say.

Defendants have received productions of the documents governing the PRIFA and HTA bonds,

both from the Government Entities' own files and those of the Subpoenaed Firms.  They are

entitled to no more.  Allowing Defendants to circumvent the limited scope of discovery the Court

carefully set in this proceeding by issuing third-party subpoenas would "essentially render the

discovery order meaningless."  *Cardona v. Vivint Solar, Inc.*, 2019 WL 4686556, at *3 (E.D. Pa.

Sept. 26, 2019).

27.    Accordingly, this Court should preclude any further gamesmanship by Defendants

and enter the requested protective order.  *See, e.g.*, *McCall*, 2017 WL 3174914, at *6 (granting in

part defendants' protective order where plaintiffs sought to avoid the opposing party's objections

by requesting the same information through subpoena); *see also Shevlin*, 2012 WL 13034075, at

*2 (granting in part defendants' motion to quash subpoena where plaintiffs were trying to obtain

from a third-party information that a court order prevented them from obtaining from the party

directly).

13

**CONCLUSION**

28.     For the reasons set forth herein, the Government Parties respectfully request that this Court enter a protective order, substantially in the form attached hereto as **Exhibit A**, (i) compelling Defendants to negotiate the production of documents in the possession of the Subpoenaed Firms through the Government Parties' current lawyers, and (ii) directing Defendants to cease any and all efforts to obtain from the Subpoenaed Firms production of documents that the Government Parties have not agreed to produce.

*[Remainder of page intentionally left blank]*

Dated:  April 29, 2021
       San Juan, Puerto Rico

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 15205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:    (787) 764-8181
Fax:   (787) 753-8944
Email: hermann.bauer@oneillborges.com

/s Michael A Firestein

Martin J. Bienenstock
Jeffrey Levitan
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:    (212) 969-3000
Fax:   (212) 969-2900
Email: mbienenstock@proskauer.com
       jlevitan@proskauer.com
       ebarak@proskauer.com

Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel:    (310) 557-2900
Fax:   (310) 557-2193
Email: mfirestein@proskauer.com
       lrappaport@proskauer.com

*Attorneys for the Financial
Oversight and Management Board,
as Representative of the Commonwealth*

Respectfully submitted,

/s/ Elizabeth L. McKeen
John J. Rapisardi
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel:  (212) 326-2000
Fax:  (212) 326-2061

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Tel:  (949) 823-6900
Fax:  (949) 823-6994

*Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory Authority*

/s/ Luis C. Marini-Biaggi
Luis C. Marini-Biaggi
USDC No. 222301
Email:  lmarini@mpmlawpr.com

/s/ Carolina Velaz-Rivero
Carolina Velaz-Rivero
USDC No. 300913
Email:  cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave.
Suite 900
San Juan, Puerto Rico 00918
Tel:  (787) 705-2171
Fax:  (787) 936-7494
*Co-Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory Authority*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this same date a true and exact copy of this notice was filed with

the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

/s/ *Luis C. Marini-Biaggi*            
Luis C. Marini-Biaggi

16