# EXHIBIT H

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY, PEAJE INVESTMENTS LLC, and THE BANK OF NEW YORK MELLON, as Fiscal Agent<br><br>Defendants. | PROMESA<br>Title III<br><br>Adv. Proc. No. 20-00005-LTS |

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**NOTICE OF SUBPOENA *DUCES TECUM* OF
ASSURED GUARANTY CORP. AND ASSURED GUARANTY MUNICIPAL CORP. TO
NIXON PEABODY LLP ("NIXON PEABODY")
<u>FOR THE PRODUCTION OF DOCUMENTS OR THINGS</u>**

PLEASE TAKE NOTICE THAT, pursuant to 48 U.S.C. § 2170, Rule 9016 of the Federal Rules of Bankruptcy Procedure, and Rule 45 of the Federal Rules of Civil Procedure, Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "**<u>Assured</u>**"), by their undersigned attorneys, will serve the enclosed subpoena for documents on Nixon Peabody LLP ("**<u>Nixon Peabody</u>**") on March 8, 2021.

*[Remainder of Page Intentionally Blank]*

Dated:     March 8, 2021
           New York, New York

CASELLAS ALCOVER & BURGOS P.S.C.         CADWALADER, WICKERSHAM & TAFT LLP

By:/s/ *Heriberto Burgos Pérez*                By:/s/ *Howard R. Hawkins, Jr.*
    Heriberto Burgos Pérez                          Howard R. Hawkins, Jr.*
    USDC-PR 204809                                  Mark C. Ellenberg*
    Ricardo F. Casellas-Sánchez                     William J. Natbony*
    USDC-PR 203114                                  Thomas J. Curtin*
    Diana Pérez-Seda                                Casey J. Servais*
    USDC-PR 232014                                  200 Liberty Street
    P.O. Box 364924                                 New York, NY 10281
    San Juan, PR 00936-4924                         Telephone:   (212) 504-6000
    Telephone:   (787) 756-1400                     Facsimile:   (212) 504-6666
    Facsimile:   (787) 756-1401                     Email:       howard.hawkins@cwt.com
    Email:       hburgos@cabprlaw.com                            mark.ellenberg@cwt.com
                 rcasellas@cabprlaw.com                          bill.natbony@cwt.com
                 dperez@cabprlaw.com                             thomas.curtin@cwt.com
                                                                 casey.servais@cwt.com

    *Attorneys for Assured Guaranty Corp.*
    *and Assured Guaranty Municipal Corp.*          * Admitted *pro hac vice*

                                                    *Attorneys for Assured Guaranty Corp. and*
                                                    *Assured Guaranty Municipal Corp.*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Puerto Rico

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

　　　　　　as representative of

THE COMMONWEALTH OF PUERTO RICO, et al.,

Debtors.

)
)
)
)
)
)
)

PROMESA

Title III

Civil Action No.　17-BK-3283, AP No. 20-00005

(Jointly Administered)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:

Nixon Peabody LLP
55 West 46th Street, New York, NY 10036

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A.

| Place: Cadwalader, Wickersham & Taft LLP<br>200 Liberty Street<br>New York, NY 10281 | Date and Time:<br><br>03/22/2021 4:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:　03/08/2021

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*　Assured Guaranty
Corp. and Assured Guaranty Municipal Corp.　, who issues or requests this subpoena, are:

William J. Natbony, 200 Liberty St., New York, NY 10281; bill.natbony@cwt.com, 212-504-6351

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   17-BK-3283, AP No. 20-00005

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                        *Server's signature*

                                        _____
                                                        *Printed name and title*

                                        _____
                                                        *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, ASSURED<br>GUARANTY CORP., ASSURED GUARANTY MUNICIPAL<br>CORP., NATIONAL PUBLIC FINANCE GUARANTEE<br>CORPORATION, FINANCIAL GUARANTY INSURANCE<br>COMPANY, PEAJE INVESTMENTS LLC, and THE BANK<br>OF NEW YORK MELLON, as Fiscal Agent<br><br>Defendants. | PROMESA<br>Title III<br><br>Adv. Proc. No. 20-00005-LTS |

## EXHIBIT A TO SUBPOENA

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**SCHEDULE A**

Please refer to the following definitions and instructions when responding to this

Subpoena Duces Tecum (the "Subpoena"):

**DEFINITIONS**

1.   "**2002 HTA Security Agreement**" means a security agreement entered into on

February 7, 2002, between HTA, Defendants, and other holders of HTA Bonds issued under the

1998 Resolution.

2.   "**Agreement**" means any and all agreements, side agreements, contracts, grants of a

security interest or similar right, supplements, account control agreements, deeds of trust on

accounts, or other negotiated or otherwise binding instrument or arrangement between two or more

parties, whether in the form of a Document or other Communication, or supplements thereto.

