# **EXHIBIT Q**

April 21, 2021

<u>**VIA E-MAIL**</u>

John Hughes, III
Atara Miller
MILBANK LLP
55 Hudson Yards
New York, New York 10001

Martin Sosland
BUTLER SNOW LLP
5430 Lyndon B. Johnson Freeway, Suite 1200
Dallas, Texas 75240
1530 3rd Avenue South, Suite 1600
Nashville, Tennessee 37201


Re:   <u>***Discovery in Revenue Bond Adversary Proceeding, Nos. 20-00003, 20-00004, 20-00005***</u>

Counsel:

      We write in response to your letter of earlier today (April 21, 2021), the parties' meet-and-confer discussions on April 20, 2021, and the "Scope of Governments' [sic] Objections" section of your April 19, 2021 Letter.

**Scope of the Government's Production**

      Defendants claim that they did not intend to circumvent the Government's objections by seeking draft agreements, negotiation communications, and similar non-governing materials from the Governments' current and former law firms (while entirely excluding the Government's current counsel from their ongoing meet and confer discussions). Rather, Defendants claim they did not realize the Government had objected to production of these materials as beyond the scope of Rule 56(d) Order. This argument cannot be taken seriously, particularly given that today—fully aware of the Governments' objections on this point—Defendants issued subpoenas seeking these very materials on the Government's former counsel, Greenberg Traurig, and current counsel Pietratoni Mendez & Alvarez.

      In response to PRIFA Request No. 1, CCDA Request No. 1, and HTA Request No. 1, the Government Parties' responses made clear they objected to producing anything other than final deal documents because the other materials Defendants requested did not constitute documents "governing" the bond issuances and were therefore beyond the scope of the Rule 56(d) Order. In a lengthy objection-by-objection chart in its March 4, 2021 meet and confer letter, the Government Parties made clear that, in connection with requests for documents governing the Bonds, "the Government does not agree with Defendants' contention that documents governing the bonds could include documents that are not legally operative." (Mar. 4, 2012 Ltr. at 4-5 (meaning of "Governing"). The Government Parties further specified that "[t]o the extent the Government locates official statements or agreements related to the PRIFA, CCDA, or HTA bonds, it will produce them." (Mar. 4, 2012 Ltr. at 4-5 (Definitions of certain agreements and bond documents)). The Government is complying with this agreement and has asked current and former counsel you separately subpoenaed to take a consistent approach with respect to materials located in the Government's client files.

Defendants cannot now claim ignorance as to the Government's objections regarding non-final bond documents or communications about the bond documents. In fact, the Government Parties' opposition to Defendants' motion to compel specifically argued that discovery of emails relating to the bond documents was improper because only the final, public agreements could be construed as "governing" documents under the Rule 56(d) Order. (Opp. to Mot. to Compel, ¶ 35.) The Government Parties' opposition further reiterated that they agreed to produce the bound volumes and "additional documents governing the bonds" they may find in the archived records of GDB. (*Id.* ¶ 33.) Defendants sought an order compelling production of email discussions regarding HTA resolutions, and the Court did not grant it. (*See* Reply Br., ¶ 46; Order on Mot. to Compel).

Defendants attempt to obscure the issue by misconstruing the Parties' discussions about the utility of having abstract discussions regarding objections. In prior correspondence, the Government Parties explained they did not think it productive for the parties to engage in academic, hypothetical debates regarding objections. But that is a far cry from an agreement to produce any document the Government Parties located, notwithstanding clearly articulated positions to the contrary.

The Government Parties dispute your characterization of their discussions on that point. On February 28, 2021, you sent a letter contending that the Government Parties' discovery responses did not comply with Federal Rule of Civil Procedure 34(b)(2)(C), claiming the responses did not identify specific objections pursuant to which the Government would be withholding documents. Consistent with the Advisory Committee comments to Rule 34, the Government Parties responded that their objections complied with the rule because they clearly delineated the scope of the search. (Mar. 4, 2021 Ltr. at 2); Fed. R. Civ. P. 34 advisory committee note to 2015 amendment ("An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'"). In that same letter, the Government Parties meticulously responded to Defendants' more than a dozen issues with our objections. We also suggested the Parties meet and confer regarding "concrete disputes as to the scope of production" rather than in engaging in debate about objections. (*Id.* at 2, 4-15).

Those responses in Appendix A to our March 4, 2021 letter made clear the scope of the Government Parties' production agreement. That agreement did not include any agreement to produce ***all materials*** responsive to Defendants' requests as written, given the Government's specific objections and delineated parameters:

- "To the extent the Government locates official statements or agreements related to the PRIFA, CCDA, or HTA bonds, it will produce them."

