Hearing Date: June 16, 2021 at 9:30AM (Atlantic Standard Time)
Response Deadline: June 2, 2021 at 4:00PM (Atlantic Standard Time)

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>             Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

---

### THREE HUNDRED TWENTY-FIRST OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO CLAIMS FOR WHICH THE COMMONWEALTH IS NOT LIABLE

---

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial

Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III

representative of the Commonwealth pursuant to section 315(b) of the *Puerto Rico Oversight,*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Management, and Economic Stability Act* ("PROMESA"),[2] file this three hundred twenty-first

omnibus objection (the "Three Hundred Twenty-First Omnibus Objection") to claims for which

the Commonwealth is not liable, each as listed on **Exhibit A** hereto, and in support of the Three

Hundred Twenty-First Omnibus Objection, respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA

section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

### A.     The Bar Date Orders

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof

(the "Commonwealth Title III Case").

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing

Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of

Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing

Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of

Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief

requested in the Bar Date Motion and established deadlines and procedures for filing proofs of

claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

the Commonwealth, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.     The GDB Title VI Proceedings and Qualifying Modification**

5.     The Government Development Bank ("GDB") is a public corporation and governmental instrumentality of the Commonwealth, which was created by the Legislative Assembly in 1948 to aid the government of the Commonwealth (the "Government") in performing its fiscal duties and in more effectively carrying out its responsibility to develop the economy of the Commonwealth.  On April 28, 2017, the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which contemplated an orderly wind-down of the operations of GDB based upon the determination that there was no clear path for the long-term viability of GDB based on its then-current financial condition.

6.     On July 12, 2017, the Oversight Board issued a resolution authorizing GDB, pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA.  On August 10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to PROMESA section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District Court for the District of Puerto Rico.

7.     On August 24, 2017, the Commonwealth enacted Law 109-2017, the Government Development Bank for Puerto Rico Debt Restructuring Act (the "GDB Restructuring Act"), to address the GDB's insolvency and effectuate the terms of the Qualifying Modification. As part of its reforms, Law 109-2017 created two new public entities: the Recovery Authority and the Public Entity Trust (the "PET").

3

8.      The Recovery Authority was created as a statutory public trust and governmental public instrumentality of the Commonwealth for the purpose of implementing the RSA by issuing restructuring bonds in exchange for certain previously held GDB bonds (the "Participating Bonds").  *See* GDB Restructuring Act, Arts. 201, 203.   The GDB Restructuring Act further establishes that the Recovery Authority is a "separate legal entity from the Government of Puerto Rico, GDB, and any other Government Entity."  *See* GDB Restructuring Act, Art. 202.

9.      The GDB Restructuring Act further authorized the GDB to execute the Public Entity Deed of Trust (the "PET Deed"), the terms of which would govern the treatment of the deposits and liabilities of Commonwealth public entities.  Together, the GDB Restructuring Act and the PET Deed created the PET for the purpose of receiving from the GDB, among other assets, the deposit liabilities (the "Designated Deposits") of non-municipal government entities (the "Designated Depositors").  Under the GDB Restructuring Act and the PET Deed, the transfer of the Designated Deposits to the GDB "shall be treated as an irrevocable, non-voidable and absolute transfer of all of GDB's legal and equitable right, title and interest[.]"  GDB Restructuring Act, Art. 303.   Furthermore, upon the assumption by the PET of the Designated Deposits, the Designated Depositors "shall, immediately and forever . . . cease to have any right, interest or claim against the GDB or any of its assets, or any successors or assigns thereof (other than the Public Entity Trust)."  *Id.*

10.      The PET was constituted as a public trust and governmental instrumentality of the Commonwealth, independent and separate from any other government entity, including the GDB and the Recovery Authority.  *See* GDB Restructuring Act, Art. 302; PET Deed at 3.  The GDB Restructuring Act controls both the balance of liabilities owed to non-municipal government entities and the disbursement of funds.  Under the GDB Restructuring Act, the balance of liabilities

was determined by applying the outstanding balance of any deposit of a non-municipal government entity and GDB against the outstanding balance of any loan owed to the GDB by such non-municipal government entity. *See* GDB Restructuring Act, Art. 302. Moreover, the GDB Restructuring Act dictates that that the PET Deed "shall set forth the manner in which the Public Entity Trust Assets shall be distributed among the Designated Depositors." GDB Restructuring Act, Art. 305.

