Hearing Date:  June 16, 2021, at 9:30AM (Atlantic Standard Time)
Response Deadline: June 2, 2021, at 4:00PM (Atlantic Standard Time)

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth and ERS.** |

---

### THREE HUNDRED TWENTY-THIRD OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO AND THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATE, DEFICIENT, AND/OR NO LIABILITY BOND CLAIMS

---

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Employees Retirement

System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Commonwealth and ERS, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Debtors pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this three hundred twenty-third omnibus objection (the "Three Hundred Twenty-Third Omnibus Objection") to the proofs of claim listed on **Exhibit A** hereto, each of which purports to be based, in part, on (*a*) bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), (*b*) bond claims that are duplicative of one or more master proofs of claim filed against the Debtors on behalf of the holders of certain bonds, (*c*) one or more investments in mutual funds, which in turn may have invested in bonds issued by the Debtors, and/or (*d*) bonds issued by AFICA (as defined below), which is not a Title III debtor, and whose liabilities are not guaranteed by the Debtors.  The remaining portions of each of the proofs of claim listed on **Exhibit A** hereto are deficient because they assert liabilities for purported investment losses but fail to provide sufficient information to enable the Debtors to reconcile the proofs of claim.   In support of the Three Hundred Twenty-Third Omnibus Objection, the Debtors respectfully represent as follows:

## **JURISDICTION**

1.     The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.     Venue is proper in this district pursuant to PROMESA section 307(a).

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

## BACKGROUND

A.    **The Bar Date Orders**

3.    On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").   On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (respectively the "ERS Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases").   On June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.   ECF No. 537.[3]

4.    On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").   Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.   Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

B.    **Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

5.     Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).  As explained below, master proofs of claim (collectively, the "Commonwealth Master Claims") have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by the Puerto Rico Public Buildings Authority ("PBA"); Puerto Rico Public Financing Corporation ("PRPFC"); and Puerto Rico Industrial Development Company ("PRIDCO").

6.     ___PBA___ — PBA purportedly issued Revenue Bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth.  US Bank and US Bank Trust serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833.[4]  The PBA Master Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingent claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown

---

[4]  Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was initially filed by the Fiscal Agent.

against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ."
Rider to PBA Master Claim, ¶¶ 19-21.

7.     ***PRPFC*** — PRPFC is a subsidiary corporation of GDB created pursuant to
Resolution No. 5044 of the Board of Directors of GDB, as amended ("Resolution No. 5044"),
adopted pursuant to the authority granted under Act No. 17 of the Legislature of Puerto Rico,
approved September 23, 1948, as amended.  It provides government agencies, instrumentalities,
municipalities and other subdivisions of the Commonwealth with alternative mechanisms to meet
their financing needs.  PRPFC has the capacity to borrow money and issue debt through the
issuance of bonds and other obligations.  U.S. Bank Trust serves as trustee for certain Series 2012A
and Series 2011A and B bonds issued by the PRPFC (the "PRPFC Bonds").  On behalf of the
holders of the PRPFC Bonds, US Bank Trust filed a proof of claim against the Commonwealth
(the "PRPFC Master Claim"), which was logged by Prime Clerk as Proof of Claim No. 13374.

8.     ***PRIDCO***—PRIDCO was created by Law No. 188 of 1942, codified as 23 L.P.R.A.
§§ 271 et seq., to promote economic development of Puerto Rico and provide industrial facilities
for lease or sale to private manufacturing companies.  US Bank serves as trustee for certain General
Purpose Revenue and Refunding Revenue Bonds Series 1997 A and Series 2003 (the "PRIDCO
Bonds"), and on behalf of the holders of PRIDCO Bonds filed a master proof of claim against the
Commonwealth, which was logged by Prime Clerk as Proof of Claim No. 13445 (the "PRIDCO
Master Claim," and together with the PBA Master Claim and the PRPFC Master Claim, the
"Master Claims").  The PRIDCO Master Claim asserts contingent, unliquidated claims against the
Commonwealth, and seeks "recovery of any and all other amounts owed on account of any and all
claims the Trustee has or may have relating to the outstanding Bond obligations, whether known
or unknown, against the Commonwealth and all those purporting to act on the Commonwealth's
behalf, whether presently asserted or to be asserted, including without limitation claims for or

based upon the breach or violation of the Bond Documents, lease agreements or other contractual obligations relating to the underlying collateral, any other covenants or other contractual obligations contained therein, or claims arising from the improper diversion of PRIDCO's revenues or any other property securing the payment of the Bonds under the Bond Documents, as a matter of relevant Commonwealth, state or federal law, including without limitation constructive trust, fraudulent conveyance or fraudulent transfer, failure to fulfill contractual and fiduciary obligations and duties, breach of implied covenants of good faith and fair dealing, or other legal or equitable claims."  Rider to PRIDCO Master Claim, ¶¶ 12-13.

## C.   Bond Debt Issued by the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority

9.   AFICA issued Industrial Revenue Refunding Bonds, 2011 Series A (the "2011 Series A Galeria Bonds"), in the aggregate amount of $59,649,744.50, in order to finance, in part, the operation of certain office and commercial retail space owned and operated by Caparra Hills, Inc.  The 2011 Series A Galeria Bonds are payable solely from repayment of a loan agreement entered into between AFICA and Caparra Hills, Inc.  The offering statement issued in connection with the 2011 Series A Galeria Bonds states that the bonds "do not constitute an indebtedness of the Commonwealth or of any of its political subdivisions, other than [AFICA], and neither the Commonwealth nor any of its political subdivisions, other than [AFICA], shall be liable thereon." *See, e.g.*, Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, Offering Statement, Industrial Refunding Bonds, 2011 Series A (Galeria Tower at San Patricio Project), *available at* https://emma.msrb.org/Security/Details/A95ABBB582ECE40E0D6ED039C687C3542.

6

**D.      The COFINA Title III Case and Resolution of the Commonwealth-COFINA
        Dispute**

10.     COFINA is a public corporation and instrumentality of the Commonwealth
constituting a corporate and political entity independent and separate from the Commonwealth,
created under Act No. 91 of the Legislative Assembly of the Commonwealth.   Pursuant to that
certain Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as
amended on June 19, 2009, and pursuant to certain supplemental resolutions, COFINA issued a
series of bonds in aggregate approximate amount of $17 billion, to, among other things, defray
certain debt obligations of the Puerto Rico Government Development Bank and the Puerto Rico
Public Finance Corporation (the "COFINA Bonds").  Bank of New York Mellon serves as Trustee
with respect to the COFINA Bonds.

11.     The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment
of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652] on January 9,
2019.  The Court considered confirmation of the Plan and any objections thereto at a hearing on
January 16-17, 2019.

12.     On February 4, 2019, the Court confirmed the Plan, which incorporated the
compromise and settlement of the dispute over whether, after considering all procedural and
substantive defenses and counterclaims, including constitutional issues, the sales and use taxes
purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA
under applicable law (the "Commonwealth-COFINA Dispute").  *See Order and Judgment
Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing
Corporation* [ECF No. 5048].   On the same day, the Court approved the compromise and
settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and
Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax
Financing Corporation* [ECF No. 5045] (the "Settlement Order").  On February 5, 2019, the Court

issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "Amended Confirmation Order").  The Plan became effective on February 12, 2019 (the "Effective Date"), when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case No. 17 BK 3284-LTS, ECF No. 587].

**E.     Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections**

13.     To date, approximately 179,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

14.     Of the proofs of claim filed, approximately 115,000 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  Approximately 52,900 proofs of claim have been filed in relation to, or reclassified to be asserted against, ERS.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

15.     To efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B)*

*Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").   On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

16.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

17.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 14 hearings related to over 140 omnibus objections filed by the Commonwealth, COFINA, the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Electric Power Authority ("PREPA"), and/or ERS.  Based upon rulings and orders of the Court to date, approximately 56,000 claims asserting $43.0 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, and ERS have been disallowed

and will be expunged from the claims registry in the Title III proceedings upon entry of final

orders.

18.    This Three Hundred Twenty-Third Omnibus Objection is filed in accordance with

the Court's Amended Omnibus Objection Procedures.

## **OBJECTIONS TO PROOFS OF CLAIM**

19.    The Amended Omnibus Objection Procedures allow the Debtors to file an omnibus

objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy

Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus

Objection Procedures.

20.    The Three Hundred Twenty-Third Omnibus Objection seeks to disallow in their

entirety, in accordance with the Amended Omnibus Objection Procedures, proofs of claim listed

on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed"), each of which appears to

purportedly be based, in part, on (*a*) bonds issued by COFINA, (*b*) bond claims that are duplicative

of one or more master proofs of claim filed against the Debtors on behalf of the holders of certain

bonds, (*c*) one or more investments in mutual funds, which in turn may have invested in bonds

issued by the Debtors, and/or (*d*) bonds issued by AFICA, which is not a Title III debtor, and

whose liabilities are not guaranteed by the Debtors.  The remaining portions of each of the proofs

of claim listed on **Exhibit A** hereto are deficient because they assert liabilities for purported

investment losses, but fail to comply with the applicable rules for filing a claim by not providing

a basis for asserting a claim against the Debtors.  **Exhibit A** hereto further specifies why each of

the Claims to Be Disallowed should be disallowed in their entirety.

21.    In each of the Claims to Be Disallowed, the proof of claim purported to assert

liabilities arising out of "Loss of face value of bond," "Loss in bond value over the years," "Loss

on investments in my UBS Account" or other similar terms asserting liabilities associated with

10

investments in government-issued bonds.  In some instances, the Claims to Be Disallowed did not

contain any supporting documentation indicating which bonds claimants asserted gave rise to

liabilities owed by the Debtors.  In other instances, the Claims to Be Disallowed provided as

supporting documentation a copy of a brokerage statement, or other supporting documentation

containing information regarding bonds purportedly held by the claimant, but the amounts of the

bonds included in that supporting documentation did not match the amount on the claimant's proof

of claim.

22.     On August 13, 2019, the Court entered the *Order Granting in Part and Adjourning

in Part Debtors' Motion for Entry of An Order (A) Authorizing Alternative Dispute Resolution

Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D)

Granting Related Relief* [ECF No. 8453] (the "Authorized Mailings Order"), which authorized the

Debtors to send mailings "to any claimant who has not provided sufficient information to enable

Debtors to process their claim."  Authorized Mailings Order, ¶ 3.

23.     Pursuant to the Authorized Mailings Order, "[i]f the Debtors mail the Proposed

Mailing to a claimant, and the claimant either does not respond or responds but fails to provide

sufficient information to permit Debtors to reconcile their claim, the Debtors are authorized to

object to the claim as deficient."  *Id.*

24.     In accordance with the Authorized Mailings Order, the Debtors have sent at least

one letter, substantially in the form of Exhibit 1 to the Authorized Mailings Order, to each claimant

subject to this Three Hundred Twenty-Third Omnibus Objection (the "Mailing").  Each Mailing

provided, in relevant part:

> Additional information is required in order for the Debtors to
> continue with assessing your claim. The Debtors are unable to
> determine from the information you provided the basis for the claim
> you are attempting to assert against one or more of the Debtors.  In
> responding to this letter, please ensure that you provide all of the
> information requested and as much detail as possible about your

claim.  The descriptions you put on your proof of claim were too
vague for the Debtors to understand the claim you are trying to
assert, so please provide more detail and do not simply copy over
the same information.
*See* ECF No. 8453-1 at 2, 7.

The Mailings received by the claimants subject to this Three Hundred Twenty-Third Omnibus

Objection directed the claimants to respond no later than October 23, 2019 (depending on the date

each Mailing was sent).  *See id*.  Furthermore, the Mailings cautioned the Claimants that "[i]f you

do not respond to this request and do not provide the requested information and documentation in

support of your claim, the Debtors may be forced to object to your claim."

25.    Each of the Claimants identified in **Exhibit A** either failed to respond to the

Mailings, or submitted a response that still did not contain information necessary to enable the

Debtors to reconcile the claim.  Accordingly, the Debtors reviewed the documentation submitted

with the proofs of claim or with the Mailings for assertions of investments related to government-

issued bonds.  Based on that review, the Debtors understand the Claims to Be Disallowed should

be disallowed because they assert, in part, (*a*) bonds issued by COFINA, (*b*) bond claims that are

duplicative of one or more master proofs of claim filed against the Debtors on behalf of the holders

of certain bonds, (*c*) one or more investments in mutual funds, which in turn may have invested in

bonds issued by the Debtors, and/or (*d*) bonds issued by AFICA (as defined below), which is not

a Title III debtor, and whose liabilities are not guaranteed by the Debtors.  Further, to the extent

the Claims to Be Disallowed assert claimants' investment losses, they should be disallowed for

the additional reason that the Debtors are not liable for such investment losses.

**A. No Liability for COFINA Bondholder Claims**

26.     As identified in **Exhibit A** hereto, certain of the Claims to Be Disallowed purport to assert, in part, claims based on an alleged ownership interest in bonds issued by COFINA (collectively the "COFINA Bondholder Claims").

27.     As explained above, the Settlement Order resolved the Commonwealth-COFINA Dispute, and, pursuant to Paragraph 55 of the Settlement Order, all claims against the Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA have been released.  Additionally, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF No. 5045-1], dated October 19, 2018, and attached to the Settlement Order (the "Settlement Agreement"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has been dismissed with prejudice following the approval of the compromise and settlement of the Commonwealth-COFINA Dispute.  Furthermore, pursuant to Paragraph 29(f) of the Amended Confirmation Order, claims, such as the COFINA Bondholder Claims, that arose from or relate to the relationship of the Commonwealth and COFINA were released.  Amended Confirmation Order, ¶ 29(f).[5]  For all of these reasons, the COFINA Bondholder Claims should be disallowed because these claims based on an apparent alleged ownership interest in COFINA Bonds have been satisfied, released, and/or discharged pursuant to the Settlement Order, Settlement Agreement, Amended Confirmation Order, and Plan.

---

[5] Pursuant to the Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise."  Plan § 1.53.

**B.   No Liability for Partial Duplicate Bond Claims**

28.     As set forth in Exhibit A hereto, certain of the Claims to Be Disallowed appear to

purport to assert liability, in part, on the basis of bonds issued by PBA, PRIDCO, and PRPFC

(collectively, the "Duplicate Bond Claims").

29.     Each of the Duplicate Bond Claims purport to assert, in part, liability against the

Debtors associated with one or more bonds that is duplicative of one or more Master Claims, which

as described above were filed in the Title III Cases on behalf of the holders of certain bonds issued

by PBA, PRIDCO, and PRPFC.  Any failure to disallow the Duplicate Bond Claims will result in

the applicable claimants potentially receiving an unwarranted double recovery against the Debtors,

to the detriment of other stakeholders in the Debtors' Title III Case.  The holders of the Duplicate

Bond Claims will not be prejudiced by the partial disallowance of their claims because the

liabilities associated with the Duplicate Bond Claims are subsumed within one or more Master

Claims.

**C.   No Liability for Claims Based on Investments in Mutual Funds**

30.     As identified in **Exhibit A** hereto, some of the Claims to Be Disallowed purport to

be based in part on investment(s) in one or more mutual funds that, in turn, may have invested in

bonds issued by the Debtors (collectively, the "Mutual Funds Claims").

31.     A claimant bears the burden of establishing standing to file a proof of claim.  *In re*

*Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010).  It is well-established that only a creditor

or the creditor's authorized agent has standing to assert a claim.  Fed. R. Bankr. P. 3001(b); 11

U.S.C. §§ 501(a) ("A creditor or an indenture trustee may file a proof of claim."); *In re Melillo*,

392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Only a creditor or indenture trustee may file a proof of

claim.").  Parties with merely derivative interests lack standing to assert a claim against a debtor's

estate.  *Matter of Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (finding party with

"relationship with Debtor [that] is not direct, but rather derivative" was "a stranger to Debtor's bankruptcy proceedings," with "no claim against the estate's assets," and "as a general rule has no standing in Debtor's bankruptcy proceedings"); *see also In re Tower Park Properties, LLC*, 803 F.3d 450, 462-63 (9th Cir. 2015) (holding a trust beneficiary was not a party in interest); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights of a party in interest are asserted, those rights must be asserted by the party in interest, not someone else."); *In re Lopez*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (to establish oneself as a party in interest "the moving party must be asserting its own rights and not those belonging to or derivative of a third party"); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (recognizing the "general principle that 'party in interest standing does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding'" (quoting *In re Refco*, 505 F.3d at 115 n. 10)).

32.     "A creditor, under the [Bankruptcy] Code, is one who has a claim *against the debtor or the estate*," rather than "a creditor of one of the debtor's creditors."  *S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997).  Because, at most, the Mutual Funds Claims were filed based on the claimant's status as an alleged creditor of an alleged creditor of the Commonwealth, the Mutual Funds Claims were not filed by an actual creditor of the Commonwealth.  *See In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (holding receiver lacked standing to file a proof of claim because it was not a creditor or an authorized agent of a creditor).  Instead, the Mutual Funds Claims are derivative of claims that must be asserted by the mutual funds directly for any claimed recovery to be considered by the Court.  *See Matter of Goldman*, 82 B.R. at 896 (finding party with "derivative" relationship has "no claim against the estate's asset" and "as a general rule has no standing in Debtor's bankruptcy proceedings").  Moreover, it is unknown whether the mutual fund still retains ownership of the suspect bonds.

33.    Indeed, under nearly identical circumstances, this Court previously disallowed claims filed against COFINA by investors in mutual funds that in turn allegedly invested in COFINA bonds for "lack of an individual interest in COFINA securities." *Tr. of March 13, 2019 Hr'g Before the Hon. Laura Taylor Swain* [ECF No. 5969], at 64:01-10 ("THE COURT: So just so that I understand, his documentation shows that he is a mutual fund investor.  To the extent any of those mutual funds actually holds COFINA bonds, the mutual fund would be the appropriate claimant, and so he has provided no evidence of a valid direct claim as against COFINA?  MS. STAFFORD: Correct, your Honor.  THE COURT: The objection to the claim is sustained and the claim is disallowed for lack of an individual interest in COFINA securities."); *see also Order Granting Sixty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Claims Based on Investments in Mutual Funds* [ECF No. 9099]; *Memorandum Order Denying Motion to Alter or Amend Order Sustaining Objection (Dkt. 8297) to Claims No. 152470 & No. 152283* [ECF No. 9121].  Accordingly, the claimants are not creditors of the Commonwealth and lack standing to assert derivative claims.  Because the Commonwealth cannot be held liable for the Mutual Funds Claims, these claims should be disallowed in their entirety

**D.  No Liability for Claims Based on AFICA Bonds**

34.    As identified in Exhibit A hereto, certain portions of the Claims to Be Partially Disallowed purport to assert claims based on an alleged ownership interest in bonds issued by AFICA, which is not a Title III debtor, and which liabilities are not guaranteed by the Commonwealth (collectively the "AFICA Bondholder Claims").

35.    Each of the AFICA Bondholder Claims purports to assert, in part, liabilities against the Commonwealth associated with AFICA Bonds not guaranteed by the Commonwealth.  AFICA is not a Title III debtor, and is a separate, legally distinct entity from the Commonwealth. Moreover, each of the offering statements issued in connection with the AFICA Bonds states that

the AFICA Bonds are not a debt of the Commonwealth or any of its political subdivisions, other than AFICA, and that the Commonwealth does not guarantee AFICA's debts.  Further, each of the AFICA Bondholder Claims does not assert a basis for asserting a claim against the Commonwealth for bonds issued by AFICA that are neither guaranteed by nor a debt of the Commonwealth.  Accordingly, the Commonwealth is not liable for the AFICA Bondholder Claims.

### E. Deficient Claims for Investment Losses

36.     As identified in Exhibit A hereto, each of the Claims to Be Disallowed also purports to assert liabilities arising out of alleged investment losses.  However, none of these Claims to Be Disallowed assert any potential causes of action against the Debtors that might render the Debtors liable for alleged damages incurred as a result of the claimants' decision to sell their bonds or interests in mutual funds holding bonds at a loss.  Accordingly, the Debtors are not liable for the amounts asserted in the Claims to Be Disallowed.  *See English v. Energy Future Holdings (In re Energy Future Holdings)*, 2018 U.S. Dist. LEXIS 49952, at *7 (D. Del., March 27, 2018) (holding bankruptcy court's order disallowing proof of claim was proper where claimant had sold bonds issued by the debtor and, thus, neither had any right to payment with respect to the bonds, nor did claimant show it had any potential cause of action against the debtor for the alleged damages incurred by the claimant in selling the debtor's bonds at a loss); *In re Allegheny Int'l, Inc*., 954 F.2d 167, 173 (3d Cir. 1992) (citing *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, *Collier on Bankruptcy* § 502.02, at 502-22 (15th ed. 1991)) ("Initially, the claimant must allege facts sufficient to support the claim").

37.     For the foregoing reasons, the Commonwealth requests that the Claims to Be Disallowed be disallowed in their entirety.

38.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Three Hundred Twenty-Third Omnibus Objection (Substantive) of the*

17

*Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Duplicate, Deficient, and No Liability Bond Claims*, dated April 30, 2021, attached hereto as <u>Exhibit B</u>.

## **NOTICE**

39.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Debtors are providing notice of this Three Hundred Twenty-Third Omnibus Objection to (a) the individual creditors subject to this Three Hundred Twenty-Third Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Fourteenth Amended Case Management Procedures* [ECF No. 15894-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.   The notice for this Three Hundred Twenty-Third Omnibus Objection is attached hereto as **<u>Exhibit C</u>**.   Spanish translations of the Three Hundred Twenty-Third Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.   The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **RESERVATION OF RIGHTS**

40.     This Three Hundred Twenty-Third Omnibus Objection is limited to the grounds stated herein.   Accordingly, it is without prejudice to the rights of the Debtors or the rights of any other party in interest in the Title III Cases to object to the Claims to Be Disallowed or any other claims on any ground whatsoever.   The Debtors expressly reserve all further substantive or procedural objections.   Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of

the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in

the Title III Cases under PROMESA, the Bankruptcy Code or any other applicable law.

## <u>NO PRIOR REQUEST</u>

41.     No prior request for the relief sought in this Three Hundred Twenty-Third Omnibus

Objection has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting such other and further relief as is just.

Dated: April 30, 2021
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico and the Employees Retirement System for the Government of the Commonwealth of Puerto Rico*

**Fecha de la vista: 16 de junio de 2021, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 2 de junio de 2021, a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

### TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*: <br><br> JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, <br><br> como representante del <br><br> ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*., <br><br> Deudores.[1] | PROMESA <br> Título III <br><br> núm. 17 BK 3283-LTS <br><br> (Administrado Conjuntamente) <br><br> **La presente radicación guarda relación con el ELA y el SRE.** |

---

### TRICENTÉSIMA VIGÉSIMA TERCERA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DEL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES POR BONOS DUPLICADAS, DEFICIENTES Y EN LAS QUE NO EXISTE RESPONSABILIDAD

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA") y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE", y junto con el ELA, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III de los Deudores conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican esta tricentésima vigésima tercera objeción global (la "Tricentésima vigésima tercera objeción global"*)* a las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento, cada una de las cuales alega basarse parcialmente en *a*) bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), *b*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas, *c*) una o más inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por los Deudores, y/o *d*) bonos emitidos por AFICA (según se define abajo) que no es un deudor de Título III y cuyas responsabilidades no están garantizadas por los Deudores. Las partes restantes de cada una de las evidencias de reclamaciones contenidas en el **Anexo A** del presente documento son deficientes, puesto que alegan responsabilidades por supuestas pérdidas por inversiones pero no brindan información suficiente para que los Deudores puedan reconciliar las evidencias de reclamaciones. En apoyo de la Tricentésima vigésima tercera objeción global, los Deudores manifiestan respetuosamente lo siguiente:

## JURISDICCIÓN

1.    El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

### A.      Órdenes de Fecha Límite

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el SRE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III del referido cuerpo legal (respectivamente, el "Caso de Título III del SRE", y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de los Casos de Título III únicamente con fines procesales. ECF núm. 537.[3]

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.   Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III del ELA**

5.    Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de las reclamaciones por bonos para la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, se han radicado evidencias de reclamaciones principales (conjuntamente, las "Reclamaciones Principales del ELA") en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés emitidos por la Autoridad de Edificios Públicos de Puerto Rico (la "AEP"); La Corporación para el Financiamiento Público de Puerto Rico (la "CFP"); y la Compañía de Fomento Industrial de Puerto Rico (la "PRIDCO").

6.    ***AEP***: la AEP emitió supuestamente Bonos de Renta para financiar edificios de oficinas y otras instalaciones arrendadas a varios departamentos, agencias públicas e instrumentalidades del ELA. US Bank y US Bank Trust actúan como agentes fiscales en relación con determinados bonos de renta emitidos por la AEP, conforme a lo explicado en la nota al pie 3 de la Evidencia de reclamación núm. 62833 (los "Bonos de la AEP"), y, en nombre de los tenedores

de los Bonos de la AEP, radicó una evidencia de reclamación principal en el marco del Caso de

Título III del ELA por todos los montos pendientes de pago adeudados (la "Reclamación Principal

de la AEP"), que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm.

62833. [4] La Reclamación Principal de la AEP alega reclamaciones liquidadas por

aproximadamente $4000 millones en concepto de principal supuestamente impagado, $160

millones en concepto de intereses supuestamente impagados y reembolso de comisiones y gastos

de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por la totalidad de

los montos adeudados "en razón de la totalidad de las reclamaciones que el Agente Fiscal tenga o

pueda tener en relación con las obligaciones de Bonos pendientes, conocidos o por conocer, contra

el ELA y aquellos que pretendan actuar en nombre del ELA". . . ."  Cláusula Adicional de la

Reclamación Principal de la AEP, ¶¶ 19-21.

7.      *CFP*: la CFP es una corporación subsidiaria del BGF creada conforme a la

Resolución núm. 5044 de la Junta Directiva del BGF, en su versión enmendada (la "Resolución

núm. 5044"), adoptada de conformidad con la autoridad concedida en virtud de la Ley núm. 17 de

la Asamblea Legislativa de Puerto Rico, aprobada el 23 de septiembre de 1948, en su versión

enmendada. Proporciona a los organismos públicos, instrumentalidades, municipios y a otras

subdivisiones del ELA mecanismos alternativos para satisfacer sus necesidades de financiamiento.

La CFP tiene la facultad de tomar en préstamo fondos y emitir deuda a través de bonos y otras

obligaciones. U.S. Bank Trust actúa como fiduciario en relación con unos bonos, serie 2012A y

series 2011A y B, emitidos por el CFP (los "Bonos de la CFP"). Actuando en nombre de los

tenedores de los Bonos de la CFP, US Bank Trust radicó una evidencia de reclamaciones contra

---

[4]  La evidencia de reclamación núm. 62833 enmendó y sustituyó la Evidencia de reclamación núm.
13351, que fue radicada inicialmente por el Agente Fiscal.

el ELA (la "Reclamación Principal de la CFP"), que fue registrada por Prime Clerk como Evidencia de reclamación núm. 13374.

8.    ***PRIDCO***: PRIDCO fue creada por la Ley núm. 188 de 1942, codificada como 23 L.P.R.A. §§ 271 y siguientes., para fomentar el desarrollo económico de Puerto Rico y proporcionar instalaciones industriales en arrendamiento o venta a empresas manufactureras privadas. US Bank actúa como fideicomisario en relación con determinados Bonos relativos a rentas de fines generales y rentas de refinanciamiento, series 1997 A y 2003 (los "Bonos de PRIDCO"), y en nombre de los tenedores de los Bonos de PRIDCO radicó una evidencia de reclamación principal contra el ELA, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 13445 (la "Reclamación Principal de PRIDCO", y junto con la Reclamación Principal de la AEP y la Reclamación Principal de la CFP, las "Reclamaciones Principales"). La Reclamación Principal de PRIDCO alega reclamaciones contingentes y no liquidadas contra el ELA y procura la "recuperación de todos y cada uno de los montos adeudados en razón de todas las reclamaciones que el Fideicomisario tenga o pueda tener en relación con las obligaciones pendientes por Bonos, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA, alegadas en la actualidad o por alegar, lo que incluye, entre otras cosas, reclamaciones por o basadas en el incumplimiento o la violación de los Documentos de los bonos, acuerdos de arrendamiento u otras obligaciones contractuales relativas a la garantía subyacente, cualesquiera otros pactos u otras obligaciones contractuales contenidas en el mismo, o reclamaciones surgidas por el desvío indebido de las rentas de PRIDCO o de cualesquiera otros bienes que garanticen el pago de los Bonos en virtud de los Documentos de los bonos, conforme a la normativa legal pertinente del ELA, estatal o federal, lo que incluye, entre otras cosas, fideicomiso ficto, transmisión fraudulenta o transferencia fraudulenta, incumplimiento de deberes y obligaciones contractuales y fiduciarias, vulneración de pactos implícitos justos y de buena fe, u

otras reclamaciones en derecho o equidad". Cláusula de la Reclamación Principal de PRIDCO, ¶¶

12-13.

**C.    Deuda de los bonos emitidos por la Autoridad para el Financiamiento de Facilidades
Industriales, Turísticas, Educativas, Médicas y de Control Ambiental**

9.    La AFICA emitió Bonos de Renta de Refinanciamiento Industrial, 2011 Serie A

(los "Bonos Galería 2011 Serie A") por un monto total de $59,649,744.50 para financiar, en parte,

el funcionamiento de cierto espacio comercial minorista y de oficinas perteneciente y operado por

Caparra Hills, Inc. Los Bonos Galería 2011 Serie A, son pagaderos únicamente a través del

reembolso de un acuerdo de préstamo celebrado entre la AFICA y Caparra Hills, Inc. La

declaración de oferta emitida en relación con los Bonos Galería 2011 Serie A dispone que los

bonos "no constituyen endeudamiento del ELA ni de ninguna de sus subdivisiones políticas, salvo

[la AFICA], y ni el ELA ni ninguna de sus subdivisiones políticas, salvo [la AFICA], será

responsable de su pago". *Véase*, por ejemplo, Autoridad para el Financiamiento de Facilidades

Industriales, Turísticas, Educativas, Médicas y de Control Ambiental, Declaración de Oferta,

Bonos de Renta Industrial 2011 Serie A (Proyecto Galería Tower en San Patricio), disponible en

https://emma.msrb.org/Security/Details/A95ABBB582ECE40E0D6ED039C687C3542.

**D.    Caso de Título III de COFINA y resolución de la controversia entre el ELA y
COFINA**

10.    COFINA es una corporación pública e instrumentalidad del ELA, que constituye

una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm.

91 de la Asamblea Legislativa del ELA. Conforme a la Resolución enmendada y modificada sobre

los bonos del fondo de interés apremiante, adoptada el 13 de julio de 2007, en su versión

enmendada del 19 de junio de 2009, y de conformidad con otras resoluciones complementarias,

COFINA emitió una serie de bonos por un monto total de aproximadamente $17,000 millones

para, entre otras cosas, sufragar determinadas obligaciones de deuda del Banco Gubernamental de

Fomento para Puerto Rico y de la Corporación para el Financiamiento Público de Puerto Rico (los "Bonos de COFINA"). El Bank of New York Mellon actúa como fiduciario con respecto a los Bonos de COFINA.

11.    La Junta de Supervisión radicó el *Tercer plan enmendado de ajuste de la Corporació*n *del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* (el "Plan") [ECF núm. 4652] el 9 de enero de 2019. El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista celebrada los días 16 y 17 de enero de 2019.

12.    El 4 de febrero de 2019, el Tribunal confirmó el Plan que incorporaba el pacto y la conciliación de la controversia sobre si, luego de examinar todas las contestaciones y reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos sobre la venta y uso supuestamente empeñados por COFINA para garantizar la deuda son propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia entre el ELA y COFINA"). *Véase la Orden y la Sentencia que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5048]. Ese mismo día, el Tribunal aprobó el pacto y la conciliación de la Controversia entre el ELA y COFINA conforme al *Dictamen abreviado y orden que aprueba la conciliación entre el Estado Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés Apremiante de Puerto Rico* [ECF núm. 5045] (la "Orden de Conciliación"). El 5 de febrero de 2019, el Tribunal dictó una *Orden y Sentencia enmendadas que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5055] (la "Orden de Confirmación Enmendada"). El Plan entró en vigor el 12 de febrero de 2019 (la "Fecha de Entrada en Vigor"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante*

*de Puerto Rico elaborado conforme al Título III, según el Título III de PROMESA, y B)*

*acontecimiento de la Fecha de Entrada en Vigor* [Caso núm. 17 BK 3284-LTS, ECF núm. 587].

**E.    Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

13.    Hasta la fecha, se han radicado aproximadamente 179,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

14.    De las evidencias de reclamaciones radicadas, aproximadamente 115,000 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Aproximadamente 52,900 evidencias de reclamaciones han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

15.    Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba*

procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

16.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

17.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la

fecha más de 14 vistas vinculadas con más de 140 objeciones globales radicadas por el ELA, COFINA, la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban $43.0 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

18.     Esta Tricentésima vigésima tercera objeción global se radica de conformidad con los procedimientos enmendados relativos a objeciones globales del Tribunal.

### OBJECIONES A EVIDENCIAS DE RECLAMACIONES

19.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los Deudores radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

20.     La Tricentésima vigésima tercera objeción global pretende que se rechacen en su totalidad, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas"), cada una de las cuales parece basarse parcialmente en *a*) bonos emitidos por COFINA, *b*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas, *c*) una o más inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por los Deudores, y/o *d*) bonos emitidos por AFICA que no es un deudor de Título III y cuyas responsabilidades no están

garantizadas por los Deudores. Las partes restantes de cada una de las evidencias de reclamaciones contenidas en el **Anexo A** del presente documento son deficientes, puesto que alegan responsabilidades por supuestas pérdidas por inversiones pero no cumplen con las normas aplicables a la radicación de reclamaciones al no proporcionar una base para alegar una reclamación contra los Deudores. El **Anexo A** especifica además por qué cada una de las Reclamaciones que han de ser rechazadas debe ser rechazada en su totalidad.

21.     En cada una de las Reclamaciones que han de ser rechazadas, la evidencia de reclamación pretendía alegar responsabilidades surgidas de una "Pérdida de valor nominal del bono", "Pérdida de valor del bono a lo largo de los años", "Pérdida relativa a inversiones en mi Cuenta de UBS" u otros términos similares que alegan responsabilidades vinculadas con inversiones en bonos emitidos por el Gobierno. En algunos casos, las Reclamaciones que han de ser rechazadas no contenían ninguna documentación justificativa que indicase cuáles eran los bonos alegados por los reclamantes que generaban responsabilidades de los Deudores. En otros casos, las Reclamaciones que han de ser rechazadas proporcionaban como documentación justificativa una copia de un extracto de corretaje u otra documentación justificativa que contenía información sobre bonos supuestamente en posesión del reclamante, pero los montos de los bonos incluidos en dicha documentación justificativa no correspondían con el monto que figuraba en la evidencia de reclamación del reclamante.

22.     El 13 de agosto de 2019, el Tribunal dictó la *Orden que concedió parcialmente y levantó parcialmente la Moción de los Deudores para dictar una orden que A) autorice procedimientos alternativos de resolución de controversias, B) apruebe formas de notificación adicionales, C) apruebe envíos propuestos y D) conceda el remedio relacionado* [ECF núm. 8453] (la "Orden de Envío Autorizado") que autorizó que los Deudores realizaran envíos "a cualquier

reclamante que no haya proporcionado suficiente información que permitiera a los Deudores

procesar sus reclamaciones". Orden de Envío Autorizado, ¶ 3.

23.    Conforme a la Orden de Envío Autorizado, "[s]i los Deudores realizan el Envío

Propuesto al reclamante, y este último no responde o responde pero no aporta suficiente

información que permita a los Deudores reconciliar su reclamación, los Deudores tendrán derecho

a oponerse a la reclamación como deficiente". *Id.*

24.    De conformidad con la Orden de Envío Autorizado, los Deudores han enviado al

menos una carta a cada reclamante objeto de la presente Tricentésima vigésima tercera objeción

global esencialmente en el formato que se adjunta a la Orden de Envío Autorizado como Anexo 1

(el "Envío"). Cada Envío, en la parte pertinente, rezaba lo siguiente:

> Se requiere información adicional para que los Deudores sigan
> examinando su reclamación. Los Deudores no pueden determinar a
> partir de la información que usted proporcionó cuál es la base de la
> reclamación que trata de alegar contra uno o más Deudores. Al
> responder a esta carta, rogamos se asegure de proporcionar toda la
> información solicitada, así como tantos detalles como sea posible
> aportar sobre su reclamación. Las descripciones que incorporó en su
> evidencia de reclamación eran demasiado vagas para que los
> Deudores comprendieran la reclamación que usted trata de alegar,
> de manera que rogamos proporcione más detalles y no se limite
> simplemente a copiar la misma información.
> *Véase* ECF núm. 8453-1 en 2, 7.

Los Envíos recibidos por los reclamantes objeto de la presente Tricentésima vigésima tercera

objeción global exigían a los reclamantes responder antes del 23 de octubre de 2019 (dependiendo

de la fecha en la que cada Envío fue realizado). *Véase id.* Además, en los Envíos se advertía a los

Reclamantes de que "[s]i no responde a esta solicitud y no proporciona la información y la

documentación requeridas para justificar su reclamación, es posible que los Deudores se vean en

la obligación de oponerse a su reclamación."

25.    Cada uno de los Reclamantes identificados en el **Anexo A** o bien no respondió a

los Envíos, o bien envió una respuesta que tampoco contenía la información necesaria que permita

a los Deudores reconciliar la reclamación. En consecuencia, los Deudores analizaron la documentación sometida con la evidencia de reclamación o con los Envíos en relación con la alegación de inversiones relacionadas con bonos emitidos por el Gobierno. Sobre la base de dicho análisis, los Deudores consideran que las Reclamaciones que han de ser rechazadas deben rechazarse, ya que alegan, en parte, *a*) bonos emitidos por COFINA, *b*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas, *c*) una o más inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por los Deudores, y/o *d*) bonos emitidos por AFICA (según se define abajo) que no es un deudor de Título III y cuyas responsabilidades no están garantizadas por los Deudores. Además, en la medida en que las Reclamaciones que han de ser rechazadas aleguen pérdidas por inversiones de los reclamantes, deben ser rechazadas por el motivo adicional de que los Deudores no son responsables por dichas pérdidas por inversiones.

### A. Ausencia de responsabilidad por reclamaciones de los bonistas de COFINA

26.     Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas parcialmente en una supuesta participación patrimonial en los bonos emitidos por COFINA (conjuntamente, las "<u>Reclamaciones de los Bonistas de COFINA</u>").

27.     Como se explicó anteriormente, la Orden de Conciliación resolvió la Controversia entre el ELA y COFINA y, conforme al párrafo 55 de la Orden de Conciliación, la totalidad de las reclamaciones contra el ELA, surgidas o vinculadas con la relación del ELA y COFINA, han sido liberadas. Además, conforme al párrafo 3(c) del *Acuerdo de Conciliación* [ECF núm. 5045-1], de fecha 19 de octubre de 2018, que se adjunta a la Orden de Conciliación (el "<u>Acuerdo de Conciliación</u>"), y el párrafo 7 de la Orden de Confirmación Enmendada, el procedimiento

contencioso entre el ELA y COFINA sobre la Controversia entre el ELA y COFINA ha sido desestimado de forma definitiva luego de la aprobación del pacto y la conciliación de la Controversia entre el ELA y COFINA. Además, conforme al párrafo 29(f) de la Orden de Confirmación Enmendada, reclamaciones (tales como las Reclamaciones de los Bonistas de COFINA) que surgieron de o están vinculadas con la relación entre el ELA y COFINA, fueron liberadas. Orden de Confirmación Enmendada, ¶ 29(f). [5] Por todos esos motivos, las Reclamaciones de los Bonistas de COFINA deben rechazarse porque dichas reclamaciones basadas en una supuesta y aparente participación patrimonial en los Bonos de COFINA han sido satisfechas, liberadas y/o liquidadas conforme a la Orden de Conciliación, el Acuerdo de Conciliación, la Orden de Confirmación Enmendada y el Plan.

**B.   Ausencia de responsabilidad por reclamaciones parcialmente duplicadas por bonos**

28.    Según se expone en el Anexo A del presente documento, ciertas de las Reclamaciones que han de ser rechazadas parecen pretender alegar responsabilidad, en parte, sobre la base de bonos emitidos por la AEP, PRIDCO y la CFP (conjuntamente, las "Reclamaciones Duplicadas por Bonos").

29.    Cada una de las Reclamaciones Duplicadas por Bonos pretende alegar, en parte, responsabilidad contra los Deudores vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron

---

[5] Conforme al Plan, una "Reclamación" se define como "[c]ualquier derecho a un pago o cumplimiento, independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, contingente, vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado, conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por incumplimiento o ejecución de un cumplimiento, independientemente de si tal derecho a un remedio en equidad consta en una sentencia, es fijo, contingente, vencido, no vencido, controvertido, no controvertido, garantizado o no garantizado, y la totalidad de las deudas, procesos, indemnizaciones por daños y perjuicios, derechos, remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas de acción, procedimientos o reclamaciones de cualquier tipo o naturaleza, en derecho, equidad o de cualquier otra forma". Plan § 1.53.

radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos

emitidos por la AEP, PRIDCO y la CFP. Si las Reclamaciones Duplicadas por Bonos no son

rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una

recuperación duplicada no justificada contra los Deudores en detrimento de otras partes interesadas

en el Caso de Título III de los Deudores. Los titulares de las Reclamaciones Duplicadas por Bonos

no se verán perjudicados por el hecho de que se rechacen parcialmente sus reclamaciones, puesto

que las responsabilidades relacionadas con las Reclamaciones Duplicadas por Bonos figuran en

una o más Reclamaciones Principales.

### C. Ausencia de responsabilidad relativa a reclamaciones basadas en inversiones en fondos mutuos

30.     Conforme a lo identificado en el **<u>Anexo A</u>** del presente, algunas Reclamaciones que

han de ser rechazadas pretenden basarse parcialmente en inversión(es) en uno o varios fondos

mutuos que, a su vez, pudieron haber invertido en bonos emitidos por los Deudores

(conjuntamente, las "<u>Reclamaciones de los Fondos Mutuos</u>").

31.     Los reclamantes tienen la carga de demostrar su legitimación para radicar una

evidencia de reclamación. *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010). Es

ampliamente aceptado que solo los acreedores o sus representantes autorizados están legitimados

para radicar reclamaciones. Reg. Fed. del Proc. de Quiebr. 3001(b); Título 11 U.S.C., §§ 501(a)

("Los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones"); *In re*

*Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Solo los acreedores o fiduciarios autorizados podrán

radicar evidencias de reclamaciones".). Las partes que solo tengan intereses derivados carecen de

legitimación para radicar reclamaciones contra el patrimonio de un deudor.  *Caso Goldman*, 82

B.R. 894, 896 (Bankr. S.D. Ohio 1988) (donde se concluyó que una parte con "una relación con el

Deudor [que] no es directa, sino más bien derivada era "persona ajena al procedimiento de quiebra

del Deudor", sin "ninguna posibilidad de reclamar contra los activos del patrimonio" y "como regla

general, carece de legitimación en relación con el procedimiento de quiebra del Deudor".); *véase también In re Tower Park Properties, LLC,* 803 F.3d 450, 462-63 (9th Cir. 2015) (donde se concluyó que un beneficiario de un fideicomiso no era una parte interesada); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("En la medida en que se hagan valer los derechos de una parte interesada, esos derechos han de hacerse valer por dicha parte interesada, no por un tercero".); *In re López*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (para constituirse como parte interesada "la parte solicitante deberá hacer valer sus propios derechos y no aquellos que asistan a un tercero o que se deriven en relación con tal tercero".); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (donde se reconoce el "principio general de que 'no se da legitimación de una parte interesada si la parte pretende hacer valer un derecho que es puramente derivado de los derechos de otra parte en el procedimiento de quiebras'" (que cita *In re Refco*, 505 F.3d en 115 n. 10)).

32. "Un acreedor, conforme al Código [de Quiebras], es aquel que tiene una reclamación contra el deudor o el patrimonio", en lugar de "un acreedor de uno de los acreedores del deudor". *S. Blvd., Inc. c. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Ya que, a lo sumo, las Reclamaciones de los Fondos Mutuos fueron radicadas en virtud de la condición del reclamante como presunto acreedor de un presunto acreedor del ELA, las Reclamaciones de los Fondos Mutuos no fueron radicadas por un acreedor real del ELA. *Véase In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (donde se concluye que el síndico carecía de legitimación para radicar evidencias de reclamaciones porque no era acreedor ni agente autorizado de un acreedor). En cambio, las Reclamaciones de los Fondos Mutuos se derivan de reclamaciones que deben hacerse valer directamente por los fondos mutuos para que el Tribunal examine cualquier recuperación alegada. *Véase el caso Goldman*, 82 B.R. en 896 (donde se concluye que una parte con una relación "derivada" no puede "reclamar contra los activos del patrimonio" y "como regla

general, carece de legitimación en el procedimiento de quiebras del Deudor"). Es más, no se sabe si el fondo mutuo sigue ostentando la propiedad de los bonos controvertidos.

33.     En efecto, en unas circunstancias casi idénticas, el Tribunal ya rechazó reclamaciones radicadas contra COFINA por unos inversores en fondos mutuos que, a su vez, supuestamente invirtieron en los bonos de COFINA, por "carecer de interés individual en los títulos valores de COFINA". *Transcripción del 13 de marzo de 2019 de la audiencia ante su señoría, Laura Taylor Swain* [ECF núm. 5969], en 64:01-10 ("EL TRIBUNAL: Entonces, para que yo lo entienda, su documentación muestra que es inversor en un fondo mutuo. En la medida en que cualquiera de esos fondos mutuos posea realmente los bonos de COFINA, el fondo mutuo sería el reclamante pertinente, ¿así que no proporcionó ninguna evidencia de una reclamación directa válida contra COFINA?  SRA. STAFFORD: Así es, señoría. EL TRIBUNAL: Se concede la objeción a la reclamación, y se rechaza la reclamación por falta de interés individual en títulos valores de COFINA."); *véase también la Orden por la que se concede la Sexagésima cuarta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones basadas en las inversiones en fondos mutuos* [ECF núm. 9099]; *Orden de memorando por la que se rechaza la moción para alterar o enmendar la orden que concede la objeción (extr. 8297) a las Reclamaciones núms. 152470 y 152283)* [ECF núm. 9121]. En consecuencia, los reclamantes no son acreedores del ELA y carecen de legitimación para hacer valer reclamaciones derivadas. Puesto que al ELA no se le puede atribuir la responsabilidad por las Reclamaciones de los Fondos Mutuos, dichas reclamaciones deben rechazarse en su totalidad.

**D.  Ausencia de responsabilidad relativa a reclamaciones basadas en los Bonos AFICA**

34.     Conforme a lo identificado en el Anexo A del presente documento, determinadas partes de las Reclamaciones que han de ser rechazadas parcialmente pretenden alegar reclamaciones basadas en una presunta participación patrimonial en bonos emitidos por la AFICA,

que no es deudor de Título III y cuyas responsabilidades no están garantizadas por el ELA (conjuntamente, las "Reclamaciones de los bonistas de la AFICA").

35. Cada una de las Reclamaciones de los Bonistas de la AFICA pretende alegar, en parte, responsabilidades contra el ELA vinculadas con los Bonos AFICA que no están garantizados por el ELA. La AFICA no es deudor de Título III y es una entidad aparte y jurídicamente independiente del ELA. Además, cada una de las declaraciones de oferta emitidas en relación con los Bonos AFICA dispone que los Bonos AFICA no constituyen deuda del ELA ni de ninguna de sus subdivisiones políticas, con la excepción de AFICA, y que el ELA no garantiza las deudas de la AFICA. Además, ninguna de las Reclamaciones de los Bonistas de la AFICA proporciona fundamento alguno para alegar una reclamación contra el ELA por los bonos emitidos por la AFICA que no están garantizados por el ELA ni constituyen su deuda. En consecuencia, el ELA no es responsable por las Reclamaciones de los Bonistas de la AFICA.

**E. Reclamaciones deficientes relativas a pérdidas por inversiones**

36. Según se identifica en el Anexo A del presente documento, cada una de las Reclamaciones que han de ser rechazadas también pretende alegar responsabilidades surgidas de supuestas pérdidas por inversiones. Sin embargo, ninguna de dichas Reclamaciones que han de ser rechazadas alega posible causa de acción alguna contra los Deudores que pueda generar responsabilidad de los Deudores por los supuestos daños y perjuicios sufridos como consecuencia de la decisión de los reclamantes de vender con pérdidas sus bonos o participaciones en fondos mutuos que contenían los bonos. En consecuencia, los Deudores no son responsables por los montos alegados en las Reclamaciones que han de ser rechazadas. *Véase English c. Energy Future Holdings (In re Energy Future Holdings),* 2018 U.S. Dist. LEXIS 49952, en *7 (D. Del., 27 de marzo de 2018) (que dispone que la orden del tribunal de quiebras por la que se rechaza la evidencia de reclamación era la adecuada, cuando el reclamante había vendido los bonos emitidos

por el deudor y, por lo tanto, no tenía ningún derecho a un pago en relación con los bonos ni ha demostrado el reclamante que tuviera posible causa de acción contra el deudor por los supuestos daños y perjuicios sufridos por el reclamante al vender con pérdidas los bonos del deudor); *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) (que cita *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991) (que cita 3 L. King, *Collier on Bankruptcy* § 502.02, en 502-22 (15th ed. 1991)) ("Al principio, el reclamante debe alegar hechos que sean suficientes para sostener la reclamación").

37.    Por los motivos mencionados, el ELA solicita que las Reclamaciones que han de ser rechazadas sean rechazadas en su totalidad.

38.    En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Tricentésima vigésima tercera objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico a Reclamaciones por bonos duplicadas, deficientes y en las que no existe responsabilidad*, de fecha 30 de abril de 2021, adjunta al presente como <u>Anexo B</u>.

### <u>NOTIFICACIÓN</u>

39.    De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores notifican la presente Tricentésima vigésima tercera objeción global a) a los acreedores individuales objeto de esta Tricentésima vigésima tercera objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 14* [ECF núm. 15894-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación relativa a esta Tricentésima vigésima tercera objeción global se adjunta al presente como **<u>Anexo C</u>**. Las traducciones al español de la Tricentésima vigésima tercera objeción global y de la totalidad de los anexos adjuntos al presente

20

se están radicando con la presente objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

40.     La presente Tricentésima vigésima tercera objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas en dichos Casos de Título III, a objetar a las Reclamaciones que han de ser rechazadas o a cualesquiera otras reclamaciones sobre la base de los motivos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas en los Casos de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores, o a cualesquiera otras partes interesadas en los Casos de Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

41.     No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima vigésima tercera objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.


[*El resto de la página se deja en blanco intencionadamente*]


21

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

Fecha: 30 de abril de 2021
     San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico.*

22