> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO
> TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                       Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

## THREE HUNDRED TWENTY-FOURTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO PARTIALLY DUPLICATE, DEFICIENT, AND NO LIABILITY BOND CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "<u>Commonwealth</u>," or the "<u>Debtor</u>"), by and through the Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>"), as the sole Title III representative of the Commonwealth pursuant to section 315(b) of the *Puerto*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "<u>Debtors</u>") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this three hundred twenty-fourth omnibus objection (the "Three Hundred Twenty-Fourth Omnibus Objection") to the proofs of claim listed on **Exhibit A** hereto, each of which is purportedly based, in part, on (*a*) bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), (*b*) bond claims that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds, (*c*) an ownership interest in bonds issued by the Government Development Bank of Puerto Rico ("GDB"), and/or (*d*) one or more investments in mutual funds, which in turn may have invested in bonds issued by the Commonwealth.  In addition, each of the proofs of claim listed on **Exhibit A** purport to assert liabilities for purported investment losses, but fail to provide sufficient information to state a claim against the Commonwealth for such investment losses.   A portion of each claim listed on **Exhibit A** hereto will remain asserted against the Commonwealth, and the Commonwealth reserves its right to object to any of the remaining amounts asserted in the claims, as identified in the column titled "Corrected" in **Exhibit A** hereto, on any basis whatsoever.  In support of the Three Hundred Twenty-Fourth Omnibus Objection, the Commonwealth respectfully represents as follows:

### JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case," or the "Title III Case").

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.      Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

5.      Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).

3

As explained below, master proofs of claim (collectively, the "Master Claims") have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") and the Puerto Rico Highways and Transportation Authority ("HTA").

6.    **ERS**—ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities. *See* 3 L.P.R.A § 775.[3]  Purportedly pursuant to that certain Pension Funding Bond Resolution, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds"), in the aggregate original principal amount of approximately $2.9 billion.[4]  BNYM serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the holders of ERS Bonds, BNYM filed a master proof of claim in the Commonwealth Title III Case (the "ERS Master Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 32004.[5]

---

[3]  On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof.

[4]  On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [Case No. 17-3283, ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*.  ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

[5]  On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim.  See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent (Claim No. 16775) [ECF No. 7075].  For the avoidance of doubt, this Three Hundred Tenth Omnibus Objection is without prejudice to the parties' rights with respect to such objection, including any rights to intervene, which are reserved.

7.    ___HTA___—HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.  The HTA Enabling Act authorizes HTA to issue bonds.  *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (i) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (ii) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution").  As of May 21, 2017, HTA's petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding.  BNYM serves as fiscal agent with respect to the HTA Bonds.

8.    On behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the Commonwealth Title III Case (the "HTA-CW Master Claims"), each asserting a "secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the Commonwealth arising at law or in equity . . . ."  *See* Addendum to Proof of Claim No. 121053, ¶ 15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No. 115380, ¶ 15.[6]

---

[6]  While BNYM initially filed three proofs of claim logged by Prime Clerk as Proofs of Claim Nos. 21286, 26541, and 35277, these were superseded and amended by Proofs of Claim Nos. 121053, 120982, and 115380.

5

C.      **The COFINA Title III Case and Resolution of the Commonwealth-COFINA
Dispute**

9.      COFINA is a public corporation and instrumentality of the Commonwealth

constituting a corporate and political entity independent and separate from the Commonwealth,

created under Act No. 91 of the Legislative Assembly of the Commonwealth.  Pursuant to that

certain Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as

amended on June 19, 2009, and pursuant to certain supplemental resolutions, COFINA issued a

series of bonds in aggregate approximate amount of $17 billion, to, among other things, defray

certain debt obligations of the Puerto Rico Government Development Bank and the Puerto Rico

Public Finance Corporation (the "COFINA Bonds").  Bank of New York Mellon serves as Trustee

with respect to the COFINA Bonds.

10.     The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment*

*of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652] on January 9,

2019.  The Court considered confirmation of the Plan and any objections thereto at a hearing on

January 16-17, 2019.

11.     On February 4, 2019, the Court confirmed the Plan, which incorporated the

compromise and settlement of the dispute over whether, after considering all procedural and

substantive defenses and counterclaims, including constitutional issues, the sales and use taxes

purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA

under applicable law (the "Commonwealth-COFINA Dispute").  *See Order and Judgment*

*Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing*

*Corporation* [ECF No. 5048].  On the same day, the Court approved the compromise and

settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and*

*Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax*

6

*Financing Corporation* [ECF No. 5045] (the "Settlement Order").  On February 5, 2019, the Court issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "Amended Confirmation Order").  The Plan became effective on February 12, 2019 (the "Effective Date"), when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case No. 17 BK 3284-LTS, ECF No. 587].

**D.    The GDB Title VI Proceedings and Qualifying Modification**

12.    GDB is a public corporation and governmental instrumentality of the Commonwealth, which was created by the Legislative Assembly in 1948 to aid the government of the Commonwealth (the "Government") in performing its fiscal duties and in more effectively carrying out its responsibility to develop the economy of the Commonwealth.  On April 28, 2017, the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which contemplated an orderly wind-down of the operations of GDB based upon the determination that there was no clear path for the long-term viability of GDB based on its then-current financial condition.

13.    On July 12, 2017, the Oversight Board issued a resolution authorizing GDB, pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA.  On August 10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to PROMESA section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District Court for the District of Puerto Rico.

14.     On November 7, 2018, the Court approved the Qualifying Modification pursuant to PROMESA section 601(m)(1)(D).  *See* ECF No. 270 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018).  The Qualifying Modification provides for, among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery Authority in exchange for the cancellation of, among other things, certain participating bonds and guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB. *Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Aug. 10, 2018).

15.     On November 29, 2018, GDB announced the consummation of the Qualifying Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

**E.     Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections**

16.     To date, approximately 179,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

17.     Of the proofs of claim filed, approximately 115,000 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

18.     To efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

19.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection*

9

*Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional
Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court

granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures,
(B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice,
and (D) Granting Related Relief* [ECF No. 7440] (the "<u>Amended Omnibus Objection
Procedures</u>").

20.    Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus
Objection Procedures, to date the Court has held over 14 hearings related to over 140 omnibus
objections filed by COFINA, HTA, ERS, and/or the Puerto Rico Electric Power Authority
("<u>PREPA</u>"). Based upon rulings and orders of the Court to date, approximately 56,000 claims
asserting $43.0 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, and ERS
have been disallowed and will be expunged from the claims registry in the Title III proceedings
upon entry of final orders.

21.    This Three Hundred Twenty-Fourth Omnibus Objection is filed in accordance with
the Court's Amended Omnibus Objection Procedures.

## <u>OBJECTIONS TO PROOFS OF CLAIM</u>

22.    The Amended Omnibus Objection Procedures allow the Commonwealth to file an
omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of
Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the
Amended Omnibus Objection Procedures.

23.    The Three Hundred Twenty-Fourth Omnibus Objection seeks to partially disallow,
in accordance with the Amended Omnibus Objection Procedures, proofs of claim listed on
**<u>Exhibit A</u>** hereto (collectively, the "<u>Claims to Be Partially Disallowed</u>"), each of which is

10

purportedly based, in part, on (*a*) bonds issued by COFINA, (*b*) bond claims that are duplicative

of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of

certain bonds, (*c*) an ownership interest in bonds issued by GDB, and/or (*d*) one or more

investments in mutual funds, which in turn may have invested in bonds issued by the

Commonwealth.  In addition, each of the proofs of claim listed on **Exhibit A** are deficient insofar

as they purport to assert liabilities for purported investment losses, but fail to provide sufficient

information to enable the Debtors to reconcile the proofs of claim.  Further, a portion of each claim

listed on **Exhibit A** hereto will remain asserted against the Commonwealth.  **Exhibit A** hereto

further specifies why each of the Claims to Be Partially Disallowed should be partially disallowed.

24.      In each of the Claims to Be Partially Disallowed, the proof of claim purported to

assert liabilities arising out of "Municipal Bonds" or other similar terms asserting liabilities

associated with investments in government-issued bonds.  Each of the Claims to Be Disallowed

provided as supporting documentation a copy of a brokerage statement, or other supporting

documentation containing information regarding bonds purportedly held by the claimant, but the

amounts of the bonds included in that supporting documentation did not match the amount on the

claimant's proof of claim.

25.      On August 13, 2019, the Court entered the *Order Granting in Part and Adjourning*

*in Part Debtors' Motion for Entry of An Order (A) Authorizing Alternative Dispute Resolution*

*Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D)*

*Granting Related Relief* [ECF No. 8453] (the "Authorized Mailings Order"), which authorized the

Debtors to send mailings "to any claimant who has not provided sufficient information to enable

Debtors to process their claim."  Authorized Mailings Order, ¶ 3.

26.    Pursuant to the Authorized Mailings Order, "[i]f the Debtors mail the Proposed

Mailing to a claimant, and the claimant either does not respond or responds but fails to provide

sufficient information to permit Debtors to reconcile their claim, the Debtors are authorized to

object to the claim as deficient." *Id.*

27.    In accordance with the Authorized Mailings Order, the Debtors have sent at least

one letter, substantially in the form of Exhibit 1 to the Authorized Mailings Order, to each claimant

subject to this Three Hundred Twenty-Fourth Omnibus Objection (the "Mailing").  Each Mailing

provided, in relevant part:

> Additional information is required in order for the Debtors to
> continue with assessing your claim. The Debtors are unable to
> determine from the information you provided the basis for the claim
> you are attempting to assert against one or more of the Debtors.  In
> responding to this letter, please ensure that you provide all of the
> information requested and as much detail as possible about your
> claim.  The descriptions you put on your proof of claim were too
> vague for the Debtors to understand the claim you are trying to
> assert, so please provide more detail and do not simply copy over
> the same information.
> *See* ECF No. 8453-1 at 2, 7.

21.    The Mailings received by the claimants subject to this Three Hundred Twenty-

Fourth Omnibus Objection directed the claimants to respond no later than October 23, 2019

(depending on the date each Mailing was sent).  *See id*.  Furthermore, the Mailings cautioned the

Claimants that "[i]f you do not respond to this request and do not provide the requested information

and documentation in support of your claim, the Debtors may be forced to object to your claim."

28.    Each of the Claimants identified in **Exhibit A** submitted a Mailing that purported

to assert liabilities arising from investment losses.  However, the Mailing responses asserted an

amount for investment losses that did not correspond to the amounts listed in their original proofs

of claim.  Accordingly, the Debtors reviewed the documentation submitted with the proofs of claim

or with the Mailings for assertions of investments related to government-issued bonds.  Based on

that review, the Debtors understand the Claims to Be Disallowed should be disallowed because

they assert, in part, (*a*) bonds issued by COFINA, (*b*) bonds issued by GDB, (*c*) bond claims that

are duplicative of one or more master proofs of claim filed against the Debtors on behalf of the

holders of certain bonds, and/or (*d*) one or more investments in mutual funds, which in turn may

have invested in bonds issued by the Debtors.  Further, to the extent the Claims to Be Disallowed

assert claimants' investment losses, they should be disallowed for the additional reason that the

Debtors are not liable for such investment losses.

### A.  No Liability for COFINA Bondholder Claims

29.     As identified in **Exhibit A** hereto, certain Claims to Be Partially Disallowed purport

to assert, in part, claims based on an alleged ownership interest in bonds issued by COFINA

(collectively the "COFINA Bondholder Claims").

30.     As explained above, the Settlement Order resolved the Commonwealth-COFINA

Dispute, and, pursuant to Paragraph 55 of the Settlement Order, all claims against the

Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA

have been released.  Additionally, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF

No. 5045-1], dated October 19, 2018, and attached to the Settlement Order (the "Settlement

Agreement"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding

between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has

been dismissed with prejudice following the approval of the compromise and settlement of the

Commonwealth-COFINA Dispute.  Furthermore, pursuant to Paragraph 29(f) of the Amended

Confirmation Order, claims, such as the COFINA Bondholder Claims, that arose from or relate to

the relationship of the Commonwealth and COFINA were released.  Amended Confirmation

Order, ¶ 29(f).[7]  For all of these reasons, the COFINA Bondholder Claims should be disallowed because these claims based on an apparent alleged ownership interest in COFINA Bonds have been satisfied, released, and/or discharged pursuant to the Settlement Order, Settlement Agreement, Amended Confirmation Order, and Plan.

## B. No Liability for GDB Bondholder Claims

31.     As identified in **Exhibit A** hereto, certain Claims to Be Partially Disallowed appear to purport to assert, in part, claims based on the alleged ownership of bonds issued by GDB (collectively the "GDB Bondholder Claims").

32.     Each of the GDB Bondholder Claims purport to be based in part on the ownership of GDB Bonds that were subject to the Qualifying Modification, which provided for the issuance of new securities in exchange for the cancellation of the GDB Bonds and the extinguishment of the Commonwealth's guarantee of certain GDB Bonds, and thus the Commonwealth is no longer liable for these claims.  Accordingly, each of the GDB Bondholder Claims has been released pursuant to the approval and consummation of the Qualifying Modification.  As noted above, the Qualifying Modification provides, among other things, that holders of GDB Bonds shall release GDB and its affiliates from claims relating to the GDB Bonds and any action or omission of GDB and its affiliates with respect to any indebtedness of or loan to GDB.  GDB is a public corporation and instrumentality of the Commonwealth.  The Commonwealth, thus, is an affiliate of GDB

---

[7] Pursuant to the Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise."  Plan § 1.53.

within the scope of the release pursuant to the Qualifying Modification.  Accordingly, the GDB

Bondholder Claims were released upon the consummation of the Qualifying Modification on

November 29, 2018.   Because the GDB Bondholder Claims are unenforceable against the

Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be

disallowed because they seek recovery of amounts for which the Commonwealth is not liable.

### C.  No Liability for Claims Based on Investments in Mutual Funds

33.    As identified in **<u>Exhibit A</u>** hereto, some of the Claims to Be Partially Disallowed

appear to purport to be based in part on investment(s) in one or more mutual funds that, in turn,

may have invested in bonds issued by the Commonwealth (collectively, the "<u>Mutual Funds</u>

<u>Claims</u>").

34.    A claimant bears the burden of establishing standing to file a proof of claim.  *In re*

*Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010).  It is well-established that only a creditor

or the creditor's authorized agent has standing to assert a claim.  Fed. R. Bankr. P. 3001(b); 11

U.S.C. §§ 501(a) ("A creditor or an indenture trustee may file a proof of claim."); *In re Melillo*,

392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Only a creditor or indenture trustee may file a proof of

claim.").  Parties with merely derivative interests lack standing to assert a claim against a debtor's

estate.  *Matter of Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (finding party with

"relationship with Debtor [that] is not direct, but rather derivative" was "a stranger to Debtor's

bankruptcy proceedings," with "no claim against the estate's assets," and "as a general rule has no

standing in Debtor's bankruptcy proceedings"); *see also In re Tower Park Properties, LLC*, 803

F.3d 450, 462-63 (9th Cir. 2015) (holding a trust beneficiary was not a party in interest); *In re*

*Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights of a party in interest

are asserted, those rights must be asserted by the party in interest, not someone else."); *In re Lopez*,

446 B.R. 12, 17 (Bankr. D. Mass. 2011) (to establish oneself as a party in interest "the moving party must be asserting its own rights and not those belonging to or derivative of a third party"); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (recognizing the "general principle that 'party in interest standing does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding'" (quoting *In re Refco*, 505 F.3d at 115 n. 10)).

35.     "A creditor, under the [Bankruptcy] Code, is one who has a claim *against the debtor* or the estate," rather than "a creditor of one of the debtor's creditors."  *S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997).  Because, at most, the Mutual Funds Claims were filed based on the claimant's status as an alleged creditor of an alleged creditor of the Commonwealth, the Mutual Funds Claims were not filed by an actual creditor of the Commonwealth.  *See In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (holding receiver lacked standing to file a proof of claim because it was not a creditor or an authorized agent of a creditor).  Instead, the Mutual Funds Claims are derivative of claims that must be asserted by the mutual funds directly for any claimed recovery to be considered by the Court.  *See Matter of Goldman*, 82 B.R. at 896 (finding party with "derivative" relationship has "no claim against the estate's asset" and "as a general rule has no standing in Debtor's bankruptcy proceedings").  Moreover, it is unknown whether the mutual fund still retains ownership of the suspect bonds.

36.     Indeed, under nearly identical circumstances, this Court previously disallowed claims filed against COFINA by investors in mutual funds that in turn allegedly invested in COFINA bonds for "lack of an individual interest in COFINA securities."  *Tr. of March 13, 2019 Hr'g Before the Hon. Laura Taylor Swain* [ECF No. 5969], at 64:01-10 ("THE COURT: So just so that I understand, his documentation shows that he is a mutual fund investor.  To the extent any

16

of those mutual funds actually holds COFINA bonds, the mutual fund would be the appropriate

claimant, and so he has provided no evidence of a valid direct claim as against COFINA?  MS.

STAFFORD: Correct, your Honor.  THE COURT: The objection to the claim is sustained and the

claim is disallowed for lack of an individual interest in COFINA securities.”); *see also Order*

*Granting Sixty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to*

*Claims Based on Investments in Mutual Funds* [ECF No. 9099]; *Memorandum Order Denying*

*Motion to Alter or Amend Order Sustaining Objection (Dkt. 8297) to Claims No. 152470 & No.*

*152283* [ECF No. 9121].  Accordingly, the claimants are not creditors of the Commonwealth and

lack standing to assert derivative claims.  Because the Commonwealth cannot be held liable for

the Partial Mutual Funds Claims, these claims should be partially disallowed.

### D.  No Liability for Duplicate Bond Claims

37.    As set forth in **Exhibit A** hereto, each of the Claims to Be Partially Disallowed

appear to purport to assert liability, in part, on the basis of bonds issued by, HTA or ERS

(collectively, the “Duplicate Bond Claims”).

38.    Each of the Duplicate Bond Claims purport to assert, in part, liability against the

Commonwealth associated with one or more bonds that is duplicative of one or more Master

Claims, which as described above were filed in the Title III Cases on behalf of the holders of

certain bonds issued by HTA or ERS.  Any failure to disallow the Duplicate Bond Claims will

result in the applicable claimants potentially receiving an unwarranted double recovery against the

Commonwealth, to the detriment of other stakeholders in the Commonwealth’s Title III Case.  The

holders of the Duplicate Bond Claims will not be prejudiced by the partial disallowance of their

claims because the liabilities associated with the Duplicate Bond Claims are subsumed within one

or more Master Claims.

### E.  Deficient Claims for Investment Losses

39.     As identified in Exhibit A hereto, each of the Claims to Be Partially Disallowed also purports to assert liabilities arising out of alleged investment losses.  However, none of these Claims to Be Partially Disallowed assert any potential causes of action against the Debtors that might render the Debtors liable for alleged damages incurred as a result of claimants' investment losses.  Accordingly, the Debtors are not liable for the amounts asserted in the Claims to Be Partially Disallowed.  *See English v. Energy Future Holdings (In re Energy Future Holdings)*, 2018 U.S. Dist. LEXIS 49952, at *7 (D. Del., March 27, 2018) (holding bankruptcy court's order disallowing proof of claim was proper where claimant had sold bonds issued by the debtor and, thus, neither had any right to payment with respect to the bonds, nor did claimant show it had any potential cause of action against the debtor for the alleged damages incurred by the claimant in selling the debtor's bonds at a loss); *In re Allegheny Int'l, Inc*., 954 F.2d 167, 173 (3d Cir. 1992) (citing *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, *Collier on Bankruptcy* § 502.02, at 502-22 (15th ed. 1991)) ("Initially, the claimant must allege facts sufficient to support the claim").

40.     For the foregoing reasons, the Commonwealth requests that the Claims to Be Partially Disallowed be partially disallowed, as set forth in **Exhibit A** hereto.

41.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Three Hundred Twenty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Partially Duplicate, Deficient and No Liability Bond Claims*, dated April 30, 2021, attached hereto as **Exhibit B**.

## NOTICE

42.     In accordance with the Amended Omnibus Objection Procedures and the Court's

Notice Order, the Commonwealth is providing notice of this Three Hundred Twenty-Fourth

Omnibus Objection to (a) the individual creditors subject to this Three Hundred Twenty-Fourth

Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the

*Fourteenth Amended Case Management Procedures* [ECF No. 15894-1]), which is available on

the Debtors' case website at https://cases.primeclerk.com/puertorico.  The notice for this Three

Hundred Twenty-Fourth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations

of the Three Hundred Twenty-Fourth Omnibus Objection and all of the exhibits attached hereto

are being filed with this objection and will be served on the parties.  The Commonwealth submits

that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

43.     This Three Hundred Twenty-Fourth Omnibus Objection is limited to the grounds

stated herein.  Accordingly, it is without prejudice to the rights of the Commonwealth or the rights

of any other party in interest in the Title III Cases to object to the Claims to Be Partially Disallowed

or any other claims on any ground whatsoever.  The Commonwealth expressly reserves all further

substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to

such relief is intended or should be construed as: (a) an admission as to the validity of any claim

against the Commonwealth; (b) a waiver of the rights of the Commonwealth or any other party in

interest in the Title III Cases to dispute any claim on any grounds; (c) a promise or requirement to

pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or

lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the

Commonwealth or any other party in interest in the Title III Cases under PROMESA, the

Bankruptcy Code or any other applicable law.

19

## **NO PRIOR REQUEST**

44.     No prior request for the relief sought in this Three Hundred Twenty-Fourth

Omnibus Objection has been made to this or any other court.

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in

the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested

herein, and (2) granting such other and further relief as is just.


Dated: April 30, 2021
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944


/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board for
Puerto Rico, as representative of the
Commonwealth of Puerto Rico*

<div style="border:1px solid black">

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

</div>

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>    como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al.*,<br><br>                      Deudores.[1] | PROMESA<br>Título III<br><br>núm. 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA.** |

## TRICENTÉSIMA VIGÉSIMA CUARTA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES POR BONOS PARCIALMENTE DUPLICADAS, DEFICIENTES Y EN LAS QUE NO EXISTE RESPONSABILIDAD

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

1

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III del ELA conforme a la sección 315(*b*) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica esta tricentésima vigésima cuarta objeción global (la "Tricentésima vigésima cuarta objeción global") a las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento, cada una de las cuales se basa supuestamente en *a*) bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), *b*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de determinados bonistas, *c*) una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento para Puerto Rico (el "BGF") y/o *d*) una o más inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por el ELA. Además, cada una de las evidencias de reclamaciones contenidas en el **Anexo A** pretende alegar responsabilidades por supuestas pérdidas por inversiones, pero no brinda información suficiente para alegar una reclamación contra el ELA por tales pérdidas por inversiones. Una parte de cada reclamación que aparece en el **Anexo A** del presente documento seguirá alegada contra el ELA y este último se reserva el derecho a oponerse a cualquiera de los montos restantes alegados en las reclamaciones, según se identifican en la columna titulada "Corregidas" en el **Anexo A** del presente documento, sobre la base del motivo que fuere. En apoyo de la Tricentésima vigésima cuarta objeción global, el ELA manifiesta respetuosamente lo siguiente:

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

2

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

### A.      Órdenes de Fecha Límite

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA" o el "Caso de Título III").

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160]

3

(conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo

dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.    Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III del ELA**

5.    Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes

fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos

emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación

principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de las

reclamaciones por bonos para la respectiva serie de bonos en relación con las obligaciones surgidas

de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con

los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, se han radicado

evidencias de reclamaciones principales (conjuntamente, las "Reclamaciones Principales") en el

marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés

emitidos por el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de

Puerto Rico (el "SRE") y la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT").

6.    **_SRE_**: el SRE es un organismo gubernamental, aparte e independiente del Gobierno

del ELA y de sus demás instrumentalidades. _Véase_ 3 L.P.R.A § 775.[3] Supuestamente conforme a

la Resolución sobre bonos para el financiamiento de pensiones, adoptada el 24 de enero de 2008,

y ciertas resoluciones complementarias, el SRE emitió unos bonos prioritarios y subordinados para

el financiamiento de pensiones (los "Bonos del SRE "), por un monto total del principal original

---

[3]  El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración
conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio
para el SRE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III
de dicho cuerpo legal.

de aproximadamente $2900 millones.[4] BNYM actúa como agente fiscal con respecto a los Bonos del SRE. Actuando en nombre de los tenedores de los Bonos del SRE, BNYM radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA (la "Reclamación Principal del SRE", que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 32004.[5]

7.     **ACT**: la ACT es una corporación pública e instrumentalidad del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 74-1965 de la Asamblea Legislativa del ELA (la "Ley para crear la ACT"). La ACT se encarga de la construcción, operación y mantenimiento de carreteras y otros sistemas de transportación en el ELA. *Véase* 9 L.P.R.A. § 2002. La Ley para crear la ACT autoriza a la ACT a emitir bonos. *Véase* 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT"): i) la Resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución de 1968"), y ii) la

---

[4]  El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción global a reclamaciones radicadas por los tenedores de bonos emitidos por el SRE* [Caso núm. 17-3566, ECF núm. 381], basándose en que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*, anulando de pleno derecho los Bonos del SRE. El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico radicó una *Objeción Global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a las reclamaciones radicadas o alegadas por los tenedores de los Bonos del SRE contra el SRE y el ELA* [Caso núm. 17-3283, ECF núm. 6482], basándose, entre otras cosas, en que la emisión de los bonos fue *ultra vires*. El SRE se reserva el derecho a impugnar la emisión de los bonos sobre cualquier motivo, incluso sobre el motivo de que los bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

[5]  El 22 de mayo de 2019, el ELA radicó una objeción a la Evidencia de Reclamación principal del SRE. Véase Objeción de la Junta de Supervisión y Administración Financiera, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a las reclamaciones radicadas o alegadas contra el ELA por el Bank of New York Mellon, como agente fiscal (Reclamación núm. 16775) [ECF núm. 7075]. En aras de la claridad, la presente Tricentésima décima objeción global se radica sin perjuicio de los derechos de las partes en relación con dicha objeción, incluyendo cualesquiera derechos a intervenir, que quedan reservados.

Resolución núm. 98-06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998"). Desde el 21

de mayo de 2017, la fecha de petición de la ACT, aproximadamente $830 millones del monto

principal de los bonos emitidos conforme a la Resolución de 1968 quedan pendientes de pago, y

aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la

Resolución de 1998 quedan igualmente pendientes de pago. BNYM actúa como agente fiscal con

respecto a los Bonos de la ACT.

8.     Actuando en nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres

evidencias de reclamaciones principales en el marco del Caso de Título III del ELA (las

"Reclamaciones Principales ACT-ELA"), cada una de las cuales alegaba "una reclamación

garantizada, contingente y no liquidada contra el ELA en razón de la totalidad de las

reclamaciones, causas de acción, derechos y/o remedios que el Agente Fiscal o los Propietarios

puedan tener contra el ELA, conforme a derecho o equidad. . . ." *Véase* Adenda de la Evidencia

de reclamación núm. 121053, ¶ 15; Adenda de la Evidencia de reclamación núm. 120982, ¶ 15;

Adenda de la Evidencia de reclamación núm. 115380, ¶ 15.[6]

## C.     Caso de Título III de COFINA y resolución de la controversia entre el ELA y COFINA

9.     COFINA es una corporación pública e instrumentalidad del ELA, que constituye

una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm.

91 de la Asamblea Legislativa del ELA. Conforme a la Resolución enmendada y modificada sobre

los bonos del fondo de interés apremiante, adoptada el 13 de julio de 2007, en su versión

enmendada del 19 de junio de 2009, y de conformidad con otras resoluciones complementarias,

---

[6]   Aunque BNYM radicó inicialmente tres evidencias de reclamaciones registradas por Prime
Clerk como Evidencias de reclamaciones núms. 21286, 26541 y 35277, estas fueron sustituidas y
enmendadas por las Evidencias de reclamaciones núms. 121053, 120982 y 115380.

COFINA emitió una serie de bonos por un monto total de aproximadamente $17,000 millones para, entre otras cosas, sufragar determinadas obligaciones de deuda del Banco Gubernamental de Fomento para Puerto Rico y de la Corporación para el Financiamiento Público de Puerto Rico (los "Bonos de COFINA"). El Bank of New York Mellon actúa como fiduciario con respecto a los Bonos de COFINA.

10.     La Junta de Supervisión radicó el *Tercer plan enmendado de ajuste de la Corporació*n *del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* (el "Plan") [ECF núm. 4652] el 9 de enero de 2019. El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista celebrada los días 16 y 17 de enero de 2019.

11.     El 4 de febrero de 2019, el Tribunal confirmó el Plan que incorporaba el pacto y la conciliación de la controversia sobre si, luego de examinar todas las contestaciones y reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos sobre la venta y uso supuestamente empeñados por COFINA para garantizar la deuda son propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia entre el ELA y COFINA"). *Véase la Orden y la Sentencia que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5048]. Ese mismo día, el Tribunal aprobó el pacto y la conciliación de la Controversia entre el ELA y COFINA conforme al *Dictamen abreviado y orden que aprueba la conciliación entre el Estado Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés Apremiante de Puerto Rico* [ECF núm. 5045] (la "Orden de Conciliación"). El 5 de febrero de 2019, el Tribunal dictó una *Orden y Sentencia enmendadas que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5055] (la "Orden de Confirmación Enmendada"). El

7

Plan entró en vigor el 12 de febrero de 2019 (la "Fecha de Entrada en Vigor"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de Entrada en Vigor* [Caso núm. 17 BK 3284-LTS, ECF núm. 587].

**D.     Procedimientos conforme al Título VI del BGF y modificación calificada**

12.     El BGF es una entidad pública e instrumentalidad gubernamental del ELA, creada por la Asamblea Legislativa en 1948 para ayudar al Gobierno del ELA (el "Gobierno") a llevar a cabo sus tareas fiscales y a desempeñar su responsabilidad con mayor eficacia en relación con el desarrollo de la economía del ELA. El 28 de abril de 2017, la Junta de Supervisión aprobó por unanimidad el Plan fiscal del BGF de febrero de 2017, que contemplaba una terminación ordenada de las actividades del BGF sobre la base de la determinación de que el BGF no era viable a largo plazo dadas sus condiciones financieras vigentes en ese momento.

13.     El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se autorizaba al BGF, conforme a la sección 601(e) de PROMESA, a ampararse en el Título VI de PROMESA. El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una modificación calificada, conforme a la sección 601(m)(1)(D) de PROMESA (la "Modificación Calificada"), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

14.     El 7 de noviembre de 2018, el Tribunal aprobó la Modificación Calificada conforme a la sección 601(m)(1)(D) de PROMESA. *Véase* ECF núm. 270 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 7 de nov. de 2018). La Modificación Calificada dispone, entre otras cosas, i) la emisión de nuevos bonos por la recién creada Autoridad de Recuperación de Deuda del BGF (*GDB Debt Recovery Authority*) a cambio

8

de la cancelación (entre otras cosas) de determinados bonos de participación y reclamaciones de

bonos garantizados (conjuntamente, "Bonos del BGF"); ii) la extinción de la garantía del ELA de

los bonos garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la

liberación de reclamaciones de los tenedores de Bonos del BGF contra el BGF y sus afiliados en

relación con (entre otras cosas) cualquier inversión con el BGF o la compra, venta o transferencia

de cualquier título valor o participación del BGF, y cualquier acción u omisión con respecto a

cualquier endeudamiento o préstamo al BGF (incluidos cualesquiera pagarés emitidos o depósitos

mantenidos por el BGF) o del BGF. *Declaración de Solicitación,* en 57-60, ECF núm. 1 a 15 en

*Banco Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 10 de ago. de

2018).

15.     El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación

Calificada del BGF. Nota de prensa, *el Gobierno de Puerto Rico anuncia la consumación de la*

*Modificación Calificada del BGF*, gobernador de Puerto Rico (29 de nov. de 2018), *disponible en*

http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-

modification.pdf.

**E.     Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones**
**globales y objeciones a reclamaciones**

16.     Hasta la fecha, se han radicado aproximadamente 179,000 evidencias de

reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas

evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones

radicadas contra los Deudores, además de los montos no liquidados reclamados.

17.     De las evidencias de reclamaciones radicadas, aproximadamente 115,000 han sido

radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad

con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

18.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

19.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a

procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

20.    Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la fecha más de 14 vistas vinculadas con más de 140 objeciones globales radicadas por COFINA, la ACT, el SRE y/o la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"). Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban $43.0 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

21.    Esta Tricentésima vigésima cuarta objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

11

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

22.    Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

23.    La Tricentésima vigésima cuarta objeción global pretende que se rechacen parcialmente, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas parcialmente"), cada una de las cuales se basa supuestamente, en parte, en *a*) bonos emitidos por COFINA, *b*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de determinados bonistas, *c*) una participación patrimonial en bonos emitidos por el BGF, y/o *d*) una o más inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por el ELA. Además, cada una de las evidencias de reclamaciones contenidas en el **Anexo A** son deficientes en la medida en que pretenden alegar responsabilidades por supuestas pérdidas por inversiones, pero no brindan información suficiente para que los Deudores puedan reconciliar las evidencias de reclamaciones. Asimismo, una parte de cada reclamación que aparece en el **Anexo A** del presente documento seguirá estando radicada contra el ELA. El **Anexo A** del presente documento especifica además por qué cada una de las Reclamaciones que han de ser rechazadas parcialmente debe ser rechazada parcialmente.

24.    En cada una de las Reclamaciones que han de ser rechazadas parcialmente, la evidencia de reclamación pretendía alegar responsabilidades surgidas de "Bonos Municipales" u

12

otros términos similares que alegan responsabilidades vinculadas con inversiones en bonos emitidos por el Gobierno. Cada una de las Reclamaciones que han de ser rechazadas proporcionaba como documentación justificativa una copia de un extracto de corretaje u otra documentación justificativa que contenía información sobre bonos supuestamente en posesión del reclamante, pero los montos de los bonos incluidos en dicha documentación justificativa no correspondían con el monto que figuraba en la evidencia de reclamación del reclamante.

25.     El 13 de agosto de 2019, el Tribunal dictó la *Orden que concedió parcialmente y levantó parcialmente la Moción de los Deudores para dictar una orden que A) autorice procedimientos alternativos de resolución de controversias, B) apruebe formas de notificación adicionales, C) apruebe envíos propuestos y D) conceda el remedio relacionado* [ECF núm. 8453] (la "Orden de Envío Autorizado") que autorizó que los Deudores realizaran envíos "a cualquier reclamante que no haya proporcionado suficiente información que permitiera a los Deudores enjuiciar sus reclamaciones". Orden de Envío Autorizado, ¶ 3.

26.     Conforme a la Orden de Envío Autorizado, "[s]i los Deudores realizan el Envío Propuesto al reclamante, y este último no responde o responde pero no aporta suficiente información que permita a los Deudores reconciliar su reclamación, los Deudores tendrán derecho a oponerse a la reclamación como deficiente". *Id.*

27.     De conformidad con la Orden de Envío Autorizado, los Deudores han enviado al menos una carta a cada reclamante objeto de la presente Tricentésima vigésima cuarta objeción global esencialmente en el formato que se adjunta a la Orden de Envío Autorizado como Anexo 1 (el "Envío"). Cada Envío, en la parte pertinente, rezaba lo siguiente:

> Se requiere información adicional para que los Deudores sigan examinando su reclamación. Los Deudores no pueden determinar a partir de la información que usted proporcionó cuál es la base de la reclamación que trata de alegar contra uno o más Deudores. Al

13

> responder a esta carta, rogamos se asegure de proporcionar toda la
> información solicitada, así como tantos detalles como sea posible
> aportar sobre su reclamación. Las descripciones que incorporó en su
> evidencia de reclamación eran demasiado vagas para que los
> Deudores comprendieran la reclamación que usted trata de alegar,
> de manera que rogamos proporcione más detalles y no se limite
> simplemente a copiar la misma información.
> *Véase* ECF núm. 8453-1 en 2, 7.

21.     Los Envíos recibidos por los reclamantes objeto de la presente Tricentésima

vigésima cuarta objeción global exigían a los reclamantes responder antes del 23 de octubre de

2019 (dependiendo de la fecha en la que cada Envío fue realizado). *Véase id.* Además, en los

Envíos se advertía a los Reclamantes de que "[s]i no responde a esta solicitud y no proporciona la

información y la documentación requeridas para justificar su reclamación, es posible que los

Deudores se vean en la obligación de oponerse a su reclamación."

28.     Cada uno de los Reclamantes identificados en el **<u>Anexo A</u>** realizó un Envío que

pretendía alegar responsabilidades surgidas de pérdidas por inversión. Sin embargo, los Envíos de

réplica alegaron un monto relativo a pérdidas por inversión que no correspondía con los montos

que aparecen en sus evidencias de reclamaciones originales. En consecuencia, los Deudores

analizaron la documentación sometida con la evidencia de reclamación o con los Envíos en

relación con la alegación de inversiones relacionadas con bonos emitidos por el Gobierno. Sobre

la base de dicho análisis, los Deudores consideran que las Reclamaciones que han de ser

rechazadas deben rechazarse, ya que alegan, en parte, *a*) bonos emitidos por COFINA, *b*) bonos

emitidos por el BGF, *c*) reclamaciones por bonos que constituyen duplicados con respecto a una o

más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de

determinados bonistas, y/o *d*) una o más inversiones en fondos mutuos que a su vez pudieron haber

invertido en bonos emitidos por los Deudores. Además, en la medida en que las Reclamaciones

que han de ser rechazadas aleguen pérdidas por inversiones de los reclamantes, deben ser

rechazadas por el motivo adicional de que los Deudores no son responsables por dichas pérdidas por inversiones.

### A. Ausencia de responsabilidad por reclamaciones de los bonistas de COFINA

29.    Conforme a lo identificado en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente pretenden alegar reclamaciones basadas parcialmente en una supuesta participación patrimonial en los bonos emitidos por COFINA (conjuntamente, las "Reclamaciones de los Bonistas de COFINA").

30.    Como se explicó anteriormente, la Orden de Conciliación resolvió la Controversia entre el ELA y COFINA y, conforme al párrafo 55 de la Orden de Conciliación, la totalidad de las reclamaciones contra el ELA, surgidas o vinculadas con la relación del ELA y COFINA, han sido liberadas. Además, conforme al párrafo 3(c) del *Acuerdo de Conciliación* [ECF núm. 5045-1], de fecha 19 de octubre de 2018, que se adjunta a la Orden de Conciliación (el "Acuerdo de Conciliación"), y el párrafo 7 de la Orden de Confirmación Enmendada, el procedimiento contencioso entre el ELA y COFINA sobre la Controversia entre el ELA y COFINA ha sido desestimado de forma definitiva luego de la aprobación del pacto y la conciliación de la Controversia entre el ELA y COFINA. Además, conforme al párrafo 29(f) de la Orden de Confirmación Enmendada, reclamaciones (tales como las Reclamaciones de los Bonistas de COFINA) que surgieron de o están vinculadas con la relación entre el ELA y COFINA, fueron liberadas. Orden de Confirmación Enmendada, ¶ 29(f). [7] Por todos esos motivos, las

---

[7] Conforme al Plan, una "Reclamación" se define como "[c]ualquier derecho a un pago o cumplimiento, independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, contingente, vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado, conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por incumplimiento o ejecución de un cumplimiento, independientemente de si tal derecho a un remedio en equidad consta en una sentencia, es fijo, contingente, vencido, no vencido, controvertido, no controvertido, garantizado o no garantizado,

15

Reclamaciones de los Bonistas de COFINA deben rechazarse porque dichas reclamaciones basadas en una supuesta y aparente participación patrimonial en los Bonos de COFINA han sido satisfechas, liberadas y/o liquidadas conforme a la Orden de Conciliación, el Acuerdo de Conciliación, la Orden de Confirmación Enmendada y el Plan.

**B. Ausencia de responsabilidad por reclamaciones de los Bonistas del BGF**

31.     Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente parecen pretender alegar reclamaciones basadas, en parte, en la supuesta participación patrimonial en bonos emitidos por el BGF (conjuntamente, las "<u>Reclamaciones de los Bonistas del BGF</u>").

32.     Cada una de las Reclamaciones de los Bonistas del BGF pretende basarse en parte en la propiedad de los Bonos del BGF objeto de la Modificación Calificada, que dispuso la emisión de nuevos títulos valores a cambio de la cancelación de los Bonos del BGF y la extinción de la garantía del ELA relativa a determinados Bonos del BGF, por lo que el ELA ya no tiene responsabilidad con respecto a dichas reclamaciones. En consecuencia, cada una de las Reclamaciones de los Bonistas del BGF ha sido liberada conforme a la aprobación y la consumación de la Modificación Calificada. Como se señaló anteriormente, la Modificación Calificada dispone, entre otras cosas, que los tenedores de los Bonos del BGF liberarán al BGF y sus afiliados de las reclamaciones relacionadas con los Bonos del BGF, y de cualquier acción u omisión del BGF y sus afiliados con respecto a todo endeudamiento del BGF o préstamo al BGF. El BGF es una entidad e instrumentalidad pública del ELA. En consecuencia, el ELA es un afiliado

---

y la totalidad de las deudas, procesos, indemnizaciones por daños y perjuicios, derechos, remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas de acción, procedimientos o reclamaciones de cualquier tipo o naturaleza, en derecho, equidad o de cualquier otra forma". Plan § 1.53.

del BGF dentro del alcance de la liberación conforme a la Modificación Calificada. Por lo tanto, las Reclamaciones de los Bonistas del BGF fueron liberadas tras la consumación de la Modificación Calificada el 29 de noviembre de 2018. Puesto que las Reclamaciones de los Bonistas del BGF son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no es responsable.

### C. Ausencia de responsabilidad relativa a reclamaciones basadas en inversiones en fondos mutuos

33.   Conforme a lo identificado en el **__Anexo A__** del presente documento, algunas Reclamaciones que han de ser rechazadas parcialmente parecen pretender basarse, en parte, en inversión(es) en uno o varios fondos mutuos que, a su vez, pudieron haber invertido en los bonos emitidos por el ELA (conjuntamente, las "Reclamaciones de los Fondos Mutuos").

34.   Los reclamantes tienen la carga de demostrar su legitimación para radicar una evidencia de reclamación. *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010). Es ampliamente aceptado que solo los acreedores o sus representantes autorizados están legitimados para radicar reclamaciones. Reg. Fed. del Proc. de Quiebr. 3001(b); Título 11 U.S.C., §§ 501(a) ("Los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones"); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Solo los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones".). Las partes que solo tengan intereses derivados carecen de legitimación para radicar reclamaciones contra el patrimonio de un deudor. *Caso Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (donde se concluyó que una parte con "una relación con el Deudor [que] no es directa, sino más bien derivada era "persona ajena al procedimiento de quiebra del Deudor", sin "ninguna posibilidad de reclamar contra los activos del patrimonio" y "como regla general, carece de legitimación en relación con el procedimiento de quiebra del Deudor".); *véase*

17

*también In re Tower Park Properties, LLC,* 803 F.3d 450, 462-63 (9th Cir. 2015) (donde se concluyó que un beneficiario de un fideicomiso no era una parte interesada); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("En la medida en que se hagan valer los derechos de una parte interesada, esos derechos han de hacerse valer por dicha parte interesada, no por un tercero".); *In re López*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (para constituirse como parte interesada "la parte solicitante deberá hacer valer sus propios derechos y no aquellos que asistan a un tercero o que se deriven en relación con tal tercero".); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (donde se reconoce el "principio general de que 'no se da legitimación de una parte interesada si la parte pretende hacer valer un derecho que es puramente derivado de los derechos de otra parte en el procedimiento de quiebras'" (que cita *In re Refco*, 505 F.3d en 115 n. 10)).

35.     "Un acreedor, conforme al Código [de Quiebras], es aquel que tiene una reclamación contra el deudor o el patrimonio", en lugar de "un acreedor de uno de los acreedores del deudor". *S. Blvd., Inc. c. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Ya que, a lo sumo, las Reclamaciones de los Fondos Mutuos fueron radicadas en virtud de la condición del reclamante como presunto acreedor de un presunto acreedor del ELA, las Reclamaciones de los Fondos Mutuos no fueron radicadas por un acreedor real del ELA. *Véase In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (donde se concluye que el síndico carecía de legitimación para radicar evidencias de reclamaciones porque no era acreedor ni agente autorizado de un acreedor). En cambio, las Reclamaciones de los Fondos Mutuos se derivan de reclamaciones que deben hacerse valer por los fondos mutuos directamente para que el Tribunal examine cualquier recuperación alegada. *Véase el caso Goldman*, 82 B.R. en 896 (donde se concluye que una parte con una relación "derivada" no puede "reclamar contra los activos del patrimonio" y "como regla

18

general, carece de legitimación en el procedimiento de quiebras del Deudor"). Es más, no se sabe

si el fondo mutuo sigue ostentando la propiedad de los bonos controvertidos.

36.    En efecto, en unas circunstancias casi idénticas, el Tribunal ya rechazó

reclamaciones radicadas contra COFINA por unos inversores en fondos mutuos que, a su vez,

supuestamente invirtieron en los bonos de COFINA, por "carecer de interés individual en los

títulos valores de COFINA". *Transcripción del 13 de marzo de 2019 de la audiencia ante su*

*señoría, Laura Taylor Swain* [ECF núm. 5969], en 64:01-10 ("EL TRIBUNAL: Entonces, para

que yo lo entienda, su documentación muestra que es inversor en un fondo mutuo. En la medida

en que cualquiera de esos fondos mutuos posea realmente los bonos de COFINA, el fondo mutuo

sería el reclamante pertinente, ¿así que no proporcionó ninguna evidencia de una reclamación

directa válida contra COFINA?  SRA. STAFFORD: Así es, señoría. EL TRIBUNAL: Se concede

la objeción a la reclamación, y se rechaza la reclamación por falta de interés individual en títulos

valores de COFINA."); *véase también la Orden por la que se concede la Sexagésima cuarta*

*objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones basadas*

*en las inversiones en fondos mutuos* [ECF núm. 9099]; *Orden de memorando por la que se rechaza*

*la moción para alterar o enmendar la orden que concede la objeción (extr. 8297) a las*

*Reclamaciones núms. 152470 y 152283* [ECF núm. 9121]. En consecuencia, los reclamantes no

son acreedores del ELA y carecen de legitimación para hacer valer reclamaciones derivadas.

Puesto que al ELA no se le puede atribuir la responsabilidad por las Reclamaciones Parciales de

los Fondos Mutuos, dichas reclamaciones deben rechazarse parcialmente.

**D.  Ausencia de responsabilidad por reclamaciones duplicadas por bonos**

37.    Según se expone en el **<u>Anexo A</u>** del presente documento, cada una de las

Reclamaciones que han de ser rechazadas parcialmente parecen pretender alegar responsabilidad,

en parte, sobre la base de bonos emitidos por la ACT o el SRE (conjuntamente, las "Reclamaciones Duplicadas por Bonos").

38.     Cada una de las Reclamaciones Duplicadas por Bonos pretende alegar, en parte, responsabilidad contra el ELA vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos emitidos por la ACT o el SRE. Si las Reclamaciones duplicadas por bonos no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA, en detrimento de otras partes interesadas en el Caso de Título III del ELA. Los titulares de las Reclamaciones Duplicadas por Bonos no se verán perjudicados por el hecho de que se rechacen parcialmente sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones Duplicadas por Bonos figuran en una o más Reclamaciones Principales.

### E.  Reclamaciones deficientes relativas a pérdidas por inversiones

39.     Según se identifica en el Anexo A del presente documento, cada una de las Reclamaciones que han de ser rechazadas parcialmente también pretende alegar responsabilidades surgidas de supuestas pérdidas por inversiones. Sin embargo, ninguna de dichas Reclamaciones que han de ser rechazadas parcialmente alega posible causa de acción alguna contra los Deudores que pueda generar responsabilidad de los Deudores por los supuestos daños y perjuicios sufridos como consecuencia de las pérdidas de inversión de los reclamantes. En consecuencia, los Deudores no son responsables por los montos alegados en las Reclamaciones que han de ser rechazadas parcialmente. *Véase English c. Energy Future Holdings (In re Energy Future Holdings),* 2018 U.S. Dist. LEXIS 49952, en *7 (D. Del., 27 de marzo de 2018) (que dispone que la orden del

tribunal de quiebras por la que se rechaza la evidencia de reclamación era la adecuada, cuando el reclamante había vendido los bonos emitidos por el deudor y, por lo tanto, no tenía ningún derecho a un pago en relación con los bonos ni ha demostrado el reclamante que tuviera posible causa de acción contra el deudor por los supuestos daños y perjuicios sufridos por el reclamante al vender con pérdidas los bonos del deudor); *In re Allegheny Int'l, Inc*., 954 F.2d 167, 173 (3d Cir. 1992) (que cita *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991) (que cita 3 L. King, *Collier on Bankruptcy* § 502.02, en 502-22 (15th ed. 1991)) ("Al principio, el reclamante debe alegar hechos que sean suficientes para sostener la reclamación").

40.     Por los motivos mencionados, el ELA solicita que las Reclamaciones que han de ser rechazadas parcialmente sean rechazadas parcialmente, según se establece en el **Anexo A** del presente documento.

41.     En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Tricentésima vigésima cuarta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones por bonos parcialmente duplicadas, deficientes y en las que no existe responsabilidad*, de fecha 30 de abril de 2021, adjunta al presente como **Anexo B**.

### NOTIFICACIÓN

42.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el ELA notifica la presente Tricentésima vigésima cuarta objeción global a) a los acreedores individuales objeto de esta Tricentésima vigésima cuarta objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 14* [ECF núm. 15894-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación relativa a esta Tricentésima vigésima

cuarta objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Tricentésima vigésima cuarta objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

43.     La presente Tricentésima vigésima cuarta objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos del ELA, o de los derechos de cualesquiera otras partes interesadas en dichos Casos de Título III, a objetar a las Reclamaciones que han de ser rechazadas parcialmente o a cualesquiera otras reclamaciones sobre la base de los motivos que fuere. El ELA se reserva expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra el ELA; b) constituyan una renuncia a los derechos del ELA, o de cualesquiera otras partes interesadas de los Casos de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten al ELA, o a cualesquiera otras partes interesadas de los Casos de Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

44.     No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima vigésima cuarta objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda cualesquiera otros remedios que se consideren justos.

Fecha: 30 de abril de 2021
      San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico*