Hearing Date:  June 16, 2021, at 9:30AM (Atlantic Standard Time)
Response Deadline: June 2, 2021, at 4:00PM (Atlantic Standard Time)

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

---

## THREE HUNDRED TWENTY-FIFTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATE, DEFICIENT, NO LIABILITY, AND INCORRECT DEBTOR BOND CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth," or the "Debtor") by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

as the sole Title III representative of the Commonwealth pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), [2] files this three hundred twenty-fifth omnibus objection (the "Three Hundred Twenty-Fifth Omnibus Objection") to the proofs of claim listed on **Exhibit A** hereto, each of which is purportedly based, in part, on (*a*) bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), (*b*) bond claims that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds, (*c*) an ownership interest in bonds issued by the Government Development Bank of Puerto Rico ("GDB"), and/or (*d*) one or more investments in mutual funds, which in turn may have invested in bonds issued by the Commonwealth.  To the extent each of the Claims to Be Disallowed and Partially Reclassified purport to assert additional liabilities associated with government-issued bonds, the claims are deficient because they fail to provide sufficient information for the Commonwealth to reconcile the claim, such as an identification of the amount or CUSIP numbers of the asserted bonds.  Further, the remaining portions of each of the proofs of claim listed on **Exhibit A** hereto should be reclassified because such remaining portion identifies the Commonwealth as obligor, when that claim is properly asserted, if at all, against the Puerto Rico Electric Power Authority ("PREPA").  In support of the Three Hundred Twenty-Fifth Omnibus Objection, the Commonwealth respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").  On July 3, 2017 (the "Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for PREPA pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "PREPA Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases"). On October 6, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only. Case No. 17 BK 4780, ECF No. 340.

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

3

**B.      Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

5.      Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a). As explained below, master proofs of claim (collectively, the "Master Claims") have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"); Puerto Rico Public Buildings Authority ("PBA"); Puerto Rico Aqueducts and Sewer Authority ("PRASA"); and Puerto Rico Public Financing Corporation ("PRPFC").

6.      ***ERS***—ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.[3]  Purportedly pursuant to that certain Pension Funding Bond Resolution, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds"), in the aggregate original principal amount of approximately $2.9 billion.[4]  BNYM

---

[3]  On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof.

[4]  On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [Case No. 17-3283, ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*.  ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the holders of ERS Bonds, BNYM filed a master proof of claim in the Commonwealth Title III Case, which was logged by Prime Clerk, LLC, as Proof of Claim No. 32004.[5]

7.      **_PBA_** — PBA purportedly issued Revenue Bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth.  US Bank and US Bank Trust serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833.[6]  The PBA Master Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingents claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ." Rider to PBA Master Claim, ¶¶ 19-21.

8.      **_PRASA_**—PRASA owns and operates the island-wide public water and wastewater systems in Puerto Rico.  PRASA issued certain revenue bonds (the "PRASA Bonds"), under the Puerto Rico Aqueduct and Sewer Authority Resolution No. 1583, *Authorizing and Securing*

---

[5]  On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim.  See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent (Claim No. 16775) [ECF No. 7075].  For the avoidance of doubt, this Three Hundred Tenth Omnibus Objection is without prejudice to the parties' rights with respect to such objection, including any rights to intervene, which are reserved.

[6]  Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was initially filed by the Fiscal Agent.

*Puerto Rico Aqueduct and Sewer Authority Bonds Guaranteed by the Commonwealth of Puerto Rico*, and certain supplemental resolutions.  Banco Popular de Puerto Rico ("Banco Popular") serves as trustee for the PRASA Bonds and filed a master proof of claim against the Commonwealth on behalf of the holders of the PRASA Bonds, which was logged by Prime Clerk as Proof of Claim No. 22620 (the "PRASA Master Claim").  The PRASA Master Claim asserts "a contingent claim against the Commonwealth on account of the Bonds in an amount not less than $284,755,000, together with all interest, and premium accruing on the Bonds from and after the Petition Date, and all fees, costs, expenses and other charges accrued, accruing or chargeable with respect thereto."  Addendum to PRASA Master Claim, ¶ 9.

9.    ***PRPFC***—PRPFC is a subsidiary corporation of GDB created pursuant to Resolution No. 5044 of the Board of Directors of GDB, as amended ("Resolution No. 5044"), adopted pursuant to the authority granted under Act No. 17 of the Legislature of Puerto Rico, approved September 23, 1948, as amended.  It provides government agencies, instrumentalities, municipalities and other subdivisions of the Commonwealth with alternative mechanisms to meet their financing needs.  PRPFC has the capacity to borrow money and issue debt through the issuance of bonds and other obligations.  U.S. Bank Trust serves as trustee for certain Series 2012A and Series 2011A and B bonds issued by the PRPFC (the "PRPFC Bonds").  On behalf of the holders of the PRPFC Bonds, US Bank Trust filed a proof of claim against the Commonwealth, which was logged by Prime Clerk as Proof of Claim No. 13374.

**B.    The COFINA Title III Case and Resolution of the Commonwealth-COFINA
Dispute**

10.    COFINA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 91 of the Legislative Assembly of the Commonwealth.  Pursuant to the Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as

6

amended on June 19, 2009, and pursuant to certain supplemental resolutions, COFINA issued a series of bonds in aggregate approximate amount of $17 billion, to, among other things, defray certain debt obligations of the Puerto Rico Government Development Bank and the Puerto Rico Public Finance Corporation (the "COFINA Bonds").  Bank of New York Mellon serves as Trustee with respect to the COFINA Bonds.

11.     The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652] on January 9, 2019.  The Court considered confirmation of the Plan and any objections thereto at a hearing on January 16-17, 2019.

12.     On February 4, 2019, the Court confirmed the Plan, which incorporated the compromise and settlement of the dispute over whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA under applicable law (the "Commonwealth-COFINA Dispute").  *See Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5048].   On the same day, the Court approved the compromise and settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [ECF No. 5045] (the "Settlement Order").  On February 5, 2019, the Court issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "Amended Confirmation Order").  The Plan became effective on February 12, 2019 (the "Effective Date"), when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing*

*Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case
No. 17 BK 3284-LTS, ECF No. 587].

**C.      The GDB Title VI Proceedings and Qualifying Modification**

13.     GDB is a public corporation and governmental instrumentality of the
Commonwealth, which was created by the Legislative Assembly in 1948 to aid the government of
the Commonwealth (the "Government") in performing its fiscal duties and in more effectively
carrying out its responsibility to develop the economy of the Commonwealth.  On April 28, 2017,
the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which
contemplated an orderly wind-down of the operations of GDB based upon the determination that
there was no clear path for the long-term viability of GDB based on its then-current financial
condition.

14.     On July 12, 2017, the Oversight Board issued a resolution authorizing GDB,
pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA.  On August
10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to
PROMESA section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District
Court for the District of Puerto Rico.

15.     On November 7, 2018, the Court approved the Qualifying Modification pursuant
to PROMESA section 601(m)(1)(D).  *See* ECF No. 270 in *Government Development Bank for
Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018).  The Qualifying Modification provides for,
among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery
Authority in exchange for the cancellation of, among other things, certain participating bonds and
guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the
Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the
guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and

8

its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB. *Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Aug. 10, 2018).

16.     On November 29, 2018, GDB announced the consummation of the Qualifying Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

**C.     Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections**

17.     To date, approximately 179,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

18.     Of the proofs of claim filed, approximately 115,000 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

19.     To efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures

Motion"). The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures"). On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures. *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

20.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

21.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 14 hearings related to over 140 omnibus objections filed by the Commonwealth, COFINA, the Puerto Rico Highways and Transportation Authority ("HTA"), PREPA, and/or ERS. Based upon rulings and orders of the Court to date, approximately 56,000 claims asserting $43.0 trillion in liability against the Commonwealth,

10

COFINA, HTA, PREPA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

22.     This Three Hundred Twenty-Fifth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

23.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

24.     The Three Hundred Twenty-Fifth Omnibus Objection seeks to disallow and partially reclassify, in accordance with the Amended Omnibus Objection Procedures, proofs of claim listed on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed and Partially Reclassified"), each of purports to assert liabilities arising out of "Investments (bonds, funds, etc.)", "individual bondholder claim", or other similar terms asserting liabilities associated with investments in government-issued bonds.  Each of the Claims to Be Partially Disallowed and Partially Reclassified provided as supporting documentation a copy of a brokerage statement, or other supporting documentation containing information regarding bonds purportedly held by the claimant.  However, the amounts of the bonds included in that supporting documentation did not match the amount on the claimant's proof of claim.

25.     On August 13, 2019, the Court entered the *Order Granting in Part and Adjourning in Part Debtors' Motion for Entry of An Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief* [ECF No. 8453] (the "Authorized Mailings Order"), which authorized the

11

Debtors to send mailings "to any claimant who has not provided sufficient information to enable Debtors to process their claim."  Authorized Mailings Order, ¶ 3.

26.     Pursuant to the Authorized Mailings Order, "[i]f the Debtors mail the Proposed Mailing to a claimant, and the claimant either does not respond or responds but fails to provide sufficient information to permit Debtors to reconcile their claim, the Debtors are authorized to object to the claim as deficient." *Id.*

27.     In accordance with the Authorized Mailings Order, the Commonwealth has sent at least one letter, substantially in the form of Exhibit 1 to the Authorized Mailings Order, to each claimant subject to this Three Hundred Twenty-Fifth Omnibus Objection (the "<u>Mailing</u>").  Each Mailing provided, in relevant part:

> Additional information is required in order for the Debtors to continue with assessing your claim. The Debtors are unable to determine from the information you provided the basis for the claim you are attempting to assert against one or more of the Debtors.  In responding to this letter, please ensure that you provide all of the information requested and as much detail as possible about your claim.  The descriptions you put on your proof of claim were too vague for the Debtors to understand the claim you are trying to assert, so please provide more detail and do not simply copy over the same information.
> *See* ECF No. 8453-1 at 2, 7.

28.     The Mailings received by the claimants subject to this Three Hundred Twenty-Fifth Omnibus Objection directed the claimants to respond no later than October 23, 2019 (depending on the date each Mailing was sent).  *See id*.  Furthermore, the Mailings cautioned the Claimants that "[i]f you do not respond to this request and do not provide the requested information and documentation in support of your claim, the Debtors may be forced to object to your claim."

29.     Each of the Claimants identified in **<u>Exhibit A</u>** either failed to respond to the Mailings, or submitted a response that still did not contain information necessary to enable the Commonwealth to reconcile the claim.  Accordingly, the Debtors reviewed the documentation

submitted with the proofs of claim or with the Mailings for assertions of investments related to government-issued bonds.  Based on that review, the Debtors understand the Claims to Be Disallowed and Partially Reclassified assert, in part, (*a*) bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), (*b*) bond claims that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds, (*c*) an ownership interest in bonds issued by the Government Development Bank of Puerto Rico ("GDB"), and/or (*d*) one or more investments in mutual funds, which in turn may have invested in bonds issued by the Commonwealth.  To the extent each of the proofs of claim listed on **Exhibit A** purport to assert additional liabilities associated with government-issued bonds, the claims are deficient because they fail to provide sufficient information for the Commonwealth to reconcile the claim, such as an identification of the amount or CUSIP numbers of the asserted bonds. Further, the remaining portions of each of the proofs of claim listed on **Exhibit A** hereto should be reclassified because such remaining portion identifies the Commonwealth as obligor, when that claim is properly asserted, if at all, against the Puerto Rico Electric Power Authority ("PREPA").

### A.  No Liability for COFINA Bondholder Claims

30.     As identified in **Exhibit A** hereto, some of the Claims to Be Disallowed and Partially Reclassified purport to assert, in part, claims based on an alleged ownership interest in bonds issued by COFINA (collectively the "COFINA Bondholder Claims").

31.     As explained above, the Settlement Order resolved the Commonwealth-COFINA Dispute, and, pursuant to Paragraph 55 of the Settlement Order, all claims against the Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA have been released.  Additionally, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF No. 5045-1], dated October 19, 2018, and attached to the Settlement Order (the "Settlement Agreement"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding

between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has been dismissed with prejudice following the approval of the compromise and settlement of the Commonwealth-COFINA Dispute.  Furthermore, pursuant to Paragraph 29(f) of the Amended Confirmation Order, claims, such as the COFINA Bondholder Claims, that arose from or relate to the relationship of the Commonwealth and COFINA were released.  Amended Confirmation Order, ¶ 29(f).[7]  For all of these reasons, the COFINA Bondholder Claims should be disallowed because these claims based on an apparent alleged ownership interest in COFINA Bonds have been satisfied, released, and/or discharged pursuant to the Settlement Order, Settlement Agreement, Amended Confirmation Order, and Plan.

## B.  No Liability for GDB Bondholder Claims

32.    As identified in **Exhibit A** hereto, some of the Claims to Be Disallowed and Partially Reclassified purport to assert, in part, claims based on the alleged ownership of bonds issued by GDB (collectively the "GDB Bondholder Claims").

33.    Each of the GDB Bondholder Claims appear to purport to be based in part on the ownership of GDB Bonds that were subject to the Qualifying Modification, which provided for the issuance of new securities in exchange for the cancellation of the GDB Bonds and the extinguishment of the Commonwealth's guarantee of certain GDB Bonds, and thus the Commonwealth is no longer liable for these claims.  Accordingly, each of the GDB Bondholder

---

[7] Pursuant to the Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise."  Plan § 1.53.

Claims has been released pursuant to the approval and consummation of the Qualifying
Modification.  As noted above, the Qualifying Modification provides, among other things, that
holders of GDB Bonds shall release GDB and its affiliates from claims relating to the GDB Bonds
and any action or omission of GDB and its affiliates with respect to any indebtedness of or loan to
GDB.   GDB is a public corporation and instrumentality of the Commonwealth.    The
Commonwealth, thus, is an affiliate of GDB within the scope of the release pursuant to the
Qualifying Modification.  Accordingly, the GDB Bondholder Claims were released upon the
consummation of the Qualifying Modification on November 29, 2018.   Because the GDB
Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to
Bankruptcy Code § 502(b)(1), these claims should be disallowed because they seek recovery of
amounts for which the Commonwealth is not liable.

### C.  No Liability for Claims Based on Investments in Mutual Funds

34.    As identified in **Exhibit A** hereto, some of the Claims to Be Disallowed and
Partially Reclassified purport to be based in part on investment(s) in one or more mutual funds
that, in turn, may have invested in bonds issued by the Commonwealth (collectively, the "Mutual
Funds Claims").

35.    A claimant bears the burden of establishing standing to file a proof of claim.  *In re
Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010).  It is well-established that only a creditor
or the creditor's authorized agent has standing to assert a claim.  Fed. R. Bankr. P. 3001(b); 11
U.S.C. §§ 501(a) ("A creditor or an indenture trustee may file a proof of claim."); *In re Melillo*,
392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Only a creditor or indenture trustee may file a proof of
claim.").  Parties with merely derivative interests lack standing to assert a claim against a debtor's
estate.  *Matter of Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (finding party with
"relationship with Debtor [that] is not direct, but rather derivative" was "a stranger to Debtor's

15

bankruptcy proceedings," with "no claim against the estate's assets," and "as a general rule has no standing in Debtor's bankruptcy proceedings"); *see also In re Tower Park Properties, LLC*, 803 F.3d 450, 462-63 (9th Cir. 2015) (holding a trust beneficiary was not a party in interest); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights of a party in interest are asserted, those rights must be asserted by the party in interest, not someone else."); *In re Lopez*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (to establish oneself as a party in interest "the moving party must be asserting its own rights and not those belonging to or derivative of a third party"); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (recognizing the "general principle that 'party in interest standing does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding'" (quoting *In re Refco*, 505 F.3d at 115 n. 10)).

36.    "A creditor, under the [Bankruptcy] Code, is one who has a claim *against the debtor* or the estate," rather than "a creditor of one of the debtor's creditors."  *S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997).  Because, at most, the Mutual Funds Claims were filed based on the claimant's status as an alleged creditor of an alleged creditor of the Commonwealth, the Mutual Funds Claims were not filed by an actual creditor of the Commonwealth. *See In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (holding receiver lacked standing to file a proof of claim because it was not a creditor or an authorized agent of a creditor).  Instead, the Mutual Funds Claims are derivative of claims that must be asserted by the mutual funds directly for any claimed recovery to be considered by the Court.  *See Matter of Goldman*, 82 B.R. at 896 (finding party with "derivative" relationship has "no claim against the estate's asset" and "as a general rule has no standing in Debtor's bankruptcy proceedings").  Moreover, it is unknown whether the mutual fund still retains ownership of the suspect bonds.

37.    Indeed, under nearly identical circumstances, this Court previously disallowed claims filed against COFINA by investors in mutual funds that in turn allegedly invested in COFINA bonds for "lack of an individual interest in COFINA securities." *Tr. of March 13, 2019 Hr'g Before the Hon. Laura Taylor Swain* [ECF No. 5969], at 64:01-10 ("THE COURT: So just so that I understand, his documentation shows that he is a mutual fund investor.  To the extent any of those mutual funds actually holds COFINA bonds, the mutual fund would be the appropriate claimant, and so he has provided no evidence of a valid direct claim as against COFINA?  MS. STAFFORD: Correct, your Honor.  THE COURT: The objection to the claim is sustained and the claim is disallowed for lack of an individual interest in COFINA securities."); *see also Order Granting Sixty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Claims Based on Investments in Mutual Funds* [ECF No. 9099]; *Memorandum Order Denying Motion to Alter or Amend Order Sustaining Objection (Dkt. 8297) to Claims No. 152470 & No. 152283* [ECF No. 9121].  Accordingly, the claimants are not creditors of the Commonwealth and lack standing to assert derivative claims.  Because the Commonwealth cannot be held liable for the Mutual Funds Claims, these claims should be disallowed in their entirety

**D.  No Liability for Duplicate Bond Claims**

38.    As set forth in <u>**Exhibit A**</u> hereto, each the Claims to Be Disallowed and Partially Reclassified purport to assert liability, in part, on the basis of bonds issued by, ERS, PBA, PRASA, and PRPFC (collectively, the "Duplicate Bond Claims").

39.    Each of the Duplicate Bond Claims purport to assert, in part, liability against the Commonwealth associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Commonwealth Title III Case on behalf of the holders of certain bonds issued by ERS, PBA, PRASA, and PRPFC.  Any failure to disallow the Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted

double recovery against the Commonwealth, to the detriment of other stakeholders in the Commonwealth Title III Case.  The holders of the Duplicate Bond Claims will not be prejudiced by the partial disallowance of their claims because the liabilities associated with the Duplicate Bond Claims are subsumed within one or more Master Claims.

**E.  Partially Reclassified Bond Claims**

40.     Finally, the remaining portion of each of the Claims to Be Disallowed and Partially Reclassified identifies the Commonwealth as obligor, when such portion is properly asserted, if at all, against PREPA, and appears to assert liability, in part, on the basis of bonds issued by PREPA (collectively, the "Partially Reclassified Bond Claims").

41.     In each of the Partially Reclassified Bond Claims, the claimant appears to purport to assert, in part, liabilities associated with municipal bond(s), but the proof of claim, supporting documentation provided by the claimant, and/or CUSIP information show that the portions of the liabilities associated with the Partially Reclassified Bond Claims would appropriately be asserted, if at all, against PREPA.   Accordingly, the Partially Reclassified Bond Claims should be reclassified, in part, to be asserted against PREPA, the Title III debtor identified in the column titled "Corrected" in **Exhibit A** hereto. The Commonwealth reserves its right to object to any part of the Partially Reclassified Bond Claims on any other grounds whatsoever.

42.     To the extent each of the Claims to Be Disallowed and Partially Reclassified purport to assert additional liabilities associated with government-issued bonds, they are deficient because they fail to provide sufficient information for the Commonwealth to reconcile the claim, such as an identification of the amount or CUSIP numbers of the asserted bonds.  For the foregoing reasons, the Commonwealth requests that the Claims to Be Disallowed and Partially Reclassified be disallowed in their entirety and partially reclassified to be asserted against PREPA.

43.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Three Hundred Twenty-Fifth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Duplicate, Deficient, No Liability, and Incorrect Debtor Bond Claims*, dated April 30, 2021, attached hereto as **Exhibit B**.

**NOTICE**

44.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Commonwealth, is providing notice of this Three Hundred Twenty-Fifth Omnibus Objection to (a) the individual creditors subject to this Three Hundred Twenty-Fifth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Fourteenth Amended Case Management Procedures* [ECF No. 15894-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  The notice for this Three Hundred Twenty-Fifth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Three Hundred Twenty-Fifth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

**RESERVATION OF RIGHTS**

45.     This Three Hundred Twenty-Fifth Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Commonwealth or the rights of any other party in interest in the Title III Cases to object to the Claims to Be Partially Disallowed and Partially Reclassified or any other claims on any ground whatsoever.  The Commonwealth expressly reserves all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Commonwealth; (b) a waiver of the rights of the Commonwealth or any other party in interest in the Title III Cases to dispute any claim on any

19

grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume

any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or

(e) a waiver of the rights of the Commonwealth or any other party in interest in the Title III Cases

under PROMESA, the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

46.    No prior request for the relief sought in this Three Hundred Twenty-Fifth Omnibus

Objection has been made to this or any other court.


*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting such other and further relief as is just.

Dated: April 30, 2021
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board for
Puerto Rico, as representative of the
Commonwealth of Puerto Rico*

**Fecha de la vista: 16 de junio de 2021, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 2 de junio de 2021, a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

### TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
### PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*: | PROMESA |
| | Título III |
| JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, | |
| | núm. 17 BK 3283-LTS |
| como representante del | |
| | (Administrado Conjuntamente) |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*., | |
| | **La presente radicación guarda relación con el ELA.** |
| Deudores.[1] | |

---

### TRICENTÉSIMA VIGÉSIMA QUINTA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES POR BONOS DUPLICADAS, DEFICIENTES, EN LAS QUE NO EXISTE RESPONSABILIDAD Y RADICADAS CONTRA EL DEUDOR INCORRECTO

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor

Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de

Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el

único representante de Título III del ELA conforme a la sección 315(b) de la *Ley para la*

*Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica esta

tricentésima vigésima quinta objeción global (la "Tricentésima vigésima quinta objeción global")

a las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento, cada una

de las cuales se basa supuestamente en *a)* bonos emitidos por la Corporación del Fondo de Interés

Apremiante de Puerto Rico ("COFINA"), *b)* reclamaciones por bonos que constituyen duplicados

con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en

nombre de determinados bonistas, *c)* una participación patrimonial en bonos emitidos por el Banco

Gubernamental de Fomento para Puerto Rico (el "BGF") y/o *d)* una o más inversiones en fondos

mutuos que a su vez pudieron haber invertido en bonos emitidos por el ELA. En la medida en que

cada una de las Reclamaciones que han de ser rechazadas y parcialmente reclasificadas pretendan

alegar responsabilidades adicionales vinculadas con bonos emitidos por el Gobierno, las

reclamaciones son deficientes porque no proporcionan la información suficiente para que el ELA

pueda reconciliar las reclamaciones, como por ejemplo la identificación del monto o los números

CUSIP de los bonos alegados. Además, las partes restantes de cada una de las evidencias de

reclamaciones que aparecen en el **Anexo A** del presente documento deben reclasificarse, puesto

que dicha parte restante identifica al ELA como deudor, cuando en todo caso lo correcto sería

alegar dicha reclamación contra la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"). En

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

apoyo de la Tricentésima vigésima quinta objeción global, el ELA manifiesta respetuosamente lo
siguiente:

## JURISDICCIÓN

1.       El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene
jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme
a la sección 306(a) de PROMESA.

2.       La sede judicial de este distrito es la competente conforme a la sección 307(a) de
PROMESA.

## ANTECEDENTES

### A.      Órdenes de Fecha Límite

3.       El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de
reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición
voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso
conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 3 de julio de
2017 (la "Fecha de Petición"), la Junta de Supervisión emitió una certificación de reestructuración
conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio
para la AEE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III
del referido cuerpo legal (el "Caso de Título III de la AEE", y junto con el Caso de Título III del
ELA, los "Casos de Título III"). El 6 de octubre de 2017, el Tribunal dictó una orden por la que
concedió la administración conjunta de los Casos de Título III únicamente con fines procesales.
Caso núm. 17 BK 4780, ECF núm. 340.

4.       El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije
fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y
la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Conforme a la

3

*Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.      Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III del ELA**

5.      Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de las reclamaciones por bonos para la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, se han radicado evidencias de reclamaciones principales (conjuntamente, las "Reclamaciones Principales") en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés emitidos por el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE"); la Autoridad de Edificios Públicos de Puerto Rico (la "AEP"); la Autoridad de Acueductos y Alcantarillados de Puerto Rico (la "AAA"); y la Corporación para el Financiamiento Público de Puerto Rico (la "CFP").

6.    **_SRE_**: el SRE es un organismo gubernamental, aparte e independiente del Gobierno
del ELA y de sus demás instrumentalidades. *Véase* 3 L.P.R.A § 775.[3] Supuestamente conforme a
la Resolución sobre bonos para el financiamiento de pensiones, adoptada el 24 de enero de 2008,
y ciertas resoluciones complementarias, el SRE emitió unos bonos prioritarios y subordinados para
el financiamiento de pensiones (los "Bonos del SRE"), por un monto total del principal original
de aproximadamente $2900 millones.[4] BNYM actúa como agente fiscal con respecto a los Bonos
del SRE. Actuando en nombre de los tenedores de los Bonos del SRE, BNYM radicó una evidencia
de reclamación principal en el marco del Caso de Título III del ELA, que fue registrada por Prime
Clerk, LLC, como Evidencia de reclamación núm. 32004.[5]

7.    **_AEP_**: la AEP emitió supuestamente Bonos de Renta para financiar edificios de
oficinas y otras instalaciones arrendadas a varios departamentos, agencias públicas e

[3] El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración
conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio
para el SRE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III
de dicho cuerpo legal.

[4] El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción
global a reclamaciones radicadas por los tenedores de los bonos emitidos por el SRE* [Caso núm.
17-3566, ECF núm. 381], basándose en que la emisión de los bonos supuso un exceso de la
potestad legal del SRE, por lo que era *ultra vires*, anulando de pleno derecho los Bonos del SRE.
El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico
radicó una *Objeción Global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto
Rico, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras,
a las reclamaciones radicadas o alegadas por los tenedores de los Bonos del SRE contra el SRE
y el ELA* [Caso núm. 17-3283, [ECF núm. 6482], basándose, entre otras cosas, en que la emisión
de los bonos fue *ultra vires*. El SRE se reserva el derecho a impugnar la emisión de los bonos sobre
cualquier motivo, incluso sobre el motivo de que los bonos del SRE eran *ultra vires*, y cualquier
otro motivo recogido en las objeciones precedentes.

[5] El 22 de mayo de 2019, el ELA radicó una objeción a la Evidencia de Reclamación principal del
SRE. Véase Objeción de la Junta de Supervisión y Administración Financiera, conforme al artículo
502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a las reclamaciones
radicadas o alegadas contra el ELA por el Bank of New York Mellon, como agente fiscal
(Reclamación núm. 16775) [ECF núm. 7075]. En aras de la claridad, la presente Tricentésima
décima objeción global se radica sin perjuicio de los derechos de las partes en relación con dicha
objeción, incluyendo cualesquiera derechos a intervenir, que quedan reservados.

instrumentalidades del ELA. US Bank y US Bank Trust actúan como agentes fiscales en relación

con determinados bonos de renta emitidos por la AEP, conforme a lo explicado en la nota al pie 3

de la Evidencia de reclamación núm. 62833 (los "Bonos de la AEP"), y, en nombre de los tenedores

de los Bonos de la AEP, radicó una evidencia de reclamación principal en el marco del Caso de

Título III del ELA por todos los montos pendientes de pago adeudados (la "Reclamación Principal

de la AEP"), que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm.

62833. [6] La Reclamación Principal de la AEP alega reclamaciones liquidadas por

aproximadamente $4000 millones en concepto de principal supuestamente impagado, $160

millones en concepto de intereses supuestamente impagados y reembolso de comisiones y gastos

de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por la totalidad de

los montos adeudados "en razón de la totalidad de las reclamaciones que el Agente Fiscal tenga o

pueda tener en relación con las obligaciones de bonos pendientes, conocidos o por conocer, contra

el ELA y aquellos que pretendan actuar en nombre del ELA". . . ." Cláusula Adicional de la

Reclamación Principal de la AEP, ¶¶ 19-21.

8.     *AAA*: la AAA es propietaria y opera los sistemas públicos de suministro de agua y

de aguas residuales en Puerto Rico. La AAA emitió determinados bonos de renta (los "Bonos de

la AAA"), conforme a la Resolución de la Autoridad de Acueductos y Alcantarillados de Puerto

Rico núm. 1583, *por la que se autorizan y garantizan los bonos de la Autoridad de Acueductos y*

*Alcantarillados de Puerto Rico avalados por el Estado Libre Asociado de Puerto Rico*, y algunas

resoluciones complementarias. El Banco Popular de Puerto Rico ("Banco Popular") actúa como

fiduciario en relación con los Bonos de la AAA, y radicó una evidencia de reclamación principal

contra el ELA en nombre de los tenedores de Bonos de la AAA, que fue registrada por Prime Clerk

---

[6] La evidencia de reclamación núm. 62833 enmendó y sustituyó la Evidencia de reclamación núm.
13351, que fue radicada inicialmente por el Agente Fiscal.

como Evidencia de reclamación núm. 22620 (la "Reclamación Principal de la AAA"). La Reclamación Principal de la AAA alega "una reclamación contingente contra el ELA en relación con los Bonos por un importe de al menos $284,755,000, además de todos los intereses y primas generados sobre los Bonos a partir de la Fecha de Petición, así como la totalidad de las tasas, costos y gastos y otros cargos acumulados que hayan devengado o sean cobrables en relación con tales Bonos". Adenda de la Evidencia de Reclamación Principal de la AAA, ¶ 9.

9.    *CFP*: la CFP es una corporación subsidiaria del BGF creada conforme a la Resolución núm. 5044 de la Junta Directiva del BGF, en su versión enmendada (la "Resolución núm. 5044"), adoptada de conformidad con la autoridad concedida en virtud de la Ley núm. 17 de la Asamblea Legislativa de Puerto Rico, aprobada el 23 de septiembre de 1948, en su versión enmendada. Proporciona a los organismos públicos, instrumentalidades, municipios y a otras subdivisiones del ELA, mecanismos alternativos para satisfacer sus necesidades de financiamiento. La CFP tiene la facultad de tomar en préstamo fondos y emitir deuda a través de bonos y otras obligaciones. U.S. Bank Trust actúa como fiduciario en relación con unos bonos, serie 2012A y series 2011A y B, emitidos por la CFP (los "Bonos de la CFP"). Actuando en nombre de los tenedores de los Bonos de la CFP, US Bank Trust radicó una evidencia de reclamación contra el ELA, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 13374.

**B.    Caso de Título III de COFINA y resolución de la controversia entre el ELA y COFINA**

10.    COFINA es una corporación pública e instrumentalidad del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 91 de la Asamblea Legislativa del ELA. Conforme a la Resolución enmendada y modificada sobre los bonos del fondo de interés apremiante, adoptada el 13 de julio de 2007, en su versión enmendada del 19 de junio de 2009, y de conformidad con otras resoluciones complementarias, COFINA emitió una serie de bonos por un monto total de aproximadamente $17,000 millones

para, entre otras cosas, sufragar determinadas obligaciones de deuda del Banco Gubernamental de
Fomento para Puerto Rico y de la Corporación para el Financiamiento Público de Puerto Rico (los
"Bonos de COFINA"). El Bank of New York Mellon actúa como fiduciario con respecto a los
Bonos de COFINA.

11.     La Junta de Supervisión radicó el *Tercer plan enmendado de ajuste de la
Corporació*n *del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III*
(el "Plan") [ECF núm. 4652] el 9 de enero de 2019. El Tribunal examinó la confirmación del Plan
y las objeciones formuladas a este en una vista celebrada los días 16 y 17 de enero de 2019.

12.     El 4 de febrero de 2019, el Tribunal confirmó el Plan que incorporaba el pacto y la
conciliación de la controversia sobre si, luego de examinar todas las contestaciones y
reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos
sobre la venta y uso supuestamente empeñados por COFINA para garantizar la deuda son
propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia entre
el ELA y COFINA"). *Véase la Orden y la Sentencia que confirman el Tercer plan enmendado de
ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al
Título III* [ECF núm. 5048]. Ese mismo día, el Tribunal aprobó el pacto y la conciliación de la
Controversia entre el ELA y COFINA conforme al *Dictamen abreviado y orden que aprueba la
conciliación entre el Estado Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés
Apremiante de Puerto Rico* [ECF núm. 5045] (la "Orden de Conciliación"). El 5 de febrero de
2019, el Tribunal dictó una *Orden y Sentencia enmendadas que confirman el Tercer plan
enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico
elaborado conforme al Título III* [ECF núm. 5055] (la "Orden de Confirmación Enmendada"). El
Plan entró en vigor el 12 de febrero de 2019 (la "Fecha de Entrada en Vigor"), una vez consumadas
las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se*

8

*confirma el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de Entrada en Vigor* [Caso núm. 17 BK 3284-LTS, ECF núm. 587].

**C.    Procedimientos conforme al Título VI del BGF y modificación calificada**

13.    El BGF es una entidad pública e instrumentalidad gubernamental del ELA, creada por la Asamblea Legislativa en 1948 para ayudar al Gobierno del ELA (el "Gobierno") a llevar a cabo sus tareas fiscales y a desempeñar su responsabilidad con mayor eficacia en relación con el desarrollo de la economía del ELA. El 28 de abril de 2017, la Junta de Supervisión aprobó por unanimidad el Plan fiscal del BGF de febrero de 2017, que contemplaba una terminación ordenada de las actividades del BGF sobre la base de la determinación de que el BGF no era viable a largo plazo dadas sus condiciones financieras vigentes en ese momento.

14.    El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se autorizaba al BGF, conforme a la sección 601(e) de PROMESA, a ampararse en el Título VI de PROMESA. El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una modificación calificada, conforme a la sección 601(m)(1)(D) de PROMESA (la "Modificación Calificada"), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

15.    El 7 de noviembre de 2018, el Tribunal aprobó la Modificación Calificada conforme a la sección 601(m)(1)(D) de PROMESA. *Véase* ECF núm. 270 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 7 de nov. de 2018). La Modificación Calificada dispone, entre otras cosas, i) la emisión de nuevos bonos por la recién creada Autoridad de Recuperación de Deuda del BGF (*GDB Debt Recovery Authority*) a cambio de la cancelación (entre otras cosas) de determinados bonos de participación y reclamaciones de bonos garantizados (conjuntamente, "Bonos del BGF"); ii) la extinción de la garantía del ELA de los bonos garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la

liberación de reclamaciones de los tenedores de Bonos del BGF contra el BGF y sus afiliados en relación con (entre otras cosas) cualquier inversión con el BGF o la compra, venta o transferencia de cualquier título valor o participación del BGF, y cualquier acción u omisión con respecto a cualquier endeudamiento o préstamo al BGF (incluidos cualesquiera pagarés emitidos o depósitos mantenidos por el BGF) o del BGF. *Declaración de Solicitación,* en 57-60, ECF núm. 1 a 15 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 10 de ago. de 2018).

16.     El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación Calificada del BGF. Nota de prensa, *el Gobierno de Puerto Rico anuncia la consumación de la Modificación Calificada del BGF*, gobernador de Puerto Rico (29 de nov. de 2018), *disponible en* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

**C.     Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

17.     Hasta la fecha, se han radicado aproximadamente 179,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

18.     De las evidencias de reclamaciones radicadas, aproximadamente 115,000 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables,

estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

19.      Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

20.      En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a*

11

*Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de*
*Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado*
[ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio
de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B)*
*exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas*
*de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los
"Procedimientos Enmendados relativos a Objeciones Globales").

21.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los
Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la
fecha más de 14 vistas vinculadas con más de 140 objeciones globales radicadas por el ELA,
COFINA, la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la AEE y/o el
SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha,
aproximadamente 56,000 reclamaciones que reivindicaban $43.0 billones en responsabilidad
contra el ELA, COFINA, la ACT, la AEE y el SRE fueron rechazadas y serán retiradas del registro
de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez
dictadas las órdenes finales.

22.     Esta Tricentésima vigésima quinta objeción global se radica de conformidad con
los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

### OBJECIONES A EVIDENCIAS DE RECLAMACIONES

23.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA
radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases
recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra
(*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en
los Procedimientos Enmendados relativos a Objeciones Globales.

24.     La Tricentésima vigésima quinta objeción global pretende rechazar y parcialmente
reclasificar, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales,
evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento (conjuntamente,
las "Reclamaciones que han de ser rechazadas y parcialmente reclasificadas"), cada una de las
cuales pretende alegar responsabilidades surgidas de "Inversiones (bonos, fondos, etc.)",
"reclamación de bonistas individuales" u otros términos similares que alegan responsabilidades
vinculadas con inversiones en bonos emitidos por el Gobierno. Cada una de las Reclamaciones
que han de ser rechazadas parcialmente y reclasificadas parcialmente proporcionaban como
documentación justificativa una copia de un extracto de corretaje u otra documentación
justificativa que contenía información sobre bonos supuestamente en posesión del reclamante. Sin
embargo, los montos de los bonos incluidos en dicha documentación justificativa no correspondían
con el monto que figuraba en la evidencia de reclamación del reclamante.

25.     El 13 de agosto de 2019, el Tribunal dictó la *Orden que concedió parcialmente y
levantó parcialmente la Moción de los Deudores para dictar una orden que A) autorice
procedimientos alternativos de resolución de controversias, B) apruebe formas de notificación
adicionales, C) apruebe envíos propuestos y D) conceda el remedio relacionado* [ECF núm. 8453]
(la "Orden de Envío Autorizado") que autorizó que los Deudores realizaran envíos "a cualquier
reclamante que no haya proporcionado suficiente información que permitiera a los Deudores
enjuiciar sus reclamaciones". Orden de Envío Autorizado, ¶ 3.

26.     Conforme a la Orden de Envío Autorizado, "[s]i los Deudores realizan el Envío
Propuesto al reclamante, y este último no responde o responde pero no aporta suficiente
información que permita a los Deudores reconciliar su reclamación, los Deudores tendrán derecho
a oponerse a la reclamación como deficiente". *Id.*

13

27.     De conformidad con la Orden de Envío Autorizado, el ELA ha enviado al menos una carta a cada reclamante objeto de la presente Tricentésima vigésima quinta objeción global esencialmente en el formato que se adjunta a la Orden de Envío Autorizado como Anexo 1 (el "Envío"). Cada Envío, en la parte pertinente, rezaba lo siguiente:

> Se requiere información adicional para que los Deudores sigan examinando su reclamación. Los Deudores no pueden determinar a partir de la información que usted proporcionó cuál es la base de la reclamación que trata de alegar contra uno o más Deudores. Al responder a esta carta, rogamos se asegure de proporcionar toda la información solicitada, así como tantos detalles como sea posible aportar sobre su reclamación. Las descripciones que incorporó en su evidencia de reclamación eran demasiado vagas para que los Deudores comprendieran la reclamación que usted trata de alegar, de manera que rogamos proporcione más detalles y no se limite simplemente a copiar la misma información.
> *Véase* ECF núm. 8453-1 en 2, 7.

28.     Los Envíos recibidos por los reclamantes objeto de la presente Tricentésima vigésima quinta objeción global exigían a los reclamantes responder antes del 23 de octubre de 2019 (dependiendo de la fecha en la que cada Envío fue realizado). *Véase id.* Además, en los Envíos se advertía a los Reclamantes de que "[s]i no responde a esta solicitud y no proporciona la información y la documentación requeridas para justificar su reclamación, es posible que los Deudores se vean en la obligación de oponerse a su reclamación."

29.     Cada uno de los Reclamantes identificado en el **Anexo A** o bien no respondió a los Envíos, o bien envió una respuesta que tampoco contenía la información necesaria que permita al ELA reconciliar la reclamación. En consecuencia, los Deudores analizaron la documentación sometida con la evidencia de reclamación o con los Envíos en relación con la alegación de inversiones relacionadas con bonos emitidos por el Gobierno. Sobre la base de dicho análisis los Deudores entienden que las Reclamaciones que han de ser rechazadas y parcialmente reclasificadas alegan parcialmente *a*) bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico (COFINA), *b*) reclamaciones por bonos que constituyen duplicados

14

con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de determinados bonistas, *c*) una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento para Puerto Rico (el "<u>BGF</u>") y/o *d*) una o más inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por el ELA. En la medida en que cada una de las evidencias de reclamaciones que aparecen en el **<u>Anexo A</u>** pretende alegar responsabilidades adicionales vinculadas con bonos emitidos por el Gobierno, las reclamaciones son deficientes porque no proporcionan información suficiente para que el ELA pueda reconciliar las reclamaciones, como por ejemplo la identificación del monto o los números CUSIP de los bonos alegados. Además, las partes restantes de cada una de las evidencias de reclamaciones que aparecen en el **<u>Anexo A</u>** del presente documento deben reclasificarse, puesto que dicha parte restante identifica al ELA como deudor, cuando en todo caso lo correcto sería alegar dicha reclamación contra la Autoridad de Energía Eléctrica de Puerto Rico (la "<u>AEE</u>").

## A. Ausencia de responsabilidad por reclamaciones de los bonistas de COFINA

30.     Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, algunas Reclamaciones que han de ser rechazadas y parcialmente reclasificadas pretenden alegar reclamaciones basadas, en parte, en una supuesta participación patrimonial en los bonos emitidos por COFINA (conjuntamente, las "<u>Reclamaciones de los Bonistas de COFINA</u>").

31.     Como se explicó anteriormente, la Orden de Conciliación resolvió la Controversia entre el ELA y COFINA y, conforme al párrafo 55 de la Orden de Conciliación, la totalidad de las reclamaciones contra el ELA, surgidas o vinculadas con la relación del ELA y COFINA, han sido liberadas. Además, conforme al párrafo 3(c) del *Acuerdo de Conciliación* [ECF núm. 5045-1], de fecha 19 de octubre de 2018, que se adjunta a la Orden de Conciliación (el "<u>Acuerdo de Conciliación</u>"), y el párrafo 7 de la Orden de Confirmación Enmendada, el procedimiento contencioso entre el ELA y COFINA sobre la Controversia entre el ELA y COFINA ha sido

15

desestimado de forma definitiva luego de la aprobación del pacto y la conciliación de la Controversia entre el ELA y COFINA. Además, conforme al párrafo 29(f) de la Orden de Confirmación Enmendada, reclamaciones (tales como las Reclamaciones de los Bonistas de COFINA) que surgieron de o están vinculadas con la relación entre el ELA y COFINA, fueron liberadas. Orden de Confirmación Enmendada, ¶ 29(f). [7] Por todos esos motivos, las Reclamaciones de los Bonistas de COFINA deben rechazarse porque dichas reclamaciones basadas en una supuesta y aparente participación patrimonial en los Bonos de COFINA han sido satisfechas, liberadas y/o liquidadas conforme a la Orden de Conciliación, el Acuerdo de Conciliación, la Orden de Confirmación Enmendada y el Plan.

**B.  Ausencia de responsabilidad por reclamaciones de los Bonistas del BGF**

32.    Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, algunas Reclamaciones que han de ser rechazadas y parcialmente reclasificadas contienen presuntamente reclamaciones basadas, en parte, en la supuesta participación patrimonial en los bonos emitidos por el BGF (conjuntamente, las "<u>Reclamaciones de los Bonistas del BGF</u>").

33.    Cada una de las Reclamaciones de los Bonistas del BGF parece pretender basarse en parte en la propiedad de los Bonos del BGF objeto de la Modificación Calificada, que dispuso la emisión de nuevos títulos valores a cambio de la cancelación de los Bonos del BGF y la extinción

---

[7] Conforme al Plan, una "Reclamación" se define como "[c]ualquier derecho a un pago o cumplimiento, independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, contingente, vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado, conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por incumplimiento o ejecución de un cumplimiento, independientemente de si tal derecho a un remedio en equidad consta en una sentencia, es fijo, contingente, vencido, no vencido, controvertido, no controvertido, garantizado o no garantizado, y la totalidad de las deudas, procesos, indemnizaciones por daños y perjuicios, derechos, remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas de acción, procedimientos o reclamaciones de cualquier tipo o naturaleza, en derecho, equidad o de cualquier otra forma". Plan § 1.53.

16

de la garantía del ELA relativa a determinados Bonos del BGF, por lo que el ELA ya no tiene responsabilidad con respecto a dichas reclamaciones. En consecuencia, cada una de las Reclamaciones de los Bonistas del BGF ha sido liberada conforme a la aprobación y la consumación de la Modificación Calificada. Como se señaló anteriormente, la Modificación Calificada dispone, entre otras cosas, que los tenedores de los Bonos del BGF liberarán al BGF y sus afiliados de las reclamaciones relacionadas con los Bonos del BGF, y de cualquier acción u omisión del BGF y sus afiliados con respecto a todo endeudamiento del BGF o préstamo al BGF. El BGF es una entidad e instrumentalidad pública del ELA. En consecuencia, el ELA es un afiliado del BGF dentro del alcance de la liberación conforme a la Modificación Calificada. Por los tanto, las Reclamaciones de los Bonistas del BGF fueron liberadas tras la consumación de la Modificación Calificada el 29 de noviembre de 2018. Puesto que las Reclamaciones de los Bonistas del BGF son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no es responsable.

### C. Ausencia de responsabilidad relativa a reclamaciones basadas en inversiones en fondos mutuos

34.     Conforme a lo identificado en el **Anexo A** del presente documento, algunas Reclamaciones que han de ser rechazadas y parcialmente reclasificadas pretenden basarse, en parte, en inversión(es) en uno o varios fondos mutuos que, a su vez, pudieron haber invertido en los bonos emitidos por el ELA (conjuntamente, las "Reclamaciones de los Fondos Mutuos").

35.     Los reclamantes tienen la carga de demostrar su legitimación para radicar una evidencia de reclamación. *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010). Es ampliamente aceptado que solo los acreedores o sus representantes autorizados están legitimados para radicar reclamaciones. Reg. Fed. del Proc. de Quiebr. 3001(b); Título 11 U.S.C., §§ 501(a) ("Los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones"); *In re*

*Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Solo los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones".). Las partes que solo tengan intereses derivados carecen de legitimación para radicar reclamaciones contra el patrimonio de un deudor. *Caso Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (donde se concluyó que una parte con "una relación con el Deudor [que] no es directa, sino más bien derivada era "persona ajena al procedimiento de quiebra del Deudor", sin "ninguna posibilidad de reclamar contra los activos del patrimonio" y "como regla general, carece de legitimación en relación con el procedimiento de quiebra del Deudor".); *véase también In re Tower Park Properties, LLC,* 803 F.3d 450, 462-63 (9th Cir. 2015) (donde se concluyó que un beneficiario de un fideicomiso no era una parte interesada); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("En la medida en que se hagan valer los derechos de una parte interesada, esos derechos han de hacerse valer por dicha parte interesada, no por un tercero".); *In re López*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (para constituirse como parte interesada "la parte solicitante deberá hacer valer sus propios derechos y no aquellos que asistan a un tercero o que se deriven en relación con tal tercero".); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (donde se reconoce el "principio general de que 'no se da legitimación de una parte interesada si la parte pretende hacer valer un derecho que es puramente derivado de los derechos de otra parte en el procedimiento de quiebras'" (que cita *In re Refco*, 505 F.3d en 115 n. 10)).

36.    "Un acreedor, conforme al Código [de Quiebras], es aquel que tiene una reclamación *contra el deudor* o el patrimonio", en lugar de "un acreedor de uno de los acreedores del deudor". *S. Blvd., Inc. c. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Ya que, a lo sumo, las Reclamaciones de los Fondos Mutuos fueron radicadas en virtud de la condición del reclamante como presunto acreedor de un presunto acreedor del ELA, las Reclamaciones de los Fondos Mutuos no fueron radicadas por un acreedor real del ELA. *Véase In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (donde se concluye que el síndico carecía de legitimación

18

para radicar evidencias de reclamaciones porque no era acreedor ni agente autorizado de un acreedor). En cambio, las Reclamaciones de los Fondos Mutuos se derivan de reclamaciones que deben hacerse valer directamente por los fondos mutuos para que el Tribunal examine cualquier recuperación alegada. *Véase el caso Goldman*, 82 B.R. en 896 (donde se concluye que una parte con una relación "derivada" no puede "reclamar contra los activos del patrimonio" y "como regla general, carece de legitimación en el procedimiento de quiebras del Deudor"). Es más, no se sabe si el fondo mutuo sigue ostentando la propiedad de los bonos controvertidos.

37.     En efecto, en unas circunstancias casi idénticas, el Tribunal ya rechazó reclamaciones radicadas contra COFINA por unos inversores en fondos mutuos que, a su vez, supuestamente invirtieron en los bonos de COFINA, por "carecer de interés individual en los títulos valores de COFINA". *Transcripción del 13 de marzo de 2019 de la audiencia ante su señoría, Laura Taylor Swain* [ECF núm. 5969], en 64:01-10 ("EL TRIBUNAL: Entonces, para que yo lo entienda, su documentación muestra que es inversor en un fondo mutuo. En la medida en que cualquiera de esos fondos mutuos posea realmente los bonos de COFINA, el fondo mutuo sería el reclamante pertinente, ¿así que no proporcionó ninguna evidencia de una reclamación directa válida contra COFINA?  SRA. STAFFORD: Así es, señoría. EL TRIBUNAL: Se concede la objeción a la reclamación, y se rechaza la reclamación por falta de interés individual en títulos valores de COFINA."); *véase también la Orden por la que se concede la Sexagésima cuarta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones basadas en las inversiones en fondos mutuos* [ECF núm. 9099]; *Orden de memorando por la que se rechaza la moción para alterar o enmendar la orden que concede la objeción (extr. 8297) a las Reclamaciones núms. 152470 y 152283)* [ECF núm. 9121]. En consecuencia, los reclamantes no son acreedores del ELA y carecen de legitimación para hacer valer reclamaciones derivadas.

Puesto que al ELA no se le puede atribuir la responsabilidad por las Reclamaciones de los Fondos
Mutuos, dichas reclamaciones deben rechazarse en su totalidad.

**D. Ausencia de responsabilidad por reclamaciones duplicadas por bonos**

38.    Según se expone en el **Anexo A** del presente documento, cada una de las
Reclamaciones que han de ser rechazadas y parcialmente reclasificadas pretende alegar
responsabilidad, en parte, sobre la base de bonos emitidos por el SRE, la AEP, la AAA y la CFP
(conjuntamente, las "Reclamaciones Duplicadas por Bonos").

39.    Cada una de las Reclamaciones Duplicadas por Bonos pretende alegar, en parte,
responsabilidad contra el ELA vinculada con uno o más bonos que están duplicados en relación
con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas
en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos
emitidos por el SRE, la AEP, la AAA y la CFP. Si las Reclamaciones Duplicadas por Bonos no
son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una
recuperación duplicada no justificada contra el ELA, en detrimento de otras partes interesadas en
el Caso de Título III del ELA. Los titulares de las Reclamaciones Duplicadas por Bonos no se
verán perjudicados por el hecho de que se rechacen parcialmente sus reclamaciones, puesto que
las responsabilidades relacionadas con las Reclamaciones Duplicadas por Bonos figuran en una o
más Reclamaciones Principales.

**E. Reclamaciones por bonos parcialmente reclasificadas**

40.    Por último, la parte restante de cada una de las Reclamaciones que han de ser
rechazadas y parcialmente reclasificadas identifica al ELA como deudor, cuando en todo caso lo
correcto sería que dicha parte se alegara contra la AEE, y parece alegar responsabilidad, en parte,
sobre la base de bonos emitidos por la AEE (conjuntamente, las "Reclamaciones por Bonos
Parcialmente Reclasificadas").

20

41.     En cada una de las Reclamaciones por Bonos Parcialmente Reclasificadas el reclamante parece pretender alegar, en parte, responsabilidades vinculadas con bono(s) municipal(es), sin embargo la evidencia de reclamación, la documentación justificativa proporcionada por el reclamante y/o la información CUSIP muestran que en todo caso lo correcto sería alegar las responsabilidades vinculadas con las Reclamaciones por Bonos Parcialmente Reclasificadas contra la AEE. En consecuencia, las Reclamaciones por Bonos Parcialmente Reclasificadas deben reclasificarse, en parte, para alegarse contra la AEE, el deudor de Título III identificado en la columna titulada "Corregidas" en el **Anexo A** del presente documento. El ELA se reserva el derecho a objetar a cualquier parte de las Reclamaciones por Bonos Parcialmente Reclasificadas sobre cualquier otro motivo que fuere.

42.     En la medida en que cada una de las Reclamaciones que han de ser rechazadas y parcialmente reclasificadas pretenda alegar responsabilidades adicionales vinculadas con bonos emitidos por el Gobierno, las reclamaciones son deficientes porque no proporcionan la información suficiente para que el ELA pueda reconciliar las reclamaciones, como por ejemplo la identificación del monto o los números CUSIP de los bonos alegados. Por dichos motivos el ELA solicita que las Reclamaciones que han de ser rechazadas y parcialmente reclasificadas sean rechazadas en su totalidad y parcialmente reclasificadas para alegarse contra la AEE.

43.     En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Tricentésima vigésima quinta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones por bonos duplicadas, deficientes, en las que no existe responsabilidad y radicadas contra el deudor incorrecto*, de fecha 30 de abril de 2021, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

44.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el ELA notifica la presente Tricentésima vigésima quinta objeción global a) a los acreedores individuales objeto de esta Tricentésima vigésima quinta objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 14* [ECF núm. 15894-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación de esta Tricentésima vigésima quinta objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Tricentésima vigésima quinta objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

45.     La presente Tricentésima vigésima quinta objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos del ELA, o de los derechos de cualesquiera otras partes interesadas en los Casos de Título III, a objetar a las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente o a cualesquiera otras reclamaciones por los motivos que fuere. El ELA se reserva expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra el ELA; b) constituyan una renuncia a los derechos del ELA, o de cualesquiera otras partes interesadas de los Casos de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para

22

pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten al ELA, o a cualesquiera otras partes interesadas de los Casos de Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## **AUSENCIA DE SOLICITUDES PREVIAS**

46.    No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima vigésima quinta objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

*[El resto de la página se deja en blanco intencionadamente]*

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda cualesquiera otros remedios que se consideren justos.

Fecha: 30 de abril de 2021  
      San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]  
Hermann D. Bauer  
USDC núm. 215205  
Carla García-Benítez  
USDC núm. 203708  
Gabriel A. Miranda  
USDC núm. 306704  
**O'NEILL & BORGES LLC**  
250 Avenida Muñoz Rivera, local 800  
San Juan, PR 00918-1813  
Tel.:  (787) 764-8181  
Fax:  (787) 753-8944

[*Firma en la versión en inglés*]  
Martin J. Bienenstock (*pro hac vice*)  
Brian S. Rosen (*pro hac vice*)  
**PROSKAUER ROSE LLP**  
Eleven Times Square  
New York, NY 10036  
Tel.:  (212) 969-3000  
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico*

24