Hearing Date: **June 16, 2021, at 9:30AM (Atlantic Standard Time)**
Response Deadline: **June 2, 2021, at 4:00PM (Atlantic Standard Time)**

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth, ERS, and HTA.** |

**THREE HUNDRED TWENTY-SIXTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO DUPLICATE, DEFICIENT, AND NO LIABILITY BOND CLAIMS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Highways and Transportation Authority ("HTA," and together with the Commonwealth and ERS, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Debtors pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this three hundred twenty-sixth omnibus objection (the "Three Hundred Twenty-Sixth Omnibus Objection") to the proofs of claim listed on **Exhibit A** hereto, each of which is purportedly based, in part, on (*a*) bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), (*b*) bond claims that are duplicative of one or more master proofs of claim filed against the Debtors on behalf of the holders of certain bonds, (*c*) an ownership interest in bonds issued by the Government Development Bank of Puerto Rico ("GDB"), (*d*) one or more investments in mutual funds, which in turn may have invested in bonds issued by the Debtors, and/or (*e*) an ownership interest in bonds issued by the Puerto Rico Aqueducts and Sewers Authority ("PRASA"), which is not a Title III Debtor, for amounts for which the Debtors have not guaranteed repayment.  Further, certain portions of each of the proofs of claim listed on **Exhibit A** hereto are deficient because they fail to provide sufficient information to enable the

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

Commonwealth to reconcile the proofs of claim.  In support of the Three Hundred Twenty-Sixth Omnibus Objection, the Debtors respectfully represent as follows:

## JURISDICTION

38.     The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

39.     Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

### A.     The Bar Date Orders

40.     On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").   On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA and ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (respectively the "HTA Title III Case" and the "ERS Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases").   On June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.  ECF No. 537.[3]

41.     On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing*

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

*Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases. Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.      Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

42.      Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents. Initial Bar Date Order, ¶ 5(a). As explained below, master proofs of claim (collectively, the "Commonwealth Master Claims") have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by ERS, HTA, Puerto Rico Public Buildings Authority ("PBA"), PRASA, Puerto Rico Convention Center District Authority ("PRCCDA"); Puerto Rico Industrial Development Company ("PRIDCO"); the Puerto Rico Infrastructure Financing Authority ("PRIFA"); and Puerto Rico Public Financing Corporation ("PRPFC").

43.      ***PBA*** — PBA purportedly issued Revenue Bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth. US Bank and US Bank Trust serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and

on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833.[4]  The PBA Master Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingents claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ." Rider to PBA Master Claim, ¶¶ 19-21.

44.  **_ERS_**—ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.[5]  Purportedly pursuant to that certain Pension Funding Bond Resolution, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds"), in the aggregate original principal amount of approximately $2.9 billion.[6]  BNYM

---

[4]  Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was initially filed by the Fiscal Agent.

[5]  On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof.

[6]  On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [Case No. 17-3283, ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*.  ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the holders of ERS Bonds,
BNYM filed a master proof of claim in the Commonwealth Title III Case (the "ERS Master
Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 32004.[7]

45.   **_PRPFC_**—PRPFC is a subsidiary corporation of GDB created pursuant to
Resolution No. 5044 of the Board of Directors of GDB, as amended ("Resolution No. 5044"),
adopted pursuant to the authority granted under Act No. 17 of the Legislature of Puerto Rico,
approved September 23, 1948, as amended.  It provides government agencies, instrumentalities,
municipalities and other subdivisions of the Commonwealth with alternative mechanisms to meet
their financing needs.  PRPFC has the capacity to borrow money and issue debt through the
issuance of bonds and other obligations.  U.S. Bank Trust serves as trustee for certain Series 2012A
and Series 2011A and B bonds issued by the PRPFC (the "PRPFC Bonds").  On behalf of the
holders of the PRPFC Bonds, US Bank Trust filed a proof of claim against the Commonwealth
(the "PRPFC Master Claim"), which was logged by Prime Clerk as Proof of Claim No. 13374.

46.   **_HTA_**—HTA is a public corporation and instrumentality of the Commonwealth
constituting a corporate and political entity independent and separate from the Commonwealth,
created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA
Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways
and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.  The HTA
Enabling Act authorizes HTA to issue bonds. *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto,

---

[7]  On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim.  See
Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section
502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the
Bank of New York Mellon, As Fiscal Agent (Claim No. 16775) [ECF No. 7075].  For the
avoidance of doubt, this Three Hundred Twenty-Sixth Omnibus Objection is without prejudice to
the parties' rights with respect to such objection, including any rights to intervene, which are
reserved.

HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution").  As of May 21, 2017, HTA's petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding.  BNYM serves as fiscal agent with respect to the HTA Bonds.

47.    On behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the Commonwealth Title III Case (the "HTA-CW Master Claims"), each asserting a "secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the Commonwealth arising at law or in equity . . . ."  *See* Addendum to Proof of Claim No. 121053, ¶ 15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No. 115380, ¶ 15.[8]

48.    Certain bonds or notes issued by HTA have been insured by one of several municipal bond insurers, either on the primary market or on the secondary market.  Municipal bond insurance is obtained on the primary market when the municipality issuing the bonds engages an insurance company to underwrite an insurance policy for that series of bonds.  In the event that a bond is not insured on the primary market, holders of such uninsured bonds may elect to obtain insurance via the secondary market.  Holders of uninsured bonds who seek to obtain insurance in the secondary market contract directly with a municipal bond insurer and the original issuer is not part of this contract process.  When a holder of an uninsured bond obtains an insurance policy on

---

[8]  While BNYM initially filed three proofs of claim logged by Prime Clerk as Proofs of Claim Nos. 21286, 26541, and 35277, these were superseded and amended by Proofs of Claim Nos. 121053, 120982, and 115380.

the secondary market, a new CUSIP number is issued which corresponds to the original CUSIP numbers assigned to the bonds at the time of issuance. Certain bonds issued by HTA have been insured on the secondary market and, accordingly, have been issued new CUSIP numbers which correspond to bonds issued by HTA bearing original CUSIP numbers (the "HTA Secondarily Insured HTA Bonds," or the "Secondarily Insured HTA Bonds").

49. ***PRASA***—PRASA owns and operates the island-wide public water and wastewater systems in Puerto Rico. The PRASA Enabling Act authorizes PRASA to issue bonds. 22 L.P.R.A. § 144(g). Pursuant thereto, the PRASA governing board has adopted resolutions authorizing PRASA to issue bonds, including Resolution No. 1583, as amended and restated as of March 7, 2008 ("Resolution No. 1583").

50. PRASA issued certain revenue refunding bonds (the "PRASA Refunding Bonds"), under the Puerto Rico Aqueduct and Sewer Authority Resolution No. 1583, *Authorizing and Securing Puerto Rico Aqueduct and Sewer Authority Bonds Guaranteed by the Commonwealth of Puerto Rico*, and certain supplemental resolutions. Banco Popular de Puerto Rico ("Banco Popular") serves as trustee for the PRASA Refunding Bonds and filed a master proof of claim against the Commonwealth on behalf of the holders of the PRASA Refunding Bonds, which was logged by Prime Clerk as Proof of Claim No. 22620 (the "PRASA Master Claim"). The PRASA Master Claim asserts "a contingent claim against the Commonwealth on account of the Bonds in an amount not less than $284,755,000, together with all interest, and premium accruing on the Bonds from and after the Petition Date, and all fees, costs, expenses and other charges accrued, accruing or chargeable with respect thereto." Addendum to PRASA Master Claim, ¶ 9.

51. In addition, in 2012, PRASA issued $295,245,000 principal amount of Series 2012 B revenue bonds (the "2012 Senior Series B Bonds," or the "PRASA Senior Lien Bonds"). Holders of PRASA Senior Lien Bonds have received and continue to receive all payments owed

to holders of the PRASA Bonds in full as they become due and owing.  Accordingly, EMMA reflects that PRASA has not posted any notices of default with respect to the PRASA Senior Lien Bonds.[9]  In addition, the Commonwealth has not guaranteed repayment of the Senior Lien Bonds. Accordingly, the offering statements for the PRASA Senior Lien Bonds state that they are "not a debt of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, other than [PRASA], and neither the Commonwealth of Puerto Rico or any such municipalities or other political subdivisions, other than [PRASA], shall be liable for the payment of the principal of or interest on said Bonds."[10]

52.      **_PRCCDA_**—The Bank of New York Mellon ("BNYM") serves as trustee for certain Hotel Occupancy Tax Revenue Bonds issued by PRCCDA (the "PRCCDA Bonds"), and on behalf of the holders of PRCCDA Bonds filed a master proof of claim against the Commonwealth, which was logged by Prime Clerk as Proof of Claim No. 37319 (the "PRCCDA Master Proof of Claim"). The PRCCDA Master Claim asserts a "contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the Owners may have against the Commonwealth arising at law or in equity." Addendum to PRCCDA Master Proof of Claim, ¶ 11.

53.      **_PRIDCO_**—PRIDCO was created by Law No. 188 of 1942, codified as 23 L.P.R.A. §§ 271 _et seq._, to promote economic development of Puerto Rico and provide industrial facilities for lease or sale to private manufacturing companies.  US Bank serves as trustee for certain General Purpose Revenue and Refunding Revenue Bonds Series 1997 A and Series 2003 (the "PRIDCO Bonds"), and on behalf of the holders of PRIDCO Bonds filed a master proof of claim against the

---

[9] _See, e.g._, https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

[10] _See, e.g._, Offering Statement for PRASA Revenue Bonds, Series B (Senior Lien), February 15, 2012, available at https://emma.msrb.org/ER584465-ER454076-ER856857.pdf.

Commonwealth, which was logged by Prime Clerk as Proof of Claim No. 13445 (the "PRIDCO
Master Claim,").  The PRIDCO Master Claim asserts contingent, unliquidated claims against the
Commonwealth, and seeks "recovery of any and all other amounts owed on account of any and all
claims the Trustee has or may have relating to the outstanding Bond obligations, whether known
or unknown, against the Commonwealth and all those purporting to act on the Commonwealth's
behalf, whether presently asserted or to be asserted, including without limitation claims for or
based upon the breach or violation of the Bond Documents, lease agreements or other contractual
obligations relating to the underlying collateral, any other covenants or other contractual
obligations contained therein, or claims arising from the improper diversion of PRIDCO's
revenues or any other property securing the payment of the Bonds under the Bond Documents, as
a matter of relevant Commonwealth, state or federal law, including without limitation constructive
trust, fraudulent conveyance or fraudulent transfer, failure to fulfill contractual and fiduciary
obligations and duties, breach of implied covenants of good faith and fair dealing, or other legal
or equitable claims."  Rider to PRIDCO Master Claim, ¶¶ 12-13.

54.     *PRIFA*—PRIFA is an affiliate of the Government Development Bank ("GDB")
and is a government instrumentality of the Commonwealth.  PRIFA was created in 1988 by Act
No. 44-1988 (the "PRIFA Enabling Act").  PRIFA provides financial, administrative and other
types of assistance to the Commonwealth, its public corporations and other instrumentalities
responsible for developing and operating infrastructure facilities.  On behalf of the holders of
various bonds and notes issued by PRIFA (collectively, the "PRIFA Bonds"), master proofs of
claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by
BNYM, US Bank, and UMB Bank, N.A.  US Bank filed a master proof of claim with respect to
certain PRIFA Bonds, which was logged by Prime Clerk as Proof of Claim No. 13386, on behalf
of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C,

and Series 2006B), asserting "claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, amount not less than $249,099,446.17 . . . ."  Rider to Proof of Claim No. 13386, ¶ 26.

## C.     Bond Debt Master Proofs of Claim – HTA Title III Case

18.     On behalf of the holders of the HTA Bonds, BNYM filed three master proofs of claim in the HTA Title III Case (collectively, the "HTA Title III Master Claims," and together with the Commonwealth Master Claims, the "Master Claims"): Proof of Claim No. 37245, asserting on behalf of holders of bonds issued under the 1968 Resolution approximately $847 million in liabilities plus unliquidated amounts; Proof of Claim No. 38574, asserting on behalf of holders of bonds issued under the 1998 Resolution approximately $3.2 billion in liabilities plus unliquidated amounts; and Proof of Claim No. 32622, asserting on behalf of holders of subordinated bonds issued under the 1998 Resolution approximately $279 million in liabilities plus unliquidated amounts.

## B.     The COFINA Title III Case and Resolution of the Commonwealth-COFINA Dispute

19.     COFINA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 91 of the Legislative Assembly of the Commonwealth.  Pursuant to that certain Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 19, 2009, and pursuant to certain supplemental resolutions, COFINA issued a series of bonds in aggregate approximate amount of $17 billion, to, among other things, defray certain debt obligations of the Puerto Rico Government Development Bank and the Puerto Rico

Public Finance Corporation (the "COFINA Bonds").  Bank of New York Mellon serves as Trustee

with respect to the COFINA Bonds.

20.     The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment*

*of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652] on January 9,

2019.  The Court considered confirmation of the Plan and any objections thereto at a hearing on

January 16-17, 2019.

21.     On February 4, 2019, the Court confirmed the Plan, which incorporated the

compromise and settlement of the dispute over whether, after considering all procedural and

substantive defenses and counterclaims, including constitutional issues, the sales and use taxes

purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA

under applicable law (the "Commonwealth-COFINA Dispute").  *See Order and Judgment*

*Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing*

*Corporation* [ECF No. 5048].   On the same day, the Court approved the compromise and

settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and*

*Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax*

*Financing Corporation* [ECF No. 5045] (the "Settlement Order").  On February 5, 2019, the Court

issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of*

*Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "Amended

Confirmation Order").  The Plan became effective on February 12, 2019 (the "Effective Date"),

when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order*

*Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing*

*Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case

No. 17 BK 3284-LTS, ECF No. 587].

12

C.      **The GDB Title VI Proceedings and Qualifying Modification**

22.     GDB is a public corporation and governmental instrumentality of the Commonwealth, which was created by the Legislative Assembly in 1948 to aid the government of the Commonwealth (the "Government") in performing its fiscal duties and in more effectively carrying out its responsibility to develop the economy of the Commonwealth.  On April 28, 2017, the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which contemplated an orderly wind-down of the operations of GDB based upon the determination that there was no clear path for the long-term viability of GDB based on its then-current financial condition.

23.     On July 12, 2017, the Oversight Board issued a resolution authorizing GDB, pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA.  On August 10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to PROMESA section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District Court for the District of Puerto Rico.

24.     On November 7, 2018, the Court approved the Qualifying Modification pursuant to PROMESA section 601(m)(1)(D).  *See* ECF No. 270 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018).  The Qualifying Modification provides for, among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery Authority in exchange for the cancellation of, among other things, certain participating bonds and guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any

indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB.
*Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*,
Case No. 18-1561 (D.P.R. Aug. 10, 2018).

25.     On November 29, 2018, GDB announced the consummation of the Qualifying
Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of
the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at*
http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-
modification.pdf.

**C.     Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections**

26.     To date, approximately 179,000 proofs of claim have been filed against the Debtors
and logged by Prime Clerk, LLC.  Approximately 52,900 proofs of claim have been filed in
relation to, or reclassified to be asserted against, ERS. Additionally, approximately 2,250 proofs
of claim have been filed in relation to, or reclassified to be asserted against, HTA.  Such proofs of
claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to
unliquidated amounts asserted.

27.     Of the proofs of claim filed, approximately 115,000 have been filed in relation to,
or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar
Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw,
such as being subsequently amended, not putting forth a claim for which the Debtors are liable,
being duplicative of other proofs of claim, or failing to provide information necessary for the
Debtors to determine whether the claim is valid.

28.     To efficiently resolve as many of the unnecessary proofs of claim as possible, on
October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A)
Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy*

*Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "<u>Omnibus Procedures</u>

<u>Motion</u>").  The Court granted the relief requested in the Omnibus Procedures Motion by order

dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B)*

*Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF

No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "<u>Initial Omnibus</u>

<u>Objection Procedures</u>").  On November 29, 2018, the Court approved English and Spanish

versions of the forms of notice for omnibus objections to be filed in accordance with the Initial

Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the*

*Form of Notice for Omnibus Objections* [ECF No. 4381] (the "<u>Notice Order</u>").

29.     In the continued interest of resolving any unnecessary proofs of claim in an efficient

manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other

things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the

number of claims that may be included on an objection, and to approve additional forms of notice.

*Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection*

*Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional*

*Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court

granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures,*

*(B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice,*

*and (D) Granting Related Relief* [ECF No. 7440] (the "<u>Amended Omnibus Objection</u>

<u>Procedures</u>").

30.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus

Objection Procedures, to date the Court has held over 14 hearings related to over 140 omnibus

objections filed by the Commonwealth, COFINA, HTA, the Puerto Rico Electric Power Authority

("<u>PREPA</u>"), and/or ERS.  Based upon rulings and orders of the Court to date, approximately

56,000 claims asserting $43.0 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

31.     This Three Hundred Twenty-Sixth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

32.     The Amended Omnibus Objection Procedures allow the Debtors to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

33.     The Three Hundred Twenty-Sixth Omnibus Objection seeks to disallow in their entirety, in accordance with the Amended Omnibus Objection Procedures, proofs of claim listed on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed"), each of which is purportedly based on (*a*) bonds issued by COFINA, (*b*) bond claims that are duplicative of one or more master proofs of claim filed against the Debtors on behalf of the holders of certain bonds, (*c*) an ownership interest in bonds issued by GDB, (*d*) one or more investments in mutual funds, which in turn may have invested in bonds issued by the Debtors, and/or (e) an ownership interest in bonds issued by PRASA, which is not a Title III Debtor, for amounts for which the Debtors have not guaranteed repayment.  Further, certain portions of each of the proofs of claim listed on **Exhibit A** hereto are deficient because they fail to provide sufficient information to enable the Commonwealth to reconcile the proofs of claim.  **Exhibit A** hereto further specifies why each of the Claims to Be Disallowed should be disallowed in their entirety.

34.     In each of the Claims to Be Disallowed, the proof of claim purported to assert liabilities arising out of "Commonwealth of P.R.", "noncompliance with terms of agreements", or

other similar terms asserting liabilities associated with investments in government-issued bonds, but failed to provide information necessary to enable the Debtors to reconcile the claims, such as the CUSIP numbers or amounts of the specific bonds claimants intended to assert.  In some instances, the Claims to Be Disallowed provided as supporting documentation a copy of a brokerage statement, or other supporting documentation containing information regarding bonds purportedly held by the claimant, but failed to provide information necessary to enable the Commonwealth to reconcile the claims, such as the CUSIP numbers or amounts of the specific bonds claimants intended to assert.  However, the amounts of the bonds included in that supporting documentation did not match the amount on the claimant's proof of claim.  In other instances, the Claims to Be Disallowed did not contain any supporting documentation.

35.     On August 13, 2019, the Court entered the *Order Granting in Part and Adjourning in Part Debtors' Motion for Entry of An Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief* [ECF No. 8453] (the "Authorized Mailings Order"), which authorized the Debtors to send mailings "to any claimant who has not provided sufficient information to enable Debtors to process their claim."  Authorized Mailings Order, ¶ 3.

36.     Pursuant to the Authorized Mailings Order, "[i]f the Debtors mail the Proposed Mailing to a claimant, and the claimant either does not respond or responds but fails to provide sufficient information to permit Debtors to reconcile their claim, the Debtors are authorized to object to the claim as deficient."  *Id.*

37.     In accordance with the Authorized Mailings Order, the Debtors have sent at least one letter, substantially in the form of Exhibit 1 to the Authorized Mailings Order, to each claimant subject to this Three Hundred Twenty-Sixth Omnibus Objection (the "Mailing").  Each Mailing provided, in relevant part:

> Additional information is required in order for the Debtors to continue with assessing your claim. The Debtors are unable to determine from the information you provided the basis for the claim you are attempting to assert against one or more of the Debtors. In responding to this letter, please ensure that you provide all of the information requested and as much detail as possible about your claim. The descriptions you put on your proof of claim were too vague for the Debtors to understand the claim you are trying to assert, so please provide more detail and do not simply copy over the same information.
>
> *See* ECF No. 8453-1 at 2, 7.

38.     The Mailings received by the claimants subject to this Three Hundred Twenty-Sixth Omnibus Objection directed the claimants to respond no later than October 23, 2019 (depending on the date each Mailing was sent). *See id.* Furthermore, the Mailings cautioned the Claimants that "[i]f you do not respond to this request and do not provide the requested information and documentation in support of your claim, the Debtors may be forced to object to your claim."

39.     Each of the Claimants identified in **Exhibit A** either failed to respond to the Mailings, or submitted a response that still did not contain information necessary to enable the Debtors to reconcile the claim. Accordingly, the Debtors reviewed the documentation submitted with the proofs of claim or with the Mailings for assertions of investments related to government-issued bonds. Based on that review, the Debtors understand the Claims to Be Disallowed assert liabilities based on (*a*) bonds issued by COFINA, (*b*) bond claims that are duplicative of one or more master proofs of claim filed against the Debtors on behalf of the holders of certain bonds, (*c*) an ownership interest in bonds issued by GDB, (*d*) one or more investments in mutual funds, which in turn may have invested in bonds issued by the Debtors, and/or (*e*) an ownership interest in bonds issued by PRASA, which is not a Title III Debtor, for amounts for which the Debtors have not guaranteed repayment. Further, certain portions of each of the proofs of claim listed on **Exhibit A** hereto are deficient because they fail to provide sufficient information to enable the Commonwealth to reconcile the proofs of claim.

### A.  No Liability for COFINA Bondholder Claims

40.    As identified in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert, in part, claims based on an alleged ownership interest in bonds issued by COFINA (collectively the "COFINA Bondholder Claims").

41.    As explained above, the Settlement Order resolved the Commonwealth-COFINA Dispute, and, pursuant to Paragraph 55 of the Settlement Order, all claims against the Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA have been released.  Additionally, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF No. 5045-1], dated October 19, 2018, and attached to the Settlement Order (the "Settlement Agreement"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has been dismissed with prejudice following the approval of the compromise and settlement of the Commonwealth-COFINA Dispute.  Furthermore, pursuant to Paragraph 29(f) of the Amended Confirmation Order, claims, such as the COFINA Bondholder Claims, that arose from or relate to the relationship of the Commonwealth and COFINA were released.  Amended Confirmation Order, ¶ 29(f).[11]  For all of these reasons, the COFINA Bondholder Claims should be disallowed because these claims based on an apparent alleged ownership interest in COFINA Bonds have

---

[11] Pursuant to the Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise."  Plan § 1.53.

been satisfied, released, and/or discharged pursuant to the Settlement Order, Settlement Agreement, Amended Confirmation Order, and Plan.

**B. No Liability for GDB Bondholder Claims**

42.     As identified in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert, in part, claims based on the alleged ownership of bonds issued by GDB (collectively the "GDB Bondholder Claims").

43.     Each of the GDB Bondholder Claims appear to purport to be based in part on the ownership of GDB Bonds that were subject to the Qualifying Modification, which provided for the issuance of new securities in exchange for the cancellation of the GDB Bonds and the extinguishment of the Commonwealth's guarantee of certain GDB Bonds, and thus the Commonwealth is no longer liable for these claims.  Accordingly, each of the GDB Bondholder Claims has been released pursuant to the approval and consummation of the Qualifying Modification.  As noted above, the Qualifying Modification provides, among other things, that holders of GDB Bonds shall release GDB and its affiliates from claims relating to the GDB Bonds and any action or omission of GDB and its affiliates with respect to any indebtedness of or loan to GDB.   GDB is a public corporation and instrumentality of the Commonwealth.   The Commonwealth, thus, is an affiliate of GDB within the scope of the release pursuant to the Qualifying Modification.  Accordingly, the GDB Bondholder Claims were released upon the consummation of the Qualifying Modification on November 29, 2018.  Because the GDB Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be disallowed because they seek recovery of amounts for which the Commonwealth is not liable.

## C.  No Liability for Claims Based on Investments in Mutual Funds

44.     As identified in **Exhibit A** hereto, certain Claims to Be Disallowed purport to be based in part on investment(s) in one or more mutual funds that, in turn, may have invested in bonds issued by the Debtors (collectively, the "Mutual Funds Claims").

45.     A claimant bears the burden of establishing standing to file a proof of claim.  *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010).  It is well-established that only a creditor or the creditor's authorized agent has standing to assert a claim.  Fed. R. Bankr. P. 3001(b); 11 U.S.C. §§ 501(a) ("A creditor or an indenture trustee may file a proof of claim."); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Only a creditor or indenture trustee may file a proof of claim.").  Parties with merely derivative interests lack standing to assert a claim against a debtor's estate.  *Matter of Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (finding party with "relationship with Debtor [that] is not direct, but rather derivative" was "a stranger to Debtor's bankruptcy proceedings," with "no claim against the estate's assets," and "as a general rule has no standing in Debtor's bankruptcy proceedings"); *see also In re Tower Park Properties, LLC*, 803 F.3d 450, 462-63 (9th Cir. 2015) (holding a trust beneficiary was not a party in interest); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights of a party in interest are asserted, those rights must be asserted by the party in interest, not someone else."); *In re Lopez*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (to establish oneself as a party in interest "the moving party must be asserting its own rights and not those belonging to or derivative of a third party"); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (recognizing the "general principle that 'party in interest standing does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding'" (quoting *In re Refco*, 505 F.3d at 115 n. 10)).

21

46.    "A creditor, under the [Bankruptcy] Code, is one who has a claim *against the debtor* or the estate*," rather than "a creditor of one of the debtor's creditors." *S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997).  Because, at most, the Mutual Funds Claims were filed based on the claimant's status as an alleged creditor of an alleged creditor of the Commonwealth, the Mutual Funds Claims were not filed by an actual creditor of the Commonwealth.  *See In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (holding receiver lacked standing to file a proof of claim because it was not a creditor or an authorized agent of a creditor).  Instead, the Mutual Funds Claims are derivative of claims that must be asserted by the mutual funds directly for any claimed recovery to be considered by the Court.  *See Matter of Goldman*, 82 B.R. at 896 (finding party with "derivative" relationship has "no claim against the estate's asset" and "as a general rule has no standing in Debtor's bankruptcy proceedings").  Moreover, it is unknown whether the mutual fund still retains ownership of the suspect bonds.

47.    Indeed, under nearly identical circumstances, this Court previously disallowed claims filed against COFINA by investors in mutual funds that in turn allegedly invested in COFINA bonds for "lack of an individual interest in COFINA securities." *Tr. of March 13, 2019 Hr'g Before the Hon. Laura Taylor Swain* [ECF No. 5969], at 64:01-10 ("THE COURT: So just so that I understand, his documentation shows that he is a mutual fund investor.  To the extent any of those mutual funds actually holds COFINA bonds, the mutual fund would be the appropriate claimant, and so he has provided no evidence of a valid direct claim as against COFINA?  MS. STAFFORD: Correct, your Honor.  THE COURT: The objection to the claim is sustained and the claim is disallowed for lack of an individual interest in COFINA securities."); *see also Order Granting Sixty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Claims Based on Investments in Mutual Funds* [ECF No. 9099]; *Memorandum Order Denying Motion to Alter or Amend Order Sustaining Objection (Dkt. 8297) to Claims No. 152470 & No.*

*152283* [ECF No. 9121].  Accordingly, the claimants are not creditors of the Commonwealth and lack standing to assert derivative claims.  Because the Commonwealth cannot be held liable for the Mutual Funds Claims, these claims should be disallowed in their entirety.

### D.  No Liability for Duplicate Bond Claims

48.     As set forth in **Exhibit A** hereto, each the Claims to Be Disallowed appear to purport to assert liability, in part, on the basis of bonds issued by ERS, HTA, PBA, PRASA, PRCCDA, PRIDCO, PRIFA, and PRPFC (collectively, the "Duplicate Bond Claims").

49.     Each of the Duplicate Bond Claims appear to purport to assert, in part, liability against the Debtors associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Title III Cases on behalf of the holders of certain bonds issued by ERS, HTA, PBA, PRASA, PRCCDA, PRIDCO, PRIFA, and PRPFC. Any failure to disallow the Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Debtors, to the detriment of other stakeholders in the Debtors' Title III Case.  The holders of the Duplicate Bond Claims will not be prejudiced by the partial disallowance of their claims because the liabilities associated with the Duplicate Bond Claims are subsumed within one or more Master Claims.

### E.  No Liability for PRASA Senior Lien Bonds

50.     As identified in **Exhibit A** hereto, some of the Claims to Be Disallowed appear to purport to assert claims based, in part, on the alleged ownership of bonds issued by PRASA (collectively, the "PRASA Senior Lien Bondholder Claims").

51.     Each of the PRASA Senior Lien Bondholder Claims asserts liabilities associated with PRASA Senior Lien Bonds issued by PRASA, which is not a Title III Debtor, and is a separate, legally distinct entity from the Debtors.  In addition, the Debtors have not guaranteed repayment for the Senior Lien Bonds.  The PRASA Senior Lien Bondholder Claims do not assert

a basis for asserting a claim against the Debtors for bonds issued by PRASA that are not guaranteed

by the Debtors.  Because of this failure to comply with the applicable rules, neither the Debtors

nor the Court are able to determine the validity of the PRASA Senior Lien Claim.

**F.  No Liability for Duplicate Secondarily Insured Bond Claims**

52.     Further, certain Claims to Be Disallowed purport to assert, in part, liabilities against

the Debtors associated with one or more HTA Secondarily Insured Bonds (the "HTA Secondarily

Insured Bond Claims").

53.     The CUSIP numbers associated with such HTA Secondarily Insured Bond Claims

correspond to bonds issued by HTA bearing original CUSIP numbers. Those original CUSIP

numbers, which reflect bond issuances in which the claimants hold ownership interests, are listed

in one or more Master Claims.  Therefore, the HTA Secondarily Insured Bonds Claims assert

liabilities associated with bonds issued by HTA that are duplicative of liabilities asserted by one

or more Master Claims.  Any failure to disallow the HTA Secondarily Insured Bond Claims will

result in the applicable claimants potentially receiving an unwarranted double recovery against the

Debtors, to the detriment of other stakeholders in the Title III Cases.  The holders of the HTA

Secondarily Insured Bond Claims will not be prejudiced by the partial disallowance of their claims

because the liabilities associated with the HTA Secondarily Insured Bond Claims are subsumed

within one or more Master Claims.

54.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman*

*in Support of the Three Hundred Twenty-Sixth Omnibus Objection (Substantive) of the*

*Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the*

*Commonwealth of Puerto Rico, and the Puerto Rico Highways and Transportation Authority to*

*Duplicate, Deficient, and No Liability Bond Claims*, dated April 30, 2021, attached hereto as

**Exhibit B**.

24

55.     In accordance with the Amended Omnibus Objection Procedures and the Court's
Notice Order, the Debtors are providing notice of this Three Hundred Twenty-Sixth Omnibus
Objection to (a) the individual creditors subject to this Three Hundred Twenty-Sixth Omnibus
Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Fourteenth
Amended Case Management Procedures* [ECF No. 15894-1]), which is available on the Debtors'
case website at https://cases.primeclerk.com/puertorico.   The notice for this Three Hundred
Twenty-Sixth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the
Three Hundred Twenty-Sixth Omnibus Objection and all of the exhibits attached hereto are being
filed with this objection and will be served on the parties.  The Debtors submit that, in light of the
nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

56.     This Three Hundred Twenty-Sixth Omnibus Objection is limited to the grounds
stated herein.  Accordingly, it is without prejudice to the rights of the Debtors or the rights of any
other party in interest in the Title III Cases to object to the Claims to Be Disallowed or any other
claims on any ground whatsoever.   The Debtors expressly reserve all further substantive or
procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is
intended or should be construed as: (a) an admission as to the validity of any claim against the
Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases
to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request
or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of
the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in
the Title III Cases under PROMESA, the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

57.     No prior request for the relief sought in this Three Hundred Twenty-Sixth Omnibus

Objection has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form

of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and

(2) granting such other and further relief as is just.

Dated: April 30, 2021
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board for
Puerto Rico, as representative of the
Commonwealth of Puerto Rico, the
Employees Retirement System for the
Government of the Commonwealth of
Puerto Rico, and the Puerto Rico
Highways and Transportation Authority*

Fecha de la vista: 16 de junio de 2021, a las 9:30 a.m. (AST)
Fecha límite para responder: 2 de junio de 2021, a las 4:00 p.m. (AST)

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

*In re*:

JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,

    como representante del

ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,

                Deudores.[1]

PROMESA
Título III

núm. 17 BK 3283-LTS

(Administrado Conjuntamente)

**La presente radicación guarda relación con el ELA, el SRE y la ACT.**

---

**TRICENTÉSIMA VIGÉSIMA SEXTA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, DEL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO A RECLAMACIONES POR BONOS DUPLICADAS, DEFICIENTES Y EN LAS QUE NO EXISTE RESPONSABILIDAD**

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA"), el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE"), y la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT", y junto con el ELA y el SRE, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III de los Deudores conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican esta tricentésima vigésima sexta objeción global (la "Tricentésima vigésima sexta objeción global") a las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento, cada una de las cuales pretende basarse parcialmente en *a*) bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), *b*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas, *c*) una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento para Puerto Rico (el "BGF"), *d*) una o más inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por los Deudores, y/o *e*) una participación patrimonial en bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico (la "AAA"), que no es un Deudor de Título III, por unos montos por los que los Deudores no han garantizado el reembolso. Además, algunas partes de cada una de las evidencias de reclamaciones contenidas en el **Anexo A** del presente documento son deficientes, puesto que no brindan información suficiente

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

para que el ELA pueda reconciliar las evidencias de reclamaciones. En apoyo de la Tricentésima

vigésima sexta objeción global, los Deudores manifiestan respetuosamente lo siguiente:

## JURISDICCIÓN

38.     El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene

jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme

a la sección 306(a) de PROMESA.

39.     La sede judicial de este distrito es la competente conforme a la sección 307(a) de

PROMESA.

## ANTECEDENTES

### A.     Órdenes de Fecha Límite

40.     El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de

reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición

voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso

conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de

2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones

104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para la ACT y el SRE

conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III del referido

cuerpo legal (respectivamente, el "Caso de Título III de la ACT" y el "Caso de Título III del SRE",

y conjuntamente con el Caso de Título III del ELA, los "Casos de Título III"). El 29 de junio de

2017, el Tribunal dictó una orden por la que concedió la administración conjunta de los Casos de

Título III únicamente con fines procesales. ECF núm. 537.[3]

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán
referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

41.     El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "<u>Moción de Fecha Límite</u>"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "<u>Orden Inicial de Fecha Límite</u>"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "<u>Órdenes de Fecha Límite</u>"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.     Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III del ELA**

42.     Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de las reclamaciones por bonos para la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, se han radicado evidencias de reclamaciones principales (conjuntamente, las "<u>Reclamaciones Principales del ELA</u>") en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés emitidos por el SRE, la ACT, la Autoridad de Edificios Públicos de Puerto Rico

(la "AEP"), la AAA, la Autoridad del Distrito del Centro de Convenciones de Puerto Rico (la

"ADCC"); la Compañía de Fomento Industrial de Puerto Rico (la "PRIDCO"); la Autoridad para

el Financiamiento de la Infraestructura de Puerto Rico (la "AFI"); y la Corporación para el

Financiamiento Público de Puerto Rico (la "CFP").

43.    *AEP*: la AEP emitió supuestamente Bonos de Renta para financiar edificios de

oficinas y otras instalaciones arrendadas a varios departamentos, agencias públicas e

instrumentalidades del ELA. US Bank y US Bank Trust actúan como agentes fiscales en relación

con determinados bonos de renta emitidos por la AEP, conforme a lo explicado en la nota al pie 3

de la Evidencia de reclamación núm. 62833 (los "Bonos de la AEP"), y, en nombre de los tenedores

de los Bonos de la AEP, radicó una evidencia de reclamación principal en el marco del Caso de

Título III del ELA por todos los montos pendientes de pago adeudados (la "Reclamación Principal

de la AEP"), que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm.

62833. [4] La Reclamación Principal de la AEP alega reclamaciones liquidadas por

aproximadamente $4000 millones en concepto de principal supuestamente impagado, $160

millones en concepto de intereses supuestamente impagados y reembolso de comisiones y gastos

de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por la totalidad de

los montos adeudados " en razón de la totalidad de las reclamaciones que el Agente Fiscal tenga o

pueda tener en relación con las obligaciones de bonos pendientes, conocidos o por conocer, contra

el ELA y aquellos que pretendan actuar en nombre del ELA". . . ."  Cláusula Adicional de la

Reclamación Principal de la AEP, ¶¶ 19-21.

---

[4]  La evidencia de reclamación núm. 62833 enmendó y sustituyó la Evidencia de reclamación
núm. 13351, que fue radicada inicialmente por el Agente Fiscal.

44.    _**SRE**_: el SRE es un organismo gubernamental, aparte e independiente del Gobierno del ELA y de sus demás instrumentalidades. _Véase_ 3 L.P.R.A § 775.[5] Supuestamente conforme a la Resolución sobre bonos para el financiamiento de pensiones, adoptada el 24 de enero de 2008, y ciertas resoluciones complementarias, el SRE emitió unos bonos prioritarios y subordinados para el financiamiento de pensiones (los "Bonos del SRE "), por un monto total del principal original de aproximadamente $2900 millones.[6] BNYM actúa como agente fiscal con respecto a los Bonos del SRE. Actuando en nombre de los tenedores de los Bonos del SRE, BNYM radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA (la "Reclamación Principal del SRE", que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 32004.[7]

---

[5]  El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el SRE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal.

[6]  El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una _Objeción global a reclamaciones radicadas por los tenedores de los bonos emitidos por el SRE_ [Caso núm. 17-3566, ECF núm. 381], basándose en que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era _ultra vires_, anulando de pleno derecho los Bonos del SRE. El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico radicó una _Objeción Global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a las reclamaciones radicadas o alegadas por los tenedores de los Bonos del SRE contra el SRE y el ELA_ [Caso núm. 17-3283, ECF núm. 6482], basándose, entre otras cosas, en que la emisión de los bonos fue _ultra vires_. El SRE se reserva el derecho a impugnar la emisión de los bonos sobre cualquier motivo, incluso sobre el motivo de que los bonos del SRE eran _ultra vires_, y cualquier otro motivo recogido en las objeciones precedentes.

[7]  El 22 de mayo de 2019, el ELA radicó una objeción a la Evidencia de Reclamación principal del SRE. Véase Objeción de la Junta de Supervisión y Administración Financiera, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a las reclamaciones radicadas o alegadas contra el ELA por el Bank of New York Mellon, como agente fiscal (Reclamación núm. 16775) [ECF núm. 7075]. En aras de la claridad, la presente Tricentésima vigésima sexta objeción global se radica sin perjuicio de los derechos de las partes en relación con dicha objeción, incluyendo cualesquiera derechos a intervenir, que quedan reservados.

45.   _CFP_: la CFP es una corporación subsidiaria del BGF creada conforme a la Resolución núm. 5044 de la Junta Directiva del BGF, en su versión enmendada (la "Resolución núm. 5044"), adoptada de conformidad con la autoridad concedida en virtud de la Ley núm. 17 de la Asamblea Legislativa de Puerto Rico, aprobada el 23 de septiembre de 1948, en su versión enmendada. Proporciona a los organismos públicos, instrumentalidades, municipios y a otras subdivisiones del ELA, mecanismos alternativos para satisfacer sus necesidades de financiamiento. La CFP tiene la facultad de tomar en préstamo fondos y emitir deuda a través de bonos y otras obligaciones.  U.S. Bank Trust actúa como fiduciario en relación con unos bonos, serie 2012A y series 2011A y B, emitidos por la CFP (los "Bonos de la CFP"). Actuando en nombre de los tenedores de los Bonos de la CFP, US Bank Trust radicó una evidencia de reclamaciones contra el ELA (la "Reclamación Principal de la CFP"), que fue registrada por Prime Clerk como Evidencia de reclamación núm. 13374.

46.   **ACT**: la ACT es una corporación pública e instrumentalidad del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 74-1965 de la Asamblea Legislativa del ELA (la "Ley para crear la ACT"). La ACT se encarga de la construcción, operación y mantenimiento de carreteras y otros sistemas de transportación en el ELA. _Véase_ 9 L.P.R.A. § 2002. La Ley para crear la ACT autoriza a la ACT a emitir bonos. _Véase_ 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT"): (_i_) la Resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución de 1968"), y _ii_) la Resolución núm. 98-06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998"). Desde el 21 de mayo de 2017, la fecha de petición de la ACT, aproximadamente $830 millones del monto principal de los bonos emitidos conforme a la Resolución de 1968 quedan pendientes de pago, y aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la

Resolución de 1998 quedan igualmente pendientes de pago. BNYM actúa como agente fiscal con respecto a los Bonos de la ACT.

47.    Actuando en nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias de reclamaciones principales en el marco del Caso de Título III del ELA (las "Reclamaciones Principales ACT-ELA"), cada una de las cuales alegaba "una reclamación garantizada, contingente y no liquidada contra el ELA en razón de la totalidad de las reclamaciones, causas de acción, derechos y/o remedios que el Agente Fiscal o los Propietarios puedan tener contra el ELA, conforme a derecho o equidad. . . ." *Véase* Adenda de la Evidencia de reclamación núm. 121053, ¶ 15; Adenda de la Evidencia de reclamación núm. 120982, ¶ 15; Adenda de la Evidencia de reclamación núm. 115380, ¶ 15.[8]

48.    Determinados bonos o pagarés emitidos por la ACT han sido asegurados por una o más aseguradoras de bonos municipales en el mercado primario o en el secundario. El seguro de bonos municipales se obtiene en el mercado primario cuando el municipio emisor de los bonos contrata una compañía de seguros para suscribir una póliza de seguro en relación con dicha serie de bonos. En el caso de que un bono no se asegure en el mercado primario, los tenedores de tales bonos no asegurados podrían optar por obtener un seguro a través del mercado secundario. Los tenedores de los bonos no asegurados que busquen obtener un seguro en el mercado secundario entran en una relación contractual directamente con una aseguradora de bonos municipales, por lo que el emisor original no es parte en dicho proceso de contratación. Cuando un tenedor de un bono no asegurado obtiene una póliza de seguro en el mercado secundario, se emite un nuevo número CUSIP que corresponde a los números CUSIP originales asignados a los bonos en el momento de

---

[8]  Aunque BNYM radicó inicialmente tres evidencias de reclamaciones registradas por Prime Clerk como Evidencias de reclamaciones núms. 21286, 26541 y 35277, estas fueron sustituidas y enmendadas por las Evidencias de reclamaciones núms. 121053, 120982 y 115380.

su emisión. Determinados bonos emitidos por la ACT han sido asegurados en el mercado secundario y, en consecuencia, se han emitido nuevos números CUSIP que corresponden a los bonos emitidos por la ACT que llevan números CUSIP originales (los "Bonos ACT asegurados en el mercado secundario").

49.    *AAA*: la AAA es propietaria y opera los sistemas públicos de suministro de agua y de aguas residuales en Puerto Rico. La Ley para crear la AAA autoriza a la AAA a emitir bonos. 22 L.P.R.A. § 144(g). Conforme a dicha Ley, la junta directiva de la AAA adoptó resoluciones que autorizan a la AAA a emitir bonos, lo que incluye la Resolución núm. 1583, en su versión enmendada y modificada el 7 de marzo de 2008 (la "Resolución núm. 1583").

50.    La AAA emitió determinados bonos de renta de refinanciamiento (los "Bonos de Refinanciamiento de la AAA"), conforme a la Resolución de la Autoridad de Acueductos y Alcantarillados de Puerto Rico núm. 1583, *por la que se autorizan y garantizan los bonos de la Autoridad de Acueductos y Alcantarillados de Puerto Rico avalados por el Estado Libre Asociado de Puerto Rico*, y algunas resoluciones complementarias. El Banco Popular de Puerto Rico ("Banco Popular") actúa como fiduciario en relación con los Bonos de Refinanciamiento de la AAA, y radicó una evidencia de reclamación principal contra el ELA en nombre de los tenedores de Bonos de Refinanciamiento de la AAA, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 22620 (la "Reclamación Principal de la AAA"). La Reclamación Principal de la AAA alega "una reclamación contingente contra el ELA en relación con los Bonos por un importe de al menos $284,755,000, además de todos los intereses y primas generados sobre los Bonos a partir de la Fecha de Petición, así como la totalidad de las tasas, costos y gastos u otros cargos acumulados que hayan devengado o sean cobrables en relación con tales Bonos". Adenda de la Evidencia de Reclamación Principal de la AAA, ¶ 9.

51.     Además, en 2012 la AAA emitió unos bonos de renta, Serie B de 2012, por un

monto principal de $295,245,000 (los "Bonos Prioritarios Serie B de 2012" o los "Bonos de

Gravamen Prioritarios de la AAA"). Los tenedores de los Bonos de Gravamen Prioritarios de la

AAA han recibido, y siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales

tenedores de los Bonos de la AAA, a medida que estos vencen y se vuelven pagaderos. En

consecuencia, en el EMMA se indica que la AAA no ha enviado ninguna notificación de

incumplimiento en relación con los Bonos de Gravamen Prioritarios de la AAA.[9] Además, el ELA

no ha garantizado el reembolso de los Bonos de Gravamen Prioritarios. En consecuencia, las

declaraciones de oferta relativas a los Bonos de Gravamen Prioritarios de la AAA indican que "no

constituyen deuda del Estado Libre Asociado de Puerto Rico ni de ninguno de sus municipios u

otras subdivisiones políticas, con la excepción de [la AAA], por lo que ni el Estado Libre Asociado

de Puerto Rico ni ningunos de dichos municipios u otras subdivisiones políticas, con la excepción

de [la AAA], será responsable por el pago del principal o de los intereses sobre los referidos

Bonos".[10]

52.     *ADCC*: el Bank of New York Mellon ("BNYM") actúa como fiduciario en relación

con determinados Bonos de rentas de impuestos por ocupación hotelera, emitidos por la ADCC

(los "Bonos de la ADCC"), y en nombre de los tenedores de los Bonos de la ADCC, radicó una

evidencia de reclamación principal contra el ELA, que fue registrada por Prime Clerk como

Evidencia de reclamación núm. 37319 (la "Evidencia de Reclamación Principal de la ADCC"). La

Reclamación Principal de la ADCC alega una "reclamación contingente y no liquidada contra el

---

[9] *Véase, por ejemplo,*
https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

[10] *Véase, por ejemplo,* Declaración de Oferta relativa a los Bonos de Renta de la AAA, Serie B
(Gravamen Prioritario), 15 de febrero de 2012, disponible en https://emma.msrb.org/ER584465-
ER454076-ER856857.pdf.

ELA en razón de la totalidad de las reclamaciones, causas de acción, derechos y/o remedios que el Fiduciario o los Propietarios puedan tener contra el ELA conforme a derecho o equidad". Adenda de la Evidencia de Reclamación Principal de la ADCC, ¶ 11.

53.     ***PRIDCO***: PRIDCO fue creada por la Ley núm. 188 de 1942, codificada como 23 L.P.R.A. §§ 271 *et seq*., para fomentar el desarrollo económico de Puerto Rico y proporcionar instalaciones industriales en arrendamiento o venta a empresas manufactureras privadas. US Bank actúa como fideicomisario en relación con determinados Bonos relativos a rentas de fines generales y rentas de refinanciamiento, series 1997 A y 2003 (los "Bonos de PRIDCO"), y en nombre de los tenedores de los Bonos de PRIDCO radicó una evidencia de reclamación principal contra el ELA, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 13445 (la "Reclamación Principal de PRIDCO"). La Reclamación Principal de PRIDCO alega reclamaciones contingentes y no liquidadas contra el ELA y procura la "recuperación de la totalidad de los montos adeudados en razón de todas las reclamaciones que el Fideicomisario tenga o pueda tener en relación con las obligaciones pendientes por Bonos, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA, alegadas en la actualidad o por alegar, lo que incluye, entre otras cosas, reclamaciones por o basadas en el incumplimiento o la violación de los Documentos de los bonos, acuerdos de arrendamiento u otras obligaciones contractuales relativas a la garantía subyacente, cualesquiera otros pactos u otras obligaciones contractuales contenidas en el mismo, o reclamaciones surgidas por el desvío indebido de las rentas de PRIDCO o de cualesquiera otros bienes que garanticen el pago de los Bonos en virtud de los Documentos de los bonos, conforme a la normativa legal pertinente del ELA, estatal o federal, lo que incluye, entre otras cosas, fideicomiso ficto, transmisión fraudulenta o transferencia fraudulenta, incumplimiento de deberes y obligaciones contractuales y fiduciarias, vulneración de

pactos implícitos justos y de buena fe, u otras reclamaciones en derecho o equidad".  Cláusula de la Reclamación Principal de PRIDCO, ¶¶ 12-13.

54.    *AFI*: la AFI es una filial del Banco Gubernamental de Fomento (el "BGF") y constituye una instrumentalidad del Gobierno del ELA. La AFI fue creada en 1988 mediante la Ley núm. 44-1988 (la "Ley para crear la AFI"). La AFI brinda asistencia financiera, administrativa y de otro tipo al ELA, a sus corporaciones públicas y a otras instrumentalidades encargadas del desarrollo y del funcionamiento de las infraestructuras. Actuando en nombre de los tenedores de varios bonos y pagarés emitidos por la AFI (conjuntamente, los "Bonos de la AFI"), BNYM, US Bank y UMB Bank, N.A., radicaron evidencias de reclamaciones principales contra el ELA (conjuntamente, las "Reclamaciones Principales de la AFI"). US Bank radicó una evidencia de reclamación principal en relación con determinados Bonos de la AFI, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 13386, en nombre de los tenedores de los Bonos de la AFI relativos a impuestos sobre el ron (Bonos de rentas de impuestos especiales, series 2005A, 2005B, 2005C y serie 2006B), alegando "reclamaciones por montos contingentes y no liquidados en relación con los intereses pagaderos a futuro, intereses devengados y a devengar en el futuro en lo referente al principal e intereses vencidos, tarifas y costos y reclamaciones por indemnización del Fiduciario que se incurran en el futuro en virtud de los Documentos de los bonos, así como por la totalidad de los montos adeudados en razón de todas las reclamaciones que tenga o pueda tener el Fiduciario en relación con las obligaciones de bonos pendientes, monto mínimo de $249,099,446.17. . . ."  Cláusula adicional de la Evidencia de reclamación núm. 13386, ¶ 26.

**C.    Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III de la ACT**

18.    Actuando en nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias de reclamaciones principales en el marco del Caso de Título III de la ACT

(conjuntamente, las "Reclamaciones Principales de Título III de la ACT", y junto con las Reclamaciones Principales del ELA, las "Reclamaciones Principales"): la evidencia de reclamación núm. 37245, por la que se reclama, en nombre de los tenedores de los bonos emitidos conforme a la Resolución de 1968, aproximadamente $847 millones en concepto de responsabilidad más montos no liquidados; la evidencia de reclamación núm. 38574, por la que se reclama, en nombre de los tenedores de los bonos emitidos conforme a la Resolución de 1998, aproximadamente $3200 millones en concepto de responsabilidad más montos no liquidados; y la evidencia de reclamación núm. 32622, por la que se reclama, en nombre de los tenedores de los bonos subordinados emitidos conforme a la Resolución de 1998, aproximadamente $279 millones en concepto de responsabilidad más montos no liquidados.

**B.      Caso de Título III de COFINA y resolución de la controversia entre el ELA y COFINA**

19.      COFINA es una corporación pública e instrumentalidad del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 91 de la Asamblea Legislativa del ELA. Conforme a la Resolución enmendada y modificada sobre los bonos del fondo de interés apremiante, adoptada el 13 de julio de 2007, en su versión enmendada del 19 de junio de 2009, y de conformidad con otras resoluciones complementarias, COFINA emitió una serie de bonos por un monto total de aproximadamente $17,000 millones para, entre otras cosas, sufragar determinadas obligaciones de deuda del Banco Gubernamental de Fomento para Puerto Rico y de la Corporación para el Financiamiento Público de Puerto Rico (los "Bonos de COFINA"). El Bank of New York Mellon actúa como fiduciario con respecto a los Bonos de COFINA.

20.      La Junta de Supervisión radicó el *Tercer plan enmendado de ajuste de la Corporació*n *del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III*

13

(el "Plan") [ECF núm. 4652] el 9 de enero de 2019. El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista celebrada los días 16 y 17 de enero de 2019.

21.     El 4 de febrero de 2019, el Tribunal confirmó el Plan que incorporaba el pacto y la conciliación de la controversia sobre si, luego de examinar todas las contestaciones y reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos sobre la venta y uso supuestamente empeñados por COFINA para garantizar la deuda son propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia entre el ELA y COFINA"). *Véase la Orden y la Sentencia que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5048]. Ese mismo día, el Tribunal aprobó el pacto y la conciliación de la Controversia entre el ELA y COFINA conforme al *Dictamen abreviado y orden que aprueba la conciliación entre el Estado Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés Apremiante de Puerto Rico* [ECF núm. 5045] (la "Orden de Conciliación"). El 5 de febrero de 2019, el Tribunal dictó una *Orden y Sentencia enmendadas que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5055] (la "Orden de Confirmación Enmendada"). El Plan entró en vigor el 12 de febrero de 2019 (la "Fecha de Entrada en Vigor"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de Entrada en Vigor* [Caso núm. 17 BK 3284-LTS, ECF núm. 587].

**C.     Procedimientos conforme al Título VI del BGF y modificación calificada**

22.     El BGF es una entidad pública e instrumentalidad gubernamental del ELA, creada por la Asamblea Legislativa en 1948 para ayudar al Gobierno del ELA (el "Gobierno") a llevar a

cabo sus tareas fiscales y a desempeñar su responsabilidad con mayor eficacia en relación con el
desarrollo de la economía del ELA. El 28 de abril de 2017, la Junta de Supervisión aprobó por
unanimidad el Plan fiscal del BGF de febrero de 2017, que contemplaba una terminación ordenada
de las actividades del BGF sobre la base de la determinación de que el BGF no era viable a largo
plazo dadas sus condiciones financieras vigentes en ese momento.

23.     El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se
autorizaba al BGF, conforme a la sección 601(e) de PROMESA, a ampararse en el Título VI de
PROMESA. El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una
modificación calificada, conforme a la sección 601(m)(1)(D) de PROMESA (la "Modificación
Calificada"), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

24.     El 7 de noviembre de 2018, el Tribunal aprobó la Modificación Calificada
conforme a la sección 601(m)(1)(D) de PROMESA. *Véase* ECF núm. 270 en *Banco
Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 7 de nov. de 2018). La
Modificación Calificada dispone, entre otras cosas, i) la emisión de nuevos bonos por la recién
creada Autoridad de Recuperación de Deuda del BGF (*GDB Debt Recovery Authority*) a cambio
de la cancelación (entre otras cosas) de determinados bonos de participación y reclamaciones de
bonos garantizados (conjuntamente, "Bonos del BGF"); ii) la extinción de la garantía del ELA de
los bonos garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la
liberación de reclamaciones de los tenedores de Bonos del BGF contra el BGF y sus afiliados en
relación con (entre otras cosas) cualquier inversión con el BGF o la compra, venta o transferencia
de cualquier título valor o participación del BGF, y cualquier acción u omisión con respecto a
cualquier endeudamiento o préstamo al BGF (incluidos cualesquiera pagarés emitidos o depósitos
mantenidos por el BGF) o del BGF. *Declaración de Solicitación,* en 57-60, ECF núm. 1 a 15 en

*Banco Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 10 de ago. de 2018).

25.      El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación Calificada del BGF. Nota de prensa, *el Gobierno de Puerto Rico anuncia la consumación de la Modificación Calificada del BGF*, gobernador de Puerto Rico (29 de nov. de 2018), *disponible en* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

**C.      Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

26.      Hasta la fecha, se han radicado aproximadamente 179,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Aproximadamente 52,900 evidencias de reclamaciones han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. Además, aproximadamente 2,250 evidencias de reclamaciones han sido radicadas en relación con la ACT, o reclasificadas como radicadas contra la ACT. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

27.      De las evidencias de reclamaciones radicadas, aproximadamente 115,000 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

28.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

29.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado*

[ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

30.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la fecha más de 14 vistas vinculadas con más de 140 objeciones globales radicadas por el ELA, COFINA, la ACT, la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban $43.0 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

31.     Esta Tricentésima vigésima sexta objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

**OBJECIONES A EVIDENCIAS DE RECLAMACIONES**

32.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los Deudores radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

33.     La Tricentésima vigésima sexta objeción global pretende que se rechacen en su totalidad, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento

18

(conjuntamente, las "<u>Reclamaciones que han de ser rechazadas</u>"), cada una de las cuales pretende

basarse en *a*) bonos emitidos por COFINA, *b*) reclamaciones por bonos que constituyen duplicados

con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores

en nombre de determinados bonistas, *c*) una participación patrimonial en bonos emitidos por el

BGF, *d*) una o más inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos

emitidos por los Deudores, y/o *e*) una participación patrimonial en bonos emitidos por la AAA,

que no es un Deudor de Título III, por unos montos por los que los Deudores no han garantizado

el reembolso. Además, algunas partes de cada una de las evidencias de reclamaciones contenidas

en el **Anexo A** del presente documento son deficientes, puesto que no brindan información

suficiente para que el ELA pueda reconciliar las evidencias de reclamaciones. El **Anexo A**

especifica además por qué cada una de las Reclamaciones que han de ser rechazadas debe ser

rechazada en su totalidad.

34.     En cada una de las Reclamaciones que han de ser rechazadas, la evidencia de

reclamación pretende alegar responsabilidades surgidas del "Estado Libre Asociado de P. R.",

incumplimiento de los términos de los acuerdos" u otros términos similares que alegan

responsabilidades vinculadas con inversiones en bonos emitidos por el Gobierno, pero no brindan

la información necesaria para que los Deudores puedan reconciliar las reclamaciones; como por

ejemplo, los números CUSIP o montos correspondientes a los bonos concretos que los reclamantes

pretenden alegar. En algunos casos, las Reclamaciones que han de ser rechazadas proporcionaban

como documentación justificativa una copia de un extracto de corretaje u otra documentación

justificativa que contenía información sobre bonos supuestamente en posesión del reclamante,

pero no proporcionaban la información necesaria para que el ELA pueda reconciliar las

reclamaciones; como por ejemplo, los números CUSIP o montos de los bonos concretos que los

reclamantes pretenden alegar. Sin embargo, los montos de los bonos incluidos en dicha

documentación justificativa no correspondían con el monto que figuraba en la evidencia de reclamación del reclamante. En otros casos, las Reclamaciones que han de ser rechazadas no contenían ninguna documentación justificativa.

35.    El 13 de agosto de 2019, el Tribunal dictó la *Orden que concedió parcialmente y levantó parcialmente la Moción de los Deudores para dictar una orden que A) autorice procedimientos alternativos de resolución de controversias, B) apruebe formas de notificación adicionales, C) apruebe envíos propuestos y D) conceda el remedio relacionado* [ECF núm. 8453] (la "Orden de Envío Autorizado") que autorizó que los Deudores realizaran envíos "a cualquier reclamante que no haya proporcionado suficiente información que permitiera a los Deudores procesar sus reclamaciones". Orden de Envío Autorizado, ¶ 3.

36.    Conforme a la Orden de Envío Autorizado, "[s]i los Deudores realizan el Envío Propuesto al reclamante, y este último no responde o responde pero no aporta suficiente información que permita a los Deudores reconciliar su reclamación, los Deudores tendrán derecho a oponerse a la reclamación como deficiente". *Id.*

37.    De conformidad con la Orden de Envío Autorizado, los Deudores han enviado al menos una carta a cada reclamante objeto de la presente Tricentésima vigésima sexta objeción global esencialmente en el formato que se adjunta a la Orden de Envío Autorizado como Anexo 1 (el "Envío"). Cada Envío, en la parte pertinente, rezaba lo siguiente:

> Se requiere información adicional para que los Deudores sigan examinando su reclamación. Los Deudores no pueden determinar a partir de la información que usted proporcionó cuál es la base de la reclamación que trata de alegar contra uno o más Deudores. Al responder a esta carta, rogamos se asegure de proporcionar toda la información solicitada, así como tantos detalles como sea posible aportar sobre su reclamación. Las descripciones que incorporó en su evidencia de reclamación eran demasiado vagas para que los Deudores comprendieran la reclamación que usted trata de alegar, de manera que rogamos proporcione más detalles y no se limite simplemente a copiar la misma información.
> *Véase* ECF núm. 8453-1 en 2, 7.

38.     Los Envíos recibidos por los reclamantes objeto de la presente Tricentésima vigésima sexta objeción global exigían a los reclamantes responder antes del 23 de octubre de 2019 (dependiendo de la fecha en la que cada Envío fue realizado). *Véase id.* Además, en los Envíos se advertía a los Reclamantes de que "[s]i no responde a esta solicitud y no proporciona la información y la documentación requeridas para justificar su reclamación, es posible que los Deudores se vean en la obligación de oponerse a su reclamación."

39.     Cada uno de los Reclamantes identificado en el **<u>Anexo A</u>** o bien no respondió a los Envíos, o bien envió una respuesta que tampoco contenía la información necesaria que permita a los Deudores reconciliar la reclamación. En consecuencia, los Deudores analizaron la documentación sometida con la evidencia de reclamación o con los Envíos en relación con la alegación de inversiones relacionadas con bonos emitidos por el Gobierno. Sobre la base de dicho análisis, los Deudores entienden que las Reclamaciones que han de ser rechazadas alegan responsabilidades basadas en *a*) bonos emitidos por COFINA, *b*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas, *c*) una participación patrimonial en bonos emitidos por el BGF, d) una o más inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por los Deudores, y/o *e*) una participación patrimonial en bonos emitidos por la AAA, que no es un Deudor de Título III, por unos montos por los que los Deudores no han garantizado el reembolso. Además, algunas partes de cada una de las evidencias de reclamaciones contenidas en el **<u>Anexo A</u>** del presente documento son deficientes, puesto que no brindan información suficiente para que el ELA pueda reconciliar las evidencias de reclamaciones.

**A.  Ausencia de responsabilidad por reclamaciones de los bonistas de COFINA**

40.    Conforme a lo identificado en el **Anexo A** del presente documento, algunas Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas, en parte, en una supuesta participación patrimonial en los bonos emitidos por COFINA (conjuntamente, las "Reclamaciones de los Bonistas de COFINA").

41.    Como se explicó anteriormente, la Orden de Conciliación resolvió la Controversia entre el ELA y COFINA y, conforme al párrafo 55 de la Orden de Conciliación, la totalidad de las reclamaciones contra el ELA, surgidas o vinculadas con la relación del ELA y COFINA, han sido liberadas. Además, conforme al párrafo 3(c) del *Acuerdo de Conciliación* [ECF núm. 5045-1], de fecha 19 de octubre de 2018, que se adjunta a la Orden de Conciliación (el "Acuerdo de Conciliación"), y el párrafo 7 de la Orden de Confirmación Enmendada, el procedimiento contencioso entre el ELA y COFINA sobre la Controversia entre el ELA y COFINA ha sido desestimado de forma definitiva luego de la aprobación del pacto y la conciliación de la Controversia entre el ELA y COFINA. Además, conforme al párrafo 29(f) de la Orden de Confirmación Enmendada, reclamaciones (tales como las Reclamaciones de los Bonistas de COFINA) que surgieron de o están vinculadas con la relación entre el ELA y COFINA, fueron liberadas. Orden de Confirmación Enmendada, ¶ 29(f). [11] Por todos esos motivos, las Reclamaciones de los Bonistas de COFINA deben rechazarse porque dichas reclamaciones

---

[11] Conforme al Plan, una "Reclamación" se define como "[c]ualquier derecho a un pago o cumplimiento, independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, contingente, vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado, conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por incumplimiento o ejecución de un cumplimiento, independientemente de si tal derecho a un remedio en equidad consta en una sentencia, es fijo, contingente, vencido, no vencido, controvertido, no controvertido, garantizado o no garantizado, y la totalidad de las deudas, procesos, indemnizaciones por daños y perjuicios, derechos, remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas de acción, procedimientos o reclamaciones de cualquier tipo o naturaleza, en derecho, equidad o de cualquier otra forma". Plan § 1.53.

basadas en una supuesta y aparente participación patrimonial en los Bonos de COFINA han sido satisfechas, liberadas y/o liquidadas conforme a la Orden de Conciliación, el Acuerdo de Conciliación, la Orden de Confirmación Enmendada y el Plan.

**B. Ausencia de responsabilidad por reclamaciones de los Bonistas del BGF**

42.     Conforme a lo identificado en el **Anexo A** del presente documento, algunas Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas, en parte, en la supuesta participación patrimonial en bonos emitidos por el BGF (conjuntamente, las "Reclamaciones de los Bonistas del BGF").

43.     Cada una de las Reclamaciones de los Bonistas del BGF parece pretender basarse en parte en la propiedad de los Bonos del BGF objeto de la Modificación Calificada, que dispuso la emisión de nuevos títulos valores a cambio de la cancelación de los Bonos del BGF y la extinción de la garantía del ELA relativa a determinados Bonos del BGF, por lo que el ELA ya no tiene responsabilidad con respecto a dichas reclamaciones. En consecuencia, cada una de las Reclamaciones de los Bonistas del BGF ha sido liberada conforme a la aprobación y la consumación de la Modificación Calificada. Como se señaló anteriormente, la Modificación Calificada dispone, entre otras cosas, que los tenedores de los Bonos del BGF liberarán al BGF y sus afiliados de las reclamaciones relacionadas con los Bonos del BGF, y de cualquier acción u omisión del BGF y sus afiliados con respecto a todo endeudamiento del BGF o préstamo al BGF. El BGF es una entidad e instrumentalidad pública del ELA. En consecuencia, el ELA es un afiliado del BGF dentro del alcance de la liberación conforme a la Modificación Calificada. Por lo tanto, las Reclamaciones de los Bonistas del BGF fueron liberadas tras la consumación de la Modificación Calificada el 29 de noviembre de 2018. Puesto que las Reclamaciones de los Bonistas del BGF son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código

de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no es responsable.

### C. Ausencia de responsabilidad relativa a reclamaciones basadas en inversiones en fondos mutuos

44.     Conforme a lo identificado en el **Anexo A** del presente, algunas Reclamaciones que han de ser rechazadas pretenden basarse, en parte, en inversión(es) en uno o más fondos mutuos que, a su vez, pudieron haber invertido en bonos emitidos por los Deudores (conjuntamente, las "Reclamaciones de los Fondos Mutuos").

45.     Los reclamantes tienen la carga de demostrar su legitimación para radicar una evidencia de reclamación. *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010). Es ampliamente aceptado que solo los acreedores o sus representantes autorizados están legitimados para radicar reclamaciones. Reg. Fed. del Proc. de Quiebr. 3001(b); Título 11 U.S.C., §§ 501(a) ("Los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones"); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Solo los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones".). Las partes que solo tengan intereses derivados carecen de legitimación para radicar reclamaciones contra el patrimonio de un deudor. *Caso Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (donde se concluyó que una parte con "una relación con el Deudor [que] no es directa, sino más bien derivada" era "persona ajena al procedimiento de quiebra del Deudor", sin "ninguna posibilidad de reclamar contra los activos del patrimonio" y "como regla general, carece de legitimación en relación con el procedimiento de quiebra del Deudor".); *véase también In re Tower Park Properties, LLC,* 803 F.3d 450, 462-63 (9th Cir. 2015) (donde se concluyó que un beneficiario de un fideicomiso no era una parte interesada); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("En la medida en que se hagan valer los derechos de una parte interesada, esos derechos han de hacerse valer por dicha parte interesada, no por un tercero".); *In*

*re López*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (para constituirse como parte interesada "la parte solicitante deberá hacer valer sus propios derechos y no aquellos que asistan a un tercero o que se deriven en relación con tal tercero".); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (donde se reconoce el "principio general de que 'no se da legitimación de una parte interesada si la parte pretende hacer valer un derecho que es puramente derivado de los derechos de otra parte en el procedimiento de quiebras'" (que cita *In re Refco*, 505 F.3d en 115 n. 10)).

46.     "Un acreedor, conforme al Código [de Quiebras], es aquel que tiene una reclamación *contra el deudor* o el patrimonio", en lugar de "un acreedor de uno de los acreedores del deudor". *S. Blvd., Inc. c. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Ya que, a lo sumo, las Reclamaciones de los Fondos Mutuos fueron radicadas en virtud de la condición del reclamante como presunto acreedor de un presunto acreedor del ELA, las Reclamaciones de los Fondos Mutuos no fueron radicadas por un acreedor real del ELA. *Véase In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (donde se concluye que el síndico carecía de legitimación para radicar evidencias de reclamaciones porque no era acreedor ni agente autorizado de un acreedor). En cambio, las Reclamaciones de los Fondos Mutuos se derivan de reclamaciones que deben hacerse valer directamente por los fondos mutuos para que el Tribunal examine cualquier recuperación alegada. *Véase el caso Goldman*, 82 B.R. en 896 (donde se concluye que una parte con una relación "derivada" no puede "reclamar contra los activos del patrimonio" y "como regla general, carece de legitimación en el procedimiento de quiebras del Deudor"). Es más, no se sabe si el fondo mutuo sigue ostentando la propiedad de los bonos controvertidos.

47.     En efecto, en unas circunstancias casi idénticas, el Tribunal ya rechazó reclamaciones radicadas contra COFINA por unos inversores en fondos mutuos que, a su vez, supuestamente invirtieron en los bonos de COFINA, por "carecer de interés individual en los títulos valores de COFINA". *Transcripción del 13 de marzo de 2019 de la audiencia ante su*

*señoría, Laura Taylor Swain* [ECF núm. 5969], en 64:01-10 ("EL TRIBUNAL: Entonces, para que yo lo entienda, su documentación muestra que es inversor en un fondo mutuo. En la medida en que cualquiera de esos fondos mutuos posea realmente los bonos de COFINA, el fondo mutuo sería el reclamante pertinente, ¿así que no proporcionó ninguna evidencia de una reclamación directa válida contra COFINA? SRA. STAFFORD: Así es, señoría. EL TRIBUNAL: Se concede la objeción a la reclamación, y se rechaza la reclamación por falta de interés individual en títulos valores de COFINA."); *véase también la Orden por la que se concede la Sexagésima cuarta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones basadas en las inversiones en fondos mutuos* [ECF núm. 9099]; *Orden de memorando por la que se rechaza la moción para alterar o enmendar la orden que concede la objeción (extr. 8297) a las Reclamaciones núms. 152470 y 152283)* [ECF núm. 9121]. En consecuencia, los reclamantes no son acreedores del ELA y carecen de legitimación para hacer valer reclamaciones derivadas. Puesto que al ELA no se le puede atribuir la responsabilidad por las Reclamaciones de los Fondos Mutuos, dichas reclamaciones deben rechazarse en su totalidad.

**D.  Ausencia de responsabilidad por reclamaciones duplicadas por bonos**

48.     Según se expone en el **Anexo A** del presente documento, cada una de las Reclamaciones que han de ser rechazadas parecen pretender alegar responsabilidad, en parte, sobre la base de bonos emitidos por el SRE, la ACT, la AEP, la AAA, la ADCC, PRIDCO, la AFI y la CFP (conjuntamente, las "Reclamaciones Duplicadas por Bonos").

49.     Cada una de las Reclamaciones Duplicadas por Bonos parece pretender alegar, en parte, responsabilidad contra los Deudores vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos emitidos por el SRE, la ACT, la AEP, la AAA, la ADCC, PRIDCO, la AFI y la CFP. Si las

26

Reclamaciones Duplicadas por Bonos no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación duplicada no justificada contra los Deudores en detrimento de otras partes interesadas en el Caso de Título III de los Deudores. Los titulares de las Reclamaciones Duplicadas por Bonos no se verán perjudicados por el hecho de que se rechacen parcialmente sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones Duplicadas por Bonos figuran en una o más Reclamaciones Principales.

**E. Ausencia de responsabilidad por los Bonos de Gravamen Prioritarios de la AAA**

50.     Conforme a lo identificado en el **Anexo A** del presente documento, algunas Reclamaciones que han de ser rechazadas parecen pretender alegar reclamaciones basadas, en parte, en la supuesta posesión de bonos emitidos por la AAA (conjuntamente, las "Reclamaciones de Bonistas de Gravamen Prioritario de la AAA").

51.     Cada una de las Reclamaciones de Bonistas de Gravamen Prioritario d de la AAA alega responsabilidades vinculadas con los Bonos de Gravamen Prioritarios de la AAA emitidos por la AAA, que no es un Deudor de Título III, y es una entidad aparte y jurídicamente independiente de los Deudores. Además, los Deudores no han garantizado el reembolso de los Bonos de Gravamen Prioritarios. Las Reclamaciones de Bonistas de Gravamen Prioritario de la AAA no proporcionan fundamento alguno para alegar una reclamación contra los Deudores por los bonos emitidos por la AAA que no están garantizados por los Deudores. Como consecuencia de dicho incumplimiento de la normativa aplicable, ni los Deudores ni el Tribunal pueden determinar la validez de la Reclamación de Gravamen Prioritario de la AAA.

**F. Ausencia de responsabilidad por reclamaciones duplicadas por bonos asegurados en el mercado secundario**

52.     Además, algunas de las Reclamaciones que han de ser rechazadas pretenden alegar, en parte, responsabilidades contra los Deudores vinculadas con uno o más Bonos ACT asegurados

27

en el mercado secundario (los "Reclamaciones por Bonos ACT asegurados en el mercado secundario").

53.     Los números CUSIP vinculados con dichos Reclamaciones por Bonos ACT asegurados en el mercado secundario corresponden a bonos emitidos por la ACT que llevan los números CUSIP originales. Dichos números CUSIP originales, que reflejan las emisiones de los bonos en los que los reclamantes tienen participación patrimonial, aparecen en una o más Reclamaciones Principales. En consecuencia, los Reclamaciones por Bonos ACT asegurados en el mercado secundario alegan responsabilidades vinculadas con bonos emitidos por la ACT que constituyen duplicados en relación con las responsabilidades alegadas en una o más Reclamaciones Principales. Si las Reclamaciones por Bonos ACT asegurados en el mercado secundario no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación duplicada no justificada contra los Deudores en detrimento de otras partes interesadas en los Casos de Título III. Los titulares de las Reclamaciones por Bonos ACT asegurados en el mercado secundario no se verán perjudicados por el hecho de que se rechacen parcialmente sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones por Bonos ACT asegurados en el mercado secundario figuran en una o más Reclamaciones Principales.

54.     En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Tricentésima vigésima sexta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico a Reclamaciones por bonos duplicadas, deficientes y en las que no existe responsabilidad*, de fecha 30 de abril de 2021, adjunta al presente documento como **Anexo B**.

55.    De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores notifican la presente Tricentésima vigésima sexta objeción global a) a los acreedores individuales objeto de esta Tricentésima vigésima sexta objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 14* [ECF núm. 15894-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación relativa a la Tricentésima vigésima sexta objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Tricentésima vigésima sexta objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## **RESERVA DE DERECHOS**

56.    La presente Tricentésima vigésima sexta objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas en dichos Casos de Título III, a objetar a las Reclamaciones que han de ser rechazadas o a cualesquiera otras reclamaciones por los motivos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas en los Casos de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento

29

anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores, o a cualesquiera otras partes interesadas en los Casos de Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

57.    No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima vigésima sexta objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.


[*El resto de la página se deja en blanco intencionadamente*]

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

Fecha: 30 de abril de 2021
    San Juan (Puerto Rico)

Respetuosamente sometida,

*/firma/ Hermann D. Bauer*
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

*/firma/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico.*

31