Hearing Date: **June 16, 2021, at 9:30AM (Atlantic Standard Time)**
Response Deadline: **June 2, 2021, at 4:00PM (Atlantic Standard Time)**

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                              Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

### THREE HUNDRED TWENTY-EIGHTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO PARTIAL DUPLICATE, DEFICIENT, NO LIABILITY, AND INCORRECT DEBTOR BOND CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth," or the "Debtor") by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Commonwealth pursuant to section 315(b) of the *Puerto*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this three hundred twenty-eighth omnibus objection (the "Three Hundred Twenty-Eighth Omnibus Objection") to the proofs of claim listed on **Exhibit A** hereto, each of which is purportedly based, in part, on (*a*) bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), (*b*) bond claims that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds, and/or (*c*) an ownership interest in bonds issued by the Government Development Bank of Puerto Rico ("GDB"). In addition, certain portions of each of the proofs of claim listed on **Exhibit A** hereto should be reclassified because a portion of the claim identifies the Commonwealth as obligor, when that claim is properly asserted, if at all, against the Puerto Rico Electric Power Authority ("PREPA"). Further, certain portions of each of the proofs of claim listed on **Exhibit A** hereto are deficient because they fail to provide sufficient information to enable the Commonwealth to reconcile the proofs of claim. A portion of each claim listed on **Exhibit A** hereto will remain asserted against the Commonwealth. In support of the Three Hundred Twenty-Eighth Omnibus Objection, the Commonwealth respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

## BACKGROUND

**A.     The Bar Date Orders**

3.     On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").  On July 3, 2017 (the "Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for PREPA pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "PREPA Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases").  On October 6, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only. Case No. 17 BK 4780, ECF No. 340.

4.     On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

3

**B.**     **Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

5.      Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a). As explained below, master proofs of claim (collectively, the "Master Claims") have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Infrastructure Financing Authority ("PRIFA"), the Puerto Rico Aqueduct and Sewer Authority ("PRASA"), and the University of Puerto Rico ("UPR").

6.      ***ERS***—ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.[3]  Purportedly pursuant to that certain Pension Funding Bond Resolution, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds"), in the aggregate original principal amount of approximately $2.9 billion.[4]  BNYM

---

[3]   On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof.

[4]   On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy*

serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the holders of ERS Bonds, BNYM filed a master proof of claim in the Commonwealth Title III Case, which was logged by Prime Clerk, LLC, as Proof of Claim No. 32004.[5]

7.  **_HTA_**—HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A. § 2002.  The HTA Enabling Act authorizes HTA to issue bonds.  *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution").  As of May 21, 2017, HTA's petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding.  BNYM serves as fiscal agent with respect to the HTA Bonds.

---

*Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [Case No. 17-3283, ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*.  ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

[5] On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim.  See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent (Claim No. 16775) [ECF No. 7075].  For the avoidance of doubt, this Three Hundred Tenth Omnibus Objection is without prejudice to the parties' rights with respect to such objection, including any rights to intervene, which are reserved.

8.     On behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the Commonwealth Title III Case (the "HTA-CW Master Claims"), each asserting a "secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the Commonwealth arising at law or in equity . . . ." *See* Addendum to Proof of Claim No. 121053, ¶ 15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No. 115380, ¶ 15.[6]

9.     ***PRIFA***—PRIFA is an affiliate of the Government Development Bank ("GDB") and is a government instrumentality of the Commonwealth.  PRIFA was created in 1988 by Act No. 44-1988 (the "PRIFA Enabling Act").  PRIFA provides financial, administrative and other types of assistance to the Commonwealth, its public corporations and other instrumentalities responsible for developing and operating infrastructure facilities.  On behalf of the holders of various bonds and notes issued by PRIFA (collectively, the "PRIFA Bonds"), master proofs of claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by BNYM, US Bank, and UMB Bank, N.A.  US Bank filed a master proof of claim with respect to certain PRIFA Bonds, which was logged by Prime Clerk as Proof of Claim No. 13386, on behalf of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006B), asserting "claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating

---

[6]  While BNYM initially filed three proofs of claim logged by Prime Clerk as Proofs of Claim Nos. 21286, 26541, and 35277, these were superseded and amended by Proofs of Claim Nos. 121053, 120982, and 115380.

to the outstanding Bond obligations, amount not less than $249,099,446.17 . . . ."  Rider to Proof of Claim No. 13386, ¶ 26.

10. ***PRASA***—PRASA owns and operates the island-wide public water and wastewater systems in Puerto Rico.  PRASA issued certain revenue bonds (the "PRASA Bonds"), under the Puerto Rico Aqueduct and Sewer Authority Resolution No. 1583, *Authorizing and Securing Puerto Rico Aqueduct and Sewer Authority Bonds Guaranteed by the Commonwealth of Puerto Rico*, and certain supplemental resolutions.  Banco Popular de Puerto Rico ("Banco Popular") serves as trustee for the PRASA Bonds and filed a master proof of claim against the Commonwealth on behalf of the holders of the PRASA Bonds, which was logged by Prime Clerk as Proof of Claim No. 22620 (the "PRASA Master Claim").  The PRASA Master Claim asserts "a contingent claim against the Commonwealth on account of the Bonds in an amount not less than $284,755,000, together with all interest, and premium accruing on the Bonds from and after the Petition Date, and all fees, costs, expenses and other charges accrued, accruing or chargeable with respect thereto."  Addendum to PRASA Master Claim, ¶ 9.

11. ***UPR***—UPR allegedly is "a public corporation of the Commonwealth constituting an organic system of higher education," pursuant to Act No. 1 of the Legislature of Puerto Rico, approved January 20, 1966 (18 L.P.R.A. §§ 601-614).  Rider to Proof of Claim No. 13382, ¶ 5. US Bank serves as trustee for certain University System Revenue Refunding Bonds Series P and Q issued by UPR, and filed a master proof of claim, logged by Prime Clerk, LLC, as Proof of Claim No. 13382 (the "UPR Master Claim").  The UPR Master Claim asserts "contingent, unliquidated claims against the Commonwealth for all rights and entitlement that U.S. Bank as Trustee has or may have of whatever nature or kind set forth in the Trust Agreement, or pursuant to other applicable documents or law, including for breach of covenants and for the potential

7

diversion of revenues pledged for the payment of the Bonds, whether in the past or in the future."
*Id.*, ¶ 12.

**C.      The COFINA Title III Case and Resolution of the Commonwealth-COFINA Dispute**

12.      COFINA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 91 of the Legislative Assembly of the Commonwealth.  Pursuant to the Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 19, 2009, and pursuant to certain supplemental resolutions, COFINA issued a series of bonds in aggregate approximate amount of $17 billion, to, among other things, defray certain debt obligations of the Puerto Rico Government Development Bank and the Puerto Rico Public Finance Corporation (the "COFINA Bonds").  Bank of New York Mellon serves as Trustee with respect to the COFINA Bonds.

13.      The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652] on January 9, 2019.  The Court considered confirmation of the Plan and any objections thereto at a hearing on January 16-17, 2019.

14.      On February 4, 2019, the Court confirmed the Plan, which incorporated the compromise and settlement of the dispute over whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA under applicable law (the "Commonwealth-COFINA Dispute").  *See Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5048].  On the same day, the Court approved the compromise and

8

settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [ECF No. 5045] (the "Settlement Order").  On February 5, 2019, the Court issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "Amended Confirmation Order").  The Plan became effective on February 12, 2019 (the "Effective Date"), when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case No. 17 BK 3284-LTS, ECF No. 587].

**D.      The GDB Title VI Proceedings and Qualifying Modification**

15.      GDB is a public corporation and governmental instrumentality of the Commonwealth, which was created by the Legislative Assembly in 1948 to aid the government of the Commonwealth (the "Government") in performing its fiscal duties and in more effectively carrying out its responsibility to develop the economy of the Commonwealth.  On April 28, 2017, the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which contemplated an orderly wind-down of the operations of GDB based upon the determination that there was no clear path for the long-term viability of GDB based on its then-current financial condition.

16.      On July 12, 2017, the Oversight Board issued a resolution authorizing GDB, pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA.  On August 10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to

PROMESA section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District Court for the District of Puerto Rico.

17.     On November 7, 2018, the Court approved the Qualifying Modification pursuant to PROMESA section 601(m)(1)(D).  *See* ECF No. 270 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018).  The Qualifying Modification provides for, among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery Authority in exchange for the cancellation of, among other things, certain participating bonds and guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB. *Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Aug. 10, 2018).

18.     On November 29, 2018, GDB announced the consummation of the Qualifying Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

**C.      Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections**

19.      To date, approximately 179,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

20.      Of the proofs of claim filed, approximately 115,000 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

21.      To efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures. *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

22.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "<u>Amended Omnibus Objection Procedures</u>").

23.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 14 hearings related to over 140 omnibus objections filed by the Commonwealth, COFINA, HTA, PREPA, and/or ERS.  Based upon rulings and orders of the Court to date, approximately 56,000 claims asserting $43.0 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

24.     This Three Hundred Twenty-Eighth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## <u>OBJECTIONS TO PROOFS OF CLAIM</u>

25.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of

Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

26.     The Three Hundred Twenty-Eighth Omnibus Objection seeks to partially disallow and partially reclassify, in accordance with the Amended Omnibus Objection Procedures, proofs of claim listed on **Exhibit A** hereto (collectively, the "Claims to Be Partially Disallowed and Partially Reclassified"), each of which is purportedly based, in part, on (*a*) bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), (*b*) bond claims that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds, and/or (*c*) an ownership interest in bonds issued by the Government Development Bank of Puerto Rico ("GDB").  In addition, certain portions of each of the proofs of claim listed on **Exhibit A** hereto should be reclassified because a portion of the claim identifies the Commonwealth as obligor, when that claim is properly asserted, if at all, against the Puerto Rico Electric Power Authority ("PREPA").  Further, certain portions of each of the proofs of claim listed on **Exhibit A** hereto are deficient because they fail to provide sufficient information to enable the Commonwealth to reconcile the proofs of claim.  A portion of each claim listed on **Exhibit A** hereto will remain asserted against the Commonwealth.

27.     In each of the Claims to Be Partially Disallowed and Partially Reclassified, the proof of claim purported to assert liabilities arising out of "Bond Purchases, prestamo de dinero", "bond purchased and then became valueless", or other similar terms asserting liabilities associated with investments in government-issued bonds, but failed to provide information necessary to enable the Commonwealth to reconcile the claims, such as the CUSIP numbers or amounts of the specific bonds claimants intended to assert.  In some instances, the Claims to Be Partially Disallowed and Partially Reclassified provided as supporting documentation a copy of a brokerage

statement, or other supporting documentation containing information regarding bonds purportedly

held by the claimant, but failed to provide information necessary to enable the Commonwealth to

reconcile the claims, such as the CUSIP numbers or amounts of the specific bonds claimants

intended to assert.  However, the amounts of the bonds included in that supporting documentation

did not match the amount on the claimant's proof of claim.  In other instances, the Claims to Be

Partially Disallowed and Partially Reclassified did not contain any supporting documentation.

28.     On August 13, 2019, the Court entered the *Order Granting in Part and Adjourning
in Part Debtors' Motion for Entry of An Order (A) Authorizing Alternative Dispute Resolution
Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D)
Granting Related Relief* [ECF No. 8453] (the "Authorized Mailings Order"), which authorized the

Debtors to send mailings "to any claimant who has not provided sufficient information to enable

Debtors to process their claim."  Authorized Mailings Order, ¶ 3.

29.     Pursuant to the Authorized Mailings Order, "[i]f the Debtors mail the Proposed

Mailing to a claimant, and the claimant either does not respond or responds but fails to provide

sufficient information to permit Debtors to reconcile their claim, the Debtors are authorized to

object to the claim as deficient."  *Id.*

30.     In accordance with the Authorized Mailings Order, the Commonwealth has sent at

least one letter, substantially in the form of Exhibit 1 to the Authorized Mailings Order, to each

claimant subject to this Three Hundred Twenty-Eighth Omnibus Objection (the "Mailing").  Each

Mailing provided, in relevant part:

> Additional information is required in order for the Debtors to
> continue with assessing your claim. The Debtors are unable to
> determine from the information you provided the basis for the claim
> you are attempting to assert against one or more of the Debtors.  In
> responding to this letter, please ensure that you provide all of the
> information requested and as much detail as possible about your

14

claim.  The descriptions you put on your proof of claim were too
vague for the Debtors to understand the claim you are trying to
assert, so please provide more detail and do not simply copy over
the same information.
*See* ECF No. 8453-1 at 2, 7.

31.    The Mailings received by the claimants subject to this Three Hundred Twenty-

Eighth Omnibus Objection directed the claimants to respond no later than October 23, 2019

(depending on the date each Mailing was sent).  *See id*.  Furthermore, the Mailings cautioned the

Claimants that "[i]f you do not respond to this request and do not provide the requested information

and documentation in support of your claim, the Debtors may be forced to object to your claim."

32.    Each of the Claimants identified in **Exhibit A** either failed to respond to the

Mailings, or submitted a response that still did not contain information necessary to enable the

Commonwealth to reconcile the claim.  Accordingly, the Debtors reviewed the documentation

submitted with the proofs of claim or with the Mailings for assertions of investments related to

government-issued bonds.  Based on that review, the Debtors understand the Claims to Be Partially

Disallowed and Partially Reclassified assert (*a*) bonds issued by the Puerto Rico Sales Tax

Financing Corporation ("COFINA"), (*b*) bond claims that are duplicative of one or more master

proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds, and/or

(*c*) an ownership interest in bonds issued by the Government Development Bank of Puerto Rico

("GDB").  In addition, certain portions of each of the proofs of claim listed on **Exhibit A** hereto

should be reclassified because a portion of the claim identifies the Commonwealth as obligor,

when that claim is properly asserted, if at all, against the Puerto Rico Electric Power Authority

("PREPA").  Further, to the extent each of the Claims to Be Disallowed purport to assert additional

liabilities not associated with government-issued bonds identified in the proof of claim, the

supporting documentation, or a Mailing response, those portions of each of the proofs of claim

listed on **Exhibit A** hereto are deficient because they fail to provide sufficient information to enable the Commonwealth to reconcile the proofs of claim. A portion of each claim listed on **Exhibit A** hereto will remain asserted against the Commonwealth.

### A.  No Liability for Partial COFINA Bondholder Claims

33.     As identified in **Exhibit A** hereto, certain Claims to Be Partially Disallowed and Partially Reclassified purport to assert, in part, claims based on an alleged ownership interest in bonds issued by COFINA (collectively the "Partial COFINA Bondholder Claims").

34.     As explained above, the Settlement Order resolved the Commonwealth-COFINA Dispute, and, pursuant to Paragraph 55 of the Settlement Order, all claims against the Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA have been released. Additionally, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF No. 5045-1], dated October 19, 2018, and attached to the Settlement Order (the "Settlement Agreement"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has been dismissed with prejudice following the approval of the compromise and settlement of the Commonwealth-COFINA Dispute. Furthermore, pursuant to Paragraph 29(f) of the Amended Confirmation Order, claims, such as the Partial COFINA Bondholder Claims, that arose from or relate to the relationship of the Commonwealth and COFINA were released. Amended Confirmation Order, ¶ 29(f).[7] For all of these reasons, the Partial COFINA Bondholder Claims

---

[7] Pursuant to the Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action,

should be disallowed because these claims based on an apparent alleged ownership interest in

COFINA Bonds have been satisfied, released, and/or discharged pursuant to the Settlement Order,

Settlement Agreement, Amended Confirmation Order, and Plan.

### B. No Liability for Partial GDB Bondholder Claims

35.     As identified in **Exhibit A** hereto, some of the Claims to Be Partially Disallowed

and Partially Reclassified purport to assert, in part, claims based on the alleged ownership of bonds

issued by GDB (collectively the "Partial GDB Bondholder Claims").

36.     Each of the Partial GDB Bondholder Claims appear to purport to be based in part

on the ownership of GDB Bonds that were subject to the Qualifying Modification, which provided

for the issuance of new securities in exchange for the cancellation of the GDB Bonds and the

extinguishment of the Commonwealth's guarantee of certain GDB Bonds, and thus the

Commonwealth is no longer liable for these claims.   Accordingly, each of the Partial GDB

Bondholder Claims has been released pursuant to the approval and consummation of the

Qualifying Modification.   As noted above, the Qualifying Modification provides, among other

things, that holders of GDB Bonds shall release GDB and its affiliates from claims relating to the

GDB Bonds and any action or omission of GDB and its affiliates with respect to any indebtedness

of or loan to GDB.  GDB is a public corporation and instrumentality of the Commonwealth.  The

Commonwealth, thus, is an affiliate of GDB within the scope of the release pursuant to the

Qualifying Modification.  Accordingly, the Partial GDB Bondholder Claims were released upon

the consummation of the Qualifying Modification on November 29, 2018.  Because the Partial

GDB Bondholder Claims are unenforceable against the Commonwealth and its property pursuant

---

demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise."  Plan §
1.53.

to Bankruptcy Code § 502(b)(1), these claims should be disallowed because they seek recovery of amounts for which the Commonwealth is not liable.

### C.  No Liability for Partial Duplicate Bond Claims

37.     As set forth in **Exhibit A** hereto, certain of the Claims to Be Partially Disallowed and Partially Reclassified purport to assert liability, in part, on the basis of bonds issued by, ERS, HTA, PRIFA, PRASA, and/or UPR (collectively, the "Partial Duplicate Bond Claims").

38.     Each of the Partial Duplicate Bond Claims appear to purport to assert, in part, liability against the Commonwealth associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Commonwealth Title III Case on behalf of the holders of certain bonds issued by ERS, HTA, PRIFA, PRASA, and/or UPR.  Any failure to disallow the Partial Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment of other stakeholders in the Commonwealth Title III Case.  The holders of the Partial Duplicate Bond Claims will not be prejudiced by the partial disallowance of their claims because the liabilities associated with the Partial Duplicate Bond Claims are subsumed within one or more Master Claims.

### D.  Partially Reclassified Bond Claims

39.     In addition, a portion of each of the Claims to Be Partially Disallowed and Partially Reclassified identifies the Commonwealth as the obligor, when such portion is properly asserted, if at all, against PREPA, and appears to assert liability, in part, on the basis of bonds issued by PREPA (the "Partially Reclassified Bond Claims").

40.     In each of the Partially Reclassified Bond Claims, the claimant purports to assert, in part, liabilities associated with municipal bond(s), but the proof of claim, supporting

documentation provided by the claimant, and/or CUSIP information show that the portions of the liabilities associated with the Partially Reclassified Bond Claims would appropriately be asserted, if at all, against PREPA. Accordingly, the Partially Reclassified Bond Claims should be reclassified, in part, to be asserted against PREPA, the Title III debtor identified in the column titled "Corrected" in **Exhibit A** hereto. The Commonwealth reserves its right to object to any part of the Partially Reclassified Bond Claims on any other grounds whatsoever.

41.    Claimants will retain a remaining claim (collectively, the "Remaining Claims"), as identified in the column titled "Corrected" in **Exhibit A** hereto. The holders of the Claims to Be Partially Disallowed and Partially Reclassified will not be prejudiced as to the remaining amounts owed which are not subject to this objection, as they will retain a Remaining Claim against the Commonwealth in respect of such amounts. The Commonwealth reserves its rights to object to the Remaining Claims on any grounds whatsoever.

42.    In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Three Hundred Twenty-Eighth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Partially Duplicate, Deficient, No Liability and Incorrect Debtor Bond Claims*, dated April 30, 2021, attached hereto as **Exhibit B**.

## NOTICE

43.    In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Commonwealth, is providing notice of this Three Hundred Twenty-Eighth Omnibus Objection to (a) the individual creditors subject to this Three Hundred Twenty-Eighth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Fourteenth Amended Case Management Procedures* [ECF No. 15894-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico. The notice for this Three

Hundred Twenty-Eighth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations

of the Three Hundred Twenty-Eighth Omnibus Objection and all of the exhibits attached hereto

are being filed with this objection and will be served on the parties.  The Commonwealth submits

that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

44.      This Three Hundred Twenty-Eighth Omnibus Objection is limited to the grounds

stated herein.  Accordingly, it is without prejudice to the rights of the Commonwealth or the rights

of any other party in interest in the Title III Cases to object to the Claims to Be Partially Disallowed

and Partially Reclassified or any other claims on any ground whatsoever.  The Commonwealth

expressly reserves all further substantive or procedural objections.  Nothing contained herein or

any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as

to the validity of any claim against the Commonwealth; (b) a waiver of the rights of the

Commonwealth or any other party in interest in the Title III Cases to dispute any claim on any

grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume

any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or

(e) a waiver of the rights of the Commonwealth or any other party in interest in the Title III Cases

under PROMESA, the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

45.      No prior request for the relief sought in this Three Hundred Twenty-Eighth

Omnibus Objection has been made to this or any other court.

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in

the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested

herein, and (2) granting such other and further relief as is just.

Dated: April 30, 2021
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board for
Puerto Rico, as representative of the
Commonwealth of Puerto Rico*

Fecha de la vista: 16 de junio de 2021, a las 9:30 a.m. (AST)
Fecha límite para responder: 2 de junio de 2021, a las 4:00 p.m. (AST)

> **REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*: <br><br> JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, <br><br>    como representante del <br><br> ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*., <br><br>    Deudores.[1] | PROMESA <br> Título III <br><br> núm. 17 BK 3283-LTS <br><br> (Administrado Conjuntamente) <br><br> **La presente radicación guarda relación con el ELA.** |

## TRICENTÉSIMA VIGÉSIMA OCTAVA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES POR BONOS PARCIALMENTE DUPLICADAS, DEFICIENTES, EN LAS QUE NO EXISTE RESPONSABILIDAD Y RADICADAS CONTRA EL DEUDOR INCORRECTO

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

1

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III del ELA conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica esta tricentésima vigésima octava objeción global (la "Tricentésima vigésima octava objeción global") a las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento, cada una de las cuales se basa supuestamente en *a)* bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), *b)* reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de determinados bonistas, y/o *c)* una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento para Puerto Rico (el "BGF"). Asimismo, algunas partes de cada una de las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento deben reclasificarse, puesto que una parte de la reclamación identifica al ELA como deudor, cuando en todo caso lo correcto sería alegar dicha reclamación contra la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"). Además, algunas partes de cada una de las evidencias de reclamaciones contenidas en el **Anexo A** del presente documento son deficientes, puesto que no brindan la información suficiente para que el ELA pueda reconciliar las evidencias de reclamaciones. Una parte de cada reclamación que aparece en el **Anexo A** del presente documento seguirá estando radicada contra el ELA. En apoyo de la Tricentésima vigésima octava objeción global, el ELA manifiesta respetuosamente lo siguiente:

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

### A.      Órdenes de Fecha Límite

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 3 de julio de 2017 (la "Fecha de Petición"), la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para la AEE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III del referido cuerpo legal (el "Caso de Título III de la AEE", y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 6 de octubre de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de los Casos de Título III únicamente con fines procesales. Caso núm. 17 BK 4780, ECF núm. 340.

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha

3

Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas

límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de

Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los

Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar*

*evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160]

(conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo

dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.      Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de
Título III del ELA**

5.      Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes

fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos

emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación

principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de las

reclamaciones por bonos para la respectiva serie de bonos en relación con las obligaciones surgidas

de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con

los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, se han radicado

evidencias de reclamaciones principales (conjuntamente, las "Reclamaciones Principales") en el

marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés

del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico

(el "SRE"), la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad

para el Financiamiento de la Infraestructura de Puerto Rico (la "AFI"), la Autoridad de Acueductos

y Alcantarillados de Puerto Rico (la "AAA") y la Universidad de Puerto (la "UPR").

6.      **_SRE_**: el SRE es un organismo gubernamental, aparte e independiente del Gobierno del ELA y de sus demás instrumentalidades. *Véase* 3 L.P.R.A § 775.[3] Supuestamente conforme a la Resolución sobre bonos para el financiamiento de pensiones, adoptada el 24 de enero de 2008, y las resoluciones complementarias, el SRE emitió unos bonos prioritarios y subordinados para el financiamiento de pensiones (los "Bonos del SRE "), por un monto total del principal original de aproximadamente $2900 millones.[4] BNYM actúa como agente fiscal con respecto a los Bonos del SRE. Actuando en nombre de los tenedores de los Bonos del SRE, BNYM radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 32004.[5]

---

[3]  El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el SRE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal.

[4]  El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción global a reclamaciones radicadas por los tenedores de los bonos emitidos por el SRE* [Caso núm. 17-3566, ECF núm. 381], basándose en que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*, anulando de pleno derecho los Bonos del SRE. El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico radicó una *Objeción Global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme al artículo 502 de Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a reclamaciones radicadas o alegadas por los tenedores de los Bonos del SRE contra el SRE y el ELA* [Caso núm. 17-3283, ECF núm. 6482], basándose, entre otras cosas, en que la emisión de los bonos fue *ultra vires*. El SRE se reserva el derecho a impugnar la emisión de los bonos sobre cualquier motivo, incluso sobre el motivo de que los bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

[5]  El 22 de mayo de 2019, el ELA radicó una objeción a la Evidencia de Reclamación principal del SRE. Véase Objeción de la Junta de Supervisión y Administración Financiera, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a las reclamaciones radicadas o alegadas contra el ELA por el Bank of New York Mellon, como agente fiscal (Reclamación núm. 16775) [ECF núm. 7075]. En aras de la claridad, la presente Tricentésima décima objeción global se radica sin perjuicio de los derechos de las partes en relación con dicha objeción, incluyendo cualesquiera derechos a intervenir, que quedan reservados.

7.      **ACT**: la ACT es una corporación pública e instrumentalidad del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 74-1965 de la Asamblea Legislativa del ELA (la "Ley para crear la ACT"). La ACT se encarga de la construcción, operación y mantenimiento de carreteras y otros sistemas de transportación en el ELA. *Véase* 9 L.P.R.A. § 2002. La Ley para crear la ACT autoriza a la ACT a emitir bonos. *Véase* 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT"): (*i*) la Resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución de 1968"), y *ii*) la Resolución núm. 98-06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998"). Desde el 21 de mayo de 2017, la fecha de petición de la ACT, aproximadamente $830 millones del monto principal de los bonos emitidos conforme a la Resolución de 1968 quedan pendientes de pago, y aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la Resolución de 1998 quedan igualmente pendientes de pago. BNYM actúa como agente fiscal con respecto a los Bonos de la ACT.

8.      Actuando en nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias de reclamaciones principales en el marco del Caso de Título III del ELA (las "Reclamaciones Principales ACT-ELA"), cada una de las cuales alegaba "una reclamación garantizada, contingente y no liquidada contra el ELA en razón de la totalidad de las reclamaciones, causas de acción, derechos y/o remedios que el Agente Fiscal o los Propietarios puedan tener contra el ELA, conforme a derecho o equidad. . . ." *Véase* Adenda de la Evidencia

de reclamación núm. 121053, ¶ 15; Adenda de la Evidencia de reclamación núm. 120982, ¶ 15; Adenda de la Evidencia de reclamación núm. 115380, ¶ 15.[6]

9.     ***AFI***: la AFI es una filial del Banco Gubernamental de Fomento (el "<u>BGF</u>") y constituye una instrumentalidad del Gobierno del ELA. La AFI fue creada en 1988 mediante la Ley núm. 44-1988 (la "<u>Ley para crear la AFI</u>"). La AFI brinda asistencia financiera, administrativa y de otro tipo al ELA, a sus corporaciones públicas y a otras instrumentalidades encargadas del desarrollo y del funcionamiento de las infraestructuras. Actuando en nombre de los tenedores de varios bonos y pagarés emitidos por la AFI (conjuntamente, los "<u>Bonos de la AFI</u>"), BNYM, US Bank y UMB Bank, N.A., radicaron evidencias de reclamaciones principales contra el ELA (conjuntamente, las "<u>Reclamaciones Principales de la AFI</u>"). US Bank radicó una evidencia de reclamación principal en relación con determinados Bonos de la AFI, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 13386, en nombre de los tenedores de los Bonos de la AFI relativos a impuestos sobre el ron (Bonos de rentas de impuestos especiales, series 2005A, 2005B, 2005C y serie 2006B), alegando "reclamaciones por montos contingentes y no liquidados en relación con los intereses pagaderos a futuro, intereses devengados y a devengar en el futuro en lo referente al principal e intereses vencidos, tarifas y costos y reclamaciones por indemnización del Fiduciario que se incurran en el futuro en virtud de los Documentos de los bonos, así como por la totalidad de los montos adeudados en razón de todas las reclamaciones que tenga o pueda tener el Fiduciario en relación con las obligaciones de bonos pendientes, monto mínimo de $249,099,446.17. . . ." Cláusula adicional de la Evidencia de reclamación núm. 13386, ¶ 26.

---

[6]  Aunque BNYM radicó inicialmente tres evidencias de reclamaciones registradas por Prime Clerk como Evidencias de reclamaciones núms. 21286, 26541 y 35277, estas fueron sustituidas y enmendadas por las Evidencias de reclamaciones núms. 121053, 120982 y 115380.

7

10. ___*AAA*___: la AAA es propietaria y opera los sistemas públicos de suministro de agua y de aguas residuales en Puerto Rico. La AAA emitió determinados bonos de renta (los "Bonos de la AAA"), conforme a la Resolución de la Autoridad de Acueductos y Alcantarillados de Puerto Rico núm. 1583, *por la que se autorizan y garantizan los bonos de la Autoridad de Acueductos y Alcantarillados de Puerto Rico avalados por el Estado Libre Asociado de Puerto Rico*, y algunas resoluciones complementarias. El Banco Popular de Puerto Rico ("Banco Popular") actúa como fiduciario en relación con los Bonos de la AAA, y radicó una evidencia de reclamación principal contra el ELA en nombre de los tenedores de Bonos de la AAA, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 22620 (la "Reclamación Principal de la AAA"). La Reclamación Principal de la AAA alega "una reclamación contingente contra el ELA en relación con los Bonos por un importe de al menos $284,755,000, además de todos los intereses y primas generados sobre los Bonos a partir de la Fecha de Petición, así como la totalidad de las tasas, costos y gastos y otros cargos acumulados que hayan devengado o sean cobrables en relación con tales Bonos". Adenda de la Evidencia de Reclamación Principal de la AAA, ¶ 9.

11. ___*UPR*___: la UPR presuntamente es "una corporación pública del ELA que integra un sistema orgánico de educación superior", conforme a la Ley núm. 1 de la Asamblea Legislativa de Puerto Rico, aprobada el 20 de enero de 1966 (18 L.P.R.A. §§ 601 a 614). Cláusula adicional de la Evidencia de reclamación núm. 13382, ¶ 5. US Bank actúa como fiduciario en relación con determinados Bonos de renta de refinanciamiento del sistema universitario, series P y Q, emitidos por la UPR, y radicó una evidencia de reclamación principal, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 13382 (la "Reclamación Principal de la UPR"). La Reclamación principal de la UPR alega "reclamaciones contingentes y no liquidadas contra el ELA por todos los derechos y titularidades que U.S. Bank como Fiduciario tenga o pueda tener, de la

naturaleza o tipo que fueran, en relación con el Acuerdo de Fideicomiso, o de conformidad con otros documentos o leyes aplicables, lo que incluye incumplimiento de pactos o desviación potencial de rentas pignoradas para el pago de los Bonos, en la actualidad o en el futuro". *Id.*, ¶ 12.

**C.    Caso de Título III de COFINA y resolución de la controversia entre el ELA y COFINA**

12.    COFINA es una corporación pública e instrumentalidad del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 91 de la Asamblea Legislativa del ELA. Conforme a la Resolución enmendada y modificada sobre los bonos del fondo de interés apremiante, adoptada el 13 de julio de 2007, en su versión enmendada del 19 de junio de 2009, y de conformidad con otras resoluciones complementarias, COFINA emitió una serie de bonos por un monto total de aproximadamente $17,000 millones para, entre otras cosas, sufragar determinadas obligaciones de deuda del Banco Gubernamental de Fomento para Puerto Rico y de la Corporación para el Financiamiento Público de Puerto Rico (los "Bonos de COFINA"). El Bank of New York Mellon actúa como fiduciario con respecto a los Bonos de COFINA.

13.    La Junta de Supervisión radicó el *Tercer plan enmendado de ajuste de la Corporació*n *del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* (el "Plan") [ECF núm. 4652] el 9 de enero de 2019. El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista celebrada los días 16 y 17 de enero de 2019.

14.    El 4 de febrero de 2019, el Tribunal confirmó el Plan que incorporaba el pacto y la conciliación de la controversia sobre si, luego de examinar todas las contestaciones y reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos sobre la venta y uso supuestamente empeñados por COFINA para garantizar la deuda son propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia entre

9

el ELA y COFINA"). *Véase la Orden y la Sentencia que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5048]. Ese mismo día, el Tribunal aprobó el pacto y la conciliación de la Controversia entre el ELA y COFINA conforme al *Dictamen abreviado y orden que aprueba la conciliación entre el Estado Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés Apremiante de Puerto Rico* [ECF núm. 5045] (la "Orden de Conciliación"). El 5 de febrero de 2019, el Tribunal dictó una *Orden y Sentencia enmendadas que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5055] (la "Orden de Confirmación Enmendada"). El Plan entró en vigor el 12 de febrero de 2019 (la "Fecha de Entrada en Vigor"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de Entrada en Vigor* [Caso núm. 17 BK 3284-LTS, ECF núm. 587].

**D.    Procedimientos conforme al Título VI del BGF y modificación calificada**

15.    El BGF es una entidad pública e instrumentalidad gubernamental del ELA, creada por la Asamblea Legislativa en 1948 para ayudar al Gobierno del ELA (el "Gobierno") a llevar a cabo sus tareas fiscales y a desempeñar su responsabilidad con mayor eficacia en relación con el desarrollo de la economía del ELA. El 28 de abril de 2017, la Junta de Supervisión aprobó por unanimidad el Plan fiscal del BGF de febrero de 2017, que contemplaba una terminación ordenada de las actividades del BGF sobre la base de la determinación de que el BGF no era viable a largo plazo dadas sus condiciones financieras vigentes en ese momento.

16.     El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se autorizaba al BGF, conforme a la sección 601(e) de PROMESA, a ampararse en el Título VI de PROMESA. El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una modificación calificada, conforme a la sección 601(m)(1)(D) de PROMESA (la "Modificación Calificada"), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

17.     El 7 de noviembre de 2018, el Tribunal aprobó la Modificación Calificada conforme a la sección 601(m)(1)(D) de PROMESA. *Véase* ECF núm. 270 en Banco Gubernamental de Fomento para Puerto Rico, Caso núm. 18-1561 (D.P.R. 7 de nov. de 2018). La Modificación Calificada dispone, entre otras cosas, i) la emisión de nuevos bonos por la recién creada Autoridad de Recuperación de Deuda del BGF (*GDB Debt Recovery Authority*) a cambio de la cancelación (entre otras cosas) de determinados bonos de participación y reclamaciones de bonos garantizados (conjuntamente, "Bonos del BGF"); ii) la extinción de la garantía del ELA de los bonos garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la liberación de reclamaciones de los tenedores de Bonos del BGF contra el BGF y sus afiliados en relación con (entre otras cosas) cualquier inversión con el BGF o la compra, venta o transferencia de cualquier título valor o participación del BGF, y cualquier acción u omisión con respecto a cualquier endeudamiento o préstamo al BGF (incluidos cualesquiera pagarés emitidos o depósitos mantenidos por el BGF) o del BGF. *Declaración de Solicitación,* en 57-60, ECF núm. 1 a 15 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 10 de ago. de 2018).

18.     El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación Calificada del BGF. Nota de prensa, *el Gobierno de Puerto Rico anuncia la consumación de la Modificación Calificada del BGF*, gobernador de Puerto Rico (29 de nov. de 2018), *disponible en*

11

http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-

modification.pdf.

C.     **Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones
       globales y objeciones a reclamaciones**

19.     Hasta la fecha, se han radicado aproximadamente 179,000 evidencias de
reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas
evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones
radicadas contra los Deudores, además de los montos no liquidados reclamados.

20.     De las evidencias de reclamaciones radicadas, aproximadamente 115,000 han sido
radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad
con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que
haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido
enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables,
estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información
necesaria para que los Deudores determinen si la reclamación es válida.

21.     Para resolver eficazmente el mayor número posible de las evidencias de
reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su
*Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a
objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de
Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos
Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales
mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba
procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la*

12

*regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm.
4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los
"Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el
Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a
las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales
relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y
en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la
"Orden de Notificación").

     22.    En aras del interés constante de resolver eficazmente cualesquiera evidencias de
reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a
procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar
objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que
pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de
vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a
Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de
Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado*
[ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio
de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B)
exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas
de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los
"Procedimientos Enmendados relativos a Objeciones Globales").

     23.    Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los
Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la

fecha más de 14 vistas vinculadas con más de 140 objeciones globales radicadas por el ELA, COFINA, la ACT, la AEE y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban $43.0 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

24.     Esta Tricentésima vigésima octava objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

**<u>OBJECIONES A EVIDENCIAS DE RECLAMACIONES</u>**

25.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

26.     La Tricentésima vigésima octava objeción global pretende que se rechacen parcialmente y se reclasifiquen parcialmente, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, las evidencias de reclamaciones que aparecen en el **<u>Anexo A</u>** del presente documento (conjuntamente, las "<u>Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente</u>"), cada una de las cuales pretende basarse, en parte, en *a)* bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico ("<u>COFINA</u>"), *b)* reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de determinados bonistas, y/o *c)* una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento para

14

Puerto Rico (el "BGF"). Asimismo, algunas partes de cada una de las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento deben reclasificarse, puesto que una parte de la reclamación identifica al ELA como deudor, cuando en todo caso lo correcto sería alegar dicha reclamación contra la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"). Además, algunas partes de cada una de las evidencias de reclamaciones contenidas en el **Anexo A** del presente documento son deficientes, puesto que no brindan la información suficiente para que el ELA pueda reconciliar las evidencias de reclamaciones. una parte de cada reclamación que aparece en el **Anexo A** del presente documento seguirá estando radicada contra el ELA.

27.     En cada una de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente, la evidencia de reclamación pretendía alegar responsabilidades surgidas de una "Compra de Bonos, préstamo de dinero", "bono comprado que luego perdió su valor" u otros términos similares que alegan responsabilidades vinculadas con inversiones en bonos emitidos por el Gobierno, pero no brindan la información necesaria para que el ELA pueda reconciliar las reclamaciones; como por ejemplo, los números CUSIP o los montos correspondientes a los bonos concretos que los reclamantes pretenden alegar. En algunos casos, las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente proporcionaban como documentación justificativa una copia de un extracto de corretaje u otra documentación justificativa que contenía información sobre bonos supuestamente en posesión del reclamante, pero no proporcionaban la información necesaria para que el ELA pueda reconciliar las reclamaciones; como por ejemplo, los números CUSIP o los montos de los bonos concretos que los reclamantes pretenden alegar. Sin embargo, los montos de los bonos incluidos en dicha documentación justificativa no correspondían con el monto que figuraba en la evidencia de

reclamación del reclamante. En otros casos, las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente no contenían ninguna documentación justificativa.

28.     El 13 de agosto de 2019, el Tribunal dictó la *Orden que concedió parcialmente y levantó parcialmente la Moción de los Deudores para dictar una orden que A) autorice procedimientos alternativos de resolución de controversias, B) apruebe formas de notificación adicionales, C) apruebe envíos propuestos y D) conceda el remedio relacionado* [ECF núm. 8453] (la "Orden de Envío Autorizado") que autorizó que los Deudores realizaran envíos "a cualquier reclamante que no haya proporcionado suficiente información que permitiera a los Deudores procesar sus reclamaciones". Orden de Envío Autorizado, ¶ 3.

29.     Conforme a la Orden de Envío Autorizado, "[s]i los Deudores realizan el Envío Propuesto al reclamante, y este último no responde o responde pero no aporta suficiente información que permita a los Deudores reconciliar su reclamación, los Deudores tendrán derecho a oponerse a la reclamación como deficiente". *Id.*

30.     De conformidad con la Orden de Envío Autorizado, el ELA ha enviado al menos una carta a cada reclamante objeto de la presente Tricentésima vigésima octava objeción global esencialmente en el formato que se adjunta a la Orden de Envío Autorizado como Anexo 1 (el "Envío"). Cada Envío, en la parte pertinente, rezaba lo siguiente:

> Se requiere información adicional para que los Deudores sigan examinando su reclamación. Los Deudores no pueden determinar a partir de la información que usted proporcionó cuál es la base de la reclamación que trata de alegar contra uno o más Deudores. Al responder a esta carta, rogamos se asegure de proporcionar toda la información solicitada, así como tantos detalles como sea posible aportar sobre su reclamación. Las descripciones que incorporó en su evidencia de reclamación eran demasiado vagas para que los Deudores comprendieran la reclamación que usted trata de alegar, de manera que rogamos proporcione más detalles y no se limite simplemente a copiar la misma información.
> *Véase* ECF núm. 8453-1 en 2, 7.

16

31.     Los Envíos recibidos por los reclamantes objeto de la presente Tricentésima vigésima octava objeción global exigían a los reclamantes responder antes del 23 de octubre de 2019 (dependiendo de la fecha en la que cada Envío fue realizado). *Véase id.* Además, en los Envíos se advertía a los Reclamantes de que "[s]i no responde a esta solicitud y no proporciona la información y la documentación requeridas para justificar su reclamación, es posible que los Deudores se vean en la obligación de oponerse a su reclamación."

32.     Cada uno de los Reclamantes identificados en el **Anexo A** o bien no respondió a los Envíos, o bien envió una respuesta que tampoco contenía la información necesaria que permita al ELA reconciliar la reclamación. En consecuencia, los Deudores analizaron la documentación sometida con la evidencia de reclamación o con los Envíos en relación con la alegación de inversiones relacionadas con bonos emitidos por el Gobierno. Sobre la base de dicho análisis los Deudores entienden que las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente alegan *a)* bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico (COFINA), *b)* reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de determinados bonistas, y/o *c)* en una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento para Puerto Rico (el "BGF"). Asimismo, algunas partes de cada una de las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento deben reclasificarse, puesto que una parte de la reclamación identifica al ELA como deudor, cuando en todo caso lo correcto sería alegar dicha reclamación contra la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"). Además, en la medida en que cada una de las Reclamaciones que han de ser rechazadas pretendan alegar responsabilidades adicionales no vinculadas con bonos emitidos por el Gobierno identificados en la evidencia de reclamación, en la documentación

17

justificativa o en el Envío de réplica, dichas partes de cada una de las evidencias de reclamaciones

que aparecen en el **Anexo** del presente documento son deficientes porque no proporcionan la

información suficiente para que el ELA pueda reconciliar las evidencias de reclamaciones. Una

parte de cada reclamación que aparece en el **Anexo A** del presente documento seguirá estando

radicada contra el ELA.

### A.  Ausencia de responsabilidad por Reclamaciones Parciales de los Bonistas de COFINA

33.     Conforme a lo identificado en el **Anexo A** del presente documento, determinadas

Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente pretenden

alegar reclamaciones basadas, en parte, en una supuesta participación patrimonial en los bonos

emitidos por COFINA (conjuntamente, las "Reclamaciones Parciales de los Bonistas de

COFINA").

34.     Como se explicó anteriormente, la Orden de Conciliación resolvió la Controversia

entre el ELA y COFINA y, conforme al párrafo 55 de la Orden de Conciliación, la totalidad de las

reclamaciones contra el ELA, surgidas o vinculadas con la relación del ELA y COFINA, han sido

liberadas. Además, conforme al párrafo 3(c) del *Acuerdo de Conciliación* [ECF núm. 5045-1], de

fecha 19 de octubre de 2018, que se adjunta a la Orden de Conciliación (el "Acuerdo de

Conciliación"), y el párrafo 7 de la Orden de Confirmación Enmendada, el procedimiento

contencioso entre el ELA y COFINA sobre la Controversia entre el ELA y COFINA ha sido

desestimado de forma definitiva luego de la aprobación del pacto y la conciliación de la

Controversia entre el ELA y COFINA. Además, conforme al párrafo 29(f) de la Orden de

Confirmación Enmendada, reclamaciones (tales como las Reclamaciones Parciales de los Bonistas

de COFINA) que surgieron de o están vinculadas con la relación entre el ELA y COFINA, fueron

liberadas. Orden de Confirmación Enmendada, ¶ 29(f). [7] Por todos esos motivos, las Reclamaciones Parciales de los Bonistas de COFINA deben rechazarse porque dichas reclamaciones basadas en una supuesta y aparente participación patrimonial en los Bonos de COFINA han sido satisfechas, liberadas y/o liquidadas conforme a la Orden de Conciliación, el Acuerdo de Conciliación, la Orden de Confirmación Enmendada y el Plan.

**B. Ausencia de responsabilidad por Reclamaciones Parciales de los Bonistas del BGF**

35.     Conforme a lo identificado en el __Anexo A__ del presente documento, algunas Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente contienen presuntamente reclamaciones basadas, en parte, en la supuesta participación patrimonial en los bonos emitidos por el BGF (conjuntamente, las "Reclamaciones Parciales de los Bonistas del BGF").

36.     Cada una de las Reclamaciones Parciales de los Bonistas del BGF parece pretender basarse en parte en la propiedad de los Bonos del BGF objeto de la Modificación Calificada, que dispuso la emisión de nuevos títulos valores a cambio de la cancelación de los Bonos del BGF y la extinción de la garantía del ELA relativa a determinados Bonos del BGF, por lo que el ELA ya no tiene responsabilidad con respecto a dichas reclamaciones. En consecuencia, cada una de las Reclamaciones parciales de los bonistas del BGF ha sido liberada conforme a la aprobación y la

---

[7] Conforme al Plan, una "Reclamación" se define como "[c]ualquier derecho a un pago o cumplimiento, independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, contingente, vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado, conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por incumplimiento o ejecución de un cumplimiento, independientemente de si tal derecho a un remedio en equidad consta en una sentencia, es fijo, contingente, vencido, no vencido, controvertido, no controvertido, garantizado o no garantizado, y la totalidad de las deudas, procesos, indemnizaciones por daños y perjuicios, derechos, remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas de acción, procedimientos o reclamaciones de cualquier tipo o naturaleza, en derecho, equidad o de cualquier otra forma". Plan § 1.53.

consumación de la Modificación Calificada. Como se señaló anteriormente, la Modificación Calificada dispone, entre otras cosas, que los tenedores de los Bonos del BGF liberarán al BGF y sus afiliados de las reclamaciones relacionadas con los Bonos del BGF, y de cualquier acción u omisión del BGF y sus afiliados con respecto a todo endeudamiento del BGF o préstamo al BGF. El BGF es una entidad e instrumentalidad pública del ELA. En consecuencia, el ELA es un afiliado del BGF dentro del alcance de la liberación conforme a la Modificación Calificada. Por lo tanto, las Reclamaciones Parciales de los Bonistas del BGF fueron liberadas tras la consumación de la Modificación Calificada el 29 de noviembre de 2018. Puesto que las Reclamaciones Parciales de los Bonistas del BGF son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que pretenden recuperar montos por los que el ELA no es responsable.

**C. Ausencia de responsabilidad por reclamaciones parcialmente duplicadas por bonos**

37.     Según se expone en el **<u>Anexo A</u>** del presente documento, algunas de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente pretenden alegar responsabilidad, en parte, sobre la base de bonos emitidos por el SRE, la ACT, la AFI, la AAA y/o la UPR (conjuntamente, las "<u>Reclamaciones Parcialmente Duplicadas por Bonos</u>").

38.     Cada una de las Reclamaciones Parcialmente Duplicadas por Bonos parece pretender alegar, en parte, responsabilidad contra el ELA vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos emitidos por el SRE, la ACT, la AFI, la AAA y/o la UPR. Si las Reclamaciones Parcialmente Duplicadas por Bonos no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación duplicada no justificada

20

contra el ELA, en detrimento de otras partes interesadas en el Caso de Título III del ELA. Los
tenedores de las Reclamaciones Parcialmente Duplicadas por Bonos no se verán perjudicados por
el hecho de que se rechacen parcialmente sus reclamaciones, puesto que las responsabilidades
relacionadas con las Reclamaciones Parcialmente Duplicadas por Bonos figuran en una o más
Reclamaciones Principales.

### D. Reclamaciones por bonos parcialmente reclasificadas

39.     Además, una parte de cada una de las Reclamaciones que han de ser rechazadas
parcialmente y reclasificadas parcialmente identifica al ELA como deudor, cuando en todo caso
lo correcto sería que dicha parte se alegara contra la AEE, y parece alegar responsabilidad, en
parte, sobre la base de bonos emitidos por la AEE ( las "Reclamaciones por Bonos Parcialmente
Reclasificadas").

40.     En cada una de las Reclamaciones por Bonos Parcialmente Reclasificadas el
reclamante pretende alegar, en parte, responsabilidades vinculadas con bono(s) municipal(es), sin
embargo la evidencia de reclamación, la documentación justificativa proporcionada por el
reclamante y/o la información CUSIP muestran que en todo caso lo correcto sería alegar las
responsabilidades vinculadas con las Reclamaciones por bonos parcialmente reclasificadas contra
la AEE. En consecuencia, las Reclamaciones por Bonos Parcialmente Reclasificadas deben
reclasificarse, en parte, para alegarse contra la AEE, el deudor de Título III identificado en la
columna titulada "Corregidas" en el **Anexo A** del presente documento. El ELA se reserva el
derecho a objetar a cualquier parte de las Reclamaciones por Bonos Parcialmente Reclasificadas
sobre cualquier otro motivo que fuere.

41.     Los reclamantes conservarán una reclamación restante (conjuntamente, las
"Reclamaciones Restantes"), según lo identificado en la columna titulada "Corregidas" en el

**Anexo A** del presente documento. Los titulares de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente no se verán perjudicados en cuanto a los montos restantes adeudados que no sean objeto de la presente objeción, ya que conservarán una Reclamación Restante contra el ELA en relación con tales montos. El ELA se reserva el derecho a oponerse a las Reclamaciones Restantes sobre la base del motivo que fuere.

42.    En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Tricentésima vigésima octava objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones por bonos parcialmente duplicadas, deficientes, en las que no existe responsabilidad y radicadas contra el deudor incorrecto*, de fecha 30 de abril de 2021, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

43.    De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el ELA notifica la presente Tricentésima vigésima octava objeción global a) a los acreedores individuales objeto de esta Tricentésima vigésima octava objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 14* [ECF núm. 15894-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación relativa a la Tricentésima vigésima octava objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Tricentésima vigésima octava objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

44.     La presente Tricentésima vigésima octava objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos del ELA, o de los derechos de cualesquiera otras partes interesadas en los Casos de Título III, a objetar a las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente o a cualesquiera otras reclamaciones por los motivos que fuere. El ELA se reserva expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra el ELA; b) constituyan una renuncia a los derechos del ELA, o de cualesquiera otras partes interesadas de los Casos de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten al ELA, o a cualesquiera otras partes interesadas de los Casos de Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

45.     No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima vigésima octava objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda cualesquiera otros remedios que se consideren justos.

23

Fecha: 30 de abril de 2021
San Juan (Puerto Rico)

Respetuosamente sometida,

*/firma/ Hermann D. Bauer*
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

*/firma/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico*