Hearing Date:  June 16, 2021, 2021, at 9:30AM (Atlantic Standard Time)
Response Deadline: June 2, 2021, at 4:00PM (Atlantic Standard Time)

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>               Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth and ERS.** |

## THREE HUNDRED TWENTY-NINTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO AND THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATE AND NO LIABILITY BOND CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Employees Retirement

System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Commonwealth, the "Debtors"), by and through the Financial Oversight and Management Board

for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Debtors pursuant

to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*

("PROMESA"),[2] file this three hundred twenty-ninth omnibus objection (the "Three Hundred

Twenty-Ninth Omnibus Objection") to the proofs of claim listed on **Exhibit A** hereto, each of

which is based, in part, on (*a*) bonds issued by the Puerto Rico Sales Tax Financing Corporation

("COFINA"), (*b*) bond claims that are duplicative of one or more master proofs of claim filed

against the Debtors on behalf of the holders of certain bonds, (*c*) an ownership interest in bonds

issued by the Government Development Bank of Puerto Rico ("GDB"), (*d*) one or more

investments in mutual funds, which in turn may have invested in bonds issued by the Debtors,

and/or (*e*) an ownership interest in bonds issued by the Puerto Rico Aqueducts and Sewers

Authority ("PRASA"), which is not a Title III Debtor, for amounts for which the Debtors have not

guaranteed repayment.  In support of the Three Hundred Twenty-Ninth Omnibus Objection, the

Debtors respectfully represent as follows:

## JURISDICTION

26.     The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA

section 306(a).

27.     Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

### A.     The Bar Date Orders

28.     On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").   On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "ERS Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases").   On June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.   ECF No. 537.[3]

29.    On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").   Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.   Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.    Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

30.    Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a). As explained below, master proofs of claim (collectively, the "Commonwealth Master Claims") have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by ERS and the Puerto Rico Public Buildings Authority ("PBA").

31.    ***PBA*** — PBA purportedly issued Revenue Bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth.  US Bank and US Bank Trust serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833.[4]  The PBA Master Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingent claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ." Rider to PBA Master Claim, ¶¶ 19-21.

32.    ***ERS*** — ERS is a trust established by the Commonwealth in 1951 for the economic well-being of public employees.  ERS is an agency of the government, separate and apart from the

---

[4]  Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was initially filed by the Fiscal Agent.

Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.[5]  Purportedly

pursuant to that certain *Pension Funding Bond Resolution*, adopted on January 24, 2008, and

certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the

"ERS Bonds"), in the aggregate original principal amount of approximately $2.9 billion.[6]  BNYM

serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the holders of ERS Bonds,

BNYM filed a master proof of claim in the Commonwealth Title III Case (the "ERS Master

Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 32004.[7]

**C.      Bond Debt Master Proofs of Claim – ERS Title III Case**

8.      On behalf of the holders of ERS bonds, BNYM filed a master proof of claim in the

ERS Title III Case with respect to the ERS Bonds, asserting approximately $3.8 billion in liabilities

plus unliquidated amounts, which was logged by Prime Clerk as Proof of Claim No. 16777 (the

---

[5]  On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to
PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to
PROMESA section 304(a), commencing a case under Title III thereof.

[6]  On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection
to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the
ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*,
rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired
Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official
Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy
Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS
Bonds Against ERS And The Commonwealth* [Case No. 17-3283, ECF No. 6482], on the ground,
among others, that the bond issuance was *ultra vires*.  ERS reserves its rights to challenge the bond
issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*,
and any other grounds set forth in the foregoing objections.

[7]  On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim.  *See
Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section
502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the
Bank of New York Mellon, As Fiscal Agent (Claim No. 16775)* [ECF No. 7075].  For the avoidance
of doubt, this Three Hundred Twenty-Ninth Omnibus Objection is without prejudice to the parties'
rights with respect to such objection, including any rights to intervene, which are reserved.

"ERS Master Proof of Claim," and together with the Commonwealth Master Proofs of Claim, the

"Master Proofs of Claim").

**D.      Bond Debt Issued by the Puerto Rico Aqueducts and Sewers Authority**

9.      PRASA was established pursuant to Act Number 40 of May 1, 1945.  PRASA is a

"public corporation and an autonomous government instrumentality" created for the purpose of

providing water and sewer services on the island.  22 L.P.R.A. § 142, 144.

10.     The PRASA Enabling Act authorizes PRASA to issue bonds.  22 L.P.R.A. § 144(g).

Pursuant thereto, the PRASA governing board has adopted resolutions authorizing PRASA to issue

bonds, including Resolution No. 1583, as amended and restated as of March 7, 2008 ("Resolution

No. 1583").  In 2012, PRASA issued $295,245,000 principal amount of Series 2012 B revenue

bonds (the "2012 Senior Series B Bonds," or the "PRASA Senior Lien Bonds").

11.     Holders of PRASA Senior Lien Bonds have received and continue to receive all

payments owed to holders of the PRASA Bonds in full as they become due and owing.

Accordingly, EMMA reflects that PRASA has not posted any notices of default with respect to the

PRASA Senior Lien Bonds.[8]  In addition, the Commonwealth has not guaranteed repayment of

the Senior Lien Bonds.  Accordingly, the offering statements for the PRASA Senior Lien Bonds

state that they are "not a debt of the Commonwealth of Puerto Rico or any of its municipalities or

other political subdivisions, other than [PRASA], and neither the Commonwealth of Puerto Rico

or any such municipalities or other political subdivisions, other than [PRASA], shall be liable for

the payment of the principal of or interest on said Bonds."[9]

---

[8] *See, e.g.*, https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

[9] *See, e.g.*, Offering Statement for PRASA Revenue Bonds, Series B (Senior Lien), February 15,
2012, available at https://emma.msrb.org/ER584465-ER454076-ER856857.pdf.

E.     **The COFINA Title III Case and Resolution of the Commonwealth-COFINA
       Dispute**

12.     COFINA is a public corporation and instrumentality of the Commonwealth
constituting a corporate and political entity independent and separate from the Commonwealth,
created under Act No. 91 of the Legislative Assembly of the Commonwealth.  Pursuant to that
certain Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as
amended on June 19, 2009, and pursuant to certain supplemental resolutions, COFINA issued a
series of bonds in aggregate approximate amount of $17 billion, to, among other things, defray
certain debt obligations of the Puerto Rico Government Development Bank and the Puerto Rico
Public Finance Corporation (the "COFINA Bonds").

13.     The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment
of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652] on January 9,
2019.  The Court considered confirmation of the Plan and any objections thereto at a hearing on
January 16-17, 2019.

14.     On February 4, 2019, the Court confirmed the Plan, which incorporated the
compromise and settlement of the dispute over whether, after considering all procedural and
substantive defenses and counterclaims, including constitutional issues, the sales and use taxes
purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA
under applicable law (the "Commonwealth-COFINA Dispute"). *See Order and Judgment
Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing
Corporation* [ECF No. 5048].  On the same day, the Court approved the compromise and
settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and
Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax
Financing Corporation* [ECF No. 5045] (the "Settlement Order").  On February 5, 2019, the Court
issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of*

7

*Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "Amended Confirmation Order"). The Plan became effective on February 12, 2019 (the "Effective Date"), when the transactions contemplated therein were consummated. *See Notice of (A) Entry of Order Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case No. 17 BK 3284-LTS, ECF No. 587].

**F.     The GDB Title VI Proceedings and Qualifying Modification**

15.     GDB is a public corporation and governmental instrumentality of the Commonwealth, which was created by the Legislative Assembly in 1948 to aid the government of the Commonwealth (the "Government") in performing its fiscal duties and in more effectively carrying out its responsibility to develop the economy of the Commonwealth. On April 28, 2017, the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which contemplated an orderly wind-down of the operations of GDB based upon the determination that there was no clear path for the long-term viability of GDB based on its then-current financial condition.

16.     On July 12, 2017, the Oversight Board issued a resolution authorizing GDB, pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA. On August 10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to PROMESA section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District Court for the District of Puerto Rico.

17.     On November 7, 2018, the Court approved the Qualifying Modification pursuant to PROMESA section 601(m)(1)(D). *See* ECF No. 270 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018). The Qualifying Modification provides for, among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery

Authority in exchange for the cancellation of, among other things, certain participating bonds and guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB. *Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Aug. 10, 2018).

18.     On November 29, 2018, GDB announced the consummation of the Qualifying Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

**C.     Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections**

19.     To date, approximately 179,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Approximately 52,900 proofs of claim have been filed in relation to, or reclassified to be asserted against, ERS.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

20.     Of the proofs of claim filed, approximately 115,000 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable,

being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

21.     To efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

22.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice,*

*and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

23.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 14 hearings related to over 140 omnibus objections filed by the Commonwealth, COFINA, the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Electric Power Authority ("PREPA"), and/or ERS.  Based upon rulings and orders of the Court to date, approximately 56,000 claims asserting $43.0 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

24.     This Three Hundred Twenty-Ninth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

25.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim.  *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

26.     The Amended Omnibus Objection Procedures allow the Debtors to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy

Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

27.     The Three Hundred Twenty-Ninth Omnibus Objection seeks to disallow in their entirety, in accordance with the Amended Omnibus Objection Procedures, proofs of claim listed on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed"), each of which is based, in part, on (*a*) bonds issued by COFINA, (*b*) bond claims that are duplicative of one or more master proofs of claim filed against the Debtors on behalf of the holders of certain bonds, (*c*) an ownership interest in bonds issued by GDB, (*d*) one or more investments in mutual funds, which in turn may have invested in bonds issued by the Debtors, and/or (*e*) an ownership interest in bonds issued by PRASA, which is not a Title III Debtor, for amounts for which the Debtors have not guaranteed repayment.  **Exhibit A** hereto further specifies why each of the Claims to Be Disallowed should be disallowed in their entirety.

### A.  No Liability for COFINA Bondholder Claims

28.     As identified in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert claims based on an alleged ownership interest in bonds issued by COFINA (collectively the "COFINA Bondholder Claims").

29.     As explained above, the Settlement Order resolved the Commonwealth-COFINA Dispute, and, pursuant to Paragraph 55 of the Settlement Order, all claims against the Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA have been released.  Additionally, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF No. 5045-1], dated October 19, 2018, and attached to the Settlement Order (the "Settlement Agreement"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has been dismissed with prejudice following the approval of the compromise and settlement of the

Commonwealth-COFINA Dispute.  Furthermore, pursuant to Paragraph 29(f) of the Amended

Confirmation Order, claims, such as the COFINA Bondholder Claims, that arose from or relate to

the relationship of the Commonwealth and COFINA were released.  Amended Confirmation

Order, ¶ 29(f).[10]  For all of these reasons, the COFINA Bondholder Claims should be disallowed

because these claims based on an apparent alleged ownership interest in COFINA Bonds have

been satisfied, released, and/or discharged pursuant to the Settlement Order, Settlement

Agreement, Amended Confirmation Order, and Plan.

### B.  No Liability for GDB Bondholder Claims

30.     As identified in **Exhibit A** hereto, certain Claims to Be Disallowed purport to

assert, in whole or in part, claims based on the alleged ownership of bonds issued by GDB

(collectively the "GDB Bondholder Claims").[11]

31.     Each of the GDB Bondholder Claims purports to be based in whole or in part on

the ownership of GDB Bonds that were subject to the Qualifying Modification, which provided

for the issuance of new securities in exchange for the cancellation of the GDB Bonds and the

extinguishment of the Commonwealth's guarantee of certain GDB Bonds, and thus the

---

[10] Pursuant to the Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise."  Plan § 1.53.

[11] Another claim subject to the Three Hundred Twenty-Ninth Omnibus Objection was filed against ERS and asserts GDB Bonds.  To the extent the claim seeks to assert GDB Bond claims against ERS, it has failed to provide a basis to assert such claims against ERS arising from GDB Bonds. To the extent the claim was intended to assert a claim against the Commonwealth, the Commonwealth is not liable for the reasons set forth in paragraph 28 of the Three Hundred Twenty-Ninth Omnibus Objection.

Commonwealth is no longer liable for these claims. Accordingly, each of the GDB Bondholder Claims has been released pursuant to the approval and consummation of the Qualifying Modification. As noted above, the Qualifying Modification provides, among other things, that holders of GDB Bonds shall release GDB and its affiliates from claims relating to the GDB Bonds and any action or omission of GDB and its affiliates with respect to any indebtedness of or loan to GDB. GDB is a public corporation and instrumentality of the Commonwealth. The Commonwealth, thus, is an affiliate of GDB within the scope of the release pursuant to the Qualifying Modification. Accordingly, the GDB Bondholder Claims were released upon the consummation of the Qualifying Modification on November 29, 2018. Because the GDB Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be disallowed because they seek recovery of amounts for which the Commonwealth is not liable.

### C.  No Liability for Claims Based on Investments in Mutual Funds

32.     As identified in **Exhibit A** hereto, certain Claims to Be Disallowed purport to be based in part on investment(s) in one or more mutual funds that, in turn, may have invested in bonds issued by the Debtors (collectively, the "Mutual Funds Claims").

33.     A claimant bears the burden of establishing standing to file a proof of claim. *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010). It is well-established that only a creditor or the creditor's authorized agent has standing to assert a claim. Fed. R. Bankr. P. 3001(b); 11 U.S.C. §§ 501(a) ("A creditor or an indenture trustee may file a proof of claim."); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Only a creditor or indenture trustee may file a proof of claim."). Parties with merely derivative interests lack standing to assert a claim against a debtor's estate. *Matter of Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (finding party with "relationship with Debtor [that] is not direct, but rather derivative" was "a stranger to Debtor's

14

bankruptcy proceedings," with "no claim against the estate's assets," and "as a general rule has no standing in Debtor's bankruptcy proceedings"); *see also In re Tower Park Properties, LLC*, 803 F.3d 450, 462-63 (9th Cir. 2015) (holding a trust beneficiary was not a party in interest); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights of a party in interest are asserted, those rights must be asserted by the party in interest, not someone else."); *In re Lopez*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (to establish oneself as a party in interest "the moving party must be asserting its own rights and not those belonging to or derivative of a third party"); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (recognizing the "general principle that 'party in interest standing does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding'" (quoting *In re Refco*, 505 F.3d at 115 n. 10)).

34.     "A creditor, under the [Bankruptcy] Code, is one who has a claim *against the debtor* or the estate," rather than "a creditor of one of the debtor's creditors." *S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Because, at most, the Mutual Funds Claims were filed based on the claimant's status as an alleged creditor of an alleged creditor of the Commonwealth, the Mutual Funds Claims were not filed by an actual creditor of the Commonwealth. *See In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (holding receiver lacked standing to file a proof of claim because it was not a creditor or an authorized agent of a creditor). Instead, the Mutual Funds Claims are derivative of claims that must be asserted by the mutual funds directly for any claimed recovery to be considered by the Court. *See Matter of Goldman*, 82 B.R. at 896 (finding party with "derivative" relationship has "no claim against the estate's asset" and "as a general rule has no standing in Debtor's bankruptcy proceedings"). Moreover, it is unknown whether the mutual fund still retains ownership of the suspect bonds.

35.     Indeed, under nearly identical circumstances, this Court previously disallowed claims filed against COFINA by investors in mutual funds that in turn allegedly invested in COFINA bonds for "lack of an individual interest in COFINA securities." *Tr. of March 13, 2019 Hr'g Before the Hon. Laura Taylor Swain* [ECF No. 5969], at 64:01-10 ("THE COURT: So just so that I understand, his documentation shows that he is a mutual fund investor.  To the extent any of those mutual funds actually holds COFINA bonds, the mutual fund would be the appropriate claimant, and so he has provided no evidence of a valid direct claim as against COFINA?  MS. STAFFORD: Correct, your Honor.  THE COURT: The objection to the claim is sustained and the claim is disallowed for lack of an individual interest in COFINA securities."); *see also Order Granting Sixty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Claims Based on Investments in Mutual Funds* [ECF No. 9099]; *Memorandum Order Denying Motion to Alter or Amend Order Sustaining Objection (Dkt. 8297) to Claims No. 152470 & No. 152283* [ECF No. 9121].  Accordingly, the claimants are not creditors of the Commonwealth and lack standing to assert derivative claims.  Because the Commonwealth cannot be held liable for the Mutual Funds Claims, these claims should be disallowed in their entirety

### D.  No Liability for Partial Duplicate Bond Claims

36.     As set forth in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert liability, in part, on the basis of bonds issued by ERS and PBA (collectively, the "Duplicate Bond Claims").

37.     Each of the Duplicate Bond Claims appear to purport to assert, in part, liability against the Debtors associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Title III Cases on behalf of the holders of certain bonds issued by ERS and PBA.  Any failure to disallow the Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the

Debtors, to the detriment of other stakeholders in the Debtors' Title III Cases. The holders of the Duplicate Bond Claims will not be prejudiced by the disallowance of their claims because the liabilities associated with the Duplicate Bond Claims are subsumed within one or more Master Claims.

### E. No Liability for PRASA Senior Lien Bonds

38.     As identified in **Exhibit A** hereto, one Claim to Be Disallowed purports to assert claims based on the alleged ownership of bonds issued by PRASA (the "PRASA Senior Lien Bondholder Claim").

39.     The PRASA Senior Lien Bondholder Claims asserts liabilities associated with PRASA Senior Lien Bonds issued by PRASA, which is not a Title III Debtor, and is a separate, legally distinct entity from the Debtors. In addition, the Debtors have not guaranteed repayment for the Senior Lien Bonds. The PRASA Senior Lien Bondholder Claim does not assert a basis for asserting a claim against the Debtors for bonds issued by PRASA that are not guaranteed by the Debtors. Because of this failure to comply with the applicable rules, neither the Debtors nor the Court are able to determine the validity of the PRASA Senior Lien Bondholder Claim.

40.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Three Hundred Twenty-Ninth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Duplicate and No Liability Bond Claims*, dated April 30, 2021, attached hereto as **Exhibit B**.

### NOTICE

41.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Debtors are providing notice of this Three Hundred Twenty-Ninth Omnibus Objection to (a) the individual creditors subject to this Three Hundred Twenty-Ninth Omnibus

Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Fourteenth Amended Case Management Procedures* [ECF No. 15894-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.   The notice for this Three Hundred Twenty-Ninth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Three Hundred Twenty-Ninth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

42.     This Three Hundred Twenty-Ninth Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors or the rights of any other party in interest in the Title III Cases to object to the Claims to Be Disallowed or any other claims on any ground whatsoever.   The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases under PROMESA, the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

43.     No prior request for the relief sought in this Three Hundred Twenty-Ninth Omnibus Objection has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

18

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form

of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and

(2) granting such other and further relief as is just.

Dated: April 30, 2021
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board for
Puerto Rico, as representative of the
Commonwealth of Puerto Rico and the
Employees Retirement System for the
Government of the Commonwealth of
Puerto Rico*

19

**Fecha de la vista: 16 de junio de 2021, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 2 de junio de 2021, a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

### TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>    como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,<br><br>                Deudores.[1] | PROMESA<br>Título III<br><br>núm. 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA y el SRE.** |

---

### TRICENTÉSIMA VIGÉSIMA NOVENA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DEL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES POR BONOS DUPLICADAS Y EN LAS QUE NO EXISTE RESPONSABILIDAD

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA") y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE", y junto con el ELA, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III de los Deudores conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican esta tricentésima vigésima novena objeción global (la "Tricentésima vigésima novena objeción global") a las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento, cada una de las cuales se basa parcialmente en *a*) bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), *b*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas, *c*) una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento para Puerto Rico (el "BGF"), *d*) una o más inversiones en fondos mutuos que a su vez pudieren haber invertido en bonos emitidos por los Deudores, y/o e) una participación patrimonial en bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico (la "AAA"), que no es un Deudor de Título III, por unos montos por los que los Deudores no han garantizado el reembolso. En apoyo de la Tricentésima vigésima novena objeción global, los Deudores manifiestan respetuosamente lo siguiente:

## JURISDICCIÓN

1.     El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de

PROMESA.

## ANTECEDENTES

**A.      Órdenes de Fecha Límite**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de

reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición

voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso

conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de

2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones

104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el SRE conforme a

la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal

(el "Caso de Título III del SRE", y junto con el Caso de Título III del ELA, los "Casos de Título

III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración

conjunta de los Casos de Título III únicamente con fines procesales. ECF núm. 537.[3]

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije

fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y

la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Conforme a la

*Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B)

aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha

Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas

límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de

Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos
radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.     Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III del ELA**

5.     Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de reclamaciones por bonos para la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, se han radicado evidencias de reclamaciones principales (conjuntamente, la "Reclamaciones Principales del ELA") en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés emitidos por el SRE y la Autoridad de Edificios Públicos de Puerto Rico (la "AEP").

6.     *AEP*: la AEP emitió supuestamente Bonos de Renta para financiar edificios de oficinas y otras instalaciones arrendadas a varios departamentos, agencias públicas e instrumentalidades del ELA. US Bank y US Bank Trust actúan como agentes fiscales en relación con determinados bonos de renta emitidos por la AEP, conforme a lo explicado en la nota al pie 3 de la Evidencia de reclamación núm. 62833 (los "Bonos de la AEP"), y, en nombre de los tenedores de los Bonos de la AEP, radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA por todos los montos pendientes de pago adeudados (la "Reclamación Principal de la AEP"), que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm.

4

62833. [4] La Reclamación Principal de la AEP alega reclamaciones liquidadas por aproximadamente $4000 millones en concepto de principal supuestamente impagado, $160 millones en concepto de intereses supuestamente impagados y reembolso de comisiones y gastos de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por la totalidad de los montos adeudados "en razón de la totalidad de las reclamaciones que el Agente Fiscal tenga o pueda tener en relación con las obligaciones de Bonos pendientes, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA". . . ."  Cláusula Adicional de la Reclamación Principal de la AEP, ¶¶ 19-21.

7.  **_SRE_**: el SRE es un trust establecido por el ELA en 1951 para fomentar el bienestar económico de los empleados públicos. El SRE es un organismo gubernamental, aparte e independiente del Gobierno del ELA y de sus demás instrumentalidades. *Véase* 3 L.P.R.A § 775.[5] Supuestamente conforme a la *Resolución sobre bonos para el financiamiento de pensiones*, adoptada el 24 de enero de 2008, y ciertas resoluciones complementarias, el SRE emitió unos bonos preferentes y subordinados para el financiamiento de pensiones (los "Bonos del SRE"), por un monto total del principal original de aproximadamente $2900 millones.[6] BNYM actúa como agente fiscal con respecto a los Bonos del SRE. Actuando en nombre de los tenedores de los Bonos

---

[4]  La evidencia de reclamación núm. 62833 enmendó y sustituyó a la Evidencia de reclamación núm. 13351, que fue radicada inicialmente por el Agente Fiscal.

[5]  El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el SRE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal.

[6]  El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción global a reclamaciones radicadas por los tenedores de bonos emitidos por el SRE* [Caso núm. 17-3566, ECF núm. 381], basándose en que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*, anulando de pleno derecho los Bonos del SRE. El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico radicó una *Objeción Global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a las reclamaciones radicadas o alegadas por los tenedores de los Bonos del SRE contra el SRE y el ELA* [Caso núm. 17-3283, ECF núm. 6482], basándose, entre otras cosas, en que la emisión de los bonos fue *ultra vires*. El SRE se reserva el derecho a impugnar la emisión de los bonos sobre cualquier motivo, incluso sobre el motivo de que los bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

del SRE, BNYM radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA (la "Reclamación Principal del SRE", que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 32004.[7]

**C.   Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso del Título III  del SRE**

8.   Actuando en nombre de los tenedores de los Bonos del SRE, BNYM presentó una evidencia de reclamación principal en el marco del Caso de Título III del SRE en relación con los Bonos del SRE, reclamando aproximadamente $3800 millones en concepto de responsabilidades más montos no liquidados, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 16777 (la "Evidencia de Reclamación Principal del SRE", y junto con las Evidencias de Reclamaciones Principales del ELA, las "Evidencias de Reclamaciones Principales").

**D.   Deuda de los bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico**

9.   La AAA fue creada de conformidad con la Ley núm. 40 del 1 de mayo de 1945. La AAA es una "corporación pública e instrumentalidad gubernamental autónoma", creada para la prestación de los servicios de suministro de agua y alcantarillado en la isla. 22 L.P.R.A. § 142, 144.

10.   La Ley para crear la AAA autoriza a la AAA a emitir bonos. 22 L.P.R.A. § 144(g). Conforme a dicha Ley, la junta directiva de la AAA adoptó resoluciones que autorizan a la AAA a emitir bonos, lo que incluye la Resolución núm. 1583, en su versión enmendada y modificada el

---

[7] El 22 de mayo de 2019, el ELA radicó una objeción a la Evidencia de Reclamación principal del SRE. Véase Objeción de la Junta de Supervisión y Administración Financiera, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a las reclamaciones radicadas o alegadas contra el ELA por el Bank of New York Mellon, como agente fiscal (Reclamación núm. 16775) [ECF núm. 7075]. En aras de la claridad, la presente Tricentésima vigésima novena objeción global se radica sin perjuicio de los derechos de las partes en relación con dicha objeción, incluyendo cualesquiera derechos a intervenir, que quedan reservados.

6

7 de marzo de 2008 (la "Resolución núm. 1583"). En 2012, la AAA emitió unos bonos de renta,

Serie 2012 B, por un monto del principal de $295,245,000 (los "Bonos Prioritarios Serie B de

2012" o los "Bonos de Gravamen Prioritarios de la AAA").

      11.     Los tenedores de los Bonos de Gravamen Prioritarios de la AAA han recibido, y

siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales tenedores de Bonos de la

AAA, a medida que estos vencen y se vuelven pagaderos. En consecuencia, el EMMA refleja que

la AAA no ha publicado ninguna notificación de incumplimiento en relación con los Bonos de

Gravamen Prioritarios de la AAA.[8] Además, el ELA no ha garantizado el reembolso de los Bonos

de Gravamen Prioritarios. En consecuencia, las declaraciones de oferta relativas a los Bonos de

Gravamen Prioritarios de la AAA indican que "no constituyen deuda del Estado Libre Asociado

de Puerto Rico ni de ninguno de sus municipios u otras subdivisiones políticas, con la excepción

de [la AAA], por lo que ni el Estado Libre Asociado de Puerto Rico ni ningunos de dichos

municipios u otras subdivisiones políticas, con la excepción de [la AAA], será responsable por el

pago del principal o de los intereses sobre los referidos Bonos".[9]

## E.    Caso de Título III de COFINA y resolución de la controversia entre el ELA y COFINA

      12.     COFINA es una corporación pública e instrumentalidad del ELA, que constituye

una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm.

91 de la Asamblea Legislativa del ELA. Conforme a la Resolución enmendada y modificada sobre

los bonos del fondo de interés apremiante, adoptada el 13 de julio de 2007, en su versión

enmendada del 19 de junio de 2009, y de conformidad con otras resoluciones complementarias,

COFINA emitió una serie de bonos por un monto total de aproximadamente $17,000 millones

---

[8] *Véase, por ejemplo*, https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

[9] *Véase, por ejemplo,* Declaración de Oferta relativa a los Bonos de Renta de la AAA, Serie B (Gravamen Prioritario),
15 de febrero de 2012, disponible en https://emma.msrb.org/ER584465-ER454076-ER856857.pdf.

para, entre otras cosas, sufragar determinadas obligaciones de deuda del Banco Gubernamental de Fomento para Puerto Rico y de la Corporación para el Financiamiento Público de Puerto Rico (los "Bonos de COFINA").

13.     La Junta de Supervisión radicó el *Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* (el "Plan") [ECF núm. 4652] el 9 de enero de 2019. El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista celebrada los días 16 y 17 de enero de 2019.

14.     El 4 de febrero de 2019, el Tribunal confirmó el Plan que incorporaba el pacto y la conciliación de la controversia sobre si, luego de examinar todas las contestaciones y reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos sobre la venta y uso supuestamente empeñados por COFINA para garantizar la deuda son propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia entre el ELA y COFINA"). *Véase la Orden y la Sentencia que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5048]. Ese mismo día, el Tribunal aprobó el pacto y la conciliación de la Controversia entre el ELA y COFINA conforme al *Dictamen abreviado y orden que aprueba la conciliación entre el Estado Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés Apremiante de Puerto Rico* [ECF núm. 5045] (la "Orden de Conciliación"). El 5 de febrero de 2019, el Tribunal dictó una *Orden y Sentencia enmendadas que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5055] (la "Orden de Confirmación Enmendada"). El Plan entró en vigor el 12 de febrero de 2019 (la "Fecha de Entrada en Vigor"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante*

*de Puerto Rico elaborado conforme al Título III, según el Título III de PROMESA, y B)*
*acontecimiento de la Fecha de Entrada en Vigor* [Caso núm. 17 BK 3284-LTS, ECF núm. 587].

**F.     Procedimientos conforme al Título VI del BGF y modificación calificada**

15.     El BGF es una entidad pública e instrumentalidad gubernamental del ELA, creada
por la Asamblea Legislativa en 1948 para ayudar al Gobierno del ELA (el "Gobierno") a llevar a
cabo sus tareas fiscales y a desempeñar su responsabilidad con mayor eficacia en relación con el
desarrollo de la economía del ELA. El 28 de abril de 2017, la Junta de Supervisión aprobó por
unanimidad el Plan fiscal del BGF de febrero de 2017, que contemplaba una terminación ordenada
de las actividades del BGF sobre la base de la determinación de que el BGF no era viable a largo
plazo dadas sus condiciones financieras vigentes en ese momento.

16.     El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se
autorizaba al BGF, conforme a la sección 601(e) de PROMESA, a ampararse en el Título VI de
PROMESA. El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una
modificación calificada, conforme a la sección 601(m)(1)(D) de PROMESA (la "Modificación
Calificada"), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

17.     El 7 de noviembre de 2018, el Tribunal aprobó la Modificación Calificada
conforme a la sección 601(m)(1)(D) de PROMESA. *Véase* ECF núm. 270 en *Banco
Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 7 de nov. de 2018). La
Modificación Calificada dispone, entre otras cosas, i) la emisión de nuevos bonos por la recién
creada Autoridad de Recuperación de Deuda del BGF (*GDB Debt Recovery Authority*) a cambio
de la cancelación (entre otras cosas) de determinados bonos de participación y reclamaciones de
bonos garantizados (conjuntamente, "Bonos del BGF"); ii) la extinción de la garantía del ELA de
los bonos garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la
liberación de reclamaciones de los tenedores de Bonos del BGF contra el BGF y sus afiliados en

9

relación con (entre otras cosas) cualquier inversión con el BGF o la compra, venta o transferencia

de cualquier título valor o participación del BGF, y cualquier acción u omisión con respecto a

cualquier endeudamiento o préstamo al BGF (incluidos cualesquiera pagarés emitidos o depósitos

mantenidos por el BGF) o del BGF. *Declaración de Solicitación,* en 57-60, ECF núm. 1 a 15 en

*Banco Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 10 de ago. de

2018).

18.    El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación

Calificada del BGF. Nota de prensa, *el Gobierno de Puerto Rico anuncia la consumación de la*

*Modificación Calificada del BGF*, gobernador de Puerto Rico (29 de nov. de 2018), *disponible en*

http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-

modification.pdf.

**C.    Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones**
**globales y objeciones a reclamaciones**

19.    Hasta la fecha, se han radicado aproximadamente 179,000 evidencias de

reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC.

Aproximadamente 52,900 evidencias de reclamaciones han sido radicadas en relación con el SRE,

o reclasificadas como radicadas contra el SRE. Dichas evidencias de reclamaciones ascienden a

un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de

los montos no liquidados reclamados.

20.    De las evidencias de reclamaciones radicadas, aproximadamente 115,000 han sido

radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad

con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que

haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido

enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables,

estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información

necesaria para que los Deudores determinen si la reclamación es válida.

21.     Para resolver eficazmente el mayor número posible de las evidencias de

reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su

*Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a*

*objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de*

*Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos

Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales

mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba*

*procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la*

*regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm.

4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los

"Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el

Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a

las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales

relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y*

*en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la

"Orden de Notificación").

22.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de

reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a

procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar

objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que

pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de*

*vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a*

*Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

23.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la fecha más de 14 vistas vinculadas con más de 140 objeciones globales radicadas por el ELA, COFINA, la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban $43.0 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

24.     Esta Tricentésima vigésima novena objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

25.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Aunque una evidencia de reclamación debidamente formalizada y radicada constituye una prueba *prima facie* de la validez de la reclamación, *véase* R. del Proc. de Quiebr. 3001(f), aplicable a este caso en virtud de la sección 310 de PROMESA, la parte objetante podrá superar

12

dicha evidencia *prima facie* con evidencias que, de creerse, refutarían al menos una de las alegaciones esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que una parte objetante haya introducido evidencias suficientes para refutar el caso *prima facie* del reclamante". (se omite cita)).

26.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los Deudores radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

27.     La Tricentésima vigésima novena objeción global pretende que se rechacen en su totalidad, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, evidencias de reclamaciones que aparecen en el **<u>Anexo A</u>** del presente documento (conjuntamente, las "<u>Reclamaciones que han de ser rechazadas</u>"), cada una de las cuales se basa parcialmente en *a)* bonos emitidos por COFINA, *b)* reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas, *c)* una participación patrimonial en bonos emitidos por el BGF, *d)* una o más inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por los Deudores, y/o *e)* una participación patrimonial en bonos emitidos por la AAA, que no es un Deudor de Título III, por unos montos por los que los Deudores no han garantizado el reembolso. El **<u>Anexo A</u>** especifica además por qué cada una de las Reclamaciones que han de ser rechazadas debe ser rechazada en su totalidad.

13

### A. Ausencia de responsabilidad por reclamaciones de los bonistas de COFINA

28.    Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas en una supuesta participación patrimonial en bonos emitidos por COFINA (conjuntamente, las "<u>Reclamaciones de los Bonistas de COFINA</u>").

29.    Como se explicó anteriormente, la Orden de Conciliación resolvió la Controversia entre el ELA y COFINA y, conforme al párrafo 55 de la Orden de Conciliación, la totalidad de las reclamaciones contra el ELA, surgidas o vinculadas con la relación del ELA y COFINA, han sido liberadas. Además, conforme al párrafo 3(c) del *Acuerdo de Conciliación* [ECF núm. 5045-1], de fecha 19 de octubre de 2018, que se adjunta a la Orden de Conciliación (el "<u>Acuerdo de Conciliación</u>"), y el párrafo 7 de la Orden de Confirmación Enmendada, el procedimiento contencioso entre el ELA y COFINA sobre la Controversia entre el ELA y COFINA ha sido desestimado de forma definitiva luego de la aprobación del pacto y la conciliación de la Controversia entre el ELA y COFINA. Además, conforme al párrafo 29(f) de la Orden de Confirmación Enmendada, reclamaciones (tales como las Reclamaciones de los Bonistas de COFINA) que surgieron de o están vinculadas con la relación entre el ELA y COFINA, fueron liberadas. Orden de Confirmación Enmendada, ¶ 29(f). [10]   Por todos esos motivos, las Reclamaciones de los Bonistas de COFINA deben rechazarse porque dichas reclamaciones basadas en una supuesta y aparente participación patrimonial en los Bonos de COFINA han sido

---

[10] Conforme al Plan, una "Reclamación" se define como "[c]ualquier derecho a un pago o cumplimiento, independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, contingente, vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado, conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por incumplimiento o ejecución de un cumplimiento, independientemente de si tal derecho a un remedio en equidad consta en una sentencia, es fijo, contingente, vencido, no vencido, controvertido, no controvertido, garantizado o no garantizado, y la totalidad de las deudas, procesos, indemnizaciones por daños y perjuicios, derechos, remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas de acción, procedimientos o reclamaciones de cualquier tipo o naturaleza, en derecho, equidad o de cualquier otra forma". Plan § 1.53.

satisfechas, liberadas y/o liquidadas conforme a la Orden de Conciliación, el Acuerdo de

Conciliación, la Orden de Confirmación Enmendada y el Plan.

**B. Ausencia de responsabilidad por reclamaciones de los Bonistas del BGF**

30.     Conforme a lo identificado en el **Anexo A** del presente documento, determinadas

Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas, total o

parcialmente, en la supuesta participación patrimonial en bonos emitidos por el BGF

(conjuntamente, las "Reclamaciones de los Bonistas del BGF").[11]

31.     Cada una de las Reclamaciones de los Bonistas del BGF pretende basarse total o

parcialmente en la propiedad de los Bonos del BGF objeto de la Modificación Calificada, que

dispuso la emisión de nuevos títulos valores a cambio de la cancelación de los Bonos del BGF y

la extinción de la garantía del ELA relativa a determinados Bonos del BGF, por lo que el ELA ya

no tiene responsabilidad con respecto a dichas reclamaciones. En consecuencia, cada una de las

Reclamaciones de los Bonistas del BGF ha sido liberada conforme a la aprobación y la

consumación de la Modificación Calificada. Como se señaló anteriormente, la Modificación

Calificada dispone, entre otras cosas, que los tenedores de los Bonos del BGF liberarán al BGF y

sus afiliados de las reclamaciones relacionadas con los Bonos del BGF, y de cualquier acción u

omisión del BGF y sus afiliados con respecto a todo endeudamiento del BGF o préstamo al BGF.

El BGF es una entidad e instrumentalidad pública del ELA. En consecuencia, el ELA es un afiliado

del BGF dentro del alcance de la liberación conforme a la Modificación Calificada. Por lo tanto,

las Reclamaciones de los Bonistas del BGF fueron liberadas tras la consumación de la

---

[11] Otra reclamación sujeta a la Tricentésima Vigésima Novena Objeción Global fue presentada contra el SRE y afirma bonos del BGF.  En la medida en que la reclamación busque hacer valer los bonos del BGF contra el SRE, no han pedido proporcionar una base para hacer valer tales reclamaciones contra el SRE que surgen be los bonos del BGF. En la medida en que la reclamación estaba destinada hacer valer los bonos contra El Estado Libre Asociado de Puerto Rico, El Estado Libre Asociado de Puerto Rico no es responsable por las razones establecido en el párrafo 28 de la Tricentésima Vigésima Novena Objeción Global.

Modificación Calificada el 29 de noviembre de 2018. Puesto que las Reclamaciones de los Bonistas del BGF son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no es responsable.

**C. Ausencia de responsabilidad relativa a reclamaciones basadas en inversiones en fondos mutuos**

32.     Conforme a lo identificado en el **<u>Anexo A</u>** del presente, determinadas Reclamaciones que han de ser rechazadas pretenden basarse parcialmente en inversión(es) en uno o más fondos mutuos que, a su vez, pudieron haber invertido en bonos emitidos por los Deudores (conjuntamente, las "<u>Reclamaciones de los Fondos Mutuos</u>").

33.     Los reclamantes tienen la carga de demostrar su legitimación para radicar una evidencia de reclamación. *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010). Es ampliamente aceptado que solo los acreedores o sus representantes autorizados están legitimados para radicar reclamaciones. Reg. Fed. del Proc. de Quiebr. 3001(b); Título 11 U.S.C., §§ 501(a) ("Los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones"); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Solo los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones".). Las partes que solo tengan intereses derivados carecen de legitimación para radicar reclamaciones contra el patrimonio de un deudor. *Caso Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (donde se concluyó que una parte con "una relación con el Deudor [que] no es directa, sino más bien derivada era "persona ajena al procedimiento de quiebra del Deudor", sin "ninguna posibilidad de reclamar contra los activos del patrimonio" y "como regla general, carece de legitimación en relación con el procedimiento de quiebra del Deudor".); *véase también In re Tower Park Properties, LLC,* 803 F.3d 450, 462-63 (9th Cir. 2015) (donde se concluyó que un beneficiario de un fideicomiso no era una parte interesada); *In re Refco Inc.*, 505

16

F.3d 109, 117 (2d Cir. 2007) ("En la medida en que se hagan valer los derechos de una parte

interesada, esos derechos han de hacerse valer por dicha parte interesada, no por un tercero".); *In

re López*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (para constituirse como parte interesada "la

parte solicitante deberá hacer valer sus propios derechos y no aquellos que asistan a un tercero o

que se deriven en relación con tal tercero".); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass.

2008) (donde se reconoce el "principio general de que 'no se da legitimación de una parte

interesada si la parte pretende hacer valer un derecho que es puramente derivado de los derechos

de otra parte en el procedimiento de quiebras'" (que cita *In re Refco*, 505 F.3d en 115 n. 10)).

34.    "Un acreedor, conforme al Código [de Quiebras], es aquel que tiene una

reclamación contra el deudor o el patrimonio", en lugar de "un acreedor de uno de los acreedores

del deudor". *S. Blvd., Inc. c. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Ya que, a lo

sumo, las Reclamaciones de los Fondos Mutuos fueron radicadas en virtud de la condición del

reclamante como presunto acreedor de un presunto acreedor del ELA, las Reclamaciones de los

Fondos Mutuos no fueron radicadas por un acreedor real del ELA. *Véase In re Thalmann*, 469

B.R. 677, 683 (Bankr. S.D. Tex. 2012) (donde se concluye que el síndico carecía de legitimación

para radicar evidencias de reclamaciones porque no era acreedor ni agente autorizado de un

acreedor). En cambio, las Reclamaciones de los Fondos Mutuos se derivan de reclamaciones que

deben hacerse valer directamente por los fondos mutuos para que el Tribunal examine cualquier

recuperación alegada. *Véase el caso Goldman*, 82 B.R. en 896 (donde se concluye que una parte

con una relación "derivada" no puede "reclamar contra los activos del patrimonio" y "como regla

general, carece de legitimación en el procedimiento de quiebras del Deudor"). Es más, no se sabe

si el fondo mutuo sigue ostentando la propiedad de los bonos controvertidos.

35.    En efecto, en unas circunstancias casi idénticas, el Tribunal ya rechazó

reclamaciones radicadas contra COFINA por unos inversores en fondos mutuos que, a su vez,

supuestamente invirtieron en los bonos de COFINA, por "carecer de interés individual en los títulos valores de COFINA". *Transcripción del 13 de marzo de 2019 de la audiencia ante su señoría, Laura Taylor Swain* [ECF núm. 5969], en 64:01-10 ("EL TRIBUNAL: Entonces, para que yo lo entienda, su documentación muestra que es inversor en un fondo mutuo. En la medida en que cualquiera de esos fondos mutuos posea realmente los bonos de COFINA, el fondo mutuo sería el reclamante pertinente, ¿así que no proporcionó ninguna evidencia de una reclamación directa válida contra COFINA? SRA. STAFFORD: Así es, señoría. EL TRIBUNAL: Se concede la objeción a la reclamación, y se rechaza la reclamación por falta de interés individual en títulos valores de COFINA."); *véase también la Orden por la que se concede la Sexagésima cuarta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones basadas en las inversiones en fondos mutuos* [ECF núm. 9099]; *Orden de memorando por la que se rechaza la moción para alterar o enmendar la orden que concede la objeción (extr. 8297) a las Reclamaciones núms. 152470 y 152283)* [ECF núm. 9121]. En consecuencia, los reclamantes no son acreedores del ELA y carecen de legitimación para hacer valer reclamaciones derivadas. Puesto que al ELA no se le puede atribuir la responsabilidad por las Reclamaciones de los Fondos Mutuos, dichas reclamaciones deben rechazarse en su totalidad.

**D.  Ausencia de responsabilidad por reclamaciones parcialmente duplicadas por bonos**

36.  Según se expone en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar responsabilidad, en parte, sobre la base de bonos emitidos por el SRE y la AEP (conjuntamente, las "Reclamaciones Duplicadas por Bonos").

37.  Cada una de las Reclamaciones Duplicadas por Bonos parece pretender alegar, en parte, responsabilidad contra los Deudores vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron

18

radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos

emitidos por el SRE y la AEP. Si las Reclamaciones Duplicadas por Bonos no son rechazadas, ello

resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación

duplicada no justificada contra los Deudores en detrimento de otras partes interesadas en los Casos

de Título III de los Deudores. Los titulares de las Reclamaciones Duplicadas por Bonos no se verán

perjudicados por el hecho de que se rechacen sus reclamaciones, puesto que las responsabilidades

relacionadas con las Reclamaciones Duplicadas por Bonos figuran en una o más Reclamaciones

Principales.

### E.  Ausencia de responsabilidad por los Bonos de Gravamen Prioritarios de la AAA

38.     Conforme a lo identificado en el **Anexo A** del presente documento, una

Reclamación que ha de ser rechazada pretende alegar reclamaciones basadas en la supuesta

posesión de bonos emitidos por la AAA (la "Reclamación de Bonistas de Gravamen Prioritario de

la AAA").

39.     Las Reclamaciones de Bonistas de Gravamen Prioritario de la AAA alegan

responsabilidades vinculadas con los Bonos de Gravamen Prioritarios de la AAA emitidos por la

AAA, que no es un Deudor de Título III, y es una entidad aparte y jurídicamente independiente de

los Deudores. Además, los Deudores no han garantizado el reembolso de los Bonos de Gravamen

Prioritarios. La Reclamación de Bonistas de Gravamen Prioritario de la AAA no proporciona

fundamento alguno para alegar una reclamación contra los Deudores por los bonos emitidos por

la AAA que no están garantizados por los Deudores. Como consecuencia de dicho incumplimiento

de la normativa aplicable, ni los Deudores ni el Tribunal pueden determinar la validez de la

Reclamación de Bonistas de Gravamen Prioritario de la AAA.

40.     En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en*

*apoyo de la Tricentésima vigésima novena objeción global (no sustantiva) del Estado Libre*

*Asociado de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico a Reclamaciones por bonos duplicadas y en las que no existe responsabilidad*, de fecha 30 de abril de 2021, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

41.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores notifican la presente Tricentésima vigésima novena objeción global a) a los acreedores individuales objeto de esta Tricentésima vigésima novena objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 14* [ECF núm. 15894-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación de esta Tricentésima vigésima novena objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Tricentésima vigésima novena objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

42.     La presente Tricentésima vigésima novena objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas en dichos Casos de Título III, a objetar a las Reclamaciones que han de ser rechazadas o a cualesquiera otras reclamaciones sobre la base de los motivos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones

20

contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas en los Casos de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores, o a cualesquiera otras partes interesadas en los Casos de Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## <u>AUSENCIA DE SOLICITUDES PREVIAS</u>

43.     No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima vigésima novena objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.


[*El resto de la página se deja en blanco intencionadamente*]

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

Fecha: 30 de abril de 2021
      San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico.*

22