UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO
RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO
et al.,

                    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO
RICO,

    as representative of

PUERTO RICO ELECTRIC POWER
AUTHORITY,

                    Debtor.

PROMESA
Title III

No. 17 BK 4780-LTS

------------------------------------------------------------x

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

MEMORANDUM ORDER GRANTING GOVERNMENT PARTIES' MOTION FOR ORDER
ALLOWING ADMINISTRATIVE EXPENSE CLAIM FOR AMOUNTS TO BE PAID TO LUMA ENERGY BY
PREPA DURING INTERIM PERIOD UNDER SUPPLEMENTAL AGREEMENT AND THE T&D CONTRACT

Before the Court is the *Government Parties' Motion for Order Allowing Administrative Expense Claim for Amounts to Be Paid to LUMA Energy by PREPA During Interim Period Under Supplemental Agreement and the T&D Contract* (Docket Entry No. 2417 in Case No. 17-4780 and Docket Entry No. 16241 in Case No. 17-3283, the "Motion").[2] Through the Motion, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and the Puerto Rico Electric Power Authority ("PREPA" and, collectively with the Oversight Board and AAFAF, the "Government Parties") seek entry of an order allowing an administrative claim in favor of LUMA Energy, LLC and LUMA Energy ServCo, LLC (together, "LUMA Energy") for certain accrued and unpaid amounts required to be paid by PREPA to LUMA Energy under the Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement (Docket Entry No. 2053-4, the "T&D Contract"), dated June 22, 2020, and the supplemental agreement thereto (the "Supplemental Agreement"), entered into by and among PREPA, the Puerto Rico Public-Private Partnerships Authority, and LUMA Energy.

The Court heard oral argument with respect to the Motion on April 28, 2021, and has considered carefully all of the submissions and arguments made in connection with the Motion.[3] The Court has subject matter jurisdiction of this contested matter pursuant to section

---

[2]  Unless otherwise specified, all docket entry references in the remainder of this Memorandum Order are to entries in Case No. 17-4780.

[3]  In addition to the Motion, the Court has reviewed (i) the *Limited Objection of Whitefish Energy Holdings, LLC to Government Parties' Motion for Order Allowing Administrative Claims for Amounts to Be Paid to LUMA Energy by PREPA During*

306(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2166. For the following reasons, the Motion is granted.

BACKGROUND

The Court hereby incorporates by reference the factual summary set forth in the *Memorandum Opinion Granting in Part and Denying in Part PREPA's Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services Under the Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* (Docket Entry No. 2258, the "Front-End Administrative Expense Opinion"). See In re Fin. Oversight & Mgmt. Bd. for P.R., 621 B.R. 289 (D.P.R. 2020) ("LUMA Energy"). The following additional facts are drawn from the Government Parties' submissions in support of the Motion and are undisputed, unless otherwise indicated.

---

*Interim Period Under Supplemental Agreement and the T&D Contract* (Docket Entry No. 2436); (ii) *UTIER's Objection to the Government Parties' Motion for Order Allowing Administrative Expense Claim for Amounts to Be Paid to LUMA Energy by PREPA During Interim Period Under Supplemental Agreement and the T&D Contract* (Docket Entry No. 2435, the "UTIER Objection"); (iii) *SREAEE's Objection to the Government Parties' Motion for Order Allowing Administrative Expense Claim for Amounts to Be Paid to LUMA Energy by PREPA During Interim Period Under Supplemental Agreement and the T&D Contract* (Docket Entry No. 2437); (iv) *Cobra Acquisitions LLC's Objection to Government Parties' Motion for Order Allowing Administrative Expense Claim for Amounts to Be Paid to LUMA Energy by PREPA During Interim Period Under Supplemental Agreement and the T&D Contract* (Docket Entry No. 2438); (v) the *Renewed Limited Objection of Official Committee of Unsecured Creditors to Government Parties' Motion for Order Allowing Administrative Expense Claim for Amounts to Be Paid to LUMA Energy by PREPA During Interim Period Under Supplemental Agreement and T&D Contract* (Docket Entry No. 2439); and (vi) the *Omnibus Reply in Support of Government Parties' Motion for Order Allowing Administrative Expense Claim for Amounts to Be Paid to LUMA Energy by PREPA During Interim Period Under Supplemental Agreement and T&D Contract* (Docket Entry No. 2458).

LUMA Energy's anticipated performance of operational and management services (the "O&M Services") with respect to PREPA's transmission and distribution system (the "T&D System") is a cornerstone of the T&D Contract. (See Mot. ¶¶ 28-29.) One of the original preconditions for LUMA Energy's commencement of the O&M Services was the requirement that PREPA obtain necessary Title III Court approvals, which include confirmation of a plan of adjustment for PREPA. (Mot. ¶ 31 (citing T&D Contract § 4.5(o)).) Because, in negotiating the T&D Contract, the Oversight Board believed that PREPA might not be able to confirm and consummate a plan of adjustment by the time LUMA Energy is otherwise prepared to commence the O&M Services, the Oversight Board requested amendments to the T&D Contract, which were included in the Supplemental Agreement. (Id. ¶¶ 32-33.) Specifically, the Supplemental Agreement provides for the commencement of the O&M Services if all other conditions precedent to the "Service Commencement Date," other than PREPA's exit from Title III and delivery of a certain tax opinion and reliance letter, are satisfied or waived (the "Interim Service Commencement Date"). (Id. ¶ 34 (citing Supplemental Agreement §§ 2.2 & 2.3).) The Interim Service Commencement Date begins a period (the "Interim Period") during which the Supplemental Agreement is in effect, and LUMA Energy will assume full control of the T&D System until the earlier of (i) the date on which a plan of adjustment for PREPA is confirmed and (ii) the "Interim Period Termination Date," which, unless extended by agreement of the parties, will occur eighteen months after the Interim Service Commencement Date if no such plan of adjustment has been confirmed. (Id. (citing Supplemental Agreement § 7.1).)

The Supplemental Agreement requires, as a prerequisite to the Interim Service Commencement, that the Title III Court have entered a final and non-appealable order granting administrative expense treatment for any accrued and unpaid amounts required to be paid under

the T&D Contract and the Supplemental Agreement during the Interim Period (the "Interim Obligations"). (Id. ¶ 35 (citing Supplemental Agreement § 2.3(b).) The Interim Obligations consist primarily of: (i) an "Interim Period Service Fee" of $115 million annually, payable in monthly installments, (ii) PREPA's indemnification obligations running in favor of LUMA Energy and its affiliates during the Interim Period, and (iii) a $115 million "Termination Fee," payable upon the occurrence of the Interim Period Termination Date. (Id. ¶ 36 (citing Supplemental Agreement §§ 3.3 & 7.2(c) and T&D Contract § 18.2).)

Relevant Procedural History

On July 7, 2020, the Government Parties filed *PREPA's Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services Under Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* (Docket Entry No. 2053, the "Front-End Administrative Expense Motion"), which sought an order allowing an administrative expense claim for certain fees associated with the transfer of operation and maintenance of the T&D System to LUMA Energy. Several parties filed objections to the Front-End Administrative Expense Motion, including Unión de Trabajadores de la Industria Eléctrica y Riego, Inc. ("UTIER"), Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica ("SREAEE" and, together with UTIER, the "Union Entities"), the Official Committee of Unsecured Creditors (the "UCC"), Cobra Acquisitions, LLC ("Cobra"), and Whitefish Energy Holdings, LLC ("Whitefish").

On October 19, 2020, the Court issued the Front-End Administrative Expense Opinion. The Court held that (i) the Front-End Administrative Expense Motion was ripe for consideration, (ii) operating expenses of PREPA are eligible for administrative expense priority

under section 503(b)(1)(A) of the Bankruptcy Code based on the text and structure of PROMESA, and (iii) the "Front-End Transition Service Fees," except for late fees, qualified for administrative expense priority. LUMA Energy, 621 B.R. 289. The Court declined to address the UCC's arguments concerning the Supplemental Agreement, noting that such arguments were largely irrelevant to the Front-End Administrative Expense Motion and that the UCC would have the opportunity to raise its arguments in the context of future motion practice. Id. at 302. The Union Entities appealed certain rulings in the Front-End Administrative Expense Opinion to the United States Court of Appeals for the First Circuit, and briefing of that matter is ongoing.

## Discussion

The Government Parties now seek an order pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code allowing an administrative expense claim in favor of LUMA Energy for the Interim Obligations.[4] Relying on section 503(b)(1)(A) of the Bankruptcy Code, the Government Parties assert that the Interim Obligations qualify for administrative expense priority because the O&M Services are beneficial to PREPA. The Union Entities object to the Motion, arguing that (i) the Motion is unripe for adjudication, (ii) administrative expense priority treatment is unavailable in Title III cases, and (iii) the Interim Obligations do not qualify as administrative expenses under section 503(b)(1)(A). The UCC has filed a limited objection to the Motion, which takes issue with certain specific aspects of the Supplemental Agreement. Cobra and Whitefish, both of which have sought allowance of their own administrative expense claims against PREPA in separate contested matters, object to the Motion only insofar as the

---

[4] Sections 503 and 507(a)(2) of the Bankruptcy Code are made applicable in these Title III cases by section 301(a) of PROMESA. See 48 U.S.C. § 2161(a).

relief sought therein would result in what they deem inequitable treatment of their own claims against PREPA.

Ripeness

The Court begins by addressing the Union Entities' argument that the Motion is unripe for adjudication. Ripeness "has roots in both the Article III case or controversy requirement and in prudential considerations." Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (internal quotation marks and citation omitted). The doctrine "seeks to prevent the adjudication of claims relating to contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. (internal quotation marks and citation omitted). "[A] claim is ripe only if the party bringing suit can show both that the issues raised are fit for judicial decision at the time the suit is filed and that the party bringing suit will suffer hardship if 'court consideration' is withheld." Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey, 844 F.3d 318, 326 (1st Cir. 2016) (citation omitted). "The burden to prove ripeness is on the party seeking jurisdiction." Id. (citation omitted).

In the Front-End Administrative Expense Opinion, this Court concluded that the Government Parties had met their burden of showing that the Front-End Administrative Expense Motion was ripe for adjudication notwithstanding pending challenges to the Puerto Rico Energy Bureau's ("PREB") issuance of an Energy Compliance Certificate with respect to the T&D Contract. LUMA Energy, 621 B.R. at 298. The Court reasoned that the T&D Contract was in effect at the time the Front-End Administrative Expense Motion had been filed, and the T&D Contract's terms required the Government Parties to seek the relief requested therein. Id. Although it was "possible that PREB's decision could be reversed at a later date, that

contingency [did] not render unripe a request for administrative expense priority treatment for amounts that are currently accruing and payable under an operative contract." Id. The Court also determined that PREPA "would be harmed if the [Front-End Administrative Expense] Motion were not adjudicated" promptly, because such a delay "would trigger LUMA Energy's right to terminate the T&D Contract, which, if exercised, would indisputably hinder the transformation of PREPA's T&D System." Id.

Here, the Motion is ripe for judicial review for similar reasons. The administrative expense treatment sought by the Government Parties pertains to obligations arising under a binding contract under which both PREPA and LUMA Energy are currently performing. That contract requires the Government Parties to seek administrative expense status for the Interim Obligations as a precondition to LUMA Energy's performance of the O&M Services, which is LUMA Energy's central role under the T&D Contract and which will be performed in furtherance of a transformation of Puerto Rico's power utility that is mandated under Puerto Rico law. The Motion is thus fit for review. Likewise, a failure to adjudicate the Motion would harm PREPA by delaying, if not preventing, performance by LUMA Energy of the O&M Services and create a severe impediment to PREPA's transformation—a "direct and immediate dilemma" for PREPA. Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1, 9 (1st Cir. 2012) (citation omitted); cf. LUMA Energy, 621 B.R. at 298.

The Union Entities identify several reasons why, in their view, the validity of the T&D Contract is contingent on future events, thereby rendering the Motion unripe. Their arguments are unpersuasive. As the Government Parties point out, the First Circuit has made clear that the "possibility of future mootness" is not the "type of contingency that would create a lack of ripeness." Town of Barnstable v. O'Connor, 786 F.3d 130, 143 (1st Cir. 2015). It

follows that the mere potential future invalidity of the T&D Contract cannot serve as a basis to conclude that the Motion is not currently fit for review. For this reason, the Union Entities misplace their reliance on the pending challenges to PREB's approval of the T&D Contract, any unsatisfied conditions to the commencement of the Interim Period, any possible legislative action concerning the T&D Contract, and the Union Entities' pending appeal of the Court's Front-End Administrative Expense Opinion, as bases for challenging the Motion's ripeness.

Nor does the Union Entities' pending appeal of the Front-End Administrative Expense Opinion otherwise divest this Court of jurisdiction of the Motion. "The test for determining if a pending appeal divests a lower court of jurisdiction is whether the subject matter presented in the appeal is so 'closely related' to the issues raised in the motion that the entry of the order 'impermissibly interfere[s]' with the appellant's rights in its appeal." Mission Product Holdings, Inc. v. Schleicher & Stebbins Hotels, L.L.C. (In re Old Cold, LLC), 602 B.R. 798, 823 (B.A.P. 1st Cir. 2019) (quoting In re Whispering Pines Ests., Inc., 369 B.R. 752, 759 (B.A.P. 1st Cir. 2007)), aff'd, 976 F.3d 107 (1st Cir. 2020). Here, although both the Front-End Administrative Expense Motion and the Motion relate to the same contract and turn on similar legal principles, they seek administrative expense treatment for payments associated with entirely different services: the Front-End Transition Services, on the one hand, and the O&M Services performed during the Interim Period, on the other hand. Each motion requires an independent assessment under section 503(b) of the Bankruptcy Code as to whether the amounts in question qualify for administrative expense priority. Although the First Circuit's ruling will undoubtedly address certain legal issues that are pertinent to the Motion, nothing about the Court's adjudication of the Motion now would affect in any way, much less impermissibly

interfere with, the Union Entities' rights in its appeal.

Accordingly, the Court rejects the Union Entities' arguments and concludes that the Motion is ripe for adjudication.

Section 503(b)(1)(A) of the Bankruptcy Code

The Court turns next to whether the Interim Obligations qualify as administrative expenses under section 503(b)(1)(A) of the Bankruptcy Code. That section provides, in relevant part, that "(a) [a]n entity may . . . file a request for payment of an administrative expense" and, "(b) [a]fter notice and a hearing, there shall be allowed administrative expenses . . . including— (1)(A) the actual, necessary costs and expenses of preserving the estate[.]" 11 U.S.C.A. § 503 (Westlaw through PL 117-11 with the exception of PL 116-283). Section 301(a) of PROMESA, 48 U.S.C. § 2161(a), expressly incorporates section 507(a)(2) of the Bankruptcy Code, 11 U.S.C. § 507(a)(2), which gives priority to administrative expenses that are allowed under section 503(b) of the Bankruptcy Code, and section 301(c)(5) of PROMESA provides that "[t]he term 'property of the estate', when used in a section of [the Bankruptcy Code] made applicable in a case under this subchapter by subsection (a), means property of the debtor." 48 U.S.C.A. § 2161(c)(5) (Westlaw through PL 117-11 with the exception of PL 116-283). In the First Circuit, "a request for priority payment of an administrative expense pursuant to Bankruptcy Code § 503(a) may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor." Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 5 (1st Cir. 1992) (citations omitted). "The burden of proving entitlement to priority payment as an administrative expense . . . rests with the

party requesting it" id. (citations omitted), and the Court has broad discretion in determining whether to grant a request for such priority treatment, see In re Jeans.com, 491 B.R. 16, 23 (Bankr. D.P.R. 2013) (citation omitted).

As they did in opposition to the Front-End Administrative Expense Motion (relying on the same authorities), the Union Entities argue here that there can be no administrative expense priority for the necessary costs and expenses of preserving a Title III debtor because no bankruptcy estate exists in a Title III case. In the Front-End Administrative Expense Opinion, the Court squarely rejected this argument and concluded that the "text and structure of PROMESA compel the conclusion that operating expenses are eligible for administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code." LUMA Energy, 621 B.R. at 299. No basis to depart from the Court's prior ruling regarding this issue having been raised, the Court rejects the Union Entities' arguments for the reasons set forth in the Front-End Administrative Expense Opinion.

The Union Entities further argue that the Government Parties have failed to demonstrate that the Interim Obligations are necessary costs of preserving PREPA because they do not provide any benefits to PREPA or its creditors. The UCC makes a similar argument as to the Termination Fee only. In the Front-End Administrative Expense Opinion, the Court concluded that the Government Parties had "satisfied their burden of demonstrating that the Front-End Transition Obligations other than any Late Fees associated therewith . . . are, to the extent incurred and payable under the T&D Contract, reasonable and necessary expenses of preserving PREPA under section 503(b)(1)(A)." Id. at 303. The primary rationale underlying that conclusion was that the Government Parties had proffered sufficient evidence, through the *Declaration of Omar J. Marrero in Support of PREPA's Motion for Entry of an Order Allowing*

*Administrative Expense Claim for Compensation for Front-End Transition Services Under Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* (Docket Entry No. 2053-2, the "Marrero Declaration") "to support a determination by this Court that the Front-End Transition Service costs that are properly incurred and payable under the T&D Contract will benefit PREPA." LUMA Energy, 621 B.R. at 301. The Court further observed that, "[i]n light of the restrictions on judicial authority and the scope of PROMESA that are imposed by sections 303 and 305 of the statute, Oversight Board and debtor consent are also relevant considerations." Id.

Here, the Government Parties have satisfied their burden with respect any Interim Obligations that are actually incurred. They have proffered evidence of their determination that the O&M Services will benefit PREPA by (i) transforming the T&D System into a "modern, sustainable, reliable, efficient, cost-effective, and resilient electric system consistent with prudent utility practices in order to increase electric service quality"; (ii) enabling delivery of low-cost electricity to ratepayers of Puerto Rico; (iii) increasing T&D System resiliency and reliability; (iv) deploying new technologies; and (iv) "implementing industry best practices and operational excellence through managerial continuity and long-term planning." (Marrero Decl. ¶ 12.) Moreover, the Government Parties have, for purposes of this motion practice, adequately supported their conclusion that LUMA Energy is well qualified to assist PREPA in accomplishing these objectives. (Id. ¶¶ 13-14.)

The Union Entities contend that the Government Parties are wrong for numerous reasons, primarily by attacking the propriety of the T&D Contract as a whole and its underlying goals. For example, relying heavily on the *Declaration of Mr. Héctor Rosario-Hernández in Support of SREAEE' Objection to the Government Parties' Motion for Order Allowing*

*Administrative Expense Claim for Amounts to Be Paid to LUMA Energy by PREPA During Interim Period Under Supplemental Agreement and the T&D Contract* (Docket Entry No. 2437-2, the "Rosario Declaration"), the Union Entities argue that the T&D Contract will increase PREPA's deficit, increase energy costs in Puerto Rico, jeopardize PREPA's receipt of federal funds, and invite conflicts of interest in connection with contract awards for capital improvement projects. (See UTIER Obj. ¶¶ 84-98 (citing Rosario Decl. ¶¶ 10-12, 22-27, 32, 34, 41).) Like the arguments raised in their objection to the Front-End Administrative Expense Motion, however, the Union Entities' grievances primarily implicate "energy policy and governmental structural issues that are not pertinent to" the determination before the Court, LUMA Energy, 621 B.R. at 301, and are largely irrelevant to the more narrow question at issue here: whether the Interim Obligations benefit PREPA. The Government Parties have made the reasonable determination that they do and, as the Court has previously observed, "PROMESA affords the Government Parties substantial discretion and autonomy in establishing government policy, and expressly precludes the Court from interfering with such efforts." Id. (citing 48 U.S.C. §§ 2163, 2165). Thus, even accepting as true the assertions made in the Rosario Declaration, the differences in views expressed therein as to the merits of the T&D Contract and energy policy issues are insufficient to overcome the Government Parties' proffers as to pertinent matters actually considered, particularly in light of Government Parties' role under PROMESA and their consent to PREPA's payment of the Interim Obligations.

    The UCC contends that the Termination Fee component of the Interim Obligations cannot qualify as an administrative expense because it is expressly characterized as "liquidated damages" in the T&D Contract, and that the Termination Fee is not akin to typical break-up fees in the bankruptcy context, which are generally entitled to administrative expense

priority status because such fees are designed to encourage bidders or creditors to participate in transactions and thus provide value to the estate. The UCC asserts that the Termination Fee is a true penalty and provides no tangible benefit to PREPA. Additionally, the UCC compares the Termination Fee to the late fees that the Court previously found had not been shown to qualify for administrative expense treatment, at least at the time the Front-End Administrative Expense Motion was filed.

The Court concludes that the Government Parties have met their burden of demonstrating that the Termination Fee qualifies for administrative expense treatment. As a preliminary matter, the fact that the Government Parties agreed to the Termination Fee after the bidding process was completed does not foreclose it from benefiting PREPA. Here, again recognizing that Oversight Board and debtor consent are relevant considerations for purposes of the Court's section 503(b)(1)(A) analysis in the Title III context—and that "PROMESA affords the Government Parties substantial discretion and autonomy in establishing government policy, and expressly precludes the Court from interfering with such efforts," LUMA Energy, 621 B.R. at 301—the Government Parties have made an adequate showing that inclusion of the Termination Fee provision to incentivize LUMA Energy to commence the O&M Services during PREPA's Title III case was beneficial to PREPA in that it enabled the Government Parties to commence a fundamental transformation of an integral component of the Commonwealth's infrastructure before the Title III restructuring is accomplished, thereby furthering the interests of not only PREPA but also of the people of Puerto Rico who rely on its services. The Termination Fee was part of the overall economic package that the Oversight Board found beneficial to PREPA because it it enabled PREPA's transformation to begin prior to confirmation. The Court is persuaded that, unlike the liquidated damages provisions in cases cited by the UCC, which

were "not correlated to an actual transactional cost or expense incurred by the negotiating bidder," In re Hupp Industries, Inc., 140 B.R. 191, 196 (Bankr. N.D. Ohio 1992), the Termination Fee accounts for the financial and reputational risks assumed by LUMA Energy, which is actually engaged in work under the contract, associated with termination of the parties' relationship earlier than anticipated. In being related to costs of services under the T&D Contract, the Termination Fee essentially makes the pre-confirmation services more expensive if the parties do not carry out the full 15-year term of the contract; that is, the accrued Interim Obligations including the Termination Fee will have been paid in aid of a short-term term project beneficial to the debtor if the agreement is terminated prematurely, whereas the baseline contract price assumes continuation of the arrangement throughout the contract term. In benefiting the estate by securing pre-confirmation commencement of the transformation, the Supplemental Agreement, including the Termination Fee, advances PREPA's long-term prospects and thus benefits the debtor and its stakeholders. In this context, the Termination Fee provision is reasonable. The UCC's challenges to the Termination Fee provision are therefore unavailing.

The UCC also objects to what it characterizes as LUMA Energy's "consent right" over a PREPA plan of adjustment during the Interim Period. Because the Motion does not seek approval of the T&D Contract or Supplemental Agreement in their entirety, that issue is not within the scope of issues before the Court, and the UCC's objection with respect to this aspect of the arrangement is overruled. Whitefish's, Cobra's, and Union Entities' arguments regarding the effects that granting the Motion will have on their individual interests are similarly irrelevant to the inquiry before the Court and, as such, are rejected for substantially the reasons set forth in the Front-End Administrative Expense Opinion. See LUMA Energy, 621 B.R. at 302-03.

Accordingly, the Court concludes that the Government Parties have satisfied their burden of showing that any Interim Obligations actually incurred are entitled to administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code. In light of this conclusion, the Court need not address the Government Parties' alternative arguments as to why the Interim Obligations are entitled to administrative expense priority treatment.

## CONCLUSION

For the foregoing reasons, the Motion is granted. This Memorandum Order resolves Docket Entry No. 2417 in Case No. 17-4780 and Docket Entry No. 16241 in Case No. 17-3283.

Dated: May 3, 2021

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge