# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>    Defendants. | Adv. Proc. No. 20-00003-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, <br><br> Plaintiff, <br><br> v. <br><br> AMBAC ASSURANCE CORPORATION, *et al.*, <br><br> Defendants. | Adv. Proc. No. 20-00004-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, <br><br> Plaintiff, <br><br> v. <br><br> AMBAC ASSURANCE CORPORATION, *et al.*, <br><br> Defendants. | Adv. Proc. No. 20-00005-LTS |

**DEFENDANTS' OPPOSITION TO THE GOVERNMENT PARTIES' URGENT
<u>MOTION FOR PROTECTIVE ORDER</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

FACTUAL BACKGROUND.............................................................................................................3

ARGUMENT......................................................................................................................................5

I.     DEFENDANTS' THIRD-PARTY SUBPOENAS DID NOT CIRCUMVENT THE GOVERNMENT'S OBJECTIONS........................................................................5

II.    DEFENDANTS ARE NOT SEEKING TO EXPAND THE SCOPE OF DISCOVERY. ........................................................................................................................7

CONCLUSION...................................................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cardona v. Vivint Solar, Inc.*,
2019 WL 4686556 (E.D. Pa. Sept. 26, 2019) ........................................................................8

*Heard v. Costco Wholesale Corp.*,
2020 WL 515841 (D. Nev. Jan. 31, 2020)..............................................................................6

*Jee Fam. Holdings, LLC v. San Jorge Childs. Healthcare, Inc.*,
297 F.R.D. 19 (D.P.R. 2014) ...............................................................................................5, 8

*McCall v. State Farm Mut. Auto. Ins. Co.*,
2017 WL 3174914 (D. Nev. July 26, 2017) ...........................................................................6

*Pagan-Colon v. Walgreens of San Patricio, Inc.*,
264 F.R.D. 25 (D.P.R. 2010) ..................................................................................................7

*Richardson v. Sexual Assault/Spouse Abuse Rsch. Ctr., Inc.*,
270 F.R.D. 223 (D. Md. 2010)................................................................................................6

*Shevlin v. Phx. Life Ins. Co.*,
2012 WL 13034075 (D.N.J. May 24, 2012) ...................................................................... 7, 8

*Tara Prods., Inc. v. Hollywood Gadgets, Inc.*,
2014 WL 1047411 (S.D. Fla. Mar. 18, 2014).........................................................................6

**Other Authorities**

Fed. R. Civ. P. 34......................................................................................................................6

Fed. R. Civ. P. 45................................................................................................................. 1, 2

Fed. R. Civ. P. 45(a)(4) ............................................................................................................1

**To the Honorable United States Magistrate Judge Judith Gail Dein:**

Pursuant to Federal Rules of Bankruptcy Procedure 7026, 7034, 7037, and 9014 and Federal Rules of Civil Procedure 26, 34, and 37, Defendants[2] respectfully submit this opposition to the *Government Parties' Urgent Motion for Protective Order Regarding Subpoenas Duces Tecum to Government Parties' Law Firms* [ECF No. 16633] (the "Motion" or "Mot.").

## PRELIMINARY STATEMENT

1. The Government's Motion is a thinly veiled attempt at deflection and tit-for-tat retaliation for Defendants' questions about the Government's conduct. Unlike the issues Defendants raised—which are well-grounded in case law under Rule 45, and the Government's own agreements—the Government's Motion lacks any legal and factual support. Instead, the Government resorts to misstating key facts to advance a false narrative that Defendants have somehow hidden their third-party discovery efforts from the Government.

2. The Government's Motion replicates concerns that Defendants themselves have raised about the Government's lack of transparency—alleging that Defendants went "behind the backs of the Government" to send correspondence to law firms that the Government "only learned of . . . through the Subpoenaed Firms themselves." (Mot. ¶ 11.) But that is entirely untrue. Pursuant to Rule 45(a)(4), Defendants gave notice to the Government of every subpoena before it was served, and further agreed to provide any responses and objections, or documents, that Defendants receive. The Government never asked for copies of correspondence that Defendants

---

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the *Defendants' Motion to Compel Production of Withheld Documents in the Revenue Bond Adversary Proceedings* [ECF No. 16632] (the "Motion to Compel" or "MTC"). Unless otherwise indicated, all ECF numbers referenced herein refer to the docket in Case No. 17 BK 3283-LTS. On April 12, 2021, Assured, National and the Board reached an "Agreement in Principle" to settle the Revenue Bond Adversary Proceedings. Definitive documentation is in the process of being negotiated. If such documentation is completed and the "Agreement in Principle" is implemented, the positions and participation of Assured and National with respect to this motion may be impacted.

send to third parties (and has not provided its own communications with third parties, many of which are not subject to any colorable claim of privilege). Nevertheless, when the Government raised concerns about the law firm subpoenas, Ambac proactively searched for Defendants' past letters to law firms and produced them on behalf of Defendants on April 27, 2021. The Government claims it only learned of letters that Assured sent to law firms from the subpoenaed firms themselves. In fact, every one of the letters the Government cites were timely produced.

3. Before filing its Motion, the Government also claimed that Defendants had "excluded" the Government from meet-and-confers with the law firms, and said the Government would ask the Court to order Defendants to include the Government in such discussions. In fact, the Government had never previously asked to be included. Once it did, Defendants readily agreed the Government could join the meet-and-confers. Tellingly, after Defendants followed up to ask the Government which lawyers should be included and which specific meet-and-confers the Government should be invited to, the Government did not even respond. And after complaining of its exclusion from meet-and-confers, the Government declined three separate requests from Defendants to meet-and-confer regarding the Government's objections to law firm subpoenas.

4. This illustrates that the Government's Motion is an attempt to "turn the tables" on Defendants, not a genuine request for relief. If the Government had genuine concerns about Defendants' purportedly "harassing behavior," it would have reviewed the letters Defendants produced, met-and-conferred about disagreements, and promptly responded to Defendants' attempts to invite the Government to meet-and-confers. The Government did none of those things.

5. Defendants have provided a level of transparency that exceeds what Rule 45 requires, and repeatedly sought to meet-and-confer in good faith to resolve disputes. The Government has done the opposite. The Motion should be denied.

**FACTUAL BACKGROUND**

6. The Government's Motion has its genesis in Defendants' questions about the Government's communications with subpoenaed law firms. After the Government provided some information, Defendants requested clarification regarding the Government's position.

7. The Government responded by suddenly accusing Defendants of misconduct, instead of providing the clarification Defendants had requested. The Government alleged that Defendants' inquiries showed that the purpose of Defendants' "subpoenas to current and former law firms, from your perspective, was to simply end-run the Government's objections" and demanded that Defendants "immediately withdraw" the subpoenas. (MTC Ex. Q at 17.)

8. At a telephonic meet-and-confer later that day, Defendants asked the Government to explain how Defendants' subpoenas could be construed as an attempt to "end-run the Government's objections," given that the Government itself had agreed that it would not be withholding responsive documents on the basis of scope objections. (*See* MTC ¶ 22.) The Government's response revealed that it actually had been withholding responsive documents on scope grounds (which gave rise to Defendants' separate Motion to Compel). (*See id.*)

9. Late the next day, the Government sent Defendants a draft joint status report. The draft suggested that Defendants had "excluded" the Government from meet-and-confers with law firms, and indicated it would move to quash the law firm subpoenas and seek an order requiring Defendants to permit the Government to join the meet-and-confers with law firms.

10. Defendants promptly responded that "a meet-and-confer [on the Government's proposed motion] could be productive." (MTC Ex. Q at 10.) The Government had never previously asked to join meet-and-confers, and Defendants noted they would not necessarily object to such a request. Defendants later sent written comments on the draft report, noting that Defendants also were willing to meet-and-confer regarding any specific scope objections that were

- 3 -

motivating the Government's contemplated motion to quash. (*Id.* at 5-6.) Defendants later confirmed that Defendants would agree to invite the Government to join Defendants' meet-and-confers with law firms, and reiterated (for a third time) that Defendants were willing to meet-and-confer concerning the Government's scope objections to Defendants' subpoenas. (*Id.* at 3.)

11. The Government did not directly respond to any of Defendants' repeated suggestions that the Parties meet-and-confer. Instead, the Government unilaterally declared that the Parties were at an "impasse" and should simply file a proposed briefing schedule. (*Id.* at 4.)

12. After the joint status report with the briefing schedule was submitted, Defendants followed up to implement the agreement that the Government would have an opportunity to join Defendants' meet-and-confers with law firms. Defendants asked the Government to identify which lawyers from the Government should be invited, and which law firms should be included. The Government never responded. (*Id.* at 1.) Even absent a response, Defendants started copying the Government on invitations for law firm meet-and-confers; five or six lawyers for the Government have joined at least one meet-and-confer already.

13. In light of the Government's stated concerns about law firm subpoenas, the lawyer for Ambac most involved in meet-and-confers with third parties also searched for any correspondence Defendants had sent the law firms following up on the subpoenas. Even though the Government never requested Defendants' communications to law firms (and the rules do not require that they be produced), Ambac produced them to the Government on April 27, 2021.

14. The Government's Motion falsely alleges that Assured sent letters to law firms without "notifying the Government," such that the Government "only learned of these communications through the Subpoenaed Firms themselves." (Mot. ¶ 11.) In fact, all of the letters the Government cites were included in the production that Ambac made on behalf of Defendants.

- 4 -

15. The Motion is at least the second time the Government has falsely accused Defendants of failing to provide the Government with subpoena disclosures that Defendants had in fact provided. The Government previously did so at the hearing on Defendants' first motion to compel. (*See* Ex. A, *Hearing on Motions* (Mar. 17, 2021) at 56:15-24, 57:22-58:3.)

## ARGUMENT

16. A court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Jee Fam. Holdings, LLC v. San Jorge Childs. Healthcare, Inc.*, 297 F.R.D. 19, 21 (D.P.R. 2014) (quoting Fed. R. Civ. Pro. 26(c)(1)). Where, as here, a party to the lawsuit moves for a protective order with respect to a third-party subpoena, the party "has standing to challenge the subpoenas [only] to the extent they (1) seek irrelevant information or, (2) information subject to the party's 'personal right or privilege.'" *Id.*

### I. DEFENDANTS' THIRD-PARTY SUBPOENAS DID NOT CIRCUMVENT THE GOVERNMENT'S OBJECTIONS.

17. The Government's lead argument is that Defendants served the subpoenas in a bad-faith attempt to "prevent the Government Parties from ensuring their legitimate objections to the production of certain materials . . . could be implemented consistently." (Mot. ¶ 1.) This assertion is baseless and wrong.

18. As an initial matter, when Defendants served the subpoenas, Defendants were under the impression that the Government was not withholding responsive documents based on scope objections. (*See* MTC ¶¶ 10-17.) Defendants thus had no reason to think that third-party subpoenas would amount to an "end run" around the Government's scope objections.

19. In any event, it is the *Court's rulings*, not the *Government's objections*, that control what discovery is appropriate. If the Government had an issue with the subpoenas, it could have met-and-conferred with Defendants about them or raised the issue with the Court in the absence

- 5 -

of an amicable resolution. Defendants were not bound to simply defer to the Government's interpretation of the Rule 56(d) Order, when Defendants disagreed with it in good faith.

20. None of the cases the Government cites suggest otherwise. All but one of those cases address scenarios where, after serving a Rule 34 document request that was objected to, a litigant served a subpoena *on the exact same party* seeking the same information.[3] Defendants here have not served subpoenas on the Plaintiff, duplicating the document requests that were served under Rule 34, so those cases are irrelevant. The only other case the Government cites did not find third-party subpoenas improper at all; the court directed that subpoenas be re-issued, after it resolved a proportionality dispute concerning their scope. *Heard v. Costco Wholesale Corp.*, 2020 WL 515841, at *3 (D. Nev. Jan. 31, 2020), *cited in* Mot. ¶ 15. To the extent that the Government is arguing that Defendants somehow deprived them of the opportunity to object to subpoenas, that is also untrue. The purpose of Defendants' notice before each subpoena was precisely to afford the Government an opportunity to raise concerns with Defendants. *See Pagan-Colon v. Walgreens of San Patricio, Inc.*, 264 F.R.D. 25, 28 (D.P.R. 2010). It never did, until Defendants asked questions about whether the Government had interfered with the subpoenas.

21. Finally, the Government's claim that Assured's correspondence improperly "pressured the Government's former counsel" is meritless. (Mot. ¶ 18.) Assured sent letters summarizing the parties' disputes the week before Defendants moved to compel, so there would be a clear record of Defendants' efforts to resolve the issues through meet-and-confers. These

---

[3] *See McCall v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 3174914, at *6 (D. Nev. July 26, 2017) ("[I]t is not proper to serve a subpoena duces tecum on the opposing party to produce documents that it has already objected to producing in its response to requests for production."), *cited in* Mot. ¶ 15; *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 2014 WL 1047411, at *3-4 (S.D. Fla. Mar. 18, 2014), *cited in* Mot. ¶ 22; *Richardson v. Sexual Assault/Spouse Abuse Rsch. Ctr., Inc.*, 270 F.R.D. 223, 225 (D. Md. 2010) ("With regard to the subpoenas served on Defendants, I note that Plaintiff previously served document requests pursuant to Rule 34, seeking some, if not all, of the documents he now seeks through subpoena."), *cited in* Mot. ¶ 19.

letters simply followed up on existing subpoenas properly noticed to the Government. None of these law firms (which are among the largest and most sophisticated in the world) were "pressured" into doing anything by routine correspondence memorializing the meet-and-confer process. Indeed, none of them responded substantively to the letters.

## II. DEFENDANTS ARE NOT SEEKING TO EXPAND THE SCOPE OF DISCOVERY.

22. The Government's fallback argument that Defendants are expanding the scope of discovery (Mot. ¶¶ 22-27) merely rehashes "scope" arguments the Court has already rejected.

23. The Government recycles its argument that e-mails are entirely outside the scope of permissible discovery. (Mot. ¶¶ 23-24.) But that argument was briefed at length for the first motion to compel. The Court ruled expressly: "I don't see that there's a general prohibition against any specific type of discovery, so I don't think that there is a blanket prohibition against e-mails[.]" (Ex. A at 7:8-14.) After hearing argument, the Court denied Defendants' request to compel the Government to do an e-mail review—citing cost and timing issues, not the Government's theory that any production of e-mails is categorically precluded by the Rule 56(d) Order. (*See id.* at 69:7-11.) Indeed, far from holding that e-mails must be systematically excised from every production, the Court said the production of audit work papers "may very well include e-mails . . . to the extent that" relevant e-mails were saved with the work papers. (*Id.* at 64:25-65:7, 74:8-12.)

24. This case is thus the exact opposite of the cases the Government cites—in both of which, the court had rejected requested discovery on *relevance* grounds, not cost or burden considerations, and disapproved of a litigant's repeated efforts to obtain discovery that the court had already said was irrelevant.[4] In any event, Defendants did not ask law firms to conduct a broad

---

[4] *Shevlin v. Phx. Life Ins. Co.*, 2012 WL 13034075, at *2 (D.N.J. May 24, 2012) ("[T]he Court ruled that the relevant time frame for discovery relating to the dividend calculation was 2004–2009. . . . This

e-mail review (indeed, Defendants did not even know, until the Government filed its Motion, that some of the withheld documents are e-mails). Defendants merely asked that whatever nonprivileged documents the law firms identified as responsive be produced. This is consistent with the Court's ruling that relevant e-mails found amongst audit work papers should be produced.

25. The Government's contention that Defendants' requests for non-final drafts of deal documents are somehow outside the scope of allowable discovery is equally meritless, for the reasons articulated in Defendants' motion to compel. (*See* MTC ¶¶ 31-38.)

26. Defendants' subpoenas were a legitimate effort to seek relevant discovery. Whether or not the Court decides that these documents should be produced in connection with the targeted Rule 56(d) discovery, the Government has not even come close to showing, as it must, that a protective order is needed to protect the Government from "annoyance, embarrassment, oppression, or undue burden or expense." *Jee Fam. Holdings, LLC*, 297 F.R.D. at 21.

## CONCLUSION

27. For the foregoing reasons, the Motion should be denied.

---

determination was not based solely on a cost-shifting and burden analysis as Shevlin suggests[.]"), *cited in* Mot. ¶¶ 22, 27; *Cardona v. Vivint Solar, Inc.*, 2019 WL 4686556, at *3 (E.D. Pa. Sept. 26, 2019) ("Judge Sneed's order clearly indicates that discovery of prior complaints against Defendants is limited to those 'from Florida, in 2016 and 2017.' . . . Judge Sneed rejected Plaintiffs' argument, which is repeated here, that all prior complaints are relevant."), *cited in* Mot. ¶ 26.

Dated: May 3, 2021
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com
scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
Dennis F. Dunne (admitted *pro hac vice*)
Atara Miller (admitted *pro hac vice*)
Grant R. Mainland (admitted *pro hac vice*)
John J. Hughes, III (admitted *pro hac vice*)
Jonathan Ohring (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
amiller@milbank.com
gmainland@milbank.com
jhughes2@milbank.com
johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

**REXACH & PICÓ, CSP**

By: /s/ *María E. Picó*
María E. Picó
(USDC-PR No. 123214)
802 Ave. Fernández Juncos
San Juan, PR 00907-4315
Telephone: (787) 723-8520
Facsimile: (787) 724-7844
Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: /s/ *Martin A. Sosland*
Martin A. Sosland (admitted *pro hac vice*)
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
Email: martin.sosland@butlersnow.com

James E. Bailey III (admitted *pro hac vice*)
Adam M. Langley (admitted *pro hac vice*)
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: jeb.bailey@butlersnow.com
adam.langley@butlersnow.cow

*Attorneys for Financial Guaranty Insurance Company*

**ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC**

By: /s/ *Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    (USDC-PR No. 206314)
    Email: epo@amgprlaw.com

By: /s/ *Luis A. Oliver-Fraticelli*
    Luis A. Oliver-Fraticelli
    (USDC-PR No. 209204)
    Email: loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone: (787) 756-9000
    Facsimile: (787) 756-9010

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ *Robert S. Berezin*
    Jonathan D. Polkes (admitted *pro hac vice*)
    Gregory Silbert (admitted *pro hac vice*)
    Robert S. Berezin (admitted *pro hac vice*)
    Kelly DiBlasi (admitted *pro hac vice*)
    Gabriel A. Morgan (admitted *pro hac vice*)
    767 Fifth Avenue
    New York, NY 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Email: jonathan.polkes@weil.com
           gregory.silbert@weil.com
           robert.berezin@weil.com
           kelly.diblasi@weil.com
           gabriel.morgan@weil.com

***Attorneys for National Public Finance Guarantee Corp.***

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    (USDC-PR No. 204809)
    Ricardo F. Casellas-Sánchez
    (USDC-PR No. 203114)
    Diana Pérez-Seda
    (USDC-PR No. 232014)
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email: hburgos@cabprlaw.com
           rcasellas@cabprlaw.com
           dperez@cabprlaw.com

**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/ *Howard R. Hawkins, Jr.*
    Howard R. Hawkins, Jr. (admitted *pro hac vice*)
    Mark C. Ellenberg (admitted *pro hac vice*)
    William J. Natbony (admitted *pro hac vice*)
    Thomas J. Curtin (admitted *pro hac vice*)
    Casey J. Servais (admitted *pro hac vice*)
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666
    Email: howard.hawkins@cwt.com
           mark.ellenberg@cwt.com
           bill.natbony@cwt.com
           thomas.curtin@cwt.com
           casey.servais@cwt.com

***Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.***

| | |
|---|---|
| **RIVERA, TULLA AND FERRER, LLC** | **SEPULVADO, MALDONADO & COURET** |
| By: /s/ *Eric A. Tulla* <br> Eric A. Tulla <br> (USDC-DPR No. 118313) <br> Email: etulla@ riveratulla.com <br> Iris J. Cabrera-Gómez <br> (USDC-DPR No. 221101) <br> Email: icabrera@ riveratulla.com <br> Rivera Tulla & Ferrer Building <br> 50 Quisqueya Street <br> San Juan, PR 00917-1212 <br> Telephone: (787) 753-0438 <br> Facsimile: (787) 767-5784 | By: /s/ *Albéniz Couret Fuentes* <br> Albéniz Couret Fuentes <br> (USDC-PR No. 222207) <br> 304 Ponce de León Ave. Suite 990 <br> San Juan, PR 00918 <br> Telephone: (787) 765-5656 <br> Facsimile: (787) 294-0073 <br> Email: acouret@smclawpr.com |
| **HOGAN LOVELLS US LLP** | **REED SMITH LLP** |
| By: /s/ *Ronald J. Silverman* <br> Ronald J. Silverman, Esq. <br> Michael C. Hefter, Esq. <br> 390 Madison Avenue <br> New York, NY 10017 <br> Telephone: (212) 918-3000 <br> Facsimile: (212) 918-3100 <br> ronald.silverman@hoganlovells.com <br> michael.hefter@hoganlovells.com | By: /s/ *Jared S. Roach* <br> Luke A. Sizemore (admitted *pro hac vice)* <br> Jared S. Roach (admitted *pro hac vice*) <br> 225 Fifth Avenue, Suite 1200 <br> Pittsburgh, PA 15222 <br> Telephone: (412) 288-3131 <br> Facsimile: (412) 288-3063 <br> Email: lsizemore@reedsmith.com <br>         jroach@reedsmith.com |
| ***Attorneys for U.S. Bank Trust National Association, in its Capacity as Trustee to PRIFA Bondholders*** | ***Attorneys for The Bank of New York Mellon, in its Capacity as Trustee to CCDA Bondholders*** |

## CERTIFICATE OF SERVICE

I hereby certify that on this same date a true and exact copy of this notice was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com