# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors. [1] | |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | Adv. Proc. No. 20-00003-LTS |
| Plaintiff, | |
| v. | |
| AMBAC ASSURANCE CORPORATION, *et al.*, | |
| Defendants. | |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | Adv. Proc. No. 20-00004-LTS |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | |
| Plaintiff, | |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

v.

AMBAC ASSURANCE CORPORATION, *et al.*,

    Defendants.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,

    Plaintiff,

v.

AMBAC ASSURANCE CORPORATION, *et al.*,

    Defendants.

Adv. Proc. No. 20-00005-LTS

**GOVERNMENT PARTIES' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

    I.     THE GOVERNMENT PARTIES MADE CLEAR WHAT
         "GOVERNING" DOCUMENTS THEY WOULD PRODUCE. ........................... 3

    II.    DEFENDANTS CIRCUMVENTED THE GOVERNMENT PARTIES'
         OBJECTIONS.................................................................................................... 7

    III.   DEFENDANTS MADE UNFOUNDED ACCUSATIONS OF
         INTERFERENCE WITH OTHER THIRD-PARTY SUBPOENAS. ................... 8

ARGUMENT ........................................................................................................... 9

    I.     THIS COURT SHOULD NOT COMPEL THE PRODUCTION OF
         EMAILS, DRAFTS AND OTHER COMMUNICATIONS THAT DO
         NOT "GOVERN" THE PRIFA AND HTA BONDS............................................ 9

         A.     Drafts and Communications "Relating To" the Bond Documents
              Are Beyond the Scope of the Court's Rule 56(d) Order............................ 9

         B.     The Government Parties Preserved All Their Objections Regarding
              Producing Non "Governing" Materials, Regardless of Whether
              Such Documents Are in the Client Files of Law Firms. ........................... 10

    II.    DEFENDANTS ARE NOT ENTITLED TO ADDITIONAL
         DISCLOSURES REGARDING THE GOVERNMENT PARTIES'
         LAWYERS' COMMUNICATIONS.................................................................. 14

CONCLUSION......................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hanan v. Corso,*
1998 WL 429841 (D.D.C. Apr. 24, 1998) ................................................................... 14

*In re Fin. Oversight & Mgt. Bd. for P.R.,*
618 B.R. 619 (D.P.R. 2020) ......................................................................................... 9

*Mortgage Res. Serv., LLC v. JPMorgan Chase Bank, N.A.,*
2016 WL 3906712 (S.D.N.Y. July 14, 2016) ............................................................ 14

*Rivera v. Kmart Corp.,*
190 F.R.D. 298 (D.P.R. 2000) ................................................................................... 11

*Rowan v. Sunflower Electric Power Corp.,*
2016 WL 3743102 (D. Kan. July 13, 2016) ............................................................. 12

*Tara Prods., Inc. v. Hollywood Gadgets, Inc.,*
2014 WL 1047411 (S.D. Fla. Mar. 18, 2014) .......................................................... 13

*Wylie v. Stipes,*
2010 WL 11580051 (D.P.R. Aug. 2010) ................................................................... 12

**Other Authorities**

473 ABA Formal Opinion 1 (Feb. 17, 2016) *Available at*
https://www.americanbar.org/content/dam/aba/administrative/professional_resp
onsibility/aba_formal_opinion_473.authcheckdam.pdf ............................................. 7

**Rules**

Fed. R. Civ. P. 34 ............................................................................................................. 12

**To the Honorable United States Magistrate Judge Judith Gail Dein:**

The Oversight Board[2] and AAFAF[3] (together the "Government Parties") respectfully oppose *Defendants' Motion to Compel Production of Withheld Documents in the Revenue Bond Adversary Proceedings* ECF No. 173[4] (the "Motion").

**PRELIMINARY STATEMENT**

1.      Defendants' Motion is their latest effort to create delay and distraction from the relevant issues.   While Defendants manufacture various perceived procedural problems (all without merit), at its core, the Motion appears to seek production of two primary categories of material: 1) documents from third parties relating to the HTA and PRIFA bonds without regard to whether such documents are "governing," and 2) more information regarding the Government Parties' counsel's communications with subpoenaed third parties.  The Court should not compel production of either, nor should it enter Defendants' proposed order, which requires unfiltered production of what law firms and other third parties "collected" without regard to what those materials actually are.

2.      The Motion is based on two false premises.  *First*, Defendants assert that law firms upon which Defendants served subpoenas (the "Subpoenaed Firms") must produce draft bond documents and negotiation emails.[5]  Defendants argue the Government Parties agreed during the meet and confer process to produce all documents responsive to Defendants' requests "as written" and claim the Government Parties "waived" the right to object to the scope of productions by the

---

[2] The Financial Oversight and Management Board for Puerto Rico acts as representative of the Commonwealth pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act, codified in 48 U.S.C. §§ 2101-2241.
[3] The Puerto Rico Fiscal Agency and Financial Advisory Authority responds in its own capacity, as successor to the Government Development Bank for Puerto Rico as fiscal agent, and as representative pursuant to Act 2-2017 of the Commonwealth, HTA, PRIFA, CCDA, and the Puerto Rico Tourism Company (the "Government Entities").
[4] References to "ECF No. ___" refer to Electronic Case Filing numbers in Case No. 20-00003 unless stated otherwise.
[5] The Subpoenaed Firms maintain in their client files the documents of one or more of the Government Entities.

1

Subpoenaed Firms.  As detailed below, that is completely untrue.

3.      On the merits, Defendants are not entitled to discovery of drafts and negotiation emails.  The Court's Rule 56(d) Order (ECF No. 115) ("Rule 56(d) Order") means what it says— Defendants are entitled to documents "governing" the bonds.  *See* Rule 56(d) Order at 7, 9, 11. Drafts and negotiation emails unquestionably are not "governing."  Defendants recognized as much by referring to "governing documents" as the final legal agreements in their Rule 56(d) declarations.  *See infra* Section I.A.

4.      Nor was there anything wrong with the Government Parties' counsel's direction to the Subpoenaed Firms to exclude drafts and negotiation emails from their productions in response to the subpoenas.  On the contrary, the documents in the possession of the Subpoenaed Firms belong to the Government Entities and it was entirely consistent with the definitive opinion of the American Bar Association for the Subpoenaed Firms to coordinate with the Government Parties' counsel in these cases about what should and should not be produced.  Defendants improperly tried to use their subpoenas to obtain from the Subpoenaed Firms the very documents the Government Parties had objected to producing.  The Court should not reward Defendants' misbehavior by compelling the production of irrelevant materials over the Government Parties' consistent objections.  *See infra* Section I.B.

5.      *Second*, Defendants contend it was improper for the Government Parties' counsel to communicate with auditors and rum producers about the subpoenas Defendants served on them. Based on this contention, Defendants seek to compel the Government Parties' litigation counsel in these cases to answer questions about these communications.  There is no basis for this.  Indeed, in the face of irrelevant questions from Defendants – like how O'Melveny and Proskauer decided to allocate various tasks between the two firms – the Government Parties nonetheless tried to avoid

2

a dispute by providing basic information.  Critically, counsel made clear they did not direct either the rum producers or the auditors to make any particular objections or to withhold any documents on responsiveness grounds.  That forthright representation should end the inquiry into such collateral matters.  Counsel for Ambac was told the same by counsel for the rum producers.  *See* Ex. 1.  Even Milbank's knowledge of the facts has not deterred Defendants from pressing further about what the Government Parties' counsel said and did.  Enough is enough.  The Court should not order discovery about discovery from the Government Parties' lawyers in these cases.  *See infra* Section II.

## FACTUAL BACKGROUND

I.      **THE GOVERNMENT PARTIES MADE CLEAR WHAT "GOVERNING" DOCUMENTS THEY WOULD PRODUCE.**

6.      In the Rule 56(d) Order, Judge Swain allowed limited, targeted, proportional, and efficient discovery of, among other things, documents "governing" the PRIFA and HTA bonds. Rule 56(d) Order at 7, 11.  Because Defendants' document requests did not define the word "governing," the Government Parties objected to requests using that term.  However, the Government Parties also identified the specific documents they considered to be "governing" the bonds and the flow of funds.[6]  The Government Parties' responses also directed Defendants to the governing materials AAFAF had already produced—agreements, bound volumes, and transfer orders—and specified what additional documents they would produce.  *Id.*

7.      The parties met and conferred on February 23, 2021, primarily regarding the scope of the Government Parties' intended search.  The Government Parties made clear they objected to

---

[6] *See* Mot. Ex. B at 17 (identifying PRIFA Trust Agreement, Lockbox Agreement and "regulations, circular letters, policies, procedures, or other official documents directing the transfer of Rum Tax Remittances"); *id.* Ex. D at 15 (identifying the 1968 and 1998 resolutions, "regulations, circular letters, policies, procedures, or other official documents directing the transfer of Excise Taxes and Toll Revenues.").  There was no "Catch-22."  Mot. ¶ 8.

conducting broad searches to locate documents "relating to" the topics set forth in the Rule 56(d) Order.  *See* Mot. Ex. F at 2-3.

8.      In a February 28, 2021 letter, Defendants argued the Government Parties' discovery responses did not comply with Federal Rule of Civil Procedure 34(b)(2)(C) because they did not identify the specific objections pursuant to which the Government Parties would be withholding documents.  Mot. Ex. E at 2-3.

9.      During a March 1, 2021 meet and confer, the Government Parties reiterated they would search for and produce documents responsive to the topics in the Rule 56(d) Order, but they would not conduct broad custodian and search term reviews to locate documents "concerning" the topics in the Rule 56(d) Order.  The Government Parties also explained they did not intend to take a "hyper technical" approach to identifying documents responsive to the topics in the Rule 56(d) Order.  As an example, the Government Parties explained if they located a hard copy email within the scope of what they otherwise agreed to provide, the document would not be withheld solely because it is an email.  Similarly, the Government Parties said they would not construe the Rule 56(d) Order's language allowing discovery into "policies and procedures" related to the flow of funds to refer only to documents literally called "policies and procedures."  But the Government Parties did ***not*** agree to produce ***all*** non-privileged document they happened to find in the course of their search.  On March 3, 2021, Defendants filed a motion to compel production of documents and communications "concerning" most of the topics in the Rule 56(d) Order, which the Government Parties opposed.  *See* ECF Nos. 126, 129.

10.     On March 4, 2021, the Government Parties sent a letter to Defendants disputing the contention in Defendants' February 28 letter that their responses did not comply with Rule 34. Mot. Ex. F.  The March 4 letter made clear the Government Parties had not agreed to produce all

4

materials responsive to the Defendants' requests as written.  In particular, the letter delineated

specific parameters regarding what the Government Parties did and did not agree to produce:

- Declining to produce all documents "related to" the bonds and agreeing that "[t]o the extent the Government locates official statements or agreements related to the PRIFA, CCDA, or HTA bonds, it will produce them."  *Id.* at 4

- "As a threshold matter, the Government is not agreeing to search for and produce all Communications regarding the topics in Defendants' requests."  *Id.* at 7.

- "The Government disclosed precisely what it construes the word 'governing' to mean . . . .In particular, the Government does not agree with Defendants' contention that documents governing the bonds could include documents that are not legally operative."  *Id.*

11.    The March 4, 2021 letter also explained the Government Parties needed more

information about Defendants' positions to determine if there was an actual dispute regarding the

Government Parties' objections:

- "The Government stands by its objections to the subparts [as beyond the scope of the Rule 56(d) Order].  To the extent Defendants wish to meet and confer regarding specific issues, the Government is willing to discuss further."  *Id.* at 11-12

- "The Government's objection to the terms 'concerning,' etc., is that they are so broad as to render it unclear what [Defendants] believe they are entitled to beyond what the Government has agreed to provide.  We request that you make your requests with specificity."  *Id.* at 12.

12.    Thus, far from saying there was no "real issue" regarding the Government Parties'

objections (Mot. ¶ 13), the Government Parties suggested the parties meet and confer regarding

"concrete disputes as to the scope of production" rather than engage in "academic disputes

regarding [Defendants'] views of the Government's objections."  Mot. Ex. F at 2.

13.    In a letter dated March 9, 2021, Defendants declined to "respond point-by-point"

to the Government Parties' March 4 letter and asserted "Defendants understand the March 4 Letter

as indicating the Government does not intend to withhold any documents it collects if those

documents are responsive to Defendants' requests as written."  Mot. Ex. G at 2.  The Government

Parties corrected this obvious misstatement in a letter dated March 16, 2021: "Further, contrary to

your assertion, our objections do have meaning: they delineate the scope of the agreed search and *the documents we have agreed to provide pursuant to that search*." Mot. Ex. H at 1 (emphasis added). Further, because Defendants declined to identify any specific dispute regarding the Government Parties' objections, the Government Parties explained, "we understand your March 9, 2021 letter to acknowledge that the parties do not have a specific pending dispute on the scope of the search *or production agreement* apart from the pending motion to compel." *Id.* (emphasis added).

14.     During a meet and confer on April 20, 2021, the subject of Defendants' subpoenas to the Subpoenaed Firms was discussed. Defendants argued their broad subpoenas did not circumvent the Government Parties' objections, asserting (falsely) that the Government Parties had agreed not to object to the production of any document on any ground other than privilege. The Government Parties disputed that claim during the meet and confer and in a letter sent the next day. Mot. Ex. P at 1-3. The Government Parties emphasized, "if Defendants believe they are entitled to documents the Government Parties have not agreed to provide, we are willing to meet and confer." *Id.* at 3.

15.     Defendants responded by asking the Government Parties to catalogue the objections on which the Government Parties withheld documents they (or the Subpoenaed Firms) collected. Mot. Ex. Q at 10. The Government Parties' response reminded Defendants of the Government Parties' prior correspondence stating exactly what they agreed to produce, and, as relevant to the Subpoenaed Firms, they had specifically objected to producing drafts or emails relating to the bond documents. *Id.* at 7-8. Feigning confusion, Defendants repeated that they needed an "explanation of which objections were actually the basis of decisions to withhold" documents but failed to identify any documents they believed should have been produced. *Id.* at

6

5-6.  It was at that point, the Government Parties noted the parties appeared to be at an impasse on this issue.  *Id.* at 4.

## II.      DEFENDANTS CIRCUMVENTED THE GOVERNMENT PARTIES' OBJECTIONS.

16.      As noted, Defendants served broad subpoenas on the Subpoenaed Firms seeking the production of documents from their client files the Government Parties had clearly objected to producing (for example, draft bond documents and negotiation emails).  *See generally* Mot. for Protective Order, ECF No. 174.  As the ethical rules require, certain firms sought guidance from the current representatives of the clients whose files were at issue.  *See* 473 ABA Formal Opinion at 1, 8 (Feb. 17, 2016)[7] (a lawyer receiving a subpoena for client documents must "consult [with] the client about how to respond to the demand" and, if so instructed "assert all reasonable claims against disclosure and seek to limit the subpoena or other initial demand on any reasonable ground.");  Mot. for Protective Order ¶¶ 7-8, 15-17.  The Government Parties' current counsel communicated their clients' legal position to these firms, and directed them to interpose the same objections the Government Parties interposed to Defendants directly.

17.      The Government Parties had assumed Defendants subpoenaed the law firms to ensure completeness of the production of governing documents that could not be located in the Government Entities' files (like an executed copy of the 1989 first supplement to the PRIFA Trust Agreement) or to locate digital copies of aged, fragile materials the Government Entities have only in hard copy (like the PRIFA 1988 bound volume).  However, it became clear Defendants intended to use these subpoenas to collect materials beyond the "governing" documents.  For instance, in an April 20, 2021 letter, Assured's counsel explained to one of the Subpoenaed Firms Assured

---

[7] *Available at*
https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/aba_formal_opinion_473.authcheckdam.pdf

was seeking parol evidence of the parties' subjective understandings: "Non-final documents –

including, for example, communications and drafts exchanged during an arms-length negotiation

– are highly probative of the parties' understanding of their obligations with relation to the HTA

Bonds." Mot. for Protective Order, Ex. R. Defendants did not copy the Government Parties'

counsel on these communications or include them in any of their meet and confers with the

Subpoenaed Firms.

## III.   DEFENDANTS MADE UNFOUNDED ACCUSATIONS OF INTERFERENCE WITH OTHER THIRD-PARTY SUBPOENAS.

18.     During a 6:00 p.m. Eastern meet and confer regarding multiple issues on April 15,

2021, Defendants for the first time asked the Government Parties to disclose any communications

they had with subpoenaed third parties. *See* ECF No. 156 ¶ 48.

19.     In a letter sent the next day, the Government Parties provided information regarding

their discussions with subpoenaed third parties. *See* Mot. Exs. O, P. With respect to the

Subpoenaed Firms, the Government Parties explained that their counsel communicated their

clients' legal position to certain of the firms. Mot. Ex. O at 2-3; *id.* Ex. P. at 6. The Government

Parties also explained that, with respect to auditors, the Government Entities requested their

assistance in collecting materials responsive to this Court's March 26, 2021 order and reviewed

the auditors' anticipated productions for privilege. *Id.* Ex. O at 3. The Government Parties made

clear they ***did not*** direct auditors to raise specific objections or withhold any documents on

responsiveness grounds. *Id.* Ex. P. at 5. The Government Parties also explained their counsel had

brief conversations with counsel for Bacardi and Destilleria Seralles regarding the status of the

litigation generally but ***did not*** instruct the rum producers as to how to respond to the subpoenas.

*Id.* Ex. O at 3; *Id.* Ex. P. at 5. Defendants knew this when they filed the Motion, and yet

deliberately omitted it from their factual recitation to this Court. *See* Ex. 1 (letter from counsel to

8

Bacardi stating she had discussed with counsel for Ambac that neither the Government Parties nor their counsel "has ever instructed, directed, or even suggested what objections Bacardi should make in responding to Ambac's Rule 45 subpoenas or what documents to produce.").

**ARGUMENT**

I.   **THIS COURT SHOULD NOT COMPEL THE PRODUCTION OF EMAILS, DRAFTS AND OTHER COMMUNICATIONS THAT DO NOT "GOVERN" THE PRIFA AND HTA BONDS.**

    A.   **Drafts and Communications "Relating To" the Bond Documents Are Beyond the Scope of the Court's Rule 56(d) Order.**

20.   While Defendants' Motion lacks clarity, Defendants do seek to compel the production of documents they concede are not "governing," like memoranda or due diligence documents, on the basis they are "probative to *identifying* governing documents." *Id.* ¶ 35 (emphasis original).  This reasoning is inconsistent with the Rule 56(d) Order, which allowed limited, targeted, proportional, and efficient discovery into "documents governing" the bonds. *See* Rule 56(d) Order at 7, 9, 11.  Moreover, the suggestion that Defendants need discovery to locate governing documents is not credible.  The Government Parties have already produced all governing documents.  If Defendants believe other governing documents exist, given they insured billions of dollars of these bonds at their issuance, they should be in Defendants' files, or readily accessible to them through the bond trustee.

21.   The Rule 56(d) Order also did not authorize discovery of documents "probative of the parties' understanding of their obligations," as Defendants have argued to the Subpoenaed Firms.  *See* Mot. for Protective Order Ex. R at 2.  As Judge Swain and this Court already held in connection with the lift stay motions, the parties' subjective state of mind is not relevant.  *In re Fin. Oversight & Mgt. Bd. for P.R.*, 618 B.R. 619, 636 (D.P.R. 2020) (Swain, J.) ("Regardless of how, as a factual matter, Fund 278 monies were treated, even implicit 'recognition' of authority

9

cannot itself confer authority."); Tr. of Motion to Compel Hearing at 230:19-21 (Mar. 4, 2020) (Dein, Mag. J.) ("[I]t seems to me that state of mind is not an issue.  Individuals' understanding of things is not the issue.").

22.     Tellingly, in their own Rule 56(d) declarations seeking discovery, Defendants themselves used the term "governing" to refer to the final, operative agreements.  For PRIFA, Defendants used the term to request a "complete set of legal documents governing the PRIFA bonds."  *See* ECF No. 82 ¶ 24.  The CCDA and HTA 56(d) declarations similarly refer to "governing agreements" and "relevant legal documents."  *See* Case No. 20-004, ECF No. 80 ¶ 25; Case No. 20-005, ECF No. 97 ¶ 72.  This is exactly what the Government Parties agreed to produce and have in fact produced.

23.     The Government Parties learned for the first time in reading the Motion that Defendants contend the Subpoenaed Firms have materials explaining the flow of funds, the nature and location of the Infrastructure Fund, and documents regarding the HTA Executive Director's authority to execute the 2002 Security Agreement.  *See* Mot. ¶ 36.  (This is precisely the information the Government Parties repeatedly requested of Defendants during meet and confers, but Defendants refused to provide.  *See, e.g.*, Mot. Ex. Q.)  To be clear: The Government Parties have no objection to the firms producing those materials, subject to a privilege review.  However, Defendants should not be entitled to bootstrap off of that limited additional production and ignore the clear limitations of the Rule 56(d) Order.

**B.     The Government Parties Preserved All Their Objections Regarding Producing Non "Governing" Materials, Regardless of Whether Such Documents Are in the Client Files of Law Firms.**

24.     Defendants seek an order compelling the Government Parties to produce all non-

10

privileged documents their counsel or the Subpoenaed Firms[8] collected without regard to whether
such documents are within the bounds of what the Court ordered was the proper subject of
discovery.  *See* Mot. Ex. A.  There is no basis for Defendants' suggestion that the scope of
permissible discovery is dictated by what the Government Parties or third parties ***collected***, rather
than the specific topics the Court carefully articulated under the Rule 56(d) Order or what the
parties agreed to produce.  Defendants' argument rests on a fiction that the Government Parties
either agreed to produce any documents responsive to their requests "as written" or, that they have
acceded to it by not being forceful enough in their correction of Defendants' misstatement of their
position.  Mot. ¶¶ 25-26.  As explained above, this is false.

25.     Defendants' argument that the Government Parties waived the scope limits the
Court set forth in the Rule 56(d) Order is also wrong.  Mot. ¶¶ 26-29.  "Waiver is a serious sanction
to be imposed in cases of unjustified delay, inexcusable conduct, bad faith or other flagrant
violations."  *Rivera v. Kmart Corp.*, 190 F.R.D. 298, 300 (D.P.R. 2000) (finding objections not
waived for untimeliness).  None of those factors are present here.  To the contrary, the Government
Parties have fully complied with their discovery obligations.

26.     Defendants wrongly argue this Court should find a waiver because the Government
Parties purportedly did not comply with Rule 34(b)(2)(C).  *See* Mot. ¶ 27.  Rule 34(b)(2)(C)
requires an objection state whether any responsive materials are being withheld on the basis of that
objection.  The advisory committee notes to the 2015 amendment explain, "[a]n objection that
states the limits that have controlled the search for responsive and relevant materials qualifies as a
statement that materials have been 'withheld.'"  Fed. R. Civ. P. 34, Adv. Committee Notes to 2015
Amendment; *see also Rowan v. Sunflower Electric Power Corp.*, 2016 WL 3743102, at *5 (D.

---

[8] The subpoenas to the auditors and rum producers are not at issue because the Government Parties did not direct any of these entities to withhold materials on responsiveness grounds.  *See* Mot. Ex. O at 3-4; *id.* Ex. P at 5.

11

Kan. July 13, 2016) (holding Rule 34(b)(2)(C) was satisfied where party's "[search] limits are clearly stated in its [responses]").  Here, the Government Parties' objections disclosed the scope of their intended search, how the Government Parties were interpreting ambiguous terms, and the precise portions of the requests the Government Parties objected to as beyond the scope of the Rule 56(d) Order.  *See* Mot. to Compel Exs. B-D.  The Government Parties' responses further directed Defendants to the specific categories of responsive materials produced, and specified the additional materials the Government Parties would produce.[9]  Moreover, the Government Parties disclosed in multiple correspondence that they objected to Defendants' requests as beyond the scope of what the Rule 56(d) Order allowed.  *See, e.g.*, Mot. to Compel Exs. F, H.  Far from acting in bad faith, the Government Parties satisfied Rule 34(b)(2)(C) and put Defendants on full notice that Defendants' requests were beyond the scope of the Rule 56(d) Order.  *See Wylie v. Stipes*, 2010 WL 11580051, *1 (D.P.R. Aug. 2010) (declining to find waiver where responses were not timely served in part because "plaintiff has been aware for some time regarding the nature of the SLC's main objection--i.e., that plaintiff's request exceeds the scope of the discovery allowed at this stage of the litigation.").

27.     Defendants also offer no support for their contention that it was somehow bad faith conduct for the Government Parties to conclude, prior to the filing of the Motion that "the parties appear to have reached an impasse."  Mot. ¶¶ 29-30; *id.* Ex. Q at 4.  This is a particularly improper argument given the Government Parties stressed repeatedly they were willing to engage in conversations regarding the scope of production.  *See* Mot. Ex. F at 2; *id.* Ex. P at 3.  Defendants

---

[9] Defendants' references to this Court's prior directive that the Government Parties provide information regarding the scope of their searches are beside the point.  *See* Mot. ¶ 28-29.  Defendants do not, and cannot, dispute the Government Parties provided a comprehensive, thirteen-page letter cataloging their search efforts.  *See* Mot. Ex. I.  Defendants' complaint that objections were not included in that particular letter ignores the multiple other letters the Government Parties had already sent detailing their objections.  *Cf.* Mot. Exs. F, H.

instead have engaged in abstract disputes regarding process at the expense of concrete discussion about additional materials to which Defendants believe they are entitled.[10]

28.    This is not an academic issue.  While most of the Subpoenaed Firms did not conduct a broad document search before they sought guidance from their clients' legal representatives on how to respond to the subpoenas, at least one firm collected thousands of emails potentially concerning negotiation of the bonds and sent them to the Government Entities' current counsel to review.  These documents do not "govern" the HTA and PRIFA bonds, by definition and nature. They are negotiation emails and emails attaching non-binding, non-final drafts.  The Government Parties should not be obligated to review all of these emails for privilege, prepare a privilege log, and produce any remaining documents, especially given that they successfully opposed this very kind of custodian and search term review in connection with Defendants' prior motion to compel and have always objected to producing this very kind of material because it is not relevant. Defendants' suggestion their tactics would create no incremental burden (Mot. ¶ 37) is untrue.

29.    Reviewing thousands of emails is the opposite of what the Court allowed— particularly since these emails are not "governing" documents.  *See* Rule 56(d) Order.  Moreover, it is improper for Defendants to use third party subpoenas to circumvent the limits in the Rule 56(d) Order.  *See* Mot. for Protective Order ¶¶ 22-23; *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 2014 WL 1047411, at *3 (S.D. Fla. Mar. 18, 2014) (A "subpoena may not be used to circumvent or do an 'end-run' around the discovery rules that apply to a party.").

---

[10] Defendants' suggestion that they are unable to identify what additional information they need until they have further discussions about the Government Parties' objections is belied by the letter they sent the day before they filed the Motion, which specified very precise categories of materials they seek.  *See* ECF No. 172-9 (Apr. 28, 2021 letter identifying materials allegedly missing from the Government Parties' document production).  The Government Parties are in the process of preparing a response to that letter.  To the extent the parties reach an impasse in those discussions, Defendants may seek relief with this Court.  That is the efficient way to complete discovery—not a motion based on hyperbole and conjecture.

## II.   DEFENDANTS ARE NOT ENTITLED TO ADDITIONAL DISCLOSURES REGARDING THE GOVERNMENT PARTIES' LAWYERS' COMMUNICATIONS.

30.     Defendants seek an order compelling even more disclosures from the Government Parties' lawyers regarding their communications with third parties. Mot. ¶¶ 39-43 & Ex. A. Such ancillary "discovery on discovery" is improper. *See, e.g.*, *Mortgage Res. Serv., LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712, at \*6-7 (S.D.N.Y. July 14, 2016) (denying discovery on discovery to investigate moving party's "mere speculation (and some overblown rhetoric)" accusing the adversary of discovery misconduct) ("[R]equests for such 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad infinitum."); *Hanan v. Corso*, 1998 WL 429841, at \*7 (D.D.C. Apr. 24, 1998) (refusing to allow discovery on discovery).

31.     The concerns normally precluding discovery into such matters are heightened here, given the Court's admonition that discovery is to be limited, targeted and efficient. Moreover, the ample disclosures already provided by the Government Parties confirm further inquiry is unnecessary. As the Government Parties have already explained, their counsel asked the audit firms to collect and produce materials responsive to this Court's order on Defendants' motion to compel to *assist* the Government Parties in complying with their obligations, and did not direct them to raise any specific objections or to withhold documents on responsiveness grounds. *See* Mot. Ex. O at 3; *id.* Ex. P. at 5-6. The Government Parties' lawyers also did not direct any rum producer to raise any specific objections or suggest documents it should either produce or withhold, as counsel for one of the rum producers separately confirmed. *See* Ex. 1; *see also* Mot. Ex. O at 3; Ex. P. at 5-6.

32.     If Defendants believe they are entitled to production of documents from the auditors or rum producers, they should meet and confer with those entities. Any disputes Defendants have

14

regarding those subpoenas have nothing to do with any instruction or suggestion by the Government Parties' lawyers.  Further, the substance of these conversations is irrelevant to the issues before the Court in these adversary proceedings.  Defendants' continued suggestion of misconduct and insistence on additional discovery from the Government Parties' lawyers is unprofessional, baseless harassment.  This Court should unequivocally reject it.

33.     Defendants erroneously argue the Government Parties have claimed discovery from former counsel is categorically barred.  *Id.* ¶¶ 44-45.  This is untrue.  Rather, the Government Parties contend Defendants improperly used third party subpoenas to evade objections with respect to production of the Government Parties' documents.  *See generally* Mot. for Protective Order. When Defendants' intentions regarding those subpoenas became clear, the Government Parties met and conferred with Defendants and ultimately moved for a protective order, just as Defendants suggest.  *See* Mot. ¶ 45; Mot. for Protective Order.

## CONCLUSION

34.     For the foregoing reasons, Defendants' Motion to Compel should be denied.

15

Dated: May 3, 2021
     San Juan, Puerto Rico

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 15205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:    (787) 764-8181
Fax:    (787) 753-8944
Email: hermann.bauer@oneillborges.com

/s *Michael A Firestein*

Martin J. Bienenstock
Jeffrey Levitan
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:    (212) 969-3000
Fax:    (212) 969-2900
Email: mbienenstock@proskauer.com
       jlevitan@proskauer.com
       ebarak@proskauer.com

Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel:    (310) 557-2900
Fax:    (310) 557-2193
Email: mfirestein@proskauer.com
       lrappaport@proskauer.com

*Attorneys for the Financial*
*Oversight and Management Board,*
*as Representative of the Commonwealth*

Respectfully submitted,

/s/ *Elizabeth L. McKeen*
John J. Rapisardi
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel:  (212) 326-2000
Fax:  (212) 326-2061

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Tel:  (949) 823-6900
Fax:  (949) 823-6994

*Attorneys for the Puerto Rico Fiscal*
*Agency and Financial Advisory Authority*

/s/ *Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email:  lmarini@mpmlawpr.com

/s/ *Carolina Velaz-Rivero*
Carolina Velaz-Rivero
USDC No. 300913
Email:  cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Tel:  (787) 705-2171
Fax:  (787) 936-7494
*Co-Attorneys for the Puerto Rico Fiscal*
*Agency and Financial Advisory Authority*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date a true and exact copy of this notice was filed with

the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

/s/ *Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi