# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>    Defendants. | Adv. Proc. No. 20-00003-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff, | Adv. Proc. No. 20-00005-LTS |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

v.

AMBAC ASSURANCE CORPORATION, *et al.*,

    Defendants.

**REPLY IN SUPPORT OF GOVERNMENT PARTIES'**
**URGENT MOTION FOR PROTECTIVE ORDER REGARDING**
**SUBPOENAS *DUCES TECUM* TO GOVERNMENT PARTIES' LAW FIRMS**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.     IT IS IMPROPER FOR DEFENDANTS TO USE THIRD-PARTY SUBPOENAS TO CIRCUMVENT THE GOVERNMENT PARTIES' OBJECTIONS ................................................................................................... 3

    II.    IT IS IMPROPER FOR DEFENDANTS TO USE THIRD-PARTY SUBPOENAS TO EXPAND THE SCOPE OF DISCOVERY. ............................ 5

CONCLUSION ............................................................................................................................. 6

**To the Honorable United States Magistrate Judge Judith Gail Dein:**

The Oversight Board[2] and AAFAF[3] (together the "Government Parties") respectfully submit this reply in support of the *Government Parties' Urgent Motion for Protective Order Regarding Subpoenas* Duces Tecum *to Government Parties' Law Firms* (ECF No. 174) (the "Motion").[4]

## PRELIMINARY STATEMENT

1. The Government Parties seek a protective order to ensure that any disputes regarding the production of the Government Entities' documents in the client files of the Subpoenaed Firms are resolved directly with the Government Parties. Defendants' Opposition (ECF No. 178) offers no reason why this Motion should not be granted and the proposed protective order issued. Defendants instead try to create the false impression that a protective order is unnecessary because, according to Defendants, the Government Parties allegedly filed the Motion to blunt Defendants' Motion to Compel (ECF No. 173). Defendants' assertion that the Motion is reactive is untrue, and, in any case, the Government Parties' Motion is meritorious. Defendants have continually refused to consent to the straightforward relief the Government Parties request, and the Court's intervention is both necessary and appropriate.

2. Before filing their Motion, the Government Parties asked that O'Melveny and/or Proskauer "be included in all meet and confers with the subpoenaed law firms going forward." Mot. to Compel, ECF No. 173, Ex. Q at 8. Defendants responded they would consider copying

---

[2] The Financial Oversight and Management Board for Puerto Rico acts as representative of the Commonwealth pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act, codified in 48 U.S.C. §§ 2101-2241.
[3] The Puerto Rico Fiscal Agency and Financial Advisory Authority responds in its own capacity, as successor to GDB as fiscal agent, and as representative pursuant to Act 2-2017 of the Commonwealth, HTA, PRIFA, CCDA, and the Tourism Company (the "Government Entities").
[4] Unless otherwise stated, defined terms used herein have the same meaning as in the Motion. References to "ECF No. __" refer to Electronic Case Filing numbers in Case No. 20-00003 unless stated otherwise.

1

O'Melveny and Proskauer on calendar invites *if* the Government Parties (i) agreed not to actually participate in the meet and confers (by being, in Defendants' words, in "listening mode" only), and (ii) accepted that calls would be scheduled without regard to the availability of the Government Parties' counsel. *Id.* at 6-7. Of course, the Government Parties cannot preserve privileges and protect their rights if they agree to act as passive bystanders. Defendants' refusal to meaningfully include the Government Parties in discussions with the Subpoenaed Firms necessitated this Motion.

3. Defendants argue a protective order is unnecessary because, they claim, they already started copying the Government Parties' lawyers on invitations to meet and confer with the Subpoenaed Firms and the Government Parties "have joined at least one meet-and-confer already." Opp. ¶ 12. The truth—including Defendants' unwillingness to accept the concerns expressed by the Government Parties in the Motion (much less their clear validity)—illustrates exactly why a protective order is necessary.

4. Indeed, on May 3, 2021, after the Motion was filed, Defendants tried to schedule a meet and confer with counsel for Greenberg on ***twenty minutes notice***, copying only one lawyer for AAFAF (and no lawyers for the Oversight Board). *See* Ex. U. The single lawyer for AAFAF to whom the email was addressed happened to see the email in time to object to the last-minute scheduling and coordinated the attendance of her co-counsel. Such tactics do not evidence Defendants' cooperation. To the contrary, Defendants' behavior further demonstrates that, absent the requested protective order, Defendants will continue their efforts to hinder and prevent the Government Parties from ensuring their legitimate objections to the production of certain materials, outside the scope of the Court's discovery order, can be implemented consistently, regardless of where such files are located.

5. The need for a protective order is further demonstrated by Defendants' refusal to agree that this Court's rulings on the scope of discovery should apply equally to the Government Entities' documents in the Subpoenaed Firms' client files. The Government Parties explained in their meet and confer exchanges that this Motion could be avoided if Defendants would "agree the Court's ruling on any motion to compel with respect to the Government's documents will govern the appropriate scope of subpoenas to the law firms." Mot. to Compel, ECF No. 173, Ex. Q at 8. Defendants' response was to reserve their rights, without offering any explanation why discovery of the Government Entities' documents should proceed differently if those documents are housed at a law firm rather than in a file cabinet at PRIFA. *Id.* at 6. At a minimum, Defendants' disjointed approach to discovery flies in the face of Judge Swain's directive that discovery be efficient.

6. Accordingly, the Government Parties respectfully submit that this Court should enter an order 1) requiring Defendants to negotiate production of documents in the possession of the Subpoenaed Firms through the Government Parties' current lawyers, and 2) directing Defendants to cease any and all efforts to obtain from the Subpoenaed Firms production of documents that the Government Parties have not themselves agreed to produce.

## ARGUMENT

### I. IT IS IMPROPER FOR DEFENDANTS TO USE THIRD-PARTY SUBPOENAS TO CIRCUMVENT THE GOVERNMENT PARTIES' OBJECTIONS.

7. Defendants claim they did not intentionally circumvent the Government Parties' objections by seeking drafts and negotiation emails the Government Entities did not agree to produce from the Subpoenaed Firms. Opp. ¶ 18. Even assuming, *arguendo*, that Defendants did not initially realize their discussions with the Subpoenaed Firms would circumvent the Government Parties' objections (a difficult assumption to imagine),[5] it does not explain

---

[5] The assumption is not sound. *See* Opp. to Mot. to Compel, ECF No. 179, ¶¶ 6-15.

3

Defendants' failure to change their behavior once the issue became clear in the context of the April 16, 2021 joint status report, or their refusal to agree that further disputes on this and other related issues be coordinated directly with the Government Parties' current counsel instead of the Subpoenaed Firms.

8. Defendants not only excluded the Government Parties' counsel from negotiations with the Subpoenaed Firms regarding production of the Government Entities' client files, they also sought to affirmatively *enjoin* the lawyers for the Government Parties in these cases and the Subpoenaed Firms from engaging in the very coordination required by a formal ABA ethics opinion. *See* Mot. ¶¶ 5-12; Opp. to Mot. to Compel, ECF No. 179, ¶¶ 16-17. Defendants do not, and cannot, dispute these facts. Nor can Defendants dispute that, despite being fully aware of the Government Parties' objections, they pressured the Subpoenaed Firms to take a different position than the Government Parties' current counsel advanced regarding production of client documents. On April 20, 2021, four days after the Government Parties made clear their position that subpoenas cannot be used to circumvent the Government Parties' objections, counsel for Assured sent counsel for Greenberg, Hawkins, and Nixon correspondence asserting disagreements with the Government Parties' objections and asking to meet and confer regarding additional productions, notwithstanding those objections. Motion Exs. R-T; *Cf.* Opp. ¶ 21 (denying these letters "pressured" the Subpoenaed Firms to take a different position than the Government Parties). Defendants admit they did not copy the Government Parties on these letters and did not contemporaneously forward them. Instead, Defendants provided the letters in a document production *seven days after the fact*, well after the Subpoenaed Firms themselves advised the Government Parties of the correspondence. Opp. ¶ 14.[6] Providing copies of communications after

---

[6] The reference to the Oversight Board's counsel's comments about confusion over whether Defendants timely provided a single third-party production is a red herring. (Opp. ¶ 15.) Counsel's remark was based on his then

4

the fact, and too late to afford the Government Parties a meaningful opportunity to participate in any meet and confer, is clearly insufficient and does not absolve Defendants of their transgressions.

9. Defendants continue to seek production of the Government Entities' client files from the Subpoenaed Firms. Defendants should be required to include current counsel for the Government Parties in discussions with the Subpoenaed Firms. To the extent disputes regarding the scope of production arise, Defendants should be required to engage with the Government Parties directly.

## II. IT IS IMPROPER FOR DEFENDANTS TO USE THIRD-PARTY SUBPOENAS TO EXPAND THE SCOPE OF DISCOVERY.

10. The Government Parties want consistency and efficiency. In whatever way this Court defines the scope of permissible discovery regarding draft bond documents and negotiation emails in the context of Defendants' Motion to Compel, the same defined scope of discovery should apply to Defendants' attempt to obtain discovery from the Subpoenaed Firms. Defendants' continued refusal to accept this basic concept is unfathomable. Defendants have not made, and cannot make any credible argument why the scope of allowable discovery of documents "governing" the bonds under the Rule 56(d) Order should be any different when directed to the Subpoenaed Firms' client files than it is when directed directly to the Government Entities. *Cf.* Opp. ¶¶ 22-26.

11. Contrary to Defendants' assertions, the Government Parties have not argued that e-mails are categorically excluded from the scope of discovery. Opp. ¶ 23. Rather, the Government Parties submit that the draft agreements and negotiation emails Defendants seek from the Subpoenaed Firms are irrelevant and beyond the scope of permissible discovery because they

---

understanding regarding a particular witness, which he corrected within seconds after Defendants' counsel's clarifying response. Opp. Ex. A. at 57:10-19. Defendants' reference to his statement is irrelevant to the issues presented in this Motion.

5

are not documents "governing" the bonds. *See* Mot. ¶¶ 23–25; Opp. to Mot. to Compel, ECF No. 179, ¶¶ 20-23. By misconstruing the Government Parties' position, Defendants' attempt to distinguish the various cases cited in the Motion misses the point.[7]

12. Defendants claim they did not ask the Subpoenaed Firms to produce negotiation emails. Opp. ¶ 24. But their claim is not consistent with the information the Government Parties have received from certain of the Subpoenaed Firms, at least one of which sent the Government Entities' counsel thousands of emails requested by Defendants to review prior to production. Even assuming, for the sake of argument, there was a miscommunication or misunderstanding, it demonstrates exactly why current counsel for the Government Parties—who, unlike the Subpoenaed Firms, are familiar with the parameters this Court set on discovery—should be included in discussions with the Subpoenaed Firms. There is no legitimate reason for Defendants to continue to oppose the Government Parties' Motion on this point.

## CONCLUSION

13. For the reasons set forth herein, and the Government Parties' Motion, the Government Parties respectfully request that this Court grant the Motion and enter a protective order, (i) compelling Defendants to negotiate the production of documents in the possession of the Subpoenaed Firms through the Government Parties' current lawyers, and (ii) directing Defendants to cease any and all efforts to obtain from the Subpoenaed Firms production of documents that the Government Parties have not agreed to produce.

*[Remainder of page intentionally left blank]*

---

[7] Defendants' reliance on portions of the March 17, 2021 hearing transcript to suggest this Court only denied an e-mail review on burden grounds is similarly unavailing. Opp. ¶ 23. In the cited portion of the transcript, the Court held that "an e-mail search on the words 'infrastructure fund' is not appropriate." Opp. Ex. A at 69:5-7. Nothing about that ruling suggests that production of draft agreements or negotiation emails—whether from the Government Entities directly or from the Subpoenaed Firms—is within the scope of the Rule 56(d) Order.

Dated: May 6, 2021
San Juan, Puerto Rico

/s/ *Hermann D. Bauer*

Hermann D. Bauer
USDC No. 15205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com

/s *Michael A Firestein*

Martin J. Bienenstock
Jeffrey Levitan
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
jlevitan@proskauer.com
ebarak@proskauer.com

Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 557-2900
Fax: (310) 557-2193
Email: mfirestein@proskauer.com
lrappaport@proskauer.com

*Attorneys for the Financial
Oversight and Management Board,
as Representative of the Commonwealth*

Respectfully submitted,

/s/ *Elizabeth L. McKeen*

John J. Rapisardi
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Tel: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory Authority*

/s/ *Luis C. Marini-Biaggi*

Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com

/s/ *Carolina Velaz-Rivero*

Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave.
Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494
*Co-Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory Authority*

7

## **CERTIFICATE OF SERVICE**

I hereby certify that on this same date a true and exact copy of this notice was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

/s/ *Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi

8