# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>    Defendants. | Adv. Proc. No. 20-00003-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br> as representative of <br> THE COMMONWEALTH OF PUERTO RICO, <br> Plaintiff, <br> v. <br> AMBAC ASSURANCE CORPORATION, *et al.*, <br> Defendants. | Adv. Proc. No. 20-00004-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br> as representative of <br> THE COMMONWEALTH OF PUERTO RICO, <br> Plaintiff, <br> v. <br> AMBAC ASSURANCE CORPORATION, *et al.*, <br> Defendants. | Adv. Proc. No. 20-00005-LTS |

**DEFENDANTS' REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL PRODUCTION OF
WITHHELD DOCUMENTS IN THE REVENUE BOND ADVERSARY PROCEEDINGS**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT** ................................................................................................................................ 2

    I.      THE GOVERNMENT'S ARGUMENTS THAT THE WITHHELD
           DOCUMENTS SHOULD NOT BE PRODUCED ARE MERITLESS. ........................ 2

          A.      Defendants' Document Requests Are Within the Scope of the Rule 56(d)
                Order. ..................................................................................................................... 2

          B.      The Government Waived Its Objections to Producing the Documents. ............. 5

    II.     THE COURT SHOULD COMPEL THE GOVERNMENT TO DISCLOSE
           ITS COMMUNICATIONS WITH SUBPOENAED THIRD PARTIES. ...................... 9

**CONCLUSION** .......................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Fin. Oversight & Mgmt. Bd. for P.R.,*
  989 F.3d 170 (1st Cir. 2021) ..................................................................................................4

*Robbins & Myers, Inc. v. J.M. Huber Corp.,*
  2011 WL 3359998 (W.D.N.Y. Aug. 3, 2011) .........................................................................9

**Other Authorities**

MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY ..........................................................................2

**To the Honorable United States Magistrate Judge Judith Gail Dein:**

Ambac Assurance Corporation, Financial Guaranty Insurance Co., The Bank of New York Mellon, and U.S. Bank Trust National Association ("Defendants")[2] submit this reply ("Reply") in support of the Motion and to respond to the *Government Parties' Opposition to Defendants' Motion to Compel* (ECF No. 16675) (the "Opposition" or "Opp."). Defendants state as follows:

## PRELIMINARY STATEMENT

1. The Opposition confirms that the withheld documents must be produced. The Government's argument that drafts are not "governing" under the Rule 56(d) Order ignores the plain text of that order—which expressly permitted discovery into "*all* versions of" the governing documents. Moreover, the Government itself plans to put drafts at issue. It indicated yesterday that it will treat a draft of an important bond document as the "governing" version, because it cannot locate the final, executed version. The Government cannot selectively pick and choose drafts that it deems "governing," while denying Defendants an opportunity to review other drafts that might raise fact issues as to whether the Government's preferred version is indeed controlling.

2. Even setting that aside, the Government fails to offer any legitimate explanation for its failure to clearly disclose that it was withholding—let alone directing others to withhold—documents. Instead, the Government acknowledges that it *knew* Defendants had misunderstood its position on March 9 (Opp. ¶ 13)—but it nevertheless failed to clearly correct the record. The Government selectively quotes from objections it made early in the process, but does not dispute that, on March 9, Defendants made clear their understanding that the Government had agreed not

---

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the *Defendants' Motion to Compel Production of Withheld Documents in the Revenue Bond Adversary Proceedings* (ECF No. 16632). Unless otherwise indicated, all ECF numbers referenced herein refer to the docket in Case No. 17 BK 3283-LTS.

to withhold documents based on scope objections. The Government *now* says Defendants' understanding was an "obvious misstatement" of the Government's position. But the Government did not say so at the time. The Government's failure to make its position on this critical point clear until now is precisely the kind of "inexcusable conduct" and "unjustified delay" that warrant deeming the Government's objections waived. (Opp. ¶ 25.)

3. Finally, the Government offers no good reason that it should not be required to answer Defendants' basic questions regarding its communications with rum producers and accountings firms. Defendants' questions on these issues are plainly relevant to how the Court should exercise its discretion under Rule 56(d) in future motion practice.

4. For these reasons, the Motion should be granted.

## ARGUMENT

### I. THE GOVERNMENT'S ARGUMENTS THAT THE WITHHELD DOCUMENTS SHOULD NOT BE PRODUCED ARE MERITLESS.

**A. Defendants' Document Requests Are Within the Scope of the Rule 56(d) Order.**

5. The Government does not dispute that the withheld documents are relevant. The Government argue only that the Rule 56(d) Order precluded discovery of anything other than final, operative contracts. The Government is wrong for several reasons:

6. *First*, the Government offers nothing to support its position that drafts are not "governing" pursuant to the Rule 56(d) Order. (Opp. ¶ 3.) The Rule 56(d) Order expressly states that "All documents governing the . . . bonds, including ***all versions*** of the" bond documents were discoverable. A draft is simply a "version" of a document. *See Draft*, MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY ("draft" is "a preliminary or tentative sketch, outline, or version (as of a document or picture)"). Drafts thus fall within the plain text of the order.

- 2 -

7. The Government cites no support for its narrower interpretation of "governing," nor does it even clearly articulate what it thinks "governing" means. At one point, it says that "governing documents" means any "final legal agreements" (Opp. ¶¶ 3, 22), but elsewhere it says that "transfer orders" are "governing" (Opp. ¶ 6), even though "transfer orders" are not "legal agreements" at all. In another place, the Government refers to the definition it used in its formal responses and objections—where it took the position that "governing" documents means only seven specific documents that have previously been produced. (*Id.*) Under that definition, the Government would not be obligated to produce *anything*. The Government itself previously objected that "governing" requires a legal conclusion. (Mot. ¶ 8.) This arbitrary line-drawing is plainly not what Judge Swain imagined.

8. *Second*, the Rule 56(d) Order does not merely order the Government to produce the "governing documents." It says, "Defendants may propound discovery requests directed to" specific topics, including governing documents. (Mot. ¶ 34 (quoting Rule 56(d) Order at 7, 9, 11).) That is fatal to the Government's "scope" argument. Defendants' requests for law firm files are indisputably "directed to" identifying the governing documents. As the Rule 56(d) Order reflects, there are disputes concerning *which* documents are the final, operative documents.

9. Indeed, just yesterday, the Government acknowledged that it has not located a final, signed version of the First Supplemental Agreement to the PRIFA Trust Agreement. (Ex. S, Ltr. from Elizabeth L. McKeen & Michael A. Firestein to John J. Hughes, III (May 5, 2021) at 2.) The Government will contend that a particular *draft* it has located proves what the final version says, and thus is controlling. But there have been fact disputes over such issues in the past, and this is no different. The Government is essentially pulling one draft out of the pile of "thousands" that it has collected (Opp. ¶ 28), and declaring that version to be "governing." Defendants are entitled to

- 3 -

see the rest of the documents to ascertain whether the Government is cherry-picking the version it likes best when there are real questions as to the final, operative text.

10. Discovering that the Parties have focused on the wrong document is not a mere hypothetical. Until recently, the parties mistakenly believed that the 1997 Amended Trust Agreement was controlling in the PRIFA case. The parties recently learned that that document might have been merely an unofficial "compilation" that was never legally operative. (Ex. S at 2.) Defendants were able to identify this issue, in part, through one of the third-party subpoenas served on a law firm—illustrating the importance of obtaining a complete production of such files.

11. *Third*, the Government concedes that at least some of the withheld documents may be relevant to topics other than the "governing" documents topic. (Opp. ¶ 23.) But the Government apparently did not consider that when doing its own review or giving instructions to other law firms. (*Id.*) Defendants' rights cannot be prejudiced by the Government's failure to consider all applicable responsiveness criteria. Insofar as the withheld documents may be relevant to any of the topics, Defendants are entitled to them.

12. The Government's other arguments against disclosure are all meritless. It tries to re-litigate its claims that Defendants should go look for the governing documents themselves. (Opp. ¶ 20; Adv. Proc. No. 20-00003-LTS, ECF No. 90, ¶ 12.) Judge Swain already rejected this argument for good reason. These are complex, multi-party transactions, involving multiple offerings going back decades. The Government itself does not have a complete set of the final documents. It is unsurprising that discovery into these issues has been necessary.

13. The Government also retreats from the language of the Rule 56(d) Order and cites outdated and superseded statements from lift-stay proceedings. (Opp. ¶ 21.) But the First Circuit recognized a "more complete record" is needed here. *In re Fin. Oversight & Mgmt. Bd. for P.R.*,

989 F.3d 170, 182 (1st Cir. 2021). Indeed, the Rule 56(d) Order authorized discovery into topics that were not covered by the earlier lift-stay discovery at all. The Government's arguments remain entrenched in the limited set of lift-stay issues, ignoring the much broader set of issues and claims now before the court.

### B. The Government Waived Its Objections to Producing the Documents.

14. The Government acknowledges that it *knew* that Defendants were operating under a mistaken understanding of its proposal. But it failed to clearly correct the record. (Opp. ¶ 13.) That failure is "inexcusable" and caused an "unjustified delay," warranting a finding of waiver. (Opp. ¶ 25 (quoting *Rivera v. Kmart Corp.*, 190 F.R.D. 298, 300 (D.P.R. 2000)).)

15. To support its claim that it told Defendants it would withhold documents, the Government selectively quotes from objections it made on or before March 4. (Opp. ¶¶ 7-12.) Even setting aside that most of those objections do not expressly state that any documents will be *withheld*, those objections pre-date the agreement the parties reached. The Government does not dispute that, after those objections, the Parties had multiple communications, at the conclusion of which, Defendants memorialized in the March 9 letter their understanding that the Government had agreed not to withhold responsive documents based on its objections. (Mot. ¶¶ 14-16.)

16. The Government now claims that Defendants' March 9 letter was an "obvious misstatement" of the Government's position. (Opp. ¶ 13.) If it was, then the Government had an obligation to say so at the time. The Government has not hesitated in the past to call out Defendants for misunderstanding or misstating the Government's position. (*See, e.g.*, Ex. T, Ltr. from Margaret A. Dale & Madhu Pocha to John J. Hughes, III (Sept. 29, 2020) at 1 ("As an initial matter, [your] September 14 Letter misstates the parties' discussions.").) In this case, the Government said nothing. Its entire March 16 response is below:

> I. THE GOVERNMENT'S OBJECTIONS TO
> DEFENDANTS' DOCUMENT REQUESTS
>
> A. The Government's Written Responses And Objections
>
> The Government Parties do not agree with Defendants' continued suggestion that the Government Parties' objections were improper or that their responses otherwise did not comply with Rule 34(b)(2)(C). Further, contrary to your assertion, our objections do have meaning: they delineate the scope of the agreed search and the documents we have agreed to provide pursuant to that search. Nevertheless, we understand your March 9, 2021 letter to acknowledge that the parties do not have a specific pending dispute on the scope of the search or production agreement apart from the pending motion to compel.

(Mot. Ex. H at 1.) Nowhere does this say that Defendants had "obvious[ly] misstate[d]" the Government's position. Quite the opposite: it indicates the parties do not have any "dispute."

17. Grasping at straws, the Government argues the second sentence "corrected" the record, by referencing "documents we have agreed to provide." (Opp. ¶ 13.) That says nothing about *withholding*. There is a difference between (i) the documents the Government "agreed to provide" (*i.e.*, the documents it agreed to locate, collect, and produce), and (ii) documents that the Government did not "agree[] to provide" but indicated that it would not *withhold* in the event that they were identified during the Government's search through central files.

18. There was only a narrow set of documents the Government affirmatively agreed to locate and produce, for example, certain bank account statements. The Government agreed to find those, even if it had to conduct separate searches to do so. But the Government also agreed that, while it would not conduct separate searches for documents it objected to, it would not *withhold* them to the extent they were identified in the Government's search through central files. For example, the Government admits that, while it did not "agree[] to provide" e-mails, it *did* agree it would not withhold responsive emails it found in its central files. (Opp. ¶ 9.) The Government

- 6 -

said the same thing for other documents, such as memos concerning Fund 278 (even though those do not fit within the narrow definition of "governing" the Government has advanced).

19. Indeed, the Government's position on "governing" documents makes sense only if it was producing whatever governing documents it found, since its objections otherwise would have led it to produce nothing at all. In CCDA, for example, the only "governing" documents the Government affirmatively "agreed to provide" were "Bond Documents," a defined term that referred to four agreements the Parties already had. (Mot. Ex. C at 12.) Taken seriously, that would mean the Government was withholding *all* governing documents, because the only ones it affirmatively "agreed to produce" had already been produced. The Government conveyed in meet-and-confers that it was not taking that absurd stance.

20. The Government's failure to comply with Rule 34(b)(2)(C) further supports Defendants' Motion. (Opp. ¶ 26.) The advisory committee note the Government cites (Opp. ¶ 26) merely conveys that, if a party describes its search and collection parameters, that implicitly conveys that any responsive documents outside those parameters will be withheld. For example, if a party lists certain custodians it will search, it is impliedly withholding documents from unlisted custodians. But that is not all the Government did here. Here, the Government secretly withheld even documents that *did* fall within the scope of the search from central files that it described. The Government was obligated under Rule 34 to make clear that it was withholding documents it did not deem "governing." Had it done so, Defendants would have moved to compel some time ago.

21. Even assuming *arguendo* that the Government's objections technically complied with Rule 34, the rule nevertheless underscores that it is the producing party's responsibility to make clear when documents are withheld. The Government never explains why it failed to disclose its withholding in the disclosures that this Court ordered the Government to make about

its search and collection efforts. (*Order on Defendants' Motion to Compel Document Discovery from the Government in the Revenue Bond Adversary Proceedings*, ECF No. 16236, at 4.)

22. The Government also does not dispute that it refused to meaningfully meet-and-confer. It offers the excuse that its refusal was justified, because it thought Defendants were "[f]eigning confusion." (Opp. ¶ 15.) The Government's allegation is baseless and wrong. Given Defendants' concern that the Government was backtracking on its prior commitments, Defendants' request for a clear explanation of what was being withheld and why was appropriate. To the extent the Government really thought Defendants were being disingenuous, that is the exact kind of misunderstanding a meet-and-confer can clear up. Notably, the Government acknowledges that it was unaware that Defendants considered these documents potentially relevant to topics other than "governing" documents—a point of confusion that also could have been cleared up with a timely meet-and-confer. (Opp. ¶ 23.)

23. Finally, to the extent the Government is arguing that reviewing "thousands of emails" would be unduly burdensome, its burden objection should not be entertained at this stage given the Government's failure to meet-and-confer. Defendants did not learn that thousands of documents were at issue until the Opposition was filed. Had the Parties met-and-conferred, they could have discussed ways to narrow scope (*e.g.*, by programmatically removing emails among the Government and its counsel, leaving only a small number of e-mails involving counterparties to be reviewed). Given the schedule, doing this now would waste time and prejudice Defendants. Regardless, reviewing "thousands of emails" is not an undue burden given the importance of identifying a complete set of governing documents. A modest team of five reviewers could complete a privilege review of "thousands of emails" in a single day.

**II. THE COURT SHOULD COMPEL THE GOVERNMENT TO DISCLOSE ITS COMMUNICATIONS WITH SUBPOENAED THIRD PARTIES.**

24. The Government's arguments against being required to answer some basic questions regarding its communications with subpoenaed entities are unavailing.

25. The ABA opinion the Government cites is a red herring, because Defendants are asking about communications with rum producers and accounting firms, not former law firms of the Government. In any event, the ABA opinion merely describes lawyers' professional responsibility upon receiving a subpoena to attempt to consult with the relevant client (or former client). (Opp. ¶ 16.) It says nothing about the meet-and-confer obligations of a *client* that is itself party to the litigation in which the subpoena was issued. As a party in this case, the Government must comply with the federal discovery rules. If the Government objects to a subpoena, it could, consistent with the ABA guidance, instruct its lawyer to hold off on producing documents until the dispute is resolved—but if it gives such an instruction, it has an obligation under Rule 45 to promptly meet-and-confer with its adversary. Here, the instructions the Government gave were contrary to its agreement with Defendants—and Defendants learned of them only long after the fact from the law firms themselves.

26. In any event, the Government does not dispute that the case law draws a much stricter line around communications with third parties like rum producers and accounting firms. For a client to advise its audit firm on potential scope objections has been held improper. *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2011 WL 3359998, at *1 (W.D.N.Y. Aug. 3, 2011); (Mot. ¶ 27.)

27. The letter the Government introduces from Bacardi resolves nothing. (Opp. Ex. 1.) Bacardi is a hostile witness, aligned with the Government in these cases; it has filed papers opposing Defendants' lift-stay motion. (*See* ECF No. 10616.) Bacardi's unsolicited letter, sent

- 9 -

on the afternoon the Government's Opposition was due, simply reprises the same incomplete assertions the Government has made. Defendants' opening brief acknowledged the Government's representation that it did not "direct" Bacardi. Defendants have not disputed that assertion; quite the contrary, they noted that the Government of course could not have "directed" rum producers because it does not control them. (Mot. ¶¶ 40-41.) That does not answer the question Defendants actually asked, which was whether the Government communicated with rum producers *or* accounting firms concerning potential objections, who initiated those communications, and which counsel from the third parties participated. The Government should welcome the opportunity to set the record straight if Defendants' concerns are unfounded.[3]

28. These questions are relevant to any future decision the Title III Court may make under Rule 56(d). In authorizing limited discovery to expedite the resolution of the Government's summary judgment motions, the Court presumably expected the Government—for whose benefit discovery was limited—to cooperate in promptly providing a complete factual record on the narrow topics the Court identified. To the extent that any litigant undermined or frustrated that objective, the Court may and should take that into account in determining how to exercise its discretion under Rule 56(d) in connection with any future motion practice.

## CONCLUSION

29. For the foregoing reasons, the Motion should be granted.

---

[3] The Government mistakenly says it sent a letter to Defendants concerning communications with third parties the day after the Parties met-and-conferred on April 15, 2021. (Opp. ¶ 19.) To correct the record: The Government first sent a letter to Defendants about this on April 20, 2021, which was the day after the Court ordered the Parties to meet-and-confer about it. (*See* Mot. Ex. O.)

Dated: May 6, 2021
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com
scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
Dennis F. Dunne (admitted *pro hac vice*)
Atara Miller (admitted *pro hac vice*)
Grant R. Mainland (admitted *pro hac vice*)
John J. Hughes, III (admitted *pro hac vice*)
Jonathan Ohring (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
amiller@milbank.com
gmainland@milbank.com
jhughes2@milbank.com
johring@milbank.com

***Attorneys for Ambac Assurance Corporation***

**REXACH & PICÓ, CSP**

By: /s/ *María E. Picó*
María E. Picó
(USDC-PR No. 123214)
802 Ave. Fernández Juncos
San Juan, PR 00907-4315
Telephone: (787) 723-8520
Facsimile: (787) 724-7844
Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: /s/ *Martin A. Sosland*
Martin A. Sosland (admitted *pro hac vice*)
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
Email: martin.sosland@butlersnow.com

James E. Bailey III (admitted *pro hac vice*)
Adam M. Langley (admitted *pro hac vice*)
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: jeb.bailey@butlersnow.com
adam.langley@butlersnow.com

***Attorneys for Financial Guaranty Insurance Company***

| | |
|---|---|
| **RIVERA, TULLA AND FERRER, LLC** | **SEPULVADO, MALDONADO & COURET** |
| By: /s/ *Eric A. Tulla*<br>Eric A. Tulla<br>(USDC-DPR No. 118313)<br>Email: etulla@ riveratulla.com<br>Iris J. Cabrera-Gómez<br>(USDC-DPR No. 221101)<br>Email: icabrera@ riveratulla.com<br>Rivera Tulla & Ferrer Building<br>50 Quisqueya Street<br>San Juan, PR 00917-1212<br>Telephone: (787) 753-0438<br>Facsimile: (787) 767-5784 | By: /s/ *Albéniz Couret Fuentes*<br>Albéniz Couret Fuentes<br>(USDC-PR No. 222207)<br>304 Ponce de León Ave. Suite 990<br>San Juan, PR 00918<br>Telephone: (787) 765-5656<br>Facsimile: (787) 294-0073<br>Email: acouret@smclawpr.com |
| **HOGAN LOVELLS US LLP** | **REED SMITH LLP** |
| By: /s/ *Ronald J. Silverman*<br>Ronald J. Silverman, Esq.<br>Michael C. Hefter, Esq.<br>390 Madison Avenue<br>New York, NY 10017<br>Telephone: (212) 918-3000<br>Facsimile: (212) 918-3100<br>ronald.silverman@hoganlovells.com<br>michael.hefter@hoganlovells.com | By: /s/ *Jared S. Roach*<br>Luke A. Sizemore (admitted *pro hac vice)*<br>Jared S. Roach (admitted *pro hac vice*)<br>225 Fifth Avenue, Suite 1200<br>Pittsburgh, PA 15222<br>Telephone: (412) 288-3131<br>Facsimile: (412) 288-3063<br>Email: lsizemore@reedsmith.com<br>jroach@reedsmith.com |
| ***Attorneys for U.S. Bank Trust National Association, in its Capacity as Trustee to PRIFA Bondholders*** | ***Attorneys for The Bank of New York Mellon, in its Capacity as Trustee to CCDA Bondholders*** |

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date a true and exact copy of this notice was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com