# **EXHIBIT S**

May 5, 2021

**VIA E-MAIL**

| | |
|---|---|
| John Hughes, III | Martin Sosland |
| Atara Miller | BUTLER SNOW LLP |
| MILBANK LLP | 5430 Lyndon B. Johnson Freeway, Suite 1200 |
| 55 Hudson Yards | Dallas, Texas 75240 |
| New York, New York 10001 | 1530 3rd Avenue South, Suite 1600 |
| | Nashville, Tennessee 37201 |

Re:  *Discovery in Revenue Bonds Adversary Proceedings, Nos. 20-00003, 20-00004, 20-00005*

Counsel:

We write in response to your letter of April 28, 2021. We dispute Defendants' assertions that the Government Entities' document production is incomplete.

### I. Outstanding Requests

The Government Parties responded to your April 14, 2021 and April 19, 2021 letters on May 5, 2021.

With respect to the request for additional documents regarding PRIFAS, the government produced the additional materials it located on April 26, 2021.[1]

Defendants advised that they are reviewing KPMG's production and will advise as to any open issues. The Government Entities request that they be copied on any meet and confer correspondence and invited to any calls with counsel for KPMG so that any issues can be handled efficiently.

### II. The Government Entities' Productions

#### a. PRIFA

The Government Entities provide the below responses to the issues in your April 28, 2021 letter.

- *Defendants have not received an executed version of the 1997 Amended Trust Agreement in connection with PRIFA Request No. 1.*

- *Defendants have not received documents sufficient to explain the anomalies between the 1988 Trust Agreement and 1997 Amended Trust Agreement.*

---
[1] CW_STAY0049479 - CW_STAY0049728.

The Government Entities located and produced a signed copy of the Second Supplemental Agreement dated as of December 1, 1997 (which you refer to as a "1997 Amended Trust Agreement"). The signed copy of the Second Supplemental Agreement was contained in the 1997 binder provided to us by Norton Rose, along with a signed Consent of Ambac Indemnity Corporation to the Second Supplemental Agreement.[2] Both documents were produced to Defendants on March 15, 2021.

Exhibit 1 to the April 28, 2020 Rappaport Declaration (which you characterize as an "anomaly") was filed twice earlier by Ambac—first as Exhibit 1 to Ambac's July 16, 2019 Informative Motion Submitting Exhibits in support of the PRIFA Lift Stay Motion (ECF No. 8039), and later as Exhibit 2 to Ambac's January 31, 2020 motion for leave to amend the PRIFA Lift Stay Motion (ECF No. 10602-2). Based on conversations with prior bond counsel from Norton Rose, we understand the first portion of the exhibit is a compilation of the original Trust Agreement dated as of October 1, 1988 and the first two supplemental agreements. The rest of the exhibit is a copy of the signed and notarized original Trust Agreement dated as of October 1, 1988.

As discussed below, the Government Entities located an unsigned copy of the 1989 First Supplemental Agreement, and produced it to Defendants on April 26, 2021.

The Government Entities have produced the original 1988 Trust Agreement and all amendments / supplements thereto from their files.[3] Defendants have separately requested this information from multiple bond and underwriter counsel through third party subpoenas.

- *Defendants have not received an executed copy of the 1989 First Supplemental Trust Agreement.*

The Government Entities did not locate an executed copy of the 1989 First Supplemental Trust Agreement in their files. The Government Entities located an unsigned copy from former PRIFA bond counsel that we understand is the final version. The Government Entities produced that document on April 26, 2021.[4]

- *Defendants have not identified any documents responsive to PRIFA Request No. 4 concerning the nature and location of the Infrastructure Fund.*

As described in the Response to Interrogatory No. 3 and the Response to Request for Admission No. 1, the Government Entities conducted a reasonably diligent search and did not locate or identify any bank account or accounting designation titled the "Infrastructure Fund."

In both the Lift Stay production and in these adversary proceedings, the Government Entities have produced voluminous materials evidencing both the cash flow and the accounting treatment of the first $117 million of Rum Tax Remittances. That these documents do not refer

---

[2] PRIFA_STAY0006113 - PRIFA_STAY0006121; PRIFA_STAY0006100 - PRIFA_STAY0006105.
[3] PRIFA_STAY0000301 - PRIFA_STAY0000380; PRIFA_STAY0007756 - PRIFA_STAY0007760; PRIFA_STAY0006113 - PRIFA_STAY0006122; PRIFA_STAY0002480 - PRIFA_STAY0002487.
[4] PRIFA_STAY0007756 - PRIFA_STAY0007760.

2

to an "Infrastructure Fund" by name is entirely consistent with the sworn testimony the Government Entities have given on multiple occasions and the responses to written discovery.

- *Defendants have not received documents responsive to the requests for additional PRIFAS data detailed in Defendants' April 19 Letter.*

The Government Parties addressed these issues separately in their May 5, 2021 response to the April 19 letter.

- *Defendants have not yet received a response to their inquiry in their April 23, 2021 letter regarding their inspection of the hard-copy bound volume for PRIFA Special Tax Revenue Bonds, Series 1988A.*

The Government Entities responded to this request in their letter dated April 29, 2021.

- *Defendants have not yet received documents sufficient to show how the flow of Rum Tax Remittances were recorded and described in the financial statements throughout the relevant period, January 1, 2014 to the present.*

The Government Entities conducted a reasonably diligent search for materials relating to the evaluation and description of Rum Tax Remittances in the Commonwealth and PRIFA's financial statements, and requested that the relevant auditors—KPMG and RSM—do the same.[5] To the extent Defendants have specific questions, we are available to meet and confer.

### b. HTA

- *Defendants have not yet received all documents governing the HTA bonds, including all versions of the Bond Resolutions.*

The Government Entities conducted a reasonably diligent search and produced all governing documents located in that search, as have several law firms Defendants subpoenaed. To the extent Defendants believe specific documents are missing from the production, we are available to meet and confer.

- *Defendants have not yet received documents sufficient to show how the flow of Excise Taxes and Pledged Revenues were recorded and described in the financial statements throughout the relevant period, January 1, 2014 to the present.*

The Government Entities (i) conducted a reasonably diligent search for materials relating to the evaluation and description of the Excise Taxes in the Commonwealth and HTA's financial statements and Toll Revenues in HTA's financial statements, (ii) produced responsive

---

[5] *See, e.g.*, PRIFA_STAY0000928 - PRIFA_STAY0001062, PRIFA_STAY0001094 - PRIFA_STAY0001154, 3P_RSM_0000003 – 3P_RSM_0000298; CW_STAY0009784 - CW_STAY0010543; CW_STAY0047980 - CW_STAY0048304.

3

documents,[6] and (iii) requested that the relevant auditors—KPMG, EY, and BDO—do the same. To the extent Defendants have specific questions, we are available to meet and confer.

- *Defendants have not yet received documents sufficient to show the policies and procedures related to the flow of Excise Taxes.*

The Government Entities conducted a reasonably diligent search and produced all responsive documents located in that search. Hacienda advised that it does not have policies and procedures relating to the Excise Taxes beyond publicly available budgets, executive orders, and circular letters.[7] HTA located some responsive documents, which the Government Entities produced.[8]

- *Defendants have not yet received documents responsive to the requests for additional PRIFAS data detailed in Defendants' April 19 Letter.*

  o *Additionally, Defendants have received documents from third parties that identify HTA as having an "Internal Auditor" in its Organization Chart. (See, e.g., SIDLEY_2021-03-HTA-000023). Defendants have not yet received documents from the Government regarding the Internal Auditor for HTA nor documents or communications regarding internal audit functions and personnel at the Commonwealth, Treasury, and PRIFA. Please confirm that the Government is seeking responsive information and identifying appropriate custodians regarding the internal audit functions and personnel at the various entities in connection with outstanding accounting requests.*

The Government Parties responded to the requests in the April 19 letter on May 5, 2021. Documents and communications regarding HTA's internal auditor or internal audit functions are beyond the scope of the Rule 56(d) Order.

- *Defendants have not received sufficient documents regarding the reason for the change that occurred in the accounting of the HTA Pledged Revenues that resulted in recording the Pledged Revenues in Fund 278 rather than Fund 793.*

  o *Defendants initially requested "[a]ll documents governing the Flow of Excise Taxes and HTA Pledged Revenues following their collection by the Commonwealth, including all Documents governing Fund 278 and its subaccounts, and any other accounts or designated Funds (including the TSA) into or through which such funds are or have been transferred" (HTA Initial Document Requests, Request No. 2.) and "[a]ll records reflecting the actual Flow of Funds into and out of Fund 278 and its subaccounts, and any other accounts into which Excise Taxes and Pledged Revenues have been deposited (including the HTA Accounts) from January 2014 to the present." (HTA Initial Document*

---

[6] *See, e.g.*, HTA_STAY0000654 - HTA_STAY0001026; CW_STAY0009784 - CW_STAY0010543; CW_STAY0047980 - CW_STAY0048304.
[7] *See* CW_STAY0010553–CW_STAY0010558; CW_STAY0048589–CW_STAY0049046; CW_STAY0048554–CW_STAY0048567; CW_STAY0049050–CW_STAY0049151; CW_STAY0049270–CW_STAY0049477.
[8] *See* HTA_STAY0052439–HTA_STAY0052523; HTA_STAY0054573–HTA_STAY0054674.

> *Requests, Request No. 3.) Defendants have not yet received documents responsive to these initial requests for Fund 793, the predecessor to Fund 278.*

The reason that the Government changed the fund code designation for the Excise Taxes from Fund 793 to Fund 278 is beyond the scope of the Rule 56(d) Order. Nevertheless, the Government Entities produced the documentation reflecting the change in designation.[9] In addition, contrary to Defendants' assertions, the Government Entities conducted a reasonably diligent search for documents governing treatment of the Excise Taxes and produced all responsive materials located. In addition, the Government produced PRIFAS policy manuals reflecting the purpose of both Fund 278 and Fund 793 and produced PRIFAS extracts of transactions for both Fund 278 and Fund 793.[10]

   c. **CCDA**

- *Defendants have not received bank account statements for the Banco Popular account ending in -6545 for April 2006 through January 2014.*

- *Defendants have not received bank account statements for the Banco Popular account ending in -2306 for April 2006 through January 2014.*

As stated in our letters dated April 21, 2021 and April 29, 2021, the Government Entities conducted a reasonably diligent search of their own files and requested materials from Banco Popular for both of these accounts and already produced all available statements.[11]

- *Defendants have not received the bank account statement for the FirstBank account ending in -2984 for February 2021.*

- *Defendants have not received the bank account statement for the FirstBank account ending in -3961 for February 2021.*

The Government Entities previously produced all statements that were available at the time of collection.[12] The February 2021 and March 2021 statements for the FirstBank accounts

---

[9] *See* CW_STAY0048547–CW_STAY0048548.
[10] *See* CW_STAY0048359–CW_STAY0048475; CW_STAY0048545; CW_STAY0048568.
[11] *See* CCDA_STAY0000644–CCDA_STAY0000645; CCDA_STAY0000648–CCDA_STAY0000649; CCDA_STAY0000652–CCDA_STAY0000653; CCDA_STAY0000656–CCDA_STAY0000657; CCDA_STAY0000661–CCDA_STAY0000662; CCDA_STAY0000665–CCDA_STAY0000666; CCDA_STAY0000669–CCDA_STAY0000670; CCDA_STAY0000673–CCDA_STAY0000674; CCDA_STAY0000677–CCDA_STAY0000678; CCDA_STAY0000748–CCDA_STAY0000770; CCDA_STAY0000948–CCDA_STAY0000968; CCDA_STAY0001052–CCDA_STAY0001065; CCDA_STAY0001551–CCDA_STAY0001639; CCDA_STAY0000639–CCDA_STAY0000643; CCDA_STAY0000646–CCDA_STAY0000647; CCDA_STAY0000650–CCDA_STAY0000651; CCDA_STAY0000654–CCDA_STAY0000655; CCDA_STAY0000658–CCDA_STAY0000660; CCDA_STAY0000663–CCDA_STAY0000664; CCDA_STAY0000667–CCDA_STAY0000668; CCDA_STAY0000671–CCDA_STAY0000672; CCDA_STAY0000675–CCDA_STAY0000676; CCDA_STAY0014400–CCDA_STAY0014493.
[12] *See* CCDA_STAY0014165 - CCDA_STAY0014166; CCDA_STAY0014183 - CCDA_STAY0014184; CCDA_STAY0014189 - CCDA_STAY0014190, CCDA_STAY0014198 - CCDA_STAY0014199, CCDA_STAY0014206 - CCDA_STAY0014207, CCDA_STAY0014214 - CCDA_STAY0014215, CCDA_STAY0014223 - CCDA_STAY0014224, CCDA_STAY0014231 - CCDA_STAY0014232, CCDA_STAY0014239 - CCDA_STAY0014240, CCDA_STAY0014249 - CCDA_STAY0014250, CCDA_STAY0014258 - CCDA_STAY0014259, CCDA_STAY0014269 - CCDA_STAY0014270,

ending in -2984 and -3961 have since become available, and the Government Entities are producing them concurrently with this letter.[13] The Government Entities do not agree to ongoing collection and production of account statements going forward.

- *Defendants have not received documents sufficient to show the policies and procedures related to the flow of Hotel Taxes.*

The Tourism Company has confirmed it does not have policies and procedures relating to the flow of Hotel Taxes. The Government Parties have produced the documents governing the CCDA bonds[14] and all available account statements evidencing the flow of funds.[15] The statutes governing the flow of Hotel Taxes are publicly available.

- *Defendants have not received documents sufficient to identify and explain certain transfers of Hotel Taxes.*

  - *Defendants request information sufficient to identify all payments made to the Direct Marketing Organization of Puerto Rico since December 1, 2015, the first date on which payments due on CCDA bonds were not made (the "CCDA Payment Default Date"), including information regarding the accounts into or through which such funds are or have been transferred. (See Elizabeth L. McKeen April 21, 2021 Letter; CCDA_STAY0001110.)*

  - *Defendants request information sufficient to identify all payments made to CCDA since the CCDA Payment Default Date, including information regarding the accounts into or through which such funds are or have been transferred. (See Elizabeth L. McKeen April 21, 2021 Letter; CCDA_STAY0001110.)*

  - *Defendants request additional information regarding the withdrawal of $11,799,505.81 out of BPPR -2306 on December 7, 2020 (CCDA_STAY0014486), including information supporting the Government's assertion that this transfer was the reversal of a mistaken transfer from another Tourism Company account. (See Elizabeth L. McKeen April 21, 2021 Letter.)*

Given Defendants raised these questions for the first time three days after the document production cutoff date, the Government Entities do not agree that this is an "open issue" in the Government's production. Your requests for documentation of every payment made to the Direct Marketing Organization of Puerto Rico and to CCDA since December 2015 are beyond the scope of the Rule 56(d) Order; even if they were within the scope of the Rule 56(d) order, your new requests are untimely. Nevertheless, in the spirit of compromise, the Government

---

CCDA_STAY0014167 - CCDA_STAY0014168, CCDA_STAY0014177 -CCDA_STAY0014178, CCDA_STAY0014191 - CCDA_STAY0014192, CCDA_STAY0014200 - CCDA_STAY0014201, CCDA_STAY0014208 - CCDA_STAY0014209, CCDA_STAY0014216 - CCDA_STAY0014217; CCDA_STAY0007442 - CCDA_STAY0007514; CCDA_STAY0014185 - CCDA_STAY0014188; CCDA_STAY0000771 - CCDA_STAY0000786, CCDA_STAY0000817 - CCDA_STAY0000827, CCDA_STAY0000970 - CCDA_STAY0000992, CCDA_STAY0001066 - CCDA_STAY0001080, CCDA_STAY0001640 - CCDA_STAY0001693, CCDA_STAY0013926 - CCDA_STAY0014039; CCDA_STAY0014371 - CCDA_STAY0014399.
[13] *See* CCDA_STAY0026228 - CCDA_STAY0026242.
[14] *See* CCDA_STAY0002233 - CCDA_STAY0003968; CCDA_STAY0013798; CCDA_STAY0012850.
[15] *See* Letter from E. McKeen and M. Firestein dated May 5, 2021, at Appendix E.

Entities will produce concurrently with this letter a spreadsheet that includes all payments made to the Direct Marketing Organization of Puerto Rico since December 1, 2015 and another spreadsheet with all payments made to CCDA since December 1, 2015.[16] With regard to the $11,799,505.81 transfer, those funds belong to the Hotel Development Corporation—a separate public corporation that does not receive Hotel Tax revenue. In their role as administrators of the Hotel Development Corporation, the Tourism Company officials transferred the $11,799,505.81 between two Hotel Development Corporation accounts. The funds were transferred through the Tourism Company's BPPR -2306 account by mistake.[17]

### III. Other Issues

Defendants requested an update as to when the Government Entities would provide a privilege log. We included a privilege log in our April 26, 2021 letter. We have not logged privileged documents outside the scope of our agreed production.

Sincerely,

/s/ *Elizabeth L. McKeen*  /s/ *Michael A. Firestein*

Elizabeth L. McKeen  Michael A. Firestein

---

[16] *See* CCDA_STAY0026243 - CCDA_STAY0026244.
[17] *See* CCDA_STAY0026245 - CCDA_STAY0026248.