# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA |
| | Title III |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | No. 17 BK 3283-LTS (Jointly Administered) |
| Debtor.[1] | |

**<u>MILLIMAN'S RESPONSE TO AMBAC'S MOTION TO COMPEL (ECF NO. 16487)</u>**

Milliman, Inc. ("Milliman") hereby responds to the motion to compel filed by Ambac Assurance Corporation ("Ambac") on April 20, 2021 (ECF No. 16487), according to the date set by subsequent order (ECF No. 16666).

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523- LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

-1-

7386177.1

## SUMMARY OF THE RESPONSE

Ambac asks this Court to compel Milliman to produce what it has already agreed to produce or what it no longer has, along with other irrelevant and inappropriate relief (*e.g.*, a "detailed explanation" about why Milliman doesn't have documents ten years later).

Whatever role Milliman's actuarial reports may have in the fiscal plan and proceedings – things Milliman is <u>not</u> involved in – Ambac's discovery will shed no light on them. What Ambac needs (apparently) is a qualified actuary, not more documents.

Milliman's valuation reports for the Commonwealth contain and set forth all assumptions necessary for another actuary to understand, and even, replicate Milliman's work. With the census data used in Milliman's report, another qualified actuary wouldn't need any of what Ambac seeks in its motion, or even its subpoena. Milliman told Ambac as much months before formal discovery and agreed to provide Ambac with the census data used in its report and even additional, minor details about that data, <u>beyond what even an auditor would receive or require</u>. Those details are contained in e-mails between Milliman and the Debtor entities.

Milliman agreed to produce such documents last year, before the subpoena, and began doing so on December 24, 2020. Milliman produced additional e-mails on February 24, 2020, along with voluminous census data used in its reports (redacting social security numbers). Milliman has since produced another 540+ documents on April 23, 2021. Milliman anticipates further production in coming weeks.

Ultimately, even if Ambac needed the discovery it claims, Ambac's motion can be denied as there is no dispute over what Milliman has already agreed to produce (or in fact produced) or what it simply does not have. And Ambac's motion must be denied to the extent it asks the Court to order Milliman, a non-party, to provide a "detailed explanation" of why, in 2021,

-1-

Milliman does not have certain documents from ten years earlier. Ambac never asked Milliman for such an explanation before it filed this motion. Ambac may have other vehicles (like a deposition) to pursue such an explanation, but they do not include a subpoena for documents, or motion to compel production pursuant to that subpoena. The motion must also be denied to the extent it seeks new, additional relief for the first time that was never sought or conferred about with Milliman (more e-mail addresses, a second records custodian deposition) which would be duplicative, unnecessary, and burdensome.

### *SCOPE OF THE RESPONSE AND CONFERRAL*

Milliman understands Ambac's motion to ask the Court to compel production of six (6) specific requests for documents that the parties have conferred on (experience studies, *etc.*), <u>not</u> the broader requests in Ambac's subpoena, which Milliman timely objected to. Ambac's proposed order reflects as much. To the extent Ambac's reply argues otherwise, Milliman respectfully reserves the right request a sur-reply. In addition, Ambac and Milliman have <u>not</u> conferred on certain issues in Ambac's proposed order.

All that is, or should be, before the Court, are the specific requests for six groups of documents that the parties have conferred on, detailed below.

### **BACKGROUND**

Ambac argues to this Court that "Milliman has left Ambac no choice but to file this motion to compel." ECF No. 16487 ¶ 28. However, the history, some of which is spelled out in the attachments to Ambac's motion (and some of it not), tells a very different story.

At bottom, Milliman's position has been and continues to be that Milliman would produce what responsive, non-privileged documents it had in response to any reasonably specific requests, but that it couldn't produce what it didn't have. Ambac refused to accept that, but

Ambac never asked Milliman for any kind of explanation why it didn't have certain documents (from over ten years ago). Likewise, while Milliman never refused to add any e-mail domains which Ambac proposes to its searches, Ambac requests Milliman to search for e-mail domains it has never even asked Milliman to search, even after Milliman asked Ambac to specify them.

On November 13, 2020, Ambac asked Milliman to "meet and confer" about discovery that had not been issued and threatened to move to compel if Milliman wouldn't agree to unspecified discovery requests. A copy of that correspondence is attached as <u>Exhibit 1</u>.

On November 16, 2020, Ambac e-mailed Milliman the same requests in its subpoena. A copy of those requests is attached as <u>Exhibit 2</u>. Ambac also indicated then that it wanted its attorney to interview Milliman but refused to say whether it even had its own actuary involved, which Milliman believed (and continues to believe) would be necessary for any such conversation. Ex 1 at 3-5.

On December 11, 2020, Milliman followed up with Ambac after learning Ambac was seeking formal discovery, pointing out that Ambac already had the information it was telling the Court was missing in its Rule 2004 motion, but that it simply did not understand the information. Ex. 1 at 3. In this same correspondence, before any formal discovery, <u>Milliman also offered to review and answer what questions it could from Ambac in writing, without even asking Ambac to waive rights to further discovery</u>. *Id.* To date, Ambac has never taken Milliman up on that offer, which remains outstanding.

On December 16, 2020, the parties had a telephonic meet and confer at which counsel for Ambac requested certain additional detail surrounding the census data involved in Milliman's reports and assumptions related to Milliman's "edited" census data. Milliman "edits" the raw

-3-

census data to fill gaps that may exist in the voluminous data set, as detailed in the declaration of Glenn Bowen attached hereto as Exhibit 3. Ex. 3 ¶ 7.

On December 23, 2020, Milliman e-mailed Ambac explaining that assumptions related to editing the census data are not actuarial assumptions but a means of filing gaps or correcting issues in the census data that Milliman receives from the Debtor entities. Ex. 1 at 1-2. Milliman also indicated it would be providing illustrative e-mails between Milliman and the Debtor entities, in which Milliman either gave a specific assumption or was provided additional detail from the Debtor entities. Ex. 1 at 1-2.

On December 24, 2020, Milliman produced the promised example e-mails and followed up on its request for Ambac to continue its motion to authorize formal discovery in the hope of resolving this issue. Ex. 1 at 1-2.

On December 28, 2020, Milliman again followed up with Ambac asking it to at least confirm receipt. Ex. 1 at 1-2. The next day, Ambac said it would pursue a subpoena.

On January 15, 2021 counsel for Ambac provided Milliman with a copy of the subpoena which undersigned counsel agreed to accept service of. That subpoena contained the same requests, verbatim, as the request sent on November 16, 2020.[2] Two weeks later, Milliman timely served objections to Ambac's subpoena that tracked the position it had spelled out in the 2020 meet and conferrals. ECF No. 16487-5.

On February 17, 2021, the parties thereafter met and conferred again, at which time undersigned counsel reiterated its position (in response to the same asks) – *i.e.*, that Milliman would agree to produce the edited census data and e-mails related to assumptions thereto but

---

[2] *Compare* Ex 2 (November 16, 2020 request from Ambac) with ECF No. 16487-3 (subpoena attached as Exhibit C to Ambac's motion to compel).

-4-

otherwise objected to the subpoena. Milliman also noted, however, that it would entertain any additional specific requests, as it had with the assumptions related to the edited census data.

On February 19, 2021, Milliman produced the edited census data and certain e-mails related thereto.

On February 25, 2021, Ambac asked Milliman for six specific items later detailed in its motion (documents related to experience studies, death audits, etc.). ECF No. 16487-5 at 8.

On February 26, 2021, Milliman wrote back indicating that it did not have the first five of six items but that it would agree to produce the sixth item, which was for communications with the Commonwealth about Milliman's valuations and assumptions used. ECF No. 16487-5 at 7. Ambac asked what documents Milliman has to show assumptions loaded into software used in the valuations, and Milliman told Ambac it had none. ECF No. 16487-5 at 7.

On March 2, 2021, Ambac refused to accept that, quoting portions of a Milliman valuation referencing experience studies from 2009 and 2012, studies which Milliman had already indicated it did not have the week before. ECF No. 16487-5 at 5; *id.* at 7.

On March 3, 2021, Milliman wrote back the next day indicating, for the second time, that it had checked once and did not have the documents Ambac sought, but promising to check again. ECF No. 16487-5 at 5. Ambac responded back the same day insisting that Milliman had the documents it had already looked for and that they "must" be incorporated into software. *Id.*

On March 4, 2021, Milliman told Ambac it had checked again and did not have the experience studies referenced, disagreeing with the terms used in Ambac's e-mail and promising to nonetheless look to see what, if anything, was incorporated into the software. *Id.* at 4.

-5-

On March 5, 2021, Ambac questioned whether Milliman would be producing the e-mails it had agreed to produced, writing "[w]ill you be producing the communications with the Oversight Board and AAFAF we requested? Or are we at an impasse on that too?" *Id.* at 4.

Milliman responded the same day recapping the history of discussion and, again, attempted to explain to Ambac that it simply does not have what Ambac is asking for and was agreeing to produce what it did have:

> I told you last week that Milliman would agree to produce responsive, non-privileged documents in response to #6 in your e-mail. Those are in the process of being collected. I assume that's what you mean now about communications with the Oversight Board and AAFAF. Nothing's changed there. Your word choice continues to confuse me. There's no "impasse" here. In response to your requests, I've told you very promptly what we don't have and agreed to produce what we do have that isn't privileged. I've been as responsive and transparent with you as I can. I thought we had a relatively productive call the last time we spoke. I'm not sure if you're misreading what I'm intending to say or I'm just not being clear enough. I'll try to be even clearer going forward, but it would help if you would give me the doubt when possible here, rather than jumping to the conclusions, or using the terms, that you do (e.g., "impasse," "absurd," "going in circles with you," and suggesting either me or my client aren't being honest with you about what documents we have at this point in time). Those sort of e-mails are not helping your client here.

*Id.* at 3-4. On March 8, 2021, Ambac responded asking what custodians and search terms Milliman was using. *Id.* at 3. On March 12, 2021, undersigned counsel for Milliman wrote back indicating it was searching the e-mail account of its lead consultant, Glenn Bowen, for all e-mails with domains it knew associated with the Debtor entities. *Id.* at 2-3.

On March 18, 2021, Ambac sent Milliman a letter asking for the same six groups of documents it had asked for on February 25, 2021. ECF No. 16487-8 at 3.

On March 22, 2021, Milliman responded along the lines of its position now:

-6-

> I disagree with just about everything you've written in your March 18 letter but do not want to cause Milliman, a non-party, the fees for me to spell out each reason why at this point. Candidly, I don't see how you run into a court and ask it to compel Milliman to produce what it simply doesn't have. I do agree we have met and conferred and thought we were making progress. I had asked you to provide more specific requests in response to Milliman's objections. You did that, and I promptly told you that Milliman did not have documents responsive to your more specific requests (the first five romanettes in your letter). As to the sixth romanette, the e-mails, we will add the domains you (for the first time in your letter) identified to the search. Glenn Bowen's e-mails are being searched because he would be on any e-mails with Katherine Warren and Tim Nugent, who you also for the first time identified in your letter. If you have specific yahoo or gmail accounts you want Milliman to also search, please send my way. I can't search those without knowing what they are. At the moment, the plan is to do a linear review, rather than search terms, of all e-mails with Glenn Bowen and those domains.
>
> Know that if you file a motion that requires a response from Milliman, Milliman will seek to recover the fees and consultant time for doing so here. Rule 9016 provides that Rule 45 applies, including Rule 45(d)(1). Also know that such a motion is going to distract from review of the e-mails we have agreed to produce and slow that process down. All rights reserved.

ECF No. 16487-9 at 4.

On March 31, 2021, Ambac asked when it could expect the e-mails Milliman had agreed to produce. ECF No. 16487-9 at 3.

On April 2, 2021, undersigned counsel responded that that he was "pushing to have something rolled out to you late next week." ECF No. 16487-9. This statement is, apparently, what Ambac's motion describes as a "representation from counsel" that it would have documents the week of April 5, 2021. ECF No. 16487 at 11 ¶ 24. To be clear, no firm deadline had ever been set or agreed to. Undersigned counsel thereafter indicated he was working to get a realistic deadline, which, given as April 23, 2021, was met.

Ambac could not wait two days to see if that would be met and instead filed its motion to compel on April 21, 2021. ECF No. 16487. Ambac's motion strawmans Milliman's position, claiming that the only thing it has agreed to produce was the edited census data and documents surrounding it, when Milliman has repeatedly offered to entertain more specific document requests and even review and respond to appropriate questions in writing from Ambac.[3]

---

[3] ECF No. 16487 at 6 ¶ 11. While Milliman's objections speak for themselves, Milliman told Ambac, both before and after the subpoena and objections, that it would entertain more specific document requests. *See, e.g.,* Ex. 1 at 1 (Dec. 23, 2020 e-mail from F. Harrison to A. Glenn offering to have another call the next week after review of an example census data edit e-mail to advance discussion); ECF No. 16487-10 at 2 (April 7, 2021 e-mail from F. Harrison to A. Glenn indicating "As to the objections, I've indicated several times now that Milliman would

-7-

On April 23, 2021, Milliman produced over 500 additional e-mails and attachments exchanged with the Debtor entities, consistent with its e-mail two days before the motion was filed. Milliman intends to make another production in coming weeks.

## ARGUMENT

Ambac's motion must be denied because: (1) Milliman cannot produce what it does not have; and (2) Ambac's motion seeks more than it ever asked Milliman to provide; (3) a motion to compel document production is not a vehicle to obtain an explanation about what documents a party does not have, or efforts to locate them; (4) none of the documents Ambac seeks are necessary or relevant to understand or replicate Milliman's analysis.

**1. Milliman cannot produce what it does not have.**

Ambac asks the Court to compel Milliman to provide six things. ECF No. 16487 at 6-7 (paragraph 13 of Ambac's motion to compel). Of the six things, Milliman provided one the next day, agreed to provide another, and simply does not have the other four groups of documents:

(i) Milliman no longer has a copy of the 2009 and 2012 experience studies or any other documents responsive to this request. Ex. 3 ¶ 5(a).

(ii) Milliman no longer has a copy of the 2009 and 2012 experience studies or any other documents responsive to this request. Ex. 3 ¶ 5(a).

(iii) Milliman does not conduct death audits for the Debtor entities and, accordingly, has no such documents. Ex. 3 ¶ 5(b).[4]

(iv) Milliman uses ProVal. Ex. 3 ¶ 5(c).

---

entertain more targeted, specific requests, and that I would consider more specific reasons why Milliman the broader documents sought should be produced.").

[4] Ambac says this "strains credulity" but cites materials from the Milliman website having nothing to do with this client and which are identified in an article as a best practice. ECF No. 16487 at 13 ¶ 29.

-8-

(v) Milliman does not maintain screenshots of input screens for valuation software showing plan provisions valued or assumptions used; Milliman would have to create new documents, and it would be unduly burdensome to do so. Ex. 3 ¶ 5(d).

(vi) Milliman agreed to provide non-privileged communications with the Government Parties concerning the Actuarial Valuation Reports, the census data, and the assumptions used and has since provided them, including since the motion was filed.

Milliman cannot produce what it does not have and has no obligation to *create new documents* in response to a subpoena for documents.[5]

### 2. Ambac's motion seeks more than it ever asked Milliman to provide.

Ambac's motion seeks relief it has never sought from Milliman before filing the motion (much less met and conferred about), including (a) an additional deposition; (b) more e-mail addresses; and (c) a broader time period and scope of communications.[6] Ambac is entitled to none of these things; at most, the Court should order Ambac to actually meet and confer with Milliman on these topics, in good faith, for the reasons that follow.

### *(a) Ambac never asked for a records custodian deposition (and doesn't need one).*

Before filing its motion, Ambac never asked Milliman for a records custodian deposition, much less met and conferred about such an additional deposition. Yet buried in footnote three of Ambac's motion to compel is such a request. ECF No. 16487 at 3 n.3. Milliman believes the questions Ambac has raised are addressed in Mr. Bowen's declaration (Exhibit 3 hereto) or,

---

[5] *See e.g.,* 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2210 (3d ed.) ("A document or thing is not in the possession, custody, or control of a party if it does not exist. Production cannot be required of a document no longer in existence . . . .") § 2210 Possession, Custody, or Control, 8B Fed. Prac. & Proc. Civ. § 2210 (3d ed.) (citing, *inter alia*, *Richards v. Maine Cent. R.R.*, 21 F.R.D. 593 (D. Me. 1957); *see Richards*, 212 F.R.D. at 594 ("Production of the statements requested in Paragraph 2 of the motion is denied for the additional reason that it explicitly appears from the uncontroverted affidavit . . . that such statements do not exist."); *see also, e.g., Rivot-Sanchez v. Warner Chilcott Co.*, 707 F. Supp. 2d 234, 259 (D.P.R. 2010) (even a party not obligated to "create a new document") (internal citations omitted).

[6] To the extent Ambac seeks to broaden its request by rephrasing prior requests, it should be denied.

-9-

if not, should be asked at the single deposition for which the Court has authorized the service of a single subpoena *ad testificandum.* ECF No. 15589. Any questions that Ambac has about documents Milliman does not have could and should be asked in a single deposition, in the interest of minimizing the burden and expense, and here it would be the same individual (Mr. Bowen). Ex. 3 ¶ 5.

### *(b) Ambac never identified the additional e-mail address it wanted Milliman to search.*

Milliman has agreed to search every domain that Ambac has provided it to search. Ambac has never identified the e-mail addresses of the "three retirement system employees" which Ambac's motion says AAFAF identified, and which Ambac now asks the Court to order Milliman to search. ECF No. 16487 at 14 ¶ 32. Milliman specifically asked Ambac for whatever additional addresses it wanted Milliman to search on March 22, 2021, and Ambac never answered. ECF No. 16487-9 at 5 (March 22, 2021 e-mail from F. Harrison) ("If you have specific yahoo or gmail accounts you want Milliman to also search, please send my way. I can't search those without knowing who they are.").

In any event, Milliman searches to date would encompass any individuals of the retirement systems because Milliman has searched for the e-mail domains of the retirement systems and government entities, which would include individuals with those domains (*e.g.*, "@aafaf.pr.gov" would include any individual with an e-mail address of @aafaf.pr.gov).[7]

### *(c) Ambac now asks for a broader scope of e-mails than conferred upon.*

In its February 25, 2021 list of six romanettes, Ambac asked Milliman to produce "[a]ll communications with the Commonwealth, the Oversight Board and AAFAF concerning Milliman's pension reports, the census data and the assumptions Milliman used from 2016 to the

---

[7] This would include the three names that Milliman is seeking for the first in Ambac's motion (at least during their employment). ECF No. 16487 at 10 ¶ 20 ("Ms. Cecile Tirado, Mr. Hector Roman, and Mr. Angel Diaz").

-10-

7386177.1

present." ECF No. 16487-5 at 9. Milliman agreed to produce documents responsive to that tailored request and has begun doing so. The parties agreed to that after their meet and confers.

Now, however, Ambac apparently wants a longer time period, but there has been no meet and conferral at all on that. Ambac's proposed order asks the Court to compel all e-mails "from January 1, 2013 through the present, concerning the Actuarial Valuation Reports." ECF No. 16487-1 at 3 ¶ 4. The time period (2013) appears nowhere in Ambac's motion; only its proposed order, and with good reason: for six months, Milliman has consistently objected to that request as being overbroad, irrelevant, unduly burdensome, and disproportionate.[8] At no point until the motion did Ambac suggest its own, narrowed timeframe was insufficient. The motion should be denied out of hand given the previous agreement, which Milliman entered in good faith. Ambac should not permitted to now revisit and expand its own proposed set of production by way of this motion; at most, Ambac should review the documents Milliman is working to produce and confer further on the issue with Milliman if needed.

Moreover, no other custodians are necessary. Mr. Bowen's declaration explains his role and supervision of the other Milliman employees Ambac identified, and that he (Mr. Bowen) would also be on any e-mails between them and the Debtor entities. Ex. 3 ¶ 3. Ambac has not identified a single e-mail to the contrary.

### 3. A motion to compel document production is not a vehicle to obtain an explanation about what documents a party does **not** have, or efforts to locate them.

---

[8] As detailed above, Ambac's subpoena (verbatim the same as what it sent Milliman in November of 2020) asked for this broader set of documents. *See* Ex. 1 at 5 (Nov. 16, 2020, 8:50 AM e-mail from A. Glenn to F. Harrison attaching requests in Exhibit 2 hereto); *Compare* Ex. 2 *with* ECF No. 16487-3 (subpoena attached as Ex. C to Ambac's motion to compel). Milliman objected at the meet and confer the parties had on December 21, 2020 and again formally in its objections in January 15, 2021. *See, e.g.,* ECF No. 16487-4 at 3 (General Objection "I" of Milliman objections to Ambac subpoena attached as Ex. D to Ambac's motion to compel). The parties again met and conferred on February 17, 2021, after which Ambac came to Milliman with a narrower set of requests on February 25, 2021 (the six romanettes), and Milliman agreed to produce documents responsive to the sixth romanette.

-11-

7386177.1

Ambac has never actually asked Milliman why it does not have copies of experience studies from ten years ago, or death audits it never did. The answers should be obvious enough: Milliman doesn't have documents from that long ago, and it can't produce documents to prove a negative for work it never did. Rather than ask these questions at the deposition it asked the Court to authorize a subpoena for, Ambac requested Milliman produce additional documents <u>not</u> sought in its subpoena, accused Milliman of having a "spoliation problem" (even though non-party Milliman had no preservation obligation), and questioned Milliman's integrity.[9]

Now, Ambac's motion asks the Court to compel Milliman to give a "detailed explanation" of its efforts to locate such documents and "the basis for its determination" that no such documents exist. ECF No. 16487-1 at 3 ¶ 3 (Ambac proposed order). Ambac claims that it is left "to guess at what documents may exist," ignoring the deposition the Court has already permitted Ambac to seek – or additional conferral to the extent it remains unclear about Milliman's repeatedly (and responsively) stated position about what it has, or doesn't have. ECF No. 16487 at 3 ¶ 2.

Fundamentally, Ambac's request confuses a motion to compel *document production* from *a non-party* with some sort of motion to compel an *interrogatory answer* to a *party*. Ambac cites no authority in support of its request for this Court to order Milliman to explain what efforts it took to locate responsive documents. There is none. Milliman had no preservation obligation as a non-party, years before this proceeding.

---

[9] *See, e.g.,* ECF No. 16487-5 at 5 (Mar. 3, 2021 e-mail from A. Glenn to F. Harrison beginning with "This is absurd. . . ."); ECF No. 16487-10 at 2-3 (April 6, 2021 e-mail from A. Glenn to F. Harrison attached as Ex. J to Ambac's motion to compel.").

-12-

Likewise, Ambac's motion also suggests Milliman was under some sort of obligation to come forward and, without being asked, detail why it doesn't have certain documents. *See, e.g.,* ECF No. 16487 at 9 ¶ 22. No such obligation exists.

Regardless, in the interest of expediently resolving this dispute, Mr. Bowen's declaration confirms that Milliman doesn't maintain copies of the experience studies from years that far back, and it can't produce documents to prove a negative for death audits it never did. Ex. 3 ¶ 5(b). Likewise, Mr. Bowen's affidavit explains that Milliman does not take screenshots or keep copies of "input screens" into valuation software; Milliman may input information into that software, but it can only produce documents it kept, and it had none responsive to that request. Ex. 3 ¶ 5(d).

**4. None of the documents Ambac seeks are necessary or relevant to understanding Milliman's valuations.**

Without any evidence, Ambac's motion asserts that e-mail communications between Milliman and the Debtor entities are "essential to test the accuracy and assess the reasonableness of the Commonwealth's estimated $55 billion pension liability." ECF No. 16847 at 14 ¶ 32.

However, as Mr. Bowen's affidavit explains, to or understand and even replicate Milliman's valuation reports, another actuary wouldn't need those e-mails or any of the documents sought by Ambac's motion or subpoena. Ex. 3 ¶¶ 6-9.

Milliman's valuation reports indicate that they should be reviewed by another actuary, but Ambac does not have an actuary assisting it in its review.[10] Without actuarial support, Ambac incorrectly *assumes* that there are "fundamental documents underlying" Milliman's reports and that there must be "analysis underlying the assumptions and valuation impact of such

---

[10] *See, e.g.,* ECF No. 16487-2 at 2 (bottom paragraph of cover to page of June 30, 2017 Actuarial Valuation Report); Ex. 1 at 2-3 (Nov. 16, 2020 e-mail from A. Glenn answering "Why is that your concern?" when Milliman asked whether Ambac had hired its own actuary).

-13-

assumptions." ECF No. 16487 at 1 ¶ 2; *Id.* at 4 ¶ 8. That is not the case. Ambac's motion uses a vague and slippery word – "underlying" – that was never in its subpoena or conferrals. In any event, there are no such documents.

Ambac illustrates the problems with its own requests in asserting that Milliman's production "provide[s] no clarity on Milliman's analysis." ECF No. 16487 at 6 ¶ 12. Milliman's February production gave Ambac minor details it asked for, such as an assumption regarding active or retired status of about 400 of over 210,000 ERS members. MM-Ambac000014. That amounts to less than 0.2% for a single assumption. That Ambac does not find "clarity" in those details reflects a problem with the request, not the production.

Milliman's valuation reports set forth their assumptions and methodologies, such that another actuary, with the edited census data used to produce them, could go as far as to replicate Milliman's work product. Ex. 3 ¶ 6. Ambac has the documents it needs to understand and even recreate Milliman's work product – it simply lacks the professional expertise to do so. Ex. 3 ¶¶ 6-9. Yet Ambac is still asking for more than what an auditor of Milliman's work product would receive. Ex. 3 ¶ 8. More document production will not solve Ambac's actuarial deficit, but would burden Milliman. *Id*.

While Rule 2004 may sometimes be referred to as a "fishing expedition," what Ambac proposes is far beyond that and more akin to an archaeological expedition, going beyond fishing and into the realm of digging for irrelevant things under the sea. No further insight into Milliman's work product will be gained from that dig. Ex. 3 ¶¶ 6-9.

Rule 2004 does not displace Federal Rule 45 (incorporated by Bankruptcy Rule 9016), which provides that Ambac – and its counsel – "<u>must</u> take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1)

-14-

(emphasis added). Ambac has failed to do so here, with cost and consequence to Milliman, including responding to this motion and obtaining local counsel on an expedited basis.

## REQUEST TO CONDITION ANY ADDITIONAL DOCUMENT DISCOVERY ON SHOWING OF NEED IN SUBSEQUENT MOTION

Milliman respectfully requests that the Court deny Ambac's motion and condition any additional document discovery (beyond what Milliman has agreed to produce) on showing of need to be made by subsequent Rule 2004 or other appropriate motion.

Rule 45 also provides this Court with authority – and an obligation – to order relief to ensure that parties take reasonable steps to avoid imposing undue burdens on subpoena recipients. *Id.* ("The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.") (emphasis added).

Ambac appears to be trying to create, rather than resolve, a discovery dispute here. Ambac insists on documents that will not shed light on Milliman's analysis, as Mr. Bowen explains. Even as to those documents, Ambac has not taken advantage of existing avenues for information. Ambac never took Milliman up on its offer to submit questions in writing. While now asking for a second deposition, Ambac has not even attempted to schedule the first deposition for which Ambac was authorized to issue a subpoena or circulate a proposed list of topics, which could address its questions about documents.

Milliman respectfully requests that the Court deny Ambac's motion and require that any document discovery beyond what Milliman has agreed to produce be made by subsequent motion, with a showing of need for additional documents. In six months of conferral, Ambac has not identified any such need. Right now, the only evidence before the Court is Mr. Bowen's declaration, which makes clear there is no need, and that Ambac's motion must be denied.

-15-

7386177.1

Dated: May 11, 2021

Respectfully submitted,

By: */s/ Frank S. Harrison*
Frank S. Harrison (*pro hac vice admission pending*)
**WILLIAMS, KASTNER & GIBBS PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Telephone: (206) 628-6600
Email: Fharrison@williamskastner.com

By: */s/ Brett Ingerman*
Brett Ingerman *(admitted pro hac vice)*
**DLA PIPER LLP (US)**
The Marbury Building, 6225 Smith Ave.
Baltimore, MD 21209-3600
Tel: (410) 580-4177
Fax: (410) 580-3177
brett.ingerman@us.dlapiper.com

By: /s/ *Mariana Muñiz Lara*
Mariana Muñiz Lara
**DLA PIPER (PUERTO RICO) LLC**
PRDC Bar No. 231,706
Calle de la Tanca #500, Suite 401
San Juan, PR 00901-1969
Tel: (787) 945-9106
Fax: (939) 697-6141
mariana.muniz@dlapiper.com

*Attorneys for Milliman, Inc.*

-16-

7386177.1