UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**AAFAF'S RESPONSE TO AMBAC'S MOTION TO COMPEL THIRD-PARTY DISCOVERY FROM MILLIMAN, INC.**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States Magistrate Judge Judith Gail Dein:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") hereby responds to the motion to compel[2] filed by Ambac Assurance Corporation against Milliman, Inc.

## INTRODUCTION

1. AAFAF submits this response and opposition to Ambac's motion because Ambac has already received sufficient discovery for it to evaluate the pension liabilities for ERS, JRS and TRS.[3] Since 2018, more than 220,000 pages of documents related to the Commonwealth's Pension Systems have been produced to Ambac. These productions include Milliman's reports, as well as the census data sets used as the factual basis for Milliman's actuarial work. The data sets alone are massive and encompass information on hundreds of thousands of retirees and beneficiaries. An actuary relies on actuarial practices and procedures and the census data to evaluate projections of pension liabilities. That is what Milliman has done in its reports, and the reports themselves detail the pertinent assumptions and methodologies.

2. AAFAF, on behalf of the Retirement Systems, has repeatedly offered to help answer questions that Ambac may have about Milliman's reports and did in fact do so in response to one set of questions from Ambac in the fall of 2019. But since then Ambac has not taken AAFAF up on its offer to answer questions and has instead pushed for more and more discovery, including, most recently, tens of thousands of emails from Retirement Systems personnel. The Court intended Rule 2004 discovery to focus on "core information sufficient to obtain a basic

---

[2] *Ambac Assurance Corporation's Urgent Motion to Compel Milliman, Inc. to Comply with Subpoena Issued Pursuant to the Court's January 13, 2021 Order Authorizing Rule 2004 Discovery* (ECF No. 16487).

[3] ERS is the Employees' Retirement System of the Government of the Commonwealth of Puerto Rico; JRS is the Retirement System for the Judiciary of the Commonwealth of Puerto Rico; and TRS is the Puerto Rico System of Annuities and Pensions for Teachers (collectively, the "Pension Systems" or "Retirement Systems").

1

understanding of major aspects of the Commonwealth's financial condition,"[4] not a fishing expedition into everything that may relate to pension liabilities. The core financial information has already been produced, and AAFAF has already committed to providing updated census data and Milliman's reports as they become available. Any further discovery, if necessary, should be targeted to specific and material factual questions regarding the confirmation of the Commonwealth's imminent third amended plan of adjustment (the "Plan").[5] Ambac's motion fails to justify more discovery from Milliman (or anyone else) and should be denied in its entirety.

## ARGUMENT

**I.    Ambac Has Already Received Sufficient Discovery to Evaluate Pension Liabilities.**

3.    Ambac claims it needs more discovery "concerning the bases for" Milliman's reports (Motion ¶ 10), including "information regarding the rationale, impact, and analysis underlying the assumptions [in the reports] and the valuation impact of such assumptions," (Motion ¶ 8), but fails to acknowledge the extensive discovery it has received already or explain with specificity why that discovery is not adequate. The documents containing core information concerning the bases and assumptions of Milliman's reports are the reports themselves (specifically, the assumptions, methods, and benefit provisions detailed in the reports) and the census data.[6] The Retirement Systems have already produced those documents to Ambac, and it

---

[4] *Memorandum Order Denying Motion to Strike Certain Rule 2004 Applications* (Jan. 23, 2020) at 9-10 (ECF No. 10332) ("Order").

[5] The Oversight Board, Assured, and National, among others, have reached a plan support agreement with respect to a third amended Commonwealth plan of adjustment, which the Oversight Board will soon file. *See HTA/CCDA Related Plan Support Agreement*, filed on the Electronic Municipal Market Access System (EMMA) by AAFAF on May 5, 2021, at 3. The Court has already entered a procedures order setting a hearing on July 13, 2021, regarding the Plan's disclosure statement. *Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, (III) Approving Form of Notice Thereof, (IV) Establishing Document Depository Procedures in Connection Therewith, and (V) Granting Related Relief* (May 4, 2021) (ECF No. 16681).

[6] *See, e.g.*, **Exhibit D**, Apr. 9, 2021 Letter to Ambac (noting that "the core information underlying the calculation of pension liabilities is reflected in Milliman's actuarial reports and the applicable census data."); **Exhibit A**, July 8, 2019 Letter to Ambac (ECF 7895-5) ("An outside actuary can evaluate Milliman's work by applying the assumptions and other information disclosed in Milliman's reports to the underlying census data"). *See also* the

is AAFAF's understanding that Milliman has agreed to provide any corrected data sets that it used for its reports.[7] These documents are more than adequate for Ambac "to obtain a basic understanding" of pension liabilities,[8] and for a qualified actuary to review Milliman's reports.

4. In addition to the "core information"—i.e., Milliman's reports and census data—AAFAF and the Retirement Systems have produced tens of thousands of additional documents.[9] *See, e.g.*, guidelines, policies, manuals, and procedures related to pension liabilities.[10] The pension documents Ambac has received since 2018 span a range of categories, including the following:[11]

    a. 2015, 2016, and 2017 Milliman reports for ERS, JRS and TRS;[12]

    b. 2015, 2016, and 2017 census data sets for ERS, JRS and TRS;

    c. ERS, JRS and TRS plan summaries, manuals, and regulations;

---

2017 Milliman Actuarial Valuation Report for ERS at 5 and 48-62 (detailing the actuarial assumptions and methods used, including changes in assumptions); *id*. at 6-10 (detailing the changes in plan provisions); *id*. at 48 (providing the "basis for demographic assumptions"); the report is available at the ERS website: https://www.retiro.pr.gov/wp-content/uploads/PRGERS_Val_June302017.pdf (last visited May 10, 2021).

[7] Since 2018, AAFAF has produced the available Milliman reports and census data on a rolling basis. PR-INSURERS2004-0000062 - PR-INSURERS2004-0000135, PR-INSURERS2004-0000330 - PR-INSURERS2004-0000397, PR-INSURERS2004-0000398 - PR-INSURERS2004-0000476, PR-INSURERS2004-0001002 - PR-INSURERS2004-0001090, PR-INSURERS2004-0001161 - PR-INSURERS2004-0001242, PR-INSURERS2004-0001096 - PR-INSURERS2004-0001160, PR-INSURERS2004-0001501 - PR-INSURERS2004-0001568, PR-INSURERS2004-0002229 - PR-INSURERS2004-0002301, PR-INSURERS2004-0002303 - PR-INSURERS2004-0002362, PR-INSURERS2004-0002364 - PR-INSURERS2004-0002428, PR-INSURERS2004-0002613 - PR-INSURERS2004-0002681, PR-INSURERS2004-0002682 - PR-INSURERS2004-0002740, PR-INSURERS2004-0010255 - PR-INSURERS2004-0010308. On February 19, 2021, Milliman produced edited census data and certain related emails. MM-AMBAC_000001 - MM-AMBAC-000104. On April 23, 2021, Milliman produced over 500 emails and other documents, including corrected census data. MM-AMBAC-000105 - AMBAC-003265.

[8] Order at 10.

[9] Since 2018, AAFAF has made at least 14 productions of documents relating to pension liabilities and has also provided Ambac with all documents concerning the Retirement Systems that have been produced in other Title III proceedings.

[10] PR-INSURERS2004-0000201 (regulation of pensions and granting of benefits of the retirement system for teachers); PR-INSURERS2004-0000702 - INSURERS2004-0000955 (regulations for the granting of pensions, benefits and rights); PR-INSURERS2004-0000960 - PR-INSURERS2004-0000992, PR-INSURERS2004-0002434 - PR-INSURERS2004-0002447 (plan summaries for ERS, JRS, and TRS); PR-INSURERS2004-0007003 (manual of benefits and services); PR-INSURERS2004-0007151 - PR-INSURERS2004-0007173 (procedural guides on pensions); PR-INSURERS2004-0007157 (procedure to compute pension benefits).

[11] AAFAF provided Ambac with a similar summary, with citations to Bates numbers, on March 30, 2021. *See* **Exhibit C**, March 30, 2021 Letter to Ambac.

[12] Reports for the 2018 fiscal year are being finalized and will be produced as soon as they are ready.

3

    d. Data on retiree payments, employee and employer contributions, PayGo invoices, financial statements, and PayGo, TSA, and component unit reports;

    e. Benefit overpayments and collection data;

    f. Lists of retirees and beneficiaries; and

    g. Fiscal plan models, pension models, and other pension analyses and projections, both before and after the implementation of PayGo.

5. AAFAF has also offered to help answer Ambac's questions about Milliman's work. For example, when Ambac submitted questions (it has done so only once, on October 1, 2019), AAFAF provided Ambac with written responses based on input from Milliman. AAFAF remains willing to help answer questions and believes that would be a more efficient way to resolve material questions without burdening Milliman with more discovery.

**II.    Ambac Misstates the Meet and Confer Record.**

6. Contrary to the claim that "information regarding the rationale, impact, and analysis underlying the assumptions [in Milliman's reports] and the valuation impact of such assumptions has never been produced," (Motion ¶ 8), such documents are part of the many productions that have been made to Ambac over the last three years, as summarized above.

7. Nor is it true that "the Government Parties maintained that they are not in possession of key information" for Milliman's analyses, and "refused to obtain the relevant information from Milliman for production to Ambac" (Motion ¶ 9). AAFAF has never refused to ask Milliman for information requested by Ambac. For example, Ambac demanded that AAFAF produce all of Milliman's internal "work papers," which AAFAF does not have. AAFAF conferred with Milliman, which explained that its work papers are not necessary for an external actuary to assess the assumptions and pension liabilities that are set forth in Milliman's reports.

4

AAFAF has made this clear to Ambac on several occasions.[13] Because Ambac could not justify the necessity of such discovery, Milliman did not provide work papers.

8. Ambac also incorrectly suggests that AAFAF is not willing to produce emails between Retirement Systems personnel and Milliman (Motion ¶ 20). Rather, AAFAF asked Ambac to justify the necessity of conducting a duplicative email review given that Milliman had already agreed to produce emails and other documents.[14] Because Ambac's alleged need for this discovery is to evaluate Milliman's assessment of pension liabilities, the most direct source for such information is Milliman itself. And indeed, Milliman has already produced emails and other documents exchanged with the Retirement Systems.

### III. With Plan Confirmation Approaching, Rule 2004 Fishing Expeditions Must End.

9. Now that the Commonwealth's Plan is imminent and a hearing on the disclosure statement has been set for July 13, 2021,[15] the time has come to calibrate any additional pension discovery to what is essential for confirmation. *See In re Orion Healthcorp, Inc.*, 596 B.R. 228, 236 (Bankr. E.D.N.Y. 2019) (no good cause existed for Rule 2004 discovery in part because the debtor had filed a third amended disclosure statement, which requested the Court to consider the relevant issues at confirmation; thus the discovery could be sought "in the context of confirmation as a contested matter, rather than through Rule 2004"). To avoid inefficiencies and preserve the resources of the parties and the Court, any further discovery should be in accordance with a plan-confirmation schedule, conducted in coordination with all parties-in-interest, and targeted to

---

[13] *See, e.g.*, **Exhibit B**, October 21, 2020 Letter to Ambac (notifying Ambac that "Milliman has informed us that an experienced actuary can review Milliman's work based on the information in their reports and the census data. We first discussed the issue last year, including that internal work papers are not necessary for an actuary to evaluate Milliman's analysis.").

[14] *See* **Exhibit C**, March 30, 2021 Letter to Ambac (explaining the duplicative nature of Ambac's request and the lack of necessity for the discovery, and requesting that Ambac identify specific factual issues that would justify the discovery).

[15] *See* note 5, *supra*.

5

address material contested issues related to plan confirmation. All creditors can then participate in an organized and fair discovery process, rather than one driven by Ambac's strategic reasons for opposing the Plan.

## CONCLUSION

Because Ambac has failed to justify the necessity of the discovery it seeks from Milliman and has already received sufficient pension discovery, the Motion should be denied in its entirety.

Respectfully submitted,

/s/ *Madhu Pocha*

John J. Rapisardi (*pro hac vice*)
Peter Friedman (*pro hac vice*)
Madhu Pocha (*pro hac vice*)
Richard Holm (*pro hac* pending)

**O'MELVENY & MYERS LLP**
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

/s/ *Luis C. Marini-Biaggi*

Luis C. Marini-Biaggi
USDC No. 222301
lmarini@mpmlawpr.com
Carolina Velaz-Rivero
USDC No. 300913
cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00917
Tel: (787) 705-2171
Fax: (787) 936-7494

*Co-attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

6