# EXHIBIT C

March 30, 2021

**BY E-MAIL**

John J. Hughes III, Esq.
Alex Paslawsky, Esq.
Milbank LLP
55 Hudson Yards
New York, NY 10001-2163

**Re:** **Pensions Discovery**

Counsel:

We write in response to your March 2, 2021 letter and to follow up on prior meet and confer discussions we have had over the last year.

**Prior Discovery**

Your letter states that more discovery into the Commonwealth's pension liabilities is necessary but fails to acknowledge the extensive discovery Ambac has received from the Government Parties or the additional discovery that Ambac is receiving from Milliman directly. Over the last two years, Ambac has received a broad range of documents, including the materials sufficient for an outside actuary to evaluate Milliman's calculation of pension liabilities—the purported basis for the discovery requests:

- 2015 pensioner and participant census data for ERS, JRS and TRS (on average, yearly census data encompass detailed information for several hundred thousand people)[1];
- 2015 Milliman valuation reports (which detail Milliman's assumptions and pension liability analysis) for ERS, JRS and TRS[2];
- 2016 census data for ERS, JRS and TRS[3];

---

[1] PR-INSURERS2004-0002228, PR-INSURERS2004-0002302, PR-INSURERS2004-0002363.
[2] PR-INSURERS2004-0000062 - PR-INSURERS2004-0000135, PR-INSURERS2004-0000330 - PR-INSURERS2004-0000397, PR-INSURERS2004-0000398 - PR-INSURERS2004-0000476, PR-INSURERS2004-0001002 - PR-INSURERS2004-0001090, PR-INSURERS2004-0001161 - PR-INSURERS2004-0001242. Prior productions also included a Milliman report determining the Act 32-2013 Additional Uniform Contribution for FY17-18 (PR-INSURERS2004-0000689 - PR-INSURERS2004-0000701), a Milliman report regarding the 10% estimated pension reduction (PR-INSURERS2004-0000993 - PR-INSURERS2004-0001001), a Milliman report regarding TRS hybrid plans (PR-INSURERS2004-0001091 - PR-INSURERS2004-0001095), Milliman reports regarding Act 106-2017 (PR-INSURERS2004-0001377 - PR-INSURERS2004-0001409, PR-INSURERS2004-0001414 - PR-INSURERS2004-0001418), and a Milliman report regarding administrative expenses in connection with the pension systems (PR-INSURERS2004-0001410 - PR-INSURERS2004-0001413).
[3] PR-INSURERS2004-0001639 - PR-INSURERS2004-0001640, PR-INSURERS2004-0002586.

1

- 2016 Milliman valuation reports for ERS, JRS and TRS[4];
- 2017 census data for ERS and JRS[5];
- 2017 Milliman valuation reports for ERS, JRS and TRS[6];
- Lists of retirees and beneficiaries[7];
- ERS, JRS and TRS plan summaries, manuals, and regulations[8];
- Data on retiree payments, employee and employer contributions, PayGo invoices, financial statements, and PayGo, TSA, and component unit reports[9];
- Benefit overpayment and collection data[10];
- Written responses from Milliman to Ambac's questions about Milliman's work[11]; and

---

[4] PR-INSURERS2004-0001096 - PR-INSURERS2004-0001160, PR-INSURERS2004-0001501 - PR-INSURERS2004-0001568, PR-INSURERS2004-0002229 - PR-INSURERS2004-0002301, PR-INSURERS2004-0002303 - PR-INSURERS2004-0002362, PR-INSURERS2004-0002364 - PR-INSURERS2004-0002428.

[5] PR-INSURERS2004-0002604 - PR-INSURERS2004-0002612. It's our understanding that Milliman will produce final data sets when they're ready.

[6] PR-INSURERS2004-0002613 - PR-INSURERS2004-0002681, PR-INSURERS2004-0002682 - PR-INSURERS2004-0002740, PR-INSURERS2004-0010255 - PR-INSURERS2004-0010308.

[7] PR-INSURERS2004-0001419 - PR-INSURERS2004-0001421.

[8] PR-INSURERS2004-0000201 - PR-INSURERS2004-0000277, PR-INSURERS2004-0000702 - PR-INSURERS2004-0000955, PR-INSURERS2004-0000960 - PR-INSURERS2004-0000992, PR-INSURERS2004-0002434 - PR-INSURERS2004-0002447, PR-INSURERS2004-0007003, INSURERS2004-0007151 - PR-INSURERS2004-0007173.

[9] PR-INSURERS2004-0000009, PR-INSURERS2004-0001499 - PR-INSURERS2004-0001500, PR-INSURERS2004-0001687, PR-INSURERS2004-0001770, PR-INSURERS2004-0001903, PR-INSURERS2004-0002110, PR-INSURERS2004-0002111, PR-INSURERS2004-0002746 - PR-INSURERS2004-0002747, PR-INSURERS2004-0002831 - PR-INSURERS2004-0003080, PR-INSURERS2004-0003667 - PR-INSURERS2004-0006982; PR-INSURERS2004-0007031 - PR-INSURERS2004-0007150, PR-INSURERS2004-0007174 - PR-INSURERS2004-0008692; ERS-CW_LS0000001, ERS-CW_LS0000398. ERS_LS0001868, ERS_LS0001958; ERS_LS0008335; ERS_0146111 - ERS_0146141; ERS-CW_LS0000398
PR-INSURERS2004-0002741 to PR-INSURERS2004-0007150.

[10] PR-INSURERS2004-0001988 - PR-INSURERS2004-0002205.

[11] Email from M. Pocha (Oct. 25, 2019).

2

- Fiscal plan models,[12] pension models,[13] and other pension analyses and projections, both before[14] and after[15] the implementation of PayGo.

**Email Review**

The documents the retirement systems have already produced, and the additional documents Milliman is producing (including corrected census data), are sufficient to evaluate Milliman's pension liability calculations. It does not require a production of every email exchanged between the retirement systems and Milliman since 2016.

We stated these positions on our February 19, 2021 call and explained that a demand to review every email with Milliman is overbroad and not necessary. Among other problems, such a review would capture completely irrelevant matter, like the scheduling of meetings or the submission of Milliman's bills. More importantly, the emails would also encompass topics unrelated to the assumptions that Ambac contends that it does not understand in Milliman's reports. *See* Ambac's Rule 2004 Motion (June 18, 2019), ECF No. 7507, ¶ 7. You also identified a list of issues for which you wanted an email review in your September 14, 2020 letter. We then tried to work with you to craft search terms to address those issues. Since then, you have continued to expand the scope of the proposed email review (at one point ballooning to a search of over 267,000 documents), culminating in your request that every email connected with Milliman should be reviewed. That broad of a request is not sufficiently tethered to the necessity of the discovery and is not consistent with the Court's guidance.[16]

Your request to review all emails with Milliman is also duplicative of the discovery you are seeking from Milliman directly. As we informed you last year before you served your subpoena on Milliman (which we did not formally oppose), we do not think it is reasonable or necessary for the Government Parties to conduct discovery that is duplicative of discovery from Milliman. Now that Milliman has agreed to search and produce email, the time and expense of doing a separate email review of retirement system custodians cannot be justified. Even assuming an email review would be appropriate at all to understand the calculation of pension liabilities, Ambac cannot justify the necessity of two overlapping email reviews occurring simultaneously on the same subject matter. We are not aware of anything material to the explanation of

---

[12] CW_RJM2004_0004608, CW_RJM2004_0006405 - CW_RJM2004_0006432, CW_RJM2004_0013485, CW_RJM2004_0014835, CW_RJM2004_0016274    - CW_RJM2004_0018142, CW_RJM2004_0023261, CW_RJM2004_0085558, CW_RJM2004_0089335, CW_RJM2004_0089369, CW_RJM2004_0096746.

[13] CW_RJM2004_0006617, CW_RJM2004_0033469, CW_RJM2004_0087109, CW_RJM2004_0087152; ERS-CW_LS0000449; *see also* CW_RJM2004_0096913 (explanation of refinements).

[14] PR-INSURERS2004-0000993; ERS_LS0006242, ERS_LS0008464, ERS_LS0009175; ERS-CW_LS0000189; ERS-AAFAF_LS0001522; ERS_0068662, ERS_0119333, ERS_0122779, ERS_0120822.

[15] ERS_LS0001867, ERS_LS0005556 - ERS_LS0005557, ERS_LS0006231, ERS_LS0006243, ERS_LS0006427, ERS_LS0009366; ERS-CW_LS0000002, ERS-CW_LS0000296, ERS-CW_LS0000322; ERS_0122279.

[16] *See, e.g.*, ECF 14181 (Dein, J.) (denying motion to compel email discovery); ECF 12080 (Dein, J.) (same).

Milliman's actuarial calculations and assumptions that could not be captured by the review of documents and emails that Milliman has offered to Ambac.

With the filing of the Second Amended Plan,[17] and forthcoming motions to, among other things, approve the Disclosure Statement for the Plan and set a confirmation schedule, further or additional Rule 2004 discovery is inappropriate. Going forward, to avoid inefficiencies and preserve the resources of the parties and the court, discovery should be in accordance with a plan confirmation schedule and conducted in coordination with all parties-in-interest. Even assuming an email review of retirement system custodians is appropriate after Milliman finishes its production, such a review should be targeted to address material contested issues related to plan confirmation. All creditors with a stake in the plan can then participate in the discovery process in a fair and organized fashion.

Finally, we do not think it is fair for us to spend the public's money on an email review that Ambac has already deemed to be inadequate, as reflected by the content and tone of your March 2 letter. Your letter states that the search we had proposed a few months ago[18] (before Milliman agreed to review email) would only "commence" the document review and indicates that Ambac plans to seek even more discovery in the future:

> Ambac maintains that all communications with Milliman are relevant to an assessment of the Commonwealth's financial condition . . . . Ambac reserves all rights to propose additional or different search parameters and seek additional discovery after reviewing any productions made in this matter, including all communications between Milliman and the Commonwealth.

We had offered the proposal to you in the spirit of compromise—not because we believed email review was necessary,[19] but that goal is not served by spending time and money on a review duplicative of Milliman's review and where Ambac has prejudged the sufficiency of the review from the outset. If that is incorrect and not what you had intended to convey in your letter, we need assurance from Ambac that any final agreements we make regarding Rule 2004 discovery will in fact be treated as final so that everyone can proceed to plan confirmation discovery in a timely and cost-effective way.

**Depositions**

It is our understanding that Ambac plans to depose Milliman. In light of that, we do not understand the need for depositions of retirement system personnel—let alone all document custodians[20]—to understand Milliman's actuarial reports and pension calculations. We are not

---

[17] "Second Amended Plan" refers to Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. [Case No. 17-3283, ECF 15976].

[18] Letter to J. Hughes and A. Paslawsky (Jan. 27, 2021).

[19] *See* Letter to J. Hughes (Oct. 23, 2020) (any email review is "without waiver of any objections, including the concerns we previously stated regarding the relevance, necessity, and burden of doing an email review"); Letter to J. Hughes (Dec. 14, 2020) ("[I]t remains AAFAF's position that an email review is unnecessary to understand the Commonwealth's current pension liabilities.").

[20] As with Ambac's expanding email discovery demands, this is another instance in which Ambac has moved the goal posts. On the parties' February 8, 2021 call, Ambac asked whether AAFAF would agree to a deposition of only one person: Cecile Tirado. Ambac's March 2 letter now asks for depositions of all document custodians.

aware of any factual questions that are material to the calculation of pension liabilities that could not be answered by Milliman. If that is incorrect, please identify the questions so that we can assess whether retirement system personnel have knowledge or if the questions can only be answered by Milliman. We also need to understand how any such factual issues are material to Milliman's actuarial analysis.

**Upcoming Productions**

The retirement systems expect to make another document production soon and will continue to produce new valuation reports and updated census data as those documents become available. We have asked for an update on the status of the 2018 valuation reports. Once we have more information, we will let you know.

**New Requests Directed to the Oversight Board**

As a threshold issue and contrary to the suggestion in your letter, the parties did not discuss any November 17, 2020 letter during our call on February 8th: Ambac only requested materials produced in response to a February 3, 2021 letter from the Oversight Board to the Retirement System, and the Oversight Board agreed to consider that request.

That said, the Oversight Board has now considered both (1) your request for materials the Retirement System provides in response to the Oversight Board's February 3, 2021 letter; and (2) your new request for materials provided in response to the Oversight Board's November 17, 2020 letter to the Governor and the Legislature regarding the development of the FY22 budget for the Commonwealth. The Oversight Board will agree to produce materials provided in response to its February 3 letter to the Retirement System. The Oversight Board will not, however, provide materials it receives in response to its November 17, 2020 letter. That request is particularly inappropriate because it seeks discovery into the Oversight Board's entire budgetary development process. The Oversight Board's decisions whether to certify the Commonwealth's budget are immune from judicial review pursuant to PROMESA § 106(e). *See, e.g.*, *In re Financial Oversight and Management Board for Puerto Rico*, 916 F.3d 98, 112 (1st Cir. 2019) ("PROMESA grants the Board exclusive authority to certify Fiscal Plans and Territory Budgets or Puerto Rico. It then insulates those certification decisions from judicial review in § 106(e)."). Nor will the Oversight Board provide Ambac with updates "on the status of any productions" from ERS in response to any letter from the Oversight Board, including the February 3 letter.

Finally, Ambac made yet another new request in its March 2 letter for "an explanation into the analysis [the Oversight Board] is conducting into the Commonwealth's pension obligations." The Oversight Board cannot possibly respond substantively to such a vague request. In any event, as explained above, given the filing of the Second Amended Plan, any new requests must be submitted in accordance with a plan confirmation schedule and conducted in coordination with all parties in interest.

Sincerely,

/s/ *Margaret A. Dale* /s/ *Madhu Pocha*

Margaret A. Dale Madhu Pocha