# **EXHIBIT D**

ERS STIPULATION

**EXECUTION VERSION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK-3566-LTS<br><br>(Jointly Administered) |

**AMENDED AND RESTATED STIPULATION (A)
ALLOWING CLAIMS OF ERS BONDHOLDERS,
(B) STAYING PENDING LITIGATION, AND (C) PROVIDING
FOR TREATMENT OF CLAIMS OF ERS BONDHOLDERS AND
DISMISSAL OF PENDING LITIGATION PURSUANT TO A PLAN OF ADJUSTMENT**

---

[1]      The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID:  3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:  8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:  9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID:  3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID:  3801).

This amended and restated stipulation ("Stipulation") is entered into by the counsel and authorized representatives for (a) the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole representative of the (i) Commonwealth of Puerto Rico (the "Commonwealth") and the (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] (b) Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., Investment Opportunities SPC Investment Opportunities 3 Segregated Portfolio, LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Mason Capital SPV III, LLC, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Opportunities Fund X Holdings (Delaware), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Opps X Holdco Ltd, Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Opps Culebra Holdings, L.P., Pentwater Credit Master Fund Ltd., Pentwater Merger Arbitrage Master Fund Ltd., Pentwater Unconstrained Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd, and SV Credit, L.P. (collectively, the "Andalusian Funds"), (c) Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed

---

[2]      PROMESA is codified at 48 U.S.C. §§ 2101–2241.

2

Income Fund V, Inc., Puerto Rico Fixed Income Fund VI, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund II, Inc., Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax- Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., Tax-Free Puerto Rico Target Maturity Fund, Inc., and UBS IRA Select Growth & Income Puerto Rico Fund (collectively, the "Puerto Rico Funds"), and (d) Whitehaven Credit Opportunities Master Fund, Ltd. (the "Whitehaven Funds" and, collectively with the Andalusian Funds and the Puerto Rico Funds, the "ERS Bondholders" and each, an "ERS Bondholder").[3] The Parties hereby stipulate and agree as follows:

**RECITALS**

A.      ERS is a trust established by the Commonwealth in 1951 to administer the payment of pensions and other benefits to certain officers and employees of the Commonwealth and its instrumentalities.  3 L.P.R.A. §§ 775, 761.

B.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a) in the United States District Court for the District of Puerto Rico (the "Title III Court"), commencing a case under Title III thereof (the "Commonwealth Title III Case").

---

[3] Each of the Commonwealth, ERS, Andalusian Funds, Puerto Rico Funds, and Whitehaven Funds is a "Party" and, collectively, they are the "Parties".

122793696v5

C.      Pursuant to PROMESA section 315(b), the Oversight Board is the sole representative of the Commonwealth as the debtor in the Commonwealth Title III Case.

D.      On May 21 2017 (the "ERS Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the ERS pursuant to PROMESA section 304(a) in the Title III Court commencing a case under Title III thereof (the "ERS Title III Case").

E.      As of the ERS Petition Date, the aggregate outstanding principal amount of certain bonds issued by ERS pursuant to a certain Pension Funding Bond Resolution, adopted January 24, 2008 (the "ERS Bonds"), inclusive of compounded amounts, was $3,168,698,776.55.

F.      Pursuant to PROMESA section 315(b), the Oversight Board is the sole representative of ERS as the debtor in the ERS Title III Case.

G.      Certain ERS Bondholders have filed numerous proofs of claim against ERS and the Commonwealth with respect to liabilities allegedly associated with the ERS Bonds (collectively, the "Bondholder Proofs of Claim"):[4]

1.      The Andalusian Funds:  Claim Nos. 23788, 26037, 26285, 26150, 27122, 36272, 33451, 44249, 36297, 25131, 32797, and 26910 filed against ERS in the ERS Title III Case, and Claim Nos. 32783, 25909, 24966, 20647, 26329, 28669, 27383, 45683, 26365, 31165 21961, 26322, and 172979 filed against the Commonwealth in the Commonwealth Title III Case.

2.      The Puerto Rico Funds:  Claim Nos. 21376, 21209, 21334, 22347, 22467, 23510, 21505, 21156, 21230, 21251, 24690, 22667, 24691, 33222, 33738, 30703, 35893, 31458, 32804, 34846, and 36022 filed against ERS in the ERS Title III Case, and Claim Nos. 21199, 21069, 21309, 22606, 23328, 23526, 25445, 21144, 21213, 21280, 22196, 28680, 39177, 33603, 33671, 33796, 34863,33713, 32845 33786 and 43061 filed against the Commonwealth in the Commonwealth Title III Case.

---

[4] While the Parties intend the lists below to be comprehensive, the Parties intend to capture all Bondholders Proofs of Claim, and reserve their right to identify additional claims they believe should be included in the list of Bondholder Proofs of Claim.

4

H.      The Bank of New York Mellon, as fiscal agent (the "Fiscal Agent") filed a proof of claim against the Commonwealth (Claim No. 16775) on May 24, 2018 (the "Fiscal Agent Commonwealth Proof of Claim") and ERS (Claim No. 16777) on May 24, 2018 (the "Fiscal Agent ERS Proof of Claim" and, together with the Fiscal Agent Commonwealth Proof of Claim, the "Fiscal Agent Proofs of Claim").

I.      The Whitehaven Funds did not originally file proofs of claim on account of its ERS Bond Claims, but acquired such claims from existing bondholders whose claims are covered by the Fiscal Agent Proofs of Claim.

J.      As of the date hereof, the following actions remain pending before the Title III Court (collectively, the "Pending Actions").

1.      "PayGo Challenge Actions":  On July 27, 2017, certain ERS Bondholders filed an adversary proceeding against ERS, the Commonwealth, the Puerto Rico Fiscal Agency and Financial Advisory Authority and certain government officials of the Commonwealth of Puerto Rico (in their official capacities) seeking to invalidate Joint Resolution for Other Allocations for Fiscal Year 2017-2018 ("J.R. 188") and Act 106-2017 ("Act 106", and, collectively with J.R. 188, the "PayGo Legislation"). *See* [Case No. 17-ap-219-LTS, ECF No. 39; Case No, 17-ap-220-LTS, ECF. No. 39]. Specifically, the bondholders sought declarations that:  (i) the PayGo Measures were void because they violated the automatic stay; (ii) their claims against ERS were fully secured; (iii) their security interest attaches to the post-petition PayGo Payments; and (iv) the PayGo Legislation unjustly enriched the Commonwealth and violated the Takings and Contracts Clauses of the Puerto Rico and United States Constitutions. The PayGo Challenge Actions are administratively closed for statistical purposes only. [Case No. 17-ap-219-LTS, ECF No. 78].

2.      "*Ultra Vires* Action":  On May 19, 2019, the Special Claims Committee of the Oversight Board (the "Special Claims Committee") filed adversary complaints which allege the ERS Bonds issuance was *ultra vires* and null and void, and seek the clawback of certain payments made to certain ERS Bondholders and other holders of ERS Bonds. *See* Case No. 19-ap-355-LTS, ECF No. 1; Case No. 19-ap-356-LTS, ECF No. 1; Case No. 19-ap-357-LTS, ECF No. 1; Case No. 19-ap-358-LTS, ECF No. 1; Case No. 19-ap-359-LTS, ECF No. 1; Case No. 19-ap-361-LTS, ECF No. 1.  Certain ERS Bondholders, the Fiscal Agent, the Special Claims Committee, the Official Committee of Retired Employees, and the Official Committee of

5

Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Creditors Committee") have filed motions for summary judgment seeking dismissal thereof.

3. "Lien Scope Action": On May 20, 2019, ERS and the Creditors Committee filed adversary complaints which allege that certain ERS Bondholders do not hold valid and enforceable security interests in any of ERS's assets or the proceeds thereof, other than certain cash at ERS traceable to Employers' Contributions, and certain ERS Employer's Contributions accounts receivable. *See* [Case No. 19-ap-366-LTS, ECF No. 1; Case No. 19-ap-367-LTS, ECF No. 1]. The Oversight Board and certain ERS Bondholders have filed motions for summary judgment.

4. "Administrative Expense and Pre-Petition Claims Actions": On November 21, 2019, certain ERS Bondholders filed a motion seeking allowance and payment of asserted post-petition and administrative expense claims against the Commonwealth and ERS, including claims arising from the PayGo Legislation and the Bondholders' challenge to them in the PayGo Challenge Action. *See* [Case No. 17-bk-3566, ECF No. 707; Case No. 17-bk-3566, ECF No. 710]. The Fiscal Agent joined the ERS Bondholders' motion. [Case No. 17-bk-3566, ECF No. 707, ECF No. 712]. By agreement, the Oversight Board is also prosecuting objections to the Bondholder Proofs of Claim and Fiscal Agent Proofs of Claim simultaneously and in the same briefing as the prosecution of the administrative expense motions. *See* [Case No. 17-bk-3566, ECF No. 838]. The Oversight Board and certain ERS Bondholders have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(b) and 12(c), respectively.

K. On July 19, 2017, certain ERS Bondholders filed a complaint against the United States of America in the United States Court of Federal Claims (the "Federal Circuit Action"). *Altair Global Credit Opportunities Fund (A), LLC*, et al., v. *U.S.* (Case No. 17-cv-970C) [ECF No. 9] (Fed. Cl. Oct. 31, 2017). On November 23, 2020, the Court of Federal Claims dismissed the Federal Circuit Action, and the ERS Bondholders have appealed such dismissal to the United States Court of Appeal for the Federal Circuit (the "Federal Circuit"). The deadline for filing of opening briefs in that appeal has been extended, by agreement, to May 28, 2021. *Altair Global Credit Opportunities Fund (A), LLC*, et al., v. *U.S.* (Case No. 21-1577) (Fed. Cir. 2021).

L. On September 27, 2019, the Commonwealth filed that certain *Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 8765].

6

M.      On September 27, 2019, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Puerto Rico Public Buildings Authority ("PBA") pursuant to PROMESA section 304(a) in the Court, commencing a case under Title III thereof (the "PBA Title III Case" and, together with the Commonwealth Title III Case and the ERS Title III Case, the "PROMESA Title III Cases").

N.      Pursuant to PROMESA section 315(b), the Oversight Board is the sole representative of PBA as the debtor in the PBA Title III Case.

O.      On February 9, 2020, the Oversight Board entered into that certain Plan Support Agreement with, among others, holders of claims against the Commonwealth and PBA, with respect to the terms and conditions for a plan of adjustment for the Commonwealth, ERS, and PBA, and setting forth the proposed treatment for certain claims.

P.      On February 28, 2020, the Oversight Board, on behalf of the Commonwealth, PBA, and ERS filed an amended plan of adjustment (the "Amended Plan") and corresponding disclosure statement (the "2020 Disclosure Statement").

Q.      Due to the onset of the COVID-19 pandemic and its effects on the people and the economy of the Commonwealth, the Oversight Board, on behalf of the Commonwealth, ERS, and PBA, determined to adjourn prosecution of the 2020 Disclosure Statement and the Amended Plan.

R.      On February 22, 2021, the Oversight Board entered into that certain Plan Support Agreement (the "2021 PSA") with respect to the terms and conditions for a plan of for the Commonwealth, ERS, and PBA, and setting forth the proposed treatment for certain claims.

S.      On March 8, 2021, the Oversight Board filed a Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, *et al.* (the "Second Amended Plan") and corresponding disclosure statement (the "Second Amended Disclosure Statement").  While the

122793696v5

Parties have been engaged in mediation regarding the settlement of the Pending Actions and treatment of the ERS Bond Claims, as defined in the Amended Plan, an agreement had not been reached by such filing.

T.      On March 9, 2021, the Parties executed that certain Stipulation (A) Providing for Due Diligence Period, (B) Allowing Claims of ERS Bondholders, (C) Staying Pending Litigation, and (D) Providing for Treatment of Claims of ERS Bondholders and Dismissal of Pending Litigation Pursuant to a Plan of Adjustment the (the "Original Stipulation"), pursuant to which among other things, the Parties agreed to a period, up to March 24, 2021, in which due diligence would be conducted with respect to the Private Equity Portfolio, as defined below, and the Parties would develop a mechanism for the transferability of interests in the Private Equity Portfolio.

U.      In light of the Original Stipulation, the Parties informed the Title III Court and requested an adjournment of the March 11, 2021 hearing to consider the *Ultra Vires* Action and the Lien Scope Action.

V.      As a result thereof, the Title III Court is scheduled to hear oral argument on (i) April 8, 2021 in connection with the *Ultra Vires* Action and Lien Scope Action, and (ii) April 29, 2021 in connection with the Administrative Expense and Pre-Petition Claims Actions (together, with the *Ultra Vires* Action and Lien Scope Action, the "Oral Argument Actions"). [Case No. 17-bk-3566, ECF No. 1065].

W.      Pursuant to two amendments to the Original Stipulation, the Parties extended the period in which due diligence of the Private Equity Portfolio could be conducted up to and including April 2, 2021.

8

X.      In accordance with the provisions of the Original Stipulation, the ERS Bondholders party to the Federal Circuit Action requested, and, on March 30, 2021, the Federal Circuit granted, a stay of the Federal Circuit Action.

Y.      As of the date hereof, the Andalusian Funds hold ERS Bonds in the face amounts set forth on **Exhibit A** attached hereto.

Z.      As of the date hereof, the Puerto Rico Funds hold ERS Bonds in the face amounts set forth on **Exhibit B** attached hereto.

AA.     As of the date hereof, and as set forth on **Exhibit C** attached hereto, the Whitehaven Funds hold ERS Bonds in an aggregate principal amount of $185,845,000.00.

BB.     The Parties have completed the due diligence of the Private Equity Portfolio and have agreed to amend and restate the Original Stipulation as set forth herein.

**NOW, THEREFORE,** in consideration of the foregoing, the Parties hereby agree as follows:

AGREEMENT

1.      On or prior to April 5, 2021, the applicable Parties shall file an urgent joint motion in the Commonwealth Title III Case and the ERS Title III Case seeking adjournment of oral argument and a stay of all litigation in connection with the Pending Actions (the "Stay Motion"), including, without limitation, oral argument regarding the Oral Argument Actions, pending confirmation and consummation of the Third Amended Plan, as defined below (or any plan filed subsequent to the Third Amended Plan) (the "Plan Effective Date").

2.      Effective immediately, but subject to the provisions of decretal paragraph 1 hereof, (i) the applicable Parties agree (severally, not jointly) that the Pending Actions shall be stayed up to and through the Plan Effective Date, and (ii) subject to termination of this Stipulation, the Parties

9

agree (severally, not jointly) to refrain, during the period up to and through the Plan Effective Date, from commencing, continuing, filing, or otherwise pursuing any claims or actions in connection with the ERS Bonds against the Parties and non-Parties (such as the United States of America); provided, however, for the avoidance of doubt, (i) the ERS Bondholders may take steps to preserve such actions during such period, including responding to court directives, if any, and (ii) the Special Claims Committee and the Creditors Committee may take steps to preserve the *Ultra Vires* Action during such period, including compliance with discovery and confidentiality orders regarding the dismissal and addition of defendants to such action.

3.      Independent of the filing of the Stay Motion, or the Title III Court's approval of the Stay Motion, and subject to termination of this Stipulation, the Parties agree to refrain from commencing, continuing, filing, or otherwise pursuing any claims or actions in connection with the ERS Bonds against the Parties and non-Parties (such as the United States of America), except as described below in connection with the Third Amended Plan, in accordance with this Stipulation, or as otherwise ordered by the relevant court; provided, however, that nothing herein shall stay or prevent the commencing, continuing, filing, or otherwise pursuing any claims or actions in connection with that certain action captioned as *Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico, et al. v. UBS Financial Services. Inc. of Puerto Rico, et al.*, Civ. No. KAC-2011-1067 (803), currently pending in the Commonwealth of Puerto Rico Court of First Instance, San Juan Part.

4.      During the period from the date hereof up to and including the Purchase Date, as defined below, (a) ERS shall hold the interests in the ERS private equity portfolio (together with the "Segregated Account" defined below, the "Private Equity Portfolio") until transferred to the ERS Trust, as defined below, in accordance with the provisions of decretal paragraph 5(c) hereof

122793696v5

and shall continue to manage such assets up to and including the Purchase Date or such earlier date in the event that the Private Equity Portfolio is purchased by holders of ERS Bonds in accordance with the Bondholder Election, as defined below, (b) ERS shall not transfer or liquidate the Private Equity Portfolio; provided, however, that assets within the Private Equity Portfolio may be liquidated in the ordinary course pursuant to applicable terms and conditions of the respective underlying agreements, with the proceeds thereof deposited into the Segregated Account, (c) any quarterly cash distributions or other proceeds from the Private Equity Portfolio shall be deposited into the Segregated Account, and (d) in the event that there is insufficient cash in the Segregated Account from distributions made from the Private Equity Portfolio necessary to satisfy any capital commitments with respect thereto, the Commonwealth shall fund any cash shortfalls; provided, however, that, upon sufficient cash existing in the Segregated Account, ERS shall cause monies to be paid from the Segregated Account to reimburse the Commonwealth for such funded shortfall amounts. "Segregated Account" shall mean a segregated account established by ERS that shall be used solely for the purposes set forth herein.

5.      On or prior to thirty (30) calendar days from the date hereof, the Oversight Board shall file a third amended plan (the "Third Amended Plan") and corresponding disclosure statement (the "Third Amended Disclosure Statement"), which shall provide that:

a.      Upon the Plan Effective Date, the Fiscal Agent ERS Proof of Claim shall be deemed allowed in an aggregate amount of Three Billion, One Hundred and Sixty-Eight Million, Six Hundred and Ninety-Eight Thousand, Seven Hundred and Seventy-Six Dollars, and Fifty-Five Cents ($3,168,698,776.55), and all other claims filed against the Commonwealth or ERS with respect to the ERS Bonds, including the Bondholder Proofs of Claim and the Fiscal Agent Commonwealth Proof of Claim, shall be deemed satisfied and expunged.

b.      Upon the Plan Effective Date, the Pending Actions shall be dismissed and/or denied, with prejudice, and the Oversight Board and Special Claims Committee shall, and the Creditors Committee and ERS Bondholders (on their own account or on behalf of affiliates or related funds or accounts

11

managed by affiliates) may, take any and all necessary action as may be reasonably necessary, including, without limitation, filing such notices, stipulations or other pleadings in the Court, to effectuate such dismissal and/or denial of the Pending Actions, with prejudice.

c.      Upon the Plan Effective Date, (i) all holders of allowed claims with respect to the ERS Bonds (or their designee) shall receive, without setoff or deduction for taxes, pursuant to the Third Amended Plan their pro rata share of Three-Hundred and Seventy-Three Million Dollars ($373,000,000.00) in cash distributions, with such cash payments being made available from ERS and the Commonwealth from the purchase of ERS assets, and (ii) ERS shall place the Private Equity Portfolio into a trust (the "ERS Trust"), which trust's documentation will be reasonably acceptable to the ERS Bondholders, and ERS shall continue to manage such assets up to the date (the "Purchase Date") that such assets or ERS Trust interests are purchased by the Commonwealth or the holders of allowed claims with respect to the ERS Bonds pursuant to the Bondholder Election, as defined below.

d.      From the Plan Effective Date up to and including April 10, 2023, the Commonwealth shall have the right to purchase (the "Commonwealth Election") the Private Equity Portfolio for Seventy Million Seven Hundred Fifty Thousand Dollars ($70,750,000.00) (the "Portfolio Price"), with the proceeds thereof to be distributed to holders of allowed claims with respect to the ERS Bonds (or their designee); provided, however, that the Commonwealth shall provide written notice of its exercise of the Commonwealth Election no later than April 10, 2023 and, in that event, consummate the purchase no later than April 25, 2023.  In the event the Commonwealth fails to provide notice of its exercise of the Commonwealth Election by April 10, 2023, any holder(s) of allowed claims with respect to the ERS Bonds shall have the option to purchase (the "Bondholder Election") all of the interests in the ERS Trust for the Portfolio Price, plus such amount as may be necessary to reimburse the Commonwealth for any funded shortfall amounts that have not been previously reimbursed to the Commonwealth, by providing written notice thereof to the Commonwealth no later than April 15, 2023, with such electing holder(s) paying such aggregate amount, on a pro rata basis, to the Commonwealth, no later than April 20, 2023.  In the event that neither the Commonwealth Election nor the Bondholder Election shall have been exercised, on April 25, 2023, the Commonwealth shall purchase the Private Equity Portfolio for the Portfolio Price.   The proceeds arising from the Commonwealth Election, the Bondholder Election or the Commonwealth's purchase in accordance with the provisions of the preceding sentence shall, in each case, be distributed to holders of allowed claims with respect to the ERS Bonds (or their designees), without set off or deduction for taxes.  Quarterly portfolio summaries of the Private Equity Portfolio shall be provided to ERS Bondholders that execute and deliver a non-disclosure agreement, with the understanding that any information provided pursuant thereto shall not be

12

subject to public disclosure.  The Parties agree that ERS shall be the owner of the Private Equity Portfolio and the ERS Trust until the Purchase Date for all applicable tax purposes, and that no items of taxable income, gain, loss, or deduction attributable to the Private Equity Portfolio or the ERS Trust, as the case may be, shall be allocated to the holders of allowed claims with respect to the ERS Bonds unless and until such holders have purchased the interests in the ERS Trust pursuant to the Bondholder Election.

e.     Upon the Plan Effective Date, the ERS Bondholders that are parties hereto as of the date of this Stipulation (or their designee) shall receive, without setoff or deduction for taxes, their *pro rata* share (based on such ERS Bondholder's holdings as of the date hereof) of Seventy-Five Million Dollars ($75,000,000.00) in cash distributions (the "Consummation Payments").

f.     In consideration for the Commonwealth making payments to support the cash distributions to be made pursuant to the Third Amended Plan, all other ERS assets shall be transferred to and vest in the Commonwealth as of the Plan Effective Date.

The Parties agree that the distributions in this decretal paragraph 5 are treated as amounts realized for tax purposes on the ERS Bonds.

6.     Provided this Stipulation has not been terminated and remains in full force and effect, in its sole and absolute discretion, the Oversight Board may file any further plan amending the Third Amended Plan or any subsequent plan; provided, however, that such plan shall contain provisions consistent with those described in decretal paragraph 5 above and that nothing in such plan is inconsistent with such provisions.

7.     From and after the date hereof, and provided that this Stipulation has not been terminated, each of the ERS Bondholders, solely in its capacity as an ERS Bondholder (and severally, not jointly), agrees to: (a) upon being solicited in accordance with the provisions of PROMESA, vote to accept the Third Amended Plan (or any plan filed subsequent to the Third Amended Plan that is economically consistent with this Stipulation), or direct the Fiscal Agent to vote to accept of and support the Third Amended Plan (or any plan filed subsequent to the Third Amended Plan that is economically consistent with this Stipulation); (b) support, and otherwise

13

not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein, or impede or preclude, the filing of the Third Amended Plan (or any plan filed subsequent to the Third Amended Plan that is economically consistent with this Stipulation), the administration of the Third Amended Plan (or any plan filed subsequent to the Third Amended Plan that is economically consistent with this Stipulation), the approval of the Third Amended Disclosure Statement (or any disclosure statement filed subsequent to the Third Amended Disclosure Statement that is economically consistent with this Stipulation), entry of an order confirming the Third Amended Plan (or any plan filed subsequent to the Third Amended Plan that is economically consistent with this Stipulation) and achievement of the Plan Effective Date; provided that such documents are consistent with the terms herein; and (c) forbear from selling, transferring, pledging, hypothecating, or assigning their ERS Bonds, or any voting, consent, or direction or participations or other interests therein (a "Transfer").   Notwithstanding anything herein to the contrary, the ERS Bondholders may effectuate a Transfer to (1) another Party to this Stipulation or (2), in the event that the transferee is not a Party at the time of the Transfer, such transferee that executes and delivers, within three (3) calendar days after execution thereof, to counsel for the Oversight Board, the joinder agreement attached hereto as **Exhibit D** (a "Qualified Transferee"), pursuant to which (y) such Qualified Transferee shall (i) assume all the rights and obligations of the transferor in accordance with the terms and conditions of this Stipulation and (ii) such Qualified Transferee shall then be deemed a Party for all purposes herein, including, without limitation, with respect to any additional ERS Bonds held by such Qualified Transferee at the time it joins this Stipulation, and shall assume all of the rights and obligations hereunder (other than the right to receive the Consummation Payments) and (z) on or after the effective date of the Transfer, such ERS Bondholder transferor

14

shall be deemed to have relinquished its rights (other than the right to receive the Consummation Payments); and, provided, further, that, to the extent that a Transfer violates the provisions of this section, it shall be void *ab initio* and the applicable ERS Bonds and the ERS Bondholder attempting such Transfer shall continue to remain subject to the terms of this Stipulation; and, provided, further, that nothing contained herein is intended, nor shall it be construed, to preclude any of the ERS Bondholders from acquiring additional ERS Bonds; provided, however, that any such ERS Bonds acquired from and after the date hereof shall automatically and immediately upon acquisition by an ERS Bondholder be deemed subject to all of the terms and provisions of this Stipulation. Notwithstanding the foregoing, nothing contained herein shall restrict or prohibit any party from taking any action required by the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, any rule or regulations promulgated thereunder, or by any other applicable law or regulation. Notwithstanding the foregoing, an ERS Bondholder may Transfer ERS Bonds (or interests therein) to a Qualified Marketmaker (defined below), acting in its capacity as a Qualified Marketmaker, without the requirement that such Qualified Marketmaker be or become a party to this Stipulation if such Qualified Marketmaker subsequently Transfers such ERS Bonds (or interests therein) to a transferee that is a party to this Stipulation or a transferee who executes and delivers to counsel a Joinder in accordance with the Stipulation, at or before the time of the proposed Transfer. To the extent that a party hereto is acting in its capacity as a Qualified Marketmaker, it may Transfer any ERS Bonds (or interest therein) that the Qualified Marketmaker acquires from a holder of the ERS Bonds (or interest therein) that is not a Party to this Stipulation without the requirement that the transferee be or become a Party hereto. A Qualified Marketmaker may, with the consent of the Oversight Board, which consent shall not be unreasonably withheld, join this Stipulation solely on behalf of a specific trading desk. A

15

"Qualified Marketmaker" shall mean an entity that: (x) holds itself out to the market as standing ready in the ordinary course of its business to purchase from customers and sell to customers debt securities such as the ERS Bonds or enter with customers into long and short positions in debt securities such as the ERS Bonds, in its capacity as a dealer or market marker in such ERS Bonds; (y) is in fact regularly in the business of making a market in debt securities; and (z) if transacting with respect to ERS Bonds, is registered with Securities and Exchange Commission and financial institutions regulatory authority.

8.      As soon as practicable following the date hereof, the Oversight Board shall use its reasonable best efforts to cause the Commonwealth to publicly disclose the terms of this Stipulation on the Electronic Municipal Market Access (EMMA) website.

9.      As soon as practicable following the date hereof, but in no event later than five (5) business days from and after the date hereof, the Oversight Board shall publicly disclose, or cause the public disclosure of, those diligence materials with respect to the Private Equity Portfolio, and which were provided in accordance with the terms and provisions of the Original Stipulation and which were not denominated as "Professional Eyes Only".

10.      Notwithstanding anything contained in this Stipulation or elsewhere to the contrary, this Stipulation is not, and shall not be deemed to be, a solicitation of acceptances of the Third Amended Plan (or any plan filed subsequent to the Third Amended Plan). Each of the Parties, severally and not jointly, acknowledged and agrees that (a) the votes on the Third Amended Plan (or any plan filed subsequent to the Third Amended Plan) will not be solicited until the Title III Court has approved the Third Amended Disclosure Statement (or any disclosure statement filed subsequent to the Third Amended Disclosure Statement) and related solicitation materials, and such Third Amended Disclosure Statement (or any disclosure statement filed subsequent to the

122793696v5

Third Amended Disclosure Statement) and solicitation materials have been transmitted to parties entitled to receive same and (b) this Stipulation does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful.  NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED HEREIN SHALL REQUIRE ANY PARTY TO TAKE ANY ACTION PROHIBITED BY PROMESA, THE SECURITIES ACT OF 1933, AS AMENDED, THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED, ANY RULE OR REGULATIONS PROMULGATED THEREUNDER, OR BY ANY OTHER APPLICABLE LAW OR REGULATION OR BY ANY ORDER OR DIRECTION OF ANY COURT OR ANY STATE OR FEDERAL GOVERNMENTAL AUTHORITY.

11.      This Stipulation shall terminate, and thereafter shall be null and void and deemed of no further force and effect upon the occurrence of one of the following events:  (a) upon the Oversight Board's breach of any of the material terms or provisions of this Stipulation, including the filing of the Third Amended Plan (or any plan filed subsequent to the Third Amended Plan) which treats the Fiscal Agent's or ERS Bondholders' claims in a manner inconsistent with the terms herein; (b) upon any of the ERS Bondholder's material breach of the terms or provisions of this Stipulation; (c) if the Title III Court denies confirmation of the Third Amended Plan (or any plan filed subsequent to the Third Amended Plan); (d) if prior to the Plan Effective Date, the order confirming the Third Amended Plan (or any plan filed subsequent to the Third Amended Plan) is vacated pursuant to a final order of the Title III Court; or (e) if the Plan Effective Date fails to occur by December 15, 2021 (subject to extension through January 31, 2022 in accordance with the terms of the 2021 PSA).

12.     Upon the Plan Effective Date, the ERS Bondholders party to the Federal Circuit Action and appeal therefrom shall move to dismiss such appeal, with prejudice; provided, however, that, in the event this Stipulation is terminated, for the avoidance of doubt, such ERS Bondholders may take such action as they deem appropriate to continue such Federal Circuit Action.

13.     The Parties, by and through their respective counsel, represent and warrant that they are duly authorized to enter into and be bound by this Stipulation.

14.     The agreements, representations, covenants, and obligations of the Parties under this Stipulation are several only and not joint in any respect and none shall be responsible for the performance or breach of this Stipulation by another.

15.     The execution of this Stipulation is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Party to any other Party or any other Person with respect to any of the matters addressed in this Stipulation.   None of this Stipulation (including the recitals and exhibits hereto), the settlement, or any act performed or document executed pursuant to or in furtherance of this Stipulation or the settlement herein shall be admissible in any proceeding for any purposes, except to enforce the terms of this Stipulation.

16.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Stipulation.

17.     This Stipulation shall be governed by New York law.

18

18.     This Stipulation may be executed in multiple counterparts, any of which may be transmitted by facsimile or electronic mail, and each of which will be deemed an original, but all of which together will constitute one instrument.

Dated:  April 2, 2021

*[Signature Pages Follow]*

19

**THE COMMONWEALTH OF PUERTO RICO**

By: Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico

By: _____

Brian S. Rosen
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Commonwealth*

[Signature Page to ERS Bondholder Stipulation – April 2, 2021]

122793696v5

**THE EMPLOYEES RETIREMENT SYSTEM
OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO**

By:  Financial Oversight and Management
Board for Puerto Rico, as representative of
the Employees Retirement System of the
Government of the Commonwealth of Puerto Rico

By:  /s/ Brian Rosen
Brian S. Rosen
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as representative of the
Employees Retirement System of the Government of
the Commonwealth of Puerto Rico*

[Signature Page to ERS Bondholder Stipulation – April 2, 2021]

122793696v5

ALTAIR GLOBAL CREDIT
OPPORTUNITIES FUND (A), LLC,
ANDALUSIAN GLOBAL DESIGNATED
ACTIVITY COMPANY, CROWN MANAGED
ACCOUNTS FOR AND ON BEHALF OF
CROWN/PW SP, GLENDON
OPPORTUNITIES FUND, L.P., INVESTMENT
OPPORTUNITIES SPC INVESTMENT
OPPORTUNITIES 3 SEGREGATED
PORTFOLIO, LMA SPC FOR AND ON
BEHALF OF MAP 98 SEGREGATED
PORTFOLIO, MASON CAPITAL MASTER
FUND LP, MASON CAPITAL SPV III, LLC,
OAKTREE-FORREST MULTI-STRATEGY,
LLC (SERIES B), OAKTREE
OPPORTUNITIES FUND IX, L.P., OAKTREE
OPPORTUNITIES FUND IX (PARALLEL),
L.P., OAKTREE OPPORTUNITIES FUND IX
(PARALLEL 2), L.P., OAKTREE
OPPORTUNITIES FUND X HOLDINGS
(DELAWARE), L.P., OAKTREE
HUNTINGTON INVESTMENT FUND II, L.P.,
OAKTREE OPPORTUNITIES FUND X, L.P.,
OAKTREE OPPORTUNITIES FUND X
(PARALLEL), L.P., OAKTREE
OPPORTUNITIES FUND X (PARALLEL 2),
L.P., OAKTREE OPPS X HOLDCO LTD,
OAKTREE VALUE OPPORTUNITIES FUND
HOLDINGS, L.P., OCEANA MASTER FUND
LTD., OCHER ROSE, L.L.C., OPPS CULEBRA
HOLDINGS, L.P., PENTWATER CREDIT
MASTER FUND LTD., PENTWATER
MERGER ARBITRAGE MASTER FUND
LTD., PENTWATER UNCONSTRAINED
MASTER FUND LTD., PWCM MASTER
FUND LTD., REDWOOD MASTER FUND,
LTD, AND SV CREDIT, L.P.

By:

Benjamin Rosenblum
JONES DAY
250 Vesey Street
New York, NY 10281
Tel. (212) 326-8312
Fax: (212) 755-7306

*Attorneys for the Andalusian Funds*

[Signature Page to ERS Bondholder Stipulation – April 2, 2021]

**PUERTO RICO AAA PORTFOLIO BOND FUND, INC., PUERTO RICO AAA PORTFOLIO BOND FUND II, INC., PUERTO RICO AAA PORTFOLIO TARGET MATURITY FUND, INC., PUERTO RICO FIXED INCOME FUND, INC., PUERTO RICO FIXED INCOME FUND II, INC., PUERTO RICO FIXED INCOME FUND III, INC., PUERTO RICO FIXED INCOME FUND IV, INC., PUERTO RICO FIXED INCOME FUND V, INC.; PUERTO RICO FIXED INCOME FUND VI, INC., PUERTO RICO GNMA & U.S. GOVERNMENT TARGET MATURITY FUND, INC., PUERTO RICO INVESTORS BOND FUND I, PUERTO RICO INVESTORS TAX-FREE FUND, INC., PUERTO RICO INVESTORS TAX-FREE FUND II, INC., PUERTO RICO INVESTORS TAX-FREE FUND III, INC., PUERTO RICO INVESTORS TAX-FREE FUND IV, INC., PUERTO RICO INVESTORS TAX-FREE FUND V, INC., PUERTO RICO INVESTORS TAX- FREE FUND VI, INC., PUERTO RICO MORTGAGE-BACKED & U.S. GOVERNMENT SECURITIES FUND, INC., TAX-FREE PUERTO RICO FUND, INC., TAX-FREE PUERTO RICO FUND II, INC., TAX-FREE PUERTO RICO TARGET MATURITY FUND, INC., AND UBS IRA SELECT GROWTH & INCOME PUERTO RICO FUND**

By: _____
John K. Cunningham
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113

*Attorneys for the Puerto Rico Funds*

[Signature Page to ERS Bondholder Stipulation – April 2, 2021]

122793696v5

WHITEHAVEN CREDIT OPPORTUNITIES
MASTER FUND, LTD.

By: _____

Douglas S. Mintz
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 756-2000

*Attorneys for Whitehaven Credit Opportunities
Master Fund, Ltd.*

## Exhibit A

### Andalusian Funds ERS Bonds Holdings

Andalusian Global Designated Activity Company:

| CUSIP | Description | Amount |
|-------|-------------|--------|
| 29216MAF7 | Term Bond | 2,240,000 |
| 29216MBA7 | Term Bond | 5,000,000 |
| 29216MAH3 | Term Bond | 4,500,000 |
| 29216MAC4 | Term Bond | 31,000,000 |
| 29216MBN9 | Term Bond | 1,185,000 |
| 29216MAL4 | Term Bond | 13,100,000 |
| 29216MAD2 | Term Bond | 19,000,000 |
| 29216MBP4 | Term Bond | 12,500,000 |
| 29216MAN0 | Term Bond | 3,275,000 |
| 29216MBF6 | Term Bond | 5,800,000 |
| 29216MBG4 | Term Bond | 35,520,000 |
| 29216MAQ3 | Term Bond | 45,075,000 |
| 29216MBH2 | Term Bond | 12,500,000 |
| 29216MAE0 | Term Bond | 15,275,000 |
| 29216MBJ8 | Term Bond | 5,000,000 |

Crown Managed Accounts for and on behalf of Crown/PW SP, Investment Opportunities SPC, Investment Opportunities 3 Segregated Portfolio, LMA SPC for and on behalf of Map 98 Segregated Portfolio, Oceana Master Fund Ltd., Pentwater Merger Arbitrage Master Fund Ltd., Pentwater Unconstrained Master Fund Ltd., PWCM Master Fund Ltd., and Pentwater Credit Master Fund Ltd.:

| CUSIP | Description | Amount |
|---|---|---|
| 29216MAC4 | Term Bond | 80,835,000 |
| 29216MAD2 | Term Bond | 3,605,000 |
| 29216MAF7 | Term Bond | 7,229,000 |
| 29216MAK6 | Term Bond | 7,975,000 |
| 29216MAL4 | Term Bond | 4,680,000 |
| 29216MAM2 | Term Bond | 11,495,000 |
| 29216MAN0 | Term Bond | 15,900,000 |
| 29216MAP5 | Term Bond | 3,835,000 |
| 29216MAQ3 | Term Bond | 1,000,000 |
| 29216MBA7 | Term Bond | 680,000 |
| 29216MBB5 | Term Bond | 5,385,000 |
| 29216MBC3 | Term Bond | 11,405,000 |
| 29216MBF6 | Term Bond | 4,000,000 |
| 29216MBG4 | Term Bond | 7,845,000 |
| 29216MBH2 | Term Bond | 10,000,000 |
| 29216MBJ8 | Term Bond | 19,675,000 |
| 29216MBL3 | Term Bond | 18,950,000 |
| 29216MBN9 | Term Bond | 1,215,000 |

| 29216MBP4 | Term Bond | 31,655,000 |
|-----------|-----------|------------|
| 29216MAB6 | CAB | 43,725,000 |
| 29216MAT7 | CAB | 12,945,000 |
| 29216MAU4 | CAB | 88,860,000 |
| 29216MAX8 | CAB | 4,025,000 |

Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Opportunities Fund X Holdings (Delaware), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Opps X Holdco Ltd, Oaktree Value Opportunities Fund Holdings, L.P., and Opps Culebra Holdings, L.P.:

| CUSIP | Description | Value |
|-------|-------------|-------|
| 29216MAC4 | Term Bond | 47,015,000 |
| 29216MAD2 | Term Bond | 11,340,000 |
| 29216MAF7 | Term Bond | 10,655,000 |
| 29216MAK6 | Term Bond | 27,170,000 |
| 29216MAL4 | Term Bond | 1,125,000 |
| 29216MAN0 | Term Bond | 2,160,000 |
| 29216MAP5 | Term Bond | 16,260,000 |
| 29216MAQ3 | Term Bond | 3,920,000 |
| 29216MBA7 | Term Bond | 24,120,000 |
| 29216MBB5 | Term Bond | 24,865,000 |
| 29216MBC3 | Term Bond | 16,765,000 |
| 29216MBD1 | Term Bond | 16,980,000 |
| 29216MBE9 | Term Bond | 10,760,000 |
| 29216MBJ8 | Term Bond | 17,985,000 |
| 29216MBL3 | Term Bond | 1,740,000 |
| 29216MBN9 | Term Bond | 805,000 |

Mason Capital Master Fund LP and Mason Capital SPV III, LLC:

| CUSIP | Description | Amount |
|-------|-------------|--------|
| 29216MAF7 | Term Bond | 28,440,000 |
| 29216MBL3 | Term Bond | 800,000 |
| 29216MAG5 | Term Bond | 3,000,000 |
| 29216MAC4 | Term Bond | 128,260,000 |
| 29216MAK6 | Term Bond | 75,545,000 |
| 29216MAL4 | Term Bond | 11,235,000 |
| 29216MAD2 | Term Bond | 2,403,000 |
| 29216MAM2 | Term Bond | 2,165,000 |
| 29216MBA7 | Term Bond | 3,920,000 |
| 29216MBN9 | Term Bond | 7,270,000 |
| 29216MBB5 | Term Bond | 5,000,000 |
| 29216MBC3 | Term Bond | 10,240,000 |
| 29216MBE9 | Term Bond | 2,595,000 |
| 29216MBP4 | Term Bond | 50,625,000 |
| 29216MAN0 | Term Bond | 340,000 |
| 29216MAQ3 | Term Bond | 850,000 |
| 29216MBG4 | Term Bond | 13,875,000 |
| 29216MBH2 | Term Bond | 15,000,000 |
| 29216MBJ8 | Term Bond | 13,216,000 |
| 29216MAT7 | CAB | 3,700,000 |

| | | |
|---|---|---|
| 29216MAA8 | CAB | 10,000 |
| 29216MAB6 | CAB | 10,000,000 |
| 29216MAU4 | CAB | 40,000,000 |
| 29216MAV2 | CAB | 54,955,000 |
| 29216MAW0 | CAB | 27,900,000 |
| 29216MAY6 | CAB | 10,000,000 |
| 29216MAC4 | Term Bond | 25,000,000 |
| 29216MAL4 | Term Bond | 425,000 |
| 29216MAD2 | Term Bond | 1,202,000 |
| 29216MBC3 | Term Bond | 1,500,000 |
| 29216MAN0 | Term Bond | 10,000,000 |
| 29216MAP5 | Term Bond | 685,000 |
| 29216MBG4 | Term Bond | 7,585,000 |
| 29216MBJ8 | Term Bond | 1,539,000 |

Ocher Rose, L.L.C.:

| CUSIP | Description | Amount |
|-------|-------------|--------|
| 29216MBH2 | Term Bond | 9,500,000 |
| 29216MBP4 | Term Bond | 9,485,000 |
| 29216MBG4 | Term Bond | 8,250,000 |
| 29216MBL3 | Term Bond | 7,930,000 |
| 29216MBF6 | Term Bond | 7,225,000 |
| 29216MAP5 | Term Bond | 6,700,000 |
| 29216MAL4 | Term Bond | 6,000,000 |
| 29216MAE0 | Term Bond | 4,900,000 |
| 29216MAX8 | CAB | 3,445,000 |
| 29216MBE9 | Term Bond | 2,200,000 |
| 29216MBA7 | Term Bond | 2,100,000 |
| 29216MBD1 | Term Bond | 1,500,000 |

Redwood Master Fund, Ltd:

| CUSIP | Description | Amount |
|-------|-------------|--------|
| 29216MAV2 | CAB | 14,410,000 |
| 29216MAW0 | CAB | 13,000,000 |

SV Credit, L.P.:

| CUSIP | Description | Amount |
|---|---|---|
| 29216MBF6 | Term Bond | 4,250,000 |
| 29216MBH2 | Term Bond | 4,375,000 |
| 29216MAB6 | CAB | 50,000,000 |
| 29216MAU4 | CAB | 27,835,000 |

### Exhibit B

**Puerto Rico Funds ERS Bonds Holdings**

| Cusip | Type | Face Amount |
|---|---|---|
| 29216MAF7 | Cash-Pay | $810,000 |
| 29216MAJ9 | Cash-Pay | $4,000,000 |
| 29216MAC4 | Cash-Pay | $16,200,000 |
| 29216MAK6 | Cash-Pay | $25,240,000 |
| 29216MAL4 | Cash-Pay | $34,180,000 |
| 29216MAM2 | Cash-Pay | $6,400,000 |
| 29216MAN0 | Cash-Pay | $43,275,000 |
| 29216MAP5 | Cash-Pay | $43,175,000 |
| 29216MAQ3 | Cash-Pay | $11,550,000 |
| 29216MAE0 | Cash-Pay | $60,575,000 |
| 29216MBA7 | Cash-Pay | $61,850,000 |
| 29216MBB5 | Cash-Pay | $25,855,000 |
| 29216MBC3 | Cash-Pay | $10,515,000 |
| 29216MBD1 | Cash-Pay | $30,090,000 |
| 29216MBE9 | Cash-Pay | $25,865,000 |
| 29216MBF6 | Cash-Pay | $67,250,000 |
| 29216MBG4 | Cash-Pay | $22,210,000 |
| 29216MBH2 | Cash-Pay | $16,585,000 |
| 29216MBJ8 | Cash-Pay | $40,625,000 |

122793696v5

| | | |
|---|---|---|
| **29216MAT7** | **CABs** | $19,835,000 |
| **29216MAU4** | **CABs** | $14,435,000 |
| **29216MAV2** | **CABs** | $31,990,000 |
| **29216MAW0** | **CABs** | $37,020,000 |
| **29216MAX8** | **CABs** | $49,380,000 |
| **29216MAY6** | **CABs** | $99,485,000 |
| **29216MAZ3** | **CABs** | $123,055,000 |
| **29216MBN9** | **Cash-Pay** | $2,270,000 |
| **29216MBP4** | **Cash-Pay** | $3,350,000 |

## Exhibit C

### Whitehaven Funds ERS Bonds Holdings

| | | | |
|---|---|---|---|
| 29,850,000 | EMPLOYEES RETIREMT-A | 5.85 | 7/1/2023 |
| 9,475,000 | EMPLOYEES RETIREMT-C | 6.15 | 7/1/2028 |
| 4,245,000 | EMP RETIRE-B-SR PENSI | 6.3 | 7/1/2036 |
| 3,000,000 | EMP RETIRE-B-SR PENSI | 6.3 | 7/1/2037 |
| 33,885,000 | EMPLOYEES RETIREMT-A | 6.15 | 7/1/2038 |
| 8,020,000 | EMP RETIRE-B-SR PENSI | 6.3 | 7/1/2038 |
| 19,080,000 | EMPLOYEES RETIREMT-A | 6.2 | 7/1/2039 |
| 10,335,000 | EMP RETIRE-B-SR PENSI | 6.3 | 7/1/2039 |
| 16,765,000 | EMPLOYEES RETIREMT-A | 6.2 | 7/1/2040 |
| 16,675,000 | EMPLOYEES RETIREMT-A | 6.2 | 7/1/2042 |
| 7,040,000 | EMPLOYEES RETIREMT-C | 6.3 | 7/1/2043 |
| 1,000,000 | EMP RETIRE-B-SR PENSI | 6.55 | 7/1/2057 |
| 14,725,000 | EMPLOYEES RETIREMT-A | 6.45 | 7/1/2057 |
| 11,750,000 | EMP RETIRE-B-SR PENSI | 6.55 | 7/1/2058 |

<u>**Exhibit D**</u>

**Form of Joinder Agreement**

## FORM OF JOINDER AGREEMENT

This JOINDER AGREEMENT (the "Joinder") to the *Amended and Restated Stipulation (A) Allowing Claims of ERS Bondholders, (B) Staying Pending Litigation, and (D) Providing for Treatment of Claims of ERS Bondholders and Dismissal of Pending Litigation Pursuant to a Plan of Adjustment* (the "Stipulation" as amended, supplemented, or otherwise), dated as of April 1, 2021 by the Parties thereto and the other holders of ERS Bonds from time to time executing a Joinder, is executed and delivered by _____ (the "Joining ERS Bondholder") as of _____ 2021. Capitalized terms used herein, but not defined herein, shall have the meanings ascribed thereto in the Stipulation.

      1.     Agreement to be Bound. The Joining ERS Bondholder hereby agrees to be bound by all of the terms and provisions of the Stipulation. The Joining ERS Bondholder shall hereafter be deemed to be an "ERS Bondholder" and a "Party" for all purposes under the Stipulation, including, without limitation, and for the avoidance of doubt, with respect to any ERS Bonds held by the Joining ERS Bondholder as of the date of this Joinder.

      2.     Representations and Warranties and Covenants. With respect to the aggregate principle amount of any ERS Bonds held by the Joining ERS Bondholder, including, without limitation, upon consummation of any pending Transfer, the Joining ERS Bondholder hereby (a) makes, as of the date hereof, the representations and warranties of the "ERS Bondholders" set forth in the Stipulation, and (b) covenants and agrees to perform all of the covenants of the "ERS Bondholders" set forth in the Stipulation.

      3.     Notice of Joinder. The Joining ERS Bondholder agrees to provide a copy of the executed Joinder via email to counsel to the Oversight Board, Brian S. Rosen, (brosen@proskauer.com) Steve Ma (sma@proskauer.com) and Joshua A. Esses (jesses@proskauer.com), Proskauer Rose LLP, 11 Times Square, New York, NY 10036, within three (3) calendar days after execution of this Joinder.

IN WITNESS WHEREOF, the Joining ERS Bondholder has caused this Joinder to be executed as of the date set forth above.

[NAME OF QUALIFIED TRANSFEREE]

By: _____

      Name:
      Title:

Holder of Aggregate Principal Amount of ERS Bonds: $_____