# **EXHIBIT E**

RETIREE COMMITTEE PSA

## PLAN SUPPORT AGREEMENT

This Plan Support Agreement, dated as of June 7, 2019 (as amended, supplemented, or otherwise modified from time to time, and including all exhibits, annexes, and schedules, this "Agreement"), is by and between (i) the Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico, as the Commonwealth's representative (the "Oversight Board"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA")[1] and (ii) the Official Committee of Retired Employees of the Commonwealth of Puerto Rico appointed in the Commonwealth's Title III Case (as defined below) (the "Retiree Committee" and together with the Debtor, each referred to as a "Party" and collectively referred to as the "Parties"). Capitalized terms used but not otherwise defined above have the meanings set forth in the Recitals or Article I below.

## RECITALS:

A. One of the most significant expenditures faced by the Commonwealth and its public corporations are pension benefits payable to retired employees. Commonwealth employees, together with employees of certain public corporations and municipalities, participate in the following three principal retirement systems: Employees Retirement System ("ERS"), Judiciary Retirement System ("JRS"), and Teachers Retirement System ("TRS," and together with ERS and JRS, the "Retirement Systems"). The Retirement Systems are severely underfunded. Pension liabilities comprise a significant portion of the Commonwealth's debt burden.

B. On June 30, 2016, PROMESA was signed into law by the President of the United States (P.L. 114-187).

C. PROMESA created the Oversight Board and provided the Oversight Board with certain powers over the finances and restructuring process with respect to the Commonwealth and its instrumentalities.

D. On May 3, 2017, the Oversight Board filed a Title III petition on behalf of the Commonwealth (the "Title III Case") with the United States District Court for the District of Puerto Rico (the "Title III Court").

E. The Oversight Board is the representative of the Commonwealth in the Title III Case pursuant to section 315(b) of PROMESA.



F. On June 15, 2017, the Retiree Committee was appointed by the United States Trustee pursuant to section 1102(a)(1) of the Bankruptcy Code (as defined below), made applicable in the Title III Case by section 301(a) of PROMESA. The constituency of the Retiree Committee is approximately 167,000 retired employees of the Commonwealth and various governmental bodies and their surviving beneficiaries, including the Commonwealth's retired teachers, police officers, firefighters, judges, municipal clerks, engineers, and other governmental workers of all categories.

---

[1]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

G. Before the date hereof, the Parties and their representatives engaged in negotiations regarding the restructuring of the outstanding retirement benefit obligations owed to Retirees (as defined below), among others, leading to the agreed term sheet annexed hereto as Exhibit "A" (the "Term Sheet").

H. On behalf of and as representative of the Commonwealth, the Oversight Board is executing and delivering this Agreement.

NOW, THEREFORE, the Parties, in consideration of the promises herein, agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.01   Recitals.  The recitals set forth above are incorporated by reference and are explicitly made a part of this Agreement.

Section 1.02   Definitions.  The following definitions shall apply to this Agreement and all schedules, exhibits and annexes hereto:

"**Agreement**" has the meaning set forth in the preamble hereof.

"**Appointments Clause Decision**" shall mean the decision in Aurelius Inv., LLC v. Puerto Rico, 915 F.3d 838, 863 (1st Cir. 2019), reh'g denied, Order of Court, No. 18-1671 (1st Cir. Mar. 7, 2019), from which, on April 23, 2019, the Oversight Board filed a petition for a writ of certiorari with the United States Supreme Court challenging the Appointments Clause Decision and has sought a stay of the Appointments Clause Decision pending the United States Supreme Court's decision.

"**Bankruptcy Code**" shall mean title 11 of the United States Code, 11 U.S.C. §§101 et seq., to the extent made applicable to the Commonwealth Title III Case pursuant to PROMESA section 301(a).

"**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, as made applicable to the Commonwealth Title III Case pursuant to PROMESA section 310.



"**Business Day**" shall mean any day other than Saturday, Sunday, and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

"**Commonwealth**" has the meaning set forth in the preamble hereof.

"**Confirmation Order**" shall mean the order of the Title III Court confirming the Plan in accordance with section 314 of PROMESA and section 1129 of the Bankruptcy Code made applicable to the Title III Case by section 301(a) of PROMESA.

"**Debtor**" has the meaning set forth in the preamble hereof.

"**Definitive Documents**" shall mean this Agreement including, without limitation, any related agreements, instruments, schedules or exhibits, including the Guidelines for Creation of Puerto Rico Plan of Adjustment Pension Board and Guidelines for Withdrawals from Puerto Rico Plan of Adjustment Pension Reserve Fund (see section 3.04 below), and all documents necessary or desirable to implement the terms and provisions set forth in this Agreement, the Plan (including any amendments, modifications and supplements thereto), the Disclosure Statement, the Disclosure Statement Order, and the Confirmation Order.

"**Disclosure Statement**" shall mean the disclosure statement filed with respect to the Plan with the Title III Court by the Oversight Board in the Title III Case in accordance with section 1125 of the Bankruptcy Code, made applicable to the Title III Case by section 301(a) of PROMESA.

"**Disclosure Statement Order**" shall mean the order of the Title III Court (a) approving the form of Disclosure Statement and the adequacy of the information contained therein in accordance with section 1125 of the Bankruptcy Code, made applicable to the Title III Case by section 301(a) of PROMESA, and (b) authorizing, among other things, the form and manner of solicitation of acceptance and rejections to the Plan.

"**Effective Date**" means the date on which each of the conditions precedent to effectiveness of the Plan has occurred or been waived by each entity required for a valid waiver of such waived condition.

"**ERS**" has the meaning set forth in the recitals hereof.

"**Final Order**" shall mean an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed or vacated, and is not stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending or, (b) if an appeal, writ of certiorari, new trial reargument, or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the applicable local bankruptcy rules.

"**JRS**" has the meaning set forth in the recitals hereof.



"**Litigation Against the Oversight Board**" shall mean, collectively, the litigation styled (a) Aurelius Investment, LLC, et al. v. The Financial Oversight and Management Board of Puerto Rico, et al., Case Nos. 18-1671; 18-8014, (b) Assured Guaranty Corp. et al. v. The Financial Oversight and Management Board of Puerto Rico, et al., Case No. 18-1746, (c) Union de Trabajadores de la Industria Electrica y Riego (UTIER) v. Puerto Rico Electric Power Authority,

et al., Case No. 18-1787, (d) <u>René Pinto Lugo, et al. v. The Government of the United States of America, et al.</u>, Adv. Pro. No. 18-041-LTS, (e) <u>Hermandad De Empleados Del Fondo Del Seguro Del Estado, Inc. (UECFSE), et al. v. Government of the United States of America, et al.</u>, Adv. Pro. No. 18-066-LTS, (f) <u>Hon. Rafael Hernandez-Montanez, et al. v. The Financial Oversight and Management Board of Puerto Rico</u>, Adv. Pro. No. 18-090-LTS, and (g) such other litigation as is currently pending or is commenced during the period from and after the date hereof up to and including the Effective Date wherein claims or causes of action consistent with or similar to those asserted or which could have been asserted in the above-referenced litigations have been asserted.

"**Oversight Board**" has the meaning set forth in the preamble hereof.

"**Parties**" has the meaning set forth in the preamble hereof.

"**Pension Reserve Fund**" has the meaning set forth in the Term Sheet.

"**Plan**" means the Commonwealth plan of adjustment to be filed with the Title III Court by the Oversight Board in the Title III Case in accordance with section 312 of PROMESA as the Oversight Board amends it from time to time, and incorporating the terms and provisions of this Agreement, as such plan is amended from time to time by the Oversight Board, and which may be a joint plan of adjustment with Commonwealth instrumentalities and public corporations.

"**Prepetition Pension Benefit**" means the accrued Total Monthly Retirement Benefit of a Retiree as of May 3, 2017.

"**PROMESA**" has the meaning set forth in the preamble hereof.

"**Puerto Rico Plan of Adjustment Pension Board**" has the meaning set forth in Section 5.03.

"**Puerto Rico Plan of Adjustment Pension Reserve Fund**" has the meaning set forth in Section 5.03.



"**Retirees**" means all retired (as of the Retirement Date) employees of the Commonwealth, including its agencies, instrumentalities, and municipalities, who, as of May 3, 2017, held a Prepetition Pension Benefit as a participant of ERS, TRS, or JRS and the beneficiaries of such retired employees.

"**Retiree Claims**" means claims held by Retirees for their Total Monthly Retirement Benefit.

"**Retiree Committee**" has the meaning set forth in the preamble hereof.

"**Retirement Date**" means the date fixed for determining whether an employee is retired and therefore a Retiree for purposes of voting on the Plan as a Retiree.

"**Term Sheet**" has the meaning set forth in the recitals hereof.

"**Title III Case**" has the meaning set forth in the recitals hereof.

4

"**Total Monthly Retirement Benefit**" has the meaning set forth in the Term Sheet.

"**TRS**" has the meaning set forth in the recitals hereof.

Section 1.03   Other Terms.  Other terms may be defined elsewhere in this Agreement and, unless otherwise indicated, shall have such meanings throughout this Agreement.  As used in this Agreement, any reference to any federal, state, local, or foreign law, including any applicable law, shall be deemed also to refer to such law as amended and all rules and regulations promulgated thereunder, unless the context requires otherwise.   The words "include," "includes," and "including" shall be deemed to be followed by "without limitation."  Pronouns in masculine, feminine or neutral genders shall be construed to include any other gender, and words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires.  The words "this Agreement," "herein," "hereof," "hereby," "hereunder," and words of similar impact refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.

Section 1.04   Interpretations.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party hereto because of the authorship of any provision of this Agreement.

Section 1.05   Definitive Documents.  All Definitive Documents shall be in form and substance reasonably satisfactory to the Oversight Board and to the Retiree Committee solely to the extent relating to the treatment of Retiree Claims, Retirees, or the Retiree Committee.

Section 1.06   Exhibits.  Each of the exhibits, annexes, signature pages and schedules annexed hereto are expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibits, annexes and schedules.

ARTICLE II
REPRESENTATIONS AND WARRANTIES



Section 2.01   Representations and Warranties of the Oversight Board.  The Oversight Board, on behalf of itself and in its capacity as representative of the Commonwealth pursuant to all applicable provisions of Title III of PROMESA, hereby represents and warrants that, as of the date hereof, and subject to the Appointments Clause Decision: (a) it has all requisite consent, approval, power and authority to enter into, execute, and deliver this Agreement on behalf of the Commonwealth, and to perform its obligations under this Agreement and to consummate the transactions contemplated hereby; (b) the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it or any law, rules or regulations applicable to it; and (c) except with respect to the Litigation Against the Oversight Board, no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

5

Section 2.02   Representations and Warranties of the Retiree Committee.  The Retiree Committee hereby represents and warrants that, as of the date hereof: (a) it is duly created in accordance with the terms and provisions of PROMESA and has all requisite consent, approval, power and authority to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any agreements applicable to it, or any law rule or regulations applicable to it; and (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

Section 2.03   Representations of the Parties to this Agreement.  Each Party represents and acknowledges that (a) in executing this Agreement, it does not rely, and has not relied, upon any representation or statement made by any other Party or any of such Party's representatives, agents or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as stated specifically in this Agreement; (b) in executing this Agreement, it has relied entirely upon its own judgment, beliefs and interest and the advice of its counsel and that it has had reasonable time to consider the terms of this Agreement before entering into it; and (c) it has reviewed this Agreement and that it fully understands and voluntarily accepts all provisions contained herein.

## ARTICLE III
## COVENANTS

Section 3.01   Covenants of the Commonwealth.  The Commonwealth hereby covenants as follows:

(a)   The Oversight Board, on behalf of the Commonwealth, shall take all actions reasonably necessary to obtain and effectuate, and shall not, nor encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and the Disclosure Statement, the approval of the Disclosure Statement, the entry of the Confirmation Order (including any mutual release and exculpation provisions in the Plan), the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, and the satisfaction of all conditions precedent to the Effective Date, including without limitation, required agreements from other entities, as determined by the Oversight Board in its sole discretion, provided, however, that the Disclosure Statement, the Plan (and its consummation, implementation and administration), and the other Definitive Documents are consistent with the terms of this Agreement. Such actions shall include, but not be limited to (A) providing drafts of the Disclosure Statement, the Plan, the Confirmation Order and other Definitive Documents to the Retiree Committee not later than such Definitive Documents are provided to other creditors or the Unsecured Creditors Committee, but in any event no later than seven (7) days prior to filing such Definitive Documents with the Title III Court, as applicable, so as to provide the Retiree Committee a reasonable opportunity to review them and provide comments to the Oversight Board prior to such filing, (B) filing with the Title III Court

the Disclosure Statement, the Plan, the Confirmation Order, and other Definitive Documents, as applicable, consistent with Section 1.05 of this Agreement, and (C) prosecuting the approval of the Disclosure Statement and confirmation of the Plan at hearings in accordance with applicable orders entered in the Title III Case; provided, however, that the Oversight Board may subsequently file amended versions of the Disclosure Statement and the Plan in form and substance consistent with this Agreement.

(b)     Within ten (10) days of the date of execution of this Agreement, the Oversight Board will provide the Retiree Committee with a briefing of its projected annual debt service obligations and the standards or benchmarks used in the development of such projected payments. Such briefing shall include, but not be limited to, identification of annual aggregate projected debt service payments, by fiscal year, through 2050 or such longer period as developed by the Oversight Board and its professionals. Relevant data such as projections of revenue, economic forecast assumptions and projected expenditures for government services shall be included in such briefings. The Oversight Board shall notify and brief the Retiree Committee of any material changes in contemplated annual debt service payments and factors bearing on the determination of such payments, as the Oversight Board's position changes. All consultation and exchange of information provided for or contemplated by this provision will be subject to a non-disclosure agreement reasonably acceptable to the Parties, including appropriate limitations on recipients of such information.  The Oversight Board agrees to consult in good faith with the Retiree Committee to address any concerns that the Retiree Committee has with such projected debt service payments and any contemplated changes in debt service payments.

(c)     Notwithstanding any other requirements of PROMESA for confirmation of a plan of adjustment, the Plan filed by the Oversight Board shall not propose any classification of Retiree Claims that is not agreed to by the Retiree Committee; provided, however, the Retiree Committee hereby agrees to classification of all Retirees receiving a reduction in their Total Monthly Retirement Benefit in accordance with this Agreement in a single class under the Plan; provided further, that all Retirees who are not receiving a reduction in their Total Monthly Retirement Benefit under this Agreement will be deemed unimpaired.

Section 3.02     Covenants of the Retiree Committee.     The Retiree Committee hereby covenants as follows:

(a)     The Retiree Committee shall support, and otherwise not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or frustrate the carrying out of the terms of this Agreement, or impede or preclude (including, but not limited to, by commencing or continuing to prosecute, any litigation, proceeding, action, or matter against the Commonwealth or the Oversight Board) the filing, confirmation, and consummation  of the Plan,  the approval of the Disclosure Statement, the entry of the Confirmation Order (including any mutual release and exculpation provisions in the Plan), and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents and the satisfaction of all conditions precedent to the Effective Date, provided, however, that the Disclosure Statement, Confirmation Order, Plan (and its consummation, implementation and administration), and any other Definitive Documents are consistent with the terms of this Agreement.

(b)     Provided that the Disclosure Statement, Plan, Confirmation Order, and the other Definitive Documents are consistent with the terms of this Agreement, the Retiree Committee shall (i) actively encourage support by its constituency for the terms of the restructuring of retirement obligations as set forth in this Agreement, (ii) post a statement of support for this Agreement and the Plan on the Retiree Committee's website, (iii) make the Retiree Committee reasonably available to its constituency to encourage support of and answer questions regarding the Term Sheet, the Plan, Disclosure Statement, Confirmation Order, and other Definitive Documents, (iv) support legislation, if any, necessary or desirable to implement the transactions contemplated by this Agreement, and (v) provide the Commonwealth a letter that can be distributed with the Disclosure Statement, Plan, and voting ballot, which letter shall urge the Retirees to accept the Plan.

(c)     Notwithstanding the foregoing subsections, the Retiree Committee's covenants herein to encourage its creditor constituency to vote in favor of the Plan is expressly subject to the provisions of Section 3.05 of this Agreement.

Section 3.03   Plan Support Commitment.  From and after the date hereof, and provided that (a) this Agreement has not been terminated and (b) none of the Disclosure Statement, the Plan and any of the proposed Definitive Documents have been filed, amended or modified in a manner adverse to the treatment of Retiree Claims as provided herein, the Retiree Committee shall (i) support (A) approval of the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code, and (B) confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, (ii) publicly support the terms of this Agreement and publicly encourage the support and timely votes for the Plan from the Retiree Committee's constituency, (iii) not change or withdraw (or cause to be changed or withdrawn) any such support or encouragement, (iv) encourage its constituency to vote for any modification of the Plan, provided, however, that such modification is consistent with the terms provided herein and the Term Sheet, and (v) not oppose any motions or other requests for relief by the Oversight Board in its personal or representative capacities unless the relief requested would be inconsistent with this Agreement or affects the rights or interests of Retirees (as defined in the Term Sheet) or the Retiree Committee.



Section 3.04   Puerto Rico Plan of Adjustment Pension Reserve Fund and Puerto Rico Plan of Adjustment Pension Board.  The Parties shall use reasonable best efforts to reach agreement on the salient terms regarding (a) the creation, responsibilities, and rights of the Puerto Rico Plan of Adjustment Pension Board, and its function in preserving and ensuring the rights of all Retirees (as defined in the Term Sheet) under the Plan in connection with the payment of retirement benefits, payment of Benefit Restoration (as defined in the Term Sheet), and funding, investment, and management of the Puerto Rico Plan of Adjustment Pension Reserve Fund, which shall be set forth in a document to be called "Guidelines for Creation of Puerto Rico Plan of Adjustment Pension Board, and (b) the guidelines by which the Puerto Rico Plan of Adjustment Pension Board shall permit withdrawals from the Puerto Rico Plan of Adjustment Pension Reserve Fund by the Commonwealth, which shall be set forth in a document to be called "Guidelines for Withdrawals from Puerto Rico Plan of Adjustment Pension Reserve Fund".  The Parties shall use reasonable best efforts to promptly reach agreement on said Guidelines, in each case no later than

seven (7) days prior to the initial filing of the Plan.  Said Guidelines shall be deemed exhibits hereto and Definitive Documents pursuant to sections 1.05 and 1.06 above.

Section 3.05   Solicitation Required in Connection with Plan.   Each of the Parties acknowledges (a) the votes of the Retirees on the Plan shall not be solicited until the Title III Court has approved the Disclosure Statement and such Disclosure Statement and related solicitation materials have been transmitted to parties entitled to receive same and (b) this Agreement does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful. NOTWITHSTANDING ANYTHING IN THIS AGREEMENT, NOTHING CONTAINED HEREIN SHALL REQUIRE ANY PARTY TO TAKE ANY ACTION PROHIBITED BY PROMESA, THE SECURITIES ACT OF 1933, AS AMENDED, THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED, ANY RULE OR REGULATIONS PROMULGATED THEREUNDER, OR BY ANY OTHER APPLICABLE LAW OR REGULATION OR BY ANY ORDER OR DIRECTION OF ANY COURT OR ANY STATE OR FEDERAL GOVERNMENTAL AUTHORITY.

ARTICLE IV
TERMINATION

Section 4.01   Termination of Agreement.   This Agreement may be terminated as follows:

(a)     By the Retiree Committee, (A) upon written notice to the Oversight Board (such notice to be given in the sole discretion of the Retiree Committee and in accordance with the notice provisions set forth in Section 5.12 hereof) that the Oversight Board filed a motion or pleading with the Title III Court inconsistent with this Agreement in any material respect, if such motion or pleading is not withdrawn within ten (10) Business Days after the Oversight Board received such written notice; provided, that the Retiree Committee may oppose such motion or pleading on the basis that it is inconsistent with this Agreement, and such opposition shall not constitute a breach or termination of this Agreement, or (B) if the class of Retiree Claims votes to reject the Plan; provided, further, that the automatic stay applicable under section 362 of the Bankruptcy Code shall not prohibit the Retiree Committee from taking any action necessary to effectuate the termination of this Agreement pursuant to and in accordance with the terms hereof.

(b)     By the Oversight Board:



i.      If the class of Retiree Claims votes to reject the Plan consistent with this Agreement and the Term Sheet;

ii.     Upon written notice to the Retiree Committee (in accordance with the notice provisions set forth in Section 5.12 hereof) that the Retiree Committee filed a motion or pleading with the Title III Court inconsistent with this Agreement in any material respect, if such motion or pleading is not withdrawn within ten (10) Business Days after receipt by the Retiree Committee of such notice; provided, however, the Oversight Board may oppose such motion or pleading on the basis that it is inconsistent with this

Agreement, and such opposition shall not constitute a breach or termination of this Agreement;

iii.    If the Title III Court or another court of competent jurisdiction enters a Final Order denying confirmation of the Plan for reasons the Oversight Board believes would prevent the Oversight Board from proposing another Plan consistent with this Agreement that could plausibly be confirmed; or

iv.    Any condition precedent to effectiveness of the Plan shall not have occurred by the latest date for satisfaction thereof under the Plan and the Oversight Board believes it would be impracticable to procure confirmation of another Plan consistent with this Agreement.

(c)    By either Party, upon written notice to the other Party (in accordance with the notice provisions set forth in Section 5.12 hereof), if (i) the other Party materially breaches any of the covenants set forth in Article III hereof or any of its other undertakings in this Agreement and such material breach shall remain unremedied for ten (10) Business Days after the receipt of such notice, or (ii) a court of competent jurisdiction issues a ruling, judgment, or order making illegal or otherwise preventing or prohibiting the consummation of any transactions or satisfaction of any condition precedent contemplated by the Plan pertaining to the treatment of pensions, which ruling, judgment or order has not been reversed or vacated within ninety (90) calendar days after such issuance and is not subject to a stay, and the Oversight Board or the Retiree Committee believes it would be impracticable to procure confirmation of another Plan consistent with this Agreement; provided that if this Agreement is terminated by either Party, it shall be terminated as to both Parties; and provided further that the automatic stay applicable under section 362 of the Bankruptcy Code shall not prohibit the Retiree Committee from taking any action necessary to effectuate the termination of this Agreement pursuant to and in accordance with the terms hereof. This Agreement shall automatically terminate upon the occurrence of the Effective Date.



Section 4.02   Effect of Termination.  In the event of the termination of this Agreement, then subject to the right of either Party to request specific performance and injunctive relief for a breach of this Agreement pursuant to Section 5.15 hereof and except to the extent specific performance and injunctive relief are granted, (a) this Agreement shall become null and void and be of no force and effect, with no liability on the part of either Party (or of any of its directors, members, officers, employees, consultants, contractors, agents, legal and financial advisors or other representatives), (b) neither Party shall have any obligations to the other Party arising out of, and shall have no further rights, benefits or privileges under, this Agreement, except for the obligations and or provisions set forth in Sections 5.04, 5.07 and 5.15 hereof and this clause (b) of Section 4.02, which provisions are intended to survive the termination of this Agreement and shall continue in full force and effect in accordance with the terms hereof; and (c) each Party shall have all the rights and remedies that it would have had, and be entitled to take all actions that it would have been entitled to take, had it not entered into this Agreement and no such rights shall be deemed waived pursuant to a claim of laches or estoppel.

ARTICLE V
MISCELLANEOUS

Section 5.01   Commonwealth Duties.

(a)   Notwithstanding anything in this Agreement, nothing in this Agreement shall require the Commonwealth or the Oversight Board to take any action, or to refrain from taking any action, to the extent inconsistent with its or their statutory, fiduciary, or other obligations under applicable law (as reasonably determined by the Oversight Board in its personal and representative capacities in good faith after consultation with legal counsel).

(b)   The Retiree Committee's sole remedies if the Commonwealth breaches this Agreement are to seek specific performance and injunctive relief pursuant to Section 5.15 hereof and/or to terminate this Agreement, regardless of whether the breach is due to the Commonwealth's fiduciary or statutory duties.

Section 5.02   Retiree Committee Duties.

(a)   Notwithstanding anything in this Agreement, nothing in this Agreement shall require the Retiree Committee in its capacity as the statutory committee for retirees in the Title III Case to take any action, or to refrain from taking any action, to the extent inconsistent with its statutory, fiduciary, or other obligations under applicable law (as reasonably determined by it in good faith after consultation with legal counsel).

(b)   The Commonwealth and its representative's sole remedies if the Retiree Committee breaches this Agreement are to seek specific performance and injunctive relief pursuant to Section 5.15 hereof and/or to terminate this Agreement, regardless of whether the breach is due to the Retiree Committee's fiduciary or statutory duties.

Section 5.03   Amendments.   This Agreement may not be modified, amended or supplemented except by a written agreement signed by each of the Parties.  Without limiting any additional modifications, amendments, and supplements:

(a)   References to the "PayGo Pension Board" in the Term Sheet shall be changed to "Puerto Rico Plan of Adjustment Pension Board."
(b)   References to "Monthly Base Pension" in the Term Sheet shall refer to the monthly amount of the pension component of the Prepetition Pension Benefit received or to be received by a Retiree.
(c)   The "Pension Reserve Fund," as defined in the Term Sheet, may also be referred to herein as the "Puerto Rico Plan of Adjustment Pension Reserve Fund."

Section 5.04   No Admission of Liability.

(a)   Pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, except in connection with a dispute concerning a breach of this Agreement or the interpretation or enforcement of the terms hereof, (y) this Agreement, any terms or provisions set forth herein, or any and all negotiations related hereto shall not be admissible in any dispute,

litigation, proceeding or controversy, and nothing contained herein shall constitute or be deemed to be an admission by any Party as to any matter, it being understood that the statements and resolutions reached herein were the result of negotiations and compromises of the respective positions of the Parties and (z) no Party shall seek to take discovery concerning this Agreement or admit this Agreement or any part of it into evidence against the other Party.

(b)        Neither the members of the Oversight Board nor the members of the Retirees Committee, nor any of their officers, employees, professionals, or other agents, shall have any liability for any claim in connection with this Agreement and any actions taken by any such members, officers, employees, professionals, or other agents to effectuate this Agreement, or for any obligation under this Agreement, and the Plan shall contain provisions exculpating and exonerating such members, officers, employees, professionals, or other agents from any such claims and obligations.  Nothing herein shall impair the protection PROMESA section 105 provides to the Oversight Board and its members and employees.

Section 5.05    Good Faith Negotiations.  The Parties recognize and acknowledge that each of the Parties hereto is represented by counsel, and such Party received independent legal advice with respect to the advisability of entering into this Agreement; the negotiations related to this Agreement were conducted regularly and at arm's length; this Agreement is made and executed by and of each Party's own free will; each Party knows all of the relevant facts and its rights in connection therewith, and that it has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any Party or employee, agent, attorney or representative of any Party to this Agreement.  The Parties further acknowledge that they entered into this Agreement because of their desire to avoid the expense and inconvenience of litigation and other disputes, and to compromise permanently and settle the claims between the Commonwealth and the Retiree Committee's constituency settled by the execution of this Agreement.  The Parties further acknowledge that, in connection with the Title III Case and the negotiation and consummation of this Agreement, including, without limitation, the Term Sheet, the Parties acted at all times (a) in good faith and (b) solely for their respective constituencies.

Section 5.06    Third-Party Beneficiary.  Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon, or to give to, any Person other than the Parties hereto, and their respective successors and assigns, any right, remedy or claim under or by reason of this Agreement or any covenant, condition or stipulation thereof; and the covenants, stipulations and agreements contained in this Agreement are and shall be for the sole and exclusive benefit of the Parties hereto and their respective successors and assigns.

Section 5.07    Governing Law; Retention of Jurisdiction; Service of Process.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York and applicable federal law, without giving effect to the principles of conflicts of laws that would require the application of the law of any other jurisdiction.  By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally binds itself that any legal action, suit or proceeding between the Parties with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, shall be brought in the Title III Court, and, by execution and delivery of this Agreement, each hereby irrevocably accepts and submits itself to the jurisdiction of the Title III Court, generally and unconditionally, with respect to any

such action, suit or proceeding, subject to a Party's rights pursuant to applicable law.  In the event any such action, suit or proceeding is commenced, (a) service of process on a Party may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service by mail of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 5.12 hereof, unless another address has been designated by such Party in a notice given to the other Parties in accordance with Section 5.12 hereof and (b) each Party waives to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising from or relating to this Agreement and the representations, covenants and other obligations set forth herein.

Section 5.08   Headings. The headings of the sections, paragraphs and subsections of this Agreement are inserted for convenience only and are not part of this Agreement and do not in any way modify the terms or provisions of this Agreement and shall not affect the interpretation hereof.

Section 5.09   Binding Agreement; Successors and Assigns.  This Agreement shall be effective and binding only upon the execution and delivery of this Agreement by the Parties listed on the signature pages hereto. This Agreement is intended to, and shall be deemed to, bind and inure to the benefit of the Parties and their respective successors and assigns.  Subject to Section 4.01 above, if any provision of this Agreement, or the application of any such provision to any person or entity or circumstance, shall be held invalid or unenforceable, in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof and this Agreement shall continue in full force and effect so long as the economic and legal substance of the transactions contemplated herein or in the Term Sheet are not affected in any manner materially adverse to any Party.  Subject to Section 4.01 above, if any such determination of invalidity, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner so that the transactions contemplated herein are consummated as originally contemplated to the greatest extent possible.

Section 5.10   Entire Agreement. This Agreement, including, without limitation, the Term Sheet, constitutes the full and entire agreement among the Parties with regard to the subject hereof and the Term Sheet, and supersedes all prior negotiations, representations, promises or warranties (oral or otherwise) made by any Party with respect to the subject matter hereof.  No Party has entered into this Agreement in reliance on any other Party's prior representation, promise or warranty (oral or otherwise) except for each Party's undertakings expressly set forth in this Agreement.

Section 5.11   Counterparts.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original copy of this Agreement and all of which, when taken together, shall constitute one and the same Agreement.   Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of copies of such counterparts is confirmed.

Section 5.12   Notices.    All demands, notices, requests, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given (i), when personally delivered by courier service or messenger, (ii) upon actual receipt (as established

by confirmation of receipt or otherwise) during normal business hours, otherwise on the first business day thereafter if transmitted electronically (by e-mail transmission), by facsimile or telecopier, with confirmation of receipt, or (iii) three (3) Business Days after being duly deposited in the mail, by certified or registered mail, postage prepaid- return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, to the following Parties:

(a)     If to the Commonwealth, to counsel to the Oversight Board:

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Attn:   Martin J. Bienenstock, Esq.
Email: mbienenstock@proskauer.com

PROSKAUER ROSE LLP
70 W Madison St., Suite 3800
Chicago, IL 60602
Attn:   Paul V. Possinger, Esq.
Email: ppossinger@proskauer.com

(b)     If to the Retiree Committee, to counsel to the Retiree Committee:

JENNER & BLOCK LLP
919 Third Ave
New York, NY 10022
Attn:   Robert D. Gordon, Esq.
Email: rgordon@jenner.com
Attn:   Richard Levin, Esq.
Email: rlevin@jenner.com

JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Attn:   Catherine L. Steege, Esq.
Email: csteege@jenner.com
Attn:   Melissa M. Root, Esq.
Email: mroot@jenner.com



BENNAZAR, GARCÍA & MILIÁN, C.S.P.
Edificio Union Plaza
Office 1701
416 Avenida Ponce de León
Hato Rey, San Juan
Puerto Rico 00918
Attn: A.J. Bennazar-Zequeira, Esq.
Email: ajb@bennazar.org

14

Attn: Héctor M. Mayol Kauffmann, Esq.
Email: hector.mayol@bennazar.org

Section 5.13   Non-Waiver of Remedies.  Except as expressly provided in this Agreement, nothing contained herein is intended, nor shall it be construed in any manner, to waive, limit, impair or restrict any right or ability of the Parties to protect and preserve each of their rights, remedies and interests, contractual or otherwise, under Title III or any other provision of PROMESA or any other law or regulation.

Section 5.14   Remedies Cumulative.  All rights, powers and remedies provided in accordance with the terms and provisions of this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power or remedy thereof by any Party shall not preclude the contemporaneous or later exercise of any other such right, power or remedy by any such Party.

Section 5.15   Specific Performance.  Each of the Parties acknowledges that money damages are an insufficient and likely unavailable and/or uncollectable remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any such breach of this Agreement, including, without limitation, an order of the Title III Court or such other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.  Notwithstanding anything contained in this Agreement to the contrary, specific performance and injunctive or other relief and the right to terminate this Agreement in accordance with the terms and provisions hereof shall be the sole and exclusive remedies for any breach of this Agreement by any Party, and no Party shall be entitled to monetary damages for any breach of any provision of this Agreement.  In any action for specific performance, the defendant shall be entitled to defend on all applicable grounds, including, without limitation, that performance would breach its fiduciary or statutory duties.

Section 5.16   Further Assurances.  Each of the Parties hereto shall execute and deliver, or cause to be executed and delivered, such instruments, and take such actions as the other Party may reasonably request to effectuate the intent and purposes of, and to carry out the terms of, this Agreement.



Section 5.17   Plan Provision.  If the Plan provides for alternative treatment of Retiree Claims in the event that the Retiree Class rejects the Plan, such provision shall not be deemed a breach of this Agreement; provided, however, for the avoidance of doubt, such alternative treatment is not specifically a part of this Agreement and is not required to be supported by the Retiree Committee; provided further, that if the Retiree Committee opposes the imposition of such alternative treatment via the cramdown provisions of section 1129(b) of the Bankruptcy Code as incorporated into PROMESA pursuant to PROMESA section 301(a), such opposition shall not constitute a breach or termination of this Agreement by the Retiree Committee; provided further, that the Commonwealth agrees that such alternative treatment, if any, shall not affect the treatment under the Term Sheet of Retirees (as defined in the Term Sheet) who are not impaired under the Plan or this Agreement.

*[Remainder of Page Left Intentionally Blank]*

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed as of the date set forth above.

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Title III representative of the Commonwealth of Puerto Rico

By: _____

Name: Natalie A. Jaresko
Title: Executive Director

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, in its personal capacity, solely as to Sections 2.01 and 2.03 above

By: _____

Name: Natalie A. Jaresko
Title: Executive Director

THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE COMMONWEALTH OF PUERTO RICO

By: _____

Name: Miguel J. Fabre-Ramírez
Title: Chairman

**EXHIBIT A**
**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

**FOMB PROPOSED TERMS FOR RESTRUCTURING OF RETIREE OBLIGATIONS**
*In re Commonwealth of Puerto Rico, Title III Case No. 17 BK 3283-LTS*
*April 27, 2019*

THIS SUMMARY OF TERMS IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A
SOLICITATION OF ACCEPTANCES OF A PLAN OF ADJUSTMENT FOR PURPOSES OF PROMESA,
SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE OR OTHERWISE. ANY SUCH OFFER OR
SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF
PROMESA AND THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS SUMMARY OF TERMS
SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE
AGREEMENT EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF
THE PARTIES HERETO.

This is a summary of proposed indicative terms for a restructuring of the outstanding retiree
obligations for the Commonwealth of Puerto Rico. This summary is for settlement purposes only
and is not a commitment by any party to enter into a transaction. The agreement of the parties shall
be subject to execution and delivery of definitive documentation.  If executed, the terms of such
definitive documentation shall control.

This summary and related discussions are confidential and entitled to the protection of Rule 408
of the Federal Rules of Evidence and any other applicable statutes or doctrines protecting the use
or disclosure of confidential information or settlement discussions. The proposed terms remain
subject to further negotiation and analysis, and nothing herein shall be an admission of fact or any
liability, a waiver of any right or claim, or be deemed binding on any party.

| Definitions | |
|---|---|
| **Retirees** | All current, former, active, inactive, and disabled employees (and their beneficiaries) who, as of May 3, 2017, held an accrued pension benefit (or were beneficiaries thereof) as participants of one of the following:<br><br>• Employees Retirement System (ERS)<br>• Teachers Retirement System (TRS)<br>• Judiciary Retirement System (JRS);<br><br>except for active employees who are participants in the System 2000 program and whose accrued pension benefits are subject to a separate agreement reached on their behalf by AFSCME with the FOMB on behalf of the Commonwealth, to the extent applicable. |
| **Appropriation and Payment of Residual Benefits** | The residual Total Monthly Retirement Benefit due to each Retiree after the terms herein are met will be appropriated and paid on a Pay As You Go ("PayGo") basis each year by the Commonwealth until all such benefits owed to each Retiree have been paid. |
| **Monthly Base Pension** | Monthly Base Pension is the monthly pension payment made to a Retiree, excluding all other benefits, such as the Christmas Bonus, Summer Bonus, Medicine Bonus, and Medical Insurance benefit. |
| **Total Monthly Retirement Benefit** | The Total Monthly Retirement Benefit that will be measured against the Threshold for the purposes of applying cuts pursuant to the Total Cut Formula is calculated by adding together the Monthly Base Pension benefit, plus the annual Christmas Bonus (if any) divided by 12 (the "Monthly Christmas |



<u>EXHIBIT A</u>
**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

| | |
|---|---|
| | Bonus"), plus the annual Summer Bonus (if any) divided by 12 (the "Monthly Summer Bonus"), plus the annual Medicine Bonus (if any) divided by 12 (the "Monthly Medicine Bonus"), but excluding any monthly Medical Insurance benefit. |
| **Benefit Reduction Commencement Date** | The date on which the reduction/cut described in the Total Cut Formula will first be applied to benefits paid by the Commonwealth. |
| **PayGo Pension Board** | The independent pension oversight entity to be created pursuant to the Commonwealth Plan of Adjustment in a form acceptable to the FOMB, Retirees, and the Government, to monitor PayGo administration for the benefit of Retirees from and after confirmation of the Plan of Adjustment. |



**EXHIBIT A**

**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

| Timing | |
|---|---|
| **Pension Benefits Date** | Accrued pension benefits earned by Retirees before May 4, 2017 are subject to a reduction/cut in the amount described in the Total Cut Formula.<br><br>Accrued pension benefits earned by Retirees on or after May 4, 2017 are not subject to the reduction in the Total Cut Formula. The data set used to calculate the reduction in pension benefits required is based on the July 1, 2015 retiree dataset provided by the ERS, TRS, and JRS which is the latest dataset currently available. If a new dataset from 2016 or 2017 becomes available, the values will be updated accordingly. |
| **Implementation** | The Benefit Reduction Commencement Date shall be the later of July 1, 2020 or the first July 1 date that follows the effective date of a Plan of Adjustment for the Commonwealth; provided, however, that if the period between said effective date and subsequent July 1 date is less than 180 days, then the Benefit Reduction Commencement Date shall be the first day of the first calendar month that is at least 180 days after said effective date. |

| Provisions of the Proposal | |
|---|---|
| **Cut Percentage** | Up to 8.5% of Total Monthly Retirement Benefit, subject to the Total Cut Formula. |
| **Cut Type** | Flat; same Cut Percentage applied to the Monthly Base Pension benefit for all participants, subject to Threshold. |
| **Threshold Over Which Cuts Apply (the "Threshold")** | $1,200 per month |
| **Indexing of Threshold and Annual Benefit Recalculation** | No indexing for future changes in Federal Poverty Level.<br><br>Additionally, no annual benefit recalculation once Cut Percentage is applied. |
| **Adjustment for Social Security** | Excluded from calculation. |
| **Medical Insurance** | Monthly Medical Insurance benefit is excluded from the calculation of the Total Monthly Retirement Benefit and is not subject to the Total Cut Formula. The Monthly Medical Insurance benefit shall vest for the benefit of Retirees and shall be subject to any plan of adjustment injunctions or other provisions protecting the benefits provided to Retirees from elimination, modification or alteration. |



**EXHIBIT A**
**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

| **Total Cut Formula** | The reduction in Total Monthly Retirement Benefit shall be calculated as follows (the "Monthly Benefit Reduction"): |
| --- | --- |
| | *Step 1:* Reduce the Monthly Christmas Bonus until the Threshold is reached or the Cut Percentage is reached or the Monthly Christmas Bonus is entirely eliminated, whichever occurs first as the Total Monthly Retirement Benefit is reduced. |
| | *Step 2:* If the Retiree's Total Monthly Retirement Benefit is still above the Threshold and the Cut Percentage has not been reached after elimination of the Monthly Christmas Bonus, reduce the Monthly Summer Bonus until the Threshold is reached or the Cut Percentage is reached or the Summer Bonus is entirely eliminated, whichever occurs first as the Total Monthly Retirement Benefit is reduced. |
| | *Step 3:* If the Retiree's Total Monthly Retirement Benefit is still above the Threshold and the Cut Percentage has not been reached after elimination of the Monthly Christmas Bonus and Monthly Summer Bonus, reduce the Monthly Medicine Bonus until the Threshold is reached or the Cut Percentage is reached or the Monthly Medicine Bonus is entirely eliminated, whichever occurs first as the Total Monthly Retirement Benefit is reduced. |
| | *Step 4:* If the Retiree's Total Monthly Retirement Benefit is still above the Threshold and the Cut Percentage has not been reached after elimination of the Monthly Christmas Bonus, Monthly Summer Bonus, and Monthly Medicine Bonus, reduce the Monthly Base Pension until the Cut Percentage is reached; provided, however, that the application of the remaining Cut Percentage to the Monthly Base Pension shall not reduce the Total Monthly Retirement Benefit below the Threshold. |
| | Under no circumstances shall the Cut Percentage apply in such a way that an individual Retiree's Total Monthly Retirement Benefit would be cut below the Threshold. If a Retiree's Total Monthly Retirement Benefit is below the Threshold, the Monthly Benefit Reduction is zero. |

**EXHIBIT A**
**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

| | |
|---|---|
| **Benefit Restoration / Upside Participation** | Retirees who are subject to a Monthly Benefit Reduction based on the Total Cut Formula above will be eligible for a partial or total restoration of their Monthly Benefit Reduction for any given fiscal year (the "Benefit Restoration").

Excess Cash Surplus is defined as actual cash surplus above and beyond the projected Fiscal Plan Surplus contained in the Certified Fiscal Plan in effect as of the effective date for the Plan of Adjustment for the Commonwealth.[2]

Benefit Restoration will occur if, in any particular post-confirmation fiscal year, there is Excess Cash Surplus, as provided below.

If the Excess Cash Surplus is lower than \$100 million, no amounts will be distributed.

If the Excess Cash Surplus is \$100 million or higher, 10 percent of the Excess Cash Surplus will be allocated to Benefit Restoration and paid out to each Retiree on or before October 1 of the following fiscal year. Allocation of Benefit Restoration to each Retiree shall be pro-rata based on the amount of total cuts experienced by each Retiree.

Benefit Restoration for any Retiree will be capped at the Monthly Benefit Reduction multiplied by 12 for such Retiree.

The final year of the Benefit Restoration program will be FY2033, with any Benefit Restoration payments relative to that fiscal year due by October 1, 2033. |
| **Pension Reserve Fund** | On the effective date of a confirmed Plan of Adjustment for the Commonwealth, the Commonwealth will establish a Pension Reserve Fund. Such Pension Reserve Fund will be held in trust for the sole benefit of the Retirees, and managed by a third-party investment adviser mutually agreeable to the FOMB, the Government, and the PayGo Pension Board, selected via RFP. The funding of the administrative cost of the investment adviser will come from the Pension Reserve Fund.

The Plan of Adjustment for the Commonwealth will provide that the Commonwealth shall make annual contributions to the Pension Reserve Fund from the Commonwealth General Fund until FY2027 in an amount no less than \$175 million per year; provided further that for any fiscal year ending post-effective date contained in the Certified Fiscal Plan in effect as of the effective date for the Plan of Adjustment for the Commonwealth in which the projected Fiscal Plan Surplus is at least \$1.750 billion, the Commonwealth shall make a contribution to the Pension Reserve Fund from the Commonwealth General Fund in an amount equal to 25% of the projected Fiscal Plan Surplus that year. The annual contribution shall be made by October 1 following the end of each fiscal year. Furthermore, the |

---

[2] For the avoidance of doubt, Fiscal Plan Surplus shall refer to the "Surplus/(Deficit) Post Measures (excl. Debt Payments)" line item. For example, with respect to the October 2018 Fiscal Plan, that refers to the "Revised FP Presentation – 40yr" tab in the fiscal plan model provided in support of the October 2018 Fiscal Plan on February 6, 2019. (20181023_Model Commonwealth Fiscal Plan_vCERTIFIED_pensions_v6.xlsx).

**EXHIBIT A**
**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

| | | |
|---|---|---|
| | | Commonwealth shall make a one-time contribution on the effective date for the Plan of Adjustment to the Pension Reserve Fund in the amount of $5 million to cover the upfront administrative fees, costs, and expenses of the PayGo Pension Board.<br><br>Withdrawals from the Pension Reserve Fund, including investment returns, will be made in amounts to be determined by the PayGo Pension Board, in consultation with the Commonwealth, to reduce the Commonwealth cash outlays from the General Fund for annual PayGo expense for Retirees in years in which there is projected to be a budget deficit.  Any withdrawals from the Pension Reserve Fund will require approval of the PayGo Pension Board and shall only be used by the Commonwealth for the payment of PayGo. |
| **Miscellaneous** | | Subject to further articulation, and without limiting the preamble, definitive documentation shall reflect the following provisions for incorporation into a confirmed Plan of Adjustment for the Commonwealth:<br>(a) To the maximum extent allowed by law, and the FOMB having consented on behalf of itself and the Commonwealth for all purposes including PROMESA section 305, all payment and other obligations owed to the Retirees under the Plan of Adjustment, including the Commonwealth's PayGo obligations and all components of the residual Total Monthly Retirement Benefit after application of the Total Cut Formula, shall remain, until satisfied, enforceable by any and each of the FOMB, the PayGo Pension Board, and any affected Retirees, and the Plan of Adjustment shall not be changed by the Commonwealth (i) without the consent of the FOMB (if still extant at the time of the proposed change), the PayGo Pension Board, and Retirees still receiving benefits pursuant to the Plan of Adjustment at the time of the proposed change, or (ii) pursuant to a new Title III case and confirmed and effective Plan of Adjustment;<br>(b) The establishment of the PayGo Pension Board in a form acceptable to the FOMB, Retirees, and Government to monitor PayGo administration upon confirmation of a Plan of Adjustment for the benefit of Retirees.  Said Board shall receive funding from the Pension Benefit Reserve for (i) administrative costs, including fees and payroll for Board members and staff; (ii) reasonable fees and expenses for an annual audit to verify the Commonwealth's financial statements, including, without limitation, the calculation of the Excess Cash Surplus for Benefit Restoration purposes and the Fiscal Plan Surplus for Pension Reserve Fund purposes; (iii) fees and expenses of prosecuting any mandamus or other litigation by the Board to enforce Retirees' rights under the Plan of Adjustment (with standing explicitly granted to the Board under the Plan) or to defend against any suit; and (iv) indemnification and related fees and expenses pursuant to appropriate indemnification and hold harmless provisions protecting the Board members. |



## Appendix
### Illustrative Calculations[1]



| | | Total Pension Value | Christmas bonus[2] | Medicine and/or Summer bonus[3] | Monthly Base Pension | Monthly Medical Insurance | Comment |
|---|---|---|---|---|---|---|---|
| A | Current | $875 | $17 | $8 | $850 | $0 | No cut since benefit below $1,200 |
| | Reduction | 0 | 0 | 0 | 0 | 0 | |
| | After Cut | $875 | $17 | $8 | $850 | $0 | |
| B | Current | $1,625 | $17 | $8 | $1,500 | $100 | Total Monthly Retirement Benefit cut by 8.5%, including full elimination of bonuses, since remaining amount after cut is still above $1,200 |
| | Reduction | 130 | 17 | 8 | 105 | 0 | |
| | After Cut | $1,495 | $0 | $0 | $1,395 | $100 | |
| C | Current | $1,235 | $17 | $8 | $1,210 | $0 | All bonuses eliminated but Total Monthly Retirement Benefit cut by less than 8.5% to remain above $1,200 |
| | Reduction | 35 | 17 | 8 | 10 | 0 | |
| | After Cut | $1,200 | $0 | $0 | $1,200 | $0 | |
| D | Current | $1,205 | $17 | $8 | $1,180 | $0 | $5 of Christmas Bonus cut to remain above $1,200 |
| | Reduction | 5 | 5 | 0 | 0 | 0 | |
| | After Cut | $1,200 | $12 | $8 | $1,180 | $0 | |
| | | Maximum 8.5% cut to Total Monthly Retirement Benefit so long as remaining amount after cut is still above $1,200 | Cut if total still above $1,200 | Cut if total still above $1,200 | Flat 8.5% cut on Total Monthly Retirement Benefit less bonuses already eliminated so long as total is still above $1,200 | Excluded from cut calculations | |

-----

[1] Examples are illustrative for all systems and intended to demonstrate the methodology described in the Summary of Terms. Bonuses that are available to individual participants depend on various factors such as the date of retirement and the retirement system for the participant's benefit.

[2] Monthly equivalent of $200 annually.

[3] Monthly equivalent of $100 annually. Summer bonus, if applicable, is cut before Medicine bonus in accordance with the Total Cut Formula

EXHIBIT A
SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

# FOMB PROPOSED TERMS FOR RESTRUCTURING OF RETIREE OBLIGATIONS

*In re Commonwealth of Puerto Rico, Title III Case No. 17 BK 3283-LTS*
*April 27, 2019*

THIS SUMMARY OF TERMS IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A PLAN OF ADJUSTMENT FOR PURPOSES OF PROMESA, SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE OR OTHERWISE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF PROMESA AND THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS SUMMARY OF TERMS SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE AGREEMENT EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES HERETO.

This is a summary of proposed indicative terms for a restructuring of the outstanding retiree obligations for the Commonwealth of Puerto Rico. This summary is for settlement purposes only and is not a commitment by any party to enter into a transaction. The agreement of the parties shall be subject to execution and delivery of definitive documentation. If executed, the terms of such definitive documentation shall control.

This summary and related discussions are confidential and entitled to the protection of Rule 408 of the Federal Rules of Evidence and any other applicable statutes or doctrines protecting the use or disclosure of confidential information or settlement discussions. The proposed terms remain subject to further negotiation and analysis, and nothing herein shall be an admission of fact or any liability, a waiver of any right or claim, or be deemed binding on any party.

| Definitions | |
|---|---|
| **Retirees** | All current, former, active, inactive, and disabled employees (and their beneficiaries) who, as of May 3, 2017, held an accrued pension benefit (or were beneficiaries thereof) as participants of one of the following: <ul><li>Employees Retirement System (ERS)</li><li>Teachers Retirement System (TRS)</li><li>Judiciary Retirement System (JRS);</li></ul> except for active employees who are participants in the System 2000 program and whose accrued pension benefits are subject to a separate agreement reached on their behalf by AFSCME with the FOMB on behalf of the Commonwealth, to the extent applicable. |
| **Appropriation and Payment of Residual Benefits** | The residual Total Monthly Retirement Benefit due to each Retiree after the terms herein are met will be appropriated and paid on a Pay As You Go ("PayGo") basis each year by the Commonwealth until all such benefits owed to each Retiree have been paid. |
| **Monthly Base Pension** | Monthly Base Pension is the monthly pension payment made to a Retiree, excluding all other benefits, such as the Christmas Bonus, Summer Bonus, Medicine Bonus, and Medical Insurance benefit. |
| **Total Monthly Retirement Benefit** | The Total Monthly Retirement Benefit that will be measured against the Threshold for the purposes of applying cuts pursuant to the Total Cut Formula is calculated by adding together the Monthly Base Pension benefit, plus the annual Christmas Bonus (if any) divided by 12 (the "Monthly Christmas |



<u>EXHIBIT A</u>
**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

| | |
|---|---|
| | Bonus"), plus the annual Summer Bonus (if any) divided by 12 (the "Monthly Summer Bonus"), plus the annual Medicine Bonus (if any) divided by 12 (the "Monthly Medicine Bonus"), but excluding any monthly Medical Insurance benefit. |
| **Benefit Reduction Commencement Date** | The date on which the reduction/cut described in the Total Cut Formula will first be applied to benefits paid by the Commonwealth. |
| **PayGo Pension Board** | The independent pension oversight entity to be created pursuant to the Commonwealth Plan of Adjustment in a form acceptable to the FOMB, Retirees, and the Government, to monitor PayGo administration for the benefit of Retirees from and after confirmation of the Plan of Adjustment. |



EXHIBIT A

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

| Timing | |
|---|---|
| **Pension Benefits Date** | Accrued pension benefits earned by Retirees before May 4, 2017 are subject to a reduction/cut in the amount described in the Total Cut Formula.<br><br>Accrued pension benefits earned by Retirees on or after May 4, 2017 are not subject to the reduction in the Total Cut Formula. The data set used to calculate the reduction in pension benefits required is based on the July 1, 2015 retiree dataset provided by the ERS, TRS, and JRS which is the latest dataset currently available. If a new dataset from 2016 or 2017 becomes available, the values will be updated accordingly. |
| **Implementation** | The Benefit Reduction Commencement Date shall be the later of July 1, 2020 or the first July 1 date that follows the effective date of a Plan of Adjustment for the Commonwealth; provided, however, that if the period between said effective date and subsequent July 1 date is less than 180 days, then the Benefit Reduction Commencement Date shall be the first day of the first calendar month that is at least 180 days after said effective date. |

| Provisions of the Proposal | |
|---|---|
| **Cut Percentage** | Up to 8.5% of Total Monthly Retirement Benefit, subject to the Total Cut Formula. |
| **Cut Type** | Flat; same Cut Percentage applied to the Monthly Base Pension benefit for all participants, subject to Threshold. |
| **Threshold Over Which Cuts Apply (the "Threshold")** | $1,200 per month |
| **Indexing of Threshold and Annual Benefit Recalculation** | No indexing for future changes in Federal Poverty Level.<br><br>Additionally, no annual benefit recalculation once Cut Percentage is applied. |
| **Adjustment for Social Security** | Excluded from calculation. |
| **Medical Insurance** | Monthly Medical Insurance benefit is excluded from the calculation of the Total Monthly Retirement Benefit and is not subject to the Total Cut Formula. The Monthly Medical Insurance benefit shall vest for the benefit of Retirees and shall be subject to any plan of adjustment injunctions or other provisions protecting the benefits provided to Retirees from elimination, modification or alteration. |



**EXHIBIT A**
**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

| Total Cut Formula | The reduction in Total Monthly Retirement Benefit shall be calculated as follows (the "Monthly Benefit Reduction"): |
|---|---|
| | *Step 1:* Reduce the Monthly Christmas Bonus until the Threshold is reached or the Cut Percentage is reached or the Monthly Christmas Bonus is entirely eliminated, whichever occurs first as the Total Monthly Retirement Benefit is reduced. |
| | *Step 2:* If the Retiree's Total Monthly Retirement Benefit is still above the Threshold and the Cut Percentage has not been reached after elimination of the Monthly Christmas Bonus, reduce the Monthly Summer Bonus until the Threshold is reached or the Cut Percentage is reached or the Summer Bonus is entirely eliminated, whichever occurs first as the Total Monthly Retirement Benefit is reduced. |
| | *Step 3:* If the Retiree's Total Monthly Retirement Benefit is still above the Threshold and the Cut Percentage has not been reached after elimination of the Monthly Christmas Bonus and Monthly Summer Bonus, reduce the Monthly Medicine Bonus until the Threshold is reached or the Cut Percentage is reached or the Monthly Medicine Bonus is entirely eliminated, whichever occurs first as the Total Monthly Retirement Benefit is reduced. |
| | *Step 4:* If the Retiree's Total Monthly Retirement Benefit is still above the Threshold and the Cut Percentage has not been reached after elimination of the Monthly Christmas Bonus, Monthly Summer Bonus, and Monthly Medicine Bonus, reduce the Monthly Base Pension until the Cut Percentage is reached; provided, however, that the application of the remaining Cut Percentage to the Monthly Base Pension shall not reduce the Total Monthly Retirement Benefit below the Threshold. |
| | Under no circumstances shall the Cut Percentage apply in such a way that an individual Retiree's Total Monthly Retirement Benefit would be cut below the Threshold. If a Retiree's Total Monthly Retirement Benefit is below the Threshold, the Monthly Benefit Reduction is zero. |

**EXHIBIT A**

SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408

| | |
|---|---|
| **Benefit Restoration / Upside Participation** | Retirees who are subject to a Monthly Benefit Reduction based on the Total Cut Formula above will be eligible for a partial or total restoration of their Monthly Benefit Reduction for any given fiscal year (the "Benefit Restoration").<br><br>Excess Cash Surplus is defined as actual cash surplus above and beyond the projected Fiscal Plan Surplus contained in the Certified Fiscal Plan in effect as of the effective date for the Plan of Adjustment for the Commonwealth.[2]<br><br>Benefit Restoration will occur if, in any particular post-confirmation fiscal year, there is Excess Cash Surplus, as provided below.<br><br>If the Excess Cash Surplus is lower than $100 million, no amounts will be distributed.<br><br>If the Excess Cash Surplus is $100 million or higher, 10 percent of the Excess Cash Surplus will be allocated to Benefit Restoration and paid out to each Retiree on or before October 1 of the following fiscal year. Allocation of Benefit Restoration to each Retiree shall be pro-rata based on the amount of total cuts experienced by each Retiree.<br><br>Benefit Restoration for any Retiree will be capped at the Monthly Benefit Reduction multiplied by 12 for such Retiree.<br><br>The final year of the Benefit Restoration program will be FY2033, with any Benefit Restoration payments relative to that fiscal year due by October 1, 2033. |
| **Pension Reserve Fund** | On the effective date of a confirmed Plan of Adjustment for the Commonwealth, the Commonwealth will establish a Pension Reserve Fund. Such Pension Reserve Fund will be held in trust for the sole benefit of the Retirees, and managed by a third-party investment adviser mutually agreeable to the FOMB, the Government, and the PayGo Pension Board, selected via RFP. The funding of the administrative cost of the investment adviser will come from the Pension Reserve Fund.<br><br>The Plan of Adjustment for the Commonwealth will provide that the Commonwealth shall make annual contributions to the Pension Reserve Fund from the Commonwealth General Fund until FY2027 in an amount no less than $175 million per year; provided further that for any fiscal year ending post-effective date contained in the Certified Fiscal Plan in effect as of the effective date for the Plan of Adjustment for the Commonwealth in which the projected Fiscal Plan Surplus is at least $1.750 billion, the Commonwealth shall make a contribution to the Pension Reserve Fund from the Commonwealth General Fund in an amount equal to 25% of the projected Fiscal Plan Surplus that year. The annual contribution shall be made by October 1 following the end of each fiscal year. Furthermore, the |



---

[2] For the avoidance of doubt, Fiscal Plan Surplus shall refer to the "Surplus/(Deficit) Post Measures (excl. Debt Payments)" line item. For example, with respect to the October 2018 Fiscal Plan, that refers to the "Revised FP Presentation – 40yr" tab in the fiscal plan model provided in support of the October 2018 Fiscal Plan on February 6, 2019. (20181023_Model Commonwealth Fiscal Plan_vCERTIFIED_pensions_v6.xlsx).

**EXHIBIT A**
**SENSITIVE – CONFIDENTIAL – SUBJECT TO FRE 408**

|  |  |  |
|---|---|---|
|  |  | Commonwealth shall make a one-time contribution on the effective date for the Plan of Adjustment to the Pension Reserve Fund in the amount of $5 million to cover the upfront administrative fees, costs, and expenses of the PayGo Pension Board. |
|  |  | Withdrawals from the Pension Reserve Fund, including investment returns, will be made in amounts to be determined by the PayGo Pension Board, in consultation with the Commonwealth, to reduce the Commonwealth cash outlays from the General Fund for annual PayGo expense for Retirees in years in which there is projected to be a budget deficit. Any withdrawals from the Pension Reserve Fund will require approval of the PayGo Pension Board and shall only be used by the Commonwealth for the payment of PayGo. |
| **Miscellaneous** |  | Subject to further articulation, and without limiting the preamble, definitive documentation shall reflect the following provisions for incorporation into a confirmed Plan of Adjustment for the Commonwealth:<br>(a) To the maximum extent allowed by law, and the FOMB having consented on behalf of itself and the Commonwealth for all purposes including PROMESA section 305, all payment and other obligations owed to the Retirees under the Plan of Adjustment, including the Commonwealth's PayGo obligations and all components of the residual Total Monthly Retirement Benefit after application of the Total Cut Formula, shall remain, until satisfied, enforceable by any and each of the FOMB, the PayGo Pension Board, and any affected Retirees, and the Plan of Adjustment shall not be changed by the Commonwealth (i) without the consent of the FOMB (if still extant at the time of the proposed change), the PayGo Pension Board, and Retirees still receiving benefits pursuant to the Plan of Adjustment at the time of the proposed change, or (ii) pursuant to a new Title III case and confirmed and effective Plan of Adjustment;<br>(b) The establishment of the PayGo Pension Board in a form acceptable to the FOMB, Retirees, and Government to monitor PayGo administration upon confirmation of a Plan of Adjustment for the benefit of Retirees. Said Board shall receive funding from the Pension Benefit Reserve for (i) administrative costs, including fees and payroll for Board members and staff; (ii) reasonable fees and expenses for an annual audit to verify the Commonwealth's financial statements, including, without limitation, the calculation of the Excess Cash Surplus for Benefit Restoration purposes and the Fiscal Plan Surplus for Pension Reserve Fund purposes; (iii) fees and expenses of prosecuting any mandamus or other litigation by the Board to enforce Retirees' rights under the Plan of Adjustment (with standing explicitly granted to the Board under the Plan) or to defend against any suit; and (iv) indemnification and related fees and expenses pursuant to appropriate indemnification and hold harmless provisions protecting the Board members. |



## Appendix
### Illustrative Calculations[1]

| | | Total Pension Value | Christmas bonus [2] | Medicine and/or Summer bonus [3] | Monthly Base Pension | Monthly Medical Insurance | Comment |
|---|---|---|---|---|---|---|---|
| A | Current | $ 875 | $ 17 | $ 8 | $ 850 | $ 0 | |
| | Reduction | 0 | 0 | 0 | 0 | 0 | No cut since benefit |
| | After Cut | $ 875 | $ 17 | $ 8 | $ 850 | $ 0 | below $1,200 |
| B | Current | $1,625 | $ 17 | $ 8 | $1,500 | $100 | |
| | Reduction | 130 | 17 | 8 | 105 | 0 | |
| | After Cut | $1,495 | $ 0 | $ 0 | $1,395 | $100 | Total Monthly Retirement Benefit cut by 8.5%, including full elimination of bonuses, since remaining amount after cut is still above $1,200 |
| C | Current | $1,235 | $ 17 | $ 8 | $1,210 | $ 0 | All bonuses eliminated but |
| | Reduction | 35 | 17 | 8 | 10 | 0 | |
| | After Cut | $1,200 | $ 0 | $ 0 | $1,200 | $ 0 | Total Monthly Retirement Benefit cut by less than 8.5% to remain above $1,200 |
| D | Current | $1,205 | $ 17 | $ 8 | $1,180 | $ 0 | |
| | Reduction | 5 | 5 | 0 | 0 | 0 | $5 of Christmas |
| | After Cut | $1,200 | $ 12 | $ 8 | $1,180 | $ 0 | Bonus cut to remain above $1,200 |
| | | Maximum 8.5% cut to Total Monthly Retirement Benefit so long as remaining amount after cut is still above $1,200 | Cut if total still above $1,200 | Cut if total still above $1,200 | Flat 8.5% cut on Total Monthly Retirement Benefit less bonuses already eliminated so long as total is still above $1,200 | Excluded from cut calculations | |

-----

[1] Examples are illustrative for all systems and intended to demonstrate the methodology described in the Summary of Terms. Bonuses that are available to individual participants depend on various factors such as the date of retirement and the retirement system for the participant's benefit.

[2] Monthly equivalent of $200 annually.

[3] Monthly equivalent of $100 annually.  Summer bonus, if applicable, is cut before Medicine bonus in accordance with the Total Cut Formula

**ADDENDUM TO THE TERMS FOR RESTRUCTURING OF RETIREE OBLIGATIONS
(AS OF APRIL 27, 2019)**

*In re Commonwealth of Puerto Rico, Title III Case No. 17 BK 3283-LTS*

*August 23, 2019*

This Addendum addresses the limited number of Retirees who would experience lower cuts to their retirement benefits under the approach originally proposed by the Financial Oversight and Management Board (the "FOMB") in its certified Fiscal Plans to date (the "FOMB Original Proposal") relative to the cuts that would be experienced under the approach in the Plan Support Agreement (the "PSA") entered into by and between the FOMB and the Official Committee of Retired Employees of Puerto Rico (the "Retiree Committee") (the "PSA Original Proposal"). [1]   This Addendum incorporates the terms of the FOMB Original Proposal into the PSA and ensures that, subject to any specific provisions of the PSA itself, including but not limited to section 5.17, each Retiree holding an impaired Retiree Claim shall receive the more favorable treatment under either the PSA Original Proposal or the FOMB Original Proposal.   The terms hereof are intended solely to supplement, and not modify, the terms of the existing PSA, including Exhibit A to the PSA.

| **Addendum to the Definitions** | |
| --- | --- |
| **PSA Originally Proposed Monthly Benefit Reduction** | Reduction amount, in US dollars, to the Total Monthly Retirement Benefit as a result of the Total Cut Formula (per Exhibit A to the PSA) |
| **FOMB Originally Proposed Monthly Benefit Reduction** | Reduction amount, in US dollars, to the FOMB OP Total Monthly Retirement Benefit as a result of the FOMB Originally Proposed Cut Formula |
| **Effective Monthly Benefit Reduction** | The lower of (i) the PSA Originally Proposed Monthly Benefit Reduction and (ii) the FOMB Originally Proposed Monthly Benefit Reduction |
| **Total Monthly Retirement Benefit as Originally Proposed by FOMB (the "FOMB OP Total Monthly Retirement Benefit")** | The sum of (i) the Total Monthly Retirement Benefit and (ii) the Monthly Medical Insurance Benefit, if Retiree receives this benefit |
| **Threshold Over Which FOMB Originally Proposed Cuts Apply (the "FOMB OP Threshold")** | $1,000 per month for those Retirees without Social Security benefits or $600 per month for those Retirees with Social Security benefits |

| **Addendum to the Provisions of the Proposal** | |
| --- | --- |
| **FOMB Originally Proposed Cut Formula** | The FOMB Originally Proposed Monthly Benefit Reduction amount shall be calculated as follows: |

---

[1]   All capitalized terms not defined herein shall have the meanings ascribed to them in the Terms for Restructuring of Retiree Obligations attached as Exhibit A to the PSA.

| | |
|---|---|
| | *Step 1:* Subtract the FOMB OP Threshold ($1,000 if the Retiree is not eligible for Social Security or $600 if the Retiree is eligible for Social Security) from the FOMB OP Total Monthly Retirement Benefit. If the resulting figure is $0.00 or less, the Retiree is not subject to any benefit reduction.<br><br>*Step 2:* If the resulting figure from Step 2 is more than $0.00, calculate the FOMB Originally Proposed Monthly Benefit Reduction by multiplying the resulting figure by 25%. This amount is the FOMB Originally Proposed Monthly Benefit Reduction. |
| **Effective Total Cut Formula** | The Effective Monthly Benefit Reduction, which is the applicable monthly benefit reduction to the Retiree, is the lower of (i) the PSA Originally Proposed Monthly Benefit Reduction and (ii) the FOMB Originally Proposed Monthly Benefit Reduction.<br><br>If the lower amount is the PSA Originally Proposed Monthly Benefit Reduction, all provisions under the Total Cut Formula (per Exhibit A to the PSA) will be applied to the Retiree.<br><br>If the lower amount is the FOMB Originally Proposed Monthly Benefit Reduction, the Retiree will experience a benefit reduction in the amount equal to the FOMB Originally Proposed Monthly Benefit Reduction. The order in which each component of the Retiree's benefits is being reduced or eliminated shall be the same as provided in the Total Cut Formula.<br><br>Under no circumstances shall the Retiree experience a higher pension benefit reduction as a result of the PSA Original Proposal compared to the FOMB Original Proposal. |