# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283 (LTS) |

**MEMORANDUM OF DECISION AND ORDER ON AMBAC ASSURANCE CORPORATION'S MOTION FOR AN ORDER AUTHORIZING DISCOVERY UNDER RULE 2004 CONCERNING COMMONWEALTH ASSETS**

May 17, 2021

DEIN, U.S.M.J.

## I. INTRODUCTION

This matter is before the Court on *Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets*

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK- 3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

(Dkt. No. 15802) (the "Motion"). The Court has also received and reviewed the Declaration of Ryan G. Christiansen in support of the Motion (Dkt. No. 15803) (the "Christiansen Decl."), objections to the Motion filed by the Financial Oversight and Management Board for Puerto Rico (Dkt. No. 15967) (the "FOMB Obj."), the Puerto Rico Fiscal Agency and Financial Advisory Authority (Dkt. No. 15965) (the "AAFAF Obj.") and GoldenTree Asset Management LP (Dkt. No. 15956) (the "GTAM Obj."), and Ambac's reply (Dkt. No. 16085) (the "Reply"). Through the Motion, Ambac seeks document discovery and deposition testimony from six Commonwealth Entities[2], namely the Puerto Rico Building Authority ("PBA"), the Puerto Rico Land Authority, the Puerto Rico Industrial Development Company ("PRIDCO"), the Puerto Rico Department of Transportation and Public Works ("DTOP"), the Puerto Rico Highways and Transportation Authority ("HTA") and the Puerto Rico Land Administration (collectively, the "At-Issue Prioritized Commonwealth Entities") concerning all assets and real property held by such entities. Motion ¶¶ 15-16. The Court has carefully considered the parties' submissions and for the reasons detailed herein, DENIES the Motion in accordance with this Order.

## II. BACKGROUND

### A. The January 2020 Order

The procedural history of the Motion is detailed in the parties' submissions and the Court will recount it only briefly herein as necessary for context. The Motion is a subsequent iteration of a previously filed Rule 2004 Motion (Dkt. No. 9022, the "Original Assets Rule 2004 Motion") that the District Court determined was "sweepingly broad and impose[d] an

---

[2] Capitalized terms not defined herein shall have the meanings given to them in the Motion.

2

objectively unreasonable burden on the Commonwealth." Dkt. No. 10332 (the "January 2020 Order") at 9. The District Court ruled that Ambac was entitled to "core information sufficient to obtain a basic understanding of major aspects of the Commonwealth's financial condition that will be relevant to a plan of adjustment" and required Ambac and the Government Parties to meet and confer "to identify parameters for disclosure that are substantially narrower than the requests set forth in the [Original Assets Rule 2004 Motion]." Id. at 9-10. The District Court further directed that Ambac's discovery requests be designed to "disclose a core body of information in a manner that will not be unduly expensive or disruptive of operations and that will facilitate efficient responses to future similar requests." Id. at 9.

After a lengthy meet and confer process, the parties reached an impasse, and Ambac filed the instant Motion.[3]

B. **The Assets Memorandum and Discovery Produced to Date**

The impetus for Ambac's Motion is a memorandum dated November 25, 2019, from the Executive Director of AAFAF to the heads of all Commonwealth Entities. See Motion, Ex. C (the "Assets Memorandum"). The Assets Memorandum was issued pursuant to the 2017 Fiscal Plan Compliance Act, which created the Real Property Evaluation and Disposal Committee ("CEDBI") and tasked it with "the authority and responsibility to dispose of disused property of the Commonwealth Entities." Reply ¶ 2 (citing Motion, Ex. I, the Fiscal Plan Compliance Act). The Fiscal Plan Compliance Act further provides that "Commonwealth Entities [must] transfer any annual surpluses to the Commonwealth Treasury, and provides that 'these funds will be

---

[33] The parties also reached an impasse relating to cash assets which will be addressed in a separate decision.

considered as resources available to the State[.]'" Id. ¶ 3 (quoting Fiscal Plan Compliance Act, Art. 4.01). The Assets Memorandum requested each of the Commonwealth Entities to provide to CEDBI a certification of "all real property assets held by such entity; whether such properties are tied to any debt; the terms of any leases on such properties; whether any such properties have a public use, are currently being used by a Commonwealth Entity, or are potentially available for sale; and whether a survey plan for any such properties is available." Motion ¶ 10 (citing Assets Memorandum).[4] It is Ambac's theory that the Commonwealth Entities own over $1 billion in real property, and the value of such properties, if sold or otherwise monetized, should be considered by the Commonwealth in developing a plan of adjustment. Id. ¶ 24.

It appears that many Commonwealth Entities complied with the request in the Assets Memorandum, and AAFAF has produced to Ambac all responses to the Assets Memorandum received by CEDBI. Id. ¶ 14; AAFAF Obj. ¶ 4. Such responses disclose the existence of over 2,600 properties from 41 different Commonwealth Entities. The responses include information regarding property descriptions, locations, coordinates, and whether each property is in use. AAFAF Obj. ¶ 4.

AAFAF represents that "[c]ertain government entities have not yet prepared their certifications to CEDBI in the ordinary course of their affairs because of their limited resources and the large number of properties involved." Id. ¶ 5. With respect to the six At-Issue Prioritized Commonwealth Entities, CEDBI did not receive a response to the Assets

---

[4] According to AAFAF, separate from CEDBI, there is a publicly available Official Inventory maintained by the Real Property Review Board pursuant to Commonwealth law, and all Commonwealth Entities are required to register their real properties in such inventory. AAFAF Obj. ¶ 3. In addition, PRIDCO maintains its own public database of its real property holdings. See GTAM Obj. ¶ 27.

4

Memorandum, or could not confirm the accuracy of the documents it did receive. For those six entities, AAFAF produced "property inventories as they existed in those entities' records," which disclosed thousands of properties held by the entities, including "information such as the property name, description or property number, as well as the address, plot number, or coordinates." Id. ¶ 5. Ambac contends that this information is outdated and does not comply with the Commonwealth Entities' legal obligation to produce certifications of their property assets to CEDBI. Accordingly, the Motion seeks discovery directly from those Entities. See Motion ¶ 15.

### C. The Discovery Requests

Ambac's document requests consist of six requests to each At-Issue Prioritized Commonwealth Entity, and four deposition topics. See Motion, Ex. B. The document requests, which are the same for each Commonwealth Entity, seek documents sufficient to identify each Asset or interests therein held by the entity, documents concerning the identity, value, sale, alienation, or encumbrance of any such Asset or interest therein, documents concerning the process through which any Asset or interest therein would be sold, alienated, or encumbered, documents concerning any proceeds or revenue, and the use or intended use of proceeds or revenue derived from the sale, alienation, or encumbrance of any Asset or interest therein, and documents concerning any assessment of the value of any Asset or interest therein. See id. at 8. The document requests define Asset as "any Property or other thing of value, tangible or intangible" and define Property as "any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present,

5

future, or contingent right, security, or other interest therein, including any leasehold interest." Id. at 1-2.

The deposition topics track the document requests for each Entity, and seek, among other things, testimony concerning the identity, sale, alienation or encumbrance of any Asset or interests therein, the organization and location of relevant documents and information, and the identification of persons with knowledge of the identity and value of the Entities' Assets. See id. at 7.

### III. DISCUSSION

**A. Rule 2004 Standard**

As the Court has previously explained:

Rule 2004 allows for the discovery of information regarding "the liabilities and financial condition of the debtor." Fed. R. Bank. P. 2004(b). The scope of Rule 2004 discovery is broad and at the discretion of the Court. In re Hammond, 140 B.R. 197, 200–01 (Bankr. S.D. Ohio 1992). However, "[i]f the debtor challenges the right of the examiner to conduct a Rule 2004 examination, then the examiner has the burden of establishing that good cause exists for the taking of the examination." Id. (internal quotations and citations omitted). "Good cause is established if one seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests." Id. at 201. "The movant must show some reasonable basis to examine the material sought to be discovered and that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice." In re Youk–See, 450 B.R. 312, 320 (Bankr. D. Mass. 2011) (internal quotations, citations, and punctuation omitted).

In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 295 F. Supp. 3d 66, 72 (D.P.R. 2018).

Notwithstanding the broad scope of Rule 2004, the District Court has recognized that, in the specific context of Ambac's Rule 2004 discovery requests concerning Commonwealth assets, discovery in "this complicated set of matters" requires "reasonable boundaries to limit the burden on the Commonwealth and to promote . . . efficiencies." January 2020 Order at 9.

6

Accordingly, Ambac's discovery requests must be limited to "core information sufficient to obtain a basic understanding of major aspects of the Commonwealth's financial condition that will be relevant to a plan of adjustment[.]" Id. at 9-10. Furthermore, the discovery requests may not impose a burden on the Commonwealth that would be "unduly expensive or disruptive of operations[.]" Id. at 9.

### B. Procedural Objections

Before reaching the merits of the dispute, certain procedural objections must be addressed. First, the Court rejects the Oversight Board's procedural objection that discovery at this time may not proceed pursuant to Rule 2004, but is instead governed by the Federal Rules of Civil Procedure because the Oversight Board has filed an Amended Plan of Adjustment. See FOMB Obj. ¶ 2. The District Court has held that "the mere pendency of a plan proposal [does not] constitute[] initiation of a contested matter precluding the use of Rule 2004." January 2020 Order at 8. Furthermore, in its January 2020 Order the District Court explained that Rule 2004 is the proper vehicle "to gain general information regarding the debtor's financial condition (including information that may assist a creditor in evaluating a pending or anticipated plan proposal, or in formulating a negotiation or litigation strategy)[.]" Id. Here, Ambac's Motion has been pending since before the Commonwealth filed its Amended Plan of Adjustment (which has now been superseded by a Third Amended Plan of Adjustment, and for which no objections have been filed) and is directed towards general information regarding the Commonwealth's financial condition. Accordingly, it is appropriate for this Court to resolve the remaining disputes arising from Ambac's Rule 2004 Motion.

7

Second, the Government Parties argue that the fact that five of the six At-Issue Prioritized Commonwealth Entities are separate legal entities from the Commonwealth renders their assets irrelevant to the financial condition of the Commonwealth. See FOMB Obj. ¶¶ 21-23, AAFAF Obj. ¶ 27-29, Reply ¶ 4.[5] The Court will not decide whether Ambac is entitled to discovery on this ground. The parties do not dispute that any budget surpluses accrued by the Commonwealth Entities may be returned to the Commonwealth Treasury, and the parties do not dispute that the Commonwealth Entities receive funding from the Commonwealth Treasury. Thus, there is at least an attenuated link between the financial condition of the Commonwealth Entities and the Commonwealth. In any event, here, "good cause" does not turn on the legal separateness arguments. Therefore, the Government Parties' objections to producing discovery on this ground will not be discussed further.[6]

### C. Good Cause

Ambac contends that good cause exists for its discovery requests because information concerning the At-Issue Prioritized Commonwealth Entities' assets "is essential to ensuring that Ambac and other creditors have the ability to meaningfully evaluate the financial condition of the Commonwealth and participate in plan of adjustment negotiations and proceedings." Motion ¶ 22. Ambac argues that "Commonwealth Entities hold highly valuable assets that, if

---

[5] It is undisputed that DTOP is not legally separate from the Commonwealth, and does not own property independently of the Commonwealth. See Reply ¶ 21, FOMB Obj. ¶¶ 5, 22, AAFAF Obj. ¶ 2. However, the burden of production on DTOP is the same as the other Commonwealth Entities, and Ambac's need for such information is equally minimal. Thus, the Court will treat DTOP identically to the other Commonwealth Entities for purposes of this Order.

[6] Given the ruling denying Ambac's request to seek discovery directly from PRIDCO, the Court need not address GoldenTree Asset Management's arguments that PRIDCO is not a Title III debtor, and that the Commonwealth has no rights under state law to PRIDCO's property. See GTAM Obj. ¶¶ 18, 24-25.

sold or otherwise monetized, would generate *well over $1.3 billion* in additional value that could be used to compensate the Commonwealth's creditors." Id. ¶ 24 (emphasis in original). Furthermore, Ambac argues that the Commonwealth Entities are statutorily required to provide CEDBI with certifications of their real properties pursuant to the Fiscal Plan Compliance Act, which also granted CEDBI "the authority and responsibility to dispose of disused properties of the Commonwealth Entities [and] direct the Commonwealth Entities to transfer any annual surpluses to the Commonwealth Treasury [which] '**funds will be considered as resources available to the State[.]**'" Reply ¶ 2 (quoting Act 26-2017, Art. 4.01) (emphasis in original). Thus, according to Ambac, "[n]o meaningful evaluation can occur without an opportunity to explore the assets of the At-Issue Prioritized Commonwealth Entities and evaluate the extent to which such assets can be (or have been) monetized, alienated, or encumbered." Motion ¶ 22. Moreover, Ambac argues that the Commonwealth has conceded that such properties are "relevant to its financial condition and resources, based on its own, ongoing process pursuant to the Fiscal Plan Compliance Act to monetize disused real properties of the Commonwealth Entities and to return resulting surpluses to the Commonwealth." Reply ¶ 3. After due consideration of Ambac's arguments, this Court concludes that the requested discovery is not necessary or appropriate.

As an initial matter, to the extent the discovery requests seek information concerning assets other than real property, the Court finds that such requests are overbroad and unduly burdensome, and Ambac has not demonstrated good cause for such information. Ambac does not attempt to justify the broad definitions of Assets and Property used in its discovery requests, and the Court thus finds that Ambac has not satisfied its burden to show good cause

9

Case:17-03283-LTS Doc#:16759 Filed:05/17/21 Entered:05/17/21 09:01:14 Desc: Main
Document Page 10 of 12

for such requests. The Motion is denied to the extent it seeks information that is not related to real property assets.

With respect to the requests for information concerning real property, the Court finds that Ambac has not shown good cause to justify taking the requested discovery from the At-Issue Prioritized Commonwealth Entities. The additional information Ambac seeks is very attenuated from its goal of evaluating the Commonwealth's financial condition and the proposed plan of adjustment. CEDBI is the entity that is tasked with the responsibility of disposing of "disused" property of the Commonwealth Entities. Ambac has cited no authority for the proposition that it has the authority to designate which properties should be considered "disused" and available to sell, much less to require the sale of specific properties. In addition, Ambac ignores the numerous steps between identifying disused properties and establishing that there would be budget surpluses and/or funds available for Commonwealth creditors. The remote benefit to Ambac of the information it is seeking is far outweighed by the burden of production.

Ambac has information about the value of real property owned by the Commonwealth and the Commonwealth Entities, both through publicly available inventories as well as information which relates to thousands of properties that CEDBI has received in response to the Assets Memorandum. Ambac is free to argue in connection with the plan confirmation hearings, as it has argued here, that "a plan of adjustment that fails to properly consider monetization of assets – particularly disused assets that Commonwealth law directs to be monetized for the purpose of increasing the resources available to the Commonwealth – fails to meet the requirements for confirmability under PROMESA." Reply ¶ 5. Ambac has sufficient

information to make this argument which is premised on the actions and inactions of the Commonwealth and Commonwealth Entities: documents relating to the status of specific properties are not necessary for Ambac to present its claim. To the extent that Ambac truly believes that appraising specific parcels of real estate and assessing the propriety and likelihood of sale is helpful in these proceedings, nothing herein will prevent its experts from making these determinations from public records as well as from the documents that have already been produced.

In contrast with the minimal value of the requested documents, the burden on the Commonwealth Entities is considerable, especially given the number of properties involved, the six-year time-frame Ambac seeks to explore, and the limited time period in which they are to respond. The burden is exacerbated, as AAFAF has explained, by the fact that the Entities have not been able to comply with the Assets Memorandum because they lack the resources to do so without disruption to their usual operations. See AAFAF Obj. ¶ 5. The information sought in Ambac's document requests is not even the same as the information requested by CEDBI in the Assets Memorandum and therefore poses an additional burden on the Commonwealth Entities apart from compliance with the Assets Memorandum (compare Ambac's discovery requests, Mot., Ex. B to Assets Memorandum, Mot., Ex. C and Mot. ¶ 10). The burden of cataloging all real property held by each At-Issue Prioritized Commonwealth Entity, responding to each document request, and preparing witnesses to testify concerning each property far outweighs Ambac's need for such information to make its arguments at plan confirmation.

Finally, Ambac's argument that "precluding [it] from obtaining this discovery would perversely incentivize the Commonwealth to hold off on monetizing disused assets until after

confirmation of a plan, leaving those assets in disuse and of no benefit to its citizens while also failing to fairly compensate the Commonwealth's creditors" is also unpersuasive. Reply ¶ 24. If Ambac believes that the Commonwealth is not appropriately addressing its real estate assets, and/or is hiding assets, those arguments can be raised in Ambac's challenge to plan confirmation.

## **ORDER**

To the extent that CEDBI and/or AAFAF receive additional responses to the Assets Memorandum, there is no burden in turning over such information to Ambac. Consequently, such information must continue to be produced.

For the reasons provided herein, the Motion is DENIED in accordance with this Order.

This Order resolves Dkt. Nos. 15802, 15859 and 15899.

SO ORDERED.

/s/ Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge