**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283 (LTS) |

**MEMORANDUM OF DECISION AND ORDER ON AMBAC ASSURANCE CORPORATION'S MOTION FOR AN ORDER DIRECTING CASH RULE 2004 DISCOVERY FROM <u>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO</u>**

May 17, 2021

DEIN, U.S.M.J.

I. <u>INTRODUCTION</u>

This matter is before the Court on *Ambac Assurance Corporation's Motion for an Order Directing Cash Rule 2004 Discovery from the Financial Oversight and Management Board for*

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK- 3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Puerto Rico* (Dkt. No. 15220) (the "Cash 2004 Motion"). By this motion, Ambac Assurance Corporation ("Ambac") seeks discovery from the Financial Oversight and Management Board for Puerto Rico (the "FOMB" or the "Board") relating to three cash restriction analyses produced by the Commonwealth of Puerto Rico in 2019 which classify cash held by the Commonwealth as either restricted (unavailable to pay creditors) or unrestricted (available for distribution to creditors as part of a plan of adjustment) (collectively the "Published Reports" or the "2019 Presentations").[2] While the Board agreed to produce "factual source materials and raw data underlying the Published Reports," Ambac's motion seeks an order compelling the FOMB to produce "back-up materials containing calculations made to create the reports . . . (the 'Calculation Back-Up')" and "process documents that reflect the Board's nonlawyer advisors' review procedure and protocol for assessing classifications, how funds were determined to be restricted or unrestricted, and documents and communications reflecting the processes, assumptions, and methodologies used to classify accounts (the 'Process Documents')." Cash 2004 Motion at ¶ 12 (internal citations omitted).

Since the Motion was filed, the FOMB, while objecting to its relevance, has agreed to produce the Calculation Back-Up materials, redacted to remove the internal notes of the Board's advisors. *Objection of the Financial Oversight and Management Board for Puerto Rico to Motion by Ambac Assurance Corporation for an Order Directing Cash Rule 2004 Discovery* (Dkt. No. 15495) ("FOMB Obj.") at ¶ 2. Although Ambac does not challenge the sufficiency of

---

[2] At issue are a report prepared for the Board by Duff & Phelps, LLC which was made publicly available on the Board's website on March 15, 2019; a presentation prepared by the Board and its advisor, Ernst & Young Puerto Rico LLC which was published on the Electronic Municipal Market Access System on October 17, 2019; and an analysis of the Commonwealth's bank accounts prepared by the Board and Ernst & Young published on October 18, 2019. See Cash 2004 Motion at ¶ 11.

[2]

the production of Calculation Back-Up materials, it nevertheless seeks an order compelling its production to "confirm Ambac's entitlement to any additional responsive documents the Board may have." *Reply of Ambac Assurance Corporation to the Financial Oversight and Management Board for Puerto Rico's Opposition to Motion for an Order Directing Cash Rule 2004 Discovery* (Dkt. No. 15567) ("Ambac Reply") at ¶ 5. In addition, according to the Board, it has produced the factual data and Calculation Back-Up materials linked to specific cash accounts so that Ambac can identify the materials on which it relied in determining which accounts are restricted and which are unrestricted. *Surreply of the Financial Oversight and Management Board for Puerto Rico in Further Opposition to Motion by Ambac Assurance Corporation for an Order Directing Cash Rule 2004 Discovery* (Dkt. No. 15783) ("FOMB Sur-reply") at ¶ 6 ("Each document – including each account statement, balance sheet, and document considered in reaching a restriction determination – is associated with the bank account number(s) to which that document relates. Ambac should therefore have no difficulty understanding how the factual source materials are organized, because the Oversight Board has already performed that task for Ambac."). However, Ambac argues that it has identified at least 10 "critical accounts of interest" for which no such documents were linked. *Opposition of Ambac Assurance Corporation to the Urgent Motion of the Financial Oversight and Management Board for Puerto Rico for Leave to File Sur-reply Regarding Ambac Assurance Corporation's Motion for an Order Directing Cash Rule 2004 Discovery* (Dkt. No. 15669) ("Ambac Opp.") at ¶ 20.[3]

---

[3] The Court allowed the Board to file a Sur-reply over Ambac's opposition, and agreed to treat Ambac's Objection as a response to the Sur-reply. See Dkt. No. 15779.

[3]

The Board continues to object to the production of the Process Documents on the grounds that the Board already has produced "all the documents relied upon by the Oversight Board's counsel to identify a particular account as being subject to any legal restrictions" so that Ambac can conduct its own analyses; the 2019 Presentations have been superseded by, among other things, a December 2020 Presentation, so that they "no longer reflect the Oversight Board's current analysis of restricted and unrestricted cash" and "[f]inally, even if the Process Documents were relevant (they are not), they are protected, in whole or in part, from disclosure by the attorney-client privilege, the work product protection, and the common interest doctrine, because they contain the Oversight Board's and AAFAF's counsel's legal advice regarding which accounts are restricted and why" as well as counsel's mental impressions and legal analysis. FOMB Obj. at ¶ 2. Ambac argues, *inter alia*, that it needs the Process Documents to understand the evolution of the Board's analysis; that it cannot assess any claim of privilege without a privilege log, and that in any event its need for the material is compelling, especially in light of the limited time it has to analyze the information. See Ambac Reply at ¶¶ 2, 7-8.

After careful review of the parties' submissions, this Court has concluded that oral argument is not needed and that the record is sufficient for the Motion to be resolved on the papers. For the reasons detailed herein,[4] Ambac's Cash 2004 Motion is ALLOWED IN PART and DENIED IN PART. Specifically:

    1. Ambac's motion to compel Calculation Back-Up materials is allowed in that the Oversight Board shall continue to produce such materials for any subsequent published cash

---

[4] The court has considered all the arguments raised by the parties, even if not expressly addressed herein.

restriction analyses. The Board may continue to redact the Calculation Back-Up materials to remove the notes of the Board's advisors;

    2. For the "10 critical accounts" identified by Ambac "for which no documents were identified in the Board's account grouping data," the Board shall identify which documents relate to the assessment of the status of those accounts; and

    3. In the event that Ambac is seeking deposition testimony, discovery shall be conducted as part of coordinated discovery done in connection with the plan confirmation hearings. Nothing herein precludes the Commonwealth from objecting to such deposition testimony.

The Cash 2004 Motion is otherwise denied.

## II. DISCUSSION

### Procedural Background

The procedural history and negotiations between the parties leading up to the filing of the Cash 2004 Motion is undisputed and is described in the Motion. While it will not be repeated herein in any detail, the following brief description is necessary to put the instant Motion in context.

Ambac previously filed a Rule 2004 Motion (the "Original Assets Rule 2004 Motion" Dkt. No. 9022) that the District Court determined was "sweepingly broad and impose[d] an objectively unreasonable burden on the Commonwealth." Dkt. No. 10332 (the "January 2020 Order") at 9. The District Court ruled that Ambac was entitled to "core information sufficient to obtain a basic understanding of major aspects of the Commonwealth's financial condition that will be relevant to a plan of adjustment" and required Ambac and the Government Parties to meet and confer "to identify parameters for disclosure that are substantially narrower than the requests set forth in the [Original Assets Rule 2004 Motion]." Id. at 9-10. The District Court further directed that Ambac's discovery requests be designed to "disclose a core body of

[5]

information in a manner that will not be unduly expensive or disruptive of operations and that will facilitate efficient responses to future similar request." Id. at 9. After a lengthy meet and confer process, the parties reached an impasse, and Ambac filed the instant Cash Rule 2004 Motion.[5]

Discovery Under Rule 2004

In opposition to the Cash Rule 2004 Motion, the Oversight Board argued that no Rule 2004 discovery should be taken, and that all future discovery should be coordinated as part of discovery relating to its proposed Plan of Adjustment. This Court recognizes that since the Motion was filed, the Commonwealth has filed an Amended Plan of Adjustment and that a date for a hearing on the disclosure statement has been set. While these events may require coordinated discovery in the future, this Court concludes that it is appropriate to decide the instant Cash Rule 2004 Motion and to allow the limited discovery provided herein. In the January 2020 Order which led, eventually, to the instant Motion, the District Court ruled that "the mere pendency of a plan proposal [does not] constitute[ ] initiation of a contested matter precluding the use of Rule 2004." January 2020 Order at 8. Since this Order was the governing law of the case at the time the instant Cash Rule 2004 Motion was filed, it is appropriate for this Court to resolve the limited issues which remain at the conclusion of the parties' extensive meet and confer process.

The FOMB also argues that neither the Calculation Back-Up Materials (which it has since produced) or the Process Documents are properly requested under Rule 2004. See FOMB Obj.

---

[5] Ambac and the Oversight Board reached an impasse on one other category of documents relating to real estate owned by certain Commonwealth Entities. Those documents will be addressed in a separate Order of this Court.

at ¶ 26. This Court disagrees with the contention that the Calculation Back-Up Materials do not fall under Rule 2004.

> As this Court has previously explained:
>
> Rule 2004 allows for the discovery of information regarding "the liabilities and financial condition of the debtor." Fed. R. Bank. P. 2004(b). The scope of Rule 2004 discovery is broad and at the discretion of the Court. In re Hammond, 140 B.R. 197, 200–01 (Bankr. S.D. Ohio 1992). However, "[i]f the debtor challenges the right of the examiner to conduct a Rule 2004 examination, then the examiner has the burden of establishing that good cause exists for the taking of the examination." Id. (internal quotations and citations omitted). "Good cause is established if one seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests." Id. at 201. "The movant must show some reasonable basis to examine the material sought to be discovered and that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice." In re Youk–See, 450 B.R. 312, 320 (Bankr. D. Mass. 2011) (internal quotations, citations, and punctuation omitted).

In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 295 F. Supp. 3d 66, 72 (D.P.R. 2018). An understanding of the status of the Commonwealth's cash accounts is relevant to understanding the financial condition of the Commonwealth. Moreover, since the designation of some of the accounts as unrestricted has changed over time, and the analyses conducted to reach such determinations have evolved and are cumulative, it is appropriate for Ambac to receive the information relating to the 2019 Presentations even though they have been superseded. Finally, it is clear that the status of the cash accounts will be relevant to the Plan of Adjustment. Thus, the request for Calculation Back-Up Materials as part of Rule 2004 discovery is entirely appropriate. See id. at 72-73 (information that will form the basis of a plan of adjustment is appropriately requested under Rule 2004). Recognizing that the Oversight Board has agreed to produce the Calculation Back-Up materials, this Court will nevertheless order their production to avoid any confusion as to whether the material should continue to be produced.

[7]

The Process Documents, however, present a different situation. Since the Oversight Board has produced all the information on which it relied in identifying accounts as restricted or unrestricted, and has identified (or will be ordered to identify) the accounts to which the documents relate, Ambac has not established "that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice." In re Youk-See, 450 B.R. at 320 (internal quotation and citation omitted). This in and of itself is sufficient reason to deny the 2004 Request for the Process Documents. In addition, the FOMB has made a persuasive argument that the documents are likely to be privileged, and that the creation of a privilege log would be unduly burdensome. Under these circumstances, the Court declines to order either the production of the Process Documents under Rule 2004, or the creation of a privilege log.[6]

### The Process Documents

By definition the Process Documents call for the mental impressions and analyses conducted by those who made the determination of which accounts are restricted and which accounts are unrestricted and, therefore, available to pay creditors. See Cash Rule 2004 Motion at ¶ 2 (process documents will "reflect how the Board's nonlawyer advisors evaluated whether certain funds are restricted or unrestricted"). The underlying facts on which those analyses were based have been or will be produced. Apparently recognizing that counsel's

---

[6] Ambac argues that the Process Documents should be treated as expert discovery for the confirmation hearing. See Ambac Reply at ¶¶ 16-17. The Oversight Board asserts that it does not intend to call any experts on the subject of whether accounts are restricted or unrestricted. See FOMB Sur-reply at ¶ 4. Nothing herein shall prevent Ambac from seeking appropriate expert discovery in connection with any expert witnesses identified by the FOMB in connection with plan confirmation discovery, or from arguing that the Board needs an expert on the subject of account classification. Similarly, nothing herein should be construed as pre-judging any such request that may be made in the future.

work in connection with the analysis of the status of accounts is likely to be privileged, Ambac has attempted to limit its request to "nonlawyer advisors."  However, the Oversight Board has made a sufficient showing that the work was in fact conducted by attorneys and that the documents are more than likely to constitute either attorney-client communications or work product that should be shielded from production.

As the Oversight Board has explained, "the Oversight Board's counsel first analyzed factual source material and made determinations as to which accounts are or are not subject to legal restrictions.  Then, on the basis of counsel's legal judgment, the Oversight Board's non-lawyer advisors prepared summary presentations."  FOMB Sur-reply at ¶ 3.  The fact that the Oversight Board's counsel (including O'Neill & Borges, LLC) played a critical role in the 2019 Presentations, along with the Board's financial advisors (Ernst & Young and PJT Partners), was disclosed in the Presentations themselves.  <u>See</u> FOMB Obj. at ¶¶ 10-12.  As detailed in the Presentations, and summarized by the Oversight Board:

> Counsel made assessments as to which accounts were subject to legal restrictions based on the information provided by accountholders in support of alleged restrictions and legal research and analysis.  Legal and financial advisors then together prepared summaries regarding total unrestricted and restricted cash.  When necessary, the Oversight Board's advisors also solicited advice and support from advisors to AAFAF, including certain of its legal advisors, O'Melveny & Myers and Pietrantoni Mendez & Alvarez LLC, as well as certain of its financial advisors, Ankura Consulting Group LLC and Conway MacKenzie, Inc.  That collaboration resulted in the publication of the analyses set forth in the October 2019 Presentations, and subsequently, the superseding analyses set forth in Exhibit J to the Amended Disclosure Statement, and most recently, the December 2020 Presentation.

FOMB Obj. at ¶ 12 (internal citations omitted).  Thus, counsel's involvement has been consistently disclosed, and clearly is not an after-thought designed to shield documents from production.

[9]

The close collaboration between the attorneys and financial advisors in connection with the analysis of the cash accounts is consistent with the way other financial analyses have been undertaken throughout these Title III proceedings, and the Court has previously ruled that this collaboration does not destroy the attorney-client privilege. See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 390 F. Supp. 3d 311, 325-26 (D.P.R. 2019) (citing Cavallaro v. United States, 284 F.3d 326, 246-47 (1st Cir. 2002); United States v. Kovel, 296 F.2d 918, 921 (2d Cir. 1961)). See also In re Fin Oversight & Mgmt. Bd. for Puerto Rico, 392 F. Supp. 3d 244, 255-57 (D.P.R. 2019). Similarly, this Court has previously held that where, as here, parties such as the Commonwealth and AAFAF share "an identical (or nearly identical) legal interest" their shared attorney-client communications remain protected. See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 390 F. Supp. 3d at 326 (citing FDIC v. Ogden Corp., 202 F.3d 454, 461 (1st Cir. 2000)). Consequently, the record establishes that the Process Documents are likely to be privileged and the privilege has not been waived by the involvement of financial advisors and AAFAF's representatives.

The Board also argues that the documents constitute attorney work product. As the First Circuit has explained:

> "While the attorney-client privilege shields communications between attorney and client (and in some cases third parties), the work product doctrine protects an attorney's written materials and 'mental impressions.' " *Comm'r of Revenue v. Comcast Corp.,* 453 Mass. 293, 901 N.E.2d 1185, 1200 (2009) (*citing Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Codified in Mass. R. Civ. P. 26(b)(3), the doctrine protects from discovery documents prepared by a party's representative "in anticipation of litigation." *Id.* at 314, 901 N.E.2d 1185. The protection can be overcome if the party seeking discovery demonstrates "substantial need of the materials" and cannot obtain the "substantial equivalent" by other means without undue hardship. *Id.* Finally, an attorney or other representative's "mental impressions, conclusions, opinions, or legal theories" are afforded greater protection than "fact" work product, *id.,* which includes "everything else that is eligible for protection as work

[10]

product...." *In Re Grand Jury Subpoena,* 220 F.R.D. 130, 145 (D.Mass.2004).
Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17–18 (1st Cir. 2012) (footnote omitted). By definition, the Process Documents are seeking "mental impressions, conclusions, opinion or legal theories" and are therefore entitled to substantial protection.

The question whether the documents were prepared "in anticipation of litigation" is a fact-specific inquiry. The Board has made out a prima facie case that the documents satisfy this criteria, and Ambac does not argue otherwise. The Board asserts that the documents were prepared in connection with "potential litigation regarding a contested plan of adjustment – and, in particular, in preparation for potential creditor challenges to the Oversight Board's legal restriction determinations." FOMB Opp. at ¶ 35. Such documents are entitled to work product protection. See In re JMP Newcor Int'l, Inc., 204 B.R. 963, 964 n.2 (Bankr. N.D. Ill. 1997) (where attorneys were hired to represent Creditors' Committee in a contested confirmation hearing, "[t]here is no doubt that the [counsel's] Notes were prepared in contemplation of litigation."). The fact that the October 2019 Presentations and the December 2020 Presentation were first made available to creditors for purposes of mediation (and were clearly so marked) further confirms that the documents were prepared in anticipation of litigation and warrant work product protection. See FOMB's Obj. at ¶¶ 13, 15.[7]

---

[7] Ambac's argument that the production of the 2019 Presentations constitutes a waiver of all privileges because the Oversight Board is selectively disclosing information is unpersuasive. See Ambac Reply at ¶¶ 23, 24. The Oversight Board has produced the underlying facts which lead to the classifications, but has not disclosed, in whole or in part, any potentially privileged communications. As the court recognized in Puerto Rico Elec. Power Auth. v. Vitol, Inc., No. 09-2242(DRD), 2013 WL 12234272 (D.P.R. June 21, 2013) on which Ambac relies, an attorney's disclosure of "facts related to a legal opinion" does not result in the waiver of the privilege over "communications informing the attorney's opinion." Id. at *6. Similarly, in Greater Newburyport Clamshell All. V. Pub. Serv. Co. of N.H., 838 F.2d 13, 22 (1st Cir. 1988) on which Ambac relies, the disclosure of some privileged communications which were required to

The Oversight Board has explained how gathering and reviewing documents from "at least six Oversight Board advisory firms and at least five AAFAF advisory firms, as well as personnel with the Oversight Board, AAFAF, and numerous agencies with the Commonwealth [who] have participated in the development of the cash analyses over a period of more than two years" would be burdensome. FOMB Obj. at ¶ 29. This Court is certainly aware that the FOMB is actively engaged in these Title III proceedings, and that all parties need to marshal and allocate their resources to address the numerous issues that constantly arise in these Title III proceedings. Moreover, this Court finds that the burden in segregating out portions of documents which may not be privileged far outweighs any potential benefit from the production of those documents where, as here, the factual data standing alone has already been produced. See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 392 F. Supp.3d at 256 (recognizing that underlying facts are not immunized from discovery because they have been disclosed to an attorney). The "load on [the FOMB] to search out, categorize, and assert privileges to all potentially relevant documents is manifestly burdensome." Fed. Energy Reg. Comm'n v. Silkman, C.A. No. 16-0205, 2017 WL 6597510, at *8 (D. Me. Dec. 26, 2017).

Finally, this Court has considered Ambac's argument that it needs a privilege log to be better able to assess the Board's claims of privilege and burden, and that it should be able to work with the Oversight Board to try and limit any burden. This court disagrees. As an initial matter, Ambac has not established good cause for the production of the Process Documents. Such documents are not necessary for Ambac's understanding of the Commonwealth's financial

---

be disclosed due to the nature of the suit did not result in the waiver of other privileged communications. Here the record does not support a finding of waiver of any privilege.

[12]

condition. Moreover, the production of the Process Documents would not expedite Ambac's analysis of the accounts, and Ambac does not have a pressing need for such documents. The facts underlying the assessment of the accounts as restricted or unrestricted have been produced, and to the extent that the documents have not been identified as relating to any of the ten critical accounts identified by Ambac, this Court orders herein that they be so labeled. Producing other documents that reflect discussions, analysis, processes and considerations over a two-year period would simply provide tangential materials, the analysis of which would digress from Ambac's stated interest in assessing whether the FOMB's designations are appropriate. In light of the limited, if any, value in a privilege log, or in the Process Documents themselves, this Court will not order the production of either.

ORDER

Ambac's Cash 2004 Motion is ALLOWED IN PART and DENIED IN PART. Specifically:

1. Ambac's motion to compel Calculation Back-Up materials is allowed in that the Oversight Board shall continue to produce such materials for any subsequent published cash restriction analyses. The Board may continue to redact the Calculation Back-Up materials to remove the notes of the Board's advisors;

2. For the "10 critical accounts" identified by Ambac "for which no documents were identified in the Board's account grouping data," the Board shall identify which documents relate to the assessment of the status of those accounts; and

3. In the event that Ambac is seeking deposition testimony, discovery shall be conducted as part of coordinated discovery done in connection with the plan confirmation hearings. Nothing herein precludes the Commonwealth from objecting to such deposition testimony.

The Cash 2004 Motion is otherwise denied.

This Order resolves Dkt. Nos. 15220, 15225, 15239, 15266, 15279 and 15366.

SO ORDERED.

/ s / Judith Gail Dein
JUDITH GAIL DEIN
UNITED STATES MAGISTRATE JUDGE