# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>                              Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>                              Defendants. | Adv. Proc. No. 20-00003-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>                              Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>                              Defendants. | Adv. Proc. No. 20-00004-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>                              Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>                              Defendants. | Adv. Proc. No. 20-00005-LTS |

|  |  |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>                              Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>                              Defendants. | Adv. Proc. No. 20-00007-LTS |

**OBJECTION OF AMBAC ASSURANCE CORPORATION AND
FINANCIAL GUARANTY INSURANCE COMPANY TO URGENT
JOINT MOTION TO STAY CERTAIN CONTESTED MATTERS AND
ADVERSARY PROCEEDINGS RELATED TO BONDS ISSUED BY THE
PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),
THE PUERTO RICO CONVENTION CENTER DISTRICT AUTHORITY ("CCDA"),
AND THE PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY ("PRIFA")**

To the Honorable United States District Court Judge Laura Taylor Swain:

Ambac Assurance Corporation ("Ambac") and Financial Guaranty Insurance Company ("FGIC") respectfully submit this objection (the "Objection") to the *Urgent Joint Motion to Stay Certain Contested Matters and Adversary Proceedings Related to Bonds Issued by the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Convention Center District Authority ("CCDA"), and the Puerto Rico Infrastructure Financing Authority ("PRIFA")* (ECF No. 16739,[2] ECF No. 1016 in Case No. 17-bk-3567-LTS, ECF No. 188 in Case No. 20-ap-00003-LTS, ECF No. 176 in Case No. 20-ap-00004-LTS, ECF No. 200 in Case No. 20-ap-00005-LTS, ECF No. 64 in Case No. 20-ap-00007-LTS, and ECF No. 53 in Case No. 18-ap-00059-LTS) (the "Urgent Motion" or "Mot.").[3]

## PRELIMINARY STATEMENT

1. Ambac and FGIC object to the Board's latest, and perhaps most blatant, attempt to pick winners and losers in these Title III Cases. The purported settlement now before the Court is not supported by a majority of the holders of claims the Board is purporting to settle. Far from it; most claimants were not even invited to participate in the discussions. Instead, the Board has tried to pick off a minority of individual claimants to receive favored treatment—even as the Board continues to ask the Court to disallow, in their entirety, *identical claims* asserted by the other claimants in the same classes, including Ambac and FGIC. The Board's proposal does not even offer to make the consideration being extended to Assured and National available to all other bondholders in the same class; the proposal is capped so that not all bondholders can opt in even if they want to. Instead, the Board will ask the Court to rule that disfavored creditors (Ambac,

---

[2] Unless otherwise specified herein, ECF numbers shall refer to filings in Case No. 17-bk-3283-LTS.

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Urgent Motion.

FGIC, their insured bondholders, and uninsured bondholders) receive *nothing*, while approving distributions (and generous fees) on account of Assured's and National's claims.

2. The absurdity of what the Board is proposing is illustrated by certain provisions of the proposed order (the "Proposed Order"), starting with the Board's request that litigation of the fiscal agent's or trustee's claims be stayed *but only with respect to Assured and National*. Pursuant to a Court order into which the Board had significant input, the applicable fiscal agents and trustees in each of the revenue bond cases filed one master proof of claim for each bond structure. Individual bondholders were repeatedly told not to file separate claims (as they would be duplicative). This Court made a decision to limit bondholders to the master proof of claim, because the obligations of the Commonwealth (and HTA) to bondholders under each structure are identical.

3. Now, at the eleventh hour, the Board has changed its tune and no longer accepts the basic premise that all of the beneficiaries under a single proof of claim share the same recovery. Instead, the Urgent Motion asks the Court to slice and dice the individual master proofs of claim filed on behalf of all HTA and CCDA bondholders, and to stay litigation *only* to the extent it relates to bondholders who happen to have obtained a policy from Assured or National, while allowing the litigation to continue with respect to other bondholders who did not obtain a policy from those particular insurers. This request illustrates the fundamental flaws in the Board's gambit to play favorites and hold settlement discussions with some claimants while excluding other identically situated claimants from the room. The Court has no authority to stay litigation with respect to only a portion of the master proofs of claim (particularly not when the fiscal agents and trustees have not requested such relief nor consented to any such request, and indeed could not do so without the authorization of a majority of the bondholders, which is lacking).

4. The Board also asks the Court to include in its order a provision purporting to determine that the Board, Assured, and National will not be prejudiced by their voluntary decision to stay this litigation. There is no basis for this request, and it too illustrates a fundamental problem. While the Board and other creditors may have discretion to enter into voluntary agreements they consider advantageous, the fact that some creditors have entered into a voluntary contract not to litigate does not change the nature of the settling creditors' legal rights to the extent that this Court ultimately is asked to resolve the merits of these issues. If the Court moves forward and issues a merits ruling with respect to *any* claims, all creditors holding identical claims—and the Board—will be bound by that ruling at the plan confirmation stage. Under well-settled bankruptcy law principles, the Court cannot approve a "settlement" or a plan that gives some claims in a particular class more favorable treatment than is given to the other claims in that class. Because the Court cannot approve a settlement fundamentally at odds with its own rulings, any rulings on the merits on Ambac's and FGIC's claims effectively will nullify the purported agreement reached by the Board, Assured, and National. This is particularly true if the Court accepts the Board's argument that the claims Ambac and FGIC have asserted can be resolved as a matter of law; there is no legal basis for differential treatment, so whatever legal determinations the Court issues must be applied to everyone.

5. The GO/PBA Plan Support Agreement[4] proves this point. There, the Board and the GO creditors insisted that *all* litigation be stayed, including objections filed by the Official Committee of Unsecured Creditors (the "UCC"). Indeed, just recently, when the Board haphazardly asked to move forward on most of the remaining claims it asserts against Ambac and

---

[4] The "GO/PBA Plan Support Agreement" means that certain *Plan Support Agreement* between the Board, certain GO bondholders, and certain PBA bondholders, dated May 31, 2019, as amended by that certain *Amended Plan Support Agreement* dated February 9, 2020, as further amended by that certain *Second Amended Plan Support Agreement* dated February 22, 2021.

- 3 -

FGIC, the GO bondholders objected to litigation moving forward concerning the "priority" issue. As GO bondholders (and eventually the Board) recognized, their settlement could fall apart if litigation of the "priority" issue moved forward, because the Court would be bound to apply any judicial determination it makes when considering the GO/PBA settlement. The settlement would need to be rejected if it did not comport with whatever legal rulings the Court had made in the interim on Article VI, Section 8.

6. For that reason, Assured, National, and the Board are not entitled to a judicial order suggesting they can avoid prejudice from future rulings the Court may make. Under the structure they have agreed to, they *cannot* avoid prejudice. The Board would need to stay litigation across-the-board, and demonstrate the reasonableness of that settlement to the Court, to achieve finality.

7. Accordingly, the Court should strike the portions of the Proposed Order that (i) purport to stay the fiscal agent and trustee claims, and (ii) suggest that Assured, National, and the Board will somehow be insulated from any rulings the Court might issue.

## ARGUMENT

**A. Assured, National, and the Board Cannot Escape the Effects of This Court's Merits Rulings, Including a Merits Ruling Rendering Their Purported Settlement *Per Se* Unreasonable.**

8. The Urgent Motion requests that the Court "preserv[e] all rights, arguments, claims and defenses of the Parties as they currently exist in [the stay]ed matters." (Proposed Order ¶ 2.) The Court should reject this requested language. Instead, the Court should determine the effect of any rulings that might be issued in the Revenue Bond Adversary Proceedings[5] at the plan confirmation stage.

---

[5] The "Revenue Bond Adversary Proceedings" are Case Nos. 20-AP-00003-LTS, 20-AP-00004-LTS, and 20-AP-00005-LTS.

9. The Board has long maintained that Ambac, FGIC, Assured, and National have *identical* claims against the Commonwealth arising from the bonds issued by HTA, CCDA, and/or PRIFA that each monoline insures.[6] If the Board chooses not to settle with a portion of the affected classes, and instead litigates the contested issues on the merits, it will be this Court's rulings on the legal merits—not the plan support agreement with respect to HTA and CCDA claims—that will determine the rights of claimants at the plan confirmation stage. For example, if this Court finds that Ambac's and FGIC's claims should be disallowed in their entirety, as the Board asks,[7] that same determination would need to be applied to National and Assured.

10. That identically situated creditors should be subjected to the same merits determinations is a foundational principle of bankruptcy:

> There are few things that would frustrate the purpose of the Bankruptcy Code and the certainty of bankruptcy proceedings more than if a court arrived at different results in a given case respecting the allowance and disallowance of claims based on identical or substantially similar facts and identical legal theories. To allow the claims of [one set of creditors] while claims based on like facts and the same legal theory are disallowed in the same chapter 11 cases . . . would fly in the face of Congressional goals and policy.

*In re Pilgrim's Pride Corp.*, 442 B.R. 522, 531 (Bankr. N.D. Tex. 2010). Ambac, FGIC, and other creditors cannot be treated worse than Assured and National without their consent. *See* 11 U.S.C. §§ 1122(a), 1123(a)(4) (claims within a class must be treated the same unless a holder consents to

---

[6] *See* Complaint Counts No. I, XXII, and XLIII of the *Complaint Objecting to Defendants' Claims and Seeking Related Relief* (Doc. No. 1), as filed in Adv. Proc. No. 20-00004-LTS of the Title III Proceedings regarding CCDA Bonds on Jan. 16, 2020; *see also* Complaint Counts No. I, XXIV, XLVII, LXX, XCIII, CXVI, and CXXXVIII of the *Complaint Objecting to Defendants' Claims and Seeking Related Relief* (Doc. No. 1), as filed in Adv. Proc. No. 20-00005-LTS of the Title III Proceedings regarding HTA Bonds on Jan. 16, 2020; s*ee also* Complaint Counts No. I, XXVII and LIII of the *Complaint Objecting to Defendants' Claims and Seeking Related Relief* (Doc. No. 1), as filed in Adv. Proc. No. 20-00003-LTS of the Title III Proceedings regarding PRIFA Bonds on Jan. 20, 2020.

[7] *See* Transcript of April 28, 2021 Omnibus Hearing at 68:6-8 ("And the issue of [Ambac's and FGIC's claims'] affordability is not its magnitude. That being the claim that we're seeking to move on at this point. It's the existence of the claim.").

lesser treatment); *In re Cardsystems Sols., Inc.*, 2007 WL 4166184 at *9-10 (Bankr. D. Ariz. 2007) (refusing to confirm plan premised on settlement re-characterizing unsecured disputed claims as secured claims); *In re CGE Shattuck*, LLC, 254 B.R. 5, 11 (Bankr. D.N.H. 2000) (refusing to approve a creditor's proposal to make distributions to certain other creditors where "the economic substance and effect of the [proposal] would be to sanction a distribution scheme that discriminates between creditors in the same class" in violation of *Granada Wines, Inc. v. New England Teamsters and Trucking Indus. Pension Fund*, 748 F.2d 42 (1st Cir. 1984), and remarking that the "Court will not allow opponents or proponents of a plan of reorganization to use creative drafting to circumvent the requirements of Chapter 11 of the Bankruptcy Code or controlling case law within this circuit").

11.     The Board knows full well that a decision on the merits of a legal issue may materially impact a pre-existing settlement. It is no mistake that the Board has tip-toed around the legal question of priorities, and on two occasions now, has been forced to abandon attempts at litigating priority arguments at the urging of the creditor signatories to the GO/PBA Plan Support Agreement. First, in connection with lift-stay proceedings, the Board was instructed by PSA signatories that it should carefully cabin its arguments on preemption so as not to unsettle the "settled" question of GO priorities.[8] More recently, the same creditors compelled the Board to

---

[8] *See Informative Motion of The Lawful Constitutional Debt Coalition Regarding Argument in Connection With June 4, 2020 Preliminary Hearing in Revenue Bond Lift Stay Motions* (ECF No. 13359) ¶ 8 ("Following [discussions between the PSA Creditors and the Board], the PSA Creditors and the Oversight Board have agreed that the PSA Creditors will not be presenting oral argument in connection with the Lift Stay Motions, and the Oversight Board will not be seeking any rulings regarding preemption of the constitutional priority for Constitutional Debt currently proposed to be compromised pursuant to the Plan of Adjustment."); Transcript of June 3, 2020 Omnibus Hearing at 20:12-14, 21:7-9 ("[A]s evident from the Proposed Plan of Adjustment on file, settlement of the GO priority claim is a very important component of the settlement . . . . [W]e've never requested, as part of [stay] relief, a ruling on the preemption of the GO priority claim, and we're not going to change that position now.").

withdraw a request to litigate the priority of revenue bondholders' claims.[9]

12. The GO/PBA creditors insisted that these issues not be litigated, because they recognized that an adverse ruling would require the Court to reject the agreement they reached with the Board at the plan confirmation stage. As the settling GO/PBA creditors recognized, the Court will be constrained by its own merits rulings. When determining whether to approve a settlement or compromise, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995) (internal citations omitted). Among the factors considered by the Court is the probability of success in the litigation being compromised—the very question posed by the Revenue Bond Adversary Proceedings. *See id*. If the Board succeeds in its disallowance litigation against Ambac and FGIC, the value of the claims being compromised in the purported settlement between the Board, Assured, and National is **zero** because "[t]he probable success of the litigation" seeking disallowance of those identical claims "is 100%[.]" *In re Ramsey*, 356 B.R. 217, 228 (Bankr. D. Kan. 2006) (refusing to approve a settlement of a purported secured claim where identical secured claim had previously been disallowed).

13. The Court thus cannot reasonably approve a settlement for Assured and National if the Board proceeds in the meantime to disallow identical claims asserted by other creditors. *See*

---

[9] *See Limited Objection of PSA Creditors to the Motion of the Commonwealth of Puerto Rico, by and through the Financial Oversight and Management Board, for Stay Relief to Prosecute Further Motions for Partial Summary Judgment* (ECF No. 16401) ¶ 5 ("Litigating [the priority issue] now, outside of the plan confirmation process, would be an inefficient use of limited judicial resources and patently inconsistent with the PSA Creditors' agreement to stand still and not press the priority of Constitutional Debt."); *c.f. Response of the Financial Oversight and Management Board, as Title III Representative of the Commonwealth of Puerto Rico, to Limited Objection of PSA Creditors to the Motion of the Commonwealth of Puerto Rico, by and through The Financial Oversight and Management Board, for Stay Relief to Prosecute Further Motions for Partial Summary Judgment* (ECF No. 16501) ¶¶ 4-6 (after "conferr[ing] with counsel for the PSA Creditors," the Board agreed to exclude priority issues from its requested relief).

*In re Ramsey*, 365 B.R. at 228.[10] Even if the Court ruled, for example, that revenue bondholders are unsecured creditors, the Board, Assured, and National's settlement can be challenged.

14. For that reason, the Board is taking a big gamble by insisting on continuing to litigate revenue bond issues without a truly global settlement of the HTA and CCDA revenue bond litigation (and no settlement in PRIFA). The Board hopes that it can hive off the claims of favored creditors and achieve a Potemkin peace: after eliminating certain (legally identical) claims, the only allowed claims in a class will be those whose support for the Plan was acquired long before confirmation. This tactic has no place in bankruptcy.

15. For these reasons, Paragraph 2 of the Proposed Order, which purports to "preserv[e] all rights, arguments, claims and defenses" of the parties to whom the stay applies "as they currently exist," should be stricken. The Board plainly contemplates that it will continue to litigate the Matters with respect to other parties—namely, Ambac and FGIC—which necessarily means all "rights, arguments, claims and defenses" *cannot* remain at status quo. Legal rulings the Court issues between now and plan confirmation will govern at that stage.

### B. The Proposed Order Should Be Modified Striking the Provision that Stays Litigation as to Fiscal Agents and Trustees.

16. Paragraph 2 of the Urgent Motion also purports to stay litigation as to the fiscal agents or trustees of the revenue bonds, "but only to the extent such parties are acting on behalf of Assured and National for HTA Bonds or CCDA Bonds insured or held by Assured or National."

---

[10] And it is no answer that the Board entered into the settlement before the litigation was concluded. It is appropriate for the Court to consider any change in circumstances between entry of a settlement and the time a court decides whether to approve it—here, at plan confirmation. *See, e.g.*, *In re RFE Indus.*, Inc., 283 F.3d 159, 165 (3d Cir. 2002) (a court should examine the settlement approval factors "in light of the present circumstances"); *In re Martin*, 91 F.3d 389, 394-95 (3d Cir. 1996) ("changed circumstances" are appropriate for a bankruptcy trustee to consider, and to inform the court, in determining whether to support a settlement); *In re ISE Corp.*, 2012 WL 1377085, at *7 (Bankr. S.D. Cal. Apr. 13, 2012) (approval of a settlement must be "examined in light of the circumstances present at the time the settlement is considered").

This provision should also be stricken, as the fiscal agents and trustees have not consented to or joined in any such request.

17. They could not do so without the support of a majority of the affected bondholders. The master proof of claim filed by the fiscal agents and trustees were filed on behalf of *all* relevant bondholders,[11] and cannot be hived into bits and pieces, with the Board purporting to control how the fiscal agents and trustees distribute the consideration they receive. The rights and duties of the fiscal agents and trustees are governed by the relevant bond documents.

## CONCLUSION

18. For the foregoing reasons, Ambac and FGIC respectfully request that the Proposed Order be modified as reflected in **Exhibit A** hereto. A redline reflecting the modifications to the Proposed Order is attached hereto as **Exhibit B**.

[*Remainder of page intentionally left blank*]

---

[11] *See supra* ¶¶ 2-3.

Dated: May 18, 2021
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
           scolon@ferraiuoli.com

**REXACH & PICÓ, CSP**

By: /s/ *María E. Picó*
    María E. Picó
    (USDC-PR No. 123214)
    802 Ave. Fernández Juncos
    San Juan, PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    Email: mpico@rexachpico.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile: (212) 530-5219
    Email: ddunne@milbank.com
           amiller@milbank.com
           gmainland@milbank.com
           jhughes2@milbank.com
           johring@milbank.com

***Attorneys for Ambac Assurance Corporation***

**BUTLER SNOW LLP**

By: /s/ *Martin A. Sosland*
    Martin A. Sosland (admitted *pro hac vice*)
    2911 Turtle Creek Blvd., Suite 1400
    Dallas, TX 75219
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    Email: martin.sosland@butlersnow.com

    James E. Bailey III (admitted *pro hac vice*)
    Adam M. Langley (admitted *pro hac vice*)
    6075 Poplar Ave., Suite 500
    Memphis, TN 38119
    Telephone: (901) 680-7200
    Facsimile: (901) 680-7201
    Email: jeb.bailey@butlersnow.com
           adam.langley@butlersnow.cow

***Attorneys for Financial Guaranty Insurance Company***

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com