# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.,*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, et. al<br><br>Defendants. | Adv. Proc. No. 20-0003-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>     Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, et. al<br><br>Defendants. | Adv. Proc. No. 20-0004-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>     Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, et. al<br><br>Defendants. | Adv. Proc. No. 20-0005-LTS |

**MEMORANDUM OF DECISION AND ORDER ON MOTIONS RELATING TO DISCOVERY IN THE REVENUE BOND ADVERSARY PROCEEDINGS**

May 19, 2021

DEIN, U.S.M.J.

## I.  INTRODUCTION

After extensive briefing and argument, the Court, by Order dated January 20, 2021,

allowed limited discovery in connection with pending motions for partial summary judgment in

the Revenue Bond Adversary Proceedings relating to PRIFA, CCDA and HTA Bonds (the "Rule

[2]

56(d) Order") (Dkt. No. 15656). [2]  Such discovery was in addition to discovery which had

previously been allowed in connection with related Lift Stay Motion practice, the parameters of

which also had been established following motions challenging the scope of permissible

discovery.  (See Dkt. Nos. 12080 & 12275).  The Rule 56(d) Order allowed "limited, targeted,

proportional, and efficient discovery from the Oversight Board and relevant third parties as to

the subjects" specifically identified in the Order, and was limited to factual issues that the Court

had determined were "material to the resolution of" the pending summary judgment motions.

Rule 56(d) Order at 5-6.

Disputes concerning the appropriate scope of discovery authorized by the Rule 56(d)

Order resulted in the Defendants[3] filing a wide-ranging Motion to Compel which was heard at a

lengthy hearing on March 17, 2021.  After considering proposed orders submitted by the

parties, the Court issued an *"Order on Defendants' Motion to Compel Documents Discovery*

*from the Government in the Revenue Bond Adversary Proceedings"* on March 26, 2021 (the

"March 2021 Order") (Dkt. No. 16236).[4]  The parties continued to meet and confer on various

---

[2]  Unless otherwise specified, docket entry references herein shall be to Case No. 17-BK-3283.  The
PRIFA, CCDA and HTA Revenue Bond Adversary Proceedings are Adv. Proc. Nos. 20-03, 20-04 and 20-05
respectively.

[3] The named "Defendants" are Ambac Assurance Corporation, Financial Guaranty Insurance Company,
Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee
Corporation, The Bank of New York Mellon, and U.S. Bank Trust National Association.  However, Assured
Guaranty Corp., Assured Guaranty Municipal Corp. and National Public Finance Guarantee Corporation
have withdrawn from the motions as they have reached an agreement in principle to settle the Revenue
Bond Proceedings.  See Dkt. No. 16709.

[4] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the March 2021
Order.  Thus, the "Government Parties" are the Financial Oversight and Management Board for Puerto
Rico ("FOMB" or the "Board") and the Puerto Rico Fiscal Agency and Financial Advisory Authority
("AAFAF").  AAFAF moves in its own capacity, as successor to the Government Development Bank for
Puerto Rico as fiscal agent, and as representative to HTA, PRIFA, CCDA, and the Tourism Company

[3]

matters, including issues relating to third-party discovery which were not ripe at the time of the

March hearing.

While progress was undoubtedly made during these meet-and-confer sessions,

counsel's ability to communicate with each other clearly fell apart. This matter is presently

before the Court on the *"Defendants' Motion to Compel Production of Withheld Documents in*

*the Revenue Bond Adversary Proceedings"* ("Defs. Motion") (Dkt. No. 16632) and the

*"Government Parties' Urgent Motion for Protective Order Regarding Subpoenas Duces Tecum to*

*Government Parties' Law Firms"* ("Gov't Motion") (Dkt. No. 16633). Stripped of the accusations

of behind-the-scenes manipulation and ill-intent, the motions raise issues regarding the

appropriate scope of discovery from the Government Entities and third parties in connection

with the Revenue Bond Adversary Proceedings, and the role of litigation counsel in connection

with the collection and production of documents by third parties. After careful consideration of

the pleadings,[5] both Motions are denied and discovery shall proceed in accordance with this

Order.

## II. DEFENDANTS' MOTION TO COMPEL

### A. Scope of Discovery

**Overview**: In the 56(d) Order the Court authorized discovery requests directed to "[a]ll

documents governing" the PRIFA and HTA bonds, "including all versions" of specified

---

(collectively the "Government Entities.").

[5] This Court determined that oral argument would not be helpful given the fulsome pleadings that had
been filed. This Court also recognizes the limited time frame in which all the parties are operating.
Therefore, this Order is limited to identifying the key positions of the parties and making the rulings
necessary for this litigation to move forward. Even if not specifically addressed herein, this Court has
considered all the legal and factual arguments raised by the parties.

agreements, and documents "governing" the flow of revenues.  The Defendants contend that

this directive "is not strictly limited to *legally operative contracts*, but includes any documents

that could 'hold sway over' or 'control' the bonds or the flow of funds."  Defs. Motion ¶ 33

(relying on Oxford English Dictionary 3d (2015) definition of "governing").  They cite as an

example a prospectus sent to investors, which while not "a legally operative contract" may

nevertheless "hold sway over" the bonds.  Id.  Consistent with their interpretation of

"governing" the Defendants have requested, *inter alia*, documents "relating to" or "concerning"

the bonds and flow of revenues, including drafts of agreements, memoranda, written

communications and other documents which could identify other agreements about which the

parties are not aware.  Id. ¶¶ 34, 35; "*Government Parties' Opposition to Defendants' Motion to*

*Compel*" ("Gov't Opp.") (Dkt. No. 16675) ¶¶ 7-8.  The Defendants further argue that during the

meet and confer process "the Government agreed not to withhold documents on the basis of

scope objections, and the Court should enforce that agreement."  Defs. Motion ¶ 25.

The Government Parties have interpreted "governing" in a more limited fashion, and

have agreed to produce all legally operative documents, official statements and agreements

related to the bonds, as well as "regulations, circular letters, policies, procedures, or other

official documents directing" the flow of revenues.  Gov't Opp. ¶¶ 6 & n. 6, 10.[6]  They have

represented that they will not take a "hyper technical" approach to identifying responsive

documents.  Id. ¶ 9.  They have, however, specifically objected to the requests to their law

firms for drafts of agreements and negotiation emails, explaining that "[w]hile most of the

---

[6] While the Government Parties objected to the word "governing" in their responses to the Requests for Production as being an undefined term, they nevertheless provided their interpretation and identified the documents they were producing.

Subpoenaed Firms did not conduct a broad document search before they sought guidance from

their clients' legal representatives on how to respond to the subpoenas, at least one firm

collected thousands of emails potentially concerning negotiation of the bonds and sent them to

the Government Entities' current counsel to review." Id. ¶¶ 4, 28.  The Government Parties

contend that they "should not be obligated to review all of these emails for privilege, prepare a

privilege log, and produce any remaining documents, especially given that they successfully

opposed this very kind of custodian and search term review in connection with Defendants'

prior motion to compel and have always objected to producing this very kind of material

because it is not relevant." Id. ¶ 28.  They also reject any claim that they had agreed to forego

scope objections to discovery requests.  Id. ¶ 2.  After careful consideration of the parties'

arguments, this Court rules as follows.

### Order

1.  Nothing herein shall limit the Government Entities' obligation to comply with the
March 2021 Order.

2.  The record does not support the Defendants' contention that the Government
Entities agreed not to withhold documents on the basis of scope objections.  Moreover, any
reliance on such an (implicit) alleged agreement would be unreasonable in light of the
Government Entities' repeated objections to what they have consistently characterized as over-
reaching discovery requests, and the extensive litigation about the scope of discovery
throughout the years of the Title III proceedings.

3.  The Government Entities did not waive their objections to the scope of the document
requests by failing to produce a privilege log.  Here the Government Entities adequately
identified the scope of the documents they were producing during an extensive meet and
confer process, thereby making it unnecessary for them to log the documents they were
claiming were beyond the scope of permissible discovery.  See Fed. R. Civ. P. 34, Adv.
Committee Notes to 2015 Amendments ("An objection that states the limits that have
controlled the search for responsive and relevant materials qualifies as a statement that the
materials have been 'withheld'" and "[t]he producing party does not need to provide a detailed
description or log of all documents withheld").

4.    The scope of the discovery authorized by the Rule 56(d) Order was limited, and the language used in the Order was intentional.  The production of documents "governing" the bonds and flow of revenues was intended to be limited to the documents which are legally operative and control the operation of the bonds and the flow of revenues.  These are the documents which define the parties' rights and obligations at issue in the summary judgment motions.  The reference to "versions" of the governing documents meant that to the extent these documents changed over time, the different operative documents must be produced.  The Government Entities' interpretation of the scope of "governing" documents is appropriate and the motion to compel a broader production, including the production of drafts and email negotiations, is denied.

5.    Some of the other categories of documents authorized by the 56(d) Order are broader.  For example, allowance of "[d]iscovery identifying the nature and location of the Infrastructure Fund and restrictions placed upon moneys therein" may not be limited to documents "governing" the Infrastructure Fund, since the location of the Infrastructure Fund is in dispute.  Since no specific issue has been presented to the Court about the scope of other requests, nothing further needs to be said.  The parties should note that the description of discovery authorized for different types of information varies throughout the Order.  The language used in the 56(d) Order was intentional and the parties are expected to adhere to the Order.

6.    The procedure for the production of third-party documents is discussed infra in connection with the Government Parties' Motion.  This Court's scope rulings on any motions to compel with respect to the Government's documents will govern the appropriate scope of the documents that must be produced in response to subpoenas to the law firms.[7]  While the burden of production may be different for the law firms than the Government Entities (although if the Government must review all emails in a firm's files the burden on the Government in connection with privilege reviews may still be sizable), this Court finds that the boundaries on discovery set in connection with prior motions to compel continue to be appropriate and proportional to the issues in this litigation.  See Shevlin v. Phoenix Life Ins. Co., Civil Action No. 09-6323 (MLC), 2012 WL 13034075, at *2-3 (D.N.J. May 24, 2012) (since "the Court did not limit the scope of discovery solely based on the cost and burden of the search" limits previously established shall apply to future discovery, and plaintiff could not obtain discovery from third parties that it had been precluded from obtaining from the defendant).

7.    The application of limits on the law firms' production does not, however, mean that the firms files are just intended to "fill in" documents that could not be found in the Government Entities' files.  See Gov't Opp. ¶ 17.  The law firms are to conduct their own independent review of their files to provide documents responsive to the subpoenas, within the parameters previously established by the Court, whether or not this results in the production of duplicative materials.

---

[7] Since there is no dispute about the scope of the production from the rum producers and accountants the limitations described herein are limited to the law firm productions.

8.  It appears that at least some of the law firms have already itemized the categories of documents they have declined to produce in oral and written communications with Defendants' counsel.  See, e.g., Defs. Motion at Ex. L, M, N.  The Defendants may request the other law firms to provide responses and objections to the subpoenas as well.  The Defendants' request that the law firms produce all documents that they have collected regardless of whether the documents are responsive and within the scope of appropriate discovery is denied.

## B.  Communications with Rum Producers and Accounting Firms

**Overview.**  The Defendants have requested that this Court "order the Government to disclose (i) whether its communications with any rum producers or accounting firms that received subpoenas included discussions regarding potential objections; (ii) who initiated these communications; and (iii) which counsel for the third parties were present."  Defs. Motion ¶ 39.  It is undisputed that counsel for both the Defendants and the Government Parties in these Adversary Proceedings were in communication with the recipients of the subpoenas sent by the Defendants.  The Defendants' counsel spoke with these third parties with respect to their response to the subpoenas.  Defendants are seeking to obtain the information about the Government's communications to determine whether the Government contacted third parties for the purpose of influencing their responses.  Id. ¶ 41.

This issue was the subject of much discussion and written communications between the parties prior to the filing of Defendants' Motion.  See, e.g., Defs. Motion at Ex. O, P.  As the Government Parties' counsel represented in pleadings filed in connection with the Motion, counsel "did not direct either the rum producers or the auditors to make any particular objections or to withhold any documents on responsiveness grounds. . . . Counsel for Ambac was told the same by counsel for the rum producers."  Gov't Opp. ¶ 5.  As further represented in their pleadings, counsel for the Government Parties "asked the audit firms to collect and

[8]

produce materials responsive to this Court's order on Defendants' motion to compel to *assist*

the Government Parties in complying with their obligations, and did not direct them to raise

any specific objections or to withhold documents on responsiveness grounds.  The Government

Parties' lawyers also did not direct any rum producer to raise any specific objections or suggest

documents it should either produce or withhold, as counsel for one of the rum producers

separately confirmed."  Id. ¶ 31.

The Government Parties provided the Court with a copy of a letter from Bacardi's

counsel to Ambac's counsel "confirm[ing] that we have reached agreement on the scope of

further document production" from Bacardi in response to Ambac's subpoena.  Id. Ex. 1.

Therein Bacardi's counsel wrote:

> I also wish to confirm that, as we have discussed, neither the FOMB, the
> Commonwealth or their respective counsel has ever instructed, directed or even
> suggested what objections Bacardi should make in responding to Ambac's Federal Rule
> 45 subpoenas or what documents to produce.  Indeed, counsel to the Commonwealth
> and the FOMB first received copies of Bacardi's earlier production at the same time, and
> via the same e-mail in which, those documents were conveyed to counsel to the
> Defendants.

Id.  Ambac dismisses this representation as coming from a hostile witness, and argues that

while the Government may not have "directed" any specific action, neither the Government

nor Bacardi have answered the question "whether the Government communicated with rum

producers *or* accounting firms concerning potential objections, who initiated those

communications, and which counsel from third parties participated."  *"Defendants' Reply in*

*Support of Defendants' Motion to Compel Production of Withheld Documents in the Revenue*

*Bond Adversary Proceedings"* ("Defs. Reply") (Dkt. No. 16711) ¶ 27.

**Order.**  The motion to compel is denied.  Despite the fact that the Defendants' counsel

[9]

have themselves been in contact with the rum producers and auditors, they have not put forth any facts to indicate that the Government lawyers have influenced the responses to the subpoenas or that any documents have been withheld. Nor have Defendants' counsel put forth any evidence that objections have been improperly interposed. Similarly, Defendants' counsel simply ignore Bacardi's representation that counsel for the FOMB and the Commonwealth did not even "suggest" what documents should be produced or what the appropriate response to the request should be. As it has been held:

> There are circumstances where … collateral discovery – also known as discovery on discovery—is warranted. However, requests for such meta-discovery should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad infinitum. A party must provide an adequate factual basis for its belief that discovery on discovery is warranted.

Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A., No. 15-cv-0293 (LTS)(JCF) 2016 WL 3906712, at *7 (S.D.N.Y. July 14, 2016) (internal quotations and punctuation omitted). Here there has been no showing that additional discovery, especially that of trial counsel, is warranted or helpful to resolving the issues in dispute.

### III. Government Parties' Motion for a Protective Order

The Defendants served fourteen subpoenas on seven law firms which have served as bond counsel to one or more of the Government Entities. The Government Parties' Motion for a Protective Order seeks an order requiring the Defendants "to cease any and all efforts to obtain production from the Subpoenaed Firms any documents the Government Parties do not themselves agree to produce" and to require that all efforts to obtain "documents from client files maintained by the Subpoenaed Firms" be directed to counsel representing the FOMB and AAFAF in the Title III proceedings. Gov't Motion at Ex. A.

The Subpoenas requested, *inter alia*, "[a]ll Documents and Communications governing or referring to the terms" of the bonds, "[a]ll Documents and Communications constituting, governing or referring to Resolutions, and any amendments or supplements related thereto" issued in connection with the bonds, and "[a]ll other documents and Communications governing or referring to" the bonds or bond documents.  Gov't Motion at Ex. B at Requests 1-3.  As detailed above, these requests were broader in scope than what the Government Parties had agreed to produce in response to direct requests from the Defendants, and were broader than the discovery the Court had authorized to be obtained from the Government Parties in the March 2021 Order.  When the Subpoenaed Firms contacted the Government's Title III counsel, "counsel communicated their clients' legal position to these firms, and consistent with that position, directed the firms to interpose the same objections to the Subpoenas for client files that the Government Parties had interposed to Defendants directly in response to requests for production of the same documents in the Government Entities' files.  As a result, the law firms agreed to provide Defendants with exactly the same types of documents from their client files that the Government Parties had themselves agreed to provide."  Gov't Motion ¶ 8.  For their part, after being informed of the limitations in the productions by the firms, the Defendants communicated with the subpoenaed firms and explained their position that they were entitled to obtain a broader scope of documents, including emails reflecting negotiations and drafts of agreements.  See Gov't Motion at Ex. R-T.  The parties accuse each other of communicating with the subpoenaed law firms without timely or proper notice to the other.  The Court declines to enter the fray other than to state that it was not inappropriate for the Government Parties to consult with their law firms about the scope of discovery in response to the

[11]

subpoenas.  See 473 ABA Formal Opinion (Feb. 17. 2016); Gov't Motion at 1, n. 5.  Instead of

parsing past actions, this Order will control the production of documents from the law firms

going forward.

**Order.**

1.  For the reasons detailed above, this Court's scope rulings on any motions to compel
with respect to the Government's documents will govern the appropriate scope of the
documents that must be produced in response to subpoenas to the law firms.

2.  To the extent that they have not received written responses and objections to the
subpoenas from a law firm, the Defendants may request (in writing) that the firm provide a
written statement describing the categories of documents, if any, it withheld on the basis of
scope objections.  If the Defendants are not satisfied with the production, they may file a
motion to compel.

3.  The Defendants shall copy the Government Parties on any communications with the
subpoenaed law firms regarding the production of discovery in response to the subpoenas, and
shall promptly provide the Government Parties with copies of any communications they receive
from the subpoenaed law firms.

4.  The Government Parties shall provide the Defendants with copies of any written
communications to and from the law firms concerning the subpoenas and the appropriate
scope of the production in response to the subpoenas.  Providing copies of such
communications shall not constitute a waiver of the attorney/client or work product privilege.

5.  The parties shall try to the fullest extent possible to avoid communicating orally with
the law firms about their responses to the subpoenas outside the presence of the other party.
If such communications take place, the party that had the communication shall promptly notify
the other party of the substance of the communication.  The parties shall attempt to give the
other party at least 24 hour notice of any meeting or planned oral communication with the
subpoenaed law firm so that the other party can participate.

6.  The law firms shall provide the Government Parties' with access to potentially
privileged documents for their review.  All other documents shall be simultaneously produced
to the Defendants and the Government Parties.

### IV.  CONCLUSION

The *"Defendants' Motion to Compel Production of Withheld Documents in the Revenue*

*Bond Adversary Proceedings"* and the *"Government Parties' Urgent Motion for Protective Order*

[12]

*Regarding Subpoenas Duces Tecum to Government Parties' Law Firms"* are DENIED, and

discovery shall proceed in accordance with this Order.

This Order resolves Dkt. Nos. 16632 and 16633 in 17-BK-3283; Dkt. Nos. 173 and 174 in 20-AP-03; Dkt. No. 164 in 20-AP-04; and Dkt. Nos. 185 and 186 in 20-AP-05.

SO ORDERED.


    / s / Judith Gail Dein
JUDITH GAIL DEIN
UNITED STATES MAGISTRATE JUDGE