18ᵃ ASAMBLEA 1ᵉʳᵃ SESION
LEGISLATIVA ᵈⁿᵃ ORDINARIA
Ley Núm. _____ 109
(Aprobada en 24 de go del de 20 17)

(P. de la C. 1164)

# LEY

Para crear la "Ley para la Reestructuración de la Deuda del Banco Gubernamental de
Fomento para Puerto Rico", a los fines de establecer el marco legal para la
reestructuración de la deuda del Banco Gubernamental de Fomento para Puerto
Rico (el BGF) a través del Título VI del *Puerto Rico Oversight Management and
Economic Stability Act*, crear la Autoridad de Recuperación de Deuda del BGF (la
Autoridad) y disponer sus facultades, poderes y limitaciones, autorizar la
creación del Fideicomiso de Entidad Pública (el Fideicomiso) y establecer las
disposiciones relacionadas con éste, proveer para la determinación de los
balances de ciertos pasivos del BGF y otras entidades gubernamentales, autorizar
la transferencia de ciertos activos y obligaciones del BGF a la Autoridad y al
Fideicomiso, autorizar a la Autoridad a emitir bonos de reestructuración y
establecer las circunstancias y condiciones para ello, crear el gravamen
estatutario que garantizará dichos bonos, recalcular ciertas obligaciones
municipales, limitar y proveer para la mediación de ciertas reclamaciones contra
municipios, autorizar a las entidades gubernamentales a disponer y constituir
gravámenes sobre los bonos de reestructuración, autorizar ciertos desembolsos a
los municipios por concepto de la contribución adicional especial; enmendar el
Artículo 2 y añadir un Artículo 26 a la Ley 80-1991, según enmendada; añadir
Artículos 2.12 y 2.13 a la Ley 83-1991, según enmendada; enmendar los Artículos
3 y 20 de la Ley 64-1996, según enmendada, para reemplazar ciertas referencias
al BGF en dichas leyes por un fiduciario designado y definir dicho término, para
confirmar la validez de préstamos emitidos por el BGF, proveer que las
transacciones realizadas conforme a esta Ley serán válidas y obligatorias para
todas las entidades gubernamentales, disponer que ninguna entidad
gubernamental tendrá autoridad o legitimación activa para cuestionar esta Ley,
la transacción de reestructuración o las demás transacciones contempladas en
esta Ley; y para otros fines relacionados.

## EXPOSICIÓN DE MOTIVOS

La crisis fiscal y económica por la que atraviesa Puerto Rico no tiene precedentes
en nuestra historia. Las posturas y acciones pasadas causaron la pérdida de acceso a los
mercados de capital y precipitaron el colapso de nuestro sistema financiero público por
primera vez en la historia de Puerto Rico. Acciones que aceleraron la contracción
económica que veníamos sufriendo por más de una década y acrecentaron el éxodo de
puertorriqueños hacia estados de la Nación.

Durante la pasada administración se desarrolló una relación hostil con participantes de los mercados financieros, incluyendo decenas de miles de puertorriqueños que confiaron sus ahorros en el buen nombre y crédito del Gobierno. Además, se creó en el Congreso de los Estados Unidos un ambiente hostil hacia Puerto Rico por la falta de transparencia y honestidad, al tiempo que se mantuvo a Puerto Rico generando cobertura mediática consistentemente negativa a nivel local, nacional y global. Por primera vez, durante ese periodo de tiempo, Puerto Rico dejó de emitir estados financieros auditados luego de décadas de cumplir con un requisito de transparencia básico y esencial en el financiamiento y uso de fondos públicos.

Decisiones erradas causaron la insolvencia del Banco Gubernamental de Fomento para Puerto Rico (BGF o Banco) al este perder: (i) una gran parte de sus ingresos provenientes del pago de la deuda pública; y (ii) la habilidad de refinanciar su programa de notas a corto y mediano plazo que servía como herramienta de financiación para sus operaciones prestatarias.

Raíces de la Insolvencia del Banco

El Banco fue creado originalmente por la Ley 252 de 1942 con el propósito de lograr el desarrollo de los recursos humanos y económicos de Puerto Rico. Bajo la Ley 272 de 1945 se autorizó además al BGF a actuar como agente fiscal y asesor financiero del Gobierno, sus agencias e instrumentalidades. Finalmente, bajo la Ley 17 de 1948 se crea la Ley Orgánica del BGF estableciendo sus poderes y obligaciones.

La misión original del BGF fue salvaguardar la estabilidad fiscal de Puerto Rico y promover su competitividad para transformar nuestra economía en una de las más desarrolladas del mundo, fomentando el mejoramiento social y económico de nuestra gente. Antes que la Administración García Padilla decidiera tomar la ruta del "me vale", que nos trajo a donde estamos hoy, el Banco era considerado una de las instituciones más importantes y prestigiosas en Puerto Rico, llegando a tener sobre $14 mil millones en activos y una base capital de sobre $2 mil millones, a pesar de medidas dirigidas a descapitalizar y secar la liquidez del BGF para sufragar el costo del proyecto de comunidades especiales bajo las administraciones de los gobernadores Sila M. Calderón y Aníbal Acevedo Vilá.

No obstante la capacidad del BGF de adaptarse a los tiempos, y de recuperarse del impacto en las finanzas resultado de políticas públicas fallidas que desembocaron en déficits operacionales crónicos a partir de comienzos del Siglo XXI, su salud financiera se fue quebrantando poco a poco. A partir del año fiscal 2001, el Gobierno, sus instrumentalidades y corporaciones públicas fueron requiriendo de mayor apoyo para manejar su liquidez y financiamientos provistos por el Banco. Contra ese trasfondo, entre el 2009 y 2012 el Banco y el Gobierno comenzaron a implementar medidas fiscales y de desarrollo económico, incluyendo el mecanismo de alianzas

público privadas, que recibieron el apoyo y reconocimiento de los mercados de capital, inversionistas locales y externos, y de las agencias crediticias.  Sin embargo, el BGF nuevamente tuvo que mediar como la pieza principal para el manejo de dichos planes al tiempo que continuaba apoyando aquellas entidades que venían arrastrando problemas fiscales por la mayor parte de la primera década del nuevo siglo.

No debe quedar duda que la crisis financiera en la que se hundió a Puerto Rico pudo haberse evitado.  Sin embargo, se optó por gastar más de lo que ingresaba y ahora tenemos que trabajar con los resultados de las políticas erradas del pasado. Lo anterior exacerbado por eventos locales y mundiales tales como el cierre del Gobierno en el 2006, un gasto público elevado, la recurrente sobre estimación de las proyecciones de crecimiento económico, la emigración poblacional, la crisis financiera global y la recesión económica del 2008-2009, la segunda, más grande en la historia de los Estados Unidos desde la Gran Depresión de 1929, entre otros eventos.

Durante el año fiscal 2007-2008 y a raíz del desbalance estructural persistente en las finanzas públicas del Gobierno y la acelerada contracción económica, continuaron presionando al sector público, incrementando a su vez la dependencia en la fortaleza financiera del BGF para proveer financiamientos a corto plazo y liquidez operacional para el Gobierno.  El cúmulo de las políticas irresponsables, sumadas a la crisis financiera global del 2008 y el colapso temporero de productos de financiación a corto plazo (asset-backed commercial paper programs), se convirtieron en la tormenta perfecta, dejando al BGF vulnerable y en necesidad de identificar una nueva fuente de financiación interna.

Durante el año fiscal 2008-2009, la crisis financiera global trastocó muchos programas de financiación a corto y mediano plazo utilizados por instituciones financieras y corporaciones de todo tipo a nivel mundial, incluyendo gobiernos y entidades públicas, para allegar liquidez a sus operaciones.  El BGF no fue una excepción y encontró su principal fuente de financiación en el programa de notas conocido como *Medium Term Senior Unsecured Notes*.  Bajo este programa, el BGF logró obtener financiación para sus funciones prestatarias a un costo efectivo y fijo, permitiendo una mejor planificación al medio plazo, mejorar su rentabilidad y fortalecer su base de capital.  El funcionamiento de dicho programa dependía, al igual que para cualquier otra institución, de acceso a los mercados de capital disponible y a tasas de interés competitivas.

Durante el año fiscal 2011-2012, se logró la diversificación de la base de inversionistas del BGF.  Gracias a la fuerte clasificación crediticia del BGF, y su buena relación con los mercados de capital, el Gobierno pudo restructurar el perfil de vencimientos del programa de financiación a mayor plazo y se diversificó la base de inversionistas del Banco, protegiendo en parte al inversionista puertorriqueño.

| AF 2010 | AF 2012 |
|---|---|
| Tenedores | Tenedores |
| 100% Local | 69% Local; 31% Nacional |

Fuente: Estados financieros auditados del BGF

Durante el año fiscal 2015-2016, al comunicarse por la pasada administración la intención de no honrar el pago de la deuda pública, gran parte de la cartera de préstamos del BGF quedó en impago, creando un efecto dominó en la estructura financiera del BGF y del Gobierno, forzándolo a limitar dramáticamente desembolsos de depósitos a municipios, agencias y corporaciones públicas y ocasionando el impago del programa de notas del Banco.

La pérdida de flujo de gran parte de su cartera de préstamos y la activación del *claw back* de ciertos ingresos de corporaciones públicas, llevaron al BGF a su situación actual de insolvencia. El manejo irresponsable de la institución no deja otra opción a la administración del Gobernador Ricardo Rosselló Nevares que realizar un cierre ordenado de la corporación pública.

El Gobernador Ricardo Rosselló Nevares encomendó a su equipo de trabajo en el BGF y la Autoridad de Agencia Fiscal y Asesoría Financiera (AAFAF) trabajar en una solución consensual con las partes afectadas por la grave situación del Banco. Desde enero del año en curso, el equipo del Gobernador Rosselló Nevares ha trabajado incansablemente en buscar una solución sensible, consensual y que maximice el valor de los activos del Banco para mitigar el impacto que su restructuración pueda tener. El fruto de este trabajo y del liderazgo del Gobernador ha resultado en la aprobación de una modificación cualificada bajo el Título VI de PROMESA mediante la cual se restructuran, de forma consensual, las obligaciones del BGF (deuda pública y depósitos municipales, entre otros). Por medio de esta legislación, se crea el marco legal para dicha restructuración que a su vez asegura el cumplimiento con el plan fiscal certificado del BGF y protege el interés público, asegurando que se continúen ofreciendo los servicios esenciales por el Gobierno, municipios y otras dependencias.

Además, en vista de las circunstancias actuales, el tiempo e información disponible, esta legislación habilita la opción más práctica para resolver, de forma voluntaria, la restructuración del Banco con el objetivo de maximizar la recuperación de valor para distribución a los *stakeholders* apropiados.

Esta legislación crea un fideicomiso público como una instrumentalidad del Gobierno, independiente y separada de cualquier entidad gubernamental (incluyendo sin limitación alguna, al BGF).

*DECRÉTASE POR LA ASAMBLEA LEGISLATIVA DE PUERTO RICO:*

CAPÍTULO I: DISPOSICIONES GENERALES Y DEFINICIONES

Artículo 101.-Título.

Esta Ley se conocerá y podrá citarse como la "Ley para la Restructuración de la Deuda del Banco Gubernamental de Fomento de Puerto Rico".

Artículo 102.-Política Pública y Determinaciones Legislativas.

El propósito de esta Ley es establecer el marco legal para la Transacción de Restructuración. La Asamblea Legislativa por la presente determina que la Transacción de Reestructuración: (i) tiene un propósito público y está en los mejores intereses del pueblo de Puerto Rico; (ii) es justa y equitativa para todos los acreedores del BGF; (iii) es necesaria para asegurar cumplimiento con el Plan Fiscal del BGF; (iv) logra responsabilidad fiscal para el pueblo de Puerto Rico mediante una restructuración ordenada de los pasivos del BGF; (v) transige y resuelve posibles reclamaciones contra el BGF y otras Entidades Gubernamentales; y (vi) permite que el Gobierno de Puerto Rico y otras Entidades Gubernamentales continúen proveyendo servicios públicos esenciales.

Artículo 103.–Definiciones.

Los siguientes términos tienen los significados que se expresan a continuación:

(a)     "AAFAF"– significa la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico.

(b)     "Ley"– significa esta "Ley para la Restructuración del Banco Gubernamental de Fomento de Puerto Rico".

(c)     "Acuerdos Complementarios"– significa el Contrato de Bonos, el Acuerdo de Transferencia, el Acuerdo de Servicios y cualquier otro acuerdo o instrumento otorgado por la Autoridad o el BGF relacionado a, o en apoyo de, la Transacción de Restructuración y acorde con, o en apoyo de, la Modificación Cualificada.

(d)     "Administrador de Activos"– significa la Persona o Personas designada por la Autoridad para actuar como el administrador de activos y proveedor de servicios de la Propiedad de Restructuración según los términos de los Acuerdos Complementarios.

(e)     "Actividades Autorizadas"– significa las actividades que la Autoridad está facultada a llevar a cabo bajo el Artículo 204 de esta Ley.

(f)     "Junta de Síndicos"– significa la Junta de Síndicos de la Autoridad.

(g)     "Bono"– tendrá el significado provisto en la Sección 5(2) de PROMESA.

(h)     "Contrato de Bonos"– significa uno o más contratos de fideicomiso, contratos de bonos y cualquier suplemento a dicho contrato o acuerdo, o contratos o acuerdos similares, otorgados por la Autoridad y el Fiduciario del Contrato de Bonos mediante los cuales se emiten los Bonos de Restructuración, estableciendo los derechos y responsabilidades de la Autoridad y los tenedores de Bonos de Restructuración emitidos bajo, y asegurados por, dichos acuerdos y confirmando el gravamen estatutario constituido por el Artículo 402 de esta "Ley sobre la Propiedad de Restructuración a favor de los Bonos de Restructuración".

(i)     "Presidente"– significa el presidente de la Junta de Síndicos.

(j)     "Fecha de Cierre"– significa la fecha de efectividad de la Transacción de Restructuración.

(k)     "Plan Fiscal del Gobierno"– significa el Plan Fiscal para el Gobierno de Puerto Rico certificado por la Junta de Supervisión el 13 de marzo de 2017, según sea enmendado de tiempo en tiempo.

(l)     "Depositantes Designados"– significa Entidades Gubernamentales No-Municipales que tienen una reclamación relacionada a fondos depositados en el BGF a la Fecha de Cierre, después de darle efecto a las transacciones provistas por el Artículo 302 de esta Ley.

(m)     "Depósitos Designados"– significa las obligaciones de depósitos del BGF a los Depositantes Designados transferidas al Fideicomiso conforme a la Escritura de Fideicomiso.

(n)     "Tribunal de Distrito"– significa el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

(o)     "Fecha de Efectividad"– significa la fecha en que la Modificación Cualificada es final y firme conforme a la Sección 601(m) de PROMESA.

(p)     "Exceso CAE"– significa los ingresos del impuesto especial adicional certificado por el BGF como excedente del Fondo de Redención de Deuda

Municipal Pública (según se define dicho término en la "Ley de Financiamiento Municipal") antes del 1 de enero de 2017 conforme al Artículo 20(e) de la "Ley de Financiamiento Municipal" correspondientes a los años fiscales 2015, 2016 y 2017 y que están registrados como depósitos en cuentas en el BGF a nombre o para el beneficio de ciertos municipios. A modo de aclaración, el término "Exceso CAE" no incluirá aquellos ingresos del impuesto especial adicional certificado por la AAFAF como excedente del Fondo de Redención de Deuda Municipal Pública (según se define dicho término en la "Ley de Financiamiento Municipal") luego del 1 de enero de 2017 conforme al Artículo 20(e) de la "Ley de Financiamiento Municipal" correspondientes a los años fiscales 2017 y los subsiguientes y que están depositados en cuentas del Fondo de Redención de Deuda Municipal Pública creadas en instituciones financieras fuera del BGF a nombre o para el beneficio de cada municipio.

(q)     "Activos Excluidos"– significa aquellos activos del BGF cuyo traspaso no se requiere a la Autoridad en relación a la Transacción de Restructuración conforme a los términos de la Modificación Cualificada incluyendo, sin limitarse a, los Activos del Fideicomiso.

(r)     "Elección de Clasificación de la Entidad"– significa una elección bajo la Sección 301.7701-2 del Reglamento del Tesoro promulgado bajo el Código de Rentas Internas de Estados Unidos de 1986, según enmendado.

(s)     "Costos de Financiamiento"– significa todos los costos asociados con la Transacción de Restructuración, incluyendo, pero sin limitarse a, los costos, honorarios y gastos de: (i) emitir, dar servicios a, repagar o refinanciar los Bonos de Restructuración, independientemente de si dichos costos se incurren en la emisión de dichos Bonos de Restructuración o a través del término de los Bonos de Restructuración, incluyendo, pero sin limitarse a, cualquier interés pagado en especie; (ii) hacer pagos conforme a los Acuerdos Complementarios; (iii) pagar cualquier sello, impuesto de emisión, impuesto similar u otros cargos relacionados a la Transacción de Restructuración, disponiéndose que esta cláusula no limita de manera alguna la exención de impuestos incluida en los Artículos 208 y 306 de esta Ley; (iv) prepararse para y completar la Transacción de Restructuración; (v) proteger la Propiedad de Restructuración, incluyendo, sin que se entienda como una limitación, cualquier recaudo, ejecución, venta, supervisión, protección o acuerdos relacionados a la Propiedad de Restructuración; (vi) confirmar y proteger el gravamen estatutario sobre la Propiedad de Restructuración a favor de los Bonos de Restructuración, conforme el Artículo 402 de esta Ley; y (vii) llevar a cabo todas las actividades relacionadas a la Transacción de Restructuración. A

modo de aclaración, Costos de Financiamiento también incluye honorarios y gastos administrativos incurridos antes o después del cierre relacionados a los Acuerdos Complementarios.

(t)     "BGF"– significa el Banco Gubernamental de Fomento para Puerto Rico.

(u)     "Ley Orgánica del BGF"– significa la Ley Núm. 17 de 23 de septiembre de 1948, según enmendada.

(v)     "Plan Fiscal del BGF"– significa el Plan Fiscal del BGF certificado por la Junta de Supervisión el 12 de julio de 2017, según sea enmendado de tiempo en tiempo.

(w)    "Entidad Gubernamental"– significa cualquier agencia, departamento, oficina, corporación pública, fideicomiso, fondo, sistema, instrumentalidad, subdivisión política, autoridad fiscal o municipio del Gobierno de Puerto Rico.

(x)     "Gobierno de Puerto Rico"– significa el Estado Libre Asociado de Puerto Rico y su gobierno.

(y)     "Fiduciario del Contrato de Bono"– significa la Persona designada como fiduciario o fiduciario del contrato de bono bajo el Contrato de Bonos.

(z)     "Ley de Financiamiento Municipal"– significa la Ley 64-1996, según enmendada.

(aa)    "Entidad Gubernamental No-Municipal"– significa una Entidad Gubernamental que no sea un municipio del Gobierno de Puerto Rico.

(bb)    "Junta de Supervisión"– significa la Junta de Supervisión y Administración Financiera para Puerto Rico establecida conforme a la Sección 101 de PROMESA.

(cc)    "Reclamaciones de Bonos Participantes"– significa los Bonos del BGF que están sujetos a, y vinculados por, la Modificación Cualificada.

(dd)    "Persona"– significa cualquier persona natural o entidad legal, incluyendo Entidades Gubernamentales, o cualquier individuo, firma, sociedad, proyecto conjunto, fideicomiso, sucesión, compañía de responsabilidad limitada, corporación de individuos, asociación, corporación pública o privada, organizada o existente bajo las leyes de Puerto Rico, los Estados Unidos de América, o cualquier otra jurisdicción o de cualquier otro

estado, municipalidad, subdivisión política, autoridad fiscal, agencia o instrumentalidad de Puerto Rico, de los Estados Unidos de América o cualquier otra jurisdicción, o cualquier combinación de estas.

(ee)   "PROMESA"– significa la "Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico".

(ff)   "Escritura de Fideicomiso"– significa la escritura de fideicomiso (i) conforme a la cual (a) el Fideicomiso será creado y (b) el BGF hará una transferencia irrevocable de los Activos de Fideicomiso y los Depósitos Designados al Fideicomiso y (ii) que satisface las condiciones de la Modificación Cualificada.

(gg)   "Fideicomiso"– significa el Fideicomiso de Entidad Pública de BGF creado mediante la Escritura de Fideicomiso.

(hh)   "Activos de Fideicomiso de Entidad Pública"– significa los activos identificados en la Escritura de Fideicomiso por los cuales el título legal y equitativo serán transferidos irrevocablemente por el BGF al Fideicomiso de Entidad Pública como parte de la Transacción de Restructuración y que satisfacen las condiciones de la Modificación Cualificada y todos los activos, recaudos, honorarios, cargos, ingresos, rentas, pagos de seguros, u otros fondos generados o recibidos por el Fideicomiso o el BGF con respecto a cualquiera de los antes mencionados.

(ii)   "Modificación Cualificada"– significa el Acuerdo de Apoyo de Restructuración con fecha de 17 de mayo de 2017 y certificado por la Junta de Supervisión como una Modificación Cualificada bajo la Sección 601(g)(2)(A) de PROMESA, según sea enmendada de tiempo en tiempo de acuerdo a sus términos.

(jj)   "Autoridad"– significa la Autoridad de Recuperación de Deuda del BGF creada por el Artículo 201 de esta Ley.

(kk)   "Activos de la Autoridad"– significa todo derecho, título e interés legal y equitativo en o a: (i) todos los activos del BGF que existen a la Fecha de Cierre (excepto los Activos Excluidos), incluyendo cualquier activo de BGF (excepto los Activos Excluidos) que existe a la Fecha de Cierre pero que se identifique después de la Fecha de Cierre; (ii) los ingresos netos, si alguno, de préstamos de entidades públicas cuyos ingresos deben ser transferidos a la Autoridad conforme a la Modificación Cualificada; y (iii) los ingresos netos, si alguno, de cualquier causa de acción (excepto causas de acción para exigir cumplimiento de préstamos que constituyen Activos

Excluidos, los cuales serán transferidos al Fideicomiso), incluyendo causas de acción contingentes o desconocidas, cuyos ingresos deberán ser transferidos a la Autoridad conforme a la Modificación Cualificada.

(ll)  "Reclamaciones Residuales de Bonos Participantes"– significa las reclamaciones contingentes y residuales contra el BGF de cada tenedor de un Reclamo de Bonos Participantes para la porción insatisfecha de la Reclamación de Bono Participante, a ser provisto por los Acuerdos Complementarios, desde y después de la Fecha de Cierre y hasta que toda la Propiedad de Restructuración haya sido aplicada al pago con respecto a los Bonos de Restructuración conforme a sus términos, disponiéndose que las Reclamaciones Residuales de Bonos Participantes solo serán exigibles contra el BGF si, y en la medida que, la Modificación Cualificada, los Bonos de Restructuración o los derechos y gravámenes de la Autoridad, el Fiduciario del Contrato de Bonos o los tenedores de los Bonos de Restructuración con respecto a la Propiedad de Restructuración o los Bonos de Restructuración son rescindidos o anulados o de otra manera se hacen inexigibles de acuerdo a sus términos como resultado de una acción legislativa o una sentencia final y firme de un tribunal de jurisdicción competente.

(mm)  "Bonos de Restructuración"– significa los bonos emitidos por la Autoridad mediante esta Ley, el Contrato de Bonos y los Acuerdos Complementarios de tiempo en tiempo, teniendo términos conformes a la Modificación Cualificada.

(nn)  "Propiedad de Restructuración"– significa todo derecho, título e interés legal y equitativo en y a los Activos de la Autoridad (incluyendo, sin limitarse a, el interés beneficiario en la propiedad de BGF, los fondos que se tienen que transferir a la Autoridad con relación a la Transacción de Restructuración bajo los términos de la Modificación Cualificada) y todos los activos, recaudos, honorarios, cuotas, cargos, ingresos, rentas, pagos de seguros, u otros fondos generados o recibidos por la Autoridad, cualquier Administrador de Activos o BGF relacionado a los Activos de la Autoridad, incluyendo con relación a la administración o reinversión de los mismos.

(oo)  "Resolución de Restructuración"– significa una o más resoluciones de la Junta de Síndicos autorizando: (i) la emisión de los Bonos de Restructuración y detallando sus términos; (ii) el recibo de los Activos de la Autoridad y titularidad de la Propiedad de Restructuración, sujeta al gravamen estatutario creado mediante el Artículo 402 de esta Ley; y (iii) el

pago de los Costos de Financiamiento, todos conforme a los términos de la Modificación Cualificada.

(pp)    "Transacción de Restructuración"– significa las transacciones contempladas por o en beneficio de la Modificación Cualificada incluyendo, sin limitarse a: (i) la transferencia irrevocable de los Activos de la Autoridad a la Autoridad a cambio de la emisión de los Bonos de Restructuración por la Autoridad a los tenedores de las Reclamaciones de Bonos Participantes a cambio de sus Reclamaciones de Bonos Participantes; (ii) la emisión de los Bonos de Restructuración por la Autoridad; (iii) la cancelación y la extinción de las Reclamaciones de Bonos Participantes; (iv) la transferencia irrevocable de los Activos de Fideicomiso de Entidad Pública por el BGF al Fideicomiso de Entidad Pública a cambio de la asunción por el Fideicomiso de Entidad Pública de los Depósitos Designados; (v) la cancelación y extinción de los Depósitos Designados; y (vi) disponiendo para las Reclamaciones Residuales de Bonos Participantes.

(qq)    "Acuerdo de Servicios"– significa el acuerdo de administración y servicios por y entre la Autoridad y el Administrador de Activos mediante el cual el Administrador de Activos administrará y proveerá servicios a la Propiedad de Restructuración.

(rr)    "Acuerdo de Transferencia"– significa uno o más acuerdos de transferencia o acuerdos similares otorgados por el BGF y la Autoridad mediante el cual el BGF transferirá irrevocablemente todo título e interés legal y equitativo a la Autoridad.

CAPITULO 2: LA AUTORIDAD DE RECUPERACIÓN DE LA DEUDA DEL BGF

Artículo 201.-Creación de la Autoridad de Recuperación de la Deuda del BGF.

Por la presente se crea la Autoridad de Recuperación de la Deuda del BGF como un fideicomiso público estatutario e instrumentalidad gubernamental pública del Estado Libre Asociado de Puerto Rico, independiente y separado de cualquier otra Entidad Gubernamental (incluyendo, sin limitarse a, el BGF). La Autoridad y su existencia continuará hasta un año y un día después de que todos los Bonos de Restructuración, Costos de Financiamiento y otra deuda de la Autoridad hayan sido pagados totalmente en efectivo o de otra manera descargada conforme a sus términos. A la disolución de la Autoridad, y sólo luego del pago total en efectivo o el descargue de otra manera según sus términos, la titularidad del remanente de cualquier Propiedad de Restructuración será transferida al beneficiario de la Autoridad, el Estado Libre Asociado de Puerto Rico.

Artículo 202.-Existencia Legal Separada.

La Autoridad es y será reconocida para todos los propósitos como una entidad legal separada del Gobierno de Puerto Rico, el BGF y cualquier otra Entidad Gubernamental. Operará de manera independiente y sus negocios y asuntos serán gobernados por o bajo la dirección de la Junta de Síndicos. Cualquier retraso en la transferencia de los Activos de la Autoridad, cualquier mezcla de la Propiedad de Restructuración con los activos del Gobierno de Puerto Rico, el BGF o cualquier otra Entidad Gubernamental, cualquier servicio provisto por el BGF y cualquier otra circunstancia de la Transacción de Restructuración conforme al Contrato de Bonos y los otros Acuerdos Complementarios no anularán o perjudicarán la existencia legal separada o la independencia de la Autoridad o la posesión completa e irrefutable de la Autoridad de cualquiera de sus activos.

Artículo 203.-Propósito de la Autoridad de Recuperación.

Se crea la Autoridad con el propósito de (1) emitir los Bonos de Restructuración para: (a) implantar la Transacción de Restructuración; (b) facilitar el cumplimiento del Plan Fiscal del BGF; y (c) facilitar el financiamiento de servicios esenciales gubernamentales o públicos por el Gobiernos de Puerto Rico y (2) poseer y administrar la Propiedad de Restructuración. La Autoridad es creada y constituida para ejercer funciones esenciales gubernamentales y públicas y el cumplimiento por la Autoridad de las actividades y poderes otorgados por esta Ley serán considerados y constituirán un servicio esencial del Estado Libre Asociado de Puerto Rico para el beneficio y el bien del pueblo de Puerto Rico. La Autoridad no es creada u organizada, y sus operaciones no serán llevadas a cabo, para propósitos pecuniarios, y ninguna parte de los ingresos o activos de la Autoridad serán para el beneficio de, o serán distribuidos a cualquier persona o entidad privada, excepto para proveer servicios y pagar los Bonos de Restructuración y honorarios y costos para servicios prestados según dispuesto en esta Ley o según sea requisito para ejecutar el propósito de esta Ley.

Artículo 204.-Actividades de la Autoridad de Recuperación.

Las actividades de la Autoridad se limitarán a las siguientes Actividades Autorizadas:

(a)     Recibir los Activos de la Autoridad de Restructuración y ser dueño de la Propiedad de Restructuración;

(b)     aprobar la Resolución de Restructuración;

(c)  emitir los Bonos de Restructuración, de tiempo en tiempo;

(d)  otorgar los Acuerdos Complementarios;

(e)  proveer servicios o contratar para la prestación de servicios a la Propiedad de Restructuración o los Bonos de Restructuración y para servicios administrativos;

(f)  recaudar, recibir, ser dueño de, fiscalizar, supervisar, vender y proteger la Propiedad de Restructuración o de otra manera autorizar cualquiera de las anteriores conforme a los Acuerdos Complementarios para el único propósito de realizar o preservar el valor de la Propiedad de Restructuración y los ingresos generados por la misma, incluyendo, sin limitarse a, al comienzo de las acciones legales necesarias (sujeto a la Artículo 206(g) de esta Ley);

(g)  contabilizar y realizar todos los pagos y hacer pagos parciales conforme a los términos de los Acuerdos Complementarios;

(h)  contratar y tomar cualquier otra acción necesaria o conveniente respecto a maximizar el valor de la Propiedad de Restructuración, incluyendo aquellos relacionados al recaudo, fiscalización, venta, supervisión, protección, moratoria o acuerdo consistente con los términos de los Acuerdos Complementarios;

(i)  preparar o dirigir al Administrador de Activos a que prepare reportes y estados financieros según sea requerido por los Acuerdos Complementarios;

(j)  usar o dirigir el uso de la Propiedad de Restructuración según los Acuerdos Complementarios;

(k)  hacer la Elección de Clasificación de Entidad; y

(l)  tomar cualquier otra acción que sea necesaria o apropiada para efectuar la Transacción de Restructuración o la Modificación Cualificada.

Artículo 205.–Poderes Adicionales.

Para poder ejecutar las Actividades Autorizadas, sin limitar lo anterior, la Autoridad tendrá el poder de:

(a)  Demandar y ser demandado;

(b)     adoptar, cambiar y usar un sello;

(c)     formular, adoptar, enmendar y derogar estatutos para la administración de sus asuntos y aquellas normas, reglas y reglamentos que sean necesarios o pertinentes para ejercer y desempeñar las Actividades Autorizadas;

(d)     abrir y mantener cuentas de banco;

(e)     adquirir, arrendar, tener dominio sobre y vender propiedad;

(f)     tener completo dominio sobre todas sus propiedades (incluyendo la Propiedad de Restructuración);

(g)     negociar, otorgar y enmendar contratos y cualquier otro instrumento necesario o conveniente para desempeñar las Actividades Autorizadas, incluyendo, pero sin limitarse a, contratar con uno o más proveedores de servicios para desempeñar las Actividades Autorizadas y para comenzar cualquier acción para proteger o hacer cumplir cualquier derecho que le sea conferido por ley, contrato u otro acuerdo;

(h)     nombrar u destituir oficiales, agentes y empleados, establecer sus compensaciones, poderes y facultades;

(i)     pagar sus gastos operacionales y los Costos de Financiamiento;

(j)     procurar seguros contra perdidas en conexión con sus actividades, propiedades o activos;

(k)     invertir fondos y establecer y mantener reservas y aplicar la Propiedad de Restructuración según requerido por los Acuerdos Complementarios;

(l)     indemnizar los miembros de la Junta de Síndicos, sus oficiales, agentes, empleados, contratista y terceros;

(m)     adquirir por expropiación cualquier propiedad inmueble según leyes aplicables, pero sólo en la medida que dicha adquisición sea considerada necesaria por la Autoridad para maximizar el valor de cualquier activo que sea parte de la Propiedad de Restructuración;

(n)     ejercer todos aquellos otros poderes no incompatibles con los aquí expresados que por las leyes de Puerto Rico se le confieren a fideicomisos,

y ejercer todos esos poderes, dentro y fuera de Puerto Rico, en la misma manera que lo haría o podría hacer una persona natural;

(o)    llevar a cabo todos los actos o medidas necesarias o convenientes para cumplir su propósito y llevar a cabo los poderes que se le confieren expresamente en este Artículo;

(p)    delegar a sus oficiales, agentes, empleados o contratistas (incluyendo, pero sin limitarse a, el Administrador de Activos y cualquier monitor de colateral) autoridad para tomar acciones para cumplir con esta Ley; y

(q)    ejecutar, radicar y enmendar cualquier planilla, formulario, elecciones o declaraciones con cualquier autoridad gubernamental.

Artículo 206.-Actividades Prohibidas.

Mientras los Bonos de Restructuración estén en circulación, la Autoridad no estará autorizada a:

(a)    Fusionarse o consolidarse, directa o indirectamente, con cualquier Persona;

(b)    incurrir, garantizar o de alguna otra manera obligarse a pagar deuda alguna u otras obligaciones que no sean los Bonos de Restructuración y los Costos de Financiamiento;

(c)    gravar, crear o registrar gravámenes sobre cualquier propiedad (incluyendo la Propiedad de Restructuración), excepto por el gravamen para garantizar el pago de los Bonos de Restructuración y los Costos de Financiamiento creado conforme al Artículo 402 de esta Ley;

(d)    llevar a cabo actividades de negocio que no sean las autorizadas expresamente en esta Ley;

(e)    disolver, liquidar, transferir o vender toda o una parte de la Propiedad de Restructuración, excepto según permitido por los Acuerdos Complementarios;

(f)    perseguir cualquier recaudo o acción de ejecución con respecto a los bonos, préstamos o notas de cualquier Entidad Gubernamental No-Municipal que son parte de la Propiedad de Restructuración y que estén en circulación a la Fecha de Efectividad, además de ejercer cualquier derecho o remedio en una acción bajo el Título III o Título VI de

PROMESA con respecto a cualquier Entidad Gubernamental y sólo en la medida necesaria y apropiada para asegurar que la Autoridad recibe una distribución (si alguna) en dicha acción consistente con las distribuciones a acreedores tenedores de reclamaciones con la misma prioridad legal a las reclamaciones de la Autoridad; y

(g)   tomar cualquier otra acción que no sea inconsistente con el propósito de la Autoridad según establecida por esta Ley o complementarios a dicha Ley.

Artículo 207.-Junta de Síndicos.

Los poderes de la Autoridad serán ejercidos por, y su política general y administración estratégica será determinada por, la Junta de Síndicos.

(a)   Composición de la Junta de Síndicos.

La Junta de Síndicos estará compuesta por tres (3) miembros, que cumplirán los requisitos establecidos en el Artículo 207(b)(iii) de esta Ley y quienes serán nombrados por el Gobernador de Puerto Rico y servirán a la voluntad de este.

(b)   Disposiciones Generales con respecto a la Junta de Síndicos.

(i)   Cada miembro será nombrado por un término de tres (3) años, disponiéndose que un individuo podrá servir términos consecutivos como un miembro nombrado;

(ii)   cada miembro de la Junta de Síndicos tendrá derecho a un (1) voto;

(iii)   cada miembro de la Junta de Síndicos deberá satisfacer los requisitos de independencia y cualificación (incluyendo que ningún miembro de la Junta de Síndicos puede ser un oficial, empleado o director de cualquier Entidad Gubernamental) esbozados en los Acuerdos Complementarios;

(iv)   todas las decisiones y acciones de la Junta de Síndicos requerirán el voto afirmativo de una mayoría de los miembros en funciones de la Junta de Síndicos; y

(v)   los miembros de la Junta de Síndicos seleccionarán entre sus miembros un Presidente.

(c)   Vacantes.

En la medida que surja una vacante en el puesto de un miembro de la Junta de Síndicos por muerte, remoción, renuncia o de cualquier otra manera, un síndico sucesor que cumpla con los requisitos establecidos en el Artículo 207(b)(iii) de esta Ley será nombrado por, y servirá a la voluntad del Gobernador de Puerto Rico.

(d)    Compensación.

Los miembros de la Junta de Síndicos recibirán compensación según sea autorizado bajo los Acuerdos Complementarios.

(e)    Aprobación y Enmienda de Reglas.

Tan pronto sea factible luego del nombramiento de todos los síndicos y el nombramiento del Presidente, la Autoridad adoptará reglas y procedimientos para gobernar sus actividades bajo esta Ley. La Junta de Síndicos podrá enmendar dichas reglas y procedimientos de tiempo en tiempo.

(f)    *Quorum*.

Una mayoría de los miembros de la Junta de Síndicos en ese momento constituirán el *quorum* para tomar decisiones o ejercer cualquier poder o función de la Autoridad. Uno o más miembros podrán participar de una reunión de la Junta de Síndicos mediante teleconferencia o equipo de comunicaciones similar. Participación por dichos medios constituirá presencia personal en la reunión. Cualquier acción necesaria o permitida en cualquier reunión de la Junta de Síndicos será autorizada sin necesidad de una reunión siempre y cuando todos los miembros de la Junta de Síndicos den su consentimiento escrito a dicha acción.

(g)    Delegación.

La Junta de Síndicos podrá delegar a uno o más de los miembros, o a los oficiales, agentes y empleados de la Autoridad aquellos poderes y responsabilidades que la Junta de Síndicos determine sean apropiados.

(h)    Elección Federal de Clasificación para Impuestos.

Cualquier miembro de la Junta de Síndicos y cualquier oficial de la Autoridad estará autorizado a firmar el Formulario IRS 8832 a nombre de la Autoridad para efectuar la Elección de Clasificación de Entidad.

Artículo 208.–Exención Contributiva.

(a)     Por la presente se determina y declara que las actividades de la Autoridad
son primordialmente para el beneficio de Puerto Rico, para mejorar su
bienestar y prosperidad, y para un propósito público, y la Autoridad
ejercerá una función gubernamental esencial al llevar a cabo las
disposiciones de esta Ley.

(b)     La Autoridad estará totalmente exenta de, y no será requerida a pagar
contribución, impuesto, licencia, sello, honorario u otro cargo similar
alguno impuesto por el Gobierno de Puerto Rico o cualquier Entidad
Gubernamental sobre cualquiera de las propiedades de las cuales es
titular, posee, custodia o usa o sobre sus actividades o sobre cualquier
ingreso, pago o ganancia derivada de lo antes mencionado.

(c)     La transferencia de los Activos de la Autoridad del BGF a la Autoridad
estará totalmente exenta de cualquier tipo de contribución, impuesto,
licencia, sello, honorario u otros cargos impuestos por el Gobierno de
Puerto Rico o cualquier Entidad Gubernamental, incluyendo, pero sin
limitarse a, sellos y comprobantes de rentas internas relacionados con el
otorgamiento de escrituras públicas, instancias y documentos, así como de
todo otro cargo y pago para la inscripción en el Registro de la Propiedad.

(d)     Los Bonos de Restructuración, incluyendo, pero sin limitarse a, cualquier
pago, ingreso o ganancia con relación a los Bonos de Restructuración y la
transferencia de los Bonos de Restructuración, estará, en todo momento,
exento de contribución, impuesto, licencia, sello, honorario u otro cargo
impuesto por el Gobierno de Puerto Rico o cualquier Entidad
Gubernamental.  Los tenedores y dueños beneficiarios de los Bonos de
Restructuración no estarán sujetos a la obligación de radicar planilla,
informativa contributiva o requerimiento similar del Gobierno de Puerto
Rico o cualquier Entidad Gubernamental por razón de tener, ser titular o
transferir Bonos de Restructuración.

(e)     Los Bonos de Restructuración se considerarán en todo momento como
"deuda" para propósitos de todas las contribuciones impuestas por el
Gobierno de Puerto Rico o cualquier Entidad Gubernamental, incluyendo,
pero sin limitarse a, contribuciones sobre ingresos.

Artículo 209.–Inaplicabilidad de Ciertas Leyes.

Las siguientes leyes o disposiciones no serán de aplicación a la Autoridad:

(a)   Capítulo 4 de la Ley 26-2017, según enmendada, conocida como "Ley para el Cumplimiento del Plan Fiscal";

(b)   Ley 1-2012, según enmendada, conocida como la "Ley de Ética Gubernamental de Puerto Rico de 2011";

(c)   Ley 219-2012, según enmendada, conocida como la "Ley de Fideicomisos";

(d)   Ley 106-2006, según enmendada, conocida como "Ley de Reforma Fiscal del Gobierno del Estado Libre Asociado de Puerto Rico de 2006";

(e)   Ley 184-2004, según enmendada, conocida como la "Ley de Administración de Recursos Humanos del Servicio Público del Estado Libre Asociado de Puerto Rico";

(f)   Ley 237-2004, según enmendada, conocida como la "Ley para Establecer Parámetros Uniformes para la Contratación de Servicios Profesionales y Consultivos por las Agencias e Instrumentalidades del Gobierno de Puerto Rico";

(g)   Ley 197-2002, según enmendada, conocida como la "Ley para Regular el Proceso de Transición del Gobierno de Puerto Rico";

(h)   Artículo 2.001 de la Ley 78-2001, según enmendada, conocida como la "Ley Electoral del Estado Libre Asociado de Puerto Rico";

(i)   Ley 38-2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico";

(j)   Ley Núm. 164 de 23 de julio de 1974, conocida como la "Ley de la Administración de Servicios Generales";

(k)   Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como la "Ley de Contabilidad del Gobierno"; y

(l)   Ley 3-2017, conocida como la "Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico".

CAPITULO 3: EL FIDEICOMISO DE ENTIDAD PÚBLICA DE BGF

Artículo 301.–Creación del Fideicomiso de Entidad Pública.

El BGF estará autorizado a otorgar, efectivo a la Fecha del Cierre, una Escritura de Fideicomiso para crear y establecer el Fideicomiso para el beneficio de los Depositantes Designados y para disponer en dicha Escritura de Fideicomiso aquellos términos y condiciones relacionados con la operación del mismo. Al momento de su creación, el Fideicomiso será un fideicomiso público e instrumentalidad gubernamental del Estado Libre Asociado de Puerto Rico, independiente y separado de cualquier otra Entidad Gubernamental (incluyendo, sin limitarse a, al BGF y la Autoridad). Por la presente se autoriza al Secretario de Hacienda del Gobierno de Puerto Rico a comparecer en la Escritura de Fideicomiso en representación de los Depositantes Designados y a acordar los términos y condiciones ahí contenidos.

Artículo 302.–Obligaciones de Entidades Gubernamentales No-Municipales Después de la Fecha del Cierre.

Independientemente de lo que disponga cualquier otra ley del Gobierno de Puerto Rico, efectivo a la Fecha del Cierre, el balance de los pasivos adeudados entre cualquier Entidad Gubernamental No-Municipal y el BGF será automáticamente determinado aplicando el balance pendiente de cualquier depósito de una Entidad Gubernamental No-Municipal contra el balance pendiente de cualquier préstamo de dicha Entidad Gubernamental No-Municipal adeudado al BGF o cualquier bono o pagaré de dicha Entidad Gubernamental No-Municipal del cual el BGF sea tenedor a dicha fecha (excepto por cualquier préstamo, bono o pagaré de una Entidad Gubernamental No-Municipal garantizado con una hipoteca sobre propiedad inmueble) de manera consistente con las condiciones de la Modificación Cualificada, sin la necesidad de tomar acción adicional alguna. Dicha aplicación se llevará a cabo reduciendo cualquier plazo restante de principal en orden inversa de vencimiento y de ninguna otra manera afectará el término de repago del bono, pagaré o préstamo correspondiente. Para propósitos de este Artículo, todas las agencias, departamentos, oficinas e instrumentalidades del gobierno central se considerarán la misma Entidad Gubernamental. Los balances restantes de bonos, pagares o préstamos y los depósitos de las Entidades Gubernamentales No-Municipales serán aquellos que la AAFAF certifique.

Artículo 303.–Transferencia de los Activos del Fideicomiso de Entidad Pública.

Efectivo a la Fecha de Cierre, por este medio se autoriza al BGF a transferir los Depósitos Designados y los Activos del Fideicomiso mediante la Escritura de Fideicomiso para satisfacer las condiciones de la Modificación Cualificada. Una transferencia de los Activos del Fideicomiso por el BGF al Fideicomiso por medio de la

Escritura de Fideicomiso se considerará como una transferencia irrevocable, ineludible y absoluta de todo el derecho, título e interés legal y equitativo del BGF (un "true sale") y no como una prenda u otro financiamiento, de los Activos del Fideicomiso. Una vez se transfieran los Activos del Fideicomiso al Fideicomiso y el Fideicomiso asuma los Depósitos Designados, los Depositantes Designados, inmediatamente y para siempre, y sin acción o documentación adicional, dejarán de tener cualquier derecho, interés o reclamación contra el BGF o cualquiera de sus activos o cualquier sucesor o cesionario de los mismos (excepto el Fideicomiso).

Artículo 304.–Fiduciario del Fideicomiso de Entidad Pública.

El fiduciario del Fideicomiso tendrá aquellos poderes que se le confieran en la Escritura de Fideicomiso. El BGF será el fiduciario inicial del Fideicomiso, disponiéndose que la AAFAF estará autorizada a actuar como fiduciario o designar cualquier otra Persona a actuar como fiduciario del Fideicomiso en la medida que el BGF renuncia o en la medida que el BGF esté inhabilitado de continuar actuando como fiduciario del Fideicomiso, según determine la AAFAF.

Artículo 305.–Distribución de los Activos del Fideicomiso de Entidad Pública.

La Escritura de Fideicomiso dispondrá la manera en que los Activos de Fideicomiso se distribuirán entre los Depositantes Designados.

Artículo 306.–Exención Contributiva.

(a)     El Fideicomiso estará totalmente exento de, y no será requerida a pagar contribución, impuesto, licencia, sello, honorario u otros cargos similares alguno impuestos por el Gobierno de Puerto Rico o cualquier Entidad Gubernamental sobre cualquiera de las propiedades de las cuales es titular, posee, custodia o usa o sobre sus actividades o sobre cualquier ingreso, pago o ganancia derivada de las mismas.

(b)     La transferencia de los Activos del Fideicomiso por el BGF al Fideicomiso estará totalmente exenta de cualquier tipo de contribución, impuesto, licencia, sello, honorario u otros cargos impuestos por el Gobierno de Puerto Rico o cualquier Entidad Gubernamental, incluyendo, pero sin limitarse a, sellos y comprobantes de rentas internas relacionados con el otorgamiento de escrituras públicas, instancias y documentos, así como de todo otro cargo y pago para la inscripción en el Registro de la Propiedad.

Artículo 307.–Ley de Fideicomisos de Puerto Rico.

Las disposiciones de la Ley 219-2012, según enmendada, conocida como la "Ley de Fideicomisos de Puerto Rico", no serán aplicables al Fideicomiso.

## CAPÍTULO 4: TRANSACCIÓN DE RESTRUCTURACIÓN

Artículo 401.–Emisión de los Bonos de Restructuración.

(a)     En y después de la Fecha de Efectividad, la Autoridad estará autorizada a emitir los Bonos de Restructuración, de tiempo en tiempo, bajo los términos de la Resolución de Restructuración, la orden del Tribunal de Distrito aprobando la Modificación Cualificada y los Acuerdos Complementarios.

(b)     Los Bonos de Restructuración podrán ser emitidos de tiempo en tiempo en una o más series conforme el Contrato de Bonos bajo los términos y condiciones autorizados por la Autoridad y provistos en la Resolución de Restructuración.

(c)     Los Bonos de Restructuración tendrán fechas, devengarán interés a las tasas y vencerán en la fecha o fechas, que no sea menos de un (1) año y que no exceda veinticinco (25) años de la fecha o fechas de su emisión, según determine la Autoridad y autorizado en la Resolución de Restructuración acorde y consistente con la Modificación Cualificada. La Autoridad determinará la forma de los Bonos de Restructuración y la manera de otorgamiento de los Bonos de Restructuración, y fijará la denominación o denominaciones de los Bonos de Restructuración y el sitio o sitios de pago del principal de los mismos y los intereses sobre los mismos y cualquier otro término de los mismos, todo acorde y consistente con la Modificación Cualificada.

(d)     Los Bonos de Restructuración serán pagaderos únicamente de la Propiedad de Restructuración conforme los términos del Contrato de Bonos y los Acuerdos Complementarios, sin recurso al crédito o cualquier otro activo de la Autoridad o el BGF (excepto por las Reclamaciones Residuales de Bonos Participantes).

(e)     Los Bonos de Restructuración no constituirán deuda del Gobierno de Puerto Rico ni de ninguna corporación pública o instrumentalidad del Gobierno de Puerto Rico excepto por la Autoridad.  Esta aseveración se incluirá en los Bonos de Restructuración y los documentos de divulgación.

Artículo 402.–Gravamen Estatutario sobre la Propiedad de Restructuración.

Los Bonos de Restructuración y los Costos de Financiamiento serán automáticamente, una vez emitidos los Bonos de Restructuración, garantizados por un gravamen estatutario sobre la Propiedad de Restructuración a favor del Fiduciario del Contrato de Bonos para beneficio de los tenedores de los Bonos de Restructuración, el cual será superior a cualquier otro gravamen sobre la Propiedad de Restructuración (excepto por gravámenes válidos y existentes a la fecha de efectividad de esta Ley o que surjan en el curso ordinario del negocio después de la fecha de efectividad de esta Ley y que existan a la Fecha del Cierre, en cada caso con relación a cualquier activo de propiedad inmueble o mueble que sean parte de la Propiedad de Restructuración) y podrá ser exigido según los términos de los Acuerdos Complementarios. Dicho gravamen estatutario será automático y se perfeccionará, será válido y exigible automáticamente desde y después de la Fecha de Cierre, en cada caso sin ningún acto o acuerdo adicional. Ningún instrumento tiene que ser otorgado, registrado o inscrito en un récord oficial o registro gubernamental u oficina para perfeccionar o continuar el gravamen estatutario o para establecer o mantener la prioridad del mismo. Ninguna mezcla de la Propiedad de Restructuración con ninguna otra propiedad del BGF o de cualquier otra parte limitará, frustrará, menoscabará o interferirá con dicho gravamen estatutario.

Artículo 403.–Autorización de Acciones por BGF y la Autoridad de Recuperación.

Independientemente de cualquier disposición en la Ley Orgánica del BGF o de cualquier otra ley del Gobierno de Puerto Rico, en o después de la Fecha de Efectividad, el BGF o la Autoridad, según sea el caso, estará autorizada a: (i) transferir irrevocablemente los Activos de la Autoridad a la Autoridad, sujeto al gravamen estatutario creado bajo el Artículo 402 de esta Ley; (ii) emitir Bonos de Restructuración a los tenedores de Reclamaciones de Bonos Participantes; (iii) disponer para la cancelación y extinción de las Reclamaciones de Bonos Participantes una vez se intercambien los Bonos de Restructuración por las Reclamaciones de Bonos Participantes; (iv) transferir los Activos del Fideicomiso en consideración por la asunción por el Fideicomiso de los Depósitos Designados; (v) pagar los Costos de Financiamiento según los términos de la Modificación Cualificada; (vi) disponer para las Reclamaciones Residuales de Bonos Participantes; (vii) confirmar el gravamen estatutario sobre la Propiedad de Restructuración creada bajo el Artículo 402 de esta Ley; y (viii) tomar cualquier acción necesaria o conveniente para llevar a cabo la Transacción de Restructuración.

Artículo 404.–Transferencia de los Activos de la Autoridad de Recuperación.

(a)    Los Activos de la Autoridad serán transferidos por el BGF a la Autoridad,

en la Fecha de Cierre y de tiempo en tiempo después de dicha fecha, de acuerdo al Acuerdo de Transferencia, los otros Acuerdos Complementarios y la Modificación Cualificada. Cada transferencia de Activos de la Autoridad por el BGF a la Autoridad se tratará como una transferencia irrevocable, ineludible y absoluta de todo derecho, título e interés legal y equitativo del BGF (un "true sale") y no una prenda u otro financiamiento de los Activos de la Autoridad. En la Fecha de Cierre, los tenedores de las Reclamaciones de Bonos Participantes, estén o no en circulación a dicha fecha, y todos los otros acreedores del BGF (incluyendo depositantes), inmediatamente y para siempre, sin acción o documentación adicional, dejarán de tener cualquier derecho, interés o reclamación contra el BGF o cualquiera de sus activos, o cualquier sucesor o cesionario del mismo (excepto por las Reclamaciones Residuales de Bonos Participantes). A modo de aclaración, lo antes mencionado no afectará el gravamen estatutario creado bajo el Artículo 402 de esta Ley.

(b)   La transferencia de los Activos de la Autoridad por el BGF a la Autoridad, según autorizado por la Modificación Cualificada, será válida, irrevocable, ineludible y vinculante. Dicha transferencia será de buena fe y a cambio de consideración adecuada y valor razonablemente equivalente, y en apoyo del propósito público de esta Ley, y no constituirá una transferencia en violación de la Ley Orgánica del BGF, la "Ley de Financiamiento Municipal", los Artículos 1243, 1244 y 1249 del Código Civil de Puerto Rico o cualquier disposición análoga u otra teoría legal o de los términos de cualquier Activo de la Autoridad. A la Fecha de Cierre y al momento de cualquier transferencia posterior, respectivamente, los Activos de la Autoridad serán de la Autoridad libre de cualquier reclamación (excepto por gravámenes válidos y existentes a las fecha de efectividad de esta Ley o que surjan en el curso ordinario del negocio después de la fecha de efectividad de esta Ley y que existan a la Fecha de Cierre, en cada caso con relación a cualquier activo inmueble o mueble relacionados a los mismos que sean parte de la Propiedad de Restructuración) excepto por reclamaciones por la Autoridad, el Fiduciario del Contrato de Bonos o los tenedores de los Bonos de Restructuración.

(c)   Todo contrato u otro acuerdo, sin importar cuando fue creado o surgió, que sea parte de los Activos de la Autoridad (incluyendo, sin limitarse a, cualquier pagaré, contrato de préstamo o contrato de colateral) y en el cual cualquier Entidad Gubernamental sea parte estará exento de inscripción en la Oficina del Contralor de Puerto Rico independientemente de la transferencia de los Activos de la Autoridad por el BGF a la Autoridad.

(d)     Independientemente de cualquier disposición en cualquier otra ley del Gobierno de Puerto Rico, cualquier activo inmueble que sea parte de los Activos de la Autoridad será transferido a la Autoridad mediante el Acuerdo de Transferencia, sin la necesidad de acción adicional alguna (incluyendo, sin limitarse a, el otorgamiento de una escritura de compraventa o transferencia), y los registradores de la propiedad tendrán la obligación de inscribir dichas propiedades inmuebles en el Registro de la Propiedad a nombre de la Autoridad y, si así se solicita, inscribir el gravamen estatutario con relación a dichos activos creado por el Artículo 402 de esta Ley, mediante presentación de una instancia a esos efectos acompañado de copia del Acuerdo de Transferencia que identifique los inmuebles que son parte de los Activos de la Autoridad, disponiéndose que el hecho de que no se haga dicha inscripción no afectará los derechos de la Autoridad con relación a dichos inmuebles o la perfección, prioridad o exigibilidad de dicho gravamen estatutario.

(e)     A modo de aclaración, ningún deudor de la Autoridad tendrá derecho alguno a compensar cualquier deuda del BGF, la Autoridad o cualquier otra Entidad Gubernamental a dicha Persona contra cualquier deuda de dicha Persona con la Autoridad, incluyendo, sin limitarse a, con relación a la Propiedad de Restructuración.

Artículo 405.–Derecho de Solicitar la Designación de un Síndico.

Al ocurrir un evento de incumplimiento bajo los términos de los Acuerdos Complementarios y la continuación de dicho evento de incumplimiento por un periodo de treinta (30) días, cualquier tenedor o tenedores de Bonos de Restructuración (sujeto a cualquier limitación contractual con relación al por ciento de dichos tenedores), o el fiduciario correspondiente, tendrá el derecho de solicitar a cualquier tribunal federal o del Estado Libre Asociado de jurisdicción competente en Puerto Rico para la designación de un síndico para la Autoridad. Sujeto a cualquier limitación provista en los Acuerdos Complementarios, el síndico designado tendrá, custodiará, usará, operará, administrará y controlará la propiedad de la Autoridad, incluyendo la Propiedad de Restructuración, y ejercerá todos los derechos y poderes de la Autoridad con relación a dicha propiedad de la misma manera que podría la Autoridad. El síndico actuará bajo la dirección y supervisión del tribunal y en todo momento estará sujeto a las órdenes y decretos del tribunal y podrá ser removido por dicho tribunal.

Artículo 406.–Reclamación Residual de Bonos Participantes.

Independientemente de la cancelación de las Reclamaciones de Bonos Participantes como parte de la Transacción de Restructuración, cada tenedor de una Reclamación de Bono Participante tendrá una Reclamación de Bono Participante contra

el BGF.  Dicha Reclamación de Bono Participante sólo será exigible contra el BGF si, y en la medida que, la Modificación Cualificada, los Bonos de Restructuración o los derechos y gravámenes de la Autoridad, el Fiduciario del Contrato de bonos o los tenedores de los Bonos de Restructuración con relación a la Propiedad de Restructuración o los Bonos de Restructuración son rescindidos o evitados o de cualquier otra forma se hacen inexigibles acorde a sus términos como resultado de acción legislativa o una sentencia final y firma de un tribunal de jurisdicción competente.

Artículo 407.–Compromiso de No Menoscabo del Gobierno de Puerto Rico.

Por este medio el Gobierno de Puerto Rico acuerda y se compromete con cualquier Persona que adquiera los Bonos de Restructuración que no, y ninguna Entidad Gubernamental estará autorizada a, menoscabar, limitar, restringir, rescindir, aplazar o modificar los derechos o poderes de la Autoridad, el Fiduciario del Contrato de Bonos o los tenedores de los Bonos de Restructuración bajo esta Ley o bajo o con relación a la Propiedad de Restructuración, o la habilidad de la Autoridad de cumplir con sus obligaciones hacia sus bonistas hasta tanto los Bonos de Restructuración, junto con los intereses sobre los mismos, y toda cantidad y obligación bajo los Acuerdos Complementarios, hayan sido totalmente pagados en efectivo o de otra manera descargada de acuerdo con sus términos; disponiéndose, que cualquier acción u omisión por el Gobierno de Puerto Rico o por cualquier Entidad Gubernamental relacionada a apropiaciones o uso de fondos bajo el Plan Fiscal del Gobierno no será considerado una violación de este Artículo 407.  El Gobierno de Puerto Rico además acuerda y se compromete a que ninguna enmienda a esta Ley menoscabará, restringirá, aplazará o modificará cualquier obligación o compromiso de (i) la Autoridad para con los tenedores de los Bonos de Restructuración o (ii) el BGF para con los tenedores de las Reclamaciones Residuales de Bonos Participantes.

CAPÍTULO 5: DETERMINACIÓN DE OBLIGACIONES MUNICIPALES Y PAGOS A MUNICIPIOS

Artículo 501.–Determinación de Ciertas Obligaciones Municipales.

Independientemente de cualquier otra ley del Gobierno de Puerto Rico (incluyendo, sin limitación, la "Ley de Financiamiento Municipal", según enmendada por esta Ley), la cantidad de principal de cualquier bono, pagaré y/o préstamo de cualquier municipio del Gobierno de Puerto Rico en posesión del BGF será automáticamente reducido por operación de ley a la Fecha del Cierre por una cantidad igual al balance de cualquier producto de dicho bono, pagaré y/o préstamo que no se le desembolsó a dicho municipio y que está depositado en el BGF a la Fecha de Cierre según la "Ley de Financiamiento Municipal", consistente con las condiciones de la Modificación Cualificada, sin necesidad de acción adicional.  Dicha reducción se llevará

a cabo reduciendo los plazos de principal restantes en orden inversa a su vencimiento y de ninguna otra manera afectará los términos de repago de dicho bono, pagaré o préstamo. Los balances restantes de los préstamos municipales serán certificados por la AAFAF. Todo pago futuro de intereses sobre dichos bonos, pagarés y/o préstamos luego de la fecha de efectividad de esta Ley será calculado basado en los balances restantes de los préstamos municipales conforme a este Artículo 501 y según certificados por la AAFAF. Nada de lo contenido en esta Ley será interpretado como una prohibición o limitación a que los municipios puedan refinanciar sus bonos, pagarés o préstamos actuales con otra institución financiera según la Ley de Financiamiento Municipal.

Artículo 502.–Pago del Exceso CAE.

Independientemente de cualquier otra ley del Gobierno de Puerto Rico (incluyendo, sin limitación, la "Ley de Financiamiento Municipal", según enmendada por esta Ley), a la Fecha del Cierre, el BGF pagará, en efectivo, a cada municipio que tenga Exceso CAE una cantidad igual al 55% del Exceso CAE no desembolsado correspondiente a dicho municipio, consistente con las condiciones de la Modificación Cualificada. El remanente de dicho Exceso CAE no desembolsado será liquidado a la Fecha del Cierre, y ningún dicho municipio tendrá derechos o reclamaciones adicionales con relación a dicho Exceso CAE y el BGF no tendrá responsabilidad u obligación adicional al respecto.

Artículo 503.–Disposición de Bonos de Restructuración.

Independientemente de cualquier otra ley o reglamento del Gobierno de Puerto Rico, cualquier Entidad Gubernamental, incluyendo cualquier municipio, que adquiera Bonos de Restructuración como resultado de la Transacción de Restructuración podrá disponer de, o constituir un gravamen mobiliario sobre, dichos Bonos de Restructuración sin limitación alguna y según aquellos términos y condiciones que dicha Entidad Gubernamental determine apropiada a su discreción.

Artículo 504.-Limitación y Mediación de ciertas Reclamaciones contra municipios.

Desde la Fecha del Cierre hasta el 30 de junio de 2019, ninguna Persona que tenga una reclamación contra un municipio relacionada a un proyecto de mejora de capital financiado con un bono, pagaré o préstamo sujeto a ser determinado según dispone el Artículo 501 de esta Ley comenzará o continuará una acción o procedimiento judicial, administrativo o de cualquier otra índole contra dicho municipio con relación a dicha reclamación. Independientemente de lo anterior, cualquier Persona podrá comenzar o continuar un litigio antes del 30 de junio de 2019 únicamente para requerir al municipio participar en mediación. El propósito de dicho proceso de mediación será

llegar a un acuerdo mutuo que permita establecer un plan de repago alterno o cualquier otra alternativa satisfactoria a las partes, que se reflejará en el presupuesto para el año fiscal 2020 del municipio correspondiente.  El proceso de mediación que aquí se autoriza se regirá, siempre y cuando no sea incompatible con las disposiciones de esta Ley, por las disposiciones de la Ley Núm. 19 de 22 de septiembre de 1983, según enmendada, al igual que por cualquier reglamento aprobado por el Tribunal Supremo de Puerto Rico relacionado a la mediación.  En aquellos casos donde no se llegue a un acuerdo mediante el proceso de mediación y que luego de un proceso judicial se dicte una sentencia que advenga final y firme contra un municipio, al pago de dicha sentencia le aplicarán las disposiciones del Artículo 13 de la Ley 3-2017. Cada parte será responsable de sus propios gastos y los honorarios de abogado correspondientes a dicho proceso, al igual que con relación a cualquier litigio comenzado o continuado después del 30 de junio de 2019.  Los honorarios del mediador y los costos relacionados serán sufragados por las partes en partes iguales, a menos se pacte en contrario. Nada de lo aquí dispuesto se interpretará como que prohíbe que un municipio haga cualquier pago relacionado a una reclamación sujeta a este Artículo 504.  Finalmente, este Artículo 504 será siempre interpretado de la manera más favorable para los municipios del Gobierno de Puerto Rico.

CAPÍTULO 6: ENMIENDAS A OTRAS LEYES.

Artículo 601(a).–Se enmienda el Artículo 2 de la Ley 80-1991, según enmendada, conocida como "Ley del Centro de Recaudación de Ingresos Municipales", para reasignar las cláusulas (a) a la (g) como cláusulas (b) a la (h), respectivamente, para reasignar las cláusulas (h) a la (p) como cláusulas (j) a la (r), respectivamente y para añadir nuevas cláusulas (a) e (i), para que lean en su totalidad como sigue:

"Artículo 2.–Definiciones.

(a)     AAFAF.– significa la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico.

(b)     Agencia pública...

(c)     Año base...

(d)     Año Fiscal...

(e)     Banco Gubernamental...

(f)     Centro...

(g)     Comisionado...

(h)     Director Ejecutivo...

(i)     Fiduciario Designado.– significa la AAFAF o una o más instituciones financieras privadas designadas por la AAFAF, disponiéndose que dichas instituciones financieras deberán estar autorizadas para actuar como depositario de fondos públicos según dispuesto en la Ley 69-1991, según enmendada, conocida como la "Ley para Regular el Depósito de Fondos Públicos y para Proveer su Seguridad", y para actuar como fiduciario bajo las leyes del Gobierno de Puerto Rico. No obstante lo anterior, el Banco Gubernamental actuará como Fiduciario Designado hasta tanto la AAFAF asuma dichas funciones o designe a una institución financiera que cumpla con los requisitos establecidos en la oración anterior para asumir dichas funciones, lo cual deberá ocurrir en o antes de la Fecha de Cierre (según dicho término está definido en la "Ley para la Reestructuración de la Deuda del Banco Gubernamental de Fomento para Puerto Rico").

(j)     Fondo...

(k)     Fondo General...

(l)     Gobierno Estatal...

(m)     Junta...

(n)     Municipio o gobierno municipal...

(o)     Persona...

(p)     Rentas internas netas...

(q)     Secretario...

(r)     Sistema de Lotería Adicional..."

Artículo 601(b).–Se añade un Artículo 26 a la Ley 80-1991, según enmendada, conocida como la "Ley del Centro de Recaudación de Ingresos Municipales", para que lea como sigue:

"Artículo 26.-Fiduciario Designado.

Se sustituye toda referencia a "Banco Gubernamental de Fomento para Puerto Rico", "Banco Gubernamental de Fomento", "Banco Gubernamental" o

"Banco" en los Artículos 4, 15, 17, 18 y 22 de esta Ley por el "Fiduciario Designado"."

Artículo 602(a).–Se añade un Artículo 2.12 a la Ley 83-1991, según enmendada, conocida como la "Ley de Contribución Municipal sobre la Propiedad", para que lea como sigue:

"Artículo 2.12.–Definiciones.

Para propósitos de este Título los siguientes términos tendrán las siguientes definiciones:

(a)     AAFAF.– significa la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico.

(b)     Fiduciario Designado.– significa la AAFAF o una o más instituciones financieras privadas designadas por la AAFAF, disponiéndose que dichas instituciones financieras deberán estar autorizadas para actuar como depositario de fondos públicos según dispuesto en la Ley 69-1991, según enmendada, conocida como la "Ley para Regular el Depósito de Fondos Públicos y para Proveer su Seguridad", y para actuar como fiduciario bajo las leyes del Gobierno de Puerto Rico. No obstante lo anterior, el Banco Gubernamental de Fomento para Puerto Rico actuará como Fiduciario Designado hasta tanto la AAFAF asuma dichas funciones o designe a una institución financiera que cumpla con los requisitos establecidos en la oración anterior para asumir dichas funciones, lo cual deberá ocurrir en o antes de la Fecha de Cierre (según dicho término está definido en la "Ley para la Reestructuración de la Deuda del Banco Gubernamental de Fomento para Puerto Rico")."

Artículo 602(b).–Se añade un Artículo 2.13 a la Ley 83–1991, según enmendada, conocida como la "Ley de Contribución Municipal sobre la Propiedad", para que lea como sigue:

"Artículo 2.13.-Fiduciario Designado.

Se sustituye toda referencia a "Banco Gubernamental de Fomento para Puerto Rico", "Banco Gubernamental de Fomento", "Banco Gubernamental" o "Banco" en los Artículos 2.04(a) y (c), 2.05, 2.06, 2.09 y en el segundo párrafo del Artículo 2.11 de esta Ley por el "Fiduciario Designado"."

Artículo 603(a).–Se enmienda el Artículo 3 de la Ley 64–1996, según enmendada, conocida como "Ley de Financiamiento de Puerto Rico de 1996", para reasignar las

cláusulas (a) a la (o) como las cláusulas (b) a la (p), respectivamente, reasignar las cláusulas (p) a la (aa) como las cláusulas (r) a la (cc), respectivamente, y para añadir cláusulas (a) y (q) para que lean como sigue:

"(a)    "AAFAF".– significa la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico.

(b)    "Alcalde"...

(c)    "Legislatura"...

(d)    "Banco Gubernamental"...

(e)    "Bonos, Pagarés o Instrumentos de Obligación Especial"...

(f)    "Bonos o Pagarés de Obligación General Municipal"...

(g)    "Bonos, Pagarés o Instrumentos de Refinanciamiento"...

(h)    "Bonos de Rentas"...

(i)    "Centro"...

(j)    "Contribución Adicional Especial"...

(k)    "Contribución Básica"...

(l)    "Contribución Especial"...

(m)    "Costo"...

(n)    "Estado de Emergencia"...

(p)    "FEPEG"...

(q)    "Fiduciario Designado".– significa la AAFAF o una o más instituciones financieras privadas designadas por la AAFAF, disponiéndose que dichas instituciones financieras deberán estar autorizadas para actuar como depositario de fondos públicos según dispuesto en la Ley 69-1991, según enmendada, conocida como la "Ley para Regular el Depósito de Fondos Públicos y para Proveer su Seguridad", y para actuar como fiduciario bajo las leyes del Gobierno de Puerto Rico. No obstante lo anterior, el Banco

Gubernamental actuará como Fiduciario Designado hasta tanto la AAFAF asuma dichas funciones o designe a una institución financiera que cumpla con los requisitos establecidos en la oración anterior para asumir dichas funciones, lo cual deberá ocurrir en o antes de la Fecha de Cierre (según dicho término está definido en la Ley para la Reestructuración de la Deuda del Banco Gubernamental de Fomento para Puerto Rico).

(r)   "Fondo de Redención".- significa el fideicomiso conocido como el Fondo de Redención de la Deuda Pública Municipal establecido por el Centro con el Fiduciario Designado. Este fideicomiso contiene una cuenta para cada municipio en la que el Centro deposita todo el producto de la Contribución Adicional Especial que imponga cada municipio y cualquier otro recurso procedente de otras fuentes, según establecido en el Artículo 20 de esta Ley, que sea necesario para el servicio de las obligaciones evidenciadas por Bonos o Pagarés de Obligación General Municipal o por Pagarés en Anticipación de Bonos de Obligación General de cada municipio. El Fiduciario Designado remitirá trimestralmente a los municipios los intereses generados por los depósitos en sus cuentas en el Fondo de Redención.

(s)   "Gobernador"...

(t)   "Impuesto Municipal sobre Ventas y Uso al Detal"...

(u)   "Instrumento" o "Instrumento de Crédito"...

(v)   "Junta de Subasta"...

(w)   "Municipio"...

(x)   "Pagaré de Anticipación de Bonos"...

(y)   "Pagaré o Instrumentos en Anticipación de Contribuciones e Ingresos"...

(z)   "Proyectos Generadores de Rentas"...

(aa)   "Refinanciamiento"...

(bb)   "Secretario"...

(cc)   "Servicio"..."

Artículo 603(b).–Se enmienda el Artículo 20 de la Ley 64–1996, según enmendada, conocida como "Ley de Financiamiento de Puerto Rico de 1996", para que lea como sigue:

"Artículo 20.–Disposiciones para el Pago de Obligaciones Generales Municipales: Primer Gravamen.

(a)   La buena fe, el crédito y la facultad del municipio para imponer contribuciones ilimitadas quedan por la presente comprometidas para el pago puntual del principal de y los intereses sobre todas las obligaciones evidenciadas por Bonos o Pagarés de Obligación General y de los intereses sobre las obligaciones evidenciadas por Pagarés en Anticipación de Bonos de Obligación General Municipal en las que pueda incurrir el municipio.

(b)   Para hacer efectiva esta garantía, la Legislatura proveerá mediante ordenanza para la imposición anual de una contribución adicional especial, sin limitación en cuanto a tipo o cantidad, sobre toda la propiedad sujeta a contribución en el municipio, suficiente para pagar el principal de y los intereses sobre todos los bonos o pagarés de obligación general municipal y el interés sobre todos los pagarés en anticipación de bonos de obligación general municipal emitidos por el municipio, según venzan tales principales e intereses, excluyendo, sin embargo, cualquier interés que se haya provisto pagar del producto de la emisión de bonos de obligación general municipal. Antes de remitir a los municipios cualquier excedente en el Fondo de Redención que pudieran tener, el Fiduciario Designado deberá reservar aquella suma que permita cumplir con el pago anual máximo del principal e intereses de toda la deuda vigente y autorizada.

(c)   En términos generales, el primer gravamen operará de la siguiente manera: el Centro recaudará el producto de la Contribución Adicional Especial y cualesquiera otras contribuciones sobre el valor de la propiedad impuestas por el municipio. El Centro deberá depositar todo el producto de la Contribución Adicional Especial en la cuenta del municipio en el Fondo de Redención. Si el Fiduciario Designado determina que los depósitos en dicha cuenta en el Fondo de Redención no son suficientes para cubrir algún pago de principal de o intereses sobre cualquier Bono o Pagaré de Obligación General Municipal vigente o algún pago de intereses sobre cualquier Pagaré en Anticipación de Bonos de Obligación General Municipal vigente, el Fiduciario Designado notificará al Centro y el Centro deberá depositar en dicha cuenta una cantidad proveniente de los demás ingresos sujetos al primer gravamen establecido por este Artículo que, junto con los depósitos en dicho fondo, sea suficiente para

hacer dicho pago. La AAFAF, en consulta con el Centro, establecerá mediante reglamento el procedimiento específico para la operación de este primer gravamen.

(d)     El Fiduciario Designado, como fideicomisario del Fondo de Redención, pagará el principal de y los intereses sobre los Bonos o Pagarés de Obligación General Municipal y el interés sobre todos los Pagarés en Anticipación de Bonos de Obligación General Municipal del municipio de los recursos depositados en la cuenta del municipio en el Fondo de Redención. El Fiduciario Designado hará dichos pagos a nombre del municipio.

(e)     Una vez asegurada la reserva o la porción equivalente al pago durante los doce (12) meses siguientes del principal y de los intereses de los empréstitos, y una vez garantizado el pago de la deuda pública municipal, según lo determine el Fiduciario Designado de Fomento, de existir un exceso en el Fondo de Redención de la Deuda Pública Municipal, el Fiduciario Designado vendrá obligado a poner a la disposición del municipio dicho excedente. El excedente se podrá solicitar una vez durante cada año fiscal. El exceso en el Fondo de Redención se utilizará, en primer lugar, para el pago de deudas estatutarias vencidas, líquidas y exigibles incluyendo deudas con el Centro de Recaudación de Ingresos Municipales o deudas con cualquier entidad Gubernamental o corporaciones públicas. En caso de que el municipio haya provisto para el pago de tales deudas, podrá utilizar el excedente del Fondo de Redención para cualquier obligación o actividad que persiga un fin municipal legítimo".

CAPÍTULO 7: DISPOSICIONES MISCELÁNEAS.

Artículo 701.–Confirmación de Préstamos.

Todo bono o pagaré emitido por cualquier Entidad Gubernamental al BGF y todo préstamo otorgado por el BGF a una Entidad Gubernamental anterior a la fecha de vigencia de esta Ley, son confirmados y los mismos seguirán siendo obligaciones válidas y exigibles de acuerdo a sus términos.

Artículo 702.–Efecto Vinculante de la Transacción de Restructuración sobre las Entidades Gubernamentales.

Toda transacción efectuada conforme a esta Ley (incluyendo, pero sin limitarse a, aquellas transacciones efectuadas conforme a determinaciones hechas por la AAFAF o el BGF bajo esta Ley) serán válidas y vinculantes con respecto a toda Entidad

Gubernamental a la Fecha de Cierre. Excepto según se establezca expresamente en esta Ley, los Acuerdos Complementarios y la Escritura de Fideicomiso, ninguna Entidad Gubernamental tendrá derecho o reclamación adicional alguno contra el BGF, la Autoridad y el Fideicomiso y cualquier oficial, director, empleado agente u otro representante de estos, de cualquier naturaleza y tipo, ya existente u ocurriendo en o antes de la Fecha de Cierre. Se considera que cada Entidad Gubernamental renuncia, libera y descarga al BGF, la Autoridad y el Fideicomiso y sus oficiales, directores, empleados, agentes y representantes de dichas reclamaciones.

Artículo 703.–Falta de Autoridad y Legitimación Activa de Entidades Gubernamentales.

No obstante cualquier otra ley del Gobierno de Puerto Rico, ninguna Entidad Gubernamental tendrá autoridad o legitimación activa para cuestionar la validez de esta Ley, la Transacción de Restructuración, o cualquier otra transacción contemplada en esta Ley en cualquier tribunal local o federal.

Artículo 704.–Exculpación.

Ninguna Persona tendrá o incurrirá responsabilidad por cualquier causa de acción o de cualquier otra manera a cualquier Persona por cualquier acto (u omisión) conforme a esta Ley o la Modificación Cualificada.

Artículo 705.–Separabilidad.

Esta Ley se interpretará de tal manera para hacerla válida, en la medida que sea factible, de acuerdo a la Constitución de Puerto Rico y la Constitución de los Estados Unidos de América. Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera anulada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto de dicha sentencia quedará limitado a la cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de la misma que así hubiere sido anulada o declarada inconstitucional. Si la aplicación a una persona o a una circunstancia de cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera invalidada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará ni invalidará la aplicación del remanente de esta Ley a aquellas personas o circunstancias en que se pueda aplicar válidamente. Es la voluntad expresa e inequívoca de esta Asamblea Legislativa que los tribunales hagan cumplir las disposiciones y la aplicación de esta Ley en la mayor medida posible, aunque se deje sin efecto, anule, invalide, perjudique o declare inconstitucional alguna de sus partes, o aunque se deje sin efecto,