invalide o declare inconstitucional su aplicación a alguna persona o circunstancia. Esta Asamblea Legislativa hubiera aprobado esta Ley sin importar la determinación de separabilidad que el Tribunal pueda hacer.

Artículo 706.–Supremacía.

Las disposiciones de esta Ley prevalecerán sobre cualquier otra disposición general o específica de cualquier otra ley o reglamento del Gobierno de Puerto Rico que sea inconsistente con esta Ley.

Artículo 707.–Idioma que Prevalece.

Esta Ley se adoptará en español y en inglés. Si en la interpretación o aplicación de esta Ley surgiere algún conflicto entre el texto en inglés y el texto en español, prevalecerá el texto en inglés.

Artículo 708.–Vigencia.

Esta Ley comenzará a regir inmediatamente después de su aprobación.

ENGLISH VERSION OF THE GDB DEBT RESTRUCTURING ACT

STATEMENT OF MOTIVES

Introduction

Puerto Rico's fiscal and economic crisis has no precedent in our island's history. The actions and policy positions of the past caused the loss of capital market access and precipitated the collapse of our public financial system, for the first time in Puerto Rico's history. Actions that accelerated the island's economic contraction - which had been ongoing for more than a decade - and increased the exodus of Puerto Ricans to states in the mainland.

During the last administration a hostile relationship developed with financial market participants, including tens of thousands of Puerto Ricans that trusted their savings to the good name and credit of the Government. In addition, a hostile environment towards Puerto Rico developed within the U.S. Congress, based on the lack of transparency and honesty, while Puerto Rico was kept generating consistently negative media coverage, at the local, national and international level. For the first time, during that period, Puerto Rico stopped issuing audited financial statements after decades of uninterrupted compliance with such basic and essential requirement in public finance and the use of public funds.

Erroneous decisions caused the insolvency of the Government Development Bank for Puerto Rico (GDB or Bank) when it lost (i) a large part of its revenues from public debt payments and (ii) the ability to refinance its short and medium-term notes that served as a financing tool for its lending operations.

Root Causes of the Bank's Insolvency

The Bank was originally created pursuant to Act 252 of 1942, with the purpose of achieving economic and human resource development in Puerto Rico. Under Act 272 of 1945, GDB was further authorized to act as fiscal agent and financial advisor to the Government, its agencies and instrumentalities. Finally, pursuant to Act 17 of 1948, GDB's Organic Act was created establishing its authority and obligations.

The original mission of GDB was to safeguard the fiscal stability of Puerto Rico and promote its competitiveness to transform our economy into one of the most developed in the world, encouraging the social and economic improvement of our people. Before the García Padilla administration decided to take the path of "I don't care" ("me vale") that brought us to where we are today, for decades the Bank was considered one of Puerto Rico's most important and distinguished institutions, with over $14 billion in assets and a capital base of over $2 billion, notwithstanding certain actions taken to decapitalize and dry-up GDB's liquidity to fund the cost of a special communities' project under the Sila M. Calderón and Aníbal Acevedo Vilá administrations.

Notwithstanding GDB's capacity to adapt to the times and recover from the financial impacts resulting from failed public policies that caused chronic operational deficits beginning early in the XXI Century, the Bank's financial health began deteriorating little by little. Beginning with Fiscal Year 2001, the Government, its instrumentalities and public corporations began requiring greater support to manage their liquidity and the financings provided by the Bank. Against this backdrop, between 2009 and 2012 the Bank and the Government began implementing fiscal and economic development reforms, including the public-private partnership mechanism which received the support and recognition of the capital markets, local and external investors, as well as of the credit rating agencies. Yet, GDB once again had to play a key role in the management of such reform plans while continuing to support those entities that were dragging fiscal problems during most of the first decade of the new Century.

There is no doubt that the financial crisis in which Puerto Rico had been buried could have been avoided. However, the decision was made to spend more than the revenue and now we have to work with the results of the mistaken politics of the past. The foregoing has exacerbated by local and world events such as the government shutdown in 2006, an elevated public expenditure, the recurring overestimation of projections of economic growth, the population migration, the global financial crisis and

the 2008-2009 economic recession, the second largest in the history of the United States since the Great Depression of 1929, among other events.

During fiscal year 2007-2008 because of the persistent structural imbalance in the Government's public finances and the accelerated economic contraction, the public sector continued to be pressured, increasing its dependence in the GDB's financial strength to provide short-term financing and operational liquidity for the Government. The accumulation of irresponsible policies, coupled with the global financial crisis of 2008 and the temporary collapse of asset-backed commercial paper programs, became the perfect storm, leaving GDB vulnerable and in need of identifying a new source of internal financing.

During fiscal year 2008-2009 the global financial crisis upset many short and medium term financing programs used globally by financial institutions and corporations of all types, including governments and public entities to bring liquidity to their operations. GDB was no exception and found its principal source of financing in the program known as "Medium Term Senior Unsecured Notes".  Under this program, GDB was able to obtain financing for its lending practices at a cost-effective and fixed rate, allowing for better medium-term planning, improved profitability and a strengthened capital base. The operation of this program depended, as it did for any other institution, on having access to the capital markets and competitive interest rates.

During fiscal year 2011-2012, the diversification of the GDB investor base was accomplished.  Thanks to the strong credit rating of GDB and its good relations with the capital markets, the Government was able to restructure the maturity profile of the financing program to a longer term and diversify the Bank's investor base, protecting to a great degree Puerto Rican investors.

| FY 2010[1] | FY 2012[1] |
|---|---|
| Noteholders | Noteholders |
| 100% Local | 69% Local; 31% Stateside |

(1) GDB audited basic financial statements

During fiscal year 2015-2016, when the past administration announced the intention of defaulting on the payment of public debt, most of the loan portfolio of GDB remained in default, creating a domino effect in the financial structure of the Bank and the Government, forcing it to dramatically limit disbursements of deposits to municipalities, agencies and public corporations – causing a default of the Bank's Medium Term Senior Unsecured Notes program.

The loss of cash-flow from most of its loan portfolio and the activation of the "claw back" of certain revenue streams of public corporations led GDB to its current insolvency status. The irresponsible management of the institution leaves the current

administration of Governor Ricardo Rosselló-Nevares no other option than to undertake the orderly closure of the public corporation.

Governor Rosselló-Nevares entrusted his team at GDB and at the Puerto Rico Fiscal Agency and Financial Advisory Authority (AAFAF, by its Spanish acronym) to work on a consensual solution with the parties affected by the grave situation at the Bank. Since January of the current year, Governor Rosselló-Nevares team has worked incessantly in search of a solution that is sensible, consensual and that maximizes the value of assets for the Bank to mitigate the impact that its restructuring may have. The result of that effort and of the leadership of the Governor was the approval of a qualified modification under Title VI of PROMESA pursuant to which there is a consensual restructuring of GDB's obligations (public debt and municipal deposits, among others). With this legislation, we establish the legal framework for such restructuring which in turn ensures compliance with GDB's certified fiscal plan and protects the public interest, ensuring also that essential services from the Government, municipalities and other instrumentalities continue.

Furthermore, considering the current circumstances, the time and the information available, this legislation enables the most practical option to resolve, voluntarily, the Bank's restructuring with the objective of maximizing the recovery values for distribution to the corresponding stakeholders.

This legislation creates a public trust as an instrumentality of the Government, independent and separate from any government entity (including without limitation, GDB)

CHAPTER 1: GENERAL PROVISIONS AND DEFINITIONS

Article 101.-Title.

This Act shall be known and may be cited as the "Government Development Bank for Puerto Rico Debt Restructuring Act".

Article 102.-Public Policy and Legislative Findings.

The purpose of this Act is to establish the legislative framework for the Restructuring Transaction. The Legislative Assembly hereby finds that the Restructuring Transaction (i) has a public purpose and is in the best interests of the people of Puerto Rico, (ii) is fair and equitable for all creditors of GDB, (iii) is necessary to ensure compliance with the GDB Fiscal Plan, (iv) achieves fiscal responsibility for the people of Puerto Rico by providing for an orderly restructuring of the liabilities of GDB, (v) settles and resolves potential claims between GDB and other Government Entities, and (vi) permits the provision of essential public services by the Government of Puerto

Rico and other Government Entities.

Article 103.-Definitions.

The following terms shall have the meanings stated below:

(a)     "AAFAF"– means the Puerto Rico Fiscal Agency and Financial Advisory Authority.

(b)     "Act"– means this "Government Development Bank for Puerto Rico Restructuring Act".

(c)     "Ancillary Agreements"– means the Bond Indenture, the Transfer Agreement, the Servicing Agreement, and any other agreement or instrument entered into by the Recovery Authority or GDB in connection with, or in furtherance of, the Restructuring Transaction and in accordance with, or in furtherance of, the Qualifying Modification.

(d)     "Asset Manager"– means the Person or Persons designated by the Recovery Authority to act as asset manager and servicer of the Restructuring Property in accordance with the terms of the Ancillary Agreements.

(e)     "Authorized Activities"– means the activities authorized to be carried out by the Recovery Authority under Article 204 of this Act.

(f)     "Board of Trustees"– means the Board of Trustees of the Recovery Authority.

(g)     "Bond"– shall have the meaning provided in Section 5(2) of PROMESA.

(h)     "Bond Indenture"– means one or more trust agreements, bond indentures and any supplements thereto, or similar contracts or agreements, entered into by the Recovery Authority and the Indenture Trustee pursuant to which Restructuring Bonds are issued, establishing the rights and responsibilities of the Recovery Authority and of the holders of Restructuring Bonds issued thereunder and secured thereby, and confirming the statutory lien created pursuant to Article 402 of this "Act in the Restructuring Property in favor of the Restructuring Bonds".

(i)     "Chair"– means the chairperson of the Board of Trustees.

(j)     "Closing Date"– means the effective date of the Restructuring Transaction.

(k)    "Commonwealth Fiscal Plan"– means the Fiscal Plan for the Government of Puerto Rico certified by the Oversight Board on March 13, 2017, as the same may be amended from time to time.

(l)    "Designated Depositors"– means the Non-Municipal Government Entities having claims in respect of funds on deposit at GDB as of the Closing Date, after giving effect to the transactions set forth in Article 302 of this Act.

(m)    "Designated Deposits"– means the deposit liabilities of GDB to the Designated Depositors transferred to the Public Entity Trust pursuant to the Public Entity Deed of Trust.

(n)    "District Court"– means the United States District Court for the District of Puerto Rico.

(o)    "Effective Date"– means the date on which the Qualifying Modification becomes conclusive and binding pursuant to Section 601(m) of PROMESA.

(p)    "Excess CAE"– means proceeds of the special additional tax which GDB has certified as surplus from the Municipal Public Debt Redemption Fund (as defined in the "Municipal Financing Act") prior to January 1, 2017 pursuant to Article 20(e) of the "Municipal Financing Act", corresponding to fiscal years 2015, 2016 and 2017 and which are booked as on deposit in accounts at GDB in the name or for the benefit of certain municipalities. For the avoidance of any doubt, the term "Excess CAE" shall not include those proceeds of the special additional tax which AAFAF has certified as surplus from the Municipal Debt Redemption Fund (as defined in the "Municipal Financing Act") after January 1, 2017 pursuant to Article 20(e) of the "Municipal Financing Act", corresponding to fiscal years 2017 and beyond and which are deposited in the "Municipal Financing Act" accounts created in financial institutions outside of GDB in the name or for the benefit of each municipality.

(q)    "Excluded Assets"– means those assets of GDB that are not required to be transferred to the Recovery Authority in connection with the Restructuring Transaction pursuant to the terms of the Qualifying Modification, including, without limitation, the Public Entity Trust Assets.

(r)    "Entity Classification Election"– means an election under Section 301.7701-3 of the Treasury Regulations promulgated under the United States Internal Revenue Code of 1986, as amended.

(s)    "Financing Costs"– means all costs associated with the Restructuring Transaction, including, without limitation, the costs, fees and expenses to (i) issue, service, repay or refinance the Restructuring Bonds, whether such costs are incurred upon issuance of such Restructuring Bonds or over the term of the Restructuring Bonds, including, without limitation, any interest paid in kind, (ii) make payments as required by the Ancillary Agreements, (iii) pay any stamp, issuance or similar taxes and other charges related to the Restructuring Transaction, provided, that this provision does not limit in any way the exemption from taxes set forth in Articles 208 and 306 hereof, (iv) prepare for and enter into the Restructuring Transaction, (v) protect the Restructuring Property, including, without limitation, any collection, enforcement, sale, monitoring, protection, or settlement actions related to the Restructuring Property, (vi) confirm and protect the statutory lien on the Restructuring Property in favor of the Restructuring Bonds, in accordance with Article 402 of this Act, and (vi) perform all ongoing activities relating to the Restructuring Transaction.  For the avoidance of doubt, Financing Costs also includes pre-closing and post-closing administrative fees and expenses incurred in connection with all Ancillary Agreements.

(t)    "GDB"– means Government Development Bank for Puerto Rico.

(u)    "GDB Enabling Act"– means Act No. 17 of September 23, 1948, as amended.

(v)    "GDB Fiscal Plan"– means the Fiscal Plan for GDB certified by the Oversight Board on July 12, 2017, as the same may be amended from time to time.

(w)    "Government Entity"– means any agency, department, office, public corporation, trust, fund, system, instrumentality, political subdivision, taxing authority or municipality of the Government of Puerto Rico.

(x)    "Government of Puerto Rico"– means the Commonwealth of Puerto Rico and the government thereof.

(y)    "Indenture Trustee"– means the Person designated as trustee or indenture trustee under the Bond Indenture.

(z)    "Municipal Financing Act"– means Act 64-1996, as amended.

(aa)    "Non-Municipal Government Entity"– means a Government Entity that is

not a municipality of the Government of Puerto Rico.

(bb)   "Oversight Board"– means the Financial Oversight and Management Board for Puerto Rico established pursuant to Section 101 of PROMESA.

(cc)   "Participating Bond Claims"– means the Bonds of GDB that are subject to and bound by the Qualifying Modification.

(dd)   "Person"– means any natural person or legal entity, including, but not limited to, any Government Entity, or any individual, firm, partnership, joint venture, trust, estate, limited liability company, corporation of individuals, association, public or private corporation, organized or existing under the laws of Puerto Rico, the United States of America, or any other jurisdiction or of any state, municipality, political subdivision, taxing authority, agency or instrumentality of Puerto Rico, of the United States of America or any other jurisdiction, or any combination thereof.

(ee)   "PROMESA"– means the "Puerto Rico Oversight, Management, and Economic Stability Act", Pub. L. No. 114–187, 130 Stat. 549 (2016).

(ff)   "Public Entity Deed of Trust"– means the deed of trust (i) pursuant to which (a) the Public Entity Trust shall be created and (b) GDB shall irrevocably transfer the Public Entity Trust Assets and the Designated Deposits to the Public Entity Trust and (ii) that satisfies the conditions of the Qualifying Modification.

(gg)   "Public Entity Trust"– means the GDB Public Entity Trust created pursuant to the Public Entity Deed of Trust.

(hh)   "Public Entity Trust Assets"– means the assets identified in the Public Entity Deed of Trust for which legal and equitable title is to be irrevocably transferred by GDB to the Public Entity Trust as part of the Restructuring Transaction and which satisfy the conditions of the Qualifying Modification, and all assets, collections, fees, charges, proceeds, revenues, rents, insurance payments, income or other funds generated by, or received by the Public Entity Trust or GDB in respect of, any of the foregoing.

(ii)   "Qualifying Modification"– means the Restructuring Support Agreement dated May 17, 2017 and certified by the Oversight Board as a Qualifying Modification under Section 601(g)(2)(A) of PROMESA, as the same may be amended from time to time in accordance with its terms.

(jj)  "Recovery Authority"– means the GDB Debt Recovery Authority created pursuant to Article 201 of this Act.

(kk)  "Recovery Authority Assets"– means all legal and equitable right, title and interest in and to: (i) all assets of GDB that are in existence as of the Closing Date (other than Excluded Assets), including any assets of GDB (other than Excluded Assets) that are in existence as of the Closing Date but are identified after the Closing Date; (ii) the net proceeds, if any, from public entity loans, the proceeds of which are required to be transferred to the Recovery Authority pursuant to the Qualifying Modification; and (iii) the net proceeds, if any, from any causes of action (other than causes of action to enforce loans that constitute Excluded Assets, which shall be transferred to the Public Entity Trust), including contingent or unknown causes of action, the proceeds of which are required to be transferred to the Recovery Authority pursuant to the Qualifying Modification.

(ll)  "Residual Participating Bond Claims"– means the contingent and residual claims against GDB of each holder of a Participating Bond Claim for the unsatisfied portion of such holder's Participating Bond Claim, to be provided for pursuant to the Ancillary Agreements, from and after the Closing Date and until all of the Restructuring Property has been applied to payment in respect of the Restructuring Bonds in accordance with their terms, provided that the Residual Participating Bond Claims shall only be enforceable against GDB if and to the extent the Qualifying Modification, the Restructuring Bonds or the rights and liens of the Recovery Authority, the Indenture Trustee or the holders of the Restructuring Bonds in respect of the Restructuring Property or the Restructuring Bonds are rescinded or avoided or are otherwise made to be unenforceable in accordance with their terms as a result of legislative action or a final non-appealable determination by a court of competent jurisdiction.

(mm)  "Restructuring Bonds"– means the bonds issued by the Recovery Authority pursuant to this Act, the Bond Indenture and the Ancillary Agreements from time to time, having terms that conform to, and that are distributed in accordance with, the Qualifying Modification.

(nn)  "Restructuring Property"– means all legal and equitable right, title and interest in and to the Recovery Authority Assets (including, without limitation, the beneficial interest in property of GDB, the proceeds of which are required to be transferred to the Recovery Authority  in connection with the Restructuring Transaction pursuant to the terms of the Qualifying Modification) and all assets, collections, fees, charges, proceeds, revenues, rents, insurance payments, income or other funds

generated by, or received by the Recovery Authority, any Asset Manager or GDB in respect of the Recovery Authority Assets, including in respect of the administration or reinvestment thereof.

(oo)   "Restructuring Resolution"– means one or more resolutions of the Board of Trustees authorizing: (i) the issuance of the Restructuring Bonds and describing the terms thereof; (ii) receipt of the Recovery Authority Assets and ownership of the Restructuring Property, subject to the statutory lien created pursuant to Article 402 of this Act; and (iii) the payment of the Financing Costs, each in accordance with the terms of the Qualifying Modification.

(pp)   "Restructuring Transaction"– means the transactions contemplated by, or in furtherance of, the Qualifying Modification including, without limitation: (i) the irrevocable transfer of the Recovery Authority Assets to the Recovery Authority in consideration for the Recovery Authority's issuance of the Restructuring Bonds to the holders of Participating Bond Claims in exchange for their Participating Bond Claims; (ii) the issuance of the Restructuring Bonds by the Recovery Authority; (iii) the cancellation and extinguishment of the Participating Bond Claims; (iv) the irrevocable transfer of the Public Entity Trust Assets by GDB to the Public Entity Trust in consideration for the assumption by the Public Entity Trust of the Designated Deposits; (vi) the cancellation and extinguishment of the Designated Deposits; and (v) the provision for the Residual Participating Bond Claims.

(qq)   "Servicing Agreement"– means the asset management and servicing agreement by and between the Recovery Authority and the Asset Manager pursuant to which the Asset Manager shall manage and service the Restructuring Property.

(rr)   "Transfer Agreement"– means one or more transfer or similar contracts or agreements entered into by GDB and the Recovery Authority pursuant to which GDB shall irrevocably transfer all legal and equitable right, title and interest in and to the Recovery Authority Assets to the Recovery Authority.

CHAPTER 2: THE GDB DEBT RECOVERY AUTHORITY

Article 201.-Creation of the Recovery Authority.

The GDB Debt Recovery Authority is hereby created as a statutory public trust

and a governmental public instrumentality of the Commonwealth of Puerto Rico, independent and separate from any other Government Entity (including, without limitation, GDB). The Recovery Authority and its existence shall continue until one year and one day after all Restructuring Bonds, Financing Costs and other indebtedness of the Recovery Authority have been paid in cash in full or otherwise discharged pursuant to their terms. Upon the dissolution of the Recovery Authority, and only after the Restructuring Bonds, Financing Costs and other indebtedness of the Recovery Authority have been paid in cash in full or otherwise discharged pursuant to their terms, the ownership of any remaining Restructuring Property shall be transferred to the beneficiary of the Recovery Authority, the Commonwealth of Puerto Rico.

Article 202.-Separate Legal Existence.

The Recovery Authority is and shall be recognized for all purposes as a separate legal entity from the Government of Puerto Rico, GDB and any other Government Entity. It shall be operated independently, and its business and affairs shall be governed by or under the direction of its Board of Trustees. Any delay in remitting the Recovery Authority Assets, any commingling of the Restructuring Property with the assets of the Government of Puerto Rico, GDB or any other Government Entity, any servicing provided by GDB, and any other circumstances of the Restructuring Transaction in accordance with the Bond Indenture and the other Ancillary Agreements shall not defeat or impair the separate legal existence or independence of the Recovery Authority or the complete and unassailable ownership by the Recovery Authority of any of its assets.

Article 203.-Purpose of the Recovery Authority.

The Recovery Authority is created for the purpose of (1) issuing the Restructuring Bonds in order to (a) implement the Restructuring Transaction, (b) facilitate compliance with the GDB Fiscal Plan, and (c) facilitate the funding of essential government or public services by the Government of Puerto Rico and (2) owning and managing the Restructuring Property. The Recovery Authority is created and constituted to exercise essential government and public functions and the performance by the Recovery Authority of the activities and powers granted hereby shall be considered and constitute an essential function of the Commonwealth of Puerto Rico for the good of the people of Puerto Rico. The Recovery Authority is not created or organized, and its operations shall not be conducted, for the purpose of making a profit, and no part of the revenues or assets of the Recovery Authority shall inure to the benefit of or be distributable to any private person or entity, except to service and pay the Restructuring Bonds and pay fees and costs for actual services rendered as herein provided or as otherwise required to carry out the intent of this Act.

Article 204.-Recovery Authority's Activities.

The Recovery Authority's activities shall be limited to the following Authorized Activities:

(a)  Receiving the Recovery Authority Assets and owning the Restructuring Property;

(b)  adopting the Restructuring Resolution;

(c)  issuing the Restructuring Bonds from time to time,

(d)  entering into the Ancillary Agreements;

(e)  servicing or contracting for the servicing of the Restructuring Property and the Restructuring Bonds and for administrative services;

(f)  collecting, receiving, owning, enforcing, monitoring, selling and protecting the Restructuring Property or otherwise authorizing any of the foregoing, in accordance with the Ancillary Agreements and for the sole purpose of realizing on, or preserving, the value of the Restructuring Property or the proceeds therefrom, including, without limitation, by initiating necessary legal action (subject to Article 206 (g) of this Act);

(g)  fully accounting for and making all payments and allocating partial payments, in accordance with terms of the Ancillary Agreements;

(h)  entering into contracts and taking any other necessary or convenient actions with respect to realizing the maximum value of the Restructuring Property, including related to the collection, enforcement, sale, monitoring, protection, forbearance or settlement thereof consistent with the terms of the Ancillary Agreements;

(i)  preparing or directing the Asset Manager to prepare reports and financial statements as required by the Ancillary Agreements;

(j)  using or directing the use of the Restructuring Property in accordance with the Ancillary Agreements;

(k)  making an Entity Classification Election; and

(l)  taking any and all other actions as may be necessary or appropriate to effectuate the Restructuring Transaction and the Qualifying Modification.

Article 205.-Ancillary Powers.

In order to carry out the Authorized Activities, without limiting the foregoing, the Recovery Authority shall have the power to:

(a)     Sue and be sued;

(b)     adopt, alter and use a seal;

(c)     formulate, adopt, amend and revoke rules for the administration of its affairs, and such standards, rules and regulations that may be necessary or convenient to exercise and perform the Authorized Activities;

(d)     open and maintain bank accounts;

(e)     acquire, lease, hold and sell property;

(f)     have complete legal and equitable dominion over its properties (including the Restructuring Property);

(g)     make, execute and amend contracts and all other instruments necessary or convenient to perform the Authorized Activities, including, but not limited to, entering into contracts with one or more service providers to conduct such Authorized Activities and to commence any action to protect or enforce any right conferred upon it by law, contract or other agreement;

(h)     appoint and remove officers, agents and employees, establish their compensations, powers and duties;

(i)     pay its operating expenses and the Financing Costs;

(j)     procure insurance against loss in connection with its activities, properties or assets;

(k)     invest funds and establish and maintain reserves and apply the Restructuring Property as required by the Ancillary Agreements;

(l)     indemnify the members of the Board of Trustees, its officers, agents, employees, contractors and other third parties;

(m)     acquire by the exercise of eminent domain any real property in accordance

with applicable law, but solely to the extent that such acquisition is deemed necessary by the Recovery Authority to maximize the value of any assets that are part of the Restructuring Property;

(n)    exercise such other powers, not inconsistent herewith, as are conferred upon trusts by the laws of Puerto Rico and to exercise all its powers within and without Puerto Rico to the same extent as natural persons might or could do;

(o)    take any action or measure necessary or convenient to carry out its purposes and exercise the powers expressly granted in this Section;

(p)    delegate to its officers, agents, employees or contractors (including, without limitation, the Asset Manager and any collateral monitor) authority to take actions in furtherance of this Act; and

(q)    execute, file and amend any relevant returns, forms, elections or statements with any governmental authority.

Article 206.-Prohibited Activities.

While the Restructuring Bonds are outstanding, the Recovery Authority shall not be authorized to:

(a)    Merge or consolidate, directly or indirectly, with any Person;

(b)    incur, guarantee or otherwise become obligated to pay any debt or other obligations other than the Restructuring Bonds and the Financing Costs;

(c)    pledge, create or record liens on any of its properties (including the Restructuring Property), other than the pledge to secure the payment of the Restructuring Bonds and the Financing Costs created pursuant to Article 402 of this Act;

(d)    engage in business activities other than as expressly authorized in this Act;

(e)    dissolve, liquidate, transfer or sell any or all of the Restructuring Property, except as permitted under the Ancillary Agreements;

(f)    pursue any collection or enforcement action with respect to bonds, loans or notes of any Non-Municipal Government Entity that are part of the Restructuring Property and are outstanding as of the Effective Date, other than enforcing any and all rights and remedies thereunder in a proceeding

under Title III or Title VI of PROMESA in respect of any such Government Entity and only to the extent necessary and appropriate to ensure that the Recovery Authority receives a distribution (if any) in such proceeding consistent with the distributions to creditors holding claims with the same legal priority as the claims of the Recovery Authority; and

(g)     take any other action that is inconsistent with the Recovery Authority's purpose set forth in this Act or ancillary thereto.

Article 207.-Board of Trustees.

The powers of the Recovery Authority shall be exercised and its general policy and strategic management shall be determined by the Board of Trustees.

(a)     Composition of the Board of Trustees.

The Board of Trustees shall be composed of three (3) members, who shall meet the requirements set forth in Article 207 (b)(iii) of this Act and shall be appointed by, and serve at the pleasure of, the Governor of Puerto Rico.

(b)     General Provisions regarding the Board of Trustees.

(i)     Each member of the Board of Trustees shall be appointed for a term of three (3) years, provided that an individual may serve consecutive terms as an appointed member;

(ii)    each member of the Board of Trustees shall be entitled to one (1) vote;

(iii)   each member of the Board of Trustees shall satisfy the independence and qualification standards (including that no member of the Board of Trustees may be an officer, employee or director of any Government Entity) set forth in the Ancillary Agreements;

(iv)    all decisions and actions of the Board of Trustees shall require the affirmative vote of the majority of the members of the Board of Trustees at the time serving; and

(v)     the members of the Board of Trustees shall select a Chair from among themselves.

(c)     Vacancies.

In the event of a vacancy in the office of a member of the Board of Trustees by death, removal, resignation or otherwise, a successor member who meets the requirements set forth in Article 207 (b)(iii) of this Act shall be appointed by, and shall serve at the pleasure of, the Governor of Puerto Rico.

(d)     Compensation.

Members of the Board of Trustees shall receive such compensation as is authorized pursuant to the Ancillary Agreements.

(e)     Adoption and Amendment of Rules.

As soon as practicable after the appointment of all members and appointment of the Chair, the Recovery Authority shall adopt rules and procedures governing its activities under this Act. The Board of Trustees shall be entitled to amend such rules and procedures from time to time.

(f)     Quorum.

A majority of the members of the Board of Trustees at the time serving shall constitute a quorum to make decisions or exercise any power or function of the Recovery Authority. Any one or more members may participate in a meeting of the Board of Trustees by teleconference or similar communications equipment. Participation by such means shall constitute presence in person at the meeting. Any action necessary or allowed in any meeting of the Board of Trustees shall be authorized with no need for a meeting, insofar as all members of the Board of Trustees give their written consent concerning such action.

(g)     Delegation.

The Board of Trustees may delegate to one or more of the members, or to the Recovery Authority's officers, agents and employees, such powers and duties as the Board of Trustees may deem appropriate.

(h)     Protective U.S. Federal Income Tax Classification Election.

Any member of the Board of Trustees and any officer of the Recovery Authority shall be authorized to sign IRS Form 8832 on behalf of the Recovery Authority to effect an Entity Classification Election.

Article 208.-Tax Exemption.

(a)   It is hereby found and declared that the activities of the Recovery Authority are primarily for the benefit of the people of Puerto Rico, for the improvement of their welfare and prosperity, and for a public purpose, and the Recovery Authority shall be regarded as performing an essential governmental function in carrying out the provisions of this Act.

(b)   The Recovery Authority shall be totally exempt from, and shall not be required to pay any kind of taxes, assessments, licenses, stamps, fees or other similar charges levied by the Government of Puerto Rico or any Government Entity upon any of the property it owns, possesses, holds or uses or on its activities, or upon any income, payment or gain derived therefrom.

(c)   The transfer of the Recovery Authority Assets by GDB to the Recovery Authority shall be totally exempt from all kinds of taxes, assessments, licenses, stamps, fees and other charges levied by the Government of Puerto Rico or any Government Entity, including but not limited to, internal revenue stamps and vouchers related to the execution of public deeds, petitions (instancias) and documents, as well as from all other fees and payments for their recordation at the Registry of the Property.

(d)   The Restructuring Bonds, including, but not limited to, any payments, income or gain with respect to the Restructuring Bonds and the transfer of the Restructuring Bonds, shall, at all times, be totally exempt from all kinds of taxes, assessments, licenses, stamps, fees and other charges levied by the Government of Puerto Rico or any Government Entity. Holders and beneficial owners of the Restructuring Bonds shall not be subject to any tax return, tax reporting or similar requirement in respect of the Government of Puerto Rico or any Government Entity by reason of holding, owning or transferring the Restructuring Bonds.

(e)   The Restructuring Bonds shall at all times be considered "debt" for purposes of all taxes levied by the Government of Puerto Rico and any Government Entity, including but not limited to income taxes.

Article 209.–Inapplicability of Certain Laws.

The following laws or provisions shall not apply to the Recovery Authority:

(a)   Chapter 4 of Act 26-2017, as amended, known as the "Fiscal Plan

Compliance Act";

(b)     Act 1-2012, as amended, known as the "Puerto Rico Government Ethics Act of 2011";

(c)     Act 219-2012, as amended, known as the "Trusts Act";

(d)     Act 106-2006, as amended, known as the "Commonwealth of Puerto Rico Government Fiscal Reform Act of 2006";

(e)     Act 184-2004, as amended, known as the "Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico";

(f)     Act 237-2004, as amended, known as the "Act to Establish Uniform Parameters for Contracting Professional and Consulting Services by Agencies and Instrumentalities of the Government of Puerto Rico";

(g)     Act 197-2002, as amended, known as the "Act to Regulate the Transition Process of the Government of Puerto Rico";

(h)     Article 2.001 of Act 78-2001, as amended, known as the "Commonwealth of Puerto Rico Electoral Law";

(i)     Act 38-2017, known as the "Uniform Administrative Procedures Act of the Government of Puerto Rico";

(j)     Act No. 164 of July 23, 1974, known as the "General Services Administration Act";

(k)     Act No. 230 of July 23, 1974, as amended, known as the "Government Accounting Act"; and

(l)     Act 3-2017, known as the "Law to Address the Economic, Fiscal and Budgetary Crisis and Ensure the Functioning of the Government of Puerto Rico"."

## CHAPTER 3: THE GDB PUBLIC ENTITY TRUST

Article 301.–Creation of the Public Entity Trust.

GDB shall be authorized to execute, effective as of the Closing Date, a Public Entity Deed of Trust to create and establish the GDB Public Entity Trust for the benefit of the Designated Depositors and to set forth in such Public Entity Deed of Trust such

terms and conditions related to the operation thereof. Upon its creation, the Public Entity Trust shall be a public trust and governmental instrumentality of the Commonwealth of Puerto Rico, independent and separate from any other Government Entity (including, without limitation, GDB and the Recovery Authority). The Secretary of Treasury of the Government of Puerto Rico is hereby authorized to appear in the Public Entity Deed of Trust on behalf of the Designated Depositors and to agree to the terms and conditions contained therein.

Article 302.–Obligations of Non-Municipal Government Entities after the Closing Date.

Notwithstanding any other law of the Government of Puerto Rico, effective as of the Closing Date, the balance of liabilities owed between any Non-Municipal Government Entity and GDB shall be automatically determined by applying the outstanding balance of any deposit of a Non-Municipal Government Entity against the outstanding balance of any loan of such Non-Municipal Government Entity owed to GDB or of any bond or note of such Non-Municipal Government Entity held by GDB as of such date (other than any loan, bond or note of a Non-Municipal Government Entity secured by a mortgage over real property) in a manner consistent with the conditions of the Qualifying Modification, without the need for any further action. Such application shall be effected by reducing any remaining installments of principal in inverse order of maturity and shall not otherwise affect the repayment schedule of the corresponding bond, note or loan. For purposes hereof, all agencies, departments, offices and instrumentalities of the central government shall be deemed to be the same Government Entity. The remaining balances of the bonds, notes or loans and of the deposits of the Non-Municipal Government Entities shall be those certified by AAFAF.

Article 303.–Transfer of the Public Entity Trust Assets.

Effective as of the Closing Date, GDB is hereby authorized to transfer the Designated Deposits and the Public Entity Trust Assets to the Public Entity Trust pursuant to the Public Entity Deed of Trust in order to satisfy the conditions of the Qualifying Modification. A transfer of the Public Entity Trust Assets by GDB to the Public Entity Trust pursuant to the Public Entity Deed of Trust shall be treated as an irrevocable, non-voidable and absolute transfer of all of GDB's legal and equitable right, title and interest (as a true sale), and not a pledge or other financing, of the Public Entity Trust Assets. Upon the transfer of the Public Entity Trust Assets to the Public Entity Trust and the assumption by the Public Entity Trust of the Designated Deposits, the Designated Depositors shall, immediately and forever, and without further actions or documentation, cease to have any right, interest or claim against GDB or any of its assets, or any successors or assigns thereof (other than the Public Entity Trust).

Article 304.–Trustee of the Public Entity Trust.

The trustee of the Public Entity Trust shall have such powers as are conferred to it in the Public Entity Deed of Trust. GDB shall initially act as trustee of the Public Entity Trust, provided that AAFAF shall be authorized to act as trustee or to designate any other Person to act as trustee of the Public Entity Trust upon GDB's resignation or in the event that GDB is otherwise unable to continue acting as trustee of the Public Entity Trust, as determined by AAFAF.

Article 305.–Distribution of Public Entity Trust Assets.

The Public Entity Deed of Trust shall set forth the manner in which the Public Entity Trust Assets shall be distributed among the Designated Depositors.

Article 306.–Tax Exemption.

(a)     The Public Entity Trust shall be totally exempt from, and shall not be required to pay any kind of taxes, assessments, licenses, stamps, fees or other similar charges levied by the Government of Puerto Rico or any Government Entity upon any of the property it owns, possesses, holds or uses or on its activities, or upon any income, payment or gain derived therefrom.

(b)     The transfer of the Public Entity Trust Assets by GDB to the Public Entity Trust shall be totally exempt from all kinds of taxes, assessments, licenses, stamps, fees and other charges levied by the Government of Puerto Rico or any Government Entity, including but not limited to, internal revenue stamps and vouchers related to the execution of public deeds, petitions (instancias) and documents, as well as from all other fees and payments for their recordation at the Registry of the Property.

Article 307.–Puerto Rico Trusts Act.

The provisions of Act 219-2012, as amended, known as the "Trusts Act" shall not be applicable to the Public Entity Trust.

CHAPTER 4: THE RESTRUCTURING TRANSACTION

Article 401.–Issuance of the Restructuring Bonds.

(a)     From and after the Effective Date, the Recovery Authority shall be authorized to issue the Restructuring Bonds, from time to time, pursuant to the terms of the Restructuring Resolution, the District Court order

approving the Qualifying Modification and the Ancillary Agreements.

(b)    The Restructuring Bonds may be issued from time to time in one or more tranches pursuant to the Bond Indenture under the terms and conditions authorized by the Recovery Authority and set forth in the Restructuring Resolution.

(c)    The Restructuring Bonds shall be dated, shall bear interest at such rates and shall mature at such time or times, not less than one (1) year and not exceeding twenty-five (25) years from their date or dates of issuance, as may be determined by the Recovery Authority and authorized in the Restructuring Resolution in accordance and consistent with the Qualifying Modification. The Recovery Authority shall determine the form of the Restructuring Bonds and the manner of execution of the Restructuring Bonds, and shall fix the denomination or denominations of the Restructuring Bonds and the place or places of payment of principal thereof and interest thereon and the other terms thereof, all in accordance and consistent with the Qualifying Modification.

(d)    The Restructuring Bonds shall be payable solely from the Restructuring Property in accordance with the terms of the Bond Indenture and the other Ancillary Agreements, without recourse to the credit or any other assets of the Recovery Authority or GDB (other than the Residual Participating Bond Claim).

(e)    The Restructuring Bonds shall not constitute a debt of the Government of Puerto Rico or of any public corporation or instrumentality of the Government of Puerto Rico other than the Recovery Authority. This statement shall be included in the Restructuring Bonds and the disclosure documentation.

Article 402.-Statutory Lien on the Restructuring Property.

The Restructuring Bonds and the Financing Costs shall automatically, upon the issuance of the Restructuring Bonds, be secured by a statutory lien on the Restructuring Property in favor of the Indenture Trustee for the benefit of the Holders of the Restructuring Bonds, which shall be senior to any other lien encumbering the Restructuring Property (except for valid liens and encumbrances existing as of the effective date of this Act or that arise in the ordinary course of business after the effective date of this Act and are existing as of the Closing Date, in each case with respect to any real estate assets and any personal property assets related thereto that are part of the Restructuring Property) and may be enforced pursuant to the terms of the Ancillary Agreements.   Such statutory lien shall occur automatically and shall

automatically be perfected, valid and binding from and after the Closing Date, in any case without any further act or agreement. No instrument needs to be delivered or recorded in any official record or in any government registry or office in order to perfect or continue such statutory lien or to establish or maintain the priority thereof. No commingling of any Restructuring Property with any other property of GDB or any other party shall limit, defeat, impair or interfere with such statutory lien.

Article 403.-Authorization of Actions by GDB and the Recovery Authority.

Notwithstanding any provision of the GDB Enabling Act or of any other act of the Government of Puerto Rico, on and after the Effective Date, GDB or the Recovery Authority, as the case may be, shall be authorized to: (i) irrevocably transfer the Recovery Authority Assets to the Recovery Authority,  subject to the statutory lien created pursuant to Article 402 of this Act; (ii) issue the Restructuring Bonds to the holders of the Participating Bond Claims; (iii) provide for the cancellation and extinguishment of the Participating Bond Claims upon the exchange of the Restructuring Bonds for the Participating Bond Claims; (iv) transfer the Public Entity Trust Assets to the Public Entity Trust in consideration for the assumption by the Public Entity Trust of the Designated Deposits; (v) pay the Financing Costs in accordance with the terms of the Qualifying Modification; (vi) provide for the Residual Participating Bond Claims; (vii) confirm the statutory lien on the Restructuring Property created pursuant to Article 402 of this Act; and (viii) take any and all other actions necessary or convenient to carry out the Restructuring Transaction.

Article 404.-Transfer of the Recovery Authority Assets.

(a)     The Recovery Authority Assets shall be transferred by GDB to the Recovery Authority, on the Closing Date and from time to time thereafter, in accordance with the Transfer Agreement, the other Ancillary Agreements and the Qualifying Modification. Each transfer of the Recovery Authority Assets by GDB to the Recovery Authority shall be treated as an irrevocable, non-voidable and absolute transfer of all of GDB's legal and equitable right, title and interest (as a true sale), and not a pledge or other financing, of the Recovery Authority Assets. On the Closing Date, the holders of Participating Bond Claims, whether or not outstanding on such date, and all other creditors of GDB (including depositors), shall, immediately and forever, and without further actions or documentation, cease to have any right, interest or claim against GDB or any of its assets, or any successors or assigns thereof (other than the Residual Participating Bond Claim). For the avoidance of doubt, the foregoing shall not affect the statutory lien created pursuant to Article 402 of this Act.

(b)   The transfer of the Recovery Authority Assets by GDB to the Recovery
Authority, as authorized by the Qualifying Modification, shall be valid,
irrevocable, non-voidable and binding. Such transfer is made in good faith
for fair consideration and reasonably equivalent value, and in furtherance
of the public purposes of this Act, and shall not constitute a transfer in
violation of the GDB Enabling Act, the "Municipal Financing Act",
Articles 1243, 1244 and 1249 of the Puerto Rico Civil Code or any
analogous provision or other legal theory or of the terms of any of the
Recovery Authority Assets. Upon the Closing Date and any upon
subsequent transfers, respectively, the Recovery Authority Assets shall
vest in the Recovery Authority free and clear of all claims (other than for
valid liens and encumbrances existing as of the effective date of this Act or
that arise in the ordinary course of business after the effective date of this
Act and are existing as of the Closing Date, in each case with respect to
any real estate assets and any personal property assets related thereto that
are part of the Restructuring Property) except for claims by the Recovery
Authority, the Indenture Trustee or the holders of the Restructuring
Bonds.

(c)   All contracts or other agreements, whenever created or arising, that are
part of the Recovery Authority Assets (including, without limitation, any
notes, loan agreements or collateral agreements) and to which any
Government Entity is a party shall be exempt from recordation in the
Office of the Controller of Puerto Rico notwithstanding the transfer of the
Recovery Authority Assets by GDB to the Recovery Authority.

(d)   Notwithstanding the provisions of any other law of the Government of
Puerto Rico, any real estate asset that is part of the Recovery Authority
Assets shall be transferred to the Recovery Authority pursuant to the
Transfer Agreement, without the need for any further action (including,
without limitation, the execution of a deed of purchase and sale or
transfer), and the registrars of the property shall be required to record
such real properties in the Registry of the Property in the name of the
Recovery Authority and, if so requested, to record the statutory lien with
respect thereto created pursuant to Article 402 of this Act, upon the
presentation of a petition (instancia) to that effect accompanied by a copy
of the Transfer Agreement and which identifies the real properties that are
part of the Recovery Authority Assets, provided, however, that the non-
occurrence of such recordation shall have no impact on the rights of the
Recovery Authority with respect to such real estate asset or on the
perfection, priority or enforceability of such statutory lien.

(e)      For the avoidance of doubt, no debtor to the Recovery Authority shall have any right to set off any debt owed by GDB, the Recovery Authority or any other Government Entity to such Person against any debt of such Person to the Recovery Authority, including, without limitation, with respect to the Restructuring Property.

Article 405.-Right to Apply for the Appointment of a Receiver.

Upon the occurrence of an event of default under the Ancillary Agreements and the continuation of such event of default for a period of thirty (30) days, any holder or holders of the Restructuring Bonds (subject to any contractual limitation as to a specific percentage of such holders), or trustee therefor, shall have the right to apply to any Commonwealth or Federal court of competent jurisdiction in Puerto Rico for the appointment of a receiver for the Recovery Authority.  Subject to any limitation provided by the Ancillary Agreements, the receiver so appointed shall have, hold, use, operate, manage, and control the property of the Recovery Authority, including the Restructuring Property, and shall exercise all the rights and powers of the Recovery Authority with respect to such property as the Recovery Authority itself might do.  The receiver shall act under the direction and supervision of the court and shall at all times be subject to the orders and decrees of the court and may be removed thereby.

Article 406.-Residual Participating Bond Claim.

Notwithstanding the cancellation of the Participating Bond Claims as part of the Restructuring Transaction, each holder of a Participating Bond Claim shall have a Residual Participating Bond Claim against GDB. Such Residual Participating Bond Claim shall only be enforceable against GDB if and to the extent the Qualifying Modification, the Restructuring Bonds or the rights and liens of the Recovery Authority, the Indenture Trustee or the holders of the Restructuring Bonds in respect of the Restructuring Property or the Restructuring Bonds are rescinded or avoided or are otherwise made to be unenforceable in accordance with their terms as a result of legislative action or a final non-appealable determination by a court of competent jurisdiction.

Article 407.-Government of Puerto Rico Non-Impairment Covenant.

The Government of Puerto Rico hereby agrees and covenants with any Person that acquires the Restructuring Bonds that it will not, and no Government Entity shall be authorized to, impair, limit, restrict, rescind, delay or modify the rights or powers of the Recovery Authority, the Indenture Trustee or the holders of the Restructuring Bonds under this Act or under or in respect of the Restructuring Property, or the Recovery Authority's ability to meet its obligations to its bondholders until the Restructuring Bonds, together with the interest thereon, and all amounts and

obligations under Ancillary Agreements, have been completely paid in cash in full or otherwise discharged in accordance with their terms; provided, however, that any actions or omissions by the Government of Puerto Rico or by any Government Entity relating to appropriations or funding pursuant to the Government Fiscal Plan shall not be deemed to be a violation of this Article 407. The Government of Puerto Rico further agrees and covenants that no amendment to this Act shall impair, limit, restrict, delay or modify any obligation or commitment of (i) the Recovery Authority to the holders of the Restructuring Bonds or (ii) GDB to the holders of the Residual Participating Bond Claims.

## CHAPTER 5: RECALCULATION OF MUNICIPAL OBLIGATIONS AND PAYMENTS TO MUNICIPALITIES

Article 501.-Recalculation of Certain Municipal Obligations.

Notwithstanding any other law of the Government of Puerto Rico (including, without limitation, the "Municipal Financing Act", as amended pursuant to this Act), the principal amount of any bond, note and/or loan of any municipality of the Government of Puerto Rico held by GDB shall be automatically reduced by operation of law as of the Closing Date by an amount equal to the balance of any proceeds of such bond, note and/or loan that were not disbursed to such municipality and are held on deposit at GDB on the Closing Date pursuant to the "Municipal Financing Act", consistent with the conditions of the Qualifying Modification, without the need for any further action. Such reduction shall be effected by reducing any remaining installments of principal in inverse order of maturity and shall not otherwise affect the repayment schedule of the bond, note or loan. The remaining balances of the municipal loans shall be those certified by AAFAF. After the effective date of this Act, all future interest payments on said bonds, notes and/or loans shall be computed based on the remaining balance of the municipal loans pursuant to this Article 501, and as certified by AAFAF. Nothing contained in this Act shall be construed to prohibit or limit municipalities from refinancing their current bonds, notes or loans through another financial institution pursuant to the "Municipal Financing Act".

Article 502.-Payment of Excess CAE.

Notwithstanding any other law of the Government of Puerto Rico (including, without limitation, the "Municipal Financing Act", as amended pursuant to this Act), on the Closing Date, GDB shall pay, in cash, to each municipality that has Excess CAE an amount equal to 55% of the undisbursed Excess CAE corresponding to such municipality, consistent with the conditions of the Qualifying Modification. The remaining portion of such undisbursed Excess CAE shall be discharged as of the Closing Date, and no such municipality shall have any further rights or claims with respect thereto and GDB shall have no further liability or obligation thereunder.

Article 503.-Disposition of Restructuring Bonds.

Notwithstanding any other law or regulation of the Government of Puerto Rico, any Government Entity, including any Municipality, that acquires Restructuring Bonds as a result of the Restructuring Transaction shall be free to dispose of, or grant a security interest over, said Restructuring Bonds without any limitation and under such terms and conditions as such Government Entity determines appropriate in its discretion.

Article 504.-Limitation and Mediation of certain Claims against Municipalities.

From the Closing Date until June 30, 2019, no Person having a claim against a municipality related to a capital improvement project financed with a bond, note or loan subject to recalculation pursuant to Article 501 of this Act shall commence or continue a judicial, administrative, or other action or proceeding against such municipality with respect to said claim. Notwithstanding the foregoing, any such Person may commence or continue litigation before June 30, 2019 solely to require the municipality to participate in mediation. The goal of such mediation process shall be to reach a consensual agreement that may allow the establishment of an alternative repayment plan or any other alternative satisfactory to the parties, which shall be reflected in the corresponding municipality's fiscal year 2020 budget. The mediation process authorized herein shall be governed, insofar as it is not incompatible with this Act, by the provisions of Act No. 19 of September 22, 1983, as amended, as well as by any regulations approved by the Puerto Rico Supreme Court regarding mediation. In those cases in which no agreement is reached through the mediation process and in which, after a judicial process, a final and unappealable judgment is entered against a municipality, the provisions of Article 13 of Act 3-2017 shall apply to the payment of such judgment. Each party shall bear its own expenses and attorneys' fees with respect to such mediation process, as well as with respect to any litigation commenced or continued after June 30, 2019.  Mediator fees and related costs shall be paid by the parties on equal parts, unless otherwise agreed. Nothing herein shall be construed as to prohibit any municipality from making any payment with respect to claims subject to this Article 504.  Finally, this Article 504 shall always be interpreted in the manner most favorable for the municipalities of the Government of Puerto Rico.

CHAPTER 6: AMENDMENTS TO OTHER LAWS.

Article 601(a).-Article 2 of Act 80-1991, as amended, known as the "Enabling Act of the Municipal Revenue Collection Center", is hereby amended to redesignate items (a) through (g) as items (b) through (h), respectively, to redesignate items (h) through (p) as items (j) through (r), respectively and to add new items (a) and (i), to read in their entirety as follows:

"Article 2.–Definitions.

(a)     AAFAF.– shall mean the Puerto Rico Fiscal Agency and Financial Advisory Authority.

(b)     Public Agency...

(c)     Base Year...

(d)     Fiscal Year...

(e)     Government Bank...

(f)     Center...

(g)     Commissioner...

(h)     Executive Director...

(i)     Designated Trustee.– shall mean AAFAF or one or more private financial institution(s) designated by AAFAF, provided that any such financial institution shall be authorized to act as depositary of public funds pursuant to Act 69-1991, as amended, known as the "Act to Regulate the Deposit of Public Funds and to Provide for their Security", and to act as trustee under the laws of the Government of Puerto Rico. Notwithstanding the foregoing, the Government Bank shall act as Designated Trustee until AAFAF assumes such functions or designates a financial institution that complies with the requirements set forth in the foregoing paragraph to assume such functions, which shall occur on or prior to the Closing Date (as such term is defined in the "Government Development Bank for Puerto Rico Debt Restructuring Act").

(j)     Fund...

(k)     General Fund...

(l)     Commonwealth Government...

(m)     Board...

(n)     Municipality or Municipal Government...

(o)    Person...

(p)    Net internal revenues...

(q)    Secretary...

(r)    Additional Lottery System..."

Article 601(b).-A new Article 26 is added to Act 80-1991, as amended, known as the "Enabling Act of the Municipal Revenue Collection Center", to read in its entirety as follows:

"Article 26.-Designated Trustee.

All references to "Government Development Bank for Puerto Rico", "Government Development Bank", "Government Bank" or "Bank" in Articles 4, 15, 17, 18, and 22 of this Act are hereby replaced with "Designated Trustee."

Article 602(a).-A new Article 2.12 is hereby added to Act 83-1991, as amended, known as the "Municipal Property Tax Act", to read in its entirety as follows:

"Article 2.12.-Definitions.

For purposes of this Title, the following terms shall have the following definitions:

(a)    AAFAF.– shall mean the Puerto Rico Fiscal Agency and Financial Advisory Authority.

(b)    Designated Trustee.– shall mean AAFAF or one or more private financial institution(s) designated by AAFAF, provided that any such financial institution shall be authorized to act as depositary of public funds pursuant to Act 69-1991, as amended, known as the "Act to Regulate the Deposit of Public Funds and to Provide for their Security", and to act as trustee under the laws of the Government of Puerto Rico. Notwithstanding the foregoing, the Government Development Bank for Puerto Rico shall act as Designated Trustee until AAFAF assumes such functions or designates a financial institution that complies with the requirements set forth in the foregoing paragraph to assume such functions, which shall occur on or prior to the Closing Date (as such term is defined in the "Government Development Bank for Puerto Rico Debt Restructuring Act")."

Article 602(b).-A new Article 2.13 is hereby added to Act 83-1991, as amended, known as the "Municipal Property Tax Act", to read in its entirety as follows:

"Article 2.13.-Designated Trustee.

All references to "Government Development Bank for Puerto Rico", "Government Development Bank", "Government Bank" or "Bank" in Articles 2.04(a) and (c), 2.05, 2.06 and 2.09 and the second paragraph of Article 2.11 of this Act are hereby replaced with "Designated Trustee"."

Article 603(a).-Article 3 of Act 64-1996, as amended, known as the "Municipal Financing Act of 1996", is hereby amended to redesignate items (a) through (o) as items (b) through (p), respectively, redesignate items (p) through (aa) as items (r) through (cc), respectively, and to add new articles (a) and (q), to read in their entirety as follows:

"(a)  "AAFAF".- shall mean the Puerto Rico Fiscal Agency and Financial Advisory Authority.

(b)  "Mayor"...

(c)  "Legislature"...

(d)  "Government Bank"...

(e)  "Special obligation bonds, notes or instruments"...

(f)  "Municipal general obligation bonds or notes"...

(g)  "Refinancing bonds, notes or instruments"...

(h)  "Revenue bonds"...

(i)  "Center"...

(j)  "Surtax"...

(k)  "Basic tax"...

(l)  "Special tax"...

(m)  "Cost"...

(n)  "State of Emergency"...

(o)     "Excess in the Redemption Fund"...

(p)     "SGELF"...

(q)     "Designated Trustee".- shall mean AAFAF or one or more private financial institution(s) designated by AAFAF, provided that any such financial institution shall be authorized to act as depositary of public funds pursuant to Act 69-1991, as amended, known as the "Act to Regulate the Deposit of Public Funds and to Provide for their Security", and to act as trustee under the laws of the Government of Puerto Rico. Notwithstanding the foregoing, the Government Bank shall act as Designated Trustee until AAFAF assumes such functions or designates a financial institution that complies with the requirements set forth in the foregoing paragraph to assume such functions, which shall occur on or prior to the Closing Date (as such term is defined in the "Government Development Bank for Puerto Rico Debt Restructuring Act").

(r)     "Redemption Fund". Shall mean the trust known as the Municipal Public Debt Redemption Fund established by the Center with the Designated Trustee. This trust has an account for each municipality in which the Center deposits the entire product of the special surtax imposed by each municipality, and any other resource from other sources, as established in Article 20 of this Act, which is needed to service the obligations evidenced by municipal general obligation bonds or notes, or notes in advance of general obligation bonds of each municipality. Every quarter, the Designated Trustee shall remit to the municipalities the interest generated by the deposits to their accounts in the Redemption Fund.

(s)     "Governor"...

(t)     "Municipal retail sale and use tax"...

(u)     "Instrument or credit instrument"...

(v)     "Bidding Board"...

(w)     "Municipality"...

(x)     "Notes in advance of bonds"...

(y)     "Notes or instruments in advance of taxes and revenues"...

(z)   "Revenue generating projects"...

(aa)   "Refinancing"...

(bb)   "Secretary"...

(cc)   "Service"..."

Article 603(b).-Article 20 of Act 64-1996, as amended, known as the "Municipal Financing Act of 1996", is hereby amended to read as follows:

"Article 20.-Provision for the payment of general municipal obligations, first lien, use of the surplus in the municipal public debt redemption fund.

(a)   The good faith, credit and the power of the municipality to levy unlimited taxes are hereby committed for the prompt payment of the principal and interest on all obligations evidenced by general obligations bonds or notes and the interest on obligations evidenced by notes in advance of municipal general obligation bonds which the municipality may incur.

(b)   To make this guarantee effective, the Legislature shall provide through an ordinance, for the annual levying of an additional special tax, without limitation with regard to rate or amount, on all taxable property in the municipality, that is sufficient to pay principal and interest on all general municipal obligation bonds issued by the municipality, as such principal and interest mature, excluding, however, any interest that has been provided to be paid from the proceeds of the municipal general obligation bond issue. Before remitting to the municipalities any existing surplus in the Municipal Public Debt Redemption Fund, the Designated Trustee shall reserve such sum that will allow compliance with the maximum annual payment of principal and interest of all authorized and outstanding debt.

(c)   In general terms, the first lien shall operate in the following manner: The Center shall collect the proceeds of the special surtax and any other taxes on the value of the property levied by the municipality. The Center shall deposit the proceeds of the special surtax in the account of the municipality in the Redemption Fund. If the Designated Trustee determines that the deposits in said account in the Redemption Fund are not sufficient to cover any payment of the principal or interest on any outstanding municipal general obligation bonds or notes or any payment of the interest on any outstanding note in advance of municipal general obligation bonds, the Designated Trustee shall notify the Center and the Center shall deposit in said account an amount proceeding from other

income subject to the first lien established by this Section that, together with the deposits in said fund, shall be sufficient to make said payment. AAFAF, in consultation with the Center, shall establish, through regulations, the specific procedure for the operating of this first lien.

(d)      The Designated Trustee, as trustee of the Redemption Fund, shall pay the principal and interest on municipal general obligation bonds or notes and the interest on all the notes in advance of the municipal general obligation bonds of the municipality from the resources deposited in the account of the municipality in the Redemption Fund. The Designated Trustee shall make those payments on behalf of the municipality.

(e)      Once the reserve or the portion equivalent to the payment for the subsequent twelve (12) months of principal and interest of the loan is assured, and once the payment of the municipal public debt is guaranteed, as determined by the Designated Trustee, in the event there is a surplus in the Municipal Public Debt Redemption Fund, the Designated Trustee shall be bound to place said surplus at the disposal of the municipality. The surplus can be requested once during each fiscal year. The surplus in the Municipal Public Debt Redemption Fund shall be used, in the first place, for the payment of mature, liquid and exigible statutory debts, including debts with the Municipal Revenue Collection Center, or debts with any government entity or public corporation. In the event that the municipality has provided for the payment of such debts, it may use the surplus of the Redemption Fund for any obligation or activity that pursues a legitimate municipal purpose."

CHAPTER 7. MISCELLANEOUS PROVISIONS.

Article 701.-Confirmation of Loans.

All bonds and notes issued by any Government Entity to GDB and all loans made by GDB to a Government Entity prior to the effective date of this Act, are hereby confirmed and the same shall continue to be valid and binding obligations of the applicable Government Entity in accordance with their terms.

Article 702.-Binding Effect of Restructuring Transaction on Government Entities.

All transactions effected pursuant to this Act (including, without limitation, pursuant to determinations made by AAFAF or GDB under this Act) shall be valid and binding with respect to all Government Entities as of the Closing Date. Other than as expressly provided in this Act,  in the Ancillary Agreements and the Public Entity Deed

of Trust, no Government Entity shall have any further rights or claims against GDB, the Recovery Authority and the Public Entity Trust, and any officers, directors, employees, agents and other representatives thereof, of whatsoever nature and kind, whether now existing or hereinafter arising, based, in whole or in part, on facts, whether known or unknown, existing or occurring on or prior to the Closing Date. Each Government Entity is hereby deemed to forever waive, release and discharge GDB, the Recovery Authority and the Public Entity Trust, and any officers, directors, employees, agents and other representatives thereof from any and all such claims.

Article 703.-Lack of Authority and Standing of Government Entities.

Notwithstanding any other law of the Government of Puerto Rico, no Government Entity shall have authority or standing to challenge this Act, the Restructuring Transaction, or the other transactions contemplated in this Act in any local or federal court.

Article 704.-Exculpation.

No Person shall have or incur liability for any cause of action or otherwise to any Person for any action (or failure to act) in accordance with this Act or the Qualifying Modification.

Article 705.-Severability.

This Act shall be interpreted in a manner to render it valid to the extent practicable in accordance with the Puerto Rico Constitution and the U.S. Constitution. If any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act, were to be annulled or declared unconstitutional, the order to such effect will neither affect nor invalidate the remainder of this Act. The effect of such an order shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act so annulled or declared unconstitutional. If the application to a Person or circumstance of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act, were to be annulled or declared unconstitutional, the order to such effect will neither affect nor invalidate the application of the remainder of this Act to such Persons or circumstances to which it may be validly applied. It is the express and unequivocal intent of this Legislative Assembly that the courts of law enforce the provisions and application of this Act to the greatest possible extent, even if any of its parts is annulled, invalidated, affected or declared unconstitutional, or even if the application thereof to any Person or circumstance is annulled, invalidated or declared unconstitutional. This Legislative Assembly would have passed this Act regardless of the ruling on severability that a

Court may issue.

Article 706.-Supremacy.

The provisions of this Act shall prevail over any other general or specific provisions of any law or regulation of the Government of Puerto Rico that is inconsistent with this Act.

Article 707.-Language Conflict.

This Act shall be adopted both in English and Spanish. If in the interpretation or application of this Act any conflict arises as between the English and Spanish texts, the English text shall govern.

Article 708.-Effectiveness.

This Act shall take effect immediately upon enactment.

**DEPARTAMENTO DE ESTADO**
Certificaciones, Reglamentos, Registro
de Notarios y Venta de Leyes
Certifico que es copia fiel y exacta del original
Fecha: 25 de agosto de 2017

Firma

Eduardo Arosemena Muñoz
Secretario Auxiliar
Departamento de Estado
Gobierno de Puerto Rico