**Bco. Santander v. Correa Garcia, 196 D.P.R. 452 (2016)**

2016 TSPR 201

196 D.P.R. 452, 2016 WL 5373768 (P.R.), 2016 TSPR 201

BANCO SANTANDER DE PUERTO RICO, respondent,
v.
BRENDA CORREA-GARCÍA, petitioner; ISMAEL SANTANA-SERRANO, respondent, v. GLORIA ANTONY-RÍOS, petitioner.

In the Supreme Court of Puerto Rico.
*Numbers:* CC-2014-0431 CC-2014-1062
*Decided on:* September 16, 2016
Sept. 16, 2016.

1. MORTGAGES—IMMOVABLE PROPERTY—FORECLOSURE—MANDATORY MEDIATION—LEGAL PRECEPTS.
The Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act grants the parties a mediation hearing during which the debtor may obtain information regarding the remedies that are available to the same to avoid losing his or her main residence and, additionally, it gives the latter the opportunity to sit and negotiate with his or her creditor.

2. ID.—ID.—ID.—ID.—ID.
Art. 2 of the Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act, 32 LPRA sec. 2881, establishes that in cases in which a mortgage creditor may begin a mortgage foreclosure process, or if that process may result in the judicial sale of a residential property that is a main residence, a compulsory mediation hearing shall be held presided over by a mediator chosen by the parties, during the course of a summary or ordinary mortgage foreclosure process. During that meeting, the mortgage creditor shall notify the mortgage debtor of all alternatives available in the market to avoid a mortgage foreclosure **\*453** or judicial sale of a residential property that is a main residence. The purpose or goal shall be to reach an agreement or modification that would allow the mortgage debtor to establish a payment agreement or other alternative that is satisfactory to the parties and avoid losing his or her main residence.

3. ID.—ID.—ID.—ID.—PROCEDURE.
Art. 3 of the Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act, 32 LPRA sec. 2882, regulates the process to carry out a compulsory mediation. Said article is discussed in the Opinion.

4. ID.—ID.—ID.—ID.—ID.
Art. 3 of the Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act, 32 LPRA sec. 2882, provides that the debtor shall only have a right to a mediation process under a civil action initiated for mortgage foreclosure of a residential property that is his or her main residence, as long as the mortgage debtor that has been sued has not been found in default or that, for any reason or penalty, the court has suppressed or eliminated his or her allegations.

5. ID.—ID.—ID.—ID.—ID.
Art. 3 of the Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act, 32 LPRA sec. 2882, states that courts have the duty to order that a compulsory mediation act or hearing be held. It provides that this is a jurisdictional requirement which, if not complied with, it shall not be possible to issue a judgment or carry out a judicial sale, as long as the mortgage debtor that has been sued has not been found in default, or that for any reason or penalty, the court has suppressed or eliminated his or her allegations. The hearing shall only be held in cases in which the court deems it necessary.

6. STATUTES, CUSTOMS AND EQUITY—INTERPRETATION AND APPLICATION OF THE LAW—GENERAL RULES OF INTERPRETATION—POWERS AND DUTIES OF COURTS OF JUSTICE—ENFORCING THE LEGISLATIVE INTENT.
Even though the courts cannot eliminate or change the language of a statute in order to uphold a supposed legislative intent, the words and phrases may be modified or substituted when necessary to avoid contradictions or discrepancies in the law, and to give effect to the evident intention of the Legislature. The legislative intent must prevail over the strict letter of the law when observing the literal sense of the law may result in contradictory provisions. It is in the absence of any contradiction or lack of coherence that the general rule applies prohibiting courts from deviating from the literal meaning of a statute. **\*454**

7. ID.—ID.—ID.—INTERPRETATION TO GIVE VALIDITY AND EFFECT TO A STATUTE IN ITS

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 1

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bco. Santander v. Correa Garcia, 196 D.P.R. 452 (2016)

2016 TSPR 201

ENTIRETY—IN GENERAL—CONSIDERING THE LAW AS A WHOLE, NOT IN PARTS.
When analyzing provisions that appear to be contradictory, the courts must first interpret the law harmoniously in order to achieve provisions that are compatible, not contradictory. When interpreting a law, the courts must harmonize all of its provisions, to the extent possible, for the purpose of obtaining an interpretation of the legislative intent that is comprehensive, logical and reasonable. Therefore, the sections, paragraphs, phrases and sentences of a law must not be interpreted separately; rather, they must be analyzed together taking into consideration the entire context in a comprehensive manner.

8. ID.—ID.—ID.—ID.—CONTRADICTION IN LEGAL PRECEPTS.
There is no possible justification to unnecessarily conclude that certain provisions are in conflict if it is possible to read them harmoniously. When a provision cannot be harmonized with the rest of the law, it may be declared contradictory, with the effect that this may entail in each particular case.

9. ID.—ID.—ID.—IN GENERAL—MEANING OF THE LAW, CLEAR.
Art. 14 of the Civil Code, 31 LPRA sec. 14, provides that when the law is clear and free from any ambiguity, the letter of the same should not be undermined under the pretext of complying with its spirit. The first step that the courts must take when interpreting a statute is to consider the text of the law, since, when the language of the legislator is clear and unequivocal, the text of the law is the utmost expression of the legislative intent.

10. ID.—ID.—ID.—INTENT OR WILL OF THE LEGISLATOR WHEN PASSING A LAW—SPIRIT AND LETTER OF THE LAW.
Art. 19 of the Civil Code, 31 LPRA sec. 19, states that the most efficient and universal method to discover the true meaning of a law when its expressions are doubtful is to consider its reason and spirit, or the cause or motive which induced the legislative branch to issue the same. This process of interpreting laws is known as *legal hermeneutics* and entails looking into the will of the legislature for the purpose of enforcing it. To do this, the legislative process is examined which, in general, begins with a bill that is sent to the relevant committee for the latter to study it and issue a report with recommendations, and ends with a debate on the floor of the Legislature, noted in the Daily Sessions Record.

11. MORTGAGES—IMMOVABLE PROPERTY—FORECLOSURE—COMPULSORY MEDIATION—IN GENERAL.
Following an examination of the Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act in conjunction with the purpose of the same, the "compulsory" and "jurisdictional" nature of its provisions prevails. The phrase **455** "It shall be the court's duty, in cases where it is considered necessary" of Art. 3 of this law, 32 LPRA sec. 2882, is not a real contradiction because, according to the principle of harmonious interpretation, it is in accordance with the exceptions provided by the legislator to the mediation hearing requirement included at the end of the above-cited article. Therefore, the phrase "in cases where it is considered necessary" refers to the fact that the court must order the holding of a mediation hearing when considering a case in which the debtor has not been found in default and his or her allegations have not been eliminated.

12. ID.—ID.—ID.—ID.—PROCEDURE.
After the answer to the complaint is filed, the act of scheduling a mediation hearing is a jurisdictional requirement that the court must comply with in cases in which a creditor requests foreclosing on the main residence of a debtor, except in cases in which the debtor has been found in default or when the court has eliminated his or her allegations. These are the only exceptions established by the legislator. Therefore, if the court fails to comply with the requirement of ordering the holding of such hearing, it shall not have jurisdiction to issue a judgment or order the judicial sale of the immovable property. Consequently, any judgments issued by the court or judicial sales ordered by the same without having scheduled a mediation hearing shall be null and void and shall have no legal effect.

13. ID.—ID.—ID.—ID.—ID.
The jurisdictional requirement imposed by the Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act is that a mediation hearing be ordered or scheduled, but the extent of said process and its result shall depend on the parties' behavior, in accordance with the provisions of said law. This is the reason that the court shall be able to continue with the judicial process when: (1) the creditor appears at the mediation hearing, but the debtor does not appear; (2) the parties appear at the hearing and the legal requirements are met, but they do not reach an agreement, or (3) the debtor does not comply with the agreements entered into as a result of the mediation process.

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 2

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bco. Santander v. Correa Garcia, 196 D.P.R. 452 (2016)

2016 TSPR 201

14. ID.—ID.—ID.—ID.—IN GENERAL.

Based on considerations of public policy and social order resulting from the confusion caused by the text of the Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act, what has been established herein shall noy apply to final and unappealable judgments. Its application shall be limited to court proceedings initiated after what has been decided herein, to lawsuits pending before the Court of First Instance in which a judgment has not yet been issued, and to judgments issued by the Court of First Instance after July 1, 2013 that have not become final and unappealable (the date on which this law came into effect). What has been decided does not prevent debtors that have been found in default or whose allegations have been eliminated by the court to turn to mediation, if so agreed to. **456**

**Synopsis**

REQUEST OF REVIEW BY *CERTIORARI* (CC-2014-0431) of a JUDGMENT issued by *Migdalia Fraticelli Torres, Laura I. Ortiz Flores* and *Misael Ramos Torres*, Js. of the Court of Appeals, affirming the decision issued by the Court of First Instance based on believing that, according to the first sentence of Art. 3 of the Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act, 32 LPRA sec. 2882, a compulsory mediation is discretionary, since it shall only be a duty to hold one when deemed necessary by the court. As a result, it concluded that in this case a referral to mediation was not justified since Ms. Brenda Correa-García did not show how the mediation could have benefitted her; *CERTIORARI* (CC-2014-1062) for a JUDGMENT issued by *Gretchen Coll Martí, Ivelisse M. Domínguez Irizarry* and *Gloria L. Lebrón Nieves*, Js. of the Court of Appeals, affirming the decision issued by the Court of First Instance by concluding that the trial court could decide the case summarily because Ms. Gloria Antony-Ríos did not controvert the facts proposed in the motion for summary judgment. *The judgments issued by the Court of Appeals are revoked and the cases are remanded to the Court of First Instance for the latter to order holding of a mediation hearing in each case.*

*Felipe Sanabria-Quiñones, Luis R. Rodríguez-Nevárez* and *David López-Pumarejo*, attorneys for Brenda Correa-García, petitioner; *Rafael A. González-Navedo*, attorney for Gloria Antony-Ríos, petitioner; *Daniel F. Marrero-Guerrero*, attorney for Ismael Santana-Serrano, respondent.

ASSOCIATE JUSTICE KOLTHOFF-CARABALLO issued the opinion of the Court.

Today we are presented with an opportunity to interpret the Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act (Mandatory Mediation Act), Law No. 184-2012 (32 LPRA secs. 2881–2886), for the purpose of determining whether it imposes on the court the obligation to hold a mediation hearing in cases of foreclosure of a main residence as a "*jurisdictional requirement*" —in other words, as a previous condition for the court to be able to issue a judgment and order **457** the judicial sale of immovable property— or whether said hearing is discretionary —since it only has to be ordered in cases in which the court "deems it necessary"—.

After harmonizing the seemingly contradictory provisions of the Mandatory Mediation Act, we decide that, after the answer to the complaint has been filed, ordering a mediation hearing is a jurisdictional requirement which, if not complied with, the court shall not be able to enter judgment or to order the judicial sale of immovable property that is used as a primary residence, except in cases in which the debtor has been found in default or when the court has eliminated his or her allegations.

I

In the cases that we are considering today, the Court of First Instance issued certain judgments in favor of the plaintiffs in complaints for collection of money and foreclosure of mortgage on immovable properties that were used as the main residence of the debtors/defendants. It should be noted that the judgments were issued after the effective date of the Mandatory Mediation Act (July 1, 2013, according to Art. 9 of the Mandatory Mediation Act, 2012 (Part 2) Laws of Puerto Rico 1665, 1671).

Unsatisfied, the debtors questioned the issued judgments based on lack of jurisdiction of the Court of First Instance to issue them, since it had not ordered the holding of the mediation hearing required by the Mandatory Mediation Act. It is essential to point out that the debtors answered the complaints, had not been found in default, and the court had not eliminated their allegations. Below are the specific facts in each case. **458**

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 3

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Bco. Santander v. Correa Garcia, 196 D.P.R. 452 (2016)**

2016 TSPR 201

*CC-2014-0431*

On March 4, 2013, Banco Santander de Puerto Rico (Santander) filed a complaint against Ms. Brenda Correa-García for the purpose of foreclosing an immovable property that was used as the main residence of the defendant and her children. According to Santander, Ms. Correa-García had defaulted on the conditions of the mortgage loan; therefore, it requested that the court issue judgment in its favor declaring the debt due and ordering the sale by public auction of the asset in question. On the other hand, Ms. Correa-García answered the complaint and denied owing any amount to Santander.

Subsequently, on May 31, 2013, Santander requested issuance of a summary judgment in its favor. For this purpose, it attached a sworn statement by an employee of the bank stating that Ms. Correa-García had refused to make the monthly payments for her mortgage loan since June 1, 2012; a registry certification for the immovable property, and a copy of the mortgage note and of the mortgage execution deed. Subsequently, Santander stated that the defendant did not qualify for mortgage modification and, consequently, referring the case to mediation was not necessary. Given the foregoing, Ms. Correa-García stated that her payment amount was not in accordance with her financial capacity and added that the reasons given by Santander did not justify not referring the case to mediation, as required by the Mandatory Mediation Act.

In spite of what was stated by Ms. Correa-García, the Court of First Instance issued a summary judgment against her. However, it did not state anything as to why it did not order the holding of a mediation hearing. Unsatisfied, Ms. Correa-García filed a motion for reconsideration stating as follows:

> *As far as we know, the mediation was not ordered nor has it been held in this case; the defendant has not been found in* **\*459** *default, nor has her allegations been suppressed in any way.* On the contrary, she answered the complaint and was in the discovery stage [.\ u.\ u.\ u]
>
> For all relevant legal purposes, we state that the mortgage creditor has full knowledge of the fact that the property that is the subject of foreclosure is the main residence of the defendant [.\ u.\ u.\ u] and that it has a tax exemption. (Emphasis added). Appendix to the Petition for Writ of *Certiorari*, pp. 166–167.

On the other hand, Santander opposed the reconsideration on the basis that "*a mediation* [.\ u.\ u.\ u] *is a futile exercise in the present case because the defendant does not have the financial capacity* [.\ u.\ u.\ u]". (Emphasis added). Appendix to the Petition for Writ of *Certiorari*, page 172. Subsequently, the Court of First Instance "denied" the motion to reconsider.

After that, Ms. Correa-García turned to the Court of Appeals. As to the suitability of mediation, said court interpreted the following: "The first sentence of Article 3 of Law 184-2012 reveals that the compulsory mediation is discretionary since it shall only be a 'duty' to hold it when the court deems it 'necessary%7D '". Appendix to the Petition for Writ of *Certiorari*, pp. 23–24. As a result, it affirmed the Judgment by concluding that in this case a referral to mediation was not justified because Ms. Correa-García did not show how the mediation could have benefitted her.

Ms. Correa-García filed a Petition for Writ of *Certiorari* in this Court in a timely manner. We issued the writ and the case was submitted on the merits on December 9, 2015.

*CC-2014-1062*

On March 27, 2012, Mr. Ismael Santana-Serrano filed a complaint for mortgage foreclosure against Ms. Gloria Antony-Ríos. He alleged that he was the holder of a Bearer Mortgage Note secured by immovable property belonging to the defendant and that the secured **\*460** debt was due. On the other hand, Ms. Antony-Ríos answered the complaint and stated that she did not admit the totality of the debt. Subsequently, Mr. Santana-Serrano filed a motion for summary judgment attaching several documents which, according to him, proved the existence of the debt. Following several proceedings, the Court of First Instance granted several extensions to Ms. Antony-Ríos for her to appear represented by an attorney and oppose the motion for summary judgment. Given her failure to comply, the court issued judgment against her and ordered her to pay the owed amount or, otherwise, a sale by public action of the immovable property. It should be noted that Ms. Antony-Ríos answered the complaint, had not been found in default, and the court had not eliminated her allegations.

Unsatisfied, Ms. Antony-Ríos filed an appeal in the Court of Appeals stating, for the first time, that the case should be referred to mediation, in accordance with the Mandatory Mediation Act. Furthermore, it stated that, given the failure to comply with a jurisdictional requirement, the court was prevented from issuing a judgment. On the other hand, Mr. Santana-Serrano stated that there was no controversy as to the existence of the debt because Ms. Antony-Ríos did not object to the motion for summary

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Bco. Santander v. Correa Garcia, 196 D.P.R. 452 (2016)**
2016 TSPR 201

judgment. He further stated that: (1) the allegation as to the mediation hearing requirement could not be considered because it had not been submitted to the Court of First Instance; (2) the Mandatory Mediation Act did not apply to him because he was not a banking or credit entity, and (3) the mediation requirement is discretionary and was not justified in this case.

After studying the arguments of both parties, the Court of Appeals affirmed the Judgment. It concluded that the trial court could decide the case summarily because Ms. Antony-Ríos did not controvert the facts proposed in the motion for summary **\*461** judgment. However, the appellate court did not discuss the applicability of the Mandatory Mediation Act.

Ms. Antony-Ríos filed a Petition for Writ of *Certiorari* in this Court in a timely manner. We issued the writ and consolidated it with CC-2014-431.

## II
*Seemingly conflicting provisions contained in the Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act*

**[1]** The controversy before us, concerning whether the assignment of a mediation hearing date is a discretionary or a jurisdictional requirement, derives from an apparent contradiction in the text of Art. 3 of Act No. 184-2012 (32 LPRA secs. 2881-2886), known as the Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act. This law was enacted on August 17, 2012 and is aimed at protecting the principal residence of mortgage debtors against the impacts of the economic crisis. This act grants the parties a mediation hearing in which the mortgage debtor will be able to obtain information regarding the remedies available to them to avoid losing their principal residence, while giving them the opportunity to negotiate with their creditor.

The act is described as follows: "**T**o create a law that will establish a *mandatory* mediation process between the mortgage creditor and the mortgage debtor in foreclosure processes involving residential properties in Puerto Rico." (Emphasis supplied). Laws of Puerto Rico, *supra*, p. 1665. Where relevant, the Statement of Motives provides the following:

> The scarcity of economic resources in Puerto Rico has caused **\*462** many homeowners to lose their homes to foreclosure initiated by the banking or financial institutions holding their property's mortgages.
>
> ........
>
> The United States Congress introduced Senate Bill 2912, titled "*Foreclosure Mandatory Act of 2009,*" with the purpose of *requiring* that all mortgage debtors whose loans are backed by federal guarantees *submit to a mandatory* mediation process, prior to the foreclosure of the property by the mortgage creditor.
>
> Just like the Federal Government, the State Government must collaborate and look for alternatives to reduce the number of foreclosures and, to the greatest extent possible, to prevent our citizens from losing their properties. *The truth is that these alternatives exist, but they are unknown to the public.*
>
> ........
>
> In line with the above, it is imperative that the Legislative Assembly of Puerto Rico create a Law aimed at establishing a *mandatory* mediation process before the courts of Puerto Rico or before the relevant administrative fora, *prior to carrying out a foreclosure process* on any principal residential property in Puerto Rico by any banking institution. (Emphasis supplied.)[1]

**[2]** Art. 2 of the Mandatory Mediation Act, 32 LPRA sec. 2881, provides the following definitions:

> (a) Mediation.— A non-adjudicative intervention process whereby a neutral facilitator (mediator) helps or assists the parties to a dispute to achieve a mutually accepted settlement of the issues in dispute.
>
> (b) *Mandatory* mediation.— In the event that a mortgagee may initiate a foreclosure proceeding or a judicial sale of a residential property that serves as principal residence, *a mandatory mediation conference shall be held* […] in a court part or room or at a place selected upon agreement by the parties and the mediator, but shall never be held in the office of the mortgagee or the attorneys or legal representatives or advisors thereof, and presided by a mediator selected by the parties in the course of a summary and/or **\*463** regular foreclosure proceeding. *At such meeting, the mortgagee shall notify the mortgagor of all the alternatives available in the market to prevent the foreclosure or judicial sale of a residential property that serves as a principal residence*. The purpose or goal is to reach an agreement or modification that may allow mortgagors to establish a repayment plan or other

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bco. Santander v. Correa Garcia, 196 D.P.R. 452 (2016)
2016 TSPR 201

alternative satisfactory to the parties and prevent the loss of their principal residence.

*(c) Mortgagee.*— Any *natural* or juridical *person*, or a lending or financial institution, or a bank or a credit union duly authorized under the Laws of Puerto Rico and the United States of America to grant or that grants loans, including reverse mortgages, secured by a mortgage on a principal residence or home.

........

(e) Principal residence or home.—That which is used as the main dwelling of the mortgagor or the mortgagor and his/her immediate family, and which would qualify, for property tax purposes, for the principal residence tax exemption. (Emphasis in original deleted and emphasis supplied.)

**[3]** The process to conduct the "mandatory mediation" is regulated by Art. 3 of the Mandatory Mediation Act, 32 LPRA sec. 2882, as follows:

*It shall be the court's duty, in cases where it is considered necessary,* within sixty (60) days upon the filing of the responsive pleading by the mortgagor and prior to scheduling the pretrial conference, under penalty of contempt, to subpoena the parties to a hearing or *mandatory mediation* conference which shall be presided by a mediator selected by the parties and be held at any court part or room or at the place selected upon agreement by the parties and the mediator, in which the mortgagor shall be informed of all the alternatives available in the market to prevent dispossessing the mortgagor of his property, the foreclosure or judicial sale of a residential property that serves as a principal residence. […] This shall be a *jurisdictional requirement* in proceedings held before the courts of Puerto Rico involving the foreclosure of a residential property that serves as the personal residence of the mortgagor or mortgagors. *If this requirement is not met, no judgment may be issued nor may the judicial sale of the mortgaged property whose foreclosure is requested be carried out.* If the mortgagor fails to appear at the **\*464** mediation conference or fails to comply with the agreement reached with the mortgagee as a result of the mediation conference, the financial institution shall act in accordance with the agreement or note executed on the original date of the mortgage. (Emphasis supplied.)[2]

**[4]** As for who will be entitled to a mediation hearing, Art. 3 provides that:

*[t]he mortgagor shall be entitled only to one mediation conference* in a civil action filed to obtain a mortgage foreclosure on residential property that serves as his principal residence; *provided, that the defendant-mortgagor is not found in default, or that for any reason or sanction his allegations have been eliminated or suppressed by the court*. (Emphasis supplied.)[2]

**[5]** As we can see, this article of the Mandatory Mediation Act points out that "[i]t shall be the court's duty" to order "a hearing or *mandatory* mediation conference" and provides that this is "a *jurisdictional requirement* […] which, *if not met, no judgment may be issued nor may the judicial sale of the mortgaged property whose foreclosure is requested be carried out* […] provided that the defendant-mortgagor is not found in default, or that for any reason or sanction his allegations have been eliminated or suppressed by the court."[3] On the other hand, the Act further provides that this hearing shall only be conducted "*in cases where it is considered necessary [by the court],*" which seems to add a discretionary character to the process.[4] As we will explain in this Opinion, the aforementioned provisions of the Mandatory Mediation Act do not contradict each other, since they can be harmonized.

**[6]** Regarding contradictions within a law, in their book titled *Aprobación e interpretación de las leyes en Puerto Rico,* legal scholars R. Elfrén-Bernier and José A. Cuevas-Segarra state that "[i]f it has been clearly stated that certain word, **\*465** phrase, or provision was inadvertently or mistakenly approved, especially if it is contrary to the rest of the law or would limit the effectiveness of said law, it may be removed."[5] This rule was discussed by this Court in *Roig Commercial Bank v. Buscaglia, Tes.*, 74 DPR 986, 998 (1953), in *Passalacqua v. Mun. de San Juan*, 116 DPR 618, 623 (1985), and in *Aguadilla Paint Center v. Esso*, 183 DPR 901, 922 (2011). Now, we must clarify that this doctrine —which allows for the removal of contradictory words, phrases, or provisions— does not render ineffective the prohibition that prevents courts from giving a different meaning to a law when the statutory language is clear.[6] In *Roig Commercial Bank v. Buscaglia, Tes.*, supra, we discussed this difference by stating the following when citing 50 Am. Jur. 369:

"Although the courts cannot remove or change the language of a statute in order to give effect to an alleged legislative intent, the words and phrases may be

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Bco. Santander v. Correa Garcia, 196 D.P.R. 452 (2016)**
2016 TSPR 201

altered or substituted where necessary to avoid aversion or inconsistency in the law, as well as to give effect to the stated legislative intent. *Legislative intent shall prevail over the strict letter of the law if following the literal meaning of the law may lead to conflicting provisions. The general rule that prohibits a court from deviating from the literal meaning of a statute is only applicable when it is not derived from a contradiction or inconsistency in the law*" [.] (Emphasis supplied.).

**[7]** *Before we continue, it is important to emphasize that when analyzing provisions that appear to contradict each other, the courts must primarily make a harmonious interpretation of the law, so that its provisions can become compatible and not* **\*466** *contradictory.*[7] This is based on the harmonious-reading canon of statutory construction, which provides that the courts are required to harmonize, to the extent possible, all of the provisions of a law when interpreting said law, in order to obtain an integrated, logical, and reasonable interpretation of the legislative intent.[8] "To harmonize" means "[t]o bring two or more parts of a whole, or two or more things that should serve the same purpose, into harmony, or to prevent them from disagreeing or rejecting each other."[9] Thus, the sections, paragraphs, phrases, and sentences that make up a law should not be interpreted in isolation, but they should be analyzed as a whole, taking into account its entire context in a comprehensive manner.[10]

**[8]** *In light of the above, we would like to clarify that there is no possible justification if it is unnecessarily concluded that some provisions are in conflict when they can be harmoniously read.*[11] If a provision cannot be harmonized with the rest of the law, it can be declared as contradictory, with the effect it may have on each particular case.[12]

**[9–10]** One of the core principles of statutory interpretation is enshrined in Art. 14 of our Civil Code, Civil, 31 LPRA sec. 14, which provides that **\*467** "[w]hen a law is clear [and] free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof." In order to comply with this rule, the first step that we, the courts, must take in interpreting a statute is to refer to the text of the law, since, if the legislator expressed him/herself in a clear and unequivocal language, the text of the law represents the utmost expression of the legislative intent.[13] On the other hand, the method to analyze ambiguous expressions is described in Ar. 19 of the Civil Code, 31 LPRA sec. 19, which states that "[t]he most effectual and universal manner of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit thereof, or the cause or motives which induced its enactment." This process for statutory interpretation is known as *legal hermeneutics* and involves determining what the legislative will was, in order to enforce it.[14] To this end, the legislative process is examined, which generally begins with a bill being sent to the relevant committee for evaluation and the issuance of a report with recommendations, and ends with a floor debate, which is recorded in the Daily Sessions Record.[15] In line with the above, and in order to determine the purpose of the statute and of the phrase "in cases where it is considered necessary," we refer to the legislative history and the Daily Sessions Records of both legislative chambers.[16] We find that SB 1434 of February 25, 2010 was the original bill, whose Art. 3 provided the following: **\*468**

> […] *It shall be the court's duty,* prior to setting a trial date, under penalty of contempt, *to schedule a preliminary hearing or mandatory mediation conference* to be presided by the judge, in order to provide the mortgagor, in good faith, with of all the alternatives available in the market to save their mortgage. *This shall be a jurisdictional requirement* as part of the process to be undertaken when initiating foreclosure proceedings before Puerto Rico's Courts or administrative for a. (Emphasis supplied.). SB 1434, *supra*, pp. 3–4.

Subsequently, the Senate's Banking, Consumer Affairs, and Public Corporations Committee and the Civil Judiciary Committee proposed several amendments to SB 1434, but they recommended that the "mandatory" and "jurisdictional" nature of the mediation process remain unchanged.[17] Thus, on February 13, 2012, the Senate passed the bill with the provisions regarding the enforceability and jurisdictional nature of the mediation requirement.[18]

Upon sending the bill to the House of Representatives, it was referred to the Judiciary Committee and the Economic Development, Planning, Commerce, Industry, and Telecommunications Committee, which, in their Report, recommended the adoption of the bill without any amendments.[19] Now, the House of Representatives' Daily Sessions Record shows that when the bill was sent to the floor to be voted on, several amendments were proposed. One of them was to incorporate the phrase "in cases where it is considered necessary." These words were inserted right after the phrase "It shall be the court's duty" in Art. 3 of the bill. Although the bill was passed by the House of Representatives with the proposed amendments **\*469,** the Sessions Diary does not indicate the reasons for said amendments, since they were not discussed on the

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

floor.[20] The bill was subsequently sent to the Senate, which was the originating chamber, where it also passed with the amendments introduced by the House of Representatives—again without further discussion on the floor.[21] *470

It is important to emphasize that despite adding the phrase "in cases where it is considered necessary" in Art. 3, the provisions regarding the "mandatory" and "jurisdictional" nature of the mediation hearing were left unchanged by the legislators. A reading of these provisions shows that they seem to be contradictory. Therefore, it is for us to apply the interpretation rule to apparently conflicting provisions contained in a law in order to determine whether they are contradictory or whether they can be harmonized.

As part of the legal hermeneutics' analysis, we will examine the meaning of the words used by the legislators. The word *"compulsoria" [mandatory]* derives from the term *compulsory* and is used as a synonym of *obligatory*. *Obligatory* means something that "[o]bligates compliance and implementation," and *to obligate* means "[t]o move and encourage performance or compliance" […].[22] On the other hand, jurisdictional requirements are obligatory in nature, since they must be fulfilled before the court can hear the hear the suit.[23] Therefore, failure to comply with a jurisdictional requirement deprives the court of jurisdiction to address the merits of the controversy.[24] *Thus, we have stated that if a court lacks jurisdiction, it also lacks discretion, and the courts have no discretion to assume jurisdiction when it has not been conferred by law.*[25] A lack of jurisdiction cannot be cured and any judgment entered without jurisdiction is void and, therefore, nonexistent.[26] It should be noted that this defense may be raised at any stage of the proceedings.[27] In contrast, *discretion* deals with leaving a determination to the will of *471 someone.[28] Lastly, *to consider* means to think about something and to analyze it carefully.[29]

As we have stated, the legislator used the term "compulsory" in the title of the law ("Ley para Mediación Compulsoria" [Mandatory Mediation Act]), which was repeated throughout its entire text. The term also shows up repeatedly in the law's Statement of Motives and in the reports from the legislative committees. Likewise, Art. 3 of the act mentions that it shall be the court's "duty" to hold a mediation hearing and further provides that said requirement is "jurisdictional" in nature and that "if this requirement is not met, no judgment may be issued nor may the judicial sale of the mortgaged property whose foreclosure is requested be carried out," except in the aforementioned cases. 32 LPRA sec. 2883. In contrast, the phrase "in cases where it is considered necessary" is the only provision that seems to grant discretion to the court. Id.

[11] Faced with this scenario, and after examining the Mandatory Mediation Act along with its purpose, we rule that the "compulsory" and "jurisdictional" nature of its provisions prevails. We recognize that upon looking at the phrase "It shall be the court's duty, in cases where it is considered necessary" in isolation, in Art. 3 of the Mandatory Mediation Act, it follows that it seems to be contradictory to the rest of the law, because it appears to confer a discretionary character to the assignment of a mediation hearing. However, this phrase does not constitute a real contradiction since, according to the harmonious interpretation canon, it is aligned with the exceptions provided by the legislator regarding the mediation hearing requirement, which are included at the end of the above-cited article. In this way, the phrase "in cases where it is considered necessary" means that the court shall order a mediation hearing to be held when faced with one of the cases in which the debtor is not found in default nor have their allegations been eliminated. Therefore, *472 given that a harmonious interpretation of the different provisions of the Mandatory Mediation Act has been achieved, there is absolutely justification for concluding that its provisions are contradictory.[30]

[12] Our interpretation falls in line with the spirit of the law and the legislative intent to grant debtors the opportunity to know the remedies that may be available to them in order to avoid losing their homes. *Therefore, we rule that —once the answer to the complaint has been filed—the act of summoning to appear at a mediation hearing is a jurisdictional requirement that must be met by the court in cases where a creditor requests the foreclosure of a debtor's principal residence, except in cases where the debtor is found in default or when the court has eliminated the debtor's allegations.* These are the only exceptions established by the legislator. Hence, if the court fails to comply with the requirement to order the holding of said hearing, it shall not have jurisdiction to enter judgment nor shall it be able to order the judicial sale of the property. Consequently, any judgments entered by the court and any judicial sales ordered without setting a mediation hearing shall be null and void and shall have no legal effect.

A decision to the contrary —that is, deciding that the court has the discretion to determine which cases should be referred for mediation— would mean granting the courts the authority to legislate, on a case by case basis, when is a requirement jurisdictional in nature and when it is not, which would result in conflicting interpretations

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 8


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bco. Santander v. Correa Garcia, 196 D.P.R. 452 (2016)
2016 TSPR 201

from the different courtrooms.[31] For example, in one of the cases we have reviewed herein, the court deemed inappropriate to refer a debtor with no financial *473 capacity to a mediation process, despite there being multiple alternatives that are not based on a debtor's financial capacity.

[13] Lastly, it should be noted that the jurisdictional requirement imposed by the Mandatory Mediation Act entails the setting of a date or the issuance of a summons to appear to a mediation hearing, but the extent of said proceeding and its result shall depend upon the conduct of the parties, as provided under this Mandatory Mediation Act.[32] It is for this reason that the court shall be able to continue with the mediation process if: (1) the creditor appeared at the mediation hearing, but the debtor failed to appear; (2) the parties appeared at the hearing and all legal requirements were met, but an agreement was not reached, or (3) the debtor failed to comply with the agreements entered into as a result of the mediation process.[33] We make it *474 clear that court proceedings shall be resumed at the stage at which they were left prior to the court's ordering of the mediation hearing.

[14] As for the applicability of this rule, due to public policy and social order considerations resulting from the confusion caused by the text of the Mandatory Mediation Act, we provide that what has been established herein shall not apply to judgments that have become final and enforceable. For this reason, its use shall be limited to court proceedings initiated after the issuance of this Opinion, to suits that are currently pending before the Court of First Instance and in which judgment has not been entered, and to judgments entered by the Court of First Instance after July 1, 2013 (the date when this act came into force, according to Art. 9) and which have not become final and enforceable.[34] What has been decided *475 in the above-stated Opinion does not preclude debtors who have been found in default or whose allegations have been eliminated by the court from attending the mediation process, if so agreed.

### III

The petitioners maintain that the Court of First Instance was precluded from entering the Judgments, since it failed to order the holding of the mandatory mediation hearing required by the Mandatory Mediation Act. They are right. Let us see.
*CC-2014-0431*

In the first case, the Court of Appeals reasoned that the mediation requirement imposed by the Mandatory Mediation Act was discretionary. In this regard, the court accepted as true Santander's allegation that Ms. Correa-García did not have the capacity to repay the debt guaranteed by a mortgage, therefore concluding that it would have been futile to refer the case for a mediation process in this case.

First of all, as we explained before, the Mandatory Mediation Act imposes upon the court, as a jurisdictional requirement, the obligation to set a mediation hearing for all cases in which the foreclosure of a property used as primary residence is requested, except in cases where the debtor is found in default or when the court has eliminated the debtor's allegations. Both exceptions are aimed at penalizing the lack of diligence in the judicial proceeding. As we may recall, Ms. Correa-García had answered the complaint, had not been found in default and the court had not eliminated her allegations. Therefore, the Court of First Instance had no discretion to *476 omit the setting of a date for the mediation hearing, which renders the entered judgment void.

Furthermore, even if it were a fact that Ms. Correa-García had not financial capacity to continue to repay her debt, we note that it was appropriate to order a mediation hearing so that she would be informed of the alternatives available on the market that are not based on a debtor's financial capacity. Some of these alternatives include: a short sale (where the creditor accepts an amount that is less than the remaining loan balance in order to pay off the loan, which allows the mortgagor to sell the property), accord and satisfaction or deed in lieu of foreclosure, or any other remedy that will prevent the mortgagor from losing his/her home or, in the event that the mortgagor loses his/her home, to minimize the negative consequences for the mortgagor.
*CC-2014-1062*

As noted above, in the second case, Ms. Antony-Ríos presented her argument regarding the origin of the mediation hearing for the first time before the Court of Appeals. In response, Mr. Santana-Serrano stated that it was inappropriate to address said argument since it had not been presented before the Court of First Instance and, even if it were heard: (1) the Mandatory Mediation Act does not apply in this case because he is not a banking or credit institution; (2) it was appropriate to enter judgment in his favor because Ms. Antony-Ríos did not oppose the motion for summary judgment, and (3) the mediation hearing is discretionary in nature and it was not justified in this case.

Firstly, we must point out that, even if it was not the best practice, Ms. Antony-Ríos was right to bring the


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Bco. Santander v. Correa Garcia, 196 D.P.R. 452 (2016)**
2016 TSPR 201

noncompliance of the Mandatory Mediation Act before the Court of Appeals, since allegations regarding the lack of jurisdiction may be filed at any stage of the proceedings. ***477**

Secondly, we recognize that Mr. Santana-Serrano is right to point out that certain provisions of the Mandatory Mediation Act and its Statement of Motives only refer to creditors, which are banking or credit entities. However, these references are remnants of the original bill. Particularly, Art. 2 of SB 1434 of February 25, 2010 defined the *mortgage creditor or mortgagee* as "an entity or bank duly authorized […] to grant mortgage-secured loans for primary residences." Since said definition did not include all the persons who have the capacity to execute a mortgage in accordance with our rule of law, the Committees of the Senate of Puerto Rico recommended that the article be amended to include natural persons as creditors, among others. This recommendation was incorporated into the text of Art. 2 and, with this amendment, it was passed by both legislative chambers.[35]

Now, Art. 2(c) of the Mandatory Mediation Act provides that "Mortgagee: *A natural* or juridical *person*, or a lending or financial institution, […]". (Emphasis supplied.). Laws of Puerto Rico, *supra*, p. 1668. After examining the text of this article, there is no doubt that Mr. Santana- ***478** Serrano is a creditor subject to the provisions of the Mandatory Mediation Act.

Thirdly, we should point out that even if it is apparent from the case that Ms. Antony-Ríos failed to comply with several court orders, the truth is that the court did not order entry of default, nor did it eliminate her allegations. Therefore, the court was precluded from entering judgment prior to referring the case for mediation.

### IV

In view of the foregoing, *we hereby revoke the judgment entered by the Court of Appeals and order the case to be remanded to the Court of First Instance, so that the holding of a mediation hearing be ordered in each case.*

Chief Justice Oronoz-Rodríguez and Associate Justice Rodríguez-Rodríguez concurred with the result without a written opinion.

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 10

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bco. Santander v. Correa Garcia, 196 D.P.R. 452 (2016)

2016 TSPR 201

# Footnotes

1.  Statement of Motives of the Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act (Mandatory Mediation Act), Act No, 184-2012 (2012 (Part 2) Laws of Puerto Rico 1665, 1666–1667).

2.  Art. 3 of the Mandatory Mediation Act, 32 LPRA sec. 2882.

3.  Id.

4.  Id.

5.  R. Elfrén Bernier and J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2nd ed. rev., San Juan, Pubs. JTS, 1987, Vol. I, p. 359. It should be noted that this rule has certain limitations, particularly in criminal law. Id., p. 362.

6.  Art. 14 of the Civil Code, 31 LPRA sec. 14, provides that "[w]hen a law is clear [and] free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof."

7.  See A. Scalia and B.A. Garner, *Reading Law: The Interpretation of Legal Texts*, Minnesota, Ed. Thomson/West, 2012, p. 180. See, also, *S.L.G. Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 692 (2011), where we stated that "when the language is confusing, it is the court's duty to fill the gaps and harmonize any provisions that may be conflicting."

8.  See: *Spyder Media Inc. v. Mun. de San Juan*, 194 DPR 547 (2016); *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 266 (2010); *Matos v. Junta Examinadora*, 165 DPR 741, 749 (2005).

9.  *Diccionario de la lengua española*, 22nd ed., Madrid, Ed. Espasa Calpe, 2001, T. I, p. 207.

10. See: *Spyder Media Inc. v. Mun. de San Juan*, supra; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 395 (2012); *Soc. Asist. Leg. v. Ciencias Forenses*, 179 DPR 849, 863 (2010); *CBS Outdoor v. Billboard One, Inc. et al.*, 179 DPR 391, 417 (2010), and *Matos v. Junta Examinadora*, supra, p. 749.

11. Scalia y Garner, *op. cit.*, p. 180.

12. Id.

13. *Spyder Media Inc. v. Mun. de San Juan*, supra; *Soc. Asist. Leg. v. Ciencias Forenses*, supra, p. 862; *AMPR v. Srio. Educación, E.L.A.*, supra, p. 266.

14. Elfrén Bernier and Cuevas Segarra, *op. cit.*, p. 241.

15. Id., p. 242.

16. See History of SB 1434 on the Puerto Rico Office for Legislative Services Procedure Information System, available at http://www.oslpr.org/legislatura/tl2009/tl—busca—avanzada.asp (last accessed May 5, 2016).

17. See Positive Report with Amendments on SB 1434 of February 25, 2010 by the Banking, Consumer Affairs, and


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bco. Santander v. Correa Garcia, 196 D.P.R. 452 (2016)
2016 TSPR 201

    Public Corporations Committee and the Civil Judiciary Committee of the Senate of Puerto Rico from November 10, 2011, and the Report's electronic draft.

[18]    SB 1434 passed by the Senate on February 13, 2012, 16th Assembly, 3rd Regular Legislative Session.

[19]    See Positive Report on SB 1434 of February 25, 2010 by the Judiciary Committee and the Economic Development, Planning, Commerce, Industry, and Telecommunications Committee of the House of Representatives, from June 8, 2012.

[20]    SB 1434 passed with amendments by the House of Representatives on June 25, 2012, House Daily Sessions Record from June 25, 2012, 7th Regular Session, 16th Legislative Assembly, pp. 220, 243, and 246. A transcription is provided below:
"MR. MÉNDEZ-NÚÑEZ: We will now proceed to consider Senate Bill 1434. It is reported by the Judiciary Committee and the Economic Development, Planning, Commerce, Industry, and Telecommunications Committee, *we have some amendments, MADAM SPEAKER.*
MADAM SPEAKER (GONZÁLEZ-COLÓN): Go ahead.
MR. MÉNDEZ-NÚÑEZ: They are the following: […] *On page 5, line 11, to delete [the phrase] 'to set, at the request of a party or motus propio* [sic]*', and replace it with 'in cases where it is considered necessary.'* On page 5, line 14, delete 'but which shall not be at the offices of the mortgagee or its lawyers or legal representatives or advisors to provide the mortgagor, in good faith.' Page 6, line 3, delete 'in good faith.' Page 6, lines 6 to 10, after 'mortgage.', delete 'During the mandatory mediation process, the Court, upon receiving notice from the party that it has been initiated, shall order the immediate stay of the civil action for a period of no less than forty-five (45) days, from the beginning of said action. The Court may revoke the stay order at the request of the party or for just cause.' Page 6, line 21, after 'the same,' add 'in the event that a civil action regarding a foreclosure is filed.' […] That is the amendment to the text.
MADAM SPEAKER (GONZÁLEZ-COLÓN): Any other [amendment]?
MR. LÓPEZ-MUÑOZ: Almost nothing.
MADAM SPEAKER (GONZÁLEZ-COLÓN): If there are no objections to the amendments to the text, the amendments to the text are hereby approved.
MR. MÉNDEZ-NÚÑEZ: Madam Speaker, in order for SB 1434 to be passed.
MADAM SPEAKER (GONZÁLEZ-COLÓN): SB 1434, as amended, is put up for consideration before the House. Those in favor say "aye." Those who are opposed say "no." *Adopted.* (Emphasis supplied.).

[21]    SB 1434 passed by the Senate on June 29, 2012, Senate Daily Sessions Record from June 29, 2012, 16th Assembly, 7th Regular Legislative Session, Year 2012, Vol. LX, Vol. 53. A transcription of what took place on the floor is provided below:
"MR. SEILHAMER-RODRÍGUEZ: Mister Speaker, Senate Bill 1434 was before us for consideration […] In order to concur with the amendments introduced by House to SB 1434.
MR. SPEAKER: If there are no objections, we concur with the amendments introduced on Senate Bill 1434 by the House of Representatives." See Senate Daily Sessions Record, available at http://senado.pr.gov/Diario%20de%20Sesiones/062912.pdf (last accessed May 5, 2015).

[22]    *Diccionario de la lengua española, op. cit.*, T. II, p. 1603.

[23]    See *Shell v. Srio. Hacienda*, 187 DPR 109, 123 (2012).

[24]    Id.

[25]    Id.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bco. Santander v. Correa Garcia, 196 D.P.R. 452 (2016)

2016 TSPR 201

[26]  Id.

[27]  Id., p. 122.

[28]  *Diccionario de la lengua española, op. cit.*, T. I, p. 832.

[29]  Id., p. 630.

[30]  Now, the phrase "It shall be the court's duty, in cases where it is considered necessary" could be contradictory to the rest of the law, provided that the legislator would have not established those two exceptions to the mediation hearing requirement.

[31]  Note that, as opposed to other laws, the statute under consideration does not unduly interfere with the judicial role of the Judicial Branch. See *Vélez Ruiz v. E.L.A.*, 111 DPR 752 (1981).

[32]  In order to subpoena the parties to a mediation [hearing], the court may use Form OAT 1698, "Orden de Referido al Centro de Mediación de Conflictos en Casos de Ejecución de Hipotecas" [Order for Referral to the Center for Conflict Mediation in Foreclosure Cases], or Form OAT 1697, "Orden de Referido a Mediador(a) Privado en Casos de Ejecución de Hipotecas" [Order for Referral to a Private Mediator in Foreclosure Cases]. As for the rules that will govern the mediation process, Art. 5 of the Mandatory Mediation Act provides the following: "[t]he mediation process shall be governed, *insofar as it is not incompatible with this chapter*, by the provisions of Act No. 19 of September 22, 1983, as amended, […] as well as by any regulations approved thereunder." (Emphasis supplied.). Laws of Puerto Rico, *supra*, p. 1670. The above-cited Act No. 19 of September 22, 1983 was created in order to promote the development of informal and alternative dispute resolution mechanisms and required this Court to adopt the necessary rules for the operation of alternate method programs and centers. In line with the above, in 1998 we adopted the Rules for Alternative Measures for Conflict Resolution (Rules), 4 LPRA Ap. XXIX. As provided in Art. 5 of the Mandatory Mediation Act, the above-cited statutes shall only apply to the mediation process to the extent insofar as they are not incompatible.

[33]  See Art. 3 of the Mandatory Mediation Act, 32 LPRA sec. 2882. Concerning the ways to complete the mediation process, Rule 7.10 of the Rules, 4 LPRA Ap. XXIX, provides the following:
"(a) The mediation process may be concluded at any time, by any of the parties involved in the process or by the mediator.
(b) *Once the parties have joined the mediation process, it may be concluded for any of the following reasons:*

  (1) The parties reached an agreement;
  (2) *the parties failed to reach an agreement*;
  (3) *one of the parties failed to appear at the hearing*;
  (4) *one or both parties withdrew from the process*;
  (5) the time period granted by the court for mediation expired and the parties failed to request an extension, or if they requested one, it was not granted, or
  (6) *if it is the view of the mediator that the process is not benefitting the parties.*
(c) Ending the mediation at any stage of the process would not preclude resorting to this process again if circumstances are favorable." (Emphasis supplied.)
As we can see, Rule 7.10(b)(3) of the Rules states that one of the forms in which the mediation may be concluded is when one of the parties fails to appear at the mediation hearing. However, we must clarify that this provision only applies to the default of the debtor, since the Mandatory Mediation Act provides that the creditor requesting the foreclosure of a property that serves as primary residence shall be required to attend the mediation hearing—and to comply with all legal requirements— as a requirement for the court to be able to enter judgment in their favor and to order the judicial sale of the property.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bco. Santander v. Correa Garcia, 196 D.P.R. 452 (2016)

2016 TSPR 201

[34]   Similarly, in *Asoc. Fcias. Com. v. Depto. de Salud*, 157 DPR 76, 82 (2002), we provided that what had been decided in the Opinion was applicable to "all requests for Certificates of Public Convenience and Necessity filed from the date when said decision becomes final and enforceable" and "to all requests that are pending before said agency and for which an adjudicatory hearing has not been held or set […]".
We have stated on more than one occasion that a decision may have both a prospective and a retroactive effect. In this regard, In *Isla Verde Rental v. García*, 165 DPR 499, 505 (2005), we stated that " 'the absolute retroactivity would be the death of public safety and trust, while the absolute non-retroactivity would be the death of legal development." The decision as to whether the application of a case law rule constitutes an exercise of discretion that often depends on the factual situation, the circumstances of the particular case, and equity and hermeneutics considerations.' Id., pp. 505–506. Some of the criteria to declare the retroactive or prospective application of a judicial determination are: " 'the purpose behind the new rule to determine whether it is advanced by its retroactivity; the confidence placed in the old rule, and the effect of the new rule in the administration of justice ".' Id., p. 505. See, also *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 393–394 (2012).

[35]   See Positive Reports with Amendments on SB 1434 of February 25, 2010 by the Banking, Consumer Affairs and Public Corporations Committee and the Civil Judiciary Committee of the Senate of Puerto Rico of November 10, 2011, as well as the electronic draft of the Report. Based on a presentation by the Office of the Commissioner of Financial Institutions, the Committees stated the following:

*"In accordance with our rule of law, a mortgagee is a natural or legal person who grants a loan to another person (principal obligation), secured by a property owned by the person who mortgages said property and over which they have free disposition, or, alternatively, who has been legally authorized to that end.* […]
"[However,] SB 1434 seems to limit the mediation process in the event of an intervention by a mortgage institution as mortgagee. If its inference is correct, it recommends this Committee that […] in defining the mortgagee, this Committee could consider the mortgage pursuant to the provisions of the Civil Code, the Mortgage Act, and the Mortgage Institutions Act, in accordance with the provisions of Act No. 97 of June 5, 1973, as amended, known as the Mortgage Institutions Act, and its corresponding Rules." (Emphasis supplied.)

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.