**Baez Rodriguez v. Commonwealth., 179 D.P.R. 231 (2010)**

2010 TSPR 87

179 D.P.R. 231, 2010 WL 2332131 (P.R.), 2010 TSPR 87

MIGDALIA BÁEZ RODRÍGUEZ, MARISOL VÁZQUEZ AGOSTO, FRANK PADILLA CARRASQUILLO, VÍCTOR M. VEGA BÁEZ, ÁNGEL R. ACOSTA CASTILLO, and JOSÉ ALBERTO LUGO DOMÍNGUEZ, petitioners,

v.

HON. LUIS FORTUÑO, GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO, FISCAL RESTRUCTURING AND STABILIZATION BOARD, DR. MARÍA S. CONTE, EXECUTIVE DIRECTOR OF THE INSTITUTE OF FORENSIC SCIENCES OF PUERTO RICO, and BOARD OF DIRECTORS OF THE INSTITUTE OF FORENSIC SCIENCES, represented by its CHAIR, THE HON. SECRETARY OF JUSTICE, respondents.

In the Supreme Court of Puerto Rico.
*Number:* CC-2009-971

**Synopsis**
*PETITION FOR CERTIORARI* seeking to set aside JUDGMENT *Zadette Bajandas Vélez, Héctor Cordero Vázquez,* and *Bruno Cortés Trigo*, Judges of the Court of Appeals, which reversed the determination of the Court of First Instance and dismissed the complaint filed for lack of jurisdiction. *The Writ of Certiorari is granted and the ruling of the Court of Appeals is set aside. The injunction issued by the Court of First Instance is reinstated rendering the dismissal of the petitioners ineffective, because they are expressly excluded from the application of the layoff plan established in Act No. 7 of March 9, 2009, as amended.*

*Crisanta González Seda*, attorney for petitioners; *Irene S. Soroeta Kodesh*, solicitor general, and *Valerie Díaz Aponte*, assistant solicitor general, attorneys for the respondents.

ASSOCIATE JUSTICE MARTÍNEZ TORRES delivered the opinion of the Court.

The controversy before us is related to the measures to reduce government spending established in Act No. 7 of March 9, 2009, as amended, Special Act Declaring a State of Fiscal Emergency and Establishing a Comprehensive Fiscal Stabilization Plan to Salvage the Credit of Puerto Rico, whose constitutionality was recently evaluated and upheld in *Domínguez Castro et al. v. E.L.A. I,* 178 D.P.R. 1 (2010). On this occasion, we must decide whether the petitioners, employees of the Institute of Forensic Sciences of Puerto Rico, are exempt from the layoff plan provided in Act No. 7, *supra*, as amended, by Act ***236** No. 37 of July 10, 2009. We answer this question in the affirmative.[1]

**I**

Mrs. Migdalia Báez Rodríguez, Mrs. Marisol Vázquez Agosto, Mr. Frank Padilla Carrasquillo, Mr. Víctor M. Vega Báez, Mr. Ángel R. Acosta Castillo, and Mr. José A. Lugo Domínguez are career employees of the Institute of Forensic Sciences of Puerto Rico. These six employees have positions classified as Controlled Substances and other Special Screening Tests Coordinators in the Institute of Forensic Sciences of Puerto Rico. According to the position description in the personnel record, the duties of these employees include, to coordinate the activities on the day of collection of samples from employees and other persons for drug and alcohol testing; administer alcohol-breath tests; collect hair and saliva samples for DNA testing; collect fingerprints; receive samples and verify the collector together with the test subject; seal the sample and then sign his or her initials; keep control of the samples received in the testing site; keep a record of every incident in the process; appear as requested, as witness or expert witness, in administrative and judicial forums, to testify in the cases related to the samples collected, as well as submit briefs and documents to courts and administrative forums. See Appendix of the Petition for a Writ of Certiorari, pp. 79–80. ***237**

In September 2009, the petitioners received letters notifying them that they will cease to hold their positions by virtue of the approval of the Special Act Declaring a State of Fiscal Emergency and Establishing a Comprehensive Fiscal Stabilization Plan to Salvage the Credit of Puerto Rico (Act No. 7). Said letters informed them the reason for their dismissal, among other things. They were also notified of their right to request review of the agency's determination to the Appeals Commission of the Human Resources Administration System (C.A.S.A.R.H.) or, in the case of unionized employees, to the Public Service Labor Relations Commission (Commission). Once they were notified of the layoff, the petitioners filed the complaint that led to this controversy, alleging that the layoff violated the provisions of Section 37.02 of Act No. 7, *supra*, as amended, 3 L.P.R.A. §

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Baez Rodriguez v. Commonwealth., 179 D.P.R. 231 (2010)**

2010 TSPR 87

8797. Petitioners argued that said section excludes pathologists, experts, and technicians of the Institute of Forensic Sciences of Puerto Rico from the involuntary layoff.

For the above reasons, the petitioners requested the Court of First Instance to render the contested layoff ineffective. Said forum ordered the respondents to show cause why the remedy sought should not be granted. In compliance with said order, the respondents filed a brief arguing that the layoff was implemented according to law. It argued that Section 37.02 of Act No. 7, *supra*, grants discretion to the Fiscal Restructuring and Stabilization Board (J.R.E.F.) to determine which employees are excluded [**5] from the application of the layoff plan. Based on this allegation, the respondents argued that the petitioners' layoff proceeded because J.R.E.F. determined that the petitioners did not perform essential functions related to safety, security, education, [*238] health, and welfare; therefore, they were not exempt from the application of the layoff plan. Upon evaluating the briefs of the parties, the Court of First Instance "granted" the complaint and rendered the contested layoff ineffective.

In view of the foregoing, the respondents filed an appeal with the Court of Appeals arguing that the Court of First Instance erred in rendering the layoff ineffective. On the one hand, the respondents contended that the Court of First Instance did not have jurisdiction over claims related to an action taken or decision made in accordance with Chapter III of Act No. 7. It alleged that the jurisdiction to hear claims related to the actions taken or decisions made by virtue of Act No. 7, fell on the Appeals Commission of the Human Resources Administration System (C.A.S.A.R.H.) or, in the case of unionized employees, on the Public Service Labor Relations Commission. In addition, the respondents pointed out that the Court of First Instance erred in determining that the petitioners are excluded from the application of the layoff plan, because the statute grants discretion to J.R.E.F. to determine which employees are essential for the operations of the government and, therefore, which employees are exempt from the application of Act No. 7.

Upon evaluating the briefs of the parties, the Court of Appeals found for the respondents, reversed the determination of the Court of First Instance, and dismissed the complaint for lack of jurisdiction. Dissatisfied, the petitioners filed a petition for a writ of certiorari before us. We granted the respondents time to express themselves on the merits of the petition for a writ of certiorari. Taking the briefs of both parties into consideration, we proceed to evaluate the allegations at hand.

II

[1–2] As a matter of threshold, we must evaluate the jurisdiction issue. In the scope of administrative law arises the issue of determining which forum, the judicial or the administrative, should adjudicate the matter in dispute. The primary jurisdiction doctrine addresses the issue of determining the adequate forum to entertain this matter at first instance. *Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, 155 D.P.R. 906, 921 (2001); *Mun. de Caguas v. AT & T*, 154 D.P.R. 401, 410 (2001). See, for instance, B. Schwartz, *Administrative Law*, 3ra ed., Boston, Ed. Little, Brown and Co., 1991, p. 524. This doctrine was established by case law to "provide guidance and orientation to the courts in determining when they should abstain from exercising jurisdiction, until the agency renders its ruling." D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Colombia, Ed. Forum, 2001, § 8.3, p. 434. In accordance with the foregoing, the primary jurisdiction doctrine truly applies when there is concurrent jurisdiction between the administrative forum and the judicial forum. *See, Ortiz v. Panel F.E.I.*, 2001 TSPR 134, 155 D.P.R. 219, 243, 2001 Juris P.R. 137 (2001); *Aguilú v. P.R. Parking*, 122 D.P.R. 261, 266, (1988); *Ferrer Rodríguez v. Figueroa*, 109 D.P.R. 398, 402 (1980). This means that both forums have statutory jurisdiction to hear the controversy. However, a court must defer to an administrative body to resolve the controversy, because agencies are "better equipped than courts given the specialization and knowledge acquired through experience." *Ortiz v. Panel F.E.I.*, supra, p. 243. See, also, Fernández Quiñones, *op. cit.*, p. 434. *240

[3] In accordance with the foregoing, judges must apply the abstention doctrine as a general rule, "in any case in which the agency's expertise is indispensable in order to resolve the controversy, because the 'courts [are] of law and not academic institutions to decide on technicalities." (Brackets in the original.) *Ortiz v. Panel F.E.I.*, supra, p. 244. See, *Quiñones v. A.C.A.A.*, 102 D.P.R. 746,

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Baez Rodriguez v. Commonwealth., 179 D.P.R. 231 (2010)**

2010 TSPR 87

749–750 (1974). This arises when the questions of fact to be considered require the exercise of adjudicative discretion or the application of the agency's expertise. *See Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, *supra*, p. 921. Therefore, if the controversies presented before the judicial forum do not require the expertise or specialized knowledge of the agency, the court needs not to abstain from exercising its regular authority to hear the matter before it.

**[4]** Now then, when the statute of the agency expressly grants jurisdiction to said administrative entity, then it is a matter of exclusive or statutory jurisdiction. *See* Fernández Quiñones, *op. cit.*, Sec. 8.4, p. 437. Exclusive jurisdiction prevents the application of the *primary concurrent jurisdictio*n doctrine, because the statute itself clarifies that the latter does not exist. *Rivera Ortiz v. Mun. de Guaynabo,* 141 D.P.R. 257, 268 (1996). In other words, the legislator expressly granted exclusive jurisdiction to the administrative entity. *Colón v. Méndez, Depto. Recursos Naturales*, 130 D.P.R. 433, 442 (1992). See, also, Fernández Quiñones, *op. cit.*, p. 438. In such cases, we are facing a legislative mandate and not a doctrine established by case law. *Rivera Ortiz v. Mun. de Guaynabo*, *supra*. Thus, when an enabling act expressly grants jurisdiction to an administrative entity over certain matters, the courts shall not have authority to hear the case in ***241** first instance. Id. See, also, *Municipio Arecibo v. Municipio Quebradillas*, 163 D.P.R. 308, 327 (2004).

**[5]** In order to determine whether or not a statute grants exclusive jurisdiction to an administrative body, we have held that even when the designation of exclusive jurisdiction should be clear and specific, the legislator not always employs the term "exclusive." *Rivera Ortiz v. Mun. Guaynabo*, supra, pp. 270–271. Consistent with the foregoing, in *Junta Dir. Cond. Montebello v. Fernández,* 136 D.P.R. 223, 230 (1994), we pointed out that "[t]o deprive a court of general jurisdiction, of its authority to hear any particular matter, it is necessary that it be expressly provided in any statute or that it arises therefrom by necessary implication." Lastly, it is worth noting that exclusive jurisdiction does not preclude judicial review to which a body's decision may be subsequently subjected. *Rivera Ortiz v. Mun. de Guaynabo*, supra, p. 268; *Junta Dir. Cond. Montebello v. Fernández*, supra, p. 233.

In accordance with the rule discussed, we must determine whether C.A.S.A.R.H. and the Commission created under Act No. 45 of February 25, 1998 (3 L.P.R.A. §1451 *et seq.*), have exclusive jurisdiction over matters involving the layoff of public employees, and, if so, what its scope would be.

### III

**[6]** Section 46(a) of Act No. 7, supra, provides the following:

*Public Interest and forum to settle controversies.*

Even though the issues herein contained are of great public interest, it is also important to watch over the rights of the employees affected by the actions to be taken pursuant to the provisions of this [Chapter III], and thus **[\*242]** offer them the opportunity of achieving a prompt and just solution to their claims:

(a) CASARH *shall have jurisdiction to hear appeals that arise as consequence of the actions or decisions taken pursuant to this [Chapter III] in all that is not in conflict with the same,* submitted by those employees not covered by the provisions of the "Public Service Labor Relations Act", Act No. 45 of February 25, 1998, as amended. It shall likewise have voluntary appellate jurisdiction over employees of those agencies excluded from the application of the provisions of the "Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico of 2004," ..., with respect to appeals arising from actions or decisions made pursuant to this [Chapter III] *in all that is not in conflict with the same.* The proceedings before CASARH shall be governed by the provisions of [Act No. 184 of August 3, 2004, as amended] and its regulations. (Emphasis added) 3 L.P.R.A. § 8810.

A reading of this provision shows that the legislator granted the administrative body jurisdiction over certain matters related to the application of Act No. 7. However, said text clearly establishes that C.A.S.A.R.H. shall have jurisdiction only over appeals that are not in conflict with the provisions of Chapter III. This means that the administrative body was not granted absolute jurisdiction; therefore, we must refer to the provisions of Chapter III to determine the scope of the authority granted.

**[7]** In that regard, Section 37.04(b)(13) of Chapter III of Act No. 7, *supra*, 3 L.P.R.A. sec. 8799(b)(13), provides the following:


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Baez Rodriguez v. Commonwealth., 179 D.P.R. 231 (2010)**
2010 TSPR 87

> The affected employee may request the review by CASARH of the final determination made by the agency, *solely as to his/her seniority,* pursuant to the provisions of [Sec. 13.14 of Act No 184 of August 3, 2004 (3 LPRA § 1468m)], and its regulations. (Emphasis added) ***243**

**[8]** Likewise, regarding unionized employees, Section 37.04(b)(14) Act No. 7, *supra*, provides:

> Those employees who are members of an appropriate unit, whether affiliated or not to a labor union, may review the final determination of the agency, *solely as to his/her seniority, by means of a petition presented to such effect to the arbitrators of the Commission* created pursuant to Act No. 45 of February 25, 1998, in a term not greater than thirty (30) calendar days as of the receipt of the notification from the agency. (Emphasis added)

**[9]** Upon analyzing these provisions in conformity with Section 46 of Act No. 7, *supra*, it may be concluded that both C.A.S.A.R.H. and the Commission created under Act No. 45, *supra*, shall have exclusive jurisdiction over appeals involving matters of the seniority of laid-off employees. Even though the legislator did not specifically employ the term "exclusive," from the above interpreted provisions arises "by necessary implication" the designation of C.A.S.A.R.H. and the Commission as the administrative appellate bodies designated by the legislator to hear controversies involving seniority matters. It must be noted that C.A.S.A.R.H. was created to address matters pertaining to the essential areas of the human resources system. See Section 13, Sec. 13.13 of the Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico, Act No. 184 of August 3, 2004 (3 L.P.R.A. § 1468*l*). The legislator, taking into consideration the expertise of the appellate body over human resources matters, granted said body exclusive jurisdiction over controversies related to employees' seniority.

**[10]** Based on this interpretation, we hold that Act No. 7 excluded from the regular jurisdiction of the courts only those controversies related to ***244** the employees' seniority. See *Domínguez Castro et al. v. E.L.A. I*, supra. When controversies are not limited to matters involving the employees' seniority, the courts have authority to exercise their jurisdictional authority.

In accordance of the foregoing, we hold that this Forum has jurisdiction to resolve the controversy that led to this writ. The arguments presented in the writ before us are not limited to matters involving the seniority of the laid-off employees. On the contrary, the issue raised is strictly a matter of law which requires interpreting the scope of the exceptions applicable to the layoff plan established in Act No. 7. Having resolved this, we will proceed to determine whether the petitioners are excluded from the layoff plan established under Act No. 7 and whether J.R.E.F. acted in contravention of said law by including them in the group of laid-off employees.

### IV

**[11]** This Forum has established as a guiding principle in matters of interpretation, that when interpreting a specific provision of a statute, the courts must consider the purpose sought by the legislator in approving the rule and "our determination must always attribute the sense that will accomplish the intended purpose." (Emphasis suppressed.) *Morell et al. v. Ojeda et al.*, 151 D.P.R. 864 (2000). See, *Chase Manhattan Bank v. Mun. de San Juan*, 126 D.P.R. 759, 766 (1990). Thus, it is our duty to give effectiveness to the clear legislative intent and promote the fulfillment of the true purpose of the law. *Vázquez v. A.R.PE.*, 128 D.P.R. 513, 523 (1991).

**[12]** As provided in Article 14 of the Civil Code, 31 L.P.R.A. § 14, When a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof." By virtue of said rule of interpretation, when interpreting a statute, as a matter of threshold, we must refer the text of the law. This is so, because when the legislator expresses himself in a clear and unequivocal language, the text of the law is the quintessential expression of the legislative intent. See: *Ortiz v. Municipio San Juan*, 167 D.P.R. 609 (2006); *Malavé v. Oriental*, 167 D.P.R. 593 (2006). In accordance with the foregoing, when a statute is clear and is not ambiguous, "there is no need to look beyond the letter of the law in search of the legislative intent." *Rosario v. Dist. Kikuet, Inc.*, 151 D.P.R. 634, 643 (2000).

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 4


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Baez Rodriguez v. Commonwealth., 179 D.P.R. 231 (2010)**

2010 TSPR 87

**[13]** Now then, if the letter of the law is not clear and the literal application thereof would lead to absurd results or to a result that is contrary to the true intent or purpose of the legislator, "the literal interpretation of the statute may be ignored." *Morell et al. v. Ojeda et al.*, supra, p. 878. See *Clínica Juliá v. Sec. de Hacienda,* 76 D.P.R. 509, 520 (1954). In these cases, we must resort to extrinsic sources available to interpret the statute, such as the legislative history of the measure.

**[14]** Lastly, it is worth noting that when the object of interpretation is an amendment to the statue, we cannot charge the Legislature with the performance of a useless act upon approving it. *Flamboyán Gardens v. Junta de Planificación,* 103 D.P.R. 884 (1975). In light of these principles of interpretation, we will proceed to decide the controversy in question.

**V**

**[15]** The Legislative Assembly approved Act No. 7 to declare a state of fiscal emergency and establish a comprehensive fiscal stabilization and thus salvage the credit of Puerto Rico. The purpose of this legislation is **\*246** to address, with urgency, the fiscal crisis that affects the Government of Puerto Rico. To achieve this, the provision includes financial and other measures aimed at reducing government spending.

**[16]** Chapter III of this legislative piece establishes a three-phase plan to reduce government spending. Among the expenditures included are those directly related to the public employees' payroll. Phase II, which is the main issue in this controversy, is a plan to lay off public employees. The statute provides that this layoff plan may be applied only to agencies and employees that are not excluded by Section 37.02 of said statute. When the original statute was approved, Section 37.02, *supra*, provided, in its pertinent part, the following:

> *Exclusion from the application of Phase II*
>
> In order to prevent a negative impact in the services rendered by the Government, and in compliance with the provisions of Section 2 of this Act, *the following employees of the agencies included in this Act, which perform essential functions for the protection of security, education, health and welfare shall be excluded from the provisions of Section 37 of this Chapter III:*

(a) police officers and firefighters;

(b) corrections officers and juvenile officers;

(c) teachers assigned to a classroom;

(d) school librarians;

(e) health professionals (physicians, paramedics, nurses, pharmacists and laboratory technicians);

(f) social workers;

(g) 911 emergency call system operators; and

*(h) pathologists of the Institute of Forensic Sciences.* (Emphasis added) H. B. 1326, 16th Legislative Assembly, 1st Regular Session, p. 63.

According to the cited text, the legislator determined that it was necessary to exclude from the application of Act No. 7 certain public employees that perform essential functions for the protection of security, education, health, and welfare of the People. As the cited **\*247** text clearly shows, the list of eight (8) categories of excluded employees was restrictive in nature.

**[17]** Several months later, this provision was amended by Act No. 37, *supra*. According to the Statement of Motives of this amendment, the legislator deemed it necessary to amend the original text in order to clarify the provisions of Act No. 7, and thus ensure the best interests of the People of Puerto Rico. The Statement of Motives provides the following in its pertinent part:

> This Legislature is responsible for seeing that the measures which comprise Phases I, II, and III of the said Chapter [III] are implemented efficiently and responsibly, and in a manner fully consistent with the public policy objectives of this Act, as provided for under Section 2.
>
> It is therefore of utmost necessity to make such amendments so as to clarify the provisions of Act No. 7, thus guaranteeing that the best interests of the People of Puerto Rico shall be safeguarded. H. B. 1640, 16th Legislative Assembly, 1st Regular Session, p. 3.

With regard to the amendment before us, the following was expressed:

> As for Chapter III, the amendments


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Baez Rodriguez v. Commonwealth., 179 D.P.R. 231 (2010)**

2010 TSPR 87

> included herein (1) *are mainly clarifications, so that the text may be more specifically compliant with the legislative intent*; and (2) seek mainly to extend the date of effectiveness of collective bargaining agreements that have expired or that are to expire during the term of effectiveness of the Act, until March 9, 2011. (Emphasis added.) H. B. 1640, *supra*, p. 4.

Of this portion of the Statement of Motives of Act No. 37, *supra*, we may conclude that the legislator wished to modify the original text in order to conform it to the true legislative intent that led the legislator to create certain exceptions to the application of Act No. 7, *supra*. The expressions of the Hon. Jennifer González, Speaker of the House of Representatives, reaffirm this interpretation: **\*248**

> For such reason, today, we announce additional amendments to Act No. 7, *to extend the exclusion of employees in some areas.*
>
> ........
>
> We are excluding from Act No. 7, that is, from possible layoffs corresponding to phase 2 and phase 3, the Ranger Corps officers, and agents of the Special Investigations Bureau, the Office of the Special Independent Prosecutor, and the Office of Pretrial Services.
>
> And many will ask themselves, why are these employees included in the exceptions? To me, the answer is very simple. These are public safety agencies, and the State cannot allow these agencies go understaffed, mainly in times like these, where crime rates have increased dramatically. Also the State needs to double efforts in those areas; therefore we are providing them, not only with tools, through these exceptions, for these employees to continue doing such an important job in the field of public safety, but also with the upcoming Budget appropriation next Monday, where we have identified additional funds to ensure that these agencies may continue protecting Puerto Rico and that the safety of all Puerto Ricans is not jeopardized.
>
> *In addition, we also exclude from Act No. 7, the members of the Parole Board, Corrections officers, and more importantly, the pathologists, expert and technical personnel of the Institute of Forensic Sciences, who are precisely the people that assist in the solving of one hundred percent of cases.* (Emphasis added.) H. B. 1640, Journal of the House of Representatives, June 19, 2009, p. 7.

After the amendment, in its pertinent part, Section 37.02 provides the following:

> In order to prevent a negative impact on the services rendered by the Government, and in compliance with the provisions of Section 2 of this Act, the following employees of the agencies which, as per their classifications, perform essential functions for the protection of security, education, health and welfare*, as defined by the JREF*, shall be exempted from the provisions on layoffs in this Act:
>
> (a)   Police officers and firefighters, Ranger Corps officers, and agents of the Special Investigations Bureau and the Office of the Special Independent Prosecutor;
>
> (b)   corrections officers and juvenile officers; **\*249**
>
> (c)   teachers assigned to a classroom, including transitory teachers, during the school year;
>
> (d)   directors, librarians, guidance counselors and employees working in lunchrooms attached to the Department of Education;
>
> (e)   teachers of the Puerto Rico Music Conservatory and the School of Plastic Arts;
>
> (f)   health professionals (physicians, paramedics, nurses, pharmacists and laboratory technicians);
>
> (g)   social workers;
>
> (h)   911 emergency call system operators;
>
> (i)   *pathologists and expert and technical personnel of the Institute of Forensic Science*;
>
> (j)   *employees of the Public Service Labor Relations Commission and the Appeals Commission for the Public Service Human Resources Administration System*;
>
> (k)   *Office of Pre-trial Services personnel*;
>
> (l)   *Property Registry personnel*;
>
> (m)   *Parole Board personnel*, and

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.   6


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Baez Rodriguez v. Commonwealth., 179 D.P.R. 231 (2010)**
2010 TSPR 87

(n) *Vocational Rehabilitation counselors and technical support personnel*. (Emphasis added).

Upon analyzing the text of both Section 37.02 of the original statute, as well as the subsequent amendment thereto, it must be concluded that the legislator intended to exclude from the layoff plan employees that perform essential services related to the safety, education, health, and welfare of the People of Puerto Rico. The original text included a restrictive list of eight categories of exempted positions. However, according to the legislative history, the legislator deemed that it was necessary to extend the exceptions to certain positions that are critical for the operations of our Government system. With this amendment, the number of categories expressly excluded increased from eight to fourteen.

The foregoing means that the amendment to the original text achieved the following: (1) it expressly added other positions to the list of employee to which the layoff plan would not apply, because, through their positions, they perform essential functions related to security, education and welfare; (2) it added the phrase "such **\*250** as" to clarify that the list is *numerus apertus*, and (3) granted J.R.E.F. authority to exclude other positions held by employees that perform similar duties to those excluded by the statute, which are essential functions for the protection of security, education, health, and welfare.

Thus, the legislator safeguarded the essential services of the Government, whether through an express statutory exclusion or through the determination made by J.R.E.F about other employees not expressly excluded in the aforementioned provision. With this amendment, the legislator completely addressed the purpose that gave rise to the provision in dispute, that is, to keep essential employees that perform functions and services that are essential to preserving safety, health, education, and welfare of the Government of Puerto Rico.

**[18]** In accordance with the foregoing, J.R.E.F.'s authority under Section 37.02, *supra*, is limited to determine which other employees not included in the list must be excluded from the application of the statute. J.R.E.F. cannot apply the layoff plan to employees whose positions are expressly included in the list established by the legislator in Section 37.02 of Act No. 7, *supra*. An interpretation to the contrary would mean that the amendment limited even further the exceptions provided by statute, by providing that J.R.E.F. will determine which of the employees within said classifications are exempt from the application of Act No. 7. That interpretation would be contrary to the true legislative intent, which is to extend the list of employees excluded from the layoff plan, because their functions are essential to the basic operations of the Government of Puerto Rico. In addition, it would render Section 37.02, *supra*, unnecessary, because the discretionary authority of J.R.E.F. to identify which employees will be laid off and which will not, is the general rule that applies to all **\*251** other employees not included in said Section.

From the legislative history we may conclude that the amendment allows J.R.E.F. to extend the list of exempt employees. J.R.E.F.'s determination that the amendment allows it to reduce the list of exempt employees is contrary to the purpose of the amendment. In other words, as the Speaker of the House of Representatives said, pathologists, experts and technical personnel of the Institute of Forensic Sciences were excluded from the layoff plan, not some of them, as the respondent wrongly asserts.

According to this interpretation, we proceed to determine whether the petitioners are exempt from the application of Act No. 7.

**VI**

According to the record under consideration, the petitioners are career employees of the Institute of Forensic Sciences of Puerto Rico, whose position is classified as Controlled Substances and other Special Screening Tests Coordinator. According to the position description in the personnel record, the duties of these employees include, to administer alcohol-breath tests; collect hair samples and fingerprints, and appear as expert witness in administrative and judicial forums to testify in the cases related to the samples collected. That is, these employees perform technical and expert duties for Institute of Forensic Sciences of Puerto Rico.

According to the above discussion, we hold that the petitioners are expressly protected by the exception established in Section 37.02(i) of Act No. 7, *supra*, as amended. Therefore, the Court of First Instance acted correctly **\*252** by declaring the dismissal of the petitioners null and void.

**VII**

For all of the foregoing, we grant the writ of certiorari, *set aside the judgment of the Court of Appeals, Judicial Region of San Juan, Panel III, and reinstate the*


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Baez Rodriguez v. Commonwealth., 179 D.P.R. 231 (2010)**

2010 TSPR 87

*injunction issued by the Court of First Instance, San Juan Part, rendering the dismissal of the petitioners ineffective, because they are expressly excluded from the application of the layoff plan established in Act No. 7*, supra, *as amended.*

*Judgment shall be entered accordingly.*

**Footnotes**

[1]   Through an opinion issued today, we analyzed the same provisions of law to conclude that several employees of the Juvenile Institutions Administration are not excluded from the layoff plan provided in Act No. 7 of March 2009, as amended, See, *Negrón Matos et al. v. E.L.A.*, 179 D.P.R. 217 (2010).

**End of Document**                                   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.