Case:17-03283-LTS Doc#:16780-13 Filed:05/19/21 Entered:05/19/21 18:13:36 Desc: Exhibit K Page 1 of 10

CERTIFIED TRANSLATION

Engineering Services International, Inc. v. Authority of..., 2020 WL 5659443...

2020 TSPR 103

2020 WL 5659443 (P.R.), 2020 TSPR 103

ENGINEERING SERVICES INTERNATIONAL,
INC., Petitioner
v.
PUERTO RICO ELECTRIC POWER AUTHORITY,
Respondent
Puerto Rico Energy Commission (PREC),
Respondent Agency.

In the Supreme Court of Puerto Rico.
Case Number: CC-2018-513
San Juan, Puerto Rico, as of September 14, 2020.

Certiorari
Court of Appeals: Judicial Region of San Juan and Caguas, Panel IV

Petitioner's Attorney: Attorney Manuel Fernández Mejías

Respondent's Attorneys: Attorney Jorge R. Ruiz Pabón, Attorney Carlos M. Aquino Ramos, Attorney Fernando J. Fornaris Fernández, Attorney Victoria D. Pierce King

Puerto Rico Energy Commission: Attorney Sylvia B. Ugarte Araujo

Subject Matter: Constitutional Law - Right of Access to Public Information. The Electric Power Authority is required to publish the resolutions issued by its Governing Board, prior to the amendment introduced by the Puerto Rico Energy Public Policy Act, Act No. 17-2019, which ordered it prospectively.

Opinion of the Court issued by the ASSOCIATE JUSTICE MR. ESTRELLA MARTÍNEZ.

**\*1** We are responsible for addressing a dispute related to access to information generated by one of Puerto Rico's main public corporations. Specifically, we must decide whether the Electric Power Authority is required to publish the resolutions issued by its Governing Board, prior to an amendment to the organic law that orders it on prospective terms. Under the right of access to public information and after a full study of the applicable law, we resolve it in the affirmative. With this in mind, let us look at the factual and procedural background of the dispute before us.

I.

On May 10, 2017, the corporation Engineering Services International, Inc. (ESI or the petitioner) filed a complaint with the Puerto Rico Energy Commission (PREC) against the Puerto Rico Electric Power Authority (PREPA or the respondent). ESI claimed that PREPA had not published certain records and minutes from the meetings of PREPA's Governing Board. ESI argued that these were public documents to be disclosed under the *Puerto Rico Electric Power Authority Act, infra.* Because of the above, ESI requested that the PREC order the publication of the records and minutes at issue.

On its part, PREPA sought the dismissal of the complaint submitted on the grounds of several arguments. Regarding the dispute before us, PREPA indicated that it had already published the information requested by ESI. As a result, the PREC ordered ESI to show why the complaint submitted should not be dismissed.

In compliance with that order, ESI appeared before the PREC and maintained that, although PREPA published the records and minutes requested, its claim should not be dismissed. This was so, as ESI amended the complaint in order to clarify that PREPA had an obligation to disclose both the records and minutes from the meetings and the final **resolutions** issued by its Governing Board. ESI indicated that the records, minutes, and resolutions of PREPA's Governing Board were public documents, and PREPA was therefore required to publish them. The petitioner noted that, prior to 2014, PREPA sporadically published the resolutions issued, and even included an image of the website on which they were disclosed.[1] ESI claimed that, after 2015, the respondent ceased to publish the decisions. Similarly, the petitioner stated that, at the point, it had no access to any resolution because that website was deleted. Accordingly, ESI requested the publication of the resolutions issued by PREPA's Governing Board from 2015 to 2017.

**\*2** By a motion in opposition, PREPA claimed that ESI's request constituted a "fishing expedition", since it did not explain the purpose or need for obtaining such information. It also argued that the *Puerto Rico Electric Power Authority Act, infra,* establishes that PREPA should publish the records and minutes of its Governing Board meetings, but not the resolutions.

In response, ESI replied that its right to access public information was not subject to it substantiating its request, as it was the "right of the people of Puerto Rico to know the truth of what



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

is happening in PREPA".[2] For that purpose, it emphasized that, in this context, "there is no space for talking about a 'fishing expedition'".[3]

In addition, ESI argued that the *Puerto Rico Electric Power Authority Act, infra*, established a public policy of transparency and access to information. In accordance with the foregoing, the petitioner noted that the fact that that statute referred to the publication of records and minutes does not presuppose the automatic confidentiality of the decisions by PREPA's Governing Board. In that line, the petitioner claimed that it was PREPA the one having the burden of proof to substantiate why the information requested was confidential.

On the other hand, PREPA submitted a rejoinder in which it reiterated the arguments put forward. To that end, it insisted that ESI had no legal basis for accessing that information and that it had to specify the purpose of its request.

In the face of this situation, the PREC determined that the resolutions of PREPA's Governing Board "are the documents containing the formal decisions, as well as the actions taken by the public corporation".[4] The CEPR reasoned that "[t]hese are the most relevant documents for understanding and knowing how the Authority operates".[5] It therefore concluded that, although the *Puerto Rico Electric Power Authority Act, infra,* required only the publication of records and minutes, the statute established a firm public policy in favor of transparency and citizen participation. As a result, it ruled that "the principle of accountability and transparency set out in Act 57-2014, which governs the country's energy market, makes essential the publication and the easy access to citizens of the Resolutions of the Authority's Governing Board".[6] Consequently, the PREC ordered PREPA to disclose its Governing Board's resolutions within thirty days, through an electronic mechanism that is easily accessible and free of charge to the public.

**\*3** Dissatisfied, PREPA filed *a Motion for Reconsideration* with the PREC. The PREC did not adjudicate the request, so PREPA appeared in due course before the Court of Appeals through a recourse for judicial review. In it, the respondent argued, among several points, that the applicable law did not require the publication of the resolutions of PREPA's Governing Board. On its part, ESI opposed the action and reiterated the arguments put forward before the administrative forum.

In this way, the intermediate appeal forum reversed the PREC's decision and ruled that the *Puerto Rico Electric Power Authority Act, infra,* did not require PREPA to disclose its Governing Board's resolutions. This is so, since it interpreted the statute only requiring the publication of the records and minutes.

Dissatisfied with the determination of the Court of Appeals, ESI appears before us through an appeal of *certiorari*. In short, the petitioner argues that, both from the text of the law and from its legislative history, there is a clear and firm legislative intention in favor of transparency and citizen participation. To that end, it argues that those principles can only be fulfilled if the public is aware of the decisions made by PREPA. In that direction, it notes that a comprehensive reading of the statute results in the inevitable conclusion that PREPA is required to disclose the decisions issued by its Governing Board, as well as the records and minutes of its meetings.

Moreover, PREPA objects to the appeal and reiterates that its organic law only requires the publication of records and minutes. It also states that the reproduction of the requested decisions would be onerous for PREPA. This is so, since it argues that several resolutions may arise from each meeting of PREPA's Governing Board and that, prior to its publication, PREPA would have to edit them to omit confidential information. In accordance with the foregoing, it claims that the PREC's order to reproduce that information within thirty days is unsustainable.

On 26 October 2018, the Plenary Court agreed to address the recourse before us. With the benefit of the appearance of both parties, we proceed to resolve.

II.

A.

As it is known, Puerto Rico's citizens enjoy a right of access to public information, which ensures that everyone can examine the content of files, reports, and documents collected by the State in their governmental efforts. *Ortiz v. Dir. Adm. de los Tribunales, 152 DPR 161, 175 (2000).* The right of access to public information is an inherent principle of every democratic society, so we have been consistent in recognizing its fundamental and constitutional character. *Trans Ad de P.R. v. Junta de Subastas, 174 DPR 56, 67 (2008)*; *Ortiz v. Dir. Adm. de los Tribunales,* supra; *Soto v. Srio de Justicia, 112 DPR 477, 503 (1982).* This is so, by virtue of the view that its exercise is


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Engineering Services International, Inc. v. Authority of..., 2020 WL 5659443...

2020 TSPR 103

closely linked to the rights of freedom of expression, press, and association. Art. II, Sec. 4, Const. ELA (Commonwealth of Puerto Rico Constitution), LPRA, Volume 1; *Soto v. Srio de Justicia,* supra, pp. 485-486. In line with this constitutional mandate, our order has statefully recognized that "[e]very citizen has the right to inspect and obtain a copy of any Puerto Rico public document, except as expressly provided otherwise by law". Article 409 of the Puerto Rico Code of Civil Procedure, 32 LPRA sec. 1781.

**\*4** The right of access to public information is based on the premise that everyone has the right to know and hear about government affairs. E. Rivera Ramos, *La libertad de información: La necesidad de su reglamentación en Puerto Rico (Freedom of Information: Need for Its Regulation in Puerto Rico),* 44 Rev. Jur. UPR 67, 67-68 (1975). In a democratic society, "it is imperative to recognize the common citizens' "legal right to examine and investigate how their affairs are conducted". *Ortiz v. Dir. Adm.de los Tribunales,* supra (quoting *Soto v. Srio de Justicia,* supra, 485). In this way, knowledge of public administration activities facilitates the free discussion of government issues and the full exercise of freedom of expression. Colón Cabrera v. Caribbean Petroleum, 170 DPR 582, 590 (2007).

In turn, the right to access public information is an indispensable catalyst for citizen participation. *Trans Ad de P.R. v. Auction Board,* supra, p. 70. The flow of public information generates informed discussions and strengthens the ability of citizens to participate effectively and intelligently in government affairs.

Access to information is also an essential control tool, allowing people to make informed judgments about their government's actions. *Colón Cabrera v. Caribbean Petroleum,* supra. Our democratic principles "guarantee the right of the people to pass an oversight judgment on all the actions and determinations of the Government". *Trans Ad de P.R. v. Junta de Subastas,* supra, p. 67. Otherwise, "[a]llowing the government's administration of public affairs under the cloak of secrecy is to invite arbitrariness, mismanagement, government indifference, public irresponsibility, and corruption." Rivera Ramos, *op.cit.,* 69. For this reason, "[t]oday secrecy in public affairs is the exception and not norm". Santiago v. Bobb y El Mundo, Inc., 117 DPR 153, 159 (1986). In this way, the right of access to public information promotes and facilitates government transparency.

However, the right of access to public information is activated once the information requested by a person is, in fact, public. For these purposes, Article 1(b) of *the Puerto Rico Public Documents Administration Act,* Act No. 5 of December 8, 1955, as amended, 3 LPRA sec. 1001, establishes that the following shall be considered a public document:

> **\*5** ... [A]ny document which originates, or is kept or received in any dependency of the Commonwealth of Puerto Rico according to the law or in relation with the management of public affairs and which, in accordance with the provisions of sec. 1002 of this title, is required to be permanently or temporarily preserved as evidence of transactions or because of its legal value. It includes those produced electronically that meet the requirements established by laws and regulations.

Once a document is classified as public, every citizen, just for being such, has active legitimacy to request and access public information. *Colón Cabrera v. Caribbean Petroleum,* supra, p. 589; *Ortiz v. Dir. Adm. de los Tribunales,* supra, p. 176. This is so, since, "to the extent that every citizen has the right to inspect any public document, the act of denying access, by itself, causes the requester clear, palpable, and real harm". *Ortiz v. Dir. Adm. de los Tribunales,* supra, p. 177.

As a corollary to the above, the right of access to public information necessarily requires the State to disclose public information in order to "expedite the pursuit of interested citizens -- including critics and adversaries – in figuring out the truth and to avoid obstacles in the way." *Soto v. Srio de Justicia,* supra, 504. Therefore, the right of access to information materializes to the extent that the State discloses and publishes information related to its governmental efforts.

However, this Court has recognised certain cases in which the State may claim the confidentiality of public information. To this end, we have decided that a claim of confidentiality by the State may succeed by way of exception when the State **accurately and unequivocally** proves

---


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:16780-13 Filed:05/19/21 Entered:05/19/21 18:13:36 Desc: Exhibit K Page 4 of 10

CERTIFIED TRANSLATION

Engineering Services International, Inc. v. Authority of..., 2020 WL 5659443...

2020 TSPR 103

any of the following: (1) a law so declares; (2) communication is protected by some evidentiary privilege; (3) disclosure of information may damage the fundamental rights of third parties; (4) a confidant is involved, according to Rule 515 of Evidence 2009, 32 LPRA Ap. VI, or (5) it is official information under Rule 514 of Evidence 2009, 32 LPRA Ap. VI. *Santiago v. Bobb y El Mundo, Inc.,* supra.

As clearly recognized by this Court, the restrictions imposed by the State to deny access to information must satisfy the criteria of **strict scrutiny.** See *Bhatia Gautier v. Governor, 199 DPR 59, 82 (2017)*; *Ortiz v. Dir. Adm. de los Tribunales,* supra, p. 178; *Colón Cabrera v. Caribbean Petroleum,* supra, p. 593. Therefore, by relying on any of the above exceptions, the State cannot capriciously or arbitrarily deny access to public information. *Colón Cabrera v. Caribbean Petroleum,* supra, p. 590. On the contrary, by claiming the confidentiality of any public document, "the State has the burden of proving that it satisfies any of the exceptions listed above". Id., 591. Consequently, any refusal of the State to disclose public affairs must be duly substantiated and justified. In this context, "mere generalizations are not sufficient". *Santiago v. Bobb y El Mundo, Inc.,* supra.

**\*6** In the event of disputes of this nature, courts should be "cautious in lightly granting any request for state confidentiality". *Santiago v. Bobb y El Mundo, Inc.,* supra. Thus, "[i]n the face of the State's hermetic resistance to making viable the right of access to information, it is a responsibility of the courts to open up the path." *Soto v. Srio de Justicia,* supra, 504. Otherwise, "we would be backtracking the steps advanced in favor of the right of access to government information and equality -- in the contentious sphere -- between the state and private citizens." *Santiago v. Bobb y El Mundo, Inc.,* supra, 160.

**B.**

With such guiding principles, we proceed to set out the development of the statutory framework governing PREPA. PREPA is a public corporation run by a governing entity, its Governing Board, which exercises the general policy and strategic direction of the entity. *Puerto Rico Electric Power Authority Act,* Act No. 83 of May 2, 1941, 22 LPRA secs. 193-194. PREPA's Governing Board has, among several responsibilities, a duty to "develop and maintain a clear and transparent accountability framework", to establish "a model of participatory and dynamic governance" and to implement operational measures. 22 LPRA sec. 194.

As a corollary to the above, PREPA's Governing Board issues a series of documents after regular and extraordinary meetings, in which the above-outlined work is carried out. These documents include agendas, schedules, records, minutes, and resolutions.

However, PREPA is governed mostly by the provisions of its organic law, the *Puerto Rico Electric Power Authority Act, supra,* 22 LPRA secs. 191-240a. As expected, that statute has been amended on numerous occasions for a variety of purposes. As far as what is relevant to the dispute under our consideration, the *Puerto Rico Electric Power Authority Act, supra,* was amended by Act No. 29-2013, 2013 LPR 350-360 (Part 1). Among several matters, Act No. 29-2013 aimed to ensure that PREPA operates "efficiently and **transparently**". (Emphasis supplied). Id., 2013 LPR 350.

**\*7** In order to achieve this endeavor, the Legislative Assembly determined that citizens needed to know about the events and decisions taken at the meetings of PREPA's Governing Board. To that end, Act No. 29-2013, *supra,* established the following:

> Regular, extraordinary, and committee meetings of the [Governing] Board shall be private. However, **the work agendas and the records (minutes) of the regular and extraordinary meetings of the Board will be published** on the Authority's Internet portal, once approved by the Board at a subsequent meeting. (Emphasis supplied). 2013 LPR 355.

Thus, PREPA would be required to disclose "what happened, treated, or agreed" by the Governing Board. 2013 LPR 356. In this way, the right of Puerto Rican citizens to know the PREPA's efforts was strengthened through a measure that did not turn out to be onerous for the government entity.

However, the publication of that documentation was subject to the deleting of certain confidential information

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 4


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

by PREPA's Governing Board. This is so, since the Legislative Assembly provided that some elements and matters should be omitted from the documents that arose under these meetings. To that end, Act No. 29-2013, *supra,* specified that, prior to the publication of these documents, the following subjects could be deleted:

> (i) [A]ny information that is privileged under the provisions of the Evidence Rules, (ii) any information related to the negotiation of collective agreements, (iii) the ideas discussed in connection with the negotiation of potential Authority contracts, (iv) any information on strategies in disputed matters of the Authority, (v) any information on internal investigations of the Authority while they are ongoing, (vi) the intellectual property of third parties, and (vii) the business secrets of third parties. 2013 LPR 355.

As can be seen, the same statute identified information which, according to the criteria of the Legislative Assembly, should not be disclosed.

In line with that, the legislative history shows a clear intention of the Legislative Assembly to promote greater transparency in PREPA's operations. In particular, the Puerto Rico Senate Committee on Government, Government Efficiency, and Economic Innovation explained that "more information needs to be provided to the public and the addition of a higher level of openness is needed in the data and information that will be available to public scrutiny." *Informe recomendando la aprobación del P. de la C. 715, con enmiendas (Report Recommending the Approval of House Bill 715, with Amendments),* Commission on Government, Government Efficiency, and Economic Innovation, 18 April 2013, 1st Ordinary Session, 17th Legislative Assembly, 10. It was rightly estimated that "this publicity requirement will not result in significant expenditures of Authority funds, but will be a significant step in keeping the public informed of the work and decisions of the Board and the use of PREPA resources". Id.

*8 Subsequently, *the Energy Transformation and Relief Act,* Act No. 57-2014, 22 LPRA secs.1051-1056, again amended the PREPA's organic law, in order to further strengthen access to the entity's public information. From the statement of motives, it is understood that it was adopted with the intention of transforming PREPA through a series of amendments, including the implementation of "mechanisms to promote greater citizen participation and access to information". *Energy Transformation and Relief Act,* Act No. 57-2014, 2014 LPR 305.

This effort materialized with the creation and implementation of a public policy in favor of "promoting [] transparency and citizen participation **in** all processes related to energy service in Puerto Rico". (Emphasis supplied). *Energy Transformation and Relief Act, supra,* 22 LPRA sec. 1051. Similarly, the legislation requires the implementation of a "variety of mechanisms to allow customers of the Authority and certified energy-generating companies in Puerto Rico to have spaces to express their concerns, give suggestions, and be included in decision-making processes". 22 LPRA sec. 1051a. In accordance with this public policy, the statute provides that:

> **[A]ll information,** data, statistics, reports, plans, reports, and documents **received and/or disclosed** by any of the agencies created by this Act, by the Authority, and by any energy company shall be subject to the following principles:
>
> (1) The information must **be complete,** with the exception of information that must be deleted as privileged under the Rules of Evidence adopted by the Judicial Branch of Puerto Rico;
>
> (2) disclosure of information should be **timely;**
>
> ...
>
> (4) information should **not** be subject to broader confidentiality rules than is necessary;
>
> ...
>
> (6) the public will have **access** to the information electronically without having to register or open an account, and free of charge;
>
> ... (Emphasis supplied). 22 LPRA sec. 1051b.

Therefore, the legislation establishes that any documentation received or generated by PREPA is


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS Doc#:16780-13 Filed:05/19/21 Entered:05/19/21 18:13:36 Desc: Exhibit K Page 6 of 10

Engineering Services International, Inc. v. Authority of..., 2020 WL 5659443...

2020 TSPR 103

public information that must be disclosed to the general public.

**\*9** In addition, the statute repealed the previous provisions establishing the privacy of PREPA's Governing Board meetings by establishing that "[t]he ordinary and extraordinary meetings of the Board must be **transmitted** simultaneously over the Internet and subsequently made available on the Authority's Internet portal". (Emphasis supplied). *Puerto Rico Electric Power Authority Act, supra,* 22 LPRA sec. 194.

Similarly, the *Energy Transformation and Relief Act, supra,* kept the guideline of publishing "what happened, what was treated, or what was agreed on the Board" by disclosing the schedules, agendas, and records (minutes) of the meetings. *Puerto Rico Electric Power Authority Act, supra,* 22 LPRA sec. 194. Similar to the previous amendment, the publication of such information is subject to the omission of certain confidential information contained in such documents by PREPA's Governing Board. For these purposes, the statute specifies that, prior to the publication of these documents, the following subjects should be deleted:

> (i) [I]nformtion that is privileged under the provisions of the Puerto Rico Evidence Rules; (ii) information related to the negotiation of collective agreements, labour disputes or personnel matters, such as appointments, evaluations, discipline, and dismissal; (iii) ideas regarding the negotiation of potential Authority contracts or the determination to resolve or terminate existing contracts; (iv) information on strategies in disputed matters of the Authority; (v) information on internal investigations of the Authority while they are ongoing; (vi) aspects of the intellectual property of third parties; (vii) third-party business secrets; (viii) matters to be kept by the Authority in confidence under any confidentiality agreement; or (ix) public safety matters of the Authority, its assets, or its employees, or related to threats against them. Id.

As can be seen, the Legislative Assembly expressly and specifically identified those issues which it understood should not be disclosed to the public.

In this way, the *Energy Transformation and Relief Act, supra,* amended the applicable framework to enable access to PREPA's information and operations. As a result, "[f]rom the tariff-review process to that of its day-to-day operations, PREPA is subject to a **constant duty to inform the people."** L.A. Avilés, *La Comisión de Energía de Puerto Rico y la Autoridad de Energía Eléctrica: Hacia un modelo colaborativo de regulación tarifaria (The Puerto Rico Energy Commission and the Electric Power Authority: Towards a Collaborative Model of Tariff Regulation),* 7 U. P.R. Bus. LJ 310, 329 (2016). Due to the "high degree of transparency that the law wants to achieve", it has been interpreted that "every citizen, being legitimized, can obtain the relevant and necessary information to claim his/her rights under the law or demand its compliance". Id.

**\*10** Like the text of the law, the legislative history of the *Energy Transformation and Relief Act, supra,* shows a strong legislative intention to promote greater transparency in PREPA and to ensure access to its public documentation. This statute was the product of several bills in both legislative bodies, which were intended to "increase and facilitate public access to information on the functioning and operation of the Authority, giving greater transparency to the processes". *Informe positivo sobre el Sustitutivo del Senado al P. del S. 837, P. del S. 838, P. del S. 839, P. del S. 840, P. del S. 841, P. del S. 842, P. del S. 843, P. del S. 881, P. del S. 882 y al Sustitutivo de la Cámara de Representantes al P. de la C. 1457 y el P. de la C. 1618 (Positive Report on the Senate Substitute Bill to the Senate Bill 837, Senate Bill 838, Senate Bill 839, Senate Bill 840, Senate Bill 841, Senate Bill 842, Senate Bill 843, Senate Bill 881, Senate Bill 882, and to the House Substitute Bill to the House Bill 1457 and House Bill 1618),* 12 May 2014, 3rd Ordinary Session, 17th Legislative Assembly, on page 3.

In line with this, one of the main objectives of the measure was "[t]o enjoy greater transparency and citizen participation in the administrative and operational processes of the Electric Power Authority, recognizing that Puerto Rico citizens are the ones that own that public corporation". *Diario de Sesiones del Senado de Puerto Rico (Puerto Rico Senate Session Journal),* 3rd Ordinary Session, 17th Legislative Assembly (March 20, 2014), p. 14003. Thus, "the principles of transparency, collaboration, and citizen participation would be the parameters of action" for PREPA. Id., p. 14005.

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 6

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:16780-13 Filed:05/19/21 Entered:05/19/21 18:13:36 Desc: Exhibit K Page 7 of 10

CERTIFIED TRANSLATION

Engineering Services International, Inc. v. Authority of..., 2020 WL 5659443...

2020 TSPR 103

In addition, it was understood that "the country deserves from its public corporation to know what is going on in there, not because they might be doing it right or wrong, but because it is the right thing for one to know how things are done in that corporation. And this reform seeks to push the Authority; it leads the Authority to be more transparent with everyone." *Diario de Sesiones de la Cámara de Representantes (Puerto Rico House of Representatives Session Journal),* 3rd Ordinary Session, 17th Legislative Assembly (May 13, 2014), p. 217. Similarly, the measure was based on the premise that, "[w]ithout the transparency we require not only of the Authority, but of the entire government, we will never have the trust of the people and, without the trust, we could lose our democratic system." Id, p. 265.

Finally, following the facts before our consideration, the *Puerto Rico Electric Power Authority Act, supra,* was recently amended by the *Puerto Rico Energy Public Policy Act,* Act No. 17-2019, http://www.oslpr.org/2017-2020/leyes/pdf/ley-17-11-Abr-2019.pdf. This statute maintains the amendments incorporated through the *Energy Transformation and Relief Act, supra.* In other words, public policy for transparency and citizen participation in PREPA remains in force, and the Governing Board continues to be required to publish its meetings' records, schedules, and minutes.

*11 However, in line with the legislative intention behind the above amendments, it was expressly clarified that PREPA must maintain an Internet portal with free access to provide a variety of documents, including "[c]opy of all its contracts and the **resolutions** of the Governing Board". (Emphasis supplied). *Puerto Rico Energy Public Policy Act, supra,* p. 45. However, the validity of this amendment is prospective, as expressly provided for in Article 8.6 of the Statute. Id., p. 120. This, together with PREPA's repeated pattern of objections, leads us to a case and controversy that requires to ponder the petitioner's and the State's claims in accordance with law.

### C.

Finally, the principles of legal hermeneutics applicable to the dispute before our consideration need to be noted. As it is well known, in Puerto Rico's legal system, a number of rules are established to guide our adjudicative role in interpreting the statutes approved by the Legislative Assembly. To this end, it is a cardinal principle that any law is presumed constitutional, since it is understood that the Legislative Assembly acts in accordance with constitutional mandates and prohibitions. *Acevedo Vilá v. Meléndez, 164 DPR 875, 884 (2005)*.

Likewise, it is known that, "[w]hen the law is clear free from all ambiguity, its letter should not be belittled under the pretext of fulfilling its spirit." Article 14 of the Puerto Rico Civil Code, 31 LPRA sec. 14. Because of the above, the courts must first turn to the text of the laws before us. In this endeavor, we must fully study the statute interpreting its provisions as a whole, but not in separate sections. *Const. José Carro v. Mun. Dorado, 186 DPR 113, 127 (2012).* For this reason, "we are obliged to harmonize, as far as possible, all the provisions of the law, in order to obtain a more sensible, logical, and reasonable result". *Rosado Molina v. ELA y otros, 195 DPR 581, 590 (2016).*

However, if ambiguities, doubts, or gaps arise when studying the statute as a whole, we must interpret its provisions in accordance with legislative intent. *Spyder Media, Inc. v. Mun. de San Juan, 194 DPR 547, 556 (2016).* This is so, since "the letter of the law should not be blindly followed when it would be detrimental to its spirit and its end". *Rivera Fernández v. Mun. Carolina, 190 DPR 196, 202 (2014).* In that direction, this Court has reiterated that the Judicial Branch has a responsibility to assess the legislative purpose of the laws when the following circumstances occur:

> *12 Courts are authorized **to interpret** laws when, among others, they are unclear or inconclusive on a particular point; when the objective, in doing so, is to fill a gap in them; or when, for the purpose of mitigating the adverse effects of law enforcement on a particular situation, justice so requires. (Emphasis on the original). *Consejo Titulares v. Gómez Estremera et al., 184 DPR 407, 428-429 (2012)*; *Pueblo v. Vega Vélez, 125 DPR 203, 214 (1990).*

In these circumstances, "there is only a rule of


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:16780-13 Filed:05/19/21 Entered:05/19/21 18:13:36 Desc: Exhibit K Page 8 of 10

CERTIFIED TRANSLATION

Engineering Services International, Inc. v. Authority of..., 2020 WL 5659443...

2020 TSPR 103

interpretation that is **absolutely unchanged,** and this is that **the true intention and desire of the legislative branch must be discovered and enforced."** (Emphasis on the original). R.E. Bernier and J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico (Approval and Interpretation of Laws in Puerto Rico),* 2nd revised ed., San Juan, Pubs. J.T.S., 1987, Vol. 1, Chapter 30, p. 242. Therefore, our goal shall be to effectively assess and identify the will of the Legislative Assembly.

To this end, courts can use sources extrinsic to the text of the law, such as legislative history, committee reports, and legislative debates. *Cordero Vargas v. Pérez Pérez, 198 DPR 848, 864 (2017).* In this exercise, "in interpreting and applying a statute, it must be done with the social purpose that inspired it in mind". *Departmento de Hacienda v. Telefónica, 164 DPR 195, 204 (2005).* "This seeks to prevent obtaining conclusions or interpretations that lack legal logic or a sense of justice, when interpreting a statute." Id., p. 940.

It is also a standard of hermeneutics that "[t]he laws referring to the same subject matter or whose subject matter is the same must be interpreted by referring to each other, for what is clear in one of its precepts can be taken to explain what is doubtful in another." Article 18 of the Puerto Rico Civil Code, 31 LPRA sec. 18. According to the above, when confronting various statutes related to each other, we must interpret them "as a harmonious whole, read them together, and not interpret their provisions in isolation". R.E. Bernier and J.A. Cuevas Segarra, *op. cit.,* Chapter 73, p. 481. In these circumstances, it is presumed that the laws governing the same matters "reflect the public policy enacted by the Legislative Assembly and that its provisions must be interpreted by referring to each other as a whole". *Cardona v. Depto. Recreación y Deportes, 129 DPR 557, 568-569 (1991).*

**\*13** When examining the applicable law, we proceed to resolve the dispute before our consideration.

### III.

As we explained above, ESI requests that PREPA publish the resolutions agreed at the meetings of PREPA's Governing Board, as well as disclose the relevant records and minutes. The petitioner argues that resolutions are public documents and that, in accordance with the public policy promoting access to information and transparency at PREPA, they must be disclosed to the public.

For its part, PREPA argued before the primary forums that it is not required to disclose the resolutions of its Governing Board because ESI did not substantiate or justify the need to access those documents. It also states that the *Puerto Rico Electric Power Authority Act, supra,* requires only the publication of records and minutes. Finally, it insisted that it would be very onerous to reproduce the resolutions for approximately forty-two meetings held between 2015 and 2017.

From the outset, it is necessary to determine whether the decisions requested by ESI constitute public information. As explained above, a public document is the one that originates, is retained, or is received in any State unit in relation to the administration of public affairs. *Puerto Rico Public Documents Administration Act, supra,* 3 LPRA sec. 1001(b).

The Governing Board manages the matters and operations of PREPA, which is a public corporation. On their part, the disputed resolutions are documents that evidence the "formal decisions, as well as the actions taken" by the Governing Board at its meetings.[7] Consequently, decisions are documents generated in the administration of public affairs and therefore constitute public information.

Once it is concluded that the information requested by ESI is public documentation, the right of every citizen to access it is activated. *Ortiz v. Dir. Adm. de los Tribunales,* supra, p. 176. As this Court has stated before, every person, just for being so, has the right to access public information. Id. In addition, it is apparent from the statutory framework described above that PREPA is required to disclose documentation related to its matters and operations, regardless of the reason why any person requests it. ESI therefore does not have a duty to explain why it is interested in accessing PREPA's public documents.

**\*14** Having clarified these threshold matters, we proceed to explore PREPA's denial to disclose the public documents at issue. As explained above, the State has the burden of proof to demonstrate that the confidentiality of a public document is justified by a pressing interest. In this context, mere generalizations and arbitrary arguments are not sufficient. *Santiago v. Bobb y El Mundo, Inc.,* supra. In the face of such a legal reality, PREPA merely argues that it is not statutorily obliged to publish the resolutions of its Governing Board. Let us therefore go on to interpret all the provisions of the *Puerto Rico Electric Power Authority, supra,*

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Engineering Services International, Inc. v. Authority of..., 2020 WL 5659443...**
2020 TSPR 103

to assess whether this is so.

Admittedly, at the time of the facts, that statute established that PREPA's Governing Board should publish the schedules, agendas, and records (minutes) of its meetings, but did not make reference to resolutions. 22 LPRA sec. 194. However, this isolated reading does not resolve the dispute before us, since the mere reference to schedules, agendas, and records (minutes) does not entail the automatic confidentiality of other documents.

Analyzing the statute as a whole brings up that, since 2013, the Legislative Assembly has ordered the publication of "what happens, what is treated, or what is agreed" at the meetings of the Governing Board by means of records (minutes). *Puerto Rico Electric Power Authority Act, supra,* 22 LPRA sec. 194. If the resolutions are also, as PREPA itself acknowledges, documents that "collect what was agreed" at its meetings, prohibiting their publication is contradictory to the text of the law itself.[8] In other words, it is unreasonable to conclude that the Legislative Assembly is interested in having the Puerto Rico citizens aware of "what happens, what is treated, or what is agreed" by PREPA's Governing Board, but not of the resolutions that show "the formal decisions, as well as the actions taken by the public corporation".[9]

In addition, an analysis of the provisions of the *Puerto Rico Electric Power Authority Act, supra,* in the light of the public policy established by the *Energy Transformation and Relief Act, supra,* again leads to the inevitable conclusion that public access to the requested resolutions was considered. As we explained above, *the Energy Transformation and Relief Act, supra,* expressly implemented a public policy in favor of the transparency of PREPA's efforts. As a result, it strengthened access to PREPA's information by establishing that any information received and created by PREPA must be disclosed in a timely manner, in a complete manner and through an electronic portal. 22 LPRA sec. 1051b. It also reiterated that PREPA's information should not be subject to broader confidentiality rules than necessary.

*15 In this scenario, prohibiting the publication of the requested resolutions would significantly frustrate the public policy embodied in the *Energy Transformation and Relief Act, supra.* Similarly, it would contravene the express text of the law, as it would prevent the timely and complete publication of a public document. As an aggravating factor, it would be subjecting hundreds of documents to an automatic confidentiality rule, without a valid legal basis.

Moreover, the *Puerto Rico Electric Power Authority Act, supra,* clearly and expressly states what confidential matters may be removed from documents generated in these meetings. 22 LPRA sec. 194. Without going through judgment on the validity of these allegedly confidential matters, it should be noted that the Legislative Assembly previously specified the issues and matters that should not be disclosed to the public. None concerns the possible confidentiality of Governing Board resolutions.

In the face of this, PREPA merely claims that the publication of the decisions would be onerous, since they would have to delete the confidential matters specified in the statute. This containment does not convince us, because this exercise is carried out with the other documents published by the Governing Board, in which PREPA edits the documents to omit that information that the Legislative Assembly understood confidential prior to publication. Moreover, the alleged onerosity of reproducing documentation is not sufficient grounds for addressing the right of access to public information and the principles of transparency and citizen participation governing PREPA.

Accordingly, a comprehensive analysis of the applicable statutory framework shows that PREPA is required to disclose the resolutions of its Governing Board. Therefore, PREPA did not validly support its claim for confidentiality, let alone claim a pressing interest in doing so. Because of the above, it is necessary to order the publication of the resolutions of PREPA's Governing Board. Our democratic order and strong public policy in favor of transparency and access to government efforts demand this.

**IV.**

On the basis of the above reasons, we resolve that PREPA should publish the resolutions from its Governing Board meetings held from 2015 to 2017, within three **months** of notification of this Opinion. Accordingly, we reversed the Court of Appeals' determination and partially amended the opinion of the Puerto Rico Energy Commission in order to extend the term originally granted.

*16 Judgment of conformity shall be delivered.

Luis F. Estrella Martínez

Associate Judge

**SENTENCE**

© 2021 Thomson Reuters. No claim to original U.S. Government Works. 9


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Case:17-03283-LTS Doc#:16780-13 Filed:05/19/21 Entered:05/19/21 18:13:36 Desc: Exhibit K   Page 10 of 10

Engineering Services International, Inc. v. Authority of..., 2020 WL 5659443...

2020 TSPR 103

On the grounds established in the above Opinion, which becomes an integral part of this Judgment, it is resolved that PREPA shall publish the resolutions corresponding to the meetings of its Governing Board held from 2015 to 2017, within three **months** of notification of this Opinion. Accordingly, the Court of Appeal's determination is reversed, and the opinion of the Puerto Rico Energy Commission is partially amended in order to extend the term originally granted.

The Interim Secretary of the Supreme Court pronounced it, sent it to the Court, and certified it. Associate Justice Ms. Rodríguez Rodríguez and Associate Justice Mr. Rivera García concur without written opinion. Associate Justice Mr. Feliberti Cintrón is inhibited.

Maria I. Colón Falcón

Supreme Court Secretary, Interim

**Footnotes**

1   Appendix of *certiorari, Moción en cumplimiento de orden y sobre enmienda a querella (Motion in Compliance with Order and Amendment to Complaint),* pp. 63-65.

2   Id., *Réplica a moción de querellante (Response to Complainant's Motion)* , p.77.

3   Id.

4   Id., *Resolución final (Final Resolution),* p. 30.

5   Id.

6   Id., pp. 30-31.

7   Appendix of *certiorari, Resolución final (Final Resolution),* p. 30.

8   Opposition at the request of *certiorari,* p. 11.

9   Appendix of *certiorari, Resolución final (Final Resolution),* p. 30.

**End of Document**                                                                 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2021 Thomson Reuters. No claim to original U.S. Government Works.    10



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.