**Torres, Torres v. Torres Serrano, 179 D.P.R. 481 (2010).**

2010 TSPR 123

179 D.P.R. 481, 2010 WL 2773441 (P.R.), 2010 TSPR 123

LIBRADO TORRES TORRES and IVELIS TORRES SOTO, appellees,
v.
ELSIRA TORRES SERRANO, JUAN CARLOS TORRES SÁNCHEZ, ERIC MICHAEL TORRES GONZÁLEZ, JAZMÍN TORRES RUIZ, DIVINA TORRES RIVERA and BANCO SANTANDER PUERTO RICO, petitioners.

In The Supreme Court of Puerto Rico.
*Number:* CC-2006-0794

**Synopsis**
*CERTIORARI* to review a JUDGMENT of *Luis Rivera Román, Gretchen I. Coll Martí* and *Andrés Salas Soler*, Js. of the Court of Appeals, which affirmed the Resolution of the Court of First Instance denying the petitioner's motion to dismiss. The *judgment of the Court of Appeals is reversed and the motion to dismiss filed by the co-defendant-petitioner, Banco Santander Puerto Rico, is granted. The case is remanded to the Court of First Instance for further proceedings.*

*José G. Barea Fernández* and *Víctor J. Girona González*, attorneys for Banco Santander Puerto Rico, petitioner; *Efraín López Santiago*, attorney for Elsira Torres Serrano, Juan Carlos Torres Sánchez, Eric Michael Torres González, Jasmín Torres Ruiz and Divina Torres Rivera, appellee; *Nilsa I. Cintrón Santiago*, attorney for Librado Torres Torres Torres and Ivelis Torres Soto, appellee.

ASSOCIATE JUDGE KOLTHOFF CARABALLO delivered the opinion of the Court.

**I**

In the present case we are called upon to decide whether a bank that issues a certificate of deposit, payable alternatively to two persons, is required to notify the surviving depositor before delivering the value of that certificate to the heirs of the deceased depositor. ***486**

On February 8, 1996, Mr. Juan Torres Torres (Juan) and his brother, Mr. Librado Torres Torres (Librado), acquired a time deposit certificate in the amount of $85,000 in the then Banco Central Hispano, which later became part of Banco Santander Puerto Rico (Bank or petitioner). The certificate, No. 05-14-0632, was issued in the name of "Juan Torres Torres Torres and/or Librado Torres Torres Torres", thus constituting both as alternate depositors.[1]

Thus, on September 10, 1999, Juan died and left as heirs the defendants in the lawsuit Elsira Torres Serrano, Juan Carlos Torres Sanchez, Eric Michael Torres Gonzalez, Jazmin Torres Ruiz, Divina Torres Rivera and the plaintiff Ivelis Torres Soto. Mrs. Elsira Torres Serrano, widow of the deceased, was in charge of the procedures for the declaration of heirs, the estate plan and the registry of the deceased's assets. Once these procedures were concluded, the partition of the assets of the estate proceeded, among which was included the certificate of deposit that amounted to $91,743.95 at that time. After receiving the pertinent documents, the Bank delivered the aforementioned amount to the heirs by check issued on February 10, 2001.

For his part, Librado was not notified at any time by the Bank that the value of the certificate of deposit, ***487** of which he was also a depositor, was going to be delivered to the heirs of the deceased depositor. Thus, because he understood that the Bank had the obligation to notify him of the transaction, Librado filed a lawsuit for the collection of money and damages against all of Juan's heirs (except for Mrs. Ivelis Torres Soto who appeared as plaintiff) and against the Bank. He alleged that he had contributed $20,000 to the certificate of deposit, therefore, the heirs of the deceased depositor should pay him that amount, plus interest. He further alleged that the Bank acted negligently in delivering the full amount of the certificate of deposit, plus accrued interest, to Juan's heirs without first notifying him, since he believed that since he was a depositor, he should have been notified.

The codefendants timely answered the complaint and filed counterclaims in which they alleged, among other things, that the plaintiff resided in Puerto Rico at the time of the partition, that he had full knowledge that the certificate of deposit was settled in full in the partition of Juan's estate, and that it was not until five years after the partition that the plaintiff filed his claim. Furthermore, they filed cross-claims, alleging that if there was negligence in including the full amount of the certificate of deposit in the partition of the estate it was due to the alleged negligent actions of the Bank.

Subsequently, the petitioner filed a motion seeking


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Torres, Torres v. Torres Serrano, 179 D.P.R. 481 (2010).**

2010 TSPR 123

dismissal of the complaint against him. He argued that the allegations made in the complaint filed by the appellee and in the counterclaims filed by the co-defendants did not state a claim that warranted the granting of relief. The latter understood that, since the certificate of deposit was payable alternatively, it had not been negligent in paying the value to the heirs of *488 one of the depositors, who had stood in the place of their decedent.

After several proceedings, the Court of First Instance issued its decision in which it declared the petitioner's request for dismissal "unfounded" and ordered him to pay costs. The latter appealed to the Court of Appeals through a writ of *certiorari* and requested the revocation of the decision of the Court of First Instance. By means of the judgment here appealed, the intermediate forum confirmed the referred decision, although it modified it to eliminate the imposition of costs.

Dissatisfied, the petitioner came before this Court and indicated that the Court of Appeals erred "in determining that the [petitioner] had the obligation to notify the co-beneficiary in the alternative, and plaintiff in the present case, about the claim of the heirs of the other co-beneficiary." Petition for *certiorari*, p. 10.

## II

**[1]** The Commercial Transactions Act, Act No. 208 of August 17, 1995, as amended, defines a "certificate of deposit" as an instrument containing an acknowledgment by a bank that it has received a certain sum of money, and this in turn constitutes a promissory note issued by the bank.[2] That is to say, it is a document used to state that a person has delivered a certain amount of money to a bank, and that the latter has the duty and obligation to return such amount within the agreed term to such person or to its holder, as the case may be.[3] In addition, the person using this type of *489 instrument usually receives interest payments from the bank in exchange for his deposit.

Although the Commercial Transactions Law defines a certificate of deposit, it does not contain specific provisions regulating it. Chapter 2 of this law specifically regulates those instruments that are negotiable, therefore, in order to know its applicability to a certificate of deposit it is necessary to determine initially whether it is negotiable or not.[4]

**[2]** Sec. 2-104 of the Commercial Transactions Law establishes the requirements that a credit document must meet in order to be classified as a negotiable instrument. Pursuant to the provisions of said section, in *Santos de García v. Banco Popular*, 172 D.P.R. 759, 769 (2007), we stated that "a written instrument, signed, containing an unconditional promise or order to pay a specific sum of money, payable upon presentation or upon the order of an identified person, payable upon presentation or on a specific date and containing no other promise shall be negotiable." (Citations omitted.) If a document does not expressly include these requirements it cannot be a negotiable instrument.[5]

**[3]** At the same time, the referenced law states that "any promise or order, other than a check, is not a negotiable instrument if, at the time of its issuance or when it first comes into the possession of a holder, it contains a conspicuous statement, expressed in any form, to the effect that the order or promise is not negotiable".[6] In view of this, it has been recognized that *490 a bank could destroy the negotiability of a document, other than a check, by conspicuously adding to it, for example, the words "Not Negotiable," which has been understood to be in itself sufficient to prevent an instrument from being negotiable.[7]

**[4]** In the particular situation of certificates of deposit it is not common to find that these are negotiable instruments, since these certificates usually contain clauses and conditions that destroy their negotiability.[8] Consequently, if a certificate of deposit does not meet the requirements to be a negotiable instrument, then the provisions of the Commercial Transactions Law regulating this type of instruments do not apply to them.[9]

In the instant case, Juan and Librado acquired a certificate of deposit in the amount of $85,000 at the then Banco Central Hispano de Bayamón (currently a branch of Banco Santander). That document was titled in capital letters, "CERTIFICADO DE DEPÓSITO -A PLAZO FIXADO- NO NEGOCIABLE" [CERTIFICATE OF DEPOSIT -FIXED TERM- NON-NEGOTIABLE]. At the same time, the following statement was placed just before the signatures: "THIS CERTIFICATE IS NOT NEGOTIABLE AND IS SUBJECT TO THE TERMS AND CONDITIONS THAT APPEAR ON THE BACK OF THIS INSTRUMENT". In turn, in clause (5) of the terms and conditions it was clearly stated *491 that the certificate was not negotiable and its assignment was conditioned to a previous authorization of the Bank.

Therefore, the conspicuous statement on the face of the document is conclusive evidence that destroys the negotiability of the instrument. In addition, the conditions imposed in the terms and conditions agreed upon in the certificate likewise destroy its negotiability, according to

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 2


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Torres, Torres v. Torres Serrano, 179 D.P.R. 481 (2010).**

2010 TSPR 123

the rule established in *Walla Corp. v. Banco Com. de Mayagüez*, 114 D.P.R. 216 (1983). Consequently, since the certificate of deposit is not negotiable, the provisions of the Commercial Transactions Law that regulate this type of instrument do not apply to it.

### III

[**5**] A. On several occasions this Court has held that the relationship created between a bank and a depositor, when a certificate of deposit is constituted, is a relationship of creditor and debtor, and not of depositary and depositor, and therefore the contract between them is one of loan and not of deposit.[10] This is because "[i]n the ordinary course of business, the person who ordinarily deposits money in a bank assents to the bank's use of the money".[11] Once the depositary obtains the authorization to use the deposited thing, the contract loses the concept of deposit and becomes a loan or bailment contract.[12] Thus, when the depositor delivers to the bank a fungible good, the latter acquires *492 its ownership and is obliged to return to the creditor another of the same kind and quality.[13]

On the other hand, since the relationship between the bank and the depositor is that of creditor-debtor, we recognize that it must be governed by the Civil Code.[14] For this reason, in instances in which there is no special law that applies -such as the Law of Commercial Transactions- the provisions related to the special loan contract will apply and the general provisions of obligations and contracts of the Civil Code will apply in a supplementary manner.

[**6**] The Civil Code defines a simple loan contract as one in which one of the parties delivers to the other party money or another fungible thing, with the condition of returning another of the same kind and quality.[15] This type of contract is: *unilateral*, in that it only produces obligations for one of the parties, who is the borrower; *transfer of ownership*, in the sense that with the delivery of possession its title is also delivered, since the borrower receives the thing to spend it, being obliged to return the goods and, *free* or *onerous*, depending on whether or not the payment of interest has been agreed.[16]

7] Since the loan contract is unilateral, since it generates obligations on the borrower, the latter will be obliged to deliver the loaned amount -with interest if agreed- once the term has expired. When the loaned item is money, Art. 1645 of the Civil Code [17] provides that the obligation of the borrower shall be subject to the *493 provision of Art. 1124 of the Civil Code. [18] The latter states that "[t]he payment of money debts must be made in the agreed specie, and if it is not possible to deliver the specie, in the silver or gold currency that is legal tender in Puerto Rico". In other words, if the agreed specie is foreign, the main obligation is to comply with that specie; if it is not possible, then it must be complied with by delivering its equivalent in the currency of the United States of America, which is legal tender in Puerto Rico.

[**8**] A. We have repeatedly recognized that our legal system is governed by the principle of contractual autonomy between the parties. This implies that the parties may establish the covenants, clauses and conditions they deem convenient, as long as they are not contrary to the law, morality and public order.[19] Likewise, Art. 1044 of the Civil Code establishes the general principle that obligations arising from contracts have the force of law between the contracting parties, and must be fulfilled in accordance with them.[20] For this reason, the contracting parties are bound by the terms of the contract.

[**9**] However, there are instances in which disputes may arise regarding the words or provisions that have been used in a contract. In view of this, the Civil Code has established a series of rules that regulate the process of contractual hermeneutics. Thus, as a general rule, when the terms of a contract or a contractual clause are sufficiently clear and leave no doubt as to the intention of the contracting parties, the literal meaning of the words must be followed.[21] Consequently when the terms are clear, the courts cannot enter into the solution *494 of what the parties allegedly intended to agree at the time of contracting.[22]

[**10**] On the contrary, when the terms or words are unclear or leave doubts as to the common intention of the grantors, the judge must examine all the circumstances attending the execution of the contract, paying particular attention to the acts of the grantors, both contemporaneous and subsequent to the contract.[23] In addition, when the words may have different meanings, these will be understood according to the nature and object of the contract.

C. In the dispute before us, the certificate of deposit that was created was payable to Librado Torres Torres Torres *and/or* Juan Torres Torres Torres. The copulative conjunction "and" is normally used "to join words or clauses in the affirmative".[24] Its use implies the union of all the words it links.[25] On the other hand, the use of the disjunctive conjunction "or" indicates "difference, separation or alternative between two or more persons, things or ideas".[26] For this reason, it is up to us to delimit the effect of the use of both conjunctions in a credit

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Torres, Torres v. Torres Serrano, 179 D.P.R. 481 (2010).**

2010 TSPR 123

document.

In *Barreras v. Santana*, 87 D.P.R. 227 (1963), we had the opportunity to interpret the combined use of the copulative conjunction "and" and the disjunctive conjunction "or", specifically in an insurance contract. On that occasion, a policy had been issued to the Puerto Rico Equestrian Association and/or its individual members. In view of this, we pointed out that as a matter of fact, the effect of using the combination of conjunctions was to create three policies, being *495 insured: (1) the Association as such, (2) the Association and its members, and (3) the members of the Association. Therefore, the use of the combination "and/or" in a credit document has the principal effect of allowing the possibility of choosing between the sum or the alternative of two options.[27]

Accordingly, the certificate of deposit in question, being payable to Drawee and/or Juan, constituted a credit document payable in the alternative. Thus, the Bank could pay in one of three ways, namely, (1) to John as such, (2) to Drawee as such, and (3) to both together. There is no doubt that the intention of the depositors was to allow the Bank to pay any of them in their personal capacity or jointly. Furthermore, it is important to note that the foregoing is not in dispute. Both parties agree that the certificate of deposit could be paid to any of the depositors. Likewise, both the Court of First Instance and the Court of Appeals recognized the alternative constitution of the certificate of deposit.

[11] Specifically, the Court of Appeals used as a basis Sec. 2-110(d) of the Commercial Transactions Act, which states that, "if an instrument is payable alternatively to two (2) or more persons, the same is payable to any one of them and may be negotiated, cancelled or enforced by any or all of them who are in possession of the instrument".[28] However, as we have already ruled, Chapter 2 of this law is inapplicable to the certificate of deposit before us, so that section is inapplicable. Nevertheless, we must point out that under the law as stated the *496 result is the same. That is, that when a credit note is payable in the alternative, he pays well who does so only to one of them.[29]

Now, upon Juan's death, and after the relevant procedures, among which a timely demand for payment was made, the Bank paid to Juan's heirs the full amount of the certificate of deposit. Could the Bank pay that amount to Juan's heirs? We understand that it could.

### IV

[12] A. Art. 610 of the Civil Code of Puerto Rico[30] establishes that by the sole fact of death, the heirs succeed the decedent in all his rights and obligations. Thus, the inheritance of a person includes all the assets and obligations that have not been extinguished by his death.[31] Thus, we have recognized that our inheritance law reaches the legal relationships -both active and passive- that constituted the person's estate at the date of his death.[32] However, Professor Efraín González Tejera comments that "the Civil Code does not contain a uniform rule on the assets, rights and obligations that are transmitted by inheritance and on those that, because they are very personal, end with the life of the owner." [33] However, the prevailing rule upholds the transferability "of the vast majority of the constituent elements of the estate of a deceased person." [34] *497

[13] Consequently, the general rule in our jurisdiction is that the legal position of the deceased will remain unchanged as far as possible, with the placement of the heir in his place.[35] Since the beginning of the last century we have recognized that the substitution of the deceased by his heir constitutes a continuation of his personality.[36] In this way, normally the patrimonial rights are transmissible by inheritance, except for those that by their characteristics, provision of law or agreement are non-transmissible.[37] Furthermore, an heir must be entitled to succeed the deceased in those rights that the latter could have exercised during his lifetime, even if he had not exercised them for whatever reasons.[38]

[14] In line with these principles, Art. 1209 of the Civil Code states that "[c]ontracts only produce effect between the parties that grant them and their heirs; except as to the latter, in the case in which the rights and obligations arising from the contract are not transmissible, either by their nature, or by agreement, or by provision of law." Consequently, generally the contractual rights and obligations assumed by a person are not extinguished with his death; rather, they find continuity in the succession.

B. In this case, the certificate of deposit was agreed *498 for a term of six months, specifically from February 8, 1996 to August 8, 1996. This had the effect that as of the conclusion of that term the certificate could be cashed by any of the depositors. However, from the terms and conditions of that instrument it appears that the Bank could, at its option, extend the maturity date if the certificate was not presented for payment on or before the tenth day after the maturity date. These periods would be of equal length to the agreed upon period, i.e., six months. Consequently, once the term of a certificate of deposit expires and it is not cashed, it is usually renewed for a term

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.    4

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Torres, Torres v. Torres Serrano, 179 D.P.R. 481 (2010).**

2010 TSPR 123

similar to the agreed term until it is finally cashed. Consequently, upon expiration of the term, the right to cash it comes to life and becomes part of the patrimonial rights of the person to whom it is constituted.

As we have already stated, the certificate in question was issued to the order of Juan Torres Torres and/or Librado Torres Torres Torres, so both were depositors in the alternative. For several years neither of them tried to collect the certificate, therefore, once Juan died, his estate went to the Bank to collect it. Thus, after they accredited their status as heirs through the necessary documents, the Bank proceeded to pay them the total amount of the certificate of deposit. In fact, in this case, it is not the Bank's action of paying the value of the certificate of deposit to the referred estate that is being questioned, but the fact that the Bank did not notify the appellee Librado, as depositor of the instrument, that it was about to deliver the total amount to the heirs of the other depositor. Was there a duty of the Bank to notify the other depositor? We understand that there was not.

The appellee points out that Juan ceased to exist as a person when he died, therefore, since he was the only living depositor, he was entitled to collect the total amount of the certificate ***499** of deposit. However, it is evident that the foregoing approach ignores the succession doctrine of our jurisdiction, which holds in general terms that the rights and obligations of a decedent continue in his succession.

For its part, the Court of First Instance understood that Juan's estate did not have the right to collect the certificate of deposit and used as an analogy the cases in which beneficiaries are designated in an insurance policy. In those scenarios, when a beneficiary dies before the person who designated him/her in such capacity, the heirs do not have the right to claim the beneficiary's insurance policy. Thus, the lower court understood that when one of the two depositors died in the alternative, the other one has priority and the Bank was obliged to notify the living depositor. However, the insurance policy doctrine is inapplicable to the controversy before us. In Puerto Rico, the right to receive the proceeds of a life insurance policy resides only in those called as beneficiaries.[39] By provision of law, the patrimonial right of a life insurance policy is not transferable.[40] Thus, once the insured dies, the policy is vested in the beneficiaries and not in the heirs.

In view of the foregoing, we understand that the special character that governs life insurance policies cannot be applied by analogy to certificates of deposit, which in the absence of a special law that regulates them, are governed by the Civil Code and the special provisions of the loan contract. Furthermore, contrary to the very personal nature of the right of ownership of a life insurance policy, we do not find any legal precept applicable to the loan contract that prevents or limits the ***500** transferability of such property right. Therefore, Juan's estate could take his place in the certificate of deposit and collect the corresponding payment from the Bank.

On the other hand, the appellee points out that since he was the only living depositor, the Bank was obliged to notify him of the payment request made by the estate. Furthermore, the Court of Appeals expressed that in view of the fact that the appellee claimed to have contributed to the certificate a monetary portion of his own peculium, that the Bank knew that the document was payable in the alternative, and that there was an estate composed of several heirs, it was reasonable for the Bank to notify Librado of the claim of Juan's estate. Specifically, it stated that "[n]o one could choose to satisfy the claim of Juan's estate over the rights of Librado as beneficiary in the alternative." For this reason, it affirmed the trial court's action in denying the Bank's motion to dismiss.

However, neither the appellee nor the lower courts provided any basis in law to justify the notification of a depositor in the alternative. The position of the intermediate appellate forum would seem to indicate that the reasonableness of the notification is supported by the fact that one of the depositors was deceased. That is, if Juan were alive and had requested payment of the certificate of deposit, Librado did not have to be notified. On the other hand, clearly in the terms and conditions of the certificate nothing was provided for the notification of any of the depositors in the event that any of them tried to collect it on their own account or in case of death. Thus, by agreeing to the certificate as an instrument payable in the alternative, it is forced to conclude that both depositors consented and authorized the Bank to pay any of them. Clearly, that is the contract and, therefore, the law between the parties. In short, the Bank ***501** could pay the full amount of the certificate of deposit to John's estate without notifying Librado of that action. In so doing, it did not act negligently but in accordance with the contract entered into.

**V**

Finally, in the instant case, the petitioner filed a motion to dismiss in which it alleged that the claims did not state a claim that warranted relief. The Court of First Instance considered that motion and denied it.

15] Rule 10.2 of Civil Procedure[41] allows a defendant to

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 5


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Torres, Torres v. Torres Serrano, 179 D.P.R. 481 (2010).**

2010 TSPR 123

move to dismiss the complaint against it when the complaint fails to state "a claim that justifies the granting of relief." In light of this, we have ruled that, in order to resolve a motion to dismiss, courts must take the factual allegations of the complaint as true.[42]

**[16] On the** other hand, it is important to bear in mind the provision of Rule 6.1 of Civil Procedure,[43] which establishes that the complaint need only contain "a succinct and plain statement of the claim showing that the petitioner is entitled to relief". Consequently, we have recognized that in our jurisdiction there is a procedural rule that the pleadings have the sole purpose of notifying the defendant, in broad outline, what the claims against him are and that he may appear if he so desires.[44] For this reason, when **\*502** hearing a motion to dismiss, it is obvious to interpret the pleadings jointly and liberally in favor of the defendant.[45] Thus, in examining the complaint to resolve this type of motion, one must be extremely liberal in granting it "only when no relief can be granted in favor of the plaintiff from the facts alleged."[46]

Pursuant to the foregoing and to what has been resolved herein, there is no remedy in favor of the plaintiffs against the co-defendant and petitioner, Banco Santander Puerto Rico, therefore, the judgment of the Court of Appeals should be reversed and the claims against it should be dismissed.

## VI

For the foregoing reasons, *we reverse the judgment of the Court of Appeals and grant the motion to dismiss filed by the co-defendant, Banco Santander Puerto Rico. The case is remanded to the Court of First Instance for further proceedings.*

*A conformity judgment will be rendered.*

Associate Justice Fiol Matta concurred with the result without written opinion. Associate Justice Rivera Pérez and Associate Justice Rodríguez Rodríguez did not intervene.

### Footnotes

[1] It should be noted that in the parties' pleadings, as well as in the judgments under appeal, the term "beneficiary" is used to refer to the person acquiring a certificate of deposit. However, we believe that the use of this term is somewhat confusing. Therefore, when referring to the person acquiring a certificate of deposit we use the term "depositor", similar to the term "depositor" generally used in English certificates. However, as we will see below, the certificate of deposit is a loan contract and not a deposit contract, according to the definitions of the Civil Code. However, we are of the opinion that the use of the term "depositor" does not detract from the nature of the contract, particularly in view of the terms set forth in the certificate itself.

[2] Act No. 208 of August 17, 1995, as amended, 19 L.P.R.A. sec. 401 *et seq.* Sec. 2-104 (19 L.P.R.A. sec. 504). The certificate of deposit is considered a type of promissory note, since the bank is obligated to pay a certain amount of money to the person who deposits it. See L.M. Negrón Portillo, *Derecho cambiario de Puerto Rico: instrumentos negociables*, San Juan, [s. Ed.], 1995, p. 11.

[3] Negrón Portillo, *op. cit.*

[4] Sec. 2-102(a) of Act No. 208, *supra*, 19 L.P.R.A. sec. 502(a).

[5] *Santos de García v. Banco Popular*, 172 D.P.R. 759, 769 (2007); *Walla Corp. v. Banco Com. de Mayagüez*, 114 D.P.R. 216 (1983).

[6] Sec. 2-104(d), 19 L.P.R.A. sec. 504(d). Sec. 1-201(10) defines *conspicuous as* follows: "A term of a clause is conspicuous when it is so worded that a reasonable person who would be affected by it should notice it. A heading written in capital letters (e.g. NON-NEGOTIABLE LETTER OF LETTER OF LETTER) is conspicuous. Language in the text of a form is 'conspicuous' if it is written in larger letters or in another typeface or color. ... The determination of

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.                    6


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Torres, Torres v. Torres Serrano, 179 D.P.R. 481 (2010).**

2010 TSPR 123

whether a term or clause is 'conspicuous' or not will be up to the courts. " 19 L.P.R.A. sec. 451(10).

[7] M.R. Garay Aubán, *Derecho cambiario de Estados Unidos y Puerto Rico: Codigo Uniforme de Comercio de EE.UU., Ley de Transacciones Comerciales de Puerto Rico*, Ponce, Ed. Rev.

[8] Id.; *Santos de García v. Banco Popular*, supra. See also, *Walla Corp. v. Banco Com. de Mayagüez*, supra.

[9] Now, although in *Santos de García v. Banco Popular*, supra, we stated that the provisions of the Commercial Transactions Law only apply to negotiable instruments, we must clarify that the provisions of the statute that apply only to negotiable instruments are those contained in "Chapter 2 - Negotiable Instruments". However, that law contains other chapters -which although they do not apply to the present controversy- could apply to non-negotiable instruments.

[10] *Santos de García v. Banco Popular*, supra, p. 774; *BBVA v. S.L.G. López, Sasso,* 168 D.P.R. 700, 710-711 (2006); *Walla Corp. v. Banco Com. de Mayagüez*, supra, p. 223; *Portilla v. Banco Popular*, 75 D.P.R. 100 (1953); *Tesorero de P.R. v. Banco etc., y Manrique, Int.* 46 D.P.R. 308 (1934). In addition, it should be noted that this rule is analogous to that prevailing in the United States. See: B. Clark and B. Clark, *The Law of Banks Deposits, Collections and Credit Cards*, Massachusetts, Ed. Warren, Gorham & Lamont, 1995, Ch. 21.01, p. 21-1.

[11] *Tesorero de P.R. v. Banco etc., and Manrique, Int.* supra, p. 331.

[12] Id.

[13] Art. 1644 of the Civil Code, 31 L.P.R.A. sec. 4571. See also *BBVA v. S.L.G. López, Sasso,* supra, p. 711.

[14] *Santos de García v. Banco Popular*, supra, p. 774; *BBVA v. S.L.G. López, Sasso*, supra, p. 711; *Walla Corp. v. Banco Com. de Mayagüez*, supra.

[15] Arts. 1631 and 1644 of the Civil Code, 31 L.P.R.A. secs. 4511 y 4571.

[16] J.R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Rev. Jurídica U.I.A., 1990, T. IV, Vol. II, pp. 452-453; J. Castán Tobeñas, *Derecho Civil español, común y foral*, 15th ed.

[17] 31 L.P.R.A. sec. 4572.

[18] 31 L.P.R.A. sec. 3174.

[19] Art. 1207 of Civil Code, 31 L.P.R.A. sec. 3372.

[20] 31 L.P.R.A. sec. 2994.

[21] Art. 1233 of the Civil Code, 31 L.P.R.A. sec. 3471.

[22] *C.F.S.E. v. Unión de Médicos*, 170 D.P.R. 443, 450 (2007).

[23] Art. 1234 of Civil Code of Puerto Rico, 31 L.P.R.A. sec. 3472; *C.F.S.E. v. Unión de Médicos*, supra, pp. 450-451.

[24] Real Academia Española, *Diccionario de la Lengua Española*, 22nd ed., Madrid, Ed. Espasa Calpe, 2001, T. II, p. 2326.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Torres, Torres v. Torres Serrano, 179 D.P.R. 481 (2010).**

2010 TSPR 123

25    See *López Santos v. Superior Court*, 99 D.P.R. 325, 330 (1970).

26    Real Academia Española, *op. cit.* p. 1601.

27    It should be noted that the *Diccionario Panhispánico de Dudas* recognizes that the joint use of the copulative and disjunctive conjunctions separated by a slash is a calque of English *and/or*, and is intended to make explicit the possibility of choosing between the sum or the alternative of two options. Real Academia Española, *Diccionario Panhispánico de Dudas*, Madrid, Ed. Aguilar, 2005, p. 681.

28    19 L.P.R.A. sec. 510(d).

29    This is so provided that the instrument does not state otherwise, and therefore the bank is not required to notify the other depositor, unless so provided in the terms and conditions of the certificate.

30    31 L.P.R.A. sec. 2092.

31    Art. 608 of the Civil Code of Puerto Rico, 31 L.P.R.A. sec. 2090.

32    *Sucn. Alvarez v. Srio. de Justicia*, 150 D.P.R. 252, 266 (2000).

33    E. González Tejera, *Derecho de Sucesiones*, San Juan, Ed. U.P.R., 2001, T. 1, p. 326.

34    Id. See *Feliciano Suarez, Ex parte*, 117 D.P.R. 402, 413 (1986).

35    *Feliciano Suárez, Ex parte*, supra; *Robles Menéndez v. Superior Court*, 85 D.P.R. 665, 672 (1962); *Arroyo v. Fernández*, 68 D.P.R. 514, 517 (1948).

36    *Sucesión Dávila v. El Registrador de la Propiedad*, 15 D.P.R. 669, 673 (1909).

37    See: Secs. 549, 1065 and 1209 of the Civil Code of Puerto Rico, 31 L.P.R.A. secs. 1931, 3029 y 3374. In addition, in *Sucn. Alvarez v. Srio. of Justice*, supra, p. 268. 268, we recognized that the following are not transmissible by inheritance: "legal relationships of a public nature, those of a very personal nature and those of patrimonial content of a lifelong duration; real rights of a lifelong nature; certain credit rights; the rights and duties that make up family relationships, except those of an exclusively patrimonial and transmissible content; the rights that emerge from a lease contract; the rights obtained as beneficiary by virtue of the labor accident legislation; the right to the name; the amounts that the insurer must deliver to the insured, in compliance with the contract. " (Omitted excerpt.)

38    *Sucn. Alvarez v. Srio. of Justice*, supra, pp. 268-269.

39    *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624, 636 (1994).

40    See: Art. 11.300 of the Insurance Code, 26 L.P.R.A. sec. 1130; *Fernández Vda. de Alonso v. Cruz Batiz*, 128 D.P.R. 493 (1991).

41    32 L.P.R.A. App. III.

42    *Sanchez v. Aut. de los Puertos*, 153 D.P.R. 559, 569 (2001); *Pressure Vessels P.R. v. Empire Gas P.R.* 137 D.P.R. 497, 504-505 (1994); *Ramos v. Orientalist Rattan Furnt.*, 130 D.P.R. 712 (1992).

---

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.    8


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Torres, Torres v. Torres Serrano, 179 D.P.R. 481 (2010).**

2010 TSPR 123

[43] 32 L.P.R.A. App. III.

[44] *Sanchez v. Aut. de los Puertos*, supra, pp. 569-570; *Reyes v. Cantera Ramos, Inc.* 139 D.P.R. 925, 929 (1996).

[45] *Sanchez v. Aut. de los Puertos*, supra, p. 570.

[46] R. Hernández Colón, *Derecho Procesal Civil*, 4th ed., San Juan, Ed. LexisNexis, 2007, p. 231.

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.