# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtor.[1] | PROMESA Title III<br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>Case No. 17 BK 3567-LTS |

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "**Commonwealth**") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); Puerto Rico Sales Tax Financing Corporation ("**COFINA**") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("**HTA**") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("**PREPA**") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("**PBA**") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

                    as representative of

THE COMMONWEALTH OF PUERTO RICO,

       Plaintiff,

v.

AMBAC ASSURANCE CORPORATION, *et al.*,

       Defendants.

Adv. Proc. No. 20-00003-LTS

---

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

                    as representative of

THE COMMONWEALTH OF PUERTO RICO,

       Plaintiff,

v.

AMBAC ASSURANCE CORPORATION, *et al.*,

       Defendants.

Adv. Proc. No. 20-00004-LTS

---

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

                    as representative of

THE COMMONWEALTH OF PUERTO RICO,

       Plaintiff,

v.

AMBAC ASSURANCE CORPORATION, *et al.*,

       Defendants.

Adv. Proc. No. 20-00005-LTS

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

THE PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY,

     Plaintiff,

v.

AMBAC ASSURANCE CORPORATION, et al.,

     Defendants.

Adv. Proc. No. 20-00007-LTS

ASSURED GUARANTY CORP.; ASSURED GUARANTY
MUNICIPAL CORP.; and FINANCIAL GUARANTY
INSURANCE COMPANY,

     Plaintiffs,

v.

COMMONWEALTH OF PUERTO RICO; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO; PUERTO RICO FISCAL AGENCY
AND FINANCIAL ADVISORY AUTHORITY; HON.
RICARDO ANTONIO ROSSELLÓ NEVARES; GERARDO
PORTELA FRANCO; and HON. RAÚL MALDONADO
GAUTIER,

     Defendants.

Adv. Proc. No. 18-00059-LTS

**REPLY OF ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL
CORP., AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION IN
SUPPORT OF URGENT JOINT MOTION TO STAY CERTAIN CONTESTED
MATTERS AND ADVERSARY PROCEEDINGS RELATED TO BONDS ISSUED BY
THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),
THE PUERTO RICO CONVENTION CENTER DISTRICT AUTHORITY ("CCDA"),
AND THE PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY ("PRIFA")
<u>(ECF NO. 16739)</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ............................................................................................................................4

I. THERE IS NO BASIS TO STRIKE THE LANGUAGE IN PROPOSED
ORDER ¶ 2 "PRESERVING ALL RIGHTS, ARGUMENTS, CLAIMS
AND DEFENSES OF THE PARTIES AS THEY CURRENTLY EXIST
IN [THE MATTERS]." ..................................................................................4

 A. Assured and National are not bound by principles of claim
preclusion. ...........................................................................................4

 B. The Objectors' confirmation-related objections are premature and
irrelevant to the Motion. .......................................................................6

  1. Any order regarding the Objectors' claims will not be
dispositive of a future 9019 motion. .................................................7

  2. Any order regarding the Objectors' claims will be
irrelevant to 11 U.S.C. § 1123(a)(4). ..............................................9

II. THERE IS NO BASIS TO STRIKE THE LANGUAGE IN THE
PROPOSED ORDER STAYING THE MATTERS AS RELATED TO
"FISCAL AGENTS, TRUSTEES OR PAYING AGENTS . . . TO THE
EXTENT SUCH PARTIES ARE ACTING ON BEHALF OF ASSURED
AND NATIONAL FOR HTA BONDS OR CCDA BONDS INSURED
OR HELD BY ASSURED OR NATIONAL.".....................................................10

III. THE DRA RESPONSE OFFERS NO OPPOSITION TO THE MOTION. .........12

CONCLUSION........................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*ACP Master Ltd. v. Puerto Rico,*
    300 F.Supp.3d 328 (D.P.R. 2018), *aff'd* 919 F.3d 638 (1st Cir. 2019) ....................................6

*Gonzalez v. Banco Cent. Corp.,*
    27 F.3d 751 (1st Cir. 1994) ........................................................................................................5

*Grella v. Salem Five Cent Sav. Bank,*
    42 F.3d 26 (1st Cir. 1994) ..........................................................................................................5

*Hardy v. Johns-Manville Sales Corp.,*
    681 F.2d 334 (5th Cir. 1982) .....................................................................................................5

*In re Bond,*
    Case No. 93–1410, 1994 WL 20107 (4th Cir. Jan. 26, 1994) .....................................................7

*In re Brizinova,*
    592 B.R. 442 (Bankr. E.D.N.Y. 2018) .......................................................................................6

*In re CH Properties, Inc.,*
    381 B.R. 20 (D.P.R. 2007) .........................................................................................................6

*In re Dalen,*
    259 B.R. 586 (Bankr. W.D.Mich. 2001) .....................................................................................7

*In re DeSardi,*
    340 B.R. 790 (Bankr. S.D.Tex. 2006) ........................................................................................3

*In re Engman,*
    331 B.R. 277 (Bankr. W.D. Mich. 2005) ................................................................................7, 8

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico,*
    485 F.Supp.3d 351 (D.P.R. 2020), *aff'd* 989 F.3d 170 (1st Cir. 2021) ....................................6

*In re Grogan,*
    Case No. 11-65409-frall, 2013 WL 4854313 (Bankr. D.Or. Sept. 10, 2013) ...........................3

*In re Haskins,*
    563 B.R. 177 (Bankr. W.D. Va. 2017) .......................................................................................3

*In re Kaiser Aluminum Corp.,*
    339 B.R. 91 (D. Del. 2006) ........................................................................................................4

**TABLE OF AUTHORITIES, cont'd.**

**Page(s)**

*In re Knowles*,
    442 B.R. 150 (1st Cir. BAP 2011) ........................................................................9

*In re Martin*,
    91 F.3d 389 (3d Cir. 1996) ............................................................................8, 9

*In re Moore*,
    319 B.R. 504 (Bankr. S.D.Tex. 2005) ................................................................3

*In re Motors Liquidation Co.*,
    447 B.R. 198 (Bankr. S.D.N.Y. 2011) .................................................................9

*In re Pilgrim's Pride Corp.*,
    442 B.R. 522 (Bankr. N.D. Tex. 2010) ...........................................................9, 10

*In re Ramsey*,
    356 B.R. 217 (Bankr. D. Kan. 2006) ..............................................................7, 8

*In re RFE Indus., Inc.*,
    283 F.3d 159 (3d Cir. 2002) .............................................................................8

*Katz v. Pershing, LLC*,
    672 F.3d 64 (1st Cir. 2012) ...........................................................................12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................11

*LVNV Funding, LLC v. Harling*,
    852 F.3d 367 (4th Cir. 2017) ...........................................................................3

*Ramos Bonilla v. Vivoni del Valle*,
    336 F.Supp.2d 159 (D.P.R. 2004) ...................................................................6

*Reddy v. Foster*,
    845 F.3d 493 (1st Cir. 2017) .........................................................................12

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ........................................................................................5

*TMTV, Corp. v. Mass Productions, Inc.*,
    645 F.3d 464 (1st Cir. 2011) ...........................................................................5

**TABLE OF AUTHORITIES, cont'd.**

**Page(s)**

**STATUTES & OTHER AUTHORITIES:**

11 U.S.C. § 1123(a)(4)...........................................................................................3, 6, 7, 9

Assured Guaranty Corp. ("**AGC**"), Assured Guaranty Municipal Corp. ("**AGM**" and together with AGC, "**Assured**"), and National Public Finance Guarantee Corporation ("**National**") hereby respectfully submit this reply (the "**Reply**") in support of the *Urgent Joint Motion to Stay Certain Contested Matters and Adversary Proceedings Related to Bonds Issued by the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Convention Center District Authority ("CCDA"), and the Puerto Rico Infrastructure Financing Authority ("PRIFA")* (ECF No. 16739, the "**Motion**" or "**Mot.**") and in response to (i) the objection of Ambac Assurance Corporation ("**Ambac**") and Financial Guaranty Insurance Company ("**FGIC**", and together with Ambac, the "**Objectors**") thereto (ECF No. 16776, the "**Objection**" or "**Obj.**"), and (ii) the *DRA Parties' Reservation of Rights and Statement in Response to the Urgent Joint Motion to Stay Certain Contested Matters and Adversary Proceedings Related to Bonds Issued by the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Convention Center District Authority ("CCDA"), and the Puerto Rico Infrastructure Financing Authority ("PRIFA")* (ECF No. 16775, the "**DRA Response**"),[2] and respectfully state as follows:

## PRELIMINARY STATEMENT

1.     Objectors Ambac and FGIC have filed what amounts only to a *limited* Objection that does not generally oppose the stay of the Matters as to Assured and National, but instead merely asks the Court to strike two phrases from the Proposed Order.  The Objectors have failed to establish any proper basis for opposing these two specific phrases.  Given the Objectors' consent to the balance of the Proposed Order, the Objection should be overruled and the Proposed Order should be entered without the deletions.

---

[2] Capitalized terms not otherwise defined in this Reply shall have the meanings ascribed to them in the Motion, the Objection, or the DRA Response, as applicable.  All ECF numbers in this Reply shall refer to the docket in Case No. 17-3283-LTS, unless otherwise indicated.

2.    <u>First</u>, the Objectors request that the Court strike the language in the Proposed Order acknowledging that, as a result of the proposed stay, "all rights, arguments, claims and defenses of the Parties as they currently exist *in [the stay]ed matters*" will be preserved while the stay remains in place.  *See* Obj. ¶ 8 (emphasis added).  This language merely recognizes the legal reality that a stay of the Matters as to Assured and National will preserve the status quo as to Assured and National within those stayed Matters, and that any subsequent orders that may be entered solely as to the Objectors in those Matters will not and cannot have any preclusive effect on Assured and National given that they are parties distinct from the Objectors.  *See* Argument § I.A.

3.    Consistent with the existing language in the Proposed Order, the Objectors do not even contend that any order entered solely as to them in the stayed Matters would have a preclusive effect on Assured and National within those stayed Matters (it would not).  The Objectors do suggest, however, that the language they seek to strike could somehow affect issues arising "at the plan confirmation stage."  Obj. ¶ 8.  In raising these confirmation-related concerns, the Objectors are simply misinterpreting the scope and effect of the Proposed Order, because the Proposed Order speaks only of the effect of the proposed stay on arguments, claims, and defenses *within* the stayed "Matters."  Indeed, confirmation proceedings are not one of the "Matters" proposed to be stayed, and the Proposed Order does not purport to govern confirmation proceedings or to limit the arguments that Ambac or FGIC may seek to make in such confirmation proceedings.

4.    Importantly, "the procedure for the allowance and disallowance of claims," which includes the Revenue Bond Adversary Proceedings proposed to be stayed,[3] "is '[s]eparate from . .

---

[3] Of the "Matters" proposed to be stayed, the Revenue Bond Adversary Proceedings are the only ones currently being actively litigated.  Accordingly, the Objectors' arguments appear to focus primarily on the terms of the proposed stay of the Revenue Bond Adversary Proceedings.

. confirmation.'"  *In re Knowles*, 442 B.R. 150, 163 (1st Cir. BAP 2011).[4]  The Objectors'

arguments about what may or may not be argued at confirmation are therefore premature at this

juncture, and are simply irrelevant to the issue of whether to stay Matters *other* than confirmation

proceedings, which is the only issue before the Court today.  *See* Argument § I.B.  In any event,

the Objectors are also substantively mistaken as to what the effect of an order solely as to Objectors

in the Revenue Bond Adversary Proceedings would be at the confirmation stage.  They misstate

the law both with respect to its implications for the approval of a settlement under Bankruptcy

Rule 9019 and with respect to the requirement that creditors receive the "same treatment" under

11 U.S.C. § 1123(a)(4).  *See id*.

     5.    <u>Second</u>, the Objectors seek to strike language in the Proposed Order staying the

Matters as they relate to "fiscal agents, trustees or paying agents . . . to the extent such parties are

acting on behalf of Assured and National for HTA Bonds or CCDA Bonds insured or held by

Assured or National."  *See* ECF No. 16776-2 ¶ 2.  This language is necessary primarily because

the Oversight Board included in its complaints in the Revenue Bond Adversary Proceedings counts

seeking to disallow Assured's claims on the grounds that they were allegedly duplicative of the

Master Proofs of Claim filed by the applicable fiscal agents and trustees.  If it were at some point

determined that only the Master Proofs of Claim are relevant, and if Assured and National's claims

as reflected in those Master Proofs of Claims were to be disallowed notwithstanding the requested

stay of proceedings as to Assured and National's own proofs of claims, then Assured and

National's settlement with the Oversight Board could be rendered illusory, because Assured and

---

[4] *See also, e.g.*, *LVNV Funding, LLC v. Harling*, 852 F.3d 367, 372 (4th Cir. 2017) ("the claims allowance procedure"
is "separate and apart under the Bankruptcy Code from plan confirmation"); *In re Haskins*, 563 B.R. 177, 188 (Bankr.
W.D. Va. 2017) (claims allowance process was separate from confirmation process); *In re Grogan*, Case No. 11-
65409- frall, 2013 WL 4854313, at *2 (Bankr. D.Or. Sept. 10, 2013) (noting, in the context of a chapter 11 plan
confirmation hearing, that the court would determine a claim's exact amount "in the claims allowance process"); *In
re DeSardi*, 340 B.R. 790, 794 n.1 (Bankr. S.D.Tex. 2006) ("The procedures for claims allowance are distinct from
the procedures for plan confirmation"); *In re Moore*, 319 B.R. 504, 508 (Bankr. S.D.Tex. 2005) ("[a]llowance of
claims is governed by protocols and procedures separate from those applicable to plan confirmation.").

National's claims would have been effectively disallowed notwithstanding their agreement to settle those claims.  The language regarding trustees and fiscal agents is therefore necessary both to effectuate this particular settlement and to give effect to the larger policy of promoting settlements in bankruptcy.  *See*, *e.g.*, ECF No. 9695 (recognizing "the important policy of promoting settlements in bankruptcy proceedings") (quoting *In re Kaiser Aluminum Corp.*, 339 B.R. 91, 94 (D. Del. 2006)).

6.      In any event, there is no basis to strike the language regarding fiscal agents and trustees.  The applicable fiscal agents and trustees have not objected to this language, and there is no reason that litigation regarding the Master Proofs of Claim cannot be stayed as to certain of the bonds covered by the Master Proofs of Claims and not others.  *See*  Argument § II.  Moreover, the Objectors lack both Article III and prudential standing even to oppose this language as the Motion seeks no relief as to Ambac and FGIC and no injury has been demonstrated.  *See id*.  As such, the limited language regarding fiscal agents and trustees as relates only to Assured and National has not been meaningfully opposed and should be included in the Proposed Order.

## ARGUMENT

**I.      There is no basis to strike the language in Proposed Order ¶ 2 "preserving all rights, arguments, claims and defenses of the parties as they currently exist in [the Matters]."**

### A.      Assured and National are not bound by principles of claim preclusion.

7.      There is no merit to the Objectors' argument challenging Assured and National's request that the Court "preserv[e] all rights, arguments, claims and defenses of the Parties as they currently exist in [the stay]ed matters." Obj. ¶ 8, *citing* Proposed Order ¶ 2.  The purpose of this provision is to reserve Assured and National's rights with respect to the Revenue Bond Adversary Proceedings while those proceedings continue as to the Objectors.

8.      The Objection makes the legally unsupportable argument that a merits ruling relating to the Objectors' claims will apply to all creditors (including Assured and National) at the plan confirmation stage.  Obj. ¶ 4.  This flouts well-settled principles of claim preclusion, which make clear that the doctrine is inapplicable where there is no identity of the parties.

9.      Principles of fundamental fairness require that parties cannot be precluded unless they have had a full and fair opportunity to litigate claims and issues.  *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit.  The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'"); *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 758 (1st Cir. 1994) ("The doctrine of res judicata rests upon the bedrock principle that, for claim preclusion to apply, a litigant first must have had a full and fair opportunity to litigate his claim.").

10.      In light of this authority, claim preclusion, also known as res judicata, only applies where there is identity of the parties, and all parties participate in the litigation through final judgment.  *See Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994) ("The essential elements of claim preclusion are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privities in the two suits; and (3) an identity of the cause of action in both suits.").  Claim preclusion does not apply to prior settling parties not in privity with non-settling parties.  *TMTV, Corp. v. Mass Productions, Inc.*, 645 F.3d 464 (1st Cir. 2011) (claim preclusion did not apply where settling parties were not in privity with non-settling parties); *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334 (5th Cir. 1982) (co-defendants who settled before trial were not bound by res judicata).  Assured and National are not in privity with the Objectors.  Accordingly, there is no basis for asserting that Assured and National cannot avoid prejudice from future rulings the Court may make in the Revenue Bond Adversary Proceedings.  Obj. ¶ 6.

11.     Moreover, the law of the case doctrine similarly requires identity of the parties.  *In re CH Properties, Inc.*, 381 B.R. 20 (D.P.R. 2007) (applying law of the case where res judicata principles of identity of party and causes are met); *Ramos Bonilla v. Vivoni del Valle*, 336 F.Supp.2d 159 (D.P.R. 2004) (explaining that law of the case is based upon general res judicata principles and applies where "there is sufficient identity between the parties and the causes"); *In re Brizinova*, 592 B.R. 442, 455 (Bankr. E.D.N.Y. 2018) ("whether there is identity of parties between the prior and subsequent matters" is "fundamental" when considering law of the case doctrine.  To the extent the Matters are stayed as to Assured and National and ultimately final determinations are entered with respect to only the Objectors, there would be no such identity here, and therefore neither res judicata nor law of the case will apply.

### B.     The Objectors' confirmation-related objections are premature and irrelevant to the Motion.

12.     Perhaps realizing that an order applicable only to the Objectors will not have any effect on Assured and National's "rights, arguments, claims, and defenses" *within* the Revenue Bond Adversary Proceedings, the Objectors instead speculate about what role such an order might hypothetically play at confirmation either (i) with respect to approval of the proposed settlement under Bankruptcy Rule 9019 or (ii) in relation to a confirmation objection under 11 U.S.C. § 1123(a)(4).  All of these arguments about future, hypothetical proceedings are unripe and provide no basis to modify a Proposed Order that does not even purport to govern such future, hypothetical proceedings.[5]  *See supra* ¶ 3.  In any event, the Objectors' arguments about both Rule 9019 and 11

---

[5] *See*, *e.g.*, *ACP Master Ltd. v. Puerto Rico*, 300 F.Supp.3d 328 (D.P.R. 2018), *aff'd* 919 F.3d 638 (1st Cir. 2019) (declining to consider unripe claims and claims based upon a "hypothetical set of facts"); ECF No. 6891 at 6 (denying relief that was conditioned on "future events that may or may not occur"); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 485 F.Supp.3d 351, 359 (D.P.R. 2020), *aff'd* 989 F.3d 170 (1st Cir. 2021) (declining a request for relief that was based on concerns that "do not currently exist and may never materialize.").

U.S.C. § 1123(a)(4) are also substantively mistaken and therefore provide no basis for modifying the Proposed Order.

> **1.    Any order regarding the Objectors' claims will not be dispositive of a future 9019 motion.**

13.    The Objectors mistakenly state that if their claims are disallowed in the Revenue Bond Adversary Proceedings, then the "success on the merits" prong of a Rule 9019 analysis would dictate that the Oversight Board's proposed settlement with Assured and National could not be approved, because the Oversight Board would supposedly have a 100% chance of also succeeding in disallowing Assured and National's claims.  Obj. ¶ 13.  In reality, however, Rule 9019 is a mechanism "to judicially validate [a trustee's] decision to settle *at the time of the settlement*."  *In re Engman*, 331 B.R. 277, 286 (Bankr. W.D. Mich. 2005) (emphasis added).[6] Thus, the Court may ultimately decide that the Oversight Board's decision to settle with Assured and National was reasonable at the time the decision was made, regardless of what subsequently happened to the Objectors' claims.  Furthermore, Ambac and FGIC will not necessarily make the same arguments in defense of their claims as Assured and National would have made.  Therefore, even if the Objectors' claims were disallowed, this would not be dispositive of Assured and National's likelihood of success or of the reasonableness of the settlement.

14.    The Objectors' primary authority to the contrary is *In re Ramsey*, 356 B.R. 217 (Bankr. D. Kan. 2006), which they mischaracterize as "refusing to approve a settlement of a purported secured claim where [an] identical secured claim had previously been disallowed."  Obj. ¶ 12.  The Objectors neglect to mention that *Ramsey* involved a Chapter 13 Trustee who sought to

---

[6] *See also*, *e.g.*, *In re Bond*, Case No. 93–1410, 1994 WL 20107, at *4 (4th Cir. Jan. 26, 1994) (finding that a bankruptcy court did not abuse its discretion when it "evaluate[ed] the [settlement's] potential benefits at the time the parties executed the [settlement] rather than at the time of the court hearing"); *In re Dalen*, 259 B.R. 586, 602 (Bankr. W.D.Mich. 2001) ("I am compelled to further conclude that I should evaluate the settlement using only the facts as known to the trustee at the time the settlement was reached").

settle an adversary proceeding to avoid the lien of a secured creditor (1) whose *own* proof of claim had already been disallowed, and (2) who had *admitted* that its lien was both unperfected and avoidable. *Ramsey*, 356 B.R. at 228. Clearly, *Ramsey* is distinguishable from the Revenue Bond Adversary Proceedings given that (1) Assured and National's *own* claims have not been disallowed and, if the stay is entered and the settlement approved, will *never* be disallowed, and (2) Assured and National have never made any admission that their claims lack merit, and instead have at all times vigorously defended the merits of their claims.

15.     The Objectors also suggest that there is an exception to the general rule that a settlement is assessed as of "the time of the settlement" (*Engman*, 331 B.R. at 286) in situations where there has been a "change in circumstances." *See* Obj. ¶ 13 n.10. However, in none of the cases cited by the Objectors was the relevant "change in circumstances" an adverse legal ruling with respect to a claim similar to that of the settling creditor. Instead, ironically, the relevant "changed circumstances" generally appear to consist of situations where the debtor or estate finds itself able to pay creditors *more* than anticipated at the time of a settlement. *See In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002) (finding that changed circumstances existed where, subsequent to entering into a settlement, the debtor was able to fully pay all creditors and the bankruptcy case was thereafter dismissed, with the court retaining jurisdiction only as to the issue of the settlement); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (finding that "changed circumstances" existed where a state court judgment had "added $150,500 to the corpus of the bankruptcy estate"). Indeed, the "changed circumstances" doctrine appears to be rooted in the trustee's duty to inform the court that the estate is able to pay creditors more than initially anticipated in keeping with the trustee's "fiduciary responsibility to all creditors." *See Martin*, 91 F.3d at 395. As such, to the extent there is any "changed circumstances" exception to the rule that

settlements are assessed as of "the time of the settlement," that exception does not help the Objectors' argument.[7]

### 2. Any order regarding the Objectors' claims will be irrelevant to 11 U.S.C. § 1123(a)(4).

16.     The Objectors also mistakenly suggest that, under Section 1123(a)(4) of the Bankruptcy Code, Assured and National's claims must be disallowed if the Objectors' claims are disallowed. *See* Obj. ¶ 10.  But Section 1123(a)(4) merely provides that a plan must "provide the same treatment for **each claim** . . . of a particular class, unless the holder of a particular **claim** . . . agrees to a less favorable treatment of such particular **claim** . . . ."  11 U.S.C. § 1123(a)(4) (emphasis added).  By its terms, Section 1123(a)(4) applies only where a party has an allowed or potentially allowable "claim" in the first instance, such that the treatment of that allowed or allowable "claim" can be compared to the treatment of other allowed or allowable "claims" in the same class.  *See, e.g., In re Motors Liquidation Co.*, 447 B.R. 198, 215 (Bankr. S.D.N.Y. 2011) (holding that 1123(a)(4)'s language requiring the same treatment for each claim of a particular class "means, as practical matter, that all *allowed claims* within a particular class should get the same treatment") (emphasis added).  If the Objectors' claims were to be disallowed, then the Objectors would have no "claims" at all, and therefore no basis to invoke Section 1123(a)(4).  Section 1123(a)(4) governs only the treatment of allowed claims; it does not govern allowance of claims, much less dictate that particular claims must be disallowed.[8]

---

[7] The cases cited for a "changed circumstances" doctrine in footnote 10 of the Objection all ultimately rely on *In re Martin*, 91 F.3d 389, 394-95 (3d Cir. 1996) and other Third Circuit case law.  The Objectors provide no authority for the existence of a "changed circumstances" doctrine in the First Circuit.

[8] The Objectors quote out of context certain language from *In re Pilgrim's Pride Corp.*, 442 B.R. 522 (Bankr. N.D. Tex. 2010), in an effort to support their contention that Section 1123(a)(4) dictates that a *settled* claim must be disallowed (in violation of the settlement) simply because a non-settling creditor's similar claim was subsequently disallowed.  *Pilgrim's Pride* did not deal with a settlement at all, however.  It dealt with a situation where the reasoning of an earlier decision disallowing a claim was subsequently applied to disallow similar claims that had *not* been settled and that were still being *actively litigated*.  Here, by contrast, once the proposed stay is put in place as a means of effectuating Assured and National's settlement with the Oversight Board, Assured and National's claims will no longer be the subject of active litigation, and there will no longer be any means or opportunity to disallow Assured

**II.** **There is no basis to strike the language in the Proposed Order staying the
Matters as related to "fiscal agents, trustees or paying agents . . . to the extent
such parties are acting on behalf of Assured and National for HTA Bonds or
CCDA Bonds insured or held by Assured or National."**

17.      The Objectors also seek to strike the language in the Proposed Order staying the

Matters as they relate to "fiscal agents, trustees or paying agents . . . to the extent such parties are

acting on behalf of Assured and National for HTA Bonds or CCDA Bonds insured or held by

Assured or National."  *See* ECF No. 16776-2 ¶ 2.  The Objectors articulate no clear rationale for

striking this language and cite no relevant authority in support of doing so.

18.      The Objectors suggest that the "consent" of the relevant fiscal agents or trustees

would somehow be needed in order for the Court to stay the litigation against them (*see*, *e.g.*, Obj.

¶¶ 3, 16), but the consent of a party is not typically needed in order for that party to be bound by a

court order.  Instead, a party would typically need to *object* to a proposed order in order not to be

bound by it, and here, the relevant fiscal agents and trustees have *not* objected to the Proposed

Order.  Indeed, it is not clear what conceivable interest the fiscal agents or trustees could have in

objecting to such a Proposed Order, because the stay of any portion of the litigation against them

can only benefit the fiscal agents and trustees and the bondholders they represent, and the fiscal

agents and trustees might face liability if they objected to a Proposed Order that benefits their own

bondholders.[9]

19.      The Objectors also try to create the impression that each Master Proof of Claim is

somehow monolithic, such that it must either be allowed or disallowed in its entirety.  *See*, *e.g.*,

Obj. ¶¶ 2, 17.  The reality is that each Master Proof of Claim covers a multiplicity of different

_____

and National's claims, regardless of what might subsequently happen with the Objectors' claims.  As such, *Pilgrim's
Pride* has no application here.

[9] The Objectors also assert that the fiscal agents and trustees would require "the authorization of the majority of the
bondholders" in order to affirmatively consent to the Proposed Order.  *See* Obj. ¶¶ 3, 17.  Leaving aside that no
affirmative consent is required in order for the Proposed Order to be binding on the fiscal agents and trustees, this
assertion is certainly not true of the HTA fiscal agent, because the applicable HTA resolutions contain no requisite
consent thresholds for bondholders to direct actions by the fiscal agent.

bonds with different holders, and that the different series of bonds covered by the proof of claim are identifiable by CUSIP.  There is no legal or practical reason that litigation against the trustees or fiscal agents cannot be stayed as to particular bonds insured by Assured and National, such that claims related to those bonds will remain unaffected even if claims held by other, non-settling creditors are disallowed.  The Objectors cite no authority for their counterintuitive argument that allowance or disallowance of claims covered by the Master Proofs of Claim is an all-or-nothing proposition, and there is no such authority.

20.     Even more fundamentally, the Objectors lack both Article III and prudential standing to oppose the stay as it relates to fiscal agents and trustees.

21.     The Objectors cannot show the requisite standing under Article III of the U.S. Constitution to raise an objection to a stay of claims as against the trustees and fiscal agents to the extent such parties are acting on behalf of Assured and National for HTA Bonds or CCDA Bonds insured or held by Assured or National.  Article III requires that a party show the following three elements to demonstrate standing: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) a causal connection between the injury and the action, and (3) the ability of a Court to issue a "favorable decision" to rectify the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations omitted).

22.     Here, the Objectors have not shown, nor are they able to show, that they have suffered or will suffer an injury in fact as a result of the stay, particularly as it relates to the fiscal agents and trustees.  The requested stay seeks to stay proceedings only as related to bonds insured or held by Assured and National.  The Motion seeks no relief as to Ambac or FGIC.  Instead of pointing to any harm they have suffered, the Objectors merely opine that the Master Proofs of Claim "cannot be hived into bits and pieces" (even though every bond has an identifying CUSIP number) while arguing the Oversight Board would somehow exercise "control" over the

distribution of any received consideration.  ¶ 17.  Such speculative and non-specified injury is so remote or inconsequential, and unrelated to Ambac and FGIC, that it falls outside the bounds of what qualifies for Article III standing.  *See Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017). ("[I]njury is imminent if it is certainly impending <u>or</u> if there is a substantial risk that harm will occur," but neither of which is present here.).

23.     Even assuming, *arguendo*, that the Objectors were able to show an injury in fact, which they cannot, this Court should still find that the Objectors lack prudential standing to object to the stay, particularly as it relates to the fiscal agents and trustees.  *See Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012) (to satisfy prudential standing, a litigant's "claim [must be] premised on his own legal rights (as opposed to those of a third party), . . . [and] not merely [be] a generalized grievance").  The Objectors cannot establish this type of prudential standing.  Instead, the Objectors assert in their own briefing that it is *the fiscal agents and trustees* who would potentially be impacted through the granting of a stay, when they write that "*the fiscal agents and trustees* have not consented to or joined in any such request . . . [t]he rights and duties of the *fiscal agents and trustees* are governed by the relevant bond documents."  Obj. ¶¶ 16-17 (emphasis added).  But nowhere in their Objection do the Objectors detail how their own legal rights would be impacted by a stay of the proceedings as to the fiscal agents and trustees.  Indeed, this Court has previously recognized the necessity of prudential standing when it denied a party's argument because the party "lack[ed] the direct interest necessary to establish prudential standing," holding that a party must stand on its "own legal rights (as opposed to those of a third party)."  Adv. Proc. No. 17-133-LTS, ECF No. No. 276 at 7 (citation omitted).  That principle applies here.

## III.    <u>The DRA Response offers no opposition to the Motion.</u>

24.     The DRA Response does not oppose the Motion.  Indeed, the DRA Parties state that they "do not object to the proposed stay of the relevant litigation."  DRA Response at 3.

Rather, they take the untimely opportunity to raise a series of criticisms with respect to the settlement. *Id.* at 3-5. In particular, the DRA Parties complain that the HTA PSA "is based on the flawed presumption that the DRA Parties' loan claims are subordinated . . . to the HTA bondholders' claims." *Id.* at 4; *see also id.* at 5 (asserting that the bondholders are "potentially subordinate" to the DRA Parties' claims). That assertion is not only substantively flawed, but also irrelevant to the Motion currently before the Court. As Assured and National will demonstrate at the appropriate time, the HTA bondholders' claims are not subordinate to the DRA Parties' loan claims, and the governing documents prove the DRA Parties' assertions of priority to be without merit. In any event, the DRA Parties concede that the HTA priority issues need not be addressed at this juncture. *Id.* at 5. Assured and National thus reserve their rights to respond to any future pleadings, responses, or objections filed by the DRA Parties in the Title III cases, including, without limitation, by responding to any challenge to the settlement embodied within the HTA PSA, any claims to priority, or any assertions concerning the scope of the DRA Parties' alleged property interests.

## CONCLUSION

25.     WHEREFORE, the Motion should be granted and the Proposed Order entered as originally proposed, and the Objection should be overruled.

Dated:     May 21, 2021
           New York, New York

**CASELLAS ALCOVER & BURGOS
P.S.C.**

*/s/ Heriberto Burgos Pérez*
Heriberto Burgos Pérez
USDC-PR No. 204,809
Ricardo F. Casellas-Sánchez
USDC-PR No. 203,114
Diana Pérez-Seda
USDC-PR No. 232,014
E-mail:   hburgos@cabprlaw.com
          rcasellas@cabprlaw.com
          dperez@cabprlaw.com

P.O. Box 364924
San Juan, PR 00936-4924
Tel.:  (787) 756-1400
Fax:  (787) 756-1401

*Counsel for Assured Guaranty Corp. and
Assured Guaranty Municipal Corp.*

**ADSUAR MUNIZ GOYCO SEDA & PEREZ-
OCHOA PSC**

By: */s/ Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    (USDC-PR No. 206314)
    Email: epo@amgprlaw.com

By: */s/ Luis A. Oliver-Fraticelli*
    Luis A. Oliver-Fraticelli
    (USDC-PR No. 209204)
    Email: loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone: (787) 756-9000
    Facsimile: (787) 756-9010

*Attorneys for National Public Finance
Guarantee Corp.*

**CADWALADER, WICKERSHAM & TAFT
LLP**

*/s/ Mark C. Ellenberg*
Howard R. Hawkins, Jr.*
Mark C. Ellenberg*
William Natbony*
Thomas J. Curtin*
Casey J. Servais*
200 Liberty Street
New York, New York 10281
Tel.:  (212) 504-6000
Fax:  (212) 406-6666
E-mail:  howard.hawkins@cwt.com
         mark.ellenberg@cwt.com
         bill.natbony@cwt.com
         thomas.curtin@cwt.com
         casey.servais@cwt.com

* admitted *pro hac vice*
*Counsel for Assured Guaranty Corp. and Assured
Guaranty Municipal Corp.*

**WEIL, GOTSHAL & MANGES LLP**

By: */s/ Robert S. Berezin*
    Jonathan D. Polkes (admitted *pro hac vice*)
    Gregory Silbert (admitted *pro hac vice*)
    Robert S. Berezin (admitted *pro hac vice*)
    Kelly DiBlasi (admitted *pro hac vice*)
    Gabriel A. Morgan (admitted *pro hac
    vice*)
    767 Fifth Avenue
    New York, NY 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Email: jonathan.polkes@weil.com
           gregory.silbert@weil.com
           robert.berezin@weil.com
           kelly.diblasi@weil.com
           gabriel.morgan@weil.com

*Attorneys for National Public Finance Guarantee
Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, this 21st day of May, 2021.

By:_ /s/ *Howard R. Hawkins, Jr.*_____

Howard R. Hawkins, Jr.*

* admitted *pro hac vice*