UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtor.[1] | PROMESA Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**RE: ECF No. 16739** |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>    Debtor. | PROMESA Title III<br><br>Case No. 17 BK 3567-LTS<br><br>**RE: ECF No. 1016** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

123724104v2

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>    Defendants. | Adv. Proc. No. 20-00003-LTS<br><br>**RE: ECF No. 188** |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>    Defendants. | Adv. Proc. No. 20-00004-LTS<br><br>**RE: ECF No. 176** |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>    Defendants. | Adv. Proc. No. 20-00005-LTS<br><br>**RE: ECF No. 200** |

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>    Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, et al.,<br><br>    Defendants. | Adv. Proc. No. 20-00007-LTS<br><br>**RE: ECF No. 64** |
| ASSURED GUARANTY CORP.; ASSURED GUARANTY MUNICIPAL CORP.; and FINANCIAL GUARANTY INSURANCE COMPANY,<br><br>    Plaintiffs,<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY; HON. RICARDO ANTONIO ROSSELLÓ NEVARES; GERARDO PORTELA FRANCO; and HON. RAÚL MALDONADO GAUTIER,<br><br>    Defendants. | Adv. Proc. No. 18-00059-LTS<br><br>**RE: ECF No. 53** |

-3-

| |
|---|
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br>AND THE PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY;<br><br>ASSURED GUARANTY CORP.; ASSURED GUARANTY MUNICIPAL CORP; and NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION,<br><br>    Movants,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION; FINANCIAL GUARANTY INSURANCE COMPANY; AND AMERINATIONAL COMMUNITY SERVICES, LLC, AND CANTOR-KATZ COLLATERAL MONITOR LLC,<br><br>    Respondents. |

**THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO'S OMNIBUS REPLY TO OBJECTIONS TO
URGENT JOINT MOTION TO STAY CERTAIN CONTESTED MATTERS
AND ADVERSARY PROCEEDINGS RELATED TO BONDS ISSUED BY THE
PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),
THE PUERTO RICO CONVENTION CENTER DISTRICT AUTHORITY ("CCDA"),
AND THE PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY ("PRIFA")**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico ("**Oversight Board**"), on behalf of itself and as sole Title III representative of the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority, respectfully submits this omnibus reply (the "**Omnibus Reply**") in support of the *Urgent Joint Motion to Stay Certain Contested Matters and Adversary Proceedings Related to Bonds Issued by the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Convention Center District*

-4-

*Authority ("CCDA"), and the Puerto Rico Infrastructure Financing Authority ("PRIFA")* [ECF No. 16739 in Case No. 17-3283] (the "**Motion**")[2] and in response to:

(a) the *Objection of Ambac Assurance Corporation and Financial Guaranty Insurance Company to Urgent Joint Motion to Stay Certain Contested Matters and Adversary Proceedings Related to Bonds Issued by the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Convention Center District Authority ("CCDA"), and the Puerto Rico Infrastructure Financing Authority ("PRIFA")* [ECF No. 16776 in Case No. 17-3283; ECF No. 1020 in Case No 17-3567; ECF No. 190 in Adv. Proc. No. 20-00003; ECF No. 178 in Adv. Proc. No. 20-00004; ECF No. 203 in Adv. Proc. No. 20-00005; ECF No. 66 in Adv. Proc. No. 20-00007] (the "**Ambac/FGIC Objection**"), filed by Ambac Assurance Corporation ("**Ambac**") and Financial Guaranty Insurance Company ("**FGIC**"), and

(b) *The DRA Parties' Reservation of Rights and Statement in Response to the Urgent Joint Motion to Stay Certain Contested Matters and Adversary Proceedings Related to Bonds Issued by the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Convention Center District Authority ("CCDA"), and the Puerto Rico Infrastructure Financing Authority ("PRIFA")* [ECF No. 16775 in Case No. 17-3283; ECF No. 1021 in Case No. 17-3567; ECF No. 202 in Adv. Proc. No. 20-00005; ] (the "**DRA Response**"), filed by AmeriNational Community Services, LLC, as servicer for the GDB Debt Recovery Authority, and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company (collectively, the "**DRA Parties**").[3]

In support of this Omnibus Reply, the Oversight Board respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The HTA/CCDA PSA represents a tremendous step forward toward resolving the disputes pertaining to HTA Bonds, CCDA Bonds, and related claims asserted and relief sought in the Matters, commenced as early as May 2018. Pursuant to the compromise and understanding set forth in the HTA/CCDA PSA, the Parties have agreed that the Matters should be stayed with respect to Assured and National pending confirmation of the Third Amended Plan and, in certain

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[3] The DRA Parties do not object to the relief requested in the Motion. *See* DRA Response at 3. Instead, the DRA Response raises issues in connection with the confirmation of an HTA plan of adjustment that has not yet been filed, and the Commonwealth's proposed plan of adjustment, and therefore such issues are outside the scope of the relief requested in the Motion. Accordingly, it is not necessary to address the DRA Response at this time, and the Oversight Board reserves all rights and arguments in connection therewith.

-5-

instances, the HTA Plan. Otherwise, the settling Parties would be litigating with each other. The requested stay would conserve limited judicial resources and avoid unraveling the settlement.

2. The Ambac/FGIC Objection raises issues beyond the scope of the relief requested in the Motion, instead attacking the reasonableness of the settlement embodied in the HTA/CCDA PSA and asserting claims of unfair discrimination between claims potentially in the same "class" pursuant to the Third Amended Plan or an HTA Plan. Such objections are premature and should be raised in connection with confirmation of the Third Amended Plan or, to the extent relating to the HTA Plan, even later. To be clear, the Parties merely request a stay and/or to continue any existing stay of the Matters with respect to Assured and National (or their respective fiscal agents, trustees or paying agents, but only to the extent such parties are acting on behalf of Assured and National for HTA Bonds or CCDA Bonds insured or held by Assured or National). Such stay would allow the Parties to consummate the agreed upon compromise and settlement embodied in the HTA/CCDA PSA and Third Amended Plan, while avoiding wasting judicial resources and additional costly litigation of the Matters as they relate to Assured and National. If the Third Amended Plan, as it may be amended or modified, is not confirmed and substantially consummated, all Parties will have preserved their rights, claims, arguments, and defenses.

3. Without question, the proposed stay and the reservation of the Parties' rights in connection with the Matters is necessary. Settlements are futile if holdouts can force litigation between settling parties before the settlements can be approved. Without the stay and reservation of rights, the Oversight Board could make no settlements, which is the opposite of what the law encourages. Even if Ambac and FGIC were correct that they possess similarly-situated claims as Assured and National, their argument that a debtor must settle with <u>all</u> similarly situated creditors makes no more sense than an argument that Ambac and FGIC must agree to the settlement because

Assured and National did. Indeed, the cases Ambac and FGIC cite are inapposite, and courts recognize that different treatments of settled claims and disputed claims is neither prohibited by the Bankruptcy Code, nor relevant in assessing unfair discrimination. Moreover, the Court has the authority under its inherent power to manage its docket to stay the Matters as to the fiscal agents and trustees to the extent such parties are acting on behalf of Assured and National for HTA Bonds or CCDA Bonds insured by such parties.[4] Doing so makes clear that <u>all</u> litigation of the Matters as they relate to Assured and National are stayed, and that the fiscal agents and trustees are not required to assert, or otherwise risk waiving, positions on behalf of Assured or National to the extent the Matters are moving forward. Accordingly, this Court should overrule the Ambac/FGIC Objection and grant the relief requested in the Motion.

## REPLY

**A. The Ambac/FGIC Objection Raises Issues that Should Be Addressed in Connection with Confirmation of the Third Amended Plan.**

4. Ambac and FGIC do not object to the stay of the Matters as related to Assured and National. Rather, because Ambac and FGIC have concerns about unrelated credits and their level of recovery from such other entities, they mask such concerns by challenging the reasonableness of the compromise and settlement proposed in the HTA/CCDA PSA. Indeed, Ambac and FGIC effectively assert that, because they have refused to settle, others cannot settle. *See* <u>Ambac/FGIC Objection</u> ¶ 13 ("The Court . . . cannot reasonably approve a settlement for Assured and National if the Board proceeds in the meantime to disallow identical claims asserted by other creditors.").

---

[4] As mentioned below, it must be noted that the HTA fiscal agent is merely that, a fiscal agent with no authority or duty other than ministerial responsibility. Accordingly, such fiscal agent has no independent position to advocate.

But, the issue at bar is simply whether the settlements Assured and National have made must be scuttled by litigating with parties who have otherwise settled.[5]

5.  Nonetheless, Ambac and FGIC's arguments regarding the reasonableness of the proposed compromise and settlement and claims of unfair discrimination are wrong. With respect to the reasonableness of the proposed compromise and settlement, they argue that, if their claims are disallowed, then the value of the claims being compromised with Assured and National are zero. Ambac/FGIC Objection ¶ 12. Ambac and FGIC, both of which are sophisticated parties, certainly understand one reason why creditors settle is to avoid the risk their claims will be disallowed. And, the reasonableness analysis under Bankruptcy Rule 9019 is made <u>as of the time of settlement</u>. *See In re Dalen*, 259 B.R. 586, 602 (Bankr. W.D. Mich. 2001) ("I am compelled to further conclude that I should evaluate the settlement using only the facts as known to the trustee at the time the settlement was reached"). Consideration of changed circumstances after the fact would only encourage parties to renege on their settlements. *See In re Manuel Mediavilla, Inc.*, 568 B.R. 551, 567 (1st Cir. B.A.P. 2017) ("Settlement agreements are favored by courts in the First Circuit and elsewhere.").[6]

---

[5] Although the approval of the compromise and settlement embodied by the Third Amended Plan is not before the Court at this time, the Oversight Board believes that the compromise and settlement is reasonable and should be approved at the appropriate time. The Oversight Board reserves all rights and arguments in connection therewith.

[6] Ambac and FGIC contend that "changed circumstances" between the entry of a settlement and the time a court decides whether to approve it, such as the conclusion of litigation regarding the disallowance of Ambac's and FGIC's claims, is relevant to the Court's determination whether to approve a settlement. Ambac and FGIC are wrong. Rule 9019 is "a mechanism to judicially validate [a] decision to settle *at the time of the settlement*." *In re Engman*, 331 B.R. 277, 286 (Bankr. W.D. Mich. 2005) (emphasis added). It is not an opportunity to revisit the wisdom of a settlement in light of events transpiring between the time of settlement and the time of the Court's decision to approve or reject that settlement. Nor do Ambac's cited cases state otherwise. In *In re RFE Industries, Inc.*, 283 F.3d 159 (3d Cir. 2002), the court held only that subsequent events should affect the *test* the district court should apply when reviewing the settlement—for example, whether the court should consider the "paramount interest of creditors" or the "paramount interest of shareholders," in light of the intervening dismissal of the

6. With respect to the unfair discrimination assertion, Ambac and FGIC claim that, if their claims are disallowed, Assured and National's claims must also be disallowed pursuant to Bankruptcy Code section 1123(a)(4). *See* <u>Ambac/FGIC Objection</u> ¶ 10. However, Bankruptcy Code section 1123(a)(4) looks at treatment of <u>allowed</u> claims within a class and does not apply to the "allowance" of claims themselves. *See In re Granada Wines, Inc.*, 26 B.R. 131 (Bankr. D. Mass. 1983) ("Once the Court has determined the <u>allowed</u> amount of the Pension Fund's claim, the Fund must be treated the same as the other general unsecured creditors." (emphasis added)). If Ambac's and FGIC's claims are disallowed, they have no basis to assert unfair discrimination pursuant to Bankruptcy Code section 1123(a)(4).

7. Ambac and FGIC's citation to *In re Pilgrim's Pride Corp.*, 442 B.R. 522, 531 (Bankr. N.D. Tex. 2010), does not change this conclusion. The *Pilgrim's Pride* court did not consider whether different results regarding allowance of claims could be based on <u>settlements</u> between a debtor and its creditors. To the contrary, the issue in *Pilgrim's Pride* was whether chicken growers asserting claims identical to claims the District Court had already ruled on were entitled to have their claims determined by a different set of rules. The bankruptcy court determined not to exercise its discretion to vary from the then-existing law of the case. *Id.* Furthermore, *In re W.R. Grace & Co.*, 475 B.R. 34, 139 n.103 (D. Del. 2012), recognized that the Bankruptcy Code does <u>not</u> prohibit disparate outcomes resulting from settlement with some

---

debtor's case. The case does not suggest that the district court should evaluate the reasonableness of the settlement in light of such changed circumstances. In *In re Martin*, the court decided only the narrow question of whether a trustee breached a settlement agreement by informing the court of changed circumstances—the resolution of a state court action in the debtors' favor, which brought a significant recovery to the estate—that rendered the settlement agreement no longer in the best interests of the estate. *In re Martin*, 91 F.3d 389, 395-96 (3d Cir. 1996). *In re ISE Corp.*, 2012 WL 1377085 (Bankr. S.D. Cal. Apr. 13, 2012) is even further from the mark, because the court does not address any alleged "changed circumstances" in its decision to approve the settlement.

parties. *Id.* ("Neither [Bankruptcy Code section 1123(a)(4) nor 524(g)(2)] makes any mention of disparity of treatment based on debtor-creditor settlements. <u>In fact, whether or not other claimants in a given class under a bankruptcy reorganization plan have entered into settlements with the debtor or third parties is completely irrelevant to an inquiry into equality of treatment among creditors in the class</u>." (emphasis added)).[7]

### B. The Proposed Stay and Reservation of the Parties' Rights Pursuant to the Proposed Order is Appropriate.

8. Ambac and FGIC assert certain language in Paragraph 2 of the proposed order ("preserving all rights, arguments, claims and defenses of the parties as they currently exist in [the Matters].") should be stricken. <u>Ambac/FGIC Objection</u> ¶ 8. They argue that, instead, "it will be this Court's rulings on the legal merits—not the plan support agreement with respect to HTA and CCDA claims—that will determine the rights of claimants at the plan confirmation stage." <u>Ambac/FGIC Objection</u> ¶ 9. The illogical conclusion of this argument is that no debtor can settle with a claimant unless all similarly situated claimants agree to the same settlement as to the allowance of their claims. Such position is untenable and contrary to the strong policy encouraging settlements. *See In re Manuel Mediavilla, Inc.*, 568 B.R. at 567. Notably, the court in *In re Kaiser Aluminum Corp.*, 339 B.R. 91, 94 (D. Del. 2006), held that, where a debtor settled a creditor's claim, the court was not required to decide a third-party's objection to the creditor's claim, notwithstanding the right to bring a claim objection pursuant to Bankruptcy Code section 502(a). The court noted, "[I]t is the Court's view that such a procedure [requiring the Court to resolve

---

[7] Furthermore, *In re Cardsystems Sols., Inc.*, 2007 WL 4166184 at *9-10 (Bankr. D. Ariz. 2007), does not stand for a prohibition on settlements regarding characterization or allowance of claims, but, rather, the court there denied approval of the settlement as not in the best interest of the estate on the particular facts of the case. *In re CGE Shattuck, LLC*, 254 B.R. 5, 11 (Bankr. D.N.H. 2000) is also distinguishable because there was no settlement involved, but merely a unilateral offer under a proposal akin to a chapter 11 plan available only to certain creditors. *Id.*

claim objections before approving a settlement] would undermine the important policy of promoting settlements in bankruptcy proceedings by requiring the parties to litigate the very issues that the settlement seeks to resolve." *Id.*

9. Indeed, the proposed stay would be meaningless if Assured and National would nonetheless be bound by this Court's decision as it relates to allowance of Ambac's and FGIC's claims. Such a holding would also be contrary to the doctrine of claim preclusion, which requires parties to be bound to have litigated the issue in the prior action. *See In re Heng Cheong Pac. Ltd. (BVI)*, 2020 Bankr. LEXIS 2281, at *9-10 (Bankr. D. P.R. Aug. 24, 2020) ("The federal doctrine of claim preclusion applies when there is, both in the previous and in the present case, (1) identicality between the parties . . . .").

10. Here, the Parties' proposed stay and reservation of rights language would conserve limited judicial resources and avoid unraveling the settlement in the HTA/CCDA PSA by requiring the Parties to take contrary positions in the Matters. It is also consistent with a plaintiff's right to settle disputes with whomever it wants, including a subset of defendants. *See Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 528–29 (1986) ("It has never been supposed that one party—whether an original party, a party that was joined later, or an intervenor—could preclude other parties from settling their own disputes and thereby withdrawing from litigation."); *Sabre Shipping Corp. v. Am. President Lines, Ltd.*, 298 F. Supp. 1339, 1346 (S.D.N.Y. 1969) ("We conclude that, even though plaintiff had originally sued all defendants as joint tortfeasors, it had the absolute right to settle with some of them and covenant not to continue its suit against them, while reserving its right to continue against the non-settling defendants.").

### C. The Limited Extension of the Stay to the Respective Fiscal Agents, Trustees, or Paying Agents is Appropriate.

11. This Court has the inherent power to stay discrete issues as it deems appropriate in managing its docket, and should do so here. *See, e.g.*, *Marquis v. FDIC*, 965 F.2d 1148, 1154 (1st Cir. 1992) ("It is beyond cavil that, absent a statute or rule to the contrary, federal district courts possess the inherent power to stay pending litigation [.]"); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989) (district courts retain the inherent power to do what is necessary and proper to conduct judicial business in a satisfactory manner); *In re Kitts*, 442 B.R. 818, 829 (D. Utah 2010) (noting that the "bankruptcy court had the inherent authority to manage its case load and calendar"). The Parties' proposed limited extension of the stay to the fiscal agents and trustees makes clear that (i) all litigation of the Matters as they relate to Assured and National are stayed, and (ii) the fiscal agents and trustees are not required to assert, or otherwise risk waiving, positions on behalf of Assured or National to the extent the Matters are moving forward.

12. Ambac and FGIC argue that the stay should not extend to the fiscal agents and trustees because such parties have not consented to or joined such request. *See* Ambac/FGIC Objection ¶ 16. Notably, however, such fiscal agents and trustees have not objected to the Parties' requested relief, nor have they joined in the Ambac/FGIC Objection. In fact, as referenced above, the fiscal agent for the HTA Bonds has no authority to act on behalf of holders of HTA Bonds in the Matters pursuant to the relevant bond resolutions. *See, e.g.*, Puerto Rico Highway Authority Resolution No. 68-18, Adopted June 13, 1968, art. VII; Puerto Rico Highway Authority Resolution No. 98-06, adopted February 26, 1998, art. VII.

13. Ambac and FGIC also do not provide a basis for why this Court cannot stay litigation of certain issues in connection with a master proof of claim. While they argue the master proof of claim "cannot be hived into bits and pieces," Ambac/FGIC Objection ¶ 17, the reality is

that the HTA Bonds and CCDA Bonds insured by Assured and National are nonetheless distinguishable by separate CUSIP numbers. Furthermore, the form of a proof of claim—either as a master proof of claim or individual proof of claim—should not dictate the substantive rights of parties. A determination that disputes regarding master proofs of claim must be addressed wholesale would discourage the use of master proofs of claim, which are intended only to provide administrative convenience and efficiency to debtors and creditors.

14. Accordingly, given the benefit the proposed stay will provide to preserve the compromise and understanding set forth in the HTA/CCDA PSA, the limited extension of the stay to the fiscal agents and trustees is appropriate here. It is also critical to avoid a situation where the principals desire to settle, while their agents are compelled to litigate what they are settling.

## **CONCLUSION**

For the foregoing reasons, the Oversight Board respectfully requests the Court overrule the Ambac/FGIC Objection, grant the Motion, enter the proposed order as submitted with the Motion, and grant it such other relief as is just and proper.

Dated: May 21, 2021
      New York, New York

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 15205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

/s *Michael A. Firestein*

Martin J. Bienenstock
Brian S. Rosen
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**

-14-

Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
brosen@proskauer.com
ebarak@proskauer.com

Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 557-2900
Fax: (310) 557-2193
Email: mfirestein@proskauer.com
lrappaport@proskauer.com

*Attorneys for the Financial
Oversight and Management Board,
as Representative of the Commonwealth*