# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**AMBAC ASSURANCE CORPORATION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS URGENT MOTION TO COMPEL MILLIMAN, INC. TO COMPLY WITH SUBPOENA ISSUED PURSUANT TO THE COURT'S JANUARY 13, 2021 ORDER AUTHORIZING RULE 2004 DISCOVERY**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

In further support of its *Urgent Motion to Compel Milliman, Inc. to Comply with Subpoena Issued Pursuant to the Court's January 13, 2021 Order Authorizing Rule 2004 Discovery* (Dkt. No. 16487, the "Motion"), and in reply to *Milliman's Response to Ambac's Motion to Compel* (Dkt. No. 16734, the "Milliman Opposition Brief") and *AAFAF's Response to Ambac's Motion to Compel Third-Party Discovery from Milliman, Inc.* (Dkt. No. 16737, the "AAFAF Opposition Brief"), Ambac[2] respectfully states as follows:

## PRELIMINARY STATEMENT

1. Milliman's response to Ambac's Motion is a smokescreen to hide its refusal to produce materials responsive to Ambac's document requests.

2. While claiming that it has been cooperative, Milliman initially produced only 23 documents in response to Ambac's Rule 2004 requests, which seek documents underlying Milliman's purported $55 billion valuation of the Commonwealth's pension liabilities. In response to Milliman's (unsupported) complaints about breadth and burden, Ambac attempted to work with Milliman. Ambac prioritized its requests regarding six categories of documents, *including documents specifically referenced in Milliman's valuation report*. In response, Milliman claimed it did not have any of the requested documents. Ambac subsequently requested summaries of the types of documents it maintains to assist Ambac in identifying the documents Milliman has in its possession. Milliman refused to provide any such list, leaving Ambac guessing as to what documents Milliman actually has.

3. At the same time, Milliman has also sought to prevent Ambac from taking a custodial deposition to probe the scope of Milliman's review, arguing that such a deposition is

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2

unnecessary. But the record is clear that Milliman has failed to provide sufficient information regarding its review and will not provide this information unless ordered to do so by the Court.

4. Milliman cannot have it both ways: it cannot complain about the breadth or necessity of Ambac's requests while also refusing to disclose what documents it has and how it came to its determination that no documents exist.

5. In similarly conclusory fashion, Milliman asserts that its production to date is sufficient to allow an actuary to replicate Milliman's analysis, and thus, Ambac requires no additional documents. But Milliman misunderstands the purpose of this discovery process. It is not simply to cross-check Milliman's numbers and then to adopt Milliman's valuation at face value. Rather, Ambac is seeking to analyze the data that Milliman relied upon in valuing the Commonwealth's pension liability, determine what Milliman did when data were missing or wrong, and assess whether its decisions were reasonable. The documents produced to date do not provide this information.

6. Milliman, along with AAFAF, is denying Ambac relevant information critical to Ambac's ability to understand and evaluate the Commonwealth's pensions liability. Indeed, AAFAF is aiding in Milliman's obfuscation and gamesmanship. While AAFAF had previously agreed to produce internal and external communications discussing the assumptions underlying Milliman's reports, it reversed itself after the Milliman Rule 2004 order (the "Rule 2004 Order") was entered, maintaining that its production would be duplicative of materials that Ambac would receive from Milliman, and therefore refused to produce any communications (even internal communications that Milliman could not have in its possession). The fact remains that Ambac has not received this discovery from either AAFAF or Milliman. This transparent attempt to circumvent the discovery process should be rejected.

7. Milliman should thus be compelled to (i) produce the documents responsive to the Subpoena, and to the extent the Court accepts Milliman's claims that no responsive documents exist, provide detailed information regarding the searches it has undertaken in response to the Subpoena and its claims that no responsive documents exist, (ii) produce communications between Milliman and the Government Parties concerning the Actuarial Valuation Reports, and (iii) produce a records custodian for deposition.

## ARGUMENT

### I. MILLIMAN HAS NOT SATISFIED THE REQUESTS CONTAINED IN THE SUBPOENA.

A. <u>Milliman Has Failed To Produce Materials Underlying the Actuarial Valuation Reports</u>

8. Among its six categories of prioritized document requests, Ambac requested that Milliman produce "assumption studies or studies of demographic experience relied on in the Actuarial Valuation Reports" and "analyses of plan experience" (or "experience studies"). (Motion ¶¶ 13-14 (citing Ex. E).)[3]

9. Although Milliman does not deny that its Actual Valuation Reports reference and rely on assumptions and experience studies not explained or otherwise included in the reports, Milliman failed to produce a single document in response to this request. Instead, Milliman has insisted that it "simply does not have the . . . documents." (Milliman Opposition Brief at 8.)

10. Ambac sought to evaluate this assertion by requesting that Milliman provide (i) any engagement letters relating to any pension-related services rendered for the Commonwealth; and (ii) any document retention policies in place during the period of Ambac's document requests.

---

[3] Citations to "Ex. __" refer to the exhibits to the Motion.

4

(*See* Ex. J.) Milliman refused to produce these documents, stating that they were irrelevant and outside the scope of the Milliman Rule 2004 Order. (*See id*.)

11. Now, Milliman responds with more obfuscation. First, it misrepresents the record by asserting that Ambac never requested an explanation of why Milliman does not have such documents. (*See* Milliman Opposition Brief at 1-2.) Milliman completely ignores the numerous emails from Ambac repeatedly asking why Milliman did not have the requested documents, as well as Ambac's request for document retention policies needed to assess possible bases for Milliman's destruction of these materials. (*See* Exs. E, H, J.)

12. Second, Milliman broadly states that the Motion should be denied because Milliman cannot produce documents it does not have. In support of its assertion that it does not have any relevant materials, Milliman attaches a declaration from Glenn Bowen, Milliman's lead actuary. Mr. Bowen represents that Milliman "no longer has a copy of the 2009 and 2012 experience study reports referenced in its 2016 and 2017 valuation reports (*see, e.g.* Puerto Rico Government Employees Retirement System June 30, 2016 Actuarial Valuation Report at 52 (referencing the 2009 and 2012 studies) and Puerto Rico Government Employees Retirement System June 30, 2017 Actuarial Valuation Report at 48 (same)), or anything else to produce in response to romanettes (i)-(ii) in Ambac's February 25, 2021 e-mail or March 18, 2021 letter." (Declaration of Glenn Bowen (Dkt. No. 16734-3, "Bowen Decl.," ¶ 5.) Mr. Bowen further states that "Milliman no longer maintains any documents from 2012 and earlier, except for copies of the annual valuation reports (which would not include experience study reports." (*Id*.)

13. Milliman's responses provide more questions than answers, and lead to serious spoliation concerns. The 2017 Actuarial Valuation Reports for ERS and JRS, which both rely on 2009 experience studies (*see* ERS Actuarial Valuation Report as of June 30, 2017 at 48, JRS

5

Actuarial Valuation Report as of June 30, 2017 at 40), were not published until March 26, 2019. The 2017 Actuarial Valuation Report for TRS, which relies on a 2004-2007 experience study, was not published until March 24, 2020. (*See* TRS Actuarial Valuation Report as of June 30, 2017 at 44-48.) There are thus serious questions regarding when and under what circumstances Milliman purportedly destroyed these reports: When were the documents destroyed? Were they destroyed in the ordinary course of business pursuant to Milliman's document retention policy? Or were they destroyed despite a policy mandating that they be retained? Did the engagement letter for Milliman's services provide for the destruction or the retention of these documents? Was there a discussion with the Commonwealth or the Government Parties about the destruction of the documents? Without relevant documents, a more detailed explanation, and/or a deposition of Milliman's records custodian, these key questions will remain unanswered.

14. Moreover, to the extent that Milliman has, in fact, destroyed the relevant documents, Ambac expects that Milliman has created or received updated studies to be used in its forthcoming Actuarial Valuation Reports. The requests in Ambac's Subpoena expressly cover materials relating to any forthcoming reports, including the 2018 Actuarial Valuation Reports, which have been expected for nearly a year. The Court should order Milliman to produce these documents to Ambac.

15. To the extent the Court accepts Milliman's assertions that Milliman does not have any of these documents, the Court should nonetheless order Milliman to provide detailed information regarding the basis for these assertions. While Milliman argues that a motion to compel is not the appropriate vehicle for obtaining an explanation about what documents a party does not have, it provides no support for this argument. Nor could it. Courts regularly order parties to explain the basis for claiming that responsive documents do not exist. *See, e.g.*, *New*

6

*Show Studios v. Needle*, No. CV 14-1250 CAS (MRWx), 2016 WL 6901692, at *2 (C.D. Cal. Jan. 4, 2016) ("If no other documents are to be produced, Plaintiffs will promptly provide such a document under penalty of perjury explaining the nature of the search for responsive materials, the relationship of that search to previous document productions, and the reasons no further materials exist for production."). Indeed, this Court recently required the Government Parties to provide "detailed information regarding the searches it is undertaking" in response to the defendants' discovery requests. (*See* Case No. 17-3283, Dkt. No. 16236, at 4.). At a minimum, the same should be required here.

16. Finally, Milliman states that it does not maintain copies of the input screens for the valuation software showing plan provisions valued and assumptions used (request (v) of Ambac's Feb. 25, 2021 email), which would require it to "create new documents," and stating that it would be unduly burdensome to do so. (*See* Milliman Opposition Brief at 9.) In fact, courts distinguish between the burden of creating new documents with requiring a party to query a database for relevant information and compelling production of the results. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK (PSG), 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) ("Courts regularly require parties to produce reports from dynamic databases, holding that 'the technical burden ... of creating a new dataset for the instant litigation does not excuse production.'"); *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 51 (E.D.N.Y. 2018) (same). Indeed, the Government Parties have regularly produced screenshots, printouts, and other similar materials in the course of these proceedings, including most recently in the context of the revenue bond adversary proceedings. (*See Order on Defendants' Motion to Compel Document Discovery From the Government in the Revenue Bond Adversary Proceedings*, Dkt. No. 16236 at 10 (ordering the parties to meet-and-confer regarding the Government's process

7

of searching an online system and what "reports and data . . . can be generated" from that system and ordering the Government to "consider in good faith requests . . . to query [the system] for additional available reports . . .").)

17. To the extent that Milliman no longer has copies of relevant documents, input screens may be the only source of information regarding the assumptions and inputs relied on by Milliman in calculating the Commonwealth's $55.6 billion pension liability figure. Thus, the Court should order Milliman to produce copies of the ProVal input screens showing plan provisions valued and assumptions relied on in the reports.

### B. The Communications Produced By Milliman Do Not Satisfy The Requests Contained Within Ambac's Rule 2004 Motion.

18. Though Milliman agreed to produce communications with the Government Parties and the Commonwealth concerning the Actuarial Valuation Reports, the census data, and the assumptions Milliman used, it has improperly and indefensibly narrowed its production to one custodian: Mr. Glenn Bowen. In defense of that decision, Mr. Bowen states that "[t]o the best of [his] knowledge, [he] ha[s] been on all communications with the client." (Bowen Decl., ¶ 3.) However, Mr. Bowen does not address the two documents cited by Ambac confirming that this assertion is not accurate.[4]

19. In the Milliman Opposition Brief, Milliman claims that Ambac never identified email addresses for additional custodians. As a preliminary matter, Milliman is in the best position to identify the individuals and domains that should be searched, not Ambac. Second, the record

---

[4] As explained in the Motion at n.4, at least two documents produced by AAFAF – ERS_0090984 and ERS_0078367 – evidence correspondence between Milliman and the Government Parties and/or the Commonwealth that do not copy Mr. Bowen. Because these documents were marked confidential by AAFAF, Ambac did not attach them to its Motion, but will produce them to the Court under seal upon request.

reflects that Ambac made numerous attempts to meet and confer with Milliman regarding the scope of its email review. For instance, on March 18, 2021, Ambac identified two additional custodians and three additional email domains that it believed should be included in any search, and requested that the parties meet and confer on more appropriate search parameters. (Motion ¶ 22 (citing Ex. H).) But Milliman refused to add any additional custodians or to meet and confer further on search parameters, leaving Ambac with no choice but to seek relief from this Court.

20. In addition, Milliman has failed to complete its production of Mr. Bowen's emails. On April 23, 2021 – after Ambac filed the Motion – Milliman produced 491 additional documents (following its initial production of 23 documents), without any metadata and without familial relationships. The production was provided without any information detailing what was included in the production, and whether and when another production would be forthcoming. In its response to Ambac's Motion, Milliman stated that it "intends to make another production in coming [sic] weeks," and made an additional production yesterday, May 24, 2021. Ambac is processing that production for review.

21. Milliman's responses have been insufficient and obstructive, and serve only to underscore Ambac's need for an order compelling production of these materials. The Court should further order Milliman to produce a witness for a custodial deposition, in addition to the deposition ordered by the Court in the Rule 2004 Order. Without additional information regarding Milliman's assertion, it is impossible for Ambac to assess what Milliman has produced, what it has not yet produced, and what it is withholding.

## II. AMBAC HAS SHOWN GOOD CAUSE FOR WHY IT REQUIRES ADDITIONAL PENSIONS-RELATED INFORMATION FROM MILLIMAN.

22. Milliman makes the bald and conclusory assertion that none of the documents that Ambac seeks are necessary or relevant to understand or replicate Milliman's analysis. (*See*

9

Milliman Opposition Brief at 13-14.) AAFAF piles on, maintaining that Ambac has received sufficient discovery to evaluate the Commonwealth's pension liabilities.[5] (*See* AAFAF Opposition Brief ¶¶ 3-5.)

23. As explained in the Milliman Rule 2004 Motion, Ambac requires additional information to understand the assumptions relied on in the Milliman Actuarial Valuation Reports. This includes additional information regarding the manner in which Milliman determined which mortality rates, discount rates, and additional uniform contribution amounts to use in the reports. Notwithstanding Milliman's assertions to the contrary, the reports do not provide sufficient information regarding the assumptions relied on in the reports. However, the emails produced to date do show data integrity issues, including data gaps and system error.[6]

24. And while Milliman asserts that the material produced to date would allow an actuary to replicate Milliman's analysis, Ambac is not simply seeking to test Milliman's math. Rather than blindly relying on Milliman's (and the Commonwealth's) assumptions, Ambac is seeking to determine how and where Milliman (and the Commonwealth) got its numbers, and what it did when the numbers were missing or wrong. The documents produced to date do not provide this information.

---

[5] AAFAF also argues that Rule 2004 discovery should be cut off entirely in light of the filing of the Commonwealth's proposed plan of adjustment and scheduling of a hearing on the disclosure statement. This Court has rejected this argument many times, most recently last week, when the Court stated that "the mere pendency of a plan proposal [does not] constitute[ ] initiation of a contested matter precluding the use of Rule 2004." (*Memorandum of Decision and Order on Ambac Assurance Corporation's Motion for an Order Authorizing Discovery Under Rule 2004 Concerning Commonwealth Assets*, Dkt. No. 16759 at 7). The Court should similarly reject AAFAF's argument here.

[6] *See e.g.*, MM-Ambac_001903 and MM-Ambac_000742. The preceding documents have been marked confidential by Milliman, and therefore, Ambac has not attached them to this brief. If necessary, Ambac can produce the materials to the Court under seal upon request.

25. In addition, AAFAF's objection to Ambac's Motion is entirely disingenuous when considered in light of its representations in pensions Rule 2004 discovery. While AAFAF had previously agreed to produce internal and external communications discussing the assumptions underlying Milliman's reports, it backtracked entirely after the Milliman Rule 2004 Order was entered, maintaining that its production would be duplicative of materials that Ambac would receive from Milliman. While Ambac noted that AAFAF had agreed to produce internal communications that would not be in Milliman's possession (and thus, could not be produced by Milliman), it agreed that there was no need for duplicative discovery and agreed to wait on seeking additional materials until it had a chance to review the materials produced by Milliman. The fact remains that Ambac has not received this discovery from either AAFAF or Milliman. AAFAF's objection to Ambac's motion seeking the production of necessary materials from Milliman is an attempt to short circuit the discovery process and should be rejected.

### III. MILLIMAN SHOULD BE ORDERED TO MEET-AND-CONFER IN GOOD FAITH WITH AMBAC ABOUT ADDITIONAL SEARCHES

26. Ambac's subpoena requested certain other documents and communications that Milliman has thus far refused to produce, and Ambac moved to compel Milliman to "meet-and-confer in good faith with Ambac about additional searches using different or additional search parameters." (Ex. A (proposed order).) Such an order is necessary now more than ever, as Milliman requests that the Court "condition any additional document discovery (beyond what Milliman has agreed to produce) on showing of need to be made by [motion]." (Milliman Opposition Brief at 15.)

27. Milliman's request should be denied outright, as Ambac already obtained leave of this Court to serve the Subpoena. Thus, there is no need for Ambac to waste additional resources on further motion practice. Ambac properly served a subpoena consisting of 11 document requests

11

and has at all times made clear that it is seeking a complete production of documents responsive to those requests. That Ambac prioritized certain requests over others – as a "starting point" (Ex. E) – should not be used against Ambac.

28. Further, Milliman's production thus far has been wholly inadequate. Indeed, there remain large categories of documents that Milliman has refused to produce, which are not only relevant, but critical to the analysis and evaluation of the $55.6 billion valuation of the Commonwealth's pension liabilities. For example, Milliman has refused to produce:

- Documents and communications "concerning the pension liability of the Commonwealth's Pension Systems that the Commonwealth is projected to incur from fiscal year 2018 . . . . " (Request No. 1);

- Documents and communications "provided by the Commonwealth" to Milliman (Request No. 2); and

- Documents and communications "concerning any guidelines, policies, procedures, practices, rules, staff instructions, or standards applicable to the Pension System or used by the Pension Systems" (Request No. 6).

(*See* Ex. D (Milliman's Responses and Objections).)

29. Moreover, Milliman has *not* produced (or agreed to produce) any internal correspondence whatsoever. The Subpoena unquestionably seeks such correspondence (*see id.*, Request Nos. 1, 2, 5, 6, 7, 8, 10, 11), and Milliman has thus far provided no reason for excluding it from its collection for review and production.[7] Internal Milliman correspondence concerning, for example, the Actuarial Valuation Reports and the assumptions relied on therein, are relevant to assessing the reasonableness of the reports and the projected $55.6 billion pension liability.

---

[7] On Friday, May 21, 2021, Milliman finally agreed to meet and confer with Ambac concerning production of Milliman's internal communications, which meeting is scheduled for Wednesday, May 26, 2021.

Milliman's efforts to limit its production to correspondence with third parties is arbitrary and inappropriate.

30. Milliman should not be permitted to stonewall and dictate unreasonable production parameters. The Court should order Milliman to meet-and-confer with Ambac in good faith concerning these requests.

## CONCLUSION

For the foregoing reasons, Ambac respectfully requests that this Court grant the Motion as set forth in the proposed order attached as Exhibit A to the Motion (Dkt No. 16487-1), and grant such other and further relief as the Court deems just and proper.

Dated: May 25, 2021

San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: */s/ Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com
scolon@ferraiuoli.com

**GLENN AGRE BERGMAN & FUENTES LLP**
By: */s/ Andrew K. Glenn*
Andrew K. Glenn (admitted *pro hac vice*)
Olga Fuentes-Skinner (admitted *pro hac vice*)
Marissa E. Miller (admitted *pro hac vice*)
55 Hudson Yards – 19th Floor
New York, New York 10001
Telephone: (212) 358-5600
Email: aglenn@glennagre.com
ofuentes@glennagre.com
mmiller@glennagre.com

***Attorneys for Ambac Assurance Corporation***

13

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date a true and exact copy of this notice was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

*/s/ Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com