**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**URGENT MOTION TO COMPEL DISCLOSURE STATEMENT DISCOVERY FROM**
<u>**OVERSIGHT BOARD AND AAFAF**</u>

---

[1]    The Debtors in these jointly-administered Title III cases, along with each Debtor's respective Title III case number (listed as a bankruptcy case number due to software limitations) and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

JURISDICTION, VENUE, AND STATUTORY BASES ............................................... 4

BACKGROUND .............................................................................................................. 5

RELIEF REQUESTED ................................................................................................... 10

ARGUMENT .................................................................................................................. 10

I.      COMMITTEE IS ENTITLED TO REQUESTED DOCUMENTS TO
        EVALUATE DISCLOSURE STATEMENT .................................................... 10

        A.      Discovery is Appropriate to Determine Whether Disclosure Statement
                Contains Adequate Information and Otherwise Meets Standards for
                Approval ................................................................................................ 11

        B.      Discovery is Especially Appropriate as Requested by Committee in These
                Cases ..................................................................................................... 13

II.     COMMITTEE'S DISCOVERY REQUESTS ARE NARROWLY TAILORED
        TO SEEK RELEVANT INFORMATION ....................................................... 14

III.    COMMITTEE'S DEPOSITION NOTICES ARE APPROPRIATE ............................. 23

IV.     COMMITTEE IS ENTITLED TO DOCUMENTS FROM ADVISORS ...................... 24

V.      COMMITTEE IS ENTITLED TO DISCOVERY FROM AAFAF .............................. 25

CERTIFICATION ........................................................................................................... 26

NO PRIOR REQUEST ................................................................................................... 27

CONCLUSION ................................................................................................................ 28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 3DFX Interactive, Inc.*,
No. 02-55795 JRG, 2006 WL 2010786 (Bankr. N.D. Cal. June 29, 2006)............................12

*In re Acemla De Puerto Rico Inc.*,
No. 17-02021 ESL, 2019 Bankr. LEXIS 182 (Bankr. D.P.R. Jan. 22, 2019) ........................11

*Autoridad de Carreteras y Transportación v. Transcore Atl., Inc.*,
319 F.R.D. 422 (D.P.R. 2016) .............................................................................................23

*In re Catholic Bishop of N. Alaska*,
No. F08-00110-DMD, 2009 WL 8412170 (Bankr. D. Alaska July 20, 2009) .................12, 26

*In re Divine Ripe, L.L.C.*,
554 B.R. 395 (Bankr. S.D. Tex. 2016) .................................................................................20

*In re El Comandante Mgmt. Co., LLC*,
359 B.R. 410 (Bankr. D.P.R. 2006)......................................................................................13

*In re Ferguson*,
474 B.R. 466 (Bankr. D.S.C. 2012)................................................................................17, 20

*In re Ferretti*,
128 B.R. 16 (D.N.H. 1991)...................................................................................................14

*In re Fullmer*,
No. 09-50086-RLJ-11, 2009 WL 2778303 (Bankr. N.D. Tex. Sep. 1, 2009) .................17, 19

*Grelier v. Burgess (In re Grelier)*,
400 B.R. 826 (Bankr. N.D. Ala. 2009) .................................................................................11

*In re Hutch Holdings, Inc.*,
No. 13-42241-EJC, 2014 WL 7408816 (Bankr. S.D. Ga. Dec. 30, 2014) ...........................12

*In re Johns-Manville Corp.*,
26 B.R. 919 (Bankr. S.D.N.Y. 1983)....................................................................................13

*Marx v. Kelly, Hart & Hallman, P.C.*,
929 F.2d 8 (1st Cir. 1991)....................................................................................................25

*In re Newkirk*,
No. 11-05896-8-RDD, 2012 Bankr. LEXIS 977 (Bankr. E.D.N.C. Mar. 9,
2012) ....................................................................................................................................14

*P.R. Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*,
318 F.R.D. 224 (D.P.R. 2016) ..................................................................25

*In re Ponce de Leon 1403, Inc.*,
No. 11-07920-ESL, 2012 WL 5880443 (Bankr. D.P.R. Nov. 20, 2012)................................12

*In re Refco Inc.*,
336 B.R. 187 (Bankr. S.D.N.Y. 2006) ......................................................13

*Rosie D. v. Romney*,
256 F. Supp. 2d 115 (D. Mass. 2003) ...............................................24, 25

*In re Scioto Valley Mortg. Co.*,
88 B.R. 168 (Bankr. S.D. Ohio 1988)......................................................20

*In re SPM Mfg. Corp.*,
984 F.2d 1305 (1st Cir. 1993) .................................................................13

*In re Vega*,
No. 09-08785 BKT, 2010 WL 3282656 (Bankr. D.P.R. Aug. 17, 2010) ........................12, 26

*Westland Oil Dev. v. Mcorp Management Solut*,
157 B.R. 100 (S.D. Tex. 1993) ................................................................11

**Statutes**

11 U.S.C. § 1103(c)(2)..................................................................................13

11 U.S.C. § 1125 ........................................................................................11

**Other Authorities**

Fed. R. Bankr. P. 9014..............................................................................12

To the Honorable United States Magistrate Judge Judith Gail Dein:

The Official Committee of Unsecured Creditors (the "Committee")[2] respectfully submits this motion to compel (the "Motion to Compel") (i) the production of documents and deposition testimony from the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") and (ii) the production of documents from the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together with the Oversight Board, the "Government Parties") in relation to the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Docket No. 16741] (the "Disclosure Statement").

## PRELIMINARY STATEMENT

1.      Despite being over 500 pages long, the Disclosure Statement fails to do what it must: provide creditors (especially unsecured creditors) with sufficient information to fully evaluate the proposed plan of adjustment (the "Proposed Plan").  Among other glaring deficiencies, the Disclosure Statement fails to give unsecured creditors basic information, such as an understanding of their expected rate of recovery under the Proposed Plan, whether or not their claims have been properly classified, the value and rationale of the settlements the Oversight Board has entered into with bondholders, and whether there are additional sources of value not identified in the Disclosure Statement that could be used to pay unsecured claims.

2.      Unfortunately, the Committee cannot—as the Oversight Board apparently believes—fix these problems by simply proposing revisions to or inserts for the Disclosure Statement.  The problem with this approach is that the Committee does not have access to the

---

[2]      The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

information necessary to know what additional disclosures are required or whether existing

disclosures are accurate.  To address this problem, the Committee has served narrowly-tailored

discovery requests on the Oversight Board and AAFAF to obtain exactly the information it needs

to finish evaluating the Disclosure Statement and prepare its potential objection.

3.      It is especially important for the Committee to receive this information given its

fiduciary duties to unsecured creditors and the nature of the Committee's role in these Title III

Cases.  The Committee is not merely an individual party-in-interest that must make its own

informed voting decision on the Proposed Plan.  The Committee does not vote on the Proposed

Plan, but rather serves as a fiduciary for *all* unsecured creditors and must make a

recommendation regarding the Proposed Plan to those creditors based on, among other things,

the precise manner in which the Proposed Plan will affect their interests.  The Committee at

present does not have sufficient information to carry out this important function and therefore

needs discovery to adequately fulfill its fiduciary duties.

4.      The Oversight Board has generally taken the position in response to the

Committee's document requests that the Oversight Board either (i) should not have to produce

any documents at all, or (ii) need only produce a bare minimum level of documents based on

what the Oversight Board, in its sole discretion, deems appropriate.  In response to some

requests, the Oversight Board has indicated a willingness to meet and confer regarding additional

information it may be willing to add to the Disclosure Statement, and the Committee is happy to

do so; however, the Oversight Board has said it will not agree to produce documents in response

to such requests.  As for depositions, the Oversight Board has refused entirely to make a single

witness available for questioning on a single topic.

2

5.      No legal support exists for the Oversight Board's overly narrow view of its discovery obligations.  Objections to disclosure statements are subject to the same rules of discovery as any other contested matter, meaning that the Committee has the right to seek discovery from the Oversight Board and other parties under Federal Rule of Bankruptcy Procedure 9014 and the rules it incorporates.  Disclosure statement discovery has frequently been granted in other cases far less complex than this one, and the Committee's requests are narrowly tailored to seek documents that will ensure that the Disclosure Statement contains "adequate information" under Section 1125 of the Bankruptcy Code.

6.      While the Oversight Board may complain about the quantum of the Committee's document requests, the Committee's approach was by design.  Rather than serve a few, very broad requests seeking "all documents and communications concerning" general topics, the Committee endeavored to frame its requests as specifically as possible, asking for documents relating to particular Proposed Plan and Disclosure Statement terms and conditions and, where possible, framing its requests as seeking "documents sufficient to show" particular information. That the Committee has identified approximately 75 targeted document requests in response to a 500-page Disclosure Statement should not be surprising, and the specificity of the requests should go a long way to alleviating any alleged burden they impose.

7.      The Oversight Board is also wrong to object to the Committee's requests on the grounds that they seek documents from the Oversight Board's advisors.  The Oversight Board has, in nearly all aspects of these cases, acted primarily, if not entirely, through its counsel and financial advisors.  These parties serve as the Oversight Board's agents and representatives, and therefore the Oversight Board clearly has the ability to produce their documents.  Not surprisingly, the Oversight Board's position on this issue is entirely inconsistent with its own

discovery requests of other parties in these cases where it has asked for other parties to produce the documents of their advisors.

8.      For its part, AAFAF has, without even serving responses and objections to the Committee's requests, categorically refused to search for or produce any documents, claiming without support that the Oversight Board, as the plan proponent, is the only party from whom the Committee can seek disclosure statement discovery.  By refusing to serve responses and objections, AAFAF has waived its ability to oppose the discovery requests under Federal Rule of Bankruptcy Procedure 7034.  In any event, AAFAF's arguments lack merit, as no authority exists for the proposition that parties other than the plan proponent are somehow immune from discovery relating to a disclosure statement.  The discovery sought from AAFAF here is particularly important given AAFAF's role as an advisor to the Debtors.

9.      As always, the Committee is prepared to negotiate in good faith with the Oversight Board and AAFAF regarding the scope of their document productions and the requested depositions of the Oversight Board.  Unfortunately, the meet-and-confer process to date has proven unproductive given the almost wholesale refusal by the Oversight Board and AAFAF to even consider the Committee's requests.  To the extent progress can be made through further discussions, the Committee will do its best to continue having such discussions prior to any hearing on the Motion to Compel and will promptly advise the Court of any developments. Otherwise, the Committee's Motion to Compel should be granted.

## **JURISDICTION, VENUE, AND STATUTORY BASES**

10.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

11.      Venue of this contested matter is proper pursuant to PROMESA section 307(a).

4

12.     The statutory basis for the relief requested herein is Bankruptcy Code

sections 105(a) and 502, made applicable to these Title III Cases by PROMESA section 301(a).

## **BACKGROUND**

13.     On March 8, 2021, the Oversight Board filed the *Disclosure Statement for the*

*Second Amended Joint Plan of Adjustment of the Commonwealth of Puerto Rico* [Docket No.

15977] (the "Second Amended Disclosure Statement").

14.     On April 23, 2021, the Committee served on the Oversight Board a letter

attaching discovery requests regarding the Second Amended Disclosure Statement.  *See* Ex. 1

(April 23, 2021 Letter from N. Bassett to B. Rosen) (the "April 23 Letter").  This letter attached

document requests directed at the Oversight Board and its advisors,[3] a Rule 30(b)(6) deposition

notice for the Oversight Board,[4] and deposition notices directed to David Skeel[5] and Justin

Peterson,[6] two members of the Oversight Board.  The letter explained why the requested

discovery was appropriate notwithstanding anticipated objections and noted that the Committee

was available to meet and confer regarding the discovery.  *See id.* at 2.

15.     After not receiving a substantive response from the Oversight Board regarding the

discovery requests or the April 23 Letter, the Committee sent a follow up inquiry on May 4,

2021 asking whether the Committee would receive the requested documents.

---

[3] *See* Ex. 2 (*Official Committee of Unsecured Creditors' First Set of Document Requests to Financial Oversight and Management Board for Puerto Rico and its Advisors in Connection with Disclosure Statement for Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated April 23, 2021).

[4] *See* Ex. 3 (*Official Committee of Unsecured Creditors' Notice of Deposition to Financial Oversight and Management Board for Puerto Rico in Connection with Disclosure Statement for Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. Pursuant to Fed. R. Civ. P. 30(b)(6)*, dated April 23, 2021).

[5] *See* Ex. 4 (*Official Committee of Unsecured Creditors' Notice of Deposition to David Skeel Pursuant to Fed. R. Civ. P. 30*, dated April 23, 2021).

[6] *See* Ex. 5 (*Official Committee of Unsecured Creditors' Notice of Deposition to Justin M. Peterson Pursuant to Fed. R. Civ. P. 30*, dated April 23, 2021).

16.     On May 7, 2021, more than two weeks after the Committee served the April 23

Letter and the requests, the Oversight Board sent a response letter stating that the discovery was

not necessary or appropriate for approval of the Disclosure Statement and contending, without

support, that the Committee was somehow using its discovery requests to improperly seek

disclosure of confidential mediation materials.  *See* Ex. 6 (May 7, 2021 Letter from B. Rosen to

N. Bassett).  The Oversight Board also suggested, confusingly, that the Committee should use

the limited information it obtained during mediation discussions to propose revisions to the

Disclosure Statement.  The Oversight Board agreed to review the Committee's document

requests and serve formal responses within the time allotted by Federal Rule of Civil Procedure

34(b)(2) (*i.e.*, within thirty days of service of the requests, or by May 24, 2021).

17.     On May 11, 2021, the Committee responded to the Oversight Board's May 7

letter.  *See* Ex. 7 (May 11, 2021 Letter from N. Bassett to B. Rosen).  The Committee noted that

it was not appropriate for the Oversight Board to wait until May 24, 2021 to serve its responses

and objections to the discovery requests in light of the limited time available under the

Disclosure Statement litigation schedule and the Committee's impending objection deadline.  *Id.*

at 1.  The Committee asked that the Oversight Board serve its responses and objection no later

than May 14, 2021.  *Id.*  The Committee also noted that the Oversight Board's suggestions

regarding mediation materials were entirely baseless and assured the Oversight Board that the

Committee has no interest in violating mediation confidentiality.

18.     Also on May 11, 2021, the Oversight Board filed the *Disclosure Statement for the

Third Amended Joint Plan of Adjustment of the Commonwealth of Puerto Rico* [Docket No.

16741] (*i.e.*, the Disclosure Statement).

19.     On May 12, 2021, the Oversight Board filed the *Notice of Filing of Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. and Hearing Thereon* [Docket No. 16742], which stated that all objections to the Disclosure Statement be filed by June 15, 2021.

20.     On May 14, 2021, the Oversight Board responded to the Committee's May 11 letter.  *See* Ex. 8 (May 14, 2021 Letter from B. Rosen to N. Bassett).  In this letter, the Oversight Board agreed to meet and confer regarding the Committee's requests, and to serve formal responses and objections by May 21, 2021, but stated that the Oversight Board would refuse to produce any deposition witnesses.  *Id.*

21.     Also on May 14, 2021, the Committee sent a letter to the Oversight Board and AAFAF,[7] which attached the second set of document requests to the Oversight Board,[8] and the first set of document requests to AAFAF and its advisors.[9]  The second set of document requests to the Oversight Board seek (i) copies of all documents produced to Ambac and other parties in response to their requests, and (ii) additional documents relating to the Disclosure Statement the Oversight Board filed on May 11, 2021.[10]  The requests served on AAFAF seek all documents produced to Ambac and other parties, as well as certain documents related to the Disclosure

---

[7] *See* Ex. 9 (May 14, 2021 Letter from N. Bassett to B. Rosen and E. McKeen).

[8] *See* Ex. 10 (*Official Committee of Unsecured Creditors' Second Set of Document Requests to Financial Oversight and Management Board for Puerto Rico and its Advisors in Connection with Disclosure Statement for Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated May 14, 2021).  The Committee inadvertently attached the incorrect document requests to the Oversight Board with its May 14, 2021 letter.  The Committee propounded the correct second set of document requests to the Oversight Board, Ex. 10, on Sunday, May 16, 2021.  Although the second set of document requests are dated May 14, 2021, the Committee did not propound the requests to the Oversight Board until Sunday, May 16, 2021.

[9] *See* Ex. 11 (*Official Committee of Unsecured Creditors' First Set of Document Requests to Puerto Rico Fiscal Agency and Financial Advisory Authority and its Advisors in Connection with Disclosure Statement for Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated May 14, 2021).

[10] The letter also noted the Committee's belief that it was not necessary to re-serve its April 23 requests in light of the filing of the Third Disclosure Statement, and that all references in the April 23 requests to the Second Amended Disclosure Statement should be construed as references to the Third Amended Disclosure Statement.

Statement that the Committee believes are within the custody, possession, or control of AAFAF
or its advisors.

22.     On May 17, 2021, AAFAF sent a letter regarding the Committee's discovery
requests.  *See* Ex. 12 (May 17, 2021 Letter from E. McKeen to N. Bassett).  AAFAF argued that
the Committee's discovery requests did not pertain to the adequacy of the Disclosure Statement,
and that it was improper for the Committee to request discovery from AAFAF since it was not
seeking approval of the Disclosure Statement.  *Id.*

23.     On May 19, 2021, the Committee, AAFAF, and Ambac, which served its own
discovery requests on AAFAF, conducted a telephonic meet and confer regarding the discovery
requests.  During the meet and confer, AAFAF confirmed its position that the discovery the
Committee seeks is categorically improper as directed to any party other than the Oversight
Board.  AAFAF took the same position with respect to Ambac's requests.  AAFAF said that it
would inform the Committee and Ambac if there is a change in its position after the May 24,
2021 meet and confer between the Committee and the Oversight Board.

24.     On May 21, 2021, the Oversight Board served its responses and objections to the
Committee's first set of document requests[11] and its Rule 30(b)(6) deposition notice,[12] but no
response to the Committee's second set of document requests.  In its response to the first set of
document requests, the Oversight Board stated that it will not produce documents in response to
38 of the requests, will meet and confer regarding 19 of the requests, and that it has or will make

---

[11] *See* Ex. 13 (*Responses and Objections of the Financial Oversight and Management Board for Puerto Rico to the Official Committee of Unsecured Creditors' First Set of Document Requests in Connection with Disclosure Statement for Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated May 21, 2021).

[12] *See* Ex. 14 (*Responses and Objections of the Financial Oversight and Management Board to Notice of Deposition in Connection with Disclosure Statement for Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated May 21, 2021).

available documents or other responsive information regarding 11 of the requests.  In its

response to the Rule 30(b)(6) deposition notice, the Oversight Board states "that it is not

presently willing to proffer a witness from the Oversight Board to testify at a deposition in

connection with this contested matter."  Ex. 14.

25.     On May 24, 2021, the Committee, Ambac, and the Oversight Board conducted a

telephonic meet and confer regarding Ambac and the Committee's separate discovery requests

and the Oversight Board's responses and objections thereto.  During the meet and confer, the

Oversight Board confirmed its position that it will not produce documents in response to almost

all of the requests in the Committee's first set of document requests.  The Oversight Board

reiterated that it would be willing to meet and confer regarding nineteen particular requests, but

only to the extent the Committee wishes to propose additions and revisions to the Disclosure

Statement and not for the purpose of discussing document productions.  The Committee intends

to further meet and confer in good faith with the Oversight Board as to these nineteen requests;[13]

however, because the Oversight Board has already stated that it will not be producing any

documents, and given the expedited litigation schedule, the Committee has included these

requests in this Motion to Compel.[14]

26.     During the meet and confer, the Committee confirmed its position, as set forth in

the parties' correspondence, that the Committee is unable to, blindly, propose revisions or

---

[13] The Committee also intends to meet and confer with the Oversight Board in the near term regarding the second set of requests for production served on the Oversight Board.  The Oversight Board has not yet served responses and objections to the second set of requests but represented that it would do so this week and indicated that its responses and objections would be substantially the same as those it served in response to the first set of requests.  In other words, the Oversight Board is **not** willing to produce any documents.  In the interests of efficiency, and given the impending deadlines under the litigation schedule, the Committee has addressed its second set of requests in this motion to compel notwithstanding the fact that it is still awaiting formal responses and objections.

[14] The Oversight Board agreed to further meet and confer regarding, Ex. 2, Request Nos. 11, 14, 15, 16, 17, 18, 23, 24, 26, 34, 35, 36, 37, 38, 39, 40, 41, 46, and 56.

additions to the Disclosure Statement without understanding what additional relevant
information might exist and without testing the accuracy—and thus adequacy—of the
information already in the Disclosure Statement.

## RELIEF REQUESTED

27.     By this Motion to Compel, the Committee requests that (1) the Oversight Board
(and its advisors, as appropriate) and AAFAF (and its advisors, as appropriate) be ordered to
produce the documents requested in the Committee's document requests by no later than June
10, 2021; (2) by no later than June 14, 2021, (a) the Oversight Board be ordered to appear for a
deposition under Federal Rule of Civil Procedure 30(b)(6), and (b) David Skeel and Justin
Peterson be ordered to appear for fact depositions.

## ARGUMENT

## I.    COMMITTEE IS ENTITLED TO REQUESTED DOCUMENTS TO EVALUATE
DISCLOSURE STATEMENT

28.     The Committee is entitled to serve discovery on the Oversight Board and AAFAF
under Federal Rules of Bankruptcy Procedure 9014 and 7034 in connection with the contested
hearing scheduled for July 13, 2021 to consider the Disclosure Statement.  While the Oversight
Board and AAFAF seem to believe a motion for approval of a disclosure statement is subject to a
different set of discovery rules than other contested matters, they do not, and cannot, provide any
support for this position.  To be approved, the Disclosure Statement must contain adequate
information to allow creditors to properly evaluate the Proposed Plan.  Moreover, the
Committee, as a fiduciary for all unsecured creditors, needs sufficient information to make an
informed recommendation to such creditors regarding the Proposed Plan.  Without such
information, the Committee cannot exercise its fiduciary duties.

A.      Discovery is Appropriate to Determine Whether Disclosure Statement Contains
Adequate Information and Otherwise Meets Standards for Approval

29.     Section 1125 of the Bankruptcy Code governs the requirements for a disclosure

statement.  *See* 11 U.S.C. § 1125.  Section 1125(a)(1) requires that a disclosure statement contain

"adequate information," which is information with sufficient detail as far as reasonably

practicable in light of the nature and history of the debtor and the condition of the debtor's

financial records that would enable a hypothetical reasonable investor to make an informed

judgment about the Proposed Plan.  *Id*. § 1125(a)(1).  Section 1125(a)(1) further provides that "in

determining whether a disclosure statement provides adequate information, the court shall

consider the complexity of the case, the benefit of additional information to creditors and other

parties in interest, and the cost of providing additional information."  *Id*.

30.     Disclosure is a "pivotal" concept in reorganization practice under the Bankruptcy

Code.  *Westland Oil Dev. v. Mcorp Management Solut*, 157 B.R. 100, 102 (S.D. Tex. 1993)

(quoting Collier on Bankruptcy P 1125.02 (16th 2021)).  "Creditors rely on the disclosure

statement to determine what distribution or other assets they will receive and also what risks they

will face.  Accordingly, the importance of full and honest disclosure is critical and cannot be

overstated."  *In re Acemla De Puerto Rico Inc.*, No. 17-02021 ESL, 2019 Bankr. LEXIS 182, at

*23 (Bankr. D.P.R. Jan. 22, 2019) (citing *In re A.H. Robins Co.,* 216 B.R. 175, 180 (E.D. Va.

1997)); *see also Grelier v. Burgess* (*In re Grelier*), 400 B.R. 826, 831 (Bankr. N.D. Ala.

2009) ("The importance of disclosure is underscored by the reliance the court and creditors place

on the disclosure statement in determining their response to the debtor's plan.").

31.     Given the importance of a disclosure statement and the need for it to contain

adequate information, it is appropriate for parties to conduct discovery in connection with a

motion to approve a disclosure statement.  According to the advisory committee notes for

11

Federal Rule of Bankruptcy Procedure 9014, "the filing of an objection to a . . . disclosure statement creates a dispute which is a contested matter."  As a result, "Part VII Rules" apply to the contested matter, including Federal Rule of Bankruptcy Procedure 7026, which incorporates Federal Rule of Civil Procedure 26 (permitting discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *see also In re Catholic Bishop of N. Alaska*, No. F08-00110-DMD, 2009 WL 8412170, at *2 (Bankr. D. Alaska July 20, 2009) ("Because the UCC has objected to the pending disclosure statement, it has become a contested matter.  Discovery within a contested matter is governed by Fed. R. Bankr. P. 7026-7037, rather than the more expedited procedure of Rule 2004.").

32.     Many courts have authorized disclosure statement discovery in cases smaller and less complex than this one.  *See, e.g.*, *In re Vega*, No. 09-08785 BKT, 2010 WL 3282656, at *1-2 (Bankr. D.P.R. Aug. 17, 2010) (discovery permissible as to whether claimant is an "insider"); *In re 3DFX Interactive, Inc.*, No. 02-55795 JRG, 2006 WL 2010786, at *4 (Bankr. N.D. Cal. June 29, 2006) (discovery permitted as to whether plan proponent had conflict of interest (and thus, whether plan was proposed in good faith) as well as whether the disclosure statement provided "adequate information"); *In re Hutch Holdings, Inc.*, No. 13-42241-EJC, 2014 WL 7408816, at *2 (Bankr. S.D. Ga. Dec. 30, 2014) ("Without issuing a formal scheduling order, the Court gave the parties sixty days to complete discovery on issues relating to the adequacy of the disclosure statement and regarding the stay relief issue of whether Newsouth was necessary for an effective reorganization."); *In re Ponce de Leon 1403, Inc.*, No. 11-07920-ESL, 2012 WL 5880443, at *2 (Bankr. D.P.R. Nov. 20, 2012).  Thus, there should be no dispute that disclosure statement discovery is appropriate, despite the Oversight Board's arguments to the contrary.

B.    Discovery is Especially Appropriate as Requested by Committee in These Cases

33.    The scope and significance of these Title III Cases and the nature of the Proposed

Plan render discovery particularly appropriate here.  As courts have recognized, "adequacy of the

disclosure is dependent upon various factors including: the size and complexity of the chapter 11

case, the type of plan proposed, the type of creditors and claims impaired by the proposed plan,

and the access by impaired creditors to relevant information from other sources." *In re El*

*Comandante Mgmt. Co., LLC*, 359 B.R. 410, 415 (Bankr. D.P.R. 2006) (quoting *In re Phoenix*

*Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pennsylvania 2001)).  As this Court knows,

these Title III Cases are enormously complicated (as indicated by the length and complexity of

the Disclosure Statement and Proposed Plan), involve billions of dollars in claims and assets, and

will affect many thousands of creditors in Puerto Rico and throughout the world.

34.    The Committee has a particularly acute need for discovery given its statutory

obligations and fiduciary duties to unsecured creditors.  *In re Refco Inc.*, 336 B.R. 187, 195

(Bankr. S.D.N.Y. 2006) (because "[t]here is simply no other entity established by the Code to

guard" the interests represented by the official committee, the official committee "must

necessarily be adversarial" to the debtor) (citation omitted);  *In re Johns-Manville Corp.,* 26 B.R.

919, 925 (Bankr. S.D.N.Y. 1983) ("these fiduciary duties" of the official committee "are crucial

because of the importance of committees"); 11 U.S.C. § 1103(c)(2) ("A committee . . . may . . .

investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, . . . and any

other matter relevant to the case ***or to the formulation of a plan***[.]") (emphasis added).

35.    Importantly, the Committee serves as a fiduciary for ***all*** unsecured creditors and

must be able to make a recommendation regarding the Proposed Plan to those creditors based on,

among other things, the precise manner in which the Proposed Plan will affect their interests.  *In*

*re SPM Mfg. Corp.,* 984 F.2d 1305, 1315 (1st Cir. 1993) ("[T]he committee is a fiduciary for

13

those whom it represents, not for the debtor or the estate generally.").  These unsecured

creditors—whose interests the Committee represents but whose votes it does not control—

include thousands of individuals and local small business owners who are ill-equipped to self-

identify information that may be unclear in and/or missing from the Disclosure Statement.  As a

result, the Committee's recommendation regarding the Proposed Plan will likely be a key factor

in those creditors' decision to vote for or against the Proposed Plan.

## II.    COMMITTEE'S DISCOVERY REQUESTS ARE NARROWLY TAILORED TO SEEK RELEVANT INFORMATION

36.    Contrary to the contentions of the Oversight Board and AAFAF in their responses

and objections and during the meet-and-confer process, the Committee's requests are narrowly

tailored to seek information necessary to allow the Committee to understand whether the

Disclosure Statement contains adequate information and to make a recommendation to its

constituents concerning the Proposed Plan.  The discovery requests seek information regarding,

among other topics, the following key areas of interest:[15]

37.    **The expected rate of recovery for Commonwealth general unsecured claims.**

The Committee seeks documents regarding the number and amount of Commonwealth and ERS

general unsecured claims.  *See, e.g.*, Ex. 2, Request Nos. 1, 2, 52, 53.  This information is

necessary to allow unsecured creditors to understand perhaps the single most important issue as

they evaluate the Proposed Plan:  the expected rate of recovery for their claims.  "[A] proper

disclosure statement must clearly and succinctly inform the average unsecured creditor what it is

going to get, when it is going to get it, and what contingencies there are to getting its

distribution."  *In re Ferretti*, 128 B.R. 16, 19 (D.N.H. 1991); *see also In re Newkirk*, No. 11-

---

[15] The Committee has elected not to move to compel documents with respect to Request 10 of the Committee's first request for production at this time.  *See* Ex. 2, Request 10.

05896-8-RDD, 2012 Bankr. LEXIS 977, at *12 (Bankr. E.D.N.C. Mar. 9, 2012) (holding that "the Disclosure Statement fails to provide adequate information to unsecured creditors concerning the value of the property to be distributed to unsecured creditors under the Plan").

38.    The current Disclosure Statement does not provide adequate information regarding the expected rate of recovery for unsecured creditors because, in most instances, the Disclosure Statement provides no information at all regarding the datapoints that will affect such creditors' recoveries.  The Disclosure Statement provides no "Estimated Claim Amount" or "Approx. Fixed Recovery From Debtors (%)" for the CW General Unsecured Claims in Class 55 of the Proposed Plan,[16] nor does it provide any estimate of the amount or number of such claims, or a particularized description of what claims are included in Class 55.[17]  *See* Ex. 2, Request Nos. 1 and 2.  Similarly, the Disclosure Statement fails to provide any estimates of the amount and number of ERS General Unsecured Claims[18] (previously class 64 in the Disclosure Statement) or an explanation to creditors regarding the seemingly arbitrary $5,000,000.00 cap on the ERS GUC Pool available to claimants.[19]  *See* Ex. 2, Request Nos. 52, 53.  Instead of providing even a scintilla of information for the Committee to base any proposed revisions to the Disclosure Statement concerning the CW and ERS General Unsecured Claims, the Oversight Board has provided no information at all regarding estimations of the number and amount of such claims, or possible recoveries for such classes of unsecured creditors.

39.    Thus, the Committee seeks through its discovery requests documents concerning the number and amount of claims in classes 55 and 63 of the Disclosure Statement, the types of

---

[16] Disclosure Statement at 22.

[17] *Id.* at 410.

[18] *Id.* at 23.

[19] *Id.* at 417-18.

unsecured claims classified in Class 55, and the basis for capping the ERS GUC Pool at only $5
million. Absent such basic information, the Committee is unable to propose revisions or
additions to the Disclosure Statement as to these claims and other provisions of the Proposed
Plan, like the Convenience Claim Election.[20]

40.     However, in its responses and objections, the Oversight Board has stated that it
will not produce *any* documents in response to these requests. *See* Ex. 13 at 11-12, 57-59.

41.     **The classification of Commonwealth general unsecured claims.** The
Committee also seeks information regarding the classification of claims, including which claims
should be included or excluded from the general unsecured creditors' class (*i.e.*, Class 55), why
some unsecured claims were classified separately from Class 55, and whether the Proposed Plan
unfairly discriminates against general unsecured creditors. *See, e.g.*, Ex. 2, Request Nos. 3, 8,
34, 50. The Committee is entitled to disclosure statement discovery regarding the classification
of unsecured claims because the classification issue is a fatal flaw in the Proposed Plan (and
therefore in the Disclosure Statement). Indeed, this Court has already held that the Committee's
reclassification arguments should be raised "in the objection to the proposed Disclosure
Statement." April 28, 2021 Omnibus Hr'g Tr., at 149:9-12; *see also Order Denying the Official
Committee of Unsecured Creditors' Bankruptcy Rule 3013 Motion and Related Scheduling
Motion* [Docket No. 16629] at 2 (expressly permitting Committee to raise its classification
arguments "as objections in connection with any motion seeking approval of a disclosure
statement or confirmation of a plan of adjustment").

42.     The Oversight Board has agreed to meet and confer regarding possible revisions
or additions to the Disclosure Statement in response to one request (Ex. 2, Request No. 34), has

---

[20] *Id.* at 46-47.

asserted that the documents in the Depository provide adequate information in response to

another request (Ex. 2, Request No. 8), and has categorically objected to two additional requests

(Ex. 2, Request Nos. 3 and 50).  These responses are insufficient.  All four requests seek

information concerning why and how the Oversight Board determined the classification of

similarly situated unsecured creditors pursuant to the Proposed Plan, and how such classification

will affect those claimants' recoveries.  Without discovery on these classification issues, the

Committee is unable to determine the whether the Disclosure Statement adequately informs

creditors of the basis for their treatment among other unsecured creditors under the Proposed

Plan, and how such classification will affect an unsecured creditor's recovery.

43.     **The consideration provided to other creditors.**  The Committee seeks

information regarding the value that is being provided to other creditors through settlements,

most importantly the consideration being provided to bondholders as part of the PSA, and the

rationale for those settlements.  *See, e.g.*, Ex. 2, Request Nos. 11, 12, 13, 14, 15, 16, 17, 18, 19,

21, 25, 26, 27, 28, 29, 30, 31, 32, 51, 56, 57, 58; *See* Ex. 10, Request Nos. 7, 8, 9, 10, 11, 16.

44.     This is the exact sort of information that courts have held should be included in a

disclosure statement.  *See In re Ferguson*, 474 B.R. 466, 472 (Bankr. D.S.C. 2012) ("The

purpose of a disclosure statement is to allow creditors to make an informed judgment about a

plan of reorganization, ***particularly those creditors that do not participate***

***in settlement negotiations with a debtor and likely to vote on a proposed plan of***

***reorganization***.") (emphasis added); *In re Fullmer*, No. 09-50086-RLJ-11, 2009 WL 2778303, at

*2 (Bankr. N.D. Tex. Sep. 1, 2009) ("[T]he disclosure statement must also include a prominent

disclosure of FCB's articulated position regarding the settlement and the May 11 agreed order"

so that "other creditors, particularly unsecured creditors, would be better informed if they are

aware of FCB's articulated position regarding the comprehensive settlement and, particularly, the effect of the May 11 agreed order.  The settlement between FCB and the debtors is the single most important event that has transpired in these bankruptcy proceedings.")

45.     Unsecured creditors need to understand the settlements that the Oversight Board has entered into with bondholders.  The Committee's requests go to the amount of consideration that is being provided to bondholders (and necessarily, the amount of consideration that is no longer available to be provided to unsecured creditors), because such detailed information is not disclosed in the Disclosure Statement.  *See, e.g.*, Ex. 2, Request No. 11 (consideration to be received by Initial PSA Creditors); Request No. 25 (decision to have deemed issuance date for New GO bonds of July 1, 2021); Request No. 26 (likely payment under the GO CVIs); Request No. 32 (calculation of consummation costs, restriction fees, termination fee); Request No. 51 (value of the tax benefits relating to New GO Bonds); Request No. 56 (likely payment under the Clawback CVIs); Ex. 10, Request No. 8 (who is paying fees under settlement); Request No. 9 (valuation of ERS private equity portfolio); Request No. 10 (likely payments of GO CVIs); Request No. 11 (likely payments under Clawback CVI); Request No. 16 (will New GO bonds trade at par).  The Committee cannot propose further disclosures that adequately explain the consideration being provided to bondholders without discovery.

46.     The Committee also seeks information regarding the terms of the settlements themselves, to the extent that they are not clear, *see, e.g.*, Ex. 2, Request No. 16 (terms of the PBA settlement); Request No. 17 (properties to be transferred by PBA to the Commonwealth); Request No. 18 (whether the PBA properties are in fact owned by PBA), and information that would help creditors evaluate the appropriateness of the settlements.  *See, e.g.*, Ex. 2, Request

No. 15 (amount of rent claims that PBA would hold against the Commonwealth, if PBA were to prevail in PBA litigation).  Again, this is critical information for unsecured creditors.

47.     Finally, the Committee asks for information from the Oversight Board explaining the rationale, justification, basis, or decision to enter into the settlements.  *See, e.g.*, Ex. 2, Request No. 12 (rationale for Settlements); Request No. 13 (the decision to use original issue discount in GO and PBA bondholders' claims); Request No. 14 (basis for releasing clawback claims); Request No. 16 (why there will be no 9019 Motion for the PBA settlement); Request No. 19 (decision to allow interest on Commonwealth guarantee bond claims arising from PBA bonds); Request No. 21 (establishment of Debt Service Reserve Fund for new GO Bonds); Request No. 27 (rationale for providing GO CVIs); Request No. 28 (rationale for providing $7 billion in cash to GO and PBA bondholders); Request No. 29 (rationale for excluding certain debt service payments on New GO CABs from the Comprehensive Cap); Request Nos. 30 and 31 (rationale why GO bondholders are entitled to New GO CABs); Request No. 32 (justification for consummation costs, restriction fees, retail support fee, and termination fee); Request No. 57 (rationale for providing holders of Clawback claims with Clawback CVIs); Request No. 58 (rationale for ERS Settlement); Ex. 10, Request No. 7 (rationale of payments to Assured and National).  These requests are appropriate because, without understanding the rationale behind the settlements' terms and payments, it is impossible for unsecured creditors to evaluate the reasonableness of the settlement.  *See In re Fullmer*, 2009 WL 2778303, at *2.

48.     **Information regarding other sources of value that could be used to pay general unsecured creditors**.  The Committee also seeks discovery regarding other assets that could be used to pay general unsecured creditors, including cash, investments, bonds and real estate*, see, e.g.*, Ex. 2, Request Nos. 41, 42, 43, 44, 45, 46, 47, 48, 54; Ex. 10, Request No. 12,

19

and information regarding the Oversight Board's bank account analysis, including information

regarding the exhibit to the Disclosure Statement that lists "Debtors' Bank Accounts, Balances,

and Preliminary Restriction Categorizations as of December 31, 2020." *See, e.g.*, Ex. 2, Request

Nos. 35, 36, 37, 38, 39, 40; Ex. 10, Request No. 13.

49.     The Committee is entitled to this discovery because unsecured creditors need to

know if there are other resources that may be able to be used to provide them with additional

recoveries. *In re Ferguson*, 474 B.R. at 472 ("Where unsecured creditors are not being paid in

full and a debtor plans to retain non-exempt property, the disclosure statement should provide

adequate disclosures as to the reasons why the debtor should be allowed to retain such

property[.]"); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 172 (Bankr. S.D. Ohio 1988) (noting

that a disclosure statement should explain "all significant assets of the Debtor, including

payments—whether they are periodic, lump-sum, or 'balloon' payments—which the Debtor is

entitled to receive in the future pursuant to any agreements with corporations, partnerships,

individuals and other entities"); *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 406 (Bankr. S.D. Tex.

2016) ("[T]his Court finds the Disclosure Statement does not provide adequate information on

the Debtor's assets and their value and the Liquidation Analysis is woefully inadequate by failing

to account for all assets, not just the primary asset.").

50.     The Committee's requests seek to determine whether the Commonwealth has

access to other assets and resources that may be available to creditors.  To this end, the

Committee seeks information regarding (i) the sources and uses of the Debtors' cash and

investments through June 30, 2021 (and whether they are available for creditors); (ii) Debtors'

unencumbered assets that are potentially for sale; (iii) whether there are unrestricted accounts not

listed in Exhibit L; (iv) what constitutes "essential services"; (v) what funds or resources would

be needed to implement an HTA plan of adjustment; and (vi) what Commonwealth, PBA and

ERS unencumbered property is vacant, including the value of such assets.  *See* Ex. 2, Request

Nos. 41, 42, 44, 45, 46, 48, 54; Ex. 10, Request No. 12.  The Committee also seeks information

regarding the rationale for some the Oversight Board's policies and positions on some of these

issues.  *See* Ex. 2, Request Nos. 43, 47.  Without understanding the Oversight Board's rationale,

it is impossible for the Committee to determine whether the position taken by the Oversight

Board is appropriate, and therefore whether the Disclosure Statement is or is not misleading.

51.      In addition, Ex. 2, Requests Nos. 35-40 seek information regarding the list of

bank accounts provided in Exhibit L to the Disclosure Statement, which categorizes each account

by whether or not it is "restricted" (*i.e.*, available to pay creditors).  *See* Disclosure Statement at

133-40.  This list is admittedly "preliminary" as of December 31, 2020, and the Disclosure

Statement notes that legal due diligence regarding the restriction classifications is "continuing."

*Id*. at 133, 138.  The Oversight Board has directed the Committee to certain documents in the

Disclosure Statement Depository in response to these requests.  *See* Ex. 13, at 43-48.  But this

information does not provide sufficient information to determine which categorizations are final,

which are subject to change, and which accounts are still being reviewed.  Moreover, the

information in the Depository does not provide detail regarding the categorizations that have

already been made.  For example:

- There are no documents that explain why the "Assets to be Restricted" accounts, which mostly pertain to the settled ERS litigation, are not now categorized as unrestricted.

- There are no documents in the Depository that justify an "inconclusive" categorization for the 8 bank accounts.

- There are no documents in the Depository that provide the December 31, 2020 cash balances for bank accounts with a "pending" designation.

21

- There is no updated sources and uses analysis, which is needed to permit the Committee to determine the amount of unrestricted cash available after accounting for various settlements.

52.     Unsecured creditors need this information to fully evaluate the bank accounts and other resources of the Debtors and understand whether they could potentially be used to provide greater recoveries to unsecured creditors.

53.     **The Committee's remaining requests are also narrowly tailored to seek relevant information.**  The Committee seeks additional information regarding a variety of other topics relevant to unsecured creditors' evaluation of the Disclosure Statement and Proposed Plan. For example, the Committee seeks documents concerning:

- the value, payment, and terms of payment of specific claims pursuant to the Disclosure Statement.  *See* Ex. 10, Request Nos. 2, 3, 4, 5, 6 (value of other claims against the Commonwealth, loans to and by the Commonwealth, and payment terms provided to certain claims); Ex. 2, Request Nos. 5, 6 (post-petition payments of pre-petition unsecured claims, and the basis for such payment);

- the obligations and financial viability of the Commonwealth going forward, in light of the Disclosure Statement.  *See* Ex. 2, Request No. 4 (estimated costs of solicitation of creditors' votes in connection with the Disclosure Statement); Request No. 7 (claims that will be transferred to the Avoidance Action Trust); Request No. 49 (whether the Proposed Plan will allow the Commonwealth to obtain access to capital markets); *see also* Ex. 10, Request No. 15 (whether the Commonwealth will be able to pay its debts when due); and

- certain terms, provisions and calculations in the Proposed Plan, *see* Ex. 2, Request Nos. 22, 23, 24, 33, and how similar analyses, rationales, and agreements might affect unsecured creditors' treatment under the Proposed Plan.  *See* Ex. 2, Request No. 9 (Committee's involvement in the negotiation of settlements reached with Initial PSA Creditors); Request No. 20 (decision not to have PBA file a Title III case at the time of the filing of the Commonwealth's Title III case); Request No. 55 (the Best Interests Test Report), Request No. 59 (the Oversight Board/AFT term sheet), Request No. 60 (not assuming or rejecting the Debtors' collective bargaining agreements); *see also* Ex. 10, Request No. 14 (rationale for increasing recovery percentages to Dairy Producers and Med Centers from 40% to 50%, while not increasing recoveries to CW General Unsecured Claims).

22

54.     The Committee needs all of this information to fulfill its fiduciary duties and effectively evaluate the adequacy of the Disclosure Statement.  These requests are neither burdensome nor oppressive, and the Oversight Board has not carried its burden to demonstrate otherwise.  *Autoridad de Carreteras y Transportación v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) ("When a party resists the production of evidence, it bears the burden of establishing lack of relevancy or undue burden.") (citations and internal quotation marks omitted).  Accordingly, the documents should be produced.

## III.     COMMITTEE'S DEPOSITION NOTICES ARE APPROPRIATE

55.     As noted above, on April 23, 2021, the Committee served a Rule 30(b)(6) deposition notice on the Oversight Board, and fact deposition notices on David Skeel and Justin Peterson.  The Committee is entitled to take these depositions to ask these witnesses questions regarding the same important issues covered by the document requests discussed above and to inquire about any documents the Oversight Board may produce.  Assuming the Oversight Board continues to refuse to produce documents (other than those it voluntarily chooses to place in the Depository), and the Court does not order it to do so, the Committee's need for the depositions becomes even more important because the depositions will represent the Committee's sole mechanism for obtaining meaningful discovery.

56.     There can be no question that Mr. Skeel and Mr. Peterson have relevant knowledge.  Both are current members of the Oversight Board, and as a result voted either for or against the filing of the Proposed Plan and the Disclosure Statement, as well as the execution of agreements with supporting creditors.  They each would provide contrasting perspectives on the issues that the Committee will raise in its objection.  Mr. Skeel was appointed by President Obama, and has been on the Oversight Board since its creation, while Mr. Peterson is a member

of the "new" Oversight Board, having been appointed by President Trump.  Both Mr. Skeel and

Mr. Peterson have spoken publicly about the Commonwealth debt restructuring.[21]

57.     The depositions are appropriately limited in number and scope.  The Committee

has served only three deposition notices on the Oversight Board and its members and is not

seeking deposition testimony from any of the Oversight Board's advisors, from AAFAF or its

advisors, or from any third parties, despite the fact that such advisors and parties likely have

relevant information.  The topics in the Committee's Rule 30(b)(6) deposition notice are directly

relevant to the issue of whether the Disclosure Statement contains adequate information and are

narrowly tailored to address that issue.  If the Oversight Board chooses to appoint either Mr.

Skeel or Mr. Peterson as its Rule 30(b)(6) witness, then only two separate depositions would

likely be necessary.  The depositions will, of course, be virtual and limited in duration.

## IV.     COMMITTEE IS ENTITLED TO DOCUMENTS FROM ADVISORS

58.     The Oversight Board has objected to producing any documents in the custody,

possession, or control of its advisors despite the fact that it operates, and always has operated,

almost exclusively through its advisors in these Title III Cases.  The Oversight Board has notably

not asserted that it lacks the ability to request documents from its advisors for production in

discovery, nor has it identified what documents it will be withholding on this basis.

59.     The Oversight Board has an obligation to identify and produce documents of its

advisors, including its counsel, PJT Partners, and EY, that are responsive to the Committee's

requests.  *See Rosie D. v. Romney,* 256 F. Supp. 2d 115, 119 (D. Mass. 2003) (granting motion to

compel governmental defendants to produce third-party documents because there was "little

---

[21] *See, e.g.*, Ex. 15 (*Oversight Board Touts PSA as 'Best, Most Confirmable' Restructuring Possible, Says Reaching Deals With Unsecured, ERS and Clawback Creditors an 'Absolute Priority*, Reorg Research, dated February 23, 2021).

doubt that [d]efendants have the right to control and obtain the documents . . . in possession of the various non-defendant[s]") (citations omitted); *id.* (discovery target has "control" of third-party's documents where principal-agent relationship or a legal right to the documents, pursuant to a contact, exists) (citations omitted).

## V.   COMMITTEE IS ENTITLED TO DISCOVERY FROM AAFAF

60.    In response to the Committee's document requests, AAFAF sent the Committee a one-page letter taking the erroneous position that discovery from AAFAF is categorically improper and stating that, therefore, AAFAF will not be providing formal written responses and objections. *See* Ex. 12.  By not serving responses and objections, AAFAF has waived its objections. *See* Fed. R. Civ. P. 34(b)(2)(B) (requiring a party to "state with specificity the grounds for objecting to the request, including the reasons"); *Marx v. Kelly, Hart & Hallman, P.C.,* 929 F.2d 8, 12 (1st Cir. 1991) ("If the responding party fails to make a timely objection, or fails to state the reason for an objection, he may be held to have waived any or all of his objections."); *P.R. Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 318 F.R.D. 224, 229 (D.P.R. 2016) ("waiving party's objections to document requests because party failed to object timely with specific reasons for its objections") (citing *Brenford Envtl. Sys., L.P. v. Pipeliners of P.R., Inc.,* 269 F.R.D. 143, 147 (D.P.R. 2010)).

61.    The stated bases for AAFAF's refusal to respond to the requests are also without merit.  AAFAF asserts two objections in its letter.  AAFAF first claims that the requests do "not pertain to the adequacy of the disclosure statement or to any potential objection thereto."  Ex. 12. This is false.  As explained above, the Committee's requests to AAFAF (which mirror its requests to the Oversight Board) seek crucial information necessary for the Committee to propose edits to the Disclosure Statement and to formulate its objection.  To the extent the Committee could obtain all the information it has requested from the Oversight Board, then of

course it would not need discovery from AAFAF as well.  At this point, however, the Committee

has no way of knowing which party possesses the information the Committee seeks, and

unfortunately the litigation schedule does not allow for the Committee to first exhaust its

discovery efforts as to the Oversight Board before seeking discovery from AAFAF.

62.     AAFAF also objects to the discovery requests on the grounds that "AAFAF is not

the party seeking approval of the disclosure statement."  Ex. 12.  But the fact that AAFAF is not

seeking approval of the disclosure statement does not mean that it does not have responsive

documents or information and an obligation to participate in disclosure statement discovery.

*See, e.g.*, *In re Vega*, 2010 WL 3282656, at *3 (Bankr. D.P.R. Aug. 17, 2010) (permitting

disclosure statement discovery requests to third parties); *see also In re Catholic Bishop N.

Alaska*, 2009 WL 8412170, at *1, 2.  Notably, AAFAF's letter does ***not*** claim that it lacks

responsive documents.[22]  Indeed, because for all practical purposes, AAFAF is the debtor in

these cases, it may indeed have relevant information.  To the extent AAFAF has documents

responsive to the Committee's requests, those documents should be produced.

## CERTIFICATION

63.     In accordance with section 1(c) of the Court's Second Amended Standing Order,

the undersigned certify the Committee made a bona fide, reasonable, and good faith effort to

resolve the issues addressed in the Motion to Compel prior to filing.  As detailed above, the

Committee and Government Parties exchanged correspondence regarding the requests, and

conducted a telephonic meet and confers on May 19 and 24, 2021.  The Oversight Board has

indicated that it would be willing to meet and confer further regarding certain requests, but not

---

[22] In its May 14, 2021 letter, the Committee noted that if the documents sought from AAFAF are produced by the Oversight Board, it would not need copies of those same documents from AAFAF.  *See* Ex. 9.

others.  As a result of the limited time available before the deadline to object to the Disclosure

Statement, the Committee has filed this motion to ensure that it is able to obtain documents in

advance of the objection deadline and Disclosure Statement hearing.  The Committee will

continue to meet and confer in an attempt to resolve some of its disputes.

## <u>NO PRIOR REQUEST</u>

64.     No prior request for the relief requested herein has been made by the Committee

to this or to any other court.

*[Remainder of page intentionally left blank.]*

## <u>CONCLUSION</u>

WHEREFORE the Committee respectfully requests the Court enter the Proposed Order

granting the Motion to Compel and grant the Committee such other relief as is just and proper.

Dated: May 26, 2021

/s/ Luc A. Despins

PAUL HASTINGS LLP
Luc A. Despins, Esq. (*Pro Hac Vice*)
Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
G. Alexander Bongartz, Esq. (*Pro Hac Vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212)318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to Official Committee of Unsecured
Creditors*

– and –

/s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to Official Committee of Unsecured
Creditors*