**Exhibit 3**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- X
                                                :
In re:                                          :
                                                :
THE FINANCIAL OVERSIGHT AND                     : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,               : Title III
                                                :
    as representative of                         : Case No. 17-BK-3283 (LTS)
                                                :
THE COMMONWEALTH OF PUERTO RICO *et al.,*       : (Jointly Administered)
                                                :
    Debtors.[1]                                  :
---------------------------------------------------------------------- X

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' NOTICE OF DEPOSITION TO FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO IN CONNECTION WITH DISCLOSURE STATEMENT FOR SECOND AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET AL. PURSUANT TO FED. R. CIV. P. 30(B)(6)**

**PLEASE TAKE NOTICE** that, pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, made applicable to these proceedings pursuant to Rules 7026, 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Unsecured Creditors[2] (the "Committee") will take the deposition upon oral examination of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") on the topics referenced in the accompanying rider attached hereto as **Schedule A**. This deposition will commence on May 13,

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

2021 at 9:00 a.m. EST, at a location and by a method to be determined. The deposition will be taken pursuant to all applicable rules of the Court before a notary public or other such person authorized by law to administer oaths. The deposition may be recorded by stenographic means and video.

**PURSUANT TO** Fed. R. Civ. P. 30(b)(6), Oversight Board must designate one or more officers, directors, or managing agents, or other persons who consent to testify on their behalf with respect to the matters set forth in the attached **Schedule A**.

*[Remainder of page intentionally left blank.]*

2

Dated: April 23, 2021
San Juan, Puerto Rico

*/s/ Nicholas A. Bassett*

PAUL HASTINGS LLP
Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
875 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

Luc A. Despins, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

# SCHEDULE A: OVERSIGHT BOARD 30(B)(6) RIDER

## DEFINITIONS

1. "ACR Procedures" shall having the meaning given to it in the Second Amended Disclosure Statement.

2. "AFT" means and refers to American Federation of Teachers, AFL-CIO, and any of its affiliates, including the Asociación de Maestros Puerto Rico and the Asociación de Maestros de Puerto Rico-Local Sindical, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on AFT's behalf.

3. "A&M" means and refers to Alvarez & Marsal and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on A&M's behalf.

4. "Avoidance Actions Trust" shall have the meaning ascribed to it in the Second Amended Plan.

5. "Citigroup" means and refers to Citigroup Global Markets Inc. and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on Citigroup's behalf.

6. "Class" shall have the meaning ascribed to it in the Second Amended Plan.

7. "Clawback Claim" means a CW/Convention Center Claim, CW/HTA Claim, CW/MBA Claim, CW/MBA Claim, or CW/PRIFA Rume Tax Claim (each as defined in the Second Amended Plan).

8. "Clawback CVIs" shall have the meaning ascribed to it in the Second Amended Plan.

9. "Commonwealth" means and refers to the Commonwealth of Puerto Rico.

10. "Communication" includes every manner of transmitting or receiving facts, information, opinions, or thoughts from one person to another person, whether orally, by documents, writing, e-mail, text message, web messaging, or any other form of instant messaging, or a copy thereof, and to words transmitted by telephone, radio, or any method of voice recording.

11. "Comprehensive Cap" shall have the meaning ascribed to it in the Second Amended Plan.

12. "Concerning" and/or "relating to" means, without limitation: describing, discussing, constituting, containing, considering, embodying, evaluating, mentioning, memorializing, supporting, collaborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, regarding, controverting, contradicting, made in connection with or by reason of, or derived or arising therefrom.

13. "Consummation Costs" shall have the meaning ascribed to it in the Second Amended Plan.

14. "Convenience Claim" shall have the meaning ascribed to it in the Second Amended Plan.

5

15. "Cooperation Agreement" means and refers to the Common Interest and Cooperation Agreement Relating to Prosecution of Objection to Certain General Obligation Bond Claims, between the FOMB and the Committee, dated January 14, 2019.

16. "CW Bond Claims" shall have the meaning ascribed to it in the Second Amended Plan.

17. "CW General Unsecured Claim" shall have the meaning ascribed to it in the Second Amended Plan.

18. "CW Guarantee Bond Claims" shall have the meaning ascribed to it in the Second Amended Plan.

19. "Dairy Producer Claim" shall have the meaning ascribed to it in the Second Amended Plan.

20. "Debtors" means and refers to the Commonwealth, ERS, and PBA.

21. "Debt Service Reserve Fund" shall have the meaning ascribed to it in the Second Amended Plan.

22. "Document" is used in the broadest sense contemplated by Federal Rules of Civil Procedure, including all materials, documents, electronically stored information and tangible things within the scope of Rule 34(a). Document means and refers to any writing, thing, record of any type, or description that is or has been in Your possession, control, or custody, or of which You have knowledge, including but not limited to: agreements; drafts; communications; correspondence; e-mails; text messages; instant messages; web messages; WhatsApp messages; social media messages; telegrams; cables; facsimiles; memoranda; records; books; financial statements; summaries of records or notes of personal conversations or interview; diaries; calendars; forecasts; statistical statements; accountants work papers; graphs; charts; maps;

6

diagrams; blue prints; tables; indexes; pictures; recordings; tapes; microfilm; charge clips; accounts; analytical records; minutes or records of meetings or conferences; reports and/or summaries of investigations; opinions or reports of consultants; appraisals; reports and/or summaries of negotiations; brochures; pamphlets; circulars; trade letters; press releases; contracts; stenographic, handwritten or any other notes; projections; working papers; federal and state income tax returns; checks, front and back; check stubs or receipts; shipping documents; manifests; invoice vouchers; computer printouts and computer disks and tapes; and tape data sheets or data processing cards or disks or any other written, recorded, transcribed, punched, taped, filmed or graphic matters; however produced or reproduced. Document also means any electronic copy which is not identical to the original, including metadata and other electronically stored information. The term "Document" includes all Communications.

23. "Eminent Domain Claim" shall have the meaning ascribed to it in the Second Amended Plan.

24. "Energy Incentive Claims" shall have the meaning ascribed to it in the Second Amended Plan

25. "ERS" means and refers to the Employees Retirement System of the Government of the Commonwealth of Puerto Rico.

26. "ERS Bonds" shall have the meaning ascribed to it in the Second Amended Plan.

27. "ERS GUC Pool" shall have the meaning ascribed to it in the Second Amended Plan.

28. "ERS Litigation" shall have the meaning ascribed to it in the Second Amended Plan.

29. "ERS Settlement" means the settlement reflected in the *Amended and Restated Stipulation (A) Allowing Claims of ERS Bondholders, (B) Staying Pending Litigation, and (C) Providing for Treatment of Claims of ERS Bondholders and Dismissal of Pending Litigation Pursuant to a Plan of Adjustment* regarding the treatment of the ERS Bonds in a third amended plan of adjustment to be filed by the FOMB.

30. "EY" means and refers to Ernst & Young LLP and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on EY's behalf.

31. "Fiscal Plan" means and refers to the most recent Commonwealth Fiscal Plan.

32. "FOMB", "You" or "Your" means and refers to the Financial Oversight and Management Board for Puerto Rico and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on the FOMB's behalf, including Proskauer, O&B, A&M, Citigroup, McKinsey, EY, PJT Partners, and any other counsel or advisors.

33. "Gracia Gracia Claim" shall have the meaning ascribed to it in the Second Amended Plan.

34. "HTA" means and refers to the Puerto Rico Highways and Transportation Authority.

35. "Including" means "including, but not limited to" and "including, without limitation."

8

36. "Initial Disclosure Statement" means and refers to *Disclosure Statement for the Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority*, Docket No. 8766, filed on September 27, 2019.

37. "Initial PSA Creditors" shall have the meaning ascribed to it in the Second Amended Plan.

38. "McKinsey" means and refers to McKinsey & Company, Inc. Washington D.C. and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on McKinsey's behalf.

39. "Med Center Claims" shall have the meaning ascribed to it in the Second Amended Plan.

40. "New GO 5.0% CABs" shall have the meaning ascribed to it in the Second Amended Plan.

41. "New GO 5.375% CABs" shall have the meaning ascribed to it in the Second Amended Plan.

42. "New GO Bonds" shall have the meaning ascribed to it in the Second Amended Plan.

43. "O&B" means and refers to O'Neill & Borges LLC and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on O&B's behalf.

9

44. "Pay-Go Legislation" means and refers to Puerto Rico Act 106-2017 and Joint Resolution 188 for Other Allocations for Fiscal Year 2017-2018.

45. "PBA" means and refers to the Puerto Rico Public Buildings Authority.

46. "PBA Bond Claims" shall have the meaning ascribed to it in the Second Amended Plan.

47. "PBA Bonds" shall have the meaning ascribed to it in the Second Amended Plan.

48. "PBA Litigation" shall have the meaning ascribed to it in the Plan Support Agreement.

49. "PBA Settlement" means and refers to the settlement of the PBA Litigation.

50. "Person" or "Persons" means any natural or artificial person, business entity or other legal entity, including, but not limited to, individuals, sole proprietorships, associations, companies, firms, partnerships, joint ventures, corporations, employees or former employees, or any other business, governmental, or labor entity, and any divisions, departments, or other units thereof.

51. "PJT Partners" means and refers to PJT Partners, Inc. and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on PJT's behalf.

52. "Plan Support Agreement" means and refers to the agreement, dated as of February 22, 2021, by and among the FOMB and the Initial PSA Creditors (as that term is defined in the Plan Support Agreement), attached as Exhibit B to the Second Amended Disclosure Statement.

53. "Proskauer" means and refers to Proskauer Rose LLP and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments,

offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on Proskauer's behalf.

54. "PSA Restriction Fees" shall have the meaning ascribed to it in the Second Amended Plan.

55. "Retail Support Fee" shall have the meaning ascribed to it in the Second Amended Plan.

56. "Retiree Claim" shall have the meaning ascribed to it in the Second Amended Plan.

57. "Second Amended Disclosure Statement" means and refers to the *Disclosure Statement for the Second Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico, Et Al.*, Docket No. 15977, filed on March 8, 2021.

58. "Second Amended Plan" means and refers to the *Second Amended Title III Joint Plan of Adjustment of The Commonwealth of Puerto Rico, et al.*, Docket No. 15976, filed on March 8, 2021.

59. "Settlements" means and refers to the settlements embodied in the Plan Support Agreement, including the settlements of all issues related to bond priority issues and debt limit violations, including specifically the Debt Related Objections, the Invalidity Actions, the Lien Challenge Actions, the PBA Litigation, or the PRIFA BANs Litigation (as each is defined in the Plan Support Agreement).

60. "Tax-Supported Debt" shall have the meaning ascribed to it in the Second Amended Plan.

**TOPICS OF EXAMINATION**

1. The Documents produced by the FOMB in response to the Committee's requests for production of documents.

2. The sufficiency of the contents of the Second Amended Disclosure Statement and the basis for the FOMB's position that it contains adequate information.

3. The calculation of the CW General Unsecured Claims in Class 55 of the Second Amended Plan of the Amended Plan, including (i) the estimated number and amount of such claims and (ii) the FOMB's decisions as to which claims to include in Class 55.

4. The estimated cost of solicitation of creditors' votes in connection with the Second Amended Disclosure Statement and Second Amended Plan.

5. The payments the Commonwealth has made to creditors on account of prepetition unsecured claims since its Title III petition date, including the basis for paying some but not all such claims.

6. The litigations and claims that will be transferred to the Avoidance Actions Trust, and the basis for the FOMB's decisions as to which litigations and claims to include in or exclude from the Avoidance Actions Trust.

7. The basis for classifying (i) Retiree Claims (Class 48A), (ii) Dairy Producer Claims (Class 50), (iii) Eminent Domain Claims (Class 51), (iv) Energy Incentive Claims (Class 52), (v) Med Center Claims (Class 53), and (vi) Gracia Gracia Claims (Class 65) separately from CW General Unsecured Claims (Class 55).

8. The FOMB's negotiation of the treatment of general unsecured creditors under the Amended Plan, including the involvement of the Committee or other representatives of general unsecured creditors in such negotiations.

9. The rationale for and the terms and negotiation of the Settlements, including consideration to be received by the settling parties, the potential litigation outcomes in the absence of the Settlements, and the terms of the Second Amended Plan implementing such Settlements.

10. The basis for releasing "clawback" claims against former GO and PBA bondholders for recovery of principal and interest payments (*see* Second Amended Disclosure Statement at 311-12), including (i) the total amount of principal and interest paid to such bondholders, and (ii) the consideration (if any) that such bondholders are providing in exchange for such release.

11. The calculation of the Comprehensive Cap and any analysis of the maximum amount capable of being paid to unsecured creditors under the Amended Plan, including the extent to which additional bonds could be issued to unsecured creditors under the Comprehensive Cap. *See* Second Amended Plan §§ 1.123, 71.4.

12. The calculation of the Tax Supported Debt. *See* Second Amended Plan § 1.310.

13. The calculation of and justification for the Consummation Costs, the PSA Restriction Fees, the Retail Support Fee, and the $100 million termination fee set forth in sections 3.5 and 3.6 of the Second Amended Plan.

14. Your estimates of the total retiree benefit claims in Classes 48A to 48E of the Second Amended Plan.

15. The current status and estimated date of completion of the FOMB's bank account analysis (*see* Second Amended Disclosure Statement at 129-38), and (i) which bank accounts the FOMB is reviewing, (ii) whether the accounts are restricted or unrestricted, and (iii) if the accounts are unrestricted, whether the funds in such accounts will be made available for creditor recoveries and, if not, why not.

16. The basis for and consequences of the FOMB's decision to label certain accounts set forth in Exhibit J to the Second Amended Disclosure Statement (i) "restricted," (ii) "asserted to be restricted," (iii) "inconclusive," or (iv) "pending" designation.

17. The sources and uses of the Debtors' cash and investments rolled forward from the December 31, 2020 account balances to June 30, 2021 and adjusted for settlements reached in connection with the Second Amended Plan, and whether excess funds (if any) will be made available for creditors and, if not, why not.

18. The value and nature of any (i) unencumbered assets of the Debtors that are currently being marketed or evaluated for sale and (ii) unrestricted Commonwealth investments not included in Exhibit J to the Second Amended Disclosure Statement, and whether any such assets or investments will be made available for creditor recoveries and, if not, why not.

19. The December 31, 2020 balances and/or value of the ERS assets that the Commonwealth will purchase on the effective date of the Second Amended Plan, as described on page 339 of the Second Amended Disclosure Statement, and (i) whether or not such value will be available for ERS and/or Commonwealth general unsecured creditors after payment is made to ERS bondholders, and (ii) if such value is not so available, why not.

20. The FOMB's analysis of which services constitute "essential services" and its conclusion, as described on pages 157-58 of the Second Amended Disclosure Statement, that "essential services" need not be defined for purposes of the Second Amended Plan.

21. The FOMB's analysis, if any, of whether the Second Amended Plan will allow the Commonwealth to obtain access to capital markets.

22. The FOMB's assessment of whether or not the Second Amended Plan unfairly discriminates against holders of CW General Unsecured Claims, including any review or analysis the FOMB performed of the recovery rate differentials between different types of unsecured creditors (such as general unsecured creditors, retiree claimants, and bondholders) in other bankruptcy cases.

23. The value of the tax benefits resulting from a favorable ruling concerning the tax exempt status of the New GO Bonds to be issued under the Second Amended Plan.

24. The FOMB's estimate of general unsecured claims against ERS in Class 64 of the Second Amended Plan, including the number and amount of such claims.

25. The basis for capping the amount in the ERS GUC Pool at $5 million. *See* Amended Plan §1.160.

26. The FOMB's analysis, if any, of what Commonwealth funds or other resources will be needed to implement and/or fund a restructuring of and/or plan of adjustment for HTA, including the amount of such funds or resources and whether they have been set aside for such purpose.

27. The FOMB's rationale for providing holders of Clawback Claims with the Clawback CVIs, including the rationale for the 30-year term of Clawback CVIs and the annual caps (as set forth in the Second Amended Plan).

28. The FOMB's calculation of likely payments under the Clawback CVIs.

29. The FOMB's rationale for settling the ERS Litigation pursuant to the ERS Settlement.

30. The status of the settlement and settlement negotiations summarized in the term sheet dated May 14, 2019, between the FOMB and the AFT.

31. The basis and rationale for not assuming or rejecting the Debtors' collective bargaining agreements, as set forth in Section 73.10 of the Second Amended Plan.

15