# **EXHIBIT B**

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**AMBAC ASSURANCE CORPORATION AND FINANCIAL GUARANTY INSURANCE COMPANY'S FIRST SET OF DOCUMENT REQUESTS TO THE GOVERNMENT PARTIES AND THEIR ADVISORS IN CONNECTION WITH THE DISCLOSURE STATEMENT FOR THE THIRD AMENDED TITLE III JOINT PLAN OF <u>ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET AL.</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

PLEASE TAKE NOTICE THAT, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable to these proceedings through Rule 9014 of the Federal Rules of Bankruptcy Procedure, Ambac Assurance Corporation ("Ambac") and Financial Guaranty Insurance Company ("FGIC"), by and through their undersigned attorneys, hereby request that You (defined below) produce the Documents and Communications described below, to be produced to the offices of Milbank LLP, Attn: Kevin J. Maggio, 55 Hudson Yards, New York, New York 10001, on or before May 19, 2021, or as otherwise agreed to by the parties or ordered by the Court.  These Requests are without waiver of Ambac's and FGIC's rights to serve further discovery requests upon You or any third party based on the information that may be disclosed in response to these Requests or other developments in this litigation, and Ambac and FGIC expressly reserve all such rights.

## DEFINITIONS

1.      Each reference to a corporation, partnership, joint venture, unincorporated association, government agency, or other fictitious Person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors, successors, officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, advisors, trustees, and any other Person who acts or acted on its behalf.

2.      Each reference to a natural Person shall be deemed to include that Person's representatives, agents, accountants, attorneys, advisors, and any other Person who acts or acted on that Person's behalf.

3.      The use of any definition for the purposes of these Requests shall not be deemed to constitute an agreement or acknowledgment that such definition is accurate, meaningful, or appropriate for any other purpose.

4.      The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the Request.

5.      The words "all," "any," and "each" shall each be construed broadly, meaning "any and all."

6.      The word "concerning" means relating to, referring to, describing, evidencing, or constituting.

7.      "AAFAF" means the Puerto Rico Fiscal Agency and Financial Advisory Authority, including its present and former officers, directors, employees, representatives, agents, accountants, attorneys, trustees, advisors, and any other Person who acts or acted on its behalf.

8.      "Accounts," or each individually, an "Account," means the accounts held by or on behalf of the Commonwealth or Commonwealth Entities.

9.      "Act 26-2017" means Act 26-2017, known as the Fiscal Plan Compliance Act, enacted by the Commonwealth on April 29, 2017.

10.      "Act 26-2017 Committee" means the committee established pursuant to Act 26-2017 that is composed of the Executive Director of AAFAF, the Secretary of the Treasury, and the Executive Director of the Puerto Rico Office of Management and Budget.

11.      "Agreement" or "Agreements" means any and all agreements, side agreements, contracts, grants of a security interest or similar right, supplements, account control agreements, deeds of trust on Accounts, other negotiated instruments, or other binding instruments or arrangements between two or more parties, or amendments or supplements thereto.

12.      "Amended Plan of Adjustment" means the *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 11946), filed in the Title III Proceedings on February 28, 2020.

13.     "Assets" means any Property or other thing of value, tangible or intangible.

14.     "Base Contributions" means the annual contributions that the Commonwealth will make from the General Fund to the Pension Reserve Trust as described on pages 38-39 of the May 2021 Disclosure Statement.

15.     "Board" means the Financial Oversight and Management Board for Puerto Rico, including its present and former officers, directors, employees, representatives, agents, accountants, attorneys, trustees, advisors, and any other Person who acts or acted on its behalf.

16.     "CCDA" means the Puerto Rico Convention Center District Authority.

17.     "Claim" means any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, known, unknown, asserted, or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.

18.     "Commonwealth" means the Commonwealth of Puerto Rico and its instrumentalities, its present and former officials, officers, directors, employees, representatives, agents, accountants, attorneys, advisors, trustees, and any other Person who acts or acted on its behalf.

19.     "Commonwealth Entities," and each individually, a "Commonwealth Entity," means the agencies, instrumentalities, and public corporations of the Commonwealth, and their

present and former officials, officers, directors, employees, representatives, agents, accountants, attorneys, advisors, trustees, and any other Person who acts or acted on their behalf.

20.    "Commonwealth Guarantee Bonds" or "Commonwealth Guarantee Bondholders" means, respectively, claims against the Commonwealth arising from or related to the general obligation bonds or bonds carrying the general obligation guaranty of the Commonwealth (including PBA Bonds or PRIFA Bond Anticipation Notes), and holders of such claims.

21.    "Communication" or "Communications" means any exchange of information by any means, including, but not limited to, correspondence, face-to-face conversations, electronic transmissions, telephone calls, video conferences, text messages, instant messages, meetings, visits, conferences, internal and external discussions, or any other kind of oral or written exchange between two or more Persons that has been recorded or transcribed in any way.

22.    "Creditors," and each individually, a "Creditor," means any Person holding a Claim against the Debtor or any of the Debtor's Assets or, pursuant to Section 102(2) of the Bankruptcy Code, against any other property of the Debtor, including, without limitation, a Claim against the Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and in each case, solely in such Person's capacity as such.

23.    "Debtor" means, collectively and individually, the Commonwealth, ERS, and PBA.

24.    "December 2020 Presentation" means the Board's December 19, 2020 presentation, which was disclosed publicly as part of a periodic release of "cleansing materials" related to ongoing mediation efforts.

25.    "Disaster Aid Revolving Fund" means the fund established to advance monies in the form of one or more loans, extensions of credit, or advances to Commonwealth Entities and Commonwealth municipalities as a bridge to the receipt of funding under Federal Emergency

Management Agency ("FEMA") programs, as described on page 146 of the May 2021 Disclosure Statement.

26.      "Document" or "Documents" is used in the broadest sense permitted under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Rules for the United States District Court for the District of Puerto Rico, and includes, without limitation, tangible things, correspondence, communications, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (*e.g.*, email messages), any electronically stored information, recordings (*e.g.*, voicemail recordings), text messages, instant messages, diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

27.      "ERS" means the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, including its present and former officials, officers, directors, employees, representatives, agents, accountants, attorneys, advisors, trustees, and any other Person who acts or acted on its behalf.

28.      "February 2020 Disclosure Statement" means the *Disclosure Statement for the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 11947), filed in the Title III Proceedings on February 28, 2020.

29.      "February 2020 Plan Support Agreement" means the plan support agreement between the Board and certain holders of Commonwealth Guarantee Bonds dated February 9, 2020.

30.      "February 2021 Plan Support Agreement" means the plan support agreement between the Board and certain holders of Commonwealth Guarantee Bonds dated February 22, 2021.

31.     "Fiscal Plan" means the fiscal plan certified for the Commonwealth by the Board on April 23, 2021.

32.     "Fiscal Plan Model" means the financial or economics model(s), including (without limitation) live versions and/or Excel spreadsheets or workbooks of such financial or economic models, containing the financial projections and economic analyses reflected within the Fiscal Plan.

33.     "General Fund" means the fund held by the Treasury known as the Commonwealth's General Fund.

34.     "Historical Fiscal Plans" means any fiscal plan certified for the Commonwealth by the Board prior to the current Fiscal Plan.

35.     "HTA" means the Puerto Rico Highways and Transportation Authority.

36.     "HTA/CCDA Plan Support Agreement" means the plan support agreement between the Board, certain holders of HTA bonds, certain holders of CCDA bonds, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National Public Finance Guarantee Corp., dated May 5, 2021.

37.     "Including" or "includes" means "including but not limited to and without limitation," or "includes but is not limited to and without limitation."

38.     "LUMA" means LUMA Energy, LLC.

39.     "LUMA Funding Requirement" means the financial support the Commonwealth intends to provide to fund certain operating and capital reserve accounts that is a precondition to the commencement of LUMA's services, as described on page 146-47 of the May 2021 Disclosure Statement.

40.     "March 2021 Disclosure Statement" means the *Disclosure Statement for the Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. (Corrected)* (ECF No. 15988), filed in the Title III Proceedings on March 8, 2021.

41.     "May 2021 Disclosure Statement" means the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 16741), filed in the Title III Proceedings on May 11, 2021, including as may be modified by any further amended disclosure statement.

42.     "Non-Impairment Covenant" means the covenant by the Commonwealth in the Pension Reserve Deed of Trust described in the paragraph titled "Non-Impairment Covenant" on page 454 of the May 2021 Disclosure Statement.

43.     "PBA" means the Puerto Rico Public Buildings Authority, including its present and former officials, officers, directors, employees, representatives, agents, accountants, attorneys, advisors, trustees, and any other Person who acts or acted on its behalf.

44.     "PBA Bonds" or "PBA Bondholders" means, respectively, bonds issued by PBA, and holders of those bonds.

45.     "Pension Reserve Deed of Trust" means the deed of trust to be executed and delivered on or prior to the effective date of the plan, as described in the Third Amended Plan of Adjustment, providing for, among other things, the creation of the Pension Reserve Trust and the terms for the deposit and withdrawal of monies in the Pension Reserve Trust for the benefit of retirees.

46.     "Pension Reserve Fund" means the fund referenced in the Retiree Committee Plan Support Agreement by and between the Commonwealth and the Retiree Committee.

47.     "Pension Reserve Trust" means the reserve trust to be created in accordance with the terms and conditions of Article LXXIX of the Third Amended Plan of Adjustment, which shall be utilized for payment for the Commonwealth's pension obligations under Act 106-2017.

48.     "Person" means a natural person or any corporation, partnership, association, joint venture, firm, trust, or other business enterprise or legal entity, and includes both the singular and the plural.

49.     "Plan of Adjustment" means the *Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 8765), filed in the Title III Proceedings on September 27, 2019.

50.     "PRIFA" means the Puerto Rico Infrastructure Financing Authority.

51.     "PRIFA Bond Anticipation Notes" means certain indebtedness issued by PRIFA pursuant to the trust agreement between PRIFA and The Bank of New York Mellon, as trustee, dated March 1, 2015.

52.     "PROMESA" means the Puerto Rico Oversight, Management, and Economic Stability Act.

53.     "Property" means any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest.

54.     "Restrictions" means any law, Agreement, other Document with the force of law, directive, or policy, practice, or procedure, whether formal or informal, that limits or conditions the use or movement of any fund, Account, or other monies.

55.     "Retiree Committee" means the committee of retired former employees of the Commonwealth and the Commonwealth Entities, appointed in the Title III Proceedings.

56.     "Retiree Committee Plan Support Agreement" means the plan support agreement, dated as of June 7, 2019, by and between the Debtor, by and through the Board pursuant to Section 315(b) of PROMESA, and the Retiree Committee, as may have been or will be amended or supplemented by the parties thereto.

57.     "Second Amended Plan of Adjustment" means the *Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 15976), filed in the Title III Proceedings on March 8, 2021.

58.     "September 2019 Disclosure Statement" means the *Disclosure Statement for the Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (ECF No. 8766), filed in the Title III Proceedings on September 27, 2019.

59.     "Third Amended Plan of Adjustment" means the *Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 16740), filed in the Title III Proceedings on May 11, 2021, including as may be modified by any further amended plan of adjustment.

60.     "Title III Proceedings" refers to the proceedings captioned *In re Financial Oversight and Management Board for Puerto Rico, et al.*, No. 17-BK-3283, pending in the United States District Court for the District of Puerto Rico.

61.     "Treasury" means the Puerto Rico Department of Treasury and each of its present or former officials, board members, officers, agents, representatives, and employees.

62.     "You" or "Your" means the Board, AAFAF, and any of their respective advisors, including (without limitation) Proskauer Rose LLP, O'Melveny & Meyers LLP, O'Neill & Borges LLC, Marini Pietrantoni Muñiz LLC, Alvarez & Marsal, DLA Piper, Ernst & Young LLP,

McKinsey & Company, PJT Partners, Inc., Citigroup Global Markets Inc., Ankura Consulting Group, LLC, Rothschild & Co US Inc., and Milliman, Inc., and any present or former officials, officers, directors, employees, representatives, agents, accountants, attorneys, advisors, trustees, and any other Person who acts or acted on behalf of each of the foregoing.

## <u>INSTRUCTIONS</u>

1.      In complying with the Requests, You are required to produce all Documents and Communications described below which are in Your possession, custody, or control, including those Documents and Communications in the possession, custody, or control of Your agencies, instrumentalities, public corporations, counsel or former attorneys, investment advisors, financial advisors, securities brokers or dealers, investigators, accountants, auditors, advisors, employees, or other agents, regardless of location.

2.      For the purpose of reading, interpreting, or construing the scope of these Requests, the terms used should be given their most expansive and inclusive interpretation.

3.      In construing the Requests, the singular includes the plural and vice versa, except as the context may otherwise require; any Request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes any other gender.

4.      Unless instructed otherwise, each Request should be construed independently and not by reference to any other Request for the purpose of limitation.

5.      If any portion of a Document or Communication is responsive to any Request, the entire Document or Communication should be produced.

6.      Documents responsive to these Requests shall be labeled in such a way as to show their source, including, but not limited to, the files and offices where they were maintained.

7.      If You withhold any Document or Communication, or any portion of any Document or Communication, under a claim of privilege, You shall produce, in accordance with Rule 26 of the Federal Rules of Civil Procedure, a written privilege log that sets forth:  (i) the author of the Document or Communication; (ii) the type of Document or Communication (*e.g.*, letter or memorandum); (iii) the date of the Document or Communication; (iv) all recipients, including CC or BCC recipients, of the Document or Communication; (v) such other information as is sufficient to identify the Document or Communication; and (vi) the nature of the privilege asserted.

8.      If information is redacted from a Document or Communication produced in response to a Request, You shall identify the redaction by stamping the word "Redacted" on the Document or Communication at each place where information has been redacted and separately log each redaction on the privilege log.

9.      If any requested Document or Communication has been lost, destroyed, transferred voluntarily or involuntarily to others, or otherwise disposed of, You shall state the circumstances surrounding such disposition, including the identity of the Person(s) having knowledge as to the circumstances of such disposition and the date or approximate date of such disposition.

10.     If You cannot respond to these Requests in full after exercising due diligence to secure the Documents or Communications requested, You shall so state and respond to the extent possible, specifying the nature of Your inability to respond to the remainder.

11.     If there are no Documents or Communications responsive to a particular Request in Your possession, custody, or control, You shall provide a written response so stating.

12.     If You believe that any Request, definition, or instruction is ambiguous, in whole or in part, You must nonetheless respond and:  (i) set forth the matter deemed ambiguous; and (ii) describe the manner in which You construed the Request in order to frame Your response.

13.     Documents produced pursuant to these Requests should be produced as they are kept in the ordinary course of business, including electronically stored information.  Electronic materials, information, and data that are electronically searchable should be produced in a form that does not remove or degrade this feature.

14.     Documents and Communications in electronic form, including, but not limited to, email, should be produced in single page tagged image file format ("TIFF").  Metadata associated with electronically stored information shall be produced in text format linked to the associated file. Extracted text files, if any, should be delivered in document level text files.  Spreadsheets and database files should be provided in native format, with an accompanying placeholder Bates-numbered TIFF file.  Each responsive spreadsheet should be clearly labeled to indicate the placeholder Bates number that corresponds to each spreadsheet.

15.     These Requests are continuing in nature.  If, after producing any materials in response to these Requests, You obtain or become aware of additional responsive materials, You are required to provide such materials by way of a supplemental production.

16.     These Requests should not be construed as a waiver or an abridgment of, and are not intended to waive, any argument, Claim, or defense, or any objection to discovery requests, nor shall they be construed as any admission of fact.

17.     Unless otherwise instructed or clear from the context of the Request, these Requests pertain to the period from January 1, 2015 to the present.

## **REQUESTS**

1.     All Documents, Communications, and other information or materials requested by: (i) the Official Committee of Unsecured Creditors in the *Official Committee of Unsecured Creditors' First Set of Document Requests to Financial Oversight and Management Board for*

*Puerto Rico and Its Advisors in Connection with Disclosure Statement for Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated April 23, 2021 (attached hereto as Exhibit A); or (ii) any other party or third party in connection with the proceedings relating to the May 2021 Disclosure Statement.[2]

2.      All Documents and Communications sufficient to allow Creditors to review and reconcile sources and uses of existing cash balances with the inflows and outflows included in the Fiscal Plan, including (without limitation) a three-statement financial model or the equivalent thereof.

3.      The Fiscal Plan Model.

4.      All Documents, Communications, studies, and analyses, including any scientific, technical, or economic analyses, considered or relied upon in preparing the macroeconomic forecast model(s) and/or the baseline economic outlook model(s) within the Fiscal Plan, *see* Fiscal Plan at 28 n.14, and/or the Historical Fiscal Plans, including materials considered or relied upon in determining whether and how to revise, adjust, modify, or otherwise alter those models in response to the events described in Chapters 3 and 4 of the Fiscal Plan.

5.      All Documents, Communications, studies, and analyses, including any scientific, technical, or economic analyses, considered or relied upon in preparing analyses contained in Chapter 6 of the Fiscal Plan.

6.      All Documents and Communications analyzing whether the Third Amended Plan of Adjustment is in the best interests of creditors, including whether available remedies under non-bankruptcy laws and the Commonwealth Constitution would result in a greater recovery for creditors than is provided by the Third Amended Plan of Adjustment.

---

[2] For the avoidance of doubt, as discussed above, Request No. 1, like all Requests herein, is directed to the Board, AAFAF, and their respective advisors.

7. All Documents and Communications considered or relied upon in preparing the "Best Interests Test Reports" attached as Exhibit L to the February 2020 Disclosure Statement or any forthcoming similar report for the May 2021 Disclosure Statement.

8. Between February 9, 2020 and February 22, 2021, all Documents and Communications reflecting negotiations between or among any parties to the February 2021 Plan Support Agreement, and all drafts of the February 2021 Plan Support Agreement.

9. Between February 9, 2020 and the present, all Documents and Communications between or among any parties to the February 2021 Plan Support Agreement reflecting negotiations of the March 2021 Disclosure Statement, the Second Amended Plan of Adjustment, the May 2021 Disclosure Statement, or the Third Amended Plan of Adjustment, and all drafts of the March 2021 Disclosure Statement, the Second Amended Plan of Adjustment, the May 2021 Disclosure Statement, and the Third Amended Plan of Adjustment.

10. Between February 9, 2020 and the present, all Documents and Communications reflecting negotiations between or among any parties to the HTA/CCDA Plan Support Agreement, and all drafts of the HTA/CCDA Plan Support Agreement.

11. All Documents, Communications, studies, and analyses prepared, considered, or relied upon in connection with the development of the September 2019 Disclosure Statement, the Plan of Adjustment, the February 2020 Disclosure Statement, the Amended Plan of Adjustment, the March 2021 Disclosure Statement, the Second Amended Plan of Adjustment, the May 2021 Disclosure Statement, and the Third Amended Plan of Adjustment, including factual source materials and raw data underlying the September 2019 Disclosure Statement, the Plan of Adjustment, the February 2020 Disclosure Statement, the Amended Plan of Adjustment, the March

2021 Disclosure Statement, the Second Amended Plan of Adjustment, the May 2021 Disclosure Statement, and the Third Amended Plan of Adjustment.

12.     All Documents and Communications concerning the Pension Reserve Trust, including its establishment, funding, management, terms for the deposit and withdrawal of monies, projected investment guidelines and investment returns, and its Non-Impairment Covenant.

13.     All Documents and Communications concerning proposed contributions to the Pension Reserve Trust, including Base Contributions, actual primary surplus contributions, projected Fiscal Plan primary surplus contributions, and any discretionary contributions by the Commonwealth permitted under the Plan of Adjustment, the Amended Plan of Adjustment, the Second Amended Plan of Adjustment, and/or the Third Amended Plan of Adjustment.

14.     All Documents and Communications concerning the Pension Reserve Fund described in the Retiree Committee Plan Support Agreement, including its establishment, funding, management, terms for the deposit and withdrawal of monies, and projected investment guidelines and investment returns.

15.     All Agreements concerning management of the Pension Reserve Trust and/or the Pension Reserve Fund, including Agreements between or among pension plans, plan participants, or their managers, trustees, or fiduciaries.

16.     All Documents and Communications regarding Assets held by the Commonwealth and/or the Commonwealth Entities that are in disuse, including Documents and Communications concerning:  (i) previous, ongoing, contemplated, or completed efforts to sell any such Assets; (ii) the value of any such Assets; and (iii) the use or intended use of any proceeds derived from the sale of any such Assets.

17.     All Documents and Communications concerning the Commonwealth's and/or the Commonwealth Entities' illiquid investments, including (without limitation) Documents and Communications sufficient to identify any such illiquid investments and any Restrictions on the use of such illiquid investments.

18.     All Documents and Communications related to the assessment of the Commonwealth's necessary operating expenses or costs of providing essential public services, including any analyses of whether unrestricted cash exceeds necessary operating expenses and/or the costs of providing essential public services.

19.     All Documents and Communications regarding "potentially inaccessible" monies, as described in the December 2020 Presentation, including (without limitation) documents concerning: (i) why the Board, AAFAF, and/or their advisors contend that monies held by public corporations are "potentially inaccessible[;]" (ii) any legislation considered, proposed, or enacted for the purpose of enabling the Commonwealth to access monies held by public corporations; and (iii) why Commonwealth monies appropriated or transferred to public corporations have not been clawed back by, or otherwise transferred back to, the Commonwealth.

20.     All Documents and Communications regarding any transfer of surplus funds from a Commonwealth Entity to the Commonwealth pursuant to Chapter 4 of Act 26-2017, and Documents and Communications relating or responding to any requests by the Act 26-2017 Committee for transfers pursuant to Chapter 4 of Act 26-2017, whether or not such transfers were effected.

21.     All Documents and Communications regarding "potentially unavailable" monies, as described in the December 2020 Presentation, including (without limitation) documents concerning: (i) why the Board, AAFAF, and/or their advisors contend that, as of December 17,

2020, $540 million in Commonwealth monies and $151 million in monies held by public corporations are "potentially unavailable[;]" and (ii) the operational or other cash needs of Commonwealth Entities holding "potentially unavailable" monies.

22.    All Documents and Communications regarding any analysis prepared, considered, or relied upon in connection with the Board's determination that the Commonwealth should maintain an unrestricted liquidity balance of no less than $2.5 billion, including (without limitation) all Documents and Communications regarding any previous, ongoing, completed, or contemplated efforts to obtain external financing:  (i) for the Disaster Aid Revolving Fund, including any analysis comparing the costs associated with funding the Disaster Aid Revolving Fund using external financing and Commonwealth monies; and (ii) to satisfy the LUMA Funding Requirement, including any analysis regarding the costs associated with satisfying the LUMA Funding Requirement using external financing.

23.    All Documents and Communications regarding any analysis prepared, considered, or relied upon in connection with the Board's determination that the Commonwealth should maintain an emergency reserve in the amount of $1.3 billion.

24.    All Documents and Communications sufficient to show the factual and/or legal characteristics of each class of creditors in the Third Amended Plan of Adjustment, including, but not limited, to any Documents or Communications the Board considered or relied upon in evaluating the factual and/or legal grounds for the classification of each class of creditors in the Third Amended Plan of Adjustment.

Dated:  May 12, 2021
      San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No.
    219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile:  (787) 766-7001
    Email:  rcamara@ferraiuoli.com
          scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile:  (212) 530-5219
    Email: ddunne@milbank.com
          amiller@milbank.com
          gmainland@milbank.com
          jhughes2@milbank.com
          johring@milbank.com

***Attorneys for Ambac Assurance Corporation***

**REXACH & PICÓ, CSP**

By: /s/ *María E. Picó*
    María E. Picó
    (USDC-PR No. 123214)
    802 Ave. Fernández Juncos
    San Juan, PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: /s/ *Martin A. Sosland*
    Martin A. Sosland (admitted *pro hac vice*)
    2911 Turtle Creek Blvd., Suite 1400
    Dallas, TX 75219
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    Email: martin.sosland@butlersnow.com

    James E. Bailey III (admitted *pro hac vice*)
    Adam M. Langley (admitted *pro hac vice*)
    6075 Poplar Ave., Suite 500
    Memphis, TN 38119
    Telephone: (901) 680-7200
    Facsimile: (901) 680-7201
    Email: jeb.bailey@butlersnow.com
          adam.langley@butlersnow.com

***Attorneys for Financial Guaranty Insurance Company***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, the foregoing was served upon the Board and AAFAF, through their respective counsel, via email.

<u>/s/ *Jonathan Ohring*</u>
Jonathan Ohring (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile:  (212) 530-5219
Email: johring@milbank.com