# **EXHIBIT C**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**AMBAC ASSURANCE CORPORATION AND FINANCIAL GUARANTY INSURANCE COMPANY'S CROSS-NOTICE OF DEPOSITION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO <u>PURSUANT TO RULE 30(b)(6)</u>**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30 of the Federal Rules of Civil Procedure, made applicable to these proceedings through Rule 9014 of the Federal Rules of Bankruptcy Procedure, in connection with the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 16741), filed on May 11, 2021, and in response to the *Official Committee of Unsecured Creditors' Notice of Deposition to Financial Oversight and Management Board for Puerto Rico in Connection with Disclosure Statement for Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. Pursuant to Fed. R. Civ. P. 30(B)(6)*, dated April 23, 2021, Ambac Assurance Corporation ("<u>Ambac</u>") and Financial Guaranty Insurance Company ("<u>FGIC</u>"), through their

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

counsel, hereby issue this cross-notice that they will take the deposition upon oral examination of the Financial Oversight and Management Board for Puerto Rico (the "Board") regarding the topics of examination (each, a "Topic") attached hereto in **Schedule A**.

The deposition will commence on June 7, 2021, at 9:00 a.m. EST, at a location to be determined by agreement of the parties or order of the Court. At the request of the witness, in lieu of an in-person appearance, the deposition may be conducted via video conference pursuant to an agreement of the parties. The deposition shall continue from day to day thereafter until completed or adjourned.

The deposition will take place before a notary public or other officer authorized to administer oaths and record testimony pursuant to Federal Rule of Civil Procedure 28. The deposition will be recorded by stenographic means and videotaped.

In accordance with Federal Rule of Civil Procedure 30(b)(6) and Federal Rule of Bankruptcy Procedure 7030, made applicable to these proceedings through Federal Rule of Bankruptcy Procedure 9014, the Board must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on behalf of the Board with respect to information known or reasonably available to the Board concerning each Topic set forth in the attached **Schedule A**.

Dated: May 14, 2021
       San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
           scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile: (212) 530-5219
    Email: ddunne@milbank.com
           amiller@milbank.com
           gmainland@milbank.com
           jhughes2@milbank.com
           johring@milbank.com

***Attorneys for Ambac Assurance Corporation***

**REXACH & PICÓ, CSP**

By: /s/ *María E. Picó*
    María E. Picó
    (USDC-PR No. 123214)
    802 Ave. Fernández Juncos
    San Juan, PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: /s/ *Martin A. Sosland*
    Martin A. Sosland (admitted *pro hac vice*)
    2911 Turtle Creek Blvd., Suite 1400
    Dallas, TX 75219
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    Email: martin.sosland@butlersnow.com

    James E. Bailey III (admitted *pro hac vice*)
    Adam M. Langley (admitted *pro hac vice*)
    6075 Poplar Ave., Suite 500
    Memphis, TN 38119
    Telephone: (901) 680-7200
    Facsimile: (901) 680-7201
    Email: jeb.bailey@butlersnow.com
           adam.langley@butlersnow.com

***Attorneys for Financial Guaranty Insurance Company***

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, the foregoing was served upon the Financial Oversight and Management Board for Puerto Rico, through its counsel, via email.

/s/ *Jonathan Ohring*
Jonathan Ohring (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1. Each reference to a corporation, partnership, joint venture, unincorporated association, government agency, or other fictitious Person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors, successors, officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acts or acted on its behalf.

2. Each reference to a natural Person shall be deemed to include that Person's representatives, agents, accountants, attorneys, and any other Person who acts or acted on that Person's behalf.

3. Each Topic shall be construed independently and not with reference to any other Topic for the purpose of limitation or exclusion.

4. The use of any definition for the purposes of this notice shall not be deemed to constitute an agreement or acknowledgment that such definition is accurate, meaningful, or appropriate for any other purpose.

5. In construing the notice and the Topics, the singular includes the plural and vice versa, except as the context may otherwise require; any Topic propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes any other gender.

6. The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the Topic.

7. The words "all," "any," and "each" shall each be construed broadly, meaning "any and all."

8. The word "concerning" means relating to, referring to, describing, evidencing, or constituting.

9. Any ambiguity in a Topic shall be construed to bring within the scope of the Topic all responses that otherwise could be construed to be outside of its scope.

10. Unless otherwise specified, the relevant time period applicable to the Topics is January 1, 2015 to the present, and shall include all information that relates in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated, or received before or after that period.

11. "AAFAF" means the Puerto Rico Fiscal Agency and Financial Advisory Authority, including its present and former officers, directors, employees, representatives, agents, accountants, attorneys, trustees, advisors, and any other Person who acts or acted on its behalf.

12. "Accounts," or each individually, an "Account," means the accounts held by or on behalf of the Commonwealth or Commonwealth Entities.

13. "Act 26-2017" means Act 26-2017, known as the Fiscal Plan Compliance Act, enacted by the Commonwealth on April 29, 2017.

14. "Act 26-2017 Committee" means the committee established pursuant to Act 26-2017 that is composed of the Executive Director of AAFAF, the Secretary of the Treasury, and the Executive Director of the Puerto Rico Office of Management and Budget.

15. "Agreement" or "Agreements" means any and all agreements, side agreements, contracts, grants of a security interest or similar right, supplements, account control agreements, deeds of trust on Accounts, other negotiated instruments, or other binding instruments or arrangements between two or more parties, or amendments or supplements thereto.

16. "Amended Plan of Adjustment" means the *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 11946), filed in the Title III Proceedings on February 28, 2020.

17. "Assets" means any Property or other thing of value, tangible or intangible.

18. "Base Contributions" means the annual contributions that the Commonwealth will make from the General Fund to the Pension Reserve Trust as described on pages 38-39 of the May 2021 Disclosure Statement.

19. "Board" means the Financial Oversight and Management Board for Puerto Rico, including its present and former officers, directors, employees, representatives, agents, accountants, attorneys, trustees, advisors, and any other Person who acts or acted on its behalf.

20. "Cash Restriction Analyses" means, collectively, the Duff & Phelps Report, October 2019 Presentations, pages 104-14 of the February 2020 Disclosure Statement and Exhibit J thereto, the December 2020 Presentation, pages 128-38 of the March 2021 Disclosure Statement and Exhibit J thereto, and pages 133-43 of the May 2021 Disclosure Statement and Exhibit L thereto.

21. "CCDA" means the Puerto Rico Convention Center District Authority.

22. "Claim" means any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, known, unknown, asserted, or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities,

obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.

23. "Commonwealth" means the Commonwealth of Puerto Rico and its instrumentalities, its present and former officials, officers, directors, employees, representatives, agents, accountants, attorneys, advisors, trustees, and any other Person who acts or acted on its behalf.

24. "Commonwealth Entities," and each individually, a "Commonwealth Entity," means the agencies, instrumentalities, and public corporations of the Commonwealth, and their present and former officials, officers, directors, employees, representatives, agents, accountants, attorneys, advisors, trustees, and any other Person who acts or acted on their behalf.

25. "Commonwealth Guarantee Bonds" or "Commonwealth Guarantee Bondholders" means, respectively, claims against the Commonwealth arising from or related to the general obligation bonds or bonds carrying the general obligation guaranty of the Commonwealth (including PBA Bonds or PRIFA Bond Anticipation Notes), and holders of such claims.

26. "Communication" or "Communications" means any exchange of information by any means, including, but not limited to, correspondence, face-to-face conversations, electronic transmissions, telephone calls, video conferences, text messages, instant messages, meetings, visits, conferences, internal and external discussions, or any other kind of oral or written exchange between two or more Persons that has been recorded or transcribed in any way.

27. "Creditors," and each individually, a "Creditor," means any Person holding a Claim against the Debtor or any of the Debtor's Assets or, pursuant to Section 102(2) of the Bankruptcy Code, against any other property of the Debtor, including, without limitation, a Claim against the

Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and in each case, solely in such Person's capacity as such.

28. "Debtor" means, collectively and individually, the Commonwealth, ERS, and PBA.

29. "December 2020 Presentation" means the Board's December 19, 2020 presentation, which was disclosed publicly as part of a periodic release of "cleansing materials" related to ongoing mediation efforts.

30. "Disaster Aid Revolving Fund" means the fund established to advance monies in the form of one or more loans, extensions of credit, or advances to Commonwealth Entities and Commonwealth municipalities as a bridge to the receipt of funding under Federal Emergency Management Agency ("FEMA") programs, as described on page 146 of the May 2021 Disclosure Statement.

31. "Disclosure Statements" means, collectively, the September 2019 Disclosure Statement, the February 2020 Disclosure Statement, the March 2021 Disclosure Statement, and the May 2021 Disclosure Statement.

32. "Document" or "Documents" is used in the broadest sense permitted under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Rules for the United States District Court for the District of Puerto Rico, and includes, without limitation, tangible things, correspondence, communications, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (*e.g.*, email messages), any electronically stored information, recordings (*e.g.*, voicemail recordings), text messages, instant messages, diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

33. "Duff & Phelps Report" means the *IFAT Report on Title III Bank Accounts* prepared by Duff & Phelps.

34. "ERS" means the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, including its present and former officials, officers, directors, employees, representatives, agents, accountants, attorneys, advisors, trustees, and any other Person who acts or acted on its behalf.

35. "February 2020 Disclosure Statement" means the *Disclosure Statement for the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 11947), filed in the Title III Proceedings on February 28, 2020.

36. "February 2020 Plan Support Agreement" means the plan support agreement between the Board and certain holders of Commonwealth Guarantee Bonds dated February 9, 2020.

37. "February 2021 Plan Support Agreement" means the plan support agreement between the Board and certain holders of Commonwealth Guarantee Bonds dated February 22, 2021.

38. "Fiscal Plan" means the fiscal plan certified for the Commonwealth by the Board on April 23, 2021.

39. "Fiscal Plan Model" means the financial or economics model(s), including (without limitation) live versions and/or Excel spreadsheets or workbooks of such financial or economic models, containing the financial projections and economic analyses reflected within the Fiscal Plan.

40. "General Fund" means the fund held by the Treasury known as the Commonwealth's General Fund.

41. "Historical Fiscal Plans" means any fiscal plan certified for the Commonwealth by the Board prior to the current Fiscal Plan.

42. "HTA" means the Puerto Rico Highways and Transportation Authority.

43. "HTA/CCDA Plan Support Agreement" means the plan support agreement between the Board, certain holders of HTA bonds, certain holders of CCDA bonds, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National Public Finance Guarantee Corp., dated May 5, 2021.

44. "Including" or "includes" means "including but not limited to and without limitation," or "includes but is not limited to and without limitation."

45. "LUMA" means LUMA Energy, LLC.

46. "LUMA Funding Requirement" means the financial support the Commonwealth intends to provide to fund certain operating and capital reserve accounts that is a precondition to the commencement of LUMA's services, as described on page 146-47 of the May 2021 Disclosure Statement.

47. "March 2021 Disclosure Statement" means the *Disclosure Statement for the Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. (Corrected)* (ECF No. 15988), filed in the Title III Proceedings on March 8, 2021.

48. "May 2019 Plan Support Agreement" means the plan support agreement between the Board and certain holders of Commonwealth Guarantee Bonds dated May 31, 2019.

49. "May 2021 Disclosure Statement" means the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 16741), filed in the Title III Proceedings on May 11, 2021, including as may be modified by any further amended disclosure statement.

50. "Non-Impairment Covenant" means the covenant by the Commonwealth in the Pension Reserve Deed of Trust described in the paragraph titled "Non-Impairment Covenant" on page 454 of the May 2021 Disclosure Statement.

51. "October 2019 Presentations" means, collectively, the *Mediation: Summary of Cash Restriction Analysis*, dated October 2, 2019 (ECF No. 15220-3), and the *Bank Account Analysis: Status Update – June 30, 2019 Balances*, dated October 2, 2019 (ECF No. 15220-4).

52. "PBA" means the Puerto Rico Public Buildings Authority, including its present and former officials, officers, directors, employees, representatives, agents, accountants, attorneys, advisors, trustees, and any other Person who acts or acted on its behalf.

53. "PBA Bonds" or "PBA Bondholders" means, respectively, bonds issued by PBA, and holders of those bonds.

54. "Pension Reserve Deed of Trust" means the deed of trust to be executed and delivered on or prior to the effective date of the plan, as described in the Third Amended Plan of Adjustment, providing for, among other things, the creation of the Pension Reserve Trust and the terms for the deposit and withdrawal of monies in the Pension Reserve Trust for the benefit of retirees.

55. "Pension Reserve Fund" means the fund referenced in the Retiree Committee Plan Support Agreement by and between the Commonwealth and the Retiree Committee.

56. "Pension Reserve Trust" means the reserve trust to be created in accordance with the terms and conditions of Article LXXIX of the Third Amended Plan of Adjustment, which shall be utilized for payment for the Commonwealth's pension obligations under Act 106-2017.

57. "Person" means a natural person or any corporation, partnership, association, joint venture, firm, trust, or other business enterprise or legal entity, and includes both the singular and the plural.

58. "Plan of Adjustment" means the *Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 8765), filed in the Title III Proceedings on September 27, 2019.

59. "Plans of Adjustment" means, collectively, the Plan of Adjustment, the Amended Plan of Adjustment, the Second Amended Plan of Adjustment, and the Third Amended Plan of Adjustment.

60. "PRIFA" means the Puerto Rico Infrastructure Financing Authority.

61. "PRIFA Bond Anticipation Notes" means certain indebtedness issued by PRIFA pursuant to the trust agreement between PRIFA and The Bank of New York Mellon, as trustee, dated March 1, 2015.

62. "PROMESA" means the Puerto Rico Oversight, Management, and Economic Stability Act.

63. "Property" means any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest.

64. "Restrictions" means any law, Agreement, other Document with the force of law, directive, or policy, practice, or procedure, whether formal or informal, that limits or conditions the use or movement of any fund, Account, or other monies.

65. "Retiree Committee" means the committee of retired former employees of the Commonwealth and the Commonwealth Entities, appointed in the Title III Proceedings.

66. "Retiree Committee Plan Support Agreement" means the plan support agreement, dated as of June 7, 2019, by and between the Debtor, by and through the Board pursuant to Section 315(b) of PROMESA, and the Retiree Committee, as may have been or will be amended or supplemented by the parties thereto.

67. "Second Amended Plan of Adjustment" means the *Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 15976), filed in the Title III Proceedings on March 8, 2021.

68. "September 2019 Disclosure Statement" means the *Disclosure Statement for the Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (ECF No. 8766), filed in the Title III Proceedings on September 27, 2019.

69. "Third Amended Plan of Adjustment" means the *Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 16740), filed in the Title III Proceedings on May 11, 2021, including as may be modified by any further amended plan of adjustment.

70. "Title III Proceedings" refers to the proceedings captioned *In re Financial Oversight and Management Board for Puerto Rico, et al.*, No. 17-BK-3283, pending in the United States District Court for the District of Puerto Rico.

71. "Treasury" means the Puerto Rico Department of Treasury and each of its present or former officials, board members, officers, agents, representatives, and employees.

## TOPICS OF EXAMINATION

1. All topics of examination propounded by: (i) the Official Committee of Unsecured Creditors in the *Official Committee of Unsecured Creditors' Notice of Deposition to Financial*

*Oversight and Management Board for Puerto Rico in Connection with Disclosure Statement for Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. Pursuant to Fed. R. Civ. P. 30(b)(6)*, dated April 23, 2021; or (ii) any other party or third party in connection with the proceedings relating to the May 2021 Disclosure Statement.

2. The Documents and Communications produced in response to: (i) *Ambac Assurance Corporation and Financial Guaranty Insurance Company's First Set of Document Requests to the Government Parties and Their Advisors in Connection with the Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated May 12, 2021; (ii) *Official Committee of Unsecured Creditors' First Set of Document Requests to Financial Oversight and Management Board for Puerto Rico and Its Advisors in Connection with Disclosure Statement for Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated April 23, 2021; or (iii) document requests propounded by any other party or third party in connection with the proceedings relating to the May 2021 Disclosure Statement.

3. The Board's efforts to search for and collect Documents in response to any document requests issued in connection with the proceedings relating to the May 2021 Disclosure Statement.

4. The processes by which the Fiscal Plan and the Fiscal Plan Model were and are developed, and facts and analyses considered or relied upon by the Board in preparing or revising the Fiscal Plan Model, the macroeconomic forecast model(s) and/or the baseline economic outlook model(s) contained within the Fiscal Plan and/or the Historical Fiscal Plans, and any debt sustainability analyses contained within the Fiscal Plan and/or the Historical Fiscal Plans.

5. The Board's analysis of whether the Third Amended Plan of Adjustment is in the best interests of Creditors, including whether available remedies under non-bankruptcy laws and the Commonwealth Constitution would result in a greater recovery for Creditors than is provided by the Third Amended Plan of Adjustment.

6. Negotiations leading to or regarding the HTA/CCDA Plan Support Agreement, the February 2021 Plan Support Agreement, the February 2020 Plan Support Agreement, the Retiree Committee Plan Support Agreement, and the May 2019 Plan Support Agreement, including the evolution of the agreements and consideration of which parties would be included in such negotiations.

7. Negotiations leading to or regarding the Plans of Adjustment and the Disclosure Statements, including the negotiations that led to changes from previous versions.

8. The Pension Reserve Trust, including: (i) its establishment, funding, management, terms for the deposit and withdrawal of monies, projected investment guidelines and investment returns, and its Non-Impairment Covenant; (ii) all Agreements concerning the management thereof between or among pension plans, plan participants, or their managers, trustees, or fiduciaries; and (iii) any proposed contributions thereto, including Base Contributions, actual primary surplus contributions, projected Fiscal Plan primary surplus contributions, and any discretionary contributions by the Commonwealth permitted under the Plans of Adjustment.

9. The Pension Reserve Fund described in the Retiree Committee Plan Support Agreement, including: (i) its establishment, funding, management, terms for the deposit and withdrawal of monies, and projected investment guidelines and investment returns; and (ii) all Agreements concerning the management thereof between or among pension plans, plan participants, or their managers, trustees, or fiduciaries.

10. Assets held by the Commonwealth and/or the Commonwealth Entities that are in disuse, including: (i) previous, ongoing, contemplated, or completed efforts to sell any such Assets; (ii) the value of any such Assets; and (iii) the use or intended use of any proceeds derived from the sale of any such Assets.

11. The Commonwealth's and/or the Commonwealth Entities' illiquid investments, including the identification of any such illiquid investments and any Restrictions on the use of such illiquid investments.

12. The Commonwealth's necessary operating expenses or costs of providing essential public services, including any analyses of whether unrestricted monies exceed necessary operating expenses and/or the costs of providing essential public services.

13. The Cash Restriction Analyses, including (without limitation) monies classified as restricted, unrestricted, asserted to be restricted, unreviewed, inconclusive, pending, potentially inaccessible, or potentially unavailable.

14. Transfers of surplus funds from a Commonwealth Entity to the Commonwealth pursuant to Chapter 4 of Act 26-2017, including any requests by the Act 26-2017 Committee for transfers pursuant to Chapter 4 of Act 26-2017, whether or not such transfers were effected.

15. The Board's determination that the Commonwealth should maintain an unrestricted liquidity balance of no less than $2.5 billion, including (without limitation) any previous, ongoing, completed, or contemplated efforts to obtain external financing: (i) for the Disaster Aid Revolving Fund, including any analysis comparing the costs associated with funding the Disaster Aid Revolving Fund using external financing and Commonwealth monies; and (ii) to satisfy the LUMA Funding Requirement, including any analysis regarding the costs associated with satisfying the LUMA Funding Requirement using external financing.

16. The Board's determination that the Commonwealth should maintain an emergency reserve in the amount of $1.3 billion.

17. The factual and/or legal characteristics of each class of creditors in the Third Amended Plan of Adjustment, including, but not limited to, the bases upon which the Board developed each class.

18. The treatment of Classes 4, 24, 56, 57, and 58 in the Third Amended Plan of Adjustment, including, but not limited to, the bases upon which the Board developed such treatment.