# United States Court of Appeals
## For the First Circuit

---

Nos. 19-2231
    20-1279

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO
RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION
AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC
POWER AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO
SALES TAX FINANCING CORPORATION, a/k/a Cofina; THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE OF THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

Debtors.

---

JORGE A. DÍAZ MAYORAL; JUAN A. FRAU ESCUDERO,

Movants, Appellants,

v.

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO,

Debtor, Appellee.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain, U.S. District Judge*]

---

        *   Of   the   Southern   District   of   New   York,   sitting   by
designation.

---

Before

Lynch and Kayatta, Circuit Judges,
and Woodcock,[**] District Judge.

---

Monique J. Díaz-Mayoral for appellants.
Steve Y. Ma, with whom Timothy W. Mungovan, John E. Roberts,
Laura Stafford, Martin J. Bienenstock, Mark D. Harris, Brian S.
Rosen, Lucas Kowalczyk, and Proskauer Rose LLP were on brief, for
appellee.

---

May 27, 2021

---

---

[**]   Of the District of Maine, sitting by designation.

LYNCH, **Circuit Judge**.   Jorge Díaz Mayoral and Juan Frau Escudero (collectively, "the claimants"), alleging they invested in mutual funds that own bonds issued by the Commonwealth of Puerto Rico, filed proofs of claim in the Commonwealth's Title III case. They alleged that they had a right to recover damages directly from the Commonwealth for the losses suffered by the mutual funds in those investments.

The Title III court held the claimants lack standing because they did not own any bonds issued by the Commonwealth and their ownership interest in the mutual funds did not provide them a right to recover against the Commonwealth.   The claimants moved for reconsideration twice, asserting, among other things, a new theory that they could recover against the Commonwealth for alleged personal injuries under Puerto Rico's general negligence statute. See P.R. Laws Ann. tit. 31, § 5141.   The Title III court denied both motions for reconsideration.   We affirm.

I.

The claimants allege that, beginning in 2016, the Commonwealth began to default on its debts as they became due, including on the bonds allegedly owned by their mutual funds.

In May 2017, the Financial Oversight and Management Board ("the FOMB") filed a Title III petition on behalf of the Commonwealth as authorized by the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C.

§§ 2124(j), 2146, 2164, 2175.   Under PROMESA, which incorporates portions of the Bankruptcy Code, creditors of the Commonwealth are permitted to file proofs of their claims against the Commonwealth. See id. § 2161(a); 11 U.S.C. § 501.

In June 2018, Mayoral and Escudero each filed a proof of claim which together totaled about $328,400.   The only basis asserted for the claims was "Investment in Mutual Funds."   The proofs of claim did not identify these mutual funds.   When the Commonwealth claims-processing agent requested more information from Mayoral and Escudero about their claims and told them to identify any Puerto Rico bonds they owned, they responded with only "investment in mutual funds."

The FOMB objected to Mayoral's and Escudero's proofs of claim in July 2019 on the basis that Mayoral and Escudero were not creditors of the Commonwealth and so lacked standing because their claims were, at best, derivative of any claims the unspecified mutual funds might have against the Commonwealth as issuer of the bonds.   The claimants argued they should be treated as "co-owners" of the bonds with their mutual funds and that this gave them standing.   They stated that the mutual funds were "investment companies" under the Puerto Rico Investment Companies Act, see P.R. Laws Ann. tit. 10, §§ 662, 691, and that the mutual funds' status as such gave the claimants a beneficial interest in the

securities owned by those funds.[1]  Also in response to the FOMB's
objection, the claimants submitted documents identifying at least
some of the mutual funds in which they had invested and identifying
those funds as corporations.

At a hearing in September 2019, the Title III court
issued a bench ruling disallowing Mayoral's and Escudero's claims.
The court held that they were not owners of the Puerto Rico bonds
and lacked standing "to bring claims directly based on the [bonds]"
owned by the mutual funds.  The court entered a formal order
memorializing that bench ruling in November 2019.

The claimants filed a first motion for reconsideration
pursuant to Fed. R. Civ. P. 59(e) and 11 U.S.C. § 502(j)
challenging the Title III court's bench ruling.  In that motion,
the claimants argued, for the first time, that they could recover
against the Commonwealth under Puerto Rico's general negligence
statute, P.R. Laws Ann. tit. 31, § 5141, for personal injuries
suffered as a result of the Commonwealth defaulting on its bonds.
They also argued in a separate filing that the Commonwealth's
proposed plan of adjustment and accompanying disclosure statement,
which were filed with the Title III court after the September 2019
hearing, were     newly     discovered    evidence    warranting

---

[1]    They conceded that if their mutual funds had filed claims
against the Commonwealth based on those same bonds and those claims
had been allowed, then their claims should be disallowed as
duplicative.

reconsideration.  The Title III court denied the claimants' first motion for reconsideration.

The claimants then filed a second motion for reconsideration, rehashing the same arguments already rejected and adding a new argument that "[t]he unavailability of [the September 2019 hearing transcript]" had "hinder[ed]" their ability to file their motions for reconsideration and so the court should either grant them "an extension of time to file a notice of appeal" or "stay[] or vacate[]" its orders disallowing their claims.  The Title III court denied that second motion for reconsideration.  It rejected the argument that the transcript of the September 2019 hearing was "unavailable" on the grounds that the transcript was and had been publicly accessible through several means and the claimants had not stated that they had unsuccessfully attempted to access the transcript through those public means.

Mayoral and Escudero timely appealed the Title III court's various decisions.[2]

---

[2]    The claimants filed their first notice of appeal after the denial of their first motion for reconsideration of the Title III court's bench ruling and order memorializing that ruling, and then filed an amended notice of appeal after the denial of their second motion for reconsideration.  Those appeals were given separate docket numbers but were consolidated for briefing and argument.

II.

In reviewing a decision disallowing a claim in a bankruptcy case, we review the court's legal conclusions de novo and findings of fact for clear error. See In re Melillo, 392 B.R. 1, 4 (B.A.P. 1st Cir. 2008); see also TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995).

We review the denial of a motion for reconsideration for abuse of discretion. See Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (applying Fed. R. Civ. P. 59(e)); see also In re Tardugno, 241 B.R. 777, 779 (B.A.P. 1st Cir. 1999) (applying 11 U.S.C. § 502(j) and Fed. R. Bankr. P. 3008).[3]  "[I]t is very difficult to prevail on a Rule 59(e) motion." Marie, 402 F.3d at 7 n.2.  "The general rule in this circuit is that the moving party must 'either clearly establish a manifest error of law or must present newly discovered evidence.'"[4]  Id. (quoting Pomerleau v. W. Springfield Pub. Schs., 362 F.3d 143, 146 n.2 (1st Cir. 2004)).  "Reconsideration of a claim under [11 U.S.C.] § 502(j) is a two-step process: (1) a showing of cause for

---

[3]    Rule 59(e) applies to these Title III proceedings pursuant to Fed. R. Bankr. P. 9023 and 48 U.S.C. § 2170.  Section 502(j) applies pursuant to 48 U.S.C. § 2161(a).

[4]    The claimants argue that the Title III court erred in applying the Rule 59(e) standard to their first motion for reconsideration challenging the court's bench ruling because that ruling was only an "indicative ruling" and "not a final order." They do not cite any authority for why the Rule 59(e) standard would not apply to such a ruling.

reconsideration; and (2) a determination of the claim according to the equities of the case." In re Gonzalez, 490 B.R. 642, 651 (B.A.P. 1st Cir. 2013). "Cause as required by § 502(j) is not defined," and so bankruptcy courts are "given wide discretion in determining what constitutes adequate cause for the reconsideration of a claim." Id.

The Title III court did not commit any error in its standing analysis either in its initial decision disallowing the claims or in its consideration of the two Rule 59(e) motions for reconsideration.[5]

As applicable in Title III proceedings, see 48 U.S.C. § 2161(a), the Bankruptcy Code establishes that only "[a] creditor or an indenture trustee may file a proof of claim," 11 U.S.C. § 501(a); see also In re Melillo, 392 B.R. at 5. Mayoral and Escudero do not argue that they are indenture trustees. A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A); see also In re Melillo, 392 B.R. at 5. A "claim" is defined as a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment," 11 U.S.C. § 101(5); see also In re

---

[5]    The FOMB does not challenge the claimants' assertion that Puerto Rico law is the applicable law for purposes of the standing analysis and we express no opinion on that issue.

_Melillo_, 392 B.R. at 5, and the Supreme Court has stated that "a 'right to payment' . . . 'is nothing more nor less than an enforceable obligation,'" _Cohen_ v. _de la Cruz_, 523 U.S. 213, 218 (1998) (quoting _Pa. Dep't of Pub. Welfare_ v. _Davenport_, 495 U.S. 552, 559 (1990)); _see also_ _In re Melillo_, 392 B.R. at 5.

The claimants have not argued at any point that they directly own any Puerto Rico bonds and so cannot assert a claim on that basis. _Cf._ _In re Melillo_, 392 B.R. at 5-6 (holding that the claimant failed to establish ownership under Massachusetts law over the account which was the subject of the proof of claim). And they do not cite any provision of the Puerto Rico Investment Companies Act or other statute or any Puerto Rico case law establishing that ownership of shares in mutual funds gives them an enforceable obligation for payment directly against the Commonwealth.[6]

The mutual funds that the claimants did identify are organized as corporations, which further undercuts their claims. "As a general rule, a corporation and its shareholders are distinct juridical persons and are treated as such in contemplation of law"

---

[6]     The claimants do not argue that any statute gives them standing. _Cf._ _Jones_ v. _Harris Assocs. L.P._, 559 U.S. 335, 340-41 (2010) (describing a private right of action provided to individual investors in a mutual fund under certain circumstances); 15 U.S.C. § 80a-35(b) (creating a private right of action for a shareholder of a mutual fund to sue "on behalf of such company" the investment adviser for the company for breach of fiduciary duty with respect to compensation for services (emphasis added)).

and generally "[a]ctions to enforce corporate rights or redress injuries to [a] corporation cannot be maintained by a stockholder in his own name . . . even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock." Pagán v. Calderón, 448 F.3d 16, 28 (1st Cir. 2006) (alterations in original) (quoting In re Dein Host, Inc., 835 F.2d 402, 405 (1st Cir. 1987)); cf. In re Refco Inc., 505 F.3d 109, 115-18 (2d Cir. 2007). Here, the claimants have suffered no nonderivative injury separate from any injury the mutual funds may have suffered and they have not argued that any other exception to the general shareholder standing rule applies. For that reason, as well, they lack standing. See Pagán, 448 F.3d at 28-29.

Nor have the claimants shown that they are authorized agents of the mutual funds who can execute the proofs of claim on the mutual funds' behalf or that the provision of 11 U.S.C. § 501(b) and Fed. R. Bankr. P. 3005(a) applies on these facts. See Fed. R. Bankr. P. 3001(b); 11 U.S.C. § 501(b) (providing that "[i]f a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim"); Fed. R. Bankr. P. 3005(a) (similar); see also In re Melillo, 392 B.R. at 4-5.[7]

---

[7]    We also deny the claimants' belated request to certify the standing issue to the Puerto Rico Supreme Court. The claimants

There was no abuse of discretion in denying each of the
motions for reconsideration under Rule 59(e), even bypassing
waiver,[8] because the underlying personal injury theory had no
merit.

The claimants cite no Puerto Rico Supreme Court case in
support of their personal injury theory.  In our view, that court
has never accepted such a broad view of the Puerto Rico negligence
statute and prior constructions of the statute argue against
recovery on such a theory.  "Puerto Rico's negligence statute,
[P.R. Laws Ann. tit. 31, § 5141], does not apply in the context of
a commercial transaction" where "the damage suffered exclusively
arises as a consequence of the breach of an obligation specifically
agreed upon, which damage would not occur without the existence of
a contract."  Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.,
449 F.3d 85, 88, 90 (1st Cir. 2006) (first quoting Betancourt v.
W.D. Schock Corp., 907 F.2d 1251, 1255 (1st Cir. 1990); and then
quoting Ramos Lozada v. Orientalist Rattan Furniture, Inc., 130
P.R. Dec. 712, 727, 1992 WL 755597 (1992)); see also Nieves

---

waived that request by not making it to the Title III court, see
V. Suarez & Co. v. Dow Brands, Inc., 337 F.3d 1, 6 n.8 (1st Cir.
2003), and we find certification unnecessary in any event for the
reasons stated.

[8]  As an initial matter, the claimants failed to preserve
their personal injury argument for appellate review because they
did not argue or develop the personal injury theory at any point
before their motions for reconsideration.  See Iverson v. City of
Boston, 452 F.3d 94, 104 (1st Cir. 2006).

Domenech v. Dymax Corp., 952 F. Supp. 57, 66 (D.P.R. 1996) ("[Under
Ramos Lozada,] [the] general duty not to act negligently must arise
out of conditions separate from the parties' contract.  If a
plaintiff's damages arise exclusively from a defendant's alleged
breach of contract, the plaintiff does not have a separate cause
of action for negligence." (citation omitted)).  The claimants'
alleged damages arise exclusively out of the commercial
transaction between the mutual funds and the Commonwealth such
that those alleged damages would not have occurred without the
existence of that contractual relationship.  The Commonwealth has
no separate duty with respect to those bonds apart from that
contract, let alone a non-contractual duty owed to individuals
whose only connection with the bonds is their investment in a
corporation that in turn invested in the bonds.  The claimants
cannot assert a claim under Puerto Rico's negligence statute based
on that commercial transaction.  See Isla Nena Air Servs., 449
F.3d at 90-91.[9]

---

[9]    The claimants' other Rule 59(e) arguments also lack
merit.  There were no procedural errors in denying those motions.
The September 2019 hearing transcript was not new and was available
at the time the motions for reconsideration were filed, and the
FOMB disputes whether any of the other alleged new material was
new or unavailable at the time of the Title III court's
disallowance of the claims.  Nor have the claimants shown why any
of these materials were relevant to their claims on
reconsideration.

In any event, none of the claimants' theories of recovery can be maintained under Puerto Rico law because they could permit impermissible double recovery against the Commonwealth if both the mutual funds and their individual investors could recover on the same bonds.  Cf. In re Redondo Constr. Corp., 820 F.3d 460, 462, 468 (1st Cir. 2016) (explaining that "a plaintiff is entitled to only one full recovery" (citation omitted)); Villarini-Garcia v. Hosp. del Maestro, 112 F.3d 5, 8 (1st Cir. 1997) (describing Puerto Rico courts as "expressing a general hostility to double recovery"); see also W. Clay Jackson Enters., Inc. v. Greyhound Leasing & Fin. Corp., 463 F. Supp. 666, 670-71 (D.P.R. 1979).

For the same reasons that the Title III court did not abuse its discretion under Rule 59(e), it also did not abuse its discretion in determining that the claimants did not establish adequate cause for reconsideration of their claims under 11 U.S.C. § 502(j) and Fed. R. Bankr. P. 3008.  See In re Gonzalez, 490 B.R. at 651.[10]

---

[10]    The Title III court also did not abuse its discretion in denying the claimants' motions for reconsideration without a hearing.  Contrary to the claimants' argument, the Title III court was not required to hold a hearing under 11 U.S.C. § 502(j) and Fed. R. Bankr. P. 3008 before denying their motions for reconsideration.  See Fed. R. Bankr. P. 3008 advisory committee notes ("The court may decline to reconsider an order of allowance or disallowance without notice to any adverse party and without affording any hearing to the movant."); In re Colley, 814 F.2d 1008, 1010 (5th Cir. 1987) (same).

Like many others whose investments in mutual funds holding Puerto Rico bonds have disappointed their expectations, the claimants seek to somehow recover their losses.  But there is now and never was a basis in law for this lawsuit.

<u>Affirmed</u>.