UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### AAFAF'S OMNIBUS OPPOSITION TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS', AMBAC ASSURANCE CORPORATION'S, AND FINANCIAL GUARANTY INSURANCE COMPANY'S MOTIONS TO COMPEL DISCLOSURE STATEMENT DISCOVERY

---

[1] The Debtors in these jointly administered Title III cases, along with each Debtor's respective Title III case number (listed as a bankruptcy case number due to software limitations) and the last four digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801). Unless otherwise noted, all emphasis is added and internal citations and quotation marks have been omitted.

## TABLE OF CONTENTS

                                        **Page**

PRELIMINARY STATEMENT ............................................................................................... 1

LEGAL STANDARD................................................................................................................ 2

ARGUMENT.............................................................................................................................. 3

    I.    DISCLOSURE STATEMENT DISCOVERY IS UNWARRANTED. ................. 3

    II.    DISCLOSURE STATEMENT DISCOVERY FROM A NON-DEBTOR
            LIKE AAFAF IS NOT APPROPRIATE................................................................ 6

    III.    THE REQUESTS TO AAFAF ARE UNDULY BURDENSOME AND
            DISPROPORTIONATE TO THE NEEDS OF EVALUATING THE
            DISCLOSURE STATEMENT'S ADEQUACY. .................................................. 8

CONCLUSION........................................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abarca Health, LLC v. PharmPix Corp.*,
 806 F. Supp. 2d 483 (D.P.R. 2011) ................................................................................... 2

*Gill v. Gulfstream Park Racing Ass'n, Inc.*,
 399 F.3d 391 (1st Cir. 2005) .............................................................................................. 2

*In re 3DFX Interactive, Inc.*,
 2006 WL 2010786 (Bankr. N.D. Cal. June 29, 2006) ....................................................... 5

*In re Catholic Bishop of N. Alaska*,
 2009 WL 8412170 (Bankr. D. Alaska July 20, 2009) ....................................................... 4

*In re Ferretti*,
 128 B.R. 16 (Bankr. D.N.H. 1991) .................................................................................... 3

*In re Hutch Holdings, Inc.*,
 2014 WL 7408816 (Bankr. S.D. Ga. Dec. 30, 2014) ......................................................... 5

*In re Michelson*,
 141 B.R. 715 (Bankr. E.D. Cal. 1992) ............................................................................... 3

*In re Ponce de Leon 1403, Inc.*,
 2012 WL 5880443 (Bankr. D.P.R. Nov. 20, 2012) ........................................................... 4

*In re Scioto Valley Mortg. Co.*,
 88 B.R. 168 (Bankr. S.D. Ohio 1988) ................................................................................ 3

*In re Source Enters., Inc.*,
 2007 WL 7144778 (Bankr. S.D.N.Y. 2007) ...................................................................... 3

*In re Vega*,
 2010 WL 3282656 (Bankr. D.P.R. Aug. 17, 2010) ........................................................... 6

*Matter of Georgetown of Kettering*,
 17 B.R. 73 (Bankr. S.D. Ohio 1981) .................................................................................. 1

*Wylie v. Stipes*,
 2010 WL 11580051 (D.P.R. Aug. 18, 2010) ..................................................................... 7

**Statutes**

48 U.S.C. § 2172 ........................................................................................................................ 7

48 U.S.C. § 2175 ........................................................................................................................ 7

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Act 2-2017 § 4 .................................................................................................................. 6

PROMESA § 104(f) ......................................................................................................... 6

PROMESA § 312 .............................................................................................................. 7

PROMESA § 315 .............................................................................................................. 7

Puerto Rico Act 2-2017 § 5 .............................................................................................. 7

**To the Honorable United States Magistrate Judge Judith Gail Dein:**

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") respectfully opposes the *Official Committee of Unsecured Creditors' Urgent Motion to Compel Disclosure Statement Discovery from Oversight Board and AAFAF* ECF No. 16811 (the "UCC Motion") and the *Urgent Motion of Ambac Assurance Corporation and Financial Guaranty Insurance Company to Compel Discovery from the Government Parties in Connection with the Disclosure Statement* ECF No. 16812 (the "Ambac/FGIC Motion").

## PRELIMINARY STATEMENT

1. As one court has observed, "[t]he requirement of a disclosure statement . . . should not be read to infer a corresponding creditor right of a fishing expedition. Although the Debtor is required to disclose his finances in a formal written document, the role of creditors and other parties in interest in the disclosure process is neither supervisory nor participatory." *See Matter of Georgetown of Kettering*, 17 B.R. 73, 75 (Bankr. S.D. Ohio 1981). Notwithstanding this general rule, Ambac, FGIC, and the UCC (collectively, the "Movants") have demanded expansive discovery in connection with the May 11, 2021 disclosure statement filed by the FOMB in its capacity as the Debtor's representative (the "Disclosure Statement").[2] In addition to seeking discovery from the FOMB directly, these entities have also sought burdensome discovery from AAFAF, a separate legal entity that is not a proponent of the Disclosure Statement. Movants' requests for overbroad and burdensome discovery of AAFAF should be denied for at least three reasons.

---

[2] On April 23, 2021, the UCC propounded 60 discovery requests on the FOMB, demanding a response by May 7, 2021. On May 12, 2021, Ambac and FGIC transmitted 24 requests directed to both the FOMB and AAFAF, demanding a response by May 19, 2021. On May 14, 2021, the UCC transmitted a second set of 16 document requests to the FOMB, as well as 28 requests directed to AAFAF, which were entirely duplicative of those they served on the FOMB, and demanded a response by May 26, 2021. AAFAF responded to Movants in letters dated May 14, 2021 and May 17, 2021, objecting to these requests in their entirety. *See* Ambac/FGIC Mot. Ex. F (May 14, 2021 letter from E. McKeen), UCC Mot. Ex. 12 (May 17, 2021 letter from E. McKeen).

2. First, none of the requested information is necessary to enable the Court to evaluate the sufficiency of the Disclosure Statement. Whether the Disclosure Statement is adequate—or whether it must be amended to provide additional information—will be determined from the text of the disclosure itself. That is why discovery is not typically necessary in connection with disclosure statement proceedings (and Movants' cases are not to the contrary).

3. Second, to the extent any discovery is permitted, that discovery should be directed to the FOMB as the proponent of the Disclosure Statement, not to AAFAF. Notwithstanding their service of entirely overlapping requests, the UCC has already conceded it does not need duplicative discovery from both the FOMB and AAFAF (UCC Motion ¶ 61) and Ambac and FGIC have not offered any justification for seeking duplicative materials from AAFAF (*see generally* Ambac/FGIC Motion). If FOMB requires AAFAF's assistance in complying with any discovery in connection with the Disclosure Statement, then AAFAF will coordinate with FOMB, as it has on a host of other issues over the years of the Commonwealth's Title III case.

4. Third, the discovery requests are facially overbroad and not remotely tailored under the circumstances. Movants' requests are expansive, and, in some instances, duplicative of Rule 2004 discovery Movants have already received. Accordingly, and as explained further below, Movants' attempts to compel disclosure statement discovery from AAFAF should be rejected.

## LEGAL STANDARD

5. Courts generally do not permit discovery regarding disclosure statements because the purpose of a disclosure statement is to furnish "adequate information" for a hypothetical investor to decide whether to support the plan, not create a fishing expedition or mini plan confirmation hearing. *See* FOMB Ambac/FGIC Opp., Applicable Law ¶¶ 16–21. To the extent discovery is even appropriate, the Court must weigh the likely benefit of the requested discovery against the burden on the producing party. *See Abarca Health, LLC v. PharmPix Corp.*, 806 F.

2

Supp. 2d 483, 488 (D.P.R. 2011) ("Rule 26(b)(2)(C) allows the court to limit the frequency or extent of the scope of discovery . . . if the court determines that 'the burden or expense of the proposed discovery outweighs its likely benefit.'"); *see also Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 400 (1st Cir. 2005) ("Under Rule 26, the trial court is required to balance the burden of the proposed discovery against the likely benefit.").

## ARGUMENT

### I. DISCLOSURE STATEMENT DISCOVERY IS UNWARRANTED.

6. "The purpose of a disclosure statement is to provide adequate information to creditors to enable them to decide whether to accept or reject the proposed plan." *In re Ferretti*, 128 B.R. 16, 18 (Bankr. D.N.H. 1991). "If the creditors oppose their treatment in the plan, but the Disclosure Statement contains adequate information, issues respecting the plan's confirmability will await the hearing on confirmation." *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 172 (Bankr. S.D. Ohio 1988) (holding the debtor must "disclose all pertinent information so that such holders can cast an informed vote accepting or rejecting the plan. That is all the Code requires.").

7. The debtor's filing of a disclosure statement does not open the door to expansive discovery because the hearing is not intended to be an exhaustive evidentiary examination of the disclosures. "The court does not conduct an independent investigation and relies upon its reading of the document for apparent completeness and intelligibility . . . ." *In re Michelson*, 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992). The remedy for an insufficient disclosure statement is an amendment to the disclosures, not discovery. *See In re Source Enters., Inc.*, No. 06-11707 (AJG), 2007 WL 7144778, at *3–*4 (Bankr. S.D.N.Y. 2007) (ordering amendment to disclosure statement because creditors were not provided with debtor's projections or explanation of intangible valuation prior to the plan voting deadline because a hypothetical investor could not make an informed judgment about the plan without such information). The time for discovery is in advance

of the plan confirmation hearing, not the disclosure statement hearing. *See In re Michelson*, 141 B.R. at 719 ("By the time of the confirmation hearing, the context has changed[.] . . . The plan proponent's natural enemies have had an opportunity to conduct discovery.").

8. Here, Ambac and FGIC have not articulated how any discovery—whether from AAFAF or the FOMB—would assist them in deciding how to vote on the Plan (and, in the case of the Committee, how it would make recommendations to unsecured claimholders how to vote). Movants have already made clear to the Court that they will not vote for the Plan, or recommend its approval to claimholders. *E.g.*, Ambac's Objection to Debtors' Joint Motion for Scheduling Order, ECF No. 16395, at 1–2 (Apr. 13, 2021) (stating that FOMB is set on "zeroing out revenue bondholders' rights" through the "abysmal treatment they would receive under the forthcoming plan of adjustment"); Tr. of Apr. 28, 2021 Omnibus Hearing at 102 (counsel for UCC) (responding to argument that UCC would "wreak havoc" on settlements with other creditors by explaining "the Committee has no choice but to try to do what it can to improve its position" given the Disclosure Statement discloses the UCC is "being offered 125 million dollars for billions and billions of dollars of claims").

9. Nor do Movants cite any authority that suggests discovery is warranted here. The cases the Movants cite do not address whether disclosure statement discovery is appropriate on facts similar to these. In *In re Ponce de Leon 1403, Inc.*, No. 11-07920-ESL, 2012 WL 5880443 (Bankr. D.P.R. Nov. 20, 2012), the court denied a creditor's motion to stay proceedings with respect to a disclosure statement pending appeal. While the court granted "[l]imited [d]iscovery in preparation for the Disclosure Statement Hearing," it was the debtor—not a creditor—who sought limited discovery, to be completed within a one-week period, so that it could adequately respond to objections to the disclosure statement. *See* Case No. 11-07920-ESL, ECF No. 91

4

(Bankr. D.P.R.).

10. In *In re Catholic Bishop of N. Alaska*, No. F08-00110-DMD, 2009 WL 8412170 (Bankr. D. Alaska July 20, 2009), the court denied a Rule 2004 request for disclosure statement discovery, noting that the court would set a briefing schedule and hearing date for a motion to compel under Fed. R. Bankr. P. 7026-7037. *See id.* at *2. The court ultimately sent that motion to compel to a discovery mediator without ruling on the merits or ordering discovery. *See* Case No. F08-00110-DMD, ECF No. 522 (Bankr. D. Alaska). In *In re Hutch Holdings, Inc.*, No. 13-42241-EJC, 2014 WL 7408816 (Bankr. S.D. Ga. Dec. 30, 2014), the court mentions in its ruling on a lift stay motion that it had given the parties 60 days to complete discovery regarding "issues relating to the adequacy of the disclosure statement," but does not discuss why it granted that discovery, the documents or information at issue, or even if the request was opposed. *Id.* at *2 (noting that the court had not issued a formal order regarding the discovery). These authorities hardly support the Movants' requests here.

11. *In re 3DFX Interactive, Inc.*, No. 02-55795 JRG, 2006 WL 2010786 (Bankr. N.D. Cal. June 29, 2006) is also distinguishable. In that case, a creditors' committee reached a settlement with a major creditor and litigation counterparty, and filed its own proposed plan of reorganization and disclosure statement seeking approval of that settlement. *Id.* at *2. The Chapter 11 Trustee and other creditors objected to the plan, alleging serious conflicts of interest between the creditors' committee and settling creditor. *See id.* The court noted discovery might be necessary to understand the alleged conflicts of interest—not the debtor's financial condition or the merits of the disclosure statement or proposed plan. *See id.* at *6–*7.

12. Put simply, the Movants have failed to cite a single authority suggesting that the kind of expansive disclosure statement discovery they have requested here is appropriate under the

5

circumstances—particularly given that they will be given an opportunity to conduct discovery in connection with litigating their objections to the Plan.

## II. DISCLOSURE STATEMENT DISCOVERY FROM A NON-DEBTOR LIKE AAFAF IS NOT APPROPRIATE.

13. Even if some disclosure statement discovery were appropriate here (and it is not), discovery from AAFAF, which is not a proponent of the Disclosure Statement, is unwarranted.[3] The UCC concedes there is no practical need for a duplicative, independent discovery process with AAFAF: "To the extent the Committee could obtain all the information it has requested from the Oversight Board, then of course it would not need discovery from AAFAF as well." UCC Motion ¶ 61. Ambac offers no justification for seeking duplicative discovery from AAFAF. *See general* Ambac/FGIC Motion. Nonetheless—making the UCC's claim it does not need duplicative documents meaningless—both motions demand that this Court compel AAFAF to produce whatever documents it has, regardless of whether the FOMB also has that information. *See* Ambac/FGIC Motion ¶ 37 ("[T]o the extent AAFAF is in possession of any of these materials, it should be compelled to produce them."); UCC Motion ¶ 62 (to same effect). This inefficient way of proceeding ignores the burden to the government, contrary to this Court's frequent admonitions. Order at 9, ECF No. 10332 (Swain, J.) ("[D]iscovery should not proceed in this complex set of matters without coordination and reasonable boundaries to limit the burden on the Commonwealth" and should proceed "in a manner that will not be unduly expensive or disruptive

---

[3] Movants have provided no authority to support their demand for discovery from a non-debtor to evaluate the sufficiency of the debtor's disclosures. Their reliance on *In re Vega* is misplaced, as that case does not address the adequacy of disclosures and instead relates to plan discovery. *In re Vega*, No. 09-08785, 2010 WL 3282656, at *1 (Bankr. D.P.R. Aug. 17, 2010) (seeking discovery on "being classified as an 'insider' by Debtor" under the bankruptcy plan). Further, the court did not rule that third-party discovery was appropriate—the court ruled that "discovery requests to third parties will be allowed," but noted that the affected third parties could intervene "to seek a protective order to protect that information." *Id.* at *3. That is, of course, exactly the relief AAFAF seeks here. As explained above, *Catholic Bishop* is not instructive because it did not reach the ultimate issue of whether disclosure statement discovery was appropriate.

of operations"). The FOMB prepared the Disclosure Statement and is seeking its approval and has the information underlying it. If AAFAF possesses documents the FOMB does not currently have that are within the scope of any discovery ordered, AAFAF will cooperate with the FOMB to make the appropriate information available, as it always has over the years of the Commonwealth's Title III case. No Court order is necessary to require AAFAF's cooperation on this point given FOMB's powers. *See* PROMESA § 104(f).

14. The UCC contends that AAFAF should have an independent obligation to respond to its requests because it is "for all practical purposes" the debtor. UCC Mot. ¶ 62. This is just wrong. PROMESA establishes the FOMB as the sole Title III representative of the debtor. *See* 48 U.S.C. § 2175; PROMESA § 315. The FOMB, not AAFAF, has the exclusive right to file a plan of adjustment under PROMESA Title III and may "take any action necessary on behalf of the debtor to prosecute the case of the debtor." *See* 48 U.S.C. § 2172; PROMESA § 312 ("Only the Oversight Board . . . may file a plan of adjustment of the debts of the debtor."). Moreover, AAFAF is a public corporation that is legally separate from the Commonwealth, PBA, and ERS and that has no debts subject to adjustment or the Title III process. *See* Act 2-2017 § 4. AAFAF is "the government entity responsible for the collaboration, communication, and cooperation between the Government of Puerto Rico and the Fiscal Oversight Board, created under PROMESA." *See* Puerto Rico Act 2-2017 § 5. In that role, it will cooperate accordingly, but should not be independently dragooned into discovery that ought to be directed at the Board (if it is to be allowed at all), with respect to the Disclosure Statement that the Board has proposed.[4]

---

[4] The UCC's assertion that AAFAF has waived its objections to the Requests is also wrong. AAFAF objected to the Requests, *see* Ambac/FGIC Mot. Ex. F (May 14, 2021 letter from E. McKeen), UCC Mot. Ex. 12 (May 17, 2021 letter from E. McKeen), in compliance with Fed. R. Civ. P. 34. *See Wylie v. Stipes*, No. 08-1036 (GAG), 2010 WL 11580051, at *1 (D.P.R. Aug. 18, 2010) (no waiver of objections where "counsel for the [defendant] kept plaintiff's counsel informed of" its objections). In any event, the deadline for objections to the Requests under Fed. R. Civ. P. 34 is not until June 14, 2021. The UCC cannot unilaterally impose an earlier deadline on AAFAF.

**III. THE REQUESTS TO AAFAF ARE UNDULY BURDENSOME AND DISPROPORTIONATE TO THE NEEDS OF EVALUATING THE DISCLOSURE STATEMENT'S ADEQUACY.**

15. As this Court has explained, "discovery should not proceed in this complex set of matters without coordination and reasonable boundaries to limit the burden on the Commonwealth." ECF No. 10332 at 9 (Swain, J.). This Court has denied discovery in situations where the burden on the government is substantial given the broad nature of the requests or the limited time-period to respond. ECF No. 16759 at 10–11 (Dein, J.). Here, there can be little question that given the lack of necessity for this discovery on the one hand, and its sweeping nature on the other hand, that Movants' motion to compel discovery responses from AAFAF should be denied.

16. Many of the requests have only attenuated relevance to the plan; for example, requests that cover "Historical Fiscal Plans" (Ambac/FGIC Req. 4), all prior disclosure statements (*id.* Req. 11), money transfers that were never effected (*id.* Req. 20), drafts of analyses (UCC Req. 2 to AAFAF), and policy considerations underlying payments (UCC Req. 4 to AAFAF). Not only are the topics of the requests extremely broad in scope, but nearly every request calls for "all documents and communications" regarding that topic. And the Motions seek a complete document production by June 10, 2021, which would be impossible given the breadth of the requests.

17. Moreover, over the four years the Commonwealth's Title III case has been pending, AAFAF, in coordination with the FOMB, has produced to the Movants thousands of documents regarding the Debtor's financial condition as part of an extensive Rule 2004 discovery process. These materials include documents relating to many of the very same topics at issue in the Requests:

- *Fiscal Plan*. AAFAF produced extensive backup materials underlying the March 13,

8

2017, April 19, 2018, May 30, 2018, June 29, 2018, October 23, 2018, and May 9, 2019 certified Commonwealth fiscal plans. (*Cf.* Ambac/FGIC Mot. Ex. B, Reqs. 2–5.)

- *Pensions*. Movants have also received extensive information, including actuarial valuation reports, participant data, pensions modeling, PayGo reporting and invoices, and circular letters and regulations, on "the Commonwealth's $55.6 billion estimated pension liability." (Ambac/FGIC Mot. ¶ 3; *see* Ex. A (Mar. 30, 2021 letter from M. Dale and M. Pocha) (describing pension productions).) Similarly, Movants have received discovery on the "Pension Reserve Trust" and "Pension Reserve Fund." (Ambac/FGIC Mot. Ex. B, Reqs. 12–15); *see* Ex. B (July 7, 2020 letter from M. Dale) (agreeing to produce non-privileged information located on these topics).)

- *Cash Restrictions*. The Oversight Board produced "factual source materials and raw data" and "Calculation Back-Up materials" in connection with its bank account and cash restriction analyses (ECF No. 16760 at 2–5 (Dein, J.)), including a dynamic version of the master database underlying the bank account analysis, a version of Exhibit J to the Disclosure Statement that includes full bank account numbers (thus allowing for comparison of Exhibit J's account restriction classifications with the accounts in the master database), and an account tracker prepared in connection with the cash restriction analysis containing information regarding restriction determinations on an account-by-account basis. (*Cf.* Ambac/FGIC Mot. Ex. B, Reqs. 19–20; UCC Mot. Ex. 2, Reqs. 35–43, 45; *id.* Ex. 10, Req. 13; *id.* Ex. 11, Reqs. 14–15.)

- *Assets*. AAFAF made available online repositories containing voluminous information regarding government real property holdings and contracts, including the Commonwealth's official inventory of real property, the Puerto Rico Property Registry, and the Office of Comptroller's registry of government contracts. (*See* ECF No. 15965, ¶ 12 (AAFAF opposition to renewed Assets 2004 motion).) In addition, AAFAF produced nonpublic property inventories disclosing "thousands of properties" "includ[ing] information regarding property descriptions, locations, coordinates, and whether each property is in use." (ECF No. 16759 at 4–5 (Dein, J.).) AAFAF has also produced CEDBI's working spreadsheet regarding properties for which a final decision to approve or reject a transaction has been made, as well as information for potential transactions that are under consideration. (*Cf.* Ambac/FGIC Mot. Ex. B, Reqs. 16–17; UCC Mot. Ex. 2, Reqs. 17–18, 44, 46; *id.* Ex. 11, Reqs. 6–7, 16–19, 28).)

18. Accordingly, any discovery from AAFAF relating to the Disclosure Statement beyond what it has already provided in Rule 2004 discovery should be rejected as unduly burdensome and disproportionate to the needs of the Disclosure Statement hearing, particularly when information can be sought from the Board in the first instance.

## CONCLUSION

19. For the foregoing reasons, the Motions should be denied.

9

Dated: June 3, 2021
San Juan, Puerto Rico

Respectfully submitted,

/s/ Luis C. Marini-Biaggi
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com

/s/ Carolina Velaz-Rivero
Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave.
Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Co-Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

/s/ Elizabeth L. McKeen
John J. Rapisardi
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive
17th Floor
Newport Beach, California 92660
Tel: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

10