**Exhibit 1**

CONTAINS INFORMATION SUBJECT TO MEDIATION PRIVILEGE



Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

May 26, 2021

Brian S. Rosen
Member of the Firm
d +1.212.969.3380
f 212.969.2900
brosen@proskauer.com
www.proskauer.com

**By Email**

Nicholas Bassett, Esq.
Paul Hastings LLP
2050 M Street, N.W.
Washington, D.C. 20036
nicholasbassett@paulhastings.com

Re:  *In re: Commonwealth of Puerto Rico, et al.* (D.P.R. Case No. 17-3283) Discovery Relating to Disclosure Statement for Second Amended Title III Plan

Dear Nick,

I write to follow up on our May 24, 2021 meet and confer telephone conference regarding the Committee's *First Set of Document Requests to Financial Oversight and Management Board for Puerto Rico and its Advisors in Connection with Disclosure Statement for Second Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.* (the "Requests," and each individually a "Request"), as well as the Oversight Board's responses and objections (the "Responses," and each individually a "Response")[1] to the Requests.

During the May 24 teleconference, counsel for the Committee declined to address each of the Requests individually, but rather, acknowledged that it might be productive for the parties to discuss the types of information the Committee seeks. In the interest of narrowing the parties' disputes, we have identified below additional information the Oversight Board is prepared to make available with respect to certain specific Requests. Further, we remain available to meet and confer regarding the Committee's Requests, as identified in the Oversight Board's Responses.

    A.    *Request No. 1 ("All Documents concerning any estimate, by the FOMB or any other party, of the CW General Unsecured Claims in Class 55 of the Second Amended Plan, including all documents concerning the number and amount of such claims, the estimate in the Initial Disclosure Statement of approximately $5.5 billion in general unsecured claims, all spreadsheets, charts, and analyses created by FOMB advisors, including PJT Partners, relating to such estimate, and all drafts of and supporting data and sources for such spreadsheets, charts, and analyses").*

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Responses.

**Proskauer**

Nicholas Bassett, Esq.
May 26, 2021
Page 2

> *Request No. 2 ("Documents sufficient to show the number and amount of CW General Unsecured Claims in Class 55 that are "(i) claims held by suppliers of goods and services, (ii) unliquidated litigation claims, (iii) claims resulting from judgments and settlements, (iv) claims eligible to be resolved through the proposed ACR Procedures, (v) tax refund claims, (vi) eminent domain claims, (vii) grievance claims, (viii) retiree benefit claims, (ix) claims owed to public employees for salary and benefits, and (x) claims held by governmental units or instrumentalities, including Documents sufficient to show which governmental units or instrumentalities hold such claims.").*



Nevertheless, in the interest of avoiding a dispute, the Oversight Board will provide a single summary containing the information in the reports already provided to the Committee, which will show the number and amount of Commonwealth general unsecured claims, broken down according to the subcategories identified in Request No. 2. That document will be made available to all eligible creditors via the Disclosure Statement Depository and the SFTP.

**B.**  *Request No. 7 ("Documents sufficient to show the specific litigations and claims that will be transferred to the Avoidance Action Trust").*

As explained in the Oversight Board's Responses, the specific litigations and claims that will be transferred to the Avoidance Action Trust are identified in Exhibit A to the Third Amended Plan of Adjustment. Determinations as to which litigations and claims to list on Exhibit A to the Third Amended Plan of Adjustment were made by the Oversight Board's Special Claims Committee. To the extent the Committee has questions regarding how Exhibit A was compiled, we are willing to facilitate a discussion between the Committee and Brown Rudnick, counsel for the Oversight Board's Special Claims Committee.

**C.**  *Request No. 8 ("All Documents concerning the basis for classifying (i) Retiree Claims (Class 48A), (ii) Dairy Producer Claims (Class 50), (iii) Eminent*

CONTAINS INFORMATION SUBJECT TO MEDIATION PRIVILEGE

**Proskauer**

Nicholas Bassett, Esq.
May 26, 2021
Page 3

> *Domain Claims (Class 51), (iv) Energy Incentive Claims (Class 52), (v) Med Center Claims (Class 53), and (vi) Gracia Gracia Claims (Class 65) separately from CW General Unsecured Claims (Class 55)").*



Further, and as explained in the Oversight Board's Responses, documents sufficient to show the legal rights held by the claimants classified in Class 48A, Class 50, Class 51, Class 52, Class 53, and Class 65 have been made available via the Disclosure Statement Depository and the SFTP. Those documents provide information regarding the legal nature of each of these claims. To the extent the Committee has additional questions after reviewing those documents, the Oversight Board is willing to further meet and confer regarding this Request.

D. *Request No. 11 ("All Documents concerning the consideration to be received by the Initial PSA Creditors under the Settlements, including the extent to which (i) such Settlements allegedly reduce the Commonwealth's existing liabilities and (ii) different bonds (by year of issuance) receive different treatment under such Settlements.").*

Information regarding the Restriction Fee and Consummation Costs (each as defined in the Third Amended Plan of Adjustment) has already been made available in the Third Amended Disclosure Statement. For example, the total amount of the Restriction Fee is disclosed in the Third Amended Disclosure Statement. *See, e.g.*, Third Amended Disclosure Statement at 32. Similarly, with respect to Consummation Costs, the Third Amended Disclosure Statement provides that initial PSA creditors are entitled to their "pro rata share of cash in an amount equal to 1.50% of the aggregate amount of such holders' or insurers' PBA Bond Claims, GO Bond Claims, and CW Guarantee Bond Claims (without duplication)." *Id*. The Oversight Board is willing to provide information regarding the initial PSA creditors' aggregate claims as of the date of the PSA, as well as the calculation of the Consummation Costs, which should provide the Committee with information regarding the consideration received by the initial PSA creditors. With respect to the Committee's request for information regarding the extent to which the Settlements in the Plan Support Agreements reduce the Commonwealth's existing liabilities, the Oversight Board refers the Committee to the Fiscal Plan for the Commonwealth of Puerto Rico, dated April 23, 2021 (the "Commonwealth Fiscal Plan").

E. *Request No. 14 ("All Documents concerning the basis for releasing "clawback" claims against former GO and PBA bondholders for recovery of principal and*

CONTAINS INFORMATION SUBJECT TO MEDIATION PRIVILEGE

3

**Proskauer»**

Nicholas Bassett, Esq.
May 26, 2021
Page 4

> interest payments (see Second Amended Disclosure Statement at 311-12), including Documents sufficient to show (i) the total amount of principal and interest paid to such bondholders and (ii) the consideration (if any) that such bondholders are providing in exchange for the release of such claims.").

As the Committee is aware, the compromise and settlement of all disputes relating to GO and PBA Bonds includes a release against all GO and PBA bondholders, including former holders of GO and PBA bonds. This term is part of the understanding reached during mediator-facilitated negotiations. There is no basis to isolate this one term from the entire agreement. The Committee already knows it opposes this settlement and can readily explain why to its constituency. That said, we are willing to add a more specific statement in the Third Amended Disclosure Statement explaining that the release of "clawback" claims includes a release of claims against parties who no longer hold GO or PBA bonds. Further, with respect to the Committee's requests for information regarding the total amount of principal and interest paid to former GO and PBA bondholders, the Oversight Board is willing to facilitate a discussion between the Committee and Brown Rudnick, who was lead counsel in the litigations seeking to recover principal and interest payments made to GO and PBA bondholders, regarding these matters.

F. *Request No. 15 ("Documents sufficient to identify the total amount of PBA administrative "rent" claims that PBA would hold against the Commonwealth from the petition date through February 28, 2021, as well as the monthly amount of such claims that will accrue going forward, if PBA were to prevail in the PBA Litigation.").*

The PBA Litigation was brought by the Oversight Board and the Committee as co-plaintiffs. In that regard, we understand that the Committee has taken the lead in calculating the accrual of PBA's administrative "rent" claims. If there is a current accrued amount that the Committee would like the Oversight Board to disclose, and therefore show that the amount being paid pursuant to the proposed compromise and settlement has not increased since September 2019 despite a greater amount accruing over the past eighteen months, we would be willing to add that information.

G. *Request No. 23 ("All Documents concerning the FOMB's calculation of the Comprehensive Cap, including Documents sufficient to show (i) whether excess capacity remains under the Comprehensive Cap and (ii) if so, how such excess capacity will be used. See Second Amended Plan § 1.123").*

*Request No. 24 ("All Documents concerning the FOMB's calculation of the Tax Supported Debt. See Second Amended Plan § 1.310.").*

CONTAINS INFORMATION SUBJECT TO MEDIATION PRIVILEGE

4

**Proskauer»**

Nicholas Bassett, Esq.
May 26, 2021
Page 5

The Comprehensive Cap and the Tax Supported Debt (*see* §§ 1.131 and 1.420 of the Third Amended Plan, respectively) are prospective calculations that are dependent on future economic inputs. In particular, the calculation of the Tax-Supported Debt is based on bonds that have not yet been issued, and the Comprehensive Cap is determined based on, among other things, the net amount of Tax-Supported Debt. The Oversight Board is willing to meet and confer in the event the Committee has further questions.

    **H.**    *Request No. 26 ("All Documents concerning the FOMB's calculation of likely payments under the GO CVIs.").*

The Oversight Board refers the Committee to Chapters 5 and 6 of the Commonwealth Fiscal Plan and Chapter 4 of the Fiscal Plan for COFINA, dated June 19, 2020 (the "COFINA Fiscal Plan"), for information responsive to this request. If the Committee has additional questions regarding the Oversight Board's calculation of likely payments under the GO CVIs after it has reviewed those sections of the Commonwealth Fiscal Plan and the COFINA Fiscal Plan, the Oversight Board is willing to meet and confer regarding those questions.

    **I.**    *Request No. 39 ("Documents providing the December 31, 2020 account balances for those accounts set forth in Exhibit J to the Second Amended Disclosure Statement with a "pending" designation.").*

The Oversight Board is currently continuing its analyses of the balances of the accounts designated as "pending" in Exhibit L to the Third Amended Disclosure Statement. When the Oversight Board has completed reviewing these accounts, it will upload any relevant, non-privileged, non-duplicative factual source materials and raw data regarding the balances of the accounts designated as "pending" to the Disclosure Statement Depository. If you have additional questions regarding those accounts once relevant and non-privileged factual source materials and raw data are uploaded to the Depository, the Oversight Board is willing to meet and confer regarding those questions.

    **J.**    *Request No. 41 ("Documents sufficient to show the sources and uses of the Debtors' cash and investments rolled forward from the December 31, 2020 account balances to June 30, 2021 and adjusted for settlements reached in connection with the Second Amended Plan.").*

The Oversight Board notes that this Request asks for information on account balances at a future date (June 30, 2021). Thus, it is impossible for the Oversight Board to fully respond to this Request. That said, after it has completed its account balance analysis up through and including June 30, 2021, the Oversight Board intends to upload any relevant and non-privileged factual source materials and raw data regarding that analysis to the Disclosure Statement Depository and the SFTP. If you have additional questions regarding these analyses once any

CONTAINS INFORMATION SUBJECT TO MEDIATION PRIVILEGE

**Proskauer**

Nicholas Bassett, Esq.
May 26, 2021
Page 6

relevant and non-privileged factual source materials and raw data are uploaded to the Depository, the Oversight Board is willing to meet and confer regarding those questions.

> K. *Request No. 46 ("Documents sufficient to show (i) the December 31, 2020 balances and/or value of the ERS assets that the Commonwealth will purchase on the effective date of the Second Amended Plan, as described on page 339 of the Second Amended Disclosure Statement, (ii) whether or not such value will be available for ERS and/or Commonwealth general unsecured creditors after payment is made to ERS bondholders, and (iii) if such value is not so available, why not.").*

The Oversight Board will incorporate additional language in the Disclosure Statement to clarify that the excess value of the ERS assets has been taken into account in reaching the compromise and settlement with GO/PBA bondholders. The Oversight Board is willing to meet and confer with the Committee regarding such language.

> L. *Request No. 56 ("All Documents concerning the FOMB's calculation of likely payments under the Clawback CVIs.").*

The Oversight Board refers the Committee to the same sections of the Commonwealth Fiscal Plan and the COFINA Fiscal Plan cited in connection with Request 26, above. If the Committee has additional questions regarding the FOMB's calculation of likely payments under the Clawback CVIs after it has reviewed those sections of the Commonwealth Fiscal Plan and the COFINA Fiscal Plan, the Oversight Board is willing to meet and confer regarding those questions.

Sincerely,

/s/ *Brian S. Rosen*
Brian S. Rosen

CC: Margaret A. Dale
Michael T. Mervis
Laura Stafford
Julia Alonzo

CONTAINS INFORMATION SUBJECT TO MEDIATION PRIVILEGE