# Exhibit 3



1(202) 551-1902
nicholasbassett@paulhastings.com

June 2, 2021

**VIA ELECTRONIC MAIL**

Brian Rosen, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299

Re:   *In re: Commonwealth of Puerto Rico, et al.* (D. P.R. Case No. 17-3283) Discovery Relating to Disclosure Statement for Third Amended Title III Plan

Dear Brian:

I write in response to your letter dated May 26, 2021 (the "May 26 Letter") and to follow up on our June 1, 2021 meet and confer teleconference (the "Second Meet and Confer") regarding the Official Committee of Unsecured Creditors' (the "Committee") (i) first set of document requests (the "First Requests", and, each individually, a "Request") directed to the Financial Oversight and Management Board for Puerto Rico and its advisors (collectively, the "Oversight Board"), and (ii) second set of document requests (the "Second Requests", and, each individually, a "Request"), directed to the Oversight Board, in connection with the *Disclosure Statement for the Third Amended Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico*, Docket No. 16741, filed on May 11, 2021 (the "Third Disclosure Statement"), as well as the Oversight Board's responses and objections to the First and Second Requests.

During our first meet and confer teleconference on May 24, 2021, the Oversight Board reiterated the statement in its responses and objections that the Oversight Board is not willing to produce documents or information in response to a majority of the Committee's Requests. For that reason, we both decided that it would not be productive for us to address each of the Requests individually during our call.[1] We further agreed, however, that it would likely be worthwhile to continue meeting and conferring as to those Requests for which the Oversight Board may be willing to either produce some information or make additional disclosures in the Third Disclosure Statement. To that end, we thank you both for the May 26 Letter addressing certain of such Requests and for your time during the Second Meet and Confer.

Set forth below are responses to your comments raised in the May 26 Letter and our understanding of the current status of the parties' discussions as to certain of the requests.

---

[1] To clarify the record, and to the extent the May 26 Letter suggests otherwise, the Committee did not unilaterally decline to address each of the Requests individually.



Proskauer Rose LLP
June 2, 2021
Page 2

### A. Request Nos. 1 and 2 of the First Requests

These requests concern the number and amount of CW General Unsecured Claims in Class 55. During the Second Meet and Confer, the Committee noted that it has never received the Oversight Board's estimates of the total unsecured claims pool, or the number and amount of such claims, broken down by categories.[2] The Oversight Board said that it believed it had provided such information but was not able to direct us to specific documentation.[3] The Oversight Board further confirmed that, regardless, as set forth in the May 26 Letter, it will upload to the Disclosure Statement Depository and the SFTP (the "Depository") a single summary containing the information responsive to these Requests.

Additionally, the Oversight Board represented that it will include information regarding estimated ERS unsecured claim recoveries when it provides additional documents to the Committee in connection with Request Nos. 1 and 2.

### B. Request No. 7 of the First Requests

Request No. 7 seeks documents sufficient to show the litigations and claims that will be transferred to the Avoidance Actions Trust and the Oversight Board's basis for transferring such actions. The Committee requested that the Oversight Board clarify what actions will be included in Exhibit B to the Third Amended Plan of Adjustment, which purports to list "Affirmative Recovery Actions" but only includes a placeholder and lists no litigations. The Oversight Board indicated that it will respond to that Request, but that it did not know when the completed Exhibit B to the Third Amended Plan of Adjustment would be finalized. Please provide us with an estimate for when we can expect this information.

The Committee also noted that it is not clear whether avoidance actions that are currently tolled, but have not yet been filed, will also be transferred to the Avoidance Actions Trust. The Oversight Board responded that it would provide the Committee with a response regarding these unfiled avoidance actions.

### C. Request No. 8 of the First Requests

Request No. 8 seeks documents concerning the basis for the separate classification of various unsecured claims. During the Second Meet and Confer, the Oversight Board confirmed that it will be providing different classification and treatment of the claimants in classes 48A, 50, 51, 52, 53, and 65, as compared to the CW General Unsecured Claims in Class 55. The

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Third Disclosure Statement.

[3] The Committee also reserved its rights to object to the sufficiency of any such summary. The Committee further noted that, to the extent the information previously provided was provided in connection with a mediation session, the Committee now needs the information in a form that can be disclosed either in litigation or as part of a suggested revision to the Third Disclosure Statement.



Proskauer Rose LLP
June 2, 2021
Page 3

Committee asked the Oversight Board to produce documents justifying this disparate treatment, and the Oversight Board responded that documents sufficient to show the legal rights of the claimants in these other classes are publicly available or have been added to the Depository. The Committee explained that these documents are insufficient to explain why the Oversight Board has separately classified and disparately treated these claims. The Committee therefore requested further responsive documents, including documents explaining which legal rights of the claimants support the Oversight Board's classification and treatment decisions and why.

### D. Request No. 11 of the First Requests

Request No. 11 concerns the consideration to be received by the Initial PSA Creditors under certain settlements and Consummation Costs. The Oversight Board confirmed, as stated in the May 26 Letter, that it is willing to provide aggregate claims data for the parties to these settlements, as well as the calculation of Consummation Costs. The Committee requested that the claims data be broken out separately for each party to the PSA.

### E. Request No. 14 of the First Requests

Request No. 14 seeks documents concerning the basis for releasing "clawback" claims against former GO and PBA bondholders for recovery of principal and interest payments they received under allegedly invalid bonds. The Committee explained that it needs documents concerning the Oversight Board's rationale for releasing claims against these former bondholders given that they are not current creditors of the Commonwealth and, therefore, do not have a vote on the Third Amended Plan and will not be providing any consideration in exchange for the releases. The Oversight Board's position is that its rationale for these settlements is not discoverable, and as a result the parties are at an impasse on this issue.

For a breakdown of the principal and interest payments made to current vs. former GO and PBA bondholders, the Oversight Board said it understands that Brown Rudnick LLP should have that information and offered to coordinate a call between Brown Rudnick and Paul Hastings (and/or other advisors) to discuss the issue. The Committee appreciates the Oversight Board's cooperation in reaching out to Brown Rudnick LLP to facilitate this discussion.

### F. Request No. 15 of the First Requests

Request No. 15 seeks documents sufficient to identify the total amount of PBA administrative "rent" claims that PBA would hold against the Commonwealth in the event PBA were to prevail in the PBA Litigation. The Committee acknowledges that it was involved in prosecuting the PBA Litigation and had, at one point in the past, attempted to gather some of this information from the government. The Committee explained, however, that it lacks current data showing the amount of total PBA administrative rent claims that exist today in light of changes to contracts, the expiration of contracts, etc. The Oversight Board agreed to take this request under



Proskauer Rose LLP
June 2, 2021
Page 4

advisement. The parties further agreed that in an effort to resolve this request, they would involve their respective financial advisors in subsequent discussions.

### G. Request Nos. 23 and 24 of the First Requests

These requests concern whether or not the Oversight Board has performed calculations of the Comprehensive Cap and Tax Supported Debt. The May 26 Letter noted that these are prospective calculations dependent upon future economic inputs. As the Committee explained during the Second Meet and Confer, however, such calculations may be performed using projections of such inputs, including to determine whether the Comprehensive Cap would be met or exceeded based on the issuance of new bonds under the Third Amended Plan. The Committee reiterated its request that documents concerning any such calculations be produced. The Oversight Board indicated that it would take this request under consideration.

### H. Request Nos. 26 and 56 of the First Requests

These requests relate to the Oversight Board's calculation of payments under the CVIs. The Committee explained that the Disclosure Statement does not provide any calculations related to the CVIs, as compared to the information in the Third Disclosure Statement concerning similar, but fixed, instruments. In the May 26 Letter, the Oversight Board directed the Committee to sections of the 2021 Commonwealth Fiscal Plan and 2020 COFINA Fiscal Plan for projections that the Committee could use to calculate the value of the CVIs. During the Second Meet and Confer, the Committee explained that, regardless of whether it can run its own calculations of the CVIs, the Oversight Board needs to disclose its calculations so that creditors voting on the plan know the total value being provided to the settling bondholders without having to perform their own calculations. The Committee believes it would be helpful if the Oversight Board can confirm whether it agrees with the Committee's calculations as to the value of the CVIs. The parties agreed that further discussions as to this Request are best held by their respective financial advisors.

### I. Request No. 39 of the First Requests

Request No. 39 seeks documents providing the December 31, 2020 account balances for "pending" accounts included in Exhibit L to the Third Disclosure Statement. The Committee requested that the Oversight Board clarify when its analyses of the balances of the accounts would be complete, including whether such analyses would be complete prior to the hearing on the Disclosure Statement. The Oversight Board said its intention is to have the "pending" designations resolved before the hearing on the Disclosure Statement but was not able to provide an estimated date of completion. Please update us regarding the timing of completing the "pending" account analyses as soon as possible.



Proskauer Rose LLP
June 2, 2021
Page 5

### J.   Request No. 41 of the First Requests

Request No. 41 concerns documents showing the sources and uses of the Debtors' cash and investments rolled forward from the December 31, 2020 account balances to June 30, 2021. In the May 26 Letter, the Oversight Board noted that it cannot provide this information because it concerns account balances as of a future date. The Committee clarified that, prior to June 30, 2021, this request can be satisfied by the Oversight Board providing an updated "Cash Bridge" document, or other summary (similar to what the Oversight Board had provided in the past), showing sources and uses rolled forward from December 31, 2020 to the present. The Oversight Board explained that it would take this request under advisement.

### K.   Request No. 46 of the First Requests

This Request seeks information concerning the value of the ERS assets that the Commonwealth will purchase on the Effective Date and whether such value will be available to unsecured creditors. In its May 26 Letter, the Oversight Board said it will add language to the Disclosure Statement indicating that the "excess value" of such assets was taken into account in reaching settlements with the PBA and GO bondholders. The Committee requested the opportunity to review any such language and also reiterated its request for information concerning the value of the assets. The Oversight Board stated that it would take this request under advisement.

### L.   Request No. 17 and 18 of the First Requests

Request Nos. 17 and 18 concern the value and ownership of properties to be transferred by PBA to the Commonwealth, or other entities, as part of the PBA Settlement or Third Amended Plan. The Oversight Board stated that it would consider the Committee's requests, and, in particular, would ascertain whether information existed that it could provide concerning the ownership of the properties as set forth in Request No. 18.

### M.   Request No. 34 of the First Requests

Request No. 34 concerns the Oversight Board's estimates of the total retiree benefit claims in Classes 48A to 48E of the Third Amended Plan. The Committee asked the Oversight Board when the estimates would be made available in the Disclosure Statement, and the Oversight Board responded that it will follow up with the Committee concerning when the requested information will be made available.

### N.   Request No. 35-38, and 40 of the First Requests

These Requests concern the Oversight Board's ongoing bank account analysis, including when it will be complete, and the Oversight Board's rationale for its classifications of various bank accounts listed in Exhibit L to the Third Disclosure Statement. The Oversight Board was unable to provide the Committee with information as to when the analysis will be complete and stated



Proskauer Rose LLP
June 2, 2021
Page 6

that it believed it had already provided sufficient information concerning the reasons for its account classifications. The Committee disagreed and pointed out, as one example, that it is unclear why certain accounts would be labelled "asserted to be restricted based on ERS litigation," given that the litigation has been settled. The Oversight Board replied that it would respond to this specific request and noted that the cash restriction analysis regarding the ERS accounts is in the process of being updated. The Committee said it may come back with further specific account designation questions, which the Oversight Board will consider.

### O. Request No. 5 of the Second Requests

The parties agreed that Request No. 5 relates to the 2014, not 2011, CW Guarantee Bond Claims, and the Oversight Board said it would provide copies of the relevant agreements.

### P. Request No. 8 of the Second Requests

Request No. 8 seeks documents identifying the entities (and related bank accounts) that will pay the HTA Restriction Fee, the CCDA Restriction Fee and the CCDA cash settlement amount so that the Committee may confirm that the Commonwealth, or a different entity, is paying the fees and settlement. The Oversight Board responded that the Commonwealth is not paying the fees and settlement amount, and, thus, the Oversight Board will consider specifying for the Committee where the payments for the fees and settlement amount will come from.

### Q. Request No. 9 of the Second Requests

This Request seeks information regarding the valuation of the ERS private equity portfolio. The Oversight Board responded that it does not believe it needs to provide information in response to this Request. Nevertheless, the parties agreed to involve their respective financial advisors to see if further discussions surrounding this Request might be productive.

### R. Request No. 12 of the Second Requests

Request No. 12 concerns the value of all Commonwealth, PBA and ERS unencumbered real property that is vacant. The Committee explained that it seeks information regarding additional value that might be recovered on behalf of creditors by selling vacant Commonwealth properties. The Oversight Board responded that it has no obligation to sell any property and therefore does not believe this Request seeks relevant information. The Committee disagrees.

### S. Request No. 13 of the Second Requests

Request No. 13 seeks information concerning the number and value of bank accounts held by the 7% of governmental entities that have not responded to the Oversight Board's request for account balance and restriction information. The Oversight Board represented that it likely knows the number of accounts and the account holders, but is unsure about the value in such



Proskauer Rose LLP
June 2, 2021
Page 7

accounts. The Oversight Board responded that it would determine what information it can provide regarding the number, name, and value of the outstanding accounts at issue.

### T. Request No. 15 of the Second Requests

This Request seeks information concerning any feasibility analysis by the Oversight Board as to whether the Commonwealth will be able to pay its debts under the Third Amended Plan when they come due. During the Second Meet and Confer, the Committee asked if the Oversight Board planned on updating its feasibility analysis based on the most recent projections provided in the April 2021 Commonwealth Fiscal Plan. The Oversight Board responded that it expects to update that particular disclosure and will confirm the same to the Committee. The Oversight Board otherwise refuses to produce documents in response to this Request, and the Committee reserves its rights.

### U. Request No. 16 of the Second Requests

Request No. 16 concerns any analysis of whether the New GO Bonds will trade at par. The Committee explained that, to the extent the Oversight Board has an analysis showing, for instance, that the newly issued GO Bonds will trade at a premium, that information would be relevant to creditors attempting to understand the extent of their recoveries and the recoveries of other creditors under the Third Amended Plan. The Oversight Board disagreed and will not produce documents in response to this Request.

Please contact me if you have any questions.

Sincerely,

Nicholas A. Bassett
of PAUL HASTINGS LLP