## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>     Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>     Debtor. | Case No. 17-BK-4780-LTS<br><br>**This Court Filing Relates Only to PREPA and Shall Only Be Filed in the lead case (Case No. 17-BK-3283-LTS) and in PREPA's Title III Case (Case No. 17-BK-4780-LTS)** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

COBRA ACQUISITIONS LLC,

     Movant,

v.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY, *et al.*,

     Respondent.

**OPPOSITION OF THE OVERSIGHT BOARD, AAFAF, AND PREPA TO
<u>COBRA ACQUISITIONS LLC'S MOTION TO LIFT THE STAY ORDER</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ....................................................................................................6

    A.    Puerto Rico Disasters and Cobra Contracts ...............................6

    B.    Inspector General Investigation ...................................................7

    C.    Cobra's Criminal Proceedings .....................................................8

    D.    PREPA Disputes over $200 Million of Cobra Invoices ..............9

    E.    Stay of Administrative Expense Motion ....................................10

ARGUMENT ......................................................................................................10

    I.    The Stay Should Remain In Place At Least Until Parties Can Assess the
FEMA Analysis And Confer .....................................................12

    II.    The Stay Should Remain In Place During the Pending Criminal Matter ............14

    III.    PREPA's and the Public's Interests Outweigh Cobra's Asserted Harm ..............17

CONCLUSION....................................................................................................18

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adams v. Magnusson*,
No. 1:19-cv-00547-GZS, 2020 U.S. Dist. LEXIS 93355 (D. Me. May 28, 2020) ................................................................................................................11, 14, 15, 16

*D.R. v. Bigda*,
No. 3:20-cv-30085-MGM, 2021 U.S. Dist. LEXIS 52067 (D. Mass. Mar. 18, 2021) ................................................................................................................................14

*Green v. Cosby*,
177 F. Supp. 3d 673 (D. Mass. 2016) ..................................................................................15

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
385 F.3d 72 (1st Cir. 2004) .................................................................................... passim

*Sea Salt, LLC v. Bellerose*,
2:18-cv-00413-JAW, 2020 U.S. Dist. LEXIS 84075 (D. Me. May 15, 2020) ......................16

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*,
886 F. Supp. 1134 (S.D.N.Y. 1995) .....................................................................................14

*United Techs. Corp. v. Dean*,
906 F. Supp. 27 (D. Mass. 1995) .........................................................................................15

*Water Quality Prot. Coalition v. Mun. of Arecibo*,
858 F. Supp. 2d 203 (D.P.R. 2012) ......................................................................................17

STATUTES, RULES AND REGULATIONS

2 C.F.R. § 200.339 ...................................................................................................................5, 14

44 C.F.R. § 206.206 ......................................................................................................................9

3 L.P.R.A. § 1756 (repealed 2018) ..............................................................................................7

18 U.S.C. § 208 .............................................................................................................................8

Act 2-2018 § 3.2 ...........................................................................................................................7

Puerto Rico Oversight, Management, and Economic Stability Act § 315 ...................................1

**OTHER AUTHORITIES**

OFF. OF INSPECTOR GEN., OIG-19-53, FEMA'S ELIGIBILITY DETERMINATION OF
PUERTO RICO ELECTRIC POWER AUTHORITY'S CONTRACT WITH COBRA
ACQUISITION LLC (July 3, 2019),
https://www.oig.dhs.gov/sites/default/files/assets/2019-07/OIG-19-52-
Jul19.pdf.............................................................................................................................7

OFF. OF INSPECTOR GEN., OIG -20-57, FEMA'S PUBLIC ASSISTANCE GRANT TO
PREPA AND PREPA'S CONTRACTS WITH WHITEFISH AND COBRA DID NOT
FULLY COMPLY WITH FEDERAL LAWS AND PROGRAM GUIDELINES (July 27,
2020), https://www.oig.dhs.gov/sites/default/files/assets/2020-07/OIG-20-57-
Jul20.pdf........................................................................................................................7, 8

To the Honorable United States District Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as PREPA's Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together with PREPA and the Oversight Board, the "Government Parties") hereby files this opposition ("Opposition") to Cobra Acquisitions LLC's ("Cobra") *Motion to Lift the Stay Order* [ECF No. 16328][2] (the "Renewed Lift Stay Motion" or "Mot."). In support of this Opposition, the Government Parties respectfully state as follows:

## **PRELIMINARY STATEMENT**

1.      PREPA has paid Cobra more than $1 billion for its recovery work after Hurricanes Irma and Maria. Cobra's former president and two FEMA officials have since been indicted, and the Department of Homeland Security's Office of the Inspector General has questioned the costs invoiced by Cobra. These events triggered a detailed investigation of Cobra's contract, work and invoices by FEMA, the federal agency tasked with evaluating the reasonableness and propriety of recovery services eligible for FEMA reimbursement. Accordingly, PREPA ceased further payments to Cobra pending FEMA's determination as to the eligibility and allowability of the invoiced costs. PREPA's hold on further payments to Cobra pending FEMA's analysis, particularly after payment of almost $1.1 billion and under the shadow of a criminal indictment, is a prudent action by a public corporation that manages public funds.

---

[1]  PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

[2]  References to the docket are to Case No. 17-BK-3283-LTS, unless otherwise specified.

2.      FEMA has now made available to PREPA its "Cost Analysis" of the invoiced costs under the first of two contracts between PREPA and Cobra—a sole-sourced emergency power restoration contract totaling $945 million.  Further, on May 26, 2021, FEMA's Joint Recovery Office in San Juan issued a "Determination Memorandum" formally implementing the results of FEMA's Cost Analysis. The Cost Analysis and Determination Memorandum found, among other things, that:

- contract costs invoiced by Cobra in the aggregate amount of $898,702,595.95 are eligible for FEMA reimbursement; and

- contract costs in the aggregate amount of $46,024,883 were not supported by the terms of the contract with Cobra and/or could not be tied to the performance of eligible work.

Accordingly, FEMA stated that it will de-obligate $46,024,883 of the $945 million that it had obligated in 2017 and 2018 for funding of Cobra costs.  PREPA is evaluating whether to pursue an administrative appeal of FEMA's decision.

3.      In addition, FEMA noted that Cobra had invoiced PREPA $76,717,644.43 for the reimbursement by PREPA to Cobra of certain tax payments pursuant to a contract provision in which PREPA agreed to cover any tax payments by Cobra to any governmental authority of Puerto Rico in excess of 8.5% of the amounts invoiced by Cobra under the contract.  FEMA stated that at closeout of the grant PREPA must provide documentation of the taxes paid by Cobra to the Government of Puerto Rico in excess of the 8.5% threshold, and FEMA would then reduce the amounts approved for tax gross up that were associated with the work/costs that FEMA determined ineligible. The Cost Analysis and Determination Memorandum relate solely to the first contract for which Cobra was largely paid.

2

4.      Neither the Cost Analysis nor the Determination Memorandum address the criminal proceedings pending against the FEMA and Cobra officials. FEMA has not yet issued a Determination Memorandum with respect to the services provided under the second contract, although FEMA has obligated approximately $250 million for the costs incurred under this contract. The vast majority of Cobra's claimed unpaid administrative costs were incurred under this contract. It is likely that FEMA will similarly conclude that some of those contract costs should also be de-obligated.

5.      This Court has previously ruled that "[s]ignificant factual and legal questions that could bear upon the Administrative Expense Motion will likely be addressed in connection with the anticipated criminal trial of Cobra's former president . . . ." ECF No. 8886 ("First Stay Order") at 2. This Court also held that "[t]he charges in that case relate to the same contracts between Cobra and PREPA that are at issue in the Administrative Expense Motion, and thus concurrent litigation of both matters presents the potential for duplication of effort by the parties and courts, inefficiencies in discovery, and inconsistent rulings." *Id.* The Court has extended the stay relating to the Administrative Expense Motion on several occasions, finding that "FEMA's ongoing analysis of Cobra's contracts with PREPA similarly weighs in favor of a stay." *Id.*

6.      All the reasons the Court previously gave to stay the Administrative Expense Motion apply with the same force today. Indeed, Cobra does not point to any material change in circumstance since the Court last extended the stay at the December 2020 omnibus hearing, to indicate the stay should now be lifted. While Cobra suggests there will be indefinite delay in connection with both the remainder of FEMA's analysis of the second contract and the criminal trial, this is not the case. As noted above, FEMA has completed its analysis with respect to the first contract and found that $46 million of the costs invoiced by Cobra (plus any tax gross-ups

3

attributable to the disallowed costs) were ineligible.  FEMA also concluded the allowed amount

under the first contract is $898.7 million, and Cobra already has received payment of

$892.9 million.  It would be wasteful and risk the potential loss of limited public funds for amounts

claimed by Cobra pursuant to the second contract to be paid before FEMA has completed its

analysis of those costs.  Further, all of the costs invoiced by Cobra to PREPA (other than invoices

for interest, but including invoices which are disputed by PREPA) have been submitted to FEMA

for reimbursement.

7.      In short, the FEMA reimbursement process remains ongoing.  Its investigation has

revealed issues with certain of Cobra's charges under the first contract, and could reveal more

under the second, all of which remain subject to appeal by PREPA.  FEMA's final conclusions on

both contracts will inform PREPA's objection to certain components of the asserted administrative

claim, without the need for costly discovery that would otherwise need to start from scratch.

8.      Moreover, despite delays (for reasons that have nothing to do with PREPA), the

criminal trial of Cobra's former president and certain FEMA officials remains pending and

discovery in the criminal proceeding is ongoing.  The alleged criminal actions of Cobra's former

president, if established at trial, may give rise to a partial or complete defense to PREPA for

liability on the Cobra contracts.

9.      Should there be a conviction of Cobra's CEO based on bribery in connection with

Cobra's contract with PREPA, it is plainly within FEMA's discretion to "[d]isallow (that is, deny

both use of funds and any applicable matching credit for) all or part of the cost of the activity or

action not in compliance[, w]holly or partly suspend or terminate the Federal award[, and i]nitiate

suspension or debarment proceedings as authorized under 2 CFR part 180" for all or a portion of costs invoiced by Cobra.  2 C.F.R. § 200.339.[3]

10.     It is the Government Parties' understanding that FEMA had asked Puerto Rico's Central Office for Recovery, Reconstruction and Resiliency ("COR3"), the entity holding FEMA-obligated funds for ultimate disbursement, some time ago to make no more payments to PREPA for Cobra contract costs due to the criminal proceeding.  COR3 is inquiring of FEMA whether this "hold" should continue now that the Determination Memorandum was issued on the first contract.

11.     The balance of factors enumerated in *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004) weigh in favor of maintaining the stay.  Because, as the Court has already ruled, Cobra is entitled to payment only upon PREPA's emergence from the Title III case, prejudice to Cobra is minimal.  On the other hand, proceeding with discovery in this proceeding now as Cobra requests, would entail needless and duplicative discovery in light of the ongoing FEMA process and the concurrent criminal proceeding that would impose a significant burden on PREPA, as well as a burden to the Court should disputes arise.  Third parties and the public will likewise be better served by waiting for the concurrent FEMA process and criminal case to be completed given the high degree of overlap of issues and facts, before PREPA expends public resources that may prove to be wasteful.

12.     As discussed in further detail below, because all the relevant factors remain essentially the same as they were the last time the Court entered an order staying the Administrative Expense Motion, the Renewed Lift Stay Motion should be denied.

---

[3]  FEMA's Determination Memorandum did not disallow any costs based upon the criminal proceeding. Indeed, FEMA did not even mention this proceeding in either the Cost Analysis or the Determination Memorandum that implemented it.  Analysis of the impact on federal funding of a conviction of Cobra's CEO for bribery in connection with Cobra's contract does not appear to have been within the scope of either the OIG Report, nor of FEMA's Cost Analysis and Determination Memorandum.

5

## BACKGROUND

### A.   Puerto Rico Disasters and Cobra Contracts

13.   On October 19, 2017, after Hurricanes Irma and Maria hit Puerto Rico, PREPA and Cobra entered into the *Emergency Master Service Agreement for PREPA's Electrical Grid Repairs – Hurricane Maria*, dated October 2017 (the "First Contract") for Cobra to perform emergency "storm restoration services" for $200 million.  Through five subsequent amendments, the contract amount for the First Contract was increased to $945 million.  Cobra has been paid approximately $892.9 million pursuant to the First Contract.

14.   On May 26, 2018, PREPA and Cobra entered into the *Master Services Contract for PREPA's Electrical Grid Repairs - Hurricane Maria*, dated May 26, 2018 (the "Second Contract," and with the First Contract, the "Cobra Contracts"), for Cobra to perform restoration and reconstruction services in addition to its emergency storm repair services under the First Contract, in the amount of up to an additional $900 million. Cobra has been paid approximately $202.0 million pursuant to the Second Contract.

15.   Like any entity that contracts with a governmental entity in Puerto Rico, Cobra, through its authorized agents, was required to sign a certification for every invoice that says, in relevant part:

> Under penalty of absolute nullity, I hereby certify that no employee, official or director of PREPA is a party or has been granted any interest or payment by Consultant in the profits or benefits to be obtained under this Contract by Consultant or if any employee, official or director of PREPA has any interest in the profits or benefits under this Contract a waiver has been previously obtained. I, also certify that the only consideration to provide the services under this Contract to Consultant is the payment agreed with PREPA's authorized representative. The total amount of this invoice is fair and correct. The services were provided and no payment has been received for said concept.

First Contract, Art. 3; *see* 3 L.P.R.A. § 1756(d) (repealed 2018); Act 2-2018 § 3.2(e) (replacing 3 L.P.R.A. § 1756).

### B.    Inspector General Investigation

16.    At the request of members of the U.S. House Committee on Natural Resources, the Office of the Inspector General of the Department of Homeland Security ("OIG") commenced an audit of, *inter alia,* PREPA's contract with Cobra and FEMA actions related thereto in December 2017, which led to two OIG audit reports.  The first, entitled "FEMA's Eligibility Determination of Puerto Rico Electric Power Authority's Contract with Cobra Acquisitions LLC" (OIG-19-52), dated July 3, 2019 ("OIG 2019 Report"), was part of its ongoing audit into whether FEMA's grants of Public Assistance to PREPA and PREPA's contracts with power restoration contractors, including Cobra, complied with federal laws, regulations, and Public Assistance grant guidelines ("OIG Audit").  The OIG Report addressed the process FEMA used to approve the rates PREPA agreed to pay Cobra.  Pursuant to the OIG 2019 Report,[4] FEMA and the Department of Homeland Security Operational Analysis Center were directed to conduct an extensive analysis into the services provided and the fees charged pursuant to the First Contract.  The second OIG audit report, "FEMA's Public Assistance Grant to PREPA and PREPA's Contracts with Whitefish and Cobra Did Not Fully Comply with Federal Laws and Program Guidelines" (OIG-20-57), dated July 27, 2020 ("OIG 2020 Report"),[5] contended that PREPA had not monitored Cobra's performance adequately and as a result FEMA may have reimbursed PREPA for Cobra contract costs ineligible for FEMA funds.

---

[4]  The OIG 2019 Report is available at https://www.oig.dhs.gov/sites/default/files/assets/2019-07/OIG-19-52-Jul19.pdf.

[5]  The OIG 2020 Report is available at https://www.oig.dhs.gov/sites/default/files/assets/2020-07/OIG-20-57-Jul20.pdf.

17.     FEMA's disaster assistance is provided through federal grants, and must be supported by documentation that the work was required by the disaster and was completed at a reasonable cost.  Some of the documentation requested by FEMA—specifically as it related to the shipment of equipment used by Cobra in its power restoration work—had not been previously provided to or maintained by PREPA. Accordingly, Cobra assisted in identifying and providing this information even though this level of invoice documentation had not previously been required.

18.     The OIG 2020 Report stated that FEMA, in its last update to the OIG regarding the reasonableness analysis, estimated "resolution and closure of the recommendation will not occur until May 2021." OIG 2020 Report at 14 n.4. As noted above, FEMA's Determination Memorandum was issued on May 26, 2021.

### C.     Cobra's Criminal Proceedings

19.     On September 3, 2019, a federal grand jury sitting in the District of Puerto Rico returned a 15-count indictment in the matter of *United States v. Tribble*, Case No. 19-CR-541-FAB, ECF No. 3 (D.P.R. Sept. 3, 2019) (the "Indictment"), alleging criminal charges against Ahsha Tribble, former FEMA Region II Deputy Regional Administrator and Sector Lead for Power and Infrastructure in Puerto Rico, Donald Keith Ellison, Cobra's President at the time, and Jovanda Patterson, a Cobra employee and former FEMA Deputy Chief of Staff assigned to San Juan, Puerto Rico.[6]  On March 10, 2020, Jovanda Patterson pleaded guilty to one count of 18 U.S.C. § 208(a), acts affecting a personal financial interest, pursuant to a plea agreement in which the government agreed to recommend probation.

20.     The Indictment alleges that in exchange for things of value provided by Ellison, Tribble—who headed Infrastructure division in FEMA's Joint Recovery Office, reporting directly

---

[6]   A copy of the Indictment is at ECF No. 8838-2.

to the Federal Coordinating Officer (the most senior-ranking FEMA official in Puerto Rico)—took governmental action to "advance Cobra's interests" and to "secure favorable treatment for COBRA[.]" Indictment ¶ 43.  Tribble is alleged to have used her position at FEMA to exert pressure on PREPA executives to accelerate payments to Cobra, to assign tasks to Cobra that would have otherwise been performed by PREPA personnel at a lower cost, to provide Cobra with non-public information that gave Cobra the upper-hand in the bidding process, and to select Cobra over other contractors.  Indictment ¶¶ 43, 45, 102.  Trial in this matter has been adjourned several times.  Currently, the parties are briefing motions to compel certain discovery from the United States. No new trial date has yet been set.

>           **D.     PREPA Disputes over $200 Million of Cobra Invoices**

>           21.     PREPA has disputed hundreds of Cobra invoices with an aggregate face value in excess of $200 million. *See* Joint Informative Motion Pursuant to Order of October 17, 2019 Regarding Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims 6-7, ECF No. 10307. These invoice disputes include billing for inaccurate headcounts, unauthorized work, incomplete or missing verification of work performed as billed, inaccurate demobilization billing, access mapping costs, inaccurate tax gross-up amounts and the merits of earned discounts taken by PREPA for promptly paid invoices.  *See id.*  The invoice disputes will be addressed in connection with the Administrative Expense Motion, filed by Cobra on September 30, 2019 and currently stayed by the Court (see below).  The FEMA Cost Analysis and Determination Memorandum have provided the first administrative determinations on these issues, although these determinations only relate to the First Contract and are subject to FEMA's administrative appeal process under 44 C.F.R. § 206.206.  These determinations would disallow virtually all costs invoiced by Cobra above the amounts already paid to Cobra under the First Contract.  No determinations have yet been made by FEMA regarding the Second Contract, which

9

would account for approximately $141.9 million of Cobra's asserted administrative expense claim, if allowed.  And of course, the amount of Cobra's claims for interest depend on establishing that it was in fact owed the amounts that PREPA has not yet paid (and that the those interest costs are properly assertable as an administrative expense).

### E.      Stay of Administrative Expense Motion

22.      On October 10, 2019, PREPA and its representatives requested that the Court stay all litigation relating to the Administrative Expense Motion while the FEMA analysis and the criminal proceeding are pending to prevent, among other things, judicial inefficiency and prejudice to the Government Parties. *See* Joint Urgent Motion of the Oversight Board, PREPA, and AAFAF to Extend All Applicable Deadlines to Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims,  ECF No. 8838.  On October 17, 2019, the Court entered the First Stay Order, granting the Government Parties' motion and denying Cobra's opposition.  As a result, all litigation relating to the Administrative Expense Motion has been stayed. The stay has been continued several times over Cobra's objection, each time on the basis that the FEMA analysis is not yet complete and the criminal proceeding is still pending.  The Government Parties are to submit by June 7, 2021 a further report as to the status of the FEMA analysis and criminal case.

### ARGUMENT

23.      Pursuant to its inherent power to stay proceedings, and taking into account the *Microfinancial* factors,[7] this Court has already determined—several times—the interests of justice

---

[7]  The First Circuit has held that the following factors should be considered in determining whether to stay a civil proceeding while a criminal case implicating the same set of facts is pending:

> (i) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire; (ii) the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem; (iii) the

clearly weigh in favor of imposing a stay, (a) to avoid prejudice to PREPA and its stakeholders, (b) to avoid unnecessary litigation relating to issues that will be covered by the FEMA analysis, and (c) to allow any necessary discovery into Cobra's services and charges unhindered by the parallel criminal case. *See, e.g.*, First Stay Order at 2. The latest stay order accordingly continues the stay. *See* ECF No. 15396 at 2.

24. Cobra points to no supposed material change in circumstances or flawed reasoning[8] suggesting that the Court's balancing of the relevant factors in the prior Stay Orders was wrong or should be revisited.[9] Moreover, because FEMA has only just issued its Cost Analysis and related Determination Memorandum regarding the First Contract, and has not yet issued any similar analysis regarding the Second Contract, more time is needed to obtain and evaluate FEMA's conclusions and their impact on Cobra's claim against PREPA for unpaid charges under both Cobra Contracts. Notably, the amount that FEMA has approved as payable to Cobra under Cobra's First Contract with PREPA, when adjusted for the reduction in the tax gross-up amount related to the $46 million disallowed by FEMA as not covered by PREPA's contract with Cobra, is roughly

---

convenience of both the civil and criminal courts; (iv) the interests of third parties; and (v) the public interest . . . (vi) the good faith of the litigants (or the absence of it) and (vii) the status of the cases. *Microfinancial, Inc.*, 385 F.3d at 78. Courts within the First Circuit also consider "the degree to which the civil issues overlap with the criminal issues." *Adams v. Magnusson*, No. 1:19-cv-00547-GZS, 2020 U.S. Dist. LEXIS 93355, at *3 (D. Me. May 28, 2020).

[8] The Renewed Lift Stay Motion merely asks the Court to revisit its latest stay order, without clearly establishing "a manifest error of law or . . . newly discovered evidence" to justify the "extraordinary remedy" of reconsideration of the Court's prior order. Order Denying Caribbean Airport Facilities, Inc.'s Motion for Reconsideration 1-2, ECF No. 1045.

[9] Indeed, almost everything that Cobra mentions in its Renewed Lift Stay Motion repeats arguments made by Cobra in prior briefs and in remarks before the Court at the December 2020 omnibus hearing. Specifically, Cobra's main arguments that (1) Cobra suffers hardship from not being paid, Mot. ¶¶ 1, (2) the criminal trial has been delayed significantly longer than expected, Mot. ¶ 2, (3) the criminal allegations do not matter to Cobra's claims, Mot. ¶¶ 3, 27, and (4) the FEMA analysis has been excessively delayed, Mot. ¶¶ 4, 29, merely reiterate points that counsel for Cobra made at the last status conference relating to the stay of the Administrative Expense Motion in December 2020, and do not point to a single change in circumstances since that time. *See* Dec. 9, 2020 Hr'g Tr. 10–11 (remarks of Mr. Qureshi).

11

the same as the amount that Cobra has already been paid for this work. Accordingly, the current circumstances further justify maintaining the stay at this time.

**I.      The Stay Should Remain In Place At Least Until Parties Can Assess the FEMA Analysis And Confer**

25.      The FEMA Determination Memorandum—based upon a Cost Analysis that took the agency more than a year and a half to complete—is not "simply . . . one more data point . . . ." Mot. ¶ 4.  The Cost Analysis specified the amount that FEMA has approved as eligible for reimbursement to Cobra, stated FEMA's intent to de-obligate the $46 million it has disallowed, and explained why the subject charges were rejected.  After analysis of the spreadsheets and other documentation that support the Cost Analysis, the Government Parties expect that PREPA and Cobra will be able to narrow the amount in dispute (with respect to the First Contract and prior to consideration of the impact of the criminal proceeding) and provide detailed information as to remaining amounts in dispute, subject to any contract or other defenses arising from the pending criminal proceeding.  Because Cobra has already been paid roughly the same amount that FEMA has determined eligible under the First Contract, PREPA has not yet received any FEMA analysis of the charges under the Second Contract, and the criminal proceedings are ongoing, the stay of the Administrative Expense Motion should remain in place.

26.      Cobra argues that there is no need for the Court to wait before commencing its proceeding to determine the costs that should be paid Cobra, because FEMA and the RAND Corporation have both previously issued reports suggesting the fees Cobra charged were reasonable. Mot. ¶¶ 4, 29.  However, those two reports only addressed whether the rates charged by Cobra—the price sheet for work under the contract—were reasonable.  Both reports did so conclude, as do the new FEMA Cost Analysis and the Determination Memorandum that implemented its findings.  However, the $46 million disallowance on the First Contract was not

based on whether the *rates and prices* stated in the Cobra–PREPA contract were reasonable, but on whether *the actual work performed* met the requirements of and were consistent with the contract. Cobra also repeats the canard that the FEMA analysis is solely an investigation into FEMA's and PREPA's actions, not Cobra's. Mot. ¶¶ 4, 29. This is simply untrue. The Cost Analysis and Determination Memorandum provide clear conclusions as to whether the services Cobra billed for were "reasonable and necessary" expenses of preserving the debtor.

27.     Given the relevance of FEMA's analyses of the Cobra contracts to the issues the Court will have to resolve, it would make no sense to lift the stay now before Cobra and PREPA have had an opportunity to review the analyses, address any challenges through administrative appeals, and determine whether any additional documentation would demonstrate that the amounts disallowed by FEMA were properly incurred and invoiced under the Cobra Contracts. *See Microfinancial, Inc.*, 385 F.3d at 78 ("(vii) the status of the cases"). If PREPA were forced to start litigating the Administrative Expense Motion before FEMA's analyses regarding both contracts are complete, PREPA and the Court would be deprived of a key piece of evidence as to the reasonableness of Cobra's charges, and force PREPA to engage in a duplicative, costly, and time-consuming review of all the same issues itself. Accordingly, the hardship to PREPA would be significant if the stay were lifted now. *Id.* ("(ii) the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem"). Likewise, it is inefficient to expend judicial resources to litigate Cobra's Administrative Expense Motion in a piecemeal fashion now, when the FEMA analyses might provide the parties with most if not all of the information they need to resolve or litigate this dispute (subject to any contract defenses arising from the criminal case). *See id.* ("(iii) the convenience of both the civil and criminal courts").

13

## II.     The Stay Should Remain In Place During the Pending Criminal Matter

28.     Despite delays (for reasons that have nothing to do with PREPA), the criminal trial of Cobra's former president and certain FEMA officials remains pending and discovery in connection with the criminal charges continues to proceed.

29.     To fully determine whether Cobra is entitled to an administrative expense claim under the Cobra Contracts, and whether the result of the criminal matter might trigger additional contract defenses or FEMA cost disallowances under 2 C.F.R. § 200.339, PREPA may have to obtain discovery relating to these alleged criminal activities.  However, while the criminal trial is pending, any discovery would be duplicative of proceedings in the criminal trial, and could be hampered by defendants in the criminal trial invoking their Fifth Amendment privileges.  As this Court and others have held before, this justifies the continued imposition of the stay.  *See, e.g., Adams*, 2020 U.S. Dist. LEXIS 93355, at *3-4 (stay of civil proceedings granted "even though none of the defendants is a party to the criminal matter, the parallel civil and criminal proceedings could present some hardship for Defendants and Plaintiff. The parties' ability to obtain information relevant, if not essential, to their claims and defenses could be impacted by [the criminal defendant's] potential assertion of his Fifth Amendment rights in the civil proceeding and by other possible limitations on the availability of information related to the criminal proceeding."); *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1138-41 (S.D.N.Y. 1995) (staying civil proceeding given pending criminal proceeding to avoid impairing criminal defendants' Fifth Amendment rights and to avoid "duplicative discovery efforts").[10]

---

[10] *D.R. v. Bigda*, No. 3:20-cv-30085-MGM, 2021 U.S. Dist. LEXIS 52067 (D. Mass. Mar. 18, 2021) does not support Cobra's position.  There, only one of the defendants was the subject of a criminal trial that involved facts overlapping the civil case.  *Id.* at *8.  The court thus allowed discovery of the other defendants, and of certain matters relating to the criminal defendant which would not be impacted by the criminal trial, while staying proceedings overlapping with

30.     As PREPA has previously explained in detail,[11] there are a variety of ways in which, if the allegations contained in the Indictment are true, PREPA's purported liability to Cobra may be reduced or even eliminated entirely, including due to breach of Cobra's duty of complete loyalty owed to PREPA (First Contract, art. 21), Cobra's responsibility to reimburse PREPA for consequences flowing from Cobra's violations of law (First Contract, art. 68), penalties or termination rights granted to PREPA from disclosure violations pursuant to Puerto Rico ethics laws (First Contract, art. 43), and other defenses under the Cobra Contracts and Puerto Rico law. The issues in the various proceedings thus significantly overlap. *Adams*, 2020 U.S. Dist. LEXIS 93355, at *3 ("the degree to which the civil issues overlap with the criminal issues").  Contrary to Cobra's suggestion, the overlap does not have to be 100% for this factor to lean in favor of maintaining the stay.  *See, e.g., Green v. Cosby*, 177 F. Supp. 3d 673, 679-80 (D. Mass. 2016) (stay of civil action even where issues in civil and criminal proceedings were different); *United Techs. Corp. v. Dean*, 906 F. Supp. 27, 29 (D. Mass. 1995) (staying testimonial discovery of the defendant despite that the civil and criminal matters were not "entirely parallel"). Indeed, Cobra has admitted that "there may be underlying facts in common between the Criminal Matter and the Administrative Expense Motion." *See* Mot. ¶ 25.[12]

---

the criminal trial, including those that could have been impacted by the defendant's Fifth Amendment privileges.  *Id.*  Here, it does not make sense to litigate the Administrative Expense Motion now, when (i) there is or at least could be an overlap of the issues concerning the reasonableness of services provided by Cobra and the allegation against Cobra's former president, *see also* ¶ 28; and (ii) FEMA's analysis of the Cobra Contracts will likely substantially reduce the need for discovery.  Moreover, the criminal trial will hinder discovery relating to issues at the heart of PREPA's defenses to liability.

[11] *See, e.g.*, Opposition of the Oversight Board, AAFAF, and PREPA to Cobra Acquisition LLC's Urgent Motion to Modify the Stay Order and Allow the Undisputed Tax Claims ¶¶ 45–52, ECF No. 12690.

[12] While Cobra asserts there is discovery "that will far exceed any testimony or evidence presented in the Criminal Matter," Mot. ¶ 28, that is beside the point.   Regardless of non-overlapping discovery, PREPA will be hampered in obtaining discovery on those matters while the criminal trial is pending, for example due to the criminal defendant's Fifth Amendment privileges

31.     Cobra fails to rebut this overlap and continues to try to distance itself from the Indictment by reiterating that it is not, itself, a defendant.  Mot. ¶¶ 1, 5.  The plain fact remains, however, that the criminal indictment alleges that the president of Cobra in 2017 and 2018—the period when Cobra obtained its contracts with PREPA and performed the work invoiced under its contracts—took various illegal actions in his capacity as president of Cobra to obtain more work and fees from PREPA *for Cobra*, and none of the contractual provisions require that Cobra itself be convicted of a crime.[13]  Indeed the Indictment alleges that in exchange for things of value from Cobra's President at the time, Tribble took governmental action to "advance Cobra's interests" and to "secure favorable treatment for Cobra[.]" Indictment ¶ 43.  Cobra's later action to dismiss its President does not excuse Cobra itself from responsibility for the actions taken by its President while in office.

32.     Cobra seizes on the fact the criminal trial has been delayed longer than expected, Mot. ¶ 2, but this is largely due to the COVID-19 pandemic and is through no fault of PREPA's.  At the same time, the criminal trial continues to move forward.  *Microfinancial, Inc.*, 385 F.3d at 78 ("(vii) the status of the cases").  It is regrettable that the criminal trial has been delayed as long as it has, but such delay alone, particularly in the midst of a global pandemic, is not itself a reason to lift the stay on the Administrative Expense Motion, especially while the FEMA analyses of the Cobra Contracts is still ongoing.  *See, e.g.*, *Sea Salt, LLC v. Bellerose*, 2:18-cv-00413-JAW, 2020 U.S. Dist. LEXIS 84075, at *5 (D. Me. May 15, 2020) (extending stay of civil proceeding even

---

[13] Cobra tries to make much of the fact that only Cobra's former president, and not Cobra itself, has been indicted. Mot. ¶ 25.  Courts have nonetheless ordered the stay of civil actions where "even though none of the defendants is a party to the criminal matter, the parallel civil and criminal proceedings could present some hardship for Defendants and Plaintiff" including by hampering "[t]he parties' ability to obtain information relevant, if not essential, to their claims and defenses" due to the criminal defendant's "potential assertion of his Fifth Amendment rights in the civil proceeding and by other possible limitations on the availability of information related to the criminal proceeding." *Adams*, 2020 U.S. Dist. LEXIS 93355, at *3–4.

where it had already been pending for two years even though criminal indictment had not yet been filed where there was "substantial overlap" between civil and criminal cases); *Water Quality Prot. Coalition v. Mun. of Arecibo*, 858 F. Supp. 2d 203, 212-13 (D.P.R. 2012) (extending stay of civil proceeding even where stated reason for stay was significantly delayed beyond the time expected, in deference to government's stated interests). Cobra again suggests at least some proceedings should begin in connection with the Administrative Expense Motion. Mot. ¶ 21. But again, almost all the discovery that would be needed by PREPA would either duplicate the issues being investigated by FEMA or would relate to the criminal allegations.

### III.   PREPA's and the Public's Interests Outweigh Cobra's Asserted Harm

33.    Cobra's alleged harm continues to be outweighed by PREPA's and the public's interests. As this Court has previously held, because PREPA cannot be required to pay Cobra until the effective date of a plan of adjustment, "Cobra is . . . unlikely to be prejudiced by a delay in adjudication of the Administrative Expense Motion." First Stay Order 2–3. Instead of disputing this, Cobra argues that there is some "value" in having an allowed administrative expense claim, without explaining what that value is, and wrongly analogizing its situation to LUMA Energy.[14] Mot. ¶¶ 4, 21. Cobra's argument misses the point—the amount PREPA owes Cobra is precisely the issue the parties dispute. As stated above, the dispute cannot be fully and fairly adjudicated until the criminal matter has concluded. Cobra will not suffer any significant prejudice where the delay is necessary to fully and fairly determine whether Cobra is entitled to the costs it claims. In any event, PREPA's need for discovery might be largely truncated by FEMA's conclusions regarding the propriety of Cobra's charges under both contracts.

---

[14] LUMA Energy requires allowance of an administrative claim for its fees, which are not in dispute, as a backstop to ensure it is paid when PREPA emerges from Title III, in the event it is not timely paid under its Operation and Maintenance Agreement. Cobra will be paid any allowed and unpaid administrative claim when PREPA exits Title III, but its fees are currently in dispute.

34.    Cobra also argues once again that its claims are accruing interest at the rate of
$3 million per month and thus PREPA's stakeholders are being harmed by the continued stay.
Mot. ¶¶ 5, 22.  This argument fails.  While interest may allegedly continue to accrue until Cobra
is paid, and PREPA cannot be required to pay Cobra any earlier than the effective date of a plan,
PREPA may be deprived of key evidence if litigated before the criminal trial occurs.  Moreover,
if Cobra is entitled to interest, that is a further reason why delay is not prejudicial to it.

## CONCLUSION

35.    For the reasons set forth herein, the Government Parties request the Court deny
Cobra's Renewed Lift Stay Motion in its entirety.

[*Remainder of Page Intentionally Left Blank*]

New York, New York

June 4, 2021

Respectfully submitted,

**O'NEILL & BORGES LLC**

By: /s/  Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944
Email: hermann.bauer@oneillborges.com

**PROSKAUER ROSE LLP**

By: /s/ Paul V. Possinger
Martin J. Bienenstock*
Paul V. Possinger*
Ehud Barak*
Gregg M. Mashberg*
Eleven Times Square New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: mbienenstock@proskauer.com
        ppossinger@proskauer.com
        ebarak@proskauer.com
        gmashberg@proskauer.com

* admitted *pro hac vice*

*Attorneys for the Financial Oversight and*
*Management Board and as representative*
*of the Puerto Rico Electric Power Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**.

By: /s/ Katiuska Bolaños
Katiuska Bolaños
kbolanos@diazvaz.com
USDC-PR 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 1105
San Juan, PR  00922-1689
Tel.: (787) 395-7133
Fax. (787) 497-9664

*Co-Attorneys for Puerto Rico Electric Power*
*Authority*

**MARINI PIETRANTONI MUÑIZ LLC**

By: /s/ Luis C. Marini-Biaggi
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
250 Ponce de León Ave.
Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494
Email: lmarini@mpmlawpr.com
        cvelaz@mpmlawpr.com

*Co-Attorneys for the Puerto Rico Fiscal Agency*
*and Financial Advisor Authority*

**O'MELVENY & MYERS LLP**

By: /s/  Maria J. DiConza
John J. Rapisardi*
Maria J. DiConza*
7 Times Square

19

New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
          mdiconza@omm.com

-and-

Peter Friedman*
1625 Eye Street, NW
Washington, D.C. 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
pfriedman@omm.com

-and-

Elizabeth L. McKeen*
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994
emckeen@omm.com

* admitted pro hac vice

*Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory
Authority and Puerto Rico Electric Power
Authority*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record and CM/ECF participants in this case.

<u><em>/s/ Hermann D. Bauer</em></u>

Hermann D. Bauer