## <u>ANEXO A</u>

PLAN

TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
DISTRITO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>LA JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>como representante de<br><br>EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, EL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y LA AUTORIDAD DE EDIFICIOS PÚBLICOS DE PUERTO RICO,<br><br>Deudores. | PROMESA<br>Título III<br><br>No. 17 BK 3283-LTS<br><br>(Administrada conjuntamente) |

**TERCER PLAN DE AJUSTE CONJUNTO ENMENDADO
ELABORADO CONFORME AL TÍTULO III DEL
ESTADO LIBRE ASOCIADO DE PUERTO RICO, *ET AL.***

**PROSKAUER ROSE LLP**

Eleven Times Square
Nueva York, Nueva York 10036
Teléfono: (212) 969-3000
Fax: (212) 969-2900

**O'NEILL & BORGES LLC**

250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Teléfono: (787) 764-8181
Fax: (787) 753-8944

*Abogados para la Junta de Supervisión y Administración Financiera como representante
de los Deudores en sus Casos de Título III*

Fechado: 11 de mayo de 2021

# Índice

**Página**

ARTÍCULO I DEFINICIONES ................................................................27

1.1       Reclamación de Bonos del ELA 2011 ......................................................27

1.2       Reclamación de Bonos del ELA 2011 (Assured) .......................................27

1.3       Reclamación de Bonos del ELA 2011 (Elección Imponible) ......................27

1.4       Recuperación de Bonos del ELA 2011 ....................................................28

1.5       Bonos del ELA 2011 ...............................................................................28

1.6       Reclamación de Bonos de Garantía del ELA 2011 ...................................28

1.7       Reclamación de Bonos de Garantía del ELA 2011 (Elección Imponible)....28

1.8       Recuperación de Bonos de Garantía del ELA 2011 ..................................29

1.9       Distribución de Bonos Imponibles de Garantía del ELA 2011 ...................29

1.10      Reclamación de Bonos Serie D/E/PIB del ELA 2011 ................................29

1.11      Reclamación de Bonos Serie D/E/PIB del ELA 2011 (Assured) ................29

1.12      Reclamación de Bonos Serie D/E/PIB del ELA 2011 (Elección Imponible) 29

1.13      Recuperación de Bonos Serie D/E/PIB del ELA 2011 ...............................30

1.14      Bonos Serie D/E/PIB del ELA 2011 .........................................................30

1.15      Distribución de Bonos Imponibles Serie D/E/PIB del ELA 2011 ...............30

1.16      Distribución de Bonos Imponibles del ELA 2011 ......................................30

1.17      Reclamación de Bonos de la AEP 2011 ...................................................30

1.18      Recuperación de Bonos de la AEP 2011...................................................30

1.19      Bonos de la AEP 2011 .............................................................................31

1.20      Reclamación de Bonos del ELA 2012 ......................................................31

1.21      Reclamación de Bonos del ELA 2012 (Assured) .......................................31

1.22      Reclamación de Bonos del ELA 2012 (Elección Imponible) ......................31

1.23      Recuperación de Bonos del ELA 2012 ....................................................31

1.24      Bonos del ELA 2012 ...............................................................................32

1.25      Reclamación de Bonos de Garantía del ELA 2012 ...................................32

1.26      Reclamación de Bonos de Garantía del ELA 2012 (Elección Imponible)....32

1.27      Reclamación de Bonos de Garantía del ELA 2012 ...................................33

1.28      Distribución de Bonos Imponibles de Garantía del ELA 2012 ...................33

1.29      Distribución de Bonos Imponibles del ELA 2012 ......................................33

1.30      Reclamación de Bonos de la AEP 2012....................................................33

1.31      Recuperación de Bonos de la AEP 2012...................................................33

1.32      Bonos de la AEP 2012.............................................................................33

1.33      Reclamación de Bonos del ELA 2014 ......................................................33

1.34      Reclamación de Bonos del ELA 2014 (Elección Imponible) ......................34

1.35      Recuperación de Bonos del ELA 2014 ....................................................34

1.36    Bonos del ELA 2014 ................................................................34
1.37    Reclamación de Bonos de Garantía del ELA 2014 ..............................34
1.38    Reclamación de Bonos de Garantía del ELA 2014 (Elección Imponible) ....35
1.39    Distribución de Bonos Imponibles de Garantía del ELA 2014 ...................35
1.40    Distribución de Bonos Imponibles del ELA 2014 ...............................35
1.41    5.5 % de IVU ......................................................................35
1.42    AAFAF ..............................................................................35
1.43    Orden de la ACR ..................................................................35
1.44    Ley 106 .............................................................................35
1.45    Junta de la Ley 106 ..............................................................35
1.46    Reclamación de Participante del SRE Activo ..............................35
1.47    Reclamación de Participante del SRJ Activo ..............................36
1.48    Participante Activo ..............................................................36
1.49    Reclamación de Participante del SRM Activo ..............................36
1.50    Fecha Límite de Reclamación Administrativa................................36
1.51    Reclamación de Gastos Administrativos....................................36
1.52    Orden de RAL (Resolución Alternativa de Litigios) .................................36
1.53    Procedimientos de RAL...........................................................36
1.54    Filial .................................................................................36
1.55    AFSCME .............................................................................37
1.56    Contratos de negociación colectiva de AFSCME .......................37
1.57    Reclamaciones de Empleados de AFSCME................................37
1.58    Acuerdo de Apoyo al Plan de AFSCME....................................37
1.59    Pliego de Términos de AFSCME ...........................................37
1.60    Permitida ...........................................................................38
1.61    Reclamación Permitida ..........................................................38
1.62    Ambac ...............................................................................38
1.63    Litigio Relacionado a Designaciones........................................39
1.64    Activos ..............................................................................39
1.65    Assured...............................................................................39
1.66    Precio de aceleración de Assured ..............................................39
1.67    Opción de Pago de Precio de Aceleración de Assured................................39
1.68    Elecciones de Bonistas de Assured..........................................40
1.69    Reclamaciones de la ACT/ELA de Assured................................40
1.70    CVI de Assured....................................................................40
1.71    Elección de Assured..............................................................40
1.72    Pólizas de Seguro de Assured .................................................40
1.73    Reclamaciones de Bonos Asegurados de Assured..........................40

3

| | | |
|---|---|---|
| 1.74 | Bonos Asegurados de Assured | 40 |
| 1.75 | Bonista Asegurado de Assured | 41 |
| 1.76 | Nuevos Bonos de OG de Assured | 41 |
| 1.77 | Nuevos Valores de Assured | 41 |
| 1.78 | Tratamiento de Assured | 41 |
| 1.79 | Acciones Preventivas | 41 |
| 1.80 | Intereses de Acciones de Revocación del ELA | 41 |
| 1.81 | Intereses de Acciones de Revocación del SRE | 41 |
| 1.82 | Fideicomiso de Acciones de Revocación | 42 |
| 1.83 | Contrato de Fideicomiso de Acciones de Revocación | 42 |
| 1.84 | Activos del Fideicomiso de Acciones de Revocación | 42 |
| 1.85 | Beneficiarios del Fideicomiso de Acciones de Revocación | 42 |
| 1.86 | Junta del Fideicomiso de Acciones de Revocación | 42 |
| 1.87 | Fideicomisario de Acciones de Revocación | 42 |
| 1.88 | Intereses del Fideicomiso de Acciones de Revocación | 42 |
| 1.89 | Fecha de Elección | 42 |
| 1.90 | Papeleta/Formulario de Elección | 43 |
| 1.91 | Código de Quiebras | 43 |
| 1.92 | Reglamento sobre Quiebras | 43 |
| 1.93 | Fecha Límite | 43 |
| 1.94 | Órdenes de Fecha Límite | 43 |
| 1.95 | Aportación de Base | 43 |
| 1.96 | Fecha de Reducción de Beneficios | 44 |
| 1.97 | Recuperación de Beneficios | 44 |
| 1.98 | Reclamación de Bonos | 44 |
| 1.99 | Categoría de Recuperación de Bonos | 44 |
| 1.100 | Elección de los Bonistas | 44 |
| 1.101 | Día Hábil | 44 |
| 1.102 | Mejoras Capitales | 44 |
| 1.103 | Efectivo | 45 |
| 1.104 | Causas de Acción | 45 |
| 1.105 | ADCC | 45 |
| 1.106 | Bonos de la ADCC | 45 |
| 1.107 | Reclamación de Bonos de la ADCC | 45 |
| 1.108 | Costos de Perfeccionamiento de la ADCC | 45 |
| 1.109 | Acreedores con Tasa de Restricción de la ADCC | 46 |
| 1.110 | Porcentaje de la Tasa de Restricción de la ADCC | 46 |
| 1.111 | Bono de Navidad | 46 |

1.112    Reclamación ...........................................................................46

1.113    Clase......................................................................................46

1.114    Acciones de Recuperación ....................................................47

1.115    Contrato de Emisión de CVI de Recuperación ......................47

1.116    CVI de Recuperación .............................................................47

1.117    Recuperación de Recuperación ..............................................47

1.118    COFINA .................................................................................47

1.119    Bonos de COFINA .................................................................47

1.120    Contrato de Emisión de Bonos COFINA ...............................47

1.121    Legislación de Bonos COFINA ..............................................48

1.122    Orden de Confirmación de COFINA ......................................48

1.123    Plan de COFINA ....................................................................48

1.124    ELA........................................................................................48

1.125    Constitución del ELA .............................................................48

1.126    Elección del ELA ...................................................................48

1.127    Plan de Instrumentalidades del ELA......................................48

1.128    Legislatura del ELA ...............................................................48

1.129    Fecha de Petición del ELA .....................................................48

1.130    Caso de Título III del ELA .....................................................48

1.131    Tope global.............................................................................48

1.132    Fecha de Confirmación...........................................................48

1.133    Vista de Confirmación............................................................49

1.134    Orden de Confirmación ..........................................................49

1.135    Grupo de Deuda Constitucional .............................................49

1.136    Miembros del Grupo de Deuda Constitucional ......................49

1.137    Costos de Perfeccionamiento .................................................49

1.138    Reclamación de Conveniencia ...............................................49

1.139    Acreedor.................................................................................49

1.140    Comité de Acreedores ............................................................50

1.141    CUSIP ....................................................................................50

1.142    Documentos del Fideicomiso de custodia ..............................50

1.143    CVI .........................................................................................50

1.144    Contrato de Emisión de CVI ..................................................50

1.145    Legislación de CVI.................................................................50

1.146    Reserva de pago de CVI .........................................................50

1.147    Fideicomisario de CVI............................................................51

1.148    Reclamaciones de Asignaciones del ELA ..............................51

1.149    Reclamación de Bonos del ELA..............................................51

1.150    Reclamaciones de Bonos del ELA (Aseguradas)........................................51

1.151    Plan Fiscal del ELA ...............................................................................51

1.152    Reclamación sin Garantía General del ELA .............................................52

1.153    Reclamaciones de Bonos de Garantía del ELA .........................................52

1.154    Reclamaciones de Bonos de Garantía del ELA (Aseguradas) ...................52

1.155    Recuperación de GUC del ELA ...............................................................52

1.156    Reclamación del Centro de Convenciones/ELA ........................................52

1.157    Recuperación de la Recuperación del Centro de Convenciones/ELA ..........53

1.158    Reclamación de la ACT/ELA ..................................................................53

1.159    Recuperación de Recuperación de la ACT/ELA .......................................53

1.160    Reclamación de la AMA/ELA ..................................................................53

1.161    Recuperación de Recuperación de la AMA/ELA ......................................53

1.162    Reclamación de Impuesto de Ron de la AFI/ELA .....................................53

1.163    Recuperación de Recuperación del Impuesto de Ron de la AFI/ELA..........54

1.164    Reclamación de Productores Lácteos ......................................................54

1.165    Resolución de Productores Lácteos .........................................................54

1.166    Deuda ....................................................................................................54

1.167    Política de Gestión de la Deuda ..............................................................54

1.168    Deudores................................................................................................54

1.169    Período de la Política de Deuda ..............................................................54

1.170    Ingresos de Política de Deuda .................................................................55

1.171    Objeciones Relacionadas con Deuda ........................................................56

1.172    Ley de Responsabilidad en la Emisión de Deuda ......................................57

1.173    Fondo de Amortización de la Deuda .........................................................57

1.174    Fondo de Reserva de Amortización de la Deuda ........................................57

1.175    Requisito del Fondo de Reserva de Amortización de la Deuda ...................57

1.176    Deudores.................................................................................................57

1.177    Fecha de Emisión Estimada .....................................................................57

1.178    Documentos Definitivos ...........................................................................58

1.179    No permitidas..........................................................................................58

1.180    Agente Pagador.......................................................................................58

1.181    Declaración de Divulgación .....................................................................58

1.182    Vista de Declaración de Divulgación ........................................................58

1.183    Orden de Declaración de Divulgación .......................................................58

1.184    Reclamación Controvertida.......................................................................59

1.185    Condiciones de Distribución .....................................................................59

1.186    Fecha de Distribución ..............................................................................59

1.187    Fecha de Registro de Distribución............................................................59

6

1.188    Vigencia ...................................................................................59
1.189    Reclamación de Expropiación ...................................................................60
1.190    Procedimiento de Expropiación .................................................................60
1.191    Ley de Incentivos de Energía .................................................................60
1.192    Reclamaciones de Incentivos de Energía .....................................................60
1.193    Entidad ...................................................................................60
1.194    SRE ...................................................................................60
1.195    Reclamación de Bonos del SRE ...............................................................60
1.196    Recuperación de Bonos del SRE ...............................................................61
1.197    Bonos del SRE ...............................................................................61
1.198    Reclamación sin Garantía General del SRE .................................................61
1.199    Fondo de GUC del SRE ...........................................................................61
1.200    Litigio del SRE ...............................................................................62
1.201    Reclamación de Participante del SRE ........................................................62
1.202    Fecha de Petición del SRE .....................................................................62
1.203    Precio de la Cartera del SRE ..................................................................63
1.204    Cartera de Capital Privado del SRE ...........................................................63
1.205    Acciones de Recuperación del SRE ...........................................................63
1.206    Resolución del SRE ...............................................................................63
1.207    Estipulación del SRE ...........................................................................63
1.208    Acción de Expropiación del SRE ...............................................................63
1.209    Caso de Título III del SRE .....................................................................63
1.210    Fideicomiso del SRE ...............................................................................64
1.211    Excedente en Caja ...............................................................................64
1.212    Contrato Condicional .............................................................................64
1.213    FGIC ...................................................................................64
1.214    Certificados de FGIC .............................................................................64
1.215    Reclamación de Bonos Asegurados por FGIC ...........................................64
1.216    Bonos Asegurados por FGIC .....................................................................64
1.217    Pólizas de Seguros de FGIC .....................................................................64
1.218    Fideicomiso de FGIC .............................................................................64
1.219    Activos del Fideicomiso de FGIC ...............................................................64
1.220    Orden Final ...................................................................................65
1.221    Plan Fiscal ...................................................................................65
1.222    Exceso del Plan Fiscal .........................................................................65
1.223    Año Fiscal ...................................................................................65
1.224    BGF ...................................................................................65
1.225    Préstamos a la ACT del BGF .....................................................................65

1.226    Determinación de la Prioridad de Préstamos del BGF ...............................66

1.227    Fondo General ...............................................................................................66

1.228    Reclamaciones sin Garantía Generales ........................................................66

1.229    Bonos de OG .................................................................................................66

1.230    CVI de OG.....................................................................................................66

1.231    Contrato de Emisión de CVI de OG .............................................................66

1.232    Grupo de OG .................................................................................................66

1.233    Contrato Anexo de la AEP/OG .....................................................................66

1.234    Costos de Perfeccionamiento de la AFI/OG.................................................67

1.235    Acuerdo de Litisconsorcio de la AEP/OG ...................................................67

1.236    Acreedores de Litisconsorcio de la AEP/OG ...............................................67

1.237    Fecha límite del Litisconsorcio de la AEP/OG............................................67

1.238    Acuerdo de Apoyo al Plan de la AEP/OG ...................................................67

1.239    Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG ..........................67

1.240    Acreedores con Tasa de Restricción del Acuerdo de Apoyo al Plan de la
         AEP/OG .........................................................................................................67

1.241    Porcentaje de la Tasa de Restricción de la AEP/OG....................................68

1.242    Período de Tasas de Restricción del Acuerdo de Apoyo al Plan de la
         AEP/OG .........................................................................................................68

1.243    Tasas de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG ............68

1.244    Obtención del Umbral del Acuerdo de Apoyo al Plan de la AEP/OG..........68

1.245    Organización Gubernamental........................................................................69

1.246    Partes del Gobierno .......................................................................................69

1.247    Reclamaciones Eximidas por el Gobierno ...................................................69

1.248    Partes Eximidas del Gobierno ......................................................................70

1.249    Reclamación Gracia Gracia ..........................................................................70

1.250    Acción del ELA Gracia Gracia .....................................................................70

1.251    Acción Federal Gracia Gracia .......................................................................70

1.252    Resolución Gracia Gracia .............................................................................70

1.253    Préstamo de Helicóptero de la ASG .............................................................70

1.254    ACT ...............................................................................................................70

1.255    Bonos de la ACT 68 ......................................................................................71

1.256    Bonos de la ACT 98 ......................................................................................71

1.257    Bonos de la ACT 98 Prioritarios (Senior) ...................................................72

1.258    Bonos de la ACT 98 Subordinados ..............................................................72

1.259    Bonos de la ACT...........................................................................................72

1.260    Contrato Anexo de la ACT/ADCC................................................................73

1.261    Acuerdo de Litisconsorcio de la ACT/ADCC ..............................................73

1.262    Fecha límite del Litisconsorcio de la ACT/ADCC ......................................73

1.263    Acuerdo de Apoyo al Plan de la ACT/ADCC ...........................................73

1.264    Acreedores del Acuerdo de Apoyo al Plan de la ACT/ADCC....................73

1.265    Período de Tasas de Restricción del Acuerdo de Apoyo al Plan de la
ACT/ADCC..............................................................................................73

1.266    Obtención del Umbral del Acuerdo de Apoyo al Plan de la ACT/ADCC ....74

1.267    CVI de Recuperación de la ACT...............................................................74

1.268    Orden de Confirmación de la ACT ............................................................74

1.269    Vigencia de la ACT .................................................................................74

1.270    Plan de la ACT .......................................................................................74

1.271    Caso de Título III de la ACT....................................................................74

1.272    Acreedores del Acuerdo de Apoyo al Plan Iniciales ..................................75

1.273    Acreedores Iniciales del Acuerdo de Apoyo al Plan de la AEP/OG ............75

1.274    Acreedores Iniciales del Acuerdo de Apoyo al Plan de la ACT/ADCC .......75

1.275    Reclamación de Bonos Asegurados ...........................................................75

1.276    Acciones de Invalidez...............................................................................75

1.277    CTI.........................................................................................................75

1.278    SII ..........................................................................................................75

1.279    SRJ.........................................................................................................75

1.280    Reclamación de Participante del SRJ .........................................................75

1.281    CDCL......................................................................................................75

1.282    Tenedores de la CDLC .............................................................................75

1.283    Gravamen ...............................................................................................76

1.284    Acciones de Impugnación de Gravamen.....................................................76

1.285    Levantar Mociones de Paralización ...........................................................76

1.286    Lista de Acreedores .................................................................................76

1.287    Normas de Quiebra Locales .....................................................................77

1.288    Amortización de la Deuda Anual Máxima ..................................................77

1.289    Monto de Elección de Bonos Imponible Máximo ......................................77

1.290    IVU Medido............................................................................................77

1.291    Centros Médicos .....................................................................................77

1.292    Reclamaciones de Centros Médicos ..........................................................78

1.293    Litigio de Centros Médicos ......................................................................79

1.294    Bonos para Medicina................................................................................79

1.295    Beneficio de Seguro Médico .....................................................................80

1.296    Monolíneas .............................................................................................80

1.297    Pensión Base Mensual .............................................................................80

1.298    Modificación de Beneficios Mensuales .....................................................80

1.299    Bono de Navidad Mensual........................................................................81

1.300    Bonificación para Medicina Mensual ..................................................81
1.301    Bonificación de Verano Mensual ......................................................81
1.302    National ...........................................................................81
1.303    Precio de Aceleración de National ...................................................81
1.304    Certificados de National ...........................................................81
1.305    Contraprestación por Conmutación de National .....................................81
1.306    Tratamiento de Conmutación de National .............................................81
1.307    Reclamaciones de Bonos de la ACT/ELA de National .............................81
1.308    Cuenta de Plica de National ........................................................81
1.309    Pólizas de Seguro de National.......................................................81
1.310    Reclamaciones de Bonos Asegurados de National ...................................82
1.311    Bonos Asegurados de National ......................................................82
1.312    Tratamiento de No Conmutación de National ..........................................82
1.313    Contraprestación del Plan de National ..............................................82
1.314    Tratamiento de National ............................................................82
1.315    Fideicomiso de National ............................................................82
1.316    Reclamaciones de Bonos del SRE Permitidas Netas ................................82
1.317    Deuda con Garantía Impositiva Neta .................................................82
1.318    Nuevos CAB de OG al 5.0 % ........................................................82
1.319    Nuevos CAB de OG al 5.375 % ......................................................83
1.320    Nuevos Bonos de OG ................................................................83
1.321    Contrato de Emisión de Nuevos Bonos de OG .......................................83
1.322    Legislación de Nuevos Bonos de OG ................................................83
1.323    Fideicomisario de Nuevos Bonos de OG .............................................83
1.324    Nuevos CIB de OG .................................................................83
1.325    Nuevos Bonos de Refinanciamiento de OG ..........................................84
1.326    Nuevos Bonos de la ACT ...........................................................84
1.327    Contrato de Emisión de Nuevos Bonos de la ACT ..................................84
1.328    Notas de Ahorro ...................................................................84
1.329    Reclamación de Empleados de Desarrollo Normal....................................84
1.330    Condición de Rendimiento Superior.................................................84
1.331    Pendiente .........................................................................85
1.332    Junta de Supervisión ..............................................................85
1.333    Participante .......................................................................85
1.334    PayGo..............................................................................85
1.335    AEP................................................................................85
1.336    Reclamación de Gastos Administrativos de la AEP ................................85
1.337    Reclamaciones de Bonos de la AEP .................................................85

1.338    Distribución de Bonos de la AEP ..........................................................85

1.339    Bonos de la AEP ...................................................................................85

1.340    Efectivo de la AEP ................................................................................85

1.341    Reclamación con Garantía Prendaria de la ARD/AEP............................86

1.342    Reclamación sin Garantía de la ARD/AEP ...........................................86

1.343    Reclamación sin Garantía General de la AEP .......................................86

1.344    Litigio de la AEP ..................................................................................86

1.345    Fecha de Petición de la AEP .................................................................86

1.346    Bienes de la AEP...................................................................................86

1.347    Caso de Título III de la AEP .................................................................86

1.348    Escritura de Fideicomiso de la Reserva de Pensiones ...........................86

1.349    Fideicomiso de la Reserva de Pensiones ...............................................87

1.350    Persona .................................................................................................87

1.351    CFP ......................................................................................................87

1.352    Plan ......................................................................................................87

1.353    Complemento del Plan...........................................................................87

1.354    APA ......................................................................................................87

1.355    AAA ......................................................................................................87

1.356    AEE.......................................................................................................87

1.357    AFI........................................................................................................87

1.358    Notas de Bonos Anticipados de la AFI ..................................................87

1.359    Litigio de Notas de Bonos Anticipados de la AFI ..................................88

1.360    Profesional............................................................................................88

1.361    Reclamación Profesional .......................................................................88

1.362    PROMESA .............................................................................................88

1.363    Participación a Prorrata ........................................................................88

1.364    Acreedores del Acuerdo de Apoyo al Plan.............................................88

1.365    Tasas de Restricción del Acuerdo de Apoyo al Plan...............................88

1.366    Inversor de Puerto Rico .........................................................................89

1.367    Grupo QTCB .........................................................................................89

1.368    Porcentaje de Reducción........................................................................89

1.369    Personas Relacionadas...........................................................................89

1.370    Reclamaciones Eximidas........................................................................90

1.371    Partes Eximidas.....................................................................................90

1.372    Partes que Eximen .................................................................................90

1.373    ELA Reorganizado .................................................................................91

1.374    Deudores Reorganizados .......................................................................91

1.375    Estatutos de los Deudores Reorganizados ..............................................91

1.376    Acreedores con Tasa de Restricción ..............................................91
1.377    Reclamación de Bonos del ELA 2011 de Inversión.............................91
1.378    Reclamación de Bonos Serie D/E/PIB del ELA 2011 de Inversión .............91
1.379    Reclamación de Bonos de la AEP 2011 de Inversión .........................91
1.380    Reclamación de Bonos del ELA 2012 de Inversión.............................91
1.381    Reclamación de Bonos de la AEP 2012 de Inversión .........................91
1.382    Reclamación de Bonos del ELA 2014 de Inversión.............................91
1.383    Reclamaciones de Bonos del ELA de Inversión ................................92
1.384    Inversor por Cuenta Propia ...................................................92
1.385    Reclamaciones de Bonos de la AEP de Inversión ..............................92
1.386    Tasa de Apoyo de Inversión...................................................92
1.387    Devolución de Tasa de Apoyo de Inversión...................................92
1.388    Reclamación de Bonos del ELA Antiguos de Inversión .........................92
1.389    Reclamación de Bonos de la AEP Antiguos de Inversión ........................93
1.390    Pensionado......................................................................93
1.391    Reclamación de Pensionado....................................................93
1.392    Comité de Pensionados........................................................93
1.393    Acuerdo de Apoyo al Plan del Comité de Pensionados ..........................93
1.394    Impuesto sobre las Ventas ....................................................93
1.395    Reclamación Subordinada a la Sección 510(b) ................................93
1.396    Ley de Valores .................................................................93
1.397    Agente de Solicitud ...........................................................93
1.398    SPU ............................................................................94
1.399    Impuesto Medido Sustitutivo .................................................94
1.400    Bonos de Verano ..............................................................94
1.401    Syncora........................................................................94
1.402    Precio de Aceleración de Syncora ............................................94
1.403    Certificados de Syncora.......................................................94
1.404    Contraprestación por Conmutación de Syncora ...............................94
1.405    Tratamiento por Conmutación de Syncora ...................................94
1.406    Cuenta de Plica de Syncora ..................................................94
1.407    Reclamaciones de Bonos Asegurados de Syncora ............................95
1.408    Bonos Asegurados de Syncora ...............................................95
1.409    Pólizas de Seguro de Syncora ...............................................95
1.410    Tratamiento por No Conmutación de Syncora ...............................95
1.411    Contraprestación del Plan Syncora ..........................................95
1.412    Tratamiento de Syncora ......................................................95
1.413    Fideicomiso de Syncora.......................................................95

1.414    Sistema 2000.................................................................................95
1.415    Reclamación de Participantes del Sistema 2000........................................95
1.416    Distribuciones de Bonos Imponibles .....................................................95
1.417    Reclamaciones del ELA de Elección Imponible .......................................96
1.418    Nuevos Bonos de OG Imponibles .........................................................96
1.419    Reclamaciones de Crédito Fiscal...........................................................96
1.420    Deuda con Garantía Impositiva ............................................................97
1.421    Título III ........................................................................................97
1.422    Casos de Título III ............................................................................97
1.423    Tribunal del Título III ........................................................................97
1.424    Total de Beneficios Mensuales..............................................................97
1.425    SRM ................................................................................................97
1.426    Reclamación de Participantes del SRM ..................................................98
1.427    Documentación del Fideicomiso ...........................................................98
1.428    Distribución no Reclamada ..................................................................98
1.429    Arrendamiento en curso......................................................................98
1.430    Litigio de Uniformidad .......................................................................98
1.431    UPR.................................................................................................98
1.432    Reclamación de Bonos del ELA Antiguos ...............................................98
1.433    Reclamación de Bonos del ELA Antiguos (Assured) ................................99
1.434    Reclamación de Bonos del ELA Antiguos (National)................................99
1.435    Reclamación de Bonos de ELA Antiguos (Otros Asegurados) ...................99
1.436    Reclamación de Bonos del ELA Antiguos (Syncora) ................................99
1.437    Reclamación de Bonos del ELA Antiguos (Elección Imponible) ...............99
1.438    Recuperación de Bonos del ELA Antiguos ............................................100
1.439    Bonos del ELA Antiguos ...................................................................101
1.440    Reclamación de Bonos de Garantía del ELA Antiguos ............................102
1.441    Reclamación de Bonos de Garantía del ELA Antiguos (Assured) .............102
1.442    Reclamación de Bonos de Garantía del ELA Antiguos (National) ............102
1.443    Reclamación de Bonos de Garantía del ELA Antiguos
         (Otros Asegurados) ..........................................................................102
1.444    Reclamación de Bonos de Garantía del ELA Antiguos (Syncora).............103
1.445    Reclamación de Bonos de Garantía del ELA Antiguos
         (Elección Imponible) ........................................................................103
1.446    Recuperación de Bonos de Garantía del ELA Antiguos............................103
1.447    Distribución de Bonos Imponibles de Garantía del ELA Antiguos ............103
1.448    Reclamación de Bonos de la AEP Antiguos ...........................................103
1.449    Reclamación de Bonos de la AEP Antiguos (Assured).............................104
1.450    Reclamación de Bonos de la AEP Antiguos (National) ............................104

1.451    Reclamación de Bonos de la AEP Antiguos (Otros Asegurados) .............. 104

1.452    Reclamación de Bonos de la AEP Antiguos (Syncora) ............................ 104

1.453    Recuperación de Bonos de la AEP Antiguos ........................................... 104

1.454    Bonos de la AEP Antiguos ..................................................................... 105

1.455    Distribución de Bonos Imponibles Antiguos .......................................... 105

1.456    Otras definiciones .................................................................................. 106

1.457    Normas de Interpretación ....................................................................... 106

ARTÍCULO II CONCILIACIÓN Y RESOLUCIÓN DE
DISPUTAS/REESTRUCTURACIÓN DE ENTIDADES ............................................. 107

2.1    Resolución de Litigios .......................................................................... 107

2.2    Admisión de Reclamaciones de Bonos ................................................. 108

2.3    Relevos, Interdictos y Exculpaciones .................................................. 108

2.4    Compra y Venta de Determinados Activos del SRE ............................... 109

ARTÍCULO III DISPOSICIONES PARA EL PAGO DE RECLAMACIONES DE
GASTOS ADMINISTRATIVOS ................................................................................. 109

3.1    Reclamaciones de Gastos Administrativos .............................................. 109

3.2    Reclamaciones de Reembolso y Compensación Profesional .................... 110

3.3    Costos de Perfeccionamiento de la AEP/OG .......................................... 110

3.4    Honorarios Profesionales de AFSCME .................................................. 110

3.5    Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG ........... 111

3.6    Tasa de Apoyo de Inversión .................................................................. 113

3.7    Tasa de Restricción del SRE .................................................................. 113

3.8    Costos de Perfeccionamiento de la ADCC .............................................. 113

3.9    Tasa de Restricción de la ADCC ........................................................... 114

3.10    No Independencia .................................................................................. 115

ARTÍCULO IV CLASIFICACIÓN DE RECLAMACIONES ....................................... 115

4.1    Las reclamaciones se clasifican de la manera siguiente ........................... 115

ARTÍCULO V DISPOSICIONES PARA EL TRATAMIENTO
DE RECLAMACIONES DE BONOS DE LA AEP ANTIGUOS (CLASE 1) ................. 118

5.1    Tratamiento de Reclamaciones de Bonos de la AEP Antiguos ................. 118

ARTÍCULO VI DISPOSICIONES PARA EL TRATAMIENTO
DE RECLAMACIONES DE BONOS DE LA AEP ANTIGUOS
(ASSURED) (CLASE 2) ............................................................................................. 119

6.1    Tratamiento de Reclamaciones de Bonos de la AEP
Antiguos (Assured) ............................................................................... 119

ARTÍCULO VII DISPOSICIONES PARA EL TRATAMIENTO

DE RECLAMACIONES DE BONOS DE LA AEP ANTIGUOS
(NATIONAL) (CLASE 3) ............................................................................119

7.1    Tratamiento de Reclamaciones de Bonos de la AEP
       Antiguos (National) ...................................................................119

ARTÍCULO VIII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DE LA AEP ANTIGUOS
(OTROS ASEGURADOS) (CLASE 4) .........................................................119

8.1    Tratamiento de Reclamaciones de Bonos de la AEP Antiguos
       (Otros Asegurados) ....................................................................119

ARTÍCULO IX DISPOSICIONES PARA EL TRATAMIENTO
DE RECLAMACIONES DE BONOS DE LA AEP ANTIGUOS
(SYNCORA) (CLASE 5)...............................................................................120

9.1    Tratamiento de Reclamaciones de Bonos de la AEP
       Antiguos (Syncora) ....................................................................120

ARTÍCULO X DISPOSICIONES PARA EL TRATAMIENTO
DE RECLAMACIONES DE BONOS DE LA AEP ANTIGUOS
DE INVERSIÓN (CLASE 6).........................................................................120

10.1   Tratamiento de Reclamaciones de Bonos de la AEP
       Antiguos de Inversión................................................................120

ARTÍCULO XI DISPOSICIONES PARA EL TRATAMIENTO
DE RECLAMACIONES DE BONOS DE LA AEP 2011 (CLASE 7) ...........................120

11.1   Tratamiento de Reclamaciones de Bonos de la AEP 2011 ........................120

ARTÍCULO XII DISPOSICIONES PARA EL TRATAMIENTO
DE RECLAMACIONES DE BONOS DE LA AEP 2011
DE INVERSIÓN (CLASE 8).........................................................................121

12.1   Tratamiento de Reclamaciones de Bonos de la AEP 2011 de Inversión ....121

ARTÍCULO XIII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DE LA AEP 2012 (CLASE 9) ..................................121

13.1   Tratamiento de Reclamaciones de Bonos de la AEP 2012 ........................121

ARTÍCULO XIV DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DE LA AEP 2012 DE INVERSIÓN (CLASE 10) .....121

14.1   Tratamiento de Reclamaciones de Bonos de la AEP 2012 de Inversión ....122

ARTÍCULO XV DISPOSICIONES PARA EL TRATAMIENTO
DE RECLAMACIONES CON GARANTÍA PRENDARIA
DE LA AEP/ARD (CLASE 11) .....................................................................122

15.1   Tratamiento de Reclamaciones con Garantía Prendaria
       de la AEP/ARD...........................................................................122

ARTÍCULO XVI DISPOSICIONES PARA EL TRATAMIENTO DE

RECLAMACIONES SIN GARANTÍA GENERALES DE LA AEP (CLASE 12) .......... 123

    16.1     Tratamiento de Reclamaciones sin Garantía Generales de la AEP ............ 123

ARTÍCULO XVII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES SIN GARANTÍA DE LA AEP/ARD (CLASE 13) ........................ 123

    17.1     Tratamiento de Reclamaciones sin Garantía de la AEP/ARD .................. 123

ARTÍCULO XVIII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DEL ELA ANTIGUOS (CLASE 14) ........................ 123

    18.1     Tratamiento de Reclamaciones de Bonos del ELA Antiguos ................... 123

    18.2     Derecho de Elección para Reclamaciones de Bonos del ELA
             Antiguos (Elección Imponible) ................................................................ 124

ARTÍCULO XIX DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DEL ELA ANTIGUOS DE INVERSIÓN
(CLASE 15) ..................................................................................................................... 124

    19.1     Tratamiento de Reclamaciones de Bonos del ELA
             Antiguos de Inversión ............................................................................. 124

    19.2     Derecho de Elección para Reclamaciones de Bonos del ELA
             Antiguos de Inversión (Elección Imponible) ........................................... 125

ARTÍCULO XX DISPOSICIONES PARA EL TRATAMIENTO
DE RECLAMACIONES DE BONOS DEL ELA ANTIGUOS
(ASSURED) (CLASE 16) ................................................................................................ 125

    20.1     Tratamiento de Reclamaciones de Bonos del ELA Antiguos (Assured) .... 125

ARTÍCULO XXI DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DEL ELA ANTIGUOS (NATIONAL)
(CLASE 17) ..................................................................................................................... 125

    21.1     Tratamiento de Reclamaciones de Bonos del ELA Antiguos (National) .... 125

ARTÍCULO XXII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DEL ELA ANTIGUOS (OTROS ASEGURADOS)
(CLASE 18) ..................................................................................................................... 126

    22.1     Tratamiento de Reclamaciones de Bonos del ELA Antiguos
             (Otros Asegurados) ................................................................................. 126

ARTÍCULO XXIII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DEL ELA ANTIGUOS (SYNCORA) (CLASE 19) ... 126

    23.1     Tratamiento de Reclamaciones de Bonos del ELA Antiguos (Syncora) .... 126

ARTÍCULO XXIV DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DEL ELA ANTIGUOS
(ELECCIÓN IMPONIBLE) (CLASE 20) ..................................................................... 126

    24.1     Tratamiento de Reclamaciones de Bonos del ELA Antiguos
             (Elección Imponible) .............................................................................. 126

ARTÍCULO XXV DISPOSICIONES PARA EL TRATAMIENTO

DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA
ANTIGUOS (CLASE 21) ............................................................................... 127

25.1    Tratamiento de Reclamaciones de Bonos de Garantía
del ELA Antiguos ............................................................. 127

25.2    Derecho de Elección para Reclamaciones de Bonos de Garantía
del ELA Antiguos (Elección Imponible) ................................ 127

ARTÍCULO XXVI DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA ANTIGUOS
(ASSURED) (CLASE 22) ............................................................................. 127

26.1    Tratamiento de Reclamaciones de Bonos de Garantía del ELA
Antiguos (Assured) ............................................................ 127

ARTÍCULO XXVII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA ANTIGUOS
(NATIONAL) (CLASE 23) ........................................................................... 128

27.1    Tratamiento de Reclamaciones de Bonos de Garantía del ELA
Antiguos (National) ............................................................ 128

ARTÍCULO XXVIII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA ANTIGUOS
(OTROS ASEGURADOS) (CLASE 24) ...................................................... 128

28.1    Tratamiento de Reclamaciones de Bonos de Garantía del ELA
Antiguos (Otros Asegurados) .............................................. 128

ARTÍCULO XXIX DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA ANTIGUOS
(SYNCORA) (CLASE 25) ............................................................................. 128

29.1    Tratamiento de Reclamaciones de Bonos de Garantía del ELA
Antiguos (Syncora) ............................................................ 128

ARTÍCULO XXX DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA ANTIGUOS
(ELECCIÓN IMPONIBLE) (CLASE 26) .................................................... 129

30.1    Tratamiento de Reclamaciones de Bonos de Garantía del ELA
Antiguos (Elección Imponible) ............................................ 129

ARTÍCULO XXXI DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DEL ELA 2011 (CLASE 27) ................... 129

31.1    Tratamiento de Reclamaciones de Bonos del ELA 2011 ......................... 129

31.2    Derecho de Elección para Reclamaciones de Bonos del ELA 2011
(Elección Imponible) ........................................................... 129

ARTÍCULO XXXII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DEL ELA 2011 DE INVERSIÓN (CLASE 28) ......... 130

32.1    Tratamiento de Reclamaciones de Bonos del ELA 2011 de Inversión ....... 130

32.2    Derecho de Elección para Reclamaciones de Bonos del ELA 2011 de
Inversión (Elección Imponible) ............................................ 130

**ARTÍCULO XXXIII  DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA 2011 (ASSURED) (CLASE 29)** ............... 130

    33.1    Tratamiento de Reclamaciones de Bonos del ELA 2011 (Assured) ........... 130

**ARTÍCULO XXXIV  DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA 2011 (ELECCIÓN IMPONIBLE) (CLASE 30)** ........................................................................................ 131

    34.1    Tratamiento de Reclamaciones de Bonos del ELA 2011 (Elección Imponible) ................................................................ 131

**ARTÍCULO XXXV  DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA 2011 (CLASE 31)** ......... 131

    35.1    Tratamiento de Reclamaciones de Bonos de Garantía del ELA 2011 ........ 131

    35.2    Derecho de Elección para Reclamaciones de Bonos de Garantía del ELA 2011 (Elección Imponible) .................................................... 131

**ARTÍCULO XXXVI  DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA 2011 (ELECCIÓN IMPONIBLE) (CLASE 32)** ........................................................ 132

    36.1    Tratamiento de Reclamaciones de Bonos de Garantía del ELA 2011 (Elección Imponible) ................................................................ 132

**ARTÍCULO XXXVII  DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS SERIE D/E/PIB DEL ELA 2011 (CLASE 33)** ........... 132

    37.1    Tratamiento de Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 .... 132

    37.2    Derecho de Elección para Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 (Elección Imponible) ...................................... 132

**ARTÍCULO XXXVIII  DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS SERIE D/E/PIB DEL ELA 2011 (ASSURED) (CLASE 34)** ........................................................................................ 133

    38.1    Tratamiento de Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 (Assured) ................................................................ 133

**ARTÍCULO XXXIX  DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS SERIE D/E/PIB DEL ELA 2011 DE INVERSIÓN (CLASE 35)** ........................................................................................ 133

    39.1    Tratamiento de Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 de Inversión ................................................................ 133

    39.2    Derecho de Elección para Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 de Inversión (Elección Imponible) .................................... 134

ARTÍCULO XL DISPOSICIONES PARA EL TRATAMIENTO

DE RECLAMACIONES DE BONOS SERIE D/E/PIB DEL ELA 2011
(ELECCIÓN IMPONIBLE) (CLASE 36) ................................................................... 134

40.1    Tratamiento de Reclamaciones de Bonos Serie D/E/PIB del ELA 2011
(Elección Imponible) ................................................................................. 134

ARTÍCULO XLI DISPOSICIONES PARA EL TRATAMIENTO
DE RECLAMACIONES DE BONOS DEL ELA 2012 (CLASE 37) ............................. 134

41.1    Tratamiento de Reclamaciones de Bonos del ELA 2012 ......................... 134

41.2    Derecho de Elección para Reclamaciones de Bonos del ELA 2012
(Elección Imponible) ................................................................................. 135

ARTÍCULO XLII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DEL ELA 2012 DE INVERSIÓN (CLASE 38) ......... 135

42.1    Tratamiento de Reclamaciones de Bonos del ELA 2012 de Inversión ....... 135

42.2    Derecho de Elección para Reclamaciones de Bonos del ELA 2012
de Inversión (Elección Imponible) ........................................................... 136

ARTÍCULO XLIII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DEL ELA 2012 (ASSURED) (CLASE 39) .............. 136

43.1    Tratamiento de Reclamaciones de Bonos del ELA 2012 (Assured) ........... 136

ARTÍCULO XLIV DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DEL ELA 2012 (ELECCIÓN IMPONIBLE)
(CLASE 40) ................................................................................................... 136

44.1    Disposiciones para el Tratamiento de Reclamaciones de Bonos
del ELA 2012 (Elección Imponible) ......................................................... 136

ARTÍCULO XLV DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA 2012 (CLASE 41) ......... 137

45.1    Tratamiento de Reclamaciones de Bonos de Garantía del ELA 2012 ........ 137

45.2    Derecho de Elección para Reclamaciones de Bonos de Garantía
del ELA 2012 (Elección Imponible) ......................................................... 137

ARTÍCULO XLVI DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA 2012 (ELECCIÓN
IMPONIBLE) (CLASE 42) ................................................................................ 137

46.1    Tratamiento de Reclamaciones de Bonos de Garantía del ELA 2012
(Elección Imponible) ................................................................................. 137

ARTÍCULO XLVII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DEL ELA 2014 (CLASE 43) .................................. 138

47.1    Tratamiento de Reclamaciones de Bonos del ELA 2014 ......................... 138

47.2    Derecho de Elección para Reclamaciones de Bonos del ELA 2014
(Elección Imponible) ................................................................................. 138

ARTÍCULO XLVIII DISPOSICIONES PARA EL TRATAMIENTO DE

RECLAMACIONES DE BONOS DEL ELA 2014 DE INVERSIÓN (CLASE 44) ......... 138

48.1    Tratamiento de Reclamaciones de Bonos 2014 de Inversión .................... 138

48.2    Derecho de Elección para Reclamaciones de Bonos del ELA 2014 de
        Inversión (Elección Imponible) ............................................................... 139

ARTÍCULO XLIX DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DEL ELA 2014 (ELECCIÓN IMPONIBLE)
(CLASE 45) .................................................................................................................. 139

49.1    Disposiciones para el Tratamiento de Reclamaciones de Bonos del ELA
        2014 (Elección Imponible) ...................................................................... 139

ARTÍCULO L DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA 2014 (CLASE 46) ......... 139

50.1    Tratamiento de Reclamaciones de Bonos de Garantía del ELA 2014 ........ 139

50.2    Derecho de Elección para Reclamaciones de Bonos de Garantía
        del ELA 2014 (Elección Imponible) ......................................................... 140

ARTÍCULO LI DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA 2014
(ELECCIÓN IMPONIBLE) (CLASE 47) ...................................................................... 140

51.1    Tratamiento de Reclamaciones de Bonos de Garantía del ELA 2014
        (Elección Imponible) ............................................................................... 140

ARTÍCULO LII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BENEFICIOS DE RETIRO DE EMPLEADOS
ACTIVOS Y RETIRADOS (CLASE 48A A 48E) ......................................................... 140

52.1    Tratamiento de Reclamaciones de Pensionados (Clase 48A) .................... 140

52.2    Tratamiento de Reclamaciones de Participantes del SRE Activos
        (Clase 48B) ............................................................................................. 141

52.3    Tratamiento de Reclamaciones de Participantes del SRJ Activos
        (Clase 48C) ............................................................................................. 141

52.4    Tratamiento de Reclamaciones de Participantes del SRM Activos
        (Clase 48D) ............................................................................................. 142

52.5    Tratamiento de Reclamaciones de Participantes del Sistema 2000
        (Clase 48E) ............................................................................................. 143

ARTÍCULO LIII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE BONOS DE EMPLEADOS DE AFSCME (CLASE 49) ......... 144

53.1    Tratamiento de Reclamaciones de Empleados de la AFSCME ................. 144

ARTÍCULO LIV DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE PRODUCTORES DE LÁCTEOS (CLASE 50) ...................... 145

54.1    Tratamiento de Reclamaciones de Productores Lácteos ............................ 145

ARTÍCULO LV DISPOSICIONES PARA EL TRATAMIENTO DE

RECLAMACIONES DE EXPROPIACIÓN DEL ELA (CLASE 51) ............................. 145

    55.1     Tratamiento de Reclamaciones de Expropiación ...................................... 145

ARTÍCULO LVI DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE INCENTIVO DE ENERGÍA (CLASE 52) ............................. 146

    56.1     Tratamiento de Reclamaciones de Incentivos de Energía ......................... 146

ARTÍCULO LVII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE CENTROS MÉDICOS (CLASE 53) ..................................... 146

    57.1     Tratamiento de Reclamaciones de Centros Médicos................................ 146

    57.2     Desestimación de Litigio de Centros Médicos ......................................... 146

ARTÍCULO LVIII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE CRÉDITOS FISCALES (CLASE 54) .................................... 147

    58.1     Tratamiento de Reclamaciones de Crédito Fiscal..................................... 147

ARTÍCULO LIX DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES NO GARANTIZADAS GENERALES DEL ELA (CLASE 55) .... 147

    59.1     Tratamiento de Reclamaciones no Garantizadas Generales del ELA ......... 147

    59.2     Limitación de Recuperación .................................................................... 147

ARTÍCULO LX DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE LA ACT/ELA (CLASE 56).................................................. 148

    60.1     Tratamiento de Reclamaciones de la ACT/ELA...................................... 148

    60.2     Distribución de la Recuperación de Recuperación de la ACT/ELA........... 148

ARTÍCULO LXI DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DEL CENTRO DE CONVENCIONES/ELA (CLASE 57)............ 149

    61.1     Tratamiento de Reclamaciones del Centro de Convenciones/ELA ............ 149

ARTÍCULO LXII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DEL IMPUESTO DE RON DE LA AFI/ELA (CLASE 58) .......... 149

    62.1     Tratamiento de Reclamaciones del Impuesto de Ron de la AFI/ELA ........ 149

ARTÍCULO LXIII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE LA AMA/ELA (CLASE 59) ................................................ 149

    63.1     Tratamiento de Reclamaciones de la AMA/ELA ..................................... 149

ARTÍCULO LXIV DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE ASIGNACIONES DEL ELA (CLASE 60) ............................ 150

    64.1     Tratamiento de Reclamaciones de Asignaciones del ELA ....................... 150

ARTÍCULO LXV DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES SUBORDINADAS A 510(b)/ELA (CLASE 61) .......................... 150

    65.1     Tratamiento de Reclamaciones Subordinadas a 510(b)/ELA ................... 150

ARTÍCULO LXVI DISPOSICIONES PARA EL TRATAMIENTO DE

RECLAMACIONES DE BONOS DEL SRE (CLASE 62)............................................150

    66.1    Tratamiento de Reclamaciones de Bonos del SRE ..................................150

    66.2    Cartera de Capital Privado del SRE........................................................150

    66.3    Desestimación de Litigio .........................................................................152

ARTÍCULO LXVII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES SIN GARANTÍA GENERALES DEL SRE (CLASE 63) ..............152

    67.1    Tratamiento de Reclamaciones sin Garantía Generales del SRE ..............152

    67.2    Limitación de Recuperación .....................................................................153

ARTÍCULO LXVIII DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES GRACIA GRACIA (CLASE 64)................................................153

    68.1    Tratamiento de Reclamaciones Gracia Gracia..........................................153

ARTÍCULO LXIX DISPOSICIONES PARA EL TRATAMIENTO DE
RECLAMACIONES DE CONVENIENCIA (CLASE 65)...........................................153

    69.1    Tratamiento de Reclamaciones de Conveniencia .....................................153

ARTÍCULO LXX DISPOSICIONES CON RESPECTO A LOS NUEVOS
BONOS DE OG Y ENDEUDAMIENTO ADICIONAL...............................................154

    70.1    Emisión y Distribución de los Nuevos Bonos de OG ..............................154

    70.2    Emisión y Distribución de los CVI...........................................................159

    70.3    Tratamiento Exento de Impuestos de los Nuevos Bonos de OG...............161

    70.4    Tope Global sobre toda Deuda con Garantía Impositiva Neta...................162

    70.5    Adopción y mantenimiento de una Política de Gestión de la Deuda..........162

ARTÍCULO LXXI DISPOSICIONES CON RESPECTO A LOS BONOS
ASEGURADOS DE ASSURED, LOS BONOS ASEGURADOS
DE NATIONAL, LOS BONOS ASEGURADOS DE SYNCORA
Y LOS BONOS ASEGURADOS DE FGIC ................................................................164

    71.1    Tratamiento de Reclamaciones de Bonos Asegurados de Assured ............164

    71.2    Tratamiento de Reclamaciones de Bonos Asegurados de National ...........166

    71.3    Tratamiento de Reclamaciones de Bonos Asegurados de Syncora ............169

    71.4    Creación y Términos del Fideicomiso de FGIC .......................................172

ARTÍCULO LXXII TRATAMIENTO DE CONTRATOS CONDICIONALES
Y CONTRATOS DE ARRENDAMIENTO EN CURSO .............................................173

    72.1    Rechazo o Asunción de Contratos Condicionales o Contratos de
           Arrendamiento en Curso Pendientes.........................................................174

    72.2    Aprobación del Rechazo o Asunción de Contratos Condicionales
           o Contratos de Arrendamiento en Curso ...................................................174

    72.3    Carácter incluyente ..................................................................................175

    72.4    Corrección de Incumplimientos ...............................................................175

    72.5    Pólizas de Seguros...................................................................................175

72.6 Reclamaciones por Daños y Perjuicios debido a Rechazo ........................176
72.7 Obligaciones de Indemnización y Reembolso ...........................................176
72.8 Inexistencia de Vigencia.........................................................................176
72.9 Reserva de Derechos ...............................................................................176
72.10 Contratos de Negociación Colectiva .......................................................177

ARTÍCULO LXXIII DISPOSICIONES QUE RIGEN LAS DISTRIBUCIONES ...........177
73.1 Tiempo y Manera de Distribución ...........................................................177
73.2 Puntualidad de los Pagos ........................................................................178
73.3 Distribuciones por parte del Agente Pagador ...........................................178
73.4 Forma de Pago a tenor con el Plan ..........................................................178
73.5 Entrega de Distribuciones .......................................................................179
73.6 Cancelación de Pagarés, Instrumentos, Certificados
y Otros documentos..................................................................................180
73.7 Distribuciones no Entregables/Reservadas................................................180
73.8 Requisitos de Retención y Presentación de Informes................................182
73.9 Tiempo Límite para Pagos en Efectivo ....................................................182
73.10 Distribuciones después de la Vigencia .....................................................182
73.11 Compensaciones ....................................................................................183
73.12 Asignación de Distribuciones del Plan entre Capital e Intereses ..............183
73.13 Pago de Honorarios y Gastos del Fideicomisario ....................................183
73.14 Beneficiario Efectivo..............................................................................184
73.15 Valor de Distribuciones ..........................................................................184

ARTÍCULO LXXIV FIDEICOMISO DE ACCIONES DE REVOCACIÓN ..................184
74.1 Celebración de Contrato de Fideicomiso de Acciones de Revocación .......184
74.2 Finalidad del Fideicomiso de Acciones de Revocación ............................184
74.3 Activos del Fideicomiso de Acciones de Revocación................................185
74.4 Administración del Fideicomiso de Acciones de Revocación ....................185
74.5 El Fideicomisario de Acciones de Revocación..........................................185
74.6 Función del Fideicomisario de Acciones de Revocación ...........................186
74.7 Poder Fiscal del Fideicomisario de Acciones de Revocación
respecto a los Deudores ...........................................................................186
74.8 Transferibilidad de los Intereses del Fideicomiso de Acciones
de Revocación..........................................................................................186
74.9 Efectivo .................................................................................................186
74.10 Distribución de Activos del Fideicomiso de Acciones de Revocación.......187
74.11 Financiación, Costos y Gastos del Fideicomiso de Acciones
de Revocación..........................................................................................187
74.12 Compensación del Fideicomisario de Acciones de Revocación ................187
74.13 Contratación de Profesionales/Empleados por parte

del Fideicomisario de Acciones de Revocación ......................................... 188

74.14     Tratamiento del Impuesto Federal a los Ingresos del Fideicomiso
de Acciones de Revocación ..................................................................... 188

74.15     Indemnización del Fideicomisario de Acciones de Revocación ................ 192

ARTÍCULO LXXV SEGUIMIENTO Y EXTINCIÓN DE RECLAMACIONES
DE LOS DEUDORES ........................................................................................... 192

75.1      Seguimiento de Reclamaciones ................................................................ 192

ARTÍCULO LXXVI ACEPTACIÓN O RECHAZO DEL PLAN; EFECTOS DEL
RECHAZO POR PARTE DE UNA O MÁS CLASES DE RECLAMACIONES ........... 193

76.1      Clases Afectadas que Votan ..................................................................... 193

76.2      Aceptación por Clase de Acreedores ....................................................... 193

76.3      Imposición de Plan Concursal por el Tribunal ......................................... 193

ARTÍCULO LXXVII DERECHOS Y FACULTADES DEL AGENTE PAGADOR ...... 193

77.1      Exculpación ............................................................................................. 193

77.2      Facultades del Agente Pagador ............................................................... 194

77.3      Honorarios y Gastos incurridos a partir de la Vigencia ............................. 194

ARTÍCULO LXXVIII PROCEDIMIENTOS PARA EL TRATAMIENTO DE
RECLAMACIONES CONTROVERTIDAS ............................................................. 194

78.1      Objeciones a Reclamaciones; Seguimiento de Reclamaciones
Controvertidas ......................................................................................... 194

78.2      Estimación de Reclamaciones ................................................................. 195

78.3      Pagos y Distribuciones de Reclamaciones Controvertidas ....................... 195

78.4      Facultad para modificar Listas de Acreedores .......................................... 196

78.5      No Devengamiento de Intereses ............................................................... 196

78.6      Denegación de Reclamaciones ................................................................. 196

ARTÍCULO LXXIX GOBERNANZA Y DISPOSICIONES CON RESPECTO
A LA RESERVA DE PENSIONES ........................................................................ 197

79.1      Formación y responsabilidades de la Reserva de Pensiones ..................... 197

79.2      Financiación del Fideicomiso de la Reserva de Pensiones ........................ 197

79.3      Pacto de no Afectación ............................................................................ 198

ARTÍCULO LXXX IDENTIFICACIÓN DE RECLAMACIONES AFECTADAS
POR EL PLAN Y NO AFECTADAS POR EL PLAN .................................................. 198

80.1      Clases Afectadas ..................................................................................... 198

80.2      Clases no Afectadas ................................................................................ 198

ARTÍCULO LXXXI CONDICIONES PRECEDENTES A LA CONFIRMACIÓN

DEL PLAN ................................................................................................... 198
    81.1    Condiciones Precedentes a la Confirmación del Plan ............................... 198
    81.2    Renuncia a las Condiciones Precedentes a la Confirmación ................... 200

ARTÍCULO LXXXII CONDICIONES PRECEDENTES A LA VIGENCIA ................ 200
    82.1    Condiciones Precedentes a la Vigencia................................................... 200
    82.2    Renuncia a las Condiciones Precedentes ................................................ 204
    82.3    Efecto de la no incidencia de las Condiciones a la Vigencia .................... 204

ARTÍCULO LXXXIII MODIFICACIÓN, REVOCACIÓN O DESISTIMIENTO
DEL PLAN ................................................................................................... 204
    83.1    Modificación del plan ............................................................................. 204
    83.2    Revocación o Desistimiento ................................................................... 205
    83.3    Modificación de los Documentos del Plan .............................................. 205
    83.4    No Admisión de Responsabilidad ........................................................... 205

ARTÍCULO LXXXIV GOBERNANZA CORPORATIVA Y GESTIÓN DE LOS
DEUDORES REORGANIZADOS ................................................................... 206
    84.1    Acción Corporativa ................................................................................ 206
    84.2    Disolución del SRE ................................................................................ 206
    84.3    Funcionarios de los Deudores Reorganizados ......................................... 206
    84.4    Estructura de Gobernanza de la AEP y ADCC......................................... 206

ARTÍCULO LXXXV DISPOSICIONES RELATIVAS A LA JUNTA DE
SUPERVISIÓN Y EL CUMPLIMIENTO DE PROMESA ............................. 207
    85.1    Efecto de la Confirmación ...................................................................... 207
    85.2    Función permanente de la Junta de Supervisión ...................................... 207
    85.3    Invalidez de Leyes.................................................................................. 207

ARTÍCULO LXXXVI DISPOSICIONES RELATIVAS A LOS COMITÉS ................ 208
    86.1    Disolución de los Comités ...................................................................... 208

ARTÍCULO LXXXVII CONSERVACIÓN DE JURISDICCIÓN................................ 208
    87.1    Conservación de Jurisdicción.................................................................. 208

ARTÍCULO LXXXVIII DISPOSICIONES VARIAS ................................................... 210
    88.1    Titularidad de los Activos ...................................................................... 210
    88.2    Extinción y Descargo de Reclamaciones y Causas de acción................... 210
    88.3    Interdictos sobre Reclamaciones ............................................................ 212
    88.4    Integral para el Plan................................................................................ 212
    88.5    Exenciones por parte de los Deudores y los Deudores Reorganizados ...... 213
    88.6    Interdicto con respecto a las Exenciones................................................. 214
    88.7    Exculpación ........................................................................................... 214

88.8    Litigio Relacionado a Designaciones/Litigio de Uniformidad...................216

88.9    Orden de Exclusión ...............................................................................217

88.10   Sin Renuncia..........................................................................................217

88.11   Interdicto Complementario ...................................................................217

88.12   Gastos y Honorarios posteriores a la Vigencia .........................................218

88.13   Exención de la Ley de Valores...............................................................218

88.14   Independencia .......................................................................................219

88.15   Ley Aplicable.........................................................................................219

88.16   Cierre de Caso.......................................................................................219

88.17   Títulos de secciones ..............................................................................219

88.18   Incongruencias ......................................................................................219

88.19   Conservación de documentos................................................................219

88.20   Efecto Vinculante Inmediato.................................................................220

88.21   Documentos Adicionales .......................................................................220

88.22   Reserva de Derechos .............................................................................220

88.23   Sucesores y Cesionarios .......................................................................221

88.24   Notificaciones .......................................................................................221

88.25   Duración de los Interdictos o Paralizaciones ...........................................223

88.26   Totalidad del acuerdo ...........................................................................223

88.27   Complemento del Plan...........................................................................223

La Junta de Supervisión y Administración Financiera para Puerto Rico, como representante de Título III del Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico a tenor con la Sección 315(b) de la *Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico*, por el presente proponen el siguiente plan de ajuste conjunto.

## ARTÍCULO I

## DEFINICIONES

Tal como se usa en el Plan, los siguientes términos tienen los significados respectivos establecidos a continuación y son aplicables tanto a la forma singular como plural de los términos que se definen:

1.1 **Reclamación de Bonos del ELA 2011**: una Reclamación contra el ELA a causa de los Bonos del ELA 2011 que no sea una Reclamación de Bonos del ELA 2011 (Assured) o una Reclamación de Bonos del ELA 2011 de Inversión.

1.2 **Reclamación de Bonos del ELA 2011 (Assured):** una reclamación contra el ELA a causa de los Bonos del ELA 2011 cuyo pago de capital e intereses ha sido asegurado por Assured, lo que incluye a tenor con una póliza de mercado secundario.

1.3 **Reclamación de Bonos del ELA 2011 (Elección Imponible):** una Reclamación de Bonos del ELA 2011 o Reclamación de Bonos del ELA 2011 de Inversión, cuyo tenedor es un Inversor de Puerto Rico que ha optado de manera afirmativa por recibir una Distribución de Bonos Imponibles, disponiéndose, sin embargo, que en caso de que las Distribuciones de Bonos Imponibles sean optadas por Inversores de Puerto Rico que mantienen Reclamaciones de Bonos del ELA y Reclamaciones de Bonos de Garantía del ELA que excedan el Monto de Elección de Bono Imponible Máximo, tal Reclamación de Bonos del ELA 2011 será una Reclamación de Bonos del ELA 2011 (Elección Imponible) hasta la cuota imponible del Monto de Elección de Bono Imponible Máximo de tal Reclamación de Bonos del ELA 2011 y el resto de este será una Reclamación de Bonos del ELA 2011.

1.4 **Recuperación de Bonos del ELA 2011**: la recuperación acumulada por parte de los tenedores de Reclamaciones de Bonos del ELA 2011 Permitidas, Reclamaciones de Bonos del ELA 2011 Permitidas (Assured) y Reclamaciones de Bonos del ELA 2011 de Inversión Permitidas a causa de cualquiera de dichas Reclamaciones, que consiste en (a) ciento cuarenta y ocho millones ochocientos treinta y tres mil setecientos treinta dólares y noventa y cinco centavos ($148,833,730.95) en Efectivo, (b) ciento setenta y nueve millones ciento noventa y tres mil cuatrocientos veinticinco dólares ($179,193,425.00) en capital original de Nuevos bonos de interés actual de OG, (c) once millones ochocientos sesenta y cuatro mil quinientos diez dólares con noventa y cinco centavos ($11,864,510.95) en capital original de Nuevos CAB (bonos de revalorización de capital, por sus siglas en inglés) al 5.375 % de OG, (d) siete millones setecientos veintiocho mil trescientos sesenta dólares con treinta y cinco centavos ($7,728,360.35) en capital original de Nuevos CAB al 5.0 % de OG y (e) dos y cuatrocientos setenta y nueve milésimas por ciento (2.479 %) de los CVI (instrumentos de valor contingente, por sus siglas en inglés) de OG.

1.5 **Bonos del ELA 2011**: en su conjunto, (a) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2011 C, emitidos por el ELA en el capital original de cuatrocientos cuarenta y dos millones quince mil dólares ($ 442,015,000.00) y (b) las Notas de Ahorro emitidas en 2011 en capital pendiente total de cincuenta y tres mil ochocientos dólares ($53,800.00).

1.6 **Reclamación de Bonos de Garantía del ELA 2011**: una Reclamación contra el ELA a causa de la garantía de plena fe y crédito y poder impositivo del ELA, según se autorice mediante acción, legislación o resolución de la Legislatura del ELA, de (a) un endeudamiento de filial, agencia o instrumentalidad cuya garantía se ejecutó, otorgó o adoptó a tenor con la legislación o resolución durante el período del 1 de enero de 2011 al 31 de diciembre de 2011 inclusive y (b) los Bonos de la AEP 2011; disponiéndose, sin embargo, que, únicamente para fines de distribución según, pero sin votar con respecto a, el Plan, el monto de la Reclamación de Bonos de Garantía del ELA 2011 de un tenedor con respecto a la garantía del ELA de tal Reclamación de Bonos de la AEP 2011 se calculará como el monto de la Reclamación de Bonos de la AEP 2011 de tal tenedor menos el monto de la Recuperación de Bonos de la AEP 2011 de tal tenedor.

1.7 **Reclamación de Bonos de Garantía del ELA 2011 (Elección Imponible)**: una Reclamación de Bonos de Garantía del ELA 2011, cuyo tenedor es un Inversor de Puerto Rico que ha optado de manera afirmativa por recibir una Distribución de Bonos Imponibles, disponiéndose, sin embargo, que en caso de que las Distribuciones de Bonos Imponibles sean optadas por Inversores de Puerto Rico que mantienen Reclamaciones de Bonos del ELA y Reclamaciones de Bonos de Garantía del ELA que excedan el Monto de Elección de Bono Imponible Máximo, tal Reclamación de Bonos de Garantía del ELA 2011 será una Reclamación de Bonos de Garantía del ELA 2011 (Elección Imponible) hasta la cuota imponible del Monto de Elección de Bono Imponible Máximo de tal Reclamación de Bonos de Garantía del ELA 2011 y el resto de esta será una Reclamación de Bonos del ELA 2011.

1.8      **Recuperación de Bonos de Garantía del ELA 2011**: la recuperación acumulada por parte de los tenedores de Reclamaciones de Bonos de Garantía ELA 2011 Permitidas, que consiste en (a) trescientos veintitrés millones quinientos veintitrés mil novecientos dos dólares con cincuenta centavos ($ 323,523,902.50) en Efectivo, (b) trescientos ochenta y nueve millones quinientos diecisiete mil quinientos noventa y dos dólares ($ 389,517,592.00) en capital original de Nuevos bonos de interés actual de OG, (c) veinticinco millones setecientos noventa y dos mil doscientos ocho dólares con cuarenta y seis centavos ($ 25,790,208.46) en capital original de Nuevos CAB al 5.375 % de OG, (d) dieciséis millones setecientos noventa y nueve mil trescientos cuarenta y seis dólares y setenta y siete centavos ($ 16,799,346.77) en capital original de Nuevos CAB al 5.0 % de OG y (e) siete y quinientos cincuenta y dos milésimos por ciento (7.552 %) de los CVI de OG.

1.9      **Distribución de Bonos Imponibles de Garantía del ELA 2011:** la distribución a realizar a cada tenedor de una Reclamación de Bonos de Garantía del ELA 2011 (Elección Imponible) Permitida según los términos y disposiciones de la Sección 36.1 del presente.

1.10     **Reclamación de Bonos Serie D/E/PIB del ELA 2011:** una Reclamación contra el ELA a causa de los Bonos Serie D/E/PIB del ELA 2011 que no sea una Reclamación de Bonos Serie D/E/PIB del ELA 2011 (Assured) ni una Reclamación de Bonos Serie D/E/PIB del ELA 2011 de Inversión.

1.11     **Reclamación de Bonos Serie D/E/PIB del ELA 2011 (Assured):** una reclamación contra el ELA a causa de los Bonos Serie D/E/PIB del ELA 2011 cuyo pago de capital e intereses ha sido asegurado por Assured, lo que incluye a tenor con una póliza de mercado secundario.

1.12     **Reclamación de Bonos Serie D/E/PIB del ELA 2011 (Elección Imponible):** una Reclamación de Bonos Serie D/E/PIB del ELA 2011 o Reclamación de Bonos Serie D/E/PIB del ELA 2011 de Inversión, cuyo tenedor es un Inversor de Puerto Rico que ha optado de manera afirmativa por recibir una Distribución de Bonos Imponibles, disponiéndose, sin embargo, que en caso de que las Distribuciones de Bonos Imponibles sean optadas por Inversores de Puerto Rico que mantengan Reclamaciones de Bonos del ELA y Reclamaciones de Bonos de Garantía del ELA que excedan el Monto de Elección de Bono Imponible Máximo, tal Reclamación de Bonos Serie D/E/PIB del ELA 2011 será una Reclamación de Bonos Serie D/E/PIB del ELA 2011 (Elección Imponible) hasta la cuota imponible del Monto de Elección de Bono Imponible Máximo de tal Reclamación de Bonos Serie D/E/PIB del ELA 2011 y el resto de esta será una Reclamación de Bonos Serie D/E/PIB del ELA 2011.

1.13     **Recuperación de Bonos Serie D/E/PIB del ELA 2011:** la recuperación
acumulada por parte de los tenedores de Reclamaciones de Bonos Series D/E/PIB del ELA
2011 Permitidas, Reclamaciones de Bonos Series D/E/PIB del ELA 2011 Permitidas
(Assured) y Reclamaciones de Bonos Series D/E/PIB del ELA 2011 de Inversión
Permitidas a causa de dichas Reclamaciones, que consiste en (a) doscientos once millones
trescientos cincuenta y cinco mil treinta y cinco dólares con setenta y cuatro centavos ($
211,355,035.74) en Efectivo, (b) doscientos cincuenta y cuatro millones cuatrocientos
sesenta y ocho mil setenta y cuatro dólares ($ 254,468,074.00) en capital original de
Nuevos bonos de interés actual de OG, (c) dieciséis millones ochocientos cuarenta y ocho
mil cuatrocientos noventa y tres dólares y ochenta y cuatro centavos ($ 16,848,493.84) en
capital original de Nuevos CAB al 5.375 % de OG, (d) diez millones novecientos setenta y
cuatro mil ochocientos cincuenta dólares con treinta centavos ($ 10,974,850.30) en capital
original de Nuevos CAB al 5.0 % de OG y (e) tres y quinientos catorce milésimos por
ciento (3.514 %) de los CVI de OG.

1.14     **Bonos Serie D/E/PIB del ELA 2011:** en su conjunto, (a) los Bonos para
Mejoras Públicas de 2011, emitidos por el ELA en el capital original de trescientos cuatro
millones de dólares ($ 304,000,000.00), (b) los Bonos de Refinanciamiento de Mejoras
Públicas, Serie 2011D, emitidos por el ELA en el capital original de cincuenta y dos
millones ciento noventa mil dólares ($ 52,190,000.00) y (c) los Bonos de Refinanciamiento
de Mejoras Públicas, Serie 2011E, emitidos por el ELA en el capital original de doscientos
cuarenta y cinco millones novecientos quince mil dólares ($ 245,915,000.00).

1.15     **Distribución de Bonos Imponibles Serie D/E/PIB del ELA 2011:** la
distribución a realizar a cada tenedor de una Reclamación de Bonos Serie D/E/PIB del
ELA 2011 (Elección Imponible) Permitida a tenor con los términos y disposiciones de la
Sección 40.1 del presente.

1.16     **Distribución de Bonos Imponibles del ELA 2011:** la distribución a
realizar a cada tenedor de una Reclamación de Bonos del ELA 2011 (Elección Imponible)
Permitida a tenor con los términos y disposiciones de la Sección 34.1 del presente.

1.17     **Reclamación de Bonos de la AEP 2011:** una Reclamación contra la AEP a
causa de los Bonos de la AEP 2011 que no sea una Reclamación de Bonos de la AEP 2011
de Inversión.

1.18     **Recuperación de Bonos de la AEP 2011:** la recuperación acumulada por
parte de tenedores de Reclamaciones de Bonos de la AEP 2011 Permitidas y las
Reclamaciones de Bonos de la AEP 2011 de Inversión Permitidas que suman trescientos
seis millones setecientos sesenta y ocho mil novecientos once dólares con setenta y dos
centavos ($ 306,768,911.72) en Efectivo.

1.19     **Bonos de la AEP 2011:** en su conjunto, (a) los Bonos de Ingresos de Instalaciones del Gobierno, Serie R, (Bonos Calificados de Construcción de Escuelas), emitidos por la AEP en el capital original de setecientos cincuenta y seis millones cuatrocientos cuarenta y nueve mil dólares ($ 756,449,000.00), (b) los Bonos de Ingresos de Instalaciones del Gobierno, Serie S, emitidos por la AEP en el capital original de trescientos tres millones novecientos cuarenta y cinco mil dólares ($ 303,945,000.00) y (c) los Bonos de Ingresos de Instalaciones del Gobierno, Serie T (Bonos Cualificados para Zonas Académicas) emitidos por la AEP en el capital original de ciento veintiún millones quinientos veintiocho mil dólares ($ 121,528,000.00), cuyo reembolso es garantizado por el ELA.

1.20     **Reclamación de Bonos del ELA 2012:** una Reclamación contra el ELA a causa de los Bonos del ELA 2012 que no sea una Reclamación de Bonos del ELA 2012 (Assured) o una Reclamación de Bonos del ELA 2012 de Inversión.

1.21     **Reclamación de Bonos del ELA 2012 (Assured):** una Reclamación contra el ELA a causa de los Bonos del ELA 2012 cuyo pago de capital e intereses ha sido asegurado por Assured, lo que incluye a tenor con una póliza de mercado secundario.

1.22     **Reclamación de Bonos del ELA 2012 (Elección Imponible):** una Reclamación de Bonos del ELA 2012 y una Reclamación de Bonos del ELA 2012 de Inversión, cuyo tenedor es un Inversor de Puerto Rico que ha optado de manera afirmativa por recibir una Distribución de Bonos Imponibles, _disponiéndose, sin embargo,_ que en caso de que las Distribuciones de Bonos Imponibles sean optadas por Inversores de Puerto Rico que mantengan Reclamaciones de Bonos del ELA y Reclamaciones de Bonos de Garantía del ELA que excedan el Monto de Elección de Bono Imponible Máximo, tal Reclamación de Bonos del ELA 2012 será una Reclamación de Bonos del ELA 2012 (Elección Imponible) hasta la cuota imponible del Monto de Elección de Bono Imponible Máximo de tal Reclamación de Bonos del ELA 2012 y el resto de esta será una Reclamación de Bonos del ELA 2012.

1.23     **Recuperación de Bonos del ELA 2012**: la recuperación acumulada por parte de los tenedores de Reclamaciones de Bonos del ELA 2012 Permitidas, Reclamaciones de Bonos del ELA 2012 Permitidas (Assured) y Reclamaciones de Bonos del ELA 2012 de Inversión Permitidas a causa de cualquiera de dichas Reclamaciones, que consiste en (a) novecientos nueve millones novecientos doce mil seiscientos setenta y nueve dólares con setenta y tres centavos ($ 909,912,679.73) en Efectivo, (b) mil noventa y cinco millones quinientos veinte mil doscientos setenta y siete dólares ($ 1,095,520,277.00) en capital original de Nuevos bonos de interés actual de OG, (c) setenta y dos millones quinientos treinta y cinco mil noventa y seis dólares con noventa y seis centavos ($ 72,535,096.96) en capital original de Nuevos CAB (bonos de revalorización de capital, por sus siglas en inglés) al 5.375 % de OG, (d) cuarenta y siete millones trescientos dos mil doscientos cuarenta y ocho mil doscientos cuarenta y un dólares ($ 47,248,251.00) en capital original de Nuevos CAB al 5.0 % de OG y (e) quince y ciento cincuenta y siete milésimas por ciento (15.157 %) de los CVI de OG.

     1.24     **Bonos del ELA 2012:** en su conjunto, (a) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2012 A, emitidos por el ELA en el capital original de dos mil trescientos dieciocho millones ciento noventa mil dólares ($ 2,318,190,000.00), (b) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2012 B, emitidos por el ELA en el capital original de cuatrocientos quince millones doscientos setenta mil dólares ($ 415,270,000.00), (c) el préstamo de helicóptero de la ASG y (d) préstamos de Hacienda (préstamos núm. 200017-215-001-003-47, 200017-215-001-003-48,200017-215-001-003-53 y 200017-215- 001-003-56) que, a la Fecha de Petición del ELA alcanzaban el capital pendiente acumulado de ciento sesenta y nueve millones cuatrocientos treinta y ocho mil treinta y siete dólares con setenta y seis centavos ($ 169,438,037.76) y (e) las Notas de Ahorro emitidas en 2012 en capital pendiente de dos millones ciento treinta y tres mil cincuenta dólares ($2,533,050.00).

     1.25     **Reclamación de Bonos de Garantía del ELA 2012:** una Reclamación contra el ELA a causa de la garantía de plena fe y crédito y poder impositivo del ELA, según se autorice mediante acción, legislación o resolución de la Legislatura del ELA, de (a) un endeudamiento de filial, agencia o instrumentalidad cuya garantía se ejecutó, otorgó o adoptó a tenor con la legislación o resolución durante el período del 1 de enero de 2012 al 31 de diciembre de 2013 inclusive y (b) los Bonos de la AEP 2012; disponiéndose, sin embargo, que, únicamente para fines de distribución según, pero sin votar con respecto a, el Plan, el monto de tal Reclamación de Bonos de Garantía del ELA 2012 de un tenedor con respecto a la garantía del ELA de los Bonos de la AEP 2012 se medirá como el monto de los Bonos de la AEP 2012 de tal tenedor menos el monto de la Distribución de Bonos de la AEP de tal tenedor a causa de los bonos de la AEP 2012.

     1.26     **Reclamación de Bonos de Garantía del ELA 2012 (Elección Imponible):** una Reclamación de Bonos de Garantía del ELA 2012, cuyo tenedor es un Inversor de Puerto Rico que ha optado de manera afirmativa por recibir una Distribución de Bonos Imponibles, disponiéndose, sin embargo, que en caso de que las Distribuciones de Bonos Imponibles sean optadas por Inversores de Puerto Rico que mantienen Reclamaciones de Bonos del ELA y Reclamaciones de Bonos de Garantía del ELA que excedan el Monto de Elección de Bono Imponible Máximo, tal Reclamación de Bonos de Garantía del ELA 2012 será una Reclamación de Bonos de Garantía del ELA 2012 (Elección Imponible) hasta la cuota imponible del Monto de Elección de Bono Imponible Máximo de tal Reclamación de Bonos de Garantía del ELA 2012 y el resto de esta será una Reclamación de Bonos del ELA 2012.

1.27     **Reclamación de Bonos de Garantía del ELA 2012:** la recuperación acumulada por parte de los tenedores de Reclamaciones de Bonos de Garantía del ELA 2011 Permitidas, que consiste en (a) ciento cuarenta y nueve millones setecientos mil veintisiete dólares con veinticuatro centavos ($ 149,700,027.24) en Efectivo, (b) ciento ochenta millones doscientos treinta y seis mil cuatrocientos treinta y cuatro dólares ($ 180,236,434.00) en capital original de Nuevos bonos de interés actual de OG, (c) once millones novecientos treinta y tres mil quinientos sesenta y nueve dólares con cincuenta y cuatro centavos ($ 11,933,569.54) en capital original de Nuevos CAB (bonos de revalorización de capital, por sus siglas en inglés) al 5.375 % de OG, (d) siete millones setecientos setenta y tres mil trescientos cuarenta y cuatro dólares con treinta centavos ($ 7,773,344.30) en capital original de Nuevos CAB al 5.0 % de OG y (e) tres y quinientos noventa y cuatro milésimas por ciento (3.594 %) de los CVI de OG.

1.28     **Distribución de Bonos Imponibles de Garantía del ELA 2012**: la distribución a realizar a cada tenedor de una Reclamación de Bonos de Garantía del ELA 2012 (Elección Imponible) Permitida según los términos y disposiciones de la Sección 46.1 del presente.

1.29     **Distribución de Bonos Imponibles del ELA 2012:** la distribución a realizar a cada tenedor de una Reclamación de Bonos del ELA 2012 (Elección Imponible) Permitida a tenor con los términos y disposiciones de la Sección 46.1 del presente.

1.30     **Reclamación de Bonos de la AEP 2012:** una Reclamación contra la AEP a causa de Bonos de la AEP 2012 que no sea una Reclamación de Bonos de la AEP 2012 de Inversión.

1.31     **Recuperación de Bonos de la AEP 2012:** la recuperación acumulada por parte de los tenedores de Reclamaciones de Bonos de la AEP 2012 Permitidas, y las Reclamaciones de Bonos de la AEP 2012 de Inversión Permitidas a causa de tales Reclamaciones, ciento cincuenta y cuatro millones ochocientos noventa y nueve mil novecientos dos dólares con veintitrés centavos ($ 154,899,902.23) en Efectivo.

1.32     **Bonos de la AEP 2012:** en su conjunto, los Bonos de Refinanciamiento de Ingresos de Instalaciones del Gobierno, Serie U, emitidos por la AEP en el capital original de quinientos ochenta y dos millones trescientos cuarenta y cinco mil dólares ($ 582,345,000.00).

1.33     **Reclamación de Bonos del ELA 2014:** una Reclamación contra el ELA a causa de los Bonos del ELA 2014 que no sea una Reclamación de Bonos del ELA 2014 de Inversión.

1.34    **Reclamación de Bonos del ELA 2014 (Elección Imponible):** una
Reclamación de Bonos del ELA 2014 y una Reclamación de Bonos del ELA 2014 de
Inversión, cuyo tenedor es un Inversor de Puerto Rico que ha optado de manera afirmativa
por recibir una Distribución de Bonos Imponibles, disponiéndose, sin embargo, que en
caso de que las Distribuciones de Bonos Imponibles sean optadas por Inversores de Puerto
Rico que mantienen Reclamaciones de Bonos del ELA y Reclamaciones de Bonos de
Garantía del ELA que excedan el Monto de Elección de Bono Imponible Máximo, tal
Reclamación de Bonos del ELA 2014 será una Reclamación de Bonos del ELA 2014
(Elección Imponible) hasta la cuota imponible del Monto de Elección de Bono Imponible
Máximo de tal Reclamación de Bonos del ELA 2014 y el resto de esta será una
Reclamación de Bonos del ELA 2014.

1.35    **Recuperación de Bonos del ELA 2014:** la recuperación acumulada por
parte de los tenedores de Reclamaciones de Bonos del ELA 2014 Permitidas,
Reclamaciones de Bonos de Garantía del ELA 2014 Permitidas y Reclamaciones de Bonos
del ELA 2014 de Inversión Permitidas a causa de cualquiera de dichas Reclamaciones, que
consiste en (a) mil doscientos trece millones cuatrocientos setenta y ocho mil ochocientos
setenta y siete dólares con treinta y cinco centavos ($ 1,213,478,877.35) en Efectivo, (b)
mil cuatrocientos sesenta y un millones nueve mil ciento doce dólares ($ 1,461,009,112.00)
en capital original de Nuevos bonos de interés actual de OG, (c) noventa y seis millones
setecientos treinta y cuatro mil trescientos cuarenta y seis dólares ($ 96,734,346.00) en
capital original de Nuevos CAB (bonos de revalorización de capital, por sus siglas en
inglés) al 5.375 % de OG, (d) sesenta y tres millones once mil doscientos setenta dólares
con noventa y un centavos ($ 63,011,270.91) en capital original de Nuevos CAB al 5.0 %
de OG y (e) veinte y doscientos sesenta y seis milésimas por ciento (20.266 %) de los CVI
de OG.

1.36    **Bonos del ELA 2014:** en su conjunto, los Bonos de Obligaciones Generales
de 2014, Serie A, emitidos por el ELA en el capital original de tres mil quinientos millones
de dólares ($ 3,500,000,000.00).

1.37    **Reclamación de Bonos de Garantía del ELA 2014:** una Reclamación
contra el ELA a causa de la garantía de plena fe y crédito y poder impositivo del ELA,
según se autorice mediante acción, legislación o resolución de la Legislatura del ELA de
(a) una filial, agencia o instrumentalidad cuya garantía se ejecutó, otorgó o adoptó durante
el período del 1 de enero de 2014 hasta la Fecha de Petición del ELA no inclusive, (b) el
bono de la APA que, a la Fecha de Petición del ELA, se encontraba en el capital pendiente
de doscientos veinticinco millones quinientos treinta y tres mil setecientos dólares y
cuarenta y cinco ($ 225,533,700.45) y (c) las notas de bonos anticipados de la AFI, Serie
2015, que, a la Fecha de Petición del ELA, alcanzaban el capital pendiente de setenta y
ocho millones ciento cuarenta y cinco mil dólares ($ 78,145,000.00).

1.38    **Reclamación de Bonos de Garantía del ELA 2014 (Elección Imponible):** una Reclamación de Bonos de Garantía del ELA 2014, cuyo tenedor es un Inversor de Puerto Rico que ha optado de manera afirmativa por recibir una Distribución de Bonos Imponibles, _disponiéndose, sin embargo_, que en caso de que las Distribuciones de Bonos Imponibles sean optadas por Inversores de Puerto Rico que mantienen Reclamaciones de Bonos del ELA y Reclamaciones de Bonos de Garantía del ELA que excedan el Monto de Elección de Bono Imponible Máximo, tal Reclamación de Bonos de Garantía del ELA 2014 será una Reclamación de Bonos de Garantía del ELA 2014 (Elección Imponible) hasta la cuota imponible del Monto de Elección de Bono Imponible Máximo de tal Reclamación de Bonos de Garantía del ELA 2014 y el resto de esta será una Reclamación de Bonos del ELA 2014.

1.39    **Distribución de Bonos Imponibles de Garantía del ELA 2014:** la distribución a realizar a cada tenedor de una Reclamación de Bonos de Garantía del ELA 2014 (Elección Imponible) Permitida a tenor con los términos y disposiciones de la Sección 15.1 del presente.

1.40    **Distribución de Bonos Imponibles del ELA 2014:** la distribución a realizar a cada tenedor de una Reclamación de Bonos del ELA 2014 (Elección Imponible) Permitida a tenor con los términos y disposiciones de la Sección 49.1 del presente.

1.41    **5.5 % de IVU:** los ingresos y cobros presentes y futuros generados por la porción del Impuesto sobre las Ventas que corresponde a una tasa impositiva de cinco con cinco por ciento (5.5 %).

1.42    **AAFAF**: la Autoridad de Asesoría Financiera y Agencia Fiscal, una empresa pública e instrumentalidad del Estado Libre Asociado, cuyo nombre en inglés es Puerto Rico Fiscal Agency and Financial Advisory Authority.

1.43    **Orden de la ACR:** la Orden específica (A) que autoriza la conciliación administrativa de reclamaciones, (B) que aprueba formas adicionales de notificaciones y (C) que otorga medidas relacionadas con fecha 12 de marzo de 2020 [Caso núm. 17-3283-LTS, expediente electrónico de causa núm. 12274].

1.44    **Ley 106:** la Ley 106 de 2017 que creó el sistema de pensión prepaga conocido como «PayGo» y estableció un sistema de retiro de aportación definida para reemplazar el plan de beneficio de retiro a tenor con la Ley núm. 12 del 19 de octubre de 1954, y sus modificaciones, la Ley 3-2013, y sus modificaciones, y la Ley 160-2013 y sus modificaciones.

1.45    **Junta de la Ley 106:** la junta creada a tenor con la Ley 106.

1.46    **Reclamación de Participante del SRE Activo:** una Reclamación de un Participante del SRE mantenida por un Participante Activo.

1.47     **Reclamación de Participante del SRJ Activo:** una Reclamación de un Participante SRJ mantenida por un Participante Activo.

1.48     **Participante Activo:** un Participante que no es un Pensionado.

1.49     **Reclamación de Participante del SRM Activo:** una Reclamación de un Participante del SRM mantenida por un Participante Activo.

1.50     **Fecha Límite de Reclamación Administrativa:** a menos que el Tribunal del Título III ordene lo contrario, la fecha establecida por el Tribunal del Título III y establecida en la Orden de Confirmación como el último día para presentar la evidencia de Reclamaciones de Gastos Administrativos; dicha fecha no será posterior a noventa (90) días de la Vigencia, después de dicha fecha, cualquier Reclamación de Gastos Administrativos para la cual no se haya presentado evidencia se considerará excluida para siempre y los Deudores y Deudores Reorganizados no tendrán obligación alguna con respecto a estas; disponiéndose, sin embargo, que no se requerirá presentar evidencia de Reclamación de Gastos Administrativos si tal Reclamación de Gastos Administrativos (a) se incurrió (i) a tenor con una orden del Tribunal del Título III o (ii) con la autorización por escrito de las Partes del Gobierno relevantes que otorgan tal Reclamación de Gastos Administrativos de manera expresa o (b) es una Reclamación Profesional.

1.51     **Reclamación de Gastos Administrativos:** una Reclamación contra los Deudores o sus Activos que constituye un costo o gasto administrativo de los Casos de Título III presentado o autorizado a ser presentado, en o antes de la Fecha Límite de Reclamación Administrativa, a tenor con las secciones 503(b) y 507(a)(2) del Código de Quiebras que surge durante el período hasta la Vigencia inclusive y que cumple de otro modo con la legislación de Puerto Rico aplicable, lo que incluye, de manera no taxativa, sujeto a que ocurra la Vigencia, y salvo según lo previsto en la Sección 3.5 de la presente, los Costos de Perfeccionamiento y Tarifas del Acuerdo de Apoyo al Plan; disponiéndose, sin embargo, que bajo ninguna circunstancia una Reclamación de Gastos Administrativos incluya la Reclamación de Gastos Administrativos del Acuerdo de Apoyo al Plan.

1.52     **Orden de RAL (Resolución Alternativa de Litigios):** la Orden específica (A) que autoriza procedimientos de resolución alternativa de litigios, (B) que aprueba formas adicionales de notificaciones, (C) que aprueba envíos propuestos y (D) que otorga medidas relacionadas, con fecha____ de 1 de abril de 2020 [Caso núm. 17-3283-LTS, expediente electrónico del caso núm. 12576].

1.53     **Procedimientos de RAL:** los procedimientos de resolución alternativa de litigios autorizados a tenor con la Orden de RAL.

1.54     **Filial:** con respecto a cualquier Entidad especificada, cualquier otra Entidad que, directa o indirectamente, mediante uno o más intermediarios, controle, sea controlada o esté sujeta al control regular de tal Entidad.

1.55     **AFSCME**: la American Federation of State, County and Municipal Employees (Federación Estadounidense de Empleados Municipales, de Condados y Estatales), en su nombre y en nombre de sus dos secciones locales, SPU, AFSCME Council 95 y Capítulo de Retirados de SPU y sus 14 sindicatos locales afiliados en Puerto Rico.

1.56     **Contratos de negociación colectiva de AFSCME:** aquellos determinados contratos de negociación colectiva entre AFSCME y el ELA que se encuentran enumerados en el Anexo «G» del presente.

1.57     **Reclamaciones de Empleados de AFSCME:** una Reclamación que surge o está relacionada con los contratos de negociación colectiva de AFSCME.

1.58     **Acuerdo de Apoyo al Plan de AFSCME:** ese determinado Acuerdo de Apoyo al Plan, con fecha 7 de junio de 2019, entre la Junta de Supervisión, el ELA y AFSCME, según se modifique ocasionalmente.

1.59     **Pliego de Términos de AFSCME:** el pliego de términos adjunto como Anexo «A» al Acuerdo de Apoyo al Plan de AFSCME.

1.60 **Permitida:** con respecto a cualquier Reclamación, tal Reclamación o parte de esta (a) de la cual se presentó evidencia en o antes de la Fecha Límite aplicable o (b) si no se presentó evidencia de Reclamación de manera oportuna, la cual se haya enumerado (o se enumere de aquí en adelante) por parte de los Deudores en la Lista de Acreedores y no se enumera posteriormente como «controvertida», «condicional» o «pendiente» o (c) permitida a tenor con (i) la sección 502(h) del Código de Quiebras, aplicable al Caso presentado conforme al Título III en virtud de la Sección 301 de PROMESA, (ii) los términos del Plan o (iii) una Orden Final; disponiéndose, sin embargo, que, con respecto a cualquier Reclamación descrita en la cláusula (a) o (b) que precede, tal Reclamación se considerará Permitida solo si, y en la medida en que, no se haya interpuesto ninguna objeción a su admisión, ni acción de subordinar de manera equitativa o limitar de otro modo la recuperación con respecto a esta, dentro del plazo de prescripción aplicable establecido en el Plan, el Código de Quiebras, las Normas de Quiebras o una Orden Final, o respecto a la cual se ha interpuesto una objeción y tal Reclamación se concedió total o parcialmente mediante una Orden Final. A los efectos de determinar el monto de una «Reclamación Permitida» con respecto a las distribuciones dentro de una Clase, se deducirá de esta un monto igual al monto de cualquier descuento sobre el valor de la emisión original no devengado a la fecha inmediatamente anterior a la Fecha de Petición del ELA y cualquier Reclamación que los Deudores puedan tener contra un tenedor de esta, en la medida en que tal Reclamación se pueda compensar a tenor con la legislación de quiebra y no quiebra aplicable. Sin perjuicio de cualquier disposición que indique lo contrario en el presente (x) las Reclamaciones permitidas únicamente con el fin de votar para aceptar o rechazar el Plan a tenor con una orden del Tribunal del Título III no se considerarán como «Permitidas» según el presente a menos que se especifique lo contrario en el presente o por orden del Tribunal del Título III, (y) para cualquier fin a tenor con el Plan, «Permitida» no incluirá intereses, sanciones ni cargos por mora que surjan de o se relacionen al período desde y posterior a la Fecha de Petición y (z) «Permitida» no incluirá ninguna Reclamación sujeta a rechazo a tenor con la sección 502(d) del Código de Quiebras.

1.61 **Reclamación Permitida:** una reclamación, en la medida en que es Permitida o se permite.

1.62 **Ambac:** Ambac Assurance Corporation o su sucesor o delegado.

1.63     **Litigio Relacionado a Designaciones:** en su conjunto, el litigio designado (a) *Pinto Lugo, et al. c. Estados Unidos* procedimiento contencioso núm. 18-00041-LTS, actualmente pendiente en el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito, (b) *Hermandad De Empleados Del Fondo Del Seguro Del Estado, Inc., et al. c. Estados Unidos*, Caso núm. 19-2243 (apelación del procedimiento contencioso núm. 18-00066), actualmente pendiente en el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito, (c) *Hernández-Montañez, et al. c. Junta de Supervisión y Administración Financiera para Puerto Rico*, procedimiento contencioso núm. 18-00090, actualmente pendiente en el Tribunal del Título III y (e) todo otro litigio que esté actualmente pendiente o pueda iniciarse durante el período desde y posterior a la fecha del presente hasta la Vigencia inclusive, en donde las reclamaciones o Causas de acción consistentes con o similares a aquellas presentadas o que podrían presentarse en los litigios mencionados anteriormente se han presentado.

1.64     **Activos:** con respecto a los Deudores, (i) todos los «bienes» de los Deudores, lo que incluye, de manera no taxativa, los bienes que figuran en los libros contables y registros de los Deudores y la Orden de Confirmación a la Vigencia y (ii) todas las Causas de acción, y cualquier ingreso ulterior de estas, que hayan o puedan haber iniciado los Deudores u otro representante autorizado a beneficio de los Deudores y sus Acreedores, a menos que se modifique o se exima a tenor con el Plan o una Orden Final, lo que incluye, de manera no taxativa, cualquier Acción Preventiva.

1.65     **Assured:** Assured Guaranty Corp. y Assured Guaranty Municipal Corp, junto con sus respectivos sucesores o delegados.

1.66     **Precio de aceleración de Assured:** un precio igual al capital pendiente de un Bono Asegurado de Assured más interés acumulado e impagado sobre este o, en el caso de cualquiera de los bonos de apreciación de capital, el monto compuesto de este.

1.67     **Opción de Pago de Precio de Aceleración de Assured:** opción de Assured a tenor con la Sección 71.1 del presente si (a) en o antes del momento de la fijación del precio de los Nuevos Bonos de OG de Assured con respecto a los cuales Assured ha ejercido la Elección de Assured, Assured determina, en función de su evaluación de buena fe de las circunstancias, que los Nuevos Bonos de OG de Assured no se pueden vender en el mercado bajo términos aceptables para Assured o (b) tales Nuevos Bonos de OG de Assured no se emiten al o los suscritores por cualquier razón, la elección, a su entera discreción, del pago del Precio de Aceleración de Assured aplicable a los tenedores de cualquier Bono Asegurado de Assured con respecto a los cuales Assured ha ejercido la Elección de Assured y la recepción, a la Vigencia, de los Nuevos Bonos de OG de Assured sobre los cuales se ejerce la Opción de Pago del Precio de Aceleración de Assured y cualquier Efectivo u otros Nuevos Valores de Assured atribuibles a los Bonos Asegurados de Assured relevantes, que los Nuevos Bonos de OG de Assured pueden, a elección de Assured, asegurarse de acuerdo con una nueva póliza de seguros emitida por Assured con términos aceptables para esta.

1.68 **Elecciones de Bonistas de Assured:** en su conjunto, las elecciones proporcionadas a los Bonistas de Assured Asegurados a tenor con la Sección 71.1 del presente en caso de que Assured no ejerza la Elección de Assured.

1.69 **Reclamaciones de la ACT/ELA de Assured:** en su conjunto, las Reclamaciones de la ACT/ELA que surgen de los Bonos de la ACT asegurados por Assured.

1.70 **CVI de Assured:** en su conjunto, los CVI y los CVI de Recuperación asignables a los titulares de Reclamaciones de Bonos Asegurados por Assured.

1.71 **Elección de Assured:** los derechos de Assured, según se establece en la Sección 71.1 del presente, de recibir el Efectivo y los CVI de recuperación asignables a tenedores de Bonos Asegurados de Assured y causar que todo o una parte de los Bonos Asegurados de Assured seleccionados por Assured se paguen, en su totalidad, en la Vigencia, a un Precio de Aceleración de Assured igual al capital pendiente de tales Bonos Asegurados de Assured más el interés acumulado y no pagado sobre este (o en el caso de cualquier bono de apreciación de capital, el monto compuesto de este) a la Vigencia de (a) las ganancias de todos o cualquier parte de los Nuevos Bonos de OG de Assured asignables a tenedores de Bonos Asegurados de Assured, cuyos Nuevos Bonos de OG de Assured se (i) asegurarán, a elección de Assured, de acuerdo con una nueva póliza de seguros emitida por Assured con términos aceptables para Assured, (ii) suscribirán en una «oferta» dentro del significado del a Norma 15c2-12 de la SEC y (iii) vendidos en el mercado de tal forma que se emitan y se entreguen a tal o tales suscriptores en la Vigencia y (b) en la medida de que tales ganancias de los Nuevos Bonos de OG de Assured no sean suficientes para pagar el Precio de Aceleración, procurará que se paguen montos iguales a tal faltante a Assured de acuerdo con la Pólizas de Seguros de Assured que aseguran los Bonos Asegurados de Assured.

1.72 **Pólizas de Seguro de Assured:** las pólizas de seguros existentes emitidas por Assured con respecto a los Bonos Asegurados de Assured, junto con todo acuerdo y otro documento relacionados con este.

1.73 **Reclamaciones de Bonos Asegurados de Assured:** una Reclamación contra el ELA o de la AEP, según proceda, a causa de un Bono Asegurado de Assured, lo que incluye una Reclamación de Bonos del ELA Antiguos (Assured), Reclamación de Bonos del ELA 2011 (Assured), Reclamaciones de Bonos Series D/E/PIB del ELA 2011 (Assured), Reclamación de Bonos del ELA 2012 (Assured), Reclamación de Bonos de Garantía del ELA Antiguos (Assured) o Reclamación de Bonos de la AEP Antiguos (Assured) o Reclamación del Centro de Convenciones/ELA (únicamente en la mediad relacionada con un Bono de la ADCC asegurado por Assured).

1.74 **Bonos Asegurados de Assured:** en su conjunto, los Bonos de OG y los Bonos de la AEP asegurados por Assured, lo que incluye, de manera no taxativa, a tenor con una póliza de seguros de mercado secundario.

1.75      **Bonista Asegurado de Assured:** el tenedor beneficiario de un Bono Asegurado de Assured.

1.76      **Nuevos Bonos de OG de Assured:** los Nuevos Bonos de OG asignables a tenedores de Reclamaciones de Bonos Asegurados de Assured.

1.77      **Nuevos Valores de Assured:** en su conjunto, los Nuevos Bonos de OG de Assured y los CVI de Assured.

1.78      **Tratamiento de Assured:** el tratamiento de Reclamaciones de Bonos Asegurados de Assured establecido en la Sección 72.1 del presente.

1.79      **Acciones Preventivas:** aquellas acciones o recursos preventivos, de recuperación, subordinación u otros identificados en el Anexo «A» del presente, según se cambie o modifique tal Anexo «A» hasta la Vigencia inclusive, contra cualquier Entidad presentada por los Deudores o en nombre de estos contra una Entidad a tenor con las secciones 510, 544, 545, 547, 548, 549, 550, 551, 552 y 553 del Código de Quiebras, aplicable a los Casos de Título III en virtud de la Sección 301 de PROMESA o legislación aplicable que no sea de quiebra; disponiéndose, sin embargo, que, bajo ninguna circunstancia las «Acciones de Revocación» incluyan (a) ninguna Reclamación o Causa de acción contra ninguna Entidad relacionada con Reclamaciones de Bonos del ELA, Reclamaciones de Bonos de la AEP o Reclamaciones de Bonos de Garantía del ELA o notas de bonos anticipados de la AFI, (b) cualquier Reclamación o Causa relacionada a la Cuarta Estipulación Enmendada entre el ELS de Puerto Rico y la Autoridad de Carreteras y Transportación de Puerto Rico con respecto a la Orden de interrupción del plazo de prescripción y consentimiento [Caso núm. 17-3283-LTS, expediente electrónico de caso núm. 15854], y sus modificaciones, que se rescinde al ingresar la Orden de Confirmación o (c) cualquier Reclamación o Causa relacionada a la Tercera Estipulación Enmendada y la Orden de Consentimiento entre Deudores de Título III (que no sean COFINA) y la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico que actúa en nombre de las Entidades Gubernamentales Enumeradas en el Anexo «B» con respecto a la Interrupción del plazo de prescripción [Caso núm. 17-3283-LTS, expediente electrónico de caso núm. 15795], y sus modificaciones, que se rescinde al ingresar la Orden de Confirmación.

1.80      **Intereses de Acciones de Revocación del ELA:** el tramo de interés económico en el Fideicomiso de Acciones de Revocación asignado de tenor con los términos y disposiciones del Plan a la Recuperación de GUC (reclamaciones generales no aseguradas, por sus siglas en inglés) del ELA y con relación solo a recuperaciones netas atribuibles a Acciones de Revocación relacionadas al Caso de Título III del ELA.

1.81      **Intereses de Acciones de Revocación del SRE:** el tramo de interés económico en el Fideicomiso de Acciones de Revocación asignado a tenor con los términos y disposiciones del Plan al Fondo de GUC del SRE y con relación solo a recuperaciones netas atribuibles a Acciones de Revocación relacionadas al Caso de Título III del SRE.

1.82     **Fideicomiso de Acciones de Revocación:** el fideicomiso  a crear en o antes de la Vigencia en la cual la Vigencia se transferirá a la autoridad para litigar  o conciliar  y transigir  las Acciones de Revocación.

1.83     **Contrato de Fideicomiso de Acciones de Revocación:** el acuerdo a celebrar y cumplir  en o antes de la  Vigencia que proporciona,  entre otras cosas, el litigio continuado  de Acciones preventivas.

1.84     **Activos del Fideicomiso de Acciones de Revocación:** en su conjunto,  (a) las Acciones de Revocación y (b) fondos mantenidos en cuenta de plica a la Vigencia con respecto al compromiso  y acuerdo de determinadas acciones de revocación antes de la Vigencia (neto de los gastos incurridos  por el agente de la cuenta de plica con respecto a este y (c) cualquier otra acción que haya sido presentada por o en nombre de los Deudores en busca de recuperaciones afirmativas  y cuyas acciones se establecen en los litigios respectivos enumerados en el Anexo «B» de la presente; disponiéndose,  sin embargo, que, bajo ninguna circunstancia los «Activos del Fideicomiso  de Acciones de Revocación» incluyan  acción alguna contra las Partes Eximidas.

1.85     **Beneficiarios del Fideicomiso de Acciones de Revocación:** en su conjunto, los tenedores de Intereses de Acciones de Revocación del ELA e Intereses de Acciones de Revocación  del SRE.

1.86     **Junta del Fideicomiso de Acciones de Revocación:** los tres (3) miembros de la junta designados a la Vigencia para regir el Fideicomiso  de Acciones de Revocación con (a) dos (2) directivos  seleccionados  por el Comité de Acreedores y (b) un (1) directivo seleccionado por la Junta de Supervisión.

1.87     **Fideicomisario de Acciones de Revocación:** el fideicomisario  designado a tenor con los términos  y disposiciones  del Contrato de Fideicomiso  de Acciones de Revocación, lo que incluye,  de manera no taxativa, cualquier  sucesor de este.

1.88     **Intereses del Fideicomiso de Acciones de Revocación:** en su conjunto los Intereses del Fideicomiso  de Acciones de Revocación del ELA y los Intereses del Fideicomiso  de Acciones de Revocación del SRE.

1.89     **Fecha de Elección:** la o las fechas límite  establecidas por el Tribunal  del Título  III y establecidas en la Orden de Declaración  de Divulgación  para la presentación de Papeletas/Formularios  de Elección y la elección de tratamientos  alternativos  a tenor con los términos  y disposiciones  del Plan.

1.90    **Papeleta/Formulario de Elección:** la papeleta y formulario de elección, cuya forma será aprobada por el Tribunal del Título III, distribuidos a cada tenedor o asegurador, según corresponda, de una Reclamación afectada con derecho a voto o que realice de otro modo una elección con respecto al Plan, en cuyo formulario se indique, entre otras cosas, (a) la aceptación o rechazo del Plan y/o, en la medida que proceda, una elección de distribución y tratamiento que pueda ser necesaria a tenor con las disposiciones del Plan.

1.91    **Código de Quiebras:** la Ley de Reforma de Quiebras de 1978, y sus modificaciones, en la medida codificada en el Título 11 del Código de los Estados Unidos y aplicable a todos los Casos de Título III.

1.92    **Reglamento sobre Quiebras:** las Reglas Federales de Procedimiento de Quiebra, tal como fueron aprobadas por el Tribunal Supremo de los Estados Unidos a tenor con la sección 2075 del Título 28 del Código de los Estados Unidos, según se aplica a los Casos de Título III.

1.93    **Fecha Límite:** las fechas respectivas establecidas por el Tribunal del Título III antes de las cuales deben presentarse las evidencias de la Reclamación con respecto a tales Reclamaciones contra un Deudor, a tenor con (a) las Órdenes de Fecha Límite, (b) una Orden Final del Tribunal del Título III o (c) el Plan.

1.94    **Órdenes de Fecha Límite:** las órdenes del Tribunal del Título III que establecen las fechas límite para la presentación de evidencias de Reclamaciones contra los Deudores o sus Activos, lo que incluye, de manera no taxativa, esa determinada (a) Orden (A) que establece fechas límites y procedimientos para presentar evidencia de Reclamaciones y (B) aprueba el modo y forma de notificación de estas [Caso núm. 17-3283- LTS, expediente electrónico de caso núm. 2521], (b) la Orden (A) que extiende las fechas límites para presentar evidencias de Reclamaciones y (B) aprueba el modo y forma de notificación de estas [Caso núm. 17-3283-LTS, expediente electrónico de caso núm. 3160] y (c) la Orden (A) que establece fechas límites y procedimientos para presentar evidencias de Reclamaciones y aprueba el modo y forma de notificación de estas [Caso núm. 19-5523-LTS, expediente electrónico de caso núm. 55].

1.95    **Aportación de Base:** ciento setenta y cinco millones de dólares ($ 175,000,000.00), el monto que el ELA aportará, o dispondrá que se aporte, a la Reserva de Pensiones, a tenor con los términos y disposiciones de la Sección 65.2 del Plan; disponiéndose, sin embargo, que, en el caso de que para cualquiera de (a) el cierre del año fiscal del año en que se produce la Vigencia y (b) los siguientes siete (7) años fiscales, el Excedente del Plan Fiscal proyectado según se establece en el Plan Fiscal que entra en vigor en la Vigencia sea igual o mayor a mil setecientos cincuenta millones de dólares ($ 1,750,000,000.00), tal monto aumentará a un monto igual al veinticinco por ciento (25 %) del Excedente del Plan Fiscal proyectado para tal año fiscal.

1.96     **Fecha de Reducción de Beneficios**: la fecha posterior entre el (a) 1 de julio de 2021 y (b) el primer (1er) 1 de julio siguiente a la Vigencia, disponiéndose, sin embargo, que, en el caso en que el período entre la Vigencia y el primer (1er) 1 de julio posterior sea menor que ciento ochenta (180) días, entonces la «Fecha de Reducción de Beneficios» será el primer (1er) día del primer (1er) mes calendario ciento ochenta (180) días después de la Vigencia.

1.97     **Recuperación de Beneficios**: durante el período que va desde la Fecha de Reducción de Beneficios hasta la finalización del año fiscal 2033 inclusive, en el caso en que, en un año fiscal en particular, el Excedente en Caja sea igual o mayor a cien millones de dólares ($ 100,000,000.00), diez por ciento (10 %) de tal Excedente en Caja será (a) asignado y aplicado a prorrata a cada Participante en base al monto de reducciones totales que experimentó cada Participante durante tal año fiscal a tenor con los términos y disposiciones de los Artículos XLIII y XLIV del presente y (b) pago a tal Participante en o antes del 1 de octubre siguiente a la finalización de tal año fiscal; disponiéndose, sin embargo, que tal Recuperación de Beneficios tenga un límite de Reducción de Beneficios mensual por doce (12) para cada Participante para un año fiscal en particular.

1.98     **Reclamación de Bonos**: (a) una Reclamación a causa de un Bono de OG, un Bono de la AEP, una Reclamación de Bono de Garantía del ELA o un Bono del SRE con el monto de tal Reclamación calculado como el capital pendiente de tales bonos más cualquier interés devengado no pagado sobre este, hasta, pero sin incluir, la Fecha de Petición correspondiente para un Bono de OG, la Fecha de Petición del ELA, (b) un Bono de la AEP, la Fecha de Petición de la AEP, (c) una Reclamación de Bono de Garantía del ELA, la Fecha de Petición del ELA y (d) un Bono del SRE, la Fecha de Petición del SRE.

1.99     **Categoría de Recuperación de Bonos**: en su conjunto, las categorías establecidas en el Anexo «L» del presente con respecto a las Clases de Reclamaciones correspondientes y las distribuciones a realizar a tenor con los términos y disposiciones del Plan.

1.100     **Elección de los Bonistas**: el derecho de tenedores de Reclamaciones de Bonos del SRE Permitidas a adquirir la Cartera de Capital Privado del SRE y los intereses del Fideicomiso del SRE conforme a las disposiciones de la Sección 66.2(b) del presente documento.

1.101     **Día Hábil**: un día que no sea sábado, domingo o cualquier otro día en el cual la ley o una orden ejecutiva determine que las instituciones comerciales bancarias de Nueva York, Nueva York y San Juan, Puerto Rico cierren.

1.102     **Mejoras Capitales**: cualquier proyecto o proyectos financiados, o que se propone sean financiados, total o parcialmente, mediante dinero público, para construir, reconstruir, restaurar, rehabilitar o comprar cualquier equipamiento, bien o instalación, lo que incluye, de manera no taxativa, edificios, instalaciones de parques, infraestructura, sistemas de tecnología de la información u otro equipamiento financiado en una base que no se repite necesariamente y que se utiliza como activo público para el beneficio público.

1.103     **Efectivo:** la moneda de curso legal de los Estados Unidos, lo que incluye, de manera no taxativa, depósitos bancarios, cheques con fondos suficientes y sus equivalentes legales.

1.104     **Causas de Acción:** toda reclamación, causa de acción, derecho de pago, derechos de acción, demanda, deudas, cuotas, sumas de dinero, cuentas, consideración, bono, factura, especialidad, pacto, contrato, controversia, acuerdo, promesa, variación, transgresión, daño y perjuicio, sentencia, remedio, derecho de compensación, reclamación de terceros, reclamación de subrogación, reclamación de aportaciones, reclamación de reembolso, reclamación de indemnización, reconvención y reclamación contra parte (lo que incluye, de manera no taxativa, toda reclamación por incumplimiento de deberes fiduciarios, negligencia, mala praxis, incumplimiento de contrato, complicidad, fraude, inducción, evasión, recuperación, subordinación y toda Acción Preventiva) que esté pendiente o pueda presentarse contra cualquier Entidad que surja en o antes de la Vigencia, en base al derecho o la equidad, lo que incluye, de manera no taxativa, a tenor con el Código de Quiebras, conocido, desconocido, sometido a sentencia, no sometido a sentencia, saldado, no saldado, estipulado, condicional, pagadero, no pagadero, objeto de controversia o no, asegurado o no asegurado y ya sea presentada o presentable de manera directa o derivada, en derecho, equidad o de otra forma y ya sea presentada o no presentada a la Vigencia.

1.105     **ADCC**: la Autoridad del Distrito del Centro de Convenciones de Puerto Rico.

1.106     **Bonos de la ADCC**: en su conjunto, los bonos sin recurso emitidos por la ADCC, en el capital original de cuatrocientos sesenta y ocho millones ochocientos mil dólares ($ 468,800,000.00), conforme a los términos de determinado Acuerdo de Fideicomiso, con fecha del 24 de marzo de 2006, entre la ADCC y JPMorgan Chase Bank, N.A., como fideicomisario, según se complemente y modifique ocasionalmente.

1.107     **Reclamación de Bonos de la ADCC**: en su conjunto, las Reclamaciones contra la ADCC derivadas o relacionadas con los Bonos de la ADCC.

1.108     **Costos de Perfeccionamiento de la ADCC**: en su conjunto, los montos pagaderos establecidos en la Sección 3.8 de la presente, en Efectivo, a la Vigencia, o tan pronto como sea posible después de esta, pero en ningún caso más de diez (10) días hábiles después de la Vigencia, a los Acreedores de Acuerdo de Apoyo al Plan de la ACT/ADCC Iniciales correspondientes conforme a los términos y condiciones del Acuerdo de Apoyo al Plan de la ACT/ADCC, el Artículo III del presente y la Orden de Confirmación.

1.109 **Acreedores con Tasa de Restricción de la ADCC**: en su Conjunto, los Acreedores Iniciales del Acuerdo de Apoyo al Plan de la ACT/ADCC y los Acreedores de Litisconsorcio que tienen y/o aseguran (sin duplicación) Reclamaciones de Bonos de la ADCC que firmen o hayan firmado el Acuerdo de Apoyo al Plan de la ACT/ADCC, el Acuerdo de Litisconsorcio o el Contrato Anexo de la ACT/ADCC relacionado con este, en o antes de que ocurra lo anterior de (a) la expiración del Período de Tasas de Restricción del Acuerdo de Apoyo al Plan de la ACT/ADCC y (b) alcanzar la Obtención del Umbral del Acuerdo de Apoyo al Plan de la ACT/ADCC; disponiéndose, sin embargo, que todas las entidades que firmen un Acuerdo de Litisconsorcio de la ACT/ADCC o un Contrato Anexo de la ACT/ADCC en la fecha en que se logre la Obtención del Umbral de la ACT/ADCC con respecto a las Reclamaciones de Bonos de la ADCC se consideren Acreedores con Tasa de Restricción de la ADCC.

1.110 **Porcentaje de la Tasa de Restricción de la ADCC**: el porcentaje igual a (a) quince millones de dólares ($15,000,000.00) menos el monto que puede ser pagadero a cuenta de los Costos de Perfeccionamiento de la ADCC dividido por (b) el monto total de las Reclamaciones de Bonos de la ADCC en posesión, o en el caso de Assured, se mantiene o asegura y está autorizado a votar conforme a la Sección 301(c)(3) de PROMESA, documentos que rigen y la ley aplicable, por parte de los Acreedores con Tasa de Restricción de la ADCC.

1.111 **Bono de Navidad**: el bono, de haberlo, pagadero a los empleados actuales, antiguos, activos, inactivos y discapacitados del ELA, sus agencias e instrumentalidades a tenor con la Ley núm. 98-1980, reproducida en 3 L.P.R.A. §761, según se modificó por la Ley núm. 3-2013, 3 L.P.R.A §761.

1.112 **Reclamación**: cualquier derecho a pago o cumplimiento, ya sea si tal derecho es sometido a sentencia o no, saldado, no saldado, estipulado, condicional, vencido, no vencido, objeto de controversia o no, legal, equitativo, asegurado o no asegurado, conocido o desconocido, presentado o no presentado; o cualquier derecho equitativo a un remedio para el incumplimiento o ejecución del cumplimiento, sea o no tal derecho a un remedio equitativo sometido a sentencia o no, estipulado, condicional, vencido, no vencido, objeto de controversia o no, con garantía o sin garantía, toda deuda, demanda, daño y perjuicio, derecho, remedio, pérdida, responsabilidad, obligación, sentencia, acción, Causa de acción, intimación o reclamación de cualquier tipo o naturaleza, en derecho, equidad o de otro modo.

1.113 **Clase**: una categoría de tenedores de Reclamaciones establecida en el Artículo IV del Plan.

1.114 **Acciones de Recuperación**: en su conjunto, el litigio designado (a) La Junta de Supervisión y Administración Financiera para Puerto Rico c. Ambac Assurance Corporation, *et al.*, procedimiento contencioso núm. 20-00005-LTS, actualmente pendiente en el Tribunal del Título III (b) La Junta de Supervisión y Administración Financiera para Puerto Rico c. Ambac Assurance Corporation, *et al.*, procedimiento contencioso núm. 20-00004-LTS, actualmente pendiente en el Tribunal del Título III, (c) La Junta de Supervisión y Administración Financiera para Puerto Rico c. Ambac Assurance Corporation, *et al.*, procedimiento contencioso núm. 20-00003-LTS, actualmente pendiente en el Tribunal del Título III y (d) La Junta de Supervisión y Administración Financiera para Puerto Rico c. Ambac Assurance Corporation, *et al.*, procedimiento contencioso núm. 20-00007-LTS, actualmente pendiente en el Tribunal del Título III.

1.115 **Contrato de Emisión de CVI de Recuperación:** el contrato de emisión a celebrarse y otorgarse en o antes de la Vigencia a tenor con lo cual el ELA emitirá los CVI de Recuperación y que incluye todos los términos y disposiciones relacionados a estos, según se modifique, complemente o cambie ocasionalmente a tenor con sus términos y condiciones.

1.116 **CVI de Recuperación:** en su conjunto, los valores de obligación general, el pago por el cual el Estado Libre Asociado ha prometido su plena fe, crédito y poder impositivo conforme al Artículo VI de la Constitución del Estado Libre Asociado y la ley aplicable de Puerto Rico, a ser emitido en la Vigencia por el Estado Libre Asociado conforme a los términos y condiciones del Plan, incluidos, sin limitación, el Anexo «J» del presente, la Orden de Confirmación, el Contrato de Emisión de CVI de Recuperación y la Legislación de CVI.

1.117 **Recuperación de Recuperación:** la recuperación acumulada por parte de los tenedores de Reclamaciones del Centro de Convenciones/ELA Permitidas, Reclamaciones de la ACT/ELA Permitidas, Reclamaciones de la AMA/ELA Permitidas y Reclamaciones de Impuesto de Ron de la AFI/ELA de Transacción Permitidas, que consiste en CVI de Recuperación distribuidas a tenedores de tales Reclamaciones según el presente y sujeto a la Cascada de Pagos Anual, según se define en el Anexo «J» del presente y se estableció en la Sección 70.2(a) del presente y el Anexo «J» del presente.

1.118 **COFINA:** la Corporación del Fondo de Interés Apremiante de Puerto Rico, una empresa pública e instrumentalidad del ELA que constituye una entidad política y corporativa independiente y separada del ELA.

1.119 **Bonos de COFINA:** en su conjunto, los valores emitidos por COFINA a tenor con el Plan de COFINA, la Orden de Confirmación de COFINA, la Legislación de los Bonos de Gravamen COFINA y el Contrato de Emisión de Bonos COFINA.

1.120 **Contrato de Emisión de Bonos COFINA:** el contrato de fideicomiso a tenor con el cual COFINA emitió los Bonos COFINA, según se modifique, complemente o cambie ocasionalmente a tenor con sus términos y condiciones.

1.121 **Legislación de Bonos COFINA:** la Ley 241 de la Asamblea Legislativa de Puerto Rico aprobada el 15 de noviembre de 2018, que modifica la Ley 91 de la Asamblea Legislativa de Puerto Rico, aprobada el 13 de mayo de 2006, y sus modificaciones.

1.122 **Orden de Confirmación de COFINA:** esa determinada Orden y sentencia modificada que confirma el tercer plan de ajuste enmendado elaborado a tenor con el Título III de la Corporación del Fondo de Interés Apremiante de Puerto Rico, con fecha 5 de febrero de 2019 [Caso núm. 17-3284-LTS, expediente electrónico de caso núm. 561].

1.123 **Plan de COFINA:** ese determinado Tercer plan de ajuste enmendado elaborado conforme al Título III de la Corporación del Fondo de Interés Apremiante de Puerto Rico, con fecha 9 de enero de 2019 [Caso núm. 17-3284-LTS, expediente electrónico de caso núm. 436].

1.124 **ELA:** el Estado Libre Asociado de Puerto Rico.

1.125 **Constitución del ELA:** la Constitución del Estado Libre Asociado de Puerto Rico.

1.126 **Elección del ELA:** el derecho del ELA a adquirir la Cartera de Capital Privado y el interés del Fideicomiso del SRE conforme a las disposiciones de la Sección 66.2(a) del presente documento.

1.127 **Plan de Instrumentalidades del ELA:** un plan de ajuste o la Modificación Calificada del Título VI para cualquier instrumentalidad del ELA, lo que incluye cualquier plan de ajuste o Modificación Calificada del Título VI para ACT, ADCC o AFI.

1.128 **Legislatura del ELA:** la Asamblea Legislativa de Puerto Rico.

1.129 **Fecha de Petición del ELA:** 3 de mayo de 2017.

1.130 **Caso de Título III del ELA:** el caso presentado conforme al Título III en virtud de PROMESA pendiente para el ELA en el Tribunal del Título III, bajo el epígrafe *In re Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, et al.*, Caso núm. 17-3283-LTS (D.P.R.).

1.131 **Tope global:** la limitación de la Amortización de la deuda anual máximo pagadero sobre la Deuda con garantía impositiva neta, establecida a tenor con la Ley de Responsabilidad en la Emisión de Deuda y la Política de Gestión de la Deuda que será aplicable además de la limitación impuesta al incurrir en Deuda pública establecida a tenor con el Artículo VI, Sección 2, de la Constitución del Estado Libre Asociado.

1.132 **Fecha de Confirmación:** la fecha en la cual el Actuario del Tribunal del Título III registra la Orden de Confirmación en el expediente.

1.133 **Vista de Confirmación:** la vista llevada a cabo por el Tribunal del Título III a tenor con la sección 1128(a) del Código de Quiebras y la Sección 314 de PROMESA para considerar la confirmación del Plan, según se aplace o continúe la vista ocasionalmente.

1.134 **Orden de Confirmación:** la orden del Tribunal del Título III que confirma el Plan a tenor con la Sección 314 de PROMESA y la sección 1129 del Código de Quiebras, aplicable a los Casos de Título III en virtud de la Sección 301 de PROMESA, cuya orden será en forma y en contenido razonablemente aceptable para los Acreedores del Acuerdo de Apoyo al Plan Iniciales.

1.135 **Grupo de Deuda Constitucional:** el Grupo de Deudores Constitucional Ad Hoc que consiste en los Miembros del Grupo de Deuda Constitucional, según cambie la membresía opcionalmente.

1.136 **Miembros del Grupo de Deuda Constitucional:** BlackRock Financial Management Inc., Brigade Capital Management, EMSO Asset Management Limited, First Pacific Advisors, LP, Mason Capital Management, LLC, Silver Point Capital, L.P. y VR Advisory Services Ltd., cada uno en representación de sí mismo o en representación de sus clientes participantes o determinados de sus fondos gestionados respectivos y, en cada caso, sus sucesores y cesionarios respectivos con respecto a cesiones realizadas a tenor con los términos y condiciones del Acuerdo de Apoyo al Plan de la AEP/OG.

1.137 **Costos de Perfeccionamiento:** en su conjunto, los Costos de Perfeccionamiento de la ADCC y los Costos de Perfeccionamiento de la AEP/OG.

1.138 **Reclamación de Conveniencia:** una Reclamación sin Garantía General del ELA Permitida o una Reclamación sin Garantía General del SRE Permitida (a) que es igual o menor que diez mil dólares ($ 10,000.00) o (b) el tenedor de esta que, a su juicio, eligió reducir el monto de tal Reclamación sin Garantía General del ELA Permitida o Reclamación sin Garantía General del SRE Permitida, según el caso, a diez mil dólares ($ 10,000.00) a tenor con los términos y disposiciones establecidos en la Sección 56.1 del presente; disponiéndose, sin embargo, que, sin perjuicio de lo que antecede, un tenedor de múltiples Reclamaciones sin Garantía Generales del ELA Permitidas o Reclamaciones sin Garantía Generales del SRE Permitidas que son mayores que veinte mil dólares ($ 20,000.00) puede elegir reducir todas dichas Reclamaciones a un monto acumulado de veinte mil dólares ($ 20,000.00).

1.139 **Acreedor:** cualquier Entidad con una Reclamación contra los Deudores o cualquier Activo del Deudor, a tenor con la sección 102(2) del Código de Quiebras, contra cualquier otro bien de los Deudores, lo que incluye, de manera no taxativa, una Reclamación contra los Deudores de un tipo especificado en la sección 502(g), 502(h) o 502(i) del Código de Quiebras, en cada caso, únicamente en la calidad de tal Entidad como tal.

1.140     **Comité de Acreedores:** el comité estatutario de tenedores de reclamaciones no aseguradas designado en, entre otros casos, el Caso de Título III del ELA, el Caso de Título III del SRE y el Caso de Título III de la ACT.

1.141     **CUSIP:** los códigos numéricos de nueve dígitos o alfanuméricos de nueve dígitos de los procedimientos del Comité de Identificación de Valores Uniforme.

1.142     **Documentos del Fideicomiso de custodia:** en su conjunto, los acuerdos de fideicomiso y otros documentos e instrumentos relacionados con los fideicomisos de custodia que se crearán a partir de la ACT/Vigencia y en relación con los Bonos Asegurados por Assured o los Bonos Asegurados por National, si corresponde, y las distribuciones que se realizarán conforme al Plan de la ACT y el Plan, donde los acuerdos de fideicomiso tendrán forma y contenido razonablemente satisfactoria para la Junta de Supervisión, Assured, y National, según sea el caso.

1.143     **CVI:** En su conjunto, los CVI de OG y los CVI de Recuperación.

1.144     **Contrato de Emisión de CVI:** en su conjunto, el contrato de emisión de CVI de OG y el contrato de emisión de CVI de Recuperación.

1.145     **Legislación de CVI:** la legislación a aprobar en o antes de la Vigencia que autoriza determinadas transacciones contempladas por, y que son coherentes con, el Plan, lo que incluye, de manera no taxativa, legislación que autoriza la emisión de los CVI de OG y los CVI de Recuperación, cuya legislación puede ser parte o estar incluida en la Legislación de Nuevos Bonos de OG.

1.146     **Reserva de pago de CVI:** en la medida en que los pagos expiren para los titulares y aseguradores de Reclamaciones de Bonos de la ACT 98 Prioritarios (Senior) y/o Reclamaciones de Bonos de la ACT 98 Subordinados conforme a los términos y disposiciones del Plan, el Contrato de Emisión de CVI de Recuperación y la Cascada de Distribución de Prioridad de CVI de Recuperación de la ACT del Resumen de Transacción anexo al Acuerdo de Apoyo al Plan de la ACT/ADCC como «Anexo J», pendiente de la entrada de una Orden Final con respecto a la Determinación de Prioridad del Préstamo del BGF, Efectivo pagadero del CVI de Recuperación de la ACT se mantiene en reserva por el agente pagador del CVI de Recuperación o el Fideicomisario de CVI, según sea el caso, conforme a la Documentación del Fideicomiso y el Contrato de Emisión de CVI de Recuperación en una cantidad igual a la diferencia de (a) el monto de Efectivo que se adeudaría a los tenedores y aseguradores de Reclamaciones de Bonos de la ACT 98 Prioritarios (Senior) y Reclamaciones de Bonos de la ACT 98 Subordinados en la medida en que el pago con respecto a los Préstamos a la ACT del BGF estén subordinados al pago con respecto a los Bonos de la ACT 98 menos (b) el monto de Efectivo que se adeudaría a los tenedores y aseguradores de Reclamaciones de Bonos de la ACT 98 Prioritarios (Senior) y Reclamaciones de Bonos de la ACT 98 Subordinados en la medida en que el pago los préstamos a la ACT del BGF sea *pari passu* con respecto al pago a cuenta de los Bonos de la ACT 98.

     1.147     **Fideicomisario de CVI:** el fideicomisario o fideicomisario sustituto, según el caso, designado a tenor con los términos y condiciones del Contrato de Emisión de CVI.

     1.148     **Reclamaciones de Asignaciones del ELA:** en su conjunto, las Reclamaciones contra el ELA que surgen o están relacionadas con endeudamiento solo pagadero mediante asignaciones de la Legislatura del ELA a tenor con préstamos o resoluciones legislativas existentes, lo que incluye, de manera no taxativa, (a) pagarés del ELA o sus agencias o instrumentalidades mantenidos por la CFP para el reembolso del endeudamiento del CFP y (b) préstamos solo pagaderos mediante asignaciones de la Legislatura del ELA a tenor con la legislación o resoluciones legislativas existentes mantenidas por la Autoridad de Recuperación de la Deuda del BGF o el Fideicomiso de Entidad Pública del BGF; disponiéndose, sin embargo, que las «Reclamaciones de Asignaciones del ELA» no incluirán la Reclamación de Gastos Administrativos de la AEP.

     1.149     **Reclamación de Bonos del ELA:** en su conjunto, las Reclamaciones contra el ELA que surgen o están relacionadas con Bonos de OG, lo que incluye las Reclamaciones de Bonos del ELA Antiguos, las Reclamaciones de Bonos del ELA 2011, las Reclamaciones de Bonos Serie D/E/PIB del ELA 2011, las Reclamaciones de Bonos del ELA 2012, las Reclamaciones de Bonos del ELA 2014, las Reclamaciones de Bonos del ELA (Aseguradas) y las Reclamaciones de Bonos del ELA de Inversión.

     1.150     **Reclamaciones de Bonos del ELA (Aseguradas):** en su conjunto, las Reclamaciones de Bonos del ELA Antiguos (Assured), las Reclamaciones de Bonos del ELA Antiguos (National), las Reclamaciones de Bonos del ELA Antiguos (Otro Asegurado), las Reclamaciones de Bonos del ELA Antiguos (Syncora) las Reclamaciones de Bonos del ELA 2011 (Aseguradas), las Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 (Assured) y las Reclamaciones de Bonos del ELA 2012 (Assured).

     1.151     **Plan Fiscal del ELA:** ese determinado Plan fiscal del ELA certificado por la Junta de Supervisión el 27 de mayo de 2020.

1.152 **Reclamación sin Garantía General del ELA:** una Reclamación contra el ELA que no sea una Reclamación de Bonos de la AEP, una Reclamación de Bonos del ELA, una Reclamación de Bonos de Garantía del ELA, una Reclamación de Beneficios de Empleados Retirados o Activos, una Reclamación de Participantes del SRE, una Reclamación de Participantes del SRJ, una Reclamación de Participantes del SRM, una Reclamación de Empleados de AFSCME, una Reclamación de la ACT/ELA, una Reclamación del Centro de Convenciones/ELA, una Reclamación del Impuesto al Ron de la AFI/ELA, una Reclamación de la AMA/ELA, una Reclamación de Asignaciones del ELA, un Reclamación de Incentivo de Energía, una Reclamación de Expropiación (únicamente en la medida en que el monto depositado con el Actuario del Tribunal de Primera Instancia), una Reclamación de Centro Médico, una Reclamación de Productor de Producto Lácteos, una Reclamación de Crédito Fiscal, una Reclamación Subordinada a 510(b) del ELA, una Reclamación Gracia Gracia, una Reclamación de Presentación Tardía, una Reclamación de Conveniencia, cualquier Reclamación sujeta a las disposiciones de la Orden de la ACR o cualquier otra Reclamación que el Tribunal del Título III determina no es una Reclamación sin Garantía General del ELA.

1.153 **Reclamaciones de Bonos de Garantía del ELA:** en su conjunto, las Reclamaciones de Bonos de Garantía del ELA Antiguos, las Reclamaciones de Bonos de Garantía del ELA 2011, las Reclamaciones de Bonos de Garantía del ELA 2012, las Reclamaciones de Bonos de Garantía del ELA 2014 y las Reclamaciones de Bonos de Garantía del ELA Antiguos (Aseguradas).

1.154 **Reclamaciones de Bonos de Garantía del ELA (Aseguradas):** en su conjunto, las Reclamaciones de Bonos de garantía del ELA Antiguos (Assured), las Reclamaciones de Bonos de Garantía del ELA 2011 (National), las Reclamaciones de Bonos de Garantía del ELA Antiguos (Otros Asegurados) y las Reclamaciones de Bonos de Garantía del ELA Antiguos (Syncora).

1.155 **Recuperación de GUC del ELA:** la recuperación acumulada por los tenedores de Reclamaciones sin Garantía Generales del ELA Permitidas, que consisten en (a) ciento veinticinco millones de dólares ($ 125,000,000.00) en Efectivo y (b) las recuperaciones netas por parte del Fideicomiso de Acciones de Revocación asignable a los Intereses de Acciones de Revocación del ELA.

1.156 **Reclamación del Centro de Convenciones/ELA:** la Reclamación contra el ELA que surge o está relacionada con la retención del ELA de determinados fondos históricamente transferidos a la ADCC a tenor con las disposiciones de la Constitución del ELA, cualquier estatuto, regulación u orden ejecutiva, lo que incluye reclamaciones con respecto a los derechos u obligaciones que surgen de (a) la Sección 8 del Artículo VI de la Constitución del ELA, 13 L.P.R.A. §2271v, 23 L.P.R.A. §104(c) y los Boletines Administrativos del Estado Libre Asociado de Puerto Rico núms. OE-2015-46, OE-2016-14 y OE-2016-31 y (b) el endeudamiento emitido por la ADCC a tenor con ese determinado Contrato de Fideicomiso con fecha 24 de marzo de 2006, entre la ADCC y JPMorgan Chase Bank, N.A., como fideicomisario.

1.157    **Recuperación de la Recuperación del Centro de Convenciones/ELA:** la recuperación total por parte de los titulares de las Reclamaciones del Centro de Convenciones/ELA Permitidas, que consiste en el cuatro por ciento (4.0 %) de los CVI de Recuperación, tal como se presenta en el Suplemento 4 del Anexo «J» adjunto.

1.158    **Reclamación de la ACT/ELA:** la Reclamación contra el ELA derivada o relacionada con la retención del ELA de determinados fondos históricamente transferidos a la ACT a tenor con las disposiciones de la Constitución del ELA, cualquier estatuto, regulación u orden ejecutiva, lo que incluye, sin limitación, reclamaciones realizadas a cuenta de Préstamos a la ACT del BGF y reclamaciones con respecto a los derechos u obligaciones que surgen de (a) la Sección 8 del Artículo VI de la Constitución del ELA, 9 L.P.R.A. §2021, 13 L.P.R.A. §31751 (a)(3)(C), 23 L.P.R.A. §104(c) y los Boletines Administrativos del Estado Libre Asociado de Puerto Rico núms. OE-2015-46, OE-2016-14, OE-2016-18, OE-2016-30 y OE-2016-31 y (b) el endeudamiento emitido por la ACT a tenor con esa determinada (i) Resolución núm. 68-18, adoptada el 13 de junio de 1968 y (ii) Resolución núm. 98-06, adoptada el 26 de febrero de 1998.

1.159    **Recuperación de Recuperación de la ACT/ELA:** la recuperación total por parte de los titulares de las Reclamaciones de la ACT/ELA Permitidas, que consiste en el sesenta y ocho por ciento y seis décimos (68.6 %) de los CVI de Recuperación, tal como se presenta en el Suplemento 4 del Anexo «J» adjunto**.**

1.160    **Reclamación de la AMA/ELA:** la Reclamación contra el ELA derivada o relacionada con la retención del ELA de determinados fondos históricamente transferidos a la AMA con respecto a los derechos u obligaciones que surgen a tenor con las disposiciones de la Constitución del ELA, cualquier estatuto, regulación u orden ejecutiva.

1.161    **Recuperación de Recuperación de la AMA/ELA:** la recuperación total por parte de los titulares de las Reclamaciones de la AMA/ELA Permitidas, que consiste en cuatro décimos de uno por ciento (0.4 %) de los CVI de Recuperación, tal como se presenta en el Suplemento 4 del Anexo «J» adjunto.

1.162    **Reclamación de Impuesto de Ron de la AFI/ELA:** la Reclamación contra el ELA que surge de o se relaciona con la retención del ELA de determinados fondos históricamente transferidos a la AFI a tenor con las disposiciones de la Constitución del ELA, cualquier estatuto, regulación u orden ejecutiva, lo que incluye Reclamaciones con respecto a los derechos u obligaciones que surgen de (a) la Sección 8 del Artículo VI de la Constitución del ELA, 3 L.P.R.A. §1914 y los Boletines Administrativos del Estado Libre Asociado de Puerto Rico núms. OE-2015-46, OE-2016-27 y OE-2016-30 y (b) el endeudamiento emitido por la AFI a tenor con ese determinado Contrato de Fideicomiso con fecha 1 de octubre de 1988, entre la AFI y U.S. Bank Trust National Association, como fideicomisario sucesor.

1.163 **Recuperación de Recuperación del Impuesto de Ron de la AFI/ELA:** la recuperación total por parte de los titulares de las Reclamaciones del Impuesto de Ron de la AFI/ELA Permitidas, que consiste en el veintisiete por ciento (27.0 %) de los CVI de Recuperación, tal como se presenta en el Suplemento 4 del Anexo «J» adjunto.

1.164 **Reclamación de Productores Lácteos:** en su conjunto, las Reclamaciones de Suiza Dairy, Inc. y Vaquería Tres Monjitas, Inc. que surgen de y se relacionan con la Resolución de Productores Lácteos que, a la Vigencia, se (a) permitirá en el monto acumulado de sesenta y un millones novecientos noventa y nueve mil novecientos noventa y nueve dólares ($ 61,999,999.00), y (b) asignado a Suiza Dairy, Inc. y Vaquería Tres Monjitas, Inc. en los montos de cuarenta y cuatro millones ochocientos treinta y dos mil ciento noventa y nueve dólares y veintiocho centavos ($ 44,832,199.28) y diecisiete millones ciento sesenta y siete mil setecientos noventa y nueve dólares con setenta y dos centavos ($ 17,167,799.72), respectivamente.

1.165 **Resolución de Productores Lácteos:** el Acuerdo de Resolución Final y el Memorándum de Entendimiento entre las partes, presentados el 29 de octubre de 2013, en el litigio designado Vaquería Tres Monjitas, Inc. y Suiza Dairy, Inc. c. Naftali Soto Santiago, *et al.*, Caso Civil núm. 04-1840 (DRD), pendiente en ese momento en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

1.166 **Deuda:** en su conjunto, bonos, pagarés, préstamos y otras pruebas de endeudamiento a raíz de dinero prestado.

1.167 **Política de Gestión de la Deuda:** la política desarrollada por el ELA junto con la AAFAF, con respecto a la emisión de endeudamientos, según se describe con más detalle en la Ley de Responsabilidad en la Emisión de Deuda y en el presente.

1.168 **Deudores:** en su conjunto, el ELA, el SRE y la AEP.

1.169 **Período de la Política de Deuda:** el período que comienza el primer (1er) día calendario inmediatamente después de la Vigencia y que finaliza en la fecha en la cual no hay más Nuevos Bonos de OG Pendientes.

     1.170     **Ingresos de Política de Deuda:** en su conjunto, sin duplicados, (a) ingresos derivados de impuestos, tarifas, permisos, licencias, multas u otros cargos impuestos, aprobados o autorizados por la Legislatura del ELA, lo que incluye, de manera no taxativa, cualquier ingreso propiedad de, o cedido a, COFINA o cualquier otra instrumentalidad del ELA, (b) todos los demás ingresos o fondos depositados en el Fondo General o cualquier amortización de la deuda u otro fondo gubernamental del ELA y (c) todos los demás ingresos o fondos identificados como «Ingresos de Política de Deuda» en la Política de Gestión de la Deuda; disponiéndose, sin embargo, que los «Ingresos de Política de Deuda» excluirán (x) ingresos y fondos de (i) las Entidades enumeradas en el Anexo 132 al Plan Fiscal del ELA, (ii) municipalidades del ELA y la Corporación de Financiamiento Municipal de Puerto Rico, (y) ingresos de la emisión de bonos y otros préstamos permitidos a tenor con la ley aplicable y (z) fondos transferidos o recibidos del gobierno federal que no sean ingresos de arbitrios federales al consumo de ron producido en el ELA y cubierto al Fondo General; y, disponiéndose, además, que la Política de Gestión de la Deuda puede establecer disposiciones o clarificaciones adicionales con respecto a los ingresos constituye Ingresos de la Política de Deuda coherente con los principios y objetivos establecidos allí, y cuyas disposiciones y clarificaciones serán coherentes con los términos y disposiciones del Acuerdo de Apoyo al Plan de la AEP/OG; y disponiéndose, además, que, con fines ilustrativos, con respecto al año fiscal 2020 y según refleja el Plan Fiscal del ELA, los «Ingresos de Política de Deuda» fueron de quince mil millones ciento cuarenta y seis millones seiscientos mil dólares ($ 15,146,600,000.00).

1.171     **Objeciones Relacionadas con Deuda:** en su conjunto, esa determinada (a) Objeción Global de (I) la Junta de Supervisión y Administración Financiera, actuando mediante su Comité Especial de Reclamaciones y (II) Comité Oficial de Acreedores sin Garantía, a tenor con la Sección 502 del Código de Quiebras y la Norma de Quiebras 3007, a Reclamaciones iniciadas o presentadas por Tenedores de determinados Bonos de Obligaciones Generales del ELA, con fecha 14 de enero de 2019 [Caso núm. 17-3283-LTS, expediente electrónico de caso núm. 4784], (b) Objeciones Globales del Comité Oficial de Acreedores sin Garantía, a tenor con la Sección 502 del Código de Quiebras y la Norma de Quiebras 3007, las Reclamaciones alegadas o presentadas por Tenedores de determinados Bonos de Obligaciones Generales del ELA 2011, con fecha 21 de mayo de 2019 [Caso núm. 17-3283-LTS, expediente electrónico de caso núm. 7057], (c) Objeción Global del Comité Oficial de Acreedores sin Garantía, a tenor con la Sección 502 del Código de Quiebras y la Norma de Quiebras 3007, a Reclamaciones iniciadas o presentadas contra el ELA por Tenedores de determinados Bonos de la Autoridad de Edificios Públicos de Puerto Rico, con fecha 18 de julio de 2019 [Caso núm. 17-3283-LTS, expediente electrónico de caso núm. 8141], (d) Objeción Global de la Coalición de Deuda Constitucional Legítima, a tenor con la Sección 502 del Código de Quiebras y la Norma de Quiebras 3007, a Reclamaciones iniciadas o presentadas por Tenedores de determinados Bonos emitidos o garantizados por el ELA, con fecha 8 de enero de 2020 [Caso núm. 17-3283-LTS, expediente electrónico de caso núm. 9730], (e) Objeción Global del Comité Oficial de Acreedores sin Garantía a las Bases del límite de deuda constitucional (I) Reclamación del Banco Gubernamental de Fomento para Puerto Rico [Reclamación número 29485] con base en determinadas notas emitidas por el ELA y en la garantía del ELA de determinados bonos emitidos por Port of Americas Authority, (II) Reclamación de ScotiaBank de Puerto Rico [Reclamación número 47658] en base a pagaré con plena fe y crédito emitido por la Administración de Servicios Generales de Puerto Rico y (III) Reclamaciones iniciadas o presentadas contra el ELA en base a la Garantía del ELA de determinados pagarés emitidos por la Autoridad de Infraestructura de Puerto Rico, con fecha 8 de enero de 2020 [Caso núm. 17-3283-LTS, expediente electrónico de caso núm. 9735], únicamente según se relaciona con las Reclamaciones de Bonos del ELA y las Reclamaciones de Bonos de Garantía del ELA, (f) Objeción Global del Comité Oficial de Acreedores sin Garantía, a tenor con la Sección 502 del Código de Quiebras y la Norma de Quiebras 3007, a Reclamaciones iniciadas o presentadas contra el ELA por Tenedores de Bonos de Obligaciones Generales que alegan prioridad sobre otros acreedores no asegurados del ELA, con fecha 3 de febrero de 2020 [Caso núm. 17-3283-LTS, expediente electrónico de caso núm. 10638], (g) Objeción del Comité Oficial de Acreedores sin Garantía a la Reclamación del Banco Gubernamental de Fomento para Puerto Rico contra el ELA de Puerto Rico (Reclamación número 29,485) [Caso núm. 17-3283-LTS, expediente electrónico de caso núm. 8000], únicamente según se relaciona con las Reclamaciones de Bonos del ELA y las Reclamaciones de Bonos de Garantía del ELA y (h) cualquier otro (i) litigio o acción, lo que incluye, de manera no taxativa, litigios o acciones iniciados para recuperar capital y/o interés con respecto a los Bonos de OG, los Bonos de la AEP y/o las notas de bonos anticipados de la AFI y (ii) cualquier otra objeción o litisconsorcio a estas o cualquier otra objeción o litisconsorcio a estas o cualquier otra objeción o notificación de participación que apoye las medidas solicitadas en tales objeciones presentadas con respecto a la misma forma y conteos de medidas solicitadas que impugna, entre otras cosas, la validez y derechos relacionados de los Bonos de OG, los

Bonos de la AEP, las notas de bonos anticipados de la AFI, las Reclamaciones de Bonos del ELA, las Reclamaciones de Bonos de Garantía del ELA y las Reclamaciones de Bonos de la AEP.

      1.172     **Ley de Responsabilidad en la Emisión de Deuda:** la Ley núm. 101-2020, según se cambie, modifique o complemente a la medida de lo necesario para proporcionar, entre otras cosas, un Tope Global coherente con los términos del Acuerdo de Apoyo al Plan de la AEP/OG.

      1.173     **Fondo de Amortización de la Deuda:** el fondo a crear a tenor con el Contrato de Emisión Nuevos Bonos de OG y mantenido por el Fideicomisario de los Nuevos Bonos de OG en fideicomiso a beneficio de los tenedores de los Nuevos Bonos de OG, al cual el ELA depositará montos mensuales iguales a (a) un sexto (1/6) de la obligación semestral con respecto al pago de interés a devengar sobre los Nuevos Bonos de OG hasta la próxima fecha de pago de intereses y (b) una doceava parte (1/12) de la obligación anual con respecto al pago de capital y valor acumulado de los Nuevos Bonos de OG.

      1.174     **Fondo de Reserva de Amortización de la Deuda:** el fondo creado a tenor con el Contrato de Emisión de Nuevos Bonos de OG y mantenido por el Fideicomisario de los Nuevos Bonos de OG en fideicomiso a beneficio de los tenedores de los Nuevos Bonos de OG , en el cual se depositará el Requisito del Fondo de Reserva de Amortización de la Deuda.

      1.175     **Requisito del Fondo de Reserva de Amortización de la Deuda:** Doscientos once millones novecientos cuarenta mil ciento noventa y cuatro dólares y treinta centavos ($ 211,940,194.30), el monto a depositar ya sea en su totalidad en la Vigencia o en dos (2) cuotas anuales iguales, de ciento cinco millones novecientos setenta mil noventa y siete dólares y quince centavos ($ 105,970,097.15) cuya elección estará a discreción total y conjunta de la Junta de Supervisión y el ELA, en o antes de la Vigencia, a tenor con los términos y condiciones del Contrato de Emisión Nuevos Bonos de OG.

      1.176     **Deudores:** en su conjunto, el ELA, SRE y AEP.

      1.177     **Fecha de Emisión Estimada:** la que ocurra primero entre (a) el 1 de julio de 2021 y (b) la Vigencia.

1.178    **Documentos Definitivos:** en su conjunto, los documentos definitivos y acuerdos contemplados por el Plan, lo que incluye, de manera no taxativa, (a) el Plan (lo que incluye cualquier cambio, modificación y complemento de este) y cualquier documentación o acuerdos relacionados a este, (b) la Declaración de Divulgación, la Orden de Declaración de Divulgación, la Orden de Confirmación y los escritos procesales que respaldan su ingreso, (c) al Contrato de Emisión de Nuevos Bonos de OG y documentos o acuerdos relacionados con este, (d) la forma de los bonos para los Nuevos Bonos de OG, (e) el Contrato de Emisión de CVI y documentos o acuerdos relacionados con este, (f) la forma de CVI (g) los documentos o acuerdos relacionados con la Reserva de Pensiones y su gobernanza y (h) cada otro documento que compondrá el Complemento del Plan, en todos los casos, cuya forma y contenido deberá ser aceptada por la Junta de Supervisión a su sola y total discreción y aceptada de forma razonable por la AAFAF, el Grupo de Deuda Constitucional, el Grupo de OG, la CDCL, el Grupo QTCB, Assured, National y Syncora.

1.179    **No permitidas:** con respecto a cualquier Reclamación, una Reclamación o cualquier parte de esta que no sea Permitida y (a) que no sea permitida por una Orden Final, (b) es cero, condicional, objeto de controversia o no y con respecto a la cual no se haya presentado evidencia de reclamaciones o solicitud de pago de una Reclamación de Gastos Administrativos de manera oportuna o que no se consideró presentada de manera oportuna con el Tribunal del Título III, (c) se ha desistido por acuerdo del Deudor aplicable y el tenedor de esta o (d) se ha desistido por el tenedor de esta.

1.180    **Agente Pagador:** tal Entidad o Entidades designadas por la Junta de Supervisión, luego de consultar con la AAFAF en o antes de la Vigencia para realizar o facilitar las distribuciones conforme con las disposiciones del Plan.

1.181    **Declaración de Divulgación:** la declaración de divulgación con respecto al Plan y aprobada por el Tribunal del Título III a tenor con la sección 1125 del Código de Quiebras, aplicable a los Casos de Título III en virtud de la Sección 301 de PROMESA.

1.182    **Vista de Declaración de Divulgación:** la vista celebrada por el Tribunal del Título III para considerar la adecuación de la información contenida en la Declaración de Divulgación a tenor con la sección 1125 del Código de Quiebras, aplicable al Caso de Título III en virtud de la Sección 301 de PROMESA.

1.183    **Orden de Declaración de Divulgación:** la orden del Tribunal del Título III (a) que aprueba la forma de la Declaración de Divulgación considerando que contiene la información adecuada a tenor con las disposiciones de la sección 1125 del Código de Quiebras, aplicable a los Casos de Título III en virtud de la Sección 301 de PROMESA y (b) que autoriza, entre otras cosas, la forma y manera de solicitud de (a) aceptaciones y rechazos del Plan y (II) elecciones, si corresponde, de las distribuciones según el presente, cuya orden tendrá forma y contenido satisfactorias para los Acreedores del Acuerdo de Apoyo al Plan Iniciales.

1.184    **Reclamación Controvertida:** una Reclamación contra los Deudores o sus Activos, en la medida en que la admisión de tal Reclamación se someta a una objeción oportuna o solicitud de valoración a tenor con el Plan, el Código de Quiebras, las Normas de Quiebras o la Orden de Confirmación, o se dispute de otro modo por parte de los Deudores a tenor con la ley aplicable, y cuya objeción, solicitud de valoración o controversia no se ha desistido, sin perjuicio, o determinada por una Orden Final.

1.185    **Condiciones de Distribución:** en su conjunto, (a) la Vigencia habrá ocurrido, (b) la documentación del Plan de la ACT, la Orden de Confirmación de la ACT, el Contrato de Emisión de Bonos Nuevos de la ACT, la Documentación del Fideicomiso (si la hubiera), y los Documentos del Fideicomiso de Custodia habrán sido acordados por la Junta de Supervisión, Assured y National, (c) los tenedores o aseguradores con derecho a votar con respecto a Bonos de la ACT 68, que tengan o aseguren, según el caso, por lo menos sesenta y siete por ciento (67 %) del capital pendiente de Bonos de la ACT 68, habrán celebrado el Acuerdo de Apoyo del Plan de la ACT/ADCC (o un Acuerdo de Litisconsorcio de la ACT/ADCC o un Contrato Anexo de la ACT/ADCC con respecto a este), y (d) tenedores o aseguradores con derecho a voto con respecto a los Bonos de la ACT 98 Prioritarios (Senior), que tengan o aseguren, según sea el caso, al menos sesenta y siete (67 %) del capital pendiente de Bonos de la ACT 98 Prioritarios (Senior) deberán haber celebrado el Acuerdo de Apoyo al Plan de la ACT/ADCC (o un Acuerdo de Litisconsorcio o un Contrato Anexo con respecto a este); disponiéndose, sin embargo, al momento de la entrada de una Orden Final con respecto a la Orden de Confirmación de la ACT, se consideren satisfechas las condiciones establecidas en los subapartados (c) y (d) anteriores.

1.186    **Fecha de Distribución:** salvo que se establezca de otro modo en el presente, la fecha o fechas determinadas por el ELA, en o después de la Vigencia, en la cual el Agente Pagador realizará las distribuciones a los tenedores de Reclamaciones Permitidas que tienen derecho a recibir distribuciones según el Plan.

1.187    **Fecha de Registro de Distribución:** la Fecha de Votación o cualquier otra fecha que pueda establecerse mediante otra orden del Tribunal del Título III, lo que incluye la Orden de Confirmación; disponiéndose, sin embargo, que la «Fecha de Registro de Distribución» no se aplique a ningún valor público que recibirá distribución a tenor con el Plan mediante The Depository Trust Company.

1.188    **Vigencia:** el primer (1er) Día Hábil en el que (i) se hayan cumplido o renunciado a todas las condiciones precedentes a la confirmación del Plan especificadas en la Sección 81.1 del Plan, a tenor con la Sección 81.2 del Plan y (ii) se hayan cumplido o renunciado a todas las condiciones precedentes al perfeccionamiento sustancial del Plan y el acaecimiento de la Vigencia especificadas en la Sección 82.1 del Plan a tenor con la Sección 82.2 del Plan.

1.189      **Reclamación de Expropiación:** una Reclamación que surja de o esté relacionada con un Procedimiento de Expropiación y una Orden Final emitida a esta por un monto mayor al monto depositado por el expropiador de acuerdo con los términos y disposiciones de 32 L.P.R.A. §2907, lo que incluye, de manera no taxativa, interés devengado con respecto a esto.

1.190      **Procedimiento de Expropiación:** una acción o procedimiento de decomiso iniciada por el ELA o una agencia u organización de este en el Tribunal de Primera Instancia de acuerdo con los términos y disposiciones de 32 L.P.R.A §2905 para obtener el título de bienes inmuebles ubicados en Puerto Rico.

1.191      **Ley de Incentivos de Energía:** la Ley de Incentivos de Energía Verde de Puerto Rico, Ley núm. 83-2010, incorporada al Nuevo Código de Incentivos, Ley 60-2019.

1.192      **Reclamaciones de Incentivos de Energía:** en su conjunto, toda Reclamación que surja de o esté relacionada con la Ley de Incentivos de Energía, también conocida como la Ley de Incentivos de Energía Verde de Puerto Rico, en relación con la promoción de la producción de la energía renovable.

1.193      **Entidad:** una persona, una sociedad, una sociedad colectiva, una sociedad limitada, una sociedad de responsabilidad limitada, una asociación de responsabilidad limitada, una asociación, una sociedad por acciones, una empresa conjunta, un patrimonio, un fideicomiso, una organización no constituida, una unidad gubernamental o cualquier subdivisión de esta, lo que incluye, de manera no taxativa, la oficina de United States Trustee o cualquier otra entidad.

1.194      **SRE:** el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico.

1.195      **Reclamación de Bonos del SRE:** una Reclamación derivada o relacionada con los Bonos del SRE, lo que incluye, de manera no taxativa, interés devengado a partir de estos durante el período hasta la Fecha de Petición del SRE no inclusive.

1.196    **Recuperación de Bonos del SRE:** la recuperación total por parte de los tenedores de Reclamaciones de Bonos del SRE Permitidas, que consiste en (a) trescientos setenta y tres millones de dólares ($373,000,000.00), (b) el derecho a recibir los ingresos de la Cartera de Capital Privado del SRE o los intereses del Fideicomiso del SRE, según sea el caso, en caso de que el Estado Libre Asociado adquiera la Cartera de Capital Privado del SRE o los intereses del Fideicomiso del SRE, según sea el caso, conforme a los términos y disposiciones de la Sección 66.2 del presente documento, y (c) en caso de que el Estado Libre Asociado no decida comprar dichos activos conforme a la Sección 66.2(a) del presente documento, la opción de comprar la Cartera de Capital Privado del SRE o los intereses del Fideicomiso del SRE, según sea el caso, por setenta millones setecientos cincuenta mil dólares ($70,750,000.00), más el monto que pueda ser necesario para reembolsar al Estado Libre Asociado por cualquier cantidad de déficit financiado en relación con la Cartera de Capital Privado del SRE.

1.197    **Bonos del SRE:** en su conjunto, (a) los Bonos de Fondo de Pensiones Prioritarios (Senior) sin recurso, Serie A, emitidos por el SRE en el capital original de mil quinientos ochenta y ocho millones ochocientos diez mil setecientos noventa y nueve dólares con sesenta centavos ($ 1,588,810,799.60), (b) los Bonos de Fondo de Pensiones Prioritarios (Senior) sin recurso, Serie B, emitidos por el SRE en el capital original de mil cincuenta y ocho millones seiscientos treinta y cuatro mil seiscientos trece dólares con cinco centavos ($ 1,058,634,613.05) y (c) los Bonos de Fondo de Pensiones Prioritarios (Senior) sin recurso, Serie C, emitidos por el SRE en el capital original de trescientos millones doscientos dos mil novecientos treinta dólares ($ 300,202,930.00), que, a la Fecha de Petición del SRE, lo que incluye montos compuestos, alcanzaban un capital pendiente acumulado de tres mil ciento sesenta y ocho millones seiscientos noventa y ocho mil setecientos setenta y seis dólares con cincuenta y cinco centavos ($ 3,168,698,776.55).

1.198    **Reclamación sin Garantía General del SRE:** una Reclamación contra el SRE que no sea una Reclamación de Bonos del SRE.

1.199    **Fondo de GUC del SRE:** la suma de (a) quinientos mil dólares ($ 500,000.00) en Efectivo más (b) las recuperaciones netas del Fideicomiso de Acciones de Revocación asignable a los Intereses de las Acciones de Revocación del SRE; disponiéndose, sin embargo, que, bajo ninguna circunstancia, tal monto acumulado de contraprestación, lo que incluye, de manera no taxativa, recuperaciones netas del Fideicomiso de Acciones de Revocación asignable a los Intereses de Acciones de Revocación del SRE, exceda los cinco millones de dólares ($ 5,000,000.00); y disponiéndose, además, que, en el caso de que el monto acumulable del Fondo de GUC del SRE (y) exceda el monto acumulado de Reclamaciones sin Garantía Generales del SRE Permitidas o (z) excediese cinco millones de dólares ($ 5,000,000.00) salvo por el límite de recuperación estipulado anteriormente, tal monto excedente o Intereses de Acciones de Revocación del SRE, según el caso, se reasignará, prorrateado, a beneficio de los tenedores de Reclamaciones no Aseguradas Generales del ELA Permitidas.

      1.200     **Litigio del SRE:** en su conjunto, el litigio designado (a) *Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico c. Andalusian Global Designated Activity Co., et al.,* Casos núms. 19-1699, 19-1700 (apelado del procedimiento contencioso núm. 17- 00213), actualmente pendiente en el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito, (b) *Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico, et al. c. Andalusian Global Designated Activity Co., et al.,* procedimiento contencioso núm. 19- 00366, actualmente pendiente en el Tribunal del Título III, (c) la Objeción Global del Comité Oficial de Acreedores sin Garantía presentada por tenedores de bonos emitidos por el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico, con fecha 12 de marzo de 2019 [Caso núm. 17-3283-LTS, expediente electrónico de caso núm. 5580], actualmente pendiente en el Tribunal del Título III, (d) la Objeción Global del Comité Oficial de Retirados del Gobierno del Estado Libre Asociado de Puerto Rico, conforme la Sección 502 del Código de Quiebras y la Norma de Quiebra 3007, a Reclamaciones iniciadas o presentadas por tenedores de Bonos del SRE contra el SRE y el ELA, con fecha 23 de abril de 2019 [núm. de expediente 6482], actualmente pendiente en el Tribunal del Título III, (e) *Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico, et al., c. Jefferies, LLC, et al.,* procedimiento contencioso núm. 19-00355, actualmente pendiente en el Tribunal del Título III, (f) la Objeción de la Junta de Supervisión y Administración Financiera, a tenor con la Sección 502 del Código de Quiebras y la Norma de Quiebra 3007, a reclamaciones iniciadas o presentadas contra el ELA por el Bank of New York Mellon, como agente fiscal (Reclamación núm. 16775), con fecha 22 de mayo 2019 [Caso núm. 17-3283-LTS, expediente electrónico de caso núm. 7075], actualmente pendiente en el Tribunal del Título III, (g) *Andalusian Global Designated Activity Co., et al., c. Junta de Supervisión y Administración Financiera para Puerto Rico, et al.,* Caso núm. 20-1065, actualmente pendiente en el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito y (h) *Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico c. UBS Fin. Servs. Inc. of Puerto Rico,* Civ. núm. KAC-2011-1067 (803), actualmente pendiente en el Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, sección de San Juan.

      1.201     **Reclamación de Participante del SRE:** una Reclamación a causa de ser o haber sido un participante del SRE en cuanto a beneficios de retirados que se devengaron hasta la fecha de implementación de la Ley 106, disponiéndose, sin embargo, que la «Reclamación de Participante del SRE» no incluya Reclamaciones mantenidas por un Participante cuya fecha de contratación fuese el 1 de enero de 2000 o posterior, con base en su participación el Sistema 2000.

      1.202     **Fecha de Petición del SRE:** 21 de mayo de 2017, la fecha en que se inició el Caso de Título III del SRE.

1.203    **Precio de la Cartera del SRE:** setenta millones setecientos cincuenta mil dólares ($70,750,000.00), el precio base que se pagará por la Cartera de Capital Privado del SRE.

1.204    **Cartera de Capital Privado del SRE:** en su conjunto, la cartera de participaciones de capital privado en poder del SRE a partir de la Vigencia.

1.205    **Acciones de Recuperación del SRE:** en su conjunto, los litigios designados: (a) *Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico, et al. c. Jefferies LLC, et al.*, procedimiento contencioso núm. 19-00355; (b) *Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico, et al. c. Demandado 1M, et al.*, procedimiento contencioso núm. 19-00356; (c) *Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico, et al. c. Stoever Glass & Co., et al.*, procedimiento contencioso núm. 19-00357; (d) *Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico, et al. c. Demandado 1F et al.*, procedimiento contencioso núm. 19-00358; (e) *Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico, et al. c. Demandado 1H et al.*, procedimiento contencioso núm. 19-00359; (f) *Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico, et al. c. Wells Fargo Securities, LLC et al.*, procedimiento contencioso núm. 19-00360; y (g) *Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico, et al. c. Demandado 1G, et al.*, procedimiento contencioso núm. 19-00361, cada uno de los cuales está pendiente en el Tribunal del Título III.

1.206    **Resolución del SRE:** esa determinada Resolución de Bonos de Fondo de Pensiones adoptada el 24 de enero de 2008, con respecto a la emisión de los Bonos del SRE.

1.207    **Estipulación del SRE:** determinada Estipulación Modificada y Reformulada (A) que permite Reclamaciones de los Bonistas del SRE, (B) que paraliza Litigio Pendiente, y (C) que proporciona Tratamiento de Reclamaciones de Bonistas del SRE y la Desestimación de Litigios Pendientes conforme a un Plan de Ajuste, con fecha del 2 de abril de 2021.

1.208    **Acción de Expropiación del SRE:** el litigio designado *Altair Global Credit Opportunities Fund (A) LLC c. Estados Unidos*, Caso núm. 21-1577, actualmente pendiente en el Tribunal de Apelaciones de los Estados Unidos para el Circuito Federal.

1.209    **Caso de Título III del SRE:** el caso de III en virtud de PROMESA pendiente para el SRE en el Tribunal del Título III, bajo el epígrafe *In re Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico*, Caso núm. 17 3566-LTS (D.P.R.).

1.210     **Fideicomiso del SRE**: el fideicomiso creado conforme a los términos y disposiciones de la Estipulación del SRE para mantener los intereses del SRE en la Cartera de Capital Privado del SRE y en virtud del cual el SRE continuará gestionando dichos activos hasta e incluida la compra de estos conforme a los términos y disposiciones de la Sección 66.2 del presente documento.

1.211     **Excedente en Caja**: el monto de excedente en caja real que sobrepase el Excedente del Plan Fiscal proyectado comprendido en el Plan Fiscal para el ELA certificado por la Junta de Supervisión y en vigor a la Vigencia.

1.212     **Contrato Condicional:** un contrato del cual uno o más de los Deudores es parte y que está sujeto a asunción, asunción y transferencia o rechazo a tenor con la sección 365 del Código de Quiebras, salvo según se establezca en la Sección 311 de PROMESA.

1.213     **FGIC:** Financial Guaranty Insurance Company o su sucesor o delegado.

1.214     **Certificados de FGIC:** los certificados o recibos que emitirá FGIC a los tenedores beneficiarios de los Bonos de OG que se depositen en el Fideicomiso de FGIC.

1.215     **Reclamación de Bonos Asegurados por FGIC:** en su conjunto, las Reclamaciones de Bonos derivadas de los Bonos Asegurados por FGIC, incluida, para evitar dudas, cualquier Reclamación de Bonos del ELA Antiguos (Otros Asegurados).

1.216     **Bonos Asegurados por FGIC:** en su conjunto, los Bonos de OG que han sido asegurados por FGIC, incluso, sin limitación, conforme a una póliza de seguro de mercado secundario.

1.217     **Pólizas de Seguros de FGIC:** las pólizas de seguro existentes emitidas por FGIC (o un predecesor en su interés) relativas a los Bonos Asegurados por FGIC, junto con todos y cada uno de los acuerdos y demás documentos relacionados con estos.

1.218     **Fideicomiso de FGIC:** con respecto a cada Bono Asegurado de FGIC, un fideicomiso separado o un acuerdo de custodia que será formado, en o antes de la Vigencia, por el Estado Libre Asociado, al costo exclusivo de FGIC y en beneficio de los beneficiarios de tales Bonos Asegurados por FGIC.

1.219     **Activos del Fideicomiso de FGIC:** en su conjunto, los activos que se depositarán en el Fideicomiso de FGIC, que consisten en (a) los Bonos Asegurados por FGIC, (b) las distribuciones que se realizarán con respecto a dichos Bonos Asegurados por FGIC, y (c) las Pólizas de Seguros de FGIC.

1.220    **Orden Final:** una orden o sentencia de un tribunal de jurisdicción competente que se ingresó en el expediente llevado por el actuario de tal tribunal y que no se ha revocado, anulado o paralizado y con respecto a la cual (a) ha caducado el período de apelación, petición de revisión o petición de nuevo proceso, presentación de nuevos alegatos o nueva vista y con respecto al cual no se encuentre pendiente ninguna apelación, petición de revisión, procedimientos de remisión u otros procesos para solicitar un nuevo proceso, presentar nuevos alegatos o nueva vista o (b) de haberse presentado una apelación, mandamiento de revisión, nuevo proceso, presentación de nuevos alegatos o nueva vista, (i) tal orden o sentencia se habrá confirmado o remitido total o parcialmente, sin procesos adicionales en remisión, por el tribunal de máxima instancia ante la cual se apeló, se haya negado la revisión o se hayan negado un nuevo proceso, la presentación de nuevos alegatos o nueva vista o que no resultó en modificaciones a tal orden y (ii) el período para realizar cualquier apelación, petición de revisión, nuevo proceso, presentación de nuevos alegatos o nueva vista adicionales haya caducado; disponiéndose, sin embargo, que, la posibilidad de que pueda presentarse una moción a tenor con la Norma 60 de las Normas Federales de Procedimientos Civiles, o cualquier norma análoga a tenor con las Normas de Quiebra o las Normas de Quiebras Locales, con respecto a tal orden no impedirá que tal orden sea una Orden Final, salvo según dispongan las Normas Federales de Procedimiento de Apelación, las Normas de Quiebra o las Normas de Quiebra Locales.

1.221    **Plan Fiscal:** un «Plan Fiscal» según se define en la Sección 5(10) de PROMESA.

1.222    **Exceso del Plan Fiscal:** el monto establecido en la línea bajo el título «Excedente/Medidas Posteriores (Déficit) (excluyendo Pago de Deudas)» del Plan Fiscal para el ELA certificado por la Junta de Supervisión y en vigor a la Vigencia.

1.223    **Año Fiscal:** un año fiscal del ELA, que comienza el 1 de julio y finaliza el 30 de junio del siguiente año calendario.

1.224    **BGF:** el Banco Gubernamental de Fomento para Puerto Rico.

1.225    **Préstamos a la ACT del BGF:** en su conjunto, los préstamos, si los hubiera, hechos a la ACT por el BGF y ahora en poder de la Autoridad de Recuperación de la Deuda del Banco Gubernamental de Fomento conforme a la modificación calificativa consumada bajo el Título VI de PROMESA, pero excluyendo expresamente de los «Préstamos a la ACT del BGF» cualquier Bono de la ACT.

1.226     **Determinación de la Prioridad de Préstamos del BGF:** la determinación, ya sea en el Caso del Título III del Estado Libre Asociado o en el Caso del Título III de la ACT, (a) en relación con los derechos relativos de recuperación y prioridad de pago de los Bonos de la ACT 68 y los Bonos de la ACT 98 a los derechos del BGF con respecto a los Préstamos a la ACT del BGF, y/o (b) que la Autoridad de Recuperación de la Deuda del Banco Gubernamental de Fomento no posee una reclamación o derecho permisible de recuperación con respecto al CVI de la Recuperación de la ACT basada en tales Préstamos a la ACT del BGF.

1.227     **Fondo General:** el fondo de operaciones principal del ELA.

1.228     **Reclamaciones sin Garantía Generales:** en su conjunto, las Reclamaciones sin Garantía Generales del ELA y las Reclamaciones sin Garantía Generales del SRE.

1.229     **Bonos de OG:** en su conjunto, los bonos de obligaciones generales actualmente impagos emitidos por el ELA.

1.230     **CVI de OG:** en su conjunto, los valores de obligación general, por cuyo pago el ELA ha pignorado su plena fe, crédito y poder impositivo a tenor con el Artículo VI de la Constitución del Estado Libre Asociado y la legislación de Puerto Rico aplicable, a emitirse en la Vigencia por parte del ELA de acuerdo con los términos y condiciones del Plan, la Orden de Confirmación, el Contrato de Emisión de CVI de OG y la Legislación de CVI.

1.231     **Contrato de Emisión de CVI de OG:** el contrato de emisión a celebrarse y otorgarse en o antes de la Vigencia a tenor con lo cual el ELA emitirá los CVI de OG y que incluye todos los términos y disposiciones relacionados a estos, según se modifique, complemente o cambie ocasionalmente a tenor con sus términos y condiciones.

1.232     **Grupo de OG:** el Grupo Ad Hoc de Bonistas de Obligaciones Generales que se integra por Aurelius Capital Management, LP y Autonomy Capital (Jersey) L.P., cada uno en representación de sí mismo o en representación de sus clientes participantes o determinados de sus fondos gestionados respectivos y, en cada caso, sus sucesores y cesionarios respectivos con respecto a cesiones realizadas a tenor con los términos y condiciones del Acuerdo de Apoyo al Plan.

1.233     **Contrato Anexo de la AEP/OG:** ese Contrato Anexo específico adjuntado como Anexo «G» al Acuerdo de Apoyo al Plan de la AEP/OG conforme al cual determinados tenedores de Reclamaciones de Bonos del ELA, Reclamaciones de Bonos de Garantía del ELA y Reclamaciones de Bonos de la AEP pueden convertirse en Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG.

1.234     **Costos de Perfeccionamiento de la AFI/OG:** en su conjunto, los montos pagaderos establecidos en la Sección 3.3 de la presente, en Efectivo, a la Vigencia, o tan pronto como sea posible después de esta, pero en ningún caso más de diez (10) días hábiles después de la Vigencia, a los Acreedores de Acuerdo de Apoyo al Plan de la AFI/OG Iniciales conforme a los términos y condiciones del Acuerdo de Apoyo al Plan de la AFI/OG, el Artículo III del presente y la Orden de Confirmación.

1.235     **Acuerdo de Litisconsorcio de la AEP/OG:** ese Acuerdo de Litisconsorcio específico adjuntado como Anexo «F» al Acuerdo de Apoyo al Plan de la AEP/OG conforme al cual determinados tenedores de Reclamaciones de Bonos del ELA, Reclamaciones de Bonos de Garantía del ELA y Reclamaciones de Bonos de la AEP pueden convertirse en Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG.

1.236     **Acreedores de Litisconsorcio de la AEP/OG:** en su conjunto, aquellos Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG que ejecutaron y otorgaron el Contrato de Litisconsorcio de la AEP/OG o el Contrato Anexo antes de la Fecha Límite del Litisconsorcio de la AEP/OG.

1.237     **Fecha límite del Litisconsorcio de la AEP/OG:** el 9 de marzo de 2021 a las 11:59 p.m., hora de Nueva York o aquella fecha y hora posterior que convenga la Junta de Supervisión y los Acreedores del Acuerdo de Apoyo al Plan Iniciales de la AEP/OG.

1.238     **Acuerdo de Apoyo al Plan de la AEP/OG:** ese determinado Acuerdo de Apoyo al Plan, con fecha 22 de febrero de 2021, entre la Junta de Supervisión y los Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG, según se modifique, complemente o cambie ocasionalmente conforme a sus términos.

1.239     **Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG:** en su conjunto, las partes del Acuerdo de Apoyo al Plan de la AEP/OG, que no sean Partes del Gobierno.

1.240     **Acreedores con Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG:** en su conjunto, los Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG Iniciales y los Acreedores del Litisconsorcio de la AEP/OG que celebran o hayan celebrado el Acuerdo de Apoyo al Plan de la AEP/OG, el Contrato de Litisconsorcio de la AEP/OG o el Contrato Anexo de la AEP/OG relacionado con este en o antes de la Obtención del Umbral del Acuerdo de Apoyo al Plan de la AEP/OG.

1.241 **Porcentaje de la Tasa de Restricción de la AEP/OG:** el porcentaje igual a (a) trescientos cincuenta millones de dólares ($ 350,000,000.00) menos los montos pagaderos a cuenta de los Costos de Perfeccionamiento de la AEP/OG divididos entre (b) el monto acumulado de Reclamaciones de Bonos del ELA, Reclamaciones de Bonos de la AEP y Reclamaciones de Bonos de Garantía del ELA (sin duplicados y, en la medida en que tales Reclamaciones estén aseguradas por Monolínea, únicamente en la medida en que un Acreedor de la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG esté autorizado a votar cualquier Reclamación conforme a la Sección 301(c)(3) de PROMESA, a los documentos de seguro definitivos y la ley aplicable) mantenidas por los Acreedores de Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG; disponiéndose, sin embargo, que, para fines de distribución conforme a las disposiciones de la Sección 3.5 del presente, las Reclamaciones respectivas mantenidas por un Acreedor de Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG se basarán en su Participación a Prorrata de las Reclamaciones consideradas Permitidas de acuerdo con la Sección 2.2 del presente.

1.242 **Período de Tasas de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG:** el período desde el 22 de febrero de 2021 hasta (a) la Obtención del Umbral del Acuerdo de Apoyo al Plan de la AEP/OG o (b) la Fecha Límite del Litisconsorcio de la AEP/OG inclusive, el que ocurra antes.

1.243 **Tasas de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG:** en su conjunto, los montos pagaderos, en Efectivo, a los Acreedores con Tasa de Restricción del Acuerdo de Apoyo al Plan conforme a los términos y condiciones del Acuerdo de Apoyo al Plan de la AEP/OG, la Sección 3.5 del presente y la Orden de Confirmación, dichas tasas, acumuladas, no excederán los trescientos cincuenta millones de dólares ($ 350,000,000.00) menos tal monto que sea pagadero a causa de los Costos de Perfeccionamiento de la AEP/OG; disponiéndose, sin embargo, que, sin perjuicio de lo que antecede, conforme a las disposiciones del Acuerdo de Apoyo al Plan de la AEP/OG y de la Sección 3.6 del presente, tal monto acumulado pueda aumentarse a causa de la Devolución de Tasas de Apoyo de Inversión, distribuyéndose tal monto adicional conforme a las disposiciones del Acuerdo de Apoyo al Plan de la AEP/OG y la Sección 3.6 del presente.

1.244 **Obtención del Umbral del Acuerdo de Apoyo al Plan de la AEP/OG:** la fecha y hora en las que los Acreedores con Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG posean o tengan autoridad y responsabilidad de gestión de inversión debida con respecto a fondos o cuentas que poseen setenta por ciento (70 %) del monto acumulado de las Reclamaciones de Bonos del ELA, Reclamaciones de Bonos de la AEP y Reclamaciones de Bonos de Garantía del ELA (sin duplicados y en la medida en que tales reclamaciones son Reclamaciones de Bonos del ELA (Aseguradas) o Reclamaciones de Bonos de Garantía del ELA (Aseguradas), únicamente en la medida en que un Acreedor del Acuerdo de Apoyo al Plan de la AEP/OG esté autorizado a votar con respecto a tal reclamación conforme a la Sección 301(c)(3) de PROMESA, los documentos de seguro definitivos y la ley aplicable).

1.245     **Organización Gubernamental:** cualquier agencia, departamento, oficina, empresa pública, fideicomiso, sistema, instrumentalidad, subdivisión política, autoridad fiscal o municipalidad del Gobierno de Puerto Rico.

1.246     **Partes del Gobierno:** en su conjunto, (a) la Junta de Supervisión, como representante de los Deudores, (b) los comités y subcomités de la Junta de Supervisión, lo que incluye, de manera no taxativa, el Comité de Reclamaciones Especiales de la Junta de Supervisión, (c) los Deudores, lo que incluye, de manera no taxativa, cualquiera de sus agencias y (d) la AAFAF.

1.247     **Reclamaciones Eximidas por el Gobierno:** en su conjunto, toda Reclamación, intimación, derecho, responsabilidad o Causa de acción de todo tipo, índole o naturaleza, en derecho o equidad, conocida o desconocida, presentada o no presentada, que cualquier Persona o cualquiera que reclame mediante esta, en su nombre o en su beneficio tenga, pueda tener o afirme tener, ahora o en el futuro, contra cualquier Parte Eximida del Gobierno derivado, relacionado o conectado con los Deudores, Reclamaciones (lo que incluye, de manera no taxativa, Reclamaciones derivadas o relacionadas con los bonos de la AEP y los Bonos de OG), las Objeciones Relacionadas con Deuda, el Litigio de la AEP y el Litigio del SRE, y que surgen antes de la Vigencia; disponiéndose, sin embargo, que las «Reclamaciones Eximidas por el Gobierno» no incluirán ningún derecho, privilegio, Reclamación, intimación, responsabilidad o Causa de acción de ningún tipo, índole o naturaleza (a) contra (i) los Deudores (o sus sucesores, lo que incluye el ELA Reorganizado) o COFINA derivadas o relacionadas con las obligaciones de los Deudores a tenor con el Plan o los valores a emitir a tenor con el Plan o que se emitieron a tenor con el Plan COFINA (ii) una Parte Eximida del Gobierno no relacionada con los deudores o las Reclamaciones extinguidas a tenor con los términos y disposiciones del Plan, (b) derivadas o relacionadas con cualquier acción u omisión que constituye fraude intencional o mala conducta intencional o (c) cualquier Reclamación derivada o relacionada con reclamaciones o bonos emitidos, o contratos o arrendamientos celebrados, por la ACT, la AMA, el CFP, la AAA, la UPR y la AEE, que no sean Reclamaciones del Centro de Convenciones/ELA, Reclamaciones de la ACT/ELA, Reclamaciones de la AMA/ELA, Reclamaciones del Impuesto al Ron de AFI/ELA y relacionadas a las Reclamaciones de Asignaciones del ELA.

1.248    **Partes Eximidas del Gobierno:** en su conjunto, las Partes del Gobierno y los Deudores, lo que incluye toda instrumentalidad, municipalidad, empresa pública y agencia pública del ELA junto con los miembros de sus juntas, directivos, mandantes, representantes, funcionarios, empleados, asesores y profesionales correspondientes actuales o antiguos, lo que incluye, de manera no taxativa, todo asesor y profesional contratado por las Partes del Gobierno en relación con los Casos de Título III en su calidad como tales; disponiéndose, sin embargo, que, sin perjuicio de lo que antecede, «Partes Eximidas del Gobierno» no incluirá a la ACT, la AMA, el CFP, la AAA, la UPR y la AEE únicamente con respecto a cualquier Reclamación o bono emitido por tales Entidades que no sean Reclamaciones del Centro de Convenciones/ELA, Reclamaciones de la ACT/ELA, Reclamaciones de la AMA/ELA, Reclamaciones del Impuesto al Ron de AFI/ELA y relacionadas a las Reclamaciones de Asignaciones del ELA.

1.249    **Reclamación Gracia Gracia:** una Reclamación de un miembro de la clase de propietarios de vehículos que haya comprado seguro privado después de pagar la prima de seguros obligatoria, certificada en la Acción del ELA Gracia Gracia y la Acción Federal Gracia Gracia.

1.250    **Acción del ELA Gracia Gracia:** el litigio designado *García Rubiera, et al. c. Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio, et al.*, número civil: KDP2001-1441(801), actualmente pendiente en el Tribunal de Primera Instancia de Puerto Rico.

1.251    **Acción Federal Gracia Gracia:** el litigio designado *García Rubiera, et al. c. Fortuño, et al.*, Caso núm. 02-1179-GAG, actualmente pendiente en el Tribunal del Distrito de los Estados Unidos para el Distrito de Puerto Rico.

1.252    **Resolución Gracia Gracia:** en su conjunto, la resolución pactada y aprobada en (a) la Acción del ELA Gracia Gracia a tenor con esa determinada moción conjunta en acuerdo parcial y estipulación, con fecha 29 de marzo de 2016, según se aprobó a tenor con esa determinada Sentencia Parcial, con fecha 8 de julio de 2016 y (b) la Acción Federal Gracia Gracia a tenor con esa determinada Estipulación para Interdicto Permanente, con fecha 29 de febrero de 2016, según se aprobó a tenor con esa determinada Sentencia, con fecha 1 de marzo de 2016.

1.253    **Préstamo de Helicóptero de la ASG:** el préstamo concedido a tenor con ese determinado Acuerdo de Crédito, con fecha 26 de diciembre de 2013, entre la Administración de Servicios Generales del ELA y Scotiabank de Puerto Rico que, a la Fecha de Petición del ELA, tenía un capital pendiente de aproximadamente veintitrés millones setecientos sesenta y cuatro mil seiscientos setenta y un dólares ($ 23,764,607.00).

1.254    **ACT:** la Autoridad de Carreteras y Transportación de Puerto Rico.

1.255     **Bonos de la ACT 68:** en su conjunto, los siguientes bonos emitidos por la ACT conforme a la Resolución núm. 68-18, adoptada el 13 de junio de 1968, según se haya modificado y complementado después de la fecha: (a) los Bonos de Ingresos de Carreteras, Serie Y, emitidos por la ACT en el capital original de ochocientos noventa millones doscientos treinta y cinco mil dólares ($890,235,000,00), (b) los Bonos de Refinanciamiento de Carreteras, Serie Z, emitidos por la ACT en el capital original de ciento ochenta y cinco millones cuarenta mil dólares ($185,040,000.00), (c) los Bonos de Refinanciamiento de Ingresos de Carreteras de 2003, Serie AA-1, emitidos por la ACT en el capital original de ciento ochenta y ocho millones trescientos noventa y cinco mil dólares ($188,395,000.00), (d) los Bonos de Refinanciamiento de Ingresos de Carreteras de 2003, Serie AA-2, emitidos por la ACT en el capital original de sesenta y cinco millones doscientos setenta y cinco mil dólares ($65,275,000.00), (e) los Bonos de Refinanciamiento de Ingresos de Carreteras de 2005, Serie BB, emitidos por la ACT en el capital original de ciento un millones seiscientos veinticinco mil dólares ($101,625,000.00), (f) los Bonos de Refinanciamiento de Ingresos de Carreteras de 2007, Serie CC, emitidos por la ACT en el capital original de cuatrocientos treinta y un millones novecientos cincuenta y cinco mil seiscientos nueve dólares y cinco centavos ($431,955,609.05), (g) los Bonos de Refinanciamiento de Ingresos de Carreteras de 2010, Serie AA-1, emitidos por la ACT en el capital original de ciento ochenta y ocho millones trescientos noventa y cinco mil dólares ($188,395,000.00), (h) los Bonos de Refinanciamiento de Ingresos de Carreteras de 2010, Serie AA-2, emitidos por la ACT en el capital original de sesenta y cinco millones doscientos setenta y cinco mil dólares ($65,275,000.00), e (i) los Bonos Serie FHA emitidos por la ACT en el capital original de novecientos cuarenta y cinco mil dólares ($945,000.00).

1.256     **Bonos de la ACT 98:** en su conjunto, los Bonos de la ACT 98 Prioritarios (Senior) y los Bonos de la ACT 98 Subordinados.

1.257     **Bonos de la ACT 98 Prioritarios (Senior):** en su conjunto, los siguientes bonos emitidos por la ACT conforme a la Resolución núm. 98-06, adoptada el 26 de febrero de 1998: (a) los Bonos de Ingresos de Transporte de 1998, Serie A, emitidos por la ACT en el capital original de mil ciento veintinueve millones seiscientos cuarenta y tres mil setecientos cuarenta dólares ($1,129,643,740.00), (b) los Bonos de Ingresos de Transporte de 2002, Serie D, Emitido por la ACT en el capital original de setecientos millones ochocientos cincuenta y cinco mil dólares ($700,855,000.00), (c) los Bonos de Refinanciamiento de Ingresos de Transporte de 2002, Serie E, emitidos por la ACT en el capital original de doscientas ochenta y cuatro millones cuatrocientos cinco mil dólares ($284,405,000.00), (d) los Bonos de Ingresos de Transporte de 2003, Serie G, emitidos por la ACT en el capital original de quinientos sesenta y tres millones seiscientos cincuenta mil dólares ($563,650,000), (e) los Bonos de Refinanciamiento de Ingresos de Transporte de 2003, Serie H, emitidos por la ACT en el capital original de setenta y dos millones treinta y cinco mil dólares ($72,035,000.00), (f) los Bonos de Refinanciamiento de Ingresos de Transporte de 2004, Serie I, emitidos por la ACT en el capital original de ochenta y dos millones trescientos cuarenta mil dólares ($82,340,000.00), (g) los Bonos de Refinanciamiento de Ingresos de Transporte de 2004, Serie J, emitidos por la ACT en el capital original de cuatrocientos cinco millones novecientos ochenta y cinco mil dólares ($405,985,000.00), (h) los Bonos de Refinanciamiento de Ingresos de Transporte de 2005, Serie K, emitidos por la ACT en el capital original de ochocientos millones de dólares ($800,000,000.00), (i) los Bonos de Refinanciamiento de Ingresos de Transporte de 2005, Serie L, emitidos por la ACT en el capital original de quinientos noventa y ocho millones doscientos ochenta y cinco mil dólares ($598,285,000.00), (j) los Bonos de Refinanciamiento de Ingresos de Transporte de 2007, Serie M, emitidos por la ACT en el capital original de doscientos cincuenta millones de dólares ($250,000,000.00), (k) los Bonos de Refinanciamiento de Ingresos de Transporte de 2007, Serie N, emitidos por la ACT en el capital original de mil quinientos dos millones novecientos cuatro mil novecientos cincuenta y tres dólares y noventa y cinco centavos ($1,502,904,953,95), y (l) los Bonos de Refinanciamiento de Ingresos de Transporte de 2010, Serie H, emitidos por la ACT en el capital original de cuarenta y cuatro millones doscientos setenta y cinco mil dólares ($44,275,000.00).

1.258     **Bonos de la ACT 98 Subordinados:** en su conjunto, los siguientes bonos subordinados emitidos por la ACT conforme a la Resolución núm. 98-06, adoptada el 26 de febrero de 1998, según se haya modificado y complementado después de la fecha: (a) los Bonos de Ingresos de Transporte Subordinados, Serie 1998, emitidos por la ACT en el capital original de setenta y cinco millones cincuenta mil dólares ($75,050,000.00), y (b) los Bonos de Ingresos de Transporte Subordinados, Serie 2003, emitidos por la ACT en el capital original de trescientos veinte millones quinientos cuarenta y cinco mil dólares ($320,545,000.00).

1.259     **Bonos de la ACT:** en su conjunto, los Bonos de la ACT 68, los Bonos de la ACT 98 Prioritarios (Senior) y los Bonos de la ACT 98 Subordinados.

1.260　**Contrato Anexo de la ACT/ADCC:** ese Contrato Anexo específico adjuntado como Anexo «I» al Acuerdo de Apoyo al Plan de la ACT/ADCC conforme al cual determinados tenedores de Bonos de la ACT y Bonos de la ADCC pueden convertirse en Acreedores del Acuerdo de Apoyo al Plan de la ACT/ADCC.

1.261　**Acuerdo de Litisconsorcio de la ACT/ADCC:** ese Acuerdo de Litisconsorcio específico adjuntado como Anexo «H» al Acuerdo de Apoyo al Plan de la ACT/ADCC conforme al cual determinados tenedores de Bonos de la ACT y Bonos de la ADCC pueden convertirse en Acreedores del Acuerdo de Apoyo al Plan de la ACT/ADCC.

1.262　**Fecha límite del Litisconsorcio de la ACT/ADCC:** con respecto a (a) las Reclamaciones de Bonos de la ACT 68 y las Reclamaciones de Bonos de la ADCC, 17 de mayo de 2021, a las 11:59 p.m. (horario de verano del este) y (b) las Reclamaciones de Bonos de la ACT 98 Prioritarios (Senior), 15 de julio de 2021, a las 11:59 p.m. (horario de verano del este) o, en cualquier caso, la fecha y hora posteriores que puedan ser solicitadas por Assured y National, pero en ningún caso posterior al comienzo de la audiencia para considerar la confirmación del Plan.

1.263　**Acuerdo de Apoyo al Plan de la ACT/ADCC:** ese determinado Acuerdo de Apoyo al Plan de la ACT/ADCC, con fecha 5 de mayo de 2021, entre la Junta de Supervisión y los Acreedores del Acuerdo de Apoyo al Plan de la ACT/ADCC, según se modifique, complemente o cambie ocasionalmente conforme a sus términos.

1.264　**Acreedores del Acuerdo de Apoyo al Plan de la ACT/ADCC:** en su conjunto, las partes del Acuerdo de Apoyo al Plan de la ACT/ADCC, que no sean la Junta de Supervisión.

1.265　**Período de Tasas de Restricción del Acuerdo de Apoyo al Plan de la ACT/ADCC:** el período desde el 5 de mayo de 2021 hasta (a) la Obtención del Umbral del Acuerdo de Apoyo al Plan de la ACT/ADCC o (b) la Fecha Límite del Litisconsorcio de la ACT/ADCC pertinente inclusive, el que ocurra antes.

1.266 **Obtención del Umbral del Acuerdo de Apoyo al Plan de la ACT/ADCC:** la fecha en la que los Acreedores con Tasa de Restricción del Acuerdo de Apoyo al Plan de la ACT/ADCC posean o tengan la debida responsabilidad y autoridad de gestión de inversiones para fondos o cuentas que poseen o, con respecto a Assured y National, posean o aseguren y estén autorizados a votar conforme a la Sección 301(c)(3) de PROMESA, los documentos de seguro definitivos y la ley aplicable, (a) con respecto a los Bonos de la ACT 68, ochenta y cinco por ciento del monto total de las Reclamaciones de Bonos de la ACT 68, incluido el capital principal e interés a partir de la Fecha de Petición de la ACT, (b) con respecto a los Bonos de la ACT 98 Prioritarios (Senior), sesenta y siete por ciento (67 %) del monto total de las Reclamaciones de Bonos de la ACT 98 Prioritarios (Senior), incluido el capital principal y los intereses a partir de la Fecha de Petición de la ACT, y (c) con respecto a los Bonos de la ADCC, setenta por ciento (70 %) del monto total de las Reclamaciones de Bonos de la ADCC, y en cada caso, sin duplicación y en la medida en que tales reclamaciones estén aseguradas, en la medida en que un acreedor del Acuerdo de Apoyo al Plan de la ACT/ADCC esté autorizado a votar cualquier reclamación conforme a la Sección 301(c)(3) de PROMESA, los documentos de seguro definitivos y la ley aplicable.

1.267 **CVI de Recuperación de la ACT:** el CVI que se emitirá a cuenta de las Reclamaciones de la ACT/ELA Permitidas conforme a los términos y disposiciones del Plan, el Contrato de Emisión de CVI, el Acuerdo de Apoyo al Plan de la ACT/ADCC y el Resumen de Transacción que se adjunta como Anexo «J».

1.268 **Orden de Confirmación de la ACT:** la orden del Tribunal del Título III que confirma el Plan de la ACT conforme a la Sección 314 de PROMESA y la sección 1129 del Código de Quiebras, aplicable para los Casos de Título III de la ACT conforme a la Sección 301 de PROMESA.

1.269 **Vigencia de la ACT:** la fecha en que se han consumado sustancialmente las transacciones contempladas por el Plan de la ACT y autorizadas por el Tribunal del Título III en virtud de la Orden de Confirmación de la ACT, pero, en todas las circunstancias, la fecha no será posterior al décimo (10) día calendario siguiente a la fecha en que todas las condiciones para la efectividad del Plan de la ACT hayan sido satisfechas o renunciadas conforme a sus términos.

1.270 **Plan de la ACT:** el plan de ajuste a ser presentado por la Junta de Supervisión, como representante de la ACT en el Caso de Título III de la ACT, en forma y contenido razonablemente aceptables para Assured y National, y congruente con los términos del Resumen del Acuerdo anexado al Acuerdo de Apoyo al Plan de la ACT/ADCC como Anexo «J».

1.271 **Caso de Título III de la ACT:** el Caso de Título III en virtud de PROMESA pendiente en el Tribunal del Título III, bajo el epígrafe *In re Junta de Supervisión y Administración Financiera para Puerto Rico, como representante de la Autoridad de Carreteras y Transportación de Puerto Rico*, Caso núm. 17- 3567-LTS (D.P.R.).

74

1.272 **Acreedores del Acuerdo de Apoyo al Plan Iniciales:** en su conjunto, los Acreedores Iniciales del Acuerdo de Apoyo al Plan de la AEP/OG y los Acreedores Iniciales del Acuerdo de Apoyo al Plan de la ACT/ADCC.

1.273 **Acreedores Iniciales del Acuerdo de Apoyo al Plan de la AEP/OG:** los «Acreedores del Acuerdo de Apoyo al Plan Iniciales» como se define en el Acuerdo de Apoyo al Plan.

1.274 **Acreedores Iniciales del Acuerdo de Apoyo al Plan de la ACT/ADCC:** los «Acreedores Iniciales del Acuerdo de Apoyo al Plan», tal como se definen en el Acuerdo de Apoyo al Plan de la ACT/ADCC.

1.275 **Reclamación de Bonos Asegurados:** en su conjunto, las Reclamaciones de Bonos, los pagos de intereses y capital asegurados por una Monolínea, lo que incluye, de manera no taxativa, a tenor con una póliza de seguros de mercado secundario.

1.276 **Acciones de Invalidez:** en su conjunto, los procedimientos contenciosos que impugnan la validez de determinados Bonos de OG, Bonos de la AEP y notas de bonos anticipados de la AFI enumerados en el Anexo «C» adjunto al presente.

1.277 **CTI:** El Código Tributario Interno de los Estados Unidos de 1986 y sus ocasionales modificaciones.

1.278 **SII:** el Servicio de Impuestos Internos, una agencia del Departamento del Tesoro de los Estados Unidos.

1.279 **SRJ:** Sistema de Retiro para la Judicatura.

1.280 **Reclamación de Participante del SRJ:** una Reclamación a causa de ser o haber sido un Participante del SRJ para (a) beneficios de pensionado devengados al 3 de mayo de 2017 y (b) cualquier otro beneficio de pensionado adicional en el SRJ que tal Participante tendría derecho a recibir cuando el Participante se retire.

1.281 **CDCL:** los Tenedores de la CDLC, según cambie dicha membresía ocasionalmente.

1.282 **Tenedores de la CDLC:** la Coalición de Deuda Constitucional Legítima que se integra por Aristeia Capital, LLC, Farmstead Capital Management, FCO Advisors LP, GoldenTree Asset Management LP, Monarch Alternative Capital LP, Taconic Capital Advisors L.P. y Whitebox Advisors L.L.C., cada uno en representación de sí mismo o determinados de sus fondos gestionados respectivos y, en cada caso, sus sucesores y cesionarios de la AEP/OG respectivos con respecto a cesiones realizadas a tenor con los términos y condiciones del Acuerdo de Apoyo al Plan de la AEP/OG.

1.283    **Gravamen:** cualquier cargo contra o interés en bienes para garantizar el pago de una deuda o el cumplimiento de una obligación.

1.284    **Acciones de Impugnación de Gravamen:** en su conjunto, los procedimientos contenciosos enumerados en el Anexo «D» adjunto al presente.

1.285    **Levantar Mociones de Paralización:** en su conjunto, el litigio se denominó (a) Assured Guaranty Corp., et al. c. Junta de Supervisión y Administración Financiera para Puerto Rico, presentado en el Caso de Título III de la ACT [Expediente núm. 673], (b) Ambac Assurance Corporation, et al. c. la Junta de Supervisión y Administración Financiera, presentado en el procedimiento PROMESA del Estado Libre Asociado [Expediente núm. 10104], (c) Ambac Assurance Corporation, et al. c. la Junta de Supervisión y Administración Financiera, presentado en el procedimiento PROMESA del Estado Libre Asociado [Expediente núm. 10602], (d) AmeriNational Community Services, LLC, et al. c. la Junta de Supervisión y Administración Financiera para Puerto Rico, presentado en el Caso de Título III de la ACT [Expediente núm. 591], (e) Assured Guaranty Corp., et al. c. el estado Libre Asociado de Puerto Rico, et al., Caso núm. 20-1930, actualmente pendiente ante el Tribunal de Apelaciones del Primer Circuito de los Estados Unidos, (f) Ambac Assurance Corporation, et al, c. el estado Libre Asociado de Puerto Rico, et al., Caso núm. 2-1931, actualmente pendiente ante el Tribunal de Apelaciones del Primer Circuito de los Estados Unidos, (g) Peaje Investments LLC c. la Autoridad de Carreteras y Transportación de Puerto Rico, et al., procedimiento contencioso núm. 17-00152-LTS, presentado en el Caso de Título III de la ACT [Expediente núm. 1], en su forma enmendada, y (i) cualquier moción o procedimiento contencioso que pretenda levantar la paralización automática prevista conforme a las secciones 362 y 922 del Código de Quiebras (en la medida aplicable) con respecto a los ingresos similares a los en cuestión en el Levantamiento de Mociones de Paralización mencionado anteriormente.

1.286    **Lista de Acreedores:** la Lista de Acreedores (junto con todos los resúmenes, notas y programas) adjunta como Anexo «A» a la (a) *Notice of Filing of Creditor List for the Commonwealth of Puerto Rico* (Notificación de Presentación de Lista de Acreedores para el ELA de Puerto Rico) presentada en el Caso de Título III del ELA [Caso núm. 17- 3283-LTS, expediente electrónico de caso núm. 1215], (b) *Notice of Filing of Creditor List for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico* (Notificación de Presentación de Lista de Acreedores para Sistema de Retiro de los Empleados del Gobierno del ELA de Puerto Rico) presentada en el Caso de Título III del SRE [Caso núm. 17-3566-LTS, expediente electrónico de caso núm. 207] y (c) *Notice of Filing of Creditor List for The Puerto Rico Public Buildings Authority* (Notificación de Presentación de Lista de Acreedores para la Autoridad de Edificios Públicos de Puerto Rico) presentada en el Caso de Título III de la AEP [Caso núm. 19-5523-LTS, expediente electrónico de caso núm. 34] a tenor con las secciones 924 y 925 del Código de Quiebras, y las modificaciones, replanteamientos, complementos u otros cambios realizados o que puedan realizarse a las listas, resúmenes, notas o programas por parte de los Deudores.

    1.287    **Normas de Quiebra Locales:** las Normas de Quiebra Locales del Tribunal de Quiebras de los Estados Unidos para el Distrito de Puerto Rico y, en la medida en que sea aplicable al Caso de Título III; las Normas del Tribunal del Distrito para el Distrito de Puerto Rico y todas sus modificaciones ocasionales.

    1.288    **Amortización de la Deuda Anual Máxima:** la amortización de la deuda programada anual máxima (lo que incluye pagos de capital e intereses vencidos y pagaderos a bonos que generan interés vigente y, en el caso de los bonos de apreciación de capital o instrumentos similares, el valor al vencimiento debido y pagadero sobre dichos instrumentos) para cualquier año fiscal sobre Deuda con Garantía Impositiva Neta; disponiéndose, sin embargo, que, en el caso de la tasa de Deuda variable, el cálculo asumirá que tal Deuda genera interés a la tasa anual máxima permitida por ley; y disponiéndose, además que, en la medida en que ninguna disposición o aclaración aumente el Tope Global, lo que incluye el sublímite de deuda garantizadas y/o titularizadas sobre los niveles establecidos en la Sección 17.4 del presente, la Política de Gestión de la Deuda puede establecer disposiciones o aclaraciones adicionales con respecto al cálculo de Amortización de la Deuda Anual Máxima, coherente con los principios y objetivos establecidos en el presente.

    1.289    **Monto de Elección de Bonos Imponible Máximo:** el monto de Nuevos Bonos de OG necesarios previa consulta con el asesor fiscal de la Sección 103 y la determinación del Servicio de Impuestos Internos, a ser emitido como no exento para fines de impuesto sobre ingresos federal.

    1.290    **IVU Medido:** el 5.5 % de IVU, menos fondos CINE de tres millones doscientos cuarenta mil dólares ($ 3,240,000.00), según se estableció en el Resumen de Resolución adjunto como Anexo «I» al Acuerdo de Apoyo al Plan de la AEP/OG.

    1.291    **Centros Médicos:** en su conjunto, los siguientes centros de salud federalmente habilitados: (a) Atlantic Medical Center, Inc.; (b) Camuy Health Services, Inc.; (c) HPM Foundation, Inc.; (d) Centro de Salud de Lares, Inc.; (e) Centro de Salud Familiar Dr. Julio Palmieri Ferri, Inc.; (f) Ciales Pumay Health Care Services, Inc.; (g) Concilio de Salud Integral de Loiza, Inc.; (h) Corporación de Servicios Médicos Primarios Prevención de Hatillo, Inc.; (i) Corporación de Servicios de Salud y Medicina de Avandaza; (j) NeoMed Center, Inc.; (k) Hospital Center Castaner, Inc.; (l) Migrant Health Center, Inc.; (m) Morovis Community Health Center, Inc.; (n) Centro de Servicios Primarios de Salud de Patillas, Inc.; (o) Costa Salud, Inc.; (p) Salud Integral en la Montana, Inc. (SIM), f/k/a Corporación de Servicios Integrales de Salud del Área de Barranquitas, Comerro, Corozal, Narajito y Orocovis; (q) Med Center, Inc., f/k/a Consejo de Salud de la Comunidad de la Playa de Ponce, Inc.; (r) Community Health Foundation of Puerto Rico, Inc.; (s) Corporación SANOS; (t) San Juan Comprehensive Health Care for the Homeless Program; (u) Centro de Servicios Primarios de Salud de Florida (v) Puerto Rico Community Network for Clinical Research (CONCRA); y (w) Rio Grande Community Health Center, Inc.

1.292     **Reclamaciones de Centros Médicos:** en su conjunto, toda Reclamación de los Centros Médicos que surja de o se relacione con la Ley Medicaid, 42 U.S.C. § 139 6a(bb), lo que incluye, de manera no taxativa, (a) toda reclamación y causas de acción o que puedan haberse presentado en el Litigio de Centros Médicos, (b) cualquier monto que se afirma es debido y adeudado, o que podría afirmarse es debido y adeudado, en las evidencias de reclamación del Centro Médico y (c) todo monto que se afirma es debido y está relacionado al período de la Fecha de Petición del ELA hasta la Vigencia inclusive.

1.293     **Litigio de Centros Médicos**: en su conjunto, el litigio designado: (a) Asociación de Salud Primaria de Puerto Rico, Inc. c. Estado Libre Asociado de Puerto Rico, *et al.*, núm. Civil KPE02-1037 (2002), actualmente pendiente en el Tribunal de Primera Instancia del ELA, junto con las siguientes apelaciones derivadas: (i) Apelación núm. KLCE2017-0147; (ii) Apelación núm. KLCE2017-00094; y (iii) Apelación núm. KLCE2017-00105, (b) Rio Grande Cmty. Health Ctr. Inc., *et al.* c. ELA de Puerto Rico, *et al.*, Caso núm. 03-1640(GAG), actualmente pendiente en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, junto con las siguientes apelaciones derivadas: (i) Caso núm. 17-1731; (ii) Caso núm. 17-1812; (iii) Caso núm. 17-1822; (iv) Caso núm. 18-1083; y (v) Caso núm. 19-1336, (c) Atlantic Medical Center Inc. *et al.* c. El ELA de Puerto Rico, *et al.*, Caso núm. 06-1291, actualmente pendiente en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, (d) Consejo de Salud de la Comunidad de la Playa de Ponce, Inc., *et al.* c. Gonzalez-Feliciano, Caso núm. 06-1260, actualmente pendiente en el Tribunal del Distrito de los Estados Unidos para el Distrito de Puerto Rico, (e) Asociación de Salud Primaria de P.R., *et al.* c. ELA de Puerto Rico, *et al.*, procedimiento contencioso núm. 17-00227, actualmente pendiente en el Tribunal del Título III, (f) Atlantic Med. Ctr., Inc., *et al.* c. ELA de Puerto Rico, *et al.*, procedimiento contencioso núm. 17-00278, actualmente pendiente en el Tribunal del Título III, (g) Corporación de Servicios Integrales de Salud del Área de Barranquitas, Comerio, Corozal, Naranjito y Orocovis c. ELA de Puerto Rico, procedimiento contencioso núm. 17-00292, actualmente pendiente en el Tribunal del Título III, (h) Corporación de Servicios Integrales de Salud del Área de Barranquitas, Comerio, Corozal, Naranjito y Orocovis c. ELA de Puerto Rico, procedimiento contencioso núm. 17-00298, actualmente pendiente en el Tribunal del Título III, (i) Moción de Salud Integral en la Montana, Corporación de Servicios de Salud y Medicina Avanzada, Neomed Center, Mgmt. Health Center, HPM Foundation, Morovis Community Health Center y Concilio de Salud Integral de Loiza para Asignación y Pago de Reclamación de Gastos Administrativos, o como alternativa, Medidas de Paralización Automática, registradas en el Casos de Título III del ELA [expediente electrónico de caso núm. 13582], (j) Moción de Atlantic Medical Center, Inc. Camuy Health Services, Inc., Centro de Salud familiar Dr. Julio Palmieri Ferri, Inc., Ciales Primary Health Care Services, Inc., Corp. de Serv. Médicos Primarios y Prevención de Hatillo, Inc., Costa Salud, Inc., Centro de Salud de Lares, Inc., Centro de Servicios Primarios de Salud de Patillas, Inc. y Hospital General Costoner, Inc. solicitando (I) la Ejecución de la Orden Previa del Tribunal y (II) Medidas de Paralización Automática, registradas en el Casos de Título III del ELA [expediente electrónico de caso núm. 12918], (k) Moción para Medidas de Paralización, registradas en el Casos de Título III del ELA [expediente electrónico de caso núm. 13748] y (l) cualquier litigio, procedimiento adverso o moción con respecto a las Reclamaciones de Centros Médicos emitidas en el Caso de Título III del ELA o cualquiera de los Litigios de Centros Médicos mencionados anteriormente.

1.294     **Bonos para Medicina:** el bono, de haberlo, pagadero a los empleados actuales, antiguos, activos, inactivos y discapacitados del ELA, sus agencias e instrumentalidades a tenor con la Ley núm. 155-2003, codificada en 3 L.P.R.A. §757j, según la modifique la Ley núm. 3-2013, 3

L.P.R.A. §761.

1.295     **Beneficio de Seguro Médico:** la asignación mensual de cien dólares ($ 100.00) proporcionada a todos los Participantes del SRM, SRJ y SRE elegibles pre-Ley núm. 3-2013 que tienen una póliza de seguro de salud aprobada por el gobierno, cuya asignación se paga directamente a la compañía de seguros.

1.296     **Monolíneas:** en su conjunto, Ambac, Assured, FGIC, National y Syncora, como aseguradoras de Bonos de OG, Bonos de la AEP u otras Reclamaciones o valores emitidos por los Deudores, según corresponda.

1.297     **Pensión Base Mensual:** el monto del pago de pensión mensual realizado, o a realizar, a un Participante, pero que excluye de manera expresa todo otro beneficio, lo que incluye, de manera no taxativa, el Bono de Navidad, la Bonificación de Verano, la Bonificación para Medicina y el Beneficio de Seguro Médico.

1.298     **Modificación de Beneficios Mensuales:** la modificación, que comienza en la Fecha de Reducción de Beneficios, de los pagos de beneficios de retiro mensuales que excedan $ 1,5000.00 por mes según figura a continuación: (a) al reducir el Bono de Navidad Mensual hasta que se alcance el umbral de $ 1,5000.00 por mes o hasta que se alcance el Porcentaje de Reducción, o se elimine por completo el Bono de Navidad Mensual, lo que suceda primero al momento en que el Beneficio Mensual Total del Participante se reduce, (b) en el caso de que el Beneficio Mensual Total del Participante siga excediendo el umbral de $ 1,5000.00 por mes y no se alcance el Porcentaje de Reducción después de eliminar el Bono de Navidad Mensual, al reducir la Bonificación de Verano Mensual hasta que se alcance el umbral de $ 1,5000.00 por mes o hasta que se alcance el Porcentaje de Reducción, o se elimine por completo la Bonificación de Verano, lo que suceda primero al momento en que los Beneficios Mensuales Totales del Participante se reducen, (c) en el caso de que los Beneficios Mensuales Totales del Participante sigan excediendo el umbral de $ 1,5000.00 por mes y no se alcance el Porcentaje de Reducción después de eliminar el Bono de Navidad Mensual y la Bonificación de Verano Mensual, al reducir la Bonificación para Medicina Mensual hasta que se alcance el umbral de $ 1,5000.00 por mes o hasta que se alcance el Porcentaje de Reducción, o se elimine por completo la Bonificación para Medicina, lo que suceda primero al momento en que los Beneficios Mensuales Totales del Participante se reducen y (d) en el caso de que los Beneficios Mensuales Totales del Participante sigan excediendo el umbral de $ 1,5000.00 por mes y no se alcance el Porcentaje de Reducción después de eliminar el Bono de Navidad Mensual, la Bonificación de Verano Mensual y la Bonificación para Medicina Mensual, al reducir la Pensión Base Mensual hasta que se alcance el Porcentaje de Reducción; disponiéndose, sin embargo, que la aplicación del Porcentaje de Reducción restante a la Pensión Base Mensual no reduzca el Beneficio Mensual Total del Participante por debajo del umbral de $ 1,5000.00 por mes y disponiéndose, además, que (i) los ajustes al Seguro Social y su recepción y (ii) los Beneficios Médicos Mensuales quedarán excluidos del cálculo que precede; y disponiéndose, además, que, sin perjuicio de lo que se establezca en el presente en contrario, los beneficios de pensión acumulados generados por los Participantes a partir del 4 de mayo de 2017 y posteriormente, no estarán sujetos a reducción.

1.299      **Bono de Navidad Mensual:** el monto igual a un doceavo (1/12) del Bono de Navidad anual, de haberla.

1.300      **Bonificación para Medicina Mensual:** el monto igual a un doceavo (1/12) de la Bonificación para Medicina anual, de haberla.

1.301      **Bonificación de Verano Mensual:** el monto igual a un doceavo (1/12) de la Bonificación de Verano Anual, de haberla.

1.302      **National:** National Public Finance Guarantee Corporation.

1.303      **Precio de Aceleración de National:** con respecto a cualquier Bono Asegurado de National, un monto igual al capital pendiente de tal Bono Asegurado de National más el interés acumulado y no pagado sobre este (o, en el caso de cualquier bonos de apreciación de capital, el monto compuesto de este) a la Vigencia.

1.304      **Certificados de National:** con respecto a cada Fideicomiso de National que se forme para el beneficio de los Beneficiarios de Bonos Asegurados de National, el certificado o recibo que expida dicho Fideicomiso de National a los Beneficiarios de tales Bonos Asegurados de National que se depositen en el Fideicomiso de National.

1.305      **Contraprestación por Conmutación de National:** una combinación de algunos o todos de los siguientes, a seleccionar a entera discreción de National antes del comienzo de la Vista de Declaración de Divulgación: (i) parte o toda la Acción a Prorrata de un tenedor de la Contraprestación del Plan de National; (ii) un porcentaje, a determinar a entera discreción de National, de los Costos de Perfeccionamiento y/o la Tasa de Restricción de la AEP asignable a National de acuerdo con los términos y disposiciones del Artículo III del presente; y (iii) Efectivo en un monto a determinar por National a su entera discreción.

1.306      **Tratamiento de Conmutación de National:** el tratamiento establecido en la Sección 71.2(a) del presente.

1.307      **Reclamaciones de Bonos de la ACT/ELA de National:** en su conjunto, las Reclamación de la ACT/ELA que surjan de los bonos de la ACT asegurados por National.

1.308      **Cuenta de Plica de National:** una única cuenta de plica que se puede formar, en o antes de la Vigencia, por parte del ELA o la AEP, a beneficio de los tenedores beneficiarios de Bonos Asegurados de National cuya Contraprestación del Plan de National se depositó allí, cuyos términos se establecerán en el Complemento del Plan.

1.309      **Pólizas de Seguro de National:** las pólizas de seguros existentes, incluidas las pólizas de seguros de mercado secundario, emitidas inicialmente por (a) MBIA Insurance Corporation y posteriormente renovadas a National o (b) FGIC y posteriormente renovadas a National, y relacionadas con los Bonos Asegurados de National, junto con todos y cada uno de los acuerdos y otros documentos relacionados con estos.

1.310    **Reclamaciones de Bonos Asegurados de National:** en su conjunto, las Reclamaciones que surjan de los Bonos Asegurados de National, lo que incluye cualquier Reclamación de Bonos de Garantía del ELA Antiguos (National).

1.311    **Bonos Asegurados de National:** en su conjunto, los Bonos de OG y los Bonos de la AEP que hayan sido asegurados por National, incluso, sin limitación, conforme a una póliza de seguro de mercado secundario.

1.312    **Tratamiento de No Conmutación de National:** el tratamiento establecido en la Sección 71.2(b) del presente.

1.313    **Contraprestación del Plan de National:** la contraprestación asignable o distribuible a tenedores de Reclamaciones de Bonos de la AEP Antiguos Permitidos (National), Reclamaciones de Bonos del ELA Antiguos (National) y Reclamaciones de Bonos de Garantía del ELA Antiguos (National), según el caso.

1.314    **Tratamiento de National:** con respecto a cada Clase de Reclamaciones de Bonos Asegurados de National, el tratamiento establecido en el Artículo LXXI del presente.

1.315    **Fideicomiso de National:** el o los fideicomisos que pueden formarse, en o antes de la Vigencia, por parte del ELA o la AEP, cuyo costo y gasto exclusivo, incluidos, sin limitación, la formación y mantenimiento de los fideicomisos (incluidos los honorarios y gastos del fideicomisario), correrán a cargo de National o a partir de los activos del Fideicomiso de National, y en beneficio de los tenedores beneficiarios de tales Bonos Asegurados de National, cuyos términos se establecerán en el Complemento del Plan.

1.316    **Reclamaciones de Bonos del SRE Permitidas Netas:** en su conjunto, (a) Reclamaciones de Bonos del SRE Permitidas menos (b) el monto de pagos de protección adecuados recibidos por el tenedor de dichas Reclamaciones de Bonos del SRE Permitidas desde y después de la Fecha de Petición del SRE, calculado sobre la base de CUSIP por CUSIP.

1.317    **Deuda con Garantía Impositiva Neta:** cualquier Deuda con Garantía Impositiva, lo que excluye cualquier (a) Deuda garantizada por la plena fe y crédito y poder impositivo del ELA no pagadera de o garantizada por los Ingresos de la Política de Deuda que requieren su pago continuo a partir de los Ingresos de la Política de Deuda, en la medida en que no se haga uso de la garantía del ELA durante los cinco (5) años fiscales completados más recientemente, (b) Deuda refinanciada mediante los ingresos de la emisión de pagarés o bonos propuesta y (c) Deuda y obligaciones expresamente excluidas del cálculo del Tope Global en la Sección 70.5 del presente.

1.318    **Nuevos CAB de OG al 5.0 %:** en su conjunto, la serie de bonos de revalorización de capital de obligación general, que devengan interés a una tasa de cinco por ciento (5 %) por año, a emitirse a tenor con el Plan como componentes de Nuevos Bonos de OG y a distribuirse a tenor con los términos y disposiciones del Plan.

1.319     **Nuevos CAB de OG al 5.375 %:** en su conjunto, la serie de bonos de revalorización de capital de obligación general, que devengan interés a una tasa de trescientos setenta y cinco milésimas por ciento (5.375 %) por año, a emitirse a tenor con el Plan como componentes de Nuevos Bonos de OG y a distribuirse a tenor con los términos y disposiciones del Plan.


1.320     **Nuevos Bonos de OG:** en su conjunto, (a) Nuevos bonos de interés actual de OG, (b), Nuevos CAB de OG al 5.375 % y (c) Nuevos CAB de OG al 5.0 %, emitidos como bonos de obligaciones generales, para cuyo pago el ELA ha pignorado su plena fe y crédito y poder impositivo a tenor con el Artículo VI de la Constitución del Estado Libre Asociado y la ley aplicable de Puerto Rico, a emitirse en la Vigencia por parte del ELA a tenor con los términos y condiciones del Plan, la Orden de Confirmación, al Contrato de Emisión de Nuevos Bonos de OG y la Legislación de Nuevos Bonos de OG, lo que incluye, de manera no taxativa, cualquier bono de refinanciamiento que pueda emitirse a tenor con el Contrato de Emisión de Nuevos Bonos de OG y la Legislación de los Nuevos Bonos de OG.

1.321     **Contrato de Emisión de Nuevos Bonos de OG:** el contrato de emisión a celebrarse y otorgarse en la Vigencia a tenor con lo cual el ELA emitirá los Nuevos Bonos de OG y que incluye todos los términos y disposiciones relacionados a estos, según se modifique, complemente o cambie ocasionalmente a tenor con sus términos y condiciones.

1.322     **Legislación de Nuevos Bonos de OG:** la legislación a aprobar en o antes de la Vigencia que autoriza determinadas transacciones contempladas por, y que son coherentes con, el Plan, lo que incluye, de manera no taxativa, legislación que autoriza la emisión de los Nuevos Bonos de OG coherente con los términos establecidos en la presente y en el Acuerdo de Apoyo al Plan de la AEP/OG.

1.323     **Fideicomisario de Nuevos Bonos de OG:** el fideicomisario o fideicomisario sustituto, según el caso, designado a tenor con los términos y condiciones del Contrato de Emisión de Nuevos Bonos de OG.

1.324     **Nuevos CIB de OG:** en su conjunto, la serie de bonos de interés actual de obligación general a emitirse a tenor con el Plan como componentes de los Nuevos Bonos de OG y a distribuirse a tenor con los términos y disposiciones del Plan.

1.325    **Nuevos Bonos de Refinanciamiento de OG**: los valores que pueda emitir el ELA reorganizado a partir de la Vigencia, con el fin de refinanciar, total o parcialmente, los Nuevos Bonos de OG o valores previamente emitidos para refinanciar los Nuevos Bonos de OG, disponiéndose que (a) la fecha de vencimiento final de tales valores de refinanciamiento no sea posterior a treinta (30) años desde la fecha de vencimiento final establecida original de los Nuevos Bonos de OG y (b) al emitir tales valores, la amortización de la deuda anual pagadera en el entonces actual año fiscal y cada año fiscal futuro con respecto a todos los Nuevos Bonos de OG y Nuevos Bonos de OG de Refinanciamiento pendientes después de la emisión de los Nuevos Bonos de OG de Refinanciamiento será igual o menor que la amortización de la deuda anual pagadero en el entonces actual año fiscal y cada año fiscal posterior hasta el año fiscal 2046, respectivamente, con respecto a todos los Nuevos Bonos de OG y Nuevos Bonos de OG de Refinanciamiento pendientes antes de tal emisión.

1.326    **Nuevos Bonos de la ACT:** en su conjunto, los bonos que la ACT emitirá en la Vigencia de la ACT conforme a los términos y condiciones del Plan de la ACT, la Orden de Confirmación de la ACT y el Contrato de Emisión de Bonos Nuevos de la ACT, incluido, sin limitación, cualquier bono de reembolso que pueda emitirse conforme al Contrato de Emisión de Bonos Nuevos de la ACT.

1.327    **Contrato de Emisión de Nuevos Bonos de la ACT:** el contrato o resolución a ejecutarse y otorgarse en la Vigencia de la ACT conforme a lo cual el la ACT emitirá los Nuevos Bonos de la ACT y que incluye todos los términos y disposiciones relacionados a estos, según se modifique, complemente o cambie ocasionalmente conforme a sus términos y condiciones, donde el contrato o resolución deberá ser razonablemente satisfactorio para Assured y National.

1.328    **Notas de Ahorro:** en su conjunto, las notas de ahorro emitidas por el Estado Libre Asociado conforme a la Ley núm. 7 de la Legislatura de Puerto Rico, cuyo pago está respaldado por la plena fe y crédito del Estado Libre Asociado.

1.329    **Reclamación de Empleados de Desarrollo Normal:** una Reclamación de un empleado de los Deudores relacionada a asuntos de desarrollo normal del empleo, lo que incluye, de manera no taxativa, una Reclamación relacionada al cese de la relación laboral, pago de feriados, vacaciones, licencia por enfermedad, pagos de atrasos u otras Reclamaciones similares, disponiéndose, sin embargo, que «Reclamación de Empleados de Desarrollo Normal» no incluirá Reclamaciones relacionadas a beneficios para pensionados.

1.330    **Condición de Rendimiento Superior:** el monto por el cual el IVU Medido excede la «Métrica de Rendimiento Superior», según se define en el Resumen de Resolución adjunto como Anexo «I» al Acuerdo de Apoyo al Plan durante cualquier año fiscal.

1.331     **Pendiente:** Deuda que (i) no se ha pagado en su totalidad a tenor con sus términos o (ii) no se ha anulado legalmente a tenor con los requisitos de anulación establecidos en los documentos de emisión definitiva aplicables.

1.332     **Junta de Supervisión:** la Junta de Supervisión y Administración Financiera para Puerto Rico establecida a tenor con la Sección 101 de PROMESA, como representante de los Deudores en sus Casos de Título III correspondientes en virtud de la Sección 315(b) de PROMESA.

1.333     **Participante:** un empleado actual, antiguo, activo, inactivo o discapacitado del ELA y sus agencias e instrumentalidades, que posee una reclamación devengada para uno o más beneficios de retiro a causa de ser o haber sido un participante del SRE, SRJ o SRM, junto con sus beneficiarios, de haberlos.

1.334     **PayGo:** la pensión prepaga creada a tenor con la Ley 106 de 2017.

1.335     **AEP:** la Autoridad de Edificios Públicos de Puerto Rico.

1.336     **Reclamación de Gastos Administrativos de la AEP:** la Reclamación de la AEP contra el ELA con respecto al uso y ocupación del ELA de Bienes de la AEP durante el período desde el inicio del Caso de Título III ELA hasta la Vigencia inclusive.

1.337     **Reclamaciones de Bonos de la AEP:** en su conjunto, las Reclamaciones contra la AEP derivadas o relacionadas con los Bonos de la AEP, lo que incluye las Reclamaciones de Bonos de la AEP Antiguos, las Reclamaciones de Bonos de la AEP Antiguos (Assured), las Reclamaciones de Bonos de la AEP (National), Reclamaciones de Bonos de la AEP Antiguos (Otros Asegurados), las Reclamaciones de Bonos de la AEP 2011, las Reclamaciones de Bonos de la AEP 2012 y las Reclamaciones de Bonos de la AEP de Inversión.

1.338     **Distribución de Bonos de la AEP:** la distribución de Efectivo a tenedores de Reclamaciones de Bonos de la AEP Permitidas en un monto igual a la Reclamación de Gastos Administrativos de la AEP Permitida.

1.339     **Bonos de la AEP:** en su conjunto, los Bonos de la AEP 2011, los Bonos de la AEP 2012 y los Bonos de la AEP Antiguos.

1.340     **Efectivo de la AEP:** mil setenta y tres millones de dólares ($ 1,073,000,000.00), el monto que pagó el ELA con relación a la conciliación y resolución de la Reclamación de Gastos Administrativos de la AEP Permitida.

1.341    **Reclamación con Garantía Prendaria de la ARD/AEP:** en su conjunto, los préstamos supuestamente realizados por el BGF a la AEP que, a la Fecha de Petición de la AEP, alcanzaban un capital pendiente de sesenta y seis millones doscientos veintidós mil veintiocho dólares ($ 66,222,028.00), cuyo reembolso se declara que está garantizado por los ingresos de la venta o disposición de determinados Bienes de la AEP y subordinado a todos los derechos y recuperaciones con respecto a los Bonos de la AEP.

1.342    **Reclamación sin Garantía de la ARD/AEP:** en su conjunto, los préstamos subordinados supuestamente realizados por el BGF a la AEP que, a la Fecha de Petición de la AEP, alcanzaban un capital pendiente de ciento treinta y cuatro millones trescientos cincuenta y siete mil cuatrocientos noventa y siete dólares ($ 134,357,497.00).

1.343    **Reclamación sin Garantía General de la AEP:** una Reclamación contra la AEP que no sea una Reclamación de Bonos de la AEP, una Reclamación de Bonos sin Garantía Prendaria de la AEP/ARD ni una Reclamación de Bonos sin Garantía de la AEP/ARD, pero que incluye Reclamaciones de Empleados de Desarrollo Normal contra la AEP.

1.344    **Litigio de la AEP:** el procedimiento contencioso designado Junta de Supervisión y Administración Financiera para Puerto Rico c. Autoridad de Edificios Públicos de Puerto Rico, procedimiento contencioso núm. 18-00149, actualmente pendiente en el Tribunal del Título III.

1.345    **Fecha de Petición de la AEP:** el 27 de septiembre de 2019, la fecha en que se inició el Caso de Título III de la AEP.

1.346    **Bienes de la AEP:** todos los bienes sobre los cuales la AEP actualmente tiene algún derecho, título o interés, lo que incluye, de manera no taxativa, los edificios y otras instalaciones que son propiedad de la AEP o que esta arrienda.

1.347    **Caso de Título III de la AEP:** el Caso de Título III en virtud de PROMESA pendiente en el Tribunal del Título III, con el epígrafe *In re* Junta de Supervisión y Administración Financiera para Puerto Rico, como representante de la Autoridad de Edificios Públicos de Puerto Rico, Caso núm. 19-5523-LTS (D.P.R.).

1.348    **Escritura de Fideicomiso de la Reserva de Pensiones:** la escritura de fideicomiso a celebrar y otorgar en o después de la Vigencia, razonablemente aceptable para el Gobierno de Puerto Rico, el Comité de Pensionados y la parte de organizaciones de trabajo para planificar acuerdos de apoyo al Plan, sustancialmente en la forma que se incluye en el Complemento del Plan, que dispone, entre otras cosas, la creación del Fideicomiso de Reserva de Pensiones y que dispone los términos de depósito y extracción de fondos en el Fideicomiso de Reserva de Pensiones a beneficio de los pensionados.

1.349     **Fideicomiso de la Reserva de Pensiones:** el fideicomiso de reserva a crear a tenor con los términos y condiciones del Artículo LXXIX del presente, dicho fideicomiso de reserva se utilizará para pagar las obligaciones de pensiones del ELA a tenor con la Ley 106.

1.350     **Persona**: una persona natural, una sociedad colectiva, una sociedad limitada, una sociedad, una sociedad de responsabilidad limitada, una asociación de responsabilidad limitada, una cooperativa, un fideicomiso, una organización no constituida, una asociación, una sociedad por acciones, una empresa conjunta, un patrimonio, un gobierno o una agencia o subdivisión política de este, o cualquier otra forma de persona jurídica.

1.351     **CFP:** la Corporación para el Financiamiento Público de Puerto Rico.

1.352     **Plan:** el presente Tercer Plan de Ajuste Conjunto Enmendado Elaborado Conforme al Título III del Estado Libre Asociado de Puerto Rico, *et al.*, lo que incluye, de manera no taxativa, los anexos y programas adjuntos al presente, según se modifique, complemente o cambie ocasionalmente a tenor con las disposiciones de PROMESA, el Código de Quiebras y los términos del presente.

1.353     **Complemento del Plan:** un volumen separado, a presentarse con el Actuario del Tribunal del Título III, lo que incluye, entre otros documentos, formularios de los Nuevos Bonos de OG y las CVI y, si no se aprobó antes, el proyecto de la Legislación de los Nuevos Bonos de OG y la Legislación de CVI, respectivamente, que, en cada caso, tendrán la forma y contenido razonablemente satisfactorios para la AAFAF, el Grupo de Deuda Constitucional, el Grupo de OG, la CDCL, el Grupo QTCB, Assured, National y Syncora. El Complemento del Plan (que contiene versiones en borrador o finales de los documentos que anteceden) se presentará con el Actuario del Tribunal del Título III en cuanto sea posible (pero en ningún caso más de siete (7) días antes de la Fecha de Elección, o en la fecha que establezca el Tribunal del Título III. El Complemento del Plan se considerará incorporado al Plan y parte de este como si estuviese contenido en el presente en su totalidad.

1.354     **APA:** Autoridad del Puerto de las Américas

1.355     **AAA:** la Autoridad de Acueductos y Alcantarillados de Puerto Rico.

1.356     **AEE:** la Autoridad de Energía Eléctrica de Puerto Rico.

1.357     **AFI:** la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico.

1.358     **Notas de Bonos Anticipados de la AFI:** en su conjunto, las Notas de Bonos Anticipados de la AFI, Serie 2015, emitidas a tenor con ese determinado Contrato de Fideicomiso con fecha marzo de 2015, entre la AFI y Bank of New York Mellon como fideicomisario.

1.359     **Litigio de Notas de Bonos Anticipados de la AFI:** el litigio designado Junta de Supervisión y Administración Financiera para Puerto Rico c. The Bank of New York Mellon, *et al.*, procedimiento contencioso núm. 19-AP-269-LTS, actualmente pendiente en el Tribunal del Título III.

1.360     **Profesional:** una Entidad (a) a compensar por servicios proporcionados antes o en la Vigencia a tenor con las Secciones 316 y 317 de PROMESA y (i) empleada en los Casos de Título III por las Partes del Gobierno (a entera discreción de las Partes del Gobierno) o (iii) empleada en los Casos de Título III por la Junta de Supervisión (a entera discreción de la Junta de Supervisión) o (b) para la cual se Concedió compensación y reembolso por parte del Tribunal del Título III a tenor con la sección 503(b)(4) del Código de Quiebras.

1.361     **Reclamación Profesional:** una Reclamación de un Profesional que procura, por parte del Tribunal del Título III, un laudo de compensación por los servicios realizados o el reembolso de los gastos realizados hasta la Fecha de Confirmación inclusive a tenor con las Secciones 316 y 317 de PROMESA.

1.362     **PROMESA:** la Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico, ley de derecho público núm. 114-187, 130 Stat. 549 (2016), 48 del Código de los Estados Unidos § 2101 y siguientes, y sus cambios y modificaciones.

1.363     **Participación a Prorrata:** con respecto a las Reclamaciones Permitidas (a) entre y dentro de las Clases dentro de la misma Categoría de Recuperación de Bonos establecidas en el Anexo «L» adjunto al presente, la proporción de una Reclamación Permitida con respecto a la suma de todas las Reclamaciones Permitidas dentro de tal Clase (o dentro de todas las Clases dentro de tal Categoría de Recuperación de Bonos, según corresponda), tomando en cuenta, y reduciendo, considerando el interés no pagadero sobre este a la Fecha de Petición del ELA o la Fecha de Petición de la AEP, según el caso, con respecto a los bonos individuales dentro de tal Clase y (b) entre más de una Clase, pero no dentro de la misma Categoría de Recuperación de Bonos, la proporción que reciben de las Reclamaciones Permitidas dentro de tal Clase de Reclamaciones en contraprestación a la suma de contraprestación recibidas por todas las Reclamaciones dentro de las Clases aplicables.

1.364     **Acreedores del Acuerdo de Apoyo al Plan:** en su conjunto, los Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG y los Acreedores del Acuerdo de Apoyo al Plan de la ACT/ADCC.

1.365     **Tasas de Restricción del Acuerdo de Apoyo al Plan:** en su conjunto, las Tasas de Restricción de la AEP/OG y la Tasa de Restricción de la ADCC.

1.366    **Inversor de Puerto Rico:** un tenedor de una Reclamación de Bonos del ELA, una Reclamación de Bonos de la AEP o una Reclamación de Bonos de Garantía del ELA que pertenece, o es propiedad total o cuyo único beneficiario es una o más personas físicas y residente/s del Estado Libre Asociado de Puerto Rico con fines de pago de impuesto sobre ingresos personales de Puerto Rico (según lo determina la Junta de Supervisión a su entera y absoluta discreción), disponiéndose, sin embargo, que «Inversor de Puerto Rico» no incluirá a ningún tenedor de un Bono de OG o un Bono de la AEP, cuyo pago de principal e interés está asegurado por Assured, National o Syncora.

1.367    **Grupo QTCB:** el Grupo de Tenedores de Notas QTCB que se integra por Canyon Capital Advisors LLC, Sculptor Capital LP y Davidson Kempner Capital Management LP, cada uno en representación de sí mismo o en representación de sus clientes participantes o alguno de sus fondos gestionados respectivos y, en cada caso, sus sucesores y cesionarios respectivos con respecto a cesiones realizadas a tenor con los términos y condiciones del Acuerdo de Apoyo al Plan de la AEP/OG.

1.368    **Porcentaje de Reducción:** el menor de (a) ocho con cinco por ciento (8.5 %) del Beneficio Mensual Total y la reducción del Beneficio Mensual Total a mil quinientos dólares ($ 1,500.00) por mes.

1.369    **Personas Relacionadas:** con respecto a cualquier Entidad (lo que incluye, para evitar dudas, el ELA y las Partes del Gobierno), sus predecesores, sucesores y cesionarios (de pleno derecho o de otra forma) y sus Filiales actuales y pasadas respectivas y los empleados, gerentes, oficiales designados o electos, directores, funcionarios, directivos, mandantes, miembros, accionistas (sean sus participaciones directas o indirectas), socios, asesores financieros, abogados, contadores, consultores, agentes y profesionales (lo que incluye, de manera no taxativa, todo Profesional contratado por los Deudores y la AAFAF) actuales o pasados u otros representantes, apoderados o gestores de inversión de tal Entidad o sus Filiales actuales y pasadas respectivas, cada uno actuando en tal calidad, y cualquier Entidad que realice una reclamación mediante cualquiera de ellos (lo que incluye sus funcionarios, directivos, gerentes, accionistas, socios, empleados, miembros y profesionales respectivos), cada uno en su calidad respectiva.

1.370    **Reclamaciones Eximidas:** en su conjunto, (a) con respecto a aquellas
Entidades parte del Acuerdo de Apoyo al Plan de la AEP/OG y el Acuerdo de Apoyo al
Plan de la ACT/ADCC, Reclamaciones y Causas de acción eximidas según el presente y a
tenor con el Acuerdo de Apoyo al Plan y el Acuerdo de Apoyo al Plan de la ACT/ADCC,
(b) Reclamaciones y Causas de acción derivadas o relacionadas con o que fueron o pueden
haber sido presentadas contra los Deudores o sus Activos en los Casos de Título III, (c)
Reclamaciones y Causas de acción que fueron o pueden haber sido presentadas por
Deudores (con respecto a las exenciones presentadas por los Deudores) y por los
Acreedores o las Partes del Gobierno con respecto a Reclamaciones que tiene contra las
Partes Eximidas (con respecto a las exenciones de las Partes que Eximen) y (d)
Reclamaciones y Causas de acción relacionadas a la Cuarta Estipulación Modificada entre
el ELA de Puerto Rico y la Autoridad de Carreteras y Transportación de Puerto Rico con
respecto a la Orden de interrupción del plazo de prescripción y consentimiento [Caso núm.
17-3283-LTS, expediente electrónico de caso núm. 15854], y sus modificaciones, y
Reclamaciones y Causas de acción relacionadas a la Tercera Estipulación Modificada y la
Orden de Consentimiento entre Deudores de Título III (que no sean COFINA) y la
Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico que actúa en nombre de
las Entidades Gubernamentales Enumeradas en el Anexo «B» con respecto a la
Interrupción del plazo de prescripción [Caso núm. 17-3283-LTS, expediente electrónico de
caso núm. 15795], y sus modificaciones, y (e) Reclamaciones que de otro modo surgen o
se relacionan con los Casos de Título III, el Plan, el Acuerdo de Apoyo al Plan de la
AEP/OG, el Acuerdo de Apoyo al Plan de la ACT/ADCC, el Acuerdo de Apoyo al Plan
del Comité de Pensionados, el Acuerdo de Apoyo al Plan de AFSCME y las conciliaciones
establecidas en el presente, lo que incluye, de manera no taxativa, con relación o en
conexión a cualquiera de las Partes del Gobierno y sus subsidiarias, activos, obligaciones,
operaciones o bienes respectivos; _disponiéndose, sin embargo_, que, «Reclamaciones
Eximidas» no pretenda incluir, ni tendrá el efecto de incluir, Reclamaciones o Causas de
acción no relacionadas con los Deudores ni Reclamaciones o Causas de acción por
negligencia grave, mala conducta intencional o fraude intencional declarado, o que podría
haberse declarado, si está expresado contractual o extracontractualmente y, _disponiéndose,_
_además_, que, «Reclamaciones Eximidas» no pretenda eximir, ni tendrá el efecto de eximir,
a cualquier parte de cumplir con sus obligaciones a tenor con la Orden de Confirmación o
el Plan, lo que incluye, de manera no taxativa, el cumplimiento de obligaciones derivadas o
relacionadas con Nuevos Bonos de OG, los Nuevos Bonos de Refinanciamiento, las CIV o
bajo cualquier póliza de seguro o documentos relacionados emitidos por una Monolínea.

1.371    **Partes Eximidas:** en su conjunto, únicamente en la medida prevista en el
Plan, (a) las Partes del Gobierno, (b) los Acreedores del Acuerdo de Apoyo al Plan de la
AEP/OG, (c) el Comité de Pensionados, (d) AFSCME y (e) con respecto a las cláusulas
anteriores (a) a (d), cada una de sus respectivas Personas Relacionadas.

1.372    **Partes que Eximen:** en su conjunto, únicamente en la medida prevista en el
Plan, (a) todos los tenedores de Reclamaciones contra los Deudores o sus Activos; (b) las
Afiliadas actuales y anteriores de tales tenedores y (c) con respecto a las cláusulas
anteriores (a) y (b), cada una de las Personas Relacionadas actuales y anteriores a cada una
de tales Entidades.

1.373    **ELA Reorganizado:** el ELA, a partir de la Vigencia.

1.374    **Deudores Reorganizados:** Los Deudores, a partir de la Vigencia.

1.375    **Estatutos de los Deudores Reorganizados:** los estatutos de los Deudores, en la medida que proceda, desde y después de la Vigencia.

1.376    **Acreedores con Tasa de Restricción:** en su conjunto, los Acreedores con Tasa de Restricción de la ADCC y los Acreedores con Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG.

1.377    **Reclamación de Bonos del ELA 2011 de Inversión:** una Reclamación de Bonos del ELA 2011 de un Inversor por Cuenta Propia, siempre que el monto acumulado de los Bonos de OG de tal tenedor sea igual o menor que un millón de dólares ($ 1,000,000.00).

1.378    **Reclamación de Bonos Serie D/E/PIB del ELA 2011 de Inversión:** una Reclamación de Bonos Serie D/E/PIB del ELA 2011 de un Inversor por Cuenta Propia, siempre que el monto acumulado de los Bonos de OG de tal tenedor sea igual o menor que un millón de dólares ($ 1,000,000.00).

1.379    **Reclamación de Bonos de la AEP 2011 de Inversión:** una Reclamación de Bonos de la AEP 2011 de un Inversor por Cuenta Propia, siempre que el monto acumulado de los Bonos de la AEP de tal tenedor sea igual o menor que un millón de dólares ($ 1,000,000.00).

1.380    **Reclamación de Bonos del ELA 2012 de Inversión:** una Reclamación de Bonos del ELA 2012 de un Inversor por Cuenta Propia, siempre que el monto acumulado de los Bonos de OG de tal tenedor sea igual o menor que un millón de dólares ($ 1,000,000.00).

1.381    **Reclamación de Bonos de la AEP 2012 de Inversión:** una Reclamación de Bonos de la AEP 2012 de un Inversor por Cuenta Propia, siempre que el monto acumulado de los Bonos de la AEP de tal tenedor sea igual o menor que un millón de dólares ($ 1,000,000.00).

1.382    **Reclamación de Bonos del ELA 2014 de Inversión:** una Reclamación de Bonos del ELA 2014 de un Inversor por Cuenta Propia, siempre que el monto acumulado de los Bonos de OG de tal tenedor sea igual o menor que un millón de dólares ($ 1,000,000.00).

1.383    **Reclamaciones de Bonos del ELA de Inversión:** en su conjunto, las Reclamaciones de Bonos del ELA Antiguos de Inversión, las Reclamaciones de Bonos del ELA 2011 de Inversión, las Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 de Inversión, las Reclamaciones de Bonos del ELA 2012 de Inversión y las Reclamaciones de Bonos del ELA 2014 de Inversión.

1.384    **Inversor por Cuenta Propia:** una persona natural que compró Bonos de OG, Bonos de la AEP y/o Reclamaciones de Bonos de Garantía del ELA para su propia cuenta de corretaje, cuenta fiduciaria, cuenta de custodia o una cuenta administrada por separado; disponiéndose, sin embargo, que el «Inversor por Cuenta Propia» no incluya ninguna persona física en su calidad de tenedor de un Bono de OG o un Bono de la AEP, cuyo pago de capital e interés está asegurado por Assured, National o Syncora.

1.385    **Reclamaciones de Bonos de la AEP de Inversión:** en su conjunto, las Reclamaciones de Bonos de la AEP Antiguos de Inversión, las Reclamaciones de Bonos de la AEP 2011 de Inversión y las Reclamaciones de Bonos de la AEP 2012 de Inversión.

1.386    **Tasa de Apoyo de Inversión:** en su conjunto, esa parte de las tasas que se pondrá a disposición de los Inversores por Cuenta Propia, a tenor con los términos y disposiciones del Acuerdo de Apoyo al Plan de la AEP/OG, el Plan y la Orden de Confirmación, cuyas tasas, en conjunto, no excederán los cincuenta millones de dólares ($ 50,000,000.00); disponiéndose, sin embargo, que, sin perjuicio de lo que antecede, a tenor con las disposiciones del Acuerdo de Apoyo al Plan de la AEP/OG, la Sección 3.6 del presente y la Orden de Confirmación, dicho monto acumulado se pueda disminuir a causa de la Devolución de la Tarifa de Apoyo de Inversión, distribuyéndose el monto acumulado de la Devolución de la Tarifa de Apoyo de Inversión a tenor con las disposiciones del Acuerdo de Apoyo al Plan de la AEP/OG, la Sección 3.6 del presente y la Orden de Confirmación.

1.387    **Devolución de Tasa de Apoyo de Inversión:** en su conjunto, esa parte de la Tasa de Apoyo de Inversión no asignada a clases de Inversores por Cuenta Propia, dicha parte será pagadera y reasignada a los Acreedores de la Tasa de Restricción de Acuerdo de Apoyo al Plan y a los miembros de las Clases de Inversores por Cuenta Propia que votaron para aceptar el Plan a tenor con las disposiciones de la Sección 3.6 del presente documento y la Orden de Confirmación.

1.388    **Reclamación de Bonos del ELA Antiguos de Inversión:** una Reclamación de Bonos del ELA de Inversión de un Inversor por Cuenta Propia, siempre que el monto acumulado de los Bonos de OG de tal tenedor sea igual o menor que un millón de dólares ($ 1,000,000.00).

1.389     **Reclamación de Bonos de la AEP Antiguos de Inversión:** una
Reclamación de Bonos de la AEP de Inversión de un Inversor por Cuenta Propia, siempre
que el monto acumulado de los Bonos de la AEP de tal tenedor sea igual o menor que un
millón de dólares ($ 1,000,000.00).

1.390     **Pensionado:** una persona que, según se refleja en los registros del SRE, el
SRJ o el SRM, según corresponda, al 1 de abril de 2021, recibe una pensión o anualidad
como Participante del SRE, el SRJ o el SRM; disponiéndose, sin embargo, que en ningún
caso un «Pensionado» incluya a un ex-empleado del Gobierno de Puerto Rico que dejó el
servicio público y no recibió un reembolso por las aportaciones de esa persona y/o
cualquier beneficio acumulado hasta la fecha de cese.

1.391     **Reclamación de Pensionado:** una Reclamación de Participante del SRE,
una Reclamación de Participante del SRJ o una Reclamación de Participante del SRM de
un Pensionado.

1.392     **Comité de Pensionados:** el comité de ex-empleados retirados del ELA, sus
agencias e instrumentalidad designado por la Oficina de United States Trustee en el Caso
de Título III del ELA.

1.393     **Acuerdo de Apoyo al Plan del Comité de Pensionados:** ese determinado
Acuerdo de Apoyo al Plan, con fecha 7 de junio de 2019, entre el Deudor, representado por
la Junta de Supervisión, a tenor con la Sección 315(b) de PROMESA, y el Comité de
Pensionados, y las modificaciones o complementos que realicen las partes a este.

1.394     **Impuesto sobre las Ventas:** el impuesto sobre ventas y uso, lo que incluye
cualquier reemplazo o impuesto sobre ventas y uso similar, gravado por el Gobierno de
Puerto Rico a tenor con las Secciones 4020.01 y 4020.02 del Subcapítulo D de la Ley núm.
1-2011, según se modifique, y conocido como el Código de Rentas Internas para un Nuevo
Puerto Rico.

1.395     **Reclamación Subordinada a la Sección 510(b):** toda Reclamación, en la
medida determinada a tenor con una Orden Final, contra los Deudores o sus Activos
derivada o relacionada con: (a) la rescisión de una compra o venta de un valor existente de
un Deudor o de una Filial de un Deudor, (b) la compra, venta o retención de dicho valor o
(c) el reembolso, la indemnización o la aportación concedida a tenor con la sección 502 del
Código de Quiebras a causa de dicho crédito.

1.396     **Ley de Valores:** la Ley de Valores de 1933, 15 Código de los Estados
Unidos § 77a-77aa, según se modifique, o cualquier ley federal, estatal o local similar.

1.397     **Agente de Solicitud:** Prime Clerk LLC, el agente para notificaciones,
reclamaciones y solicitudes contratado por los Deudores en los Casos de Título III por
orden del Tribunal del Título III.

1.398 **SPU:** Servidores Públicos Unidos.

1.399 **Impuesto Medido Sustitutivo:** todo o una parte de un impuesto de aplicabilidad general en todo el ELA que, a través de un cambio en la legislación o a través de una acción judicial o ejecutiva, se designa o aprueba sustituyendo por completo el IVU Medido o constituye de otro modo medidas comparables o similares de actividad económica dentro del ELA, en cada caso de acuerdo con los términos de la Legislación de CVI y el Contrato de Emisión de CVI.

1.400 **Bonos de Verano:** El bono, de haberlo, pagadero a los empleados actuales, antiguos, activos, inactivos y discapacitados del ELA y sus agencias e instrumentalidad a tenor con la Ley núm. 37-2001, codificada en 3 L.P.R.A. §757g, según se modifique a tenor con la Ley núm. 3-2013, 3 L.P.R.A. §761.

1.401 **Syncora:** Syncora Guarantee Inc. o su sucesor o delegado.

1.402 **Precio de Aceleración de Syncora:** con respecto a cualquier Bono Asegurado de Syncora, un monto igual al capital pendiente de tales Bonos Asegurados de Syncora más el interés acumulado y no pagado sobre este (o, en el caso de cualquier bono de apreciación de capital, el monto compuesto de este) a la Vigencia.

1.403 **Certificados de Syncora:** con respecto a cada Fideicomiso de Syncora que se forma a beneficio de los tenedores beneficiarios de un CUSIP de Bonos Asegurados de Syncora, el o los certificados o recibos a emitir por tal Fideicomiso de Syncora a tenedores beneficiarios de tal CUSIP de Bonos Asegurados de Syncora que se depositan en el Syncora Trust.

1.404 **Contraprestación por Conmutación de Syncora:** una combinación de algunos o todos de los siguientes, a seleccionar a entera discreción de Syncora antes del comienzo de la Vista de Declaración de Divulgación: (i) parte o toda la Acción a Prorrata de un tenedor de la Contraprestación del Plan de Syncora; (ii) un porcentaje, a determinar a entera discreción de Syncora, de los Costos de Perfeccionamiento y/o las Tasas de Restricción de la AEP asignables a Syncora; y (iii) Efectivo en un monto a determinar por Syncora a su entera discreción.

1.405 **Tratamiento por Conmutación de Syncora:** el tratamiento establecido en la Sección 72.3(a) del presente.

1.406 **Cuenta de Plica de Syncora:** una única cuenta de plica que se formará, en o antes de la Vigencia, por parte del ELA o la AEP, con costo exclusivamente a cargo de Syncora y a beneficio de los tenedores beneficiarios de Bonos Asegurados de Syncora cuya Contraprestación del Plan se depositó allí.

1.407     **Reclamaciones de Bonos Asegurados de Syncora:** en su conjunto, las Reclamaciones de Bonos que surgen de los los Bonos Asegurados de Syncora, lo que incluye, para evitar dudas, cualquier Reclamaciones de Bonos de Garantía del ELA Antiguos (Syncora).

1.408     **Bonos Asegurados de Syncora:** en su conjunto, los Bonos de OG y los Bonos de la AEP asegurados por Syncora, lo que incluye, de manera no taxativa, a tenor con una póliza de seguros de mercado secundario.

1.409     **Pólizas de Seguro de Syncora:** las póliza de seguros existentes emitidas por Syncora con respecto a los Bonos Asegurados de Syncora, junto con todo acuerdo y otro documento relacionado con estas.

1.410     **Tratamiento por No Conmutación de Syncora**: El tratamiento establecido en la Sección 71.3(b) del presente.

1.411     **Contraprestación del Plan Syncora:** la contraprestación asignable o distribuible a los tenedores de Reclamaciones de Bonos de la AEP Antiguos Permitidas (Syncora), Reclamaciones de Bonos del ELA Antiguos Permitidas (Syncora) y Reclamaciones de Bonos de Garantía del ELA Antiguos Permitidas (Syncora), según sea el caso.

1.412     **Tratamiento de Syncora:** con respecto a cada Clase de Reclamaciones de Bonos Asegurados de Syncora, el tratamiento establecido en el Artículo LXXI del presente.

1.413     **Fideicomiso de Syncora:** con respecto a cada CUSIP de Bonos Asegurados de Syncora, un régimen de custodia o fideicomiso separado que se formará, en o antes de la Vigencia, por el ELA o la AEP, con costo exclusivamente a cargo de Syncora y a beneficio de los tenedores beneficiarios de tal CUSIP de Bonos Asegurados de Syncora.

1.414     **Sistema 2000:** el sistema de aportaciones a las pensiones implementado a tenor con la Ley núm. 305-1999, codificada en 3 L.P.R.A. §§786-1 y siguientes, o la Ley 3- 2013.

1.415     **Reclamación de Participantes del Sistema 2000:** una Reclamación que devengó valores en virtud del Sistema 2000 o la Ley 3, por un Participante cuya fecha de contratación era el 1 de enero de 2000 o posterior.

1.416     **Distribuciones de Bonos Imponibles:** en su conjunto, la Distribución de Bonos Imponibles Antiguos, la Distribución de Bonos Imponibles del ELA 2011, la Distribución de Bonos Imponibles Serie D/E/PIB del ELA 2011, la Distribución de Bonos Imponibles del ELA 2012, la Distribución de Bonos Imponibles del ELA 2014, la Distribución de Bonos de Garantía del ELA Imponibles Antiguos, la Distribución de Bonos del ELA 2011 Imponibles, la Distribución de Bonos de Garantía del ELA 2012 Imponibles y la Distribución de Bonos de Garantía del ELA 2014 Imponibles.

1.417     **Reclamaciones del ELA de Elección Imponible:** en su conjunto, las Reclamaciones de Bonos del ELA Antiguos (Elección Imponible), las Reclamaciones de Bonos de Garantía del ELA Antiguos (Elección Imponible), las Reclamaciones de Bonos del ELA 2011 (Elección Imponible), las Reclamaciones de Bonos de Garantía del ELA 2011 (Elección Imponible), las Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 (Elección Imponible), las Reclamaciones de Bonos del ELA 2012 (Elección Imponible), las Reclamaciones de Bonos de Garantía del ELA 2012 (Elección Imponible), las Reclamaciones de Bonos del ELA 2014 (Elección Imponible) y las Reclamaciones de Bonos de Garantía del ELA 2014 (Elección Imponible).

1.418     **Nuevos Bonos de OG Imponibles:** en su conjunto, la parte de los Nuevos Bonos de OG en el monto acumulado considerado necesario por la Junta de Supervisión, previa consulta con el asesor fiscal de la Sección 103, a emitir con exención fiscal a tenor con la legislación de Puerto Rico, pero imponible a tenor con la Sección 103 del CTI, dichos Nuevos Bonos de OG se emitirán como bonos de interés actual con una tasa de interés de cinco por ciento (5.0 %), pagadera semestralmente a plazo vencido y con fecha de vencimiento al 1 de julio de 2041, y se pondrán a disposición de los inversores de Puerto Rico con respecto al primer millón de dólares ($ 1,000,000.00) de reservas acumuladas de (a) Reclamaciones de Bonos de la AEP, (b) Reclamaciones de Bonos del ELA y (c) Reclamaciones de Bonos de Garantía del ELA (sin duplicados).

1.419     **Reclamaciones de Crédito Fiscal:** en su conjunto, Reclamaciones, que no sean Reclamaciones de Incentivos de Energía o Reclamaciones relacionadas con el pago de impuestos a la renta personales, que surgen del Código de Rentas Internas de Puerto Rico de 2011, y sus modificaciones, o una ley de incentivo económico, según el caso, lo que resulta en créditos de impuestos a la renta por actividades económicas, deducciones o traslados al año fiscal siguiente.

1.420    **Deuda con Garantía Impositiva:** en su conjunto, sin duplicados, (a) la Deuda directa del ELA para cuyo pago se ha pignorado la plena fe, crédito y poder impositivo del ELA (lo que incluye los Nuevos Bonos de OG y CVI), (b) la Deuda emitida por cualquier Entidad y garantizada por la plena fe y crédito y poder impositivo del ELA, (c) la Deuda emitida por cualquier Entidad (lo que incluye los Bonos COFINA), garantizada o no por el ELA, y que está garantizada o es pagadera por parte de (i) los Ingresos de Política de Deuda o (ii) los contratos de arrendamientos con el ELA o cualquier agencia de este, sujeto o no a asignaciones legislativas anuales o periódicas y (d) cualquier otra Deuda identificada como Deuda con Garantía Impositiva en la Política de Gestión de la Deuda; disponiéndose, sin embargo, que lo que prosigue no se considere Deuda con Garantía Impositiva: (1) pagarés de ingresos e impuestos anticipados con una fecha de vencimiento final dentro del mismo año fiscal de su emisión y (2) Deuda emitida para responder directamente a daños y perjuicios o destrucción y riesgos asociados a la salud, seguridad y bienestar de la población de Puerto Rico ocasionada por huracanes, terremotos u otros desastres naturales, pandemias, terrorismo y emergencias similares; y, disponiéndose, además, que, sin limitar lo que precede, la «Deuda con Garantía Impositiva» excluye (y) bonos de ingresos de una Entidad pagaderos únicamente a partir de cargos al usuario o cargos de titulización y transición impuestos a clientes o ex-clientes de un sistema de transporte o servicios, lo que incluye, de manera no taxativa, la Deuda autosuficiente de la AAA, la AEE, la ACT o cualquier entidad de titulización relacionada, (z) cualquier otra Deuda no pagadera a partir de Ingresos de la Política de Deuda, a tenor con la Política de Gestión de la Deuda, en cada caso, en la medida en la cual tal deuda no esté garantizada por la plena fe y crédito y poder impositivo del ELA y, disponiéndose, además, que en la medida en que ninguna disposición o aclaración aumente el Tope Global, lo que incluye el sublímite de deuda garantizada y/o titularizada sobre los niveles establecidos en la Sección 70.4 del presente, la Política de Gestión de la Deuda puede incluir disposiciones o aclaraciones adicionales con respecto a qué Deuda se considera Deuda con Garantía Impositiva, coherente con los principios y objetivos establecidos allí.

1.421    **Título III:** Título III de PROMESA.

1.422    **Casos de Título III:** en conjunto, el Caso de Título III del ELA, el Caso de Título III del SRE y el Caso de Título III de la AEP.

1.423    **Tribunal del Título III:** el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico o cualquier otro tribunal que tenga jurisdicción sobre los Casos de Título III.

1.424    **Total de Beneficios Mensuales:** el importe de los beneficios de pensión mensuales igual a la suma de (a) la Pensión Base Mensual, (b) el Bono de Navidad Mensual, de haberla, (c) la Bonificación de Verano Mensual, de haberla y (d) la Bonificación para Medicina Mensual.

1.425    **SRM:** Sistema de Retiro para Maestros.

1.426    **Reclamación de Participantes del SRM:** una Reclamación a causa de ser o haber sido un Participante del SRM para (a) beneficios de pensionado devengados al 3 de mayo de 2017 y (b) cualquier otro beneficio de pensionado adicional en el SRM que tal Participante tendría derecho a recibir cuando el Participante se retire.

1.427    **Documentación del Fideicomiso:** en su conjunto, la documentación requerida, si es necesaria, para establecer y mantener el fideicomiso en el que se depositará el CVI de Recuperación de la ACT pendiente y que proporcionará la distribución de este a los tenedores de Reclamaciones de la ACT/ELA Permitidas (incluidas las Monolíneas) conforme a los términos del Acuerdo de Apoyo al Plan de la ACT/ADCC, donde la documentación será acordada por la Junta de Supervisión, Assured y National.

1.428    **Distribución no Reclamada:** toda distribución a un Acreedor que (a) no haya aceptado una distribución determinada o, en el caso de las distribuciones efectuadas mediante control, no haya negociado dicho control, (b) no haya notificado a los Deudores de la intención de aceptar una distribución determinada, (c) no haya respondido a las solicitudes de información de los Deudores necesarias para facilitar una distribución determinada o (d) haya adoptado cualquier otra medida necesaria para facilitar tal distribución.

1.429    **Arrendamiento en curso:** un arrendamiento de bienes inmuebles no residenciales en los que uno o más de los Deudores sea parte sujeta a asunción, asunción y transferencia o rechazo a tenor con la sección 365 del Código de Quiebras, salvo según se establezca en la Sección 311 de PROMESA.

1.430    **Litigio de Uniformidad:** en su conjunto, (a) el litigio designado Ambac Assurance Corporation c. la Junta de Supervisión y Administración Financiera para Puerto Rico, *et al.*, procedimiento contencioso núm. 20-000065-LTS, actualmente pendiente en el Tribunal del Título III y (b) todo otro litigio que esté actualmente pendiente o pueda iniciarse durante el período desde y posterior a la fecha del presente hasta la Vigencia inclusive, en donde las reclamaciones o Causas de acción consistentes con o similares a aquellas presentadas o que podrían presentarse en el litigio mencionado anteriormente se han presentado.

1.431    **UPR:** Universidad de Puerto Rico.

1.432    **Reclamación de Bonos del ELA Antiguos:** una Reclamación contra el ELA a causa de los Bonos del ELA Antiguos que no sea una Reclamación de Bonos del ELA Antiguos (Assured), una Reclamación de Bonos del ELA Antiguos (National), una Reclamación de Bonos del ELA Antiguos (Syncora), Reclamación de Bonos del ELA Antiguos (Otros asegurados) o una Reclamación de Bonos del ELA Antiguos de Inversión.

1.433     **Reclamación de Bonos del ELA Antiguos (Assured):** una reclamación contra el ELA a causa de los Bonos del ELA Antiguos cuyo pago de capital e intereses ha sido asegurado por Assured, lo que incluye a tenor con una póliza de seguros de mercado secundario.

1.434     **Reclamación de Bonos del ELA Antiguos (National):** una reclamación contra el ELA a causa de Bonos del ELA Antiguos cuyo pago de capital e intereses ha sido asegurado por National.

1.435     **Reclamación de Bonos de ELA Antiguos (Otros Asegurados):** una reclamación contra el ELA a causa de los Bonos del ELA Antiguos cuyo pago de capital e intereses ha sido asegurado mediante una Monolínea que no sea Assured, National o Syncora.

1.436     **Reclamación de Bonos del ELA Antiguos (Syncora):** una reclamación contra el ELA a causa de los Bonos del ELA Antiguos cuyo pago de capital e intereses ha sido asegurado Syncora.

1.437     **Reclamación de Bonos del ELA Antiguos (Elección Imponible):** una Reclamación de Bonos del ELA Antiguos o una Reclamación de Bonos del ELA Antiguos de Inversión, cuyo tenedor es un Inversor de Puerto Rico que ha optado de manera afirmativa por recibir una Distribución de Bonos Imponibles, _disponiéndose, sin embargo,_ que en caso de que las Distribuciones de Bonos Imponibles sean optadas por Inversores de Puerto Rico que mantienen Reclamaciones de Bonos del ELA y Reclamaciones de Bonos de Garantía de ELA que excedan el Monto de Elección de Bono Imponible Máximo, tal Reclamación de Bonos del ELA Antiguos será una Reclamación de Bonos del ELA Antiguos (Elección Imponible) hasta tal cuota imponible al Monto de Elección de Bono Imponible Máximo de tal Reclamación de Bonos del ELA Antiguos y el resto de esta será una Reclamación de Bonos del ELA Antiguos.

1.438 **Recuperación de Bonos del ELA Antiguos:** la recuperación acumulada por parte de los tenedores de Reclamaciones de Bonos del ELA Antiguos Permitidas, Reclamaciones de Bonos del ELA Antiguos Permitidas (Assured), Reclamaciones de Bonos de del ELA Antiguos Permitidas (National), Reclamaciones de Bonos de del ELA Antiguos Permitidas (Otros Asegurados), Reclamaciones de Bonos de del ELA Antiguos Permitidas (Syncora) y Reclamaciones de Bonos de del ELA Antiguos de Inversión Permitidas, que consiste en (a) mil novecientos cuarenta millones cuatrocientos trece mil quinientos setenta y dos dólares con sesenta y ocho centavos ($ 1,940,413,572.68) en Efectivo, (b) dos mil trescientos treinta y seis millones doscientos veintiséis mil ochocientos treinta dólares ($ 2,336,226,830.00) en capital original de Nuevos CIB de OG, (c) ciento cincuenta y cuatro millones seiscientos ochenta y tres mil setenta dólares con veinticinco centavos ($ 154,683,070.25) en capital original de Nuevos CAB al 5.375 % de OG, (d) cien millones setecientos cincuenta y ocho mil ciento dos dólares con noventa y cinco centavos ($ 100,758,182.95) en capital original de Nuevos CAB al 5.0 % de OG y (e) treinta y dos con doscientas cuarenta y una milésimas por ciento (32.244 %) de los CVI de OG.

1.439     **Bonos del ELA Antiguos:** en su conjunto, los siguientes bonos emitidos por el ELA: (a) los Bonos para Mejoras Públicas de 1998, emitidos por el capital original de quinientos millones de dólares ($ 500,000,000.00), (b) los Bonos para Mejoras Públicas de 1999 emitidos por el capital original de cuatrocientos setenta y cinco millones de dólares ($ 475,000,000.00), (c) los Bonos para Mejoras Públicas de 2001, Serie A, emitidos por el capital original de doscientos setenta y cuatro millones ciento treinta y cinco mil dólares ($ 274,135,000.00), (d) los Bonos para Mejoras Públicas de 2002, Serie A, emitidos por el capital original de cuatrocientos cincuenta y cinco millones de dólares ($ 455,000,000.00), (e) los Bonos para Mejoras Públicas de 2003, Serie A, emitidos por el capital original de cuatrocientos sesenta millones de dólares ($ 460,000,000.00), (f) los Bonos para Mejoras Públicas de 2004, Serie A, emitidos por el capital original de cuatrocientos cincuenta y siete millones ciento setenta y cinco mil dólares ($ 457,175,000.00), (g) los Bonos para Mejoras Públicas de 2005, Serie A, emitidos por el capital original de cuatrocientos cuarenta millones cuatrocientos sesenta mil dólares ($ 440,460,000.00), (h), los Bonos para Mejoras Públicas de 2006, Serie A, emitidos por el capital original de quinientos millones de dólares ($ 500,000,000.00), (i) los Bonos para Mejoras Públicas de 2006, Serie B, emitidos por el capital original de treinta y nueve millones trescientos ochenta mil dólares ($ 39,380,000.00), (j) los Bonos para Mejoras Públicas de 2007, Serie A, emitidos por el capital original de cuatrocientos ocho millones ochocientos mil dólares ($ 408,800,000.00), (k) los Bonos para Mejoras Públicas de 2008, Serie A, emitidos por el capital original de doscientos cincuenta millones de dólares ($ 250,000,000.00), (l) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2011A, emitidos por el capital original de trescientos cincuenta y seis millones quinientos veinte mil dólares ($ 356,520,000.00); (m) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 1998, emitidos por el capital original de quinientos tres millones novecientos sesenta y tres mil doscientos sesenta y cuatro dólares ($ 503,963,264.00); (n) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2000, emitidos por el capital original de cincuenta y cinco millones novecientos diez mil novecientos noventa y tres dólares ($ 55,910,993.00); (o) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2001, emitidos por el capital original de trescientos treinta y siete millones doscientos treinta y cinco mil dólares ($ 337,235,000.00); (p) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2002A, emitidos por el capital original de ochocientos treinta y siete millones novecientos sesenta mil dólares ($ 837,960,000.00); (q) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2003A, emitidos por el capital original de ochenta y nueve millones seiscientos diez mil dólares ($ 89,610,000.00); (r) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2003C-7, emitidos por el capital original de ciento noventa y cuatro millones seiscientos diez mil dólares ($ 194,610,000.00); (s) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2006A, emitidos por el capital original de ciento un millones seiscientos noventa y cinco mil dólares ($ 101,695,000.00); (t) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2006B, emitidos por el capital original de trescientos treinta y cinco millones seiscientos cincuenta mil dólares ($ 335,650,000.00); (u) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2007A, emitidos por el capital original de novecientos veintiséis millones quinientos setenta mil dólares ($ 926,570,000.00); (v) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2007A-4, emitidos por el capital original de noventa y tres millones ochocientos treinta y cinco mil dólares ($ 93,835,000.00); (w) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2008A, emitidos por el capital original de setecientos treinta y cinco millones quince mil

dólares ($ 735,015,000.00); (x) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2008C, emitidos por el capital original de ciento noventa millones ciento treinta y cinco mil dólares ($ 190,135,000.00); (y) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2009A, emitidos por el capital original de tres millones cuatrocientos veinticinco mil dólares ($ 3,425,000.00); (z) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2009B, emitidos por el capital original de trescientos setenta y dos millones seiscientos ochenta y cinco mil dólares ($ 372,685,000.00); (aa) los Bonos de Refinanciamiento de Mejoras Públicas, Serie 2009C, emitidos por el capital original de doscientos diez millones doscientos cincuenta mil dólares ($ 210,250,000.00)  y (bb) Notas de Ahorro emitidas antes de 2011 en capital pendiente de doscientos cuarenta y dos mil seiscientos cincuenta dólares ($242,650.00).

1.440    **Reclamación de Bonos de Garantía del ELA Antiguos:** una Reclamación que no sea una Reclamación de Bonos de Garantía del ELA Antiguos Permitidas (Assured), una Reclamación de Bonos de Garantía del ELA Antiguos Permitidas (National), una Reclamación de Bonos de Garantía del ELA Antiguos Permitidas (Otros Asegurados) y una Reclamación de Bonos de Garantía del ELA Antiguos Permitidas (Syncora), a causa de la garantía de Bonos de la AEP Antiguos por parte del ELA; disponiéndose, sin embargo, que, únicamente a efectos de distribución a tenor con el Plan, el importe de la Reclamación de Bonos de Garantía del ELA Antiguo de un tenedor con respecto a la garantía de Bonos de la AEP Antiguos por parte del ELA se calcule como el monto de la Reclamación de Bonos de la AEP Antiguos de tal tenedor menos el monto de la Distribución de los Bonos de la AEP Antiguos de tal tenedor a causa de Bonos de la AEP Antiguos; y, disponiéndose, además, que las Reclamaciones de Garantía del ELA Antiguas puedan incluir una obligación, que no sea una Reclamación Bonos de la AEP Antiguos, respecto a la cual el ELA ha pignorado su fe, crédito y poder impositivo autorizado por la Legislatura del ELA al 31 de diciembre de 2012 o antes de tal fecha.

1.441    **Reclamación de Bonos de Garantía del ELA Antiguos (Assured):** una reclamación contra el ELA a causa de la garantía del ELA sobre Reclamaciones de Bonos de la AEP Antiguos cuyo pago de capital e intereses ha sido asegurado por Assured, lo que incluye a tenor con una póliza de seguros de mercado secundario.

1.442    **Reclamación de Bonos de Garantía del ELA Antiguos (National)**: una reclamación contra el ELA a causa de la garantía de las Reclamaciones de los Bonos del AEP Antiguos por parte del ELA, cuyo pago de capital e intereses ha sido asegurado mediante National.

1.443    **Reclamación de Bonos de Garantía del ELA Antiguos (Otros Asegurados):** una reclamación contra el ELA a causa de la garantía de las Reclamaciones de los Bonos del ELA Antiguos por parte del ELA, cuyo pago de capital e intereses ha sido asegurado mediante una Monolínea, que no sea Assured, National o Syncora.

1.444 **Reclamación de Bonos de Garantía del ELA Antiguos (Syncora):** una reclamación contra el ELA a causa de la garantía del ELA sobre Reclamaciones de Bonos de la AEP Antiguos cuyo pago de capital e intereses ha sido asegurado por Syncora, lo que incluye a tenor con una póliza de seguros de mercado secundario.

1.445 **Reclamación de Bonos de Garantía del ELA Antiguos (Elección Imponible):** una Reclamación de Bonos de Garantía del ELA Antiguos, cuyo tenedor es un Inversor de Puerto Rico que ha optado de manera afirmativa por recibir una Distribución de Bonos Imponibles, _disponiéndose, sin embargo,_ que en caso de que las Distribuciones de Bonos Imponibles sean optadas por Inversores de Puerto Rico que mantienen Reclamaciones de Bonos del ELA y Reclamaciones de Bonos de Garantía del ELA que excedan el Monto de Elección de Bono Imponible Máximo, tal Reclamación de Bonos de Garantía del ELA Antiguos será una Reclamación de Bonos de Garantía del ELA Antiguos (Elección Imponible) hasta la cuota imponible del Monto de Elección de Bono Imponible Máximo de tal Reclamación de Bonos de Garantía del ELA Antiguos y el resto de esta será una Reclamación de Bonos del ELA Antiguos.

1.446 **Recuperación de Bonos de Garantía del ELA Antiguos:** la recuperación total de los tenedores de Reclamaciones de Bonos de Garantía del ELA Antiguos Permitidas, Reclamaciones de Bonos de Garantía del ELA Antiguos Permitidas (Assured), Reclamaciones de Bonos de Garantía del ELA Antiguos Permitidas (National), Reclamaciones de Bonos de Garantía del ELA Antiguos Permitidas (Otros Asegurados) y Reclamaciones de Bonos de Garantía del ELA Antiguos Permitidas (Syncora), que consiste en (a) seiscientos cincuenta y tres millones setecientos ochenta y dos mil dólares con ochenta y un centavos ($653,782,173.81) en Efectivo, (b) setecientos ochenta y siete millones ciento cuarenta y tres mil doscientos cincuenta y seis dólares ($787,143,256.00) en capital original de Nuevos bonos de interés actual de OG, (c) cincuenta y dos millones ciento diecisiete mil doscientos cincuenta y siete dólares y cincuenta centavos ($52,117,257.50) en capital original de Nuevos CAB de 5.375 % de OG, (d) treinta y tres millones novecientos cuarenta y ocho mil trescientos ochenta y tres dólares con diecisiete centavos ($33,948,383.17) en capital original de Nuevos CAB de 5.0 % de OG y (e) quince con ciento noventa y cuatro milésimas por ciento (15.194 %) de los CVI de OG.

1.447 **Distribución de Bonos Imponibles de Garantía del ELA Antiguos:** la distribución a realizar a tal tenedor de una Reclamación de Bonos de Garantía del ELA Antiguos (Elección Imponible) Permitida según los términos y disposiciones de la Sección 30.1 del presente.

1.448 **Reclamación de Bonos de la AEP Antiguos:** una Reclamación contra la AEP a causa de los Bonos del ELA Antiguos que no sea una Reclamación de Bonos de la AEP Antiguos (Assured), Reclamación de Bonos de la AEP Antiguos (National), una Reclamación de Bonos de la AEP Antiguos (Otros Asegurados), Reclamación de Bonos de la AEP Antiguos (Syncora) o una Reclamación de Bonos de la AEP Antiguos de Inversión.

1.449     **Reclamación de Bonos de la AEP Antiguos (Assured):** una reclamación contra la AEP a causa de Bonos de la AEP Antiguos cuyo pago de capital e intereses ha sido asegurado por Assured, lo que incluye a tenor con una póliza de seguros de mercado secundaria.

1.450     **Reclamación de Bonos de la AEP Antiguos (National):** una reclamación contra la AEP a causa de Bonos de la AEP Antiguos cuyo pago de capital e intereses ha sido asegurado mediante National.

1.451     **Reclamación de Bonos de la AEP Antiguos (Otros Asegurados):** una reclamación contra la AEP a causa de Bonos de la AEP Antiguos cuyo pago de capital e intereses ha sido asegurado mediante una Monolínea que no sea Assured, National o Syncora.

1.452     **Reclamación de Bonos de la AEP Antiguos (Syncora):** una reclamación contra la AEP a causa de Bonos de la AEP Antiguos cuyo pago de capital e intereses ha sido asegurado por Syncora, lo que incluye a tenor con una póliza de seguros de mercado secundario.

1.453     **Recuperación de Bonos de la AEP Antiguos**: la recuperación acumulada por parte de los tenedores de Reclamaciones de Bonos de la AEP Antiguos Permitidas, Reclamaciones de Bonos de la AEP Antiguos Permitidas (Assured), Reclamaciones de Bonos de Garantía de la AEP Antiguos Permitidas (National), Reclamaciones de Bonos de Garantía de la AEP Antiguos Permitidas (Otros Asegurados) y Reclamaciones de Bonos de Garantía de la AEP Antiguos Permitidas (Syncora) y Reclamaciones de Bonos de la AEP Antiguos de Inversión Permitidas a causa de tales Reclamaciones, que consisten en seiscientos once millones trescientos treinta y un mil ciento ochenta y seis dólares con cinco centavos ($ 611,331,186.05) en Efectivo.

1.454     **Bonos de la AEP Antiguos**: en su conjunto, (a) los Bonos de Refinanciamiento de Ingresos de Instalaciones del Gobierno, Serie C, emitidos por la AEP por el capital original de ciento ochenta y cinco millones doscientos noventa mil dólares ($ 185,290,000.00), (b) los Bonos de Ingresos de Instalaciones del Gobierno, Serie D, emitidos por la AEP por el capital original de quinientos cincuenta y tres millones setecientos treinta y tres mil setecientos noventa y cuatro dólares con noventa centavos ($ 553,733,794.90), (c) los Bonos de Refinanciamiento de Ingresos de Instalaciones del Gobierno, Serie F, emitidos por la AEP por el capital original de ciento treinta y un millones cuatrocientos cuarenta y cinco mil dólares ($ 131,445,000.00), (d) los Bonos de Ingresos de Instalaciones del Gobierno, Serie G, emitidos por la AEP por el capital original de sesenta y dos millones de dólares ($ 62,000,000.00), (e) los Bonos de Refinanciamiento de Ingresos de Instalaciones del Gobierno, Serie H, emitidos por la AEP por el capital original de doscientos setenta y dos millones setecientos diecisiete mil cuatrocientos dieciocho dólares con diez centavos ($ 272,717,418.10), (f) los Bonos de Ingresos de Instalaciones del Gobierno, Serie I, emitidos por la AEP por el capital original de ochocientos treinta y dos millones trescientos ochenta y cinco mil dólares ($ 832,385,000.00), (g) los Bonos de Refinanciamiento de Ingresos de Instalaciones del Gobierno, Serie J emitidos por la AEP por el capital original de trescientos treinta y cinco millones quinientos ochenta mil dólares ($ 335,580,000.00) (h) los Bonos de Refinanciamiento de Ingresos de Instalaciones del Gobierno, Serie K, emitidos por la AEP por el capital original de trescientos cuarenta y siete millones sesenta y cinco mil dólares ($ 347,065,000.00), (i) los Bonos de Ingresos de Instalaciones del Gobierno, Serie L, emitidos por la AEP por el capital original de seis millones setecientos noventa y cinco mil dólares ($ 6,795,000.00), (j) los Bonos de Refinanciamiento de Ingresos de Instalaciones del Gobierno, Serie M-1, emitidos por la AEP por el capital original de $ 283,550,000.00, (k) los Bonos de Refinanciamiento de Ingresos de Instalaciones del Gobierno, Serie M-2, emitidos por la AEP por el capital original de ciento veintinueve millones trescientos mil dólares ($ 129,300,000.00), (l) los Bonos de Refinanciamiento de Ingresos de Instalaciones del Gobierno, Serie M-3, emitidos por la AEP por el capital original de ciento cincuenta millones de dólares ($ 150,000,000.00), (m) los Bonos de Ingresos de Instalaciones del Gobierno, Serie N, emitidos por la AEP por el capital original de trescientos veintinueve millones cuatrocientos quince mil dólares ($ 329,415,000.00), (n) los Bonos de Ingresos de Instalaciones del Gobierno, Serie O, emitidos por la AEP por el capital original de tres millones veinticinco mil dólares ($ 3,025,000.00), (o) los Bonos de Refinanciamiento de Ingresos de Instalaciones del Gobierno, Serie P, emitidos por la AEP por el capital original de trecientos treinta millones novecientos treinta y cinco mil dólares ($ 330,935,000.00) y (p) los Bonos de Refinanciamiento de Ingresos de Instalaciones del Gobierno, Serie Q, emitidos por la AEP por el capital original de ciento cincuenta y dos millones quinientos cuarenta mil dólares ($ 152,540,000.00), cuyo reembolso está garantizado por el ELA.

1.455     **Distribución de Bonos Imponibles Antiguos**: la distribución a realizar a cada tenedor de una Reclamación de Bonos del ELA Antiguos (Elección Imponible) Permitida a tenor con los términos y disposiciones de la Sección 18.1 del presente.

1.456    **Otras definiciones:** a menos que el contexto exija otra cosa, todo término en mayúsculas utilizado y no definido en este o en otro lugar del Plan que se define en PROMESA o en el Código de Quiebras tendrá, si se define en PROMESA, el significado asignado a dicho término en PROMESA o, si no se define en PROMESA, pero se define en el Código de Quiebras, tendrá el significado atribuido al mismo en el Código de Quiebras. A menos que se especifique de otro modo, (a) toda referencia a secciones, programas o anexos que figuran en el Plan se refieren a la sección, artículo, programa o anexo correspondiente del Plan, según se modifique, renuncie o cambie ocasionalmente y (b) todas referencia a dólares se refiere a la moneda de curso legal de los Estados Unidos de América. Las palabras «en el presente», «del presente», «según el presente» y otras expresiones de relevancia similar se refieren al Plan en su conjunto y no a una sección, inciso o cláusula particular contenida en el Plan. Al calcular cualquier plazo prescrito o permitido por el Plan, a menos que se disponga expresamente otra cosa, se aplicarán las disposiciones de la Norma de Quiebras 9006(a).

1.457    **Normas de Interpretación:** a los fines del Plan, (a) a menos que se especifique de otro modo, cualquier referencia en el presente a un contrato, contrato de arrendamiento, instrumento, renuncia, contrato de emisión u otro acuerdo o documento que tenga una forma específica o términos y condiciones específicas significa que tal documento tendrá sustancialmente tal forma o tales términos y condiciones, (b) a menos que se especifique de otro modo, cualquier referencia en el presente a una definición, un documento, programa o anexo existente, significará tal documento, programa o anexo en su estado, según se modifique, cambie o complemente, lo que incluye, de manera no taxativa, actualizaciones para ajustarse a los Documentos Definitivos, (c) a menos que se especifique de otro modo, toda referencia en el presente a distribuciones realizadas en un «monto» se calcularán usando el capital de cualquier bono emitido en la Vigencia a tenor con el Plan más el monto, de haberlo, de Efectivo distribuido de tal manera, (d) a menos que se especifique de otro modo, toda referencia en el presente a «Secciones» y «Artículos» son referencias a Secciones y Artículos, respectivamente, del presente, (e) los epígrafes y títulos de las Secciones y Artículos se insertan por conveniencia para simplificar su referencia y no se pretende sean parte ni afecten la interpretación del Plan, (f) a menos que se especifique de otro modo en el presente, se aplicarán las normas de interpretación establecidas en la sección 102 del Código de Quiebras, (g) a menos que se especifique de otro modo, las referencias a los números de expediente de los documentos presentados en los Casos de Título III son referencias a los números de expediente del sistema CM/ECF (gestión de causas/expediente electrónico de causa, según sus siglas en inglés) del Tribunal del Título III, (h) las expresiones «incluye» y «que incluye» y variaciones de estos no se considerarán términos taxativos y se considerarán como acompañados por la expresión «de manera no taxativa» e (i) cualquier disposición inmaterial que proporcione validez puede ser interpretada por la Junta de Supervisión de manera coherente con el propósito e intención generales del Plan sin notificación o acción adicional o acción, orden o aprobación del Tribunal del Título III ni de cualquier otra Entidad.

ARTÍCULO II
## CONCILIACIÓN Y RESOLUCIÓN DE DISPUTAS/REESTRUCTURACIÓN DE ENTIDADES

2.1      **Resolución de Litigios:** el Plan establece los términos y condiciones para una conciliación global y resolución integrada de, entre otros asuntos, controversias presentadas o no presentadas con respecto a los derechos de los tenedores de Reclamaciones de Bonos del ELA, Reclamaciones de Bonos de Garantía del ELA, Reclamaciones de Bonos del SRE, Reclamaciones de Bonos de la AEP, Reclamaciones del Centro de Convenciones/ELA, Reclamaciones de la ACT/ELA, Reclamaciones de la AMA/ELA, Reclamaciones del Impuesto de Ron de la AFI/ELA y notas de bonos anticipados de la AFI, lo que incluye las controversias (a) establecidas en la impugnación de Objeciones Relacionadas con Deuda, entre otras cosas, la validez, prioridad, estado asegurado y derechos relacionados de las Reclamaciones de Bonos del ELA 2011, las Reclamaciones de Bonos Serie D/E/PIB del ELA 2011, las Reclamaciones de Bonos del ELA 2012, las Reclamaciones de Bonos del ELA 2014, las Reclamaciones de Bonos de Garantía del ELA 2014, las Reclamaciones de Bonos de la AEP 2011, las Reclamaciones de Bonos de la AEP 2012 y las notas de bonos anticipados de la AFI, (b) establecidas en las Acciones de Invalidez, (c) establecidas en las Acciones de Impugnación de Gravamen, (d) presentadas por determinados tenedores de Reclamaciones de Bonos del ELA, Reclamaciones de Bonos de Garantía del ELA, y Préstamos a la ACT del BGF que hacen valer derechos para recibir ingresos históricamente apropiados de manera condicional por la ADCC, la ACT, la AMA y la AFI, según corresponda, y «recuperadas» por el ELA a tenor con las disposiciones de la Constitución del ELA, (e) relacionadas con la validez, prioridad, estado de seguro y derechos relacionados con respecto a los Préstamos a la ACT del BGF, (f) establecidas en el Litigio del SRE, las Acciones de Recuperación del RSE y la Acción de Expropiación del SRE, (g) entre el ELA y la AEP, lo que incluye, de manera no taxativa, la resolución de (i) las reclamaciones y Causas de acción actualmente en litigio en el Litigio de la AEP, (ii) el monto, de haberlo, de la Reclamación de Gastos Administrativos de la AEP y (iii) la propiedad de los Bienes de la AEP entre el ELA y la AEP y las reclamaciones que la AEP pueda presentar contra el ELA a tenor con contratos de arrendamiento, acuerdos y la ley aplicable, y (h) establecidas en el Levantamiento de Mociones de Paralización y Acciones de Recuperación relacionadas con Reclamaciones de Centro de Convenciones/ELA, las Reclamaciones de la ACT/ELA y las Reclamaciones del Impuesto de Ron de la AFI/ELA y (i) establecidas en el Litigio de notas de bonos anticipados de la AFI.

2.2      **Admisión de Reclamaciones de Bonos:** a fines de confirmación y perfeccionamiento del Plan y las distribuciones a realizar según el presente, a menos que se permita otra cosa a tenor con una orden del Tribunal del Título III, en la Vigencia, entre otras Reclamaciones, (a) las Reclamaciones de Bonos de la AEP Antiguos, las Reclamaciones de Bonos de la AEP (Assured), las Reclamaciones de Bonos de la AEP (National), las Reclamaciones de Bonos de la AEP Antiguos (Otros Asegurados) y las Reclamaciones de Bonos de la AEP (Syncora) se considerarán permitidas en el monto acumulado de $ 2,661,239,877.05, (b) las Reclamaciones de Bonos de la AEP 2011 se considerarán permitidas en el monto acumulado de $ 1,335,422,892.78, (c) las Reclamaciones de Bonos de la AEP 2012 se considerarán permitidas en el monto acumulado de $ 674,308,470.06, (d) las Reclamaciones de Bonos del ELA Antiguos y las Reclamaciones de Bonos del ELA Antiguos (Assured), las Reclamaciones de Bonos del ELA (National), las Reclamaciones de Bonos del ELA Antiguos (Otros Asegurados) y las Reclamaciones de Bonos del ELA (Syncora) se considerarán permitidas en el monto acumulado de $ 5,843,252,912.91, (e) las Reclamaciones de Bonos del SRE se considerarán permitidas en el monto acumulado de $ 3,168,698,776.55, (f) las Reclamaciones de Bonos del ELA 2011 y las Reclamaciones de Bonos del ELA 2011 (Assured) se considerarán permitidas en el monto acumulado de $ 476,498,325.06, (g) las Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 y las Reclamaciones de Bonos Series D/E/PIB del ELA 2011 (Assured) se considerarán permitidas en el monto acumulado de $ 645,673,111.48, (h) las Reclamaciones de Bonos del ELA 2012 y las Reclamaciones de Bonos del ELA 2012 (Assured) se considerarán permitidas en el monto acumulado de $ 2,934,427,459.40, (i) las Reclamaciones de Bonos del ELA 2014 se considerarán permitidas en el monto de $ 3,836,611,111.11 y (j) las Reclamaciones de Bonos de Garantía del ELA 2014 se considerarán permitidas en el monto de $ 346,242,219.86.

2.3      **Relevos, Interdictos y Exculpaciones:** los relevos, interdictos y exculpaciones previstas en el Artículo LXXXVIII del presente son esenciales para obtener el valor que se indica según el presente y constituyen un componente esencial de las conciliaciones alcanzadas y no pueden separarse de las demás disposiciones del presente Plan.

2.4      **Compra y Venta de Determinados Activos del SRE:** en la Vigencia, (a) el ELA comprará y el SRE venderá, cederá, transferirá y transmitirá al ELA, todos los derechos, títulos e intereses del SRE sobre los Activos del SRE, lo que incluye, de manera no taxativa, los Activos sujetos a un gravamen válido y perfeccionado o garantía prendaria, por un precio de compra acumulado igual a la suma de trescientos setenta y tres millones de dólares ($373,000,000.00), y (b) conforme a los términos y disposiciones de la Sección 66.2 del presente documento, (i) se concederá al Estado Libre Asociado una opción para comprar la Cartera de Capital Privado del SRE o los intereses del Fideicomiso del SRE, (ii) en el caso de que el Estado Libre Asociado decline ejercer tal opción, conforme a la Elección del Bonista, los bonistas del SRE tendrán la opción de comprar la Cartera de Capital Privado del SRE o los intereses del Fideicomiso del SRE, según el caso, por setenta millones setecientos cincuenta mil dólares ($70,750,000.00), más el monto que pueda ser necesaria para reembolsar al Estado Libre Asociado cualquier cantidad de déficit financiado en relación con la Cartera de Capital Privado del SRE, y (iii) en caso de que no se ejerza la Elección del Bonista, el Estado Libre Asociado adquirirá la Cartera de Capital Privado del SRE por setenta millones setecientos cincuenta mil dólares ($70,750,000.00).

## ARTÍCULO III
## DISPOSICIONES PARA EL PAGO DE RECLAMACIONES DE GASTOS ADMINISTRATIVOS

A tenor con la sección 1123(a)(1) del Código de Quiebras, aplicable al Caso de Título III en virtud de la Sección 301(a) de PROMESA, las Reclamaciones de Gastos Administrativos y las Reclamaciones Profesionales no se han clasificado, por lo que quedan excluidas de las Clases de Reclamaciones establecidas en el Artículo IV del Plan.

3.1      **Reclamaciones de Gastos Administrativos:** en la posterior de (i) la Vigencia y (ii) la fecha en que una Reclamación de Gastos Administrativos se torne una Reclamación Permitida, los Deudores Reorganizados deberán (a) pagar a cada tenedor de una Reclamación de Gastos Administrativos Permitida, en Efectivo, el monto total de tal Reclamación de Gastos Administrativos o (b) satisfacer y cumplir tal Reclamación de Gastos Administrativos Permitida a tenor con los términos que no sean más favorables para el demandante que lo que se acuerde entre el tenedor de esta y los Deudores Reorganizados; disponiéndose, sin embargo, que las Reclamaciones de Gastos Administrativos Permitidas que representan el endeudamiento padecido en el ejercicio habitual a la Vigencia por parte de los Deudores deberá pagarse en su totalidad y efectuarse por parte de los Deudores Reorganizados a tenor con los términos y sujeto a las condiciones de cualquier acuerdo que rija, inversión que evidencie u otro documento relacionado a tales transacciones; y, disponiéndose, además, que, si tal gasto de ejercicio normal no se factura o no se realiza una solicitud por escrito para su pago en los ciento cincuenta (150) días posteriores a la Vigencia, tal gasto de ejercicio normal se excluirá y el tenedor de este no tendrá derecho a ni recibirá una distribución a tenor con el Plan.

3.2     **Reclamaciones de Reembolso y Compensación Profesional:** todas las Entidades a las que se haya concedido una compensación, lo que incluye, de manera no taxativa, en la mayor medida prevista en las respectivas cartas de compromiso o en instrumentos o acuerdos similares, o el reembolso de gastos por el Tribunal del Título III se abonarán íntegramente, en Efectivo, en los montos permitidos por el Tribunal del Título III (a) tan pronto como sea razonablemente posible después de que se produzca lo posterior de (i) la Vigencia y ii) la fecha en que se considere que la orden del Tribunal del Título III que concede tales Reclamaciones es una orden final, o (b) en otros términos que no sean más favorables para el reclamante que los que se establezcan de común acuerdo entre tal reclamante y las Partes del Gobierno; disponiéndose, sin embargo, que, salvo lo dispuesto en el presente, cada Profesional debe presentar su solicitud de indemnización definitiva de compensación por servicios profesionales prestados y reembolso de gastos a la fecha ciento veinte (120) días después de la Vigencia, o antes de esa fecha. Los Deudores Reorganizados pagarán compensación por los servicios profesionales ampliados y el reembolso de los gastos efectuados después de la Vigencia en el ejercicio habitual y sin necesidad de la aprobación del Tribunal del Título III.

3.3     **Costos de Perfeccionamiento de la AEP/OG:** sin perjuicio de lo dispuesto en el Plan en sentido contrario, a fin de compensar a determinadas partes por el costo de negociación, confirmación y consumación del Acuerdo de Apoyo al Plan de la AEP/OG y del Plan, cada Acreedor Inicial del Acuerdo de Apoyo al Plan de la AEP/OG tendrá derecho a recibir en la Vigencia, o tan pronto como sea posible, pero a más tardar diez (10) Días Hábiles a partir de la Vigencia, una participación a prorrata de Efectivo, en forma de una Reclamación de Gastos Administrativos Permitida, en un monto igual a uno con cincuenta por ciento (1.50 %), truncado en dos puntos decimales, del monto acumulado de Reclamaciones de Bonos de la AEP, Reclamaciones de Bonos del ELA y Reclamaciones de Bonos de Garantía del ELA (aseguradas o no), sin duplicados, en poder y/o asegurado por ese Acreedor Inicial del Acuerdo de Apoyo al Plan de la AEP/OG a las 5:00 p.m. (EST, hora del este occidental, por sus siglas en inglés) del 22 de febrero de 2021.

3.4     **Honorarios Profesionales de AFSCME:** sin perjuicio de lo dispuesto en el Plan en sentido contrario, en la Vigencia, se reembolsará a AFSCME sus honorarios y gastos profesionales razonables para compensar a AFSCME por el costo de negociación, confirmación y consumación del Pliego de Términos de AFSCME y el Plan, así como por la resolución de cuestiones relativas a las pensiones.

3.5      **Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG:** sin perjuicio de lo dispuesto en el Plan en sentido contrario, y sujeto a la Obtención del Umbral del Acuerdo de Apoyo al Plan de la AEP/OG, a cambio de celebrar y otorgar el Acuerdo de Apoyo al Plan de la AEP/OG (o el Contrato de Litisconsorcio de la AEP/OG o el Contrato Anexo de la AEP/OG, según corresponda, en conexión con este) en o antes de la Fecha Límite del Litisconsorcio de la AEP/OG y aceptando todos sus términos y condiciones, lo que incluye el acuerdo a «inmovilizar» sus bonos a tenor con los términos del Acuerdo de Apoyo al Plan de la AEP/OG, cada uno de los Acreedores de la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG tendrá derecho a recibir la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG en forma de una Reclamación de Gastos Administrativos Permitida pagadera en Efectivo al momento de consumar el Plan igual al Porcentaje de la Tasa de Restricción de la AEP/OG multiplicada por el monto acumulado de las Reclamaciones de Bonos de la AEP, Reclamaciones de Bonos del ELA y Reclamaciones de Bonos de Garantía del ELA (sin duplicados y, en la medida en que tales Reclamaciones estén aseguradas por Monolínea, únicamente en la medida en que un Acreedor de Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG esté autorizado a votar sobre tal Reclamación a tenor con la Sección 301(c)(3) de PROMESA, los documentos de seguros definitivos y la ley aplicable) en posesión o aseguradas por tal Acreedor de Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG al vencer el Período de la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG, disponiéndose, sin embargo, que cada Acreedor de Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG que adquirió cualquier Reclamación de Bonos de la AEP, Reclamación de Bonos del ELA o Reclamación de Bonos de Garantía del ELA (sin duplicados y, en la medida en que tales Reclamaciones estén aseguradas por Monolínea, únicamente en la medida en que tal Acreedor de Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG esté autorizado a votar sobre tal Bono de OG o Bono de la AEP asegurado por Monolínea a tenor con la Sección 301(c)(3) de PROMESA, los documentos de seguros definitivos y la ley aplicable) después de la Fecha Límite del Litisconsorcio tendrá derecho a recibir tal Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG igual al Porcentaje de la Tasa de Restricción de la AEP/OG multiplicado por el monto acumulado de las Reclamaciones de Bonos de la AEP, Reclamaciones de Bonos del ELA y Reclamaciones de Bonos de Garantía del ELA (sin duplicados y, en la medida en que tales Reclamaciones estén aseguradas por Monolínea, únicamente en la medida en que un Acreedor de Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG esté autorizado a votar sobre tal Reclamación a tenor con la Sección 301(c)(3) de PROMESA, los documentos de seguros definitivos y la ley aplicable) de tal Acreedor de Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG a partir del que ocurra primero de la Obtención del Umbral del Acuerdo de Apoyo al Plan de la AEP/OG y la emisión de la Orden de Confirmación; y, disponiéndose, además, que, si un Acreedor de Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG vendiese cualquier Reclamación de Bonos de la AEP, Reclamación de Bonos del ELA o Reclamación de Bonos de Garantía del ELA (sin duplicados y, en la medida en que tales Reclamaciones estén aseguradas por Monolínea, únicamente en la medida en que un Acreedor de Tasa de Restricción del Acuerdo de Apoyo al Plan esté autorizado a votar sobre tal Reclamación a tenor con los documentos de seguros definitivos y la ley aplicable) por la cual hubiese tenido derecho a recibir la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG, la parte compradora, y no la parte vendedora, tendrá derecho a

recibir la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG dado esto; y,
disponiéndose, además, que, en toda circunstancia la suma de la Tasa de Restricción del
Acuerdo de Apoyo al Plan de la AEP/OG acumulada más los Costos de Perfeccionamiento
no excederán los trescientos cincuenta millones de dólares ($ 350,000,000.00); y,
disponiéndose, además, que en el caso en que el Acuerdo de Apoyo al Plan de la AEP/OG
se rescinda a tenor con los términos de la Sección 7.1(b)(iii) (sujeto a la extensión
proporcionada por la Sección 7.1(b), (c)(i) o (c)(ii) de este o que la Junta de Supervisión
rescinda el Acuerdo de Apoyo al Plan de la AEP/OG por cualquier razón que no sea (i) un
incumplimiento del Acuerdo de Apoyo al Plan de la AEP/OG por parte de una Parte que
no sea del Gobierno, (ii) la negación de la confirmación del Plan por parte del Tribunal del
Título III, (o el Tribunal del Título III toma una decisión o declara su posición de denegar
la confirmación sin la modificación del Plan, y tal modificación tendría un efecto material
adverso en la capacidad de la Junta de Supervisión y de los Acreedores del Acuerdo de
Apoyo al PLan de la AEP/OG de consumar el Plan en términos coherentes con el Acuerdo
de Apoyo al Plan de la AEP/OG, lo que incluye, de manera no taxativa, los términos
establecidos en el Resumen de Resolución adjunto al presente como Anexo «I»), (iii) la
Legislación de los Nuevos Bonos de OG, la Legislación de CVI, la Ley de
Responsabilidad en la Emisión de Deuda no se aprueba antes del comienzo de la Vista de
Confirmación o (iv) el ingreso de una orden con respecto a uno o más de los asuntos
establecidos en la Sección 7.1(b)(ii) del Acuerdo de Apoyo al Plan, los Costos de
Perfeccionamiento y la Tasa de Restricción de la del Acuerdo de Apoyo al Plan de la
AEP/OG acumulados en un monto hasta cien millones de dólares ($100,000,000.00) se
pagarán, proporcionalmente, en Efectivo, como una reclamación de gastos administrativos
permitida a tenor con un plan de ajuste para el ELA a los Acreedores del Acuerdo de
Apoyo al Plan de la AEP/OG Iniciales a la fecha de rescisión; y, disponiéndose, además,
que, en toda otra circunstancia, al rescindirse el Acuerdo de Apoyo al Plan de la AEP/OG,
no se deberá ni será pagadero ningún Costo de Perfeccionamiento ni Tasa de Restricción
del Acuerdo de Apoyo al Plan de la AEP/OG a la parte del Acuerdo de Apoyo al Plan de la
AEP/OG que rescinda el Acuerdo de Apoyo al Plan de la AEP/OG o contra la parte del
Acuerdo de Apoyo al Plan de la AEP/OG con respecto a la cual se rescindió el Acuerdo de
Apoyo al Plan; y, disponiéndose, además, que, a fines de distribuciones a tenor con las
disposiciones de la presente Sección 3.5, las Reclamaciones respectivas en posesión y/o
aseguradas por un Acreedor de Tasa de Restricción del Acuerdo de Apoyo al Plan de la
AEP/OG se calculará en base a su participación a prorrata en las Reclamaciones
consideradas como permitidas a tenor con la Sección 2.2 del presente.

3.6 **Tasa de Apoyo de Inversión:** a tenor con los términos y disposiciones establecidos en el presente, en el caso en que una Clase de Inversores por Cuenta Propia (Clases 6, 8, 10, 15, 28, 35, 38 y 44) vote para aceptar el Plan, los miembros de tal Clase tendrán derecho a recibir su Participación a Prorrata de la participación asignable de tal Clase de la Tasa de Apoyo de Inversión acumulada hasta cincuenta millones de dólares ($50,000,000.00) en un monto igual al Porcentaje de la Tasa de Restricción de la AEP/OG por el monto acumulado de Reclamaciones de Bonos del ELA de Inversión y Reclamaciones de Bonos de la AEP de Inversión, sin duplicados y, en la medida en que tales Reclamaciones sean aseguradas por Monolínea, únicamente en la medida en que un Inversor por Cuenta Propia esté autorizado a votar sobre tal Reclamación a tenor con la Sección 301(c)(3) de PROMESA, los documentos de seguros definitivos y la ley aplicable en poder de tal Clase de Inversores por Cuenta Propia aceptante, según el caso; disponiéndose, sin embargo, que, (a) en el caso en que, después de asignar la Tasa de Apoyo de Inversión a los Inversores por Cuenta Propia en las Clases que votaron por la aceptación del Plan, no se asigne la totalidad de los cincuenta millones de dólares ($50,000,000.00), el saldo de la Tasa de Apoyo de Inversión se reasignará y distribuirá proporcionalmente a (i) los Acreedores de la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG y (ii) aquellos Inversores por Cuenta Propia que sean miembros de las Clases que votaron por aceptar el Plan y (b) la Tasa de Apoyo de Inversión asignada a cualquier Clase de Inversores por Cuenta Propia que no vote por aceptar el Plan se reasignará y distribuirá proporcionalmente a (i) los Acreedores de la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG y (ii) aquellos Inversores por Cuenta Propia que sean miembros de Clases que votaron por aceptar el Plan.

3.7 **Tasa de Restricción del SRE:** sin perjuicio de cualquier contenido en el Plan en contrario, a cambio de ejecutar y entregar la Estipulación del SRE, y aceptar todos sus términos y condiciones, incluido el «bloqueo» de Bonos del SRE conforme a los términos de la Estipulación del SRE, cada uno de los bonistas del SRE parte en la Estipulación del SRE, tendrá derecho a recibir y, en la Vigencia, el ELA pagará a dichas partes, sin compensación o deducción por impuestos, su Parte Proporcional (basada en las Reclamaciones de Bonos del SRE Permitidas Netas de dichas partes al 2 de abril de 2021) de setenta y cinco millones de dólares ($75,000,000.00).

3.8 **Costos de Perfeccionamiento de la ADCC:** sin perjuicio del contenido en el Plan en contrario, para compensar a ciertas partes por el costo de negociación, confirmación y perfeccionamiento del Acuerdo de Apoyo al Plan de la ACT/ADCC y el Plan, cada Acreedor del Acuerdo de Apoyo al Plan de la ACT/ADCC Inicial, en la medida en que sea titular o asegurador de Bonos de la ADCC, tendrá derecho a recibir en la Vigencia, o tan pronto como sea posible, pero en ningún caso después de diez (10) días hábiles siguientes a la Vigencia, una cantidad igual al uno por ciento (1.00 %), truncada a dos puntos decimales, de tales Reclamaciones de Bonos de la ADCC del Acreedor del Acuerdo de Apoyo al Plan de la ACT/ADCC Inicial, pagaderas como una reclamación de gastos administrativos, en una cantidad acumulada no mayor a quince millones de dólares ($15,000,000.00).

3.9     **Tasa de Restricción de la ADCC:** sin perjuicio del contenido en el Plan en contrario, a cambio de ejecutar el Acuerdo de Apoyo al Plan de la ACT/ADCC, y de aceptar todos sus términos y condiciones, incluido el acuerdo de «bloquear» sus bonos conforme a los términos del Acuerdo de Apoyo al Plan de la ACT/ADCC, sujeto a la entrada de la Orden de Confirmación, cada Acreedor con Tasa de Restricción de la ADCC que tenga o asegure Bonos de la ADCC (incluido (i) un titular de un Bono de la ADCC asegurados con Monolíneas (excepto un Bono de la ADCC asegurado con Monolíneas asegurados por Assured o National, según el caso) en la medida en que dicho Acreedor con Tasa de Restricción de la ADCC esté autorizado a votar la reclamación con respecto a dicho Bono de la ADCC asegurado con Monolíneas, conforme a la Sección 301(c)(3) de PROMESA, los documentos de seguro definitivos y la ley aplicable, y (ii) Assured y National, en la medida en que Assured o National, según corresponda, esté autorizado a votar dichas Reclamaciones de Bonos de la ADCC Asegurados conforme a la Sección 301(c)(3) de PROMESA, los documentos de seguros definitivos y la ley aplicable) tendrán derecho a recibir la Tasa de Restricción de la ADCC en forma de una reclamación de gastos administrativos permitida, pagadera en efectivo, en el momento de la perfeccionamiento del Plan en un monto igual al Porcentaje de Tasa de Restricción de la ADCC multiplicado por el monto total de Reclamaciones de Bonos de la ADCC (sin duplicación y, en la medida en que tales reclamaciones estén aseguradas con Monolíneas, únicamente en la medida en que un Acreedor con Tasa de Restricción de la ADCC esté autorizado a votar cualquier reclamación conforme a la Sección 301(c)(3) de PROMESA, los documentos de seguro definitivos y la ley aplicable) en poder o, en el caso de Assured o National, en poder o Asegurado, por tal Acreedor con Tasa de Restricción de la ADCC a partir de la expiración del Período de Tasa de Restricción del Acuerdo de Apoyo al Plan de la ACT/ADCC aplicable; disponiéndose, sin embargo, que cada Acreedor con Tasa de Restricción de la ADCC que adquiera cualquier Bono de la ADCC después de la Fecha Límite del Litisconsorcio (incluido (i) un titular de un Bono de la ADCC asegurados con Monolíneas (excepto un Bono de la ADCC asegurado con Monolíneas asegurados por Assured o National, según el caso) en la medida en que dicho Acreedor con Tasa de Restricción de la ADCC esté autorizado a votar la reclamación con respecto a dicho Bono de la ADCC asegurado con Monolíneas, conforme a la Sección 301(c)(3) de PROMESA, los documentos de seguro definitivos y la ley aplicable, y (ii) Assured y National, en la medida en que Assured o National, según corresponda, esté autorizado a votar dichas Reclamaciones de Bonos de la ADCC Asegurados conforme a la Sección 301(c)(3) de PROMESA, los documentos de seguros definitivos y la ley aplicable) tendrán derecho a recibir tal Tasa de Restricción de la ADCC igual al Porcentaje de Tasa de Restricción de la ADCC multiplicado por el monto total de Reclamaciones de Bonos de la ADCC (sin duplicación y, en la medida en que tales reclamaciones estén aseguradas con Monolíneas, únicamente en la medida en que un Acreedor del Acuerdo de Apoyo al Plan de la ACT/ADCC esté autorizado a votar cualquier reclamación conforme a la Sección 301(c)(3) de PROMESA, los documentos de seguro definitivos y la ley aplicable) en poder de tal Acreedor con Tasa de Restricción de la ADCC a la fecha de que se produzca la Obtención del Umbral de la ACT/ADCC y la entrada de la Orden de Confirmación, lo que ocurra primero; y disponiéndose, además, que, si un Acreedor con Tasa de Restricción de la ADCC vende cualesquiera Bonos de la ADCC por los que hubiera tenido derecho a recibir la Tasa de Restricción de la ADCC, la parte compradora no tendrá derecho a recibir la Tasa de Restricción de la ADCC por su cuenta y dicho derecho permanecerá con la parte

vendedora; y disponiéndose, además, que, en todas las circunstancias, la suma de las Tarifas de Restricción de la ADCC acumuladas más los Costos de Perfeccionamiento de la ADCC atribuibles a las Reclamaciones de Bonos de la ADCC del tenedor no exceda los quince millones de dólares ($15,000,000.00); y disponiéndose, además, que, en el caso de que el Acuerdo de Apoyo al Plan de la ACT/ADCC se rescinda conforme a los términos del Artículo 7.1 de este, ningún Costo de Perfeccionamiento de la ADCC o Tasas de Restricción de la ADCC serán pagaderos a un titular de Bonos de la ADCC o Assured con respecto a reclamos de Bonos de la ADCC.

3.10    **No Independencia**: la asignación y el pago de los Costos de Perfeccionamiento y de las Tasas de Restricción del Acuerdo de Apoyo al Plan, tal como se establecen en el presente Artículo III, compensan a los Acreedores de la Tasas de Restricción del Acuerdo de Apoyo al Plan por el valor recibido y constituyen un componente esencial de las conciliaciones y resoluciones que se enuncian en el presente y no pueden separarse de los demás términos y disposiciones establecidos en el presente.

## ARTÍCULO IV
## CLASIFICACIÓN DE RECLAMACIONES

4.1    **Las reclamaciones se clasifican de la manera siguiente:**

(a)    **Clase 1:**   Reclamaciones de Bonos de la AEP Antiguos

(b)    **Clase 2:**   Reclamaciones de Bonos de la AEP Antiguos (Assured)

(c)    **Clase 3:**   Reclamaciones de Bonos de la AEP Antiguos (National)

(d)    **Clase 4:**   Reclamaciones de Bonos de la AEP Antiguos (Otros Asegurados)

(e)    **Clase 5:**   Reclamaciones de Bonos de la AEP Antiguos (Syncora)

(f)    **Clase 6:**   Reclamaciones de Bonos de la AEP Antiguos de Inversión

(g)    **Clase 7:**   Reclamaciones de Bonos de la AEP 2011

(h)    **Clase 8:**   Reclamaciones de Bonos de la AEP 2011 de Inversión

(i)    **Clase 9:**   Reclamaciones de Bonos de la AEP 2012

(j)    **Clase 10:**   Reclamaciones de Bonos de la AEP 2012 de Inversión

(k)    **Clase 11:**   Reclamaciones con Garantía Prendaria de la ARD/AEP

(l)    **Clase 12:**   Reclamaciones sin Garantía General de la AEP

(m)    **Clase 13:**   Reclamaciones sin Garantía de ARD/AEP

(n)       **Clase 14:** Reclamaciones de Bonos del ELA Antiguos

(o)       **Clase 15:** Reclamaciones de Bonos del ELA Antiguos de Inversión

(p)       **Clase 16:** Reclamaciones de Bonos de ELA Antiguos (Assured)

(q)       **Clase 17:** Reclamaciones de Bonos de ELA Antiguos (National)

(r)       **Clase 18:** Reclamaciones de Bonos de ELA Antiguos (Otros Asegurados)

(s)       **Clase 19:** Reclamaciones de Bonos de ELA Antiguos (Syncora)

(t)       **Clase 20:** Reclamaciones de Bonos del ELA Antiguos (Elección Imponible)

(u)       **Clase 21:** Reclamaciones de Bonos de Garantía del ELA Antiguos

(v)       **Clase 22:** Reclamaciones de Bonos de Garantía del ELA Antiguos (Assured)

(w)       **Clase 23** Reclamaciones de Bonos de Garantía del ELA Antiguos (National)

(x)       **Clase 24** Reclamaciones de Bonos de Garantía del ELA Antiguos (Otras Aseguradas)

(y)       **Clase 25** Reclamaciones de Bonos de Garantía del ELA Antiguos (Syncora)

(z)       **Clase 26:** Reclamaciones de Bonos de Garantía del ELA Antiguos (Elección Imponible)

(aa)      **Clase 27:** Reclamaciones de Bonos del ELA 2011

(bb)      **Clase 28:** Reclamaciones de Bonos del ELA 2011 de Inversión

(cc)      **Clase 29:** Reclamaciones de Bonos del ELA 2011 (Assured)

(dd)      **Clase 30:** Reclamaciones de Bonos del ELA 2011 (Elección Imponible)

(ee)      **Clase 31:** Reclamaciones de Bonos de Garantía del ELA 2011

(ff)      **Clase 32:** Reclamaciones de Bonos de Garantía del ELA 2011 (Elección Imponible)

(gg)      **Clase 33:** Reclamaciones de Bonos Serie D/E/PIB del ELA 2011

(hh)    **Clase 34:** Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 (Assured)

(ii)    **Clase 35:** Reclamaciones de Bonos Serie P/E/PIB del ELA 2011 de Inversión

(jj)    **Clase 36:** Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 (Elección Imponible)

(kk)    **Clase 37:** Reclamaciones de Bonos del ELA 2012

(ll)    **Clase 38:** Reclamaciones de Bonos del ELA 2012 de Inversión

(mm)   **Clase 39:** Reclamaciones de Bonos del ELA 2012 (Assured)

(nn)    **Clase 40:** Reclamaciones de Bonos del ELA 2012 (Elección Imponible)

(oo)    **Clase 41:** Reclamaciones de Bonos de Garantía del ELA 2012

(pp)    **Clase 42:** Reclamaciones de Bonos de Garantía del ELA 2012 (Elección Imponible)

(qq)    **Clase 43:** Reclamaciones de Bonos del ELA 2014

(rr)    **Clase 44:** Reclamaciones de Bonos del ELA 2014 de Inversión

(ss)    **Clase 45:** Reclamaciones de Bonos del ELA 2014 (Elección Imponible)

(tt)    **Clase 46:** Reclamaciones de Bonos de Garantía del ELA 2014

(uu)    **Clase 47:** Reclamaciones de Bonos de Garantía del ELA 2014 (Elección Imponible)

(vv)    **Clase 48:** Reclamaciones de Beneficios de Empleados Retirados y Activos

    i.    **Clase 48A:** Reclamaciones de Pensionados

    ii.   **Clase 48B:** Reclamaciones de Participantes del SRE Activos

    iii.  **Clase 48C:** Reclamaciones de Participantes del SRJ Activos

    iv.   **Clase 48D:** Reclamaciones de Participantes del SRM Activos

    v.    **Clase 48E:** Reclamaciones de Participantes del Sistema 2000

(ww)   **Clase 49:** Reclamaciones de Empleados de AFSCME

(xx)    **Clase 50:** Reclamaciones de Productores de Lácteos

(yy)      **Clase 51:** Reclamaciones de Expropiación

(zz)      **Clase 52:** Reclamaciones de Incentivos de Energía

(aaa)     **Clase 53:** Reclamaciones de Centros Médicos

(bbb)     **Clase 54:** Reclamaciones de Crédito Fiscal

(ccc)     **Clase 55:** Reclamaciones sin Garantía Generales del ELA

(ddd)     **Clase 56:** Reclamaciones de la ACT/ELA

(eee)     **Clase 57:** Reclamaciones de Centro de Convenciones/ELA

(fff)     **Clase 58:** Reclamaciones del Impuesto de Ron de la AFI/ELA

(ggg)     **Clase 59:** Reclamaciones de la AMA/ELA

(hhh)     **Clase 60:** Reclamaciones de Asignaciones del ELA

(iii)     **Clase 61:** Reclamaciones Subordinadas a 510(b) del ELA

(jjj)     **Clase 62:** Reclamación de Bonos del SRE

(kkk)     **Clase 63:** Reclamaciones sin Garantía Generales del SRE

(lll)     **Clase 64:** Reclamaciones Gracia Gracia

(mmm)     **Clase 65:** Reclamación de Conveniencia

## ARTÍCULO V

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE LA AEP ANTIGUOS (CLASE 1)

5.1      **Tratamiento de Reclamaciones de Bonos de la AEP Antiguos**: en la Vigencia, cada tenedor de una Reclamación de Bonos de la AEP Antiguos Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de la AEP Antiguos Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos de la AEP Antiguos de tal tenedor.

ARTÍCULO VI

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE LA AEP ANTIGUOS (ASSURED) (CLASE 2)

6.1 **Tratamiento de Reclamaciones de Bonos de la AEP Antiguos (Assured)**: sujeto a los términos y disposiciones de la Sección 71.1 del presente, en la Vigencia, cada tenedor de una Reclamación de Bonos de la AEP Antiguos (Assured) Concedida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de la AEP Antiguos (Assured) Concedida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos de la AEP Antiguos de tal tenedor.

ARTÍCULO VII

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE LA AEP ANTIGUOS (NATIONAL) (CLASE 3)

7.1 **Tratamiento de Reclamaciones de Bonos de la AEP Antiguos (National)**: sujeto a los términos y disposiciones de la Sección 71.2 del presente, en la Vigencia, cada tenedor de una Reclamación de Bonos de la AEP Antiguos (National) Concedida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de la AEP Antiguos (National) Concedida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos de la AEP Antiguos de tal tenedor.

ARTÍCULO VIII

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE LA AEP ANTIGUOS (OTROS ASEGURADOS) (CLASE 4)

8.1 **Tratamiento de Reclamaciones de Bonos de la AEP Antiguos (Otros Asegurados)**: en la Vigencia, cada tenedor de una Reclamación de Bonos de la AEP Antiguos (Otros Asegurados) Concedida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de la AEP Antiguos (Otros Asegurado) Concedida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos de la AEP Antiguos de tal tenedor.

ARTÍCULO IX

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE LA AEP ANTIGUOS (SYNCORA) (CLASE 5)

9.1 **Tratamiento de Reclamaciones de Bonos de la AEP Antiguos (Syncora)**: sujeto a los términos y disposiciones de la Sección 71.3 del presente, en la Vigencia, cada tenedor de una Reclamación de Bonos de la AEP Antiguos (Syncora) Concedida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de la AEP Antiguos (Syncora) Concedida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos de la AEP Antiguos de tal tenedor.

ARTÍCULO X

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE LA AEP ANTIGUOS DE INVERSIÓN (CLASE 6)

10.1 **Tratamiento de Reclamaciones de Bonos de la AEP Antiguos de Inversión**: en la Vigencia, cada tenedor de una Reclamación de Bonos de la AEP Antiguos de Inversión Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, relevo e intercambio de la Reclamación de Bonos de la AEP Antiguos de Inversión Permitida de tal tenedor, la Participación a Prorrata de (a) la Recuperación de Bonos de la AEP Antiguos y (b) la Tasa de Apoyo de Inversión asignable a los tenedores de Reclamaciones de Bonos de la AEP Antiguos de Inversión Permitidas de tal tenedor; disponiéndose, sin embargo, que, en caso de que la Clase 6 vote para rechazar el Plan a tenor con la sección 1126 del Código de Quiebras, (y) cada tenedor de una Reclamación de Bonos de la AEP Antiguos de Inversión Permitida tendrá derecho a recibir la Participación a Prorrata de la Recuperación de Bonos de la AEP Antiguos de tal tenedor y (z) la Tasa de Apoyo de Inversión que de otro modo se asignaría a los tenedores de Reclamaciones de Bonos de la AEP Antiguos de Inversión Permitidas se reasignará a los Acreedores de la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG y a los Inversores por Cuenta Propia que sean miembros de las Clases que votaron a favor del Plan y se distribuirá a tenor con los términos y disposiciones de la Sección 3.6 del presente.

ARTÍCULO XI

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE LA AEP 2011 (CLASE 7)

11.1 **Tratamiento de Reclamaciones de Bonos de la AEP 2011**: en la Vigencia, cada tenedor de una Reclamación de Bonos de la AEP 2011 Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de la AEP 2011 Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos de la AEP 2011 de tal tenedor.

ARTÍCULO XII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE LA AEP 2011 DE INVERSIÓN (CLASE 8)**

12.1 **Tratamiento de Reclamaciones de Bonos de la AEP 2011 de Inversión**: en la Vigencia, cada tenedor de una Reclamación de Bonos de la AEP 2011 de Inversión Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de la AEP 2011 de Inversión Permitida de tal tenedor, la Participación a Prorrata de (a) la Recuperación de Bonos de la AEP 2011 y (b) la Tasa de Apoyo de Inversión asignable a los tenedores de Reclamaciones de Bonos de la AEP 2011 de Inversión Permitidas de tal tenedor; disponiéndose, sin embargo, que, en caso de que la Clase 8 vote para rechazar el Plan a tenor con las disposiciones de la sección 1126 del Código de Quiebras, (y) cada tenedor de una Reclamación de Bonos de la AEP de Inversión Permitida tendrá derecho a recibir la Participación a Prorrata de la Recuperación de Bonos de la AEP 2011 de tal tenedor y (z) la Tasa de Apoyo de Inversión que de otro modo se asignaría a los tenedores de Reclamaciones de Bonos de la AEP 2011 de Inversión Permitidas se reasignará a los Acreedores de la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG y a los Inversores por Cuenta Propia que sean miembros de las Clases que votaron a favor del Plan y se distribuirá a tenor con los términos y disposiciones de la Sección 3.6 del presente.

ARTÍCULO XIII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE LA AEP 2012 (CLASE 9)**

13.1 **Tratamiento de Reclamaciones de Bonos de la AEP 2012:** en la Vigencia, cada tenedor de una Reclamación de Bonos de la AEP 2012 Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de la AEP 2012 Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos de la AEP 2012 de tal tenedor.

ARTÍCULO XIV

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE LA AEP 2012 DE INVERSIÓN (CLASE 10)**

14.1 **Tratamiento de Reclamaciones de Bonos de la AEP 2012 de Inversión:** en la Vigencia, cada tenedor de una Reclamación de Bonos de la AEP 2012 de Inversión Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de la AEP 2012 de Inversión Permitida de tal tenedor, la Participación a Prorrata de (a) la Recuperación de Bonos de la AEP 2012 y (b) la Tasa de Apoyo de Inversión asignable a los tenedores de Reclamaciones de Bonos de la AEP 2012 de Inversión Permitidas de tal tenedor; disponiéndose, sin embargo, que, en caso de que la Clase 10 vote para rechazar el Plan a tenor con las disposiciones de la sección 1126 del Código de Quiebras, (y) cada tenedor de una Reclamación de Bonos 2012 de Inversión Permitida tendrá derecho a recibir la Participación a Prorrata de la Recuperación de Bonos de la AEP 2012 de tal tenedor y (z) la Tasa de Apoyo de Inversión que de otro modo se asignaría a los tenedores de Reclamaciones de Bonos 2012 de Inversión Permitidas se reasignará a los Acreedores de la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG y a los Inversores por Cuenta Propia que sean miembros de las Clases que votaron a favor del Plan y se distribuirá a tenor con los términos y disposiciones de la Sección 3.6 del presente.

ARTÍCULO XV

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES
CON GARANTÍA PRENDARIA DE LA AEP/ARD (CLASE 11)**

15.1 **Tratamiento de Reclamaciones con Garantía Prendaria de la AEP/ARD:** las Reclamaciones con Garantía Prendaria de la AEP/ARD no recibirán una distribución a tenor con el Plan y se considerará que los tenedores de las Reclamaciones con Garantía Prendaria de la AEP/ARD han rechazado el Plan.

122

## ARTÍCULO XVI

### DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES SIN GARANTÍA GENERALES DE LA AEP (CLASE 12)

16.1 **Tratamiento de Reclamaciones sin Garantía Generales de la AEP:** en la Vigencia, las Reclamaciones sin Garantía Generales de la AEP Permitidas no se considerarán afectadas y cada tenedor de una Reclamación sin Garantía General de la AEP Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación sin Garantía Generales de la AEP Permitida de dicho tenedor, (a) la reposición a tenor con la sección 1124(2) del Código de Quiebras, lo que incluye, de manera no taxativa, pagos en Efectivo necesarios para satisfacer los requisitos de reposición, (b) el pago del monto Concedido de la Reclamación de tal tenedor, en su totalidad, en Efectivo, en la posterior de las siguientes fechas (1) la Vigencia, (2) la fecha en la cual se Concede la Reclamación sin Garantía General de la AEP, (3) la fecha en la cual tal Reclamación sin Garantía General de la AEP Permitida venza y sea pagadera y (4) cualquier otra fecha de mutuo acuerdo de tal tenedor de tal Reclamación sin Garantía General de la AEP y el Deudor o el Deudor Reorganizado, según el caso, o lo antes posible después de la última de estas fechas, o (c) cualquier otro tratamiento de común acuerdo entre tal tenedor de una Reclamación sin Garantía Generales de la AEP y el Deudor o el Deudor Reorganizado, según el caso.

## ARTÍCULO XVII

### DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES SIN GARANTÍA DE LA AEP/ARD (CLASE 13)

17.1 **Tratamiento de Reclamaciones sin Garantía de la AEP/ARD:** Las Reclamaciones sin Garantía de la AEP/ARD no recibirán una distribución a tenor con el Plan y se considerará que los tenedores de las Reclamaciones sin Garantía de la AEP/ARD han rechazado el Plan.

## ARTÍCULO XVIII

### DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA ANTIGUOS (CLASE 14)

18.1 **Tratamiento de Reclamaciones de Bonos del ELA Antiguos:** en la Vigencia, y sujeto al derecho de elección establecido en la Sección 18.2 del presente, cada tenedor de una Reclamación de Bonos del ELA Antiguos Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA Antiguos Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del ELA Antiguos de tal tenedor.

18.2      **Derecho de Elección para Reclamaciones de Bonos del ELA Antiguos (Elección Imponible):** sin perjuicio de las disposiciones de la Sección 18.1 del Plan, cada tenedor de una Reclamación de Bonos del ELA Antiguos Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 24.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Cualquier elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

ARTÍCULO XIX

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA ANTIGUOS DE INVERSIÓN (CLASE 15)**

19.1      **Tratamiento de Reclamaciones de Bonos del ELA Antiguos de Inversión:** en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA Antiguos de Inversión Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA Antiguos de Inversión Permitida de tal tenedor, la Participación a Prorrata de (a) la Recuperación de Bonos del ELA Antiguos y (b) la Tasa de Apoyo de Inversión asignable a los tenedores de Reclamaciones de Bonos del ELA Antiguos de Inversión Permitidas de tal tenedor; disponiéndose, sin embargo, que, en caso de que la Clase 15 vote para rechazar el Plan a tenor con las disposiciones de la sección 1126 del Código de Quiebras, (y) cada tenedor de una Reclamación de Bonos del ELA Antiguos de Inversión Permitida tendrá derecho a recibir la Participación a Prorrata de la Recuperación de Bonos del ELA Antiguos de tal tenedor y (z) la Tasa de Apoyo de Inversión que de otro modo se asignaría a los tenedores de Reclamaciones de Bonos del ELA Antiguos de Inversión Permitidas se reasignará a los Acreedores de la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG y a los Inversores por Cuenta Propia que sean miembros de las Clases que votaron a favor del Plan y se distribuirá a tenor con los términos y disposiciones de la Sección 3.6 del presente.

19.2 **Derecho de Elección para Reclamaciones de Bonos del ELA Antiguos de Inversión (Elección Imponible):** sin perjuicio de las disposiciones de la Sección 19.1 del Plan, cada tenedor de una Reclamación de Bonos del ELA Antiguos de Inversión Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 24.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Cualquier elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

## ARTÍCULO XX

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA ANTIGUOS (ASSURED) (CLASE 16)

20.1 **Tratamiento de Reclamaciones de Bonos del ELA Antiguos (Assured)**: sujeto a los términos y disposiciones de la Sección 71.1 del presente, en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA Antiguos (Assured) Concedida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA Antiguos (Assured) Concedida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del ELA Antiguos de tal tenedor.

## ARTÍCULO XXI

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA ANTIGUOS (NATIONAL) (CLASE 17)

21.1 **Tratamiento de Reclamaciones de Bonos del ELA Antiguos (National)**: sujeto a las disposiciones de la Sección 71.2 del presente, en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA Antiguos (National) Concedida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA Antiguos (National) Concedida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del ELA Antiguos de tal tenedor.

ARTÍCULO XXII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA ANTIGUOS (OTROS ASEGURADOS) (CLASE 18)**

22.1 **Tratamiento de Reclamaciones de Bonos del ELA Antiguos (Otros Asegurados)**: en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA Antiguos (Otros Asegurados) Concedida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA Antiguos (Otros Asegurados) Concedida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del ELA Antiguos de tal tenedor.

ARTÍCULO XXIII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA ANTIGUOS (SYNCORA) (CLASE 19)**

23.1 **Tratamiento de Reclamaciones de Bonos del ELA Antiguos (Syncora)**: sujeto a los términos y disposiciones de la Sección 71.3 del presente, en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA Antiguos (Asegurada) Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA Antiguos (Syncora) Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del ELA Antiguos de tal tenedor.

ARTÍCULO XXIV

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA ANTIGUOS (ELECCIÓN IMPONIBLE) (CLASE 20)**

24.1 **Tratamiento de Reclamaciones de Bonos del ELA Antiguos (Elección Imponible)**: en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA Antiguos (Elección Imponible) Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA Antiguos (Elección Imponible) Permitida de tal tenedor, su Participación a Prorrata de la Recuperación de Bonos del ELA Antiguos, según se modifique por su Participación a Prorrata de la Distribución de Bonos Imponibles Antiguos.

ARTÍCULO XXV

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA ANTIGUOS (CLASE 21)

25.1 **Tratamiento de Reclamaciones de Bonos de Garantía del ELA Antiguos:** en la Vigencia, y en plena contraprestación, satisfacción, liberación e intercambio de su Reclamación de Bonos de Garantía del ELA Antiguos Permitida, cada tenedor de una Reclamación de Bonos de Garantía del ELA Antiguos Permitida recibirá la Participación a Prorrata de la Recuperación de Bonos de Garantía del ELA Antiguos de tal tenedor.

25.2 **Derecho de Elección para Reclamaciones de Bonos de Garantía del ELA Antiguos (Elección Imponible):** sin perjuicio de las disposiciones de la Sección 25.1 del Plan, cada tenedor de una Reclamación de Bonos de Garantía del ELA Antiguos Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 30.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Cualquier elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

ARTÍCULO XXVI

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA ANTIGUOS (ASSURED) (CLASE 22)

26.1 **Tratamiento de Reclamaciones de Bonos de Garantía del ELA Antiguos (Assured):** sujeto a las disposiciones de la Sección 71.1 del presente, en la Vigencia, y en plena contraprestación, satisfacción, liberación e intercambio de su Reclamación de Bonos de Garantía del ELA Antiguos (Assured) Concedida, cada tenedor de una Reclamación de Bonos de Garantía del ELA Antiguos (Assured) Concedida tendrá derecho a recibir la Participación a Prorrata de la Recuperación de Bonos de Garantía del ELA Antiguos de tal tenedor.

ARTÍCULO XXVII

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA ANTIGUOS (NATIONAL) (CLASE 23)

27.1     **Tratamiento de Reclamaciones de Bonos de Garantía del ELA Antiguos (National)**: sujeto a las disposiciones de la Sección 71.2 del presente, en la Vigencia, y en plena contraprestación, satisfacción, liberación e intercambio de su Reclamación de Bonos de Garantía del ELA Antiguos (National) Concedida, cada tenedor de una Reclamación de Bonos de Garantía del ELA Antiguos (National) Concedida tendrá derecho a recibir la Participación a Prorrata de la Recuperación de Bonos de Garantía del ELA Antiguos de tal tenedor.

ARTÍCULO XXVIII

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA ANTIGUOS (OTROS ASEGURADOS) (CLASE 24)

28.1     **Tratamiento de Reclamaciones de Bonos de Garantía del ELA Antiguos (Otros Asegurados):** en la Vigencia, y en plena contraprestación, satisfacción, liberación e intercambio de su Reclamación de Bonos de Garantía del ELA Antiguos (Otros Asegurados) Concedida, cada tenedor de una Reclamación de Bonos de Garantía del ELA Antiguos (Otros Asegurados) Concedida tendrá derecho a recibir la Participación a Prorrata de la Recuperación de Bonos de Garantía del ELA Antiguos de tal tenedor.

ARTÍCULO XXIX

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA ANTIGUOS (SYNCORA) (CLASE 25)

29.1     **Tratamiento de Reclamaciones de Bonos de Garantía del ELA Antiguos (Syncora):** sujeto a las disposiciones de la Sección 71.3 del presente, en la Vigencia, y en plena contraprestación, satisfacción, liberación e intercambio de su Reclamación de Bonos de Garantía del ELA Antiguos (Syncora) Permitida, cada tenedor de una Reclamación de Bonos de Garantía del ELA Antiguos (Syncora) Permitida tendrá derecho a recibir la Participación a Prorrata de la Recuperación de Bonos de Garantía del ELA Antiguos de tal tenedor.

ARTÍCULO XXX

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA ANTIGUOS (ELECCIÓN IMPONIBLE) (CLASE 26)**

30.1     **Tratamiento de Reclamaciones de Bonos de Garantía del ELA Antiguos (Elección Imponible):** en la Vigencia, cada tenedor de una Reclamación de Bonos de Garantía del ELA Antiguos (Elección Imponible) Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de Garantía del ELA Antiguos (Elección Imponible) Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos de Garantía del ELA Antiguos de tal tenedor, según se modifique por la Participación a Prorrata de la Distribución de Bonos Imponibles Antiguos de tal tenedor.

ARTÍCULO XXXI

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA 2011 (CLASE 27)**

31.1     **Tratamiento de Reclamaciones de Bonos del ELA 2011:** en la Vigencia, y sujeto al derecho de elección establecido en la Sección 31.2 del presente, cada tenedor de una Reclamación de Bonos del ELA 2011 Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA 2011 Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del ELA 2011 de tal tenedor.

31.2     **Derecho de Elección para Reclamaciones de Bonos del ELA 2011 (Elección Imponible):** sin perjuicio de las disposiciones de la Sección 31.1 del Plan, cada tenedor de una Reclamación de Bonos del ELA 2011 Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 34.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Toda elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

ARTÍCULO XXXII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA 2011 DE INVERSIÓN (CLASE 28)**

32.1 **Tratamiento de Reclamaciones de Bonos del ELA 2011 de Inversión**: en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA 2011 de Inversión Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA 2011 de Inversión Permitida de tal tenedor, la Participación a Prorrata de (a) la Recuperación de Bonos del ELA 2011 y (b) la Tasa de Apoyo de Inversión asignable a los tenedores de Reclamaciones de Bonos del ELA 2011 de Inversión Permitidas de tal tenedor; disponiéndose, sin embargo, que, en caso de que la Clase 28 vote para rechazar el Plan a tenor con las disposiciones de la sección 1126 del Código de Quiebras, (y) cada tenedor de una Reclamación de Bonos del ELA de Inversión Permitida tendrá derecho a recibir la Participación a Prorrata de la Recuperación de Bonos del ELA 2011 de tal tenedor y (z) la Tasa de Apoyo de Inversión que de otro modo se asignaría a los tenedores de Reclamaciones de Bonos del ELA 2011 de Inversión Permitidas se reasignará a los Acreedores de la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG y a los Inversores por Cuenta Propia que sean miembros de las Clases que votaron a favor del Plan y se distribuirá a tenor con los términos y disposiciones de la Sección 3.6 del presente.

32.2 **Derecho de Elección para Reclamaciones de Bonos del ELA 2011 de Inversión (Elección Imponible)**: sin perjuicio de las disposiciones de la Sección 32.1 del Plan, cada tenedor de una Reclamación de Bonos de Inversión del ELA 2011 Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 34.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Toda elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

ARTÍCULO XXXIII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA 2011 (ASSURED) (CLASE 29)**

33.1 **Tratamiento de Reclamaciones de Bonos del ELA 2011 (Assured)**: sujeto a las disposiciones de la Sección 71.1 del presente, en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA 2011 (Assured) Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA 2011 (Assured) Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del ELA 2011 de tal tenedor.

ARTÍCULO XXXIV

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA 2011 (ELECCIÓN IMPONIBLE) (CLASE 30)

34.1 **Tratamiento de Reclamaciones de Bonos del ELA 2011 (Elección Imponible):** en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA 2011 (Elección Imponible) Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA 2011 (Elección Imponible) Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del ELA 2011 de tal tenedor, según se modifique por la Participación a Prorrata en la Distribución de Bonos Imponibles del ELA 2011 de tal tenedor.

ARTÍCULO XXXV

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA 2011 (CLASE 31)

35.1 **Tratamiento de Reclamaciones de Bonos de Garantía del ELA 2011:** en la Vigencia, y sujeto al derecho de elección establecido en la Sección 35.2 del presente, cada tenedor de una Reclamación de Bonos de Garantía del ELA 2011 Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de Garantía del ELA 2011 Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos de Garantía del ELA 2011 de tal tenedor.

35.2 **Derecho de Elección para Reclamaciones de Bonos de Garantía del ELA 2011 (Elección Imponible):** sin perjuicio de las disposiciones de la Sección 35.1 del Plan, cada tenedor de una Reclamación de Bonos de Garantía del ELA 2011 Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 36.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Toda elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

ARTÍCULO XXXVI

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA 2011 (ELECCIÓN IMPONIBLE) (CLASE 32)**

36.1 **Tratamiento de Reclamaciones de Bonos de Garantía del ELA 2011 (Elección Imponible)**: en la Vigencia, cada tenedor de una Reclamación de Bonos de Garantía del ELA 2011 (Elección Imponible) Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de Garantía del ELA 2011 (Elección Imponible) Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos de Garantía del ELA 2011 de tal tenedor, según se modifique por la Participación a Prorrata de la Distribución de Bonos de Garantía Imponibles del ELA 2011 de tal tenedor.

ARTÍCULO XXXVII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS SERIE D/E/PIB DEL ELA 2011 (CLASE 33)**

37.1 **Tratamiento de Reclamaciones de Bonos Serie D/E/PIB del ELA 2011**: en la Vigencia, y sujeto al derecho de elección establecido en la Sección 37.2 del presente, cada tenedor de una Reclamación de Bonos Serie D/E/PIB del ELA 2011 Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos Serie D/E/PIB del ELA 2011 Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos Serie D/E/PIB del ELA 2011 de tal tenedor.

37.2 **Derecho de Elección para Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 (Elección Imponible)**: sin perjuicio de las disposiciones de la Sección 37.1 del Plan, cada tenedor de una Reclamación de Bonos Serie D/E/PIB del ELA 2011 Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 40.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Toda elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

ARTÍCULO XXXVIII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS SERIE D/E/PIB DEL ELA 2011 (ASSURED) (CLASE 34)**

38.1     **Tratamiento de Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 (Assured)**: sujeto a las disposiciones de la Sección 71.1 del presente, en la Vigencia, cada tenedor de una Reclamación de Bonos Serie D/E/PIB del ELA 2011 (Assured) Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos Serie D/E/PIB del ELA 2011 (Assured) Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos Serie D/E/PIB del ELA 2011 de tal tenedor.

ARTÍCULO XXXIX

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS SERIE D/E/PIB DEL ELA 2011 DE INVERSIÓN (CLASE 35)**

39.1     **Tratamiento de Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 de Inversión**: en la Vigencia, cada tenedor de una Reclamación de Bonos Serie D/E/PIB del ELA 2011 de Inversión Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos Serie D/E/PIB del ELA 2011 de Inversión Permitida de tal tenedor, la Participación a Prorrata de (a) la Recuperación de Bonos Serie D/E/PIB del ELA 2011 y (b) la Tasa de Apoyo de Inversión asignable a los tenedores de Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 de Inversión Permitidas de tal tenedor; disponiéndose, sin embargo, que, en el caso de que la Clase 35 vote para rechazar el Plan a tenor con las disposiciones de la sección 1126 del Código de Quiebras, (y) cada tenedor de una Reclamación de Bonos Serie D/E/PIB del ELA de Inversión Permitida tendrá derecho a recibir la Participación a Prorrata de la Recuperación de Bonos Serie D/E/PIB del ELA 2011 de tal tenedor y (z) la Tasa de Apoyo de Inversión que de otro modo se asignaría a los tenedores de Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 de Inversión Permitidas se reasignará a los Acreedores de la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG y a los Inversores por Cuenta Propia que sean miembros de las Clases que votaron a favor del Plan y se distribuirá a tenor con los términos y disposiciones de la Sección 3.6 del presente.

39.2     **Derecho de Elección para Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 de Inversión (Elección Imponible)**: sin perjuicio de las disposiciones de la Sección 39.1 del Plan, cada tenedor de una Reclamación de Bonos Serie D/E/PIB del ELA 2011 de Inversión Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 40.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Toda elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

## ARTÍCULO XL

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS SERIE D/E/PIB DEL ELA 2011 (ELECCIÓN IMPONIBLE) (CLASE 36)

40.1     **Tratamiento de Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 (Elección Imponible):** en la Vigencia, cada tenedor de una Reclamación de Bonos Serie D/E/PIB del ELA 2011 (Elección Imponible) Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos Serie D/E/PIB del ELA 2011 (Elección Imponible) Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos Serie D/E/PIB del ELA 2011 de tal tenedor, según se modifique por la Participación a Prorrata de la Distribución de Bonos Imponibles Serie D/E/PIB del ELA 2011 de tal tenedor.

## ARTÍCULO XLI

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA 2012 (CLASE 37)

41.1     **Tratamiento de Reclamaciones de Bonos del ELA 2012:** en la Vigencia, y sujeto al derecho de elección establecido en la Sección 41.2 del presente, cada tenedor de una Reclamación de Bonos del ELA 2012 Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA 2012 Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del ELA 2012 de tal tenedor.

41.2 **Derecho de Elección para Reclamaciones de Bonos del ELA 2012 (Elección Imponible):** sin perjuicio de las disposiciones de la Sección 41.1 del Plan, cada tenedor de una Reclamación de Bonos del ELA 2012 Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 41.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Toda elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

ARTÍCULO XLII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA 2012 DE INVERSIÓN (CLASE 38)**

41.1 **Tratamiento de Reclamaciones de Bonos del ELA 2012 de Inversión:** en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA 2012 de Inversión Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA 2012 de Inversión Permitida de tal tenedor, la Participación a Prorrata de (a) la Recuperación de Bonos del ELA 2012 y (b) la Tasa de Apoyo de Inversión asignable a los tenedores de Reclamaciones de Bonos del ELA 2012 de Inversión Permitidas de tal tenedor; disponiéndose, sin embargo, que, en caso de que la Clase 38 vote para rechazar el Plan a tenor con las disposiciones de la sección 1126 del Código de Quiebras, (y) cada tenedor de una Reclamación de Bonos del ELA de Inversión Permitida tendrá derecho a recibir la Participación a Prorrata de la Recuperación de Bonos del ELA 2012 de tal tenedor y (z) la Tasa de Apoyo de Inversión que de otro modo se asignaría a los tenedores de Reclamaciones de Bonos del ELA 2012 de Inversión Permitidas se reasignará a los Acreedores de la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG y a los Inversores por Cuenta Propia que sean miembros de las Clases que votaron a favor del Plan y se distribuirá a tenor con los términos y disposiciones de la Sección 3.6 del presente.

42.2 **Derecho de Elección para Reclamaciones de Bonos del ELA 2012 de Inversión (Elección Imponible):** sin perjuicio de las disposiciones de la Sección 42.1 del Plan, cada tenedor de una Reclamación de Bonos del ELA 2012 de Inversión Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 44.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Toda elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

ARTÍCULO XLIII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA 2012 (ASSURED) (CLASE 39)**

43.1 **Tratamiento de Reclamaciones de Bonos del ELA 2012 (Assured):** sujeto a las disposiciones de la Sección 71.1 del presente, en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA 2012 (Assured) Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA 2012 (Assured) Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del ELA 2012 de tal tenedor.

ARTÍCULO XLIV

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA 2012 (ELECCIÓN IMPONIBLE) (CLASE 40)**

44.1 **Disposiciones para el Tratamiento de Reclamaciones de Bonos del ELA 2012 (Elección Imponible):** en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA 2012 (Elección Imponible) Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA 2012 (Elección Imponible) Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del ELA 2012 de tal tenedor, según se modifique por su Participación Prorrata de la Distribución de Bonos Imponibles del ELA 2012.

ARTÍCULO XLV

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA 2012 (CLASE 41)**

45.1     **Tratamiento de Reclamaciones de Bonos de Garantía del ELA 2012:** en la Vigencia, y sujeto al derecho de elección establecido en la Sección 45.2 del presente, cada tenedor de una Reclamación de Bonos de Garantía del ELA 2012 Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de Garantía del ELA 2012 Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos de Garantía del ELA 2012 de tal tenedor.

45.2     **Derecho de Elección para Reclamaciones de Bonos de Garantía del ELA 2012 (Elección Imponible):** sin perjuicio de las disposiciones de la Sección 45.1 del Plan, cada tenedor de una Reclamación de Bonos de Garantía del ELA 2012 Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 46.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Toda elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

ARTÍCULO XLVI

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA 2012 (ELECCIÓN IMPONIBLE) (CLASE 42)**

46.1     **Tratamiento de Reclamaciones de Bonos de Garantía del ELA 2012 (Elección Imponible):** en la Vigencia, cada tenedor de una Reclamación de Bonos de Garantía del ELA 2012 (Elección Imponible) Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de Garantía del ELA 2012 (Elección Imponible) Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos de Garantía del ELA 2012 de tal tenedor, según se modifique por la Participación a Prorrata de la Distribución de Bonos de Garantía Imponibles del ELA 2012 de tal tenedor.

ARTÍCULO XLVII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA 2014 (CLASE 43)**

47.1     **Tratamiento de Reclamaciones de Bonos del ELA 2014:** en la Vigencia, y sujeto al derecho de elección establecido en la Sección 47.2 del presente, cada tenedor de una Reclamación de Bonos del ELA 2014 Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA 2014 Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del ELA 2014 de tal tenedor.

47.2     **Derecho de Elección para Reclamaciones de Bonos del ELA 2014 (Elección Imponible):** sin perjuicio de las disposiciones de la Sección 47.1 del Plan, cada tenedor de una Reclamación de Bonos del ELA 2014 Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 49.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Toda elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

ARTÍCULO XLVIII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA 2014 DE INVERSIÓN (CLASE 44)**

48.1     **Tratamiento de Reclamaciones de Bonos 2014 de Inversión:** en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA 2014 de Inversión Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA 2014 de Inversión Permitida de tal tenedor, la Participación a Prorrata de (a) la Recuperación de Bonos del ELA 2014 y (b) la Tasa de Apoyo de Inversión asignable a los tenedores de Reclamaciones de Bonos del ELA 2014 de Inversión Permitidas de tal tenedor; disponiéndose, sin embargo, que, en caso de que la Clase 44 vote para rechazar el Plan a tenor con las disposiciones de la sección 1126 del Código de Quiebras, (y) cada tenedor de una Reclamación de Bonos del ELA de Inversión Permitida tendrá derecho a recibir la Participación a Prorrata de la Recuperación de Bonos del ELA 2014 de tal tenedor y (z) la Tasa de Apoyo de Inversión que de otro modo se asignaría a los tenedores de Reclamaciones de Bonos del ELA 2014 de Inversión Permitidas se reasignará a los Acreedores de la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG y a los Inversores por Cuenta Propia que sean miembros de las Clases que votaron a favor del Plan y se distribuirá a tenor con los términos y disposiciones de la Sección 3.6 del presente.

48.2        **Derecho de Elección para Reclamaciones de Bonos del ELA 2014 de Inversión (Elección Imponible):** sin perjuicio de las disposiciones de la Sección 48.1 del Plan, cada tenedor de una Reclamación de Bonos del ELA 2014 de Inversión Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 49.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Toda elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

## ARTÍCULO XLIX

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL ELA 2014 (ELECCIÓN IMPONIBLE) (CLASE 45)

49.1        **Disposiciones para el Tratamiento de Reclamaciones de Bonos del ELA 2014 (Elección Imponible):** en la Vigencia, cada tenedor de una Reclamación de Bonos del ELA 2014 (Elección Imponible) Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del ELA 2014 (Elección Imponible) Permitida de tal tenedor, la Participación a Prorrata en la Recuperación de Bonos del ELA 2014 de tal tenedor, según se modifique por la Participación a Prorrata de la Distribución de Bonos Imponibles del ELA 2014 de tal tenedor.

## ARTÍCULO L

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA 2014 (CLASE 46)

50.1        Tratamiento de Reclamaciones de Bonos de Garantía del ELA 2014: en la Vigencia, y sujeto al derecho de elección establecido en la Sección 50.2 del presente, cada tenedor de una Reclamación de Bonos de Garantía del ELA 2014 Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de Garantía del ELA 2014 Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del ELA 2014 de tal tenedor.

50.2 **Derecho de Elección para Reclamaciones de Bonos de Garantía del ELA 2014 (Elección Imponible):** sin perjuicio de las disposiciones de la Sección 50.1 del Plan, cada tenedor de una Reclamación de Bonos del ELA 2014 Permitida que sea un inversor de Puerto Rico tendrá derecho, a elección de ese tenedor, a optar por recibir distribuciones a tenor con los términos y disposiciones de las Secciones 51.1 y 73.1 del presente. Tal elección deberá realizarse en la Papeleta/Formulario de Elección, ser recibida por la Junta de Supervisión, o por su delegado, en la Fecha de Votación o antes de ella y, de optarse, será considerada aceptación del Plan por parte de tal tenedor. Toda elección realizada después de la Fecha de Votación no será vinculante para el ELA, a menos que la Junta de Supervisión renuncie expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia la Junta de Supervisión pueda renunciar a ella en la Vigencia o después de esta.

## ARTÍCULO LI

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE GARANTÍA DEL ELA 2014 (ELECCIÓN IMPONIBLE) (CLASE 47)

51.1 **Tratamiento de Reclamaciones de Bonos de Garantía del ELA 2014 (Elección Imponible):** en la Vigencia, cada tenedor de una Reclamación de Bonos de Garantía del ELA 2014 (Elección Imponible) Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de Garantía del ELA 2014 (Elección Imponible) Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos de Garantía del ELA 2014 de tal tenedor, según se modifique por la Participación a Prorrata de la Distribución de Bonos de Garantía Imponibles del ELA 2014 de tal tenedor.

## ARTÍCULO LII

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BENEFICIOS DE RETIRO DE EMPLEADOS ACTIVOS Y RETIRADOS (CLASE 48A A 48E)

52.1 **Tratamiento de Reclamaciones de Pensionados (Clase 48A)**:

(a) Ajuste de Beneficios. Cada tenedor de una Reclamación de Pensionado Permitida tendrá derecho a recibir a causa de tal Reclamación de Pensionado Permitida sus beneficios modificados a tenor con la Modificación Mensual de Beneficios, lo que incluye, de manera no taxativa, la eliminación de cualquier ajuste por costo de vida, sujeto a la Recuperación de Beneficios.

(b) Invalidación. Todas las disposiciones de la Constitución del ELA, los estatutos, las órdenes ejecutivas, las normas, los reglamentos y las políticas del ELA vigentes a la Fecha de Confirmación que creen, exijan o hagan cumplir la pensión de los empleados y otros beneficios que se modifiquen y/o conserven total o parcialmente en el presente, en la medida en que sean incompatibles con el tratamiento de las

Reclamaciones de Pensionados Permitidas según el presente, se consideran inválidas al ser incompatibles con PROMESA.

52.2    **Tratamiento de Reclamaciones de Participantes del SRE Activos (Clase 48B)**:

(a)    Ajuste de Beneficios: cada tenedor de una Reclamación de Participantes del SRE Activos Permitida tendrá derecho a recibir a causa de tal Reclamación de Participantes del SRE Activos Permitida sus beneficios modificados a tenor con la Modificación Mensual de Beneficios, lo que incluye, de manera no taxativa, la eliminación de cualquier ajuste por costo de vida, sujeto a la Recuperación de Beneficios, disponiéndose, sin embargo, que, sin perjuicio de lo que antecede, Reclamaciones de Participantes del SRE Activos de Participantes del SRE Activos contratadas antes del 1 de enero de 2000, pero que se acumuló después del 1 de enero de 2013 a tenor con la Ley 3-2013, no será sujeto de reducción de acuerdo con el Plan. Los Beneficios que se acumulen después de 1 de enero de 2013 a tenor con la Ley 3-2013 para Participantes del SRE Activos contratados antes del 1 de enero de 2000 incluirán el valor de aportación acumulado total hasta la Fecha de Petición de la ELA, pero sin incluirla.

(b)    Invalidación: todas las disposiciones de la Constitución del ELA, los estatutos, las órdenes ejecutivas, las normas, los reglamentos y las políticas del ELA vigentes a la Fecha de Confirmación que creen, exijan o hagan cumplir la pensión de los empleados y otros beneficios que se modifiquen y/o conserven total o parcialmente en el presente, en la medida en que sean incompatibles con el tratamiento de las Reclamaciones de Participantes del SRE Activos Permitidas según el presente, se consideran inválidas al ser incompatibles con PROMESA.

(c)    Deducciones salariales: como contraprestación adicional para asegurar las futuras aportaciones y beneficios del participante activo, un empleado activo que esté trabajando para el gobierno central del ELA, las deducciones salariales para aportaciones a las cuentas individuales de un participante según la Ley 106 serán depositadas en tales cuentas tan pronto como sea razonablemente posible, pero en ningún caso después del decimoquinto (15º) día del mes posterior al mes al cual se dedujeron las aportaciones de tal distribución salarial del participante.

52.3    **Tratamiento de Reclamaciones de Participantes del SRJ Activos (Clase 48C)**:

(a)    Ajuste de Beneficios. Cada tenedor de una Reclamación de Participantes del SRJ Permitida tendrá derecho a recibir, a causa de dicha Reclamación de Participantes del SRJ Activos Permitida (i) sus beneficios acumulados al 3 de mayo de 2017, modificados a tenor con la Modificación de Beneficios Mensual y los términos establecidos en el Anexo «E» adjunto al presente, lo que incluye, de manera no taxativa, la eliminación de cualquier ajuste por costo de vida, sujeto a la Recuperación de Beneficios y (ii) los beneficios adicionales por servicios a partir del 4 de mayo de 2017, bloqueados a la fecha establecida en el pliego de términos adjunto como Anexo «E» al presente, según corresponda, a tal tenedor de una Reclamación de Participantes del SRJ Activos Permitida, lo que incluye los beneficios de Seguro Social definidos allí.

(b)        Rechazo: para efectuar el congelamiento de los derechos contractuales de Participantes del SRJ Activos para acumular beneficios de pensión según la legislación de Puerto Rico según se establece en el Anexo «E» del presente, las obligaciones contractuales del ELA para acumular tales beneficios se considerarán rechazados a tenor con la sección 365(a) del Código de Quiebras.

(c)        Invalidación. Todas las disposiciones de la Constitución del ELA, los estatutos, las órdenes ejecutivas, las normas, los reglamentos y las políticas del ELA vigentes a la Fecha de Confirmación que creen, exijan o hagan cumplir la pensión de los empleados y otros beneficios que se modifiquen y/o conserven total o parcialmente en el presente, en la medida en que sean incompatibles con el tratamiento de las Reclamaciones de Participantes del SRJ Activos Permitidas según el presente, se consideran inválidas al ser incompatibles con PROMESA.

52.4        **Tratamiento de Reclamaciones de Participantes del SRM Activos (Clase 48D)**:

(a)        Ajuste de Beneficios. Cada tenedor de una Reclamación de Participantes del SRM Activos Permitida tendrá derecho a recibir, a causa de tal Reclamación de Participantes del SRM Activos Permitida (i) sus beneficios acumulados al 3 de mayo de 2017, modificados a tenor con la Modificación de Beneficios Mensual y los términos establecidos en el Anexo «F» adjunto al presente, lo que incluye, de manera no taxativa, la eliminación de cualquier ajuste por costo de vida, sujeto a la Recuperación de Beneficios y (ii) los beneficios adicionales por servicios a partir del 4 de mayo de 2017, bloqueados a la Vigencia establecida en el pliego de términos adjunto como Anexo «F» al presente, según corresponda, a tal tenedor de una Reclamación de Participantes del SRM Activos Permitida, lo que incluye los beneficios de Seguro Social definidos allí.

(b)        Rechazo. Para efectuar el congelamiento de los derechos contractuales de Participantes del SRM Activos para acumular beneficios de pensión según la legislación de Puerto Rico según se establece en el Anexo «F» del presente, las obligaciones contractuales del ELA para acumular tales beneficios se considerarán rechazadas a tenor con la sección 365(a) del Código de Quiebras.

(c)        Invalidación. Todas las disposiciones de la Constitución del ELA, los estatutos, las órdenes ejecutivas, las normas, los reglamentos y las políticas del ELA vigentes a la Fecha de Confirmación que creen, exijan o hagan cumplir la pensión de los empleados y otros beneficios que se modifiquen y/o conserven total o parcialmente en el presente, en la medida en que sean incompatibles con el tratamiento de las Reclamaciones de Participantes del SRM Activos Permitidas según el presente, se consideran inválidas al ser incompatibles con PROMESA.

52.5     **Tratamiento de Reclamaciones de Participantes del Sistema 2000 (Clase 48E)**:

(a)     Beneficios del Sistema 2000: salvo por lo dispuesto en las Secciones 52.2(b), 52.3(b) y 52.4(b) del presente, los tenedores de Reclamaciones de Participantes del Sistema 2000 Permitidas recibirán el monto de sus aportaciones a esos planes desde el 2000 hasta el 30 de junio de 2017, más los intereses devengados sobre estas a tenor con la ley aplicable para el período hasta la Fecha de Petición del ELA, no inclusive, cuyo monto se depositará en las cuentas de aportación definidas establecidas en virtud de la Ley 106, y el administrador del plan de aportación definido de la Ley 106 determinará que todos los depósitos sean invertidos a fondos a la fecha de jubilación objetivo aplicable a cada participantes salvo que cualquiera de tales participantes haya elegido de manera afirmativa otras opciones de inversión. Si el monto total de las aportaciones, más los intereses devengados a partir de estos según lo descrito anteriormente, es inferior o igual a mil quinientos millones de dólares ($ 1,500,000,000.00), en la Vigencia, cada tenedor de una Reclamación de Participantes del Sistema 2000 Permitida recibirá la Participación a Prorrata de tal monto acumulado de tal tenedor. Si el monto total de las aportaciones descrito en el presente Sección 52.5(a), más los intereses devengados a partir de estos según lo descrito anteriormente, supera los mil quinientos millones de dólares ($ 1,500,000,000.00), la Junta de Supervisión y AFSCME elaborarán un plan de pagos mutuamente aceptable para ambas partes a fin de pagar el saldo restante de las aportaciones (para evitar dudas, la suma que exceda a mil quinientos millones de dólares ($ 1,500,000,000.00)) que se describe en la presente Sección 52.5(a). En todo caso, el monto total de las aportaciones descritas en la presente Sección 52.5(a) se abonará a todos los tenedores de Reclamaciones de Participantes del Sistema 2000 Permitidas a más tardar el 31 de diciembre de 2025. A partir de la Vigencia, los tenedores de Reclamaciones de Participantes del Sistema 2000 Permitidas con aportaciones del Sistema 2000 desde el 2000 hasta el 30 de junio de 2017 que no reúnan las condiciones para recibir beneficios en virtud de la Ley 1 y la Ley 447 ya no tendrán derecho a beneficios futuros administrados por el sistema, tal como los beneficios por muerte o discapacidad. Los tenedores de Reclamaciones de Participantes del Sistema 2000 Permitidas que ya hayan retirado y convertido sus aportaciones a una anualidad paga en el sistema no tendrán derecho al tratamiento descrito en la presente Sección 52.5(a) y no recibirán un pago en efectivo, sino que estarán sujetos a la reducción de pensiones aplicable a otros Participantes a tenor con los términos y disposiciones de la Sección 52.1 del Plan.

(b)     Invalidación: todas las disposiciones de la Constitución del ELA, los estatutos, las órdenes ejecutivas, las normas, los reglamentos y las políticas del ELA vigentes a la Fecha de Confirmación que creen, exijan o hagan cumplir la pensión de los empleados y otros beneficios que se modifiquen y/o conserven total o parcialmente en el presente, en la medida en que sean incompatibles con el tratamiento proporcionado a tenor con la Sección 52.5(a) del presente, se consideran inválidas al ser incompatibles con PROMESA.

(c)     Deducciones salariales: como contraprestación adicional para asegurar las futuras aportaciones y beneficios del participante activo, un empleado activo que esté trabajando para el gobierno central del ELA, las deducciones salariales para

143

aportaciones a las cuentas individuales de un participante según la Ley 106 serán depositadas en tales cuentas tan pronto como sea razonablemente posible, pero en ningún caso después del decimoquinto (15º) día del mes posterior al mes al cual se depositaron las aportaciones de tal distribución salarial del participante.

ARTÍCULO LIII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DE EMPLEADOS DE AFSCME (CLASE 49)**

53.1     **Tratamiento de Reclamaciones de Empleados de la AFSCME**:

(a)     Contratos de Negociación Colectiva de AFSCME Modificados. Los contratos de negociación colectiva entre el ELA, sus agencias e instrumentalidades correspondientes, por una parte, y AFSCME y sus filiales sindicales, por otra parte, se considerarán rechazados a tenor con la sección 365 del Código de Quiebras y serán sustituidos por contratos de negociación colectiva modificados que se concertarán a tenor con los términos y condiciones acordados por AFSCME y la Junta de Supervisión, según se establece en el Anexo «G» adjunto al presente. Sin limitar lo que precede, tales modificaciones incluirán, entre otras cosas (a) un plazo de cinco (5) años, contados a partir de la Vigencia, (b) disposiciones relativas a los despidos y la reducción de personal, (c) términos relativos al Sistema 2000 y (d) disposiciones para compartir el Excedente en Caja. Cada tenedor de una Reclamación de Empleados de AFSCME Permitida tendrá derecho a recibir el tratamiento establecido en las Secciones 53.1(a), (b), (c) y (d) del presente, en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Empleados de AFSCME de tal tenedor que resulte de tal rechazo. El ELA no tendrá obligación de negociar con AFSCME sobre los términos de un contrato de negociación colectiva nuevo o modificado a lo largo del período de tales contratos de negociación colectiva modificados y la falta de negociación durante ese período no constituirá, ni se interpretará como, una práctica laboral injusta a tenor con ninguna ley de Puerto Rico. Ningún foro judicial tendrá en cuenta las prácticas anteriores o el historial de negociación al interpretar los términos de los contratos de negociación colectiva modificados establecidos en el Anexo «G» adjunto al presente.

(b)     Distribución Adicional de AFSCME. En o tan pronto como sea razonablemente posible después de la Vigencia, AFSCME y sus empleados miembros, según corresponda, recibirán los pagos y distribuciones adicionales establecidos en el Apéndice II del Anexo «G» adjunto al presente.

(c)     Arbitraje pre-Solicitud y Reclamación de Recurso. Cualquier distribución a causa de Reclamaciones por montos de daños y perjuicios liquidados que resultan de la disposición de acciones previas a la solicitud presentadas a tenor con los procedimientos de arbitraje y recursos que surjan de los contratos de negociación colectiva entre el ELA y AFSCME serán presentadas por el ELA al demandante en cada caso en la fecha posterior de (i) treinta (30) días después de tal disposición y (ii) sesenta (60) días después de la Vigencia.

144

(d) Invalidación. Todas las disposiciones de la Constitución del ELA, los estatutos, las órdenes ejecutivas, las normas, los reglamentos y las políticas del ELA vigentes a la Fecha de Confirmación que creen, exijan o hagan cumplir la pensión de los empleados y otros beneficios que se modifiquen en el presente, en la medida en que sean incompatibles con el tratamiento proporcionado en la presente Sección 53.1, se consideran inválidas al ser incompatibles con PROMESA y no tendrán validez ni vigencia alguna.

## ARTÍCULO LIV

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE PRODUCTORES DE LÁCTEOS (CLASE 50)

54.1 **Tratamiento de Reclamaciones de Productores Lácteos:** en la Vigencia, cada tenedor de una Reclamación de Productores Lácteos tiene derecho a recibir, en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Productores Lácteos Permitidas de tal tenedor, un monto igual al cincuenta por ciento (50 %) de tal Reclamación de Productores Lácteos Permitida, con tal monto pagadero al ELA en cinco (5) cuotas iguales comenzando en la Vigencia y cada pago posterior a este realizado el 1 de julio de cada año fiscal.

## ARTÍCULO LV

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE EXPROPIACIÓN DEL ELA (CLASE 51)

55.1 **Tratamiento de Reclamaciones de Expropiación:** a partir de la Vigencia, (a) en la medida en que no se haya modificado antes de esta, la paralización automática existente a tenor con la sección 362 del Código de Quiebras se considerará modificada para permitir que el tenedor de una Reclamación de Expropiación (i) liquide tal Reclamación de Expropiación en el Procedimiento de Expropiación de tal tenedor y (ii) instruya al Actuario del Tribunal de Primera Instancia que distribuya a tal tenedor el monto de dinero en depósito con el Tribunal de Primera Instancia con respecto a la propiedad decomisada y (b) el tenedor de una Reclamación de Expropiación Permitida tendrá derecho a recibir, en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Expropiación Permitida de tal tenedor, la Acción a Prorrata de tal tenedor del Recuperación de GUC del ELA.

ARTÍCULO LVI

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES
DE INCENTIVO DE ENERGÍA (CLASE 52)**

56.1     **Tratamiento de Reclamaciones de Incentivos de Energía:** a partir de la
Vigencia, (a) el ELA (i) continuará con el programa de incentivo de energía establecido
en la Ley de Incentivos de Energía y (ii) en conexión con esta, asumirá Reclamaciones
de Incentivos de Energía Permitidas y los instrumentos y acuerdos de reserva que existan
a partir de la Vigencia y coherente con los términos de la Ley de Incentivos de Energía y
(b) en la medida que los proyectos respectivos se completaron de acuerdo con la Ley de
Incentivos de Energía y los términos y disposiciones de los instrumentos y acuerdos de
reserva celebrados en conexión con estos, se permitirá que los tenedores de Reclamaciones
de Incentivos de Energía Permitidas ejerzan y reclamen los incentivos fiscales creados
según esto.

ARTÍCULO LVII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES
DE CENTROS MÉDICOS (CLASE 53)**

57.1     **Tratamiento de Reclamaciones de Centros Médicos:** a la Vigencia,
y siempre que la Clase 53 vote para aceptar el Plan de acuerdo con las disposiciones
de la sección 1126 del Código de Quiebras, cada tenedor de una Reclamación de Centros
Médicos (a) recibirá una Reclamación de Centros Médicos Permitida en el monto
establecido en la Columna «A» del Anexo «H» del presente y (b) tendrá derecho a recibir,
en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de
Centros Médicos Permitida de tal tenedor, un monto igual al cincuenta por ciento (50 %)
de tal Reclamación de Centros Médicos Permitida; disponiéndose, sin embargo, que en el
caso de la Clase 53 vote para rechazar el Plan de acuerdo con las disposiciones de la
sección 1126 del Código de Quiebras, cada tenedor de una Reclamación de Centros
Médicos Permitida recibirá una Reclamación de Centros Médicos Permitida en el monto
establecido en la Columna «B» establecida en el Anexo «H» del presente, siendo tal monto
pagadero por el ELA en cinco (5) cuotas iguales que comenzarán en la Vigencia y cada
pago posterior de estas se realizará el 1 de julio de cada año fiscal.

57.2     **Desestimación de Litigio de Centros Médicos:** en la Vigencia, el Litigio
de Centros Médicos se considerará desestimado, con perjuicio, y cada uno del ELA y los
Centros Médicos respectivos tomaran las medidas necesarias para notificar al tribunal
aplicable tal desestimación, lo que incluye, de manera no taxativa, en los diez (10) Días
Hábiles a partir de la Vigencia, presentar notificaciones con el actuario de tal tribunal
estableciendo la resolución del Litigio de Centros Médicos y la desestimación de este con
perjuicio.

ARTÍCULO LVIII

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE CRÉDITOS FISCALES (CLASE 54)

58.1     **Tratamiento de Reclamaciones de Crédito Fiscal**: a partir de la Vigencia, el ELA asumirá las Reclamaciones de Crédito Fiscal Permitidas y los instrumentos y acuerdos que existan a la Vigencia con respecto a estos y se permitirá que los tenedores de Reclamaciones de Crédito Fiscal Permitidas ejerzan y reclamen los beneficios fiscales y derechos con respecto a estos de acuerdo con los términos y disposiciones de tales documentos, instrumentos y ley aplicable.

ARTÍCULO LIX

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES NO GARANTIZADAS GENERALES DEL ELA (CLASE 55)

59.1     **Tratamiento de Reclamaciones no Garantizadas Generales del ELA**:

(a)     Tratamiento de Reclamaciones no Garantizadas Generales del ELA. Sujeto a la elección establecido en la Sección 59.1(b) del presente, en la Vigencia, cada tenedor de una Reclamación de Bonos no Garantizada General del ELA Permitida tendrá derecho a recibir, en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos no Garantizada General del ELA Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de GUC del ELA de tal tenedor.

(b)     Opción de tratarse como Reclamación de Conveniencia. Sin perjuicio de las disposiciones de la Sección 59.1(a) del Plan, todo tenedor de una Reclamación de Bonos no Garantizada General del ELA Permitida, que no sea una Reclamación de Bonos no Garantizada General del ELA que sea un componente de una Reclamación de Bonos no Garantizada General del ELA mayor, cuyas partes puedan estar en poder de dicho tenedor o de cualquier otro tenedor de una Reclamación Permitida, podrá optar por ser tratado como tenedor de una Reclamación Permitida de Conveniencia. Esa elección debe realizarse por Papeleta y ser recibida por los Deudores en o antes de la Fecha de Votación. Cualquier elección realizada después de la Fecha de Votación no será vinculante para los Deudores a menos que los Deudores renuncien expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia los Deudores podrán renunciar a ella en la Vigencia o después de esta.

59.2     **Limitación de Recuperación:** sin perjuicio de lo dispuesto en el presente en sentido contrario, en el caso de que se hayan pagado íntegramente las Reclamaciones no Garantizadas Generales del ELA Permitidas, entonces ese valor excedente se redistribuirá, a prorrata, en beneficio de los tenedores de las Reclamaciones de Expropiación Permitidas, las Reclamaciones del Centro de Convenciones/ELA Permitidas, las Reclamaciones de la ACT/ELA Permitidas, la Reclamación de Impuesto de Ron de la AFI/ELA Permitida y las Reclamaciones de la AMA/ELA Permitidas.

ARTÍCULO LX

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES
DE LA ACT/ELA (CLASE 56)**

60.1     **Tratamiento de Reclamaciones de la ACT/ELA:** en la Vigencia, y sujeto a la satisfacción de las Condiciones de Distribución, cada tenedor de una Reclamación de la ACT/ELA Permitida tendrá derecho a recibir, en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de la ACT/ELA Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Recuperación de la ACT/ELA; disponiéndose, sin embargo, que, tras el cumplimiento de las Condiciones de Distribución, Assured y National reciban sus respectivas acciones de la Recuperación de Recuperación de la ACT/ELA a causa de las Reclamaciones de Bonos de la ACT/ELA de Assured y de las Reclamaciones de Bonos de la ACT/ELA de National, respectivamente.

60.2     **Distribución de la Recuperación de Recuperación de la ACT/ELA**: sin perjuicio del contenido en el Plan en sentido contrario, tras el cumplimiento de las Condiciones de Distribución, el Estado Libre Asociado realizará las acciones necesarias para distribuir la Recuperación de Recuperación de la ACT/ELA a los tenedores de Reclamaciones de la ACT/ELA Permitidas (incluidas las Monolíneas) y realizará pagos a su cuenta conforme a los términos y disposiciones del Plan, el Contrato de Emisión de CVI de Recuperación y la Cascada de Distribución de Prioridad de CVI de Recuperación de la ACT que figura en el Anexo «J» adjunto; disponiéndose, sin embargo, que, hasta la recepción de la Determinación de la Prioridad de Préstamos del BGF, (a) el Efectivo pagadero con respecto al CVI de Recuperación de la ACT y asignable a los Bonos de la ACT 98 estará sujeto a la Reserva de Pago del CVI, y (b) la Recuperación de Recuperación de la ACT/ELA que de otra manera se pudiera asignar a los tenedores de Reclamaciones de la ACT/ELA Permitidas relacionadas con los Préstamos a la ACT del BGF no se distribuirá a los tenedores de los Préstamos a la ACT del BGF; y, disponiéndose, además, que, tras la recepción de la Determinación de la Prioridad de Préstamos del BGF, los fondos de la Reserva de Pagos del CVI y cualquier Recuperación de Recuperación de la ACT/ELA no distribuida serán liberados a los tenedores de Bonos de la ACT y Préstamos a la ACT del BGF, según sea el caso, basado en (y) como entre tenedores de Bonos de la ACT 98 y tenedores de Préstamos a la ACT del BGF, los términos de dicha Determinación de Prioridad de Préstamos del BGF y (z) entre tenedores de Bonos de la ACT 68 y tenedores de Bonos de la ACT 98, el artículo Cascada de Distribución de Prioridad de CVI de Recuperación de la ACT establecido en el Anexo «J» adjunto. Sin perjuicio de lo anterior, el CVI de Recuperación de la ACT que se emitirá y distribuirá conforme a este Artículo LX y cualquier pago que se haga en virtud de este se celebrará en una reserva o fideicomiso, cuya forma y contenido serán razonablemente aceptables para Assured y National, hasta e incluida la fecha en que se cumplan las Condiciones de Distribución y, en el caso de que el Acuerdo de Apoyo al Plan de la ACT/ADCC sea rescindido por la Junta de Supervisión, Assured y/o National, el CVI de Recuperación de la ACT y cualquier distribución por su cuenta serán liberadas de dicha reserva o fideicomiso, según sea el caso, y distribuido a los acreedores conforme a los términos establecidos en el Anexo «J» adjunto.

ARTÍCULO LXI

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES
DEL CENTRO DE CONVENCIONES/ELA (CLASE 57)**

61.1      **Tratamiento de Reclamaciones del Centro de Convenciones/ELA:** sujeto a los términos y disposiciones de la Sección 71.1 del presente, en la Vigencia, cada tenedor de una Reclamación del Centro de Convenciones/ELA Permitida tendrá derecho a recibir, en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del Centro de Convenciones/ELA Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Recuperación del Centro de Convenciones/ELA de tal tenedor.

ARTÍCULO LXII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DEL
IMPUESTO DE RON DE LA AFI/ELA (CLASE 58)**

62.1      **Tratamiento de Reclamaciones del Impuesto de Ron de la AFI/ELA:** en la Vigencia, cada titular de una Reclamación de Impuesto de Ron de la AFI/ELA Concedida tendrá derecho a recibir, como plena contraprestación, satisfacción, liberación y canje por la Reclamación de Impuesto de Ron de la AFI/ELA Concedida de dicho titular, la Participación a Prorrata de la Recuperación de Recuperación de la AFI/ELA; disponiéndose, sin embargo, que, con sujeción a los términos y disposiciones de la Sección 71.1 del presente documento, Assured reciba su parte de la Recuperación de Recuperación de la AFI/ELA a cuenta de las Reclamaciones de Impuesto de Ron de la AFI/ELA Permitidas que surjan de bonos asegurados por Assured.

ARTÍCULO LXIII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE LA
AMA/ELA (CLASE 59)**

63.1      **Tratamiento de Reclamaciones de la AMA/ELA:** en la Vigencia, cada tenedor de una Reclamación de la AMA/ELA Permitida tendrá derecho a recibir, en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos de la AMA/ELA Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Recuperación de la AMA/ELA de tal tenedor.

ARTÍCULO LXIV

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE ASIGNACIONES DEL ELA (CLASE 60)

64.1     **Tratamiento de Reclamaciones de Asignaciones del ELA:** las Reclamaciones de Asignaciones del ELA no recibirán una distribución a tenor con el Plan y se considerará que cada tenedor de una Reclamación de Asignaciones del ELA ha rechazado el Plan con respecto a tal Reclamación de Asignaciones del ELA.

ARTÍCULO LXV

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES SUBORDINADAS A 510(b)/ELA (CLASE 61)

65.1     **Tratamiento de Reclamaciones Subordinadas a 510(b)/ELA:** las Reclamaciones Subordinadas a 510(b)/ELA no recibirán una distribución a tenor con el Plan y se considerará que cada tenedor de una Reclamación Subordinada a 510(b)/ELA Permitida ha rechazado el Plan con respecto a tales Reclamaciones Subordinadas del ELA/510(b).

ARTÍCULO LXVI

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE BONOS DEL SRE (CLASE 62)

66.1     **Tratamiento de Reclamaciones de Bonos del SRE:** en la Vigencia, cada tenedor de una Reclamación de Bonos del SRE Permitida tendrá derecho a recibir en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación de Bonos del SRE Permitida de tal tenedor, la Participación a Prorrata de la Recuperación de Bonos del SRE del tenedor; disponiéndose, sin embargo, a efectos de distribución, que los cálculos se basen en el importe de las Reclamaciones de Bonos del SRE Permitidas Netas.

66.2     **Cartera de Capital Privado del SRE:**

(a)     Elección de Compra del Estado Libre Asociado. Desde la Vigencia hasta el 10 de abril de 2023 inclusive, el Estado Libre Asociado tendrá la opción de comprar la Cartera de Capital Privado del SRE por el Precio de la Cartera del SRE. En el caso de que el Estado Libre Asociado determine ejercer la Elección del Estado Libre Asociado, el Estado Libre Asociado proporcionará una notificación de esta mediante publicación a los tenedores de Reclamaciones de Bonos del SRE Permitidas en o antes del 10 de abril de 2023 y consumará la compra de estas en o antes del 25 de abril de 2023, donde el producto de esta será distribuido, sin compensación ni deducción por impuestos, a los tenedores de Reclamaciones de Bonos del SRE Permitidas conforme a los términos y disposiciones de la Sección 66.1 del presente documento.

(b)  Elección de Compra del Bonista. En caso de que el Estado Libre Asociado se niegue a ejercer la opción o no notifique su ejercicio de la Elección del Estado Libre Asociado antes del 10 de abril de 2023, cualquier titular de Reclamaciones de Bonos del SRE Permitidas tendrá la opción de ejercer la Elección del Bonista y comprar todos los intereses del Fideicomiso del SRE por el Precio de la Cartera del SRE más el monto que sea necesario para reembolsar al Estado Libre Asociado cualquier monto de déficit financiado en relación con la Cartera de Capital Privado del SRE durante el período comprendido entre el 2 de abril de 2021 hasta la fecha la compra inclusive conforme a la Elección del Bonista que no se hayan reembolsado previamente al Estado Libre Asociado, mediante notificación por escrito de esta al Estado Libre Asociado en o antes del 15 de abril de 2023. En el caso de que uno o más titulares de Reclamaciones de Bonos del SRE Permitidas determinen el ejercicio de la Elección del Bonista, dichos tenedores que elijan deberán pagar dicho precio de compra, a prorrata calculada con respecto al importe de las Reclamaciones de Bonos del SRE Permitidas de dichos tenedores, al Estado Libre Asociado a más tardar el 20 de abril de 2023. Tras el pago, el Estado Libre Asociado distribuirá dichos ingresos, netos de los montos necesarios para reembolsar al Estado Libre Asociado cualquier cantidad de déficit financiado en relación con la Cartera de Capital Privado del SRE que no se haya reembolsado previamente al Estado Libre Asociado, y sin compensación ni deducción por impuestos, a los titulares de Reclamaciones de Bonos del SRE Permitidas conforme a los términos y disposiciones de la Sección 66.1 del presente documento.

(c)  Obligación de Compra del Estado Libre Asociado. En el caso de que ni la Elección del Estado Libre Asociado ni la Elección del Bonista hayan sido ejercidas, el 25 de abril de 2023, (i) el Estado Libre Asociado adquirirá la Cartera de Capital Privado del SRE por el Precio de la Cartera del SRE, y (ii) el Estado Libre Asociado distribuirá los ingresos de esta, sin compensación ni deducción por impuestos, a los tenedores de Reclamaciones de Bonos del SRE Permitidas conforme a los términos y disposiciones de la Sección 66.1 del presente documento.

(d)  Informes Trimestrales. Desde la Vigencia hasta la fecha de la venta de la Cartera de Capital Privado del SRE, pero sin incluirla, conforme a los términos y disposiciones de esta Sección 66.2, el Estado Libre Asociado proporcionará resúmenes trimestrales de la cartera a los tenedores de Reclamaciones de Bonos del SRE Permitidas que ejecuten y entreguen un acuerdo de no divulgación, en el entendimiento de que cualquier información proporcionada al respecto no estará sujeta a divulgación pública.

(e)  Contabilidad Fiscal. Desde la Vigencia hasta la fecha de la venta de la Cartera de Capital Privado del SRE, pero sin incluirla, conforme a los términos y disposiciones de esta Sección 66.2, el SRE se considerará el propietario de la Cartera de Capital Privado del SRE y del Fideicomiso del SRE para todos los fines fiscales aplicables, y que no haya partidas de ingresos imponibles, ganancia, pérdida o deducción atribuibles a la Cartera de Capital Privado del SRE o al Fideicomiso del SRE, según sea el caso, se asignará a los tenedores de Reclamaciones de Bonos del SRE Permitidas a menos que y hasta que dichos tenedores hayan comprado los intereses en el Fideicomiso del SRE conforme a la Elección del Bonista y la Sección 66.2(b) del presente documento.

66.3     **Desestimación de Litigio**: en la Vigencia, (a) el Litigio del SRE será desestimado y/o denegado, con prejuicio, y (b) la Junta de Supervisión, por sí misma o a través de sus comités, el Comité de Acreedores y los tenedores de bonos del SRE (por cuenta propia o en nombre de afiliados o fondos relacionados o cuentas gestionadas por afiliados) tomará cualquier acción que sea razonablemente necesaria, incluida, sin limitación, la presentación de tales avisos, estipulaciones u otros alegatos (i) en el Tribunal del Título III para efectuar tal desestimación y/o denegación del Litigio del SRE, con prejuicio y (ii) en el Tribunal de Apelaciones de los Estados Unidos para el Circuito Federal para efectuar la desestimación y/o la denegación de la Acción de Expropiación del SRE, con prejuicio.

ARTÍCULO LXVII

**DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES
SIN GARANTÍA GENERALES DEL SRE (CLASE 63)**

67.1     **Tratamiento de Reclamaciones sin Garantía Generales del SRE**:

(a)     Tratamiento de Reclamaciones sin Garantía Generales del SRE. En la Vigencia, y sujeto al derecho de elección establecido en la Sección 67.1(b) del presente, cada tenedor de una Reclamación sin Garantía General del SRE Permitida tendrá derecho a recibir, en plena contraprestación, satisfacción, liberación e intercambio de la Reclamación sin Garantía General del SRE Permitida de tal tenedor, la Participación a Prorrata de la Recuperación del Fondo de GUC del SRE de tal tenedor.

(b)     Reclamaciones Permitidas de diez mil dólares ($10,000.00) o más/Opción a tratarse como Reclamación de Conveniencia. Sin perjuicio de las disposiciones de la Sección 67.1(a) del Plan, todo tenedor de una Reclamación sin Garantía General del SRE Permitida, que no sea Reclamación sin Garantía General del SRE que sea un componente de una Reclamación sin Garantía General del SRE mayor, cuyas partes puedan estar en poder de dicho tenedor o de cualquier otro tenedor de una Reclamación Permitida, cuya Reclamación sin Garantía General del SRE sea superior a diez mil dólares ($ 10,000.00), y que opte por reducir el monto de esa Reclamación sin Garantía General del SRE Permitida a diez mil dólares ($ 10,000.00), o si un tenedor de múltiples Reclamaciones sin Garantía Generales del SRE Permitidas opta por reducir el monto de esas múltiples Reclamaciones sin Garantía General del SRE Permitidas a un monto acumulado de veinte mil dólares ($ 20,000.00), a elección de ese titular, tendrá derecho a recibir, sobre la base de tal Reclamación sin Garantía General del SRE Permitida en su forma reducida, distribuciones a tenor con la Sección 69.1 del presente. Esa elección debe realizarse en la Papeleta/Formulario de Elección y ser recibida por los Deudores en o antes de la Fecha de Votación. Cualquier elección realizada después de la Fecha de Votación no será vinculante para los Deudores a menos que los Deudores renuncien expresamente, por escrito, a la Fecha de Votación; disponiéndose, sin embargo, que bajo ninguna circunstancia los Deudores podrán renunciar a ella en la Vigencia o después de esta.

67.2 **Limitación de Recuperación**: sin perjuicio de lo dispuesto en el presente en contrario, lo que incluye, de manera no taxativa, las distribuciones a realizarse a tenedores de una Reclamación sin Garantía General del SRE Permitida a tenor con las disposiciones de la Sección 69.1 del presente, en caso de que la suma de las distribuciones de Efectivo y el Efectivo recibido a causa de recuperaciones netas de Acción Preventivas sean iguales o superiores al cien por ciento (100 %) de la Reclamación sin Garantía General del SRE Permitida, los Intereses del Fideicomiso de Acciones de Revocación asignables al Fondo de GUC del SRE y Efectivo distribuirle de otro modo a tal tenedor a causa de sus recuperaciones netas del Fideicomiso de Acciones de Revocación se considerarán redistribuidos, de manera prorrateada, a beneficio de los tenedores de Reclamaciones de Garantía no Aseguradas del Permitidas.

## ARTÍCULO LXVIII

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES GRACIA GRACIA (CLASE 64)

68.1 **Tratamiento de Reclamaciones Gracia Gracia:** en la Vigencia, la Resolución Gracia Gracia se considerará asumida y (a) los miembros de la clase certificada en la Acción de Gracia Gracia del ELA y la Acción Federal Gracia Gracia y el abogado de tales clases tendrán derecho a recibir fondos a tenor con los términos y disposiciones de la Resolución Gracia Gracia y (b) a tenor con la Orden de Confirmación, todas las mociones, solicitudes, litigios y apelaciones pendientes con respecto a la Acción Gracia Gracia del ELA y la Acción Federal Gracia Gracia se considerarán desistidas con prejuicio.

## ARTÍCULO LXIX

## DISPOSICIONES PARA EL TRATAMIENTO DE RECLAMACIONES DE CONVENIENCIA (CLASE 65)

69.1 **Tratamiento de Reclamaciones de Conveniencia:** en la posterior de la Vigencia y la fecha en que dicha Reclamación de Conveniencia Permitida pase a ser una Reclamación Permitida, o tan pronto como sea viable después de esto, el Agente Pagador pagará a cada tenedor de una Reclamación de Conveniencia Permitida, en Efectivo, el monto total de dicha Reclamación de Conveniencia Permitida, en plena satisfacción, resolución, descargo y extinción, y a cambio de dicha Reclamación de Conveniencia Permitida.

ARTÍCULO LXX

**DISPOSICIONES CON RESPECTO A LOS NUEVOS BONOS DE OG
Y ENDEUDAMIENTO ADICIONAL**

70.1 **Emisión y Distribución de los Nuevos Bonos de OG:** en la Vigencia, el ELA Reorganizado emitirá Nuevos Bonos de OG, que consisten en Nuevos CIB de OG, Nuevos CAB al 5.375 % de OG y Nuevos CAB al 5.0 % de OG tal como se describe más particularmente en el presente. Los vencimientos, tasas de interés y programas de amortización para los Nuevos Bonos de OG se adjuntan al presente como Anexo «I». Toda la amortización de la deuda en los Nuevos Bonos de OG que no se pague en el momento de su vencimiento, ya sea al vencimiento final previsto o antes de su vencimiento final, permanecerá pendiente hasta que se haya pagado íntegramente y se abonará. Se devengarán intereses por la amortización de la deuda atrasado a tipo de interés ordinario (tasa de devengamiento para CAB), capitalizándose semestralmente, hasta que se paguen o satisfagan íntegramente los Nuevos Bonos de OG correspondientes a tenor con sus términos. El interés sobre los Nuevos Bonos de OG se calculará sobre una base de 30/360. En la medida en que las Partes del Gobierno, cada una actuando a su entera y absoluta discreción, decidan solicitar calificaciones sobre los Nuevos Bonos de OG, las Partes del Gobierno harán todo lo posible comercialmente por obtener calificaciones sobre los Nuevos Bonos de OG, lo que incluye la pronta respuesta de buena fe a las solicitudes de documento o de otra índole, tan pronto como sea razonablemente posible, según lo determinen únicamente las Partes del Gobierno, previa consulta con hasta dos (2) Acreedores Iniciales del Acuerdo de Apoyo al Plan de la AEP/OG, designados conjuntamente por el Grupo de Deuda Constitucional, el Grupo de OG, el CDCL, el Grupo QTCB, Syncora, Assured (únicamente a la medida que no se rescinde el Acuerdo de Apoyo al Plan de la AEP/OG con respecto a sí mismo) y National (únicamente en la medida en que no se rescinde el Acuerdo de Apoyo al Plan de la AEP/OG con respecto a sí mismo) cada uno de los cuales habrá firmado un acuerdo de confidencialidad, en forma y contenido satisfactorias para la Junta de Supervisión y restringiendo a esos Acreedores Iniciales del Acuerdo de Apoyo al Plan de la AEP/OG el comercio de Nuevos Bonos de OG, lo que incluye en base a la sentencia de las Partes del Gobierno con respecto a los beneficios previstos. Una vez que las Partes del Gobierno determinen a qué agencias de calificación han de solicitar calificaciones, las Partes del Gobierno realizarán sus esfuerzos comercialmente razonables para obtener las mejores calificaciones posibles. Sin perjuicio de lo dispuesto en el Plan en sentido contrario, en la medida en que se expidan Nuevos Bonos de OG Imponibles, tales Nuevos Bonos de OG Imponibles se distribuirán a tenedores de Reclamaciones Permitidas en el siguiente orden de prioridad: (1) en primer lugar, a los tenedores de Reclamaciones del ELA de Elección Imponible Permitidas y (2) en segundo lugar, prorrata a todos los demás tenedores de Reclamación Permitidas y receptores de Nuevos Bonos de OG, sin duplicados.

(a) **Nuevos CIB de OG:** sujeto a cualquier ajuste previsto en el presente, los Nuevos CIB de OG tendrá el capital original, la tasa de interés, la fecha de vencimiento y la condición imponible que se indica a continuación: (a) setecientos cuarenta y cinco millones cincuenta mil dólares ($ 745,050,000.00), cinco por ciento (5.0 %), 1 de

julio de 2023 y con exención fiscal, (b) setecientos cuarenta millones ochocientos veinte mil dólares ($ 740,820,000.00), cinco por ciento (5.0 %), 1 de julio de 2025 y con exención fiscal, (c) setecientos veintinueve millones quinientos sesenta y cinco mil dólares ($ 729,565,000.00), cinco por ciento (5.0 %), 1 de julio de 2027 y con exención fiscal, (d) setecientos diez millones cuarenta mil dólares ($ 710,040,000.00), cinco por ciento (5.0 %), 1 de julio de 2029 y con exención fiscal, (e) seiscientos ochenta millones ochocientos treinta y cinco mil dólares ($ 680,835,000.00), cinco por ciento (5.0 %), 1 de julio de 2031 y con exención fiscal, (f) seiscientos treinta y siete millones cuarenta mil dólares ($ 637,040,000.00), cuatro por ciento (4.0 %), 1 de julio de 2033 y con exención fiscal, (g) cuatrocientos cuarenta y ocho millones quinientos ochenta mil dólares ($ 448,580,000.00), cuatro por ciento (4.0 %), 1 de julio de 2035 y con exención fiscal, (h) doscientos cincuenta y cinco millones seiscientos sesenta mil dólares ($ 255,660,000.00), cuatro por ciento (4.0 %), 1 de julio de 2037 y con exención fiscal, (i) doscientos cuatro millones seiscientos mil dólares ($ 204,600,000.00), cuatro por ciento (4.0 %), 1 de julio de 2041 y con exención fiscal, (j) ochocientos veintidós millones doscientos sesenta mil dólares ($ 822,260,000.00), cinco por ciento (5.0 %), 1 de julio de 2041, e imponible, y (k) setecientos ocho millones ochocientos sesenta y cinco mil dólares ($ 708,865,000.00, cuatro por ciento (4.0 %), 1 de julio de 2046 y con exención fiscal. Los Nuevos CIB de OG no llevarán ninguna tasa de interés por defecto; disponiéndose, sin embargo, que el interés se siga devengándose en todas las amortizaciones de la deuda atrasados, a tipo de interés ordinario, calculado semestralmente, hasta que se paguen o satisfagan íntegramente de acuerdo con los términos.

(b)          **Nuevos CAB de OG:** sin perjuicio a cualquier ajuste previstos en el presente, los Nuevos CAB de OG tendrá el capital original, la rentabilidad de aumento, la fecha de vencimiento y la condición imponible que se indica a continuación: (a) doscientos ochenta y ocho millones doscientos cuarenta y un mil novecientos ochenta y nueve dólares con setenta y cinco centavos ($ 288,241,989.75), cinco por ciento (5.0 %), 1 de julio de 2024 y con exención fiscal, y (b) cuatrocientos cuarenta y dos millones quinientos seis mil quinientos cincuenta y tres dólares y cincuenta centavos ($ 442,506,553.50), cinco y trescientos setenta y cinco milésimas por ciento (5.375 %), 1 de julio de 2033 y con exención fiscal. Los Nuevos CAB de OG no llevarán ninguna tasa de interés por defecto; disponiéndose, sin embargo, que el interés siga acumulándose en todos los servicios de la deuda atrasados, a tipo de devengamiento ordinario, calculado semestralmente, hasta que se paguen o satisfagan íntegramente de acuerdo con los términos.

(c)          **Fecha de Emisión Estimada:** sin perjuicio de cuando sea la Vigencia, el interés sobre los Nuevos Bonos de OG comenzará a devengarse o aumentar, según corresponda, en la que ocurra primero de (i) el 1 julio de 2021 y (ii) la Vigencia, fecha que se designará como la fecha «a partir de la cual se calcula el interés» de los Nuevos Bonos de OG.

(d)          **Cláusula de Redención/Amortización Voluntaria:** los Nuevos Bonos de OG serán redimibles, total o parcialmente, en cualquier orden de vencimiento (o al valor acumulado para los CAB de 2033), a la par más los intereses devengados sobre este,

con notificación por escrito con treinta (30) días de anticipación, según se indica a continuación:

Bonos de interés actual 2023: No redimibles

Bonos de interés actual 2025: No redimibles

Bonos de interés actual 2027: No redimibles

Bonos de interés actual 2029: No redimibles

Bonos de interés actual 2031: No redimibles

Bonos de interés actual 2033: Redimibles de la siguiente manera:

| Fecha | Precio |
|---|---|
| Del 1 de julio de 2031 hasta el 30 de junio de 2032 inclusive de paridades | 103 % |
| Del 1 de julio de 2032 hasta el 30 de junio de 2033 inclusive de paridades | 101 % |

Bonos de interés actual 2035, 2037, 2041 y 2046 (Imponible y Exento de impuestos): Redimibles de la siguiente manera:

| Fecha | Precio |
|---|---|
| Del 1 de julio de 2031 hasta el 30 de junio de 2032 inclusive de paridades | 103 % |
| Del 1 de julio de 2032 hasta el 30 de junio de 2033 inclusive de paridades | 102 % |
| Del 1 de julio de 2033 hasta el 30 de junio de 2034 inclusive de paridades | 101 % |
| Del 1 de julio de 2034 en adelante paridades | 100 % de |

CAB 2033: Redimibles de la siguiente manera:

| Fecha | Precio |
|---|---|
| Del 1 de julio de 2033 en adelante valor acumulado | 100 % de |

Si menos que todos los Nuevos Bonos de OG de una serie particular son redimidos para amortización previa, el ELA Reorganizado seleccionará el vencimiento o vencimientos de tal serie de Nuevos Bonos de OG a canjear, si menos que todos los Nuevos Bonos de OG al vencimiento fueron solicitados para su canje, y Depository Trust Company, en nombre del Fideicomisario de los Nuevos Bonos de OG, seleccionará los Nuevos Bonos de OG dentro del mismo vencimiento de tal serie a ser redimidos por medio de una lotería aleatoria.

(e)        **Asignación Anual Estimada:** a tenor con la Legislación de Nuevos Bonos de OG, el ELA Reorganizado pactará que, hasta que se hayan pagado o satisfecho íntegramente los Nuevos Bonos de OG a tenor con sus términos, cada año fiscal, el ELA Reorganizado cumplirá sus obligaciones para con los tenedores de Nuevos Bonos de OG, asignando al pago del capital e intereses (y valor acumulado) con respecto a los Nuevos Bonos de OG emitidos a esos tenedores, en primer lugar, el impuesto sobre la propiedad del 1.03 % gravado a tenor con Ley 83-1991 y recaudado por el Centro de

Recaudación de Ingresos Municipales del ELA Reorganizado con respecto a los Nuevos Bonos de OG hasta que el monto total de tales impuestos sobre la propiedad se haya pagado a los tenedores de Nuevos Bonos de OG, en segundo lugar, los fondos derivados de la aplicación del Artículo VI, Sección 8 de la Constitución del Estado Libre Asociado hasta que el monto total de tales fondos se haya pagado a los tenedores de Nuevos Bonos de OG y, en tercer lugar, otros recursos del ELA Reorganizado.

(f) **Depósitos Mensuales de Intereses y Capital:** a partir de la Vigencia, hasta que se hayan pagado o satisfecho los Nuevos Bonos de OG en su totalidad a tenor con sus términos, en el primer (1$^{er}$) Día Hábil de cada mes calendario, el ELA Reorganizado depositará Efectivo en el Fondo de Amortización de la Deuda con el Fideicomisario de Nuevos Bonos de OG por el monto acumulado igual a (i) un sexto (1/6) de la obligación semestral del ELA Reorganizado con respecto al pago de intereses a devengar de los Nuevos Bonos de OG hasta la siguiente fecha de pago de intereses y (ii) un doceavo (1/12) de la obligación anual del ELA Reorganizado con respecto al pago del capital (o valor acumulado) de los Nuevos Bonos de OG. Tras su depósito, a tenor con la Legislación de Nuevos Bonos de OG el Fideicomisario de Nuevos Bonos de OG, en nombre de los tenedores de Nuevos Bonos de OG, tendrá un gravamen estatutario válido y perfeccionado y una garantía prendaria sobre los fondos depositados con el Fideicomisario de Nuevos Bonos de OG, que se conservarán en fideicomiso en beneficio de tenedores de los Nuevos Bonos de OG. Sin limitar lo anterior, en la Vigencia, el ELA Reorganizado depositará en el Fondo del Amortización de la Deuda los montos adicionales que sean necesarios para responder por los Nuevos Bonos de OG emitidos a la Fecha de Emisión Estimada.

(g) **Pactos para Nuevos Bonos de OG:** en la Vigencia, los Documentos Definitivos, lo que incluye al Contrato de Emisión de Nuevos Bonos de OG, la Legislación de Nuevos Bonos de OG y/o la Orden de Confirmación, contendrán los términos, condiciones y pactos habituales para bonos de estructura y respaldo similares, lo que incluye, de manera no taxativa, los siguientes pactos y otras disposiciones con respecto a Nuevos Bonos de OG:

(i) **Pacto de no Afectación:** a tenor con la Legislación de Nuevos Bonos de OG y al Contrato de Nuevos Bonos de OG, el ELA Reorganizado pactará en beneficio de todos los tenedores iniciales y posteriores de Nuevos Bonos de OG que, hasta que todas las obligaciones al respecto a estos hayan sido pagadas o satisfechas íntegramente a tenor con sus condiciones, el ELA Reorganizado no tomará ninguna medida que (1) afecte los depósitos mensuales de capital e intereses a los que se hace referencia en la Sección 70.1(f) del presente, (2) limite o modifique los derechos conferidos a los Deudores o Deudores Reorganizados a tenor con el Plan y la Orden de Confirmación para cumplir los términos de cualquier acuerdo con los tenedores de los Nuevos Bonos de OG o (3) afecte los derechos y remedios de los tenedores de los Nuevos Bonos de OG.

(ii)        **Pacto de Exención Fiscal:** a tenor con el Contrato de Emisión de Nuevos Bonos de OG, el ELA Reorganizado pactará en beneficio de todos los tenedores iniciales y posteriores de Nuevos Bonos de OG con exención de impuestos federales que, hasta que todas las obligaciones con respecto a ellos hayan sido pagadas o satisfechas en su totalidad a tenor con sus términos, el ELA Reorganizado realizará y llevará a cabo todas las acciones y cuestiones permitidas por la ley y razonablemente necesarios o deseables para asegurar que los intereses pagados a los tenedores de cualesquiera Nuevos Bonos de OG exentos de impuesto federal serán y seguirán siendo excluibles de la renta bruta a efectos del impuesto federal sobre ingresos.

(h)        **Fondo de Reserva de la Amortización de la Deuda:** los Nuevos Bonos de OG tendrán una Amortización de la Deuda en la que el Requisito de la Amortización de la Deuda (i) se financiará por completo en la Vigencia o en dos (2) cuotas anuales iguales el 1 de julio de 2025 y 1 de julio de 2026 y después de esta, cuya elección se efectuará, a discreción conjunta y absoluta de la Junta de Supervisión y el ELA, en la Vigencia o antes de esta, (ii) una vez depositado, será mantenido en fideicomiso por el Fideicomisario de los Nuevos Bonos de OG a beneficio de los tenedores de los Nuevos Bonos de OG y (iii) estará sujeto a un gravamen de primer rango estatutario una vez depositado con el Fideicomisario de Nuevos Bonos de OG a beneficio de los tenedores de Nuevos Bonos de OG.

(i)        **Derechos de Aceleración:** los Nuevos Bonos de OG no tendrán derechos de aceleración.

(j)        **Intereses Residuales del ELA:** a tenor con el Contrato de Emisión de Nuevos Bonos de OG y sujeto a tales derechos y obligaciones adicionales como se dispone en la presente, cualquier fondo mantenido por el Fideicomisario de los Nuevos Bonos de OG que exceda los depósitos requeridos a tenor con el Contrato de Emisión de Nuevos Bonos de OG serán liberados por el Fideicomisario de Emisión de Nuevos Bonos de OG a o bajo la dirección del ELA, lo que incluye en la medida en que permanezcan fondos en el Fondo de Reserva del Amortización de la Deuda después de que se paguen o satisfagan en su totalidad los Nuevos Bonos de OG a tenor con sus términos, tales montos se devolverán y serán distribuidos a o bajo la dirección del ELA Reorganizado.

(k)        **Derecho Directo de Acción:** a tenor con el Contrato de Emisión de Nuevos Bonos de OG, y sujeto a los derechos adicionales que en él se estipulan, el Fideicomisario de los Nuevos Bonos de OG tendrá derecho directo de acción para hacer cumplir los términos del Contrato de Emisión de Nuevos Bonos de OG, lo que incluye, de manera no taxativa, con respecto a la financiación de depósitos en el Fondo del Amortización de la Deuda y en el Fondo de Reserva del Amortización de la Deuda y buscar remedios específicos de cumplimiento y de otro tipo disponibles para cualquier incumplimiento de los pactos del Contrato de Emisión de Nuevos Bonos de OG.

(l)        **Legislación Vigente:** el Contrato de Emisión de Nuevos Bonos de OG y los Nuevos Bonos de OG emitidos en virtud de este se regirán por las leyes del Estado de Nueva York, sin dar efecto a los principios de conflictos de leyes.

70.2 **Emisión y Distribución de los CVI:**

(a) **Emisión de CVI de OG:** en la Vigencia, el Estado Libre Asociado Reorganizado emitirá el CVI de OG, en el monto nocional original acumulado de tres mil quinientos millones de dólares ($3,500,000,000.00), con una fecha de vencimiento del 1 de julio de 2043 y una fecha final de pago de reembolso del 1 de noviembre de 2043 y, con sujeción a las disposiciones establecidas en el Contrato de Emisión de CVI, la legislación de CVI, la Orden de Confirmación y tal como se expone más detalladamente en el Anexo «J» adjunto.

(b) **Emisión de CVI de Recuperación:** en la Vigencia, el Estado Libre Asociado Reorganizado emitirá el CVI de Recuperación, en el monto nocional original acumulado igual a cinco mil trescientos ochenta y cuatro millones ciento veintisiete mil setecientos sesenta y cuatro dólares ($5,384,127,764.00), con una fecha de vencimiento del 1 de julio de 2051 y una fecha final de pago de reembolso del 1 de noviembre de 2051 y, con sujeción a las disposiciones establecidas en el Contrato de Emisión de CVI, la legislación de CVI, la Orden de Confirmación y tal como se expone más detalladamente en el Anexo «J» adjunto.

(c) **Disposiciones Sobre la Cascada de Pagos y la Amortización:** el CVI de OG estará sujeto a reembolso obligatorio conforme a las prioridades establecidas en las disposiciones «Sujeto a pagos de amortización obligatorios anuales en cascada» establecidas en el Anexo «J», sin perjuicio de lo dispuesto en el Suplemento 1 de este y de la asignación establecida en el Supmeneto 3 de este. El CVI del Recuperación estará sujeto a reembolso obligatorio conforme a las disposiciones «Pagos de amortización obligatorios sujetos a los CVI del Recuperación en Cascada» y «Pagos de amortización obligatorios no sujetos a los CVI de Recuperación en Cascada» establecidas en el Anexo «J» adjunto, sujeto a las disposiciones establecidas en el Suplemento 2 de este, la asignación que figura en el Suplemento 4 de ese y las prioridades establecidas en el Suplemento 6 de este.

(d) **Derecho Directo de Acción:** a tenor con el Contrato de Emisión de CVI, y sujeto a los derechos adicionales que se estipulan en esta, el Fideicomisario tendrá derecho directo de acción para hacer cumplir los términos del Contrato de Emisión de CVI, lo que incluye, de manera no taxativa, con respecto a la financiación de pagos con respecto a los CVI y buscar remedios específicos de cumplimiento, y otros remedios disponibles, para cualquier incumplimiento de los pactos del Contrato de Emisión de CVI.

(e) **Plena Fe y Crédito:** para pagos de los CVI, el ELA pignorará su plena fe, crédito y poder impositivo según el Artículo VI de la Constitución del Estado Libre Asociado y la ley aplicable de Puerto Rico.

(f) **Pacto de No Afectación:** el ELA Reorganizado pactará a beneficio de todos los tenedores iniciales y posteriores de CVI que, hasta que se paguen todas las obligaciones con respecto a esto o se satisfagan de otro modo de acuerdo con los términos, el ELA Reorganizado no: (a) tomará ninguna medida que afectaría los derechos y

remedios de los tenedores de los CVI; (b) limitará o restringirá los derechos o facultades de los funcionarios apropiados del ELA Reorganizado para cumplir con los términos de cualquier acuerdo realizado con respecto a los CVI; o (c) afectará la capacidad de los tenedores de los CVI de monitorear el rendimiento del IVU Medido; disponiéndose, sin embargo, que lo que antecede no impida al ELA Reorganizado ejercer sus facultades, mediante un cambio en la legislación, eliminar el IVU Medido, o reemplazar el IVU Medido con un Impuesto Medido Sustitutivo, cada uno de acuerdo con el Contrato de Emisión de CVI, que protegerá a los tenedores de CVI de tal eliminación o reemplazo lo que reduce la probabilidad de la Condición de Rendimiento Superior se satisfaga y, disponiéndose, sin embargo, que el Contrato de Emisión de CVI incluirá un mecanismo para la divulgación pública por parte del ELA Reorganizado de (x) los montos de IVU Medido, (y) los cobros de IVU y (z) el cálculo de cualquier Ajuste de IVU o Reducción de IVU de Referencia, según se define y refleja en el Anexo «J» adjunto.

(g)     **Legislación Vigente:** el Contrato de Emisión de CVI y los CVI emitidos en virtud de este se regirán por las leyes del Estado de Nueva York aplicables a los acuerdos celebrados en dicha jurisdicción y se realizarán íntegramente dentro de esta, y las leyes del Estado de Nueva York, sin dar efecto a los principios de conflictos de leyes, se aplicarán a cualquier acción o procedimiento que surja en virtud del Contrato de Emisión de CVI y de los CVI; disponiéndose, sin embargo, que la autorización del Contrato de Emisión de CVI y la emisión de los CVI por el Estado Libre Asociado se regirán por las leyes del Estado Libre Asociado; y, disponiéndose, además, que los titulares de CVI tengan derecho a los derechos y recursos establecidos en las Secciones 2 y 8 del Artículo VI de la Constitución del Estado Libre Asociado.

70.3       **Tratamiento Exento de Impuestos de los Nuevos Bonos de OG**: sin perjuicio de los términos y disposiciones de las Secciones 70.1 y 70.2 del presente, en el caso de que las Partes del Gobierno obtengan una determinación del SII o un dictamen del Consejo de Bonos de la Sección 103 (en su conjunto, una «Determinación Favorable») de que la relación entre el monto acumulado de todos los Nuevos Bonos de OG Imponibles a emitirse en la Vigencia (la «Nueva Relación») con respecto al monto total acumulado de todos los Nuevos Bonos de OG es menor a trece por ciento (13 %) (la «Relación Existente») (i) en el caso en que la Determinación Favorable se obtenga en la Vigencia o antes de esta, los tenedores de cualquier Reclamación que reciban Nuevos Bonos de OG a tenor con el plan recibirán el beneficio de tal Determinación Favorable en forma de Nuevos Bonos de OG con exención fiscal emitidos conforme al Plan con cupones para todos los vencimientos iguales a los cupones de los Nuevos Bonos de OG con exención fiscal establecido en el Anexo «I» del presente, y, en la medida de que las Partes del Gobierno y los Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG determinen durante el período que dura hasta la Vigencia la modificación de los cupones establecidos en el Anexo «I» del presente, el monto de paridad de Nuevos Bonos de OG disminuirá o aumentará, en base dólar por dólar, dependiendo de la estructura de cupones, sujeto al monto de amortización de la deuda anual máxima dispuesto en el Anexo «I» del presente, y toda modificación que se aplica a los acreedores a prorrata después de la aplicación en base de recuperación de Tasas de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG y Costos de Perfeccionamiento de la AEP/OG como se describe en la nota al pie 8 al Apéndice 2-A del Anexo «I» del Acuerdo de apoyo al Plan de la AEP/OG; (ii) en el caso en que tal Determinación Favorable se obtenga después de la Vigencia, entonces los tenedores de Bonos Imponibles afectados por tal determinación (los «Bonos Invitados») serán invitados a cambiar sus bonos por bonos convertidos (la «Oferta de Intercambio») y, sujeto a la aplicación de todos los gastos razonables incurridos por las Partes del Gobierno en conexión con la Oferta de Intercambio, la tasa de interés de los bonos convertidos será igual al interés en los Bonos Invitados del mismo tipo, tasa de interés, serie y vencimiento; disponiéndose, sin embargo, que tales bonos convertidos estén acompañados de la opinión favorable del Consejo de Bonos de la Sección 103 sobre que el interés, que no sea el interés devengado antes de la emisión, de tales bonos convertidos, y en los Bonos Invitados intercambiados por tales bonos convertidos a partir de la fecha original de entrega de tales Bonos Invitados así intercambiados, en la opinión de tal consejo, se excluya de los ingresos brutos a fines de impuesto federal sobre ingresos de la tributación sobre ingresos estatal de los Estados Unidos, del ELA y local; y (iii) en el caso en que no se obtenga ninguna de las determinaciones que preceden, los pactos de procurar tales determinaciones llegará a su fin en la primera fecha de (1) el 15 de diciembre de 2021, (2) la notificación por parte del SII al ELA de que el SII no puede emitir una carta en respuesta su consulta favorable, convenio final u otro tipo de determinación del SII con respecto a los asuntos establecidos en el presente inciso, (3) la modificación del Contrato de Emisión de Nuevos Bonos de OG después de recibir una determinación favorable y la consumación de una Oferta de Intercambio.

70.4 **Tope Global sobre toda Deuda con Garantía Impositiva Neta**: durante el Período de la Política de Deuda, confirme a la Ley de Responsabilidad en la Emisión de Deuda de acuerdo con al Contrato de Emisión de Nuevos Bonos de OG y el Contrato de Emisión de CVI, el ELA y el ELA Reorganizado, según corresponda, adoptarán y mantendrán una Política de Gestión de la Deuda que incluya un Tope Global sobre toda la Deuda con Garantía Impositiva Neta del Artículo IV de la Ley de Responsabilidad en la Emisión de Deuda, cuyo tope global se establecerá a siete y noventa y cuatro centésimos por ciento (7.94 %) de los Ingresos de la Política de Deuda según y cuando se mida de acuerdo con la Ley de Responsabilidad en la Emisión de Deuda lo que incluye un sublímite de deuda garantizada y/o titularizada de cero con veinticinco por ciento (0.25 %) de Ingresos de Política de Deuda sobre el porcentaje de Ingresos de Política de Deuda necesarios para pagar la amortización de la deuda anual máximo en los Bonos COFINA pendientes a la Vigencia. Los pagos de amortización de la deuda en Nuevos CAB de OG emitidos a tenor con el Plan a tenedores o aseguradores de Bonos de OG o Bonos de AEP y pagos en CVI que se puedan emitir a tenor con el Plan u otros instrumentos de valor contingente emitidos a tenor con o en conexión con un Plan de Instrumentalidades del ELA para ACT, ADCC o AFI, para satisfacer las reclamaciones presentados por (a) tenedores o aseguradores de bonos emitidos para tal instrumentalidad o (b) otros acreedores de tal instrumentalidad, no aplicará hacia el Tope Global. Para evitar dudas, cualquier apreciación de capital, bonos de obligación general u obligaciones de deuda sostenida por impuestos similar emitidos a cualquiera otra persona que no sean los tenedores o aseguradores de Bonos de OG y Bonos de AEP a tenor con el Plan y cualquier instrumento de valor contingente u obligaciones de deuda sostenida por impuestos similar emitidos de otra forma que no sea conforme o en conexión con el Plan o cualquier Plan de Instrumentalidad del ELA, lo que contará al Tope Global, independientemente de si se emitió antes o después de la Fecha de Entrada de Vigor. La certificación de cumplimiento del Secretario del Tesoro con respecto al límite de Deuda a tenor con la presente Sección 70.4 será concluyente y vinculante en ausencia de error manifiesto; disponiéndose, sin embargo, que, al emitir tal certificación, con respecto al cálculo de los ingresos de las empresas públicas incluidas como Ingresos de la Política de Deuda, el Secretario del Tesoro pueda confiar en las certificaciones de funcionarios de tales empresas públicas.

70.5 **Adopción y mantenimiento de una Política de Gestión de la Deuda**: durante el Período de Política de Deuda, el ELA Reorganizado mantendrá y cumplirá una Política de Gestión de la Deuda diseñada para asegurar que no se repitan ciertas prácticas pasadas de emisión de Deuda del ELA Reorganizado. Si bien el ELA puede revisar y actualizar su Política de Gestión de la Deuda para reflejar la evolución de las condiciones y normas del mercado de bonos, la Política de Gestión de la Deuda, a menos que la Junta de Supervisión apruebe otra cosa por escrito, incluirá en todo momento los siguientes principios y limitaciones:

(a) **Préstamo a largo plazo sólo para Mejoras Capitales**: para asegurar que el ELA Reorganizado logre y mantenga un presupuesto estructuralmente equilibrado que sea compatible con el requisito de PROMESA de que Puerto Rico vuelva a asumir responsabilidad fiscal, la Deuda con Garantía Impositiva emitida después de la Vigencia sólo podrá incurrirse para financiar Mejoras Capitales, según lo determine el emisor de tal Deuda y lo apruebe la AAFAF, o para refinanciar Deuda con Garantía Impositiva a tenor

con los términos y disposiciones de la Sección 70.5(d) del presente. Los ingresos derivados de tal emisión podrán utilizarse para cubrir todos los gastos directos e indirectos que, a discreción razonable del emisor, sean necesarios para llevar a cabo dichas Mejoras Capitales, lo que incluye, de manera no taxativa, todo gasto incurrido en relación con la misma emisión.

(b)     **Limitación de Vencimiento a 30 años en todos los Préstamos con Garantía Impositiva:** ninguna Deuda con Garantía Impositiva emitida en la Vigencia o después de esta podrá tener un vencimiento final legal posterior a treinta (30) años a partir de la fecha de su emisión original, y ninguna de esas Deudas podrá refinanciarse mediante Deuda que prorrogue dicha fecha de vencimiento final legal más allá de la limitación de fecha de vencimiento inicial de treinta (30) años; disponiéndose, sin embargo, que lo que precede no se aplicará a (a) Deuda con Garantía Impositiva emitida para financiar los servicios públicos de vivienda, sujetos a la limitación establecida en la Constitución del ELA o (b) Deuda con Garantía Impositiva emitida para refinanciar la Deuda Pendiente antes de la Vigencia y que tenía un vencimiento legal de más de treinta (30) años, sujeto a los términos y disposiciones de la Sección 70.5(d) del presente.

(c)     **Amortización de Capital Requerida:** no puede emitirse ninguna serie de Deuda con Garantía Impositiva emitida a partir de la Vigencia y después de esta a menos que su capital comience a amortizar en un plazo de dos (2) años a partir de su fecha de emisión original, o cualquier otro período que no exceda los cinco (5) años a partir de la emisión original según lo permita el Código Tributario Interno de los Estados Unidos para financiamiento de exenciones de impuestos de nueva construcción o reconstrucción de Mejoras Capitales, y que continúe amortizando cada año hasta que tal Deuda ya no esté pendiente.

(d)     **Refinanciamiento Permitido únicamente para los Ahorros de Flujo de Activos en cada Año Fiscal:** el refinanciamiento de la Deuda con Garantía Impositiva solo se permite si (i) no se incrementa el monto del capital e intereses del bono pagaderos en cualquier año fiscal y (ii) la refinanciación produce ahorros de valor actual positivos después de tener en cuenta los gastos de transacción en los niveles especificados por el ELA Reorganizado en sus Políticas de Gestión de la Deuda; disponiéndose, sin embargo, que las refinanciaciones sin ahorros de flujo de activos en cada año fiscal estén permitidas si la refinanciación se completa en respuesta directa a un huracán, terremoto, pandemia, terrorismo u otro desastre natural y emergencias similares y la amortización de la deuda debido en cualquier año fiscal futuro no aumenta en más del diez por ciento (10 %) y la financiación requiere según sus términos que se reembolse en su totalidad en un plazo de diez (10) años.

(e)     **Amortización de la Deuda del Plan Fiscal:** cualquier Plan Fiscal posterior a la Vigencia incluirá disposiciones para el pago, en cada año fiscal de (a) capital e intereses (y valor acumulado) con respecto a los Nuevos Bonos de OG, lo que incluye, de manera no taxativa, pagos a fondo de amortización debidos a tal año fiscal y (b) en la medida que la Condición de Rendimiento Superior se satisface en el año fiscal anterior, cualquier monto debido y adeudado en los CVI de acuerdo con los términos del Contrato de Emisión de CVI.

Sin perjuicio de lo anterior, nada de lo dispuesto en el presente prohibirá al ELA adoptar, mantener y cumplir una Política de Gestión de la Deuda que sea más restrictiva que los requisitos establecidos anteriormente. La Política de Gestión de la Deuda se sumará a cualquier otra limitación impuesta por ley y nada de lo contenido en el presente se interpretará como que sustituye, modifica o deroga cualquier restricción adicional impuesta por la Constitución del ELA Reorganizado.

## ARTÍCULO LXXI

## DISPOSICIONES CON RESPECTO A LOS BONOS ASEGURADOS DE ASSURED, LOS BONOS ASEGURADOS DE NATIONAL, LOS BONOS ASEGURADOS DE SYNCORA Y LOS BONOS ASEGURADOS DE FGIC

71.1    **Tratamiento de Reclamaciones de Bonos Asegurados de Assured**: en caso de que las Clases 2, 16, 22, 29, 34 y 39 voten para aceptar el Plan de acuerdo con las disposiciones de la sección 1126 del Código de Quiebras, y todas las Pólizas de Seguros de Assured y acuerdos relacionados que se refieran a Bonos Asegurados de Assured en pleno vigor y vigencia, sin pagos pendientes adeudados por Assured con respecto a tales Bonos Asegurados de Assured hasta la Vigencia inclusive, entonces, sin perjuicio de cualquier otra disposición del Plan, los tenedores de Reclamaciones de Bonos Asegurados de Assured recibirán los siguientes tratamientos, dichos tratamientos se seleccionarán por parte de Assured a su entera discreción en o antes del comienzo de la Vista de Declaración de Divulgación:

(a)    **Elección de Assured:** a elección de Assured, Assured recibirá el Efectivo y los CVI asignables a tenedores de Bonos Asegurados de Assured y todos o cualquier parte de los Bonos Asegurados de Assured seleccionados por Assured se pagarán, en su totalidad, en la Vigencia, a un Precio de Aceleración igual al capital pendiente de tales Bonos Asegurados de Assured más el interés acumulado y no pago sobre este (o, en el caso de cualquier bono de apreciación de capital, el monto compuesto de este) a la Vigencia de (a) las ganancias de todos o cualquier parte de los Nuevos Bonos de OG de Assured asignables a tenedores de Bonos Asegurados de Assured, dichos Nuevos Bonos de OG de Assured (i) se asegurarán, a elección de Assured, de acuerdo con una nueva póliza de seguros emitida por Assured con términos aceptables para Assured, (ii) se suscribirán en una «oferta» dentro del significado del Norma 15c2-12 de la SEC y (iii) se venderán en el mercado de tal forma que se emiten y se entregan a tal o tales suscriptores en la Vigencia y (b) en la medida de que tales ganancias de los Nuevos Bonos de OG de Assured no sean suficientes para pagar el Precio de Aceleración, montos iguales a tal faltante de pago por Assured de acuerdo con la Pólizas de Seguros de Assured que aseguran los Bonos Asegurados de Assured relevantes. Los capitales, vencimientos y tasas de interés de los Nuevos Bonos de OG de Assured con respecto a los cuales Assured ha ejercido la Elección de Assured se determinarán por parte de Assured en consulta con el o los suscriptores aplicables, tal que las tasas de interés en los Nuevos Bonos de OG de Assured serán las tasas de interés más bajas necesarias para que se emitan tales Nuevos Bonos de OG de Assured con mayores valores nominales con respecto a otros Nuevos Bonos de OG y que dé como resultado que los Nuevos Bonos de OG de Assured se emitan a la rentabilidad

164

acumulada más baja; *disponiéndose, sin embargo*, que la amortización de la deuda anual en los Nuevos Bonos de OG de Assured debido en cualquier año fiscal no será mayor que la amortización de la deuda anual que se hubiese debido en tal año fiscal si tales Nuevos Bonos de OG de Assured hubiesen tenido los mismos términos que los otros Nuevos Bonos de OG. Si (i) en o antes del momento de la fijación del precio de los Nuevos Bonos de OG de Assured, Assured determina, en función de su evaluación de buena fe de las circunstancias, que los Nuevos Bonos de OG de Assured no se pueden vender en el mercado bajo términos aceptables para Assured o (ii) tales Nuevos Bonos de OG de Assured no se emiten al o los suscriptores por cualquier razón, entonces, en cualquier caso, Assured (A) puede elegir, a su entera discreción, ejercer la Opción de Pago del Precio de Aceleración de Assured al pagar el Precio de Aceleración de Assured aplicable a los tenedores de cualquier Bono Asegurado de Assured con respecto a los cuales Assured ha ejercido la Elección de Assured y (B) recibirá, a la Vigencia, de los Nuevos Bonos de OG de Assured sobre los cuales se ejerce la Opción de Pago del Precio de Aceleración de Assured y cualquier Efectivo y otros Nuevos Valores de Assured atribuibles a los Bonos Asegurados de Assured relevantes, dichos Nuevos Bonos de OG de Assured pueden, a elección de Assured, asegurarse de acuerdo con una nueva póliza de seguros emitida por Assured con términos aceptables para esta. El pago del Precio de Aceleración aplicable con respecto a cualquier Bono Asegurado de Assured, lo que incluye de acuerdo con la Elección de Assured o la Opción de Precio de Aceleración de Assured, satisfará y cumplirá todas las obligaciones de Assured a tenor con las Pólizas de Seguro de Assured con respecto a tal Bono Asegurado de Assured.

(b)    **Elecciones de Bonistas Asegurados de Assured:** en el caso de que Assured se niegue a realizar la Elección de Assured con respecto a cualquier Bono Asegurado de Assured según se establece en la Sección 71.1(a) del presente (o realiza la Elección de Assured, pero se niega a ejercer la Opción de Pago de Precio de Aceleración de Assured al darse cualquier evento que le dé a Assured el derecho de ejercer tal opción como se describió anteriormente), cada tenedor beneficiario de un Bono Asegurado de Assured con respecto al cual Assured no ha realizado la Elección de Assured puede elegir una de las siguientes Elecciones de Bonistas de Assured, en cada caso con términos aceptables para Assured: (i) la Elección de Bonistas de Assured 1, a tenor con la cual tal tenedor recibirá de Assured el Precio de Aceleración aplicable en la Vigencia en plena satisfacción y descargo de las obligaciones de Assured con respecto a tal tenedor según las Pólizas de Seguros de Assured aplicables y Assured recibirá el efectivo y los Nuevos Valores de Assured asignables a tal tenedor según el Plan, dichos Nuevos Valores de Assured, en el caso de los Nuevos Bonos de OG de Assured, pueden, a elección de Assured, asegurarse de acuerdo con una nueva póliza de seguros emitida por Assured en términos aceptables para esta; (ii) la Elección de Bonistas de Assured 2, a tenor con la cual tal tenedor optará por un fideicomiso de custodia, acuerdo de cuenta de plica o estructura general establecido por Assured que proporcionará a tal tenedor una participación en (A) la Póliza de Seguros de Assured aplicable y (B) los Nuevos Valores de Assured asignables a tal tenedor de acuerdo con términos aceptables para Assured o (iii) la Elección de Bonistas de Assured 3, a tenor con lo cual tal tenedor, en la Vigencia, y en plena satisfacción de las obligaciones de Assured según las Pólizas de Seguros de Assured aplicables, recibirá (i) el Efectivo y Nuevos Valores de Assured asignables a tal tenedor según el Plan, que, en el caso de los Nuevos Bonos de OG de Assured, puede, a elección de Assured, asegurarse de acuerdo con

una nueva póliza de seguros emitida por Assured en términos aceptables para Assured, y (ii) un pago en Efectivo de Assured en un monto a determinar o definir por Assured antes del comienzo de la Vista de Declaración de Divulgación. Las Elecciones de Bonistas de Assured ofrecidas a Bonistas Asegurados de Assured incluirán al menos la Elección de Bonistas de Assured 1 o la Elección de Bonistas de Assured 2. Las participaciones otorgadas en un fideicomiso de custodia, acuerdo de cuenta de plica o estructura general establecida en conexión con la Elección de Bonistas de Assured 2 debe ser elegible para DTC. En el caso de que un Bonista Asegurado de Assured no realice una elección, se considerará que tal Bonista Asegurado de Assured ha elegido la Elección de B de Assured 2.

(c)     **Aceleración de Bonos Asegurados de Assured:** sin perjuicio de cualquier otra disposición del Plan, en la medida en que no haya pagos pendientes adeudados por Assured con respecto a los Bonos Asegurados de Assured hasta la Vigencia inclusive, el pago del capital de los Bonos Asegurados de Assured se acelerará desde y después de la Fecha de Entrada de Vigor y tales Bonos Asegurados de Assured se considerarán pagaderos de la Vigencia en el Precio de Aceleración de Assured del cien por ciento (100 %) del capital de este más el interés acumulado a partir de este (o, en el caso de cualquier bono de apreciación de capital, el monto compuesto de este) a la fecha de pago.

(d)     **Cesión de Derechos de Canje:** sin perjuicio de cualquier otra disposición del Plan, en la Vigencia, se considerará que el ELA, la AEP y la ADCC han cedido a Assured cualquier derecho para canjear y ceder los Bonos Asegurados de Assured y cualquier derecho relacionado de tal forma que tales derechos puedan ejercerse directa y exclusivamente por Assured como si fuese el ELA, la AEP y la ADCC para tal propósito y todo monto debido en conexión con tal redención será igual al menor del precio de canje aplicable y el Precio de Aceleración de Assured.

(e)     **Derecho a Voto:** sujeto a los términos y disposiciones de la Orden de Declaración de Divulgación, la solicitud de aceptaciones y rechazos al Plan por parte de tenedores de Reclamaciones de Bonos Asegurados de Assured se elaborará por la Junta de Supervisión a Assured de acuerdo con las disposiciones de la Sección 301(c)(3) de PROMESA.

71.2     **Tratamiento de Reclamaciones de Bonos Asegurados de National**: en caso de que las Clases 3, 17 y 23 voten para aceptar el Plan de acuerdo con la sección 1126 del Código de Quiebras, y todas las Pólizas de Seguros de National y acuerdos relacionados que se refieran a Bonos Asegurados de National en pleno vigor y vigencia, sin pagos pendientes adeudados por National con respecto a tales Bonos Asegurados de National hasta la Vigencia inclusive, entonces, sin perjuicio de cualquier otra disposición del Plan, en la Vigencia, los tenedores de Reclamaciones de Bonos Asegurados de National recibirán los siguientes tratamientos, cuyos tratamientos se seleccionarán por parte de National a su entera discreción en o antes del comienzo de la Vista de Declaración de Divulgación:

(a)     **Tratamiento de Conmutación de National:** cada tenedor de una Reclamación de Bonos Asegurados de National Permitida tendrá la opción de elegir en la Papeleta/Formulario de Elección de recibir, en la Vigencia, la Contraprestación por Conmutación de National, distribuible por o por instrucción de National, y, si se elige, (i) el tenedor beneficiario de este no tendrá otro derecho ni derechos adicionales según o con respecto a la Póliza de Seguros de National o cualquier Fideicomiso de National o Cuenta de Plica de National y (ii) National recibirá la Contraprestación del Plan de National que de otro modo se asignaría o distribuiría a tal tenedor de una Reclamación de Bonos Asegurados de National Permitida. Si un tenedor de una Reclamación de Bonos Asegurados de National Permitida (1) no elige de forma oportuna y válida el Tratamiento de No Conmutación de National o (2) presenta una elección por menos de todas sus Reclamaciones de Bonos Asegurados de National (en cuyo caso, tal elección será nula y no tendrá validez ni vigencia), se considerará que tal tenedor ha elegido recibir el Tratamiento de Conmutación de National establecido en la presente subsección (a), para conmutar las Pólizas de Seguro de National, para liberar y extinguir las obligaciones de National según las Pólizas de Seguro de National y para recibir distribuciones de acuerdo con la presente subsección (a). Se considerarán como cancelados los Bonos Asegurados de National, lo que incluye las obligaciones de National según las Pólizas de Seguro de National, que subyace la Reclamación de Bonos Asegurados de National Permitida, en un tenedor de una Reclamación de Bonos Asegurados de National Permitida que no elige de forma válida recibir el Tratamiento de No Conmutación de National, a partir de la Vigencia.

(b)     **Tratamiento de No Conmutación de National:** en el caso de que un tenedor de una Reclamación de Bonos Asegurados de National Permitida elija de manera oportuna y válida no recibir el Tratamiento de Conmutación de National de acuerdo con las disposiciones de la Sección 71.2(a) del presente, tal tenedor de una Reclamación de Bonos Asegurados de National Permitida recibirá uno o más de los siguientes tratamientos, a elección de National, cuya elección será ejercida por National en o antes del comienzo de la Vista de Declaración de Divulgación.

(i)     **Fideicomisos de Custodia:** tal tenedor de una Reclamación de Bonos Asegurados de National Permitida (A) depositará, o se considerará que ha depositado, entre otras cosas, la Acción a Prorrata del tenedor de la Contraprestación de Plan de National y los Bonos Asegurados de National asignables a tal tenedor que elige en el Fideicomiso de National, (B) se considerará recibió su Acción a Prorrata de la Contraprestación del Plan de National y Certificados de National en contraprestación por esto y (C) no tiene recurso con respecto a National o las Pólizas de Seguro de National salvo por lo provisto según los términos del Fideicomiso de National.

(ii)     **Cuenta de plica:** tal tenedor de una Reclamación de Bonos Asegurados de National Permitida depositará, o se considerará que ha depositado, entre otras cosas, la Acción a Prorrata de tal tenedor de la Contraprestación del Plan de National en la Cuenta de Plica de National y tal Contraprestación por Conmutación de National depositada se tomará como garantía por las obligaciones de National a los tenedores de los Bonos Asegurados de National cuya Contraprestación del Plan de National se depositó en la Cuenta de Plica de National según las Pólizas de Seguro de National.

(iii) **Pago de Montos Acelerados:** National recibirá la
Contraprestación del Plan de National que de otro modo se asignaría a tal tenedor de una
Reclamación de Bonos Asegurados de National Permitida y National extinguirá de manera
total y completa su obligación con respecto a tal tenedor de una Reclamación de Bonos
Asegurados de National Permitida al pagar en la Vigencia, en Efectivo, el monto de este al
Precio de Aceleración de National.

(iv) **Tratamiento Alternativo:** la Junta de Supervisión y National se
reservan el derecho a formular una elección alternativa u opción de implementación con
respecto a los Bonos Asegurados de National que es aceptable para tanto la Junta de
Supervisión como National, a entera discreción de cada uno disponiéndose, sin embargo,
que tal elección alternativa u opción de implementación debe proponerse, por escrito, antes
del comienzo de la Vista de Declaración de Divulgación.

Sin perjuicio de lo que precede, y para evitar dudas, National puede realizar diferentes
elecciones, seleccionar entre las opciones (i) a (iv) que preceden, con respecto a los CUSIP
diferentes y tenedores diferentes de Bonos Asegurados de National.

(c) **Aceleración de Bonos Asegurados de National:** sin perjuicio de
cualquier otra disposición del Plan, en la medida que no haya pagos pendientes adeudados
por National con respecto a los Bonos Asegurados de National hasta la Vigencia inclusive
el pago del capital de los Bonos Asegurados de National se acelerará a la Vigencia y los
Bonos Asegurados de National se considerarán pagaderos a partir de la Vigencia a un
"precio de aceleración" del cien por ciento (100 %) del capital de este más el interés
acumulado en este (o, en el caso de bonos de cualquier bono de apreciación de capital, el
monto compuesto de este) a la fecha del pago.(d) **Cesión de Derechos de Redención**
: sin perjuicio de cualquier otra disposición del Plan, en la medida permitida a tenor con los
documentos definitivos aplicables y que no sea incongruente con los derechos provistos de
acuerdo con la Pólizas de Seguro de National aplicable, en la Vigencia, se considerará que
la ELA y la AEP cedieron a National todo derecho de redimir y asignar los Bonos
Asegurados de National y cualquier derecho relacionado de tal forma que tales derechos
puedan ejercerse directa y exclusivamente por parte de National como si fuese el ELA o la
AEP, según corresponda, para tal fin. Cualquier monto debido en conexión con cualquier
tal redención será igual al menor del precio de redención aplicable y el Precio de
Aceleración de National.

(d) **Derecho a Voto:** sujeto a los términos y disposiciones de la Orden de
Declaración de Divulgación, (a) la solicitud de aceptaciones o rechazos del Plan por parte
de tenedores de Reclamaciones de Bonos Asegurados de National y Reclamaciones de
Bonos de la ACT/ELA de National será realizada por la Junta de Supervisión a National de
acuerdo con las disposiciones de la Sección 301(c)(3) de PROMESA, la legislación
aplicable y los documentos que rigen, y (b) la elección de elegir entre el Tratamiento de
Conmutación de National y el Tratamiento de No Conmutación de National como se
establece en la Sección 71.2(a) del presente se realizará por parte de tenedores beneficiarios
de Bonos Asegurados de National; disponiéndose, sin embargo, que la forma del
Tratamiento de No Conmutación de National se seleccionará por parte de National de
acuerdo con la Sección 71.2(b) del presente.**Elección Considerada:** cada tenedor de una

Reclamación de Bonos de la AEP Antiguos (National) y una Reclamación de Bonos del ELA Antiguos (National) tendrá la opción de elegir en la Papeleta/Formulario de Elección entre las opciones (a) o (b) de la Sección 71.2 como se describió anteriormente; disponiéndose, sin embargo, que se considerará que los tenedores que realizan una elección a tenor con la Sección 71.2 con respecto a una Reclamación de Bonos de la AEP Antiguos (National) de dichos tenedores habrán realizado la misma elección con respecto a la Reclamación de Bonos de Garantía del ELA Antiguos (National) de dichos tenedores correspondiente a tenor con la Sección 71.2 de la presente.

71.3    **Tratamiento de Reclamaciones de Bonos Asegurados de Syncora**: en caso de que las Clases 5, 19 y 25 voten para aceptar el Plan de acuerdo con la Sección 1126 del Código de Quiebras, en la Vigencia, sin perjuicio de cualquier otra disposición del Plan, las Reclamaciones de Bonos Asegurados de Syncora recibirán los siguientes tratamientos, dichos tratamientos se seleccionarán por parte de Syncora a su entera discreción en o antes del comienzo de la Vista de Declaración de Divulgación:

(a)    **Tratamiento por Conmutación de Syncora:** cada tenedor de una Reclamación de Bonos Asegurados de Syncora Permitida tendrá la opción de elegir en la Papeleta/Formulario de Elección de recibir, en la Vigencia, la Contraprestación por Conmutación de Syncora, distribuible por o por instrucción de Syncora, y, si se elige, (i) el tenedor beneficiario de este no tendrá otro derecho ni derechos adicionales según o con respecto a la Póliza de Seguros de Syncora o cualquier Fideicomiso de Syncora o Cuenta de Plica de Syncora y (ii) Syncora recibirá la Contraprestación del Plan de Syncora que de otro modo se asignaría o distribuiría a tal tenedor de una Reclamación de Bonos Asegurados de Syncora Permitida. Si un tenedor de una Reclamación de Bonos Asegurados de Syncora Permitida (1) no elige de forma oportuna y válida el Tratamiento de No Conmutación de National o (2) presenta una elección por menos de todas sus Reclamaciones de Bonos Asegurados de Syncora (en cuyo caso, tal elección será nula y no tendrá validez ni vigencia), se considerará que tal tenedor ha elegido recibir el Tratamiento de Conmutación de Syncora establecido en la presente subsección (a), para conmutar las Pólizas de Seguro de Syncora, para liberar y extinguir las obligaciones de Syncora según las Pólizas de Seguro de Syncora y para recibir distribuciones de acuerdo con la presente subsección (a). Se considerarán como cancelados los Bonos Asegurados de Syncora, lo que incluye las obligaciones de Syncora según las Pólizas de Seguro de Syncora, que subyace la Reclamación de Bonos Asegurados de Syncora Permitida, de un tenedor de una Reclamación de Bonos Asegurados de Syncora Permitida que no elige de forma válida recibir el Tratamiento de No Conmutación de Syncora, a partir de la Vigencia.

(b)      **Tratamiento por No Conmutación de Syncora:** en el caso de que un tenedor de una Reclamación de Bonos Asegurados de Syncora Permitida elija de manera oportuna y válida no recibir el Tratamiento de Conmutación de Syncora de acuerdo con las disposiciones de la Sección 71.3(a) del presente, tal tenedor de una Reclamación de Bonos Asegurados de Syncora Permitida recibirá uno o más de los siguientes tratamientos, a elección de Syncora, cuya elección será ejercida por Syncora en o antes del comienzo de la Vista de Declaración de Divulgación.

(i)      **Fideicomisos de Custodia:** tal tenedor de una Reclamación de Bonos Asegurados de Syncora Permitida (A) depositará, o se considerará que ha depositado, entre otras cosas, la Acción a Prorrata del tenedor de la Contraprestación de Plan de Syncora y los Bonos Asegurados de Syncora asignables a tal tenedor que elige en el Fideicomiso de Syncora, (B) se considerará recibió su Acción a Prorrata de la Contraprestación del Plan de Syncora y Certificados de Syncora en contraprestación por esto y (C) no tendrá recurso con respecto a Syncora o las Pólizas de Seguro de Syncora excepto por lo provisto según los términos del Fideicomiso de Syncora.

(ii)      **Cuenta de plica:** tal tenedor de una Reclamación de Bonos Asegurados de Syncora Permitida depositará, o se considerará que ha depositado, entre otras cosas, la Acción a Prorrata de tal tenedor de la Contraprestación del Plan de Syncora en la Cuenta de Plica de Syncora y tal Contraprestación por Conmutación de Syncora depositada se tomará como garantía por las obligaciones de Syncora a los tenedores de los Bonos Asegurados de Syncora cuya Contraprestación del Plan de Syncora se depositó en la Cuenta de Plica de Syncora según las Pólizas de Seguro de Syncora.

(iii)      **Pago de Montos Acelerados:** Syncora recibirá la Contraprestación del Plan de Syncora que de otro modo se asignaría a tal tenedor de una Reclamación de Bonos Asegurados de Syncora Permitida y Syncora extinguirá de manera total y completa su obligación con respecto a tal tenedor de una Reclamación de Bonos Asegurados de Syncora Permitida al pagar en la Vigencia, en Efectivo, el monto de este al Precio de Aceleración de Syncora.

(iv)      **Tratamiento Alternativo:** la Junta de Supervisión y Syncora se reservan el derecho a formular una elección alternativa u opción de implementación con respecto a los Bonos Asegurados de Syncora que es aceptable tanto para la Junta de Supervisión como Syncora, a entera discreción de cada uno disponiéndose, sin embargo, que tal elección alternativa u opción de implementación debe proponerse, por escrito, antes del comienzo de la Vista de Declaración de Divulgación.

Sin perjuicio de lo que precede, y para evitar dudas, Syncora puede realizar diferentes elecciones, seleccionar entre las opciones (i) a (iv) que preceden, con respecto a los CUSIP diferentes y tenedores diferentes de Bonos Asegurados de Syncora.

(c)      **Aceleración de Bonos Asegurados de Syncora:** Sin perjuicio de cualquier otra disposición del Plan, en la medida a tenor con los documentos definitivos aplicables y que no sea incongruente con los derechos respectivos provistos de acuerdo con la Pólizas de Seguro de Syncora aplicable, el pago del capital de los Bonos Asegurados de

Syncora se considerará acelerado a la Vigencia y los Bonos Asegurados de Syncora se considerarán pagaderos a partir de la Vigencia a un precio de aceleración igual al capital de este a la Vigencia más el interés acumulado a la fecha del pago.**Cesión de Derechos de Canje**: sin perjuicio de cualquier otra disposición del Plan, en la Vigencia, se considerará que la ELA y la AEP cedieron a Syncora todo derecho de ceder y canjear los Bonos Asegurados de Syncora y cualquier derecho relacionado de tal forma que tales derechos puedan ejercerse directa y exclusivamente por parte de Syncora como si fuese el ELA o la AEP, según corresponda, para tal fin. Cualquier monto debido en conexión con cualquier redención será igual al menor del precio de canje aplicable y el Precio de Aceleración Syncora.

(e) **Derecho a Voto:** sujeto a los términos y disposiciones de la Orden de Declaración de Divulgación, (a) la solicitud de aceptaciones y rechazos del Plan por parte de tenedores de Reclamaciones de Bonos Asegurados de Syncora será realizada por la Junta de Supervisión a Syncora de acuerdo con las disposiciones de la Sección 301(c)(3) de PROMESA, y (b) la elección de elegir entre el Tratamiento de Conmutación de Syncora y el Tratamiento de No Conmutación de Syncora como se establece en la Sección 71.3(a) del presente se realizará por parte de tenedores beneficiarios de Bonos Asegurados de Syncora; disponiéndose, sin embargo, que la forma del Tratamiento de No Conmutación de Syncora se seleccionará por parte de Syncora de acuerdo con la Sección 71.3(b) del presente.

(f) **Elección Considerada:** cada tenedor de una Reclamación de Bonos de la AEP Antiguos (Syncora) y una Reclamación de Bonos del ELA Antiguos (Syncora ) tendrá la opción de elegir en la Papeleta/Formulario de Elección entre las opciones (a) o (b) de la Sección 71.3 como se describió anteriormente; disponiéndose, sin embargo, que se considerará que los tenedores que realizan una elección a tenor con la Sección 71.3 con respecto a la Reclamación de Bonos de la AEP Antiguos (Syncora) habrán realizado la misma elección con respecto a la Reclamación de Bonos de Garantía del ELA Antiguos (Syncora) correspondiente a tenor con la Sección 71.3 de la presente.

71.4     **Creación y Términos del Fideicomiso de FGIC:** sin perjuicio de cualquier otra disposición del Plan, en o antes de la Vigencia, a menos que los titulares de cincuenta y uno por ciento y una décima (50,1 %) de los Bonos Asegurados por FGIC acuerden lo contrario, los Fideicomisos de FGIC se constituirán en nombre de, y para el beneficio exclusivo de, los tenedores beneficiarios de los Bonos Asegurados por FGIC. El fideicomisario de la Fideicomiso de FGIC será una entidad que sea una institución financiera reconocida a nivel nacional domiciliada en EE.UU. y que actúe regularmente como fideicomisario en el mercado financiero municipal. En la Vigencia, los Activos del Fideicomiso de FGIC, que consisten en (a) los Bonos Asegurados por FGIC, (b) las distribuciones que se proporcionan a continuación respecto de dichos Bonos Asegurados por FGIC conforme a los términos del Artículo 73.1(b) del presente documento y (c) las Pólizas de Seguros de FGIC se depositarán en la Fideicomiso de FGIC. Los costos, incluidos honorarios y gastos y cualquier obligación que surja en el Plan, asociados con la formación y operación del Fideicomiso de FGIC serán pagados a partir de los Activos del Fideicomiso de FGIC y el Estado Libre Asociado no tendrá obligación alguna con respecto a ellos. Sin perjuicio del depósito en este y conforme a la Sección 73.6 del presente documento, los Bonos Asegurados por FGIC en el Fideicomiso de FGIC no serán cancelados y todos los derechos y recursos bajo y conforme a tales Bonos Asegurados por FGIC, la Resolución de Bonos (aparte de las obligaciones de pago del Estado Libre Asociado) y las pólizas de seguros de FGIC se mantendrán en pleno vigor y efecto. Tras el depósito de los activos del Fideicomiso de FGIC, a prorrata, el Fideicomiso de FGIC emitirá una o más series de certificados de FGIC a los beneficiarios de los bonos de FGIC cuyas acciones asignables de la distribución del Fideicomiso de Bonos de FGIC hayan sido depositadas en el Fideicomiso de FGIC. Los Certificados de FGIC otorgarán a un tenedor de estos su Participación a Prorrata del valor en cualquier distribución de Efectivo del Fideicomiso de FGIC respectiva, la cual (i) en todos los casos tendrá lugar inmediatamente después de su recepción por el Fideicomiso de FGIC, y (ii) reducirá automáticamente la obligación pendiente en virtud de las Pólizas de seguros de FGIC a partir de la fecha de dicha distribución a los titulares de Certificados de FGIC en el monto de dicha distribución. Para evitar dudas, la obligación de FGIC de pagar los montos programados de los Bonos de OG subyacentes en el momento y cuando se adeuden no se acelerará si en el consentimiento de una mayoría en cantidad nominal de titulares de Certificados de FGIC que voten. Una mayoría en la cantidad nominal de titulares de Certificados de FGIC que voten puede ordenar al fideicomisario del Fideicomiso de FGIC que realice cualquier acción con respecto a los Activos del Fideicomiso de FGIC, incluida, sin limitación, (i) votación, modificación, aceleración, evento de incumplimiento, elección y dirección de los derechos y recursos (incluidos, sin limitación, en relación con los procedimientos de insolvencia) y (ii) la venta u otra distribución de cualquier Activo del Fideicomiso de FGIC. En la fecha de vencimiento de los Bonos de OG en el Fideicomiso de FGIC, los Activos del Fideicomiso de FGIC se distribuirán prorrateados entre los titulares de los Certificados de FGIC. Dicha distribución reducirá automáticamente la obligación de las Pólizas de Seguros de FGIC en el monto del importe principal de dichos Bonos de OG a partir de la fecha de dicha distribución. Cada serie de Certificados de FGIC llevará CUSIP municipales únicos y será libremente negociable y transferible a través de The Depository Trust Company.

La documentación relacionada con el Fideicomiso de FGIC se negociará de buena fe y se incluirá en el Complemento del Plan.

El Fideicomiso de FGIC será un fideicomiso otorgante formado de conformidad con la ley de Delaware sujeto al tratamiento tributario «aprobado» apoyado por una opinión de un abogado fiscal de finanzas municipal reconocido nacionalmente. Todo el Efectivo distribuido por el Fideicomiso de FGIC reducirá la obligación conforme a las Pólizas de Seguro de FGIC pendientes, primero al acreditarlo contra intereses vencidos en Bonos de OG hasta el pago total y segundo contra el capital principal de Bonos de OG. En cada fecha de pago conforme a las Pólizas de Seguro de FGIC, el Fideicomiso de FGIC recibirá Efectivo con CCP vigente al momento y el derecho a DPO en el monto del déficit (cada uno según se define en el Tercer Plan Modificado de Rehabilitación de FGIC). El Efectivo se distribuirá a los titulares de los Certificados de FGIC como se establece anteriormente y el derecho a recibir el pago de DPO será del Fideicomiso de FGIC.

ARTÍCULO LXXII

**TRATAMIENTO DE CONTRATOS CONDICIONALES Y CONTRATOS DE ARRENDAMIENTO EN CURSO**

72.1     **Rechazo o Asunción de Contratos Condicionales o Contratos de Arrendamiento en Curso Pendientes**: a tenor con las secciones 365(b)(2) del Código de Quiebras, aplicable al Caso de Título III en virtud de la Sección 301 de PROMESA y sujeto a las disposiciones de las Secciones 72.5 y 72.7 del presente, todos los Contratos Condicionales y Contratos de Arrendamiento en Curso que existan entre los Deudores y cualquier Entidad, que no hayan vencido según sus propios términos en la Fecha de Confirmación o antes de esta, se considerarán rechazados por los Deudores a la Vigencia, salgo por cualquier Contrato Condicional y Contrato de Arrendamiento en Curso (a) de la AEP y relacionado al arrendamiento o subarrendamiento de Bienes de la AEP, (b) que se han asumido y cedido o rechazado a tenor con una orden del Tribunal del Título III dictada antes de la Vigencia, (c) que está designado específicamente como un contrato o contrato de arrendamiento a asumir o asumido y cedido en los programas del Complemento del Plan o (d) que se ha registrado con la Oficina del Contralor de Puerto Rico o fue aprobado por la Junta de Supervisión o autorizado por el Tribunal del Título III, a menos que se designe específicamente como contrato a ser rechazado en el Complemento al Plan; disponiéndose, sin embargo, que los Deudores reserven el derecho, en la Fecha de Confirmación o antes de esta, de modificar tales programas para eliminar cualquier Contrato Condicional y Contrato de Arrendamiento en Curso de este o agregar cualquier Contrato Condicional y Contrato de Arrendamiento en Curso a este, en cuyo caso tal o tales Contratos Condicionales y Contratos de Arrendamiento en Curso se considerarán, según el caso, rechazados, asumidos o asumidos y cedidos a la Vigencia. Los Deudores (y) notificarán cualquier Contrato Condicional y Contrato de Arrendamiento en Curso que deba asumirse o asumirse y cederse a través de la aplicación de la presente Sección 72.1, al incluir una lista de tales contratos y contratos de arrendamientos en el Complemento del Plan y (z) notificarán cualquier Contrato Condicional y Contrato de Arrendamiento en Curso a rechazar mediante la aplicación de la presente Sección 72.1, mediante una notificación por separado a las contrapartes pertinentes de dichos acuerdos. En la medida en que se introduzcan modificaciones a dichos programas, los Deudores notificarán a las partes del Contrato Condicional y Contrato de Arrendamiento en Curso afectados por cualquier tal modificación. La inclusión de un documento en los programas del Suplemento del Plan o en cualquier notificación separada no constituirá una admisión por parte de los Deudores de que tal documento es un Contrato Condicional y Contrato de Arrendamiento en Curso o de que los Deudores tengan responsabilidad alguna en virtud de ello.

72.2     **Aprobación del Rechazo o Asunción de Contratos Condicionales o Contratos de Arrendamiento en Curso**: la emisión de la Orden de Confirmación por parte del Tribunal del Título III constituirá la aprobación, a tenor con las secciones 365(a) y 1123(b)(2) del Código de Quiebras, del rechazo, asunción o la asunción y la cesión, según el caso, de un Contrato Condicional y un Contrato de Arrendamiento en Curso a tenor con la Sección 72.1 del Plan.

72.3      **Carácter incluyente**: a menos que se especifique lo contrario en los programas del Complemento del Plan, cada Contrato Condicional y Contrato de Arrendamiento en Curso enumerado o que se enumerará en estos incluirá todas las modificaciones, cambios, complementos, replanteamientos u otros acuerdos celebrados directa o indirectamente por cualquier acuerdo, instrumento u otro documento que de alguna manera afecte a dicho Contrato Condicional y Contrato de Arrendamiento en Curso, sin tener en cuenta si dicho acuerdo, instrumento u otro documento está incluido en dicho programa.

72.4      **Corrección de Incumplimientos**: salvo en la medida en que la parte no deudora o las partes en un Contrato Condicional y Contrato de Arrendamiento en Curso hayan acordado un trato diferente a asumirse o asumirse y cederse a tenor con la Sección 72.1 del Plan, los Deudores deberán, a tenor con las disposiciones de la sección 1123(a)(5)(G) y 1123(b)(2) del Código de Quiebras y de conformidad con los requisitos de la sección 365 del Código de Quiebras, en un plazo mínimo de veinte (20) días antes de la Vista de Confirmación, presentar ante el Tribunal del Título III y entregar por correo de servicios prioritarios a cada parte no Deudora de dichos Contratos Condicionales y Contratos de Arrendamiento en Curso a asumir a tenor con la Sección 72.1 del Plan, una notificación, en la que se enumerará el monto de corrección para cada contrato a otorgarse o contrato de arrendamiento en curso a asumir o asumir y ceder. Las partes en tales Contratos Condicionales y Contratos de Arrendamiento en Curso dispondrán de veinte (20) días a partir de la fecha de entrega de dicha notificación para presentar y entregar cualquier objeción a los montos de corrección enumerados por los Deudores. En caso de que se presenten objeciones, el Tribunal del Título III celebrará una vista en una fecha establecida por el Tribunal del Título III. Sin perjuicio de los términos y disposiciones de la Sección 72.1 del Plan, cada uno de los Deudores conservará su derecho a rechazar cualquiera de sus Contratos Condicionales y Contratos de Arrendamiento en Curso que estén sujetos a una controversia sobre los montos necesarios para corregir cualquier incumplimiento hasta la Vigencia.

72.5      **Pólizas de Seguros**: sujeto a los términos y disposiciones de la Sección 72.7 del presente, cada una de las pólizas de seguros de los Deudores y cualquier acuerdo, documento o instrumento relacionado con estas se considerarán Contratos Condicionales según el Plan; disponiéndose, sin embargo, que tal trato no podrá liberar ni eximir ninguna Monolínea con respecto a sus respectivas obligaciones con respecto a los tenedores de Reclamaciones a tenor con las pólizas de seguros y la ley aplicable y los documentos que rijan con respecto a ellos, ni se interpretará de tal forma.

72.6     **Reclamaciones por Daños y Perjuicios debido a Rechazo**: si el rechazo de un Contrato Condicional y Contrato de Arrendamiento en Curso por parte de los Deudores según el presente da lugar a daños y perjuicios a la o las otras partes en dicho contrato o contrato de arrendamiento, toda reclamación por tales daños y perjuicios, si hasta ahora no ha quedado demostrada por una evidencia de Reclamación presentada, será excluida para siempre y no será ejecutable contra los Deudores, ni sus bienes o agentes, sucesores o cesionarios, lo que incluye, de manera no taxativa, los Deudores Reorganizados, a menos que se presente una evidencia de Reclamación ante el Tribunal del Título III y se comunique a los abogados de la Junta de Supervisión y los Deudores Reorganizados, según el caso, a treinta (30) o días o antes de la última fecha entre (i) la Fecha de Confirmación y (ii) la fecha de emisión de una orden por parte del Tribunal del Título III que autoriza el rechazo de un Contrato Condicional y Contrato de Arrendamiento en Curso en particular.

72.7     **Obligaciones de Indemnización y Reembolso**: a los efectos del Plan, (i) en la medida en que sean de carácter condicional, las obligaciones de los Deudores, lo que incluye, de manera no taxativa, las pólizas de seguro de directivos y funcionarios, de indemnizar y reembolsar a sus directivos o funcionarios que fueran directivos o funcionarios, respectivamente, en la Fecha de Petición del ELA, la Fecha de Petición del SRE o la Fecha de Petición de la AEP o antes de estas, según el caso, se considerarán asumidas a partir de la Vigencia y (ii) las obligaciones de indemnización de los Deudores que surgen de la conducta de funcionarios y directivos durante el período a partir de la Fecha de Petición del ELA, a Fecha de Petición del SRE o la Fecha de Petición de la AEP, según el caso, serán Reclamaciones de Gastos Administrativos; disponiéndose, sin embargo, que, bajo ninguna circunstancia, los Deudores o los Deudores Reorganizados, según el caso, sean responsables de cualquier obligación de indemnización, costo o gasto asociado a la negligencia grave, el fraude intencional o la mala conducta intencional de sus respectivos funcionarios o directivos.

72.8     **Inexistencia de Vigencia**: en caso de que no se produzca la Vigencia, el Tribunal del Título III conservará la jurisdicción con respecto a toda solicitud de extensión de la fecha límite para asumir o rechazar Contratos Condicionales y Contratos de Arrendamiento en Curso a tenor con la sección 365(d)(4) del Código de Quiebras, a menos que tal o tales fechas límite hayan vencido.

72.9     **Reserva de Derechos**: nada de lo dispuesto en el Plan o en el Complemento del Plan constituirá una admisión por parte de los Deudores, los Deudores Reorganizados o cualquier otra parte de que dicho contrato o contrato de arrendamiento es, de hecho, un Contrato Condicional o Contrato de Arrendamiento en Curso o que los Deudores tienen responsabilidad alguna en virtud de estos. Si existe una controversia con respecto a si un contrato o contrato de arrendamiento es o fue condicional o no había vencido al momento de la asunción, los Deudores o Deudores Reorganizados dispondrán de cuarenta y cinco (45) días después de la emisión de una Orden Final que resuelva dicha controversia para alterar su tratamiento de tal contrato o contrato de arrendamiento.

72.10    **Contratos de Negociación Colectiva**: salvo a tenor con los Artículos LII y LIII del presente, ninguno de los contratos de negociación colectiva de los Deudores será tratado como Contrato Condicional y ninguno será asumido, rechazado o tratado de otro modo a tenor con el Plan, pero permanecerá en efecto sujeto, en todos los casos, a la legislación de Puerto Rico y a los Artículos LII y LIII relativas al pago y tratamiento continuo de pensiones y reclamaciones y obligaciones relacionadas.

## ARTÍCULO LXXIII

## DISPOSICIONES QUE RIGEN LAS DISTRIBUCIONES

73.1    **Tiempo y Manera de Distribución**: a menos que se disponga de otro modo en el presente, las distribuciones previstas en el Plan se realizarán a cada tenedor de una Reclamación Permitida de la siguiente manera:

(a)    **Distribuciones a Tenedores de Reclamaciones de Bonos de la AEP:** salvo que se disponga de otro modo en el presente, dentro de los diez (10) Días Hábiles siguientes a la Vigencia, el Agente Pagador distribuirá, o dispondrá que se distribuya, a cada tenedor de una Reclamación de Bonos de la AEP Permitida, y en cada caso coherente con los términos del presente, la Participación a Prorrata de tal Acreedor, de haberla, de la Distribución de Bonos de la AEP, la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG, la Tasa de Apoyo de Inversión, la Devolución de Tasas de Apoyo de Inversión y los Costos de Perfeccionamiento de la AEP/OG, si corresponde, disponiéndose, sin embargo, que la distribución de la Tasa de Apoyo de Inversión, de haberla, a un tenedor de una Reclamación de Bonos de la AEP Permitida esté sujeta al otorgamiento, antes de la Fecha de Votación, de los bonos aplicables de tal tenedor a través del Programa de Ofertas de Licitación Automático en The Depository Trust Company con una certificación de que tal tenedor es un Inversor por Cuenta Propia.

(b)    **Distribuciones a Tenedores de Reclamaciones de Bonos del ELA y Reclamaciones de Bonos de Garantía del ELA:** salvo que se disponga de otro modo en el presente, dentro de los diez (10) Días Hábiles siguientes a la Vigencia, el Agente Pagador distribuirá, o dispondrá que se distribuya, a cada tenedor de una Reclamación de Bonos del ELA Permitida o una Reclamación de Bonos de Garantía del ELA Permitida, (i) la recuperación aplicable dispuesta según el presente, (ii) la Tasa de Restricción del Acuerdo de Apoyo al Plan de la AEP/OG, (iii) la Tasa de Apoyo de Inversión, (iv) la Devolución de Tasas de Apoyo de Inversión y (v) los Costos de Perfeccionamiento de la AEP/OG tal Acreedor, en cada caso, en la medida que corresponda, disponiéndose, sin embargo, que la distribución de la Tasa de Apoyo de Inversión, de haberla, a un tenedor de una Reclamación de Bonos del ELA Permitida esté sujeta al otorgamiento, en de la Fecha de Votación o antes de esta, de los bonos aplicables de tal tenedor a través del Programa de Ofertas de Licitación Automático en The Depository Trust Company con una certificación de que tal tenedor es un Inversor por Cuenta Propia.

(c)    **Distribuciones a Tenedores de Reclamaciones de Bonos del SRE:** salvo que se disponga de otro modo en el presente, dentro de los diez (10) Días Hábiles siguientes a la Vigencia, el Agente Pagador distribuirá, o dispondrá que se distribuya, a

cada tenedor de una Reclamación de Bonos del SRE Permitida, la Participación a Prorrata de la Recuperación de Bonos del SRE calculada basada en la cantidad Reclamaciones de Bonos del SRE Permitidas.

(d) **Distribuciones con respecto a Reclamaciones sin Garantía Generales:** salvo que se disponga de otro modo en el presente, dentro de los diez (10) Días Hábiles siguientes a la Vigencia, el Agente Pagador distribuirá, o dispondrá que se distribuya, (i) a cada tenedor de una Reclamación de Bonos sin Garantía General del ELA Permitida y Reclamación de Bonos sin Garantía General del SRE Permitida, la Participación a Prorrata de tal Acreedor, de haberla, de la Recuperación de GUC del ELA y el Fondo de GUC del SRE, respectivamente y (ii) a cada tenedor de una Reclamación de Bonos sin Garantía General de la AEP Permitida distribuciones a tenor con los términos y disposiciones de la Sección 15.1 del presente.

(e) **Distribución de Efectivo a los Tenedores de Reclamaciones de Gastos Administrativos Permitidas:** salvo que se disponga de otro modo en el presente, o tan pronto como sea posible después de la fecha posterior de (i) la Vigencia y ii) la fecha en que tal Reclamación se convierta en una Reclamación Permitida, el Agente Pagador distribuirá, o dispondrá que se distribuya, a cada tenedor de una Reclamación de Gastos Administrativos Permitida, Efectivo en el monto de tal Reclamación Permitida.

73.2 **Puntualidad de los Pagos:** cualquier pago o distribución que deba efectuarse a tenor con el Plan se considerará puntual si se realiza dentro de los diez (10) Días Hábiles siguientes a la fecha establecida en el Plan. Cuando la distribución que deba efectuarse según el presente Plan venza en un día que no sea un Día Hábil, dicha distribución se efectuará, sin intereses, en el Día Hábil inmediatamente posterior, pero se considerará que se ha efectuado en la fecha de vencimiento, lo que incluye, de manera no taxativa, considerar que las distribuciones efectuadas a tenor con la Sección 73.1(a) del presente se han realizado en la Vigencia.

73.3 **Distribuciones por parte del Agente Pagador:** a menos que se disponga otra cosa en el presente, todas las distribuciones a tenor con el Plan serán realizadas por el Agente Pagador. Se considerará que el Agente Pagador posee todos los bienes que se distribuirán según el presente en fideicomiso a las Entidades facultadas para recibirlos. El Agente Pagador no tendrá ningún interés económico sobre tales bienes.

73.4 **Forma de Pago a tenor con el Plan:** a menos que la Entidad que reciba un pago acuerde otra cosa, cualquier pago en Efectivo que deba efectuar el Agente Pagador se efectuará, según decida quien efectúa el pago, mediante cheque de banco nacional o mediante transferencia bancaria desde un banco nacional; disponiéndose, sin embargo, que no se haga ningún pago de Efectivo a un tenedor de una Reclamación Permitida hasta el momento, si es que sucede, en que el monto pagadero a este sea igual o mayor que diez dólares ($ 10.00).

178

73.5      **Entrega de Distribuciones**: sujeto a las disposiciones de la Norma 9010 de las Normas de Quiebras, y salvo según se dispone en la Orden de Confirmación o el presente, las distribuciones y entregas a tenedores de Reclamaciones Permitidas se realizarán mediante The Depository Trust Company o en el domicilio de cada tenedor según se establece en los Programas presentados con el Tribunal, a menos que se sustituyan por los domicilios establecidos en las evidencias de Reclamación presentada por tales tenedores, o en el último domicilio conocido de tal tenedor si no se presenta evidencia de Reclamación o si se notificó por escrito a los Deudores de un cambio de domicilio; disponiéndose, sin embargo, que las distribuciones iniciales por parte del Agente Pagador a beneficio de tenedores de Reclamaciones de Bonos Permitidas se realizarán al fideicomisario o agente fiscal, según corresponda, de tal obligación a tenor con los documentos que rigen tales obligaciones; y disponiéndose, además, que el Agente Pagador puede realizar distribuciones de Tasas de Restricción del Acuerdo de Apoyo al Plan, la Devolución de Tasas de Apoyo de Inversión y Costos de Perfeccionamiento en Efectivo a una parte que tenga derecho a estos de una forma de mutuo acuerdo entre tal parte y el Agente Pagador. El fideicomisario o agente fiscal de cada una de esas obligaciones entregará, a su vez, la distribución a los tenedores en la forma prevista en los documentos aplicables que las rijan. Los Deudores, sus agentes y administradores, y el Agente Pagador no estarán obligados a reconocer ninguna transferencia de Reclamación de Bonos después de la Fecha de Registro de Distribución; disponiéndose, sin embargo, que los Nuevos Bonos de OG y los CVI serán transferibles y reconocidos si se realizan a tenor con los términos y condiciones del Contrato de Emisión de Nuevos Bonos de OG y el Contrato de Emisión de CVI, respectivamente.

73.6 **Cancelación de Pagarés, Instrumentos, Certificados y Otros documentos**: salvo (a) según se disponga en cualquier contrato, instrumento u otro acuerdo o documento celebrado u otorgado con relación al Plan, (b) para fines de probar el derecho de distribución a tenor con el Plan o (c) según se disponga de otro modo específicamente en el Plan (lo que incluye cualquier rechazo de Contratos Condicionales o Contratos de Arrendamiento en Curso a tenor con la Sección 72.1 del presente), en la Vigencia, los Bonos de la AEP, Bonos del SRE y Bonos de OG y todo instrumento y documento relacionado con estos se considera automáticamente cancelado, rescindido y sin validez ni vigencia alguna contra los Deudores sin medida o acción adicional a tenor con cualquier acuerdo, ley, regulación, orden o norma aplicable, y los Deudores y el fideicomisario aplicable, el agente pagador o agente fiscal, según el caso, no tendrán obligaciones ni deberes y responsabilidades continuas según estos y las obligaciones de las partes de los Deudores, según corresponda, a tenor con los Bonos de la AEP, Bonos del SRE y Bonos de OG y todo instrumento y documento relacionado con estos se extinguirá; disponiéndose, sin embargo, que, sin perjuicio de lo dispuesto en el presente al contrario, los Bonos de la AEP, Bonos del SRE y Bonos de OG y tales instrumentos y documentos relacionados seguirán siendo válidos únicamente (i) para permitir que el Agente Pagador realice las distribuciones establecidas en el Plan y realice toda otra función administrativa o de otro tipo necesaria con respecto a este, (ii) para permitir que los tenedores de Reclamaciones de Bonos Permitidas reciban distribuciones a tenor con los términos y disposiciones del Plan, (iii) para que cualquier fideicomisario, agente, administrador de contratos o entidad similar de todo instrumento y documento relacionado a esto, realice la funciones necesarias, lo que incluye realizar distribuciones, a tenor con el Plan, y para tener el beneficio de todos los derechos y protecciones y otras disposiciones de tales instrumentos y documentos, según corresponda, y todo otro acuerdo relacionado, (iv) para establecer los términos y condiciones aplicables a las partes de tales documentos e instrumentos que no sean los Deudores o (v) según sea necesario para conservar cualquier reclamación en las pólizas de seguros respectivos y documentos relacionados emitidos por una Monolínea y la Junta de Supervisión solicitará que el ELA y la AEP realicen los esfuerzos razonables para (1) mantener los números de CUSIP existentes para los Bonos de OG y Bonos de la AEP asegurados con Monolínea, respectivamente y(2) tomar las medidas razonables necesarias para preservar y dar pleno vigor y efecto a tales Reclamaciones. Sin perjuicio de lo que antecede, y salvo que se disponga de otro modo en el Plan, tales bonos o documentos de bonos que queden pendientes no constituirán la base para la afirmación de ninguna Reclamación contra los Deudores o Deudores Reorganizados, según el caso.

73.7 **Distribuciones no Entregables/Reservadas**:

(a) **Retención de Distribuciones no Entregables por parte del Agente Pagador:** si cualquier distribución a cualquier tenedor es devuelta al Agente Pagador como no entregable, no se realizará ninguna otra distribución a dicho tenedor a menos y hasta que se notifique por escrito al Agente Pagador de la dirección actual de tal tenedor. Sujeto a los términos y disposición de la Sección 73.7(b) del presente, las distribuciones no entregables permanecerán en posesión del Agente Pagador hasta el momento en que una distribución se torne entregable. Todas las Entidades que, en última instancia, reciban Efectivo no entregable no tendrán derecho a ningún interés u otros montos devengados sobre ellos de ningún tipo. Nada de lo dispuesto en el Plan requerirá que el Agente Pagador intente

localizar a cualquier tenedor de una Reclamación Permitida.

(b) **Falta de Reclamar Distribuciones no Entregables:** si (i) el Agente Pagador envía un cheque a un tenedor con respecto a las distribuciones y tal cheque no se hace efectivo en un plazo de ciento veinte (120) días después de la fecha en que se expidió dicho cheque o (ii) cualquier otra forma de distribución a un tenedor es de otro modo imposible de entregar, el Agente Pagador (o su agente debidamente autorizado) deberá, en o antes de la fecha ciento ochenta (180) días posterior a (i) la Vigencia, con respecto a todas las Reclamaciones Permitidas a partir de la Vigencia, (ii) la fecha en que se haga una distribución con respecto a cualquier Reclamación Controvertida que se convierta en Reclamación Permitida después de la Vigencia, presentar una lista en el Tribunal del Título III en la que se indiquen los nombres de las Entidades para las cuales se hayan efectuado distribuciones según el presente que no se hayan hecho efectivas o que hayan sido devueltas como no entregables en la fecha de su entrega. Cualquier tenedor de una Reclamación Permitida en tal lista que no se identifique y haga valer sus derechos a tenor con el Plan para recibir una distribución dentro de los seis (6) meses posteriores a la fecha establecida en la lista se le extinguirá el derecho a tal distribución no entregable y quedará excluido para siempre de hacer valer cualquier derecho a tenor con el Plan contra Deudores Reorganizados, los fideicomisarios o sus profesionales, agentes o bienes correspondientes y todo (1) Efectivo en posesión del Agente Pagador o el fideicomisario con respecto a valores existentes, según el caso, se liberará a Deudores Reorganizados para su uso en la liquidación de gastos de operación de Deudores Reorganizados y (2) los Nuevos Bonos de OG y los CVI en posesión del Agente Pagador o fideicomisario con respecto a los valores existentes se liberarán a los Deudores Reorganizados para cancelación o depósito en el tesoro de los Deudores Reorganizados, según determinen los Deudores Reorganizados a su entera y absoluta discreción.

73.8     **Requisitos de Retención y Presentación de Informes**: cualquier parte que
emita cualquier instrumento o realice cualquier distribución según el Plan deberá cumplir
con todos los requisitos aplicables de retención y presentación de informes impuestos por
cualquier ley fiscal o autoridad fiscal federal, estatal o local de los Estados Unidos, y todas
las distribuciones según el Plan estarán sujetas a tales requisitos de retención o
presentación de informes. Sin perjuicio de lo anterior, cada tenedor de una Reclamación
Permitida que vaya a recibir una distribución según el Plan tendrá la responsabilidad única
y exclusiva de satisfacción y pago de los impuestos gravados a ese tenedor por cualquier
unidad gubernamental, lo que incluye los impuestos de rentas, retención y otras
obligaciones fiscales, a causa de tal distribución. Cualquier parte que emita cualquier
instrumento o realice cualquier distribución según el Plan tiene derecho, pero no la
obligación, a no realizar una distribución hasta que tal tenedor haya tomado las
disposiciones satisfactorias para dicha parte emisora o pagadora para el pago de tales
obligaciones de retención de impuestos y, si cualquier de las partes que emite cualquier
instrumento o realiza cualquier distribución según el Plan no realiza las retenciones con
respecto a la distribución de tal tenedor, y más tarde es considerada responsable por el
monto de dicha retención, el tenedor reembolsará a dicha parte. El Agente Pagador podrá
exigir, como condición para la recepción de una distribución, que el tenedor complete el
Formulario W-8 o el Formulario W-9 correspondiente, según sea aplicable a cada tenedor.
Si el tenedor no cumple dicha solicitud en el plazo de un año, dicha distribución se
considerará una Distribución no Reclamada.

73.9     **Tiempo Límite para Pagos en Efectivo**: los cheques expedidos por el
Agente Pagador a causa de las Reclamaciones Permitidas serán nulos si no se hacen
efectivos en un plazo de ciento veinte (120) días a partir de la fecha de emisión de estos. El
tenedor de la Reclamación Permitida con respecto a la cual se expidió inicialmente dicho
cheque presentará directamente las solicitudes de reexpedición de cualquier cheque al
Agente Pagador. Toda reclamación con respecto a tal cheque anulado se efectuará en o
antes del posterior del (i) primer (1er) aniversario de la Vigencia o (ii) noventa (90) días
después de la fecha de emisión de dicho cheque, si dicho cheque representa una
distribución final según la presente a causa de dicha Reclamación. Después de tal fecha,
todas las Reclamaciones con respecto a los cheques anulados deberán extinguirse y
excluirse para siempre y el Agente Pagador conservará todos los fondos relacionados con
estas con el único fin de redistribuirlos a los tenedores de Reclamaciones Permitidas a
tenor con los términos y disposiciones del presente.

73.10    **Distribuciones después de la Vigencia**: se considerará que las
distribuciones efectuadas después de la Vigencia a tenedores de Reclamaciones que no son
Reclamaciones Permitidas a la Vigencia, pero que posteriormente pasan a ser
Reclamaciones Permitidas, se han realizado a tenor con los términos y disposiciones del
Artículo LXXVIII del Plan.

73.11 **Compensaciones**: salvo que se disponga de otro modo en el Plan o en la Orden de Confirmación, el Agente Pagador puede, a tenor con la legislación de quiebras o que no sea de quiebras, compensar contra cualquier Reclamación Permitida y las distribuciones a realizar a tenor con el Plan a causa de esta (antes de que se realice ninguna distribución a causa de tal Reclamación por parte del Agente Pagador), las reclamaciones, derechos y Causas de acción de cualquier naturaleza que los Deudores o Deudores Reorganizados puedan tener contra el tenedor de tal Reclamación Permitida, disponiéndose, sin embargo, que ni la falta de realizar tal compensación ni la asignación de ninguna Reclamación según el presente constituirá una renuncia o descargo por parte de los Deudores o Deudores Reorganizados de tales reclamaciones, derechos y Causas de acción que los Deudores o Deudores Reorganizados puedan poseer contra tal tenedor, y disponiéndose, además, que nada de lo dispuesto en el presente pretende limitar la capacidad de cualquier Acreedor de dar pleno vigor y efecto a derechos de compensación o recuperación conservados o permitidos por las disposiciones de las secciones 553, 555, 559 o 560 del Código de Quiebras o a tenor con el derecho de derecho consuetudinario de recuperación; y disponiéndose, además, que nada de lo contenido en la presente Sección 73.11 afectará los descargos e interdictos dispuestos en el Artículo LXXXVIII del Plan.

73.12 **Asignación de Distribuciones del Plan entre Capital e Intereses**: en la medida en que cualquier Reclamación Permitida con derecho a una distribución según el Plan consista en endeudamiento y otros montos (tal como intereses devengados pero no pagados sobre estas), tal distribución se asignará en primer lugar, a los intereses devengados y no pagados a partir de la fecha inmediatamente anterior a la Fecha de Petición del ELA, la Fecha de Petición del SRE o la Fecha de Petición de la AEP, según corresponda, en segundo lugar, al capital de la Reclamación (según se determine a efectos del impuesto federal sobre ingresos) y luego, en la medida en que la contraprestación exceda el capital de la Reclamación, a esos otros montos; disponiéndose, sin embargo, que el tratamiento por parte de los Deudores y Deudores Reorganizados de cualquier distribución para sus fines fiscales no serán vinculantes para ningún Acreedor en cuanto al tratamiento de tales distribuciones con fines reglamentarios, fiscales o de otro tipo.

73.13 **Pago de Honorarios y Gastos del Fideicomisario**: las distribuciones que se realizarán de acuerdo con el Plan pretenden incluir todos los honorarios y gastos del fideicomisario y del agente de pago que puedan ser supuestamente adeudados por el ELA, el SRE y la AEP con respecto a los montos desembolsados de acuerdo con el Plan. El Plan no limita, ni debe interpretarse que lo hace, los derechos de dichos fideicomisarios y agentes de pago al pago de dichos montos con las distribuciones que se realicen en virtud de este, incluida, sin limitación, la imposición de cualquier gravamen del fideicomisario o agente de pago sobre dichas distribuciones.

73.14     **Beneficiario Efectivo**: a todos los efectos del Plan, lo que incluye, de manera no taxativa, a los efectos de las distribuciones a tenor con los términos y disposiciones del presente Artículo LXXIII, salvo con respecto a las Reclamaciones derivadas de bonos aseguradas por Syncora, se entenderá por «tenedor» de una Reclamación cualquier Entidad que, directa o indirectamente, tenga poder de inversión respecto de cualquier Reclamación, lo que incluye la facultad de enajenar o dirigir la enajenación de tal Reclamación; disponiéndose, sin embargo, que únicamente a los efectos del Artículo LXXIII del presente y de la sección 1126 del Código de Quiebras, el «tenedor» de cualquier Reclamación de Bonos Asegurados se determinará a tenor con la Sección 301(c)(3) de PROMESA y cualquier ley o documento que rija tales Reclamaciones de Bonos Asegurados.

73.15     **Valor de Distribuciones**: a efectos del cálculo del valor de las distribuciones efectuadas a tenedores de Reclamaciones Permitidas, (a) el Efectivo se valorará en el monto distribuido y (b) los Nuevos Bonos de OG y los CVI se valorarán en su capital original.

ARTÍCULO LXXIV

**FIDEICOMISO DE ACCIONES DE REVOCACIÓN**

74.1     **Celebración de Contrato de Fideicomiso de Acciones de Revocación**: en o antes de la Vigencia, los Deudores y el Fideicomisario de Acciones de Revocación celebrarán el Contrato de Fideicomiso de Acciones de Revocación y tomarán todas las demás medidas necesarias para establecer el Fideicomiso de Acciones de Revocación y los Intereses del Fideicomiso de Acciones de Revocación en este, que serán en beneficio de los Beneficiarios del Fideicomiso de Acciones de Revocación, tanto si sus Reclamaciones se Permiten antes, en o después de la Vigencia. El Contrato de Fideicomiso de Acciones de Revocación puede otorgar facultades, obligaciones y autoridades además de los expresamente enunciados en el presente, pero sólo en la medida en que esas facultades, obligaciones y autoridades no afecten la condición del Fideicomiso de Acciones de Revocación como «fideicomiso de liquidación» a efectos del impuesto federal sobre ingresos de los Estados Unidos.

74.2     **Finalidad del Fideicomiso de Acciones de Revocación**: el Fideicomiso de Acciones de Revocación se establecerá con el único propósito de realizar Acciones de Revocación y distribuir sus activos, a tenor con la sección 301.7701-4(d) del Reglamento del Tesoro, sin ningún objetivo de continuar o participar en la realización de un comercio o negocio, salvo en la medida en que sea razonablemente necesario y coherente con el propósito de liquidar el Fideicomiso de Acciones de Revocación.

74.3        **Activos del Fideicomiso de Acciones de Revocación**: el Fideicomiso de Acciones de Revocación consistirá en los Activos del Fideicomiso de Acciones de Revocación. En la Vigencia, los Deudores transferirán todos los Activos del Fideicomiso de Acciones de Revocación al Fideicomiso de Acciones de Revocación. Los Activos del Fideicomiso de Acciones de Revocación podrán transferirse sujeto a determinadas obligaciones, según lo dispuesto en el Plan o en el Contrato de Fideicomiso de Acciones de Revocación. Dicha transferencia estará exenta de todo impuesto de timbre, transferencia inmobiliaria, información hipotecaria, ventas, uso u otro impuesto similar, a tenor con la sección 1146(a) del Código de Quiebras. Tras la entrega de los Activos del Fideicomiso de Acciones de Revocación al Fideicomiso de Acciones de Revocación, los Deudores y sus predecesores, sucesores y cesionarios, y cada una de las Entidades liberadas a tenor con la Sección 88.2 del presente, se liberarán de toda responsabilidad con respecto a la entrega de tales distribuciones.

74.4        **Administración del Fideicomiso de Acciones de Revocación**: el Fideicomiso de Acciones de Revocación será administrado por el Fideicomisario de Acciones de Revocación a tenor con el Contrato de Fideicomiso de Acciones de Revocación y el Plan. En caso de cualquier incongruencia entre el Plan y el Contrato de Fideicomiso de Acciones de Revocación, regirá el Contrato de Fideicomiso de Acciones de Revocación.

74.5        **El Fideicomisario de Acciones de Revocación**: en el caso de que el Fideicomisario de Acciones de Revocación fallezca, quede incapacitado, se rescinda su contrato o renuncie por cualquier razón, la Junta del Fideicomiso de Acciones de Revocación designará a un sucesor; disponiéndose, sin embargo, que bajo ninguna circunstancia el Fideicomisario de Acciones de Revocación sea un directivo o funcionario de cualquier Filial del Fideicomiso de Acciones de Revocación.

74.6 **Función del Fideicomisario de Acciones de Revocación**: con vistas a fomentar y conforme con el propósito del Fideicomiso de Acciones de Revocación y sujeto a los términos de la Orden de Confirmación, el Plan y el Contrato de Fideicomiso de Acciones de Revocación y a la supervisión de la Junta del Fideicomiso de Acciones de Revocación, el Fideicomisario de Acciones de Revocación tendrá, entre otros, los siguientes derechos, facultades y responsabilidades: (i) mantener, gestionar y convertir a Efectivo y distribuir oportunamente los Activos del Fideicomiso de Acciones de Revocación, lo que incluye procurar y resolver las Reclamaciones pertenecientes al Fideicomiso de Acciones de Revocación, (ii) mantener los Activos del Fideicomiso de Acciones de Revocación en beneficio de los Beneficiarios del Fideicomiso de Acciones de Revocación, ya sea si las Reclamaciones son Permitidas en la Vigencia o después de esta, (iii) bajo el criterio de negocios razonable del Fideicomisario de Acciones de Revocación, investigar, procurar, resolver y/o abandonar derechos, Causas de acción o litigios del Fideicomiso de Acciones de Revocación, (iv) preparar y presentar (o disponer que se prepare y presente), a partir de la Vigencia, todo formulario, declaración e informe regulatorio e impositivo y cualquier otro documento relacionado necesario o que el Fideicomisario de Acciones de Revocación considere apropiado con respecto al Fideicomiso de Acciones de Revocación, (v) bajo el criterio de negocios razonable del Fideicomisario de Acciones de Revocación, controlar, procurar y/o resolver en nombre del Fideicomiso de Acciones de Revocación, objeciones a Reclamaciones de las cuales el Fideicomisario de Acciones de Revocación será responsable, (vi) mantener, gestionar y distribuir oportunamente Ingresos del Fideicomiso de Acciones de Revocación en Efectivo u otro mediante el ejercicio se sus facultades y autoridad y (vii) no prolongar indebidamente la duración del Fideicomiso de Acciones de Revocación. En toda circunstancia, el Fideicomisario de Acciones de Revocación actuará en el interés superior de todos los Beneficiarios del Fideicomiso de Acciones de Revocación y con vistas a fomentar el propósito del Fideicomiso de Acciones de Revocación.

74.7 **Poder Fiscal del Fideicomisario de Acciones de Revocación respecto a los Deudores**: a partir de la Vigencia, el Fideicomisario de Acciones de Revocación preparará y presentará (o dispondrá que se prepare y presente), en nombre de los Deudores, toda declaración de impuestos u otras declaraciones de información fiscal que deban presentarse o que el Fideicomisario de Acciones de Revocación considere apropiado de otro modo.

74.8 **Transferibilidad de los Intereses del Fideicomiso de Acciones de Revocación**: los Intereses del Fideicomiso de Acciones de Revocación no serán transferibles o cedibles salvo mediante testamento, sucesión intestada o de pleno derecho.

74.9 **Efectivo**: el Fideicomisario de Acciones de Revocación podrá invertir Efectivo (lo que incluye ganancias o ingresos de este) a tenor con lo permitido en la sección 345 del Código de Quiebras; disponiéndose, sin embargo, que tales inversiones sean inversiones autorizadas por un fideicomiso de liquidación en el sentido de la de la sección 301.7701-4(d) del Reglamento del Tesoro, tal como se refleja en este, o según las directrices o resoluciones del SII u otras autoridades de control aplicables.

74.10    **Distribución de Activos del Fideicomiso de Acciones de Revocación**: el Fideicomisario de Acciones de Revocación distribuirá a los tenedores de Reclamaciones Permitidas a causa de sus Intereses del Fideicomiso de Acciones de Revocación, en base semestral, todo el Efectivo irrestricto disponible (lo que incluye Efectivo que recibió de los Deudores en la Vigencia y tratar cualquier inversión permisible como Efectivo a los fines de la presente Sección 74.10), salvo por (i) Efectivo reservado a tenor con el Contrato de Fideicomiso de Acciones de Revocación para financiar las actividades del Fideicomiso de Acciones de Revocación, (ii) los montos que sean asignables o que se retengan para Reclamaciones Controvertidas a tenor con la Sección 80.3 del presente para pagar los gastos razonables incurridos o adelantados (lo que incluye, de manera no taxativa, cualquier impuesto gravado o pagadero por parte del Fideicomiso de Acciones de Revocación con respecto a los Activos del Fideicomiso de Acciones de Revocación); disponiéndose, sin embargo, que el Fideicomisario de Acciones de Revocación no estará obligado a realizar una distribución a tenor con la presente Sección 74.10 si el monto acumulado neto de Efectivo irrestricto disponible para distribución (tomando en cuenta las exclusiones que preceden) es tal que tornaría la distribución inviable según lo determine razonablemente el Fideicomisario de Acciones de Revocación, con el consentimiento de la Junta del Fideicomiso de Acciones de Revocación, a tenor con la ley aplicable, y siempre que tal monto acumulado sea menor que veinticinco millones de dólares ($ 25,000,000.00); y disponiéndose, además, que el Fideicomisario de Acciones de Revocación con el consentimiento de la Junta del Fideicomiso de Acciones de Revocación pueda decidir pasar por alto su primera distribución trimestral a aquellos tenedores cuyos Intereses del Fideicomiso de Acciones de Revocación con respecto a los cuales el Fideicomisario de Acciones de Revocación, a su criterio razonable, no esté preparado administrativamente a realizar tal distribución, en cuyo caso, tal distribución se realizará a tales tenedores tan pronto como sea posible a partir del momento en que el Fideicomisario de Acciones de Revocación esté preparado para realizarla.

74.11    **Financiación, Costos y Gastos del Fideicomiso de Acciones de Revocación**: en la Vigencia, el Fideicomiso de Acciones de Revocación se financiará una única vez por un monto de hasta diez millones de dólares ($ 10,000,000.00). Los costos y gastos razonables del Fideicomiso de Acciones de Revocación, lo que incluye los honorarios y gastos del Fideicomisario de Acciones de Revocación y sus profesionales contratados, se pagarán con cargo a los Activos del Fideicomiso de Acciones de Revocación. Las tasas y gastos incurridos en relación con el seguimiento y la resolución de cualquier Reclamación se considerarán costos y gastos del Fideicomiso de Acciones de Revocación.

74.12    **Compensación del Fideicomisario de Acciones de Revocación**: la o las personas físicas que cumplan funciones o comprendan el Fideicomisario de Acciones de Revocación tendrán derecho a una compensación razonable por un monto coherente con el de funcionarios similares que desempeñen funciones similares, cuyo pago estará sujeto a la aprobación del Tribunal del Título III.

187

74.13 **Contratación de Profesionales/Empleados por parte del Fideicomisario de Acciones de Revocación**: sujeto a la aprobación y el consentimiento de la Junta del Fideicomiso de Acciones de Revocación, el Fideicomiso de Acciones de Revocación podrá contratar y compensar a abogados, otros profesionales y empleados para que asistan a la Junta del Fideicomiso de Acciones de Revocación bajo los términos que el Fideicomisario de Acciones de Revocación considere apropiados sin la aprobación del Tribunal del Título III.

74.14 **Tratamiento del Impuesto Federal a los Ingresos del Fideicomiso de Acciones de Revocación**:

(a) **Activos del Fideicomiso de Acciones de Revocación tratados como propiedad de los Acreedores.** Para todos los fines de impuestos federales sobre ingresos de los Estados Unidos, todas las partes (lo que incluye, de manera no taxativa, los Deudores, el Fideicomisario de Acciones de Revocación y los Beneficiarios del Fideicomiso de Acciones de Revocación) tratarán la transferencia de los Activos del Fideicomiso de Acciones de Revocación al Fideicomiso de Acciones de Revocación como (1) una transferencia de los Activos del Fideicomiso de Acciones de Revocación (sujeta a cualquier obligación relacionada con esos activos) directamente a los Beneficiarios del Fideicomiso de Acciones de Revocación y, en la medida en que los activos del Fideicomiso de Acciones de Revocación sean asignables a Reclamaciones Controvertidas, a la Reserva de Reclamaciones del Fideicomiso de Acciones de Revocación, seguido de (2) la transferencia de tales beneficiarios al Fideicomiso de Acciones de Revocación de los Activos del Fideicomiso de Acciones de Revocación (que no sean los Activos del Fideicomiso de Acciones de Revocación asignables a la Reserva de Reclamaciones del Fideicomiso de Acciones de Revocación) a cambio de Intereses del Fideicomiso de Acciones de Revocación. En consecuencia, los Beneficiarios del Fideicomiso de Acciones de Revocación serán tratados a efectos del impuesto federal sobre ingresos de los Estados Unidos como los otorgantes y propietarios de su participación respectiva de los Activos del Fideicomiso de Acciones de Revocación (que no sean Activos del Fideicomiso de Acciones de Revocación asignables a la Reserva de Reclamaciones del Fideicomiso de Acciones de Revocación, como se detalla más adelante). El tratamiento anterior se aplicará también, en la medida en que lo permita la ley aplicable, a efectos de impuestos sobre ingresos estatales y locales.

(b) **Presentación de Informes Fiscales.**

(i) El Fideicomisario de Acciones de Revocación preparará y presentará (o dispondrá que se preparen y presenten) declaraciones de impuestos para el Fideicomiso de Acciones de Revocación que traten al Fideicomiso de Acciones de Revocación como fideicomiso de otorgante a tenor con la sección 1.671-4(a) del Reglamento del Tesoro y a tenor con la presente Sección 74.14. El Fideicomisario de Acciones de Revocación también enviará anualmente a cada tenedor de un Interés del Fideicomiso de Acciones de Revocación una declaración separada sobre los recibos y gastos del Fideicomiso de Acciones de Revocación según se requiere acorde a los impuesto federales sobre ingresos de los Estados Unidos y ordenará a todos esos tenedores que

utilicen esa información al preparar sus declaraciones federales del impuesto sobre ingresos de los Estados Unidos o que remitan la información relevante a los tenedores beneficiarios de tales tenedores con instrucciones de utilizar tal información en la preparación de sus declaraciones de impuestos federales sobre ingresos de los Estados Unidos. El Fideicomisario de Acciones de Revocación también presentará (o dispondrá que se presente) cualquier otro informe, declaración o divulgación relacionada con el Fideicomiso de Acciones de Revocación que sea requerido por cualquier unidad gubernamental.

(ii) El Fideicomisario de Acciones de Revocación valorará entonces de buena fe todos los demás Activos del Fideicomiso de Acciones de Revocación y hará disponible todos los valores disponibles ocasionalmente, en la medida en que sea pertinente, y tales valores serán utilizados sistemáticamente por todas las partes del Fideicomiso de Acciones de Revocación (lo que incluye, de manera no taxativa, los Deudores, el Fideicomisario de Acciones de Revocación y los Beneficiarios de Acciones de Revocación) para todo fin de impuestos federales sobre ingresos de los Estados Unidos.

(iii) Las asignaciones de ingresos imponibles del Fideicomiso de Acciones de Revocación entre los Beneficiarios del Fideicomiso de Acciones de Revocación (que no sean las ingresos imponibles asignados a la Reserva de Reclamaciones del Fideicomiso de Acciones de Revocación) se determinarán en función de la forma en que se distribuiría un monto de efectivo que represente tales rentas imponibles (si se permitiera distribuir ese efectivo en ese momento) si, inmediatamente antes de tal distribución considerada, el Fideicomiso de Acciones de Revocación hubiese distribuido todos sus activos (valorados en su valor contable fiscal, y que no sean los activos asignados a la Reserva de Reclamaciones del Fideicomiso de Acciones de Revocación) a los tenedores de los Intereses del Fideicomiso de Acciones de Revocación, ajustados acorde a los ingresos imponibles previos y pérdidas y tomando en cuenta todas las distribuciones anteriores y simultáneas del Fideicomiso de Acciones de Revocación. De manera similar, las pérdidas imponibles del Fideicomiso de Acciones de Revocación se asignarán por referencia a la forma en que una pérdida económica se asumiría inmediatamente después de una distribución liquidada hipotética de los Activos del Fideicomiso de Acciones de Revocación restantes. El valor contable de los Activos del Fideicomiso de Acciones de Revocación a efectos del presente apartado será igual a su valor justo de mercado en la Vigencia, ajustado a tenor con los principios de contabilidad fiscal prescritos por el CTI, los Reglamentos del Tesoro aplicables y otras autoridades y pronunciamientos administrativos y judiciales aplicables.

(iv) Sujeto a la orientación definitiva del SII o un tribunal de jurisdicción competente en sentido contrario (lo que incluye la recepción por parte del Fideicomisario de Acciones de Revocación de una carta en respuesta a consulta si el Fideicomisario de Acciones de Revocación así lo solicita, o la recepción de una determinación adversa por el SII tras la auditoría si no es impugnada por el Fideicomisario de Acciones de Revocación), el Fideicomisario de Acciones de Revocación deberá (A) elegir oportunamente tratar cualquier Reserva de Reclamaciones del Fideicomiso de Acciones de Revocación como un «fondo de propiedad controvertida» regido por la sección 1.468B-9 del Reglamento del Tesoro y (B) en la medida en que lo permita la ley aplicable,

realizar informes de manera coherente con lo que precede con fines de impuesto sobre ingresos locales y estatales. Todas las partes (lo que incluye el Fideicomisario de Acciones de Revocación y los Beneficiarios del Fideicomiso de Acciones de Revocación) deberán realizar informes a efectos de impuestos federales, estatales y locales sobre ingresos de los Estados Unidos de conformidad con lo anterior.

(v) El Fideicomisario de Acciones de Revocación será responsable del pago, con cargo a los Activos del Fideicomiso de Acciones de Revocación, de cualquier impuesto gravado al fideicomiso o a sus activos, lo que incluye la Reserva de Reclamaciones del Fideicomiso de Acciones de Revocación. En el caso de que, y en la medida en que, cualquier Efectivo retenido a causa de Reclamaciones Controvertidas en la Reserva de Reclamaciones del Fideicomiso de Acciones de Revocación sea insuficiente para pagar la parte de tales impuestos atribuibles a los ingresos imponibles derivados de los activos asignables o retenidos a causa de las Reclamaciones Controvertidas (lo que incluye toda renta que pueda derivarse de la distribución de los activos de la Reserva de Reclamaciones del Fideicomiso de Acciones de Revocación), tales impuestos podrán ser (i) reembolsados de cualquier monto en Efectivo posterior retenido a causa de Reclamaciones Controvertidas, o (ii) en la medida en que dichas Reclamaciones Controvertidas se hayan resuelto posteriormente, deducido de cualquier monto que pueda distribuirse de otro modo por el Fideicomisario de Acciones de Revocación como resultado de la resolución de tales Reclamaciones Controvertidas.

(c) Retención de Impuestos por parte del Fideicomisario de Acciones de Revocación. El Fideicomisario de Acciones de Revocación podrá retener y pagar a la autoridad fiscal relevante todos los montos que deban retenerse a tenor con el CTI o cualquier disposición de cualquier ley fiscal extranjera, estatal o local con respecto a cualquier pago o distribución a los tenedores de Intereses del Fideicomiso de Acciones de Revocación. Todos esos montos retenidos y pagados a la autoridad tributaria correspondiente (o colocados en cuenta de garantía hasta que se resuelva la necesidad de retenerlas) se tratarán como montos distribuidos a tales tenedores de Intereses del Fideicomiso de Acciones de Revocación a todos los efectos del Contrato de Fideicomiso de Acciones de Revocación y se entenderá que tal monto retenido reducirá el monto efectivamente realizado por el tenedor aplicable en el momento de la distribución. El Fideicomisario de Acciones de Revocación estará autorizado a recopilar la información fiscal de los tenedores de acciones de Intereses del Fideicomiso de Acciones de Revocación (lo que incluye, de manera no taxativa, números de Seguro Social u otros números de identificación fiscal) según el Fideicomisario de Acciones de Revocación considere necesario a su entera discreción para dar pleno vigor y efecto el Plan, la Orden de Confirmación y el Contrato de Fideicomiso de Acciones de Revocación. Para recibir distribuciones en el marco del Plan, todos los tenedores de Intereses del Fideicomiso de Acciones de Revocación deberán identificarse a sí mismos ante el Fideicomisario de Acciones de Revocación y proporcionar información fiscal y los detalles específicos de sus activos, en la medida en que el Fideicomisario de Acciones de Revocación considere apropiado de la manera y a tenor con los procedimientos establecidos ocasionalmente por el Fideicomisario de Acciones de Revocación a estos efectos. Este requisito de identificación se aplica generalmente a todos los tenedores de Intereses del Fideicomiso de Acciones de Revocación, lo que incluye aquellos que mantienen sus valores a nombre del corredor. El

Fideicomisario de Acciones de Revocación puede rehusarse a realizar la distribución a cualquier tenedor de un Interés del Fideicomiso de Acciones de Revocación que no proporcione tal información de manera oportuna y hasta que tal información sea proporcionada y puede tratar los Intereses del Fideicomiso de Acciones de Revocación de tal tenedor como controvertidos; disponiéndose, sin embargo, que si tal información no se proporciona al Fideicomisario de Acciones de Revocación en el plazo de seis (6) meses a partir de la solicitud original de proporcionar tal información, no se realizarán más distribuciones a tal tenedor de tal Interés del Fideicomiso de Acciones de Revocación; y disponiéndose, además, que cuando un tenedor de un Interés del Fideicomiso de Acciones de Revocación entregue tal información el Fideicomisario de Acciones de Revocación realizará la distribución a la que el tenedor del Interés del Fideicomiso de Acciones de Revocación tiene derecho, sin interés adicional ocasionado por la demora de tal tenedor de proporcionar la información taxativa; y disponiéndose, además, que si el Fideicomisario de Acciones de Revocación no realiza retenciones con respecto a los montos recibidos o distribuirles con respecto a tal tenedor y el Fideicomisario de Acciones de Revocación se considera responsable posteriormente por el monto de tal retención, tal tenedor deberá reembolsar al Fideicomisario de Acciones de Revocación tal pasivo (en la medida en que tales montos hayan sido realmente distribuidos a tal tenedor).

(d)   El Fideicomisario de Acciones de Revocación y el Fideicomiso de Acciones de Revocación se extinguirá o disolverá, según el caso, en cuanto ocurra el primero de que (i) se hayan distribuido todos los Intereses del Fideicomiso de Acciones de Revocación a tenor con el Plan y el Contrato de Fideicomiso de Acciones de Revocación, (ii) el Fideicomisario de Acciones de Revocación determine, con el consentimiento de la Junta del Fideicomiso de Acciones de Revocación, que es probable la administración de cualquier Activo del Fideicomiso de Acciones de Revocación restante no produzca ingresos adicionales suficientes del Fideicomiso de Acciones de Revocación para justificar su seguimiento y (iii) se han realizado todas las distribuciones a realizarse por parte del Fideicomisario de Acciones de Revocación según el Plan y el Contrato de Fideicomiso de Acciones de Revocación; disponiéndose, sin embargo, que en ningún caso el Fideicomiso de Acciones de Revocación se disolverá más de tres (3) años después de la Vigencia a menos que el Tribunal de Quiebras, por moción en el período de los seis meses anteriores al tercer (3$^{er}$) aniversario (o dentro del período de seis meses antes al final de un período de extensión), determine que un período de extensión fijo (que no exceda los tres (3) años, junto con toda extensión previa, sin una carta en respuesta a consulta favorable del SII o una opinión satisfactoria de un asesor al Fideicomisario de Acciones de Revocación y la Junta del Fideicomiso de Acciones de Revocación que una extensión adicional no afectaría de manera adversa el estado del fideicomiso como un Fideicomiso de Acciones de Revocación para fines de impuesto federal sobre ingresos de los Estados Unidos) es necesario para facilitar o completar la recuperación y liquidación de los Activos del Fideicomiso de Acciones de Revocación. Si en cualquier momento el Fideicomisario de Acciones de Revocación determina, confiando en los profesionales que el Fideicomisario de Acciones de Revocación contrate, que el gasto de administrar el Fideicomiso de Acciones de Revocación para hacer una distribución final a sus beneficiarios es probable que supere el valor de los activos que quedan en el Fideicomiso de Acciones de Revocación, el Fideicomisario de Acciones de Revocación podrá solicitar al Tribunal de Quiebras autorización para (i) reservar cualquier monto necesario para disolver el

Fideicomiso de Acciones de Revocación, (ii) donar cualquier saldo a una organización caritativa (A) descrita en la sección 501(c)(3) del SII, (B) exenta del impuesto federal sobre ingresos de los Estados Unidos según la sección 501(a) del CTI y (D) que no guarda relación con los Deudores, los Deudores reorganizados, el Fideicomiso de Acciones de Revocación y cualquier persona de confianza del Fideicomisario de Acciones de Revocación y (iii) disolver el Fideicomiso de Acciones de Revocación.

74.15 **Indemnización del Fideicomisario de Acciones de Revocación**: el Fideicomisario de Acciones de Revocación o la o las personas físicas que componen el Fideicomisario de Acciones de Revocación, según el caso, y los empleados, agentes y profesionales del Fideicomisario de Acciones de Revocación, no serán responsables ante los Beneficiarios del Fideicomiso de Acciones de Revocación de las acciones tomadas u omitidas en su calidad de o en nombre del Fideicomisario de Acciones de Revocación, salvo por las acciones derivadas de su propia mala conducta intencional o negligencia grave, y cada uno de ellos tendrá derecho a indemnización y reembolso por honorarios y gastos en la defensa de toda acción o inacción realizada en su calidad de o en nombre del Fideicomisario de Acciones de Revocación, salvo por cualquier acción o inacción que implique mala conducta intencional o negligencia grave. Toda reclamación de indemnización del Fideicomisario de Acciones de Revocación (y de las demás partes con derecho a indemnización según este inciso) se satisfará únicamente con los Activos del Fideicomiso de Acciones de Revocación y tendrá derecho a una distribución prioritaria de estos, antes de los Intereses del Fideicomiso de Acciones de Revocación y cualquier otra reclamación o interés sobre tales activos. El Fideicomisario de Acciones de Revocación tendrá derecho a contar, de buena fe, con el asesoramiento de sus profesionales contratados.

ARTÍCULO LXXV

**SEGUIMIENTO Y EXTINCIÓN DE RECLAMACIONES DE LOS DEUDORES**

75.1 **Seguimiento de Reclamaciones**: salvo como se haya resuelto y liberado en el presente, a partir de la Vigencia, el Fideicomisario de Acciones de Revocación tendrá el derecho y la facultad exclusivos de (a) litigar todas las Acciones de Revocación y (b) conciliar y resolver tales Acciones de Revocación, previa aprobación del Tribunal de Quiebras. Los ingresos netos de cualquier litigio o resolución (después de satisfacer todos los costos y gastos incurridos en relación con este) se transferirán al Fideicomiso de Acciones de Revocación para su distribución a tenor con el Plan y el Contrato de Fideicomiso de Acciones de Revocación.

## ARTÍCULO LXXVI

### ACEPTACIÓN O RECHAZO DEL PLAN; EFECTOS DEL RECHAZO POR PARTE DE UNA O MÁS CLASES DE RECLAMACIONES

76.1     **Clases Afectadas que Votan**: cada tenedor, a la Fecha de Registro de Votación, de una Reclamación de una Clase afectada que no se considere que haya rechazado o aceptado el Plan a tenor con las Secciones 16.1, 56.1, 58.1, 64.1, 65.1 y 68.1 del Plan de otro modo tendrá derecho a votar por separado para aceptar o rechazar el Plan.

76.2     **Aceptación por Clase de Acreedores**: se considerará que una Clase afectada de tenedores de Reclamaciones habrá aceptado el Plan si el Plan es aceptado por al menos dos tercios (2/3) en monto en dólares y más de la mitad (1/2) en cantidad de Reclamaciones Permitidas de tal clase que hayan votado para aceptar o rechazar el Plan.

76.3     **Imposición de Plan Concursal por el Tribunal**: en el caso en que cualquier Clase afectada de Reclamaciones no acepte, o se considere que rechaza, el Plan a tenor con la sección 1129(a) del Código de Quiebras, los Deudores se reservan el derecho a (i) solicitar que el Tribunal de Quiebras confirme el Plan a tenor con la sección 1129(b) del Código de Quiebras o (ii) sujeto al consentimiento de los acreedores del Acuerdo de Apoyo al Plan de la AEP/OG, a tenor con las disposiciones del Acuerdo de Apoyo al Plan de la AEP/OG, modificar el Plan.

## ARTÍCULO LXXVII

### DERECHOS Y FACULTADES DEL AGENTE PAGADOR

77.1     **Exculpación**: a partir de la Vigencia, el Agente Pagador será exculpado por todas las Entidades, lo que incluye, de manera no taxativa, los tenedores de Reclamaciones y otras partes interesadas, de toda reclamación, Causa de acción y otros alegatos de responsabilidad derivados del cumplimiento de las facultades y obligaciones que se le confieran al Agente Pagador según el Plan o cualquier orden del Tribunal del Título III que se haya dictado a tenor con el Plan o en cumplimiento de este, o de la ley aplicable, excepto en el caso de acciones u omisiones derivadas de negligencia grave o de mala conducta intencional de tal Agente Pagador. Ningún tenedor de una Reclamación u otra parte interesada tendrá o iniciará ninguna reclamación o causa de acción contra el Agente Pagador debido a que este realice pagos a tenor con el Plan o implemente las disposiciones del Plan.

77.2     **Facultades del Agente Pagador**: salvo que se disponga de otro modo según el presente, el Agente Pagador estará facultado para (a) adoptar todas las medidas y ejecutar todos los instrumentos y documentos necesarios para dar pleno vigor y efecto al Plan, (b) realizar las distribuciones contempladas en el Plan, (c) cumplir con el Plan y las obligaciones que este impone; y (d) ejercer las demás facultades que se confieran al Agente Pagador a tenor con una orden del Tribunal del Título III, a tenor con el Plan, o que el Agente Pagador considere necesario y adecuado para implementar las disposiciones del Plan.

77.3     **Honorarios y Gastos incurridos a partir de la Vigencia**: salvo que el Tribunal del Título III disponga otra cosa, el monto de los honorarios y gastos razonables en que incurra el Agente Pagador a partir de la Vigencia, y reclamación razonable de cualquier compensación y reembolso de gastos, lo que incluye, de manera no taxativa, honorarios y gastos razonables de abogado, en que incurra el Agente Pagador, se abonarán en Efectivo sin órdenes adicionales por parte del Tribunal del Título III.

ARTÍCULO LXXVIII

**PROCEDIMIENTOS PARA EL TRATAMIENTO DE RECLAMACIONES CONTROVERTIDAS**

78.1     **Objeciones a Reclamaciones; Seguimiento de Reclamaciones Controvertidas**: salvo en lo que respecta a las Reclamaciones Permitidas, y sujeto a los términos y condiciones de los Procedimientos de RAL y la Orden de RAL, los Deudores Reorganizados, a través de la Junta de Supervisión, y en consulta con la AAFAF, objetarán y asumirán toda objeción pendiente presentada por los Deudores a la admisión de Reclamaciones presentadas ante el Tribunal del Título III con respecto a las cuales dispute la responsabilidad, prioridad o monto, lo que incluye, de manera no taxativa, las objeciones a Reclamaciones que se hayan cedido y la afirmación de la doctrina de subordinación equitativa con respecto a estas. Todas las objeciones, defensas afirmativas y reconvenciones serán litigadas hasta dictarse una Orden Final; disponiéndose, sin embargo, que los Deudores Reorganizados, a través de la Junta de Supervisión, y en consulta con la AAFAF, estarán facultados para presentar, resolver, transigir o desistir toda objeción a Reclamaciones, sin necesidad de aprobación por parte del Tribunal del Título III. A menos que el Tribunal del Título III disponga otra cosa, en la medida en que no sea ya objeto de objeciones por parte de los Deudores, los Deudores Reorganizados iniciarán y presentarán todas las objeciones a Reclamaciones lo antes posible, pero, en cada caso, a más tardar ciento ochenta (180) días después de la Vigencia o en una fecha posterior que pueda aprobar el Tribunal del Título III. Sin perjuicio de lo dispuesto en el Plan en sentido contrario, en la Vigencia, toda Reclamación de Bonos presentada por cualquier Entidad, por montos debidos en virtud de valores existentes, se considerará como no permitida y eliminada y la Junta de Supervisión ordenará a Prime Clerk LLC, su representante designado por el tribunal, que retire tales Reclamaciones de Bonos del registro de reclamaciones mantenido para el Tribunal del Título III.

78.2 **Estimación de Reclamaciones**: salvo en lo que respecta a las Reclamaciones Permitidas, en la Vigencia y después de esta, y a menos que una orden del Tribunal del Título III lo limite de otro modo, lo que incluye, de manera no taxativa, la Orden de la ACR y la Orden de la ADR, los Deudores Reorganizados, a través de la Junta de Supervisión, podrán en cualquier momento pedir al Tribunal del Título III que calcule a efectos de distribución final cualquier Reclamación condicional, pendiente o Controvertida a tenor con la sección 502(c) del Código de Quiebras, independientemente de si los Deudores se opusieron previamente a dicha Reclamación o trataron de estimarla, y el Tribunal del Título III retendrá la jurisdicción para considerar cualquier solicitud de estimación de cualquier Reclamación durante el litigio con respecto a cualquier objeción a cualquier Reclamación, lo que incluye, de manera no taxativa, durante la pendencia de cualquier apelación con respecto a tal objeción. A menos que se disponga otra cosa en una orden del Tribunal del Título III, en caso de que el Tribunal del Título III estimase cualquier reclamación condicional, pendiente o Controvertida, el monto estimado constituirá el monto permitido de tal Reclamación o una limitación máxima de tal Reclamación, según determine el Tribunal del Título III; disponiéndose, sin embargo, que, si la estimación constituye la limitación máxima de dicha Reclamación, los Deudores Reorganizados, a través de la Junta de Supervisión, podrán optar por iniciar procedimientos complementarios para objetar a cualquier admisión definitiva de tal Reclamación; y, disponiéndose, además, que lo que antecede no pretende limitar los derechos concedidos por la sección 502(j) del Código de Quiebras. Todos los procedimientos de objeción, estimación y resolución de Reclamaciones antes mencionados son acumulativos y no se excluyen necesariamente entre sí.

78.3 **Pagos y Distribuciones de Reclamaciones Controvertidas**:

(a) **Retención de las Reclamaciones Controvertidas:** a partir de la Vigencia y hasta el momento que cada Reclamación Controvertida se haya conciliado y resuelto, estimada por el Tribunal del Título III en un monto que constituye el monto permitido, o Permitida o No Permitida mediante Orden Final del Tribunal del Título III, los Deudores Reorganizados retendrán, a beneficio de cada tenedor de una Reclamación Controvertida, las distribuciones que se hubiesen realizado a tal tenedor si fuese una Reclamación Permitida en un monto igual o menor que (i) el monto liquidado establecido en la evidencia presentada de la Reclamación con respecto a tal Reclamación Controvertida, (ii) el monto en que el Tribunal del Título III debe estimar las Reclamaciones Controvertidas a tenor con la sección 502 del Código de Quiebras constituye y garantiza el monto máximo por el cual tal Reclamación se pueda convertir finalmente en una Reclamación Permitida y (iii) tal otro monto que pueda acordarse por el tenedor de tal Reclamación Controvertida y los Deudores Reorganizados; disponiéndose, sin embargo, que la recuperación por parte de cualquier tenedor de una Reclamación Controvertida no excederá el menor de (i), (ii) y (iii) que preceden. En la medida en que cualquiera de los Deudores Reorganizados retenga cualquier Nuevo Bono de OG o CVI en nombre de los tenedores de Reclamaciones Controvertidas, hasta que se distribuyan tales Nuevos Bonos de OG o CVI, tales Deudores Reorganizados ejercerán el derecho de voto o consentimiento con respecto a tales bonos.

(b)        **Admisión de Reclamaciones Controvertidas**: en el momento en que una Reclamación Controvertida se convierta, total o parcialmente, en una Reclamación Permitida, los Deudores Reorganizados distribuirán al tenedor de esta las distribuciones, de haberla, a las que tal tenedor tenga derecho según el Plan, junto con cualesquiera ganancias que se hayan acumulado al respecto (el neto de cualquier gasto, lo que incluye impuestos, correspondientes a estas), pero solo en la medida en que esas ganancias sean atribuibles al monto de la Reclamación Permitida. Tal distribución, de haberla, se realizará tan pronto como sea posible después de la fecha en que la orden o sentencia del Tribunal del Título III que permite tal Reclamación Controvertida se convierta en una Orden Final, pero en ningún caso más de noventa (90) días después de esto.

78.4        **Facultad para modificar Listas de Acreedores**: salvo en lo que se refiere a las Reclamaciones de Bonos, los Deudores estarán facultados para modificar la Lista de Acreedores con respecto a cualquier Reclamación y para efectuar distribuciones basadas en tal Lista de Acreedores modificada sin aprobación por parte del Tribunal del Título III. Si tal modificación a la Lista de Acreedores reduce el monto de una Reclamación o cambia la naturaleza o prioridad de una Reclamación, los Deudores notificarán al tenedor de tal Reclamación de tal modificación y tal tenedor dispondrá de veinte (20) días para presentar una objeción a tal modificación ante el Tribunal del Título III. Si no se presenta tal objeción, el Agente Pagador podrá proceder con las distribuciones en base a tal Lista de Acreedores modificada sin aprobación por parte del Tribunal del Título III.

78.5        **No Devengamiento de Intereses**: a menos que se disponga específicamente de otro modo en el presente o por orden del Tribunal del Título III, los intereses posteriores a la solicitud con respecto a Reclamaciones, Permitidas o no, no se devengarán ni pagarán, y ningún tenedor de una Reclamación, Permitida o no, tendrá derecho a intereses devengados en la Fecha de Petición del ELA, la Fecha de Petición del SRE o la Fecha de Petición de la AEP o después de estas, según el caso, o sobre cualquier Reclamación o derecho. Además, y sin limitar lo anterior, no se devengarán ni se pagarán intereses sobre ninguna Reclamación Controvertida con respecto al período comprendido entre la Vigencia y la fecha en que se realice una distribución final a causa de tal Reclamación Controvertida, siempre y cuando dicha Reclamación Controvertida se convierta en una Reclamación Permitida.

78.6        **Denegación de Reclamaciones**: se denegarán todas las Reclamaciones de cualquier Entidad a la que los Deudores soliciten bienes a tenor con las secciones 550 o 553 del Código de Quiebras o que los Deudores aleguen sea cesionaria de una transferencia evitable a tenor con las secciones 544, 545, 547, 548 o 549 del Código de Quiebras si: a) la entidad, por una parte, y los Deudores, por otra parte, acuerdan o el Tribunal del Título III haya determinado mediante Orden Final que dicha Entidad o cesionario está obligado a entregar cualquier bien o fondos en virtud de cualquiera de las secciones antes mencionados del Código de Quiebras y (b) tal Entidad o cesionario no ha entregado esos bienes en la fecha establecida en tal acuerdo u Orden Final.

ARTÍCULO LXXIX

**GOBERNANZA Y DISPOSICIONES CON RESPECTO A LA RESERVA
DE PENSIONES**

79.1     **Formación y responsabilidades de la Reserva de Pensiones**: en la
Vigencia o antes de esta, el ELA adoptará todas las medidas necesarias para establecer el
Fideicomiso de Reserva de Pensiones, lo que incluye, de manera no taxativa, ejecutar y
otorgar la Escritura del Fideicomiso de la Reserva de Pensiones.

79.2     **Financiación del Fideicomiso de la Reserva de Pensiones**: en la Vigencia,
el ELA aportará, o dispondrá que se contribuya, a la Reserva de Pensiones cinco millones
de dólares ($ 5,000,000.00) para financiar las tasas, costos y gastos administrativos
iniciales del Fideicomiso de la Reserva de Pensiones. A partir del año fiscal en el que se
produce la Vigencia y hasta e inclusive la conclusión del séptimo (7.º) año fiscal después
del año fiscal en el que se produce la Vigencia, el ELA Reorganizado realizará, o
dispondrá que se realicen, aportaciones anuales (pero en ningún caso a más tardar el 1 de
octubre siguiente al cierre de cada año fiscal) al Fideicomiso de la Reserva de Pensiones
por un monto igual a (a) la Aportación Base, (b) el monto adicional calculado como el más
bajo del excedente primario real para tal año fiscal y el excedente primario previsto del
Plan Fiscal para tal año fiscal, menos la suma de (i) la Aportación Base para dicho año
fiscal, más (ii) la obligación de amortización de la deuda del ELA a tenor con el plan para
tal año fiscal, más (iii) doscientos millones de dólares ($ 200,000,000.00); disponiéndose,
sin embargo, que, en todos los casos, esa suma adicional no pueda ser inferior a cero
dólares ($ 0.00) y (c) sujeto a las leyes aplicables, lo que incluye, de manera no taxativa,
los Títulos I y II de PROMESA, los montos adicionales que el ELA Reorganizado, a su
discreción, opte por depositar en el Fideicomiso de la Reserva de Pensiones. El
Fideicomiso de la Reserva de Pensiones será administrado por una entidad independiente
cuyos miembros cumplirán las normas de independencia, profesionalidad, experiencia y
calificación estándar establecidas en la Escritura del Fideicomiso de la Reserva de
Pensiones y estarán sujetas a todas las leyes y disposiciones de contratación, ética y
conflictos de intereses del ELA.

79.3 **Pacto de no Afectación**: el ELA pactará en la Escritura del Fideicomiso de la Reserva de Pensiones a beneficio de todos los Participantes que, con respecto a pagos y otras obligaciones debidas a los Participantes a tenor con el Plan, lo que incluye, de manera no taxativa, las obligaciones PayGo y todos los componentes del Beneficio de Retiro Mensual Total después de cualquier ajuste a tenor con el Plan, todas dichas obligaciones se mantendrán y no se alterarán, modificarán o cambiarán de otro modo hasta que todas esas obligaciones hayan sido satisfechas en su totalidad a tenor con las disposiciones del Plan y los Documentos Definitivos y la Legislación de los Nuevos Bonos de OG, aplicable por cualquiera de la Junta de Supervisión, cualquier Pensionado afectado y, con respecto a tal disposición, la Escritura del Fideicomiso de la Reserva de Pensiones no será modificada ni cambiada por el ELA salvo (i) con el consentimiento previo por escrito de la Junta de Supervisión (si existe) y una mayoría en número de los Pensionados que reciben beneficios a tenor con el Plan, los Documentos Definitivos, la Legislación de Nuevos Bonos de OG al momento de tal modificación propuesta o (ii) a tenor con un nuevo caso de Título III para el ELA y un plan de ajuste confirmado y en vigor.

ARTÍCULO LXXX

**IDENTIFICACIÓN DE RECLAMACIONES AFECTADAS POR EL PLAN Y NO AFECTADAS POR EL PLAN**

80.1 **Clases Afectadas**: las Reclamaciones de las Clases 1 a 11, 13 a 51, 53, 55 a 59, 62 y 63 se ven afectadas y reciben distribuciones a tenor con el Plan, por lo que tienen derecho a votar para aceptar o rechazar el Plan; *disponiéndose, sin embargo*, que, en base a las elecciones realizadas en la Papeleta/Formulario de Elección, se considera que las Clases 20, 26, 30, 32, 36, 40, 42, 45, 47 y 65 han aceptado el Plan. Las Reclamaciones de las Clases 60 y 61 se ven afectadas y no reciben una distribución a tenor con el Plan y, por lo tanto, se considera que las Clases 60 y 61 han rechazado el Plan.

80.2 **Clases no Afectadas**: las Reclamaciones de las Clases 12, 52, 54, 64 y 65 no se ven afectadas a tenor con el Plan y se considera que han aceptado el Plan y no tienen derecho a votar para aceptar o rechazar el Plan.

ARTÍCULO LXXXI

**CONDICIONES PRECEDENTES A LA CONFIRMACIÓN DEL PLAN**

81.1 **Condiciones Precedentes a la Confirmación del Plan**: la confirmación del Plan está sujeta a la satisfacción de las siguientes condiciones precedentes:

(a) **Certificación del Plan Fiscal:** la Junta de Supervisión deberá haber certificado un Plan Fiscal coherente con el Plan y haber certificado la presentación del Plan, así como cualquier modificación del Plan hasta la Fecha de Confirmación, a tenor con las Secciones 104(j) y 313 de PROMESA.

198

(b)   **Órdenes Requeridas:** el Actuario del Tribunal del Título III deberá haber dictado una orden u órdenes (lo que incluye, de manera no taxativa, la Orden de Declaración de Divulgación y la Orden de Confirmación que prevean lo siguiente:

(i)   Aprobar la Declaración de Divulgación en el sentido de que contiene «información adecuada» a tenor con la sección 1125 del Código de Quiebras;

(ii)   Autorizar la solicitud de votos y elecciones con respecto al Plan;

(iii)   Determinar que todos los votos y elecciones o las elecciones consideradas sean vinculantes y hayan sido debidamente tabulados;

(iv)   Confirmar y dar efecto a los términos y disposiciones del Plan, lo que incluye los descargos establecidos en el Artículo LXXXVIII del Plan;

(v)   Determinar que las conciliaciones y resoluciones establecidas en el Plan son apropiadas, razonables y aprobadas y que autorizan las transacciones previstas en este;

(vi)   Determinar que todas las pruebas, normas y cargas aplicables con respecto al Plan han sido debidamente satisfechas y cumplidas por la Junta de Supervisión, los Deudores y el Plan;

(vii)   Aprobar los documentos del Complemento del Plan, que no sean la Legislación de Nuevos Bonos de OG y la Legislación de CVI (en la medida en que estén incluidos en el Complemento del Plan) y los Estatutos de los Deudores Reorganizados y determinar que tales documentos son válidos y vinculantes para las partes involucradas en estos;

(viii)   Determinar que la Legislación de Nuevos Bonos de OG y la Legislación de CVI, en la medida en que se apruebe, son un medio válido para la implementación del Plan y la emisión de los Nuevos Bonos de OG y los CVI, respectivamente; y

(ix)   Autorizar a los Deudores Reorganizados a ejecutar, ingresar y otorgar los documentos en el Complemento del Plan, así como a ejecutar, implementar y tomar todas las medidas que sean necesarias o apropiadas de otro modo para dar efecto a las transacciones contempladas en el Plan, así como a los documentos del Complemento del Plan.

(c)   **Forma de las Órdenes:** la Orden de Confirmación y el Plan se encuentran cada uno en forma y contenido razonablemente aceptables para la Junta de Supervisión, los Deudores y los Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG Iniciales.

(d) **Orden de Confirmación:** la Orden de Confirmación incluye (i) determinaciones de que todas las resoluciones y conciliaciones contenidas en el Plan cumplen las normas aplicables según las secciones 365, 1123(b)(3) y 1129 del Código de Quiebras y la Norma de Quiebras 9019, en la medida en que sea aplicable, (ii) los descargos, exculpaciones e interdictos establecidos en el Artículo LXXXVIII del Plan y (iii) las disposiciones aplicables establecidas en la Sección 81.1 (b) del presente.

81.2 **Renuncia a las Condiciones Precedentes a la Confirmación**: sujeto a los términos y disposiciones del Acuerdo de Apoyo al Plan de la AEP/OG y en la medida de lo posible y legalmente permisible, la Junta de Supervisión podrá renunciar, total o parcialmente, a cada una de las condiciones precedentes de la Sección 81.1 del presente, sujeto al consentimiento previo por escrito de los Deudores y los Acreedores del Acuerdo de Apoyo al Plan Iniciales, cuyo consentimiento no se negará sin fundamentos. Toda renuncia a una condición precedente podrá efectuarse en cualquier momento mediante la presentación de una notificación ante el Tribunal del Título III ejecutada por la Junta de Supervisión.

ARTÍCULO LXXXII

**CONDICIONES PRECEDENTES A LA VIGENCIA**

82.1 **Condiciones Precedentes a la Vigencia**: la Vigencia y la consumación sustancial del Plan están sujetas a la satisfacción de las siguientes condiciones precedentes:

(a) **Certificación del Plan Fiscal:** la Junta de Supervisión deberá haber determinado que el Plan es coherente con el Plan Fiscal de los Deudores y haber certificado la presentación del Plan, así como cualquier modificación del Plan hasta la Fecha de Confirmación, a tenor con las Secciones 104(j) y 313 de PROMESA. El Plan Fiscal certificado a la Vigencia incluirá disposiciones para el pago del capital e intereses con respecto a los Nuevos Bonos de OG, lo que incluye, de manera no taxativa, pagos a fondo de amortización y los mecanismos y procedimientos para el pago de los CVI en caso de que se cumpla una Condición de Rendimiento Superior y se deba el pago conforme al Contrato de Emisión de CVI.

(b) **Dictamen de la Orden de Confirmación:** el Actuario del Tribunal del Título III deberá haber dictado la Orden de Confirmación a tenor con la Sección 314 de PROMESA y la sección 1129 del Código de Quiebras, aplicables a los Casos de Título III en virtud de la Sección 301 de PROMESA, que tendrán la forma y contenido razonablemente aceptables para la Junta de Supervisión y los Acreedores del Acuerdo de Apoyo al Plan Iniciales, y la Orden de Confirmación dispondrá lo siguiente:

(i) Autorizar a los Deudores y a los Deudores Reorganizados, según el caso, a tomar todas las medidas necesarias para celebrar, implementar y consumar los contratos, instrumentos, descargos, contratos de arrendamientos, escrituras y otros acuerdos o documentos creados en relación con el Plan;

200

(ii)    Decretar que las disposiciones de la Orden de Confirmación y del Plan no son divisibles y son mutuamente dependientes;

(iii)    Autorizar a los Deudores y a los Deudores Reorganizados, según el caso, a (1) realizar todas las distribuciones y emisiones que se requieran según el Plan y (2) celebrar todo acuerdo y transacción, según se establece en el Complemento del Plan;

(iv)    Autorizar la implementación del Plan a tenor con sus términos;

(v)    Determinar que los Nuevos Bonos de OG y los CVI, y los pactos por parte del ELA, en beneficio de los tenedores de los Nuevos Bonos de OG y los CVI, según lo dispuesto en la Legislación de los Nuevos Bonos de OG, al Contrato de Emisión de Nuevos Bonos de OG, la Legislación de CVI y el Contrato de Emisión de CVI o la Orden de Confirmación, según corresponda, constituyen obligaciones válidas, vinculantes, legales y ejecutables del ELA, según la legislación de Puerto Rico, Nueva York y la ley federal;

(vi)    Determinar que el ELA deberá haber pignorado su plena fe y crédito y poder impositivo según la Constitución del Estado Libre Asociado y la ley aplicable del Estado Libre Asociado para el pago del capital e intereses de los Nuevos Bonos de OG y el pago de los CVI;

(vii)    Determinar que, a tenor con la Legislación de Nuevos Bonos de OG y otras leyes aplicables, una vez depositados los fondos en el Fondo del Amortización de la Deuda y en el Fondo de Reserva del Amortización de la Deuda, se impondrán los gravámenes estatutarios de primer rango sobre dichos fondos con el fin de garantizar el pago de los Nuevos Bonos de OG, cuyos gravámenes estatutarios de primer rango sobre tales fondos permanecerán en pleno vigor hasta que se hayan pagado o satisfecho íntegramente los Nuevos Bonos de OG a tenor con sus términos;

(viii)    Determinar que la Orden de Confirmación es completa, definitiva, concluyente y vinculante y no estará sujeta a alegación de nulidad ni otra impugnación en ningún tribunal u otro foro por parte de (1) los Deudores, (2) los Deudores Reorganizados, (3) el ELA y sus instrumentalidades, (4) cada Entidad que hace valer reclamaciones u otros derechos contra el ELA u otra instrumentalidad del ELA, lo que incluye cada tenedor de una reclamación de bonos y cada tenedor de un interés económico (directa o indirectamente, como mandante, agente, contraparte, subrogatario, asegurador u otro) con respecto a bonos emitidos por los Deudores o cualquier agencia del ELA o con respecto a cualquier fideicomisario, cualquier agente de garantías, cualquier fideicomisario de escritura, cualquier agente fiscal y cualquier banco que recibe o mantiene fondos relacionados con tales bonos, esté o no tal reclamación u otros derechos de tal Entidad afectados a tenor con el Plan y, si están afectados, ya sea que tal Entidad aceptó el Plan o no, (5) cualquier otra Entidad y (6) los herederos, sucesores, cesionarios, fideicomisarios, albaceas, administradores, funcionarios, directivos, agentes, representantes, abogados, beneficiario o tutores correspondientes de cada uno de los que antecede;

(ix)   Disponer que el Plan Fiscal, certificado a la Vigencia, incluya disposiciones para el pago en cada Año Fiscal de (a) capital e intereses pagaderos con respecto a los Nuevos Bonos de OG; lo que incluye, pagos a fondo de amortización debidos a tal año fiscal y (b) en la medida que la Condición de Rendimiento Superior se satisface en el año fiscal anterior, cualquier monto debido y adeudado en los CVI de acuerdo con los términos del Contrato de Emisión de CVI;

(x)   Determinar que el primer gravamen estatutario sobre los fondos depositados en el Fondo de Amortización de la Deuda y el Fondo de Reserva del Amortización de la Deuda, a tenor con lo dispuesto en la Legislación de los Nuevos Bonos de OG, y todas las demás disposiciones para pagar los Nuevos Bonos de OG son válidos, vinculantes, legales y ejecutables, lo que incluye, de manera no taxativa, pactos para no afectar tales bienes, mantener la exención fiscal disponible y establecer las condiciones relativas a la sustitución de garantías (lo que incluye, de manera no taxativa, el gravamen estatutario sobre estos como protección adecuada de los derechos de propiedad del presente y en la Orden de Confirmación;

(xi)   Disponer que la paralización automática de cualquier procedimiento de insolvencia futuro iniciado en nombre del ELA (ya sea según el Título III de PROMESA o de otro modo) se considerará renunciado con respecto a los fondos depositados en el Fondo del Amortización de la Deuda y en el Fondo de Reserva del Amortización de la Deuda a partir del inicio de este;

(xii)   Determinar que, a los efectos de la Sección 209 de PROMESA, para que la extinción de la deuda ocurra a la Vigencia es necesario que la Junta de Supervisión certifique que los gastos no superan los ingresos del ELA, según se determine a tenor con las normas de contabilidad de valores devengados modificadas;

(xiii)  Disponer que las conciliaciones y resoluciones establecidas en el Plan y la Orden de Confirmación con respecto a la prioridad de los Nuevos Bonos de OG y los CVI en virtud de PROMESA, la Constitución del Estado Libre Asociado u otra ley aplicable no serán vinculantes para ninguna de las partes interesadas (lo que incluye cualquier sucesor de la Junta de Supervisión) en un procedimiento posterior de Título III (u otro procedimiento de insolvencia);

(xiv)   Determinar que el Plan es coherente con los Planes Fiscales de los Deudores y que satisface la Sección 314(b)(7) de PROMESA;

(xv)   Disponiéndose que, como contraprestación por los acuerdos establecidos en el Acuerdo de Apoyo al Plan de la ACT/ADCC, y tras el cumplimiento de las Condiciones de Distribución, la ACT hará una distribución provisional a los tenedores de Bonos de ACT 68 y Bonos de la ACT 98 Prioritarios (Senior) en los montos de ciento ochenta y cuatro millones ochocientos mil dólares ($184,800,000.00) y setenta y nueve millones doscientos mil dólares ($79,200,000.00), respectivamente, en Efectivo, cuyas distribuciones reducirán el capital de tales Bonos de la ACT 68 y Bonos de la ACT 98 Prioritarios (Senior), respectivamente, y las Reclamaciones de Bonos de la ACT

correspondientes; y

(xvi) Disponiéndose que, como contraprestación por la estructuración de los pagos a los tenedores de Reclamaciones de la ACT/ELA, reclamaciones del Centro de Convenciones/ELA, Reclamaciones de Impuestos de la AFI/ELA y Reclamaciones de la AMA/ELA, en caso de que se den por cumplidas las condiciones de distribución, y conforme a los términos y provisiones del Artículo 6.1(d) del Acuerdo de Apoyo al Plan de la ACT/ADCC, el Estado Libre Asociado hará pagos a Assured y National en los montos de treinta y nueve millones trescientos mil dólares ($39,300,000.00) y diecinueve millones trescientos mil dólares ($19,300,000.00), respectivamente.

(c) **Sin Interdictos:** la Orden de Confirmación no se paralizará en ningún caso.

(d) **Autorizaciones:** toda (1) autorización, consentimiento, aprobación regulatoria, resolución o documento, si los hubiere, que sean necesarios para implementar y dar pleno vigor y efecto al Plan, lo que incluye, de manera no taxativa, la Legislación de los Nuevos Bonos de OG y la Legislación de CVI, han sido obtenidos o aprobados o ingresados y no revocados o revertidos y (2) salvo en la medida expresamente estipulada en el presente y no incompatible con ninguna otra disposición del Plan, a menos que PROMESA o una autoridad similar lo permitan o exijan de otro modo, el cumplimiento de cualquier otra acción legislativa u otra acción gubernamental necesaria para consumar el Plan.

(e) **Otorgamiento de Documentos; otras Acciones:** se da pleno vigor y efecto, se celebran y se otorgan, según aplicable, y están en pleno vigor, todas las acciones y todos los contratos, instrumentos, resoluciones, descargos y otros acuerdos o documentos, lo que incluye los Documentos Definitivos, la Legislación de los Nuevos Bonos de OG y la Legislación de CVI, necesarios para aplicar los términos y disposiciones del Plan, lo que incluye los Documentos Definitivos, la Legislación de los Nuevos Bonos de OG y la Legislación de CVI.

(f) **Dictámenes:** se han emitido al fideicomisario correspondiente o a otras partes con respecto a los Documentos Definitivos y el Plan opiniones legales habituales y consuetudinarias para emisiones similares a los Nuevos Bonos de OG y los CVI por un asesor externo de los Deudores sobre cuestiones no abordadas expresamente en la Orden de Confirmación, en forma y en contenido razonablemente aceptables para los Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG Iniciales.

(g) **Reclamaciones constitucionales:** el Tribunal del Título III habrá dictado una orden por la que se determine que cualquier reclamación presentada contra los Deudores, los Deudores Reorganizados y cualquier otra empresa pública o instrumentalidad del ELA en base a cualquier bono emitido o garantizado, o préstamo concedido o garantizado por tal entidad, se considerará una Reclamación anterior a la Fecha de Petición y se clasificará en las Clases 56 a 59 (salvo por las Reclamaciones de Bonos del SRE Permitidas en la medida en que tengan garantía prendaria) y será extinguible y extinguida a

tenor con el Plan o la Orden de Confirmación y los Deudores, los Deudores Reorganizados y cualquier otra empresa pública o instrumentalidad del ELA no tendrán responsabilidad alguna por tal Reclamación.

(h) **Levantar Mociones de Paralización y Acciones de Recuperación:** los fondos de recuperación en cuestión en el Levantamiento de Mociones de Paralización y Acciones de Recuperación que determinaron el Tribunal del Título III para constituir bienes inmuebles del ELA.

82.2 **Renuncia a las Condiciones Precedentes**: sujeto a las disposiciones del Acuerdo de Apoyo al Plan de la AEP/OG, la Junta de Supervisión podrá renunciar a cualquiera de las condiciones de la Vigencia establecidas en la Sección 82.1 del presente en cualquier momento sin notificación alguna a otras partes interesadas, que no sean los Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG Inicial y las Partes del Gobierno, y sin ninguna notificación adicional, o acción, orden o aprobación por parte del Tribunal del Título III, y sin otra acción oficial que la de proceder a confirmar y consumar el Plan.

82.3 **Efecto de la no incidencia de las Condiciones a la Vigencia**: Si antes de la Vigencia, la Orden de Confirmación es anulada a tenor con una Orden Final, entonces, salvo lo dispuesto en cualquier orden del Tribunal del Título III que anule la Orden de Confirmación, el Plan será nulo en todos los aspectos, y nada de lo que figure en el Plan o Declaración de Divulgación: (a) constituirá una renuncia o descargo de cualquier Reclamación, o Causa de acción, (b) perjudicará de cualquier manera los derechos de los Deudores, la Junta de Supervisión o cualquier otra Entidad o (c) constituirá una admisión, reconocimiento, oferta o compromiso de cualquier tipo por parte de los Deudores, la Junta de Supervisión o cualquier otra Entidad.

ARTÍCULO LXXXIII

MODIFICACIÓN, REVOCACIÓN O DESISTIMIENTO DEL PLAN

83.1 **Modificación del plan**: sujeto a (a) las Secciones 104(j) y 313 de PROMESA y las secciones 942 y 1127(d) del Código de Quiebras, aplicables a los Casos de Título III en virtud de la Sección 301 de PROMESA y (b) los términos y disposiciones del Acuerdo de Apoyo al Plan de la AEP/OG, el Acuerdo de Apoyo al Plan de AFSCME, el Acuerdo de Apoyo al Plan del Comité de Pensionados, y el Acuerdo de Apoyo al Plan de la ACT/ADCC, la Junta de Supervisión podrá alterar, modificar o cambiar el Plan o los Anexos en cualquier momento antes o después de la Fecha de Confirmación, pero antes de la Vigencia. Se considerará que un tenedor de una Reclamación que ha aceptado el Plan ha aceptado el Plan según se altere, modifique o cambie, siempre que la alteración, modificación o cambio propuestos no modifiquen de manera significativa y negativa el tratamiento de la Reclamación de tal Tenedor.

83.2     **Revocación o Desistimiento**:

(a)     Sujeto a los términos y disposiciones del Acuerdo de Apoyo al Plan de la AEP/OG, el Acuerdo de Apoyo al Plan de AFSCME, el Acuerdo de Apoyo al Plan del Comité de Pensionados y el Acuerdo de Apoyo al Plan de la ACT/ADCC, la Junta de Supervisión podrá revocar o desistir del Plan antes de la Fecha de Confirmación.

(b)     Si el Plan se revoca o desiste antes de la Fecha de Confirmación, o si el Plan no entra en vigor por cualquier motivo, el Plan será considerado nulo. En tal caso, nada de lo dispuesto en el presente se considerará como una renuncia o descargo de cualquier reclamación por parte de los Deudores o de cualquier otra Entidad, o que perjudique de ninguna manera los derechos de los Deudores o de cualquier otra Entidad en cualquier otro procedimiento que afecte a los Deudores.

83.3     **Modificación de los Documentos del Plan**: a partir de la Vigencia, la autoridad para modificar, cambiar o complementar el Complemento del Plan, los Anexos al Complemento del Plan y los Anexos del Plan, así como cualquier documento adjunto a cualquiera de los anteriores, será la prevista en tal Complemento del Plan, Anexo al Complemento del Plan o Anexo al Plan y sus respectivos adjuntos, según el caso.

83.4     **No Admisión de Responsabilidad**:

(a)     La presentación de este Plan no pretende ser, ni se interpretará como, una admisión o prueba en cualquier demanda, acción, procedimiento o controversia pendiente o posterior de cualquier responsabilidad, infracción u obligación alguna (lo que incluye los fundamentos de cualquier reclamación o defensa) por parte de cualquier Entidad con respecto a cualquiera de los asuntos abordados en el presente Plan.

(b)     Ninguna parte del presente Plan (lo que incluye, de manera no taxativa, los Anexos adjuntos al presente), ni ninguna resolución concertada, hecho realizado o documento otorgado en relación con el presente Plan: (i) es o puede considerarse que es o puede utilizarse como admisión o prueba de la validez de cualquier reclamación, o de cualquier acusación formulada en cualquiera de las Acciones Conexas o de cualquier infracción o responsabilidad de cualquier Entidad, (ii) es o puede considerarse que es o puede utilizarse como admisión o prueba de cualquier responsabilidad, culpa u omisión de cualquier Entidad en cualquier procedimiento civil, penal o administrativo ante cualquier tribunal, organismo administrativo u otro tribunal (iii) es o puede considerarse que es o puede utilizarse como admisión o prueba contra los Deudores Reorganizados, los Deudores o cualquier otra Entidad con respecto a la validez de cualquier Reclamación. Ninguna parte del presente Plan o cualquier resolución concertada, hecho realizado o documento otorgado en relación con el presente Plan será admisible en procedimiento alguno para ningún fin, salvo para llevar a cabo los términos del presente Plan, y salvo que, una vez confirmado, cualquier Entidad pueda presentar este Plan en cualquier acción con cualquier propósito, lo que incluye, de manera no taxativa, para respaldar una defensa o reconvención en base a los principios de *res judicata,* doctrina de los actos propios colateral, descargo, resolución de buena fe, inadmisión o reducción de sentencia o cualquier

205

otra teoría de la preclusión de reclamación o preclusión de asunto o defensa de reconvención similar.

ARTÍCULO LXXXIV

**GOBERNANZA CORPORATIVA Y GESTIÓN DE LOS DEUDORES REORGANIZADOS**

84.1     **Acción Corporativa**: en la Vigencia, se autorizarán y aprobarán en todo sentido, todos los asuntos previstos en el Plan que de otro modo requerirían la aprobación de los directivos de los Deudores o los Deudores Reorganizados, lo que incluye, de manera no taxativa, en la medida en que proceda, la autorización para expedir o disponer que se expidan los Nuevos Bonos de OG y los CVI, la autorización para incluir en los Documentos Definitivos, la adopción de los Estatutos de los Deudores Reorganizados, y la elección o designación, según el caso, de directivos y funcionarios de los Deudores Reorganizados a tenor con el Plan, según corresponda, a tenor con la Legislación de los Nuevos Bonos de OG, la Legislación de CVI y los nuevos documentos de gobernanza corporativa, según corresponda, y sin ninguna medida adicional por parte de ninguna Entidad según cualquier otra ley, reglamento, orden o norma aplicable. Se considerará que los otros asuntos previstos en el Plan que impliquen la estructura corporativa de los Deudores Reorganizados o la acción corporativa por parte de los Deudores Reorganizados, según corresponda, habrán ocurrido, estarán autorizados y estarán en vigor a tenor con la Legislación de los Nuevos Bonos de OG, la Legislación de CVI y los nuevos documentos de gobernanza corporativa, según corresponda, y sin exigir la adopción de nuevas medidas por parte de ninguna Entidad según cualquier otra ley, reglamento, orden o norma aplicable. Sin limitar lo anterior, a partir de la Fecha de Confirmación, los Deudores y los Deudores Reorganizados tomarán todas las medidas que se consideren apropiadas para consumar las transacciones contempladas en el presente a tenor con la Legislación de Nuevos Bonos de OG, la Legislación de CVI y los nuevos documentos de gobernanza corporativa, según corresponda.

84.2     **Disolución del SRE**: en o tan pronto como sea posible después de la Vigencia, el SRE se disolverá y todos los directivos y funcionarios existentes del SRE serán relevados de cualquier función y obligación adicional que tengan. Al momento de tal disolución, todos los activos restantes del SRE se transferirán al ELA.

84.3     **Funcionarios de los Deudores Reorganizados**: en la medida en que proceda, la junta directiva de los Deudores Reorganizados elegirá a los funcionarios de los Deudores Reorganizados a partir de la Vigencia.

84.4     **Estructura de Gobernanza de la AEP y ADCC**: no se introducirán cambios en la estructura de gobernanza de la AEP ni en los contratos de negociación colectiva de la AEP durante o después del Caso de Título III de la AEP, a menos que tales cambios sean aprobados por la Junta de Supervisión y la AAFAF.

206

ARTÍCULO LXXXV

## DISPOSICIONES RELATIVAS A LA JUNTA DE SUPERVISIÓN Y EL CUMPLIMIENTO DE PROMESA

85.1     **Efecto de la Confirmación**: nada de lo dispuesto en el presente Plan ni en la Orden de Confirmación extinguirá, sustituirá, alterará o modificará de otro modo las facultades y responsabilidades de la Junta de Supervisión a tenor con PROMESA ni las obligaciones de cada uno de los Deudores Reorganizados en virtud de PROMESA. A partir de la Vigencia, los Deudores Reorganizados seguirán teniendo todas sus obligaciones a tenor con PROMESA, lo que incluye, de manera no taxativa, los términos y condiciones de los Títulos I y II de esta.

85.2     **Función permanente de la Junta de Supervisión**: nada de lo dispuesto en el Plan ni en la Orden de Confirmación extinguirá ninguna de las obligaciones de cada Deudor en virtud de PROMESA y, a partir de la Vigencia, continuarán las facultades y responsabilidades de la Junta de Supervisión según PROMESA, y las funciones y obligaciones de los Deudores continuarán y no se verán afectadas por el Plan y su consumación.

85.3     **Invalidez de Leyes**: a partir de la Vigencia, y en la medida en que no se haya invalidado previamente a tenor con una orden del Tribunal del Título III, todas las leyes del Estado Libre Asociado de Puerto Rico, con excepción de los presupuestos certificados por la Junta de Supervisión, incompatibles con Promesa, se considerarán inválidas. Tales leyes invalidadas incluyen, de manera no taxativa, las leyes aprobadas antes del 30 de junio de 2016, que transfieren, apropian o requieren apropiaciones del ELA o una de sus instrumentalidades a cualquier agencia o instrumentalidad, ya sea para permitir que dicha agencia o instrumentalidad pague o satisfaga un endeudamiento o para cualquier otro propósito, y esas leyes no serán ejecutables para facilitar el pago de tal endeudamiento, directa o indirectamente, y no serán ejecutables si su ejecución fuera incompatible con cualquier disposición de PROMESA que tenga aplicabilidad y eficacia continua. Sin limitar en modo alguno lo anterior, (a) las leyes del ELA invalidadas debido a PROMESA incluyen, de manera no taxativa, las enumeradas en el Anexo «K» del presente y (b) todo litigio en el que cualquier Parte del Gobierno sea una parte, sobre si la legislación del ELA enumerada en el Anexo «K» del presente es considerada inválida frente a PROMESA será desestimada, con perjuicio, a partir de la Vigencia, y las partes de esta deberán notificar sin demora a la Junta de Supervisión su desestimación.

ARTÍCULO LXXXVI

**DISPOSICIONES RELATIVAS A LOS COMITÉS**

86.1 **Disolución de los Comités**: en la Vigencia, cada Comité de Acreedores y el Comité de Pensionados se (a) disolverán y se considerará que han cumplido todas sus funciones y obligaciones correspondientes y (b) liberarán y extinguirán de cualquier medida o actividad que se haya adoptado o deba adoptarse en relación con los Casos de Título III. En la medida en que, a la fecha inmediatamente anterior a la Vigencia, el Comité de Acreedores o el Comité de Pensionados fuera parte en un asunto impugnado o procedimiento contencioso en relación con los Casos de Título III, lo que incluye, de manera no taxativa, las Objeciones Relacionadas con Deuda, el Litigio de la AEP, las Acciones de Invalidez, las Acciones de Impugnación de Gravamen, el Litigio del SRE, el Litigio de la Cláusula de Designaciones, el Litigio de Uniformidad, las Acciones de Recuperación, el Levantamiento de Mociones de Paralización y cualquier objeción a reclamar, a partir de la Vigencia y en la medida en que aún no sea parte en ella, se considerará que los Deudores Reorganizados o el Fideicomisario habrán asumido tal función y responsabilidad en cuanto a tal asunto impugnado y, a tenor con tal asunción, el Comité de Acreedores o el Comité de Pensionados, según el caso, quedarán exentos de cualquier función, responsabilidad u obligación al respecto, disponiéndose, sin embargo, y para evitar dudas, que en ningún caso el Fideicomisario de Acciones de Anulación asume cualquier papel con respecto a las Objeciones Relacionadas con la Deuda, el Litigio de la AEP, las Acciones de Invalides o las Acciones de Impugnación de Gravamen, dicho litigio se resolvió como se estableció en la Sección 2.1 del presente y la Orden de Confirmación.

ARTÍCULO LXXXVII

**CONSERVACIÓN DE JURISDICCIÓN**

87.1 **Conservación de Jurisdicción**: el Tribunal del Título III conservará y tendrá jurisdicción exclusiva sobre cualquier asunto que surja en virtud de PROMESA, derivado o relacionado con los Casos de Título III y el Plan o que esté relacionado lo siguiente:

(a) permitir, denegar, determinar, liquidar, clasificar, estimar o establecer la prioridad, la situación de garantía o no garantía, o el monto de cualquier Reclamación no conciliada o resuelta por el presente, lo que incluye, de manera no taxativa, la resolución de toda solicitud de pago de cualquier Reclamación y la resolución de toda objeción a la situación de garantía o no garantía, prioridad, monto o admisión de Reclamaciones no conciliadas o resueltas por el presente;

(b) resolver cualquier asunto relacionado con Contratos Condicionales o Contratos de Arrendamiento en Curso, lo que incluye, de manera no taxativa, (a) la asunción o asunción y cesión de cualquier Contrato Condicional o Contrato de Arrendamiento en Curso en el que sean parte los Deudores o respecto de los cuales los Deudores puedan ser responsables y dar vista, determinar y, en caso necesario, liquidar, cualquier Reclamación derivada de estos, lo que incluye a tenor con la sección 365 del Código de Quiebras, (b) cualquier obligación contractual potencial en virtud de cualquier Contrato Condicional o Contrato de Arrendamiento en Curso que se asume y asuma y ceda y (c) cualquier controversia con respecto a si un contrato o contrato de arrendamiento es o

208

era condicional o ha caducado;

   (c) velar por que las distribuciones a los tenedores de Reclamación Permitidas se lleven a cabo a tenor con las disposiciones del Plan y resuelvan todas las controversias derivadas o relacionadas con las distribuciones en el marco del Plan;

   (d) resolver, decidir o solucionar toda moción, procedimiento contencioso, cuestiones impugnadas o litigadas, y cualquier otro asunto, y conceder o denegar cualquier solicitud relativa a los Deudores o a los Deudores Reorganizados que puedan estar pendientes en la Vigencia o que se presenten posteriormente;

   (e) decidir y resolver todos los asuntos relacionados con la concesión y denegación, total o parcial, de cualquier solicitud de compensación o reembolso de gastos a los Profesionales autorizados a tenor con PROMESA, el Plan o las órdenes dictadas por el Tribunal del Título III;

   (f) dictar e implementar las órdenes que sean necesarias o apropiadas para ejecutar, implementar, consumar o hacer cumplir las disposiciones de (a) contratos, instrumentos, descargos, escrituras y otros acuerdos o documentos aprobados por Orden Final en los Casos de Título III y (b) el Plan, la Orden de Confirmación, los Documentos Definitivos y cualquier otro contrato, instrumento, valor, descargo, escritura y otros acuerdos o documentos creados en relación con el Plan;

   (g) resolver todo caso, controversia, demanda, disputa u otras impugnaciones de cualquier tipo que puedan surgir en relación con la consumación, interpretación o ejecución del Plan, la Orden de Confirmación, los Documentos Definitivos o cualquier otro contrato, instrumento, valor, descargo u otro acuerdo o documento que se celebre u otorgue a tenor con el Plan o los derechos de cualquier Entidad derivados u obligaciones contraídas en relación con el Plan o tales documentos;

   (h) aprobar cualquier modificación del Plan o aprobar cualquier modificación de la Orden de Confirmación o cualquier contrato, instrumento, valor, descargo u otro acuerdo o documento creado en relación con el Plan o la Orden de Confirmación, o remediar cualquier defecto u omisión o conciliar cualquier inconsistencia en cualquier orden, el Plan, la Orden de Confirmación o cualquier contrato, instrumento, valor, descargo u otro acuerdo o documento creado en relación con el Plan o la Orden de Confirmación, o dictar cualquier orden en apoyo de la confirmación a tenor con las secciones 945 y 1142(b) del Código de Quiebras, de la manera que sea necesaria o apropiada para consumar el Plan;

   (i) resolver, decidir o solucionar cualquier asunto relacionado con el cumplimiento por parte de los Deudores del Plan y la Orden de Confirmación de conformidad con la sección 945 del Código de Quiebras;

   (j) determinar cualesquiera otros asuntos que puedan surgir en relación o

en conexión el Plan, la Declaración de Divulgación, la Orden de Confirmación, Documentos Definitivos o cualquier contrato, instrumento, garantía, descargo u otro acuerdo o documento creado, celebrado u otorgado en relación con el Plan, la Declaración de Divulgación o la Orden de Confirmación, en cada caso, únicamente en la medida en que dicho documento no prevea que otro tribunal o tribunales tengan jurisdicción exclusiva;

(k)   dictar e implementar otras órdenes, o adoptar las demás medidas que sean necesarias o apropiadas para hacer cumplir o restringir la injerencia de cualquier entidad en la consumación o ejecución del Plan o la Orden de Confirmación, lo que incluye, de manera no taxativa, las disposiciones de las Secciones 89.2 y 89.3 del presente;

(l)   resolver todas las controversias, demandas o cuestiones que puedan surgir en relación con la validez de las medidas adoptadas por cualquier Entidad a tenor con el Plan o en cumplimiento del Plan o la Orden de Confirmación, lo que incluye, de manera no taxativa, la emisión de Nuevos Bonos de OG y CVI, y dictar las órdenes o medidas necesarias o apropiadas con respecto a dicha resolución;

(m)   dictar e implementar las órdenes que sean necesarias o apropiadas si la Orden de Confirmación es modificada, paralizada, revertida, revocada o anulada por cualquier motivo;

(n)   dictar una orden o un decreto definitivo que concluyan o cierren los Casos de Título III en virtud de la sección 945(b) del Código de Quiebras;

(o)   ejecutar y aclarar toda orden dictada anteriormente por el Tribunal de Título III en los Casos de Título III; y

(p)   atender cualquier otro asunto sobre el que el Tribunal del Título III tenga jurisdicción según las Secciones 305 y 306 de PROMESA.

ARTÍCULO LXXXVIII

**DISPOSICIONES VARIAS**

88.1   **Titularidad de los Activos**: salvo según se dispone en la Orden de Confirmación, en la Vigencia, la titularidad de todos los Activos y bienes de los Deudores incluidos en el Plan se otorgarán a los Deudores Reorganizados, libres de cargas y Gravámenes (salvo por Gravámenes concedidos a tenor con el Plan y la Orden de Confirmación).

88.2   **Extinción y Descargo de Reclamaciones y Causas de acción:**

(a)   Salvo según se disponga expresamente en el Plan o en la Orden de Confirmación, todas las distribuciones y derechos otorgados en virtud del Plan serán, y se considerarán, a cambio, y en total satisfacción, resolución, extinción y descargo, de todas las Reclamaciones o Causas de acción contra las Partes Eximidas que hayan surgido, total o

parcialmente, antes de la Vigencia, con respecto a los Casos de Título III, los Deudores o Deudores Reorganizados o cualquiera de sus respectivos Activos, bienes o intereses de cualquier naturaleza, lo que incluye los intereses devengados sobre tales Reclamaciones a partir de la Fecha de Petición, e independientemente de que algún bien haya sido distribuido o retenido a tenor con el Plan a causa de tales Reclamaciones o Causas de acción. En la Vigencia, toda reclamación, causa de acción y cualquier otra deuda que surja se considerará extinguida y descargada, total o parcialmente, antes de la Vigencia (incluso antes de la fecha de petición) contra los Deudores y Deudores Reorganizados, así como toda Reclamación del tipo especificado en las secciones 502(g), 502(h) o 502(i) del Código de Quiebras, independientemente de que (a) se presente o no una evidencia de reclamación en base a tal Reclamación, o se considere presentada en virtud de la sección 501 del Código de Quiebras, (b) tal Reclamación se permita o no en virtud de la sección 502 del Código de Quiebras (o se resuelva de otro modo), o (c) el tenedor de una Reclamación basada en tal deuda haya votado o no a favor del Plan.

(b)     Excepto según se disponga de manera expresa en el Plan o la Orden de Confirmación, se impedirá a todas las Entidades presentar toda Reclamación contra los Deudores y los Deudores Reorganizados, y cada uno de sus respectivos Activos, bienes y derechos, remedios, Reclamaciones o Causas de acción o responsabilidades de cualquier naturaleza, en relación con los Casos de Título III, los Deudores o Deudores Reorganizados o cualquiera de sus respectivos Activos y bienes, lo que incluye los intereses devengados sobre tales Reclamaciones a partir de la Fecha de Petición, e independientemente de que se hayan distribuido o retenido bienes a tenor con el Plan a causa de tales Reclamaciones u otras obligaciones, demandas, sentencias, daños y perjuicios, deudas, derechos, remedios, causas de acción o responsabilidades. De acuerdo con lo anterior, salvo según se dispone expresamente en el Plan o en la Orden de Confirmación, la Orden de Confirmación constituirá una determinación judicial, a partir de la Vigencia, de la extinción y descargo de todas esas Reclamaciones, Causas de acción o deudas de o contra los Deudores y los Deudores Reorganizados a tenor con las secciones 524 y 944 del Código de Quiebras, aplicables al Caso de Título III en virtud de la Sección 301 de PROMESA, y tal extinción anulará y extinguirá toda sentencia obtenida contra los Deudores o los Deudores Reorganizados y sus respectivos Activos y bienes, en cualquier momento, en la medida en que tal sentencia se relacione con una Reclamación extinguida, deuda o responsabilidad. A la Vigencia, y en contraprestación al valor previsto en el Plan, cada tenedor de una Reclamación de cualquier Clase en virtud del presente Plan habrá y por la presente se considerará que extinguirá y liberará para siempre a los Deudores y a los Deudores Reorganizados, y sus respectivos Activos y bienes y todas esas Reclamaciones.

(c)     Sin perjuicio de cualquier otra disposición de la presente Sección 88.2, a tenor con las disposiciones del Acuerdo de Apoyo al Plan de la AEP/OG, se considerará que cada uno de los Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG y sus respectivas Personas Relacionadas, únicamente en su calidad de Acreedores de los Deudores, (i) han liberado y pactado no demandar, ni tratar de obtener de otro modo indemnización por daños y perjuicios ni solicitar cualquier otro tipo de medida contra cualquiera de las Partes Eximidas del Gobierno en base o en relación con las Reclamaciones Eximidas por el Gobierno o cualquier de las Reclamaciones o Causas de

acción presentadas o que pudiesen haberse presentado, incluso, sin limitación, en las Acciones de Recuperación y los Levantamientos de Mociones de Paralización y (ii) no ayudan directa o indirectamente a ninguna persona a adoptar ninguna medida con respecto a las Reclamaciones Eximidas por el Gobierno que esté prohibida por la presente Sección 88.2.

88.3    **Interdictos sobre Reclamaciones**: salvo que se disponga de manera expresa de otro modo en el Plan, la Orden de Confirmación o tal otra Orden Final del Tribunal del Título III que sea aplicable, todas las Entidades que hayan mantenido, mantengan o puedan mantener Reclamaciones o cualquier otra deuda o responsabilidad que se extinga o exima a tenor con la Sección 88.2 del presente o que hayan mantenido, mantengan o puedan mantener Reclamaciones o cualquier otra deuda o responsabilidad que se extinga o exima a tenor con la Sección 88.2 del presente tienen permanentemente prohibido, a partir de la Vigencia, (a) comenzar o continuar, directa o indirectamente, de cualquier forma, cualquier acción u otro procedimiento (lo que incluye, de manera no taxativa, cualquier procedimiento judicial, de arbitraje, administrativo u otro) de cualquier tipo en tal Reclamación u otra deuda o responsabilidad que se extinga a tenor con el Plan contra cualquiera de las Partes Eximidas o cualquiera de sus activos o bienes correspondientes, (b) la ejecución, laudo, cobro o recuperación de cualquier forma o por cualquier medio de cualquier sentencia, adjudicación, decreto u otra orden contra cualquier de las Partes Eximidas o cualquiera de sus activos o bienes correspondientes a causa de cualquier Reclamación u otra deuda o responsabilidad extinta a tenor con el Plan, (c) crear, perfeccionar o ejecutar cualquier gravamen de cualquier tipo contra cualquiera de las Partes Eximidas o cualquiera de sus activos o bienes correspondientes a causa de cualquier Reclamación u otra deuda o responsabilidad extinta a tenor con el Plan y (d) salvo en la medida dispuesta, permitida o ponderada en las secciones 553, 555, 556, 559, o 560 del Código de Quiebras o a tenor con el derecho de derecho consuetudinario de recuperación, haciendo valer cualquier derecho a compensación, subrogación o recuperación de cualquier tipo con respecto a cualquier obligación debida por cualquiera de las Partes Eximidas o cualquiera de sus activos o bienes correspondientes con respecto a cualquier Reclamación u otra deuda o responsabilidad extinta a tenor con el Plan. Tal interdicto se extenderá a todos los sucesores y cesionarios de las Partes Eximidas y sus respectivos activos y bienes.

88.4    **Integral para el Plan**: cada una de las disposiciones relativas a la extinción, interdictos, exculpación y exención previstas en el presente Artículo LXXXVIII es una parte integral del Plan y es esencial para su implementación. Cada una de las Partes Eximidas tendrá derecho a solicitar de manera independiente la ejecución de las disposiciones de extinción, interdictos y exención establecidas en el presente Artículo XC.

88.5        **Exenciones por parte de los Deudores y los Deudores Reorganizados**:
salvo que se disponga expresamente de otro modo en el Plan o en la Orden de
Confirmación, en la Vigencia, y por contraprestación suficiente, se considerará que cada
uno de los Deudores y Deudores Reorganizados, el Agente Pagador y cada una de las
Personas Relacionadas a los Deudores y Deudores Reorganizados ha y por el presente
renuncia, exime, exonera y extingue por siempre, finalmente, íntegramente, de manera
incondicional e irrevocable a las Partes Eximidas de toda Reclamación o Causa de acción
que los Deudores y Deudores Reorganizados y el Agente Pagador o cualquier de estos, o
cualquiera que reclame mediante estos, en su nombre o en su beneficio, tenga o puede
tener o afirma que tiene, ahora o en el futuro, contra cualquier Parte Eximida que sean
Reclamaciones Eximidas o que se relacionen, estén conectadas, surjan o estén basadas de
otro modo, total o parcialmente, en cualquier acción, omisión, transacción, evento u otra
circunstancia relacionada a los Casos de Título III, los Deudores que existan en la Vigencia
o antes de esta y/o cualquier Reclamación acción, hecho, transacción, incidencia,
declaración u omisión supuesta o que se podría haber supuesto o relacionada, lo que
incluye, de manera no taxativa, cualquier Reclamación, intimación, derecho,
responsabilidad o causa de acción por indemnización, aportación o cualquier otra base
legal o de equidad por daños y perjuicios, costos o tasas.

88.6	**Interdicto con respecto a las Exenciones**: a partir de la Vigencia, todas las Entidades que mantengan, hayan mantenido o puedan mantener una Reclamación Eximida que haya sido eximida a tenor con la Sección 88.5 del Plan, están y estarán paralizadas, restringidas, prohibidas y excluidas permanentemente, para siempre y por completo de adoptar cualquiera de las siguientes medidas, directa o indirectamente, derivadas o de otra índole, a causa o en base al objeto de tales Reclamaciones Eximidas extintas: (i) iniciar, conducir o continuar de cualquier manera, directa o indirectamente, cualquier demanda, acción u otro procedimiento (lo que incluye, de manera no taxativa, cualquier procedimiento judicial, de arbitraje, administrativo o de otro tipo) en cualquier foro, (ii) ejecutar, embargar (lo que incluye, de manera no taxativa, cualquier embargo previo), recaudar, o de cualquier manera tratar de recuperar cualquier sentencia, laudo, decreto u otra orden, (iii) crear, perfeccionar o de cualquier manera ejecutar en cualquier asunto, directa o indirectamente, cualquier Gravamen, (iv) compensar, procurar reembolsos o aportaciones de o subrogación contra, o reembolsar de cualquier manera, directa o indirectamente, cualquier monto contra cualquier responsabilidad u obligación debida a cualquier Entidad eximida en virtud de la Sección 88.5 del presente y (v) iniciar o continuar de cualquier manera, en cualquier lugar de cualquier procedimiento judicial, de arbitraje o administrativo en cualquier foro, que no cumpla o sea incompatible con las disposiciones del Plan o la Orden de Confirmación. Para evitar dudas, las siguientes estipulaciones se rescindirán al ingresar la Orden de Confirmación: la Cuarta Estipulación Modificada entre el ELA del Puerto Rico y la Autoridad de Carreteras y Transportación de Puerto Rico con respecto a la Orden de interrupción del plazo de prescripción y consentimiento [Caso núm. 173283-LTS, expediente electrónico de caso núm. 15854] y sus modificaciones; y la Tercera Estipulación Modificada y la Orden de Consentimiento entre Deudores de Título III (que no sean COFINA) y la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico que actúa en nombre de las Entidades Gubernamentales Enumeradas en el Anexo «B» con respecto a la Interrupción del plazo de prescripción [Caso núm. 17-3283-LTS, expediente electrónico de caso núm. 15795] y sus modificaciones.

88.7	**Exculpación**:

(a)	**Partes del Gobierno:** la Junta de Supervisión, la AAFAF, los Deudores y cada una de sus respectivas Personas Relacionadas, actuando únicamente en su calidad de tal en cualquier momento y hasta la Vigencia inclusive, no tendrán ni incurrirán en responsabilidad alguna ante ninguna Entidad por ninguna acción realizada u omitida en relación con los Casos de Título III, la formulación, preparación, difusión, implementación, confirmación o aprobación del Plan o cualquier conciliación o resolución contenida en él, la Declaración de Divulgación, o cualquier contrato, instrumento, descargo u otro acuerdo o documento previsto o contemplado en relación con la consumación de las transacciones establecidas en el Plan; disponiéndose, sin embargo, que las disposiciones anteriores de la presente Sección 88.7 no afectarán la responsabilidad de ninguna Entidad que de otro modo resultaría de tal acción u omisión en la medida en que se determine mediante Orden Final que dicha acción u omisión constituye fraude intencional o mala conducta intencional. Nada de lo dispuesto en las disposiciones que preceden de la presente Sección 88.7(a) menoscabará el derecho de cualquiera de las Partes del Gobierno y de los funcionarios y directivos de las Partes del Gobierno que cumplen funciones en estos en cualquier

momento y hasta la Vigencia, así como de cada uno de sus respectivos profesionales, a recurrir al asesoramiento de un abogado como defensa con respecto a sus funciones y responsabilidades en virtud del Plan.

(b) **Acreedores del Acuerdo de Apoyo al Plan:** cada uno de los Acreedores del Acuerdo de Apoyo al Plan de la AEP/OG y/o el Acuerdo de Apoyo al Plan de la ACT/ADCC únicamente en su calidad de parte del Acuerdo de Apoyo al Plan y un Acreedor y/o asegurador, según corresponda, desde la Fecha de Petición y hasta la Vigencia inclusive y cada una de sus Personas Relacionadas correspondientes no tendrán ni incurrirán en responsabilidad alguna ante ninguna Entidad por ninguna acción realizada u omitida en relación con los Casos de Título III, la mediación, negociación, formación, preparación, difusión, implementación, confirmación o aprobación del Plan o cualquier conciliación o resolución contenida en él, la Declaración de Divulgación, el Acuerdo de Apoyo al Plan de la AEP/OG, el Acuerdo de Apoyo al Plan de la ACT/ADCC, los Documentos Definitivos o cualquier otro contrato, instrumento, descargo u otro acuerdo o documento previsto o contemplado en relación con la consumación de las transacciones establecidas en el Plan; disponiéndose, sin embargo, que las disposiciones que preceden de la presente Sección 88.7(b) no afectarán la responsabilidad de ninguna Entidad que de otro modo resultaría de tal acción u omisión en la medida en que se determine mediante Orden Final que dicha acción u omisión constituye fraude intencional o mala conducta intencional.

(c) **Comité de Pensionados:** cada uno de los miembros del Comité de Pensionados únicamente en su calidad de miembro del Comité de Pensionados y un Acreedor, según corresponda, desde la Fecha de Petición y hasta la Vigencia inclusive y cada una de las Personas Relacionadas del Comité de Pensionados, no tendrán ni incurrirán en responsabilidad alguna ante ninguna Entidad por ninguna acción realizada u omitida en relación con los Casos de Título III, la formación, preparación, difusión, implementación, confirmación o aprobación del Plan o cualquier conciliación o resolución contenida en él, la Declaración de Divulgación, el Acuerdo de Apoyo al Plan del Comité de Pensionados o cualquier contrato, instrumento, descargo u otro acuerdo o documento previsto o contemplado en relación con la consumación de las transacciones establecidas en el Plan y el Acuerdo de Apoyo al Plan del Comité de Pensionados; disponiéndose, sin embargo, que las disposiciones que preceden de la presente Sección 88.7(c) no afectarán la responsabilidad de ninguna Entidad que de otro modo resultaría de tal acción u omisión en la medida en que se determine mediante Orden Final que dicha acción u omisión constituye fraude intencional o mala conducta intencional.

(d) **AFSCME:** cada uno de AFSCME únicamente en su calidad de partes del Acuerdo de Apoyo al Plan de AFSCME y un Acreedor, según corresponda, desde la Fecha de Petición y hasta la Vigencia inclusive y cada una de sus Personas Relacionadas correspondientes no tendrán ni incurrirán en responsabilidad alguna ante ninguna Entidad por ninguna acción realizada u omitida en relación con los Casos de Título III, la formación, preparación, difusión, implementación, confirmación o aprobación del Plan o cualquier conciliación o resolución contenida en él, la Declaración de Divulgación, el Acuerdo de Apoyo al Plan de AFSCME, o cualquier contrato, instrumento, descargo u otro

acuerdo o documento previsto o contemplado en relación con la consumación de la transacción establecidas en el Plan y el Acuerdo de Apoyo al Plan de AFSCME; disponiéndose, sin embargo, que las disposiciones que preceden de la presente Sección 88.7(d) no afectarán la responsabilidad de ninguna Entidad que de otro modo resultaría de tal acción u omisión en la medida en que se determine mediante Orden Final que dicha acción u omisión constituye fraude intencional o mala conducta intencional.

(e) **Aseguradoras Monolíneas:** Assured, National, Syncora y sus Personas Relacionadas no tendrán ni incurrirán en responsabilidad alguna con ninguna Entidad por cualquier acto realizado u omitido consistente con el Plan o en conexión con la formulación, preparación, difusión, implementación, aceptación, confirmación o aprobación del Plan, incluso, sin limitación, en relación con el tratamiento de las Reclamaciones de Bonos Asegurados por Assured, las Reclamaciones de Bonos Asegurados por National, o las Reclamaciones de Bonos Asegurados por Syncora, los procedimientos de votación, los procedimientos electorales y cualquier liberación de obligaciones conforme a las Pólizas de Seguros de Assured, las Pólizas de Seguros de National o las pólizas de Seguros de Syncora aplicables: disponiéndose, sin embargo, que, sin perjuicio de cualquier contenido en el presente documento en contrario, los términos y disposiciones del Plan no podrán, ni se interpretarán para, liberarse o exculparse, con respecto a cualquier tenedor beneficiario de Bonos Asegurados por Assured, Binos Asegurados por National o Bonos Asegurados por Syncora, de cualquier obligación de pago conforme a la Póliza de Seguros de Assured, la Póliza de Seguros de National o la Póliza de Seguros de Syncora aplicable conforme a sus términos únicamente en la medida en que tal tenedor no reciba el Tratamiento de Assured, Tratamiento de National o Tratamiento de Syncora, según corresponda (o cualquier reclamación que Assured, National o Syncora pueda tener contra un tenedor beneficiario de los Bonos Asegurados por Assured con respecto a las obligaciones aplicables de Assured, National o Syncora conforme las Pólizas de Seguros de Assured, las Pólizas de Seguros de National o las Pólizas de Seguros de Syncora, según corresponda).

88.8    **Litigio Relacionado a Designaciones/Litigio de Uniformidad**: sin perjuicio a lo dispuesto en el presente en sentido contrario, en el caso de que se dicte una Orden Final en relación con el Litigio Relacionado a Designaciones o el Litigio de Uniformidad después de la emisión de la Orden de Confirmación, en contraprestación a las distribuciones realizadas, a realizar, o que se considere se han realizado a tenor con los términos y disposiciones del Plan y los documentos e instrumentos relacionados a estos, todos los Acreedores u otras Entidades que reciban, o se considere que han recibido, distribuciones a tenor con o como resultado del Plan, consienten y acuerdan en que tal Orden Final no revertirá, afectará ni modificará de ninguna manera las transacciones contempladas en el Plan y la Orden de Confirmación, lo que incluye, de manera no taxativa, los descargos, exculpaciones e interdictos previstos a tenor con el Artículo LXXXVIII del Plan.

88.9     **Orden de Exclusión**: en la medida limitada establecida en el Plan, todas las Entidades tienen permanentemente prohibida, excluida o restringida la institución, seguimiento, procuramiento o litigio de cualquier modo sobre toda Reclamación, intimación, derecho, responsabilidad o causa de acción de cualquier tipo, índole o naturaleza, en derecho o equidad, conocida o desconocida, directa o derivada, presentada o no, contra cualquiera de las Partes Eximidas, en base, con relación, derivado o en conexión con cualquiera de las Reclamaciones Eximidas, confirmación y consumación del Plan, la negociación y consumación del Acuerdo de Apoyo al Plan de la AEP/OG, o cualquier reclamación, acción, hecho, transacción, incidencia, declaración u omisión relacionada con o supuesta o que se podría haber supuesto en los Casos de Título III, lo que incluye, de manera no taxativa, cualquier reclamación, intimación, derecho, responsabilidad o causa de acción para indemnizar, contribuir o cualquier otra base en derecho o equidad para daños y perjuicios, costos o tasas incurridas que surjan directa o indirectamente de o se relacionen de otro modo con los Casos de Título III, ya sea directa o indirectamente por parte de cualquier Persona en beneficio directo o indirecto de la Parte Eximida derivado o relacionado a las reclamaciones, acciones, hechos, transacciones, incidencias, declaraciones u omisiones que son, podrían haber sido o podrían ser supuestas en las Acciones conexas o cualquier otra acción presentada o que pueda presentarse por, mediante, en nombre de o en beneficio de cualquiera de las Partes Eximidas (ya sea que surge de una ley extranjera, federal o estatal e independientemente de dónde se presente).

88.10     **Sin Renuncia**: sin perjuicio de cualquier disposición que indique lo contrario en las Secciones 88.5 y 88.6 del presente, los descargos e interdictos establecidos en esas secciones no limitarán, reducirán ni afectarán de ningún otro modo los derechos de la Junta de Supervisión, la AAFAF, los Deudores Reorganizados o los Acreedores del Acuerdo de Apoyo al Plan para ejecutar, demandar, resolver o conciliar los derechos, reclamaciones y otros asuntos expresamente retenidos por cualquiera de ellos, ni se considerará que lo hagan.

88.11     **Interdicto Complementario**: sin perjuicio de cualquier disposición del presente en sentido contrario, salvo en la medida limitada prevista en el Plan, todas las Entidades, lo que incluye las Entidades que actúen en su nombre, que en la actualidad posean o presenten, hayan poseído o presenten, o puedan poseer o presentar, cualquier Reclamación Eximida contra cualquiera de las Partes Eximidas en base a, atribuible a derivado o relacionado con los Casos de Título III o cualquier Reclamación contra los Deudores, cuando sea y dondequiera que surja o se presente, ya sea en los Estados Unidos o en cualquier otro lugar del mundo, ya sea en forma contractual, extracontractual, de garantía, estatuto o cualquier otra teoría de derecho, equidad o de otra índole será y se considerará paralizada, restringida y prohibida en cuanto a la adopción de cualquier medida contra cualquiera de las Partes Eximidas con el fin de recaudar, recuperar o recibir directa o indirectamente cualquier pago o recuperación con respecto a cualquier Reclamación Eximida que surja antes a la Vigencia (lo que incluye antes de la Fecha de Petición), lo que incluye, de manera no taxativa:

(a)     Iniciar o continuar de cualquier manera cualquier acción u otro procedimiento de cualquier tipo con respecto a cualquier Reclamación Eximida contra cualquiera de las Partes Eximidas o los activos o bienes de cualquier Parte Eximida;

(b)      Ejecutar, embargar, recaudar o recuperar, por cualquier medio o forma, cualquier sentencia, laudo, decreto u orden contra cualquiera de las Partes Eximidas o los activos o bienes de cualquier Parte Eximida con respecto a cualquier Reclamación Eximida;

(c)      Crear, perfeccionar o hacer cumplir cualquier Gravamen de cualquier tipo contra cualquiera de las Partes Eximidas o los activos o bienes de cualquier Parte Eximida con respecto a cualquier Reclamación Eximida;

(d)      A menos que se disponga expresamente otra cosa en el Plan o en la Orden de Confirmación, presentar, implementar o dar pleno vigor y efecto a cualquier compensación, derecho de subrogación, indemnización, aportación o reembolso de cualquier tipo contra cualquier obligación debida a cualquiera de las Partes Eximidas o contra los bienes de cualquier Parte Eximida respecto de cualquier Reclamación Eximida; y

(e)      Tomar cualquier acción, de cualquier forma, en cualquier lugar, que no se ajuste o cumpla con las disposiciones del Plan o la Orden de Confirmación, disponiéndose, sin embargo, que el cumplimiento por parte de los Deudores de los requisitos formales de la Norma de Quiebras 3016 no constituirá una admisión de que el Plan proporciona ningún interdicto contra una conducta no prohibida de otro modo en virtud del Código de Quiebras.

88.12      **Gastos y Honorarios posteriores a la Vigencia**: a partir de la Vigencia, los Deudores Reorganizados contratarán, en el ejercicio habitual de la actividad y sin necesidad de aprobación por parte del Tribunal del Título III, profesionales y pagarán los honorarios y gastos profesionales razonables incurridos por los Deudores Reorganizados en relación con la implementación y consumación del Plan sin aprobación adicional por parte del Tribunal del Título III. Sin limitar lo anterior, a partir de la Vigencia, los Deudores Reorganizados deberán, en el ejercicio habitual de la actividad y sin necesidad de aprobación por parte del Tribunal del Título III, pero a más tardar de cuarenta y cinco (45) días a partir de la presentación de facturas o declaraciones con respecto a la incurrencia de honorarios y gastos a los Deudores Reorganizados, pagar los honorarios razonables y documentados y reembolsar los gastos de la Junta de Supervisión y de sus profesionales relacionados con la implementación y consumación del Plan y en relación con sus funciones y responsabilidades a tenor con PROMESA y los términos y disposiciones del Plan.

88.13      **Exención de la Ley de Valores**: a tenor con la sección 1145 del Código de Quiebras y/o a la Sección 3(a)(2) de la Ley de Valores, la oferta, emisión y distribución de los Nuevos Bonos de OG y los CVI a tenor con los términos del presente estarán exentas del registro en virtud de la Ley de Valores y cualquier ley estatal o local que exija el registro para la oferta, emisión o distribución de valores, lo que incluye, de manera no taxativa, los requisitos de registro de la Sección 5 de la Ley de Valores y cualquier otra ley estatal o federal aplicable que exija el registro y/o la entrega o calificación de prospectos antes de la oferta, emisión, distribución o venta de valores.

218

88.14    **Independencia**: sujeto a los términos y disposiciones del Acuerdo de Apoyo al Plan de la AEP/OG y la Sección 3.7 del presente, si, antes de la Fecha de Confirmación, (a) el Tribunal del Título III considera que cualquier término o disposición del Plan es inválido, nulo o inaplicable, el Tribunal del Título III tendrá la facultad de alterar e interpretar tal término o disposición para que sea válido o ejecutable en la mayor medida posible, de conformidad con el propósito original del término o disposición que se considere inválida, nula o inaplicable, y entonces tal término o disposición será aplicable en su forma alterada o interpretada o (b) la Junta de Supervisión determina la modificación o cambio del Plan, lo que incluye, de manera no taxativa, para retirar a un Deudor (que no sea el ELA y la AEP) de los tratamientos establecidos en el Plan, las disposiciones del Plan aplicable a este se considerarán excluidas y no tendrán validez ni vigencia.

88.15    **Ley Aplicable**: salvo en la medida en que sea aplicable otra ley federal, o en la medida en que un anexo del presente o cualquier documento que se concierte en relación con la presente disponga otra cosa, los derechos, deberes y obligaciones que surgen del presente Plan se regirán por y se interpretarán y ejecutaran a tenor con PROMESA (lo que incluye las disposiciones del Código de Quiebras aplicables en virtud de la Sección 301 de PROMESA) y, en la medida en que no sean incompatibles con ellas, las leyes del Estado Libre Asociado de Puerto Rico que dan efecto a los principios de conflictos de leyes.

88.16    **Cierre de Caso**: la Junta de Supervisión, inmediatamente después de la plena administración de los Casos de Título III, someterá ante el Tribunal del Título III todos los documentos exigidos por la Norma de Quiebras 3022 y cualquier orden aplicable del Tribunal del Título III. Sin perjuicio del cierre de los Casos de Título III, el Tribunal del Título III conservará la jurisdicción de todas las cuestiones establecidas en el Artículo LXXXVII del Plan.

88.17    **Títulos de secciones**: los títulos de las secciones contenidos en el presente Plan son solamente para referencia y no afectarán de ningún modo el significado o interpretación del Plan.

88.18    **Incongruencias**: en la medida en que haya incongruencias entre (a) la información contenida en la Declaración de Divulgación y los términos y disposiciones del Plan, regirán los términos y disposiciones contenidos en el presente y entre (b) los términos y disposiciones del Plan y los términos y disposiciones de la Orden de Confirmación, regirán los términos y disposiciones de la Orden de Confirmación y se considerarán una modificación del Plan; disponiéndose, sin embargo, que bajo ninguna circunstancia la Orden de Confirmación modifique los términos económicos establecidos en el presente documento sin el consentimiento de la Junta de Supervisión.

88.19    **Conservación de documentos**: a partir de la Vigencia, los Deudores podrán mantener documentos a tenor con su política estándar de conservación de documentos, según sean alterados, modificados, cambiados o complementados por los Deudores.

88.20 **Efecto Vinculante Inmediato**: a tenor con la sección 944(a) del Código de Quiebras, aplicable a los Casos de Título III en virtud de la Sección 301 de PROMESA, y sin perjuicio de las Normas de Quiebras 3020(e), 6004(h) o 7062 o de otro modo, al producirse la Vigencia, los términos del Plan y del Complemento del Plan serán inmediatamente efectivos y ejecutables y se considerarán vinculantes para todos los tenedores de Reclamaciones y sus respectivos sucesores y cesionarios, independientemente de que la Reclamación de dicho tenedor se vea afectada en virtud del Plan y de que dicho tenedor haya aceptado o no el Plan. Los descargos, exculpaciones y resoluciones efectuados en virtud del Plan serán operativos y estarán sujetos a ejecución por el Tribunal del Título III, a partir de la Vigencia, lo que incluye a tenor con las disposiciones cautelares del Plan. Una vez aprobadas, las conciliaciones y resoluciones incorporadas en el Plan, junto con el tratamiento de cualquier Reclamación Permitida asociada, no serán objeto de alegato de nulidad u otra impugnación por parte de ninguna Entidad en ningún tribunal u otro foro. Como tal, toda Entidad que se oponga a los términos de cualquier conciliación y resolución establecidas en el Plan debe (a) impugnar dicha conciliación y resolución antes de la confirmación del Plan y (b) demostrar la legitimidad adecuada para objetar y que la conciliación y resolución de que se trate no cumplen las normas que rigen resoluciones en virtud de la Norma de Quiebras 9019 y otras leyes aplicables.

88.21 **Documentos Adicionales**: en la Vigencia o antes de esta, la Junta de Supervisión podrá presentar ante un Actuario del Tribunal del Título III los acuerdos y otros documentos que sean necesarios o apropiados para dar pleno vigor y efecto y probar adicionalmente los términos y condiciones del Plan. Los Deudores y todos los tenedores de Reclamaciones que reciban distribuciones a tenor con el Plan y todas las demás partes interesadas, ocasionalmente, podrán preparar, celebrar y otorgar cualquier acuerdo o documento y adoptar cualquier otra medida que sea necesaria o aconsejable para dar pleno vigor y efecto a las disposiciones y la intención del Plan.

88.22 **Reserva de Derechos**: salvo lo dispuesto expresamente en el presente, el Plan no tendrá validez ni vigencia a menos que el Tribunal del Título III dicte la Orden de Confirmación. Ninguna presentación del Plan, ninguna declaración o disposición contenida en el Plan, ni la adopción de ninguna medida por parte de los Deudores con respecto al Plan, la Declaración de Divulgación, o el Complemento del Plan será o se considerará como una admisión o renuncia a ningún derecho de los Deudores con respecto a los tenedores de Reclamaciones antes de la Vigencia. Salvo lo dispuesto expresamente en el presente, los derechos y facultades del Gobierno de Puerto Rico en virtud de la Constitución del Estado Libre Asociado y PROMESA, lo que incluye, de manera no taxativa, en virtud de las Secciones 303 y 305 de PROMESA, están expresamente reservados (sujetos a cualquier limitación al respecto impuesta por la Constitución del Estado Libre Asociado, la Constitución de los Estados Unidos o PROMESA), y nada de lo dispuesto en el presente se considerará una renuncia a ninguno de tales derechos y facultades.

88.23   **Sucesores y Cesionarios**: salvo que se disponga expresamente de otro modo en el Plan, los derechos, beneficios y obligaciones de cualquier Entidad nombrada o mencionada en el Plan o la Orden de Confirmación serán vinculantes para cualquier heredero, albacea, administrador, sucesor o cesionario, Filial, funcionario, directivo, agente, representante, abogado, beneficiario o tutor, de haberlos, de cada entidad y será para beneficio de estos.

88.24   **Notificaciones**: todas las notificaciones, solicitudes, intimaciones u otros documentos exigidos por el Plan o la Orden de Confirmación que deban notificarse o entregarse a la Junta de Supervisión, a los Deudores o a la AAFAF para que surtan efecto se realizarán por escrito, lo que incluye mediante transmisión por fax y, a menos que se disponga expresamente de otro modo en el presente, se considerará que se han entregado o realizado debidamente en el momento de la entrega efectiva o, en caso de notificación por transmisión o fax, cuando se reciban y confirmen telefónicamente, dirigidas de la siguiente manera:

De ser para la Junta de Supervisión:   Junta de Supervisión y Administración Financiera Puerto Rico
268 Muñoz Rivera Ave, Suite 1107
San Juan, PR 00918-1813
A la atención de: Natalie A. Jaresko, Directora Ejecutiva

– con copia a –

PROSKAUER ROSE LLP
Eleven Times Square
Nueva York, NY 10036
A la atención de: Martin J. Bienenstock, Esq.
Brian S. Rosen, Abogado
Tel: (212) 969-3000
Fax: (212) 969-2900

– y –

O'NEILL & BORGES LLC
250 Muñoz Rivera Ave, Suite 800
San Juan, PR 00918-1813
A la atención de: Hermann Bauer, Abogado
Tel: (787) 764-8181
Fax: (212) 753-8944

Si es para los deudores, a:      Estado Libre Asociado de Puerto Rico
                                 a través de la Autoridad de Asesoría Financiera y Agencia
                                 Fiscal
                                 Roberto Sánchez Vilella (Minillas) Government Center
                                 De Diego Ave. Parada 22
                                 San Juan, Puerto Rico 00907
                                 A la atención de: Oficina del Director Ejecutivo

                                            – con copia a –

                                 PROSKAUER ROSE LLP
                                 Eleven Times Square
                                 Nueva York, NY 10036
                                 A la atención de: Martin J. Bienenstock, Abogado Brian S.
                                                   Rosen, Abogado
                                 Tel: (212) 969-3000
                                 Fax: (212) 969-2900

                                              – y –

                                 O'NEILL & BORGES LLC
                                 250 Muñoz Rivera Ave, Suite 800
                                 San Juan, PR 00918-1813
                                 A la atención de: Hermann Bauer, Abogado
                                 Tel: (787) 764-8181
                                 Fax: (212) 753-8944
                                            – and –
                                 O'MELVENY & MYERS LLP
                                 Seven Times Square
                                 Nueva York, NY 10036
                                 A la atención de: John Rapisardi, Abogado
                                                   Peter Friedman, Abogado
                                                   Maria J. DiConza, Abogada
                                 Tel: (212) 326-2000
                                 Fax: (212) 326-2061
Si es para la AAFAF, a:          La Autoridad de Asesoría Financiera y Agencia Fiscal
                                 Roberto Sánchez Vilella (Minillas) Government Center
                                 De Diego Ave. Parada 22
                                 San Juan, Puerto Rico 00907

                                            – con copia a –

                                 O'MELVENY & MYERS LLP
                                 Seven Times Square
                                 Nueva York, NY 10036
                                 A la atención de: John Rapisardi, Abogado
                                                   Peter Friedman, Abogado
                                                   Maria J. DiConza, Abogada
                                 Tel: (212) 326-2000
                                 Fax: (212) 326-2061

                                             222

88.25     **Duración de los Interdictos o Paralizaciones**: a menos que se disponga otra cosa en el presente o en la Orden de Confirmación, todos los interdictos o paralizaciones en vigor en los Casos de Título III (en virtud de las secciones 105, 362 o 922 del Código de Quiebras o cualquier orden del Tribunal del Título III) y que existen a la Fecha de Confirmación (lo que excluye cualquier interdicto o paralización contenida en el Plan o en la Orden de Confirmación) permanecerán en pleno vigor hasta la Vigencia. Todos los interdictos o paralizaciones contenidas en el Plan o en la Orden de Confirmación permanecerán en pleno vigor a tenor con sus condiciones.

88.26     **Totalidad del acuerdo**: salvo que se indique de otro modo, el Plan sustituye a todas las negociaciones, promesas, pactos, acuerdos, entendimientos y representaciones anteriores y contemporáneos sobre tales temas, todos los cuales se han fusionado e integrado al Plan.

88.27     **Complemento del Plan**: todos los documentos incluidos en el Complemento del Plan se incorporan al Plan y forman parte de él, como si se establecieran íntegramente en el Plan. Una vez presentado el Complemento del Plan ante el Actuario del Tribunal del Título III, se distribuirán copias de los documentos que en él figuran, previa solicitud por escrito al abogado de la Junta de Supervisión en el domicilio que precede o descargando esos documentos de [https://cases.primeclerk.com/puertorico/] o del sitio web del Tribunal del Título III, disponible a través de PACER. A menos que el Tribunal del Título III ordene otra cosa, en la medida en que cualquier documento del Complemento del Plan sea incompatible con los términos de cualquier parte del Plan que no constituya el Complemento del Plan, prevalecerá la parte del Plan que no constituya el Complemento del Plan; disponiéndose, sin embargo, que, en lo que respecta a los asuntos regidos por el Contrato de Nuevos Bonos de OG o el Contrato de Emisión de CVI, en la medida en que cualquier disposición del Plan sea incompatible con el Contrato de Emisión de Nuevos Bonos de OG o el Contrato de Emisión de CVI, prevalecerá el Contrato de Emisión de Nuevos Bonos de OG o el Contrato de Emisión de CVI, según el caso.

Fechado: San Juan, Puerto Rico
                 11 de mayo de 2021

                                        ESTADO LIBRE ASOCIADO DE PUERTO
                                        RICO, a través de la Junta de
                                        Supervisión y Administración
                                        Financiera para Puerto Rico como su
                                        representante

                                        Por: /f/ Natalie A. Jaresko _____
                                        Nombre: Natalie A. Jaresko
                                        Cargo: Directora Ejecutiva

SISTEMA DE RETIRO DE LOS
EMPLEADOS DEL GOBIERNO DEL
ESTADO LIBRE ASOCIADO DE
PUERTO RICO, a través
de la Junta de Supervisión y
Administración Financiera para Puerto
Rico como su representante


Por: /f/ Natalie A. Jaresko
Nombre: Natalie A. Jaresko
Cargo: Directora Ejecutiva


AUTORIDAD DE EDIFICIOS PÚBLICOS DE
PUERTO RICO, a través de la Junta de
Supervisión y Administración Financiera
para Puerto Rico como su representante


Por: /f/ Natalie A. Jaresko
Nombre: Natalie A. Jaresko
Cargo: Directora Ejecutiva

# **ANEXO A**

LISTADO DE ACCIONES PREVENTIVAS

Proveedores Contenciosos Restantes

| Nombre del Proveedor | Tipo de Proveedor | Procedimiento contenciosos núm. |
|---|---|---|
| ALEJANDRO ESTRADA MAISONET | Adversario | 19-00059 |
| AMBASSADOR VETERANS SERVICES OF PR LLC | Adversario | 19-00048 |
| APEX GENERAL CONTRACTORS | Adversario | 19-00062 |
| BIO NUCLEAR OF P R INC | Adversario | 19-00091 |
| BRISTOL /MYERS SQUIBB P R INC | Adversario | 19-00042 |
| CARIBBEAN EDUCATIONAL SERVICES INC | Adversario | 19-00098 |
| CARIBE GROLIER INC | Adversario | 19-00051 |
| CCHPR HOSPITALITY, INC | Adversario | 19-00116 |
| CENTRO DE DESARROLLO ACADEMICO INC. | Adversario | 19-00053 |
| CITIBANK N A | Adversario | 19-00265 |
| CLINICA DE TERAPIAS PEDIATRICA | Adversario | 19-00054 |
| COMMUNITY CORNESTONE OF P R | Adversario | 19-00043 |
| COMPUTER LEARNING CENTERS, INC. | Adversario | 19-00055 |
| COMPUTER NETWORK SYSTEMS CORP | Adversario | 19-00150 |
| Core Laboratories N.V. d/b/a Saybolt | Adversario | 19-00381 |
| CREATIVE EDUCATIONAL & PSYCHOLOGICAL SER | Adversario | 19-00152 |
| DIDACTICOS, INC. | Adversario | 19-00161 |
| DISTRIBUIDORA LEBRON | Adversario | 19-00167 |
| Ecolift Corp. | Adversario | 19-00172 |
| EDWIN CARDONA & ASOC | Adversario | 19-00056 |
| EMPRESAS ARR INC | Adversario | 19-00084 |
| ENTERPRISE SERVICES CARIBE LLC | Adversario | 19-00060 |
| EVERTEC INC | Adversario | 19-00044 |
| EXPLORA CENTRO ACADEMICO Y TERAPEUTICO | Adversario | 19-00143 |
| FACSIMILE PAPER CONNECTION CORP | Adversario | 19-00092 |
| FAST ENTERPRISES LLC | Adversario | 19-00266 |
| FIRST HOSPITAL PANAMERICANO | Adversario | 19-00093 |
| FP+1,LLC | Adversario | 19-00148 |
| GF SOLUTIONS, INC. | Adversario | 19-00063 |
| GILA LLC | Adversario | 19-00354 |
| GIRARD MANUFACTURING INC DBA/BANCO DE | Adversario | 19-00103 |
| GM SECURITY TECHNOLOGIES | Adversario | 19-00273 |
| GREAT EDUCATIONAL SERVICE, CORP. | Adversario | 19-00277 |
| GUIMERFE INC | Adversario | 19-00182 |
| HEWLETT PACKARD PR BV | Adversario | 19-00183 |

| | | |
|---|---|---|
| HOSPIRA | Adversario | 19-00186 |
| I.D.E.A. INC. | Adversario | 19-00268 |
| INSTITUCION EDUCATIVA NETS, LLC | Adversario | 19-00067 |
| INTERNATIONAL SURVEILLANCE SERV CORP | Adversario | 19-00202 |
| INTERVOICE COMMUNICATIONS OF PR INC | Adversario | 19-00068 |
| JOSE SANTIAGO INC | Adversario | 19-00075 |
| JUNIOR BUS LINE, INC. | Adversario | 19-00229 |
| L.L.A.C., INC. | Adversario | 19-00122 |
| LAW OFFICES WOLF POPPER, INC | Adversario | 19-00236 |
| MACAM S.E. | Adversario | 19-00255 |
| MANAGEMENT, CONSULTANT & COMPUTER SERV | Adversario | 19-00081 |
| MANPOWER | Adversario | 19-00088 |
| MERCK SHARP & DOHME | Adversario | 19-00276 |

Proveedores Contenciosos Restantes

| Nombre del Proveedor | Tipo de Proveedor | Procedimiento contenciosos núm. |
|---|---|---|
| MICHICA INTERNATIONAL CO INC | Adversario | 19-00238 |
| MICROSOFT CORPORATION | Adversario | 19-00290 |
| N. HARRIS COMPUTER CORPORATION | Adversario | 19-00102 |
| NATIONAL COPIER | Adversario | 19-00251 |
| NELSON D. ROSARIO GARCIA | Adversario | 19-00125 |
| NETWAVE EQUIPMENT CORP | Adversario | 19-00253 |
| NEXT LEVEL LEARNING, INC | Adversario | 19-00129 |
| ORACLE CARIBBEAN INC | Adversario | 19-00112 |
| PCPS - Professional Consulting Psychoeducational Services, LLC | Adversario | 19-00188 |
| PERFECT CLEANING SERVICES INC | Adversario | 19-00249 |
| POSTAGE BY PHONE RESERVE ACCOUNT | Adversario | 19-00181 |
| PROSPERO TIRE EXPORT INC | Adversario | 19-00196 |
| Puerto Nuevo Security Guard | Adversario | 19-00384 |
| PUERTO RICO SUPPLIES GROUP INC | Adversario | 19-00199 |
| PUERTO RICO TELEPHONE COMPANY | Adversario | 19-00127 |
| QUEST DIAGNOSTICS | Adversario | 19-00440 |
| Ready & Responsible Security, Inc | Adversario | 19-00387 |
| REYES CONTRACTOR GROUP | Adversario | 19-00220 |
| RICARDO ESTRADA MAISONET | Adversario | 19-00227 |
| ROCK SOLID TECHNOLOGIES INC | Adversario | 19-00230 |
| ROCKET LEARNING INC | Adversario | 19-00232 |
| ROCKET TEACHER TRAINING | Adversario | 19-00235 |
| RODRIGUEZ PARISSI VAZQUEZ & CO PCS | Adversario | 19-00155 |
| ROSSO GROUP INC | Adversario | 19-00239 |
| S H V P MOTOR CORP | Adversario | 19-00134 |
| SEGUROS COLON INC | Adversario | 19-00130 |
| SESCO TECHNOLOGY SOLUTIONS LLC | Adversario | 19-00162 |
| ST. JAMES SECURITY SERVICES, INC. | Adversario | 19-00145 |
| TACTICAL EQUIPMENT CONSULTANTS INC | Adversario | 19-00222 |
| TALLER DESARROLLO INFANTIL CHIQUIRIMUNDI | Adversario | 19-00049 |
| Total Petroleum Puerto Rico Corp. | Adversario | 19-00114 |
| TRANSPORTES SONNEL INC | Adversario | 19-00149 |
| TRINITY METAL ROOF AND STEEL STRUC CO | Adversario | 19-00187 |
| TRUENORTH CORP | Adversario | 19-00160 |
| VIIV HEALTHCARE PR Y/O GLAXO SMITHKLINE | Adversario | 19-00164 |
| WF COMPUTER SERVICES | Adversario | 19-00200 |
| XEROX CORPORATION | Adversario | 19-00218 |

## **ANEXO B**

LISTADO DE ACCIONES PREVENTIVAS DE RECUPERACIÓN

A incluir

**ANEXO C**

LISTADO DE ACCIONES DE INVALIDEZ

## Acciones de Invalidez

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y el Comité Oficial de Acreedores no Asegurados del Estado Libre Asociado de Puerto Rico c. Jefferies LLC, procedimiento contencioso núm. 19-00281

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y el Comité Oficial de Acreedores no Asegurados del Estado Libre Asociado de Puerto Rico c. BNY Mellon/POP Sec, procedimiento contencioso núm. 19-00282

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y el Comité Oficial de Acreedores no Asegurados del Estado Libre Asociado de Puerto Rico c. First Southwest Co., procedimiento contencioso núm. 19-00283

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y el Comité Oficial de Acreedores no Asegurados del Estado Libre Asociado de Puerto Rico c. Demandados 1E-59E, procedimiento contencioso núm. 19-00284

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y el Comité Oficial de Acreedores no Asegurados del Estado Libre Asociado de Puerto Rico c. Demandados 1A-100A, procedimiento contencioso núm. 19-00285

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y el Comité Oficial de Acreedores no Asegurados del Estado Libre Asociado de Puerto Rico c. Demandados 1B-100B, procedimiento contencioso núm. 19-00286

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y el Comité Oficial de Acreedores no Asegurados del Estado Libre Asociado de Puerto Rico c. Demandados 1C-53C, procedimiento contencioso núm. 19-00287

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y el Comité Oficial de Acreedores no Asegurados del Estado Libre Asociado de Puerto Rico c. Demandados 1D-73D, procedimiento contencioso núm. 19-00288

# **ANEXO D**

LISTADO DE ACCIONES DE IMPUGNACIÓN DE GRAVAMEN

## Acciones de Impugnación de Gravamen

Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, et al., y el Comité Oficial de Acreedores no Asegurados de todos los Deudores de Título III (diferentes a COFINA) c. Autonomy Master Fund Ltd., procedimiento contencioso núm. 19-00291

Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, et al., y el Comité Oficial de Acreedores no Asegurados de todos los Deudores de Título III (diferentes a COFINA) c. Cooperativa de Ahorro t Crédito de Rincón, procedimiento contencioso núm. 19-00292

Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, et al., y el Comité Oficial de Acreedores no Asegurados de todos los Deudores de Título III (diferentes a COFINA) c. Ortiz de la Renta, procedimiento contencioso núm. 19-00293

Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, et al., y el Comité Oficial de Acreedores no Asegurados de todos los Deudores de Título III (diferentes a COFINA) c. Martínez Sánchez, procedimiento contencioso núm. 19-00294

Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, et al., y el Comité Oficial de Acreedores no Asegurados de todos los Deudores de Título III (diferentes a COFINA) c. Valdivieso, procedimiento contencioso núm. 19-00295

Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, et al., y el Comité Oficial de Acreedores no Asegurados de todos los Deudores de Título III (diferentes a COFINA) c. Friedman, procedimiento contencioso núm. 19-00296

Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, et al., y el Comité Oficial de Acreedores no Asegurados de todos los Deudores de Título III (diferentes a COFINA) c. Blackrock Fin. Mgmt., procedimiento contencioso núm. 19-00297

# **ANEXO E**

MODIFICACIÓN A LA LEGISLACIÓN DEL SRJ

## MODIFICACIONES PARA RECLAMACIONES DEL SRJ

Lo que sigue es un resumen de modificaciones con respecto a los beneficios pendientes del Sistema de Retiro de la Judicatura del Estado Libre Asociado de Puerto Rico («SRJ») según aplica a jueces que ejercen sin mandato fijo.

Los miembros de SRJ contratados (a) antes del 1 de julio de 2014 actualmente acumulan beneficios a tenor con una fórmula de beneficio definido («BD») y (b) a partir del 1 de julio de 2014 actualmente acumulan beneficios a tenor con una fórmula de BD alternativa y combinada con una fórmula de aportación definida («AD») híbrida. Para evitar crear futuras responsabilidades en cuanto a pensiones y para estabilizar el sistema a beneficio de tanto los contribuyentes como los futuros pensionados, se modificará la acumulación de beneficios del plan del SRJ. Al modificarse, los miembros del SRJ conservarán los beneficios que han acumulado hasta la Vigencia inclusive como se definió en el Plan, disponiéndose, sin embargo, que los beneficios acumulados hasta el 3 de mayo de 2017 inclusive estarán sujetos a la Modificación de Beneficios Mensuales a tenor con los Beneficios del Plan acumulados a partir de la Vigencia se basarán en las aportaciones y ganancias en nuevas cuentas de retiro de AD separadas financiadas por las aportaciones de empleados. Como resultado, los empleados tendrán la certeza de que el retorno de sus aportaciones e inversiones estará salvaguardado a futuro, asegurando la seguridad de su retiro.

| Definiciones | |
|---|---|
| **Sistema de Pensiones** | Los términos del presente documento y las referencias al Sistema de Pensiones corresponden a bloquear las obligaciones en cuanto a pensiones para los miembros del SRJ. |
| **Edad de Elegibilidad para Retiro** | La edad en la que un miembro puede comenzar a recibir un beneficio de pensión mensual. |
| **Fecha de Bloqueo** | La Vigencia. |
| **Beneficio de Retiro** | El monto de beneficio pagadero a un miembro del SRJ cada mes. |
| **Servicio Acreditable** | A fines de calcular el Servicio Acreditable, los años y meses (en lo que se cuentan las fracciones de meses como meses de servicio completos) comienzan en la Fecha de Crédito. Los años y meses trabajados después de la vigencia del bloqueo no serán considerados salvo según se establezca a continuación en las «Disposiciones de la Propuesta». |

| Definiciones | |
|---|---|
| **Fecha de Crédito** | La Fecha de Crédito para miembros del SRJ con menos de ocho (8) años de Servicio Acreditable como juez a la vigencia del bloqueo, o para aquellos contratados a partir del 1 de julio de 2014, es la fecha de designación como juez, y para todos los otros miembros del SRJ será la fecha en que comenzaron a trabajar para el Gobierno de Puerto Rico (siempre que las aportaciones acumuladas por servicios al gobierno previos se transfieran al Sistema de Pensión). |
| **Sueldo más alto** | El sueldo más alto que recibe un juez. No se considerará la compensación adquirida después de la vigencia del bloqueo. (Aplicable para miembros del SRJ contratados antes del 1 de julio de 2014). |
| **Compensación Promedio** | El promedio de los últimos sesenta (60) meses de sueldo que recibió un miembro del SRJ por Servicio Acreditable. (Aplicable para miembros del SRJ contratados a partir del 1 de julio de 2014). |
| **Cuenta de Aportación Definida** | La cuenta individual nocional establecida para cada miembro del SRJ a partir del 1 de julio de 2014. Tales cuentas serán acreditadas con las aportaciones e intereses del miembro del SRJ. Las nuevas cuentas se establecerán a partir de la Vigencia para miembros del SRJ contratados antes del 1 de julio de 2014, en cuanto al bloqueo de la pensión del SRJ. |
| **Edad de Elegibilidad para Retiro Base** | Edad a la cual el miembro del SRJ llega a los sesenta (60) años de edad y diez (10) años de Servicio Acreditable. (Aplicable para miembros del SRJ contratados antes del 1 de julio de 2014). |
| **Edad de Elegibilidad para Retiro Opcional** | Para jueces con al menos ocho (8) años de Servicio Acreditable como juez, la realización de:<br><br>a.        Treinta (30) años de Servicio Acreditable total o<br><br>b.        Cincuenta y cinco (55) años de edad con ochenta y dos (82) años de edad combinada más Servicio Acreditable («Puntos»).<br><br>(Aplicable para miembros del SRJ contratados antes del 1 de julio de 2014). |

| Tiempo | |
|---|---|
| **Bloqueo de la Pensión** | El bloqueo de la acumulación del beneficio de pensión del SRJ entra en vigor a la Vigencia. |
| **Implementación** | El bloqueo del monto del beneficio que se describe a continuación será aplicable a los beneficios que se hubiesen generados y pagado según el plan a partir de la Fecha de Bloqueo y sujeto también a la Modificación del Beneficio Mensual del Plan. |

| Disposiciones de la Modificación | |
|---|---|
| **Bloqueo de Acumulación de Beneficios e Implementación de Cuenta de AD** | Bloqueo de beneficios acumulados a la fecha de bloqueo. Los nuevos saldos de cuenta de AD serán financiados con las aportaciones de empleados a establecer con relación al bloqueo. La aportación de empleados requerida total para cada juez se mantendrá en los niveles de aportación actuales. |
| **Mejora de la Elegibilidad de Retiro si está dentro de seis (6) meses de Elegibilidad de Retiro no Reducido** | Para miembros del SRJ contratados antes del 1 de julio de 2014, si no tiene ya derecho a retiro a partir del bloqueo, a los miembros del SRJ contratados antes del 1 de julio de 2014 se les permitirá generar el derecho a retiro siempre que el miembro del SRJ llegue a alguno de los siguientes dentro de los seis (6) meses de la Fecha de Bloqueo:<br><br>a.    Edad de Elegibilidad para Retiro Base,<br>b.    Edad de Elegibilidad para Retiro Opcional o<br>c.    Realización de 20 años de servicio acreditable |
| **Retraso en la Elegibilidad de Retiro para todos los demás** | Para las personas físicas contratadas antes del 1 de julio de 2014 que no cumplen los criterios establecidos anteriormente, la elegibilidad de retiro se retrasará en hasta tres (3) años. El retiro también se retrasará para miembros del SRJ con cese de actividad laboral que todavía no han comenzado. |
| **Eliminación del Ajuste de Costo de Vida (COLA, por sus siglas en inglés)** | El COLA estatutario del tres por ciento (3 %) que ha sido otorgado cada tres (3) años desde 2002 se eliminará para todos los miembros del SRJ a partir de la Fecha de Bloqueo. |
| **Eliminación de Bonos** | Ya no se pagarán los bonos de Navidad, de Verano y para Medicina a los miembros del SRJ que se retiren después de la fecha de bloqueo. Además, las aportaciones al Plan de Seguro Médico también se eliminarán para retiros realizados después de la fecha de bloqueo. |

| Disposiciones de la Modificación | |
|---|---|
| **Eliminación de Beneficios por Discapacidad Mejorados** | Los miembros del SRJ que cesen su actividad laboral debido a discapacidad a partir de la Fecha de Bloqueo no tendrán derecho a los mismos beneficios que otros miembros del SRJ que cesen su actividad laboral. |
| **Eliminación de Beneficios por muerte ocupacional y un año de sueldo para futuras muertes durante el servicio** | Los ceses de actividad laboral debido a muerte tendrían derecho a un reembolso de las aportaciones acumuladas. |
| **Eliminación del Beneficio de muerte posterior al retiro gratuito** | La forma de pago normal del beneficio anual dispuesto para futuros retiros será una anualidad vitalicia única. Los miembros del SRJ podrán elegir un beneficio conjunto y a favor del superviviente que será el beneficio actuarial equivalente a la forma normal de pago. |

| Disposiciones más detalladas de las Modificaciones | |
|---|---|
| **Implicaciones específicas de la Edad de Elegibilidad para Retiro si es contratado antes del 1 de julio de 2014** | A.      Los miembros del SRJ que tienen derecho a retirarse antes de la Fecha de Bloqueo seguirán teniendo derecho a retirarse en cualquier momento.<br><br>B.      Los miembros del SRJ que llegarían a cualquiera de las siguientes a la fecha seis (6) meses después de la Fecha de Bloqueo o después de esta, si se hubiese seguido acumulado el servicio después de la fecha de bloqueo continuarán teniendo derecho a retirarse en cualquier momento:<br><br>a.      Edad de Elegibilidad para Retiro Base<br>b.      Edad de Elegibilidad para Retiro Opcional<br>c.      Realización de 20 años de servicio acreditable<br><br>C.      Los miembros del SRJ que no tienen derecho a retirarse a la Fecha de Bloqueo y que no cumplirán los criterios establecidos en el punto B. anterior a los seis (6) meses después de la Fecha de Bloqueo tendrán derecho a retirarse a la fecha en que el miembro del SRJ hubiese alcanzado diez (10) años de Servicio Acreditable si el bloqueo no hubiese ocurrido y que tengan las edades que se muestran en la siguiente tabla:<br><br><table><tr><th>Edad alcanzada a la Fecha de Bloqueo</th><th>Edad de Elegibilidad para Retiro seis meses después de la Fecha de Bloqueo</th></tr><tr><td>57 y mayor</td><td>61</td></tr><tr><td>56</td><td>62</td></tr><tr><td>55 o menor</td><td>63</td></tr></table> |

| Implicaciones específicas del Beneficio de Retiro si es contratado antes del 1 de julio de 2014 | **Retiros a la fecha seis (6) meses posteriores a la Fecha de Bloqueo o antes de esta:**<br><br>A.        Si un miembro del SRJ alcanza la Edad de Elegibilidad para Retiro Opcional, el beneficio pagadero será igual al setenta y cinco por ciento (75 %) del Sueldo más alto (sesenta por ciento (60 %) del Sueldo más alto si se contrató después del 24 de diciembre de 2013).<br><br>B.        Si un miembro del SRJ alcanza la Edad de Elegibilidad Base, pero no ha alcanzado la Edad de Elegibilidad para Retiro Opcional, la porción del beneficio pagadero será igual al veinticinco por ciento (25 %) del Sueldo más alto, más cinco por ciento (5 %) del Sueldo más alto por cada año de Servicio Acreditable por encima de diez (10) con un máximo de setenta y cinco por ciento (75 %) del Sueldo más alto (sesenta por ciento (60 %) del Sueldo más alto si se contrató después del 24 de diciembre de 2013).<br><br>C.        Si un miembro del SRJ ha alcanzado setenta (70) años edad con menos de diez (10) años de Servicio Acreditable, el beneficio pagadero es el veinticinco por ciento (25 %) del Sueldo más alto, prorrateado para cada año de Servicio Acreditable menor que los diez (10).<br><br>D.        Si un miembro del SRJ ha alcanzado al menos veinte (20) años de Servicio Acreditable, pero no ha alcanzado la Edad de Elegibilidad Base ni la Edad de Elegibilidad para Retiro Opcional, el beneficio pagadero es el veinticinco por ciento (25 %) del Sueldo más alto, más cinco por ciento (5 %) del Sueldo más alto por cada año de Servicio Acreditable por encima de diez (10) con un máximo de setenta y cinco por ciento (75 %) del Sueldo más alto (sesenta por ciento (60 %) del Sueldo más alto si se contrató después del 24 de diciembre de 2013), reducido de manera actuarial a la edad de retiro actual de la anterior de la fecha en que el miembro del SRJ habría alcanzado los (60) años de edad o la Edad de Elegibilidad para Retiro Opcional en base a su servicio al momento de retirarse.<br><br>**Retiro seis meses después de la Fecha de Bloqueo:**<br><br>A.        Si un miembro del SRJ ha alcanzado la Edad de Elegibilidad para Retiro Opcional a la Fecha de Bloqueo (o hubiese alcanzado la Edad de Elegibilidad para Retiro Opcional a la fecha seis (6) meses posterior a la Fecha de Bloqueo), el beneficio pagadero será igual al setenta y cinco por ciento (75 %) del Sueldo más alto (sesenta por ciento (60 %) del Sueldo más alto si se contrató después del 24 de diciembre de 2013). |

| | |
|---|---|
| **Disposiciones más detalladas de las Modificaciones** | |

B. Si un miembro del SRJ ha alcanzado la Edad de Elegibilidad Base a la Fecha de Bloqueo (o hubiese alcanzado la Edad de Elegibilidad Base al [31 de diciembre de 2019]), el beneficio pagadero será igual al veinticinco por ciento (25 %) del Sueldo más alto, más cinco por ciento (5 %) del Sueldo más alto por cada año de Servicio Acreditable por encima de diez (10) con un máximo de setenta y cinco por ciento (75 %) del Sueldo más alto (sesenta por ciento (60 %) del Sueldo más alto si se contrató después del 24 de diciembre de 2013).

C. Si un miembro del SRJ ha alcanzado al menos veinte (20) años de Servicio Acreditable a la Fecha de Bloqueo (o hubiese alcanzado al menos veinte (20) años de Servicio Acreditable al [31 de diciembre de 2019]) y el miembro del SRJ alcanzó al menos siete años y medio (7.5) de Servicio Acreditable como juez a la Fecha de Bloqueo, el beneficio pagadero es igual al setenta y cinco por ciento (75 %) del Sueldo más alto (sesenta por ciento (60 %) del Sueldo más alto si se contrató después del 24 de diciembre de 2013), reducido de manera actuarial a la fecha de inicio del beneficio desde la fecha anterior del a fecha en que el miembro del SRJ habría alcanzado los (60) años de edad o la Edad de Elegibilidad para Retiro Opcional en base a su servicio a la Fecha de Bloqueo.

D. Si un miembro del SRJ ha alcanzado al menos veinte (20) años de Servicio Acreditable a la Fecha de Bloqueo (o hubiese alcanzado al menos veinte (20) años de Servicio Acreditable al [31 de diciembre de 2019]) y el miembro del SRJ no alcanzó al menos siete años y medio (7.5) de Servicio Acreditable como juez a la Fecha de Bloqueo, el beneficio pagadero es igual al setenta y cinco por ciento (75 %) del Sueldo más alto (sesenta por ciento (60 %) del Sueldo más alto si se contrató después del 24 de diciembre de 2013), reducido de manera actuarial a la fecha de inicio de los sesenta (60) años de edad.

E. Si un miembro del SRJ ha alcanzado al menos diez (10) años de Servicio Acreditable a la Fecha de Bloqueo y no hubiese alcanzado al menos veinte (20) años de Servicio Acreditable al [31 de diciembre de 2019], el beneficio pagadero será igual al veinticinco por ciento (25 %) del Sueldo más alto, más cinco por ciento (5 %) del Sueldo más alto por cada año de Servicio Acreditable por encima de diez (10) con un máximo de setenta y cinco por ciento (75 %) del Sueldo más alto (sesenta por ciento (60 %) del Sueldo más alto si se contrató después del 24 de diciembre de 2013).

| Disposiciones más detalladas de las Modificaciones | |
|---|---|
| | F.        Si un miembro del SRJ no ha alcanzado al menos diez (10) años de Servicio Acreditable a la Fecha de Bloqueo y se retira después de la fecha en que el participante hubiese acumulado diez (10) años de servicio si no se hubiese dado el bloqueo, el beneficio pagadero es igual al veinticinco por ciento (25 %) del Sueldo más alto, prorrateado para cada año de Servicio Acreditable menor que los diez (10). |
| **Implicaciones específicas de la Edad de Elegibilidad para Retiro si es contratado a partir del 1 de julio de 2014** | A. Los miembros del SRJ que tienen derecho a retirarse o hubiesen tenido derecho a retirarse antes de la fecha seis (6) meses posterior a la Fecha de Bloqueo seguirán teniendo el derecho a retirarse en cualquier momento. La elegibilidad actual es llegar a los cincuenta y cinco (55) años de edad con doce (12) años de Servicio Acreditable.<br><br>B. Los miembros del SRJ que no cumplirían los criterios para tener derecho a retirarse a la fecha seis (6) meses posterior a la Fecha de Bloqueo tendrán derecho a retirarse al alcanzar los sesenta y cinco (65) años de edad con doce (12) años de Servicio Acreditable. |
| **Implicaciones específicas del Monto de Beneficio de Retiro si es contratado a partir del 1 de julio de 2014** | A.        Los miembros del SRJ seguirán recibiendo un beneficio de un uno con cinco por ciento (1.5 %) de Compensación Promedio más el valor anualizado del saldo de la Cuenta Híbrida de AD al momento del retiro.<br><br>B.        Los miembros del SRJ que hubiesen alcanzado la elegibilidad de retiro antes de la fecha seis (6) meses posterior a la Fecha de Bloqueo y que no han alcanzado todavía los sesenta (60) años de edad recibirán un beneficio de uno con cinco por ciento (1.5 %) de Compensación Promedio reducido en 1/180 por cada uno de los primeros sesenta (60) meses y por 1/360 por cada uno de los siguientes sesenta (60) meses por los cuales la fecha de retiro precede la edad de sesenta y cinco (65) años de edad, más el valor anualizado del saldo de la Cuenta Híbrida de AD. |

# **ANEXO F**

MODIFICACIÓN A LA LEGISLACIÓN DEL SRM

## MODIFICACIONES PARA EL BLOQUEO DE OBLIGACIONES DE BENEFICIOS DEL SRM[1]

Lo que sigue es un resumen de las modificaciones con respecto a un bloqueo de los beneficios de pensión acumulados a tenor con el SRM.

Los miembros del SRM contratados antes del 1 de agosto del 2014 están actualmente acumulando beneficios a tenor con una fórmula de beneficio definido («BD»). Para evitar crear futuras responsabilidades de pensiones y para estabilizar el sistema a beneficio de tanto los contribuyentes como los futuros pensionados, la acumulación de beneficios del plan del SRM se bloqueará en la Vigencia del Plan (la «Fecha de Bloqueo»). Tal bloqueo será aplicable a todos los miembros del SRM sin importar su cargo o categoría profesional. Los miembros del SRM conservarán los beneficios que han acumulado a la fecha, sujeto a Modificación de Beneficios Mensuales del beneficio establecida en el Plan. Los beneficios futuros se basarán en las aportaciones y ganancias en nuevas cuentas de retiro de aportación definida («AD») separadas financiadas por las aportaciones de empleados. Como resultado, los empleados tendrán la certeza de que el retorno de sus aportaciones e inversiones estará salvaguardado a futuro, asegurando la seguridad de su retiro.

| Definiciones | |
|---|---|
| Sistema de Pensiones | Los términos del presente documento y las referencias al Sistema de Pensiones corresponden a bloquear las obligaciones en cuanto a pensiones para los miembros del SRM. |
| Edad de Elegibilidad para Retiro | La edad en la que un miembro puede comenzar a recibir un beneficio de pensión mensual. |
| Beneficio de Retiro | El monto de beneficio pagadero a un miembro cada mes. |
| Servicio Acreditable | Los años y meses de participación en el plan, durante los cuales se realizaron aportaciones, que comienzan en la fecha de la primera designación original para prestar servicios. A fines de calcular el Servicio Acreditable, quince (15) días calendario de un mes del año escolar equivaldrán a un (1) mes calendario trabajado durante el año escolar para maestros y veintiún (21) días calendario de un mes equivaldrán a un (1) mes calendario trabajado para todos los demás miembros. Los días y meses trabajados después de la vigencia del bloqueo no serán considerados salvo según se establezca a continuación en las «Disposiciones de la Propuesta». |

---

[1] El informe de valuación actuarial de Milliman al 30 de junio de 2017, que usa los datos recolectados del censo del 1 de julio de 2016, que es el conjunto de datos más recientes disponibles actualmente. Si se vuelve disponible un nuevo conjunto de datos de 2017 o 2018, los valores se actualizarán acorde.

| Definiciones | |
|---|---|
| **Compensación Promedio** | El promedio de los treinta y seis (36) meses de compensaciones más altos que recibió el miembro por Servicio Acreditable. No se considerará la compensación adquirida después del a vigencia del bloqueo. |
| **Cuenta de Aportación Definida** | La cuenta individual nocional establecida para cada miembro a partir del 1 de agosto de 2014. Tales cuentas serán acreditadas con las aportaciones e intereses del miembro y se han segregado en las cuentas Ley 106 de Aportación Definida a junio de 2020. Las nuevas cuentas se establecerán tan pronto como sea posible desde el punto de vista administrativo y entrarán en vigor después de la Fecha de Bloqueo para miembros contratados antes del 1 de agosto de 2014, en cuanto al bloqueo de la fórmula de BD. |

| Tiempo | |
|---|---|
| **Bloqueo de la Pensión** | El bloqueo de la acumulación del beneficio de pensión del SRM entrará en vigor en la Fecha de Bloqueo. |
| **Fecha de Beneficios de Pensión** | El conjunto de datos usado para calcular el bloqueo de los beneficios de pensión necesario de base en el conjunto de datos de pensionados del 1 de julio de 2016 proporcionado por el Sistema de Pensiones, que es el último conjunto de datos disponible actualmente. [Si se vuelve disponible un nuevo conjunto de datos de 2017 o 2018, los valores se actualizarán acorde.] |
| **Implementación** | El bloqueo del monto del beneficio que se describe a continuación será aplicable a los beneficios que se hubiesen generado y pagado según el plan a partir de la Fecha de Bloqueo y sujeto también a la Modificación del Beneficio Mensual del beneficio establecida en el Plan. |

| Disposiciones de la Modificación | |
|---|---|
| **Bloqueo de Acumulación de Beneficios e Implementación de Cuenta de AD** | Bloqueo de beneficios acumulados a la Fecha de Bloqueo, según se establece a continuación. Los nuevos saldos de cuenta de AD a financiar con las aportaciones de empleados se establecerán con relación al bloqueo. La aportación de empleado mínima será del 8.5 %, según define el Artículo 3.4 de la Ley 106-2017, ajustada para las retenciones de Seguro Social, si corresponden. |
| **Retraso en la Elegibilidad de Retiro para todos los demás** | Para miembros contratados antes del 1 de agosto de 2014, que no tienen derecho a retiro a la fecha de bloqueo, la elegibilidad de retiro se retrasará tres (3) años. El retiro también se retrasará para miembros con cese de actividad laboral que todavía no han comenzado. |

3

| Disposiciones de la Modificación | |
|---|---|
| **Eliminación de Beneficio Mínimo** | Se eliminará el beneficio mínimo mensual de $ 400 para miembros contratados antes del 1 de agosto de 2014 para miembros que se retiren a partir de la Fecha de Bloqueo. |
| **Eliminación de Adquisición de Servicios** | Los miembros activos contratados antes del 1 de agosto de 2014, con derecho a servicio antes de su contratación han tenido la opción de elegir la adquisición de servicios en el SRM. Esto se logró mediante la transferencia de activos o mediante aportaciones pagaderas por el miembro. Esta disposición eliminará futuras adquisiciones de servicios a partir de la Fecha de Bloqueo. |
| **Eliminación de Beneficios por Discapacidad Mejorados** | Los miembros activos contratados antes del 1 de agosto de 2014 que rescindan el contrato de empleado debido a discapacidad han podido recibir un beneficio mensual inmediato igual al beneficio devengado sin reducciones de 1.8 % de la Compensación Promedio por año de Servicio Acreditable. Los ceses de actividad laboral por discapacidad a partir de la Fecha de Bloqueo tendrán derecho a los mismos beneficios que otros participantes con cese de actividad laboral (es decir, beneficios de retiro diferidos sin mejora). |
| **Suspensión de Beneficios** | Se suspenderán los beneficios de los pensionados del SRM que reciben beneficios de pensión que regresan al Departamento de Educación o una escuela subsidiada como maestro durante su reinserción laboral. |
| **Transferencia de Aportación Definida de Planes Anteriores** | Después de la Fecha de Bloqueo, las nuevas contrataciones activas con beneficios de pensión con derecho a traspaso de un empleador anterior tendrá derecho a transferir esos montos a su cuenta de AD ya sea como una única transferencia al registrarse en el plan o mediante compensación diferida de elección inicial mediante nómina, sujeto a prestaciones impositivas. |

| Disposiciones más detalladas de las Modificaciones | |
|---|---|
| **Implicaciones específicas de la Edad de Elegibilidad para Retiro si es contratado antes** | A.  Los miembros que cumplen con las siguientes combinaciones de edad y servicio antes de la Fecha de Bloqueo seguirán teniendo derecho a retirarse en cualquier momento:<br><br>a.  Al menos 60 años de edad con al menos diez (10) años de Servicio Acreditable |

| Disposiciones más detalladas de las Modificaciones | |
|---|---|
| del 1 de agosto de 2014 | b. Al menos 47 años de edad con al menos veinticinco (25) años de Servicio Acreditable<br><br>B. Los miembros que no tienen derecho a retirarse a la Fecha de Bloqueo tendrán derecho a retirarse al cumplir diez (10) años de Servicio Acreditable y alcanzar 63 años de edad. |
| Implicaciones específicas del Beneficio de Retiro si es contratado antes del 1 de agosto de 2014 | **Retiros en o posteriores a la Fecha de Bloqueo:**<br><br>Los beneficios mínimos ya no se aplicarán para futuros pensionados.<br><br>El bloqueo también elimina el pago acelerado de beneficios por discapacidades futuras y la capacidad de adquirir servicio adicional.<br><br>A. Si un miembro tiene al menos 50 años de edad y ha alcanzado al menos treinta (30) años de Servicio Acreditable a la Fecha de Bloqueo, el beneficio acumulado es igual al setenta y cinco (75 %) de la Compensación Promedio a la Fecha de Bloqueo.<br><br>B. Si un miembro tiene menos de 50 años de edad y ha alcanzado al menos treinta (30) años de Servicio Acreditable a la Fecha de Bloqueo, el beneficio acumulado es igual al sesenta y cinco (65 %) de la Compensación Promedio a la Fecha de Bloqueo.<br><br>C. Si un miembro tiene al menos 50 años de edad al 1 de enero de 2020 no alcanza al menos treinta (30) años de Servicio Acreditable a la Fecha de Bloqueo, el beneficio acumulado es igual al 1.8 por ciento de la Compensación Promedio al 31 de diciembre de 2019 multiplicado por los años de Servicio Acreditable a la Fecha de Bloqueo.<br><br>D. Si un miembro tiene menos de 50 años de edad a la Fecha de Bloqueo y no alcanza al menos treinta (30) años de Servicio Acreditable a la Fecha de Bloqueo, el beneficio acumulado es igual al noventa y cinco (95 %) de 1.8 por ciento de la Compensación Promedio a la Fecha de Bloqueo multiplicado por los años de Servicio Acreditable a la Fecha de Bloqueo. |
| Implicaciones si es contratado a partir del 1 de agosto de 2014 | No se realizarán cambios a la Elegibilidad de Retiro para miembros contratados a partir del 1 de agosto de 2014. La Elegibilidad de Retiro sigue siendo 62 años de edad con al menos cinco (5) años de Servicio Acreditable.<br><br>El Beneficio de Retiro se basará en el valor de la Cuenta de Aportación Definida a la Fecha de Bloqueo. |

| Disposiciones más detalladas de las Modificaciones | |
|---|---|
| | A.  Si el valor de la Cuenta es menor a $ 10,000, será pagadera a precio alzado.<br><br>B.  Si el valor de la Cuenta es de $ 10,000 o más, la Cuenta se convierte en una anualidad mensual pagadera durante la vida del miembro. |

| Disposiciones varias | |
|---|---|
| Seguro Social | La Junta de Supervisión y el Gobierno tomaran las medidas necesarias para asegurar que todos los miembros contratados después de la Fecha de Bloqueo y todos los maestros menores a 45 años de edad a la Fecha de Bloqueo estén inscritos en el Seguro Social de manera obligatoria y usará los esfuerzos razonables para proporcionar tal inscripción en el Seguro Social para tales miembros entrará en vigor a la Fecha de Bloqueo o tan pronto como sea posible después de esta. La inscripción en el Seguro Social se define como el envío de los impuestos de nómina de Seguro Social del patrono y el empleado de tal forma que se informan y acreditan ante el Seguro Social. La AFT, AMPR y AMPR-LS tomarán las medidas necesarias para dar apoyo a los esfuerzos del ELA y sus agentes para inscribir en el Seguro Social dentro de los sesenta (60) días posteriores a la Vigencia a todo miembro que no tenga derecho a devengar créditos de Seguro Social. |
| Ley 160 | Para evitar dudas, cualquier aportación realizada a las cuentas de la Ley 160 no estará sujeta a ninguna reducción de beneficio de pensión. |

## **ANEXO G**

TÉRMINOS DEL RESUMEN DEL CONTRATO DE NEGOCIACIÓN
COLECTIVA DE AFCSME

## MODIFICACIONES A LOS CONTRATOS DE NEGOCIACIÓN COLECTIVA DE AFCSME

Lo que sigue es un resumen de modificaciones acordadas a los contratos de negociación colectiva (en su conjunto los «contratos de negociación colectiva de AFSCME») entre AFSCME y el ELA. Las disposiciones de los contratos de negociación colectiva de AFSCME existentes que no estén en conflicto con los términos y condiciones establecidos a continuación se mantendrán iguales y en pleno vigor en los nuevos contratos de negociación colectiva de AFSCME. Solo aquellos contratos de negociación colectiva de AFSCME enumerados a continuación se modificarán en este momento.

| Definiciones | |
|---|---|
| Administración | La gestión de la división (agencia/agrupamiento) a la que se asigna el empleado. |
| Departamento | La división (agencia/agrupamiento) a la que se asigna el empleado. |
| Empresas Asociadas a Sindicatos | · Junta de Libertad Condicional y Local 3584 / Sindicato de Servidores Públicos<br>· Departamento de Asuntos del Consumidor y Local 3986 / Sindicato de Servidores Públicos<br>· Departamento de Corrección y Rehabilitación y Local 3500-Unidad B Funcionarios de Custodia (ACU) / Sindicato de Servidores Públicos<br>· Departamento de Corrección y Rehabilitación / Administración de Instituciones Juveniles y Local 3559 (ACU) / Sindicato de Servidores Públicos<br>· Departamento de Educación y Local 3840 que cubre solo a empleados dentro de la jurisdicción de AFSCME de PASO<br>· Departamento de Recursos Naturales y Ambientales y Local 2082-Unidad A / Sindicato de Servidores Públicos<br>· Departamento de Recursos Naturales y Ambientales y Local 3647 (Cuerpo de Vigilantes) / Sindicato de Servidores Públicos<br>· Departamento de Transportación y Obras Públicas y Local 3889 / Sindicato de Servidores Públicos<br>· Departamento del Trabajo y Recursos Humanos / Administración de Rehabilitación Vocacional y Local 3251 / Sindicato de Servidores Públicos<br>· Departamento de la Familia y Local 3227-Unidad A / Sindicato de Servidores Públicos<br>· Departamento de la Familia y Local 3234-Unidad B (UPETEC) / Sindicato de Servidores Públicos<br>· Instituto de Ciencias Forenses y Local 2099 / Sindicato de Servidores Públicos<br>· Departamento de Corrección y Rehabilitación / Programa de |

|  | Servicios con Antelación al Juicio y Local 3573 (ACU) / Sindicato de Servidores Públicos<br>· Negociado de Transporte y otros Servicios Públicos y Local 3897 / Sindicato de Servidores Públicos |
|---|---|

| Tiempo | |
|---|---|
| Plazos | Contratos de negociación colectiva a cinco (5) años en vigor a la vigencia del Plan del ELA. |
| Implementación | El Plan. |

| Disposiciones más detalladas de la propuesta | |
|---|---|
| Ceses de actividad laboral/ Despidos | **Sección 1** Para evitar el despido involuntario de personal y para darle al personal notificación adecuada de reasignaciones y traslados, el Sindicato y la Junta de Supervisión acuerdan tratar la modificación del reglamento que implementa la Ley 8- 2017 con el Gobierno.<br><br>**Sección 2** En el caso de que la Administración necesite realizar reducciones de personal (despidos) para cumplir las disposiciones del Plan Fiscal aprobado, las partes acuerdan lo siguiente:<br><br>A. **Suspensión Temporal.** El inicio inmediato del plan de despidos supondrá la suspensión automática de cualquier cláusula, regla y/o disposición aplicable a empleados y/o cargos incluidos en el presente acuerdo, incluidos en leyes, contratos de negociación colectiva, acuerdos, acuerdos complementarios, políticas, guías de empleo, circulares, cartas de contrato, certificaciones, reglamentos, normas y condiciones de empleo, cartas regulatorias, planes de clasificación y/o planes de retribución que estén en conflicto con el presente Artículo.<br><br>La suspensión de las cláusulas y disposiciones dispuestas en el presente será por un período de cinco (5) años y la Administración puede reducir este período después de que la Junta de Supervisión certifique el cumplimiento de los objetivos del Plan Fiscal de la Administración y/o el Departamento.<br><br>B. **Reasignación y Traslado.** La Administración puede implementar cualquier reasignación de cargos y traslado de personal cuando así lo requieran sus intereses presupuestarios para evitar despidos. Si las reasignaciones y/o traslados son necesarias y viables a tenor con el presupuesto, la Administración reasignará/trasladará al o a los voluntarios más capacitados que de otra forma estarían sujetos a despido. Si no hay voluntarios capacitados suficientes, se |

reasignará/trasladará el empleado calificado de mayor antigüedad de forma involuntaria. Un empleado que se traslada de manera involuntaria debido a que su cargo es eliminado, puede pedir el cargo que tuvo anteriormente, si la Administración lo vuelve a crear en el plazo de dos (2) años después del traslado. El empleado debe realizar la solicitud correspondiente a la División de Recursos Humanos. La antigüedad será el criterio determinante en la medida que el cargo sea solicitado por más de un empleado trasladado. La presente disposición establecerá el orden de la reasignación, traslado y movilidad voluntaria e involuntaria, pero esto no se interpretará como una limitación al derecho de la Administración de implementar planes de movilidad a tenor con la Ley 8-2017.

**C. Despidos.**

En virtud del estado de emergencia fiscal, la escasez de recursos fiscales, la gravedad de los problemas que la Administración enfrenta y la urgencia de rectificar los problemas fiscales, se exime de medidas exhaustivas tal como la re-capacitación de empleados, el disfrute de vacaciones acumuladas, el disfrute de licencia no gozada, una reducción de carga horaria o baja de categoría, antes de implementar los despidos.

| **Disposiciones más detalladas de la propuesta** |
| --- |

b. La Administración notificará en primer lugar el despido a todos los empleados de la unidad correspondiente que a la vigencia del presente Acuerdo tengan una designación temporal o irregular, para que no sea necesario respetar, con respecto a estos empleados, el criterio de antigüedad. La notificación se realizará mediante entrega en mano o correo certificado, con acuse de recibo, al domicilio que figura en los expedientes de la Administración.

c. Los despidos de empleados con designación permanente o sin sujeción a plazo se realizarán conforme exclusivamente al criterio de antigüedad por clasificación ocupacional afectada por el despido y acorde con la necesidad de asegurar la continuidad y calidad de los servicios de la Administración, por lo que aquellos con menor antigüedad en cada clasificación ocupacional afectada serán los primeros en ser despedidos.

d. Para determinar la antigüedad de los empleados afectados, se considerarán todos los servicios proporcionados por los empleados afectados en el servicio público, independientemente de las disposiciones de los contratos de negociación colectiva, reglamentos,

| | |
|---|---|
| | circulares y otros documentos normativos.<br><br>e. La Administración notificará los despidos con al menos treinta (30) días calendario de anticipación a la vigencia, mediante comunicación por escrito dirigida al empleado y al Sindicato, que indique la vigencia de este.<br><br>f. El empleado afectado y el Sindicato pueden solicitar una revisión a la determinación final realizada por la Administración, solo en cuanto a su antigüedad y la clasificación ocupacional, dentro de un período no mayor a treinta (30) días calendario desde la recepción de la notificación de la Administración. |
| **Plan de Asistencia Sanitaria / Servicios Médicos** | **Sección 1** La Administración cubrirá el costo de la Cobertura Básica, igual a $ 170.00 por mes o tal monto mayor que la Administración pueda autorizar legalmente, lo que incluye servicios de farmacia, y todos los empleados, independientemente de su estado civil o relación tendrán derecho a esta aportación. La Administración reconocerá una única aportación patronal por empleado.<br><br>**Sección 2** Los empleados han optado sindicarse y tendrán derecho a que un representante exclusivo negocie en su nombre en cuanto a todos los asuntos respecto a los beneficios de salud y la contratación de un plan médico. El representante exclusivo designará un Comité de Evaluación de Planes Médicos para representar los diferentes sectores e intereses de los miembros. Tal comité será responsable de analizar y evaluar todos los planes médicos que existen en el mercado para seleccionar aquellos que ofrecen las primas menores y más razonables, la mejor cobertura y beneficios de servicios de salud y la mejor cobertura de medicamentos. |

| Disposiciones más detalladas de la propuesta | |
|---|---|
| | **Sección 3** El representante exclusivo convocará a los miembros a Asamblea en la que presentará los planes médicos seleccionados por el Comité para que la Asamblea, mediante voto expreso de la mayoría que constituye quórum a tales efectos, seleccione el plan médico que más se ajuste a sus necesidades. Una vez que se haya seleccionado el plan médico en una Asamblea legalmente convocada, será obligatorio para todos los miembros representado por tal representante exclusivo, salvo según dispone la Ley 95-1963 y sus modificaciones. |
| **Feriados** | **Sección 1** Los feriados incluyen las veinticuatro (24) horas, después de la medianoche, del día calendario en cuestión.<br><br>**Sección 2** La Administración reconoce que los días enumerados a continuación serán feriados pagados para empleados cubiertos por |

los contratos de negociación colectiva de AFSCME; disponiéndose, sin embargo, que la Administración tendrá el derecho de asignar trabajo a los miembros de la Unidad Correspondiente en cualquiera de estos, cuando se necesiten sus servicios. El tiempo trabajado se compensará multiplicando por una vez y media (1½) el tiempo trabajado. Los años en que haya elecciones generales, el Día de las Elecciones se considerará incluido entre los feriados enumerados a continuación.

|    | Fecha | Feriado |
|----|-------|---------|
| 1  | 1 de enero | Año Nuevo |
| 2  | 6 de enero | Día de los Reyes Magos |
| 3  | Tercer lunes de enero | Día de Martin Luther King |
| 4  | Tercer lunes de febrero | Día de los Presidentes / George Washington |
| 5  | 2 de marzo | Día de la Ciudadanía Americana |
| 6  | 22 de marzo | Día de la Abolición de la Esclavitud |
| 7  | Variable | Viernes Santo |
| 8  | Último lunes de mayo | Día de los Caídos |
| 9  | 4 de julio | Día de la Independencia |
| 10 | Primer lunes de setiembre | Día de los Trabajadores |
| 11 | 12 de octubre | Día de la Raza (Descubrimiento de América) |
| 12 | 11 de noviembre | Día del Veterano |
| 13 | 19 de noviembre | Descubrimiento de Puerto Rico |
| 14 | Cuarto jueves denoviembre | Día de Acción de Gracias |
| 15 | 25 de diciembre | Navidad |

| **Disposiciones más detalladas de la propuesta** | |
|---|---|
| | **Sección 3** La Administración reconoce que los feriados que caen en domingo se celebrarán el día siguiente y los feriados que caen en sábado se celebrarán el día hábil anterior. <br><br> **Sección 4** Las jornadas o medias jornadas que por proclama del Gobernador de Puerto Rico o el Presidente de los Estados Unidos se declaren feriados a respetar en Puerto Rico también se considerarán feriados pagados y se incluirán en la lista que precede, siempre que no se descuenten de la licencia ordinaria. |
| **Licencia por enfermedad** | **Sección 1** Todos los miembros de la Unidad Correspondiente cubiertos por los contratos de negociación colectiva de AFSCME contratados antes del 4 de febrero de 2017 tendrán derecho a generar licencia por enfermedad a razón de un día y medio (1½) por cada mes de servicio. Los miembros contratados a partir del 4 de febrero de 2017 generarán licencia a razón de un día (1) por cada mes de servicio. <br><br> **Sección 2** La licencia por enfermedad se acumulará hasta un máximo de noventa (90) días hábiles al final de cada año calendario. La acumulación comenzará una vez que el empleado haya prestado servicios durante un período de tres (3) meses y será efectiva de manera retroactiva hasta la fecha en que el empleado comenzó su servicio público. <br><br> **Sección 3** Los días de licencia por enfermedad generados no gozados no se saldarán de ninguna manera. <br><br> **Sección 4** La licencia por enfermedad se utilizará: <br><br> A. Cuando el empleado está enfermo, incapacitado física o mentalmente, o expuesto a una enfermedad contagiosa que requiere su ausencia de la oficina para proteger su saludo o la de otros. <br><br> B. Un máximo de cinco (5) días al año se pueden usar también para lo siguiente, siempre que el empleado haya generado un saldo mínimo de doce (12) días: <br><br> a.  El cuidado de sus hijos enfermos. |

1

| **Disposiciones más detalladas de la propuesta** |
|---|

b.  El control de personas enfermas mayores o discapacitadas dentro de su núcleo familiar, hasta el cuarto grado de consanguinidad, el segundo de afinidad, personas que viven dentro de la misma casa, personas de los cuales el empleado tenga custodia legal o curatela.

c   Primera comparecencia de cualquier demandante, víctima o denunciante ante el Departamento, Agencia, Sociedad o Instrumentalidad Pública del Estado Libre Asociado de Puerto Rico en asuntos relacionados con pensiones alimenticias, violencia doméstica, acoso sexual en el trabajo o discriminación por razones de género.

C. El empleado deberá presentar pruebas emitidas por la autoridad competente que reconozca tal comparecencia.

D. Para los efectos de la presente Sección, se aplicarán las siguientes definiciones:

a.  «Persona mayor»: una persona de sesenta (60) años o más.

b.  «Persona con discapacidades»: cualquier persona con una discapacidad física, mental o sensorial que limita sustancialmente una (1) o más actividades de su vida.

**Sección 5** Solo en casos de ausencias por enfermedad mayores a tres (3) días consecutivos deberá el empleado presentar un certificado médico que justifique tal ausencia. Sin perjuicio de esto, el empleado o cualquiera de sus familiares debe notificar a su supervisor inmediato de su ausencia. Esto aplicará o se interpretará de manera coherente con la Ley sobre Estadounidenses con Discapacidades, mejor conocida como ADA (por sus siglas en inglés), la Ley de Licencia Familiar y Médica de 1993 o cualquier otra ley aplicable.

**Sección 6** En el caso en que un empleado agote su licencia por enfermedad y continúe enfermo, podrá usar la licencia que haya generado, a tenor con las disposiciones del presente Contrato Colectivo.

**Sección 7** La contabilización de licencia por enfermedad se realizará en base al trabajo diario del día laboral asignado al empleado, entendiéndose que no se contabilizarán días libres en los casos en que el empleado trabaja turnos rotativos o en feriados.

1

| **Disposiciones más detalladas de la propuesta** |
|---|

**Sección 8** Cuando un miembro de la Unidad Correspondiente cubierto por los contratos de negociación colectiva de AFSCME esté en uso de su licencia por enfermedad, tendrá derecho a generar licencia por enfermedad y regular durante el tiempo en que goce de su licencia por enfermedad, siempre que se reintegre a sus funciones al culminar tal goce.

**Sección 9** La Administración podrá adelantar licencia por enfermedad hasta un máximo de dieciocho (18) días hábiles a cualquier miembro de la Unidad Correspondiente cubierto por estos contratos de negociación colectiva que la soliciten al presentar justificación apropiada. Estos deben haber trabajado para la Administración por un (1) año o más. La licencia adelantada solo podrá otorgarse una vez que se hayan agotado las licencias por enfermedad y regular generadas.

**Sección 10**

**Licencia para padres con niños con discapacidades mentales y/o físicas.** A fin de protegerse como agencia ejemplar en el trato de personas con discapacidades, la Administración autorizará como licencia oficial un (1) día por mes a padres de niños con discapacidades para que puedan llevar a sus hijos a citas médicas y tratamientos. Los padres deberán notificar la fecha de la cita o tratamiento tan pronto como la sepan y a su vez deberán proporcionar un certificado del proveedor de servicios de salud y/o terapéuticos del menor que oficialmente lo clasifique como una persona con discapacidades.

También deberán presentar un certificado médico que pruebe que el empleado acompañó a su hijo a la cita o tratamiento médico. En el caso en que ambos padres o tutores sean miembros de la Unidad Correspondiente, la licencia será compartida por ambos en la forma que prefieran.

B. **Licencia para Personas Mayores.** Del mismo modo, la Administración autorizará que este mismo día se puede usar para citas médicas y tratamientos para Personas Mayores. La persona a cargo deberá notificar la fecha de la cita o tratamiento tan pronto como la sepa. El empleado a su vez deberá proporcionar un certificado de nacimiento de la persona mayor que demuestre que tiene sesenta (60) años o más. Deben cumplir las disposiciones de la Sección 11.

1

| Disposiciones más detalladas de la propuesta | |
|---|---|
| | **Sección 11** La Administración autorizará al padre o madre del niño a quedarse con ellos cuando se encuentren hospitalizados. El padre o madre debe presentar pruebas de las hospitalización y la duración de la hospitalización. La Administración autorizará que los días que el empleado se tome para cuidar de su hijo enfermo se descuenten de su licencia por enfermedad. Un empleado que solicite licencia deberá haber generado un saldo de licencia por enfermedad de quince (15) o más días. |
| **Licencia vacacional** | **Sección 1** Todos los miembros de la Unidad Correspondiente cubiertos por los contratos de negociación colectiva de AFSCME tendrán derecho a generar licencia vacacional a razón de un día y un cuarto (1¼) por cada mes de servicio. Los empleados con horas de trabajo regulares reducidas o a medio tiempo acumularán licencia vacacional de manera proporcional a la cantidad de horas que generalmente proporcionan servicios. La acumulación comenzará una vez que el empleado haya prestado servicios durante un período de tres (3) meses y será efectiva de manera retroactiva hasta la fecha en que el empleado comenzó su servicio público.

**Sección 2** La licencia vacacional se acumulará hasta un máximo de sesenta (60) días hábiles al final de cada año calendario.

**Sección 3** Todos los empleados tendrán derecho a disfrutar de su licencia vacacional generada durante un período de quince (15) días hábiles durante cada año calendario, de los cuales no menos de diez (10) días serán consecutivos. Por acuerdo entre el Director y/o Supervisor y el empleado, se le pueden otorgar períodos menores a diez
(10) días hábiles de vacaciones, pero nunca menores a cinco (5) días.

Los empleados que, debido a necesitarse sus servicios y a solicitud de la Administración, no puedan gozar de su licencia vacacional durante un año calendario en particular, estarán exentos de la presente disposición. En este caso, el Departamento |

1

| | |
|---|---|
| **Disposiciones más detalladas de la propuesta** | |

deberá realizar los ajuste necesarios para que el empleado pueda gozar al menos licencia generada que exceda el límite de sesenta (60) días en la fecha más pronta posible dentro de los tres (3) primeros meses del siguiente año calendario.

**Sección 4** El goce de la licencia vacacional regular no se interrumpirá ni reprogramará para ningún miembro de la Unidad Correspondiente cubierto por estos contratos de negociación colectiva. Las únicas excepciones son emergencias claras e inevitables con respecto a la necesidad de servicios. La Administración deberá reponer el tiempo usado por el empleado.

**Sección 5** La Administración formulará un Plan Vacacional cada año calendario, a tenor con las necesidades de servicio y coordinado con los empleados de la Unidad Correspondiente cubiertos por este contrato colectivo y sus supervisores correspondientes, que establezca el o los períodos en los que cada empleado gozará de sus vacaciones. El Plan deberá establecerse al 31 de diciembre de cada año para que entre en vigor el primero (1) de enero de cada año. Ambas partes acuerdan dar cumplimiento al Plan. Mediante acuerdo entre el Director y/o Supervisor y el empleado, este podrá disfrutar de un máximo de dos (2) períodos vacacionales por año calendario.

**Sección 6** La Administración formulará y administrará el Plan Vacacional unificando las observaciones, recomendaciones y preferencias de los empleados con las necesidades de servicio para que estos no pierdan su licencia vacacional al final del año calendario y gocen de su licencia vacacional regular anualmente sin que afecte el servicio.

Si existe un conflicto entre dos (2) o más empleados en cuanto a la fecha en la que tomar sus vacaciones, el Director y/o Supervisor determinará, a tenor con la necesidad de servicio, qué empleado tomará su licencia primero. En caso en que el conflicto es que ambos eligieron la misma fecha y no pueden tomar licencia al mismo tiempo, el empleado con mayor antigüedad será quien tome su licencia primero y posteriormente se alternará.

| **Disposiciones más detalladas de la propuesta** |
|---|

|  | **Sección 7** La Administración informará el saldo de licencia vacacional generada a todos los miembros de la Unidad Correspondiente cubierta por estos contratos de negociación colectiva un total de tres (3) veces al año. En caso de cualquier error de cálculo, la información podrá corregirse por iniciativa de cualquiera de las Partes. Cualquier solicitud de revisión por parte del empleado deberá realizarse por escrito dentro de los quince (15) días hábiles anteriores ante el Director de la División de Recursos Humanos de la Administración. El Director tendrá quince (15) días hábiles para responder a la solicitud. Si el empleado no queda satisfecho, puede usar el Procedimiento de Recursos y Reclamaciones establecido en este Contrato Colectivo.

**Sección 8** La Administración evaluará, si se lo solicita el empleado, el otorgamiento de licencia regular mayor a quince (15) días por año calendario y hasta un máximo de cincuenta (50) días en cualquier año calendario a aquellos empleados que hayan acumulado licencia. El empleado deberá mantener un mínimo de cinco (5) días de licencia vacacional regular. Al otorgar tal licencia, la Administración considerará las necesidades del servicio y cualquier otro factor establecido por la ley aplicable.

**Sección 9** Cuando un miembro de la Unidad Correspondiente cubierto por los contratos de negociación colectiva esté en uso de su licencia regular, tendrá derecho a generar licencia por enfermedad y regular durante el tiempo en que goce de su licencia regular, siempre que se reintegre a sus funciones al culminar tal goce.

**Sección 10** Debido a circunstancias especiales, la Administración puede adelantar licencia regular a cualquier miembro de la Unidad Correspondiente cubierta por los contratos de negociación colectiva que lo solicite y haya trabajado para la Administración por más de un (1) año, hasta un máximo de quince (15) días hábiles, siempre que el empleado vuelva al servicio. La Administración evaluará tal solicitud a tenor con las necesidades de servicio.

**Sección 11** Cualquier empleado al que se le haya otorgado licencia vacacional adelantada y se aparte del servicio, de manera voluntaria o involuntaria, antes de prestar los servicios durante el período necesario para generar la cantidad total de licencia adelantada no generada otorgada, tendrá que reembolsar al Gobierno de Puerto Rico cualquier monto que se le haya pagado por tal licencia adelantada.

**Sección 12** A elección del miembro de la Unidad Correspondiente cubierta por contratos de negociación colectiva, el pago de vacaciones programadas regulares será efectivo antes de comenzar su goce. |

Dichas solicitudes deben realizarse cuarenta y cinco (45) días corridos antes de la fecha de comienzo de las vacaciones.

**Sección 13** En aquellos casos en los cuales el Gobernador de Puerto Rico emita una proclama u orden administrativa que otorgue licencia oficial sin descontar vacaciones, esta será aplicable a todos los miembros de la Unidad Correspondiente cubierta por contratos de negociación colectiva que estén haciendo uso de licencia regular. Cuando el empleado esté gozando de su licencia vacacional regular, el período de sus vacaciones se extenderá según la licencia oficial otorgada.

**Sección 14** Cualquier miembro de la Unidad Correspondiente cubierta por contratos de negociación colectiva que se enferme durante su licencia regular puede solicitar que el período de enfermedad se descuente de su licencia por enfermedad generada. El empleado debe certificar su enfermedad al tiempo de realizar la solicitud.

**Sección 15** Los miembros de la Unidad Correspondiente cubierta por contratos de negociación colectiva tendrán derecho a autorizar a la Administración a que ceda cinco
(5) días por mes de su licencia vacacional acumulada a favor de otros empleados de la agencia. Será de acuerdo con las disposiciones establecidas por la Ley núm. 44 del 22 de mayo de 1996 y sus modificaciones, conocida como «Ley de Cesión de Licencia por Vacaciones».

| Disposiciones más detalladas de la propuesta | |
|---|---|
| **Terminología adicional para Licencia por Enfermedad, Vacaciones y Feriados** | **Sección 1** Para evitar dudas, en la medida en que existan incongruencias entre el presente Acuerdo y las disposiciones de la Ley 26-2017 en cuanto a Feriados, Licencia por enfermedad, Licencia vacacional y otras Licencias, las disposiciones de la Ley 26 según se aprobaron en 2017 serán aplicables a la duración del presente Acuerdo. Las modificaciones a la Ley 26-2017 para mejorar beneficios en cuanto a Feriados, Licencia por enfermedad, Licencia vacacional y otras Licencias se incorporarán al presente Acuerdo si el Gobierno las adopta legalmente. |
| **Bonificaciones** | **Sección 1** En la medida en que las bonificaciones no se proporcionen de otro modo en contratos de negociación colectiva se proporcionen legalmente para empleados del ELA en situación similar, se proporcionarán los términos económicos que sean más beneficios a los empleados de la unidad de negociaciones de AFSCME/SPU. |
| **Representación Institucional** | **Sección 1** La Administración dispondrá la designación de una junta de representación de la fuerza laboral Sindicato que consiste en cuatro (4) miembros que sean personas físicas, designadas por el Sindicato para que representen a la fuerza laboral.

**Sección 2** Los miembros pueden designarse durante plazos de doce (12) meses y el Sindicato puede volver a designarlos.

**Sección 3** Los miembros se reunirán con los representantes de la Junta de Supervisión anualmente para discutir y compartir perspectivas sobre el plan fiscal y el presupuesto del ELA.

**Sección 4** Las reuniones anuales con representantes de la Junta de Supervisión se dispondrán a los miembros al permitir que los miembros asistan otorgándoles medio día de licencia remunerada, además de su licencia vacacional normal. |

| | |
|---|---|
| **Totalidad del Acuerdo** | **Sección 1** Las disposiciones del presente pliego de términos, junto con los contratos de negociación colectiva más recientes, constituirán los contratos de negociación colectiva a la vigencia del Plan del ELA; disponiéndose, sin embargo, que regirán las disposiciones del presente pliego de términos si existe algún conflicto con los contratos de negociación colectiva más recientes. Durante la duración del Acuerdo, no se realizarán cambios al salario base, otras compensaciones, licencias, feriados o beneficios sin conformidad expresa del Sindicato. Además, no se implementará ningún otro cambio incongruente con los términos del pliego de términos sin conformidad expresa del Sindicato. Nada de lo comprendido en el presente Acuerdo se interpretará de tal forma que impida que los empleados representados por el Sindicato reciban cualquier beneficio que se otorga legalmente por el Gobernador o la Administración a otros empleados del Gobierno. |
| **Deducción de Cuotas, Cargos** | **Sección 1** Durante el término de estos acuerdos y durante cualquier extensión de estos, el Departamento deducirá del salario de cada empleado de la unidad de negociación que autorice una deducción a la nómina de pagos o cuotas sindicales de la forma |

| **Disposiciones más detalladas de la propuesta** |
| --- |
| prevista por el sindicato las cuotas regulares que el Sindicato certifique a tenor con sus reglamentos y las disposiciones aplicables de la Ley 45 y sus modificaciones. El Sindicato informará el monto de las cuotas al Departamento. A tales fines, el Departamento notificará al Departamento del Tesoro de los cargos de cuotas a deducir de empleados incluidos en la Unidad Correspondiente dentro de treinta (30) días hábiles a partir de la fecha en que el Sindicato informa al Departamento el monto a deducir.<br><br>**Sección 2** El Departamento enviará mensualmente una copia al Sindicato de la lista proporcionada por el Departamento del Tesoro, con los nombres de cada empleado incluido en la Unidad Correspondiente con el número de Seguro Social y el monto deducido por los cargos de cuotas.<br><br>**Sección 3** El Departamento informará a los nuevos empleados del derecho conferido por la Ley núm. 45 y sus modificaciones al momento en que el empleado se asigne a un cargo incluido en la Unidad Correspondiente y le proporcionará al sindicato la oportunidad de conocer a los nuevos empleados o, a elección del sindicato, con un documento de bienvenida preparado por el Sindicato que explica los derechos de los miembros del sindicato según la Ley 45 del 25 de febrero de 1998 y sus modificaciones. La Administración no disuadirá a los empleados de unirse al sindicato.<br><br>**Sección 4** El Departamento tendrá quince (15) días hábiles para informar al Sindicato por escrito el nombre, número de Seguro Social, cargo, fecha de contratación y sueldo de los nuevos empleados que vienen a ocupar cargos incluidos en la Unidad Correspondiente.<br><br>**Sección 5** La autorización a deducir cuotas de membresía está en vigor y es irrevocable a tenor con los términos establecidos en la autorización del empleado, pero se debe permitir a los empleados que rescindan su autorización antes de la renovación al menos anualmente.<br><br>**Sección 6** En el caso de que el Sindicato deje de ser el representante exclusivo de la Unidad Correspondiente, las deducciones retenidas de empleados por cuotas se detendrán de inmediato en la fecha en que el Sindicato ya no sea el representante exclusivo.<br><br>**Sección 7** El Departamento resumirá la deducción de cuotas para los empleados cuyos cargos están incluidos en la Unidad Correspondiente una vez que regresen de su licencia sin goce de sueldo y notificará a la Oficina de Recursos Humanos para que pueda realizar el cambio en la nómina e incluya tal deducción en un período no mayor a treinta |

(30) días hábiles desde la fecha de regreso del empleado.

**Sección 8** En el caso en que el Sindicato solicite la deducción de cuotas y se determine que las cuotas se establecen y/o deducen ilegalmente, el Sindicato eximirá al Departamento de cualquier responsabilidad y realizará los reembolsos que correspondan tan pronto como sea necesario. Si se determina que el error es atribuible al Departamento, el Sindicato solo reembolsará lo que se dedujo de forma errónea y no será responsable por los gastos y tasas incurridos.

## APÉNDICE I

## TÉRMINOS PROPUESTOS PARA LOS BENEFICIOS DEL SISTEMA DEL SRE

Lo que figura a continuación es un resumen de términos indicativos para el Sistema de Retiro de los Empleados (SRE) del Gobierno de Puerto Rico para:

1.    miembros del Sistema 2000;

2.    participantes que participaron exclusivamente del beneficio de la Ley 3, pero no de los niveles de beneficios de la Ley 1 o la Ley 447; y

3.    participantes de la Ley 3 que participaron en los niveles de beneficios de la Ley 1 o la Ley 447.

Estos términos no abordan los beneficios obtenidos según la Ley 1 o la Ley 447.

| Definiciones | |
|---|---|
| Sistema de Pensiones | El Sistema de Retiro de los Empleados (SRE) del Gobierno de Puerto Rico. |
| Miembros del Sistema 2000 | En general, aquellos miembros contratados el 1 de enero del 2000 o después de esta fecha y el 30 de junio de 2013 o antes de esta fecha. Además, a los efectos del presente Acuerdo, los empleados contratados el 1 de julio de 2013 o después de esta fecha y el 30 de junio de 2017 o antes de esta fecha se tratarán de la misma manera que los miembros del Sistema 2000. |
| Tipo de Plan | Los planes del Sistema 2000 y la Ley 3 son planes de beneficios definidos, híbridos y contributorios. |
| Vigencia del Plan | El Sistema de Pensiones fue establecido en 1951 por la Ley 447 para que entrara en vigor el 1 de enero de 1952. El Plan se modificó por última vez en virtud de la Ley 3, aprobada el 4 de abril de 2013. |
| Elegibilidad para Membresía | Los miembros del SRE y sus Instrumentalidades incluyen todos los empleados temporales no municipales y regulares a tiempo completo que no realizan aportaciones a otros Sistemas de Retiro (Artículos 1-104 y 1-105). |
| Aportaciones | Las Aportaciones a los beneficios del Sistema 2000 y la Ley 3 se realizan exclusivamente a partir de deducciones de la nómina de empleados obligatorias de 8.275 por ciento hasta 2013 y 10 por ciento del pago después de esta fecha (comenzando con la adopción de la Ley 3-2013). |

| Tiempo | |
|---|---|
| **Fecha de entrada en vigor** | Vigencia del Plan del ELA. |
| **Implementación** | Aplicable a los beneficios generados en virtud del Plan el 30 de junio de 2017 o antes de esta fecha. |

| Disposiciones de la propuesta | |
|---|---|
| **Dividir efectivo por adelantado** | Dividir todas las aportaciones del Sistema 2000 del 2000 al 2013 (sin reducción), todas las aportaciones de la Ley 3-2013 de participantes del Sistema 2000 y todas las aportaciones de participantes de la Ley 3 (que no participaron en la Ley 1 ni la Ley 447) hasta 2017 (sin reducción), con interés hasta la Fecha de Petición del ELA. Llevar los saldos a las cuentas de Aportación Definida actualmente establecidas en virtud de la Ley 106-2017 e invertidas por defecto en un fondo de ciclo de vida con fecha prevista. A partir de la Vigencia, los participantes con aportaciones del Sistema 2000 desde el 2000 al 2013 y aportaciones de la Ley 3- 2013 hasta el 2017 que no reúnan las condiciones para recibir beneficios en virtud de la Ley 1 y la Ley 447 ya no tendrán derecho a beneficios futuros administrados por el sistema, tal como las disposiciones por muerte o discapacidad, etc.<br><br>Los participantes que no participaron en el plan de pensiones de la Ley 1 ni de la Ley 447 que ya se hayan retirado y convertido sus aportaciones a una anualidad pagada por el sistema no tienen derecho al tratamiento descrito en la presente sección. No recibirán un pago en efectivo y estarán sujetos a la Modificación de Beneficios Mensuales aplicable a otros pensionados. |
| **Exención de la Fórmula de Reducción** | El pago hasta el valor de las aportaciones acumuladas total, con interés hasta la Fecha de Petición del ELA, no inclusive, para las aportaciones de la Ley 1 y la Ley 447 realizadas en la Ley 3 después del 1 de julio de 2013 anualizados al retirarse de acuerdo con la ley aplicable y no está sujeto a tenor con el Plan. Los beneficios de la Ley 1 y la Ley 447 acumulados antes del 1 de julio de 2013 continúan sujetos a la Modificación de Beneficios Mensuales. |

| **Disposiciones más detalladas de la Propuesta al 2 de julio de 2015** | | | | |
|---|---|---|---|---|
| | **Sistema 2000** | | | |
| | **Miembros activos** | **Miembros retirados** | **Miembros discapacitados** | **Beneficiarios en pago** |
| Conteo | 65,605 | 273 | 72 | 81 |
| Edad promedio | 42.7 | 67.8 | 54.2 | 62.5 |
| Salario Promedio | $ 24,891 | | | |
| Servicio acreditable promedio | 9.5 | | | |
| Beneficio del sistema básico mensual promedio | | $ 758 | $ 853 | $ 997 |
| Beneficio administrado por el sistema mensual promedio | | $ 16 | $ 9 | $ 8 |

## APÉNDICE II

## TÉRMINOS PROPUESTOS PARA ACUERDO DE USO COMPARTIDO DEL EXCEDENTE DEL PLAN FISCAL AL ALZA

A continuación, figura un resumen de los términos indicativos propuestos para el Acuerdo de Uso Compartido del Excedente del Plan Fiscal al Alza de AFSCME.

| Definiciones | |
|---|---|
| Acuerdo de Uso Compartido del Excedente del Plan Fiscal | Acuerdo con Sindicatos y miembros participantes del Sindicato para cada año fiscal del presente Acuerdo para proporcionar participación del Sindicato en el uso compartido de cualquier excedente que supere el Plan Fiscal Certificado en vigor a la vigencia para el Plan de Ajuste del ELA. |
| Sindicatos | AFSCME |
| Miembros Participantes del Sindicato | Todos los miembros de sindicatos y empleados en unidades de negociación representadas por sindicatos registrados al comienzo del año fiscal con trabajo continuo y estado activo al momento del pago. |
| Agente Independiente | Una empresa de Contabilidad Pública Certificada con licencia para proporcionar servicios de contabilidad. |
| Base en Efectivo | El cálculo del excedente del Plan Fiscal utilizará las rentas y gastos registrados como recibidas o pagas. |
| Fórmula de Excedente en Caja | Si el Excedente en Caja es menor que cien millones de dólares ($ 100,000,000.00), no se distribuirá monto alguno. Si el Excedente en Caja es igual o mayor que cien millones de dólares ($ 100,000,000.00), se asignará veinticinco (25 %) de tal Excedente en Caja al fondo de Bonificación de Participación al Alza. |

| Tiempo | |
|---|---|
| Implementación | A alinearse con la implementación de cambios propuestos a los contratos de negociación colectiva, así como también el acuerdo global con AFSCME, actualmente orientado a la Vigencia. |
| Medición Anual | El exceso del Plan Fiscal a calcular en base en Efectivo no posterior al 30 de setiembre de cada año fiscal por parte de un Agente Independiente. |
| Período de Pago | **Bonificación por firma:** pagadero a los participantes representados por el Sindicato a la Vigencia del Plan de Ajuste. |

| Tiempo | |
|---|---|
| | **Para las Bonificaciones de Participación al Alza:** pagadero al 1 de diciembre a los participantes representados por el Sindicato en base a los cálculos del período anterior y completado a la fecha de Medición Anual.

**Para la Tasa de Apoyo:** pagadero al Sindicato a la Vigencia del Plan de Ajuste del ELA.

**Para la Tasa Adicional:** pagadero al Sindicato a la Vigencia del Plan de Ajuste del ELA. |

| Disposiciones de la propuesta | |
|---|---|
| **Bonificación por firma (ver Resume de bonificaciones)** | A la Vigencia, una única bonificación por firma de quinientos ($ 500.00) dólares a cada uno de los participantes representados por el Sindicato. |
| **Bonificación de Participación al Alza** | Para el término del contrato de negociación colectiva, si se alcanza o excede la fórmula de Excedente en Caja, se realizará una distribución a todos los participantes representados por el Sindicato y todo otro empleado del ELA elegible designado por la Junta de Supervisión cada año del fondo de Bonificación de Participación al Alza. Todos los beneficiarios de esta Bonificación de Participación al Alza tendrán la opción de asignar cualquier parte de su Bonificación de Participación al Alza a su cuenta de Aportación Definida y cualquier remanente se distribuirá en efectivo. |
| **Tasa de Apoyo** | Un pago único de cinco millones de dólares ($ 5,000,000.00) al Sindicato, como compensación por sus esfuerzos como negociador principal y firmante del presente Acuerdo. |
| **Tasa Adicional** | Un pago único de cinco millones de dólares ($ 5,000,000.00) al Sindicato, a desembolsar como bonificación en efectivo a sus participantes representados. Por consiguiente, las bonificaciones que los participantes representados por el Sindicato reciben a tenor con el presente Acuerdo son una bonificación única de $ 1000 (aproximadamente) y una Bonificación de Participación al Alza. Además, en la medida en que los empleados del ELA en situación similar reciban una bonificación, tal como un Bono de Navidad, se proporcionarán los términos económicos que sean más beneficios a los empleados de la unidad de negociaciones de AFSCME/SPU. |

| | |
|---|---|
| **Pago de Arbitraje pre-Solicitud y Reclamaciones de Recursos** | Cualquier distribución en virtud y a tenor con el Plan a causa de reclamaciones por montos de daños y perjuicios liquidados que resultan de la disposición de acciones previas a la solicitud presentadas a tenor con los procedimientos de arbitraje y recursos que surjan de los contratos de negociación colectiva entre el ELA y la o las filiales de AFSCME en Puerto Rico serán presentadas por el ELA al demandante en cada caso en la fecha posterior de (i) 30 días después de tal disposición o (ii) 60 días después de la Vigencia del Plan. |

## **ANEXO H**

LISTADO DE RECLAMACIONES DE CENTROS MÉDICOS

| Números de reclamación | Instalación | Grupo | Columna «A» | Columna «B» |
|---|---|---|---|---|
| 27630, 30530, 166265 | Centro De Salud Familiar Dr. Julio Palmieri Ferri Reclamaciones: 166265 Instalaciones: Arroyo | AMC Group | $12,639,331.92 | $11,871,346.29 |
| 158091 | Atlantic Medical Center, Inc. Reclamaciones: 158091 Instalaciones: Barceloneta | AMC Group | $11,518,922.99 | $3,030,376.45 |
| 167114 | Camuy Health Services, Inc. Reclamaciones: 167114 Instalaciones: Camuy | AMC Group | $31,349,345.60 | $13,470,273.43 |
| 146462 | Hospital General Castaner, Inc. Reclamaciones: 146462 Instalaciones: Castaner | AMC Group | $5,489,636.26 | $1,506,047.44 |
| 137070 | Ciales Primary Health Care Services, Inc. Reclamaciones: 137070 Instalaciones: Ciales | AMC Group | $6,155,787.47 | $3,036,743.77 |
| 167361 | Corporación De Servicios Médicos De Hatillo Reclamaciones: 167361 Instalaciones: Hatillo | AMC Group | $11,948,076.45 | $4,507,785.17 |
| 166254 | Centro De Salud De Lares, Inc. Reclamaciones: 166254 Instalaciones: Lares | AMC Group | $28,276,675.12 | $10,296,151.19 |
| 158138 | Centro De Servicios Primarios De Salud De Patillas Reclamaciones: 158138 Instalaciones: Patillas | AMC Group | $19,497,267.19 | $19,596,454.39 |
| 157161 | Costa Salud Community Health Center Reclamaciones: 157161 Instalaciones: Rincon | AMC Group | $12,310,505.80 | $5,931,865.47 |
| 93971 | Rio Grande Community Health Center Reclamaciones: 93971 Instalaciones: Rio Grande (1) | AMC Group | $9,949,732.57 | $1,735,779.32 |
| 114996, 176157 | Migrant Health Center, Inc. Reclamaciones: 114996,176157 Instalaciones: Migrant | Migrant Group | $17,691,291.17 | $9,772,993.70 |
| 98437, 108527 | HPM Foundation Inc. Reclamaciones: 98437,108527 Instalaciones: Belaval | Morovis Group | $4,918,873.90 | $(2,405,967.79) |
| 34436, 122862 | Corporación De Servicios De Salud Y Medicina Avanzada Reclamaciones: 34436,122862 Instalaciones: Cossma | Morovis Group | $25,655,184.64 | $5,737,364.38 |
| 20254, 20301, 20392, 52387, 111373 | NeoMed Center, Inc Reclamaciones: 20254, 20301, 20392, 52387, 111373 Instalaciones: Gurabo | Morovis Group | $29,258,557.90 | $36,253,807.51 |

| | | | | |
|---|---|---|---|---|
| 101569, 108464, 139655 | Salud Integral De La Montana Inc. Reclamaciones: 101569,108464,139655 Instalaciones: La Montana | Morovis Group | $33,906,988.74 | $2,525,918.30 |
| 20756, 20794, 39401, 130107 | Concilio De Salud Integral De Loiza, Inc Reclamaciones: 20756, 20794, 39401, 130107 Instalaciones: Loiza | Morovis Group | $27,119,329.96 | $16,658,798.02 |
| 34431, 110999 | Morovis Community Health Center Reclamaciones: 34431,110999 Instalaciones: Morovis | Morovis Group | $5,898,265.08 | $2,456,721.37 |
| | | Total | $293,583,772.78 | $145,982,458.41 |

(1) Rio Grande Community Health Center proporcionó datos actuales para el período de 1997 – 2000 que sostienen las responsabilidades de aproximadamente $ 7.6 m. Sostienen responsabilidades adicionales relacionadas al 2001 que no proporcionan datos suficientes para determinar promedios. A&M no puede validar y sostienen los montos y recomendar discusiones adicionales con el FQHC relacionado con este período.

## <u>ANEXO I</u>

PROGRAMA DE FLUJOS DE ACTIVOS DE NUEVOS BONOS DE OG

Amortización de la deuda por Bonos de interés actual exentos de impuestos e imponibles

| Año Fiscal (7/1) | Flujos de activos de la amortización de la deuda anual exento de impuestos | | | Flujos de activos de la amortización de la deuda anual imponible | | | Flujos de activos de la amortización de la deuda anual acumulado | | |
|---|---|---|---|---|---|---|---|---|---|
| | Monto | Intereses | Total Amortización de la deuda | Monto | Intereses | Total Amortización de la deuda | Monto | Intereses | Total Amortización de la deuda |
| Total | $5,861,055,000 | $2,465,605,650 | $8,326,660,650 | $822,260,000 | $698,096,750 | $1,520,356,750 | $6,683,315,000 | $3,163,702,400 | $9,847,017,400 |
| 2022 | $372,660,000 | $270,505,300 | $643,165,300 | | $41,113,000 | $41,113,000 | $372,660,000 | $311,618,300 | $684,278,300 |
| 2023 | 372,390,000 | 251,872,300 | 624,262,300 | | 41,113,000 | 41,113,000 | 372,390,000 | 292,985,300 | 665,375,300 |
| 2024 | 371,350,000 | 233,252,800 | 604,602,800 | | 41,113,000 | 41,113,000 | 371,350,000 | 274,365,800 | 645,715,800 |
| 2025 | 369,470,000 | 214,685,300 | 584,155,300 | | 41,113,000 | 41,113,000 | 369,470,000 | 255,798,300 | 625,268,300 |
| 2026 | 366,675,000 | 196,211,800 | 562,886,800 | | 41,113,000 | 41,113,000 | 366,675,000 | 237,324,800 | 603,999,800 |
| 2027 | 362,890,000 | 177,878,050 | 540,768,050 | | 41,113,000 | 41,113,000 | 362,890,000 | 218,991,050 | 581,881,050 |
| 2028 | 358,030,000 | 159,733,550 | 517,763,550 | | 41,113,000 | 41,113,000 | 358,030,000 | 200,846,550 | 558,876,550 |
| 2029 | 352,010,000 | 141,832,050 | 493,842,050 | | 41,113,000 | 41,113,000 | 352,010,000 | 182,945,050 | 534,955,050 |
| 2030 | 344,740,000 | 124,231,550 | 468,971,550 | | 41,113,000 | 41,113,000 | 344,740,000 | 165,344,550 | 510,084,550 |
| 2031 | 336,095,000 | 106,994,550 | 443,089,550 | | 41,113,000 | 41,113,000 | 336,095,000 | 148,107,550 | 484,202,550 |
| 2032 | 325,990,000 | 90,189,800 | 416,179,800 | | 41,113,000 | 41,113,000 | 325,990,000 | 131,302,800 | 457,292,800 |
| 2033 | 311,050,000 | 77,150,200 | 388,200,200 | | 41,113,000 | 41,113,000 | 311,050,000 | 118,263,200 | 429,313,200 |
| 2034 | 294,385,000 | 64,708,200 | 359,093,200 | | 41,113,000 | 41,113,000 | 294,385,000 | 105,821,200 | 400,206,200 |
| 2035 | 154,195,000 | 52,932,800 | 207,127,800 | $121,695,000 | 41,113,000 | 162,808,000 | 275,890,000 | 94,045,800 | 369,935,800 |
| 2036 | 137,290,000 | 46,765,000 | 184,055,000 | 118,735,000 | 35,028,250 | 153,763,250 | 256,025,000 | 81,793,250 | 337,818,250 |
| 2037 | 118,370,000 | 41,273,400 | 159,643,400 | 115,625,000 | 29,091,500 | 144,716,500 | 233,995,000 | 70,364,900 | 304,359,900 |
| 2038 | 97,300,000 | 36,538,600 | 133,838,600 | 112,360,000 | 23,310,250 | 135,670,250 | 209,660,000 | 59,848,850 | 269,508,850 |
| 2039 | 64,880,000 | 32,646,600 | 97,526,600 | 117,980,000 | 17,692,250 | 135,672,250 | 182,860,000 | 50,338,850 | 233,198,850 |
| 2040 | 29,640,000 | 30,051,400 | 59,691,400 | 123,880,000 | 11,793,250 | 135,673,250 | 153,520,000 | 41,844,650 | 195,364,650 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | 0 | |
| 2041 | 12,780,000 | 28,865,800 | 41,645,800 | 111,985,000 | 5,599,250 | 117,584,250 | 124,765,000 | 34,465,050 | 159,230,050 |
| 2042 | 130,875,000 | 28,354,600 | 159,229,600 | | | | 130,875,000 | 28,354,600 | 159,229,600 |
| 2043 | 136,110,000 | 23,119,600 | 159,229,600 | | | | 136,110,000 | 23,119,600 | 159,229,600 |
| 2044 | 141,555,000 | 17,675,200 | 159,230,200 | | | | 141,555,000 | 17,675,200 | 159,230,200 |
| 2045 | 147,220,000 | 12,013,000 | 159,233,000 | | | | 147,220,000 | 12,013,000 | 159,233,000 |
| 2046 | 153,105,000 | 6,124,200 | 159,229,200 | | | | 153,105,000 | 6,124,200 | 159,229,200 |

* Fecha de Emisión Estimada 1/7/21.

3

Detalle de los Bonos de Interés Actual Imponibles

| | | Resumen Detallado de los Bonos con Plazo Exentos | | | | | | Flujos de Activos del Amortización de la Deuda Actual Exentos | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Año Fiscal (1/7) | Vencimiento | Vencimiento del Plazo | Amortización del Fondo de Amortización Obligatoria | Capital del Plazo | Cupón | 1º Fecha de Reden- ción** | Año Fiscal (1/7) | Capital | Interés | Amortización de la Deuda Total |
| Total | | | $5,861,055,000 | $5,861,055,000 | | | | $5,861,055,000 | $2,465,605,650 | $8,326,660,650 |
| 2022 | 7/1/22 | 2023 | $372,660,000 | | 5.000% | | 2022 | $372,660,000 | $270,505,300 | $643,165,300 |
| 2023 | 7/1/23 | 2023 | 372,390,000 | $745,050,000 | 5.000% | | 2023 | 372,390,000 | 251,872,300 | 624,262,300 |
| 2024 | 7/1/24 | 2025 | 371,350,000 | | 5.000% | | 2024 | 371,350,000 | 233,252,800 | 604,602,800 |
| 2025 | 7/1/25 | 2025 | 369,470,000 | $740,820,000 | 5.000% | | 2025 | 369,470,000 | 214,685,300 | 584,155,300 |
| 2026 | 7/1/26 | 2027 | 366,675,000 | | 5.000% | | 2026 | 366,675,000 | 196,211,800 | 562,886,800 |
| 2027 | 7/1/27 | 2027 | 362,890,000 | $729,565,000 | 5.000% | | 2027 | 362,890,000 | 177,878,050 | 540,768,050 |
| 2028 | 7/1/28 | 2029 | 358,030,000 | | 5.000% | | 2028 | 358,030,000 | 159,733,550 | 517,763,550 |
| 2029 | 7/1/29 | 2029 | 352,010,000 | $710,040,000 | 5.000% | | 2029 | 352,010,000 | 141,832,050 | 493,842,050 |
| 2030 | 7/1/30 | 2031 | 344,740,000 | | 5.000% | | 2030 | 344,740,000 | 124,231,550 | 468,971,550 |
| 2031 | 7/1/31 | 2031 | 336,095,000 | $680,835,000 | 5.000% | | 2031 | 336,095,000 | 106,994,550 | 443,089,550 |
| 2032 | 7/1/32 | 2033 | 325,990,000 | | 4.000% | 7/1/31 | 2032 | 325,990,000 | 90,189,800 | 416,179,800 |
| 2033 | 7/1/33 | 2033 | 311,050,000 | $637,040,000 | 4.000% | 7/1/31 | 2033 | 311,050,000 | 77,150,200 | 388,200,200 |
| 2034 | 7/1/34 | 2035 | 294,385,000 | | 4.000% | 7/1/31 | 2034 | 294,385,000 | 64,708,200 | 359,093,200 |
| 2035 | 7/1/35 | 2035 | 154,195,000 | $448,580,000 | 4.000% | 7/1/31 | 2035 | 154,195,000 | 52,932,800 | 207,127,800 |
| 2036 | 7/1/36 | 2037 | 137,290,000 | | 4.000% | 7/1/31 | 2036 | 137,290,000 | 46,765,000 | 184,055,000 |
| 2037 | 7/1/37 | 2037 | 118,370,000 | $255,660,000 | 4.000% | 7/1/31 | 2037 | 118,370,000 | 41,273,400 | 159,643,400 |
| 2038 | 7/1/38 | 2041 | 97,300,000 | | 4.000% | 7/1/31 | 2038 | 97,300,000 | 36,538,600 | 133,838,600 |
| 2039 | 7/1/39 | 2041 | 64,880,000 | | 4.000% | 7/1/31 | 2039 | 64,880,000 | 32,646,600 | 97,526,600 |
| 2040 | 7/1/40 | 2041 | 29,640,000 | | 4.000% | 7/1/31 | 2040 | 29,640,000 | 30,051,400 | 59,691,400 |

4

| 2041 | 7/1/41 | 2041 | 12,780,000 | $204,600,000 | 4.000% | 7/1/31 | 2041 | 12,780,000 | 28,865,800 | 41,645,800 |
| 2042 | 7/1/42 | 2046 | 130,875,000 | | 4.000% | 7/1/31 | 2042 | 130,875,000 | 28,354,600 | 159,229,600 |
| 2043 | 7/1/43 | 2046 | 136,110,000 | | 4.000% | 7/1/31 | 2043 | 136,110,000 | 23,119,600 | 159,229,600 |
| 2044 | 7/1/44 | 2046 | 141,555,000 | | 4.000% | 7/1/31 | 2044 | 141,555,000 | 17,675,200 | 159,230,200 |
| 2045 | 7/1/45 | 2046 | 147,220,000 | | 4.000% | 7/1/31 | 2045 | 147,220,000 | 12,013,000 | 159,233,000 |
| 2046 | 7/1/46 | 2046 | 153,105,000 | $708,865,000 | 4.000% | 7/1/31 | 2046 | 153,105,000 | 6,124,200 | 159,229,200 |

\* La fecha de Emisión Considerada es el 01/07/21.

\*\* Canjeable el 01/07/2031 a 103; Canjeable el 01/07/2032 a 102; Canjeable el 01/07/2033 a 101; Canjeable el 01/07/2034 a 100

5

Detalle de Bonos de Interés Actuales Imponibles

| | Resumen Detallado de los Bonos con Plazo Imponibles | | | | | | Flujos de Activos del Amortización de la Deuda Actual Imponibles | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Año Fiscal (1/7) | Vencimiento | Vencimiento del Plazo | Amortización del Fondo de Amortización Obligatoria | Capital del Plazo | Cupón | 1ª Fecha de Redención** | Año Fiscal (1/7) | Capital | Interés | Amortización de la Deuda Total |
| Total | | | $822,260,000 | $822,260,000 | | | | $822,260,000 | $698,096,750 | $1,520,356,750 |
| 2022 | 7/1/22 | | | | | | 2022 | | $41,113,000 | $41,113,000 |
| 2023 | 7/1/23 | | | | | | 2023 | | 41,113,000 | 41,113,000 |
| 2024 | 7/1/24 | | | | | | 2024 | | 41,113,000 | 41,113,000 |
| 2025 | 7/1/25 | | | | | | 2025 | | 41,113,000 | 41,113,000 |
| 2026 | 7/1/26 | | | | | | 2026 | | 41,113,000 | 41,113,000 |
| 2027 | 7/1/27 | | | | | | 2027 | | 41,113,000 | 41,113,000 |
| 2028 | 7/1/28 | | | | | | 2028 | | 41,113,000 | 41,113,000 |
| 2029 | 7/1/29 | | | | | | 2029 | | 41,113,000 | 41,113,000 |
| 2030 | 7/1/30 | | | | | | 2030 | | 41,113,000 | 41,113,000 |
| 2031 | 7/1/31 | | | | | | 2031 | | 41,113,000 | 41,113,000 |
| 2032 | 7/1/32 | | | | | | 2032 | | 41,113,000 | 41,113,000 |
| 2033 | 7/1/33 | | | | | | 2033 | | 41,113,000 | 41,113,000 |
| 2034 | 7/1/34 | | | | | | 2034 | | 41,113,000 | 41,113,000 |
| 2035 | 7/1/35 | 2041 | $121,695,000 | | 5.000% | 7/1/31 | 2035 | $121,695,000 | 41,113,000 | 162,808,000 |
| 2036 | 7/1/36 | 2041 | 118,735,000 | | 5.000% | 7/1/31 | 2036 | 118,735,000 | 35,028,250 | 153,763,250 |
| 2037 | 7/1/37 | 2041 | 115,625,000 | | 5.000% | 7/1/31 | 2037 | 115,625,000 | 29,091,500 | 144,716,500 |
| 2038 | 7/1/38 | 2041 | 112,360,000 | | 5.000% | 7/1/31 | 2038 | 112,360,000 | 23,310,250 | 135,670,250 |
| 2039 | 7/1/39 | 2041 | 117,980,000 | | 5.000% | 7/1/31 | 2039 | 117,980,000 | 17,692,250 | 135,672,250 |
| 2040 | 7/1/40 | 2041 | 123,880,000 | | 5.000% | 7/1/31 | 2040 | 123,880,000 | 11,793,250 | 135,673,250 |
| 2041 | 7/1/41 | 2041 | 111,985,000 | $822,260,000 | 5.000% | 7/1/31 | 2041 | 111,985,000 | 5,599,250 | 117,584,250 |

* Fecha de Emisión Estimada
  1/7/2021.

** Canjeable el 01/07/2031 a 103;  Canjeable el 01/07/2032 a 102; Canjeable el 01/07/2033 a 101; Canjeable el 01/07/2034 a 100

Bonos de Apreciación de Capital: vencimiento al 1 de julio de 2024 al 5.000 %

| Fecha | Capital Inicial | Valor acumulado en cada Fecha de Amortización (2) | Valor de Vencimiento (3) |
|---|---|---|---|
| 7/1/22 | $100,862,061.30 | $105,968,971.50 | $116,970,000.00 |
| 7/1/23 | 96,003,057.15 | 105,969,766.35 | 111,335,000.00 |
| 7/1/24 (1) | 91,376,871.30 | 105,970,000.00 | 105,970,000.00 |
| Total | $288,241,989.75 | $317,908,737.85 | $334,275,000.00 |

1) Vencimiento establecido, no es una amortización de fondo de amortización.
(2) Igual al capital inicial más el interés acumulado a cada fecha de amortización del fondo de amortización.
(3) Igual al valor total acumulado que estaría representado por la parte de los bonos que se amortizan si se mantienen hasta el vencimiento.

Bonos de Apreciación de Capital: vencimiento al 1 de julio de 2033 al 5.375 %*

| Fecha | Capital Inicial | Valor acumulado en cada Fecha de Amortización (2) | Valor de Vencimiento (3) |
|---|---|---|---|
| 7/1/29 | $98,129,013.00 | $149,997,523.50 | $185,450,000.00 |
| 7/1/30 | 93,059,851.80 | 149,997,764.30 | 175,870,000.00 |
| 7/1/31 | 88,252,614.90 | 149,998,089.75 | 166,785,000.00 |
| 7/1/32 | 83,694,073.80 | 149,998,937.80 | 158,170,000.00 |
| 7/1/33 (1) | 79,371,000.00 | 150,000,000.00 | 150,000,000.00 |
| Total | $442,506,553.50 | $749,992,315.35 | $836,275,000.00 |

(1) Vencimiento establecido, no es una amortización de fondo de amortización.
(2) Igual al capital inicial más el interés acumulado a cada fecha de amortización del fondo de amortización.
(3) Igual al valor total acumulado que estaría representado por la parte de los bonos que se amortizan si se mantienen hasta el vencimiento.
*Redimible el 01/07/2031 y después al valor acumulado.

7

# **ANEXO J**

DESCRIPCIÓN DE PLAZOS DE CVI Y DISPOSICIONES DE CASCADA

**Anexo J**

**Términos Generales Aplicables tanto a los CVI de OG como a los CVI de
Recuperación Sujeto a Cascada**

| PLAZO | DESCRIPCIÓN |
|---|---|
| **Métrica de Rendimiento Superior** | ▪ Ver el Suplemento 5 |
| **Estructura** | ▪ Punto de conexión: 100 % de proyecciones del Plan Fiscal del ELA como se incluye en el Suplemento 5 (el «IVU de Referencia») del presente anexo<br><br>▪ El Estado Libre Asociado prometerá su plena fe, crédito y poder impositivo conforme a la Constitución de Puerto Rico y la ley aplicable de Puerto Rico para el pago del CVI de OG, CVI de Recuperación Sujeto a Cascada y CVI de Recuperación No Sujeto a Cascada<br>   o Véase el Suplemento 1 para los términos específicos del CVI de OG<br>   o Véase el Suplemento 2 para los términos específicos del CVI de Recuperación<br><br>▪ Para evitar dudas, cuando se utiliza el término «CVI de Recuperación» por sí solo a lo largo de este anexo, el término abarca tanto CVI de Recuperación Sujetos a Cascada como CVI de Recuperación no Sujetos a Cascada, definidos como sigue:<br>   o **CVI de Recuperación Sujeto a Cascada:** Representa la parte de los pagos para CVI de Recuperación realizados a partir del Monto de Rentabilidad Superior Sujeto a Cascada<br>   o **CVI de Recuperación No Sujeto a Cascada:** Representa la parte de los pagos para CVI de Recuperación realizados a partir del Monto de Rentabilidad Superior No Sujeto a Cascada<br><br>▪ Las disposiciones de seguridad descritas en el Artículo 4.10 (b) del Acuerdo de Apoyo al Plan del ELA<br><br>▪ Los montos pagados a varios instrumentos CVI están sujetos a los límites aplicables, incluidos el Pago Anual Máximo del CVI de OG, Límite Contractual de CVI de OG, el Pago Anual Máximo de CVI de Recuperación y el Límite Contractual de CVI de Recuperación (tal como se define en este anexo) |
| **Fecha de Medición** | ▪ Medido al final de cada Año Fiscal, comenzando en el Año Fiscal 22<br>▪ Mecanismo de medición y pago a determinar |

| PLAZO | DESCRIPCIÓN |
|---|---|
| **Monto de Rendimiento Superior Sujeto a Cascada** | ▪ Menor que, sobre una base anual (el «Monto de Rendimiento Superior Sujeto a Cascada»): <br><br>○ (i) 50 % de el Rendimiento superior acumulada en relación con el 5.5 % de la Línea de Base SUT del Suplemento 5 (que, para evitar dudas, incluye tanto el Rendimiento superior como la inferior), a partir del 1 de julio de 2021, menos los pagos realizados anteriormente para CVI de OG y CVI de Recuperación Sujeto a Cascada. <br><br>    ▪ Para evitar dudas, los montos pagados por CVI de Recuperación se asignarán primero a CVI de Recuperación Sujeto a Cascada (a partir de Pagos Anuales Sujetos a Cascada, según se define más adelante) para los fines del cálculo de pagos hechos previamente <br><br>○ (ii) 75 % de el Rendimiento superior anual (que, para evitar dudas, incluye tanto el Rendimiento superior como la inferior) <br><br>○ Para evitar dudas, el monto de Rendimiento Superior Sujeto a Cascada no puede ser inferior a $0 en un año determinado |
| **Pagos de Amortización Obligatorios Anuales Sujetos a Cascada** | ▪ <u>Años 1-22</u>: Conforme al Monto de Rendimiento Superior Sujeto a Cascada, la cascada de pagos anuales es la siguiente (la «Cascada de Pagos Anuales»): <br><br>    ▪ (a) Primeros $100,000,000 a CVI de OG <br><br>    ▪ (b) Sigueintes $11,111,111 a CVI de Recuperación Sujeto a Cascada <br><br>    ▪ (c) A continuación, se prorratea de la siguiente manera: <br>    ▪ 90 % a CVI de OG <br>    ▪ 10 % a CVI de Recuperación Sujeto a Cascada <br><br>▪ En la medida en que se cumpla con el Límite Contractual de CVI de OG (como se define a continuación) (es decir, se abonarán $3500 millones de dólares en total para CVI de OG) en el año 21 o antes, el 100 % del Monto de Rendimiento Superior Sujeto a Cascada se acumularía para CVI de |

| PLAZO | DESCRIPCIÓN |
|---|---|
| | Recuperación Sujeto a Cascada a partir del año siguiente<br>■ Años 23-30: El 100 % del Monto de Rendimiento Superior Sujeto a Cascada para CVI de Recuperación Sujeto a Cascada |
| **Ajuste de IVU** | ■ No se necesitan ajustes:<br>○ Exenciones/feriados incluidos en el Código Tributario Interno de Puerto Rico a la fecha del Acuerdo de Apoyo al Plan (secciones 4030.01 a 4030.27)<br>■ IVU de Referencia Reducida (la «IVU de Referencia Reducida»):<br>○ Exenciones/feriados durante la Declaración Presidencial de Desastre de los Estados Unidos por un período que no excede 30 días y solo para categorías relacionadas con una emergencia de gastos. Si las Exenciones/feriados exceden el período de 30 días, el monto de cualquiera de las exenciones posteriores a tal período de 30 días se incluirá según el mecanismo de Ajuste de IVU definidos a continuación<br>■ IVU de Ingresos Aumentado en el Año («Ajuste de IVU»):<br>○ Cualquier otra exención implementada por el Gobierno según la ley aplicable<br>■ Para el cálculo de la Reducción de IVU de Referencia o Ajuste de IVU, el cálculo lo determinará el Secretario del Tesoro y lo validará un tercero independiente y se divulgará públicamente. Validación de tercero independiente que es vinculante para tanto el Gobierno como los Acreedores<br>■ La documentación en un acuerdo separado sobre la metodología que el tercero independiente usará para verificar el cálculo del Secretario del Tesoro<br>■ En la medida en que el ELA reduce el IVU al 5.5 % a una tasa menor, un ajuste formulaico a acordar por parte de la Junta y los Acreedores del Acuerdo de Apoyo al Plan Iniciales para mantener que el mismo monto de rendimiento superior tenía el IVU Medido mantenido a 5.5 %. Protecciones adicionales dispuestas en la Sección 4.10 (b)(xi) del Acuerdo de Apoyo al Plan del ELA. |

## SUPLEMENTO 1: TÉRMINOS ESPECÍFICOS DE CVI DE OG

| PLAZO | DESCRIPCIÓN |
|---|---|
| **Tope Global de CVI de OG** | ▪ $ 3,500 millones  (el «Tope Global de CVI de OG») |
| **Plazo de CVI de OG** | ▪ 22 años (Año Fiscal 2043)<br>▪ Fecha de Emisión  Considerada de 1 de julio de 2021 |
| **Pagos a CVI de OG** | ▪ Como se indica en (a) y (c) de la Cascada de Pago Anual, sujeto al Pago Anual Máximo de CVI de OG y al Límite de Contractual de CVI de OG |
| **Pago Anual Máximo de CVI de OG** | ▪ Pago anual máximo de $200 millones  para CVI de OG más cualquier monto no utilizado de años anteriores, sujeto a un pago anual que no sea superior a $400 millones  para CVI de OG. Para evitar dudas, el Pago Anual Máximo de CVI de OG se calcula como el menor de (i) el monto del Saldo Trasladable de CVI de OG (véase más adelante) y $200 millones y (ii) $400 millones<br>▪ El Saldo Trasladable de CVI de OG se calculará de la siguiente manera:<br>   ○ (a) En el año 1, una cantidad igual a $0<br>   ○ (b) Para cada año a partir de entonces, el Monto de Saldo Trasladable de CVI de OG Anual (véase más adelante) se añadirá (si es positivo) o se restará (si es negativo) del Saldo Trasladable de CVI de OG.<br>▪ El Monto Trasladable de CVI de OG Anual se calculará como la diferencia entre (que, para evitar dudas, puede ser un número positivo o negativo) (y) $200 millones y (z) pagos de CVI (si los hubiere) efectuados para CVI de OG en el año fiscal anterior<br>▪ En la medida en que haya un Saldo Transferible de CVI de OG positivo al final del plazo de 22 años, el Estado Libre Asociado no deberá ningún otro monto para CVI de OG |
| **Estructura de Redención de CVI de OG** | ▪ Redimible en cualquier fecha a un valor acumulado igual al monto máximo de pagos futuros presentes valuados a una tasa de descuento sin tope de la Tasa del Tesoro + 100 puntos de base, en donde, la Tasa del Tesoro significa que la rentabilidad (o rentabilidad interpolada) del valor (o valores) del tesoro de los Estados Unidos comparable que tiene un vencimiento actual (o vencimiento interpolado) que es más cercano a la vida media restante de los pagos máximos restantes del CVI de OG |

| PLAZO | DESCRIPCIÓN |
|---|---|
| **Asignación de CVI de OG** | ▪  Véase el Suplemento  3 |

**SUPLEMENTO 2: TÉRMINOS ESPECÍFICOS DE CVI DE RECUPERACIÓN**

| PLAZO | DESCRIPCIÓN |
|---|---|
| **Tope Global de CVI de Recuperación** | ■ $3,697,668,995 para Reclamaciones de la ACT/ELA Permitidas, $217,228,391 para reclamaciones de Convenciones/ELA Permitidas, $22,580,090 para Reclamaciones de AMA/ELA Permitidas y $1,446,650,288 para Reclamaciones de Impuesto de Ron de la AFI/ELA (en total, $5,384,127,764)<br>■ Se aplica a los pagos totales de CVI de Recuperación, incluidos los pagos tanto a CVI de Recuperación Sujeto a Cascada como CVI de Recuperación No Sujeto a Cascada |
| **Plazo de CVI de Recuperación** | ■ 30 años (Año Fiscal 2051)<br>■ Fecha de emisión considerada de 1 de julio de 2021 |
| **Pagos de Amortización Obligatorios para CVI de Recuperación Sujeto a Cascada** | ■ Años 1-22: Como se indica en (b) y (c) de la Cascada de Pago Anual, sin compensación ni deducción por impuestos, sujeto al Pago Anual Máximo de CVI de Recuperación y al Límite de Contractual de CVI de Recuperación<br>■ Años 23-30: Del 100 % del Monto de Rentabilidad Superior Sujeto a Cascada, sin compensación ni deducción por impuestos, sujeto al Pago Anual Máximo de CVI de Recuperación y al Límite de Contractual de CVI de Recuperación<br>o En la medida en que se cumpla con el Límite Contractual de CVI de OG (como se definió anteriormente) (es decir, se abonarán $3500 millones de dólares en total para CVI de OG) en el año 21 o antes, el 100 % del Monto de Rentabilidad Superior Sujeto a Cascada se acumularía para CVI de Recuperación a partir del año siguiente, sin compensación ni deducción por impuestos, sujeto al Pago de Amortización Obligatorio Anual Máximo de CVI de Recuperación (como se especifica a continuación) y al Límite Contractual de CVI de Recuperación |
| **Monto de Rendimiento Superior No Sujeto a Cascada** | ■ Menor que, sobre una base anual (el «Monto de Rendimiento Superior No Sujeto a Cascada»):<br>o (i) 40 % del Rendimiento superior acumulada en relación con el 5.5 % de la Línea de Base SUT del Suplemento 5 (que, para evitar dudas, incluye tanto el Rendimiento superior como la inferior), a partir del 1 de julio de 2021, menos los pagos realizados anteriormente para CVI de Recuperación No Sujeto a Cascada. |

| PLAZO | DESCRIPCIÓN |
|---|---|
|  |     o  (ii) 95 % del Rendimiento superior anual (que, para evitar dudas, incluye tanto el Rendimiento superior como la inferior), menos montos pagados para CVI de OG y CVI de Recuperación Sujeto a Cascada para el año fiscal correspondiente<br>▪  Para evitar dudas, el monto de Rendimiento Superior No Sujeto a Cascada no puede ser inferior a $0 en un año determinado |
| **Pagos de Amortización Obligatorios para CVI de Recuperación No Sujeto a Cascada** | ▪  100 % del Monto de Rendimiento Superior No Sujeto a Cascada, sujeto a cualquier límite aplicable, incluido tanto el Pago Anual Máximo de CVI de Recuperación como el Límite Contractual de CVI de Recuperación |
| **Pago Anual Máximo de CVI de Recuperación** | ▪  <u>Años 1-22</u>: Pago anual máximo de $175 millones más cualquier monto no utilizado de años anteriores, sujeto a un límite en cualquier año del doble del límite anual aplicable (es decir, $350 millones) para el CVI de Recuperación, incluidos los pagos tanto para CVI de Recuperación Sujeto a Cascada como para CVI de Recuperación No Sujeto a Cascada. Para evitar dudas, el Pago Anual Máximo de CVI de Recuperación durante este período se calcula como el menor de (i) la suma del Saldo Transferible de CVI de Recuperación (véase más adelante) y $175 millones y (ii) $350 millones<br>    o  El Saldo Trasladable de CVI de Recuperación se calculará de la siguiente manera:<br>        ▪  (a) En el año 1, una cantidad igual a $0<br>        ▪  (b) Para cada año a partir de entonces, el Monto de Saldo Trasladable de CVI de Recuperación Anual se añadirá (si es positivo) o se restará (si es negativo) del Saldo Trasladable de CVI de Recuperación. El Monto Trasladable de CVI de Recuperación Anual durante este período se calculará como la diferencia entre (que, para evitar dudas, puede ser un número |

| PLAZO | DESCRIPCIÓN |
|---|---|
|  | positivo o negativo) (y) $175 millones y (z) pagos de CVI acumulados hechos para los CVI de Recuperación Sujeto a Cascada (si los hubiere) y los para CVI de Recuperación No Sujeto a Cascada (si los hubiere) en el año fiscal anterior<br><br>• <u>Años 23-30</u>: Pago anual máximo de $375 millones más cualquier monto no utilizado de años anteriores, sujeto a un límite en cualquier año del doble del límite anual aplicable (es decir, $750 millones) para el CVI de Recuperación, incluidos los pagos tanto para CVI de Recuperación Sujeto a Cascada como para CVI de Recuperación No Sujeto a Cascada. Para evitar dudas, el Pago Anual Máximo de CVI de Recuperación durante este período se calcula como el menor de (i) la suma del Saldo Transferible de CVI de Recuperación (véase más adelante) y $375 millones y (ii) $750 millones<br><br>   o El Monto Trasladable de CVI de Recuperación Anual durante este período se calculará como la diferencia entre (que, para evitar dudas, puede ser un número positivo o negativo) (y) $375 millones y (z) pagos de CVI acumulados (si los hubiere) hechos para los CVI de Recuperación Sujeto a Cascada y los para CVI de Recuperación No Sujeto a Cascada en el año fiscal anterior<br><br>   o Dicho Monto de Saldo Trasladable de CVI de Recuperación Anual se añadirá (si es positivo) o se restará (si es negativo) del Saldo Trasladable de CVI de Recuperación<br><br>• En la medida en que se cumpla con el Límite Contractual de CVI de OG (es decir, un total de $3500 millones pagados para CVI de OG) en el año 21 o antes, el límite de pago anual de $375 millones – y el límite de pago anual de hasta $750 millones en la medida en que se disponga de suficiente Saldo Trasladable de CVI de Recuperación – para CVI de Recuperación, incluidos los pagos de CVI de pago tanto para CVI de Recuperación Sujeto a Cascada como para CVI |

| PLAZO | DESCRIPCIÓN |
|---|---|
| | de Recuperación No Sujeto a Cascada, comenzaría el año siguiente<br>▪ En la medida en que haya un Saldo Transferible de CVI de Recuperación positivo al final del plazo de 30 años, el Estado Libre Asociado no deberá ningún otro monto para CVI de Recuperación<br>▪ Para evitar dudas, al calcular si los pagos acumulados para CVI de Recuperación están limitados por el Pago Anual Máximo de CVI de Recuperación, los pagos para CVI de Recuperación Sujeto a Cascada se cuentan primero contra el Pago Anual Máximo de CVI de Recuperación antes de que se cuenten los pagos para CVI de Recuperación No Sujeto a Cascada |
| **Estructura de Redención de CVI de Recuperación** | ▪ Redimible en cualquier fecha a un valor acumulado igual al monto máximo de pagos futuros presentes valuados a una tasa de descuento sin tope de la Tasa del Tesoro + 700 puntos de base, en donde, la Tasa del Tesoro significa que la rentabilidad (o rentabilidad interpolada) del valor (o valores) del tesoro de los Estados Unidos comparable que tiene un vencimiento actual (o vencimiento interpolado) que es más cercano a la vida media restante de los pagos máximos restantes del CVI de Redención. |
| **Asignación de CVI de Recuperación** | ▪ Véase el Suplemento 4 |

**SUPLEMENTO 3: RESUMEN DE ASIGNACIÓN DE CVI DE OG**

| Reclamación | % de Asignación de CVI de OG |
|---|---|
| Reclamación de Bonos del ELA Antiguos | 32.244 % |
| Reclamación de Bonos Serie D/E/PIB del ELA 2011 | 3.514 % |
| Reclamación de bonos del ELA 2011 | 2.479 % |
| Reclamación de Bonos del ELA 2012[2] | 15.157 % |
| Reclamación de Bonos del ELA 2014[3] | 20.266 % |
| Reclamación de Garantía del ELA Antiguos | 15.194 % |
| Reclamación de Bonos de Garantía del ELA 2011 | 7.552 % |
| Reclamación de Bonos de Garantía del ELA 2012 | 3.594 % |

---

[2]Los montos de Reclamación de Bonos del ELA 2012 incluyen $ 198 millones de los préstamos de Hacienda y $ 25 millones del Préstamo de Helicóptero de la ASG.
[3]Los montos de Reclamación de Bonos del ELA 2014 incluyen $ 84 millones de notas de bonos anticipados de la AFI y $ 263 millones de bonos de Ports.

**SUPLEMENTO 4: RESUMEN DE ASIGNACIÓN DE CVI DE RECUPERACIÓN**

| Reclamación | % de Asignación de CVI de Recuperación |
|---|---|
| Reclamaciones de la ACT/ELA Permitidas[4] | 68.6 % |
| Reclamaciones de Convenciones/ELA Permitidas | 4.0 % |
| Reclamaciones de Impuesto de Ron de la AFI/ELA Permitidas | 27.0 % |
| Reclamaciones de la ACT/ELA Permitidas | 0.4 % |

_____

[4] Véase el Suplemento 6 por detalles de la cascada de distribución de pagos de CVI de la asignación de CVI de Recuperación para Reclamaciones de la ACT/ELA Permitidas.

SUPLEMENTO 5: REFERENCIA DE IVU AL 5.5 %[5]

*($ USD)*

| Referencia de IVU al 5.5 % | | | |
|---|---|---|---|
| **Año** | **Monto** | **Año** | **Monto** |
| 2022 | $1,282,901,069.30 | 2037 | $1,452,657,050.02 |
| 2023 | 1,279,617,661.88 | 2038 | 1,477,755,111.63 |
| 2024 | 1,301,220,703.34 | 2039 | 1,495,355,971.13 |
| 2025 | 1,315,295,083.41 | 2040 | 1,518,089,898.19 |
| 2026 | 1,345,037,783.09 | 2041 | 1,541,405,892.18 |
| 2027 | 1,377,398,882.61 | 2042 | 1,565,457,864.38 |
| 2028 | 1,403,141,426.98 | 2043 | 1,590,148,747.39 |
| 2029 | 1,414,785,980.78 | 2044 | 1,616,252,365.93 |
| 2030 | 1,427,393,695.32 | 2045 | 1,642,150,220.79 |
| 2031 | 1,437,998,166.98 | 2046 | 1,668,748,988.64 |
| 2032 | 1,447,406,781.79 | 2047 | 1,696,060,240.60 |
| 2033 | 1,428,210,572.57 | 2048 | 1,724,082,302.73 |
| 2034 | 1,426,102,595.91 | 2049 | 1,752,859,808.94 |
| 2035 | 1,429,798,842.15 | 2050[4] | 1,781,536,796.27 |
| 2036 | 1,438,540,327.00 | 2051[4] | 1,810,682,942.40 |

[5] Plan fiscal de mayo de 2020 que contiene proyecciones hasta el año fiscal 2049. La referencia del año fiscal 2050 y 2051 se c alcula mediante el uso de las proyecciones del año fiscal 2049 y la tasa de crecimiento promedio del año fiscal 2045-año fiscal 2049.

**SUPLEMENTO 6: CASCADA DE DISTRIBUCIÓN DE PRIORIDAD DE ASIGNACIÓN DE CVI DE RECUPERACIÓN PARA RECLAMACIONES DE LA ACT/ELA PERMITIDAS**

| TÉRMINO | DESCRIPCIÓN |
|---|---|
| **Cascada de Distribución de Prioridad de CVI de Recuperación de la ACT**[4] | <ul><li><u>Primero</u>, del CVI de Recuperación asignado para Reclamaciones de la ACT/ELA Permitidas, pagos de CVI de Recuperación, si los hubiere, para Reclamaciones de Bonos de la ACT 68 hasta $179,462,539</li><li><u>Segundo</u>, del CVI de Recuperación asignado para Reclamaciones de la ACT/ELA Permitidas, pagos de CVI de Recuperación restantes, si los hubiere, para Reclamaciones de Bonos de la ACT 98 Prioritarios (Senior) hasta $1,833,405,578</li><li><u>Tercero</u>, del CVI de Recuperación asignado para Reclamaciones de la ACT/ELA Permitidas, pagos de CVI de Recuperación restantes, si los hubiere, para Reclamaciones de Bonos de la ACT 98 Subordinados hasta $207,294,178</li><li><u>Cuarto</u>, después de pagar los montos permitidos anteriores por completo, de los CVI de Recuperación asignados para Reclamaciones de la ACT/ELA Permitidas, pagos de CVI de Recuperación restantes, si los hubiere, para Préstamos a la ACT del BGF hasta $1,477,506,700</li><li>Cascada implementada en la medida máxima permitida contra el Estado Libre Asociado y sujeto a determinación judicial</li></ul> |

---

[6] Los términos en mayúsculas utilizados, pero no definidos dentro del Suplemento 6 tendrán los significados asignados a estos en el Acuerdo de Apoyo al Plan relacionado de la ACT/ADCC.

**ANEXO K**

**PROGRAMA DE ESTATUTOS INVALIDADOS**

## Lista de los Estatutos Principales Invalidados por PROMESA[7]

I.    **Estatutos de créditos pignorados y de buena fe del ELA**

    A.    Bonos de Obligaciones Generales

1. Ley 33 aprobada el 7 de diciembre de 1942.
2. Ley 2 aprobada el 10 de octubre de 1985.
3. Ley 1 aprobada el 26 de junio de 1987 y sus modificaciones.
4. Ley 47 aprobada el 30 de junio de 2013.
5. Ley 242 aprobada el 13 de diciembre de 2011.
6. Ley 45 aprobada el 30 de junio de 2013.
7. Ley 34 aprobada el 4 de marzo de 2014.
8. Ley 79 aprobada el 1 de junio de 2011.
9. Ley 243 aprobada el 9 de agosto de 2008.
10. Ley 74 aprobada el 23 de julio de 2007 y sus modificaciones.
11. Ley 43 aprobada el 1 de agosto de 2005 y sus modificaciones.
12. Ley 216 aprobada el 19 de agosto de 2004.
13. Ley 100 aprobada el 12 de julio de 2002 y sus modificaciones.
14. Ley 161 aprobada el 5 de julio de 2003.
15. Ley 149 aprobada el 9 de agosto de 2002 y sus modificaciones.
16. Resolución conjunta núm. 57 aprobada el 12 de julio de 1993.
17. Ley 54 aprobada el 6 de julio de 2001.
18. Ley 118 aprobada el 13 de julio de 2000.
19. Ley 153 aprobada el 16 de julio de 1999.
20. Ley 219 aprobada el 9 de agosto de 1998.
21. Ley 81 aprobada el 14 de agosto de 1997.
22. Ley 119 aprobada el 9 de agosto de 1995.
23. Ley 46 aprobada el 28 de julio de 1994.
24. Ley 39 aprobada el 13 de mayo de 1976 y sus modificaciones
25. Ley 83 aprobada el 30 de agosto de 1991.

    B.    Préstamos de Obligaciones Generales

1. Préstamo de Helicóptero a Policía de la ASG - Resolución Conjunta núm. 99-2013 aprobada el 9 de diciembre de 2013.
2. Prestamos del BGF al ELA
1. Ley 33 aprobada el 7 de diciembre de 1942.
2. Ley 47 aprobada el 30 de junio de 2013.
3. Ley 242 aprobada el 13 de diciembre de 2011.
4. Ley 45 aprobada el 30 de junio de 2013. [Préstamo por $245 millones para el Fondo de Reconstrucción Fiscal.]
5. Resolución conjunta núm. 104 aprobada el 13 de diciembre de 2013. [Línea de crédito de $15 millones para el Distrito Capital de la Legislatura.]
6. Resolución conjunta núm. 96 aprobada el 27 de noviembre de 2013. [Línea de crédito de $30 millones.]

---

[7] Cualquier estatuto que disponga una asignación no incluida en el presupuesto certificado por la JSAF se considera inválido.

C.      Garantía del ELA - Bonos de la Autoridad de Edificios Públicos
   1.      Ley 17 aprobada el 11 de abril de 1968 y sus modificaciones.
D.   Garantía del ELA - APLA
   1.      Ley 409 aprobada el 22 de septiembre de 2004.
E.   Garantía del ELA - Notas de bonos anticipados de la AFI
   1.      Ley 1 aprobada el 1 de enero de 2015.
F.   [Garantía del ELA - AAA
   1.      Ley 45 aprobada el 28 de julio de 1994.]

## II.   Estatutos que asignan ingresos del ELA
A.      ACT
   1.   Ley 9 aprobada el 12 agosto de 1982; 9 L.P.R.A. § 2021
   [tasas de licencia sobre vehículos]
   2.   13 L.P.R.A. § 31751(a)(1). [productos de petróleo, diésel y gasoil.]
   3.   13 L.P.R.A. § 31751(a)(3). [impuesto a los cigarrillos]

B.      AFI
   1.   1. Ley 44 aprobada el 21 de junio de 1988 y sus
      modificaciones; 3 L.P.R.A. § 1914. [cubierta de ron]
C.      Notas de Bonos Anticipados de la AFI
   1.      Ley 1 aprobada el 1 de enero de 2015; 13 L.P.R.A. § 31751a(a).
      [productos de petróleo]
D.      AMA
   1.      13 L.P.R.A. § 31751(a)(4). [impuesto a los cigarrillos]
E.      ATI
   1.      13 L.P.R.A. § 31751(a)(5). [impuesto a los cigarrillos]
F.      ADCC
   1.      13 L.P.R.A. § 2271v(a). [impuesto a habitaciones de hotel]
G.      Ley 147 aprobada el 18 de junio de 1980 y sus modificaciones
   1.23 L.P.R.A. § 104.[8] [asignación judicial]
H.      UPR
   1.18 L.P.R.A. § 621-1.[9]
I.      Ley 83 aprobada el 30 de agosto de 1991 y sus modificaciones
   1.21 L.P.R.A. §§ 5002, 5004, 5006, 5815.[10]
J.      Ley 221 aprobada el 15 de mayo de 1948 y sus modificaciones
   1.15 L.P.R.A. § 74(d).[11]
K.      Ley 18 aprobada el 24 de enero de 2014 y sus modificaciones
L.

---

[8] En el Año Fiscal 2019, las asignaciones en virtud de 23 L.P.R.A. § 104 llegarían a más de $ 250 millones, si no se considera inválido.

[9] En el Año Fiscal 2019, las asignaciones en virtud de 18 L.P.R.A. § 621 -1 llegarían a más de $ 750 millones, si no se considera inválido.

[10] En el Año Fiscal 2019, las asignaciones en virtud de 21 L.P.R.A. §§ 5002, 5004 llegarían a más de $ 100 millones, si no se considera inválido. En el Año Fiscal 2019, las asignaciones en virtud de 21 L.P.R.A. §§ 5006, 5815 llegarían a más de $ 200 millones, si no se considera inválido.

[11] En el Año Fiscal 2019, las asignaciones en virtud de 15 L.P.R.A. § 74(d) llegarían a más de $ 250 millones, si no se considera inválido.

     1.21 L.P.R.A. § 6742.[12]

M. Ley 214 aprobada el 18 de agosto de 2004 y sus modificaciones
    1.23 L.P.R.A. § 695

N. Ley 41 aprobada el 22 de julio de 2011 y sus modificaciones
    1.12 L.P.R.A. §8105

O. Ley 1 aprobada el 31 de enero de 2011 y sus modificaciones
    1.13 L.P.R.A. § 33231(l)

## III. Estatutos del SRM y el SRJ

  A. [Ley 106 aprobada el 23 de agosto de 2017]
  B. [Ley 160 aprobada el 24 de diciembre de 2013.]
  C. Ley 91 del 24 de marzo de 2004.
  D. Ley 12 aprobada el 19 de octubre de 1954.

---

[12] En el Año Fiscal 2019, las asignaciones en virtud de 21 L.P.R.A. § 6742 llegarían a más de $ 120 millones, si no se considera inválido.

## **ANEXO L**

CATEGORÍAS DE RECUPERACIÓN DE BONOS

| Categoría de Recuperación de Bonos | Clases Incluidas |
|---|---|
| Reclamaciones de Bonos de la AEP Antiguos | 1, 2, 3, 4, 5 y 6 |
| Reclamaciones de Bonos de la AEP 2011 | 7 y 8 |
| Reclamaciones de Bonos de la AEP 2012 | 9 y 10 |
| Reclamaciones de Bonos del ELA Antiguos | 14, 15, 16, 17, 18, 19 y 20 |
| Reclamaciones de Bonos Serie D/E/PIB del ELA 2011 | 33, 34, 35 y 36 |
| Reclamaciones de Bonos del ELA 2011 | 27, 28, 29 y 30 |
| Reclamaciones de Bonos del ELA 2012 | 37, 38, 39 y 40 |
| Reclamaciones de Bonos del ELA 2014 | 43, 44, 45, 46 y 47 |
| Reclamaciones de Bonos de Garantía del ELA Antiguos | 21, 22, 23, 24, 25, y 26 |
| Reclamaciones de Bonos de Garantía del ELA 2011 | 31 y 32 |
| Reclamaciones de Bonos de Garantía del ELA 2012 | 41 y 42 |