## **ANEXO D**

ESTIPULACIÓN VINCULADA AL SRE

**VERSIÓN DE EJECUCIÓN**

### ANTE EL TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
### PARA EL DISTRITO DE PUERTO RICO

---

*In re*:

LA JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN
FINANCIERA PARA PUERTO RICO,

    como representante del

ESTADO LIBRE ASOCIADO DE PUERTO RICO, *y otros,*

 

                    Deudores.[1]

PROMESA
Título III

Núm. 17 BK-3283-LTS

(Con administración conjunta)

---

*In re*:

LA JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN
FINANCIERA PARA PUERTO RICO,

    como representante del

SISTEMA DE RETIRO DE EMPLEADOS DE
GOBIERNO DEL ESTADO LIBRE ASOCIADO DE
PUERTO RICO,

        Deudor.

PROMESA
Título III

Núm. 17 UK-3566-LTS

(Con administración conjunta)

---

### ESTIPULACIÓN ENMENDADA Y REFORMULADA (A) QUE PERMITE LAS RECLAMACIONES DE LOS TENEDORES DE BONOS SRE, (B) QUE PARALIZA EL LITIGIO PENDIENTE, Y (C) QUE DISPONE EL TRATAMIENTO DE LAS RECLAMACIONES DE LOS TENEDORES DE BONOS SRE Y LA DESESTIMACIÓN DE LOS LITIGIOS PENDIENTES A TENOR CON UN PLAN DE AJUSTE

---

[1] Los Deudores en los Casos de Título III administrados conjuntamente, junto con el número de caso de Título III respectivo de cada Deudor que figura como número de caso de quiebra debido a las limitaciones del software y los últimos cuatro (4) dígitos del número de identificación fiscal federal de cada Deudor, según corresponda, son (i) el Estado Libre Asociado (ELA) de Puerto Rico (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos del Número de identificación fiscal federal: 3481); (ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos del Número de identificación fiscal federal: 8474); (iii) el Sistema de Retiro de Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos del Número de identificación fiscal federal: 9686); (iv) la Autoridad de Carreteras y Transportación ("ACT") de Puerto Rico (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos del Número de identificación fiscal federal: 3808); (v) la Autoridad de Energía Eléctrica ("AEE") de Puerto Rico (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos del Número de identificación fiscal federal: 3747); y (vi) la Autoridad de Edificios Públicos de Puerto Rico ("AEP") de Puerto Rico (Caso de Quiebra Núm. 19 BK 5523-LTS) (Últimos cuatro dígitos del Número de identificación **fiscal** federal: 3801).

122793696v5

Esta estipulación enmendada y reformulada ("Estipulación") es suscrita por los abogados y representantes autorizados de (a) la Junta de Supervisión y Administración Financiera de Puerto Rico (la "Junta de Supervisión"), como único representante de (i) el Estado Libre Asociado de Puerto Rico (el "Estado Libre Asociado"), y el (ii) Sistema de Retiro de Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("SRE") a tenor con la sección 315(b) de la *Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] (b) Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts para y en nombre de Crown/PW SP, Glendon Opportunities Fund, L.P., Cartera Segregada de Investment Opportunities SPC Investment Opportunities 3, LMA SPC para y en nombre de la Cartera Segregada de Map 98, Mason Capital Master Fund LP, Mason Capital SPV III, LLC, Oaktree- Forrest Multi-Strategy, LLC (Serie B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Opportunities Fund X Holdings (Delaware), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Opps X Holdco Ltd, Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Opps Culebra Holdings, L.P., Pentwater Credit Master Fund Ltd., Pentwater Merger Arbitrage Master Fund Ltd., Pentwater Unconstrained Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., y SV Credit, L.P. (colectivamente, los "Fondos de Andalusian"), (c) Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico Fixed Income Fund VI, Inc., Puerto

---

[2] PROMESA está codificada en 48 U.S.C. §§ 2101-2241.

Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund II, Inc., Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., Tax-Free Puerto Rico Target Maturity Fund, Inc., y UBS IRA Select Growth & Income Puerto Rico Fund (colectivamente, los "Fondos de Puerto Rico"), y (d) Whitehaven Credit Opportunities Master Fund, Ltd. (los "Fondos de Whitehaven" y, colectivamente con los Fondos de Andalusian y los Fondos de Puerto Rico, los "Tenedores de bonos SRE" y cada uno, un "Tenedor de bonos SRE").[3] Las Partes estipulan y acuerdan lo siguiente:

## ANTECEDENTES

A.    El SRE es un fideicomiso creado por el ELA en 1951 para administrar el pago de pensiones y otras prestaciones a determinados funcionarios y empleados del ELA y sus instrumentalidades. 3 L.P.R.A. §§ 775, 761.

B.    El 3 de mayo de 2017, la Junta de Supervisión dictó una certificación de reestructuración a tenor con las secciones 104(j) y 206 de PROMESA y presentó una petición voluntaria de remedio para el ELA a tenor con la sección 304(a) de PROMESA ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (el "Tribunal del Título III"), iniciando un caso bajo el Título III de esta (el "Caso de Título III del ELA").

C.    A tenor con la sección 315(b) de PROMESA, la Junta de Supervisión es el único representante del ELA como deudor en el caso de Título III del ELA.

D.    El 21 de mayo de 2017 (la "Fecha de Petición del SRE"), la Junta de Supervisión

---

[3] Cada uno de los Fondos del Estado Libre Asociado, SRE, Fondos de Andalusian, Fondos de Puerto Rico y Fondos de Whitehaven es una "Parte" y, colectivamente, son las "Partes".

emitió una certificación de reestructuración a tenor con las secciones 104(j) y 206 de PROMESA y presentó una petición voluntaria de remedio para el SRE a tenor con la sección 304(a) de PROMESA ante el Tribunal del Título III, iniciando un caso bajo el Título III de esta (el "<u>Caso de Título III del SRE</u>").

       E.      A la Fecha de Petición del SRE, el monto de capital total pendiente de ciertos bonos emitidos por el SRE a tenor con una determinada Resolución de Bonos de Financiación de Pensiones, adoptada el 24 de enero de 2008 (los "<u>Bonos SRE</u>"), incluidos los montos compuestos, era de $3,168,698,776.55.

       F.      A tenor con la sección 315(b) de PROMESA, la Junta de Supervisión es el único representante del SRE como deudor en el caso de Título III del SRE.

       G.      Algunos tenedores de bonos de SRE han presentado numerosas evidencias de reclamaciones contra el SRE y el ELA con respecto a las obligaciones supuestamente asociadas a los bonos SRE (colectivamente, las "<u>Evidencias de reclamaciones de tenedores de bonos</u>").[4]

     1.     <u>Los Fondos de Andalusian</u>:  Núm. de reclamación 23788, 26037, 26285, 26150, 27122, 36272, 33451, 44249, 36297, 25131, 32797, y 26910 presentadas contra SRE en el Caso de Título III del SRE y Núm. de reclamación 32783, 25909, 24966, 20647, 26329, 28669, 27383, 45683, 26365, 31165 21961, 26322, y 172979 presentadas contra el ELA en el Caso de Título III del ELA.

     2.     <u>Los Fondos de Puerto Rico</u>:  Núm. de reclamación 21376, 21209, 21334, 22347, 22467, 23510, 21505, 21156, 21230, 21251, 24690, 22667, 24691, 33222, 33738, 30703, 35893, 31458, 32804, 34846, y 36022 presentadas contra SRE en el Caso de Título III del SRE y Núm. de reclamación 21199, 21069, 21309, 22606, 23328, 23526, 25445, 21144, 21213, 21280, 22196, 28680, 39177, 33603, 33671, 33796, 34863, 33713, 32845, 33786 y 43061 presentadas contra el ELA en el Caso de Título III del ELA.

       H.      The Bank of New York Mellon, en calidad de agente fiscal (el "<u>Agente Fiscal</u>") presentó una evidencia de reclamación contra el ELA (Reclamación Núm. 16775) el 24 de mayo

---

[4] Aunque las Partes pretenden que las listas que figuran a continuación sean exhaustivas, las Partes pretenden recoger todas las Evidencias de Reclamaciones de Tenedores de Bonos, y se reservan el derecho a identificar otras reclamaciones que consideren que deben incluirse en la lista de Evidencias de Reclamaciones de Tenedores de Bonos.

de 2018 (la "<u>Evidencia de Reclamación del ELA del Agente Fiscal</u>") y el SRE (Reclamación Núm. 16777) el 24 de mayo de 2018 (la "<u>Evidencia de Reclamación del SRE del Agente Fiscal</u>" y, junto con la Evidencia de Reclamación del ELA del Agente Fiscal, las "<u>Evidencias de Reclamaciones del Agente Fiscal</u>").

      I.     Los Fondos de Whitehaven no presentaron originalmente evidencias de reclamaciones a cuenta de sus Reclamaciones de Bonos SRE, sino que adquirieron dichas reclamaciones de tenedores de bonos existentes cuyas reclamaciones están cubiertas por las Evidencias de Reclamaciones del Agente Fiscal.

      J.     A la fecha del presente documento, las siguientes acciones siguen pendientes ante el Tribunal del Título III (colectivamente, las "<u>Acciones Pendientes</u>").

      1.    "<u>Acciones de Impugnación de PayGo</u>": El 27 de julio de 2017, algunos tenedores de bonos del SRE presentaron un procedimiento contencioso contra el SRE, el ELA, la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico y ciertos funcionarios del gobierno del Estado Libre Asociado de Puerto Rico (en sus capacidades oficiales) con el fin de invalidar la Resolución Conjunta para Otras Asignaciones para el Año Fiscal 2017-2018 ("<u>J.R. l88</u>") y la Ley 106-2017 ("<u>Ley 106</u>", y, colectivamente con J.R. 188, la "<u>Legislación de PayGo</u>"). *Véase* [Caso Núm. 17-ap-219-LTS, ECF Núm. 39; Caso Núm. 17-ap-220-LTS, ECF. Núm. 39]. En concreto, los tenedores de bonos solicitaron que se declare que: (i) las Medidas PayGo eran nulas porque violaban la paralización automática; (ii) sus reclamaciones contra el SRE estaban plenamente garantizadas; (iii) su derecho de garantía se vincula a los Pagos PayGo posteriores a la petición; y (iv) la legislación PayGo enriqueció injustamente al ELA y violó las cláusulas sobre expropiaciones y contratos de las Constituciones de Puerto Rico y de los Estados Unidos. Las Acciones de Impugnación de PayGo se cierran administrativamente solo para fines estadísticos. [Caso Núm. 17-ap-219- LTS, ECF Núm. 78].

      2.    "<u>Acción *Ultra Vires*</u>": El 19 de mayo de 2019, el Comité de Reclamaciones Especiales de la Junta de Supervisión (el "<u>Comité de Reclamaciones Especiales</u>") presentó demandas contenciosas en las que se alega que la emisión de los Bonos SRE fue *ultra vires* y nula y sin valor, y busca obtener la recuperación de ciertos pagos realizados a determinados tenedores de Bonos SRE y a otros tenedores de Bonos SRE. *Véase* Caso Núm. 19-ap-355- LTS, ECF Núm. 1; Caso Núm. 19-ap-356-LTS, ECF Núm. 1; Caso Núm. 19-ap-357-LTS, ECF Núm. 1; Caso Núm. 19-ap-358-LTS, ECF Núm. 1; Caso Núm. 19- ap-359-LTS, ECF Núm. 1; Caso Núm. 19-ap-361-LTS, ECF Núm. 1. Algunos tenedores de bonos SRE, el Agente Fiscal, el Comité de Reclamaciones Especiales, el Comité Oficial de Empleados Retirados y el Comité Oficial de Acreedores No Asegurados de todos los Deudores de Título III (distintos de COFINA) (el "<u>Comité de Acreedores</u>") han presentado mociones de sentencia sumaria solicitando su desestimación.

3. "<u>Acción de Impugnación de Gravámenes</u>": El 20 de mayo de 2019, el SRE y el Comité de Acreedores presentaron demandas contenciosas en las que se alega que ciertos tenedores de bonos SRE no son titulares de derechos reales de garantía válidos y ejecutables sobre ninguno de los activos del SRE ni sobre su producto, aparte de cierto efectivo en el SRE atribuible a las Contribuciones de los Empleadores, y ciertas cuentas por cobrar de las Contribuciones de los Empleadores del SRE. *Véase* [Caso Núm. 19-ap-366-LTS, ECF Núm. 1; Caso Núm. 19-ap- 367-LTS, ECF Núm. 1]. La Junta de Supervisión y algunos Tenedores de Bonos SRE han presentado mociones de sentencia sumaria.

4. "<u>Acciones de reclamaciones de gastos administrativos y previas a la petición</u>": El 21 de noviembre de 2019, algunos tenedores de bonos SRE presentaron una moción en la que solicitaban la concesión y el pago de reclamaciones de gastos administrativos y posteriores a la petición contra el ELA y SRE incluidas las reclamaciones derivadas de la Legislación PayGo y la impugnación de los tenedores de bonos en la Acción de Impugnación de PayGo. *Véase* [Caso Núm. 17-bk-3566, ECF Núm. 707; Caso Núm. 17-bk-3566, ECF Núm. 710]. El Agente Fiscal se sumó a la moción de los Tenedores de Bonos SRE. [Caso Núm. 17-bk-3566, ECF Núm. 707, ECF Núm. 712]. Por acuerdo, la Junta de Supervisión también está tramitando las objeciones a las Evidencias de Reclamaciones de los Tenedores de Bonos y a las Evidencias de Reclamaciones del Agente Fiscal simultáneamente y en la misma sesión de información que la tramitación de las mociones de gastos administrativos. *Véase* [Caso Núm. 17-bk-3566, ECF Núm. 838]. La Junta de Supervisión y algunos Tenedores de Bonos SRE han solicitado que se dicte sentencia sobre los alegatos de conformidad con la Regla Federal de Procedimiento Civil 12(b) y 12(c), respectivamente.

K.     El 19 de julio de 2017, algunos Tenedores de Bonos del SRE presentaron una demanda contra los Estados Unidos de América ante el Tribunal de Reclamaciones Federales de los Estados Unidos (la "<u>Acción del Circuito Federal</u>"). *Altair Global Credit Opportunities Fund (A), LLC,* y otros, c. *EE.UU.* (Caso Núm. 17-cv-970C) [ECF Núm. 9] (Circ. Fed. 31 de octubre de 2017). El 23 de noviembre de 2020, el Tribunal de Reclamaciones Federales desestimó la Acción del Circuito Federal, y los Tenedores de Bonos SRE han apelado dicha desestimación ante el Tribunal de Apelación del Circuito Federal de los Estados Unidos (el "<u>Circuito Federal</u>"). La fecha límite para la presentación de los escritos iniciales en dicha apelación se ha ampliado, por acuerdo, hasta el 28 de mayo de 2021. *Altair Global Credit Opportunities Fund (A), LLC,* y otros, c. *EE.UU.* (Caso Núm. 21-1577) (Circ. Fed. 2021).

L.     El 27 de septiembre de 2019, el ELA presentó ese cierto *Plan Conjunto de Ajuste de Título III del Estado Libre Asociado de Puerto Rico, y otros* [ECF Núm. 8765].

M.      El 27 de septiembre de 2019, la Junta de Supervisión dictó una certificación de reestructuración a tenor con las secciones 104(j) y 206 de PROMESA y presentó una petición voluntaria de remedio para la Autoridad de Edificios Públicos de Puerto Rico ("AEP") a tenor con la sección 304(a) de PROMESA ante el Tribunal, iniciando un caso bajo el Título III de esta (el "Caso de Título III de AEP" y, junto con el Caso de Título III del ELA y el Caso de Título III de SRE, los "Casos de Título III de PROMESA").

N.      A tenor con la sección 315(b) de PROMESA, la Junta de Supervisión es el único representante de la AEP como deudor en el caso de Título III de AEP.

O.      El 9 de febrero de 2020, la Junta de Supervisión celebró ese cierto Acuerdo de Apoyo al Plan con, entre otros, los titulares de reclamaciones contra el ELA y la AEP, con respecto a los términos y condiciones para un plan de ajuste para el ELA, el SRE y la AEP, y estableciendo el tratamiento propuesto para ciertas reclamaciones.

P.      El 28 de febrero de 2020, la Junta de Supervisión, en nombre del ELA, la AEP y el SRE presentó un plan de ajuste enmendado (el "Plan Enmendado") y la correspondiente declaración de divulgación (la "Declaración de Divulgación 2020").

Q.      Debido a la aparición de la pandemia de COVID-19 y a sus efectos sobre la población y la economía del ELA, Junta de Supervisión, en nombre del ELA, el SRE y la AEP, determinó aplazar la tramitación de la Declaración de Divulgación 2020 y del Plan Enmendado.

R.      El 22 de febrero de 2021, la Junta de Supervisión celebró ese cierto Acuerdo de Apoyo al Plan (el "PSA 2021") con respecto a los términos y condiciones para un plan de ajuste para el ELA, el SRE y la AEP, y estableciendo el tratamiento propuesto para ciertas reclamaciones.

S.      El 8 de marzo de 2021, la Junta de Supervisión presentó un Segundo Plan Conjunto Enmendado de Ajuste de Título III del Estado Libre Asociado de Puerto Rico, y otros (el "Segundo Plan de Ajuste Enmendado") y la correspondiente declaración de divulgación (la "Segunda

Declaración de Divulgación  Enmendada"). Aunque las Partes han participado en una mediación en relación con la resolución de las Acciones Pendientes y el tratamiento de las Reclamaciones de Bonos SRE, tal y como se definen en el Plan Enmendado, no se ha llegado a un acuerdo para dicha presentación.

T.    El 9 de marzo de 2021, las Partes firmaron la Estipulación (A) que establece un período de diligencia debida, (B) que permite las reclamaciones de los Tenedores de Bonos SRE, (C) que paraliza los litigios pendientes y (D) que establece el tratamiento de las reclamaciones de los Tenedores de Bonos SRE y la desestimación de los litigios pendientes a tenor con un plan de ajuste (la "Estipulación Original"), en virtud del cual, entre otras cosas, las Partes acordaron un período, hasta el 24 de marzo de 2021, en el se llevaría a cabo la diligencia debida con respecto a la Cartera de Capital Privado, tal como se define a continuación, y las Partes desarrollarían un mecanismo para la transferibilidad de los intereses en la Cartera de Capital Privado.

U.    A la luz de la Estipulación Original, las Partes informaron al Tribunal del Título III y solicitaron un aplazamiento de la vista del 11 de marzo de 2021 para considerar la Acción *Ultra Vires* y la Acción de Impugnación de Gravámenes.

V.    Como resultado, el Tribunal del Título III tiene previsto escuchar los alegatos orales el (i) 8 de abril de 2021 en relación con la Acción *Ultra Vires* y la Acción de Impugnación de Gravámenes, y (ii) el 29 de abril de 2021 en relación con las Acciones de Reclamaciones de Gastos Administrativos y Previas a la Petición (conjuntamente, con la Acción *Ultra Vires* y la Acción de Impugnación de Gravámenes, las "Acciones de Alegatos Orales"). [Caso Núm. 17-bk-3566, ECF Núm. 1065].

W.    A tenor con dos enmiendas a la Estipulación Original, las Partes ampliaron el período en el que se podía llevar a cabo la diligencia debida de la Cartera de Capital Privado hasta

el 2 de abril de 2021 inclusive.

X. De acuerdo con las disposiciones de la Estipulación Original, los tenedores de bonos SRE que son parte de la Acción del Circuito Federal solicitaron, y, el 30 de marzo de 2021, el Circuito Federal concedió, una paralización de la Acción del Circuito Federal.

Y. A la fecha de este documento, los fondos de Andalusian poseen Bonos SRE por los importes nominales que figuran en el **Anexo A** del presente.

Z. A la fecha de este documento, los fondos de Puerto Rico poseen Bonos SRE por los importes nominales que figuran en el **Anexo B** del presente.

AA. A la fecha de este documento, y como se indica en el **Anexo C** del presente, los Fondos de Whitehaven poseen Bonos SRE por un monto de capital total de $185,845,000.00.

BB. Las Partes han completado la diligencia debida de la Cartera de Capital Privado y han acordado enmendar y reformular la Estipulación Original como se establece en el presente documento.

**EN VIRTUD DE LO CUAL**, como contraprestación de lo anterior, las Partes acuerdan lo siguiente:

ACUERDO

1. El 5 de abril de 2021 o antes de esa fecha, las Partes correspondientes presentarán una moción conjunta urgente en el Caso de Título III del ELA y el Caso de Título III del SRE, solicitando el aplazamiento de los alegatos orales y la paralización de todos los litigios relacionados con las Acciones Pendientes (la "Moción de Paralización"), incluyendo, entre otros, los alegatos orales relacionados con las Acciones de Alegatos Orales, a la espera de la confirmación y consumación del Tercer Plan Enmendado, como se define a continuación (o cualquier plan presentado con posterioridad al Tercer Plan Enmendado) (la "Fecha de Entrada en Vigencia del Plan").

2.        Con efecto inmediato, pero sujeto a las disposiciones del párrafo 1 del decreto en el presente, (i) las Partes correspondientes acuerdan (por separado, no conjuntamente) que las Acciones Pendientes se paralizarán hasta la Fecha de Entrada en Vigencia del Plan, y (ii) sujeto a la extinción de esta Estipulación, las Partes acuerdan (por separado, no conjuntamente) abstenerse, durante el período que transcurre hasta la Fecha de Entrada en Vigencia del Plan, de iniciar, continuar, presentar o tramitar de cualquier otro modo cualquier reclamación o acción en relación con los Bonos SRE contra las Partes y los que no son Partes (como los Estados Unidos de América); no obstante, para evitar dudas, (i) los Tenedores de Bonos SRE pueden tomar medidas para preservar dichas acciones durante dicho período, incluyendo la respuesta a las directivas judiciales, si las hubiera, y (ii) la Comisión de Reclamaciones Especiales y el Comité de Acreedores pueden tomar medidas para preservar la Acción *Ultra Vires* durante dicho período, incluyendo el cumplimiento de las órdenes de presentación de pruebas y confidencialidad en relación con la desestimación y la adición de demandados a dicha acción.

3.        Independientemente de la presentación de la Moción de Paralización, o de la aprobación de la Moción de Paralización por parte del Tribunal del Título III, y sujeto a la extinción de esta Estipulación, las Partes acuerdan abstenerse de iniciar, continuar, presentar o tramitar de cualquier otra manera cualquier reclamación o acción en relación con los Bonos SRE contra las Partes y los que no son Partes (como los Estados Unidos de América), excepto como se describe a continuación en relación con el Tercer Plan Enmendado, de acuerdo con esta Estipulación, o según lo ordenado por el tribunal correspondiente; siempre y cuando nada de lo aquí expuesto paralice o impida el inicio, la continuación, la presentación o el trámite de otra manera de cualquier reclamación o acción en relación con esa determinada acción caratulada *Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico, y otros c. UBS Financial Services Inc. de Puerto Rico, y otros.,* Núm. Civ. KAC-2011-1067

(803), actualmente pendiente en el Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, Parte de San Juan.

4.       Durante el período comprendido entre la fecha del presente documento y la Fecha de Adquisición, según se define a continuación, (a) el SRE mantendrá los intereses de la cartera de capital privado del SRE (junto con la "Cuenta Segregada" definida a continuación, la "Cartera de Capital Privado") hasta que se transfiera al Fideicomiso del SRE, como se define a continuación, de conformidad con lo dispuesto en el párrafo 5(c) del decreto del presente documento y continuará gestionando dichos activos hasta la Fecha de Adquisición, inclusive, o hasta una fecha anterior en caso de que la Cartera de Capital Privado sea adquirida por los tenedores de Bonos SRE de acuerdo con la Elección del Tenedor de Bonos, tal y como se define a continuación, (b) el SRE no transferirá ni liquidará la Cartera de Capital Privado; no obstante, los activos de la Cartera de Capital Privado podrán liquidarse en el curso ordinario de las operaciones, a tenor con los términos y condiciones aplicables de los respectivos acuerdos de base, y el producto de estos se depositará en la Cuenta Segregada, (c) las distribuciones trimestrales de efectivo u otros ingresos de la Cartera de Valores Privados se depositarán en la Cuenta Segregada, y (d) en caso de que no haya en la Cuenta Segregada suficiente efectivo procedente de las distribuciones efectuadas desde la Cartera de Capital Privado necesario para satisfacer cualquier compromiso de capital con respecto a esta, el ELA financiará cualquier déficit de efectivo; no obstante, al haber suficiente efectivo en la Cuenta Segregada, el SRE hará que se paguen fondos de la Cuenta Segregada para reembolsar al ELA dichas cantidades deficitarias financiadas. Por "Cuenta Segregada" se entenderá una cuenta segregada establecida por el SRE que se utilizará exclusivamente para los fines establecidos en el presente documento.

5.       En o antes de treinta (30) días calendario a partir de la fecha del presente documento, la Junta de Supervisión presentará un tercer plan enmendado (el "Tercer Plan

Enmendado") y la correspondiente declaración de divulgación (la "Tercera Declaración de Divulgación Enmendada"), que dispondrá que:

a.  En la Fecha de Entrada en Vigencia del Plan, la Evidencia de Reclamación del Agente Fiscal del SRE se considerará admitida por un importe total de tres mil ciento sesenta y ocho millones, seiscientos noventa y ocho mil setecientos setenta y seis dólares y cincuenta y cinco céntimos ($3,168,698,776.55), y todas las demás reclamaciones presentadas contra el ELA o el SRE con respecto a los Bonos SRE, incluidas las Evidencias de Reclamaciones de los Tenedores de Bonos y la Evidencia de Reclamación del Agente Fiscal del ELA, se considerarán satisfechas y eliminadas.

b.  A partir de la Fecha de Entrada en Vigencia del Plan, las Acciones Pendientes serán desestimadas y/o denegadas, sin derecho a nueva acción, y la Junta de Supervisión y el Comité Especial de Reclamaciones deberán, y el Comité de Acreedores y los Tenedores de Bonos SRE (por cuenta propia o en nombre de afiliados o fondos o cuentas relacionados administradas por las filiales) podrán, tomar todas las medidas necesarias que sean razonablemente necesarias, incluyendo, entre otras, la presentación de tales notificaciones, estipulaciones u otros escritos ante el Tribunal, que sean necesarias para llevar a cabo dicha desestimación y/o rechazo de las Acciones Pendientes, sin derecho a nueva acción.

c.  En la Fecha de Entrada en Vigencia del Plan, (i) todos los titulares de reclamaciones permitidas con respecto a los Bonos SRE (o su representante) recibirán, sin compensación ni deducción de impuestos, a tenor con el Tercer Plan Enmendado, su parte proporcional de Trescientos Setenta y Tres Millones de dólares ($373,000,000.00) en distribuciones en efectivo, puestos estos pagos en efectivo a disposición por parte del SRE y el ELA de la compra de activos del SRE, y (ii) el SRE colocará la Cartera de Capital Privado en un fideicomiso (el "Fideicomiso del SRE"), cuya documentación del fideicomiso será razonablemente aceptable para los Tenedores de Bonos SRE, y el SRE continuará administrando dichos activos hasta la fecha (la "Fecha de Adquisición") en que dichos activos o intereses del fideicomiso del SRE sean adquiridos por el ELA o los titulares de reclamaciones permitidas con respecto a los Bonos SRE a tenor con la Opción de los Tenedores de Bonos, como se define a continuación.

d.  Desde la Fecha de Entrada en Vigencia del Plan hasta el 10 de abril de 2023 inclusive, el ELA tendrá derecho a adquirir (la "Opción del ELA") la Cartera de Capital Privado por Setenta Millones Setecientos Cincuenta Mil Dólares ($70,750,000.00) (el "Precio de la Cartera"), y el producto de esta que se distribuirá a los titulares de reclamaciones permitidas con respecto a los Bonos SRE (o su representante); siempre y cuando el ELA notifique por escrito su ejercicio de la Opción del ELA a más tardar el 10 de abril de 2023 y, en ese caso, efectúe la compra a más tardar el 25 de abril de 2023. En caso de que el ELA no notifique su ejercicio de la Opción del ELA para el 10 de abril de 2023, cualquier tenedor o tenedores de reclamaciones

permitidas con respecto a los Bonos SRE tendrán la opción de adquirir (la "Opción del Tenedor de Bonos") todos los intereses en el Fideicomiso del SRE por el Precio de Cartera, más el monto que sea necesario para reembolsar al ELA por cualquier monto de déficit financiado que no haya sido reembolsado previamente al ELA, mediante una notificación por escrito al ELA, a más tardar el 15 de abril de 2023, y dicho(s) tenedor(es) en ejercicio de su opción paguen dicho monto total, de manera prorrateada, al ELA, a más tardar el 20 de abril de 2023. En caso de que no se haya ejercido ni la Opción del ELA ni la Opción del Tenedor de Bonos, el 25 de abril de 2023 el ELA adquirirá la Cartera de Capital Privado por el Precio de la Cartera. El producto resultante de la Opción del ELA, la Opción de los Tenedores de Bonos o de la adquisición por parte del ELA de acuerdo con las disposiciones de la frase anterior se distribuirá, en cada caso, a los tenedores de los créditos permitidos con respecto a los Bonos SRE (o su representante), sin compensación ni deducción de impuestos. Los resúmenes trimestrales de la Cartera de Capital Privado se facilitarán a los Tenedores de Bonos SRE que firmen y entreguen un acuerdo de no divulgación, entendiéndose que cualquier información facilitada en virtud de este no estará sujeta a divulgación pública. Las Partes acuerdan que el SRE será el propietario de la Cartera de Capital Privado y del Fideicomiso del SRE hasta la Fecha de Adquisición para todos los fines fiscales aplicables, y que ninguna partida de ingresos, ganancias, pérdidas o deducciones imponibles atribuibles a la Cartera de Capital Privado o al Fideicomiso del SRE, según sea el caso, se asignará a los titulares de las reclamaciones permitidas con respecto a los bonos SRE a menos que y hasta que dichos titulares hayan adquirido los intereses en el Fideicomiso del SRE a tenor con la Opción de los Tenedores de Bonos.

e.   En la Fecha de Entrada en Vigencia del Plan, los Tenedores de Bonos SRE que sean partes en el presente documento en la fecha de esta Estipulación (o su representante) recibirán, sin compensación ni deducción de impuestos, su parte prorrateada (basada en las participaciones de dichos Tenedores de Bonos SRE en la fecha del presente documento) de setenta y cinco millones de dólares ($75,000,000.00) en distribuciones en efectivo (los "Pagos de Consumación").

f.   Como contraprestación de los pagos realizados por el ELA para respaldar las distribuciones en efectivo que se realizarán en virtud del Tercer Plan Enmendado, todos los demás activos del SRE se transferirán al ELA y se conferirán a este a partir de la Fecha de Entrada en Vigencia del Plan.

Las Partes acuerdan que las distribuciones del párrafo 5 del decreto del presente documento se consideren montos obtenidos a efectos fiscales sobre los Bonos SRE.

6.   Siempre que esta Estipulación no haya sido rescindida y continúe plenamente vigente, en ejercicio de su exclusivo criterio, la Junta de Supervisión podrá presentar cualquier

otro plan que modifique el Tercer Plan Enmendado o cualquier plan posterior; siempre y cuando dicho plan contenga disposiciones acordes con las descritas en el párrafo 5 anterior del presente documento y que nada en dicho plan sea incompatible con dichas disposiciones.

7.      A partir de la fecha del presente documento, y siempre que no se haya rescindido esta Estipulación, cada uno de los Tenedores de Bonos SRE, únicamente en su calidad de Tenedor de Bonos SRE (y por separado, no conjuntamente), se compromete a: (a) tras ser convocado de acuerdo con las disposiciones de PROMESA, votar para aceptar el Tercer Plan Enmendado (o cualquier plan presentado con posterioridad al Tercer Plan Enmendado que sea económicamente acorde con esta Estipulación), u ordenar al Agente Fiscal que vote para aceptar y apoyar el Tercer Plan Enmendado (o cualquier plan presentado con posterioridad al Tercer Plan Enmendado que sea económicamente acorde con esta Estipulación); (b) apoyar, y por lo demás no ejecutar, ni animar a ninguna otra persona a ejecutar, ninguna acción que pudiera, o se esperara razonablemente que pudiera, infringir o ser incompatible con los términos de este documento, o impedir o evitar la presentación del Tercer Plan Enmendado (o cualquier plan presentado con posterioridad al Tercer Plan Enmendado que sea económicamente acorde con esta Estipulación), la administración del Tercer Plan Enmendado (o cualquier plan presentado con posterioridad al Tercer Plan Enmendado que sea económicamente acorde con esta Estipulación), la aprobación de la Tercera Declaración de Divulgación Enmendada (o cualquier declaración de divulgación presentada con posterioridad a la Tercera Declaración de Divulgación Enmendada que sea económicamente acorde con esta Estipulación), el registro de una orden que confirme el Tercer Plan Enmendado (o cualquier plan presentado con posterioridad al Tercer Plan Enmendado que sea económicamente acorde con esta Estipulación) y el acontecer de la Fecha de Entrada en Vigencia del Plan; siempre que dichos documentos sean acordes con los términos del presente documento; y (c) abstenerse de vender, transferir, pignorar, hipotecar o ceder sus Bonos SRE o

cualquier voto, consentimiento o instrucción o participaciones u otros intereses en ellos (una "Transferencia"). No obstante cualquier disposición en contrario del presente documento, los Tenedores de Bonos SRE pueden efectuar una Transferencia a (1) otra Parte de esta Estipulación o (2), en el caso de que el adquirente no sea una Parte en el momento de la Transferencia, dicho adquirente que ejecute y entregue, dentro de tres (3) días calendario después de su ejecución, al abogado de la Junta de Supervisión, el acuerdo de acumulación que se adjunta como **Anexo D** (un "Adquirente Calificado"), según el cual (y) dicho Adquirente Calificado (i) asumirá todos los derechos y obligaciones del transferente de acuerdo con los términos y condiciones de esta Estipulación y (ii) dicho Adquirente Calificado se considerará entonces una Parte a todos los efectos del presente documento, incluso, sin limitación, con respecto a los Bonos SRE adicionales que posea dicho Adquirente Calificado en el momento en que adhiera a esta Estipulación, y asumirá todos los derechos y obligaciones derivados de esta (salvo el derecho a recibir los Pagos de Consumación) y (z) en la fecha efectiva de la Transferencia o con posterioridad a esta, se considerará que el Tenedor de Bonos SRE transferente ha renunciado a sus derechos (salvo el derecho a recibir los Pagos de Consumación); y, se dispone además que, en la medida en que una Transferencia viole las disposiciones de esta sección, será nula *ab initio* y los Bonos SRE aplicables y el Tenedor de Bonos SRE que intente dicha Transferencia seguirán estando sujetos a los términos de esta Estipulación; y, se dispone además que nada de lo contenido en el presente tiene por objeto, ni debe interpretarse como, un impedimento para que cualquiera de los tenedores de Bonos SRE adquiera Bonos SRE adicionales; disponiéndose, sin embargo, que cualquier bono SRE adquirido a partir de la fecha del presente documento se considerará automáticamente y de forma inmediata a su adquisición por parte de un Tenedor de Bonos SRE sujeto a todos los términos y disposiciones de esta Estipulación. No obstante lo anterior, ninguna disposición que contenga el presente documento restringirá o prohibirá a ninguna de las partes la adopción de

cualquier medida exigida por la Ley de Valores de 1933, con sus enmiendas, la Ley de Intercambio de Valores de 1934, con sus enmiendas, cualquier norma o reglamento promulgado en virtud de esta, o por cualquier otra ley o reglamento aplicable. No obstante lo anterior, un Titular de Bonos SRE podrá transferir los Bonos SRE (o sus intereses) a un Creador de Mercado Calificado (definido a continuación), actuando en su calidad de Creador de Mercado Calificado, sin el requisito de que dicho Creador de Mercado Calificado sea o se convierta en parte de esta Estipulación si dicho Creador de Mercado Calificado transfiere posteriormente dichos Bonos SRE (o participaciones en ellos) a un adquirente que sea parte de esta Estipulación o a un adquirente que suscriba y entregue al abogado una Acumulación de acuerdo con la Estipulación, en el momento de la Transferencia propuesta o antes de ella. En la medida en que una de las partes del presente documento actúe en calidad de Creador de Mercado Calificado, podrá transferir los Bonos SRE (o sus intereses) que el Creador de Mercado Calificado adquiera de un tenedor de los Bonos SRE (o sus intereses) que no sea Parte de esta Estipulación sin el requisito de que el adquirente sea o se convierta en Parte del presente. Un Creador de Mercado Calificado podrá, con el consentimiento de la Junta de Supervisión, que no se denegará sin causa justificada, adherirse a esta Estipulación únicamente en nombre de una agencia de corretaje específica. Por "Creador de Mercado Calificado" se entenderá una entidad que: (x) se presenta ante el mercado como dispuesto, en el curso ordinario de su actividad, a comprar a los clientes y a vender a los clientes valores de deuda como los Bonos SRE, o a tomar con los clientes posiciones largas y cortas en valores de deuda como los Bonos SRE, en su calidad de corredor o creador de mercado de dichos Bonos SRE; (y) se dedique de hecho y con regularidad a la creación de mercado de valores de deuda; y (z) si realiza transacciones con respecto a los Bonos SRE, esté registrado ante la Comisión de Valores y Bolsa y en la autoridad reguladora de las instituciones financieras.

8. Tan pronto como sea posible después de la fecha del presente, la Junta de

Supervisión hará todo lo posible para que el ELA divulgue públicamente los términos de esta Estipulación en el sitio web de Acceso Electrónico al Mercado Municipal (EMMA).

9.      Tan pronto como sea posible después de la fecha del presente, pero en ningún caso más de cinco (5) días laborables a partir de la fecha del presente, la Junta de Supervisión divulgará públicamente, o hará que se divulguen públicamente, aquellos materiales de diligencia con respecto a la Cartera de Capital Privado, y que fueron proporcionados de acuerdo con los términos y disposiciones de la Estipulación Original y que no fueron denominados como "Para profesionales solamente".

10.     No obstante lo establecido en esta Estipulación o cualquier otra disposición en contrario, esta Estipulación no es, ni se considerará como, una convocatoria para le aceptación del Tercer Plan Enmendado (o cualquier plan presentado con posterioridad al Tercer Plan Enmendado). Cada una de las Partes, por separado y no conjuntamente, reconoce y acepta que (a) la votación sobre el Tercer Plan Enmendado (o cualquier plan presentado con posterioridad al Tercer Plan Enmendado) no se convocará hasta que el Tribunal del Título III haya aprobado la Tercera Declaración de Divulgación Enmendada (o cualquier declaración de divulgación presentada con posterioridad a la Tercera Declaración de Divulgación Enmendada) y los materiales de convocatoria relacionados, y dicha Tercera Declaración de Divulgación Enmendada (o cualquier declaración de divulgación presentada con posterioridad a la Tercera Declaración de Divulgación Enmendada) y los materiales de convocatoria han sido transmitidos a las partes con derecho a recibirlos y (b) esta Estipulación no constituye una oferta para emitir o vender valores a ninguna persona o entidad, ni una solicitud de una oferta para adquirir o comprar valores, en ninguna jurisdicción en la que dicha oferta o solicitud sea ilegal. NO OBSTANTE, LO ANTERIOR, NINGUNA DISPOSICIÓN DEL PRESENTE DOCUMENTO OBLIGARÁ A NINGUNA DE LAS PARTES A REALIZAR NINGUNA ACCIÓN PROHIBIDA POR

PROMESA, LA LEY DE TÍTULOS VALORES DE 1933, CON SUS ENMIENDAS, LA LEY DE INTERCAMBIO DE VALORES DE 1934, CON SUS ENMIENDAS, CUALQUIER NORMA O REGLAMENTO APROBADO EN VIRTUD DE ESTAS, O POR CUALQUIER OTRA LEY O REGLAMENTO APLICABLE O POR CUALQUIER ORDEN O INSTRUCCIÓN DE CUALQUIER TRIBUNAL O CUALQUIER AUTORIDAD GUBERNAMENTAL ESTATAL O FEDERAL.

11.    La presente Estipulación se extinguirá, y a partir de ese momento será nula y no tendrá efecto adicional cuando se produzca uno de los siguientes eventos: (a) ante el incumplimiento por parte de la Junta de Supervisión de cualquiera de los términos o disposiciones sustantivas de esta Estipulación, incluida la presentación del Tercer Plan Enmendado (o de cualquier plan presentado con posterioridad al Tercer Plan Enmendado) que trate las reclamaciones del Agente Fiscal o de los Tenedores de Bonos SRE de forma incompatible con los términos del presente; (b) ante el incumplimiento material de los términos o disposiciones de esta Estipulación por parte del Tenedor de Bonos SRE; (c) si el Tribunal del Título III deniega la confirmación del Tercer Plan Enmendado (o cualquier plan presentado con posterioridad al Tercer Plan Enmendado); (d) si antes de la Fecha de Entrada en Vigencia del Plan, la orden de confirmación del Tercer Plan Enmendado (o cualquier plan presentado con posterioridad al Tercer Plan Enmendado) es anulada en virtud de una orden definitiva del Tribunal del Título III; o (e) si la Fecha de Entrada en Vigencia del Plan no se produce antes del 15 de diciembre de 2021 (con sujeción a una prórroga hasta el 31 de enero de 2022 de conformidad con los términos del PSA 2021).

12.    A partir de la Fecha de Entrada en Vigencia del Plan, los Tenedores de Bonos SRE que sean parte de la Acción del Circuito Federal y su apelación, solicitarán la desestimación de dicha apelación, sin derecho a nueva acción; sin embargo, en caso de extinción de esta

Estipulación, para evitar cualquier duda, dichos Tenedores de Bonos SRE podrán tomar las medidas que consideren oportunas para continuar con dicha Acción del Circuito Federal.

13.     Las Partes, por y a través de sus respectivos abogados, declaran y garantizan que están debidamente autorizadas para suscribir y obligarse por esta Estipulación.

14.     Los acuerdos, declaraciones, pactos y obligaciones de las Partes en virtud de esta Estipulación son individuales únicamente y no conjuntos en ningún aspecto y ninguna será responsable del cumplimiento o incumplimiento de esta Estipulación por parte de otra parte.

15.     La suscripción de esta Estipulación no está destinada a ser, ni se interpretará como una admisión o evidencia en cualquier acción legal, juicio procedimiento o disputa pendiente o posterior de cualquier responsabilidad legal, acto ilícito u obligación de ninguna clase (lo que incluye los méritos de cualquier reclamación o defensa) por parte de cualquier Parte a cualquier otra Parte o cualquier otra Persona con respecto a cualquiera de los asuntos abordados en esta Estipulación. Ninguna parte de esta Estipulación (incluidos los antecedentes y los anexos), el acuerdo, o cualquier acto realizado o documento suscrito en virtud de esta Estipulación o del acuerdo, será admisible en ningún procedimiento para ningún propósito, excepto para hacer cumplir los términos de esta Estipulación.

16.     Este Tribunal mantendrá la jurisdicción para conocer y determinar todos los asuntos emergentes o relacionados con la aplicación, interpretación o cumplimiento de esta Estipulación.

17.     Esta Estipulación se regirá por la legislación de Nueva York.

18.     Esta Estipulación puede ser firmada en varios ejemplares, cualquiera de los cuales puede ser transmitido por facsímil o correo electrónico, y cada uno de ellos será considerado como un original, pero todos juntos constituirán un solo instrumento.

Fecha: 2 de abril de 2021

*[Sigue hoja de firmas]*

**EL ESTADO LIBRE ASOCIADO DE PUERTO RICO**

Por: la Junta de Supervisión y Administración Financiera de Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico

Por: [firma]
Brian S. Rosen
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera como representantes del Estado Libre Asociado*

[Hoja de firmas de la Estipulación de Tenedores de Bonos SRE — 2 de abril de 2021]

**EL SISTEMA DE RETIRO DE EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO**

Por: la Junta de Supervisión y Administración Financiera de Puerto Rico, como representante del Sistema de Retiro de Empleados del Gobierno del Estado Libre Asociado de Puerto Rico

Por: [firma]
Brian S. Rosen
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera como representantes del Sistema de Retiro de Empleados del Gobierno del Estado Libre Asociado de Puerto Rico*

[Hoja de firmas para la Estipulación de Tenedores de Bonos SRE — 2 de abril de 2021]

**ALTAIR GLOBAL CREDIT OPPORTUNITIES FUND (A), LLC, ANDALUSIAN GLOBAL DESIGNATED ACTIVITY COMPANY, CROWN MANAGED ACCOUNTS PARA Y EN NOMBRE DE CROWN/PW SP, GLENDON OPPORTUNITIES FUND, L.P., CARTERA SEGREGADA DE INVESTMENT OPPORTUNITIES SPC INVESTMENT OPPORTUNITIES 3, LMA SPC PARA Y EN NOMBRE DE LA CARTERA SEGREGADA DE MAP 98, MASON CAPITAL MASTER FUND LP, MASON CAPITAL SPV III, LLC, OAKTREE- FORREST MULTI-STRATEGY, LLC (SERIE B), OAKTREE OPPORTUNITIES FUND IX, L.P., OAKTREE OPPORTUNITIES FUND IX (PARALLEL), L.P., OAKTREE OPPORTUNITIES FUND IX (PARALLEL 2), L.P., OAKTREE OPPORTUNITIES FUND X HOLDINGS (DELAWARE), L.P., OAKTREE HUNTINGTON INVESTMENT FUND II, L.P., OAKTREE OPPORTUNITIES FUND X, L.P., OAKTREE OPPORTUNITIES FUND X (PARALLEL), L.P., OAKTREE OPPORTUNITIES FUND X (PARALLEL 2), L.P., OAKTREE OPPS X HOLDCO LTD, OAKTREE VALUE OPPORTUNITIES FUND HOLDINGS, L.P., OCEANA MASTER FUND LTD., OCHER ROSE, L.L.C., OPPS CULEBRA HOLDINGS, L.P., PENTWATER CREDIT MASTER FUND LTD., PENTWATER MERGER ARBITRAGE MASTER FUND LTD., PENTWATER UNCONSTRAINED MASTER FUND LTD., PWCM MASTER FUND LTD., REDWOOD MASTER FUND, LTD., Y SV CREDIT, L.P.**

Por:   [firma]

Benjamin Rosenblum
JONES DAY
250 Vesey Street
New York, NY 10281
Tel. (212) 326-8312
Fax: (212) 755-7306

*Abogados de los Fondos de Andalusian*

[Hoja de firmas para la Estipulación de Tenedores de Bonos SRE — 2 de abril de 2021]

Case:17-03283-LTS   Doc#:16897-5   Filed:06/07/21   Entered:06/07/21 20:17:31   Desc:
Exhibit D   Page 24 of 39

**PUERTO RICO AAA PORTFOLIO BOND FUND, INC., PUERTO RICO AAA PORTFOLIO BOND FUND II, INC., PUERTO RICO AAA PORTFOLIO TARGET MATURITY FUND, INC., PUERTO RICO FIXED INCOME FUND, INC., PUERTO RICO FIXED INCOME FUND II, INC., PUERTO RICO FIXED INCOME FUND III, INC., PUERTO RICO FIXED INCOME FUND IV, INC., PUERTO RICO FIXED INCOME FUND V, INC., PUERTO RICO FIXED INCOME FUND VI, INC., PUERTO RICO GNMA & U.S. GOVERNMENT TARGET MATURITY FUND, INC., PUERTO RICO INVESTORS BOND FUND I, PUERTO RICO INVESTORS TAX-FREE FUND, INC., PUERTO RICO INVESTORS TAX-FREE FUND II, INC., PUERTO RICO INVESTORS TAX-FREE FUND III, INC., PUERTO RICO INVESTORS TAX-FREE FUND IV, INC., PUERTO RICO INVESTORS TAX-FREE FUND V, INC., PUERTO RICO INVESTORS TAX-FREE FUND VI, INC., PUERTO RICO MORTGAGE-BACKED & U.S. GOVERNMENT SECURITIES FUND, INC., TAX-FREE PUERTO RICO FUND, INC., TAX-FREE PUERTO RICO FUND II, INC., TAX-FREE PUERTO RICO TARGET MATURITY FUND, INC., Y UBS IRA SELECT GROWTH & INCOME PUERTO RICO FUND**

Por:   [firma]
John K. Cunningham
**WHITE & CASE LLP**
1221 Avenue of the
Americas New York,
NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113

*Abogados de los Fondos de Puerto Rico*

[Hoja de firmas para la Estipulación de Tenedores de Bonos SRE — 2 de abril de 2021]

**WHITEHAVEN CREDIT OPPORTUNITIES
MASTERFUND, LTD**


Por: ___[firma]___
Douglas S. Mintz
**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, NY 10022
Tel. (212) 756-2000

*Abogados de Whitehaven Credit Opportunities Master
Fund Ltd*

[Hoja de firmas para la Estipulación de Tenedores de Bonos SRE — 2 de abril de 2021]

**Anexo A**

**Tenencias de Bonos SRE de los Fondos de Andalusian**

Andalusian Global Designated Activity Company:

| CUSIP | Descripción | Monto |
|---|---|---|
| 29216MAF7 | Bono a plazo | 2,240,000 |
| 29216MBA7 | Bono a plazo | 5,000,000 |
| 29216MAH3 | Bono a plazo | 4,500,000 |
| 29216MAC4 | Bono a plazo | 31,000,000 |
| 29216MBN9 | Bono a plazo | 1,185,000 |
| 29216MAL4 | Bono a plazo | 13,100,000 |
| 29216MAD2 | Bono a plazo | 19,000,000 |
| 29216MBP4 | Bono a plazo | 12,500,000 |
| 29216MAN0 | Bono a plazo | 3,275,000 |
| 29216MBF6 | Bono a plazo | 5,800,000 |
| 29216MBG4 | Bono a plazo | 35,520,000 |
| 29216MAQ3 | Bono a plazo | 45,075,000 |
| 29216MBH2 | Bono a plazo | 12,500,000 |
| 29216MAE0 | Bono a plazo | 15,275,000 |
| 29216MBJ8 | Bono a plazo | 5,000,000 |

Crown Managed Accounts para y en nombre de Crown/PW SP, Cartera Segregada de Investment Opportunities  SPC Investment Opportunities  3, LMA SPC para y en nombre de la Cartera Segregada de Map 98, Oceana Master Fund Ltd, Pentwater Merger Arbitrage Master Fund Ltd., Pentwater Unconstrained Master Fund Ltd., PWCM Master Fund Ltd., y Pentwater Credit Master Fund Ltd.

| CUSIP | Descripción | Monto |
|---|---|---|
| 29216MAC4 | Bono a plazo | 80,835,000 |
| 29216MAD2 | Bono a plazo | 3,605,000 |
| 29216MAF7 | Bono a plazo | 7,229,000 |
| 29216MAK6 | Bono a plazo | 7,975,000 |
| 29216MAL4 | Bono a plazo | 4,680,000 |
| 29216MAM2 | Bono a plazo | 11,495,000 |
| 29216MAN0 | Bono a plazo | 15,900,000 |
| 29216MAP5 | Bono a plazo | 3,835,000 |
| 29216MAQ3 | Bono a plazo | 1,000,000 |
| 29216MBA7 | Bono a plazo | 680,000 |
| 29216MBB5 | Bono a plazo | 5,385,000 |
| 29216MBC3 | Bono a plazo | 11,405,000 |
| 29216MBF6 | Bono a plazo | 4,000,000 |
| 29216MBG4 | Bono a plazo | 7,845,000 |
| 29216MBH2 | Bono a plazo | 10,000,000 |
| 29216MBJ8 | Bono a plazo | 19,675,000 |
| 29216MBL3 | Bono a plazo | 18,950,000 |
| 29216MBN9 | Bono a plazo | 1,215,000 |

| | | |
|---|---|---|
| 29216MBP4 | Bono a plazo | 31,655,000 |
| 29216MAB6 | CAB | 43,725,000 |
| 29216MAT7 | CAB | 12,945,000 |
| 29216MAU4 | CAB | 88,860,000 |
| 29216MAX8 | CAB | 4,025,000 |

Oaktree-Forrest Multi-Strategy  LLC (Serie B), Oaktree Opportunities  Fund IX, L.P., Oaktree
Opportunities  Fund IX (Parallel), L.P., Oaktree Opportunities  Fund IX (Parallel 2), L.P., Oaktree
Opportunities  Fund X Holdings  (Delaware), L.P., Oaktree Huntington  Investment Fund II, L.P.,
Oaktree Opportunities  Fund X, L.P., Oaktree Opportunities  Fund X (Parallel), L.P., Oaktree
Opportunities  Fund X (Parallel 2), L.P., Oaktree Opps X Holdco Ltd, Oaktree Value Opportunities
Fund Holdings,  L.P., y Opps Culebra Holdings,  L.P.:

| CUSIP | Descripción | Monto |
|---|---|---|
| 29216MAC4 | Bono a plazo | 47,015,000 |
| 29216MAD2 | Bono a plazo | 11,340,000 |
| 29216MAF7 | Bono a plazo | 10,655,000 |
| 29216MAK6 | Bono a plazo | 27,170,000 |
| 29216MAL4 | Bono a plazo | 1,125,000 |
| 29216MAN0 | Bono a plazo | 2,160,000 |
| 29216MAP5 | Bono a plazo | 16,260,000 |
| 29216MAQ3 | Bono a plazo | 3,920,000 |
| 29216MBA7 | Bono a plazo | 24,120,000 |
| 29216MBB5 | Bono a plazo | 24,865,000 |
| 29216MBC3 | Bono a plazo | 16,765,000 |
| 29216MBD1 | Bono a plazo | 16,980,000 |
| 29216MBE9 | Bono a plazo | 10,760,000 |
| 29216MBJ8 | Bono a plazo | 17,985,000 |
| 29216MBL3 | Bono a plazo | 1,740,000 |
| 29216MBN9 | Bono a plazo | 805,000 |

Mason Capital Master Fund LP y Mason Capital SPV III, LLC:

| CUSIP | Descripción | Monto |
|---|---|---|
| 29216MAF7 | Bono a plazo | 28,440,000 |
| 29216MBL3 | Bono a plazo | 800,000 |
| 29216MAG5 | Bono a plazo | 3,000,000 |
| 29216MAC4 | Bono a plazo | 128,260,000 |
| 29216MAK6 | Bono a plazo | 75,545,000 |
| 29216MAL4 | Bono a plazo | 11,235,000 |
| 29216MAD2 | Bono a plazo | 2,403,000 |
| 29216MAM2 | Bono a plazo | 2,165,000 |
| 29216MBA7 | Bono a plazo | 3,920,000 |
| 29216MBN9 | Bono a plazo | 7,270,000 |
| 29216MBB5 | Bono a plazo | 5,000,000 |
| 29216MBC3 | Bono a plazo | 10,240,000 |
| 29216MBE9 | Bono a plazo | 2,595,000 |
| 29216MBP4 | Bono a plazo | 50,625,000 |
| 29216MAN0 | Bono a plazo | 340,000 |
| 29216MAQ3 | Bono a plazo | 850,000 |
| 29216MBG4 | Bono a plazo | 13,875,000 |
| 29216MBH2 | Bono a plazo | 15,000,000 |
| 29216MBJ8 | Bono a plazo | 13,216,000 |
| 29216MAT7 | CAB | 3,700,000 |

| | | |
|---|---|---|
| 29216MAA8 | CAB | 10,000 |
| 29216MAB6 | CAB | 10,000,000 |
| 29216MAU4 | CAB | 40,000,000 |
| 29216MAV2 | CAB | 54,955,000 |
| 29216MAW0 | CAB | 27,900,000 |
| 29216MAY6 | CAB | 10,000,000 |
| 29216MAC4 | Bono a plazo | 25,000,000 |
| 29216MAL4 | Bono a plazo | 425,000 |
| 29216MAD2 | Bono a plazo | 1,202,000 |
| 29216MBC3 | Bono a plazo | 1,500,000 |
| 29216MAN0 | Bono a plazo | 10,000,000 |
| 29216MAP5 | Bono a plazo | 685,000 |
| 29216MBG4 | Bono a plazo | 7,585,000 |
| 29216MBJ8 | Bono a plazo | 1,539,000 |

Ocher Rose, L.L.C.:

| CUSIP | Descripción | Monto |
|---|---|---|
| 29216MBH2 | Bono a plazo | 9,500,000 |
| 29216MBP4 | Bono a plazo | 9,485,000 |
| 29216MBG4 | Bono a plazo | 8,250.000 |
| 29216MBL3 | Bono a plazo | 7,930,000 |
| 29216MBF6 | Bono a plazo | 7,225,000 |
| 29216MAP5 | Bono a plazo | 6,700,000 |
| 29216MAL4 | Bono a plazo | 6,000,000 |
| 29216MAE0 | Bono a plazo | 4,900,000 |
| 29216MAX8 | CAB | 3,445,000 |
| 29216MBE9 | Bono a plazo | 2,200,000 |
| 29216MBA7 | Bono a plazo | 2,100.000 |
| 29216MBD1 | Bono a plazo | 1,500,000 |

Redwood Master Fund, Ltd:

| CUSIP | Descripción | Monto |
|---|---|---|
| 29216MAV2 | CAB | 14,410,000 |
| 29216MAW0 | CAB | 13,000,000 |

SV Credit, L.P.:

| CUSIP | Descripción | Monto |
|---|---|---|
| 29216MBF6 | Bono a plazo | 4,250,000 |
| 29216MBH2 | Bono a plazo | 4,375,000 |
| 29216MAB6 | CAB | 50,000,000 |
| 29216MAU4 | CAB | 27,835,000 |

**Anexo B**

**Tenencias de Bonos SRE de los Fondos de Puerto Rico**

| Cusip | Tipo | Valor nominal |
|---|---|---|
| 29216MAF7 | Pago al contado | $810,000 |
| 29216MAJ9 | Pago al contado | $4,000,000 |
| 29216MAC4 | Pago al contado | $16,200,000 |
| 292I6MAK6 | Pago al contado | $25,240,000 |
| 29216MAL4 | Pago al contado | $34,180,000 |
| 29216MAM2 | Pago al contado | 6,400,000 |
| 29216MAN0 | Pago al contado | $43,275,000 |
| 29216MAP5 | Pago al contado | $43,175,000 |
| 29216MAQ3 | Pago al contado | $11,550,000 |
| 29216MAE0 | Pago al contado | $60,575,000 |
| 29216MBA7 | Pago al contado | $61,850,000 |
| 29216MBB5 | Pago al contado | $25,855,000 |
| 29216MBC3 | Pago al contado | $10,515,000 |
| 29216MBD1 | Pago al contado | $30,090,000 |
| 29216MBE9 | Pago al contado | $25,865,000 |
| 29216MBF6 | Pago al contado | $67,250,000 |
| 29216MBG4 | Pago al contado | $22,210,000 |
| 29216MBH2 | Pago al contado | $16,585,000 |
| 29216MBJ8 | Pago al contado | $40,625,000 |

| | | |
|---|---|---|
| **29216MAT7** | **CAB** | **$19,835,000** |
| **29216MAU4** | **CAB** | **$14,435,000** |
| **29216MAV2** | **CAB** | **$31,990,000** |
| **29216MAW0** | **CAB** | **$37,020,000** |
| **29216MAX8** | **CAB** | **$49,380,000** |
| **29216MAY6** | **CAB** | **$99,485,000** |
| **29216MAZ3** | **CAB** | **$123,055,000** |
| **29216MBN9** | **Pago al contado** | **$2,270,000** |
| **29216MBP4** | **Pago al contado** | **$3,350,000** |

122793696v5

## Anexo C

**Tenencias de Bonos SRE de los Fondos de Whitehaven**

| | | | |
|---|---|---|---|
| 29,850,000 | RETIRO EMPLEADOS-A | 5.85 | 01/07/2023 |
| 9,475,000 | RETIRO EMPLEADOS-C | 6.15 | 01/07/2028 |
| 4,245,000 | RET EMP-B-PENSI SR | 6.3 | 01/07/2036 |
| 3,000,000 | RET EMP-B-PENSI SR | 6.3 | 01/07/2037 |
| 33,885,000 | RETIRO EMPLEADOS-A | 6.15 | 01/07/2038 |
| 8,020,000 | RET EMP-B-PENSI SR | 6.3 | 01/07/2038 |
| 19,080,000 | RETIRO EMPLEADOS-A | 6.2 | 01/07/2039 |
| 10,335,000 | RET EMP-B-PENSI SR | 6.3 | 01/07/2039 |
| 16,765,000 | RETIRO EMPLEADOS-A | 6.2 | 01/07/2040 |
| 16,675,000 | RETIRO EMPLEADOS-A | 6.2 | 01/07/2042 |
| 7,040,000 | RETIRO EMPLEADOS-C | 6.3 | 01/07/2043 |
| 1,000,000 | RET EMP-B-PENSI SR | 6.55 | 01/07/2057 |
| 14,725,000 | RETIRO EMPLEADOS-A | 6.45 | 01/07/2057 |
| 11,750,000 | RETIRO EMP-B-PENSI SR | 6.55 | 01/07/2058 |

122793696v5

<u>**Anexo D**</u>

**Formulario de Acuerdo de Acumulación**

## FORMULARIO DE ACUERDO DE ACUMULACIÓN

El presente ACUERDO DE ACUMULACIÓN (la "Acumulación") a la *Estipulación Enmendada y Reformulada (A) que permite las reclamaciones de los Tenedores de Bonos SRE, (B) que paraliza los litigios pendientes y (D) que establece el tratamiento de las reclamaciones de los Tenedores de Bonos SRE y la desestimación de los litigios pendientes a tenor con un plan de ajuste* (la "Estipulación" con sus enmiendas, complementos u otros), de fecha 1 de abril de 2021 por las Partes de esta y los demás tenedores de Bonos SRE que periódicamente celebren una Acumulación, es firmado y entregado por (el "Tenedor de Bonos SRE en la Acumulación") al_____ de 2021. Los términos con mayúsculas que se usan en este documento, pero cuya definición no se estipula en él, tendrán el significado que se les atribuye en la Estipulación.

1.      Acuerdo de vinculación: El Tenedor de Bonos SRE en la Acumulación por el presente acepta como vinculantes todos los términos y disposiciones de la Estipulación. El Tenedor de Bonos SRE en la Acumulación se considerará en lo sucesivo un "Tenedor de Bonos SRE" y una "Parte" para todos los fines en virtud de la Estipulación, incluyendo, entre otros y para evitar dudas, con respecto a los Bonos SRE que posea el Tenedor de Bonos SRE en la Acumulación a la fecha de esta Estipulación.

2.      Declaraciones y garantías y convenios. Con respecto al monto de capital total de cualquier bono SRE que posea el Tenedor de Bonos SRE en la Acumulación, incluyendo, entre otros, la consumación de cualquier Transferencia pendiente, el Tenedor de Bonos SRE en la Acumulación por el presente (a) realiza, a la fecha del presente, las declaraciones y garantías de los "Tenedores de Bonos SRE" establecidas en la Estipulación, y (b) se compromete a cumplir todos los convenios de los "Tenedores de Bonos SRE" establecidos en la Estipulación.

3.      Notificación de acumulación. El Tenedor de Bonos SRE en la Acumulación se compromete a enviar por correo electrónico una copia firmada de la Acumulación a los abogados de la Junta de Supervisión, Brian S. Rosen, (brosen@proskauer.com) Steve Ma (sma@proskauer.com) y Joshua A. Esses (jesses@proskauer.com), Proskauer Rose LLP, 11 Times Square, New York, NY 10036, dentro de los tres (3) días calendario siguientes a la firma de esta Acumulación.

EN FE DE LO CUAL, el Tenedor de Bonos SRE en la Acumulación ha hecho que se firme la presente Acumulación en la fecha indicada anteriormente.

[NOMBRE DEL ADQUIRENTE CALIFICADO]

Por:_____
        Nombre:
        Cargo:

Tenedor de monto de capital total de Bonos SRE: $_____