# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' REPLY IN SUPPORT OF URGENT MOTION TO COMPEL DISCLOSURE STATEMENT DISCOVERY FROM OVERSIGHT BOARD AND AAFAF

---

[1] The Debtors in these jointly-administered Title III cases, along with each Debtor's respective Title III case number (listed as a bankruptcy case number due to software limitations) and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ..................................................................................................... 4

I.     DISCLOSURE STATEMENT DISCOVERY IS APPROPRIATE ................................. 4

II.    COMMITTEE'S REQUESTS ARE APPROPRIATE AND PROPORTIONAL
UNDER THE CIRCUMSTANCES ....................................................................... 7

III.   OVERSIGHT BOARD HAS NOT ALREADY PROVIDED SUFFICIENT
INFORMATION IN RESPONSE TO MOST OF THE REQUESTS ........................... 11

IV.   COMMITTEE IS ENTITLED TO DISCOVERY FROM AAFAF .............................. 12

V.    COMMITTEE IS ENTITLED TO TAKE DEPOSITIONS ..................................... 13

CONCLUSION................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 3DFX Interactive, Inc.*,
No. 02-55795 JRG, 2006 WL 2010786 (Bankr. N.D. Cal. June 29, 2006)..............................4

*In re Comandante Mgmt. Co.*,
359 B.R. 410 (Bankr. D.P.R. 2006) .....................................................................................5

*County of Orange v. Merrill Lynch (In re County of Orange)*,
191 B.R. 1005 (Bankr. C.D. 1996) .......................................................................................8

*In re Ferretti*,
128 B.R. 16 (Bankr. D.N.H. 1991) ........................................................................................6

*In re FirstEnergy Sols. Corp.*,
606 B.R. 720 (Bankr. N.D. Ohio 2019) ................................................................................5

*Franklin High Yield Tax-Free Income Fund v. City of Stockton (In re City of Stockton)*,
542 B.R. 261 (9th Cir. B.A.P. 2015)......................................................................................9

*In re Fullmer*,
No. 09-50086-RLJ-11, 2009 WL 2778303 (Bankr. N.D. Tex. Sept. 2, 2009) ...................9, 10

*Matter of Georgetown of Kettering*,
17 B.R. 73 (S.D. Ohio 1981) ............................................................................................4, 5

*In re Larsen*,
2011 WL 1671538 (Bankr. D. Idaho May 3, 2011)...............................................................5

*In re Mahoney Hawkes, LLP*,
289 B.R. 285 (Bankr. D. Mass. 2002) ..................................................................................5

*In re Monroe Well Serv., Inc.*,
80 B.R. 324 (Bankr. E.D. Pa. 1987) .....................................................................................6

*In re Mount Carbon Metro. Dist.*,
242 B.R. 18 (Bankr. D. Colo. 1999) .....................................................................................8

*Official Committee of Unsecured Creditors v. Michelson (In re Michelson)*,
141 B.R. 715 (Bankr. E.D. Cal. 1992)...................................................................................5

*In re Pecht*,
57 B.R. 137 (Bankr. E.D. Va. 1986).....................................................................................5

*In re Pierce Cty. Hous. Auth.*,
    414 B.R. 702 (Bankr. W.D. Wash. 2009), *as amended* (Aug. 24, 2009) ................................8

*In re Price Funeral Home, Inc.*,
    2008 Bankr. LEXIS 3462 (Bankr. E.D.N.C. Dec. 12, 2008).....................................................5

*In re Sanders*,
    2015 Bankr. LEXIS 3987 (Bankr. S.D. Miss. Nov. 23, 2015) ..................................................5

*In re Scioto Valley Mortg. Co.*,
    88 B.R. 168 (Bankr. S.D. Ohio 1988).......................................................................................6

*In re Vega*,
    No. 09-08785, 2010 WL 3282656 (Bankr. D.P.R. Aug. 17, 2010)...........................................6

*In re Waterville Timeshare Grp.*,
    67 B.R. 412 (Bankr. D.N.H. 1986) ...........................................................................................5

*Wylie v. Stipes*,
    No. 08-1036 (GAG), 2010 WL 11580051 (D.P.R. Aug. 18, 2010) .......................................13

**Statutes**

Bankruptcy Code section 1103(c)(3) ..............................................................................1, 3, 6, 10

Bankruptcy Code section 1125(a)........................................................................................................7

**Other Authorities**

Bankruptcy Rule 205 ..............................................................................................................................4

Fed. R. Bankr. P. 2004...........................................................................................................................5

Fed. R. Bankr. P. 3013...........................................................................................................................6

Fed. R. Bankr. P. 7030...........................................................................................................................5

Fed. R. Bankr. P. 7034......................................................................................................................5, 12

Fed. R. Civ. P. 34(b)(2)(B) .................................................................................................................13

H.R. Rep. No. 595, 95th Cong. 1st Sess. 401 ...................................................................................10

To the Honorable United States Magistrate Judge Judith Gail Dein:

The Official Committee of Unsecured Creditors (the "Committee")[2] respectfully submits this reply (the "Reply") in support of its *Urgent Motion to Compel Disclosure Statement Discovery from Oversight Board and AAFAF* [Docket No. 16811] (the "Motion to Compel"), and in response to the *Objection of the Financial Oversight and Management Board for Puerto Rico to Urgent Motion of the Official Committee of Unsecured Creditors to Compel Discovery in Connection with the Third Amended Disclosure Statement* [Docket No. 16883] ("FOMB Opp.") and *AAFAF's Omnibus Opposition to the Official Committee of Unsecured Creditors', Ambac Assurance Corporation's, and Financial Guaranty Insurance Company's Motions to Compel Disclosure Statement Discovery* [Docket No. 16878] ("AAFAF Opp.").

## PRELIMINARY STATEMENT

1.      The Committee is uniquely situated in these Title III cases in that it does not, itself, vote on a plan of adjustment but instead owes a fiduciary duty to its constituents to ensure that they have all the information they need to cast their own votes.[3]  The Committee also has the statutory right under section 1103(c)(3) of the Bankruptcy Code to "advise [its constituents] of [the] [C]ommittee's determinations as to any plan formulated"—*i.e.*, to recommend how they should vote on the plan.

2.      The Oversight Board appears to acknowledge this unique role of the Committee but nevertheless contends that discovery is not necessary because it is "obvious the Committee will recommend its constituents vote to reject the [Proposed Plan]."  FOMB Opp. ¶ 1.  This argument misses the mark.  The Committee will, indeed, recommend that unsecured creditors

---

[2]     The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3]     Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion to Compel.

reject the Proposed Plan in its current form, but that recommendation must be detailed and informed by all the relevant facts.  The Committee cannot simply direct unsecured creditors how to vote.  All the Committee can do—and what it must do in accordance with its fiduciary duties—is empower them to make an ***independent voting decision based on their own assessment of the Proposed Plan***.  This is why the contents of the Disclosure Statement are so critical and why it is so important for the Committee to obtain the information it seeks through discovery.  Creditors need this information to cast fully-informed votes.

3.       Aside from the misguided, strawman argument that the Committee does not need discovery because it has already decided to recommend voting against the Proposed Plan, the Oversight Board's main responses to the Motion to Compel are that (i) the Committee's requests are overbroad and not relevant to the Disclosure Statement hearing, and (ii) the Oversight Board has already produced thousands of documents to the Disclosure Statement electronic document depository (the "Depository") and/or has agreed to consider making additional disclosures in the Disclosure Statement.  Neither of these arguments has merit.

4.       As for the substance of the Committee's requests, the Oversight Board feigns surprise at receiving "*76 separate document requests*."  FOMB Opp. ¶ 2.  But, as discussed in the Motion to Compel, the quantum of requests is immaterial—what matters is whether they are proportional to the needs of this dispute.  Here, given the density and complexity of the more than 500-page Disclosure Statement (without exhibits) and the fact that this is the largest municipal (or territorial) bankruptcy case in U.S. history, it should not be surprising to anyone, least of all the Oversight Board, that the Committee has served several dozen requests to help it evaluate the adequacy of the information contained in the Disclosure Statement.

5.      In arguing that the Committee's requests are inappropriate, the Oversight Board
and AAFAF cite to inapposite case law and misconstrue entirely what it means for a Disclosure
Statement to contain adequate information.  They also improperly conflate plan confirmation
issues with disclosure statement issues and contend that any request implicating the former is *per
se* improper at the disclosure statement stage.  This is incorrect.  Unsecured creditors need
adequate information concerning a host of key issues—including the fairness of proposed
settlements, the treatment of their claims compared to the treatment of other creditors' claims,
and whether the Commonwealth has additional assets available for distribution—to decide how
to vote on the Proposed Plan, even if similar issues may be litigated at confirmation.  The
Committee is particularly entitled to receive information regarding the development of the
Proposed Plan where—as was the case here, and in contravention of section 1103(c)(3) of the
Bankruptcy Code, which provides that an official committee is entitled to "participate in the
formulation of a plan"—the Committee was excluded from plan negotiations.

6.      While it is true that the Oversight Board has uploaded many documents to the
Depository, they are largely documents of the Oversight Board's own choosing, without regard
to their responsiveness to the Committee's requests.  These documents therefore do not satisfy
the Oversight Board's discovery obligations.  The Oversight Board also notes that it has agreed
to meet and confer with the Committee to potentially resolve certain of its concerns through
additions or revisions to the Disclosure Statement.  While the Committee appreciates this offer,
the Oversight Board cannot avoid its discovery obligations by simply proposing additional
disclosures.  The Committee still needs discovery to test whether the Oversight Board's proposed
further disclosures are complete and accurate.

7.      For these reasons and those discussed below and in **Appendix A** hereto, which

addresses each individual document request, the Committee asks that the Oversight Board's and

AAFAF's objections be overruled and the Motion to Compel be granted in full.

## ARGUMENT

## I.      DISCLOSURE STATEMENT DISCOVERY IS APPROPRIATE

8.      The Government Parties do not dispute that an objection to a disclosure statement

creates a contested matter that is subject to all of the normal rules of civil discovery.  *See*

AAFAF Opp. ¶ 10 (citing *In re Catholic Bishop of N. Alaska*, No. F08-00110-DMD, 2009 WL

8412170 (Bankr. D. Alaska July 20, 2009)).  Nor do they dispute that many courts have

permitted disclosure statement discovery to proceed in cases that are both smaller and simpler

than these Title III cases.  *See, e.g.*, FOMB. Opp. ¶ 24 (citing *In re Ponce de Leon 1403, Inc.*,

2012 WL 5880443, at *2 (Bankr. D.P.R. Nov. 20, 2012); *In re Hutch Holdings, Inc.*, 2014 WL

7408816, at *2 (Bankr. S.D. Ga. Dec. 30, 2014)); AAFAF Opp. ¶ 11 (discussing *In re 3DFX*

*Interactive, Inc.*, No. 02-55795 JRG, 2006 WL 2010786 (Bankr. N.D. Cal. June 29, 2006)).

Instead, the Government Parties contend that disclosure statement discovery is not "typically

necessary" (AAFAF Opp. ¶¶ 2, 5), while ignoring that these cases are far from "typical."

9.      For example, the Government Parties cite to *Matter of Georgetown of Kettering*,

17 B.R. 73 (S.D. Ohio 1981), in support of the proposition that "expansive" discovery requests

should be denied when the requesting party has not yet filed a formal objection to a Disclosure

Statement.  AAFAF Opp. ¶ 1; FOMB Opp. ¶ 24.  *Georgetown of Kettering* involved the

bankruptcy of a single partner limited partnership; it was nothing like these Title III cases in

terms of its complexity and the issues it involved.  Moreover, the question in *Georgetown of*

*Kettering* was whether former Bankruptcy Rule 205 (which was replaced by current Bankruptcy

Rule 2004) applied to disclosure statement discovery.  The Committee is not seeking discovery

pursuant to Bankruptcy Rule 2004 here.  The Committee is seeking discovery pursuant to

Bankruptcy Rules 7030 and 7034, which unquestionably apply to a contested matter such as this

one.[4]  *Georgetown Kettering* is therefore inapposite.

10.     Likewise, AAFAF quotes *Official Committee of Unsecured Creditors v.*

*Michelson (In re Michelson)*, 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992), for the proposition that

"the court does not conduct an independent investigation and relies upon its reading of the

[disclosure statement] for apparent completeness and intelligibility. . . ."  AAFAF Opp. ¶ 7.  But

what AAFAF omits from the quoted language is the concluding phrase "as well as the objections

raised by parties in interest."  *In re Michelson*, 141 B.R. at 719.  The Committee's discovery is in

direct aid of its objection to the Disclosure Statement.

11.     The Government Parties' other cases are similarly inapposite or distinguishable:

- Several involve debtors with few assets or liabilities, and thus are inapplicable to a case of this magnitude and complexity.  *See In re Price Funeral Home, Inc.*, 2008 Bankr. LEXIS 3462 (Bankr. E.D.N.C. Dec. 12, 2008) (debtor operated a single funeral home); *In re Larsen*, 2011 WL 1671538, at *2 n.7 (Bankr. D. Idaho May 3, 2011) (debtor had $1.1 million in assets and $700,000 in debts); *In re Waterville Timeshare Grp.*, 67 B.R. 412, 414 (Bankr. D.N.H. 1986) (the court "must approve or disapprove disclosure statements in various Chapter 11 proceedings on a weekly basis").

- Others address the issue of whether the Court is required to look beyond the face of the plan to determine whether it is "patently unconfirmable" at the disclosure statement stage (FOMB Opp. ¶¶ 26-27, 29). *See In re Comandante Mgmt. Co.*, 359 B.R. 410, 415 (Bankr. D.P.R. 2006); *In re Mahoney Hawkes, LLP*, 289 B.R. 285, 294 (Bankr. D. Mass. 2002); *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986); *In re FirstEnergy Sols. Corp.*, 606 B.R. 720, 732 (Bankr. N.D. Ohio 2019).  The Committee's requests go to whether the Disclosure Statement contains adequate information, not its patent unconfirmability.

- Still others stand for uncontroversial propositions, including (1) the disclosure statement need not be "perfect" (*see, e.g.*, *In re Price Funeral Home, Inc.*, 2008 Bankr. LEXIS 3462, at *5 (Bankr. E.D.N.C. Dec. 12, 2008); *In re Sanders*, 2015 Bankr. LEXIS 3987, at *15-16 (Bankr. S.D. Miss. Nov. 23, 2015); or (2) the purpose of the disclosure statement

---

[4]     Moreover, for the reasons noted above and already discussed in the Motion to Compel, contrary to the court's suggestion in *Georgetown Kettering*, the Committee could not have waited until after filing its objection to the Disclosure Statement to seek discovery—there simply is not enough time for that under the litigation schedule.

is to provide adequate information.  *See In re Ferretti,* 128 B.R. 16 (Bankr. D.N.H. 1991) and *In re Scioto Valley Mortg. Co.,* 88 B.R. 168 (Bankr. S.D. Ohio 1988).

12.      In addition, some of the Government Parties' cases discuss issues that are moot given the procedural history of these cases.  For example, the holding of the court in *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987), that relative creditor treatment issues need not be addressed at the disclosure statement stage is irrelevant here, given that this Court has already held (in denying the Committee's standalone Bankruptcy Rule 3013 motion without prejudice) that the Committee's reclassification arguments should be raised "in the objection to the proposed Disclosure Statement."  *See* Mot. ¶ 41.[5]  The Committee is thus unquestionably entitled to discovery regarding at least classification issues.

13.      Finally, in contending that discovery is unnecessary, the Government Parties all but ignore the unique and important role the Committee plays in these Title III cases.  Under section 1103(c)(3) of the Bankruptcy Code, the Committee is entitled to "participate in the formulation of a plan [and] ***advise those represented by such committee of such committee's determinations as to any plan formulated***."  11 U.S.C. § 1103(c)(3) (emphasis added).  The Committee cannot fulfill this important responsibility without first obtaining sufficient information to not only make its recommendation but also to explain in detail the basis for that recommendation, based on facts, not rhetoric, so that creditors can make their own informed voting decisions on the Proposed Plan.

---

[5]    As AAFAF notes, the court in *In re Vega*, No. 09-08785, 2010 WL 3282656, at *1 (Bankr. D.P.R. Aug. 17, 2010), permitted discovery regarding a party "being classified as an 'insider' by Debtor" under a plan.

## II.   COMMITTEE'S REQUESTS ARE APPROPRIATE AND PROPORTIONAL UNDER THE CIRCUMSTANCES

14.     The Oversight Board's most common response to the Committee's requests for production is that the requests are not relevant to the approval of the Disclosure Statement—indeed, the Oversight Board takes that position with respect to 41 of the 76 requests.  In the discussion that follows, the Committee endeavors to address the Oversight Board's main arguments with respect to relevance.  The Committee has also attached hereto as **Appendix A** (as did the Oversight Board to its objection) a chart summarizing the parties' positions as to each of the individual document requests.

15.     ***All of the requests relate to a legitimate Disclosure Statement issue—namely, whether it contains adequate information—not to plan confirmation.***  The Oversight Board contends that certain requests raise only plan confirmation issues.  For example, the Oversight Board states that Request No. 22 relates only to plan confirmation because it seeks "information concerning an assessment of the maximum amount the Debtors are capable of paying unsecured creditors under [the Proposed Plan]."  FOMB Opp. ¶ 48.  This is a confirmation issue, the Oversight Board says, because section 1125(a) of the Bankruptcy Code states that adequate information in a disclosure statement need not include information about any possible or proposed alternative plan.  *Id.*  This misunderstands the request.  Unsecured creditors voting on the Proposed Plan need to know if the Commonwealth could afford to increase payments to unsecured creditors under the current Proposed Plan, not an alternative one.[6]  Moreover, the fact that a request seeks information touching on confirmation issues, such as feasibility,[7] does not

---

[6]     *See also* Mot. Ex. 2, Request No. 53 (seeking information regarding disclosures as to available recovery for ERS unsecured creditors).

[7]     *See, e.g.*, Mot. Ex. 2, Request No. 15 (seeking information regarding disclosures as to whether the Commonwealth will be able to pay its debts under the Proposed Plan when they come due).

7

mean it is irrelevant to an evaluation of the Disclosure Statement.  Where a disclosure statement

fails to provide adequate information regarding a plan issue, discovery is appropriate regardless

of whether that issue will ultimately be litigated at confirmation.

16.     ***Documents regarding the value of Commonwealth and public corporation***

***assets are relevant to the Disclosure Statement.***[8]  The Oversight Board takes the novel position

that asset valuations—and the availability of assets to satisfy claims of creditors—are entirely

irrelevant to a municipal bankruptcy.  The law is to the contrary.  Although the Committee does

not dispute that "a Chapter 9 bankruptcy is somewhat unique," "[o]ne responsibility [the court in

chapter 9] does have . . . is to ensure that the [proposed plan] meets the requirements of

confirmation."  *In re Pierce Cty. Hous. Auth.*, 414 B.R. 702, 721 (Bankr. W.D. Wash. 2009), *as

amended* (Aug. 24, 2009).  This requires a showing that the proposed "plan treat[s] all creditors

fairly with the focus on the totality of the circumstances."  *Id.* (citation omitted).  As such,

"[w]hile the best interests of the creditors test is an elusive standard in Chapter 9, nevertheless

the concept is not without meaning . . . ."  *County of Orange v. Merrill Lynch (In re County of

Orange)*, 191 B.R. 1005, 1020 (Bankr. C.D. 1996) (citation omitted).  Bankruptcy "courts must

apply the test to require ***a reasonable effort by the municipal debtor***" to repay its creditors.  *Id.*

(as modified and as emphasized).[9]

17.     Accordingly, even though the purpose of chapter 9 is different than chapter 11,

and a chapter 9 debtor cannot be liquidated, the Committee's requests are still relevant to a key

factual inquiry the Court must undertake.  Specifically, the Court must determine whether the

---

[8]     *See* Mot. Ex. 2, Request Nos. 42, 43, 44, 45, 46, 47, 48, and 54; Mot. Ex. 10, Request Nos. 12 and 13.

[9]     "The 'best interest' test has been described as a floor requiring a reasonable effort at payment of creditors by the
        municipal debtor. . . ."  *In re Pierce Cty. Hous. Auth.*, 414 B.R. at 718 (internal references and quotation marks
        omitted); *see also In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 34 (Bankr. D. Colo. 1999) ("best interest test
        acts as a floor requiring a reasonable effort at payment of creditors by the municipal debtor").

Proposed Plan is "the 'best' available proposal for the [Commonwealth] to pay its creditors while maintaining its capacity over time to provide essential services to its citizens . . . ." *Franklin High Yield Tax-Free Income Fund v. City of Stockton (In re City of Stockton)*, 542 B.R. 261, 286 (9th Cir. B.A.P. 2015). This is "a factual finding for the [Court] to make in light of the evidence before it." *Id*. The issues raised by the Committee's document requests go directly to key components of this factual inquiry: what assets are available, how is the debtor allocating available value, and what value does the Commonwealth need to retain to provide for essential services?[10] The requests are therefore highly relevant.

18.     ***Documents regarding the Oversight Board's decisions to enter into settlements are relevant to the Disclosure Statement.***[11] The Oversight Board contends that creditors do not need information concerning the rationale behind the Proposed Plan's settlements at the disclosure statement stage because the Court will not confirm a plan if the settlements are not reasonable. FOMB Opp. ¶ 52. While it is undoubtedly true that the Court will not confirm a plan if it contains unreasonable settlements, this does not mean that creditors are not entitled to independently evaluate the Oversight Board's settlements in deciding how to cast their votes on the Proposed Plan. Even if the Court believes a particular settlement is reasonable, a creditor might disagree and vote against the plan accordingly.

19.     The decision in *In re Fullmer*, No. 09-50086-RLJ-11, 2009 WL 2778303 (Bankr. N.D. Tex. Sept. 2, 2009), is instructive in this regard. In that case, contrary to the Oversight Board's assertion, the Court was squarely concerned with the sufficiency of information available to creditors in the disclosure statement. *Id*. at *2 ("creditors, particularly unsecured

---

[10]   *See* Mot. Ex. 2, Request Nos. 47 and 48 (seeking information concerning essential services).

[11]   *See* Mot. Ex. 2, Request Nos. 12, 13, 16, 19, 21, 25, 27, 28, 29, 30, 31, 32, 33, 57, 58, 59, 60; Mot. Ex. 10, Request Nos. 7 and 14.

9

creditors, would be better informed if they are aware of FCB's articulated position regarding the comprehensive settlement"). The Oversight Board notes that *Fullmer* involved the disclosure of a ***creditor's*** view of the settlement at issue and asserts that, here, the Oversight Board is similarly willing to include the Committee's views of the settlements in the Proposed Plan. But the Oversight Board fails to acknowledge that the creditor in *Fullmer* was itself the party to the settlement. *Id.* Here, the Disclosure Statement does not contain—and the Oversight Board has not offered to include—***the bondholders'*** rationales for the settlements. The Committee is not only entitled to that information (to the extent it is in the Oversight Board's possession), but also to information concerning the Oversight Board's own rationales for the settlements.[12]

20.     Indeed, the Committee is especially entitled to this discovery in light of section 1103(c)(3) of the Bankruptcy Code, which expressly provides that the Committee may "participate in the formulation of a plan." As the legislative history behind section 1103 explains, official committees were contemplated to be the primary negotiating bodies for the formulation of the plan of reorganization. H.R. Rep. No. 595, 95th Cong. 1st Sess. 401, 1978 U.S. Code Cong. & Admin. News 6357, reprinted in App. Pt. 4(d)(i). Because the Oversight Board has excluded the Committee from plan negotiations, the very least it can do now is provide after-the-fact discovery regarding such discussions.

21.     ***Post-petition payments of pre-petition unsecured claims, and the basis for such payments, are relevant to the Disclosure Statement.***[13] The Oversight Board does not contest the fact that the Commonwealth has been selectively paying the claims of certain prepetition

---

[12]    For similar reasons, the Committee is entitled to understand whether the Oversight Board is taking the position that the Proposed Plan, and the settlements it incorporates, are necessary to give the Commonwealth access to capital markets and, if so, the basis for that position. *See* Mot. Ex. 2, Request No. 49.

[13]    *See*, Mot. Ex. 2, Request Nos. 5 and 6.

unsecured creditors in full since its petition date.  The Oversight Board nevertheless contends

that this information is irrelevant to unsecured creditors voting on the Proposed Plan because the

Commonwealth had the legal right to make these payments.  This explanation is nonsensical.

Consider a simple hypothetical: under the Oversight Board's view of the world, if a plan

proposes to pay a pool of 10 unsecured creditors one cent on the dollar on their claims, it is not

relevant to those creditors to know that 1000 other similarly-situated unsecured creditors were

already paid in full on their claims.  This defies common sense: of course creditors receiving

pennies on the dollar will want to know in determining whether a proposed plan treats them

fairly that other creditors have already received full recoveries.  The information the Committee

seeks on this issue should therefore be disclosed.

### III.   OVERSIGHT BOARD HAS NOT ALREADY PROVIDED SUFFICIENT INFORMATION IN RESPONSE TO MOST OF THE REQUESTS

22.     With respect to other requests, the Oversight Board states that it either has or will

provide responsive information or that it will agree to make additional disclosures.  There are

several problems with this response.

23.     First, while the Oversight Board has provided some information to the

Committee, in nearly all cases (*see* **Appendix A**), the information provided fails to satisfy the

disclosure needs of unsecured creditors.  To begin with, it is not sufficient for the Oversight

Board to point to the approximately 11,000 documents it has uploaded to the Depository and

claim that, because it has provided such documents, it no longer needs to respond to the

Committee's discovery requests.  The Oversight Board apparently seeks to place the burden on

the Committee and other parties-in-interest to review all 11,000 documents before even

requesting discovery.  But that is not how the process works.  The Committee is entitled to serve

11

its requests, and the Oversight Board must respond to them in accordance with its obligations

under Federal Rule of Bankruptcy Procedure 7034.

24.      Second, the Oversight Board cannot avoid its discovery obligations by saying it is

willing to propose additional disclosures in the Disclosure Statement.  While the Oversight

Board's willingness to make further disclosures may resolve the Committee's objections in some

instances, the Committee needs to understand whether the proposed disclosures are complete and

accurate.  The only way for the Committee to do that is through discovery.

25.      Third, the Oversight Board's assertion that it *will provide* certain information does

not obviate the need for an order compelling disclosure.  As discussed at length in the Motion to

Compel, the Committee served its initial requests in April in an effort to build in ample time for

meeting and conferring and, if necessary, motion practice.  But the Oversight Board chose to sit

on the Committee's requests for weeks and then proposed a schedule that requires objections to

the Disclosure Statement by June 15.  As a consequence, through no fault of its own, the

Committee has no time to take a "wait and see" approach on information the Oversight Board

says it will provide voluntarily.  The Court must instead compel the Oversight Board to produce

responsive documents by a date certain to ensure that the Committee's rights in objecting to the

Disclosure Statement are preserved.

## IV.   COMMITTEE IS ENTITLED TO DISCOVERY FROM AAFAF

26.      The Committee will reiterate what it already stated in its Motion to Compel: the

Committee does not need documents from AAFAF to the extent it can obtain those same

documents from the Oversight Board.  But this does not, as AAFAF contends, obviate the need

for the Committee's requests to AAFAF or the need for motion practice related to those requests.

The problem is that the Committee does not know which (if any) of the documents it seeks are

exclusively in AAFAF's possession because neither AAFAF nor the Oversight Board has

12

provided this information.  Instead, they have either largely (in the case of the Oversight Board) or entirely (in the case of AAFAF) refused to even look for responsive documents, much less produce them to the Committee.

27.    AAFAF is now saying, for the first time, that it will "coordinate" or "cooperate" with the Oversight Board to produce documents.  AAFAF Opp. ¶¶ 3, 13.  This is a welcome change from AAFAF's wholesale refusal to even serve responses and objections to the Committee's requests.  *See* Mot. Ex. 12.[14]  But, again, the Committee has no way of knowing if AAFAF's coordination or cooperation will be sufficient.  In light of this, and given the impending June 15 objection deadline, the Court should order AAFAF to coordinate with the Oversight Board to produce non-duplicative documents responsive to the requests.

## V.    COMMITTEE IS ENTITLED TO TAKE DEPOSITIONS

28.    In addition to responses to its document requests, the Committee is entitled to a Rule 30(b)(6) deposition of the Oversight Board, as well as depositions of Oversight Board members David Skeel and Justin Peterson.  These depositions will complement the Committee's document requests by allowing the Committee to discover information that might not fully appear in documents—such as the rationale for the Oversight Board's settlements with bondholders—and to ask questions about the documents it receives.

29.    The depositions will also allow the Committee to explore the basis for the Oversight Board's decisions to separately classify certain claims in the Proposed Plan, which is

---

[14]    If AAFAF had not yet waived its objections by failing to serve specific responses and objections, it has done so now.  The Committee served its requests on AAFAF the same day it served the second set of requests on the Oversight Board.  The Oversight Board served its responses and objections to those requests 11 days ago, on May 28, 2021.  AAFAF's two-sentence objection in its May 17, 2021 letter does not preserve anything.  *See* Fed. R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must . . . state with specificity the grounds for objecting to the request, including the reasons.").  *Wylie v. Stipes*, No. 08-1036 (GAG), 2010 WL 11580051, at *1 (D.P.R. Aug. 18, 2010) (cited at AAFAF Opp. ¶ 14 n. 4) is inapposite because there was no indication that the party seeking the discovery had a true need for the documents prior to the service of the objections.

the subject of the separate classification motion pursuant to Bankruptcy Rule 3013 that the Court has directed the Committee to bring as part of its objection to the Disclosure Statement.  This motion provides an independent basis for discovery, separate and apart from the question of whether the Disclosure Statement contains adequate information.

30.      The requested depositions will not be overly burdensome, as the Oversight Board contends.  The Committee has noticed depositions of only two fact witnesses, one of whom can be the Rule 30(b)(6) witness.  The Committee is available to meet and confer regarding its Rule 30(b)(6) topics, and limits on the deposition's duration.  The Oversight Board cites to *Bogan v. City of Boston*, 489 F.3d 417 (1st Cir. 2007), to suggest that Mr. Skeel and Mr. Peterson are high ranking government officials who should not be deposed unless there is a "demonstrated need," because it will distract them from their governmental duties.  FOMB Opp. ¶ 65.  But Mr. Skeel and Mr. Peterson are not akin to mayors, governors, or other elected officials in charge of running the day-to-day operations of a city, state, or territory.  Their governmental duty is to represent the Commonwealth and other debtors in this Court, and the issue before the Court is whether the Disclosure Statement has adequate information.  There is no reason why they cannot be deposed on this very question.

[*Remainder of page intentionally left blank.*]

14

## **CONCLUSION**

WHEREFORE the Committee respectfully requests the Court enter the Proposed Order

granting the Motion to Compel and grant the Committee such other relief as is just and proper.

Dated: June 8, 2021

/s/ Luc A. Despins

PAUL HASTINGS LLP
Luc A. Despins, Esq. (*Pro Hac Vice*)
Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
G. Alexander Bongartz, Esq. (*Pro Hac Vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212)318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to Official Committee of Unsecured
Creditors*

– and –

/s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to Official Committee of Unsecured
Creditors*