**Appendix A**

**Summary of Committee Document Requests, Oversight Board Responses, and Committee Responses**

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| | | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | |
| 1. | All Documents concerning any estimate, by the FOMB or any other party, of the CW General Unsecured Claims in Class 55 of the Second Amended Plan, including all documents concerning the number and amount of such claims, the estimate in the Initial Disclosure Statement of approximately $5.5 billion in general unsecured claims, all spreadsheets, charts, and analyses created by FOMB advisors, including PJT Partners, relating to such estimate, and all drafts of and supporting data and sources for such spreadsheets, charts, and analyses. | Documents already have been provided.  The Oversight Board will produce additional responsive, non-privileged materials (*see* May 26, 2021 Letter).[1] | The Committee disputes that the Oversight Board has already produced all documents responsive to this request.  On June 4, 2021, the Oversight Board's financial advisors provided an updated claims report to the Committee's financial advisors.  The Committee's advisors are in the process of reviewing the report.  While the report appears to contain an estimate by the Oversight Board of the number and amount of claims in Class 55, the Oversight Board has not provided "all spreadsheets, charts, and analyses created by FOMB advisors, including PJT Partners, relating to such estimate, and all drafts of and supporting data and sources for such spreadsheets, charts, and analyses," which the Committee needs to evaluate the estimate. |

[1] FOMB Opp. Ex. 1.

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| 2. | Documents sufficient to show the number and amount of CW General Unsecured Claims in Class 55 that are (i) claims held by suppliers of goods and services, (ii) unliquidated litigation claims, (iii) claims resulting from judgments and settlements, (iv) claims eligible to be resolved through the proposed ACR Procedures, (v) tax refund claims, (vi) eminent domain claims, (vii) grievance claims, (viii) retiree benefit claims, (ix) claims owed to public employees for salary and benefits, and (x) claims held by governmental units or instrumentalities, including Documents sufficient to show which governmental units or instrumentalities hold such claims. | Documents already have been provided. The Oversight Board will produce additional responsive, non-privileged materials (*see* May 26, 2021 Letter). | The Committee disputes that the Oversight Board has already produced all documents responsive to this request.  On June 4, 2021, the Oversight Board's financial advisors provided an updated claims report to the Committee's financial advisors. The Committee's advisors are in the process of reviewing the report to determine if the data provided is sufficient to satisfy the request.  Based on the Committee's initial review, it appears that the information provided does not show which governmental units or instrumentalities hold the claims identified in the request. |
| 3. | All Documents concerning the FOMB's decisions as to which types of unsecured claims, including those types of claims set forth in Request No. 2, to include in or exclude from Class 55. | Documents regarding why the Oversight Board proposed one classification as opposed to others are not relevant to the adequacy of the Disclosure Statement. Bankruptcy Code section 1125(a) expressly provides adequate information does not include information about any other possible plan. | The Court has already held that the Committee's classification arguments should be raised "in the objection to the proposed Disclosure Statement." April 28, 2021 Omnibus Hr'g Tr., at 149:9-12; *see also* Order Denying the Official Committee of Unsecured Creditors' Bankruptcy Rule 3013 Motion and Related Scheduling Motion [Docket No. 16629] at 2 (expressly permitting Committee to raise its classification arguments "as objections in connection with any motion seeking approval of a |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| _First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)_ | | | |
| | | | disclosure statement or confirmation of a plan of adjustment"). <br><br> Moreover, while Section 1125(a) states that "adequate information need not include such information about any other possible or proposed plan," the information requested is not "about any other possible or proposed plan." It relates to the rationale for claim classifications in the current Proposed Plan. |
| 4. | Documents sufficient to show the estimated cost of solicitation of creditors' votes in connection with the Second Amended Disclosure Statement and Second Amended Plan. | Cost of solicitation is not voted on. Therefore, documents regarding the Oversight Board's decisions are not relevant to the adequacy of the Disclosure Statement. | At the hearing on July 13, 2021, in addition to seeking approval of the Disclosure Statement, the Oversight Board is requesting approval of solicitation procedures. The estimated costs associated with those proposed procedures are relevant to the Committee's assessment of whether the procedures are appropriate. Moreover, when considering threshold issues such as the Proposed Plan's classification of claims, it is relevant for parties and the Court to know the cost that would be incurred in soliciting votes for a plan that is, on its face, unconfirmable. |
| 5. | Documents sufficient to show all payments made by the Commonwealth since its Title III petition date (_i.e._, May 3, 2017) to creditors on account of prepetition unsecured claims, to the extent that any such payment or payments to a particular creditor | Congress did not make Bankruptcy Code section 363 governing the use, sale, and lease of a debtor's property applicable to Title III. Therefore, documents regarding the Government's pre-plan use are not | The Committee seeks information regarding post-petition payments made by the Commonwealth on account of pre-petition unsecured claims. Unsecured creditors who have not been paid in full are entitled to understand before voting on the Proposed Plan why the Oversight Board has chosen to pay certain pre-petition unsecured claims in full. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| | exceeds $1 million? (whether a single payment or the aggregate amount of a series of payments to a particular creditor), including (i) the identity of the recipient of each such payment, (ii) the amount of each such payment and the aggregate amount of all such payments, and (iii) the nature of the services or goods provided or other basis for each such payment. | relevant to the adequacy of the Disclosure Statement. | The fact that section 363 has not been incorporated into PROMESA does not mean that such information is not relevant to the Disclosure Statement. *See Official Committee of Unsecured Creditors' Reply in Support of Urgent Motion to Compel Disclosure Statement Discovery from Oversight Board and AAFAF* (the "<u>Reply</u>") ¶ 21. |
| 6. | All Documents concerning the basis for the Commonwealth paying certain prepetition unsecured claims but not other prepetition unsecured claims following the Commonwealth's Title III petition date (*i.e.*, May 3, 2017), including Documents relating to (i) whether or not the FOMB approved of such payments and (ii) the policy considerations underlying the decisions to make such payments. | Congress did not make Bankruptcy Code section 363 governing the use, sale, and lease of a debtor's property applicable to Title III. Therefore, documents regarding the Government's pre-plan use are not relevant to the adequacy of the Disclosure Statement. | This information is relevant for the same reasons as the information sought by Request No. 5. |
| 7. | Documents sufficient to show the specific litigations and claims that will be transferred to the Avoidance Actions Trust, and all Documents concerning the basis for the FOMB's decisions as to which litigations and claims to include in or exclude from the Avoidance Actions Trust, including (i) the "garden | The May 2021 Plan already provides information responsive to this Request (*see* May 26, 2021 Letter). The Oversight Board will facilitate a discussion with counsel for the Special Claims Committee, who prepared the lists of litigations and claims to be included in the | The information provided in the Proposed Plan that purports to be responsive to this request is either incomplete or incorrect. The Disclosure Statement's references to Exhibit E to the Proposed Plan should potentially be to Exhibits A (Schedule of Avoidance Actions) and Exhibit B (Schedule of Affirmative Recovery Actions). Exhibit B has not been provided to the Committee. The Disclosure |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | |
| | variety" avoidance actions that the FOMB and Committee have commenced against third parties, including those actions listed in Appendix I to the *Order Granting Omnibus Motion by the Financial Oversight and Management Board for Puerto Rico, Acting by and Through the Members of the Special Claims Committee, and the Official Committee of Unsecured Creditors to (I) Establish Litigation Case Management Procedures and (II) Establish Procedures for Approval of Settlements* [Docket No. 7941], (ii) the litigation against certain underwriters pending in Adv. Pro. No. 19-280, and (iii) the affirmative recovery actions to be identified on Exhibit B to the Second Amended Plan. | Avoidance Actions Trust, to answer any remaining questions the Committee may have (*see id.*). | Statement does not unambiguously indicate whether other avoidance actions that are currently subject to a tolling agreement will be transferred to the Avoidance Action Trust.<br><br>In the Oversight Board's June 8, 2021 letter to counsel to the Committee (*see* June 8, 2021 Letter),[2] it stated that it will consider revising the Proposed Plan by deleting Exhibit B and clarifying that all claims that are subject to tolling agreements, but have not yet been filed, will be transferred to the Avoidance Actions Trust.<br><br>The Committee appreciates the Oversight Board's offer to facilitate a discussion with counsel for the Special Claims Committee.  However, to date such a discussion has not yet occurred, and therefore it is uncertain whether the Committee's issues will be resolved without Court intervention. |
| 8. | All Documents concerning the basis for classifying (i) Retiree Claims (Class 48A), (ii) Dairy Producer Claims (Class 50), (iii) Eminent Domain Claims (Class 51), (iv) Energy Incentive Claims (Class 52), (v) Med Center Claims (Class 53), and (vi) Gracia Gracia | The Oversight Board has already produced documents providing the Committee with information regarding its bases for separately classifying these claims (*see* May 26, 2021 Letter).  It has also agreed to answer any remaining | The Committee incorporates its response to Request No. 3 herein.  The Committee appreciates the Oversight Board's offer to facilitate a discussion regarding the basis for classifying certain unsecured claims, but an informal |

---

[2] A copy of the June 8, 2021 letter from counsel to the Oversight Board to counsel to the Committee is attached as **Exhibit 1** to the Reply.  The Committee received the letter only hours before filing its Reply and this Appendix and therefore is still reviewing and evaluating the letter's contents.

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| | Claims (Class 65) separately from CW General Unsecured Claims (Class 55). | questions the Committee may have regarding these classifications after review of the documents produced. <br><br> Further, documents regarding why the Oversight Board classified certain claims are not relevant to the adequacy of the Disclosure Statement. Bankruptcy Code section 1125(a) expressly provides adequate information does not include information about any other possible plan. | discussion cannot obviate the need for discovery on this issue. |
| 9. | All Documents, if any, showing the Committee's involvement in the negotiation of the Settlements reached with the Initial PSA Creditors, including Documents regarding the FOMB's decision as to whether or not to involve the Committee in such negotiations, including in light of the Cooperation Agreement. | The Committee's involvement in the negotiation of the settlement with GO/PBA bondholders is not relevant to the adequacy of the Disclosure Statement. Confirmation of the Third Amended Proposed Plan of Adjustment is based on its terms, not on the parties who the mediators involved in the negotiations that led to it in the mediation process. <br><br> Further, the requested materials are overwhelmingly privileged to the extent this Request seeks information exchanged in the | The Committee is willing to withdraw this request. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| | | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | |
| | | course of mediations led by the Title III mediation team. Such information is protected by the Court's orders regarding mediation confidentiality.  ECF Nos. 430, 8686. | |
| 10. | All Documents, if any, showing the Committee's involvement in the negotiation of the treatment of general unsecured creditors under the Second Amended Plan (including (i) Retiree Claims (Class 48A), (ii) Dairy Producer Claims (Class 50), (iii) Eminent Domain Claims (Class 51), (iv) Energy Incentive Claims (Class 52), (v) Med Center Claims (Class 53), (vi) CW General Unsecured Claims (Class 55), (vii) Gracia Gracia Claims (Class 65), and (viii) Convenience Claims (Class 66)), including Documents regarding the FOMB's decision as to whether or not to involve the Committee in such negotiations. | The Committee's involvement in the negotiation of the treatment of the classes referenced in these Requests is not relevant to the adequacy of the Disclosure Statement.  Confirmation of the Third Amended Proposed Plan of Adjustment is based on its terms, not on the parties who the mediators involved in the negotiations that led to it in the mediation process.  In any event, the Committee has chosen not to move to compel with respect to this Request at this time (*see* Mot. ¶ 36 n.15).<br><br>Further, the requested materials are overwhelmingly privileged to the extent this Request seeks information exchanged in the course of mediations led by the Title III mediation team.  Such information is protected by the | This request was withdrawn in the Motion to Compel. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| | | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | |
| | | Court's orders regarding mediation confidentiality. ECF Nos. 430, 8686. | |
| 11. | All Documents concerning the consideration to be received by the Initial PSA Creditors under the Settlements, including the extent to which (i) such Settlements allegedly reduce the Commonwealth's existing liabilities and (ii) different bonds (by year of issuance) receive different treatment under such Settlements. | Under the May 2021 Plan, Initial PSA Creditors will receive a Restriction Fee and Consummation Costs. The May 2021 Disclosure Statement already includes information regarding the Restriction Fee, and the Oversight Board has agreed to provide additional information that will allow the Committee to calculate Consummation Costs (*see* May 26, 2021 Letter). | The consideration being paid to Initial PSA Creditors under the Proposed Plan impacts the recoveries of general unsecured creditors. General unsecured creditors are entitled to understand what assets of the Debtors are being provided to other creditors when they vote on the Proposed Plan. To its knowledge, the Committee has not yet received the promised information that will allow it to calculate the Consummation Costs. Moreover, the Oversight Board should be required to produce particularized claims data for each Initial PSA Creditor, in addition to aggregate claims data, so that the Committee may analyze the recoveries being afforded to individual Initial PSA Creditors. This additional analysis will help determine whether further disclosures in the Disclosure Statement are appropriate. |
| 12. | All Documents concerning the rationale for the Settlements, including the basis for the different treatment of CW Bond Claims and PBA Bond Claims based on different vintages, *i.e.*, the date of issuance. | All parties to the settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the adequacy of the Disclosure Statement. | The Oversight Board is the proponent of the Proposed Plan. Unsecured creditors are entitled to understand the Oversight Board's rationale for entering into the settlements that form the basis of a Proposed Plan before they vote on it. *See* Reply ¶ 18. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| 13. | All Documents concerning the decision to include original issue discount in the GO and PBA bondholders' claim amounts and the extent to which doing so affects such bondholders' recovery rates. *See* Second Amended Disclosure Statement at 30. | All parties to the settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the adequacy of the Disclosure Statement. | The Oversight Board is the proponent of the Proposed Plan. Unsecured creditors are entitled to understand the Oversight Board's rationale for settlements and other actions that form the basis of a Proposed Plan before they vote on it. *See id*. In addition, unsecured creditors are entitled to understand why other creditors are receiving more value under the Proposed Plan. |
| 14. | All Documents concerning the basis for releasing "clawback" claims against former GO and PBA bondholders for recovery of principal and interest payments (*see* Second Amended Disclosure Statement at 311-12), including Documents sufficient to show (i) the total amount of principal and interest paid to such bondholders and (ii) the consideration (if any) that such bondholders are providing in exchange for the release of such claims. | All parties to the settlements likely have different rationales for why they settled, and their respective reasons for agreeing to a settlement term are not relevant to the adequacy of the May 2021 Disclosure Statement.<br><br>Nevertheless, the Oversight Board has agreed to facilitate a discussion with lead counsel for the Special Claims Committee, which filed litigations seeking recovery of principal and interest payments to GO bondholders, to provide information regarding the total principal and interest paid to former GO and PBA bondholders. | The Committee appreciates the Oversight Board's offer to facilitate a discussion with counsel for the Special Claims Committee and to provide information concerning the total payments made to GO and PBA bondholders.<br><br>This information, however, will not fully satisfy the Committee's request. The Committee is entitled to understand the rationale for the Oversight Board's decision to grant releases, for no consideration, to former GO and PBA bondholders who do not have a vote on the Proposed Plan. |
| 15. | Documents sufficient to identify the total amount of PBA administrative | The Committee is a co-plaintiff in the PBA Litigation, and therefore | Although the Committee was previously involved in the PBA Litigation, all information regarding |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | |
| | "rent" claims that PBA would hold against the Commonwealth from the petition date through February 28, 2021, as well as the monthly amount of such claims that will accrue going forward, if PBA were to prevail in the PBA Litigation. | has the information necessary to determine the total amount of PBA administrative "rent" claims (*see* May 26, 2021 Letter).<br><br>Nevertheless, the Oversight Board is willing to provide additional information the Committee reasonably believes is necessary to calculate an updated amount. | claims in that adversary proceeding is exclusively in the possession of the Government Parties. To the extent that the Committee was previously given access to some of this information, that information needs to be updated based on the passage of time.<br><br>In its June 8, 2021 Letter, the Oversight Board offered to schedule a call among relevant advisors to provide this information. The Committee is hopeful that such call will result in the satisfaction of this request. |
| 16. | Documents sufficient to identify all terms of the PBA Settlement, including Documents sufficient to explain the FOMB's decision to no longer seek approval of such settlement through a Rule 9019 motion, as contemplated by the prior plan support agreement dated as of May 31, 2019. | The Oversight Board has directed the Committee to provisions of the May 2021 Plan that comprise the terms of the PBA Settlement. Further, the Oversight Board has agreed to meet and confer with the Committee to the extent it believes additional information regarding the PBA Settlement should be disclosed in the May 2021 Disclosure Statement.<br><br>The Oversight Board's decision regarding whether to pursue a Rule 9019 motion is not relevant to the adequacy of the Disclosure Statement. | The Proposed Plan does not identify all terms of the PBA Settlement. The Oversight Board states that it will meet and confer with the Committee regarding what additional information should be incorporated into the Disclosure Statement. However, because the Committee does not have or understand all terms of the PBA settlement, it cannot effectively conduct that meet and confer at this time.<br><br>Because the Committee does not know or understand why the Oversight Board chose not to seek approval of the settlement through a Rule 9019 motion, the Committee is not in a position to say whether or not such a determination is relevant to the adequacy of the Disclosure Statement. As a result, documents sufficient to identify such information should be produced to the Committee so that it can make such a determination. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| | | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | |
| 17. | Documents sufficient to identify all properties to be transferred by PBA to the Commonwealth or other entities as part of the PBA Settlement or the Second Amended Plan. | The Oversight Board has agreed to provide a list of PBA properties to be transferred to the Commonwealth. | The Oversight Board has not yet provided this list of PBA properties to be transferred to the Commonwealth.  The Oversight Board should be required to also identify all properties to be transferred by PBA to entities other than the Commonwealth as a part of these settlements.  Without this information, the Committee cannot understand the consideration being provided in the PBA Settlement or the Proposed Plan. |
| 18. | All Documents concerning any analysis of (i) whether the properties (if any) identified in response to Request No. 17 are in fact properties owned by PBA and (ii) the value of such properties (if any). | The Oversight Board has agreed to provide a list of PBA properties to be transferred to the Commonwealth. | The Oversight Board has not yet provided the referenced list of PBA properties to be transferred to the Commonwealth. The Oversight Board also offered in its June 8, 2021 Letter to provide a document listing the real estate assets of PBA as of December 2020.  The Committee has not yet received this document, either.<br><br>Even if this information is provided, it would not satisfy the Committee's request.  The Committee requests not only a document identifying PBA properties, but documents concerning any analysis of the ownership of such properties.  The Committee has also requested documents concerning the value of the properties.<br><br>This information is necessary to help unsecured creditors understand the consideration being provided in the PBA Settlement and the Proposed Plan. |

11

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| 19. | All Documents concerning the decision to allow interest on CW Guarantee Bond Claims arising from the PBA Bonds through the date of PBA's Title III filing. *See* Plan Support Agreement at 6. | The Oversight Board's decisions are not relevant to the adequacy of the Disclosure Statement. | It is the Committee's position that allowing interest to accrue on the CW Guarantee Bond Claims arising from the PBA Bonds through the date of PBA's Title III filing as opposed to the CW's Title III filing artificially inflates the claim against the Commonwealth.  To the extent that such claims are inflated, the CW Guarantee Bond Claims are receiving a disproportionate share of Commonwealth assets that could be used to provide recoveries to unsecured creditors.  Unsecured creditors are entitled to understand the Oversight Board's rationale for this aspect of the Proposed Plan before voting on that plan. |
| 20. | All Documents concerning the decision not to have PBA file a Title III case at the same time as (or shortly after) the filing of the Commonwealth's Title III case. | The Oversight Board's decisions are not relevant to the adequacy of the Disclosure Statement. | Because the Committee does not know or understand why the Oversight Board chose not to have PBA file a Title III case at the same time as (or shortly after) the filing of the Commonwealth's Title III case, the Committee is not in a position to say whether or not such a determination is relevant to the adequacy of the Disclosure Statement.  As a result, documents should be produced to the Committee so that it can make such a determination.  This information may be relevant for the same reasons as the information sought by Request No. 19. |
| 21. | All Documents concerning the decision to establish a Debt Service Reserve Fund for the New GO Bonds to be | All parties to the Settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the | The Oversight Board is the proponent of the Proposed Plan.  Unsecured creditors are entitled to understand the Oversight Board's rationale for actions that form the basis of a Proposed Plan |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|---------------------|
| | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | |
| | issued under the Second Amended Plan. *See* Second Amended Plan at 71.1(h). | adequacy of the Disclosure Statement. | before they vote on that Proposed Plan. |
| 22. | All Documents concerning the Debtors' assessment, if any, of the maximum amount they are capable of paying unsecured creditors under the Second Amended Plan, including the extent to which additional bonds could be issued to unsecured creditors under the Comprehensive Cap. *See* Second Amended Plan § 71.4. | Documents regarding whether any additional consideration could have been provided to unsecured creditors are not relevant to the adequacy of the Disclosure Statement. Bankruptcy Code section 1125(a) expressly provides adequate information does not include information about any other possible plan. | The decision regarding whether additional consideration could have been provided to unsecured creditors is directly relevant to the adequacy of the Disclosure Statement. An unsecured creditors' vote on a Proposed Plan may change depending on whether additional consideration could have been provided under the Proposed Plan (not an alternative plan), but was not. Moreover, this information is relevant to determining whether the "best interests" test has been satisfied. *See* Reply ¶ 16. |
| 23. | All Documents concerning the FOMB's calculation of the Comprehensive Cap, including Documents sufficient to show (i) whether excess capacity remains under the Comprehensive Cap and (ii) if so, how such excess capacity will be used. *See* Second Amended Plan § 1.123. | The Oversight Board has already informed the Committee that the Comprehensive Cap is a prospective calculation based on future economic inputs (*See* May 26, 2021 Letter). Further, the Oversight Board has agreed to confer further with the Committee regarding any additional questions it has regarding this Request. | As the Committee explained in its June 2, 2021 letter, such calculations may be performed using projections of future economic inputs, including to determine whether the Comprehensive Cap would be met or exceeded based on the issuance of new bonds under the Proposed Plan. The Oversight Board should be required to produce such information because it could affect the potential recoveries of unsecured creditors.<br><br>Although the Committee appreciates that the Oversight Board will take this request under advisement and respond as soon as practicable (*see* June 8, 2021 Letter), the Committee needs |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|---------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| | | | responsive documents produced by a date certain in light of the June 15, 2021 objection deadline. |
| 24. | All Documents concerning the FOMB's calculation of the Tax Supported Debt. *See* Second Amended Plan § 1.310. | The Oversight Board has already informed the Committee that the Tax-Supported Debt is a prospective calculation based on future economic inputs (*See* May 26, 2021 Letter).  Further, the Oversight Board has agreed to confer further with the Committee regarding any additional questions it has regarding this Request. | The Committee incorporates its response to Request No. 23 herein. |
| 25. | All Documents concerning the decision under the Second Amended Plan to have a deemed issuance date for the New GO Bonds of July 1, 2021, including any calculations or estimates of the interest that will accrue on such bonds prior to the effective date of the Second Amended Plan.  *See* Second Amended Plan § 71.1(c). | All parties to the settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the adequacy of the Disclosure Statement. | The Oversight Board is the proponent of the Proposed Plan, and unsecured creditors are entitled to understand the Oversight Board's rationale for actions that form the basis of a Proposed Plan before they vote on that plan.  In addition, the Committee is entitled to obtain and review the calculations of interest that will accrue on the bonds prior to the estimated Effective Date because such payments affect the assets available to provide recoveries to the Committee's constituents. |
| 26. | All Documents concerning the FOMB's calculation of likely payments under the GO CVIs. | The Oversight Board already has directed the Committee to publicly available information that should allow the Committee to understand likely payments to holders of GO CVIs (*see* May 26, 2021 Letter). | The information that is publicly available is insufficient for the Committee to understand likely payments under the GO CVIs.  The Committee will continue to meet and confer with the Oversight Board and the parties' financial advisors to evaluate the calculations as to the value of the CVIs. The |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|---------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* ||||
|  |  | Further, the Oversight Board has agreed to confer with the Committee to the extent it believes additional disclosures should be added to the May 2021 Disclosure Statement. | Committee needs this information so that unsecured creditors can understand how the payments under the GO CVIs will affect their potential recoveries. <br><br> In addition to providing further disclosures regarding the calculation of GO CVIs in its forthcoming further amended disclosure statement (*see* June 8, 2021 Letter), the Oversight Board should provide its analyses underlying such disclosures to the Committee. |
| 27. | All Documents concerning the FOMB's rationale for providing holders of GO Bond Claims and PBA Bond Claims with the GO CVIs, including the rationale for the 22-year term of GO CVIs and the annual and lifetime caps (as set forth in the Second Amended Plan). | All parties to the settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the adequacy of the Disclosure Statement. | The Oversight Board is the proponent of the Proposed Plan.  Unsecured creditors are entitled to understand the Oversight Board's rationale for actions like the adoption of the GO CVIs that form the basis of a Proposed Plan before they vote on that Proposed Plan.  *See* Reply ¶ 18. <br><br> In addition, the Committee is entitle to understand why the GO CVIs have a 22-year term, so that it can understand how that will impact recoveries to unsecured creditors. |
| 28. | All Documents concerning the FOMB's rationale for providing $7.024 billion in cash to holders of GO Bonds and PBA Bonds. | All parties to the settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the adequacy of the Disclosure Statement. | The Oversight Board is the proponent of the Proposed Plan.  Unsecured creditors are entitled to understand the Oversight Board's rationale for its decision to give over $7 billion in cash to holders of GO Bonds and PBA Bonds before they vote on the Proposed Plan.  *See id.*  Moreover, these payments directly affect the cash that is available to |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| | | | provide recoveries to unsecured creditors. Unsecured creditors are entitled to understand the rationale behind such payments, including why the Oversight Board chose not to provide less cash and issue additional bonds. |
| 29. | All Documents concerning the FOMB's rationale for excluding from the Comprehensive Cap the debt service payments on New GO 5.0% CABs and New GO 5.375% CABs issued pursuant to the Second Amended Plan. | All parties to the settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the adequacy of the Disclosure Statement. | The Oversight Board is the proponent of the Proposed Plan.  Unsecured creditors are entitled to understand the Oversight Board's rationale for settlements and other actions that form the basis of a Proposed Plan before they vote on that Proposed Plan. *See* Reply ¶ 18.  The rationale for excluding certain debt service payments from the Comprehensive Cap informs the Committee's constituents as to how the Oversight Board calculated its debt-servicing capacity. |
| 30. | All Documents concerning the FOMB's rationale for providing holders of GO Bonds with New GO 5.0% CABs with installment payments on July 1 of 2022, 2023, and 2024 as opposed to making those funds available for other creditors. | All parties to the settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the adequacy of the Disclosure Statement. | The Oversight Board is the proponent of the Proposed Plan.  Unsecured creditors are entitled to understand the Oversight Board's rationale for settlements and other actions that form the basis of a Proposed Plan before they vote on that Proposed Plan. *See id.*  Unsecured creditors are also entitled to understand why certain consideration is being made available to some creditors but not others. |
| 31. | All Documents concerning the FOMB's rationale for providing holders of GO Bonds with New GO 5.375% CABs with installment payments on July 1 of 2029, 2030, 2031, 2032, and 2033 as | All parties to the settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the | The Committee incorporates its response to Request 30. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| | opposed to making those funds available for other creditors. | adequacy of the Disclosure Statement. | |
| 32. | All Documents concerning the calculation of and justification for the Consummation Costs, the PSA Restriction Fees, the Retail Support Fee, and the $100 million termination fee set forth in sections 3.5 and 3.6 of the Second Amended Plan. | All parties to the settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the adequacy of the Disclosure Statement. | The Committee incorporates its response to Request 30. |
| 33. | All Documents concerning the ability of the FOMB to terminate the Plan Support Agreement, including whether or not and to what extent the FOMB considered including a provision in the Plan Support Agreement that would have permitted termination by the FOMB without payment of any fee or penalty. | All parties to the settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the adequacy of the Disclosure Statement. | Whether and under what circumstances the Oversight Board may terminate the Plan Support Agreement is material information to unsecured creditors trying to understand the risks and obligations included in the Proposed Plan's settlements.  The Oversight Board's response regarding "different rationales" is not responsive to this request.  As a result, the requested termination documents should be produced. |
| 34. | All Documents concerning the FOMB's estimates of the total retiree benefit claims in Classes 48A to 48E of the Second Amended Plan. | The Oversight Board has agreed to confer with the Committee regarding information it can provide responsive to this Request. | While the Committee appreciates the Oversight Board's offer to meet and confer regarding additional questions concerning this request, such a meet and confer has not yet occurred.   Information concerning claim and recovery estimates is highly relevant to the adequacy of a disclosure statement and should be produced. |
| 35. | Documents sufficient to show the current status and estimated date of | The Oversight Board already has produced documents showing the | The Committee will continue to meet and confer with the Oversight Board regarding specific |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| | completion of the FOMB's bank account analysis (*see* Second Amended Disclosure Statement at 129-38), including Documents sufficient to show (i) which bank accounts the FOMB is reviewing, (ii) whether the accounts are restricted or unrestricted, and (iii) if the accounts are unrestricted, whether the funds in such accounts will be made available for creditor recoveries and, if not, why not. | current status of its cash restriction analysis, and has agreed to continue to produce additional responsive, non-privileged materials when they become available. | account designations and updating the cash restriction analyses that the Oversight Board concedes are incomplete or outdated.  The Committee is entitled to the requested information because it may demonstrate that there are assets in certain bank accounts which may be used to provide recoveries to unsecured creditors. |
| 36. | All Documents concerning the FOMB's decision to label certain accounts set forth in Exhibit J to the Second Amended Disclosure Statement "restricted," including Documents sufficient to explain what the FOMB means in designating such accounts "restricted." | The Oversight Board already has produced documents showing the current status of its cash restriction analysis, including the documents it relied on in designating certain accounts as "restricted," and has agreed to continue to produce additional responsive, non-privileged materials when they become available.  Further, the May 2021 Disclosure Statement already provides information regarding the bases on which accounts are designated "restricted," and the Oversight Board has agreed to meet and confer with the Committee to the | The Committee is entitled to the requested information because it may demonstrate that there are assets in certain bank accounts which may be used to provide recoveries to unsecured creditors.  Unsecured creditors are entitled to know about such assets before voting on the Proposed Plan.

The Committee will continue to meet and confer with the Oversight Board regarding specific account designations and updating the cash restriction analyses that the Oversight Board concedes are incomplete or outdated.  The Committee disputes that the Oversight Board has complied with this request by producing the documents it relied upon in designating certain accounts as "restricted."  For example, the Oversight Board should be required to produce the |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|---------------------|
| | | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | |
| | | extent it has questions regarding any specific account designation. | underlying analysis for its bank account restriction determinations. |
| 37. | All Documents concerning the FOMB's decision to label certain accounts set forth in Exhibit J to the Second Amended Disclosure Statement "asserted to be restricted," including Documents sufficient to explain (i) what the FOMB means in designating such accounts "asserted to be restricted," (ii) why a definitive determination as to whether these accounts are restricted or unrestricted has not yet been made, and (iii) whether and to what extent such designations will change in light of the Oversight Board's recently- announced settlements with other constituencies. | The Oversight Board has already produced documents showing the current status of its cash restriction analysis, including the documents it relied on in designating certain accounts as "asserted to be restricted," and has agreed to continue to produce additional responsive, non-privileged materials when they become available.  Further, the May 2021 Disclosure Statement already provides information regarding the bases on which accounts are designated "asserted to be restricted," and the Oversight Board has agreed to meet and confer with the Committee to the extent it has questions regarding any specific account designation. | The Committee is entitled to the requested information because it may demonstrate that there are assets in certain bank accounts which may be used to provide recoveries to unsecured creditors. Unsecured creditors are entitled to know about such assets before voting on the Proposed Plan.

The Committee will continue to meet and confer with the Oversight Board regarding specific account designations and updating the cash restriction analyses that are incomplete or outdated. The Committee disputes that the Oversight Board has complied with this request by producing the documents it relied upon in designating certain accounts as "asserted to be restricted."  For example, the Oversight Board should be required to produce the underlying analysis for its bank account restriction determinations. |
| 38. | All Documents concerning the FOMB's decision to label certain accounts set forth in Exhibit J to the Second Amended Disclosure Statement "inconclusive," including Documents sufficient to explain what the FOMB means in designating such | The Oversight Board has already produced documents showing the current status of its cash restriction analysis, including the documents it relied on in designating certain accounts as "inconclusive," and has agreed to continue to produce | The Committee is entitled to the requested information because it may demonstrate that there are assets in certain bank accounts which may be used to provide recoveries to unsecured creditors. Unsecured creditors are entitled to know about such assets before voting on the Proposed Plan. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | |
| | accounts "inconclusive" and Documents sufficient to explain why a definitive determination as to whether these accounts are restricted or unrestricted hasn't yet been made. | additional responsive, non-privileged materials when they become available.  Further, the May 2021 Disclosure Statement already provides information regarding the bases on which accounts are designated "inconclusive," and the Oversight Board has agreed to meet and confer with the Committee to the extent it has questions regarding any specific account designation. | The Committee will continue to meet and confer with the Oversight Board regarding specific account designations and updating the cash restriction analyses that are incomplete or outdated.  The Committee disputes that the Oversight Board has complied with this request by producing the documents it relied upon in designating certain accounts as "inconclusive."  For example, the Oversight Board should be required to produce the underlying analysis for its bank account restriction determinations. |
| 39. | Documents providing the December 31, 2020 account balances for those accounts set forth in Exhibit J to the Second Amended Disclosure Statement with a "pending" designation. | The Oversight Board has already produced documents showing the current status of its cash restriction analysis, and has agreed to continue to produce additional responsive, non-privileged materials when they become available.  Further, the May 2021 Disclosure Statement already provides information regarding the bases on which accounts are designated "pending," and the Oversight Board has agreed to meet and confer with the Committee to the extent it has questions regarding any specific account designation. | The Oversight Board has failed to produce documents that would show the December 31, 2020 account balances for the accounts designated "pending."  The Committee is entitled to the requested information because it may demonstrate that there are assets in certain bank accounts which may be used to provide recoveries to unsecured creditors. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| | | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | |
| 40. | Documents sufficient to explain whether each of the accounts on Exhibit J to the Second Amended Disclosure Statement with a "pending" designation is restricted or unrestricted. | The Oversight Board has already produced documents showing the current status of its cash restriction analysis, and has agreed to continue to produce additional responsive, non-privileged materials when they become available.  Further, the Oversight Board has agreed to meet and confer with the Committee to the extent it has questions regarding any specific account designation. | The Committee will continue to meet and confer with the Oversight Board regarding specific account designations and updating the cash restriction analyses.  At a minimum, while the parties continue to meet and confer regarding cash accounts, the Oversight Board should update the Committee regarding when the Oversight Board will complete its analysis of "pending" accounts. The Oversight Board's June 8, 2021 Letter, unsurprisingly, only states that the analysis will be completed "as soon as possible" (*see* June 8, 2021 Letter). |
| 41. | Documents sufficient to show the sources and uses of the Debtors' cash and investments rolled forward from the December 31, 2020 account balances to June 30, 2021 and adjusted for settlements reached in connection with the Second Amended Plan. | The Oversight Board cannot fully respond to this Request, as it seeks documents as of a date nearly a month into the future.  However, the Oversight Board has already produced documents showing the current status of its cash restriction analysis, and has agreed to continue to produce additional responsive, non-privileged materials when they become available.  Further, the Oversight Board has agreed to meet and confer with the Committee with respect to its request for updated information on the Debtors' cash and investments. | The Committee has asked the Oversight Board to provide a cash bridge showing the Debtors' sources and uses of cash rolled forward from December 31, 2020 through the present. The Oversight Board has stated that it does not believe that further information regarding the current status of the Debtors' cash and investments is necessary or appropriate at this time (*see* June 8, 2021 Letter). This information is highly relevant to the Debtors' available assets and potential sources of recovery and should be provided as it has been in the past. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|---------------------|
| | | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | |
| 42. | Documents sufficient to show whether any excess funds identified in response to Request No. 41 will be made available for creditors and, if not, why not. | The proposed plan of adjustment provides exactly what will be paid to creditors. The debtors have many sources of projected revenues and some actual future revenues will exceed projections and some will be less than projections. Therefore, excess funds from one source do not show the debtors will have any excess funds when all sources are considered. The proposed plan provides CVI's to provide creditors a share of any upside on an aggregate basis. | The Committee incorporates its response to Request No. 41 herein. Whether additional assets are available to provide recoveries to unsecured creditors is highly relevant to their evaluation of the Proposed Plan. *See* Reply ¶¶ 16-17. |
| 43. | All Documents describing the rationale that FOMB policy (as opposed to a legal determination) should determine whether certain funds in accounts held by the Debtors, Commonwealth agencies, or public corporations receiving general fund appropriations should not be made available for creditor recoveries. | The Oversight Board's rationale for deciding certain funds are available to sustain the debtors and not available for creditor recoveries is not relevant to the adequacy of the May 2021 Disclosure Statement. | Unsecured creditors are entitled to understand the Oversight Board's rationale for actions that form the basis of a Proposed Plan before they vote on that Proposed Plan. Whether additional assets are available to provide recoveries to unsecured creditors is highly relevant to such creditors' evaluation of the Proposed Plan. *See* Reply at ¶¶ 16-17. |
| 44. | Documents sufficient to show all unencumbered assets of the Debtors that are currently being marketed or being evaluated for sale, including the value of such assets, the current listed sales price | The Debtors are not required to liquidate themselves in a municipal bankruptcy context. Unlike corporate reorganizations, liquidation is not an option for | Notwithstanding the unique nature of municipal bankruptcies, this Court must still ensure that the Proposed Plan treats all creditors fairly. Moreover, bankruptcy courts must apply the "best interests of creditors" test to conclude that the municipal |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | |
| | for each asset and whether or not such value is being made available for creditor recoveries. | municipalities.  Creditors having claims against New York City are not allowed to levy on Central Park and sell it.  Similarly, Puerto Rico's beaches and other assets are not for sale.  Creditors are paid from Puerto Rico's accumulated cash and future revenues.  Accordingly, the Debtors' other assets are not relevant to the adequacy of the May 2021 Disclosure Statement.  If some assets are sold their proceeds can be used to buy replacement assets. | debtor made a "reasonable effort" to repay its creditors.  *See id.*  Unsecured creditors are entitled to know if the Debtors in these cases have made such an effort as part of the Proposed Plan before voting on that Proposed Plan.  Such an effort will take into account, in addition to the Commonwealth's accumulated cash and future revenues, other unencumbered assets that are currently being marketed or evaluated for sale. |
| 45. | Documents sufficient to identify all unrestricted Commonwealth investments not included in Exhibit J to the Second Amended Disclosure Statement, including their value and whether or not each such investment is being liquidated for creditor recoveries. | The Debtors are not required to liquidate themselves in a municipal bankruptcy context.  Accordingly, the Debtors' "unrestricted Commonwealth investments" are not relevant to the adequacy of the May 2021 Disclosure Statement. | Notwithstanding the unique nature of municipal bankruptcies, this court must still ensure that the Proposed Plan treats all creditors fairly.  Moreover, bankruptcy courts must apply the "best interests of creditors" test to conclude that the municipal debtor made a "reasonable effort" to repay its creditors. *See* Reply ¶¶ 16-17.  Unsecured creditors are entitled to know if the Debtors in these cases have made such an effort as part of the Proposed Plan before voting on that Proposed Plan.  Such an effort will take into account, in addition to the Commonwealth's accumulated cash and future revenues, all unrestricted Commonwealth investments. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| | | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | |
| 46. | Documents sufficient to show (i) the December 31, 2020 balances and/or value of the ERS assets that the Commonwealth will purchase on the effective date of the Second Amended Plan, as described on page 339 of the Second Amended Disclosure Statement, (ii) whether or not such value will be available for ERS and/or Commonwealth general unsecured creditors after payment is made to ERS bondholders, and (iii) if such value is not so available, why not. | The Oversight Board has agreed to include a sentence in the May 2021 Disclosure Statement explaining that the excess value of the ERS assets has been taken into accounts in reaching the compromise and settlement with GO/PBA bondholders (*see* May 26, 2021 Letter). Further, the Oversight Board has agreed to meet and confer with the Committee to the extent it has additional questions or believes additional disclosure is necessary regarding the value of the ERS assets. | The Committee will continue to meet and confer with the Oversight Board regarding any additional language in the Disclosure Statement that will clarify the value of ERS Assets and the use of excess ERS Asset value. The Committee agrees with the Oversight Board that discussions between the parties' financial advisors may be productive in helping the Committee obtain some information responsive to this request. As discussed in the Reply, however, the Oversight Board's willingness to provide additional disclosures is not a substitute for discovery. Reply ¶ 24. |
| 47. | All Documents concerning the FOMB's conclusion, as described on pages 157-58 of the Second Amended Disclosure Statement, that "essential services" need not be defined for purposes of the Second Amended Plan. | Information regarding "essential services" is not relevant to the adequacy of the May 2021 Disclosure Statement. | Unsecured creditors are entitled to understand how assets that could be used to pay their claims are actually being used by the Debtors. Moreover, bankruptcy courts must apply the "best interests of creditors" test to conclude that the municipal debtor made a "reasonable effort" to repay its creditors. *See* Reply ¶¶ 16-17. This test involves a factual inquiry into available assets as well as the Debtors' need to provide for essential services. *Id.* By failing to define "essential services," the Oversight Board has prevented unsecured creditors from gaining information relevant to this factual inquiry. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|---------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| 48. | All Documents concerning any analyses or lists identifying which services constitute "essential services." | The Request is another effort to litigate the certified fiscal plans, which cannot be reviewed. Additionally, information regarding "essential services" is not relevant to the adequacy of the May 2021 Disclosure Statement. The best interest analyses to be added to the May 2021 Disclosure Statement show the base assumption under which outside Title III all expenses in the certified budget are paid before money is paid to satisfy GO debt. Other scenarios show the outcomes if less than all expenses are paid before paying GO debt. | The Committee incorporates its response to Request No. 47 herein. |
| 49. | All Documents concerning the FOMB's analysis, if any, of whether the Second Amended Plan will allow the Commonwealth to obtain access to capital markets. | Whether the May 2021 Plan for three debtors will allow the Commonwealth to access the capital markets is not relevant to the adequacy of the May 2021 Disclosure Statement. As a practical matter, however, the bonds issued in the COFINA Title III case have been trading at high prices for more than a year, and the bonds to be issued under the instant proposed plan of adjustment were negotiated by sophisticated creditors and | One of the key purposes of PROMESA is to ensure that the Commonwealth obtains access to capital markets. Unsecured creditors are entitled to understand if and to the extent the Proposed Plan fulfills this purpose prior to voting on the Proposed Plan. The Oversight Board's response, in discussing the trading of the COFINA bonds as an example of the purported benefits of the Proposed Plan, concedes the point that the requested information is relevant to the adequacy of the Disclosure Statement. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|---------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| | | investors.  Moreover, the Disclosure Statement already shows how much the instant proposed plan of adjustment reduces Puerto Rico's debt and debt service obligations. | |
| 50. | All Documents concerning the FOMB's assessment of whether or not the Second Amended Plan unfairly discriminates against holders of CW General Unsecured Claims, including any review or analysis the FOMB performed of the recovery rate differentials between different types of unsecured creditors (such as general unsecured creditors, retiree claimants, and bondholders) in other bankruptcy cases. | This request is for legal opinion work product in anticipation of litigation which is clearly not discoverable.  The Oversight Board's assessment of whether the May 2021 Plan unfairly discriminates against holders of Commonwealth general unsecured claims is not relevant to the adequacy of the May 2021 Disclosure Statement because if there is unfair discrimination the plan of adjustment will not be confirmed. | The Court has already held that the Committee's classification arguments should be raised "in the objection to the proposed Disclosure Statement." April 28, 2021 Omnibus Hr'g Tr., at 149:9-12; *see also* Order Denying the Official Committee of Unsecured Creditors' Bankruptcy Rule 3013 Motion and Related Scheduling Motion [Docket No. 16629] at 2 (expressly permitting Committee to raise its classification arguments "as objections in connection with any motion seeking approval of a disclosure statement or confirmation of a plan of adjustment").  This discovery is therefore relevant and should be provided. |
| 51. | Documents sufficient to show the value of the tax benefits resulting from a favorable ruling concerning the tax exempt status of the New GO Bonds to | The May 2021 Disclosure Statement already provides the only information the Oversight Board currently has regarding the value of the tax benefits resulting from a favorable ruling concerning the tax | The Committee requests that the Oversight Board provide the source documents, if any, supporting the statements in section 70.3 of the Disclosure Statement concerning the tax benefits resulting |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| | be issued under the Second Amended Plan. | exempt status of the New GO Bonds. | from a favorable ruling on the New GO Bonds' tax exempt status. |
| 52. | All Documents concerning the FOMB's estimate of general unsecured claims against ERS in Class 64 of the Second Amended Plan, including the number and amount of such claims. | Documents already have been provided. The Oversight Board will produce additional responsive, non-privileged materials (*see* May 26, 2021 Letter). | The Committee disputes that the Oversight Board has already produced all documents responsive to this request. On June 4, 2021, the Oversight Board's financial advisors provided an updated claims report to the Committee's financial advisors. The provision of the claims report listing the Oversight Board's estimate is insufficient to respond to this request because it does not include underlying charts, analyses, and other documents that inform such estimate. |
| 53. | All Documents concerning the basis for capping the amount in the ERS GUC Pool at $5 million. *See* Second Amended Plan § 1.160. | The Oversight Board's basis for capping the amount in the ERS GUC Pool at $5 million is not relevant to the adequacy of the May 2021 Disclosure Statement. Bankruptcy Code section 1125(a) expressly provides adequate information does not include information about any other possible plan. | ERS unsecured creditors are entitled to understand the basis for the $5 million cap, which directly affects creditor recoveries, before voting on the Proposed Plan. This request on its face relates to the current Proposed Plan, not an alternative plan. |
| 54. | All Documents concerning the FOMB's analysis, if any, of what Commonwealth funds or other resources will be needed to implement and/or fund a restructuring of and/or plan of adjustment for HTA, including the amount of such funds or | The Oversight Board's analysis is not relevant to the adequacy of the May 2021 Disclosure Statement for debtors other than HTA. Moreover, this request is for documents, if they exist at all, of a | Unsecured creditors are entitled to understand whether Commonwealth funds or resources that may currently be available to provide recoveries to unsecured creditors will instead be needed to implement a restructuring of HTA. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|---------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| | resources and whether they have been set aside for such purpose. | highly speculative nature, concerning guesses about the treatment of claims against HTA, toll levels, capex, and other factors. | The fact that the documents may contain information "of a highly speculative nature" is not a valid reason for failing to produce them. |
| 55. | Provide the Best Interests Test Report (Exhibit L to the Second Amended Disclosure Statement). | The Oversight Board will provide the Best Interests Test Report when it becomes available.  Additionally, the best interest analyses include lists of all legal assumptions and calculations of outcomes based on different scenarios and different legal outcomes. | The Oversight Board has not provided the best interests test report, or given the Committee any indication as to when it will be ready.  The Committee has an objection deadline of June 15, 2021; this report must be provided immediately. |
| 56. | All Documents concerning the FOMB's calculation of likely payments under the Clawback CVIs. | The Oversight Board already has directed the Committee to publicly available information that should allow the Committee to understand likely payments to holders of GO CVIs (*see* May 26, 2021 Letter).  Further, the Oversight Board has agreed to confer with the Committee to the extent it believes additional disclosures should be added to the May 2021 Disclosure Statement. | The information that is publicly available is insufficient for the Committee to understand likely payments under the Clawback CVIs.  The Committee will continue to meet and confer with the Oversight Board and the parties' financial advisors to evaluate the calculations as to the value of the CVIs.  As discussed in the Reply, however, the Oversight Board's willingness to provide additional disclosures is not a substitute for the production of responsive documents.  *See* Reply ¶ 24. |
| 57. | All Documents concerning the FOMB's rationale for providing holders of Clawback Claims with the Clawback | All parties to the settlements likely have different rationales for why they settled, and their respective | The Oversight Board is the proponent of the Proposed Plan.  Unsecured creditors are entitled to understand the Oversight Board's rationale for |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| | *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | |
| | CVIs, notwithstanding the terms of the settlement of alleged GO priority pursuant to the Second Amended Plan, including the rationale for the 30-year term of Clawback CVIs and the annual caps (as set forth in the Second Amended Plan). | reasons are not relevant to the adequacy of the Disclosure Statement. | settlements and other actions that form the basis of a Proposed Plan before they vote on that Proposed Plan. *See* Reply ¶ 18. |
| 58. | Documents sufficient to show the FOMB's rationale for settling the ERS Litigation pursuant to the ERS Settlement. | All parties to the settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the adequacy of the Disclosure Statement. | The Oversight Board is the proponent of the Proposed Plan. Unsecured creditors are entitled to understand the Oversight Board's rationale for settlements and other actions that form the basis of a Proposed Plan before they vote on that Proposed Plan. *See id.* |
| 59. | Documents sufficient to show the status of the settlement summarized in the term sheet dated May 14, 2019, between the FOMB and the AFT. | The status of settlements not incorporated into the May 2021 Plan is not relevant to the adequacy of the May 2021 Disclosure Statement. | The fact that a settlement between the Oversight Board and AFT (one of the largest unions in the Commonwealth) was not incorporated into the Proposed Plan does not mean information concerning the settlement is irrelevant. To the extent the Oversight Board has an agreement with AFT obligating it to make substantial payments to AFT, such agreement and its terms are highly relevant to creditors' assessment of the available resources of the Commonwealth. |
| 60. | Documents sufficient to show the basis and rationale for not assuming or rejecting the Debtors' collective bargaining agreements, as set forth in | The Oversight Board's basis and rationale for not assuming or rejecting collective bargaining agreements is not relevant to the | Unsecured creditors are entitled to understand the Oversight Board's rationale for actions that form the basis of a Proposed Plan before they vote on that Proposed Plan. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|---------------------|
| *First Set of Requests, Dated April 23, 2021 (Mot. Ex. 2)* | | | |
| | Section 73.10 of the Second Amended Plan. | adequacy of the May 2021 Disclosure Statement. | |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|---------------------|
| *Second Set of Requests, Dated May 14, 2021 (Mot Ex. 10)* | | | |
| 1. | All Documents, Communications, and other information or materials requested by: (i) Ambac Assurance Corporation and Financial Guaranty Insurance Company in the *Ambac Assurance Corporation and Financial Guaranty Insurance Company's First Set of Document Requests to the Government Parties and Their Advisors in Connection with the Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated May 12, 2021 (attached hereto as **Exhibit A**); or (ii) any other party or third party in connection with the proceedings relating to the Third Amended Disclosure Statement. | The Oversight Board has agreed to produce documents responsive to this Request. | In light of the Oversight Board's representation that it will produce responsive documents, the Committee has no further response at this time. The Committee reserves its right to move to compel as to these documents to the extent that they are not ultimately provided by the Oversight Board. |
| 2. | Documents sufficient to show whether all Retiree Claims under the Third Amended Plan will be paid on the same payment schedule, including whether or | The Oversight Board has provided information responsive to this Request. | The Committee has received information from the Oversight Board that appears to satisfy this request. The Committee reserves its rights regarding any |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| | | **Second Set of Requests, Dated May 14, 2021 (Mot Ex. 10)** | |
| | not any Retiree Claims will receive a lump sum payment instead of a series of payments. | | additional disclosures that it determines may be necessary. |
| 3. | Documents sufficient to show, as of the date of the Third Amended Disclosure Statement, the claim amounts broken down by CUSIP number and/or loan, including for each the outstanding principal amount and accrued and unpaid interest (including applicable interest rate) and unmatured original issue discount, through the Commonwealth petition date, for claims in Classes 1 through 47, 56 through 59, and 62 of the Third Amended Plan. | The Oversight Board has agreed to provide information responsive to this Request. | In light of the Oversight Board's representation that it will produce responsive documents, the Committee has no further response at this time. However, the Committee notes that no such documents have yet been produced, and its objection deadline is June 15. |
| 4. | Fully executed copies of the GSA Helicopter Loan, the Hacienda loans (ID Nos. 200017-215-001-003-47, 200017-215-001-003-48, 200017-215-001-003-53 and 200017-215-001-003-56), and Notas de Ahorro. *See* Third Amended Plan § 1.24. | The Oversight Board has agreed to produce documents responsive to this Request. | In light of the Oversight Board's representation that it will produce responsive documents, the Committee has no further response at this time. However, the Committee notes that no such documents have yet been produced, and its objection deadline is June 15. |
| 5. | Fully executed agreements evidencing all 2011 CW Guarantee Bond Claims on account of the Commonwealth's full faith, credit and taxing power guarantee of "(a) an affiliate, agency or instrumentality, which guarantee was | The Oversight Board has agreed to produce documents responsive to this Request. | In light of the Oversight Board's representation that it will produce responsive documents, the Committee has no further response at this time. The Committee and its advisors are reviewing the documents produced by the Oversight Board on June 4, 2021 (*see* June 8, 2021 Letter). The |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|---------------------|
| | | *Second Set of Requests, Dated May 14, 2021 (Mot Ex. 10)* | |
| | executed, delivered or enacted during the period from January 1, 2014 up to, but not including, the Commonwealth Petition Date," and documents sufficient to quantify such 2011 CW Guarantee Bond Claims.  *See* Third Amended Plan § 1.37. | | Committee reserves its right to move to compel as to these documents to the extent that the documents provided by the Oversight Board are insufficient to address the Committee's request. |
| 6. | Fully executed copies of the GDB HTA Loans.  *See* Third Amended Disclosure Statement, at 411. | The Oversight Board has agreed to produce documents responsive to this Request. | In light of the Oversight Board's representation that it will produce responsive documents, the Committee has no further response at this time.  However, the Committee notes that no such documents have yet been produced, and its objection deadline is June 15. |
| 7. | All Documents concerning the rationale for the Commonwealth paying Assured $39.3 million and National $19.3 million as consideration for the structuring of payments to be made to holders of clawback claims.  *See* Third Amended Disclosure Statement Ex. C, at 21. | All parties to the settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the adequacy of the Disclosure Statement. | The Oversight Board is the proponent of the Proposed Plan.  Unsecured creditors are entitled to understand the Oversight Board's rationale for settlements and other actions that form the basis of a Proposed Plan before they vote on that Proposed Plan.  *See* Reply ¶ 18. |
| 8. | Documents sufficient to identify the name of the entity that will pay the HTA Restriction Fee, the CCDA Restriction Fee and the CCDA cash settlement amount, along with identify of the bank accounts that will make such payments. | The Oversight Board has agreed to provide information responsive to this Request, and to consider making revisions to the May 2021 Disclosure Statement. | In light of the Oversight Board's representation that it will produce responsive documents, the Committee has no further response at this time.  However, the Committee notes that no such documents have yet been produced, and its objection deadline is June 15. |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| *Second Set of Requests, Dated May 14, 2021 (Mot Ex. 10)* | | | |
| 9. | All Documents concerning the $70.75 million valuation of the ERS private equity portfolio. *See Third Amended Disclosure Statement*, at 36. | The Oversight Board has agreed to provide information responsive to this Request. | In light of the Oversight Board's representation that its financial advisors will resolve this request in coordination with the Committee's financial advisors, the Committee has no further response at this time. The Committee reserves its right to request additional responsive information to the extent that the parties' financial advisors are unable to resolve this request. |
| 10. | All Documents concerning the FOMB's calculation, based on the certified 2021 Fiscal Plan, of likely payments under the GO CVIs, including by claims class, and any analysis regarding the value attributable to the GO CVIs given the projected payments and resulting increase in recovery for each respective class receiving GO CVIs. | The Oversight Board already has directed the Committee to publicly available information that should allow the Committee to understand likely payments to holders of GO CVIs (*see* Second RFP Responses). Further, the Oversight Board has agreed to confer with the Committee to the extent it believes additional disclosures should be added to the May 2021 Disclosure Statement. | The Committee needs this information so that unsecured creditors can understand how the payments under the GO CVIs will affect their potential recoveries. The information that is publicly available is insufficient for the Committee to understand likely payments under the GO CVIs. The Committee will continue to meet and confer with the Oversight Board and the parties' financial advisors to evaluate the calculations as to the value of the CVIs. As discussed in the Reply, however, the Oversight Board's willingness to provide additional disclosures is not a substitute for the production of responsive documents. *See* Reply ¶ 24. |
| 11. | All Documents concerning the FOMB's calculation, based on the certified 2021 Fiscal Plan, of likely payments under the Clawback CVIs, and any analysis regarding value attributable to the Clawback CVIs given the projected | The Oversight Board already has directed the Committee to publicly available information that should allow the Committee to understand likely payments to holders of GO CVIs (*see* Second RFP | The Committee needs this information so that unsecured creditors can understand how the payments under the Clawback CVIs will affect their potential recoveries. The information that is publicly available is insufficient for the Committee to understand likely payments under the Clawback CVIs. The Committee will continue to meet and |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|--------------------|
| *Second Set of Requests, Dated May 14, 2021 (Mot Ex. 10)* | | | |
| | payments and resulting increase to recovery for each respective class receiving Clawback CVIs. | Responses).  Further, the Oversight Board has agreed to confer with the Committee to the extent it believes additional disclosures should be added to the May 2021 Disclosure Statement. | confer with the Oversight Board and the parties' financial advisors to evaluate the calculations as to the value of these CVIs.  As discussed in the Reply, however, the Oversight Board's willingness to provide additional disclosures is not a substitute for the production of responsive documents.  *See id.* |
| 12. | Documents sufficient to show all Commonwealth, PBA and ERS unencumbered real property that is currently vacant, including the value of such assets. | The Debtors are not required to liquidate themselves in a municipal bankruptcy context.  Unlike corporate reorganizations, liquidation is not an option for municipalities.  Creditors having claims against New York City are not allowed to levy on Central Park and sell it.  Similarly, Puerto Rico's reaches and other assets are not for sale.  Creditors are paid from Puerto Rico's accumulated cash and future revenues.  Accordingly, the Debtors' other assets are not relevant to the adequacy of the May 2021 Disclosure Statement. | Notwithstanding the unique nature of municipal bankruptcies, this court must still ensure that the Proposed Plan treats all creditors fairly.  Moreover, bankruptcy courts must apply the "best interests of creditors" test to conclude that the municipal debtor made a "reasonable effort" to repay its creditors.  *See* Reply ¶¶ 16-17. Unsecured creditors are entitled to know if the Debtors in these cases have made such an effort as part of the Proposed Plan before deciding whether or not to vote on it.  Such an effort will take into account, in addition to the Commonwealth's accumulated cash and future revenues, other unencumbered real property that may be available for sale. |
| 13. | Documents sufficient to identify the 7% of governmental entities that have not provided a response to requests for information relating to account balances and restriction classifications and steps being taken by the FOMB to obtain such | The Oversight Board has agreed to provide information responsive to this Request. | The Committee and its advisors are reviewing information in the Oversight Board's June 8, 2021 Letter to determine whether this request has been satisfied. The Committee reserves its right to request additional documents to the extent that the |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|--------------------------|---------------------|
| | *Second Set of Requests, Dated May 14, 2021 (Mot Ex. 10)* | | |
| | information as well as an estimate of unprovided amounts. *See* Third Amended Disclosure Statement, at 142. | | information provided by the Oversight Board is insufficient. |
| 14. | All Documents concerning the rationale for increasing recovery percentages to Dairy Producers (Class 50) and Med Centers (Class 53) from 40% under the Second Amended Disclosure Statement to 50% under the Third Amended Disclosure Statement while not increasing recoveries to CW General Unsecured Claims (Class 55). | All parties to the settlements likely have different rationales for why they settled, and their respective reasons are not relevant to the adequacy of the Disclosure Statement. | The Oversight Board is the proponent of the Proposed Plan. Unsecured creditors are entitled to understand the Oversight Board's rationale for settlements, classification decisions, and other actions that form the basis of a Proposed Plan before they vote on that Proposed Plan. |
| 15. | All Documents concerning any analysis, based on the projections in the certified 2021 Fiscal Plan and the economic terms associated with the various plan support agreements, of whether the Commonwealth will be able to pay its debts under the Third Amended Plan when they come due. | The proposed plan of adjustment will not be confirmed if it is not feasible. Analyses regarding whether the Commonwealth will be able to pay its debts when they come due is not relevant to the adequacy of the May 2021 Disclosure Statement. | The fact that the Court will not confirm the Proposed Plan if it is not feasible does not mean that creditors are not entitled to make their own assessment of feasibility. Accordingly, any documents showing the Oversight Board's analysis of whether the Commonwealth will be able to pay its debts when they become due are highly relevant to the adequacy of the disclosure statement and should be produced. |
| 16. | All Documents concerning any analysis of whether the New GO Bonds will trade at par. | Analyses of whether the New GO Bonds will trade at par would be at best, guesses, and are not relevant to the adequacy of the Disclosure Statement | The Oversight Board's analyses regarding whether the New GO Bonds will trade at par is relevant to allow creditors voting on the Proposed Plan to understand the true recoveries of the settling bondholders. The fact that any such analysis would be "at best, guesses," is not a justification for the Oversight Board not to produce such analyses to |

| # | Request | Oversight Board Response | Committee Response |
|---|---------|------------------------|--------------------|
| *Second Set of Requests, Dated May 14, 2021 (Mot Ex. 10)* | | | |
|   |         |                        | the extent they are in its possession, custody or control. |