# **EXHIBIT 1**

**Proskauer»**  Proskauer Rose LLP  Eleven Times Square  New York, NY 10036-8299

June 8, 2021

Brian S. Rosen
Member of the Firm
d +1.212.969.3380
f 212.969.2900
brosen@proskauer.com
www.proskauer.com

**By Email**

Nicholas Bassett, Esq.
Paul Hastings LLP
2050 M Street, N.W.
Washington, D.C. 20036
nicholasbassett@paulhastings.com

Re:   *In re: Commonwealth of Puerto Rico, et al.* (D.P.R. Case No. 17-3283)  Discovery Relating to Disclosure Statement for Second and Third Amended Title III Plans

Dear Nick,

This letter updates our numerous conversations and correspondence including: (i) my May 26, 2021 letter (the "May 26 Letter"); (ii) the Committee's June 2, 2021 letter (the "June 2 Letter"); and (iii) our May 24, 2021 and June 1, 2021 telephonic conferences regarding the Committee's First[1] and Second[2] Sets of Document Requests (the "Requests," and each individually a "Request"), as well as the Oversight Board's responses and objections (the "Responses," and each individually a "Response")[3] thereto.

As an initial matter, the Oversight Board does not believe your June 2 Letter accurately describes the parties' discussions during the May 24, 2021 teleconference. Specifically, during the May 24 call, counsel for the Oversight Board confirmed that, while it is not willing to engage in extensive additional document discovery in response to the Committee's Requests, the Oversight Board *is* willing to provide the Committee with information in response to many of its Requests. Further, the Oversight Board noted that, in its Responses, it had offered to confer with respect to several of the Committee's Requests, and specifically suggested that the parties address such Requests individually. In addition, the Oversight Board indicated it was willing to

---

[1] "First Set of Document Requests" refers to the *First Set of Document Requests to Financial Oversight and Management Board for Puerto Rico and its Advisors in Connection with Disclosure Statement for Second Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.*

[2] Second Set of Document Requests" refers to *Second Set of Document Requests to Financial Oversight and Management Board for Puerto Rico and its Advisors in Connection with Disclosure Statement for Third Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.*

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Responses.

**Proskauer»**

Nicholas Bassett, Esq.
June 8, 2021
Page 2

discuss additional disclosure with respect to the issues underlying all the Committee's requests. The Committee declined to engage with the Oversight Board and indicated it would be filing a motion to compel shortly.

> I. **First Set of Document Requests**
>
> A.  *Request No. 1 ("All Documents concerning any estimate, by the FOMB or any other party, of the CW General Unsecured Claims in Class 55 of the Second Amended Plan, including all documents concerning the number and amount of such claims, the estimate in the Initial Disclosure Statement of approximately $5.5 billion in general unsecured claims, all spreadsheets, charts, and analyses created by FOMB advisors, including PJT Partners, relating to such estimate, and all drafts of and supporting data and sources for such spreadsheets, charts, and analyses.")*
>
>    *Request No. 2 ("Documents sufficient to show the number and amount of CW General Unsecured Claims in Class 55 that are (i) claims held by suppliers of goods and services, (ii) unliquidated litigation claims, (iii) claims resulting from judgments and settlements, (iv) claims eligible to be resolved through the proposed ACR Procedures, (v) tax refund claims, (vi) eminent domain claims, (vii) grievance claims, (viii) retiree benefit claims, (ix) claims owed to public employees for salary and benefits, and (x) claims held by governmental units or instrumentalities, including Documents sufficient to show which governmental units or instrumentalities hold such claims.")*
>
>    *Request No. 52 ("All Documents concerning the FOMB's estimate of general unsecured claims against ERS in Class 64 of the Second Amended Plan, including the number and amount of such claims.")*

These Requests seek (i) the number and amount of Commonwealth general unsecured claims, broken down into specific subcategories; (ii) the Oversight Board's estimates of general unsecured claims against the Commonwealth; and (iii) the Oversight Board's estimates of general unsecured claims against ERS. The June 2 Letter states that the Oversight Board informed the Committee that it had already provided such information but "was not able to direct [the Committee] to specific documentation." June 2 Letter at 2.

Your June 2 Letter again does not accurately describe the parties' discussions. As the Committee is well aware, the Oversight Board has regularly provided the Committee with its current estimate of the Commonwealth's general unsecured claims, including on December 5, 2019; June 3, 2020; September 28, 2020; November 18, 2020; February 23, 2021; May 21, 2021; and June 4, 2021. As the Committee also is aware, the Oversight Board's review and analysis of the claims filed against the Debtors remains ongoing, and accordingly, those estimates are

2

**Proskauer»**

Nicholas Bassett, Esq.
June 8, 2021
Page 3

subject to further change. The summary report the Oversight Board will provide to the Committee will include information regarding the Oversight Board's current estimates of the Commonwealth's and ERS's general unsecured claims. To be clear, however, that estimate remains subject to further change as the Oversight Board's analysis continues.

> **B.** *Request No. 7 ("Documents sufficient to show the specific litigations and claims that will be transferred to the Avoidance Actions Trust, and all Documents concerning the basis for the FOMB's decisions as to which litigations and claims to include in or exclude from the Avoidance Actions Trust, including (i) the 'garden variety' avoidance actions that the FOMB and Committee have commenced against third parties, including those actions listed in Appendix I to the Order Granting Omnibus Motion by the Financial Oversight and Management Board for Puerto Rico, Acting by and Through the Members of the Special Claims Committee, and the Official Committee of Unsecured Creditors to (I) Establish Litigation Case Management Procedures and (II) Establish Procedures for Approval of Settlements [Docket No. 7941], (ii) the litigation against certain underwriters pending in Adv. Pro. No. 19-280, and (iii) the affirmative recovery actions to be identified on Exhibit B to the Second Amended Plan.").*

In its Responses, and again during the June 1 teleconference, the Oversight Board advised the Committee that information responsive to Request No. 7 is included in Exhibit A to the *Third Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.* On the June 1 teleconference, and again in the June 2 Letter, the Committee advised that it was specifically interested in "what actions will be included in Exhibit B to the Third Amended Plan of Adjustment," as well as "whether avoidance actions that are currently tolled, but have not yet been filed, wil [*sic*] also be transferred to the Avoidance Actions Trust." June 2 Letter at 2.

The Third Amended Plan of Adjustment provides that Exhibit B will list actions brought by the Debtors seeking "affirmative recoveries," which include currently-unfiled actions that are subject to tolling agreements. The Oversight Board will consider revising the Third Amended Plan of Adjustment to delete Exhibit B and provide that all claims that are subject to tolling agreements, but have not yet been filed, will be transferred to the Avoidance Actions Trust. The Committee is aware of the claims covered by such tolling agreements, because it is either a signatory to such agreements, or is otherwise aware of the existence of such agreements and the counterparties thereto. Given the Committee's role as co-counsel with respect to the tolled actions, we find it surprising that you are seeking that information in this context rather than reaching out to Brown Rudnick, which we suggest you do to obtain copies of any tolling agreements that you do not already have.

> **C.** *Request No. 8 ("All Documents concerning the basis for classifying (i) Retiree Claims (Class 48A), (ii) Dairy Producer Claims (Class 50), (iii) Eminent*

3

**Proskauer**

Nicholas Bassett, Esq.
June 8, 2021
Page 4

> *Domain Claims (Class 51), (iv) Energy Incentive Claims (Class 52), (v) Med Center Claims (Class 53), and (vi) Gracia Gracia Claims (Class 65) separately from CW General Unsecured Claims (Class 55).").*

As the Oversight Board explained in its Responses, and again on the June 1 teleconference, the Oversight Board has already provided documents responsive to this Request via the Disclosure Statement Depository and the SFTP. On the June 1 teleconference, the Oversight Board reiterated that the documents it has provided to date provide information regarding the legal rights of the claimants in Classes 48A, 50, 53 and 65. Further, the Oversight Board explained that there are no responsive, non-privileged documents available to explain the legal bases for its classification of claimants into Classes 51 and 52, because those classifications are based on the specific statutory rights enjoyed by such claimants. In addition, the Oversight Board offered to facilitate discussions with individuals on its team who could explain to the Committee the justification for its classification determinations, and to discuss whether additional disclosures in the Third Amended Disclosure Statement are necessary. The Committee indicated that it was willing to participate in such discussions.

Your June 2 Letter states that the Committee "requested further responsive documents, including documents explaining which legal rights of the claimants support the Oversight Board's classification and treatment decisions and why." June 2 Letter at 3. That is not accurate. The Committee did not request production of additional documents; it simply reiterated its view (albeit inaccurate) that the documents the Oversight Board has provided to date are insufficient, without explaining why it believed those documents do not provide the information requested. Nevertheless, the Oversight Board remains willing to facilitate the discussions it offered on the June 1 teleconference. Please let us know the names of the individuals who will participate on behalf of the Committee, as well as your availability to discuss during this week.

> **D.** *Request No. 11 ("All Documents concerning the consideration to be received by the Initial PSA Creditors under the Settlements, including the extent to which (i) such Settlements allegedly reduce the Commonwealth's existing liabilities and (ii) different bonds (by year of issuance) receive different treatment under such Settlements.").*

As noted in its May 26 Letter and on the June 1 teleconference, the Oversight Board will provide information regarding the initial PSA creditors' aggregate claims as of the date of the PSA, which should enable to the Committee to calculate the total Consummation Costs. The Oversight Board expects to provide that information as soon as practicable.

On the June 1 teleconference, and again in the June 2 Letter, the Committee requested that the Oversight Board provide this claims data broken down separately for each party to the PSA. The Committee does not require information regarding the holdings of individual PSA

**Proskauer»**

Nicholas Bassett, Esq.
June 8, 2021
Page 5

parties in order to calculate Consummation Costs, and the Committee has articulated no other basis for this request. Accordingly, the Oversight Board will provide only aggregate claims data.

> E. *Request No. 14 ("All Documents concerning the basis for releasing 'clawback' claims against former GO and PBA bondholders for recovery of principal and interest payments (see Second Amended Disclosure Statement at 311-12), including Documents sufficient to show (i) the total amount of principal and interest paid to such bondholders and (ii) the consideration (if any) that such bondholders are providing in exchange for the release of such claims.").*

Request No. 14 seeks (1) "Documents concerning the basis for releasing 'clawback' claims against former GO and PBA bondholders for recovery of principal and interest payments"; and (2) "Documents sufficient to show (*i*) the total amount of principal and interest paid to such bondholders and (*ii*) the consideration (if any) that such bondholders are providing in exchange for the release of such claims." The June 2 Letter reiterates the Committee's view that "it needs documents concerning the Oversight Board's rationale for releasing claims against these former bondholders," and declares that the parties "are at an impasse on this issue." June 2 Letter, at 3.

For the reasons set forth in the Oversight Board's Responses, in the May 26 Letter, on the June 1 teleconference, and in the *Objection of the Financial Oversight and Management Board for Puerto Rico to Urgent Motion of the Official Committee of Unsecured Creditors to Compel Discovery in Connection with the Third Amended Disclosure Statement* [ECF No. 16883] (the "Objection to Motion to Compel"), the Committee is not entitled to discovery in connection with the Disclosure Statement regarding the Oversight Board's "basis" for releasing claims against former GO and PBA bondholders. As previously explained, this term is one of several terms incorporated into a settlement reached through mediator-facilitated negotiations. The Committee has no basis to isolate a single term from the entire agreement and to seek discovery regarding that term. In any event, the parties' dispute regarding this Request is already before the Court and will be adjudicated in conjunction with the resolution of the Committee's pending motion to compel.

With respect to the Committee's request for the amount of principal and interest paid to former GO and PBA bondholders, the Committee already has access to such information. Information regarding GO and PBA bondholders was obtained by the Special Claims Committee in connection with litigations, in which the Committee is co-Plaintiff, seeking to recover principal and interest payments made to such bondholders. That information is subject to a specific confidentiality order. *See Order Allowing Motions to Enforce* [ECF No. 6967] (the "Confidentiality Order"). The Confidentiality Order, however, specifically permits the Special Claims Committee to disclose such information to the Committee. *See* Confidentiality Order at ¶ 7, 10(a). The Oversight Board anticipates the Committee will promptly avail itself of the

5

**Proskauer»**

Nicholas Bassett, Esq.
June 8, 2021
Page 6

opportunity to review this information. Please include counsel for the Oversight Board in any discussions with counsel for the Special Claims Committee regarding access to that information.

> **F.** ***Request No. 15 ("Documents sufficient to identify the total amount of PBA administrative 'rent' claims that PBA would hold against the Commonwealth from the petition date through February 28, 2021, as well as the monthly amount of such claims that will accrue going forward, if PBA were to prevail in the PBA Litigation.").***

The Committee acknowledged during the June 1 teleconference that, as a co-plaintiff in the PBA Litigation, it previously had calculated the amount of PBA administrative "rent" claims, and accordingly, does not require historical information regarding administrative "rent" claims starting from the petition date. Nevertheless, the Committee claims it lacks "current" data "in light of changes to contracts, the expiration of contracts, etc." June 2 Letter at 3. The Oversight Board suggested, and the Committee agreed, that this Request could best be resolved through discussions between the parties' financial advisors. Please let us know your and your financial advisor's availability to discuss during this week.

> **G.** ***Request No. 17 ("Documents sufficient to identify all properties to be transferred by PBA to the Commonwealth or other entities as part of the PBA Settlement or the Second Amended Plan.").***
>
> ***Request No. 18 ("All Documents concerning any analysis of (i) whether the properties (if any) identified in response to Request No. 17 are in fact properties owned by PBA and (ii) the value of such properties (if any).")***

Your June 2 Letter again misstates the parties' discussions on the June 1 teleconference. On the call, counsel for the Oversight Board questioned the Committee's basis for requesting information regarding whether PBA properties to be transferred to the Commonwealth "are in fact properties owned by PBA." Counsel for the Oversight Board took both Request Nos. 17 and 18 under advisement, and did not agree to "ascertain whether information existed that it could provide concerning the ownership of the properties as set forth in Request No. 18." June 2 Letter at 5.

In any event, the Oversight Board will produce a document listing the real estate assets of PBA as of December 2020. The list remains subject to change as further validation of its accuracy is performed by PBA.

> **H.** ***Request No. 23 ("All Documents concerning the FOMB's calculation of the Comprehensive Cap, including Documents sufficient to show (i) whether excess capacity remains under the Comprehensive Cap and (ii) if so, how such excess capacity will be used. See Second Amended Plan § 1.123").***

6

**Proskauer»**

Nicholas Bassett, Esq.
June 8, 2021
Page 7

> *Request No. 24 ("All Documents concerning the FOMB's calculation of the Tax Supported Debt. See Second Amended Plan § 1.310.")*

On the June 1 teleconference, the Committee requested information regarding projections the Oversight Board may have performed in connection with the Comprehensive Cap and the Tax Supported Debt. In the June 2 Letter, the Committee further clarified that it requests calculations performed "to determine whether the Comprehensive Cap would be met or exceeded based on the issuance of new bonds under the Third Amended Plan." The Oversight Board will take this request under advisement and respond as soon as practicable.

**I.**    *Request No. 26 ("All Documents concerning the FOMB's calculation of likely payments under the GO CVIs.").*

> *Request No. 56 ("All Documents concerning the FOMB's calculation of likely payments under the Clawback CVIs.")*

On the June 1 teleconference, and in the June 2 Letter, the Committee stated that it believes "the Oversight Board needs to disclose its calculations [regarding likely payments under the GO and Clawback CVIs] so that creditors voting on the plan know the total value being provided to the settling bondholders without having to perform their own calculations." June 2 Letter at 4. In the June 2 Letter, the Committee further stated that it "would be helpful if the Oversight Board can confirm whether it agrees with the Committee's calculations as to the value of the CVIs." *Id*.

On the June 1 teleconference, the Oversight Board agreed to provide additional disclosures regarding the calculation of GO and Clawback CVIs in its forthcoming further amended disclosure statement. In that regard, the Oversight Board agrees to provide additional detail regarding projections of SUT performance. Further, as noted above, the Oversight Board is willing to facilitate a discussion between the parties' financial advisors during this week.

**J.**    *Request No. 34 ("All Documents concerning the FOMB's estimates of the total retiree benefit claims in Classes 48A to 48E of the Second Amended Plan.").*

On the June 1 teleconference, the Oversight Board advised the Committee that it would take under advisement the Committee's request for estimates of the total retiree benefits claims in Classes 48A to 48E of the Third Amended Plan. The Oversight Board is continuing to investigate this Request and will follow up with additional information when it becomes available.

**K.**    *Request No. 35 ("Documents sufficient to show the current status and estimated date of completion of the FOMB's bank account analysis (see Second Amended*

7

**Proskauer》**

Nicholas Bassett, Esq.
June 8, 2021
Page 8

> *Disclosure Statement at 129-38), including Documents sufficient to show (i) which bank accounts the FOMB is reviewing, (ii) whether the accounts are restricted or unrestricted, and (iii) if the accounts are unrestricted, whether the funds in such accounts will be made available for creditor recoveries and, if not, why not.")*
>
> *Request No. 36 ("All Documents concerning the FOMB's decision to label certain accounts set forth in Exhibit J to the Second Amended Disclosure Statement 'restricted,' including Documents sufficient to explain what the FOMB means in designating such accounts 'restricted.'")*
>
> *Request No. 37 ("All Documents concerning the FOMB's decision to label certain accounts set forth in Exhibit J to the Second Amended Disclosure Statement 'asserted to be restricted,' including Documents sufficient to explain (i) what the FOMB means in designating such accounts 'asserted to be restricted,' (ii) why a definitive determination as to whether these accounts are restricted or unrestricted has not yet been made, and (iii) whether and to what extent such designations will change in light of the Oversight Board's recently-announced settlements with other constituencies.").*
>
> *Request No. 38 ("All Documents concerning the FOMB's decision to label certain accounts set forth in Exhibit J to the Second Amended Disclosure Statement 'inconclusive,' including Documents sufficient to explain what the FOMB means in designating such accounts 'inconclusive' and Documents sufficient to explain why a definitive determination as to whether these accounts are restricted or unrestricted hasn't yet been made.")*
>
> *Request No. 40 ("Documents sufficient to explain whether each of the accounts on Exhibit J to the Second Amended Disclosure Statement with a 'pending' designation is restricted or unrestricted.")*

As the Oversight Board explained in its Responses and on the June 1 teleconference, the Oversight Board's cash restriction analysis remains ongoing. On the June 1 teleconference, the Committee specifically requested additional information regarding why certain accounts are labelled "asserted to be restricted based on ERS litigation." The Oversight Board provided the Committee with additional information and expects to update its description of accounts bearing this label in its forthcoming further amended disclosure statement.

Also on the June 1 teleconference, counsel for the Committee contended the Third Amended Disclosure Statement did not provide information sufficient to understand the reasons for its account classifications. Counsel for the Oversight Board disagreed, and pointed out that the Third Amended Disclosure Statement includes a description of each restriction classification.

8

**Proskauer**

Nicholas Bassett, Esq.
June 8, 2021
Page 9

*See, e.g.*, Third Amended Disclosure Statement at 137-38. Your June 2 Letter suggests the Committee "may come back with further specific account designation questions," June 2 Letter at 6, but does not identify any additional accounts with respect to which the Committee has questions. The Oversight Board remains willing to address any specific questions the Committee has regarding particular account classifications.

> **L.** *Request No. 39 ("Documents providing the December 31, 2020 account balances for those accounts set forth in Exhibit J to the Second Amended Disclosure Statement with a 'pending' designation.").*

On the June 1 teleconference, and in the June 2 Letter, the Committee requested an update regarding the timing of completing its analyses of the account balances for accounts designated "pending" in Exhibit L to the Third Amended Disclosure Statement. As the Oversight Board has previously explained, the account balance analyses for accounts designated "pending" will be completed as soon as possible. The Oversight Board anticipates that additional analysis will be completed prior to the Disclosure Statement Hearing, currently scheduled for July 13, 2021.

> **M.** *Request No. 41 ("Documents sufficient to show the sources and uses of the Debtors' cash and investments rolled forward from the December 31, 2020 account balances to June 30, 2021 and adjusted for settlements reached in connection with the Second Amended Plan.").*

Thank you for confirming on the June 1 teleconference that the Oversight Board cannot provide documents fully responsive to this Request given that the end date has not yet occurred. The June 2 Letter stated that this Request "can be satisfied by the Oversight Board providing an updated 'Cash Bridge' document, or other summary . . . showing sources and uses rolled forward from December 31, 2020 to the present." June 2 Letter at 5-6. In light of the information already provided to the Committee to date regarding the Commonwealth's cash, the Oversight Board does not believe further information is necessary or appropriate at this time.

> **N.** *Request No. 46 ("Documents sufficient to show (i) the December 31, 2020 balances and/or value of the ERS assets that the Commonwealth will purchase on the effective date of the Second Amended Plan, as described on page 339 of the Second Amended Disclosure Statement, (ii) whether or not such value will be available for ERS and/or Commonwealth general unsecured creditors after payment is made to ERS bondholders, and (iii) if such value is not so available, why not.").*

As explained in the May 26 Letter, the Oversight Board will add language to the Third Amended Disclosure Statement indicating that the "excess value" of the ERS assets has been taken into account in reaching the compromise and settlement with GO/PBA bondholders. The

9

**Proskauer»**

Nicholas Bassett, Esq.
June 8, 2021
Page 10

June 2 Letter requests that the Committee "have the opportunity to review any such language . . . ." June 2 Letter at 5. The Oversight Board is willing to share with the Committee the language it proposes to add.

With respect to the Committee's request for information regarding the value of the ERS assets, the Oversight Board believes it would be most efficient for this Request to be addressed in connection with the anticipated discussion between the parties' financial advisors.

## II. Second Set of Document Requests

A. *Request No. 5 ("Fully executed agreements evidencing all 2011 CW Guarantee Bond Claims on account of the Commonwealth's full faith, credit and taxing power guarantee of '(a) an affiliate, agency or instrumentality, which guarantee was executed, delivered or enacted during the period from January 1, 2014 up to, but not including, the Commonwealth Petition Date,' and documents sufficient to quantify such 2011 CW Guarantee Bond Claims. See Third Amended Plan § 1.37.")*

As the parties discussed on the June 1 teleconference, and as confirmed in the June 2 Letter, Request No. 5 contains a typo, and seeks fully executed agreements evidencing all 2014 CW Guarantee Bond Claims, not 2011 CW Guarantee Bond Claims. The Oversight Board produced documents responsive to this Request on June 4, 2021, and will produce additional documents when available.

B. *Request No. 8 ("Documents sufficient to identify the name of the entity that will pay the HTA Restriction Fee, the CCDA Restriction Fee and the CCDA cash settlement amount, along with identify [sic] of the bank accounts that will make such payments.").*

On the June 1 teleconference, counsel for the Committee stated that it inferred the Commonwealth would be paying the HTA Restriction Fee, the CCDA Restriction Fee, and the CCDA cash settlement amount, but that a press release issued in connection with the announcement of the Oversight Board's settlement with Assured and National suggested these amounts would be paid from accounts associated with hotel room taxes. As the Oversight Board stated on the June 1 call, the Oversight Board will provide additional information in its forthcoming further amended disclosure statement regarding the payments specified in Request No. 8.

C. *Request No. 9 ("All Documents concerning the $70.75 million valuation of the ERS private equity portfolio.").*

**Proskauer»**

Nicholas Bassett, Esq.
June 8, 2021
Page 11

On the June 1 teleconference, counsel for the Committee stated that its financial advisors had questions regarding the $70.75 million valuation of the ERS private equity portfolio, as their calculations did not align with the Oversight Board's valuation by a "few million dollars." Accordingly, notwithstanding the Oversight Board's belief that information concerning the $70.75 million valuation of the ERS private equity portfolio is not relevant to the Committee's evaluation of the Third Amended Disclosure Statement, the parties mutually agreed that their financial advisors are best positioned to address this Request. The Oversight Board accordingly anticipates that this Request can be resolved through a discussion between the parties' financial advisors during this week.

    **D.**    *Request No. 12 ("Documents sufficient to show all Commonwealth, PBA and ERS unencumbered real property that is currently vacant, including the value of such assets.")*

For the reasons explained in the Oversight Board's Objection to Motion to Compel, the Oversight Board will not produce documents responsive to this Request.

    **E.**    *Request No. 13 ("Documents sufficient to identify the 7% of governmental entities that have not provided a response to requests for information relating to account balances and restriction classifications and steps being taken by the FOMB to obtain such information as well as an estimate of unprovided amounts.").*

On the June 1 call, the Committee clarified that this request seeks (1) an identification of the governmental entities that have not provided a response to requests for information relating to the account balances and restriction classifications, and (2) the balances in the accounts held by those entities, if available.

In response to this Request, the Oversight Board identifies the following four entities that have not responded to requests for information, as well as bank balances, where available.

| Account Holder (English) | 12/31/2020 Balances |
|---|---|
| Senate | 7,934,261 |
| National Guard of Puerto Rico | 2,071,898 |
| Department of Consumer Affairs | 4,767 |
| Joint Special Commission of Legislative Funds | Not available |

    **F.**    *Request No. 15 ("All Documents concerning any analysis, based on the projections in the certified 2021 Fiscal Plan and the economic terms associated*

11

# Proskauer»

Nicholas Bassett, Esq.
June 8, 2021
Page 12

> with the various plan support agreements, of whether the Commonwealth will be able to pay its debts under the Third Amended Plan when they come due.").

For the reasons explained in the Oversight Board's Objection to Motion to Compel, the Oversight Board will not produce documents responsive to this Request. Nevertheless, as discussed on the June 1 teleconference, the Oversight Board will update its forthcoming further amended disclosure statement to reflect that the Oversight Board's feasibility analysis is based on projections in the certified 2021 Fiscal Plan.

> G. *Request No. 16 ("All Documents concerning any analysis of whether the New GO Bonds will trade at par.")*.

For the reasons explained in the Oversight Board's Objection to Motion to Compel, the Oversight Board will not produce documents responsive to this Request.

The Oversight Board remains available to meet and confer with the Committee to the extent it has any further questions regarding any of the issues addressed in this letter.

Sincerely,

/s/ *Brian S. Rosen*
Brian S. Rosen

cc: Margaret A. Dale, Esq.
Michael T. Mervis, Esq.
Laura Stafford, Esq.
Julia D. Alonzo, Esq.