**Objection deadline for Debtors' motion:  June 15, 2021 (AST)**
**Objection Deadline for cross-motion:  June 28, 2021, at 4:00 p.m. (AST)**
**Hearing Date and Time for cross-motion:  July 13, 2021, at 9:30 a.m. (AST)**

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

        Debtors.

-------------------------------------------------------------------x

PROMESA
Title III


No. 17 BK 3283-LTS
(Jointly Administered)



**[Response to Proposed Confirmation Procedures urged by Debtors in Docket #16756,
#16757 and #16758]**


**[1] RESPONSE AND OBJECTION OF INDIVIDUAL BONDHOLDER TO DEBTORS'
MOTIONS FOR ORDERS ESTABLISHING CONFIRMATION PROCEDURES, AND
[2] CROSS-MOTION TO ESTABLISH A COMMITTEE TO REPRESENT RETAIL
INVESTORS IN THE CONFIRMATION PROCESS**


Dated:  June 9, 2021

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

I.   SPECIFIC OBJECTIONS TO PROPOSED CONFIRMATION PROCEDURES
     IN DOCKET #16756 AND #16757. ...................................................................2

     A.   The procedures for dissemination of the confirmation hearing notice and
          Disclosure Statement should be modified to ensure individual bondholders
          have adequate time to object to confirmation and a meaningful opportunity
          to participate in the confirmation process. ...............................................2

     B.   There should be a simplified procedure for objections and a clear
          statement of the deadline to object should be set out in bold on page one of
          the notice. ..................................................................................................5

     C.   The concept of an initial objection deadline should be dropped;
          alternatively, any deadline for initial objections to confirmation should not
          be set for a date earlier than 30 days after the date both the confirmation
          hearing notice and the Plan and Disclosure Statement are realistically
          expected to be actually received by individual bondholders, so as to
          give individual bondholders an adequate opportunity to prepare and file
          initial objections............................................................................................6

     D.   Debtors should promptly "post" the confirmation hearing notice, Plan and
          Disclosure Statement on EMMA. ...............................................................9

     E.   Debtors should file full moving papers supporting confirmation, including
          Debtors' opening brief, as well as declarations and supporting documents,
          at least 30 days before the deadline for final objections.......................10

     F.   The Disclosure Statement should provide full information on Debtors'
          position as to how the Plan complies with §2174(b)(6) and attach all "best
          interest" test reports, and all supporting materials should be uploaded to
          the depository, before the Disclosure Statement is approved. ...............12

     G.   Interrogatories should be permitted. .........................................................13

     H.   Information provided in discovery should be added to the Plan
          Depository/Data Room, and steps need to be taken to make the Plan
          Depository practical for individuals to use. ............................................13

     I.   Record date and voting procedure. ...........................................................19

     J.   Other matters related to discovery. ...........................................................22

1.   Certifications should not be required as a precondition to discovery requests. ...................................................................................22

2.   Creditors should not be required to provide Debtors' proposed required acknowledgments. .......................................................22

3.   Discovery should not be limited to materials "relied upon" by Debtors. ............................................................................................23

K.   Publication of the confirmation hearing notice is not sufficient to reach individual 50-states investors. .................................................24

L.   If confidentiality restrictions are maintained by Court order, then there should be no use of, or any reference to, the mediation process in Court filings and proceedings. ..........................................................................24

II.   CROSS-MOTION TO ESTABLISH A COMMITTEE TO REPRESENT RETAIL INVESTORS IN THE CONFIRMATION PROCESS. ...................................25

III.   STANDING TO ADDRESS CONFIRMATION PROCEDURES ISSUES AND OTHER MATTERS PRESENTED HEREIN. ..................................................29

IV.   RESERVATION OF RIGHTS AND CONTINUED ASSERTION OF PRIOR OBJECTIONS. ...............................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Slattery* v. *U.S.*,
  231 F.2d 37 (5th Cir. 1956) ..................................................................28

*U.S.* v. *Contra Costa*,
  678 F.2d 90 (9th Cir. 1982) ..................................................................28

**Statutes**

11 U.S.C. §1102(a)(2)...............................................................................28

48 U.S.C. §2174(b)(6) .........................................................................12, 13

**Rules**

17 C.F.R. §240.15c2-12 ..............................................................................9

17 C.F.R. §240.15c2-12(b)(5).....................................................................9

17 C.F.R. §240.15c2-12(b)(5)(i)(C)(7)........................................................9

Bankruptcy Rule 7030 ...............................................................................13

Bankruptcy Rule 7033 ...............................................................................13

Bankruptcy Rule 7034 ...............................................................................13

Bankruptcy Rule 7036 ...............................................................................13

F.R. Evid. 408 ...........................................................................................28

## TABLE OF ABBREVIATIONS AND CITATIONS

| | |
|---|---|
| DS | Disclosure Statement (cited as Docket #16741-page-__-to-__-of-__ (DS-___), with the Docket # reference being to the "ribbon" applied by the court at the top of the court-filed version, and the "DS-___" page reference being to the page number at the bottom of each page) |
| # | Docket entries are referred to in the form of "#__" |
| Ex. | "Ex. __" refers to the exhibits to the Declaration of Peter C. Hein accompanying "[1] Response and Objection of Individual Bondholder to Debtors' Motions for Orders Establishing Confirmation Procedures, and [2] Cross-motion to Establish a Committee to Represent Retail Investors in the Confirmation Process" |

Peter C. Hein, pro se, submits this Response and Objection to relief sought by Debtors in Docket #16756, #16757 and #16758 pertaining to confirmation procedures. Debtors have also submitted multiple filings pertinent (in whole or in part) to approval of the Disclosure Statement. To avoid repetition and in the interest of clarity, this Response and Objection addresses Debtors' requests for relief pertaining to confirmation procedures, and I am filing a separate Response and Objection that addresses the adequacy of the Disclosure Statement. This Response and Objection pertaining to confirmation procedures also includes, in Point II, argument in support of my cross-motion seeking the establishment of a committee to represent Retail Investors in the confirmation process.

## PRELIMINARY STATEMENT

As noted in my Response and Objection to Debtors' Application for Approval of Disclosure Statement (page 1, notes 1 & 2 and Hein Decl. Exs. A-D), Commonwealth sold its bonds to individual investors nationwide, including in the 50 states, years before PROMESA was even in prospect. After these proceedings began, approximately 1,700+ individual bondholders filed notices of participation. Individual bondholders also filed proofs of claim.

Retail Investors are entitled to a confirmation process that puts Retail Investors on a level playing field with other creditors (including public employees, retirees and retirement plan participants, as well as PSA creditors) whose expenses are being paid by Debtors directly or indirectly (*e.g.*, through administrative expense claims and/or by agreed payments to selected creditors, *see* Plan Art. III.)

I.    **SPECIFIC OBJECTIONS TO PROPOSED CONFIRMATION PROCEDURES IN DOCKET #16756 AND #16757.**

     A.    **The procedures for dissemination of the confirmation hearing notice and Disclosure Statement should be modified to ensure individual bondholders have adequate time to object to confirmation and a meaningful opportunity to participate in the confirmation process.**

     1.    I recognize that Debtors do not have the names, addresses and email addresses of *all* beneficial holders of bonds.  Not all bondholders have filed notices of participation or proofs of claim.  Only holders of certain series of bonds were previously notified and even given an opportunity to file notices of participation, and bondholders were told that no bondholder was obliged to file a proof of claim.  (#12260-page-3-to-6-of-12; #12260-1-page-6-to-7-of-40; #2521-page-3-to-6-of-15; #2521-2-page-5-to-6-of-21.)  As a result, many individual bondholders — including individuals who, if given the opportunity, may wish to express their views on confirmation — would understandably not have filed a notice of participation or proof of claim. Thus, as Debtors recognize (#16756-page-21-to-22-of-346), it is necessary to go through the multi-step process of asking securities firms to identify beneficial holders whose bonds they hold in street name, and then arrange for confirmation hearing notice and solicitation packages to be sent to *all* beneficial holders.

     2.    That necessary multi-step process takes considerable time.  Based on past experience in the COFINA case, the process of identifying beneficial holders, and then arranging for confirmation hearing notices and solicitation packages to be sent to them, may take several weeks from the start of the process to the time the notices and packages are actually received by bondholders in the mail.  For example, in the COFINA case, this Court approved the disclosure statement on November 29, 2018 (#4382), yet I did not receive the solicitation package (which only included the COFINA plan and disclosure statement on a "flash drive") until December 17, 2018 (#4585-page-27-to-28-of-43), almost three weeks after the Court gave its approval (#4382). The schedule set for objections and other proceedings needs to take into account the inevitable delay that the multi-step process will entail.

3.      The delay in getting the confirmation hearing notice and Disclosure Statement
into the hands of unknown beneficial holders does not, however, excuse a similar delay in
notifying known beneficial holders who have provided their addresses and emails.  Prompt
notice should be given directly to the many individual bondholders who have filed notices of
participation and/or proofs of claim, and who have already provided mailing addresses, as well
as email addresses.  Debtors know who these individuals are and how to send information to
them.  These bondholders should be promptly sent the confirmation hearing notices, Plan and
Disclosure Statement directly by U.S. mail.

4.      Furthermore, an individual bondholder who has already expressed an interest in
receiving notices and participating, by filing a notice of participation and/or proof of claim,
should be sent a hard copy of the Plan and Disclosure Statement without the delay inherent in
requiring such bondholder to make a request for a hard copy, and only then be sent a hard copy,
of the Plan and Disclosure Statement.  While Debtors profess that hard copies will be sent upon
request (#16756-page-34-of-346), when I made a request of Prime Clerk for a hard copy of the
Plan and Disclosure Statement following the instructions in the Notice of Filing of Disclosure
Statement (#16742-page-3-of-3), I initially received an email response from Prime Clerk that
simply provided links to the Plan and Disclosure Statement, and I had to repeat my request for a
hard copy.  *See* accompanying Hein Decl. Ex. A.  As of the time I endeavored to finalize these
papers (June 8, 2021, in the evening) I still had not received hard copies by mail of the Plan and
Disclosure Statement in response to my request.

5.      The linked PDF of the Disclosure Statement I was sent by email in the initial
response to my request for a hard copy, when downloaded, is 88MB, which far exceeds the
25MB limit on what Gmail allows one to forward by email.  Few individuals are going to have
the ability to comprehend the turgid and lengthy Disclosure Statement by reading it on an
electronic link or find it feasible to print the 2239-page document for which Prime Clerk emailed
a link to me (2473 pages, including the Plan with its exhibits).  And the ability to request a hard
copy becomes illusory for most individuals if — even when one makes the request — the request

for a hard copy is met with an email response that simply provides a link, not a hard copy by U.S. mail.  There should not be a multi-step process that an individual bondholder, who has filed a notice of participation and/or proof of claim and is already known to FOMB, must navigate before the bondholder receives a hard copy of the Plan and Disclosure Statement.  Individual bondholders who have expressed a desire to receive notices by filing a notice of participation and/or proof of claim should be sent a hard copy of the Plan and Disclosure Statement at the outset.

6.      In the alternative, if the Court does not direct Debtors to mail individual bondholders who have filed notices of participation and/or proofs of claims a hard copy of the Plan and Disclosure Statement at the outset, at the very least the Court should require that Debtors email to all individual bondholders who filed notices of participation and/or proofs of claim all relevant notices and either PDFs of the Plan and Disclosure Statement in a size that will go through Gmail (24MB or less) or links to segments of documents available for downloading in segments of 24MB or less.  And, if hard copies of the Plan, Disclosure Statement and exhibits are not initially mailed to all individual bondholders, the time for objection to the Plan should be extended from that proposed by Debtors in order to take into account the expected delay from the time an individual receives the initial mailing without a hard copy of the Plan and Disclosure Statement and the time the individual bondholder is likely to receive the hard copy following a request therefor.

7.      Simply sending individual bondholders a computer flash drive — as Debtors propose (#16756-page-31-of-34) — is not sufficient.  Many individuals today are going to be highly suspect of a flash drive that arrives by mail, and will legitimately fear that plugging a flash drive into their computer could introduce a computer virus.  Type into Google "should I plug flash drive received from bankruptcy debtor into my computer," and up pops a Forbes article "Should You Plug That USB Drive Into Your Computer? (Beware Of Malware)."  In a time when malicious parties convincingly impersonate legitimate organizations through email and phone calls, the fact the package purports to come from Prime Clerk pertaining to the Puerto

4

Rico Title III may provide little assurance that the enclosed flash drive is safe, from the perspective of an understandably concerned and skeptical individual.  Furthermore, the flash drive used in the COFINA case was so small it literally could fall out when one opened the package without one even noticing it was there and, if one did notice it, the nature of its appearance (a small chip-like USB device, different from the typical flash drives I have seen) is such as to trigger concerns about computer security.  And, even if someone did plug the flash drive into their computer, as noted, it will be extremely difficult for most individuals to comprehend the turgid and lengthy Plan and Disclosure Statement by trying to read it on a computer (including from a local electronic copy on a flash drive), and it is not reasonable to expect individual bondholders to print 2473 pages of material (Plan + Disclosure Statement).

8.      Alternatively, at the very least, there should be a prominent reference up front in a cover letter accompanying any mailing of a computer flash drive that advises the recipient that they may request a full copy of the Plan, Disclosure Statement and exhibits, in hard-copy form, by emailing a specified email address or calling a specified phone number, and requests for hard copies should be promptly honored without the need for back-and-forth over whether in fact the requestor wants a hard copy, as opposed to a link.

**B.      There should be a simplified procedure for objections and a clear statement of the deadline to object should be set out in bold on page one of the notice.**

1.      A simplified process for submitting objections to confirmation should be adopted, similar to what I previously urged in the context of the hearing on the adequacy of the Disclosure Statement.  *See* Docket#16387-page-15-to-16-of-22.  Specifically:

a.      There should be a simplified process for individual bondholders to submit objections to the Plan, whereby objections can be submitted to an email address, perhaps maintained by the Commonwealth's agent Prime Clerk or a similar party, and Commonwealth's agent then forwards the objections to the Clerk of Court for filing, whereupon objections could be electronically distributed through the CM/ECF system to the parties entitled to receive notice.

b.      Alternatively, individuals could be given the option to mail their objections by a specified date, perhaps a week in advance of the deadline, to a specified court address, with objections postmarked on or before such date being docketed and treated as timely filed and served (as, upon being docketed, they can be automatically transmitted to counsel participating in the CM/ECF system).

c.      Or, alternatively, individual bondholders could be given the option to file using the Court's CM/ECF system, as the District of Puerto Rico CM/ECM manual expressly permits (*see* I.H.1.c, "The Court may also grant a pro se litigant access to file electronically in a particular case"), and individual bondholders should be notified that they have that option.

2.      In any event:

- The fact objections are required to be filed by the final objection deadline should be clearly stated on the first page of the notice (which is not now the case) (*compare* #16756-page-81-of-346 *with* #16756-page-86-of-346).  Advising a recipient of the deadline for objection on the first page of the notice could be easily done by moving footnote 1 (essentially a small type, boilerplate recitation of Title III case names and numbers which requires no specific action by the recipient) to a different location in the notice and using the resulting added room on page 1 to highlight the deadline for objection.

- The courthouse address to which objections are to be sent for filing (now on page 6 of the proposed notice, see #16756-page-86-of-346) should be set out in block form and bold type so it is clear and stands out to an individual reading the notice.

**C.      The concept of an initial objection deadline should be dropped; alternatively, any deadline for initial objections to confirmation should not be set for a date earlier than 30 days after the date both the confirmation hearing notice and the Plan and Disclosure Statement are realistically expected to be actually received by individual bondholders, so as to give individual bondholders an adequate opportunity to prepare and file initial objections.**

Debtors propose setting August 3, 2021 as a "deadline to file initial objections to confirmation."  (#16757-page-13-of-70; #16756-page-13-of-346).

For the following reasons, the concept of an initial objection deadline should be dropped. Alternatively, at the very least, if the concept is retained in any form, the initial objection deadline should be moved back, at least 30 days, to the later of September 3, 2021 or 30 days following the date that it is realistically expected that individual bondholders will actually receive both the confirmation hearing notice and the Plan and Disclosure Statement.

Mailing of the confirmation hearing notice alone is not contemplated until July 20, 2021 (or later, if the Court does not enter the Disclosure Statement order on the same day that the Court hears objections to the Disclosure Statement). (*See* #16756-page-13-of-346.) Based on experience in the COFINA case with the time frame that elapsed between the approval of the disclosure statement and the receipt of the solicitation packets (with only a flash drive copy of the plan and disclosure statement), it is doubtful that a mailed notice will be received by most individual bondholders by August 3, 2021. (*See* Point I.A, above.) Plus, (1) it appears that the Plan and Disclosure Statement will not be sent in any form with the initial mailing of the confirmation hearing notice (*cf.* #16756-pages-13,90-of-346), (2) any request for a copy of the Plan and Disclosure Statement is not likely to result in a bondholder receiving hard copies of the Plan and Disclosure Statement by August 3, 2021 (see accompanying Hein Decl, ¶2), and (3) there in any event will not be time for an individual who first receives a notice and then requests the Plan and Disclosure Statement — even if (contrary to what past experience suggests) both are received by August 3 — to (potentially) consult an attorney, prepare an objection (whether on one's own or after consultation with an attorney) and submit the objection so as to have it actually received by the Court by August 3, 2021.

Debtors propose that only parties in interest who file and serve an initial objection to confirmation by August 3, 2021 shall be "Eligible Creditors" (#16757-page-16-of-70-¶40) who will have the right to be full participants in the confirmation process, including seeking discovery (even targeted discovery) from Debtors. (*E.g.*, #16757-page-17-of-70-¶¶42-43; #16757-page-35-to-36-of-70-¶¶6,7.) It appears only an Eligible Creditor will have access to the Plan Depository. (#16757-pages-35,38-of-70-¶¶6,9.) And even if a bondholder does file an initial

7

objection to confirmation, that bondholder's discovery requests of Debtors are "limited to the issues set forth in the Initial Objection."  (#16757-page-17-of-70-¶42; *see also* ¶40).  In addition, there are specified requirements for what an initial objection must contain and there are specifications as to what could be included in a "supplemental objection" filed by the proposed October 8, 2021 "final objection deadline" if someone has filed an initial objection.  (#16757-page-16-to-17-of-70).  (Oddly, it appears that only Debtors are immunized from discovery by those who fail to serve initial objections by August 3, 2021.  *See* #16757-page-17-of-70-¶42(ii) ("Nothing shall preclude … any party in interest from seeking discovery of any party, other than Debtors, in connection with a properly filed objection to confirmation").)

Under Debtors' proposed procedures, most individual bondholders will not have the same opportunity to participate in the proposed confirmation process as other creditors, such as those who participated in Plan negotiations and/or are represented by committees and professionals retained by those committees.  It is not appropriate to set any deadline for initial objections to confirmation for a date before (i) the confirmation hearing notice, Plan and Disclosure Statement, are reasonably expected to be actually received by individual bondholders, and (ii) individual bondholders have an adequate opportunity — at least 30 days following receipt of all such materials — to prepare and file initial objections to confirmation.

The confusing device of setting (i) an "initial confirmation objection deadline" of August 3, 2021 and (ii) a deadline for what is described as "Supplemental Objections to Confirmation" due October 8, 2021 (#16757-page-14-of-70) is also likely to mislead individual bondholders who receive the notices and solicitation packages just before, or even after, the initial confirmation objection deadline, into thinking that they have already missed a deadline for objection and thereby discourage individual bondholders from studying the materials they receive and preparing and submitting objections by October 8, 2021.

**D.    Debtors should promptly "post" the confirmation hearing notice, Plan and Disclosure Statement on EMMA.**

Debtors' bonds are listed on the Municipal Securities Rulemaking Board ("MSRB") "Electronic Municipal Market Access" ("EMMA") platform, which many bondholders use as a source of information.  EMMA allows individuals to set up "alerts" on their holdings.  Debtors already "post" various notices and financial and operating information on EMMA, such as weekly TSA cash flow reports.

As required by SEC rule (17 C.F.R. §240.15c2-12, including §240.15c2-12(b)(5)), Commonwealth covenanted in its Official Statements to provide certain continuing disclosures, including "modifications to rights of the holders (including Beneficial Owners) of the Bonds, if material."  *See* 2012A Official Statement, pp.26-29;[1] §240.15c2-12(b)(5)(i)(C)(7).  The proposed Plan and Disclosure Statement would constitute such, and should be disclosed by Commonwealth posting them on EMMA, linked to the CUSIPs affected by the Plan.

Furthermore, many investors expect material information will be posted on EMMA (and that investors will thus receive an "alert" of such posting).  Posting on EMMA is simple, and Commonwealth knows how to do it.  There is no valid reason for Commonwealth not to promptly "post" the confirmation hearing notice, proposed Plan and Disclosure Statement on EMMA.

Accordingly, this Court should order Debtors to promptly "post" on EMMA the confirmation hearing notice, proposed Plan and Disclosure Statement, as well as any future updates or modifications, whether or not such posting is already required by Commonwealth's undertakings and Rule 15c-12.

---

[1] *See* Hein Decl. accompanying separately filed Response and Objection to approval of Disclosure Statement, Ex. B, at 00044).

**E.** **Debtors should file full moving papers supporting confirmation, including Debtors' opening brief, as well as declarations and supporting documents, at least 30 days before the deadline for final objections.**

The proposed schedule does not appear to contemplate that Debtors file legal memoranda, affidavits or declarations in support of confirmation, as well as other materials that should be part of Debtors' affirmative moving papers in support of confirmation, until October 25, 2021, a date weeks after the final deadline for objections. Thus, it is not until October 25, 2021 that Debtors would file "Debtors' memorandum of law *in support* of confirmation of the Plan," or file "affidavits *in support* of confirmation," replies to objections to confirmation, and Debtors' "proposed order and findings of fact." (#16756-page-14,26,28-of-346; #16757-page-13-to-14-of-70 (emphasis added)).

Notably, Debtors' explanation of their proposed schedule, misleadingly described under the header "***Debtors' Reply Deadline***," specifically contemplates that, on October 25, 2021 — ***after*** the "final confirmation objection deadline" of October 8, 2021 — Debtors will not only file "replies" but will also file "the Debtors' memorandum of law *in support* of confirmation of the Plan," "any affidavits *in support* of confirmation of the Plan," and "the Debtors' proposed order and findings of fact confirming the Plan." (#16756-page-28-of-346).

Debtors apparently plan to repeat what debtor did in the COFINA case where debtor filed its ***supporting*** memorandum on the ***same day*** as debtor filed its ***reply*** to objections, and debtor filed supporting factual material even thereafter, all on the eve of the COFINA confirmation hearing. *See, e.g.*, #4663, #4664, #4756-#4760.

In the COFINA case, the Court nevertheless denied an objector the ability to submit a written response to debtor's belated opening submission and other papers. *Compare* Docket #4673-page-13-to-14-of-17 *with* #4686.

Debtors have the burden of proof to obtain confirmation. Proper procedure requires debtors to promptly file — now, at the outset of the confirmation process — bona fide supporting papers, including a brief setting forth their legal positions as to why confirmation is permissible, and any supporting factual material. Those papers should include Debtors'

10

positions on the matters Debtors can reasonably expect one or more parties to raise in objections based on issues already identified to date (in prior proceedings as well as in the briefing over the adequacy of the Disclosure Statement), such as whether general obligation bondholders have a Constitutional "first claim" on Commonwealth's available resources and are secured (and thus entitled to all accrued interest to date); whether Debtors may permissibly provide cash payments and recoveries to other parties, including public employees and their unions, without first making full payment of principal and all accrued interest on GO and GO guaranteed bonds; whether greater or more beneficial consideration may be selectively provided to some otherwise similarly situated GO or GO guaranteed bondholders based on their (i) being residents of Puerto Rico or (ii) being "Initial GO/PBA PSA Creditors" who participated in a confidential mediation-negotiation process, yet not be provided to all other similarly situated bondholders; and whether rights of a bondholder whose "first claim" under the Puerto Rico Constitution and secured interest under Puerto Rico Constitution and statutes can be abrogated by vote of, or settlement by, others.  Objectors are entitled to know — before filing objections — what Debtors' supporting papers say so that objectors can respond in their objections to Debtors' positions.  If (contrary to what I have urged) initial objections on August 3, 2021 are nevertheless still provided for, Debtors' opening papers in support of confirmation should also provide Debtors' position on issues raised in such initial objections as well, so Debtor's positions can be addressed by bondholders in their "final" objections.

Of course, if an objection is presented that Debtors really could not have anticipated and thus do not address in their supporting papers, Debtors will have the ability to reply to such objections.  But unless debtors are required to file, at the outset, bona fide moving papers setting forth legal and factual bases for confirmation that meets their burden, objectors will have no opportunity to respond in written form to Debtors' positions.

This Court should set a date for Debtors to file such bona fide supporting papers well before the date objections are due.  There must be sufficient time following receipt of the Plan and Disclosure Statement, and service of bona fide supporting papers, with supporting legal

memoranda and affidavits, for bondholders to prepare objections.  That deadline must also take into account the lead time required by individuals in light of Debtors' request that objections be "actually received" by the deadline by the Court and the office of the United States Trustee. (#16756-page-27-of-346).  Needless to say, Debtors' supporting papers should *not* be filed on the same day as reply papers, as occurred in the COFINA case.

Furthermore, Debtors' memorandum in support of confirmation, affidavits in support of confirmation and other papers should be served by email on individual bondholders who filed notices of participation or proofs of claim in the form of PDFs of 24MB or less in size (or at least by email with links to permit downloading of such papers in segments of 24MB or less). Debtors' massive filings are often well in excess of 25MB, which presents practical problems for individuals seeking to download as PDFs or share PDFs of Debtors' filings.  Debtors should provide individuals with PDFs of 24MB or less, or (at the least) divide their papers into downloadable segments of 24MB or less.

**F.     The Disclosure Statement should provide full information on Debtors' position as to how the Plan complies with §2174(b)(6) and attach all "best interest" test reports, and all supporting materials should be uploaded to the depository, before the Disclosure Statement is approved.**

Debtors have the affirmative obligation and burden to establish that "the plan is feasible and in the best interests of creditors, which shall require the court to consider whether available remedies under the non-bankruptcy laws and Constitution [of Puerto Rico] would result in a greater recovery for the creditors than is provided by such plan," 48 U.S.C. §2174(b)(6). However, the Disclosure Statement exhibit on "Best Interests Test Reports," as currently proposed (#16741, Exhibit N), is literally blank, and in a note states "[t]he Best Interests Test Reports will be filed at a later date."  As of the time I am endeavoring to finalize these papers (evening of June 8, 2021) none had been filed.

It also appears that Debtors may be deliberately holding back from the Disclosure Statement "relevant non-privileged documents concerning the Best Interest Test Reports" (*see* #16757-page-15-of-70).

Debtors' affirmative showing as to how Debtors comply with §2174(b)(6) should be set

forth in the Disclosure Statement provided with the confirmation hearing notice, not slipped into

a depository "[o]n or after July 13, 2021" (#16757-page-15-of-70).

### G.   Interrogatories should be permitted.

Debtors propose that discovery be limited to propounding requests for production,

requests for admissions and taking depositions.  (#16757-pages-20-to-21,39-of-70).  However,

the most effective and efficient means of identifying specific factual information pertinent to

Plan confirmation issues may be by propounding targeted interrogatories.  Interrogatories are just

as acceptable in bankruptcy court as depositions, requests for production of documents and

requests for admissions (*compare* Bankruptcy Rule 7033 *with* Rules 7030, 7034 and 7036).

Furthermore, interrogatories may be the most practical means by which individuals could seek

discovery in connection with confirmation.  There is no legitimate reason to preclude the use of

interrogatories and Debtors' proposed order should be modified to permit the use of

interrogatories.

### H.   Information provided in discovery should be added to the Plan Depository/Data Room, and steps need to be taken to make the Plan Depository practical for individuals to use.

In addition to the concerns and objections I have previously raised (including those at

#16387-pages-4-to-10-of-22), which I reiterate, I raise the points noted below:

1.   In addition to whatever materials Debtors choose to place in the Depository/Data

Room, Debtors should also include in the Depository all responses to discovery requests and

documents or information produced or supplied in response to discovery requests, including

depositions and deposition exhibits, regardless of which party served the discovery requests,

appropriately grouped in labeled folders (*e.g.*, responses to "cash" discovery, responses to

"pension" discovery, etc.).  This is necessary so that information produced in discovery can be

accessed by other parties to these proceedings.  For example, documents or information

produced in response to discovery requests by Ambac, FGIC or the UCC are among the

materials that should be included in the depository.  Posting what is produced in discovery into the Depository will also further Debtors' stated objectives of avoiding the burden of responding to duplicative requests of Debtors.

2.     The existing Disclosure Statement/Plan data room is extremely difficult to use, particularly for an individual bondholder not involved in the negotiation of the Plan.  The "Index" (DocID 227094) is literally only one-and-a-half pages long.  Since the Index purports to be an index for both confidential and nonconfidential documents, while I see no bona fide basis for any claim that it reveals "confidential" information, to avoid an issue as to whether the protective order precludes me from attaching a copy of it to a publicly-filed court submission, I will not attach a copy of the depository index to this Response and Objection.  However, the Court can go to the data room and see for itself that the Index just sets out the names of 13 categories of documents (under "Folder Name") with the briefest of descriptions in the column listing "Bates Ranges."  The Index is of no meaningful value to an individual bondholder trying to use the data room to identify particular materials to review on particular topics.  To make matters worse, when one clicks on the different categories (*e.g.*, click on "Cash And Cash Restrictions"), one sees documents cryptically described, often simply with the highly abbreviated name of an Excel file or PDF.  These descriptions typically provide little or no indication of what the document represents.  The combination of a short, barebones "index," and cryptic "descriptions" of the documents in each folder, severely limit the value of the data room for the individual investor.

3.     As one clicks through the different folders in the data room, it is also apparent that the data room is missing information concerning significant matters.  By way of example (based on my review of the data room on May 28, 2021):

a.  **Example 1:**  The "Portal" page, as well as the "Index," shows a "folder name" "Approximate Creditor Recoveries And Allocations," which is then described as "summary of certain creditor recoveries and allocations by class."  Through mid-day on May 28, 2021, there was no corresponding group of documents posted under either "Confidential" or "Non-

14

confidential." Also, as of May 28, 2021, the "Index" (DocID 227094) had the notation "N/A" under "Bates Ranges," which appeared to confirm that nothing had been posted as of mid-day May 28 in the important category of "Approximate Creditor Recoveries And Allocations."

In the afternoon of May 28, 2021, one document was posted in the "non-confidential" documents, which was a single-page document that appeared to show simply the *aggregate* dollar recoveries for certain bond classes or groups of bond classes (no information was provided specific to any of the eight retail classes),

Also, no information was provided with respect to the recoveries for Classes 48A-48E or 49, or that would permit a bondholder to determine if the public employee and public employee retirees and retirement system participants were receiving greater recoveries as a proportion of what they would be entitled to under pre-PROMESA "non-bankruptcy laws and constitution" of Puerto Rico, than Retail Investors in the 50 states.

b. **Example 2:** There is a folder identified in the portal (and the "Index") as "Best Interest Tests," described in the Index as "Documents Relating to Best Interest Test Reports." However (as of May 28, 2021 and checking, again, as of the evening of June 8, 2021), there is no corresponding folder in the "non-confidential" production, and the materials in the supposed "confidential" folder labeled "Best Interest Tests" — 36 items as of June 8, 2021 — do not tie into the topic of "Best Interest Test" in any discernable fashion. In light of the fact the documents are classified "confidential," I will not reference the substance that appears in them. But, in the bullets that follow, I will explain (based on examples of what one sees when one clicks on the documents in the supposedly "Confidential" "Best Interest Test" material) why it will be difficult for any individual bondholder not included in the negotiation of the Plan to make heads or tails of this material and discern from it Debtors' position on the "Best Interest Test."

- Documents 1 through 10 appear to be redacted documents pertaining to pensions produced to a party in this proceeding. For "Row" 1 through 10 (DocID 227096 through 227105), the description appears to be the Bates number for a production to that party; this "description" sheds no light on what the document is.

- Row 11 (DocID 227106) appears to be a fragment of an image produced to that party;
  again, no description of what this actually is that would allow someone to assess its
  pertinence, if any, to "best interest test."

- Row 16 (DocID 227111) has an oblique description that appears to be the name of the
  Excel worksheet in question.  Clicking on that description, one sees a Government of
  Puerto Rico spreadsheet that appears to have aggregate numbers of participants and
  dollar amounts; it is unclear what is confidential about this (indeed, it looks like the
  type of information one would expect would be publicly available from the
  Government concerning one of its retirement systems).

- Row 27 (DocID 227122) is described as "ERS codes," and appears to be another
  Excel spreadsheet that has no apparent reason for being classified as confidential.

- Row 36 (DocID 227058) is described with a three word label, which appears to be the
  name of an Excel spreadsheet that appears to have forward-looking data relating to
  GO principal and scheduled interest and total debt service (otherwise unexplained).
  This appears to be the type of document one would expect to be included as an
  exhibit to the disclosure statement or, if one were offering bonds, in the official
  statement for the bond offering; there is no apparent reason why this Excel
  spreadsheet is being claimed to be confidential.

Given the constraints of the protective order, I have been cryptic and circumspect in my
discussion of these examples.  Respectfully, the Court itself should look at this database and
click through the different categories and a sampling of the documents to see for itself what is
being provided, how it is described, whether this data room will, in its current form, be of any
meaningful value to the typical member of the eight Retail Investor classes, and whether
information classified as "confidential" is legitimately categorized as such.  (As noted, my above
comments were in reference to the 36 items posted in the "Best Interest Test" category on
June 8; conceivably more may be posted by the time the Court looks at this.)

16

4.      There is no plausible reason on the face of numerous documents as to why they
are being claimed to be confidential.  A number of the documents even appear to be identical to
documents Puerto Rico publicly discloses.  In addition to the above discussion, for illustrative
purposes, I will focus on two of the five documents in the "confidential" section of the data room
in the category "Factual Source Materials and Raw Data Underlying Disclosure Statement" (as
of June 8, 2021).

Debtors have classified as "confidential" two reports that appear identical to reports that
have already been publicly disclosed:

- Under "Factual Source Materials And Raw Data Underlying Disclosure Statement,"
  Row 4 (DocID 221992) is identified with a name that (as discussed later in this
  bullet) is the same as the name of a document publicly posted on the AAFAF website.
  Click on the document (I'm not repeating the content because FOMB claims it is
  confidential) and note it is 27 pages long; then compare it to the publicly posted
  report on the AAFAF website with the same name, "Actual To Budget (Liquidity
  Plan) Component Unit Reporting For The Month of December 2020 of Fiscal Year
  2021," also 27 pages.[2]  The supposed "confidential" document appears to be identical
  to the publicly posted report on the AAFAF website.  Indeed, it appears that this very
  document was publicly posted on the MSRB EMMA site on February 2, 2021 by
  AAFAF.[3]

- Similarly "Row 5" (DocID 221993), is a document whose name is the same as the
  name of another publicly posted document, which document is 41 pages long.

_____

[2] "Actual To Budget (Liquidity Plan) Component Unit Reporting For The Month of December
2020 of Fiscal Year 2021" located by:  (i) going to "Aafaf.pr.gov/financial-
documents/independently-forecasted-component-unit-liquidity-report-report-1c" or (ii) type into
Google "AAFAF"; click on "financial documents," scroll down and click on "independently
forecasted component unit liquidity report-report-1(C)"; then go to "2020" then click on
"component unit liquidity-December 2020".

[3] Type into Google "emma.msrb.org"; enter in the search box CUSIP 745145, click on the
"Financial Disclosure" tab; scroll down to the second 2/2/2021 posting.

17

DocID 221993 appears to be the same as a document on the AAFAF public website called "Component Unit Liquidity for Quarter 2: October through December 2020", which is also 41 pages long. The Court can compare what is publicly available on the AAFAF website with DocID 221993.

It is unclear what in DocID 221992 or DocID 221993 could possibly be confidential in light of the publicly available reports on the AAFAF website. These jumped out at me upon my scan of the 5 items listed in the folder "Factual Source Materials And Raw Data Underlying Disclosure Statement," because I remembered seeing the monthly Actual to Budget (Liquidity Plan) documents disclosed through EMMA and I have seen various "Actual to Budget (Liquidity Plan) Component Unit Reporting" documents for various periods in the course of my past review of materials posted on the AAFAF website. These two documents are likely the tip of the iceberg of much plainly nonconfidential material mis-classified by FOMB as "confidential" in the data room.

In short, it would appear significant portions of the supposedly "confidential" materials in the data room are not confidential at all. Labeling them as "confidential" inhibits access and use by individual bondholders. For example, some bondholders may not be comfortable signing the protective order, and if documents have confidential status, individuals may be inhibited in consulting with others about the significance of the documents. Debtors' unsupportable claims for confidential treatment also raise fundamental questions about the legitimacy of Debtors' insistence on precluding public access, including by analysts and the media, to the data room and suggest Debtors are simply seeking to avoid public scrutiny.

The permission the Court granted to Debtors to categorize documents as "confidential" (subjecting access to the constraints of the protective order) and precluding analysts and media from examining the data room is being misused in a manner that is prejudicial to the typical Retail Investor in the eight retail classes.

I object to any continued confidentiality of any of the materials posted in the data room, absent Debtors making an affirmative showing — upon motion to this Court — as to each

document that there is a bona fide justification for maintaining discrete materials as confidential and that any confidentiality issue cannot be solved through redactions.  Debtors should also be directed to review the documents they have designated confidential and switch to non-confidential status those documents that Debtors have disclosed to third-parties or to the public already, or that have no bona fide confidential character.

I further reiterate my prior objection to precluding access by analysts and the media to the data room.  (#16387-pages-4-to-10).  The fact AAFAF routinely publicly posts on its website documents Debtors seek to shield as "confidential" highlights the need for analyst and media access to the data room so that inaccurate claims by Debtors are called out.  Holding Debtors to account should not be dependent upon an individual bondholder clicking through documents in a data room that is not user friendly and happening to recognize that Debtors claim confidential status for documents Debtors post on their public websites and routinely publicly disclose through EMMA.

5.    Steps also need to be taken to make the Depository usable by individuals. Meaningful (to the typical Retail Investor) descriptions of the documents need to be added, and the Index needs to be built out with those meaningful descriptions.  Furthermore, steps should be taken to enhance the functionality of the data room, including making sure that the instructions for how to download documents actually work to enable downloading (or emailing documents to one's self in a zip drive).  Notably, despite multiple attempts from May 28 through June 7, 2021, I was not able to download the index or any other materials from the data room, despite following the stated procedures, *see* attached Hein Decl. ¶¶3-4 & Ex. 2.  Faced with problems like this, many individuals will just give up.  It was only on what was perhaps my 15th attempt to download, on June 8, that the download function worked.

I.    **Record date and voting procedure.**

1.    The record date for bondholders is not forthrightly identified in the section of #16756 entitled "fixing the voting record date" (#16756-page-19-to-22-of-346).  Repeatedly

Debtors state that their discussion of record date is "except for any Claims in the Bond Classes" (or words to that effect) (*e.g.*, #16756-page-19-of-346-¶ 34, #16756-page-22-of-346-¶ 39, #16756-page-61-of-346-¶ 4, #16756-page-86-of-346-¶ 11).  Oddly, in none of these places does there appear to be a forthright identification of what the voting record date is for Bond Claims.

The closest Debtors get to an acknowledgment of what they propose is an oblique sentence at the end of ¶34 (#16756-page-20-of-346) where Debtors state that their proposed use of the ATOP system "obviates the need for a Voting Record Date, as only current holders of the Bonds can tender them for voting or election purposes on or before the Voting Deadline or Election Deadline."  Translated into plain language, it appears that Debtors propose no record date whatsoever, so that someone can buy bonds up to the Voting Deadline and vote them.

Notably, in general, the record date for creditors is set as the date of the Disclosure Statement hearing (July 13, 2021), except for classes comprised of retirement system participants and public employees for which it is set at an even earlier date (April 1, 2021).  #16756-page-19-to-20-of-346.  The record date for Bond Claims in the COFINA case was also set as the same date as the Disclosure Statement hearing.  *See* #4075-page-15-of-176-¶ 20 (debtors' motion); #4382-page-6-of-19-¶4) (order).  So why the different approach here for Bond Claims?  There is no forthright identification of why the record date for Bond Claims is not set as the date of the disclosure statement hearing, as in the COFINA case and as for other creditors in this case, and no forthright discussion of the practical consequence to the vote of what Debtors propose.

I object to setting the record date for Bonds Claims on a date later than the Disclosure Statement hearing date (July 13, 2021).

2.      The discussion in the Disclosure Statement of how Bond Claims can be voted in this case is difficult to understand, but also raises significant concerns.  *See* #16756-page-41-to-43-of-346-¶¶81-85.  Bond Claims are to be voted through "ATOP," which appears to be a system operated by DTC called "automated tender offer program."  The proposed voting mechanism results in an extremely complex process whereby Retail Investors "will be restricted from transferring . . . bonds through the effective date," but, in contrast, other holders will have

their bonds released "on or as soon as possible after October 4, 2021," the voting deadline. *See,
e.g.*, proposed "notice of voting instructions" for Classes 1 and 6 (#16756-page-101-of-346).
Similar instructions appear to apply to other bond classes, distinguishing between Retail
Investors and other holders (*e.g.*, the proposed "notice of voting" for Classes 14 and 15 (#16756-
page-163-to-164-of-346)).  The proposed voting process for Bond Claims here is different than
the voting procedure utilized for bond claims in the COFINA case.  *Compare* #16756-page-97-
to-103-of-346 *with* #4382-3-page-1-of-10 (form of ballot and voting instructions in COFINA
case) *and* #4382-4-page-1-to-7-of-10 (voting instructions in COFINA case).

The rationale for the change from use of a record date for bond claims being set as the
date of the disclosure statement hearing (as in the COFINA case) to the proposed procedure here
whereby effectively Bond Claims can be purchased up through the voting deadline (effectively
meaning there is no record date) is not explained.  It is also not explained why Retail Investors
who vote have their bonds restricted through the effective date, whereas institutional investors
are free to trade almost immediately after the October 4, 2021 voting deadline.

The use of the proposed procedures whereby (i) effectively there is no voting record date
for Bond Claims — Bond Claims can be bought through the deadline for voting, and (ii) Retail
Investors are restricted from transferring their bonds from the time they vote through the
Effective Date of the Plan but institutions are not, is likely to enhance Debtors' ability to benefit
from Plan proponents buying votes (something Debtors' counsel acknowledged encouraging
going back to the March 4, 2020 hearing, see Tr.18:13-16 (#12181))[4] and will unfairly and
improperly deter Retail Investors from voting.

I object to both (i) the lack of a record date for Bond Claims (not even set as of the date
of the Disclosure Statement hearing, as in the COFINA case), and (ii) the method of voting that
results in Retail Investors being restricted from transferring bonds through the Effective Date,

---

[4] FOMB's counsel Mr. Rosen stated "There still is an opportunity for additional parties to join
on, and by that I mean those parties who were parties at that time can purchase additional bonds.
And so that number may, in fact, may go up."

whereas institutional holders are almost immediately released for trading after the October 4, 2021 voting deadline.

**J.      Other matters related to discovery.**

    **1.      Certifications should not be required as a precondition to discovery requests.**

Debtors propose that a request for production of documents be accompanied by a certification stating the relationship of each production request to the Initial Objection interposed by an Eligible Creditor and setting forth why the additional production request is reasonably necessary given the availability of information in the Plan Depository.  (#16757-page-21-of-70).

As noted above in Point I.C, I object altogether to requiring an initial objection.  If my objection to requiring initial objections is sustained by the Court, the requirement proposed in ¶ 50 that a production request be accompanied by a certification stating the relationship of the discovery request to the initial objection interposed by the creditor becomes partially moot.  But if initial objections are required and are a prerequisite to a creditor having any right to any discovery in connection with confirmation (notwithstanding my objections), requiring a certification by the propounding creditor stating the relationship of the production request to the initial objection and setting forth why the additional production request is reasonably necessary given the availability of information in the Plan Depository will only prompt numerous potential collateral disputes and is not efficient.  The requirement for a certification as to why the request is reasonably necessary given the availability of information in the Plan Depository is particularly burdensome to individual bondholders in light of the difficulty of using the data base to find information, in light of the cryptic document descriptions and absence of a meaningful index.  Any requested discovery should be judged on its own merits as to whether it is relevant to plan confirmation.

    **2.      Creditors should not be required to provide Debtors' proposed required acknowledgments.**

Debtors propose that each Eligible Creditor be required to acknowledge that Debtors "do not make any representation or warranty as to the accuracy or completeness of any Confidential

Information." (#16757-page-45-¶25). It is simply not appropriate for the Court to order creditors to provide acknowledgments of the nature Debtors demand. If a creditor seeks relief from Debtors based on Debtors' failure to provide accurate and complete information, that request for relief should be judged on its own merits — the creditor cannot be precluded based on a court-compelled-and-ordered "acknowledgment." Further, Debtors' proposal for a court-compelled-and-ordered "acknowledgment" is yet an additional reason why Debtors should be required to specifically establish, upon motion, a legitimate basis for treating as "confidential" each item of Confidential Information in the data room. Otherwise, Debtors may seek to immunize themselves from a claim for relief for inaccurate or incomplete information in a document Debtors publicly post on their website or disclose on EMMA simply by (improperly) placing it in the confidential category in the data room. Finally, Debtors' proposed court-compelled acknowledgment, if ordered, would be in violation of a person's First Amendment protection against compelled speech. The Court simply cannot compel a creditor to make an "acknowledgment" of the sort Debtors seek.

### 3. Discovery should not be limited to materials "relied upon" by Debtors.

Debtors' motion could be read to suggest that Debtors may seek to have discovery be limited to "non-privileged materials relied upon by Debtors" (#16757-page-12-of-70). However, whether or not debtors "relied upon" particular materials, if documents are relevant to Plan confirmation issues, the discovery should be permitted. Limiting discovery to discovery of materials "relied upon" by Debtors makes little sense since it would allow Debtors to stonewall any discovery of documents contradicting Debtors' claims, since Debtors could simply claim they did not rely upon the contradictory information. Any "relied upon" limitation will also inevitably give rise to collateral disputes as to whether particular nonprivileged materials should be discoverable.

**K.** **Publication of the confirmation hearing notice is not sufficient to reach individual 50-states investors.**

Paragraph 18 (#16756-page-67-of-346) should be modified to include publication in the *Wall Street Journal*. Few individual retail investors in the 50 states read the Bond Buyer. The annual subscription cost appears to be $3,432. *See* #9508-18-page-1-of-3. Just as publication notice is being given in several publications in Puerto Rico and/or in Spanish, notice should be given in the *Wall Street Journal*, which is an English language publication read by many individual investors in the 50 states — where the vast majority of bondholders are present (Docket#9508-page-11-of-24).

**L.** **If confidentiality restrictions are maintained by Court order, then there should be no use of, or any reference to, the mediation process in Court filings and proceedings.**

I object to the use of confidential mediation instead of adjudication on a public record, as discussed in my prior filings. *E.g.*, Docket#9508-page-14-of-24. However, if confidentiality restrictions are maintained by court order that restrict persons from disclosing what occurred in mediation, then at the very least the confidentiality must be maintained consistently and there should be no reference to what occurred in mediation, what resulted from the mediation or the asserted robust nature of the mediation process by ***anyone*** in ***any*** papers filed in court, in any hearing or by any other means. Notably, the mediation and litigation were supposed to be kept "entirely separate" and "not be conflated" (#1836-page-2-of-2, #1841).

If there are references to what occurred in mediation, what resulted from mediation or the asserted robust nature of the mediation process, all persons should be relieved of any confidentiality restrictions and what transpired in the mediation-negotiation process should be open to discovery. Otherwise, mediation confidentiality is used as both a sword and a shield by proponents of the confidential mediation-negotiation process: The outcome or asserted robust nature of the mediation process is advanced to enhance its credibility, but the full facts of what transpired in that process, whether it in fact was robust, and what quids were exchanged for what quos, are not knowable because confidentiality restrictions preclude a full revelation of the facts.

24

## II.   CROSS-MOTION TO ESTABLISH A COMMITTEE TO REPRESENT RETAIL INVESTORS IN THE CONFIRMATION PROCESS.

I previously moved for the establishment of a committee to represent individual bondholders or, in the alternative, at least a committee to represent all bondholders whose members and retained professionals would owe duties to individual bondholders and on which individuals would be represented.  (Docket #6128, #6487).  This Court denied that motion. (Docket #6534).  New developments now show that the Court should re-evaluate the need for a committee to represent Retail Investors, and should now appoint a committee to represent members of the eight Retail Investor classes in the confirmation process.  The eight Retail Classes are Classes 6, 8, 10, 15, 28, 35, 38, 44. (#16741-page-32-to-34-of-564).

*First*, Plan proponents have now proposed eight separate classes of Retail Investors, defined as individuals whose holdings are $1 million in par amount or less.  Retail Investors in the eight retail classes are the only significant group of creditors who do not have a committee representing them or counsel whose costs are being directly or indirectly paid by debtors (such as through provision for administrative expense claims or cash payments on the Effective Date agreed through PSAs, *e.g.*, #16741-2-page-43-of-134 (§6.1(a)), #16741-pages-366-to-370-of-564).  Indeed, hundreds of millions of dollars have been paid or agreed to be paid to other creditors and their professionals:

- Unsecured creditors, who do not have the GO bondholders' Constitutional "first claim" priority, or constitutional and statutory liens, have a committee – comprised of at least two unions who represent public sector employees, among others (AFT and SEIU), as well as trade creditors – whose counsel appear to have incurred over $60 million in costs to date (based on #15160-page-5-of-58 and assuming the run rate continued after 9-30-2020).

- There is a committee to represent retirees, again who lack the Constitutional "first claim" priority and liens accorded GO bondholders, whose counsel have incurred over $19.4 million in expense to date (*e.g.*, #16054-page-2-of-35).

- The Plan contemplates payment of $10 million to AFSCME, a public employee union, plus payment of the union's professional fees and expenses. *E.g.,* #16741-page-53-of-564; Plan §3.4.

- This Court has authorized payments of over $600,000 for a "communications advisor" to UCC, who has (among other things) "advise[d] the Committee and its advisors with respect to public relations issues" (*e.g.*, #12390-pages-5,10,17-of-20).

- Consummation Costs are to be paid to bondholders who FOMB struck a deal with — 1.5% of the total par outstanding of Commonwealth, PBA and Commonwealth guaranteed bonds and part of a $350 million cash payment  (#16741-pages-44,366-to-367-of-564).

The Retail Investors are not being represented by the institutions who negotiated the bondholder treatment in the current Plan.  These institutions do not have a fiduciary duty to the Retail Investors grouped in the separate eight Retail Investor classes; indeed, these institutional investors negotiated — for themselves — monies allocated in proportion to their bond holdings that Retail Investors do not share, such as the Consummation Costs.

*Second*, the nature of the Plan and the confirmation procedures proposed by Debtors also underscore why it is essential that a committee be established to represent the interests of Retail Investors in the confirmation process.  Among other things:

a.      The complexity of the proposed Plan and Disclosure Statement, and their associated exhibits, is beyond the capabilities of the typical Retail Investor to evaluate.  Indeed, as noted in points I.B.2 and I.C.2 of my "Response and Objection of Individual Bondholder to Debtors' Application for Approval of Disclosure Statement," it appears the most recent version of the Disclosure Statement may even be inaccurate in material respects, including the following:

- The Disclosure Statement states that "[t]o the extent the Government Parties and the Initial PSA Creditors determine during the period up to and including the Effective Dates to modify the coupons set forth on Exhibit J to the Plan, the amount of par New GO Bonds will either increase or decrease…subject to the amount of the maximum annual debt service provided for in Exhibit J to the Plan."  Docket#16741-page-41-of-564 (DS-29).  However, the

26

reference to Exhibit J appears to be wrong, since when one turns to Exhibit J to the Plan, one sees that exhibit is "Description of CVI Terms and Waterfall Provisions."  There is no apparent annual debt service cap in Exhibit J (just caps on CVI payments).

- The proposed Disclosure Statement obfuscates the preferential benefits Puerto Rico Investors are offered.  It states that New GO Bonds will be issued with "eleven (11) different maturity dates" and "the principal amounts, maturities, interest rates, and amortization schedules for the New GO Bonds are as shown in Exhibit J to the Plan."  #16741-page-59,432-of-564. However, Exhibit J to the Plan (#16740-1-page-218-of-234) is headed "Description of CVI Terms and Waterfall Provisions"; it does **not** have the information the Disclosure Statement says it does.

Perhaps despite my efforts to understand these documents I have simply not read them correctly and (somehow) they are accurate as stated.  But if I am correct that the proposed Disclosure Statement is inaccurate in the respects noted — matters that go to important issues such as (i) the maturity and interest rates and number of bonds to be distributed to 50-states Retail Investors versus what is available to Puerto Rico Investors, and (ii) where the maximum annual debt service is specified — despite the multiple iterations and prior corrections of these documents, this would show that even the people who wrote the documents find it challenging to keep all of this straight.  *A fortiori*, one cannot expect individual bondholders in the Retail Investor classes to even begin to make sense of this material.  It has become manifest that there is a compelling need to have a committee designated to represent the interests of Retail Investors, with the assistance of appropriate counsel, in these confirmation proceedings.

b.    The complexity of what is proposed extends to issues such as a different (and later) record dates for Bond Claims than had been used in the COFINA case and that is being used for other claims in this case.  *See* Point I.I, above.  And, as noted, Retail Investors who vote are restricted through the effective date of the Plan, whereas institutional bondholders who vote are released from restrictions almost immediately following the voting deadline.

27

c.      The complexity of the confirmation process Debtors propose is beyond the
capability of any individual bondholder.  Individuals on their own are not going to be able to
participate in a meaningful way in the discovery process Debtors propose (#16757-page-16-to-
18-of-70) or the hearing process outlined in Debtors' proposed procedures (#16757-18-of-70 *et
seq*.).

I am ***not*** suggesting a committee whose professionals would incur costs comparable to
costs incurred to date by other parties in these cases.  Indeed, the Court could set an appropriate
cap on expenses by the committee's retained professionals, using as a benchmark starting point
the levels of fees incurred by professionals retained by existing committees or cash payments and
payments in the form of administrative expense claims that Debtors have agreed to make to other
parties.

The Court has the authority to order the appointment of a Retail Investors committee
under 11 U.S.C. §1102(a)(2), which provides in pertinent part that "[o]n request of a party in
interest, the court may order the appointment of additional committees of creditors or of equity
security holders if necessary to assure adequate representation of creditors or of equity security
holders."

Unlike a situation where there is an issue about whether an equity securities holders
committee should be appointed — given that equity securities are effectively last in line and not
likely to recover anything if a debtor is insolvent — here, the Retail Investors hold GO and GO
guaranteed bonds, whose priority "first claim" status under Puerto Rico's Constitution and
secured status under Puerto Rico's Constitution and statutes has not been successfully challenged
in this case.  (I recognize various challenges have been asserted, but the Court has declined to
adjudicate those challenges, so on the current record there is no decision that undermines the
"first claim" secured position of the GO and GO guaranteed bondholders.)  The fact that other
bondholders, including hedge funds who bought at distressed prices post-PROMESA, have been
willing to settle their claims in no way undermines the "first claim" secured position of GO and
GO guaranteed bondholders — those settling parties are receiving special consideration,

including Consummation Costs and other benefits, and, at least as to post-PROMESA purchases,

are likely enjoying significant profits even if they receive less than full principal plus full

accrued interest to date.  Plus, the mediation-negotiation process is shrouded in secrecy, and

there is no public contemporaneous record of what transpired.  In any event, what settling

bondholders agreed to should not be considered for any purpose.  *See, e.g.*, F.R. Evid. 408; *U.S.*

v. *Contra Costa*, 678 F.2d 90, 92 (9th Cir. 1982) (*citing* 408); *Slattery* v. *U.S.*, 231 F.2d 37, 41

(5th Cir. 1956) ("prices paid in settlement … inadmissible").

Perhaps it could be argued that, since the Retail Investors are secured, "first claim"

bondholders, they have no need for a committee.  But then they should be treated as such under

the Plan — and receive full principal and all accrued interest to date — but they are not so

treated under the proposed Plan.  Indeed, no principal or interest has been paid to GO and GO

guaranteed bondholders during the pendency of this Title III, even though Commonwealth has

huge ongoing cash balances and public employee and public employee retirement system

payments have continued.  Respectfully, one should not decline to decide key legal issues as to

secured status and priority, yet also decline to appoint a committee to represent the eight classes

of Retail Investors on the theory that they claim such secured status and priority.

III.    **STANDING TO ADDRESS CONFIRMATION PROCEDURES ISSUES AND
        OTHER MATTERS PRESENTED HEREIN.**

I am directly affected by Plan confirmation, and thus have standing to address the

confirmation procedures issues discussed here.  Furthermore, under the proposed Plan, the vote

of other individual bondholders in the Retail Investor classes will directly impact the

consideration I receive.  *See, e.g.,* #16741-page-44-of-564.  Thus, I am directly affected by how

other Retail Investors react and vote and whether they have an appropriate means to participate.

This Court in any event has a responsibility to ensure that the confirmation procedures

comply with the U.S. Constitution and PROMESA and also to ensure that the confirmation

procedures are fair to Retail Investors who have no committee or committee professionals to

protect their interests.

Indeed, particularly since there is no committee or committee professionals with a fiduciary duty to Retail Investors, this Court has a responsibility to independently consider what issues may exist with the proposed confirmation procedures that may adversely affect Retail Investors and analyze the applicable law as to whether such procedures are consistent with the law and are fair, irrespective of whether specific objections are made by individual bondholders.

## IV.    RESERVATION OF RIGHTS AND CONTINUED ASSERTION OF PRIOR OBJECTIONS.

I reserve and preserve all objections to the proposed Plan, including objections to the proposed classification of claims.  I continue to assert the objections asserted in Docket#16387, and the prior objections set in #16387 (*see* #16387-page-20-to-21-of-22).

June 9, 2021

Respectfully Submitted,

/s/ Peter C. Hein

Peter C. Hein, pro se
101 Central Park West, Apt. 14E
New York, NY  10023
petercheinsr@gmail.com
Claim 10696
GO Bonds:  500,000 par amount, plus
unpaid interest to date
[5 separate CUSIPS:   74514LVX2
                                      74514LWA1
                                      74514LWM5
                                      74514LWZ6
                                      74514LB63]
PBA Bonds:  200,000 par amount, plus
unpaid interest to date
[CUSIP:  745235M24]

### Declaration pursuant to 28 U.S.C. §1746

I declare under penalty of perjury that the foregoing statements are true and correct to the best of
my knowledge and belief.

Executed on this 9th day of June 2021.

/s/ Peter C. Hein

Peter C. Hein

**<u>Certificate of Service</u>**

I, Peter C. Hein, certify that I have caused the foregoing "[1] Response and Objection of

Individual Bondholder to Debtors' Motions for Orders Establishing Confirmation Procedures,

and [2] Cross-Motion to Establish a Committee to Represent Retail Investors in the Confirmation

Process" to be served via the Court's CM/ECF system.

June 9, 2021

                    /s/ Peter C. Hein
                    Peter C. Hein

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO,
et al.,

         Debtors.

-----------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

**[Accompanying Response to proposed confirmation procedures urged by Debtors in
Docket #16756, #16757 and #16758]**

**DECLARATION OF PETER C. HEIN ACCOMPANYING "[1] RESPONSE AND
OBJECTION OF INDIVIDUAL BONDHOLDER TO DEBTORS' MOTIONS FOR
ORDERS ESTABLISHING CONFIRMATION PROCEDURES, AND [2] CROSS-
MOTION TO ESTABLISH A COMMITTEE TO REPRESENT RETAIL INVESTORS IN
THE CONFIRMATION PROCESS"**

     Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the following

statements are true and correct to the best of my knowledge and belief:

     1.    This declaration attaches certain documents referenced in "[1] Response and

Objection of Individual Bondholder to Debtors' Motions for Orders Establishing Confirmation

Procedures, and [2] Cross-Motion to Establish a Committee To Represent Retail Investors in the

Confirmation Process."  The factual statements in my Response and Objection and Cross-Motion

are true and correct to the best of my knowledge and belief.

     2.    Annexed as Exhibit 1 is email correspondence between me and Prime Clerk

relating to my 5/23/2021 request for hard copies of the Plan and Disclosure Statement.  As of the

date I was endeavoring to finalize these papers (June 8, 2021 in the evening), I had still not

received by mail hard copies of the Plan and Disclosure Statement from Prime Clerk,

Commonwealth or FOMB.  I did receive from Prime Clerk by mail (directly and through my brokers) hard copies of the 3 page "Notice of Filing of Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al., and hearings thereon".

3.     Annexed as Exhibit 2 is email correspondence between me and Prime Clerk relating to my effort to download or "Export" documents from the Data Room.  As I note in my May 31, 2021 email, I believe I followed the instructions.  And I did get the "Success" page response, which suggests I did follow the instructions on how to download or "Export" documents.  However, despite my trying to download or "Export" documents from the Data Room on multiple occasions over several different days, I repeatedly received a message – "This content is blocked.  Contact the site owner to fix the issue."  I received the foregoing  error message even when trying to download the Index and documents classified as non-confidential (albeit I am registered to have access to the "confidential" documents as well).

4.     On June 1, 2021 Prime Clerk responded to "confirm[] that we have received your inquiry and have brought it to the attention of the appropriate parties for further review".  As of the date I was endeavoring to finalize these papers (June 8, 2021, in the evening), I had not heard further on this matter from Prime Clerk.  Following my receipt of Prime Clerk's June 1 email, I did make several additional efforts to download or "Export" documents from the Data Room.  As late as June 7, 2021 – despite getting the "Success" page response that seemed to confirm I was following the correct process  –  I still got the "This content is blocked.  Contact the site owner to fix the issue" message.  Finally, on the evening of June 8, 2021, after multiple failures on prior days to download documents from the Data Room, I was able to get the download or "Export" feature to work.

Dated:  June 9, 2021

                                                              /s/ Peter C. Hein
                                                              Peter C. Hein

To: petercheinsr@gmail.com
Subject: RE: [EXTERNAL] request for hard copies

Peter,

Thank you for your inquiry.

Please allow this email to serve as confirmation that we have received your request for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. [Docket No. 16740] and Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. [Docket No. 16741]. Your request will be processed accordingly.

For information regarding the Debtors' chapter 11 proceedings, please visit:
https://cases.primeclerk.com/puertorico/

PLEASE NOTE: Objections to the Disclosure Statement must be filed and served so as to be received no later than June 15, 2021 at 5:00 p.m. (AST) in accordance with the instructions set forth on page 2 of the Disclosure Statement Notice.

PLEASE NOTE: Prime Clerk is the Solicitation, Claims and Noticing agent appointed in the Title III cases of the Commonwealth of Puerto Rico and the affiliated Debtors. As such, we are not permitted to provide legal or financial advice. Further, Prime Clerk is not permitted to accept claims via email or fax, and any such information provided via either of these methods will not constitute a claim in these proceedings.

Regards,

**Prime Clerk Inquiries**
Prime Clerk LLC, A Kroll Business
850 Third Avenue
Suite 412
Brooklyn, NY 11232
www.krollbusinessservices.com


--------------- Original Message ---------------
**From:** Peter C. hein [petercheinsr@gmail.com]
**Sent:** 5/24/2021 8:57 PM
**To:** puertoricoinfo@primeclerk.com

1

Exhibit 1                                                          Confirmation Proc. Obj. 0001

Cc: petercheinsr@gmail.com
**Subject:** [EXTERNAL] request for hard copies

As noted in my request below, I am requesting that a hard copy be mailed to me. My mailing address appears below in my May 23, 2021 email. Thank you.

---

**From:** Puerto Rico Inquiry <puertoricoinfo@primeclerk.com>
**Sent:** Monday, May 24, 2021 8:50 PM
**To:** petercheinsr@gmail.com
**Subject:** RE: [EXTERNAL] request for hard copies

**\*\*\* EXTERNAL EMAIL \*\*\***

Peter,

Thank you for your inquiry.

Please find below links to view and download the requested documents:

Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. [Docket No. 16740]: https://cases.primeclerk.com/puertorico/Home-DownloadPDF?id1=MTAxMzM2Nw==&id2=0

Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al." [Docket No. 16741]: https://cases.primeclerk.com/puertorico/Home-DownloadPDF?id1=MTAxMzQwNQ==&id2=0You may also view and download all other publicly available notices and pleadings, free of charge at: https://cases.primeclerk.com/puertorico/Home-DocketInfo

For information regarding the Debtors' chapter 11 proceedings, please visit: https://cases.primeclerk.com/puertorico/

PLEASE NOTE: The Disclosure Statement Hearing is set to take place on July 13, 2021 at 9:30 a.m. (AST) via telephonic hearing through CourtSolutions. Objections to the Disclosure Statement must be filed and served so as to be received no later than June 15, 2021 at 5:00 p.m. (AST) in accordance with the instructions set forth on page 2 of the Disclosure Statement Notice.

PLEASE NOTE: Prime Clerk is the Solicitation, Claims and Noticing agent appointed in the Title III cases of the Commonwealth of Puerto Rico and the affiliated Debtors. As such, we are not permitted to provide legal or financial advice. Further, Prime Clerk is not permitted to accept claims via email or fax, and any such information provided via either of these methods will not constitute a claim in these proceedings.

Confirmation Proc. Obj. 0002

Regards,

**Prime Clerk Inquiries**
Prime Clerk LLC, A Kroll Business
850 Third Avenue
Suite 412
Brooklyn, NY 11232
www.krollbusinessservices.com

--------------- Original Message ---------------
**From:** Peter C. Hein [petercheinsr@gmail.com]
**Sent:** 5/23/2021 12:32 PM
**To:** puertoricoinfo@primeclerk.com
**Cc:** petercheinsr@gmail.com
**Subject:** [EXTERNAL] request for hard copies

Please send me a hard copy of the Plan, Disclosure Statement, Disclosure Statement Motion and
the Confirmation Discovery Procedures Motion.   Thank you.

Peter C. Hein

101 Central Park West apt 14E

NY NY 10023

This email is confidential and subject to important disclaimers and conditions, including those regarding
confidentiality, legal privilege and certain legal entity disclaimers, available at
https://www.kroll.com/disclosure. Our Privacy Policy is available at https://www.kroll.com/en/privacy-
policy.

ref:_00D1N1uIqY._5003l1BpdVc:ref

Confirmation Proc. Obj. 0003

From: Puerto Rico Inquiry <puertoricoinfo@primeclerk.com>
Sent: Tuesday, June 1, 2021 7:06 PM
To: petercheinsr@gmail.com
Subject: RE: [EXTERNAL] Downloading or exporting documents in the Title III Disclosure Statement Data Room

Peter,

Thank you for contacting Prime Clerk, the designated claims and notification agent in Title III cases of the Commonwealth of Puerto Rico and affiliated Debtors.

Please allow this email to serve as confirmation that we have received your inquiry and have brought it to the attention of the appropriate parties for further review.

If you experience any technical difficulties or have questions about how to use the site, please contact LLM at 512-877-7950 or titleIII@llminc.com.

Regards,

**Prime Clerk Inquiries**
Prime Clerk LLC, A Kroll Business
850 Third Avenue
Suite 412
Brooklyn, NY 11232
www.krollbusinessservices.com

-------------- Original Message --------------
**From:** Peter C. Hein [petercheinsr@gmail.com]
**Sent:** 5/31/2021 11:27 PM
**To:** puertoricoinfo@primeclerk.com
**Cc:** petercheinsr@gmail.com
**Subject:** [EXTERNAL] Downloading or exporting documents in the Title III Disclosure Statement Data Room

I am unable to "Export" documents from the Data Room. I believe I am following the instructions. I click on "ACTIONS", click on "Export", click on "Selected", click on "files to zip".

1

Exhibit 2                    Confirmation Proc. Obj. 0004

I then click on options on the "Export Documents to Zip File: and "Calculate".

I then click on "Build Export".

I then get the Success page, and click on the link to download the file.

I then have repeatedly received a message – "This content is blocked. Contact the site owner to fix the issue."

I have tried these multiple times over several different days.

I have tried to "Export" one or two documents at a time, like the 2 page index or the one page "Approximate Creditor Recoveries" document (in the non-confidential folder).

Please check if the system is working properly and advise me.  Thank you.  Peter Hein

This email is confidential and subject to important disclaimers and conditions, including those regarding confidentiality, legal privilege and certain legal entity disclaimers, available at https://www.kroll.com/disclosure. Our Privacy Policy is

available at https://www.kroll.com/en/privacy-policy.

ref:_00D1N1uIqY._5003l1BqCKD:ref

Confirmation Proc. Obj. 0005