# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00003-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE COMMONWEALTH OF PUERTO RICO, Plaintiff, v. AMBAC ASSURANCE CORPORATION, *et al.*, Defendants. | Adv. Proc. No. 20-00004-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE COMMONWEALTH OF PUERTO RICO, Plaintiff, v. AMBAC ASSURANCE CORPORATION, *et al.*, Defendants. | Adv. Proc. No. 20-00005-LTS |

**JOINT STATUS REPORT REGARDING DISCOVERY
IN THE REVENUE BOND ADVERSARY PROCEEDINGS**

**To the Honorable United States Magistrate Judge Judith Gail Dein:**

Ambac Assurance Corporation ("Ambac"), Financial Guaranty Insurance Company ("FGIC"), The Bank of New York Mellon ("BNYM"), U.S. Bank Trust National Association ("U.S. Bank", and collectively with Ambac, FGIC, and BNYM, the "Defendants"), and the Financial Oversight and Management Board for Puerto Rico (the "Board"), as Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), and the Government Entities[2] (together, with Plaintiff, the "Government Parties"), respectfully submit this Joint Status Report in response to the Court's Order dated February 5, 2021, concerning discovery in the adversary proceedings (the "Adversary Proceedings") regarding bonds issued by the Puerto Rico Infrastructure Finance Authority ("PRIFA"), the Puerto Rico Convention Center District Authority ("CCDA"), and the Puerto Rico Highways and Transportation Authority ("HTA").

**JOINT STATUS REPORT**

1.      This Joint Status Report is submitted pursuant to the Court's May 26, 2021 Order, which ordered the Parties to "file a further joint status report by June 10, 2021." (ECF No. 16805.) Pursuant to the deadlines set forth in the Court's *Order Granting Motion to (I) Modify Protective Order Motion Briefing Schedule; (II) Continue Discovery Completion Date; and (III) Extend*

---

[2] "Government Entities" refers to the Commonwealth's agencies and instrumentalities on which Defendants served subpoenas in these Adversary Proceedings, including the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the Puerto Rico Government Development Bank, the Puerto Rico Department of Treasury, HTA, PRIFA, CCDA, and the Puerto Rico Tourism Company. The Commonwealth, by and through the Board, as its Title III representative, in these cases is the "Plaintiff." Unless otherwise indicated, all ECF numbers referenced herein refer to the docket in Case No. 17 BK 3283-LTS.

*Deadline to Submit Post-Discovery Supplemental Briefing Schedule* (ECF No. 16799), the
deadline for the completion of Rule 56(d) discovery is June 11, 2021, because the Government
Parties did not move for a protective order.

## I.   THE PARTIES' PROGRESS SINCE THE MAY 25 JOINT STATUS REPORT

2.      Since the May 25 Joint Status Report,[3] the Parties have continued to exchange
correspondence and met-and-conferred telephonically on May 28, 2021 (the "May 28 Meet-and-
Confer").

### A.   Rule 30(b)(6) Depositions

3.      On May 20, 2021, Defendants commenced the deposition of one of the Government
Parties' Rule 30(b)(6) representatives, Timothy Ahlberg, who was designated on certain topics
relating to each of HTA, PRIFA, and CCDA.  In their May 25 Joint Status Report, the Parties
informed the Court that they had agreed to continue Mr. Ahlberg's deposition for 2.5 hours on
PRIFA topics.  Mr. Ahlberg's deposition was continued on May 26, 2021.  The deposition
concluded after 2 hours and 55 minutes of testimony.  Defendants contend the deposition was not
completed, and noted they expected to be able to complete the deposition within about 30 minutes.
Defendants believe that Mr. Ahlberg was evasive and repeatedly delayed unnecessarily before
responding to even simple questions.  The Government Parties believe Defendants asked repetitive
and immaterial questions and otherwise wasted time, and the deposition already had gone past the
deadline agreed to by the parties and reflected in the Order.  The Government Parties vigorously
dispute Defendants' contention that Mr. Ahlberg was "evasive" or "delayed unnecessarily before
responding."  The record bears out he did nothing of the sort.  Additionally, Mr. Ahlberg had

---

[3] "May 25 Joint Status Report" refers to *Joint Status Report Regarding Discovery in the Revenue Bond
Adversary Proceedings* (ECF No. 16802).

previously been deposed by defendants for two days in the lift stay discovery, and the Government

Parties had no reason to believe Defendants' additional 30-minute estimate would hold.  The

Government Parties' position is the deposition is concluded.  The Parties' respective positions on

this issue are set out below.

4.      Defendants deposed Omar Rodriguez, the Government Parties' other Rule 30(b)(6)

corporate representative, on certain topics relating to HTA and PRIFA, on May 24 and May 25,

2021.  Mr. Rodriguez's deposition was completed.

5.      Defendants deposed the corporate representatives of BDO Puerto Rico, P.S.C.,

KPMG LLP, and Ernst & Young LLP.  On May 27, 2021, Defendants, with a reservation of all

rights, adjourned their noticed Rule 30(b)(6) deposition of PRIFA's auditor, RSM Puerto Rico.

**B.      Fact Witness Depositions**

6.      On April 30, 2021, Defendants' counsel sent a letter to the Government Parties,

requesting depositions of a "preliminary list" of 19 current and former Government personnel.  On

May 4, 2021, Defendants transmitted three deposition notices seeking to depose eight current and

former employees.  The Parties met and conferred on May 7, 2021 and agreed to defer service of

subpoenas to those eight current and former Government employees and further meet and confer

discussions on those eight government witnesses until after the 30(b)(6) depositions.

7.      At the Friday, May 28 Meet-and-Confer, the Parties discussed the need for fact

witness depositions.  Defendants informed the Government Parties that they believed depositions

of certain individuals were appropriate and provided the Government Parties with what they

contended was a targeted list of individuals whom Defendants believed may have personal

knowledge of certain issues on which the Government Parties' 30(b)(6) witnesses' testimony was

supposedly inadequate.  The Defendants identified Ignacio Alvarez, formerly of Pietrantoni

- 3 -

Mendez & Alvarez LLP (underwriter's counsel on the 2002 HTA bond issuance); up to four different individuals who worked for JPMorgan Chase Bank in 2002—Philbert Jones, Joanne Adams, Virginia Dominguez, and Peter Lagatta; Lawrence Bauer of Norton Rose (PRIFA's former bond counsel) and Jose Cacho of O'Neill & Borges LLC (former counsel to the Commonwealth with respect to negotiation of the lockbox agreement with rum producers and one of the FOMB's current counsel). Defendants also raised that they may want to depose unspecified former Treasury and PRIFA officials and advised they may seek depositions of individuals involved in the creation of the GDB certificates of amounts due on the CCDA bonds, but that those depositions could be avoided through a mutually agreeable stipulation. None of the individuals Defendants identified by name on May 28 were current or former government employees, nor were they raised to the Government Parties before the May 28 Meet-and-Confer. Defendants contend they revised and narrowed the deponent list based on the 30(b)(6) testimony obtained to date, in order to focus on the particular issues on which Defendants believed the Government's corporate representatives were unprepared and/or evasive, and to instead seek the testimony of individuals whom Defendants understood based on the limited documentary record might have personal knowledge of critical facts. The Government Parties note the list of witnesses identified on May 28 was completely different from the list provided by Defendants a month before. Defendants did not offer any explanation for their abrupt change in proposed witnesses before this Joint Status Report. Indeed, Defendants first made their contention they revised their list because they "believed the Government's corporate representatives were unprepared and/or evasive" less than one hour before the midnight filing deadline for this Joint Status Report. Needless to say, the Government Parties dispute this last minute assertion.

- 4 -

8.      On Sunday, May 30, 2021, the Government Parties informed Defendants they would not object to depositions of Defendants' newly identified proposed fact witnesses if the Defendants completed the depositions on or before the June 11, 2021 discovery cutoff (to which Defendants had agreed and this Court had ordered five days earlier).[4]  On June 1, 2021, Defendants provided the Government Parties with a revised list of potential deponents that had been narrowed to a number Defendants stated they believed could practicably be completed on or before June 11. This list removed Lawrence Bauer and Jose Cacho, and raised for the first time that Defendants would seek to depose two former GDB personnel—Gabriel F. Rivera and Jesus M. Garcia Rivera—regarding the calculation of the GDB certificates of amounts due on the CCDA bonds absent a mutually agreeable stipulation.  Defendants also noted their objection to the Government Parties' timeframe, given that Defendants had agreed (at the Government Parties' specific request) to hold off on serving any subpoenas of fact witnesses until after the Parties' meet-and-confer process.   The Government Parties responded on June 3, 2021, disputing Defendants' characterization of the record given AAFAF had only asked Defendants to defer serving subpoenas on current and former government employees, which request is not implicated by the list of third parties Defendants presented for the first time on May 28, 2021.  Defendants disagree with the Government Parties' characterization that AAFAF's prior request to defer serving subpoenas was so limited.

9.      On June 8, 2021 and June 9, 2021, Defendants transmitted notices of deposition for four lawyers formerly affiliated with the law firm that served as bond counsel for the 2002 HTA bond issuance: John J. Cross III, Terence Workman, Richard Van Dusen, and John Connorton, Jr.

---

[4] *See Order Granting Motion to: (I) Modify Protective Order Motion Briefing Schedule; (II) Continue Discovery Completion Date; and (III) Extend Deadline to Submit Post-Discovery supplemental Briefing Schedule* (ECF No. 16799).

- 5 -

Defendants had not raised any intent to depose these individuals before transmitting notices of deposition to the Government Parties. Defendants contend they only learned of those individuals' involvement in the 2002 HTA bond issuance on those dates. The Government Parties' position is that these depositions are irrelevant and the identities of bond counsel with knowledge of the 2002 HTA bond issuance could have been ascertained had Defendants exercised reasonable diligence.

10.     The status of fact witness depositions in each of the Revenue Bond Adversary Proceedings is summarized below:

11.     ***HTA Adversary Proceeding.***   At the May 28 Meet-and-Confer, Defendants informed the Government Parties that they intended to seek the deposition of individual fact witnesses concerning the drafting and execution of the 2002 Security Agreement and related documents surrounding the 2002 HTA bond issuance. Defendants contend that without contemporaneous communications and drafts, Defendants have encountered significant difficulty identifying individuals with relevant knowledge. The Government Parties contend this issue has been fully explored prior to the conclusion of the discovery period through both written discovery and deposition testimony, and may be explored further tomorrow through the deposition of Ignacio Alvarez, discussed below.

12.     To date, Defendants have either served, attempted to serve, or are in the process of serving deposition subpoenas on the following individuals potentially familiar with the 2002 bond issuance:  Ignacio Alvarez, Philbert Jones, Peter Lagatta, John J. Cross, III, Richard Van Dusen, Terence Workman, and John V. Connorton, Jr.   Defendants noticed all of these depositions to be completed by June 11, 2021.

13.     Of these, Defendants contend the person with the most relevant knowledge was expected to be Philbert Jones, who signed the 2002 Security Agreement on behalf of JPMorgan.

Defendants' process server attempted to serve Mr. Jones at his home but was informed that Mr. Jones is unavailable because he is currently hospitalized.  (*See* Ex. A, *Declaration of Nicholai Granados Regarding Service of Deposition Subpoena of Philbert G. Jones*.)

14.     Messrs. Lagatta, Cross, and Workman have informed Defendants that they cannot currently recall the drafting and execution of the 2002 Security Agreement.  Through counsel, Messrs. Lagatta and Workman have advised that they are willing to consider executing declarations in lieu of deposition testimony.  Mr. Connorton's counsel advised that he was not involved in the 2002 bond issuance and, on that basis, Defendants have agreed to forgo his deposition.  At this time, only the depositions of Mr. Alvarez, whose former law firm served as underwriters' counsel for the 2002 HTA issuance, and Mr. Van Dusen, whose law firm served as issuer's counsel for the 2002 HTA issuance, are scheduled for June 11, 2001.  The Government Parties have no objection to the deposition of Mr. Alvarez, as it is scheduled to be completed prior to the close of the discovery period tomorrow.

15.     ***CCDA Adversary Proceeding.***  Defendants identified two former GDB employees who they intended to depose but stated that they were willing to forgo those depositions if the Government Parties preferred to execute a stipulation concerning the topic of Defendants' planned examination.  On June 3, 2021, the Government Parties sent Defendants a draft stipulation.  On June 7, 2021, Defendants shared with the Government Parties a revised draft of the Government Parties' proposed stipulation.  The Government Parties sent back a revised stipulation at 4:31 p.m.

16.     ***PRIFA Adversary Proceeding.***  In light of what Defendants contend is the limited set of documents made available to them, Defendants determined that depositions of fact witnesses are unlikely to be productive at this time and respectfully reserved all rights.

### C.      Outstanding Document Discovery Issues

17.      The Parties have exchanged letters regarding the production of a memorandum and adjusting accounting entries referenced and relied on by Mr. Rodriguez in preparation for his deposition and documents reconciling accounting fund balances to cash account balances referred to in Mr. Rodriguez's deposition.  The Government Parties directed Defendants to materials already produced for the memorandum and accounting entries Mr. Rodriguez reviewed to prepare for his deposition.  In response to Defendants' request for reconciliations, the Government Parties objected the documents were beyond the scope of the Rule 56(d) Order and Defendants' own requests and asserted that the Government Parties had satisfied their obligation to produce records reflecting the flow of funds into and out of Fund 278 and any other accounts that received excise tax revenues by producing the accounting entries reflecting the flow into and out of Fund 278 and the bank account statements for the deposit accounts that received the cash.  Defendants disagree with the Government Parties' position.

18.      Today, the Government Parties produced documents reflecting over a hundred communications with the subpoenaed law firms, as required by this Court's *Memorandum of Decision and Order on Motions Relating to Discovery in the Revenue Bond Adversary Proceedings* (ECF No. 16778) (the "Second Motion to Compel Order").  Defendants have raised a dispute regarding the scope of the Second Motion to Compel Order, as set forth below.

19.      With respect to third-party document productions, the productions from banks, accounting firms, law firms, and rum producers are complete, subject to Defendants' scope objections.

## II.    PROPOSED NEXT STEPS

20.    Defendants believe it is unlikely that discovery will be completed by June 11, 2021, as directed in the Court's May 25 Order (ECF No. 16799).  The Government Parties believe the discovery period will – and should – end on June 11.  To the extent discovery is completed by June 11, the Parties intend to submit a proposed post-discovery briefing schedule within seven days of June 11, 2021, as directed in the Court's May 25 Order.  The proposed Joint Status Report Defendants provided to the Government Parties at 11:00 p.m. on June 9, 2021 stated that depositions *would be* completed on June 11, 2021 as required by the May 25 Order.  The version of the Joint Status Report Defendants sent to the Government Parties for approval after 11:00 p.m. on June 10, 2021—less than one hour before the filing deadline—abruptly changed their position to state that additional discovery would be needed.  The Government Parties strenuously disagree with the Defendants' last minute change in position, and reserve the right to supplement this portion of the Joint Status Report.

21.    Defendants reserve the rights to seek an extension of the June 11 deadline, if necessary, to complete the remaining individual depositions.  The Government Parties reserve all rights to oppose any further extensions of the schedule.

## DEFENDANTS' POSITION STATEMENT AND RESERVATION OF RIGHTS

## I.    THE PARTIES SHOULD SUBMIT A STATUS REPORT NEXT WEDNESDAY IN LIGHT OF OUTSTANDING ISSUES

22.    Defendants initially drafted a status report intended to address a handful of open issues relating to the Government's premature conclusion of one of Defendants' Rule 30(b)(6) depositions and a dispute over the scope of certain provisions of the Second Motion to Compel Order.  However, this evening (the night before fact discovery is supposedly due to close), the Government produced more than 140 law firm communications—which the Court ordered the

- 9 -

Government to produce more than three weeks ago—that do not in any way appear to comply with the guidelines set out by the Court.   Specifically, the Government's production appears to be plainly inconsistent with the Second Motion to Compel Order, which expressly contemplated that otherwise privileged or work product communications should be produced subject to the savings provision providing that such production would not constitute a waiver.   Additionally, even a cursory review of the production reveals the Government's heavy hand in directing discovery and provides a basis to produce communications with third parties (as set forth in the following section).

23.    The Government also sent this afternoon substantial revisions to a proposed stipulation meant to moot the need for any additional CCDA deposition, which the Government plainly cannot expect that Defendants would agree to.   Among other things, the Government appears to have modified language that the Government itself initially proposed, and moreover the Government is seeking to add new reservations of rights language and asserted disputes that it nowhere mentioned in its initial draft.

24.    Lastly, the Government circulated substantial revisions and a lengthy counter-position statement to this status report at 8:15pm this evening, leaving Defendants insufficient time to address all of the Government's mischaracterizations of the record and Defendants' positions.

25.    In light of these significant outstanding issues and last-minute disclosures, Defendants expect that the parties will benefit from additional time to meet and confer and crystallize any issues necessitating the Court's intervention, and respectfully propose that the Parties submit a joint status report next Wednesday, June 16, 2021.

## II.    THE PARTIES SHOULD DISCLOSE ALL THEIR COMMUNICATIONS WITH THIRD-PARTIES

26.    Defendants have complied with their obligations under the Second Motion to Compel Order, and allowed the Government to join Defendants' meet-and-confers with law firms and included the Government on e-mails with them.  The Government has extended the framework of the order to *Defendants'* communications with parties *other than* law firms.  In particular, the Government has joined Defendants' meet-and-confers with banks, including JPMorgan Chase, which is the predecessor to BNYM, a defendant in this proceeding.  The Government has also demanded that banks provide copies of all communications with Defendants directly to the Government, including drafts of declarations that Defendants are arranging in lieu of a deposition.

27.    While seeking to extend the Court's framework to *Defendants'* meet-and-confers with all third parties, the Government has refused to provide reciprocal disclosures regarding the Government's communications with third parties.  In other words, while it is joining Defendants' meet-and-confers and demanding copies of all communications between Defendants and any third party, the Government is not providing similar disclosures itself.

28.    Defendants' position is that the Court intended to impose reciprocal obligations on both sides—not to act as a one-way ratchet limiting Defendants' ability to meet-and-confer with third parties, while allowing the Government to avoid similar disclosures.  While the Second Motion to Compel Order by its express terms only applies to communications with law firms, in light of the Government's decision to insist on joining meet-and-confers with all third parties and receipt of all communications between Defendants and the Government, Defendants respectfully ask that the Court extend the order to cover all third-party communications.  Otherwise, Defendants will be severely prejudiced by an uneven (and highly unusual) playing field—where the Government has seen fit to join all of Defendants' meet-and-confers and demanded copies of

all communications, while refusing to provide any similar disclosures.  Accordingly, Defendants

ask that the Court extend the requirements of the order to both sides for any communications with

third parties.

## III.    THE AHLBERG DEPOSITION IS NOT COMPLETE

29.    Defendants respectfully reserve their rights with respect to the Government Parties'

refusal to complete Mr. Ahlberg's deposition.  Because Mr. Ahlberg was designated as the

corporate representative on behalf of nine separate entities, in response to nine deposition

notices—involving three separate adversary proceedings, each of which involves distinct factual

issues—Defendants were entitled under the Federal Rules to seven hours with Mr. Ahlberg for

each notice on which he was designated to testify (technically the rules would allow up to 63 hours

of testimony given the number of notices on which Mr. Ahlberg was designated).  Of course,

Defendants did not seek anything close to that.  Mindful of the targeted nature of this discovery,

Defendants focused their examination on the key points in each of the three cases, concluding

examinations related to HTA and CCDA on the first day.  Defendants agreed to limit Mr. Ahlberg's

testimony on the second day to PRIFA and endeavored to complete his deposition in 2.5 hours.

But the testimony took longer than expected because Mr. Ahlberg did not give direct answers on

a number of points.  In the end, the Government Parties cut off questioning in the middle of a

critical point—Mr. Ahlberg's understanding of the nature and location of the Infrastructure Fund

and the bases for that understanding, leaving gaps in the evidentiary record in the PRIFA

Adversary Proceeding.  And contrary to the Government's claim, nothing about the additional

testimony would or could be duplicative of his lift-stay testimony, since, at the time the

Government cut off the deposition, Defendants were questioning Mr. Ahlberg about sworn

statements he made *after* his lift-stay deposition.

- 12 -

30.     Defendants respectfully reserve all rights.

## IV.     DEFENDANTS' RESERVATION OF RIGHTS

31.     Defendants respectfully preserve their objection that the scope of limited discovery under the Rule 56(d) Order is not sufficient to resolve the issues presented in the Adversary Proceedings.[5]

## GOVERNMENT PARTIES' POSITION STATEMENT AND RESERVATION OF RIGHTS

## I.     THERE IS NO REASON TO MODIFY THE SECOND MOTION TO COMPEL ORDER.

32.     The Government Parties continue to maintain they have satisfied all discovery obligations.  The Government Parties timely responded to all document requests and other written discovery propounded by Defendants, produced responsive documents, complied with all Court Orders regarding motions to compel, designated and produced witnesses for deposition in response to the Rule 30(b)(6) deposition notices served by Defendants, and did not object to any of the further (and frankly, wasteful and excessive) depositions desired by Defendants so long as they were completed by the deadline, June 11, 2021.  In this regard, as Defendants acknowledged up until their change of position less than one hour before the filing deadline, discovery *will* be completed by June 11, 2021 in compliance with the Court's May 25 Order (ECF No. 16799).  Further, there are no pending motions related to any aspect of discovery conducted under the Court's Rule 56(d) Order.  The only steps remaining to be taken are for the parties to (i) meet and confer regarding a proposed post-discovery briefing schedule, and (ii) submit a proposed post-

---

[5] (*See Joint Status Report of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, the Bank of New York Mellon, U.S. Bank Trust National Association, and the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico, Pursuant to the Court's January 20, 2021 Order* (ECF No. 15801) at ¶¶ 37-39.)

- 13 -

discovery briefing schedule within seven days following the completion of discovery (i.e. on or before June 18, 2021) as required by the May 25 Order. The parties agree they intend to comply with both these requirements by the June 18, 2021 deadline.

33.    However, the Government Parties need to respond to Defendants' "Position Statement and Reservation of Rights" and correct the factual misstatements contained therein.

34.    First, there is no reason for yet another Joint Status Report. Defendants' request is nothing more than a transparent last-ditch attempt by them to further drag out the period of limited discovery, delay supplemental briefing and impact the plan confirmation schedule. The request should be summarily rejected. The parties are now obligated to meet and confer and submit a proposed schedule for supplemental briefing as required by the May 25 Order.

35.    Defendants' arguments for another status report are baseless. Despite the Government Parties' early request for Defendants' portion of the draft Joint Status Report, Defendants did not send it to the Government Parties until 10:57 p.m. on June 9, 2021. Not surprisingly, the Government Parties were unable to begin preparing their portion of the report until the morning of June 10, 2021 and sent Defendants the revised Joint Status Report as quickly as possible. Defendants then made substantial revisions to their portion of the Joint Status Report and sent it back to the Government Parties less than one hour before the filing deadline. Given the impending deadline, the Government Parties reserve their right to supplement this response.

36.    Second, Defendants' protestations regarding the Government Parties' compliance with this Court's May 19, 2021 discovery order are unfounded. The Government Parties have complied with this Court's May 19, 2021 order that they produce their communications with the subpoenaed law firms. The Government Parties produced their email communications. The Government Parties withheld attachments to those emails in two scenarios: (1) where documents

- 14 -

were transmitted to the Government Parties via email to review in advance of production; and (2) privileged drafts of subpoena responses, the final versions of which were served on defendants. Neither category of withholding is inconsistent with this Court's order, which (1) rejected Defendants' motion to compel production of every document the Government Parties (or their law firms) collected; and (2) made clear the Government Parties are not waiving applicable privileges. Defendants' attempts to characterize the Government Parties' communications as improper is a baseless effort to relitigate the motion to compel this Court already denied. The Government Parties' communications with the subpoenaed law firms reflect, as the Government Parties have always made clear, that the Government Parties' current counsel communicated their clients legal position to their clients' former counsel, and directed them to interpose the same objections the Government Parties interposed to Defendants directly.[6] As this Court has already held "it was not inappropriate for the Government Parties to consult with their law firms about the scope of discovery in response to the subpoenas.[7]

37.    Third, Defendants' contention that there is a dispute regarding the scope of the Second Motion to Compel Order ignores both the clear terms of the order itself and the facts surrounding Defendants' own communications with non-parties. Defendants do not, and cannot, claim that the Government Parties have failed to comply with the Second Motion to Compel Order. Instead, Defendants ask the Court to *reverse* its prior ruling denying their motion to compel the Government Parties to disclose their communications with non-law firm third party witnesses,[8]

---

[6] *See Government Parties' Opposition to Defendants Motion to Compel*, Case No. 20-00003, ECF No. 179 ¶ 16.
[7] *Memorandum of Decision and Order on Motions Relating to Discovery in the Revenue Bond Adversary Proceedings* at 11 (citing 473 ABA Formal Opinion (Feb. 17, 2006)).
[8] Defendants previously sought an order requiring the "Government to disclose (i) whether its communications with any rum producers or accounting firms that received subpoenas included discussions regarding potential objections; (ii) who initiated these communications; and (iii) which counsel for the third parties were present." Second Motion to Compel Order (ECF No. 16778) at 8. The Court denied the motion, finding Defendants "have not put forth any

- 15 -

and order the Government Parties to disclose all of their communications with third party witnesses.

38.     Defendants' request should be denied on the ground it is improper and fundamentally unfair to ask in a Joint Status Report that the Court reverse its prior ruling denying Defendants' motion to compel and issue a new and different order—without having filed a motion for reconsideration or giving the Government Parties notice and an opportunity to brief the issue.[9]

39.     Defendants' apparent "motion for reconsideration" also should be denied on the ground it is factually inaccurate.  The pretext offered by Defendants for their request is that Government Parties "joined Defendants' meet-and-confers with banks, including JPMorgan Chase, which is the predecessor to BNYM, a defendant in this proceeding," and "demanded that banks provide copies of all communications with Defendants directly to the Government, including drafts of declarations that Defendants are arranging in lieu of a deposition."  Defendants fail to inform the Court that the "meet-and-confers with banks" concerned the *scheduling of depositions* and, more specifically, whether witnesses were available for deposition on or before the June 11, 2021 deadline and, if not, whether the Government Parties would object to the deposition.  The contention the Government Parties "demanded that banks provide copies of all communications with Defendants directly to the Government" is untrue.  With respect to Defendants' use of process (i.e. deposition subpoenas) to obtain "forced" declarations from

---

facts to indicate that the Government lawyers have influenced the responses to the subpoenas or that any documents have been withheld. Nor have Defendants' counsel put forth any evidence that objections have been improperly interposed. Similarly, Defendants' counsel simply ignore Bacardi's representation that counsel for the FOMB and the Commonwealth did not even 'suggest' what documents should be produced or what the appropriate response to the request should be." *Id.* at 9-10. . Defendants' portion of this most current Joint Status Report asks for an even *broader* order—an order compelling the Government Parties to produce all communications with third party witnesses (and, apparently, their counsel)—without any motion, evidence or briefing.

[9] This is not the first time that Defendants have improperly sought a Court order by a request in a joint status report rather than by motion practice. *Joint Status report Regarding Discovery in the Revenue Bond Adversary Proceedings* dated April 19, 2021 (ECF No. 16460) at 17-20.

witnesses in lieu of the inconvenience of a deposition, there is nothing improper about the Government Parties asking that they be provided with copies of such declarations (and Defendants do not contend otherwise). The "dispute" is one of Defendants' own making and without merit, and Defendants' request that the Court reverse the Second Motion to Compel Order and issue a new and different order compelling the Government Parties to disclose all of their communications with third party witnesses should be rejected, just as it was the last time it was presented by Defendants. The discovery allowed under the Rule 56(d) Order has been extensive and thorough---indeed, far more than the Government Parties believed to be "targeted, efficient, limited and proportional." It is now time to return to the substantive matters raised in the pending summary judgment motions, through supplemental briefing and disposition by the Court.

## II.    THE AHLBERG DEPOSITION IS COMPLETE

40.    The Government Parties designated Mr. Ahlberg to serve as the 30(b)(6) witness for five entities: the Commonwealth, PRIFA, CCDA, the Tourism Company, and HTA. The topics for which Mr. Ahlberg was designated were related to flow of the relevant cash for the PRIFA, CCDA, and HTA bonds, and the implementation of the statutes and bond documents, which is reflected in that cash flow. As a result, the topics for which Mr. Ahlberg was designated overlapped substantially with testimony that was already provided over two full deposition days in connection with the Lift Stay Motions. The Government Parties offered Mr. Ahlberg for one additional deposition day in connection with these adversary proceedings, subject to their objection that the topics for which he was being designated were cumulative of discovery already done in the Lift Stay Motion. During meet and confer, Defendants represented they had no intention to duplicate topics for which they had already received testimony from Mr. Ahlberg in connection with the Lift Stay Motion. When Defendants deposed Mr. Ahlberg on May 20, 2021, the majority

- 17 -

of Defendants' questioning revisited the same topics and lines of inquiry on CCDA, HTA, and

PRIFA-related issues that had already been covered in the Lift Stay depositions, including the

nature and location of the PRIFA Infrastructure fund.  At the end of the May 20, 2021 deposition,

Defendants requested a fourth deposition day with Mr. Ahlberg, but agreed that it would be limited

to 2.5 hours of record time.  On May 26, 2021, after Defendants spent nearly 3 hours of record

time asking questions that were overwhelmingly duplicative of Lift Stay testimony (and testimony

about the nature and location of the Infrastructure Fund, about which Mr. Ahlberg was questioned

by the same Ambac attorney a few days earlier), the Government Parties asked Defendants for an

estimate of how much additional record time Defendants would need to complete their

questioning.  Defendants responded they believed they could complete the deposition with an

additional 30 minutes of record time (bringing the total to 3.5 hours of record time on deposition

day 4), but that they had three more documents to question him about and could not be sure.  Given

the Government Parties had already provided nearly 30 minutes of record time beyond the 2.5-

hour limit to which Defendants had agreed, the lack of confidence Defendants displayed in their

estimate, that Defendants' time estimates had been consistently understated in the May 20, 2021

deposition, that the testimony was duplicative of the Lift Stay Depositions, and was on a subject

that was explored during the May 20 session, the Government Parties held Defendants to their

agreement.  The Government Parties disagree with Defendants' assertion that their inability to

comply with their agreement to limit the questioning to no more than 2.5 hours was due to Mr.

Ahlberg, who acted professionally at all times and answered all questions (many of which were

asked multiple times) to the best of his ability.[10]  The Government Parties assert the record of Mr. Ahlberg's deposition speaks for itself and reserve all rights.

41.     Further testimony is not required from Mr. Ahlberg or anyone else to complete the record regarding the Infrastructure Fund.  Defendants received testimony from Mr. Ahlberg regarding the nature and location of the Infrastructure Fund from a cash perspective in connection with the Lift Stay Motions, in the May 20, 2021 deposition, and again in the May 26, 2021 deposition. With respect to Defendants' theory that the Infrastructure Fund is an accounting designation, Defendants had the opportunity to obtain testimony from the Government Parties' other 30(b)(6) witness, Omar Rodriguez, who testified for two full days and was designated to provide testimony on the extent to which the Infrastructure Fund is reflected in the PRIFAS accounting system or the Commonwealth or PRIFA's financial statements.  Defendants also had the opportunity to obtain testimony on this issue through the 30(b)(6) depositions of the Commonwealth's auditor, KPMG, and PRIFA's auditor, RSM (which Defendants cancelled without any request from the Government Parties that they do so).  In the case of RSM, Defendants clearly elected not to proceed with the deposition because they did not deem it necessary.

---

[10] 30(b)(6) testimony is not a memory test, nor is perfection the standard.  *See Pogue v. Northwestern Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS, 2017 U.S. Dist. LEXIS 110990, at *31 (W.D. Ky. Jul. 17, 2017) ("A 30(b)(6) witness is not expected to perform with absolute perfection."); *Suomen Colorize Oy v. Verizon Servs. Corp.*, No. 12-715-CJB, 2013 U.S. Dist. LEXIS 150992, at *5 (D. Del. Oct. 15, 2013) (a 30(b)(6) witness "need not have perfect responses to each question, nor a clairvoyant ability to predict every single question that may be posed"); *Dealer Computer Servs. v. Curry*, No. 12 Civ. 3457 (JMF) (JLC), 2013 U.S. Dist. LEXIS 18315, at *12 (S.D.N.Y. Feb. 7, 2013) ("a 30(b)(6) deposition is not a quiz."); *EEOC v. Am. Int'l Group , Inc.*, No. 93 CIV. 6390 (PKL) (RLE), 1994 U.S. Dist. LEXIS 9815, at *8-9 (S.D.N.Y. Jul. 18, 1994) ("Rule 30(b)(6) is not designed to be a memory contest.").

Dated:  June 10, 2021
       San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No.
    219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile:  (787) 766-7001
    Email:  rcamara@ferraiuoli.com
          scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile:  (212) 530-5219
    Email: ddunne@milbank.com
          amiller@milbank.com
          gmainland@milbank.com
          jhughes2@milbank.com
          johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

**REXACH & PICÓ, CSP**

By: /s/ *María E. Picó*
    María E. Picó
    (USDC-PR No. 123214)
    802 Ave. Fernández Juncos
    San Juan, PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: /s/ *Martin A. Sosland*
    Martin A. Sosland (admitted *pro hac vice*)
    2911 Turtle Creek Blvd., Suite 1400
    Dallas, TX 75219
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    Email: martin.sosland@butlersnow.com

    James E. Bailey III (admitted *pro hac vice*)
    Adam M. Langley (admitted *pro hac vice*)
    6075 Poplar Ave., Suite 500
    Memphis, TN 38119
    Telephone: (901) 680-7200
    Facsimile: (901) 680-7201
    Email: jeb.bailey@butlersnow.com
          adam.langley@butlersnow.com

*Attorneys for Financial Guaranty Insurance
Company*

RIVERA, TULLA AND FERRER, LLC

By:  /s/ Eric A. Tulla
    Eric A. Tulla
    (USDC-DPR No. 118313)
    Email: etulla@ riveratulla.com
    Iris J. Cabrera-Gómez
    (USDC-DPR No. 221101)
    Email: icabrera@ riveratulla.com
    Rivera Tulla & Ferrer Building
    50 Quisqueya Street
    San Juan, PR 00917-1212
    Telephone: (787) 753-0438
    Facsimile: (787) 767-5784

SEPULVADO, MALDONADO & COURET

By: /s/ Albéniz Couret Fuentes
    Albéniz Couret Fuentes
    (USDC-PR No. 222207)
    304 Ponce de León Ave. Suite 990
    San Juan, PR 00918
    Telephone: (787) 765-5656
    Facsimile: (787) 294-0073
    Email: acouret@smclawpr.com

HOGAN LOVELLS US LLP

By:  /s/ Ronald Silverman
    Ronald Silverman, Esq.
    Michael C. Hefter, Esq.
    390 Madison Avenue
    New York, NY 10017
    Telephone: (212) 918-3000
    Facsimile: (212) 918-3100
    ronald.silverman@hoganlovells.com
    michael.hefter@hoganlovells.com

*Attorneys for U.S. Bank Trust National
Association, in its Capacity as Trustee
to PRIFA Bondholders*

REED SMITH LLP

By: /s/ Jared S. Roach
    Luke A. Sizemore (admitted *pro hac vice*)
    Jared S. Roach (admitted *pro hac vice*)
    225 Fifth Avenue, Suite 1200
    Pittsburgh, PA 15222
    Telephone: (412) 288-3131
    Facsimile: (412) 288-3063
    Email: lsizemore@reedsmith.com
        jroach@reedsmith.com

*Attorneys for The Bank of New York Mellon, in
its Capacity as Trustee to CCDA Bondholders*

**O'NEILL & BORGES LLC**

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 15205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:   (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

**PROSKAUER ROSE LLP**

/s/ *Michael A. Firestein*
Martin J. Bienenstock
Jeffrey Levitan
Ehud Barak
(Admitted *Pro Hac Vice*)

Eleven Times Square
New York, NY 10036
Tel:   (212) 969-3000
Fax:  (212) 969-2900
Email: mbienenstock@proskauer.com
        jlevitan@proskauer.com
        ebarak@proskauer.com

Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel:   (310) 557-2900
Fax:  (310) 557-2193
Email: mfirestein@proskauer.com
        lrappaport@proskauer.com

***Attorneys for the Financial
Oversight and Management Board,
as Representative of the Commonwealth***

**O'MELVENY & MYERS LLP**

/s/ *Peter Friedman*
John J. Rapisardi
(Admitted *Pro Hac Vice*)
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
Email: jrapisardi@omm.com

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
Email: pfriedman@omm.com

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994
Email: emckeen@omm.com
        apavel@omm.com

**MARINI PIETRANTONI MUÑIZ LLC**

/s/ *Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com
Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com
250 Ponce de León Ave.
Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2173
Fax: (787) 936-7494

***Attorneys for the Puerto Rico Fiscal Agency and
Financial Advisory Authority, as representative of
the Government Entities pursuant to Act 2-2017***

## **CERTIFICATE OF SERVICE**

I hereby certify that on this same date a true and exact copy of this notice was filed with

the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email: rcamara@ferraiuoli.com