**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>as representative of<br><br>The Commonwealth of Puerto Rico, The Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority,<br><br>Debtors | PROMESA Title III<br><br>No. 17 BK 3283 (LTS)<br><br>(Jointly Administered) |

**MEMORANDUM OF LAW IN SUPPORT OF PFZ PROPERTIES, INC.'S**

**"OBJECTION TO DISCLOSURE STATEMENT FOR THE THIRD AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO ET AL."**

TABLE OF CONTENTS

                                                          Page

1. Procedural Background                                  1


2. Background and Description of PFZ's Claims             5

3. Argument                                               10

4. Prayer                                                 19

5. Certificate of Service                                 20

## TABLE OF AUTHORITIES

                                                            Page

**CONSTITUTIONAL DISPOSITIONS**

**Unites States Constitution**
Fifth Amendment Takings Clause                  2,4,9,11,12,13,14
                                                 15,16,17,18,19

**Puerto Rico Constitution**

Article II, Clause 9                              5,9

**CASES**

Blanchette vs. Connecticut
General Insurance Corp., 419 U.S. 102 (1974)     13,16,18

Commonwealth of Puerto Rico v.
Sanchez Valle, 136 S Ct. 1863 (2016)             5

In re: City of Detroit, Debtor,524 BR 147 (2014)   17, 18

In re City of Stockton, 909 F.3d 1256 (2018)     17

Louisville Joint Stock Land Bank v.
Radford, 295 U.S. 555 (1935)                     11,13,15,16,17,18

Posadas de Puerto Rico Assoc. v.
Tourism Co. of Puerto Rico, 478 U.S. 328 (1986)  4

Torres v. Puerto Rico, 442 U.S. 465 (1979)       4

U.S. vs. Security Industrial Bank,
459 U.S. 70 (1982)                               11,13,14,16,17,18

Wright vs. Vinton Branch
of Mountain Trust Bank, 300 US 440 (1937)        13

**STATUTES AND OTHER AUTHORITIES**

Bankruptcy Reform Act of 1978

11 U.S.C. 522(f)(2)                              14,15

11 U.S.C. 944 c)(1)                                         17


Frazier Lemke Act
Pub. L. 73-486 48 Stat. 1289                        11,12,13

PROMESA
Pub. L. 114-187, 48 U.S.C. 2101 et seq.      5,8,10,11,12,18

Regional Rail Reorganization Act of
1973 Pub. L. 93-236, 45 U.S.C. 701                     13,14

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

In re:

The Financial Oversight and
Management Board for Puerto
Rico,

as representative of

The Commonwealth of Puerto
Rico, The Employees Retirement
System of the Government of
the Commonwealth of Puerto
Rico, and the Puerto Rico
Public Buildings Authority,

Debtors

PROMESA Title III

No. 17 BK 3283 (LTS)

(Jointly Administered)

**MEMORANDUM OF LAW** [1] **IN SUPPORT OF PFZ PROPERTIES, INC.'S**

**"OBJECTION TO DISCLOSURE STATEMENT FOR THE THIRD AMENDED TITLE III**

**JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO ET**

**AL."**

PROCEDURAL BACKGROUND

PFZ Properties, Inc. ("PFZ") has filed a Proof of Claim (Claim

---

[1] This Memorandum of Law was originally presented by PFZ, substantially in the
same form, as its Objection (Docket #9223) to Debtor's "Title III Joint Plan
of Adjustment of the Commonwealth of Puerto Rico" (Docket #8765). It was later
adopted and filed, essentially *verbatim* by creditor Sucesión Pastor Mandry
Mercado, as its own objection (Docket #12701) to Debtor's Second Joint Plan of
Adjustment (Docket #11946).  It in turn was later joined by creditor Vicente
Pérez Acevedo and Corporación Marcaribe Investment(Docket #16668).

1

#20351) in this proceedings against the Commonwealth of Puerto Rico

( the "Debtor" or the "Commonwealth") on account of a claim for just

compensation under the Takings Clause of the Constitution, which

originated in eminent domain proceedings brought by the Commonwealth

before the Commonwealth Court of First Instance, San Juan Part, for

the condemnation of real estate property belonging to PFZ (case

#KEF-2008-0480), which is still pending before that Court.

After obtaining a lift of the automatic stay which came into

effect after this case was filed, for the limited purpose of allowing

the Supreme Court of Puerto Rico to rule on an unsuccessful Petition

for Certiorari filed by PFZ to obtain review of a trial court

interlocutory order, PFZ, finding that to pursue the state remedies

would be ineffective, filed an Adversary Proceeding before this

Court (#18-00056, Docket #3059) to pursue its claim and other

related claims against the Commonwealth. This Adversary Proceeding

was later voluntarily dismissed by PFZ pursuant to an agreement with

Debtor to further modify the Automatic Stay, to the extent necessary

to (a) allow the prepetition eminent domain proceedings (Case No.

KEF 2008-0480 cited above) to proceed to final judgment; (b) allow

PFZ to commence an inverse condemnation claim, consistent with the

first cause of action asserted in the Adversary Action, (the "New

Action") in a separate case before the Prepetition Court; and (c) to allow the New Action to proceed to final judgment; provided, however, the Title III Stay would continue to apply in all other stages of the eminent domain proceedings and New Action, including, but not limited to, the execution and enforcement of any judgment on claims for the payment of money or other remedies against the Commonwealth or any other Title III Debtor. In light of PFZ's voluntary dismissal and the Stipulation filed by PFZ and the Debtor (Docket #15 of case #18-00056), this Court dismissed the case on July 30, 2018 (Docket #16 of the adversary case). The Commonwealth eminent domain proceedings continued thereafter, but after three years no progress has been made.

On March 2, 2020, Debtor filed an Amended Notice of a Proposed Order that, among other things, proposed to incorporate the Eminent Domain Claims into the Administrative Claims Reconciliation processes. (Docket #11968). On March 9, 2020, PFZ filed a limited objection to clarify that contrary to the tax refund claims, public employee claims and the other types of administrative claims included in the Commonwealth's Administrative Claims Reconciliation Processes, eminent domain cases are dealt with in the Commonwealth by judicial procedures exclusively.

3

The remaining provisions of the Proposed Order, by which the Commonwealth committed to pay PFZ's, and all other eminent domain claims in full, without impairment, reduction or adjustment, were acceptable to PFZ (Docket #12177). Debtor's response (Docket #12257) was to state that "In light of further informal comments received, the Debtors have determined not to reconcile the Eminent Domain Claims utilizing Administrative Claims Reconciliation".

Inexplicably, despite the Commonwealth already having acknowledged (at Docket #11968) that all eminent domain claims had to be paid in full, on May 11, 2021, Debtor filed the "Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico et al." (Docket #16741), wherein it now proposes to unconstitutionally impair, reduce and adjust such claims. PFZ objects to the Disclosure Statement and the Plan of Adjustment it proposes and describes (the Plan) because its claim for the taking of its property without just compensation is based on the Takings Clause of the Fifth Amendment[2] to the Constitution

---

[2] There has been substantial argument as to whether the Bill of Rights of the Constitution of the United States applies to the Commonwealth directly or through the Fourteenth Amendment. The Supreme Court has stated that "Puerto Rico is subject to the Due Process Clause of either the Fifth or the Fourteenth Amendment" *Posadas de Puerto Rico Assoc. vs. Tourism Co. of Puerto Rico,* 478 US 328, 331 n.1 (1986). And in *Torres vs. Puerto Rico*, 442 US 465 (1979), Justice Brennan's concurrent opinion states that "whatever the validity of [the Insular Cases when] ...they were decided, these cases are clearly not authority for

4

of the United States (and Section 9 of Article II of the Commonwealth's Constitution).

Under the Plan, the Debtor proposes to treat PFZ's claim as a general unsecured claim, and as such, it would be substantially impaired, because it would be compensated with an estimated 1.8%of the amount of the claim. PFZ, however, is constitutionally entitled to just compensation for its claim without impairment, reduction or adjustment on account of the Debtor's adjustment of its debts under PROMESA and the Bankruptcy Code provisions incorporated in PROMESA.

### Background and Description of PFZ's Claims

PFZ owned beachfront land (hereinafter, the Property) comprising approximately 1,345.83 cuerdas (each cuerda being equivalent to 0.97 acres) located in the Municipality of Loíza,

---

questioning the application of the Fourteenth Amendment, or any other provision of the Bill of Rights to the Commonwealth of Puerto Rico", ***Torres***, 442 US at 475-476. In its most recent decision applying a provision of the Bill of Rights to a citizen in Puerto Rico, ***Commonwealth of Puerto Rico vs. Sánchez Valle***, 136 S. Ct. 1863 (2016), the Court did not discuss this issue because both parties had accepted that the Double Jeopardy Clause applied to the Commonwealth. The federal Government, however, in its brief as ***amicus curiae***, at page 10, n. 1, asserted that "...the Double Jeopardy Clause could not apply to Puerto Rico through the Due Process Clause of the Fourteenth Amendment, because the Fourteenth Amendment applies only to 'state[s]'. The Double Jeopardy Clause thus must apply to Puerto Rico based on its status as a territory belonging to the United States". There seems to be no question, in any case, that the fundamental guaranties of the Bill of Rights apply to all American citizens in Puerto Rico.

only minutes away from San Juan, which it held for tourism-related development. As of October 31, 2006, PFZ had a project for tourism-related development pending before the Planning Board of the Commonwealth, comprising a parcel of the Property. The project conformed to the then existing zoning regulations and the Puerto Rico Environmental Quality Board had approved the required Final Environmental Impact Statement.

Late in 2006 Aníbal Acevedo-Vilá, then the Governor of the Commonwealth, while being aware that a project to develop a parcel of the Property was pending before the Puerto Rico Planning Board, approached an officer of PFZ at a reception held in his official residence, and informed him that the Secretary of the Department of Natural Resources would contact PFZ to discuss the acquisition of the Property by the Commonwealth. It became clear to PFZ from its conversations with the Governor and the Secretary that if a sale could not be negotiated the Property would be expropriated. On March 6, 2007, PFZ and the Debtor executed a contract whereby the Property would be acquired by the Department of Natural Resources, the purchase price to be determined on the basis of an appraisal by a professional appraiser selected and paid by the Department with PFZ's approval. On August 13 of 2008, to prevent

litigation between Debtor and PFZ, initiated by PFZ on account of Debtor's breach of the acquisition contract, from coming to trial before this Court, the Debtor exercised its sovereign right to condemn the Property by filing the above-described eminent domain proceedings. Acting under the Commonwealth's quick-take statute, the Debtor took the title to and the possession of the Property upon the filing of the proceedings.     PFZ     contested     the estimate of just compensation supporting the taking, $4,911,000.00, and also challenged the underlying appraisal relied upon by the Debtor on several grounds, including that the appraisal was based on a parcel of only 62 cuerdas out of the 1,345.83 cuerdas comprising the Property. Shortly before the condemnation pretrial conference was held in April 10 of 2012, the Debtor had the entire property reappraised by a different appraiser of Debtor's own choosing, who concluded that the Property was worth $32,561,003.00 at the time of the taking. PFZ's own appraiser had estimated a much higher value for the Property, to wit, $75,550,000.00 at the time of the taking. On April 17, 2012, the Debtor filed a motion for voluntary dismissal of the expropriation proceedings and PFZ opposed it on the grounds that the Constitution did not permit an expropriation proceeding to be unilaterally dismissed by the

7

Government after the condemning authority has taken title to or possession of the condemned property under a quick-take statute.

On November 30, 2015, while this question was being litigated, the Debtor approved a new Land Use Plan which classified the Property as a natural reserve (**"Suelo Rústico Especialmente Protegido-Ecológico"**, or "rustic land especially protected for ecological reasons"), a classification that would prevent PFZ from developing the Property or dedicating it to any economically productive or beneficial use whatsoever. The preceding Land Use Plan had divided the Property in several parcels, each of which was susceptible of some kind of economic development, including development of a tourism-related project in a 62-acre parcel, like the one pending approval at the time of the taking.

The Commonwealth trial court, after three years, finally granted Debtor's motion for voluntary dismissal on December 16, 2015. PFZ appealed, but the Commonwealth Court of Appeals agreed with the Trial Court and the Commonwealth Supreme Court denied certiorari to review its decision. By that time PROMESA had been enacted, the Oversight Board had filed these Title III proceedings and PFZ's claim for just compensation before the Commonwealth courts had been stayed. At that time the Debtor still held, and

8

even now still holds, title to and the possession of the Property.

On May 14, 2018 PFZ commenced Adversary Proceeding No.18-0056 (inaccurately described in page 237 (Docket #16741, page 249) of Debtor's Disclosure Statement) before this Court, stating three causes of action under the Fifth Amendment to the Constitution and Section 9 of Article II of the Commonwealth Constitution: one for inverse condemnation under the Takings Clause, another for violations of substantive due process under the Due Process clause; and still another for just compensation for the temporary taking of the title to and the possession of the property (which Debtor still holds). At the request of the parties pursuant to a Stipulation executed on July 27, 2018, this Court dismissed the Adversary Proceeding[3] without prejudice and the automatic stay was lifted to allow PFZ to pursue its claim for just compensation before the Commonwealth courts, under the Takings Clause and Section 9 of Article II of the Commonwealth Constitution, where it is still pending resolution before the San Juan Court of First Instance. PFZ claims that it is entitled to an award of $75,500,000.00.

---

[3] See docket #16 of the Adversary Proceeding.

**Argument**

On May 11th, 2021, the Debtor presented the Disclosure Statement and Plan to adjust and modify its obligations to creditors whose claims are subject to impairment and reduction. The Plan does not provide adequately for full payment to PFZ of its claim when liquidated.

Instead, PFZ's claim, and all other eminent domain claims without a final order as described in Class 51, seems to be included in Class 55, encompassing all sorts of generally unsecured claims, to whom the Debtor proposes to pay not more than 1.8% of the liquidated amount of each claim, and would thus be substantially impaired. But contrary to Debtor's proposal, PFZ's claim is not subject to impairment or reduction because it is a constitutional claim for the taking of property without just compensation, and therefore may not be affected by the power of Congress to regulate bankruptcy, under which Congress authorized the adjustment of Debtor's obligations[4].

---

[4]See *Disclosure Statement,* at pages 13-14: "[...] Titles III and VI of PROMESA provide for debt restructurings, similar to bankruptcy cases, for Puerto Rico and its instrumentalities."  It does so by "incorporating many provisions of Title 11 of the United States Code (the 'Bankruptcy Code') into Title III of

10

**a.**

Supreme Court decisions going back to ***Louisville Joint Stock Land Bank vs. Radford***, 295 U.S. 555 (1935), decided almost a century ago at the time of a national emergency created by the economic crisis of the Great Depression, make clear the rule that Congress may not pass laws under its bankruptcy powers that would effect a taking of private property without just compensation. In ***U.S. vs. Security Industrial Bank***, 459 US 70 (1982), the Court, citing ***Radford,*** summarized that rule:

> The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation. [Citation to ***Radford*** omitted.] Thus, however "rational" the exercise of the bankruptcy power may be, that inquiry is quite separate from the question whether the enactment takes property within the prohibition of the Fifth Amendment.

459 US at 75.

In ***Radford***, the Frazier-Lemke Act, which added Section 75 to the Bankruptcy Act, had been challenged as unconstitutional insofar as it prevented banks from exercising rights over foreclosed properties that they enjoyed before the challenged provisions of

---

PROMESA, which provides for restructurings similar to those under chapters 9 and 11 of the Bankruptcy Code [...]".

the Act were passed. After announcing that "[t]he bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment"[5], 295 US at 589, and facing the question whether Frazier-Lemke as applied "has taken from the [petitioner] bank without just compensation, and given to [respondent] Radford, rights in specific [foreclosed] property which are of substantial value", 295 US at 601, the Court decided that:

> [...] we must hold [the Act] void; for the Fifth Amendment commands that, however great the nation's need, private property shall not be thus taken for a wholly public use without just compensation. If the public interest requires and permits the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public.

295 U.S. at 602.

Thus, although Congress may authorize the Debtor to impair

---

[5] Thus, if indeed, as stated before, "[t]he bankruptcy power, *like the other great substantive powers of Congress*, is subject to the Fifth Amendment", *Radford,* 295 US at 589 (emphasis ours); and the power of Congress to legislate for the territories under Article IV, Section 4, under which PROMESA was approved, is also a substantive power of Congress, it is self-evident that Congress may not legislate under the Territorial Clause in a manner inconsistent with the Fifth Amendment, either.

12

contractual claims under its bankruptcy powers, it may not authorize the taking of private property without just compensation in violation of the Fifth Amendment. See ***U.S. vs. Security Industrial Bank***, 459 US at 80.

After ***Radford***[6], other constitutional challenges to legislation approved under the bankruptcy power, as contrary to the Takings Clause, have reached the Supreme Court. The Court has in each case reaffirmed the teachings of ***Radford***, although it has avoided declaring the statutes unconstitutional by interpreting them in a way that reaching the constitutional question became unnecessary.

***Blanchette vs. Connecticut General Insurance Corp.***, 419 U.S. 102 (1974), involved several consolidated challenges to the Regional Rail Reorganization Act of 1973, enacted to supplement Section 77 of the Bankruptcy Act. The statute required several railroads in reorganization to transfer their assets to Conrail, a newly created private corporation, in exchange for securities to be issued by the new corporation and federally guaranteed obligations to be issued by the United States Railway Association,

---

[6] Shortly after ***Radford***, Congress amended the Frazier-Lemke Act to conform it to the Court's decision. In ***Wright vs. Vinton Branch of Mountain Trust Bank,*** 300 US 440 (1937), the Court found the Act as amended was constitutional.

13

a government corporation. Because the value of these securities could not be ascertained, at the time of the reorganization, to be equivalent to that of the railroad assets transferred to Conrail, it was claimed by some creditors that any deficiency would amount to a taking under the Fifth Amendment.

The Court concluded that "any deficiency of constitutional magnitude in the compensation provided under the [Rail Reorganization] Act will indeed be a taking of private property for public use", 419 US at 155, but it declined to hold the statute unconstitutional because it reasoned that the Rail Act was not meant by Congress to preclude an action under the Tucker Act for a cash award "to cover any constitutional shortfall" in the compensation required by the Takings Clause. *Id.*

*U.S. vs. Security Industrial Bank*, supra, involved several consolidated challenges to Section 522(f)(2) of the Bankruptcy Reform Act of 1978, 11 U.S.C. 522(f)(2), which allowed debtors to avoid nonpossessory, nonpurchase-money liens on household furnishings and appliances. Creditors who had loaned the debtors money and had perfected nonpossessory, nonpurchase-money liens on their household furnishings and appliances prior to the enactment of the statute claimed that it operated a taking of property, to

wit, their liens, without just compensation under the Takings
Clause. The Court, after reaffirming *Radford* and other decisions*,*
recognized that "there is substantial doubt whether the retroactive
destruction of the [creditor's] liens in this case comports with
the Fifth Amendment", but turned to consider "whether, as a matter
of statutory construction, [Sec.] 522(f)(2) must necessarily be
applied in that manner [...] because of the cardinal principle that
this Court will first ascertain whether a construction of the
statute is fairly possible by which the constitutional question may
be avoided." 459 U.S. at 78 (citations omitted). Facing this
question, the Court then interpreted the statute and decided that
it had not been the intention of Congress to retroactively "apply
[Sec.] 522(f)(2) to property rights established before the
enactment date ..." 459 U.S. at 82 (footnote omitted). Thus, it
"decline[d] to construe the Act in a manner that could in turn call
upon the Court to resolve difficult and sensitive questions arising
out of the guarantees of the Takings Clause." *Id.* (citations
omitted).

### b.

The rule set down by the Supreme Court in *Radford,* supra, and
other decisions discussed above, namely that Congress under its

15

bankruptcy power may not pass laws that would effect a taking without just compensation in violation of the Takings Clause, has been applied in a context identical to the one at bar. In *In re: City of Detroit, Debtor*, before the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, Case No. 13-53846, several creditors (hereinafter, the Takings Clause creditors), relying on the above-cited decisions, specifically claimed that the Plan of Adjustment presented by the City of Detroit in Chapter 9 Bankruptcy proceedings was unconstitutional insofar as it treated their claims for takings of property without just compensation, under the Takings Clause, as general unsecured claims which were to be impaired under the plan. In its *Supplemental Opinion Regarding Plan Confirmation, Approving Settlements and Approving Exit Financing* entered on December 31, 2014, docket #9883, (Steven W. Rhodes, judge) the Court agreed. After discussing *Radford* and *Blanchette*, and also citing *U.S. vs. Security Industrial Bank*, supra, it acknowledged, at page 199, that both "*Blanchette* and *Radford* establish that bankruptcy proceedings are subject to the Fifth Amendment's prohibition on public takings of private property without just compensation." Furthermore, rejecting the City's assertion that in the Supreme Court cases it was the

16

statute itself that effected the taking, not the plan of adjustment, the Bankruptcy Court insisted, at page 200 that " [] all that matters under the Fifth Amendment is that the owner of private property must be justly compensated if that property was taken for public use, whenever and however that taking occurred", and the City's plan, "[i]f confirmed, [] would deny that just compensation. The plan would allow the City to impair the property owners' constitutional claim for just compensation after the City took their private property. That violates the Fifth Amendment." [7]

The Court in *City of Detroit*, however, did not declare the Bankruptcy Code unconstitutional. Although it stated that the statute, if interpreted to allow impairment of the Takings Clause

---

[7] In *In re City of Stockton*, 909 F.3d 1256 (2018), the Court of Appeals for the Ninth Circuit, over a strong dissent by Judge Friedland, let stand a plan of adjustment that had been challenged because it impaired a claim for just compensation under the Fifth Amendment. The Bankruptcy Court had rejected the challenge and the creditor succeeded in having his appeal heard directly by the Court of Appeals. He did not, however, seek a stay of plan confirmation before the Bankruptcy Court or the Court of Appeals and the plan was confirmed and became effective and was implemented while the appeal was pending. Because the plan had long been consummated the Court of Appeals dismissed the appeal, invoking the doctrine of equitable mootness. *City of Stockton* at 1266. Nevertheless, it went on to discuss the merits of the appeal and ultimately concluded, in what is quite clearly an advisory opinion founded on *obiter dicta,* that the creditor's claim could be adjusted. Judge Friedland, in his well-reasoned dissent, rejected the majority's views basing his opinion on the Takings Clause, the Supreme Court's decisions in *Radford, Blanchette and Security Industrial Bank,* and the Bankruptcy Court's decision in *City of Detroit. City of Stockton* at 1271-1273 and n.7.

17

creditors' claims, would be contrary to the Fifth Amendment, the
Court decided to use its discretion under Section 944(c)(1) of the
Bankruptcy Code, 11 USC 944(c)(1), to order the nondischargeability
of the Takings Clause creditors' claims in the confirmation order.
The Court stated, at page 201, that "[t]his result harmonizes
chapter 9 with the Fifth Amendment while giving full effect to the
principle that the Court should avoid interpreting chapter 9 in
such a way that renders it unconstitutional."

**c.**

The instant case involves a constitutional claim identical to
the one considered and decided by the Bankruptcy Court in the
opinion in ***City of Detroit*** cited above, following the doctrine set
out by the Supreme Court in ***Radford, Security Industrial Bank*** and
***Blanchette***: As happened to the Takings Clause creditors in Detroit,
PFZ's property was taken for public purposes and uses either under
an eminent domain statute or by regulatory action. Thereafter, the
Commonwealth filed for reorganization and adjustment of debts under
provisions of the Bankruptcy Code, made applicable to the
Commonwealth by Section 301 of PROMESA, as did the City of Detroit
under Chapter 9 of the Code. The Commonwealth treated PFZ's claim
as an unsecured general claim, to be substantially impaired under

18

the Plan, as did the City of Detroit with reference to the Takings Clause creditors' claims. In both cases the creditors objected to such a plan of adjustment because, if approved, it would violate the Takings Clause of the Fifth Amendment.

PRAYER

Therefore, PFZ prays that its objection to Debtor's Plan be granted by this Court, because the provisions of the Bankruptcy Code on which the Plan relies for the treatment of PFZ's claim are unconstitutional, as applied to that claim, insofar as they are contrary to the Takings Clause of the Fifth Amendment.

**RESPECTFULLY SUBMITTED.**

19

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing memorandum with the Clerk of the Court using the EM/ECF system, which will send a notification to all attorneys of record.

In San Juan, Puerto Rico, this 14th day of June 2021.

/s/ DAVID CARRION BARALT
USDC PR 207214
Attorney for PFZ Properties
P.O. Box 364463
San Juan, P.R. 00936-4463
Tel. (787) 758-5050
E-mail: davidcarrionb@aol.com

/s/ RUSSELL A. DEL TORO SOSA
USDC PR 121302
Attorney for PFZ Properties
Cond. Condado Princess
#2 Calle Washington 304
San Juan, Puerto Rico 00907
Telephone (787) 529-6502
E-mail: rdeltoro@dtslaw.com
russell.deltoro.sosa@gmail.com

/s/ JOSE ÁNGEL REY
USDC PR 118103
Attorney for PFZ Properties
P.O. Box 10127
San Juan, P.R. 00908-1127
Tel. (787) 396-2600
E-mail: joseangelrey46@gmail.com