# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>     as representative of<br><br>The Commonwealth of Puerto Rico, *et al.*,<br><br>           Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |

## LIMITED OBJECTION OF U.S. BANK NATIONAL ASSOCIATION AS PREPA BOND TRUSTEE TO APPROVAL OF DEBTORS' AMENDED DISCLOSURE STATEMENT

U.S. Bank National Association, solely in its capacity as PREPA Bond Trustee (the

"**PREPA Bond Trustee**"), files this Limited Objection ("**Limited Objection**") to the adequacy

of information contained in the *Disclosure Statement for the Third Amended Title III Joint Plan of*

*Adjustment of the Commonwealth of Puerto Rico*, *Et Al.* (the "**Disclosure Statement**") [Dkt No.

16741]. The PREPA Bond Trustee seeks in this objection to require the Financial Oversight and

Management Board for Puerto Rico (the "**Oversight Board**") as the plan proponent to adequately

disclose the extent to which the rights and claims of the PREPA Bond Trustee and the holders of

PREPA Bonds will be affected, limited, or impaired by the Third Amended Title III Joint Plan of

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801); and (vi) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Adjustment of the Commonwealth of Puerto Rico, Et Al. (the "**Commonwealth Plan**") [Dkt. No. 16740] in advance of any plan of debt adjustment for PREPA in its separate Title III Case.

The PREPA Bond Trustee hopes and expects that a consensual plan will be filed in the PREPA Title III Case, but has no control over whether or when that may occur relative to the confirmation and effective date of the proposed Commonwealth Plan. Thus, the PREPA Bond Trustee is constrained to file this Limited Objection seeking clarification about the extent to which the Commonwealth Plan may affect rights and claims arising from or related to the PREPA Bonds. The Disclosure Statement, as currently drafted, is inadequate because the Commonwealth Plan contains vague and expansive releases, exculpations, and injunctions that potentially encroach upon the PREPA Bond claims and blur the boundary between the separate Commonwealth and PREPA Title III cases.

The PREPA Bond Trustee has informally requested that the Oversight Board narrow the proposed releases in the Commonwealth Plan to explicitly exclude claims arising from or related to the PREPA Bonds in a manner consistent with the narrower releases that the "Government Releasees" are receiving from the "PSA Parties" for bond issuances that are not being directly addressed in the Commonwealth Plan including the PREPA Bonds (as such terms are defined in the Commonwealth Plan). In the absence of such an exclusion for the benefit of all PREPA Bondholders and the PREPA Bond Trustee, the Disclosure Statement must be amended to clarify the extent to which PREPA Bond claims are being impaired by the Commonwealth Plan.

In support of this Limited Objection, the PREPA Bond Trustee states as follows:

1.      U.S. Bank National Association serves as the PREPA Bond Trustee under that certain Trust Agreement dated as of January 1, 1974 (as amended, supplemented, or otherwise modified from time to time, the "**Trust Agreement**") by and between itself as trustee and the

Puerto Rico Electric Power Authority ("**PREPA**") as issuer, pursuant to which Puerto Rico Electric Power Authority Power Revenue and Power Revenue Refunding Bonds have been issued and are outstanding (collectively, the "**PREPA Bonds**," and holders thereof, the "**PREPA Bondholders**") in the aggregate principal amount of approximately $8.26 billion. The rights and duties of the PREPA Bond Trustee are set forth in the Trust Agreement.

2.       The indebtedness evidenced by the PREPA Bonds is secured by, among other things, a pledge of PREPA's present and future revenues as set forth in the Trust Agreement.  This pledge constitutes a continuing pledge of PREPA's post-petition special revenues within the meaning of 11 U.S.C. § 928 made applicable to the Title III proceedings by Section 301 of the Puerto Rico Oversight, Management and Economic Stability Act ("**PROMESA**").

3.       The Oversight Board and AAFAF (together, the "**Government Parties**") have entered into a Definitive Debt Restructuring Agreement with the holders or insurers of approximately 94% of the PREPA Bonds (the "**PREPA RSA**").  The PREPA Bond Trustee is not a party to the PREPA RSA, but it has been directed, subject to certain conditions, to support the related motion to approve certain aspects of the PREPA RSA, which was filed by the Government Parties in the PREPA Title III case (the "**9019 Motion**").  Since the execution of the PREPA RSA, the Government Parties and the PREPA Bond Trustee have stayed, or otherwise avoided, litigation concerning the PREPA Bonds in the PREPA Title III Case. *See Joint Motion of Oversight Board and AAFAF to Stay Adversary Proceeding,* 19-00391-LTS [Dkt. No. 2].

4.       In light of the PREPA RSA and the pending 9019 Motion, the PREPA Bond Trustee has presumed that the Oversight Board does not intend the Commonwealth Plan to treat or negatively impact any claims based upon the PREPA Bonds.  Indeed, the Commonwealth Plan does not define or classify the PREPA Bonds, and does not explicitly purport to treat claims related

to them.  Likewise, the Solicitation Motion,[2] filed May 13, 2021, does not seek to solicit beneficial holders of the PREPA Bonds through the ATOP system at DTC.

5.       As described below, however, the Commonwealth Plan includes vague and expansive releases, injunctions, and exculpations that could be construed to impact claims relating to the PREPA Bonds. Neither the Commonwealth Plan nor the Disclosure Statement explain the scope of these provisions, leaving the PREPA Bond Trustee and the PREPA Bondholders to guess as to whether and the extent to which their rights will be affected, limited, or impaired by the confirmation of the Commonwealth Plan.

6.       Section 1125(b) of the Bankruptcy Code, as incorporated into this Title III case by PROMESA § 301(a), conditions the Debtors' solicitation of votes on the proposed Commonwealth Plan on the Court's determination that the Disclosure Statement contains "adequate information." The Disclosure Statement must provide enough information to enable the Debtors' creditors and this Court to make an informed judgment about the Commonwealth Plan. *See Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court." (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988))); *see also In re Crowthers McCall Patterns, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990) ("At the 'heart' of the chapter 11 process is the requirement that holders of claims . . . be furnished a proper disclosure statement that would enable a hypothetical reasonable investor . . . to make an informed judgment

---

[2] Amended Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for An Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VII) Approving Vote Tabulation Procedures (the "Solicitation Motion") [Dkt. No. 16756].

about the plan." (citation and quotation omitted)).  Precisely what constitutes adequate information in any particular instance is determined on a case-by-case basis.  *Kirk v. Texaco, Inc.*, 82 B.R. 678, 682 (S.D.N.Y. 1988); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. S.D.N.Y. 1988).

7.      The Disclosure Statement fails to satisfy this standard because it does not provide adequate information concerning the scope and breadth of the releases, injunctions, and exculpations contained in Article 88 of the Commonwealth Plan as they relate to PREPA and the PREPA Bonds. The vague language contained in these provisions prevents a reasonable PREPA Bondholder from ascertaining whether its rights under the Trust Agreement with PREPA and related rights under applicable law are being released or impaired—and, if so, to what extent.

8.      For example, the following creditor release in Section 88.2(a) of the Commonwealth Plan uses language that could be construed to release an expansive and ill-defined set of pre-petition claims against PREPA:

> Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in **complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Released Parties that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever**, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action.

(Commonwealth Plan § 88.2(a) (emphasis added).)

9.      To understand the breadth of Section 88.2(a)'s release, one must unpack several layers of definitions underlying the term "Released Parties." The Commonwealth Plan defines this term to include "the Government Parties," which in turn includes the Commonwealth and all of its "Related Persons."  (Commonwealth Plan § 1.371.)  The term "Related Persons" means, among

other things, the Commonwealth's "current and former Affiliates." (Commonwealth Plan § 1.369.) The term "Affiliate," in turn, means "[w]ith respect to any specified Entity, any other Entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such Entity." (Commonwealth Plan § 1.54.)  Finally, the term "Entity" is defined as "[a] Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the office of the United States Trustee, or any other entity." (Commonwealth Plan § 1.193.)

10.     Based on these interwoven definitions, PREPA arguably falls within the scope of the term "Released Parties." Someone could argue later that PREPA is an Entity "controlled" at least to some extent by the Commonwealth, and as a result qualifies as an Affiliate of the Commonwealth. They might also argue that as an Affiliate of the Commonwealth, PREPA is one of the Commonwealth's Related Persons.  And finally, if it is one of the Commonwealth's Related Persons, PREPA might then further qualify as one of the the Released Parties covered by Section 88.2(a).

11.     If PREPA is included as a Released Party, then Section 88.2(a) might be construed to call for the discharge and release of all "Claims" and "Causes of Action" against PREPA to the extent they "arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors *or any of their respective Assets, property, or interests of any nature whatsoever*." (Commonwealth Plan §88.2(a) (emphasis added)). The phrase "interests of any nature whatsoever" is so vague and ill-defined that someone could argue encompasses the PREPA Bonds issued with the consent and support of the Commonwealth. PREPA Bondholders

are thus faced with the absurd worry that their Claims[3] and Causes of Action[4] against PREPA
might be released by Section 88.2(a) of the Commonwealth Plan even though PREPA is a debtor
in a separate Title III Case and the plan relating to their claims in the PREPA Title III case has yet
to be proposed.

12.     This same issue arises in the injunction provision set forth in Section 88.3, which
is tied to Section 88.2(a)'s release. If PREPA is a Released Party, then Section 88.3 can be
construed to permanently enjoin the PREPA Bond Trustee and the PREPA Bondholders[5] from
pursuing their claims against PREPA:

> Except as otherwise expressly provided in the Plan, the Confirmation Order or such
> other Final Order of the Title III Court that may be applicable, ***all Entities who
> have held, hold or may hold Claims or any other debt or liability that is
> discharged or released pursuant to Section 88.2*** hereof or who have held, hold or
> may hold Claims or any other debt or liability that is discharged or released
> pursuant to Section 88.2 hereof ***are permanently enjoined***, from and after the
> Effective Date, from (a) commencing or continuing, directly or indirectly, in any
> manner, any action or other proceeding (including, without limitation, any judicial,
> arbitral, administrative or other proceeding) of any kind on any such Claim or other
> debt or liability that is discharged pursuant to the Plan ***against any of the Released
> Parties or any of their respective assets or property***, (b) the enforcement,

---

[3] Commonwealth Plan § 1.112 ("Claim: Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, Causes of Action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.").

[4] Commonwealth Plan § 1.104 ("Causes of Action: All claims, actions, causes of action, rights to payment, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims (including, but not limited to, all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, subordination, and all Avoidance Actions) that are pending or may be asserted against any Entity whether arising on or before the Effective Date, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertible directly or derivatively, in law, equity or otherwise and whether asserted or unasserted as of the Effective Date.").

[5] Equally concerning and unascertainable is the uncertainty about who else may claim to be a Related Person to a Released Person who might argue that that PREPA Bondholders have released them in advance of PREPA's Title III plan.

attachment, collection or recovery by any manner or means of any judgment, award, decree or order *against any of the Released Parties or any of their respective assets or property* on account of any Claim or other debt or liability that is discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind *against any of the Released Parties or any of their respective assets or property* on account of any Claim or other debt or liability that is discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due *from any of the Released Parties or any of their respective assets or property*, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan.

(Commonwealth Plan § 88.3 (emphasis added).)

13.     The lack of clarity for PREPA releases runs in the other direction, too. If PREPA were construed to be a Related Party to the Commonwealth (for the reasons set forth above), then PREPA could also be construed as one of the parties granting the expansive Debtor releases contained in Section 88.5 of the Commonwealth Plan. Section 88.5 provides:

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, and for good and valuable consideration, each of the Debtors and Reorganized Debtors, the Disbursing Agent and *each of the Debtors' and Reorganized Debtors' Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties* from any and all Claims or Causes of Action that the Debtors, Reorganized Debtors, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims or otherwise are based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event or other circumstance relating to the Title III Cases, the Debtors taking place or existing on or prior to the Effective Date, and/or any Claim, act, fact, transaction, occurrence.

(Commonwealth Plan § 88.5 (emphasis added).)

14.     Section 88.5's release potentially covers PREPA's claims against the Commonwealth, as well as any other party falling within the vague scope of the term "Released Parties"—and, thus, has potentially significant ramifications on the value of PREPA's assets and pledged revenues. PREPA should not be giving a debtor plan release like the one in Section 88.5

to anyone until its Title III Plan is confirmed and goes effective, and the Commonwealth Plan should be clarified so as to avoid any intended or unintended crossover releases if the Oversight Board wishes to proceed with the Commonwealth Plan first.

15.     To address its concerns, the PREPA Bond Trustee has suggested that the Oversight Board add the following language to the Commonwealth Plan:

> For the avoidance of doubt, nothing in the Plan or Confirmation Order shall release, discharge or enjoin any Claims or Causes of Actions arising from or related to the PREPA Bonds, including any monoline insurance pertaining thereto and PREPA is not releasing any Claims or Causes of Action against any Entity. Claims and Causes of Action arising from or related to the PREPA Bonds, and releases by and against PREPA and its Assets shall be addressed in PREPA's Title III case, including in any plan of debt adjustment that may be filed therein.

16.     If the Oversight Board intends for anyone, including the Commonwealth itself, to receive a release of Claims and Causes of Action related to the PREPA Bonds, then the Disclosure Statement should include appropriate disclosures so that PREPA Bondholders can evaluate the Commonwealth Plan in the absence of certainty regarding the outcome of PREPA's Title III case.

17.     The PREPA Bond Trustee will seek to consensually resolve the above-described problems in advance of the hearing on the adequacy of the Disclosure Statement.

18.     The above objections are limited to the adequacy of information in the Disclosure Statement and all rights and remedies with respect to the Commonwealth Plan are expressly reserved.

**WHEREFORE**, the PREPA Bond Trustee respectfully requests that the Court require the clarification and limitations to the scope of releases affecting the PREPA Bonds as described herein as a condition to its approval of adequacy or the information in the Disclosure Statement.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 15th day of June, 2021.

**WE HEREBY CERTIFY** that on this same date a true and exact copy of this motion was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of

record. Also, a copy of this document will be: (i) served via electronic mail or U.S. mail to all case participants; (ii) filed with the United States District Court, Clerk's Office, 150 Ave. Carlos Chardon Ste. 150, San Juan, P.R. 00918-1767; and (iii) served upon the Office of the United States Trustee, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, P.R. 00901, and a further Certificate of Service will be filed with the Court.

Respectfully submitted,                     Respectfully submitted,

**RIVERA, TULLA AND FERRER, LLC**           **MASLON LLP**

                                            By: /s Clark T. Whitmore
/s Eric A. Tulla                                Clark T. Whitmore (admitted *pro hac vice*)
Eric A. Tulla                                   John Duffey (admitted *pro hac vice*)
USDC-DPR No. 118313
Email: etulla@ riveratulla.com              90 South Seventh Street, Suite 3300
                                            Minneapolis, MN 55402
/s Iris J. Cabrera-Gómez                    Telephone: 612-672-8200
Iris J. Cabrera-Gómez                       Facsimile: 612-672-8397
USDC-DPR No. 221101                         E-Mail:   clark.whitmore@maslon.com
Email: icabrera@riveratulla.com                       john.duffey@maslon.com

Rivera Tulla & Ferrer Building              **ATTORNEYS FOR U.S. BANK NATIONAL**
50 Quisqueya Street                         **ASSOCIATION, IN ITS CAPACITY AS**
San Juan, PR 00917-1212                     **TRUSTEE**
Tel: (787)753-0438
Fax: (787)767-5784 (787)766-0409

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>      as representative of<br><br>The Commonwealth of Puerto Rico, *et al.*,<br><br>      Debtors.[1] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS |

## LIMITED OBJECTION OF U.S. BANK NATIONAL ASSOCIATION AS PREPA BOND TRUSTEE TO APPROVAL OF DEBTORS' AMENDED DISCLOSURE STATEMENT

U.S. Bank National Association, solely in its capacity as PREPA Bond Trustee (the

"**PREPA Bond Trustee**"), files this Limited Objection ("**Limited Objection**") to the adequacy

of information contained in the *Disclosure Statement for the Third Amended Title III Joint Plan of*

*Adjustment of the Commonwealth of Puerto Rico*, *Et Al.* (the "**Disclosure Statement**") [Dkt No.

16741]. The PREPA Bond Trustee seeks in this objection to require the Financial Oversight and

Management Board for Puerto Rico (the "**Oversight Board**") as the plan proponent to adequately

disclose the extent to which the rights and claims of the PREPA Bond Trustee and the holders of

PREPA Bonds will be affected, limited, or impaired by the Third Amended Title III Joint Plan of

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801); and (vi) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Adjustment of the Commonwealth of Puerto Rico, Et Al. (the "**Commonwealth Plan**") [Dkt. No. 16740] in advance of any plan of debt adjustment for PREPA in its separate Title III Case.

The PREPA Bond Trustee hopes and expects that a consensual plan will be filed in the PREPA Title III Case, but has no control over whether or when that may occur relative to the confirmation and effective date of the proposed Commonwealth Plan. Thus, the PREPA Bond Trustee is constrained to file this Limited Objection seeking clarification about the extent to which the Commonwealth Plan may affect rights and claims arising from or related to the PREPA Bonds. The Disclosure Statement, as currently drafted, is inadequate because the Commonwealth Plan contains vague and expansive releases, exculpations, and injunctions that potentially encroach upon the PREPA Bond claims and blur the boundary between the separate Commonwealth and PREPA Title III cases.

The PREPA Bond Trustee has informally requested that the Oversight Board narrow the proposed releases in the Commonwealth Plan to explicitly exclude claims arising from or related to the PREPA Bonds in a manner consistent with the narrower releases that the "Government Releasees" are receiving from the "PSA Parties" for bond issuances that are not being directly addressed in the Commonwealth Plan including the PREPA Bonds (as such terms are defined in the Commonwealth Plan). In the absence of such an exclusion for the benefit of all PREPA Bondholders and the PREPA Bond Trustee, the Disclosure Statement must be amended to clarify the extent to which PREPA Bond claims are being impaired by the Commonwealth Plan.

In support of this Limited Objection, the PREPA Bond Trustee states as follows:

1.      U.S. Bank National Association serves as the PREPA Bond Trustee under that certain Trust Agreement dated as of January 1, 1974 (as amended, supplemented, or otherwise modified from time to time, the "**Trust Agreement**") by and between itself as trustee and the

Puerto Rico Electric Power Authority ("**PREPA**") as issuer, pursuant to which Puerto Rico Electric Power Authority Power Revenue and Power Revenue Refunding Bonds have been issued and are outstanding (collectively, the "**PREPA Bonds**," and holders thereof, the "**PREPA Bondholders**") in the aggregate principal amount of approximately $8.26 billion. The rights and duties of the PREPA Bond Trustee are set forth in the Trust Agreement.

2.    The indebtedness evidenced by the PREPA Bonds is secured by, among other things, a pledge of PREPA's present and future revenues as set forth in the Trust Agreement.  This pledge constitutes a continuing pledge of PREPA's post-petition special revenues within the meaning of 11 U.S.C. § 928 made applicable to the Title III proceedings by Section 301 of the Puerto Rico Oversight, Management and Economic Stability Act ("**PROMESA**").

3.    The Oversight Board and AAFAF (together, the "**Government Parties**") have entered into a Definitive Debt Restructuring Agreement with the holders or insurers of approximately 94% of the PREPA Bonds (the "**PREPA RSA**").  The PREPA Bond Trustee is not a party to the PREPA RSA, but it has been directed, subject to certain conditions, to support the related motion to approve certain aspects of the PREPA RSA, which was filed by the Government Parties in the PREPA Title III case (the "**9019 Motion**").  Since the execution of the PREPA RSA, the Government Parties and the PREPA Bond Trustee have stayed, or otherwise avoided, litigation concerning the PREPA Bonds in the PREPA Title III Case. *See Joint Motion of Oversight Board and AAFAF to Stay Adversary Proceeding,* 19-00391-LTS [Dkt. No. 2].

4.    In light of the PREPA RSA and the pending 9019 Motion, the PREPA Bond Trustee has presumed that the Oversight Board does not intend the Commonwealth Plan to treat or negatively impact any claims based upon the PREPA Bonds.  Indeed, the Commonwealth Plan does not define or classify the PREPA Bonds, and does not explicitly purport to treat claims related

to them.  Likewise, the Solicitation Motion,[2] filed May 13, 2021, does not seek to solicit beneficial

holders of the PREPA Bonds through the ATOP system at DTC.

5.       As described below, however, the Commonwealth Plan includes vague and

expansive releases, injunctions, and exculpations that could be construed to impact claims relating

to the PREPA Bonds. Neither the Commonwealth Plan nor the Disclosure Statement explain the

scope of these provisions, leaving the PREPA Bond Trustee and the PREPA Bondholders to guess

as to whether and the extent to which their rights will be affected, limited, or impaired by the

confirmation of the Commonwealth Plan.

6.       Section 1125(b) of the Bankruptcy Code, as incorporated into this Title III case by

PROMESA § 301(a), conditions the Debtors' solicitation of votes on the proposed Commonwealth

Plan on the Court's determination that the Disclosure Statement contains "adequate information."

The Disclosure Statement must provide enough information to enable the Debtors' creditors and

this Court to make an informed judgment about the Commonwealth Plan. *See Kunica v. St. Jean*

*Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) ("The importance of full disclosure is underlaid by the

reliance placed upon the disclosure statement by the creditors and the court." (quoting *Oneida*

*Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988))); *see also In re*

*Crowthers McCall Patterns, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990) ("At the 'heart' of

the chapter 11 process is the requirement that holders of claims . . . be furnished a proper disclosure

statement that would enable a hypothetical reasonable investor . . . to make an informed judgment

---

[2] Amended Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for An Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VII) Approving Vote Tabulation Procedures (the "Solicitation Motion") [Dkt. No. 16756].

about the plan." (citation and quotation omitted)).  Precisely what constitutes adequate information

in any particular instance is determined on a case-by-case basis.  *Kirk v. Texaco, Inc.*, 82 B.R. 678,

682 (S.D.N.Y. 1988); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. S.D.N.Y.

1988).

7.      The Disclosure Statement fails to satisfy this standard because it does not provide

adequate information concerning the scope and breadth of the releases, injunctions, and

exculpations contained in Article 88 of the Commonwealth Plan as they relate to PREPA and the

PREPA Bonds. The vague language contained in these provisions prevents a reasonable PREPA

Bondholder from ascertaining whether its rights under the Trust Agreement with PREPA and

related rights under applicable law are being released or impaired—and, if so, to what extent.

8.      For example, the following creditor release in Section 88.2(a) of the

Commonwealth Plan uses language that could be construed to release an expansive and ill-defined

set of pre-petition claims against PREPA:

> Except as expressly provided in the Plan or the Confirmation Order, all distributions
> and rights afforded under the Plan shall be, and shall be deemed to be, in exchange
> for, and in ***complete satisfaction, settlement, discharge and release of, all Claims
> or Causes of Action against the Released Parties that arose, in whole or in part,
> prior to the Effective Date, relating to the Title III Cases, the Debtors or
> Reorganized Debtors or any of their respective Assets, property, or interests of
> any nature whatsoever***, including any interest accrued on such Claims from and
> after the Petition Date, and regardless of whether any property will have been
> distributed or retained pursuant to the Plan on account of such Claims or Causes of
> Action.

(Commonwealth Plan § 88.2(a) (emphasis added).)

9.      To understand the breadth of Section 88.2(a)'s release, one must unpack several

layers of definitions underlying the term "Released Parties." The Commonwealth Plan defines this

term to include "the Government Parties," which in turn includes the Commonwealth and all of its

"Related Persons."  (Commonwealth Plan § 1.371.)  The term "Related Persons" means, among

other things, the Commonwealth's "current and former Affiliates." (Commonwealth Plan § 1.369.)
The term "Affiliate," in turn, means "[w]ith respect to any specified Entity, any other Entity that
directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under
common control with, such Entity." (Commonwealth Plan § 1.54.)  Finally, the term "Entity" is
defined as "[a] Person, a corporation, a general partnership, a limited partnership, a limited liability
company, a limited liability partnership, an association, a joint stock company, a joint venture, an
estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof,
including, without limitation, the office of the United States Trustee, or any other entity."
(Commonwealth Plan § 1.193.)

10.     Based on these interwoven definitions, PREPA arguably falls within the scope of
the term "Released Parties." Someone could argue later that PREPA is an Entity "controlled" at
least to some extent by the Commonwealth, and as a result qualifies as an Affiliate of the
Commonwealth. They might also argue that as an Affiliate of the Commonwealth, PREPA is one
of the Commonwealth's Related Persons.  And finally, if it is one of the Commonwealth's Related
Persons, PREPA might then further qualify as one of the the Released Parties covered by Section
88.2(a).

11.     If PREPA is included as a Released Party, then Section 88.2(a) might be construed
to call for the discharge and release of all "Claims" and "Causes of Action" against PREPA to the
extent they "arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases,
the Debtors or Reorganized Debtors *or any of their respective Assets, property, or interests of any
nature whatsoever*." (Commonwealth Plan §88.2(a) (emphasis added)). The phrase "interests of
any nature whatsoever" is so vague and ill-defined that someone could argue encompasses the
PREPA Bonds issued with the consent and support of the Commonwealth. PREPA Bondholders

are thus faced with the absurd worry that their Claims[3] and Causes of Action[4] against PREPA
might be released by Section 88.2(a) of the Commonwealth Plan even though PREPA is a debtor
in a separate Title III Case and the plan relating to their claims in the PREPA Title III case has yet
to be proposed.

12.     This same issue arises in the injunction provision set forth in Section 88.3, which
is tied to Section 88.2(a)'s release. If PREPA is a Released Party, then Section 88.3 can be
construed to permanently enjoin the PREPA Bond Trustee and the PREPA Bondholders[5] from
pursuing their claims against PREPA:

> Except as otherwise expressly provided in the Plan, the Confirmation Order or such
> other Final Order of the Title III Court that may be applicable, ***all Entities who
> have held, hold or may hold Claims or any other debt or liability that is
> discharged or released pursuant to Section 88.2*** hereof or who have held, hold or
> may hold Claims or any other debt or liability that is discharged or released
> pursuant to Section 88.2 hereof ***are permanently enjoined***, from and after the
> Effective Date, from (a) commencing or continuing, directly or indirectly, in any
> manner, any action or other proceeding (including, without limitation, any judicial,
> arbitral, administrative or other proceeding) of any kind on any such Claim or other
> debt or liability that is discharged pursuant to the Plan ***against any of the Released
> Parties or any of their respective assets or property***, (b) the enforcement,

---

[3] Commonwealth Plan § 1.112 ("Claim: Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, Causes of Action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.").

[4] Commonwealth Plan § 1.104 ("Causes of Action: All claims, actions, causes of action, rights to payment, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims (including, but not limited to, all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, subordination, and all Avoidance Actions) that are pending or may be asserted against any Entity whether arising on or before the Effective Date, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertible directly or derivatively, in law, equity or otherwise and whether asserted or unasserted as of the Effective Date.").

[5] Equally concerning and unascertainable is the uncertainty about who else may claim to be a Related Person to a Released Person who might argue that that PREPA Bondholders have released them in advance of PREPA's Title III plan.

attachment, collection or recovery by any manner or means of any judgment, award, decree or order *against any of the Released Parties or any of their respective assets or property* on account of any Claim or other debt or liability that is discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind *against any of the Released Parties or any of their respective assets or property* on account of any Claim or other debt or liability that is discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due *from any of the Released Parties or any of their respective assets or property*, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan.

(Commonwealth Plan § 88.3 (emphasis added).)

13.     The lack of clarity for PREPA releases runs in the other direction, too. If PREPA were construed to be a Related Party to the Commonwealth (for the reasons set forth above), then PREPA could also be construed as one of the parties granting the expansive Debtor releases contained in Section 88.5 of the Commonwealth Plan. Section 88.5 provides:

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, and for good and valuable consideration, each of the Debtors and Reorganized Debtors, the Disbursing Agent and *each of the Debtors' and Reorganized Debtors' Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties* from any and all Claims or Causes of Action that the Debtors, Reorganized Debtors, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims or otherwise are based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event or other circumstance relating to the Title III Cases, the Debtors taking place or existing on or prior to the Effective Date, and/or any Claim, act, fact, transaction, occurrence.

(Commonwealth Plan § 88.5 (emphasis added).)

14.     Section 88.5's release potentially covers PREPA's claims against the Commonwealth, as well as any other party falling within the vague scope of the term "Released Parties"—and, thus, has potentially significant ramifications on the value of PREPA's assets and pledged revenues. PREPA should not be giving a debtor plan release like the one in Section 88.5

to anyone until its Title III Plan is confirmed and goes effective, and the Commonwealth Plan should be clarified so as to avoid any intended or unintended crossover releases if the Oversight Board wishes to proceed with the Commonwealth Plan first.

15.     To address its concerns, the PREPA Bond Trustee has suggested that the Oversight Board add the following language to the Commonwealth Plan:

> For the avoidance of doubt, nothing in the Plan or Confirmation Order shall release, discharge or enjoin any Claims or Causes of Actions arising from or related to the PREPA Bonds, including any monoline insurance pertaining thereto and PREPA is not releasing any Claims or Causes of Action against any Entity. Claims and Causes of Action arising from or related to the PREPA Bonds, and releases by and against PREPA and its Assets shall be addressed in PREPA's Title III case, including in any plan of debt adjustment that may be filed therein.

16.     If the Oversight Board intends for anyone, including the Commonwealth itself, to receive a release of Claims and Causes of Action related to the PREPA Bonds, then the Disclosure Statement should include appropriate disclosures so that PREPA Bondholders can evaluate the Commonwealth Plan in the absence of certainty regarding the outcome of PREPA's Title III case.

17.     The PREPA Bond Trustee will seek to consensually resolve the above-described problems in advance of the hearing on the adequacy of the Disclosure Statement.

18.     The above objections are limited to the adequacy of information in the Disclosure Statement and all rights and remedies with respect to the Commonwealth Plan are expressly reserved.

**WHEREFORE**, the PREPA Bond Trustee respectfully requests that the Court require the clarification and limitations to the scope of releases affecting the PREPA Bonds as described herein as a condition to its approval of adequacy or the information in the Disclosure Statement.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 15th day of June, 2021.

**WE HEREBY CERTIFY** that on this same date a true and exact copy of this motion was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of

record. Also, a copy of this document will be: (i) served via electronic mail or U.S. mail to all case participants; (ii) filed with the United States District Court, Clerk's Office, 150 Ave. Carlos Chardon Ste. 150, San Juan, P.R. 00918-1767; and (iii) served upon the Office of the United States Trustee, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, P.R. 00901, and a further Certificate of Service will be filed with the Court.

Respectfully submitted,                     Respectfully submitted,

**RIVERA, TULLA AND FERRER, LLC**           **MASLON LLP**

                                            By: /s Clark T. Whitmore
/s Eric A. Tulla                                 Clark T. Whitmore (admitted *pro hac vice*)
Eric A. Tulla                                    John Duffey (admitted *pro hac vice*)
USDC-DPR No. 118313
Email: etulla@ riveratulla.com              90 South Seventh Street, Suite 3300
                                            Minneapolis, MN 55402
/s Iris J. Cabrera-Gómez                    Telephone: 612-672-8200
Iris J. Cabrera-Gómez                       Facsimile: 612-672-8397
USDC-DPR No. 221101                         E-Mail:    clark.whitmore@maslon.com
Email: icabrera@riveratulla.com                        john.duffey@maslon.com

Rivera Tulla & Ferrer Building              **ATTORNEYS FOR U.S. BANK NATIONAL**
50 Quisqueya Street                         **ASSOCIATION, IN ITS CAPACITY AS**
San Juan, PR 00917-1212                     **TRUSTEE**
Tel: (787)753-0438
Fax: (787)767-5784 (787)766-0409

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>       as representative of<br><br>The Commonwealth of Puerto Rico, *et al.*,<br><br>       Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |

**LIMITED OBJECTION OF U.S. BANK NATIONAL ASSOCIATION
AS PREPA BOND TRUSTEE TO APPROVAL OF DEBTORS' AMENDED
DISCLOSURE STATEMENT**

U.S. Bank National Association, solely in its capacity as PREPA Bond Trustee (the "**PREPA Bond Trustee**"), files this Limited Objection ("**Limited Objection**") to the adequacy of information contained in the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico*, *Et Al.* (the "**Disclosure Statement**") [Dkt No. 16741]. The PREPA Bond Trustee seeks in this objection to require the Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**") as the plan proponent to adequately disclose the extent to which the rights and claims of the PREPA Bond Trustee and the holders of PREPA Bonds will be affected, limited, or impaired by the Third Amended Title III Joint Plan of

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801); and (vi) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Adjustment of the Commonwealth of Puerto Rico, Et Al. (the "**Commonwealth Plan**") [Dkt. No. 16740] in advance of any plan of debt adjustment for PREPA in its separate Title III Case.

The PREPA Bond Trustee hopes and expects that a consensual plan will be filed in the PREPA Title III Case, but has no control over whether or when that may occur relative to the confirmation and effective date of the proposed Commonwealth Plan. Thus, the PREPA Bond Trustee is constrained to file this Limited Objection seeking clarification about the extent to which the Commonwealth Plan may affect rights and claims arising from or related to the PREPA Bonds. The Disclosure Statement, as currently drafted, is inadequate because the Commonwealth Plan contains vague and expansive releases, exculpations, and injunctions that potentially encroach upon the PREPA Bond claims and blur the boundary between the separate Commonwealth and PREPA Title III cases.

The PREPA Bond Trustee has informally requested that the Oversight Board narrow the proposed releases in the Commonwealth Plan to explicitly exclude claims arising from or related to the PREPA Bonds in a manner consistent with the narrower releases that the "Government Releasees" are receiving from the "PSA Parties" for bond issuances that are not being directly addressed in the Commonwealth Plan including the PREPA Bonds (as such terms are defined in the Commonwealth Plan). In the absence of such an exclusion for the benefit of all PREPA Bondholders and the PREPA Bond Trustee, the Disclosure Statement must be amended to clarify the extent to which PREPA Bond claims are being impaired by the Commonwealth Plan.

In support of this Limited Objection, the PREPA Bond Trustee states as follows:

1.      U.S. Bank National Association serves as the PREPA Bond Trustee under that certain Trust Agreement dated as of January 1, 1974 (as amended, supplemented, or otherwise modified from time to time, the "**Trust Agreement**") by and between itself as trustee and the

Puerto Rico Electric Power Authority ("**PREPA**") as issuer, pursuant to which Puerto Rico Electric Power Authority Power Revenue and Power Revenue Refunding Bonds have been issued and are outstanding (collectively, the "**PREPA Bonds**," and holders thereof, the "**PREPA Bondholders**") in the aggregate principal amount of approximately $8.26 billion. The rights and duties of the PREPA Bond Trustee are set forth in the Trust Agreement.

2.      The indebtedness evidenced by the PREPA Bonds is secured by, among other things, a pledge of PREPA's present and future revenues as set forth in the Trust Agreement.  This pledge constitutes a continuing pledge of PREPA's post-petition special revenues within the meaning of 11 U.S.C. § 928 made applicable to the Title III proceedings by Section 301 of the Puerto Rico Oversight, Management and Economic Stability Act ("**PROMESA**").

3.      The Oversight Board and AAFAF (together, the "**Government Parties**") have entered into a Definitive Debt Restructuring Agreement with the holders or insurers of approximately 94% of the PREPA Bonds (the "**PREPA RSA**").  The PREPA Bond Trustee is not a party to the PREPA RSA, but it has been directed, subject to certain conditions, to support the related motion to approve certain aspects of the PREPA RSA, which was filed by the Government Parties in the PREPA Title III case (the "**9019 Motion**").  Since the execution of the PREPA RSA, the Government Parties and the PREPA Bond Trustee have stayed, or otherwise avoided, litigation concerning the PREPA Bonds in the PREPA Title III Case. *See Joint Motion of Oversight Board and AAFAF to Stay Adversary Proceeding,* 19-00391-LTS [Dkt. No. 2].

4.      In light of the PREPA RSA and the pending 9019 Motion, the PREPA Bond Trustee has presumed that the Oversight Board does not intend the Commonwealth Plan to treat or negatively impact any claims based upon the PREPA Bonds.  Indeed, the Commonwealth Plan does not define or classify the PREPA Bonds, and does not explicitly purport to treat claims related

to them.  Likewise, the Solicitation Motion,[2] filed May 13, 2021, does not seek to solicit beneficial

holders of the PREPA Bonds through the ATOP system at DTC.

5.    As described below, however, the Commonwealth Plan includes vague and

expansive releases, injunctions, and exculpations that could be construed to impact claims relating

to the PREPA Bonds. Neither the Commonwealth Plan nor the Disclosure Statement explain the

scope of these provisions, leaving the PREPA Bond Trustee and the PREPA Bondholders to guess

as to whether and the extent to which their rights will be affected, limited, or impaired by the

confirmation of the Commonwealth Plan.

6.    Section 1125(b) of the Bankruptcy Code, as incorporated into this Title III case by

PROMESA § 301(a), conditions the Debtors' solicitation of votes on the proposed Commonwealth

Plan on the Court's determination that the Disclosure Statement contains "adequate information."

The Disclosure Statement must provide enough information to enable the Debtors' creditors and

this Court to make an informed judgment about the Commonwealth Plan. *See Kunica v. St. Jean*

*Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) ("The importance of full disclosure is underlaid by the

reliance placed upon the disclosure statement by the creditors and the court." (quoting *Oneida*

*Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988))); *see also In re*

*Crowthers McCall Patterns, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990) ("At the 'heart' of

the chapter 11 process is the requirement that holders of claims . . . be furnished a proper disclosure

statement that would enable a hypothetical reasonable investor . . . to make an informed judgment

---

[2] Amended Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for An Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VII) Approving Vote Tabulation Procedures (the "Solicitation Motion") [Dkt. No. 16756].

about the plan." (citation and quotation omitted)).  Precisely what constitutes adequate information

in any particular instance is determined on a case-by-case basis.  *Kirk v. Texaco, Inc.*, 82 B.R. 678,

682 (S.D.N.Y. 1988); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. S.D.N.Y.

1988).

7.      The Disclosure Statement fails to satisfy this standard because it does not provide

adequate information concerning the scope and breadth of the releases, injunctions, and

exculpations contained in Article 88 of the Commonwealth Plan as they relate to PREPA and the

PREPA Bonds. The vague language contained in these provisions prevents a reasonable PREPA

Bondholder from ascertaining whether its rights under the Trust Agreement with PREPA and

related rights under applicable law are being released or impaired—and, if so, to what extent.

8.      For example, the following creditor release in Section 88.2(a) of the

Commonwealth Plan uses language that could be construed to release an expansive and ill-defined

set of pre-petition claims against PREPA:

> Except as expressly provided in the Plan or the Confirmation Order, all distributions
> and rights afforded under the Plan shall be, and shall be deemed to be, in exchange
> for, and in ***complete satisfaction, settlement, discharge and release of, all Claims
> or Causes of Action against the Released Parties that arose, in whole or in part,
> prior to the Effective Date, relating to the Title III Cases, the Debtors or
> Reorganized Debtors or any of their respective Assets, property, or interests of
> any nature whatsoever***, including any interest accrued on such Claims from and
> after the Petition Date, and regardless of whether any property will have been
> distributed or retained pursuant to the Plan on account of such Claims or Causes of
> Action.

(Commonwealth Plan § 88.2(a) (emphasis added).)

9.      To understand the breadth of Section 88.2(a)'s release, one must unpack several

layers of definitions underlying the term "Released Parties." The Commonwealth Plan defines this

term to include "the Government Parties," which in turn includes the Commonwealth and all of its

"Related Persons."  (Commonwealth Plan § 1.371.)  The term "Related Persons" means, among

other things, the Commonwealth's "current and former Affiliates." (Commonwealth Plan § 1.369.)
The term "Affiliate," in turn, means "[w]ith respect to any specified Entity, any other Entity that
directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under
common control with, such Entity." (Commonwealth Plan § 1.54.)  Finally, the term "Entity" is
defined as "[a] Person, a corporation, a general partnership, a limited partnership, a limited liability
company, a limited liability partnership, an association, a joint stock company, a joint venture, an
estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof,
including, without limitation, the office of the United States Trustee, or any other entity."
(Commonwealth Plan § 1.193.)

10.     Based on these interwoven definitions, PREPA arguably falls within the scope of
the term "Released Parties." Someone could argue later that PREPA is an Entity "controlled" at
least to some extent by the Commonwealth, and as a result qualifies as an Affiliate of the
Commonwealth. They might also argue that as an Affiliate of the Commonwealth, PREPA is one
of the Commonwealth's Related Persons.  And finally, if it is one of the Commonwealth's Related
Persons, PREPA might then further qualify as one of the the Released Parties covered by Section
88.2(a).

11.     If PREPA is included as a Released Party, then Section 88.2(a) might be construed
to call for the discharge and release of all "Claims" and "Causes of Action" against PREPA to the
extent they "arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases,
the Debtors or Reorganized Debtors ***or any of their respective Assets, property, or interests of any
nature whatsoever***." (Commonwealth Plan §88.2(a) (emphasis added)). The phrase "interests of
any nature whatsoever" is so vague and ill-defined that someone could argue encompasses the
PREPA Bonds issued with the consent and support of the Commonwealth. PREPA Bondholders

6

are thus faced with the absurd worry that their Claims[3] and Causes of Action[4] against PREPA might be released by Section 88.2(a) of the Commonwealth Plan even though PREPA is a debtor in a separate Title III Case and the plan relating to their claims in the PREPA Title III case has yet to be proposed.

12.     This same issue arises in the injunction provision set forth in Section 88.3, which is tied to Section 88.2(a)'s release. If PREPA is a Released Party, then Section 88.3 can be construed to permanently enjoin the PREPA Bond Trustee and the PREPA Bondholders[5] from pursuing their claims against PREPA:

> Except as otherwise expressly provided in the Plan, the Confirmation Order or such other Final Order of the Title III Court that may be applicable, ***all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 88.2*** hereof or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 88.2 hereof ***are permanently enjoined***, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the Plan ***against any of the Released Parties or any of their respective assets or property***, (b) the enforcement,

---

[3] Commonwealth Plan § 1.112 ("Claim: Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or matured or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, Causes of Action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.").

[4] Commonwealth Plan § 1.104 ("Causes of Action: All claims, actions, causes of action, rights to payment, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims (including, but not limited to, all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, subordination, and all Avoidance Actions) that are pending or may be asserted against any Entity whether arising on or before the Effective Date, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertible directly or derivatively, in law, equity or otherwise and whether asserted or unasserted as of the Effective Date.").

[5] Equally concerning and unascertainable is the uncertainty about who else may claim to be a Related Person to a Released Person who might argue that that PREPA Bondholders have released them in advance of PREPA's Title III plan.

attachment, collection or recovery by any manner or means of any judgment, award, decree or order *against any of the Released Parties or any of their respective assets or property* on account of any Claim or other debt or liability that is discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind *against any of the Released Parties or any of their respective assets or property* on account of any Claim or other debt or liability that is discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due *from any of the Released Parties or any of their respective assets or property*, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan.

(Commonwealth Plan § 88.3 (emphasis added).)

13.     The lack of clarity for PREPA releases runs in the other direction, too. If PREPA were construed to be a Related Party to the Commonwealth (for the reasons set forth above), then PREPA could also be construed as one of the parties granting the expansive Debtor releases contained in Section 88.5 of the Commonwealth Plan. Section 88.5 provides:

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, and for good and valuable consideration, each of the Debtors and Reorganized Debtors, the Disbursing Agent and *each of the Debtors' and Reorganized Debtors' Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties* from any and all Claims or Causes of Action that the Debtors, Reorganized Debtors, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims or otherwise are based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event or other circumstance relating to the Title III Cases, the Debtors taking place or existing on or prior to the Effective Date, and/or any Claim, act, fact, transaction, occurrence.

(Commonwealth Plan § 88.5 (emphasis added).)

14.     Section 88.5's release potentially covers PREPA's claims against the Commonwealth, as well as any other party falling within the vague scope of the term "Released Parties"—and, thus, has potentially significant ramifications on the value of PREPA's assets and pledged revenues. PREPA should not be giving a debtor plan release like the one in Section 88.5

to anyone until its Title III Plan is confirmed and goes effective, and the Commonwealth Plan should be clarified so as to avoid any intended or unintended crossover releases if the Oversight Board wishes to proceed with the Commonwealth Plan first.

15.     To address its concerns, the PREPA Bond Trustee has suggested that the Oversight Board add the following language to the Commonwealth Plan:

> For the avoidance of doubt, nothing in the Plan or Confirmation Order shall release, discharge or enjoin any Claims or Causes of Actions arising from or related to the PREPA Bonds, including any monoline insurance pertaining thereto and PREPA is not releasing any Claims or Causes of Action against any Entity. Claims and Causes of Action arising from or related to the PREPA Bonds, and releases by and against PREPA and its Assets shall be addressed in PREPA's Title III case, including in any plan of debt adjustment that may be filed therein.

16.     If the Oversight Board intends for anyone, including the Commonwealth itself, to receive a release of Claims and Causes of Action related to the PREPA Bonds, then the Disclosure Statement should include appropriate disclosures so that PREPA Bondholders can evaluate the Commonwealth Plan in the absence of certainty regarding the outcome of PREPA's Title III case.

17.     The PREPA Bond Trustee will seek to consensually resolve the above-described problems in advance of the hearing on the adequacy of the Disclosure Statement.

18.     The above objections are limited to the adequacy of information in the Disclosure Statement and all rights and remedies with respect to the Commonwealth Plan are expressly reserved.

**WHEREFORE**, the PREPA Bond Trustee respectfully requests that the Court require the clarification and limitations to the scope of releases affecting the PREPA Bonds as described herein as a condition to its approval of adequacy or the information in the Disclosure Statement.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 15th day of June, 2021.

**WE HEREBY CERTIFY** that on this same date a true and exact copy of this motion was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of

record. Also, a copy of this document will be: (i) served via electronic mail or U.S. mail to all case participants; (ii) filed with the United States District Court, Clerk's Office, 150 Ave. Carlos Chardon Ste. 150, San Juan, P.R. 00918-1767; and (iii) served upon the Office of the United States Trustee, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, P.R. 00901, and a further Certificate of Service will be filed with the Court.

Respectfully submitted,                              Respectfully submitted,

**RIVERA, TULLA AND FERRER, LLC**                    **MASLON LLP**

                                                     By: /s Clark T. Whitmore
/s Eric A. Tulla                                         Clark T. Whitmore (admitted *pro hac vice*)
Eric A. Tulla                                            John Duffey (admitted *pro hac vice*)
USDC-DPR No. 118313
Email: etulla@ riveratulla.com                       90 South Seventh Street, Suite 3300
                                                     Minneapolis, MN 55402
/s Iris J. Cabrera-Gómez                             Telephone: 612-672-8200
Iris J. Cabrera-Gómez                                Facsimile: 612-672-8397
USDC-DPR No. 221101                                  E-Mail:    clark.whitmore@maslon.com
Email: icabrera@riveratulla.com                                 john.duffey@maslon.com

Rivera Tulla & Ferrer Building                       **ATTORNEYS FOR U.S. BANK NATIONAL**
50 Quisqueya Street                                  **ASSOCIATION, IN ITS CAPACITY AS**
San Juan, PR 00917-1212                              **TRUSTEE**
Tel: (787)753-0438
Fax: (787)767-5784 (787)766-0409

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>     as representative of<br><br>The Commonwealth of Puerto Rico, *et al.*,<br><br>       Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |

**LIMITED OBJECTION OF U.S. BANK NATIONAL ASSOCIATION
AS PREPA BOND TRUSTEE TO APPROVAL OF DEBTORS' AMENDED
DISCLOSURE STATEMENT**

U.S. Bank National Association, solely in its capacity as PREPA Bond Trustee (the "**PREPA Bond Trustee**"), files this Limited Objection ("**Limited Objection**") to the adequacy of information contained in the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico*, *Et Al.* (the "**Disclosure Statement**") [Dkt No. 16741]. The PREPA Bond Trustee seeks in this objection to require the Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**") as the plan proponent to adequately disclose the extent to which the rights and claims of the PREPA Bond Trustee and the holders of PREPA Bonds will be affected, limited, or impaired by the Third Amended Title III Joint Plan of

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801); and (vi) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Adjustment of the Commonwealth of Puerto Rico, Et Al. (the "**Commonwealth Plan**") [Dkt. No. 16740] in advance of any plan of debt adjustment for PREPA in its separate Title III Case.

The PREPA Bond Trustee hopes and expects that a consensual plan will be filed in the PREPA Title III Case, but has no control over whether or when that may occur relative to the confirmation and effective date of the proposed Commonwealth Plan. Thus, the PREPA Bond Trustee is constrained to file this Limited Objection seeking clarification about the extent to which the Commonwealth Plan may affect rights and claims arising from or related to the PREPA Bonds. The Disclosure Statement, as currently drafted, is inadequate because the Commonwealth Plan contains vague and expansive releases, exculpations, and injunctions that potentially encroach upon the PREPA Bond claims and blur the boundary between the separate Commonwealth and PREPA Title III cases.

The PREPA Bond Trustee has informally requested that the Oversight Board narrow the proposed releases in the Commonwealth Plan to explicitly exclude claims arising from or related to the PREPA Bonds in a manner consistent with the narrower releases that the "Government Releasees" are receiving from the "PSA Parties" for bond issuances that are not being directly addressed in the Commonwealth Plan including the PREPA Bonds (as such terms are defined in the Commonwealth Plan). In the absence of such an exclusion for the benefit of all PREPA Bondholders and the PREPA Bond Trustee, the Disclosure Statement must be amended to clarify the extent to which PREPA Bond claims are being impaired by the Commonwealth Plan.

In support of this Limited Objection, the PREPA Bond Trustee states as follows:

1.      U.S. Bank National Association serves as the PREPA Bond Trustee under that certain Trust Agreement dated as of January 1, 1974 (as amended, supplemented, or otherwise modified from time to time, the "**Trust Agreement**") by and between itself as trustee and the

Puerto Rico Electric Power Authority ("**PREPA**") as issuer, pursuant to which Puerto Rico Electric Power Authority Power Revenue and Power Revenue Refunding Bonds have been issued and are outstanding (collectively, the "**PREPA Bonds**," and holders thereof, the "**PREPA Bondholders**") in the aggregate principal amount of approximately $8.26 billion. The rights and duties of the PREPA Bond Trustee are set forth in the Trust Agreement.

2.      The indebtedness evidenced by the PREPA Bonds is secured by, among other things, a pledge of PREPA's present and future revenues as set forth in the Trust Agreement.  This pledge constitutes a continuing pledge of PREPA's post-petition special revenues within the meaning of 11 U.S.C. § 928 made applicable to the Title III proceedings by Section 301 of the Puerto Rico Oversight, Management and Economic Stability Act ("**PROMESA**").

3.      The Oversight Board and AAFAF (together, the "**Government Parties**") have entered into a Definitive Debt Restructuring Agreement with the holders or insurers of approximately 94% of the PREPA Bonds (the "**PREPA RSA**").  The PREPA Bond Trustee is not a party to the PREPA RSA, but it has been directed, subject to certain conditions, to support the related motion to approve certain aspects of the PREPA RSA, which was filed by the Government Parties in the PREPA Title III case (the "**9019 Motion**").  Since the execution of the PREPA RSA, the Government Parties and the PREPA Bond Trustee have stayed, or otherwise avoided, litigation concerning the PREPA Bonds in the PREPA Title III Case. *See Joint Motion of Oversight Board and AAFAF to Stay Adversary Proceeding,* 19-00391-LTS [Dkt. No. 2].

4.      In light of the PREPA RSA and the pending 9019 Motion, the PREPA Bond Trustee has presumed that the Oversight Board does not intend the Commonwealth Plan to treat or negatively impact any claims based upon the PREPA Bonds.  Indeed, the Commonwealth Plan does not define or classify the PREPA Bonds, and does not explicitly purport to treat claims related

to them.  Likewise, the Solicitation Motion,[2] filed May 13, 2021, does not seek to solicit beneficial

holders of the PREPA Bonds through the ATOP system at DTC.

5.     As described below, however, the Commonwealth Plan includes vague and

expansive releases, injunctions, and exculpations that could be construed to impact claims relating

to the PREPA Bonds. Neither the Commonwealth Plan nor the Disclosure Statement explain the

scope of these provisions, leaving the PREPA Bond Trustee and the PREPA Bondholders to guess

as to whether and the extent to which their rights will be affected, limited, or impaired by the

confirmation of the Commonwealth Plan.

6.     Section 1125(b) of the Bankruptcy Code, as incorporated into this Title III case by

PROMESA § 301(a), conditions the Debtors' solicitation of votes on the proposed Commonwealth

Plan on the Court's determination that the Disclosure Statement contains "adequate information."

The Disclosure Statement must provide enough information to enable the Debtors' creditors and

this Court to make an informed judgment about the Commonwealth Plan. *See Kunica v. St. Jean*

*Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) ("The importance of full disclosure is underlaid by the

reliance placed upon the disclosure statement by the creditors and the court." (quoting *Oneida*

*Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988))); *see also In re*

*Crowthers McCall Patterns, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990) ("At the 'heart' of

the chapter 11 process is the requirement that holders of claims . . . be furnished a proper disclosure

statement that would enable a hypothetical reasonable investor . . . to make an informed judgment

---

[2] Amended Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the
Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for An Order (I)
Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and
Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of
Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting,
Election, and Confirmation Deadlines, and (VII) Approving Vote Tabulation Procedures (the "Solicitation Motion")
[Dkt. No. 16756].

about the plan." (citation and quotation omitted)).  Precisely what constitutes adequate information

in any particular instance is determined on a case-by-case basis.  *Kirk v. Texaco, Inc.*, 82 B.R. 678,

682 (S.D.N.Y. 1988); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. S.D.N.Y.

1988).

7.      The Disclosure Statement fails to satisfy this standard because it does not provide

adequate information concerning the scope and breadth of the releases, injunctions, and

exculpations contained in Article 88 of the Commonwealth Plan as they relate to PREPA and the

PREPA Bonds. The vague language contained in these provisions prevents a reasonable PREPA

Bondholder from ascertaining whether its rights under the Trust Agreement with PREPA and

related rights under applicable law are being released or impaired—and, if so, to what extent.

8.      For example, the following creditor release in Section 88.2(a) of the

Commonwealth Plan uses language that could be construed to release an expansive and ill-defined

set of pre-petition claims against PREPA:

> Except as expressly provided in the Plan or the Confirmation Order, all distributions
> and rights afforded under the Plan shall be, and shall be deemed to be, in exchange
> for, and in *complete satisfaction, settlement, discharge and release of, all Claims
> or Causes of Action against the Released Parties that arose, in whole or in part,
> prior to the Effective Date, relating to the Title III Cases, the Debtors or
> Reorganized Debtors or any of their respective Assets, property, or interests of
> any nature whatsoever*, including any interest accrued on such Claims from and
> after the Petition Date, and regardless of whether any property will have been
> distributed or retained pursuant to the Plan on account of such Claims or Causes of
> Action.

(Commonwealth Plan § 88.2(a) (emphasis added).)

9.      To understand the breadth of Section 88.2(a)'s release, one must unpack several

layers of definitions underlying the term "Released Parties." The Commonwealth Plan defines this

term to include "the Government Parties," which in turn includes the Commonwealth and all of its

"Related Persons."  (Commonwealth Plan § 1.371.)  The term "Related Persons" means, among

other things, the Commonwealth's "current and former Affiliates." (Commonwealth Plan § 1.369.)
The term "Affiliate," in turn, means "[w]ith respect to any specified Entity, any other Entity that
directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under
common control with, such Entity." (Commonwealth Plan § 1.54.)  Finally, the term "Entity" is
defined as "[a] Person, a corporation, a general partnership, a limited partnership, a limited liability
company, a limited liability partnership, an association, a joint stock company, a joint venture, an
estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof,
including, without limitation, the office of the United States Trustee, or any other entity."
(Commonwealth Plan § 1.193.)

10.    Based on these interwoven definitions, PREPA arguably falls within the scope of
the term "Released Parties." Someone could argue later that PREPA is an Entity "controlled" at
least to some extent by the Commonwealth, and as a result qualifies as an Affiliate of the
Commonwealth. They might also argue that as an Affiliate of the Commonwealth, PREPA is one
of the Commonwealth's Related Persons.  And finally, if it is one of the Commonwealth's Related
Persons, PREPA might then further qualify as one of the the Released Parties covered by Section
88.2(a).

11.    If PREPA is included as a Released Party, then Section 88.2(a) might be construed
to call for the discharge and release of all "Claims" and "Causes of Action" against PREPA to the
extent they "arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases,
the Debtors or Reorganized Debtors *or any of their respective Assets, property, or interests of any
nature whatsoever*." (Commonwealth Plan §88.2(a) (emphasis added)). The phrase "interests of
any nature whatsoever" is so vague and ill-defined that someone could argue encompasses the
PREPA Bonds issued with the consent and support of the Commonwealth. PREPA Bondholders

are thus faced with the absurd worry that their Claims[3] and Causes of Action[4] against PREPA might be released by Section 88.2(a) of the Commonwealth Plan even though PREPA is a debtor in a separate Title III Case and the plan relating to their claims in the PREPA Title III case has yet to be proposed.

12.     This same issue arises in the injunction provision set forth in Section 88.3, which is tied to Section 88.2(a)'s release. If PREPA is a Released Party, then Section 88.3 can be construed to permanently enjoin the PREPA Bond Trustee and the PREPA Bondholders[5] from pursuing their claims against PREPA:

> Except as otherwise expressly provided in the Plan, the Confirmation Order or such other Final Order of the Title III Court that may be applicable, ***all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 88.2*** hereof or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 88.2 hereof ***are permanently enjoined***, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the Plan ***against any of the Released Parties or any of their respective assets or property***, (b) the enforcement,

---

[3] Commonwealth Plan § 1.112 ("Claim: Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, Causes of Action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.").

[4] Commonwealth Plan § 1.104 ("Causes of Action: All claims, actions, causes of action, rights to payment, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims (including, but not limited to, all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, subordination, and all Avoidance Actions) that are pending or may be asserted against any Entity whether arising on or before the Effective Date, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertible directly or derivatively, in law, equity or otherwise and whether asserted or unasserted as of the Effective Date.").

[5] Equally concerning and unascertainable is the uncertainty about who else may claim to be a Related Person to a Released Person who might argue that that PREPA Bondholders have released them in advance of PREPA's Title III plan.

attachment, collection or recovery by any manner or means of any judgment, award, decree or order *against any of the Released Parties or any of their respective assets or property* on account of any Claim or other debt or liability that is discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind *against any of the Released Parties or any of their respective assets or property* on account of any Claim or other debt or liability that is discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due *from any of the Released Parties or any of their respective assets or property*, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan.

(Commonwealth Plan § 88.3 (emphasis added).)

13.     The lack of clarity for PREPA releases runs in the other direction, too. If PREPA were construed to be a Related Party to the Commonwealth (for the reasons set forth above), then PREPA could also be construed as one of the parties granting the expansive Debtor releases contained in Section 88.5 of the Commonwealth Plan. Section 88.5 provides:

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, and for good and valuable consideration, each of the Debtors and Reorganized Debtors, the Disbursing Agent and *each of the Debtors' and Reorganized Debtors' Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties* from any and all Claims or Causes of Action that the Debtors, Reorganized Debtors, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims or otherwise are based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event or other circumstance relating to the Title III Cases, the Debtors taking place or existing on or prior to the Effective Date, and/or any Claim, act, fact, transaction, occurrence.

(Commonwealth Plan § 88.5 (emphasis added).)

14.     Section 88.5's release potentially covers PREPA's claims against the Commonwealth, as well as any other party falling within the vague scope of the term "Released Parties"—and, thus, has potentially significant ramifications on the value of PREPA's assets and pledged revenues. PREPA should not be giving a debtor plan release like the one in Section 88.5

to anyone until its Title III Plan is confirmed and goes effective, and the Commonwealth Plan should be clarified so as to avoid any intended or unintended crossover releases if the Oversight Board wishes to proceed with the Commonwealth Plan first.

15.     To address its concerns, the PREPA Bond Trustee has suggested that the Oversight Board add the following language to the Commonwealth Plan:

> For the avoidance of doubt, nothing in the Plan or Confirmation Order shall release, discharge or enjoin any Claims or Causes of Actions arising from or related to the PREPA Bonds, including any monoline insurance pertaining thereto and PREPA is not releasing any Claims or Causes of Action against any Entity. Claims and Causes of Action arising from or related to the PREPA Bonds, and releases by and against PREPA and its Assets shall be addressed in PREPA's Title III case, including in any plan of debt adjustment that may be filed therein.

16.     If the Oversight Board intends for anyone, including the Commonwealth itself, to receive a release of Claims and Causes of Action related to the PREPA Bonds, then the Disclosure Statement should include appropriate disclosures so that PREPA Bondholders can evaluate the Commonwealth Plan in the absence of certainty regarding the outcome of PREPA's Title III case.

17.     The PREPA Bond Trustee will seek to consensually resolve the above-described problems in advance of the hearing on the adequacy of the Disclosure Statement.

18.     The above objections are limited to the adequacy of information in the Disclosure Statement and all rights and remedies with respect to the Commonwealth Plan are expressly reserved.

**WHEREFORE**, the PREPA Bond Trustee respectfully requests that the Court require the clarification and limitations to the scope of releases affecting the PREPA Bonds as described herein as a condition to its approval of adequacy or the information in the Disclosure Statement.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 15th day of June, 2021.

**WE HEREBY CERTIFY** that on this same date a true and exact copy of this motion was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of

record. Also, a copy of this document will be: (i) served via electronic mail or U.S. mail to all case participants; (ii) filed with the United States District Court, Clerk's Office, 150 Ave. Carlos Chardon Ste. 150, San Juan, P.R. 00918-1767; and (iii) served upon the Office of the United States Trustee, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, P.R. 00901, and a further Certificate of Service will be filed with the Court.

Respectfully submitted,                          Respectfully submitted,

**RIVERA, TULLA AND FERRER, LLC**                **MASLON LLP**

                                                 By: /s Clark T. Whitmore
/s Eric A. Tulla                                     Clark T. Whitmore (admitted *pro hac vice*)
Eric A. Tulla                                        John Duffey (admitted *pro hac vice*)
USDC-DPR No. 118313
Email: etulla@ riveratulla.com                   90 South Seventh Street, Suite 3300
                                                 Minneapolis, MN 55402
/s Iris J. Cabrera-Gómez                         Telephone: 612-672-8200
Iris J. Cabrera-Gómez                            Facsimile: 612-672-8397
USDC-DPR No. 221101                              E-Mail:    clark.whitmore@maslon.com
Email: icabrera@riveratulla.com                             john.duffey@maslon.com

Rivera Tulla & Ferrer Building                   **ATTORNEYS FOR U.S. BANK NATIONAL**
50 Quisqueya Street                              **ASSOCIATION, IN ITS CAPACITY AS**
San Juan, PR 00917-1212                          **TRUSTEE**
Tel: (787)753-0438
Fax: (787)767-5784 (787)766-0409

10

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

In re:

The Financial Oversight and Management Board for Puerto Rico,

     as representative of

The Commonwealth of Puerto Rico, *et al.*,

     Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

## LIMITED OBJECTION OF U.S. BANK NATIONAL ASSOCIATION AS PREPA BOND TRUSTEE TO APPROVAL OF DEBTORS' AMENDED DISCLOSURE STATEMENT

U.S. Bank National Association, solely in its capacity as PREPA Bond Trustee (the "**PREPA Bond Trustee**"), files this Limited Objection ("**Limited Objection**") to the adequacy of information contained in the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico*, *Et Al.* (the "**Disclosure Statement**") [Dkt No. 16741]. The PREPA Bond Trustee seeks in this objection to require the Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**") as the plan proponent to adequately disclose the extent to which the rights and claims of the PREPA Bond Trustee and the holders of PREPA Bonds will be affected, limited, or impaired by the Third Amended Title III Joint Plan of

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801); and (vi) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Adjustment of the Commonwealth of Puerto Rico, Et Al. (the "**Commonwealth Plan**") [Dkt. No. 16740] in advance of any plan of debt adjustment for PREPA in its separate Title III Case.

The PREPA Bond Trustee hopes and expects that a consensual plan will be filed in the PREPA Title III Case, but has no control over whether or when that may occur relative to the confirmation and effective date of the proposed Commonwealth Plan. Thus, the PREPA Bond Trustee is constrained to file this Limited Objection seeking clarification about the extent to which the Commonwealth Plan may affect rights and claims arising from or related to the PREPA Bonds. The Disclosure Statement, as currently drafted, is inadequate because the Commonwealth Plan contains vague and expansive releases, exculpations, and injunctions that potentially encroach upon the PREPA Bond claims and blur the boundary between the separate Commonwealth and PREPA Title III cases.

The PREPA Bond Trustee has informally requested that the Oversight Board narrow the proposed releases in the Commonwealth Plan to explicitly exclude claims arising from or related to the PREPA Bonds in a manner consistent with the narrower releases that the "Government Releasees" are receiving from the "PSA Parties" for bond issuances that are not being directly addressed in the Commonwealth Plan including the PREPA Bonds (as such terms are defined in the Commonwealth Plan). In the absence of such an exclusion for the benefit of all PREPA Bondholders and the PREPA Bond Trustee, the Disclosure Statement must be amended to clarify the extent to which PREPA Bond claims are being impaired by the Commonwealth Plan.

In support of this Limited Objection, the PREPA Bond Trustee states as follows:

1.      U.S. Bank National Association serves as the PREPA Bond Trustee under that certain Trust Agreement dated as of January 1, 1974 (as amended, supplemented, or otherwise modified from time to time, the "**Trust Agreement**") by and between itself as trustee and the

Puerto Rico Electric Power Authority ("**PREPA**") as issuer, pursuant to which Puerto Rico Electric Power Authority Power Revenue and Power Revenue Refunding Bonds have been issued and are outstanding (collectively, the "**PREPA Bonds**," and holders thereof, the "**PREPA Bondholders**") in the aggregate principal amount of approximately $8.26 billion. The rights and duties of the PREPA Bond Trustee are set forth in the Trust Agreement.

2.      The indebtedness evidenced by the PREPA Bonds is secured by, among other things, a pledge of PREPA's present and future revenues as set forth in the Trust Agreement.  This pledge constitutes a continuing pledge of PREPA's post-petition special revenues within the meaning of 11 U.S.C. § 928 made applicable to the Title III proceedings by Section 301 of the Puerto Rico Oversight, Management and Economic Stability Act ("**PROMESA**").

3.      The Oversight Board and AAFAF (together, the "**Government Parties**") have entered into a Definitive Debt Restructuring Agreement with the holders or insurers of approximately 94% of the PREPA Bonds (the "**PREPA RSA**").  The PREPA Bond Trustee is not a party to the PREPA RSA, but it has been directed, subject to certain conditions, to support the related motion to approve certain aspects of the PREPA RSA, which was filed by the Government Parties in the PREPA Title III case (the "**9019 Motion**").  Since the execution of the PREPA RSA, the Government Parties and the PREPA Bond Trustee have stayed, or otherwise avoided, litigation concerning the PREPA Bonds in the PREPA Title III Case. *See Joint Motion of Oversight Board and AAFAF to Stay Adversary Proceeding,* 19-00391-LTS [Dkt. No. 2].

4.      In light of the PREPA RSA and the pending 9019 Motion, the PREPA Bond Trustee has presumed that the Oversight Board does not intend the Commonwealth Plan to treat or negatively impact any claims based upon the PREPA Bonds.  Indeed, the Commonwealth Plan does not define or classify the PREPA Bonds, and does not explicitly purport to treat claims related

to them.  Likewise, the Solicitation Motion,[2] filed May 13, 2021, does not seek to solicit beneficial

holders of the PREPA Bonds through the ATOP system at DTC.

5.       As described below, however, the Commonwealth Plan includes vague and

expansive releases, injunctions, and exculpations that could be construed to impact claims relating

to the PREPA Bonds. Neither the Commonwealth Plan nor the Disclosure Statement explain the

scope of these provisions, leaving the PREPA Bond Trustee and the PREPA Bondholders to guess

as to whether and the extent to which their rights will be affected, limited, or impaired by the

confirmation of the Commonwealth Plan.

6.       Section 1125(b) of the Bankruptcy Code, as incorporated into this Title III case by

PROMESA § 301(a), conditions the Debtors' solicitation of votes on the proposed Commonwealth

Plan on the Court's determination that the Disclosure Statement contains "adequate information."

The Disclosure Statement must provide enough information to enable the Debtors' creditors and

this Court to make an informed judgment about the Commonwealth Plan. *See Kunica v. St. Jean*

*Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) ("The importance of full disclosure is underlaid by the

reliance placed upon the disclosure statement by the creditors and the court." (quoting *Oneida*

*Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988))); *see also In re*

*Crowthers McCall Patterns, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990) ("At the 'heart' of

the chapter 11 process is the requirement that holders of claims . . . be furnished a proper disclosure

statement that would enable a hypothetical reasonable investor . . . to make an informed judgment

---

[2] Amended Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the
Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for An Order (I)
Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and
Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of
Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting,
Election, and Confirmation Deadlines, and (VII) Approving Vote Tabulation Procedures (the "Solicitation Motion")
[Dkt. No. 16756].

about the plan." (citation and quotation omitted)).  Precisely what constitutes adequate information

in any particular instance is determined on a case-by-case basis.  *Kirk v. Texaco, Inc.*, 82 B.R. 678,

682 (S.D.N.Y. 1988); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. S.D.N.Y.

1988).

7.     The Disclosure Statement fails to satisfy this standard because it does not provide

adequate information concerning the scope and breadth of the releases, injunctions, and

exculpations contained in Article 88 of the Commonwealth Plan as they relate to PREPA and the

PREPA Bonds. The vague language contained in these provisions prevents a reasonable PREPA

Bondholder from ascertaining whether its rights under the Trust Agreement with PREPA and

related rights under applicable law are being released or impaired—and, if so, to what extent.

8.     For example, the following creditor release in Section 88.2(a) of the

Commonwealth Plan uses language that could be construed to release an expansive and ill-defined

set of pre-petition claims against PREPA:

> Except as expressly provided in the Plan or the Confirmation Order, all distributions
> and rights afforded under the Plan shall be, and shall be deemed to be, in exchange
> for, and in ***complete satisfaction, settlement, discharge and release of, all Claims
> or Causes of Action against the Released Parties that arose, in whole or in part,
> prior to the Effective Date, relating to the Title III Cases, the Debtors or
> Reorganized Debtors or any of their respective Assets, property, or interests of
> any nature whatsoever***, including any interest accrued on such Claims from and
> after the Petition Date, and regardless of whether any property will have been
> distributed or retained pursuant to the Plan on account of such Claims or Causes of
> Action.

(Commonwealth Plan § 88.2(a) (emphasis added).)

9.     To understand the breadth of Section 88.2(a)'s release, one must unpack several

layers of definitions underlying the term "Released Parties." The Commonwealth Plan defines this

term to include "the Government Parties," which in turn includes the Commonwealth and all of its

"Related Persons."  (Commonwealth Plan § 1.371.)  The term "Related Persons" means, among

other things, the Commonwealth's "current and former Affiliates." (Commonwealth Plan § 1.369.)
The term "Affiliate," in turn, means "[w]ith respect to any specified Entity, any other Entity that
directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under
common control with, such Entity." (Commonwealth Plan § 1.54.)  Finally, the term "Entity" is
defined as "[a] Person, a corporation, a general partnership, a limited partnership, a limited liability
company, a limited liability partnership, an association, a joint stock company, a joint venture, an
estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof,
including, without limitation, the office of the United States Trustee, or any other entity."
(Commonwealth Plan § 1.193.)

10.     Based on these interwoven definitions, PREPA arguably falls within the scope of
the term "Released Parties." Someone could argue later that PREPA is an Entity "controlled" at
least to some extent by the Commonwealth, and as a result qualifies as an Affiliate of the
Commonwealth. They might also argue that as an Affiliate of the Commonwealth, PREPA is one
of the Commonwealth's Related Persons.  And finally, if it is one of the Commonwealth's Related
Persons, PREPA might then further qualify as one of the the Released Parties covered by Section
88.2(a).

11.     If PREPA is included as a Released Party, then Section 88.2(a) might be construed
to call for the discharge and release of all "Claims" and "Causes of Action" against PREPA to the
extent they "arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases,
the Debtors or Reorganized Debtors *__or any of their respective Assets, property, or interests of any__*
*__nature whatsoever__*." (Commonwealth Plan §88.2(a) (emphasis added)). The phrase "interests of
any nature whatsoever" is so vague and ill-defined that someone could argue encompasses the
PREPA Bonds issued with the consent and support of the Commonwealth. PREPA Bondholders

are thus faced with the absurd worry that their Claims[3] and Causes of Action[4] against PREPA might be released by Section 88.2(a) of the Commonwealth Plan even though PREPA is a debtor in a separate Title III Case and the plan relating to their claims in the PREPA Title III case has yet to be proposed.

12.      This same issue arises in the injunction provision set forth in Section 88.3, which is tied to Section 88.2(a)'s release. If PREPA is a Released Party, then Section 88.3 can be construed to permanently enjoin the PREPA Bond Trustee and the PREPA Bondholders[5] from pursuing their claims against PREPA:

> Except as otherwise expressly provided in the Plan, the Confirmation Order or such other Final Order of the Title III Court that may be applicable, ***all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 88.2*** hereof or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 88.2 hereof ***are permanently enjoined***, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the Plan ***against any of the Released Parties or any of their respective assets or property***, (b) the enforcement,

---

[3] Commonwealth Plan § 1.112 ("Claim: Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, Causes of Action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.").

[4] Commonwealth Plan § 1.104 ("Causes of Action: All claims, actions, causes of action, rights to payment, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims (including, but not limited to, all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, subordination, and all Avoidance Actions) that are pending or may be asserted against any Entity whether arising on or before the Effective Date, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertible directly or derivatively, in law, equity or otherwise and whether asserted or unasserted as of the Effective Date.").

[5] Equally concerning and unascertainable is the uncertainty about who else may claim to be a Related Person to a Released Person who might argue that that PREPA Bondholders have released them in advance of PREPA's Title III plan.

attachment, collection or recovery by any manner or means of any judgment, award, decree or order *against any of the Released Parties or any of their respective assets or property* on account of any Claim or other debt or liability that is discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind *against any of the Released Parties or any of their respective assets or property* on account of any Claim or other debt or liability that is discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due *from any of the Released Parties or any of their respective assets or property*, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan.

(Commonwealth Plan § 88.3 (emphasis added).)

13.     The lack of clarity for PREPA releases runs in the other direction, too. If PREPA were construed to be a Related Party to the Commonwealth (for the reasons set forth above), then PREPA could also be construed as one of the parties granting the expansive Debtor releases contained in Section 88.5 of the Commonwealth Plan. Section 88.5 provides:

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, and for good and valuable consideration, each of the Debtors and Reorganized Debtors, the Disbursing Agent and *each of the Debtors' and Reorganized Debtors' Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties* from any and all Claims or Causes of Action that the Debtors, Reorganized Debtors, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims or otherwise are based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event or other circumstance relating to the Title III Cases, the Debtors taking place or existing on or prior to the Effective Date, and/or any Claim, act, fact, transaction, occurrence.

(Commonwealth Plan § 88.5 (emphasis added).)

14.     Section 88.5's release potentially covers PREPA's claims against the Commonwealth, as well as any other party falling within the vague scope of the term "Released Parties"—and, thus, has potentially significant ramifications on the value of PREPA's assets and pledged revenues. PREPA should not be giving a debtor plan release like the one in Section 88.5

to anyone until its Title III Plan is confirmed and goes effective, and the Commonwealth Plan should be clarified so as to avoid any intended or unintended crossover releases if the Oversight Board wishes to proceed with the Commonwealth Plan first.

15.    To address its concerns, the PREPA Bond Trustee has suggested that the Oversight Board add the following language to the Commonwealth Plan:

> For the avoidance of doubt, nothing in the Plan or Confirmation Order shall release, discharge or enjoin any Claims or Causes of Actions arising from or related to the PREPA Bonds, including any monoline insurance pertaining thereto and PREPA is not releasing any Claims or Causes of Action against any Entity. Claims and Causes of Action arising from or related to the PREPA Bonds, and releases by and against PREPA and its Assets shall be addressed in PREPA's Title III case, including in any plan of debt adjustment that may be filed therein.

16.    If the Oversight Board intends for anyone, including the Commonwealth itself, to receive a release of Claims and Causes of Action related to the PREPA Bonds, then the Disclosure Statement should include appropriate disclosures so that PREPA Bondholders can evaluate the Commonwealth Plan in the absence of certainty regarding the outcome of PREPA's Title III case.

17.    The PREPA Bond Trustee will seek to consensually resolve the above-described problems in advance of the hearing on the adequacy of the Disclosure Statement.

18.    The above objections are limited to the adequacy of information in the Disclosure Statement and all rights and remedies with respect to the Commonwealth Plan are expressly reserved.

**WHEREFORE**, the PREPA Bond Trustee respectfully requests that the Court require the clarification and limitations to the scope of releases affecting the PREPA Bonds as described herein as a condition to its approval of adequacy or the information in the Disclosure Statement.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 15th day of June, 2021.

**WE HEREBY CERTIFY** that on this same date a true and exact copy of this motion was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of

record. Also, a copy of this document will be: (i) served via electronic mail or U.S. mail to all case participants; (ii) filed with the United States District Court, Clerk's Office, 150 Ave. Carlos Chardon Ste. 150, San Juan, P.R. 00918-1767; and (iii) served upon the Office of the United States Trustee, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, P.R. 00901, and a further Certificate of Service will be filed with the Court.

Respectfully submitted,                    Respectfully submitted,

**RIVERA, TULLA AND FERRER, LLC**          **MASLON LLP**

                                           By: /s Clark T. Whitmore
/s Eric A. Tulla                               Clark T. Whitmore (admitted *pro hac vice*)
Eric A. Tulla                                  John Duffey (admitted *pro hac vice*)
USDC-DPR No. 118313
Email: etulla@ riveratulla.com             90 South Seventh Street, Suite 3300
                                           Minneapolis, MN 55402
/s Iris J. Cabrera-Gómez                   Telephone: 612-672-8200
Iris J. Cabrera-Gómez                      Facsimile: 612-672-8397
USDC-DPR No. 221101                        E-Mail:   clark.whitmore@maslon.com
Email: icabrera@riveratulla.com                      john.duffey@maslon.com

Rivera Tulla & Ferrer Building             **ATTORNEYS FOR U.S. BANK NATIONAL
50 Quisqueya Street                        ASSOCIATION, IN ITS CAPACITY AS
San Juan, PR 00917-1212                    TRUSTEE**
Tel: (787)753-0438
Fax: (787)767-5784 (787)766-0409