IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>Debtor | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>Jointly Administered |

**OBJECTION TO DISCLOSURE STATEMENT**

**TO THE HONORABLE COURT:**

COME NOW, Salud Integral de la Montaña, Inc. (SIM), through its undersigned attorney and respectfully states as follows:

**I. LACK OF AUDITED FINANCIAL STATEMENTS**

1. The Financial Oversight and Management Board filed the latest version of the Disclosure Statement and Plan of Adjustment for debtors in this case. Objections were to be filed no later than June 15, 2021, at 5 pm.

2. Congress made clear as to Chapter 11 that "[t]he key to the consolidated chapter is the disclosure statement.[1]" Moreover, Collier's states that the Court should consider, in addition to the elements of 11 U.S.C. § 1125, the complexity of the case[2]. Also, the Fifth Circuit, in *In Re Cajun Electric Power Co-op, Inc.*, 150 F.3d 503, 518 (5th Cir. 1998), also opined that the legislative history of section 1125 indicates that the information required by the disclosure statement will be governed by the circumstances of the case. PROMESA section 301 adopted 11 U.S.C. § 1125. Subsection a(1) states:

> "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information

3. At page 4 of the Disclosure Statement, the Board states in capital letters, underlined and bold:

> **ORIGIN OF FINANCIAL INFORMATION. ALL FINANCIAL INFORMATION HEREIN IS BASED ON DATA THE OVERSIGHT BOARD HAS EITHER RECEIVED FROM THE COMMONWEALTH AND ITS INSTRUMENTALITIES, OR THAT IS PUBLICLY AVAILABLE. AS OF THE DATE OF THIS DISCLOSURE STATEMENT,**

---

[1] H.R. Rep. No. 95-545, 95th Cong. 1st Sess., 226 (1977).
[2] Collier's On Bankruptcy, ¶ 1125.01[3], page 1125-5 (16th Edition).

**THE COMMONWEALTH HAD NOT YET PUBLISHED AUDITED FINANCIAL STATEMENTS FOR ITS 2018, 2019, AND 2020 FISCAL YEARS. IN SOME CASES, SUCH AS FOR PENSION LIABILITIES AND DETERMINATIONS OF AVAILABLE CASH, THE OVERSIGHT BOARD RETAINED EXPERTS TO HELP VERIFY AND UNDERSTAND THE DATA. ACCORDINGLY, WHILE THE OVERSIGHT BOARD HAS USED ITS BEST EFFORTS TO PROCURE ACCURATE AND COMPLETE INFORMATION, IT IS LIMITED TO USING THE COMMONWEALTH'S SYSTEMS AND DATA AS ITS SOURCES AND CANNOT INDEPENDENTLY VOUCH FOR THE CORRECTNESS OF SUCH DATA. THIS DISCLOSURE STATEMENT AND THE ECONOMIC AND FINANCIAL INFORMATION PROVIDED HEREIN HAVE NOT BEEN APPROVED BY THE COMMONWEALTH'S FISCAL AGENT, THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY.**

4. Similarly, at page 2 of the 2021 Fiscal Plan certified by the Board, it states:

Accordingly, the Oversight Board cannot express an opinion or any other form of assurance on the financial statements or any financial or other information or the internal controls of the Government and the information contained herein. . . . This 2021 Fiscal Plan is directed to the Governor and Legislature of Puerto Rico based on underlying data obtained from the Government. No representations or warranties, express or implied, are made by the Oversight Board with respect to such information.

5. The fact that the Oversight Board cannot provide assurance of the reliability of the information is contrary to the spirit of PROMESA. Section 206 requires the Board to determine that the entity has "adopted procedures necessary to deliver timely audited financial statements". Also, Section 405(m)(5)(B), states:

(B) The stay is limited in nature and narrowly tailored to achieve the purposes of this Act, including to ensure all creditors have a fair opportunity to consensually renegotiate terms of repayment based on **accurate financial information that is reviewed by an independent authority** or, at a minimum, **receive a recovery from the Government of Puerto Rico equal to their best possible outcome absent the provisions of this Act**. (Bold added)

6. The 2017-2020 audited financial statements are missing. The Board states it cannot certify the accuracy of the financial information provided by the Commonwealth. In addition, if it cannot certify as to the accuracy of the information, the Best Interest Report relies on

3

information provided by the Board, its experts and attorneys. See page 6 of Best Interest Report. How can then an informed decision be made as to the plan of adjustment with no certainty of the authenticity or reliability of the information provided?

## II. LACK OF ADEQUATE INFORMATION AS TO CASH ACCOUNTS

7. At pages 133-143 of the Disclosure Statement, there is a discussion and attempted explanation as to the availability of funds in different Commonwealth accounts. These pages make reference to an IFAT Report by Duff & Phelps which is not included in the Disclosure statement but is available here https://drive.google.com/file/d/1vmlYSa04QvgUcw5gvrnHBZznyPxbBggg/view In addition, the aforementioned pages of the Disclosure Statement attempt to update the information on said accounts. See also, page 10 of the Best Interest Test Report, Exhibit N of the Plan of Adjustment.

8. The IFAT report, at page 5, states

> The results of legal due diligence performed regarding AH claims about bank account restrictions reflected in Table 7 at page 21, and as further supported by Appendix C-11, indicate that the majority of AH provided supporting documentation which was satisfactory to establish the Restriction.

9. Neither the IFAT report nor the Disclosure statement provide the documentation upon which Duff & Phelps based the aforesaid statement. Neither is the legal reasoning for said conclusion anywhere SIM searched. In addition, the legal reasoning in the Best Interest Report is also lacking[3]. Without the documentation or the legal reasoning as to the restricted funds, an average investor cannot make an informed decision.

## III. SECTION 205 RECOMMENDATIONS

10. At pages 170-174 of the Disclosure statement, the Board lists a large number of recommendations it made to the Commonwealth in the year 2020. It does not detail, however,

---

[3] The report states that it is in Appendix 5 but the information is not there.

which, if any, of these recommendations have been adopted, which the Commonwealth has rejected or decided to adopt at a later date. Also, the Disclosure statement fails to detail which of these recommendations was adopted by the 2021 Fiscal Plan and therefore are mandatory pursuant to PROMESA section 201(b)(1)(K). This is especially important given Board statement at page 207 of the Disclosure statement "The Government has struggled to report on reform progress in a timely and comprehensive

manner."

11. In addition, the Disclosure Statement does not enumerate the previous Board recommendations that the Commonwealth has declined to adopt, for example, amendments to law 80 and to donate WIPR TV station to a local non-profit institution in PR. This information is important for an investor to be able to judge the Commonwealth's willingness to put into effect the enumerated recommendations.

12. Moreover, at page 296-297 of the Disclosure Statement, the Board summarizes the findings of the Kobre & Kim report on Budgeting and Accounting. Further in the Disclosure statement, at page 303, it lists the report's recommendations as to budget. It fails, however, to explain what changes, if any, has the Commonwealth put into effect to prevent this from happening again or which recommendations were put into effect. This is important since the Board will not be in place during the life of the plan of adjustment and payment of creditors.

13. The implementation of reforms is vital to the future of the Commonwealth. As an expert on Federal Bankruptcy, David Skeel, argued, "[f]rom a purely functional perspective, governance reform is even more essential to an effective Chapter 9 municipal bankruptcy than it is in Chapter 11, since at least some stakeholders in insolvent municipalities are more dependent

5

on those entities than are stakeholders in insolvent firms.[4]" Given the above, the Disclosure Statement lacks the necessary information on reforms.

## IV. THIRD PARTY PROFESSIONALS AND VENDORS

14. At pages 306-308 of the Disclosure Statement, the causes of action against Professionals, Personnel and Vendors are discussed. There is no discussion as to the stage in which this litigation is, although the proceeds will be used to pay some creditors. There is no information, however, of how much money has been collected[5] or the stage of the majority of the cases.

15. Also, at pages 433-36, the Disclosure statement discusses the Avoidance Action Trust to handle the continuation of the litigation. This Trust, however, will be create after the plan of adjustment is approved. Hence, the creditor has not way to know the nature of the Trust or who will chair it. This is important information for a creditor to vote for the plan and it is not available.

## V. DEMOGRAPHICS AND HEALTH CARE

16. Demographics are vital to the plan of adjustment. Less population, less tax collection. The certified fiscal plans have predicted a continued decrease of population. The 2021 Fiscal Plan, at page 301, states that the PR population was approximately 2,928,000, but the 2020 census places it at 3,285,874, ttps://www.census.gov/quickfacts/PR This is around a 11% discrepancy. This discrepancy, which was known at the time of the filing of the Disclosure Statement, was not

---

[4] Clayton P. Gillette and David Skeel, "Governance Reform and the Judicial Role in Municipal Bankruptcy" Yale Law Journal, 125:1150-1237, at page 1152 (2016). But see, Disclosure Statement, at page 495 "[t]here is a risk, however, that the Legislature or Governor refuse to implement these reforms, which could jeopardize the ability to achieve the savings and surplus projected by the Fiscal Plan."

[5] In the vendors litigation, there have been motions to authorize settlement but there is no information as to how much has been expended in attorneys, experts and other expenses.

6

mentioned. It simply states at page 493; "[a]fter certification of the 2021 Fiscal Plan, the US Census Bureau released 2020 Census population figures. While the Census has yet to produce detailed projections by age and other factors, the differences between 2020 Census population figures for Puerto Rico and the current Fiscal Plan projections may result in material changes to the Fiscal Plan surplus projections."

17. As to Federal Funds, are vital component of the Commonwealth's budget, the Board stated, inter alia, at page 494; "[t]he projections are also built on current legislation and federal policies governing the use of these funds." This statement and the rest of the page, make no mention of the Biden administration's plan to provide 100% parity to PR in Federal Funding. Not only does the Disclosure Statement fail to mention this, but it also fails to mention the litigation of *US v. Vaello*, pending now at the Supreme Court. In that case, the First Circuit decided that Congress had no rational basis for discriminating against the residents of Puerto Rico as to Supplemental Security Income. Although the Supreme Court could reverse the First Circuit, it could also affirm it or go further and reverse the so called Insular Cases which created a false distinction between incorporated or unincorporated territories.

18. In addition, the Disclosure Statement fails to mention two other cases of great importance as to Federal funding, to wit, *Peña-Martinez v. USDHHS*, where Federal Judge Young determined that the Congress had no rational basis to discriminate against residents of Puerto Rio in Supplemental Security Income program, the Supplemental Nutrition Assistance Program and the Medicare Part D Low-Income Subsidy program. This case is pending in the First Circuit Court of Appeals and is likely stayed pending decision on *Vaello*.

19. The Disclosure Statement makes no mention of *Salud Integral en la Montaña v. USA*, 18-1045, before Judge Gustavo Gelpí in Puerto Rico. Plaintiff alleges that Congress has no

7

rational basis to discriminate against the residents of Puerto Rico in Medicare[6] or the State Children's Health Insurance Program[7]. The case is stayed pending the *Vaello* decision. All of these decisions could have an expansive impact in the availability of federal funds in Puerto Rico and hence should be mentioned and discussed.

**VI. ACT 154 AND OTHER TAXES**

20. The Disclosure Statement discusses the importance of the Act 154 excise tax for the Commonwealth. See pages 92, 109-110, 126, and 499. The Disclosure Statement, however, continuously states that the IRS has voiced objections to it and that the Digital Service Taxation may reduce it. It goes further to say that "[t]here is no assurance these efforts will lead to the successful development and implementation of a reform process that replaces revenues from Act 154 on a timely or substantive basis."

21. There is no information, however, as to what these efforts by the Commonwealth to maintain Act 154 are or what the US Treasury has responded. There is no information on what contingency plans the Commonwealth may, or may not have, to deal with the elimination of Act 154 income. Without this information, the average investor has no way of determining whether 20% of the Commonwealth's income will continue in the next years.

22. Moreover, the Disclosure Statement has no information on the possible impact of the G-7 agreement of a minimum 15% tax for all their jurisdictions. This effort was spearheaded by the Biden administration and could mean the end of federal tax exemption in PR and amend Act 154. This is another important issue that an average investor should know.

---

[6] This is important, see page 240 of the Fiscal Plan of 2021, where Medicaid stays the same.
[7] Both *Peña Martínez* and *Salud Integral* cases were reported by the press and were mentioned by the Department of Justice in its petition for certiorari in *Vaello*.

8

## VI. ESSENTIAL SERVICES

23. The Disclosure Statement has no information on the definition of essential services. PROMESA section 201(b)(1)(B) requires that the Fiscal Plan "ensure the funding of essential public services." Section 314(b)(7) requires that the Plan of Adjustment be consistent with the Fiscal Plan. It is an obvious conclusion that in order to determine the consistency, one must see if essential services are being "adequately funded" and in order to do so, one must know what are essential services. The Disclosure Statement lacks any definition and hence it is not informative. The definition is especially important given that during the pandemic, for several months the Government sent all non-essential employees home.

## VII. EXECUTIVE BRANCH SUPPORT OF THE PLAN OF ADJUSTMENT

24. The Disclosure Statement mentions that the Commonwealth Government will cooperate with the implementation of reforms[8] and that the Legislature may not approve laws related to the Plan of Adjustment[9]. It does not, however, explain or mention whether the Executive Branch of the Government of Puerto Rico supports the Plan of Adjustment.

25. The Disclosure Statement does mention the election of Governor Pierluisi and that he said the Commonwealth would not support pension cuts. The Disclosure Statement, however, does not state or discuss whether the Executive will otherwise support the plan of adjustment or whether it will oppose the Disclosure Statement or plan due to the cuts in pensions. Since the Executive is the entity of the Commonwealth that will execute the plan, this is very pertinent information to the creditors.

---

[8] See page 495 of the Disclosure Statement.
[9] See page 503 of the Disclosure Statement.

WHEREFORE: SIM requests from the Honorable Court that it deny the approval of the disclosure statement as it is.

Respectfully submitted on this 15th day of June, 2021.

CERTIFY: That on this same day, the ECF system sent a copy of this motion to all parties in this litigation.

/s John E. Mudd
John E. Mudd
Bar Number: 201102
Attorney for Plaintiffs
LAW OFFICES JOHN E. MUDD
P. O. BOX 194134
SAN JUAN, P.R. 00919
(787) 413-1673
Fax. (787) 753-2202
johnmuddlaw@gmail.com