**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.,*<br><br>　　　　　　　　　　Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-03283 (LTS)<br><br>(Jointly Administered) |

**OBJECTION OF U.S. BANK AS SUCCESSOR TRUSTEE FOR THE PRIFA RUM TAX BONDS TO AMENDED JOINT MOTION OF THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY FOR AN ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) FIXING VOTING RECORD DATE, (III) APPROVING CONFIRMATION HEARING NOTICE AND CONFIRMATION SCHEDULE, (IV) APPROVING SOLICITATION PACKAGES AND DISTRIBUTION PROCEDURES, (V) APPROVING FORMS OF BALLOTS, AND VOTING AND ELECTION PROCEDURES, (VI) APPROVING NOTICE OF NON-VOTING STATUS, (VII) FIXING VOTING, ELECTION, AND CONFIRMATION DEADLINES, AND (VIII) <u>APPROVING VOTE TABULATION PROCEDURES</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801)  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

JURISDICTION AND VENUE .................................................................................................... 2

BACKGROUND ............................................................................................................................ 3

OBJECTION ................................................................................................................................... 5

    I.       The Proposed Disclosure Statement Does Not Provide Adequate Information as Required by Section 1125 of the Bankruptcy Code ............................................................ 5

           a.      The Proposed Disclosure Statement Lacks Adequate Information Explaining the Role of Trustee In Implementing the Proposed Plan of Adjustment ..................... 7

                   (i)      Noticing and Distribution Obligations ..................................................... 7

                   (ii)     Payment of Fees to Trustee ...................................................................... 8

                   (iii)    Cancellation of Documents Pursuant to the Plan, Role of PRIFA Going Forward. ................................................................................................... 9

           b.      The Disclosure Statement Does Not Adequately Address Potential Outcomes of the Revenue Bond Litigation ............................................................................... 10

           c.      The Plan's Releases and Exculpations are Overly Broad and Do Not Provide Adequate Information on Parties to be Released/Exculpated .............................. 11

CONCLUSION ............................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re ACEMLA De Puerto Rico Inc.*,
 2019 WL311008 (Bankr. D.P.R. Jan. 22, 2019) ................................................................... 5

*In re Clamp-All Corp.*,
 233 B.R. 198 (Bankr. D. Mass. 1999) ............................................................................. 5, 6

*In re E. Maine Elec. Co-op., Inc.*,
 125 B.R. 329 (Bankr. D. Me. 1991) ..................................................................................... 6

*In re Ferguson*,
 474 B.R. 466 (Bankr. D.S.C. 2012) ..................................................................................... 6

*In re Ferretti*,
 128 B.R. 16 (Bankr. D.N.H. 1991) .................................................................................. 5, 6

*In re Lower Bucks Hosp.*,
 471 B.R. 419 (E.D. Pa. 2012) ............................................................................................ 12

*In re M.J.H. Leasing, Inc.*,
 328 B.R. 363 (Bankr. D. Mass. 2005) ............................................................................... 12

*In re Oxford Homes, Inc.*,
 204 B.R. 264 (Bankr. D. Me. 1997) ..................................................................................... 6

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
 81 F.3d 355 (3d Cir. 1996) ................................................................................................... 6

*The Financial Oversight and Management Board for Puerto Rico, v. Ambac Assurance*
 *Corporation et. al*,
 Case No. 20-00003 (D.P.R 2000) ...................................................................................... 10

**Statutes**

11 U.S.C. § 1125(a)(1) ................................................................................................................ 5

11 U.S.C. § 1125(b) .................................................................................................................... 5

11 U.S.C § 105(a) ...................................................................................................................... 11

**Other Authorities**

Fed. R. Bankr. P. 3016(c) .................................................................................................... 12, 13

U.S. Bank Trust National Association ("USBTNA" or the "Trustee") as successor trustee for the so-called "rum tax bonds" issued by the Puerto Rico Infrastructure Financing Authority ("PRIFA") hereby submits this objection (the "Objection") to the *Amended Joint Motion of The Commonwealth of Puerto Rico, the Employees Retirement System of the Government Of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* (Dkt. No. 16756) (the "Solicitation Procedures Motion")[2] and respectfully states as follows:

## PRELIMINARY STATEMENT

1.  Numerous objections to the adequacy of the Disclosure Statement, and potentially the underlying Plan itself, are being asserted by other parties representing majority holders of the PRIFA Bonds (as described below). This objection is limited to additional issues pertaining primarily to the Trustee's role in connection with the Plan, and the inadequacy of disclosure relating to those issues.[3]

2.  The Trustee objects on the basis that the Disclosure Statement (as defined below) fails to adequately address (i) the process for providing notices, voting solicitations and distributions to PRIFA bondholders, (ii) the role of and compensation of the Trustee, its agents

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Disclosure Statement and Solicitation Procedures Motion.

[3] Counsel for the Trustee reached out to counsel for the Financial Oversight and Management Board ("FOMB") to discuss these objections in April, 2021. While counsel for the FOMB acknowledged receipt of the outreach, no response or discussion occurred. The Trustee is happy to coordinate with FOMB to address the issues raised and incorporate appropriate language in an Amended Disclosure Statement and revised Solicitation Procedures.

1

and outside counsel both in terms of current fees and costs, and future fees and costs, incurred in connection with implementing those matters, and (iii) whether the Trustee is covered by the release and exculpation clauses of the Plan. Additionally, the Trustee believes the Disclosure Statement is inadequate in that it fails to describe the legal basis for a complete discharge and termination of obligations on account of Bonds issued by PRIFA in exchange for consideration under the Plan, which purports simply to resolve a claim against the Commonwealth. There is no discussion of the ongoing liabilities of PRIFA under the Bonds, including without limitation for payment of the Trustee's fees and costs and indemnity rights. Further, it is inadequate in its description of the procedural method for terminating and cancelling the Bonds in exchange for the consideration under the Plan, nor does it describe what will happen if the Bondholders and U.S. Bank succeed in their litigation regarding the Objection to the claims filed by the Trustee and others against the Commonwealth. Lastly, further clarification is required regarding the overly broad release provisions of the Plan, such as by specifying what claims by or against the Commonwealth, other non-debtor governmental entities, or third parties -- which could impact the rights of PRIFA, the Trustee and the PRIFA bondholders -- are purportedly released under the Plan. Until the Disclosure Statement and the Solicitation Procedures Motion adequately address these aspects as they relate to the Trustee, the Disclosure Statement and Solicitation Procedures are inadequate and should not be approved.

## JURISDICTION AND VENUE

3. The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Motion pursuant to PROMESA section 306(a).

4. Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

5. USBTNA serves as successor trustee to the PRIFA Special Tax Revenue Bonds, Series 2005A, Series 2005B, Series 2005C, and Series 2006 (collectively the "PRIFA Bonds"), totaling approximately $2 billion in outstanding principal, interest and accrued fees and costs. The PRIFA Bonds are alleged to be secured by certain proceeds of U.S. rum sales tax revenues, which are paid annually to the Commonwealth, for the benefit of PRIFA and the PRIFA Bondholders. The Commonwealth has diverted those revenues and not paid them to PRIFA or to the Trustee since 2015. Substantial litigation is pending before this Court in connection with claims filed by the Trustee and other parties over entitlement to the past and future rum tax revenues.

6. On May 3, 2017, the Financial Oversight Management Board of Puerto Rico (the "FOMB") filed a petition commencing a proceeding on behalf of the Commonwealth of Puerto Rico (the "Commonwealth") under Title III of PROMESA. On May 21, 2017, the FOMB filed a petition commencing a proceeding on behalf of the Employees Retirement System ("ERS") under Title III of PROMESA. On September 27, 2019, the FOMB filed a petition commencing a proceeding on behalf of PBA under Title III of PROMESA (together with the Commonwealth's Title III Case and ERS's Title III Case, the "Title III Cases"). No Title III case or other proceeding under PROMESA has been filed with respect to PRIFA.

7. On May 18, 2018, USBTNA, as successor trustee for the PRIFA Bonds, filed a Master Proof of Claim against the Commonwealth, and asserted claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the bond documents and all other amounts owed on account of any

3

and all claims the Trustee had or may have relating to the outstanding bond obligations, whether known or unknown against the Commonwealth and all those purporting to act on the Commonwealth's behalf, including claims for or based upon the breach or violation of the trust agreement or any covenants or other contractual obligations contained in the trust agreement or claims arising from the improper diversion of the Pledged Revenues or any other property securing the payment of the bonds as a matter of relevant state or federal law. [Claim No. 13386].

8. On May 11, 2021 the FOMB filed the *Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.,* [ECF No. 16740] (as the same may be amended or modified, including all exhibits and attachments thereto, the "Plan") and the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.,* [ECF No. 16741] (as the same may be amended or modified, including all exhibits and attachments thereto, the "Disclosure Statement").

9. Class 58 under the Plan addresses "all claims against the Commonwealth arising from or related to the Commonwealth's retention of certain funds historically transferred to PRIFA pursuant to the provisions of the Commonwealth Constitution, any statute, regulation or executive order including, without limitation, claims related to the rights or obligations arising under (a) Section 8 of Article VI of the Commonwealth Constitution … and (b) the indebtedness issued by PRIFA pursuant to that certain Trust Agreement, dated as of October 1, 1988, between PRIFA and U.S. Bank Trust National Association, as successor trustee." The Disclosure Statement goes on to estimate the (disputed) Claim amount for the PRIFA Bonds at $1,928,867,051.00, and says that holders of an Allowed CS/PRIFA Rum Tax Claim will receive their pro rata share of the CW/PRIFA Rum Tax Clawback Recovery; that the Claim is impaired

4

by the Plan; and holders are entitled to vote to accept or reject the Plan. *See* Disclosure Statement, pp. 413-414.

10. On May 13, 2021, the FOMB filed the Solicitation Procedures Motion. USBTNA submits this objection in accordance with the procedures established in that motion.

**OBJECTION**

**I.   The Proposed Disclosure Statement Does Not Provide Adequate Information as Required by Section 1125 of the Bankruptcy Code**

11. Section 1125(b) of the Bankruptcy Code conditions the solicitation of votes on a proposed plan upon the proponent's disclosure of "adequate information," which is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information . . . .

11 U.S.C. § 1125(a)(1). The statutory obligation to provide adequate information in a disclosure statement to parties in interest "is a key feature of the reorganization provisions of Chapter 11." *In re Clamp-All Corp.*, 233 B.R. 198, 208 (Bankr. D. Mass. 1999). To be "adequate," information included in a disclosure statement must be "clear and comprehensible"—that is, designed to succinctly inform a creditor "what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). Therefore, a disclosure statement cannot be approved if it does not contain adequate information. *In re ACEMLA De Puerto Rico Inc.*, 2019 WL311008 *17-18 (Bankr. D.P.R. Jan.

5

22, 2019) (denying approval of disclosure statement because statement failed to meet adequate information requirement).

12. One of the purposes of the disclosure statement is to provide creditors with sufficient information to cast an informed vote on the proposed plan of reorganization. *In re Ferretti*, 128 B.R. at 18. For this reason, it is crucial that the debtor provide a disclosure statement that is truthful and comprehensive in its scope. *In re Ferguson*, 474 B.R. 466, 471 (Bankr. D.S.C. 2012) (internal citations omitted). Additionally, it is of the utmost importance that the debtor's disclosures be and clear and understandable to the average creditor. *In re Ferretti*, 128 B.R. at 19. "Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996). If a disclosure statement is not honest or provided in good faith, or "displays factual facial deficiencies," it should not be approved. *In re E. Maine Elec. Co-op., Inc.*, 125 B.R. 329, 333 (Bankr. D. Me. 1991).

13. The standard for what constitutes adequate disclosure is flexible and determined on a case-by-case basis by the bankruptcy court, *In re Oxford Homes, Inc.*, 204 B.R. 264, 269 (Bankr. D. Me. 1997), however the disclosure must provide sufficient information that enables all claim holders to make "an informed judgment regarding whether to vote for or against a reorganization plan." *In re Clamp-All Corp.*, 233 B.R. at 204. At a minimum, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. at 19. Additionally, such disclosures often facilitate the negotiation process between the debtor and its creditors. *See Century Glove*, 860 F.2d at 100. As described below,

the Disclosure Statement as it currently exists cannot be approved by this court, as it lacks crucial information concerning the implementation of the Plan as it pertains to holders of the PRIFA Bonds and with respect to the rights and role of the Trustee, and thus fails to meet the requirements of section 1125.

      **a. The Proposed Disclosure Statement Lacks Adequate Information Explaining the Role of Trustee In Implementing the Proposed Plan of Adjustment**

          **(i)     Noticing and Distribution Obligations**

14.     The Disclosure Statement and the Solicitation Procedures Motion do not provide guidance on the noticing and distribution obligations of the Trustee for the PRIFA Bonds whose holders will receive distributions under the Plan. The Solicitation Procedures Motion states that publicly traded securities that are not issued to a specific party are generally held in the name of Cede & Company, which holds the Bonds on behalf of the Nominees of Depository Trust and Clearing Corporation ("DTC") and those nominees hold the securities in "street name" on behalf of the Beneficial Owners and other brokerage institutions. *See* Solicitation Procedures Motion, p. 17. It further states that the Debtors intend to obtain from DTC a listing of the Nominees and cause the mailing of Solicitation Packages to the Nominees with instructions to cause the Solicitation Packages to be forwarded immediately to the Beneficial Owners of the Bonds. The Trustee is not aware of any communications with DTC regarding the Debtors delivering such Notices to DTC and whether such delivery will require the participation of the Trustee. Without further guidance to the Trustee on the noticing obligations with respect to the Disclosure Statement, Voting, and Confirmation process, the Disclosure Statement is inadequate and should not be approved.

15.     Section VI.J of the Disclosure Statement provides that "…initial distributions for holders of the following claims may be made to the trustee or fiscal agent, as applicable, for such

7

obligation in accordance with the applicable governing documents for Allowed Bond Claims." "Allowed Bond Claims," while not specifically defined in the Disclosure Statement or the Plan, appears to apply to an allowed Claim on account of a GO Bond, a PBA Bond, a CW Guarantee Bond Claim, or an ERS Bond. The Disclosure Statement and Plan are silent on the method of distribution for the Class 58 CW/PRIFA Rum Tax Claims, for which U.S. Bank as successor trustee filed a proof of claim on behalf of PRIFA Bond holders. The Disclosure Statement and Plan are similarly silent on the Trustee's role in facilitating the CW/PRIFA Rum Tax Clawback Recovery, as well as the Trustee's role, if any, in managing the Clawback CVIs.

16. Additionally, the Disclosure Statement does not provide any information on whether the Trustee for the PRIFA Bonds is included in the parties to be released and exculpated under the Plan. Until this information is provided, the Disclosure Statement lacks sufficient information and should not be approved.

### (ii) Payment of Fees to Trustee

17. Section VI.J provides for the payment of trustee and fiscal agent fees, stating:

> The distributions to be made pursuant to the Plan are intended to be inclusive of any and all trustee and paying agent fees and expenses which may be allegedly due and owing by the Commonwealth, ERS, and PBA with respect to amounts discharged pursuant to the Plan. The Plan does not, nor shall it be construed to, limit the rights of such trustees and paying agents to payment of such amounts from the distributions to be made pursuant to the Plan, including the imposition of any trustee or paying agent lien upon such distributions.

This version of the Disclosure Statement does seem to encompass, nor does it provide instructions by which the PRIFA trustee or can assert the amount of outstanding fees and costs to be paid pursuant to the Plan. While the *Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF 15976], also lacked sufficient detail related to the payment of trustee and fiscal agent fees, it did provide a methodology by which trustees and

8

fiscals agents could submit invoices for outstanding costs and fees to the Commonwealth for payment. That methodology has been completely removed from the current Plan and Disclosure Statement without explanation. Additionally, neither the Disclosure Statement nor the Solicitation Procedures Motion discuss the payment of costs associated with the distribution and noticing procedures in the Plan confirmation process. Furthermore, the Disclosure Statement and Plan do not discuss whether and how the Trustee can assert outstanding amounts of future fees and costs. The Disclosure Statement also fails to mention whether outstanding fees and costs of outside counsel to the Trustee will be paid, and if so, the manner in which those fees and costs must be asserted against the Commonwealth. This information should be included in a revised disclosure statement before a disclosure statement may be approved. Without this information, the disclosure statement is inadequate.

> **(iii) Cancellation of Documents Pursuant to the Plan, Role of PRIFA Going Forward.**

18. The Disclosure Statement does not adequately explain how the Plan cancels or finally terminates the obligations of PRIFA under the PRIFA Bonds, in the context of resolving a claim filed against the Commonwealth, nor does it indicate if the Trustee will be covered by the Releases and Exculpations under the Plan, as are other Trustees.

19. To the extent the Plan impacts bonds issued by non-Debtor entities, such as PRIFA, the Disclosure Statement is inadequate in describing what rights survive with respect to those Bonds. Section VI.J of the Disclosure Statement provides for the cancellation of all instruments and documents of the PBA Bonds, ERS Bonds and the GO Bonds. Specifically, the Disclosure Statement states "[t]he Debtors and the applicable trustee, paying agent, or fiscal agent will have no continuing obligations or duties and responsibilities" under the specified bonds. Disclosure Statement Section VI.J. The Disclosure Statement does not state whether

9

similar cancellation measures will be taken with regard to PRIFA Bonds, or how the original instruments and documents will be treated after the distribution of the CW/PRIFA Rum Tax Clawback Recovery to bondholders. It does not appear that PRIFA as an entity is liquidated, and PRIFA has ongoing obligations to the Trustee with respect to compensation and indemnity, as to which there is no discussion. As with other entities, provisions of the PRIFA Trust Agreement must continue in full force and effect to the extent necessary to enable the Trustee to allow holders of the PRIFA Bonds to receive distributions under the Plan, allow and preserve the Trustee's right to receive and make distributions under the Plan to its respective holders, allow the Trustee to enforce any obligations owed to it individually under the Plan, preserve the Trustee's rights to compensation and indemnification, including, if applicable, in their capacities as paying agent or transfer agent under the Trust Agreement, as against any money or property distributable to holders of the PRIFA Bonds, and preserve all rights, including rights of enforcement, of the Trustee against certain parties, including but not limited to claims for indemnification or contribution from holders of the PRIFA Bond pursuant and subject to the relevant trust agreement. Without this information, the Disclosure Statement is incomplete and cannot be approved.

### b. The Disclosure Statement Does Not Adequately Address Potential Outcomes of the Revenue Bond Litigation

20. The Disclosure Statement explains that each holder of a Class 58 CW/PRIFA Rum Tax Claim will receive its pro rata share of the CW/PRFA Rum Tax Clawback Recovery, comprised of 27.0% of the Clawback CVIs. *See* Disclosure Statement, p. 414. The Trustee's claim related to the PRIFA Bonds is currently under review in the adversary proceeding *The Financial Oversight and Management Board for Puerto Rico, v. Ambac Assurance Corporation et. al,* Case No. 20-00003 (D.P.R 2000). The litigation is ongoing and the claims subject to the

10

litigation have not yet been resolved. While the ongoing litigation is discussed, the Disclosure Statement does not address how the PRIFA claims will be treated if the Trustee and other PRIFA bondholders are successful in establishing the full extent of their claims against the Commonwealth. The Disclosure Statement should provide an explanation of whether and how the claims in Class 58 will be affected by the outcome of the Revenue Bond Adversary Proceedings. Until such details are provided, the Disclosure Statement is inadequate and cannot be approved.

       **c. The Plan's Releases and Exculpations are Overly Broad and Do Not Provide Adequate Information on Parties to be Released/Exculpated**

21.    Article LXXXVIII of the Plan, provides for the "Discharge and Release of Claims and Causes of Action." Specifically, " . . . all Claims or Causes of Action against the Released Parties . . . relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever . . ." are released under the Plan. The Disclosure Statement does not elaborate further on the discharge and release of claims and causes of action relating to the Title III Cases, the Debtors, and non-Debtor entities which may specifically impact the rights of the PRIFA bondholders and the Trustee, and does not make clear whether all claims related to the PRIFA Bonds against PRIFA and other entities are therefore discharged and released, and if so, on what basis.

22.    If the Commonwealth truly intends for the Plan to provides for a sweeping injunction barring claimants from bringing and enforcing claims against the Debtors and other non-Debtor parties, it must explain its decision as part of the Disclosure Statement. Without further explanation, the Disclosure Statement is inadequate and cannot be approved.

23.    A third party release, which discharges non-debtors from liability is not an act expressly provided for in the Bankruptcy Code or PROMESA. Section § 105(a) of the

11

Bankruptcy Code provides the bankruptcy court the power to issue any order that is appropriate or necessary to carry out the Plan, however using this section to grant releases must "involve an extraordinary exercise of discretion" by the court. *In re M.J.H. Leasing, Inc.*, 328 B.R. 363, 371 (Bankr. D. Mass. 2005).

24. Bankruptcy Rule 3016(c) states that "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the [Bankruptcy] Code, the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction." Fed. R. Bankr. P. 3016(c). These requirements are meant "to alert parties in interest that the plan proposes to restrict their rights in ways that ordinarily would not result from confirmation of a plan." *In re Lower Bucks Hosp.*, 471 B.R. 419, 460, n.62 (E.D. Pa. 2012) (citing Advisory Committee Note to Bankruptcy Rule 3016).

25. Section IV.W of the Disclosure Statement discusses the releases and exculpations of certain parties pursuant to the confirmation of the Plan. The Plan provides for extremely broad releases, including releases of "all instrumentalities, municipalities, public corporations and public agencies of the Commonwealth." *See* Plan, Art. I 1.248. As currently written, the scope of these releases is unclear. The provision does not provide specific information as to which entities are subject to the release, or the claims against these entities that are being released. In fact, the Plan and Disclosure Statement do not state clearly whether third-parties and non-debtors are included in these releases. Without this crucial information, it is impossible for bondholders to understand how their rights are impacted by the releases, which is the whole purpose of a Disclosure Statement.

12

26. In addition to being overly-broad and non-specific, the releases are difficult to understand and do not meet the requirements of Rule 3016. The release provisions are not bolded, underlined, italicized, or emphasized in any manner. There is also no reference to the releases in the table of contents in either the Disclosure Statement or the Plan. Instead, the release is included in the "Miscellaneous Provisions" section of the Disclosure Statement. Also, to fully understand the substance of the release provisions, a reader must consult numerous defined terms of the Plan, not the Disclosure Statement, making the provisions difficult to parse.

27. As currently presented, these releases are overly broad, convoluted, and fail to provide adequate information regarding the treatment of the claims against these entities. The Trustee and Bondholders are entitled to know the scope of the releases that the Commonwealth is proposing, as it affects their rights.

28. Therefore, the Disclosure Statement does not provide adequate disclosure as required by section 1125 with respect to the releases, and must be amended.

29. This Objection is submitted without prejudice to, and with a full reservation of rights by the Trustee to supplement or amend the Objection, and to submit further relevant information if necessary in connection with prosecution of the Objection, and all rights are reserved with respect to the assertion of any objections to confirmation of the Plan on any basis whatsoever, whether or not set forth herein.

## CONCLUSION

WHEREFORE, the Trustee for the PRIFA Bonds respectfully requests that this Court deny approval of the adequacy of the Disclosure Statement, and deny approval of the Solicitation Procedures Motion, until the objections raised above are adequately addressed.

Respectfully submitted,

Dated: June 15, 2021

By: *Eric A. Tulla*

**RIVERA, TULLA AND FERRER, LLC**
Eric A. Tulla
USDC-DPR No. 118313
Iris J. Cabrera-Gómez
USDC-DPR No. 221101
Rivera Tulla & Ferrer Building
50 Quisqueya Street
San Juan, PR 00917-1212
Tel: (787)753-0438
Fax: (787)767-5784
(787)766-0409
etulla@ riveratulla.com
icabrera@riveratulla.com

and

**HOGAN LOVELLS US LLP**
Robin E. Keller, Esq.
Ronald J. Silverman, Esq.
Pieter Van Tol, Esq.
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
robin.keller@hoganlovells.com
ronald.silverman@hoganlovells.com
pieter.vantol@hoganlovells.com
*Counsel to U.S. Bank Trust National Association*

14

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this same date a true and exact copy of this motion was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record. Also, a copy of this document will be: (i) served via electronic mail or U.S. mail to all case participants; (ii) filed with the United States District Court, Clerk's Office, 150 Ave. Carlos Chardon Ste. 150, San Juan, P.R. 00918-1767; and (iii) served upon the Office of the United States Trustee, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, P.R. 00901, and a further Certificate of Service will be filed with the Court.

By: *Iris J. Cabrera-Gomez*