# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS |

## OBJECTION OF VAQUERIA TRES MONJITAS, INC. TO DISCLOSURE STATEMENT

**To the Honorable Judge Laura Taylor Swain:**

Vaquería Tres Monjitas, Inc. ("VTM"), by and through its undersigned legal counsel, hereby files this objection ("Objection") to the Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. filed on May 11, 2021 [Docket No. 16741] (the "Disclosure Statement") and respectfully informs the Court as follows:

### Preliminary Statement

1. VTM submits this Objection to the Disclosure Statement because it is deficient in failing to provide sufficient and adequate information regarding the claims of VTM and the treatment of those claims under the Third Amended Plan of Adjustment [Docket No. 16740] (the "Plan").

2. As more full described below, on April 26, 2019, VTM timely filed a proof of claim logged as Claim No. 1960-2 ("VTM Claim")[2] asserting a non-

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17- BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

1

dischargeable claim in the amount of $20,388,628 plus interest. A copy of the VTM Claim is attached hereto as <u>Exhibit A</u>. The Disclosure Statement classifies the VTM Claim under Class 50; however, the Disclosure Statement states the incorrect amount of the VTM Claim, does not include the applicable interest on the VTM Claim, and does not specify that the claim is non-dischargeable.

## Background

3. On August 13, 2004 VTM and Suiza Dairy, Inc. ("Suiza" and together with VTM, the "Plaintiffs") filed a complaint in the United Stated District Court for the District of Puerto Rico ("USDC-PR") (Case 3:04-cv-01840-DRD and administratively consolidated with 3:08-cv-02380-DRD[3]). The basis for Plaintiffs' claims was a violation of the Takings Clause of the Constitution of the United States by implementing a regulatory confiscation of Plaintiffs' property without just compensation.

4. After several legal procedural steps in the case, the parties to the USDC-PR litigation, including the Secretary of the Department of Agriculture, Administrator of ORIL, VTM, Suiza, and the Secretary of Justice, reached a binding and non-appealable agreement and signed a "Final Settlement Agreement" (the "Settlement Agreement") dated October 29, 2013 (*see* Docket No. 2322) providing for, among other things:

> a. Fixing the "regulatory accrual due" to VTM and Suiza as of November 6, 2013 as follows:
>
> | | | |
> |---|---|---|
> | VTM | $ | 47,250,614.00 |
> | Suiza | $ | 123,389,024.00 |
> | **TOTAL** | **$** | **170,639,638.00** |
>
> And, that by applying a "combined adjusted equity" these amounts as of November 6, 2013 were:
>
> | | | |
> |---|---|---|
> | VTM | $ | 46,860,830.00 |
> | Suiza | $ | 105,788,360.00 |

---

[2] VTM also filed Claim No. 1963-1 and Claim No. 2689-1.
[3] VTM and Suiza are intervenors in case 3:08-cv-02380-DRD by P.R. Farmers Assocn. v. ORIL and the Department of Agriculture because the action raised issues pertaining to the Settlement Agreement (as defined below).

2

|  |  |  |
|---|---|---|
| **TOTAL** | **$** | **152,649,190.00** |

  b. Stating that the interest applicable to the payout of the regulatory accrual is the Federal Court post-judgment "legal rate."

  c. Enactment of Regulation 12, a copy of which is attached to the Settlement Agreement, with terms and conditions binding on ORIL and all market participants.

  d. Obligating the Government of Puerto Rico, through its instrumentalities, to contribute a total of $95 million to the "regulatory accrual payout" in the following time schedule:

    $50 millon – no later than December 31, 2014

    $15 millon – no later than December 31, 2015

    $15 millon – no later than December 31, 2016

    $15 millon – no later than December 31, 2017

5. By Order and Judgment entered on November 6, 2013, the USDC-PR approved and incorporated all the covenants of the Settlement Agreement (*see* Docket No. 2347, as amended at Docket No. 2351). The Order and Judgment further provides that the Commonwealth, the Puerto Rico Department of Agriculture and ORIL "shall require compliance with the Settlement Agreement by all of its agencies, departments, officials, employees, and their respective assigns and successors." *Id.* at para. 4.

6. On June 30, 2016, the Financial Oversight and Management Board (the "Oversight Board") was established pursuant to PROMESA section 101(b).

7. On May 3, 2017 (the "Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to section 304(a) of PROMESA, commencing a case under Title III thereof (the "Commonwealth's Title III Case"). Pursuant to PROMESA section 315(b), the Oversight Board is the Commonwealth's representative in the Commonwealth's Title III Case.

8. As of the Petition Date, the Government of Puerto Rico had paid only $33 millon of the amounts owing to VTM and Suiza under the Settlement Agreement, leaving a remaining debt to VTM alone of $20,388,628 plus interest.[4]

---

[4] The notes to the Commonwealth's financial statements, attached as Exhibit M-1 to the Disclosure Statement, state the following:

3

9. On May 11, 2021, the Oversight Board filed the Disclosure Statement and the Plan. The deadline by which parties must file objections to the Disclosure Statement is June 15, 2021.

10. The Disclosure Statement and the Plan define the Settlement Agreement as the "Dairy Producer Settlement" and define the claims of VTM and Suiza as the "Dairy Producer Claim." Below are the defined terms contained in the Plan and incorporated by referenced into the Disclosure Statement:

> **1.164 Dairy Producer Claim:** Collectively, the Claims of Suiza Dairy, Inc. and Vaquería Tres Monjitas, Inc. arising from and relating to the Dairy Producer Settlement, which, as of the Effective Date, shall be (a) allowed in the aggregate amount of Sixty-One Million Nine Hundred Ninety-Nine Thousand Nine Hundred Ninety-Nine Dollars ($61,999,999.00), and (b) allocated to Suiza Dairy, Inc. and Vaquería Tres Monjitas, Inc. in the amounts of Forty-Four Million Eight Hundred Thirty-Two Thousand One Hundred Ninety-Nine Dollars and Twenty Eight Cents ($44,832,199.28) and Seventeen Million One Hundred Sixty-Seven Thousand Seven Hundred Ninety-Nine Dollars and Seventy-Two Cents ($17,167,799.72), respectively.
>
> **1.165 Dairy Producer Settlement:** The Final Settlement Agreement and Memorandum of Understanding Between the Parties, filed October 29, 2013, in the litigation styled Vaquería Tres Monjitas, Inc. and Suiza Dairy, Inc. v. Naftali Soto Santiago, et al., Civil Case No.: 04-1840 (DRD), then pending in the United States District Court for the District of Puerto Rico.

11. The Disclosure Statement at section VI.E. describes the classification and treatment of the Dairy Producer Claims as follows:

a. **Class 50**: Dairy Producer Claims
b. **Classification**: Class 50 consists of claims of Suiza Dairy, Inc. and Vaqueria Tres Monjitas, Inc. arising from and relating to the Dairy Producer Settlement, which as of the Effective Date, will be (a) allowed in the aggregate amount of $61,999,999.00, and (b) allocated to Suiza Dairy, Inc.

---

Under the lawsuit Vaquería Tres Monjitas, Inc. et al v. Ramírez et al., certain plaintiffs alleged that the price rates set by the Administrator of the Office for the Regulation of the Dairy Industry (ORIL, as its Spanish acronym) did not afford local dairy processors Suiza Dairy and Vaquería Tres Monjitas the opportunity to make the reasonable profit to which they were constitutionally entitled. The parties reached a settlement agreement on October 29, 2013. Among other things, the Commonwealth, through certain of its instrumentalities, agreed to contribute the following amounts to certain regulatory accrual payments to be made pursuant to the settlement agreement: $50 million by December 31, 2014, $15 million by December 31, 2015, $15 million by December 31, 2016, and $15 million by December 31, 2017, for a total original amount accrued by the Commonwealth during fiscal year 2014 of $95 million. The case is now closed, but the court will retain jurisdiction in order to tend to any matter of compliance or breach of compliance regarding the settlement agreement. During fiscal year 2015, the Commonwealth paid $16 million, out of the required $50 million due on December 31, 2014. As of June 30, 2017, the Commonwealth has accrued $70 million for this legal contingency, $55 million of which, pertain to the portions not paid on December 31, 2016, 2015 and 2014, are recorded as due and payable within the general fund.

4

    and Vaquería Tres Monjitas, Inc. in the amounts of $44,832,199.28 and $17,167,799.92, respectively.

  c. **Treatment**: On the Effective Date, each holder of a Dairy Producer Claim will receive, in full consideration, satisfaction, release and exchange of such holders' Allowed Dairy Producer Claim, **an amount equal to 50% of such Allowed Dairy Producer Claim,** with such amount being payable by the Commonwealth in five (5) equal installments commencing on the Effective Date and each subsequent payment thereof being made on July 1 of each FY.

  d. **Voting**: Class 50 is Impaired by the Plan. Class 50 and each holder of an Allowed Dairy Producer Claim are entitled to vote to accept or reject the Plan.

  e. **Allowed Amount of Claims**: $61,999,999.00

  f. **Projected Recovery from CW**: 50%

## Basis For Relief

12. "Disclosure is the 'pivotal' concept in [a bankruptcy] reorganization." *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999) (quoting 5 COLLIER ON BANKRUPTCY, ¶ 1125.03 (15th ed. 1992)); *accord In re Oneida Motor Freight, Inc.*, 848 F.2d 414, 417 (3d Cir. 1988) (citing same).

13. "[T]he purpose of the disclosure statement is 'to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan.'" *In re County of Orange*, 219 B.R. 543, 560 (Bankr. C.D. Cal. 1997) (citing *Duff v. United States Trustee (In re California Fidelity, Inc.)*, 198 B.R. 567, 571 (9th Cir. BAP 1996)); *see also In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988) (denying approval of disclosure statement describing unconfirmable plan "to avoid . . . a wasteful and fruitless exercise" that would "further delay a debtor's attempts to reorganize").

14. Section 1125 of the Bankruptcy Code states that a plan proponent must provide holders of impaired claims with "adequate information". *See* 11 U.S.C. 1125(a) & (b); *see also In re Ferretti*, 128 B.R. 16, 18 (Bankr. D.N.H. 1991). The Bankruptcy Code defines "adequate information" as:

> [i]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

5

15. In determining whether a plan proponent has provided "adequate information" to creditors and parties in interest, the standard is not whether the failure to disclose information would harm creditors but whether "hypothetical reasonable investors receive such information as will enable them to evaluate for themselves what impact the information might have on their claims and the outcome of the case, and to decide for themselves what course of action to take." *In re Applegate Prop., Ltd.*, 133 B.R. 827, 831 (W.D. Tex. 1991); *see also Duff v. United States Trustee (In re California Fidelity, Inc.)*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996) (the purpose of the disclosure statement is "to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan").

16. By section 301(a) of PROMESA, in the Disclosure Statement, the Debtor must provide adequate information in sufficient detail "as far as is reasonably practical in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical creditor of the relevant class to make an informed judgment about the plan." 11 U.S.C. 1125(a)(l).

17. As treatises and one Court have sustained, ". . . the disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." Collier on Bankruptcy, Sixteenth Edition, 7 Collier on Bankruptcy P 1125.02.

18. The VTM Claim arose on account of a violation of the Takings Clause under the Fifth Amendment of the Constitution of the United States, applicable to the states, and thus to municipalities, through the Fourteenth Amendment. U.S. Const. amend. XlV. *In re City of Detroit*, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014) (citing *Dolan v. City of Tigard*, 512 U.S. 374, 383 (1994); *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 122 (1978)). It is well-settled that "[t]he Takings Clause applies to the Commonwealth of Puerto Rico through the Fourteenth Amendment." *Franklin California Tax-Free Tr. v. Puerto Rico*, 85 F. Supp. 3d 577, 610 (D.P.R. 2015), *aff'd*, 805 F.3d 322 (1st Cir. 2015), *aff'd*, 136 S. Ct. 1938 (2016) (citing *Fideicomiso De La Tierra Del Caño Martin Peña v. Fortuño*, 604 F.3d 7, 12 (1st Cir. 2010)).

19. The VTM Claim is therefore non-dischargeable. While Congress, through the enactment of the Bankruptcy Code, may impair contractual rights through the bankruptcy system, it cannot discharge constitutional claims under the Fifth Amendment or the Takings Clause. "The bankruptcy power, like the other great

6

substantive powers of Congress, is subject to the Fifth Amendment." *See In re: City of Detroit*, 524 B.R. 147, 270 (Bankr. E.D. Mich. 2014); *Security Indus. Bank*, 459 U.S. at 81.

20. Courts in the First Circuit have repeatedly affirmed that Congress may not dispossess a creditor of its preexisting property rights in violation of the Takings Clause. *See In re Garland Corp.*, 6 B.R. 456, 462 (B.A.P. 1st Cir. 1980); *In re Weinstein*, 164 F.3d 677, 685 (1st Cir. 1999); *In re Irving Tanning Co.*, 496 B.R. 644, 665 (B.A.P. 1st Cir. 2013).

21. VTM's property was taken by the Debtor, the just compensation for which was was $47,250,614 plus interest. This compensation is not of contractual nature which the Congress, PROMESA, the Board, or the Plan can impair and discharge. VTM's Claim is not just a judgment, it is VTM's Fifth Amendment right to just compensation for the Debtor's taking.

22. The Supreme Court of the United States has held that "a property owner found to have a valid takings claim is entitled to compensation as if it had been "paid contemporaneously with the taking"—that is, the compensation must generally **consist of the total value of the property when taken, plus interest from that time**." *Knick v. Town of Scott*, 139 S. Ct. 2162, 2170 (2019) [Emphasis added].

23. The Debtor's action in taking VTM's property entails the constitutional obligation to pay just compensation and, under the Fifth Amendment, no subsequent action can relieve it of the duty to provide just compensation. *Id*. at 2171.

24. In this Title III case, the Board is acting as a representative of the Debtor. 48 U.S.C. § 2175(b). That is, the Board acts like the local government. *See Fin. Oversight & Mgmt. Bd. For P.R. v. Aurelius Inv., LLC*, 140 S. Ct. 1649, 1662 (2020). Thus, the Board cannot adjust – or deny a claim which the Debtor (and the federal government) are prohibited from doing pursuant to the Fifth Amendment.

25. VTM has a constitutional right to full compensation regardless of any post-taking remedies. *See Knick*, 139 S. Ct. at 2170. This includes the Debtor's Title III PROMESA case. The VTM Claim is therefore non-dischargeable under the Plan.

## Objection

26. Here, the Disclosure Statement fails to provide the necessary disclosures to enable stakeholders to make an informed decision regarding the merits of the Plan. The Disclosure Statement fails to provide adequate information regarding the VTM

Claim insofar as it does not identify the correct base amount owed to VTM or the accrued interest.

27. In addition, the Disclosure Statement does not disclose that the the Dairy Producer Claims (which includes the VTM Claim) are non-dischargeable. Instead, the Disclosure Statement and Plan provide for the discharge and release of claims and other debts that arose prior to the Petition Date, including the Dairy Producer Claims. This failure is a fatal flaw in the Disclosure Statement. The Oversight Board recognizes that the allowance of a non-dischargeable claim not contemplated to be paid under the Plan may render the Plan unconfirmable. Article VIII.A. of the Disclosure Statement provides as follows:

> If any claimant is successful in prosecuting and obtaining an allowed (i) administrative expense claim, (ii) priority claim, (iii) secured claim, or (iv) non-dischargeable claim, and any such claim is not contemplated to be paid pursuant to the Plan, the Plan may not be confirmable. Various parties have asserted claims against the Debtors that they assert may be administrative expense claims, priority claims, secured claims, or non-dischargeable and that are not contemplated to be paid pursuant to the Plan. If such and other similar claims are ultimately allowed, the Plan may not be confirmable without amendments that may materially change its proposed distributions.

28. Thus, the Disclosure Statement does not contain adequate information as required under Bankruptcy Code section 1125. In accordance with the Notice of Filing of Disclosure Statement dated May 12, 2021 [Docket No. 16742], VTM suggests that the deficiencies in the Disclosure Statement be remedied by adding disclosures to the Disclosure Statement to reflect the accurate amount of the VTM Claim and that the VTM Claim is non-dischargeable.

29. Notice of this Objection shall be provided to the Office of the United States Trustee, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, P.R. 00901.

30. VTM reserves its rights to supplement and amend this Objection at any hearing relating to this Objection or the Disclosure Statement. VTM also reserves its rights to object to confirmation of the POA on any grounds as may be appropriate.

### Relief Requested and Conclusion

31. VTM prays that the Disclosure Statement be amended to provide the necessary disclosures relating to the VTM Claim as set forth herein. Absent such appropriate amendments, VTM respectfully requests that the Court deny approval of the Disclosure Statement and grant such other and further relief as may be just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 15th day of June 2021.

**WE HEREBY CERTIFY** that on this same date the foregoing Objection was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

| | |
|---|---|
| **G. CARLO-ALTIERI LAW OFFICES, LLC** | **EPSTEIN BECKER & GREEN, P.C.** |
| By: /s/ Gerardo A. Carlo-Altieri | By: /s/ Wendy G. Marcari |
| Gerardo A. Carlo-Altieri | Wendy G. Marcari (*pro hac vice admission pending*) |
| USDC PR-No. 112009 | |
| 254 Calle San José | 875 Third Avenue |
| Third Floor | New York, NY 10022 |
| San Juan, PR 00901 | |
| Tel: 787.247.6680 | Tel: 212.351.3747 |
| Fax: 787-919-0527 | Fax: 212.878.8600 |
| Email: gacarlo@carlo-altierilaw.com | Email: WMarcari@ebglaw.com |
| *Attorneys for Vaquería Tres Monjitas, Inc.* | *Attorneys for Vaquería Tres Monjitas, Inc.* |