# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | Case No. 17-BK-03283 (LTS) |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[1] | |

## JOINT OBJECTION OF UNDERWRITER DEFENDANTS TO DEBTORS' MOTION FOR AN ORDER APPROVING DISCLOSURE STATEMENT

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................. 3

       A.    The Adversary Proceeding............................................................................... 3

       B.    The Monoline Actions. ............................................................................... 5

       C.    The Third Amended Plan................................................................................ 6

       D.    The Third Amended Plan Could Extinguish The Defensive Rights........... 7

OBJECTION................................................................................................................ 11

    I.    The Disclosure Statement Fails To Provide Adequate Information With
        Respect To The Non-Consensual Releases Of The Defensive Rights. ............... 11

    II.    The Plan Cannot Be Confirmed If It Strips The Defensive Rights..................... 12

       A.    The Plan Cannot Bar Defenses. ............................................................... 13

       B.    The Non-Consensual Releases Of Defensive Rights In The
           Monoline Actions Fail The Test For Approval Of Third-Party
           Releases........................................................................................... 14

       C.    The Plan Cannot Bar Rights Of Setoff Or Recoupment. ........................ 18

       D.    The Non-Consensual Releases Are Not In The Best Interests Of
           Creditors.......................................................................................... 19

CONCLUSION............................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp*,
   368 B.R. 140 (Bankr. S.D.N.Y. 2007) ...................................................................................15

*In re Beaucage*,
   334 B.R. 353 (Bankr. D. Mass. 2005) ..................................................................................19

*In re Bldg. 62 Ltd. P'ship*,
   132 B.R. 219 (Bankr. D. Mass. 1991) ..................................................................................13

*In re Charles St. African Methodist Episcopal Church of Bos.*,
   499 B.R. 66 (Bankr. D. Mass. 2013) .............................................................................15, 16

*In re Chi. Invs., LLC*,
   470 B.R. 32 (Bankr. D. Mass. 2012) .............................................................................15, 16

*In re City of Detroit*,
   524 B.R. 147 (Bankr. E.D. Mich. 2014) ..............................................................................20

*Copper Kettle Marina, Inc. v. Dorner (In re Dorner)*,
   125 B.R. 198 (Bankr. N.D. Ohio 1991) ...............................................................................14

*Davidovich v. Welton (In re Davidovich)*,
   901 F.2d 1533 (10th Cir. 1990) ...........................................................................................18

*In re De Laurentiis Entm't Grp. Inc.*,
   963 F.2d 1269 (9th Cir. 1992) .............................................................................................18

*In re Ditech Holding Corp.*,
   606 B.R. 544 (Bankr. S.D.N.Y. 2019).....................................................................13, 18, 20

*In re E. Me. Elec. Coop., Inc.*,
   125 B.R. 329 (Bankr. D. Me. 1991).....................................................................................13

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   361 F. Supp. 3d 203 (D.P.R. 2019)......................................................................................16

*In re G.S.F. Corp.*,
   938 F.2d 1467 (1st Cir. 1991)..............................................................................................15

*Green v. Welsh*,
   956 F.2d 30 (2d Cir. 1992)...................................................................................................13

*In re Grove Instruments, Inc.*,
    573 B.R. 307 (Bankr. D. Mass. 2017) .................................................................15

*In re Hanish, LLC*,
    570 B.R. 4 (Bankr. D.N.H. 2017) .......................................................................13

*Lee v. Schweiker*,
    739 F.2d 870 (3d Cir. 1984)................................................................................19

*In re Lower Bucks Hosp.*,
    471 B.R. 419 (Bankr. E.D. Pa. 2012) .................................................................12

*In re M.J.H. Leasing, Inc.*,
    328 B.R. 363 (Bankr. D. Mass. 2005) .................................................................12

*In re Mahoney Hawkes, LLP*,
    289 B.R. 285 (Bankr. D. Mass. 2002) .....................................................15, 16, 17

*In re Master Mortgage Investment Fund, Inc.*,
    168 B.R. 930 (Bankr. W.D. Mo. 1994)...............................................15, 16, 17, 18

*Nat'l Promoters & Servs. Inc. v. Multinational Life Ins. Co. (In re Nat'l
    Promoters & Servs. Inc.)*,
    No. 12-01076 (ESL), 2020 WL 1685755 (D.P.R. Apr. 6, 2020)......................18, 19

*In re Quigley Co., Inc.*,
    437 B.R. 102 (Bankr. S.D.N.Y. 2010)................................................................20

*In re Quincy Med. Ctr., Inc.*,
    No. 11-16394, 2011 WL 5592907 (Bankr. D. Mass. Nov. 16, 2011) ..............14, 15

*In re SunEdison, Inc.*,
    576 B.R. 453 (Bankr. S.D.N.Y. 2017)................................................................20

*In re Wash. Mut., Inc.*,
    442 B.R. 314 (Bankr. D. Del. 2011) ..............................................................15, 16

**Statutes**

11 U.S.C. § 105(a) ......................................................................................................15

11 U.S.C. § 502(h) ...................................................................................................8, 9

11 U.S.C. § 506(a)(1)..................................................................................................19

11 U.S.C. § 524 .....................................................................................................13, 14

11 U.S.C. § 1125......................................................................................................3, 11, 12

11 U.S.C. § 1125(a)(1) ........................................................................................................12

11 U.S.C. § 1126(g) ............................................................................................................20

11 U.S.C. § 1129(a)(7) ........................................................................................................20

48 U.S.C. § 2161(a) ............................................................................................................11

48 U.S.C. § 2174(b)(7) ........................................................................................................19

**Other Authorities**

Fed. R. Bankr. P. 3016(b) ..................................................................................................12

The Underwriter Defendants,[1] by and through their respective counsel, hereby submit this joint objection (the "Objection")[2] to the Debtors' Disclosure Statement Motion.[3]  In support of this Objection, the Underwriter Defendants respectfully state as follows:

**PRELIMINARY STATEMENT**

1.     The Underwriter Defendants are certain banks, underwriters, and other professionals involved in the issuance and underwriting of certain PR Bonds.[4]  The Underwriter Defendants support a Plan aimed at facilitating the Debtors' financial recovery that will benefit the millions of residents, employees, and retirees living in the Commonwealth and do not seek to hinder the significant progress that has been made in these Title III Cases.

2.     However, because the Plan contains provisions, intentionally or not, that could be read to improperly impair the Underwriter Defendants' ability to defend themselves in the Litigations (defined below) through the inclusion of the Non-Consensual Releases (defined

---

[1] Each of the Underwriter Defendants that joins in this Objection is represented by separate counsel, and each hereby joins in the objections raised herein in its separate capacity.  Certain factual arguments raised herein do not apply to all Underwriter Defendants and each Underwriter Defendant joins in arguments only to the extent applicable to that Underwriter Defendant.  Other than as reflected in this Objection, no Underwriter Defendant acts, represents, or speaks on behalf of (or purports to act, represent or speak on behalf of) any other Underwriter Defendant or any other entities in connection with the Title III Cases.  Each Underwriter Defendant and the litigation(s) in which it has been named as a defendant are identified on **Exhibit A** annexed hereto.

[2] Capitalized terms used but not defined in this Objection shall have the meaning ascribed to them in the *Third Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico, Et Al.*, Docket No. 16740 (the "Plan").

[3] *Amended Joint Motion Of The Commonwealth Of Puerto Rico, The Employees Retirement System Of The Government Of The Commonwealth Of Puerto Rico, And The Puerto Rico Public Buildings Authority For An Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing And Confirmation Schedule, (IV) Approving Solicitation Packages And Distribution Procedures, (V) Approving Forms Of Ballots, And Voting And Election Procedures, (VI) Approving Notice Of Non-Voting Status, (VII) Fixing Voting, Election, And Confirmation Deadlines, And (VIII) Approving Vote Tabulation Procedures*, Docket No. 16756 (the "Disclosure Statement Motion").

[4] The "PR Bonds" are collectively certain bonds issued or guaranteed by the Commonwealth of Puerto Rico (the "Commonwealth") and its instrumentalities and agencies, including the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Public Buildings Authority ("PBA"), the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Infrastructure Financing Authority ("PRIFA"), and the Puerto Rico Convention Center District Authority ("CCDA").

below), and because the Disclosure Statement lacks adequate information about the Non-Consensual Releases, the Underwriter Defendants hereby object to the Disclosure Statement Motion solely to seek proper disclosure with respect to the Non-Consensual Releases and to preserve their Defensive Rights (defined below).[5]

3.      Since 2019, the Underwriter Defendants have been named in several litigations that seek to hold the Underwriter Defendants liable for alleged wrongdoing in connection with the issuance and underwriting of certain PR Bonds, including: (1) the Adversary Proceeding[6] filed on May 2, 2019 by the Special Claims Committee and the Creditors' Committee ("Committee Plaintiffs"); (2) the National Action[7] filed on August 8, 2019 by National Public Finance Guarantee Corporation and MBIA Insurance Corporation (together, "National"); (3) the Ambac Action[8] filed on February 19, 2020 by Ambac Assurance Corporation ("Ambac"); and (4) the FGIC Action[9] filed on November 25, 2020 by Financial Guaranty Insurance Company ("FGIC") (together, the National Action, the Ambac Action, and the FGIC Action are the "Monoline Actions," and together with the Adversary Proceeding, they are the "Litigations").[10]

4.      Although perhaps not intended, the Plan potentially eliminates certain of the Underwriter Defendants' rights, remedies, and defenses in the Litigations, including rights of

---

[5] The Underwriter Defendants do not concede that the current Plan provisions should be interpreted in the manner assumed herein and expressly reserve all arguments that they do not. The Underwriter Defendants file this objection to ensure that any confirmed Plan does not prejudice their rights and defenses in the Litigations.

[6] The "Adversary Proceeding" is the case captioned *Special Claims Committee v. Barclays Capital et al.*, Adv. Pro. No. 19-00280 (LTS) (D.P.R.).

[7] The "National Action" is the case captioned *National Public Finance Guarantee Corp. et al.*, *v. UBS Financial Services, Inc. et al.*, Estado Libre Asociado de Puerto Rico, Sala Superior de San Juan, Civil No. SJ2019CV07932.

[8] The "Ambac Action" is the case captioned *Ambac Assurance Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc. et al.*, Estado Libre Asociado de Puerto Rico, Sala Superior de San Juan, Civil No. SJ2020CV06383.

[9] The "FGIC Action" is the case captioned *Financial Guaranty Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc. et al.*, Estado Libre Asociado de Puerto Rico, Sala Superior de San Juan, Civil No. SJ2020CV01505.

[10] Exhibit A annexed hereto identifies which of the Underwriter Defendants are named in each Litigation.

setoff and recoupment, reimbursement, apportionment of fault, and judgment reduction (collectively the "Defensive Rights") under the Plan's release and injunction provisions (the "Non-Consensual Releases").

5.          Notwithstanding the profound and prejudicial impact of the Non-Consensual Releases on the Underwriter Defendants (and others), the Disclosure Statement does not disclose their existence, and therefore fails to provide adequate information as required by Bankruptcy Code Section 1125.  Additionally, their presence in the Plan renders it patently unconfirmable because a Plan cannot strip the Underwriter Defendants of their defenses in the Litigations for at least 4 reasons: *first*, a plan cannot eliminate defenses that must survive a bankruptcy discharge; *second*, the Non-Consensual Releases fail to meet the standard required for approval of non-consensual third-party releases; *third*, a plan cannot bar the Underwriter Defendants from asserting setoff or recoupment rights; and *fourth*, the elimination of the Defensive Rights would cause the Plan to fail the "best interests" test by putting the Underwriter Defendants in a worse position than the position they would be in absent confirmation of the Plan.

6.          Accordingly, the Court should deny the Disclosure Statement Motion absent a supplement to the Disclosure Statement and related modifications to the Plan clarifying that nothing in the Plan or Confirmation Order shall impair the Defensive Rights.[11]

## **BACKGROUND**

### A.          *The Adversary Proceeding.*

7.          On May 2, 2019, the Committee Plaintiffs, as co-trustees of the Commonwealth

---

[11] The Underwriter Defendants are attempting to resolve consensually the Objection by proposing language to be included in the Plan and Disclosure Statement to preserve the Defensive Rights.  However, the parties have not yet reached an agreement.   The Underwriter Defendants' proposed language to be included in the Plan and Disclosure Statement is attached hereto as **Exhibit B**.  The addition of this language would resolve this Objection, provided that, for the avoidance of doubt, the Underwriter Defendants reserve all other rights to object to the Plan or seek further plan amendments prior to plan confirmation.

and on behalf of the Financial Oversight and Management Board (the "Oversight Board"), filed the Adversary Proceeding against 19 separate banks, underwriters, and other professionals, including many of the Underwriter Defendants.

8.     The 62-count complaint in the Adversary Proceeding seeks to recover underwriting fees, legal fees, swap transaction fees, and alleged losses on account of "deepening insolvency" supposedly caused by alleged wrongdoing relating to the issuance and underwriting of certain PR Bonds dating back to 2008.  Central to the Committee Plaintiffs' claims against the defendants in the Adversary Proceeding is the allegation that the Puerto Rico Government Development Bank ("GDB") breached its fiduciary duties to the Commonwealth in connection with the issuance of bonds that the Committee Plaintiffs assert are invalid because they violated Section 2 (the "Debt Service Limit") and Section 7 (the "Balanced Budget Clause") of Article VI of the Commonwealth Constitution (together, the Debt Service Limit and the Balanced Budget Clause are the "Constitutional Debt Limit").

9.     However, according to the Oversight Board, the Special Claims Committee is barred from recovering any damages from GDB because, as noted in the Disclosure Statement, "Claims against GDB itself have been released pursuant to GDB's PROMESA Title VI modification."[12]  Instead, the Special Claims Committee seeks to recover against other parties in the Adversary Proceeding, including certain of the Underwriter Defendants, alleging that they aided and abetted GDB's alleged breaches in connection with the issuance of certain PR Bonds by

---

[12] Disclosure Statement at 307 n. 219; *see also Findings Of Fact, Conclusions Of Law, And Order Approving Qualifying Modification For The Government Development Bank For Puerto Rico Pursuant To Section 601(m)(1)(D) Of The Puerto Rico Oversight, Management, And Economic Stability Act* at 11, *The Government Development Bank For Puerto Rico*, Case No. 18-1561 (LTS) (D.P.R. Nov. 7, 2018), Docket No. 270 ("GDB, the Recovery Authority, and holders of Participating Bonds (who did not not opt out of the Mutual Releases (as defined in the Solicitation Statement)), among other parties, will provide the Mutual Releases releasing each other from certain claims, and causes of action and liabilities related to the Qualifying Modification or the Participating Bonds as described in further detail in paragraphs 24 and 25 below.").

the Commonwealth, PBA, and ERS between 2007 and 2014.

10.     The Adversary Proceeding has been stayed since July 2019,[13] and is expected to

continue post-confirmation.[14]

### B.     *The Monoline Actions.*

11.     The plaintiffs in the Monoline Actions seek recoveries from certain of the

Underwriter Defendants based on the theory that those defendants fraudulently induced them,

based on false representations in offering documents, into insuring certain Commonwealth, HTA,

PRIFA, PREPA, COFINA, and CCDA bonds that were issued between 1998 and 2007:

    a.    On August 8, 2019, National filed the National Action, asserting claims against 9 defendants, including certain of the Underwriter Defendants,[15] based on 16 bonds issued by the Commonwealth, PREPA, HTA, and COFINA.  National filed proofs of claim against the Debtors based on at least 15 of the 16 bond issuances that are referenced in the National Action, each of which also references the same insurance policies at issue in the National Action.[16]

    b.    On February 19, 2020, Ambac filed the Ambac Action, and on October 28, 2020, Ambac filed an Amended Complaint, asserting claims against 13 defendants, including certain of the Underwriter Defendants,[17] based on 11 bonds issued by the Commonwealth, PBA, HTA, PRIFA, and CCDA.  Ambac filed proofs of claim against the Debtors based on the same bond issuances that are referenced in the Ambac Action, each of which also references the same insurance policies at issue in the Ambac Action.[18]

    c.    On November 25, 2020, FGIC filed the FGIC Action, asserting claims against 13 defendants, including certain of the Underwriter Defendants,[19] based on 17 bonds issued by the Commonwealth, HTA, PRIFA, and CCDA.  FGIC filed proofs of claim against the Debtors based on at least 14 of the 17 bond issuances that are

---

[13] *Order Regarding Stay Period And Mandatory Mediation* at 1 & App'x I, Docket No. 8244; *Final Order Regarding (A) Stay Period, (B) Mandatory Mediation, And (C) Certain Deadlines Related Thereto* at 3 & App'x A, Docket No. 12189.

[14] Disclosure Statement at 307.

[15] *See* Exhibit A for the list of Underwriter Defendants named in the National Action

[16] Claim Nos. 22078, 23450, 23454, 23459, 23905, 24041, 27883, 30114, and 43037.

[17] *See* Exhibit A for the list of Underwriter Defendants named in the Ambac Action.

[18] Claim Nos. 50420, 83010, 107643, and 122277.

[19] *See* Exhibit A for the list of Underwriter Defendants named in the FGIC Action.

referenced in the FGIC Action, each of which also references the same insurance policies at issue in the FGIC Action.[20]

12.     On September 9, 2019 and March 20, 2020, the defendants in the Monoline Actions removed the National Action and Ambac Action, respectively to this Court.[21]  On July 29, 2020, this Court entered orders granting the motions to remand the National Action and Ambac Action, respectively, to the Commonwealth Court of First Instance.[22]

13.     The defendants in the Monoline Actions moved to dismiss each of those actions. On June 2, 2021, the Commonwealth Court denied the defendants' motion to dismiss the National Action.[23]  The motions to dismiss in the Ambac Action and the FGIC Action remain pending.

C.     *The Third Amended Plan.*

14.     On May 11, 2021, the Debtors filed the Plan which, among other things, incorporates the settlements set forth in the GO/PBA PSA and the HTA PSA.

15.     The GO/PBA PSA[24] between the Oversight Board, as representative of the Commonwealth, PBA, and ERS on the one hand, and certain holders of GO Bonds, certain holders of PBA Bonds, Assured, Syncora, and National (in National's capacity as insurer and asserted holder, deemed holder, or subrogee with respect to GO Bonds and PBA Bonds), on the other hand, provides for all parties thereto to, among other things, support the Plan which incorporates the terms and conditions of the GO/PBA PSA.  In addition to providing for the treatment of Commonwealth Bond Claims and PBA Bond Claims, the GO/PBA PSA provides for the

---

[20] Claim Nos. 101243, 109975, and 120416.

[21] *See* Notice of Removal, *Nat'l Pub. Fin. Guarantee Corp. v. UBS Fin. Servs. Inc. et al.*, No. 19-00422 (LTS) (D.P.R. filed Sept. 9, 2019);  Notice of Removal, *Ambac Assurance Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc. et al.*, No. 20-00047 (LTS) (D.P.R. filed Mar. 20, 2020).

[22] Ambac Action, Docket No. 35; National Action, Docket No. 45.

[23] Resolution, dated June 2, 2021, *Nat'l Pub. Fin. Guarantee Corp. et al. v. UBS Fin. Servs., Inc. et al.*, Estado Libre Asociado  de Puerto Rico, Sala Superior Court de San Juan., Civil No. SJ2019CV07932.

[24] Docket No. 16741-2.

settlement and compromise of: 8 claims objections, many of which were based on breaches of the Constitutional Debt Limit; 8 adversary proceedings brought against bondholders seeking avoidance and recovery of payments made under the GO Bonds and PBA Bonds, also based on breaches of the Constitutional Debt Limit; 7 adversary proceedings referred to as the "Lien Avoidance Actions"; and other litigations related to the treatment of PBA leases and PRIFA Bond Anticipation Notes.

16.     The HTA PSA[25] between the Oversight Board, as representative of the Commonwealth and HTA on the one hand, and certain holders of HTA Bonds, holders of CCDA Bonds, Assured, and National (in National's capacity as insurer and asserted holder, deemed holder, or subrogee with respect to HTA Bonds), on the other hand, provides for the parties thereto to support the Plan as well as a separate HTA Plan that must be filed on or before January 31, 2022 that comports with the terms and provisions of the HTA PSA.  Under the HTA PSA, certain litigations between the Oversight Board and National are compromised and settled under the Plan.[26]

17.     Although there is no specific reference to the Adversary Proceeding in the Plan, the Disclosure Statement states "[t]he Plan provides for the [Adversary Proceeding] to continue after confirmation."[27]

**D.      _The Third Amended Plan Could Extinguish The Defensive Rights._**

18.     The Plan contains 5 provisions—Sections 88.2(a), 88.2(b), 88.3, 88.9, and 88.11—that, whether or not intended, could eliminate the Defensive Rights in the Litigations without the Underwriter Defendants' consent and without compensation.

---

[25] Docket No. 16741-3.

[26] Disclosure Statement at 33-34.

[27] Disclosure Statement at 307.

19.     If the Plan were to be confirmed, then under Sections 88.2(a) and 88.2(b), the Underwriter Defendants (and others) could be deemed to grant broad releases of all Claims and Causes of Action[28] against the Debtors, the Reorganized Debtors, and their Assets,[29] *plus* the following non-Debtor third parties who are also Released Parties:[30] the Special Claims Committee, GDB, and National.[31]

20.     Specifically, the Plan could be read to release all Claims and Causes of Action against the Released Parties, including counterclaims based on the Debtors' conduct that arose before the Effective Date, provided such Claims or Causes of Action relate to, among other things, the Title III Cases, the Debtors, the Reorganized Debtors, or any of their Assets.[32]  The Non-Consensual Releases could further be interpreted to strip the Underwriter Defendants of the ability to assert claims that are permitted by Bankruptcy Code Section 502(h), which is triggered upon

---

[28] A Claim includes, among other things, "claims of every kind or nature whatsoever, in law, at equity, or otherwise," including Causes of Action.  Plan § 1.112.  Causes of Action include, among other things, "claims, actions, cause of action, suits, debts, sums of money . . . promises, damages, judgments, remedies, rights of set-off, third party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and cross claims," including "all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, or subordination . . . that are pending or may be asserted against any Entity." Plan § 1.104.

[29] Plan § 88.2(b) ("All Entities shall be precluded from asserting any and all Claims *against the Debtors and Reorganized Debtors, and each of their respective Assets*, property and rights, remedies, Claims or Causes of Actions or liabilities of any nature whatsoever, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets or property . . . ." (emphasis added)).

[30] Plan §§ 88.2(a) ("[T]he Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Causes of Action *against the Released Parties* that arise, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtor or Reorganized Debtors or any of their respective Assets, property or interests of any nature whatsoever . . . ." (emphasis added)).

[31] The Released Parties include "(a) the Government Parties, (b) the GO/PBA PSA Creditors, (c) the Retiree Committee, (d) AFSCME and (e) . . . each of their respective Related Persons."  Plan § 1.371.  The Special Claims Committee is a Released Party because it is a Government Party.  Plan § 1.246.  GDB is a Released Party because it is the predecessor to AAFAF, and the Released Parties include AAFAF and its Related Persons.  Plan §§ 1.369 (Related Persons include "predecessors"), 1.371.  National is a Released Party because it is a GO/PBA PSA Creditor. Plan § 1.371 (Released Parties include "GO/PBA PSA Creditors"); Disclosure Statement at Ex. B (identifying National as party to the GO/PBA PSA).

[32] *See* Plan §§ 88.2(a), 88.2(b).

the return of a fraudulent conveyance to the bankruptcy estate.[33]

21.     The "Injunction on Claims" in Section 88.3 of the Plan could further enjoin the assertion of the Released Claims "for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the Effective Date, including . . . except as otherwise expressly provided in the Plan or the Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind."[34]  The "Supplemental Injunction" in Section 88.11 of the Plan could similarly enjoin the Underwriter Defendants from taking any action against any of the Released Parties with respect to any Released Claims that relate to the Title III Cases or any Claim against the Debtors, for the purpose of directly or indirectly recovering or receiving payment with respect to any Released Claims that arose prior to the Effective Date.[35]  And the related "Bar Order" in Section 88.9 of the Plan could prohibit the Underwriter Defendants from pursuing the Released Claims against the Released Parties.[36]

22.     Because the Claims and Causes of Action released by the Non-Consensual Releases include all "claims, actions, causes of action, rights to payment, suits, remedies, rights of set-off,

---

[33] Plan § 88.2(a) ("Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other Debts that arose, in whole or in part, prior to the Effective Date . . . and Claims of the kind specified in *section[] . . . 502(h) of the Bankruptcy Code*, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder of a Claim based upon such debt voted to accept the Plan." (emphasis added)).

[34] Plan § 88.3.

[35] Plan § 88.11 ("Notwithstanding anything contained herein to the contrary, except to the limited extent provided in the Plan, all Entities . . . who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to the Title III Cases or any Claim against the Debtors . . . shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the Effective Date (including prior to the Petition Date) . . . .").

[36] Plan § 88.9 (enjoining every Entity from "instituting, prosecuting, pursuing or litigating all Claims, demands, rights, liabilities . . . . against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims").

third-party claims, counterclaims and cross claims," including "all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery"[37] that relate in any way to, among other things, the Debtors, the Reorganized Debtors, or their Assets, the Non-Consensual Releases could be read to significantly impair the ability of the Underwriter Defendants to assert Defensive Rights in the Litigations.

23.     For example, in the Adversary Proceeding, the Non-Consensual Releases could prevent the assertion of any Defensive Rights against the Released Parties, including defenses that are based on GDB's culpability and relate to the Debtors' Assets, which is particularly troubling because it is GDB's alleged breaches of fiduciary duty that certain of the Underwriter Defendants are accused of aiding and abetting.

24.     Similarly, the language described above, if included in the Plan, as confirmed, could prevent the defendants in the Monoline Actions from asserting Defensive Rights against the plaintiffs in the Monoline Actions.  For example, in the National Action, National could rely on such language to argue that it bars the assertion of a Defensive Right against National that relates to the Debtors' Assets (including its rights under the PR Bonds) because National is a Released Party under the Plan.  And in the FGIC and Ambac Actions, FGIC and Ambac, could rely on such language to argue that it bars the assertion of a right to judgment reduction that is based on, or related to, any recoveries of FGIC or Ambac in these Title III Cases.  The plaintiffs in these actions also could point to such language in arguing that it prohibits the assertion of claims that the Debtors are joint tortfeasors, whose liability should be determined to apportion fault in the Monoline Actions.

25.     Taken together, the Plan's Non-Consensual Releases could be read to substantially

---

[37] Plan § 1.104.

and improperly impair the Defensive Rights of the Underwriter Defendants in the Litigations, and must be clarified.

26.    The Plan is also unclear as to whether setoff rights are preserved.  On the one hand, Section 88.3(d) of the Plan purports to preserve setoff rights by carving out those rights from the injunction.[38]  On the other hand, the Supplemental Injunction in Section 88.11(d) of the Plan states that "[n]otwithstanding anything contained herein to the contrary, except to the limited extent provided in the Plan," all Entities are barred from asserting or effecting any rights of setoff, subrogation, indemnity, contribution or recoupment against any Released Party or their property. In addition, Causes of Action, which are released and enjoined under the Plan,[39] includes rights of setoff and recoupment.[40]   In other words, it is not clear that the preservation of setoff rights under section 553 and common law recoupment rights in section 88.3(d) overrides the prohibitions set forth in the Supplemental Injunction.  The Disclosure Statement must provide clarity on this point or be denied.

## **OBJECTION**

### I.    **The Disclosure Statement Fails To Provide Adequate Information With Respect To The Non-Consensual Releases Of The Defensive Rights.**

27.    Bankruptcy Code Section 1125, made applicable to these proceedings by Section 301 of PROMESA, provides that a disclosure statement must contain "adequate information" describing a proposed chapter 11 plan. 11 U.S.C. § 1125; 48 U.S.C. § 2161(a).  The Bankruptcy

---

[38] Plan § 88.3 ("Except as otherwise expressly provided in the Plan, the Confirmation Order or such other Final Order of the Title III Court that may be applicable, all Entities . . . are permanently enjoined, from and after the Effective Date, from . . . (d) except to the extent provided, permitted or preserved by section[] 553 . . . or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan.").

[39] Plan § 88.2(a) (providing for discharge and release of all Claims or Causes of Action against the Released Parties); Plan § 88.2(b) (enjoining all Entities from asserting any and all Claims against the Debtors); Plan § 88.3 (enjoining Claims against Released Parties); Plan 88.9 (same).

[40] Plan § 1.104 (definition of Causes of Action).

Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably
> practicable in light of the nature and history of the debtor and the
> condition of the debtor's books and records . . . that would enable
> such a hypothetical investor . . . to make an informed judgment about
> the plan . . . .

11 U.S.C. § 1125(a)(1).

28.     The Debtors should be required to include in the Disclosure Statement details about
the Non-Consensual Releases and any supposed legal bases they rely upon to eliminate the
Defensive Rights, so that the Underwriter Defendants can determine if those bases have any legal
merit.

29.     Courts within the First Circuit and elsewhere routinely deny approval of disclosure
statements that fail to disclose the existence and impact of third-party releases.  *In re M.J.H.
Leasing, Inc.*, 328 B.R. 363, 371 (Bankr. D. Mass. 2005) (denying approval of disclosure statement
because of inadequate disclosure with respect to third-party releases); *accord In re Lower Bucks
Hosp.*, 471 B.R. 419, 463-64 (Bankr. E.D. Pa. 2012) (third-party release included as part of
debtors' proposed chapter 11 plan was not adequately disclosed, because disclosure statement: (i)
did not conspicuously identify the release in accordance with Fed. R. Bankr. P. 3016(b); and (ii)
did not give details as to what the releasing parties would be giving up so as to allow parties to
make an informed decision) (subsequent history omitted).

30.     Because the Disclosure Statement fails to provide any information—much less
adequate information—with respect to Plan Sections 88.2(a), 88.2(b), 88.3, 88.9 and 88.11 and
their impact on the Defensive Rights, the Disclosure Statement Motion should be denied unless
the Disclosure Statement is supplemented and the Plan modified as set forth herein.

**II.     <u>The Plan Cannot Be Confirmed If It Strips The Defensive Rights.</u>**

31.     A disclosure statement describing a patently unconfirmable plan cannot be

12

approved.  *In re Hanish, LLC*, 570 B.R. 4, 12 n.23 (Bankr. D.N.H. 2017) ("Courts have discretion to deny approval of a disclosure statement, even if it contains adequate information, if the related chapter 11 plan of reorganization cannot be confirmed.").

32.     For a disclosure statement to be approved, a debtor must show that "the plan is capable of being confirmed."  *In re Bldg. 62 Ltd. P'ship*, 132 B.R. 219, 223 (Bankr. D. Mass. 1991); *accord In re E. Me. Elec. Coop., Inc.*, 125 B.R. 329, 334 (Bankr. D. Me. 1991) ("'[S]oliciting votes and seeking court approval on a clearly fruitless venture would be costly and it would unduly delay any possibility of a successful reorganization.'" (quoting *In re Pecht*, 53 B.R. 768, 769-70 (Bankr. E.D. Va. 1985))).

33.     Here, if the Plan is read to strip the Underwriter Defendants of their Defensive Rights, it would not be confirmable.  If that is the Debtors' intent, the Disclosure Statement should be clear on the point—and disclose the risk that the Plan will therefore not be confirmable. If that is not the Debtors' intent, the Disclosure Statement (and the Plan) must be clarified to so specify.

### A.     *The Plan Cannot Bar Defenses.*

34.     The Defensive Rights, which include rights of recoupment, setoff, and other defenses and allocations of liability in the Litigations, must survive discharge under Bankruptcy Code Section 524 and allow a claimant to proceed against a discharged debtor for purposes of establishing liability, provided that doing so would not result in an affirmative recovery against the discharged debtor.  *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992) (observing that many courts have concluded that Bankruptcy Code Section 524 does not bar a claimant from proceeding against a discharged debtor for purposes of recovering against a third-party insurer).  Indeed, "defenses to enforcement, such as recoupment, cannot be extinguished in bankruptcy—whether through a sale or discharged under a plan—because they are neither 'claims' nor 'debts,' nor 'interests.'"  *In re Ditech Holding Corp.*, 606 B.R. 544, 596 (Bankr. S.D.N.Y. 2019) (collecting cases).

35.    *Copper Kettle Marina, Inc. v. Dorner (In re Dorner)*, 125 B.R. 198 (Bankr. N.D. Ohio 1991), is instructive.  There, a tort claimant sought to name the debtor in a state court lawsuit in order to obtain a determination of their respective share of liability under state law relating to a fire.  *Dorner*, 125 B.R. at 200.  The bankruptcy court recognized that Bankruptcy Code Section 524 enjoined the tort claimant from commencing actions against the debtor that would include naming the debtor in a suit that related to the fire, but concluded that modification of the injunction was appropriate to permit the claimant to name the debtor in the existing action because, without the requested apportionment, the claimant would be denied its statutory right "to setoff the non-economic portion of damages attributable to Debtor's conduct."  *Id.* at 202.  Similarly, here, the Underwriter Defendants should be entitled to assert whatever Defensive Rights they have under applicable law in the Litigations.  As in *Dorner*, assertion of the Defensive Rights will not result in an affirmative recovery against the Debtors, but rather will merely preserve the Underwriter Defendants' rights to seek to reduce any potential liability of the Underwriter Defendants to the plaintiffs in the Litigations.

## B.    *The Non-Consensual Releases Of Defensive Rights In The Monoline Actions Fail The Test For Approval Of Third-Party Releases.*

36.    The Non-Consensual Releases in the Plan also cannot eliminate the Defensive Rights in the Monoline Actions because those Defensive Rights are, by their very nature, defenses not subject to release, not affirmative claims for recovery.  In any event, the Oversight Board cannot establish that the conditions for approval of non-consensual third-party releases are met here.

37.    The First Circuit has not directly ruled on the permissibility of non-consensual third-party releases under a plan, but courts within the First Circuit have either denied or substantially curtailed them.  *In re Quincy Med. Ctr., Inc.*, No. 11-16394, 2011 WL 5592907, at

*4 (Bankr. D. Mass. Nov. 16, 2011) ("[O]nly consensual releases are permissible."); *In re Charles St. African Methodist Episcopal Church of Bos.*, 499 B.R. 66, 102 (Bankr. D. Mass. 2013) ("I do not hold that no nonconsensual release, however narrowly tailored and otherwise justified, can ever be approved.  Certainly, however, no nonconsensual release can be approved where the plan does not replace what it releases with something of indubitably equivalent value to the affected creditor."); *accord In re Adelphia Commc'ns Corp*, 368 B.R. 140, 268 (Bankr. S.D.N.Y. 2007); *In re Wash. Mut., Inc.*, 442 B.R. 314, 351-52 (Bankr. D. Del. 2011).

38.     Indeed, third-party release provisions should be allowed only in "extraordinary circumstances."   *In re Grove Instruments, Inc.*, 573 B.R. 307, 314 (Bankr. D. Mass. 2017) (collecting cases).  There are no such circumstances here.

39.     Courts within the First Circuit have held that Bankruptcy Code Section 105(a) provides the requisite authority to approve releases that enjoin non-debtor third parties when it is appropriate and necessary to carry out the chapter 11 plan.  *In re Chi. Invs., LLC*, 470 B.R. 32, 95 (Bankr. D. Mass. 2012); *In re Mahoney Hawkes, LLP*, 289 B.R. 285, 300 (Bankr. D. Mass. 2002). "While 11 U.S.C. § 105(a) does grant the bankruptcy court broad powers to issue any order 'necessary or appropriate to carry out the provisions of this title,' it is an *extraordinary exercise of discretion* to use that power to stay a third party action not involving the debtor." *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir. 1991) (emphasis added).

40.     To determine the necessity for the third-party release, courts within the First Circuit have applied the multi-factor test set forth in *In re Master Mortgage Investment Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994), which requires that:

> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate.

15

(2) The non-debtor has contributed substantial assets to the reorganization.

(3) The injunction is essential to the reorganization. . . .

(4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment.

(5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*See, e.g.*, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 361 F. Supp. 3d 203, 254 (D.P.R. 2019) (observing that *Master Mtg. Inv. Fund, Inc.* enumerated various factors to be considered in approving consensual third-party releases) (subsequent history omitted); *accord Charles St.*, 499 B.R. at 100 (noting that *Master Mortgage* factors are useful considerations in assessing the propriety of a proposed release).

41.     However, "[t]hese factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." *Chi. Invs*, 470 B.R. at 95 (quoting *Wash. Mut.*, 442 B.R. at 346 (Bankr. D. Del. 2011)).

42.     Here, the Non-Consensual Releases do not satisfy *any* of the *Master Mortgage* factors, and their inclusion renders the Plan unconfirmable.

43.     ***First***, there is no identity of interests between the plaintiffs in the Monoline Actions and the Debtors.  The Defensive Rights are intended to reduce any potential liability of the defendants to the plaintiffs in the Monoline Actions, and the assertion of such rights would not result in any affirmative recovery or claim against the Debtors or deplete the Debtors' estates. *Mahoney Hawkes, LLP*, 289 B.R. at 300 (finding first *Master Mortgage* factor unmet because a suit against proposed released party would not deplete the debtor's estate).  Accordingly, the first *Master Mortgage* factor is not satisfied.

16

44.     **Second**, National, Ambac, and FGIC[41] have not provided any consideration to the Debtors' estates in exchange for the Non-Consensual Releases.  That the PSA Creditors (including National) have agreed to an allocation of billions of dollars amongst themselves does not satisfy the additional consideration component required to receive the extraordinary grant of third-party releases in these Title III Cases.  *See Mahoney Hawkes*, 289 B.R. at 302.

45.     In *Mahoney Hawkes*, the bankruptcy court considered the propriety of third-party releases at the disclosure statement phase.  *Id.* at 294.  There, the debtors contended that contributions by the debtor-law firm's partners were sufficient to warrant the requested releases.  *Id.* at 301.  However, the court held it could not approve the third-party releases because it lacked the requisite information to determine whether such contributions were sufficient in the context of the proposed plan.  *Id.* 302-303.  Here, there is not even a mention of any consideration being provided by National, Ambac or FGIC in exchange for the benefits they would receive in their respective Monoline Actions if the Plan provisions were interpreted as described herein.  Therefore, the second *Master Mortgage* factor is not satisfied.

46.     **Third**, the Non-Consensual Releases do not serve any apparent function other than to potentially significantly impair the Defensive Rights in the Monoline Actions.  The Defensive Rights would not and could not result in any conceivable effect that extends beyond the confines of the Monoline Actions.  They serve solely as an allocation and judgment reduction mechanism in the event that any defendant is found liable in, or agrees to pay judgment in, the Monoline Actions.  Simply put, the recoveries and claims of the plaintiffs in the Monoline Actions have nothing to do with the implementation of, or the ultimate success of the Plan, and therefore, the

---

[41] The Underwriter Defendants recognize that Ambac and FGIC are not Released Parties under the Plan.  However, as discussed above, they are beneficiaries of the Non-Consensual Releases because of the arguably broad restrictions on the ability of defendants to assert the Defensive Rights in the Ambac and FGIC Actions.

third *Master Mortgage* factor test is not satisfied.

47.     **Fourth**, given that the Plan has not been solicited, no creditors have yet agreed to the Non-Consensual Releases.  In any event, the Underwriter Defendants unequivocally do not support the Non-Consensual Releases.  Therefore, the fourth *Master Mortgage* factor is not satisfied (or even applicable).

48.     **Fifth**, the Plan does not provide for any distribution on account of the Defensive Rights.  Accordingly, the fifth *Master Mortgage* factor is not satisfied.

C.     ***The Plan Cannot Bar Rights Of Setoff Or Recoupment.***

49.     The Defensive Rights include the Underwriter Defendants' rights of setoff and recoupment in the Litigations, which also survive bankruptcy discharge.[42]

50.     The majority view is that confirmation of a plan and related discharge do not bar rights of setoff or recoupment.  5 COLLIER ON BANKRUPTCY ¶ 553.08[1]; *accord In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d 1269, 1276-77 (9th Cir. 1992) (holding that a creditor's setoff right against the debtor survives a discharge); *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1539 (10th Cir. 1990) ("[T]he right to assert a setoff against a mutual, prepetition debt owed the bankruptcy estate survives even the Bankruptcy Court's discharge of the bankrupt's debts."); *Ditech*, 606 B.R. at 596 (recoupment rights "cannot be extinguished in bankruptcy—whether through a sale or discharge under a plan—because they are neither 'claims' nor 'debts,' nor interests'").

51.     This is true even if a proof of claim asserting setoff rights or recoupment as affirmative defenses has not been filed.  *Nat'l Promoters & Servs. Inc. v. Multinational Life Ins. Co. (In re Nat'l Promoters & Servs. Inc.)*, Case No. 12-01076 (ESL), 2020 WL 1685755, at *51

---

[42] As noted above, the Plan is ambiguous at best as to whether rights of setoff are preserved under the Plan.

(D.P.R. Apr. 6, 2020).

52.      Moreover, the Defensive Rights of setoff are to be treated as secured claims that cannot be unilaterally stripped or rendered unsecured.  11 U.S.C. § 506(a)(1); *see In re Beaucage*, 334 B.R. 353, 359 (Bankr. D. Mass. 2005) (recognizing holder of setoff claim is the equivalent of a secured creditor and is entitled to adequate protection of its interest); *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984) ("Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, prepetition claim against the creditor.").

53.      Accordingly, the Plan cannot unilaterally extinguish rights of setoff or recoupment.

**D.      *The Non-Consensual Releases Are Not In The Best Interests Of Creditors.***

54.      To the extent that the Plan would impair the Underwriter Defendants' Defensive Rights, the Plan cannot be confirmed because it would not satisfy the "best interests" test.

55.      Section 316(b)(6) of PROMESA provides that the "court shall confirm the plan if—the plan is feasible and in the best interests of creditors, which shall require the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for creditors than is provided by such plan[.]" 48 U.S.C. §2174(b)(7).

56.      The gravamen of this "best interests" test is whether creditors are left worse off under the Plan than if no plan were confirmed.[43]

57.      Although there are no reported decisions of the "best interests" test under PROMESA, several decisions in the chapter 11 context hold that a plan with non-consensual

---

[43] On June 10, 2021, the Oversight Board filed the *Notice of Filing Exhibit N (Best Interests Test Reports) To Disclosure Statement For The Third Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico, Et Al.* (Docket No. 16927) (the "Best Interests Report").  The Best Interests Report is silent as to the treatment of the Underwriter Defendants' Claims against the Debtors, and therefore has no impact on the arguments set forth herein.

releases fails the best interests test and cannot be confirmed.[44]

58.     In *In re Quigley Co., Inc.*, the court considered how distributions to impaired creditors would be impacted under the chapter 11 plan or in a liquidation.  437 B.R. 102, 144-147 (Bankr. S.D.N.Y. 2010).   Noting that impaired creditors would retain certain litigation rights against third parties in a liquidation, the *Quigley* court held that the proposed plan failed the best interests test.  *Id*. at 147.  Several courts have followed *Quigley*'s reasoning and held that a plan that provides for the relinquishment of third-party litigation rights is unconfirmable because it fails the best interests test.  *E.g.*, *Ditech*, 606 B.R. at 614 (holding that plan failed the best interests test because liquidation analysis should have accounted for impaired creditors' third-party litigation rights because those claims had "value"); *In re SunEdison, Inc.*, 576 B.R. 453, 457 n.4 (Bankr. S.D.N.Y. 2017) (plan that provided for nonconsensual releases of creditors deemed to reject the plan pursuant to 11 U.S.C. § 1126(g) "would violate the best interests test . . . and render the Plan unconfirmable").

59.     Here, the ability of the Underwriter Defendants to defend themselves in the Litigations could be significantly impaired if the Plan were to be confirmed and interpreted in the manner the Underwriter Defendants assume herein, yet the Underwriter Defendants would receive nothing in exchange for the Non-Consensual Releases, leaving them much worse off than if the Plan were not confirmed.  This infirmity also impacts any other party who is party to litigation that

---

[44] The application of the best interests tests varies between the chapter 9 and chapter 11 contexts.  In the chapter 9 context, courts will apply the best interests test to creditors as a whole, rather than on an individual basis.  *In re City of Detroit*, 524 B.R. 147, 149-170 (Bankr. E.D. Mich. 2014).  The Underwriter Defendants are not arguing that the Plan as a whole is not in the best interests of all creditors, but respectfully submit that the Court can resolve the Plan's infirmities with respect to the Underwriter Defendants without impacting the interests of other creditors.  In the chapter 11 context, a plan can only be confirmed if impaired creditors that have rejected the plan "will receive or retain under the plan on account of such claim or interest, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date."  11 U.S.C. § 1129(a)(7).  Although there is no liquidation alternative in PROMESA, the principles found in *Quigley*, *Ditech*, and *SunEdison* are instructive and directly on point because all 3 cases discussed application of the best interests test in the context of impairment of litigation rights.

involves, relates to or has any nexus to the Debtors or their Assets.  Accordingly, the Plan fails the best interests test and cannot be confirmed with the Non-Consensual Releases.

## **CONCLUSION**

**WHEREFORE**, the Underwriter Defendants respectfully request this Court:  (i) deny approval of the Disclosure Statement Motion unless the Disclosure Statement and Plan are modified as set forth herein; and (ii) grant such other further relief as this Court deems just and proper.

Dated: June 15, 2021

**GOODWIN PROCTER LLP**

/s/ Douglas H. Flaum
Douglas H. Flaum (*Pro Hac Vice*)
Charles A. Brown (*Pro Hac Vice*)
Howard S. Steel (*Pro Hac Vice* forthcoming)
Stacy A. Dasaro (*Pro Hac Vice* forthcoming)
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
Fax: (212) 355-3333
E-mail: dflaum@goodwinlaw.com
E-mail: cbrown@goodwinlaw.com
E-mail: hsteel@goodwinlaw.com
E-mail: sdasaro@goodwinlaw.com

*Counsel for Goldman Sachs & Co. LLC*

**SIMPSON THACHER & BARTLETT LLP**

/s/ David Elbaum
John K. Youngwood (*Pro Hac Vice*)
David Elbaum (*Pro Hac Vice*)
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2861
Fax: (212) 455-2502
E-mail: jyoungwood@stblaw.com
E-mail: david.elbaum@stblaw.com

*Counsel to J.P. Morgan Securities LLC*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

/s/ Julie E. Cohen
Julie E. Cohen (*Pro Hac Vice*)
Four Times Square
New York, NY 10018
Telephone: (212) 735-3000
Fax: (212) 735-2000
E-mail: julie.cohen@skadden.com

*Counsel for Morgan Stanley & Co. LLC*

**CROWELL & MORING LLP**

/s/ Daniel L. Zelenko
Daniel L. Zelenko (*Pro Hac Vice*)
Sarah M. Gilbert (*Pro Hac Vice*)
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (212) 223-4000
Fax: (212) 223-4134
Email: dzelenko@crowell.com
Email: sgilbert@crowell.com

*Counsel for Santander Securities LLC*

**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**

/s/ Eric Seiler
Eric Seiler (*Pro Hac Vice*)
Anne E. Beaumont (*Pro Hac Vice*)
Danielle E. Tepper (*Pro Hac Vice*)
7 Times Square
New York, NY  10036
Telephone:  (212) 833-1100
E-mail:  eseiler@fklaw.com
E-mail:  abeaumont@fklaw.com
E-mail:  dtepper@fklaw.com

*Counsel for Sidley Austin LLP*

**GOODWIN PROCTER LLP**

/s/ Marshall H. Fishman
Marshall H. Fishman (*Pro Hac Vice*)
Meghan K. Spillane (*Pro Hac Vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
Fax: (212) 355-3333
E-mail: mfishman@goodwinlaw.com
E-mail: mspillane@goodwinlaw.com

*Counsel for Citigroup Global Markets Inc.*

**MURPHY & MCGONIGLE PC**

/s/ Andrew J. Melnick
Andrew J. Melnick (*Pro Hac Vice*)
Cameron S. Matheson (*Pro Hac Vice*)
1185 Avenue of the Americas
Floor 21
New York, NY 10036
Telephone: (212) 880-3580
E-mail:  amelnick@mmlawus.com
E-mail:  cmatheson@mmlawus.com

*Counsel to Scotiabank de Puerto Rico*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

/s/ Paul J. Lockwood
Paul J. Lockwood (*Pro Hac Vice*)
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
Telephone: (302) 651-3000
Fax: (302) 651-3001
E-mail: paul.lockwood@skadden.com

*Counsel for UBS Financial Services Inc. of Puerto Rico*

**McGUIREWOODS LLP**

/s/ E. Andrew Southerling
E. Andrew Southerling (*Pro Hac Vice*)
2001 K Street N.W., Suite 400
Washington, DC 20006-1040
Telephone: (202) 857-1700
Fax: (202) 857-1737
E-mail: asoutherling@mcguirewoods.com

-and-

Aaron G. McCollough (*Pro Hac Vice*)
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
Telephone: (312) 849-8256
Fax : (312) 698-4522
E-mail: amccollough@mcguirewoods.com

*Counsel for Jefferies LLC and BMO Capital Markets GKST, Inc.*

**KAYSER & REDFERN, LLP**

/s/ Leo Kayser III
Leo Kayser III (*Pro Hac Vice*)
515 Madison Avenue
New York, NY 10022
Telephone: 212-935-5057
E-mail: lkayser@515law.com

*Counsel for Samuel A. Ramirez & Co., Inc.*

22

**CHAPMAN AND CUTLER LLP**

 /s/ James H. Heiser
James M. Heiser (*Pro Hac Vice*)
111 West Monroe Street
Chicago, IL 60603-4080
Tel.: (312) 845-3000
Fax: (312) 701-2361
E-mail:  heiser@chapman.com

*Counsel to Mesirow Financial, Inc.*

**WINSTON & STRAWN LLP**

/s/Carrie V. Hardman
Carrie V. Hardman (*Pro Hac Vice*)
200 Park Avenue
New York, NY 10166
Tel.: (212) 294-6700
Fax: (212) 294-4700
E-mail: chardman@winston.com

-and-

Joseph L. Motto  (*Pro Hac Vice*)
35 W. Wacker Drive
Chicago, IL 60601
Tel.: (312) 558-5600
Email: jmotto@winston.com

*Counsel to Merrill Lynch, Pierce, Fenner & Smith
Inc. and Merrill Lynch Capital Services, Inc.*

**MORRELL, CARTAGENA &
DAPENA LLC**

/s/ Ramón E. Dapena
Ramón E. Dapena
USDC-PR No. 125005
Iván Lladó
USDC-PR No. 302002
PO Box 13399
San Juan, Puerto Rico 00908
Telephone: (787) 723-1233
Fax: (787) 723-8763
Email: ramon.dapena@mbcdlaw.com
Email: ivanllado@mbcdlaw.com

*Counsel for Goldman Sachs & Co. LLC
and Citigroup Global Markets Inc.*

**BOBONIS, BOBONIS & RODRIGUEZ
POVENTUD**

/s/ Enrique G. Figueroa-Llinás
Enrique G. Figueroa-Llinás USDC No. 201709
129 de Diego Ave.
San Juan, Puerto Rico 00911-1927
Tel: (787) 725-7941
Fax: (787) 725-4245
Email: efl@bobonislaw.com

*Counsel for Merrill Lynch, Pierce, Fenner & Smith
Inc. and Merrill Lynch Capital Services, Inc.*

**COTO & ASSOCIATES**

/s/ Ramón Coto-Ojeda
Ramón Coto-Ojeda (USDC-PR No. 202006)
MCS Plaza, Suite 800
255 Ponce de León Avenue
San Juan, Puerto Rico 00917
PO Box 71449
San Juan, PR 00936-8549
Telephone: (787) 756-9640
Fax: (787) 756-9641
E-mail: rco@crlawpr.com

*Counsel to Mesirow Financial, Inc.*

**SARLAW LLC**

/s/Sergio A. Ramírez de Arellano
Sergio A. Ramírez de Arellano
USDC-PR #126804
Banco Popular Center, Suite 1022
209 Muñoz Rivera Ave.
San Juan, PR 00918-1009
Telephone: (787) 765-2988
E-mail: sramirez@sarlaw.com

*Counsel for Sidley Austin LLP*

**NELSON ROBLES-DIAZ LAW OFFICES, P.S.C.**
/s/ Nelson Robles-Díaz
Nelson Robles-Díaz, Esq.
USDCPR NO. 204410
P. O. Box 192302
San Juan, Puerto Rico 00919-2302
Tel.: (787) 294-9518
Fax: (787) 294-9519
Email: nroblesdiaz@gmail.com

*Counsel for Santander Securities LLC*

**NAVARRO-CABRER LAW OFFICES**
/s/ Nilda M. Navarro-Cabrer
Nilda M. Navarro-Cabrer
USDC-PR No. 201212
El Centro I, Suite 206
500 Muñoz Rivera Ave.
San Juan, Puerto Rico 00918
Telephone: (787) 764-9595
Fax: F. 787.764.7575
E-mail: navarro@navarrolawpr.com

*Counsel to Jefferies LLC and BMO Capital Markets GKST, Inc.*

**SALDAÑA, CARVAJAL & VÉLEZ-RIVÉ, P.S.C.**
/s/ Luis N. Saldaña-Román
Luis N. Saldaña-Román
USDC-PR No. 208001
Ángel E. Rotger-Sabat
USDC-P.R. No. 208601
166 Avenida de la Constitución
San Juan, Puerto Rico 00901
Telephone: (787) 289-9250
Fax: (787) 289-9253
E-mail: lsaldana@scvrlaw.com
E-mail: arotger@scvrlaw.com

*Counsel for Morgan Stanley & Co. LLC*

**McCONNELL VALDÉS LLC**
/s/ Roberto C. Quiñones-Rivera
Roberto C. Quiñones-Rivera, Esq.
USDC-PR Bar No. 211512
270 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
Telephone: (787) 250-2631
Fax: (787) 759-9225
E-mail: rcq@mcvpr.com

*Counsel for UBS Financial Services Inc. of Puerto Rico, UBS Financial Services Inc., UBS Securities LLC, Scotiabank de Puerto Rico, Samuel A. Ramirez & Co., Inc., Barclays Capital Inc., and Raymond James & Associates, Inc.*