# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br><br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>        Debtor. | PROMESA<br>Title III |

## LIMITED OBJECTION AND RESERVATION OF RIGHTS OF CERTAIN MEDICAL CENTERS TO DISCLOSURE STATEMENT FOR THE THIRD AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, *ET AL.*

Atlantic Medical Center, Inc., Camuy Health Services, Inc., Centro de Salud Familiar Dr.

Julio Palmieri Ferri, Inc., Ciales Primary Health Care Services, Inc., Corp. de Serv. Médicos

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Primarios y Prevención de Hatillo, Inc., Costa Salud, Inc., Centro de Salud de Lares, Inc., Centro
de Servicios Primarios de Salud de Patillas, Inc., and Hospital General Castañer, Inc. (collectively,
the "Medical Centers"), by and through the undersigned counsel, hereby submit this limited
objection (this "Limited Objection") to the *Amended Joint Motion of the Commonwealth of Puerto
Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico,
and the Puerto Rico Public Buildings Authority for an Order (I) Approving Disclosure Statement,
(II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation
Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving
Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting
Status, (VII) Fixing Voting, Election, And Confirmation Deadlines, and (VII) Approving Vote
Tabulation Procedures* [Docket No. 16756].  In support of this Limited Objection, the Medical
Centers respectfully represent as follows:

**LIMITED OBJECTION[2]**

1.       Before the commencement of these Title III Cases, the Commonwealth had
underpaid the Medical Centers—not-for-profit, Federally-qualified health centers providing
quality and affordable health services to the Commonwealth's underserved population—***by more
than $172 million*** for essential medical services.  This amount has continued to increase since the
filing of the Title III Cases.  Although, postpetition, the Commonwealth has made payments to the
Medical Centers pursuant to an injunction issued by the District Court and a stipulation entered
into in these Title III Cases (which required the Commonwealth to pay the Medical Centers
*estimated* amounts of what the Medical Centers are owed), the Medical Centers believe that these

---

[2]    Capitalized terms used but not defined herein shall have the meaning given to them in the *Disclosure Statement
for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al*. (the
"Disclosure Statement") [Docket No. 16741] or the *Third Amended Title III Joint Plan of Adjustment of the
Commonwealth of Puerto Rico, et al*. (the "Plan") as Exhibit A thereto, as applicable.

stipulated amounts severely underestimate the amounts owed to them on an administrative expense claim basis.

2.        The Debtors now seek approval of their Disclosure Statement and authorization to solicit a Plan which, among other things, (i) improperly treats the Medical Centers' pre- and postpetition claims and (ii) fails to provide any blueprint for how the Commonwealth will become compliant with its obligations under the Medicaid Act after being noncompliant for more than two decades.[3]

3.        Despite the long history of the disputes between the Commonwealth and Medical Centers regarding compliance with the Medicaid Act, the Oversight Board, the Commonwealth and the Medical Centers have been engaged in constructive discussions regarding the resolution of the Medical Centers' Claims.  While these discussions continue, and the Medical Centers remain optimistic that agreement can be reached, the Medical Centers submit this Limited Objection to raise with the Court certain concerns they have regarding the adequacy of information in the Disclosure Statement and the confirmability of the Plan.

**A.        The Disclosure Statement Fails to Provide Adequate Information With Respect to the Medical Centers' Claims.[4]**

4.        As drafted, the Disclosure Statement fails to provide the Class 53 creditors—and this Court—with the information necessary to evaluate the Plan.  Despite the long history, and litigation, between the Commonwealth and the Medical Centers, the Debtors spend almost no time

---

[3]    PROMESA section 314(b)(6) requires that, for the Court to confirm a plan, the Court must find the plan to be "feasible."  Failure of the Plan to provide for a mechanism for the Commonwealth to become compliant with the Medicaid Act and satisfy the Medical Centers' claims on a go-forward basis may affect the Plan's feasibility.  The Medical Centers reserve all rights to object to the Plan's feasibility on this basis at confirmation.

[4]    The Medical Centers have provided suggested language for inclusion in the Disclosure Statement to counsel for the Oversight Board.  To the extent this suggested language is accepted, the Medical Centers will have no objection to the adequacy of the information in the Disclosure Statement.

discussing this background, nor does the Disclosure Statement provide an adequate explanation of why the Class 53 creditors are receiving the treatment proposed under the Plan. The Medical Centers have proposed additional language to the Oversight Board to cure this deficiency.  The Medical Centers reserve all rights to supplement this objection and to detail the various deficiencies to the extent an agreement is not reached.

**B.     The Terms of the Proposed Plan Raise Concerns regarding Confirmability.**

5.     To the extent a consensual resolution cannot be reached between the Medical Centers, the Oversight Board and the Commonwealth, the Medical Centers identify several critical flaws in the Plan that must be remedied before the Plan can be confirmed.

6.     ***The Plan Improperly Treats the Medical Centers' Claims***. The Debtors propose to allow the "Med Center Claims" in certain amounts and to provide a 50% recovery on account of such allowed Med Center Claims over a 5-year period. *See* Plan Article LVII at 57.1. "Med Center Claims" is defined to include not just the Medical Centers' prepetition claims, but also postpetition administrative claims – *i.e.* any amounts asserted to be owing and relating to the period from the Commonwealth Petition Date up to and including the Effective Date.  *See* Plan at 1.292.  These claims must remain unaffected by these Title III Cases and, absent agreement to different treatment, must receive 100% payment in full under the Plan because: (i) PROMESA does not preempt the Commonwealth's obligation to pay in full both the prepetition and postpetition amounts due under the Medicaid Act[5] and (ii) the Medical Centers' postpetition claims should be classified as administrative claims which the Debtors must pay in full upon the on the effective

---

[5]     *See Municipality of San Juan et al. v. Commonwealth of Puerto Rico*, 919 F. 3d 565, 577 (1st Cir. 2019) ("[N]othing in PROMESA should be 'construed' to impair any rights or obligations imposed by federal laws or requirements other than those that PROMESA itself 'provides'")

date.[6]  Moreover, because the Medical Centers' Claims arise under Federal public health or safety laws (i.e. the Medicaid Act, 42 U.S.C. § 1396a(bb)), PROMESA provides that these claims cannot be discharged.[7]

7.      ***The Plan Contains an Impermissible Death Trap for Treatment of Med Center Claims.*** The Plan provides that if Class 53 (i.e., the holders of the Med Center Claims) votes to reject the Plan, the members of that class will be subject to a "death trap" and receive a reduced allowed claim amount. To the extent the Plan purports to serve as a "claim objection" for the allowance of the Med Center Claims by seeking to "set" the amount of the Med Center Claims, and further seeks to deprive the Medical Centers' of an allowed claim amount for which they are rightfully entitled if the class votes to reject the Plan or otherwise, the Medical Centers object to the usage of the Plan as a procedurally inappropriate and substantively insufficient claim objection and improper use of the "death trap".[8]

8.      ***The Plan Unfairly Discriminates Against the Med Center Claims.*** Even if it is proper to classify *any* portion of the Med Center Claims as unsecured claims subject to compromise (which, as discussed above, it is not), the Plan provides for disparate treatment of

---

[6]     PROMESA provides that—unless the creditor agrees otherwise—claims specified in 11 U.S.C. § 507(a)(2) (i.e., administrative claims) must be paid in full on the effective date of any confirmed plan of adjustment of debts. *See* 48 U.S.C. § 2174(b)(4).

[7]     PROMESA section 304(h) prohibits "the discharge of obligations under Federal police or regulatory laws, including laws relating to the environment, public health or safety, or territorial laws implementing such Federal legal provisions.  This includes compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated with administrative, civil, or other penalties."  48 U.S.C. § 2164(h).

[8]     *See, e.g*., Fed. R. Bankr. P. 3001(f); 3007(a) (setting forth the procedural requirements for a claim objection*); In re Allegheny Int'l, Inc*., 954 F.2d 167 (3d Cir. 1992) (the burden of proof for claims is a shifting one: a claim is prima facie valid if it alleges facts sufficient to suppose a legal liability to the claimant; if the objector then produces evidence to refute at least one of the allegations essential to the claim's legal sufficiency, the burden of going forward shifts back to the claimant to prove the validity of the claim by a preponderance of the evidence); *In re Dynamic Brokers, Inc*., 293 B.R. 489, 496 (B.A.P. 9th Cir. 2003) ("Not only is it more difficult for a creditor to litigate against the entire collective body of other creditors and owners in a plan confirmation proceeding, but the evidence relevant to a plan confirmation is so different from the evidence relevant to a claim objection that the two proceedings simply do not form a convenient trial unit.")

unsecured creditors in violation of the Bankruptcy Code section 1129(b)(1), as made applicable by PROMESA section 301(a).  For example, the Plan provides for a 50% recovery of the "allowed" Med Center Claims; in contrast, the Plan provides for a 67.8% recovery on account of certain general obligation bond claims and a 100% recovery on account of certain energy incentive claims. *See* Disclosure Statement IV.E.  In addition, the Plan fails to specify the estimated percent recovery for the CW General Unsecured Claims.[9]  The Debtors offer no explanation, let alone a reasonable explanation, for this disparate treatment.

9.     ***The Plan Has Not Been Proposed in Good Faith.*** Bankruptcy Code section 1129(a)(3) requires that in order for a court to confirm a plan, the plan must be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3); PROMESA section 301(a). The Plan, as drafted, unfairly prejudices the rights of the Medical Centers and evidences a failure to act with fairness to the Medical Centers.  Among other things, as discussed above, (i) the Plan does not adequately preserve and protect the Medical Centers' rights because the Plan (a) strips the Medical Centers of significant rights and remedies to which they are entitled, (b) fails to provide for payment in full of the Med Center Claims (both the prepetition and postpetition amounts), and (c) treats similarly situated creditors differently; (ii) the Plan employs a death trap mechanism that deprives the Medical Centers of value on account of their allowed claims to which they are otherwise entitled if they, as a class, vote to reject the Plan; and (iii) does not meet the best interests test vis-à-vis the Medical Centers.

### RESERVATION OF RIGHTS

10.     The Medical Centers reserve all rights to supplement the Plan-related objections set forth herein, as well as to raise additional objections, in connection with confirmation of the Plan.

---

[9]     As such, it is impossible, at this point, to determine if this treatment provide greater recovery to the holders of the CW General Unsecured Claims than the Plan proposes to provide to the Medical Centers.

In addition, to the extent the Debtors do not incorporate the additional language for the Disclosure Statement that the Medical Centers have provided to them, the Medical Centers reserve all rights to supplement this objection in connection with approval of the Disclosure Statement.

Respectfully submitted:

In San Juan, Puerto Rico, this 15th day of June, 2021.

OF COUNSEL:

**FELDSMAN TUCKER LEIFER FIDELL**
By: /s/ *Nicole M. Bacon*
Nicole M. Bacon (*admitted pro hac vice*)
nbacon@feldesmantucker.com
James L. Feldesman (*admitted pro hac vice*)
jfeldesman@feldesmantucker.com
Kathy S. Ghiladi (*admitted pro hac vice*)
kghiladi@feldesmantucker.com
1129 20th Street, NW
Suite 400
Washington, DC 20036
Telephone: (202) 466-8960

**RODRÍGUEZ MARXUACH, PSC**
By: /s/ *Miguel J. Rodríguez-Marxuach*
Miguel J. Rodríguez-Marxuach
mrm@rmlawpr.com
(USDC No. 206011)
María Celeste Colberg-Guerra
mcc@rmlawpr.com
(USDC No. 227314)
P.O. Box 16636
San Juan, PR 00908-6636
Tel 787-754-9898

**AKIN GUMP STRAUSS HAUER & FELD LLP**
By: /s/*Brad Kahn*
Brad Kahn (*admitted pro hac vice*)
bkahn@akingump.com
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000

Joanna F. Newdeck (*admitted pro hac vice*)
Joanna.newdeck@akingump.com
2001 K Street N.W.
Washington, DC 20006
Telephone: (202) 887-4000

7