IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of:<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY<br><br>Debtors | PROMESA<br>Title III<br><br>Case No. 17-bk-3283 (LTS)<br><br>(Jointly Administered)[1] |

**OBJECTION TO:**
**"DISCLOSURE STATEMENT FOR THE THIRD AMENDED TITTLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, *ET AL.*"**

Filed by:

**Finca Matilde, Inc.**
Holder of Claim No. 249-1 in Case No. 17-bk-3283 (LTS)

Represented by:

**Isabel M. Fullana-Fraticelli & Assocs. PSC**
The Hato Rey Center Bldg.
268 Ave. Ponce de León Ste. 1002
San Juan, PR 00918-2013
Tel. (787) 250-7242 / Fax. (787) 756-7800

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 35(787)66-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

## TABLE OF CONTENT

I.   PRELIMINARY STATEMENT ......................................................................... 5

II.   RELEVANT BACKGROUND ...................................................................... 7

III.   APPLICABLE STANDARD FOR APPROVAL ........................................... 8

IV.   BANKRUPTCY AND FIFTH AMENDMENT ......................................... 11

V.   IMPROPER AND UNFAIR CLASSIFICATION AND TREATMENT .................... 13

VI.   THE PLAN UNLAWFULLY IMPAIRS FINCA MATILDE'S CLAIM. ................... 15

VII.   THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE
INFORMATION AS TO THE EFFECTIVE DATE OF DISTRIBUTION FOR MEMBERS
OF CLASSES 51 AND 55 ................................................................................ 17

VIII.   CONCLUSION ........................................................................................ 19

## TABLE OF AUTHORITIES

### Cases

Balzac v. Porto Rico, 258 U.S. 29 (1922) ...........................................................................11

Downes v. Bidwell, 182 U.S. 244 (1901) ...........................................................................11

In re Bjolmes Realty Trust, 134 BR 1000 (Bankr.D.Mass 1991) .....................................10

In re El Comandante Mgmt. Co., LLC, 359 B.R. 410 (Bankr. D.P.R. 2006) ....................10

In re Ferretti, 128 B.R. 16 (Bankr. D.N.H. 1991)..............................................................10

In re Mahoney Hawkes, LLP, 289 B.R. 285 (Bankr.D.Mass. 2002) .................................10

In re Pecht, 53 B.R. 768 (Bankr. E.D. Va. 1985) ..............................................................13

In re Potomac Iron Works Inc., 217 BR 170 (Bankr D. Md. 1997) ..................................17

In re: Buttonwood Partners, Ltd., 111 B.R. 57 (Bankr. S.D.N.Y 1990) ...........................14

In re: Cardinal Congregate I, 121 B.R. 760 (Bankr. S.D. OH. 1990) ................................9

In re: City of Detroit, 524 B.R. 147 (Bankr. E.D. Mich. 2014)..................................passim

In re: Eastern Maine Elec. Co-op., Inc., 125 BR 329 (Bkrtcy.D.Me 1991) ......................13

In re: GSC, Inc., 453 B.R. 132 (Bankr. S.D. NY. 2011) ...................................................15

In re: LightSquared, Inc., 513 B.R. 56 (Bankr. S.D.N.Y. 2014) .......................................13

In re: Microwave Products of America, Inc., 100 B.R. 376 (Bankr. W.D. Tenn. 1989) ....9

In re: Scioto Valley Mortgage Co., 88 B.R. 168 (Bankr. S.D. OH. 1988) .........................9

In re: Sentinel Management Group. Inc., 398 B.R. 281 (Bankr. N.D. Ill. 2008)............14

In re: Yates Development Inc. 258 BR 36 (Bankr MD Fla. 2000) ....................................19

<u>Knicks v. Township of Scott</u>, 558 U.S. ___ (2019), 139 S. Ct. 2162, 2171 ...............passim

<u>L & J Anaheim Assocs. V. Kawasaki Leasing Intl.</u>, 995 F.2d 940 (9th Cir. 1993) ........... 15

<u>Louisville Joint Stock Land Bank v. Radford</u>, 295 U.S. 555 (1935) ........................... 6, 11

<u>Mabey v. S.W. Elec. Power Co., (In re Cajun Elec. Power Co.)</u>, 150 F.3d 503 (5th Cir. 1998) ....................................................................................................................... 9

## Statutes

48 U.S.C § 2141 ................................................................................................................ 12

48 U.S.C. § 2174 .............................................................................................................. 10

## Treatises

7 <u>Collier on Bankruptcy</u> P 1122.03 ................................................................................ 13

7 <u>Collier on Bankruptcy</u> P 1122.03[3] ............................................................................ 14

TO THE HONORABLE COURT:

COMES NOW **Finca Matilde, Inc.** ("Finca Matilde"), a creditor in the captioned case, whom, through the undersigned legal counsel, very respectfully state, pray, and request that this Honorable Court denies approval of the *Disclosure Statement for the Third Amended Tittle III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* ("Disclosure Statement") filed by the Financial Oversight and Management Board for Puerto Rico ("Oversight Board") at Docket No. 16741 for the reasons stated herein below.

## I.      PRELIMINARY STATEMENT

The Supreme Court of the United States has long established that, under the Fifth Amended of the Constitution, there are two types of eminent domain takings: direct condemnation, and indirect condemnation. The Supreme Court has also established that, regardless of whether its direct or indirect condemnation, a "[g]overnment action that works a taking of property rights necessarily implicates the federal constitutional obligation to pay just compensation." Knicks v. Township of Scott, 558 U.S. ___ (2019), 139 S. Ct. 2162, 2171. Despite this clear rule of constitutional law, and with no rational basis for distinction, the Disclosure Statement and Plan of Adjustment only provides classification for direct condemnation claim; whereas indirect condemnation claims are, by default, classified as general unsecured claim subject to discharge. Finca Matilde, as a holder of an inverse condemnation claim, submits that the categorization of its claim in this classification is unconstitutional, unfair, and has no rational basis for it.

Finca Matilde holds against the Commonwealth of Puerto Rico, the Debtor, a claim for an eminent domain taking in the principal amount of $11,184,576.00, plus interests. This claim, as of the commencement of this case, was reduced to a final judgment and

Finca Matilde filed a claim in this case to participate in the distribution on this Title III case of the Commonwealth of Puerto Rico. Notwithstanding of Finca Matilde's claim, neither the Disclosure Statement not Joint Plan provide for distribution of eminent domain claims based on indirect condemnation.

Finca Matilde hereby objects to the Disclosure Statement and Plan. Eminent domain claims, which include inverse condemnation claims, are not contractual claims that may be discharged or otherwise impaired by any act of Congress. *See* Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589 (1935); In re: City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014). These are constitutional claims that arise, not only out of local laws, but out of the Fifth Amendment of the United States. As such, they cannot be discharged and payment in full must be provided for in any proposed Disclosure Statement and Plan. Until such matter is addressed, the proposed Disclosure Statement cannot be deemed to contain adequate information. Moreover, without providing payment for such claims, the proposed plan is patently unfeasible and cannot be confirmed.

Moreover, even if the indirect condemnation claims were to be included in Class 51 along with direct condemnation claims, the Disclosure Statement would still not contain adequate information. Members of Class 51 are unlawfully impaired. "The Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." Knicks v. Township of Scott, 558 U.S. ___ (2019), 139 S. Ct. 2162, 2170. Moreover, "no matter what sort of procedures the government puts in place to remedy a taking, a property owner has a Fifth Amendment entitlement to compensation as soon as the government takes his property without paying for it." Id. Yet, despite this clear rule of law, the Oversight Board seeks to

limit its constitutional obligation to the availability of potential funds recovered in certain avoidance actions. The Disclosure Statement does not provide for alternate sources of payments if the avoidance actions fund does not suffice to pay 100% of the class with interests. To confirm the proposed plan with the classification schemed set forth by the Oversight Board would certainly violate the Fifth Amendment as it would deny Finca Matilde just compensation.

## II.    RELEVANT BACKGROUND

1.     Finca Matilde is a corporation organized under the laws of the Commonwealth of Puerto Rico. It is the owner in fee simple absolute of a land parcel in the Ponce municipality of Puerto Rico.

2.     On 2008, the Commonwealth's General Assembly and Governor approved Puerto Rico Act No. 277-2008 which significantly impaired Finca Matilde's use of its real property.

3.     On October 25, 2010, Finca Matilde filed a lawsuit in the Puerto Rico Court of First Instance in Ponce (the "Ponce Court"). In this case, Finca Matilde alleged that Act No. 277-2008 constituted a taking and, as such, the Commonwealth was obligated to pay just compensation for such taking.

4.     After trial, on November 27, 2013, the Ponce Court entered judgment granting Finca Matilde's complaint; it determined that the Act No. 277-2008 constituted a taking and further determined that the just compensation amounted to $11,184,576.00 plus interest. This judgment has not been paid.

5.     The instant Title III case was filed on May 3, 2017, and Finca Matilde filed a timely proof of claim for said amount.

6.      On January 21, 2019, Finca Matilde's legal counsel met with the Board's local counsel to discuss how this eminent domain claim will be treated. Nevertheless, at that time the Board did not know how it would treat and provide for the Commonwealth's eminent domain claims.

7.      On May 11, 2021, the Board filed the Disclosure Statement and Third Amended Joint Plan of Adjustment [Docket No. 16741]. While the Disclosure Statement and Plan contain a class for eminent domain claims, neither of these documents provides for payment of Finca Matilde's eminent domain claim as reverse taking.

8.      Eminent Domain claim are classified as Class 51 of the Plan. According to the Disclosure Statement, such class:

> "consists of all claim arising from or related to a condemnation action or proceeding **commenced by** the Commonwealth or an agency or entity thereof in the Court of First Instance in accordance with 32 L.P.R.A. § 2905 **to obtain title to real property** located in Puerto Rico, and a Final Order has been entered for an amount in excess of the amount deposited by the condemnor." [Docket No. 16741, p. 407].[2], [3] [Emphasis was added].

9.      Neither the Disclosure Statement nor the Plan contain a classification for inverse condemnation claims that were commenced by the claimant against the Commonwealth or its agencies.

## III.   APPLICABLE STANDARD FOR APPROVAL

10.     Section 1125 of the Bankruptcy Code, applicable to PROMESA's Title III pursuant to 48 U.S.C. § 2161, provides that the disclosure statement must be approved

---

[2] See also Plan of Adjustment at Docket No. 16741-1, p. 25, § 1.189.

[3] Any reference to a page number in the document refers to the page number assigned by the CM/ECF system.

by the Court prior to solicitation of votes in favour of a plan, and it must contain adequate

information which is defined as:

> "[i]nformation of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records,
> including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the
> debtor, and a hypothetical investor typical of the holders of
> claims or interests in the case, that would enable such a
> hypothetical investor of the relevant class to make an
> informed judgment about the plan ..." 11 USC §1125(a)

11.    The information contained in a disclosure statement is of the utmost

importance, as the Bankruptcy Code, as applicable by PROMESA, contemplates that a

creditor is to rely on the disclosure statement to make an informed and rational economic

decision as to whether or not oppose or accept the Chapter 11 Plan. *See* In re: Microwave

Products of America, Inc., 100 B.R. 376, 377 (Bankr. W.D. Tenn. 1989).

12.    Whether a disclosure statement provides adequate disclosure is "left

essentially to the judicial discretion of the court and [...] the information required will

necessarily be governed by the circumstances of the case." Mabey v. S.W. Elec. Power Co.,

(In re Cajun Elec. Power Co.), 150 F.3d 503, 518 (5th Cir. 1998) (quoting S. REP. No. 95-

989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907). In determining what

information must be disclosed in ordered for the statement to be deemed as adequate

bankruptcy courts have adopted a non-exhaustive list of information that a disclosure

statement needs to contain. Among the items on this list, debtors must provide (1) a

complete description of the available assets and their value, (2) the anticipated future of

the Debtor, (3) **information regarding claims against the estate**, (4) any financial

information, valuations or pro forma projections that would be relevant to creditors'

determinations of whether to accept or reject the plan, and (5) information regarding the

future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor. <u>In re: Cardinal Congregate I</u>, 121 B.R. 760, 765 (Bankr. S.D. OH. 1990), *quoting* <u>In re: Scioto Valley Mortgage Co.</u>, 88 B.R. 168 (Bankr. S.D. OH. 1988).

13.   In sum, a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization, <u>Cardinal Congregate I</u>, 121 B.R. at 765, and "must clearly and succinctly inform the average unsecured creditor ***what*** **it is going to get,** ***when*** **it is going to get it**, and what contingencies there are to getting its distribution." <u>In re Ferretti</u>, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). [Emphasis was added].

14.   In this case, the Disclosure Statement lacks essential information as to eminent domain claims which are non-dischargeable and need to be paid before any other class of creditors pursuant to PROMESA's Section 314(b)(3) and (6), 48 U.S.C. § 2174, does not provide information as to the eminent domain claims. The filed Disclosure Statement does not even mention the existence of these indirect condemnation claims.

15.   Furthermore, bankruptcy courts have consistently held that "at the hearing on the approval of a disclosure statement, the court may consider issues pertaining to the plan, and may rule upon such issues, when the plan defects will make it not confirmable." <u>In re El Comandante Mgmt. Co., LLC</u>, 359 B.R. 410, 415 (Bankr. D.P.R. 2006) (citing <u>In re Felicity Associates, Inc.</u>, 197 B.R. 12, 14 (Bankr.D.R.I.1996)). In other words, when it is contended that the "plan is so fatally, and obviously flawed that confirmation is impossible." Id. (citing <u>In re Mahoney Hawkes, LLP</u>, 289 B.R. 285, 294 (Bankr.D.Mass. 2002)). *See* also, <u>In re Bjolmes Realty Trust</u>, 134 BR 1000 (Bankr.D.Mass 1991); <u>In re O'Leary</u>, 183 B.R. 338, 338–39 (Bankr.D.Mass.1995). Consequently, courts may

disapprove a disclosure statement that contains adequate information, when the proposed plan "cannot possibly be confirmed." Id. (citing, In re CRIIMI MAE, Inc., 251 B.R. 796, 799 (Bankr.D.Md.2000)).

## IV.    BANKRUPTCY AND FIFTH AMENDMENT

16.    The Fifth Amendment of the Constitution of the United Stated, ("Taking Clause") provides that:

> "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; **nor shall private property be taken for public use, without just compensation**." (Emphasis was added).

17.    A bedrock of bankruptcy law is that, unlike the states, Congress may discharge a debtor's personal obligation and impair creditors contractual obligations. *See* Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589 (1935). This authority, however, is not without limits. While Congress, through the enactment of the Bankruptcy Code, may impair contractual rights through the bankruptcy system, it cannot discharge constitutional claims under the Fifth Amendment or the Taking Clause. "The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment." Id.  See also In re: City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014).

18.    Even though Puerto Rico is not a state, "Congress, in legislating for the territories would be subject to those fundamental limitations in favor of personal rights which are founded in the Constitution and its amendments" Balzac v. Porto Rico, 258 U.S.

29, 312-313 (1922). Therefore, is has long been held that the people of Puerto Rico "are entitled under the principles of the Constitution to be protected in life, liberty and property", Downes v. Bidwell, 182 U.S. 244, 283 (1901), and "[t]he guaranties of certain fundamental personal rights declared in the Constitution, as for instance that no person could be deprived of life, liberty or property without due process of law, had from the beginning full application in the Philippines and Porto Rico [*sic*]" Balzac v. Porto Rico, 258 U.S. 29, 312-313 (1922).

19.     Now, in this case as it was previously mentioned, prior to the commencement of the above captioned Tilled III case, the Commonwealth of Puerto Rico, approved a legislative act that that the Ponce Court determined that the Commonwealth had taken Finca Matilde's use of its real property and, as such, was Finca Matilde was entitled to a principal award of $11 million in just compensation for the taking. Yet, notwithstanding Finca Matilde claim against the Commonwealth, the Oversight Board failed to disclose the existence of Finca Matilde's eminent domain claim of $11 million. This is essential information a "hypothetical investor" would need to make an informed decision on whether accept the plan or vote against it.

20.     In the first plan, the Disclosure Statement and Plan are premised on the Fiscal Plan. PROMESA's Section 201(b)(1)(N) provides that the fiscal plan shall "respect the relative lawful priorities or lawful liens as may be applicable in the constitution, other laws, or agreements of a covered territory" 48 U.S.C § 2141. Taking claims are of constitutional nature and local law provides that payment of eminent domain claims must be included in the fiscal plan. Because Finca Matilde's claim cannot be discharged and must be provided for, eminent domain claims are a class that will "water down" distribution for the rest of the creditors and needs to be disclosed.

21.     Secondly, if the Board's intention is to include eminent domain claims as general unsecured, such classification is improper and makes the proposed Joint Plan patently unfeasible.

## V.     IMPROPER AND UNFAIR CLASSIFICATION AND TREATMENT

22.     Courts may disapprove a disclosure statement that contains adequate information, when the proposed plan "cannot possibly be confirmed." Id. (quoting, In re: CRIIMI MAE, Inc., 251 B.R. 796, 799 (Bankr.D.Md.2000)). Where the plan's inadequacies are patent, they may, and should be addressed at the disclosure statement stage. In re: Eastern Maine Elec. Co-op., Inc., 125 BR 329 (Bkrtcy.D.Me 1991). "Submitting the debtor to the attendant expense of soliciting votes and seeking court approval on a clearly fruitless venture would be costly and it would unduly delay any possibility of a successful reorganization". In re Pecht, 53 B.R. 768, 769-70 (Bankr. E.D. Va. 1985)

23.     Relevant issues pertaining to the plan are classification of claims, an artificial classification of a claim, whether the plan unfairly discriminates against a class of claims, and the solicitation procedure. In re: El Comandante Mgmt.Co., supra. Absolute priority rule issues have been considered by courts at the disclosure hearing. See, In re: Bjolmes Realty Trust, supra; In re Eastern Maine Elec. Co-op. Inc., supra.

24.     "One of the cardinal principles of bankruptcy law is equality of treatment of similarly situated creditors." 7 Collier on Bankruptcy P 1122.03. Therefore, while the Bankruptcy Code allows plan proponents to make separate classifications, such is justified only when the plan proponent can articulate a reasonable justification for such separate classification. In re: LightSquared, Inc., 513 B.R. 56, 83 (Bankr. S.D.N.Y. 2014).

However, separate classification of otherwise similar claim must not "offend one's sensibility of due process and fair play." Id.

25.     According to case law the requirement that a Chapter 11 plan does not unfairly discriminate, applicable to this case pursuant to 48 U.S.C. § 2161, is intended to complement the fair and equitable test and to compensate for complex priorities among classes. In re: Buttonwood Partners, Ltd., 111 B.R. 57 (Bankr. S.D.N.Y 1990). Pursuant to section 1122 of the Bankruptcy Code the debtor, or plan proponent, may classify similar claims or interests in a class only if they are substantially similar to the claims and interests of such class. In re: El Comandante Management Co., LLC, 2006 WL 3903593.

26.     "[T]he term "substantially similar" must be construed to mean similar in legal character or effect as a claim as or effect as a claim against the debtor's assets or as an interest in the debtor." 7 Collier on Bankruptcy P 1122.03[3]. "This determination should focus on the nature or legal attributes of the claims and not on the status or circumstances of the claimants." In re: Sentinel Management Group. Inc., 398 B.R. 281 (Bankr. N.D. Ill. 2008).

27.     In the case of the filed Disclosure Statement for the Plan of Adjustment, the Oversight Board makes an artificial distinction between eminent domain claims that is not only unfair, but unsupported by any source of law. Direct and indirect condemnation both stem from the same constitutional provision, the Fifth Amendment of the Constitution. Likewise, the procedural mechanism to collection of unpaid taking claims is the same for either form of governmental condemnation is 42 U.S.C. § 1983. See Knicks v. Township of Scott, 558 U.S. ___ (2019), 139 S. Ct. 2162, 2171. Consequently, the legal nature of both direct and indirect condemnation is exactly the same. The Oversight Board

attempt to distinguish them is artificial, unlawful and tantamount to a willful attempt to violate Finca Matilde's constitutional right to just compensation.

## VI.   THE PLAN UNLAWFULLY IMPAIRS FINCA MATILDE'S CLAIM.

28.   Section 1124 of the Bankruptcy Code provides in part, that a class of claims or interests is impaired unless the plan leaves unaltered the legal, equitable and contractual rights to which such claim or interest is entitled. 11 U.S.C. §1124(1). This section has been interpreted to have a broad interpretation and any alteration to the claimant's legal, equitable, or contractual rights under a plan would make that claim impaired. In re: GSC, Inc., 453 B.R. 132, 177 (Bankr. S.D. NY. 2011) quoting L & J Anaheim Assocs. V. Kawasaki Leasing Intl., 995 F.2d 940, 942 (9th Cir. 1993). Thus, in any event, given the plain language of section 1124, a creditor's claim is "impaired" unless its rights are left unaltered by the plan. *Id.* Such is the case even when the rights and claims of that creditor are enhanced by the plan. In re: Wabash Valler Power Assoc., 72 F.3d 1305, 1321 (7th Cir. 1995).

29.   Under the Fifth Amendment, a property owner is entitled to compensation for the loss of his property. To this end, the "government action that works a taking of property rights necessarily implicates the constitutional obligation to pay just compensation." Knicks v. Township of Scott, 558 U.S. ___ (2019), 139 S. Ct. 2162, 2171. This constitutional obligation to pay just compensation is only limited by the Constitution itself. Nevertheless, the Oversight Board seeks to limit this obligation to the recovery of certain avoidance actions. It, thus, follows that if recovery is insufficient, eminent domain claimant's such as Finca Matilde will not be able to collect on any unpaid portion of the takings claim. This impairment, however, does not pass muster of the Fifth Amendment. "The availability of any particular compensation remedy, such as an inverse

condemnation claim under state law, cannot infringe or restrict the property owner's federal constitutional claim" Id. It then follows that the debt adjustment process created by Congress in PROMESA, as a post taking remedy, cannot infringe Finca Matilde's right to just compensation.

30.     "A Takings Clause violation is defined by two elements: (1) the public taking of private property, and (2) the subsequent denial of just compensation for that taking." In re: City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014). The government's post-taking actions cannot impair the property owner's existing Fifth Amendment right insofar, under the Fifth Amendment, "where the government's activities have already worked a taking of all use of property, **no subsequent action by the government can relieve it of the duty to provide compensation**." Knicks v. Township of Scott, 558 U.S. ___ (2019), 139 S. Ct. 2162, 2171 [Emphasis was added]. If the proposed Plan of Adjustment is confirmed it would violate the Fifth Amendment to the extent that it limits liability to the recovered funds (if any), and any unpaid portion would be discharged or otherwise uncollectible. For this reason, the Plan is patently unfeasible as unconstitutional.

31.     In the Chapter 9 case of the City of Detroit, the bankruptcy court faced a similar controversy where the Chapter 9 debtor sought to impair and discharge certain Taking Claims creditors as general unsecured creditors. The court in the City of Detroit case ruled:

> "The City argues that the Takings Clause creditors have no such property interest and that chapter 9 does not extinguish any such property right. The City cites several cases establishing the principle that an unsecured creditor's mere right to collect payment is not a property interest.

The Court rejects this argument. The taken property here is not the creditor's unsecured claim in bankruptcy. Moreover, the source of the taking is immaterial. In the present case, the City took, or allegedly took, the creditors' property. In Radford and Security Industrial, the bankruptcy code itself resulted in the taking. Nevertheless, all that matters under the Fifth Amendment is that the owner of private property must be justly compensated if that property was taken for public use, whenever and however that taking occurred.

If confirmed, this plan would deny that just compensation. The plan would allow the City to impair the property owners' constitutional claim for just compensation after the City took their private property. **That violates the Fifth Amendment**." In re: City of Detroit, 524 B.R. 147, 269-270 (Bankr. E.D. Mich. 2014) [Emphasis was added].

## VII.   THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION AS TO THE EFFECTIVE DATE OF DISTRIBUTION FOR MEMBERS OF CLASSES 51 AND 55.

32.   Although the Bankruptcy Code does not define the effective date of a plan, it

is generally understood to be the date upon which distribution(s) begin:

> **[T]he effective date is that date upon which a confirmed plan becomes operative and distribution of cash or property is commenced.**
> In essence it is the point in time when the plan can and should be susceptible of implementation and commencement of the operation of its provisions. The date is important to claimants and interest holders because of the distribution to them of value whether it is money or other property. In re Potomac Iron Works Inc., 217 BR 170, 172 (Bankr D. Md. 1997) [Emphasis was added][4]

33.   In this case the Disclosure Statement and Plan subjects the distribution of

eminent domain and general unsecured claim to the outcome of several avoidance

actions.  Distribution to members of these classes boils down to a series conditions that

---

[4] See also Weintraub & Crames, Defining Consummation, Effective Date of Reorganization & Retention of Post Confirmation Jurisdiction: Suggested Amendments to Bankruptcy Rule , 64 Am Bank L J. 245- 276 (1990)

may never occur, ultimately leaving such a determination undefined. The plan as drafted

defines the effective date of the Plan defines "Effective Date" as follows:

> "[t]he first (1st) Business Day on which (i) all the conditions
> precedent to  confirmation of the Plan specified in Section
> 81.1 of the Plan shall have been satisfied or waived, as
> provided in Section 81.2 of the Plan, and (ii) all the conditions
> precedent to the substantial consummation of the Plan and
> occurrence of the Effective Date specified in Section 82.1 of
> the Plan shall have been satisfied or waived as provided in
> Section 82.2 of the Plan" [Docket No. 16741-1, p. 25, § 1.188].

34.     With respect to Class 55, the Disclosure Statement provides that the holders

of claims in such class will be subject to the following treatment:

> "On the Effective Date,
>
> (a) to the extent not previously modified, the automatic stay
> pursuant to section 362 of the Bankruptcy Code will be
> deemed modified to permit the holder of an Eminent Domain
> Claim to (i) liquidate such Eminent Domain Claim, and (ii)
> cause the Clerk of the Court of First Instance to distribute to
> such holder the amount of monies on deposit with the Court
> of First Instance with respect to the condemned property, and
>
> (b) the holder of an Allowed Eminent Domain Claim will be
> entitled to receive, in full consideration, satisfaction, release,
> and exchange of such holder's Allowed Eminent Domain
> Claim, such holder's Pro Rate Share of the CW GUC
> Recovery."
>
> The CW GUC Recovery is comprised of:
>
> (A) $125,000,000.00 in Cash, and
>
> (B) net recoveries by the Avoidance Actions Trust allocable to
> the Avoidance Actions CW Interests." [Docket No. 16741, p.
> 419].

35.     Class 55 is subject to this same treatment.[5] Yet, the Disclosure Statement

does not mention the total amount owed by the Debtor to Class 55 members, much less

---

[5]  The treatment for Class 55 is as follows:

> "Treatment: On the Effective Date, each holder of an Allowed CW General Unsecured Claim will
> receive its Pro Rata Share of the CW GUC Recovery, comprised of:

the total amount of such class of indirect condemnation claims are included. Therefore, the Disclosure Statement fails to inform creditors when they will get paid, if paid at all. If distribution to members of Classes 51 and 55 is subject to the outcome of the "CW GUC Recovery", there is no certainty as to whether Eminent Domain Claims will be paid at all.[6] This contingent effective date effectively forces the creditors to bear all the risks of delay, without compensation. Such a vague definition leaves a substantial and indefinite delay between the proposed confirmation hearing and the effective date of the Plan, thus, for all practical purposes, putting the case on hold. Clearly, a plan with such a contingent effective date cannot be confirmed. See In re: Yates Development Inc. 258 BR 36, 43 (Bankr. MD Fla. 2000).

## VIII.   CONCLUSION

"The Supreme Court has consistently held that bankruptcy laws are subject to the prohibition against governmental taking of private property without just compensation." In re: City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014). Taking claims includes claims resulting from either a direct or indirect condemnation by the government. Eminent domain claims include actions by the are substantially different from contractual

---

(A) $125,000,000.00 in Cash, and
(B) net recoveries by the Avoidance Actions Trust allocable to the Avoidance Actions CW Interests. Distributions to a holder of an Allowed CW General Unsecured Claim cannot exceed 100% of such holder's Allowed CW General Unsecured Claim. If Allowed CW General Unsecured Claims have been paid in full, the excess value in the CW GUC Recovery will be redistributed, on a pro rata basis, to the benefit of holders of Allowed Eminent Domain Claims, Allowed CW/Convention Center Claims, Allowed CW/HTA Claims, Allowed CW/PRIFA Rum Tax Claims, and Allowed CW/MBA Claims."

[6] To this end, the Oversight Board admits this insofar the Disclosure Statement also provides that that:

As of the date of this Disclosure Statement, there can be no assurance that any or all of the conditions to effectiveness of the Plan will be satisfied (or waived). Accordingly, even if the Plan is confirmed by the Title III Court, there can be no assurance that the Plan will be consummated and the adjustment of the Debtors' debts completed. [Docket 16741, p. 494].

or tort claims. Hence, Finca Matilde's claim for inverse condemnation cannot be lumped with other general unsecured claims insofar, the first cannot be impaired while the second can be impaired and discharged.  Moreover, there is no rational distinction between the legal nature of a claim for direct and indirect condemnation; both claims arise from the Fifth Amendment of the Constitution. Additionally, since the Fifth Amendment forbid impairment of such claims, Finca Matilde suggests the following language:

> Classification: Class 1 consists of claims arising form or related to a condemnation action or proceeding commenced by the Commonwealth or an agency or entity thereof in the Court of First Instance in accordance with 32 L.P.R.A. § 2905 to obtain title to real property located in Puerto Rico, and a Final Order has been entered for an amount in excess of the amount deposited by the condemnor. <u>Class 51 shall also consist of reverse condemnation claims initiated by the property owner against the Commonwealth or an agency or entity thereof in the Court of First Instance.</u>
>
> Treatment: On the Effective Date holders of Claim 51 will receive 100% distribution of their claims with interests accrued until claim is satisfied in full.
>
> Voting: Class 51 is Unimpaired by the Plan. Class 51 and each holder of an Allowed Eminent Domain Claim are not entitled to vote to accept or reject the Plan.

**WHEREFORE** Finca Matilde requests that this Honorable Court entertains the instant motion and moves Honorable Court deny the approval of the Disclosure Statement filed by the Board at Docket No. 16741.

**I HEREBY CERTIFY**, that on this same date I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system, which will send electronic notification to all participants. Pursuant to the Fourteenth Amended Notice, Case Management and Administrative Procedures, the instant motion was served via First Class Mail upon the (i) Office of the United States Trustee, Edificio Ochoa, 500 Tanca

Street, Suite 301, San Juan, P.R. 00901; (ii) Chambers of the Hon. Laura T. Swain; (iii)

AAFAF and its counsel; (iv) the Oversight Board and its legal counsel, (v) Counsel for the

Creditors Committee, (vi) Counsel for the Retiree Committee, the 20 larges creditors.

**RESPECTFULLY SUBMITED,**

In San Juan, Puerto Rico, this 15th day of June of 2021.

**ISABEL FULLANA-FRATICELLI & ASSOCS., P.S.C.**
The Hato Rey Center Bldg.
268 Ave. Ponce de Leon Ste. 1002
San Juan, Puerto Rico 00918
Telephone: (787) 250-7242
Facsimile: (787) 756-7800

/s/Isabel M. Fullana
USDCPR No. 126802
ifullana@gaflegal.com

/s/Eduardo J. Capdevila
USDCPR No. 302713
ecapdevila@gaflegal.com
