Hearing Date: July 13, 2021 at 9:30 a.m. (Atlantic Standard Time)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## OBJECTION OF THE DRA PARTIES TO THE MOTION OF DEBTORS FOR AN ORDER ESTABLISHING, AMONG OTHER THINGS, PROCEDURES AND DEADLINES CONCERNING OBJECTIONS TO CONFIRMATION AND DISCOVERY IN CONNECTION THEREWITH

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority  (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

## <u>TABLE OF CONTENTS</u>

Preliminary Statement.................................................................................................2

Background ...................................................................................................................3

Objection......................................................................................................................4

I.     The FOMB's Proposed Objection and Discovery Process Prejudices the DRA
Parties.................................................................................................................5

     A.     The Debtors' Proposed "Initial Objections" Process Creates Uncertainty and
Constrains Creditors' Rights...................................................................5

     B.     It Is Prejudicial to Limit Discovery Requests to Documents Not Provided in
the Plan Depository When There Is No Firm Outer Date by Which the Plan
Depository Must Be Populated. ..............................................................7

     C.     The FOMB's Proposal Regarding Witnesses and Depositions Is Unfair and
Burdensome to Creditors. ......................................................................8

     D.     The FOMB's Proposal Regarding Requests for Admission Is Illogical...............11

II.     The FOMB's Proposed Discovery and Confirmation Process Is Needlessly
Condensed........................................................................................................11

     A.     The FOMB Is Rushing to Confirmation to Comply with the GO PSA. ...............11

     B.     The FOMB's Own Comparable Cases Provided Appreciably More
Reasonable Discovery Schedules for Less Complex Cases. ..................................13

     C.     Summary of Concerns with the FOMB's Proposed Schedule.............................17

Relief Requested .......................................................................................................21

Conclusion .................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Chinichian*,
   784 F.2d 1440 (9th Cir. 1986) ...............................................................13

*In re Energy Res. Co.*,
   871 F.2d 223 (1st Cir. 1989), *aff'd sub nom. United States v. Energy Res. Co.*,
   495 U.S. 545 (1990)...........................................................................4, 13

*In re Lionel Corp.*,
   722 F.2d 1063 (2d Cir. 1983)..............................................................4, 17

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
   390 U.S. 414 (1968)..................................................................................11

**Statutes**

11 U.S.C. § 1111(b) .......................................................................................20

*Government Development Bank for Puerto Rico Debt Restructuring Act*, Act
   No. 109-2017, *as amended by* Act No. 147-2018.................................1, 3

*Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA"),
   *codified at* 48 U.S.C. §§ 2101-2241 ........................................................1

**Other Authorities**

Eighth Am. Order Establishing Procedures, Deadlines and Hr'g Dates Relating to
   the Debtor's Plan of Adjustment,
   *City of Detroit, Michigan*,
   Case No. 13-53846 (SWR) (Bankr. E.D. Mich. Aug. 13, 2014) Docket No.
   6699....................................................................................................15, 17

Findings of Fact, Conclusions of Law, and Order Approving Qualifying
   Modification for the Government Development Bank for Puerto Rico
   Pursuant to Section 601(m)(1)(D) of the Puerto Rico Oversight, Management,
   and Economic Stability Act,
   *In re Government Development Bank for Puerto Rico*,
   Case No. 18-01561 (LTS) (Nov. 7, 2018), Docket No. 270....................1

Fed. R. Bankr. P. 3014...................................................................................20

Hearing Transcript,
   *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
   Case No. 17-BK-3283 (D.P.R. Apr. 28, 2021) ......................................12

James L. Tatum III, *Detroit's Bankruptcy and Market Reentry,* 37 EMORY BANKR.
DEVELOPMENTS J. 65 (2020) ................................................................................. 14

Order Establishing Disc. Procedures In Connection With The Settlement Mot. and
Plan Confirmation,
*In re Maxus Energy Corp.*,
Case No. 16-11501(CSS) (Bankr. D. Del. Feb. 17, 2017), Docket No. 907 ......................... 16

Order Establishing Disc. Schedule And Procedures In Connection With Plan
Confirmation,
*Cumulus Media Inc.*,
Case No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017), Docket No. 148 ..................... 15

Order Establishing Procedures, Deadlines and Hr'g Dates Relating to the Debtor's
Plan of Adjustment,
*City of Detroit, Michigan*,
Case No. 13-53846 (SWR) (Bankr. E.D. Mich. Feb. 24, 2014), Docket
No. 2727 ................................................................................................................. 14, 17

Voluntary Pet. Ex. A, *In re Enron Corp.*, Case No. 01-16034 (AJG) (Bankr.
S.D.N.Y. Feb. 13, 2004), Docket No. 1 ................................................................. 14

**COME NOW** AmeriNational Community Services, LLC (the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company (the "Collateral Monitor" and, together with the Servicer, collectively, the "DRA Parties"), which serves as the collateral monitor for Wilmington Trust, N.A. in connection with the new bonds that the DRA issued pursuant to the *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as amended by Act No. 147-2018, and the approved Qualifying Modification for the Government Development Bank for Puerto Rico[2] under Title VI of the *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA"),[3] by and through the undersigned legal counsel, and respectfully submit this objection (this "Objection") to the *Motion of Debtors for an Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [Docket No. 16757] (the "Procedures Motion") filed by the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA"), through the Financial Oversight and Management Board of Puerto Rico (the "FOMB"), in its capacity as representative of the Debtors.[4]

---

[2]   *See* Findings of Fact, Conclusions of Law, and Order Approving Qualifying Modification for the Government Development Bank for Puerto Rico Pursuant to Section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act, Civil Case No. 18-01561 (LTS) (Nov. 7, 2018), Docket No. 270.

[3]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[4]   Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Procedures Motion.  Unless otherwise noted, all docket references refer to the docket of Case No. 17-BK-3283 (LTS).

## **PRELIMINARY STATEMENT**

The Procedures Motion sets forth constricted, prejudicial, and improperly skewed deadlines and requirements in the Debtors' favor.  The Court should modify the FOMB's proposed order significantly.

Specifically, the Procedures Motion constrains the rights of creditors, like the DRA Parties, by:  (i) limiting the time period creditors can object to confirmation and still be able to seek discovery to support their objections, and (ii) generally limiting the timeframe and scope of all of the creditors' discovery rights, including imposing deadlines that are too tight and not allowing the creditors to seek standard follow-up discovery based on what they learn during the discovery process.  This unfairly favors Debtors at the expense of the DRA Parties and other creditors.

In particular, the Procedures Motion limits the creditors' ability to seek discovery only to those issues that creditors specifically object to by August 3, 2021.  This prejudices creditors' ability to pursue their claims and protect their rights, particularly for the DRA Parties who have not been allowed to seek any discovery during the pendency of this matter.

Further, the FOMB's proposed timeline for discovery—and by extension for confirmation overall—is too condensed.  The FOMB seeks to cram the entire discovery process into a very short eight-week period.  It proposes this rushed timeline in the name of meeting a false deadline created by the plan support agreements that the FOMB negotiated with hand-picked, sophisticated parties who are well aware of the normal process for discovery and of the significant issues with the proposed plan.  Moreover, the proposed discovery process is convoluted and unreasonably burdensome to creditors and favors Debtors.  The Court should not let the FOMB and a select set of preferred investors dictate a constrained and prejudicial confirmation process.  Instead, the Court should push forward in a fair and reasonable fashion.

2

In response and as set forth herein, the DRA Parties seek a timeline that is efficient, but provides for a fair objection and discovery process which a case of this complexity and magnitude merits. Simply, this case has already been pending for *four years*—there is no reason to now hurry up and rush its resolution at the expense of the creditors and their rights.

## BACKGROUND

1.      The DRA is a statutory public trust that was created during the Title VI restructuring of the Government Development Bank (the "GDB"). *See* Act No. 109-2017 arts. 201, 204. Through that process, the GDB transferred a substantial portion of its assets to the DRA, including the loans the GDB had issued to the Puerto Rico Highway Transportation Authority ("HTA"). Upon information and belief, as of the date hereof, those loans have an aggregate outstanding principal balance in excess of $1.7 billion and accrued not less than $866.4 million in interest, plus fees and expenses under the terms of the loans. The DRA also received $200 million in principal amount of HTA bonds that the GDB previously held, which, upon information and belief, as of the date hereof, have accrued not less than $97 million in interest plus fees and expenses. Accordingly, the DRA is the single *largest* secured creditor of HTA. In addition, the GDB also transferred to the DRA significant debt obligations against the Commonwealth, PBA, and the Puerto Rico Convention Center District Authority (the "CCDA").

2.      During the pendency of this four-year matter, despite repeated efforts, the DRA Parties have **never** been given the opportunity to seek their own affirmative discovery. Discovery has been stayed with very limited exceptions. On several occasions, the DRA Parties attempted to seek their own discovery, but received only limited intervention rights. *See* Order, Adv. Proc. No. 20-0005-LTS, Mar. 10, 2020, Docket No. 41; Order, Adv. Proc. No. 20-0007-LTS, Mar. 10, 2020, Docket No. 44; Order, Mar. 3, 2020, Docket No. 12005; *see also* DRA Parties' Am. Mot. and Mem. for Adequate Protection or Relief from the Automatic Stay, Mar. 31, 2021, Docket No.

16276; DRA Parties' Reply to FOMB's Resp. to DRA Parties' Resp., Apr. 30, 2020, Docket No.

12999; DRA Parties' Resp. to Mot. of Assured for Relief from the Automatic Stay, Mar. 16, 2020,

Docket No. 12396; DRA Parties' Mot. and Mem. of Notice DRA is Party in Interest and Can

Participate in Monolines' Am. Lift Stay, Feb. 11, 2020, Docket No. 10835; DRA Parties' Mot.

and Mem. for Relief from the Automatic Stay, June 25, 2019, Docket No. 7643.  The DRA Parties

were prohibited from "propound[ing] their own discovery requests" and had no role or input in

shaping other creditors' requests.  *See* Order at 6, Adv. Proc. No. 20-0005-LTS, Docket No. 41;

Order at 6, Adv. Proc. No. 20-0007-LTS, Docket No. 44; Order at 6, Docket No. 12005.[5]

## OBJECTION

3.      It is axiomatic that, while the bankruptcy court has "considerable discretion" to

shape the discovery process,[6] *In re Lionel Corp.*, 722 F.2d 1063, 1066 (2d Cir. 1983), in exercising

this discretion, a bankruptcy court *must* proceed in the "twofold" purpose of both (1) ensuring

fairness to creditors and (2) enabling the bankrupt entity to make a fresh start.  *Cf. In re Energy*

*Res. Co.*, 871 F.2d 223, 230 (1st Cir. 1989), *aff'd sub nom. United States v. Energy Res. Co.*, 495

U.S. 545 (1990).  Courts should consider all the "salient factors pertaining to the proceeding,"

respecting the interests of creditors and debtors alike.  *In re Lionel Corp.*, 722 F.2d at 1071.  "The

need for expedition . . . is not a justification for abandoning proper standards."  *Id.* (quoting

---

[5]     The DRA Parties filed an objection contemporaneously herewith to the *Amended Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* (the "Disclosure Statement Objection"), which contains a more detailed factual background of this matter and is hereby incorporated by reference.  It also explains (i) that the Third Amended Plan is unconfirmable on its face, (ii) the Disclosure Statement does not disclose material risks that can impact confirmation of the plan, and (iii) that the confirmation timeline is too short based on the considerations set forth herein.

[6]     The FOMB attempts to lay out the standard for the Court's discretion in shaping the discovery process. Procedures Mot. ¶ 62.  In doing so, however, the FOMB ignores well settled law, cited in the Procedures Motion and herein, that the Court must take into account fairness to creditors.

4

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 450 (1968)). Here, the FOMB's proposed procedures would hamper fairness for all parties— except the Debtors—and should be revised significantly because the procedures are too condensed and prejudicial to creditors.

## I.    The FOMB's Proposed Objection and Discovery Process Prejudices the DRA Parties.

4.      The FOMB's proposed objection and discovery process would place the interests of Debtors and efficiency well ahead of the rights of objecting creditors like the DRA Parties. *See id.* As demonstrated below, the FOMB's proposal should be revised substantially.

### A.    The Debtors' Proposed "Initial Objections" Process Creates Uncertainty and Constrains Creditors' Rights.

5.      The Debtors' proposed "initial objection" process—while helpful to the FOMB by flushing out creditors' concerns regarding the plan early on—prejudices creditors with short deadlines, an unclear standard, and dates that clash with the discovery schedule. The problems are manifest:

6.      *First*, the FOMB's proposed deadline to file initial objections to confirmation is at the opening of the discovery period on August 3, 2021. Procedures Mot. ¶ 33. This comes **before** discovery begins in earnest—it is three days before creditors must serve discovery requests and two weeks before Debtors have any obligation to respond to discovery requests, providing no guaranty that the Debtors will have produced responsive information in a fashion that permits any follow up by creditors. *Id.*

7.      Creditors would then be foreclosed from exploring any issues during discovery beyond what they manage to include a "legal and factual" basis for in the initial objections. *Id.* ¶ 40. All requests for documents and admissions would be due three days later on August 6, 2021, with *no opportunity for any follow-up requests*. *Id.* ¶ 33.

5

8.      The August 3, 2021 deadline for asserting initial objections is far too early, and the related limitation on the scope of discovery is prejudicial.  Creditors should be allowed complete, adequate discovery before they must assert their objections.  It is unfair to limit discovery requests to "issues set forth in the Initial Objection" when plan confirmation objections submitted through October 8, 2021 can be prosecuted at the confirmation trial.  *Id.* ¶ 42.

9.      *Second*, it is prejudicial to have a discovery process mandating that any information uncovered, which may lead to new or more nuanced objections, cannot be followed up with additional requests.  This is particularly true for the DRA Parties (and other creditors) who had no previous opportunity to seek discovery—they will certainly learn information for the first time during discovery and deserve to explore those revelations.

10.     *Third*, despite the importance of the initial objections to the Procedures Motion's design, the FOMB provides no detail about what the initial objections require.  Instead, the Procedures Motion states only that an initial objection must provide the "legal and factual basis" in support of each objection to confirmation.  *Id.* ¶ 40.  This will incentivize parties to file broad initial objections irrespective of their intent at confirmation, to ensure they waive no rights.  This will harm the Court's efficiency.

11.     If the FOMB finds that the legal or factual basis is not to its liking, or it believes the discovery request does not have a relationship to the initial objection, the FOMB can choose to not respond to the request.  *See id.* ¶ 55.  This is an abstract standard subject to numerous interpretations and provides fertile ground for disputes which may ultimately require the Court's intervention and further delay the DRA Parties' access to necessary information.  The potential delay in access to discovery is particularly troubling considering the condensed proposed

6

discovery timeline which allows no room to resolve discovery disputes. All of this will create a significant burden on the Court to resolve these disputes under the FOMB's expedited schedule.

12.     Moreover, there is likely to be key fact discovery that the FOMB may seek to avoid by arguing the information does not directly impact the confirmability of the plan, even though it is necessary to the DRA Parties' case at trial. Disputes about whether particular facts impact confirmation should be left for trial and access to these facts should not be preemptively cut off during the only discovery period afforded to the DRA Parties.

> **B.     It Is Prejudicial to Limit Discovery Requests to Documents Not Provided in the Plan Depository When There Is No Firm Outer Date by Which the Plan Depository Must Be Populated.**

13.     As currently proposed, the existing disclosure statement depository would be converted to a plan depository at some point "on or *after*" July 13, 2021. *Id.* ¶ 33 (emphasis added). Production requests, due August 6, 2021, would be limited to the extent they are duplicative of any documents in the plan depository. *Id.* ¶¶ 33, 40.

14.     It is unfair to limit discovery requests based on the ultimate contents of the plan depository when there is no firm outer deadline by which the FOMB must finish populating it. This dynamic would permit (and encourage) the FOMB to withhold critical documents needed to proceed with discovery, and then reject discovery requests if the FOMB determines such requests are not "reasonably necessary" given the documents the FOMB can dump into the plan depository up until the eve of trial. *Id.* ¶ 50.

15.     Even if the FOMB uploaded all documents to the plan depository on its earliest proposed date of July 13, 2021, this gives creditors only three weeks to process, review, and understand its contents, assert "initial objections" by August 3, 2021, and then serve discovery requests three days later on August 6, 2021. Every day the FOMB delays in providing these additional materials relevant to plan confirmation will greatly reduce the creditors' ability to fully

participate in the discovery process.   No potential extension to subsequent deadlines is contemplated—even if the FOMB does not upload a single new document to the plan depository until, or even after, August 6, 2021.

16.   Tellingly, the "deadline" for populating the plan depository is the only commitment in the entire Procedures Motion that has no specific date.   In contrast, even the *Enron* Order, which the FOMB holds out as an appropriate exemplar, required the debtors there to populate their document depository "on or *before*" the appropriate date.   Procedures Mot. Ex. B ¶ 6.

17.   Moreover, it appears the FOMB may already have in its possession materials relevant to plan confirmation that it is withholding at this time.[7]   *See* Procedures Mot. ¶ 35. However, the FOMB alone cannot judge what documents are relevant to the approval of the disclosure statement or plan confirmation.   These documents should be produced as soon as possible to avoid prejudicing the creditors.

### C.   The FOMB's Proposal Regarding Witnesses and Depositions Is Unfair and Burdensome to Creditors.

18.   Another flawed aspect of the FOMB's proposal is its treatment of witnesses and depositions.   The Procedures Motion provides inadequate time to identify witnesses and prepare for depositions.   *Id.* ¶ 33.   The deposition schedule is too short and unreasonably consolidates both fact and expert depositions.   *Id.*   Further, the proposal contains unfair and one-sided exceptions

---

[7]   The Procedures Motion is ambiguous on this point.   The Procedures Motion says the FOMB "intend[s] to populate the existing depository . . . with additional documents, relevant to Plan confirmation."   Procedures Mot. ¶ 35.   In particular, the FOMB commits to ultimately populate the depository with "documents **relied upon by Debtors in analyzing** the various claims and causes of action being compromised and settled and/or assets referenced in Article II of the Plan," and "documents concerning the Best Interests Test Reports **set forth in the Disclosure Statement**."   *Id.* (emphasis added).   It is unclear whether the FOMB currently possesses material it understands is relevant to confirmation and which the Debtors "relied upon" in formulating the plan.   The FOMB should clarify whether it is in possession of such documents, and in any event, should be compelled to supply such materials into the depository as soon as they come into Debtors' possession (and immediately, assuming the Debtors possess any such materials today).

8

that allow only the FOMB and allied plan proponents to supplement their fact witnesses and call

unannounced rebuttal witnesses at trial.  *Id.* ¶¶ 45-46.

19.     Creditors are expected to determine their witnesses too early in the discovery

process.  *Id.* ¶ 33.  Just a mere 10 days after discovery begins, the Procedures Motion requires the

creditors to file final fact witness lists and topics by August 13, 2021.  *Id.* ¶ 33.  This is even before

the FOMB will have identified any objections to creditors' document requests.  *Id.* ¶ 51.  This is

too early in the process to determine fact witnesses—creditors will still be reviewing discovery

and resolving discovery disputes.  Fact witnesses often evolve from document discovery as well

as depositions, and thus creditors will not yet be in a position to identify their final fact witnesses.

20.     In addition, opening expert disclosures are due August 30, 2021, opening expert

reports are due September 3, 2021, rebuttal expert disclosures are due September 24, 2021, and

rebuttal expert reports are due October 1, 2021.  *Id.* ¶ 58.  This is too soon after document discovery

is received and before any fact witness depositions.  In addition, all of these dates are far too close

to, if not overlapping with, the September 13 through October 4, 2021 deposition period.  However,

expert witness designations should adapt to how the facts develop and the objections take shape.

The Procedures Motion does not give the parties sufficient time to determine and prepare their

own expert witnesses, or fully understand and vet other parties' expert witness reports in advance

of depositions.  Parties would have to receive and review rebuttal expert witness reports and

prepare to take depositions ***three days before*** the deposition period closed.

21.     Further, standard discovery procedures, especially in complex litigations, typically

involve first a fact witness deposition period, followed by an expert witness deposition period.  For

example, *Detroit* and *Cumulus Media Inc.*, which the FOMB cites as exemplars, provided for

separate and lengthy deposition periods for both fact and expert witnesses.  *Infra* ¶ 34.  This allows

for adequate time to develop factual issues prior to expert testimony related to those issues.  The FOMB, however, has proposed one combined deposition period from September 13 through October 4, 2021.  Procedures Mot. ¶ 33.  There is no reason to depart from the normal process here.

22.     Also, while fact witness lists submitted by the proper deadline are binding on creditors, the FOMB may supplement its fact witnesses "for any reason" until October 8, 2021.  *Id.* ¶ 45.  However, witness depositions are scheduled from September 13 through October 4, 2021.  *Id.* ¶ 33.  This means the FOMB could supplement its fact witnesses up to ***four days after*** the end of the deposition period.  Although the Procedures Motion is ambiguous about whether such supplemental witnesses could be deposed after the deposition period, even if they occur, it would mean such depositions would have to squeeze in between well over a dozen other deadlines in October leading up to the confirmation trial.  *See id.* ¶¶ 33, 53.  This would be a hectic process unlikely to allow for proper preparation of depositions and would harm the creditors' ability to prepare for the confirmation trial.

23.     Lastly—in addition to the supplemental fact witness loophole to the FOMB's benefit—the Procedures Motion also permits "a party" to present new, unannounced witnesses at the confirmation trial "for the limited purpose of responding to any objections to confirmation . . . or in rebuttal to testimony offered . . . in opposition to confirmation."  *Id.* ¶ 46.  While the FOMB attempts to obscure this loophole by implying any party could introduce an eleventh hour witness, the language of this loophole is limited to responding to or rebutting testimony offered "in opposition to confirmation."  *Id.*  It is highly prejudicial to permit only the plan proponents to call any number of unannounced rebuttal witnesses, but not afford the opponents the same right.

### D.      The FOMB's Proposal Regarding Requests for Admission Is Illogical.

24.     Another illustration of the unfairness of the FOMB's proposed process is the deadline related to requests for admissions ("RFA").  The RFAs, limited only "to the authentication of documents intended to be offered as exhibits," are due at the very beginning of the discovery period on August 6, 2021.  *Id.* ¶ 49.  On that same day, creditors' only permitted round of document requests are also due.  *Id.* ¶ 33.

25.     This makes no sense for at least three reasons.  *First*, substantive RFAs can help pinpoint facts and issues and limit document discovery and depositions, and thus should be processed prior to document requests.  *Second*, RFAs permitted at the end of the discovery period enable the parties to narrow issues in dispute during the confirmation process.  *Third*, this timeline hampers authentication because many documents will not have even been produced as of August 6, 2021, preventing creditors from having reviewed and identified all documents in need of authentication.

## II.     The FOMB's Proposed Discovery and Confirmation Process Is Needlessly Condensed.

### A.      The FOMB Is Rushing to Confirmation to Comply with the GO PSA.

26.     The Supreme Court has directed that "[t]he need for expedition . . . is not a justification for abandoning proper standards."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 450.  The same reasoning applies here—the Court and the FOMB should not short-circuit the discovery and confirmation process on the grounds that time is of the essence when the rush was created by the FOMB's own doing.

27.     The FOMB's proposed process would provide for only an eight-week discovery period including at least 10 back-to-back deadlines, some just a few days apart.  Procedures Mot. ¶ 33.  There are tight overlapping deadlines related to document discovery, fact

11

and expert witness discovery, and depositions. *Id.* For example, fact witness lists and topics are due on August 13, 2021, a week after production requests are due. *Id.* The deadline to object to production requests is August 16, 2021, so much of the document discovery will likely not be produced and reviewed until weeks later. *Id.* However, the deadline to serve notices of depositions is the next day—August 17, 2021. *Id.* Opening and rebuttal expert disclosures and reports are due on dates ranging from August 30 to October 1, 2021, which overlaps with the period for both fact and expert witness depositions on September 13 to October 4, 2021. *Id.* In the subsequent month before the confirmation trial, there are over a dozen additional deadlines. *Id.* Considering the magnitude and complexity of this case, the proposed 10-day trial is also likely insufficient. *Id.*

28.     The FOMB's proposed timeline is far too condensed, unfair, and prejudicial to the DRA Parties (and creditors at large) and will ultimately be inefficient to the resolution of this matter. As with any complex litigation, a reasonable amount of time is necessary to notice, schedule, and depose witnesses; request, receive, and process discovery; resolve discovery disputes; take stock of information; assert informed objections; and ultimately achieve a just and orderly resolution to this bankruptcy matter.

29.     The FOMB admits that after *four years*, they are scheduling a rushed confirmation trial to commence on November 8, 2021 and conclude on November 23, 2021, because failure to effectuate the plan on or before December 15, 2021 could jeopardize the Plan Support Agreements ("GO PSA").[8] Procedures Mot. ¶¶ 1, 3-4, 33. The FOMB entered into the GO PSA with creditors holding Commonwealth general obligation claims. *See id.* ¶ 1. As this Court previously observed, however, attempting to meet milestones set forth in the GO PSA does not justify dispensing with due process or short-circuiting normal procedures. *See* Hr'g Tr. at 12:17-25, 13:1-9, *In re Fin.*

---

[8]     The DRA Parties have also objected to this proposed confirmation date in the Disclosure Statement Objection on similar grounds. *See* Disclosure Statement Objection Part III.

*Oversight & Mgmt. Bd. for Puerto Rico*, Case No. 17-BK-3283 (D.P.R. Apr. 28, 2021) (holding that the notice period proposed by the FOMB to object to the Disclosure Statement was "too short" and that the FOMB needed to provide parties with notice consistent with the time period set forth in the Bankruptcy Rules).

30.     This is particularly inappropriate for a case of this magnitude and complexity, with this "number of interested parties, various parties' objections . . . and the volume of issues that have been stayed pending confirmation," as the FOMB acknowledges.  Procedures Mot. ¶ 3.  It is especially unreasonable given the sophistication of the parties that negotiated the GO PSA— sophisticated investors and insurers who are well aware of the complexity and time-consuming nature of a complicated discovery and confirmation process like the one before the Court here.

**B.      The FOMB's Own Comparable Cases Provided Appreciably More Reasonable Discovery Schedules for Less Complex Cases.**

31.     The FOMB attempts to support its tight and convoluted proposed schedule by citing several cases.  *Id.* ¶ 62 (collecting authority).  However, those cases provide more support to the DRA Parties' position than the FOMB's position.[9]  In fact, the cases demonstrate that the Court must ensure fairness to creditors even as it enables the Debtors to make a fresh start.  *See In re Energy Res. Co.*, 871 F.2d at 230.  This is likely why there are numerous bankruptcy proceedings that give creditors the reasonable approach to confirmation discovery the DRA Parties are requesting here.  As discussed herein, all four of the bankruptcies the FOMB holds out as appropriate exemplars actually provide for much more reasonable discovery procedures that are more favorable to creditors than the procedures the FOMB proposes.

---

[9]     One of the cases the FOMB cites is inapposite.  *In re Chinichian*, 784 F.2d 1440 (9th Cir. 1986).  That case dealt with a bankruptcy court's ability revoke a partial confirmation of the plan based on the debtors' bad faith in filing the bankruptcy.

32.     As an initial matter, three of the four bankruptcies the FOMB cites involve Chapter 11 bankruptcies of single corporations.  These are poor comparisons as they differ in purpose and form from the pending PROMESA cases.  Each PROMESA case arises under a novel statutory regime, directly affects the daily lives of millions of U.S. citizens, involves the restructuring of public instrumentalities, the interpretation and reissuance of complex instruments, the issuance of new debt, and consideration of constitutional and novel issues of law.  It follows that the discovery and plan confirmation process for Debtors' restructuring should be more expansive than what took place in the FOMB's cited cases.

33.     Further, all four of the bankruptcies—even when aggregated together—are materially smaller when compared to the pending PROMESA cases which constitute the ***largest municipal bankruptcy ever***, with $120 billion in total obligations.  For example, the largest cited Chapter 11 bankruptcy case—*Enron*—involved approximately $13 billion[10] in total obligations.  Voluntary Pet. Ex. A, *In re Enron Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Feb. 13, 2004), Docket No. 1.  Additionally, the single Chapter 9 municipal bankruptcy cited by the FOMB—*Detroit*—involved approximately $18 billion[11] in total obligations.  James L. Tatum III, *Detroit's Bankruptcy and Market Reentry*, 37 EMORY BANKR. DEVELOPMENTS J. 65, 74 (2020).

34.     All four of the bankruptcies the FOMB cites provided for much more favorable and reasonable discovery deadlines and procedures than what the Procedures Motion delineates.  The below identifies many, but not all, of the more favorable provisions:

- ***City of Detroit, Michigan***, **Case No. 13-53846 (SWR) (Bankr. E.D. Mich. Feb. 24, 2014)**

  o  Separate fact and expert witness deposition periods with no overlap.  Order Establishing Procedures, Deadlines and Hr'g Dates Relating to the Debtor's Plan of Adjustment, *Detroit*, Docket No. 2727 ¶¶ 10, 12.

---

[10]  This amount does not reflect off-balance sheet and contingent obligations, and is not adjusted for inflation.
[11]  This amount is not adjusted for inflation.

- o Fact witness deposition period was 43 days, and the subsequent expert witness deposition period was 29 days. *Id.* ¶¶ 3, 10, 12. In contrast, the FOMB proposes a combined 22 days for all fact and expert depositions. Procedures Mot. ¶ 33.

- o The Court planned for a 29-day confirmation trial. Eighth Am. Order Establishing Procedures, Deadlines and Hr'g Dates Relating to the Debtor's Plan of Adjustment, *Detroit*, Docket No. 6699 ¶ 10. In contrast, the FOMB proposes a 10-day confirmation trial. Procedures Mot. ¶ 33.

- • ***Cumulus Media Inc.*, Case No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017)**

  - o Separate fact and expert discovery periods with no overlap. Order Establishing Disc. Schedule and Procedures in Connection with Plan Confirmation, *Cumulus*, Docket No. 148 ¶¶ 7, 12.

  - o Fact discovery period was about two months long, *id.* ¶¶ 1, 7, while the expert discovery period was almost three weeks long, *id.* ¶¶ 8, 12. In contrast, the FOMB proposes a combined two-month discovery period for both fact and expert discovery. Procedures Mot. ¶ 33.

  - o Document production completed in advance of serving fact witness deposition notices. *Cumulus*, Docket No. 148 ¶¶ 4, 6. In contrast, the FOMB proposes that deposition notices be served the day after objections to document requests are due, well before document production is complete. Procedures Mot. ¶ 33.

  - o Plan objections were not due until after expert discovery ended, which, in turn, was about one month after fact discovery ended. *Cumulus*, Docket No. 148 ¶¶ 7, 12, 14. In contrast, the FOMB proposes initial objections be due at the beginning of the discovery process and limit all subsequent discovery requests. Procedures Mot. ¶ 42.

  - o Any party had the right to supplement its fact witness list prior to trial and also call rebuttal witnesses not previously identified on the witness list. *Cumulus*, Docket No. 148 ¶ 18. In contrast, the Procedures Motion allows only the FOMB to supplement its fact witness list before trial and only plan proponents to call unannounced rebuttal witnesses at trial. Procedures Mot. ¶¶ 45-46.

  - o An additional deposition period was provided for supplemental witnesses. *Cumulus*, Docket No. 148 ¶ 20. In contrast, the FOMB has not provided a deposition period for its supplemental witnesses. Procedures Mot. ¶ 33.

15

- ***In re Maxus Energy Corp.*, Case No. 16-11501(CSS) (Bankr. D. Del. Feb. 17, 2017)**

  o No deadline to serve RFAs to authenticate documents. Order Establishing Disc. Procedures in Connection with the Settlement Mot. and Plan Confirmation, *Maxus*, Docket No. 907 ¶ 5. In contrast, the FOMB proposes all RFAs be due at the start of the discovery period. Procedures Mot. ¶ 33.

  o Depositions spanned eight hours, except for depositions of any debtor independent director, which allowed 16 hours. *Maxus*, Docket No. 907 ¶ 6. In contrast, the FOMB proposes that all depositions be limited to seven hours. Procedures Mot. ¶ 54.

  o Initial witness lists were due 20 days prior to trial and final witnesses lists (excluding rebuttal witnesses) were due seven days prior to trial. *Maxus*, Docket No. 907 ¶¶ 10, 13. In contrast, the FOMB proposes that fact witness lists be due about three months prior to trial, initial expert witness lists be due about nine weeks prior to trial, and rebuttal expert witness lists be due six weeks prior to trial. Procedures Mot. ¶ 33.

- ***In re Enron Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Feb. 13, 2004)**

  o Document depository was populated "on or *before*" the appropriate date. Procedures Mot. Ex. B ¶ 6 (emphasis added). In contrast, the FOMB proposes that its document deposition be populated some point "on or *after*" July 13, 2021. Procedures Mot. ¶ 33 (emphasis added).

  o Debtors' initial witness lists were due on March 3, 2004, while creditors' witness lists were due a month later and *after* the deadline for debtors' responses to production requests. Procedures Mot. Ex. B ¶¶ 2, 12, 15. In contrast, the FOMB proposes that Debtors' and creditors' witness lists be due on the same day, which is *prior* to the deadline for responses to discovery requests. Procedures Mot. ¶ 33.

35.    Although the pending PROMESA cases are unique in many respects, if one was forced to make a comparison, they are most comparable to *Detroit*—the largest municipal bankruptcy under Chapter 9. Notably, the approximately $120 billion in obligations at issue here far outstrip the approximately $18 billion at issue in *Detroit*. Also, *Detroit* involved only one municipal debtor, in contrast to the multiple Debtors simultaneously seeking Title III adjustment here. Nevertheless, *Detroit* provided for a much more favorable discovery and confirmation

16

process, including a 43-day fact witness deposition period and a separate 29-day expert witness

deposition period, as well as a 29-day confirmation trial. *Detroit*, Docket No. 2727 ¶¶ 3, 10, 12;

Docket No. 6699 ¶ 10.

36.     As these examples confirm, the desire for expedition and the ultimate impact of a

restructuring do not justify "abandoning proper standards" and treating creditors unfairly. *In re

Lionel Corp.*, 722 F.2d at 1066, 1071 (quoting *Protective Comm. for Indep. Stockholders of TMT

Trailer Ferry, Inc.*, 390 U.S. at 450). To the contrary, the weight of the issues these proceedings

must resolve counsels in favor of a fair and practical timeline for discovery.

**C.     Summary of Concerns with the FOMB's Proposed Schedule.**

37.     Below is an itemized list of many, but not all, of the concerns with the FOMB's

proposed schedule:

| Key Issues with the FOMB's Cramped Proposal | | |
|---|---|---|
| **FOMB's Proposed Date** | **FOMB's Proposed Deadline** | **Key Reasons the Proposal Cannot Work** |
| **"On or after" July 13, 2021** | Conversion of Disclosure Statement Depository into a Plan Depository | • No firm deadline.<br>• The FOMB may be holding back relevant materials already in its possession. |
| **August 3, 2021** | Deadline to File Initial Objections to Confirmation | • Limits the scope of discovery before discovery even begins.<br>• Not clear what the initial objection must include. |
| **August 6, 2021** | Deadline to Serve Requests for Admission (All Parties) | • Is limited (improperly) to authenticating documents, but few or no documents produced yet.<br>• As in typical discovery, RFAs allow the parties to streamline the case by requiring admissions on substantive issues. Here, parties should be permitted to serve RFAs after document discovery, expert discovery, and depositions to streamline trial. |

17

| | Deadline for Eligible Creditors to Serve Requests for Production of Non-Depository Documents | • At most, three and a half weeks since the FOMB finally populates the depository.<br>• Provides only this one opportunity to request document discovery.<br>• No allowance for any follow-up requests. |
|---|---|---|
| | Deadline for FOMB to Serve Requests for Production | • This indicates the FOMB intends to seek its own discovery during this limited period as well. |
| **August 13, 2021** | Deadline to File Fact Witness List and Topics (All Parties) | • One week after serving document requests and before objections to those requests are even due.<br>• Only the FOMB can supplement through October 8, and only plan proponents can present unannounced rebuttal witnesses ***at any time during trial***. |
| **August 16, 2021** | Deadline to Serve Responses and Objections to Requests for Admission, and Requests for Production (All Parties) | |
| **August 17, 2021** | Deadline to Serve Notices of Deposition, Topics, and Requested Times for Depositions (All Parties) | • Being the day after objections to document requests are due throws into doubt whether creditors will receive document discovery necessary for depositions. |
| **August 23, 2021** | Status Conference on Deposition Notices | |
| **August 25, 2021** | Filing of Deposition Schedule | |
| **August 30, 2021** | Serve Opening Expert Disclosures (All Parties) | • Just two weeks after objections to document discovery and likely very few documents produced. |
| **September 3, 2021** | Opening Expert Reports Due (All Parties) | • Early in the fact document discovery process.<br>• Before a single fact deposition has taken place. |
| **September 24, 2021** | Serve Rebuttal Expert Disclosures (All Parties) | • In the midst of the deposition period and likely before document discovery and fact depositions are complete, and before opening experts' depositions are complete. |
| **October 1, 2021** | Serve Rebuttal Expert Reports (All Parties) | • Same. |

18

| September 13 – October 4, 2021 | Witness Depositions | • For **_all_** depositions—fact witnesses, opening experts, and rebuttal experts—all at the same time.<br>• Depositions limited to seven hours allocated among *all* parties taking depositions.<br>• Overlaps with service of rebuttal expert disclosures and reports.<br>• Only 16 business days.<br>• Several religious holidays within this period, including Yom Kippur on September 15-16, 2021. |
|---|---|---|
| October 8, 2021 | Deadline to File Supplemental Objections to Confirmation | • These objections can be presented at trial. However, this structure acknowledges that creditors will likely need to modify their initial objections based on what emerges from discovery. |
| | Deadline for FOMB to Supplement its Fact Witness List | • This is after the deposition period closes. Even if depositions can continue later, it would be during the period the parties should be preparing for trial. |
| | Deadline to File Motions in Limine (limited to five pages) and Daubert Motions (All Parties) | |
| October 11, 2021 | Deadline to Serve Exhibit Lists and Deposition Designations (All Parties) | • Depositions may not actually be complete due to the FOMB adding fact witnesses. |
| October 15, 2021 | Deadline to File Objections to Motions in Limine (limited to five pages) and Daubert Motions (All Parties) | |
| October 18, 2021 | Deadline to Exchange Objections to Exhibit Lists, Counter-Designations, Objections to Deposition Designations, and Designation of Witnesses for Cross-Examination (All Parties) | |
| October 25, 2021 | Deadline to Exchange Objections to Counter-Designations | |
| | Deadline to File Replies to Motions in Limine (limited to three pages) and Daubert Motions (All Parties) | |

| | Deadline for FOMB to File Affidavits, Replies to Objections to Confirmation of Plan of Adjustment, and Proposed Order and Findings of Fact | • This allows no time for any further submission in opposition to the plan. |
|---|---|---|
| | Deadline for Objectors to File Witness Declarations | |
| **October 29, 2021** | Hearing on Motions in Limine (if not on first day of trial) | |
| **November 1, 2021** | Status Report on remaining objections to declarations, designations, witnesses, and exhibits | |
| **November 8 – 10, 12, 15 – 18, 22 – 23** | Confirmation Hearing | • Only 10 trial days for the largest municipal bankruptcy in American history—involving the restructuring of public instrumentalities, the interpretation and reissuance of complex instruments, the issuance of new debt, and consideration of constitutional and novel issues of law—is insufficient.<br>• The commencement date is premature. |
| **N/A** | Section 1111(b) election deadline | • The Procedures Motion fails to consider secured creditors' right to make an election under 11 U.S.C. § 1111(b).<br>• Unless the Court sets a different deadline, secured creditors must make any Section 1111(b) election "prior to the conclusion of the hearing on the disclosure statement."  Fed. R. Bankr. P. 3014. Without the benefit of any affirmative discovery of their own throughout this proceeding, the DRA Parties and other secured creditors cannot make an informed decision before or during the Disclosure Statement hearing. Accordingly, the Court should set a later date, such as January 31, 2022. |

## **RELIEF REQUESTED**

38.     Instead of the compressed and short-circuited schedule the FOMB proposes, the

DRA Parties request a reasonable and appropriate timeline for discovery, plan confirmation

objections, and trial.  In particular, the DRA Parties request:

- The Court order the FOMB make available via the plan depository all material relevant to confirmation that is in its possession, custody, or control at this time, with an ongoing duty to supplement as Debtors gather more materials.

- The Court set a deadline by which all relevant materials must be loaded into the plan depository that is at least three weeks prior to the opening of plan confirmation discovery.

- The discovery process should begin no less than five months prior to the due date for plan confirmation objections.

- Discovery requests should not be limited to issues identified in an "initial objection."

  - If, however, the Court is inclined to limit discovery requests in this manner, then it should clarify the level of legal and factual detail required.  At a maximum, such initial objects should entail a brief and to the point statement giving notice of the topics creditors intend to pursue, with leave to expand topics based on new learnings.

- There should be opportunities to seek follow-up document discovery and RFAs prior to the deadline for final objections.

  - In particular, the DRA Parties intend to request discovery regarding, but not limited to, the Act 30-31 revenues, the propriety of the Commonwealth's clawback of excise tax revenues from HTA that were pledged for the repayment of HTA's debt obligations, the classification of the DRA's PBA claims, what assets qualify as "CW Appropriations Claims," the FOMB's ability to satisfy the best-interest test, the extent to which this Commonwealth plan is a *sub rosa* plan for HTA, and the relative priority rights of the DRA and bondholders to HTA's available assets.

- RFAs may address, but need not be limited to, authentication of documents intended to be offered as exhibits.

- Fact witness related discovery should take place between August 2021 and November 2021.

- Expert witness related discovery should take place between December 2021 and January 14, 2022, given the holidays.

- Expert witness depositions should be held separately from fact witness depositions and begin no earlier than three weeks after rebuttal expert reports are due.

- The Court should allow all parties to supplement their witness lists at least until the time that final objections are due.

  - If, however, the Court is inclined to hold parties to their original witness lists, that should be true for everyone, including the FOMB.

- The Court should allow rebuttal witnesses for all parties regardless of position.

  - If, however, the Court is inclined to hold parties to their original or supplemental witness lists, that should be true for everyone, including the FOMB.

- Secured creditors should have until January 31, 2022 to submit their Section 1111(b) elections in writing.

- Plan confirmation objections should be due no earlier than January 31, 2022.

- The confirmation trial begin no earlier than March 31, 2022, and take place over the course of 30 days or more, as the Court deems appropriate.

  - Specifically, trial should occur on:  March 31-April 1, 2022; April 4-8, 2022; April 11-14, 2022; April 25-29, 2022; May 2-6, 2022; May 9-13, 2022; and May 16-19, 2022.  These dates reflect public holidays in Puerto Rico and religious observances that would otherwise prevent the Court, certain parties, or their counsel from appropriately participating in the hearing.

## **CONCLUSION**

39.    **WHEREFORE**, based on the foregoing, the DRA Parties hereby respectfully request that (i) this Court enter an order substantially in the form attached hereto as **Exhibit A** (the "DRA Parties' Proposed Order"), denying the Procedures Motion and granting the DRA Parties' requested relief, or (ii) to the extent the Court is inclined to grant the Procedures Motion, that the Court require the contents of the procedures and deadlines concerning objections to confirmation and discovery to be amended and supplemented consistent with the arguments set forth herein and that the confirmation trial begin no earlier than March 31, 2022.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 15th day of June, 2021.

**WE HEREBY CERTIFY** that, in accordance with the Court's *Fourteenth Amended Notice, Case Management and Administrative Procedures Order* (the "CMP Order") [Docket No. 15894-1] on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case. We further certify that, on this same date, we served the foregoing upon all the Standard Parties as identified and defined in the CMP Order, as well as upon all of the parties identified in the Master Service List maintained at https://cases.primeclerk.com/puertorico/.

**MCCONNELL VALDÉS LLC**

270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
P.O. Box 364225
San Juan, PR 00936-4225
Tel:   787-250-5632
Fax:   787-759-9225

By:   */s/ Arturo J. García-Solá*
Arturo J. García-Solá
(USDC No. 201903)
E-mail: ajg@mcvpr.com

*/s/ Nayuan Zouairabani*
Nayuan Zouairabani
(USDC No. 226411)
E-mail: nzt@mcvpr.com

*Attorneys for AmeriNational Community Services, LLC, as Servicer for the GDB Debt Recovery Authority*

**C. CONDE & ASSOC. LAW OFFICES**

By:   */s/ Carmen D. Conde Torres*
Carmen D. Conde Torres
(USDC No. 207312)

*/s/ Luisa S. Valle Castro*
Luisa S. Valle Castro
(USDC No. 215611)

254 San José Street, Suite 5
San Juan, PR 00901-1523
Tel:   787-729-2900
Fax:   787-729-2203
E-mail: condecarmen@condelaw.com

-and-

**SCHULTE ROTH & ZABEL LLP**

By:   */s/ Douglas S. Mintz*
Douglas S. Mintz (admitted *pro hac vice*)
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
Tel:   202-729-7470
Fax:   202-730-4520
E-mail: douglas.mintz@srz.com

-and-

23

Douglas Koff (admitted *pro hac vice*)
Abbey Walsh (admitted *pro hac vice*)
Peter J. Amend (admitted *pro hac vice*)
919 Third Avenue
New York, NY 10022
Tel:    212-756-2000
Fax:    212-593-5955
E-mail: douglas.koff@srz.com
          abbey.walsh@srz.com
          peter.amend@srz.com

***Attorneys for Cantor-Katz Collateral Monitor
LLC, as Collateral Monitor for the GDB Debt
Recovery Authority***

## **EXHIBIT A**

**DRA Parties' Proposed Order**

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

```
-----------------------------------------------------------x
In re:                                     :
                                           :
THE FINANCIAL OVERSIGHT AND                : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, :          TITLE III
                                           :
          as representative of             : Case No.: 17-BK-3283 (LTS)
                                           :
THE COMMONWEALTH OF PUERTO RICO,           : (Jointly Administered)
                                           :
          Debtors.¹                        :
-----------------------------------------------------------x
```

## [PROPOSED] ORDER GRANTING THE DRA PARTIES' OBJECTION TO THE MOTION OF DEBTORS FOR AN ORDER ESTABLISHING, AMONG OTHER THINGS, PROCEDURES AND DEADLINES CONCERNING OBJECTIONS TO CONFIRMATION AND DISCOVERY IN CONNECTION THEREWITH

Upon consideration of the *Motion of Debtors for an Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [Docket No. 16757] (the "Procedures Motion") and the *Objection of the DRA Parties[2]* thereto dated June 15, 2021 [Docket No. _____] (the "Objection"), and the Court having reviewed the Procedures Motion, the Objection, and the relief requested in each; the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a); the Court determining that venue of this proceeding in this District is proper under 28 U.S.C. § 1391(b)

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]   The term the "DRA Parties" will have the same meaning in this Order as given to the term in the Objection.

and 48 U.S.C. § 2167(a); notice of the Procedures Motion and the Objection being adequate and proper under the circumstances; and after due deliberation and sufficient cause appearing; therefore, it is

**HEREBY ORDERED THAT**:

1.    The Procedures Motion is DENIED and the Objection is GRANTED, each to the extent set forth herein.

2.    The FOMB shall convert the Disclosure Statement Depository into the Plan Depository on or before July 13, 2021.  The FOMB must completely populate the Disclosure Statement Depository and Plan Depository with all materials that are relevant to the Plan, including to a reasonable creditor's evaluation of the Plan (the "Relevant Materials") that are in the possession, custody, or control of the FOMB or any of the Debtors (the "Debtors' Possession"), no later than July 13, 2021.  For the avoidance of doubt, the FOMB is required to populate the Disclosure Statement Depository and Plan Depository with all Relevant Materials now in the Debtor's Possession within seven (7) calendar days of this Order, and to supplement the Disclosure Statement Depository and Plan Depository promptly as further Relevant Materials come into the Debtors' Possession, but in no event later than seven (7) calendar days of such Relevant Materials coming into the Debtors' Possession, and in no circumstances later than July 13, 2021.

3.    Any creditor may serve any discovery device permitted under the Federal Rules of Civil Procedure, as made applicable to this proceeding by the Bankruptcy Code and PROMESA, including but not limited to document discovery requests, interrogatories, requests for admission, and deposition notices, on any Debtor or

any other creditor or non-party at any time from and including the date of this Order, subject to the deadlines set forth herein.

4. Creditors may seek discovery throughout the discovery period and until final objections are due, including to follow up on prior requests or facts learned during the course of discovery.

5. Fact-witness related discovery shall take place between August 2, 2021 and November 30, 2021.

6. Expert-witness related discovery shall take place between December 1, 2021 and January 14, 2022, giving due consideration for the holidays.

7. Expert witness depositions shall be held separately from fact witness depositions, and begin no earlier than three weeks after rebuttal expert reports are due.

8. All parties may supplement their witness lists until the time that final objections are due. For the avoidance of doubt, this requirement applies with equal force to the FOMB, the Debtors, and creditors.

9. Secured creditors shall have until January 31, 2022 to submit their Section 1111(b) elections in writing.

10. Plan confirmation objections are due on January 31, 2022. Creditors may submit an objection to the Plan at any time on or after the date of this Order but may supplement such objections at any point through and including January 31, 2022. The scope of discovery available to creditors shall not depend on the nature and content of any objection such creditor has filed at the time of serving such discovery, nor shall any creditor be required to file any objection whatsoever prior to seeking discovery.

3

11.     Consistent with and not limiting the generality of any other provision of this Order,
the DRA Parties may request discovery related, but not limited to, the Act 30-31
revenues, the propriety of the Commonwealth's clawback of excise tax revenues
from HTA that were pledged for the repayment of HTA's debt obligations, the
classification of the DRA's PBA claims, what assets qualify as "CW
Appropriations Claims," the FOMB's ability to satisfy the best-interest test, the
extent to which this Commonwealth plan is a *sub rosa* plan for HTA, and the
relative priority rights of the DRA and bondholders to HTA's available assets.

12.     The confirmation hearing shall take place over the course of a total of thirty (30)
hearing days on the following dates, or such other dates as are convenient to the
Court:  March 31-April 1, 2022; April 4-8, 2022; April 11-14, 2022; April 25-29,
2022; May 2-6, 2022; May 9-13, 2022; and May 16-19, 2022.  These dates reflect
public holidays in Puerto Rico and religious observances that would otherwise
prevent the Court, certain parties, or their counsel from appropriately participating
in the hearing.

13.     Prior to the final day of the confirmation hearing, any party may designate one or
more rebuttal witnesses by filing an informative motion on the docket of Case
Number 17-BK-3283 (LTS) no later than 5:00pm Atlantic Standard Time on the
calendar day prior to the trial day on which the witness shall appear.  A party will
only be permitted to identify a further rebuttal witness after 5:00pm Atlantic
Standard Time on the latest hearing day before the last hearing day of the
confirmation hearing only with specific leave of Court.

4

SO ORDERED.

Dated: _____

_____
JUDITH GAIL DEIN
UNITED STATES MAGISTRATE JUDGE