**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**OBJECTION OF AMBAC ASSURANCE CORPORATION AND FINANCIAL GUARANTY INSURANCE COMPANY TO THE BOARD'S DISCLOSURE STATEMENT APPROVAL MOTION AND CONFIRMATION PROCEDURES MOTION**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations). Ambac and FGIC submit this Motion in Cases No. 17 BK-1283-LTS (Commonwealth), 17 BK-3566-LTS (ERS), and 17 BK-5233-LTS (PBA).

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 5

    I.     THE COURT SHOULD REJECT THE BOARD'S ATTEMPT TO
CONDITION DISCOVERY ON THE FILING OF A PREMATURE
"INITIAL OBJECTION." ............................................................................... 5

    II.    THE BOARD'S PROPOSED CONFIRMATION SCHEDULE IS FAR
TOO COMPRESSED AND INCLUDES RESTRICTIONS THAT
WOULD PREJUDICE CREDITORS. ............................................................. 9

          A.    Key Gating Issues in the Revenue Bond Adversary Proceedings
Must Be Resolved. ........................................................................10

          B.    The Various *Ab Initio* Categorical Restrictions the Board Seeks to
Impose Should Not Be Adopted. ...................................................11

          C.    The Board's Pretrial Schedule Is Unrealistically Compressed. .................17

          D.    The Allocation of Time for the Confirmation Hearing Should
Account for the Number and Complexity of Issues Likely to Be
Presented. ....................................................................................18

          E.    Objectors' Proposed Schedule Should Be Adopted .................................18

    III.   THE BOARD SHOULD NOT BE PERMITTED TO HAVE *EX PARTE*
COMMUNICATIONS WITH THE COURT REGARDING
DISCOVERY DISPUTES. ............................................................................ 22

    IV.   THE COURT SHOULD REJECT THE BOARD'S ATTEMPT TO
IMPOSE UNREASONABLE PAGE LIMITS FOR BRIEFING ON
MOTIONS *IN LIMINE*. ................................................................................ 23

CONCLUSION ....................................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 3DFX Interactive, Inc.*,
  2006 WL 2010786 (Bankr. N.D. Cal. June 29, 2006) ...........................................................6

*In re Analytical Sys., Inc.*,
  71 B.R. 408 (Bankr. N.D. Ga. 1987) ......................................................................................7

*In re Khachikyan*,
  335 B.R. 121 (B.A.P. 9th Cir. 2005)......................................................................................6

**Other Authorities**

8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
  § 2252 (3d ed. 2021) ............................................................................................................13

10 Collier on Bankruptcy ¶ 9014.06 (16th ed. 2021) .................................................................7

Fed. R. Bankr. Proc. 9014.................................................................................................................14

Legal Information Institute, Cornell Law School, *Requests for Admission*,
  https://www.law.cornell.edu/wex/requests_for_admission ...................................................13

U.S. District Court, S.D.N.Y., *Discovery Guide for Pro Se Litigants* (June 29, 2016),
  https://www.nysd.uscourts.gov/sites/default/files/2018-06/discoveryguide.pdf...................13

Ambac Assurance Corporation ("Ambac") and Financial Guaranty Insurance Company ("FGIC" and, together with Ambac, "Objectors") respectfully submit this objection (the "Objection") relating to the procedural and scheduling issues concerning confirmation raised in the *Amended Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (i) Approving Disclosure Statement, (ii) Fixing Voting Record Date, (iii) Approving Confirmation Hearing Notice and Confirmation Schedule, (iv) Approving Solicitation Packages and Distribution Procedures, (v) Approving Forms of Ballots, and Voting and Election Procedures, (vi) Approving Notice of Non-Voting Status, (vii) Fixing Voting, Election, and Confirmation Deadlines, and (viii) Approving Vote Tabulation Procedures* (ECF No. 16756) ("DS Approval Motion" or "DS Approval Mot.") and the *Motion of Debtors for an Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* (ECF No. 16757) ("Confirmation Procedures Motion" or "Conf. Proc. Mot." and, together with the DS Approval Motion, the "Motions").[2]

## PRELIMINARY STATEMENT

1.      Through the Motions, the Board seeks to establish procedures and a schedule for proceedings leading up to the confirmation hearing on the Plan.[3]  Given the significance of the Plan to the Commonwealth, its citizens, and its creditors, it is critical that these proceedings are

---

[2] This Objection presents Objectors' positions on the procedural and scheduling issues raised in the DS Approval Motion and the Confirmation Procedures Motion.  Contemporaneously herewith, Ambac and FGIC have submitted separate substantive objections to the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 16741) (the "Disclosure Statement" or "DS").

[3] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement.

quick and efficient, but it is equally important that the procedures and schedule allow for proper consideration of the issues and ensure the protection of creditors' rights.  The Board's proposal does not do that.

2.      Rather, the Board's proposed confirmation schedule and related procedures appear to be motivated by nothing more than the Board's desire to jam through the Plan in time to meet the arbitrary deadline that the Board agreed to with creditors in various plan support agreements, while limiting meaningful creditor-propounded discovery.  The Board's schedule is unrealistic— a fact the Court has already recognized[4]—and its proposed procedures would run afoul of common practice, the discovery rules of the Federal Rules of Civil Procedure (which apply to contested matters under PROMESA), and creditors' Due Process rights.

3.      *First*, the Board seeks to condition creditors' rights to propound confirmation discovery on creditors' filing—***before*** discovery, and three weeks after the Disclosure Statement hearing—of an "Initial Objection" "setting forth the legal and factual basis" for each objection to confirmation the creditor intends to raise.  The Board would then limit any discovery to those specific issues raised in the "Initial Objection."  Not only does the Board's proposal contravene the discovery rules of the Federal Rules of Civil Procedure and defy logic—creditors cannot possibly be expected to brief the factual basis for an objection that would limit their ability to pursue discovery before they are even allowed to discover facts necessary to do so—it also raises serious due process concerns.  It would also shift the burden to each creditor to demonstrate (to the Board's satisfaction) that requested discovery was within the scope of its "Initial Objection," creating an additional obstacle to discovery and significantly increasing the likelihood that the parties would repeatedly need to seek relief from the Court.  The Court should reject the proposed

---

[4] (*Tr. of April 28, 2021 Omnibus Hr'g* (ECF No. 16662), at 16:9-15.)

requirement of an "Initial Objection" and instead order that the parties adhere to standard—but expedited—discovery procedures.

4. *Second*, the Board's proposed schedule is far too compressed. The Court has explained that it has limited resources to address the numerous issues that need to be resolved before a confirmation hearing can proceed (a reality that applies to the parties, as well), and that it cannot be bound by the Board's desire to satisfy its private agreements with certain creditors.[5] As the Board and the Court have long acknowledged, among those threshold issues are the Counts that are the subject of the Board's partial summary judgment motions in the Revenue Bond Adversary Proceedings.[6] In addition, the Board has claimed that numerous additional Counts in the Revenue Bond Adversary Proceedings must be decided before a plan can be confirmed, or as part of the confirmation process.[7] While Objectors agree that is true, and that the stay of the Revenue Bond Adversary Proceedings should be lifted so that those proceedings can proceed in conjunction with the confirmation process, resolution of those issues is simply not achievable consistent with the Board's desire to have a plan go effective by December 15, 2021. Indeed, the Court has already recognized that litigating those issues is not compatible with the confirmation schedule proposed by the Board. (*Tr. of April 28, 2021 Omnibus Hr'g* (ECF No. 16662), at 16:9-

---

[5] (*Id.* at 66:6-10 (explaining, in denying the Board's motion to lift the stay on certain additional Counts in the Revenue Bond Adversary Proceedings (defined below), that the Board's desire to achieve plan confirmation by "a milestone that you negotiated that you said it is an admirable goal, and the Court's intention is to do everything in its power to facilitate keeping to an appropriately tight schedule; but, again, the Court's resources are finite").)

[6] (*See Tr. of March 4, 2020 Omnibus Hr'g* (ECF No. 12181), at 220:13-16; *Response of Financial Oversight and Management Board for Puerto Rico to Amended Report and Recommendation of Mediation Team* (ECF No. 11492), ¶ 11.) "Revenue Bond Adversary Proceedings" refers, collectively, to Adv. Proc. No. 20-00003 ("PRIFA Adversary Proceeding"), Adv. Proc. No. 20-00004 ("CCDA Adversary Proceeding"), and Adv. Proc. No. 20-00005 ("HTA Adversary Proceeding").

[7] (*Notice of Motion and Motion of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, for Stay Relief Granting Leave to Prosecute Further Motions for Partial Summary Judgment* (ECF No. 16326), ¶ 18.)

15 ("Additional substantial summary judgment motion practice addressing more than a dozen legal theories across three adversary proceedings, in combination with the many other matters currently pending or soon to be pending, ***is not compatible with a substantial Disclosure Statement hearing in the early summer and the proposed Plan confirmation hearing in the fall***.") (emphasis added).)[8]  In addition, the Board's proposal to allocate only ten days for a confirmation hearing ignores the breadth and complexity of the multitude of issues that will need to be resolved, including numerous issues raised in the Revenue Bond Adversary Proceedings.

5.      In addition, the Board's proposal includes several restrictions that would severely prejudice creditors.   Among other things, the Board's proposal would require creditors to: (i) propound all document requests at the outset of discovery (three weeks after the Disclosure Statement hearing), ***without*** the ability to serve targeted follow-up requests, and to certify to the Board why such requests are necessary; (ii) propound all requests for admission at the outset of discovery, rather than towards the end of discovery (as is typical), such that creditors do not have any discovery to inform the facts that they are seeking the Debtors to admit, and to limit such requests for admission to the authentication of documents—documents that creditors have not yet had an opportunity to discover; (iii) forego the use of interrogatories; (iv) identify fact witnesses and notice depositions a mere week after discovery begins, before they have any of the information needed to make these critical decisions (while allowing the Debtors, but not creditors, to supplement their witness lists); and (v) forego third party discovery.

6.      *Third*, while Objectors largely agree with the Board's proposed procedure for the expedited and efficient resolution of discovery disputes, the procedure improperly would allow the

---

[8] The Board's proposed schedule is especially inappropriate and unnecessary in light of the fact that the Board's plan support agreements give it the unilateral ability to extend the time for any plan of adjustment to go effective (from December 15, 2021 to January 31, 2022) before creditors may invoke termination rights.  (*See* DS, Exhibit B at §§ 7.1(a), (b) (*Plan Support Agreement* (Feb. 22, 2021)).)

Board to engage in *ex parte* communications with the Court regarding any such disputes.  The proposed procedure should be amended to require that the other side (or all sides) on a particular dispute is included in such communications.

7.      *Fourth*, the Board's proposal seeks to unduly limit the number of pages allowed for briefing on motions *in limine* to five pages for principal briefs and three pages for replies.  It is far too early to know the complexity of the issues that will be raised in such motions, and the Court should therefore reject the Board's proposal on this issue.

8.      Objectors therefore respectfully request that the Motions be denied, and that the Court adopt procedures and a schedule for confirmation proceedings consistent with the objections and alternative proposed schedule set forth herein.

## **ARGUMENT**

### I.      **THE COURT SHOULD REJECT THE BOARD'S ATTEMPT TO CONDITION DISCOVERY ON THE FILING OF A PREMATURE "INITIAL OBJECTION."**

9.      The Motions ask the Court to condition a creditor's right to seek confirmation discovery from the Debtors on the filing, no later than August 3, 2021 (three weeks after the Disclosure Statement hearing), of an "Initial Objection" that "set[s] forth the legal and factual basis in support" of each objection a creditor intends to raise in connection with confirmation of the Plan.  (Conf. Proc. Mot. ¶¶ 40-44.)  Under the Board's proposal, any creditor that does not submit an "Initial Objection" would not be permitted to seek discovery from the Debtors, and even creditors who do submit an "Initial Objection" would be limited to seeking discovery on only those issues identified in the "Initial Objection."[9]  Moreover, although the Motions do not make this

---

[9] (*See* Conf. Proc. Mot., Ex. A ¶ 6 (only parties that file Initial Objections "shall be entitled to seek appropriate discovery of the Debtors for documents not contained in the Plan Depository in connection with confirmation" and "solely to the extent of the issues set forth in such Initial Objection," even if the creditor subsequently supplements its Initial Objection) (the "Proposed Confirmation Procedures Order" or "Prop. Conf. Proc. Order")).)

clear, the Proposed Confirmation Procedures Order states that this requirement would limit discovery from not only the Debtors, but from "any other entity/individual[,]" thus limiting third party discovery in the same fashion.[10]   The Court should reject the Board's highly prejudicial proposal.

10.     Objectors appreciate that the Board seeks to "efficiently manag[e] and expedit[e] discovery." (DS Approval Mot. ¶ 25.)  But conditioning a creditor's ability to seek discovery from the Debtors (and apparently, third parties) on the creditor's filing of a brief "setting forth the legal and factual basis" for its anticipated objections—*before* any discovery, and just three weeks after the Disclosure Statement hearing—and foreclosing the creditor from otherwise seeking discovery (or preventing it from seeking discovery on issues not raised in the "Initial Objection") is highly objectionable and raises serious due process concerns.

11.     As a contested matter under Bankruptcy Rule 9014 (made applicable through PROMESA § 310), this contested confirmation process is subject to the discovery rules of Rules 26 and 28 through 37 of the Federal Rules of Civil Procedure (as incorporated through Bankruptcy Rules 7026 and 7028 through 7037).  That includes a creditor's ability to issue document requests (Rule 34), interrogatories (Rule 33), requests for admission (Rule 36), and deposition notices (Rule 30).  A party in interest's ability to propound discovery in connection with a contested matter is an essential creditor protection.[11]   Indeed, it is well-recognized that the right to discovery is

---

[10] (*Id.* ¶ 7 (parties not filing an Initial Objection are prohibited from seeking discovery "of the Debtors *or any other entity/individual* by any method in connection with confirmation of the Plan and the global compromise and settlements underlying the Plan") (emphasis added).)

[11] *See In re 3DFX Interactive, Inc.*, 2006 WL 2010786, at *7 (Bankr. N.D. Cal. June 29, 2006) ("The discovery procedures created by the Bankruptcy Rules provide a procedural framework and the necessary safeguards to protect the interests of all parties.  As such, the court has issued an order applying Part VII of the Bankruptcy Rules to all plans and disclosure statements in this case.  Additional information developed through discovery will hopefully develop sufficient information which will allow the court to determine if the [d]isclosure [s]tatement and [p]lan of the [c]reditors' [c]ommittee can proceed."); *In re Khachikyan*, 335 B.R. 121, 125-26 (B.A.P. 9th Cir. 2005) (citations omitted) ("In a contested matter, . . . discovery is

fundamental to ensuring Due Process. *See In re Analytical Sys., Inc.*, 71 B.R. 408, 412 (Bankr. N.D. Ga. 1987) (citation omitted) ("The underlying purpose of incorporating [the] Federal Rules of [Civil] Procedure into contested matters is to provide due process protections to all parties . . . ."); 10 Collier on Bankruptcy ¶ 9014.06 (16th ed. 2021) ("[D]ue process must still be afforded to all parties in a . . . contested matter.").

12.     Requiring creditors to submit "Initial Objections" that would limit their ability to pursue discovery from the Debtors and third parties would eviscerate those rights and protections. Creditors have not yet had any confirmation discovery.   While certain creditors (including Objectors) have received discovery in connection with the Rule 2004 process or the revenue bond litigation, that discovery has been limited in scope—not addressing many confirmation issues—and, in fact, the Board has aggressively sought to limit such discovery.  And most creditors have not yet conducted *any* discovery.  Yet the Board is now seeking to require creditors—without the benefit of discovery, or with limited discovery in other contexts—to submit "Initial Objections" "setting forth the legal and factual basis" in support of each objection that would then limit discovery.  How can creditors provide the factual basis for every objection when they have not yet had the opportunity to uncover the underlying facts?  They cannot.  And similarly, a creditor's ability to make legal arguments without knowing the underlying facts is generally curtailed.

13.     The Board's proposal is an attempt to shift the burden to creditors, and layer on additional hurdles for creditors to obtain discovery. After a creditor submits an "Initial Objection," the Board would be able to use that "Initial Objection" to limit the scope of any discovery that creditor seeks.   The Board would now not only be a gatekeeper in determining whether the

---

available, testimony regarding contested material factual disputes must be taken in the same manner as in an adversary proceeding, and the court must make findings of fact and conclusions of law before entering an order that has the status of a judgment.").

discovery seeks relevant information, is unduly burdensome, or disproportionate to the needs of the case, but also in determining whether requested discovery is within the scope of the "Initial Objection."

14.     The objectionable nature of the Board's proposal is compounded by the fact that the level of detail necessary to sufficiently "set forth the legal and factual basis in support" of an "Initial Objection" is entirely unclear.  Objectors (and other creditors) have no way of knowing how the Board (or the Court) intends to assess whether an "Initial Objection" contains sufficient detail regarding its legal and factual bases to enable them to pursue discovery.  That is unacceptable, particularly in light of the dire consequences faced by parties that fail to meet the Board's vague standard.  And the additional hurdle and vague standard proposed by the Board would inevitably lead to innumerable discovery disputes regarding whether the discovery sought falls within the scope of an "Initial Objection," further burdening the parties and the Court during an extremely busy period.

15.     There is no reason to require that Objectors and other creditors file "Initial Objections," and, as discussed above, many good reasons not to.  Rather than accept the Board's proposal, the Court should instead adhere to the standard discovery procedures of the Federal Rules of Civil Procedure, which are designed to protect creditors' Due Process rights.

16.     The Board's proposal to require the filing of an "Initial Objection" as a condition to propounding discovery should therefore be rejected in its entirety.[12]

---

[12] To the extent that the Court believes that creditors should be required to file an "Initial Objection" that would limit their discovery requests, it should ensure creditors have sufficient time to do so.  The Board currently contemplates an "Initial Objection" deadline of August 3, 2021 (Conf. Proc. Mot. ¶ 33; DS Approval Mot. ¶ 48), just three weeks after the Disclosure Statement hearing.  That is plainly insufficient. If the Court holds that "Initial Objections" are appropriate (and it should not), creditors should be permitted to file such "Initial Objections" by no later than 30 days following the Board's service of notice of the times for filing objections to, and the hearing to consider confirmation of, the Plan (the "Confirmation Hearing Notice").

## II.   THE BOARD'S PROPOSED CONFIRMATION SCHEDULE IS FAR TOO COMPRESSED AND INCLUDES RESTRICTIONS THAT WOULD PREJUDICE CREDITORS.

17.   The Board's proposed confirmation schedule seeks to compress discovery, pretrial matters, and the confirmation hearing for the largest municipal bankruptcy in U.S. history into a three-month window, all because the Board seeks to ensure the Plan is effective prior to a termination deadline in plan support agreements that are not binding on the Court or most creditors. Indeed, a comparison of the Board's current proposed schedule with its proposed schedule relating to the first amended plan of adjustment filed in February 2020 demonstrates how significantly the Board has reduced relevant time periods—including, most significantly, cutting the time to file "Initial Objections" (which should not be required to begin with) by *37 days*:

| Event | Previous Proposed Schedule[13] | Current Proposed Schedule[14] |
|---|---|---|
| Initial Confirmation Objection Deadline | 58 days from DS hearing | 21 days from DS hearing |
| Final/Supplemental Confirmation Objection Deadline | 103 days from DS hearing | 87 days from DS hearing |
| Deadline for Board to File Affidavits in Support of Confirmation, Replies to Plan Objection(s), and Proposed Confirmation Order and Findings of Fact | 121 days from DS hearing | 104 days from DS hearing |
| Commencement of Plan Confirmation Hearing | 132 days from DS hearing | 118 days from DS hearing |

18.   The Board's compression of the proposed schedule is particularly unreasonable given that its plan support agreements give it the unilateral ability to extend the time for any plan

---

[13] (*See* ECF No. 11950, ¶ 11.)  Deadlines included in the "Previous Proposed Schedule" column are measured from the date the Board proposed for a hearing in connection with the disclosure statement filed in February 2020 (June 3, 2020).

[14] (*See* DS Approval Mot. ¶ 25.)  Deadlines included in the "Current Proposed Schedule" column are measured from the date on which the Disclosure Statement hearing is scheduled (July 13, 2021).

of adjustment to go effective (from December 15, 2021 to January 31, 2022) before creditors may

invoke termination rights.[15]

19.    The Board's proposed schedule also has structural flaws that would substantially

prejudice creditors.  As discussed in more detail below, the Board's proposed schedule:  (i) ignores

that key gating issues in the Revenue Bond Adversary Proceedings need to be resolved;

(ii) improperly seeks to require creditors to serve all discovery requests, deposition notices, and

fact witness lists at the outset of discovery; (iii) fails to provide for discovery of third parties; and

(iv) allocates insufficient time for the confirmation hearing, among other deficiencies.

**A.    Key Gating Issues in the Revenue Bond Adversary Proceedings Must Be Resolved.**

20.    Key gating issues that require resolution prior to confirmation of a plan of

adjustment remain unresolved.  In particular, certain such issues are currently being litigated in the

Revenue Bond Adversary Proceedings, in which supplemental summary judgment briefing is

imminent but not yet scheduled.  The resolution of those issues will dictate whether or not the Plan

is viable (as the Court has acknowledged[16]), and the Board itself has acknowledged that these

gating issues need to be resolved before a plan can be confirmed.[17]  And if the Court denies

summary judgment on any of the Counts that are at issue, or concludes that additional discovery

is necessary, additional proceedings relating to those Counts would be necessary.

---

[15] (*See* DS, Exhibit B at §§ 7.1(a), (b) (*Plan Support Agreement* (Feb. 22, 2021)).)

[16] (*Tr. of March 4, 2020 Omnibus Hr'g* (ECF No. 12181), at 220:13-16 ("Resolution of those issues that can be decided on legal grounds will resolve key disputes that could affect, for better or worse, the prospect of the . . . Plan of Adjustment.").)

[17] (*See Response of Financial Oversight and Management Board for Puerto Rico to Amended Report and Recommendation of Mediation Team* (ECF No. 11492), ¶ 11 ("As the [] Board previously explained, a merits-based resolution of [these] threshold issues is critical to the parties' ability to seek confirmation of a plan of adjustment on behalf of the Commonwealth."); *see also Amended Report and Recommendation of the Mediation Team* (ECF No. 10756), at 12 (advising that "merits determinations on these key issues will be invaluable to [] the . . . plan confirmation process[]").)

21.     In addition, the parties will need to resolve the other Counts in the Revenue Bond Adversary Proceedings which are currently subject to a stay.  The Board itself sought to lift the stay with respect to certain of those Counts, arguing that they "will need to be resolved either before or as part of the confirmation process for the" Plan.[18]  If the stay of litigation of those Counts were to be lifted—and Objectors believe that the stay should be lifted for all Counts in the Revenue Bond Adversary Proceedings—significant additional proceedings would be needed, including resolution of the monolines' stayed motions to dismiss the adversary complaints, the filing of answers and counterclaims, discovery, and any additional motion practice.  The Court has already recognized that litigating these issues is not compatible with the confirmation schedule proposed by the Board.  (*Tr. of April 28, 2021 Omnibus Hr'g* (ECF No. 16662), at 16:9-15 ("Additional substantial summary judgment motion practice addressing more than a dozen legal theories across three adversary proceedings, in combination with the many other matters currently pending or soon to be pending, ***is not compatible with a substantial Disclosure Statement hearing in the early summer and the proposed Plan confirmation hearing in the fall***.") (emphasis added).)

22.     The confirmation schedule must include sufficient time for the Revenue Bond Adversary Proceedings to be resolved.  The Board's proposed schedule fails to do so and should therefore be rejected.

### B.     The Various *Ab Initio* Categorical Restrictions the Board Seeks to Impose Should Not Be Adopted.

23.     The Board's proposed discovery schedule (*see* Conf. Proc. Mot. ¶ 33; Prop. DS Approval Order,[19] Sched. 2 ¶ 7) contains numerous unreasonable restraints on creditors' discovery

---

[18] (*Notice of Motion and Motion of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, for Stay Relief Granting Leave to Prosecute Further Motions for Partial Summary Judgment* (ECF No. 16326), ¶ 18.)

[19] "Prop. DS Approval Order" refers to Exhibit A to the DS Approval Motion.

rights.  As discussed previously, the Board's "Initial Objection" requirement would improperly limit creditors' ability to obtain discovery.  In addition, the Board's proposal contains various *ab initio* categorical restrictions, which represent a significant departure from typical practice and the discovery rules of the Federal Rules of Civil Procedure, threaten creditors' ability to obtain necessary discovery, and were previously rejected by the Court (Dein, M.J.) in connection with the Revenue Bond Adversary Proceedings.  They should likewise be rejected here.

24.     ***Document Requests.***  The Board's proposed schedule would require that creditors propound all document requests at the outset of fact discovery, on August 6, 2021, and does not contemplate the service of any targeted, follow-up document requests.  (*See* Conf. Proc. Mot. ¶¶ 33, 49-52, 55; Prop. DS Approval Order, Sched. 2 ¶ 7.)  As the Court is well aware, discovery is often iterative, and documents produced in response to initial requests, or deposition testimony, may reveal areas where follow up is needed.  There is no good reason, and none offered by the Board, as to why creditors should be categorically precluded, at the outset of the discovery period, from serving follow-up document requests later in the discovery period.  Indeed, the Board submitted a similar proposal in connection with Rule 56(d) discovery in the Revenue Bond Adversary Proceedings,[20] and the Court rejected it.  (*See Order Setting Discovery Schedule* (ECF No. 15809), ¶ 1 (ruling that requesting parties would "have the opportunity to serve limited, targeted follow-up requests  . . . before the end of the discovery period").)  The Court should do the same in connection with confirmation discovery.

---

[20] (*See Joint Status Report of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, the Bank of New York Mellon, U.S. Bank Trust National Association, and the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico, Pursuant to the Court's January 20, 2021 Order* (ECF No. 15801), ¶¶ 8, 25-29 (the "Rule 56(d) Status Report").)

25.     Moreover, the Board's proposal improperly seeks to require creditors to provide a certification "setting forth why [their document requests are] reasonably necessary given the availability of information in the" Board's document depository.  (Prop. Conf. Proc. Order ¶ 13.) Obviously, if a creditor believed that the documents available in the Board's depository were sufficient, it would not propound a discovery request.  Indeed, this requirement appears to serve no other purpose than to require creditors to jump through even more hoops and to give the Board another basis for denying discovery.

26.     The procedures and schedule adopted by the Court should make clear that creditors have the ability to serve targeted, follow-up document requests prior to the end of the discovery period, and that creditors need not explain why they believe the information in the Board's document depository is insufficient to justify propounding document requests.

27.     ***Requests for Admission.***  The Board's proposed schedule would also require that creditors propound all requests for admission at the outset of the discovery process.  (*See* Conf. Proc. Mot. ¶¶ 33, 49; Prop. DS Approval Order, Sched. 2 ¶ 7.)  Such a requirement simply does not make sense, and would prejudice creditors.  As noted in practice guides prepared by the United States District Court for the Southern District of New York and others, ordinarily, requests for admission are served at the close of the discovery period—not the beginning—so as to allow parties to consider the discovery record and attempt to identify facts that are no longer in dispute.[21] Requiring creditors to serve requests for admission at the commencement of discovery, before

---

[21] *See* U.S. District Court, S.D.N.Y., *Discovery Guide for Pro Se Litigants* (June 29, 2016) ("Requests for admission are often most useful near the end of the discovery period, when they can help narrow the issues for trial."), https://www.nysd.uscourts.gov/sites/default/files/2018-06/discoveryguide.pdf; Legal Information Institute, Cornell Law School, *Requests for Admission* ("Requests for admission are generally used toward the end of the discovery process to settle uncontested issues . . . ."), https://www.law.cornell.edu/wex/requests_for_admission; *see also* 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2252 (3d ed. 2021) (the function of requests for admission "is to define and limit the matters in controversy between the parties").

creditors have information regarding any facts that they would want admitted—would nullify the purpose of this discovery device.  Indeed, the Board sought to insert the same requirement in its proposed schedule for Rule 56(d) discovery in the Revenue Bond Adversary Proceedings (Rule 56(d) Status Report ¶¶ 8, 25, 29), and was denied by the Court.  (*Order Setting Discovery Schedule* (ECF No. 15809), ¶ 3 (permitting service of "any . . . requests for admission sufficiently in advance to obtain responses prior to the completion of fact discovery").)

28.     Moreover, the Board's proposal contemplates that any requests for admission would be limited to "the authentication of documents intended to be offered as exhibits" at the plan confirmation hearing.  (Conf. Proc. Mot. ¶ 49; Prop. Conf. Proc. Order ¶ 12.)  That is nonsensical.  The Board makes no attempt to explain how a creditor could possibly seek admissions related to the authentication of documents when the creditor has not yet received documents in response to requests for production.  Creditors should be permitted to issue requests for admission consistent with the Federal Rules.

29.     ***Interrogatories.***  The Board's proposed schedule does not even contemplate the use of interrogatories.  It is unclear whether this omission was intentional, as even the Board's proposed schedule in connection with Rule 56(d) discovery in the Revenue Bond Adversary Proceedings contemplated the use of interrogatories.  (Rule 56(d) Status Report at ¶¶ 8, 25, 29.) There is no basis for prohibiting creditors from serving interrogatories, as the Federal Rules of Bankruptcy Procedure expressly contemplate their use in contested matters like this one.  *See* Fed. R. Bankr. Proc. 9014(c) (making applicable Federal Rule of Bankruptcy Procedure 7033, and, by incorporation, Federal Rule of Civil Procedure 33).  Accordingly, just as the defendants in the Revenue Bond Adversary Proceedings were permitted to serve interrogatories as long as they were served sufficiently in advance of the completion of fact discovery to obtain responses (*Order*

- 14 -

*Setting Discovery Schedule* (ECF No. 15809), ¶ 3), creditors should be permitted to do the same here.

30. ***Early Issuance of Deposition Notices and Identification of Fact Witnesses, and Other Restrictions Related Thereto.*** The Board's proposed schedule would require creditors to serve all deposition notices and identify all fact witnesses within seven and ten days, respectively, of the commencement of discovery, before document production in response to creditors' document requests has even begun. (*See* Conf. Proc. Mot. ¶¶ 33, 45-48; Prop. DS Approval Order, Sched. 2 ¶ 7.) Like the Board's other proposals, this makes no sense and would seriously inhibit creditors' ability to obtain discovery and prepare for the confirmation hearing. Objectors and other creditors need sufficient time to review produced documents so that they can identify potential deponents and witnesses. Adopting the Board's proposal would both be too limiting and create waste because creditors will not know all the witnesses whom they might desire to depose before reviewing produced documents, and would therefore be left with no choice but to notice "everyone under the sun" to avoid being precluded from taking any necessary depositions. Even then, creditors will not know all witnesses who have relevant information. That is likely why the Court denied the Board's request for similar restraints in connection with Rule 56(d) discovery in the Revenue Bond Adversary Proceedings (Rule 56(d) Status Report ¶¶ 8, 30-31) and ordered that deposition notices for fact witnesses "be served sufficiently in advance to conclude depositions prior to the completion of fact discovery[,]" while allowing six weeks from the commencement of discovery for Rule 30(b)(6) deposition notices to be served on the Government. (*Order Setting Discovery Schedule* (ECF No. 15809), ¶¶ 5-6.)

31. Moreover, under the Board's proposal, creditors would not even have the opportunity to depose any witness not included on the ***Debtors'*** fact witness list unless they certify

"why the additional person's testimony is reasonably necessary, and not duplicative, given the availability of testimony from persons" hand selected by the Board. (Prop. Conf. Proc. Order ¶ 12.) That is absurd. If a creditor believes a witness has information relevant to the confirmability of the Plan, it should be permitted to issue a deposition notice for that witness. The Board will have every opportunity to object to such a deposition if it believes it is unnecessary or duplicative, consistent with standard discovery practices.

32.     Equally senseless and prejudicial is the Board's remarkable proposal to require all fact witnesses for the confirmation hearing to be identified one week after the commencement of discovery, ***while reserving for itself—but not creditors***—the ability to supplement its fact witness list for any reason after it has been served. (Conf. Proc. Motion ¶¶ 45-46; Prop. Conf. Proc. Order ¶¶ 2-3.) There is nothing about this proposal that is consistent with principles of fundamental fairness and Due Process. Creditors simply cannot be forced to prepare and commit to the entirety of their witness lists before discovery has gotten meaningfully underway, while they—but not the Board—are precluded from amending their witness lists based on what discovery reveals.

33.     ***Third Party Discovery***. Neither the Board's Motions nor its proposed schedule say anything about third party discovery (except that, as indicated *supra* in Section I, the Confirmation Procedures Proposed Order appears to indicate that a creditor is limited to pursuing discovery from third parties based on the filing of an "Initial Objection"). It is unclear whether that is an inadvertent oversight, as even the Board's proposed schedule in connection with Rule 56(d) discovery in the Revenue Bond Adversary Proceedings contemplated third party discovery. (*See* Rule 56(d) Status Report ¶ 49.) To the extent that the Board is seeking to preclude third party discovery, that position should be rejected outright. Clearly, persons other than the Debtors,[22] such

---

[22] The Confirmation Procedures Motion contemplates discovery of the "Debtors," which is defined therein to include the Commonwealth, ERS, and PBA, but ***not*** the Board (Conf. Proc. Mot. at 1), whereas Exhibit A

as governmental employees, banks, and outside auditors and accounting firms may have relevant information.  For that reason, the Court's order regarding Rule 56(d) discovery in the Revenue Bond Adversary Proceedings permitted third party document requests and deposition subpoenas to be served sufficiently in advance of the fact discovery deadline.  (*Order Setting Discovery Schedule* (ECF No. 15809), ¶¶ 2, 6.)  Objectors' proposed schedule includes a similar framework.

### C.   The Board's Pretrial Schedule Is Unrealistically Compressed.

34.     Beyond the issues presented above regarding discovery, the Board's proposed schedule would unreasonably jam critical pretrial proceedings.  Under the Board's proposal, the following would occur within the one-month period leading up to the confirmation hearing proposed to commence on November 8, 2021:  (i) filing of "supplemental" objections to the Plan; (ii) full briefing of motions *in limine*; (iii) full briefing of *Daubert* motions; (iv) service of exhibit lists and objections thereto; (v) service of deposition designations, cross-designations, and objections to each; (vi) filing of witness declarations; (vii) a hearing on motions *in limine*; (viii) filing of a status report addressing various pretrial issues; and (ix) rulings by the Court on motions *in limine* and *Daubert* motions and any of the foregoing issues or other issues that may arise.  And all of this is to occur while the parties are in the thick of preparing for the confirmation hearing.

35.     Objectors recognize the desire to move forward with the proceedings in a timely manner, but the Board's proposed schedule, which is borne out of nothing other than the Board's

---

thereto (the Confirmation Procedures Proposed Order) defines "Debtors" to include the Commonwealth, ERS, PBA, *and* the Board (Prop. Conf. Proc. Order at 1).  While it is thus unclear whether the Board's proposal contemplates discovery from the Board itself, clearly any attempt to limit discovery from the Board would be improper, and Objectors object to the Motions to the extent they do not contemplate such discovery.

desire to comply with private agreements with creditors who have entered into plan support agreements, would place an impossible strain on the parties and the Court.

### D. The Allocation of Time for the Confirmation Hearing Should Account for the Number and Complexity of Issues Likely to Be Presented.

36.    The Motions contemplate a ten-day confirmation hearing.  (Conf. Proc. Mot. ¶¶ 27, 33; DS Approval Mot. ¶¶ 41, 48.)  Objectors submit that ten days is far too short a time for the parties to present evidence and argument regarding the confirmability of a Plan purporting to adjust tens of billions of dollars in claims across over 60 classes of claims.[23]  The hearing is likely to address numerous complex issues that will require substantial time—issues relating to the Commonwealth's cash position and the Plan's proposed use of cash, the Debtors' evaluation of the financial position of the Commonwealth and projections regarding its future, the Commonwealth's pension liability, the Plan's compliance with the certified fiscal plan, whether clawback was properly triggered under Article VI, Section 8 of the Commonwealth Constitution, the value of the Commonwealth's disused real property assets that have not been made available to creditors, and so on.  In addition, significant issues raised in the Revenue Bond Adversary Proceedings will be tried in conjunction with the confirmation hearing.  (*See supra* Sec. II.A.)

37.    Objectors respectfully submit that reserving thirty days for a confirmation hearing is far more realistic and would allow adequate time for appropriate consideration of the multitude of issues that will arise at confirmation.

### E. Objectors' Proposed Schedule Should Be Adopted.

38.    Objectors have endeavored to prepare a properly and logically sequenced—but expedited—schedule that balances the desire to quickly and efficiently move these cases through

---

[23] *See Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* ¶ 21, *In re City of Detroit*, Case No. 13-53846 (Bankr. E.D. Mich. Apr. 21, 2014) (ECF No. 4202) (allowing seventeen days for confirmation hearing).

a confirmation hearing while also balancing the need to preserve creditor rights and protections
and not exhaust the resources of the parties and the Court.  Objectors' proposed schedule is set
forth below:

| Proposed Plan Confirmation Schedule | | |
|---|---|---|
| **Deadline/Event** | **Objectors' Proposal** | **Board's Proposal**[24] |
| Conversion of Disclosure Statement Depository to Plan Depository | On or after July 13, 2021 | On or after July 13, 2021 |
| Deadline to File Initial Objections to Confirmation | N/A | August 3, 2021 |
| Deadline for Eligible Creditors to Serve Requests for Production of Non-Depository Documents | August 6, 2021 | August 6, 2021 |
| Deadline for the Debtors to Serve Requests for Production | August 6, 2021 | August 6, 2021 |
| Deadline to Serve Responses and Objections to Requests for Production (All Parties) | August 16, 2021 | August 16, 2021 |
| Deadline for Substantial Completion of Document Production (All Parties) | September 17, 2021 | N/A |
| Serve Opening Expert Disclosures (All Parties) | September 17, 2021 | August 30, 2021 |
| Opening Expert Reports Due (All Parties) | September 24, 2021 | September 3, 2021 |
| Deadline to Serve Notices of Deposition, Topics, and Requested Times for Depositions (All Parties) | October 8, 2021 | August 17, 2021 |
| Status Conference on Deposition Notices | October 15, 2021 | August 23, 2021 |
| Serve Rebuttal Expert Disclosures (All Parties) | October 15, 2021 | September 24, 2021 |
| Filing of Deposition Schedule | October 18, 2021 | August 25, 2021 |

---

[24] (*See* Conf. Proc. Mot. ¶ 33.)

| Proposed Plan Confirmation Schedule | | |
|---|---|---|
| **Deadline/Event** | **Objectors' Proposal** | **Board's Proposal**[24] |
| Serve Rebuttal Expert Reports (All Parties) | October 22, 2021 | October 1, 2021 |
| Witness Depositions | November 1, 2021 – December 3, 2021 | September 13, 2021 – October 4, 2021 |
| Deadline for Notice of Third Party Document and Deposition Subpoenas (All Parties) | November 10, 2021 | N/A |
| Deadline to Serve Requests for Admission (All Parties) | December 10, 2021 | August 6, 2021 |
| Deadline to Serve Interrogatories (All Parties) | December 10, 2021 | N/A |
| Deadline to Serve Responses and Objections to Requests for Admission (All Parties) | December 20, 2021 | August 16, 2021 |
| Deadline to Serve Responses and Objections to Interrogatories (All Parties) | December 20, 2021 | N/A |
| Close of Discovery | December 22, 2021 | N/A |
| Deadline to File Objections to Confirmation | January 7, 2022 | October 8, 2021 (Supplemental) |
| Deadline to File Fact Witness List and Topics (All Parties) | January 10, 2022 | August 13, 2021 |
| Deadline to Serve Exhibit Lists and Deposition Designations (All Parties) | January 10, 2022 | October 11, 2021 |
| Deadline to File *Daubert* Motions (All Parties) | January 11, 2022 | October 8, 2021 |
| Deadline to File Motions *in Limine* (All Parties) | January 14, 2022 | October 8, 2021 |
| Deadline to File Objections to *Daubert* Motions (All Parties) | January 25, 2022 | October 15, 2021 |

| Proposed Plan Confirmation Schedule | | |
|---|---|---|
| Deadline/Event | Objectors' Proposal | Board's Proposal[24] |
| Deadline to Exchange Objections to Exhibit Lists, Counter-Designations, Objections to Deposition Designations, and Designation of Witnesses for Cross-Examination (All Parties) | January 26, 2022 | October 18, 2021 |
| Deadline to File Objections to Motions *in Limine* (All Parties) | January 28, 2022 | October 15, 2021 |
| Deadline to Exchange Objections to Counter-Designations (All Parties) | February 4, 2022 | October 25, 2021 |
| Deadline to File Replies to *Daubert* Motions (All Parties) | February 8, 2022 | October 25, 2021 |
| Deadline to File Replies to Motions *in Limine* (All Parties) | February 11, 2022 | October 25, 2021 |
| Deadline for the Debtors to File Affidavits, Replies to Objections to Confirmation of Plan of Adjustment, and Proposed Order and Findings of Fact. | February 11, 2022 | October 25, 2021 |
| Deadline to File Witness Declarations (All Parties) | February 11, 2022 | October 25, 2021 (Deadline for Objectors to File Witness Declarations)[25] |
| Hearing on Motions *in Limine* | February 15, 2022 | October 29, 2021 |
| Status Report on Remaining Objections to Declarations, Designations, Witnesses, and Exhibits | February 18, 2022 | November 1, 2021 |
| Confirmation Hearing | February 28, March 1–4, 7–11, 14–18, 21–25, 28–31, April 1, 4–8 (2022) | November 8–10, 12, 15–18, 22–23 (2021) |

39.     Objectors respectfully request that the Court adopt this proposed schedule.

---

[25] The Board's proposed deadlines for objectors to file witness declarations, as reflected in the Motions, are inconsistent.  (*Compare* Conf. Proc. Mot. ¶ 33 (proposing an October 25, 2021 deadline for objectors to file witness declarations), *with* Prop. DS Approval Order, Sched. 2 ¶ 7 (proposing a November 1, 2021 deadline for objectors to file witness declarations).)  Regardless of which date constitutes the Board's actual proposal, it is far too early in the confirmation process.

## III.   THE BOARD SHOULD NOT BE PERMITTED TO HAVE *EX PARTE* COMMUNICATIONS WITH THE COURT REGARDING DISCOVERY DISPUTES.

40.     In the Confirmation Procedures Motion, the Board proposes that the parties resolve discovery disputes in connection with confirmation as follows:   (i) the party alleging non-compliance with any discovery request shall inform the non-responsive party of the dispute (a "Non-Compliance Notice"); (ii) the Debtors shall, within one business day of receiving a Non-Compliance Notice, inform the Court of the dispute via telephone; (iii) the Court shall then schedule a conference as soon as possible to resolve the dispute; and (iv) the parties shall, within three business days of transmittal of the Non-Compliance Notice, provide letters to the Court describing the dispute and the legal support for their respective positions.  (Conf. Proc. Mot. ¶ 57; Prop. Conf. Proc. Order ¶ 20.)

41.     Objectors are largely amenable to the Board's proposed procedure for settling discovery disputes and appreciate the Board's recommendation of a procedure designed to ensure that discovery disputes are resolved expeditiously while minimizing any waste of resources by the parties and the Court.  Objectors believe that such an approach is in the best interests of the Debtors, creditors, and the Court.

42.     However, Objectors object to the portion of the Board's proposal providing that "*the Debtors* [] inform the Court of the existence of any [discovery] dispute via telephone[.]" (Conf. Proc. Mot. ¶ 57 (emphasis added).)  Objectors believe that such *ex parte* communications are inappropriate.  While Objectors trust that the Board would act in good faith in engaging in such communications, permitting such communications would allow the Board to characterize the dispute without input from creditors, ensuring that the Court's first opportunity to learn about the dispute is in the Board's preferred framing.  There is no reason why the Board cannot simply find a time that the applicable creditor (or its counsel) can join a telephone call, and Objectors represent

that they will make themselves readily available for such calls.  Accordingly, the Board's proposed procedure should be amended to require that both (or all) sides to any discovery dispute collectively inform the Court of the existence of any discovery dispute *via* telephone, should the Court be willing to entertain those communications.  With that amendment, Objectors are in agreement with the Board's proposed procedure for resolving confirmation-related discovery disputes.

## IV.  THE COURT SHOULD REJECT THE BOARD'S ATTEMPT TO IMPOSE UNREASONABLE PAGE LIMITS FOR BRIEFING ON MOTIONS *IN LIMINE*.

43.     The Board proposes that all motions *in limine* and objections thereto be limited to five pages, and all replies be limited to three pages.  (Conf. Proc. Mot. ¶ 33; Prop. DS Approval Order, Sched. 2 ¶ 7.)  Objectors recognize that the resources of the parties and the Court are limited, and will be particularly so in the lead-up to the confirmation hearing, but there is no reason to preemptively limit briefing on motions *in limine* in such a drastic manner.  It is far too early to say which issues will be the subject of such motions at this time, and there may be issues that require more than the limited pages contemplated by the Board.[26]  Accordingly, the Court should reject the Board's attempt to impose these unreasonable page limits.

### CONCLUSION

For the foregoing reasons, Objectors respectfully request that the Motions be denied, and that the Court adopt procedures and a schedule for confirmation proceedings consistent with the objections and alternative proposed schedule set forth herein.

---

[26] Indeed, courts overseeing other restructuring proceedings (including the City of Detroit's restructuring proceedings) have permitted motions *in limine* that significantly exceed five pages.  *See, e.g.*, *City of Detroit's Motion* in Limine *to Preclude Its Counsel, Heather Lennox, from Being Called as a Trial Witness*, *In re City of Detroit*, Case No. 13-53846 (Bankr. E.D. Mich. Aug. 22, 2014) (ECF No. 7002) (20-page motion *in limine*); *Motion* in Limine *Barring the City from Introducing Evidence Regarding the Combined Recoveries of Pension and OPEB Claims*, *In re City of Detroit*, Case No. 13-53846 (Bankr. E.D. Mich. Aug. 22, 2014) (ECF No. 6975) (15-page motion *in limine*).

Dated:  June 15, 2021
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
Dennis F. Dunne (admitted *pro hac vice*)
Atara Miller (admitted *pro hac vice*)
Grant R. Mainland (admitted *pro hac vice*)
John J. Hughes, III (admitted *pro hac vice*)
Jonathan Ohring (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile:  (212) 530-5219
Email: ddunne@milbank.com
amiller@milbank.com
gmainland@milbank.com
jhughes2@milbank.com
johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

**REXACH & PICÓ, CSP**

By: /s/ *María E. Picó*
María E. Picó
(USDC-PR No. 123214)
802 Ave. Fernández Juncos
San Juan, PR 00907-4315
Telephone: (787) 723-8520
Facsimile: (787) 724-7844
Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: /s/ *Martin A. Sosland*
Martin A. Sosland (admitted *pro hac vice*)
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
Email: martin.sosland@butlersnow.com

James E. Bailey III (admitted *pro hac vice*)
Adam M. Langley (admitted *pro hac vice*)
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: jeb.bailey@butlersnow.com
adam.langley@butlersnow.com

*Attorneys for Financial Guaranty Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com