**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | ) <br> ) <br> ) PROMESA <br> ) Title III <br> ) <br> ) Case No. 17-BK-03283 (LTS) <br> ) <br> ) (Jointly Administered) <br> ) <br> ) **Re: ECF No. 16756** <br> ) <br> ) |

**LIMITED RESPONSE OF THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES
TO THE AMENDED JOINT MOTION OF THE COMMONWEALTH OF PUERTO
RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC
BUILDINGS AUTHORITY FOR AN ORDER (I) APPROVING DISCLOSURE
STATEMENT, (II) FIXING VOTING RECORD DATE, (III) APPROVING
CONFIRMATION HEARING NOTICE AND CONFIRMATION SCHEDULE,
(IV) APPROVING SOLICITATION PACKAGES AND DISTRIBUTION
PROCEDURES, (V) APPROVING FORMS OF BALLOTS, AND VOTING AND
ELECTION PROCEDURES, (VI) APPROVING NOTICE OF NON-VOTING STATUS,
(VII) FIXING VOTING, ELECTION, AND CONFIRMATION DEADLINES, AND
<u>(VIII) APPROVING VOTE TABULATION PROCEDURES</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Retired Employees (the "**Retiree Committee**") hereby files this Limited Response to the *Amended Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [Dkt. 16756] (the "**Plan Solicitation Motion**" filed by the "**Oversight Board**") and states:

## INTRODUCTION

1. On June 7, 2019, the Retiree Committee and the Oversight Board (as the representative of the Commonwealth of Puerto Rico) entered into a Plan Support Agreement ("**PSA**"). Pursuant to the PSA, the Retiree Committee supports the Third Amended Plan of Adjustment ("**Plan**") to the extent that it is consistent with (or reflects an improvement upon) the economic and other terms of the PSA. However, the Retiree Committee retains the right to oppose any specific aspect of the Plan that the Retiree Committee may deem inconsistent with the PSA or inappropriate and not encompassed by the PSA.

2. As these cases move to confirmation, one of the Retiree Committee's goals is to ensure that all retirees understand exactly what the Plan provides and how their pensions and other retirement benefits will be treated if the Plan is confirmed. With that goal in mind, the Retiree Committee has been working with the Oversight Board to address various modifications to the

Plan and the confirmation process that the Retiree Committee believes are necessary to ensure robust and informed participation by retirees in the Plan confirmation process.

3. The Retiree Committee is pleased to report that it has reached agreement with the Oversight Board on several of the Retiree Committee's proposals. While the precise language is still being finalized, the Oversight Board has agreed to make the following modifications:

    a. Splitting the single Class of Retiree Claims (Class 48(A)) under the Plan into at least three classes by creating separate classes for ERS, TRS, and JRS Retirees[2];

    b. A weighting of the size of each Retiree Claim for voting tabulation purposes based upon the amount of each Retiree's Total Monthly Benefit;

    c. Including in the Solicitation Packages delivered to Retirees a physical copy of a Plan support letter from the Retiree Committee explaining how the Plan proposes to treat Retiree Claims, why the Retiree Committee supports the Plan, and providing Retirees with an overview of the voting process, and obtaining the Court's approval of this letter and an accompanying simplified explanation of the Plan pursuant to 11 U.S.C. §1125(d) as made applicable by PROMESA;

    d. The creation of a simplified ballot for the Retiree Classes;

    e. Increasing the frequency and modifying the timing of the Oversight Board's proposed publication and radio notice procedures "informing listeners of (i) the approval of the Disclosure Statement and the scheduling to the Confirmation Hearing, (ii) the date by which Confirmation Objections must be filed and served, (iii) the Voting Deadline and the Election Deadline" and certain other information set forth in the Plan Solicitation Motion. [Plan Solicitation Motion at ¶ 46]; and

    f. In accordance with the terms of the Retiree Committee's PSA, providing that professionals of the Retiree Committee may conduct information sessions through the Retiree Committee's website, social media, or in-person that explains to Retirees the voting process, how to fill out a ballot and ensure it is timely submitted, and the Retiree Committee's support for the Plan. The Retiree Committee also requests that its efforts in doing so be generally approved by the Court pursuant to 11 U.S.C. §1125(d) as made applicable by PROMESA.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

4. The definitive documentation formalizing these changes will be filed with the Court no later than one week prior to the July 13, 2021 hearing on the Plan Solicitation Motion.[3]

5. The Retiree Committee and the Oversight Board, however, were not able to reach agreement on all of the Retiree Committee's suggested modifications. For these proposed changes, as with the agreed upon changes noted above, the Retiree's Committee's overarching concern is that the complexity of these cases and the corresponding complexity of the Disclosure Statement, Plan, and solicitation materials runs the material risk that the Commonwealth's approximately 167,000 Retirees—the vast majority of whom likely have no previous exposure to bankruptcy—will be confused and frustrated by the Plan solicitation and voting process. That, in turn, may lead to Retirees either not voting at all or casting a vote without fully understanding how the Plan purports to treat their benefits.

6. In addition, and consistent with the terms of the PSA, some of the modifications below address the Retiree Committee's concern that the Retirees who participate in the Plan voting process should be only those Retirees who are proposed to experience a reduction in their pension benefits under the Plan, and not Retirees whose benefits are not being affected by the Plan. To include unaffected Retirees in the voting process would cause confusion for unaffected Retirees and would improperly dilute the votes of affected Retirees.

7. Consequently, to minimize confusion and ensure robust and effective participation by Retirees in the voting process, the Retiree Committee asks that the Court direct the following changes to the relief sought in the Plan Solicitation Motion:

>    a. Pursuant to the Retiree Committee's PSA, splitting each Retiree Class into two separate classes—one Class for Retirees (the "**Above-Threshold Retirees**")

---

[3] In the event the Oversight Board and Retiree Committee cannot agree on final language on one or more of these points, the Retiree Committee hereby reserves its right to submit such dispute for the Court's resolution at the hearing on the Plan Solicitation Motion.

3

      whose Total Monthly Benefit is more than $1,500 (the "**Threshold**") and another for the Class of Retirees (the "**Below-Threshold Retirees**") whose Total Monthly Benefit is at or below the Threshold. This will increase the number of Retiree Classes from the now agreed-upon three (ERS, TRS, JRS) to six (ERS Above-Threshold, ERS Below-Threshold, TRS Above-Threshold, TRS Below-Threshold, JRS Above-Threshold, and JRS Below-Threshold);

    b. Providing a simplified Notice of Non-Voting Status to the unimpaired Retirees in the ERS Below-Threshold and TRS Below-Threshold Classes[4];

    c. Establishing an on-Island mailing address to which Retirees may mail their ballots;

    d. Adding additional locations as drop box sites where Retirees can submit their ballots to ensure that these locations are conveniently located for Retirees to access them[5]; and

    e. Providing certain operational guidelines regarding the "information hotline" to maximize the efficacy of the information hotline.

8. The Retiree Committee will continue to work with the Oversight Board on these remaining outstanding issues in the hopes of resolving them prior to the hearing on the Plan Solicitation Motion.

## ARGUMENT

**I. The Retiree Committee's Proposed Changes Will Help Retirees Make An Informed Decision On Voting On The Plan And Make It Easier For Retirees To Submit A Timely Ballot.**

9. As the Oversight Board notes, the purpose of a disclosure statement is to give creditors "adequate information" in order to allow creditors to make an informed decision as to

---

[4] There are 44 JRS Retirees who receive a Total Monthly Benefit below the $1,500 Threshold for cuts; however, these Retirees are impaired because the Plan eliminates their cost of living adjustments ("**COLAs**") (which do not exist for the ERS and TRS Retirees). Nonetheless, separating these JRS Below-Threshold Retirees from the JRS Above-Threshold Retirees is appropriate, since the JRS Above-Threshold Retirees are receiving a cut in their Total Monthly Benefit that the JRS Below-Threshold Retirees are not.

[5] The Retiree Committee is working with the Oversight Board to address the appropriate location for such additional drop box sites.

4

whether or not to support the proposed plan. [Plan Solicitation Motion ¶¶27-28.] Here, the proposed Plan seeks to reorganize billions of dollars of debt in one of the most complicated bankruptcy proceedings in American history. Not surprisingly, both the Plan and Disclosure Statement are hundreds of pages long containing complex discussions of the readjustment of all of the Commonwealth's debts.

10. As stated, one of the Retiree Committee's primary concerns is that both the sheer amount of information in the Disclosure Statement, Plan, and all the other documents that compose the Solicitation Package, and, in some cases, how that information is presented, has the potential to confuse and frustrate Retirees, who likely have no previous experience with the bankruptcy system at all, much less a case of this size and complexity. Consequently, many of the Retiree Committee's requested edits (both those already agreed to by the Oversight Board and those that are still outstanding) seek to simplify for Retirees the explanation of how the Plan proposes to modify Retiree benefits and how to access the voting process. These changes will help ensure that those Retirees entitled to vote understand the process and are able to submit a proper and timely ballot. The Retiree Committee's proposals are perfectly in line with the goals of the Plan Solicitation Motion (and, specifically as to the separate classification of the below-Threshold Claims, in line with the PSA) and should be adopted.

### A. The Classification of Retiree Claims.

11. The Plan on file contemplates placing all Retirees in a single class (regardless of the Retirees' status as prior participants in three different retirement systems or the size of their Total Monthly Benefit). The Retiree Committee asked the Oversight Board to consider classifying Retirees by their pre-PAYGO retirement system. The Oversight Board agreed to make this change. The Retiree Committee asked for this change for several reasons. *First*, the different retirement systems had different benefit rules, and those rules will continue to apply post-confirmation.

5

*Second*, classifying the Retirees by former retirement system also ensures that the votes of Retirees in the smallest system (*i.e.*, JRS) will not be drowned out by the two larger systems. *Finally*, making this change is consistent with how active employee pension claims are being treated under the Plan and consistent with how classification has been done in other large governmental chapter 9 cases (*e.g.*, Detroit, which had separate classes for the two pension systems). *See* Order, App'x I, *In re City of Detroit*, No. 13-53846, at 33 (E.D. Mich. Nov. 12, 2014), ECF No. 8272.

12. The Retiree Committee also asked that those ERS and TRS Retirees who are not experiencing a reduction in pensions or benefits under the Plan be placed in classes that are deemed unimpaired under the Plan. This is consistent with the Retiree Committee PSA, which provides that Retirees not receiving a reduction in their monthly benefit are deemed unimpaired under the Plan. The Retiree Committee similarly requested that the JRS Retirees receiving a Total Monthly Benefit below the Threshold be separately classified since (while impaired due to a loss of COLAs) they will not be subject to the cuts in Total Monthly Benefit proposed for JRS Retirees receiving a Total Monthly Benefit above the Threshold.

13. The Retiree Committee submits that this change is necessary not only to comply with the PSA but also to avoid causing massive general confusion amongst Retirees. As currently structured, a Retiree who will not experience a change in his or her Total Monthly Benefit will be allowed to vote and placed in the same Class as those Retirees who will experience a Total Monthly Benefit reduction. Those "no-cut" retirees may be confused about why they are being asked to vote and incorrectly conclude that their pensions are being reduced. Further, because the Retirees who are unimpaired constitute approximately 73% of all Retirees, their votes will unfairly swamp the votes of those Retirees who are experiencing cuts. Finally, even if some argument can be made that every Retiree is somehow impaired by the Plan even if his or her pension is not being reduced,

6

separating the Retirees who are receiving no monetary reduction in their pensions from those that are receiving a monetary reduction more closely aligns with the requirements of sections 1122 and 1123 of the Code as incorporated by PROMESA.

14. Accordingly, the Retiree Committee submits that the Retirees should be divided into six classes, as set forth below:

   a. Class 1: ERS Above-Threshold Retirees;

   b. Class 2: ERS Below-Threshold Retirees (Unimpaired);

   c. Class 3: TRS Above-Threshold Retirees;

   d. Class 4: TRS Below-Threshold Retirees (Unimpaired);

   e. Class 5: JRS Above-Threshold Retirees; and

   f. Class 6: JRS Below-Threshold Retirees.[6]

15. The Retiree Committee anticipates continuing to work with the Oversight Board regarding these classification issues but reserves the right to argue the merits of these matters at the July 13, 2021 hearing regarding the Plan Solicitation Motion, or at such other time as the Court may schedule.

### B. Certain Procedural Modifications Are Necessary To Ensure Robust Retiree Participation in the Voting Process.

16. The Retiree Committee also proposes several procedural modifications to the Plan Solicitation Motion to ensure that Retirees understand the voting process and are able to timely submit their ballots.

17. *First*, the Retiree Committee submits that Retirees whose benefits will not be adjusted by the Plan will be better served by receiving a simplified version of the Oversight

---

[6] As noted above, all the JRS Below-Threshold Retirees are impaired, but solely as to the Plan's elimination of their COLAs.

Board's proposed Notice of Non-Voting Status – Deemed to Accept. The proposed edits are designed to succinctly tell Retirees precisely what they need to know: that their Total Monthly Benefit is not being reduced under the Plan and therefore they do not vote on the Plan as they are deemed to accept the Plan.

18. *Second*, the Oversight Board should establish a Puerto Rico address to which ballots may be mailed. Given the well-documented delays with the U.S. Postal service during the pandemic, the Retiree Committee has serious concern that many ballots that are mailed before the Voting Deadline will not be received until after the Voting Deadline if the mailing address is in New York. The Retiree Committee believes that U.S. Mail may be the most popular choice of Retirees for voting on the Plan and establishing an on-Island mailing address will help ensure that Retirees who wish to vote by mail will have their vote counted.

19. *Third*, the designated drop box locations where creditors can physically drop off their completed ballot should be amended to include locations where Retirees reside in significant numbers and which are well-known to Retirees. The Retiree Committee's understanding is that several of the Oversight Board's current drop-off locations will not be convenient for, or familiar to, many Retirees, thereby greatly reducing their efficacy (many are located in business and tourist districts where few Retirees reside). The Retiree Committee is working with the Oversight Board about suggested additions or substitutions that are centrally located in areas where large numbers of Retirees live. In addition the Retiree Committee will work with the Oversight Board regarding the information hot-line and ways it will be more useful to Retirees.

## CONCLUSION

20. The Retiree Committee's requests will protect highly important Retiree interests in the Plan confirmation process and will not negatively affect any other party's substantive rights. The Retiree Committee simply seeks to make certain modifications that will ensure a more

8

effective voting process whereby Retirees are able to access the information they need to make an informed choice and submit a timely ballot that is tabulated in a properly tailored Class. For these reasons, the Retiree Committee's proposed modifications should be approved.

Dated: June 15, 2021

| JENNER & BLOCK LLP | BENNAZAR, GARCÍA & MILIÁN, C.S.P. |
|---|---|
| By: | By: |
| */s/ Robert Gordon* | */s/ A.J. Bennazar-Zequeira* |
| Robert Gordon (admitted *pro hac vice*)<br>Richard Levin (admitted *pro hac vice*)<br>919 Third Ave<br>New York, NY 10022-3908<br>rgordon@jenner.com<br>rlevin@jenner.com<br>212-891-1600 (telephone)<br>212-891-1699 (facsimile) | A.J. Bennazar-Zequeira<br>Héctor M. Mayol Kauffmann<br>Francisco del Castillo Orozco<br>Edificio Union Plaza,<br>1701 Avenida Ponce de León #416<br>Hato Rey, San Juan<br>Puerto Rico 00918<br>ajb@bennazar.org<br>hector.mayol@bennazar.com<br>787-754-9191 (telephone)<br>787-764-3101 (facsimile) |
| Catherine Steege (admitted *pro hac vice*)<br>Melissa Root (admitted *pro hac vice*)<br>Landon Raiford (admitted *pro hac vice*)<br>353 N. Clark Street<br>Chicago, IL 60654<br>csteege@jenner.com<br>mroot@jenner.com<br>lraiford@jenner.com<br>312-222-9350 (telephone) | *Counsel for The Official Committee of Retired Employees of Puerto Rico* |