**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>THE COMMONWEALTH OF PUERTO RICO, THE<br>EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO, AND THE PUERTO RICO PUBLIC<br>BUILDINGS AUTHORITY,<br>                  Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**OBJECTION OF FINANCIAL GUARANTY
INSURANCE COMPANY TO APPROVAL OF DISCLOSURE
STATEMENT FOR THE THIRD AMENDED TITLE III JOINT PLAN
OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET AL.**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii
PRELIMINARY STATEMENT ....................................................................................................... 3
FACTUAL BACKGROUND ............................................................................................................ 4
OBJECTION ....................................................................................................................................... 5
        A.      The Proposed Disclosure Statement Lacks Adequate Information ........................ 5
                (i)      Provisions for Determination of Voting Rights with Respect to Insured Bonds .................................................................................................. 6
                (ii)     The Proposed Disclosure Statement Does Not Adequately Disclose Risks ..................................................................................................... 8
        B.      The Disparate Treatment of the FGIC Insured Bonds Makes the Plan Unconfirmable ............................................................................................................ 13
        C.      Section 78.1 of the Proposed Plan Should be Clarified .......................................... 15
CONCLUSION .................................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*, 748 F.2d 42 (1st Cir. 1984*)* ................................................................................................................... 14

*In re ACEMLA De Puerto Rico Inc*., No. 17-02021 ESL, 2019 WL 311008 (Bankr. D.P.R. Jan. 22, 2019) ......................................................................................................................... 5

*In re Felicity Assocs., Inc.,* 197 B.R. 12, 14 (Bankr. D.R.I. 1996) ............................................... 13

*In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) .................................................................... 5

*In re Hanish, LLC*, 570 B.R. 4, 12 n.23 (Bankr. D.N.H. 2017) ................................................... 13

*In re Main Road Props., Inc*., 144 B.R. 217 (Bankr. D.R.I. 1992) .............................................. 13

**Statutes**

11 U.S.C. § 1122 .......................................................................................................................... 14

11 U.S.C. § 1123 .............................................................................................................. 4, 13, 14

11 U.S.C. § 1125 ............................................................................................................................ 5

48 U.S.C. § 2161 ............................................................................................................................ 6

48 U.S.C. § 2195 .......................................................................................................................... 12

Puerto Rico Oversight, Management, and Economic Stability Act § 201 .................................. 10

Puerto Rico Oversight, Management, and Economic Stability Act § 301 ........................... passim

Puerto Rico Oversight, Management, and Economic Stability Act § 407 .................................. 12

Puerto Rico Oversight, Management, and Economic Stability Act § 5 ...................................... 10

Financial Guaranty Insurance Company ("**FGIC**") respectfully submits this objection (the "**Objection**") to the *Amended Joint Motion of Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [ECF No. 16756] (the "**Motion**")[2] filed by the Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**") as representative of the Commonwealth of Puerto Rico (the "**Commonwealth**"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("**ERS**"), and the Puerto Rico Public Buildings Authority ("**PBA**") seeking entry of an order approving the proposed *Disclosure Statement for the Third Amended Title III Joint Plan Of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 16741] (the "**Proposed Disclosure Statement**"). In support of this Objection, FGIC respectfully states as follows:

## PRELIMINARY STATEMENT

1. Despite including over 2000 pages of text, the Proposed Disclosure Statement still lacks adequate information in several key aspects and should not be approved unless and until such deficiencies are corrected. First, the Proposed Disclosure Statement fails to adequately describe the voting rights of the monoline insurers pursuant to section 301(c)(3) of PROMESA (defined below) such that holders of FGIC Insured Bods lack necessary information with respect to their

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

3

ability to vote their claims. The Proposed Disclosure Statement also fails to disclose many key assumptions underlying the Proposed Plan (defined below) and omits key risk factors associated with such assumptions that may impact the feasibility of the Proposed Plan. Finally, the Proposed Plan is otherwise unconfirmable because it provides disparate treatment to the FGIC Insured Bonds in violation of section 1123(a)(4) of the Bankruptcy Code (defined below). At minimum, creditors are entitled to understand whether or not they are entitled to vote on the Proposed Plan, what the Proposed Plan offers to them for recoveries, how they will receive those recoveries, and what risks may exist that would impact such recoveries should the assumptions underlying the Proposed Plan fail to be realized. As present, the Proposed Disclosure Statement fails to provide this necessary information.

## FACTUAL BACKGROUND

2. On May 3, 2017, the Oversight Board commenced a case under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("**PROMESA**") for the Commonwealth.[3]

3. On May 21, 2017, the Oversight Board commenced a case under Title III of PROMESA for ERS.

4. On September 27, 2019, the Oversight Board commenced a case under Title III of PROMESA for PBA.

5. On May 11, 2021, the Oversight Board filed the (i) *Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 16740] (the "**Proposed Plan**") and (ii) Proposed Disclosure Statement.

---

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

6. On May 13, 2021, the Oversight Board filed the Motion seeking, *inter alia*, entry of an order finding that the Proposed Disclosure Statement has adequate information as required by section 1125(b) of title 11 of the United States Code (the "**Bankruptcy Code**").[4]

## OBJECTION

### A. The Proposed Disclosure Statement Lacks Adequate Information

7. The Debtors have failed to provide creditors with "adequate information" to assess the Proposed Plan as required by section 1125(b) of the Bankruptcy Code. "Adequate information" is defined in section 1125(a) of the Bankruptcy Code as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan. . . .

11 U.S.C. § 1125(a). Although courts are generally given "'wide discretion to determine on a case by case basis whether disclosure is reasonable,'" *In re ACEMLA De Puerto Rico Inc.*, No. 17-02021 ESL, 2019 WL 311008 at *14 (Bankr. D.P.R. Jan. 22, 2019) (quoting *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991), such determination should be guided by the purpose of disclosure which is to "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. at 19. The Proposed Disclosure Statement does not comply with this standard.

---

[4] Certain provisions of the Bankruptcy Code, including § 1125, have been made applicable to this proceeding by section 301(a) of PROMESA.

5

      (i)    *Provisions for Determination of Voting Rights with Respect to Insured Bonds*

8.    The Proposed Disclosure Statement acknowledges that pursuant to section 301(c)(3) of PROMESA monoline insurers are considered the "holder" of an insured Bond Claim for voting purposes if such insurer is granted the right to vote insured bonds "for purposes of directing remedies or consenting to proposed amendments or modifications as provided in the applicable documents." PROMESA § 301(c)(3), 48 U.S.C. § 2161(c); *see also* Proposed Disclosure Statement § VI.A.3. Although the Proposed Disclosure Statement concedes that the insurers who signed the CW PSA (Assured, National, and Syncora) are authorized to vote their insured bonds,[5] it fails to provide a mechanism for the other monoline insurers to assert their right to vote insured bonds or to provide a mechanism to resolve any disputes with respect to the determination of such voting rights. FGIC insures $280,075,000 in principal amount of Vintage CW Bond Claims (Other Insured) (as defined in the Proposed Plan), currently classified in Class 18 of the Proposed Plan; of that total, as of the date of the scheduled hearing to approve the disclosure statement, FGIC will have the right to vote $167,658,575 in principal amount or approximately 59.86% as the owner and holder of such bonds or as the holder of such bonds pursuant to section 301(c)(3) of PROMESA and the applicable bond documents. FGIC insures $2,303,554 in principal amount of Vintage PBA Bond Claims (Other Insured) and Vintage CW Guarantee Claims (Other Insured) (as defined in the Proposed Plan), currently classified in Class 4 and 24, respectively, of the Proposed Plan; of that total, as of the date of the scheduled hearing to approve the Disclosure Statement, FGIC will have the right to vote $1,028,339 in principal

---

[5] Proposed Disclosure Statement § II.C.

amount as the owner and holder of such bonds.[6] FGIC has the right to vote all CW/Convention Center Claims (Class 56), CW/HTA Claims (Class 57), and CW/PRIFA Rum Tax Claims (Class 58) related to CCDA Bonds, HTA 98 Bonds and PRIFA Rum Tax Bonds insured by FGIC as the owner and holder of such bonds or as the holder of such bonds pursuant to section 301(c)(3) of PROMESA and the applicable bond documents.[7]

9. Upon information and belief, the Oversight Board or other parties may contest FGIC's above-described status as the holder of the FGIC Insured Bond Claims and Claims related to other bonds insured by FGIC and FGIC's right to vote such Claims. Accordingly, the Court should include in the schedule for voting and tabulating ballots a schedule for the Court to hear and determine any disputes over FGIC's right to vote Claims in respect of the bonds it insures.

10. In addition, the Debtors should include disclosure in substantially the following form:

> FGIC asserts that it is entitled to treatment consistent with the treatment provided to Assured, Syncora and National in the Proposed Plan and pursuant to section 301 (c)(3) of PROMESA, and that FGIC alone is entitled to vote to accept or reject the Plan with respect to all FGIC Insured Bond Claims and the Vintage PBA Bond Claims (Other Insured), Vintage CW Guarantee Bond Claims (Other Insured), CW/HTA Bond Claims, CW/Convention Center Claims, and CW/PRIFA Rum Tax Claims, except to the extent of $112,416,425 of FGIC Insured Bond Claims and $1,275,215 of both Vintage PBA Bond Claims (Other Insured) and Vintage CW Guarantee Bond Claims (Other Insured) that are insured by FGIC, for which the beneficial holders of such claims will be entitled to vote to accept or reject the Plan.

---

[6] A chart setting forth by series and CUSIP the amount of Bond Claims that FGIC is entitled to vote in Classes 4, 18 and 24 is annexed hereto as **Exhibit A**.

[7] "CW/PRIFA Rum Tax Claim" is an initially capitalized term used but not defined in the Disclosure Statement. "PRIFA Rum Tax Bond" is also not defined in the Disclosure Statement and may not be used in the Disclosure Statement but as used herein references the bonds issued by PRIFA that are the basis for the CW/PRIFA Rum Tax Claims.

11. FGIC also objects to the description in the Proposed Disclosure Statement and Plan of the voting provisions for classes 4, 18, 24, 56, 57, and 58 as nonsensical and unclear. For each such class, the Proposed Disclosure Statement and Plan provide that both the "class" and each holder of an allowed claim in the class are entitled to vote. What does it mean that the class is entitled to vote along with the holders? Further, the debtors should clarify with respect to such classes that "holders" has the meaning provided in section 301(c)(3) of PROMESA and, where applicable, that FGIC is entitled to vote on account of such Allowed Claims insured by FGIC.

(ii) *The Proposed Disclosure Statement Does Not Adequately Disclose Risks*

12. The section identifying risk factors connected with confirmation of a proposed plan is a key portion of any disclosure statement. Without an adequate disclosure of such risk factors, creditors cannot fully evaluate the plan and make a determination of how they should vote. The Proposed Disclosure Statement omits a discussion of several key risk factors, including factors that bear on whether the Proposed Plan is feasible.

13. First, while the Proposed Disclosure Statement makes clear that the Debtors are involved in significant litigation with bondholders and certain monoline insurers, including FGIC, with respect to special revenue bonds issued by HTA, PRIFA, and CCDA (the "**Revenue Bond Litigation**"),[8] it fails to disclose any risks related to a loss by the Commonwealth with respect to these actions. One of the common issues in the Revenue Bond Litigation is the Commonwealth's diversion of funds from HTA, CCDA, and PRIFA to fund the Commonwealth's operations. Among other things, the claimants allege that the diversion of such funds is improper because, *inter alia*, they have valid liens on the underlying revenue streams. Because the Proposed Plan is premised on the Commonwealth's fiscal plan, without these funds, the Commonwealth may not

---

[8] *See* Proposed Disclosure Statement § V.F.

be able to fund the payments provided by the Proposed Plan. The Debtors should be required to include a risk factor disclosing whether or not the Proposed Plan is feasible regardless of whether the Debtors prevail in the Revenue Bond Litigation. Accordingly, a disclosure in substantially the following form should be added to the Proposed Disclosure Statement in the Risks Related to Projections in Revenues and Expenses in the Commonwealth Fiscal Plan section:

> The Fiscal Plan assumes that the Commonwealth's diversion of funds historically allocated to HTA, CCDA, and PRIFA to pay the revenue bonds issued by the aforementioned Commonwealth instrumentalities (the "**Pledged Revenues**") was a valid exercise of its authority and that the Commonwealth will continue to have access to the Pledged Revenues. However, should the revenue bond creditors and monoline insurers prevail in the revenue bond litigation described in section [V.F.] of this Disclosure Statement, then the Commonwealth would not have access to the Pledged Revenues. If the Commonwealth does not have access to the Pledged Revenues, the Plan [will/will not] be feasible because the Debtors [still will/will not] be able to fund the payments in the Plan from other revenue streams.

14. Second, although the Debtors devote a significant portion of the Proposed Disclosure Statement to a discussion of the Debtors' Cash Management Systems and the Oversight Board's examination of restricted funds (the "**Restricted Cash Analysis**"),[9] the Restricted Cash Analysis is inadequate and incomplete, and the Debtors fail to disclose any risks to confirmation of the Proposed Plan if the Restricted Cash Analysis is incorrect. As an initial matter, the Debtors' Proposed Disclosure Statement and its Restricted Cash Analysis must be presented in accordance with agreed accounting standards, including the Government Accounting Standards Board ("**GASB**") statements, or the Debtors must be required to adequately disclose its method for presenting restricted cash and why the divergence from the GASB 54 definition is justified.[10]

---

[9] *See* Proposed Disclosure Statemen § III. D-F; Proposed Disclosure Statement Exhibit L.

[10] The Disclosure Statement does not present "restricted" cash in accordance with agreed accounting standards and does not adequately explain the divergence from agreed accounting standards. PROMESA plainly sets out that fiscal

Absent the presentation of restricted cash in accordance with GASB 54 or an adequate disclosure justifying the departure from agreed accounting standards, the disclosure statement's Restricted Cash Analysis will be materially incomplete or misleading because its users will not understand the method of presentation and that it diverges from understood standards. GASB definitions are generally understood by prospective disclosure statement recipients and required by PROMESA: however, the Debtors' Proposed Disclosure Statement definition of "restricted" diverges from agreed accounting standards without any explanation or disclosure for the divergence.

15. Additionally, the Restricted Cash Analysis appears to contain legal conclusions that are the subject of active litigation with the monolines, other constituencies, and even the government bodies and instrumentalities themselves. The Restricted Cash Analysis is inadequate and incomplete because the Debtors fail to disclose any risks to confirmation of the Proposed Plan if the Restricted Cash Analysis's legal conclusions are incorrect. Specifically, although the Debtors disclaim any reliance on the preliminary Restricted Cash Analysis included in the Proposed Disclosure Statement, the Debtors ability to fund the Proposed Plan is premised on their access to the unrestricted funds shown in the analysis. FGIC and other monoline insurers have requested the legal justifications for certain classifications in the Restricted Cash Analysis but have received little in the way of explanations. Further, the Proposed Disclosure Statement does not

---

plans and budgets are to be presented with agreed accounting standards. PROMESA §§ 5(6)(A), 201(b)(1)(A). Agreed accounting standards require the government to present resources and the expenditure of those resources in accordance with generally accepted accounting principles as defined by GASB. PROMESA § 5(1), (16). "Restricted" has a defined meaning under GASB Statement No. 54. Resources should be reported as "restricted" when "constraints placed on the use of resources are either: a. Externally imposed by creditors (such as through debt covenants), grantors, contributors, or laws or regulations of other governments; or b. Imposed by law through constitutional provisions or enabling legislation." GASB 54, ¶ 8. Enabling legislation is further understood to mean legislation that "authorizes the government to assess, levy, charge, or otherwise mandate payment of resources (from external resource providers) and includes a legally enforceable requirement that those resources be used only for the specific purposes stipulated in the legislation." *Id*. at ¶ 9. The Debtors' Proposed Disclosure Statement appears to contain information regarding subcategory (a) of restricted funds – external constraints. But, it does not contain any information regarding subcategory (b) of restricted funds – constraints imposed by constitutional provisions and enabling legislation.

10

include a risk factor related to potential errors in the Restricted Cash Analysis or the impact such errors may have on the feasibility of the Proposed Plan. The Debtors should provide a disclosure in substantially the following form:

> The Restricted Cash Analysis has not been prepared or presented in accordance with Government Accounting Standards Board Statement No. 54. The Debtors have not fully identified either the (a) externally imposed or (b) constitutional or enabling legislation constraints placed on the various funds in the Restricted Cash Analysis. Rather, the Restricted Cash Analysis represents the Debtors' assertion that the funds reflected therein are "restricted." There may be a material risk to the feasibility of the Proposed Plan if some or all of the funds designated as "restricted" are not, in fact, restricted or if funds designated as "unrestricted" are indeed restricted by constitutional provision or enabling legislation.

16. Finally, GASB 54 requires governments to present cash as "committed" in addition to restricted. The Debtors have wholly failed to identify any resources that are committed or assigned.[11] In contrast to restricted resources, committed resources may be redeployed for other purposes with appropriate due process. *Id*. ¶ 11. FGIC understands that a significant portion of the Debtors' resources have been designated committed by existing legislation. The Proposed Disclosure Statement neither identifies any commitments nor discloses whether these commitments will be honored or redeployed. The Proposed Disclosure Statement should be amended to disclose all current commitments and whether those commitments will be honored or redeployed. The Debtors should provide a disclosure in substantially the following form:

> The Restricted Cash Analysis has not been prepared or presented in accordance with GASB 54. The Debtors have not fully identified cash or resources as "committed" or whether such cash or resources which would be classified as "committed" if properly presented in accordance with GASB 54 and PROMESA § 5 (1) and (16), will be honored or redeployed.

---

[11] Committed resources are resources that may only be used for specific purposes pursuant to constraints imposed by formal action of the government's highest level of decision-making authority. GASB 54, ¶ 10.

11

17. Finally, the Proposed Disclosure Statement fails to discuss any risks related to future actions by creditors challenging inter-debtor transfers pursuant to section 407 of PROMESA. Section 407 of PROMESA provides as follows:

> While an Oversight Board for Puerto Rico is in existence, if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property.

PROMESA § 407(a), 48 U.S.C. § 2195(a).

18. As discussed above, the Commonwealth is engaged in Revenue Bond Litigation involving, *inter alia*, the Commonwealth's historic and continued diversion of funds from certain of its instrumentalities. Even if the Commonwealth prevails in the Revenue Bond Litigation, it may still be liable to creditors for the value of the property pursuant to section 407 of PROMESA which provides two separate bases for recovery. First, potential liability exists when property of a territorial instrumentality is transferred in violation of applicable law under which any creditor has a valid lien, pledge, or security interest in property. Second, potential liability exists where a transfer deprives a territorial instrumentality of property in violation of applicable law "assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors." *Id*. The Commonwealth should disclose the magnitude of the diverted funds to date and whether the Proposed Plan would be feasible should a claimant prevail in an action pursuant to section 407 of PROMESA. The Debtors should provide a disclosure in substantially the following form:

> Section 407 of PROMESA permits creditors to pursue claims to recover the value of certain inter-debtor transfers after the expiration of lifting of the stay of PROMESA § 406. From the existence of the Oversight Board to date, the Commonwealth has diverted or retained funds historically transferred pursuant to enabling legislation, resolutions and bond documents to the following instrumentalities in the following amounts:

12

        HTA        $_____

        PRIFA     $_____

        CCDA     $_____

There is a risk that the Debtors may be found liable for the value of these transfers – which occurred both before and after the commencement of the Debtors' Title III cases. The Proposed Plan makes no provision for the satisfaction of any claims which may be established under PROMESA § 407.

    **B.**    **The Disparate Treatment of the FGIC Insured Bonds Makes the Plan Unconfirmable**

19.    Courts in the First Circuit have recognized the well-established practice that courts should not approve a disclosure statement when the proposed plan contains provisions that render it unconfirmable. *In re Felicity Assocs., Inc.,* 197 B.R. 12, 14 (Bankr. D.R.I. 1996) ("It has become standard Chapter 11 practice that 'when an objection raises substantive plan issues that are normally addressed at confirmation, it is proper to consider and rule upon such issues prior to confirmation, where the proposed plan is arguably unconfirmable on its face.'") (quoting *In re Main Road Props., Inc.*, 144 B.R. 217, 219 (Bankr. D.R.I. 1992)); *see also In re Hanish, LLC*, 570 B.R. 4, 12 n.23 (Bankr. D.N.H. 2017) (citing cases and noting that "Courts have discretion to deny approval of a disclosure statement, even if it contains adequate information, if the related chapter 11 plan of reorganization cannot be confirmed."). Here, the Proposed Plan classifies the FGIC Insured Bonds in the same classes as other insured GO Bonds; but, it provides disparate treatment to the FGIC Insured Bonds in violation of section 1123(a)(4) of the Bankruptcy Code. *See* § 1123(a)(4) (requiring a plan to provide the same treatment for each claim of interest in a particular class unless the holder of a particular claim or interest agrees to less favorable

13

treatment).[12] Specifically, the Proposed Plan purports to create a FGIC Trust which would hold the FGIC Insured Bonds, FGIC Insurance Policies, and distributions provided under the Proposed Plan with respect to the FGIC Insured Bonds and which would be funded by the FGIC Trust Assets. Proposed Plan § 71.4.[13] The difference in distribution scheme and the likely reduction to distributions received by the holders of FGIC Insured Bonds as a result of such distributions funding the FGIC Trust all result in disparate treatment for the FGIC Insured Bonds and such disparate treatment renders the Proposed Plan unconfirmable on its face.

20. Nor does section 71.4 of the Proposed Plan providing that the FGIC Trust will only be approved if holders of at least 50.1% of FGIC Insured Bonds agree to its creation render the disparate treatment allowable. Section 1123(a)(4) of the Bankruptcy Code requires that each holder of a claim or interest must agree to the less favorable treatment of their claim. § 1123(a)(4); s*ee also Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*, 748 F.2d 42, 46 (1st Cir. 1984*)* (finding that absent a legal distinction between claims, section 1122(a) of the Bankruptcy Code generally requires that "all creditors of equal rank with claims against the same property [to] be placed in the same class" (internal citations and quotations omitted) and implicitly holding that the debtor could not treat the claim of an objecting creditor differently from other creditors in the same class.). FGIC does not agree to the disparate treatment of its claims. Additionally, as noted above, pursuant to section 301(c)(3) of PROMESA, FGIC holds the right to vote more than 50.1% of the FGIC Insured Bonds and will not be voting in favor of the creation

---

[12] Section 1123(A)(4) of the Bankruptcy Code is incorporated into PROMESA by section 301(a) of PROMESA.

[13] FGIC notes that, in contrast to section 71.4, the definition of FGIC Trust provides that the costs and expenses of the FGIC Trust will be borne by FGIC. Proposed Plan § 1.218. This provision is at best misleading and should be redrafted to comply with section 71.4 of the Proposed Plan. FGIC has not and will not agree to fund the FGIC Trust and it cannot be compelled to do so by the Debtors' Proposed Plan. Alternatively, this provision is further evidence of how the Proposed Plan provides disparate treatment for the FGIC Insured Bonds and, in particular, the GO Bonds held directly by FGIC.

of the FGIC Trust as it is currently formulated in the Proposed Plan. Accordingly, the provisions providing disparate treatment of the FGIC Insured Bonds should be removed from the Proposed Plan, or the Debtors should separately classify the FGIC Insured Bonds and make an appropriate disclosure regarding why such separate classification and disparate treatment is justified. The Debtors should also specify how the FGIC Insured Bonds will receive their distributions absent the creation of the FGIC Trust as the Proposed Plan does not currently contemplate that outcome.

### C. Section 78.1 of the Proposed Plan Should be Clarified

21. The last sentence of section 78.1 of the Proposed Plan provides:

> Notwithstanding anything contained in the Plan to the contrary, on the Effective Date, any Bond Claim filed by any Entity, for amounts due under existing securities, shall be deemed disallowed and expunged and the Oversight Board shall instruct Prime Clerk LLC, its court-appointed representative, to remove such Bond Claims from the claims registry maintained for the benefit of the Title III Court.

Proposed Plan § 78.1. The plain language of such text purports to disallow all Bond Claims on the Effective Date, whether or not such claims were previously allowed and without requiring the Debtors to object to such claims. It also would disqualify all holders of Bond Claims from receiving distributions under the Proposed Plan, which FGIC assumes is not the Debtors' intention. The Debtors should clarify this provision or otherwise explain it in the Proposed Disclosure Statement so that holders of Bond Claims know whether they are eligible to receive distributions under the Proposed Plan or whether the distributions described elsewhere in the Plan are ephemeral.

### CONCLUSION

22. Based upon the foregoing, FGIC requests that the Court enter an order denying approval of the Proposed Disclosure Statement unless the information requested herein is added to the Proposed Disclosure Statement and the Proposed Plan.

15

Dated: June 15, 2021
     San Juan, Puerto Rico
.

Respectfully submitted,

**REXACH & PICÓ, CSP**

By: */s/ María E. Picó*
    María E. Picó
    USDC-PR 123214
    802 Ave. Fernández Juncos
    San Juan PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    E-mail: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*
    Martin A. Sosland (*pro hac vice*)
    2911 Turtle Creek, Suite 1400
    Dallas, TX 75219
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    E-mail: martin.sosland@butlersnow.com

    James E. Bailey III (*pro hac vice*)
    Adam M. Langley (*pro hac vice)*
    6075 Poplar Ave., Suite 500
    Memphis, TN 38119
    Telephone: (901) 680-7347
    Facsimile: (615) 680-7201
    E-mail: jeb.bailey@butlersnow.com
    adam.langley@butlersnow.com

*Attorneys for Financial Guaranty Insurance Company*

16

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify case participants.

Dated: June 15, 2021.

By: */s/ Martin A. Sosland*
     Martin A. Sosland

*Attorney for Financial Guaranty Insurance Company*

**EXHIBIT A**
**FGIC Voting Rights by CUSIP and Amount**

**Public Improvement Bonds of 2003 Series A**
**Policy 02010977**

| Maturity Dates | CUSIP | Principal Amount Insured | Principal Amount Held By FGIC[1] |
|---|---|---|---|
| 7/1/2016 | 745145Q70 | $13,970,000.00 | $6,216,650.00 |
| 7/1/2017 | 745145Q88 | $14,735,000.00 | $6,676,400.00 |
| 7/1/2018 | 745145Q96 | $15,545,000.00 | $7,117,325.00 |
| 7/1/2019 | 745145R20 | $16,400,000.00 | $7,844,675.00 |
| 7/1/2020 | 745145R38 | $17,305,000.00 | $8,308,450.00 |
| 7/1/2021 | 745145R46 | $18,255,000.00 | $10,049,325.00 |
| 7/1/2022 | 745145R53 | $19,260,000.00 | $1,900,000.00 |

**Public Improvement Refunding Bonds, Series 2003A**
**Policy 02011035**

| Maturity Dates | | | |
|---|---|---|---|
| 7/1/2016 | 745145T77 | $13,515,000.00 | $6,044,700.00 |
| 7/1/2017 | 745145T85 | $14,255,000.00 | $6,451,700.00 |

**Public Improvement Bonds of 2006, Series A**
**Policy 06010316**

| Maturity Date | | | |
|---|---|---|---|
| 7/1/2021 | 74514LJU2 | $32,815,000.00 | $32,815,000.00 |

**Public Improvement Refunding Bonds Series 2007 A-1**
**Policy 07010415**

| Maturity Dates | | | |
|---|---|---|---|
| 7/1/2021 | 74514LNF0 | $36,205,000.00 | $36,205,000.00 |
| 7/1/2022 | 74514LNG8 | $36,830,000.00 | $36,830,000.00 |

**Public Improvement Bonds of 2002, Series A**
**Policies 02020067 and 02020079 (A)**

| Maturity Date | | | |
|---|---|---|---|
| 7/1/2031 | 74514LFW2 | $3,985,000.00 | $0.00 |

**Public Improvement Refunding Bonds, Series 2002A**
**Policy 03020060**

| Maturity Date | | | |
|---|---|---|---|
| 7/1/2018 | 7451453N0 | $2,000,000.00 | $984,350.00 |

**Public Improvement Refunding Bonds, Series 2002A**
**Policy 03020072**

| Maturity Date | | | |
|---|---|---|---|
| 7/1/2029 | 7451455N8 | $25,000,000.00 | $215,000.00 |

| **Total FGIC Insured Bonds (Class 18)** | | **$280,075,000.00** | **$167,658,575.00** |
|---|---|---|---|

**Public Buildings Authority, Government Facilities Revenue Refunding Bonds, Series H**

| Maturity Date | | | |
|---|---|---|---|
| 7/1/2016 | 745235TG6 | $2,303,553.55 | $1,028,338.58 |

| **Total FGIC Insured Bonds (Classes 4 and 24)** | | **$2,303,553.55** | **$1,028,338.58** |
|---|---|---|---|

---

[1] Principal amount of bond claims held by FGIC by virtue of ownership or pursuant to section 301(c)(3)(B) of PROMESA.