# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| As representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEE'S RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY, | |
| Debtors. | |

## OBJECTION TO DISCLOSURE STATEMENT AND OR THE PLAN OF ADJUSTMENT AT DKT. NO. 16740 & 16741

Dated:        June 15, 2021

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................. ii

**I.** **SUMMARY OF THE ARGUMENT** ................................................ 1

**II.** **INTRODUCTION** ......................................................................... 4

**III.** **DISCUSSION** ................................................................................ 11

   **A.** **The Commonwealth is constitutionally bound to pay just compensation for taking Suiza's property** ........................................ 11

      **1.** **The Fifth Amendment requires the Commonwealth to pay just compensation** ............................................................... 11

      **2.** **The District Court was very clear in that the regulatory accruual at issue here is the remedy for the regulatory taking.**

      **2.** **Through the Settlement Agreement, the Commonwealth agreed to pay just compensation. Failure to honor the Settlement Agreement would render Suiza inadequately compensated for the property that was taken by ORIL** ............................................................. 13

   **B.** **The payments contemplated in the settlement are non-dischargeable** ... 19

   **C.** **The Disclosure Statement may not be approved if theunderlying Plan of Adjustment is unconfirmable**

   **D.** **The Disclosure Statement incorrectly depicts the debt owed to Suiza in nature and amount**

**IV.** **CONCLUSION** .......................................................................... 25

# TABLE OF AUTHORITIES

## United States Supreme Court

Duquesne Light Co. Barasch, 488 U.S. 299 (1989)…………………………..12, 13

Edmond v. United States, 520 U.S. 651 (1997).......................................................21

First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,

   482 U.S. 304 (1987)....................................................................... 12, 18

Jacobs v. U.S., 290 U.S. 13 (1933)....................................................... 12, 13, 18, 19

Knick v. Township of Scott, 139 S.Ct. 2162 (2019) ............................ 12, 13, 18, 19

Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935).......................20

Palazzolo v. Rhode Island, 533 U.S. 606 (2001).......................................................11

U.S. v. Security Indus. Bank, 459 U.S. 70 (1982)....................................................20

## United States Constitution

Commerce Clause art. 1 § 8………………………………………………. 2, 5

Fifth Amendment; Takings Clause of the Constitution of the

   United States….. 1, 2, 3, 4, 5, 6, 8, 10, 11, 12, 13, 15, 16, 17, 18, 19, 20, 21, 25,

  26

Fourteenth Amendment ............................................................ 2, 5, 12, 13, 14, 16

## United States Circuit Court of Appeals for the First Circuit

Fideicomiso de la Tierra del Caño Martín Peña v. Fortuño, 604 F.3d 7 (1st Cir.

   2010) ........................................................................................................11

Puerto Rico Dairy Farmers Ass'n v. Pagán, 748 F.3d 13 (1st Cir. 2014) ............9, 10

Tenoco Oil Co., Inc. v. Department of Consumer Affairs, 876 F.2d 1013 (1st Cir.
1989) ................................................................................................ 11, 12, 13, 16

Vaquería Tres Monjitas, Inc. v. Pagán, 748 F.3d 21 (1st Cir. 2014)............... 7, 9, 10


**United States Bankruptcy Court for the District of Maryland**

In re CRIIMI MAE, Inc., 251 B.R. 796 (Bankr. D. Md. 2000)…………………...22

In re Robert's Plumbing & Heating, LLC, 2011 Bankr. LEXIS 2879 (Bankr.
D.Md. 2011)…………………………………………………………………………22


**United States Bankruptcy Court for the Eastern District of New York**

In re 266 Wash. Assocs., 141 B.R. 275 (Bankr. E.D.N.Y. 1992)……...…………23


**United States District Court for the District of Puerto Rico**

Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014)……2, 4, 5,
6, 7, 8, 9, 13

Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 472 (1st. Cir. 2009)……...7

Vaquería Tres Monjitas, Inc. v. Laboy, 2007 U.S. Dist. LEXIS 98950 *38 (D.P.R.
2007) ................................................................................................ 6, 7, 12, 17


**United States Bankruptcy Court for the District of Puerto Rico**

In re El Comandante Mgmt. Co., LLC, 2006 Bankr. LEXIS 3820……………… 24

<u>In re El Comandante Mgmt. Co., LLC</u>, 359 B.R. 410 (Bankr D.P.R. 2006)…. 4, 22, 23

**Federal Laws**

11 U.S.C. § 944 ............................................................................... 1, 20, 21, 22

Section 301 of Title III of PROMESA, 48 U.S.C. § 2161 .......................... 20, 22, 24

Section 314 of Title III of PROMESA, 48 U.S.C. § 2174 ……………………1, 22

Title III of PROMESA 48 U.S.C. §§ 2161-2177........................................................1

**Puerto Rico Laws**

Milk Industry Regulation Act, Act No. 34 of June 11, 1957, 5 P.R. Laws Ann. §§ 1092-1125 ...................................................................................................2, 4

**Other Federal Case Law**

<u>In re City of Detroit</u>, 524 B.R. 147 (E.D. MI. 2014) ............................ 20, 21, 23, 25

**Puerto Rico Regulations**

Regulation No. 1 of June 11, 1957 (Milk Regulation No. 1) .................................2, 4

**Federal Rules of Bankruptcy Procedure**

Fed. R. Bankr. P. 3020 ................................................................................................1

**TO THE HONORABLE COURT:**

**COMES NOW** creditor Suiza Dairy Corp. ("Suiza"), through the undersigned counsel and, pursuant to Fed. R. Bankr. P. 3020, presents its objection to the Disclosure Statement ("DS") proposed by the Financial Oversight and Management Board of Puerto Rico and the Plan of Adjustment proposed concurrently (the "Plan"), filed on May 11, 2021 at Docket No. 16,741. The DS as filed, is in contravention of the Takings Clause of the Constitution of the United States in regards to Suiza's claim against the Commonwealth, inasmuch as it impermissibly and unlawfully classifies and treats Suiza's claim  on account of a federal takings determination as subject to discharge under the Plan provisions. On those grounds, the Plan is unconfirmable under 11 U.S.C. §944 as incorporated by Title III of PROMESA 48 U.S.C. §§ 2161-2177and §314(3) of Title III of PROMESA, 48 U.S.C. §2174, which requires that any plan of adjustment not be proposed in contravention of any law. Since the Plan, as proposed is unconfirmable, the DS is deficient and may not be approved. Since the Plan, as proposed is unconfirmable, the DS is deficient and may not be approved.  In support of its allegations, Suiza most respectfully states, alleges and prays as follows:

**I.    SUMMARY OF THE ARGUMENT**

This objection to the approval of the Disclosure Statement which presents the Commonwealth's Plan of Adjustment seeks a finding that Suiza's regulatory accrual

claims owed by the Commonwealth, through "any of its instrumentalities", are non-dischargeable and unimpaired by the filing of this Title III proceeding, since they involve judicially adjudicated violations of Suiza's constitutional rights. Suiza successfully challenged the constitutionality, as implemented, of the laws and regulations that govern the milk industry in Puerto Rico, particularly the Milk Industry Regulation Act, Act No. 34 of June 11, 1957, 5 P.R. Laws Ann. §§ 1092-1125 (Act 34) and Regulation No. 1 of June 11, 1957 (Milk Regulation No. 1) as subsequently amended, under the Takings Clause of the Constitution of the United States. Suiza sought declaratory and injunctive relief before the United States District Court for the District of Puerto Rico Civil Case No. 04-01840 (DRD) Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014). On July 13, 2007 (Dkt. No. 480[1]) the district court entered its Amended Opinion and Order Granting Preliminary Injunction and in which the District Court found violations by the Commonwealth to the Takings Clause, the Dormant Commerce Clause, the Due Process Clause and the Equal Protection Clause of the Constitution of the United States. In essence, the District Court held that the Commonwealth, through one of its instrumentalities, effected a regulatory taking from Suiza. Part of the remedy granted in favor of Suiza is what is called "regulatory accrual" which consists of an

---

[1] _See,_ Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  See also, Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014).

amount to be added to the regulatory rate to be recovered prospectively to compensate a previous regulatory taking. On September 23, 2013 (Dkt. No. 2289) the District Court entered its Amended Opinion and Order *Nunc Pro Tunc*, addressing certain regulatory accrual issues. *Exhibit 2*.

On October 29, 2013 (Dkt. No. 2322), the parties to the action filed their Final Settlement Agreement And Memorandum Of Understanding Between The Parties (the "Settlement Agreement"). The Settlement Agreement incorporated a detailed mechanism for the Commonwealth of Puerto Rico to monitor the level of regulatory accrual in favor of Suiza Dairy, as well as the methodology used for its calculation in compliance with the July 13, 2007 Amended Opinion and Order Granting Preliminary Injunction. Pursuant to par. 11 of the settlement incorporated into the judgment ("Judgment"), the Commonwealth agreed to pay part of the regulatory accrual in installments directly from Commonwealth funds. The amount owed Suiza by the government was supposed to be paid by December 31, 2017. It was not.

The Plan, included as part of the DS, classifies Suiza as part of Class 50 and proposes to pay only fifty-percent (50%) of the debt owed to Suiza by the Commonwealth for violation of the Takings Clause of the Constitution. In light of the above, the Plan as proposed by the Commonwealth on May 11th, 2021, cannot be confirmed by the Court unless it is amended to pay the claim in full and/or to

classify Suiza's claim as a non-dischargeable claim surviving these proceedings to be paid by the Commonwealth as required by law.

It is well settled law that a DS that proposes a clearly unconfirmable plan of reorganization should not be approved.[2]  Such is the case before us; thus, the DS may not be approved.

In addition, the DS fails to properly inform creditors as to the correct nature of Suiza's claim, a regulatory takings claim, and improperly states the amount owed to Suiza.

## II.   INTRODUCTION

As provided by Puerto Rico law,[3] the Office of the Milk Industry Regulatory Administration[4] ("ORIL" by its Spanish acronym) regulates the price of milk at all levels within Puerto Rico.[5] Thus, milk prices are not set by each individual market participant, but rather mandated by ORIL.

However, these prices were not always rational. Before 2013, ORIL was not implementing a rational, non-discriminatory price regulatory system. Instead, ORIL's regulations and practices favored some market participants while burdening

---

[2] In re El Comandante Mgmt. Co., LLC, 359 B.R. 410, 414 (Bankr. D.P.R. 2006).
[3] Act 34 of June 11, 1957 as amended, P.R. Las Ann. Tit. 5 § § 1092-1118. *See,* Dkt. 480 Finding of Fact ("FF") ¶ 11 - Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.
[4] An instrumentality of the Government of Puerto Rico.
[5] Dkt. 480 FF ¶ 1- Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.

others, to the point of effectively taking their property.[6] Therefore, on August 13, 2004, Suiza and Vaquería Tres Monjitas, Inc. ("Vaquería"), the fresh milk processing plants of Puerto Rico (together the "Plants"), jointly filed a complaint[7] challenging ORIL's unconstitutional regulatory taking of their property.

Under the Takings Clause of the United States Constitution, the Plants' complaint challenged the constitutionality of the implementation of Puerto Rico's laws and regulations that governed the milk industry.[8] The complaint identified a multitude of ways in which the actions and regulatory policies of ORIL had created a scenario in which the Plants, the only fresh milk processing plants in Puerto Rico,[9] were denied the opportunity to cover their costs and much less earn a reasonable profit.[10] For example, operating costs, such as fuel, electricity, and resin costs, had experienced significant increases, while sales volumes decreased without these realities being addressed in the rates.[11] These increases in costs were not met by a corresponding increase in the price of fresh milk during price reviews due to ORIL's

---

[6] Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014)

[7] Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014).

[8] The Plants' complaint also alleged that ORIL's regulatory structure violated their Fourteenth Amendment due process and equal protection rights and the dormant Commerce Clause, amongst others, and constituted a regulatory taking under the Constitution.

[9] Dkt. 480 FF ¶ 9 - Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.

[10] For example, the Plants were forced to pay an excessively high price to dairy farmers for the raw milk they purchased in order to subsidize the much lower price, insufficient to cover the farmers' production costs, paid by a Government-owned milk processing plant, Indulac. Id., FF ¶ 18.

[11] Dkt. 480 FF ¶¶ 41-42 - Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.

use of stale figures, disallowance of legitimate costs, and application of a rate of return which had no scientific basis.[12]

Also, ORIL's mandated price discrimination created a competitive advantage for Indulac,[13] allowing it to sell UHT products at a reduced price due to its subsidized costs. As an imperfect substitute to fresh milk,[14] Indulac's UHT products were able to secure market share in the fluid milk market at the expense of Suiza and Vaquería which they would not have been able to achieve at non-discriminatory prices.

The increase in costs borne by the Plants, paired with an inadequate price of fresh milk meant that the Plants' margins were reduced to the point that they had no way to recover their costs and earn a reasonable profit.[15] Thus, ***ORIL's regulatory scheme, which precluded the Plants from making a reasonable profit in their milk business, constituted a taking of property in violation of the Takings Claus***e.[16]

Pursuant to these claims, the Plants moved for a preliminary injunction to preclude ORIL from continuing to implement the complained-of regulatory practices and orders. After conducting 51 intensive evidentiary hearings over the course of a year and a half, on July 13, 2007, the District Court granted the

---

[12] Id., FF ¶¶ 43-51 - Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.

[13] A government-owned milk processing plant.

[14] Dkt. 480 FF ¶ 7 - Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.

[15] Vaquería Tres Monjitas, Inc. v. Laboy, 2007 U.S. Dist. LEXIS 98950 *38 (D.P.R. 2007).

[16] Id. *See* U.S. Const. amend. V. ("[…] nor shall private property be taken for public use, without just compensation.")

preliminary injunction,[17] ordering that: (1) all milk processors pay the same amount for raw milk; (2) ORIL develop and implement rational, non-discriminatory parameters for price regulation; and (3) ORIL adopt a temporary mechanism to allow the Plants to recover a fair rate of return **from the year 2003** until the implementation of the new regulatory regime.[18] The mechanism to recover a fair rate of return contemplated in point no. 3 is known as "**regulatory accrual**".[19] It is a prospective recovery of the amounts of the regulatory taking that occurred during the period in question. "The regulatory accrual [is a] mechanism designed to allow the [Plants] to recoup a fair rate of return on their products."[20]

In its amended opinion and order granting the preliminary injunction on July 13, 2007 the court spelled out the way in which the government was executing a regulatory taking of the plants property without due compensation and made it clear that the regulatory accrual was the adequate remedy for that constitutional violation.[21]

To effectuate the regulatory accrual, the District Court mandated the parties' economic experts to meet, and they agreed on implementing a mechanism to remedy

---

[17] The Preliminary Injunction granted by the District Court was challenged before the United States Court of Appeals for the First Circuit, which upheld the injunction. Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464 (1ˢᵗ Cir. 2009) reh'g en banc denied, 600 F.3d 1 (1st Cir.2010), cert. denied, 563 U.S. 1001 (2011).

[18] Vaquería Tres Monjitas, Inc. v. Laboy, *supra*, *48.

[19] Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 472 (1st. Cir. 2009).

[20] Vaquería Tres Monjitas, Inc. v. Pagán, 748 F.3d 21, 23 (1ˢᵗ Cir. 2014).

[21] See Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007; *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.

the losses incurred by the Plants and the calculation of the return on equity necessary for the implementation of the nondiscriminatory, rational, and scientific regulatory standards ordered by the Court.[22] The regulatory accrual would be implemented by ORIL as a per quart charge added to the retail price of all fluid milk to be collected and remitted to the Plants for recovery of the regulatory taking they experienced.[23]

Despite the clear obligations set forth in the Preliminary Injunction, for more than 6 years (between 2007 and 2013) ORIL insisted on implementing unjust and discriminatory measures which continued the illegal taking of the Plants' property. Crucially, the District Court found that ORIL and its expert had "refused for years … to accept the inclusion of the regulatory accrual as one of the factors within the formula leading to compensation."[24] The continued noncompliance by ORIL culminated in a finding of contempt wherein "[t]he Court undoubtedly, without any hesitation whatsoever, conclude[d] that Defendant ORIL, all the administrators holding office as executives at ORIL, and the expert Dr. Ronald W. Cotterill, have incurred in serious, blatant, and continued violations to the [Preliminary

---

[22] Dkt. 1003 of Civil Case No. 3:04-cv-1840-DRD; Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014).

[23] While ORIL is responsible for facilitating the takings, which have cause damage to the Plants, it was ultimately the fluid milk consumers of Puerto Rico who enjoyed the low prices of milk and reaped the benefits of the illegal takings.

[24] Exhibit 2 - Dkt. 2289 p. 66 of Civil Case No. 3:04-cv-1840-DRD; Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014)

Injunction]."[25] Consequently, the Court set a date for the contempt hearing to be held on October 31, 2013.[26]

Faced with the reality of a contempt hearing, the Government of Puerto Rico began negotiations with Suiza to resolve the issue of the government caused uncompensated losses suffered by the Plants.[27]

On October 29, 2013, the parties reached an agreement ("Settlement Agreement")[28] which was approved and adopted by the District Court as an Order and Judgment, dated November 6, 2013.[29] The stipulations set forth in the Settlement Agreement were to be "equally binding an enforceable against all signatories of this [Settlement] Agreement and the Government of Puerto Rico."[30] In its pertinent part, the Settlement Agreement provided for the Government "to contribute funds over four years to [the Plants] ***as part of a regulatory accrual mechanism*** designed to allow the [Plants] to recoup a fair rate of return on their products."[31] *[Emphasis added].* In particular, the Government and the Plants "settled and agreed that the total amount of principal of regulatory accrual due to [the Plants] as of November 6,

---

[25] Id., p. 82. *See also* Puerto Rico Dairy Farmers Ass'n v. Pagán, 748 F.3d 13, 17 (1st Cir. 2014).

[26] Puerto Rico Dairy Farmers Ass'n v. Pagán, *supra*, 17 ("In a footnote [in the Order scheduling the contempt hearing], the court strongly recommended that the parties utilize the time [before] the Permanent Injunction Hearing to reach an extrajudicial resolution.")

[27] These negotiations were to determine how best to recover the property unwillingly taken from the Plants by the government for the benefit of the consumers, without excessively burdening the same with sudden milk price hikes.

[28] *See* Final Settlement Agreement and Memorandum of Understanding Between the Parties ("Settlement Agreement"), which is Dkt. 2322 of Civil Case No. 3:04-cv-1840-DRD; Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014).

[29] Dkt. 2351 of Civil Case No. 04-1840-DRD; Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014).

[30] Settlement Agreement p. 5.

[31] Vaquería Tres Monjitas, Inc. v. Pagán, 748 F.3d 21, 23 (1st Cir. 2014).

2013 is $170,639,638, of which $123,289,024 belongs to Suiza".[32] The Government also agreed to pay $95,000,000 before December 31, 2017, to be credited as part of the regulatory accrual.[33] The Judgment adopting the Settlement Agreement was challenged and affirmed, and became firm and final.[34] Thus, the Government became a Takings Clause debtor.

However, to date, the Government has only paid $33,000,000 of the promised $95,000,000 to the Plants.[35] The Government still owes the Plants $62,000,000, of which $45,325,151.22 belongs to Suiza.[36]

---

[32] Settlement Agreement p. 3.

[33] Id., pp. 4-5. *See also* Exhibit 2 of the Settlement Agreement which shows that the Government's payment would substitute the regulatory accrual charge that was applied to the price of milk until December 31, 2016. Once the Government's $95,000,000 payment was completed, then the regulatory accrual would again be borne directly by the consumer, starting on January 1, 2017.

[34] Vaquería Tres Monjitas, Inc. v. Pagán, *supra*; and Puerto Rico Dairy Farmers Ass'n v. Pagán, *supra*.

[35] *Exhibit 1 – Sworn Statement from Leonardo Giacchino.*

[36] See Exhibit 1 - Correction of Mathematical Mistake & Exhibit attached to Unsworn Statement from Leonardo Giacchino.

## III.   DISCUSSION

### A.   The Commonwealth is constitutionally bound to pay just compensation for taking Suiza's property

#### 1.   The Fifth Amendment requires the Commonwealth to pay just compensation

The Takings Clause of the Fifth Amendment mandates that "private property [shall not] be taken for public use, without just compensation."[37] This amendment is applicable to the Commonwealth of Puerto Rico.[38]

While it is clear that a taking has occurred when the government takes or occupies private land for its own use, the Supreme Court has also recognized that other government actions which affect or limit the use of private property constitute a taking.[39] These affectations or limitations imposed upon private property are known as "regulatory takings".[40]

In the case at hand, the Court found that through a regulatory taking, the Plants' property had been taken by ORIL for public use without just compensation. "[T]he current milk price scheme clearly represents a taking of property of the

---

[37] U.S. Const. amend. V.
[38] *See* Tenoco Oil Co., Inc. v. Department of Consumer Affairs, 876 F.2d 1013, 1017 n. 9 (1st Cir. 1989). *See also* J. Torruella concurring opinion in Fideicomiso de la Tierra del Caño Martín Peña v. Fortuño, 604 F.3d 7, 20 n. 11 (1st Cir. 2010).
[39] Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001).
[40] Id.

[Plants] by not allowing them to recover their true costs and the allowance of a fair profit."[41]

The United States Supreme Court has explained that "a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it."[42]  Moreover, the right to a just compensation is self-executing.[43]

> […] **Because of the self-executing character of the Takings Clause with respect to compensation**, a property owner has a constitutional claim for just compensation at the time of the taking. The government's post taking actions […] cannot nullify the property owner's existing Fifth Amendment right: **Where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation**.[44]

That is, the right to a just compensation is not merely a right that is enjoyed by the person whose property was taken, but a constitutional obligation to pay.[45] "[T]he [Supreme] Court has frequently repeated the view that, in the event of a taking, the compensation remedy is required by the Constitution."[46]

---

[41] <u>Vaquería Tres Monjitas, Inc. v. Laboy</u>, 2007 U.S. Dist. LEXIS 98950 *38 (D.P.R. 2007) (The Court repeatedly held that the actions of the Commonwealth amounted to a taking: "The court finds, as more fully described *infra*, violations of Due Process, Equal Protection and the Takings Clause, a pattern of lack of standards, change in standards with unfettered discretion, use of stale figures, and lack of an appropriate standard as to fair rate of return in the regulations set by the regulator all pointing to a ***taking*** "pursuant" to <u>Duquesne Light Co.</u>, 488 U.S. at 307; <u>Tenoco Oil</u>, 826 F.2d at 1026-1027." "The court finds that said criteria has been reached since the two processing plants are losing market and have suffered for the periods from 2003 to 2007 a Due Process and Equal Protection violation reaching levels of a "***taking***."") [Emphasis added.]

[42] <u>Knick v. Township of Scott</u>, 588 U.S. ___; 139 S.Ct. 2162, 2167 (2019).

[43] <u>Id.</u>, 2171.

[44] <u>Id.</u>, (emphasis ours) (internal quotations omitted) quoting <u>First English Evangelical Lutheran Church of Glendale v. County of Los Angeles</u>, 482 U.S. 304, 321 (1987).

[45] <u>Jacobs v. U.S.</u>, 290 U.S. 13, 16 (1933).

[46] <u>First English Evangelical Lutheran Church of Glendale v. County of Los Angeles</u>, *supra*, 316.

The constitutionally valid remedy is just compensation; that is, the amount recovered by the property owner must be just.[47] An inadequate compensation will not suffice.[48] Once the Government pays just compensation the unconstitutional taking is remedied. However, the payment of just compensation does not mean that the violation did not take place.[49] "The violation is the only reason compensation was owed in the first place."[50]

> 2.   **The District Court was very clear in that the regulatory accrual at issue here is the remedy for the regulatory taking.**

In its Amended Opinion and Order granting the Preliminary Injunction on July 13, 2007, the Court found "violations of Due Process, Equal Protection and the Takings Clause, a pattern of lack of standards, change in standards with unfettered discretion, use of stale figures, and lack of an appropriate standard as to fair rate of return in the regulations set by the regulator all pointing to a taking 'pursuant' to _Duquesne Light Co._, 488 U.S. at 307; _Tenoco Oil_, 826 F.2d at 1026-1027."[51] Specifically, the Court found that "In sum, the current milk price scheme clearly represents a taking of property for the milk processors by not allowing them to recover their true costs and the allowance of a fair profit.  The current situation of

---

[47] Jacobs v. U.S., _supra_, 16.

[48] Id.

[49] Knick v. Township of Scott, _supra_, 2172 ("A later payment of compensation may remedy the constitutional violation that occurred at the time of the taking, but that does not mean the violation never took place.")

[50] Id.

[51] See, Dkt. 480, p.91 – Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  _See also_, Vaquería Tres Monjitas, Inc. v. Comas, _supra_.

the milk price scheme is responsible for the dire financial situation of plaintiffs today."[52]

The Court further elaborated: "the two processing plants are losing market and have suffered for the periods from 2003 to 2007 a Due Process and Equal Protection violation reaching levels of a "taking."  The record is abundant as to the continuous violations for said period, including a methodology deficiency in parameters and unlimited discretion of the Administrator in changing, adding, subtracting, from year to year, parameters.  Further, there is no system for a regulatory accrual to recuperate interim losses that occur from year to year, yet a stale system to determine "fair rate of return" is in place.  These deficiencies point to permanent loss in market and long-standing violations of constitutional rights for extensive protracted periods of time."[53]

The Preliminary Injunction established that: 1) all market participants using raw milk to process fluid milk shall pay the same amount for the milk; 2) in a period of no more than 30 days, the Administrator will put in effect non-discriminatory, rational, and scientific regulatory standards to determine costs and reasonable returns for all participants in the regulated market in Puerto Rico; and 3) the Administrator must establish a mechanism to provide mitigation to the fresh milk

---

[52] *Ibid*, p. 77.
[53] *Ibid*, p. 91.

plants for their losses of regulatory accrual.[54]  Specifically, the Court ordered ORIL to "adopt a temporary mechanism that will allow the processors to recover the new rate of return they are entitled to…through regulatory accruals, special temporary rates of return ***or any other available mechanism of his choosing***."[55] [Emphasis added]

The regulatory accrual asset of the processing plants represents the amount of the accumulated losses and lost profits resulting from the illegal takings facilitated by ORIL.  The regulatory accrual is a regulatory asset for the Plants, representing a receivables account.  It is also part of the Plants' basis to calculate regulated prices, for which the Plants can earn a return on that asset.  Regulatory assets such as the regulatory accrual are commonly used in regulated industries in a variety of circumstances including compensation for losses incurred as a result of regulatory actions.  Such a regulatory asset rebuilds a regulated company's capital by amortizing the losses incurred, including allowed profit, over time.[56]

In the Preliminary Injunction, the Court endorses the regulatory accrual mechanism: "the regulatory system of ORIL has created for the fresh milk processors yearly losses that have consistently diminished their capital base.  The normal regulatory way of dealing with this issue is by creating a capital account of

---

[54]  *Ibid*, p. 94.
[55]  *Ibid*, pp. 94-95.
[56]  Leonardo Giacchino, Ph.D., and Jonathan Lesser, Ph.D., *Fundamentals of Energy Regulation*, Third Edition, Public Utilities Reports, Inc., 2019, pp. 163-165.

"regulatory accrual" that would add to the capital base the erosion experienced

because of this regulatory system."[57]

On January 3, 2011, at Dkt. No. 1804, p2 the Court again summarized the

specific actions by ORIL that led to the unconstitutional taking of property:

> "The District Court found due process and equal protection violations as to
> the establishment by the Administrator of a reasonable rate of return charged
> by the milk processors to the public through an infirm process, reaching a
> level of a "taking." "We think, therefore, that the issue of inadequacy of the
> rates here is best addressed under the Takings Clause." _Tenoco Oil_, 876 F.2d
> at 1022.  The court shall not once again enumerate all the factors which lead
> to its conclusion. Amongst others, however, the Court found lack of
> parameters being used, changes in parameters without any reasoning,
> elimination of parameters without notice, lack of equal treatment in the
> application of parameters, the application of new parameters at a whim, the
> sudden elimination of traditional parameters and the reiterated use of stale
> outdated parameters."

See also, the pricing language as it relates to taking at p. 2-3. _Id_. The Court

opined that the price for raw milk determined by ORIL was "one of the most severe

constitutional deficiencies established by the predecessor Administrator":

> "Further, the raw milk price constituted a "taking" banned by the United
> States Constitution. _Vaquería Tres Monjitas_, 587 F.3d at 484… Hence, the
> price of raw milk paid by the milk processors did not constitute a mitigating
> measure of risk but on the contrary, constituted an aggravating factor.  It is
> the Court's opinion that the price of milk paid by the milk processors was
> precisely one of the most severe constitutional deficiencies established by the
> predecessor Administrator" (pp. 26-27).

---

[57]   Preliminary Injunction, pp. 37-38.

In the *Amended Opinion and Order Nunc Pro Tunc* of September 23, 2013 the Court makes a finding that the takings remedies of the 2007 preliminary injunction had not been implemented. *See, Exhibit 2* - Dkt. No. 2289.  The Court says "[t]he reality is that the Court still has … an Injunction Order that hast not been fully complied with by the defendants."   *Id*, at p. 10.

> **3.    Through the Settlement Agreement, the Commonwealth agreed to pay just compensation. Failure to honor the Settlement Agreement would render Suiza inadequately compensated for the property that was taken by ORIL, thus infringing the Constitution.**

It is unquestionable that through ORIL's regulations and practices, the Government took, for the benefit of the public, the Plants' property without paying for it.[58] That is, ORIL effectuated a regulatory taking.

As indicated before, in response to the claims presented by the Plants and the Courts' decisions recognizing the existence of an unconstitutional taking, the Government of Puerto Rico decided to settle the claims becoming a Takings Clause debtor and promised to pay the Plants $95,000,000 towards the total amount of the remedy, preventing for several years an increase in the price of milk.[59] The rest of the regulatory accrual was to be paid by the consumer by order of ORIL as part of

---

[58] *Vaquería Tres Monjitas, Inc. v. Laboy*, *supra*, at 38.

[59] In its pertinent part, the Settlement Agreement provided for the Government "***to contribute funds*** over four years to [the Plants] ***as part of a regulatory accrual mechanism*** designed to allow the [Plants] to recoup a fair rate of return on their products." Vaquería Tres Monjitas, Inc. v. Pagán, *supra* at 23.

the Judgment, in the price of milk beginning in January 2017. Said settlement and the promise to pay was not necessary, because "[s]uch a promise was implied because of the duty to pay imposed by the [Fifth A]mendment." *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 315 (1987) That is the self-executing nature of the compensation owed. Nevertheless, through the Settlement Agreement, a mechanism was established to provide the plants with just compensation to remedy the taking they suffered. Therefore, the Plants could dismiss with prejudice their claims. *See, Knick v. Township of Scott*, 139 S.Ct. 2162, 2173 (2019) ("Certainly it is correct that a fully compensated plaintiff has no further claim, but that is because the taking has been remedied by compensation, not because there was no taking in the first place.").

In *Jacobs v. U.S.*, a suit was brought by the property owners demanding just compensation for property taken by the United States for public use.[60] In that case, the Supreme Court explained that "[t]he fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim."[61] Moreover, the Court indicated that:

> [...] The form of the remedy did not qualify the right. It rested upon the Fifth Amendment. Statutory recognition was not necessary. A promise to pay was not necessary, such a promise was implied because

---

[60] Jacobs v. U.S., *supra*, 16.

[61] Id.

of the duty to pay imposed by the amendment. The suits were thus founded upon the Constitution of the United States. […][62]

Just like in _Jacobs v. U.S._, in the case at hand an agreement through which the Government recognized the duty to provide just compensation to the Plants was not necessary. Moreover, a promise to pay was not necessary either, as it is a duty implied within the Fifth Amendment. "The Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner."[63]  That is, the nature of the debt recognized by the Government, identified as a partial payment of the regulatory accrual, has always been part of the just compensation owed to the Plants. "The violation [of the Fifth Amendment] is the only reason compensation was owed in the first place."[64] Due to the self-executing character of the Takings Clause with respect to just compensation, the fact that the parties reached an agreement does not change the nature of the debt.

### B.   The payments contemplated in the settlement are non-dischargeable.

As currently proposed, the Commonwealth's Plan fails to pay in full the unpaid portion of the monies owed to the Plants by the government pursuant to the Judgment and fails to classify that debt as "non-dischargeable". Therefore, those

---

[62] Id., citing references omitted.

[63] Knick v. Township of Scott, _supra_, 2170.

[64] Id., 2172.

claims appear only as general unsecured claims against the Commonwealth, subject to discharge under 11 U.S.C § 944(b) as incorporated by Section 301 of Title III of PROMESA, 48 U.S.C. § 2161.

As a consequence, the Commonwealth's Plan results in an illegal taking, in violation of the Fifth Amendment. That is, it runs contrary to the Constitution, applicable law and case law as it pertains to Suiza's non-dischargeable Takings Clause claim.

The Supreme Court has consistently held that bankruptcy laws are subject to the Constitution, and thus to the prohibition against the government's taking of property without just compensation. "The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment."[65]

In re City of Detroit addressed, among other matters, a nearly identical instance in which some creditors were claiming that their credit could not be discharged because its origin was a takings claim filed against the bankrupt city. After indicating that "the specific issue of whether a municipal debtor in a chapter 9 bankruptcy case may impair a creditor's claim for just compensation under the Fifth Amendment is one of first impression",[66] the court held that bankruptcy proceedings

---

[65] Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589 (1935). *See also* U.S. v. Security Indus. Bank, 459 U.S. 70, 75 (1982) ("The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation.")

[66] In re City of Detroit, 524 B.R. 147, 268 (E.D. MI. 2014).

are subject to said amendment.[67] The court reasoned that "[i]f confirmed, th[e] plan would deny just compensation [allowing] the City to impair the property owners' constitutional claim for just compensation after the City took their private property."[68] Thus, as was proposed, the  confirmation of the City's Plan would violate the Fifth Amendment.[69]

To avoid such constitutional violation, the Court in In re City of Detroit exercised its authority pursuant to Section 944(c)(1) of the Bankruptcy Code and excepted the payments pursuant to the Takings Clause from discharge, upon confirmation of the plan.[70]

Through the proposed Plan, Suiza would not receive the monies which the parties deemed to be just compensation for the property that was taken through ORIL's practices and regulations. In fact, the proposed Plan would leave Suiza with an inadequate compensation from the Commonwealth, in violation of the requirements of the Fifth Amendment.

Therefore, since the Constitution requires that the remedy be a just compensation and the Plan infringes upon the just compensation owed to Suiza, the

---

[67] Id., 269.

[68] Id., 270.

[69] Id.

[70] Id., quoting Edmond v. United States, 520 U.S. 651, 658 (1997) ("Courts should avoid 'interpreting [a statute] in a manner that would render it clearly unconstitutional … if there is another reasonable interpretation available.'")

regulatory accrual portion of the debt payable by the government contemplated in the Settlement Agreement cannot be discharged.

As such, the Plan is unconfirmable under §314(3) of PROMESA which requires that any action proposed by a plan is not prohibited by law.[71]

In the alternative, pursuant to §944(c)(1) of the Bankruptcy Code, 11 U.S.C. § 944 (c)(1), made applicable to this proceeding pursuant to §301(a) of PROMESA[72], this Honorable Court should except the regulatory accrual payments constituting Suiza's claim from discharge.

### C.   The Disclosure Statement may not be approved if the underlying Plan of Adjustment is unconfirmable.

It is well settled law that a disclosure statement that proposes a clearly unconfirmable plan can and should be denied approval. In re El Comandante Mgmt. Co., LLC, 359 B.R. 410, 414 (Bankr. D.P.R. 2006), ("The court may disapprove a disclosure statement that contains adequate information, when the proposed plan "cannot possibly be confirmed". *Citing,* In re CRIIMI MAE, Inc., 251 B.R. 796, 799 (Bankr. D.Md. 2000)"). "The Court will not approve a disclosure statement when it describes a fatally flawed plan, incapable of confirmation. To do so would be an exercise in futility. As RPH's plan fits that description the Amended RPH Disclosure Statement must be rejected as *prima facie* inadequate." In re Robert's

---

[71] 48 USC § 2174.
[72] 48 U.S.C.A. §2161

Plumbing & Heating, LLC, Nos., 2011 Bankr. LEXIS (*citing*, In re 266 Washington

Assocs., 141 B.R. 275, 288 (Bankr. E.D. N.Y. 1992)).  "Relevant issues pertaining

to the plan are classification of claims, an artificial classification of a claim, whether

the plan unfairly discriminates against a class of claims, and the solicitation

procedure." In re El Comandante Mgmt. Co., LLC, *supra* at 415.

As abundantly stated above, the treatment provided for Class 50 violates

Suiza's constitutional rights to just compensation for the regulatory taking effected

by the Commonwealth.  As such, it is not confirmable.  In re City of Detroit, *supra*.

Since the Plan is not confirmable, the Court should not approve the Disclosure

Statement.

### D.     The Disclosure Statement incorrectly depicts the debt owed to Suiza in nature and amount.

The DS filed by the Commonwealth classifies Suiza's debt as part of Class

50.  Class 50 is described as follows:

> **Classification**: Class 50 consists of claims of Suiza Dairy, Inc.
> and Vaqueria Tres Monjitas, Inc. arising from and relating to the Dairy
> Producer Settlement, which as of the Effective Date, will be (a) allowed
> in the aggregate amount of $61,999,999.00, and (b) allocated to Suiza
> Dairy, Inc. and Vaquería Tres Monjitas, Inc. in the amounts of
> $44,832,199.28 and $17,167,799.92, respectively.
>
> **Treatment**: On the Effective Date, each holder of a Dairy
> Producer Claim will receive, in full consideration, satisfaction, release
> and exchange of such holders' Allowed Dairy Producer Claim, an
> amount equal to 50% of such Allowed Dairy Producer Claim, with such
> amount being payable by the Commonwealth in five (5) equal

installments commencing on the Effective Date and each subsequent payment thereof being made on July 1 of each FY.

**Voting**: Class 50 is Impaired by the Plan. Class 50 and each holder of an Allowed Dairy Producer Claim are entitled to vote to accept or reject the Plan.

**Allowed Amount of Claims**: $61,999,999.00

**Projected Recovery from CW**: 50%

Section 1125(a) of the Bankruptcy Code, made applicable to these proceedings pursuant to §301(a) of PROMESA[73], governs the content of the disclosure statement. 11 U.S.C. 1125(a).   Section 1125(a) requires that the information must be adequate. For the purposes of the DS, §1125(a)(1) defines adequate information as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable [a creditor] of the relevant class to make a judgment about the plan." 11 U.S.C. §1125(a)(1); s*ee also*, In re El Comandante Mgmt. Co., LLC, 2006 Bankr. LEXIS 3820.  "[T] the court will determine the adequacy of the information contained in a disclosure statement on a case-by-case [basis]". *Id*.

The description of the Class is misleading, since it does not state that the claim is actually for the settlement of a regulatory taking.  The description as it is included in the Disclosure Statement does not adequately inform creditors of the true nature

---

[73] 48 USC 2161.

of the claim nor that it is non-dischargeable as a violation of the Takings Clause of the Constitution.  In re: City of Detroit, *supra*.

 Finally, the DS and Plan state that the current debt owed to Suiza is $44,832,199.28, while the correct amount of the debt is $45,325,151.22.

For the above stated, the DS does not provide adequate, sufficient and correct information regarding Class 50 and Suiza's claim in particular.  As such the DS should not be approved for failing to provide adequate information as required by §1125(a).

## IV. CONCLUSION

Through ORIL's practices and regulations, the Government took Suiza's property for public use without paying just compensation. Such actions are contrary to the Fifth Amendment.

To correct said Fifth Amendment violation, the Plants filed a complaint against the Commonwealth, demanding just compensation. After establishing that their property had in fact been taken for public use without just compensation, the Plants obtained injunctive relief, which provided, among other things, a regulatory accrual. That is, the Plants won a Court mandate to receive just compensation for their property.

After the Government was found to be in contempt of Court, the Government and the Plants reached a Settlement Agreement, which was adopted by the Court as

a judgment, to effectuate how the Plants would receive their just compensation, pursuant to the Fifth Amendment. As part of that just compensation, the Commonwealth agreed to pay the Plants $95,000,000.  The Commonwealth still owes the Plants $62,000,000, of which $45,325,151.22 is owed to Suiza.[74]

The Plan, as proposed, contemplates the discharge of the just compensation owed to Suiza. Such action would be unconstitutional, as it would permit the Government to take the Plants' property without having to pay just compensation. Therefore, since the Constitution requires that the remedy be a just compensation and the Plan infringes upon the just compensation owed to Suiza, the regulatory accrual contemplated in the Settlement Agreement cannot be discharged.  As such, the Plan is unconfirmable.

Moreover, the DS mischaracterizes the nature and amount of Suiza's claim. Thus failing to provide adequate information to creditors.

A disclosure statement that proposes a plan that is not confirmable or that does not provide adequate information should not be approved.

**WHEREFORE**, Suiza most respectfully prays that the court DENY approval of the Disclosure Statement as filed, absent an amendment to the same by the Commonwealth classifying Suiza's claim as a non-dischargeable claim subject to a 100% distribution under the Plan, and surviving these proceedings.

---

[74] See, Exhibit 1 – Unsworn Statement from Leonardo Giacchino, p. 4-5.

## NOTICE

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this motion has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, this motion will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that this motion was electronically filed with the Court using the CM/ECF system which will notify the filing by electronic means to all parties of record.

By: /s/ *Rafael A. Gonzalez Valiente*
USDC NO. 225209
Counsel for Suiza Dairy
Godreau & Gonzalez Law, LLC
PO Box 9024176
San Juan, PR  00902-4176
Telephone:  787-726-0077
*rgv@g-glawpr.com*