UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

RE:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO
RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO,

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**OBJECTION TO THE THIRD  OVERSIGHT BOARD'S PLAN OF ADJUSTMENT
AND DISCLOSURE STATEMENT  DATED MAY 11, 2021 AND REQUESTING FOR
ENTRY OF AN ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY
PROCEDURE 3013 TO RECLASSIFY TOGETHER EMPLOYEES WAGE CLAIMS
INCLUDED IN  CLASS 55 , WITH CLASS 49 AFSCME  EMPLOYEES  CLAIMS OR
IN THE ALTERNATIVE, BE PLACED IN A SEPARATE CLASS, TO PROVIDE
GROUP  WAGE CLAIM HOLDERS EQUAL TREATMENT  AS THAT PROVIDED TO
AFSCME EMPLOYEES GRIVANCE AND COLECTIVE BARGANING PRE-
PETITION WAGE AWARDS AND REQUESTING RELATED RELIEFS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case
number and the last four (4)  digits of each Debtor's federal tax identification number, as
applicable, are the (i) Commonwealth of Puerto Rico (the  "Commonwealth")
(Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii)
Puerto  Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17
BK 3284-LTS) (Last Four Digits of  Federal Tax ID: 8474); (iii) Puerto Rico Highways
and Transportation Authority ("HTA") (Bankruptcy Case No. 17  BK 3567-LTS) (Last
Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the
Government  of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17
BK 3566-LTS) (Last Four Digits of Federal  Tax ID: 9686). (Title III case numbers are
listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT AND RELIEF REQUESTED........................2 - 3.

II.   JURISDICTION AND VENUE .................................................................  3

III.  RELEVANT BACKGROUND..................................................................  3 .

      A Prepetition litigation......................................................................3 - 5

      B. The Title III Petition.........................................................................  5

      C. April  22,2021 Hearing.......................................................................  7

      D. Instant Renewed Motion....................................................................  7
      E. The Third Amended Title III Joint Plan of Adjustment of
      the Commonwealth of P.R. and Related Disclosure Statement...............  8

IV.   LEGAL ISSUES  ...............................................................................  11

V.    ARGUMENT  ....................................................................................  11

      **A.**   Classification issues ..................................................................  11-26

VI.   CONCLUSION ..................................................................................  26

VII.  NOTICE..............................................................................................  27

VIII.  NO PRIOR REQUEST........................................................................  27

| Cases | Page |
|---|---|
| *In re Williams*, 253 B.R. 220, 224 (Bankr. W.D. Tenn. 2000…………………………….. | 12 |
| *Groves v. LaBarge (In re Groves)*, 39 F.3d 212, 215 (8th Cir. 1994);………………… | 12 |
| *McDonald v. Sperna (In re Sperna)*, 173 B.R. 654, 658 (9th Cir. BAP 1994);  ………. | 12 |
| *In re Coonce*, 213 B.R. 344, 346 (Bankr. S.D. Ill. 1997))…………………………………. | 12 |
| *In re Sutton*, 2012 WL 433480 (Bankr. E.D. N.C. 9 February 2012) …………..…. | 12 |
| *In re Aztec Co.*, 107 B.R. 585, 590 (Bankr. M.D. Tenn. 1989) …………………………. | 12 |
| *Tribune*, 2020 WL 5035797; …………………………………………………………………….. | 13 |
| *In re Thibodeau*, 248 B.R. 699 (Bankr.D.Mass.2000);………………………………………… | 13 |
| *In re Bentley, 266 B.R. 229*,  (1st  Cir.BAP2001). ……………………………………………. | 13 |
| *In re Barney & Carey Co.*, 170 B.R. 17, 22, and 24 (Bankr. D. Mass. 1994)………………… | 13 |
| *In re Williams*, 253 B.R. at 226 (citing *In re Groves*, 39 F.3d at 214;………………… | 13 |
| *In re Dodds*, 140 B.R. 542, 544 (Bankr. D. Mont. 1992);…………………………………. | 13 |
| *In re Freshley*, 69 B.R. 96, 97 (Bankr. N.D. Ga. 1987)). ………………………………… | 13 |
| *In re Jordahl)*, 539 B.R. 567, 573 (8th Cir. BAP 2015)…………………………………….. | 13 |
| *In re Leser*, 939 F.2d 669, 672 (8th Cir. 1991)……………………………………………… | 13 |
| *In re Williams*, 253 B.R. at 226, n.1 …………………………………………………………….. | 13 |
| *In re Quinn*, 586 B.R. 1, 5 (Bankr. E.D. Mich. 2018)…………………………………………. | 14 |
| *In re Belton*, No. 16-03040-JW, 2016 WL 7011570, (Bankr. D.S.C. October 13, 2016)... | 14 |
| *In re Kindle*, 580 B.R. 443, 451 (Bankr. D.S.C. 2017))………………………………… …..14 |
| In re Leser, 939 F.2d 669, 671 (8th Cir.1991)………………………………………………. | 14 |
| *In re Coram Healthcare Corp.*, 271 B.R. 228 (Bankr. D. Del. 2001)………………………. | 16 |
| In re Wolff, 22 B.R. 510, 512 (Bankr. 9th Cir. 1982)…………………………………..………. | 16 |
| *In re Bentley, 266 B.R. 229* (1st Cir.BAP 2001)………………………………………………. | 16 |
| *In re Barney & Carey Co.*, 170 B.R. 17,  (Bankr. D. Mass. 1994)………………………..………… | 17 |
| *Boston Post Road Ltd. Partnership*, 21 F.3d at 483…………………………………………. | 17 |
| *In re LightSquared Inc.*, 513 B.R. 56, 99 (Bankr. S.D.N.Y. 2014);  ……………….……… | 17 |
| *In re SunEdison, Inc.*, 575 B.R. 220 (Bankr. S.D.N.Y. 2017);………………………………. | 17 |
| *In re 20 Bayard Views, LLC*, 445 B.R. 83 (Bankr. E.D.N.Y. 2011);  …………………….. | 17 |
| *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986),……………<br>*aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, 843 F.2d 636 (second Cir. 1988)……………<br>*Boston Post Road Ltd. P'ship v. FDIC*, 21 F.3d 477, 483 (2d Cir. 1994) ……………. | 17<br>18 |

*In re Somerset Props. SPE, LLC*, 2013 Bankr. LEXIS 3467.................................... 18,

*In re Combustion Eng'g, Inc.*, 391 F.3d 190, 242–45 (3d Cir. 2004);...................... 18

*Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture* 995 F.2d 1274 (fifth Cir.),
cert. denied, 506 U.S. 821 (1992);.......................................................... 18

*Granada Wines, Inc. v. New England Teamsters & Trucking Ind. Pension Fund*,
748 F.2d 42 (first Cir. 1984)................................................................ 18

In re Woodbrook, Assocs., 19 F.3d 312, 318 (7th Cir. 1994)...................................... 18

In re Hanish, LLC, 570 B.R. 4, 15 (Bankr. D.N.H. 2017) ........................................ 19
In re Barney & Carey Co., 170 B.R. 17, 22 (Bankr. D. Mass. 1994).................................. 19

*In re Autterson*, 547 B.R. 376, 396–97 (Bankr. D. Colo. 2016).............................. 19
*In re Deming Hospitality, LLC*, 2013 WL 1397458 at *2 (Bankr. D.N.M. 5 April 2013) .... 19
*In re Swartville, LLC*, 2012 WL 211034, *2 (Bankr. E.D.N.C. 17 August 2012)............. 19
*L & J Anaheim Assocs. v. Kawasaki Leasing Intl., Inc.* , 995 F.2d 940, 943
(9th Cir. 1993)..................................................................................... 19

*In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213 (Bankr. D.N.J. 2000);................. 19
*In re Duval Manor Assocs.*, 191 B.R. 622 (Bankr. E.D. Pa. 1996)............................. 19

*In re Combustion Eng'g, Inc.*, 391 F.3d 190, 242–45 (3d Cir. 2004)..........................19
*Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture* (, 995 F.2d 1274 (5th Cir. 1991)
cert. denied, 506 U.S. 821 (1992);.......................................................... 19
*In re Autterson*, 547 B.R. at 397............................................................ 20
*In re Swartville, LLC*, 2012 WL 3564171,.................................................... 20
*In re Dow Corning Corp.*, 244 B.R. 696, 702 (Bankr. E.D. Mich. 1999)................................ 20
*Creekstone Assocs. L.P. v. Resolution Trust Corp. (*168 B.R. 639, 641 (Bankr. M.D. Tenn.
1994);........................................................................................... 20
*In re Mortgage Investment Co.,* 111 B.R. at 614 ............................................. 20
*In re Salem Suede, Inc.,* 219 B.R. 922, 933-34 (Bankr. D. Mass. 1998)...................... 20

In re Valencia Flour Mill, Ltd., 348 B.R. 573, 576 (Bankr. D.N.M. 2006).................... 21
In re Windsor on the River Assoc., Ltd., 7 F.3d 127, 131 (8 Cir. 1993)...................... 21
In re Gregory Rockhouse Ranch, No. 05-16120, 2007 Bankr. LEXIS 4343 at *13 (Bankr.
D.N.M. Dec. 21, 2007) ........................................................................ 21

Schwarzmann, 1996 U.S. App. LEXIS 31262 ...................................................... 23

*In re Tucson Self-Storage, Inc.*, **166 B.R. 892, 898** (9th Cir. BAP 1994).......................23

In re Nat'l/Northway Ltd. P'ship, 279 B.R. 17, 30 (Bankr. D. Mass. 2002)....................24

In re Biolitec, Inc., 528 B.R. 261, 269 (Bkrtcy. Ct. NJ 2014).....................................26

Czyzewski v Jevic holding Corp.  580 US  986 (2017).........................................26

## Other Authorities

section 306(a) of PROMESA.......................................................................................3

307(a) of PROMESA. ..................................................................................................3

Section 1122.............................................................................................. 7-12-14

Section 1124..............................................................................................................21

§ 1129(a)(8)..............................................................................................................20
§ 1129(b)(1)...............................................................................................................20

§ 1129(a) (10..............................................................................................................21

section 3013 ..............................................................................................................3

section  1322 (a)..................................................................................................12; 13

section 1322(b) (1), . ................................................................................3  ; 12; 13; 14

Section 1325(b) (1) (B),..............................................................................................18

Fourteenth Amendment of the Constitution of the United States ..................................3

Art 7 of Commonwealth of P.R. Constitution,.................................................................. 3

7 *Collier on Bankruptcy* 1129.03(3) (a) (16th ed., 2019)......................................

public service personnel law, as amended; .................................................................3

the Uniform Retribution Law,........................................................................................ 3

 Rule 3013 BK. Code.......................................................................................... ... 7.

1 HON. W. HOMER DRAKE, ET AL., CHAPTER 13 PRACTICE AND PROCEDURE,
§ 7:10, at 674 (2d ed. 2019). ...................................................................................13
3 David G. Epstein, Steve H. Nickles & James White, *Bankruptcy,* § 10-22, at 41 (West 1992)...17

HON. W. HOMER DRAKE, ET AL., CHAPTER 13 PRACTICE AND
PROCEDURE, § 7:10, at 673 (second ed. 2019). .....................................   ..12
11 FED. R. BANKR. P. 3013 .............................................................................................12

To the Honorable United States District Judge Laura Taylor Swain:

**Now comes** the following active or former government employees as group creditors holding back pay awards pursuant of final judgements entered by Commonwealth courts, in the following cases: Juan Pérez-Colón et al (324 Plaintiffs} collectively (the "Perez-Colon Plaintiffs Group)[1]; Jeannette Abrams-Diaz et al (1084 Plaintiffs) collectively (the Abrams- Diaz plaintiffs Group)[2]; Agosto-Maldonado, Plaintiffs Group; collectively (729 plaintiff's),[3]; Cruz-Hernandez, Carmen Socorro Plaintiff Group (334 plaintiffs)TPI K AC1991-0665;(Docket 13535) and Group of creditors of the Consolidated CFI Judgments dated April 22, 2016 (Norberto Tomassini et al & Ivan Ayala; Plaintiff, A MI 2003-0243 y A PE 2005-0049) (87 Plaintiffs). *Also* join this Motion, the following group wage creditors, included in the following pending cases before the Commonwealth Appeal Board (CASP): Abraham-Gimenez, et al (1,046 Plaintiffs) collectively (the Abraham Gimenez Plaintiffs Group; CASP no 2021-01-0346; Alejo Cruz – Santos, et al (262 Plaintiffs') collectively (the Cruz Santos Plaintiff Group) CASP 2002-06-1493. ; Delfina Lopez-Rosario, et al Collectively The Lopez-Rosario Plaintiffs Group); (1,345 plaintiffs) CASP 01-10-372; Beltran-Cintron, Plaintiff Group collectively (the Beltran-Cintron Plaintiff Group (4,593 Plaintiffs); CASP no. 2021-01-0345 and Madeline Acevedo-Camacho et al (2,518 Plaintiffs) CASP no 2016-05-1340, and Prudencio Acevedo-Arocho, et al (1,601 Plaintiffs)TPI KAC 2005-5022, currently pending at the TPI and TSPR.[4]

## PRELIMINARY STATEMENT

1.      The Movants respectfully files this Motion (the "Motion") pursuant to Rule 3013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") requesting (a) entry of an order, substantially in the form attached hereto as Exhibit A, reclassifying employees group wage claims included with the other general unsecured claims in Class 55, with Class 49 (AFSCME employee wage claims) under the proposed plan of adjustment,

---

[1] See group claim no. 30851 for the names of claimants included in judgement entered by First Instance Court in case TPI K AC1990-0487

[2] See group claim no. 50221 for the names of claimants included in judgement entered by First Instance Court in case TPI KAC 2005-5021

[3] For complete list of the names of judgement claimants included in case K PE 2005-0608 and claims no.see Docket 13534

[4]    See claim no 51013

2

dated May 11, 2021 (Docket No. 16744) (the "Enmended Plan") and (b)  due to the fact that the Group creditors, as active or former government employees,  have a colorable wage claim against the Debtor for violation of local and federal minimum wage laws  and allow the case move forward in efficient manner and avoid the extraordinary overhead that will generate, if the claims are  considered  in an individual basis using the Administrative Reconciliation Procedures, as there is no guarantee claims will be resolved by settlement, and in view of the extended litigation history, wise administration demands, that the bankruptcy court refer Movants wage claims  to mandatory mediation.   For the purpose of judicial economy, it is herein requested that the group claims remain consolidated, giving the mediation Committee a reasonable time for its determination. In support of this Motion, the Movants respectfully states as follows:

## JURISDICTION, VENUE, AND STATUTORY BASES

2. The Court has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA. Venue is proper pursuant to section 307(a) of PROMESA.

3. The relief herein is requested pursuant to Bankruptcy Rule 3013 and 1322(b) (1), as made applicable to these Title III cases by section 310 of PROMESA.

## RELEVANT BACKGROUND

### A.  The Pre - Petition litigation

4.      Prior to the Title III Petition date, on May 3, 2017 (the "Petition Date"), Movants have filed declaratory judgement actions in the Puerto Rico Court of First Instance, (the "Commonwealth Court") against the Commonwealth and related government agencies.

5.    In all references cases, except in the consolidated cases of Norberto Tomassini and Ivan Ayala, the cause of action was based out of the same nucleus of operative facts.

6.        Specifically the Plaintiffs alleged that defendants, in clear disregard of the dispositions established in the Uniform Retribution Law of 1979, as amended; law number 5, of November 20, 1975,  which required government agencies to reduce employees work schedules, if they did not have sufficient funds to comply with the federal minimum wage law   and  in retaliation and improper response to the employee's assertion of coverage of the federal minimum wage law (FLSA) and, without affording plaintiffs the procedural protections guaranteed under the due process clause of the Fourteenth Amendment of the Constitution of the United States and Art 7 of Commonwealth of P.R. Constitution, the respective government agencies, illegally downward the employee's regular wages, making the  employee's pay scales and classification plans inoperable.

3

As direct result of Defendants collective determinations, the plaintiffs suffered a severe violation of their employment contract, since, among others personnel actions, employees assigned up to pay scale 17, were paid the same salary, received by janitors and workers.

7.       In the first four referenced cases, and before the Petition date, Movants had final declaratory judgment in their favor, were the Puerto Rico Court of First instance, ordered Defendants [the Family Department and Department of Transportation and Public Works [DTOP] to adopt new pay scales, that comply with the federal minimum wage, and correct the employee's regular rate of pay, by assigning the respective positions to the corresponding new pay scales (adopted in February 2005), and awarding plaintiff's the respective back pay , in consideration of the respective evaluated worth of their jobs.[5] The payment of these wage lost, is an attempt to put plaintiffs in the place they would have been absent the employer's misconduct and in order to prevent unjust enrichment of the estate at the expense of its employees[6].

8.       In the consolidated case of Norberto Tomassini Arce, civil action no. A MI2003-0143 and Iván Ayala Marrero, civil no. A PE 2005-5021, the employee claim stem from a judgment dated April 22, 2016, were the court ordered the DCR to pay the overtime accumulated for work performed during the half –hour provided for work performed during the 30 minute provided for meal time periods. In addition, ordered to correct the regular monthly salary, due to the fact, claimants were paid under a pay scale for 37.5-hour workweek and the CO has rendered services under an uninterrupted eight (8) hour shift that is equivalent to a 40 hours workweek.

9.       Collectively the allowed claims regarding the above-identified final judgements, is for $ 84,405,776.96.[7]

10.       In reference to the six pending cases, and given the fact that the employee's wages and benefits are property protected by the employment contract, and by the public service personnel law, as amended; the Uniform Retribution Law,  among other laws of the country, after learning  about the identified judgements and  requesting unsuccessfully to the pertinent agencies to  correct  their regular rate of pay, as done with their co-

---

[5] See group proof of claims nos30851; 50221; and Rule 2019 Motions Docket 13534 and 13535 for the names and individual back pay awards.

[6] According to PR law, the only recourse for creditors with final judgements is to wait for a legislative appropriation of amounts to pay their claims, once GOs are paid in full. See Best interest test Analysis, Assumptions,  question no. 1, regarding existence of PROMESA,  at page  34 – 35

[7] See proof of claims no. 12265, 29642; 15013; 15708;and 32044 and amended proof of claims no. 179140 and 179140,

workers, the Group creditors filed under the Commonwealth Court of First Instance, San Juan, Puerto Rico, the pertinent declaratory judgement actions. At present, five (5) of the reference cases are pending  before  the Commonwealth Appeal Board (CASP), except the Acevedo-Arocho group, which case is pending before the Puerto Rico Supreme Court, concerning a summary judgment Motion. However, regarding the fifth cause of action, which concerns a claim filed by 48 auditors and   tax specialist -----of the Department of the Treasury, who challenge the reclassification of their respective positions based on the "evolution of duties," due to an administrative reorganization, by Motion filed by the Commonwealth on October 2020, the automatic stay was enforced[8].

11.      In addition, a similar situation is confronted by the group plaintiffs in the cases of Francisco Beltran-Cintron, and the case of Abraham Gimenez, in view of the Debtor recent enforcement by Debtor of the Bankruptcy automatic stay in said cases, after the Puerto Rico Supreme Court determined that the jurisdiction was vested on the Commonwealth Appeal Board (CASP). Consequently and after the filing of the complaint at the Administrative forum, the Commonwealth   filed a motion to enforce the automatic stay, and oppose creditor's continuation of the procedures to procure a final resolution on their claims, predicated on the economic burden it entailed to the government. Although group creditors seek a consensual stipulation from  the Oversight Board for the  lift of stay, was denied [9]

12.      Collectively, the estimated value of the pending cases, due to the extraordinary number of affected employees, and extended period of the wage laws violations, is approximately $247,000,000.00.

13.      Group wage creditors collectively accumulates 14,224 active or inactive government employees.

**B.      The Title III Petition**

14.      On May 3, 2017 (the "Petition Date"), the Oversight Board filed a petition under Title III of PROMESA, on behalf of the Commonwealth of Puerto Rico.

15.      In order to place in context the facts that support the opposition to the Plan of Adjustment and Disclosure Statement classification scheme,   is important to bring to the consideration  of  the Honorable Court some of the  first  iterations  of the  Debtors

---

[8] See original lift of stay Order issued in referenced cases [ Docket 4201-1]
[9] See amended proof of claims no. 178140 and 17941,  filed by group claimants and the corresponding Oversight Board denial to the modification of  lift of stay dated    and   , included as EXHIBIT 1 (a) and (b).

notice that when the Commonwealth's filled the Title III petition, in order to comply with its responsibility to continue providing services for its citizens, without interruption, (and as an unique feature of PROMESA legislation), adopted in the Petition Global Notes the administrative determination, that was going to **continue its normal payroll operation and to honor and pay,** during the ordinary course of business, **all accrued obligations for wages and salaries, including earned vacation, severance and sick-leave pay, and contributions to employee benefit plans**.[10]

16.     Although there is no doubt that the mentioned policy is binding, under PROMESA legislation, since the wage payments are considered crucial for the successful government reorganization, and for continuance of the regular government operations, and for the reasons that will be discussed ahead in more detail, is pertinent to consider the Debtor' pre- petition conduct, since said party did not complied with principles of fiduciary duty and usual rules for disclosure. Specifically, because when filed its schedules or matrix, improperly registered Movant is final judgments in Schedule H (litigation obligations) of the Title III Petition, as contingent, unliquidated and disputed.[11]

17.     In view of the above, Movants submits that said determination raises the question as to whether said party was trying to conceal the wage debt owed to movants, Particularly because when considered the judicial estoppel doctrine *for bankruptcy cases,* a review of the jurisprudence establish that, a debtor's failure to satisfy its statutory

---

[10]     See Global Notes included as EXHIBIT A of the Title III petition (Docket 1215 -1) filed on 08/30/2017, were the Commonwealth articulated its wage payment policy as follows: "The Commonwealth has sought to identify all employees who are or were employed by the Commonwealth or one of the Commonwealth's component units as of the Petition Date, as set forth on Schedule E. The respective employee status includes and is not limited to (a) active, (b) terminated, (c) retired, or (d) on leave.

Also indicates in paragraph,35 that: " **since the Petition Date, the Commonwealth has paid, and intends to continue to honor and pay, all accrued obligations for wages and salaries, including earned vacation, severance and sick-leave pay, and contributions to employee benefit plans.**

Accordingly, except as specifically identified elsewhere in Creditor List, the Commonwealth believes that it has satisfied or will satisfy all prepetition claims of active employees for current liabilities. The Commonwealth also continues to file and pay severance in the ordinary course."

Here, is important to emphasize that the basis of this policy is unique under PROMESA, due to the payment priority scheme of § 507 of the U.S. Bankruptcy Code, since debtors are required to previously obtain the corresponding court authorization, for the payment of pre-petition wages owed to its employees.

[11]     See Schedule H (Docket no. 1215

disclosure duty is "inadvertent" only when, in general the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment.[12]

## C. April 22, 2020 Hearing and Meet and Confer Order

18. As pertinent here, and premised on the plan improper classification of debtor's unsecured creditors, the Official Committee of Unsecured Creditors filed on March of 2020, a motion to address the matter (the "Original Rule 3013 Motion"), as embodied in the then- proposed first plan of adjustment.[13]

19. On April 15, 2020, Movants group filed a Partial Joinder Motion in regards the Unsecured Creditors Committee Rule 3013 Motion, to oppose the proposed bifurcation of the employee wage claims, due to the fact that the Debtor proposed to classify separately, AFSCME unsecured employees wage claims, in class 40, with a 100 % recovery, while asserting Movants employees wage claims, a less favorable treatment by maintaining their claims classified in class 41, with the general unsecured claims, and thus, were going to receive, on their wage claim, an undetermined amount, probably less than 1 %,[14]

20. This Court held a hearing on the Original Rule 3013 Motion on April 22, 2020 (the "April 22 Hearing"). At that hearing, the Court dismissed the Original Rule 3013 Motion and related motions, without prejudice to the party's rights and directed to renew their respective arguments at the appropriate time, along with any further relevant arguments.

## D. Instant Renewed Motion

21. Due to the above factual background Movants, in compliance of the Court's ruling which directed the parties to meet and confer regarding whether it is necessary and appropriate for review the classification issues and to express concerns about the lack of transparency and due process violations of the ACR procedures, on April 19, 2021 Movants remitted letter to counsel for the Oversight Board, pursuant to the Court's instructions, but no answer or opposition was received to this date for the resolution of the classification issue and other issues of concern, herein presented.

---

[12] See In *Oneida*, 848 F.2d 414

[13]. See Docket no. 11989

[14] According to Disclosure Statement, at this time the recovery, of the claims cannot be estimated. For a detailed description of these legal contingencies, refer to Note 17 of the financial statement

**E.     Third Amended Title** ~~Document Plan Page 12 of 34~~ **ment of the Commonwealth of Puerto Rico, and Related "Disclosure Statement"**

**22.**    On May 11, 2021,  the Commonwealth of Puerto Rico filed a "Third Amended Plan" and the related Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, Et Al. [Dkt 16740] and (the "Third Amended Disclosure Statement"). (Dkt. 16741).

23.    Because the Amended Plan classification scheme discriminates unfairly against the Group wage creditors and violates fundamental principles of Bankruptcy law, Movants submit their opposition to the confirmation of Debtor's Third Joint Plan of Adjustment and corresponding Disclosure Statement, for the following reasons:

**FIRST**: Class 49 was improperly constituted since discriminate unfairly against Group claimant in the treatment and recovery distribution.     To put in context the relevant facts and the unusual circunstances that arises in the present case, must be brought to the Courts consideration, that  an overwhelming majority of the group claimants, are active or former AFSCME or SPU affiliates.[15]

24.    Therefore, Movants contends that by  separating  from the general unsecured creditors,  included in class no. 55 **only**  AFSCME allowed claims,  but the ones related to grievances and collective bargaining agreement,  while,  keeping the other employees wage claims  in class 55, with the other  general unsecured creditors, and providing  each class  with substantial disparate recoveries,  even though the      wage claims are substantially similar, constitute an unfair  discrimination against the Group claimants.[16] [17]

25.    To illustrate the despaired treatment , among other things: (a) the plan propose  a 100% recovery to  AFSCME  employee wage claim,  but only if the claim  arises from a grievance and arbitration procedure, ( b) the   payment will be made within a  short timeframes (3) also, and according to the specific Disclosure Statement,   the Oversight Board legal representatives  negotiated with  AFSCME union representatives,  various

---

[15] AFSCME: American Federation of State, County and Municipal Employees, ~~for itself and on behalf of its~~ which includes two local chapters, SPU, AFSCME Council 95 and Capitulo de Retirados de SPU and their fourteen affiliated local unions in Puerto Rico.  For  AFSCME agency groping see  Pag >>>>>>>>>>>>>

EXHIBIT H concern the Certified Commonwealth Budget. However, said document does not disclosure the respective govermement debt with regards AFSCME employee claims or obligations..

[16] Please note EXHIBIT H corresponds to the SCHEDULE OF MED CENTER CLAIMS

[17] .As relevant here, is important to consider that the Third Amended Disclosure Statement does not include the total number of AFSCME employee claims eligible to vote, nor estimate the total value of the claims placed in Class 49, see Exhibit F and Exhibit M-1 for supplementary financial  information.

Plan Supplement documents and the plan support agreement, to improperly secure the plan approval, and mold the outcome of the voting to effectuate a "cram down", as a way to obtain an accepting class of "impaired creditors", According to the proposed plan treatment of class 49, is as follows: [18]

> Treatment: Rejection of AFSCME Collective Bargaining Agreements.

> "On the Effective Date, the existing collective bargaining agreements between the Commonwealth, its applicable agencies and instrumentalities, on the one hand, and AFSCME and its related union affiliates, on the other hand, will be rejected pursuant to Bankruptcy Code section 365 and replaced with modified collective bargaining agreements to be entered into in accordance with the terms and conditions set forth on Exhibit J to the Plan. Such modifications include (i) a term of five (5) years beginning as of the Effective Date, (ii) provisions regarding layoffs and downsizing, (iii) terms regarding System 2000, and (iv) terms for sharing Excess Cash Surplus.

> Also, provides that each holder of an allowed AFSCME Employee Claim will receive the following in full consideration, satisfaction, release and exchange of such holder's Allowed AFSCME Employee Claim resulting from such rejection:

> The plan also propose for Additional AFSCME Distributions: On or as soon after the Effective Date, AFSCME and its member employees will receive the following additional payments and distributions set forth in Appendix II to Exhibit H of the Plan: (i) a one-time payment of $500 to each of the Union represented participants; (ii) a one-time payment of $5,000,000.00 to AFSCME to be distributed as a one-time cash bonus to its member employees; and (iii) a one-time payment of $5,000,000.00 to AFSCME as a Support Fee.[19]

> **Pre-Petition Arbitration and Grievance Claims: Any distributions on account of Claims for liquidated damage amounts from the disposition of a pre-petition action** brought due to a grievance and arbitration procedures under the CBA between the Commonwealth and AFSCME **must be made by the Commonwealth to the claimant in each instance on such date that is the later of (i) 30 days after the disposition and (ii) 60 days after the Effective Date**".

---

[18] As relevant here, is important to note, that the Third Amended Disclosure Statement does not include an estimate of the total value of the claims placed in Class 49 or the total number of AFSCME employee claims eligible to vote and respective claim value. See Exhibit F and M-1 supplementary information.

[19] In addition, AFSCME will receive: Professional Fees on the Effective Date, AFSCME will be reimbursed its reasonable professional fees and expenses incurred in order to compensate AFSCME for the cost of negotiation, confirmation, and consummation of the AFSCME Term Sheet and the Plan, and the resolution of issues pertaining to pensions. The reimbursement will occur on the Effective Date and will be treated as an Allowed Administrative Expense Claim. 5. See pag 367 Disclosure Statement.

Preemption: All provisions of the Commonwealth Constitution, Commonwealth statutes, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require or enforce employee pension and other benefits that are modified by the Plan, to the extent inconsistent with the treatment of Allowed AFSCME Employee Claims in the Plan, are preempted as inconsistent with PROMESA.

Voting: Class 49 is impaired by the Plan.

Class 49 and each holder of an Allowed AFSCME Employee Claim are entitled to vote to accept or reject the Plan.

26.     In contrast, in the proposed plan by definition, Class 55 consists of all claims against the Commonwealth, except:

(a) any Claim treated in any other Class under the Plan,

(b) An Inter-Instrumentality Claim,

(c) Any Claim subject to the provisions of the ACR Order, or

(d) Any Claim determined by the Title III Court not to be a CW General Unsecured Claim.

As to the Class 55 Treatment, the plan provides:

"On the Effective Date, each holder of an Allowed CW General Unsecured Claim will receive its Pro Rata Share of the CW GUC Recovery, comprised of: (A) $125,000,000.00 in Cash, and (B) net recoveries by the Avoidance Actions Trust allocable to the Avoidance Actions CW Interests. Distributions to a holder of an Allowed CW General Unsecured Claim cannot exceed 100% of such holder's Allowed CW General Unsecured Claim. If Allowed CW General Unsecured Claims have been paid in full, the excess value in the CW GUC Recovery will be redistributed, on a pro rata basis, to the benefit of holders of Allowed Eminent Domain Claims, Allowed CW/Convention Center Claims, Allowed CW/HTA Claims, Allowed CW/PRIFA Rum Tax Claims, and Allowed CW/MBA Claims". [20] Voting: Class 55 is impaired by the Plan. Class 55 and each holder of an Allowed CW General Unsecured Claim are entitled to vote to accept or reject the Plan. Estimated Allowed Amount of Claims: [$____]

27.     From the above class definitions and treatment, when analyzed together, is easy to determine, that Movants employees wage claims receive a substantially lesser recovery, than the one received in class 49, even though the claims are   similar in rank and legal nature.

---

[20] Also, is important to note that the  Disclosure Statement includes no estimate as to the total value of the claims placed in Class 55, nor the approximate net recovery from the ongoing  litigation or agreements entered in the Avoidance Actions, making impossible to calculate or determine, an expected recovery percentage

SECOND: By splitting the employees wage claims between two classes, constitutes a vote manipulation by the gerrymandering of classes, in order to reduce the number of votes required for confirmation.

28.     Here, is important to bring to the Court consideration , that  nowhere in the Disclosure statement,  the debtor  address or try to  justify,  the need to  separate  from class 55 of unsecured general creditors, and create Class 49, for  AFSCME employee wage claims, but solely if the allowed claim arises from a collective bargaining agreement. Neither explain the reason or justification for providing class 49,  a 100 % recovery, and payment, within a short period of time of 60 days,    while Movants wage Claims, which in substance, share the same legal characteristics, since are directly related with services rendered to the debtor under  their employment contract,    remain in class 55,    as unsecured creditors.

## F. LEGAL ISSUE

29.     Whether the Debtor's proposed Third amended plan is unconfirmable for the following reasons:

a)      The Debtor discriminate unfairly   in the proposed classification  of Group wage claims .
b)      The Debtor gerrymandered AFSCME employees   unsecured wage claims to obtain at least one consenting, impaired class;
c)      AFSCME class 49 was artificially impaired and therefore, class members does not have the right to vote and if so, the cash the agreement with AFSCME should not be approved
d)      The Debtor is abusing its authority under color of law, and discriminating unfairly against the Group wage Claimants by excluding their claims from the ACR process and at the same time, enforcing stay proceedings at the Commonwealth administrative Forum CASP.

## ARGUMENT

## G.    The proposed Third Amended Plan and Disclosure Statement Cannot Be Approved Under section 1322 (b) (1) Bankruptcy code classification restrictions

30.     The present Motion is based in the fact that the classification scheme proposed in the Third Amended Plan of Adjustment violates the requirement of equality in distribution, which is a fundamental concept of the bankruptcy law.

31.     Movants submits, as a threshold matter that the Debtor, in the   proposed Third Amended Plan of Adjustment, by classifying government employees wage claims in two separate classes, for the purpose of distribution and voting, violate fundamental principles of Bankruptcy law, since discriminates unfairly against the Group wage creditors.

11

32.     For the exclusive purpose of this motion, and considering that the Bankruptcy Code provides a debtor with some flexibility in classifying claims Movants will not contest that the debtor's plan of reorganization may place unsecured claims in separate classes. However, is important in determining the requirements established by the Code's regulations, to take into consideration that the Bankruptcy Code mandates that substantially similar claims be treated alike. A plan of reorganization may place unsecured claims in separate classes "as long as the classification: 1) complies with section 1122 of the Code and 2) does not result in unfair discrimination between the claims grouped separately.

33.     Similar treatment of similar claims is one of the core principles of bankruptcy reorganization. Consequently, Section 1322(b)(1) provides that a plan may "designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated. . . ." The statute's prohibition against unfair discrimination "implies that discrimination is permissible as long as it is not `unfair.'" 1 HON. W. HOMER DRAKE, ET AL., CHAPTER 13 PRACTICE AND PROCEDURE, § 7:10, at 673 (second ed. 2019). "Discrimination is said to be unfair when there is no valid reason to prefer one group of unsecured claims over another." *In re Williams,* 253 B.R. 220, 224 (Bankr. W.D. Tenn. 2000) (citing *Groves v. LaBarge (In re Groves),* 39 F.3d 212, 215 (8th Cir. 1994); *McDonald v. Sperna (In re Sperna),* 173 B.R. 654, 658 (9th Cir. BAP 1994); *In re Coonce,* 213 B.R. 344, 346 (Bankr. S.D. Ill. 1997)).

34.     Although the Bankruptcy Code does not provide a definition of "unfair discrimination," case law is divided and historically have relied on a number of tests to determine whether a plan discriminates unfairly. As noted by a leading commentator, "Courts have struggled to give the unfair discrimination test an objective standard.". 7 *Collier on Bankruptcy* 1129.03(3) (a) (16th ed., 2019). In the Chapter 11 context, some courts have borrowed from the Chapter 13 unfair discrimination rule provided for in 11 U.S.C.§ 1322(b)(1) and proposed a test that examines the factors based on reasonableness of the discrimination. See *In re Sutton,* 2012 WL 433480 (Bankr. E.D. N.C. 9 February 2012) (surveying competing standards); *In re Aztec Co.,* 107 B.R. 585, 590 (Bankr. M.D. Tenn. 1989) (setting forth 'four-factor' test often used for determining whether plan unfairly discriminates against similarly situated creditors).

35.     As to the classification issue here, Movants submits that an analysis of a classification of claims begins with section 1322 (a) which provides that each claim of a

12

particular type or class is to be treated the same as other claims of the same type or class. Similar treatment of similar claims is one of the core principles of bankruptcy reorganization. Section 1322 (b) (1) provides that subject to the principle established in 11 USC section 1322 (a), a separate class of unsecured claims may be established if that separate classification does not "discriminate unfairly". The subsection allows an exception to the similar treatment required for similar claims by 11 USC section 1322 (a) if that dissimilar treatment is "fair". If it is unfair, it is prohibited by section 1322 (b) (1).

36.    Moreover, the basic rationale for determining whether any such discrimination is fair or not, courts consider various factors, applied to the circumstances of each particular case. These factors are variously formulated but bear upon the equitable allocation of plan resources and the furtherance of underlying policy objectives. *See Tribune,* 2020 WL 5035797; *In re Thibodeau,* 248 B.R. 699 (Bankr.D.Mass.2000); *In re Bentley, 266 B.R. 229,* (1st Cir.BAP2001). See also *In re Barney & Carey Co.,* 170 B.R. 17, 22, and 24 (Bankr. D. Mass. 1994) ("[T]he First Circuit has adopted a strict approach, namely, that **all claims of equal legal priority must be placed in the same class**.[21]

37.    The question of whether discrimination is unfair "lies within the discretion of the bankruptcy judge and is to be made on a case by case basis." *In re Williams,* 253 B.R. at 226 (citing *In re Groves,* 39 F.3d at 214; *In re Dodds,* 140 B.R. 542, 544 (Bankr. D. Mont. 1992); *In re Freshley,* 69 B.R. 96, 97 (Bankr. N.D. Ga. 1987)).

38.    In addressing this question, courts often have begun their analysis by applying the following four-part test: "(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination." *Jordahl v. Burrell (In re Jordahl),* 539 B.R. 567, 573 (8th Cir. BAP 2015), (quoting *In re Leser,* 939 F.2d 669, 672 (8th Cir. 1991)); *see also In re Williams,* 253 B.R. at 226, n.1 (stating that the test provided in *Leser* "is the test most commonly used by courts to determine whether proposed discrimination is unfair") and 1 HON. W. HOMER DRAKE, ET AL., CHAPTER 13 PRACTICE AND PROCEDURE, § 7:10, at 674 (2d ed. 2019).

---

[21] *See generally* Denise R. Polivy, *Unfair Discrimination in Chapter 11: A Comprehensive Compilation of Current Case Law,* 72 Am. Bankr. L.J. 191, 196-208 (1998) (discussing cases applying the various tests). See also, Bruce A. Markell in his article *A New Perspective on Unfair Discrimination in Chapter 11,* 72 Am. Bankr. L.J. 227, 249 (1998).

13

39. In selecting a framework for its analysis of this issue, the discussion of the Bankruptcy Court for the Eastern District of Michigan is helpful, since the court explained that, "[a]fter considering [the *Leser*] test and others, another court developed its own `streamlined test' which asks: `(1) Is there a good faith, rational basis for the separate classification; (2) Is the separate classification necessary to the debtor's rehabilitation under Chapter 13; and (3) Is there a meaningful payment to the discriminated class.'" *In re Quinn,* 586 B.R. 1, 5 (Bankr. E.D. Mich. 2018) (quoting *In re Belton,* No: 16-03040-JW, 2016 WL 7011570, (Bankr. D.S.C. October 13, 2016)).

40. In determining which test to apply, and while courts have develop different query and approaches to determine unfair discrimination, "`nearly all tests involve considering the totality of the circumstances in each case.'" *Id.* (quoting *In re Kindle,* 580 B.R. 443, 451 (Bankr. D.S.C. 2017)).

41. Movants here contends that, under special provisions of PROMESA, the unfair discrimination test under section 1322 (b) (1), must be read as a whole.

Firstly, because it restates a core bankruptcy principle, that similar claims should be treated similarly.

Secondly, because section 1322 (b) (1) provides an exception to that principle by allowing dissimilar treatment of similar secured and unsecured claims if the if the dissimilar treatment. is fair.

42. The truth of the matter is, that under 11 U.S.C. § 1322(b) (1), plain language, and the Bankruptcy Code's purposes, a plan may not discriminate unfairly among claims of the same legal type.

43. In addition, because, as indicated, under the basic rationale, the classification of claims must comply with section 1122 of the Code and cannot result in unfair discrimination between the claims grouped separately. See, In re Leser, 939 F.2d 669, 671 (8th Cir.1991).

44. In light of the above, and the classification structure proposed in the Amended plan is analyzed , and as pertinent here, is easy to understand that the proposed plan improperly separately classify in two classes the government employees wage claims, on the basis of gerrymandering and in a manner inconsistent with the Bankruptcy code.

First, place in Class 49, AFSCME employee pre-petition wage claims, and which arises from grievances and collective bargaining agreements and, the second, (and that are the ones that concern movants' here), place Movants back pay awards determined

14

by final Commonwealth court judgements, for violation of state and federal minimum wage laws (or future judgments), in class 55, with the other general unsecured claims

Second: Also is important to note, that for purpose of distribution, the plan propose to pay in full AFSCME union employees wage claims and gives absolute priority in payment within specific timeframes. According to the proposed plan, the Debtor will pay 100% recovery AFSCME union members on any wage claim that arises from a grievance and arbitration procedure, and gives absolute priority in payment within specific timeframes. In this case, the AFSCME employee will be paid by the Commonwealth, to the claimant, under the regular course of business, in each instance on such date that is latter of (i) within 30 days after disposition and/or 60 days after effective date,[22]

Third: in regards recovery that the group claim holders will have concerning the back pay award for violation of state or federal wage laws, pursuant to the above identified five (5), final judgments, or regarding the pending the group claims administrative procedures before CASP, since their claim purposely reminds in class 55, they will only receive, for their unsecured claims against the Commonwealth, its pro rata share of the GUC recovery, comprised of: (A) $125,000,000.00 in Cash, and (B) net recoveries by the Avoidance Actions Trust allocable to the Avoidance Actions.[23]

45.     Consequently and in view of the great discrepancy between the return to employees group wage claims creditors' and the return to the AFSCME allowed claim under the proposed plan, is obvious, under a baseline test, that the Debtor, by dividing and classifying employees wage claims that are similar in nature, into class 49 and class 55, pretends not only to obtain an illegal total or substantial discharge of the wages and benefits awarded to the corresponding group claimants, for wage laws violations, pursuant to the mentioned judgements but also, illegally gerrymandering the wage claimants, as ahead will be discussed in more detail, in order to guarantee the plan confirmation.

46.     Precisely , and by its' very nature of the disparate treatment of employees wage claims given in the proposed plan, is not only discriminatory but it is unfairly discriminatory, since similar employee's wage claims cannot be treated differently, by

---

[22] See Exhibit F, AFSCME PLAN SUPPORT Agreement and Exhibit _____Commonwealth Budget, included in the disclosure Statement.

[23] Here is important to note that the Disclousure Statement does not provide information as to funds and amounts available

adopting an unfair discriminatory classification. Debtors should not assume that the classification restrictions of **Sec. 1322(b) (1)** could be evaded in this manner.

47.    To the contrary, Debtor has the burden of proving that the proposed classification of employees wage claims does not discriminate unfairly. Arguably, the most important factor in the inquiry into the totality of the circumstances is the fundamental fairness of the plan. *In re Coram Healthcare Corp.,* 271 B.R. 228 (Bankr. D. Del. 2001).

48.    More so when when it is considered that in the proposed plan there is a great discrepancy between the return that AFSCME employees will receive on their pre-petition allowed grievances and collective bargaining claim and the return said union employee [or nonunion employee will receive regarding the second wage claim, as general unsecured claim, there is no doubt that on its face, the  treatment of Movants wage claims in the proposed plan is unfairly discriminatory.

49.    In addition, because must be considered that under section 1122 of the Bankruptcy Code is meant to ensure that all members of a voting class have similar interests so that the plan, if confirmed, affects all class members similarly. To achieve this objective, Section 1122 prohibits placing disparate types of claims in the same class. 11 U.S.C. § 1122(a) ('[A] plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.') [24]

50.  Also because  under Section 1322(b)(1) allows a Chapter 11, 13 plan to designate more than one class of unsecured claims, but Section 1322(b)(1) requires that the treatment of the classes of unsecured claims so designated not unfairly discriminate against any class. A plan proponent bears the burden of proof regarding whether the requirements for confirmation have been satisfied. In re Wolff, 22 B.R. 510, 512 (Bankr. 9th Cir. 1982).

51.    Given the language of the above analyzed Rules, Movants objects the confirmation of the Plan because of the disparate treatment given to employees wage claims, resulting in an impermissible gerrymandering, which  a more than enough reason for this Court to

---

[24] As to the question whether the comparators were similarly situated see *Coleman v. Donahoe,* **667 F.3d 835** , **846-47** (7th Cir. 2012). "So long as the distinctions between the plaintiff and the proposed comparators are not 'so significant that they render the comparison effectively useless,' the similarly-situated requirement is satisfied." In other contexts, such as Title VII, we have said that precise equivalence is not required; the parties must be comparable, not clones. *Chaney v. Plainfield Healthcare Ctr.,* **612 F.3d 908** , **916** (7th Cir. 2010).

intervene in order to determine whether splitting the wage claims is reasonable and necessary to serve an important public purpose.

53. Particularly, in view that the First Circuit has adopted a strict approach, namely, that all claims of equal legal priority must be placed in the same class see *In re Bentley,* 266 B.R. 229 (1st Cir.BAP 2001). See also *In re Barney & Carey Co.,* 170 B.R. 17, 22, and 24 (Bankr. D. Mass. 1994) ("[T]he First Circuit has adopted a strict approach, namely, that all claims of equal legal priority must be placed in the same class.

54.    Also because here is interesting that in Barney the Court expressed that even if it were to adopt a flexible approach, the classification scheme proposed by the Debtor would fail that test because the Debtor has proffered no legitimate business reason for its classification scheme, citing *Boston Post Road Ltd. Partnership,* 21 F.3d at 483 (treating trade creditors more favorably than under secured creditor because of concerns about the viability of future business is not a legitimate business reason). Therefore, in Barney, the Court was convinced that the classification scheme was prompted only by the goal of creating a class of accepting claims.

55.    In addition, in Barney the Court expressed, regarding the defects in the Debtor's classification scheme, that would not confirm the plan based on the condition of confirmation of a cram down plan, is that it not discriminate unfairly against a dissenting class. Unfair discrimination is not defined in the Bankruptcy Code, but the legislative history indicates ". . . this criterion is to protect creditors from unfair discrimination between classes of claims with equal priority." 3 David G. Epstein, Steve H. Nickles & James White, *Bankruptcy,* § 10-22, at 41 (West 1992).

56.    Also, because is important to mention, that most courts agree that the purpose underlying the requirement is "to ensure that a dissenting class will receive relative value equal to the value given to all other similarly situated classes." *In re LightSquared Inc.,* 513 B.R. 56, 99 (Bankr. S.D.N.Y. 2014); *accord In re SunEdison, Inc.,* 575 B.R. 220 (Bankr. S.D.N.Y. 2017); *In re 20 Bayard Views, LLC,* 445 B.R. 83 (Bankr. E.D.N.Y. 2011); *In re Johns-Manville Corp.,* 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd,* 78 B.R. 407 (S.D.N.Y. 1987), *aff'd,* 843 F.2d 636 (second Cir. 1988).

57.    Whatever uncertainty exists in the case law regarding unfair discrimination, there is "one clear rule" were is consensus among Circuits, and to which all courts adhere— **"*thou shalt not classify similar claims differently in order to gerrymander an***

17

***affirmative vote on a reorganization plan***." See , e.g., *Boston Post Road Ltd. P'ship v. FDIC* (*In re Boston Post Road Ltd. P'ship*), 21 F.3d 477, 483 (2d Cir. 1994) ('[S]eparate

classification of unsecured claims solely to create an impaired assenting class will not be permitted; the debtor must adduce credible proof of a legitimate reason for separate classification of similar claims'); *In re Somerset Props. SPE, LLC*, 2012 Bankr. LEXIS 3867, at \*6 (Bankr. E.D.N.C. 2012) ('[I]t is well-established that separate classification may not be created with the sole intent to achieve cram-down.'); accord *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 242–45 (3d Cir. 2004); *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture* (*In re Greystone III Joint Venture*), 995 F.2d 1274 (fifth Cir.), cert. denied, 506 U.S. 821 (1992); *Granada Wines, Inc. v. New England Teamsters & Trucking Ind. Pension Fund*, 748 F.2d 42 (first Cir. 1984).

58.    In In re Woodbrook, Assocs., 19 F.3d 312, 318 (7th Cir. 1994), the First Circuit's strict construction of 11 U.S.C. § 1122(a) makes detecting gerrymandering substantially easier by creating a strong presumption that facially similar claims should be classified together.

59.    The burden then lies with the plan proponent to rebut the presumption by demonstrating that "outside of bankruptcy, the dissenting class would similarly receive less than the class receiving a greater recovery, or that the alleged preferred class had infused new value into the reorganization which offset its gain." *Id.*

60.    In view of the above interpretations, Movants states that under the specific facts of the present case, because the Debtor propose to pay a nominal recovery to the group wage claimants that remain on class 55 with the general unsecured claims, while attempting to pay in full the AFSCME employee wage grievances and collective bargaining claims, this violates Section 1325(b) (1) (B), since on its face, this disparate treatment to similar claims constitutes unfair discrimination.

61.    The Debtor here placed AFSCME employee wage claims in a different class *because* it was being paid in full. However, placed said class as impaired, in order to vote. If counted, is automatically considered an acceptance of the Plan under the Code, and thus help the Debtor to get to confirmation."

62.    "Given that the First Circuit applies the strictest approach to classification, and have consistently determined, that all claims of equal legal priority must be placed in the same

18

class", Movants submits that, since the group wage claimants meets the same legal standards to be classified with AFSCME employee, based in the fact that the claims of the dissenting group are of equal rank and of the same nature, since emerges in the ordinary course of employment matters and from contractual obligations created by statutory framework that regulates public employment, must be classified together See In re Hanish, LLC, 570 B.R. 4, 15 (Bankr. D.N.H. 2017) and compare with In re Barney & Carey Co., 170 B.R. 17, 22 (Bankr. D. Mass. 1994)

63.     Since is intimately related to the improper classification of claims, Movants here contends that when class 49 is analyzed, can be determined that said class is not impaired, since will be paid 100% recovery.

64.     Thus, was artificially impaired, for voting. see *In re Autterson*, 547 B.R. 376, 396–97 (Bankr. D. Colo. 2016) ('Artificial impairment occurs when the plan proponent "causes the class to be impaired without an economic justification for doing so, for the apparent purpose of obtaining the required vote" of an impaired class.'); *In re Deming Hospitality, LLC*, Case No. 11-12-13377, 2013 WL 1397458 at *2 (Bankr. D.N.M. 5 April 2013) (same); *In re Swartville, LLC*, 2012 WL 211034, *2 (Bankr. E.D.N.C. 17 August 2012) ('artificial impairment' refers to a scenario where a debtor 'deliberately impairs a *de minimis* claim solely for the purpose of achieving a forced confirmation over the objection of a creditor'); see also *L & J Anaheim Assocs. v. Kawasaki Leasing Intl., Inc. (In re L & J Anaheim Assocs.)*, 995 F.2d 940, 943 (9th Cir. 1993) ('[T]he plain language of section 1124 says that a creditor's claim is "impaired" unless its rights are left "unaltered" by the plan', and '[t]here is no suggestion here that only alterations of a particular kind or degree can constitute impairment'); accord *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213 (Bankr. D.N.J. 2000); *In re Duval Manor Assocs.*, 191 B.R. 622 (Bankr. E.D. Pa. 1996). See, also, *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 242–45 (3d Cir. 2004) (remanding for further consideration of artificial impairment and good faith after finding that the use of a class consisting of slightly impaired 'stub claims' held by a subset of asbestos claimants that reached a deal with the debtor as the impaired accepting class is problematic); *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274 (5th Cir. 1991) (finding that separate classification of deficiency claims and trade claims was improper in a cram down plan where, among other things, the plan treated the claims the same), cert. denied, 506 U.S. 821 (1992); *Granada*

19

*Wines, Inc. v. New England Teamsters & Trucking Ind. Pension Fund*, 748 F.2d 42 (1st Cir. 1984) (finding that the fact that withdrawal liability does not have the same legal character as other general unsecured claims is not a sufficient basis for distinguishing a pension fund claim from other general unsecured claims where the debtor attempted to use the cram down provision to support a 50 per cent reduction in withdrawal liability); *In re Autterson*, 547 B.R. at 397(finding that where the debtor offered no explanation to justify creating a separate administrative convenience class with only one claim and then impairing the claim by paying US$8,000 instead of US$10,000, the debtor artificially impaired such class); *In re Swartville, LLC*, 2012 WL 3564171, at *5 (finding a debtor artificially impaired claims where the debtor's proposed treatment of the claims was to pay them in full within 60 days of the effective date notwithstanding clear testimony of the debtor's manager that the claims could be paid immediately).

65.     Following the above Courts interpretations, and statutory framework, Movants submits, that a plan should be denied confirmation, since it discriminates unfairly with respect to the dissenting Group wage claimants. *See* 11 U.S.C. § 1129(b)(1); *see In re Dow Corning Corp.*, 244 B.R. 696, 702 (Bankr. E.D. Mich. 1999) ("The unfair discrimination provision of § 1129(b)(1) protects only dissenting classes of creditors."); *see also, e.g., Creekstone Assocs. L.P. v. Resolution Trust Corp. (In re Creekstone Assocs. L.P.),* 168 B.R. 639, 641 (Bankr. M.D. Tenn. 1994); *In re Mortgage Investment Co.,* 111 B.R. at 614 (confirmation denied where there was no demonstrable reason for treating similar claims differently);

66.     *In re Salem Suede, Inc.,* 219 B.R. 922, 933-34 (Bankr. D. Mass. 1998) ("A plan can discriminate, but not unfairly; **any discrimination must be supported by a legally acceptable rationale, and the extent of the discrimination must be necessary in light of the rationale.");**

67.     Since here the plan propose to pay the AFSCME pre-petition claims in full, and without giving a legally acceptable justification, propose to pay the Group wage claims, that arises from final judgments, based on Debtor's violation of state and federal minimum wage laws, and pay them less than a 1% as general unsecured creditors. This is entirely unacceptable and unfairly discriminatory.[25]

---

[25] As to the rate of recovery unsecure creditors will have under the plan, Movants express their objection to the assertion included in the Best Interest Report, (Exhibit N of the Disclosure Statement), not only

**SECOND: The classification scheme was designed based on gerrymandering,** to obtain at last one consenting impaired class

68. In the present case, must be considered that to obtain consensual confirmation of the plan, all classes of creditors must vote in favor of the plan, or be unimpaired, in which case the creditor class is deemed to have accepted the plan. 11 U.S.C. §§ 1129(a)(8) ("The court shall confirm a plan only if . . . (8) With respect to each class of claims or interests– (A) such class has accepted the plan; or (B) such class is not impaired under the plan"); 1126(f) ("[A] class that is not impaired under a plan . . . [is] conclusively presumed to have accepted the plan . . . ."). If the requirement of § 1129(a)(8) is not met – meaning that an impaired class of creditors has voted against the plan – then the plan may only be confirmed under the "cram down" provision of § 1129(b).

68. Before being able to utilize the cram down provisions of § 1129(b), however, § 1129(a) (10) requires that, "at least one class of claims that is impaired under the plan [must] accept [] the plan . . . ." See, e.g., In re Valencia Flour Mill, Ltd., 348 B.R. 573, 576 (Bankr. D.N.M. 2006) ("The Plan cannot be confirmed because it includes an impaired class of claims and no impaired class of claims has voted to accept the Plan."). Requiring that at least one impaired class accept the plan ensures that a cram down plan has a modicum of support from adversely affected creditors; it promotes negotiated, consensual reorganizations, and it prevents confirmation when adversely affected creditors determine it is in their best interest to oppose the proposed plan. E.g., In re Windsor on the River Assoc., Ltd., 7 F.3d 127, 131 (8 Cir. 1993) ("The purpose of [§ 1129(a) (10)] 'is to provide some indicia of support by the affected creditors and prevent confirmation where such support is lacking.'") (citation omitted); In re Gregory Rockhouse Ranch, No. 05-16120, 2007 Bankr. LEXIS 4343 at *13 (Bankr. D.N.M. Dec. 21, 2007) (discussing the purpose of § 1129(a)(10)).

---

because the report is premised in "legal assumptions, estimates and projections" that according to its proponent and financial advisors, at page 101, admits that the reasoning in support of the report, "is subject to business, economic and political uncertainties, and therefore, subject to change" but also because the report fails to explain and in complete lack of support or evidence and should be reviewed for clear error, asserts that the unsecured creditor's debt is in the amount of "8 million dollars, and therefore, the unsecured creditors will obtain a 100% recovery.

Also, because the report fails to report and disclose the significant cost and compensation to be paid post-effective date of the Plan confirmation, to the Oversight Board, officers and insiders, including the fees and expenses associated with a plan administrator and/or disbursing agent, as required under section 1129 (a) (5) of the Bankruptcy Code and are critical to stablish any restructuring transaction, since those fees run in the millions, and hundreds of thousands of dollars and limit the distribution to creditors.

69.    Therefore is important to bring to the Court consideration, that in the present case, the pertinent facts cannot be taken in isolation, due to the complexities of the bankruptcy case. Particularly because here is important to take into consideration the particular situation that arises in view of the proposed Plan Support Agreement (PSA), negotiated by the Oversight Board with the American Federation of State, County and Municipal Employees International Union, AFL-CIO (AFSCME), on which said organization will receive the sum of $ 5,000,000.00, in cash, among other concessions, to solicit among its member to endorse the plan approval.

70.    Movants oppose said PSA agreement, because the allocation of funds might violate the bankruptcy absolute priority rule since represents of an allocation of the debtor's value to an outsider and are funds that would otherwise be distributed to group claimants. [26]

71.    Also, and more important, and is a matter of high concern, because the agreement was entered, before the debtor obtained a court –approval of the Disclosure Statement, and must be carefully scrutinized, since is predicated out of inaccurate information and coercive features designed to seek to commit to supporting a plan. Also because , by offering employees the payment of a cash bonus of 1,000.00 for supporting the plan, notwithstanding might arise an obvious conflict of interest, due to the fact that Movants, with allowable wage claims included in class 55, were to vote in favor of confirming the plan, actually will be resigning their legal , equitable and contractual rights to which the claim entitles the holder and to receive the proper rate of recovery, due the Plan actual classification scheme.

72.    Movants submit this court should police such transaction more carefully, since do not respond to an adequate business judgement, due to the fact that said bonus does not seek the employee's compromise to deliver more efficient services, but is solely for purpose of acceptance of the plan. In addition, and as pertinent to the classification scheme here under analysis, because giving the size of Movants group, there should be no dispute that would control the outcome of class 49, assuming they are placed in class 49, and permitted to vote.

73.    In view of the particular facts, is pertinent to bring to the consideration of this Court that also arises the question as to whether class 49 was artificially impaired in the

---

[26] See Exhibit F disclosure statement.

present case, since as explained by the Court of Appeals for the Fourth Circuit in Schwarzmann, 1996 U.S. App. LEXIS 31262 at *9, despite the broad language of § 1124, some courts do not allow debtors to "artificially impair" a class of creditors in an effort to circumvent the requirements of § 1129(a)(10). Artificial impairment occurs when a debtor proposes "an insignificant impairment on a certain class of creditors in order to qualify them as impaired under § 1124." Id.

74.     Here, the Debtor have not explained in the disclosure statement, why AFSCME class is impaired under the plan, since the Plan provides, among other terms, for full payment of the AFSCME employees claim within 30 or 60 days .,,,,,,,,,

75.     Therefore, the Group Creditors submits that here, is no impairment to the claims of AFSCME, since the plan language provides full payment for AFSCME claims, there is no basis for a determination of impairment under § 1124(1) and therefore, said class should not be considered for voting under § 1129(a)(10).

76.     To the contrary, the only truly impaired creditor under the Debtors' plan are the Group wage creditors

77.     Because in the Disclosure statement does not provide any information regarding the number of allowable AFSCME employee Claims and individual claim value and neither provide any information regarding the reason why Debtor determined class 49 is impaired, Movants submits that under mention circunstances, this bankruptcy court can and should address such abuses, by denying the plan confirmation on the grounds that the plan has not been 'proposed in good faith'.

78.     Movants here have to insist in that the Amended Plan that the Oversight Board filed on May 11, 2021 flouts binding First Circuit precedent, pursuant to which all unsecured creditors with substantially similar claims against the debtor must be treated equally. The First Circuit follows the "strict" rule of classification, under which . All substantially similar claims *must* be classified together; the debtor does not have the option of splitting substantially similar claims into different classes and giving them different treatment and recoveries under the plan.

79.     Consequently, we submit that singling out a claim for special treatment (as here with AFSCME) amount unfair discrimination. *In re Tucson Self-Storage, Inc.*, **166 B.R. 992, 898** (9th Cir. BAP 1994).

23

80.    Based on said principles, Movants wage claims must be classify together with AFSCME employees claims, in order to ensure Movants receive the same percentage on their wage claims, as the Oversight Board will pay AFSCME employees in Class 49.

81.  In the present case, having the First Circuit adopted a strict approach to classification of claims,  as a matter of law, a plan **must** classify together all substantially similar claims, regardless of the debtor's intent" see, In re Nat'l/Northway Ltd. P'ship, 279 B.R. 17, 30 (Bankr. D. Mass. 2002).

### The consideration and treatment provided to other general unsecured claims that were excluded from class 55 and that are being transferred to the ACR procedure

82. Just as plans vary from case to case, so too do the forms of wage discrimination vary an to give another example of the unfair discriminatory treatment the Group wage creditors are confronting in the present case, is important to bring to the consideration of this Court, that on October 8, 2019, the Debtors filed a Motion for Entry of an Order (A) Authorizing Administrative Reconciliation of Certain Claims, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief [ECF No. 8827] (the "ACR Motion"). The ACR Motion seek approval of ACR procedures (the "ACR Procedures") that would allow the Commonwealth, ERS, HTA, PREPA, and PBA, through the Oversight Board, and/or the Title III Court to permit certain types of claims which are administrative in nature—including tax refund claims, union grievance claims, public employee claims, and pension claims—to be resolved by the existing administrative processes. At the October 30, 2019 omnibus hearing, the Title III Court provisionally approved the ACR Motion, pending the submission of revised proposed ACR Procedures. On March 12, 2020, the Title III Court issued an order approving the revised proposed order [ Docket no. 12274 ].

83.    As informed in the Disclosure Statement, the Debtors, to this date, have filed eight notices of transfer, transferring 20,179 claims into the ACR procedures.[27]

84.    However, and  although the claims of the Group wage creditors arise from the ongoing services rendered under their employment contract with the Commonwealth, and are  among the largest group of employee with  wage claims, to this date have not received a transfer notification to the ACR procedure. There is no explanation or

---

[27] See  Order approving ACR procedures Docket no. 12274  and compare with main document  Disclosure
statement,  (Docket      at Page 244 of 564)

justification in the Disclosure Statement as to why the claims filed by the Group creditors have not been transfer or are being excluded from a structured settlement of the ACR process.

85. Therefore, is important to bring to the consideration of this Court that a significant number of creditors, who are also accumulated in the group wage claim litigation, but filed by themselves proof of claims, regarding the same cause of action, are currently receiving Notices informing them that their claims have been transferred to the ACR procedure or to the ADR procedure[28].

86. This is another reason for this Court to intervene, since is more than evident that the Board selective and reiterated unreasonable conduct, of trying to disallow Movants wage claims, to avoid the payment of Movants claims, is a clear intent to nullify Movants constitutional and contractual rights, as public employees.

87. Also because in view of the lack of adequate information provided in the Disclosure Statement, not only regarding the guidelines for the claim selection process but also, regarding the number of claims settled, and regarding the "approximate rate of Recovery of the transferred Claims, require this Court intervention since might lead to abuse, is exacerbated because the truncated process usually only reflects the demands of a select few to the procedural exclusion of all others.

88. Similar concerns arises from the unsupervised selection and stipulation process being observed regarding the claims being transferred to the Alternative Dispute Resolution process, since here is a potential for abuse, is exacerbated because the truncated process usually only reflects the demands of a select few to the procedural exclusion of all others, in view of lack of guidelines of the alternative dispute resolution

---

[28] As an example of group claimants that have received notices of transfer to the ACR procedures we identify the followings: Claim no. 71643 filed by Morales Perez, Wanda I.; Claim no, 11197 filed by Morales Vazquez, Marina and Claim no. 52082 filed by Melendez Negron, Maribel, who are claimants in case the case of Francisco Beltran-Cintron et als v Family Department et als.

Group Creditors whose claims have been transferred to the ADR procedures:

(a)Group creditors case Madeline Acevedo-Camacho: Aponte Calderón, Isabel - Claim no. 25052; Candelario ortiz, Alba L. - Claim no. 45925 Cordova Gonzalez, Jose L. Claim 158493; Hernandez Rofriguez Anette – Claim no. 35758; Maldonado Fontanez, Maritza – Claim no. 80639; Marcano ............Luis Claim no. ..............; Nieves Nieves, Luis - Claim no. 79162; Rivera Vazquez, Daisy – Claim no. 156533; Rodriguez Lopez, Carmen Milagros - Claim no. 160125; Velez Martinez, Elizabeth Claim no. 84203 and (b) From the case Francisco Beltran – Cintron: Crespo Lopez, Ramonita - Claim no. 124590; Hernandez Hernandez, Edwin – Claim no. 48985; Melendez Rivera, Mari Liis - Claim no. 105918; Nieves Perez, Mariana - Claim no. 69315; Ortiz Lopez, Luz C. – Claim no, 155094

25

(ADR) procedures, to resolve certain general unsecured claims, outside the bankruptcy process.

89. Pursuant to the ADR Order, the Debtors have filed to this date "Thirteenth notices transferring claims into the ADR Procedures.

90. To this date only one settlement have been informed, for a total value of $500,000.00 (see First Informative Motion of the Financial Oversight and Management Board for Puerto Rico regarding Resolution pf Proofs of Claims Pursuant to Alternative Dispute Resolution Procedures (Docket no. 16705).

91. For this reasons, and considering the thousands of unsecure claims Movants submit that the ACR and ADR procedures present a problem not only of effective management of claims, but concerning the Debtors fiduciary duties, and evaluating the individual transactions, since exists a world of possibilities were the Debtor might be doing out of court settlements, and distributional choices to favor -----creditors and were this Court is in no position to intervene. That is why many courts have refused to allow this distributions on the ground that they circumvent the Codes procedural safeguards

91. Also because can be interpreted as an attempt to "short circuit the requirement of the Bankruptcy Code for confirmation of a reorganization plan , because proposes structural dismissal altering the rights of the parties without their consent and lacks many of the codes most important safeguards, In re Biolitec, Inc., 528 B.R. 261, 269 (Bkrtcy. Ct. NJ 2014).

92. Also because the Supreme Court has recently raised concerns about devises that use procedural shortcuts to evade this structure dismissal of claims, and should be monitorized in order to guarantee adequacy and fair distribution of values and the need of procedural safeguards, in *Czyzewski v. Jevic Holding Corp,* 580 U.S. 986 (2017).

## CONCLUSION

93. In light of the foregoing, Movants hereby contends that in this case, the debtor has not carried its burden of proof to demonstrate that the discrimination in the classification of the Group Creditors is fair. Consequently, the Court should deny confirmation of the plan as it currently exists.

WHEREFORE, the Movants respectfully request this Court to enter an order granting the relief requested herein and further granting such other relief as may be just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 15 th day of June, 2021

## NOTICE

Notice of this Motion has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United State Attorney for the District of Puerto Rico; (iii) the Oversight Board; (iv) the Puerto Rico Fiscal Agency and Financial Advisory Authority; and (v) all parties that have filed a notice of appearance in the Title III Cases.

## NO PRIOR REQUEST

Other than in the Original Joint Rule 3013 Motion, no previous request for the relief requested herein has been made to this or any other court.

WHEREFORE, Movants respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested in this Motion and granting such other relief as the Court deems just and proper.

Dated: June 15, 2021

By: /s/ IVONNE GONZALEZ-MORALES
IVONNE GONZALEZ-MORALES
USDC NUM: 202701
E-mail: ivonnegm@prw.net

IVONNE GONZALEZ MORALES
PO BOX 9021828
SAN JUAN, PR 00902-1828
Tel. (787) 410-0119

Attorney for Group Wage Creditors

27

**EXHIBIT A**

**PROPOSED ORDER**

28

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

In re:

THE FINANCIAL OVERSIGHT AND                    PROMESA

MANAGEMENT BOARD FOR PUERTO RICO,       TITLE III

THE COMMONWEALTH OF PUERTO RICO,         Case No. 17-BK-3283

et. als.                                                             (LTS)

Debtors[29]

---

**ORDER GRANTING  MOTION OF GROUP WAGE CREDITORS' PURSUANT
TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013 FOR ENTRY OF
AN ORDER RECLASSIFYING TOGETHER GROUP WAGE CLAIMS
CURRENTLY INCLUDED IN  CLASS 55 WITH CM GENERAL UNSECURED
CLAIMS, WITH CLASS 49 AFSCME EMPLOYEE CLAIMS,  UNDER
OVERSIGHT BOARD'S PROPOSED THIRD PLAN OF ADJUSTMENT
DATED MAY 11, 2021**

This matter is before the Court on the Renewed Motion of Group   Wage
Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of an Order
Reclassifying together Group Employees wage Claims included in Class 55 with
AFSSCME Class 49 claims, Under Oversight Board's Plan of Adjustment Dated May
11, 2021 (the "Renewed Motion").

Upon consideration of the Group Wage Creditor's  Motion, the accompanying
papers and pleadings, any oppositions thereto, and argument thereon, and the Court
having found and determined that: (i) the Court has jurisdiction to consider the
Renewed Motion and the relief requested therein pursuant to sections 306(a) of
PROMESA and Bankruptcy Rule 3013, as incorporated by section 310 of PROMESA;
(ii) venue is proper before this Court pursuant to PROMESA section 307(a); (iii) due
and proper notice of this  Motion has been provided under the particular circumstances
and no other or further notice need be provided; and (iv) good cause having been
shown, it is hereby ORDERED that:

1.    The Group Wage Creditor's Motion is GRANTED as set forth herein.

---

2. For the purposes of any plan of adjustment the group wage claims that have been included with the general unsecured wage claims currently classified in Class 55 must be classified in the same class as the AFSCME employee claims in Class 49.

3. The Debtors are directed to file a revised Third Amended Plan and revised Third Amended Disclosure Statement reflecting the reclassification of group's claimants wage claims.

4. Nothing in this Order shall be construed as waiving the Group creditor's rights with respect to the proper classification of other claims.

5. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____ __, 2021

_____
HONORABLE   LAURA   TAYLOR   SWAIN
UNITED STATES DISTRICT JUDGE