# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283 (LTS) |

## MEMORANDUM OF DECISION AND ORDER ON OFFICIAL COMMITTEE OF UNSECURED CREDITORS' URGENT MOTION TO COMPEL DISCLOSURE STATEMENT DISCOVERY FROM OVERSIGHT BOARD AND AAFAF

June 15, 2021

DEIN, U.S.M.J.

## I.  INTRODUCTION

This matter is before the Court on the *Official Committee of Unsecured Creditors' Urgent*

*Motion to Compel Disclosure Statement Discovery from Oversight Board and AAFAF* (Dkt No.

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK- 3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

16811) (the "Motion").[2]  The Court has also received and reviewed objections to the Motion

filed by the Financial Oversight and Management Board for Puerto Rico (Dkt. No. 16883) (the

"FOMB Obj.") and the Puerto Rico Fiscal Agency and Financial Advisory Authority (Dkt. No.

16878) (the "AAFAF Obj.") and the Committee's reply (Dkt. No. 16906) (the "Reply").  Through

the Motion, the Committee seeks document discovery and deposition testimony from the

FOMB and, if necessary, AAFAF, in connection with the *Disclosure Statement for the Third

Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (Dkt. No.

16741) (the "Disclosure Statement").  The Court has carefully considered the parties'

submissions and for the reasons detailed herein, DENIES IN PART and ALLOWS IN PART the

Motion in accordance with this Order.

## II. BACKGROUND

### A. The Plan of Adjustment, Disclosure Statement, and Related Motion Practice

On March 8, 2021, the Oversight Board filed the Second Amended Plan of Adjustment

(Dkt. No. 15976) and the Disclosure Statement for the Second Amended Plan of Adjustment

(Dkt. No. 15977).  On May 11, 2021, after additional agreements were reached with holders of

bonds issued by ERS, and holders and insurers of bonds issued by HTA and CCDA, the Oversight

Board filed a Third Amended Plan of Adjustment (Dkt. No. 16740) and the Disclosure Statement

for the Third Amended Plan of Adjustment (Dkt. No. 16741).  The Disclosure Statement for the

Third Amended Plan of Adjustment is the operative Disclosure Statement.

On April 6, 2021, the Oversight Board filed a motion seeking an order from the Title III

Court to, *inter alia*, schedule briefing and a hearing to consider the adequacy of the Disclosure

---

[2] Capitalized terms not defined herein shall have the meaning given to them in the Motion.

Statement (Dkt. No. 16332, the "Disclosure Statement Scheduling Motion").  The Court allowed

the Disclosure Statement Scheduling Motion and entered a briefing schedule which requires

objections to the Disclosure Statement to be filed by June 15, 2021.  See Dkt. No. 16681.  The

Court also scheduled a hearing on the adequacy of the proposed disclosure statement for July

13, 2021.  See id.

**B. The Committee's Discovery Requests and the Motion to Compel**

The Committee has served two sets of discovery requests on the Oversight Board, and

one set of discovery requests on AAFAF.  The first set of requests to the Oversight Board was

served on April 23, 2021, following the Oversight Board's filing of the Second Amended Plan of

Adjustment and Disclosure Statement (the "First Set of Requests"), and included document

requests and deposition notices to the Oversight Board and two of its members, David Skeel,

and Justin Peterson.  The Oversight Board did not immediately respond to the First Set of

Requests.  On May 14, 2021, after the filing of the Third Amended Plan of Adjustment and

Disclosure Statement, the Committee served a second set of document requests on the

Oversight Board (the "Second Set of Requests"), and a first set of document requests on AAFAF

(the "AAFAF Requests").  See Mot. ¶¶ 13-21.

The Committee characterizes its requests to the Oversight Board as seeking information

concerning (1) the expected rate of recovery for Commonwealth general unsecured claims, (2)

the classification of Commonwealth general unsecured claims, (3) consideration provided to

other creditors, (4) information regarding other sources of value that could be used to pay

general unsecured creditors, (5) the value, payment, and terms of payment of specific claims

pursuant to the Disclosure Statement, (6) the obligations and financial viability of the

Commonwealth going forward, in light of the Disclosure Statement, and (7) certain terms, provisions and calculations in the Proposed Plan.  See id. ¶¶ 37-53.  Upon review of the requests, however, many seek information as to the Oversight Board's rationale and decision making behind particular provisions of the Proposed Plan, whether unsecured creditors could recover more under alternative scenarios, and whether there are other Commonwealth assets available to unsecured creditors.   Similar requests were made to AAFAF, seeking "certain documents related to the Disclosure Statement that the Committee believes are within the custody, possession, or control of AAFAF or its advisors."  Id. ¶ 21.

The Oversight Board served responses and objections to the discovery requests, and the parties exchanged correspondence and conducted telephonic meet and confers regarding the discovery requests.  See id. ¶¶ 22-26; FOMB Obj. ¶¶ 17-22.  AAFAF objected to the AAFAF Requests through written correspondence with counsel, and participated in the various meet and confers with the Oversight Board and the Committee.  See AAFAF Obj. ¶ 14, n.4.[3] Ultimately, the parties reached an impasse on certain requests, and the Committee filed the Motion, which seeks to compel responses to the First Set of Requests and the Second Set of Requests, and responses, to the extent not produced by the Oversight Board, to the AAFAF Requests.[4]

Since the filing of the Motion, the parties have continued to meet and confer and

---

[3] The Court is not persuaded by the Committee's argument that AAFAF waived its right to object to the AAFAF Requests, as AAFAF's letters to counsel to the Committee clearly evince objections to the AAFAF Requests, and the deadline for AAFAF's objections to the AAFAF Requests was not until June 14, 2021. See AAFAF Obj. ¶ 14, n.4.

[4] The details of the parties' negotiations, their meet and confer process, and the filing of the Motion to Compel are contained in the parties' submissions and the Court will not recount it herein.

appear to have reached an agreement with respect to certain disputed topics and are

continuing to confer with respect to other topics.  The Oversight Board has also agreed to

consider additional disclosures proposed by the Committee.  See FOMB Obj. ¶ 30.  The Court

understands the parties' current positions to be reflected in the chart attached to the

Committee's Reply as Appendix A (Dkt. No. 16906-1).

C.  **The Disclosure Statement Depository**

As part of the Disclosure Statement Scheduling Motion, the Oversight Board also sought

court approval to create a "Disclosure Statement Depository to make available for creditors

'factual source material underlying the Disclosure Statement (including but not limited to

factual source materials underlying the cash restriction analysis, the best interest tests reports,

and the Section 211 report attached to the Disclosure Statement), as well as documents

relating to the nature of claims and classification under the Plan.'"  FOMB Obj. ¶ 11 (quoting

Disclosure Statement Scheduling Motion).  Additionally, the Oversight Board sought to make

documents available to creditors using a separate access point, or SFTP.  Id.  The Court

authorized the Oversight Board to create both the Disclosure Statement Depository and the

SFTP.  Id. ¶ 12.

The Oversight Board represents that the Disclosure Statement Depository currently

contains over 11,000 documents, separated into folders related  to a number of topics,

including factual source materials and raw data underlying certain factual statements in the

Disclosure Statement, a summary of certain creditor recoveries and allocations by class, bond

offering statements associated with certain issuances of bonds by the Commonwealth, ERS, and

PBA, factual source material and raw data supporting the Oversight Board's ongoing cash

5

restriction analysis, documents relating to certain Commonwealth non-cash assets, documents

relating to the Commonwealth's pension liabilities, and factual source materials relating to the

Oversight Board's best interests test analysis.  See id. ¶ 13.

### III. DISCUSSION

#### A. Legal Standard for Approval of the Disclosure Statement

"Before a debtor submits a plan to the creditors for approval, the debtor must give the

creditors a disclosure statement containing 'adequate information.'" Westland Oil Dev. Corp. v.

MCorp Mgmt. Sols., Inc., 157 B.R. 100, 102 (S.D. Tex. 1993) (citing 11 U.S.C.S. § 1125(a) (1987)).

"Both bankruptcy courts and creditors rely on a debtor's disclosure statement in determining

whether to vote for or approve a proposed plan of reorganization." In re ACEMLA de Puerto

Rico Inc., C.A. No. 17-02021-ESL, 2019 WL 311008, *14 (Bankr. D.P.R. Jan. 22, 2019) (quotation

omitted).  "Creditors rely on the disclosure statement to determine what distribution or other

assets they will receive and also what risks they will face.  Accordingly, the importance of full

and honest disclosure is critical and cannot be overstated." Id. (quotation omitted).  See also

Westland Oil, 157 B.R. at 102 (citing 5 Collier on Bankruptcy, ¶ 1125.03 (15th ed. 1992)

("Disclosure is the 'pivotal' concept in chapter 11 reorganization.").

11 U.S.C § 1125 governs the filing and approval of a disclosure statement.  11 U.S.C. §

1125(b) provides that "[a]n acceptance or rejection of a plan may  not be solicited after the

commencement of the case under this title from a holder of a claim or interest with respect to

such claim of interest, unless, at the time of or before such solicitation, there is transmitted to

such holder the plan or a summary of the plan, and a written disclosure statement approved,

after notice and a hearing, by the court as containing adequate information."  11 U.S.C. §

6

1125(a) defines "adequate information" as

> information of a kind, and in sufficient detail, as far as is reasonably practicable
> in light of the nature and history of the debtor and the condition of the debtor's
> books and records. . . that would enable such a hypothetical investor of the
> relevant class to make an informed judgment about the plan, but adequate
> information need not include such information about any other possible or
> proposed plan and in determining whether a disclosure statement provides
> adequate information, the court shall consider the complexity of the case, the
> benefit of additional information to creditors and other parties in interest, and
> the cost of providing additional information[.]"

"The determination of whether the disclosure statement contains adequate information
is made on a case-by-case basis." In re Fullmer, No. 09-50086-RLJ-11, 2009 WL 2778303, at *2
(Bankr. N.D. Tex. Sept. 2, 2009) (citing In re Tex. Extrusion Corp., 844 F.2d 1142, 1157 (5th
Cir.1988), cert. denied, 488 U.S. 926 (1988)).  The "adequacy of the disclosure is dependent
upon various factors including: the size and complexity of the chapter 11 case, the type of plan
proposed, the type of creditors and claims impaired by the proposed plan, and the access by
impaired creditors to relevant information from other sources." In re El Comandante Mgmt.
Co., LLC, 359 B.R. 410, 415 (Bankr. D.P.R. 2006) (quotation omitted).  To that end, "the decision
to approve or reject a disclosure statement is within the discretion of the bankruptcy court."
Id. (quotation omitted).

## B.   Discovery in Connection with the Disclosure Statement

The parties agree that the filing of an objection to a disclosure statement creates a
contested matter that is subject to the discovery standard laid out in Rule 26 of the Federal
Rules of Civil Procedure.  See Reply ¶ 8; Fed. R. Bankr. P. 9014(c) (applying Part VII Rules to
contested matters, including Fed. R. Bankr. P. 7026, which incorporates Fed. R. Civ. P. 26).
Under Rule 26, discovery is permitted on "any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case, considering the importance

of the issues at stake in the action, the amount in controversy, the parties' relative access to

relevant information, the parties' resources, the importance of the discovery in resolving the

issues, an whether the burden or expense of the proposed discovery outweighs its likely

benefit."  Fed. R. Civ. P. 26(b)(1).

The question presented at the disclosure statement phase, that is, whether the

disclosure statement contains "adequate information," is distinct from the broader issues

presented at plan confirmation, and therefore generally does not warrant expansive discovery.

See In re Am. Cap. Equip., LLC, 688 F.3d 145, 148 (3d Cir. 2012) ("Ordinarily, confirmation issues

are reserved for the confirmation hearing, and not addressed at the disclosure statement

stage.") (quotation omitted); In re Scioto Valley Mortg. Co., 88 B.R. 168, 172 (Bankr. S.D. Ohio

1988) ("If the creditors oppose their treatment in the plan, but the Disclosure Statement

contains adequate information, issues respecting the plan's confirmability will await the

hearing on confirmation.").[5]  In determining whether the Disclosure Statement is adequate, the

court must assess whether creditors are able to understand the terms and conditions of the

---

[5] Creditors may also argue in their disclosure statement objections that the disclosure statement
describes a plan that is "patently unconfirmable."  See In re American Capital Equip. LLC, 688 F.3d 145,
155 (3d Cir. 2012) (holding that "a bankruptcy court may address the issue of plan confirmation where it
is obvious at the disclosure statement stage that a later confirmation hearing would be futile because
the plan described by the disclosure statement is patently unconfirmable," but warning that bankruptcy
courts "must take care to not prematurely convert a disclosure statement hearing into a confirmation
hearing."); In re Mercado, No. BAP 13-021, 2013 WL 7118236, at *5 (B.A.P. 1st Cir. Nov. 20, 2013) ("To
satisfy its burden, a chapter 11 debtor need not show that its plan of reorganization is confirmable;
rather, it must establish that its proposed plan has a realistic chance of being confirmed and is not
patently unconfirmable.").  Patent unconfirmability arguments, however, are legal arguments based on
the face of the disclosure statement and thus do not require discovery.  See In re FirstEnergy Sols. Corp.,
606 B.R. 720, 732 (Bankr. N.D. Ohio 2019) ("Patent unconfirmability is treated as a matter of law.").

Disclosure Statement so that they can "determine what distribution or other assets they will

receive and also what risks they will face." In re Acemla De Puerto Rico Inc., 2019 WL 311008 at

*14 (citation omitted).  In contrast, at the plan confirmation stage, the Title III Court will analyze

much broader issues, for example whether the Proposed Plan meets the requirements of

PROMESA Section 314, including whether it is "feasible and in the best interests of creditors."

48 U.S.C. § 2174(b).  Thus, the scope of appropriate discovery in connection with the Disclosure

Statement is much more limited than the scope of appropriate discovery in connection with

plan confirmation hearings.

　　　　In the instant case, while the Committee purports to need the requested discovery to

formulate its objections to the Disclosure Statement,  a review of the document requests

establishes that the vast majority are directed to challenges to the confirmability of the

Proposed Plan, investigation of the rational for proposing this particular plan, and to the

Committee's contention that there are alternatives that are better for the unsecured creditors.

For example, but without limitation, many of the Committee's discovery requests seek

information to test the accuracy of the factual underpinnings of the proposed plan as explained

in the Disclosure Statement, or to challenge the settlements reached with other parties.  To the

extent that such issues are appropriate for consideration by the Court (about which this Court

expresses no opinion), it would be at the confirmation stage, and not in connection with

challenges to the Disclosure Statement.

　　　　As detailed herein, this Court will limit discovery in connection with the Disclosure

Statement to topics necessary to ensure that the Disclosure Statement provides the Committee

and its constituents with sufficient information to understand how general unsecured creditors

will be treated under the Proposed Plan, and for the Committee to make a recommendation to

its constituents as to how to vote on the Proposed Plan.  See In re Scotio Valley Mortg., 88 B.R.

at 172 (In the disclosure statement, the debtor must "disclose all pertinent information so that

such holders can cast an informed vote accepting or rejecting the plan.  That is all the Code

requires.").  The distinction between discovery related to the Disclosure Statement and plan

confirmation discovery is particularly appropriate in the instant case, where there will be a

large number of creditors who will need access to the plan confirmation discovery so that

coordinated efforts will be needed.  In addition, it is likely that plan confirmation discovery will

begin soon.

Applying these principles, this Court rules as follows.

**C. Preliminary Issues**

First, the parties dispute whether the Committee is entitled to take discovery from

AAFAF in connection with the Disclosure Statement.  The Committee served document requests

on AAFAF because "the Committee has no way of knowing which party [as between the

Oversight Board and AAFAF] possesses the information the Committee seeks[.]"  Mot. ¶ 61.

The Committee is not, however, attempting to obtain duplicative discovery from the Oversight

Board and AAFAF, and only seeks documents from AAFAF that are not in the possession of the

Oversight Board.  Id.  AAFAF argues that, while it "will cooperate with the FOMB to make the

appropriate information available," "[n]o Court order is necessary to require AAFAF's

cooperation on this point given FOMB's powers[,]" and, in any event, AAFAF is not a "debtor"

and did not propose the Disclosure Statement, and therefore should not be subject to any

discovery requests.  AAFAF Obj. ¶¶ 13-14.

In light of AAFAF's role in these Title III proceedings and the fact that the Committee is unable to determine whether the documents it seeks are in the possession of the Oversight Board or AAFAF, this Court is not persuaded that AAFAF is exempt from discovery in connection with the Disclosure Statement, and hereby orders AAFAF to coordinate with the Oversight Board to produce non-duplicative documents responsive to the Committee's requests, as required herein.

Second, the Oversight Board argues that, because the Committee plans to recommend to its constituents to vote to reject the Proposed Plan, discovery in connection with the Disclosure Statement "is therefore unnecessary because it will make no difference as to how the Committee will recommend its constituency to vote." FOMB Obj. ¶ 28. This argument is not persuasive. The Committee is statutorily required to provide its constituents with a voting recommendation, and in order to do so, the Committee must be able to interpret the Disclosure Statement and the Proposed Plan for its constituents, and to explain how its constituents will be treated under the Proposed Plan. Therefore, the Committee will be allowed the limited discovery described below.[6]

## IV. <u>SPECIFIC RULINGS</u>

The Court makes the following specific rulings with respect to the Committee's First and Second Sets of Requests a to the Oversight Board. As discussed above, the Oversight Board and

---

[6] In the Motion, the Committee represents that the Oversight Board objected to producing documents in the custody, possession, or control of its advisors, and the Committee argues that the Oversight Board has an obligation to identify and produce documents from its advisors, including its counsel, PJT Partners, and EY, that are responsive to the Committee's requests. <u>See</u> Mot. ¶ 59. The Oversight Board does not address this issue in its Objection, and it is also not discussed in the Committee's Reply. Accordingly, the Court will not address this issue and assumes it is no longer in dispute.

AAFAF should coordinate their efforts in ensure that the production required herein is

complete; the motion to compel discovery from AAFAF is granted to that extent.  The rulings

track the groups addressed in the Committee's Motion.

**A. Requests Related to the Expected Rate of Recovery for Commonwealth General Unsecured Claims**
1. First Set of Requests:
    Request No. 1: The Oversight Board must produce the documents it has agreed to produce within seven days of the date of this Order.[7]  Otherwise DENIED as not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement.

    Request No. 2: The Oversight Board must produce the documents it has agreed to produce within seven days of the date of this Order.  Otherwise DENIED as not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement.

    Request No. 52: The Oversight Board must produce the documents it has agreed to produce within seven days of the date of this Order.  Otherwise DENIED as not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement.

    Request No. 53: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

**B. Documents related to the classification of Commonwealth general unsecured claims**
1. First Set of Requests:
    Request No. 3: The Oversight Board must produce documents sufficient to demonstrate which types of unsecured claims are included in and excluded from Class 55 within seven days of the date of this Order.  Otherwise DENIED.

    Request No. 8: The Oversight Board has produced documents sufficient to satisfy this request.

---

[7] References herein to documents that the Oversight Board has agreed to produce refer to the agreements contained in Appendix A to the Committee's Reply (Dkt. No. 16906-1).

Request No. 34: The Oversight Board has agreed to produce documents responsive to this request and the parties shall confer as to the appropriate scope of responsive documents.

Request No. 50: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

**C.  Documents related to the consideration provided to other creditors**

1.  First Set of Requests:

Request No. 11: The Oversight Board must produce the documents it has agreed to produce within seven days of the date of this Order.  Otherwise DENIED as not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the court's inquiry on the question of approval of a disclosure statement.

Request No. 12: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 13: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 14: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 15: The Oversight Board must produce the documents it has agreed to produce within seven days of the date of this Order.  Otherwise DENIED as not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement.

Request No. 16: The Oversight Board must produce documents sufficient to identify all terms of the PBA Settlement within seven days of the date of this Order, to the extent it has not already done so, and shall meet and confer with

the Committee to determine if additional disclosures are appropriate.  The
Request is DENIED to the extent it seeks an explanation of the Oversight Board's
decision to no longer  seek approval of such settlement through a Rule 9019
Motion as not proportional to the needs of the case at this disclosure statement
phase, given the limited scope of the Court's inquiry on the question of
approval of a disclosure statement.

Request No. 17: The Oversight Board must produce the documents it has agreed
to produce within seven days of the date of this Order.  Otherwise DENIED as
not proportional to the needs of the case at this disclosure statement phase,
given the limited scope of the Court's inquiry on the question of approval of a
disclosure statement.

Request No. 18: The Oversight Board must produce a list of the PBA Properties
and the value of such properties within seven days of the date of this Order.

Request No. 19: Given the limited scope of the Court's inquiry on the question of
approval of a disclosure statement, this request calls for information that is not
proportional to the needs of the case at this disclosure statement phase.  It is
therefore DENIED.

Request No. 21: Given the limited scope of the Court's inquiry on the question of
approval of a disclosure statement, this request calls for information that is not
proportional to the needs of the case at this disclosure statement phase.  It is
therefore DENIED.

Request No. 25: Given the limited scope of the Court's inquiry on the question of
approval of a disclosure statement, this request calls for information that is not
proportional to the needs of the case at this disclosure statement phase.  It is
therefore DENIED.

Request No. 26: The Oversight Board has appropriately responded to this
request and no additional documents are necessary.  The Oversight Board shall
meet and confer with the Committee to determine if additional disclosures are
appropriate.  The Request is DENIED to the extent the Committee seeks
documents related to the Oversight Board's analyses underlying such
disclosures as not proportional to the needs of the case at this disclosure
statement phase.

Request Nos. 27 – 32: Given the limited scope of the Court's inquiry on the
question of approval of a disclosure statement, this request calls for

information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 51:   The Court accepts the Oversight Board's representation that it has produced all information in its possession responsive to this Request.

Request No. 56: The Oversight Board's offer to include additional disclosures is sufficient and no additional documents are necessary at this time.

Request No. 57: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 58: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

2.   Second Set of Requests:

Request No. 7: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 8: The Oversight Board must produce the documents it has agreed to produce within seven days of the date of this Order.

Request No. 9: The Oversight Board must produce the documents it has agreed to produce within seven days of the date of this Order.

Request No. 10: The Oversight Board's offer to include additional disclosures is sufficient and no additional documents are necessary at this time.

Request No. 11: The Oversight Board's offer to include additional disclosures is sufficient and no additional documents are necessary at this time.

Request No. 16: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

**D.  Documents regarding other sources of value that could be used to pay general unsecured creditors**

1.  First Set of Requests:

Request No. 41: The Oversight Board must produce the documents it has agreed to produce on a rolling basis.

Request Nos. 42-48: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 54:  Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

2.  Second Set of Requests:

Request No. 12: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

**E.  Miscellaneous Topics**

1.  First Set of Requests:

Request Nos. 4-6: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 7: The Oversight Board's offer to include additional disclosures is sufficient and no additional documents are necessary at this time.

Request No. 9: The Committee has withdrawn this request.

Request No. 20: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 22: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not

proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 23: The Oversight Board's offer to include additional disclosures is sufficient and no additional documents are necessary at this time.

Request No. 24: The Oversight Board's offer to include additional disclosures is sufficient and no additional documents are necessary at this time.

Request No. 33: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 49: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 55: The Oversight Board has produced the Best Interests Test.

Request No. 59: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 60: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

2.  Second Set of Requests:

Request Nos. 2-6: The Oversight Board must produce the documents it has agreed to produce within seven days of the date of this Order.

Request No. 14: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

Request No. 15: Given the limited scope of the Court's inquiry on the question of approval of a disclosure statement, this request calls for information that is not proportional to the needs of the case at this disclosure statement phase.  It is therefore DENIED.

## F.  Depositions

The Committee's Motion to Compel deposition testimony from the Oversight Board, David Skeel and Justin Peterson in connection with the Disclosure Statement is DENIED.  Given the limited scope of the Court's determinations with respect to the adequacy of the Disclosure Statement, the need for deposition testimony is outweighed by the burden of preparing the deponents to testify and sit for depositions.  The Committee's request for deposition testimony may be renewed in connection with plan confirmation discovery.

## V. JOINDERS

Joinders to the Motion were filed by Salud Integral de la Montana, Inc. (Dkt. No. 16841), AmeriNational Community Services, LLC, as servicer for the GDB Debt Recovery Authority, and Cantor-Katz Collateral Monitor, LLC  (the "DRA Parties") (Dkt. No. 16881) and the Group Wage Claimants (Dkt. No. 16896) (collectively, the "Joinders"), seeking a variety of relief, including in some cases to serve their own discovery requests, participate in depositions, and/or to receive any documents produced to the Committee as a result of the Motion.  The Court ALLOWS the Joinders to the extent they seek access to any information produced to the Committee as a result of the Motion.  In all other respects, the Joinders are DENIED.  These parties have not established a need for independent discovery and any new proposals for discovery in connection with the Disclosure Statement are untimely.

## VI. <u>CONCLUSION</u>

For the reasons provided herein, the Motion to Compel is ALLOWED IN PART and DENIED

IN PART in accordance with this Order.

This Order resolves Dkt. Nos. 16811, 16841, 16881, and 16896.

SO ORDERED.


/s/ Judith Gail Dein
_____
Judith Gail Dein
United States Magistrate Judge