April 9, 2021

**BY E-MAIL**

John J. Hughes III, Esq.
Alex Paslawsky, Esq.
Milbank LLP
55 Hudson Yards
New York, NY 10001-2163

**Re:     Pensions Discovery**

Counsel:

We write in response to your April 6, 2021 letter and to follow up on our April 5, 2021 call.

**Internal Retirement System Email Review**

While we appreciate your letter, it does not provide sufficient specificity to justify a review of internal retirement system emails regarding Milliman's pension calculations.  For the reasons we have explained by letter and during our April 5 call, and as further explained below, our position has not changed.

As we discussed on April 5, Milliman has agreed to review and produce emails covering the same issues for which you want a review of internal retirement system emails.  Although you contend the review is not duplicative because Milliman's review will not include purely internal retirement system emails, those were not the documents that the email review was intended to find.  Per our discussions since last year, the purpose of an email review was to locate factual information relied on by Milliman for their actuarial work if not already produced.[1]  That purpose (even assuming it justifies an email review) has now been satisfied by Milliman's willingness to produce such documents, including email.  Purely internal emails by retirement system personnel, by definition, are not information relied upon by Milliman or necessary to evaluate a financial issue, like the calculation of pension liabilities by an outside entity.

Because Milliman is responsible for calculating pension liabilities, your requests for email discovery have always been focused on Milliman.  This is evident from your March 2, 2021 letter, which asserted that all emails with Milliman should be reviewed.  Likewise, your April 6, 2021 letter asks for discovery about "**the assumptions and inputs that Milliman relied upon in reaching the conclusions in its actuarial valuation reports.**"  Logically, such documents do not include purely internal retirement system emails.  And Milliman is the most direct source to identify and produce the information it relied on (to the extent such information has not been produced already).

---

[1] Letter to J. Hughes (Dec. 14, 2020) (explaining why no email review is necessary to review pension calculations and stating that we would consider doing a targeted email review for documents "that contain factual information relied on by Milliman that have not been produced yet in connection with the 2016 and 2017 reports").

In addition to conflicting with your prior stated reasons for this discovery, your newfound focus on purely internal emails does not comply with Judge Swain's order limiting Rule 2004 discovery to "core information" as opposed to anything that might possibly be relevant.[2]  Internal retirement system emails are not "core information" for a review of pension calculation work by Milliman.  The core information is what you have already,[3] which Milliman has agreed to supplement to help you understand their work.  If you are aware of an order by Judge Swain or Judge Dein that necessitates an internal email review by the retirement systems, in addition to the Milliman review, please identify it so that we can assess the applicability of the order to these facts.

As also discussed during our April 5 call, we are not aware of any material factual issue that requires a review of internal retirement system emails, let alone before Milliman has finished producing documents.  You asserted that there are errors with the calculation of pension liabilities without specifying the basis for the assertion.  Your April 6 letter also claims there are "data inadequacies" without explanation.  To discharge your meet and confer duties, please specify what the inadequacies are so that we can evaluate whether the issues necessitate more discovery.  As we have repeatedly offered, we are willing to try to help you answer material factual questions.  But that requires more than generalized assertions of the kind stated in your April 6 letter.  It is the same level of specificity the Court would expect of Ambac before granting more discovery and we ask that you provide it now so that we can address whether we are in a position to answer your questions (including through additional documents, email or otherwise) or if the questions are ones better directed to Milliman.

**2018 Milliman Actuarial Valuation Reports**

On the April 5 call, you asserted that you heard from another "party" that AAFAF was "holding up" the release of the FY2018 Milliman actuarial reports.  When asked from whom you heard this, you refused to state the source.  The meet and confer process is not one way.  If you expect us to answer your questions, we expect you to answer ours, too.  Please do so going forward, including providing answers to the questions we have posed in this letter.  Moreover, you cannot expect us to take seriously your claims when you provide no evidence for them.  Your refusal may stem from one of two things: either no source exists, or you suspect that your source is misinformed.  In either event, as we said on the call and have now confirmed, AAFAF is not holding up the release of Milliman's reports.  Consistent with historical practice, the FY2018 Milliman reports will be finalized after the ERS, JRS, and TRS FY2018 financial statements are finalized.  AAFAF and the retirement systems are not delaying that process (nor is the Oversight Board); to the contrary, they are facilitating them.  We currently expect the ERS

---

[2] Case No. 17-3283, ECF No. 10332, at 9.  The scope of Rule 2004 discovery does not turn solely on relevance but also requires proportionality and a consideration of necessity, which Judge Swain recognized by limiting the scope of discovery to core information.  *Id*.  Judge Dein's rulings have been consistent with these principles.  *See, e.g.*, Tr. of Mot. to Compel in Revenue Bond Discovery at 69 (Mar. 17, 2021) (Dein, J.) (declining to order custodian email review and stating that it "would be fine in the world of unlimited discovery, where you could have all your wishes come true, but . . . it is [not] the most efficient way").

[3] As we have discussed, the core information underlying the calculation of pension liabilities is reflected in Milliman's actuarial reports and the applicable census data.  *See, e.g.*, Letter to J. Hughes (Sept. 29, 2020).  Despite that, Ambac has already received more than just those documents and will be receiving even more from Milliman directly.

and TRS financial statements to be released by the end of this month, with the respective Milliman reports to follow sometime in May 2021.  We will let you know once we have more information on the status of the JRS FY2018 financial statement and Milliman report.

**The Oversight Board's November 17, 2020 and February 3, 2021 Letters**

Your April 6 letter does not accurately describe the Oversight Board's statements on the April 5 meet and confer.  Among other things, the Oversight Board stated that it would investigate whether the retirement systems had produced materials to the Oversight Board in response to the February 3, 2021 letter, but did not agree to investigate "whether the Oversight Board has received any other productions of materials from the retirement systems that were not made in connection with the February 3, 2021 letter" (Letter at 2).  Nor will the Oversight Board respond to a vague request to identify productions "not made in connection with" a specific letter.

As promised, the Oversight Board investigated whether it received materials from the retirement systems in response to its February 3, 2021 letter, and confirms it has received materials.  In order to avoid a dispute, the Oversight Board will review and produce to Ambac any non-privileged documents it received in response to that letter.  The review is already underway and, as a result, please note that certain of the non-privileged documents contain personally identifying information—including social security numbers and birthdates—the Oversight Board will redact prior to production.

With respect to the Oversight Board's November 17, 2020 letter, your March 2, 2021 letter requested "all documents provided to the Oversight Board in response to the Board's . . . November 17, 2020 letter."  As explained on the April 6 meet and confer, that request is objectionable for a number of reasons, including because it is overly broad, vague, and appears to seek discovery into the Oversight Board's budgetary development process.

Your April 6 letter modified the request to "materials produced to the Oversight Board in response to the November 17, 2020 letter that provide information regarding the Commonwealth's pension liability."  That request, as stated, remains vague and ambiguous, and potentially seeks discovery regarding the process of developing the FY22 budget.

There is a bigger issue here that we've explained before.  In our view, it is time to bring Rule 2004 discovery to an end.  The Oversight Board believes confirmation discovery is the appropriate vehicle for pension-related requests, and intends to make responsive information available to all creditors interested in confirmation in a coordinated fashion.

Sincerely,

/s/ *Margaret A. Dale*                                                    /s/ *Madhu Pocha*

Margaret A. Dale                                                         Madhu Pocha