# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,** as representative of the<br><br>**COMMONWEALTH OF PUERTO RICO,**<br><br>   Debtor. | **BANKRUPTCY NO. 17-3283** |

### ASOCIACIÓN PUERTORRIQUEÑA DE LA JUDICATURA'S OBJECTION TO DISCLOSURE STATEMENT

**TO THE HONORABLE COURT**:

**APPEARS NOW** the Asociación Puertorriqueña de la Judicatura, Inc. ("APJ"), through the undersigned counsel, and hereby states, alleges, and requests as follows:

**I. STATEMENT OF FACTS**

The APJ is a membership association comprised by acting and retired judges of Puerto Rico's judicial branch. One of its core values is judicial independence and its protection given its vital importance to a republican form of government. The Oversight Board (hereinafter "OB"), on the other hand, was designed to, among other things, devise a timeline for the process of development, submission, approval, and certification of Fiscal Plans for the Commonwealth and any covered territorial instrumentalities.

In 2016, the OB recommended an amendment of the government-proposed draft Fiscal Plan that to reduce pensions by fiscal year 2020. Among these pensions were the judicial branch pensions. Specifically, the OB provided that the public pension systems, jointly,

1

would absorb a progressive reduction of their outlays by the year 2020 and conditioned its approval of the Fiscal Plan for Puerto Rico on this measure, among other unrelated ones.

The OB noted that the public pension systems are composed of: Employees' Retirement System (ERS), Teachers Retirement System (TRS), and Judiciary Retirement System (JRS). The JRS is completely different from the TRS and the ERS because of its origin in the principle of separation of powers, emanating from the United States and Puerto Rico Constitutions, Public Laws 600 and 447. By directing the reduction of judicial pensions, the OB is directly violating Federal and State law. At no time during this process has the OB made mention of the constitutional requirement of protection of judiciary salaries and pensions based on separation of powers in the republican form of government.

These actions by the OB constitute a direct violation of the Congressional requirement of a republican form of government in Puerto Rico because they violate the principle of judicial independence and separation of powers.

After all, in the *Sánchez Valle, supra* case, the United States Supreme Court has stated that all sovereignty of Puerto Rico derives from the Federal Constitution. When determining whether Puerto Rico and the United States could prosecute one defendant for the same conduct, the United States Supreme Court held that they could not, "because the oldest roots of Puerto Rico's power to prosecute lie in federal soil." *Sánchez Valle,* 136 S.Ct at 1868 (2016). The Court explained that "Puerto Rico today has a distinctive, indeed exceptional, status as a self-governing Commonwealth. But our approach is historical. And if we go back as far as our doctrine demands – to the 'ultimate source' of Puerto Rico's prosecutorial power [. . .] we once again discover the U.S. Congress." *Sánchez Valle, Id* at 1874.

> Put simply, Congress conferred the authority to create the Puerto Rico Constitution, which in turn confers the authority to bring criminal charges. That makes Congress the original source of power for Puerto Rico's prosecutors- as it is for the Federal Government's. The island's Constitution, significant though it is, does not break the chain. *Sánchez Valle, Id* at 1875-1876.

Logically, the Puerto Rico Constitution, a creature of Congress, emanates from the mandates of the United States Constitution, and embodies the mandates and rights established by it.

The aforementioned actions by the OB dramatically overstep federal law as well; specifically, Public Laws 600 and 447 and go against Congressional authority to allow for separation of powers and judicial independence in Puerto Rico.

Additionally, the Puerto Rico Constitution recognizes administrative autonomy and independence of the Judicial Branch, as does the United States' Constitution. (*See* DN 2 *Amended Complaint* Civil No. 17-1580 at par. 46; *see also Brau Linares v. E.L.A.,* 109 D.P.R. 315, 345 (2014).) Like the United States Constitution from which its power derives, under the Territorial Clause, the Puerto Rico Constitution also recognizes that the salaries of appointed judges are to be set by special law and not reduced during the length of the term of their appointment (*See* Art. VI, Sec. 11 of the Puerto Rico Constitution), that no law shall reduce the salaries of a public officer after their election or appointment (*See* Art. VI, Sec. 10 of the Puerto Rico Constitution), and that the Legislature will establish a mandatory retirement plan for judiciary members upon reaching the age of seventy (70) (*See* Art. VI, Sec. 10 of the Puerto Rico Constitution).

The Puerto Rico Supreme Court in *Brau, Linares v. ELA,* 190 D.P.R. 315 (2014) has explicitly established this. It held that judicial compensation includes pensions, and that neither salaries nor pensions may be reduced retroactively.

Additionally, the OB has repeatedly reiterated the demand that a freeze clause be implemented on the judiciary pension accrual. This affects the active judges' pensions dramatically. The freeze, as stated in the certified Fiscal Plan, takes away the pension in its entirety for some active judges. Moreover, the elimination of the Christmas bonus for all public employees is also contemplated.

## II. NAME AND ADDRESS OF THE OBJECTOR OR ENTITY PROPOSED A MODIFICATION OF THE DISCLOSURE STATEMENT, THE AMOUNT OF ITS CLAIM AND THE NATURE OF ITS INTEREST IN THE DEBTOR'S CASE.

The objector is the Asociación Puertorriqueña de la Judicatura, Inc., a membership association comprised by acting and retired judges of Puerto Rico's judicial branch. While the exact amount of APJ's claim is currently unknown, the retirement pension plan of its membership, more than two hundred twenty judges and ex-judges is on the line.

## III. BASIS AND NATURES OF ANY OBJECTION AND PROPOSED MODIFICATION TO THE DISCLOSURE STATEMENT

Judicial independence is critical to democracy and justice. The concept of an independent judiciary was embedded into the United States Constitution by our Founding Fathers. Any attempt to impinge judicial independence does violence to this core value that is fundamental to our form of government.

Each co-equal branch in the American system of government has its own unique role within the overall structure. As Alexander Hamilton so aptly put it: the Judiciary is the branch least able to defend itself and advocate for its rights and proper place in the constitutional structure. Specifically, he wrote about the importance of preserving judicial independence in Federalist Paper Number 78:

> Whoever attentively considers the different departments of power must perceive, that, in a government in which they are separated from

4

>each other, the judiciary, from the nature of its functions, will always be the least dangerous to the political right of the Constitution; because it will be least in a capacity to annoy or injure them. [. . .]
>
>This simple view of the matter suggests several important consequences. It proves incontestably, that the judiciary is beyond comparison the weakest of the three departments of power; that it can never attack with success either of the other two; and that all possible care is requisite to enable it to defend itself against their attacks. [. . .] And it proves, in the last place [. . .] that as, from the natural feebleness of the judiciary, it is in continual jeopardy of being overpowered, awed, or influenced by its co-ordinate branches; and that as nothing can contribute so much to its firmness and independence as permanency in office, this quality may therefore be justly regarded as an indispensable ingredient in its constitution, and, in a great measure, as the citadel of the public justice and the public security. *The Federalist Papers,* Mentor, 1961, pages 465-466.

Hamilton also wrote in Federalist Paper Number 79 that: "Next to permanency in office, nothing can contribute more to the independence of the judges than a fixed provision for their support [. . .] In the general course of human nature, a power over a man's subsistence amounts to a power of his will." *The Federalist No. 79*, at 400.

It was the view of Alexander Hamilton, shared by others such as James Madison, that the judiciary should be separate and co-equal to the other branches of government, which led to the incorporation of the "No-Diminution Clause" in Article III, Section 1 of the the United States Constitution. Essentially, it places the judiciary members' remuneration, once established, out of reach from the other two branches of government for purposes of reduction. This provides a guarantee that judicial power will be exercised objectively, without seeking favor or for fear of retribution from the executive or legislative branch. (*See DePascale v. State of New Jersey,* 211 N.J. 40 (2012) at 49-50.)

This approach to judicial independence and a *bona fide* separation of powers between the three branches of government was made a part of Puerto Rico's trajectory when Congress allowed the Puerto Rican people to draft their own Constitution and "organize a

5

government pursuant to a Constitution of their own adoption." *Act of July 3,* 1950, Section 1. 64 Stat. 319. Congress enacted Public Law 600 in 1950 to allow for this, and the constitution that would arise under it had to "provide a republican form of government" and "include a bill of rights", with all other matters to be agreed upon in a constitutional convention. *See Act of July 3,* 1950, Section 2, 64 Stat. 319. The document that eventually was born from this, the Puerto Rico Constitution, created the Commonwealth of Puerto Rico, whose three-branched government resounded of American founding principles. *See Puerto Rico v. Sánchez Valle,* 136 S.Ct. 1863, at 1869 (2016).

In *Booth v. United States,* 291 U.S. 339 (1934), the United States Supreme Court was faced with the question of whether a judge who was retiring under section 260 of the Judicial Code continued to have a vested interest in his compensation sufficient to merit protection under the Compensation Clause. The Court found that in situations such as that, the judge "does not relinquish his office" and as such, his salary must remain intact. It is clear that "compensation" was construed in this case to include pensions, and that upon retirement, a judge is entitled to receive a pension commensurate with what had been fixed by law prior to his retirement.

### IV. PROPOSED LANGUAGE

APJ proposes that the Disclosure Statement not include any downward adjustments for any judge's pension.

### V. CONCLUSION

The Puerto Rico Judicial Retirement System is in danger of being severely affected by the acts of the OB. Including the judicial pensions in the reduction plan to allow for savings

6

goes against the principle of judicial independence. How can a judge rule impartially when their compensation is being threatened? That is the essence behind this objection.

**WHEREFORE**, APJ, on behalf of and for its members, respectfully requests this Honorable Court **GRANT** APJ's **OBJECTION** to Debtor's Disclosure Statement and that it **ORDER** bar Debtor from unconstitutionally reducing judge's pensions.

**CERTIFICATE OF SERVICE: I HEREBY CERTIFY** that on this day, I electronically filed the foregoing motion with the Clerk of the Court using CM/ECF Filing System which will send notification to the parties and subscribed users. A true and correct copy of the foregoing was served upon the Office of the United States Trustee at Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, P.R. 00901.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 16th day of June, 2021.

**INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street; 3rd Floor
San Juan, P.R. 00912
Tel: (787) 641-4545; Fax: (787) 641-4544
david.indiano@indianowilliams.com
jeffrey.williams@indianowilliams.com
jose.vazquez@indianowilliams.com

by: *s/ David C. Indiano*
DAVID C. INDIANO
USDC-PR NO. 200601

by: *s/ Jeffrey M. Williams*
JEFFREY M. WILLIAMS
USDC-PR No. 202414

by: *s/José M. Vázquez-Lozada*
JOSÉ M. VÁZQUEZ LOZADA
USDC-PR No. 303805

7