# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283 (LTS) |

**MEMORANDUM OF DECISION AND ORDER ON URGENT MOTION OF AMBAC ASSURANCE CORPORATION AND FINANCIAL GUARANTY INSURANCE COMPANY TO COMPEL DISCOVERY FROM THE GOVERNMENT PARTIES IN CONNECTION WITH THE DISCLOSURE STATEMENT**

June 16, 2021

DEIN, U.S.M.J.

## I. INTRODUCTION

This matter is before the Court on the *Urgent Motion of Ambac Assurance Corporation and Financial Guaranty Insurance Company to Compel Discovery from the Government Parties*

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK- 3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*in Connection with the Disclosure Statement* (Dkt No. 16812) (the "Motion").[2] The Court has also received and reviewed objections to the Motion filed by the Financial Oversight and Management Board for Puerto Rico (Dkt. No. 16882) (the "FOMB Obj.") and the Puerto Rico Fiscal Agency and Financial Advisory Authority (Dkt. No. 16878) (the "AAFAF Obj."), and Ambac and FGIC's reply (Dkt. No. 16905) (the "Reply"). Through the Motion, Ambac and FGIC (together, "Ambac") seek document discovery and deposition testimony from the FOMB and AAFAF (together, the "Government Parties"), in connection with the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (Dkt. No. 16741) (the "Disclosure Statement"). The Court has carefully considered the parties' submissions and for the reasons detailed herein, DENIES IN PART and ALLOWS IN PART the Motion in accordance with this Order.

## II. BACKGROUND

**A. The Plan of Adjustment, Disclosure Statement, and Related Motion Practice**

On March 8, 2021, the Oversight Board filed the Second Amended Plan of Adjustment (Dkt. No. 15976) and the Disclosure Statement for the Second Amended Plan of Adjustment (Dkt. No. 15977). On May 11, 2021, after additional agreements were reached with holders of bonds issued by ERS, and holders and insurers of bonds issued by HTA and CCDA, the Oversight Board filed a Third Amended Plan of Adjustment (Dkt. No. 16740) and the Disclosure Statement for the Third Amended Plan of Adjustment (Dkt. No. 16741). The Disclosure Statement for the Third Amended Plan of Adjustment is the operative Disclosure Statement.

On April 6, 2021, the Oversight Board filed a motion seeking an order from the Title III

---

[2] Capitalized terms not defined herein shall have the meaning given to them in the Motion.

2

Court to, *inter alia*, schedule briefing and a hearing to consider the adequacy of the Disclosure Statement (Dkt. No. 16332, the "Disclosure Statement Scheduling Motion"). The Court allowed the Disclosure Statement Scheduling Motion and entered a briefing schedule which required objections to the Disclosure Statement to be filed by June 15, 2021. See Dkt. No. 16681. The Court also scheduled a hearing on the adequacy of the proposed disclosure statement for July 13, 2021. See id.

### B. Ambac's Discovery Requests and the Motion to Compel

After the filing of the Disclosure Statement, Ambac served document requests and deposition notices on the Government Parties. See Mot. ¶ 3. Ambac characterizes its requests as seeking information concerning (1) the Fiscal Plan incorporated into the Proposed Plan, (2) the Oversight Board's Best Interest Analysis, (3) the Commonwealth's $55.6 billion estimated pension liability, (4) assets held by the Commonwealth and/or Commonwealth Entities, (5) necessary operating expenses and the costs of essential services, and (6) the Commonwealth's access to cash. See id. Ambac also served deposition notices on the FOMB, David Skeel, and Justin Peterson. See id. ¶ 60.

On May 21, 2021, the Oversight Board served responses and objections to the discovery requests, and the parties exchanged correspondence and conducted telephonic meet and confers regarding the discovery requests. See id. ¶¶ 18-22; FOMB Opp. ¶¶ 12-15. Ultimately, the parties reached an impasse on certain requests, and Ambac filed the Motion, which seeks to compel responses to its document requests and deposition testimony.[3]

---

[3] The details of the parties' negotiations, their meet and confer process, and the filing of the Motion to Compel are contained in the parties' submissions and the Court will not recount them herein.

Since the filing of the Motion, the parties have continued to meet and confer and appear to have reached an agreement with respect to certain disputed topics. The Oversight Board has also agreed to consider additional disclosures proposed by Ambac. See FOMB Obj. ¶ 41. The Court understands the parties' current positions to be reflected in the chart attached to the FOMB's Objection (Dkt. No. 16882-1).

### C. The Disclosure Statement Depository

As part of the Disclosure Statement Scheduling Motion, the Oversight Board also sought court approval to create a "Disclosure Statement Depository to make available for creditors 'factual source material underlying the Disclosure Statement (including but not limited to factual source materials underlying the cash restriction analysis, the best interest tests reports, and the Section 211 report attached to the Disclosure Statement), as well as documents relating to the nature of claims and classification under the Plan.'" FOMB Obj. ¶ 9 (quoting Disclosure Statement Scheduling Motion). Additionally, the Oversight Board sought to make documents available to creditors using a separate access point, or SFTP. Id. The Court authorized the Oversight Board to create both the Disclosure Statement Depository and the SFTP. Id. ¶ 10.

The Oversight Board represents that the Disclosure Statement Depository currently contains over 11,000 documents, separated into folders related to a number of topics, including factual source materials and raw data underlying certain factual statements in the Disclosure Statement, a summary of certain creditor recoveries and allocations by class, bond offering statements associated with certain issuances of bonds by the Commonwealth, ERS, and PBA, factual source material and raw data supporting the Oversight Board's ongoing cash

4

restriction analysis, documents relating to certain Commonwealth non-cash assets, documents relating to the Commonwealth's pension liabilities, and factual source materials relating to the Oversight Board's best interests test analysis. See id. ¶¶ 4, 11.

### III. DISCUSSION

**A. Legal Standard for Approval of the Disclosure Statement**

"Before a debtor submits a plan to the creditors for approval, the debtor must give the creditors a disclosure statement containing 'adequate information.'" Westland Oil Dev. Corp. v. MCorp Mgmt. Sols., Inc., 157 B.R. 100, 102 (S.D. Tex. 1993) (citing 11 U.S.C.S. § 1125(a) (1987)). "Both bankruptcy courts and creditors rely on a debtor's disclosure statement in determining whether to vote for or approve a proposed plan of reorganization." In re ACEMLA de Puerto Rico Inc., C.A. No. 17-02021-ESL, 2019 WL 311008, *14 (Bankr. D.P.R. Jan. 22, 2019) (quotation omitted). "Creditors rely on the disclosure statement to determine what distribution or other assets they will receive and also what risks they will face. Accordingly, the importance of full and honest disclosure is critical and cannot be overstated." Id. (quotation omitted). See also Westland Oil, 157 B.R. at 102 (citing 5 Collier on Bankruptcy, ¶ 1125.03 (15th ed. 1992) ("Disclosure is the 'pivotal' concept in chapter 11 reorganization.").

11 U.S.C. § 1125 governs the filing and approval of a disclosure statement. 11 U.S.C. § 1125(b) provides that "[a]n acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. §

1125(a) defines "adequate information" as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records. . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information[.]"

"The determination of whether the disclosure statement contains adequate information is made on a case-by-case basis." In re Fullmer, No. 09-50086-RLJ-11, 2009 WL 2778303, at *2 (Bankr. N.D. Tex. Sept. 2, 2009) (citing In re Tex. Extrusion Corp., 844 F.2d 1142, 1157 (5th Cir.1988), cert. denied, 488 U.S. 926 (1988)). The "adequacy of the disclosure is dependent upon various factors including: the size and complexity of the chapter 11 case, the type of plan proposed, the type of creditors and claims impaired by the proposed plan, and the access by impaired creditors to relevant information from other sources." In re El Comandante Mgmt. Co., LLC, 359 B.R. 410, 415 (Bankr. D.P.R. 2006) (quotation omitted). To that end, "the decision to approve or reject a disclosure statement is within the discretion of the bankruptcy court." Id. (quotation omitted).

**B. Discovery in Connection with the Disclosure Statement**

The parties agree that the filing of an objection to a disclosure statement creates a contested matter that is subject to the discovery standard laid out in Rule 26 of the Federal Rules of Civil Procedure. See Reply ¶ 8; Fed. R. Bankr. P. 9014(c) (applying Part VII Rules to contested matters, including Fed. R. Bankr. P. 7026, which incorporates Fed. R. Civ. P. 26). Under Rule 26, discovery is permitted on "any nonprivileged matter that is relevant to any

6

party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The question presented at the disclosure statement phase, that is, whether the disclosure statement contains "adequate information," is distinct from the broader issues presented at plan confirmation, and therefore generally does not warrant expansive discovery. See In re Am. Cap. Equip., LLC, 688 F.3d 145, 148 (3d Cir. 2012) ("Ordinarily, confirmation issues are reserved for the confirmation hearing, and not addressed at the disclosure statement stage.") (quotation omitted); In re Scioto Valley Mortg. Co., 88 B.R. 168, 172 (Bankr. S.D. Ohio 1988) ("If the creditors oppose their treatment in the plan, but the Disclosure Statement contains adequate information, issues respecting the plan's confirmability will await the hearing on confirmation.").[4] In determining whether the Disclosure Statement is adequate, the court must assess whether creditors are able to understand the terms and conditions of the

---

[4] Creditors may also argue in their disclosure statement objections that the disclosure statement describes a plan that is "patently unconfirmable." See In re American Capital Equip. LLC, 688 F.3d 145, 155 (3d Cir. 2012) (holding that "a bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable," but warning that bankruptcy courts "must take care to not prematurely convert a disclosure statement hearing into a confirmation hearing"); In re Mercado, No. BAP 13-021, 2013 WL 7118236, at *5 (B.A.P. 1st Cir. Nov. 20, 2013) ("To satisfy its burden, a chapter 11 debtor need not show that its plan of reorganization is confirmable; rather, it must establish that its proposed plan has a realistic chance of being confirmed and is not patently unconfirmable."). Patent unconfirmability arguments, however, are legal arguments based on the face of the disclosure statement and thus do not require discovery. See In re FirstEnergy Sols. Corp., 606 B.R. 720, 732 (Bankr. N.D. Ohio 2019) ("Patent unconfirmability is treated as a matter of law.").

Disclosure Statement so that they can "determine what distribution or other assets they will receive and also what risks they will face." In re Acemla De Puerto Rico Inc., 2019 WL 311008 at *14 (citation omitted). In contrast, at the plan confirmation stage, the Title III Court will analyze much broader issues, for example whether the Proposed Plan meets the requirements of PROMESA Section 314, including whether it is "feasible and in the best interests of creditors." 48 U.S.C. § 2174(b). Thus, the scope of appropriate discovery in connection with the Disclosure Statement is much more limited than the scope of appropriate discovery in connection with plan confirmation hearings.

In the instant case, while Ambac purports to need the requested discovery to formulate its objections to the Disclosure Statement, a review of the document requests establishes that the vast majority are directed to challenges to confirmability of the proposed Plan, Ambac's contention that there are better alternatives, and investigation of additional Commonwealth assets potentially available to creditors. To the extent that Ambac's arguments are appropriate for consideration by the Title III Court (about which this Court expresses no opinion), it would be at the confirmation stage, and not in connection with challenges to the Disclosure Statement.

As detailed herein, this Court will limit discovery in connection with the Disclosure Statement to topics necessary to ensure that the Disclosure Statement provides Ambac with sufficient information to understand how creditors will be treated under the Proposed Plan, and to make an informed decision as to how to vote on the Proposed Plan. See In re Scotio Valley Mortg., 88 B.R. at 172 (In the disclosure statement, the debtor must "disclose all pertinent information so that such holders can cast an informed vote accepting or rejecting the

8

plan. That is all the Code requires."). The distinction between discovery related to the Disclosure Statement and plan confirmation discovery is particularly appropriate in the instant case, where there will be a large number of creditors who will need access to the plan confirmation discovery so that coordinated efforts will be needed, and it is likely that such discovery will begin soon.

Applying these principles, this Court rules as follows.

C. **Preliminary Issues**

First, the parties dispute whether Ambac is entitled to take discovery from AAFAF in connection with the Disclosure Statement. Ambac served requests on AAFAF because "it is not [Ambac], but the Government parties – both of which are representatives of the Commonwealth in connection with its restructuring – who are in the position to know which documents are in the possession of which party." Reply ¶ 31. Ambac is not, however, attempting to obtain duplicative discovery from the Oversight Board and AAFAF, and only seeks documents from AAFAF that are not in the possession of the Oversight Board. Id. AAFAF argues that, while it "will cooperate with the FOMB to make the appropriate information available," "[n]o Court order is necessary to require AAFAF's cooperation on this point given FOMB's powers[,]" and, in any event, AAFAF is not a "debtor" and did not propose the Disclosure Statement, and therefore should not be subject to any discovery requests. AAFAF Obj. ¶¶ 13-14.

In light of AAFAF's role in these Title III proceedings and the fact that Ambac is unable to determine whether the documents it seeks are in the possession of the Oversight Board or AAFAF, this Court is not persuaded that AAFAF is exempt from discovery in connection with the

9

Disclosure Statement, and hereby orders AAFAF to coordinate with the Oversight Board to produce non-duplicative documents responsive to Ambac's requests, as required herein.

Second, the Government Parties argue that, because Ambac plans to vote to reject the Proposed Plan, discovery in connection with the Disclosure Statement "is therefore unnecessary because it will make no difference as to how Ambac/FGIC will vote." FOMB Obj. ¶ 22. This argument is not persuasive. In order for Ambac to make an informed vote on the Proposed Plan, it must be able to interpret the terms of the Disclosure Statement, and to understand how it will be treated under the Proposed Plan. Therefore, Ambac will be allowed the limited discovery described below.

### IV. **SPECIFIC RULINGS**

The Court makes the following specific rulings with respect to Ambac's document requests to the Government Parties. As discussed above, the Oversight Board and AAFAF should coordinate their efforts to ensure that the production required herein is complete. The rulings track the groups addressed in Ambac's Motion, and the Court will only address the requests enumerated in the Motion to Compel.

#### A. Requests Related the Fiscal Plan

Request Nos. 2-5: The Fiscal Plan is not at issue in connection with the Disclosure Statement. The appropriate scope of documents to be produced, if any, concerning the overall financial condition of the Commonwealth will be better defined in connection with plan confirmation discovery. The discovery requested in these requests is not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement. Therefore, these requests are DENIED.

#### B. Requests Related to the Best Interest Analysis

Request No. 6: The Oversight Board has produced the Best Interest Test, and represents that it will continue to provide factual source materials and raw data as they become available. To the extent this request seeks additional discovery, such discovery is not proportional to the needs

10

of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement.

Request No. 7: The Oversight Board represents that it will continue to provide factual source materials and raw data as they become available. To the extent this request seeks additional discovery, such discovery is not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement.

### C. Requests Related to Data, Analyses, and Assumptions Underlying the Various Iterations of the Disclosure Statement and Plan

Request No. 11: The Oversight Board has produced factual source materials and raw data underlying the May 2021 Disclosure Statement that are responsive to this request. To the extent this request seeks additional discovery concerning prior iterations of the disclosure statement and proposed plan, and additional discovery concerning the May 2021 Disclosure Statement and the May 2021 Plan, such discovery is not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement.

### D. Requests Related to the Pension Reserve Trust and the Pension Reserve Fund

Request Nos. 12-15: To the extent Ambac is challenging the adequacy of the Disclosure Statement's description of the Pension Reserve Trust and how it will be managed, the parties shall meet and confer as to whether additional disclosures are needed. To the extent this request seeks additional discovery, it is DENIED as not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement.

### E. Requests Related to Real Property Assets and Illiquid Investments Relevant to the Commonwealth's Financial Condition

Request Nos. 16-17: Ambac has sought the discovery in these requests concerning the Commonwealth's real property assets and illiquid investments in its Assets Rule 2004 Motions, and the documents produced pursuant to the Court's order on the Assets Rule 2004 Motion are already in the Disclosure Statement Depository and the SFTP. To the extent these requests seek additional discovery, they are DENIED as not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement.

### F. Requests Related to an Assessment of the Commonwealth's Essential Services

Request No. 18: To the extent Ambac is challenging what it perceives to be an absence of a description of essential services in the Disclosure Statement, that challenge to the Disclosure Statement does not require additional discovery. To the extent this request seeks additional

11

discovery, it is DENIED as not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement.

### G. Requests Related to Monies Potentially Available to the Commonwealth

Request No. 19: The Court accepts the Oversight Board's representation that all non-privileged materials responsive to this request have been provided and made available to all creditors via the Disclosure Statement Depository and SFTP. To the extent this request seeks additional discovery, such discovery is not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement.

Request No. 20: The Oversight Board must produce the documents it has agreed to produce within seven days of the date of this Order.

Request No. 21: The Court accepts the Oversight Board's representation that all non-privileged materials responsive to this request have been provided and made available to all creditors via the Disclosure Statement Depository and SFTP. To the extent this request seeks additional discovery, such discovery is not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement.

Request No. 22: The Court accepts the Oversight Board's representation that it has produced factual source materials and raw data utilized by the Oversight Board and its advisors to determine the Commonwealth's minimum unrestricted liquidity balance, but the parties may meet and confer concerning additional documents Ambac seeks responsive to this request. To the extent this request seeks additional discovery related to potential external financing, such discovery is not proportional to the needs of the case at this disclosure statement phase, given the limited scope of the Court's inquiry on the question of approval of a disclosure statement.

Request No. 23: The Court accepts the Oversight Board's representation that it has produced factual source materials and raw data utilized by the Oversight Board and its advisors to determine that the Commonwealth should maintain an emergency reserve in the amount of $1.3 billion, but the parties may meet and confer concerning additional documents Ambac seeks responsive to this request.

### H. Depositions

Ambac's Motion to Compel deposition testimony from the Oversight Board, David Skeel and Justin Peterson in connection with the Disclosure Statement is DENIED. Given the limited topics for which discovery is appropriate in determining the adequacy of the Disclosure

Statement, the need for deposition testimony is outweighed by the burden of preparing the deponents to testify and sit for depositions. Ambac's request for deposition testimony may be renewed in connection with plan confirmation.

### V. JOINDERS

Joinders to the Motion were filed by Salud Integral de la Montana, Inc. (Dkt. No. 16841), AmeriNational Community Services, LLC, as servicer for the GDB Debt Recovery Authority, and Cantor-Katz Collateral Monitor, LLC (the "DRA Parties") (Dkt. No. 16881) and the Group Wage Claimants (Dkt. No. 16896) (collectively, the "Joinders"), seeking a variety of relief, including in some cases to serve their own discovery requests, participate in depositions, and/or to receive any documents produced to Ambac as a result of the Motion. The Court ALLOWS the Joinders to the extent they seek access to any information produced to Ambac as a result of the Motion. In all other respects, the Joinders are DENIED. These parties have not established a need for independent discovery and any new proposals for discovery in connection with the Disclosure Statement are untimely.

### VI. CONCLUSION

For the reasons provided herein, the Motion to Compel is ALLOWED IN PART and DENIED IN PART in accordance with this Order.

This Order resolves Dkt. Nos. 16812, 16841, 16881, and 16896.

SO ORDERED.

/s/ Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

13