# EXHIBIT 1

December 14, 2020

**<u>VIA E-MAIL</u>**

John J. Hughes III, Esq.
Milbank LLP
55 Hudson Yards
New York, NY 10001-2163

**Re: <u>Supplemental Pension Requests</u>**

John:

We write to respond to your September 14, 2020 letter, your November 30, 2020 letter, and to address matters discussed during the parties' recent meet and confers, including the November 23, 2020 meet and confer call regarding Ambac's additional requests related to the Commonwealth's pension liabilities, originally served on October 23, 2019, and amended on May 15, 2020 (the "<u>Supplemental Pension Requests</u>").

**The Supplemental Pension Requests**

### 1. *Requests 1-4*

Thank you for providing additional information regarding Ambac's requests for clarification of the Oversight Board's October 23, 2020 privilege log. As discussed during the parties' November 23, 2020 call, the Oversight Board will prepare an amended privilege log in response to Ambac's requests. The Oversight Board will provide the amended log no later than January 4.

### 2. *Request 5*

The September 14 letter identifies four "issues" related to the Section 211 Report[1] and requests the production of email communications regarding those "issues." As counsel for the Oversight Board has explained on the parties' meet and confer calls, production of email communications is unduly burdensome and not proportional to the needs of this matter because, among other things, the email communications Ambac seeks are not relevant, and the search Ambac requests would require the Oversight Board to search over a year of communications, many of which are privileged. Furthermore, information responsive to Ambac's requests is publicly available. Accordingly, the Oversight Board is able to provide the following additional information responsive to Ambac's four issues.

---

[1] The "Section 211 Report" refers to the report titled *PROMESA Section 211 Report on the Puerto Rico Retirement Systems*, dated September 2019, and filed at ECF No. 11947-7.

Mr. John J. Hughes, Esq.
December 14, 2020
Page 2

> *Issue No. 1: Documents and communications regarding the decrease in pension liability from 2016 to 2017.*

Information regarding the decrease in pension liability from 2016 to 2017 is available in Milliman's June 30, 2017 Actuarial Valuation Report (the "2017 Report"), which is available at https://www.retiro.pr.gov/wp-content/uploads/PRGERS_Val_June302017.pdf.  Page 4 of the 2017 Report provides a description of gains and losses due to plan demographic experience.  In addition, page 21 of the 2017 Report provides information regarding additional sources of gains and losses.

> *Issue No. 2: Documents and communications regarding the quality and sufficiency of the data provided to EY to use in its PROMESA Section 211 report, how any deficiencies in or limitations of data were taken into account in producing the report, and EY's decision to use a July 1, 2016 census date instead of the July 1, 2015 census date used by Milliman (see Exhibit 1 of EY 211 Report).*

Information regarding the quality and sufficiency of the data provided to EY is available in the "Data Limitations" discussion on page v of the Section 211 Report.  Additional detail regarding known data limitations is provided in Section 1.2 of the Section 211 Report.

With respect to the census data utilized by EY, in each instance, EY used the most recent data available to it as of the date of the Section 211 Report, and it is our understanding that you have the data.

> *Issue No. 3: Documents and communications regarding budget variances and underspending/overspending in retirement system expenditures, including but not limited to the PayGo System, and whether such variances were addressed in drafting EY's PROMESA Section 211 Report.*

As explained in the disclaimer to the Section 211 Report, "EY did not render an assurance report or an opinion . . ., nor did EY's services constitute an audit, review, examination, forecast, projection, or any other form of attestation as those terms are defined by the AICPA. . . . EY has not conducted an independent assessment or verification of the completeness, accuracy or validity of the information obtained.  Consequently, EY provides no assurances of any kind with respect to, or on, the information presented."  Section 211 Report at i.

Consistent with these disclaimers, EY reviewed publicly available data and information provided by relevant parties to perform the evaluation identified under PROMESA Section 211.  Accordingly, EY did not address the budget variances and underspending/overspending referenced in Issue No. 3 because such variances were beyond the scope of the Section 211 Report.

Mr. John J. Hughes, Esq.
December 14, 2020
Page 3

> *Issue No. 4: Documents and communications regarding pension payments or claims*
> *determined or alleged to be fraudulent.*

As explained in the response to Issue No. 3, EY reviewed and relied upon publicly available data
and information provided by relevant parties in preparing the Section 211 Report.  EY therefore
did not address fraudulent pension payments or claims because that issue was also beyond the
scope of the Section 211 Report.

**AAFAF Email Review**

On the parties' November 23 call, Ambac requested that AAFAF expand the beginning date for a
proposed email review from June 30, 2016 (the date Ambac represented to the Court in its June
18, 2019 Rule 2004 motion[2]), to January 1, 2015.  For the reasons already discussed, and as
further explained below, we will use June 30, 2016 as the start date.

First, it remains AAFAF's position that an email review is unnecessary to understand the
Commonwealth's current pension liabilities, let alone a review extending from January 1, 2015
to the present—a span of almost six years.  Ambac requested the expanded date range in
connection with Milliman's 2015 actuarial reports for ERS, TRS, and JRS (all of which were
finalized after June 30, 2016).  We have already made sufficient productions regarding the
reports and given that they have been eclipsed by the 2016 and 2017 reports (with the 2018
reports currently expected by February 2021), an expanded date range is not necessary to assess
current pension liabilities.

Second, we have been using a June 30, 2016 start date for Ambac's discovery requests because
that is the date Ambac requested.  For more than a year, we have been relying on that
representation and date range.[3]  Recently, after you asked us to add TRS custodians during our
October 30, 2020 call, we used the June 30, 2016 start date to collect files from Héctor Román
and Angel Díaz.  Expanding the date range would require us to incur the unnecessary burden and
cost of having to recollect these custodians.[4]  And now that another year has passed since
Ambac's June 18, 2019 representations to the court, there is even less need for discovery from
before June 30, 2016 to assess current pension liabilities.

---

[2] ECF 7507, Ex. 1, Attachment A, Instruction 16 ("Unless otherwise specified herein, the period
of time covered by these requests is June 30, 2016 to the present (the 'Period').").
[3] *See, e.g.*, AAFAF's July 19, 2019 Letter to Ambac (referencing that a production contained
materials with a date range beginning June 30, 2016 in light of "the dat[e] range in Ambac's
Rule 2004 requests").
[4] In addition to this work, we would need to confer with ERS to determine whether additional
custodians, besides Ms. Tirado, would need to be collected in connection with the 2015 ERS and
JRS actuarial reports.  For the reasons discussed above, that additional work is unnecessary.

Mr. John J. Hughes, Esq.
December 14, 2020
Page 4

Despite our concerns with the necessity of email discovery, we have offered to do a targeted email review for non-privileged documents in the files of Cecile Tirado, Héctor Román and Angel Díaz that contain factual information relied on by Milliman that have not been produced yet in connection with the 2016 and 2017 reports.  We are concerned that using even a June 30, 2016 start date for the search is not tailored to the necessity of the discovery at this stage of the proceedings, but we are willing to proceed with the review once we agree on search terms. Below is a list of proposed terms.  We reserve the right to modify these terms as we assess the volume of documents.

Search Terms

((Invest* w/3 Return*) OR (Municipal* w/3 "Bond Rate") OR (Discount* w/3 Rate*) OR (Compensat* w/3 Increas*) OR (Rate* w/3 Retire*) OR "Census Data" OR ((GASB w/3 (45 OR 67)) AND (Date* w/3 Depletion) OR (Pension* w/3 Liab*) OR (Benefit* w/3 Obligation*) OR (Sensitivit* w/3 Analy*) OR ((Accrue* OR unfunded OR actuarial) w/3 Liab*) OR (Amortization w/3 Payment*) OR (Required w/2 Contributio*) OR (OPEB w/3 (cost* OR obligation*)) OR (Employer* w/3 Contribut*) OR (Funding w/3 Progress))) AND @Milliman AND ((actuarial OR valuation OR Milliman OR ERS OR PRERS OR PRGERS OR JRS OR PRJRS OR PRGJRS OR TRS OR PRTRS OR PRGTRS OR "Retirement System") w/3 report*)

Sincerely,

/s/ *Margaret A. Dale*                                    /s/ *Madhu Pocha*

Margaret A. Dale, Esq.                                    Madhu Pocha, Esq.