```
 1                    UNITED STATES DISTRICT COURT

 2                     DISTRICT OF PUERTO RICO

 3
       In Re:                    )        Docket No. 3:17-BK-3283(LTS)
 4                               )
                                 )        PROMESA Title III
 5     The Financial Oversight and )
       Management Board for      )
 6     Puerto Rico,              )        (Jointly Administered)
                                 )
 7     as representative of      )
                                 )
 8     The Commonwealth of       )
       Puerto Rico, et al.       )        June 16, 2021
 9                               )
                     Debtors,    )
10

11     _____

12     In Re:                    )        Docket No. 3:17-BK-4780(LTS)
                                 )
13                               )        PROMESA Title III
       The Financial Oversight and )
14     Management Board for      )
       Puerto Rico,              )        (Jointly Administered)
15                               )
       as representative of      )
16                               )
       The Puerto Rico Electric  )
17     Power Authority,          )
                                 )
18                     Debtors,    )

19     _____

20

21

22

23

24

25
```

```
 1   _____

 2

 3   Anne Catesby Jones, et al.  )   Docket No. 3:20-AP-00115(LTS)
                                 )
 4                               )      in 3:17-BK-4780(LTS)
                                 )
 5                   Plaintiffs, )
                                 )
 6   v.                          )
                                 )
 7   The Puerto Rico Electric    )
     Power Authority, et al.     )
 8                               )
                                 )
 9                               )
                     Defendants. )
10   _____

11

12                      OMNIBUS HEARING

13    BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

14             UNITED STATES DISTRICT COURT JUDGE

15    AND THE HONORABLE U.S. MAGISTRATE JUDGE JUDITH GAIL DEIN

16             UNITED STATES DISTRICT COURT JUDGE

17   _____

18
     APPEARANCES:
19
     ALL PARTIES APPEARING TELEPHONICALLY
20
     For The Commonwealth
21   of Puerto Rico, et al.:  Mr. Martin J. Bienenstock, PHV
                              Mr. Brian S. Rosen, PHV
22                            Mr. Lary A. Rappaport, PHV

23   For Puerto Rico Fiscal
     Agency and Financial
24   Advisory Authority:      Mr. Luis C. Marini Biaggi, Esq.

25
```

```
 1  ┃
    ┃  APPEARANCES, Continued:
 2  ┃
    ┃
 3  ┃  For the Official
    ┃  Committee of
 4  ┃  Unsecured Creditors of
    ┃  the Title III Debtors
 5  ┃  (other than PBA and
    ┃  COFINA):                Mr. John Arrastia, PHV
 6  ┃
    ┃
 7  ┃  For Ismael Marrero
    ┃  Rolon, Anne Catesby
 8  ┃  Jones, and Jorge
    ┃  Valdes Llauger:         Mr. Mark Vazquez, PHV
 9  ┃
    ┃
10  ┃
    ┃
11  ┃
    ┃
12  ┃
    ┃
13  ┃
    ┃
14  ┃
    ┃
15  ┃
    ┃
16  ┃
    ┃
17  ┃
    ┃
18  ┃
    ┃
19  ┃
    ┃
20  ┃
    ┃
21  ┃
    ┃
22  ┃
    ┃
23  ┃
    ┃
24  ┃
    ┃  Proceedings recorded by stenography.  Transcript produced by
25  ┃  CAT.
    ┃
```

```
 1                        I N D E X

 2   WITNESSES:                                    PAGE

 3        None.

 4

 5   EXHIBITS:

 6        None.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          San Juan, Puerto Rico

2          June 16, 2021

3          At or about 9:32 AM

4                    *     *     *

5      THE COURT:  Good morning.  This is Judge Swain

6  speaking.

7      MS. NG:  Good morning, Judge.  This is Lisa Ng, your

8  courtroom deputy.  Everyone is here.

9      THE COURT:  Thank you very much.

10      Ms. Tacoronte, would you please call the case?

11      COURTROOM DEPUTY:  Good morning.  Absolutely, Your

12  Honor.

13      The United States District Court for the District of

14  Puerto Rico is now in session.  The Honorable Laura Taylor

15  Swain presiding.  Also present, the Honorable Magistrate Judge

16  Judith Dein.  God save the United States of America and this

17  Honorable Court.

18      Case No. 17-3283, *In re:  The Financial Oversight and

19  Management Board for Puerto Rico, as representative of the

20  Commonwealth of Puerto Rico, et al.*, for Omnibus Hearing.

21      THE COURT:  Thank you, Ms. Tacoronte, and good

22  morning.

23      Buenos dias.  Welcome, counsel, parties in

24  interest, and members of the public and press.  Despite the

25  great difficulties of this past year, the Court is encouraged

1   by the recovery efforts and overall prospect of improved

2   well-being for citizens in both Puerto Rico and on the

3   mainland.

4          To ensure the orderly operation of today's telephonic

5   hearing, all parties on the line must mute their phones when

6   they are not speaking.  If you are accessing these proceedings

7   on a computer, please be sure to select "mute" on both the

8   Court Solutions dashboard and your phone.  When you need to

9   speak, you must unmute on both the dashboard and the phone.

10          I remind everyone that consistent with court and

11   judicial conference policies and the orders that have been

12   issued, no recording or retransmission of the hearing is

13   permitted by any person, including but not limited to the

14   parties, members of the public, and members of the press.

15   Violations of this rule may be punished with sanctions.

16          I will be calling on each speaker during the

17   proceedings.  When I do, please identify yourselves by name

18   for clarity of the record.  After the speakers listed on the

19   Agenda for each of today's matters have spoken, I may provide

20   an opportunity for other parties in interest to address

21   briefly any issues raised during the course of the

22   presentations that require further remarks.

23          If you wish to be heard under these circumstances,

24   please state your name clearly at the appropriate time.  Don't

25   just use the wave feature on the Court Solutions dashboard.  I

1    will call on the speakers if more than one person wishes to be

2    heard.

3         Please don't interrupt each other or me during the

4    hearing.  If we interrupt each other, it is difficult to

5    create an accurate transcript of the hearing.  Having said

6    that, I apologize in advance as usual for breaking this rule,

7    because I may interrupt if I have questions or if you go

8    beyond your allotted time.  If anyone has difficulty hearing

9    me or another participant, please say something right away.

10        The Agenda, which was filed as docket entry no. 16992

11   in case no. 17-3283, is available to the public at no cost on

12   Prime Clerk for those who are interested.

13        I encourage each speaker to keep track of his or her

14   own time.  The Court will also be keeping track of the time,

15   and will alert each speaker when there are two minutes

16   remaining with one buzz and, when time is up, with two buzzes.

17   Here is an example of the buzz sound.

18        (Sound played.)

19        THE COURT:  If your allocation is two minutes or

20   less, you will just hear the final buzzes.

21        If we need to take a break, I'll direct everyone to

22   disconnect and dial back in at a specified time.  This morning

23   our hours are from now until 11:50 AM, and, if necessary, we

24   will resume from 1:00 PM to 5:00 PM.

25        The first Agenda item is, as usual, status reports

1    from the Oversight Board and AAFAF.  As I requested in the

2    Procedures Order, these reports have been made in writing in

3    advance of this telephonic hearing, and are available on the

4    public docket at docket entry nos. 16990 and 16979 in case no.

5    17-3283.

6            So turning to the status reports, I thank the

7    Oversight Board and AAFAF for the care and detail reflected in

8    their reports, which, as always, cover important matters.

9            Do the representatives of the Oversight Board wish to

10   make any further remarks?

11           MR. BIENENSTOCK:  Good morning, Judge Swain.  This is

12   Martin Bienenstock of Proskauer Rose for the Oversight Board.

13   We don't have additional remarks this morning.  Thank you.

14           THE COURT:  Thank you, Mr. Bienenstock, and good

15   morning.

16           I would like to make a general remark, which relates

17   to the status report, on efforts to reach consensual plans of

18   adjustment, and it is as follows:  With the Disclosure

19   Statement hearing on the horizon, I want to note for all

20   interested parties the Court's concern that, given the

21   complexity of the Disclosure Statement and the large volume of

22   objections, it's crucial that this Court's approval of the

23   Disclosure Statement, if any, reflects the real terms of the

24   plan that the debtors intend to present for confirmation, such

25   that resolicitations of votes on such plan would not be

1    necessary.

2         Therefore, before any approval and dissemination of a

3    disclosure statement for a plan that is not substantially

4    consensual, it's essential that the Court be assured that all

5    of the parties have used their best efforts in good faith to

6    consider every potential point of compromise and to fairly

7    assess that whatever firm positions are taken are sufficiently

8    essential that they are worth risking failure to achieve a

9    confirmable plan of adjustment.

10        Therefore, I am advising all parties that I plan to

11   rely on Judge Houser as mediation team leader for confirmation

12   of her belief that such good faith best efforts have been

13   made.  In this context, I will take the term "good faith best

14   efforts" to mean that those parties she directs to engage with

15   each other between now and the date of any approval of the

16   Disclosure Statement have made proposals that have moved

17   closer to each other and which show meaningful progress toward

18   a more consensual plan.

19        I will ask her to so confirm in writing on or before

20   the July 13th, 2021, disclosure statement hearing date.  If

21   she cannot confirm that good faith best efforts have been

22   undertaken under her supervision by July 13th, 2021, it is

23   possible that I will not permit the mailing of the Disclosure

24   Statement, even if I have approved it as containing adequate

25   information, until she can so confirm.

1          Now I will turn to AAFAF.  Would the representative

2     of AAFAF wish to make additional remarks?

3          MS. NG:  Judge, I'm sorry to interrupt.  It's Lisa.

4     You're just a little too low.  I'm sorry about that.

5          THE COURT:  All right.  Is this any better?  Hello.

6          MS. NG:  Give me a second.  Yes.  I just want to

7     get -- Sarah is listening to you on the AT&T line, so I just

8     want to get her response.

9          She says, yes, it's a little bit -- it's a bit

10    better.

11         THE COURT:  Testing, one, two, three.  Is this

12    better?

13         MS. NG:  Give me one second and she'll respond.

14         Yes.  She says that's better.  I'm sorry to interrupt

15    you, Judge.  Sorry.

16         THE COURT:  All right.  And I apologize to everyone

17    who had any difficulty hearing.

18         Ms. Ng, was it that people could not hear at all or

19    that the volume was a little low?

20         MS. NG:  The volume on the AT&T was kind of low.  She

21    said it's a little low.  They can hear you, but it was low.

22    But now it's a lot better.

23         THE COURT:  All right.  Good.  Sorry about the low

24    volume in the first instance, and I have turned myself up.

25         So, now, do the representatives of AAFAF wish to make

 1  any additional remarks?

 2          MR. MARINI BIAGGI:  Good morning, Your Honor.  Luis

 3  Marini for AAFAF.

 4          I want to say, first, I was able to hear you well;

 5  and, second, I don't have anything else to add for AAFAF for

 6  the status report.

 7          THE COURT:  Thank you, Mr. Marini.

 8          Do any other counsel who are on the line have

 9  questions or comments to make in connection with the status

10  reports?  If you do, please state so clearly.  Now state your

11  name, and then wait for me to call on you to speak.

12          I will wait 30 seconds for anyone to state their

13  name; and, remember, if you do wish to speak, you have to

14  unmute both your phone and the Court Solutions dashboard if

15  you're using that interface.

16          (No response.)

17          THE COURT:  All right.  That was the 30 seconds.

18          So we will go on to the one contested matter that is

19  on the Agenda, which is the Debtor's Motion to Dismiss Counts

20  I and II of Plaintiffs' Second Amended Complaint in adversary

21  proceeding no. 20-115.  The motion is at docket entry no. 41.

22          As speakers, I have first Mr. Rappaport for PREPA for

23  15 minutes.

24          MR. RAPPAPORT:  Good morning, Your Honor.  Lary

25  Rappaport of Proskauer Rose for the Oversight Board as a

1    representative of PREPA.

2              THE COURT:  Good morning.

3              MR. RAPPAPORT:  Your Honor, by agreement of the

4    parties, and the Order of Magistrate Judge Dein, the current

5    Motion to Dismiss focuses on Counts I and II of the Second

6    Amended Complaint.  Those counts are for declaratory relief.

7    Count III, for stay relief, is being held in abeyance.

8              Counts I and II seek various judicial declarations

9    designed to preclude the Oversight Board and the UCC, as the

10   co-trustees for PREPA, from pursuing the pending avoidance

11   action against the same fuel suppliers and testing labs that

12   the plaintiffs have sued in the *Marrero* action, which is a

13   prepetition class action they filed before the district court.

14             PREPA's position is the unsecured claims against

15   PREPA must be handled through the claims resolution process in

16   the Title III case.  As general unsecured claimholders,

17   plaintiffs will recover on any allowed claim through the Title

18   III process.  They may not prevent the co-trustees from

19   pursuing the avoidance action to recover PREPA's property so

20   that they can essentially jump to the front of the line ahead

21   of all the other claimholders.

22             If the transfers to the fuel suppliers and testing

23   labs are avoided, any property that's recovered by the

24   co-trustees may be distributed to all allowed claimholders

25   pursuant to a confirmed PREPA plan.  That would include the

1   *Marrero* plaintiffs, who are the plaintiffs in this action, if

2   their unsecured claims are allowed.  Distribution to all of

3   the un -- allowed unsecured claimholders, and not just the

4   plaintiffs, would not be a windfall as the plaintiffs claim.

5        In the *Marrero* action, the plaintiffs alleged that

6   there was a scheme by vendors of PREPA in which fuel suppliers

7   have delivered inferior quality, less costly fuel oil, but

8   they charged PREPA for the full contract price for higher

9   quality, more costly fuel oil.  They further allege that the

10  testing laboratory defendants falsely certified that the fuel

11  oil met PREPA's contractual requirements.

12       They claim that this alleged scheme was facilitated

13  by kickbacks the fuel suppliers paid to PREPA employees.

14  Their theory is that they were damaged, because they allege

15  the rate that PREPA charged the customers for electricity

16  included these costs for fuel.

17       In the avoidance action, there are claims for breach

18  of contract, avoidance, and recovery of the same transfers

19  from the fuel suppliers and the testing laboratories.  The

20  difference is that in the avoidance action, there is no

21  wrongdoing alleged by PREPA or PREPA employees.

22       In Count I of the Second Amended Complaint here, the

23  plaintiffs allege -- or they seek four declarations:  They ask

24  the Court to declare that the claims in the avoidance action

25  are not assets of the debtor's estate; that PREPA suffered no

1   injury; that the Oversight Board is precluded by section

2   550(d) of the Bankruptcy Code from asserting the claims,

3   because they claim it would essentially violate the single

4   satisfaction rule; and they seek a declaration that the

5   ratepayer plaintiffs are the only victims and the appropriate

6   plaintiffs for the claims.  Each of these claims fails on its

7   face and should be dismissed.

8           In the opposition, plaintiffs back down a bit, and

9   they agree in principle that the claims asserted in the

10  avoidance action are property of the debtor in principle.  And

11  they must be.  They really don't have a good faith basis to

12  dispute that.

13          The avoidance action alleges prepetition claims for

14  breach of contract and for fraudulent transfer.  They seek

15  avoidance under sections 544(b) and 548(a) of the Bankruptcy

16  Code.  Clearly, these are property of the debtor, and clearly,

17  they may only be received by the Trustee, which in this

18  instance under PROMESA is the Oversight Board.

19          The request for a declaration that PREPA suffered no

20  injury fails.  The plaintiffs are ratepayers.  They allege

21  they paid PREPA too much money for electricity, but the

22  avoidance action seeks to recover from the suppliers the

23  transfers that PREPA made to those suppliers.

24          PREPA's claim against the suppliers is not reduced

25  based on payments it received for electricity -- I'm sorry,

1    for -- yeah, for electricity.  Plaintiffs try to get around

2    this fact by arguing that there's a collapsing doctrine that

3    should be applied by the Court.  They essentially want the

4    Court to view plaintiffs as the only victim, because of the

5    surcharges they allege that they paid to PREPA.  There is no

6    support for this allegation.

7         There is a collapsing doctrine, but that collapsing

8    doctrine has never been applied in a situation such as this

9    one.  Each of the cases that are cited by the plaintiffs here

10   involves a scenario in which the Court was trying to determine

11   whether or not reasonably equivalent value had been paid in a

12   very complicated transaction.  Usually, it's a series of

13   multi-step transactions where there's a leveraged buyout.

14   That simply is not the case here.

15        Similarly, the reliance on the single satisfaction

16   doctrine by section 550(d) of the Bankruptcy Code is

17   inapplicable here.  Section 550(d) and the single satisfaction

18   doctrine prevent a trustee from recovering from multiple

19   transferees more than the total value of the transferred

20   assets.  That's demonstrated in the cases that are cited by

21   the plaintiffs in their opposition.  It's also demonstrated in

22   the *In re Belmonte* case, which has been cited by PREPA.

23        Essentially, what it involves is a scenario in which

24   there's multiple transferees.  The trustee in bankruptcy seeks

25   to avoid a transfer against those multiple transferees.  The

1   total amount that is recovered cannot exceed what the total

2   amount lost in the transfer is.

3           Here, instead, the scenario is where the plaintiffs

4   are not transferees, the cases that the plaintiffs cite deal

5   with scenarios in which prepetition the trustee was able to

6   receive back the property that had been transferred.  In those

7   scenarios, there was no transfer that occurred at the time of

8   the petition, and there can be no recovery.

9           Plaintiffs next argue that there would be a double

10   recovery or a windfall to PREPA if the Court were to --

11           THE COURT:  Mr. Rappaport, before you go on to that

12   next argument, just to be clear, in the 550(d) cases that

13   plaintiffs cite, you're saying the very property that would

14   have been recovered post petition had already been restored to

15   the debtor by the transferee before the bankruptcy petition

16   was filed?

17           MR. RAPPAPORT:  That is correct, Your Honor.

18           One of the cases that they cite is *In re Patts* at

19   470 B.R. 234.  That was a case in which there was a husband

20   and wife.  The husband filed for bankruptcy, and the wife,

21   prebankruptcy, had transferred, quitclaim deeded the property

22   back.  And as a result of that, that prepetition transfer was

23   found to be curative of any prior fraudulent transfer; and

24   since the transfer had occurred prepetition, there could be no

25   recovery.

1        The other case that they cite is *Whitlock v. Lowe*,

2   945 F.3d 943; and in that case, it was a scenario where the

3   person who filed for bankruptcy, his wife had written a check

4   prepetition to her sister-in-law.  They opened a joint bank

5   account, and about 275,000 dollars was placed into that bank

6   account prepetition.

7        Prepetition, after that money had been disbursed, it

8   was returned by several of the transferees.  And so as per

9   those transferees, there could be no further recovery against

10  them.  The amount that had not been returned could be pursued,

11  but it didn't violate the single satisfaction rule to the

12  extent that the money already had been returned.  And that is

13  consistent with the case that we have cited, which is *In re*

14  *Belmonte*.

15       THE COURT:  So here the plaintiffs are essentially

16  claiming that, in economic essence, they had reimbursed PREPA

17  already for the transfers that PREPA is trying to recover, so

18  that they should, by other means, be able to -- perhaps you

19  could characterize it as acting like subrogees to PREPA's

20  claims for improper payment of those funds to the suppliers

21  and the labs in the first place.

22       In your view, has any support, legal support been

23  cited for that view of PREPA's satisfaction, or of rights as

24  against the supplier and lab defendants?

25       MR. RAPPAPORT:  No, Your Honor.  There is no support

1   for that proposition, and it doesn't make sense, because

2   normally a business is going to, of course, pass on all or

3   some of its costs to its customers in order to stay in

4   business.  That does not allow the people who made the

5   purchases, in this case the purchase of electricity, to then

6   claim that they have a right to go after any of the suppliers

7   whose costs were passed on.

8        If that were the case, then you really wouldn't have

9   a scenario in having the debtor's trustee file an avoidance

10  action.  You instead would have a situation in which each of

11  the creditors would try to chase the vendors of the debtor in

12  order to try to recover.  Instead, what we need to do here is

13  to have PREPA avoid the transfers, recover what it can

14  recover, and then that money becomes available for

15  distribution to all claimholders.

16       Moving on, the next argument that they make is that

17  the avoidance action would result in double recovery or a

18  windfall to PREPA; but as we just discussed, that really isn't

19  the case, because all that's happened here is that PREPA is

20  trying to avoid the transfers, recover the assets, and then

21  those assets will be available for distribution.

22       And, again, the cases that are cited by the

23  plaintiffs in their opposition don't really stand for the

24  proposition they're trying to make.  Those were cases in which

25  you had a single fact scenario, a single injury, and there

1   were alternative legal theories.  And the courts held that you

2   couldn't recover twice in the same case for the same damages

3   simply by making two different theories.

4        I think one of the key arguments that's being made in

5   the case is that the plaintiffs want to argue that their

6   clients are independent, and that somehow PREPA's claim in the

7   avoidance action is derivative of the claim that they're

8   making in the *Marrero* action.  But the converse is true.

9        In fact, the claims that are being asserted in the

10  *Marrero* action are derivative of PREPA's claims in the

11  avoidance action.  The ratepayer plaintiffs are not parties to

12  PREPA's contracts with the vendors, nor did the plaintiffs pay

13  any money to the fuel suppliers or the testing laboratories.

14  Their claims necessarily derive from PREPA's claim it did not

15  receive reasonably equivalent value --

16        (Sound played.)

17        MR. RAPPAPORT:  -- for the transfers.

18        Plaintiffs argue that they're the appropriate

19  plaintiffs for the claims in the avoidance action based on the

20  *in pari delicto* doctrine; but the *in pari delicto* doctrine

21  fails for several reasons:  First, while it may be available

22  in an action against the trustee under Bankruptcy Code section

23  541, 541 isn't in play here.  In fact, section 541 is not even

24  incorporated into PROMESA.  These are claims under 544 and

25  548.

1         And as this Court held in *ERS* in deciding the

2    cross-motions for summary judgment, courts have found that the

3    *in pari delicto* defense is inapplicable when a trustee brings

4    an action under 544 or 548.  The *in pari delicto* defense or

5    assertion here also fails, because it's an affirmative

6    defense.  It's an affirmative defense, which only may be

7    asserted by the defendants in the avoidance action.  It's not

8    a bar that could be asserted by the plaintiffs here, and

9    certainly not based on their allegations that they have made,

10   that have not been proved, that there was wrongdoing by PREPA

11   employees.

12        The second count seeks two additional declarations,

13   but they're directed to the *Marrero* action.  They want to

14   argue that the *Marrero* action claims are not assets of the

15   debtor's estate, and they also argue that the avoidance action

16   can't preempt or extinguish those claims.

17        As we've discussed, the claims are derivative of the

18   claims that are asserted in the avoidance action; and the

19   proper course is the avoidance action proceeds, that PREPA

20   recovers what they can in the avoidance action, and then that

21   money is made available to all claimholders.  There's no

22   effort --

23        (Sound played.)

24        MR. RAPPAPORT:  -- to try to stop the plaintiffs from

25   proceeding under the claims resolution process and sharing in

1   any distribution.

2         And if the Court doesn't have any further questions,

3   I'll reserve the balance of my time for rebuttal.

4         THE COURT:  Do you wish to express any view as to

5   whether there are, in the RICO statute, claims that are based

6   on damages, or whether the treble damages aspects based on the

7   conspiracy concepts in the RICO statute may support some

8   notion of an independent cause of action against parties other

9   than PREPA, to the extent plaintiffs aren't made whole by

10  their recovery from PREPA?

11        MR. RAPPAPORT:  Two quick points on that, Your Honor.

12  The first is that we do not believe that they're independent.

13  We believe that those claims are derivative, because they are

14  basically alleging, on the same facts, the same theory, and

15  they're trying to recover the same funds.

16        The claim that they have against PREPA is that they

17  were overcharged for electricity.  They claim they were

18  overcharged for electricity based on the fraudulent scheme,

19  that is the same scheme that is the basis for the avoidance

20  action, with the exception that PREPA doesn't allege that

21  PREPA employees were at fault.

22        They're trying to recover, though, the same funds

23  from the defendants in the *Marrero* action that PREPA's trying

24  to avoid in the transfers.  It's the money that was paid by

25  PREPA to the vendors.  But even if Your Honor were to believe

1   that there was a direct independent claim, that would not be a

2   basis to prevent PREPA and the trustees from going forward

3   with the avoidance action.

4        If, at the conclusion of the claims resolution

5   process, if, after there's been a recovery and that recovery

6   has been distributed, if there is an independent claim, they

7   can proceed against those defendants in the independent claim,

8   or if they get leave of Court, which is the basis of Count

9   III, if they can proceed based on leave of Court to go after

10  an independent claim.  But it doesn't stop PREPA from pursuing

11  the avoidance action, which is what Count I and Count II seek

12  to do here.

13       THE COURT:  Thank you.

14       I will now turn to Mr. Arrastia for the UCC for five

15  minutes.

16       MR. ARRASTIA:  Good morning, Your Honor.  John

17  Arrastia from Genovese Joblove & Battista, on behalf of the

18  Official Committee of Unsecured Creditors.

19       I'd like to highlight two points:  Justiciability,

20  and expand on the derivative nature of the claims.  As an

21  initial matter, the plaintiffs have conceded in their

22  opposition that the breach of contract and fraudulent transfer

23  claims belong to PREPA.  As we see it, with that concession,

24  what remains is a request for a declaration that PREPA

25  suffered no injury from the fuel oil scheme, so the class

1    action claims against nondebtors are independent claims that

2    only belong to the class plaintiffs.

3         This requested declaration is not justiciable.  The

4    class plaintiffs seek the very sort of advisory opinion that's

5    not permissible, because it does not satisfy the case or

6    controversy requirement of Article III.

7         The class plaintiffs seek a determination as to

8    future hypothetical scenarios concerning PREPA and nondebtors

9    in other litigation.  Specifically, if PREPA obtains a

10   recovery on the avoidance actions against third parties, then

11   PREPA might seek to borrow the class plaintiffs' claims

12   against those third parties.  That's the concern.  But none of

13   those events have occurred.

14        The class plaintiffs' request for the Court's

15   guidance about what could potentially happen in a speculative

16   scenario, as this Court noted in the *ACP Master* decision, is

17   nothing more than abstract declarations of parties' respective

18   relationships, without any application of the relief to

19   resolve a concrete dispute.

20        And the class plaintiffs aren't even seeking an

21   advance ruling about their own rights.  They're seeking

22   rulings about the viability of a nondebtor defendant's

23   potential unasserted defenses to PREPA's claims in the other

24   litigation.  The class plaintiffs don't have the standing to

25   pursue declarations about hypothetical defenses for

1   nonparties.

2         And the First Circuit's decision in *Aurelius* is

3   particularly instructive.  The Court there explained the

4   declarations that will principally be useful in formulating or

5   litigating future choices that might or might not be made are

6   outside the authorized scope of declaratory relief.  Contrary

7   to that clear rule, that's exactly what the class plaintiffs

8   seek here.

9         Further, there is no basis for declaration of rights,

10  because there's no uncertainty as to the class plaintiffs'

11  rights, which is necessary for this Court to exercise its

12  discretionary jurisdiction to render a declaration.  The class

13  plaintiffs have filed proofs of claim, an acknowledgment, and

14  an admission as to their status as unsecured creditors of

15  PREPA.

16        This Court has already determined in their Lift Stay

17  Motion that those class proofs of claim are unsecured and

18  should be liquidated and addressed in connection with the

19  centralized Title III claims resolution process.  Otherwise,

20  as Mr. Rappaport said, these --

21        (Sound played.)

22        MR. ARRASTIA:  -- unsecured creditors could jump

23  the line of other similarly situated unsecured creditors.

24        As to the second point, the derivative nature of the

25  claims, the class plaintiff claims are not premised on any

1    direct conduct by the nondebtor defendants.  Their claims

2    derive entirely from PREPA's relationship with the fuel oil

3    defendants, and depend entirely upon harm suffered by PREPA.

4    That is the very definition of a derivative claim.

5          Only PREPA is in privity of contract with the fuel

6    oil defendants.  Only PREPA suffered damages from the breaches

7    of those contracts.  PREPA overpaid for the fuel oil, reducing

8    its assets to pay creditors, which is the very harm that

9    fraudulent transfer actions are intended to remedy.

10         In contrast, class plaintiffs only had a relationship

11   with PREPA that -- they argue that pleading a civil RICO count

12   converts their derivative claims into direct claims.  But

13   artful pleading cannot change the character of the derivative

14   claim.

15         The class plaintiffs rely very heavily on the *Bankers*

16   case, with subsequent Second Circuit case law, including *St.*

17   *Paul*, which was decided the next year, has repeatedly rejected

18   the type of argument that the class plaintiffs make here,

19   finding that the plaintiffs in *Bankers* had direct claims,

20   because there was actionable conduct directed specifically at

21   them.

22         That's not the situation here.  So the plaintiffs

23   can't rely on *Bankers* to salvage their derivative claim.  And,

24   respectfully, based on these points and the ones that are

25   raised by the co-trustees in their moving papers, we would

1    seek -- the Committee seeks an order dismissing the Second

2    Amended Complaint.

3              Thank you for your time, Your Honor.

4              THE COURT:  Thank you, Mr. Arrastia.

5              We will now turn to Mr. Vazquez for the plaintiff

6    opponents of the motion, and I have 25 minutes allocated.

7    Mr. Vazquez.

8              MR. VAZQUEZ:  Good morning, Your Honor.

9              THE COURT:  Good morning.

10             MR. VAZQUEZ:  This dispute ultimately boils down to a

11   dispute over who was financially harmed by these overpayments

12   for fuel oil.  Both sides really don't disagree on some of the

13   core facts here.  They both allege that, for some period of

14   time, PREPA's fuel suppliers charged more for fuel than it

15   should have.  And as the ratepayers learned in discovery in

16   the class action, PREPA recovers all those fuel charges 100

17   percent from the ratepayers by a surcharge on their

18   electricity bill designed to recover that exact amount.

19             So, ultimately, this is a question of who was hurt by

20   the alleged misconduct; and, in turn, who, in the interest of

21   justice, should be allowed to recover those overpayments.  So

22   with that in mind, I'd like to start by discussing the *compra*

23   *de combustible*, which is the surcharge in question.

24             This monthly charge on PREPA's ratepayers' bills

25   really is the linchpin of the ratepayers' claims against

1   PREPA, and it really helps you understand how these are not --

2   the ratepayers did not suffer some indirect harm; that they

3   were, in truth, the target of a conspiracy; and that the

4   conduct that is alleged was directed at them.  The term *compra*

5   *de combustible* quite literally translates to "fuel purchase"

6   or "fuel charge" in English, and that's a rather apt name

7   given what it's intended to do.

8           Now, it's a little complicated how PREPA does it, but

9   the short of it is PREPA uses a formula and uses an adjustment

10  factor where it can recover every penny of PREPA's fuel oil

11  costs over a period of two months.  And that's important.

12  It's important, because what it means is that if PREPA's

13  suppliers overcharge PREPA for fuel oil at any time, PREPA did

14  not bear the brunt of that overcharge.  It was not harmed by

15  it.  PREPA's ratepayers bore that overcharge.

16          So whether PREPA paid exactly what it should have for

17  fuel oil, or whether it paid too much, the estate is in the

18  same place it would have been, because the ratepayers

19  reimbursed PREPA for those costs.  In other words --

20          THE COURT:  May I ask you --

21          MR. VAZQUEZ:  Sure.

22          THE COURT:  I'd just like to ask you about an analogy

23  that's been made here.  How is the ratepayers' situation

24  different from customers of a store who go and buy things at a

25  store that's not engaging in predatory pricing or dumping,

1 but, in fact, charges a price that includes the price of the

2 underlying goods, so that the cost of goods sold is recovered

3 by the store, indeed covers those costs, and then later there

4 is a bankruptcy; and it turns out that there are avoidance

5 actions that can be brought by the store as against the

6 various suppliers; and perhaps the goods weren't as good as

7 the suppliers had told the store?

8 Would you say that each individual customer has a

9 direct action against the supplier, because the customers came

10 and paid for the goods in the store, or, rather, is it that

11 the store in the bankruptcy proceeding marshals the assets

12 that it can find to satisfy the claims of its customers who

13 were saying, "Well, you know, it turns out we overpaid for

14 these goods, because they were bad?" What, if any, difference

15 is there in those situations?

16 MR. VAZQUEZ: I think there's a very significant

17 difference. The first one is rather obvious, and that's that

18 PREPA isn't a for-profit business. PREPA is a public utility,

19 and so it is not simply charging customers a price for a

20 product and has various overhead that it's seeking to recover

21 through that price and then make a profit.

22 So, in other words, if a patron goes into McDonald's,

23 it pays a price for french fries knowing that the cost of the

24 potatoes is part of that. And if that -- if, you know --

25 there is no direct charge, fluctuating charge to recover that

1    cost.

2         In this situation, we have a public utility that is

3    negotiating and purchasing fuel oil directly for the

4    ratepayers' benefit; and then turns around and charges them

5    precisely for it, using an exact formula that will, over a

6    period of two months, recover every penny, and using a

7    surcharge with the name that even describes what's going on.

8         So this really isn't -- the big difference is it's

9    really all part of one multi-step transaction, where PREPA is

10   a public utility, is acquiring this fuel oil, and paying for

11   it on behalf of the ratepayers it serves.  So the analogy

12   really doesn't work.  There's no comparison between PREPA and

13   a private business.

14        THE COURT:  Thank you.

15        MR. VAZQUEZ:  And, really, that's something that you

16   continue to see the Oversight Board and Committee dance

17   around, but they can't really escape or deny it, because,

18   ultimately, the effect of the surcharge is that any

19   overcharges didn't diminish the estate.  And if the

20   overcharges didn't diminish the estate, well, then there's no

21   avoidance action.

22        Now, aside from likening the fuel purchases to the

23   overhead of a private for-profit business, another way the

24   Board and Committee attempt to skirt the reality here that

25   they recover all the fuel oil purchases, and I touched on this

1    before, is by describing this as a -- multiple transactions,

2    and that the ratepayers, well, they're paying for electricity

3    and PREPA purchases fuel oil.  And, really, this is

4    intentional, because if you only look at the first part of the

5    transaction, PREPA's acquisition of fuel oil, well, then, you

6    can just ignore the fact that PREPA was made whole by the

7    ratepayers immediately thereafter.

8           And that's where the collapsing doctrine comes in.

9    The collapsing doctrine is meant to prevent this.  And while

10   it's true it's not often employed under these circumstances,

11   this is a unique case, that doesn't mean it cannot be employed

12   here, because the whole point of the doctrine is you're to

13   consider the net effect of the multi-step transaction on the

14   debtor's estate.  And really, that's exactly what we're

15   arguing.  You can't understand the net effect of the fuel

16   purchases on PREPA without also considering the fact that the

17   ratepayers fully reimburse PREPA for them.

18          Now, I'd also like to address this argument from the

19   Board and Committee that the ratepayers were required to plead

20   that in their complaint.  Plaintiffs plead facts and

21   allegations.  They're not required to anticipate every

22   argument on a motion to dismiss and plead the law to counter

23   those arguments.  But in any event, there is support for the

24   collapsing doctrine in the Complaint.  It's in paragraphs 31

25   to 37.

 1               And here plaintiffs describe how the fuel procurement

 2    process works and how PREPA passes those fuel oil costs

 3    directly on to ratepayers.  And there are even diagrams of the

 4    transaction, describing it as a multi-step single transaction.

 5    So the notion that somehow the Complaint lacks support for

 6    this is meritless.

 7               I'd also like to take some time to address the idea

 8    of the single satisfaction rule.  The Board and Committee take

 9    a very narrow view of the single satisfaction rule.  They

10    claim it only applies in circumstances where the satisfaction

11    of the debt comes from the transferee.

12               So in this instance, the transferees would be the

13    fuel oil suppliers, like Petrobras or STUSCO.  And according

14    to the Board and Committee, the single satisfaction rule would

15    only prevent double recovery here if those suppliers happen to

16    have paid PREPA back any of the disputed funds before the

17    estate filed the avoidance action.

18               But their hyperfocus is on who satisfied the supposed

19    debt when, in truth, the single satisfaction rule's goal is

20    simply to look at the amount.  In other words, 550(d) does not

21    consider whether the transferee reimbursed the transferor

22    twice.  It simply looks at whether the transferor has already

23    been made whole.  And that's really the entire purpose of 550.

24    It's to restore the estate to the financial condition it would

25    have been in had the transfer not occurred.

1        But again, and I know I probably sound like a broken

2   record here, but because of the 100 percent pass through of

3   fuel costs, the estate is in the financial condition it would

4   have been in had the transfer not occurred.  The only parties

5   who aren't in the same financial condition here are the

6   ratepayers.

7        And I think you'll notice something that's

8   conspicuously absent from the Board and Committee's arguments.

9   They don't explain how the estate has been unjustly

10  diminished.  If the ratepayers reimburse PREPA for all its

11  fuel oil, a fact that we must not only assume is true for the

12  purpose of a motion to dismiss, but a fact that is publicly

13  admitted on PREPA's website, how has the estate been

14  diminished at all?  The point is it hasn't.  And because it

15  hasn't, it has nothing to recover in an avoidance action.  And

16  if the debtor has nothing to recover in an avoidance action,

17  well, that avoidance action cannot be property of the debtor.

18        THE COURT:  So you're saying the avoidance action

19  doesn't go away, but that the ratepayers are somehow

20  subrogated to that avoidance action, or able to pursue an

21  avoidance action that would otherwise belong to the debtor,

22  because they, as a matter of law, stepped into the shoes of

23  the debtor by buying the product with the surcharge?

24        MR. VAZQUEZ:  Well, we're not seeking to litigate the

25  avoidance action, so to speak, and that's something I'd like

1    to clear up.  We're not trying to take ownership of any

2    fraudulent transfer or breach of contract claims.  The

3    ratepayers have their own RICO action in the district court.

4         We are simply arguing that the estate, as a matter of

5    law, cannot bring the avoidance action, given the fact that

6    PREPA suffered no financial harm.  And the result of that is

7    that the ratepayers' RICO action is not derivative of any

8    avoidance action, because no avoidance action can exist with

9    no harm.

10        THE COURT:  All right.  Go on, please.

11        MR. VAZQUEZ:  And so to describe or to make the point

12   that plaintiffs' case is derivative of the avoidance action,

13   the Oversight Board and Committee argue that it's really just

14   derivative, because they share the same operative facts.  But

15   that's not the rule, and that's not the takeaway of the

16   *TelexFree* case, which they also refer to as *Darr*, as relied on

17   extensively by the Board and Committee.

18        In the *TelexFree* case, the debtor operated a massive

19   pyramid scheme, and it netted some winners and it netted some

20   losers.  And the trustee in that case filed an avoidance

21   action against the members of the scheme that won, so to

22   speak.

23        The reasoning in that case was that the estate had

24   been diminished by the so-called net winners taking more in

25   membership fees than they paid to the debtor.  So the trustee

1    sought to avoid those transactions and recover those funds for

2    the benefit of all creditors.

3         A group of the so-called net losers in turn filed

4    their own action seeking to recover those same funds from the

5    winners of the scheme; but not because the net winners did

6    anything directly to harm the net losers, but, rather, the net

7    losers argued that the net winners were unjustly enriched by

8    the overall scheme.

9         But the problem is -- the problem with the net

10   losers' case and why the Court deemed it derivative was that

11   the net losers were harmed by the overall diminishment of the

12   estate.  There was no direct action on behalf of the winners

13   against the losers that would otherwise give rise to an action

14   that the losers could take against the winners.  In reality,

15   the net losers were simply seeking to recover the same thing

16   as the estate was.  And therein lies the difference in this

17   case.

18        The ratepayers' class action seeks to redress

19   specific acts of fraud perpetrated directly at them, at them,

20   as the ratepayers allege, by PREPA, conspiring with the fuel

21   oil suppliers and the laboratories.  In other words, there is

22   a conspiracy directed at them.  And so the alleged scheme has

23   not injured the bankrupt estate, but specific creditors of the

24   estate, which means that the interest in the lawsuit lies with

25   those creditors, which in this case are the ratepayers.

1          This is something that was explained in the *Steinberg*

2    case, in which the Court gave an analogy and said that where

3    the estate is not harmed, or the harm is not to the estate,

4    but to creditors of that estate, well, then they have a direct

5    action.  So -- and really here we don't have a situation, as

6    the Board and Committee claim, where the ratepayers are

7    attempting to obtain possession or exercise control over the

8    avoidance actions.  It's really the opposite.

9          Through the avoidance actions, the Board has

10   attempted to exercise control over the ratepayers' direct

11   claims against PREPA and its co-conspirators, turning them

12   into a fraudulent transfer claim by simply removing and

13   changing the allegation that PREPA was not part of the

14   conspiracy.

15         The last thing I'd like to talk about --

16         THE COURT:  Before you go there, you still have as

17   part of the conspiratorial conduct, and the part of the

18   allegedly conspiratorial conduct that you're trying to target,

19   transactions at value and quality that are inconsistent with

20   the contractual arrangements between PREPA and the suppliers;

21   and you are seeking to recover amounts paid by PREPA.  You're

22   saying those are part of an overall conspiracy of which PREPA

23   was a part, but that's the money that you are trying to get,

24   correct, the money that PREPA paid to the suppliers, as part

25   of your damages?  Or you want your clients' damages to be

1    recovered, to be reimbursed through collection and

2    reapplication of amounts paid by PREPA to those suppliers and

3    labs; is that correct?

4         MR. VAZQUEZ:  Well, not necessarily.  The ratepayers

5    are simply seeking to be made whole.  The ratepayers are

6    seeking to recover the money that they paid to PREPA as part

7    of that, that conspiracy.

8         THE COURT:  You don't deny that your claim against

9    PREPA itself is a claim that needs to be brought as an

10   unsecured claim in the bankruptcy, correct, or the Title III

11   proceedings?

12        MR. VAZQUEZ:  No.

13        THE COURT:  You don't deny that?

14        MR. VAZQUEZ:  No.

15        THE COURT:  So as to the other participants in the

16   alleged scheme, you are trying to be made whole for amounts

17   that you paid to PREPA based on those other suppliers'

18   transactions with PREPA in terms of overpriced fuel supply

19   paid for by PREPA, which PREPA then charged you for, correct?

20        MR. VAZQUEZ:  In a sense, yes.  We are seeking to

21   recover the amount in which the ratepayers overpaid as a

22   result of the conspiracy between those parties.

23        THE COURT:  Thank you.  You can go ahead.

24        MR. VAZQUEZ:  So, Your Honor, yes, I'd like to end

25   just by discussing this notion of the declaratory relief and

1    its justiciability.  There's really nothing abstract about

2    what plaintiffs are asking for.  In truth, we're just seeking

3    to declare and define the rights in light of certain facts.

4         It should be easily provable how much of PREPA's fuel

5    oil costs were recovered through the surcharge and how they

6    were recovered.  It should be easily provable what, if any,

7    financial losses PREPA incurred in light of that fact.  And

8    then, with those facts established, it should only be a matter

9    of law as to whether the estate can pursue an avoidance

10   action, and -- where I had suffered no financial loss.  And if

11   that's the case, then, really, all the other requested

12   declaratory relief follows from that.

13        THE COURT:  So are you abandoning your *in pari*

14   *delicto* disqualification arguments, and simply basing this

15   effort on arithmetic, if you will?

16        MR. VAZQUEZ:  I wouldn't say we're abandoning that,

17   but, really, we are -- the key thing here is -- and you say

18   it's, you know, arithmetic, and that's one characterization

19   -- that they weren't injured; that the estate wasn't

20   diminished.  So there's no -- nothing to recover in an

21   avoidance action.

22        And so any avoidance action or any contract claims or

23   anything to that effect seeking to recover damages that don't

24   exist, well, then that action cannot exist.

25        THE COURT:  So, in this action, which is as between

1   PREPA and the class, you are seeking to have the Court make a

2   determination as to the liability of the suppliers, those

3   third parties, to PREPA?

4           MR. VAZQUEZ:  No.  No.  We're not asking you to make

5   a determination of the fuel oil suppliers as to PREPA.  It's

6   simply a matter of determining whether or not PREPA suffered

7   any injury, and --

8           THE COURT:  That's the same as saying whether PREPA

9   can sue or whether PREPA has standing to sue third parties in

10  its separate lawsuit?

11          MR. VAZQUEZ:  Correct.

12          THE COURT:  And you believe that the Court has the

13  power to make such a declaration in the lawsuit between the

14  class plaintiffs and PREPA?

15          MR. VAZQUEZ:  We believe that the Court has the power

16  to make a declaration as to the rights of PREPA and the claims

17  in the avoidance action --

18          (Sound played.)

19          MR. VAZQUEZ:  -- with what the assets of the debtors'

20  estate are, and how that impacts the ratepayers' action.

21          THE COURT:  Thank you.  You can go on.

22          MR. VAZQUEZ:  Actually, that is all I plan on talking

23  about, Your Honor.  So unless you have any further questions,

24  we rest on our briefs.

25          THE COURT:  Thank you.

1          Let me just check something before I let you go.

2     Aside from your argument that PREPA had no damages and, for

3     that reason, PREPA can't pursue the avoidance action, can you

4     identify any element of your RICO claim against any of the

5     alleged co-conspirators that is distinct from the claims for

6     reimbursement of overcharges that have been asserted by the

7     trustees?

8          MR. VAZQUEZ:  Any -- I'm not sure I completely

9     understand the question.  Any element of the RICO claim that

10    is -- that -- are we seek --

11         THE COURT:  Different from the claim that the

12    suppliers have to give back amounts that were paid by PREPA,

13    that were overpaid by PREPA.

14         MR. VAZQUEZ:  Well, I think that the key difference

15    is that in the RICO action, we are claiming that the

16    conspiracy -- that the plaintiffs, the ratepayers, were the

17    target of the conspiracy; that the whole way this worked is

18    through the surcharge; and that PREPA and its conspirators

19    agreed to commit fraud against them.

20         (Sound played.)

21         MR. VAZQUEZ:  And that that action was -- those

22    actions were directed at the ratepayers, and --

23         (Sound played.)

24         MR. VAZQUEZ:  -- as a result, they suffered harm

25    because of it.

1          THE COURT:  Thank you.

2          So we will now return to Mr. Rappaport for five

3    minutes.

4          MR. RAPPAPORT:  Thank you, Your Honor.  Once again,

5    Lary Rappaport of Proskauer Rose on behalf of the Oversight

6    Board, as the representative in the Title III of PREPA.

7          Your Honor, I've listened to Mr. Vazquez' argument,

8    and I understand what his argument is.  But what I didn't get

9    from his argument is any legal support for the positions he

10   wants to take.

11         He mentioned at one point that this is a unique case,

12   and that is certainly the way that he's posturing it, unique

13   in the sense that he can't cite to a single case which really

14   supports the relief that they're requesting.  Now, he made a

15   comment about *Darr* and he made a comment about *Steinberg*, and

16   I'll touch upon those in a moment, but otherwise, he doesn't

17   really cite to any legal basis to do what they're asking to

18   do.  For example, the discussion of the injury when Your Honor

19   was asking how is this different from a customer of a store

20   who's being charged for goods, where the cost of the goods are

21   into it, and he said, well, this is a public entity.  But

22   there's no case law for that.

23         It doesn't matter whether or not you've got a

24   government entity that has the cost, and it's being

25   overcharged, and that it's been charging its ratepayers based

1   upon what those costs are.  The principle is the same, and

2   there is no legal basis to do it.  And particularly in a

3   situation where what he's asking to do is, let's ignore all

4   the other overhead that's involved.

5        They're making this claim based upon the extended

6   share of public funds for the purchase of fuel and testing

7   services.  PREPA obviously has lots of overhead, and if it

8   truly were made whole, we wouldn't be in Title III in the

9   first place.

10        When he was asked about the single satisfaction rule

11  and he said, well, it's to prevent a double recovery, because

12  PREPA's been reimbursed for all of the oil, I get what his

13  point is.  I get again that what he's trying to do is he's

14  trying to somehow collapse these transactions so that you cut

15  PREPA out as the middleman and they're allowed to go directly

16  after the suppliers, but there's no legal support for it.

17  They don't cite any cases that allow them to do that.

18        When he talked about it's derivative of the action,

19  and he talked about *Darr* and he talked about *Steinberg*, he

20  made the point that there's action which is directly against

21  the customers or the ratepayers, and that's why they're

22  allowed to go forward.  I don't think that's accurate, and I

23  also don't think that that's what those cases stand for.

24        Remember, this is a case where the privity is between

25  PREPA and the suppliers.  These are breach of contract claims

1   that are made where PREPA paid money under contracts.  These

2   are fraudulent transfers that PREPA's trying to avoid on the

3   theory that there was no reasonably equivalent value that was

4   provided.  Those are clearly property of the debtor, and,

5   clearly, they can only be pursued by the trustee.  And *Darr*

6   doesn't change that.

7           *Darr* was a case in which there was a Ponzi scheme, as

8   Mr. Vazquez described, and the trustee brought an action,

9   avoidance action.  Unquestionably, the debtor was involved.

10          (Sound played.)

11          MR. RAPPAPORT:  The fact that the debtor was involved

12   didn't change anything.

13          *Steinberg* isn't any help, because *Steinberg* was a

14   case where -- it is an adversary proceeding that was filed by

15   the trustee to pierce the corporate veil and hold shareholders

16   liable for prepetition pension distributions that the debtor

17   failed to make.  And the Court simply said there was no

18   wrongdoing shown by the shareholders; they didn't loot the

19   debtor; they didn't do anything wrong; you don't have a claim

20   against them.

21          That doesn't help them here.  In this scenario, we're

22   talking about a situation where the allegation by PREPA is

23   that its vendors overcharged them.  They argue that there's a

24   conspiracy of the parties, and the conspiracy of the parties

25   is what makes this claim justiciable.

 1          To be honest, I didn't really understand that point.

 2   What I really understood was when, in response to Your Honor's

 3   question at the end, he was talking about how -- what they

 4   want the Court to do is they want the Court to make a

 5   declaration as to whether PREPA is the appropriate plaintiff,

 6   whether PREPA suffered injury.  That's not justiciable.

 7   That's not going to change anything with respect to their --

 8   the claim, the proof of claim that they filed here.  That's

 9   not going to change anything with respect to the rights and

10   obligations that they have vis-a-vis the third-party supplier

11   defendants in the *Marrero* action.

12          All he's asking for is an advisory opinion on

13   specific issues that they want to raise in both the proof of

14   claim and in the *Marrero* action.  That is the absolute

15   definition of an advisory opinion.  We'd ask Your Honor to

16   grant the motion.

17          THE COURT:  Thank you, Mr. Rappaport, and thank you,

18   Mr. Arrastia, and Mr. Vazquez as well for your arguments.  The

19   Court takes this matter under submission.

20          This concludes all of the matters that were scheduled

21   to be heard at today's Omni.  Other items are adjourned or

22   otherwise addressed as indicated in the Agenda.

23          Is there any other matter that anyone believes needs

24   to be addressed today?  I will give 30 seconds for any person

25   who wants to be heard to state their name.

 1           (No response.)

 2           THE COURT:  The 30 seconds are up, and since no one

 3  has indicated that they wish to be heard, our hearing is

 4  concluded for today.

 5           The next scheduled hearing is the July 13th, 2021,

 6  telephonic hearing concerning the proposed disclosure

 7  statement.  That hearing will begin at 9:30 AM Atlantic

 8  Standard Time, and dial in and other instructions will be

 9  provided separately in a procedures order closer to the

10  hearing date.

11           As always, I thank the court staff in Puerto Rico,

12  Boston, and New York for their work in preparing for and

13  conducting today's hearing, and their ongoing outstanding

14  support of the administration of these cases under what

15  continue to be challenging circumstances.

16           Stay safe and keep well, everyone.  We are adjourned.

17           (At 10:41 AM, proceedings concluded.)

18                     *      *      *

19

20

21

22

23

24

25

1   U.S. DISTRICT COURT    )

2   DISTRICT OF PUERTO RICO)

3

4       I certify that this transcript consisting of 45 pages is

5   a true and accurate transcription to the best of my ability of

6   the proceedings in this case before the Honorable United

7   States District Court Judge Laura Taylor Swain, and the

8   Honorable United States Magistrate Judge Judith Gail Dein on

9   June 16, 2021.

10

11

12

13  S/ Amy Walker

14  Amy Walker, CSR 3799

15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25

< Dates >
June 16, 2021 1:16, 5:2, 45:9

< 0 >
000 17:5

< 1 >
100 26:16, 32:2
10:41 44:17
11:50 7:23
13th 9:20, 9:22, 44:5
15 11:23
16979 8:4
16990 8:4
16992 7:10
17-3283 5:18, 7:11
17-3283. 8:5
17-BK-3283(LTS 1:6
17-BK-4780(LTS 1:23, 2:7
1:00 7:24

< 2 >
20-115. 11:21
20-AP-00115(LTS 2:5
2021 9:20, 9:22, 44:5
234. 16:19
25 26:6
275 17:5

< 3 >
30 11:12, 11:17, 43:24, 44:2
31 30:24
37. 30:25
3799 45:14
3: 1:6, 1:23, 2:5, 2:7

< 4 >
41. 11:21
45 45:4

470 16:19

< 5 >
541 19:23
544 19:24, 20:4
544(b 14:15
548(a 14:15
548. 19:25, 20:4
550(d 14:2, 15:16, 15:17, 16:12, 31:20
550. 31:23
5:00 7:24

< 9 >
943 17:2
945 17:2
9:30 44:7
9:32 5:3

< A >
A. 2:37
AAFAF 8:1, 8:7, 10:1, 10:2, 10:25, 11:3, 11:5
abandoning 37:13, 37:16
abeyance 12:7
ability 45:5
able 11:4, 16:5, 17:18, 32:20
absent 32:8
absolute 43:14
Absolutely 5:11
abstract 23:17, 37:1
accessing 6:6
according 31:13
account 17:5, 17:6
accurate 7:5, 41:22, 45:5
achieve 9:8
acknowledgment 24:13
ACP 23:16
acquiring 29:10
acquisition 30:5
acting 17:19
actionable 25:20

actions 23:10, 25:9, 28:5, 35:8, 35:9, 39:22
acts 34:19
Actually 38:22
add 11:5
additional 8:13, 10:2, 11:1, 20:12
address 6:20, 30:18, 31:7
addressed 24:18, 43:22, 43:24
adequate 9:24
adjourned 43:21, 44:16
adjustment 8:18, 9:9, 27:9
Administered 1:11, 1:28
administration 44:14
admission 24:14
admitted 32:13
advance 7:6, 8:3, 23:21
adversary 11:20, 42:14
advising 9:10
Advisory 2:41, 23:4, 43:12, 43:15
affirmative 20:5, 20:6
Agency 2:40
Agenda 6:19, 7:10, 7:25, 11:19, 43:22
agree 14:9
agreed 39:19
agreement 12:3
ahead 12:20, 36:23
al 1:16, 2:5, 2:14, 2:35, 5:20
alert 7:15
allegation 15:6, 35:13, 42:22
allegations 20:9, 30:21
allege 13:9, 13:14, 13:23, 14:20, 15:5, 21:20, 26:13, 34:20
alleged 13:5, 13:12,

13:21, 26:20,
27:4, 34:22,
36:16, 39:5
allegedly 35:18
alleges 14:13
alleging 21:14
allocated 26:6
allocation 7:19
allotted 7:8
allow 18:4, 41:17
allowed 12:17,
12:24, 13:2, 13:3,
26:21, 41:15,
41:22
already 16:14,
17:12, 17:17,
24:16, 31:22
alternative 19:1
Amended 11:20, 12:6,
13:22, 26:2
America 5:16
amount 16:1, 16:2,
17:10, 26:18,
31:20, 36:21
amounts 35:21, 36:2,
36:16, 39:12
Amy 45:13, 45:14
analogy 27:22,
29:11, 35:2
Anne 2:5, 3:14
anticipate 30:21
apologize 7:6, 10:16
APPEARANCES 2:30,
3:2
APPEARING 2:32
application 23:18
applied 15:3, 15:8
applies 31:10
appropriate 6:24,
14:5, 19:18, 43:5
approval 8:22, 9:2,
9:15
approved 9:24
apt 27:6
argue 16:9, 19:5,
19:18, 20:14,
20:15, 25:11,
33:13, 42:23
argued 34:7
arguing 15:2, 30:15,

33:4
argument 16:12,
18:16, 25:18,
30:18, 30:22,
39:2, 40:7, 40:8,
40:9
arguments 19:4,
30:23, 32:8,
37:14, 43:18
arithmetic 37:15,
37:18
around 15:1, 29:4,
29:17
arrangements 35:20
Arrastia 3:10,
22:14, 22:16,
22:17, 24:22,
26:4, 43:18
artful 25:13
Article 23:6
Aside 29:22, 39:2
aspects 21:6
asserted 14:9, 19:9,
20:7, 20:8, 20:18,
39:6
asserting 14:2
assertion 20:5
assess 9:7
assets 13:25, 15:20,
18:20, 18:21,
20:14, 25:8,
28:11, 38:19
assume 32:11
assured 9:4
AT&T 10:7, 10:20
Atlantic 44:7
attempt 29:24
attempted 35:10
attempting 35:7
Aurelius 24:2
Authority 1:33,
2:14, 2:41
authorized 24:6
available 7:11, 8:3,
18:14, 18:21,
19:21, 20:21
avoid 15:25, 18:13,
18:20, 21:24,
34:1, 42:2
avoided 12:23

away 7:9, 32:19


< B >
back 7:22, 14:8,
16:6, 16:22,
31:16, 39:12
bad 28:14
balance 21:3
bank 17:4, 17:5
Bankers 25:15,
25:19, 25:23
bankrupt 34:23
Bankruptcy 14:2,
14:15, 15:16,
15:24, 16:15,
16:20, 17:3,
19:22, 28:4,
28:11, 36:10
bar 20:8
based 14:25, 19:19,
20:9, 21:5, 21:6,
21:18, 22:9,
25:24, 36:17,
40:25, 41:5
basically 21:14
basing 37:14
basis 14:11, 21:19,
22:2, 22:8, 24:9,
40:17, 41:2
Battista 22:17
bear 27:14
becomes 18:14
begin 44:7
behalf 22:17, 29:11,
34:12, 40:5
belief 9:12
believe 21:12,
21:13, 21:25,
38:12, 38:15
believes 43:23
Belmonte 15:22,
17:14
belong 22:23, 23:2,
32:21
benefit 29:4, 34:2
best 9:5, 9:12,
9:13, 9:21, 45:5
better 10:5, 10:10,
10:12, 10:14,

10:22
beyond 7:8
BIAGGI 2:41, 11:2
Bienenstock 2:35,
   8:11, 8:12, 8:14
big 29:8
bill 26:18
bills 26:24
bit 10:9, 14:8
Board 1:10, 1:27,
   5:19, 8:1, 8:7,
   8:9, 8:12, 11:25,
   12:9, 14:1, 14:18,
   29:16, 29:24,
   30:19, 31:8,
   31:14, 32:8,
   33:13, 33:17,
   35:6, 35:9, 40:6
boils 26:10
bore 27:15
borrow 23:11
Boston 44:12
breach 13:17, 14:14,
   22:22, 33:2, 41:25
breaches 25:6
break 7:21
breaking 7:6
Brian 2:36
briefly 6:21
briefs 38:24
bring 33:5
brings 20:3
broken 32:1
brought 28:5, 36:9,
   42:8
brunt 27:14
Buenos 5:23
business 18:2, 18:4,
   28:18, 29:13,
   29:23
buy 27:24
buying 32:23
buyout 15:13
buzz 7:16, 7:17
buzzes 7:16, 7:20

< C >
C. 2:41
call 5:10, 7:1,

11:11
calling 6:16
care 8:7
cases 15:9, 15:20,
   16:4, 16:12,
   16:18, 18:22,
   18:24, 41:17,
   41:23, 44:14
CAT 3:49
Catesby 2:5, 3:14
cause 21:8
centralized 24:19
certain 37:3
certainly 20:9,
   40:12
certified 13:10
certify 45:4
challenging 44:15
change 25:13, 42:6,
   42:12, 43:7, 43:9
changing 35:13
character 25:13
characterization
   37:18
characterize 17:19
charge 26:24, 27:6,
   28:25
charged 13:8, 13:15,
   26:14, 36:19,
   40:20
charges 26:16, 28:1,
   29:4
charging 28:19,
   40:25
chase 18:11
check 17:3, 39:1
choices 24:5
Circuit 24:2, 25:16
circumstances 6:23,
   30:10, 31:10,
   44:15
cite 16:4, 16:13,
   16:18, 17:1,
   40:13, 40:17,
   41:17
cited 15:9, 15:20,
   15:22, 17:13,
   17:23, 18:22
citizens 6:2
civil 25:11

claimholders 12:16,
   12:21, 12:24,
   13:3, 18:15, 20:21
claiming 17:16,
   39:15
clarity 6:18
class 12:13, 22:25,
   23:2, 23:4, 23:7,
   23:11, 23:14,
   23:20, 23:24,
   24:7, 24:10,
   24:12, 24:17,
   24:25, 25:10,
   25:15, 25:18,
   26:16, 34:18,
   38:1, 38:14
clear 16:12, 24:7,
   33:1
Clearly 6:24, 11:10,
   14:16, 42:4, 42:5
Clerk 7:12
clients 19:6, 35:25
closer 9:17, 44:9
co-conspirators
   35:11, 39:5
co-trustees 12:10,
   12:18, 12:24,
   25:25
Code 14:2, 14:16,
   15:16, 19:22
COFINA 3:10
collapse 41:14
collapsing 15:2,
   15:7, 30:8, 30:9,
   30:24
collection 36:1
combustible 26:23,
   27:5
comes 30:8, 31:11
comment 40:15
comments 11:9
commit 39:19
Committee 3:6,
   22:18, 26:1,
   29:16, 29:24,
   30:19, 31:8,
   31:14, 32:8,
   33:13, 33:17, 35:6
Commonwealth 1:15,
   2:34, 5:20

comparison 29:12
Complaint 11:20,
  12:6, 13:22, 26:2,
  30:20, 30:24, 31:5
completely 39:8
complexity 8:21
complicated 15:12,
  27:8
compra 26:22, 27:4
compromise 9:6
computer 6:7
conceded 22:21
concepts 21:7
concern 8:20, 23:12
concerning 23:8,
  44:6
concession 22:23
concluded 44:4
concluded. 44:17
concludes 43:20
conclusion 22:4
concrete 23:19
condition 31:24,
  32:3, 32:5
conduct 25:1, 25:20,
  27:4, 35:17, 35:18
conducting 44:13
conference 6:11
confirm 9:19, 9:21,
  9:25
confirmable 9:9
confirmation 8:24,
  9:11
confirmed 12:25
connection 11:9,
  24:18
consensual 8:17,
  9:4, 9:18
consider 9:6, 30:13,
  31:21
considering 30:16
consistent 6:10,
  17:13
consisting 45:4
conspicuously 32:8
conspiracy 21:7,
  27:3, 34:22,
  35:14, 35:22,
  36:7, 36:22,
  39:16, 39:17,

42:24
conspiratorial
  35:17, 35:18
conspirators 39:18
conspiring 34:20
containing 9:24
contested 11:18
context 9:13
continue 29:16,
  44:15
Continued 3:2
contract 13:8,
  13:18, 14:14,
  22:22, 25:5, 33:2,
  37:22, 41:25
contracts 19:12,
  25:7, 42:1
contractual 13:11,
  35:20
Contrary 24:6
contrast 25:10
control 35:7, 35:10
controversy 23:6
converse 19:8
converts 25:12
core 26:13
corporate 42:15
Correct 16:17,
  35:24, 36:3,
  36:10, 36:19,
  38:11
cost 7:11, 28:2,
  28:23, 29:1,
  40:20, 40:24
costly 13:7, 13:9
costs 13:16, 18:3,
  18:7, 27:11,
  27:19, 28:3, 31:2,
  32:3, 37:5, 41:1
counsel 5:23, 11:8
Count 12:7, 13:22,
  20:12, 22:8,
  22:11, 25:11
counter 30:22
Counts 11:19, 12:5,
  12:6, 12:8
course 6:21, 18:2,
  20:19
COURTROOM 5:8, 5:11
courts 19:1, 20:2

cover 8:8
covers 28:3
create 7:5
Creditors 3:7,
  18:11, 22:18,
  24:14, 24:22,
  24:23, 25:8, 34:2,
  34:23, 34:25, 35:4
cross-motions 20:2
crucial 8:22
CSR 45:14
curative 16:23
current 12:4
customer 28:8, 40:19
customers 13:15,
  18:3, 27:24, 28:9,
  28:12, 28:19,
  41:21
cut 41:14


< D >

damaged 13:14
damages 19:2, 21:6,
  25:6, 35:25,
  37:23, 39:2
dance 29:16
Darr 33:16, 40:15,
  41:19, 42:5, 42:7
dashboard 6:8, 6:9,
  6:25, 11:14
date 9:15, 9:20,
  44:10
de 26:23, 27:5
deal 16:4
debt 31:11, 31:19
Debtor 11:19, 13:25,
  14:10, 14:16,
  16:15, 18:9,
  18:11, 20:15,
  30:14, 32:16,
  32:17, 32:21,
  32:23, 33:18,
  33:25, 42:4, 42:9,
  42:11, 42:16,
  42:19
Debtors 1:18, 1:35,
  3:8, 8:24, 38:19
decided 25:17
deciding 20:1

decision 23:16, 24:2
declaration 14:4,
  14:19, 22:24,
  23:3, 24:9, 24:12,
  38:13, 38:16, 43:5
declarations 12:8,
  13:23, 20:12,
  23:17, 23:25, 24:4
declaratory 12:6,
  24:6, 36:25, 37:12
declare 13:24, 37:3
deeded 16:21
deemed 34:10
defendant 23:22
Defendants 2:18,
  13:10, 17:24,
  20:7, 21:23, 22:7,
  25:1, 25:3, 25:6,
  43:11
defense 20:3, 20:4,
  20:6
defenses 23:23,
  23:25
define 37:3
definition 25:4,
  43:15
Dein 2:26, 5:16,
  12:4, 45:8
delicto 19:20, 20:3,
  20:4, 37:14
delivered 13:7
demonstrated 15:20,
  15:21
deny 29:17, 36:8,
  36:13
depend 25:3
DEPUTY 5:8, 5:11
derivative 19:7,
  19:10, 20:17,
  21:13, 22:20,
  24:24, 25:4,
  25:12, 25:13,
  25:23, 33:7,
  33:12, 33:14,
  34:10, 41:18
derive 19:14, 25:2
describe 31:1, 33:11
described 42:8
describes 29:7
describing 30:1,

31:4
designed 12:9, 26:18
Despite 5:24
detail 8:7
determination 23:7,
  38:2, 38:5
determine 15:10
determined 24:16
determining 38:6
diagrams 31:3
dial 7:22, 44:8
dias 5:23
difference 13:20,
  28:14, 28:17,
  29:8, 34:16, 39:14
Different 19:3,
  27:24, 39:11,
  40:19
difficult 7:4
difficulties 5:25
difficulty 7:8,
  10:17
diminish 29:19,
  29:20
diminished 32:10,
  32:14, 33:24,
  37:20
diminishment 34:11
direct 7:21, 22:1,
  25:1, 25:12,
  25:19, 28:9,
  28:25, 34:12,
  35:4, 35:10
directed 20:13,
  25:20, 27:4,
  34:22, 39:22
directly 29:3, 31:3,
  34:6, 34:19,
  41:15, 41:20
directs 9:14
disagree 26:12
disbursed 17:7
Disclosure 8:18,
  8:21, 8:23, 9:3,
  9:16, 9:20, 9:23,
  44:6
disconnect 7:22
discovery 26:15
discretionary 24:12
discussed 18:18,

20:17
discussing 26:22,
  36:25
discussion 40:18
Dismiss 11:19, 12:5,
  30:22, 32:12
dismissed 14:7
dismissing 26:1
dispute 14:12,
  23:19, 26:10,
  26:11
disputed 31:16
disqualification
  37:14
dissemination 9:2
distinct 39:5
distributed 12:24,
  22:6
Distribution 13:2,
  18:15, 18:21, 21:1
distributions 42:16
District 1:1, 1:3,
  2:24, 2:25, 2:27,
  5:13, 12:13, 33:3,
  45:1, 45:2, 45:7
Docket 1:6, 1:23,
  2:5, 7:10, 8:4,
  11:21
doctrine 15:2, 15:7,
  15:8, 15:16,
  15:18, 19:20,
  30:8, 30:9, 30:12,
  30:24
dollars 17:5
double 16:9, 18:17,
  31:15, 41:11
down 14:8, 26:10
dumping 27:25
during 6:16, 6:21,
  7:3


< E >
easily 37:4, 37:6
economic 17:16
effect 29:18, 30:13,
  30:15, 37:23
effort 20:22, 37:15
efforts 6:1, 8:17,
  9:5, 9:12, 9:14,

9:21
Electric 1:32, 2:13
electricity 13:15,
   14:21, 14:25,
   15:1, 18:5, 21:17,
   21:18, 26:18, 30:2
element 39:4, 39:9
employed 30:10,
   30:11
employees 13:13,
   13:21, 20:11,
   21:21
encourage 7:13
encouraged 5:25
end 36:24, 43:3
engage 9:14
engaging 27:25
English 27:6
enriched 34:7
ensure 6:4
entire 31:23
entirely 25:2, 25:3
entity 40:21, 40:24
entry 7:10, 8:4,
   11:21
equivalent 15:11,
   19:15, 42:3
ERS 20:1
escape 29:17
Esq 2:41
essence 17:16
essential 9:4, 9:8
Essentially 12:20,
   14:3, 15:3, 15:23,
   17:15
established 37:8
estate 13:25, 20:15,
   27:17, 29:19,
   29:20, 30:14,
   31:17, 31:24,
   32:3, 32:9, 32:13,
   33:4, 33:23,
   34:12, 34:16,
   34:23, 34:24,
   35:3, 35:4, 37:9,
   37:19, 38:20
et 1:16, 2:5, 2:14,
   2:35, 5:20
event 30:23
events 23:13

Everyone 5:8, 6:10,
   7:21, 10:16, 44:16
exact 26:18, 29:5
exactly 24:7, 27:16,
   30:14
example 7:17, 40:18
exceed 16:1
exception 21:20
exercise 24:11,
   35:7, 35:10
EXHIBITS 4:9
exist 33:8, 37:24
expand 22:20
explain 32:9
explained 24:3, 35:1
express 21:4
extended 41:5
extensively 33:17
extent 17:12, 21:9
extinguish 20:16

< F >
F.3d 17:2
face 14:7
facilitated 13:12
fact 15:2, 18:25,
   19:9, 19:23, 28:1,
   30:6, 30:16,
   32:11, 32:12,
   33:5, 37:7, 42:11
factor 27:10
facts 21:14, 26:13,
   30:20, 33:14,
   37:3, 37:8
failed 42:17
fails 14:6, 14:20,
   19:21, 20:5
failure 9:8
fairly 9:6
faith 9:5, 9:12,
   9:13, 9:21, 14:11
falsely 13:10
fault 21:21
feature 6:25
fees 33:25
file 18:9
filed 7:10, 12:13,
   16:16, 16:20,
   17:3, 24:13,

31:17, 33:20,
   34:3, 42:14, 43:8
final 7:20
Financial 1:9, 1:26,
   2:40, 5:18, 31:24,
   32:3, 32:5, 33:6,
   37:7, 37:10
financially 26:11
find 28:12
finding 25:19
firm 9:7
First 7:25, 10:24,
   11:4, 11:22,
   17:21, 19:21,
   21:12, 24:2,
   28:17, 30:4, 41:9
Fiscal 2:39
five 22:14, 40:2
fluctuating 28:25
focuses 12:5
follows 8:18, 37:12
for-profit 28:18,
   29:23
formula 27:9, 29:5
formulating 24:4
forward 22:2, 41:22
found 16:23, 20:2
four 13:23
fraud 34:19, 39:19
fraudulent 14:14,
   16:23, 21:18,
   22:22, 25:9, 33:2,
   35:12, 42:2
french 28:23
fries 28:23
front 12:20
full 13:8
fully 30:17
funds 17:20, 21:15,
   21:22, 31:16,
   34:1, 34:4, 41:6
future 23:8, 24:5

< G >
Gail 2:26, 45:8
gave 35:2
general 8:16, 12:16
Genovese 22:17
Give 10:6, 10:13,

34:13, 39:12,
  43:24
given 8:20, 27:7,
  33:5
goal 31:19
God 5:16
goods 28:2, 28:6,
  28:10, 28:14,
  40:20
government 40:24
grant 43:16
great 5:25
group 34:3
guidance 23:15

< H >
handled 12:15
happen 23:15, 31:15
happened 18:19
harm 25:3, 25:8,
  27:2, 33:6, 33:9,
  34:6, 35:3, 39:24
harmed 26:11, 27:14,
  34:11, 35:3
hear 7:20, 10:18,
  10:21, 11:4
heard 6:23, 7:2,
  43:21, 43:25, 44:3
Hearing 2:23, 5:20,
  6:5, 6:12, 7:4,
  7:5, 7:8, 8:3,
  8:19, 9:20, 10:17,
  44:3, 44:5, 44:6,
  44:7, 44:10, 44:13
heavily 25:15
held 12:7, 19:1,
  20:1
Hello 10:5
help 42:13, 42:21
helps 27:1
higher 13:8
highlight 22:19
hold 42:15
honest 43:1
Honor 5:12, 11:2,
  11:24, 12:3,
  16:17, 17:25,
  21:11, 21:25,
  22:16, 26:3, 26:8,

36:24, 38:23,
  40:4, 40:7, 40:18,
  43:2, 43:15
Honorable 2:24,
  2:26, 5:14, 5:15,
  5:17, 45:6, 45:8
horizon 8:19
hours 7:23
Houser 9:11
hurt 26:19
husband 16:19, 16:20
hyperfocus 31:18
hypothetical 23:8,
  23:25

< I >
idea 31:7
identify 6:17, 39:4
ignore 30:6, 41:3
II 11:20, 12:5,
  12:8, 22:11
III 1:8, 1:25, 3:8,
  12:7, 12:16,
  12:18, 22:9, 23:6,
  24:19, 36:10,
  40:6, 41:8
immediately 30:7
impacts 38:20
important 8:8,
  27:11, 27:12
improper 17:20
improved 6:1
in. 30:8
inapplicable 15:17,
  20:3
include 12:25
included 13:16
includes 28:1
including 6:13,
  25:16
inconsistent 35:19
incorporated 19:24
incurred 37:7
independent 19:6,
  21:8, 21:12, 22:1,
  22:6, 22:7, 22:10,
  23:1
indicated 43:22,
  44:3

indirect 27:2
individual 28:8
inferior 13:7
information 9:25
initial 22:21
injured 34:23, 37:19
injury 14:1, 14:20,
  18:25, 22:25,
  38:7, 40:18, 43:6
instance 10:24,
  14:18, 31:12
Instead 16:3, 18:10,
  18:12
instructions 44:8
instructive 24:3
intend 8:24
intended 25:9, 27:7
intentional 30:4
interest 5:24, 6:20,
  26:20, 34:24
interested 7:12,
  8:20
interface 11:15
interrupt 7:3, 7:4,
  7:7, 10:3, 10:14
involved 41:4, 42:9,
  42:11
involves 15:10,
  15:23
Ismael 3:13
issued 6:12
issues 6:21, 43:13
item 7:25
items 43:21
itself 36:9

< J >
J. 2:35
Joblove 22:17
John 3:10, 22:16
joint 17:4
Jointly 1:11, 1:28
Jones 2:5, 3:15
Jorge 3:15
Juan 5:1
Judge 2:24, 2:25,
  2:26, 2:27, 5:5,
  5:7, 5:15, 8:11,
  9:11, 10:3, 10:15,

12:4, 45:7, 45:8
judgment 20:2
judicial 6:11, 12:8
Judith 2:26, 5:16,
   45:8
July 9:20, 9:22,
   44:5
jump 12:20, 24:22
jurisdiction 24:12
justice 26:21
Justiciability
   22:19, 37:1
justiciable 23:3,
   42:25, 43:6


< K >
keep 7:13, 44:16
keeping 7:14
key 19:4, 37:17,
   39:14
kickbacks 13:13
kind 10:20
knowing 28:23


< L >
lab 17:24
laboratories 13:19,
   19:13, 34:21
laboratory 13:10
labs 12:11, 12:23,
   17:21, 36:3
lacks 31:5
large 8:21
Lary 2:37, 11:24,
   40:5
last 35:15
later 28:3
Laura 2:24, 5:14,
   45:7
law 25:16, 30:22,
   32:22, 33:5, 37:9,
   40:22
lawsuit 34:24,
   38:10, 38:13
leader 9:11
learned 26:15
leave 22:8, 22:9
legal 17:22, 19:1,

40:9, 40:17, 41:2,
   41:16
less 7:20, 13:7
leveraged 15:13
liability 38:2
liable 42:16
lies 34:16, 34:24
Lift 24:16
light 37:3, 37:7
likening 29:22
limited 6:13
linchpin 26:25
line 6:5, 10:7,
   11:8, 12:20, 24:23
liquidated 24:18
Lisa 5:7, 10:3
listed 6:18
listened 40:7
listening 10:7
literally 27:5
litigate 32:24
litigating 24:5
litigation 23:9,
   23:24
little 10:4, 10:9,
   10:19, 10:21, 27:8
Llauger 3:16
look 30:4, 31:20
looks 31:22
loot 42:18
losers 33:20, 34:3,
   34:6, 34:7, 34:10,
   34:11, 34:13,
   34:14, 34:15
loss 37:10
losses 37:7
lost 16:2
lot 10:22
lots 41:7
low 10:4, 10:19,
   10:20, 10:21,
   10:23
Lowe 17:1
Luis 2:41, 11:2


< M >
Magistrate 2:26,
   5:15, 12:4, 45:8
mailing 9:23

mainland 6:3
Management 1:10,
   1:27, 5:19
Marini 2:41, 11:2,
   11:3, 11:7
Mark 3:16
Marrero 3:13, 12:12,
   13:1, 13:5, 19:8,
   19:10, 20:13,
   20:14, 21:23,
   43:11, 43:14
marshals 28:11
Martin 2:35, 8:12
massive 33:18
Master 23:16
matter 11:18, 22:21,
   32:22, 33:4, 37:8,
   38:6, 40:23,
   43:19, 43:23
matters 6:19, 8:8,
   43:20
Mcdonald 28:22
mean 9:14, 30:11
meaningful 9:17
means 17:18, 27:12,
   34:24
meant 30:9
mediation 9:11
members 5:24, 6:14,
   33:21
membership 33:25
mentioned 40:11
meritless 31:6
met 13:11
middleman 41:15
mind 26:22
minutes 7:15, 7:19,
   11:23, 22:15,
   26:6, 40:3
misconduct 26:20
moment 40:16
money 14:21, 17:7,
   17:12, 18:14,
   19:13, 20:21,
   21:24, 35:23,
   35:24, 36:6, 42:1
monthly 26:24
months 27:11, 29:6
morning 5:5, 5:7,
   5:11, 5:22, 7:22,

8:11, 8:13, 8:15,
  11:2, 11:24, 12:2,
  22:16, 26:8, 26:9
Motion 11:19, 11:21,
  12:5, 24:17, 26:6,
  30:22, 32:12,
  43:16
moved 9:16
Moving 18:16, 25:25
MS 5:7, 5:10, 5:21,
  10:3, 10:6, 10:13,
  10:18, 10:20
multi-step 15:13,
  29:9, 30:13, 31:4
multiple 15:18,
  15:24, 15:25, 30:1
mute 6:5, 6:7
myself 10:24


< N >
name 6:17, 6:24,
  11:11, 11:13,
  27:6, 29:7, 43:25
narrow 31:9
nature 22:20, 24:24
necessarily 19:14,
  36:4
necessary 7:23, 9:1,
  24:11
need 6:8, 7:21,
  18:12
needs 36:9, 43:23
negotiating 29:3
net 30:13, 30:15,
  33:24, 34:3, 34:5,
  34:6, 34:7, 34:9,
  34:11, 34:15
netted 33:19
New 44:12
next 16:9, 16:12,
  18:16, 25:17, 44:5
NG 5:7, 10:3, 10:6,
  10:13, 10:18,
  10:20
No. 1:6, 1:23, 2:5,
  5:18, 7:10, 7:11,
  8:4, 11:21, 36:12,
  36:14, 38:4
nondebtor 23:22,

25:1
nondebtors 23:1,
  23:8
None 4:5, 4:11,
  23:12
nonparties 24:1
nor 19:12
normally 18:2
nos. 8:4
note 8:19
noted 23:16
nothing 23:17,
  32:15, 32:16,
  37:1, 37:20
notice 32:7
notion 21:8, 31:5,
  36:25


< O >
objections 8:22
obligations 43:10
obtain 35:7
obtains 23:9
obvious 28:17
obviously 41:7
occurred 16:7,
  16:24, 23:13,
  31:25, 32:4
Official 3:5, 22:18,
  45:15
often 30:10
oil 13:7, 13:9,
  13:11, 22:25,
  25:2, 25:6, 25:7,
  26:12, 27:10,
  27:13, 27:17,
  29:3, 29:10,
  29:25, 30:3, 30:5,
  31:2, 31:13,
  32:11, 34:21,
  37:5, 38:5, 41:12
Omni 43:21
Omnibus 2:23, 5:20
Once 40:4
One 7:1, 7:16,
  10:11, 10:13,
  11:18, 16:18,
  19:4, 28:17, 29:9,
  37:18, 40:11, 44:2

one. 15:9
ones 25:24
ongoing 44:13
opened 17:4
operated 33:18
operation 6:4
operative 33:14
opinion 23:4, 43:12,
  43:15
opponents 26:6
opportunity 6:20
opposite 35:8
opposition 14:8,
  15:21, 18:23,
  22:22
Order 8:2, 12:4,
  18:3, 18:12, 26:1,
  44:9
orderly 6:4
orders 6:11
Otherwise 24:19,
  32:21, 34:13,
  40:16, 43:22
outside 24:6
outstanding 44:13
overall 6:1, 34:8,
  34:11, 35:22
overcharge 27:13,
  27:14, 27:15
overcharged 21:17,
  21:18, 40:25,
  42:23
overcharges 29:19,
  29:20, 39:6
overhead 28:20,
  29:23, 41:4, 41:7
overpaid 25:7,
  28:13, 36:21,
  39:13
overpayments 26:11,
  26:21
overpriced 36:18
Oversight 1:9, 1:26,
  5:18, 8:1, 8:7,
  8:9, 8:12, 11:25,
  12:9, 14:1, 14:18,
  29:16, 33:13, 40:5
own 7:14, 23:21,
  33:3, 34:4
ownership 33:1

< P >
PAGE 4:3
pages 45:4
paid 13:13, 14:21,
    15:5, 15:11,
    21:24, 27:16,
    27:17, 28:10,
    31:16, 33:25,
    35:21, 35:24,
    36:2, 36:6, 36:17,
    36:19, 39:12, 42:1
papers 25:25
paragraphs 30:24
pari 19:20, 20:3,
    20:4, 37:13
part 28:24, 29:9,
    30:4, 35:13,
    35:17, 35:22,
    35:23, 35:24, 36:6
participant 7:9
participants 36:15
particularly 24:3,
    41:2
PARTIES 2:32, 5:23,
    6:5, 6:14, 6:20,
    8:20, 9:5, 9:10,
    9:14, 12:4, 19:11,
    21:8, 23:10,
    23:12, 23:17,
    32:4, 36:22, 38:3,
    38:9, 42:24
pass 18:2, 32:2
passed 18:7
passes 31:2
past 5:25
patron 28:22
Patts 16:18
Paul 25:17
pay 19:12, 25:8
paying 29:10, 30:2
payment 17:20
payments 14:25
pays 28:23
PBA 3:9
pending 12:10
penny 27:10, 29:6
pension 42:16
people 10:18, 18:4

per 17:8
percent 26:17, 32:2
perhaps 17:18, 28:6
period 26:13, 27:11,
    29:6
permissible 23:5
permit 9:23
permitted 6:13
perpetrated 34:19
person 6:13, 7:1,
    17:3, 43:24
petition 16:8,
    16:14, 16:15
Petrobras 31:13
phone 6:8, 6:9,
    11:14
phones 6:5
PHV 2:35, 2:36,
    2:37, 3:10, 3:16
pierce 42:15
place 17:21, 27:18,
    41:9
placed 17:5
plaintiff 24:25,
    26:5, 43:5
plan 8:24, 8:25,
    9:3, 9:9, 9:10,
    9:18, 12:25, 38:22
plans 8:17
play 19:23
played. 7:18, 19:16,
    20:23, 24:21,
    38:18, 39:20,
    39:23, 42:10
plead 30:19, 30:20,
    30:22
pleading 25:11,
    25:13
Please 5:10, 6:7,
    6:17, 6:24, 7:3,
    7:9, 11:10, 33:10
PM 7:24
point 9:6, 24:24,
    30:12, 32:14,
    33:11, 40:11,
    41:13, 41:20
point. 43:1
points 21:11, 22:19,
    25:24
policies 6:11

Ponzi 42:7
position 12:14
positions 9:7, 40:9
possession 35:7
possible 9:23
post 16:14
posturing 40:12
potatoes 28:24
potential 9:6, 23:23
potentially 23:15
Power 1:33, 2:14,
    38:13, 38:15
prebankruptcy 16:21
precisely 29:5
preclude 12:9
precluded 14:1
predatory 27:25
preempt 20:16
premised 24:25
preparing 44:12
Prepetition 12:13,
    14:13, 16:5,
    16:22, 16:24,
    17:4, 17:6, 17:7,
    42:16
present 5:15, 8:24
presentations 6:22
presiding 5:15
press 5:24, 6:14
prevent 12:18,
    15:18, 22:2, 30:9,
    31:15, 41:11
price 13:8, 28:1,
    28:19, 28:21,
    28:23
pricing 27:25
Prime 7:12
principally 24:4
principle 14:9,
    14:10, 41:1
prior 16:23
private 29:13, 29:23
privity 25:5, 41:24
probably 32:1
problem 34:9
Procedures 8:2, 44:9
proceed 22:7, 22:9
proceeding 11:21,
    20:25, 28:11,
    42:14

Proceedings 3:48,
   6:6, 6:17, 36:11,
   44:17, 45:6
proceeds 20:19
process 12:15,
   12:18, 20:25,
   22:5, 24:19, 31:2
procurement 31:1
produced 3:48
product 28:20, 32:23
profit 28:21
progress 9:17
PROMESA 1:8, 1:25,
   14:18, 19:24
proof 43:8, 43:13
proofs 24:13, 24:17
proper 20:19
property 12:19,
   12:23, 14:10,
   14:16, 16:6,
   16:13, 16:21,
   32:17, 42:4
proposals 9:16
proposed 44:6
proposition 18:1,
   18:24
Proskauer 8:12,
   11:25, 40:5
prospect 6:1
provable 37:4, 37:6
proved 20:10
provide 6:19
provided 42:4, 44:9
public 5:24, 6:14,
   7:11, 8:4, 28:18,
   29:2, 29:10,
   40:21, 41:6
publicly 32:12
PUERTO 1:3, 1:11,
   1:16, 1:28, 1:32,
   2:13, 2:35, 2:39,
   5:1, 5:14, 5:19,
   5:20, 6:2, 44:11,
   45:2
punished 6:15
purchase 18:5, 27:5,
   41:6
purchases 18:5,
   29:22, 29:25,
   30:3, 30:16

purchasing 29:3
purpose 31:23, 32:12
pursuant 12:25
pursue 23:25, 32:20,
   37:9, 39:3
pursued 17:10, 42:5
pursuing 12:10,
   12:19, 22:10
pyramid 33:19


< Q >
quality 13:7, 13:9,
   35:19
question 26:19,
   26:23, 39:9, 43:3
questions 7:7, 11:9,
   21:2, 38:23
quick 21:11
quitclaim 16:21
quite 27:5


< R >
raise 43:13
raised 6:21, 25:25
Rappaport 2:37,
   11:22, 11:24,
   11:25, 12:3,
   16:11, 16:17,
   17:25, 19:17,
   20:24, 21:11,
   24:20, 40:2, 40:4,
   40:5, 42:11, 43:17
rate 13:15
ratepayer 14:5,
   19:11
rather 27:6, 28:10,
   28:17, 34:6
Re 1:6, 1:23, 5:18,
   15:22, 16:18,
   17:13
reach 8:17
real 8:23
reality 29:24, 34:14
really 14:11, 18:8,
   18:18, 18:23,
   26:12, 26:25,
   27:1, 29:8, 29:9,
   29:12, 29:15,

29:17, 30:3,
   30:14, 31:23,
   33:13, 35:5, 35:8,
   37:1, 37:11,
   37:17, 40:13,
   40:17, 43:1, 43:2
reapplication 36:2
reason 39:3
reasonably 15:11,
   19:15, 42:3
reasoning 33:23
reasons 19:21
rebuttal 21:3
receive 16:6, 19:15
received 14:17,
   14:25
record 6:18, 32:2
recorded 3:48
recording 6:12
recover 12:17,
   12:19, 14:22,
   17:17, 18:12,
   18:13, 18:14,
   18:20, 19:2,
   21:15, 21:22,
   26:18, 26:21,
   27:10, 28:20,
   28:25, 29:6,
   29:25, 32:15,
   32:16, 34:1, 34:4,
   34:15, 35:21,
   36:6, 36:21,
   37:20, 37:23
recovered 12:23,
   16:1, 16:14, 28:2,
   36:1, 37:5, 37:6
recovering 15:18
recovers 20:20,
   26:16
recovery 6:1, 13:18,
   16:8, 16:10,
   16:25, 17:9,
   18:17, 21:10,
   22:5, 23:10,
   31:15, 41:11
redress 34:18
reduced 14:24
reducing 25:7
refer 33:16
reflected 8:7

reflects 8:23
reimburse 30:17,
   32:10
reimbursed 17:16,
   27:19, 31:21,
   36:1, 41:12
reimbursement 39:6
rejected 25:17
relates 8:16
relationship 25:2,
   25:10
relationships 23:18
reliance 15:15
relied 33:16
relief 12:6, 12:7,
   23:18, 24:6,
   36:25, 37:12,
   40:14
rely 9:11, 25:15,
   25:23
remaining 7:16
remains 22:24
remark 8:16
remarks 6:22, 8:10,
   8:13, 10:2, 11:1
remedy 25:9
Remember 11:13,
   41:24
remind 6:10
removing 35:12
render 24:12
repeatedly 25:17
report 8:17, 11:6
Reporter 45:15
reports 7:25, 8:2,
   8:6, 8:8, 11:10
representative 1:13,
   1:30, 5:19, 10:1,
   12:1, 40:6
representatives 8:9,
   10:25
request 14:19,
   22:24, 23:14
requested 8:1, 23:3,
   37:11
requesting 40:14
require 6:22
required 30:19,
   30:21
requirement 23:6

requirements 13:11
reserve 21:3
resolicitations 8:25
resolution 12:15,
   20:25, 22:4, 24:19
resolve 23:19
respect 43:7, 43:9
respectfully 25:24
respective 23:17
respond 10:13
response 10:8, 43:2
response. 11:16,
   44:1
rest 38:24
restore 31:24
restored 16:14
result 16:22, 18:17,
   33:6, 36:22, 39:24
resume 7:24
retransmission 6:12
return 40:2
returned 17:8,
   17:10, 17:12
RICO 1:3, 1:11,
   1:16, 1:28, 1:32,
   2:13, 2:35, 2:39,
   5:1, 5:14, 5:19,
   5:20, 6:2, 21:5,
   21:7, 25:11, 33:3,
   33:7, 39:4, 39:9,
   39:15, 44:11, 45:2
rights 17:23, 23:21,
   24:9, 24:11, 37:3,
   38:16, 43:9
rise 34:13
risking 9:8
Rolon 3:14
Rose 8:12, 11:25,
   40:5
Rosen 2:36
rule 6:15, 7:6,
   14:4, 17:11, 24:7,
   31:8, 31:9, 31:14,
   31:19, 33:15,
   41:10
ruling 23:21
rulings 23:22


< S >

S. 2:36
S/ 45:13
safe 44:16
salvage 25:23
San 5:1
sanctions 6:15
Sarah 10:7
satisfaction 14:4,
   15:15, 15:17,
   17:11, 17:23,
   31:8, 31:9, 31:10,
   31:14, 31:19,
   41:10
satisfied 31:18
satisfy 23:5, 28:12
save 5:16
saying 16:13, 28:13,
   32:18, 35:22, 38:8
says 10:9, 10:14
scenario 15:10,
   15:23, 16:3, 17:2,
   18:9, 18:25,
   23:16, 42:21
scenarios 16:5,
   16:7, 23:8
scheduled 43:20,
   44:5
scheme 13:6, 13:12,
   21:18, 21:19,
   22:25, 33:19,
   33:21, 34:5, 34:8,
   34:22, 36:16, 42:7
scope 24:6
Second 10:6, 10:13,
   11:5, 11:20, 12:5,
   13:22, 20:12,
   24:24, 25:16, 26:1
seconds 11:12,
   11:17, 43:24, 44:2
Section 14:1, 15:16,
   15:17, 19:22,
   19:23
sections 14:15
seek 12:8, 13:23,
   14:4, 14:14,
   22:11, 23:4, 23:7,
   23:11, 24:8, 26:1,
   39:10
seeking 23:20,
   23:21, 28:20,

32:24, 34:4,
34:15, 35:21,
36:5, 36:6, 36:20,
37:2, 37:23, 38:1
seeks 14:22, 15:24,
20:12, 26:1, 34:18
select 6:7
sense 18:1, 36:20,
40:13
separate 38:10
separately 44:9
series 15:12
serves 29:11
services 41:7
session 5:14
several 17:8, 19:21
share 33:14, 41:6
shareholders 42:15,
42:18
sharing 20:25
she'll 10:13
shoes 32:22
short 27:9
show 9:17
shown 42:18
sides 26:12
significant 28:16
Similarly 15:15,
24:23
simply 15:14, 19:3,
28:19, 31:20,
31:22, 33:4,
34:15, 35:12,
36:5, 37:14, 38:6,
42:17
single 14:3, 15:15,
15:17, 17:11,
18:25, 31:4, 31:8,
31:9, 31:14,
31:19, 40:13,
41:10
sister-in-law 17:4
situated 24:23
situation 15:8,
18:10, 25:22,
27:23, 29:2, 35:5,
41:3, 42:22
situations 28:15
skirt 29:24
so-called 33:24,

34:3
sold 28:2
Solutions 6:8, 6:25,
11:14
somehow 19:6, 31:5,
32:19, 41:14
Sorry 10:3, 10:4,
10:14, 10:15,
10:23, 14:25
sort 23:4
sought 34:1
Sound 7:17, 7:18,
19:16, 20:23,
24:21, 32:1,
38:18, 39:20,
39:23, 42:10
speaker 6:16, 7:13,
7:15
speakers 6:18, 7:1,
11:22
speaking 5:6, 6:6
specific 34:19,
34:23, 43:13
Specifically 23:9,
25:20
specified 7:22
speculative 23:15
spoken 6:19
St. 25:16
staff 44:11
stand 18:23, 41:23
Standard 44:8
standing 23:24, 38:9
start 26:22
state 6:24, 11:10,
11:12, 43:25
Statement 8:19,
8:21, 8:23, 9:3,
9:16, 9:20, 9:24,
44:7
States 1:1, 2:25,
2:27, 5:13, 5:16,
45:7, 45:8
status 7:25, 8:6,
8:17, 11:6, 11:9,
24:14
statute 21:5, 21:7
Stay 12:7, 18:3,
24:16, 44:16
Steinberg 35:1,

40:15, 41:19,
42:13
stenography 3:48
stepped 32:22
stop 20:24, 22:10
store 27:24, 27:25,
28:3, 28:5, 28:7,
28:10, 28:11,
40:19
STUSCO 31:13
submission 43:19
subrogated 32:20
subrogees 17:19
subsequent 25:16
substantially 9:3
sue 38:9
sued 12:12
suffer 27:2
suffered 13:25,
14:19, 22:25,
25:3, 25:6, 33:6,
37:10, 38:6,
39:24, 43:6
sufficiently 9:7
summary 20:2
supervision 9:22
supplier 17:24,
28:9, 43:10
suppliers 12:11,
12:22, 13:6,
13:13, 13:19,
14:22, 14:23,
14:24, 17:20,
18:6, 19:13,
26:14, 27:13,
28:6, 28:7, 31:13,
31:15, 34:21,
35:20, 35:24,
36:2, 36:17, 38:2,
38:5, 39:12,
41:16, 41:25
supply 36:18
support 15:6, 17:22,
17:25, 21:7,
30:23, 31:5, 40:9,
41:16, 44:14
supports 40:14
supposed 31:18
surcharge 26:17,
26:23, 29:7,

29:18, 32:23,
37:5, 39:18
surcharges 15:5
Swain 2:24, 5:5,
5:15, 8:11, 45:7

< T >
Tacoronte 5:10, 5:21
takeaway 33:15
talked 41:18, 41:19
target 27:3, 35:18,
39:17
Taylor 2:24, 5:14,
45:7
team 9:11
telephonic 6:4, 8:3,
44:6
TELEPHONICALLY 2:32
Telexfree 33:16,
33:18
term 9:13, 27:4
terms 8:23, 36:18
Testing 10:11,
12:11, 12:22,
13:10, 13:19,
19:13, 41:6
theories 19:1, 19:3
theory 13:14, 21:14,
42:3
thereafter 30:7
therein 34:16
third 23:10, 23:12,
38:3, 38:9
third-party 43:10
though 21:22
three. 10:11
Title 1:8, 1:25,
3:8, 12:16, 12:17,
24:19, 36:10,
40:6, 41:8
today 6:4, 6:19,
43:21, 43:24,
44:4, 44:13
total 15:19, 16:1
touch 40:16
touched 29:25
toward 9:17
track 7:13, 7:14
transaction 15:12,

29:9, 30:5, 30:13,
31:4
transactions 15:13,
30:1, 34:1, 35:19,
36:18, 41:14
Transcript 3:48,
7:5, 45:4
transcription 45:5
transfer 14:14,
15:25, 16:2, 16:7,
16:22, 16:23,
16:24, 22:22,
25:9, 31:25, 32:4,
33:2, 35:12
transferee 16:15,
31:11, 31:21
transferees 15:19,
15:24, 15:25,
16:4, 17:8, 17:9,
31:12
transferor 31:21,
31:22
transferred 15:19,
16:6, 16:21
transfers 12:22,
13:18, 14:23,
17:17, 18:13,
18:20, 19:17,
21:24, 42:2
translates 27:5
treble 21:6
true 19:8, 30:10,
32:11, 45:5
truly 41:8
Trustee 14:17,
15:18, 15:24,
16:5, 18:9, 19:22,
20:3, 33:20,
33:25, 42:5, 42:8,
42:15
trustees 22:2, 39:7
truth 27:3, 31:19,
37:2
try 15:1, 18:11,
18:12, 20:24
trying 15:10, 17:17,
18:20, 18:24,
21:15, 21:22,
21:23, 33:1,
35:18, 35:23,

36:16, 41:13,
41:14, 42:2
turn 10:1, 22:14,
26:5, 26:20, 34:3
turned 10:24
turning 8:6, 35:11
turns 28:4, 28:13,
29:4
twice 19:2, 31:22
Two 7:15, 7:16,
7:19, 10:11, 19:3,
20:12, 21:11,
22:19, 27:11, 29:6
type 25:18

< U >
UCC 12:9, 22:14
ultimately 26:10,
26:19, 29:18
un 13:3
unasserted 23:23
uncertainty 24:10
underlying 28:2
understand 27:1,
30:15, 39:9, 40:8,
43:1
understood 43:2
undertaken 9:22
unique 30:11, 40:11,
40:12
United 1:1, 2:25,
2:27, 5:13, 5:16,
45:6, 45:8
unjustly 32:9, 34:7
unless 38:23
unmute 6:9, 11:14
Unquestionably 42:9
Unsecured 3:7,
12:14, 12:16,
13:2, 13:3, 22:18,
24:14, 24:17,
24:22, 24:23,
36:10
until 7:23, 9:25
useful 24:4
uses 27:9
using 11:15, 29:5,
29:6
usual 7:6, 7:25

utility 28:18, 29:2,
  29:10


< V >
v. 2:11, 17:1
Valdes 3:16
value 15:11, 15:19,
  19:15, 35:19, 42:3
various 12:8, 28:6,
  28:20
Vazquez 3:16, 26:5,
  26:7, 26:8, 26:10,
  27:21, 28:16,
  29:15, 32:24,
  33:11, 36:4,
  36:12, 36:14,
  36:20, 36:24,
  37:16, 38:4,
  38:11, 38:15,
  38:19, 38:22,
  39:8, 39:14,
  39:21, 39:24,
  40:7, 42:8, 43:18
veil 42:15
vendors 13:6, 18:11,
  19:12, 21:25,
  42:23
viability 23:22
victim 15:4
victims 14:5
view 15:4, 17:22,
  17:23, 21:4, 31:9
violate 14:3, 17:11
Violations 6:15
vis-a-vis 43:10
volume 8:21, 10:19,
  10:20, 10:24
votes 8:25


< W >
wait 11:11, 11:12
Walker 45:13, 45:14
wants 40:10, 43:25
wave 6:25
website 32:13
Welcome 5:23
well-being 6:2
whatever 9:7

whether 15:11, 21:5,
  21:6, 27:16,
  27:17, 31:21,
  31:22, 37:9, 38:6,
  38:8, 38:9, 40:23,
  43:5, 43:6
Whitlock 17:1
whole 21:9, 30:6,
  30:12, 31:23,
  36:5, 36:16,
  39:17, 41:8
wife 16:20, 17:3
will 6:16, 7:1,
  7:14, 7:15, 7:20,
  7:24, 9:13, 9:19,
  9:23, 10:1, 11:12,
  11:18, 12:17,
  18:21, 22:14,
  24:4, 26:5, 29:5,
  37:15, 40:2,
  43:24, 44:7, 44:8
windfall 13:4,
  16:10, 18:18
winners 33:19,
  33:24, 34:5, 34:7,
  34:12, 34:14
wish 6:23, 8:9,
  10:2, 10:25,
  11:13, 21:4, 44:3
wishes 7:1
without 23:18, 30:16
WITNESSES 4:3
won 33:21
words 27:19, 28:22,
  31:20, 34:21
work 29:12, 44:12
worked 39:17
works 31:2
worth 9:8
writing 8:2, 9:19
written 17:3
wrongdoing 13:21,
  20:10, 42:18


< Y >
year 5:25, 25:17
York 44:12
yourselves 6:17