Response Deadline: July 19, 2021, at 4:00PM (Atlantic Standard Time)
Hearing Date:  August 4, 2021, at 9:30AM (Atlantic Standard Time)

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>               Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth, HTA, ERS, and PBA.** |

### THREE HUNDRED FIFTY-SECOND OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO, THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY TO DUPLICATE AND NO LIABILITY BOND CLAIMS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, and ERS, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Debtors pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this three hundred fifty-second omnibus objection (the "Three Hundred Fifty-Second Omnibus Objection") to the proofs of claim listed on **Exhibit A** hereto, each of which is based, in part, on (*a*) bond claims that are duplicative of one or more master proofs of claim filed against the Debtors on behalf of the holders of certain bonds, (*b*) an ownership interest in bonds issued by the Government Development Bank of Puerto Rico ("GDB"), and/or (*c*) an ownership interest in bonds issued by the Puerto Rico Aqueducts and Sewers Authority ("PRASA") and/or notes issued by the Puerto Rico Conservation Trust Fund ("PRCTF"), which are not Title III Debtors, for amounts for which the Debtors have not guaranteed repayment.  In support of the Three Hundred Fifty-Second Omnibus Objection, the Debtors respectfully represent as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

## BACKGROUND

### A.    The Bar Date Orders

3.    On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").  On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA and ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (respectively the "HTA Title III Case" and the "ERS Title III Case").  On September 27, 2019, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for PBA pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "PBA Title III Case," and together with the Commonwealth Title III Case, the HTA Title III Case, and the ERS Title III Case, the "Title III Cases").  On October 9, 2019, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.  ECF No. 8829.[3]

4.    On January 16, 2018, the Commonwealth, HTA, and ERS filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Commonwealth, HTA, and ERS Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Commonwealth, HTA, and ERS Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

Commonwealth Title III Case, the HTA Title III Case, and the ERS Title III Case.  Upon the informative motion of certain creditors, and the support of the Commonwealth, HTA, and ERS, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Commonwealth, HTA, and ERS Initial Bar Date Order, the "Commonwealth, HTA, and ERS Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

5.       On February 11, 2020, PBA filed its *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 36 in 19-BK-5523-LTS] (the "PBA Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 55 in 19-BK-5523-LTS] (the "Initial PBA Bar Date Order"), the Court granted the relief requested in the PBA Bar Date Motion and established deadlines and procedures for filing proofs of claim in the PBA Title III Case.  Upon the informative motion of certain creditors, and the support of PBA, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 13403] (together with the PBA Initial Bar Date Order, the "PBA Bar Date Orders," and together with the Commonwealth, HTA, and ERS Bar Date Orders, the "Bar Date Orders"), extending these deadlines to July 29, 2020 at 4:00 p.m. (Atlantic Time).

**B.       Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

6.       Pursuant to the Bar Date Orders, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Commonwealth, HTA, and ERS Initial Bar Date Order, ¶ 5(a).  As explained below, master proofs of claim (collectively, the

"Commonwealth Master Claims") have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by PBA, the Puerto Rico Industrial Development Company ("PRIDCO"), and the Puerto Rico Infrastructure Financing Authority ("PRIFA").

7.  **_PBA_**—PBA purportedly issued Revenue Bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth.  US Bank and US Bank Trust serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833.[4]  The PBA Master Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingent claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ." Rider to PBA Master Claim, ¶¶ 19-21.

8.  **_PRIFA_**—PRIFA is an affiliate of the GDB and is a government instrumentality of the Commonwealth.  PRIFA was created in 1988 by Act No. 44-1988 (the "PRIFA Enabling Act"). PRIFA provides financial, administrative and other types of assistance to the Commonwealth, its public corporations and other instrumentalities responsible for developing and operating infrastructure facilities.  On behalf of the holders of various bonds and notes issued by PRIFA (collectively, the "PRIFA Bonds"), master proofs of claim were asserted against the

---

[4]  Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was initially filed by the Fiscal Agent.

Commonwealth (collectively, the "PRIFA Master Claims") by BNYM, US Bank, and UMB Bank, N.A.  First, BNYM asserted three master proofs of claim: Proof of Claim No. 16759, asserting, on behalf of holders of Dedicated Tax Fund Revenue Bond Anticipation Notes, Series 15 (the "PRIFA Notes"), a "contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the Owners may have against the Commonwealth arising at law or in equity based upon or relating to the Trust Agreement, the Noteholder Agreement, the Notes, or the Pledged Revenues . . . "; Proof of Claim No. 19814 asserting, on behalf of holders of PRIFA Notes, claims for principal and unpaid interest, in addition to fees and expenses of the trustee; and Proof of Claim No. 103718, asserting, on behalf of holders of revenue bonds issued by PRIFA, including Revenue Bonds (Port Authority Project), Series 2011A, "a secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the holders of the Bonds has or may have against the Commonwealth arising at law or in equity . . . ."

9.      Additionally, US Bank filed a master proof of claim with respect to certain PRIFA Bonds, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13386, on behalf of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006B), asserting "claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, amount not less than $249,099,446.17, which course of conduct continues . . . ."  Rider to Proof of Claim No. 13386, ¶ 26.

10.      UMB also filed a master proof of claim on behalf of holders of PRIFA Infrastructure Revenue Bonds, 2007 Series A (MEPSI Campus Project), which was logged by Prime Clerk LLC, as Proof of Claim No. 22130, and seeks recovery of unpaid principal allegedly

owed in the aggregate amount of $33.9 million, unpaid interest allegedly owed in the aggregate amount of $188,552.72, in addition to unliquidated amounts for any and all amounts owed on account of any and all claims UMB may have relating to the outstanding bond obligations.  Rider to Proof of Claim No. 22130, ¶¶ 17-18.

11.     ***PRIDCO***—PRIDCO was created by Law No. 188 of 1942, codified as 23 L.P.R.A. §§ 271 *et seq.*, to promote economic development of Puerto Rico and provide industrial facilities for lease or sale to private manufacturing companies.  US Bank serves as trustee for certain General Purpose Revenue and Refunding Revenue Bonds Series 1997 A and Series 2003 (the "PRIDCO Bonds"), and on behalf of the holders of PRIDCO Bonds filed a master proof of claim against the Commonwealth, which was logged by Prime Clerk as Proof of Claim No. 13445 (the "PRIDCO Master Claim,").  The PRIDCO Master Claim asserts contingent, unliquidated claims against the Commonwealth, and seeks "recovery of any and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, whether known or unknown, against the Commonwealth and all those purporting to act on the Commonwealth's behalf, whether presently asserted or to be asserted, including without limitation claims for or based upon the breach or violation of the Bond Documents, lease agreements or other contractual obligations relating to the underlying collateral, any other covenants or other contractual obligations contained therein, or claims arising from the improper diversion of PRIDCO's revenues or any other property securing the payment of the Bonds under the Bond Documents, as a matter of relevant Commonwealth, state or federal law, including without limitation constructive trust, fraudulent conveyance or fraudulent transfer, failure to fulfill contractual and fiduciary obligations and duties, breach of implied covenants of good faith and fair dealing, or other legal or equitable claims."  Rider to PRIDCO Master Claim, ¶¶ 12-13.

**C.     Bond Debt Master Proofs of Claim – ERS Title III Case**

12.     ERS is a trust established by the Commonwealth in 1951 for the economic well-being of public employees.  ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.

13.     Purportedly pursuant to that certain *Pension Funding Bond Resolution*, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds") in the aggregate original principal amount of approximately $2.9 billion.[5]

14.     BNYM serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the holders of the ERS Bonds, BNYM filed a master proof of claim in the ERS Title III Case with respect to the ERS Bonds, asserting approximately $3.8 billion in liabilities plus unliquidated amounts, which was logged by Prime Clerk as Proof of Claim No. 16777 (the "ERS Master Proof of Claim," and together with the HTA Master Proofs of Claim and the Commonwealth Master Proofs of Claim, the "Master Proofs of Claim").

**D.     Bond Debt Master Proofs of Claim – HTA Title III Case**

15.     HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA

---

[5] On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*.  ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.

16.     The HTA Enabling Act authorizes HTA to issue bonds.  *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Resolution Bonds"): (a) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (b) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution"). As of the Petition Date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding.

17.     BNYM serves as fiscal agent with respect to the HTA Resolution Bonds.  On behalf of the holders of the HTA Resolution Bonds, BNYM filed three master proofs of claim in the HTA Title III Case (collectively, the "BNYM Master Proofs of Claims"): Proof of Claim No. 37245, asserting on behalf of holders of bonds issued under the 1968 Resolution approximately $847 million in liabilities plus unliquidated amounts; Proof of Claim No. 38574, asserting on behalf of holders of bonds issued under the 1998 Resolution approximately $3.2 billion in liabilities plus unliquidated amounts; and Proof of Claim No. 32622, asserting on behalf of holders of subordinated bonds issued under the 1998 Resolution approximately $279 million in liabilities plus unliquidated amounts.

18.     Additionally, in accordance with the HTA Enabling Act, in 2003 HTA issued a series of Special Facility Revenue Refunding Bonds to facilitate the financing of the Teodoro Moscoso Bridge (the "Bridge Bonds").  Banco Popular de Puerto Rico ("Banco Popular") serves as trustee with respect to the Bridge Bonds.  On behalf of the holders of Bridge Bonds, Banco Popular filed in the HTA Title III Case a master proof of claim asserting approximately $153 million in liabilities plus unliquidated amounts for "all amounts owed on account of the [Bridge]

Bonds," which was logged by Prime Clerk, LLC, as Proof of Claim No. 22624 (together with the BNYM Master Proofs of Claim, the "HTA Master Proofs of Claim").

**E.     Bond Debt Master Proofs of Claim – PBA Title III Case**

19.     ***PBA***—On behalf of the holders of the PBA Bonds, US Bank and US Bank Trust, as fiscal agents for certain revenue bonds issued by PBA, filed a master proof of claim in the PBA Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 174834.  The PBA Master Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingent claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown against PBA and all those purporting to act on the PBA's behalf . . . ."  Rider to PBA Master Claim, ¶ 24(d).

**F.     Bond Debt Issued by the Puerto Rico Conservation Trust Fund**

20.     The Puerto Rico Conservation Trust Fund is a charitable, irrevocable and perpetual trust fund created under a Deed of Trust dated January 23, 1970.  The principal purpose of PRCTF is to protect and enhance the natural resources and beauty of Puerto Rico. PRCTF has implemented its purpose through the acquisition, active management and development of lands in Puerto Rico. On October 2, 2003, PRCTF released its final offering circular for $100,000,000 worth of 6.30% secured notes with a maturity date of 2033 (the "PRCTF Notes").  The PRCTF Notes were issued as non-recourse debt obligations of PRCTF, payable solely from and secured solely by a pledge of 6.95% cumulative monthly income trust preferred securities to be issued by R&G Capital Trust III.  The offering statement issued in connection with the PRCTF Notes states that the "[PRCTF] Notes are obligations solely of Conservation Trust and do not constitute a debt of the Government of Puerto Rico or any governmental agency . . . ."  PRCTF Notes Offering Statement at 1.

10

**B.     Bond Debt Issued by the Puerto Rico Aqueducts and Sewers Authority**

21.     PRASA was established pursuant to Act Number 40 of May 1, 1945.  PRASA is a "public corporation and an autonomous government instrumentality" created for the purpose of providing water and sewer services on the island.  22 L.P.R.A. § 142, 144.

22.     The PRASA Enabling Act authorizes PRASA to issue bonds.  22 L.P.R.A. § 144(g). Pursuant thereto, the PRASA governing board has adopted resolutions authorizing PRASA to issue bonds, including Resolution No. 1583, as amended and restated as of March 7, 2008 ("Resolution No. 1583").  In 2012, PRASA issued $1,800,450,000 principal amount of Series 2012 A revenue bonds (the "2012 Senior Series A Bonds," or the "PRASA Senior Lien Bonds").

23.     Holders of PRASA Senior Lien Bonds have received and continue to receive all payments owed to holders of the PRASA Bonds in full as they become due and owing. Accordingly, EMMA reflects that PRASA has not posted any notices of default with respect to the PRASA Senior Lien Bonds.[6]  In addition, the Commonwealth has not guaranteed repayment of the Senior Lien Bonds.  Accordingly, the offering statements for the PRASA Senior Lien Bonds state that they are "not a debt of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, other than [PRASA], and neither the Commonwealth of Puerto Rico or any such municipalities or other political subdivisions, other than [PRASA], shall be liable for the payment of the principal of or interest on said Bonds."[7]

**C.     The GDB Title VI Proceedings and Qualifying Modification**

24.     GDB is a public corporation and governmental instrumentality of the Commonwealth, which was created by the Legislative Assembly in 1948 to aid the government of the Commonwealth (the "Government") in performing its fiscal duties and in more effectively

---

[6] *See, e.g.*, https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

[7] *See, e.g.*, Offering Statement for PRASA Revenue Bonds, Series A (Senior Lien), February 15, 2012, available at https://emma.msrb.org/ER584464-ER454075-ER856856.pdf.

carrying out its responsibility to develop the economy of the Commonwealth.  On April 28, 2017,

the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which

contemplated an orderly wind-down of the operations of GDB based upon the determination that

there was no clear path for the long-term viability of GDB based on its then-current financial

condition.

25.     On July 12, 2017, the Oversight Board issued a resolution authorizing GDB,

pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA.  On August

10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to

PROMESA section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District

Court for the District of Puerto Rico.

26.     On November 7, 2018, the Court approved the Qualifying Modification pursuant

to PROMESA section 601(m)(1)(D).  *See* ECF No. 270 in *Government Development Bank for

Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018).  The Qualifying Modification provides for,

among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery

Authority in exchange for the cancellation of, among other things, certain participating bonds and

guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the

Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the

guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and

its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or

transfer of any security or interest of GDB, and any action or omission with respect to any

indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB.

*Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*,

Case No. 18-1561 (D.P.R. Aug. 10, 2018).

27.     On November 29, 2018, GDB announced the consummation of the Qualifying

Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of*

*the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at*
http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-
modification.pdf.

**D.    Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections**

28.     To date, approximately 179,420 proofs of claim have been filed against the Debtors
and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.59 trillion in
asserted claims against the Debtors, in addition to unliquidated amounts asserted.

29.     Of the proofs of claim filed, approximately 116,160 have been filed in relation to,
or reclassified to be asserted against, the Commonwealth.  Approximately 53,022 proofs of claim
have been filed in relation to, or reclassified to be asserted against, ERS.  Approximately 390
proofs of claim have been filed in relation to, or reclassified to be asserted against, PBA.
Additionally, approximately 2,260 proofs of claim have been filed in relation to, or reclassified to
be asserted against, HTA.  In accordance with the terms of the Bar Date Orders, many of these
claims need not have been filed at all, or suffer from some other flaw, such as being subsequently
amended, not putting forth a claim for which the Debtors are liable, being duplicative of other
proofs of claim, or failing to provide information necessary for the Debtors to determine whether
the claim is valid.

30.     To efficiently resolve as many of the unnecessary proofs of claim as possible, on
October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A)
Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy
Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures
Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order
dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B)
Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF
No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus

Objection Procedures").   On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

31.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

32.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 14 hearings related to over 140 omnibus objections filed by the Commonwealth, HTA, ERS, Puerto Rico Sales Tax financing Corporation ("COFINA") and/or the Puerto Rico Electric Power Authority ("PREPA").  Based upon rulings and orders of the Court to date, approximately 101,019 claims asserting $43.59 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, and ERS have been disallowed and expunged from the claims registry in the Title III proceedings.

33.     This Three Hundred Fifty-Second Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

34.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim.  *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

35.     The Amended Omnibus Objection Procedures allow the Debtors to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

36.     The Three Hundred Fifty-Second Omnibus Objection seeks to disallow in their entirety, in accordance with the Amended Omnibus Objection Procedures, proofs of claim listed on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed"), each of which is based, in part, on (*a*) bond claims that are duplicative of one or more master proofs of claim filed against the Debtors on behalf of the holders of certain bonds, (*b*) an ownership interest in bonds issued by GDB, and/or (*c*) an ownership interest in bonds issued by PRASA and/or notes issued by PRCTF, which are not Title III Debtors, for amounts for which the Debtors have not guaranteed repayment. **Exhibit A** hereto further specifies why each of the Claims to Be Disallowed should be disallowed in their entirety.

### A.  No Liability for GDB Bondholder Claims

37.     As identified in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert, in whole or in part, claims based on the alleged ownership of bonds issued by GDB (collectively the "GDB Bondholder Claims").

38.     Each of the GDB Bondholder Claims purports to be based, in whole or in part, on the ownership of GDB Bonds that were subject to the Qualifying Modification, which provided for the issuance of new securities in exchange for the cancellation of the GDB Bonds and the extinguishment of the Commonwealth's guarantee of certain GDB Bonds, and thus the Commonwealth is no longer liable for these claims.  Accordingly, each of the GDB Bondholder Claims has been released pursuant to the approval and consummation of the Qualifying Modification.  As noted above, the Qualifying Modification provides, among other things, that holders of GDB Bonds shall release GDB and its affiliates from claims relating to the GDB Bonds and any action or omission of GDB and its affiliates with respect to any indebtedness of or loan to GDB.  GDB is a public corporation and instrumentality of the Commonwealth.  The Commonwealth, thus, is an affiliate of GDB within the scope of the release pursuant to the Qualifying Modification.  Accordingly, the GDB Bondholder Claims were released upon the consummation of the Qualifying Modification on November 29, 2018.

39.     Because the GDB Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be disallowed, because they seek recovery of amounts for which the Commonwealth is not liable.

**B.  No Liability for Partial Duplicate Bond Claims**

40.     As set forth in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert liability, in part, on the basis of bonds issued by HTA, ERS, PBA, PRIDCO, and PRIFA (collectively the "Duplicate Bond Claims").

41.     Each of the Duplicate Bond Claims purport to assert, in whole or in part, liability against the Debtors associated with one or more bonds that is duplicative of one or more Master

16

Claims, which as described above were filed in the Title III Cases on behalf of the holders of certain bonds issued by HTA, ERS, PBA, PRIDCO, and PRIFA.  Any failure to disallow the Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Debtors, to the detriment of other stakeholders in the Debtors' Title III Cases.  The holders of the Duplicate Bond Claims will not be prejudiced by the disallowance of their claims because the liabilities associated with the Duplicate Bond Claims are subsumed within one or more Master Claims.

### C.  No Liability for PRASA Senior Lien Bonds and PRCTF Notes

42.    As identified in **<u>Exhibit A</u>** hereto, certain Claims to Be Disallowed purport to assert claims based on the alleged ownership of bonds issued by PRASA (the "<u>PRASA Senior Lien Bondholder Claims</u>") and notes issued by PRCTF (the "<u>PRCTF Note Claims</u>").

43.    The PRASA Senior Lien Bondholder Claims assert liabilities associated with PRASA Senior Lien Bonds issued by PRASA, which is not a Title III Debtor, and is a separate, legally distinct entity from the Debtors.  In addition, the Debtors have not guaranteed repayment for the Senior Lien Bonds.  The PRCTF Note Claims assert liabilities associated with notes issued by PRCTF, but PRCTF is also not a Title III debtor, and is a separate, legally distinct entity from the Debtors.  Further, the offering statement issued in connection with the PRCTF Notes also states that the PRCTF Notes are not an obligation of the Debtors.

44.    The PRASA Senior Lien Bondholder Claims and the PRCTF Note Claims do not assert a basis for asserting a claim against the Debtors for bonds issued by PRASA and/or notes issued by PRCTF that are not guaranteed by the Debtors.  Because of this failure to comply with the applicable rules, neither the Debtors nor the Court are able to determine the validity of the PRASA Senior Lien Bondholder Claim and the PRCTF Note Claims.

45.    In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Three Hundred Fifty-Second Omnibus Objection (Substantive) of the*

*Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and Puerto Rico Public Buildings Authority to Duplicate and No Liability Bond Claims*, dated June 18, 2021, attached hereto as **Exhibit B**.

### NOTICE

46.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Debtors are providing notice of this Three Hundred Fifty-Second Omnibus Objection to (a) the individual creditors subject to this Three Hundred Fifty-Second Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Fourteenth Amended Case Management Procedures* [ECF No. 15894-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  The notice for this Three Hundred Fifty-Second Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Three Hundred Fifty-Second Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### RESERVATION OF RIGHTS

47.     This Three Hundred Fifty-Second Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors or the rights of any other party in interest in the Title III Cases to object to the Claims to Be Disallowed or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of

the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases under PROMESA, the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

48.     No prior request for the relief sought in this Three Hundred Fifty-Second Omnibus Objection has been made to this or any other court.


[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting such other and further relief as is just.

Dated: June 18, 2021
San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial*
*Oversight and Management Board for*
*Puerto Rico, as representative of the*
*Commonwealth of Puerto Rico, Puerto*
*Rico Highways and Transportation*
*Authority, Employees Retirement System*
*of the Government of the Commonwealth*
*of Puerto Rico, and Puerto Rico Public*
*Buildings Authority*

**Fecha límite para responder: 19 de julio de 2021, a las 04:00 p.m. (AST)**
**Fecha de la vista: 4 de agosto de 2021, a las 9:30 a.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>    como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,<br><br>                   Deudores.[1] | PROMESA<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA, la ACT, el SRE y la AEP**. |

**TRICENTÉSIMA QUINCUAGÉSIMA SEGUNDA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, DE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO, DEL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DE LA AUTORIDAD DE EDIFICIOS PÚBLICOS DE PUERTO RICO A RECLAMACIONES POR BONOS DUPLICADAS Y EN LAS QUE NO EXISTE RESPONSABILIDAD**

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA"), la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") y la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, la ACT y el SRE, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III de los Deudores conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican esta tricentésima quincuagésima segunda objeción global (la "Tricentésima quincuagésima segunda objeción global") a las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento, cada una de las cuales se basa parcialmente en *a*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas, *b*) una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento para Puerto Rico (el "BGF"), y/o *c*) un interés patrimonial en bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico (la "AAA") y/o en pagarés emitidos por el Fondo Fiduciario de Conservación de Puerto Rico (el "FFCPR"), que no son Deudores de Título III, por unos montos por los que los Deudores no han garantizado el reembolso. En apoyo de la Tricentésima quincuagésima segunda objeción global, los Deudores manifiestan respetuosamente lo siguiente:

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

## JURISDICCIÓN

1.     El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.     La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

**A.     Órdenes de Fecha Límite**

3.     El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para la ACT y el SRE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (respectivamente, el "Caso de Título III de la ACT" y el "Caso de Título III del SRE"). El 27 de septiembre de 2019, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para la AEP conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III de la AEP", y junto con el Caso de Título III del ELA, el Caso de Título III de la ACT y el Caso de Título III del SRE, los "Casos de Título III"). El 9 de

3

octubre de 2019, el Tribunal dictó una orden por la que concedió la administración conjunta de los

Casos de Título III únicamente con fines procesales. ECF núm. 8829.[3]

4.      El 16 de enero de 2018, el ELA, la ACT y el SRE radicaron su *Moción de una*

*orden que A) fije fechas límite y procedimientos para radicar Evidencias de reclamaciones y B)*

*apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite

del ELA, de la ACT y del SRE"). Conforme a la *Orden que A) fija fechas límite y procedimientos*

*para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación*

[ECF núm. 2521] (la "Orden Inicial de Fecha Límite del ELA, de la ACT y del SRE"), el Tribunal

concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos

para radicar evidencias de reclamaciones en el marco del Caso de Título III del ELA, el Caso de

Título III de la ACT y el Caso de Título III del SRE. Luego de la moción informativa de

determinados acreedores, y del apoyo del ELA, la ACT y el SRE, el Tribunal dictó a continuación

la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la*

*forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de

Fecha Límite del ELA, de la ACT y del SRE, las "Órdenes de Fecha Límite del ELA, de la ACT

y del SRE"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

5.      El 11 de febrero de 2020, la AEP radicó su *Moción de una orden que A) fije fechas*

*límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la*

*manera de su notificación* [ECF núm. 36 en 19-BK-5523-LTS] (la "Moción de Fecha Límite de la

AEP"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias*

*de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 55 en 19-BK-

5523-LTS] (la "Orden Inicial de Fecha Límite de la AEP"), el Tribunal concedió el remedio

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia
a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

solicitado en la Moción de Fecha Límite de la AEP y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco del Caso de Título III de la AEP. Luego de la moción informativa de determinados acreedores, y del apoyo de la AEP, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 13403] (junto con la Orden Inicial de Fecha Límite de la AEP, las "Órdenes de Fecha Límite de la AEP", y junto con las Órdenes de Fecha Límite del ELA, la ACT y el SRE, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de julio de 2020, a las 04:00 p.m. (AST).

**B.   Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III del ELA**

6.      Conforme a las Órdenes de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de reclamaciones por bonos para la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite del ELA, de la ACT y del SRE, ¶ 5(a). Como se explica más adelante, se han radicado evidencias de reclamaciones principales (conjuntamente, las "Reclamaciones Principales del ELA") en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés emitidos por la AEP, la Compañía de Fomento Industrial de Puerto Rico ("PRIDCO") y la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (la "AFI").

7.      *__AEP__*: la AEP supuestamente emitió Bonos de Renta para financiar edificios de oficinas y otras instalaciones arrendadas a varios departamentos, agencias públicas e

instrumentalidades del ELA. US Bank y US Bank Trust actúan como agentes fiscales en relación

con determinados bonos de renta emitidos por la AEP, conforme a lo explicado en la nota al pie 3

de la Evidencia de reclamación núm. 62833 (los "Bonos de la AEP"), y, en nombre de los tenedores

de los Bonos de la AEP, radicó una evidencia de reclamación principal en el marco del Caso de

Título III del ELA por todos los montos pendientes de pago adeudados (la "Reclamación Principal

de la AEP"), que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm.

62833. [4] La Reclamación Principal de la AEP alega reclamaciones liquidadas por

aproximadamente $4000 millones en concepto de principal supuestamente impagado, $160

millones en concepto de intereses supuestamente impagados y reembolso de comisiones y gastos

de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por la totalidad de

los montos adeudados "en razón de la totalidad de las reclamaciones que el Agente Fiscal tenga o

pueda tener en relación con las obligaciones de Bonos pendientes, conocidos o por conocer, contra

el ELA y aquellos que pretendan actuar en nombre del ELA". . . ."  Cláusula Adicional de la

Reclamación Principal de la AEP, ¶¶ 19-21.

8.      *AFI*: la AFI es una filial del BGF y constituye una instrumentalidad del Gobierno

del ELA. La AFI fue creada en 1988 mediante la Ley núm. 44-1988 (la "Ley para crear la AFI").

La AFI brinda asistencia financiera, administrativa y de otro tipo al ELA, a sus corporaciones

públicas y a otras instrumentalidades encargadas del desarrollo y del funcionamiento de las

infraestructuras. Actuando en nombre de los tenedores de varios bonos y pagarés emitidos por la

AFI (conjuntamente, los "Bonos de la AFI"), BNYM, US Bank y UMB Bank, N.A radicaron

evidencias de reclamaciones principales contra el ELA (conjuntamente, las "Reclamaciones

Principales de la AFI"). En primer lugar, BNYM alegó tres evidencias de reclamaciones

---

[4]  La Evidencia de reclamación núm. 62833 enmendó y sustituyó la Evidencia de reclamación
núm. 13351, que fue radicada inicialmente por el Agente Fiscal.

principales: La Evidencia de reclamación núm. 16759, por la que se reclama, en nombre de los

tenedores de los Pagarés en anticipación de bonos de renta del fondo dedicado de impuestos, serie

15 (los "Pagarés de la AFI"), una "reclamación contingente y no liquidada contra el ELA en razón

de la totalidad de las reclamaciones, causas de acción, derechos y/o remedios que el Fiduciario o

los Propietarios puedan tener contra el ELA, ya sea en derecho o equidad, sobre la base del

Acuerdo de fideicomiso (o en relación con este), el Acuerdo de tenedores de pagarés, los Pagarés

o las Rentas pignoradas". . . "; la Evidencia de reclamación núm. 19814, por la que se reclama, en

nombre de los tenedores de los Pagarés de la AFI, reclamaciones por el principal y los intereses

impagados, además de las tarifas y los gastos del fiduciario; y la Evidencia de reclamación núm.

103718, por la que se reclama, en nombre de los tenedores de los bonos de renta emitidos por la

AFI, incluidos los Bonos de Renta (Proyecto de la Autoridad Portuaria), serie 2011A, "una

reclamación garantizada, contingente y no liquidada contra el ELA en razón de la totalidad de las

reclamaciones, causas de acción, derechos y/o remedios que el Fiduciario o los tenedores de los

Bonos tengan o puedan tener contra el ELA, ya sea en derecho o equidad. . . ."

9.     Además, US Bank radicó una evidencia de reclamación principal en relación con

determinados Bonos de la AFI, que fue registrada por Prime Clerk, LLC, como Evidencia de

reclamación núm. 13386, en nombre de los tenedores de Bonos de impuestos sobre el ron de la

AFI (Bonos de renta de impuestos especiales, series 2005A, 2005B, 2005C y serie 2006B),

alegando "reclamaciones por montos contingentes y no liquidados en relación con intereses

pagaderos a futuro, intereses devengados y a devengar en el futuro en lo referente al principal e

intereses vencidos, tarifas, costos y reclamaciones por indemnización del Fiduciario que se

incurran en el futuro en virtud de los Documentos de Bonos, así como por la totalidad de los

montos adeudados en razón de todas las reclamaciones que tenga o pueda tener el Fiduciario en

relación con las Obligaciones de Bonos pendientes, monto mínimo de $249,099,446.17, cuyo

curso de conducta continúa. . . ." Cláusula Adicional de la Evidencia de reclamación núm. 13386,
¶ 26.

10. UMB también radicó una evidencia de reclamación principal en nombre de los tenedores de los Bonos de renta de infraestructura de la AFI, 2007 serie A (Proyecto de campus de MEPSI), que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 22130, y pretende la recuperación de un principal impagado supuestamente adeudado por un monto total de $33.9 millones, intereses impagados supuestamente adeudados por un importe total de $188,552.72, además de montos no liquidados por la totalidad de los montos adeudados en razón de todas las reclamaciones que UMB pueda tener en relación con las obligaciones de bonos pendientes. Cláusula Adicional de la Evidencia de reclamación núm. 22130, ¶¶ 17-18.

11. ___**PRIDCO**___: PRIDCO fue creada por la Ley núm. 188 de 1942, codificada como 23 L.P.R.A. §§ 271 *et seq*., para fomentar el desarrollo económico de Puerto Rico y proporcionar instalaciones industriales en arrendamiento o venta a empresas manufactureras privadas. US Bank actúa como fideicomisario en relación con determinados Bonos relativos a rentas de fines generales y rentas de refinanciamiento, series 1997 A y 2003 (los "Bonos de PRIDCO"), y en nombre de los tenedores de los Bonos de PRIDCO radicó una evidencia de reclamación principal contra el ELA, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 13445 (la "Reclamación Principal de PRIDCO"). La Reclamación principal de PRIDCO alega reclamaciones contingentes y no liquidadas contra el ELA y procura la "recuperación de la totalidad de los montos adeudados en razón de todas las reclamaciones que el Fideicomisario tenga o pueda tener en relación con las obligaciones pendientes por Bonos, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA, alegadas en la actualidad o por alegar, lo que incluye, entre otras cosas, reclamaciones por o basadas en el incumplimiento o la violación de los Documentos de los Bonos, acuerdos de arrendamiento u otras obligaciones contractuales relativas

a la garantía subyacente, cualesquiera otros pactos u otras obligaciones contractuales contenidas

en el mismo, o reclamaciones surgidas por el desvío indebido de las rentas de PRIDCO o de

cualesquiera otros bienes que garanticen el pago de los Bonos en virtud de los Documentos de los

bonos, conforme a la normativa legal pertinente del ELA, estatal o federal, lo que incluye, entre

otras cosas, fideicomiso ficto, transmisión fraudulenta o transferencia fraudulenta, incumplimiento

de deberes y obligaciones contractuales y fiduciarias, vulneración de pactos implícitos justos y de

buena fe, u otras reclamaciones en derecho o equidad". Cláusula Adicional de la Reclamación

principal de PRIDCO, ¶¶ 12-13.

**C.    Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de
Título III del SRE**

12.    El SRE es un *trust* establecido por el ELA en 1951 para fomentar el bienestar

económico de los empleados públicos. El SRE es una agencia gubernamental, aparte e

independiente del Gobierno del ELA y de sus demás instrumentalidades. *Véase* 3 L.P.R.A § 775.

13.    Supuestamente, conforme a la *Resolución sobre bonos para el financiamiento de

pensiones*, adoptada el 24 de enero de 2008, y ciertas resoluciones complementarias, el SRE emitió

unos bonos preferentes y subordinados para el financiamiento de pensiones (los "Bonos del SRE"),

por un monto total del principal original de aproximadamente $2900 millones.[5]

---

[5] El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción
global a reclamaciones radicadas por los tenedores de los bonos emitidos por el SRE* [Caso núm.
17-3566, ECF núm. 381], basándose en que la emisión de los bonos supuso un exceso de la
potestad legal del SRE, por lo que era *ultra vires*, anulando de pleno derecho los Bonos del SRE.
El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico
radicó una *Objeción global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto
Rico, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras,
a reclamaciones radicadas o alegadas por los tenedores de los bonos contra el SRE y el
ELA* [ECF núm. 6482], basándose, entre otras cosas, en que la emisión de los bonos fue *ultra vires*.
El SRE se reserva el derecho a impugnar la emisión de los bonos sobre cualquier motivo, incluso
sobre el motivo de que los Bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las
objeciones precedentes.

14.    BNYM actúa como agente fiscal con respecto a los Bonos del SRE. Actuando en nombre de los tenedores de los Bonos del SRE, BNYM presentó una evidencia de reclamación principal en el marco del Caso de Título III del SRE en relación con los Bonos del SRE, reclamando aproximadamente $3800 millones en concepto de responsabilidades más montos no liquidados, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 16777 (la "Evidencia de Reclamación Principal del SRE", y junto con las Evidencias de Reclamaciones Principales de la ACT y las Evidencias de Reclamaciones Principales del ELA, las "Evidencias de Reclamaciones Principales").

## D.    Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III de la ACT

15.    La ACT es una corporación pública e instrumentalidad del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 74-1965 de la Asamblea Legislativa del ELA (la "Ley para crear la ACT"). La ACT se encarga de la construcción, operación y mantenimiento de carreteras y otros sistemas de transportación en el ELA. *Véase* 9 L.P.R.A § 2002.

16.    La Ley para crear la ACT autoriza a la ACT a emitir bonos. *Véase* 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT relativos a resoluciones"): a) la Resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución de 1968"), y b) la Resolución núm. 98-06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998"). Desde la Fecha de Petición, aproximadamente $830 millones del monto principal de los bonos emitidos conforme a la Resolución de 1968 quedan pendientes de pago, y aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la Resolución de 1998 quedan igualmente pendientes de pago.

17.     BNYM actúa como agente fiscal con respecto a los Bonos de la ACT relativos a resoluciones. Actuando en nombre de los tenedores de Bonos de la ACT relativos a resoluciones, BNYM radicó tres evidencias de reclamaciones principales en el marco del Caso de Título III de la ACT (conjuntamente, las "Evidencias de Reclamaciones Principales del BNYM"): La Evidencia de reclamación núm. 37245, por la que se reclama, en nombre de los tenedores de los bonos emitidos conforme a la Resolución de 1968, aproximadamente $847 millones en concepto de responsabilidad más montos no liquidados; la Evidencia de reclamación núm. 38574, por la que se reclama, en nombre de los tenedores de los bonos emitidos conforme a la Resolución de 1998, aproximadamente $3200 millones en concepto de responsabilidad más montos no liquidados; y la Evidencia de reclamación núm. 32622, por la que se reclama, en nombre de los tenedores de los bonos subordinados emitidos conforme a la Resolución de 1998, aproximadamente $279 millones en concepto de responsabilidad más montos no liquidados.

18.     Además, de conformidad con la Ley para crear la ACT, la ACT emitió en 2003 una serie de Bonos de renta de instrumentos financieros especiales para facilitar el financiamiento del puente de Teodoro Moscoso (los "Bonos para el puente"). El Banco Popular de Puerto Rico ("Banco Popular") actúa como fiduciario en relación con los Bonos para el puente. Actuando en nombre de los tenedores de los Bonos para el puente, el Banco Popular presentó, en el marco del Caso de Título III de la ACT, una evidencia de reclamación principal reclamando aproximadamente $153 millones en concepto de responsabilidades más montos no liquidados por "todos los montos adeudados con respecto a los Bonos [para el puente]", que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 22624 (junto con las Evidencias de Reclamaciones Principales del BNYM, las "Evidencias de Reclamaciones Principales de la ACT").

E. **Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III de la AEP**

19. *AEP*: actuando en nombre de los tenedores de Bonos de la AEP, US Bank y US Bank Trust, como agentes fiscales en relación con determinados bonos de renta emitidos por la AEP, radicaron una evidencia de reclamación principal en el marco del Caso de Título III de la AEP por todos los montos pendientes de pago adeudados (la "Reclamación Principal de la AEP"), que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 174834. La Reclamación Principal de la AEP alega reclamaciones liquidadas por aproximadamente $4000 millones en concepto de principal supuestamente impagado, $160 millones en concepto de intereses supuestamente impagados y reembolso de comisiones y gastos de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por la totalidad de los montos adeudados "en razón de la totalidad de las reclamaciones que el Agente Fiscal tenga o pueda tener en relación con las obligaciones de Bonos pendientes, conocidas o por conocer, contra la AEP y aquellos que pretendan actuar en nombre de la AEP. . . ." Cláusula Adicional de la Reclamación Principal de la AEP, ¶ 24(d).

F. **Deuda de los bonos emitidos por el Fondo Fiduciario de Conservación de Puerto Rico**

20. El Fondo Fiduciario de Conservación de Puerto Rico es un fondo fiduciario benéfico, irrevocable y perpetuo creado en virtud de un Contrato Fiduciario de fecha 23 de enero de 1970. La finalidad principal del FFCPR es proteger y mejorar los recursos naturales y la belleza de Puerto Rico. El FFCPR ha estado persiguiendo su objetivo a través de la adquisición, gestión activa y desarrollo de terrenos en Puerto Rico. El 2 de octubre de 2003, el FFCPR envió una circular de oferta final relativa a pagarés garantizados con un valor de $100,000,000 al 6.30% con fecha de vencimiento en 2033 (los "Pagarés FFCPR"). Los Pagarés FFCPR se emitieron como

obligaciones de deuda del FFCPR no susceptibles a recurso, pagaderas y garantizadas únicamente mediante una prenda sobre los valores preferentes de fideicomiso acumulativo de ingresos mensuales del 6.95% que ha de emitir R&G Capital Trust III. La declaración de oferta emitida en relación con los Pagarés FFCPR dispone que los "Pagarés [FFCPR] constituyen obligaciones exclusivamente del Fondo Fiduciario de Conservación, por lo que no son deuda del Gobierno de Puerto Rico ni de ningún organismo público". . . ." Declaración de Oferta de los Pagarés FFCPR en 1.

**B.    Deuda de los bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico**

21.    La AAA fue creada de conformidad con la Ley núm. 40, de 1 de mayo de 1945. La AAA es una "corporación pública e instrumentalidad gubernamental autónoma", creada para la prestación de los servicios de suministro de agua y alcantarillado en la isla. 22 L.P.R.A. § 142, 144.

22.    La Ley para crear la AAA autoriza a la AAA a emitir bonos. 22 L.P.R.A. § 144(g). Conforme a dicha Ley, la junta directiva de la AAA adoptó resoluciones que autorizan a la AAA emitir bonos, lo que incluye la Resolución núm. 1583, en su versión enmendada y modificada el 7 de marzo de 2008 (la "Resolución núm. 1583"). En 2012, la AAA emitió unos bonos de renta, Serie 2012 A, por un monto del principal de $1,800,450,000 (los "Bonos Prioritarios Serie A de 2012" o los "Bonos de Gravamen Prioritarios de la AAA").

23.    Los tenedores de los Bonos de Gravamen Prioritarios de la AAA han recibido, y siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales tenedores de los Bonos de la AAA, a medida que estos vencen y se vuelven pagaderos. En consecuencia, el EMMA refleja que la AAA no ha publicado ninguna notificación de incumplimiento en relación con los Bonos

13

de Gravamen Prioritarios de la AAA.[6] Además, el ELA no ha garantizado el reembolso de los Bonos de Gravamen Prioritarios. En consecuencia, las declaraciones de oferta relativas a los Bonos de Gravamen Prioritarios de la AAA indican que "no constituyen deuda del Estado Libre Asociado de Puerto Rico ni de ninguno de sus municipios u otras subdivisiones políticas, con la excepción de [la AAA], por lo que ni el Estado Libre Asociado de Puerto Rico ni ningunos de dichos municipios u otras subdivisiones políticas, con la excepción de [la AAA], será responsable por el pago del principal o de los intereses sobre los referidos Bonos".[7]

**C.      Procedimientos conforme al Título VI del BGF y modificación calificada**

24.      El BGF es una corporación pública e instrumentalidad gubernamental del ELA, creada por la Asamblea Legislativa en 1948 para ayudar al Gobierno del ELA (el "Gobierno") a llevar a cabo sus tareas fiscales y a desempeñar su responsabilidad con mayor eficacia en relación con el desarrollo de la economía del ELA. El 28 de abril de 2017, la Junta de Supervisión aprobó por unanimidad el Plan fiscal del BGF de febrero de 2017, que contemplaba una terminación ordenada de las actividades del BGF sobre la base de la determinación de que el BGF no era viable a largo plazo dadas sus condiciones financieras vigentes en ese momento.

25.      El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se autorizaba al BGF, conforme a la sección 601(e) de PROMESA, a ampararse en el título VI de PROMESA. El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una modificación calificada, conforme a la sección 601(m)(1)(D) de PROMESA (la "Modificación Calificada"), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

---

[6]                              *Véase,                    por                    ejemplo*, https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

[7] *Véase, por ejemplo*, Declaración de Oferta relativa a los Bonos de Renta de la AAA, Serie A (Gravamen Prioritario), 15 de febrero de 2012, disponible en https://emma.msrb.org/ER584464-ER454075-ER856856.pdf.

26.     El 7 de noviembre de 2018, el Tribunal aprobó la Modificación Calificada conforme a la sección 601(m)(1)(D) de PROMESA. *Véase* ECF núm. 270 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 7 de nov. de 2018). La Modificación Calificada dispone, entre otras cosas, i) la emisión de nuevos bonos por la recién creada Autoridad de Recuperación de Deuda del BGF (GDB Debt Recovery Authority) a cambio de la cancelación (entre otras cosas) de determinados bonos de participación y reclamaciones de bonos garantizados (conjuntamente, "Bonos del BGF"). ii) la extinción de la garantía del ELA de los bonos garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la liberación de reclamaciones de los tenedores de Bonos del BGF contra el BGF y sus afiliados en relación con (entre otras cosas) cualquier inversión con el BGF o la compra, venta o transferencia de cualquier título valor o participación del BGF, y cualquier acción u omisión con respecto a un endeudamiento o préstamo al BGF (incluidos cualesquiera pagarés emitidos o depósitos mantenidos por el BGF) o del BGF. *Declaración de Solicitación,* en 57-60, ECF núm. 1-15 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 10 de ago. de 2018).

27.     El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación Calificada del BGF. Nota de prensa, *el Gobierno de Puerto Rico anuncia la consumación de la Modificación Calificada del BGF*, Gobernador de Puerto Rico (29 de nov. de 2018), disponible en http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

**D.     Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

28.     Hasta la fecha, se han radicado aproximadamente 179,420 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas

evidencias de reclamaciones ascienden a un total aproximado de $43.659 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

29. De las evidencias de reclamaciones radicadas, aproximadamente 116,160 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Aproximadamente 53,022 evidencias de reclamaciones han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. Aproximadamente 390 evidencias de reclamaciones han sido radicadas en relación con la AEP, o reclasificadas como radicadas contra la AEP. Además, aproximadamente 2,260 evidencias de reclamaciones han sido radicadas en relación con la ACT, o reclasificadas como radicadas contra la ACT. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

30. Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los

"Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

31.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

32.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la fecha más de 14 vistas vinculadas con más de 140 objeciones globales radicadas por el ELA, la ACT, el SRE, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") y/o la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"). Sobre la base de las resoluciones y

órdenes del Tribunal dictadas hasta la fecha, aproximadamente 101,019 reclamaciones que

reivindicaban $43.59 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE y el

SRE fueron rechazadas y retiradas del registro de reclamaciones en el marco de los procedimientos

radicados conforme al Título III.

33.     Esta Tricentésima quincuagésima segunda objeción global se radica de

conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

34.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en

virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., §

502(b)(1). Aunque una evidencia de reclamación debidamente formalizada y radicada constituye

una prueba *prima facie* de la validez de la reclamación, *véase* R. del Proc. de Quiebr. 3001(f),

aplicable a este caso en virtud de la sección 310 de PROMESA, la parte objetante podrá superar

dicha evidencia *prima facie* con pruebas que, de creerse, refutarían al menos una de las alegaciones

esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d

367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st

Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que una parte objetante haya

introducido evidencias suficientes para refutar el caso *prima facie* del reclamante". (se omite cita)).

35.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los

Deudores radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las

bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de

Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas

establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

36.     La Tricentésima quincuagésima segunda objeción global pretende que se rechacen

en su totalidad, de conformidad con los Procedimientos Enmendados relativos a Objeciones

Globales, las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas"), cada una de las cuales se basa parcialmente en *a*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas, b) una participación patrimonial en bonos emitidos por el BGF, y/o c) una participación patrimonial en bonos emitidos por la AAA y/o pagarés emitidos por el FFCPR, que no son Deudores de Título III, por unos montos por los que los Deudores no han garantizado el reembolso. El **Anexo A** especifica además por qué cada una de las Reclamaciones que han de ser rechazadas debe ser rechazada en su totalidad.

### A. Ausencia de responsabilidad por reclamaciones de los bonistas del BGF

37.    Conforme a lo identificado en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas, total o parcialmente, en una supuesta participación patrimonial en bonos emitidos por el BGF (conjuntamente, las "Reclamaciones de los Bonistas del BGF").

38.    Cada una de las Reclamaciones de los Bonistas del BGF pretende basarse, total o parcialmente, en la propiedad de los Bonos del BGF objeto de la Modificación Calificada, que dispuso la emisión de nuevos títulos valores a cambio de la cancelación de los Bonos del BGF y la extinción de la garantía del ELA relativa a determinados Bonos del BGF, por lo que el ELA ya no tiene responsabilidad con respecto a dichas reclamaciones. En consecuencia, cada una de las Reclamaciones de los Bonistas del BGF ha sido liberada conforme a la aprobación y la consumación de la Modificación Calificada. Como se señaló anteriormente, la Modificación Calificada dispone, entre otras cosas, que los tenedores de los Bonos del BGF liberarán al BGF y sus afiliados de las reclamaciones relacionadas con los Bonos del BGF, y de cualquier acción u omisión del BGF y sus afiliados con respecto a todo endeudamiento del BGF o préstamo al BGF.

El BGF es una corporación e instrumentalidad pública del ELA. En consecuencia, el ELA es un afiliado del BGF dentro del ámbito de la liberación conforme a la Modificación Calificada. Por lo tanto, las Reclamaciones de los Bonistas del BGF fueron liberadas tras la consumación de la Modificación Calificada el 29 de noviembre de 2018.

39.     Puesto que las Reclamaciones de los Bonistas del BGF son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no es responsable.

**B. Ausencia de responsabilidad por reclamaciones parcialmente duplicadas por bonos**

40.     Según se expone en el **<u>Anexo A</u>** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar responsabilidad, en parte, sobre la base de bonos emitidos por la ACT, el SRE, la AEP, PRIDCO y la AFI (conjuntamente, las "<u>Reclamaciones Duplicadas por Bonos</u>").

41.     Cada una de las Reclamaciones Duplicadas por Bonos pretende alegar, total o parcialmente, responsabilidad contra los Deudores vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos emitidos por la ACT, el SRE, la AEP, PRIDCO y la AFI. Si las Reclamaciones Duplicadas por Bonos no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación duplicada no justificada contra los Deudores en detrimento de otras partes interesadas en los Casos de Título III de los Deudores. Los titulares de las Reclamaciones Duplicadas por Bonos no se verán perjudicados por el hecho de que se rechacen sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones Duplicadas por Bonos figuran en una o más Reclamaciones Principales.

**C.  Ausencia de responsabilidad por los Bonos de Gravamen Prioritarios de la AAA y los Pagarés FFCPR**

42.      Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas en una supuesta participación patrimonial en bonos emitidos por la AAA (las "<u>Reclamaciones de los Bonistas de Gravamen Prioritario de la AAA</u>") y pagarés emitidos por el FFCPR (las "<u>Reclamaciones de Pagarés FFCPR</u>").

43.      Las Reclamaciones de los Bonistas de Gravamen Prioritario de la AAA alegan responsabilidades vinculadas con los Bonos de Gravamen Prioritarios de la AAA emitidos por la AAA que no es Deudor de Título III, y es una entidad aparte y jurídicamente independiente de los Deudores. Además, los Deudores no han garantizado el reembolso de los Bonos de Gravamen Prioritarios. Las Reclamaciones de Pagarés FFCPR alegan responsabilidades vinculadas con pagarés emitidos por el FFCPR, aunque el FFCPR tampoco es un deudor de Título III, sino que es una entidad aparte y jurídicamente independiente de los Deudores. Además, la declaración de oferta emitida en relación con los Pagarés FFCPR también dispone que los Pagarés FFCPR no constituyen una obligación de los Deudores.

44.      Las Reclamaciones de los Bonistas de Gravamen Prioritario de la AAA y las Reclamaciones de Pagarés FFCPR no proporcionan fundamento alguno para alegar una reclamación contra los Deudores por los bonos emitidos por la AAA y/o pagarés emitidos por el FFCPR que no están garantizados por los Deudores. Como consecuencia de dicho incumplimiento de la normativa aplicable, ni los Deudores ni el Tribunal pueden determinar la validez de la Reclamación de los Bonistas de Gravamen Prioritario de la AAA y de las Reclamaciones de Pagarés FFCPR.

45. En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Tricentésima quincuagésima segunda objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico, de la Autoridad de Carreteras y Transportación de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Edificios Públicos de Puerto Rico a Reclamaciones por bonos duplicadas en las que no existe responsabilidad*, de fecha 18 de junio de 2021, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

46. De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores notifican la presente Tricentésima quincuagésima segunda objeción global a) a los acreedores individuales objeto de esta Tricentésima quincuagésima segunda objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 14* [ECF núm. 15894-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación de esta Tricentésima quincuagésima segunda objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Tricentésima quincuagésima segunda objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con esta objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

47. Esta Tricentésima quincuagésima segunda objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas en dichos Casos de Título III, a objetar a las Reclamaciones que han de ser rechazadas o a cualesquiera otras reclamaciones sobre la base de los motivos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda

otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas en los Casos de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas en los Casos de Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

48.    No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima quincuagésima segunda objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

*[El resto de la página se deja en blanco intencionadamente]*

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

Fecha: 18 de junio de 2021
     San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, de la Autoridad De Carreteras y Transportación de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Edificios Públicos de Puerto Rico.*