**Response Deadline: July 19, 2021, at 4:00PM (Atlantic Standard Time)**
**Hearing Date:  August 4, 2021, at 9:30AM (Atlantic Standard Time)**

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

---

## THREE HUNDRED FIFTY-SIXTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO PARTIAL DUPLICATE, DEFICIENT, NO LIABILITY, AND INCORRECT DEBTOR BOND CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth," or the "Debtor), by and

through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

as the sole Title III representative of the Commonwealth pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), [2] files this three hundred fifty-sixth omnibus objection (the "Three Hundred Fifty-Sixth Omnibus Objection") to the proofs of claim listed on **Exhibit A** hereto, each of which is purportedly based, in part, on (*a*) bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), (*b*) bond claims that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds, (*c*) claims that assert liabilities for certain bonds issued by the Puerto Rico Highways and Transportation Authority ("HTA") for which the Commonwealth is not liable, (*d*) an ownership interest in bonds issued by the Government Development Bank of Puerto Rico ("GDB"), and/or (e) an ownership interest in bonds issued by the Puerto Rico Aqueducts and Sewers Authority ("PRASA"), which is not a Title III Debtor, for amounts for which the Commonwealth has not guaranteed repayment.  In addition, each of the proofs of claim listed on **Exhibit A** hereto are deficient because they fail to provide sufficient information to enable the Commonwealth to reconcile the proofs of claim.  Other portions of the proofs of claim listed on **Exhibit A** hereto are deficient because they assert liabilities for purported investment losses, but fail to provide a basis for asserting a claim in respect of investment losses.  Additionally, each of the claims listed on **Exhibit A** hereto should be partially reclassified because a portion of the claim identifies the Commonwealth as obligor, when that portion of the claim is properly asserted, if at all, against PREPA.  Further, a portion of each claim listed on **Exhibit A** hereto will remain asserted against the Commonwealth.  The Commonwealth reserves the right to object to any of the remaining amounts asserted in the claims, as identified in the column titled "Corrected"

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

in **Exhibit A** hereto, on any basis whatsoever.  In support of the Three Hundred Fifty-Sixth

Omnibus Objection, the Commonwealth respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA

section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof

(the "Commonwealth Title III Case," or the "Title III Case").

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing*

*Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of*

*Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing*

*Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of*

*Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief

requested in the Bar Date Motion and established deadlines and procedures for filing proofs of

claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of

the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs*

*of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with

the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at

4:00 p.m. (Atlantic Time).

**B.     Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

5.     Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a). As explained below, master proofs of claim (collectively, the "Master Claims") have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by PRASA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Public Buildings Authority ("PBA"), the Puerto Rico Industrial Development Company ("PRIDCO"), and the Puerto Rico Public Financing Corporation ("PRPFC").

6.     **_PBA_** — PBA purportedly issued Revenue Bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth.  US Bank and US Bank Trust serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833.[3]  The PBA Master Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingent claims for any and all amounts owed "on account of any and all claims the Fiscal

---

[3]  Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was initially filed by the Fiscal Agent.

Agent has or may have relating to the outstanding Bond obligations, whether known or unknown

against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ."

Rider to PBA Master Claim, ¶¶ 19-21.

7.     __*ERS*__—ERS is an agency of the government, separate and apart from the

Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.[4]  Purportedly

pursuant to that certain Pension Funding Bond Resolution, adopted on January 24, 2008, and

certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the

"ERS Bonds"), in the aggregate original principal amount of approximately $2.9 billion.[5]  BNYM

serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the holders of ERS Bonds,

BNYM filed a master proof of claim in the Commonwealth Title III Case (the "ERS Master

Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 32004.[6]

---

[4]  On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof.

[5]  On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [Case No. 17-3283, ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*.  ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

[6]  On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim.  *See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent* (Claim No. 16775) [ECF No. 7075].  For the avoidance of doubt, this Three Hundred Fifty Sixth Omnibus Objection is without prejudice to the parties' rights with respect to such objection, including any rights to intervene, which are reserved.

8.     ___**PRPFC**___—PRPFC is a subsidiary corporation of GDB created pursuant to Resolution No. 5044 of the Board of Directors of GDB, as amended ("Resolution No. 5044"), adopted pursuant to the authority granted under Act No. 17 of the Legislature of Puerto Rico, approved September 23, 1948, as amended.  It provides government agencies, instrumentalities, municipalities and other subdivisions of the Commonwealth with alternative mechanisms to meet their financing needs.  PRPFC has the capacity to borrow money and issue debt through the issuance of bonds and other obligations.  U.S. Bank Trust serves as trustee for certain Series 2012A and Series 2011A and B bonds issued by the PRPFC (the "PRPFC Bonds").  On behalf of the holders of the PRPFC Bonds, US Bank Trust filed a proof of claim against the Commonwealth (the "PRPFC Master Claim"), which was logged by Prime Clerk as Proof of Claim No. 13374.

9.     ___**PRASA**___—PRASA owns and operates the island-wide public water and wastewater systems in Puerto Rico.  PRASA issued certain revenue bonds (the "PRASA Bonds"), under the Puerto Rico Aqueduct and Sewer Authority Resolution No. 1583, Authorizing and Securing Puerto Rico Aqueduct and Sewer Authority Bonds Guaranteed by the Commonwealth of Puerto Rico, and certain supplemental resolutions.  Banco Popular de Puerto Rico ("Banco Popular") serves as trustee for the PRASA Bonds and filed a master proof of claim against the Commonwealth on behalf of the holders of the PRASA Bonds, which was logged by Prime Clerk, LLC, as Proof of Claim No. 22620 (the "PRASA Master Claim").  The PRASA Master Claim asserts "a contingent claim against the Commonwealth on account of the Bonds in an amount not less than $284,755,000, together with all interest, and premium accruing on the Bonds from and after the Petition Date, and all fees, costs, expenses and other charges accrued, accruing or chargeable with respect thereto."  Addendum to PRASA Master Claim, ¶ 9.

10.    ___**PRIDCO**___—PRIDCO was created by Law No. 188 of 1942, codified as 23 L.P.R.A. §§ 271 *et seq.*, to promote economic development of Puerto Rico and provide industrial facilities

for lease or sale to private manufacturing companies.  US Bank serves as trustee for certain General Purpose Revenue and Refunding Revenue Bonds Series 1997 A and Series 2003 (the "PRIDCO Bonds"), and on behalf of the holders of PRIDCO Bonds filed a master proof of claim against the Commonwealth, which was logged by Prime Clerk as Proof of Claim No. 13445 (the "PRIDCO Master Claim,").  The PRIDCO Master Claim asserts contingent, unliquidated claims against the Commonwealth, and seeks "recovery of any and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, whether known or unknown, against the Commonwealth and all those purporting to act on the Commonwealth's behalf, whether presently asserted or to be asserted, including without limitation claims for or based upon the breach or violation of the bond documents, lease agreements or other contractual obligations relating to the underlying collateral, any other covenants or other contractual obligations contained therein, or claims arising from the improper diversion of PRIDCO's revenues or any other property securing the payment of the Bonds under the Bond Documents, as a matter of relevant Commonwealth, state or federal law, including without limitation constructive trust, fraudulent conveyance or fraudulent transfer, failure to fulfill contractual and fiduciary obligations and duties, breach of implied covenants of good faith and fair dealing, or other legal or equitable claims."  Rider to PRIDCO Master Claim, ¶¶ 12-13.

## C.     Bond Debt Master Proofs of Claim – HTA Title III Case

11.     HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.

12.    In accordance with the HTA Enabling Act, in 2003 HTA issued a series of Special Facility Revenue Refunding Bonds to facilitate the financing of the Teodoro Moscoso Bridge (the "HTA Bridge Bonds").  Holders of HTA Bridge Bonds have received and continue to receive all payments owed to holders of the HTA Bridge Bonds in full as they become due and owing.  The Commonwealth has not guaranteed repayment of the HTA Bridge Bonds, and each of the offering statements issued in connection with the HTA Bridge Bonds states "the [HTA Bridge] Bonds are not a debt of the Commonwealth of Puerto Rico or any of its political subdivisions, other than the Authority, and neither the Commonwealth of Puerto Rico nor any of its subdivisions, other than the Authority, is required to pay the Bonds."[7]

**D.    Bond Debt Issued by the Puerto Rico Aqueducts and Sewers Authority**

13.    PRASA was established pursuant to Act Number 40 of May 1, 1945.  PRASA is a "public corporation and an autonomous government instrumentality" created for the purpose of providing water and sewer services on the island.  22 L.P.R.A. § 142, 144.

14.    The PRASA Enabling Act authorizes PRASA to issue bonds.  22 L.P.R.A. § 144(g). Pursuant thereto, the PRASA governing board has adopted resolutions authorizing PRASA to issue bonds, including Resolution No. 1583, as amended and restated as of March 7, 2008 ("Resolution No. 1583").  In 2008, PRASA issued $1,316,204,456 principal amount of Series A revenue bonds (the "2008 Senior Series A Bonds").   Additionally, in 2012, PRASA concurrently issued $1,800,450,000 principal amount of Series 2012 A revenue bonds (the "2012 Senior Series A Bonds"), as well as $295,245,000 principal amount of Series 2012 B revenue bonds (the "2012 Senior Series B Bonds," and together with the 2012 Senior Series A Bonds and the 2008 Senior Series A Bonds, the "PRASA Senior Lien Bonds").

---

[7] *See, e.g.*, https://emma.msrb.org/Security/Details/A0BC2E92D13DB872F5E9451D490A58D23.

8

15.     Holders of PRASA Senior Lien Bonds have received and continue to receive all payments owed to holders of the PRASA Bonds in full as they become due and owing. Accordingly, EMMA reflects that PRASA has not posted any notices of default with respect to the PRASA Senior Lien Bonds.[8]  In addition, the Commonwealth has not guaranteed repayment of the Senior Lien Bonds.  Accordingly, the offering statements for the PRASA Senior Lien Bonds state that they are "not a debt of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, other than [PRASA], and neither the Commonwealth of Puerto Rico or any such municipalities or other political subdivisions, other than [PRASA], shall be liable for the payment of the principal of or interest on said Bonds."[9]

**E.      The COFINA Title III Case and Resolution of the Commonwealth-COFINA Dispute**

16.     COFINA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 91 of the Legislative Assembly of the Commonwealth.  Pursuant to the Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 19, 2009, and pursuant to certain supplemental resolutions, COFINA issued a series of bonds in aggregate approximate amount of $17 billion, to, among other things, defray certain debt obligations of the Puerto Rico Government Development Bank and the Puerto Rico Public Finance Corporation (the "COFINA Bonds").  Bank of New York Mellon serves as Trustee with respect to the COFINA Bonds.

17.     The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652] on January 9,

---

[8] *See, e.g.*, https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

[9] *See, e.g.*, Offering Statement for PRASA Revenue Bonds, Series B (Senior Lien), February 15, 2012, available at https://emma.msrb.org/ER584465-ER454076-ER856857.pdf.

2019.  The Court considered confirmation of the Plan and any objections thereto at a hearing on

January 16-17, 2019.

18.    On February 4, 2019, the Court confirmed the Plan, which incorporated the

compromise and settlement of the dispute over whether, after considering all procedural and

substantive defenses and counterclaims, including constitutional issues, the sales and use taxes

purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA

under applicable law (the "Commonwealth-COFINA Dispute").  *See Order and Judgment*

*Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing*

*Corporation* [ECF No. 5048].  On the same day, the Court approved the compromise and

settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and*

*Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax*

*Financing Corporation* [ECF No. 5045] (the "Settlement Order").  On February 5, 2019, the Court

issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of*

*Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "Amended

Confirmation Order").  The Plan became effective on February 12, 2019 (the "Effective Date"),

when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order*

*Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing*

*Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case

No. 17 BK 3284-LTS, ECF No. 587].

**F.    The GDB Title VI Proceedings and Qualifying Modification**

19.    GDB is a public corporation and governmental instrumentality of the

Commonwealth, which was created by the Legislative Assembly in 1948 to aid the government of

the Commonwealth (the "Government") in performing its fiscal duties and in more effectively

carrying out its responsibility to develop the economy of the Commonwealth.  On April 28, 2017,

the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which contemplated an orderly wind-down of the operations of GDB based upon the determination that there was no clear path for the long-term viability of GDB based on its then-current financial condition.

20.     On July 12, 2017, the Oversight Board issued a resolution authorizing GDB, pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA.  On August 10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to PROMESA section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District Court for the District of Puerto Rico.

21.     On November 7, 2018, the Court approved the Qualifying Modification pursuant to PROMESA section 601(m)(1)(D).  *See* ECF No. 270 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018).  The Qualifying Modification provides for, among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery Authority in exchange for the cancellation of, among other things, certain participating bonds and guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB. *Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Aug. 10, 2018).

22.     On November 29, 2018, GDB announced the consummation of the Qualifying Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of*

*the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at*
http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-
modification.pdf.

**G.     Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections**

23.     To date, approximately 179,420 proofs of claim have been filed against the Debtors
and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.59 trillion in
asserted claims against the Debtors, in addition to unliquidated amounts asserted.

24.     Of the proofs of claim filed, approximately 116,160 have been filed in relation to,
or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar
Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw,
such as being subsequently amended, not putting forth a claim for which the Debtors are liable,
being duplicative of other proofs of claim, or failing to provide information necessary for the
Debtors to determine whether the claim is valid.

25.     To efficiently resolve as many of the unnecessary proofs of claim as possible, on
October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A)
Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy
Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures
Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order
dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B)
Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF
No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus
Objection Procedures").  On November 29, 2018, the Court approved English and Spanish
versions of the forms of notice for omnibus objections to be filed in accordance with the Initial

Omnibus Objection Procedures. *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

26.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

27.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 14 hearings related to over 140 omnibus objections filed by the Commonwealth, COFINA, HTA, ERS, and/or the Puerto Rico Electric Power Authority ("PREPA"). Based upon rulings and orders of the Court to date, approximately 101,019 claims asserting $43.59 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, and ERS have been disallowed and expunged from the claims registry in the Title III proceedings.

28.     This Three Hundred Fifty-Sixth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## **OBJECTIONS TO PROOFS OF CLAIM**

29.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

30.     The Three Hundred Fifty-Sixth Omnibus Objection seeks to partially disallow and partially reclassify, in accordance with the Amended Omnibus Objection Procedures, proofs of claim listed on **Exhibit A** hereto (collectively, the "Claims to Be Partially Disallowed and Partially Reclassified"), each of which each purports to assert liabilities arising out of "Bonds P.R." "Loss on investment . . . ," or other similar terms asserting liabilities associated with investments in government-issued bonds.  In some instances, the Claims to Be Partially Disallowed and Partially Reclassified provided as supporting documentation a copy of a brokerage statement, or other supporting documentation containing information regarding bonds purportedly held by the claimant, but failed to provide information necessary to enable the Commonwealth to reconcile the claims, such as the CUSIP numbers or amounts of the specific bonds claimants intended to assert.  However, the amounts of the bonds included in that supporting documentation did not match the amount on the claimant's proof of claim.  In other instances, the Claims to Be Partially Disallowed and Partially Reclassified did not contain any supporting documentation.

31.     On August 13, 2019, the Court entered the *Order Granting in Part and Adjourning in Part Debtors' Motion for Entry of An Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief* [ECF No. 8453] (the "Authorized Mailings Order"), which authorized the Debtors to send mailings "to any claimant who has not provided sufficient information to enable Debtors to process their claim."  Authorized Mailings Order, ¶ 3.

14

32.    Pursuant to the Authorized Mailings Order, "[i]f the Debtors mail the Proposed Mailing to a claimant, and the claimant either does not respond or responds but fails to provide sufficient information to permit Debtors to reconcile their claim, the Debtors are authorized to object to the claim as deficient." *Id.*

33.    In accordance with the Authorized Mailings Order, the Debtors have sent at least one letter, substantially in the form of Exhibit 1 to the Authorized Mailings Order, to each claimant subject to this Three Hundred Fifty-sixth Omnibus Objection (the "<u>Mailing</u>").   Each Mailing provided, in relevant part:

> Additional information is required in order for the Debtors to continue with assessing your claim. The Debtors are unable to determine from the information you provided the basis for the claim you are attempting to assert against one or more of the Debtors.  In responding to this letter, please ensure that you provide all of the information requested and as much detail as possible about your claim.  The descriptions you put on your proof of claim were too vague for the Debtors to understand the claim you are trying to assert, so please provide more detail and do not simply copy over the same information.
> *See* ECF No. 8453-1 at 2, 7.

34.    The Mailings received by the claimants subject to this Three Hundred Fifty-Sixth Omnibus Objection directed the claimants to respond no later than October 23, 2019 (depending on the date each Mailing was sent).  *See id*.  Furthermore, the Mailings cautioned the Claimants that "[i]f you do not respond to this request and do not provide the requested information and documentation in support of your claim, the Debtors may be forced to object to your claim."

35.    Each of the Claimants identified in **<u>Exhibit A</u>** either failed to respond to the Mailings, or submitted a response that still did not contain information necessary to enable the Commonwealth to reconcile the claim.  Accordingly, the Debtors reviewed the documentation submitted with the proofs of claim or with the Mailings for assertions of investments related to government-issued bonds.  Based on that review, the Debtors understand the Claims to Be Partially

Disallowed and Partially Reclassified assert (*a*) bonds issued by COFINA, (*b*) bond claims that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds, (*c*) claims that assert liabilities for certain bonds issued by HTA for which the Commonwealth is not liable, (*d*) an ownership interest in bonds issued by GDB, and/or (e) an ownership interest in bonds issued by PRASA, which is not a Title III Debtor, for amounts for which the Commonwealth has not guaranteed repayment.  To the extent each of the Claims to Be Disallowed purport to assert additional liabilities not associated with government-issued bonds identified in the proof of claim, the supporting documentation, or a Mailing response, those portions of each of the proofs of claim listed on **Exhibit A** hereto are deficient because they fail to provide sufficient information to enable the Commonwealth to reconcile the proofs of claim. Other portions of the proofs of claim listed on **Exhibit A** hereto are deficient because they assert liabilities for purported investment losses but fail to provide sufficient information to enable the Debtors to reconcile the proofs of claim.  Additionally, each of the claims listed on **Exhibit A** hereto should be partially reclassified because a portion of the claim identifies the Commonwealth as obligor, when that portion of the claim is properly asserted, if at all, against PREPA.  Further, a portion of each claim listed on **Exhibit A** hereto will remain asserted against the Commonwealth.

### A.  No Liability for COFINA Bondholder Claims

36.    As identified in **Exhibit A** hereto, certain Claims to Be Partially Disallowed and Partially Reclassified purport to assert, in part, claims based on an alleged ownership interest in bonds issued by COFINA (collectively the "Partial COFINA Bondholder Claims").

37.    As explained above, the Settlement Order resolved the Commonwealth-COFINA Dispute, and, pursuant to Paragraph 55 of the Settlement Order, all claims against the Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA have been released.  Additionally, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF

No. 5045-1], dated October 19, 2018, and attached to the Settlement Order (the "Settlement Agreement"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has been dismissed with prejudice following the approval of the compromise and settlement of the Commonwealth-COFINA Dispute.  Furthermore, pursuant to Paragraph 29(f) of the Amended Confirmation Order, claims, such as the Partial COFINA Bondholder Claims, that arose from or relate to the relationship of the Commonwealth and COFINA were released.  Amended Confirmation Order, ¶ 29(f).[10]  For all of these reasons, the Partial COFINA Bondholder Claims should be disallowed because these claims, which are based on an alleged ownership interest in COFINA Bonds, have been satisfied, released, and/or discharged pursuant to the Settlement Order, Settlement Agreement, Amended Confirmation Order, and Plan.

**B.  No Liability for GDB Bondholder Claims**

38.     As identified in **Exhibit A** hereto, certain Claims to Be Partially Disallowed and Partially Reclassified purport to assert, in part, claims based on the alleged ownership of bonds issued by GDB (collectively the "Partial GDB Bondholder Claims").

39.     Each of the Partial GDB Bondholder Claims purport to be based in part on the ownership of GDB Bonds that were subject to the Qualifying Modification, which provided for the issuance of new securities in exchange for the cancellation of the GDB Bonds and the

---

[10] Pursuant to the Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise."  Plan § 1.53.

extinguishment of the Commonwealth's guarantee of certain GDB Bonds, and thus the Commonwealth is no longer liable for these claims. Accordingly, each of the Partial GDB Bondholder Claims has been released pursuant to the approval and consummation of the Qualifying Modification. As noted above, the Qualifying Modification provides, among other things, that holders of GDB Bonds shall release GDB and its affiliates from claims relating to the GDB Bonds and any action or omission of GDB and its affiliates with respect to any indebtedness of or loan to GDB. GDB is a public corporation and instrumentality of the Commonwealth. The Commonwealth, thus, is an affiliate of GDB within the scope of the release pursuant to the Qualifying Modification. Accordingly, the Partial GDB Bondholder Claims were released upon the consummation of the Qualifying Modification on November 29, 2018. Because the Partial GDB Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be disallowed because they seek recovery of amounts for which the Commonwealth is not liable.

### C. No Liability for Duplicate Bond Claims

40.     As set forth in **Exhibit A** hereto, certain Claims to Be Partially Disallowed and Partially Reclassified purport to assert liability, in part, on the basis of bonds issued by PRASA, ERS, PBA, PRIDCO, and PRPFC (collectively, the "Partial Duplicate Bond Claims").

41.     Each of the Partial Duplicate Bond Claims purport to assert, in part, liability against the Commonwealth associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Title III Cases on behalf of the holders of certain bonds issued by PRASA, ERS, PBA, PRIDCO, and PRPFC. Any failure to disallow the Partial Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment of other stakeholders in the Commonwealth's Title III Case. The holders of the Partial Duplicate Bond Claims will not

be prejudiced by the partial disallowance of their claims because the liabilities associated with the

Partial Duplicate Bond Claims are subsumed within one or more Master Claims.

### D.  No Liability for PRASA Senior Lien Bonds

42.     As identified in **Exhibit A** hereto, certain Claims to Be Partially Disallowed and

Partially Reclassified purport to assert claims based, in part, on the alleged ownership of bonds

issued by PRASA (collectively, the "Partial PRASA Senior Lien Bondholder Claims").

43.     Each of the Partial PRASA Bondholder Claims asserts liabilities associated with

PRASA Senior Lien Bonds issued by PRASA, which is not a Title III Debtor, and is a separate,

legally distinct entity from the Commonwealth.   In addition, the Commonwealth has not

guaranteed repayment for the Senior Lien Bonds.   Further, the Partial PRASA Senior Lien

Bondholder Claims do not assert a basis for asserting a claim against the Commonwealth for bonds

issued by PRASA that are not guaranteed by the Commonwealth.   Accordingly, neither the

Commonwealth nor the Court are able to determine the validity of the Partial PRASA Senior Lien

Bondholder Claim.

### E.  No Liability for HTA Bridge Bondholder Claims

44.     As identified in **Exhibit A** hereto, certain Claims to Be Partially Disallowed and

Partially Reclassified purport to assert, in whole or in part, claims based on the alleged ownership

of HTA Bridge bonds issued by HTA (collectively the "Partial HTA Bridge Bondholder Claims").

45.     Each of the Partial HTA Bridge Bondholder Claims purports to assert, in part,

liabilities against the Commonwealth associated with HTA Bridge Bonds not guaranteed by the

Commonwealth.  As described above, however, the Commonwealth has not guaranteed repayment

of the HTA Bridge Bonds, and is not required to make payments to holders in respect of the HTA

Bridge Bonds. Moreover, the Partial HTA Bridge Bondholder Claims do not provide a basis for

asserting a claim against the Commonwealth for the HTA Bridge Bonds, which, as described above, were issued by HTA and not guaranteed by the Commonwealth.

### F. Deficient Claims for Investment Losses

46.     As identified in Exhibit A hereto, certain Claims to Be Partially Disallowed and Partially Reclassified purport to assert liabilities arising out of alleged investment losses. However, none of the Claims to Be Partially Disallowed and Partially Reclassified assert any potential causes of action against the Debtors that might render the Debtors liable for alleged damages incurred as a result of the claimants' loss of their initial investment.  Accordingly, the Debtors are not liable for the amounts asserted in the Claims to Be Partially Disallowed and Partially Reclassified that arise from alleged investment losses.  *See English v. Energy Future Holdings (In re Energy Future Holdings)*, 2018 U.S. Dist. LEXIS 49952, at *7 (D. Del., March 27, 2018) (holding bankruptcy court's order disallowing proof of claim was proper where claimant had sold bonds issued by the debtor and, thus, neither had any right to payment with respect to the bonds, nor did claimant show it had any potential cause of action against the debtor for the alleged damages incurred by the claimant in selling the debtor's bonds at a loss); *In re Allegheny Int'l, Inc*., 954 F.2d 167, 173 (3d Cir. 1992) (citing *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, *Collier on Bankruptcy* § 502.02, at 502-22 (15th ed. 1991)) ("Initially, the claimant must allege facts sufficient to support the claim").

### G. Partially Reclassified Bond Claims

47.     Finally, another portion of each of the Claims to Be Partially Disallowed and Partially Reclassified identifies the Commonwealth as the obligor, when such portion is properly asserted, if at all, against PREPA, and asserts liability, in part, on the basis of bonds issued by PREPA (collectively, the "Partially Reclassified Bond Claims").

48.     In each of the Partially Reclassified Bond Claims, the claimant purported to assert, in part, liabilities associated with municipal bond(s), but the proof of claim, supporting documentation provided by the claimant, and/or CUSIP information show that the portions of the liabilities associated with the Partially Reclassified Bond Claims would appropriately be asserted, if at all, against PREPA.   Accordingly, the Partially Reclassified Bond Claims should be reclassified, in part, to be asserted against PREPA, the Title III debtor identified in the column titled "Corrected" in **Exhibit A** hereto. The Commonwealth reserves its right to object to any part of the Partially Reclassified Bond Claims on any other grounds whatsoever.

49.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Fifty-Sixth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Partially Duplicate, Deficient, No Liability, and Incorrect Debtor Bond Claims*, dated June 18, 2021, attached hereto as **Exhibit B**.

## NOTICE

50.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Commonwealth is providing notice of this Three Hundred Fifty-Sixth Omnibus Objection to (a) the individual creditors subject to this Three Hundred Fifty-Sixth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Fourteenth Amended Case Management Procedures* [ECF No. 15894-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  The notice for this Three Hundred Fifty-Sixth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Three Hundred Fifty-Sixth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **RESERVATION OF RIGHTS**

51.     This Three Hundred Fifty-Sixth Omnibus Objection is limited to the grounds stated

herein.  Accordingly, it is without prejudice to the rights of the Commonwealth or the rights of any

other party in interest in the Title III Cases to object to the Claims to Be Partially Disallowed or

any other claims on any ground whatsoever.  The Commonwealth expressly reserves all further

substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to

such relief is intended or should be construed as: (a) an admission as to the validity of any claim

against the Commonwealth; (b) a waiver of the rights of the Commonwealth or any other party in

interest in the Title III Cases to dispute any claim on any grounds; (c) a promise or requirement to

pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or

lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the

Commonwealth or any other party in interest in the Title III Cases under PROMESA, the

Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

52.     No prior request for the relief sought in this Three Hundred Fifty-Sixth Omnibus

Objection has been made to this or any other court.


[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting such other and further relief as is just.

Dated: June 18, 2021
    San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico*

23

**Fecha límite para responder: 19 de julio de 2021, a las 04:00 p.m. (AST)**
**Fecha de la vista: 4 de agosto de 2021, a las 9:30 a.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS
PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*: | PROMESA<br>Título III |
| JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN<br>FINANCIERA PARA PUERTO RICO, | Núm. 17 BK 3283-LTS |
| como representante del | (Administrado Conjuntamente) |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*., | **La presente radicación guarda<br>relación con el ELA.** |
| Deudores.[1] | |

---

**TRICENTÉSIMA QUINCUAGÉSIMA SEXTA OBJECIÓN GLOBAL (SUSTANTIVA)
DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES POR
BONOS PARCIALMENTE DUPLICADAS, DEFICIENTES, EN LAS QUE NO EXISTE
RESPONSABILIDAD Y RADICADAS CONTRA EL DEUDOR INCORRECTO**

---

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor

Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de

Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

único representante de Título III del ELA conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica esta tricentésima quincuagésima sexta objeción global (la "Tricentésima quincuagésima sexta objeción global") a las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento, cada una de las cuales pretende basarse parcialmente en *a*) bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), *b*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de determinados bonistas, *c*) reclamaciones que alegan responsabilidades por determinados bonos emitidos por la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") por las que el ELA no es responsable, *d*) una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento para Puerto Rico (el "BGF"), y/o e) una participación patrimonial en bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico (la "AAA"), que no es un Deudor de Título III, por unos montos por los que el ELA no ha garantizado el reembolso. Además, cada una de las evidencias de reclamaciones contenidas en el **Anexo A** del presente documento es deficiente, puesto que no brinda la información suficiente para que el ELA pueda reconciliar las evidencias de reclamaciones. Otras partes de las evidencias de reclamaciones contenidas en el **Anexo A** del presente documento son deficientes, puesto que alegan responsabilidades por supuestas pérdidas por inversiones pero no brindan fundamento alguno para alegar una reclamación en relación con las pérdidas por inversiones. Además, cada una de las reclamaciones que figuran en el **Anexo A** del presente documento debe reclasificarse parcialmente, ya que parte de la reclamación identifica al ELA como deudor, cuando en todo caso lo correcto sería que dichas partes de la reclamación se

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

alegaran contra la AEE. Asimismo, una parte de cada reclamación que aparece en el **Anexo A** del presente documento seguirá estando radicada contra el ELA. El ELA se reserva el derecho a objegar a cualquiera de los montos restantes alegados en las reclamaciones, según se identifican en la columna titulada "Corregidas" en el **Anexo A** del presente documento, sobre la base del motivo que fuere. En apoyo de la Tricentésima quincuagésima sexta objeción global, el ELA manifiesta respetuosamente lo siguiente:

## JURISDICCIÓN

1.       El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.       La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

**A.       Órdenes de Fecha Límite**

3.       El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA" o el "Caso de Título III").

4.       El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar Evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha

3

Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas

límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de

Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los

Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar*

*evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160]

(conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo

dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.     Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de**

**Título III del ELA**

5.      Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes

fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos

emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación

principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de las

reclamaciones por bonos para la respectiva serie de bonos en relación con las obligaciones surgidas

de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con

los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, se han radicado

evidencias de reclamaciones principales (conjuntamente, las "Reclamaciones Principales") en el

marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés

emitidos por la AAA, el Sistema de Retiro de los Empleados del Gobierno del Estado Libre

Asociado de Puerto Rico (el "SRE"), la Autoridad de Edificios Públicos de Puerto Rico (la "AEP"),

la Compañía de Fomento Industrial de Puerto Rico ("PRIDCO") y/o la Corporación para el

Financiamiento Público de Puerto Rico (la "CFP").

6.      ***AEP***: la AEP supuestamente emitió Bonos de Renta para financiar edificios de

oficinas y otras instalaciones arrendadas a varios departamentos, agencias públicas e

4

instrumentalidades del ELA. US Bank y US Bank Trust actúan como agentes fiscales en relación

con determinados bonos de renta emitidos por la AEP, conforme a lo explicado en la nota al pie 3

de la Evidencia de reclamación núm. 62833 (los "Bonos de la AEP"), y, en nombre de los tenedores

de los Bonos de la AEP, radicó una evidencia de reclamación principal en el marco del Caso de

Título III del ELA por todos los montos pendientes de pago adeudados (la "Reclamación Principal

de la AEP"), que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm.

62833. [3] La Reclamación Principal de la AEP alega reclamaciones liquidadas por

aproximadamente $4000 millones en concepto de principal supuestamente impagado, $160

millones en concepto de intereses supuestamente impagados y reembolso de comisiones y gastos

de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por la totalidad de

los montos adeudados "en razón de la totalidad de las reclamaciones que el Agente Fiscal tenga o

pueda tener en relación con las obligaciones de Bonos pendientes, conocidos o por conocer, contra

el ELA y aquellos que pretendan actuar en nombre del ELA. . . ." Cláusula Adicional de la

Reclamación Principal de la AEP, ¶¶ 19-21.

7. **_SRE_**: el SRE es una agencia gubernamental, aparte e independiente del Gobierno

del ELA y de sus demás instrumentalidades. _Véase_ 3 L.P.R.A § 775.[4] Supuestamente conforme a

la Resolución sobre bonos para el financiamiento de pensiones, adoptada el 24 de enero de 2008,

y ciertas resoluciones complementarias, el SRE emitió unos bonos prioritarios y subordinados para

el financiamiento de pensiones (los "Bonos del SRE"), por un monto total del principal original de

aproximadamente $2900 millones.[5] BNYM actúa como agente fiscal con respecto a los Bonos del

---

[3] La Evidencia de reclamación núm. 62833 enmendó y sustituyó la Evidencia de reclamación núm. 13351, que fue
radicada inicialmente por el Agente Fiscal.

[4] El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones
104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el SRE conforme a la sección 304(a) de
PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal.

[5] El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una _Objeción global a
reclamaciones radicadas por los tenedores de los bonos emitidos por el SRE_ [Caso núm. 17-3566, ECF núm. 381],

SRE. Actuando en nombre de los tenedores de los Bonos del SRE, BNYM radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA (la "Reclamación Principal del SRE", que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 32004.[6]

8. **_CFP_**: la CFP es una corporación subsidiaria del BGF creada conforme a la Resolución núm. 5044 de la Junta Directiva del BGF, en su versión enmendada (la "Resolución núm. 5044"), adoptada de conformidad con la autoridad concedida en virtud de la Ley núm. 17 de la Asamblea Legislativa de Puerto Rico, aprobada el 23 de septiembre de 1948, en su versión enmendada. Proporciona a los organismos públicos, instrumentalidades, municipios y a otras subdivisiones del ELA mecanismos alternativos para satisfacer sus necesidades de financiamiento. La CFP tiene la facultad de tomar en préstamo fondos y emitir deuda a través de bonos y otras obligaciones. U.S. Bank Trust actúa como fiduciario en relación con unos bonos, serie 2012A y series 2011A y B, emitidos por la CFP (los "Bonos de la CFP"). Actuando en nombre de los tenedores de los Bonos de la CFP, US Bank Trust radicó una evidencia de reclamaciones contra el ELA (la "Reclamación Principal de la CFP"), que fue registrada por Prime Clerk como Evidencia de reclamación núm. 13374.

9. **_AAA_**: la AAA es propietaria y opera los sistemas públicos de suministro de agua y de aguas residuales en Puerto Rico. La AAA emitió determinados bonos de renta (los "Bonos de

---

basándose en que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*, anulando de pleno derecho los Bonos del SRE. El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico radicó una *Objeción Global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a reclamaciones radicadas o alegadas por los tenedores de los Bonos del SRE contra el SRE y el ELA* [Caso núm. 17-3283, ECF núm. 6482], basándose, entre otras cosas, en que la emisión de los bonos fue *ultra vires*. El SRE se reserva los derechos a impugnar la emisión de los bonos sobre cualquier motivo, también sobre el motivo de que los Bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

[6] El 22 de mayo de 2019, el ELA radicó una objeción a la Evidencia de Reclamación Principal del SRE. Véase Objeción de la Junta de Supervisión y Administración Financiera, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a las reclamaciones radicadas o alegadas contra el ELA por el Bank of New York Mellon, como agente fiscal (Reclamación núm. 16775) [ECF núm. 7075]. En aras de la claridad, la presente Tricentésima quincuagésima sexta objeción global se radica sin perjuicio de los derechos de las partes en relación con dicha objeción, lo que incluye cualesquiera derechos a intervenir, que quedan reservados.

la AAA"), conforme a la Resolución de la Autoridad de Acueductos y Alcantarillados de Puerto Rico núm. 1583, por la que se autorizan y garantizan los bonos de la Autoridad de Acueductos y Alcantarillados de Puerto Rico avalados por el Estado Libre Asociado de Puerto Rico, y algunas resoluciones complementarias. El Banco Popular de Puerto Rico ("Banco Popular") actúa como fideicomisario en relación con los Bonos de la AAA, y radicó una evidencia de reclamación principal contra el ELA en nombre de los tenedores de los Bonos de la AAA, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 22620 (la "Reclamación Principal de la AAA"). La Reclamación Principal de la AAA alega "una reclamación contingente contra el ELA en relación con los Bonos por un importe de al menos $284,755,000, además de todos los intereses y primas generados sobre los Bonos a partir de la Fecha de Petición, así como la totalidad de las tasas, costos y gastos u otros cargos acumulados que hayan devengado o sean cobrables en relación de tales Bonos". Adenda de la Evidencia de Reclamación de la AAA, ¶ 9.

10. ***PRIDCO***: PRIDCO fue creada por la Ley núm. 188 de 1942, codificada como 23 L.P.R.A. §§ 271 *et seq*., para fomentar el desarrollo económico de Puerto Rico y proporcionar instalaciones industriales en arrendamiento o venta a empresas manufactureras privadas. US Bank actúa como fideicomisario en relación con determinados Bonos relativos a rentas de fines generales y rentas de refinanciamiento, series 1997 A y 2003 (los "Bonos de PRIDCO"), y en nombre de los tenedores de los Bonos de PRIDCO radicó una evidencia de reclamación principal contra el ELA, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 13445 (la "Reclamación Principal de PRIDCO"). La Reclamación principal de PRIDCO alega reclamaciones contingentes y no liquidadas contra el ELA y procura la "recuperación de la totalidad de los montos adeudados en razón de todas las reclamaciones que el Fideicomisario tenga o pueda tener en relación con las obligaciones pendientes por Bonos, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA, alegadas en la actualidad o por alegar, lo que

incluye, entre otras cosas, reclamaciones por o basadas en el incumplimiento o la violación de los

Documentos de los Bonos, acuerdos de arrendamiento u otras obligaciones contractuales relativas

a la garantía subyacente, cualesquiera otros pactos u otras obligaciones contractuales contenidas

en el mismo, o reclamaciones surgidas por el desvío indebido de las rentas de PRIDCO o de

cualesquiera otros bienes que garanticen el pago de los Bonos en virtud de los Documentos de los

bonos, conforme a la normativa legal pertinente del ELA, estatal o federal, lo que incluye, entre

otras cosas, fideicomiso ficto, transmisión fraudulenta o transferencia fraudulenta, incumplimiento

de deberes y obligaciones contractuales y fiduciarias, vulneración de pactos implícitos justos y de

buena fe, u otras reclamaciones en derecho o equidad". Cláusula Adicional de la Reclamación

principal de PRIDCO, ¶¶ 12-13.

**C.    Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III de la ACT**

11.    La ACT es una corporación pública e instrumentalidad del ELA, que constituye

una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm.

74-1965 de la Asamblea Legislativa del ELA (la "Ley para crear la ACT"). La ACT se encarga de

la construcción, operación y mantenimiento de carreteras y otros sistemas de transportación en el

ELA. *Véase* 9 L.P.R.A § 2002.

12.    De conformidad con la Ley para crear la ACT, la ACT emitió en 2003 una serie de

Bonos de renta de instrumentos financieros especiales para facilitar el financiamiento del puente

de Teodoro Moscoso (los "Bonos para el puente de la ACT"). Los tenedores de los Bonos para el

puente de la ACT han recibido, y siguen recibiendo, la totalidad de los pagos íntegros adeudados

a tales tenedores de los Bonos para el puente de la ACT, a medida que estos vencen y se vuelven

pagaderos. El ELA no ha garantizado el reembolso de los Bonos para el puente de la ACT; además,

en cada una de las declaraciones de oferta emitidas en relación con los Bonos para el puente de la

8

ACT se expone que "los Bonos [para el puente de la ACT] no constituyen deuda del Estado Libre Asociado de Puerto Rico ni de ninguna de sus subdivisiones políticas, salvo la Autoridad, por lo que ni el Estado Libre Asociado de Puerto Rico ni ninguna de sus subdivisiones, salvo la Autoridad, tiene la obligación de pagar los Bonos".[7]

**D.      Deuda de los bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico**

13.      La AAA fue creada de conformidad con la Ley núm. 40, de 1 de mayo de 1945. La AAA es una "corporación pública e instrumentalidad gubernamental autónoma", creada para la prestación de los servicios de suministro de agua y alcantarillado en la isla. 22 L.P.R.A. § 142, 144.

14.      La Ley para crear la AAA autoriza a la AAA a emitir bonos. 22 L.P.R.A. § 144(g). Conforme a dicha Ley, la junta directiva de la AAA adoptó resoluciones que autorizan a la AAA a emitir bonos, lo que incluye la Resolución núm. 1583, en su versión enmendada y modificada el 7 de marzo de 2008 (la "Resolución núm. 1583"). En 2008, la AAA emitió unos bonos de renta, Serie A, por un monto del principal de $1,316,204,456 (los "Bonos prioritarios serie A de 2008") Además en 2012, la AAA emitió simultáneamente unos bonos de renta, Serie 2012 A, por un monto del principal de $1,800,450,000 (los "Bonos prioritarios serie A de 2012") y unos bonos de renta, Serie 2012 B, por un monto del principal de $295,245,000 (los "Bonos prioritarios serie B de 2012", y junto con los Bonos prioritarios serie A de 2012 y los Bonos prioritarios serie A de 2008, los "Bonos de Gravamen Prioritarios de la AAA").

15.      Los tenedores de los Bonos de Gravamen Prioritarios de la AAA han recibido, y siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales tenedores de los Bonos de la AAA, a medida que estos vencen y se vuelven pagaderos. En consecuencia, en el EMMA se

---

[7]Véase, por ejemplo, https://emma.msrb.org/Security/Details/A0BC2E92D13DB872F5E9451D490A58D23.

indica que la AAA no ha enviado ninguna notificación de incumplimiento en relación con los Bonos de Gravamen Prioritarios de la AAA.[8] Además, el ELA no ha garantizado el reembolso de los Bonos de Gravamen Prioritarios. En consecuencia, las declaraciones de oferta relativas a los Bonos de Gravamen Prioritarios de la AAA indican que "no constituyen deuda del Estado Libre Asociado de Puerto Rico ni de ninguno de sus municipios u otras subdivisiones políticas, con la excepción de [la AAA], por lo que ni el Estado Libre Asociado de Puerto Rico ni ningunos de dichos municipios u otras subdivisiones políticas, con la excepción de [la AAA], será responsable por el pago del principal o de los intereses sobre los referidos Bonos".[9]

### E.    Caso de Título III de COFINA y resolución de la controversia entre el ELA y COFINA

16.    COFINA es una corporación pública e instrumentalidad del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 91 de la Asamblea Legislativa del ELA. Conforme a la Resolución enmendada y modificada sobre los bonos del fondo de interés apremiante, adoptada el 13 de julio de 2007, en su versión enmendada del 19 de junio de 2009, y de conformidad con otras resoluciones complementarias, COFINA emitió una serie de bonos por un monto total de aproximadamente $17,000 millones para, entre otras cosas, sufragar determinadas obligaciones de deuda del Banco Gubernamental de Fomento para Puerto Rico y de la Corporación para el Financiamiento Público de Puerto Rico (los "Bonos de COFINA"). El Bank of New York Mellon actúa como fiduciario con respecto a los Bonos de COFINA.

17.    La Junta de Supervisión radicó el *Tercer plan enmendado de ajuste de la Corporació*n del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III (el

---

[8] *Véase, por ejemplo*, https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

[9] *Véase, por ejemplo,* Declaración de Oferta relativa a los Bonos de Renta de la AAA, Serie B (Gravamen Prioritario), 15 de febrero de 2012, disponible en https://emma.msrb.org/ER584465-ER454076-ER856857.pdf.

"Plan") [ECF núm. 4652] el 9 de enero de 2019. El Tribunal examinó la confirmación del Plan y

las objeciones formuladas a este en una vista celebrada los días 16 y 17 de enero de 2019.

18.     El 4 de febrero de 2019, el Tribunal confirmó el Plan que incorporaba el pacto y la

conciliación de la controversia sobre si, luego de examinar todas las contestaciones y

reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos

sobre la venta y uso supuestamente empeñados por COFINA para garantizar la deuda son

propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia entre

el ELA y COFINA"). *Véase la Orden y la Sentencia que confirman el Tercer plan enmendado de*

*ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al*

*Título III* [ECF núm. 5048]. Ese mismo día, el Tribunal aprobó el pacto y la conciliación de la

Controversia entre el ELA y COFINA conforme al *Dictamen abreviado y orden que aprueba la*

*conciliación entre el Estado Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés*

*Apremiante de Puerto Rico* [ECF núm. 5045] (la "Orden de Conciliación"). El 5 de febrero de

2019, el Tribunal dictó una *Orden y Sentencia enmendadas que confirman el Tercer plan*

*enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico*

*elaborado conforme al Título III* [ECF núm. 5055] (la "Orden de Confirmación Enmendada"). El

Plan entró en vigor el 12 de febrero de 2019 (la "Fecha de entrada en vigor"), una vez consumadas

las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se*

*confirma el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante*

*de Puerto Rico elaborado conforme al Título III, según el Título III de PROMESA, y B)*

*acontecimiento de la Fecha de entrada en vigor* [Caso núm. 17 BK 3284-LTS, ECF núm. 587].

**F.     Procedimientos conforme al Título VI del BGF y modificación calificada**

19.     El BGF es una corporación pública e instrumentalidad gubernamental del ELA,

creada por la Asamblea Legislativa en 1948 para ayudar al Gobierno del ELA (el "Gobierno") a

llevar a cabo sus tareas fiscales y a desempeñar su responsabilidad con mayor eficacia en relación

con el desarrollo de la economía del ELA. El 28 de abril de 2017, la Junta de Supervisión aprobó

por unanimidad el Plan fiscal del BGF de febrero de 2017, que contemplaba una terminación

ordenada de las actividades del BGF sobre la base de la determinación de que el BGF no era viable

a largo plazo dadas sus condiciones financieras vigentes en ese momento.

20.      El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se

autorizaba al BGF, conforme a la sección 601(e) de PROMESA, a ampararse en el título VI de

PROMESA. El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una

modificación calificada, conforme a la sección 601(m)(1)(D) de PROMESA (la "Modificación

Calificada"), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

21.      El 7 de noviembre de 2018, el Tribunal aprobó la Modificación Calificada

conforme a la sección 601(m)(1)(D) de PROMESA. *Véase* ECF núm. 270 en *Banco

Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 7 de nov. de 2018). La

Modificación Calificada dispone, entre otras cosas, i) la emisión de nuevos bonos por la recién

creada Autoridad de Recuperación de Deuda del BGF (GDB Debt Recovery Authority) a cambio

de la cancelación (entre otras cosas) de determinados bonos de participación y reclamaciones de

bonos garantizados (conjuntamente, los "Bonos del BGF"). ii) la extinción de la garantía del ELA

de los bonos garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la

liberación de reclamaciones de los tenedores de los Bonos del BGF contra el BGF y sus afiliados

en relación con (entre otras cosas) cualquier inversión con el BGF o la compra, venta o

transferencia de cualquier título valor o participación del BGF, y cualquier acción u omisión con

respecto a cualquier endeudamiento o préstamo al BGF (incluidos cualesquiera pagarés emitidos

o depósitos poseídos por el BGF) o del BGF. *Declaración de Solicitación,* en 57-60, ECF núm. 1-

15 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 10 de

ago. de 2018).

22.     El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación

Calificada del BGF. Nota de prensa, *el Gobierno de Puerto Rico anuncia la consumación de la*

*Modificación Calificada del BGF*, Gobernador de Puerto Rico (29 de nov. de 2018), disponible en

http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-

modification.pdf.

**G.     Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones**
**globales y objeciones a reclamaciones**

23.     Hasta la fecha, se han radicado aproximadamente 179,420 evidencias de

reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas

evidencias de reclamaciones ascienden a un total aproximado de $43.59 billones en reclamaciones

radicadas contra los Deudores, además de los montos no liquidados reclamados.

24.     De las evidencias de reclamaciones radicadas, aproximadamente 116,160 han sido

radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad

con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que

haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido

enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables,

estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información

necesaria para que los Deudores determinen si la reclamación es válida.

25.     Para resolver eficazmente el mayor número posible de las evidencias de

reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su

*Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a*

*objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de*

*Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

26.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas*

14

*de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los
"Procedimientos Enmendados relativos a Objeciones Globales").

27.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los
Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la
fecha más de 14 vistas vinculadas con más de 140 objeciones globales radicadas por el ELA,
COFINA, la ACT, el SRE y/o la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"). Sobre
la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente
101,019 reclamaciones que reivindicaban $43.59 billones en responsabilidad contra el ELA,
COFINA, la ACT, la AEE y el SRE fueron rechazadas y retiradas del registro de reclamaciones
en el marco de los procedimientos radicados conforme al Título III.

28.     Esta Tricentésima quincuagésima sexta objeción global se radica de conformidad
con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

29.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA
radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases
recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra
(*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en
los Procedimientos Enmendados relativos a Objeciones Globales.

30.     La Tricentésima quincuagésima sexta objeción global pretende, en parte, rechazar
y reclasificar, de conformidad con los Procedimientos Enmendados relativos a Objeciones
Globales, las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento
(conjuntamente, las "Reclamaciones que han de ser rechazadas parcialmente y reclasificadas
parcialmente"), cada una de las cuales pretende alegar responsabilidades surgidas de "Bonos de
P.R.". "Pérdida de inversión" . . . u otros términos similares que alegan responsabilidades

15

vinculadas con inversiones en bonos emitidos por el Gobierno. En algunos casos, las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente proporcionaban como documentación justificativa una copia de un extracto de corretaje u otra documentación justificativa que contenía información sobre bonos supuestamente en posesión del reclamante, pero no proporcionaban la información necesaria para que el ELA pueda reconciliar las reclamaciones; como por ejemplo, los números CUSIP o los montos de los bonos concretos que los reclamantes pretenden alegar. Sin embargo, los montos de los bonos incluidos en dicha documentación justificativa no correspondían con el monto que figuraba en la evidencia de reclamación del reclamante. En otros casos, las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente no contenían ninguna documentación justificativa.

31.     El 13 de agosto de 2019, el Tribunal dictó la *Orden que concedió parcialmente y levantó parcialmente la Moción de los Deudores para dictar una orden que A) autorice procedimientos alternativos de resolución de controversias, B) apruebe formas de notificación adicionales, C) apruebe envíos propuestos y D) conceda el remedio relacionado* [ECF núm. 8453] (la "Orden de Envío Autorizado") que autorizó que los Deudores realizaran envíos "a cualquier reclamante que no haya proporcionado suficiente información que permitiera a los Deudores procesar sus reclamaciones". Orden de Envío Autorizado, ¶ 3.

32.     Conforme a la Orden de Envío Autorizado, "[s]i los Deudores realizan el Envío Propuesto al reclamante, y este último no responde o responde pero no aporta suficiente información que permita a los Deudores reconciliar su reclamación, los Deudores tendrán derecho a oponerse a la reclamación como deficiente". *Id.*

33.     De conformidad con la Orden de Envío Autorizado, los Deudores han enviado al menos una carta a cada reclamante objeto de la presente Tricentésima quincuagésima sexta

16

objeción global esencialmente en el formato que se adjunta a la Orden de Envío Autorizado como

Anexo 1 (el "Envío"). Cada Envío, en la parte pertinente, rezaba lo siguiente:

> Se requiere información adicional para que los Deudores sigan
> examinando su reclamación. Los Deudores no pueden determinar a
> partir de la información que usted proporcionó cuál es la base de la
> reclamación que trata de alegar contra uno o más Deudores. Al
> responder a esta carta, rogamos se asegure de proporcionar toda la
> información solicitada, así como tantos detalles como sea posible
> aportar sobre su reclamación. Las descripciones que incorporó en su
> evidencia de reclamación eran demasiado vagas para que los
> Deudores comprendieran la reclamación que usted trata de alegar,
> de manera que rogamos proporcione más detalles y no se limite
> simplemente a copiar la misma información.
> *Véase* ECF núm. 8453-1 en 2, 7.

34.     Los Envíos recibidos por los reclamantes objeto de la presente Tricentésima

quincuagésima sexta objeción global exigían a los reclamantes responder antes del 23 de octubre

de 2019 (dependiendo de la fecha en la que cada Envío fue realizado). *Véase id.* Además, en los

Envíos se advertía a los Reclamantes de que "[s]i no responde a esta solicitud y no proporciona la

información y la documentación requeridas para justificar su reclamación, es posible que los

Deudores se vean en la obligación de oponerse a su reclamación."

35.     Cada uno de los Reclamantes identificados en el **Anexo A** o bien no respondió a

los Envíos, o bien envió una respuesta que tampoco contenía la información necesaria que permita

al ELA reconciliar la reclamación. En consecuencia, los Deudores analizaron la documentación

sometida con la evidencia de reclamación o con los Envíos en relación con la alegación de

inversiones relacionadas con bonos emitidos por el Gobierno. En base a dicho análisis, los

Deudores entienden que las Reclamaciones que han de ser rechazadas parcialmente y

reclasificadas parcialmente alegan *a)* bonos emitidos por COFINA, *b)* reclamaciones por bonos

que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales

radicadas contra el ELA en nombre de determinados bonistas, *c)* reclamaciones que alegan

responsabilidades por determinados bonos emitidos por la ACT por los que el ELA no es

17

responsable, *d*) una participación patrimonial en bonos emitidos por el BGF, y/o *e*) una participación patrimonial en bonos emitidos por la AAA, que no es un Deudor de Título III, por unos montos por los que el ELA no ha garantizado el reembolso. En la medida en que cada una de las Reclamaciones que han de ser rechazadas pretenda alegar responsabilidades adicionales no vinculadas con los bonos emitidos por el Gobierno identificados en la evidencia de reclamación, en la documentación justificativa o en el Envío de réplica, dichas partes de cada una de las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento son deficientes porque no proporcionan información suficiente para que el ELA pueda reconciliar las evidencias de reclamaciones. Otras partes de cada una de las evidencias de reclamaciones contenidas en el **Anexo A** del presente documento son deficientes, puesto que alegan responsabilidades por supuestas pérdidas por inversiones pero no brindan información suficiente para que los Deudores puedan reconciliar las evidencias de reclamaciones. Además, cada una de las reclamaciones que figuran en el **Anexo A** del presente documento debe reclasificarse parcialmente, ya que parte de la reclamación identifica al ELA como deudor, cuando en todo caso lo correcto sería que dichas partes de la reclamación se alegaran contra la AEE. Asimismo, una parte de cada reclamación que aparece en el **Anexo A** del presente documento seguirá estando radicada contra el ELA.

### A. Ausencia de responsabilidad por reclamaciones de los bonistas de COFINA

36.     Conforme a lo identificado en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente pretenden alegar reclamaciones basadas, en parte, en una supuesta participación patrimonial en los bonos emitidos por COFINA (conjuntamente, las "Reclamaciones Parciales de los Bonistas de COFINA").

37.     Como se explicó anteriormente, la Orden de Conciliación resolvió la Controversia entre el ELA y COFINA y, conforme al párrafo 55 de la Orden de Conciliación, la totalidad de las

reclamaciones contra el ELA, surgidas o vinculadas con la relación del ELA y COFINA, han sido liberadas. Además, conforme al párrafo 3(c) del *Acuerdo de Conciliación* [ECF núm. 5045-1], de fecha 19 de octubre de 2018, que se adjunta a la Orden de Conciliación (el "Acuerdo de Conciliación"), y el párrafo 7 de la Orden de Confirmación Enmendada, el procedimiento contencioso entre el ELA y COFINA sobre la Controversia entre el ELA y COFINA ha sido desestimado de forma definitiva luego de la aprobación del pacto y la conciliación de la Controversia entre el ELA y COFINA. Además, conforme al párrafo 29(f) de la Orden de Confirmación Enmendada, reclamaciones (tales como las Reclamaciones parciales de los bonistas de COFINA) que surgieron de o están vinculadas con la relación entre el ELA y COFINA, fueron liberadas. Orden de Confirmación Enmendada, ¶ 29(f). [10] Por todos esos motivos, las Reclamaciones Parciales de los Bonistas de COFINA deben rechazarse porque dichas reclamaciones basadas en una presunta participación patrimonial en los Bonos COFINA han sido satisfechas, liberadas y/o liquidadas conforme a la Orden de Conciliación, el Acuerdo de Conciliación, la Orden de Confirmación Enmendada y el Plan.

**B. Ausencia de responsabilidad por reclamaciones de los bonistas del BGF**

38.    Conforme a lo identificado en el **Anexo A** del presente documento, algunas Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente pretenden alegar, en parte, reclamaciones basadas en la supuesta participación patrimonial en los bonos emitidos por el BGF (conjuntamente, las "Reclamaciones Parciales de los Bonistas del BGF").

---

[10] Conforme al Plan, una "Reclamación" se define como "[c]ualquier derecho a un pago o cumplimiento, independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, contingente, vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado, conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por incumplimiento o ejecución de un cumplimiento, independientemente de si tal derecho a un remedio en equidad consta en una sentencia, es fijo, contingente, vencido, no vencido, controvertido, no controvertido, garantizado o no garantizado, y la totalidad de las deudas, procesos, indemnizaciones por daños y perjuicios, derechos, remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas de acción, procedimientos o reclamaciones de cualquier tipo o naturaleza, en derecho, equidad o de cualquier otra forma". Plan § 1.53.

39.     Cada una de las Reclamaciones de los bonistas del BGF pretende basarse, en parte,

en la participación patrimonial en los Bonos del BGF objeto de la Modificación Calificada, que

dispuso la emisión de nuevos títulos valores a cambio de la cancelación de los Bonos del BGF y

la extinción de la garantía del ELA relativa a determinados Bonos del BGF, por lo que el ELA ya

no es responsable con respecto a dichas reclamaciones. En consecuencia, cada una de las

Reclamaciones Parciales de los Bonistas del BGF ha sido liberada conforme a la aprobación y la

consumación de la Modificación Calificada. Como se señaló anteriormente, la Modificación

Calificada dispone, entre otras cosas, que los tenedores de los Bonos del BGF liberarán al BGF y

sus afiliados de las reclamaciones relacionadas con los Bonos del BGF, y de cualquier acción u

omisión del BGF y sus afiliados con respecto a todo endeudamiento del BGF o préstamo al BGF.

El BGF es una corporación pública e instrumentalidad  del ELA. En consecuencia, el ELA es un

afiliado del BGF dentro el ámbito de la liberación conforme a la Modificación Calificada. Por

tanto, las Reclamaciones Parciales de los Bonistas del BGF fueron liberadas tras la consumación

de la Modificación Calificada el 29 de noviembre de 2018. Puesto que las Reclamaciones Parciales

de los Bonistas del BGF son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del

Código de Quiebras, dichas reclamaciones deben rechazarse puesto que pretenden recuperar

montos por los que el ELA no es responsable.

**C.  Ausencia de responsabilidad por reclamaciones duplicadas por bonos**

40.     Según se expone en el **<u>Anexo A</u>** del presente documento, algunas de las

Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente pretenden

alegar responsabilidad, en parte, sobre la base de los bonos emitidos por la AAA, el SRE, la AEP,

PRIDCO y la CFP (conjuntamente, las "<u>Reclamaciones Parcialmente Duplicadas por Bonos</u>").

41.     Cada una de las Reclamaciones Parcialmente Duplicadas por Bonos pretende

alegar, en parte, responsabilidad contra el ELA vinculada con uno o más bonos que están

duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos emitidos por la AAA, el SRE, la AEP, PRIDCO y la CFP. Si las Reclamaciones Parcialmente Duplicadas por Bonos no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA, en detrimento de otras partes interesadas en el Caso de Título III del ELA. Los titulares de las Reclamaciones Parcialmente Duplicadas por Bonos no se verán perjudicados por el hecho de que se rechacen parcialmente sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones Parcialmente Duplicadas por Bonos figuran en una o más Reclamaciones Principales.

### D.  Ausencia de responsabilidad por los Bonos de Gravamen Prioritarios de la AAA

42.     Conforme a lo identificado en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente pretenden alegar reclamaciones parcialmente basadas en una supuesta participación patrimonial en los bonos emitidos por la AAA (conjuntamente, las "Reclamaciones Parciales de Bonistas de Gravamen Prioritario de la AAA").

43.     Cada una de las Reclamaciones Parciales de Bonistas de la AAA alega responsabilidades vinculadas con los Bonos de gravamen prioritarios de la AAA emitidos por la AAA, que no es un Deudor de Título III, sino que es una entidad aparte y jurídicamente independiente del ELA. Además, el ELA no ha garantizado el reembolso de los Bonos de Gravamen Prioritarios. Asimismo, las Reclamaciones Parciales de Bonistas de Gravamen Prioritario de la AAA no proporcionan fundamento alguno para alegar una reclamación contra el ELA por los bonos emitidos por la AAA que no están garantizados por el ELA. En consecuencia,

ni el ELA ni el Tribunal pueden determinar la validez de la Reclamación Parcial de Bonistas de Gravamen Prioritario de la AAA.

### E. Ausencia de responsabilidad por reclamaciones de los bonistas del puente de la ACT

44.    Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, algunas Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente pretenden alegar, total o parcialmente, reclamaciones basadas en la supuesta participación patrimonial en los Bonos para el puente de la ACT emitidos por la ACT (conjuntamente, las "<u>Reclamaciones Parciales de los Bonistas del Puente de la ACT</u>").

45.    Cada una de las Reclamaciones Parciales de los Bonistas del Puente de la ACT pretende alegar, en parte, responsabilidades contra el ELA vinculadas con los Bonos para el Puente de la ACT que no están garantizados por el ELA. Sin embargo, como se explicó anteriormente, el ELA no ha garantizado el reembolso de los Bonos para el puente de la ACT, por lo que no tiene la obligación de realizar pagos a los tenedores en relación con los Bonos para el puente de la ACT. Además, las Reclamaciones Parciales de los Bonistas del Puente de la ACT no proporcionan fundamento alguno para alegar una reclamación contra el ELA por los Bonos para el puente de la ACT, los cuales, como se señaló anteriormente, fueron emitidos por la ACT y no han sido garantizados por el ELA.

### F. Reclamaciones deficientes relativas a pérdidas por inversiones

46.    Según se identifica en el Anexo A del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente pretenden alegar responsabilidades surgidas de supuestas pérdidas por inversiones. Sin embargo, ninguna de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente alega posible causa de acción alguna contra los Deudores que pueda generar responsabilidad de los

Deudores por los supuestos daños y perjuicios sufridos como consecuencia de la pérdida de las inversiones iniciales por parte de los reclamantes. En consecuencia, los Deudores no son responsables por los montos alegados en las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente que surgen de supuestas pérdidas por inversión. *Véase English c. Energy Future Holdings (In re Energy Future Holdings),* 2018 U.S. Dist. LEXIS 49952, en \*7 (D. Del., 27 de marzo de 2018) (que dispone que la orden del tribunal de quiebras por la que se rechaza la evidencia de reclamación era la adecuada, cuando el reclamante había vendido los bonos emitidos por el deudor y, por lo tanto, no tenía ningún derecho a un pago en relación con los bonos ni ha demostrado el reclamante que tuviera posible causa de acción contra el deudor por los supuestos daños y perjuicios sufridos por el reclamante al vender con pérdidas los bonos del deudor); *In re Allegheny Int'l, Inc*., 954 F.2d 167, 173 (3d Cir. 1992) (que cita *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991) (que cita 3 L. King, *Collier on Bankruptcy* § 502.02, en 502-22 (15th ed. 1991)) ("Al principio, el reclamante debe alegar hechos que sean suficientes para sostener la reclamación").

### G.  Reclamaciones por bonos parcialmente reclasificadas

47.      Por último, otra parte de cada una de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente identifica al ELA como el deudor, cuando en todo caso lo correcto sería que dicha parte se alegara contra la AEE, y alega responsabilidad, en parte, sobre la base de bonos emitidos por la AEE (conjuntamente, las "Reclamaciones por bonos parcialmente reclasificadas").

48.      En cada una de las Reclamaciones por Bonos Parcialmente Reclasificadas el reclamante pretendió alegar, en parte, responsabilidades vinculadas con bono(s) municipal(es), sin embargo la evidencia de reclamación, la documentación justificativa proporcionada por el reclamante y/o la información CUSIP muestran que en todo caso lo correcto sería alegar las

responsabilidades vinculadas con las Reclamaciones por Bonos Parcialmente Reclasificadas contra la AEE. En consecuencia, las Reclamaciones por Bonos Parcialmente Reclasificadas deben reclasificarse, en parte, para alegarse contra la AEE, el deudor de Título III identificado en la columna titulada "Corregidas" en el **Anexo A** del presente documento. El ELA se reserva el derecho a objetar a cualquier parte de las Reclamaciones por bonos parcialmente reclasificadas sobre cualquier otro motivo que fuere.

49.     En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Tricentésima quincuagésima sexta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones por bonos parcialmente duplicadas, deficientes, en las que no existe responsabilidad y radicadas contra el deudor incorrecto*, de fecha 18 de junio de 2021, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

50.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el ELA notifica la presente Tricentésima quincuagésima sexta objeción global a) a los acreedores individuales objeto de esta Tricentésima quincuagésima sexta objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 14* [ECF núm. 15894-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación relativa a esta Tricentésima quincuagésima sexta objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Tricentésima quincuagésima sexta objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con esta objeción y se trasladarán a las partes. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

24

## RESERVA DE DERECHOS

51.    esta Tricentésima quincuagésima sexta objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos del ELA, o de los derechos de cualesquiera otras partes interesadas en dichos Casos de Título III, a objetar a las Reclamaciones que han de ser rechazadas parcialmente o a cualesquiera otras reclamaciones sobre la base de los motivos que fuere. El ELA se reserva expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra el ELA; b) constituyan una renuncia a los derechos del ELA, o de cualesquiera otras partes interesadas de los Casos de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten al ELA, o a cualesquiera otras partes interesadas de los Casos de Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

52.    No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima quincuagésima sexta objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.


[*El resto de la página se deja en blanco intencionadamente*]

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda cualesquiera otros remedios que se consideren justos.

Fecha: 18 de junio de 2021
      San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico.*