Hearing Date: August 4, 2021, at 9:30 AM (Atlantic Standard Time)
Response Deadline: July 19, 2021, at 4:00 PM (Atlantic Standard Time)

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>              Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth, HTA and ERS.** |

---

### THREE HUNDRED FIFTY-FIRST OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO, PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, AND EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO PARTIAL DUPLICATE LITIGATION CLAIMS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801)  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the Commonwealth and HTA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this three hundred fifty-first omnibus objection (the "Three Hundred Fifty-First Omnibus Objection") to the partially duplicative litigation-related proofs of claim listed on **Exhibit A** hereto, and in support of the Three Hundred Fifty-First Omnibus Objection, respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").   On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed voluntary

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

petitions for relief for HTA and ERS pursuant to PROMESA section 304(a), commencing cases under Title III thereof (respectively, the "HTA Title III Case" and the "ERS Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases").  On June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.  ECF No. 537.[3]

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][4] (the "Bar Date Motion").  By the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

**B.      Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

5.      To date, approximately 179,420 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.59 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

---

[3]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

[4]  All ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

6.      Of the proofs of claim filed, approximately 116,160 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  Approximately 53,022 proofs of claim have been filed in relation to, or reclassified to be asserted against, ERS.  Over 2,260 proofs of claim have been filed in relation to, or reclassified to be asserted against, HTA.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

7.      In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

8.      In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the

number of claims that may be included on an objection, and to approve additional forms of notice.

*Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

9.      Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 14 hearings related to over 140 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), HTA, the Puerto Rico Electric Power Authority ("PREPA"), and/or ERS.  Based upon rulings and orders of the Court to date, approximately 101,019 claims asserting $43.59 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

10.      This Three Hundred Fifty-First Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

11.      The Amended Omnibus Objection Procedures allow the Debtors to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy

Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

12.     The Three Hundred Fifty-First Omnibus Objection seeks to partially disallow, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(1) and the Amended Omnibus Objection Procedures, claims that are substantively duplicative, in part, of other proofs of claim filed in the Title III Cases.

13.     As set forth in **Exhibit A** hereto, the claims identified in the column titled "Claims to be Partially Disallowed" (each a "Claim to Be Partially Disallowed," and collectively, the "Claims to be Partially Disallowed") assert, in part, the same liabilities as those asserted in: (1) the master claims filed on behalf of all plaintiffs in the litigation captioned *Jeannete Abrams Diaz et al. v. Department of Transportation & Public Works*, No. KAC2005-5021 (the "Abrams Diaz Master Claims"); (2) the master claims filed on behalf of all plaintiffs in the litigation captioned *Delfina Lopez Rosario et al. v. Puerto Rico Police Department*, No. T-01-10-372 (the "Lopez Rosario Master Claims"); (3) the master claim filed on behalf of all plaintiffs in the litigation captioned *Acevedo Arocho et al. v. Puerto Rico Department of Treasury*, No. KAC2005-5022 (the "Acevedo Arocho Master Claims"); (4) the master claim filed on behalf of all plaintiffs in the litigation captioned *Madeline Acevedo Camacho et al. v. Puerto Rico Department of Family Affairs*, No. 2016-05-1340 (the "Acevedo Camacho Master Claim"); (5) the master claim filed on behalf of all plaintiffs in the litigation captioned *Francisco Beltrán Cintrón et al. v. Puerto Rico Department of Family Affairs*, No. KAC2009-0809 (the "Beltrán Cintrón Master Claim"); (6) the master claim filed on behalf of all plaintiffs in the litigation captioned *Abraham Gimenez et al. v. Puerto Rico Department of Transportation & Public Works*, No. KAC2013-1019 (the "Abraham Gimenez Master Claim"); (7) the master claim filed on behalf of all plaintiffs in the litigation

captioned *Juan Pérez Colón et al. v. Puerto Rico Department of Transportation & Public Works*, No. KAC1990-0487 (the "Pérez Colón Master Claim"); (8) the master claim filed on behalf of all plaintiffs in the litigation captioned *Frente Unido de Policías Organizados et al. v. Puerto Rico Police Department*, No. KAC2007-4170 (the "FUPO Master Claim"); (9) the master claim filed on behalf of all plaintiffs in the litigation captioned *Alfredo Maldonado Colón et al. v. Puerto Rico Department of Corrections & Rehabilitation*, No. KAC96-1381 (the "Maldonado Colón Master Claim"); or (10) the master claim filed on behalf of all plaintiffs in the litigation captioned *Rosa Lydia Velez v. Puerto Rico Department of Education*, KPE1980-1738, who have agreed to be represented by José E. Torres Valentín ("Torres Valentín") of Torres Valentín Estudio Legal, LLC (the "Velez Master Claim"), (collectively, the "Litigation Master Claims").

14.     The Abrams Diaz Master Claim identifies the "Abrams Diaz Plaintiff Group" as the creditor and assert over $40 million in liabilities associated with a state court complaint filed by employees of the Department of Transportation and Public Works ("DTOP").   Therein, the Abrams Diaz Plaintiff Group asserted that DTOP failed to pay plaintiffs appropriate wages as a result of the improper implementation of the Office of Public Service Personnel's "General Memorandum No. 5-86" (the "Memorandum").   According to plaintiffs, that Memorandum set forth a method for adjusting salaries and benefits that violated the principle of equal pay for equal work.   The attorney representing each plaintiff in the Abrams Diaz Plaintiff Group filed the Abrams Diaz Master Claim on behalf of all members of that group.   That attorney also submitted a *Verified Statement Pursuant to FRBP 2019 of the Abrams-Diaz Plaintiff Group* [ECF No. 3505], providing the name, address, and amount of disclosable economic interests for each member of the plaintiff group.

15.     The Lopez Rosario Master Claim identifies the "Lopez Rosario Plaintiff Group" as the creditor and assert over $20 million in liabilities arising from a complaint filed by employees of the Puerto Rico Police Department in the Comisión Apelativa del Servicio Público ("CASP"). In the complaint, plaintiffs assert they are entitled to back pay illegally withheld by the Puerto Rico Police Department pursuant to the Memorandum, which, plaintiffs contend, was improperly implemented.  As supporting documentation, the Lopez Rosario Master Claim attaches, *inter alia*, a chart identifying each individual plaintiff in the Lopez Rosario Plaintiff Group.  The attorney representing each plaintiff in the Lopez Rosario Plaintiff Group filed the Lopez Rosario Master Claim on behalf of all members of that group.  That attorney also submitted a *Verified Statement Pursuant to FRBP 2019 of the Lopez-Rosario Plaintiff Group* [ECF No. 3404], providing the name, address, and amount of disclosable economic interests for each member of the plaintiff group.

16.     The Acevedo Arocho Master Claims assert liabilities associated with a state court complaint brought by employees of the Department of Treasury ("Hacienda"), alleging Hacienda failed to pay plaintiffs appropriate wages as a result of the Memorandum.  The Acevedo Arocho Master Claims each assert over $20 million in liabilities associated with alleged back pay and allegedly unpaid pension contributions, list the creditor as the "Acevedo Arocho Plaintiff Group," and were filed by the attorney representing all plaintiffs in the Acevedo Arocho Plaintiff Group. The state court complaint and a chart identifying each individual plaintiff in the Acevedo Arocho Plaintiff Group are included as supporting documentation to the Acevedo Arocho Master Claims. Further, the attorney representing all plaintiffs submitted a *Verified Statement Pursuant to FRBP 2019 of the Acevedo-Arocho Plaintiff Group* [ECF No. 3402], providing the name, address, and amount of disclosable economic interests for each member of the plaintiff group.

17.     The Acevedo Camacho Master Claims assert liabilities associated with a complaint filed in the Puerto Rico Court of First Instance by employees of the Puerto Rico Department of the Family (the "Family Department"), alleging employees were entitled to back pay due to the Family Department's illegal implementation of the Office of Public Service Personnel's "General Memorandum No. 5-86."   The Acevedo Camacho Master Claims were filed on behalf of the "Acevedo Camacho Plaintiffs Group," assert approximately $50 million in liabilities associated with alleged back pay and allegedly unpaid pension contributions, and were filed by the attorney representing all plaintiffs in the litigation.  The Acevedo Camacho Master Claims include, among other things, a chart identifying each plaintiff in the Acevedo Camacho Plaintiffs Group.  The attorney representing the Acevedo Camacho Plaintiffs Group also submitted a *Verified Statement Pursuant to FRBP 2019 of the Acevedo-Camacho Plaintiff Group* [ECF No. 3406], providing the name, address, and amount of disclosable economic interests for each member of the plaintiff group.

18.     The Beltrán Cintrón Master Claims assert liabilities associated with a complaint filed in the Puerto Rico Court of First Instance by employees of the Department of the Family (the "Family Department"), alleging that the Family Department failed to pay plaintiffs appropriate wages as a result of the improper implementation of the Memorandum.  The Beltrán Cintrón Master Claims assert approximately $105 million in liabilities associated with alleged back pay and allegedly unpaid pension contributions, name the creditor as the "Beltrán Cintrón Plaintiff Group," and were filed by the attorney representing all plaintiffs in the litigation.  As supporting documentation, the Beltrán Cintrón Master Claims attach a chart identifying each individual plaintiff in the Beltrán Cintrón Plaintiff Group.  Further, the attorney representing all plaintiffs submitted a *Verified Statement Pursuant to FRBP 2019 of the Beltrán-Cintrón Plaintiff Group*

[ECF No. 3403], providing the name, address, and amount of disclosable economic interests for each member of the plaintiff group.

19.     The Abraham Giménez Master Claims assert liabilities associated with a complaint filed in the Puerto Rico Court of First Instance by DTOP employees, asserting the DTOP failed to pay appropriate wages pursuant to the Memorandum.  The Abraham Giménez Master Claims identify the creditors as the "Abraham Giménez Plaintiff Group," and assert approximately $35 million in liabilities associated with alleged back pay and allegedly unpaid pension contributions. The attorney representing all plaintiffs in the litigation filed the Abraham Giménez Master Claims on behalf of all members of the Abraham Giménez Plaintiff Group.  That attorney also submitted a *Verified Statement Pursuant to FRBP 2019 of the Abraham-Giménez Plaintiff Group* [ECF No. 3401], providing the name, address, and amount of disclosable economic interests for each member of the plaintiff group.

20.     The Pérez Colón Master Claim asserts liabilities associated with a complaint filed in the Puerto Rico Court of First Instance by DTOP employees, asserting DTOP failed to pay appropriate wages pursuant to the Memorandum.  The Pérez Colón Master Claim identifies the creditor as the "Pérez Colón Plaintiff Group," and asserts approximately $3 million in liabilities associated with alleged back pay.  The attorney who represents all plaintiffs in the litigation filed the Pérez Colón Master Claims on behalf of all members of the Pérez Colón Plaintiff Group.  That attorney also submitted a *Verified Statement Pursuant to FRBP 2019 of the Pérez-Colón Plaintiff Group* [ECF No. 3506], providing the name, address, and amount of disclosable economic interests for each member of the plaintiff group.

21.     The FUPO Master Claim asserts liabilities associated with a complaint filed in the Puerto Rico Court of First Instance by members of FUPO and the Concilio Nacional de Policías

("CONAPOL"), alleging the Superintendent of the Puerto Rico Police Department failed to implement Act No. 227 of 2004, which provided for salary increases for Police Department employees. The FUPO Master Claim was filed by the Concilio Nacional de Policías, Inc. on behalf of all plaintiffs in the litigation, asserts $280 million in liabilities associated with unpaid salary increases, and attaches a chart identifying each plaintiff in the litigation.

22.    The Maldonado Colón Master Claim asserts liabilities associated with a complaint filed in the Puerto Rico Court of First Instance by employees of the Puerto Rico Department of Corrections and Rehabilitation ("DCR"). Therein, plaintiffs contend they are owed unpaid salary increases provided for in, among other things, various DCR administrative orders. On September 28, 2002, judgment was entered in favor of plaintiffs. The Maldonado Colón Master Claim asserts approximately $18 million associated with outstanding payments due in accordance with the court's judgment, was filed on behalf of all plaintiffs in the litigation, and attaches a chart identifying each individual plaintiff in the litigation.

23.    The Velez Master Claim asserts liabilities arising from a complaint filed against the DOE by parents of minors who participated in the DOE's Special Education Program. In the complaint, plaintiffs sought to compel the DOE to comply with certain federal and state obligations relating to special education programs, as well as certain damages related thereto. The Velez Master Claim was filed by Mr. Torres Valentín on behalf of all plaintiffs represented by Mr. Torres Valentín, and asserts $150,000 in liabilities for each plaintiff.

24.    Each of the Claims to Be Partially Disallowed was filed by one of the individual plaintiffs in the litigations asserted by the Litigation Master Claims, as identified in the supporting documentation provided with the Litigation Master Claims or the verified statement filed by the attorney representing all claimants in the litigation. Each of the Claims to Be Partially Disallowed

11

also purports to assert additional liabilities not associated with the Litigation Master Claims, such as additional bases for back pay that are not subsumed within the Litigation Master Claims.

25.     Accordingly, the Claims to Be Partially Disallowed are partially duplicative of the Master Litigation Claims.  Any failure to partially disallow the Claims to Be Partially Disallowed will result in the applicable claimants potentially receiving an unwarranted double recovery to the detriment of other stakeholders in these Title III Cases.  The holders of the Claims to Be Partially Disallowed will not be prejudiced by the partial disallowance of their claims, because the liabilities associated with each of the Claims to Be Partially Disallowed are subsumed within the liabilities asserted by the relevant Litigation Master Claim(s), as set forth in **Exhibit A** hereto.  In addition, the holders of the Claims to Be Partially Disallowed will also not be prejudiced as to the remaining amounts allegedly owed which are not subject to this objection, as they will retain a Remaining Claim against the Debtors in respect of such amounts.  Because this Three Hundred Fifty-First Omnibus Objection to the Claims to Be Partially Disallowed does not constitute an objection to the Litigation Master Claims, the Debtors reserves their rights to object to the Litigation Master Claims on any other grounds whatsoever.

26.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Three Hundred Fifty-First Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico to Partial Duplicate Litigation Claims*, dated June 18, 2021, attached hereto as **Exhibit B**.

### NOTICE

27.     In accordance with the Omnibus Objection Procedures and the Court's Notice Order, the Debtors have provided notice of this Three Hundred Fifty-First Omnibus Objection to (a) the individual creditors subject to this Three Hundred Fifty-First Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Fourteenth Amended Case*

*Management Procedures* [ECF No. 15894-1]), which is available on the Debtors' case website at
https://cases.primeclerk.com/puertorico.  A copy of the notice for this Three Hundred Fifty-First
Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Three Hundred
Fifty-First Omnibus Objection and all of the exhibits attached hereto are being filed with this
objection and will be served on the parties.  The Debtors submit that, in light of the nature of the
relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

28.     No prior request for the relief sought in this Three Hundred Fifty-First Omnibus
Objection has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

13

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Debtors such other and further relief as is just.

Dated:  June 18, 2021
       San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative for the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority, and the Employees Retirement System for the Government of the Commonwealth of Puerto Rico*

**Fecha de la vista: 4 de agosto de 2021, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 19 de julio de 2021, a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS
ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S)
RECLAMACIÓN(ES).**

---

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
## PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>    como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,<br><br>                     Deudores.[1] | PROMESA<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA, la ACT y el SRE.** |

---

**TRICENTÉSIMA QUINCUAGÉSIMA PRIMERA OBJECIÓN GLOBAL
(NO SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, DE LA
AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO Y DEL
SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE
ASOCIADO DE PUERTO RICO A RECLAMACIONES PARCIALMENTE
DUPLICADAS POR LITIGIOS**

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA"), la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE", y junto con el ELA y la ACT, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III de los Deudores conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican esta tricentésima quincuagésima primera objeción global (la "Tricentésima quincuagésima primera objeción global") a las evidencias de reclamaciones parcialmente duplicadas relacionadas con litigios que aparecen en el **Anexo A** del presente documento, y en apoyo de la Tricentésima quincuagésima primera objeción global manifiesta respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

**A.      Órdenes de Fecha Límite**

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó peticiones voluntarias de remedio para la ACT y el SRE conforme a la sección 304(a) de PROMESA, iniciando casos conforme al Título III de dicho cuerpo legal (respectivamente, el "Caso de Título III de la ACT" y el "Caso de Título III del SRE", y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de los Casos de Título III únicamente con fines procesales. ECF núm. 537.[3]

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255][4] (la "Moción de Fecha Límite"). Por la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de*

---

[3]   Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

[4]   Todas las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

*reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.     Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

5.     Hasta la fecha, se han radicado aproximadamente 179,420 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.59 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

6.     De las evidencias de reclamaciones radicadas, aproximadamente 116,160 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Aproximadamente 53,022 evidencias de reclamaciones han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. Más de 2,260 evidencias de reclamaciones han sido radicadas en relación con la ACT, o reclasificadas como radicadas contra la ACT. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

7.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de*

*Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "<u>Moción de Procedimientos</u>
<u>Globales</u>"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales
mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba*
*procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la*
*regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm.
4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los
"<u>Procedimientos Iniciales relativos a Objeciones Globales</u>"). El 29 de noviembre de 2018, el
Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a
las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales
relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y*
*en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la
"<u>Orden de Notificación</u>").

   8.  En aras del interés constante de resolver eficazmente cualesquiera evidencias de
reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a
procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar
objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que
pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de*
*vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a*
*Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de*
*Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado*
[ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio
de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B)*
*exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas*

*de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los
"Procedimientos Enmendados relativos a Objeciones Globales").

9.    Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los
Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la
fecha más de 14 vistas vinculadas con más de 140 objeciones globales radicadas por el ELA, la
Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la ACT, la Autoridad
de Energía Eléctrica de Puerto Rico (la "AEE") y/o el SRE. Sobre la base de las resoluciones y
órdenes del Tribunal dictadas hasta la fecha, aproximadamente 101,019 reclamaciones que
reivindicaban $43.59 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE y el
SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los
procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

10.    Esta Tricentésima quincuagésima primera objeción global se radica de
conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

11.    Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los
Deudores radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las
bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de
Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas
establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

12.    La Tricentésima quincuagésima primera objeción global pretende que se rechacen
parcialmente, de conformidad con la regla 3007(d)(1) de las Reglas Federales del Procedimiento
de Quiebra y los Procedimientos Enmendados relativos a Objeciones Globales, reclamaciones que
estén sustancialmente duplicadas, en parte, con respecto a otras evidencias de reclamaciones
radicadas en el marco de los Casos de Título III.

13.     Como se establece en el **Anexo A** del presente documento, las reclamaciones

identificadas en la columna titulada "Reclamaciones que han de ser rechazadas parcialmente"

(cada una denominada una "Reclamación que ha de ser rechazada parcialmente" y conjuntamente,

las "Reclamaciones que han de ser rechazadas parcialmente") alegan, en parte, las mismas

responsabilidades que aquellas que se alegan en: 1) las reclamaciones principales radicadas en

nombre de todos los demandantes en el litigio con epígrafe *Jeannete Abrams Diaz et al. c. el*

*Departamento de Transportación y Obras Públicas,* núm. KAC2005-5021 (las "Reclamaciones

Principales Abrams Diaz"); 2) las reclamaciones principales radicadas en nombre de todos los

demandantes en el litigio con epígrafe *Delfina López Rosario et al. c. el Departamento de Policía*

*de Puerto Rico,* núm. T-01-10-372 (las "Reclamaciones Principales López Rosario"); 3) la

reclamación principal radicada en nombre de todos los demandantes en el litigio con epígrafe

*Acevedo Arocho et al. c. el Departamento de Hacienda de Puerto Rico,* núm. KAC2005-5022 (las

"Reclamaciones Principales Acevedo Arocho"); 4) la reclamación principal radicada en nombre

de todos los demandantes en el litigio con epígrafe *Madeline Acevedo Camacho et al. c. el*

*Departamento de la Familia de Puerto Rico,* núm. 2016-05-1340 (la "Reclamación Principal

Acevedo Camacho"); 5) la reclamación principal radicada en nombre de todos los demandantes

en el litigio con epígrafe *Francisco Beltrán Cintrón et al. c. el Departamento de la Familia de*

*Puerto Rico,* núm. KAC2009-0809 (la "Reclamación Principal Beltrán Cintrón"); 6) la

reclamación principal radicada en nombre de todos los demandantes en el litigio con epígrafe

*Abraham Giménez et al. c. el Departamento de Transportación y Obras Públicas de Puerto Rico,*

núm. KAC2013-1019 (la "Reclamación Principal Abraham Giménez"); 7) la reclamación principal

radicada en nombre de todos los demandantes en el litigio con epígrafe *Juan Pérez Colón et al. c.*

*el Departamento de Transportación y Obras Públicas de Puerto Rico,* núm. KAC1990-0487 (la

"Reclamación Principal Pérez Colón"); 8) la reclamación principal radicada en nombre de todos los demandantes en el litigio con epígrafe *Frente Unido de Policías Organizados et. c. el Departamento de Policía de Puerto Rico,* núm. KAC2007-4170 (la "Reclamación Principal FUPO"); 9) la reclamación principal radicada en nombre de todos los demandantes en el litigio con epígrafe *Alfredo Maldonado Colón et al. c. el Departamento de Corrección y Rehabilitación de Puerto Rico,* núm. KAC96-1381 (la "Reclamación Principal Maldonado Colón"); o 10) la reclamación principal radicada en nombre de todos los demandantes en el litigio con epígrafe *Rosa Lydia Velez c. el Departamento de Educación de Puerto Rico*, KPE1980-1738, quienes han aceptado ser representados por José E. Torres Valentín ("Torres Valentín") de Torres Valentín Estudio Legal, LLC (la "Reclamación Principal Velez") (conjuntamente, las "Reclamaciones Principales de Litigios").

14.     La Reclamación Principal Abrams Diaz identifica al "Grupo de Demandantes Abrams Diaz" como acreedor y alega responsabilidades por un monto de más de $40 millones vinculadas con un litigio ante el tribunal del estado radicado por empleados del Departamento de Transportación y Obras Públicas (el "DTOP"). En dicha reclamación, el Grupo de Demandantes Abraham Diaz alega que el DTOP no pagó a los demandantes los salarios correspondientes como resultado de la implementación indebida del "Memorándum General núm. 5-86" de la Oficina de Personal de Servicios Públicos" (el "Memorándum"). Según los demandantes, dicho Memorándum estipuló un método para ajustar salarios y beneficios que estaba en violación del principio de misma paga por igual trabajo. El abogado que representa a cada uno de los demandantes del Grupo de Demandantes Abrams Diaz radicó la Reclamación Principal Abrams Diaz en nombre de todos los miembros de ese grupo. El abogado también presentó una *Declaración verificada conforme a las RFPQ de 2019 del Grupo de Demandantes Abrams Diaz* [ECF núm. 3505] en la que

proporcionó el nombre, la dirección y el monto del interés económico divulgable de cada miembro del grupo de demandantes.

15.     La Reclamación Principal López Rosario identifica como acreedor al "Grupo de Demandantes López Rosario" y alega responsabilidades por un monto de más de $20 millones que surgen de una demanda radicada por empleados del Departamento de Policía de Puerto Rico radicada ante la Comisión Apelativa del Servicio Público (la "CASP"). En la demanda, los demandantes alegan que tenían derecho a recibir pagos de salarios atrasados retenidos ilegalmente por el Departamento de Policía de Puerto Rico conforme al Memorándum que, según afirman los demandantes, fue implementado indebidamente. La Reclamación Principal López Rosario adjunta como documentación justificativa, entre otras cosas, un cuadro que identifica a cada demandante del Grupo de Demandantes López Rosario. El abogado que representa a cada uno de los demandantes del Grupo de Demandantes López Rosario radicó la Reclamación Principal López Rosario en nombre de todos los miembros de ese grupo. El abogado también presentó una *Declaración verificada conforme a las RFPQ de 2019 del Grupo de Demandantes López Rosario* [ECF núm. 3404] en la que proporcionó el nombre, la dirección y el monto del interés económico divulgable de cada miembro del grupo de demandantes.

16.     Las Reclamaciones Principales Acevedo Arocho alegan responsabilidades asociadas con una demanda ante un tribunal del estado radicada por empleados del Departamento de Hacienda ("Hacienda"), donde se alega que Hacienda no pagó a los demandantes los salarios adecuados como consecuencia del Memorándum. Las Reclamaciones Principales Acevedo Arocho alegan responsabilidades por un monto de más de $20 millones vinculadas con el pago de supuestos salarios atrasados y aportaciones a pensiones supuestamente impagadas, nombran como acreedor al "Grupo de Demandantes Acevedo Arocho", y fueron radicadas por el abogado que

representa a todos los demandantes del Grupo de Demandantes Acevedo Arocho. La demanda ante el tribunal del estado y un cuadro que identifica a cada demandante del Grupo de Demandantes Acevedo Arocho se incluyen como documentación justificativa en las Reclamaciones Principales Acevedo Arocho. Además, el abogado que representa a todos los demandantes presentó una *Declaración verificada conforme a las RFPQ de 2019 del Grupo de Demandantes Acevedo Arocho* [ECF núm. 3402] en la que proporcionó el nombre, la dirección y el monto del interés económico divulgable de cada miembro del grupo de demandantes.

17.     Las Reclamaciones Principales Acevedo Camacho alegan responsabilidades asociadas con una demanda radicada ante el Tribunal de Primera Instancia de Puerto Rico por los empleados del Departamento de la Familia de Puerto Rico (el "DF"), en la que se alega que los empleados tenían derecho a un pago de salarios atrasados debido a la implementación ilegal por parte del Departamento de la Familia del "Memorándum General núm. 5-86" de la Oficina de Personal de Servicios Públicos. Las Reclamaciones Principales Acevedo Camacho se radicaron en nombre del "Grupo de Demandantes Acevedo Camacho" y alegan aproximadamente $50 millones en concepto de responsabilidades asociadas con los supuestos salarios atrasados y aportaciones a pensiones supuestamente no pagadas. El abogado que representa a todos los demandantes en el litigio radicó las Reclamaciones Principales Acevedo Camacho. Las Reclamaciones Principales Acevedo Camacho incluyen, entre otras cosas, un cuadro que identifica a cada demandante del Grupo de Demandantes Acevedo Camacho. El abogado que representa al Grupo de Demandantes Acevedo Camacho también presentó una *Declaración verificada conforme a las RFPQ de 2019 del Grupo de Demandantes Acevedo Camacho* [ECF núm. 3406] en la que proporcionó el nombre, la dirección y el monto del interés económico divulgable de cada miembro del grupo de demandantes.

18.     Las Reclamaciones Principales Beltrán Cintrón alegan responsabilidades asociadas con una demanda radicada ante el Tribunal de Primera Instancia de Puerto Rico por los empleados del Departamento de la Familia de Puerto Rico (el "DF"), donde se alega que el DF no pagó a los demandantes los salarios adecuados como consecuencia de la implementación indebida del Memorándum. Las Reclamaciones Principales Beltrán Cintrón alegan responsabilidades por un monto aproximado de $105 millones vinculadas con el supuesto pago de salarios atrasados y aportaciones a pensiones supuestamente impagadas, nombran como acreedor al "Grupo de Demandantes Beltrán Cintrón", y fueron radicadas por el abogado que representa a todos los demandantes en el litigio. Las Reclamaciones Principales Beltrán Cintrón adjuntan como documentación justificativa un cuadro que identifica a cada demandante del Grupo de Demandantes Beltrán Cintrón. Además, el abogado que representa a todos los demandantes presentó una *Declaración verificada conforme a las RFPQ de 2019 del Grupo de Demandantes Beltrán Cintrón* [ECF núm. 3403] en la que proporcionó el nombre, la dirección y el monto del interés económico divulgable de cada miembro del grupo de demandantes.

19.     Las Reclamaciones Principales Abraham Giménez alegan responsabilidades asociadas con una demanda radicada ante el Tribunal de Primera Instancia de Puerto Rico por los empleados del DTOP, donde se alega que el DTOP no pagó los salarios adecuados conforme al Memorándum. Las Reclamaciones Principales Abraham Giménez identifican como acreedor al "Grupo de Demandantes Abraham Giménez" y alegan responsabilidades por un monto aproximado de $35 millones asociadas con el pago de supuestos salarios atrasados y aportaciones a pensiones supuestamente impagadas. El abogado que representa a todos los demandantes en el litigio radicó las Reclamaciones Principales Abraham Giménez en nombre de todos los miembros del Grupo de Demandantes Abraham Giménez. El abogado también presentó una *Declaración*

*verificada conforme a las RFPQ de 2019 del Grupo de Demandantes Abraham Giménez* [ECF núm. 3401] en la que proporcionó el nombre, la dirección y el monto del interés económico divulgable de cada miembro del grupo de demandantes.

20.     La Reclamación Principal Pérez Colón alega responsabilidades asociadas con una demanda radicada ante el Tribunal de Primera Instancia de Puerto Rico por los empleados del DTOP, donde se alega que el DTOP no pagó los salarios adecuados conforme al Memorándum. La Reclamación Principal Pérez Colón identifica como acreedor al "Grupo de Demandantes Pérez Colón" y alega responsabilidades por un monto aproximado de $3 millones asociadas con el pago de supuestos salarios atrasados. El abogado que representa a todos los demandantes en el litigio radicó las Reclamaciones Principales Pérez Colón en nombre de todos los miembros del Grupo de Demandantes Pérez Colón. El abogado también presentó una *Declaración verificada conforme a las RFPQ de 2019 del Grupo de Demandantes Pérez Colón* [ECF núm. 3506] en la que proporcionó el nombre, la dirección y el monto del interés económico divulgable de cada miembro del grupo de demandantes.

21.     La Reclamación Principal FUPO alega responsabilidades vinculadas con una demanda radicada ante el Tribunal de Primera Instancia de Puerto Rico por miembros de FUPO y el Concilio Nacional de Policías ("CONAPOL"), y alegó que el Superintendente del Departamento de Policía de Puerto Rico no implementó la Ley núm. 227 de 2004, que establece aumentos de salario para los empleados del Departamento de Policía. La Reclamación Principal FUPO, que fue radicada por el Concilio Nacional de Policías, Inc. en nombre de todos los demandantes en el litigio, alega responsabilidades por un monto de $280 millones asociadas con aumentos salariales no pagados y adjunta un cuadro donde se identifica a cada demandante del litigio.

22.     La Reclamación Principal Maldonado Colón alega responsabilidades asociadas con una demanda radicada ante el Tribunal de Primera Instancia de Puerto Rico por empleados del Departamento de Corrección y Rehabilitación (el "DCR") de Puerto Rico. En ella, los demandantes sostienen que se les adeudan aumentos salariales no pagados estipulados en, entre otros, varias órdenes administrativas del DCR. El 28 de septiembre de 2002, se dictó sentencia a favor de los demandantes. La Reclamación Principal Maldonado Colón, que alega responsabilidades por un monto aproximado de $18 millones asociadas con pagos pendientes adeudados conforme a la sentencia del tribunal, fue radicada en nombre de todos los demandantes en el litigio y adjunta un cuadro donde se identifica a cada uno de los demandantes en el litigio.

23.     La Reclamación Principal Velez alega responsabilidades que surgen de una demanda radicada contra el DE por los padres de los menores que participaron en el Programa de Educación Especial del DE. En la reclamación, los demandantes buscan que el DE cumpla con determinadas obligaciones federales y estatales relacionadas con programas de educación especial, y reclaman unos daños y perjuicios vinculados con dichos programas. La Reclamación Principal Velez fue radicada por el Sr. Torres Valentín en nombre de todos los demandantes representados por el Sr. Torres Valentín, y alega responsabilidades por un monto de $150,000 por cada demandante.

24.     Cada una de las Reclamaciones que han de ser rechazadas parcialmente fue radicada por uno de los demandantes individuales en los litigios planteados por las Reclamaciones Principales de Litigios, según se identifica en la documentación justificativa proporcionada con las Reclamaciones Principales de Litigios o en la declaración verificada radicada por el abogado que representa a todos los demandantes en el litigio. Cada una de las Reclamaciones que han de ser rechazadas parcialmente también pretende alegar responsabilidades adicionales no asociadas

con las Reclamaciones Principales de Litigios, tales como bases adicionales para pagos de salarios atrasados que no están incluidas en las Reclamaciones Principales de Litigios.

25.    En consecuencia, las Reclamaciones que han de ser rechazadas parcialmente constituyen un duplicado parcial con respecto a las Reclamaciones Principales de Litigios. Si las Reclamaciones que han de ser rechazadas parcialmente no son rechazadas parcialmente, ello resultaría en que los correspondientes reclamantes obtuvieran potencialmente una recuperación duplicada no justificada en detrimento de otras partes interesadas en dichos Casos de Título III. Los titulares de las Reclamaciones que han de ser rechazadas parcialmente no se verán perjudicados por el hecho de que se rechacen parcialmente sus reclamaciones, puesto que las responsabilidades vinculadas con cada una de las Reclamaciones que han de ser rechazadas parcialmente se incluyen en las responsabilidades alegadas en la(s) Reclamación(es) Principal(es) de Litigios pertinente(s), según se establece en el **Anexo A** del presente documento. Además, los titulares de las Reclamaciones que han de ser rechazadas parcialmente tampoco se verán perjudicados en cuanto a los montos restantes supuestamente adeudados que no sean objeto de la presente objeción, ya que conservarán una Reclamación Restante contra los Deudores en relación con tales montos. Puesto que esta Tricentésima quincuagésima primera objeción global a las Reclamaciones que han de ser rechazadas parcialmente no constituye una objeción a las Reclamaciones Principales de Litigios, los Deudores se reservan el derecho a oponerse a las Reclamaciones Principales de Litigios sobre la base de cualesquiera otros motivos que fuere.

26.    En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Tricentésima quincuagésima primera objeción global (no sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones Parcialmente Duplicadas por Litigios*, de fecha 18 de junio de 2021, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

27.     De conformidad con los Procedimientos relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores han notificado la presente Tricentésima quincuagésima primera objeción global a) a los acreedores individuales objeto de esta Tricentésima quincuagésima primera objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 14* [ECF núm. 15894-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. Una copia de la notificación relativa a esta Tricentésima quincuagésima primera objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Tricentésima quincuagésima primera objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con esta objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## AUSENCIA DE SOLICITUDES PREVIAS

28.     No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima quincuagésima primera objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente.*]

15

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la Orden Propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

Fecha: 18 de junio de 2021
      San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

[*Firma en la versión en inglés*]
Martín J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, de la Autoridad de Carreteras y Transportación de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico.*