UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------- x
: 
In re: :
 :
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
 :
    as representative of : Case No. 17-BK-3283 (LTS)
 :
THE COMMONWEALTH OF PUERTO RICO, *et al.*, : (Jointly Administered)
 :
    Debtors.[1] :
------------------------------------------------------------------------- x

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN CONNECTION WITH (I) AMBAC ASSURANCE CORPORATION'S URGENT MOTION FOR BRIEFING SCHEDULE WITH RESPECT TO OBJECTION OF AMBAC ASSURANCE CORPORATION, PURSUANT TO BANKRUPTCY CODE SECTION 502 AND BANKRUPTCY RULE 3007, TO CLAIM ASSERTED BY OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF COMMONWEALTH OF PUERTO RICO APPOINTED IN COMMONWEALTH'S TITLE III CASE AND (II) OBJECTIONS THERETO**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Document Page 2 of 7

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee"),[2] respectfully files this statement (the "Statement") in connection with *Ambac Assurance Corporation's Urgent Motion for Briefing Schedule With Respect To The Objection Of Ambac Assurance Corporation, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claim Asserted By the Official Committee of Retired Employees of the Commonwealth of Puerto Rico Appointed in the Commonwealth's Title III Case* [Docket No. 16963] (the "Scheduling Motion") and (ii) the objections to the Scheduling Motion filed by the Oversight Board (the "Oversight Board Objection")[3] and the Official Committee of Retired Employees[4] (the "Retiree Committee" and the "Retiree Committee Objection") (the Oversight Board Objection and the Retiree Committee Objection, together, the "Scheduling Objections"). In support of its Statement, the Committee respectfully states as follows:

## STATEMENT

1. As the Court is aware, the Committee did not file an objection to the Scheduling Motion because it did not object to the relief requested therein. However, the Committee has reviewed the Scheduling Objections and is concerned that the Scheduling Objections raise important case issues that need to be addressed regardless of whether Ambac's objection [Docket No. 16884] (the "Ambac Objection") to the Retiree Committee's proof of claim [Proof of Claim No. 21533] (the "Retiree Proof of Claim") is determined by the Court to be the proper and/or most efficient procedural vehicle for determining the aggregate amount of the Commonwealth's

---

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3] *See* Docket No. 17069.

[4] *See* Docket No. 17071.

2

retiree benefit obligations. The Committee is mindful of the Court's recent admonition at the June 16, 2021 omnibus hearing that all parties work diligently and in good faith towards a consensual resolution of these Title III cases, and the Committee will continue to do so. However, a contested confirmation hearing remains a possibility for which all parties must prepare.[5] Accordingly, the Committee files this brief statement to highlight certain concerns brought to the forefront by the Scheduling Objections, with the goal of ensuring that the issues raised by the Ambac Objection are resolved in the most efficient and timely manner possible.

2. The Oversight Board Objection previews the Oversight Board's argument that there is no need to address the Ambac Objection because the Oversight Board's currently proposed plan of adjustment[6] (the "Proposed Plan") establishes the treatment of retiree benefit claims separate and apart from the Retiree Proof of Claim. In connection with this argument, the Oversight Board states that it will argue that the Ambac Objection should either be terminated or stayed, which approach, if successful, would *de facto* mean the issues raised by the Ambac Objection will never be resolved, or certainly not prior to the confirmation hearing the Oversight Board has requested to commence in November.[7]

3. The Retiree Objection similarly argues, at length, that the Ambac Objection is really a disguised confirmation issue that "should be heard in conjunction with the confirmation hearing and the Ambac Objection should be treated as a premature objection to the [Proposed] Plan."[8] The Retiree Committee separately observes (correctly) that the Ambac Objection raises complicated issues that cannot be resolved without extensive factual development and expert

---

[5] As the Court is aware, under the Oversight Board's current plan of adjustment, holders of general unsecured claims in Class 55 have been offered less than a 5% recovery on their claims.

[6] *See* Docket No. 16740.

[7] *See* Oversight Board Obj. ¶ 3.

[8] Retiree Obj. ¶ 3.

3

testimony, along with the attendant motion practice, discovery, expert reports and depositions, and the like.[9]

4. The Committee is agnostic about whether the Ambac Objection is properly viewed as a "confirmation objection" or what precise procedural vehicle the Court selects to resolve the underlying issues raised by the Ambac Objection. The Committee, however, agrees with the Retiree Committee that the Ambac Objection implicates complicated, and important, issues that must be resolved before the Proposed Plan (or any plan of adjustment) can be confirmed. For these reasons, the Committee believes that (i) it is critical to determine the total size of the Proposed Plan's allowed retiree benefit claims and (ii) because of the complexity of these issues, there should be a Court-supervised process to resolve these questions, which process cannot first begin in November.

5. One option for such a procedure is estimation under section 502(c) of the Bankruptcy Code, which can be ordered by the Court *sua sponte*[10] and which allows the Court to estimate claims (or classes of claims) the extent of which are unknown and the final and determinative fixing of which claims would "unduly delay administration of the case." 11 U.S.C. § 502(c). Indeed, courts have frequently utilized section 502(c) as a flexible tool for estimating claims for various purposes, including for plan confirmation purposes. For example, in *In re Armstrong World Industries*, the court explained that confirmation of the plan hinged on the outcome of the court's estimation of certain asbestos claims because if the court were to find that the amount proposed by certain parties was "not a reasonable approximation," this could

---

[9] *See* Retiree Obj. ¶¶ 4, 16-18.

[10] *In re A & B Assocs., L.P.*, No. 17-40185-EJC, 2019 WL 1470892, at *35 (Bankr. S.D. Ga. Mar. 29, 2019) (raising the issue of section 502(c) claim estimation *sua sponte* and collecting cases holding that section 502(c) imposes affirmative duty on bankruptcy court).

4

force "the parties [to] head back to the drawing board." *In re Armstrong World Indus., Inc.*, 348 B.R. 111, 124 (D. Del. 2006); *see also In re Cont'l Airlines, Inc.*, 57 B.R. 842 (Bankr. S.D. Tex. 1985) (section 502(c) estimation process for labor claims filed by over 13,000 employees was "the most appropriate, efficient and equitable method" of advancing case to plan confirmation and "most effective method to accomplish statutory purpose in bankruptcy of advancing a ratable distribution"). Courts have also explained that this flexibility allows estimation for purposes of confirmation to be separated from ultimate allowance of the estimated claim. *See In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 423 (Bankr. S.D.N.Y. 2003) (estimating administrative expense claims under section 502(c) for purposes of determining feasibility but not for purposes of final allowance of claims).

6. Again, the Committee is agnostic as to the procedures selected by the Court to determine these issues, but strongly believes that this cannot await the beginning of the confirmation hearing in November 2021, as this would leave the Court, at that time, with the Hobbesian choice of (i) adjourning the confirmation hearing to allow this process to play out or (ii) simply accept the Oversight Board's *ipse dixit* determination of the allowed amount of retiree benefit claims, regardless of contrary evidence (if any) advanced by parties in interest.

## **CONCLUSION**

7. As noted above, the Committee (and, hopefully, all other parties in interest) will continue to work diligently with the Oversight Board and under the auspices of the mediation team to reach a consensual plan of adjustment. However, unless a global deal is reached between now and the confirmation hearing (or perhaps earlier), the Proposed Plan cannot be confirmed without first addressing the questions raised by the Ambac Objection.

8.In light of the Oversight Board's request for a confirmation hearing in November 2021, that process should begin sooner rather than later, as it will take time to properly address the underlying complex issues. Indefinitely delaying answering the question of the aggregate size of retiree benefit claims (as the Scheduling Objections propose) has the potential to undermine all of the hard work being done by the Court and numerous parties in interest as they move towards a (hopefully consensual) plan of adjustment and could, at a late stage, force all parties back to the drawing board, including formulation and solicitation of a new plan and new disclosure statement. This is an outcome that benefits no one, and should be avoided.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests that the Court establish procedures to determine the total size of the Proposed Plan's various classes of allowed retiree benefit claims.

Dated: June 21, 2021

By: /s/ Luc A. Despins

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: /s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
crernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*