**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**REPLY IN SUPPORT OF AMBAC ASSURANCE CORPORATION'S URGENT MOTION FOR BRIEFING SCHEDULE WITH RESPECT TO THE OBJECTION OF AMBAC ASSURANCE CORPORATION, PURSUANT TO BANKRUPTCY CODE SECTION 502 AND BANKRUPTCY RULE 3007, TO CLAIM ASSERTED BY THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE COMMONWEALTH OF PUERTO RICO APPOINTED IN THE COMMONWEALTH'S TITLE III CASE**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    I. IT IS ESSENTIAL FOR THE COURT TO DETERMINE THE OVERALL PENSION LIABILITY, AND A CLAIM OBJECTION IS AN APPROPRIATE PROCEDURE. ..................................................................................................................... 3

    II. ESTIMATION OF CLAIMS IS ROUTINE, AND THE COURT CAN CONVERT THE CLAIM OBJECTION TO A MOTION FOR ESTIMATION. .................................... 5

    III. AS A HOLDER AND INSURER OF HUNDREDS OF MILLIONS OF DOLLARS IN CLAIMS BEING ADDRESSED BY THE COMMONWEALTH PLAN, AMBAC HAS STANDING TO CHALLENGE THE RETIREE COMMITTEE PROOF OF CLAIM. ................................................................................... 7

    IV. WHILE THE RETIREE COMMITTEE'S OBJECTION PROPERLY RECOGNIZES THAT DETERMINATION OF THE PENSION CLAIM AMOUNT WILL BE A SIGNIFICANT UNDERTAKING, ITS PROPOSED SCHEDULE ALSO CREATES UNNECESSARY PROCEDURAL HURDLES. ............................................... 8

    V. CONSIDERATION OF THE PENSION CLAIM OBJECTION SHOULD NOT BE DELAYED UNTIL CONFIRMATION................................................................................. 8

    VI. THE COURT SHOULD ADOPT A SCHEDULE THAT ALLOWS FOR THE PROMPT DETERMINATION OF THE PENSION LIABILITY AMOUNT, WHICH IS CRITICAL TO THE RESOLUTION OF THESE TITLE III PROCEEDINGS. ............ 10

CONCLUSION ......................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.H. Robins Co. v. Piccinin*,
   788 F.2d 994 (4th Cir. 1986) ...................................................................................................6

*In re C.P. Hall Co.*,
   513 B.R. 540 (Bankr. N.D. Ill. 2014) .......................................................................................7

*In re Curtis*,
   40 B.R. 795 (Bankr. D. Utah 1984) .........................................................................................5

*In re Pac. Gas & Elec. Co.*,
   295 B.R. 635 (Bankr. N.D. Cal. 2003) ....................................................................................5

*In re Towner Petroleum Co.*,
   48 B.R. 182 (Bankr. W.D. Okla. 1985) ...................................................................................5

*In re Verity Health System of California, Inc.*,
   18-bk-20151 (C.D. Cal. Aug. 12, 2020) ..................................................................................6

*In re Weinstein Co. Holdings, LLC*,
   595 B.R. 455 (Bankr. D. Del. 2018) ........................................................................................7

**Statutes and Other Authorities**

11 U.S.C. § 502(a) ........................................................................................................................4

11 U.S.C. § 502(c) ........................................................................................................................5

H. Rep. No. 595, 95th Cong., 1st Sess. 354 (1977) ......................................................................5

S. Rep. No. 989, 95th Cong., 2d Sess. 65 (1978) .........................................................................5

To the Honorable United States District Judge Laura Taylor Swain:

Ambac[2] submits this reply in further support of *Ambac Assurance Corporation's Urgent Motion for Briefing Schedule With Respect to the Objection of Ambac Assurance Corporation, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claim Asserted by the Official Committee of Retired Employees of the Commonwealth of Puerto Rico Appointed in the Commonwealth's Title III Case* (ECF No. 16963)[3] (the "Scheduling Motion") and in reply to the *Response of Financial Oversight and Management Board for Puerto Rico to Ambac Assurance Corporation's Urgent Motion for Briefing Schedule With Respect to the Objection of Ambac Assurance Corporation, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claim Asserted by the Official Committee of Retired Employees of the Commonwealth of Puerto Rico Appointed in the Commonwealth's Title III Case* (ECF No. 17069) (the "Board's Objection") and the *Objection of the Official Committee of Retired Employees to Ambac Assurance Corporation's Urgent Motion for Briefing Schedule With Respect to the Objection of Ambac Assurance Corporation, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claim Asserted by the Official Committee of Retired Employees of the Commonwealth of Puerto Rico Appointed in the Commonwealth's Title III Case* (ECF No. 17071) (the "Retiree Committee's Objection"). Ambac respectfully states as follows:

## PRELIMINARY STATEMENT

1. It is a self-evident truth that, absent a consensual plan, the Court will have to determine what the outstanding pension liability is and how much it will cost the Commonwealth to meet its

---

[2] Capitalized terms not defined herein have the meanings ascribed to them in the Pension Claim Objection (ECF No. 16884).

[3] "ECF No." refers to documents filed in Case No. 17-BK-3283-LTS, unless otherwise noted.

- 1 -

pension-related obligations. Given the enormity of the overall liability, even a small error percentage-wise can result in significant overfunding or underfunding in any given fiscal year. It is incumbent on the Court to ensure that both pension obligations and settlements incorporated in the plan can be satisfied, and that funds are not unnecessarily or erroneously being earmarked for pensions when they could be available to satisfy other obligations. This analysis cannot happen unless the aggregate pension claim amounts are determined first. Neither the Oversight Board nor the Retiree Committee contends otherwise.

2. The Board and the Retiree Committee instead raise purported "gating" arguments, seeking to delay (or avoid entirely) this Court's consideration of the merits of the Commonwealth's calculation of its overall pension liability. This is not surprising given the Board's continued failure to independently audit, verify, or quantify that liability. But the Court cannot discharge its obligation to determine whether the POA satisfies PROMESA's confirmation requirements, including (without limitation) the feasibility and best interest of creditors tests, without undertaking this judicial inquiry. It certainly cannot do so on the record before it. With the Board racing toward confirmation, there is no time to wait. The Court should therefore either order that the merits and procedural arguments proceed concurrently, or convert Ambac's objection challenging the Retiree Committee Proof of Claim (the "Pension Claim Objection") to a motion to estimate under Section 502(c) of the Bankruptcy Code, incorporated by Section 301 of PROMESA.

**ARGUMENT**

I.  **IT IS ESSENTIAL FOR THE COURT TO DETERMINE THE OVERALL PENSION LIABILITY, AND A CLAIM OBJECTION IS AN APPROPRIATE PROCEDURE.**

3. Under the Court's claims procedure order, individual retirees were not required to file individual proofs of claim. (ECF No. 2521.) Nevertheless, the Retiree Committee filed a proof of claim in the Commonwealth Title III proceeding, asserting a claim equal to the Commonwealth's total pension liability, as calculated by Milliman, the Commonwealth's actuarial consultant. (ECF No. 16884-1.) Milliman's pension liability calculation is also reflected in the Disclosure Statement. (*See* ECF No. 16741 at 3, 152.) Ambac reviewed and analyzed Milliman's analysis and determined that the amount of the Commonwealth's total pension liability was overstated by at least $9 billion. Accordingly, Ambac filed an objection challenging the amount asserted in the Retiree Committee Proof of Claim.

4. The Board's argument that the Retiree Committee Proof of Claim is somehow irrelevant because treatment of pension claims under the proposed POA is not based on the Retiree Committee Proof of Claim has left Ambac scratching its head. The fact remains that the Disclosure Statement currently presented to the Court for approval clearly references and relies upon something very close to the $58.5 billion figure advanced by the Retiree Committee—a figure which ultimately derives from Milliman's analysis.[4] Specifically, the Disclosure Statement references "estimated pension liabilities of approximately $55.6 billion" and expressly incorporates the Commonwealth's Fiscal Plan, which relies on the same figure. (*See id.*) And while the Board states that its contemplated treatment of pension claims already "takes into

---

[4] The slight difference between the pension liability amount cited in the Board's disclosures and the Retiree Committee Proof of Claim is a result of the Retiree Committee's use of an updated discount rate. (*See* Pension Claim Objection at 18.)

- 3 -

account" the $8.2 billion reduction in claims reflected in the 2017 Milliman Reports as compared to the 2016 Milliman Reports, that updated amount is nowhere to be found in the proposed POA or Disclosure Statement.[5] There is thus no basis to believe that the proposed POA is based on anything other than the pension liability amount asserted in the Retiree Committee Claim.

5. To the extent the Board's argument is based on the proposed allowance in the plan of individual retiree claims, rather than the Retiree Committee Proof of Claim, this is not a basis to terminate the Pension Claim Objection. Under the Bankruptcy Code, claims are considered allowed unless a party in interest objects and the claim is disallowed. 11 U.S.C.A. § 502(a). The Retiree Committee Claim has not been withdrawn or expressly disallowed, and the POA does not propose to disallow the Retiree Committee Claim. It thus remains an allowed claim in these proceedings. Regardless of whether the Retiree Committee Claim is ultimately disallowed, it is also clear, based on the negotiated Retiree Committee PSA and the disclosures in the Disclosure Statement, that the estimated claim amount set forth in the Retiree Committee Proof of Claim is being used by the Board as the assumed pension liability.

6. To the extent the Board believes it has a meritorious challenge to the procedural propriety of the Pension Claim Objection, it should not be foreclosed from so arguing in response to the objection. But it should not be able to use a procedural challenge as quixotic as this to forestall consideration of the merits of the pension liability.

---

[5] Ambac intends to file a motion requesting leave to file a supplemental objection to the Disclosure Statement regarding the Board's unexplained assertion concerning its contemplated treatment of pension claims.

**II. ESTIMATION OF CLAIMS IS ROUTINE, AND THE COURT CAN CONVERT THE CLAIM OBJECTION TO A MOTION FOR ESTIMATION.**

7. Though Ambac maintains that a claim objection is both necessary to address the Retiree Committee Proof of Claim, and a proper procedural mechanism in these circumstances to determine the aggregate pension claim amount, Ambac also recognizes the unique procedural posture of the case. Given the Court's claims procedure order, which did not require individual pensioners to file proofs of claim, it is difficult to determine what the overall pension liability will be. If the Court agrees with the Board that the Retiree Committee Proof of Claim is irrelevant to the plan, then the Court should impose a procedure for estimating the aggregate pension liability pursuant to Section 502(c) of the Bankruptcy Code.

8. Section 502(c) mandates that the Court shall estimate for the purpose of allowance "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c). Thus, if fixing or liquidating any claim would "unduly" delay the administration of a case, estimation of that claim is mandatory, not permissive, and the Court has an affirmative duty to estimate it. *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)*; see also In re Towner Petroleum Co.*, 48 B.R. 182 (Bankr. W.D. Okla. 1985) (bankruptcy court has an affirmative duty, under certain circumstances, to estimate an unliquidated claim); H. Rep. No. 595, 95th Cong., 1st Sess. 354 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 65 (1978) ("This subsection requires that all claims against the debtor be converted into dollar amounts.").

9. Estimation is often a critical component in the determination of the feasibility of a proposed plan of adjustment. *See, e.g., In re Pac. Gas & Elec. Co.*, 295 B.R. 635, 642 (Bankr. N.D. Cal. 2003) (citing cases). The process is commonly employed in cases where there are a large number of claims that must be estimated in order to ascertain whether a fair reorganization

- 5 -

of the debtor can be achieved. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1012-13 (4th Cir. 1986). In cases with large contingent or unliquidated claims, courts often exercise their discretion to order *sua sponte* that an estimation process occur in order to determine whether there are sufficient funds to satisfy the claims. *See, e.g.,* Transcript of Hearing re [4993] Second Amended Joint Chapter 11 Plan of Liquidation (dated July 2, 2020) Of The Debtors, The Prepetition Secured Creditors, And the Committee at 41-42, *In re Verity Health System of California, Inc.*, 18-bk-20151 (C.D. Cal. Aug. 12, 2020) (ordering an estimation process to occur even though no party requested it).

10. Estimation is appropriate here based on the sheer number of unquantified pension claims and the purported size of the total pension liability, which remains unaudited, untested, and unverified. The Retiree Committee Proof of Claim, which purports to be filed on behalf of Puerto Rico's 167,000 retirees and beneficiaries, remains the largest outstanding claim in these Title III proceedings. Awaiting the fixing of the pension claims will thus unduly delay the administration of the case. Without an estimation of the aggregate pension claim amount, it will be impossible for the Court to determine whether the plan is feasible, what Commonwealth assets are available to pay creditors, or whether the proposed treatment set forth in the POA is in the best interests of creditors.

11. Contemporaneous with the Board's Objection, the Board is pressing the Court to adopt a schedule that would rush the parties and the Court to plan confirmation proceedings in just over four months. There is no time to delay the estimation process. Rather than waste time and resources briefing assorted procedural issues, the Court and the parties should focus on establishing a schedule and procedure for resolving the ultimate issue: a determination of the amount of the Commonwealth's pension liability.

**III. AS A HOLDER AND INSURER OF HUNDREDS OF MILLIONS OF DOLLARS IN CLAIMS BEING ADDRESSED BY THE COMMONWEALTH PLAN, AMBAC HAS STANDING TO CHALLENGE THE RETIREE COMMITTEE PROOF OF CLAIM.**

12. The Board has failed to take any steps to audit or verify the amount of the Commonwealth's pension liability—the single largest liability in these Title III cases. In its Objection, the Board now essentially urges the Court to forego judicial inquiry into the pension claim amount altogether, alluding to purported standing-based arguments that, if credited, would preclude any party-in-interest from challenging the aggregate pension liability numbers reflected not only in the Retiree Committee Proof of Claim, but also in the current proposed POA and the Milliman analyses. Whether through a challenge to Ambac's standing or other purported "gating" legal issues—the Board's long-preferred euphemism for urging the Court to avoid the merits—the Board plainly wishes that questions concerning the amount of the Commonwealth's pension liability be ignored.

13. The notion that consideration of the accuracy of the claimed pension liability should be delayed in service of a standing inquiry is, respectfully, absurd. As a holder and insurer of GO bonds as well as bonds issued by numerous other Commonwealth instrumentalities (which themselves give rise to claims against the Commonwealth), Ambac plainly is a party-in-interest capable of challenging the claims of other creditors, especially the mammoth ***$58.5 billion*** claim advanced by the Retiree Committee on behalf of the Commonwealth's pensioners. *See In re C.P. Hall Co.*, 513 B.R. 540, 543-44 (Bankr. N.D. Ill. 2014) ("The right to object to claims that Section 502(a) grants creditors . . . is unqualified."); *In re Weinstein Co. Holdings, LLC*, 595 B.R. 455, 463 (Bankr. D. Del. 2018) (Section (a) permits one creditor to object to claim of another creditor).

14. Of course, if the Board has a yet-to-be articulated theory of standing that it wishes to advance in opposition to the Pension Claim Objection, it should be free to do so, but not as a means

- 7 -

of avoiding (or even delaying) a merits analysis—which the Retiree Committee rightly recognizes to be highly complex in nature. (*See* Retiree Committee's Objection at 9.)

IV. **WHILE THE RETIREE COMMITTEE'S OBJECTION PROPERLY RECOGNIZES THAT DETERMINATION OF THE PENSION CLAIM AMOUNT WILL BE A SIGNIFICANT UNDERTAKING, ITS PROPOSED SCHEDULE ALSO CREATES UNNECESSARY PROCEDURAL HURDLES.**

15. None of the arguments raised by the Retiree Committee warrant a delay in the briefing schedule or the imposition of additional briefing on supposed threshold issues. To the contrary, the Retiree Committee's Objection only underscores the importance and complexity of determining the pension claim amount, and the need to begin the process immediately.

16. The Retiree Committee first argues that the Pension Claim Objection should be stayed because it relates to claims that are the subject of the Retiree Committee PSA. (*See* Retiree Committee's Objection at 1-2.) Not so. As explained in the Pension Claim Objection, Ambac does not challenge the proposed payments to pensioners or their treatment under the proposed POA (though it reserves the right to do so at confirmation). (*See* Pension Claim Objection at 21.) Rather, Ambac is questioning the total pension liability amount, as asserted in the Retiree Committee Proof of Claim. In other words, Ambac is not now challenging any individual pensioner's right to receive the negotiated settlement amount or even whether the negotiated amount is reasonable or legal; it is seeking to have this Court determine the total amount of claims subject to the settlement, and the amount of money the Commonwealth will need to satisfy the terms of the Retiree Committee PSA, as incorporated in the POA.

V. **CONSIDERATION OF THE PENSION CLAIM OBJECTION SHOULD NOT BE DELAYED UNTIL CONFIRMATION.**

17. The Retiree Committee's argument that the Pension Claim Objection is really an objection to confirmation of the proposed POA, and thus should be set on the same schedule as

the confirmation hearing, is also wrong. Ambac is seeking to determine the amount of the Retiree Committee's claim, which it contends is the Commonwealth's total pension liability. If this amount is overstated, as Ambac maintains it is, there will be additional money available for other creditors. That fact, however, does not somehow convert the Pension Claim Objection into a plan objection. Indeed, determination of the overall pension liability will inform the proper objections to confirmation of the POA.

18. Moreover, the factual circumstances establish that it is necessary for the Commonwealth's pension liability to be ascertained prior to confirmation. The Retiree Committee Proof of Claim is by far the largest remaining of any creditor group in these Title III proceedings, and if sufficient agreement is not reached to render the POA a consensual one, the POA cannot be confirmed where the largest recovery to a single group of creditors has not been verified. The Commonwealth's pension liability is a core issue that must be resolved prior to confirmation. Overallocation of funds to satisfy pension claims artificially reduces the resources available to other creditors.

19. The Retiree Committee itself acknowledges that determining the pension liability amount is a significant undertaking. The calculation of the Commonwealth's pension liability is a complex process, which will require the Court to consider expert testimony from actuaries and auditors. Any proposed schedule should ensure that the Court has sufficient time to consider and evaluate the complex expert analysis and arguments presented to it. But although Ambac agrees that some additional time may be appropriate to allow the parties to prepare and evaluate expert witnesses, Ambac disagrees that there is any need for purely legal motion practice. All parties would benefit from prompt resolution of the substantive issues raised in the Pension Claim Objection, and the proposed confirmation schedule does not include the luxury of staged

proceedings. At the very least, all of the issues should be submitted concurrently.

**VI.    THE COURT SHOULD ADOPT A SCHEDULE THAT ALLOWS FOR THE PROMPT DETERMINATION OF THE PENSION LIABILITY AMOUNT, WHICH IS CRITICAL TO THE RESOLUTION OF THESE TITLE III PROCEEDINGS.**

20. Ambac maintains that a proof of claim objection is an appropriate procedural mechanism to challenge the Commonwealth's pension liability, and that the proposed schedule set forth in its Scheduling Motion remains appropriate. However, upon consideration of the Retiree Committee's concerns regarding the need for expert and other discovery, and cognizant of the burdens on the Court's schedule and its ability to prepare, Ambac is amenable to additional time for adequate preparation for a hearing.

21. Accordingly, if the Court agrees additional time is needed to allow the parties to prepare for a substantive hearing on the Pension Claim Objection, Ambac proposes the below schedule:

    a.  **August 17, 2021**: Deadline for responses to the Pension Claim Objection.

    b.  **August 31, 2021**: Deadline for replies in further support of the Pension Claim Objection.

    c.  **September 2021:** Hearing on the Pension Claim Objection (exact dates to be determined based on the Court's availability).

22. To the extent the Court believes that the process to determine the pension liability amount is better resolved through an estimation process under Section 502(c) of the Bankruptcy Code, Ambac respectfully submits that the Court should convert the Pension Claim Objection to a motion to estimate under Section 502(c) (or direct Ambac to refile the Pension Claim Objection as an estimation motion within 7 days), or, alternatively, exercise its discretion to direct an estimation of the amount of the aggregate retiree claim amount and how much it will cost the Commonwealth to satisfy the proposed plan treatment for those claims in each fiscal year. To the

extent the Pension Claim Objection is converted to an estimation motion, briefing on such motion can and should proceed on the schedule described above.

23. Regardless of which procedural mechanism the Court selects, additional, unnecessary briefing is a waste of judicial and party resources. The pension liability figure must be determined before plan confirmation proceedings can begin, and efficient scheduling of issues to be resolved prior to confirmation is in all parties' best interest. Briefing a motion to terminate, as the Board proposes, will not advance the Commonwealth's ability to exit Title III.

## **CONCLUSION**

**WHEREFORE**, Ambac respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, which amends the proposed order attached to Ambac's Scheduling Motion, granting the relief requested herein and in the Scheduling Motion and granting any such other relief as the Court deems just and proper.

Dated: June 21, 2021
      San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
           scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile: (212) 530-5219
    Email: ddunne@milbank.com
           amiller@milbank.com
           gmainland@milbank.com
           jhughes2@milbank.com
           johring@milbank.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on this same date a true and exact copy of this notice was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

      /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com