## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

In re:

**THE FINANCIAL OVERSIGHT AND**          **PROMESA**
**MANAGEMENT BOARD FOR PUERTO RICO,**       **TITLE III**
as representative of                           **Case No. 17-BK-3283**
(LTS)

**THE COMMONWEALTH OF PUERTO RICO, et al.,**
         Debtors[1]

---

## MOTION REQUESTING ORDER FOR ALLOWANCE OF
## ADMINISTRATIVE EXPENSE PRIORITY CLAIM AND REQUEST FOR
## IMMEDIATE PAYMENT FILED BY FORTY-FOUR CORRECTION
## OFFICERS OF THE DEPARTMENT OF CORRECTIONS AND
## REHABILITATION OF THE COMMONWEALTH OF PUERTO RICO

**To the Honorable United States District Court Judge Laura Taylor Swain:**

Movants are forty-four correction officers ( "44 COs" ) of the Department of

Corrections and Rehabilitation of the Commonwealth of Puerto Rico (the "DCR"),

requesting an Order allowing an administrative expense priority claim under

sections 507(a)(2) and 503(b)(1)(A) of the United States Bankruptcy Code (the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780- LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

"Bankruptcy Code"), applicable to Title III of the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2161(a) ("PROMESA"), and mandating immediate payment as an administrative expense priority for the total unpaid under amount of the half hour meal time periods they ingest at their work posts and the unpaid portions of their post-petition regular monthly salaries, for post-petition custodial and security services rendered by the 44 COs at the Guerrero Penitentiary in Aguadilla, Puerto Rico as employees of the DCR.   In support of this Motion, the 44 COs represent as follows:

## PRELIMINARY STATEMENT

1. The appearing 44CO's are active full-time career employees at the DCR.   They have provided custodial and security services to the DCR, an instrumentality of the Title III Commonwealth under draconian circumstances for more than 15 years. These services include post-petition services provided to the Title III debtor as of May 3rd, 2017.   The amounts due to the 44COs are accrued unpaid post-petition portions of their regular monthly salaries.   The amounts are not severance pay nor compensatory damages.

2. As will be explained in further detail in this Motion, the Superior Court of First Instance of the Commonwealth of Puerto Rico, Aguadilla Division ("CFI") entered a Judgment dated April 22, 2016, that orders the DCR to issue to the 44COs two payments that constitute two shortfalls in 44COs regular monthly salaries.   Firstly, the Judgment dictates that the regular monthly salary must be corrected to

2

compensate for the 40 hours workweek; instead of the one based on the 37.5-hour workweek, they are currently being paid.

3. Secondly, the Judgment further mandates the DCR to pay the 44COs as overtime, the work performed during the 30 minutes allotted for mealtime periods. Particularly, because they are under the obligation to perform their duties uninterrupted during their regular 8-hour shift and are confined to the station and required to remain at their work posts during the 30 minutes mealtime period and are prohibited to ingest their meal at any other location.

4. To repeat, the amounts claimed by the 44COs as priority administrative expenses are the unpaid post-petition portions of the regular salary shortfalls and accrued post-petition unpaid mealtime period, a salary shortfall during which the 44COs are required to work and remain at their posts. The amounts claimed are not severance pay nor compensatory payments.

5. In this Motion, the 44COs pray for an Order allowing the unpaid portions of their regular salaries as an administrative expense priority for the post-petition custodial and security services they provide at the DCR and ordering the immediate payment of these priority administrative expenses.

## JURISDICTION

6. The United States District Court has subject matter jurisdiction over this matter under PROMESA section 306(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 et seq.

7.   Venue is proper under section 307(a) of the Puerto Rico Oversight, Management,
and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 et seq.

8.   The Court has jurisdiction under sections 507 and 503 of Title 11 of the United
States Code, applicable to this Title III proceeding under section 301 of the Puerto
Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §
2101 et seq.

## FACTUAL BACKGROUND

9.   On May 3, 2017, the Oversight Board filed a petition under Title III of
PROMESA on behalf of the Commonwealth of Puerto Rico.

10.   The Department of Corrections and Rehabilitation is an instrumentality of the
Commonwealth of Puerto Rico included in the Title III petition filed on behalf of the
Commonwealth.

11.   The Movants are 44COs that work at the Guerrero Penitentiary in Aguadilla
Puerto Rico.  They are active full-time career employees of the DCR seeking an Order
allowing the unpaid salary shortfalls of the post-petition services rendered and work
performed during the 30-minute mealtime periods, as an administrative expense
priority and for the immediate payment of the post-petition amounts owed.  The CFI
Judgment mandates the payment of these salary shortfalls.[2]

---

[2]  See Judgment included in Proof of Claim no. 12265. The CFI Judgment is in Spanish.  However, on this
same date, the 44COs have filed a Motion for Leave to file the CFI Judgment in Spanish and
Requesting a Thirty Day Extension to file the Certified Translation

12.    This Judgment resolved two cases. In 2003, Norberto Tomassini and other Correction Officers sued the DCR at the CFI under case number A MI2003-0143[3]. In 2005, Ivan Ayala Marrero and other COs sued the DCR at the CFI under case number A PE2005-0049[4]. Both cases include claims for the payment of the regular monthly compensation, on the basis of a 40-hour workweek, instead of the basis of a pay schedule designed for a 37.5 workweek and for overtime compensation for work performed during the 30 minute mealtime periods, since they are required to work uninterrupted, during their regular 8 hour shift.

13.    Although the CFI did not consolidate the cases, it held a joint evidentiary hearing with the parties' consents. In addition, it issued a Judgment dated April 22, 2016 ("CFI Judgment") as one judicial determination for the two cases in favor of all plaintiffs.

14.    The CFI Judgement granted all plaintiffs back pay for the shortfall amount for the unpaid portion of their monthly regular salaries. Although the Judgment

---

[3] The Tomassini plaintiffs that qualify for post petition administrative expenses are: Arce Letriz, José M.; Babilonia Hernández, Edgardo; Badillo Martínez, Roberto; Barreto Colón, Edwin; Caraballo Valentín, Juan A.; Colon Villanueva, Daniel; Feliciano Serrano, William; Galván Machado, Víctor; García González, Ramón; González Cabán, Félix; González Ríos, Juan R.; López González, Heriberto; López Loperena, Reynaldo; Machado Barreto, Rene; Montero Pellot, Miguel; Nieves Rosa, Pablo C.; Quiñones Colón, William; Ríos Lassalle, Eurípides; Rivera Valentín, Jesús; Rodríguez Cortés, Francisco; Rodríguez Echevarría, Emilio; Román Ferrer, Noel; Santana Rodríguez, José M.; Soto Román, Juan A.; Valentín Cabán, Javier; Valle Mendoza, Franco; Varela Jiménez, Samuel; Vázquez Arroyo, Armando and Vázquez Pérez, Rigoberto.

[4] The Ayala plaintiffs that qualify for post petition Administrative Expenses are: Ayala Marrero, Iván M; Colón Camacho, Marcial; Del Valle Vendrell, Pedro A.; Hernández Avilés, Rafael; Jaime Vega, Wendell S.; Matías Gerena, Carlos F.; Medina Morales, Elsem; Nieves Rosa, Alvin; Roldán Cortés, José L.; Román Nieves, Otilio; Seguí Román, Octavio; Soto Vélez, William; Torres Borrero, Thomas; Valentín Cortés, Roberto

mandates the DCR to pay, the 44COs cash payments for the shortfall amount for the unpaid portion of the regular salaries, on the basis of a 40-hour workweek, they are still being paid under a 37.5-hour weekly schedule and are still required to ingest their meals at their post, while providing uninterrupted security and custodial services. To this date, the DCR, hence, the Commonwealth, has failed to pay the pre-petition as well as the outstanding post-petition debt. The salary shortfalls continue to accumulate because the 44COs continue to provide post-petition services and continue to accumulate the unpaid salary shortfalls on a daily basis.

15.    It must be underscored the CFI final Judgement specifically grants the 44COs' request for the payment on the basis of a 40-hour workweek /and compensate as overtime the work they perform during the thirty-minute break for mealtime periods. Both of these amounts constitute the salary shortfalls.

16.    In the Findings of Facts determined by the CFI in the April 26, 2016 Judgment, the Court concluded that regarding the overtime claim for working during the 30 minutes meal time period, upon review of the evidence in the case and the testimonies, it is established that the plaintiffs performed custodial services during uninterrupted eight hours, irrespective of being allowed a half hour to take their meal at the work location. No Correctional Officer is authorized to leave the specific perimeter assigned in their respective shift for custodial services and if they do so, they are subject to charges for abandonment of services. *See CFI April 2016 Judgment at Page 5 ¶ 7*

17.    The CFI also found factual grounds to establish that the DCR wrongly calculated the plaintiff's regular monthly salary, since was based on a pay scale developed for a 37.5 hours workweek, instead of 40 hours workweek. *See CFI April 2016 Judgment Page 5 ¶ 8*

18.    Therefore, the CFI determined on the facts in the case that the CO's monthly regular salary have to be corrected, to include the additional half hour worked on the daily shift, since they work on a regular 40 hour workweek. Consequently, the regular monthly salary paid to the plaintiffs, at the time of their appointment and subsequent increases for merit and years of service granted, was erroneously established on the base of a 37.5 hour workweek and contrary to the provisions of the applicable local wage laws and regulations. See CFI April 2016 Judgment Page 5 ¶ 9

19. As to the payment of the thirty-minute overtime, for work performed during mealtime periods, the evidence established that the 44COs were confined to their work posts and were required to continue to perform the custodial and security services at their posts, while ingesting their meals. They may not eat their meals at any other location and are compelled to continue working at their stations. Since the CFI Judgment grants the 44COs overtime payment for working during the thirty-minute mealtime period, the Commonwealth must issue this shortfall salary payment. But it continuously ignores this obligation.

20.    The CFI Judgment also ordered the DCR to adjust KRONOS, the employee daily work registration system, to include the work performed during the 30

minute mealtime period as overtime. The Commonwealth must also issue this shortfall salary payment under the regular course of business and in compliance of the pertinent overtime regulations and procedures. But it continuously ignores this obligation.

21.    The Sworn Declarations of two COs of the Norberto Tomassini CFI case and three COs from the Ivan Ayala CFI case, states that the working conditions and shortfall salaries remain. See Exhibits A1 and A 2 and B1, B2 and B3. They are still required to perform work during their mealtime periods and stay at their designated post and provide uninterrupted custodial and security services. However, they are not being paid the overtime required by the DCR local law and regulations, for the services performed during the 30 minute mealtime period, as mandated by the CFI Judgement nor for the complete 40 hour workweek.

22.    Instead of complying with the CFI Judgment to correct the 44CO's regular pay rate, the Commonwealth prompted extensive appeals processes. The CFI entered a Judgement dated April 22, 2016, on behalf of the plaintiffs, the 44COs. On September 12, 2016, the Commonwealth appealed the CFI Judgement to the Puerto Rico Court of Appeals Judicial District of Bayamon.

23.    On November 13, 2019, the Appellate Court entered Judgment affirming the CFI Judgement. The Commonwealth then appealed to the Puerto Rico Supreme Court. Certiorari was denied. The Commonwealth filed a reconsideration before the Puerto Rico Supreme Court. Certiorari was dismissed for a second time. The term

to appeal to the United States Supreme Court elapsed without action by the Commonwealth. Therefore, the CFI Judgment is final and unappealable. And most importantly, collectable.

24.    The DCR, through the Title III Commonwealth Debtor, must comply with the terms and mandates of the CFI Judgement dated April 22, 2016. The 44COs have segregated their claims in pre-Title III claims[5] and post-Title III administrative expense priority claims. In this Motion, the 44COs pursue the allowance and payment of the administrative expense priority in the amounts itemized in Exhibit C[6], titled post-Title III wages computed from May 3rd, 2017, to December 31, 2020, for a preliminary total of $ 553,949.17 ("preliminary total").

25.    This amount is preliminary because the portion of the CO's regular monthly salaries earned after the proceedings under Title III were filed and the unpaid mealtime periods must be allowed and paid as an administrative expense priority that continues to accrue every month. Therefore, the unpaid portion of the regular wages for the months from January 2021 to June 2021 must be added to the

---

[5] Under section 503(b)(1)(A)(ii) of the Bankruptcy Code, the 44COs have grounds to request the pre-petition amounts as an administrative expense priority. The 44COs reserve the right to present this request in a contemporaneous independent motion.

[6] Exhibit C details the name of the plaintiff COs in the Tomassini and Ayala cases. Column 1 itemizes the monthly salary paid, according to a 37.5 workweek as paid to each CO. Column 2 itemizes the amount that should have been paid to each CO for the 40 hour workweek. Column 3 itemizes the difference that should have been paid to each CO for the 40 hour workweek. Column 4 multiplies the amount in column 3 by the 44 post- petition months, or less, as applicable to individual plaintiffs. This amount must be amended to include Jan to June 2021. Column 5 itemizes the amount due for work performed during the 30 minute mealtime period, according to the individual time records. Column 6 itemizes the total unpaid 30 minute meal period for the 44 months, as applicable. This amount must also be amended to include Jan to June 2021. The final column is identified as the total due salary shortfalls that stems from adding the totals in column 4 and column 6 for each CO.

preliminary total. These amounts will continue to accrue until the COs' regular monthly salary is corrected and KRONOS time record system is synchronized and adjusted, in compliance with the terms of the CFI Judgment, in order to register as overtime, the work performed during mealtime periods.

26. Exhibit C identifies each CO by name and itemizes the salary shortfall, the unpaid mealtime periods and the total wage deficiency owed to each CO from the filing of the Title III case to December 31, 2020. Except those that chose a post Title III petition retirement[7], which have computations until the date of their post-petition retirement. The COs that are currently working, as previously stated, accrue the salary shortfall on a daily and monthly basis until the post-petition salary shortfalls including the meal period are paid in full to the COs.

27. The last four digits of the social security numbers of each CO have been redacted from Exhibit C but will be included in an identical list that will be sent to counsel for AAFAF to be forwarded to the DCR to issue payment pursuant to the Proposed Order.

## **LEGAL ARGUMENT**

1. The appearing 44COs pursue an Order allowing their post-petition services to the Title III debtor as an administrative expense priority claim and mandating the

---

[7] In the Ivan Ayala case, two plaintiffs retired after the Commonwealth Title III case was filed. Mr. Rafael Hernández Avilés retired in 2020 and Mr. Otilio Román Nieves retired in 2019. In the Norberto Tomassini case, four plaintiffs retired after the Commonwealth Title III case was filed. Daniel Colon Villanueva, Daniel retired in 2019, Jesus Rivera Valentín, retired in August 2020, Samuel Varela Jiménez retired in 2019 and Rigoberto Vázquez Pérez, retired in 2018.

payment for these services. Their request is supported under the provisions of Section 507(a)(2) and section 503 of the Bankruptcy Code applicable to Title III proceedings under section 301(a) of PROMESA, the Puerto Rico Oversight, Management, and Economic Stability Act.

2.     Section 301(a) of PROMESA circumscribes the priority classification in Title III proceedings to section 507(a)(2) of the Bankruptcy Code. The subsection specifies as a priority in Title III the administrative expenses allowed under section 503 of the Bankruptcy Code.

3.     Hence, under PROMESA, section 507(a)(2) of the Bankruptcy Code grants a second priority classification to administrative expenses allowed under any subsection of section 503 of the Bankruptcy Code. Section 507(a)(2) accords administrative expenses of a bankruptcy estate second priority." In re Corbett, 550 B.R. 170, 181 (Bankr. D. Mass. 2016). Therefore, an allowed administrative expense is entitled to a priority classification in a Title III proceeding.

4.     Section 503 of the Bankruptcy Code is also applicable to Title III proceedings as also established under section 301 of PROMESA. This Court has previously ruled on the application of section 503(b)(1)(A) to Title III proceedings, specifically in the PREPA case.

5.     The fundamental criterion for an administrative expense under section 503 of the Bankruptcy Code is services or actions for "the actual and necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). To establish its entitlement to an administrative expense, a claimant must show (1) the right to

11

payment arose from a post-petition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor." In re Healthco Inter., Inc., 310 F.3d 9, 12 (1st Cir. 2002).

6.     Section 503(b)(1)(A) places the burden on the party claiming the allowance of an administrative expense in order to move the Court's discretion to a favorable determination. Under this purview, the Court ruled on this issue in the PREPA Title III proceeding in case number 19-04780 issuing Orders allowing services to be provided by LUMA as administrative expenses.

7.     In both Orders, the Court relied on the statutory provisions of section 503(b)(1)(A) that establishes an administrative expense as "the actual and necessary costs and expenses of preserving the estate".( 11 USC 503(b)(1)(A) ). In the Orders granting the allowance of administrative expenses for LUMA, the Court found the FOMB and government entities had met the burden and established the benefit to PREPA thus allowing the administrative expenses.

7.     The request by the 44COs falls within two of the statutory liabilities itemized in the *preserving the estate* requirement under section 503(b)(1)(A). The subsection lists nine different types of liabilities entitled to the allowance of administrative expense classification.   The list is non-exhaustive and subsection 503(b)(1)(A) comprises two examples of actual, necessary costs, and expenses of preserving the estate *including* wages, salaries, commissions which are listed as a category of administrative expense obligations under subsection 503(b)(1)(A)(i).

8.      Or under subsection 503(b)(1)(A)(ii) as wages and benefits awarded pursuant
to a judicial proceeding or a proceeding of the National Labor Relations Board as back
pay attributable to any period of time occurring after commencement of the case
under this title, as a result of a violation of Federal or State law by the debtor, without
regard to the time of the occurrence of unlawful conduct on which such award is based
or to whether any services were rendered, if the court determines that payment of
wages and benefits by reason of the operation of this clause will not substantially
increase the probability of layoff or termination of current employees, or of
nonpayment of domestic support obligations, during the case under this title.

9.      The administrative expense allowable to the 44COs are expressly listed in
sections 503(b)(1)(A)(i) and (ii) of the Bankruptcy Code. Any of these subsections
provide the grounds for the post-petition services performed by the 44COs as an
administrative expense. The statutory construction of sections 503(b)(1)(A)(i) and (ii)
mandate the allowance of post-petition salaries as administrative expenses without
placing a burden on the 44COs to establish the preserving the estate standard
because the subsections are examples of the preserving and /or benefit to the estate
criterion.

## Sections 503(b)(1)(A)(i)and (ii) of the Bankruptcy Code

8.      The 44COs pursue their request for the allowance of an administrative expense
priority under section 503(b)(1)(A)(i) and (ii) of the Bankruptcy Code, applicable to
Title III proceedings under section 301 of PROMESA.

13

9.     Subsection 503(b)(1)(A)(i) specifically lists wages, salaries, and commissions rendered after the commencement of the case as an administrative expense. Subsection 503(b)(1) (A)(ii) also includes wages and expenses awarded pursuant to a judicial proceeding, as back pay attributable to any period of time occurring after the commencement of the case under this title, as a result of a violation of Federal or State laws by the debtor.

10.     Both subsections reference wages, salaries, and commissions, and are applicable to the factual and legal grounds that should persuade the Court to enter an Order allowing the claims by the 44COs as administrative expenses with a priority classification, as an administrative expense priority. The unpaid portions of the post-petition salaries owed to these 44COs stem from the Judgment entered by the Superior Court of First Instance of the Commonwealth of Puerto Rico, Aguadilla Division ("CFI") on April 22, 2016.

10.     The CFI Judgment specifically discusses these findings at Page 5 at paragraphs 7, 8, and 9 and Orders the payment of the salary shortfalls.

11.     The plain language of section 503(b)(1)(A)(i) and (ii) afford the 44COs an administrative expense priority without the burden of proving benefit to the estate or to the Debtor. The language of section 503(b)(1)(A)(i) and (ii) is unambiguous, clear, and unequivocal. Thus, the interpretation must be construed to the plain language of the statute. As stated by the United States Supreme Court, "In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should

14

always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, (1989); when the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.' Rubin v. United States, 449 U.S. 424, (1981).

12.     Bankruptcy Law scholars have discussed the principles of administrative expenses. "There are several essential policies underlying the priority for administrative expenses: to encourage activities that will benefit the estate; to advance reorganization efforts which would be hampered by the necessity of advance payments for supplies of the estate; to compensate those injured by the estate; and to prevent unjust enrichment of the estate at the expense of its creditors." Nancy C. Dreher, Joan N. Feeny and Michael J. Stepan, Bankruptcy Law Manual, Volume 1, § 6.32 (5th ed. 2018-2).

12.     Courts have also recognized the significance of an administrative expense. In re G.I.C. Gov't Secs., Inc.,121 B.R. 647 (Bankr.M.D.Fla.1990), cited in In re Healthco Int'l, Inc., where the court, based upon Reading, held that "parties subjected to loss and expense as a result of the administration of a bankruptcy estate are entitled to be made whole as a matter of fundamental fairness and should be allowed an administrative claim to implement that result." In re G.I.C. Gov't Secs.,121 B.R. at 649.

13.   The policies to compensate those injured by the estate and preventing unjust enrichment of the estate at the expense of its creditors ('claimants") resonate with the 44COs request for allowance of an administrative expense priority.   The factual background in this motion and the Judgment entered by the CFI detail the injury suffered by the 44COs to this date.  Allowing the administrative expense priority classification will halt the unjust enrichment the Title III Commonwealth is implementing by pocketing funds from the COs salaries and will also prevent future unjust enrichment.

14.   Additionally because the DCR as an instrumentality of the Commonwealth Title III Debtor has a statutory administrative expense priority obligation under section 503(b)(1)(A)(i) and (ii) with the 44COs that stems from the portion of their salaries that has  not been paid to these public servants, as provided pursuant to their employment contract and applicable statutory dispositions.  The DCR, the Commonwealth and its citizens have received the post-petition security and custodial services provided by the 44COs at the Guerrero Penitentiary, which  are actual and necessary to preserve the operations of the debtor and thus, satisfy the applicable standard for administrative expense priority. The Title III Debtor has "expended" the services of these 44COs but has only partially paid their salaries.

15.   Under the plain language of section 503(b)(1)(A)(i) and (ii) the 44COs are entitled to an administrative expense priority starting collectively, at a preliminary amount of **$553,949.17** as accrued from the Title III petition date to December 31,

2020, and continue to accrue on a daily and monthly basis during the course of their employment.

16. The Court should also be persuaded that the security and custodial services provided by the 44COs, if required and for the purpose of argument, preponderantly establish the preserve/benefit to the estate standard. Although section 503(b)(1)(A)(i) and (ii) do. not institute a preservation benefit to the estate requirement, the post-petition services rendered by the 44COs are essential to preserve and benefit the Debtor's property and the Debtor's estate by providing full control of the security and custodial services at a Commonwealth Guerrero penitentiary under the Commonwealth's governance obligation to protect and safeguard the citizens of Puerto Rico. Specifically those who reside in the proximities of the Guerrero Penitentiary.

17. Factually and legally, the appearing 44COs have demonstrated that they are entitled to an Order allowing the unpaid portion of their salaries for the post-petition services they render to the Title III debtor as an administrative expense priority claim and for the amounts that are currently accruing, mandating the payment for these services under the provisions of section 503(b)(1)(A)(i) and (ii) of the Bankruptcy Code and the Judgment issued by the CFI.[8]

**WHEREFORE**, the Movants in this Motion respectfully pray for this Honorable Court to grant this Motion and Order: the allowance of the amounts claimed by the Movants as an administrative expense priority from the date of the filing of the Title

---

[8] Section 105 (a) empowers the Court to "issue any order, or process or judgment that isnecessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C.A. SEC. 105 (Westlaw through P.L. 116-164),

III Commonwealth case and from then on; to order the Department of Correction and Rehabilitation (DCR) to pay the Movants in full, and in final satisfaction, as an administrative expense priority the amounts determined as set forth in Exhibit C of this Motion within 60 days from the date of entry of the Court's Order, and that considering that the shortfall amounts will continue to accrue during the entire period of claimants' employment, it is hereby prayed that the Court orders the DCR continue issuing payment of corresponding shortfall amounts on a monthly basis, as applicable to the individual claimants and to further Order the Court of Aguadilla, case numbers AMI 2003-0143 and APE2005-0049, within the 60 days granted in this order, make the necessary adjustment to the "KRONOS" time register system to register as overtime the 30 minute hour work during mealtime periods.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 22 day of June 2021.

NOTICE OF TIME TO RESPOND

Pursuant to the terms set forth in the Court's Fourteenth Amended Notice, Case Management and Administrative Procedures Order [ECF 15894-1] the following terms shall apply with regards to the present Motion:

a. The Government Parties will file any objection to the Motion (on an individual or joint basis), concerning the request for priority payment at issue, no later than July 13, 2021;

18

b. The CO's Parties will file their Response in support of the Motion, concerning the Standing Issue, no later than July 23, 2021;

c. The Government Parties will file a reply (on an individual or joint basis) to the CO's Response by no later than August 3, 2021;

d. Further take notice that , after the Objection deadline has passed, and no Objection had been filed or served in accordance with the set procedures set forth herein, counsel to the entity that has filed the request for relief may file a CNO indicating that no Objection has been filed or served on the party who has filed the request for relief and submit an order granting the relief requested and in the alternative,

e. The Court will hear argument on the Motion, solely concerning the Standing Issue, at a date and location to be determined by the Court.

I HEREBY CERTIFY, in accordance with Fed. R. Bankr. P. 9014(b), Fed. R. Bankr. P. 7004(b), and the Court's Fourteenth Amended Notice, Case Management and Administrative Procedures Order [ECF 15894-1] (the "CMP Order"), that we electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all CM/ECF participants in this case. I further certify that, on this same date, I served the foregoing upon all the Standard Parties as identified and defined in the Court's CMP Order, as well as upon all of the parties identified in the Master Service List maintained at https://cases.primeclerk.com/puertorico/.

**ATTORNEY FOR THE 44 CORRECTION OFFICERS**

By: *Isl* **IVONNE GONZALEZ-MORALES**
IVONNE GONZALEZ-MORALES
USDC NUM: 202701
PO BOX 9021828
SAN JUAN, PR 00902-1828
Tel. (787) 410-0119

E-mail: ivonnegm@prw.net

19

**Table of references and Exhibits in support of Motion for allowance
of Payment of post-petition accrued wages as  Administrative
Expenses in connection with the consolidated Judgment entered on
April 22, 2016 by the Court of First Instance of Aguadilla in Cases of
Norberto Tomassini et al v Adm. Correccion and Ivan Ayala et al v
Adm. De Correccion, Civil Case Nums. A MI 20030143 and
A PE2005-0049  (the "Judgment")**

**Exhibit ID**                                                           **Page**


**EXHIBIT 1 – PROPOSED ORDER**                          1 -2

**EXHIBIT 2  - Sworn Declarations of two COs from
Norberto Tomassini  case**

2- A  Emilio Rodriguez Echevarria                                 3

2 -B   Jose M. Santana Rodriguez                                  4


**EXHIBIT  3 - Sworn Declarations of three
COs from the Ivan Ayala  case**

3  - A   Weldel S. Jaime Vega                                        5

3 - B   Alvin Nieves Rosa                                             6

3 – C   Elsem Medina Morales                                      7


**EXHIBIT 4  -Balance of salary shortfall owed to individual CO**,

Exhibit 4 A-  case Norberto Tomassini,  for   unpaid mealtime periods
and  total wage deficiency  from the filing of the Title III case to
December 31, 2020 for total  $367,489.98                    8-9


Exhibit 4 - B -  case Ivan Ayala  for   unpaid mealtime periods
and total wage deficiency  from the filing of the Title III case to
December 31, 2020, for total $ 186,459.19                    10

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

In re:

**THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,**
as representative of
(LTS)

**THE COMMONWEALTH OF PUERTO RICO, et al.,**
          Debtors[1]

**PROMESA
TITLE III
Case No.** 17-BK-3283

---

### [PROPOSED] ORDER GRANTING ORDER FOR ALLOWANCE OF
### ADMINISTRATIVE EXPENSE PRIORITY CLAIM AND REQUEST FOR
### IMMEDIATE PAYMENT FILED BY FORTY-FOUR CORRECTION
### OFFICERS OF THE DEPARTMENT OF CORRECTIONS AND
### REHABILITATION OF THE COMMONWEALTH OF PUERTO RICO

Upon consideration of the Motion for Allowance Of Administrative Expense
Priority Claim And Request For Immediate Payment Filed By Forty-Four
Correction Officers Of The Department Of Corrections And Rehabilitation Of The
Commonwealth Of Puerto Rico and the Court having reviewed the Motion and the
relief requested; the Court having jurisdiction over this matter pursuant to 28
U.S.C. § 1331 and 48 U.S.C. § 2166(a); the Court determining that venue of this
proceeding in this District is proper under 28 U.S.C. § 1391(b) and 48 U.S.C. §
2167(a); notice of the Motion being adequate and proper under the circumstances;
and after due deliberation and sufficient cause appearing;

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and
the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i)
Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal
Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17
BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and
Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of
Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth
of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID:
9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-
LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case
numbers due to software limitations).

**THEREFORE, IT IS HEREBY ORDERED THAT**:

1. The Court grants the allowance of the amounts claimed by the Movants as an administrative expense priority from the date of the filing of the Title III Commonwealth case and from then on.

2. The Court Orders the Department of Correction and Rehabilitation (DCR) to pay the Movants in full, and in final satisfaction, as an administrative expense priority the amounts determined as set forth in Exhibit C of the Motion Requesting Allowance of Administrative Expense Priority claim, within 60 days from the date of entry of this Order.

3. The Court also Orders that considering that the shortfall amounts will continue to accrue during the entire period of claimants' employment, it is hereby ordered that the DCR continue issuing payment of corresponding shortfall amounts on a monthly basis, as applicable to the individual claimants.

4. The Department of Correction and Rehabilitation shall also comply with the judgment entered on April 22, 2016, by the First Instant Court of Aguadilla, case numbers AMI 2003-0143 and  APE2005-0049, within the 60 days granted in this order, make the necessary  adjustment  to the "KRONOS" time register system to register as overtime the ½ hour work during meal periods.

**SO ORDERED**.


Dated:


**LAURA TAYLOR SWAIN**
**UNITED STATES DISTRICT COURT JUDGE**

EXHIBIT 2 -A

## UNSWORN STATEMENT UNDER 28 USC SECTION 1746

I, _Emilio Rodriguez Echevarria_, of legal age, and resident of _Isabela_ Puerto Rico, declare under penalty of perjury:

1. That I work for the Department of Correction and Rehabilitation of the Commonwealth of Puerto Rico( DCR), as a Correction Officer, as an active full-time career employee.
2. That I am one of the plaintiff in the case of **Norberto Tomassini-Arce et als** v DCR filed at the CFI Aguadilla, under case number AM I2003-0143 and I have provided and continue to provide post-petition services to the Department of Corrections and Rehabilitation as a Correction Officer at the Guerrero Penitentiary in Aguadilla, Puerto Rico.
3. That although I work under a regular 40 hours workweek and on an specified uninterrupted eight (8) hour shift per day, at the time of hiring and to this date, I have been paid a fix monthly salary, based on a pay scale that was designed for employees that worked on a fix 37.5 hours workweke. That based on these factors the Judgement entered by the Court of First Instance of Aguadilla on April 24, 2016, in the reference case, mandated the Department of Corrections to correct the plaintiffs monthly salary, in order to include the hours worked between the 37.5 hour to 40 hour workweek. Also, determined plaintiffs right to receive payment as overtime, for the 30 minutes worked during meal time period and adjust the KRONOS system, to register as overtime the 30 minutes worked during meal time periods. Thus far, and to this date, and according to my best information or belief, the DCR have not paid any of the plaintiffs the regular monthly salary adjustment or the overtime determined for work performed during the meal time period, nor has adjusted the time register system, in order to maintain precise accounting of employees hours, in clear defiance with the Judgment.
4. For more than 15 years, I, and the other plaintiffs have been working under the conditions that led to the complaint filed and the Judgment entered on behalf of the plaintiff Correction Officers.
5. This Unsworn Statement Under Penalty of Perjury is executed in support of the motion requesting the allowance and payment of the priority administrative expense filed in case no. 17 BK 03283 .

Under penalty of perjury, I attest that the information in this declaration is the truth, to the best of my knowledge and belief.

In Aguadilla, Puerto Rico, on June _15_ 2021 .

Correction Officer at the Guerrero Penitentiary

EXHIBIT 2 -B

## UNSWORN STATEMENT UNDER 28 USC SECTION 1746

I, _Jose M. Santana Rodriguez_, of legal age, and resident of _Isabela_, Puerto Rico, declare under penalty of perjury:

1. That I work for the Department of Correction and Rehabilitation of the Commonwealth of Puerto Rico( DCR), as a Correction Officer, as an active full-time career employee.

2. That I am one of the plaintiff in the case of **Norberto Tomassini-Arce et als** v DCR filed at the CFI Aguadilla, under case number AM I2003-0143 and I have provided and continue to provide post-petition services to the Department of Corrections and Rehabilitation as a Correction Officer at the Guerrero Penitentiary in Aguadilla, Puerto Rico.

3. That although I work under a regular 40 hours workweek and on an specified uninterrupted eight (8) hour shift per day, at the time of hiring and to this date, I have been paid a fix monthly salary, based on a pay scale that was designed for employees that worked on a fix 37.5 hours workweek. That based on these factors the Judgement entered by the Court of First Instance of Aguadilla on April 24, 2016, in the reference case, mandated the Department of Corrections to correct the plaintiffs monthly salary, in order to include the hours worked between the 37.5 hour to 40 hour workweek. Also, determined plaintiffs right to receive payment as overtime, for the 30 minutes worked during meal time period and adjust the KRONOS system, to register as overtime the 30 minutes worked during meal time periods. Thus far, and to this date, and according to my best information or belief, the DCR have not paid any of the plaintiffs the regular monthly salary adjustment or the overtime determined for work performed during the meal time period, nor has adjusted the time register system, in order to maintain precise accounting of employees hours, in clear defiance with the Judgment.

4. For more than 15 years, I, and the other plaintiffs have been working under the conditions that led to the complaint filed and the Judgment entered on behalf of the plaintiff Correction Officers.

5. This Unsworn Statement Under Penalty of Perjury is executed in support of the motion requesting the allowance and payment of the priority administrative expense filed in case no. 17 BK 03283 .

Under penalty of perjury, I attest that the information in this declaration is the truth, to the best of my knowledge and belief.

In Aguadilla, Puerto Rico, on June __15__ 2021.

Correction Officer at the Guerrero Penitentiary

EXHIBIT 3 -A

UNSWORN STATENENT UNDER 28 USC SECTION 1746

I, *Wandell S. Jaime Vega*, of legal age, and resident of
*Aguadilla*, Puerto Rico, declare under penalty of perjury:

1. That I work for the Department of Correction and Rehabilitation of the Commonwealth of Puerto Rico( DCR), as a Correction Officer, as an active full-time career employee.

2. That I am one of the plaintiff in the case of **Ivan Ayala et als. v DCR** case no. A PE2005-0049I and I have provided and continue to provide post-petition services to the Department of Corrections and Rehabilitation as a Correction Officer at the Guerrero Penitentiary in Aguadilla, Puerto Rico.

3. That although I work under a regular 40 hours workweek and on an specified uninterrupted eight (8) hour shift per day, at the time of hiring and to this date, I have been paid a fix monthly salary, based on a pay scale that was designed for employees that worked on a fix 37.5 hours workweek. That based on these factors the Judgement entered by the Court of First Instance of Aguadilla on April 24, 2016, in the reference case, mandated the Department of Corrections to correct the plaintiffs monthly salary, in order to include the hours worked between the 37.5 hour to 40 hour workweek. Also, determined plaintiffs right to receive payment as overtime, for the 30 minutes worked during meal time period and adjust the KRONOS system, to register as overtime the 30 minutes worked during meal time periods. Thus far, and to this date, and according to my best information or belief, the DCR have not paid any of the plaintiffs the regular monthly salary adjustment or the overtime determined for work performed during the meal time period, nor has adjusted the time register system, in order to maintain precise accounting of employees hours, in clear defiance with the Judgment.

4. For more than 15 years, I, and the other plaintiffs have been working under the conditions that led to the complaint filed and the Judgment entered on behalf of the plaintiff Correction Officers.

5. This Unsworn Statement Under Penalty of Perjury is executed in support of the motion requesting the allowance and payment of the priority administrative expense filed in case no. 17 BK 03283 .

Under penalty of perjury, I attest that the information in this declaration is the truth, to the best of my knowledge and belief.

In Aguadilla, Puerto Rico, on June _15_ 2021.

Correction Officer at the Guerrero Penitentiary

EXHIBIT 3 -B

UNSWORN STATENENT UNDER 28 USC SECTION 1746

I, _Alvin Nieves Rosaq_ of legal age, and resident of _Moca_, Puerto Rico, declare under penalty of perjury:

1. That I work for the Department of Correction and Rehabilitation of the Commonwealth of Puerto Rico( DCR), as a Correction Officer, as an active full-time career employee.
2. That I am one of the plaintiff in the case of **Ivan Ayala et als. v DCR** case no. A PE2005-0049I and I have provided and continue to provide post-petition services to the Department of Corrections and Rehabilitation as a Correction Officer at the Guerrero Penitentiary in Aguadilla, Puerto Rico.
3. That although I work under a regular 40 hours workweek and on an specified uninterrupted eight (8) hour shift per day, at the time of hiring and to this date, I have been paid a fix monthly salary, based on a pay scale that was designed for employees that worked on a fix 37.5 hours workweek. That based on these factors the Judgement entered by the Court of First Instance of Aguadilla on April 24, 2016, in the reference case, mandated the Department of Corrections to correct the plaintiffs monthly salary, in order to include the hours worked between the 37.5 hour to 40 hour workweek. Also, determined plaintiffs right to receive payment as overtime, for the 30 minutes worked during meal time period and adjust the KRONOS system, to register as overtime the 30 minutes worked during meal time periods. Thus far, and to this date, and according to my best information or belief, the DCR have not paid any of the plaintiffs the regular monthly salary adjustment or the overtime determined for work performed during the meal time period, nor has adjusted the time register system, in order to maintain precise accounting of employees hours, in clear defiance with the Judgment.

4. For more than 15 years, I, and the other plaintiffs have been working under the conditions that led to the complaint filed and the Judgment entered on behalf of the plaintiff Correction Officers.

5. This Unsworn Statement Under Penalty of Perjury is executed in support of the motion requesting the allowance and payment of the priority administrative expense filed in case no. 17 BK 03283 .

   Under penalty of perjury, I attest that the information in this declaration is the truth, to the best of my knowledge and belief.

   In Aguadilla, Puerto Rico, on June _65_ 2021.

   Correction Officer at the Guerrero Penitentiary

EXHIBIT 3 -C

UNSWORN STATENENT UNDER 28 USC SECTION 1746

I, _Eben Medina Morales_, of legal age, and resident of _Mca_, Puerto Rico, declare under penalty of perjury:

1. That I work for the Department of Correction and Rehabilitation of the Commonwealth of Puerto Rico( DCR), as a Correction Officer, as an active full-time career employee.

2. That I am one of the plaintiff in the case of **Ivan Ayala et als. v DCR** case no. A PE2005-0049I and I have provided and continue to provide post-petition services to the Department of Corrections and Rehabilitation as a Correction Officer at the Guerrero Penitentiary in Aguadilla, Puerto Rico.

3. That although I work under a regular 40 hours workweek and on an specified uninterrupted eight (8) hour shift per day, at the time of hiring and to this date, I have been paid a fix monthly salary, based on a pay scale that was designed for employees that worked on a fix 37.5 hours workweek. That based on these factors the Judgement entered by the Court of First Instance of Aguadilla on April 24, 2016, in the reference case, mandated the Department of Corrections to correct the plaintiffs monthly salary, in order to include the hours worked between the 37.5 hour to 40 hour workweek. Also, determined plaintiffs right to receive payment as overtime, for the 30 minutes worked during meal time period and adjust the KRONOS system, to register as overtime the 30 minutes worked during meal time periods. Thus far, and to this date, and according to my best information or belief, the DCR have not paid any of the plaintiffs the regular monthly salary adjustment or the overtime determined for work performed during the meal time period, nor has adjusted the time register system, in order to maintain precise accounting of employees hours, in clear defiance with the Judgment.

4. For more than 15 years, I, and the other plaintiffs have been working under the conditions that led to the complaint filed and the Judgment entered on behalf of the plaintiff Correction Officers.

5. This Unsworn Statement Under Penalty of Perjury is executed in support of the motion requesting the allowance and payment of the priority administrative expense filed in case no. 17 BK 03283 .

Under penalty of perjury, I attest that the information in this declaration is the truth, to the best of my knowledge and belief.

In Aguadilla, Puerto Rico, on June _15_ 2021.

_____

Correction Officer at the Guerrero Penitentiary

**ACCRUED POST - PETITION UNPAID WAGES PLAINTIFFS CREDITORS IN CASE: NORBERTO TOMASSINI**

**PURSUANT TO JUDGMENT ENTERED ON APRIL 22, 2016 COURT FIRST INSTANCE OF AGUADILLA**

**DEBTOR'S - DEPT. OF CORRECTION**

A. CREDITOR CALCULATED THE UNPAID WAGES ELEGIBLE AS ADMINISTRATIVE EXPENSES FROM  MAY 3,2017 TO DECEMBER 2020 AS FOLLOWS: *(1)

| | NAME | | MONTHY SALARY PAID | SALARY BASED ON 40 HRS. WEEK SCHEDULE | SHORTFALL | BALANCE UNPAID PORTION OF WAGES - 44 MO. OR LESS, AS APPLICABLE | UNPAID HRS. ACCRUED FOR WORK DURING ½ MEAL PERIOD (2) | UNPAID BALANCE MEAL PERIOD | DEBT |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Acevedo Gonzalez, Jose L. | | $2,411.00 | $2,571.68 | $160.68 | $7,070.09 | 463.30 | $6,873.95 | $13,944.04 |
| 2 | Arce Letriz, José M. | | $2,261.00 | $2,411.69 | $150.69 | $6,630.23 | 462.00 | $6,428.20 | $13,058.42 |
| 3 | Babilonia Hernández, Edgardo | | $2,259.00 | $2,409.55 | $150.55 | $6,624.36 | 402.00 | $5,588.42 | $12,212.78 |
| 4 | Badillo Martínez, Roberto | | $2,249.00 | $2,398.89 | $149.89 | $6,595.04 | 460.30 | $6,370.55 | $12,965.59 |
| 5 | Barreto Colón, Edwin | | $2,291.00 | $2,443.69 | $152.69 | $6,718.20 | 471.30 | $6,644.60 | $13,362.80 |
| 6 | Caraballo Valentín, Juan A. | | $2,291.00 | $2,443.69 | $152.69 | $6,718.20 | 391.00 | $5,512.50 | $12,230.70 |
| 7 | Colon Villanueva, Daniel | | $2,325.00 | $2,479.95 | $154.95 | $4,183.71 | 129.00 | $1,845.69 | $6,029.40 |
| 8 | Feliciano Serrano, William | | $2,351.00 | $2,507.69 | $156.69 | $6,894.14 | 579.30 | $8,381.13 | $15,275.28 |
| 9 | Galván Machado, Víctor | | $2,259.00 | $2,409.55 | $150.55 | $6,624.36 | 538.00 | $7,479.03 | $14,103.39 |
| 10 | García González, Ramón | | $2,291.00 | $2,443.69 | $152.69 | $6,718.20 | 393.30 | $5,544.92 | $12,263.12 |
| 11 | González Cabán, Félix | | $2,325.00 | $2,479.95 | $154.95 | $6,817.90 | 497.00 | $7,110.92 | $13,928.82 |
| 12 | González Ríos, Juan R. | | $2,259.00 | $2,409.55 | $150.55 | $6,624.36 | 177.00 | $2,460.57 | $9,084.93 |
| 13 | López González, Heriberto | | $2,291.00 | $2,443.69 | $152.69 | $6,718.20 | 401.00 | $5,653.48 | $12,371.68 |
| 14 | Lopez Loperena, Reynaldo | | $2,471.00 | $2,635.68 | $164.68 | $7,246.04 | 425.30 | $6,467.18 | $13,713.21 |
| 15 | Machado Barreto, Rene | | $2,531.00 | $2,699.68 | $168.68 | $7,421.98 | 456.30 | $7,107.05 | $14,529.03 |
| 16 | Montero Pellot, Miguel | | $2,259.00 | $2,409.55 | $150.55 | $6,624.36 | 422.30 | $5,870.62 | $12,494.98 |
| 17 | Nieves Rosa, Pablo C. | | $2,259.00 | $2,409.55 | $150.55 | $6,624.36 | 436.30 | $6,065.24 | $12,689.60 |
| 18 | Quiñones Colón, William | | $2,259.00 | $2,409.55 | $150.55 | $6,624.36 | 566.30 | $7,872.44 | $14,496.80 |
| 19 | Ríos Lassalle, Eurípides | | $2,291.00 | $2,443.69 | $152.69 | $6,718.20 | 441.30 | $6,221.65 | $12,939.85 |
| 20 | Rivera Valentín, Jesús | | $2,325.00 | $2,479.95 | $154.95 | $6,198.09 | 183.30 | $2,622.60 | $8,820.69 |
| 21 | Rodríguez Cortés, Francisco | | $2,259.00 | $2,409.55 | $150.55 | $6,624.36 | 511.30 | $7,107.86 | $13,732.22 |
| 22 | Rodriguez Echevarria, Emilio | | $2,259.00 | $2,409.55 | $150.55 | $6,624.36 | 421.00 | $5,852.55 | $12,476.91 |
| 23 | Román Ferrer, Noel | | $2,560.00 | $2,560.00 | $0.00 | $0.00 | 672.30 | $10,591.31 | $10,591.31 |

EXHIBIT 4 - A

## ACCRUED POST - PETITION UNPAID WAGES TO PLAINTIFF'S CREDITORS IN CASE: NORBERTO TOMASSINI
## PURSUANT TO JUDGMENT ENTERED ON APRIL 22, 2016 COURT FIRST INSTANCE OF AGUADILLA
## DEBTOR'S - DEPT. OF CORRECTION

| | NAME | | MONTHY SALARY PAID | SALARY BASED ON 40 HRS. WEEK SCHEDULE | SHORTFALL | BALANCE UNPAID PORTION OF WAGES - 44 MO. OR LESS, AS APPLICABLE | UNPAID HRS. ACCRUED FOR WORK DURING ½ MEAL PERIOD (2) | UNPAID BALANCE MEAL PERIOD | DEBT |
|---|---|---|---|---|---|---|---|---|---|
| 24 | Santana Rodríguez, José M. | | $2,291.00 | $2,443.69 | $152.69 | $6,718.20 | 403.30 | $5,685.91 | $12,404.11 |
| 25 | Soto Román, Juan A. | | $2,291.00 | $2,443.69 | $152.69 | $6,718.20 | 409.30 | $5,770.50 | $12,488.70 |
| 26 | Valentín Cabán, Javier | | $2,291.00 | $2,443.69 | $152.69 | $6,718.20 | 542.00 | $7,641.37 | $14,359.57 |
| 27 | Valle Mendoza, Franco | | $2,269.00 | $2,420.22 | $151.22 | $6,653.69 | 555.30 | $7,753.70 | $14,407.38 |
| 28 | Varela Jiménez, Samuel | | $2,325.00 | $2,479.95 | $154.95 | $3,718.86 | 258.00 | $3,691.38 | $7,410.24 |
| 29 | Vázquez Arroyo, Armando | | $2,291.00 | $2,443.69 | $152.69 | $6,718.20 | 524.30 | $7,391.82 | $14,110.02 |
| 30 | Vázquez Pérez, Rigoberto | | $2,325.00 | $2,479.95 | $154.95 | $2,944.09 | 143.30 | $2,050.29 | $4,994.39 |

**TOTAL**    **$185,832.54**    **$181,657.44**   **$367,489.98**

(1) Amounts due for unpaind of wages continue to acomulate on monthy basis.

(2) Meal periods are earned on day –to- day basis and based on service rendered. The amount due for work performed during the ½ hr. meal period was calculated and verified from Debtor's payroll (Kronos) system and according to the individual employee's hourly rate

# ACCRUED POST – PETITION UNPAID WAGES PLAINTIFF'S CREDITORS IN CASE: IVAN AYALA

## PURSUANT TO JUDGMENT ENTERED ON APRIL 22, 2016 COURT FIRST INSTANCE OF AGUADILLA

## DEBTOR'S – DEPT. OF CORRECTION

EXHIBIT 4 – B

A. CREDITOR CALCULATED THE UNPAID WAGES ELEGIBLE AS ADMINISTRATIVE EXPENSES FROM MAY 3,2017 TO DECEMBER  2020 AS FOLLOWS: *(1)

| | NAME | MONTHY SALARY PAID | MONTHY SALARY PAID | SHORTFALL | BALANCE UNPAID PORTION OF WAGES - 44 MO. OR LESS, AS APPLICABLE | UNPAID HRS. ACCRUED FOR WORK DURING ½ MEAL PERIOD (2) | UNPAID BALANCE MEAL PERIOD | DEBT |
|---|---|---|---|---|---|---|---|---|
| 1 | Ayala Marrero, Ivan M | $2,299.00 | $2,299.00 | $153.22 | $6,741.66 | 379.00 | $5,361.98 | $12,103.63 |
| 2 | Colón Camacho, Marcial | $2,109.00 | $2,764.00 | $184.21 | $8,105.24 | 695.00 | $11,821.42 | $19,926.65 |
| 3 | Del Valle Vendrell, Pedro A. | $2,109.00 | $2,259.00 | $150.55 | $6,624.36 | 431.00 | $5,991.56 | $12,615.92 |
| 4 | Hernández Avilés, Rafael | $2,325.00 | $2,325.00 | $154.95 | $6,043.14 | 340.30 | $4,868.91 | $10,912.05 |
| 5 | Jaime Vega, Wendell S. | $2,201.00 | $2,351.00 | $156.69 | $6,894.14 | 566.30 | $8,193.05 | $15,087.20 |
| 6 | Matías Gerena, Carlos F. | $2,141.00 | $2,291.00 | $152.69 | $6,718.20 | 444.00 | $6,259.72 | $12,977.92 |
| 7 | Medina Morales, Elsem | $2,109.00 | $2,259.00 | $150.55 | $6,624.36 | 353.30 | $4,911.41 | $11,535.77 |
| 8 | Nieves Rosa, Alvin | $2,109.00 | $2,259.00 | $150.55 | $6,624.36 | 431.00 | $5,991.56 | $12,615.92 |
| 9 | Roldán Cortés, José L. | $2,109.00 | $2,259.00 | $150.55 | $6,624.36 | 433.30 | $6,023.54 | $12,647.90 |
| 10 | Román Nieves, Otilio | $2,325.00 | $2,475.00 | $164.95 | $4,453.63 | 126.00 | $1,919.08 | $6,372.71 |
| 11 | Seguí Román, Octavio | $2,109.00 | $2,259.00 | $150.55 | $6,624.36 | 493.30 | $6,857.63 | $13,481.99 |
| 12 | Soto Vélez, William | $1,881.00 | $2,291.00 | $152.69 | $6,718.20 | 359.30 | $5,065.58 | $11,783.78 |
| 13 | Torres Borrero, Thomas | $2,201.00 | $2,351.00 | $156.69 | $6,894.14 | 495.30 | $7,165.85 | $14,059.99 |
| 14 | Valentín Cortés, Roberto | $2,109.00 | $2,501.00 | $166.68 | $7,334.01 | 360.30 | $5,545.29 | $12,879.30 |
| | | | TOTAL | $86,399.81 | | $86,810.66 | | $186,459.19 |

(1) Amount due for unpaind of wages continue to acomulate on monthy basis.

(2) Meal periods are earned on day –to- day basis and based on service rendered. The amount due for work performed during the ½ hr. meal period was calculated and verified from Debtor's payroll (Kronos) system and according to the individual employee's hourly rate.