UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**SUPPLEMENTAL OBJECTION OF AMBAC ASSURANCE CORPORATION TO THE DISCLOSURE STATEMENT FOR THE THIRD AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, *ET AL.*__**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Pursuant to the Court's June 22, 2021 order (ECF No. 17138) (the "June 22 Order"), Ambac Assurance Corporation ("Ambac") respectfully submits this supplemental objection to the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 16741) ("Disclosure Statement" or "DS").[2]

## BACKGROUND

1. On May 11, 2021, the Financial Oversight and Management Board for Puerto Rico (the "Board") filed the Disclosure Statement and the Plan. On June 3, 2021, Ambac filed an objection (ECF No. 16884) (the "Pension Claim Objection") to the proof of claim filed by the Official Committee of Retired Employees of the Commonwealth of Puerto Rico appointed in the Commonwealth's Title III Case (the "Retiree Committee Claim"), seeking disallowance of the Retiree Committee Claim to the extent it is overstated.

2. As discussed in the Pension Claim Objection, the Retiree Committee Claim is based entirely on the estimated total pension liabilities calculated by Milliman, Inc. ("Milliman"), the Commonwealth's actuary, in reports dated as of June 30, 2016. These reports (the "2016 Milliman Reports") estimate the Commonwealth's total pension liabilities at approximately $55.3 billion, a figure the Retiree Committee Claim modifies (by applying a different discount rate) to assert a claim of $58.5 billion. (*See* Pension Claim Objection ¶¶ 27, 38.) Ambac believes the Retiree Committee Claim to be overstated by at least $9 billion—attributable both to an $8.2 billion reduction achieved by relying on more recent data and updated assumptions,[3] and to errors in the data, assumptions, and discount rate on which the Milliman Reports rely. (*See id.* ¶¶ 41-44.)

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given in the Disclosure Statement.

[3] The Milliman reports dated June 30, 2017 (the "2017 Milliman Reports" and, with the 2016 Milliman Reports, the "Milliman Reports"), rely on data as of July 1, 2016 (one year more recent than the data on which the 2016 Milliman Reports rely), and reflect total pension liabilities of $47.1 billion. (*See id.* ¶ 15.)

3. On June 15, 2021, Ambac filed an objection to the Disclosure Statement (ECF No. 17008) (the "DS Objection"), arguing that the Disclosure Statement should not be approved because, *inter alia*, it failed to provide necessary disclosures regarding the likely overstatement of the pension liability amount used in the Disclosure Statement and Fiscal Plan and the unreliability of the data on which the pension liability amount relies. (*See* DS Objection ¶¶ 114-18.)

4. On June 17, 2021, the Board filed papers indicating its intent to move to terminate the Pension Claim Objection (ECF No. 17069) (the "Board Response"). The Board Response made statements bearing on the amount, method of calculation, and basis for the Commonwealth's pension liability estimate, none of which is present in (and which at times contradicts what information *is* present in) the Disclosure Statement.[4] On June 21, 2021, Ambac sought leave to file a supplemental objection to the Disclosure Statement addressing the statements made in the Board Response. (*See* ECF No. 17129.) In its June 22 Order, the Court granted Ambac's request.

## ARGUMENT

5. The Board Response underscores the Disclosure Statement's deficiencies by presenting new, and at times contradictory, information on the Commonwealth's largest liability.

6. On the one hand, the Disclosure Statement repeatedly describes the Commonwealth's pension liabilities as exceeding $50 billion, both as of the date the Board was appointed (*see* DS at 3 ("[a]t the time" the Board was appointed "the Commonwealth had . . . estimated pension liabilities of approximately $55.6 billion")), and as of the date it entered into a plan support agreement with the Retiree Committee (*see id.* at 8 (such agreement would affect "over $50 billion in pension claims at the Commonwealth"). The Fiscal Plan also states that the Second Amended Plan—materially identical to the Third Amended Plan with regard to pension

---

[4] On June 22, 2021, the Court denied the Pension Claim Objection without prejudice to Ambac raising the issues in connection with plan confirmation. (*See* ECF No. 17140.)

liabilities—was filed to "restructure . . . more than $50 billion of pension liabilities." (*See* DS Ex. G at 22.) These statements align with the amounts in the 2016 Milliman Reports and the Retiree Committee Claim, which estimated the Commonwealth's pension liabilities at $55.3 billion—or $58.6 billion, if adopting the Retiree Committee Claim's discount rate. It therefore appears the Board believes that the Commonwealth's pension liabilities exceed $50 billion.

7. On the other hand—if one is to credit the Board Response—the Board may believe the Commonwealth's pension liabilities to be an entirely different, although as-yet-undisclosed, amount. The Board Response states that "[a]s a practical matter, the Oversight Board's contemplated treatment of pension claims already takes into account the $8.2 billion reduction in claims" reflected in the 2017 Milliman Reports, and that "the treatment of pension claims under the Oversight Board's proposed plan of adjustment is not based on the Retiree Committee Claim." (Board Response ¶ 3.) These vague and conclusory statements—nestled away in procedural briefing, filed after creditors' objections to the Disclosure Statement were due—cast substantial doubt on the amount of pension liabilities the Plan would restructure. At a minimum, they leave the reader of the Disclosure Statement at a loss as to what the Board believes the number to be and the bases for that belief. It should be beyond dispute that the Disclosure Statement must accurately reflect the Board's current pension liability estimate, and the bases on which that estimate rests.

8. To clear up the confusion occasioned by the Board Response (and the lack of clarity on this issue that preceded it), at least three pieces of information must be included in the Disclosure Statement—in addition to the disclosures Ambac sought in the DS Objection.

9. ***First***, the Disclosure Statement must state clearly the amount of the pension liability claim being allowed under the Plan. If the Board has already "take[n] into account the $8.2 billion reduction" in pension liabilities reflected in the 2017 Milliman Reports, it is unclear why the

- 3 -

Disclosure Statement references pension liabilities in excess of $50 billion, and how that figure was generated (as the 2017 Milliman Reports themselves estimate the Commonwealth's pension liabilities at roughly $47 billion (*see* Pension Claim Objection ¶ 41)). Moreover, the Board's use of the phrase "over $50 billion" to describe the amount of pension claims (DS at 8) is meaningless: taken literally, this could mean the Commonwealth's pension liability is infinite. And it is likely inaccurate. Even the Ernst & Young report on the Commonwealth's pension systems annexed to the Disclosure Statement—which Ambac has previously criticized for relying entirely on the Milliman Reports without additional analysis (*see* Pension Claim Objection ¶ 20)—estimates the present value of the Commonwealth's future PayGo costs at below $50 billion. (*See* DS Ex. I at 25.) The Board must tell creditors what it believes the Commonwealth's pension liability to be, including the amount of real dollars required to satisfy the pension liability per year.

10. ***Second***, the Disclosure Statement must clarify whether the Retiree Committee Claim will be disallowed under the Plan, or if allowed, in what amount. Creditors are entirely justified in believing that the source for the Disclosure Statement's repeated references to pension liabilities exceeding $50 billion is the publicly-available Retiree Committee Claim—but the Board Response declares that this is not the case. (*See* Board Response ¶ 3.) The Board Response is the first indication creditors have had that the Retiree Committee Claim may not be allowed in full.

11. ***Third***, the Disclosure Statement must identify the bases on which, and methodology by which, the Plan's allowed pension liability amount was determined and calculated, including from which data, reports, and analyses the allowed amount was derived. For example, are the 2017 Milliman Reports (or the forthcoming 2018 Milliman analysis) the basis for the current estimate of the Commonwealth's pension liability?[5] If not, what is? And does the

---

[5] If, instead of relying on Milliman or Ernst & Young's work, the Board is conducting a separate pension liability analysis, any such analysis has never been disclosed—and would be difficult to square with the

- 4 -

Board expect to change its estimate when Milliman publishes its report as of June 30, 2018? Are any other reports or data being used to reach, or support, the Board's estimate of pension liabilities, and how was the determination to rely on those reports made? What data do those reports rely on, and are there risks that the data may be unreliable? What discount rate, if any, was used in reaching the Board's estimate?[6] Only with this information will creditors be able to understand the likely size of the Commonwealth's pension liability and evaluate whether to vote in favor of the Plan. (*See* ECF No. 17140 (Court observing that "the methodology and result of the quantification of claims arising from pension obligations[] may be relevant to confirmation determinations").)

12. A disclosure statement must provide creditors with the information necessary "to make an informed judgment about the plan." 11 U.S.C. § 1125 (incorporated by PROMESA § 301(a)). As it stands, the Disclosure Statement confounds, rather than clarifies, any attempt by creditors to evaluate the Commonwealth's largest liability. This can be easily remedied by the Board's inclusion of clear, above-board, and complete disclosures on the topics addressed herein.

## CONCLUSION

For the foregoing reasons, the Disclosure Statement must be amended to disclose (a) the amount of the pension liability claim being allowed under the Plan; (b) whether the Retiree Committee Claim will be disallowed, and if allowed, in what amount; and (c) the bases on which, and methodology by which, the allowed pension liability amount was determined and calculated, including what discount rate was used (and how that determination was made), and from which data, reports, and analyses the allowed amount was derived.

---

Disclosure Statement's insistence that the Board sought expert assistance only for the limited purposes of verifying and understanding the Commonwealth's pension liabilities. (*See* DS at iii.)

[6] To the extent the Board is relying on Ernst & Young's analysis of future PayGo costs (which achieves its estimate through use of a discount rate, *see* DS Ex. I at 25-26), this belies the Board's suggestion that the discount rate is irrelevant. (*See* Board Response ¶ 3.)

Dated: June 25, 2021
      San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
           scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile: (212) 530-5219
    Email: ddunne@milbank.com
           amiller@milbank.com
           gmainland@milbank.com
           jhughes2@milbank.com
           johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com