**Hearing Date: August 4th, 2021**
**9:30 a.m. (AST)**
**Objection Deadline: July 20, 2021**
**4:00 p.m. (AST)**

**UNITED STATES DISTRICT COURT**
**DISTTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**URGENT MOTION REQUESTING A RULING OR ENTRY OF COMFORT ORDER AS TO THE NON-APPLICABILITY OF THE AUTOMATIC STAY TO A LIMITED CONTROVERSY WITH THE COMMONWEALTH OF PUERTO RICO ARISING POST-PETITION AND HAVING POST-PETITION EFFECTS BUT PARTIALLY BASED ON A PRE-PETITION JUDGMENT INCORPORATING MILK REGULATIONS ESTABLISHED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO AND NOT INVOLVING PROPERTY OF THE DEBTOR OR ITS ESTATE**

---

[1]The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

I.  SUMMARY OF ARGUMENT ................................................................................. 1-2
II. PROCEDURAL BACKGROUND.......................................................................... 2-4
III. ARGUMENT .............................................................................................................4
   A. THE ADMINISTRATIVE ORDER FAILS TO COMPLY WITH THE DISTRICT COURT ORDERS AND JUDGMENT, HARMING THE PROCESSING PLANTS 5-8
   B. PROCEEDINGS OR CLAIMS ARISING POST-PETITION ARE NOT SUBJECT TO THE AUTOMATIC STAY                              8-11
IV. CERTIFICATION AS TO URGENCY OF MATTER................................................. 11-12

## TABLE OF AUTHORITIES

### CASES

*Ezratty v. The Commonwealth of Puerto Rico,* 648 F. 2d 770 (1st Cir. 1981)……………………9
*In re Soares,* 107 F.3d at 975……………………………………………………………..9-10
*In re York,* 13 B.R. 757, 758 (Bankr.D.Me.1981)……………………………………….…10
*In re Powell,* 27 B.R. 146, 147 (Bankr.W.D.Mo.1983)……………………………………10
*In re Anderson,* 23 B.R. 174, 175 (Bankr.N.D.Ill.1982)………………………....………10
*In re York,* 13 B.R. 757, 758-59 (Bankr.D.Me.1981)………………………………....……10
*Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969, 971 (1st Cir.1997)……………...9
*Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.,* 33 B.R. 996, 999-1000
(N.D.Ga.1983)…………………………………………………………………………...10

### FEDERAL STATUTES

11 U.S.C. 363(a)(3) ...................................................................................... 11
362(a) ................................................................................................... 8, 9
362(a) ....................................................................................................10
11 U.S.C. § 922(a) ....................................................................................... 9
48 U.S.C. § 2101, et seq ...............................................................................2,12
48 U.S.C. § 2161 ........................................................................................ 2

### PUERTO RICO RULES AND REGULATIONS

Regulation No. 1 of June 11, 1957 ..............................................................................1
Regulation No. 12 of October 29, 2013 ……………………………………………………1, 6

### TREATISES

Alan N. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* ¶ 362.03 (16th ed. 2015)……….9

### ADMINISTRATIVE ORDERS

Administrative Order 2021-18 ...................................................................................1

### PUERTO RICO LAWS

5 L.P.R.A. Sec 1092(i) ...........................................................................................1

COMES NOW, creditor Suiza Dairy Corp. ("Suiza"), represented by the undersigned attorneys, and very respectfully avers and prays as follows:

## I. SUMMARY OF ARGUMENT

As it has been previously informed to this Honorable Court,[1] Suiza is one of only two fresh milk processors in Puerto Rico, serving the biggest portion of that market. In 2004, Suiza successfully challenged in federal court the constitutionality, as implemented, of the laws and regulations that govern the milk industry in Puerto Rico, particularly the Milk Industry Regulation Act, Act No. 34 of June 11, 1957, 5 P.R. Laws Ann. §§ 1092-1125 ("Act 34") and Regulation No. 1 of June 11, 1957 ("Milk Regulation No. 1") as subsequently amended, under the Takings Clause of the Constitution of the United States.

On October 29, 2013, the parties to the action filed their *Final Settlement Agreement and Memorandum of Understanding Between the Parties* (the "Prepetition Settlement Agreement") (ECF No. 2322). The Prepetition Settlement Agreement (which includes "Regulation No. 12") was incorporated into the final federal judgment ("Judgment") entered in Civil Case No. 04-1840.

On May 26, 2021, Mr. Javier A. Lugo Rullán, as Interim Administrator of the Office of Regulation of the Milk Industry (Spanish acronym "ORIL"), issued Administrative Order 2021-18 ("Administrative Order") (**Exhibits II, III and IV**). The Administrative Order prescribes a series of prices for the fluid milk as a result of an overall review of the milk prices in a manner that violates Regulation No. 12 and, therefore, the final Judgment entered in Civil Case No. 04-1840.

---

[1] See, *Urgent Motion Requesting A Ruling Or Entry Of Comfort Order As To The Non-Applicability Of The Automatic Stay To A Limited Controversy With The Commonwealth Of Puerto Rico Arising Post-Petition And Having Post-Petition Effects But Partially Based On A Pre-Petition Judgment Incorporating Milk Regulations Established By The United States District Court For The District Of Puerto Rico And Not Involving Property Of The Debtor Or Its Estate* [ECF No. 13938]

Suiza seeks a ruling or comfort order from this Court before initiating a proceeding with the sole purpose of enforcing the Judgment and its regulations against the Commonwealth of Puerto Rico.[2] Suiza seeks an order holding that the events giving rise to Suiza's enforcement of action constitute post-petition events, with post-petition effects, although they run afoul of holdings in a pre-petition federal judgment. More specifically, Suiza seeks a finding that it is not acting in contravention of the automatic stay provisions of Sections 362(a) and 922(a) of the Bankruptcy Code, incorporated by 48 U.S.C. § 2161 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101, et seq, in pursuing its enforcement action against the Commonwealth.

The remedy Suiza seeks to pursue is not intended to and cannot in any way result in a monetary award on account of amounts due to Suiza. All Suiza wants is to enforce the regulation that is part of a federal judgment so that the industry is regulated as per the Judgment. That is, Suiza is not attempting to enforce a prepetition monetary judgment notwithstanding the pendency of the Commonwealth's Title III bankruptcy proceeding. To the contrary, Suiza is merely seeking to preserve the *status quo* on the prospective regulatory aspects of the Judgment. The comfort order sought by Suiza can easily provide for that limited scope of action.

## II. PROCEDURAL BACKGROUND

On August 13, 2004, Suiza and Vaquería Tres Monjitas ("VTM" and together with Suiza, the "Processors") commenced an action captioned *Vaqueria Tres Monjitas, Inc., v. Secretary of Agriculture,* Civil Case No. 04-1840 (the "Prepetition Action"), in the United States District Court for the District of Puerto Rico (the "District Court"), against the Secretary of the

---

[2]  Suiza is currently intervener in a case filed Pre-Petition by the Puerto Rico Dairy Farmers Association seeking the same kind of regulatory remedy that Suiza obtained and is attempting to implement now with this petition. Said case is active and no stay issue has been raised. See *Puerto Rico Dairy Farmers Association v. Figueroa-Herrera, et al*, Civil No. 08-02191 (DRD).

Department of Agriculture for the Commonwealth and the Administrator of ORIL seeking, among other, declaratory and injunctive relief in connection with the Commonwealth's regulatory taking of Suiza's property through the implementation of certain laws and regulations governing the milk industry in Puerto Rico. The Processors alleged that Puerto Rico's regulatory scheme had deprived them of a reasonable rate of return and impermissibly favored milk produced by a third processor, Industria Lechera de Puerto Rico Inc. ("Indulac"), in violation of the Takings, Due Process, Equal Protection, and Commerce Clauses of the United States Constitution.

On October 29, 2013, the Processors, the Secretary of the Department of Agriculture, the Administrator of ORIL, and the Commonwealth, through the Secretary of Justice of the Commonwealth, entered into the Prepetition Settlement Agreement, which, among other things, provided for the settlement of all matters pending in the Prepetition Action and the enactment and enforcement of certain regulations regarding the milk industry. *See* ECF No. 2322 of Case No. 04-1840. On November 6, 2013, the District Court entered the Judgment incorporating the Prepetition Settlement Agreement. *See* ECF No. 2347 and 2351 of Case No. 04-1840.

On July 10, 2020, the Administrator of ORIL issued Administrative Order 2020-22, which disregarded Regulation No. 12 in its interpretation of surplus milk.

On August 3, 2020, Suiza filed with this Court an *Urgent Motion Requesting A Ruling Or Entry Of Comfort Order* [ECF No. 13938] requesting that this Honorable Court enter a "ruling or comfort order finding that Suiza [was] not acting in contravention of the automatic stay provisions […] nor [was] attempting to exercise control over or obtain possession over property of the estate in pursuing" a potential legal action to challenge the Administrative Order 2020-22 issued by the Administrator of ORIL.

3

On August 27, 2020, the Debtor filed its objection to the Motion for Comfort Order [ECF No. 14118] and on September 9, 2020, Suiza filed its Reply to the Objection [ECF No. 14198].

On March 26, 2021, and because Administrative Order 2020-22 was nullified by the Puerto Rico Court of Appeals, this Honorable Court found that Suiza's argument that ORIL engaged in conduct in violation of the Pre-Petition Settlement Agreement and Pre-Petition Judgment by issuing Administrative Order 2020-22 no longer presented a live controversy, and, thus, "any order from this Court regarding the applicability of the automatic stay to the Enforcement Action would be an impermissible advisory opinion". See ECF No. 16237, p. 9. As a result, Suiza's Motion for Comfort Order was denied as moot, "**without prejudice to requests for relief in connection with ongoing conduct.**" (emphasis added). Id., p. 10.

On May 26, 2021, Mr. Javier A. Lugo Rullán, as Interim Administrator of ORIL, issued a new Administrative Order, effective on June 10, 2021, <u>following a series of procedures and calculations that violate Regulation No. 12 and, therefore, the final Judgment entered in Civil Case No. 04-1840, as explained below</u>.

### III.    ARGUMENT

In the July 13th, 2007 *Amended Opinion and Order Granting the Preliminary Injunction*, the District Court found that the Administrator of ORIL had "created a price scheme wherein the local manufacturer of UHT [Indulac] purchase[d] raw milk at below cost of production of the dairy farmers while the milk processors, in order to make up the economic deficit, [paid] substantially over cost and reasonable profit rates for the same raw milk."[3] Back then, "UHT [was] regulated in Indulac's favor as to the price paid for the fresh raw milk to the dairy farmer.

---

[3] ECF No. 480 of Civil Case No. 04-1840, p. 44.

4

The UHT milk [was] not regulated at the price to the consumer.".[4] As a direct result, "[f]or many years, the fresh milk producers ha[d] been financing the low cost of raw milk paid by the UHT local manufacturer."[5]

Pursuant to the Prepetition Settlement Agreement, the District Court ordered ORIL to implement non-discriminatory, rational, and scientific regulatory standards to determine costs and fair profits for all participants in the Puerto Rico regulated milk market and called for ORIL to establish a system to provide mitigation for the losses sustained by the plants through a regulatory accrual.

### A. THE ADMINISTRATIVE ORDER FAILS TO COMPLY WITH THE DISTRICT COURT ORDERS AND JUDGMENT, HARMING THE PROCESSING PLANTS.

During the litigation, the District Court issued multiple Orders noting ORIL's noncompliance with its rulings and the Prepetition Settlement Agreement. The Court detailed these instances in the September 23, 2013 *Amended Opinion and Order Nunc Pro Tunc.*[6]

---

[4] Id.

[5] Id.

[6] The court noted:

> [T]he defendants "have also failed to calculate the regulatory accrual, which must be calculated to establish plaintiffs' equity, by using the correct dates." *See* Docket No. 1965, page 7. "Further, defendants have arbitrarily adjusted the regulatory accrual beginning in December 2002 up to this date." *Id.* "As of this date, the defendants [have] yet to make whole, as to a fair rate of return, to be granted to plaintiffs, which commences with the calculation of the ROE, return of equity, which was ordered to include the yearly regulatory accrual." *Id.* "VTM had prior thereto proposed similar arguments at Docket No. 1896 in Dr. Freyre's Report, *see* Docket No. 1896-1, pages 24 to 26." *Id.*

> The Court reminded the defendants all the times during the course of the instant case, that the defendants have been warned, "when admonishing them [the defendants] that 'every day that goes by without Suiza receiving its constitutionally mandated revenue requirement only increases Suiza's, (and VTM's), amount of regulatory accrual,' *see* Docket No. 1891 at page 11." *See* Docket No. 1965, page 8. "But even without the inclusion of the regulatory accrual, which constitutes an equitable redress, ORIL has failed to comply." *Id.*

ECF No. 2289 of Civil Case No. 04-1840, p. 32.

5

However, the new Administrative Order once again[7] fails to comply with the District Court Orders and Judgment, harming the processing plants.

That is, Regulation No. 12, confirmed by the Judgment, establishes that "participants in a regulated market have the right to recover their costs and obtain reasonable profits that justify their investment".[8]  It also states that "ORIL could not impose any cost or charge on the fluid milk processing plants to subsidize, pay, credit (or any synonym) to give one of the fluid milk processing plants funds for its operation" and that it could not "create a mechanism that will allow one fluid milk processing plant to obtain a competitive advantage for its products and being financed by the other milk processing plants."[9]

After nearly eight years since the implementation of Regulation No. 12, ORIL rejects the fact that processing plants are entitled to a margin that covers their expenses and provides the opportunity to obtain a reasonable return. In fact, the maximum margin of 73.1 cents per quart in the Administrative Order does not even cover the 78.3 cents of expenses per quart that Suiza presented in its last price report submitted to ORIL.

---

[7] In its *Amended Opinion and Order* at Docket No. 2289, the Court also found that ORIL and its expert were in contempt for their habitual failure to implement a pricing structure that would allow processing plants to recover their costs and have the opportunity to obtain a reasonable return. The Court emphatically ordered that ORIL implement a fair pricing structure and admonished ORIL for its failure to comply with its duties:

> The Court, amongst other episodes, has observed ORIL's sheer refusal to adopt a non-discriminatory pricing formula based on rational, scientific and economic methods; apparently indifferent to the pending litigation, ORIL has, time and again, attempted to implement an unjust pricing formula at the expense of milk producers in violation of the Due Process Clause.  The Court, sadly, recognizes that after years of litigation, of hearings upon hearings, little to no progress has been made to remedy the Constitutional violations that were the basis for the preliminary injunction.

*Amended Opinion and Order Nun Pro Tunc*, Docket No. 2289, Civil Case No. 04-1840, September 23, 2013, p. 83.

[8]  Regulation 12, Docket No. 2322-1, Civil Case No. 04-1840, October 29, 2013, p. 4.
[9] Regulation 12, Docket No. 2322-1, Civil Case No. 04-1840, October 29, 2013, p. 29.

Additionally, the Administrative Order maintained the price of the UHT milk while, at the same time, established that the regulatory accrual on UHT will be provisionally paid by the Government. See **Exhibit V**. The regulatory accrual for fluid milk sold by the Processors is included in their price. To the extent that these two are creditors of the regulatory accrual, that portion is collected from their own sales. Since Indulac and the importers collect the regulatory accrual that they owe to the Processors in the price of their product, but now they will retain it for themselves, the Processors are being imposed a charge equivalent to the regulatory accrual held by Indulac and the importers for their own benefit.

In the same manner, the Administrative Order subtracts the regulatory accrual charged by the plants from the amount of regulated capital used in the margin calculation. Therefore, the Processors are financing Indulac and the importers of UHT milk since they collect the regulatory accrual and retain it, making it part of their profit margin. Because of this, and given that the price of the UHT milk did not change, the demand for this product increases while a profit margin is provided exclusively to Indulac and the importers, directly affecting the sale of fresh milk by the Processors. [10]

---

[10] The Administrative Order also: **a) uses an incorrect definition of the expenses account**, underestimating, as a direct consequence, the amount to be included therein, disallowing some $553,556 of the expenses reported by the plants in this account and disallowing a portion of Suiza's Cash on Hand asset account that includes adjustments related to this amortization; **b) Uses stale data,** in violation of the Preliminary Injunction at ECF No. 480 in Civil Case No. 04-1840, p. 62, which provides that stale data cannot be used in the regulatory process, as to do so contributes "arbitrary" regulatory practice; **c) uses discriminatory, irrational, and nonscientific disallowances to Regulated Costs,** disallowing nearly $16 million operating costs presented by the processing plants and does not provide a description of the specific calculations conducted to determine the disallowances in each expense account, even when several of the disallowances proposed by ORIL mirror disallowances ORIL has attempted to make in the past that have been rejected by the Federal Court; **d) Orders the Government to pay the regulatory accrual of UHT milk,** violating the first paragraph of page 29 of Regulation 12 by giving Indulac and UHT milk importers a competitive advantage over fresh milk producers and violating the Interstate Commerce Clause by giving a targeted subsidy to producers for a given product to the detriment of producers in other states where the competing product is imported; and **e) Subtracts the regulatory accrual charged by the plants from the amount of regulated capital used in the margin calculation**, which is a violation of the Judgment and Regulation 12. Regarding this last item, the District Court has already determined that not including regulatory accrual in the calculation of the regulated margin is a violation of its Orders. The Court found that ORIL has "refused for years after the execution of the stipulation

To date, ORIL has failed to demonstrate that the proposed fresh milk prices are supported by evidence and justified by the regulatory framework to consider reasonable and non-arbitrary prices. Any change in regulated prices without the justification of the methodologies and procedures of Regulation 12 would not comply with the District Court Judgment. Because of this, and for the reasons explained below, Suiza respectfully requests that this Honorable Court enter a ruling or comfort order finding that it is not acting in contravention of the automatic stay provisions in pursuing the course of action stated in this motion.

## B. PROCEEDINGS OR CLAIMS ARISING POST-PETITION ARE NOT SUBJECT TO THE AUTOMATIC STAY

In an abundance of caution, Suiza first seeks the entry of an Order by this Honorable Court finding that no violation of the automatic stay under Sections 362(a) and 922(a) of the Bankruptcy Code, incorporated by 48 U.S.C. § 2161, will take place if Suiza defends its interests as stated above.

11 U.S.C. § 362(a) provides as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate;

---

to accept the inclusion of the regulatory accrual as one of the factors within the formula leading to compensation…the conduct of the defendants is deplorable and contemptuous." ECF No. 2289, Civil Case No. 04-1840, September 23, 2013, p. 66.

8

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

As it pertains to 11 U.S.C. § 922(a), it provides as follows:

(a) A petition filed under this chapter operates as a stay, in addition to the stay provided by section 362 of this title, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor; and

(2) the enforcement of a lien on or arising out of taxes or assessments owed to the debtor.

The automatic stay in 11 U.S.C. § 362(a) is one of the basic protections under the Bankruptcy Code and becomes operative by the filing of the bankruptcy petition. *Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969, 971 (1st Cir.1997). The automatic stay is extremely broad in scope and, "aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." Alan N. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* ¶ 362.03 (16th ed. 2015). Furthermore, the automatic stay also protects creditors since it prevents the "dismemberment of a debtor's assets by individual creditors levying on the property. This promotes the bankruptcy goal of equality of distribution" *Id.* The automatic stay provides debtors with one of the cornerstone protections under bankruptcy law, giving debtors a "breathing room" from the pressures of their creditors. *See In re Soares,* 107 F.3d at 975. Given its utmost importance in the

9

bankruptcy system, courts "must display a certain rigor in reacting to violations of the automatic

stay." *In re Soares,* 107 F.3d. at 975–976.

The term "claim" means— (A) ***right to payment,*** whether or not such right is reduced to

judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of

performance ***if such breach gives rise to a right to payment,*** whether or not such right to an

equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed,

undisputed, secured, or unsecured. (Emphasis ours). As indicated, Suiza would not be seeking

payment of any kind against the debtor or the estate. Furthermore, a federal court may not award

damages against the Commonwealth of Puerto Rico because of the 11th Amendment. See *Ezratty*

*v. The Commonwealth of Puerto Rico,* 648 F. 2d 770 (1st Cir. 1981).

Despite the broad reach of the automatic stay, it is not all encompassing. Section 362(b),

for example, provides exemptions from the automatic stay. The Code requires that the

proceeding stayed "was or could have been commenced" before filing or that the proceeding was

based on a claim that arose pre-petition. Sec. 362(a)(1); see *In re York,* 13 B.R. 757, 758

(Bankr.D.Me.1981). Proceedings or claims arising post-petition are not subject to the automatic

stay. See, e.g., *Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.,* 33 B.R. 996, 999-1000

(N.D.Ga.1983); *In re Powell,* 27 B.R. 146, 147 (Bankr.W.D.Mo.1983); *In re Anderson,* 23 B.R.

174, 175 (Bankr.N.D.Ill.1982); *In re York,* 13 B.R. 757, 758-59 (Bankr.D.Me.1981).

The cause of action to be pursued by Suiza arises out of post-petition events, and has

solely post-petition effects, therefore it does not run contrary to the stay provisions stated in

Sections 362(a) and 922(a) cited above. Moreover, Suiza is not claiming against an officer of the

Commonwealth for a pre-petition claim or breach by the government, therefore Section 922(a) is

10

inapplicable. Suiza's intended action does not seek to obtain control or possession of property of the estate. See, 11 U.S.C. 363(a)(3). To the contrary, it will increase the benefit to the estate since the Government will ultimately benefit from the District Court's ruling revoking the Administrative Order that unlawfully puts the burden on the Government to pay for the regulatory accrual in violation of the Judgment.

The remedies to be sought by applicant herein do not involve the collection by Suiza of any monetary remedy in its favor determined in the pre-petition judgment, nor the advancement of any pre-petition collection of money action or breach of contract cause of action against the Commonwealth or ORIL. Suiza intends to get redress for the post-petition actions taken by ORIL, which have solely post-petition effects that will cause actual damages to Suiza. Thus, the declaratory or comfort order remedy being sought in the instant motion is proper.

## IV. CERTIFICATION AS TO URGENCY OF MATTER

The undersigned certify that they have carefully examined the matter and have concluded that there is a true need for an urgent ruling or entry of a comfort order, the urgency has not been crested through a lack of due diligence, they have made a bona fide effort to resolve the matter without this Court's intervention.

To that effect, on June 9th, 2021, Mr. José Moscoso, Suiza's General Manager, sent an email to Mr. Javier A. Lugo Rullán, ORIL's Interim Administrator, objecting to the Administrative Order's adverse effect on the local producers and the resulting benefit to importers of UHT milk, who would be able to take advantage of the shifting of fresh milk consumers due to demand elasticity effects without any impact on their margins, generating profits to market or promote even more dairy products on the Island.

11

On June 10th, 2021, Mr. Lugo Rullán denied, by email, that their actions were aimed at benefiting any sector but did not address Suiza's particular claims. That same day, Mr. Moscoso replied to the Interim Administrator's email and stated that, despite the evidence as to the negative effects that Suiza was posing and the negative impacts and risks that the Administrative Order entails, their claims were being ignored. Mr. Moscoso expressed his good will and his hopes that the technical analysis that Suiza produced would be considered by ORIL but received no further response thereafter.

WHEREFORE, Suiza respectfully requests that the Court:

a) enter a ruling or comfort order finding that Suiza is not acting in contravention of the automatic stay provisions of Sections 362(a) and 922(a) of the Bankruptcy Code, incorporated by 48 U.S.C. § 2161 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101, et seq., nor is attempting to exercise control over or obtain possession over property of the estate in pursuing the cause of action stated in this motion;

b) order the Financial Oversight and Management Board to file its response forthwith, if applicable;

c) that the Court provide any other relief in favor of Suiza it deems proper.

**RESPECTFULLY SUBMITTED.**

*(Signatures in next page.)*

Dated: June 25, 2021

REICHARD & ESCALERA, LLC
*/s/ Rafael Escalera Rodríguez*
Rafael Escalera Rodríguez
USDC-PR No. 122609
escalera@reichardescalera.com

*/s/Sylvia M. Arizmendi*
Sylvia M. Arizmendi
USDC-PR No. 210714
arizmendis@reichardescalera.com

/s/Fernando Van Derdys
Fernando Van Derdys
USDC-PR 201913
fvander@reichardescalera.com

*/s/ Alana Vizcarrondo-Santana*
Alana Vizcarrondo-Santana
USDC-PR No. 301614
vizcarrondo@reichardescalera.com

*/s/ Christopher A. Dávila*
Christopher A. Dávila
USDC-PR No. 304103
cdavila@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888

## CERTIFICATE OF SERVICE

I hereby certify that, on June 25, 2021, I filed the instant motion through the Court's CM/ECF

system, which will send notification of such filing to all CM/ECF participants, in compliance

with the case management order in the case.

/s/Christopher A. Dávila

13