# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

## DEBTORS' OMNIBUS REPLY IN SUPPORT OF THEIR MOTION FOR AN ORDER ESTABLISHING, AMONG OTHER THINGS, PROCEDURES AND DEADLINES CONCERNING OBJECTIONS TO CONFIRMATION AND DISCOVERY IN CONNECTION THEREWITH

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ........................................................................................................... 3

OMNIBUS REPLY ....................................................................................................... 3

I.  Initial Objections .............................................................................................. 4

II. Limitations on Permissible Discovery, and the Process for Raising Discovery
    Disputes with the Court .................................................................................... 6

III. The Plan Depository ......................................................................................... 10

IV. The Discovery and Confirmation Schedule ...................................................... 12

CONCLUSION .......................................................................................................... 13

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Espinal v. Coughlin*,
   No. 98-2579, 1999 WL 1063186 (S.D.N.Y. Nov. 23, 1999) ..................................................7

*In re Atlantic Pipe Corp.*,
   304 F.3d 135 (1st Cir. 2002) ...............................................................................................12

*In re Energy Future Holdings Corp. et al.*,
   No. 14-cv-10979 (Bankr. D. Del. July 2, 2015) [ECF No. 7916] .........................................8

*In re Enron Corp.*,
   No. 01-16034 (AJG) (Bankr. S.D.N.Y. Feb. 13, 2004) [ECF No. 16233] ............................4

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   385 F. Supp. 3d 130 (D.P.R. 2019) ...................................................................................11

*In re Maxus Energy Corp.*,
   No. 16-11501 (Bankr. D. Del. Feb. 17, 2017) [ECF No. 907] ..............................................8

*In re Scott*,
   No. 07-40001, 2007 WL 1555814 (Bankr. N.D. Ind. May 11, 2007) ...................................12

*New England Terminal Co. v. Graver Tank & Mfg. Corp.*,
   1 F.R.D. 411 (D.R.I. 1940) ..................................................................................................7

OTHER AUTHORITIES

Fed. R. Civ. P. 26 ..............................................................................................................................4

S.D.N.Y. L.R. 33.3(b) .......................................................................................................................7

**To the Honorable United States District Judge Laura Taylor Swain:**

The Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth and ERS, the "Debtors," and each individually a "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' sole Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submit this omnibus reply (the "Omnibus Reply") in support of the *Motion of Debtors for an Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. 16757] (the "Confirmation Procedures Motion" or "Conf. Proc. Mot.").

## PRELIMINARY STATEMENT

1.      The Confirmation Procedures Motion sets forth a proposed schedule and procedures to efficiently and expediently move towards confirmation of a plan of adjustment, so that the Debtors can exit these Title III cases. Without setting aside the need for such expediency, however, the Confirmation Procedures Motion also ensures that all parties have an opportunity to be heard in a manner that recognizes the magnitude and complexity of the Title III cases. Notwithstanding the Debtors' efforts to address these multiple goals, numerous parties have filed objections to the Confirmation Procedures Motion. Although some of these objections propose, at least in part, changes to the relief sought in the Confirmation Procedures Motion that would

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101-2241.

1

assist all parties moving forward,[3] the majority would needlessly complicate, hinder, and/or delay the Debtors' confirmation process.

2.      For the Court's ease in reviewing the objections filed against the Confirmation Procedures Motion, attached hereto as **Appendix A** (the "Omnibus Reply Chart") is a chart that summarizes the Debtors' responses to the objections filed by the following parties:

- *Response and Objection of Individual Bondholder* ["Hein"] *to Debtors' Motions for Orders Establishing Confirmation Procedures, and Cross-Motion to Establish a Committee to Represent Retail Investors in the Confirmation Process* [ECF No. 16909];

- *Objection of the DRA Parties* ["DRA Parties"][4] *to the Motion of Debtors for an Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery In Connection Therewith* [ECF No. 16997];

- *Objection of Ambac Assurance Corporation* ["Ambac"] *and Financial Guaranty Insurance Company* ["FGIC"] *to the Board's Disclosure Statement Approval Motion and Confirmation Procedures Motion* [ECF No. 16998];

- *The Puerto Rico Fiscal Agency and Financial Advisory Authority's Limited Objection to Motion of Debtors for an Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ ("AAFAF") [ECF No. 17014]; and

- *Omnibus Objection of Official Committee Of Unsecured Creditors* [the "Committee," and together with Mr. Hein, the DRA Parties, Ambac/FGIC, and AAFAF, the "Objecting Parties," and each an "Objecting Party"] *to (I) Disclosure Statement for Third Amended Title III Joint Plan of Adjustment of Commonwealth of Puerto Rico, et al. and (II) Related Motions* [ECF No. 17017] (collectively, the "Objections," and each an "Objection").

---

[3] The Debtors have agreed to modify certain aspects of the proposed confirmation procedures in response to certain aspects of the Objections, as well as to certain comments received. The Debtors' revised proposed Confirmation Discovery Procedures are attached hereto as Exhibit 1. A redline showing the modifications is attached hereto as Exhibit 2.

[4] The "DRA Parties" collectively refers to AmeriNational Community Services, LLC, as servicer for the GDB Debt Recovery Authority, and Cantor-Katz Collateral Monitor LLC.

3.      As set forth in the Omnibus Reply Chart, none of the Objections merits the relief requested therein.   This is because the Objections, in large part, either seek to needlessly complicate and delay the procedures proposed by the Debtors, or are rendered moot by the Debtors' amendments to such procedures.   The Court, all parties-in-interest, and the Debtors will benefit from the Debtors' proposed procedures (as amended), which procedures promote the efficient and economical use of the Debtors' limited resources and conserve judicial resources by streamlining the factual issues to be presented at the confirmation hearing.

## BACKGROUND

4.      On May 13, 2021, the Debtors filed the Confirmation Procedures Motion, which proposed to establish procedures and deadlines regarding discovery in connection with confirmation of the plan of adjustment.   Pursuant to the Court's *Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, (III) Approving Form of Notice Thereof, (IV) Establishing Document Depository Procedures In Connection Therewith, and (V) Granting Related Relief* [ECF No. 16681], the deadline to object to the Confirmation Procedures Motion was June 15, 2021.

5.      On June 15, 2021, the Objections, totaling approximately 100 combined pages, were filed.

## OMNIBUS REPLY

6.      Herein, the Debtors address the following arguments made by various Objectors: (*i*) the timing, process, and scope of Initial Objections;[5]  (*ii*) limitations on permissible discovery

---

[5] Capitalized terms not defined herein shall have the definitions ascribed to them in the Confirmation Procedures Motion.

prior to the Confirmation Hearing; (*iii*) the Plan Depository; and (*iv*) the proposed schedule for discovery and confirmation, including the schedule for the Confirmation Hearing. In doing so, the Debtors illustrate the merits of the relief requested and that the Objectors' Objections, to the extent not rendered moot, should be overruled.

## I. Initial Objections

7. The Confirmation Procedures Motion sets forth a procedure by which parties or parties in interest may file an Initial Objection to confirmation of the Plan. As proposed, Initial Objections must include the legal and factual basis for the Eligible Creditors' objection to confirmation of the Plan. The Debtors' proposal of an initial and supplemental objection scheme is not without precedent. *See In re Enron Corp., et al.*, 01-16034 (AJG) (Bankr. S.D.N.Y. Feb. 13, 2004), *Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. 16233]; Conf. Proc. Mot. ¶ 29 (citing to *Enron* and explaining "[s]imilar procedures have been approved in other, large complex chapter 11 cases with many overlapping issues"). As in *Enron*, this Court should establish a discovery regime that comports with the proportionality requirements of Federal Rule of Civil Procedure ("FRCP") 26(b)(1). By focusing discovery on the Plan to topics identified in Initial Objections, the Debtors' proposed process does exactly that.

8. Several Objecting Parties contend the Initial Objections framework should be rejected, because: (*i*) the Confirmation Procedures Motion does not provide sufficient information about what should be included in the Initial Objections (Ambac/FGIC Obj. ¶ 14, DRA Obj. ¶ 10); (*ii*) the deadline to file Initial Objections is too early (Hein Obj. at 7, DRA Obj. ¶ 8, Ambac/FGIC Obj. ¶ 17, UCC Obj. ¶ 172); and (*iii*) the scope of discovery should not be limited to the bases set forth in the Initial Objections (Hein Obj. at 7-8, DRA Obj. ¶ 7, Ambac/FGIC Obj. ¶¶ 9-12, UCC Obj. ¶ 169). None of these complaints merits revisions to the Debtors' proposal.

4

9.      *First*, no additional details beyond those set forth in the Confirmation Procedures Motion (¶ 40) are needed regarding the content of Initial Objections because the Confirmation Procedures Motion is already clear. As set forth therein, Initial Objections must provide the legal and factual bases of an Eligible Creditor's objection, and serve as a starting point for Eligible Creditors to contest the Plan prior to the Confirmation Hearing and to participate in the discovery process. In their Supplemental Objections, creditors will have the opportunity to provide additional details regarding their objections to the Plan based on information produced in connection with Plan discovery.[6]  Moreover, given that prior iterations of the Plan have been available since February 2020, many of the Objectors who intend to object to the Plan already know the bases for their forthcoming objections. Thus, the information provided in the Confirmation Procedures Motion regarding what must be included in Initial Objections is sufficient.

10.      *Second*, although the Confirmation Procedures Motion sets August 3, 2021 as the deadline for Eligible Creditors to file Initial Objections, Conf. Proc. Mot. ¶ 40(b), the Debtors will mail the notice of the times for filing objections to, and the hearing to consider, the confirmation of the plan of adjustment (the "Confirmation Hearing Notice") by the later of July 20, 2021 or five (5) business days after entry of the order approving the Disclosure Statement. *Id.* ¶ 44. The Confirmation Hearing Notice provides creditors who have not been following these proceedings with information regarding how to access the Plan, including (i) from Prime Clerk's website at https://cases.primeclerk.com/puertorico/; (ii) by telephoning Prime Clerk at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m.

---

[6] For the avoidance of doubt, the proposed procedures do <u>not</u> preclude parties from raising additional objections in their supplemental objections that were not raised in an Initial Objection.

to 7:00 p.m. (Atlantic Standard Time) (Spanish available); or (iii) by emailing Prime Clerk at puertoricoinfo@primeclerk.com. Accordingly, all creditors will have sufficient time to review the Plan before filing their Initial Objections. Further, through information provided in the Disclosure Statement, prior versions of the Plan, and documents currently available on the Disclosure Statement Depository, creditors already have relevant information to provide the legal and factual bases of their Initial Objections.

11.     *Third*, the Confirmation Procedures Motion's proposal that discovery be permitted only on topics identified in the Initial Objections is not as limiting as the Objectors suggest. All Eligible Creditors will have the opportunity to review discovery obtained by other creditors, and can incorporate that discovery into the next phases of the confirmation process, including depositions. Each creditor can also assert arguments in their Supplemental Objections based on any information learned during discovery. As explained in the Confirmation Procedures Motion (¶ 35), the Debtors will upload documents produced in response to Eligible Creditors' discovery requests to the Plan Depository. All Eligible Creditors will therefore have access to such documents and can incorporate any information provided in response to any other Eligible Creditor's discovery requests into their Supplemental Objections. Accordingly, the Initial Objections serve as the basis to streamline topics for discovery going forward.

## II.     Limitations on Permissible Discovery, and the Process for Raising Discovery Disputes with the Court

12.     For similar reasons as explained above, the Confirmation Procedures Motion sets various guidelines regarding the discovery requests Eligible Creditors may propound on the Debtors in connection with confirmation. Several of the Objecting Parties contend those guidelines are baseless, inappropriate limitations on their right to obtain discovery. Specifically, the Objecting Parties argue that: (*i*) creditors should not be precluded from serving interrogatories

6

(Hein Obj. at 13, Ambac/FGIC Obj. ¶ 29, UCC Obj. ¶ 177), (*ii*) requests for admission should not be limited to authentication issues (Ambac/FGIC Obj. ¶ 27, DRA Obj. ¶¶ 24-25), (*iii*) there is no basis for a certification setting forth why a request for production is reasonably necessary given the information in the Plan Depository (Hein Obj. at 22-23, Ambac/FGIC ¶ 5, UCC ¶ 177); (*iv*) Eligible Creditors should have an opportunity to serve follow-up discovery requests (Ambac/FGIC Obj. ¶ 5, DRA Obj. ¶ 18); (*v*) the schedule should have separate timetables for fact and expert depositions (Ambac/FGIC Obj. ¶ 38, DRA Obj. ¶ 27); and (*vi*) there should be no *ex parte* communications with the Court regarding discovery disputes (Ambac/FGIC Obj. § III). With the exception of objections (*v*) and (*vi*) above, none of these objections merits changes to the reasonable procedures the Debtors proposed.

13.     *First*, as recognized by several courts, interrogatories and requests for admission are inefficient discovery mechanisms when document requests and depositions are available. *See, e.g.*, S.D.N.Y. L.R. 33.3(b) ("During discovery, interrogatories other than those seeking information [regarding identity of witnesses, locations of documents, or computation of damages] may only be served (1) if they are a more practical method of obtaining the information sought than a request for production or a deposition, or (2) if ordered by the Court"); *see also New England Terminal Co. v. Graver Tank & Mfg. Corp.*, 1 F.R.D. 411, 413-14 (D.R.I. 1940) ("In actual effectiveness interrogatories are far inferior to the oral examination. Their defects are quite obvious . . . ") (citation omitted); *Espinal v. Coughlin*, No. 98-2579, 1999 WL 1063186, at *2 n.2 (S.D.N.Y. Nov. 23, 1999) (observing that "the use of interrogatories is limited" and should only "be permitted if they are a more practical method of discovery than a deposition"). Here, given the size and complexity of the Plan and the Title III cases, document requests and depositions are more efficient means of providing information to Eligible Creditors regarding the Plan than

7

interrogatories. Moreover, given the Debtors' (and many other parties') interest in exiting Title III as efficiently and expeditiously as possible, responding to formal interrogatories would be impractical and would waste the Commonwealth's limited resources when other, more effective means of discovery are available. Accordingly, interrogatories are not appropriate for the proposed discovery procedures here.

14.     *Second*, the Confirmation Procedures Motion limits the scope of requests for admission to authentication of documents intended to be offered as exhibits at the Confirmation Hearing. Confirmation Procedures Motion ¶ 49(b). Such a limitation on the scope of requests for admission is an accepted feature of confirmation discovery protocols. *See, e.g.*, *In re Energy Future Holdings Corp. et al.*, No. 14-cv-10979 (CSS), *Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection With the Confirmation of Debtors' Plan of Reorganization, and (C) Revising Certain Dates in the Disclosure Statement Scheduling Order* [ECF No. 4916] (Bankr. D. Del. July 2, 2015) ("*Energy Future Order*") ¶¶ 15, 16 (requiring leave of court to serve requests for admission); *In re Maxus Energy Corp.*, No. 16-11501 (CSS), *Order Establishing Discovery Procedures in Connection With the Settlement Motion and Plan Confirmation* [ECF No. 907] (Bankr. D. Del. Feb. 17, 2017) ¶ 5 (denying use of interrogatories or requests for admission except in limited circumstances with leave of court). As with interrogatories, document requests followed by depositions are a more efficient method of providing information to Eligible Creditors that would, in other circumstances, be put forth in responses to requests for admission.[7]

---

[7] Notwithstanding the above, however, the Debtors recognize the schedule proposed in the Confirmation Procedures Motion sets the same deadline (August 6, 2021) for requests for production of documents and requests for admission. As pointed out by certain Objectors (DRA Obj. at 17), this schedule does not provide Eligible Creditors with a means of serving requests for admission regarding the authenticity of documents produced in response to these document

15.     *Third*, the Confirmation Procedures Motion requires Eligible Creditors seeking to propound Production Requests on the Debtors to certify the relationship between such requests and their Initial Objections, as well as to set forth why their Production Requests are "reasonably necessary given the availability of information in the Plan Depository." Conf. Proc. Mot. ¶ 50. Certain Objectors claim this certification requirement "appears to serve no other purpose than to require creditors to jump through even more hoops and to give the Board another basis for denying discovery." Ambac/FGIC Obj. ¶ 25. Not so. The certification requirement is intended to promote the efficiency and savings created by these procedures, and ensure that Eligible Creditors comply with the spirit of the procedures ordered by the Court. Without a certification requirement, Eligible Creditors could ignore the Plan Depository and nonetheless serve the Debtors with discovery demands—requiring the Debtors to expend resources to respond to requests for information already in the Plan Depository. The certification requirement will reduce this risk, recognizing that the Debtors already have undertaken to make relevant documents relating to the Plan available in the Plan Depository. Asking Eligible Creditors to certify that they have reviewed the documents in the Plan Depository before propounding Production Requests on the Debtors is minimally burdensome in relation to the costs that would be imposed on the Debtors if they need to respond to numerous duplicative requests. So, too, with the requirement that Eligible Creditors certify their Production Requests are related to the topics set forth in their Initial Objection. Given the breadth of these Title III cases, the Debtors are warranted in ensuring an Eligible Creditor's request for production of documents is actually related to its objections to the Plan.

requests. Accordingly, the Debtors are agreeable to setting a deadline of September 7, 2021 for Eligible Creditors to serve requests for admission related solely to the authenticity of documents produced in response to requests for production of documents served on or before August 6, 2021.

16.     *Fourth*, the Objectors' request for follow-up requests for production of documents is impracticable, given, as noted above, the size and complexity of these Title III cases. Should the parties be authorized to serve follow-up requests, the Debtors would find themselves inundated with unending discovery demands, such as has occurred throughout these Title III cases, potentially extending confirmation for an indefinite period of time. Furthermore, because the Debtors will put documents produced in response to all Production Requests in the Plan Depository, all Eligible Creditors will have the opportunity to review discovery obtained by other creditors, and can incorporate that information into their confirmation hearing preparation.

17.     Notwithstanding the above, the Debtors agree to make the following changes to the Confirmation Procedures, in light of certain concerns raised by the Objectors:

- As indicated above, setting a deadline of September 7, 2021 for Eligible Creditors to serve requests for admission relating solely to the authenticity of documents produced by the Debtors in response to Production Requests;

- Providing separate time periods for fact and expert depositions, with fact depositions taking place from September 13 through September 22, 2021, and expert depositions taking place from September 23 through October 4, 2021; and

- Providing that all parties involved in a discovery dispute are represented on a call to inform the Court of the existence of such dispute.

## III.     The Plan Depository

18.     As described in the Confirmation Procedures Motion, the Debtors intend to make available to Eligible Creditors a Plan Depository with documents relevant to Plan confirmation. Conf. Proc. Mot. ¶ 35. The Debtors are already using this depository for documents relating to the

10

Disclosure Statement, which has provided all Eligible Creditors who request access with documents relating to the Disclosure Statement in advance of the Disclosure Statement Hearing.[8]

19.     Notwithstanding the current successful usage of an identical procedure in connection with the Disclosure Statement, several parties have objected to certain aspects of the Confirmation Procedures Motion's proposal to establish a Plan Depository.   None of these objections has merit, as explained in the Omnibus Reply Chart.

20.     In particular, the UCC contends the Debtors should be required to prepare a privilege log in connection with the Plan Depository (UCC Obj. ¶ 177).   The requirement is unnecessary and unworkable.   The purpose of the Plan Depository is to make available "Debtors' relevant *non-privileged* documents relied upon by Debtors in analyzing the various claims and causes of action being compromised and settled and/or assets referenced in Article II of the Plan," "Debtors' relevant *non-privileged* documents concerning the Best Interests Test Reports set forth in the Disclosure Statement," and other non-privileged documents related to confirmation.   Conf. Proc. Mot. ¶ 35 (emphasis added).   Given the scope of the Debtors' review of documents in connection with populating the Plan Depository, a privilege log is unnecessary.   As a general matter, communications and drafts are materials typically subject to being withheld from production and recorded on a privilege log on the basis of privilege.   Communications are often of minimal, if any, relevance, and their review is highly burdensome because of the likelihood they may contain privileged material.   *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 385 F. Supp. 3d 130, 135-37 (D.P.R. 2019).   Drafts are likewise often of minimal relevance, and are highly likely

---

[8] The Disclosure Statement Depository was opened on May 7, 2021.   Since that date, approximately 130 creditors have requested access.   The Debtors provided technical support hotlines in English and Spanish to aid creditors with questions regarding seeking access to and using the Disclosure Statement Depository, and plan to continue hosting these hotlines for the Plan Depository.

to be privileged.  *Id.* at 137-38 (finding draft spreadsheet analyses were properly withheld pursuant to deliberative process privilege).  For those reasons, the Debtors do not intend to review either drafts or communications prior to populating the Depository, and accordingly, creating a privilege log would require a vast amount of work and resources with no corresponding benefit.

21.     Notwithstanding the above, and although the Debtors believe communications and drafts are irrelevant for purposes of Plan confirmation, the Debtors are willing to revisit whether the creation of a categorical privilege log is appropriate in light of Eligible Creditors' forthcoming Production Requests.

## IV.     The Discovery and Confirmation Schedule

22.     Several of the Objecting Parties raise objections to the discovery and confirmation schedule set forth in the Confirmation Procedures Motion.  These parties argue, *inter alia*: (*i*) the proposed schedule ignores key gating issues in the Revenue Bond Adversary Proceedings that must be decided before confirmation (Ambac/FGIC Obj. ¶ 19); (*ii*) the proposed schedule fails to provide creditors with sufficient time to review and object to issues with the Debtors' proposed confirmation order before the close of objections (AAFAF Obj. ¶ 2, DRA Obj. ¶ 8); and/or (*iii*) the proposed schedule is too compressed (Ambac/FGIC Obj. ¶ 17, DRA Obj. ¶ 28).  These objections, as well as other scheduling objections listed in the Omnibus Reply Chart, should be rejected.

23.     It is the Court's prerogative to manage its docket and establish appropriate deadlines.  *See, e.g.*, *In re Atlantic Pipe Corp.*, 304 F.3d 135, 143 (1st Cir. 2002) ("[D]istrict courts have substantial inherent power to manage and control their calendars.").  Accordingly, bankruptcy courts have consistently affirmed that the purpose of a scheduling order is to promote the efficient and economical use of the estate's resources, allow the court to maintain judicial control over the proceedings, and conserve judicial resources by streamlining the factual issues to be presented at

the confirmation hearing. *See In re Scott*, No. 07-40001, 2007 WL 1555814, at *1 (Bankr. N.D. Ind. May 11, 2007) ("If the prescribed path is followed, and counsel does what the court has asked or expects, things operate like clockwork and cases can be processed smoothly and efficiently . . . that is the very purpose for procedural rules and scheduling orders.").

24.     The Debtors' proposed schedule was designed to provide reasonable deadlines that allow the Debtors to emerge from the Title III cases before the end of 2021. Whether this proposed schedule is acceptable to the Court is wholly within the Court's discretion. However, as noted in the Confirmation Procedures Motion, the various plan support agreements contemplate the effective date of the Plan will occur on or before December 15, 2021, subject to one limited extension. Conf. Proc. Mot. ¶ 1. Thus, the schedule proposed by the Debtors provides a way to complete a confirmation hearing in advance of that deadline. In the Debtors' view, this schedule maximizes efficiency, streamlines the proceedings, and manages the timetable to prepare for confirmation hearing, all in support of the fair and efficient disposition of the Debtors' Title III cases.

## CONCLUSION

25.     For the foregoing reasons and those set forth in the Omnibus Reply Chart, the Objections should be overruled in their entirety.

Dated: June 29, 2021
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Jeffrey W. Levitan (*pro hac vice*)
Margaret A. Dale (*pro hac vice*)
Michael T. Mervis (*pro hac vice*)
Julia D. Alonzo (*pro hac vice*)

13

Laura Stafford (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial
Oversight and Management Board*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/ *Hermann D. Bauer*
Hermann D. Bauer

## APPENDIX A

**Omnibus Reply Chart**

**DEBTORS' OMNIBUS REPLY CHART TO OBJECTIONS TO CONFIRMATION PROCEDURES MOTION**

| Objections [1] | Response(s) |
|---|---|
| **Initial Objections** | |
| 1. The initial objections deadline is too early (Hein Obj. at 7, DRA Obj. ¶ 8, Ambac/FGIC Obj. ¶ 17, UCC Obj. ¶ 172) | The Debtors will serve the Confirmation Hearing Notice by the later of July 20, 2021 or five (5) business days after entry of the order granting the relief requested in the motion seeking approval of the Disclosure Statement.  This Notice will provide creditors who have not been following these proceedings with information regarding how to access the Plan, including (i) from Prime Clerk's website at https://cases.primeclerk.com/puertorico/;  (ii) by telephoning Prime Clerk at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available); or (iii) by emailing Prime Clerk at puertoricoinfo@primeclerk.com.  As a result, all creditors will have sufficient time to review the plan and submit their Initial Objections. |
| 2. There is no detail as to what the initial objections require (Ambac/FGIC Obj. ¶ 14, DRA Obj. ¶ 1) | No additional details are needed. The Confirmation Procedures Motion already requires the Initial Objections to state the legal and factual bases for the Initial Objection.  The Initial Objections are intended to serve as a starting point for confirmation-related discovery and briefing.  In their Supplemental Objections, creditors will be able to provide additional information regarding their objections to the Plan based on information produced in connection with Plan discovery.  Also, no additional detail is needed because many creditors already know the bases for at least some of their objections. |

[1] Individual objections are numbered and grouped, where appropriate, for the convenience of the Court.  This does not constitute a waiver of the Debtors' rights to respond to any objections or arguments at the hearing(s) to consider approval of the disclosure statement or confirmation of the plan.  The Debtors deny many of the factual and legal assertions and characterizations contained in the Objections. Nothing contained herein shall be deemed an admission or acceptance of any statement contained in the Objections.

| Objections [1] | Response(s) |
|---|---|
| 3. The scope of discovery is limited to the bases set forth in the initial objections, which, among other things, violates due process and will encourage creditors to file broad objections (Hein Obj. at 7-8, DRA Obj. ¶ 7, Ambac/FGIC Obj. ¶¶ 9-12, UCC Obj. ¶ 169) | There is no violation of due process. An objection must be filed to create a contested matter, and a contested matter must be created for the discovery provisions in the Federal Rules of Civil Procedure to apply. *See* Fed. R. Bankr. P. 9014.<br><br>Creditors may file broad Initial Objections as long as they comply with the requirements set forth in the Confirmation Procedures Motion. They can then use documents produced in connection with any Eligible Creditor's Production Requests to supplement (and, if they so choose, narrow) their objections.<br><br>The Debtors' proposal to limit the scope of discovery to issues identified in Initial Objections will reduce the burden on the Debtors, who otherwise may receive baseless Production Requests whose relation to the Plan are tenuous at best. This is consistent with the confirmation discovery protocols entered by other courts. *See In re Enron Corp., et al.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Feb. 13, 2004), *Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. 16233]. |
| 4. Calling objection deadlines "Initial" and "Supplemental" is likely to confuse individual bondholders and discourage them from studying the materials and submitting objections by October 8 (Hein Obj. at 8) | The Confirmation Procedures Motion adequately explains the purpose of Initial Objections and Supplemental Objections, including the requirement that Eligible Creditors file Initial Objections in order to propound discovery requests on the Debtors. |
| 5. The schedule set for objections and other proceedings needs to take into account the inevitable delay that the multi-step process of identifying beneficial owners will entail (Hein Obj. at 2) | *See* response to 1 above. Parties will have advance notice of the objection deadlines before receiving solicitation packages. |

| Objections[1] | Response(s) |
|---|---|
| | Therefore, the process to determine beneficial owners is irrelevant. |
| **Limitations on Permissible Discovery** | |
| 6. Creditors are precluded from serving interrogatories (Hein Obj. at 13, Ambac/FGIC Obj. ¶ 29, UCC Obj. ¶ 177) | Confirmation discovery protocols often do not include interrogatories when other, more efficient and useful discovery mechanisms are available. *See, e.g.*, *Energy Future* Order ¶ 15 (limiting interrogatories to identification of witnesses). The complexity of the Plan and the Title III cases warrant using document requests and depositions to provide information to Eligible Creditors, rather than engaging in the burden and waste inherent in responding to and litigating over interrogatories. |
| 7. Creditors are required to submit a certification "stating the relationship of such Production Request to the Initial Objection . . . and setting forth why the additional Production is reasonably necessary given the availability of information in the Depository." (Hein Obj. at 22-23, Ambac/FGIC ¶ 5, UCC at 72) | The certification requirement will ensure that any discovery requests are targeted and focused. This requirement is minimally burdensome on Eligible Creditors, as it merely asks them to certify they have reviewed documents in the Plan Depository, in relation to the substantial costs that would be imposed on the Debtors if they had to respond to an enormous volume of requests that are duplicative of what they have already made available. |
| 8. There is no opportunity to serve follow-up requests based on information uncovered during the discovery process (Ambac/FGIC Obj. ¶ 5, DRA Obj. at 18)) | Allowing Eligible Creditors to serve multiple rounds of follow-up discovery requests is impractical given the size and scale of these Title III cases. All eligible Creditors will have the opportunity to review all documents produced in response to Production Requests made by all other Eligible Creditors and can incorporate that discovery in the next phases of the confirmation process, including depositions.<br><br>Notwithstanding the above, the Debtors will amend the proposed procedures to include a deadline of September 7 for follow-up |

| Objections[1] | Response(s) |
|---|---|
| | requests for admission on the limited topic of authentication of documents produced in response to Production Requests. |
| 9. Requests for Admission are limited to authentication of documents (Ambac/FGIC Obj. ¶ 27, DRA Obj. ¶¶ 24-25) | Limitations on requests for admission are an accepted feature of confirmation discovery protocols in light of the availability of other, more efficient forms of discovery such as document requests and depositions. *See, e.g., Energy Future* Order ¶ 16 (requiring leave of court to serve requests for admission). |
| 10. The proposal unreasonably consolidates both fact and expert depositions (Ambac/FGIC Obj. at 18-19, DRA Obj. ¶ 27) | The Debtors will amend the Confirmation Procedures Motion and accompanying proposed order so there are separate time periods for fact and expert depositions. |
| 11. The proposal provides inadequate time to identify witnesses and prepare for depositions (Ambac/FGIC Obj. ¶ 32, DRA Obj. ¶ 19) | The deadlines allow the Debtors to hold a confirmation hearing by the end of 2021, in line with the terms of the relevant plan support agreements. Eligible Creditors will have ample time to review information put forth in the Plan Depository in order to identify witnesses and prepare for depositions.<br><br>The proposed procedures also provide for witness lists to be provided by all parties by August 13, 2021, which Eligible Creditors can review before determining who they wish to depose. |
| 12. The proposal contains one-sided exceptions regarding depositions and witness lists, to the Debtors' benefit (Ambac/FGIC Obj. ¶ 5, DRA Obj. ¶¶ 18-23, UCC Obj. at 72-74). Specifically, certain Objecting Parties complain that: (1) the Debtors, but not creditors, are allowed to supplement their witness lists (*e.g.*, Ambac/FGIC Obj. ¶ 5, DRA Obj. at 18); (2) the 7-hour time limit for depositions should apply to all parties equally (*.e.g.*, UCC Obj. at 74, DRA Obj. at 18); and (3) the | The proposed Confirmation Procedures reflect the practical challenges faced by the Debtors, who must address discovery requests that could be served by tens of thousands of creditors.<br><br>Notwithstanding the above, the Debtors will amend the proposed procedures to make clear that only the Debtors' examination of deponents they have proffered for a deposition shall be excluded from the seven (7) hour limitation set forth in Rule 30(d)(1) of the Federal Rules of Civil Procedure. |

4

| Objections[1] | Response(s) |
|---|---|
| Court should permit rebuttal witnesses for all parties regardless of position (DRA Obj. at 22). | |
| 13. Discovery should not be limited to materials "relied upon" by Debtors (Hein Obj. at 23) | The Confirmation Procedures Motion does not limit discovery to "non-privileged materials relied upon by Debtors," and Hein's interpretation of the Motion to limit discovery in this manner is incorrect. As provided in the Confirmation Procedures Motion, the Plan Depository will contain *at least* relevant non-privileged documents relied upon by Debtors in analyzing the various claims and causes of action being compromised and settled and/or assets referenced in Article II of the Plan; as well as the Debtors' relevant non-privileged documents concerning the Best Interests Test Reports provided in conjunction with the Disclosure Statement. Conf. Proc. Mot. ¶ 35. |
| 14. Third party discovery is not clearly permitted (Ambac/FGIC Obj. ¶ 33) | The Confirmation Procedures Motion does not place an affirmative prohibition on third party discovery. The Debtors cannot prevent subpoenas from being issued. Ambac and FGIC cite paragraph 7 of the Confirmation Procedures Motion to support their assertion the Confirmation Procedures Motion precludes third-party discovery, but that language is not related to third-party discovery. Instead, it simply reinforces the point that creditors who oppose the plan must file initial objections in order to obtain discovery. |
| 15. Parties are required to file an Informative Motion prior to cross-examining a witness that discloses the nature of the cross-examination (UCC Obj. at 74) | One of the most time-consuming aspects of trial in a large case is the direct and cross-examination of witnesses. The bankruptcy court is directed by Federal Rule of Evidence 611(a), which is made applicable to these contested matters by Bankruptcy Rule 9017, to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless |

5

| Objections [1] | Response(s) |
|---|---|
| | consumption of time, and (3) protect witnesses from harassment or undue embarrassment." The filing of an informative motion prior to cross-examination accomplishes the foregoing objectives, and ensures that such an examination will not exceed the proper bounds. |
| 16. The Oversight Board can choose not to respond to a request, which will lead to disputes and delay (DRA Obj. ¶ 11) | By the time formal discovery commences, creditors should already have obtained access to a substantial number of relevant documents via the Plan Depository. Nevertheless, the Debtors will make every effort to produce relevant, non-duplicative documents responsive to creditors' discovery requests expeditiously and will produce responsive documents on a rolling basis when identified. |
| **Plan Depository** | |
| 17. The Debtors should be required to prepare a privilege log, which should be populated into the Depository by a date certain (UCC Obj. ¶ 177) | The purpose of the Plan Depository is to make available "Debtors' relevant *non-privileged* documents relied upon by Debtors in analyzing the various claims and causes of action being compromised and settled and/or assets referenced in Article II of the Plan," "Debtors' relevant *non-privileged* documents concerning the Best Interests Test Reports set forth in the Disclosure Statement," and other documents related to confirmation. Conf. Proc. Mot. ¶ 35 (emphasis added).<br><br>Given the scope of the Debtors' review of documents in connection with populating the Plan Depository, a privilege log is unnecessary. As a general matter, communications and drafts are materials typically subject to being withheld from production and recorded on a privilege log on the basis of privilege. Communications are often of minimal, if any, relevance, and their review is highly burdensome because of the likelihood they may contain privileged material. *See In re Fin. Oversight &* |

| Objections [1] | Response(s) |
|---|---|
| | *Mgmt. Bd. for P.R.*, 385 F. Supp. 3d 130, 135-37 (D.P.R. 2019). Drafts are likewise often of minimal relevance, and are highly likely to be privileged. *Id.* at 137-38. For those reasons, the Debtors do not intend to review either drafts or communications prior to populating the Depository, and, accordingly, creating a privilege log would require a vast amount of work and resources with no corresponding benefit. For those reasons, the Debtors do not intend to review either drafts or communications prior to populating the Depository, and accordingly, creating a privilege log would require a vast amount of work and resources with no corresponding benefit. |
| 18. The proposal does not clearly set forth the date by which the Debtors must produce documents (UCC Obj., DRA Obj. ¶ 14) | *See* response to 16. above |
| 19. The Oversight Board already has in its possession materials relevant to plan confirmation that it is withholding (DRA Obj. ¶ 17) | This Objection is baseless, as the Debtors have not been served with requests for production of materials relevant to plan confirmation, and therefore cannot be withholding responsive materials. Moreover, the Debtors are in the process of gathering materials in order to populate the Plan Depository. |
| 20. The depository is impractical to use (Hein Obj. at 14-19) | The Plan Depository is in accordance with the Court's *Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, (III) Approving Form of Notice Thereof, (IV) Establishing Document Depository Procedures In Connection Therewith, and (V) Granting Related Relief* [ECF No. 16681]. Further, no other Objecting Party has lodged complaints about the depository. |
| 21. Public, press and media should have access (Hein Obj. at 19) | Mr. Hein made this same objection in connection with the Disclosure Statement Depository Procedures, and the Court overruled it in its approval of those procedures. As explained in |

| Objections[1] | Response(s) |
|---|---|
| | connection with the Disclosure Statement Depository Procedures, Mr. Hein lacks standing to represent the public, press, and media. Further, providing open access to the depository to the public could overload the depository's site, thereby preventing any users, including Eligible Creditors, from accessing the site. |
| 22. Information provided in discovery, regardless of which party served the requests, should be placed in the Depository and grouped in labeled folders (Hein Obj. at 13) | Each Eligible Creditor will have access via the Plan Depository to documents produced in response to Production Requests made by every other Eligible Creditor. |
| **Discovery & Confirmation Schedule** | |
| 23. The proposed schedule ignores key gating issues in the Revenue Bond Adversary Proceedings that must first be decided before confirmation (Ambac/FGIC Obj. ¶ 1) | The Court has set September 15, 2021 for a hearing on the Revenue Bond Adversary Proceedings. Accordingly, the Court will have the opportunity to address those matters prior to the proposed commencement date for a Confirmation Hearing of November 8, 2021. |
| 24. The proposed schedule fails to provide creditors with sufficient time to review and object to issues with the Debtors' proposed confirmation order before the close of objections (AAFAF Obj. ¶ 2, DRA Obj. ¶ 8) | Creditors will have sufficient time to review and raise concerns regarding the Debtors' proposed confirmation order, either prior to or at the confirmation hearing. |
| 25. Secured creditors should have until January 31, 2022 to submit their Section 1111(b) elections in writing (DRA Obj. at 20) | Pursuant to Bankruptcy Rule 3014, the election may be made any time prior to the conclusion of the disclosure statement hearing or "within such later time as the court may fix." The DRA Parties provide no basis for their assertion they require until January 31, 2022 to make their Section 1111(b) elections, and accordingly, their request to submit their elections at a time later than the conclusion of the Disclosure Statement Hearing should be denied. |
| 26. The one-month pretrial period is too compressed (Ambac/FGIC Obj. ¶¶ 34-35) | The proposed schedule leading up to the confirmation hearing takes into account the need for expediency in allowing the Debtors to exit their Title III cases by the end of 2021. Under |

| Objections[1] | Response(s) |
|---|---|
| | the Debtors' proposed schedule, all parties will have sufficient time to prepare for the confirmation hearing, and the Court may set additional deadlines as appropriate. *See also* response to 11 above. |
| 27. The confirmation hearing should take place over a period of thirty days (Ambac/FGIC Obj. ¶ 37, DRA Obj. at 22) | At this time, there is no need for the confirmation hearing to span a thirty-day period. Should any of the parties submit witness lists that potentially necessitate going beyond the confirmation hearing dates proposed in the Confirmation Procedures Motion, the parties may discuss at the August 23, 2021 status conference or at another pre-hearing status conference to be scheduled by the Court. |
| **Discovery Disputes** | |
| 28. The Board's proposed procedure should be amended to require that both (or all) sides to any discovery dispute collectively inform the Court of the existence of any discovery dispute (Ambac/FGIC Obj. § III) | The Oversight Board will amend the procedures so that all parties to any discovery dispute jointly inform the Court. |
| **Filing, Notice, Service** | |
| 29. Individual bondholders should be permitted to either a) submit objections to an email address, to be forwarded for filing, b) mail to a specified court address and forwarded for filing, or c) be given the option to file using the CM/ECF system, and notified they have that option (Hein Obj. at 5-6) | There are suitable procedures in place for all creditors, including unrepresented creditors, to make filings with the Court (as evidenced by the number of Objections to the Disclosure Statement that were filed by *pro se* parties). |
| 30. Individual bondholders who have expressed interest in receiving notices by hard copy should at the outset be sent hard copy of the Plan and Disclosure Statement. Alternatively, they should be sent access to PDFs smaller than 25MBs (Hein Obj. at 12) | Providing hard copies to all individual bondholders is unnecessarily costly, given the thousands of pages of materials and the costs of mailing. The Oversight Board's notice and filing procedures are otherwise consistent with the *Fifteenth Amended Notice, Case Management and Administrative Procedures* [ECF No. 17127-1] (the "CMO"), which requires |

| Objections[1] | Response(s) |
|---|---|
| | that all Documents be served, in the manner described in the CMO, on the Master Service List (each as defined in the CMO). CMO § II. |
| 31. Flash drives are not sufficient because users will legitimately hesitant based on fears of viruses, the drive is too small, and is in a form that is too difficult to read (Hein Obj. at 4-5) | By this point in the Title III cases, the Oversight Board and Prime Clerk have successfully communicated thousands of times with individual claimants throughout Puerto Rico and the mainland United States, often times receiving and sending documents with sensitive information. A creditor will not be deceived by an official mailing from Prime Clerk that contains a flash drive and instructions on how to use it. Producing the disclosure statement and other related documents via a flash drive will also preserve Commonwealth resources by reducing postage and printing costs. Moreover, the use of flash drives is routinely approved by courts in the interest of preserving the estate's limited resources. *See, e.g., Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [Case No. 17-3283, ECF No. 4382] ¶ 8 (authorizing the debtor to transmit solicitation documents through flash drive); *In re GT Advanced Technologies Inc.*, Case No. 14-11916-HJB (Bankr. D.N.H. Feb. 2, 2016) (authorizing the debtors to transmit solicitation documents in electronic format); *In re Buckingham Oil Interests, Inc.*, Case No. 15-13441-JNF (Bankr. D. Mass. Dec. 22, 2015) (same); *In re Women's Apparel Group, LLC*, Case No. 11-16217-JNF (Bankr. D. Mass. May 10, 2012) (same); *In re GST* |

| Objections [1] | Response(s) |
|---|---|
| | *Autoleather, Inc.*, No. 17-12100 (LSS) (Bankr. D. Del. Mar. 12, 2018) (same). |
| 32. Prompt notice of the Plan and Disclosure Statement should be sent by U.S. mail to the many individual holders who have filed notices of participation and/or proofs of claim, and who have already provided mailing addresses and email addresses (Hein Obj. at 3) | The notice and filing procedures are consistent with the *Fifteenth Amended Notice, Case Management and Administrative Procedures* [ECF No. 17127], which requires that all Documents be served, in the manner described in the CMO, on the Master Service List (each as defined in the CMO). CMO ¶ II.E. |
| **Protective Order** ||
| 33. The Debtors' proposed protective order should require creditors to acknowledge that the Debtors do not make any representations or warranties as to the accuracy or completeness of Confidential Information. Creditors should not be precluded from seeking relief based on failure to provide accurate and complete information. Ordering such acknowledgment is a violation of free speech (Hein Obj. at 22-23). | The Court has already overruled this objection by approving the Disclosure Statement Depository Procedures. The Debtors explicitly do not intend to make any representations as to the accuracy or completeness of Confidential Information; there is no reason to await disputes on this issue. Moreover, debtors commonly warrant that they do not make any representations as to the accuracy or completeness of information in disclosure statements. |
| **Confidentiality** ||
| 34. If confidentiality restrictions are maintained by Court order, then there should be no use of, or any reference to, the mediation process in any Court filings and proceedings by anyone (Hein Obj. at 24) | The Objection does not cite any authority for the proposition that the parties cannot even reference the existence of mediation. The parties are bound by the relevant mediation agreements to not discuss the contents of mediation, but neither Federal Rule of Evidence 408 nor 501 prohibit the parties from discussing the fact that mediation took place. The Oversight Board has not, and will not, attempt to use direct communications shared during mediation in support of confirmation of the Plan, and the Oversight Board will produce in the Plan Depository any documents it seeks to use in support of Plan confirmation. |
| 35. Significant portion of documents appear miscategorized as confidential. A number of documents appear to be identical to | Should an Eligible Creditor dispute the confidentiality designation of documents uploaded to the Plan Depository (or |

11

| Objections[1] | Response(s) |
|---|---|
| publicly disclosed documents. Such miscategorization, and resulting preclusion from retail investors who do not sign the protective order, press, and media, prejudices retail investors. Every document labeled as confidential should require affirmative showing, by motion, that confidentiality, rather than redaction, is needed (Hein Obj. at 18-19) | the Disclosure Statement Depository), it may follow the procedure set forth to challenge such confidentiality designations in Exhibit 2 to the DS Hearing Scheduling Order. |
| 36. References to the robust nature of mediation should be a waiver of confidentiality because it is meant to enhance credibility of the outcome without full facts (Hein Obj. at 24) | *See* response to 34 above. |