3.   "**Act 30 and 31 Revenues**" means revenue streams covered by Puerto Rico Act No.

30-2013 (June 25, 2013) and Puerto Rico Act No. 31-2013 (June 25, 2013), which are part of the

HTA Pledged Revenues.

4.   "**Bond Documents**" means the Bond Resolutions, enabling acts, financing statements,

supplemental resolutions, any other Resolutions relating to the HTA Bonds, and any other

documents governing or otherwise related to the HTA Bonds, including any statutes, executive

orders, or official memoranda governing the Excise Taxes.

5.   "**Bond Resolutions**" means (i) Puerto Rico HTA Resolution No. 68-18 (the "**1968**

**Resolution**") and (ii) Puerto Rico HTA Resolution No. 98-06 (the "**1998 Resolution**"), and any

other Resolutions or supplements to Resolutions, issued in connection with the HTA Bonds.

6.   "**BPPR**" means Banco Popular de Puerto Rico, its officers, directors, shareholders,

employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and

any other Person who acted on its behalf.

- 2 -

7. "**Commonwealth**" means the Commonwealth of Puerto Rico and its departments and instrumentalities, and its present and former officers, agents, directors, employee, representatives, accountants, attorneys, trustees, and any Person or entity acting or purporting to act on its behalf.

8. "**Communication**" or "**Communications**" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and, with respect to oral Communications, includes any document evidencing the date, participants, subject matter, and content of any such oral communication, including, but not limited to, mail, e-mail, facsimile, transcripts, minutes, notes, audio, video, electronic recordings, telephone records, and calendar entries.

9. "**Document**" or "**Documents**" are intended to have the broadest possible meaning under Federal Rule 34 and mean any and all writings and recorded materials, or any kind, that are or have been in Your possession, custody or control, whether originals or copies.  Such writings include, but are not limited to, Communications, electronically stored information in any medium, such as emails, text messages, and instant messages, contracts, notes, drafts, interoffice memoranda, memoranda for files, letters, research materials, correspondence, logs, diaries, forms, bank statements, tax returns, card files, books of accounts, journals, ledgers, invoices, drawings, computer files, records, data, print-outs or tapes, reports, statistical components, studies, graphs, charts, minutes, manuals, pamphlets, or books of all nature and kind whether handwritten, types, printed, mimeographs, photocopies or otherwise reproduced, and tape recordings (whether for computer, audio or visual display) or other tangible things on which words, phrases, symbols or information are stored.

10. "**Excise Taxes**" means (i) any excise taxes consisting, among other things, of taxes on gasoline, diesel, crude oil, partially finished and finished oil by-products, other hydrocarbon mixtures, or cigarettes, referenced in 13 L.P.R.A. § 31751; (ii) motor vehicle license fees

referenced in 9 L.P.R.A. §§ 2021 & 5681; and (iii) any other excise taxes or fees allocated or assigned to HTA at any time under any statute.

11. "**Executive Director**" means the Person or Persons who served in the position of Executive Director for HTA during the relevant time period.

12. "**Flow of Funds**" or "**Flow**" means the path, including each and every deposit, credit, withdrawal, debit, or transfer, into or out of an account or designated Fund in the Treasury's accounting system, from their initial receipt or collection through and including the ultimate disposition, if any, of the funds.

13. "**Fund**" means an amount of money or other revenues set aside for the purpose of carrying out a specific activity or to achieve certain objectives pursuant to laws, regulations, restrictions, or limitations and which constitute an independent fiscal and accounting entity, including accounts and designations created to keep record of the proceeds of the issuance of HTA bonds that may be authorized.

14. "**Fund 278**" means the fund bearing that designation in the Treasury's accounting system, including any related subaccounts, as well as any fund (if any) that formerly bore that designation or that is a successor thereto.

15. "**GDB**" means the Puerto Rico Government Development Bank and its successors, including the GDB Debt Recovery Authority and the GDB Public Entity Trust, and their present and former officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on their behalf

16. "**HTA**" means the Puerto Rico Highways and Transportation Authority, the entity known in Spanish as *Autoridad de Carreteras y Transportación de Puerto Rico.*

17. "**HTA Accounts**" include any and all bank accounts, Funds, Fund designations or accounting designations that reflect deposits, withdrawals, transfer or the retention of Excise Taxes

- 4 -

or HTA Pledged Revenues, including, without limitation, Fund 278 designations 278-0660000-781-2014, 278-0660000-993-2014, 278-0660000-782-2014, 278-0660000-994-2015, 278-0660000-081-2014, 278-0660000-00302014, 278-0660000-779-2014, 278-0660000-780-2014, 278-0660000-784-2015 and 278-0660000-785-2015, and bank accounts BPPR Account Nos. -5116, -9458, -5191, -9857, -0303, and -6438, and, Oriental -9874 and GDB-0006, 4276, 3466, 6048 and 9839.

18.    "**HTA Bonds**" means the bonds issued under the 1968 Resolution and the 1998 Resolution, and any supplements or amendments thereto.

19.    "**HTA Pledged Revenues**" means (i) revenues derived from HTA's toll facilities (the "**Toll Revenues**") and (ii) the Excise Taxes.

20.    "**Including**" or "**includes**" means "including but not limited to and without limitation", or "includes but is not limited to and without limitation."

21.    "**Oriental Bank**" means Oriental Bank, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

22.    "**Person**" means a natural person or any corporation, partnership, association, joint venture, firm, trust, or other business enterprise or legal entity, and includes both the singular and the plural.

23.    "**PRIFAS**" means the Puerto Rico Integrated Financial Accounting System and any other accounting and fiscal control systems used by the Commonwealth, the Department of Treasury and HTA.

24.    "**Resolutions**" means decisions or determinations of a deliberative or legislative body, or any subdivisions, entities, or instrumentalities thereof.

25.    "**<u>Signatories</u>**" means any and all Persons, individuals, entities, corporations, agencies, instrumentalities, or representatives thereof, who have signed or otherwise manifested their consent to a Document as a party, or on behalf of a party, to that Document.

26.    "**<u>Treasury</u>**" means the Puerto Rico Department of Treasury and each of its present or former board members, agents, representatives and employees.

27.    "**<u>TSA</u>**" means the Treasury Single Account of the Commonwealth.

28.    "**<u>You</u>**" or "**<u>Your</u>**" refers to Nixon Peabody LLP and its respective divisions, subdivisions, offices, departments, agencies, affiliates, and any current and former officials, officers, trustees, accountants, attorneys, employees, agents, advisors, consultants, experts, and independent contractors, assigns, and any Person or entity acting or purporting to act on their behalf.

29.    Each reference to a corporation, partnership, joint venture, unincorporated association, government agency, or other fictitious Person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors, and successors, and for each such entity, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

30.    Each reference to a natural Person shall be deemed to include that Person's agents, attorneys, and any other Person who acted on that Person's behalf.

31.    In construing the requests, the singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

32.    The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the request.

- 6 -

33.     The words "all," "any," and "each" shall each be construed broadly, meaning "any and all."

34.     The word "concerning" means relating to, referring to, describing, evidencing, or constituting.

## INSTRUCTIONS

1.     This is an exhibit to the Subpoena issued pursuant to the authority of the United States District Court for the District of Puerto Rico requiring You to produce the Documents that are described below.

2.     You are required to answer these HTA-Related Document Requests drawing upon all materials in Your possession, custody, or control, as well as any materials that are not in Your custody but are owned in whole or in part by You, and any materials that, pursuant to any understanding, express or implied, You may use, inspect, examine, or copy.  You must provide all information in response to an HTA-Related Document Request which is known to You, Your agents, consultants employees, accountants, attorneys, or experts, or which appears in Your records.

3.     The following rules of construction shall apply to these HTA-Related Document Requests.

        a.     The terms "all" and "any," whenever used separately, shall be construed as "any and all" to encompass the greatest amount of responsive material.

        b.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of any HTA-Related Document Request all responses that might otherwise be construed to be outside of its scope.

        c.     The term "including" shall always be construed to mean "including, but not limited to," or "including, without limitation" to encompass more than the specifically identified materials.

        d.     The present tense shall also include the past tense and vice versa.

      e.      The use of the singular form of any word includes the plural and vice versa.

4.      Documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in these HTA-Related Document Requests.

5.      You are required to produce all non-identical copies and drafts of each document. The originals of all documents produced in copy form shall be made available for inspection upon request.

6.      Documents attached to each other in their original form should not be separated.

7.      If no information or documents responsive to a numbered paragraph are in Your possession, You are to indicate this in a written response.

8.      The fact that a document has or will be produced by another plaintiff, third party, or other party to these or related proceedings does not relieve You of the obligation to produce Your copy of the same document.

9.      If any document is withheld in whole or in part under claim of any privilege or work product or other immunity, then consistent with Fed. R. Civ. P. 26(b)(5), as applied to this proceeding by Bankruptcy Rule 7026, and PROMESA § 310, 48 U.S.C. § 2170, You are to provide a list of such documents identifying each such document for which any such privilege, work product, or other immunity is claimed, together with the following information:

      a.      the nature of the claim of privilege or immunity, including the statute, rule, or decision giving rise to the claim of privilege or immunity;

      b.      all facts relied upon in support of the claim of privilege or immunity;

      c.      all Persons or entities on whose behalf the privilege or immunity is claimed;

      d.      the type of document (*e.g.*, letter, memorandum, note, telegram, e-mail, chart, report, recording, etc.);

e.  the subject matter (without revealing the information as to which privilege is claimed);

f.  its date, author(s), sender(s), addressee(s), and recipient(s); and

g.  the paragraph(s) of these HTA-Related Document Requests to which production of the document is responsive.

You are further directed to describe the factual and legal basis for each claim of privilege or immunity in sufficient detail so as to permit the court to adjudicate the validity of the claim of privilege or immunity, and to produce all documents or portions thereof not subject to Your objection.

10.  If any document requested was, but is no longer, in Your possession, custody, or control, identify the document and state what disposition was made of it and the date or dates upon which such disposition was made, and additionally, produce all documents relating to the disposition of such document.

11.  If You object to any HTA-Related Document Request (or portion thereof), state the reason for the objection in detail and respond to that HTA-Related Document Request as narrowed by Your objection.

12.  Unless otherwise specified in a specific request, electronically stored information ("ESI") as that term is used in Fed. R. Civ. P. 34 should be produced as follows:

a.  TIFFs.  Black and white images shall be delivered as single page Group IV TIFF image files.  Color images must be produced in .jpeg format.  Image file names should not contain spaces or special characters and must have a unique file name, *i.e.*, Beginning Bates Number.  Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

b.  Unique IDs.  Each image should have a unique file name and should be named with the Bates number assigned to it.

c.     Text Files.  Extracted full text in the format of document level text files shall be provided in a separate folder, one text file per document.  Each text file should match the respective TIFF filename (Beginning Bates Number).  Text from redacted pages will be produced in OCR format rather than extracted text.

d.     Parent-Child Relationships.   Parent-child relationships (the association between an attachment and its parent record) should be preserved.

e.     Database Load Files/Cross-Reference Files.  Records should be provided in a format compatible with the following industry standards.

- The image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

- The data file (.dat) should contain all the fielded information that will be loaded into the database.

- The first line of the .dat file must be a header row identifying the field names.

- The .date file must use the following *Concordance* default delimiters:  Comma          ¶          ASCII          character          (020)  Quote þ ASCII character (254).

- Date Fields should be provided in the format mm/dd/yyyy.

- Date and time fields must be two separate fields.

- If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

- An OCRPATH field must be included to provide the file path name of the extracted text file(s).

- Each text file must be named after the Beginning Bates Number.

- For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

- Beginning Bates Number and Ending Bates Number should be two separate fields.

- A complete list of metadata fields is included in paragraph 11(f).

f.      Metadata.  For all ESI records, provide all of the following metadata fields: Custodian, Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Record Type, Master Date, SentOn Date and Time, Received Date and Time, Create Date and Time, Last Modified Date and Time, Parent Folder, Author, To, From, CC, BCC, Subject/Title, Original Source, Native Path, File Extension, File Name, File Size, Full Text, and page count.

g.      Spreadsheets.  For spreadsheets that were originally created using common, off-the-shelf software (*e.g.*, Microsoft Excel), produce the spreadsheets in native format and, in addition, in TIFF format.  Native file documents must be named per the Beginning Bates Number.  The full path of the native file must be provided in the .dat file.

2.   Hard copy documents shall be produced as follows:

a.      TIFFs.  Black and white images shall be delivered as single page Group IV TIFF image files.  Color images must be produced in .jpeg format.  Image file names should not contain spaces or special characters and must have a unique file name, *i.e.*, Beginning Bates Number.  Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

b.      Unique IDs.  Each image should have a unique file name and should be named with the Bates number assigned to it.

c.      OCR.  High-quality document level OCR text files should be provided in a separate folder, one text file per document.  Each text file should match the respective TIFF filename (Beginning Bates Number).  For redacted documents, provide the re-OCR'd version.

d.      Database Load Files/Cross-Reference Files.  Records should be provided in a format compatible with the following industry standards.

- The image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

- The data file (.dat) should contain all the fielded information that will be loaded into the database.

- The first line of the .dat file must be a header row identifying the field names.

- 11 -

- The .date file must use the following *Concordance* default delimiters: Comma ¶ ASCII character (020) Quote þ ASCII character (254).

- Date Fields should be provided in the format mm/dd/yyyy.

- Date and time fields must be two separate fields.

- If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

- An OCRPATH field must be included to provide the file path name of the extracted text file(s).

- Each text file must be named after the Beginning Bates Number.

- For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

- Beginning Bates Number and Ending Bates Number should be two separate fields.

e.   Unitizing of Records.  In scanning hard copy records, distinct records should not be merged into a single record, and single records, should not be split into multiple records (*i.e.*, hard copy records should be logically unitized).

f.   Parent-Child Relationships.  Parent-child relationships (the association between an attachment and its parent record) should be preserved.

g.   Objective Coding Fields.  The following objective coding fields should be provided:  Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Source-Custodian, and page count.

13.   These HTA-Related Documents Requests are continuing in nature.  If any information or document responsive to an HTA-Related Document Request herein is not presently in Your possession, custody, or control but subsequently becomes available, is discovered or is created, or comes into Your possession, custody, or control, You have a continuing obligation

pursuant to Fed. R. Civ. P. 26(e), and are hereby requested, to supplement Your responses to these HTA-Related Document Requests within a reasonable period of time after it comes into Your possession, custody, or control.

### RELEVANT DATE SECTION

Unless otherwise specified, the relevant time period for these requests is January 1, 2004 to the present.

### DOCUMENT REQUESTS

**REQUEST NO. 1:**

All Documents and Communications governing or referring to the terms of the HTA Bonds, including without limitation HTA Series 2004 (2004), Series I (2004), Series J (2004), Series M (2007), Series N (2007), Series CC (2007), Series AA-1 (2010), Series AA-2 (2010), and Series H (2010), including closing binders for HTA Bond transactions, to which You served as bond counsel.

**REQUEST NO. 2**:

All Documents and Communications constituting, governing or referring to Resolutions, and any amendments or supplements related thereto, issued in connection with any HTA Bonds, including without limitation HTA Series 2004 (2004), Series I (2004), Series J (2004), Series M (2007), Series N (2007), Series CC (2007), Series AA-1 (2010), Series AA-2 (2010), and Series H (2010), to which You served as bond counsel.

**REQUEST NO. 3:**

All other Documents and Communications governing or referring to HTA Bonds or Bond Documents.

- 13 -

**REQUEST NO. 4:**

All Documents and Communications reflecting or governing the Flow of Funds of Excise

Taxes, monies within Fund 278 (or any other "special deposit" in favor of HTA), and the HTA

Pledged Revenues.