- "AAFAF is working to collect any policies and procedures regarding the rum tax proceeds generally, and without limitation to the first $117 million, and to prepare a PRIFAS export that would cover all rum tax revenues."

- "[T]he Government is not agreeing to search for and produce all Communication regarding the topics in Defendants' requests. In the context of this litigation, even the revised definition renders the requests in which it appears overbroad and unduly burdensome."

- "The Government disclosed precisely what it construes the word "governing" to mean because it anticipated a dispute would arise regarding what that term would entail.  In particular, the Government does not agree with Defendants' contention that documents governing the bonds could include documents that are not legally operative."

-  "The Government agrees that if it finds any documents delineating the scope of the Executive Director's authority (or lack thereof) to enter into Security Agreements or any security agreements regarding the HTA Bonds that have not already been produced, it will produce them."

Other responses in Appendix A to our March 4, 2021 letter made clear the Government Parties needed more information from Defendants to determine if there was a live dispute as to some of their objections:

- "The Government requests that the Monolines explain what they believe the Government has not agreed to provide that should be provided. We are already producing an export form PRIFAS that will show accounting treatment"

- "The Government stands by its objections to the subparts [in the requests]. To the extent Defendants wish to meet and confer regarding specific issues, the Government is willing to discuss further."

- "The Government's objection to the terms 'concerning,' etc., is that they are so broad as to render it unclear what the Monolines believe they are entitled to beyond what the Government has agreed to provide. We request that you make your requests with specificity."

Your March 9, 2021, letter declined to "respond point-by-point to Appendix A to the March 4, letter" and asserted that "Defendants understand the March 4 Letter as indicating that the Government does not intend to withhold any documents it collects if those documents are responsive to Defendants requests as written."  (Mar. 9, 2021 Ltr. at 2).  That reading is not consistent with our March 4 Letter, as we reiterated in our March 16, 2021 response by stating that "our objections do have meaning" as they "delineate the scope of the agreed search and ***the documents we have agreed to provide***." (Mar. 16, 202 Ltr. at 1 (emphasis added).)  Because the relevant section of your March 9, 2021 letter did not identify any concrete dispute regarding specific documents or requests, the Government Parties noted that the parties did not appear to have a live dispute on the "scope of the search or production agreement" beyond what was already before the Court on Defendants' motion to compel (*Id.*)

As we have always said, if Defendants believe they are entitled to documents the Government Parties have not agreed to provide, we are willing to meet and confer.  However, it is entirely improper to serve subpoenas on the Government's law firms in an attempt to negotiate with the Government's agents the production of materials that the Government itself has indicated it does not agree to provide, particularly without including the Government's current lawyers or even copying them on your correspondence with these firms.

## Communications with Subpoenaed Law Firms

As we noted in our April 20, 2021 letter, O'Melveny reviewed documents provided by the Government Parties' current and former law firms Greenberg Traurig, Hawkins Delafield & Wood, and Nixon Peabody.  Consistent with the Government's above-described objections, it

directed Greenberg, Hawkins, and Nixon to produce documents "governing" the bonds—i.e., final agreements or resolutions.

The Government Parties' communications with current and former lawyers for the Government on this point could not possibly have prejudiced the Defendants, as you have suggested.  Each of the third parties served responses and objections to the subpoenas setting forth their objections and the scope of production to which they would agree.  Whether those objections were based on communications with current counsel for the Government is entirely irrelevant to Defendants' ability to respond to those objections.

Indeed, not only have Defendants known what information the law firms planned to withhold since the responses and objections were served, they have had repeated telephonic and written communications with these law firms seeking more of the Governments' documents, while knowingly and intentionally excluding the Government's current lawyers from those conversations.  As your own actions have made clear, nothing about the Government Parties' proper communications with their current and former counsel has prejudiced Defendants from understanding what documents were being withheld or from acting on that knowledge.  It is Defendants' attempts to end run both the Government's current counsel and their objections to your patently overbroad discovery requests that are improper.

**Questions Regarding Third Party Subpoenas**

Notwithstanding that it remains our position that you are not entitled to this information, in the interest of compromise and to avoid burdening the Court with motion practice, the Government Parties' answers to your questions are below. Our providing this information is without waiver of our position that Defendants' are not entitled to this information and the Government Parties reserve all rights.

| Defendants' Question | Government Parties' Response |
|---|---|
| Defendants understand that, to date, the Government has not instructed any third-party entities other than law firms to withhold documents (except that reviews of documents collected by the Government's accounting firms are ongoing). Please confirm. | Confirmed. |
| Defendants understand that the Government's April 20 Letter discloses all communications between the Government's counsel and the third-party entities, and that to the extent that no communications with an entity are explicitly mentioned in the April 20 Letter, there was no communication between Proskauer or O'Melveny and that subpoenaed entity. Please confirm. | Confirmed. |

| | |
|---|---|
| **Rum Producers.** Did the Government's communications with Bacardi concern any of the following (and if so, please identify which): (i) the Government's view of the scope of or categories of documents that should or should not be produced in response to the subpoena, (ii) potential objections that could be raised to Defendants' discovery requests, (iii) how to respond to the subpoenas. Did Proskauer or Bacardi initiate the communication? Why did Proskauer, as opposed to O'Melveny, communicate with Bacardi?<br><br>Same questions for Serallés. | As the Government Parties explained in our April 20, 2021 letter, the Government Parties did not direct Bacardi or Serallés how to respond to the subpoenas. The Government Parties provided Bacardi with a copy of the Rule 56(d) order and responded to a question regarding whether the Government had produced certain documents.  The Government Parties also provided Serallés with a copy of the transcript of the hearing on the Motion to Compel. The Government Parties did not direct Bacardi or Serallés to raise specific objections or suggest documents that they should either produce or withhold.<br><br>Defendants are not entitled to information regarding who initiated communications because it is irrelevant.  Further, how Proskauer and O'Melveny choose to allocate tasks amongst themselves in a matter where there is a common interest between the Board and the Government is privileged and work product. |
| **Auditors**. Did the Government's communication prior to the motion to compel heading [sic] involve discussion of any of the three topics identified above as to Bacardi (and if so, please identify which topic(s) and which auditor(s) each topic was discussed with)? Same question for post-motion to compel communications.<br><br>Defendants understand from the April 20 Meet-and-Confer that the Government is still in the process of reviewing documents from auditors. Will the Government prepare a privilege log for any documents withheld on the basis of privilege? Additionally, will the Government disclose any instances in which documents collected by auditors are being withheld on the basis of objections other than privilege assertions? | In their pre-hearing communications, the Government Parties shared their view of the scope of discovery that the Court authorized and explained the position the Government has taken in its own responses, which also were publicly set forth in their briefing on your motion to compel.  The Government Parties did not direct auditors to raise specific objections or suggest particular documents to produce or withhold in response to the subpoenas that were served.<br><br>Following the motion to compel, the Government Parties also affirmatively sought potentially responsive documents from the auditors in order to help locate potentially responsive materials.  The Government Parties did not direct auditors to withhold any documents on responsiveness grounds.  The Government Parties are reviewing for privilege the documents the auditors collected.  To the extent the Government |

| | directs an auditor to withhold documents on privilege grounds, the Government will ensure Defendants receive a privilege log. |
|---|---|
| **Law Firms.** Is the Government a current client of any of the subpoenaed law firms? If so, which? Will the Government prepare a privilege log for any documents withheld on the basis of privilege? Additionally, will the Government disclose the basis for any instructions to withhold documents on grounds other than privilege? Why did Proskauer, as opposed to just O'Melveny, participate in communications with law firms? | As Defendants are well aware, Nixon Peabody is currently counsel to AAFAF. Defendant Ambac has participated in discussions with Nixon in the context of the COFINA restructuring and Nixon's contract with AAFAF is publicly available.[1]<br><br>To the extent the Government directs a law firm to withhold documents on privilege grounds, it will provide an appropriate privilege log.  However, the Government will not prepare a privilege log with respect to documents that are outside the categories of what it has agreed to produce.<br><br>The Government Parties will not disclose the content of communications with the Government's current and former law firms beyond the information it has already provided above an in its April 20, 2021 letter.<br><br>Proskauer Rose, as counsel to the Oversight Board represents the Commonwealth and HTA as debtor in the Title III proceedings, including in connection with the PRIFA, HTA, and CCDA adversary proceedings.  *See* PROMESA §§ 301(c)(7) (Oversight Board is Trustee), 315(b) (Oversight Board is representative of the debtor).  It is entirely appropriate for Proskauer to join discussions. The reasons why Proskauer may have participated in any particular call is work product and protected by the common interest and joint defense privileges. |

Sincerely,

/s/ *Elizabeth L. McKeen*                                     /s/ *Michael A. Firestein*

Elizabeth L. McKeen                                           Michael A. Firestein

---

[1] https://contratos.ocpr.gov.pr/