11.     Pursuant to the GDB Restructuring Act's mandate, the PET Deed established the procedure for disbursing funds to the Designated Depositors. Each Designated Depositor was granted a pro rata share of common units in the PET, called PET Units, in full and final satisfaction of any and all claims such Designated Depositor may have against GDB. *See* PET Deed, § 1.7. The Trustee may then, in its discretion, distribute cash to the Designated Depositors on account of their respective PET Units. *Id.* Upon any such distribution of cash from the PET to a Designated Depositor, the cash disbursed from the PET shall no longer constitute part of the PET, and the Designated Depositor's interest in the PET shall be deemed satisfied to the extent of such cash distribution. *Id.*

12.     On November 7, 2018, the Court approved the Qualifying Modification pursuant to PROMESA section 601(m)(1)(D). *See* ECF No. 270 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018). The Qualifying Modification provides for, among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery Authority in exchange for the cancellation of, among other things, certain participating bonds and guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and

its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB. *Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Aug. 10, 2018).

13.    On November 17, 2018, this Court issued its *Findings of Fact, Conclusions of Law, and Order Approving Qualifying Modification for the Government Development Bank for Puerto Rico Pursuant to Section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act* (the "Qualifying Modification Order") [ECF No. 270] in the GDB's Title VI case, Case No. 18-1561 (LTS) (the "Title VI Case").  In the Qualifying Modification Order, this Court, *inter alia*, approved GDB's application for a Qualifying Modification based on the terms in the RSA, as amended.

14.    Under the Qualifying Modification Order, (i) holders of Participating Bonds agreed to the cancellation of their Participating Bonds in exchange for new secured bonds issued by the Recovery Authority; (ii) the Recovery Authority agreed to issue new bonds to holders of Participating Bonds in exchange for the irrevocable transfer of all of GDB's assets (except certain excluded assets) as of July 1, 2018 to the Recovery Authority; and (iii) GDB agreed to irrevocably transfer these assets to the Recovery Authority in consideration of the Recovery Authority's issuance of the new bolds to the holders of Participating Bonds in exchange for the cancellation of the Participating Bonds.  Upon this exchange, Article 404 of the GDB Restructuring Act states that the holders of Participating Bonds, and all other creditors of GDB, "shall, immediately and forever, and without further actions or documentation, cease to have any right, interest or claim against GDB or any of its assets, or any successors or assigns thereof."

15.     On November 29, 2018, GDB announced the consummation of the Qualifying Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

## C.      Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections

16.     To date, approximately 179,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

17.     Of the proofs of claim filed, approximately 115,000 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

18.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively,

the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

19.     In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

20.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, the Court has held over 14 hearings related to over 140 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Electric Power Authority ("PREPA"), and/or the Employees Retirement System for the Government of the Commonwealth of Puerto Rico ("ERS").  Based upon rulings and orders of the Court to date, approximately 56,000 claims, asserting over $43.0 trillion in liability against the Commonwealth,

COFINA, HTA, PREPA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

21.    This Three Hundred Twenty-First Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## **OBJECTIONS TO PROOFS OF CLAIM**

22.    The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

23.    The Three Hundred Twenty-First Omnibus Objection seeks to disallow, in accordance with the Amended Omnibus Objection Procedures, claims that seek recovery for amounts for which the Commonwealth is not liable, each as set forth on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed").

24.    Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  Each of the Claims to Be Disallowed purports to assert liabilities against the Commonwealth, but, as a result of the Qualifying Modification, the Commonwealth is not liable for the liabilities asserted in the Claims to Be Disallowed.

25.    One of the Claims to be Disallowed, Claim No. 36818, was filed by the State Insurance Fund Corporation and is based on holdings of GDB Senior Guaranteed Notes (2013), Series B-1.  This bond series was one of the Participating Bonds subject to the Qualifying Modification.  *See* Qualifying Modification Order at 9.  As a holder of a Participating Bond, the claimant, like all other holders of Participating Bonds, was subject to the bond exchange process described in the GDB Restructuring Act, the Qualifying Modification and approved by the Court

9

in the Qualifying Modification Order.  As a result of this process, the original bond was cancelled, a new bond was issued by the Recovery Authority, and the claimant "cease[d] to have any right, interest or claim against GDB or any of its assets."  *See* GDB Solicitation Statement, E-8; Qualifying Modification Order at 11.  Accordingly, the Commonwealth is not liable for this claim and it should be disallowed.

26.     The remaining Claims to be Disallowed, Claim Nos. 28537, 31712, 36276, 50438 and 73021, are all claims filed by non-municipal government entities based on deposits with the GDB.  Claim Nos. 31712 & 36276 were filed by the State Insurance Fund Corporation, and Claim Nos. 50438 & 73021 were filed by the Puerto Rico Land Administration.  Under the PET Deed and Article 303 of the GDB Restructuring Act, claims against the GDB by non-municipal government entities for deposit liabilities with the GDB were extinguished and any alleged right to recover on these claims lies with the PET.  Moreover, claimants the State Insurance Fund Corporation and the Puerto Rico Land Administration are listed in Schedule 2 to the PET Deed, which identifies the Designated Depositors whose Designated Deposits were transferred to the PET.  As explained above, the GDB Restructuring Act and the PET Deed establish the procedures for these Designated Depositors to then receive disbursement from the funds held in trust by the PET.  As a result of the Qualifying Modification, upon the transfer of the Designated Deposits to the PET, the Designated Depositors "cease[d] to have any right, interest or claim against GDB or any of its assets."   GDB Restructuring Act, § 304; GDB Solicitation Statement, E-71. Accordingly, the Commonwealth is not liable for these claims and they should be disallowed.

27.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Three Hundred Twenty-First Omnibus Objection (Substantive) of the*

*Commonwealth of Puerto Rico to Claims for Which the Commonwealth is Not Liable*, dated April
30, 2021, attached hereto as **Exhibit B**.

## NOTICE

28.      In accordance with the Amended Omnibus Objection Procedures and the Court's
Notice Order, the Commonwealth is providing notice of this Three Hundred Twenty-First
Omnibus Objection to (a) the individual creditors subject to this Three Hundred Twenty-First
Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the
*Fourteenth Amended Case Management Procedures* [ECF No. 15894-1]), which is available on
the Debtors' case website at https://cases.primeclerk.com/puertorico.  The notice for this Three
Hundred Twenty-First Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations
of the Three Hundred Twenty-Omnibus Objection and all of the exhibits attached hereto are being
filed with this objection and will be served on the parties.  The Commonwealth submits that, in
light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

29.      This Three Hundred Twenty-First Omnibus Objection is limited to the grounds
stated herein.  Accordingly, it is without prejudice to the rights of the Debtors or the rights of any
other party in interest in the Title III Cases to object to the Claims to Be Disallowed or any other
claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or
procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is
intended or should be construed as: (a) an admission as to the validity of any claim against the
Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases
to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request
or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of

11

the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in

the Title III Cases under PROMESA, the Bankruptcy Code or any other applicable law.

## <u>NO PRIOR REQUEST</u>

30.     No prior request for the relief sought in this Three Hundred Twenty-First Omnibus

Objection has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: April 30, 2021
San Juan, Puerto Rico

Respectfully submitted,

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ Martin J. Bienenstock
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board for
Puerto Rico, as representative of the
Commonwealth of Puerto Rico*

**Fecha de la vista: 16 de junio de 2021, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 2 de junio de 2021, a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE PUERTO RICO**

---

*In re*:

JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,

      como representante del

ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,

                    Deudores.[1]

PROMESA
Título III

Núm. 17 BK 3283-LTS

(Administrado Conjuntamente)

**La presente radicación guarda relación con el ELA.**

---

**TRICENTÉSIMA VIGÉSIMA PRIMERA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES POR LAS QUE EL ELA NO TIENE RESPONSABILIDAD**

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III del ELA conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"), [2] radica esta tricentésima vigésima primera objeción global (la "Tricentésima vigésima primera objeción global") a reclamaciones por las que el ELA no tiene responsabilidad, según aparecen en el **Anexo A** del presente documento, y en apoyo de la Tricentésima vigésima primera objeción global manifiesta respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

**A.      Órdenes de Fecha Límite**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA").

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo del ELA, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.      El procedimiento de Título VI del BGF y la modificación calificatoria**

5.      El Banco Gubernamental de Fomento para Puerto Rico ("BGF") es una corporación pública e instrumentalidad gubernamental del Estado Libre Asociado, que fue creada por la Asamblea Legislativa en 1948 para ayudar al gobierno del Estado Libre Asociado (el "Gobierno") en el desempeño de sus deberes fiscales y en el cumplimiento más efectivo de su responsabilidad de desarrollar la economía del Estado Libre Asociado. El 28 de abril de 2017, la Junta de Supervisión certificó por unanimidad cierto Plan Fiscal del BGF de febrero de 2017, que contemplaba una liquidación ordenada de las operaciones del BGF en base a la determinación de que no había un camino claro para la viabilidad a largo plazo del BGF en base a su condición financiera actual en ese momento.

3

6.      El 12 de julio de 2017, la Junta de Supervisión emitió una resolución por la que

autorizaba al BGF, en virtud de la Sección 601(e) de PROMESA, a acogerse al Título VI de

PROMESA. El 10 de agosto de 2018, el BGF radicó una petición de aprobación de una

modificación calificatoria, a tenor con la sección 601(m)(1)(D) de PROMESA (la "Modificación

Calificatoria"), en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

7.      El 24 de agosto de 2017, el Estado Libre Asociado promulgó la Ley 109-2017, la

Ley de Reestructuración de la Deuda del Banco Gubernamental de Fomento para Puerto Rico (la

"Ley de Reestructuración del BGF"), para abordar la insolvencia del BGF y hacer efectivos los

términos de la Modificación Calificatoria. Como parte de sus reformas, la Ley 109-2017 creó dos

nuevas entidades públicas: la Autoridad de Recuperación y el Fideicomiso de Entidades Públicas

(el "FEP").

8.      La Autoridad de Recuperación fue creada como un fideicomiso público legal y

una instrumentalidad pública gubernamental del ELA con el propósito de implementar el RSA

mediante la emisión de bonos de reestructuración a cambio de ciertos bonos del BGF c (los

"Bonos Participantes"). *Véase* la Ley de Reestructuración del BGF, Arts. 201, 203. La Ley de

Reestructuración del BGF establece además que la Autoridad de Recuperación es una "entidad

legal separada del Gobierno de Puerto Rico, del BGF y de cualquier otra entidad

gubernamental". *Véase* la Ley de Reestructuración del BGF, Art. 202.

9.      La Ley de Reestructuración del BGF autorizó además al BGF a ejecutar la

Escritura de Fideicomiso de Entidades Públicas (la "Escritura del FEP"), cuyos términos regirían

el tratamiento de los depósitos y pasivos de las entidades públicas del ELA. Conjuntamente, la

Ley de Reestructuración del BGF y la Escritura del FEP crearon el FEP con el fin de recibir del

BGF, entre otros activos, los pasivos de depósito (los "Depósitos Designados") de entidades

4

gubernamentales no municipales (los "Depositarios Designados"). Según la Ley de Reestructuración del BGF y la Escritura del FEP, la transferencia de los Depósitos Designados al BGF "se considerará una transferencia irrevocable, no anulable y absoluta de todos los derechos, títulos e intereses por ley y por jurisprudencia del BGF[.]".Ley de reestructuración del BGF, Art. 303. Además, tras la asunción por parte del FEP de los Depósitos Designados, los Depositarios Designados "dejarán, inmediatamente y a perpetuidad... de tener cualquier derecho, interés o reclamación contra el BGF o cualquiera de sus activos, o cualquier sucesor o cesionario de los mismos (que no sea el Fideicomiso de Entidades Públicas)...". *Id*.

10.     El FEP se constituyó como un fideicomiso público y una instrumentalidad gubernamental del ELA, independiente y separada de cualquier otra entidad gubernamental, incluyendo el BGF y la Autoridad de Recuperación. *Véase* la Ley de Reestructuración del BGF, Art. 302; Escritura del FEP en 3. La Ley de Reestructuración del BGF controla tanto el saldo de las deudas con entidades gubernamentales no municipales como el desembolso de fondos.  De acuerdo con la Ley de Reestructuración del BGF, el saldo del pasivo se determinó aplicando el saldo pendiente de cualquier depósito de una entidad gubernamental no municipal y el BGF contra el saldo pendiente de cualquier préstamo adeudado al BGF por dicha entidad gubernamental no municipal. *Véase* la Ley de Reestructuración del BGF, Art. 302. Además, la Ley de Reestructuración del BGF establece que la Escritura del FEP "establecerá la forma en que los Activos Fiduciarios de la Entidad Pública serán distribuidos entre los Depositarios Designados". Ley de Reestructuración del BGF, Art. 305.

11.     A tenor con el mandato de la Ley de Reestructuración del BGF, la Escritura del FEP estableció el procedimiento de desembolso de fondos a los Depositarios Designados. A cada Depositario Designado se le concedió una participación prorrateada de unidades comunes en el

FEP, denominadas Unidades FEP, en satisfacción total y definitiva de todas y cada una de las reclamaciones que dicho Depositante Designado pudiera tener contra el BGF. *Véase* la Escritura del FEP, § 1.7. El Fideicomisario podrá entonces, a su criterio, distribuir efectivo a los Depositarios Designados a cuenta de sus respectivas Unidades FEP. *Id*. En el momento en que se distribuya efectivo del FEP a un Depositario Designado, el efectivo desembolsado del FEP dejará de formar parte del FEP, y el interés del Depositario Designado en el FEP se considerará satisfecho en la medida de dicha distribución de efectivo. *Id*.

12.     El 7 de noviembre de 2018, el Tribunal aprobó la Modificación Calificatoria a tenor con la sección 601(m)(1)(D) de PROMESA. *Véase* ECF Núm. 270 en el *Banco Gubernamental de Fomento para Puerto Rico*, Caso Núm. 18-1561 (D.P.R. 7 de noviembre de 2018). La Modificación Calificatoria prevé, entre otras cosas, (i) la emisión de nuevos bonos por parte de la recién creada Autoridad de Recuperación de Deuda del BGF a cambio de la cancelación de, entre otras cosas, determinados bonos participativos y créditos de bonos garantizados (colectivamente, los "Bonos del BGF"); (ii) la extinción de la garantía del ELA sobre los bonos garantizados al canjearlos y cancelarlos; y (iii) la liberación de las reclamaciones de los tenedores de Bonos del BGF contra el BGF y sus filiales en relación, entre otras cosas, con cualquier inversión con el BGF o la compra, venta o transferencia de cualquier título o interés del BGF, y cualquier acción u omisión con respecto a cualquier endeudamiento o préstamo al BGF (incluidos los pagarés emitidos o los depósitos mantenidos por el BGF) o del BGF. *Prospecto de Solicitud*, en 57-60, ECF Núm. 1-15 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso Núm. 18-1561 (D.P.R. 10 de agosto de 2018).

13.     El 17 de noviembre de 2018, este Tribunal emitió sus *Averiguaciones de Hechos, Conclusiones de Derecho y Orden de Aprobación de la Modificación Calificatoria para el*

6

*Banco Gubernamental de Fomento para Puerto Rico a tenor con la Sección 601(m)(1)(D) de la*
*Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico* (la "Orden de
Modificación Calificatoria") [ECF Núm. 270] en el caso de Título VI del BGF, Caso Núm. 18-
1561 (LTS) (el "Caso de Título VI"). En la Orden de Modificación Calificatoria, este Tribunal,
entre otras cosas, aprobó la solicitud del BGF de una Modificación Calificatoria basada en los
términos del RSA, con sus correspondientes modificaciones.

14.     En virtud de la Orden de Modificación Calificatoria, (i) los tenedores de Bonos
Participantes aceptaron la cancelación de sus Bonos Participantes a cambio de nuevos bonos
garantizados emitidos por la Autoridad de Recuperación; (ii) la Autoridad de Recuperación
acordó emitir nuevos bonos a los tenedores de Bonos Participantes a cambio de la transferencia
irrevocable de todos los activos del BGF (excepto ciertos activos excluidos) al 1 de julio de 2018
a la Autoridad de Recuperación; y (iii) el BGF acordó transferir irrevocablemente estos activos a
la Autoridad de Recuperación como contrapartida por la emisión por parte de la Autoridad de
Recuperación de los nuevos bonos a los tenedores de los Bonos Participantes a cambio de la
cancelación de los Bonos Participantes. Tras este canje, el artículo 404 de la Ley de
Reestructuración del BGF establece que los titulares de los Bonos Participativos, y todos los
demás acreedores del BGF, "dejarán, inmediatamente y a perpetuidad, y sin necesidad de otras
acciones o documentación, de tener cualquier derecho, interés o reclamación contra el BGF o
cualquiera de sus activos, o cualquier sucesor o cesionario de los mismos".

15.     El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación
Calificatoria para el BGF. Comunicado de prensa, *El Gobierno de Puerto Rico anuncia la*
*consumación de la modificación calificatoria del BGF*, Gobernador de Puerto Rico (29 de

noviembre de 2018), disponible en http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

C.  **Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

16.    Hasta la fecha, se han radicado aproximadamente 179,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

17.    De las evidencias de reclamaciones radicadas, aproximadamente 115,000 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

18.    Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito*

8

contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

19.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

20.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado más de

14 vistas vinculadas con más de 140 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") y/o el Sistema de Retiro de Empleados de Gobierno del Estado Libre Asociado de Puerto Rico ("SRE"). Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban más de $43 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

21.     Esta Tricentésima vigésima primera objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

22.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

23.     La Tricentésima vigésima primera objeción global pretende que se rechacen, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, reclamaciones que buscan recuperar montos por los que el ELA no tiene responsabilidad, según se expone en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas").

24.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Cada una de las Reclamaciones que han de ser rechazadas pretende alegar responsabilidades contra el ELA, pero, como resultado de la Modificación Calificatoria, el ELA no es responsable de las responsabilidades que se alegan en las Reclamaciones que han de ser rechazadas.

25.     Una de las reclamaciones que han de ser rechazadas, la Reclamación Núm. 36818, fue presentada por la State Insurance Fund Corporation y se basa en la tenencia de Bonos Senior Garantizados del BGF (2013), Serie B-1.  Esta serie de bonos estaba entre los Bonos Participativos sujetos a la Modificación Calificatoria. *Véase* la Orden de la Modificación Calificatoria en 9. Como tenedor de un Bono Participativo, el reclamante, al igual que todos los demás tenedores de Bonos Participativos, estaba sujeto al proceso de canje de bonos descrito en la Ley de Reestructuración del BGF, la Modificación Calificatoria y aprobado por el Tribunal en la Orden de Modificación Calificatoria. Como resultado de este proceso, se canceló el bono original, la Autoridad de Recuperación emitió un nuevo bono y el reclamante "dejó de tener cualquier derecho, interés o reclamación contra el BGF o cualquiera de sus activos". *Véase* el Prospecto de Solicitud del BGF, E-8; Orden de Modificación Calificatoria en 11. En consecuencia, el ELA no es responsable de esta reclamación y debe ser rechazada.

26.     Las restantes Reclamaciones que han de ser rechazadas, las Reclamaciones Núms. 28537, 31712, 36276, 50438 y 73021, son todas reclamaciones presentadas por entidades gubernamentales no municipales basadas en depósitos en el BGF. Fueron presentados las Reclamaciones Núm. 31712 y 36276 por la Corporación del Fondo del Seguro del Estado; y fueron presentados las Reclamaciones Núm. 50438 y 73021 por la Administración de Tierras de

Puerto Rico. En virtud de la Escritura del FEP y del Artículo 303 de la Ley de Reestructuración del BGF, las reclamaciones contra el BGF por parte de entidades gubernamentales no municipales por obligaciones de depósito con el BGF se extinguieron y cualquier supuesto derecho a recuperar sobre estas reclamaciones recae en el FEP. Además, los reclamantes, la Corporación del Fondo de Seguro del Estado y la Administración de Tierras de Puerto Rico, figuran en el Anexo 2 de la Escritura del FEP, que identifica a los Depositarios Designados cuyos Depósitos Designados fueron transferidos al FEP.  Como se ha explicado anteriormente, la Ley de Reestructuración del BGF y la Escritura del FEP establecen los procedimientos para que estos Depositarios Designados reciban luego el desembolso de los fondos mantenidos en fideicomiso por el FEP. Como resultado de la Modificación Calificatoria, tras la transferencia de los Depósitos Designados al FEP, los Depositarios Designados "dejaron de tener cualquier derecho, interés o reclamación contra el BGF o cualquiera de sus activos". Ley de Reestructuración del BGF, § 304; Prospecto de Solicitud del BGF, E-71.  En consecuencia, el Estado no es responsable de estas reclamaciones y deben ser rechazadas.

27.    En apoyo de lo anterior, el ELA invocan la *Declaración de Jay Herriman en apoyo de la Tricentésima vigésima primera objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones por las que el ELA no tiene responsabilidad*, de fecha 30 de abril de 2021, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

28.    De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el ELA notifica la presente Tricentésima vigésima primera objeción global a) a los acreedores individuales objeto de esta Tricentésima vigésima primera objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones

(según se define en los *Procedimientos de administración de casos enmendados núm. 14* [ECF núm. 15894-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación de esta Tricentésima vigésima primera objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Tricentésima vigésima primera objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con esta objeción y se trasladarán a las partes. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

29.   La presente Tricentésima vigésima primera objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas de los Casos de Título III, a objetar a las Reclamaciones que han de ser rechazadas o a cualesquiera otras reclamaciones que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas en los Casos de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores, o a

13

cualesquiera otras partes interesadas en los Casos de Título III, conforme a PROMESA, el

Código de Quiebras o cualquier otra normativa legal aplicable.

## <u>AUSENCIA DE SOLICITUDES PREVIAS</u>

30.    No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima

vigésima primera objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente*]

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la Orden Propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios que se consideren justos.

Fecha: 30 de abril de 2021
San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico*