# Exhibit 5



LEY __7__ -20__21__

Yo, LCDO. JAVIER GÓMEZ CRUZ, Secretario de la Cámara de Representantes del Estado Libre Asociado de Puerto Rico,

### CERTIFICO:

Que el P. de la C. 120, titulado

*"Ley*

*Para crear la "Ley para un Retiro Digno", a los fines de establecer y uniformar una política pública enérgica y vigorosa de cero recortes a las pensiones de los(as) participantes de los sistemas de retiro y las personas jubiladas del servicio público de Puerto Rico; crear el andamiaje jurídico necesario para el eventual establecimiento de un Fideicomiso para la Administración Conjunta de los Sistemas de Retiro que asegure el pago de pensiones de servidores(as) públicos(as); disponer la política pública que guiará las conversaciones y representaciones del Gobierno del Estado Libre Asociado de Puerto Rico, sus municipios, instrumentalidades y agentes en cualquier proceso de reestructuración, ajuste, mediación o negociación de las acreencias contra los sistemas de retiro, sus participantes y pensionados(as); proponer un modelo para la constitución y el trato de diferentes clases de acreedores(as) en un Plan de Ajuste de Deuda que se conforme a esta política pública; enmendar los Artículos 2, 3, 5 y 9 de la Ley 2-2017, según enmendada, conocida como "Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico", enmendar el Artículo 1-104 y añadir un nuevo Artículo 1-111 a la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como "Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico", enmendar el Artículo 1.1 y añadir un nuevo Artículo 2.6 a la Ley 160-2013, según enmendada, conocida como "Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico" y añadir un nuevo Artículo 1-A y enmendar el Artículo 2 de la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, conocida como "Ley de Retiro de la Judicatura", para atemperarlas a la política pública establecida en esta Ley; enmendar los Artículos 1.4 y 1.7 de la Ley 106-2017, según enmendada, conocida como "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos"; enmendar el Artículo 2 de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como "Ley de*

*Proyecto de la Cámara 120*
*25 de mayo de 2021*
*Página 2*

*Reclamaciones y Demandas contra el Estado", para crear una herramienta judicial para el cumplimiento de esta política pública; y para otros fines relacionados."*

ha sido aprobado por la Cámara de Representantes y el Senado del Estado Libre Asociado de Puerto Rico en la forma que expresa el documento que se acompaña.

PARA QUE ASÍ CONSTE, y para notificar al Gobernador del Estado Libre Asociado de Puerto Rico, expido la presente en mi oficina en el Capitolio, San Juan, Puerto Rico a los veinticinco (25) días del mes de mayo del año dos mil veintiuno y estampo en ella el sello de la Cámara de Representantes del Estado Libre Asociado de Puerto Rico.

Lcdo. Javier Gómez Cruz
Secretario

(P. de la C. 120)

# LEY

Para crear la "Ley para un Retiro Digno", a los fines de establecer y uniformar una política
pública enérgica y vigorosa de cero recortes a las pensiones de los(as) participantes
de los sistemas de retiro y las personas jubiladas del servicio público de Puerto
Rico; crear el andamiaje jurídico necesario para el eventual establecimiento de un
Fideicomiso para la Administración Conjunta de los Sistemas de Retiro que
asegure el pago de pensiones de servidores(as) públicos(as); disponer la política
pública que guiará las conversaciones y representaciones del Gobierno del Estado
Libre Asociado de Puerto Rico, sus municipios, instrumentalidades y agentes en
cualquier proceso de reestructuración, ajuste, mediación o negociación de las
acreencias contra los sistemas de retiro, sus participantes y pensionados(as);
proponer un modelo para la constitución y el trato de diferentes clases de
acreedores(as) en un Plan de Ajuste de Deuda que se conforme a esta política
pública; enmendar los Artículos 2, 3, 5 y 9 de la Ley 2-2017, según enmendada,
conocida como "Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal de
Puerto Rico", enmendar el Artículo 1-104 y añadir un nuevo Artículo 1-111 a la
Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como "Sistema
de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto
Rico", enmendar el Artículo 1.1 y añadir un nuevo Artículo 2.6 a la Ley 160-2013,
según enmendada, conocida como "Ley del Sistema de Retiro para Maestros del
Estado Libre Asociado de Puerto Rico" y añadir un nuevo Artículo 1-A y
enmendar el Artículo 2 de la Ley Núm. 12 de 19 de octubre de 1954, según
enmendada, conocida como "Ley de Retiro de la Judicatura", para atemperarlas a
la política pública establecida en esta Ley; enmendar los Artículos 1.4 y 1.7 de la
Ley 106-2017, según enmendada, conocida como "Ley para Garantizar el Pago a
Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas
para los Servidores Públicos"; enmendar el Artículo 2 de la Ley Núm. 104 de 29 de
junio de 1955, según enmendada, conocida como "Ley de Reclamaciones y
Demandas contra el Estado", para crear una herramienta judicial para el
cumplimiento de esta política pública; y para otros fines relacionados.

## EXPOSICIÓN DE MOTIVOS

*"La dignidad del ser humano es inviolable"*. Así reza la Primera Sección de nuestra
Carta de Derechos. Desde el momento en que se constituye un gobierno por el
consentimiento de los(as) gobernados(as), la presunción universal es que dicho gobierno
se constituye para servicio y beneficio del pueblo que lo ordena. Un gobierno
constitucional, por ende, debe estar revestido de la más alta y pura confianza del público

que representa y debe entender su responsabilidad de laborar en pro de las aspiraciones que el pueblo ha declarado en su constitución.

La "Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico" (PROMESA, por sus siglas en inglés), promulgada por el Gobierno Federal de los Estados Unidos en verano de 2016, creó un gobierno paralelo al gobierno constitucional de Puerto Rico diseñado para subvertir el criterio democrático de los(as) puertorriqueños(as) en torno a nuestras prioridades presupuestarias, necesidades básicas y servicios públicos esenciales. A ese gobierno paralelo se le bautizó oficialmente como Junta de Supervisión y Administración Financiera para Puerto Rico (en adelante, JSAF).

La JSAF, no tiene la capacidad de gobernar con empatía ni amor por el pueblo a quien gobierna y menos cuando sus gobernantes viven una realidad tan distante de la que vive el pueblo. Ignora, por ejemplo, la historia que les precedió y la larga trayectoria de pérdidas y sacrificios a los que estuvo sujeto ese pueblo para intentar evitar la caída que llevó a la creación de una ley como PROMESA.

Solo así se explica la propuesta inicial de la JSAF, el 27 de septiembre de 2019, con la aprobación de un Plan de Ajuste, revisado el 28 de febrero de 2020 y el 9 de marzo de 2021, para reestructurar forzosamente las deudas del Gobierno de Puerto Rico al amparo del Título III de PROMESA, que contempla mayores sacrificios para cientos de miles de servidores(as) públicos(as), casi la mitad de ellos(as) ya jubilados(as) tras una vida de entrega en el servicio público a su país y condena a Puerto Rico a décadas adicionales de deudas insostenibles que, por admisión propia, saben que producirá otro evento de insolvencia en el corto plazo.

EL PLAN DE AJUSTE EN CONTEXTO

El Título III de PROMESA provee el primer mecanismo disponible al Gobierno de Puerto Rico para la reestructuración judicial de las deudas de sus instrumentalidades por razón de insolvencia desde que dicha facultad le fue privada en 1984, tras la exclusión de Puerto Rico del Capítulo 9 del Código de Quiebras de EEUU. Ese mismo capítulo de PROMESA crea para Puerto Rico unos procedimientos experimentales, a diferencia del Capítulo 9 del Código de Quiebras, en el que solamente las ciudades e instrumentalidades de algún estado podrían acogerse a quiebras, Puerto Rico se convertiría en el primer gobierno estatal en reestructurar su deuda pública.

Sin embargo, PROMESA le quita al gobierno constitucional de Puerto Rico la facultad de representar los intereses del pueblo de Puerto Rico ante el Tribunal Federal que supervisa el proceso de reestructuración de deuda bajo el Título III. Por el contrario, PROMESA delega esta facultad exclusivamente a la JSAF, una entidad expresamente exenta de mecanismos de rendición de cuentas a lo largo de su ley orgánica. También, se

le confieren poderes de veto y supervisión en la renegociación de deuda bajo el Título VI de PROMESA, para la modificación voluntaria de bonos.

El resultado de esa estrategia ha sido la aprobación de dos reestructuraciones de deuda en tres años y medio de existencia de la JSAF, sin antes explorar argumentos que promuevan la descarga, anulación, nulidad o cancelación de al menos partes de esas deudas, tal y como actualmente hacen con algunas emisiones de bonos de obligación general y de la Administración de Sistemas de Retiro. Peor aún, las reestructuraciones se han autorizado bajo términos que parecerían imponer un servicio de deuda insostenible, arriesgar la capacidad del gobierno constitucional de Puerto Rico para garantizar el pago de las pensiones gubernamentales y los servicios esenciales para el pueblo de Puerto Rico, aumentar el costo de tarifas y servicios de electricidad, y retrasar el regreso de Puerto Rico al mercado de bonos.

El primero de estos acuerdos, aprobado el 8 de noviembre de 2018, consistió en la reestructuración de cerca de $4,000 millones en reclamaciones de los(as) bonistas del Banco Gubernamental de Fomento (BGF), lo que representaría una obligación de repago de $2,487.8 millones en efectivo y $2,530.9 millones en pagos en especie hasta el 2040. El acuerdo, negociado en virtud de las disposiciones de modificación voluntaria de bonos bajo el Título VI de PROMESA, garantiza a los(as) bonistas una recuperación promedio de 55 centavos por cada dólar de valor original de sus bonos, lo que representa un recorte significativo para aquellos(as) acreedores(as) que adquirieron esa deuda al momento de emitirse, como es el caso de las cooperativas de ahorro y crédito. Sin embargo, para las compañías de fondos de cobertura que adquirieron sus acreencias durante los últimos años antes del acuerdo, algunas de ellas hasta a 12 centavos por cada dólar, el acuerdo del BGF representa una ganancia significativa a ser sufragada por el pueblo de Puerto Rico. Más aún, con la aprobación del acuerdo, las partes negociadoras, que incluyeron a funcionarios(as) y exfuncionarios(as) del BGF, accedieron a relevarse mutuamente de cualquier reclamación pasada, presente o futura relacionada a la reestructuración, incluyendo cualquier cuestionamiento a la legalidad de esas transacciones.

Por su parte, el 4 de febrero de 2019, se gestó la aprobación del Plan de Ajuste de la Deuda de la Corporación del Fondo de Interés Apremiante (COFINA), que propuso la reestructuración de $17,580 millones en reclamaciones de bonistas de la entidad mediante términos que obligan al pueblo de Puerto Rico a pagar sobre $32,300 millones por los próximos 40 años. Las emisiones de bonos de COFINA adolecen de las mismas irregularidades que varias de las emisiones de bonos de obligación general que la propia JSAF impugnó mediante moción presentada en el proceso judicial bajo el Título III de PROMESA el 14 de enero de 2019; las emisiones fueron reportadas como recaudos para fines de la aprobación de un presupuesto balanceado y las emisiones de COFINA, como las de la Autoridad de Edificios Públicos, fueron hechas por una entidad creada por, dependiente de y para beneficio del gobierno central. Sin embargo, la JSAF optó por no promover la cancelación de estas transacciones y en cambio, negoció un acuerdo que

garantiza un repago de 93 centavos por cada dólar a los(as) bonistas senior de COFINA, tenedores(as) del 44% de la deuda de la entidad y de 54 centavos por cada dólar a los(as) bonistas junior, o subordinados(as), de COFINA, dueños(as) del 56% restante de la deuda de la corporación pública. Al igual que con el acuerdo del BGF, estas cifras representan ganancias cuantiosas para la mayoría de los(as) tenedores(as) de bonos de COFINA, senior o subordinados(as), pues estos, predominantemente fondos de cobertura, adquirieron esas acreencias a un costo muy inferior al que ahora se les pagará de los recaudos de la partida del 5.5% del Impuesto sobre Ventas y Uso (IVU) destinado para COFINA.

En la actualidad, la JSAF promueve la aprobación de un Plan de Ajuste de Deuda Conjunto para las obligaciones del Gobierno de Puerto Rico, la Administración de los Sistemas de Retiro de Empleados del Gobierno y la Judicatura de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico (PAD). La primera versión de este plan fue presentada por la JSAF el 27 de septiembre de 2019. Sin embargo, dado que solo contaba con el apoyo de aproximadamente un 18% de los(as) tenedores de bonos a ser reestructurados, el Tribunal ordenó que las partes se mantuvieran negociando. Ello llevó a que el pasado 9 de febrero de 2020, la JSAF presentó un *Plan Support Agreement* (PSA) y una enmienda subsiguiente al PAD el pasado 28 de febrero de 2020, el cual fue avalado por cerca del 58% de los(as) tenedores de bonos a ser reestructurados y deja sin efecto el PAD presentado en septiembre de 2019. Asimismo, el 9 de marzo de 2021 se presentó otra enmienda al PAD, que también aumenta el número de bonistas que lo apoyan.

El PAD es presentado en virtud de la Sección 312 de PROMESA. A su vez, la Sección 314 de dicha ley detalla el procedimiento de evaluación y confirmación del PAD. El apartado (a) de la Sección 314 permite que cualquier acreedor(a) o contribuyente especial pueda objetar el Plan. A su vez, el apartado (b) detalla los criterios que debe cumplir el PAD antes de que sea confirmado por la Jueza a cargo del procedimiento judicial bajo el Título III de PROMESA. De particular importancia, el párrafo (5) del apartado (b) exige que, previo a la confirmación del PAD, se haya obtenido cualquier autorización legislativa o reglamentaria necesaria para ejecutar alguna de sus disposiciones, así como que el PAD haya sido aprobado por parte de los(as) acreedores(as) de las deudas a ser ajustadas. Así y, opuesto a algunas expresiones en contrario por parte de la propia JSAF, PROMESA exige, expresamente, la aprobación de legislación habilitadora previo a la ejecución del PAD en la medida en la que el documento requiera, como actualmente requiere, enmendar leyes u otras disposiciones normativas del gobierno constitucional de Puerto Rico, así como pretenda autorizar un intercambio de bonos reestructurados, lo que también requiere aval legislativo, conforme a la Ley Núm. 33 de 7 de diciembre de 1942, según enmendada, conocida como "Ley para Autorizar al Tesorero de Puerto Rico Para que Redima o Compre en Mercado Abierto o Donde se Ofrecieren a la Venta, Bonos u otros Certificados de Deuda de El Pueblo de Puerto Rico". Dicho de otra forma, el PAD propuesto no puede aprobarse sin el aval de las Ramas Legislativa y Ejecutiva del gobierno constitucional de Puerto Rico.

A su vez, el párrafo (6) del apartado (b) de la Sección 314 de PROMESA exige que el PAD sea viable y en el mejor interés de los(as) acreedores(as) y que no existan otros remedios bajo la Constitución de Puerto Rico y otras leyes que permitan a los(as) acreedores(as) a recibir una mejor recuperación a la provista en el PAD. Como veremos, uno de esos remedios es promover la cancelación de las deudas ilegales, emitidas en violación de la Constitución y las leyes de Puerto Rico.

Si bien el PAD propone reestructurar cerca de $19,000 millones en emisiones de bonos de obligaciones generales y de la AEP, incluyendo aquellos que están siendo impugnados en el Tribunal, el PSA también modifica aproximadamente otros $16,000 que, además de bonos de la Administración de los Sistemas de Retiro de Empleados del Gobierno de Puerto Rico (en adelante ASR), la Autoridad de Carreteras y Transportación (ACT) y otras entidades, incluyen deudas de trabajadores(as), producto de la falta de aportaciones gubernamentales a planes médicos e incumplimiento con cláusulas económicas de convenios colectivos, deudas de contratistas y suplidores(as) del Gobierno, en su mayoría empresas de Puerto Rico, producto de facturas pendientes de pago y deudas de sentencias judiciales en casos contra el Gobierno por violaciones de derechos civiles, entre otras acreencias.

El PAD del 9 de marzo de 2021, propone aumentar considerablemente la recuperación para aquellos(as) bonistas que negociaron sus términos con la JSAF, que son, casualmente, tenedores(as) de bonos que están siendo impugnados en el Tribunal, incluyendo por la propia JSAF. En virtud del PAD sometido en septiembre de 2019, esos bonistas de deuda impugnada recibirían un promedio de 30 centavos por cada dólar de valor original de sus bonos. Sin embargo,  en el PAD del 28 de febrero de 2020,  la JSAF aumentó la oferta a esos(as) bonistas a 71.4 centavos por cada dólar, y la volvió a aumentar, esta vez a 75.6 centavos por dólar, en el PAD del 9 de marzo de 2021. El resto de los(as) bonistas del gobierno central y la AEP también experimentan una mejora en su recuperación, de un promedio de 67 centavos por cada dólar en el PAD de septiembre de 2019, a un promedio de 76 centavos por cada dólar en el PAD de febrero de 2020, a un promedio de 98 centavos por dólar en el PAD de marzo de 2021.  A los(as) bonistas de la Administración de los Sistemas de Retiro de los Empleados del Estado Libre Asociado de Puerto Rico (en adelante ASR), cuyas emisiones de bonos también son impugnadas, el PAD de septiembre de 2019 y el de febrero de 2020 les ofrecía una recuperación de 12.7 centavos por cada dólar,  mientras el de marzo de 2021 aumentó la oferta a 17 centavos por dólar. En agregado, el recorte promedio a los(as) bonistas mediante el PAD es de apenas 30 centavos por cada dólar. Esto representa un aumento significativo en la recuperación a estos(as) bonistas pese a que, en su inmensa mayoría, se trata de fondos de cobertura que adquirieron sus bonos muy por debajo de lo que recibirían mediante el PAD.

En cambio, los(as) trabajadores(as), pensionados(as), contratistas, suplidores(as) y partes prevalecientes en reclamaciones judiciales contra el gobierno, la mayoría de

ellos(as) residentes de Puerto Rico, son los(as) grandes perjudicados(as) por el PAD.  Para reclamar ahorros sustanciales a la deuda a ser reestructurada, la JSAF ha impuesto los recortes más severos de este acuerdo a los(as) residentes de Puerto Rico, cuyas deudas contra el Gobierno de Puerto Rico nunca han sido cuestionadas, mientras aumenta la recuperación conferida a fondos de cobertura que, no solo son dueños(as) de bonos de cuestionable legalidad, sino que también adquirieron sus acreencias a un costo menor a lo que el PSA propone que el pueblo de Puerto Rico les pague.

El impacto del PAD al fisco es sustancial, pues aumentaría el servicio a la deuda a $1,150 millones por los próximos 25 años, una cifra que la inmensa mayoría de los(as) economistas que han evaluado el acuerdo, tanto dentro como fuera de Puerto Rico, han calificado como insostenible. En este sentido, difícilmente pueda celebrarse un PAD que devuelva a Puerto Rico a niveles de pago de deuda en tiempos en los que ya experimentaba gran estrechez y dificultad económica.

El pago a la deuda propuesta para reestructuración por el PAD a lo largo de los próximos 25 años, a su vez, ascendería a más de $21,000 millones. Además, la JSAF ofrece a un pequeño grupo de fondos de cobertura, a sus abogados(as) y consultores(as), un pago adelantado en efectivo, al momento de consumarse el PAD, por cantidades que exceden $7,400 millones. Dichos pagos saldrían del Fondo General, producto de los recaudos del Gobierno de Puerto Rico.

Más aún, el PAD de marzo de 2021, mantiene esencialmente inalterada una de las propuestas de mayor impacto para el pueblo de Puerto Rico, la eliminación de la acumulación de pensiones para participantes y el recorte a las pensiones de beneficiarios(as) de los sistemas de retiro del Gobierno Central, los(as) maestros(as) y la judicatura. El recorte sería de 8.5%, y se impondría a la totalidad de aquellas pensiones que, sumadas a las bonificaciones de medicamentos, Navidad y verano, excedan los $1,500 mensuales. Sobre 47,000 jubilados(as) del Gobierno, o dos de cada cinco, verían sus pensiones reducidas significativamente como resultado de esta propuesta. Esta reducción a las pensiones fue el resultado de un acuerdo alcanzado el 7 de junio de 2019, y enmendado en noviembre de 2020, entre la JSAF y el Comité Oficial de Retirados (en adelante COR), organismo designado por la Oficina del Síndico del Departamento de Justicia de los Estados Unidos para representar a los(as) pensionados(as) de los Sistemas de Retiro de los Empleados del Gobierno de Puerto Rico, la Judicatura y el Magisterio.

Esta nueva propuesta de recortes a las pensiones debe tomarse en contexto. Los(as) pensionados(as) de los tres sistemas de retiro afectados por el PAD ya habían visto cómo, antes de la presentación de la petición de quiebra bajo el Título III de PROMESA, sus aportaciones a dichos sistemas fueron aumentando, mientras sus pensiones eran recortadas. Según detalla un informe sobre los sistemas de retiro realizado por la firma Ernst & Young y publicado por la JSAF el 27 de septiembre de 2019, los(as) pensionados(as) no reciben ajustes a sus pensiones por costo de vida (COLA) desde la

aprobación de la Ley 35-2007, según enmendada, conocida como "Ley de Aumentos de Pensiones". Esto significa que, en promedio, el valor de las pensiones se vio reducido en un 19% entre el 2007 y el 2019. Para el 2037, diez años antes de la expiración del término de vigencia del PAD, la falta de ajustes por costo de vida habrá representado una reducción de más del 39% del poder adquisitivo de esas pensiones.

De igual forma, según el mismo informe de Ernst & Young, los(as) pensionados(as) han experimentado recortes sustanciales producto de la aprobación de la Ley 3-2013. En el caso de los(as) pensionados(as) del programa de beneficios definidos bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como "Sistema de Retiro de los Empleados del Estado Libre Asociado de Puerto Rico" (en adelante, Ley Núm. 447), estos(as) han experimentado reducciones de hasta un 42% del valor agregado de sus pensiones, beneficios y demás derechos de retiro tras la aprobación de la Ley 3-2013. Por su parte, los(as) pensionados(as) del programa de beneficios definidos bajo la Ley Núm. 447 que se convirtieron en participantes en una fecha posterior al 1 de abril de 1990, sufrieron recortes de hasta un 31% del valor agregado de sus pensiones, beneficios y demás derechos de retiro. Finalmente, los(as) pensionados(as) del Programa de Cuentas de Ahorro para el Retiro (en adelante, Sistema 2000) bajo la Ley Núm. 447, que se convirtieran en participantes a partir del 1 de enero de 2000, recibieron una reducción de hasta un 15% del valor agregado de sus pensiones, beneficios y demás derechos de retiro.

Finalmente, mediante la aprobación de la Ley 106-2017, según enmendada, conocida como "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos", el Gobierno de Puerto Rico ordenó la liquidación y el traslado de los activos en todas las cuentas de los Sistemas de Retiro a una cuenta segregada en el Fondo General para el pago de las pensiones acumuladas. Aunque tuvo el efecto de impactar a los(as) jubilados(as), le legislación procuraba una alternativa para garantizarles el pago de su pensión en un momento donde los sistemas estaban por colapsar. Los(as) pensionados(as) bajo la Ley Núm. 447 experimentaron reducciones acumuladas de hasta un 44% del valor agregado en sus pensiones, beneficios y demás derechos de retiro si se convirtieron en participantes antes del 1 de abril de 1990 y de hasta un 53%, si se convirtieron en participantes a partir de esa fecha. Finalmente, los(as) pensionados(as) del Sistema 2000 recibieron una reducción acumulada de hasta un 82% del valor agregado de sus pensiones, beneficios y demás derechos de retiro.

La historia está ahí y ha quedado evidenciado que cualquier Plan de Ajuste de Deuda no puede seguir penalizando a la misma población que ya ha sufrido tantos recortes.

## CRÍTICAS AL PLAN DE AJUSTE

El proceder de la JSAF, además, refleja un incumplimiento sustancial con sus obligaciones bajo PROMESA, particularmente de las directrices que ahí se disponen sobre manejo de las finanzas públicas de Puerto Rico.

De entrada, la Sección 201(b)(1) de PROMESA exige que la aprobación de planes fiscales por parte de la JSAF debe proveer mecanismos para alcanzar la responsabilidad fiscal y el acceso del Gobierno de Puerto Rico a los mercados capitales, además de garantizar el financiamiento necesario para los servicios públicos esenciales, así como el financiamiento suficiente para los sistemas de pensiones públicas. Sin embargo, a la hora de certificar los planes fiscales del Gobierno de Puerto Rico y sus corporaciones públicas, así como de promover la aprobación de acuerdos de reestructuración y planes de ajuste de deudas que enmiendan los planes fiscales, la JSAF se ha negado rotundamente a proveer una definición para los servicios públicos que son esenciales y, por ello, los ha dejado desprovistos de la protección que la propia ley exige.

En el caso de las pensiones, lejos de identificar los mecanismos para asegurar su financiamiento, los planes fiscales del Gobierno de Puerto Rico certificados por la JSAF han contemplado distintas variaciones de recortes a los derechos adquiridos de esta población, siendo la articulación más reciente el ya mencionado recorte del 8.5% incluido en el PAD de septiembre de 2019 y reiterado en el PAD del 28 de febrero de 2020 y el del 9 de marzo de 2021. Al así actuar, la JSAF no solo incumple sus obligaciones bajo la Sección 201(b)(1)(C) de PROMESA, sino que falla en considerar alternativas razonables, como las que aquí adoptamos, que permitirían garantizar el pago de las pensiones presentes a nuestros jubilados(as), así como las futuras de nuestros(as) trabajadores(as) activos(as).

Por otra parte, la Sección 413 de PROMESA obligaba a la JSAF a no restringir la capacidad de la Comisión para la Auditoría Integral del Crédito Público de Puerto Rico, entidad creada mediante la Ley 97-2015, para publicar sus informes, así como revisar y considerar sus hallazgos. Dicha comisión fue eliminada en virtud de la Ley 22-2017, pero no sin antes publicar dos informes preauditoría, el primero de los cuales, publicado en junio de 2016, señala posibles violaciones constitucionales con varias de las emisiones de bonos de obligaciones generales que están siendo reestructuradas en el PSA. Algunos de esos planteamientos fueron adoptados por la JSAF al promover la cancelación de la deuda emitida mediante las emisiones Series 2012A, 2012B, de marzo de 2012, y la Serie 2014A, de marzo de 2014, por exceder el límite constitucional de la deuda fijado en el Artículo VI, Sección 2 de la Constitución de Puerto Rico. Sin embargo, los planteamientos contenidos en ese informe y adoptados por la JSAF son igualmente aplicables a otras emisiones de bonos de obligación general, así como a emisiones de la AEP y a emisiones de COFINA, por mencionar algunas, por lo que la cantidad de deuda que la JSAF debería estar impugnando es mucho mayor a la que ha cuestionado en el Tribunal Federal.

Desafortunadamente, en vez de ampliar las partidas de deuda ilegal a cancelar, a la luz de los hallazgos contenidos en los informes de la Comisión para la Auditoría Integral del Crédito Público de Puerto Rico, la JSAF está ahora promoviendo activamente un PSA que propone pagarle a estos(as) tenedores de deuda ilegal, en perjuicio de nuestros(as) pensionados(as) y trabajadores(as) activos(as).

Pese a estas y otras violaciones, ambos, el Congreso y la Presidencia de los Estados Unidos se han mostrado incapaces de lograr que la JSAF cumpla con el mandato de la Ley PROMESA, y los tribunales se han mostrado reacios a revisar sus acciones u omisiones. A manera de ejemplo, la Sección 206(a)(2) de PROMESA exige que, previo a cualquier reestructuración, la JSAF publique los estados financieros auditados de la entidad cubierta, así como cualquier otra información suficiente para que las personas interesadas puedan tomar decisiones informadas con respecto a dichas transacciones. De igual forma, la Sección 211 de PROMESA ordena a la JSAF a llevar a cabo un análisis actuarial de cualquier sistema de retiro que, conforme a su juicio, carece materialmente de fondos. Sin embargo, pese a los múltiples requerimientos y vistas celebradas por el Congreso de los Estados Unidos para examinar el cumplimiento de la JSAF con sus obligaciones bajo PROMESA, esta promueve activamente un PAD que reestructura deudas del Gobierno de Puerto Rico, de la AEP y de los Sistemas de Retiro del Gobierno, de los Maestros y de la Judicatura, sin haber producido estados financieros auditados para el Gobierno de Puerto Rico, para la AEP ni para los sistemas de retiro, y se continúa rehusando a producir estudios de valoración actuarial para los años fiscales previos a la presentación de la petición de quiebra bajo el Título 3 de PROMESA.

Por otra parte, la JSAF ha pretendido beneficiarse de la ambigüedad en torno a su naturaleza como una entidad nombrada por el Gobierno de los Estados Unidos, pero adscrita al Gobierno de Puerto Rico. Así, por un lado, la JSAF reivindica su identidad como ente que forma parte del Gobierno de Puerto Rico para fines de evadir planteamientos de aplicabilidad de disposiciones constitucionales que aplican a funcionarios(as) o entidades federales, como es su defensa de la constitucionalidad de sus nombramientos, y la alegada inaplicabilidad de la Cláusula de Nombramientos contenida en la Sección 2 del Artículo II de la Constitución de EE.UU. Sin embargo, a la hora de asumir obligaciones como entidad adscrita al Gobierno de Puerto Rico, la JSAF pretende identificarse como una entidad de creación federal, cuyas acciones no están controladas por el derecho constitucional o la política pública de Puerto Rico. Ejemplo de ello es la reiterada negativa de la JSAF a cumplir con su obligación de someter informes a la Oficina del Contralor de Puerto Rico, de cumplir con los requisitos de la "Ley de Ética Gubernamental de Puerto Rico", así como su promoción de la opacidad gubernamental planteando infructuosamente que el derecho constitucional de acceso a la información reconocido en nuestra jurisdicción desde *Soto v. Secretario de Justicia,* 112 DPR 477 (1982), no le es de aplicación, como ha hecho en dos reclamaciones que le han sido presentadas por el Centro de Periodismo Investigativo. *Centro de Periodismo Investigativo v. Financial*

*Oversight and Management Board*, Civ. No. 17-1743; *Centro de Periodismo Investigativo v. Financial Oversight and Management Board*, Civ. No. 19-1936.

A esto debe añadirse la que quizás ha sido la violación más flagrante por parte de la JSAF a PROMESA, su incapacidad para desarrollar algún modelo de reestructuración que incorpore un análisis de sostenibilidad agregada del servicio de la deuda, esto es, una determinación, basada en ciencias macroeconómicas, y no en proyecciones optimistas y políticamente cargadas, de qué niveles de servicio a la deuda son sostenibles para Puerto Rico, de manera que puedan evitarse impagos y quiebras futuras.

Llevar a cabo estos análisis no es opcional para la JSAF. La Sección 201(b)(1)(I) de PROMESA requiere que los planes fiscales certificados por la JSAF incluyan un análisis de sostenibilidad de la deuda. Dicho análisis, a su vez, está intrínsecamente ligado al requisito de que cualquier PAD negociado por la JSAF sea viable, criterio impuesto por la Sección 314(b)(6) de la Ley como requisito para la confirmación del plan.

Un estudio de los economistas Martín Guzmán y Pablo Gluzmann publicado en mayo de 2019 cuestiona, precisamente, la falta de análisis sobre sostenibilidad agregada del servicio de la deuda de Puerto Rico por parte de la JSAF. El informe examina el contenido de los planes fiscales certificados por la JSAF para el Gobierno de Puerto Rico en marzo de 2017 y octubre de 2018, así como el Plan de Ajuste de Deuda de COFINA aprobado en febrero de 2019 y concluye que, entre otras cosas, la JSAF continúa sin determinar un nivel de servicio de deuda sostenible para Puerto Rico que parta de premisas razonables, así como que sea producto de las mejores prácticas de análisis macroeconómico. Además, el estudio critica severamente la compartimentalización del análisis sobre la deuda empleado por la JSAF, concluyendo que un análisis de sostenibilidad del nivel de endeudamiento de Puerto Rico requeriría, como mínimo, una quita del 70% del total de la deuda. Sin embargo, los autores destacan que, como resultado de la aprobación del Plan de Ajuste de Deuda de COFINA, si la JSAF quisiera evitar que Puerto Rico incurra en un segundo impago y se exponga a un nuevo proceso de quiebra, el recorte promedio a los(as) tenedores de bonos pendientes de reestructuración tendría que ser de entre 85 a 95% de sus acreencias. Sin embargo, como se señaló anteriormente, mediante el nuevo PAD del 9 de marzo de 2021, la JSAF propone recortar menos de un 30% a los(as) bonistas del Gobierno de Puerto Rico y de la AEP, incluyendo a los(as) tenedores de bonos impugnados en los procedimientos bajo el Título III de PROMESA.

Aún utilizando el análisis fragmentado que utiliza la JSAF para medir la sostenibilidad de deuda del gobierno central, según presentado en el más reciente Plan Fiscal certificado del 9 de mayo de 2019, el acuerdo alcanzado con los fondos de cobertura en el PAD excede por mucho la capacidad máxima del fondo general para cumplir con el servicio a la deuda. En su análisis de sostenibilidad de deuda, la JSAF concluye que el servicio de deuda máximo que el Gobierno de Puerto Rico podría tolerar, en un período

de 30 años y a una tasa de interés fija de 4%, no excede $13,385 millones, o un servicio de deuda anual promedio de $446 millones. Para cumplir con el requisito dispuesto en PROMESA de devolver a Puerto Rico a los mercados de capital, este servicio de deuda debe contemplar no solamente el pago de deuda existente al momento de aprobación de PROMESA, sino también la emisión de deuda nueva. Recordemos que el PAD nos comprometería a tasas de interés que alcanzan hasta el 5.375% (al tiempo que jurisdicciones con bonos a nivel chatarra logran tasas menores de 4%), un servicio de deuda total de $21,000 millones en 25 años, algunos de los cuales se tendrían que pagar $1,150 millones, destinado exclusivamente al pago de deuda ya existente previo a la aprobación de PROMESA. Es inconfundible la intención de la JSAF de impulsar a Puerto Rico hacia una segunda quiebra en menos de 20 años, e impedir que Puerto Rico se libere de las restricciones impuestas bajo PROMESA.

A esto se le suman más de $32,300 millones en el servicio a la deuda reestructurada de COFINA durante los próximos 40 años, para un promedio anual de sobre $807.5 millones en el servicio de esa deuda, y otros $5,018.7 millones para el servicio a la deuda reestructurada del Banco Gubernamental de Fomento, o un promedio anual de $167.3 millones adicionales hasta agosto de 2040.

Una segunda quiebra sería devastadora para las poblaciones más vulnerables de Puerto Rico, incluyendo nuestros(as) servidores(as) públicos(as) y nuestros(as) pensionados(as). Sería poner a competir nuevamente, en menos de 20 años, a estos(as) bonistas, ahora con mayores protecciones sobre sus derechos de cobro, contra pensionados(as) y servidores(as) públicos(as), quienes serían considerados acreedores(as) no asegurados(as) y estarían en peor posición relativa que la enfrentada actualmente. En esas circunstancias, el acceso al mercado estaría condicionado a la imposición de mayores recortes a las pensiones para apaciguar cualesquiera preocupaciones del mercado ante un nuevo impago e insuficiencia de fondos. El Gobierno de Puerto Rico no puede permitir que esto ocurra.

Los(as) bonistas y los(as) pensionados(as), además, parten de posiciones muy divergentes. De un lado, los acuerdos de pago a bonistas contenidos en el PAD se hacen a personas y entidades, como las compañías de fondos de cobertura, que adquirieron recientemente sus acreencias a precios muy por debajo del margen de recuperación que ahora negocian con la JSAF, por lo que estos acuerdos representan ganancias cuantiosas, en vez de pérdidas, para ellos(as). Incluso, algunas de estas compañías han aumentado dramáticamente su compra de bonos de Puerto Rico luego del paso de los huracanes Irma y María, y mientras eso ha ocurrido los(as) tenedores de bonos en Puerto Rico han disminuido. Así, por ejemplo, informes de la Oficina del Comisionado de Instituciones Financieras revelan que, entre septiembre de 2018 y junio de 2019, los(as) corredores(as) de inversiones licenciados(as) en Puerto Rico reportaron que la cartera de bonos de Puerto Rico de sus clientes(as) se redujo en más de $1,381 millones de dólares, mientras

que las compañías locales de inversión reportaron que sus clientes(as) redujeron su tenencia de bonos de Puerto Rico en sobre $660 millones.

De otro lado, frente a los(as) bonistas que, en su mayoría, no experimentarán pérdidas con el PAD, sino ganancias, el costo social de estas múltiples violaciones sobre las vidas de los(as) residentes de Puerto Rico, particularmente de nuestros(as) pensionados(as), es inconmensurable. Como se señaló anteriormente, nuestros(as) pensionados(as) de los sistemas de retiro del Gobierno de Puerto Rico, el magisterio y la judicatura, ya han sufrido recortes cuantiosos a sus pensiones, beneficios y demás derechos de retiro, tanto antes como después del comienzo de los procedimientos de quiebra bajo el Título III de PROMESA, y ahora se exponen a sufrir aún más. Esto es insostenible.

A esto debe añadirse que, según el análisis esbozado por la firma *Ernst & Young* en su informe sobre los sistemas de retiro de Puerto Rico, las medidas de la JSAF solamente proveen 20 años de financiamiento para las pensiones. Ello se debe a que, como reconoce el plan fiscal del Gobierno de Puerto Rico certificado el 9 de mayo de 2019, por la JSAF, Puerto Rico tendrá déficits presupuestarios a partir del 2038. Visto de esta manera, mediante el PAD, la JSAF propone emitir nuevos bonos pagaderos por los próximos 20 años con pagos anuales que superan $1,425 millones, pese a que el Gobierno de Puerto Rico experimentará déficits presupuestarios para finales de ese período.

De hecho, esta realidad da al traste con otro aspecto del acuerdo negociado entre la JSAF y el Comité Oficial de Retirados (COR). Uno de los elementos distintivos de dicho acuerdo es el potencial de restauración de los Bonos de Navidad, Verano y Medicinas a pensionados(as) que experimenten recortes en esos beneficios, en casos en los que el Gobierno de Puerto Rico experimente superávits en exceso de $100 millones por encima de las proyecciones contenidas en el plan fiscal certificado por la JSAF. Asimismo, crearía una reserva para el pago de pensiones en años deficitarios, financiada exclusivamente con una porción de los superávits que pueda experimentar el Gobierno de Puerto Rico en exceso de $1,750 millones anuales. Sin embargo, los compromisos dispuestos en el PAD para los(as) bonistas representan un impedimento significativo para la capacidad de cumplir con un superávit presupuestario que pueda allegar recursos suficientes para proveer semejante alivio. Varios(as) economistas han calificado las proyecciones de la JSAF como excesivamente optimistas, particularmente porque no toman suficientemente en consideración las proyecciones de pérdida poblacional como resultado del impacto combinado de la crisis económica y fiscal, el impacto de los huracanes Irma y María, y más recientemente, el terremoto del pasado 7 de enero de 2020 y sus múltiples réplicas. Si a ello se le suma que la propia JSAF proyecta que Puerto Rico enfrentará déficits presupuestarios a partir del 2038, difícilmente pueda celebrarse una medida de restauración de beneficios o una reserva para el pago de pensiones que no tiene posibilidades de ser activada.

La reacción a este cuadro de violaciones a PROMESA, de abdicación a la responsabilidad de asegurar las pensiones de nuestros(as) retirados(as) del Gobierno de Puerto Rico, el Magisterio y la Judicatura, de poner en riesgo nuestros servicios esenciales, de promover pagos a tenedores(as) de deuda ilegal y de comprometer a Puerto Rico con un servicio a la deuda insostenible, se ha dejado sentir.

En particular, el 7 de noviembre de 2019, esta Asamblea Legislativa aprobó la Resolución Concurrente de la Cámara Núm. 114. Mediante la misma, expresamos: *"el más absoluto y enérgico rechazo al Plan de Ajuste de la Junta de Supervisión Fiscal, de recomendar al Tribunal Federal un recorte de ocho y medio por ciento (8.5%) a la cantidad que reciben nuestros pensionados servidores públicos del Gobierno de Puerto Rico"*. Además, anunciamos: *"de manera clara e inequívoca que no aprobar[emos] legislación que viabilice el [PAD] ni la reducción de los beneficios actuales de retiro que tienen los empleados públicos, (gobierno central, municipios y corporaciones públicas) activos y jubilados, de forma tal que al momento de su retiro ningún grupo sufra una reducción en su pensión"*. Finalmente, la Resolución Concurrente expresa, en su Sección 3, que: *"apoyamos y autorizamos a los Presidentes de la Cámara de Representantes y el Senado de Puerto Rico, para ejercer las acciones que entiendan pertinentes, así como el uso de los recursos de la Asamblea Legislativa para defendernos de aquellas acciones de la Junta de Supervisión Fiscal que sean en detrimento de los mejores intereses de los puertorriqueños"*. En este sentido, el presente proyecto es la continuación lógica del trabajo comenzado mediante la citada Resolución Concurrente.

El recorte agregado al pago de las pensiones que impulsa la JSAF a través del Título III de PROMESA, que incluye los dispuestos en su acuerdo con el COR pero también las congelaciones y los recortes contenidos en los acuerdos con organizaciones sindicales como Servidores Públicos Unidos y la Asociación de Maestros de Puerto Rico-Local Sindical, excedería $12,500 millones durante el mismo plazo en que el Gobierno de Puerto Rico estaría pagando por el acuerdo de reestructuración contenido en el Plan de Ajuste de la Deuda de COFINA. El impacto a la economía de Puerto Rico de extraerle $12,500 millones a sus residentes más vulnerables, y quienes también son consumidores(as) principales en la economía local, tendrá un efecto devastador que la JSAF está subestimando en varias magnitudes.

El Fondo Monetario Internacional (en adelante, FMI), en sus análisis económicos sobre el efecto multiplicador en la economía de las políticas de austeridad, suele estimar que por cada dólar ($1.00) en recortes fiscales impulsados como medida de austeridad, la economía local perdería aproximadamente un dólar con cincuenta centavos ($1.50). Sin embargo, la experiencia en países como Grecia, donde el FMI ha optado por aplicar múltiples rondas de recortes fiscales, incluyendo en las pensiones y servicios públicos esenciales, el FMI ha tenido que reconocer que subestimaron considerablemente el efecto multiplicador de sus medidas de austeridad para la economía nacional. Según el análisis efectuado por expertos(as) en deuda soberana, como el economista y actual ministro de Finanzas de Argentina, Martín Guzmán, la experiencia en estos procesos apunta a que

las pérdidas para la economía son más cercanas a $3.54 por cada $1.00 en ajustes fiscales. Mientras tanto, la JSAF pretende retar ambas experiencias, suponiendo en sus proyecciones que el impacto negativo a la economía de Puerto Rico nunca excederá $1.34 por cada $1.00 en recortes.

Dicho de otra manera, la experiencia internacional indicaría que un recorte de $12,500 millones a las pensiones en Puerto Rico podría provocar una pérdida que supera $44,250 millones a la economía de Puerto Rico en los próximos 40 años. El indicador estándar del FMI para el efecto multiplicador que tendría el recorte en las pensiones en Puerto Rico, que por admisión del propio FMI es una subestimación del impacto real en las economías en las que se ha aplicado, sugiere que las pérdidas a la economía alcanzarían $18,750 millones en 40 años. Mientras tanto, la JSAF supone que el impacto nunca sería menor de $16,750 millones. El error en cálculo que estaría cometiendo la JSAF, limitándose nuestro análisis exclusivamente al efecto multiplicador correspondiente al recorte que propone para las pensiones, podría ser en la magnitud de hasta $27,500 millones, apostando con el futuro y las vidas de todos(as) en Puerto Rico.

El PAD y su propuesta de ganancias para fondos de cobertura y recortes a pensionados(as) y trabajadores(as) activos(as), además, falla en tomar en consideración adecuadamente las tendencias demográficas de Puerto Rico. Según datos reportados por el Censo, entre el 2010 y el 2019, la población de Puerto Rico se redujo en más de un 14%, o sobre 525,000 personas. A eso debe añadirse que, entre el 1 de julio de 2018 y el 1 de julio de 2019, en Puerto Rico murieron 7,393 personas más de las que nacieron. Las proyecciones demográficas aseguran que esa tendencia de decrecimiento poblacional no solo continuará, sino que se encuentra en un proceso de aceleración, dado el impacto combinado de la crisis económica y fiscal, el impacto de los huracanes Irma y María, y más recientemente, el terremoto del pasado 7 de enero de 2020 y sus múltiples réplicas. Así, mientras el plan fiscal del Gobierno de Puerto Rico certificado por la JSAF y el PAD comprometen al país al pago de un servicio a la deuda insostenible, la población responsable por generar esos recaudos al Gobierno se está yendo de Puerto Rico.

Según la información del Censo, la población de Puerto Rico está envejeciendo. Entre el 2010 y el 2018, la edad promedio de las personas que viven en Puerto Rico en Puerto Rico aumentó de 36.9 a 42.8 años, un aumento de casi 6 años, o un 16%. En ese mismo período, la población de personas mayores de 65 años aumentó de 604,594 a 747,314. Dicho de otra forma, en un período en el que la población total de Puerto Rico se redujo en sobre 500,000 habitantes, la población de personas mayores de 65 años aumentó en 142,720, o un 24%. Sin embargo, esa parte de esa población a quien la JSAF pretende, por un lado, recortar sus pensiones y, por otro, requerir que sigan consumiendo y contribuyendo a mantener un nivel óptimo de recaudos para el país con el fin de pagarle a compañías de fondos de cobertura que pretenden derivar ganancias millonarias de la quiebra de Puerto Rico. La pretensión de la JSAF no solo es irracional; es repudiable.

15

En la medida en la que nuestra población incluye cada vez más personas mayores de 65 años, es deber del Gobierno de Puerto Rico asegurar la calidad de vida y dignidad de esta población. El derecho a un retiro digno, pues, no puede verse como separado de la dignidad del ser humano que la Constitución de Puerto Rico consagra como primer derecho fundamental de quienes hacemos de este espacio nuestro hogar.

Finalmente, no podemos dejar pasar por desapercibido el que, el pasado 22 de febrero de 2020, cerca de 1,000 pensionados(as) de todos los sistemas de retiro celebraron una Asamblea Nacional de Pensionados en la que la comunidad de pensionados(as) repudiaron los trabajos y acuerdos de la JSAF, y se manifestaron contundente y decididamente en contra de nuevos recortes a las pensiones. La Asamblea fue convocada por el Frente en Defensa de las Pensiones, que agrupa pensionados(as) del Capítulo de Jubilados de la Federación de Maestros, el Capítulo de Jubilados de UNETE, la Federación de Pensionados y Jubilados de Puerto Rico, el Comité Especial de Jubilados del Colegio de Profesionales de Trabajo Social de Puerto Rico, y la campaña Construyamos Otro Acuerdo. Por su pertinencia a este proyecto, transcribimos la Resolución aprobada en esa Asamblea en su totalidad:

*"Resolución de la Asamblea Nacional de Pensionados para establecer su voluntad de Lucha por un Retiro Digno*

*POR CUANTO: La Ley PROMESA del gobierno de Estados Unidos coloca la deuda por encima de los servicios esenciales que requiere el pueblo y pretende recortar y desestabilizar el pago de las pensiones presentes y futuras.*

*POR CUANTO: Las leyes del gobierno de Puerto Rico han impuesto recortes a las pensiones del Gobierno de Puerto Rico y han cambiado el sistema de beneficios definidos a uno de contribución definida que conduce a los pensionados, pre-retirados y participantes de los sistemas de retiro a la indigencia.*

*POR CUANTO: La Junta de Control Fiscal, creada por PROMESA, ha impuesto recortes a los servicios esenciales, incluyendo a la Universidad de Puerto Rico y pretende eliminar el Fideicomiso del Sistema de Retiro de la UPR, reducir las pensiones y cambiar a planes de ahorro o contribución definida.*

*POR CUANTO: El Síndico del Tribunal de Quiebra Federal creó y nos impuso, en un proceso altamente antidemocrático, al Comité Oficial de Retirados (COR), como entidad para representar a los pensionados y pensionadas del gobierno central, magisterio y judicatura en el caso de quiebra, y que ha resultado en una entidad con serios conflictos de intereses y que ha traicionado a la clase pensionada negociando recortes a las pensiones.*

*POR TANTO: Los pensionados y pensionadas hoy alzamos nuestras voces al unísono reclamando un retiro digno. Estos reclamos son el punto de partida para el Puerto Rico que exigimos ahora. Son esenciales en esta coyuntura histórica, mientras los procesos de quiebra y la Junta de Control*

*Fiscal amenazan la calidad y dignidad de la vida en nuestro país. Por lo que la primera Asamblea Nacional por un Retiro Digno expresa su voluntad de lucha para:*

*1. Exigir la auditoría integral de la deuda con amplia participación ciudadana, la cancelación de todas las deudas ilegales y que no han generado ningún beneficio para el Pueblo y encausar a los responsables que nos llevaron a esta quiebra.*

*2. Rechazar el Plan de Ajuste de Deuda radicado por la Junta de Control Fiscal ante el Tribunal Federal que incluye recortar el 8.5% de las pensiones de los pensionados del Gobierno Central, Magisterio y Judicatura.*

*3. Desautorizar al Comité Oficial de Retirados (COR) como representantes legales de los pensionados del gobierno central, magisterio y judicatura respecto a cualquier determinación, gestión o acción relacionada a los pensionados porque no son nuestros representantes electos, sino nombrados e impuestos por el Tribunal Federal.*

*4. Defender a la Universidad de Puerto Rico y oponernos a cualquier medida dirigida a reducir las pensiones de los empleados de la UPR o a destruir el sistema de beneficio definido y el Fideicomiso del Sistema de Retiro UPR.*

*5. Rechazar el propuesto acuerdo con los bonistas de la AEE, que tiene como objetivo la privatización de la agencia e incluye un aumento en la factura de energía eléctrica de hasta un 50% que tiene un impacto desproporcionado en la clase pensionada porque significa un recorte adicional a sus pensiones.*

*6. Exigir a quien ocupe la Gobernación y a la Asamblea Legislativa que establezcan como política pública del gobierno de Puerto Rico: Cero recortes a las pensiones presentes y futuras y la cancelación de toda deuda del gobierno que sea necesaria para garantizar el pago de las pensiones y los servicios esenciales.*

*7. Exigir a quien ocupe la Gobernación y a la Asamblea Legislativa que definan los servicios esenciales: educación pública (básica y universitaria), salud, vivienda, seguridad, comunicaciones, agua, energía eléctrica y pensiones; se asigne los fondos necesarios para garantizar las pensiones y los servicios públicos al país.*

*8. Orientar a la clase pensionada, de trabajadores y al pueblo a No votar por los candidatos(as) a puestos electivos en las elecciones generales del 2020 que no actúen a favor de los reclamos de los pensionados o mantengan silencio respecto a los mismos. Su compromiso y acciones tienen que estar dirigidas a descartar el Plan de Ajuste de Deuda y cualquier medida que amenace los servicios esenciales y recortes a las pensiones presentes y futuras de los jubilados y empleados públicos.*

*9. Reclamar al Congreso de Estados Unidos la derogación inmediata de la Ley PROMESA, la eliminación de cualquier junta de control fiscal y, en su lugar, la aprobación de la Ley de Alivio Territorial que cancela los bonos no asegurados (HR 2526– S1312) para así destinar nuestros fondos públicos a garantizar el pago de las pensiones, la recuperación justa, fortalecimiento de servicios esenciales y desarrollo económico.*

*10. Exigir se garantice un retiro digno, que consiste en disfrutar de una pensión de beneficio definido y vitalicia que proteja a cada persona contra la pobreza en su vejez, con acceso a servicios médicos adecuados y ajustes por la inflación. Rechazamos por ser incompatibles con un retiro digno los aumentos injustificado al costo de vida en Puerto Rico que resultan de la privatización de servicios públicos, la deuda insostenible, los aumentos de impuestos para pagar deuda, los bajos salarios, empleos menos seguros y sin beneficios, la violencia de género contra las mujeres, los aumentos en los peajes, factura de agua y luz sin recibir más ni mejor calidad de servicios, la educación más cara, la salud más cara y menos disponible, el despilfarro de los fondos de recuperación, las carreteras y las casas sin arreglar, los cierres de escuelas y hospitales, el abandono de las islas municipios. Todo lo anterior empeora nuestra calidad de vida y la de nuestros hijos, hijas y nietos.   Queremos vivir en paz y dejar un mejor Puerto Rico para las próximas generaciones.*

*Aprobada el 22 de febrero de 2020, en San Juan, Puerto Rico."*

Como representantes electos(as) del Gobierno de Puerto Rico, no podemos desoír esas voces. Es imperativo que actuemos.

NUESTRA ALTERNATIVA

Cuando evaluamos las proyecciones fiscales realizadas por la AAFAF para los ingresos del Gobierno de Puerto Rico durante los próximos cuarenta años, todas indican que habría dinero suficiente para cumplir con el pago del 100% de las pensiones y otras obligaciones de los Sistemas de Retiro con sus pensionados(as) y participantes, proveyendo una financiación adecuada para asegurar el pago de las mismas a corto y largo plazo, y aún así sobra dinero. El problema que tiene la JSAF es que no hay proyecciones que respalden que habrá dinero suficiente para cumplir con los compromisos que está ofreciendo al puñado de fondos de cobertura con los que ha optado negociar el nuevo PSA, mientras tenga que pagar por las pensiones y otros servicios públicos esenciales.

Las prioridades de la JSAF están trastocadas y totalmente divorciadas de la realidad económica de los(as) contribuyentes, residentes y servidores(as) públicos(as) de Puerto Rico. Dado a escoger entre pagar el 100% de las pensiones de quienes han laborado y pagado toda una vida de aportaciones al país y a los Sistemas de Retiro, o pagar a un grupo de oportunistas que compraron a precios de quemarropa la deuda de un gobierno en quiebra tras múltiples desastres naturales históricos, o pagar un centavo de deuda que se emitió y se pagó en flagrante violación a las leyes y la Constitución, el Gobierno de Puerto Rico tiene el deber de proteger a sus constituyentes y siempre optar por la primera.

Los mecanismos disponibles al Gobierno de Puerto Rico para lograrlos bajo PROMESA fueron delegados, casi en su totalidad, a la JSAF a través de sus poderes presupuestarios bajo el Título II y su representación exclusiva del Gobierno de Puerto

Rico como deudor bajo el Título III. La Sección 315 de PROMESA impide que el Gobierno de Puerto Rico asuma su propia representación como deudor en el proceso de quiebra, por lo que también está impedido de presentar ante el Tribunal su propia propuesta para un Plan de Ajuste. Sin embargo, queda claro que la JSAF no podría completar un proceso de reestructuración con la confirmación de un Plan de Ajuste bajo el Título III sin el aval del Gobierno de Puerto Rico.

Aclarada la negativa de la Asamblea Legislativa, en la Resolución Concurrente de la Cámara Núm. 114, a colaborar o adelantar el PAD propuesto por la JSAF mientras implique recortes a las pensiones presentes o futuras, a través de esta Ley deseamos también aclarar cuáles serían las circunstancias bajo las cuales el Gobierno de Puerto Rico sí estaría en posición de colaborar con la JSAF para la pronta resolución de la quiebra gubernamental. A tales fines, se presenta la "Ley para un Retiro Digno", detallando una clara política pública delineando los elementos de un Plan de Ajuste modelo que toma en consideración los sacrificios a los cuales han estado sujetos los(as) pensionados(as) y participantes de los Sistemas de Retiro durante décadas, y pone en su justa perspectiva el trato que merecen frente a los(as) especuladores financieros que pretenden lucrarse de la miseria colectiva de quienes ayudaron a construir el Puerto Rico contemporáneo.

Para lograr el compromiso con una política pública de cero recortes a las pensiones, es necesario: (1) crear un fideicomiso para la administración conjunta de los Sistemas de Retiro (en adelante, FACSiR), el cual invertirá prudentemente sus recursos y asumirá sus obligaciones frente a sus participantes y pensionados(as); (2) a ser financiado con las aportaciones individuales y patronales correspondientes a sus participantes, además de los ahorros producidos mediante un Plan de Ajuste de Deuda que proteja el 100% de los beneficios existentes para los(as) pensionados(as) y participantes al momento de radicarse la petición de quiebra el 3 de mayo de 2017, a la vez que elimina por completo el servicio a la deuda de cualesquiera bonos gubernamentales fueran emitidos en violación a las leyes y la Constitución de Puerto Rico, y reduce el restante de la deuda a las cantidades que sean necesarias para producir los ahorros con los que se pueda financiar adecuadamente el nuevo fideicomiso; (3) devolver al fideicomiso los ingresos correspondientes a las aportaciones individuales e intereses dejados de devengar a través de los programas de contribución definida durante las pasadas dos décadas; (4) perseguir el derecho a recuperar de las instituciones financieras responsables por el asesoramiento y la emisión ilícita de deuda pública, aquellas cantidades que hayan devengado en ganancias, comisiones o ventas relacionadas con esa deuda impugnada; y (5) otorgar a los(as) pensionados(as) y participantes de los Sistemas de Retiro un derecho propietario sobre los activos e ingresos del fideicomiso para asegurar el pago de sus pensiones, de manera análoga a como han sido aseguradas las obligaciones de COFINA y el BGF en sus reestructuraciones.

Una reestructuración de este tipo difícilmente contará con el respaldo de los fondos de cobertura con los que ha negociado la JSAF hasta el momento. Sin embargo, la

Sección 1129(a)(10) del Código Federal de Quiebras, incorporada al procedimiento de quiebra bajo el Título III en virtud de la Sección 301 de PROMESA, permite la confirmación de un Plan de Ajuste de Deuda siempre y cuando al menos alguna de las clases que se han visto afectadas vote a favor del mismo. A su vez, la Sección 1129(b) del Código de Quiebras permite que el Tribunal imprima su aprobación al Plan de Ajuste, incluso por encima de la oposición de las clases restantes de acreedores(as). Ese mecanismo hace posible promover la aprobación de un Plan de Ajuste de Deuda que no imponga recortes adicionales a las pensiones y que, de ser aprobado por los(as) pensionados(as) de los distintos Sistemas de Retiro, pueda ser impuesto a los(as) demás acreedores(as), particularmente a las compañías de fondos de cobertura que pretenden generar ganancias millonarias con el PAD presentado por la JSAF el 9 de marzo de 2021.

Que en un proceso de quiebra gubernamental es posible reestructurar las deudas sobre bonos y otras acreencias sin imponer recortes adicionales a las pensiones no es un mito, sino una realidad. Eso fue, precisamente, lo que ocurrió con las quiebras de las ciudades de Vallejo, Stockton y San Bernardino, todas del Estado de California, en virtud del Capítulo 9 del Código de Quiebras. En estas, los planes de ajuste aprobados por la Corte de Quiebras autorizaron la reestructuración de las deudas de la ciudad sin imponer recortes a las pensiones, en reconocimiento de que las clases de pensionados(as) ya habían experimentado recortes a las pensiones, beneficios y demás derechos de retiro previo a la presentación de la quiebra.

En el caso de Puerto Rico, nuestros(as) pensionados(as) del Gobierno de Puerto Rico han experimentado cuantiosos recortes a sus pensiones, beneficios y demás derechos de retiro tanto antes como después de la presentación de la quiebra. En todas estas ocasiones, los recortes no fueron negociados con los(as) pensionados(as), sino que fueron impuestos a estos por el Gobierno de Puerto Rico. Como se indicó anteriormente, un informe comisionado por la JSAF a la firma Ernst & Young, documentó que, como resultado de la aprobación de la Ley 3-2013, los(as) pensionados(as) del programa de beneficios definidos bajo la Ley Núm. 447 experimentaron reducciones de hasta un 42% del valor agregado de sus pensiones, beneficios y demás derechos de retiro. Por su parte, los(as) pensionados(as) del programa de beneficios definidos bajo la Ley Núm. 447 que se convirtieron en participantes en una fecha posterior al 1 de abril de 1990, sufrieron recortes de hasta un 31% del valor agregado de sus pensiones, beneficios y demás derechos de retiro. Finalmente, los(as) pensionados(as) del Sistema 2000, que se convirtieran en participantes a partir del 1 de enero de 2000, recibieron una reducción de hasta un 15% del valor agregado de sus pensiones, beneficios y demás derechos de retiro.

La situación de los(as) pensionados(as) de los Sistemas de Retiro de los Maestros y la Judicatura no es diferente a la de los(as) pensionados(as) del Gobierno de Puerto Rico. Previo a la presentación de la quiebra en mayo de 2017, ya los(as) trabajadores(as) activos(as) habían sufrido recortes a sus derechos adquiridos de pensiones, beneficios y demás derechos de retiro en virtud de las Leyes 160-2013 y 162-2013 y, con posterioridad

a la presentación de la quiebra, tanto los(as) pensionados(as) como los(as) trabajadores(as) activos(as) experimentaron recortes a sus pensiones, beneficios y demás derechos de retiro en virtud de la Ley 106-2017.

Por último, los(as) pensionados(as) de los tres sistemas de retiro no reciben ajustes a sus pensiones por costo de vida (COLA) desde la aprobación de la Ley 35-2007. Esto significa que, en promedio, el valor de las pensiones se vio reducido en un 19% entre el 2007 y el 2019, y se proyecta una reducción de hasta 39% al 2037.

Los(as) bonistas cuyas acreencias ahora son privilegiadas por la JSAF se han beneficiado económicamente de todos estos recortes pre y post presentación de la quiebra del Gobierno de Puerto Rico. Todas estas medidas imponiendo recortes a nuestros(as) trabajadores(as) activos(as) y pensionados(as) imprimieron una falsa liquidez a los Sistemas de Retiro, una que no atendió adecuadamente los problemas que les aquejan, pero que permitía que el Gobierno continuara pagando sus deudas con los(as) bonistas y demás acreedores(as). Dicho de otra forma, mediante los pagos recibidos por los(as) bonistas y demás acreedores(as) a partir de la imposición de estos recortes a las pensiones, el Gobierno de Puerto Rico ha consistentemente privilegiado a estos(as) bonistas por encima de nuestros(as) trabajadores(as) activos(as) y pensionados(as). No dar por suficientes los recortes ya impuestos, tanto antes como después de la presentación de la quiebra, a los(as) trabajadores(as) activos(as) y pensionados(as), para fines de que esas clases de acreedores(as) se tomen como afectadas por un Plan de Ajuste de Deuda, es desentenderse de que dichos recortes fueron, precisamente, los que permitieron que el Gobierno de Puerto Rico continuara haciendo pagos a bonistas y acreedores(as) previo a la presentación de la quiebra, sin alteración alguna a sus derechos como acreedores(as). Es hora que los sacrificios de estos sectores tengan consecuencias tangibles a su favor.

Esta Ley reitera la política pública adoptada mediante la Resolución Concurrente de la Cámara Núm. 114, de que no es aceptable imponer recortes adicionales a los(as) pensionados(as) a la hora de aprobar cualquier Plan de Ajuste de Deuda o acuerdo de reestructuración de deudas como parte de los procedimientos bajo los Títulos III y VI de PROMESA. Así, se obliga a los Administradores de los Sistemas de Retiro del Gobierno de Puerto Rico, de los Maestros, y de la Judicatura, a certificar el impacto que han tenido todas las leyes y disposiciones normativas de nuestro ordenamiento que han impuesto recortes a las pensiones, beneficios y demás derechos de retiro, tanto antes como después del comienzo del procedimiento de quiebra bajo el Título III de PROMESA.

Aun luego de la aprobación de esta Ley, queda camino por recorrer para alcanzar el resultado que merecen los(as) pensionados(as) y participantes de los Sistemas de Retiro, pero el camino queda trazado en el propio cuerpo de esta legislación. Requerirá que todos los recursos que el Gobierno de Puerto Rico, la AAFAF, la Oficina de Gerencia y Presupuesto, el Departamento de Hacienda y la Junta de Retiro, creada por la Ley 106-2017, estén destinando actualmente para apoyar, directa o indirectamente, las gestiones

de la JSAF en el proceso de Título III, se deben concentrar exclusivamente en gestiones que adelanten el diseño, la planificación, las conversaciones y la eventual transición hacia la implementación de la Política Pública dispuesta en esta Ley. Eso incluye que la AAFAF utilice sus facultades para asegurar unidad de propósito e inversiones entre las gestiones realizadas a través de las distintas entidades gubernamentales, así como la más ágil colaboración y apertura de información y análisis entre la Rama Legislativa y la Rama Ejecutiva.

El camino emprendido para la impugnación de bonos emitidos en violación a las leyes de Puerto Rico ha dado frutos que se deben aprovechar al máximo como parte de una estrategia gubernamental para lograr algún grado de justicia para los(as) pensionados(as) y participantes de los Sistemas de Retiro en el proceso de quiebra. Tan reciente como el 30 de enero de 2020, la Corte de Apelaciones de los Estados Unidos para el Primer Circuito falló favorablemente en la impugnación de sobre $3,000 millones en bonos emitidos a través de la Administración de los Sistemas de Retiro de Empleados del Gobierno de Puerto Rico (en adelante, ASR), en el que se habían ofrecido las aportaciones patronales como única fuente de pago. Los(as) dueños(as) de estos bonos pretendían ejercer un derecho propietario, que nunca les fue conferido, sobre las aportaciones patronales del Gobierno de Puerto Rico a los Sistemas de Retiro. Este hecho quedó demostrado con la aprobación e implementación de la Ley 106-2017, con la eliminación de las aportaciones patronales a la ASR. Al así hacerlo, no solamente demostró que no existía semejante derecho propietario de los(as) bonistas de la ASR sobre las aportaciones patronales, efectivamente convirtiendo sus bonos en deuda no asegurada, sino que también abrió las puertas para restablecer y dirigir las aportaciones patronales hacia un nuevo fideicomiso, libres de gravámenes financieros que no sea el pago de las pensiones.

La impugnación del derecho propietario reclamado por los(as) bonistas de la ASR es la segunda de una serie de impugnaciones contra estos bonos. Aún está pendiente de resolución una impugnación sobre la validez legal de la emisión como tal, pues la ASR nunca tuvo la autorización legislativa requerida para emitir los bonos en primer lugar, y mucho menos utilizar las aportaciones patronales a la ASR para pagar por ellos. Así como están pendientes de resolución las impugnaciones a los bonos de la ASR, también se han impugnado más de una docena de emisiones de bonos de obligación general y de corporaciones públicas, pagaderas con el fondo general u otros ingresos generales creados por la Asamblea Legislativa. La descarga total de las deudas impugnadas en el Tribunal Federal, tanto por la JSAF y el Gobierno como por múltiples acreedores(as), proveería un alivio significativo a las arcas gubernamentales y, destinadas a un fideicomiso para el pago de las pensiones con una sana política de inversiones y mayores protecciones contra malversación de esos fondos, podrían ayudar a solventar la totalidad de las obligaciones proyectadas por la JSAF para el pago de pensiones, sin recortes, hasta el 2058.

Entre otras cosas, esta Ley requiere un nuevo diseño en la política de inversiones que se adoptaría desde el fideicomiso, de modo que refleje las mejores prácticas adoptadas por los 10 sistemas de retiro gubernamentales de beneficio definido más grandes de los Estados Unidos, a saber: el *California Public Employees Retirement System* (CalPERS), el *California State Teachers' Retirement System* (CalSTERS), el *New York State Common Retirement Fund*, el *New York City Retirement Systems*, el *Florida Retirement System Pension Plan* administrado por el *State Board of Administration* (SBA), el *Texas Teachers Retirement System*, el *New York State Teachers Retirement System*, el *Wisconsin Retirement System* administrado por el *State of Wisconsin Investment Board*, el *Ohio Public Employees Retirement System* y el *New Jersey Division of Investment*. Además, requerirá la adopción inmediata de los estándares expandidos de los deberes de fiducia en los sistemas de retiro, para requerir igual responsabilidad sobre los(as) asesores(as) financieros(as) y otros asesores(as) externos(as) que puedan asumir un rol decisivo en la capacidad del FACSiR para cumplir con su deber de pagar las pensiones, dispuestos en las partes 2509, 2510 y 2550 del Título 29 del Código de Regulaciones Federales, con número identificador de regulación (RIN, por sus siglas en inglés) 1210-AB32. Estos estándares fueron promovidos y aprobados por el Departamento del Trabajo Federal y serán aplicables al FACSiR, aun cuando se hayan dejado sin efecto para la regulación federal de los sistemas de retiro en el sector privado por orden del Presidente de los Estados Unidos.

El efecto agregado de la reforma financiera y administrativa que proponemos para las pensiones, canalizadas a través del FACSiR, no solamente aseguraría la capacidad de cumplir con hasta 120% de las pensiones existentes hasta el 2058, sino que representaría un ahorro de entre 33% a 37% en el flujo de efectivo anual para el Gobierno de Puerto Rico relativo al actual esquema *pay-as-you-go* creado a través de la Ley 106-2017, garantiza recursos suficientes acumulados para restablecer beneficios eliminados en el pasado a pensionados(as) y participantes, y abre las puertas para expandir beneficios y beneficiarios en el futuro. Con esta Ley enmendamos la política pública legislada en la Ley 106-2017 y dotamos a los Sistemas de Retiro, por primera vez en su historia, con una política pública en sus respectivas leyes orgánicas que refleje estas aspiraciones y el compromiso del Gobierno de Puerto Rico con sus servidores(as) públicos(as) jubilados(as).

La propuesta de PAD incluida en esta Ley no consume para el FACSiR la totalidad de los ahorros producidos por el recorte de deuda sostenible que promueve. Apuesta también a que habrá ahorros adicionales que deben ser priorizados para invertir en mejoras a los servicios públicos esenciales y, por ende, a los(as) servidores(as) públicos(as) que lo proveen. Solo invirtiendo en la recuperación y reconstrucción de la abatida economía de Puerto Rico podremos realmente recuperar la capacidad para balancear presupuestos y la confianza de los mercados de capital. Si contamos con los recursos propios para hacer esas inversiones en el corto plazo, tenemos el deber de luchar por ello con todos los poderes que se le confieren al Gobierno de Puerto Rico.

*DECRÉTASE POR LA ASAMBLEA LEGISLATIVA DE PUERTO RICO:*

## CAPÍTULO 1 - DISPOSICIONES GENERALES

Artículo 1.01.- Título

Esta Ley se conocerá como la "Ley para un Retiro Digno".

Artículo 1.02.- Primacía de esta Ley

Esta Ley se aprueba en el ejercicio del poder de razón del Estado, así como en la facultad constitucional que tiene la Asamblea Legislativa, reconocida en el Artículo II, Sección 19 de la Constitución de Puerto Rico, de aprobar leyes en protección de la vida, la salud y el bienestar del pueblo. Por esta razón, esta Ley tendrá primacía sobre cualquier otra ley estatal.

Inmediatamente a partir de la fecha de aprobación de esta Ley, se deja sin efecto toda ley orgánica, ley general o especial, artículo o sección de ley, normativa, cláusulas y/o disposiciones de convenios colectivos, acuerdos, acuerdos suplementarios, órdenes administrativas, políticas, manuales de empleo, cartas circulares, certificaciones, reglamentos, reglas y condiciones de empleo, cartas normativas, planes de clasificación o retribución, cartas contractuales, contratos de servicios profesionales, contratos de consultoría y/o disposiciones aplicables exclusivamente a los beneficios marginales que podrán disfrutar los(as) funcionarios(as) o empleados(as) públicos(as) unionados(as) o no unionados(as) del Gobierno del Estado Libre Asociado de Puerto Rico, incluyendo a todo(a) empleado(a) unionado(a) o no unionado(a) de las Corporaciones Públicas del Gobierno del Estado Libre Asociado de Puerto Rico y los Municipios, que vaya en contra de las disposiciones de esta Ley. Esto no elimina el derecho de los sindicatos de negociar condiciones de trabajo, económicas y no económicas, que no estén contenidas en la presente legislación conforme al ordenamiento jurídico vigente.

Artículo 1.03.- Aplicabilidad de esta Ley

Esta Ley será de aplicación inmediata al Gobierno del Estado Libre Asociado de Puerto Rico, las Corporaciones Públicas del Gobierno del Estado Libre Asociado de Puerto Rico, los Municipios, y cualquier otra entidad o instrumentalidad pública creada al amparo de las leyes o la Constitución de Puerto Rico, incluyendo, sin que se entienda como una limitación, a la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, el Sistema de Retiro de Empleados del Gobierno del Estado Libre Asociado de Puerto Rico, el Sistema de Retiro para Maestros del Gobierno del Estado Libre Asociado de Puerto Rico y el Sistema de Retiro para la Judicatura del Gobierno del Estado Libre Asociado de Puerto Rico.

Artículo 1.04.- Declaración de estado de emergencia

Por la presente se determina y declara que el Gobierno del Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico, el Sistema de Retiro para la Judicatura del Gobierno del Estado Libre Asociado de Puerto Rico y el Sistema de Retiro para Maestros del Gobierno del Estado Libre Asociado de Puerto Rico se encuentran en un estado de emergencia financiera. Se estima que en el año natural 2021 se producirá un plan de ajuste de las obligaciones del Gobierno del Estado Libre Asociado de Puerto Rico y los Sistemas de Retiro que provocaría recortes adicionales y permanentes a los beneficiarios(as) y participantes activos(as) de los Sistemas de Retiro, comprometería al Gobierno del Estado Libre Asociado de Puerto Rico al pago de obligaciones insostenibles a treinta (30) años con el mercado de capital, condenaría al pueblo de Puerto Rico a una segunda insolvencia y quiebra en el corto plazo, y expondría las pensiones de los(as) servidores(as) públicos(as) a una probable ronda adicional de impago en menos de veinte (20) años.

El 3 de mayo de 2017, la Junta de Supervisión y Administración Financiera para Puerto Rico (JSAF) asumió la representación del Gobierno del Estado Libre Asociado de Puerto Rico conforme a la Sección 315 de *Puerto Rico Oversight Management and Economic Stability Act, (PROMESA)* y presentó una petición bajo la Sección 304 de PROMESA para que el Gobierno del Estado Libre Asociado de Puerto Rico se acogiera al Título III de PROMESA. El 21 de mayo de 2017, la JSAF hizo lo mismo para que el Sistema de Retiro de Empleados del Gobierno del Estado Libre Asociado y de la Judicatura también se acogiera al Título III de PROMESA. Con la presentación de la petición bajo el Título III de PROMESA, se inició un proceso de reestructuración de las obligaciones del Gobierno del Estado Libre Asociado de Puerto Rico y las de los Sistemas de Retiro bajo la supervisión del Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico. La Sección 315 de PROMESA delega exclusivamente a la JSAF la potestad de representar los intereses del Gobierno del Estado Libre Asociado de Puerto Rico, y los de sus demás instrumentalidades igualmente acogidas al Título III de PROMESA, ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, por lo que el Gobierno del Estado Libre Asociado de Puerto Rico ha estado impedido de representar adecuadamente los mejores intereses del pueblo en la dirección de este proceso.

La JSAF ha sido incapaz de producir un plan de ajuste de las obligaciones del Gobierno del Estado Libre Asociado de Puerto Rico, los Sistemas de Retiro y demás instrumentalidades, que cumpla con los requisitos de viabilidad dispuestos en la Sección 314(b)(6) de PROMESA y se ha mostrado incapaz de asegurar los fondos necesarios para proveer servicios públicos esenciales y la financiación adecuada para los sistemas de pensiones del Gobierno del Estado Libre Asociado de Puerto Rico, según requerido en la Sección 201(b)(1)(B) y la Sección 201(b)(1)(C) de PROMESA, respectivamente.

Ante esta situación, de forma inmediata se deben tomar medidas razonables y necesarias para asegurar que los(as) pensionados(as) continúen recibiendo sus pensiones, se protejan las aportaciones individuales de nuestros(as) servidores (as) públicos(as) y se proteja el futuro de los mismos.

Los tres Sistemas de Retiro deben seguir cumpliendo con sus obligaciones hacia sus beneficiarios(as) de manera sostenida.  A fin de prevenir que el daño sea irreparable tras la aprobación de un plan de ajuste de deuda inviable bajo el Título III de PROMESA, declaramos que el Gobierno del Estado Libre Asociado de Puerto Rico y los Sistemas de Retiro se encuentran en un estado de grave emergencia que claramente perjudica la salud y la seguridad pública de más de una décima parte de la población de Puerto Rico y los servicios públicos esenciales para todo el Pueblo.

Artículo 1.05.- Definiciones

Las siguientes palabras y términos, cuando sean usados o se haga referencia a los mismos en esta Ley, tendrán el significado indicado a continuación a menos que del contexto surja claramente otro significado. Los tiempos usados en el presente incluyen también el futuro, si en algún lugar se usa una palabra en masculino solamente como norma genérica, se entenderá enmendado a una palabra o palabras que muestren la inclusión masculina y femenina, así como no binaria en el lenguaje, salvo en aquellos casos que tal interpretación resultare absurda. El número singular incluye el plural y el plural el singular.

(a)     AAFAF: la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, creada por la Ley 2-2017.

(b)     ACT: la Autoridad de Carreteras y Transportación, creada por la Ley Núm. 74 de 23 de junio de 1965, según enmendada.

(c)     Acuerdo de Reestructuración: significa cualquier acuerdo entre: (1) el Gobierno del Estado Libre Asociado de Puerto Rico, según definido en esta Ley; (2) la JSAF; (3) bonistas del Gobierno del Estado Libre Asociado de Puerto Rico; (4) aseguradoras de bonos, se hayan o no subrogado en el derecho de crédito de los(as) bonistas, del Gobierno del Estado Libre Asociado de Puerto Rico; con relación a, o en apoyo de cualquier transacción que implique una Modificación Calificativa, según este concepto es definido en el Título VI de PROMESA o un Ajuste, según este concepto es utilizado en el Título III de PROMESA, de los bonos del Gobierno del Estado Libre Asociado de Puerto Rico.

(d)     ADCC: la Autoridad del Distrito del Centro de Convenciones de Puerto Rico, creada por la Ley 142-2001, según enmendada.

(e)     Administradores(as) de los Sistemas de Retiro: el(la) Administrador(a) del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico, según establecido por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada y el Director(a) Ejecutivo(a) del Sistema de Retiro para Maestros de Puerto Rico, según establecido por la Ley 160-2013, según enmendada.

(f)     AEP: la Autoridad de Edificios Públicos de Puerto Rico, creada por la Ley Núm. 56 de 19 de junio de 1958, según enmendada.

(g)     AFI: la Autoridad para el Financiamiento de la Infraestructura, creada por la Ley Núm. 44 de 21 de junio de 1988, según enmendada.

(h)     Bonos Impugnados: colectivamente, todas las emisiones de bonos realizadas por el Gobierno del Estado Libre Asociado de Puerto Rico cuyas cuyas garantías jurídicas, cuantías garantizadas, fuentes de pago comprometidas o autorizaciones legales hayan sido retadas ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico o ante el Tribunal General de Justicia por parte del Gobierno del Estado Libre Asociado de Puerto Rico, la JSAF, los comités oficiales de acreedores(as) y retirados(as), cualesquiera otras Partes Interesadas, según dicho término es definido en el Código de Quiebras de los Estados Unidos o personas con legitimación activa para intervenir mediante la presentación de petición de quiebra, memorando de derecho, moción, demanda, o procedimiento adversarial al amparo de algún caso presentado y pendiente de resolución final bajo del Título III de PROMESA. Incluye, sin que se entienda como una limitación:

(i)     la Serie A de los *Senior Pension Funding Bonds* emitida por la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (ASR) el 31 de enero de 2008, por la cantidad agregada de mil quinientos ochenta y ocho millones ochocientos diez mil setecientos noventa y nueve y sesenta céntimos (1,588,810,799.60) dólares en principal, que incluye mil quinientos cuarenta y tres millones setecientos setenta mil (1,543,770,000) dólares en bonos a plazo y cuarenta y cinco millones cuarenta mil setecientos noventa y nueve dólares y sesenta céntimos (45,040,799.60) dólares en bonos de apreciación de capital y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramírez & Co., Inc., Scotia Capital, TCM Capital* y *Wachovia Capital Markets, LLC* originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(ii)     la Serie B de los *Senior Pension Funding Bonds* emitida por la ASR el 2
de junio de 2008, por la cantidad agregada de mil cincuenta y ocho
millones seiscientos treinta y cuatro mil seiscientos trece y cinco
céntimos (1,058,634,613.05) dólares en principal, que incluye
ochocientos dieciséis millones cien mil (816,100,000) dólares en bonos
a plazo y doscientos cuarenta y dos millones quinientos treinta y
cuatro mil seiscientos trece y cinco céntimos (242,534,613.05) dólares
en bonos de apreciación de capital, y que fue suscrita por *UBS
Financial Services Incorporated of Puerto Rico, Popular Securities,
Santander Securities*, originalmente ofrecidos para reventa
exclusivamente a residentes de Puerto Rico en el mercado de capital
de Puerto Rico;

(iii)    la Serie C de los *Senior Pension Funding Bonds* emitida por la ASR el 30
de junio de 2008, por la cantidad agregada de trescientos millones
doscientos dos mil novecientos treinta (300,202,930) dólares en
principal, que incluye doscientos noventa y ocho millones
(298,000,000) de dólares en bonos a plazo y dos millones doscientos
dos mil novecientos treinta (2,202,930) dólares en bonos de
apreciación de capital y que fue suscrita por *UBS Financial Services
Incorporated of Puerto Rico, Popular Securities, Santander Securities,
BBVAPR MSD, Citi, Eurobank MSD, Lehman Brothers, Merrill Lynch &
Co., Oriental Financial Services Corporation, Samuel A. Ramírez & Co.,
Inc., Scotia Capital y Wachovia Capital Markets, LLC* y originalmente
ofrecidos para reventa exclusivamente a residentes de Puerto Rico en
el mercado de capital de Puerto Rico;

(iv)     la Serie K de los *Government Facilities Revenue Refunding Bonds*
emitidos por la Autoridad de Edificios Públicos (AEP) el 1 de julio de
2009, por la cantidad de cincuenta millones (50,000,000) de dólares en
principal de bonos a plazo identificados por el número CUSIP
745235L82 al momento de la emisión y que fue suscrita por *Merrill
Lynch & Co.* y *Ramírez & Co., Inc.*;

(v)      la Serie P de los *Government Facilities Revenue Refunding Bonds* emitida
por la AEP el 1 de julio de 2009, por la cantidad agregada de
trescientos treinta millones novecientos treinta y cinco mil
(330,935,000) dólares en principal, que incluye doscientos quince
millones ciento sesenta mil (215,160,000) dólares en bonos a plazo
identificados por los números CUSIP 745235K75, 745235K83,
745235K91, 745235L25 y 745235L33 al momento de la emisión y ciento
quince millones setecientos setenta y cinco mil (115,775,000) dólares
en bonos en serie identificados por los números CUSIP 745235L41,

745235L58, 745235L66 y 745235L74 al momento de la emisión y que fue suscrita por *Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities* y *UBS Financial Services Incorporated of Puerto Rico*;

(vi)     la Serie Q de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 28 de octubre de 2009, por la cantidad agregada de ciento cincuenta y dos millones quinientos cuarenta mil (152,540,000) dólares en principal, que incluye ciento cuarenta y cuatro millones trescientos cuarenta mil (144,340,000) dólares en bonos a plazo identificados por los números CUSIP 745235M24, 745235M32 y 745235M40 al momento de la emisión, y ocho millones doscientos mil (8,200,000) dólares en bonos en serie identificados por el número de CUSIP 745235L90 al momento de la emisión y que fue suscrita por *Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities* y *UBS Financial Services Incorporated of Puerto Rico*;

(vii)    la Serie R de los *Government Facilities Revenue Bonds* emitida por la AEP el 24 de agosto de 2011, por la cantidad agregada de setecientos cincuenta y seis millones cuatrocientos cuarenta y nueve mil (756,449,000) dólares en principal identificados por los números CUSIP 745235 M57, 745235 M73, 745235 M65 y 745235 M81 al momento de la emisión y que fue suscrita por *Popular Securities, Bank of America Merrill Lynch, Santander Securities, UBS Financial Services Incorporated of Puerto Rico, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James* y *Scotia MSD* y originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(viii)   la Serie S de los *Government Facilities Revenue Bonds* emitida por la AEP el 24 de agosto de 2011, por la cantidad agregada de trescientos tres millones novecientos cuarenta y cinco mil (303,945,000) dólares en principal, que incluye doscientos ocho millones novecientos cuarenta y cinco mil (208,945,000) dólares en bonos a plazo identificados por los números CUSIP 745235P62 y 745235P70 al momento de la emisión y noventa y cinco millones (95,000,000) de dólares en bonos en serie identificados por los números CUSIP 745235M99, 745235N23, 745235N31, 745235N49, 745235N56, 745235N64, 745235N72, 745235N80, 745235N98, 745235P21, 745235P39, 745235P47, 745235P54 y 745235P88 al momento de la

emisión y que fue suscrita por *Ramírez & Co., Inc., RBC Capital Markets, Barclays Capital, BMA Capital Markets, Bank of America Merrill Lynch, Citigroup, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Morgan Stanley, Raymond James, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD* y *VAB Financial;*

(ix)   la Serie T de los *Government Facilities Revenue Bonds – Qualified Zone Academy Bonds* emitida por la AEP el 22 de diciembre de 2011, por la cantidad agregada de ciento veintiún millones quinientos veintiocho mil (121,528,000) dólares en principal identificados por el número CUSIP 745235Q20 al momento de la emisión y que fue suscrita por *Santander Securities* y *UBS Financial Services Puerto Rico;*

(x)   la Serie U de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 21 de junio de 2012, por la cantidad agregada de quinientos ochenta y dos millones trescientos cuarenta y cinco mil (582,345,000) dólares en principal, que incluye quinientos treinta y ocho millones seiscientos setenta y cinco mil (538,675,000) dólares en bonos a plazo identificados por el número CUSIP 745235R37 al momento de la emisión, y cuarenta y tres millones seiscientos setenta mil (43,670,000) dólares en bonos en serie identificados por los números CUSIP 745235S51, 745235R45, 745235R52, 745235R60, 745235R78, 745235R86, 745235R94, 745235S28, 745235S36, 745235S44 y 745235S69 al momento de la emisión y que fue suscrita por *Goldman Sachs & Co., BMO Capital Markets, RBC Capital Markets,* Barclays, *Bank of America Merrill Lynch, Citigroup, Jefferies, J.P. Morgan, Morgan Stanley, Ramírez & Co., Inc., Raymond James Morgan Keegan,* Wells *Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD, UBS Financial Services Puerto Rico* y *VAB Financial;*

(xi)   la Serie A de los *General Obligation Bonds* emitida por el Gobierno de Puerto Rico el 17 de marzo de 2014, por la cantidad de tres mil quinientos millones (3,500,000,000) de dólares en principal de bonos a plazo identificados por el número CUSIP 74514LE86 al momento de la emisión y que fue suscrita por *Barclays, Morgan Stanley, RBC Capital Markets, Bank of America Merrill Lynch, Goldman Sachs & Co., J.P. Morgan, Ramírez & Co., Inc., FirstBank PR Securities, Jefferies, Mesirow Financial, Inc., Oriental Financial Services, Popular Securities, Santander Securities* y *UBS Financial Services Puerto Rico;*

(xii)     la Serie A de los *Public Improvement Refunding Bonds – General Obligation Bonds* emitida por el Gobierno de Puerto Rico el 3 de abril de 2012, por la cantidad agregada de dos mil trescientos dieciocho millones ciento noventa mil (2,318,190,000) dólares en principal, que incluye mil seiscientos setenta y ocho millones setecientos cuarenta y cinco mil (1,678,745,000) dólares en bonos a plazo identificados por los números CUSIP 74514LD20, 74514LB63, 74514LB71 y 74514LB89 al momento de la emisión, y seiscientos treinta y nueve millones cuatrocientos cuarenta y cinco mil (639,445,000) dólares en bonos en serie identificados por los números CUSIP 74514LA31, 74514LC47, 74514LA49,    74514LC54,    74514LA56,    74514LC62,    74514LD46, 74514LC70,    74514LA64,    74514LD53,    74514LC88,    74514LA72, 74514LD61,    74514LA80,    74514LD79,    74514LD38,    74514LC96, 74514LA98,    74514LB22,    74514LD87,    74514LB30,    74514LB48, 74514LB97, 74514LB55, 74514LC21 y 74514LC39 al momento de la emisión y que fue suscrita por *Barclays Capital, J.P. Morgan, Goldman Sachs & Co., Jefferies, BMO Capital Markets, Bank of America Merrill Lynch, Citigroup, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(xiii)    la Serie B de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 29 de marzo de 2012, por la cantidad agregada de cuatrocientos quince millones doscientos setenta mil (415,270,000) dólares en principal, que incluye cuarenta y nueve millones seiscientos diez mil (49,610,000) dólares en bonos a plazo identificados por el número CUSIP 74514LA23 y trescientos sesenta y cinco millones seiscientos sesenta mil (365,660,000) dólares en bonos en serie identificados por los números CUSIP 74514LZS9, 74514LZT7, 74514LZU4,    74514LZV2,    74514LZW0,    74514LZX8,    74514LZY6, 74514LZZ3 y que fue suscrita por *UBS Financial Services Puerto Rico, Bank of America Merrill Lynch, Popular Securities, Santander Securities, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank PR Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James y Scotia MSD;*

(xiv)     la Serie C de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de marzo de 2011, por la cantidad agregada de cuatrocientos cuarenta y dos millones quince mil (442,015,000) dólares en principal, que incluye ciento veintisiete millones quince mil (127,015,000) dólares en bonos a plazo

identificados por el número CUSIP 74514LXH5, y trescientos quince
millones (315,000,000) de dólares en bonos en serie identificados por
los números CUSIP 74514LWY9, 74514LXD4, 74514LXE2,
74514LXA0, 74514LXB8, 74514LXF9, 74514LWZ6, 74514LXC6,
74514LXG7 y 74514LWX1 y que fue suscrita por *Morgan Stanley,
Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch,
Citi, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Ramírez &
Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services
Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD,
FirstBank Puerto Rico Securities, Oriental Financial Services, Popular
Securities, Santander Securities* y *VAB Financial;*

(xv)     la Serie D de los *Public Improvement Refunding Bonds* emitida por el
Gobierno de Puerto Rico el 12 de julio de 2011, por la cantidad de
cincuenta y dos millones ciento noventa mil (52,190,000) dólares en
principal en bonos en serie identificados por los números CUSIP
74514LYX9, 74514LYY4, 74514LYZ4, 74514LZA8, 74514LB6,
74514LZC4, 74514LZH3, 74514LZF7, 74514LZD2, 74514LZJ9,
74514LZG5 y 74514LZE0 y que fue suscrita por *J.P. Morgan, Barclays
Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi,
Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramírez &
Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services
Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD,
FirstBank Puerto Rico Securities, Oriental Financial Services, Popular
Securities, Santander Securities, Scotia MSD* y *VAB Financial;*

(xvi)    la Serie E de los *Public Improvement Bonds* emitida por el Gobierno de
Puerto Rico el 12 de julio de 2011, por la cantidad de doscientos
cuarenta y cinco millones novecientos quince mil (245,915,000)
dólares en principal en bonos en serie identificados por los números
CUSIP 74514LZK6, 74514LZL4, 74514LZM2, 74514LZN0, 74514LZP5
y 74514LZQ3 y que fue suscrita por *J.P. Morgan, Barclays Capital, BMO
Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs &
Co., Jefferies & Company, Morgan Stanley, Ramírez & Co., Inc., Raymond
James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto
Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico
Securities, Oriental Financial Services, Popular Securities, Santander
Securities, Scotia MSD* y *VAB Financial;*

(xvii)   la Serie A de los *Public Improvement Refunding Bonds* emitida por el
Gobierno de Puerto Rico el 17 de septiembre de 2009, por la cantidad
de tres millones cuatrocientos veinticinco mil (3,425,000) dólares en
principal de bonos a plazo identificados por el número CUSIP

74514LVV6 y que fue suscrita por *Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities y UBS Financial Services of Puerto Rico*;

(xviii)  la Serie 2007 A-4 de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de septiembre de 2009, por la cantidad de noventa y tres millones ochocientos treinta y cinco mil (93,835,000) dólares en principal de bonos en serie identificados por los números CUSIP 74514LVT1 y 74514LVU8, y que fue suscrita por *Morgan Stanley y JP Morgan*;

(xix)  la Serie B de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de noviembre de 2009, por la cantidad de trescientos setenta y dos millones seiscientos ochenta y cinco mil (372,685,000) dólares en principal de bonos a plazo identificados por los números CUSIP 74514LVX2, 74514LVY0, 74514LVZ7 y 74514LVW4 y que fue suscrita por *Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs, Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico*;

(xx)  la Serie C de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 16 de diciembre de 2009, por la cantidad de doscientos diez millones doscientos cincuenta mil (210,250,000) dólares en principal de bonos a plazo identificados por el número CUSIP 74514LWA1, y que fue suscrita por *Morgan Stanley, Citi, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch & Co., Ramírez & Co., Inc., UBS Financial Services Incorporated of Puerto Rico, FirstBank Puerto Rico Securities, Popular Securities y Santander Securities*; y,

(xxi)  la Serie A de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de febrero de 2011, por la cantidad de trescientos cincuenta y seis millones quinientos veinte mil (356,520,000) dólares en principal de bonos en serie identificados por los números CUSIP 74514LWN3, 74514LWJ2, 74514LWP8, 74514LWK9, 74514LWL7, 74514LWM5, 74514LWQ6, 74514LWT0, 74514LWR4 y 74514LWS2 y que fue suscrita por *Barclays Capital, Jefferies & Company, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Ramírez & Co.*, Inc., *Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities y Santander Securities*;

(i)     Bonos No Impugnados: colectivamente, todas las emisiones de bonos (i) realizadas por el Gobierno del Estado Libre Asociado de Puerto Rico cuyas garantías jurídicas, cuantías garantizadas, fuentes de pago comprometidas o autorizaciones legales no hayan sido retadas ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico o ante el Tribunal General de Justicia por parte del Gobierno del Estado Libre Asociado de Puerto Rico, la JSAF, los comités oficiales de acreedores(as) y retirados(as), cualesquiera otras Partes Interesadas, según dicho término es definido en el Código de Quiebras de los Estados Unidos o personas con legitimación activa para intervenir mediante la presentación de petición de quiebra, memorando de derecho, moción, demanda o procedimiento adversarial al amparo de algún caso presentado y pendiente de resolución final bajo del Título III de PROMESA; y (ii) que aún estén pendientes de pago.

(j)     Código de Quiebras: se refiere al Título 11 del Código de los Estados Unidos, el cual dispone sobre los mecanismos de composición o ajustes de deudas para individuos(as), corporaciones y entidades gubernamentales.

(k)     Coeficiente de Financiación Adecuada: es la proporción, equivalente a 1.2, de recursos propios totales del Fideicomiso para la Administración Conjunta de los Sistemas de Retiro relativo a sus obligaciones totales, según determinados anualmente mediante estudio actuarial independiente basado en el método y la valoración agregada del costo y la financiación actuarial utilizados por la Oficina del Contralor del Estado de Nueva York para la administración de los sistemas de retiro gubernamentales de ese estado, para alcanzar un nivel adecuado de financiación de las pensiones.

(l)     Colateral Sustituta: significa todo o una porción de una contribución de aplicación general a través de Puerto Rico que se legisle en sustitución total de los Ingresos del FACSiR o que de otra manera constituya colateral similar o comparable para el pago de las pensiones, las anualidades, los beneficios y demás acreencias de los(as) servidores(as) públicos(as) Participantes y Pensionados de los Sistemas de Retiro o del FACSiR, según dichas pensiones, anualidades, estructuras de beneficios o acreencias estuvieran vigentes previo a la radicación de la petición de quiebra el 3 de mayo de 2017.

(m)    CUSIP: se refiere al Comité de Procedimientos Uniformes de Identificación de Valores (Committee on Uniform Securities Identification Procedures), cuyo sistema de numeración permite la identificación única de todas las acciones y los bonos registrados en los mercados de capital de los Estados Unidos y Canadá y se utiliza para crear una distinción concreta entre los valores que se negocian en los mercados públicos. El Comité de

Procedimientos Uniformes de Identificación de Valores (CUSIP) supervisa
todo el sistema de numeración CUSIP.

(n)     ERISA: significa la "Ley para la Seguridad de los Ingresos de Retiro de los
        Empleados" (en inglés, "Employee Retirement Income Security Act") de
        1974, incorporada al Título 29 del Código de los Estados Unidos.

(o)     Fideicomiso de los Niños: el Fideicomiso de los Niños creado por la Ley
        173-1999, según enmendada.

(p)     Fideicomiso para la Administración Conjunta de los Sistemas de Retiro: en
        adelante, FACSiR, es el nuevo Sistema de Retiro diseñado y promovido en
        esta Ley y que administraría un nuevo fideicomiso en el que se consolidan
        los recursos y las obligaciones del Sistema de Retiro de los Empleados del
        Gobierno de Puerto Rico, según establecido por la Ley Núm. 447 de 15 de
        mayo de 1951, según enmendada, en adelante SRE; el Sistema de Retiro
        para la Judicatura, creado mediante la Ley Núm. 12 de 19 de octubre de
        1954, según enmendada, en adelante SRJ; y el Sistema de Retiro para
        Maestros de Puerto Rico, según establecido por la Ley 160-2013, en adelante
        SRM y se centralizan la gestión y los gastos de administración de los
        mismos, tras la confirmación de un Plan de Ajuste viable, justo y equitativo
        para el pueblo y para los Pensionados y Participantes de los Sistemas de
        Retiro.

(q)     Gobierno del Estado Libre Asociado de Puerto Rico o Gobierno: significa
        todos los entes que componen el Gobierno del Estado Libre Asociado de
        Puerto Rico creado por la Constitución de Puerto Rico, incluyendo, sin
        limitación, sus departamentos, corporaciones públicas, instrumentalidades,
        comisiones, juntas, divisiones, negociados, oficinas, fideicomisos,
        municipios, agencias y dependencias. Este concepto se interpretará de la
        forma más amplia para incluir, sin que se entienda como una limitación, a
        cualquier entidad que reciba recursos del Fondo General y que emita deuda
        pública. Para fines de esta Ley, este término incluye cualesquiera entidades,
        gubernamentales o no gubernamentales, cuyos(as) empleados(as) cotizan
        actualmente en los Sistemas de Retiro o en el Nuevo Plan de Aportaciones
        Definidas creado a través de la Ley 106-2017, según enmendada, conocida
        como "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un
        Nuevo Plan de Aportaciones Definidas para los Servidores Públicos".

(r)     Ingresos del Fideicomiso o Ingresos del FACSiR: incluirán, sin que se
        entienda como una lista exhaustiva o limitación:

(i)     la transferencia del cien (100) por ciento del balance depositado en la Cuenta para el Pago de las Pensiones Acumuladas, creada por virtud de la Ley 106-2017, según enmendada;

(ii)    el cien (100) por ciento de las aportaciones individuales de los(as) Participantes;

(iii)   el cien (100) por ciento de las aportaciones patronales del Gobierno del Estado Libre Asociado de Puerto Rico;

(iv)    el cien (100) por ciento de los ahorros anuales producidos por la descarga, anulación o reducción en el Servicio de Deuda Pendiente de Pago de los Bonos Impugnados;

(v)     la restitución del cien (100) por ciento de las aportaciones individuales retenidas a los Participantes del Programa de Cuentas de Ahorro para el Retiro, creado por virtud del Capítulo 3 de la Ley Núm. 447 de 15 de mayo de 1951 y los daños correspondientes al rendimiento de inversión dejado de devengar tras el incumplimiento del Administrador del SRE con el Artículo 3-103 y el Artículo 3-105 del Programa de Cuentas de Ahorro para el Retiro y la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, por una cantidad que nunca será menor a la dispuesta en la Sección 3.13 de esta Ley;

(vi)    el cien (100) por ciento de cualesquiera sentencias judiciales, y los derechos propios y del Gobierno del Estado Libre Asociado de Puerto Rico a procurar y recibir restitución, por daños y perjuicios sufridos en el erario público a consecuencia de la impericia, negligencia, temeridad o malicia de los bancos suscriptores y sus representantes o consultores profesionales en la emisión, compra y venta de Bonos Impugnados;

(vii)   el cien (100) por ciento de los réditos por las inversiones y los activos del FACSiR, incluyendo los activos de los Sistemas de Retiro que no hayan sido liquidados o transferidos a la Cuenta para el Pago de las Pensiones Acumuladas tras la aprobación de la Ley 106-2017, según enmendada, cuya titularidad también será transferida, sin liquidar el activo, al FACSiR;

(viii)  el cien (100) por ciento de las economías netas producidas en la administración del FACSiR y sus activos;

(ix)    el cien (100) por ciento de cualesquiera otros ingresos propios que pueda generar el FACSiR sin arriesgar el Coeficiente de Financiación Adecuada, en cumplimiento con deberes fiduciarios dispuestos en la Sección 3.08 de esta Ley y que sean cónsonos con los poderes conferidos al Fideicomiso en ley; y,

(x)    la cantidad mayor entre: (i) el cincuenta (50) por ciento de los ahorros anuales producidos por la descarga o reducción en el servicio de deuda de Bonos No Impugnados, o (ii) la totalidad de los ahorros anuales que sean necesarios producir en el servicio de deuda de Bonos No Impugnados para alcanzar el Coeficiente de Financiación Adecuada en un plazo no mayor de quince (15) años, a través de un Plan de Ajuste de Deuda bajo el Título III de PROMESA.

(s)    JSAF: la Junta de Supervisión y Administración Financiera para Puerto Rico, creada al amparo de los Títulos I y II de PROMESA.

(t)    Junta de Retiro: junta creada al amparo de las disposiciones del Capítulo 4 de la Ley 106-2017, según enmendada, conocida como "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos".

(u)    "Ley Sarbanes-Oxley": significa la "Ley Sarbanes-Oxley" de 2002, Ley Pública 107-204, aprobada por el Gobierno de los Estados Unidos el 30 de julio de 2002.

(v)    Mejores Prácticas de Contabilidad: significa el establecimiento de un sistema de controles de contabilidad que sean cónsonos con los principios de contabilidad generalmente aceptados (GAAP, por sus siglas en inglés), ERISA y la "Ley Sarbanes-Oxley". Además significa, sin que se entienda como una lista exhaustiva o una limitación: (1) la creación de un equipo de auditores(as) internos(as); (2) la publicación trimestral y permanente de un desglose detallado de los ingresos, los gastos, las inversiones y su rendimiento, las personas naturales o jurídicas que administran los activos o asesoran en la inversión de los activos y los honorarios y otras tarifas devengadas por las personas naturales o jurídicas que administran los activos o asesoran en la inversión de los activos; (3) la publicación anual y permanente de estados financieros auditados y estudios de valoración actuarial; (4) la publicación trimestral y permanente de un resumen estadístico de los Participantes y Pensionados, desglosados por grupos de edad, escalas salariales o de beneficios, y programas de retiro correspondientes; (5) la realización y publicación regular y permanente de auditorías de cumplimiento (compliance audits) y rendimiento

(performance audits), conforme los estándares de la Oficina de Rendición de Cuentas Gubernamental de los Estados Unidos (US GAO, por sus siglas en inglés), también conocido como Yellow Book; (6) la traducción al español y al inglés de todos los informes periódicos cuya producción es requerida mediante esta Ley; (7) la remisión de copias fieles y exactas, de manera regular y permanente, de cualesquiera informes periódicos sean requeridos producir mediante ley, reglamento, boletín administrativo, carta circular, principios de contabilidad generalmente aceptados, o políticas internas para los sistemas de retiro en Puerto Rico o de conformidad a normas del Gobierno de los Estados Unidos de América, a la Asamblea Legislativa y a las comisiones legislativas que tengan jurisdicción sobre los Sistemas de Retiro y el Presupuesto del Gobierno del Estado Libre Asociado de Puerto Rico; y (8) la adopción y publicación de políticas de inversión.

(w) Participantes: empleados(as) activos(as) del Gobierno del Estado Libre Asociado de Puerto Rico, los Maestros e integrantes del Sistema de Retiro para Maestros de Puerto Rico, los(as) empleados(as) de los Municipios, los(as) jueces(zas) e integrantes del Sistema de Retiro de la Judicatura de Puerto Rico y los(as) empleados(as) de las Corporaciones Públicas, excepto los(as) empleados(as) de la Universidad de Puerto Rico y la Autoridad de Energía Eléctrica. Además, incluye a empleados(as) acogidos a las disposiciones de la Ley 211-2015, según enmendada, conocida como "Ley del Programa de Preretiro Voluntario", y los que pasen o hayan pasado a laborar dentro de una Alianza Público Privada y todo aquel integrante del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico que haya realizado aportaciones a dicho Sistema y esta no se le hayan reembolsado. Este término incluye a los(as) exempleados(as) del Gobierno del Estado Libre Asociado de Puerto Rico que se separaron del servicio público y que no se le reembolsaron sus aportaciones y/o cualquier beneficio acumulado hasta la fecha de separación.

(x) Pensionado(a): toda persona que reciba una pensión, anualidad o beneficio de acuerdo con las disposiciones de esta Ley o de las que crean los diferentes Sistemas de Retiro, excepto el Sistema de Retiro de la Universidad de Puerto Rico y el Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica.

(y) Plan de Ajuste: plan propuesto por la JSAF para la reducción de las deudas del Gobierno del Estado Libre Asociado de Puerto Rico a través del Título III de PROMESA, conforme la Sección 312 de PROMESA.

(z)     Preretirado(a): toda persona acogida al Programa de Preretiro Voluntario creado mediante la Ley 211-2015, según enmendada, conocida como "Ley del Programa de Preretiro Voluntario".

(aa)    PROMESA: la Ley Pública 114-187, también conocida como "Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico", aprobada por el Gobierno de los Estados Unidos de América.

(bb)    Quiebra: El proceso de reestructuración de deuda al que la JSAF acogió al Gobierno del Estado Libre Asociado de Puerto Rico el 3 de mayo de 2017, ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, al amparo del Título III de PROMESA.

(cc)    Requisitos de Sustitución: (1) la aprobación de legislación disponiendo para Colateral Sustituta, que a su vez disponga: (A) que la Colateral Sustituta en una cantidad igual a los Ingresos del FACSiR se ha transferido irrevocablemente y es propiedad única y exclusivamente del FACSiR en la misma medida en que se provee bajo la Sección 3.5 de esta Ley; (B) que, luego de dicha transferencia, la Colateral Sustituta en una cantidad igual a los Ingresos del FACSiR no es y no constituirá, "recursos disponibles" o "ingresos disponibles" del Gobierno del Estado Libre Asociado de Puerto Rico, según dicho término se utiliza en la Sección 8 del Artículo VI de la Constitución de Puerto Rico o de cualquier otra manera en la Constitución de Puerto Rico (independientemente de si se interpreta la versión en español o inglés de la Constitución de Puerto Rico), (C) para la creación de un gravamen sobre la Colateral Substituta a favor del fideicomiso custodiado y administrado por el FACSiR para beneficio de los(as) Participantes y Pensionados de los Sistemas de Retiro y el FACSiR en la misma medida en que se establece en la Sección 3.6 de esta Ley; y (D) que el Gobierno del Estado Libre Asociado de Puerto Rico y las entidades gubernamentales continuarán proveyendo las garantías establecidas en la Sección 3.4 de esta Ley con respecto a dichos Ingresos del FACSiR y la Colateral Sustituta; y (2) que, previo a la sustitución de la Colateral Sustituta, se hayan satisfecho los requisitos de calificación establecidos mediante cualquier acuerdo incorporado al Plan de Ajuste con respecto a la Colateral Sustituta.

(dd)    Servicio de Deuda Pendiente de Pago de los Bonos Impugnados: el costo de amortización, incluyendo el pago de intereses y la porción correspondiente del principal o las transferencias anuales de fondos públicos que deben ser realizadas por el Gobierno del Estado Libre Asociado de Puerto Rico en cumplimiento con las emisiones de bonos que aún no se hubieren madurado, vencido, cancelado, intercambiado, refinanciado o

reestructurado desde la fecha de vigencia de la Sección 405 de PROMESA, o en la fecha de efectividad de la Sección 362 del Código de Quiebras de los Estados Unidos según aplicable a Puerto Rico mediante la Sección 301(a) de PROMESA y hasta las respectivas fechas de vencimiento de cada emisión de bonos.

(ee)   Sistemas de Retiro: el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico, según establecido por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, en adelante SRE; el Sistema de Retiro para la Judicatura, creado mediante la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, en adelante SRJ; y el Sistema de Retiro para Maestros de Puerto Rico, según establecido por la Ley 160-2013, en adelante SRM. Para propósitos de esta Ley, no incluye el Sistema de Retiro de la Universidad de Puerto Rico ni el Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica.

## CAPÍTULO 2 - POLÍTICA PÚBLICA

Artículo 2.01.- Declaración de Política Pública

Será política pública del Gobierno del Estado Libre Asociado de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro:

(a)   proteger el presente y futuro de nuestros(as) servidores(as) públicos(as) para impedir que caigan en la pobreza tras una vida de servicio por su país y para reclutar y retener el mejor talento posible ahora y siempre en el servicio público de Puerto Rico;

(b)   expresar el más absoluto y enérgico rechazo a cualquier Plan de Ajuste o Acuerdo de Reestructuración que reduzca, perjudique, amenace, subordine o empeore las pensiones, las anualidades, los beneficios y otras acreencias actuales de servidores(as) públicos(as) Pensionados(as) y los Participantes de los Sistemas de Retiro, más de lo que ya fueron reducidas, perjudicadas, amenazadas o empeoradas previo a la radicación de la petición de quiebra el 3 de mayo de 2017;

(c)   definir como inviable y rechazar absolutamente cualquier Plan de Ajuste que produzca una reestructuración insostenible de los bonos del Gobierno del Estado Libre Asociado de Puerto Rico, sus Corporaciones Públicas y los Sistemas de Retiro y que no evite un segundo evento de insolvencia o quiebra para las finanzas públicas;

(d)     reconocer que una reestructuración insostenible de los bonos del Gobierno del Estado Libre Asociado de Puerto Rico, sus Corporaciones Públicas y los Sistemas de Retiro o cualquier evento sucesivo de insolvencia o quiebra para las finanzas públicas, representa una amenaza directa e intolerable para los servicios públicos esenciales de los que depende el pueblo de Puerto Rico y para las pensiones y otras acreencias de los(as) servidores(as) públicos(as) que los proveen, ya sean Pensionados o Participantes de los Sistemas de Retiro;

(e)     medir y promover la sostenibilidad de la deuda de Puerto Rico pagadera con fondos públicos de manera agregada y según determinada mediante análisis de la capacidad de sostener el servicio de esa deuda agregada conforme el poder adquisitivo en Puerto Rico y neto del gasto necesario para satisfacer el pago de las pensiones y los servicios públicos esenciales;

(f)     reconocer que la JSAF necesita que el Gobierno del Estado Libre Asociado de Puerto Rico tome acciones afirmativas que le permitan cumplir con todos los requisitos dispuestos en la Sección 314 de PROMESA para la confirmación de un Plan de Ajuste, incluyendo, sin que se entienda como una limitación, autorizar las emisiones de bonos que habrán de intercambiarse como consecuencia de un Plan de Ajuste y enmendar cualesquiera leyes que sean incompatibles con los acuerdos alcanzados entre la JSAF y grupos de acreedores;

(g)     condenar el Plan de Ajuste Conjunto para el Gobierno del Estado Libre Asociado de Puerto Rico, la Administración de los Sistemas de Retiro de Empleados del Gobierno y la Judicatura de Puerto Rico, y la Autoridad de Edificios Públicos de Puerto Rico, presentado por la JSAF el 27 de septiembre de 2019, enmendado el 28 de febrero de 2020 y el 9 de marzo de 2021, ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, por ser irremediablemente incompatible con la Política Pública descrita en esta Ley;

(h)     rechazar cualquier Plan de Ajuste que pretenda utilizar la Sección 1129(b) del Código de Quiebras de los Estados Unidos para imponer recortes adicionales a servidores públicos Pensionados y Participantes de los Sistemas de Retiro;

(i)     rechazar cualquier Plan de Ajuste o Acuerdo de Reestructuración cuya viabilidad o garantía de pago para el servicio de deuda requiera aumentar o establecer impuestos regresivos, tarifas u otros mecanismos que encarezcan los servicios de agua, luz, transportación, educación y demás

servicios públicos esenciales para recaudar ingresos públicos del bolsillo de las familias trabajadoras y pensionadas en Puerto Rico;

(j)     rechazar cualquier Plan de Ajuste o Acuerdo de Reestructuración cuya viabilidad o garantía de pago para el servicio de deuda requiera recortes a servicios públicos esenciales provistos por el Gobierno del Estado Libre Asociado de Puerto Rico, sus Corporaciones Públicas y los Municipios, incluyendo, sin que se entienda como una limitación, educación, salud, protección ambiental, vivienda, sanidad y manejo de desperdicios sólidos, seguridad y manejo de emergencias, alcantarillado y procesamiento de agua, energía eléctrica, infraestructura vial y transportación colectiva;

(k)     reconocer que todo intento de recortar el presupuesto disponible para los servicios públicos esenciales provistos desde el Gobierno del Estado Libre Asociado de Puerto Rico, sus Corporaciones Públicas y los Municipios, o de reducir el gasto de nómina o la cantidad de servidores(as) públicos(as) con derecho a ser Participantes de los Sistemas de Retiro, también es un intento de recortar los recursos disponibles para cumplir con las pensiones, las anualidades, los beneficios y otras acreencias que pudieran tener los(as) Pensionados(as) y Participantes de los Sistemas de Retiro, y las pérdidas que ello representaría en aportaciones individuales o patronales deben ser compensadas para velar por la solvencia actuarial de los Sistemas de Retiro y el Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR) modelado en el Capítulo 3 de esta Ley;

(l)     expresar de manera clara e inequívoca que no se tomará acción alguna que permita la confirmación de cualquier Plan de Ajuste que sea incompatible con lo dispuesto en esta Política Pública, incluyendo, sin que se entienda como una limitación, la eliminación de barreras estatutarias o reglamentarias, la creación de legislación o reglamentación, o cualesquiera autorizaciones necesarias para permitir que el Plan de Ajuste de la JSAF cumpla con los requisitos dispuestos en la Sección 314(b)(3) y la Sección 314(b)(5) de PROMESA;

(m)     reconocer que los Pensionados y Participantes de los Sistemas de Retiro ya han sido perjudicados(as) en sus acreencias contra el Gobierno del Estado Libre Asociado de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro durante los años previos a la presentación de la petición de quiebra, por cantidades que superan:

(1)     el cuarenta y dos (42) por ciento del valor agregado de las pensiones, los beneficios y demás derechos de retiro para el(la) Pensionado(a) o beneficiario promedio del Programa de Beneficio Definido bajo la

Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde una fecha previa al 1 de abril de 1990;

(2) el treinta y uno (31) por ciento del valor agregado de las pensiones, los beneficios y demás derechos de retiro para el(la) Pensionado(a) o beneficiario promedio del Programa de Beneficio Definido bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde una fecha posterior al 1 de abril de 1990 pero previa al 1 de enero de 2000; y,

(3) el quince (15) por ciento del valor agregado de los beneficios y demás derechos de retiro para el beneficiario promedio del Programa de Cuentas de Ahorro para el Retiro bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde el 1 de enero de 2000.

(n) garantizar que ninguna parte de los fondos y recursos del gobierno estatal, comprometidos para actividades relacionadas a la participación del Gobierno del Estado Libre Asociado de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro en los procesos bajo el Título III de PROMESA, sean dirigidos hacia la consecución de cualquier Plan de Ajuste incompatible con lo dispuesto en esta Ley;

(o) promover la creación de un Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR) que sea custodio, recaude, administre y garantice adecuadamente los recursos destinados al pago de la totalidad de pensiones y beneficios a los que actualmente tienen derecho nuestros(as) servidores(as) públicos(as), según detallado en el Capítulo 3 de esta Ley, de modo que permita proteger, capitalizar y garantizar a perpetuidad los derechos y beneficios de retiro para los(as) Pensionados(as) y Participantes cubiertos por esta Ley;

(p) garantizar el derecho a un retiro digno como parte fundamental de una vida digna y como corolario del derecho a la inviolabilidad de la dignidad del ser humano consagrada en la Primera Sección de la Carta de Derechos de la Constitución de Puerto Rico;

(q) reconocer que un retiro digno consiste en disfrutar de una pensión vitalicia que proteja a cada persona contra la pobreza en su vejez, en devolver a los Pensionados y Participantes de los Sistemas de Retiro los derechos y beneficios que han perdido mediante legislación en tiempos de crisis fiscales o graves emergencias en las finanzas públicas, y en expandir los

derechos y beneficios de Pensionados y Participantes del FACSiR una vez alcanzado el Coeficiente de Financiación Adecuada;

(r)     velar por la integridad, sana administración y Mejores Prácticas de Contabilidad de todos los fondos públicos disponibles al Gobierno del Estado Libre Asociado de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro para evitar pérdidas de fondos públicos que atenten contra la capacidad del Gobierno del Estado Libre Asociado de Puerto Rico, sus Corporaciones Públicas, los Municipios, los Sistemas de Retiro y el FACSiR de cumplir con los objetivos trazados en esta Política Pública;

(s)     definir cualquier reconocimiento o repago de alguna parte de cualesquiera Bonos Impugnados, sin la debida adjudicación de un tribunal con competencia de que dichos bonos fueron emitidos de conformidad con las leyes y los reglamentos correspondientes, incluyendo la Constitución de Puerto Rico, como un atentado a la integridad, sana administración y las Mejores Prácticas de Contabilidad de los fondos públicos disponibles al Gobierno del Estado Libre Asociado de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro;

(t)     proteger los Ingresos del FACSiR contra desviaciones, impagos u otros incumplimientos que menoscaban la eventual relación contractual entre el Gobierno del Estado Libre Asociado de Puerto Rico y el FACSiR modelado en el Capítulo 3 de esta Ley.

(u)     Garantizar a la Universidad de Puerto Rico la asignación de fondos anuales recurrentes suficientes para cumplir puntualmente con las aportaciones patronales y actuariales requeridas para proteger la solvencia del Fideicomiso del Sistema de Retiro de la Universidad de Puerto Rico y preservar la totalidad de los beneficios de sus participantes y beneficiarios.

Artículo 2.02.- Se enmienda el Artículo 2 de la Ley 2-2017, conocida como "Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico", para que lea como sigue:

"Artículo 2.- Política Pública

Se declara como política pública del Gobierno de Puerto Rico que sea la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico la corporación pública e instrumentalidad líder y responsable de coordinar el uso sostenible de recursos y de presentar una visión coordinada y global de las necesidades de capital de las instrumentalidades del Gobierno de Puerto Rico. Es la política

pública del Gobierno tomar las medidas para que Puerto Rico supere la crisis actual y que pueda brindar los servicios esenciales a los(as) residentes de la Isla, para cuyo curso se requiere, en parte, actuar:

(a)    en lo que respecta a la deuda pública:

    (1)    recuperando el acceso a los mercados de capital bajo precios asequibles y condiciones razonablemente sostenibles de repago;

    (2)    planificando y estabilizando las finanzas públicas a largo plazo para evitar futuros eventos de insolvencia o riesgos de impago, y así recuperar la confianza de inversores(as) tradicionales;

    (3)    abordando el desequilibrio presupuestario entre ingresos y gastos;

    (4)    publicando oportunamente, y nunca en intervalos que excedan treinta (30) días, información sobre ingresos y gastos, su relación con las proyecciones de ingresos y gastos al momento de aprobar el presupuesto, desgloses de liquidez y flujo de caja en las cuentas del Gobierno del Estado Libre Asociado de Puerto Rico;

    (5)    produciendo y publicando, oportunamente y nunca en un período que exceda ciento veinte (120) días luego del cierre de un año fiscal, los informes auditados de los estados financieros del Gobierno del Estado Libre Asociado de Puerto Rico;

    (6)    negociando los términos de repago de la deuda para reducir el costo de amortización de la deuda y eliminar o minimizar todo lo posible cualesquiera mecanismos de especulación financiera perjudiciales para la estabilidad de las finanzas públicas de Puerto Rico, incluyendo, sin que se entienda como una limitación, los contratos de intercambio de tasas de interés, bonos con tasas de interés flotantes o variables, bonos de apreciación de capital o con interés compuesto, entre otros productos financieros o sus contratos derivados que representan un alto riesgo para la estabilidad financiera de Puerto Rico; y,

    (7)    reduciendo el principal de deuda y el servicio de deuda agregado pendiente de pago a un nivel sostenible que se conforme al poder adquisitivo de la población de Puerto Rico, con el fin de restablecer la estabilidad a nuestras finanzas públicas y la confianza del mercado de capital tradicional.

(b)     en lo que respecta a las pensiones y los beneficios de participantes, pensionados(as) y preretirados(as) que son beneficiarios de los Sistemas de Retiro:

(1)     protegiendo la totalidad de las pensiones, las anualidades, los beneficios y demás acreencias de servidores(as) públicos(as), ya sean participantes, pensionados(as) o preretirados(as), contra cualquier Plan de Ajuste o Acuerdo con Acreedores que reduzca, perjudique, amenace, subordine o empeore las pensiones, las anualidades, los beneficios y otras acreencias actuales de servidores(as) públicos(as), Pensionados(as) y los Participantes de los Sistemas de Retiro, más de lo que ya fueron reducidas, perjudicadas, amenazadas, subordinadas o empeoradas previo a la radicación de la petición de quiebra al amparo del Título III de PROMESA el 3 de mayo de 2017;

(2)     planificando la creación de un Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR) que sea custodio, recaude, administre y garantice adecuadamente los recursos destinados al pago de la totalidad de pensiones y beneficios conforme a los mismos derechos que tenían nuestros(as) servidores(as) públicos(as) al momento de radicarse la petición de quiebra al amparo del Título III de PROMESA el 3 de mayo de 2017, de modo que permita proteger, capitalizar y garantizar a perpetuidad los derechos y beneficios de retiro para los(as) Pensionados(as) y Participantes de los Sistemas de Retiro;

(3)     alcanzando y preservando un coeficiente de financiación adecuada para el FACSiR que nunca sea menor de 1.2, mediante el establecimiento de un fideicomiso independiente con el cual el Gobierno de Puerto Rico esté contractualmente obligado a:

(A)     transferir la totalidad de los Ingresos del FACSiR oportunamente y según convenido;

(B)     no tomar alguna acción que menoscabe el derecho del fideicomiso a recibir y administrar la totalidad de los Ingresos del FACSiR; y,

(C)     no tomar alguna acción que limite o altere los derechos y la autonomía del fideicomiso para cumplir con el pago de las pensiones, las anualidades, los beneficios y demás acreencias vigentes para los Pensionados y Participantes de los Sistemas de Retiro al momento de presentarse la petición de quiebra al

amparo del Título III de PROMESA el 3 de mayo de 2017, y
de los Participantes y Pensionados del FACSiR."

Artículo 2.03.- Se enmienda el Artículo 3 de la Ley 2-2017, para que lea como sigue:

"Artículo 3.- Definiciones

a)      ...

b)      ...

c)      ...

d)      "Bonos Impugnados"-colectivamente, todas las emisiones de bonos
        realizadas por el Gobierno de Puerto Rico cuyas garantías jurídicas,
        cuantías garantizadas, fuentes de pago comprometidas o autorizaciones
        legales hayan sido retadas ante el Tribunal de Distrito de los Estados
        Unidos para el Distrito de Puerto Rico o ante el Tribunal General de Justicia
        por parte del Gobierno de Puerto Rico, la JSAF, los comités oficiales de
        acreedores(as) y retirados(as), cualesquiera otras Partes Interesadas, según
        dicho término es definido en el Código de Quiebras de los Estados Unidos,
        o personas con legitimación activa para intervenir mediante la presentación
        de una petición de quiebra, un memorando de derecho, una moción, una
        demanda, o un procedimiento adversarial al amparo de algún caso
        presentado bajo del Título III de PROMESA. Incluye, sin que se entienda
        como una limitación:

        1)  la Serie A de los *Senior Pension Funding Bonds* emitida por la
            Administración de los Sistemas de Retiro de los Empleados del
            Gobierno y la Judicatura (ASR) el 31 de enero de 2008 por la cantidad
            agregada de mil quinientos ochenta y ocho millones ochocientos
            diez mil setecientos noventa y nueve y sesenta céntimos
            (1,588,810,799.60) dólares en principal, que incluye mil quinientos
            cuarenta y tres millones setecientos setenta mil (1,543,770,000)
            dólares en bonos a plazo y cuarenta y cinco millones cuarenta mil
            setecientos noventa y nueve y sesenta céntimos (45,040,799.60)
            dólares en bonos de apreciación de capital, y que fue suscrita por
            *UBS Financial Services Incorporated of Puerto Rico, Popular Securities,
            Santander Securities, BBVAPR MSD, Citi, Lehman Brothers, Merrill
            Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramírez
            & Co., Inc., Scotia Capital, TCM Capital y Wachovia Capital Markets, LLC*
            originalmente ofrecidos para reventa exclusivamente a residentes de
            Puerto Rico en el mercado de capital de Puerto Rico;

2)  la Serie B de los *Senior Pension Funding Bonds* emitida por la ASR el 2 de junio de 2008 por la cantidad agregada de mil cincuenta y ocho millones seiscientos treinta y cuatro mil seiscientos trece y cinco céntimos (1,058,634,613.05) dólares en principal, que incluye ochocientos dieciséis millones cien mil (816,100,000) dólares en bonos a plazo y doscientos cuarenta y dos millones quinientos treinta y cuatro mil seiscientos trece y cinco céntimos (242,534,613.05) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities* originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

3)  la Serie C de los *Senior Pension Funding Bonds* emitida por la ASR el 30 de junio de 2008 por la cantidad agregada de trescientos millones doscientos dos mil novecientos treinta (300,202,930) dólares en principal, que incluye doscientos noventa y ocho millones (298,000,000) de dólares en bonos a plazo y dos millones doscientos dos mil novecientos treinta (2,202,930) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Eurobank MSD, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramírez & Co., Inc., Scotia Capital y Wachovia Capital Markets, LLC* y originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

4)  la Serie K de los *Government Facilities Revenue Refunding Bonds* emitidos por la Autoridad de Edificios Públicos (AEP) el 1 de julio de 2009 por la cantidad de cincuenta millones (50,000,000) de dólares en principal de bonos a plazo identificados por el número CUSIP 745235L82 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co. y Ramírez & Co., Inc.*;

5)  la Serie P de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 1 de julio de 2009 por la cantidad agregada de trescientos treinta millones novecientos treinta y cinco mil (330,935,000) dólares en principal, que incluye doscientos quince millones ciento sesenta mil (215,160,000) dólares en bonos a plazo identificados por los números CUSIP 745235K75, 745235K83, 745235K91, 745235L25 y 745235L33 al momento de la emisión, y ciento quince millones setecientos setenta y cinco mil (115,775,000) dólares en bonos en serie identificados por los números CUSIP

745235L41, 745235L58, 745235L66 y 745235L74 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

6)   la Serie Q de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 28 de octubre de 2009 por la cantidad agregada de ciento cincuenta millones quinientos cuarenta mil (152,540,000) dólares en principal, que incluye ciento cuarenta y cuatro millones trescientos cuarenta mil (144,340,000) dólares en bonos a plazo identificados por los números CUSIP 745235M24, 745235M32 y 745235M40 al momento de la emisión, y ocho millones doscientos mil (8,200,000) dólares en bonos en serie identificados por el número de CUSIP 745235L90 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

7)   la Serie R de los *Government Facilities Revenue Bonds* emitida por la AEP el 24 de agosto de 2011 por la cantidad agregada de setecientos cincuenta y seis millones cuatrocientos cuarenta y nueve mil (756,449,000) dólares en principal identificados por los números CUSIP 745235 M57, 745235 M73, 745235 M65 y 745235 M81 al momento de la emisión, y que fue suscrita por *Popular Securities, Bank of America Merrill Lynch, Santander Securities, UBS Financial Services Incorporated of Puerto Rico, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James y Scotia MSD*, y originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

8)   la Serie S de los *Government Facilities Revenue Bonds* emitida por la AEP el 24 de agosto de 2011 por la cantidad agregada de trescientos tres millones novecientos cuarenta y cinco mil (303,945,000) dólares en principal, que incluye doscientos ocho millones novecientos cuarenta y cinco mil (208,945,000) dólares en bonos a plazo identificados por los números CUSIP 745235P62 y 745235P70 al momento de la emisión, y noventa y cinco millones (95,000,000) de dólares en bonos en serie identificados por los números CUSIP 745235M99,   745235N23,   745235N31,   745235N49,   745235N56, 745235N64,   745235N72,   745235N80,   745235N98,   745235P21, 745235P39, 745235P47, 745235P54 y 745235P88 al momento de la

emisión, y que fue suscrita por *Ramírez & Co., Inc., RBC Capital Markets, Barclays Capital, BMA Capital Markets, Bank of America Merrill Lynch, Citigroup, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Morgan Stanley, Raymond James, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

9) la Serie T de los *Government Facilities Revenue Bonds – Qualified Zone Academy Bonds* emitida por la AEP el 22 de diciembre de 2011 por la cantidad agregada de ciento veintiún millones quinientos veintiocho mil (121,528,000) dólares en principal identificados por el número CUSIP 745235Q20 al momento de la emisión, y que fue suscrita por *Santander Securities y UBS Financial Services Puerto Rico;*

10) la Serie U de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 21 de junio de 2012 por la cantidad agregada de quinientos ochenta y dos millones trescientos cuarenta y cinco mil (582,345,000) dólares en principal, que incluye quinientos treinta y ocho millones seiscientos setenta y cinco mil (538,675,000) dólares en bonos a plazo identificados por el número CUSIP 745235R37 al momento de la emisión, y cuarenta y tres millones seiscientos setenta mil (43,670,000) dólares en bonos en serie identificados por los números CUSIP 745235S51, 745235R45, 745235R52, 745235R60, 745235R78, 745235R86, 745235R94, 745235S28, 745235S36, 745235S44 y 745235S69 al momento de la emisión, y que fue suscrita por *Goldman Sachs & Co., BMO Capital Markets, RBC Capital Markets, Barclays, Bank of America Merrill Lynch, Citigroup, Jefferies, J.P. Morgan, Morgan Stanley, Ramírez & Co., Inc., Raymond James | Morgan Keegan, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD, UBS Financial Services Puerto Rico y VAB Financial;*

11) la Serie A de los *General Obligation Bonds* emitida por el Gobierno de Puerto Rico el 17 de marzo de 2014 por la cantidad de tres mil quinientos millones (3,500,000,000) de dólares en principal de bonos a plazo identificados por el número CUSIP 74514LE86 al momento de la emisión, y que fue suscrita por *Barclays, Morgan Stanley, RBC Capital Markets, Bank of America Merrill Lynch, Goldman Sachs & Co., J.P. Morgan, Ramírez & Co., Inc., FirstBank PR Securities, Jefferies, Mesirow Financial, Inc., Oriental Financial Services, Popular Securities, Santander Securities y UBS Financial Services Puerto Rico;*

12) la Serie A de los *Public Improvement Refunding Bonds – General Obligation Bonds* emitida por el Gobierno de Puerto Rico el 3 de abril de 2012 por la cantidad agregada de dos mil trescientos dieciocho millones ciento noventa mil (2,318,190,000) dólares en principal, que incluye mil seiscientos setenta y ocho millones setecientos cuarenta y cinco mil (1,678,745,000) dólares en bonos a plazo identificados por los números CUSIP 74514LD20, 74514LB63, 74514LB71 y 74514LB89 al momento de la emisión, y seiscientos treinta y nueve millones cuatrocientos cuarenta y cinco mil (639,445,000) dólares en bonos en serie identificados por los números CUSIP 74514LA31, 74514LC47, 74514LA49,   74514LC54,   74514LA56,   74514LC62,   74514LD46, 74514LC70,   74514LA64,   74514LD53,   74514LC88,   74514LA72, 74514LD61,   74514LA80,   74514LD79,   74514LD38,   74514LC96, 74514LA98,   74514LB22,   74514LD87,   74514LB30,   74514LB48, 74514LB97, 74514LB55, 74514LC21 y 74514LC39 al momento de la emisión, y que fue suscrita por *Barclays Capital, J.P. Morgan, Goldman Sachs & Co., Jefferies, BMO Capital Markets, Bank of America Merrill Lynch, Citigroup, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

13) la Serie B de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 29 de marzo de 2012 por la cantidad agregada de cuatrocientos quince millones doscientos setenta mil (415,270,000) dólares en principal, que incluye cuarenta y nueve millones seiscientos diez mil (49,610,000) dólares en bonos a plazo identificados por el número CUSIP 74514LA23, y trescientos sesenta y cinco millones seiscientos sesenta mil (365,660,000) dólares en bonos en serie identificados por los números CUSIP 74514LZS9, 74514LZT7,   74514LZU4,   74514LZV2,   74514LZW0,   74514LZX8, 74514LZY6, 74514LZZ3, y que fue suscrita por *UBS Financial Services Puerto Rico, Bank of America Merrill Lynch, Popular Securities, Santander Securities, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank PR Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James y Scotia MSD;*

14) la Serie C de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de marzo de 2011 por la cantidad agregada de cuatrocientos cuarenta y dos millones quince mil (442,015,000) dólares en principal, que incluye ciento veintisiete millones quince mil (127,015,000) dólares en bonos a plazo

identificados por el número CUSIP 74514LXH5, y trescientos quince millones (315,000,000) de dólares en bonos en serie identificados por los números CUSIP 74514LWY9, 74514LXD4, 74514LXE2, 74514LXA0, 74514LXB8, 74514LXF9, 74514LWZ6, 74514LXC6, 74514LXG7 y 74514LWX1, y que fue suscrita por *Morgan Stanley, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities y VAB Financial;*

15) la Serie D de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 12 de julio de 2011 por la cantidad de cincuenta y dos millones ciento noventa mil (52,190,000) dólares en principal en bonos en serie identificados por los números CUSIP 74514LYX9, 74514LYY7, 74514LYZ4, 74514LZA8, 74514LB6, 74514LZC4, 74514LZH3, 74514LZF7, 74514LZD2, 74514LZJ9, 74514LZG5 y 74514LZE0, y que fue suscrita por *J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

16) la Serie E de los *Public Improvement Bonds* emitida por el Gobierno de Puerto Rico el 12 de julio de 2011 por la cantidad de doscientos cuarenta y cinco millones novecientos quince mil (245,915,000) dólares en principal en bonos en serie identificados por los números CUSIP 74514LZK6, 74514LZL4, 74514LZM2, 74514LZN0, 74514LZP5 y 74514LZQ3, y que fue suscrita por *J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

17) la Serie A de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de septiembre de 2009 por la cantidad de tres millones cuatrocientos veinticinco mil (3,425,000) dólares en principal de bonos a plazo identificados por el número CUSIP 74514LVV6, y que fue suscrita por *Morgan Stanley, JP Morgan,*

*Barclays Capital, Goldman Sachs & Co., Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities y UBS Financial Services of Puerto Rico;*

18) la Serie 2007 A-4 de los *Public Improvement Refunding* Bonds emitida por el Gobierno de Puerto Rico el 17 de septiembre de 2009 por la cantidad de noventa y tres millones ochocientos treinta y cinco mil (93,835,000) dólares en principal de bonos en serie identificados por los números CUSIP 74514LVT1 y 74514LVU8, y que fue suscrita por *Morgan Stanley y JP Morgan;*

19) la Serie B de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de noviembre de 2009 por la cantidad de trescientos setenta y dos millones seiscientos ochenta y cinco mil (372,685,000) dólares en principal de bonos a plazo identificados por los números CUSIP 74514LVX2, 74514LVY0, 74514LVZ7 y 74514LVW4, y que fue suscrita por *Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs, Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

20) la Serie C de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 16 de diciembre de 2009 por la cantidad de doscientos diez millones doscientos cincuenta mil (210,250,000) dólares en principal de bonos a plazo identificados por el número CUSIP 74514LWA1, y que fue suscrita por *Morgan Stanley, Citi, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch & Co., Ramírez & Co., Inc., UBS Financial Services Incorporated of Puerto Rico, FirstBank Puerto Rico Securities, Popular Securities y Santander Securities;* y,

21) la Serie A de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de febrero de 2011 por la cantidad de trescientos cincuenta y seis millones quinientos veinte mil (356,520,000) dólares en principal de bonos en serie identificados por los números CUSIP 74514LWN3, 74514LWJ2, 74514LWP8, 74514LWK9, 74514LWL7, 74514LWM5, 74514LWQ6, 74514LWT0, 74514LWR4 y 74514LWS2, y que fue suscrita por *Barclays Capital, Jefferies & Company, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities y Santander Securities;*

e)      "Bonos No Impugnados" -colectivamente, todas las emisiones de bonos realizadas por el Gobierno de Puerto Rico cuyas garantías jurídicas, cuantías garantizadas, fuentes de pago comprometidas o autorizaciones legales no hayan sido retadas ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico o ante el Tribunal General de Justicia por parte del Gobierno de Puerto Rico, la JSAF, los comités oficiales de acreedores(as) y retirados(as), cualesquiera otras Partes Interesadas, según dicho término es definido en el Código de Quiebras de los Estados Unidos, o personas con legitimación activa para intervenir mediante la presentación de petición de quiebra, memorando de derecho, moción, demanda, o procedimiento adversarial al amparo de algún caso presentado y pendiente de resolución final bajo del Título III de PROMESA; y, (ii) que aún estén pendientes de pago.

f)      "Gobierno de Puerto Rico"-significa todos los entes que componen el Gobierno de Puerto Rico, incluyendo, sin limitación, sus corporaciones públicas, instrumentalidades, comisiones, juntas, y subdivisiones políticas. Dicho concepto se interpretará de la forma más amplia para incluir, pero sin limitarse a, cualquier entidad que reciba recursos del fondo general y que emita deuda pública.

g)      "Ingresos del Fideicomiso o Ingresos del FACSiR"-incluirán, sin que se entienda como una lista exhaustiva o limitación:

1)      la transferencia del cien (100) por ciento del balance depositado en la Cuenta para el Pago de las Pensiones Acumuladas, creada por virtud de la Ley 106-2017, según enmendada;

2)      el cien (100) por ciento de las aportaciones individuales de los(as) Participantes;

3)      el cien (100) por ciento de las aportaciones patronales del Gobierno de Puerto Rico;

4)      el cien (100) por ciento de los ahorros anuales producidos por la descarga, anulación o reducción en el Servicio de Deuda Pendiente de Pago de los Bonos Impugnados;

5)      la restitución del cien (100) por ciento de las aportaciones individuales retenidas a los Participantes del Programa de Cuentas de Ahorro para el Retiro, creado por virtud del Capítulo 3 de la Ley Núm. 447 de 15 de mayo de 1951, y los daños correspondientes a la

rentabilidad de inversión dejada de devengar tras el incumplimiento del Administrador del SRE con el Artículo 3-103 y el Artículo 3-105 del Programa de Cuentas de Ahorro para el Retiro y la Ley Núm. 447 de 15 de mayo de 1951, según enmendada;

6) el cien (100) por ciento de cualesquiera sentencias judiciales, y los derechos propios y del Gobierno de Puerto Rico a procurar y recibir restitución, por daños y perjuicios sufridos en el erario público a consecuencia de la impericia, negligencia, temeridad o malicia de los bancos suscriptores y sus representantes o consultores(as) profesionales en la emisión, compra y venta de Bonos Impugnados;

7) el cien (100) por ciento de los réditos por las inversiones y los activos del FACSiR, incluyendo los activos de los Sistemas de Retiro que no hayan sido liquidados o transferidos a la Cuenta para el Pago de las Pensiones Acumuladas tras la aprobación de la Ley 106-2017, según enmendada, cuya titularidad también será transferida, sin liquidar el activo, al FACSiR;

8) el cien (100) por ciento de las economías netas producidas en la administración del FACSiR y sus activos;

9) el cien (100) por ciento de cualesquiera otros ingresos propios que pueda generar el FACSiR sin arriesgar el Coeficiente de Financiación Adecuada, en cumplimiento con deberes fiduciarios dispuestos en la Sección 3.08 de esta Ley, y que sean cónsonos con los poderes conferidos al Fideicomiso en ley; y,

10) la cantidad mayor entre: (i) el cincuenta (50) por ciento de los ahorros anuales producidos por la descarga o reducción en el servicio de deuda de Bonos No Impugnados, o (ii) la totalidad de los ahorros anuales que sean necesarios producir en el servicio de deuda de Bonos No Impugnados para alcanzar el Coeficiente de Financiación Adecuada en un plazo no mayor de quince (15) años, a través de un Plan de Ajuste de Deuda bajo el Título III de PROMESA.

h) "Junta" o "Junta de Directores(as)"-significa la Junta de la Autoridad.

i) "Ley"-significa esta Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal del Gobierno de Puerto Rico.

j) "Ley 21"- significa la Ley 21-2016, según enmendada, conocida como "Ley de Moratoria de Emergencia y Rehabilitación Financiera de Puerto Rico".

k)  "Persona"-significa cualquier persona natural o jurídica, incluyendo, pero sin limitarse a, cualquier agencia gubernamental, departamento, instrumentalidad, corporación pública, municipio, junta, oficina, comisión o dependencia o cualquier persona pública o privada, empresa, asociación, sociedad, compañía, sociedad de responsabilidad limitada, asociación, o corporación, organizada y existente bajo las leyes de Puerto Rico, los Estados Unidos de América o cualquiera de sus estados, o de cualquier país extranjero, o cualquier combinación de los anteriores.

l)  "Plan de Ajuste"-plan propuesto por la JSAF para la reducción de las deudas del Gobierno de Puerto Rico, según dispone la sección 312 de PROMESA.

m)  "PROMESA"-significa la Ley Pública 114-187 de 30 de junio de 2016, denominada *Puerto Rico Oversight, Management, and Economic Stability Act*.

n)  "Servicio de Deuda Pendiente de Pago"-es el costo de amortización, incluyendo el pago de intereses y la porción correspondiente del principal, o las transferencias anuales de fondos públicos que deben ser realizadas por el Gobierno de Puerto Rico en cumplimiento con las emisiones de Bonos Impugnados entre las fechas de efectividad de la Sección 405 de PROMESA, o la Sección 362 del Código de Quiebras de los Estados Unidos según aplicable a Puerto Rico mediante la Sección 301(a) de PROMESA, y hasta las respectivas fechas de vencimiento de cada emisión de Bonos Impugnados.

o)  "Sistemas de Retiro"-significa el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico, según establecido por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, en adelante SRE; el Sistema de Retiro para la Judicatura, creado mediante la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, en adelante SRJ; y el Sistema de Retiro para Maestros de Puerto Rico, según establecido por la Ley 160-2013, en adelante SRM. Para propósitos de esta Ley, no incluye el Sistema de Retiro de la Universidad de Puerto Rico ni el Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica."

Artículo 2.04.- Se enmienda el Artículo 5 de la Ley 2-2017, para que lea como sigue:

"Artículo 5.- Propósitos, Facultades y Poderes de la Autoridad

(a)  ...

(b)     A tales fines, la Autoridad estará facultada para colaborar junto con el(la) Gobernador(a) de Puerto Rico y sus representantes en la creación, ejecución, supervisión y fiscalización de cualquier Plan Fiscal (Fiscal Plan) y de cualquier Presupuesto (Budget), así como de cualquier Plan de Ajuste (Plan of Adjustment) o Acuerdo de Reestructuración (Restructuring Support Agreement), según dichos términos se definen en PROMESA, que se conformen a la Política Pública de esta Ley. Asimismo, la Autoridad será el ente gubernamental encargado de la supervisión, ejecución y administración del Plan Fiscal aprobado y certificado a tenor con PROMESA y velará por que todos los entes del Gobierno de Puerto Rico cumplan con el Plan Fiscal, según este sea debidamente aprobado. En ese sentido, la Autoridad desarrollará un programa abarcador de auditoría operacional, gerencial y/o administrativa dirigido a supervisar el cumplimiento de todo ente del Gobierno de Puerto Rico con el Plan Fiscal aprobado en conformidad con PROMESA. La Autoridad no estará facultada para colaborar en la creación, ejecución, supervisión y fiscalización de cualquier Plan Fiscal (Fiscal Plan), Presupuesto (Budget), Plan de Ajuste de Deuda (Debt Adjustment Plan) ni Acuerdo de Reestructuración (Restructuring Support Agreement), según dichos términos se definen en PROMESA, que sean contrarios a la Política Pública dispuesta en el Artículo 2 de esta Ley. Cuando un Plan Fiscal, Presupuesto, Plan de Ajuste de Deuda o Acuerdo de Reestructuración sea contrario a la Política Pública dispuesta en el Artículo 2 de esta Ley, la Autoridad proveerá aquella información que le sea requerida mediante requisición formal de documentos y hará público todo el contenido de cualquier documento o información provista para cumplir con una requisición debidamente ejecutada de conformidad con PROMESA.

(c)     ...

(d)     Con el fin de lograr estos propósitos, se le confiere a la Autoridad, y esta tendrá y podrá ejercer, todos los derechos y poderes que sean necesarios o convenientes para llevar a cabo dichos propósitos, incluyendo, sin limitación, los siguientes:

(1)     ...

(2)     ...

(3)     ...

(4)     determinar el carácter y la necesidad de todos sus gastos, y el modo cómo los mismos deberán incurrirse, autorizarse y pagarse, mientras

dichos gastos se conformen a la Política Pública dispuesta en el Artículo 2 y a los Propósitos, Facultades y Poderes de la Autoridad dispuestos en el Artículo 5 de esta Ley *so pena* de nulidad, sin tomar en consideración cualquier disposición de ley que regule los gastos de fondos públicos y tal determinación será final y definitiva para con todos(as) los(as) funcionarios(as) del Gobierno de Puerto Rico, pero deberá adoptar reglas para el uso y desembolso de sus fondos y estará sujeta a la intervención de la Oficina del Contralor de Puerto Rico, la Comisión de Hacienda y Presupuesto de la Cámara de Representantes, la Comisión de Asuntos Laborales y Transformación del Sistema de Pensiones para un Retiro Digno de la Cámara de Representantes, la Comisión de Hacienda, Asuntos Federales y Junta de Supervisión Fiscal del Senado, y la Comisión de Gobierno del Senado;

(5) ...

...

(e) Mientras esté desempeñando su rol como agente fiscal, asesora financiera, agente informativo, o representante del Gobierno de Puerto Rico en la renegociación o reestructuración de la deuda pública, la Autoridad no estará autorizada a:

(1) proponer, avalar, crear, recomendar, o de alguna otra manera utilizar sus facultades o poderes para adelantar cualquier Plan de Ajuste o Acuerdo de Reestructuración que sea contrario a la Política Pública dispuesta en el Artículo 2 de esta Ley;

(2) proponer, avalar, crear, recomendar, o de alguna otra manera utilizar sus facultades o poderes para adelantar cualquier Plan de Ajuste o Acuerdo de Reestructuración cuya viabilidad o garantía de pago para el servicio de deuda requiera aumentar o establecer impuestos, tarifas u otros mecanismos que produzcan un efecto regresivo, encarezcan o disminuyan los recursos disponibles para los servicios de agua, luz, transportación, educación y demás servicios públicos esenciales en perjuicio del bienestar económico de las familias trabajadoras y pensionadas en Puerto Rico; y,

(3) proponer, avalar, crear, recomendar, o de alguna otra manera utilizar sus facultades o poderes para adelantar cualquier Plan de Ajuste o Acuerdo de Reestructuración que incluya un reconocimiento o repago de alguna parte de los Bonos Impugnados,

sin la debida adjudicación de un tribunal con competencia de que dichos bonos fueron emitidos de conformidad con las leyes y los reglamentos correspondientes, incluyendo la Constitución de Puerto Rico."

Artículo 2.05.- Se enmienda el Artículo 9 de la Ley 2-2017, para que lea como sigue:

"Artículo 9.- Autoridad para Revisar Contratos y Transacciones

(a)      ...

(b)      Si un contrato es incongruente con el Plan Fiscal aprobado a tenor con PROMESA o con la Política Pública dispuesta en esta Ley, la Autoridad tomará todas las acciones que considere necesarias para garantizar que dicho contrato no afecte adversamente el cumplimiento del Gobierno de Puerto Rico con el Plan Fiscal ni la Política Pública de esta Ley, incluyendo la prohibición de su ejecución, su suspensión, o su cancelación.

(c)      ...".

Artículo 2.06.- Se añaden unos nuevos apartados 43 al 64 en el Artículo 1-104 de la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, para que lea como sigue:

"Artículo 1-104.- Definiciones.

Los siguientes términos y frases, según se usan en esta Ley, tendrán los significados que a continuación se expresan, salvo cuando el contexto indique claramente otro significado:

(1)      ...

(2)      ...

...

(43)     AAFAF.-la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, creada por la Ley 2-2017.

(44)     Acuerdo de Reestructuración.-significa cualquier acuerdo entre: (1) el Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro; (2) la JSAF; (3) bonistas del Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro; (4) aseguradoras de bonos, se hayan o no subrogado en el derecho de crédito de los bonistas, del Gobierno

de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro; con relación a, o en apoyo de, cualquier transacción que implique una Modificación Calificativa, según este concepto es definido en el Título VI de PROMESA, o un Ajuste, según este concepto es utilizado en el Título III de PROMESA, de los bonos del Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro.

(45)   AEP.-la Autoridad de Edificios Públicos de Puerto Rico, creada por la Ley Núm. 56 de 19 de junio de 1958, según enmendada.

(46)   Bonos Impugnados.-colectivamente, todas las emisiones de bonos realizadas por el Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro cuyas garantías jurídicas, cuantías garantizadas, fuentes de pago comprometidas o autorizaciones legales hayan sido retadas ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico o ante el Tribunal General de Justicia por parte del Gobierno de Puerto Rico, sus Empresas Públicas, Municipios, Sistemas de Retiro, la JSAF, los comités oficiales de acreedores(as) y retirados(as), cualesquiera otras Partes Interesadas, según dicho término es definido en el Código de Quiebras de los Estados Unidos, o personas con legitimación activa para intervenir mediante la presentación de petición de quiebra, memorando de derecho, moción, demanda, o procedimiento adversarial al amparo de algún caso presentado y pendiente de resolución final bajo del Título III de PROMESA. Incluye, sin que se entienda como una limitación:

(a)   la Serie A de los *Senior Pension Funding Bonds* emitida por la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (ASR) el 31 de enero de 2008 por la cantidad agregada de mil quinientos ochenta y ocho millones ochocientos diez mil setecientos noventa y nueve y sesenta céntimos (1,588,810,799.60) dólares en principal, que incluye mil quinientos cuarenta y tres millones setecientos setenta mil (1,543,770,000) dólares en bonos a plazo y cuarenta y cinco millones cuarenta mil setecientos noventa y nueve y sesenta céntimos (45,040,799.60) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramírez & Co., Inc., Scotia Capital, TCM Capital y Wachovia Capital Markets, LLC* originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(b)      la Serie B de los *Senior Pension Funding Bonds* emitida por la ASR el 2 de junio de 2008 por la cantidad agregada de mil cincuenta y ocho millones seiscientos treinta y cuatro mil seiscientos trece y cinco céntimos (1,058,634,613.05) dólares en principal, que incluye ochocientos dieciséis millones cien mil (816,100,000) dólares en bonos a plazo y doscientos cuarenta y dos millones quinientos treinta y cuatro mil seiscientos trece y cinco céntimos (242,534,613.05) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities* originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(c)      la Serie C de los *Senior Pension Funding Bonds* emitida por la ASR el 30 de junio de 2008 por la cantidad agregada de trescientos millones doscientos dos mil novecientos treinta (300,202,930) dólares en principal, que incluye doscientos noventa y ocho millones (298,000,000) de dólares en bonos a plazo y dos millones doscientos dos mil novecientos treinta (2,202,930) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Eurobank MSD, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramírez & Co., Inc., Scotia Capital y Wachovia Capital Markets, LLC* y originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(d)      la Serie K de los *Government Facilities Revenue Refunding Bonds* emitidos por la Autoridad de Edificios Públicos (AEP) el 1 de julio de 2009 por la cantidad de cincuenta millones (50,000,000) de dólares en principal de bonos a plazo identificados por el número CUSIP 745235L82 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co. y Ramírez & Co., Inc.*;

(e)      la Serie P de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 1 de julio de 2009 por la cantidad agregada de trescientos treinta millones novecientos treinta y cinco mil (330,935,000) dólares en principal, que incluye doscientos quince millones ciento sesenta mil (215,160,000) dólares en bonos a plazo identificados por los números CUSIP 745235K75, 745235K83, 745235K91, 745235L25 y 745235L33 al momento de la emisión, y ciento quince millones setecientos setenta y cinco mil (115,775,000) dólares en bonos en serie identificados por los números CUSIP

745235L41, 745235L58, 745235L66 y 745235L74 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

(f)     la Serie Q de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 28 de octubre de 2009 por la cantidad agregada de ciento cincuenta millones quinientos cuarenta mil (152,540,000) dólares en principal, que incluye ciento cuarenta y cuatro millones trescientos cuarenta mil (144,340,000) dólares en bonos a plazo identificados por los números CUSIP 745235M24, 745235M32 y 745235M40 al momento de la emisión, y ocho millones doscientos mil (8,200,000) dólares en bonos en serie identificados por el número de CUSIP 745235L90 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

(g)     la Serie R de los *Government Facilities Revenue Bonds* emitida por la AEP el 24 de agosto de 2011 por la cantidad agregada de setecientos cincuenta y seis millones cuatrocientos cuarenta y nueve mil (756,449,000) dólares en principal identificados por los números CUSIP 745235 M57, 745235 M73, 745235 M65 y 745235 M81 al momento de la emisión, y que fue suscrita por *Popular Securities, Bank of America Merrill Lynch, Santander Securities, UBS Financial Services Incorporated of Puerto Rico, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James y Scotia MSD*, y originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(h)     la Serie S de los *Government Facilities Revenue Bonds* emitida por la AEP el 24 de agosto de 2011 por la cantidad agregada de trescientos tres millones novecientos cuarenta y cinco mil (303,945,000) dólares en principal, que incluye doscientos ocho millones novecientos cuarenta y cinco mil (208,945,000) dólares en bonos a plazo identificados por los números CUSIP 745235P62 y 745235P70 al momento de la emisión, y noventa y cinco millones (95,000,000) de dólares en bonos en serie identificados por los números CUSIP 745235M99, 745235N23, 745235N31, 745235N49, 745235N56, 745235N64, 745235N72, 745235N80, 745235N98, 745235P21, 745235P39, 745235P47, 745235P54 y 745235P88 al momento de la

emisión, y que fue suscrita por *Ramírez & Co., Inc., RBC Capital Markets, Barclays Capital, BMA Capital Markets, Bank of America Merrill Lynch, Citigroup, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Morgan Stanley, Raymond James, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(i)   la Serie T de los *Government Facilities Revenue Bonds – Qualified Zone Academy Bonds* emitida por la AEP el 22 de diciembre de 2011 por la cantidad agregada de ciento veintiún millones quinientos veintiocho mil (121,528,000) dólares en principal identificados por el número CUSIP 745235Q20 al momento de la emisión, y que fue suscrita por *Santander Securities y UBS Financial Services Puerto Rico;*

(j)   la Serie U de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 21 de junio de 2012 por la cantidad agregada de quinientos ochenta y dos millones trescientos cuarenta y cinco mil (582,345,000) dólares en principal, que incluye quinientos treinta y ocho millones seiscientos setenta y cinco mil (538,675,000) dólares en bonos a plazo identificados por el número CUSIP 745235R37 al momento de la emisión, y cuarenta y tres millones seiscientos setenta mil (43,670,000) dólares en bonos en serie identificados en los números CUSIP 745235S51, 745235R45, 745235R52, 745235R60, 745235R78, 745235R86, 745235R94, 745235S28, 745235S36, 745235S44 y 745235S69 al momento de la emisión, y que fue suscrita por *Goldman Sachs & Co., BMO Capital Markets, RBC Capital Markets, Barclays, Bank of America Merrill Lynch, Citigroup, Jefferies, J.P. Morgan, Morgan Stanley, Ramírez & Co., Inc., Raymond James | Morgan Keegan, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD, UBS Financial Services Puerto Rico y VAB Financial;*

(k)   la Serie A de los *General Obligation Bonds* emitida por el Gobierno de Puerto Rico el 17 de marzo de 2014 por la cantidad de tres mil quinientos millones (3,500,000,000) de dólares en principal de bonos a plazo identificados por el número CUSIP 74514LE86 al momento de la emisión, y que fue suscrita por *Barclays, Morgan Stanley, RBC Capital Markets, Bank of America Merrill Lynch, Goldman Sachs & Co., J.P. Morgan, Ramírez & Co., Inc., FirstBank PR Securities, Jefferies, Mesirow Financial, Inc., Oriental Financial Services, Popular Securities, Santander Securities y UBS Financial Services Puerto Rico;*

(l)  la Serie A de los *Public Improvement Refunding Bonds – General Obligation Bonds* emitida por el Gobierno de Puerto Rico el 3 de abril de 2012 por la cantidad agregada de dos mil trescientos dieciocho millones ciento noventa mil (2,318,190,000) dólares en principal, que incluye mil seiscientos setenta y ocho millones setecientos cuarenta y cinco mil (1,678,745,000) dólares en bonos a plazo identificados por los números CUSIP 74514LD20, 74514LB63, 74514LB71 y 74514LB89 al momento de la emisión, y seiscientos treinta y nueve millones cuatrocientos cuarenta y cinco mil (639,445,000) dólares en bonos en serie identificados por los números CUSIP 74514LA31, 74514LC47, 74514LA49, 74514LC54, 74514LA56, 74514LC62, 74514LD46, 74514LC70, 74514LA64, 74514LD53, 74514LC88, 74514LA72, 74514LD61, 74514LA80, 74514LD79, 74514LD38, 74514LC96, 74514LA98, 74514LB22, 74514LD87, 74514LB30, 74514LB48, 74514LB97, 74514LB55, 74514LC21 y 74514LC39 al momento de la emisión, y que fue suscrita por *Barclays Capital, J.P. Morgan, Goldman Sachs & Co., Jefferies, BMO Capital Markets, Bank of America Merrill Lynch, Citigroup, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(m)  la Serie B de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 29 de marzo de 2012 por la cantidad agregada de cuatrocientos quince millones doscientos setenta mil (415,270,000) dólares en principal, que incluye cuarenta y nueve millones seiscientos diez mil (49,610,000) dólares en bonos a plazo identificados por el número CUSIP 74514LA23, y trescientos sesenta y cinco millones seiscientos sesenta mil (365,660,000) dólares en bonos en serie identificados por los números CUSIP 74514LZS9, 74514LZT7, 74514LZU4, 74514LZV2, 74514LZW0, 74514LZX8, 74514LZY6, 74514LZZ3, y que fue suscrita por *UBS Financial Services Puerto Rico, Bank of America Merrill Lynch, Popular Securities, Santander Securities, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank PR Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James y Scotia MSD;*

(n)  la Serie C de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de marzo de 2011 por la cantidad agregada de cuatrocientos cuarenta y dos millones quince mil (442,015,000) dólares en principal, que incluye ciento veintisiete millones quince mil (127,015,000) dólares en bonos a plazo

identificados por el número CUSIP 74514LXH5, y trescientos quince millones (315,000,000) de dólares en bonos en serie identificados por los números CUSIP 74514LWY9, 74514LXD4, 74514LXE2, 74514LXA0, 74514LXB8, 74514LXF9, 74514LWZ6, 74514LXC6, 74514LXG7 y 74514LWX1, y que fue suscrita por *Morgan Stanley, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities y VAB Financial;*

(o)    la Serie D de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 12 de julio de 2011 por la cantidad de cincuenta y dos millones ciento noventa mil (52,190,000) dólares en principal en bonos en serie identificados por los números CUSIP 74514LYX9, 74514LYY7, 74514LYZ4, 74514LZA8, 74514LB6, 74514LZC4, 74514LZH3, 74514LZF7, 74514LZD2, 74514LZJ9, 74514LZG5 y 74514LZE0, y que fue suscrita por *J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(p)    la Serie E de los *Public Improvement Bonds* emitida por el Gobierno de Puerto Rico el 12 de julio de 2011 por la cantidad de doscientos cuarenta y cinco millones novecientos quince mil (245,915,000) dólares en principal en bonos en serie identificados por los números CUSIP 74514LZK6, 74514LZL4, 74514LZM2, 74514LZN0, 74514LZP5 y 74514LZQ3, y que fue suscrita por *J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(q)    la Serie A de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de septiembre de 2009 por la cantidad de tres millones cuatrocientos veinticinco mil (3,425,000) dólares en principal de bonos a plazo identificados por el número CUSIP 74514LVV6, y que fue suscrita por *Morgan Stanley, JP Morgan,*

*Barclays Capital, Goldman Sachs & Co., Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities y UBS Financial Services of Puerto Rico;*

(r)     la Serie 2007 A-4 de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de septiembre de 2009 por la cantidad de noventa y tres millones ochocientos treinta y cinco mil (93,835,000) dólares en principal de bonos en serie identificados por los números CUSIP 74514LVT1 y 74514LVU8, y que fue suscrita por *Morgan Stanley y JP Morgan;*

(s)     la Serie B de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de noviembre de 2009 por la cantidad de trescientos setenta y dos millones seiscientos ochenta y cinco mil (372,685,000) dólares en principal de bonos a plazo identificados por los números CUSIP 74514LVX2, 74514LVY0, 74514LVZ7 y 74514LVW4, y que fue suscrita por *Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs, Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

(t)     la Serie C de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 16 de diciembre de 2009 por la cantidad de doscientos diez millones doscientos cincuenta mil (210,250,000) dólares en principal de bonos a plazo identificados por el número CUSIP 74514LWA1, y que fue suscrita por *Morgan Stanley, Citi, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch & Co., Ramírez & Co., Inc., UBS Financial Services Incorporated of Puerto Rico, FirstBank Puerto Rico Securities, Popular Securities y Santander Securities;* y,

(u)     la Serie A de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de febrero de 2011 por la cantidad de trescientos cincuenta y seis millones quinientos veinte mil (356,520,000) dólares en principal de bonos en serie identificados por los números CUSIP 74514LWN3, 74514LWJ2, 74514LWP8, 74514LWK9, 74514LWL7, 74514LWM5, 74514LWQ6, 74514LWT0, 74514LWR4 y 74514LWS2, y que fue suscrita por *Barclays Capital, Jefferies & Company, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities y Santander Securities;*

(47)    Bonos No Impugnados.-colectivamente, todas las emisiones de bonos
        realizadas por el Gobierno de Puerto Rico, sus Empresas Públicas,
        Municipios o Sistemas de Retiro cuyas garantías jurídicas, cuantías
        garantizadas, fuentes de pago comprometidas o autorizaciones legales no
        hayan sido retadas ante el Tribunal de Distrito de los Estados Unidos para
        el Distrito de Puerto Rico o ante el Tribunal General de Justicia por parte
        del Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas
        de Retiro, la JSAF, los comités oficiales de acreedores(as) y retirados(as),
        cualesquiera otras Partes Interesadas, según dicho término es definido en
        el Código de Quiebras de los Estados Unidos, o personas con legitimación
        activa para intervenir mediante la presentación de petición de quiebra,
        memorando de derecho, moción, demanda, o procedimiento adversarial al
        amparo de algún caso presentado y pendiente de resolución final bajo del
        Título III de PROMESA; y, (ii) que aún estén pendientes de pago.

(48)    Código de Quiebras.-se refiere al Título 11 del Código de los Estados
        Unidos, el cual dispone sobre los mecanismos de composición o ajustes de
        deudas para individuos(as), corporaciones y entidades gubernamentales.

(49)    Coeficiente de Financiación Adecuada.-es la proporción, equivalente a 1.2,
        de recursos propios totales del Fideicomiso para la Administración
        Conjunta de los Sistemas de Retiro relativo a sus obligaciones totales, según
        determinados anualmente mediante estudio actuarial independiente
        basado en el método y la valoración agregada del costo y la financiación
        actuarial utilizados por la Oficina del Contralor del Estado de Nueva York
        para la administración de los sistemas de retiro gubernamentales de ese
        estado, para alcanzar un nivel adecuado de financiación de las pensiones.

(50)    CUSIP.-se refiere al Comité de Procedimientos Uniformes de Identificación
        de Valores (Committee on Uniform Securities Identification Procedures),
        cuyo sistema de numeración permite la identificación única de todas las
        acciones y los bonos registrados en los mercados de capital de los Estados
        Unidos y Canadá, y se utiliza para crear una distinción concreta entre los
        valores que se negocian en los mercados públicos. El Comité de
        Procedimientos Uniformes de Identificación de Valores (CUSIP) supervisa
        todo el sistema de numeración CUSIP.

(51)    ERISA-significa la "Ley para la Seguridad de los Ingresos de Retiro de los
        Empleados" (en inglés, "Employee Retirement Income Security Act") de
        1974, incorporada al Título 29 del Código de los Estados Unidos.

(52)   Fideicomiso para la Administración Conjunta de los Sistemas de Retiro.- en adelante, FACSiR, es el nuevo Sistema de Retiro diseñado y promovido en esta Ley, y que administraría un nuevo fideicomiso en el que se consolidan los recursos y las obligaciones del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico, según establecido por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, en adelante SRE; el Sistema de Retiro para la Judicatura, creado mediante la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, en adelante SRJ; y el Sistema de Retiro para Maestros de Puerto Rico, según establecido por la Ley 160-2013, en adelante SRM, y se centralizan la gestión y los gastos de administración de los mismos, tras la confirmación de un Plan de Ajuste viable, justo y equitativo para el pueblo y para los(as) Pensionados(as) y Participantes de los Sistemas de Retiro.

(53)   Ingresos del Fideicomiso o Ingresos del FACSiR.-incluirán, sin que se entienda como una lista exhaustiva o limitación:

(a)   la transferencia del cien (100) por ciento del balance depositado en la Cuenta para el Pago de las Pensiones Acumuladas, creada por virtud de la Ley 106-2017, según enmendada;

(b)   el cien (100) por ciento de las aportaciones individuales de los(as) Participantes;

(c)   el cien (100) por ciento de las aportaciones patronales del Gobierno de Puerto Rico;

(d)   el cien (100) por ciento de los ahorros anuales producidos por la descarga, anulación o reducción en el Servicio de Deuda Pendiente de Pago de los Bonos Impugnados;

(e)   la restitución del cien (100) por ciento de las aportaciones individuales retenidas a los y las Participantes del Programa de Cuentas de Ahorro para el Retiro, creado por virtud del Capítulo 3 de la Ley Núm. 447 de 15 de mayo de 1951, y los daños correspondientes a la rentabilidad de inversión dejada de devengar tras el incumplimiento del Administrador del SRE con el Artículo 3-103 y el Artículo 3-105 del Programa de Cuentas de Ahorro para el Retiro y la Ley Núm. 447 de 15 de mayo de 1951, según enmendada;

(f)   el cien (100) por ciento de cualesquiera sentencias judiciales, y los derechos propios y del Gobierno de Puerto Rico a procurar y recibir restitución, por daños y perjuicios sufridos en el erario público a

consecuencia de la impericia, negligencia, temeridad o malicia de los bancos suscriptores y sus representantes o consultores(as) profesionales(as) en la emisión, compra y venta de Bonos Impugnados;

(g) el cien (100) por ciento de los réditos por las inversiones y los activos del FACSiR, incluyendo los activos de los Sistemas de Retiro que no hayan sido liquidados o transferidos a la Cuenta para el Pago de las Pensiones Acumuladas tras la aprobación de la Ley 106-2017, según enmendada, cuya titularidad también será transferida, sin liquidar el activo, al FACSiR;

(h) el cien (100) por ciento de las economías netas producidas en la administración del FACSiR y sus activos;

(i) el cien (100) por ciento de cualesquiera otros ingresos propios que pueda generar el FACSiR sin arriesgar el Coeficiente de Financiación Adecuada, en cumplimiento con los deberes fiduciarios dispuestos en la Sección 3.08 de esta Ley, y que sean cónsonos con los poderes conferidos al Fideicomiso en ley; y,

(j) la cantidad mayor entre: (i) el cincuenta (50) por ciento de los ahorros anuales producidos por la descarga o reducción en el servicio de deuda de Bonos No Impugnados, o (ii) la totalidad de los ahorros anuales que sean necesarios producir en el servicio de deuda de Bonos No Impugnados para alcanzar el Coeficiente de Financiación Adecuada en un plazo no mayor de quince (15) años, a través de un Plan de Ajuste de Deuda bajo el Título III de PROMESA.

(54) JSAF.-la Junta de Supervisión y Administración Financiera, creada al amparo de los Títulos I y II de PROMESA.

(55) "Ley Sarbanes-Oxley"-significa la "Ley Sarbanes-Oxley" de 2002, Ley Pública 107-204, aprobada por el Gobierno de los Estados Unidos el 30 de julio de 2002.

(56) Mejores Prácticas de Contabilidad.-significa el establecimiento de un sistema de controles de contabilidad que sean cónsonos con los principios de contabilidad generalmente aceptados (GAAP, por sus siglas en inglés), ERISA y la "Ley Sarbanes-Oxley". Además significa, sin que se entienda como una lista exhaustiva o una limitación: (1) la creación de un equipo de auditores(as) internos(as); (2) la publicación trimestral y permanente de un desglose detallado de los ingresos, los gastos, las inversiones y su

rendimiento, las personas naturales o jurídicas que administran los activos o asesoran en la inversión de los activos, y los honorarios y otras tarifas devengadas por las personas naturales o jurídicas que administran los activos o asesoran en la inversión de los activos; (3) la publicación anual y permanente de estados financieros auditados y estudios de valoración actuarial; (4) la publicación trimestral y permanente de un resumen estadístico de los Participantes y Pensionados, desglosados por grupos de edad, escalas salariales o de beneficios, y programas de retiro correspondientes; (5) la realización y publicación regular y permanente de auditorías de cumplimiento (compliance audits) y rendimiento (performance audits), conforme los estándares de la Oficina de Rendición de Cuentas Gubernamental de los Estados Unidos (US GAO, por sus siglas en inglés), también conocido como *Yellow Book*; (6) la traducción al español y al inglés de todos los informes periódicos cuya producción es requerida mediante esta Ley; (7) la remisión de copias fieles y exactas, de manera regular y permanente, de cualesquiera informes periódicos sean requeridos producir mediante ley, reglamento, boletín administrativo, carta circular, principios de contabilidad generalmente aceptados, o políticas internas para los sistemas de retiro en Puerto Rico o de conformidad a normas del Gobierno de los Estados Unidos de América, a la Asamblea Legislativa y a las comisiones legislativas que tengan jurisdicción sobre los Sistemas de Retiro y el Presupuesto del Gobierno de Puerto Rico; y, (8) la adopción y publicación de políticas de inversión.

(57) Participantes.-empleados(as) activos(as) del Gobierno de Puerto Rico, los Maestros e integrantes del Sistema de Retiro para Maestros de Puerto Rico, los(as) empleados(as) de los Municipios, los(as) jueces(zas) e integrantes del Sistema de Retiro de la Judicatura de Puerto Rico, y los(as) empleados(as) de las Corporaciones Públicas, excepto los(as) empleados(as) de la Universidad de Puerto Rico que sean integrantes o participantes del Sistema de Retiro de la Universidad de Puerto Rico y los(as) empleados(as) de la Autoridad de Energía Eléctrica que sean integrantes o participantes del Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica. Además, incluye a empleados(as) acogidos a las disposiciones de la Ley 211-2015, según enmendada, conocida como "Ley del Programa de Preretiro Voluntario", y los que pasen o hayan pasado a laborar dentro de una Alianza Público Privada y todo(a) aquel(lla) integrante del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico que haya realizado aportaciones a dicho Sistema y estas no se le hayan reembolsado. Este término incluye a los(as) exempleados(as) del Gobierno de Puerto Rico que se separaron del servicio público y que no se le reembolsaron sus aportaciones y/o cualquier beneficio acumulado hasta la fecha de separación.

(58)  Pensionado(a).-toda persona que reciba una pensión, anualidad o beneficio de acuerdo con las disposiciones de esta Ley o de las que crean los diferentes Sistemas de Retiro, excepto el Sistema de Retiro de la Universidad de Puerto Rico y el Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica.

(59)  Plan de Ajuste.-plan propuesto por la JSAF para la reducción de las deudas del Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro a través del Título III de PROMESA, conforme la Sección 312 de PROMESA.

(60)  Preretirado(a).-toda persona acogida al Programa de Preretiro Voluntario creado mediante la Ley 211-2015, según enmendada, conocida como "Ley del Programa de Preretiro Voluntario".

(61)  PROMESA.-la Ley Pública 114-187, también conocida como "Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico", aprobada por el Gobierno de los Estados Unidos de América.

(62)  Quiebra.-El proceso de reestructuración de deuda al que la JSAF acogió al Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro el 3 de mayo de 2017, ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, al amparo del Título III de PROMESA.

(63)  Servicio de Deuda Pendiente de Pago de los Bonos Impugnados.-es el costo de amortización, incluyendo el pago de intereses y la porción correspondiente del principal, o las transferencias anuales de fondos públicos que deben ser realizadas por el Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro en cumplimiento con las emisiones de bonos que aún no se hubieren madurado, vencido, cancelado, intercambiado, refinanciado o reestructurado desde la fecha de vigencia de la Sección 405 de PROMESA, o en la fecha de efectividad de la Sección 362 del Código de Quiebras de los Estados Unidos según aplicable a Puerto Rico mediante la Sección 301(a) de PROMESA, y hasta las respectivas fechas de vencimiento de cada emisión de bonos.

(64)  Sistemas de Retiro.-el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico, según establecido por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, en adelante SRE; el Sistema de Retiro para la Judicatura, creado mediante la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, en adelante SRJ; y el Sistema de Retiro para Maestros de Puerto

Rico, según establecido por la Ley 160-2013, en adelante SRM. Para propósitos de esta Ley, no incluye el Sistema de Retiro de la Universidad de Puerto Rico ni el Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica."

Artículo 2.07.- Se añade un nuevo Artículo 1-111 a la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, para que lea como sigue:

"Artículo 1-111.- Política Pública.

Será política pública del Sistema:

(a)   proteger el presente y futuro de nuestros(as) servidores(as) públicos(as) para impedir que caigan en la pobreza tras una vida de servicio por su país, y para reclutar y retener el mejor talento posible ahora y siempre en el servicio público de Puerto Rico;

(b)   expresar el más absoluto y enérgico rechazo a cualquier Plan de Ajuste o Acuerdo de Reestructuración que reduzca, perjudique, amenace, subordine o empeore las pensiones, las anualidades, los beneficios y otras acreencias actuales de servidores(as) públicos(as) Pensionados y los Participantes de los Sistemas de Retiro, más de lo que ya fueron reducidas, perjudicadas, amenazadas o empeoradas previo a la radicación de la petición de quiebra el 3 de mayo de 2017;

(c)   definir como inviable y rechazar absolutamente cualquier Plan de Ajuste que produzca una reestructuración insostenible de los bonos del Gobierno de Puerto Rico, sus Corporaciones Públicas y los Sistemas de Retiro, y que no evite un segundo evento de insolvencia o quiebra para las finanzas públicas;

(d)   reconocer que una reestructuración insostenible de los bonos del Gobierno de Puerto Rico, sus Corporaciones Públicas y los Sistemas de Retiro, o cualquier evento sucesivo de insolvencia o quiebra para las finanzas públicas, representa una amenaza directa e intolerable para los servicios públicos esenciales de los que depende el pueblo de Puerto Rico, y para las pensiones y otras acreencias de los(as) servidores(as) públicos(as) que los proveen, ya sean Pensionados o Participantes de los Sistemas de Retiro;

(e)   medir y promover la sostenibilidad de la deuda de Puerto Rico pagadera con fondos públicos de manera agregada y según determinada mediante análisis de la capacidad de sostener el servicio de esa deuda agregada

conforme el poder adquisitivo en Puerto Rico, y neto del gasto necesario para satisfacer el pago de las pensiones y los servicios públicos esenciales;

(f)   condenar el Plan de Ajuste Conjunto para el Gobierno de Puerto Rico, la Administración de los Sistemas de Retiro de Empleados del Gobierno y la Judicatura de Puerto Rico, y la Autoridad de Edificios Públicos de Puerto Rico, presentado por la JSAF el 27 de septiembre de 2019, enmendado el 28 de febrero de 2020, ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, por ser irremediablemente incompatible con la Política Pública descrita en esta Ley;

(g)   rechazar cualquier Plan de Ajuste que pretenda utilizar la Sección 1129(b) del Código de Quiebras de los Estados Unidos para imponer recortes adicionales a servidores(as) públicos(as) Pensionados y Participantes de los Sistemas de Retiro;

(h)   rechazar cualquier Plan de Ajuste o Acuerdo de Reestructuración cuya viabilidad o garantía de pago para el servicio de deuda requiera aumentar o establecer impuestos regresivos, tarifas u otros mecanismos que encarezcan los servicios de agua, luz, transportación, educación y demás servicios públicos esenciales para recaudar ingresos públicos del bolsillo de las familias trabajadoras y pensionadas en Puerto Rico;

(i)   rechazar cualquier Plan de Ajuste o Acuerdo de Reestructuración cuya viabilidad o garantía de pago para el servicio de deuda requiera recortes a servicios públicos esenciales provistos por el Gobierno de Puerto Rico, sus Corporaciones Públicas y los Municipios, incluyendo, sin que se entienda como una limitación, educación, salud, protección ambiental, vivienda, sanidad y manejo de desperdicios sólidos, seguridad y manejo de emergencias, alcantarillado y procesamiento de agua, energía eléctrica, infraestructura vial y transportación colectiva;

(j)   reconocer que todo intento de recortar el presupuesto disponible para los servicios públicos esenciales provistos desde el Gobierno de Puerto Rico, sus Corporaciones Públicas y los Municipios, o de reducir el gasto de nómina o la cantidad de servidores(as) públicos(as) con derecho a ser Participantes de los Sistemas de Retiro, también es un intento de recortar los recursos disponibles para cumplir con las pensiones, las anualidades, los beneficios y otras acreencias que pudieran tener los(as) Pensionados y Participantes de los Sistemas de Retiro, y las pérdidas que ello representaría en aportaciones individuales o patronales deben ser compensadas para velar por la solvencia actuarial de los Sistemas de Retiro y el Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR);

(k)   reconocer que la JSAF necesita que el Gobierno de Puerto Rico tome acciones afirmativas que le permitan cumplir con todos los requisitos dispuestos en la Sección 314 de PROMESA para la confirmación de un Plan de Ajuste, incluyendo, sin que se entienda como una limitación, autorizar las emisiones de bonos que se habrán de intercambiarse como consecuencia de un Plan de Ajuste y enmendar cualesquiera leyes que sean incompatibles con los acuerdos alcanzados entre la JSAF y grupos de acreedores(as);

(l)   expresar de manera clara e inequívoca que no se tomará acción alguna que permita la confirmación de cualquier Plan de Ajuste que sea incompatible con lo dispuesto en esta Política Pública, incluyendo, sin que se entienda como una limitación, la eliminación de barreras reglamentarias, la creación de reglamentación, o cualesquiera autorizaciones necesarias para permitir que el Plan de Ajuste de la JSAF cumpla con los requisitos dispuestos en la Sección 314(b)(3) y la Sección 314(b)(5) de PROMESA;

(m)   reconocer que los(as) Pensionados y Participantes de los Sistemas de Retiro ya han sido perjudicados(as) en sus acreencias contra el Gobierno de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro durante los años previos a la presentación de la petición de quiebra, por cantidades que superan:

(i)   el cuarenta y dos (42) por ciento del valor agregado de las pensiones, los beneficios y demás derechos de retiro para el(la) Pensionado o beneficiario promedio del Programa de Beneficio Definido bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde una fecha previa al 1 de abril de 1990;

(ii)   el treinta y uno (31) por ciento del valor agregado de las pensiones, los beneficios y demás derechos de retiro para el(la) Pensionado o beneficiario promedio del Programa de Beneficio Definido bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde una fecha posterior al 1 de abril de 1990 pero previa al 1 de enero de 2000; y,

(iii)   el quince (15) por ciento del valor agregado de los beneficios y demás derechos de retiro para el(la) beneficiario(a) promedio del Programa de Cuentas de Ahorro para el Retiro bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde el 1 de enero de 2000.

(n)     garantizar que ninguna parte de los fondos y recursos del Sistema, comprometidos para actividades relacionadas a la participación del Sistema en cualesquiera procesos judiciales o en los procesos bajo el Título III de PROMESA, sean dirigidos hacia la consecución de cualquier Plan de Ajuste incompatible con lo dispuesto en esta Ley;

(o)     promover la creación de un Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR) que sea custodio, recaude, administre y garantice adecuadamente los recursos destinados al pago de la totalidad de pensiones y beneficios a los que actualmente tienen derecho nuestros(as) servidores(as) públicos(as), de modo que permita proteger, capitalizar y garantizar a perpetuidad los derechos y beneficios de retiro para los(as) Pensionados(as) y Participantes cubiertos por esta Ley;

(p)     garantizar el derecho a un retiro digno como parte fundamental de una vida digna y como corolario del derecho a la inviolabilidad de la dignidad del ser humano consagrada en la Primera Sección de la Carta de Derechos de la Constitución de Puerto Rico;

(q)     reconocer que un retiro digno consiste en disfrutar de una pensión vitalicia que proteja a cada persona contra la pobreza en su vejez, en devolver a los(as) Pensionados(as) y Participantes de los Sistemas de Retiro los derechos y beneficios que han perdido mediante legislación en tiempos de crisis fiscales o graves emergencias en las finanzas públicas, y en expandir los derechos y beneficios de Pensionados y Participantes del FACSiR una vez alcanzado el Coeficiente de Financiación Adecuada;

(r)     velar por la integridad, sana administración y Mejores Prácticas de Contabilidad de todos los fondos públicos disponibles al Sistema para evitar pérdidas de fondos públicos que atenten contra la capacidad del Sistema y el FACSiR de cumplir con los objetivos trazados en esta Política Pública;

(s)     definir cualquier reconocimiento o repago de alguna parte de cualesquiera Bonos Impugnados, sin la debida adjudicación de un tribunal con competencia de que dichos bonos fueron emitidos de conformidad con las leyes y los reglamentos correspondientes, incluyendo la Constitución de Puerto Rico, como un atentado a la integridad, sana administración y las Mejores Prácticas de Contabilidad de los fondos públicos disponibles al Gobierno de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro;

(t)     proteger los Ingresos del FACSiR contra desviaciones, impagos u otros
        incumplimientos que menoscaban la eventual relación contractual entre el
        Gobierno de Puerto Rico y el FACSiR; y, trabajar colaborativamente con la
        AAFAF, la Asamblea Legislativa y sus comisiones con jurisdicción sobre los
        Sistemas de Retiro y el Presupuesto del Gobierno de Puerto Rico, los demás
        Sistemas de Retiro, y la Junta para la planificación, legislación necesaria,
        creación y transición ordenada hacia un Fideicomiso para la
        Administración Conjunta de los Sistemas de Retiro (FACSiR) que sea
        custodio, recaude, administre y garantice adecuadamente los recursos
        destinados al pago de la totalidad de pensiones y beneficios conforme a los
        mismos derechos que tenían nuestros(as) servidores(as) públicos(as) al
        momento de radicarse la petición de quiebra al amparo del Título III de
        PROMESA el 3 de mayo de 2017, de modo que permita proteger, capitalizar
        y garantizar a perpetuidad los derechos y beneficios de retiro para los(as)
        Pensionados(as) y Participantes de los Sistemas de Retiro."

Artículo 2.08.- Se enmienda el Artículo 1.1 de la Ley 160-2013, según enmendada,
conocida como "Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de
Puerto Rico", para que lea como sigue:

"Artículo 1-1.-Definiciones.

        Las siguientes palabras y términos, cuando sean usados o se haga
referencia a los mismos en esta Ley, tendrán el significado indicado a continuación
a menos que del contexto surja claramente otro significado. Los tiempos usados
en el presente incluyen también el futuro, si en algún lugar se usa una palabra en
masculino solamente como norma genérica, se entenderá enmendado a una
palabra o palabras que muestren la inclusión masculina y femenina, así como no
binaria en el lenguaje, salvo en aquellos casos que tal interpretación resultase
absurda. El número singular incluye el plural y el plural el singular.

(a)     AAFAF-la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto
        Rico, creada por la Ley 2-2017.

(b)     Acuerdo de Reestructuración-significa cualquier acuerdo entre (1) el
        Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de
        Retiro; (2) la JSAF; (3) bonistas del Gobierno; (4) aseguradoras de bonos, se
        hayan o no subrogado en el derecho de crédito de los(as) bonistas, del
        Gobierno; con relación a, o en apoyo de, cualquier transacción que implique
        una Modificación Calificativa, según este concepto es definido en el Título
        VI de PROMESA, o un Ajuste, según este concepto es utilizado en el Título
        III de PROMESA, de los bonos del Gobierno.

(c)     AEP-la Autoridad de Edificios Públicos de Puerto Rico, creada por la Ley Núm. 56 de 19 de junio de 1958, según enmendada.

(d)     Aportación Adicional Anual.-la aportación anual certificada por el actuario externo del Sistema, preparada al menos ciento veinte días (120) días antes del comienzo del año fiscal 2018- 2019, y luego cada dos (2) años hasta el año fiscal 2041-2042, como necesaria para evitar que el valor de los activos brutos proyectados del Sistema sea, durante cualquier año fiscal subsiguiente, menor a trescientos ($300) millones de dólares, sujeto a lo dispuesto en el Artículo 7.1 de esta Ley. Si por cualquier razón, la Certificación de dicha Aportación Adicional Anual para el año fiscal correspondiente no estuviese disponible dentro del término establecido de ciento veinte (120) días, o antes, con el consentimiento de la Oficina de Gerencia y Presupuesto, la Aportación Adicional Anual para ese año fiscal será la del año fiscal inmediatamente anterior, sujeto a lo establecido en el Artículo 7.1 de esta Ley.

(e)     Aportaciones Individuales.-aquellas cantidades que se hayan descontado o se descontaren del salario del participante, para ser acreditadas a su Cuenta de Aportaciones al Fondo o a su Cuenta de Aportaciones Definidas, según aplique.

(f)     Aportación Uniforme para la Justicia Magisterial.-la aportación anual a realizarse al Sistema equivalente en el año fiscal 2016-2017 a $30 millones, en el año fiscal 2017-2018 a $30 millones y, a partir del año fiscal 2018-2019 y por los años subsiguientes hasta el año fiscal 2041- 2042, a $60 millones.

(g)     Bonos Impugnados-colectivamente, todas las emisiones de bonos realizadas por el Gobierno cuyas garantías jurídicas, cuantías garantizadas, fuentes de pago comprometidas o autorizaciones legales hayan sido retadas ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico o ante el Tribunal General de Justicia por parte del Gobierno de Puerto Rico, sus Empresas Públicas, Municipios, Sistemas de Retiro, la JSAF, los comités oficiales de acreedores(as) y retirados(as), cualesquiera otras Partes Interesadas, según dicho término es definido en el Código de Quiebras de los Estados Unidos, o personas con legitimación activa para intervenir mediante la presentación de petición de quiebra, memorando de derecho, moción, demanda, o procedimiento adversarial al amparo de algún caso presentado y pendiente de resolución final bajo del Título III de PROMESA. Incluye, sin que se entienda como una limitación:

(1)     la Serie A de los *Senior Pension Funding Bonds* emitida por la Administración de los Sistemas de Retiro de los Empleados del

Gobierno y la Judicatura (ASR) el 31 de enero de 2008 por la cantidad agregada de mil quinientos ochenta y ocho millones ochocientos diez mil setecientos noventa y nueve y sesenta céntimos (1,588,810,799.60) dólares en principal, que incluye mil quinientos cuarenta y tres millones setecientos setenta mil (1,543,770,000) dólares en bonos a plazo y cuarenta y cinco millones cuarenta mil setecientos noventa y nueve dólares y sesenta céntimos (45,040,799.60) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramírez & Co., Inc., Scotia Capital, TCM Capital y Wachovia Capital Markets, LLC* originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(2)     la Serie B de los *Senior Pension Funding Bonds* emitida por la ASR el 2 de junio de 2008 por la cantidad agregada de mil cincuenta y ocho millones seiscientos treinta y cuatro mil seiscientos trece y cinco céntimos (1,058,634,613.05) dólares en principal, que incluye ochocientos dieciséis millones cien mil (816,100,000) dólares en bonos a plazo y doscientos cuarenta y dos millones quinientos treinta y cuatro mil seiscientos trece y cinco céntimos (242,534,613.05) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities* originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(3)     la Serie C de los *Senior Pension Funding Bonds* emitida por la ASR el 30 de junio de 2008 por la cantidad agregada de trescientos millones doscientos dos mil novecientos treinta (300,202,930) dólares en principal, que incluye doscientos noventa y ocho millones (298,000,000) de dólares en bonos a plazo y dos millones doscientos dos mil novecientos treinta (2,202,930) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Eurobank MSD, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramírez & Co., Inc., Scotia Capital y Wachovia Capital Markets, LLC* y originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(4)     la Serie K de los *Government Facilities Revenue Refunding Bonds* emitidos por la Autoridad de Edificios Públicos (AEP) el 1 de julio de 2009 por la cantidad de cincuenta millones (50,000,000) de dólares en principal de bonos a plazo identificados por el número CUSIP 745235L82 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co. y Ramírez & Co., Inc.;*

(5)     la Serie P de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 1 de julio de 2009 por la cantidad agregada de trescientos treinta millones novecientos treinta y cinco mil (330,935,000) dólares en principal, que incluye doscientos quince millones ciento sesenta mil (215,160,000) dólares en bonos a plazo identificados por los números CUSIP 745235K75, 745235K83, 745235K91, 745235L25 y 745235L33 al momento de la emisión, y ciento quince millones setecientos setenta y cinco mil (115,775,000) dólares en bonos en serie identificados por los números CUSIP 745235L41, 745235L58, 745235L66 y 745235L74 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

(6)     la Serie Q de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 28 de octubre de 2009 por la cantidad agregada de ciento cincuenta y dos millones quinientos cuarenta mil (152,540,000) dólares en principal, que incluye ciento cuarenta y cuatro millones trescientos cuarenta mil (144,340,000) dólares en bonos a plazo identificados por los números CUSIP 745235M24, 745235M32 y 745235M40 al momento de la emisión, y ocho millones doscientos mil (8,200,000) dólares en bonos en serie identificados por el número de CUSIP 745235L90 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

(7)     la Serie R de los *Government Facilities Revenue Bonds* emitida por la AEP el 24 de agosto de 2011 por la cantidad agregada de setecientos cincuenta y seis millones cuatrocientos cuarenta y nueve mil (756,449,000) dólares en principal identificados por los números CUSIP 745235 M57, 745235 M73, 745235 M65 y 745235 M81 al momento de la emisión, y que fue suscrita por *Popular Securities, Bank of America Merrill Lynch, Santander Securities, UBS Financial Services Incorporated of Puerto Rico, Barclays Capital, BBVAPR MSD, Citigroup,*

*FirstBank Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James y Scotia MSD,* y originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(8)     la Serie S de los *Government Facilities Revenue Bonds* emitida por la AEP el 24 de agosto de 2011 por la cantidad agregada de trescientos tres millones novecientos cuarenta y cinco mil (303,945,000) dólares en principal, que incluye doscientos ocho millones novecientos cuarenta y cinco mil (208,945,000) dólares en bonos a plazo identificados por los números CUSIP 745235P62 y 745235P70 al momento de la emisión, y noventa y cinco millones (95,000,000) de dólares en bonos en serie identificados por los números CUSIP 745235M99, 745235N23, 745235N31, 745235N49, 745235N56, 745235N64, 745235N72, 745235N80, 745235N98, 745235P21, 745235P39, 745235P47, 745235P54 y 745235P88 al momento de la emisión, y que fue suscrita por *Ramírez & Co., Inc., RBC Capital Markets, Barclays Capital, BMA Capital Markets, Bank of America Merrill Lynch, Citigroup, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Morgan Stanley, Raymond James, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(9)     la Serie T de los *Government Facilities Revenue Bonds – Qualified Zone Academy Bonds* emitida por la AEP el 22 de diciembre de 2011 por la cantidad agregada de ciento veintiún millones quinientos veintiocho mil (121,528,000) dólares en principal identificados por el número CUSIP 745235Q20 al momento de la emisión, y que fue suscrita por *Santander Securities y UBS Financial Services Puerto Rico;*

(10)    la Serie U de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 21 de junio de 2012 por la cantidad agregada de quinientos ochenta y dos millones trescientos cuarenta y cinco mil (582,345,000) dólares en principal, que incluye quinientos treinta y ocho millones seiscientos setenta y cinco mil (538,675,000) dólares en bonos a plazo identificados por el número CUSIP 745235R37 al momento de la emisión, y cuarenta y tres millones seiscientos setenta mil (43,670,000) dólares en bonos en serie identificados por los números CUSIP 745235S51, 745235R45, 745235R52, 745235R60, 745235R78, 745235R86, 745235R94, 745235S28, 745235S36, 745235S44 y 745235S69 al momento de la emisión, y que fue suscrita por *Goldman Sachs & Co., BMO Capital Markets, RBC Capital Markets,*

*Barclays, Bank of America Merrill Lynch, Citigroup, Jefferies, J.P. Morgan,
Morgan Stanley, Ramírez & Co., Inc., Raymond James | Morgan Keegan,
Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental
Financial Services, Popular Securities, Santander Securities, Scotia MSD,
UBS Financial Services Puerto Rico y VAB Financial;*

(11)     la Serie A de los *General Obligation* Bonds emitida por el Gobierno de
Puerto Rico el 17 de marzo de 2014 por la cantidad de tres mil
quinientos millones (3,500,000,000) de dólares en principal de bonos
a plazo identificados por el número CUSIP 74514LE86 al momento
de la emisión, y que fue suscrita por *Barclays, Morgan Stanley, RBC
Capital Markets, Bank of America Merrill Lynch, Goldman Sachs & Co.,
J.P. Morgan, Ramírez & Co., Inc., FirstBank PR Securities, Jefferies,
Mesirow Financial, Inc., Oriental Financial Services, Popular Securities,
Santander Securities y UBS Financial Services Puerto Rico;*

(12)     la Serie A de los *Public Improvement Refunding Bonds – General
Obligation Bonds* emitida por el Gobierno de Puerto Rico el 3 de abril
de 2012 por la cantidad agregada de dos mil trescientos dieciocho
millones ciento noventa mil (2,318,190,000) dólares en principal, que
incluye mil seiscientos setenta y ocho millones setecientos cuarenta
y cinco mil (1,678,745,000) dólares en bonos a plazo identificados por
los números CUSIP 74514LD20, 74514LB63, 74514LB71 y 74514LB89
al momento de la emisión, y seiscientos treinta y nueve millones
cuatrocientos cuarenta y cinco mil (639,445,000) dólares en bonos en
serie identificados por los números CUSIP 74514LA31, 74514LC47,
74514LA49,   74514LC54,   74514LA56,   74514LC62,   74514LD46,
74514LC70,   74514LA64,   74514LD53,   74514LC88,   74514LA72,
74514LD61,   74514LA80,   74514LD79,   74514LD38,   74514LC96,
74514LA98,   74514LB22,   74514LD87,   74514LB30,   74514LB48,
74514LB97, 74514LB55, 74514LC21 y 74514LC39 al momento de la
emisión, y que fue suscrita por *Barclays Capital, J.P. Morgan, Goldman
Sachs & Co., Jefferies, BMO Capital Markets, Bank of America Merrill
Lynch, Citigroup, Morgan Stanley, Ramírez & Co., Inc., Raymond James,
RBC Capital Markets, UBS Financial Services Puerto Rico, Wells Fargo
Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial
Services, Popular Securities, Santander Securities, Scotia MSD y VAB
Financial;*

(13)     la Serie B de los *Public Improvement Refunding Bonds* emitida por el
Gobierno de Puerto Rico el 29 de marzo de 2012 por la cantidad
agregada de cuatrocientos quince millones doscientos setenta mil
(415,270,000) dólares en principal, que incluye cuarenta y nueve

millones seiscientos diez mil (49,610,000) dólares en bonos a plazo
identificados por el número CUSIP 74514LA23, y trescientos sesenta
y cinco millones seiscientos sesenta mil (365,660,000) dólares en
bonos en serie identificados por los números CUSIP 74514LZS9,
74514LZT7, 74514LZU4, 74514LZV2, 74514LZW0, 74514LZX8,
74514LZY6, 74514LZZ3, y que fue suscrita por *UBS Financial Services
Puerto Rico, Bank of America Merrill Lynch, Popular Securities, Santander
Securities, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank PR
Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond
James y Scotia MSD;*

(14)   la Serie C de los *Public Improvement Refunding Bonds* emitida por el
Gobierno de Puerto Rico el 17 de marzo de 2011 por la cantidad
agregada de cuatrocientos cuarenta y dos millones quince mil
(442,015,000) dólares en principal, que incluye ciento veintisiete
millones quince mil (127,015,000) dólares en bonos a plazo
identificados por el número CUSIP 74514LXH5, y trescientos quince
millones (315,000,000) de dólares en bonos en serie identificados por
los números CUSIP 74514LWY9, 74514LXD4, 74514LXE2,
74514LXA0, 74514LXB8, 74514LXF9, 74514LWZ6, 74514LXC6,
74514LXG7 y 74514LWX1, y que fue suscrita por *Morgan Stanley,
Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch,
Citi, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Ramírez &
Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services
Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD,
FirstBank Puerto Rico Securities, Oriental Financial Services, Popular
Securities, Santander Securities y VAB Financial;*

(15)   la Serie D de los *Public Improvement Refunding Bonds* emitida por el
Gobierno de Puerto Rico el 12 de julio de 2011 por la cantidad de
cincuenta y dos millones ciento noventa mil (52,190,000) dólares en
principal en bonos en serie identificados por los números CUSIP
74514LYX9, 74514LYY7, 74514LYZ4, 74514LZA8, 74514LB6,
74514LZC4, 74514LZH3, 74514LZF7, 74514LZD2, 74514LZJ9,
74514LZG5 y 74514LZE0, y que fue suscrita por *J.P. Morgan, Barclays
Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi,
Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramírez &
Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services
Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD,
FirstBank Puerto Rico Securities, Oriental Financial Services, Popular
Securities, Santander Securities, Scotia MSD y VAB Financial;*

(16)   la Serie E de los *Public Improvement Bonds* emitida por el Gobierno de
Puerto Rico el 12 de julio de 2011 por la cantidad de doscientos

cuarenta y cinco millones novecientos quince mil (245,915,000) dólares en principal en bonos en serie identificados por los números CUSIP 74514LZK6, 74514LZL4, 74514LZM2, 74514LZN0, 74514LZP5 y 74514LZQ3, y que fue suscrita por *J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(17)   la Serie A de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de septiembre de 2009 por la cantidad de tres millones cuatrocientos veinticinco mil (3,425,000) dólares en principal de bonos a plazo identificados por el número CUSIP 74514LVV6, y que fue suscrita por *Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities y UBS Financial Services of Puerto Rico;*

(18)   la Serie 2007 A-4 de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de septiembre de 2009 por la cantidad de noventa y tres millones ochocientos treinta y cinco mil (93,835,000) dólares en principal de bonos en serie identificados por los números CUSIP 74514LVT1 y 74514LVU8, y que fue suscrita por *Morgan Stanley y JP Morgan;*

(19)   la Serie B de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de noviembre de 2009 por la cantidad de trescientos setenta y dos millones seiscientos ochenta y cinco mil (372,685,000) dólares en principal de bonos a plazo identificados por los números CUSIP 74514LVX2, 74514LVY0, 74514LVZ7 y 74514LVW4, y que fue suscrita por *Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs, Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

(20)   la Serie C de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 16 de diciembre de 2009 por la cantidad de doscientos diez millones doscientos cincuenta mil (210,250,000) dólares en principal de bonos a plazo identificados por el número CUSIP 74514LWA1, y que fue suscrita por *Morgan Stanley, Citi, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch & Co., Ramírez & Co., Inc., UBS Financial Services Incorporated of Puerto Rico,*

*FirstBank Puerto Rico Securities, Popular Securities y Santander Securities;* y,

(21)   la Serie A de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de febrero de 2011 por la cantidad de trescientos cincuenta y seis millones quinientos veinte mil (356,520,000) dólares en principal de bonos en serie identificados por los números CUSIP 74514LWN3, 74514LWJ2, 74514LWP8, 74514LWK9, 74514LWL7, 74514LWM5, 74514LWQ6, 74514LWT0, 74514LWR4 y 74514LWS2, y que fue suscrita por *Barclays Capital, Jefferies & Company, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities y Santander Securities.*

(h)   Bonos No Impugnados-colectivamente, todas las emisiones de bonos realizadas por el Gobierno cuyas garantías jurídicas, cuantías garantizadas, fuentes de pago comprometidas o autorizaciones legales no hayan sido retadas ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico o ante el Tribunal General de Justicia por parte del Gobierno, la JSAF, los comités oficiales de acreedores(as) y retirados (as), cualesquiera otras Partes Interesadas, según dicho término es definido en el Código de Quiebras de los Estados Unidos, o personas con legitimación activa para intervenir mediante la presentación de petición de quiebra, memorando de derecho, moción, demanda, o procedimiento adversarial al amparo de algún caso presentado y pendiente de resolución final bajo del Título III de PROMESA; y, (ii) que aún estén pendientes de pago.

(i)   Código de Quiebras-se refiere al Título 11 del Código de los Estados Unidos, el cual dispone sobre los mecanismos de composición o ajustes de deudas para individuos(as), corporaciones y entidades gubernamentales.

(j)   Coeficiente de Financiación Adecuada-es la proporción, equivalente a 1.2, de recursos propios totales del Fideicomiso para la Administración Conjunta de los Sistemas de Retiro relativo a sus obligaciones totales, según determinados anualmente mediante estudio actuarial independiente basado en el método y la valoración agregada del costo y la financiación actuarial utilizados por la Oficina del Contralor del Estado de Nueva York para la administración de los sistemas de retiro gubernamentales de ese estado, para alcanzar un nivel adecuado de financiación de las pensiones.

(k)    Cuenta de Aportaciones Definidas.-la cuenta creada a partir del 1 de agosto de 2014 a nombre de cada participante conforme a lo establecido en el Artículo 5.4 de esta Ley.

(l)    Cuenta de Aportaciones al Fondo.-la cuenta donde se contabiliza el balance de las aportaciones individuales acreditadas a nombre del participante en el Fondo al 31 de julio de 2014.

(m)   CUSIP: se refiere al Comité de Procedimientos Uniformes de Identificación de Valores (Committee on Uniform Securities Identification Procedures), cuyo sistema de numeración permite la identificación única de todas las acciones y los bonos registrados en los mercados de capital de los Estados Unidos y Canadá, y se utiliza para crear una distinción concreta entre los valores que se negocian en los mercados públicos. El Comité de Procedimientos Uniformes de Identificación de Valores (CUSIP) supervisa todo el sistema de numeración CUSIP.

(n)    Director(a) Ejecutivo(a).-la persona o la entidad que la Junta de Retiro, creada mediante la "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas Para los Servidores Públicos", designe para ejercer las funciones de Administrador(a) del Sistema.

(o)    Empleado(a) del Sistema.-todo aquel empleado(a) del Sistema que accedió a transferir al Sistema sus aportaciones y años de servicio acreditados del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico o de cualquier otro sistema de retiro del Estado Libre Asociado de Puerto Rico. Además, significará todo aquel empleado(a) que comenzó a trabajar en el Sistema en o después del 29 de marzo de 2004.

(p)    ERISA-significa la "Ley para la Seguridad de los Ingresos de Retiro de los Empleados" (en inglés, "Employee Retirement Income Security Act") de 1974, incorporada al Título 29 del Código de los Estados Unidos.

(q)    Fideicomiso para la Administración Conjunta de los Sistemas de Retiro: en adelante, FACSiR, es el nuevo Sistema de Retiro diseñado y promovido en esta Ley, y que administraría un nuevo fideicomiso en el que se consolidan los recursos y las obligaciones del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico, según establecido por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, en adelante SRE; el Sistema de Retiro para la Judicatura, creado mediante la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, en adelante SRJ; y el Sistema de Retiro para Maestros de Puerto Rico, según establecido por la Ley 160-2013, en adelante

SRM, y se centralizan la gestión y los gastos de administración de los mismos, tras la confirmación de un Plan de Ajuste viable, justo y equitativo para el pueblo y para los(as) Pensionados y Participantes de los Sistemas de Retiro.

(r)    Fondo.-el Fondo de Aportaciones al Sistema, así designado en el Artículo 4.1.

(s)    Gobierno.-el Gobierno del Estado Libre Asociado de Puerto Rico y cualquier subdivisión política de este, todos los municipios de Puerto Rico, y aquellas otras organizaciones gubernamentales que deban acogerse a las disposiciones de esta Ley.

(t)    Ingresos del Fideicomiso o Ingresos del FACSiR-incluirán, sin que se entienda como una lista exhaustiva o limitación:

    (1)    la transferencia del cien (100) por ciento del balance depositado en la Cuenta para el Pago de las Pensiones Acumuladas, creada por virtud de la Ley 106-2017, según enmendada;

    (2)    el cien (100) por ciento de las aportaciones individuales de los(as) Participantes;

    (3)    el cien (100) por ciento de las aportaciones patronales del Gobierno de Puerto Rico;

    (4)    el cien (100) por ciento de los ahorros anuales producidos por la descarga, anulación o reducción en el Servicio de Deuda Pendiente de Pago de los Bonos Impugnados;

    (5)    la restitución del cien (100) por ciento de las aportaciones individuales retenidas a los Participantes del Programa de Cuentas de Ahorro para el Retiro, creado por virtud del Capítulo 3 de la Ley Núm. 447 de 15 de mayo de 1951, y los daños correspondientes a la rentabilidad de inversión dejada de devengar tras el incumplimiento del Administrador del SRE con el Artículo 3-103 y el Artículo 3-105 del Programa de Cuentas de Ahorro para el Retiro y la Ley Núm. 447 de 15 de mayo de 1951, según enmendada;

    (6)    el cien (100) por ciento de cualesquiera sentencias judiciales, y los derechos propios y del Gobierno de Puerto Rico a procurar y recibir restitución, por daños y perjuicios sufridos en el erario público a consecuencia de la impericia, negligencia, temeridad o malicia de los

bancos suscriptores y sus representantes o consultores(as) profesionales en la emisión, compra y venta de Bonos Impugnados;

(7) el cien (100) por ciento de los réditos por las inversiones y los activos del FACSiR, incluyendo los activos de los Sistemas de Retiro que no hayan sido liquidados o transferidos a la Cuenta para el Pago de las Pensiones Acumuladas tras la aprobación de la Ley 106-2017, según enmendada, cuya titularidad también será transferida, sin liquidar el activo, al FACSiR;

(8) el cien (100) por ciento de las economías netas producidas en la administración del FACSiR y sus activos;

(9) el cien (100) por ciento de cualesquiera otros ingresos propios que pueda generar el FACSiR sin arriesgar el Coeficiente de Financiación Adecuada, en cumplimiento con los deberes fiduciarios dispuestos en la Sección 3.08 de esta Ley, y que sean cónsonos con los poderes conferidos al Fideicomiso en ley; y,

(10) la cantidad mayor entre (i) el cincuenta (50) por ciento de los ahorros anuales producidos por la descarga o reducción en el servicio de deuda de Bonos No Impugnados, o (ii) la totalidad de los ahorros anuales que sean necesarios producir en el servicio de deuda de Bonos No Impugnados para alcanzar el Coeficiente de Financiación Adecuada en un plazo no mayor de quince (15) años, a través de un Plan de Ajuste de Deuda bajo el Título III de PROMESA.

(u) Interés Compuesto.-nueve punto cinco por ciento (9.5%) anual para propósitos del pago de los servicios no cotizados hechos en o antes del 31 de julio de 2014 y dos por ciento (2%) anual para propósitos de los reembolsos de aportaciones individuales.

(v) JSAF: la Junta de Supervisión y Administración Financiera, creada al amparo de los Títulos I y II de PROMESA.

(w) Junta de Síndicos.-la Junta de Retiro, creada mediante la "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas Para los Servidores Públicos".

(x) "Ley Sarbanes-Oxley"-significa la "Ley Sarbanes-Oxley" de 2002, Ley Pública 107-204, aprobada por el Gobierno de los Estados Unidos el 30 de julio de 2002.

87

(y)      Maestro(s)(as).-profesional que enseña en los salones de clase, los(as) Directores(as) y Subdirectores(as) de Escuela y demás denominaciones y categoría de maestros(as) que existan o puedan existir dentro de la nomenclatura del Departamento de Educación del Estado Libre Asociado de Puerto Rico, el(la) Secretario(a) del Departamento de Educación y funcionarios(as) subalternos(as), y aquellos otros(as) empleados(as) o funcionarios(as) que se acojan a los beneficios de esta Ley, de acuerdo con las disposiciones de la misma, siempre que posean un certificado válido para trabajar como maestros(as).

(z)      Mejores Prácticas de Contabilidad-significa el establecimiento de un sistema de controles de contabilidad que sean cónsonos con los principios de contabilidad generalmente aceptados (GAAP, por sus siglas en inglés), ERISA y la "Ley Sarbanes-Oxley". Además significa, sin que se entienda como una lista exhaustiva o una limitación: (1) la creación de un equipo de auditores(as) internos(as); (2) la publicación trimestral y permanente de un desglose detallado de los ingresos, los gastos, las inversiones y su rendimiento, las personas naturales o jurídicas que administran los activos o asesoran en la inversión de los activos, y los honorarios y otras tarifas devengadas por las personas naturales o jurídicas que administran los activos o asesoran en la inversión de los activos; (3) la publicación anual y permanente de estados financieros auditados y estudios de valoración actuarial; (4) la publicación trimestral y permanente de un resumen estadístico de los(as) Participantes y Pensionados, desglosados por grupos de edad, escalas salariales o de beneficios, y programas de retiro correspondientes; (5) la realización y publicación regular y permanente de auditorías de cumplimiento (compliance audits) y rendimiento (performance audits), conforme los estándares de la Oficina de Rendición de Cuentas Gubernamental de los Estados Unidos (US GAO, por sus siglas en inglés), también conocido como Yellow Book; (6) la traducción al español y al inglés de todos los informes periódicos cuya producción es requerida mediante esta Ley; (7) la remisión de copias fieles y exactas, de manera regular y permanente, de cualesquiera informes periódicos sean requeridos producir mediante ley, reglamento, boletín administrativo, carta circular, principios de contabilidad generalmente aceptados, o políticas internas para los sistemas de retiro en Puerto Rico o de conformidad a normas del gobierno de Estados Unidos de América, a la Asamblea Legislativa y a las comisiones legislativas que tengan jurisdicción sobre los Sistemas de Retiro y el Presupuesto del Gobierno de Puerto Rico; y, (8) la adopción y publicación de políticas de inversión.

(aa)     Participante en Servicio Activo.-el(la) participante que hace una aportación individual mensual al Sistema. Se considerará servicio activo el periodo

durante el cual el(la) participante esté acogido(a) a una licencia sin sueldo autorizada oficialmente por el patrono.

(bb) Participante Inactivo(a).- aquel(lla) participante que en algún momento realizó una aportación individual al Sistema y se separó del servicio sin posteriormente solicitar la devolución de sus aportaciones.

(cc) Participantes.-los(as) maestros(as) y empleados(as) del Sistema, según dispuesto en el Artículo 3.1 de esta Ley.

(dd) Pensión.-cantidad a la que tiene derecho el participante de recibir al momento de retirarse del servicio, de acuerdo con las disposiciones de esta Ley.

(ee) Pensionados(as).todo(a) participante que reciba una pensión del Sistema, de acuerdo con las disposiciones de esta Ley.

(ff) Plan de Ajuste-plan propuesto por la JSAF para la reducción de las deudas del Gobierno a través del Título III de PROMESA, conforme la Sección 312 de PROMESA.

(gg) Programa de Aportaciones Definidas.-el programa establecido en el Capítulo 5 de esta Ley.

(hh) Programa de Beneficio Definido.-Programa establecido en el Capítulo 4 de esta Ley.

(ii) PROMESA-la Ley Pública 114-187, también conocida como "Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico", aprobada por el Gobierno de los Estados Unidos de América.

(jj) Quiebra-El proceso de reestructuración de deuda al que la JSAF acogió al Gobierno el 3 de mayo de 2017, ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, al amparo del Título III de PROMESA.

(kk) Salario.-retribución total que devenga un participante. Al computar la retribución se excluirá toda bonificación concedida en adición al salario, así como todo pago por concepto de horas extras ordinarias de trabajo.

(ll) Salario Promedio.-el promedio de los treinta y seis (36) salarios mensuales más altos que el(la) participante haya obtenido. Esto no aplica al cómputo de pensiones por incapacidad.

(mm)  Servicio de Deuda Pendiente de Pago de los Bonos Impugnados-es el costo de amortización, incluyendo el pago de intereses y la porción correspondiente del principal, o las transferencias anuales de fondos públicos que deben ser realizadas por el Gobierno en cumplimiento con las emisiones de bonos que aún no se hubieren madurado, vencido, cancelado, intercambiado, refinanciado o reestructurado desde la fecha de vigencia de la Sección 405 de PROMESA, o en la fecha de efectividad de la Sección 362 del Código de Quiebras de los Estados Unidos según aplicable a Puerto Rico mediante la Sección 301(a) de PROMESA, y hasta las respectivas fechas de vencimiento de cada emisión de bonos.

(nn)  Sistema.-el Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico.

(oo)  Sistemas de Retiro-el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico, según establecido por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, en adelante SRE; el Sistema de Retiro para la Judicatura, creado mediante la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, en adelante SRJ; y el Sistema de Retiro para Maestros de Puerto Rico, según establecido por la Ley 160-2013, en adelante SRM. Para propósitos de esta Ley, no incluye el Sistema de Retiro de la Universidad de Puerto Rico ni el Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica."

Artículo 2.09.-Se añade un nuevo Artículo 2.6 a la Ley 160-2013, según enmendada, para que lea como sigue:

"Artículo 2.6.-Política Pública.

Será política pública del Sistema:

(a)  proteger el presente y futuro de nuestros(as) servidores(as) públicos(as) para impedir que caigan en la pobreza tras una vida de servicio por su país, y para reclutar y retener el mejor talento posible ahora y siempre en el servicio público de Puerto Rico;

(b)  expresar el más absoluto y enérgico rechazo a cualquier Plan de Ajuste o Acuerdo de Reestructuración que reduzca, perjudique, amenace, subordine o empeore las pensiones, las anualidades, los beneficios y otras acreencias actuales de servidores(as) públicos(as) Pensionados y los Participantes de los Sistemas de Retiro, más de lo que ya fueron reducidas, perjudicadas,

amenazadas o empeoradas previo a la radicación de la petición de quiebra el 3 de mayo de 2017;

(c)     definir como inviable y rechazar absolutamente cualquier Plan de Ajuste que produzca una reestructuración insostenible de los bonos del Gobierno de Puerto Rico, sus Corporaciones Públicas y los Sistemas de Retiro, y que no evite un segundo evento de insolvencia o quiebra para las finanzas públicas;

(d)     reconocer que una reestructuración insostenible de los bonos del Gobierno de Puerto Rico, sus Corporaciones Públicas y los Sistemas de Retiro, o cualquier evento sucesivo de insolvencia o quiebra para las finanzas públicas, representa una amenaza directa e intolerable para los servicios públicos esenciales de los que depende el pueblo de Puerto Rico, y para las pensiones y otras acreencias de los(as) servidores(as) públicos(as) que los proveen, ya sean Pensionados o Participantes de los Sistemas de Retiro;

(e)     medir y promover la sostenibilidad de la deuda de Puerto Rico pagadera con fondos públicos de manera agregada y según determinada mediante análisis de la capacidad de sostener el servicio de esa deuda agregada conforme el poder adquisitivo en Puerto Rico, y neto del gasto necesario para satisfacer el pago de las pensiones y los servicios públicos esenciales;

(f)     condenar el Plan de Ajuste Conjunto para el Gobierno de Puerto Rico, la Administración de los Sistemas de Retiro de Empleados del Gobierno y la Judicatura de Puerto Rico, y la Autoridad de Edificios Públicos de Puerto Rico, presentado por la JSAF el 27 de septiembre de 2019, enmendado el 28 de febrero de 2020 y el 9 de marzo de 2021, ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, por ser irremediablemente incompatible con la Política Pública descrita en esta Ley;

(g)     rechazar cualquier Plan de Ajuste que pretenda utilizar la Sección 1129(b) del Código de Quiebras de los Estados Unidos para imponer recortes adicionales a servidores(as) públicos(as) Pensionados(as) y Participantes de los Sistemas de Retiro;

(h)     rechazar cualquier Plan de Ajuste o Acuerdo de Reestructuración cuya viabilidad o garantía de pago para el servicio de deuda requiera aumentar o establecer impuestos regresivos, tarifas u otros mecanismos que encarezcan los servicios de agua, luz, transportación, educación y demás servicios públicos esenciales para recaudar ingresos públicos del bolsillo de las familias trabajadoras y pensionadas en Puerto Rico;

(i)    rechazar cualquier Plan de Ajuste o Acuerdo de Reestructuración cuya viabilidad o garantía de pago para el servicio de deuda requiera recortes a servicios públicos esenciales provistos por el Gobierno de Puerto Rico, sus Corporaciones Públicas y los Municipios, incluyendo, sin que se entienda como una limitación, educación, salud, protección ambiental, vivienda, sanidad y manejo de desperdicios sólidos, seguridad y manejo de emergencias, alcantarillado y procesamiento de agua, energía eléctrica, infraestructura vial y transportación colectiva;

(j)    reconocer que todo intento de recortar el presupuesto disponible para los servicios públicos esenciales provistos desde el Gobierno de Puerto Rico, sus Corporaciones Públicas y los Municipios, o de reducir el gasto de nómina o la cantidad de servidores(as) públicos(as) con derecho a ser Participantes de los Sistemas de Retiro, también es un intento de recortar los recursos disponibles para cumplir con las pensiones, las anualidades, los beneficios y otras acreencias que pudieran tener los(as) Pensionados(as) y Participantes de los Sistemas de Retiro, y las pérdidas que ello representaría en aportaciones individuales o patronales deben ser compensadas para velar por la solvencia actuarial de los Sistemas de Retiro y el Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR);

(k)    reconocer que la JSAF necesita que el Gobierno de Puerto Rico tome acciones afirmativas que le permitan cumplir con todos los requisitos dispuestos en la Sección 314 de PROMESA para la confirmación de un Plan de Ajuste, incluyendo, sin que se entienda como una limitación, autorizar las emisiones de bonos que habrán de intercambiarse como consecuencia de un Plan de Ajuste y enmendar cualesquiera leyes que sean incompatibles con los acuerdos alcanzados entre la JSAF y grupos de acreedores;

(l)    expresar de manera clara e inequívoca que no se tomará acción alguna que permita la confirmación de cualquier Plan de Ajuste que sea incompatible con lo dispuesto en esta Política Pública, incluyendo, sin que se entienda como una limitación, la eliminación de barreras reglamentarias, la creación de reglamentación, o cualesquiera autorizaciones necesarias para permitir que el Plan de Ajuste de la JSAF cumpla con los requisitos dispuestos en la Sección 314(b)(3) y la Sección 314(b)(5) de PROMESA;

(m)    reconocer que los(as) Pensionados(as) y Participantes de los Sistemas de Retiro ya han sido perjudicados(as) en sus acreencias contra el Gobierno de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro durante los años previos a la presentación de la petición de quiebra, por cantidades que superan:

(i)     el cuarenta y dos (42) por ciento del valor agregado de las pensiones, los beneficios y demás derechos de retiro para el(la) Pensionado(a) o beneficiario(a) promedio del Programa de Beneficio Definido bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde una fecha previa al 1 de abril de 1990;

(ii)    el treinta y uno (31) por ciento del valor agregado de las pensiones, los beneficios y demás derechos de retiro para el(la) Pensionado(a) o beneficiario(a) promedio del Programa de Beneficio Definido bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde una fecha posterior al 1 de abril de 1990 pero previa al 1 de enero de 2000; y,

(iii)   el quince (15) por ciento del valor agregado de los beneficios y demás derechos de retiro para el(la) beneficiario(a) promedio del Programa de Cuentas de Ahorro para el Retiro bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde el 1 de enero de 2000.

(n)     garantizar que ninguna parte de los fondos y recursos del Sistema, comprometidos para actividades relacionadas a la participación del Sistema en cualesquiera procesos judiciales o en los procesos bajo el Título III de PROMESA, sean dirigidos hacia la consecución de cualquier Plan de Ajuste incompatible con lo dispuesto en esta Ley;

(o)     promover la creación de un Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR) que sea custodio, recaude, administre y garantice adecuadamente los recursos destinados al pago de la totalidad de pensiones y beneficios a los que actualmente tienen derecho nuestros(as) servidores(as) públicos(as), de modo que permita proteger, capitalizar y garantizar a perpetuidad los derechos y beneficios de retiro para los(as) Pensionados(as) y Participantes cubiertos por esta Ley;

(p)     garantizar el derecho a un retiro digno como parte fundamental de una vida digna y como corolario del derecho a la inviolabilidad de la dignidad del ser humano consagrada en la Primera Sección de la Carta de Derechos de la Constitución de Puerto Rico;

(q)     reconocer que un retiro digno consiste en disfrutar de una pensión vitalicia que proteja a cada persona contra la pobreza en su vejez, en devolver a los(as) Pensionados(as) y Participantes de los Sistemas de Retiro los derechos y beneficios que han perdido mediante legislación en tiempos de

crisis fiscales o graves emergencias en las finanzas públicas, y en expandir los derechos y beneficios de Pensionados(as) y Participantes del FACSiR una vez alcanzado el Coeficiente de Financiación Adecuada;

(r)   velar por la integridad, sana administración y Mejores Prácticas de Contabilidad de todos los fondos públicos disponibles al Sistema para evitar pérdidas de fondos públicos que atenten contra la capacidad del Sistema y el FACSiR de cumplir con los objetivos trazados en esta Política Pública;

(s)   definir cualquier reconocimiento o repago de alguna parte de cualesquiera Bonos Impugnados, sin la debida adjudicación de un tribunal con competencia de que dichos bonos fueron emitidos de conformidad con las leyes y los reglamentos correspondientes, incluyendo la Constitución de Puerto Rico, como un atentado a la integridad, sana administración y las Mejores Prácticas de Contabilidad de los fondos públicos disponibles al Gobierno de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro;

(t)   proteger los Ingresos del FACSiR contra desviaciones, impagos u otros incumplimientos que menoscaban la eventual relación contractual entre el Gobierno de Puerto Rico y el FACSiR; y,

(u)   trabajar colaborativamente con la AAFAF, la Asamblea Legislativa y sus comisiones con jurisdicción sobre los Sistemas de Retiro y el Presupuesto del Gobierno de Puerto Rico, los demás Sistemas de Retiro, y la Junta de Retiro, creada a través de la Ley 106-2017, según enmendada, conocida como "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos", para la planificación, legislación necesaria, creación y transición ordenada hacia un Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR) que sea custodio, recaude, administre y garantice adecuadamente los recursos destinados al pago de la totalidad de pensiones y beneficios conforme a los mismos derechos que tenían nuestros(as) servidores(as) públicos(as) al momento de radicarse la petición de quiebra al amparo del Título III de PROMESA el 3 de mayo de 2017, de modo que permita proteger, capitalizar y garantizar a perpetuidad los derechos y beneficios de retiro para los(as) Pensionados(as) y Participantes de los Sistemas de Retiro."

Artículo 2.10.-Se añade un nuevo Artículo 1-A a la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, para que lea como sigue:

"Artículo 1-A.-Política Pública.

Será política pública del Sistema:

(a) proteger el presente y futuro de nuestros(as) servidores(as) públicos(as) para impedir que caigan en la pobreza tras una vida de servicio por su país, y para reclutar y retener el mejor talento posible ahora y siempre en el servicio público de Puerto Rico;

(b) expresar el más absoluto y enérgico rechazo a cualquier Plan de Ajuste o Acuerdo de Reestructuración que reduzca, perjudique, amenace, subordine o empeore las pensiones, las anualidades, los beneficios y otras acreencias actuales de servidores(as) públicos(as) Pensionados(as) y los(as) Participantes de los Sistemas de Retiro, más de lo que ya fueron reducidas, perjudicadas, amenazadas o empeoradas previo a la radicación de la petición de quiebra el 3 de mayo de 2017;

(c) definir como inviable y rechazar absolutamente cualquier Plan de Ajuste que produzca una reestructuración insostenible de los bonos del Gobierno de Puerto Rico, sus Corporaciones Públicas y los Sistemas de Retiro, y que no evite un segundo evento de insolvencia o quiebra para las finanzas públicas;

(d) reconocer que una reestructuración insostenible de los bonos del Gobierno de Puerto Rico, sus Corporaciones Públicas y los Sistemas de Retiro, o cualquier evento sucesivo de insolvencia o quiebra para las finanzas públicas, representa una amenaza directa e intolerable para los servicios públicos esenciales de los que depende el pueblo de Puerto Rico, y para las pensiones y otras acreencias de los(as) servidores(as) públicos(as) que los proveen, ya sean Pensionados(as) o Participantes de los Sistemas de Retiro;

(e) medir y promover la sostenibilidad de la deuda de Puerto Rico pagadera con fondos públicos de manera agregada y según determinada mediante análisis de la capacidad de sostener el servicio de esa deuda agregada conforme el poder adquisitivo en Puerto Rico, y neto del gasto necesario para satisfacer el pago de las pensiones y los servicios públicos esenciales;

(f) condenar el Plan de Ajuste Conjunto para el Gobierno de Puerto Rico, la Administración de los Sistemas de Retiro de Empleados del Gobierno y la Judicatura de Puerto Rico, y la Autoridad de Edificios Públicos de Puerto Rico, presentado por la JSAF el 27 de septiembre de 2019, enmendado el 28 de febrero de 2020, ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, por ser irremediablemente incompatible con la Política Pública descrita en esta Ley;

(g)     rechazar cualquier Plan de Ajuste que pretenda utilizar la Sección 1129(b) del Código de Quiebras de los Estados Unidos para imponer recortes adicionales a servidores(as) públicos(as) Pensionados(as) y Participantes de los Sistemas de Retiro;

(h)     rechazar cualquier Plan de Ajuste o Acuerdo de Reestructuración cuya viabilidad o garantía de pago para el servicio de deuda requiera aumentar o establecer impuestos regresivos, tarifas u otros mecanismos que encarezcan los servicios de agua, luz, transportación, educación y demás servicios públicos esenciales para recaudar ingresos públicos del bolsillo de las familias trabajadoras y pensionadas en Puerto Rico;

(i)     rechazar cualquier Plan de Ajuste o Acuerdo de Reestructuración cuya viabilidad o garantía de pago para el servicio de deuda requiera recortes a servicios públicos esenciales provistos por el Gobierno de Puerto Rico, sus Corporaciones Públicas y los Municipios, incluyendo, sin que se entienda como una limitación, educación, salud, protección ambiental, vivienda, sanidad y manejo de desperdicios sólidos, seguridad y manejo de emergencias, alcantarillado y procesamiento de agua, energía eléctrica, infraestructura vial y transportación colectiva;

(j)     reconocer que todo intento de recortar el presupuesto disponible para los servicios públicos esenciales provistos desde el Gobierno de Puerto Rico, sus Corporaciones Públicas y los Municipios, o de reducir el gasto de nómina o la cantidad de servidores(as) públicos(as) con derecho a ser Participantes de los Sistemas de Retiro, también es un intento de recortar los recursos disponibles para cumplir con las pensiones, las anualidades, los beneficios y otras acreencias que pudieran tener los(as) Pensionados(as) y Participantes de los Sistemas de Retiro, y las pérdidas que ello representaría en aportaciones individuales o patronales deben ser compensadas para velar por la solvencia actuarial de los Sistemas de Retiro y el Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR);

(k)     reconocer que la JSAF necesita que el Gobierno de Puerto Rico tome acciones afirmativas que le permitan cumplir con todos los requisitos dispuestos en la Sección 314 de PROMESA para la confirmación de un Plan de Ajuste, incluyendo, sin que se entienda como una limitación, autorizar las emisiones de bonos que habrán de intercambiarse como consecuencia de un Plan de Ajuste y enmendar cualesquiera leyes que sean incompatibles con los acuerdos alcanzados entre la JSAF y grupos de acreedores;

(l)     expresar de manera clara e inequívoca que no se tomará acción alguna que permita la confirmación de cualquier Plan de Ajuste que sea incompatible con lo dispuesto en esta Política Pública, incluyendo, sin que se entienda como una limitación, la eliminación de barreras reglamentarias, la creación de reglamentación, o cualesquiera autorizaciones necesarias para permitir que el Plan de Ajuste de la JSAF cumpla con los requisitos dispuestos en la Sección 314(b)(3) y la Sección 314(b)(5) de PROMESA;

(m)    reconocer que los(as) Pensionados(as) y Participantes de los Sistemas de Retiro ya han sido perjudicados(as) en sus acreencias contra el Gobierno de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro durante los años previos a la presentación de la petición de quiebra, por cantidades que superan:

(i)     el cuarenta y dos (42) por ciento del valor agregado de las pensiones, los beneficios y demás derechos de retiro para el(la) Pensionado(a) o beneficiario(a) promedio del Programa de Beneficio Definido bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde una fecha previa al 1 de abril de 1990;

(ii)    el treinta y uno (31) por ciento del valor agregado de las pensiones, los beneficios y demás derechos de retiro para el(la) Pensionado(a) o beneficiario(a) promedio del Programa de Beneficio Definido bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde una fecha posterior al 1 de abril de 1990 pero previa al 1 de enero de 2000; y,

(iii)   el quince (15) por ciento del valor agregado de los beneficios y demás derechos de retiro para el(la) beneficiario(a) promedio del Programa de Cuentas de Ahorro para el Retiro bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde el 1 de enero de 2000.

(n)     garantizar que ninguna parte de los fondos y recursos del Sistema, comprometidos para actividades relacionadas a la participación del Sistema en cualesquiera procesos judiciales o en los procesos bajo el Título III de PROMESA, sean dirigidos hacia la consecución de cualquier Plan de Ajuste incompatible con lo dispuesto en esta Ley;

(o)     promover la creación de un Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR) que sea custodio, recaude, administre y garantice adecuadamente los recursos destinados al pago de la totalidad de pensiones y beneficios a los que actualmente tienen derecho nuestros(as)

servidores(as) públicos(as), de modo que permita proteger, capitalizar y garantizar a perpetuidad los derechos y beneficios de retiro para los(as) Pensionados(as) y Participantes cubiertos por esta Ley;

(p)    garantizar el derecho a un retiro digno como parte fundamental de una vida digna y como corolario del derecho a la inviolabilidad de la dignidad del ser humano consagrada en la Primera Sección de la Carta de Derechos de la Constitución de Puerto Rico;

(q)    reconocer que un retiro digno consiste en disfrutar de una pensión vitalicia que proteja a cada persona contra la pobreza en su vejez, en devolver a los(as) Pensionados(as) y Participantes de los Sistemas de Retiro los derechos y beneficios que han perdido mediante legislación en tiempos de crisis fiscales o graves emergencias en las finanzas públicas, y en expandir los derechos y beneficios de Pensionados(as) y Participantes del FACSiR una vez alcanzado el Coeficiente de Financiación Adecuada;

(r)    velar por la integridad, sana administración y Mejores Prácticas de Contabilidad de todos los fondos públicos disponibles al Sistema para evitar pérdidas de fondos públicos que atenten contra la capacidad del Sistema y el FACSiR de cumplir con los objetivos trazados en esta Política Pública;

(s)    definir cualquier reconocimiento o repago de alguna parte de cualesquiera Bonos Impugnados, sin la debida adjudicación de un tribunal con competencia de que dichos bonos fueron emitidos de conformidad con las leyes y los reglamentos correspondientes, incluyendo la Constitución de Puerto Rico, como un atentado a la integridad, sana administración y las Mejores Prácticas de Contabilidad de los fondos públicos disponibles al Gobierno de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro;

(t)    proteger los Ingresos del FACSiR contra desviaciones, impagos u otros incumplimientos que menoscaban la eventual relación contractual entre el Gobierno de Puerto Rico y el FACSiR; y,

(u)    trabajar colaborativamente con la AAFAF, la Asamblea Legislativa y sus comisiones con jurisdicción sobre los Sistemas de Retiro y el Presupuesto del Gobierno de Puerto Rico, los demás Sistemas de Retiro, y la Junta de Retiro, creada a través de la Ley 106-2017, según enmendada, conocida como "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos", para la planificación, legislación necesaria, creación y transición ordenada hacia un Fideicomiso para la Administración Conjunta de los Sistemas de Retiro

(FACSiR) que sea custodio, recaude, administre y garantice adecuadamente los recursos destinados al pago de la totalidad de pensiones y beneficios conforme a los mismos derechos que tenían nuestros(as) servidores(as) públicos(as) al momento de radicarse la petición de quiebra al amparo del Título III de PROMESA el 3 de mayo de 2017, de modo que permita proteger, capitalizar y garantizar a perpetuidad los derechos y beneficios de retiro para los(as) Pensionados(as) y Participantes de los Sistemas de Retiro."

Artículo 2.11.-Se enmienda el Artículo 2 de la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, para que lea como sigue:

"Artículo 2.-Definiciones.

Los términos o frases según se usan en esta Ley tendrán los significados que a continuación se expresan, salvo cuando el contexto indique claramente otro significado:

(1)     AAFAF-la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, creada por la Ley 2-2017.

(2)     Acuerdo de Reestructuración-significa cualquier acuerdo entre: (1) el Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro; (2) la JSAF; (3) bonistas del Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro y; (4) aseguradoras de bonos, se hayan o no subrogado en el derecho de crédito de los bonistas, del Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro; con relación a, o en apoyo de, cualquier transacción que implique una Modificación Calificativa, según este concepto es definido en el Título VI de PROMESA, o un Ajuste, según este concepto es utilizado en el Título III de PROMESA, de los bonos del Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro.

(3)     Administrador(a)-Significará la persona o la entidad que la Junta de Retiro, creada mediante la "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas Para los Servidores Públicos", designe para ejercer las funciones de Administrador(a) del Sistema.

(4)     AEP-la Autoridad de Edificios Públicos de Puerto Rico, creada por la Ley Núm. 56 de 19 de junio de 1958, según enmendada.

(5)     Año económico-Significará el período que comienza el 1ro de julio en cualquier año y termina el 30 de junio del año siguiente.

(6)     Beneficiario-Significará toda persona o personas designadas por un(a) participante o pensionado(a) en la última orden escrita debidamente reconocida y radicada con el(la) Administrador(a). En caso de no haberse hecho tal designación, o en caso de que la persona así designada no sobreviva al(la) participante o al(la) pensionado(a), se considerarán como beneficiarios(as) a sus herederos(as) legales.

(7)     Bonos Impugnados-colectivamente, todas las emisiones de bonos realizadas por el Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro cuyas garantías jurídicas, cuantías garantizadas, fuentes de pago comprometidas o autorizaciones legales hayan sido retadas ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico o ante el Tribunal General de Justicia por parte del Gobierno de Puerto Rico, sus Empresas Públicas, Municipios, Sistemas de Retiro, la JSAF, los comités oficiales de acreedores y retirados(as), cualesquiera otras Partes Interesadas, según dicho término es definido en el Código de Quiebras de los Estados Unidos, o personas con legitimación activa para intervenir mediante la presentación de petición de quiebra, memorando de derecho, moción, demanda, o procedimiento adversarial al amparo de algún caso presentado y pendiente de resolución final bajo del Título III de PROMESA. Incluye, sin que se entienda como una limitación:

(a)     la Serie A de los *Senior Pension Funding Bonds* emitida por la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (ASR) el 31 de enero de 2008 por la cantidad agregada de mil quinientos ochenta y ocho millones ochocientos diez mil setecientos noventa y nueve y sesenta céntimos (1,588,810,799.60) dólares en principal, que incluye mil quinientos cuarenta y tres millones setecientos setenta mil (1,543,770,000) dólares en bonos a plazo y cuarenta y cinco millones cuarenta mil setecientos noventa y nueve dólares y sesenta céntimos (45,040,799.60) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramírez & Co., Inc., Scotia Capital, TCM Capital y Wachovia Capital Markets, LLC* originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(b)     la Serie B de los *Senior Pension Funding Bonds* emitida por la ASR el 2 de junio de 2008 por la cantidad agregada de mil cincuenta y ocho millones seiscientos treinta y cuatro mil seiscientos trece y cinco céntimos (1,058,634,613.05) dólares en principal, que incluye ochocientos dieciséis millones cien mil (816,100,000) dólares en bonos a plazo y doscientos cuarenta y dos millones quinientos treinta y cuatro mil seiscientos trece y cinco céntimos (242,534,613.05) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities* originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(c)     la Serie C de los *Senior Pension Funding Bonds* emitida por la ASR el 30 de junio de 2008 por la cantidad agregada de trescientos millones doscientos dos mil novecientos treinta (300,202,930) dólares en principal, que incluye doscientos noventa y ocho millones (298,000,000) de dólares en bonos a plazo y dos millones doscientos dos mil novecientos treinta (2,202,930) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Eurobank MSD, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramírez & Co., Inc., Scotia Capital y Wachovia Capital Markets, LLC* y originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(d)     la Serie K de los *Government Facilities Revenue Refunding Bonds* emitidos por la Autoridad de Edificios Públicos (AEP) el 1 de julio de 2009 por la cantidad de cincuenta millones (50,000,000) de dólares en principal de bonos a plazo identificados por el número CUSIP 745235L82 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co. y Ramírez & Co., Inc.;*

(e)     la Serie P de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 1 de julio de 2009 por la cantidad agregada de trescientos treinta millones novecientos treinta y cinco mil (330,935,000) dólares en principal, que incluye doscientos quince millones ciento sesenta mil (215,160,000) dólares en bonos a plazo identificados por los números CUSIP 745235K75, 745235K83, 745235K91, 745235L25 y 745235L33 al momento de la emisión, y ciento quince millones setecientos setenta y cinco mil (115,775,000) dólares en bonos en serie identificados por los números CUSIP

745235L41, 745235L58, 745235L66 y 745235L74 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

(f)    la Serie Q de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 28 de octubre de 2009 por la cantidad agregada de ciento cincuenta millones quinientos cuarenta mil (152,540,000) dólares en principal, que incluye ciento cuarenta y cuatro millones trescientos cuarenta mil (144,340,000) dólares en bonos a plazo identificados por los números CUSIP 745235M24, 745235M32 y 745235M40 al momento de la emisión, y ocho millones doscientos mil (8,200,000) dólares en bonos en serie identificados por el número de CUSIP 745235L90 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

(g)    la Serie R de los *Government Facilities Revenue Bonds* emitida por la AEP el 24 de agosto de 2011 por la cantidad agregada de setecientos cincuenta y seis millones cuatrocientos cuarenta y nueve mil (756,449,000) dólares en principal identificados por los números CUSIP 745235 M57, 745235 M73, 745235 M65 y 745235 M81 al momento de la emisión, y que fue suscrita por *Popular Securities, Bank of America Merrill Lynch, Santander Securities, UBS Financial Services Incorporated of Puerto Rico, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James y Scotia MSD,* y originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(h)    la Serie S de los *Government Facilities Revenue Bonds* emitida por la AEP el 24 de agosto de 2011 por la cantidad agregada de trescientos tres millones novecientos cuarenta y cinco mil (303,945,000) dólares en principal, que incluye doscientos ocho millones novecientos cuarenta y cinco mil (208,945,000) dólares en bonos a plazo identificados por los números CUSIP 745235P62 y 745235P70 al momento de la emisión, y noventa y cinco millones (95,000,000) de dólares en bonos en serie identificados por los números CUSIP 745235M99, 745235N23, 745235N31, 745235N49, 745235N56, 745235N64, 745235N72, 745235N80, 745235N98, 745235P21, 745235P39, 745235P47, 745235P54 y 745235P88 al momento de la

emisión, y que fue suscrita por *Ramírez & Co., Inc., RBC Capital Markets, Barclays Capital, BMA Capital Markets, Bank of America Merrill Lynch, Citigroup, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Morgan Stanley, Raymond James, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(i)    la Serie T de los *Government Facilities Revenue Bonds – Qualified Zone Academy Bonds* emitida por la AEP el 22 de diciembre de 2011 por la cantidad agregada de ciento veintiún millones quinientos veintiocho mil (121,528,000) dólares en principal identificados por el número CUSIP 745235Q20 al momento de la emisión, y que fue suscrita por *Santander Securities y UBS Financial Services Puerto Rico;*

(j)    la Serie U de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 21 de junio de 2012 por la cantidad agregada de quinientos ochenta y dos millones trescientos cuarenta y cinco mil (582,345,000) dólares en principal, que incluye quinientos treinta y ocho millones seiscientos setenta y cinco mil (538,675,000) dólares en bonos a plazo identificados por el número CUSIP 745235R37 al momento de la emisión, y cuarenta y tres millones seiscientos setenta mil (43,670,000) dólares en bonos en serie identificados por los números CUSIP 745235S51, 745235R45, 745235R52, 745235R60, 745235R78, 745235R86, 745235R94, 745235S28, 745235S36, 745235S44 y 745235S69 al momento de la emisión, y que fue suscrita por *Goldman Sachs & Co., BMO Capital Markets, RBC Capital Markets, Barclays, Bank of America Merrill Lynch, Citigroup, Jefferies, J.P. Morgan, Morgan Stanley, Ramírez & Co., Inc., Raymond James | Morgan Keegan, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD, UBS Financial Services Puerto Rico y VAB Financial;*

(k)    la Serie A de los *General Obligation Bonds* emitida por el Gobierno de Puerto Rico el 17 de marzo de 2014 por la cantidad de tres mil quinientos millones (3,500,000,000) de dólares en principal de bonos a plazo identificados por el número CUSIP 74514LE86 al momento de la emisión, y que fue suscrita por *Barclays, Morgan Stanley, RBC Capital Markets, Bank of America Merrill Lynch, Goldman Sachs & Co., J.P. Morgan, Ramírez & Co., Inc., FirstBank PR Securities, Jefferies, Mesirow Financial, Inc., Oriental Financial Services, Popular Securities, Santander Securities y UBS Financial Services Puerto Rico;*

(l)     la Serie A de los *Public Improvement Refunding Bonds – General Obligation Bonds* emitida por el Gobierno de Puerto Rico el 3 de abril de 2012 por la cantidad agregada de dos mil trescientos dieciocho millones ciento noventa mil (2,318,190,000) dólares en principal, que incluye mil seiscientos setenta y ocho millones setecientos cuarenta y cinco mil (1,678,745,000) dólares en bonos a plazo identificados por los números CUSIP 74514LD20, 74514LB63, 74514LB71 y 74514LB89 al momento de la emisión, y seiscientos treinta y nueve millones cuatrocientos cuarenta y cinco mil (639,445,000) dólares en bonos en serie identificados por los números CUSIP 74514LA31, 74514LC47, 74514LA49,   74514LC54,   74514LA56,   74514LC62,   74514LD46, 74514LC70,   74514LA64,   74514LD53,   74514LC88,   74514LA72, 74514LD61,   74514LA80,   74514LD79,   74514LD38,   74514LC96, 74514LA98,   74514LB22,   74514LD87,   74514LB30,   74514LB48, 74514LB97, 74514LB55, 74514LC21 y 74514LC39 al momento de la emisión, y que fue suscrita por *Barclays Capital, J.P. Morgan, Goldman Sachs & Co., Jefferies, BMO Capital Markets, Bank of America Merrill Lynch, Citigroup, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(m)    la Serie B de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 29 de marzo de 2012 por la cantidad agregada de cuatrocientos quince millones doscientos setenta mil (415,270,000) dólares en principal, que incluye cuarenta y nueve millones seiscientos diez mil (49,610,000) dólares en bonos a plazo identificados por el número CUSIP 74514LA23, y trescientos sesenta y cinco millones seiscientos sesenta mil (365,660,000) dólares en bonos en serie identificados por los números CUSIP 74514LZS9, 74514LZT7,   74514LZU4,   74514LZV2,   74514LZW0,   74514LZX8, 74514LZY6, 74514LZZ3, y que fue suscrita por *UBS Financial Services Puerto Rico, Bank of America Merrill Lynch, Popular Securities, Santander Securities, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank PR Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James y Scotia MSD;*

(n)     la Serie C de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de marzo de 2011 por la cantidad agregada de cuatrocientos cuarenta y dos millones quince mil (442,015,000) dólares en principal, que incluye ciento veintisiete millones quince mil (127,015,000) dólares en bonos a plazo

identificados por el número CUSIP 74514LXH5, y trescientos quince millones (315,000,000) de dólares en bonos en serie identificados por los números CUSIP 74514LWY9, 74514LXD4, 74514LXE2, 74514LXA0, 74514LXB8, 74514LXF9, 74514LWZ6, 74514LXC6, 74514LXG7 y 74514LWX1, y que fue suscrita por *Morgan Stanley, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities y VAB Financial;*

(o)    la Serie D de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 12 de julio de 2011 por la cantidad de cincuenta y dos millones ciento noventa mil (52,190,000) dólares en principal en bonos en serie identificados por los números CUSIP 74514LYX9, 74514LYY7, 74514LYZ4, 74514LZA8, 74514LB6, 74514LZC4, 74514LZH3, 74514LZF7, 74514LZD2, 74514LZJ9, 74514LZG5 y 74514LZE0, y que fue suscrita por *J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(p)    la Serie E de los *Public Improvement Bonds* emitida por el Gobierno de Puerto Rico el 12 de julio de 2011 por la cantidad de doscientos cuarenta y cinco millones novecientos quince mil (245,915,000) dólares en principal en bonos en serie identificados por los números CUSIP 74514LZK6, 74514LZL4, 74514LZM2, 74514LZN0, 74514LZP5 y 74514LZQ3, y que fue suscrita por *J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(q)    la Serie A de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de septiembre de 2009 por la cantidad de tres millones cuatrocientos veinticinco mil (3,425,000) dólares en principal de bonos a plazo identificados por el número CUSIP 74514LVV6, y que fue suscrita por *Morgan Stanley, JP Morgan,*

*Barclays Capital, Goldman Sachs & Co., Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities y UBS Financial Services of Puerto Rico;*

(r) la Serie 2007 A-4 de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de septiembre de 2009 por la cantidad de noventa y tres millones ochocientos treinta y cinco mil (93,835,000) dólares en principal de bonos en serie identificados por los números CUSIP 74514LVT1 y 74514LVU8, y que fue suscrita por *Morgan Stanley y JP Morgan;*

(s) la Serie B de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de noviembre de 2009 por la cantidad de trescientos setenta y dos millones seiscientos ochenta y cinco mil (372,685,000) dólares en principal de bonos a plazo identificados por los números CUSIP 74514LVX2, 74514LVY0, 74514LVZ7 y 74514LVW4, y que fue suscrita por *Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs, Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

(t) la Serie C de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 16 de diciembre de 2009 por la cantidad de doscientos diez millones doscientos cincuenta mil (210,250,000) dólares en principal de bonos a plazo identificados por el número CUSIP 74514LWA1, y que fue suscrita por *Morgan Stanley, Citi, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch & Co., Ramírez & Co., Inc., UBS Financial Services Incorporated of Puerto Rico, FirstBank Puerto Rico Securities, Popular Securities y Santander Securities; y,*

(u) la Serie A de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de febrero de 2011 por la cantidad de trescientos cincuenta y seis millones quinientos veinte mil (356,520,000) dólares en principal de bonos en serie identificados por los números CUSIP 74514LWN3, 74514LWJ2, 74514LWP8, 74514LWK9, 74514LWL7, 74514LWM5, 74514LWQ6, 74514LWT0, 74514LWR4 y 74514LWS2, y que fue suscrita por *Barclays Capital, Jefferies & Company, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities y Santander Securities;*

(8)     Bonos No Impugnados-colectivamente, todas las emisiones de bonos
        realizadas por el Gobierno de Puerto Rico, sus Empresas Públicas,
        Municipios o Sistemas de Retiro cuyas garantías jurídicas, cuantías
        garantizadas, fuentes de pago comprometidas o autorizaciones legales
        no hayan sido retadas ante el Tribunal de Distrito de los Estados Unidos
        para el Distrito de Puerto Rico o ante el Tribunal General de Justicia por
        parte del Gobierno de Puerto Rico, sus Empresas Públicas, Municipios
        o Sistemas de Retiro, la JSAF, los comités oficiales de acreedores y
        retirados(as), cualesquiera otras Partes Interesadas, según dicho
        término es definido en el Código de Quiebras de los Estados Unidos, o
        personas con legitimación activa para intervenir mediante la
        presentación de petición de quiebra, memorando de derecho, moción,
        demanda, o procedimiento adversarial al amparo de algún caso
        presentado y pendiente de resolución final bajo del Título III de
        PROMESA; y que aún estén pendientes de pago.

(9)     Código de Quiebras-se refiere al Título 11 del Código de los Estados
        Unidos, el cual dispone sobre los mecanismos de composición o ajustes
        de deudas para individuos, corporaciones y entidades
        gubernamentales.

(10)    Coeficiente de Financiación Adecuada-es la proporción, equivalente a
        1.2, de recursos propios totales del Fideicomiso para la Administración
        Conjunta de los Sistemas de Retiro relativo a sus obligaciones totales,
        según determinados anualmente mediante estudio actuarial
        independiente basado en el método y la valoración agregada del costo
        y la financiación actuarial utilizados por la Oficina del Contralor del
        Estado de Nueva York para la administración de los sistemas de retiro
        gubernamentales de ese estado, para alcanzar un nivel adecuado de
        financiación de las pensiones.

(11)    CUSIP-se refiere al Comité de Procedimientos Uniformes de
        Identificación de Valores *Committee on Uniform Securities Identification
        Procedures*, cuyo sistema de numeración permite la identificación única
        de todas las acciones y los bonos registrados en los mercados de capital
        de los Estados Unidos y Canadá, y se utiliza para crear una distinción
        concreta entre los valores que se negocian en los mercados públicos. El
        Comité de Procedimientos Uniformes de Identificación de Valores
        (CUSIP) supervisa todo el sistema de numeración CUSIP.

(12)    ERISA-significa la "Ley para la Seguridad de los Ingresos de Retiro de
        los Empleados" (en inglés, "Employee Retirement Income Security

Act") de 1974, incorporada al Título 29 del Código de los Estados Unidos.

(13)   Fecha de aplicación del Sistema-1ro. de julio 1954.

(14)   Fideicomiso para la Administración Conjunta de los Sistemas de Retiro-en adelante, FACSiR, es el nuevo Sistema de Retiro diseñado y promovido en esta Ley, y que administraría un nuevo fideicomiso en el que se consolidan los recursos y las obligaciones del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico, según establecido por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, en adelante SRE; el Sistema de Retiro para la Judicatura, creado mediante la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, en adelante SRJ; y el Sistema de Retiro para Maestros de Puerto Rico, según establecido por la Ley 160-2013, en adelante SRM, y se centralizan la gestión y los gastos de administración de los mismos, tras la confirmación de un Plan de Ajuste viable, justo y equitativo para el pueblo y para los(as) Pensionados(as) y Participantes de los Sistemas de Retiro.

(15)   Gobierno-Significará el Estado Libre Asociado de Puerto Rico.

(16)   Guías actuariales-Significará, durante los primeros cinco (5) años de funcionamiento del Sistema, las Tablas Combinadas de Anualidad y Mortalidad y en lo sucesivo, aquellas tablas o normas adoptadas por la Junta de Síndicos basadas en la experiencia del Sistema y de acuerdo con las recomendaciones del actuario.

(17)   Ingresos del Fideicomiso o Ingresos del FACSiR-incluirán, sin que se entienda como una lista exhaustiva o limitación:

   (a)   la transferencia del cien (100) por ciento del balance depositado en la Cuenta para el Pago de las Pensiones Acumuladas, creada por virtud de la Ley 106-2017, según enmendada;

   (b)   el cien (100) por ciento de las aportaciones individuales de los(as) Participantes;

   (c)   el cien (100) por ciento de las aportaciones patronales del Gobierno de Puerto Rico;

   (d)   el cien (100) por ciento de los ahorros anuales producidos por la descarga, anulación o reducción en el Servicio de Deuda Pendiente de Pago de los Bonos Impugnados;

(e)    la restitución del cien (100) por ciento de las aportaciones individuales retenidas a los(as) Participantes del Programa de Cuentas de Ahorro para el Retiro, creado por virtud del Capítulo 3 de la Ley Núm. 447 del 15 de mayo de 1951, y los daños correspondientes a la rentabilidad de inversión dejada de devengar tras el incumplimiento del Administrador del SRE con el Artículo 3-103 y el Artículo 3-105 del Programa de Cuentas de Ahorro para el Retiro y la Ley Núm. 447 del 15 de mayo de 1951, según enmendada;

(f)    el cien (100) por ciento de cualesquiera sentencias judiciales, y los derechos propios y del Gobierno de Puerto Rico a procurar y recibir restitución, por daños y perjuicios sufridos en el erario público a consecuencia de la impericia, negligencia, temeridad o malicia de los bancos suscriptores y sus representantes o consultores(as) profesionales(as) en la emisión, compra y venta de Bonos Impugnados;

(g)    el cien (100) por ciento de los réditos por las inversiones y los activos del FACSiR, incluyendo los activos de los Sistemas de Retiro que no hayan sido liquidados o transferidos a la Cuenta para el Pago de las Pensiones Acumuladas tras la aprobación de la Ley 106-2017, según enmendada, cuya titularidad también será transferida, sin liquidar el activo, al FACSiR;

(h)    el cien (100) por ciento de las economías netas producidas en la administración del FACSiR y sus activos;

(i)    el cien (100) por ciento de cualesquiera otros ingresos propios que pueda generar el FACSiR sin arriesgar el Coeficiente de Financiación Adecuada, en cumplimiento con los deberes fiduciarios dispuestos en la Sección 3.08 de esta Ley, y que sean cónsonos con los poderes conferidos al Fideicomiso en ley; y

(j)    la cantidad mayor entre: (i) el cincuenta (50) por ciento de los ahorros anuales producidos por la descarga o reducción en el servicio de deuda de Bonos No Impugnados; o (ii) la totalidad de los ahorros anuales que sean necesarios producir en el servicio de deuda de Bonos No Impugnados para alcanzar el Coeficiente de Financiación Adecuada en un plazo no mayor de quince (15) años, a través de un Plan de Ajuste de Deuda bajo el Título III de PROMESA.

(18)     Interés-Significará el dos y medio por ciento ($2\frac{1}{2}$%) anual, compuesto anualmente, o cualquier otro tipo, según sea subsiguientemente prescrito por la Junta, basado en la experiencia del Sistema.

(19)     JSAF-la Junta de Supervisión y Administración Financiera, creada al amparo de los Títulos I y II de PROMESA.

(20)     Juez(a)-Significará cualquier persona que desempeñe un puesto de Juez(a) del Tribunal Supremo, del Tribunal de Primera Instancia o del Tribunal de Distrito del Estado Libre Asociado de Puerto Rico.

(21)     Junta-Significará la Junta de Retiro, creada mediante la "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas Para los Servidores Públicos".

(22)     "Ley Sarbanes-Oxley"-significa la "Ley Sarbanes-Oxley" de 2002, Ley Pública 107-204, aprobada por el Gobierno de los Estados Unidos el 30 de julio de 2002.

(23)     Mejores Prácticas de Contabilidad-significa el establecimiento de un sistema de controles de contabilidad que sean cónsonos con los principios de contabilidad generalmente aceptados (GAAP, por sus siglas en inglés), ERISA y la "Ley Sarbanes-Oxley". Además significa, sin que se entienda como una lista exhaustiva o una limitación: (1) la creación de un equipo de auditores(as) internos(as); (2) la publicación trimestral y permanente de un desglose detallado de los ingresos, los gastos, las inversiones y su rendimiento, las personas naturales o jurídicas que administran los activos o asesoran en la inversión de los activos, y los honorarios y otras tarifas devengadas por las personas naturales o jurídicas que administran los activos o asesoran en la inversión de los activos; (3) la publicación anual y permanente de estados financieros auditados y estudios de valoración actuarial; (4) la publicación trimestral y permanente de un resumen estadístico de los(as) Participantes y Pensionados(as), desglosados por grupos de edad, escalas salariales o de beneficios, y programas de retiro correspondientes; (5) la realización y publicación regular y permanente de auditorías de cumplimiento (compliance audits) y rendimiento (performance audits), conforme los estándares de la Oficina de Rendición de Cuentas Gubernamental de los Estados Unidos (US GAO, por sus siglas en inglés), también conocido como *Yellow Book*; (6) la traducción al español y al inglés de todos los informes periódicos cuya producción es requerida mediante esta Ley; (7) la remisión de copias fieles y exactas, de manera regular y permanente, de cualesquiera

informes periódicos sean requeridos producir mediante ley, reglamento, boletín administrativo, carta circular, principios de contabilidad generalmente aceptados, o políticas internas para los sistemas de retiro en Puerto Rico o de conformidad a normas del Gobierno de los Estados Unidos de América, a la Asamblea Legislativa y a las comisiones legislativas que tengan jurisdicción sobre los Sistemas de Retiro y el Presupuesto del Gobierno de Puerto Rico; y, (8) la adopción y publicación de políticas de inversión.

(24)     Participante-Significará cualquier juez(a) que sea integrante de este Sistema, según se especifica en el Artículo 3 de esta Ley.

(25)     Pensión-Significará una serie de pagos mensuales durante la vida del pensionado(a), pagaderos a fin de cada mes natural. El primer pago de la pensión se hará por la fracción de mes que transcurra hasta la terminación del primer mes y el último pago se hará por la fracción de un mes que transcurra hasta que sobrevenga la muerte del pensionado(a).

(26)     Pensionado(a)-Significará cualquier persona que esté recibiendo del Sistema una pensión.

(27)     Plan de Ajuste.- plan propuesto por la JSAF para la reducción de las deudas del Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro a través del Título III de PROMESA, conforme la Sección 312 de PROMESA.

(28)     Programa Híbrido-Significará el programa de retiro al cual pertenecerá todo(a) participante que ingrese por primera vez al Sistema de Retiro de la Judicatura del Estado Libre Asociado de Puerto Rico a partir del 1 de julio de 2014. El Programa Híbrido es un plan combinado de beneficio definido y contribución definida. En cuanto al beneficio definido, al acogerse al retiro, los(as) participantes del programa híbrido tendrán derecho a recibir una anualidad computada según lo dispuesto en los Artículos 4-C y 4-D de esta Ley. En cuanto a la contribución definida, al acogerse al retiro, estos(as) participantes tendrán derecho a recibir una anualidad según lo dispuesto en los Artículos 10-A y 10-B de esta Ley.

(29)     PROMESA.-la "Ley Pública 114-187, también conocida como "Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico", aprobada por el Gobierno de los Estados Unidos de América.

(30)     Quiebra.-El proceso de reestructuración de deuda al que la JSAF acogió al Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro el 3 de mayo de 2017, ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, al amparo del Título III de PROMESA.

(31)     Servicio de Deuda Pendiente de Pago de los Bonos Impugnados.-es el costo de amortización, incluyendo el pago de intereses y la porción correspondiente del principal, o las transferencias anuales de fondos públicos que deben ser realizadas por el Gobierno de Puerto Rico, sus Empresas Públicas, Municipios o Sistemas de Retiro en cumplimiento con las emisiones de bonos que aún no se hubieren madurado, vencido, cancelado, intercambiado, refinanciado o reestructurado desde la fecha de vigencia de la Sección 405 de PROMESA, o en la fecha de efectividad de la Sección 362 del Código de Quiebras de los Estados Unidos según aplicable a Puerto Rico mediante la Sección 301(a) de PROMESA, y hasta las respectivas fechas de vencimiento de cada emisión de bonos.

(32)     Servicios-Significará los servicios prestados comenzando el primer día en que cualquier persona sea nombrada juez(a) o que por primera vez entre al servicio de cualquier agencia, departamento o división del Gobierno de Puerto Rico, no importa que esa fecha sea anterior o posterior a la fecha de efectividad de esta ley y terminado en la fecha de separación del servicio. Todos los períodos intermedios siguientes a la renuncia, separación o expiración de cualquier término de elección o nombramiento durante los cuales un participante no estuvo en el servicio del Gobierno, se excluirán y no se dará crédito por los mismos. No se dará crédito por servicio alguno prestado al Gobierno en cualquier capacidad que no sea la de juez(a), a menos que:

a.   Haya prestado ocho (8) años de servicio como juez(a); y

b.   el(la) participante devuelva al Sistema las aportaciones que le sean reembolsadas a partir de la vigencia de esta Ley por cualquier otro Sistema de Retiro bajo el cual haya prestado sus servicios, incluyendo los intereses que al tipo prescrito por el Sistema indicado hubieren acumulado dichas aportaciones a la fecha en que se efectuó la devolución, excepto que a los efectos de cualificar para una pensión por incapacidad no ocupacional exclusivamente se dará crédito en cualquier momento por los servicios prestados al Gobierno en otra capacidad que no sea la de juez(a), sujeto a lo expresado en esta cláusula. Disponiéndose, que se incrementará la contribución dispuesta en el Artículo 10 de esta Ley en un cuarto

del uno por ciento (0.25%) a los(as) participantes que hayan ingresado al Sistema por primera vez en o antes del 30 de junio de 2014 para cubrir el costo de dicho beneficio al entrar en vigencia esta Ley. Los servicios prestados durante cualquier fracción de mes se considerarán como un mes de servicio; sin embargo, no más de un mes de servicio será acreditado por todos los servicios prestados durante cualquier mes natural.

Para todo nuevo(a) participante que ingrese al Sistema de Retiro de la Judicatura del Estado Libre Asociado de Puerto Rico a partir del 1 de julio de 2014 y que pertenezca al Programa Híbrido, significará los servicios prestados a partir del primer día en que cualquier persona sea nombrada como juez(a) al Tribunal General de Justicia por primera vez. Para estos(as) nuevos(as) participantes del Sistema, no se dará crédito por servicio alguno prestado al Gobierno en cualquier capacidad que no sea la de juez(a).

(33)    Sistema-Significará el Sistema de Retiro de la Judicatura del Estado Libre Asociado de Puerto Rico.

(34)    Sistemas de Retiro.-el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico, según establecido por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, en adelante SRE; el Sistema de Retiro para la Judicatura, creado mediante la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, en adelante SRJ; y el Sistema de Retiro para Maestros de Puerto Rico, según establecido por la Ley 160-2013, en adelante SRM. Para propósitos de esta Ley, no incluye el Sistema de Retiro de la Universidad de Puerto Rico ni el Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica.

(35)    Sueldo-Significará la retribución anual recibida por un juez por sus servicios como tal."

Artículo 2.12.- Se enmienda el Artículo 1.4 de la Ley 106-2017, según enmendada, conocida como "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos", para que lea como sigue:

"Artículo 1.4 - Política Pública.

Se declara como política pública del Gobierno de Puerto Rico la protección de las pensiones de todos(as) los(as) retirados(as) del servicio público que fueron Participantes en los tres Sistemas de Retiro mencionados anteriormente. Por ello,

a partir del 1 de julio de 2017, conforme a la Resolución Conjunta de la Cámara Núm. 188 de 2017, según certificada por la Junta de Supervisión Fiscal el 13 de julio de 2017, el Gobierno de Puerto Rico se convirtió en el pagador directo de las pensiones de nuestros(as) retirados(as) mientras se dilucida en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico la controversia en torno a las garantías jurídicas y autorizaciones legales, o falta de ambas, de las tres emisiones de bonos realizadas por la Administración de los Sistemas de Retiro (ASR) en el 2008. Entre otras consideraciones, el servicio de deuda de estas tres emisiones de bonos representa un riesgo de insolvencia para los Sistemas de Retiro y una desviación ilícita de las aportaciones patronales que a ellas se estuvieran haciendo desde su emisión. Ante el peso que ello supone sobre el Fondo General, el cual se estima en miles de millones de dólares al año, se eliminaron de manera provisional las aportaciones patronales que se realizaban hasta ese momento a los tres Sistemas de Retiro, así como la Aportación Adicional Uniforme, conforme a lo dispuesto en las Resoluciones Conjuntas de la Cámara Núm. 186, 187 y 188 de 2017. Los Sistemas de Retiro deberán aportar sus fondos disponibles y el producto neto de la liquidación de sus activos al Fondo General para ayudar al pago de las Pensiones Acumuladas, exceptuando el edificio sede del Sistema de Retiro para Maestros, conocido como el Edificio Capital Center, Torre Norte, ubicado en Hato Rey, Puerto Rico, el cual no se tendrá que liquidar. Una vez los Sistemas de Retiro agoten sus activos, la Cuenta para el Pago de las Pensiones Acumuladas, la cual se nutrirá en gran medida del Fondo General, según dispuesto en esta Ley, asumirá y garantizará el pago de las Pensiones Acumuladas conforme se establece en esta Ley. No obstante, los Municipios, la Rama Legislativa, las Corporaciones Públicas, el Gobierno y la Administración de los Tribunales estarán obligados a pagar el Cargo Pay-Go según corresponde a cada uno para nutrir la Cuenta para el Pago de las Pensiones Acumuladas.

Igualmente, se declara como política pública proteger el futuro de nuestros(as) servidores(as) públicos(as). Mediante esta Ley nos aseguramos que estos puedan tener un retiro digno, libre de incertidumbre, garantizando las pensiones y estableciendo un nuevo fideicomiso o instrumento similar.

Conforme a lo anterior, será política pública del Gobierno de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro:

(a)    proteger el presente y futuro de nuestros(as) servidores(as) públicos(as) para impedir que caigan en la pobreza tras una vida de servicio por su país, y para reclutar y retener el mejor talento posible ahora y siempre en el servicio público de Puerto Rico;

(b)    expresar el más absoluto y enérgico rechazo a cualquier Plan de Ajuste o Acuerdo de Reestructuración que reduzca, perjudique, amenace, subordine

o empeore las pensiones, las anualidades, los beneficios y otras acreencias actuales de servidores(as) públicos(as) Pensionados(as) y los(as) Participantes de los Sistemas de Retiro, más de lo que ya fueron reducidas, perjudicadas, amenazadas o empeoradas previo a la radicación de la petición de quiebra el 3 de mayo de 2017;

(c)    definir como inviable y rechazar absolutamente cualquier Plan de Ajuste que produzca una reestructuración insostenible de los bonos del Gobierno de Puerto Rico, sus Corporaciones Públicas y los Sistemas de Retiro, y que no evite un segundo evento de insolvencia o quiebra para las finanzas públicas;

(d)    reconocer que una reestructuración insostenible de los bonos del Gobierno de Puerto Rico, sus Corporaciones Públicas y los Sistemas de Retiro, o cualquier evento sucesivo de insolvencia o quiebra para las finanzas públicas, representa una amenaza directa e intolerable para los servicios públicos esenciales de los que depende el pueblo de Puerto Rico, y para las pensiones y otras acreencias de los(as) servidores(as) públicos(as) que los proveen, ya sean Pensionados(as) o Participantes de los Sistemas de Retiro;

(e)    medir y promover la sostenibilidad de la deuda de Puerto Rico pagadera con fondos públicos de manera agregada y según determinada mediante análisis de la capacidad de sostener el servicio de esa deuda agregada conforme el poder adquisitivo en Puerto Rico, y neto del gasto necesario para satisfacer el pago de las pensiones y los servicios públicos esenciales;

(f)    reconocer que la JSAF necesita que el Gobierno de Puerto Rico tome acciones afirmativas que le permitan cumplir con todos los requisitos dispuestos en la Sección 314 de PROMESA para la confirmación de un Plan de Ajuste, incluyendo, sin que se entienda como una limitación, autorizar las emisiones de bonos que habrán de intercambiarse como consecuencia de un Plan de Ajuste y enmendar cualesquiera leyes que sean incompatibles con los acuerdos alcanzados entre la JSAF y grupos de acreedores;

(g)    condenar el Plan de Ajuste Conjunto para el Gobierno de Puerto Rico, la Administración de los Sistemas de Retiro de Empleados del Gobierno y la Judicatura de Puerto Rico, y la Autoridad de Edificios Públicos de Puerto Rico, presentado por la JSAF el 27 de septiembre de 2019, enmendado el 28 de febrero de 2020 y el 9 de marzo de 2021, ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, por ser irremediablemente incompatible con la Política Pública descrita en esta Ley;

(h) rechazar cualquier Plan de Ajuste que pretenda utilizar la Sección 1129(b) del Código de Quiebras de los Estados Unidos para imponer recortes adicionales a servidores(as) públicos(as) Pensionados(as) y Participantes de los Sistemas de Retiro;

(i) rechazar cualquier Plan de Ajuste o Acuerdo de Reestructuración cuya viabilidad o garantía de pago para el servicio de deuda requiera aumentar o establecer impuestos regresivos, tarifas u otros mecanismos que encarezcan los servicios de agua, luz, transportación, educación y demás servicios públicos esenciales para recaudar ingresos públicos del bolsillo de las familias trabajadoras y pensionadas en Puerto Rico;

(j) rechazar cualquier Plan de Ajuste o Acuerdo de Reestructuración cuya viabilidad o garantía de pago para el servicio de deuda requiera recortes a servicios públicos esenciales provistos por el Gobierno de Puerto Rico, sus Corporaciones Públicas y los Municipios, incluyendo, sin que se entienda como una limitación, educación, salud, protección ambiental, vivienda, sanidad y manejo de desperdicios sólidos, seguridad y manejo de emergencias, alcantarillado y procesamiento de agua, energía eléctrica, infraestructura vial y transportación colectiva;

(k) reconocer que todo intento de recortar el presupuesto disponible para los servicios públicos esenciales provistos desde el Gobierno de Puerto Rico, sus Corporaciones Públicas y los Municipios, o de reducir el gasto de nómina o la cantidad de servidores(as) públicos(as) con derecho a ser Participantes de los Sistemas de Retiro, también es un intento de recortar los recursos disponibles para cumplir con las pensiones, las anualidades, los beneficios y otras acreencias que pudieran tener los(as) Pensionados(as) y Participantes de los Sistemas de Retiro, y las pérdidas que ello representaría en aportaciones individuales o patronales deben ser compensadas para velar por la solvencia actuarial de los Sistemas de Retiro y el Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR);

(l) expresar de manera clara e inequívoca que no se tomará acción alguna que permita la confirmación de cualquier Plan de Ajuste que sea incompatible con lo dispuesto en esta Política Pública, incluyendo, sin que se entienda como una limitación, la eliminación de barreras estatutarias o reglamentarias, la creación de legislación o reglamentación, o cualesquiera autorizaciones necesarias para permitir que el Plan de Ajuste de la JSAF cumpla con los requisitos dispuestos en la Sección 314(b)(3) y la Sección 314(b)(5) de PROMESA;

(m)     reconocer que los(as) Pensionados(as) y Participantes de los Sistemas de Retiro ya han sido perjudicados(as) en sus acreencias contra el Gobierno de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro durante los años previos a la presentación de la petición de quiebra, por cantidades que superan:

     (i)     el cuarenta y dos (42) por ciento del valor agregado de las pensiones, los beneficios y demás derechos de retiro para el(la) Pensionado(a) o beneficiario(a) promedio del Programa de Beneficio Definido bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde una fecha previa al 1 de abril de 1990;

     (ii)    el treinta y uno (31) por ciento del valor agregado de las pensiones, los beneficios y demás derechos de retiro para el(la) Pensionado(a) o beneficiario(a) promedio del Programa de Beneficio Definido bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde una fecha posterior al 1 de abril de 1990 pero previa al 1 de enero de 2000; y

     (iii)   el quince (15) por ciento del valor agregado de los beneficios y demás derechos de retiro para el(la) beneficiario(a) promedio del Programa de Cuentas de Ahorro para el Retiro bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, que fueran Participantes desde el 1 de enero de 2000.

(n)     garantizar que ninguna parte de los fondos y recursos del gobierno estatal, comprometidos para actividades relacionadas a la participación del Gobierno de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro en los procesos bajo el Título III de PROMESA, sean dirigidos hacia la consecución de cualquier Plan de Ajuste incompatible con lo dispuesto en esta Ley;

(o)     promover la creación de un Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR) que sea custodio, recaude, administre y garantice adecuadamente los recursos destinados al pago de la totalidad de pensiones y beneficios a los que actualmente tienen derecho nuestros(as) servidores(as) públicos(as), de modo que permita proteger, capitalizar y garantizar a perpetuidad los derechos y beneficios de retiro para los(as) Pensionados(as) y Participantes de los Sistemas de Retiro;

(p)     garantizar el derecho a un retiro digno como parte fundamental de una vida digna y como corolario del derecho a la inviolabilidad de la dignidad del

ser humano consagrada en la Primera Sección de la Carta de Derechos de la Constitución de Puerto Rico;

(q) reconocer que un retiro digno consiste en disfrutar de una pensión vitalicia que proteja a cada persona contra la pobreza en su vejez, en devolver a los(as) Pensionados(as) y Participantes de los Sistemas de Retiro los derechos y beneficios que han perdido mediante legislación en tiempos de crisis fiscales o graves emergencias en las finanzas públicas, y en expandir los derechos y beneficios de Pensionados(as) y Participantes del FACSiR una vez alcanzado el Coeficiente de Financiación Adecuada;

(r) velar por la integridad, sana administración y Mejores Prácticas de Contabilidad de todos los fondos públicos disponibles al Gobierno de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro para evitar pérdidas de fondos públicos que atenten contra la capacidad del Gobierno de Puerto Rico, sus Corporaciones Públicas, los Municipios, los Sistemas de Retiro y el FACSiR de cumplir con los objetivos trazados en esta Política Pública;

(s) definir cualquier reconocimiento o repago de alguna parte de cualesquiera Bonos Impugnados, sin la debida adjudicación de un tribunal con competencia de que dichos bonos fueron emitidos de conformidad con las leyes y los reglamentos correspondientes, incluyendo la Constitución de Puerto Rico, como un atentado a la integridad, sana administración y las Mejores Prácticas de Contabilidad de los fondos públicos disponibles al Gobierno de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro; y

(t) proteger los Ingresos del FACSiR contra desviaciones, impagos u otros incumplimientos que menoscaban la eventual relación contractual entre el Gobierno de Puerto Rico y el FACSiR."

Artículo 2.13.-Se enmienda el Artículo 1.7 de la Ley 106-2017, para que lea como sigue:

"Artículo 1.7-Definiciones.

Las siguientes palabras y términos, cuando sean usados o se haga referencia a los mismos en esta Ley, tendrán el significado indicado a continuación a menos que del contexto surja claramente otro significado. Los tiempos usados en el presente incluyen también el futuro, si en algún lugar se usa una palabra en masculino solamente como norma genérica, se entenderá enmendado a una palabra o palabras que muestren la inclusión masculina y femenina, así como no

binaria en el lenguaje, salvo en aquellos casos que tal interpretación resultase absurda. El número singular incluye el plural y el plural el singular.

(a)      ...

(b)      Acuerdo de Reestructuración: significa cualquier acuerdo entre: (1) el Gobierno de Puerto Rico, según definido en esta Ley; (2) la JSAF; (3) bonistas del Gobierno de Puerto Rico; y (4) aseguradoras de bonos, se hayan o no subrogado en el derecho de crédito de los bonistas, del Gobierno de Puerto Rico; con relación a, o en apoyo de, cualquier transacción que implique una Modificación Calificativa, según este concepto es definido en el Título VI de PROMESA, o un Ajuste, según este concepto es utilizado en el Título III de PROMESA, de los bonos del Gobierno de Puerto Rico.

(c)      Administradores de los Sistemas de Retiro: el Administrador del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico según establecido por la Ley Núm. 447 del 15 de mayo de 1951, según enmendada, y el Director Ejecutivo del Sistema de Retiro para Maestros de Puerto Rico, según establecido por la Ley 160-2013.

(d)      AEP: la Autoridad de Edificios Públicos de Puerto Rico, creada por la Ley Núm. 56 de 19 de junio de 1958, según enmendada.

(e)      Aportaciones Adeudadas: cantidades que el Gobierno, los Municipios, las Corporaciones Públicas y otras entidades consideradas patronos bajo cualquiera de los Sistemas de Retiro cobijados por esta Ley le adeuden a los Sistemas de Retiro, a la Cuenta para el Pago de las Pensiones Acumuladas y/o al Nuevo Plan de Aportaciones Definidas.

(f)      Aportaciones Individuales: aquellas cantidades que se hayan descontado o se descontarán de la retribución base percibida por el(la) Participante, para ser acreditadas a su Cuenta de Aportaciones Definidas, según definidas en el Artículo 1.7(kk).

(g)      toda persona que recibe cualquier pensión, anualidad o beneficio, según dispuesto en esta Ley.

(h)      Bonos Impugnados: colectivamente, todas las emisiones de bonos realizadas por el Gobierno de Puerto Rico cuyas garantías jurídicas, cuantías garantizadas, fuentes de pago comprometidas o autorizaciones legales hayan sido retadas ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico o ante el Tribunal General de Justicia por parte del Gobierno de Puerto Rico, la JSAF, los comités oficiales de

acreedores(as) y retirados(as), cualesquiera otras Partes Interesadas, según dicho término es definido en el Código de Quiebras de los Estados Unidos, o personas con legitimación activa para intervenir mediante la presentación de petición de quiebra, memorando de derecho, moción, demanda, o procedimiento adversarial al amparo de algún caso presentado y pendiente de resolución final bajo del Título III de PROMESA. Incluye, sin que se entienda como una limitación:

(1)     la Serie A de los *Senior Pension Funding Bonds* emitida por la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (ASR) el 31 de enero de 2008 por la cantidad agregada de mil quinientos ochenta y ocho millones ochocientos diez mil setecientos noventa y nueve y sesenta céntimos (1,588,810,799.60) dólares en principal, que incluye mil quinientos cuarenta y tres millones setecientos setenta mil (1,543,770,000) dólares en bonos a plazo y cuarenta y cinco millones cuarenta mil setecientos noventa y nueve dólares y sesenta céntimos (45,040,799.60) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramírez & Co., Inc., Scotia Capital, TCM Capital y Wachovia Capital Markets, LLC* originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(2)     la Serie B de los *Senior Pension Funding Bonds emitida por la ASR* el 2 de junio de 2008 por la cantidad agregada de mil cincuenta y ocho millones seiscientos treinta y cuatro mil seiscientos trece y cinco céntimos (1,058,634,613.05) dólares en principal, que incluye ochocientos dieciséis millones cien mil (816,100,000) dólares en bonos a plazo y doscientos cuarenta y dos millones quinientos treinta y cuatro mil seiscientos trece y cinco céntimos (242,534,613.05) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities* originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(3)     la Serie C de los *Senior Pension Funding Bonds* emitida por la ASR el 30 de junio de 2008 por la cantidad agregada de trescientos millones doscientos dos mil novecientos treinta (300,202,930) dólares en principal, que incluye doscientos noventa y ocho millones (298,000,000) de dólares en bonos a plazo y dos millones doscientos

dos mil novecientos treinta (2,202,930) dólares en bonos de apreciación de capital, y que fue suscrita por *UBS Financial Services Incorporated of Puerto Rico, Popular Securities, Santander Securities, BBVAPR MSD, Citi, Eurobank MSD, Lehman Brothers, Merrill Lynch & Co., Oriental Financial Services Corporation, Samuel A. Ramírez & Co., Inc., Scotia Capital y Wachovia Capital Markets, LLC* y originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(4) la Serie K de los *Government Facilities Revenue Refunding Bonds* emitidos por la Autoridad de Edificios Públicos (AEP) el 1 de julio de 2009 por la cantidad de cincuenta millones (50,000,000) de dólares en principal de bonos a plazo identificados por el número CUSIP 745235L82 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co. y Ramírez & Co., Inc.;*

(5) la Serie P de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 1 de julio de 2009 por la cantidad agregada de trescientos treinta millones novecientos treinta y cinco mil (330,935,000) dólares en principal, que incluye doscientos quince millones ciento sesenta mil (215,160,000) dólares en bonos a plazo identificados por los números CUSIP 745235K75, 745235K83, 745235K91, 745235L25 y 745235L33 al momento de la emisión, y ciento quince millones setecientos setenta y cinco mil (115,775,000) dólares en bonos en serie identificados por los números CUSIP 745235L41, 745235L58, 745235L66 y 745235L74 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

(6) la Serie Q de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 28 de octubre de 2009 por la cantidad agregada de ciento cincuenta millones quinientos cuarenta mil (152,540,000) dólares en principal, que incluye ciento cuarenta y cuatro millones trescientos cuarenta mil (144,340,000) dólares en bonos a plazo identificados por los números CUSIP 745235M24, 745235M32 y 745235M40 al momento de la emisión, y ocho millones doscientos mil (8,200,000) dólares en bonos en serie identificados por el número de CUSIP 745235L90 al momento de la emisión, y que fue suscrita por *Merrill Lynch & Co., Ramírez & Co., Inc., Barclays Capital, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

(7)     la Serie R de los *Government Facilities Revenue Bonds* emitida por la AEP el 24 de agosto de 2011 por la cantidad agregada de setecientos cincuenta y seis millones cuatrocientos cuarenta y nueve mil (756,449,000) dólares en principal identificados por los números CUSIP 745235 M57, 745235 M73, 745235 M65 y 745235 M81 al momento de la emisión, y que fue suscrita por *Popular Securities, Bank of America Merrill Lynch, Santander Securities, UBS Financial Services Incorporated of Puerto Rico, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James y Scotia MSD,* y originalmente ofrecidos para reventa exclusivamente a residentes de Puerto Rico en el mercado de capital de Puerto Rico;

(8)     la Serie S de los *Government Facilities Revenue Bonds* emitida por la AEP el 24 de agosto de 2011 por la cantidad agregada de trescientos tres millones novecientos cuarenta y cinco mil (303,945,000) dólares en principal, que incluye doscientos ocho millones novecientos cuarenta y cinco mil (208,945,000) dólares en bonos a plazo identificados por los números CUSIP 745235P62 y 745235P70 al momento de la emisión, y noventa y cinco millones (95,000,000) de dólares en bonos en serie identificados por los números CUSIP 745235M99, 745235N23, 745235N31, 745235N49, 745235N56, 745235N64, 745235N72, 745235N80, 745235N98, 745235P21, 745235P39, 745235P47, 745235P54 y 745235P88 al momento de la emisión, y que fue suscrita por *Ramírez & Co., Inc., RBC Capital Markets, Barclays Capital, BMA Capital Markets, Bank of America Merrill Lynch, Citigroup, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Morgan Stanley, Raymond James, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(9)     la Serie T de los *Government Facilities Revenue Bonds – Qualified Zone Academy Bonds* emitida por la AEP el 22 de diciembre de 2011 por la cantidad agregada de ciento veintiún millones quinientos veintiocho mil (121,528,000) dólares en principal identificados por el número CUSIP 745235Q20 al momento de la emisión, y que fue suscrita por *Santander Securities y UBS Financial Services Puerto Rico;*

(10)    la Serie U de los *Government Facilities Revenue Refunding Bonds* emitida por la AEP el 21 de junio de 2012 por la cantidad agregada de quinientos ochenta y dos millones trescientos cuarenta y cinco mil

(582,345,000) dólares en principal, que incluye quinientos treinta y ocho millones seiscientos setenta y cinco mil (538,675,000) dólares en bonos a plazo identificados por el número CUSIP 745235R37 al momento de la emisión, y cuarenta y tres millones seiscientos setenta mil (43,670,000) dólares en bonos en serie identificados por los números CUSIP 745235S51, 745235R45, 745235R52, 745235R60, 745235R78, 745235R86, 745235R94, 745235S28, 745235S36, 745235S44 y 745235S69 al momento de la emisión, y que fue suscrita por *Goldman Sachs & Co., BMO Capital Markets, RBC Capital Markets, Barclays, Bank of America Merrill Lynch, Citigroup, Jefferies, J.P. Morgan, Morgan Stanley, Ramírez & Co., Inc., Raymond James | Morgan Keegan, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD, UBS Financial Services Puerto Rico* y *VAB Financial;*

(11) la Serie A de los *General Obligation Bonds* emitida por el Gobierno de Puerto Rico el 17 de marzo de 2014 por la cantidad de tres mil quinientos millones (3,500,000,000) de dólares en principal de bonos a plazo identificados por el número CUSIP 74514LE86 al momento de la emisión, y que fue suscrita por *Barclays, Morgan Stanley, RBC Capital Markets, Bank of America Merrill Lynch, Goldman Sachs & Co., J.P. Morgan, Ramírez & Co., Inc., FirstBank PR Securities, Jefferies, Mesirow Financial, Inc., Oriental Financial Services, Popular Securities, Santander Securities* y *UBS Financial Services Puerto Rico;*

(12) la Serie A de los *Public Improvement Refunding Bonds – General Obligation Bonds* emitida por el Gobierno de Puerto Rico el 3 de abril de 2012 por la cantidad agregada de dos mil trescientos dieciocho millones ciento noventa mil (2,318,190,000) dólares en principal, que incluye mil seiscientos setenta y ocho millones setecientos cuarenta y cinco mil (1,678,745,000) dólares en bonos a plazo identificados por los números CUSIP 74514LD20, 74514LB63, 74514LB71 y 74514LB89 al momento de la emisión, y seiscientos treinta y nueve millones cuatrocientos cuarenta y cinco mil (639,445,000) dólares en bonos en serie identificados por los números CUSIP 74514LA31, 74514LC47, 74514LA49, 74514LC54, 74514LA56, 74514LC62, 74514LD46, 74514LC70, 74514LA64, 74514LD53, 74514LC88, 74514LA72, 74514LD61, 74514LA80, 74514LD79, 74514LD38, 74514LC96, 74514LA98, 74514LB22, 74514LD87, 74514LB30, 74514LB48, 74514LB97, 74514LB55, 74514LC21 y 74514LC39 al momento de la emisión, y que fue suscrita por *Barclays Capital, J.P. Morgan, Goldman Sachs & Co., Jefferies, BMO Capital Markets, Bank of America Merrill Lynch, Citigroup, Morgan Stanley, Ramírez & Co., Inc., Raymond James,*

*RBC Capital Markets, UBS Financial Services Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank PR Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(13)   la Serie B de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 29 de marzo de 2012 por la cantidad agregada de cuatrocientos quince millones doscientos setenta mil (415,270,000) dólares en principal, que incluye cuarenta y nueve millones seiscientos diez mil (49,610,000) dólares en bonos a plazo identificados por el número CUSIP 74514LA23, y trescientos sesenta y cinco millones seiscientos sesenta mil (365,660,000) dólares en bonos en serie identificados por los números CUSIP 74514LZS9, 74514LZT7, 74514LZU4, 74514LZV2, 74514LZW0, 74514LZX8, 74514LZY6, 74514LZZ3, y que fue suscrita por *UBS Financial Services Puerto Rico, Bank of America Merrill Lynch, Popular Securities, Santander Securities, Barclays Capital, BBVAPR MSD, Citigroup, FirstBank PR Securities, Oriental Financial Services, Ramírez & Co., Inc., Raymond James y Scotia MSD;*

(14)   la Serie C de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de marzo de 2011 por la cantidad agregada de cuatrocientos cuarenta y dos millones quince mil (442,015,000) dólares en principal, que incluye ciento veintisiete millones quince mil (127,015,000) dólares en bonos a plazo identificados por el número CUSIP 74514LXH5, y trescientos quince millones (315,000,000) de dólares en bonos en serie identificados por los números CUSIP 74514LWY9, 74514LXD4, 74514LXE2, 74514LXA0, 74514LXB8, 74514LXF9, 74514LWZ6, 74514LXC6, 74514LXG7 y 74514LWX1, y que fue suscrita por *Morgan Stanley, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, J.P. Morgan, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities y VAB Financial;*

(15)   la Serie D de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 12 de julio de 2011 por la cantidad de cincuenta y dos millones ciento noventa mil (52,190,000) dólares en principal en bonos en serie identificados por los números CUSIP 74514LYX9, 74514LYY7, 74514LYZ4, 74514LZA8, 74514LB6, 74514LZC4, 74514LZH3, 74514LZF7, 74514LZD2, 74514LZJ9,

74514LZG5 y 74514LZE0, y que fue suscrita por *J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(16)   la Serie E de los *Public Improvement Bonds* emitida por el Gobierno de Puerto Rico el 12 de julio de 2011 por la cantidad de doscientos cuarenta y cinco millones novecientos quince mil (245,915,000) dólares en principal en bonos en serie identificados por los números CUSIP 74514LZK6, 74514LZL4, 74514LZM2, 74514LZN0, 74514LZP5 y 74514LZQ3, y que fue suscrita por *J.P. Morgan, Barclays Capital, BMO Capital Markets, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., Jefferies & Company, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities, Santander Securities, Scotia MSD y VAB Financial;*

(17)   la Serie A de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de septiembre de 2009 por la cantidad de tres millones cuatrocientos veinticinco mil (3,425,000) dólares en principal de bonos a plazo identificados por el número CUSIP 74514LVV6, y que fue suscrita por *Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch, Ramírez & Co., Inc., Popular Securities, Santander Securities y UBS Financial Services of Puerto Rico;*

(18)   la Serie 2007 A-4 de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de septiembre de 2009 por la cantidad de noventa y tres millones ochocientos treinta y cinco mil (93,835,000) dólares en principal de bonos en serie identificados por los números CUSIP 74514LVT1 y 74514LVU8, y que fue suscrita por *Morgan Stanley y JP Morgan;*

(19)   la Serie B de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de noviembre de 2009 por la cantidad de trescientos setenta y dos millones seiscientos ochenta y cinco mil (372,685,000) dólares en principal de bonos a plazo identificados por los números CUSIP 74514LVX2, 74514LVY0, 74514LVZ7 y 74514LVW4, y que fue suscrita por *Morgan Stanley, JP Morgan, Barclays Capital, Goldman Sachs, Merrill Lynch, Ramírez & Co., Inc.,*

*Popular Securities, Santander Securities y UBS Financial Services Incorporated of Puerto Rico;*

(20)   la Serie C de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 16 de diciembre de 2009 por la cantidad de doscientos diez millones doscientos cincuenta mil (210,250,000) dólares en principal de bonos a plazo identificados por el número CUSIP 74514LWA1, y que fue suscrita por *Morgan Stanley, Citi, JP Morgan, Barclays Capital, Goldman Sachs & Co., Merrill Lynch & Co., Ramírez & Co., Inc., UBS Financial Services Incorporated of Puerto Rico, FirstBank Puerto Rico Securities, Popular Securities y Santander Securities;* y

(21)   la Serie A de los *Public Improvement Refunding Bonds* emitida por el Gobierno de Puerto Rico el 17 de febrero de 2011 por la cantidad de trescientos cincuenta y seis millones quinientos veinte mil (356,520,000) dólares en principal de bonos en serie identificados por los números CUSIP 74514LWN3, 74514LWJ2, 74514LWP8, 74514LWK9, 74514LWL7, 74514LWM5, 74514LWQ6, 74514LWT0, 74514LWR4 y 74514LWS2, y que fue suscrita por *Barclays Capital, Jefferies & Company, Bank of America Merrill Lynch, Citi, Goldman Sachs & Co., J.P. Morgan, Morgan Stanley, Ramírez & Co., Inc., Raymond James, RBC Capital Markets, UBS Financial Services Incorporated of Puerto Rico, Wells Fargo Securities, BBVAPR MSD, FirstBank Puerto Rico Securities, Oriental Financial Services, Popular Securities y Santander Securities;*

(i)   Bonos No Impugnados: colectivamente, todas las emisiones de bonos realizadas por el Gobierno de Puerto Rico cuyas garantías jurídicas, cuantías garantizadas, fuentes de pago comprometidas o autorizaciones legales no hayan sido retadas ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico o ante el Tribunal General de Justicia por parte del Gobierno de Puerto Rico, la JSAF, los comités oficiales de acreedores y retirados, cualesquiera otras Partes Interesadas, según dicho término es definido en el Código de Quiebras de los Estados Unidos, o personas con legitimación activa para intervenir mediante la presentación de petición de quiebra, memorando de derecho, moción, demanda, o procedimiento adversarial al amparo de algún caso presentado y pendiente de resolución final bajo del Título III de PROMESA; y que aún estén pendientes de pago.

(j)   Cargo Administrativo: cargo que podrá establecer y cobrar la Junta de Retiro, o su designado(a), y que deberán pagar el Gobierno, la Rama

Judicial, la Rama Legislativa, las Corporaciones Públicas y aquellas otras entidades consideradas patrono bajo los Sistemas de Retiro de los Empleados del Gobierno de Puerto Rico y el Sistema de Retiro para Maestros de conformidad con esta Ley para financiar las operaciones del Nuevo Plan de Aportaciones Definidas y/o la Cuenta para el Pago de las Pensiones Acumuladas; excepto los Municipios.

(k)     Cargo *Pay-Go*: cargo que establecerá e impondrá la AAFAF y que deberán pagar el Gobierno, los Municipios, la Rama Judicial, la Rama Legislativa, las Corporaciones Públicas y aquellas otras entidades consideradas patrono bajo los Sistemas de Retiro de los Empleados del Gobierno de Puerto Rico y el Sistema de Retiro para Maestros de conformidad al Capítulo 2 de esta Ley. Este cargo será cobrado por el(la) Secretario(a) de Hacienda o su designado(a), de acuerdo a lo establecido en esta Ley.

(l)     Código: la Ley 1-2011, según enmendada, conocida como "Código de Rentas Internas para un Nuevo Puerto Rico".

(m)     Código de Quiebras: se refiere al Título 11 del Código de los Estados Unidos, el cual dispone sobre los mecanismos de composición o ajustes de deudas para individuos, corporaciones y entidades gubernamentales.

(n)     Coeficiente de Financiación Adecuada: es la proporción, equivalente a 1.2, de recursos propios totales del Fideicomiso para la Administración Conjunta de los Sistemas de Retiro relativo a sus obligaciones totales, según determinados anualmente mediante estudio actuarial independiente basado en el método y la valoración agregada del costo y la financiación actuarial utilizados por la Oficina del Contralor del Estado de Nueva York para la administración de los sistemas de retiro gubernamentales de ese estado, para alcanzar un nivel adecuado de financiación de las pensiones.

(o)     Cuenta de Aportaciones Definidas: cuenta en fideicomiso, separado de los activos generales y cuentas del Gobierno, que se creará a partir del 1 de julio de 2017 a nombre de cada Participante, conforme a lo establecido en el Capítulo 3 de esta Ley.

(p)     Cuenta para el Pago de las Pensiones Acumuladas: cuenta en fideicomiso, separado de los activos generales y cuentas del Gobierno, designada para pagar las Pensiones Acumuladas por el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico, el Sistema de Retiro para Maestros y el Sistema de Retiro para la Judicatura bajo el esquema de *"pay as you go"*, según establecido en el Capítulo 2 de esta Ley. Esta cuenta, en fideicomiso, estará centralizada y segregada de los activos generales y cuentas del Gobierno, a

cargo del Departamento de Hacienda y se dedicará única y exclusivamente a los fines dispuestos en esta Ley, y sujeto los términos y condiciones establecidos en esta.

(q)   CUSIP: se refiere al Comité de Procedimientos Uniformes de Identificación de Valores (Committee on Uniform Securities Identification Procedures), cuyo sistema de numeración permite la identificación única de todas las acciones y los bonos registrados en los mercados de capital de los Estados Unidos y Canadá, y se utiliza para crear una distinción concreta entre los valores que se negocian en los mercados públicos. El Comité de Procedimientos Uniformes de Identificación de Valores (CUSIP) supervisa todo el sistema de numeración CUSIP.

(r)   Empresa o Corporación Pública: toda instrumentalidad gubernamental del Gobierno de Puerto Rico que haya sido creada o que en el futuro se creare. No incluirá, sin embargo, aquellas empresas subsidiarias de instrumentalidades gubernamentales cuyos empleados(as), a juicio de la Junta de Retiro, no tuvieran una clara relación de empleado(a) y patrono con el Gobierno de Puerto Rico. Cualquier funcionario(a) o empleado(a) que fuere Participante en los Sistemas de Retiro y pasare o hubiere pasado a ser funcionario(a) o empleado(a) de una empresa subsidiaria de cualquier empresa o corporación pública sin que haya interrupción en el servicio, continuará gozando de los mismos derechos y privilegios como Participante, aunque dicha empresa subsidiaria no esté cubierta por los tres Sistemas de Retiro.

(s)   Entidad Administradora: persona o entidad jurídica seleccionada por la Junta de Retiro para administrar la Cuenta para el Pago de las Pensiones Acumuladas y/o el Nuevo Plan de Aportaciones Definidas. La Entidad Administradora deberá ser una empresa reconocida, con al menos diez (10) años de experiencia en la administración de planes de retiro, que goce de buena reputación en la industria financiera y que garantice al Gobierno contractualmente que logrará generar un ahorro de al menos veinticinco por ciento (25 %) de los gastos operacionales actuales incurridos en operar los Sistemas de Retiro. Ello, no descarta que el Gobierno o alguna de sus instrumentalidades asuma y ejerza las funciones de la Entidad Administradora, de entenderse necesario y apropiado, siempre tomando en consideración los mejores intereses de los(as) Participantes, Retirados(as) y Beneficiarios(as) y la protección y garantía del balance de sus Aportaciones Individuales.

(t)   ERISA: significa la "Ley para la Seguridad de los Ingresos de Retiro de los Empleados" (en inglés, "Employee Retirement Income Security Act") de 1974, incorporada al Título 29 del Código de los Estados Unidos.

(u)   Fideicomiso para la Administración Conjunta de los Sistemas de Retiro: en adelante, FACSiR, es el nuevo Sistema de Retiro diseñado y promovido en esta Ley, y que administraría un nuevo fideicomiso en el que se consolidan los recursos y las obligaciones del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico, según establecido por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, en adelante SRE; el Sistema de Retiro para la Judicatura, creado mediante la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, en adelante SRJ; y el Sistema de Retiro para Maestros de Puerto Rico, según establecido por la Ley 160-2013, en adelante SRM, y se centralizan la gestión y los gastos de administración de los mismos, tras la confirmación de un Plan de Ajuste viable, justo y equitativo para el Pueblo y para los y las Pensionados(as) y Participantes de los Sistemas de Retiro.

(v)   Gobierno de Puerto Rico o Gobierno: el Gobierno de Puerto Rico y todos sus departamentos, divisiones, negociados, oficinas, agencias y dependencias, para fines de esta definición, incluye el Departamento de Educación de Puerto Rico. Para fines de esta Ley, este término incluye otras entidades gubernamentales o no gubernamentales, cuyos empleados(as) cotizan actualmente en los Sistemas de Retiro.

(w)   Ingresos del Fideicomiso o Ingresos del FACSiR: incluirán, sin que se entienda como una lista exhaustiva o limitación:

   (1)   la transferencia del cien (100) por ciento del balance depositado en la Cuenta para el Pago de las Pensiones Acumuladas, creada por virtud de la Ley 106-2017, según enmendada;

   (2)   el cien (100) por ciento de las aportaciones individuales de los y las Participantes;

   (3)   el cien (100) por ciento de las aportaciones patronales del Gobierno de Puerto Rico;

   (4)   el cien (100) por ciento de los ahorros anuales producidos por la descarga, anulación o reducción en el Servicio de Deuda Pendiente de Pago de los Bonos Impugnados;

129

(5)     la restitución del cien (100) por ciento de las aportaciones individuales retenidas a los y las Participantes del Programa de Cuentas de Ahorro para el Retiro, creado por virtud del Capítulo 3 de la Ley Núm. 447 de 15 de mayo de 1951, y los daños correspondientes a la rentabilidad de inversión dejada de devengar tras el incumplimiento del Administrador del SRE con el Artículo 3-103 y el Artículo 3-105 del Programa de Cuentas de Ahorro para el Retiro y la Ley Núm. 447 de 15 de mayo de 1951, según enmendada;

(6)     el cien (100) por ciento de cualesquiera sentencias judiciales, y los derechos propios y del Gobierno de Puerto Rico a procurar y recibir restitución, por daños y perjuicios sufridos en el erario público a consecuencia de la impericia, negligencia, temeridad o malicia de los bancos suscriptores y sus representantes o consultores(as) profesionales en la emisión, compra y venta de Bonos Impugnados;

(7)     el cien (100) por ciento de los réditos por las inversiones y los activos del FACSiR, incluyendo los activos de los Sistemas de Retiro que no hayan sido liquidados o transferidos a la Cuenta para el Pago de las Pensiones Acumuladas tras la aprobación de la Ley 106-2017, según enmendada, cuya titularidad también será transferida, sin liquidar el activo, al FACSiR;

(8)     el cien (100) por ciento de las economías netas producidas en la administración del FACSiR y sus activos;

(9)     el cien (100) por ciento de cualesquiera otros ingresos propios que pueda generar el FACSiR sin arriesgar el Coeficiente de Financiación Adecuada, en cumplimiento con los deberes fiduciarios dispuesto en la Sección 3.08 de esta Ley, y que sean cónsonos con los poderes conferidos al Fideicomiso en ley; y,

(10)    la cantidad mayor entre: (i) el cincuenta (50) por ciento de los ahorros anuales producidos por la descarga o reducción en el servicio de deuda de Bonos No Impugnados, o (ii) la totalidad de los ahorros anuales que sean necesarios producir en el servicio de deuda de Bonos No Impugnados para alcanzar el Coeficiente de Financiación Adecuada en un plazo no mayor de quince (15) años, a través de un Plan de Ajuste de Deuda bajo el Título III de PROMESA.

(x)     JSAF: la Junta de Supervisión y Administración Financiera, creada al amparo de los Títulos I y II de PROMESA.

(y)     Junta de Retiro: junta creada al amparo de las disposiciones del Capítulo 4 de esta Ley.

(z)     "Ley Sarbanes-Oxley": significa la "Ley Sarbanes-Oxley" de 2002, Ley Pública 107-204, aprobada por el Gobierno de los Estados Unidos el 30 de julio de 2002.

(aa)    Maestro(a): profesional que enseña en los salones de clase, los(as) Directores(as) de escuela y demás denominaciones y categoría de maestros(as) que existan o puedan existir dentro de la nomenclatura del Departamento de Educación del Gobierno de Puerto Rico, el(la) Secretario(a) de Educación y funcionarios(as) alternos(as), y aquellos(as) otros(as) empleados(as) o funcionarios(as) que se acojan a los beneficios de la Ley 160-2013, de acuerdo con las disposiciones de la misma, siempre que posean un certificado válido para trabajar como maestros(as).

(bb)    Mejores Prácticas de Contabilidad: significa el establecimiento de un sistema de controles de contabilidad que sean cónsonos con los principios de contabilidad generalmente aceptados (GAAP, por sus siglas en inglés), ERISA y la "Ley Sarbanes-Oxley". Además significa, sin que se entienda como una lista exhaustiva o una limitación: (1) la creación de un equipo de auditores(as) internos(as); (2) la publicación trimestral y permanente de un desglose detallado de los ingresos, los gastos, las inversiones y su rendimiento, las personas naturales o jurídicas que administran los activos o asesoran en la inversión de los activos, y los honorarios y otras tarifas devengadas por las personas naturales o jurídicas que administran los activos o asesoran en la inversión de los activos; (3) la publicación anual y permanente de estados financieros auditados y estudios de valoración actuarial; (4) la publicación trimestral y permanente de un resumen estadístico de los(as) Participantes y Pensionados(as), desglosados por grupos de edad, escalas salariales o de beneficios, y programas de retiro correspondientes; (5) la realización y publicación regular y permanente de auditorías de cumplimiento (compliance audits) y rendimiento (performance audits), conforme los estándares de la Oficina de Rendición de Cuentas Gubernamental de los Estados Unidos (US GAO, por sus siglas en inglés), también conocido como Yellow Book; (6) la traducción al español y al inglés de todos los informes periódicos cuya producción es requerida mediante esta Ley; (7) la remisión de copias fieles y exactas, de manera regular y permanente, de cualesquiera informes periódicos sean requeridos producir mediante ley, reglamento, boletín administrativo, carta circular, principios de contabilidad generalmente aceptados, o políticas internas para los sistemas de retiro en Puerto Rico o de conformidad a normas del Gobierno de los Estados Unidos de América, a la Asamblea Legislativa y a

las comisiones legislativas que tengan jurisdicción sobre los Sistemas de Retiro y el Presupuesto del Gobierno de Puerto Rico; y, (8) la adopción y publicación de políticas de inversión.

(cc)   Nuevo Plan de Aportaciones Definidas: nuevo plan de aportaciones definidas del que participarán los(as) Participantes, según establecido en el Capítulo 3 de esta Ley.

(dd)   Participantes: empleados(as) activos(as) del Gobierno de Puerto Rico, los(as) Maestros(as) e integrantes del Sistema de Retiro para Maestros de Puerto Rico, los(as) empleados(as) de los Municipios, los(as) jueces integrantes del Sistema de Retiro de la Judicatura de Puerto Rico, y los(as) empleados(as) de las Corporaciones Públicas, excepto los(as) empleados(as) de la Universidad de Puerto Rico y la Autoridad de Energía Eléctrica. Además, incluye a aquellos(as) empleados(as) acogidos(as) a las disposiciones de la Ley 211-2015, según enmendada, conocida como "Ley del Programa de Preretiro Voluntario", y los(as) que pasen o hayan pasado a laborar dentro de una Alianza Público Privada y todo aquel integrante del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico que haya realizado aportaciones a dicho Sistema y estas no se le hayan reembolsado. Este término incluye a los(as) exempleados(as) del Gobierno de Puerto Rico que se separaron del servicio público y que no se le reembolsaron sus aportaciones y/o cualquier beneficio acumulado hasta la fecha de separación.

(ee)   Pensión Acumulada: anualidad, beneficio o beneficio definido, al cual el(la) Participante tendría derecho al momento de retirarse del servicio a tenor con las aportaciones y reglas aplicables a sus respectivos Sistemas de Retiro, computadas hasta el momento en que entre en vigor la presente Ley.

(ff)   Pensionado(a): toda persona que reciba una pensión o anualidad de acuerdo con las disposiciones de esta Ley o de las que crean los diferentes Sistemas de Retiro.

(gg)   Plan de Ajuste: plan propuesto por la JSAF para la reducción de las deudas del Gobierno de Puerto Rico a través del Título III de PROMESA, conforme la Sección 312 de PROMESA.

(hh)   Preretirado(a): toda persona acogida al programa de Preretiro Voluntario creado mediante la Ley 211-2015, según enmendada, conocida como "Ley del Programa de Preretiro Voluntario".

(ii)   PROMESA: la Ley Pública 114-187, también conocida como "Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico", aprobada por el Gobierno de los Estados Unidos de América.

(jj)   Quiebra: El proceso de reestructuración de deuda al que la JSAF acogió al Gobierno de Puerto Rico el 3 de mayo de 2017, ante el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico, al amparo del Título III de PROMESA.

(kk)   Retribución: recompensa bruta y en efectivo que devenga un(a) empleado(a). Al computar la retribución se excluirá toda bonificación concedida en adición al salario, así como todo pago por concepto de horas extraordinarias de trabajo.

(ll)   Servicio de Deuda Pendiente de Pago de los Bonos Impugnados: es el costo de amortización, incluyendo el pago de intereses y la porción correspondiente del principal, o las transferencias anuales de fondos públicos que deben ser realizadas por el Gobierno de Puerto Rico en cumplimiento con las emisiones de bonos que aún no se hubieran madurado, vencido, cancelado, intercambiado, refinanciado o reestructurado desde la fecha de vigencia de la Sección 405 de PROMESA, o en la fecha de efectividad de la Sección 362 del Código de Quiebras de los Estados Unidos según aplicable a Puerto Rico mediante la Sección 301(a) de PROMESA, y hasta las respectivas fechas de vencimiento de cada emisión de bonos.

(mm)  Sistemas de Retiro: el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico según establecido por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, y el Sistema de Retiro para Maestros de Puerto Rico, según establecido por la Ley 160-2013.

(nn)   Sistema de Retiro para la Judicatura: El Sistema de Retiro para la Judicatura, creado mediante la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, conocida como "Ley de Retiro de la Judicatura"."

Artículo 2.14.-Cumplimiento con la Política Pública

(a)   El Gobierno del Estado Libre Asociado de Puerto Rico solamente actuará para habilitar un Plan de Ajuste que se conforme a lo dispuesto en esta Ley. Dichas actuaciones incluyen, sin que se entienda como una limitación:

(1)   aprobar, enmendar o derogar cualesquiera leyes, reglamentos, resoluciones, órdenes ejecutivas, órdenes administrativas,

memorandos de derecho, cartas circulares u otras que sean necesarias aprobar, enmendar o derogar para facilitar la confirmación de un Plan de Ajuste;

(2)     prestar cualesquiera autorizaciones sean necesarias para la confirmación de un Plan de Ajuste, incluyendo, sin que se entienda como una limitación, la autorización de alguna ley o resolución para una emisión de bonos que pueda utilizarse para sustituir o reestructurar las obligaciones del Gobierno del Estado Libre Asociado de Puerto Rico de conformidad con lo dispuesto en un Plan de Ajuste; y,

(3)     proveer asesoramiento o algún informe financiero, técnico, administrativo o jurídico a la JSAF que facilite la confección, negociación o confirmación de un Plan de Ajuste, excepto cuando medie una orden judicial de un tribunal con competencia requiriendo el cumplimiento con disposiciones de PROMESA para la producción de documentos o información, en cuyo caso la información así producida y provista a la JSAF se hará pública en su totalidad por la AAFAF y la entidad del Gobierno del Estado Libre Asociado de Puerto Rico que haya recibido una requisición formal y detallada de la JSAF o el referido tribunal a esos efectos. La requisición formal también será publicada por AAFAF y la entidad del Gobierno concernida.

(b)     La AAFAF dirigirá todos sus recursos, personal y contratistas especializados(as) actualmente comprometidos para asuntos relacionados al Título II, Título III o Título VI de PROMESA, a redactar una propuesta de Plan de Ajuste, y su correspondiente documento de divulgación, que se conformen a lo dispuesto en esta Ley. Dicha propuesta será presentada ante la Asamblea Legislativa y sus comisiones con jurisdicción sobre los Sistemas de Retiro y el Presupuesto del Gobierno del Estado Libre Asociado de Puerto Rico, en un período que no excederá ciento veinte (120) días a partir de la vigencia de esta Ley, y hará disponible a las comisiones legislativas toda información, comunicación y documentación necesaria para la validación independiente de los datos y análisis incluidos en la propuesta, incluyendo información o documentación en custodia del personal o los contratistas de la AAFAF, quienes podrán ser entrevistados(as) por el personal de las comisiones legislativas. La AAFAF renunciará a cualquier privilegio que pueda obstruir el acceso o la disponibilidad de información, comunicación, documentación, personal o contratistas para propósitos de esta Ley.

(c)     La Junta de Retiro dirigirá todos sus recursos, personal y contratistas especializados actualmente comprometidos para asuntos relacionados al Título II, Título III o Título VI de PROMESA, a redactar un plan de transición de los Sistemas de Retiro, sus programas y planes de retiro, Participantes y Pensionados(as), y sus activos financieros, incluyendo sin limitación, cuentas, fondos, fideicomisos, inversiones, y bienes muebles e inmuebles, para la eventual administración conjunta de los Sistemas de Retiro a través del FACSiR, en sustitución de la actual estructura de *Pay-As-You-Go*, creada por virtud de la Ley 106-2017, según enmendada, conocida como "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos". La Junta de Retiro deberá presentar un informe a la Asamblea Legislativa, y a sus comisiones con jurisdicción sobre los Sistemas de Retiro, en un período que no excederá ciento veinte (120) días a partir de la vigencia de esta Ley, detallando su plan de transición propuesto y sus recomendaciones sobre aquellos cambios legislativos requeridos para la implementación del plan de transición hacia un FACSiR. También dirigirá sus recursos para colaborar con la AAFAF y las comisiones de la Asamblea Legislativa con jurisdicción sobre los Sistemas de Retiro, en la redacción de una propuesta de Plan de Ajuste, y su correspondiente documento de divulgación, que se conformen a lo dispuesto en esta Ley. La Junta de Retiro, o los(as) oficiales, agentes o empleados(as) en quien ella delegue, hará disponible a las comisiones legislativas toda información, comunicación y documentación necesaria para la validación independiente de los datos y análisis utilizados en la confección de estudios de valoración actuarial, estados financieros auditados, informes de rendimiento de inversiones, entre otra información detallada sobre sus gastos de administración, controles internos de contabilidad y políticas de inversión, y para la validación independiente de los datos y análisis incluidos en las propuestas de Plan de Ajuste y el plan de transición hacia el FACSiR, incluyendo información o documentación en custodia del personal o los contratistas de la AAFAF, quienes podrán ser entrevistados por el personal de las comisiones. La Junta de Retiro renunciará a cualquier privilegio que pueda obstruir el acceso o la disponibilidad de información, comunicación, documentación, personal o contratistas para propósitos de esta Ley.

Artículo 2.15.-Se enmienda el apartado (b) del Artículo 2 de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como "Ley de Reclamaciones y Demandas contra el Estado", para que lea como sigue:

"Artículo 2.-Autorización.

Se autoriza demandar al Estado Libre Asociado de Puerto Rico ante el Tribunal de Primera Instancia de Puerto Rico por las siguientes causas:

(a)     ...

(b)     Acciones para reivindicar propiedad mueble e inmueble, o derechos sobre las mismas, con o sin resarcimiento de perjuicios por los daños causados en dicha propiedad o por sus rentas y utilidades y para deslinde de fincas rústicas. Estas acciones, incluyendo recursos extraordinarios, podrán ser presentadas por servidores(as) y funcionarios(as) públicos(as), participantes y pensionados(as) de los Sistemas de Retiro, y por empleados(as) de entidades gubernamentales o no gubernamentales cuyos empleados(as) cotizan en los Sistemas de Retiro, a nombre suyo o en representación de su clase, para hacer cumplir la política pública y demás responsabilidades del Estado Libre Asociado de Puerto Rico dispuestas en la Ley para un Retiro Digno, cuyo fin último es reivindicar los derechos propietarios de los(as) participantes y pensionados(as) de los Sistemas de Retiro sobre sus pensiones, y sobre los ingresos y demás activos de los Sistemas de Retiro y el Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR).

(c)     ..."

## CAPÍTULO 3 - FIDEICOMISO PARA LA ADMINISTRACIÓN CONJUNTA DE LOS SISTEMAS DE RETIRO

Artículo 3.01.-Diseño y Creación del Fideicomiso para la Administración Conjunta de los Sistemas de Retiro

El Gobierno del Estado Libre Asociado de Puerto Rico utilizará todos sus poderes y facultades, dentro de los confines permitidos bajo PROMESA, para el diseño, la planificación y futura creación de un sistema de retiro que se denominará Fideicomiso para la Administración Conjunta de los Sistemas de Retiro de Puerto Rico (en adelante, FACSiR), el cual estará compuesto por el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico, creado por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, el Sistema de Retiro para los Maestros de Puerto Rico, creado por la Ley 160-2013, según enmendada, y el Sistema de Retiro para la Judicatura del Estado Libre Asociado de Puerto Rico, creado por la Ley 12 de 19 de octubre de 1954, según enmendada, junto con todos sus Programas y Planes. Los poderes y facultades conferidos a los tres Sistemas de Retiro en sus respectivas leyes habilitadoras, según

enmendadas, serán consolidados en el FACSiR, aunque compartidos durante el período de transición.

El FACSiR se creará como un sistema de retiro e instrumentalidad del Gobierno del Estado Libre Asociado de Puerto Rico que constituye un cuerpo corporativo y político independiente y separado del Gobierno del Estado Libre Asociado de Puerto Rico, análogo a la Corporación del Fondo de Interés Apremiante creada a través de la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante". El FACSiR existirá por virtud de su ley orgánica una vez legislada la autorización de un Plan de Ajuste, modelado conforme a lo dispuesto en el Capítulo 4 de esta Ley, que servirá de piedra angular para el establecimiento, el financiamiento y la sostenibilidad del FACSiR. El FACSiR es y se reconocerá para todos los propósitos como una entidad legal independiente y separada del Gobierno de Puerto Rico y cualquier otra Entidad Gubernamental. Será operada independientemente y sus negocios y asuntos serán dirigidos por, o bajo la dirección de, su Junta de Directores(as) y serán administrados por su Administrador(a).

Artículo 3.02.-Transferencia de obligaciones y preservación de estructura de beneficios

El FACSiR asumirá todas las obligaciones legítimas de los Sistemas de Retiro, incluyendo, sin que se entienda como una limitación, la de pagar las pensiones, las anualidades, los beneficios y demás acreencias de servidores(as) públicos(as) pensionados(as) y participantes de los Sistemas de Retiro, sin menoscabo alguno de las estructuras de pensiones, anualidades, beneficios, acreencias y responsabilidades que estuvieran vigentes previo a la radicación de la petición de quiebra bajo el Título III de PROMESA el 3 de mayo de 2017.  El FACSiR no asumirá, ni permitirá que se utilice alguna parte de los Ingresos del Fideicomiso o sus activos para pagar obligaciones ilegítimas, ilícitas o alguna otra manera nulas o anulables de los Sistemas de Retiro, incluyendo, sin que se entienda como una limitación, cualesquiera de los Bonos Impugnados.

Artículo 3.03.-Convenio relacionado a la transferencia de los Ingresos del FACSiR

El Gobierno del Estado Libre Asociado de Puerto Rico, con la intención de estar contractualmente obligado, acuerda y se compromete con el FACSiR y con cualquier Participante o Pensionado(a) de los Sistemas de Retiro o el FACSiR, y autoriza al FACSiR a incluir dicho compromiso en el convenio con el Gobierno del Estado Libre Asociado de Puerto Rico, a no, y que ninguna entidad gubernamental estará autorizada a:

(a)    tomar cualquier acción que:

(1)    menoscabe el derecho del FACSiR a recibir los Ingresos del FACSiR;

(2)       limite o altere los derechos del FACSiR conforme al Plan de Ajuste del Gobierno del Estado Libre Asociado de Puerto Rico, según modelado en el Capítulo 4 de esta Ley, para cumplir con los términos de cualquier acuerdo con los(as) servidores(as) públicos(as) Participantes y Pensionados(as) de los Sistemas de Retiro;

(3)       material y adversamente menoscabe el cobro de los Ingresos del FACSiR en cualquier año fiscal; o,

(4)       menoscabe los derechos, remedios o colaterales de los(as) Participantes y Pensionados(as) de los Sistemas de Retiro bajo el Plan de Ajuste modelado en el Capítulo 4 de esta Ley.

(b)       reducir los Ingresos del FACSiR a tasas menores de las acordadas en el Plan de Ajuste modelado en el Capítulo 4 de esta Ley; disponiéndose, sin embargo, que si las tasas de los Ingresos del FACSiR se fueran a reducir a tasas menores de las acordadas, el Gobierno del Estado Libre Asociado de Puerto Rico deberá sustituir cualesquiera pérdidas de ingresos que ello provocara conforme a los Requisitos de Sustitución;

(c)       menoscabar, limitar, restringir, rescindir, retrasar o modificar los derechos o poderes del FACSiR o sus agentes, fiduciarios(as), representantes y beneficiarios(as) bajo esta Ley o con relación a los Ingresos del FACSiR o la habilidad del FACSiR para cumplir con sus obligaciones a sus beneficiarios(as), quienes son sus Participantes y Pensionados(as);

(d)       enmendar esta Ley para menoscabar, limitar, restringir, rescindir, retrasar o modificar cualquier obligación o convenio del FACSiR con los(as) Participantes y Pensionados(as) de los Sistemas de Retiro o del FACSiR; y,

(e)       limitar o restringir los derechos y poderes de los oficiales pertinentes del Gobierno del Estado Libre Asociado de Puerto Rico para imponer, mantener, cobrar o recaudar los Ingresos del FACSiR; disponiéndose que lo anterior no impedirá que el Gobierno del Estado Libre Asociado de Puerto Rico ejerza su poder, a través de un cambio de ley, de reemplazar aquellas porciones de los Ingresos del FACSiR con la Colateral Sustituta de acuerdo a los Requisitos de Sustitución.

Artículo 3.04.-Titularidad sobre los Ingresos del FACSiR

(a)       Cualquier y toda titularidad y derechos sobre los Ingresos del FACSiR, fueron o han sido transferidos o por la presente se transfieren al FACSiR.

(b)     La transferencia descrita en el apartado (a) de esta Sección es una transferencia absoluta de todo derecho legal y en equidad, título e interés, y no una pignoración u otro financiamiento.

(c)     El FACSiR es y será el único y exclusivo dueño de los Ingresos del FACSiR a perpetuidad y el derecho de titularidad perseguirá a la fuente de repago independientemente de las modificaciones en su forma o mecanismo de originación, recaudación, desembolso o remisión.

(d)     Las personas naturales o jurídicas, incluyendo el Gobierno del Estado Libre Asociado de Puerto Rico y cualesquiera entidades gubernamentales, designadas como agentes retenedores para propósitos de alguna de las fuentes de ingreso de los Ingresos del FACSiR se entenderá que recaudan a nombre del FACSiR cualquier porción de los Ingresos del FACSiR en la que el FACSiR tiene un interés propietario. Dichos agentes retenedores continuarán estando sujetos a toda y cualquier obligación y responsabilidad impuesta por las leyes y los convenios aplicables a los agentes retenedores con relación a la imposición y recaudación de los Ingresos del FACSiR.

(e)     Los Ingresos del FACSiR no constituyen "recursos disponibles" o "ingresos disponibles" del Gobierno del Estado Libre Asociado de Puerto Rico según dicho término se utiliza en la Sección 8 del Artículo VI de la Constitución de Puerto Rico o de cualquier otra manera en la Constitución de Puerto Rico (independientemente de si se interpreta la versión en español o inglés de la Constitución de Puerto Rico).

Artículo 3.05.-Gravamen estatutario

Las pensiones, las anualidades y los beneficios de todo(a) Participante y Pensionado(a) bajo cualquiera de los Programas o Planes de los Sistemas de Retiro estarán garantizados automáticamente tras ser aprobado el Plan de Ajuste modelo, concebido en el Capítulo 4 de esta Ley, por un primer gravamen estatutario sobre todos los derechos, títulos, intereses, activos e Ingresos del FACSiR, incluyendo cualquier bien mueble o inmueble, dinero, ingreso, renta, cuenta, derecho contractual o intangible derivado de estas, para beneficio de los(as) Participantes y Pensionados(as) presentes y futuros. Dicho primer gravamen estatutario será automático y se constituirá, perfeccionará, será válido y exigible automáticamente a partir de la vigencia del Plan de Ajuste. Ningún instrumento tendrá que ser otorgado, registrado o inscrito en un récord oficial, registro gubernamental u oficina para perfeccionar o continuar el primer gravamen estatutario o para establecer o mantener la prioridad del mismo. Ningún contacto de los Ingresos del FACSiR con cualquier propiedad del Gobierno del Estado

Libre Asociado de Puerto Rico, de cualquier otra entidad gubernamental o de cualquier otra persona natural o jurídica limitará, frustrará, menoscabará o interferirá con dicho gravamen estatutario. Dicho gravamen estatutario será válido, vinculante, estará perfeccionado y será ejecutable contra cualquier persona natural o jurídica que tenga una reclamación de cualquier tipo, extracontractual, contractual u otra, contra el FACSiR y sus activos, independientemente de si dicha persona fue notificada de dicho gravamen.

Artículo 3.06.-Junta de Directores(as)

Los poderes del FACSiR se ejercerán a través de la Junta de Directores(as).

(a)    Composición de la Junta de Directores(as)

La Junta de Directores(as) del FACSiR estará compuesta por diecisiete (17) integrantes en propiedad, a saber: el(la) Director(a) Ejecutivo(a) de AAFAF, o su representante; el(la) Secretario(a) del Departamento de Hacienda, o su representante; el(la) Director(a) de la Oficina de Gerencia y Presupuesto, o su representante; tres (3) representantes de los(las) Participantes del otrora Sistema de Retiro de los(as) Empleados(as) del Gobierno del Estado Libre Asociado de Puerto Rico, escogidos(as) por sus pares mediante voto directo; tres (3) representantes de los(as) Pensionados(as) del otrora Sistema de Retiro de los(as) Empleados(as) del Gobierno del Estado Libre Asociado de Puerto Rico, escogidos(as) por sus pares mediante voto directo; tres (3) representantes de los(as) Participantes del otrora Sistema de Retiro para Maestros de Puerto Rico; tres (3) representantes de los(as) Pensionados(as) del otrora Sistema de Retiro para Maestros de Puerto Rico, escogidos(as) por sus pares mediante voto directo; un(a) (1) representante de los(as) Participantes del otrora Sistema de Retiro para la Judicatura de Puerto Rico, escogido(a) por sus pares mediante voto directo; y un(a) (1) representante de los(as) Pensionados(as) del otrora Sistema de Retiro para la Judicatura de Puerto Rico, escogido(a) por sus pares mediante voto directo.

(b)    Disposiciones generales respecto a la Junta de Directores(as)

(1)    cada director(a) será nombrado(a) por un término de tres (3) años y podrá servir hasta tres (3) términos en total;

(2)    cualquier representante de los(as) Participantes ante la Junta de Directores(as) que se jubile durante su término perderá elegibilidad para ocupar su puesto en la Junta de Directores(as) y el mismo será declarado vacante;

(3)    los(las) Participantes y Pensionados(as) podrán remover a cualquier director(a) electo(a) previo a la expiración de su término, mediante la entrega de peticiones juramentadas que sumen el tres (3) por

ciento de los votos emitidos para su elección, si dicho director(a) incumple con las responsabilidades establecidas para su cargo, con la Política Pública dispuesta en esta Ley, por incurrir en negligencia crasa, dolo, fraude, delito grave u omisión en el cumplimiento del deber;

(4)     no podrán ser integrantes de la Junta de Directores(as): (1) cualquier persona que haya sido nombrada o designada al Comité Oficial de Retirados(as) (COR) como parte del Título III de PROMESA; (2) cualquier persona que haya sido representante legal, consultor(a), asesor(a) o contratista del COR; (3) cualquier persona que haya fungido como síndico(a), director(a) u oficial de los Sistemas de Retiro previo a la radicación de la petición de quiebra el 3 de mayo de 2017; (4) cualquier persona que represente un fondo de inversiones que negocie o haya negociado bonos de Puerto Rico.

(5)     cada integrante de la Junta de Directores(as) tendrá derecho a un (1) voto;

(6)     todas las decisiones y acciones de la Junta de Directores(as) requerirán el voto afirmativo de una mayoría de los(as) integrantes que componen la Junta de Directores(as), disponiéndose que los estatutos corporativos del FACSiR podrán requerir la aprobación de una cantidad mayor de directores(as) para ciertos propósitos;

(7)     el(la) Presidente(a) de la Junta de Directores(as) será seleccionado(a) por y entre los(as) integrantes electos(as) de la Junta de Directores(as); y,

(8)     el(la) Administrador(a) del FACSiR será seleccionado(a) por la Junta de Directores(as) y será integrante *ex officio* de la misma, aunque no tendrá derecho a votar ni será decisiva su presencia a la hora de determinar el *quorum*.

(c)     Vacantes

Surgirá automáticamente una vacante en el puesto de un(a) integrante de la Junta de Directores(as), sin que se tenga que declarar o reconocer por persona alguna, cuando el(la) integrante se vea imposibilitado de ejercer su cargo y sus funciones por causa de muerte, remoción, renuncia, incapacidad legal, o de cualquier otra manera que no sea por el vencimiento de su término. Al surgir una vacante en el puesto de un(a) integrante de la Junta de Directores(as) el(la) sucesor(a) será escogido(a) de igual manera en que

lo fue el(la) incumbente anterior, a la mayor brevedad posible y nunca en exceso de treinta (30) días luego de surgir la vacante.

(d)    Compensación

Los(as) integrantes de la Junta de Directores(as) no recibirán compensación alguna que no sea la correspondiente a los cargos o puestos que ocupan para ser  integrantes de la Junta de Directores(as). El trabajo realizado por los(as)  integrantes electos(as) de la Junta de Directores(as) que representan a los(as) Participantes de los Sistemas de Retiro o el FACSiR durante horario laborable será compensado como tiempo en destaque de sus puestos regulares en el Gobierno del Estado Libre Asociado de Puerto Rico, por lo que no recibirá compensación adicional a la correspondiente para sus empleos regulares en el Gobierno del Estado Libre Asociado de Puerto Rico y el FACSiR reembolsará a la entidad gubernamental correspondiente el costo del destaque.

(e)    Aprobación y enmienda de reglas

Tan pronto como sea factible luego de la juramentación de todos(as) los(as) directores(as) y la selección del o la Presidente(a) de la Junta de Directores(as), el FACSiR adoptará reglas y procedimientos para gobernar sus actividades bajo esta Ley. La Junta de Directores(as) podrá enmendar dichas reglas y procedimientos de tiempo en tiempo.

(f)    *Quorum*

Una mayoría de los(as)  integrantes en propiedad de la Junta de Directores(as) constituirán el *quorum* para tomar decisiones o ejercer cualquier poder o función del FACSiR. Uno(a) (1) o más  integrantes podrán participar de una reunión de la Junta de Directores(as) mediante teleconferencia o equipo de comunicaciones similar. La participación por dichos medios constituirá participación presencial en la reunión. Cualquier acción necesaria o permitida en cualquier reunión de la Junta de Directores(as) será autorizada sin necesidad de una reunión siempre y cuando todos los(as)  integrantes de la Junta de Directores(as) den su consentimiento por escrito a dicha acción.

(g)    Delegación

La Junta de Directores(as) podrá delegar a uno (1) o más de los(as) integrantes, al(la) Administrador(a) o a los(as) oficiales, agentes y empleados(as) del FACSiR aquellos poderes y responsabilidades que la Junta de Directores(as) determine sean apropiados.

Artículo 3.07.-Política de inversión

(a)     El FACSiR invertirá sus fondos de acuerdo a las disposiciones establecidas en esta Ley, y a las reglas y los procedimientos que la Junta de Directores(as) establezca mediante reglamento.

(b)     Los reglamentos, las reglas y los procedimientos aprobados se ceñirán a todas las restricciones establecidas en guías de inversión para planes de retiro del sector público, a ser adoptadas y promulgadas conjuntamente por la Oficina del Contralor de Puerto Rico, creada por virtud de la Ley Núm. 9 de 24 de julio de 1952, según enmendada, y la Oficina del Comisionado de Instituciones Financieras (OCIF), creada por virtud de la Ley Núm. 4 de 11 de octubre de 1985, según enmendada, conocida como "Ley de la Oficina del Comisionado de Instituciones Financieras".

(c)     La Junta de Directores(as) adoptará las políticas para la administración de las inversiones autorizadas por las disposiciones de esta Ley. La política de inversiones deberá incluir, sin que se entienda como una limitación, lo siguiente:

(1)     los criterios, requisitos y condiciones para la licitación, selección, contratación y evaluación de las ejecutorias de los(as) manejadores(as) y asesores(as) de inversiones y de los bancos custodios que deberá contratar para realizar las inversiones autorizadas por las disposiciones de esta Ley;

(2)     la política para inversión de los recursos del FACSiR en los mercados de capital, modelada conforme las políticas de inversiones adoptadas por los diez (10) fondos, fideicomisos o planes de retiro del sector público más grandes de los Estados Unidos cuya administración de activos para planes de beneficio definido representen el noventa (90) por ciento o más del total de los activos administrados;

(3)     las normas para la administración, el arrendamiento, la venta, el gravamen o la ejecución de bienes inmuebles adquiridos para generar ingresos;

(4)     disposiciones relacionadas a ordenar investigaciones actuariales para determinar la solvencia económica de los fideicomisos bajo su custodia y administración, adoptar las normas que fueren necesarias para garantizar el pago de las pensiones, anualidades, beneficios y demás acreencias de los(as) Participantes y Pensionados(as) y

aprobar las tablas de mortalidad apropiadas para la valoración actuarial de todas las pensiones y los demás beneficios administrados por el FACSiR; y,

(5)    disposiciones relacionadas a controles internos, auditorías, normas éticas y sobre conflictos de interés, preservación y sistematización de documentos y minutas impresos o digitales que evidencien las deliberaciones de la Junta de Directores(as) y sus Comités en torno al manejo de las inversiones del FACSiR, y la divulgación pública de la información financiera, estadística, actuarial y cualesquiera otros documentos oficiales del FACSiR.

(d)    Tipos de inversiones autorizadas

(1)    El FACSiR estará autorizado a invertir todos los recursos disponibles que no se requieran para su operación corriente.

(2)    Las inversiones que se efectúen bajo las disposiciones de esta Ley serán llevadas a cabo con la previsión, el cuidado y bajo los criterios que las personas prudentes, razonables y experimentadas ejercerán en el manejo de sus propios asuntos con fines de inversión y no con fines especulativos, considerando, además, el balance que debe existir entre las expectativas de rendimiento y riesgo. El FACSiR no podrá invertir más del diez porciento (10%) de su cartera en instrumentos alternativos.

(3)    El FACSiR no estará autorizado a emitir bonos ni podrá ser obligado o presionado por el Gobierno del Estado Libre Asociado de Puerto Rico, sus funcionarios(as), agentes, representantes, manejadores(as) de inversiones, acreedores(as) o para invertir en sus bonos.

(e)    Rendimiento de las inversiones

(1)    Las políticas y estrategias de inversiones adoptadas por el FACSiR deben procurar un rendimiento anual promedio que nunca sea menor de cuatro y catorce céntimas (4.14) por ciento.

Artículo 3.08.-Deberes fiduciarios

Los Sistemas de Retiro y el FACSiR adoptarán como propias y serán gobernados por las definiciones del fiduciario(a) y sus deberes, contenidas en las partes 2509, 2510 y 2550 del Título 29 del Código de Regulaciones Federales, con número identificador de regulación (RIN, por sus siglas en inglés) 1210-AB32, no obstante su vigencia o

aplicabilidad bajo ERISA. Además, se entenderán como deberes fiduciarios: (1) asegurar el coeficiente de financiación adecuada en los Sistemas de Retiro y el FACSiR; (2) proteger la capacidad de pago de los beneficios existentes; (3) notificar a la Asamblea Legislativa cuando el coeficiente de financiación realizado o proyectado permita el restablecimiento o la expansión de beneficios, beneficiarios(as) o participantes; (4) proveer asesoramiento financiero a Participantes y Pensionados(as) para el mayor rendimiento de sus derechos y beneficios en los Sistemas de Retiro y el FACSiR; y (5) proveer información fiel, exacta y oportuna a los Participantes, Pensionados(as), el Gobierno del Estado Libre Asociado de Puerto Rico y el público en general en torno a las condiciones económicas y financieras que enfrentan los Sistemas de Retiro y el FACSiR.

Artículo 3.09.-Preservación de beneficios existentes previo a la Quiebra

El Gobierno del Estado Libre Asociado de Puerto Rico, con la intención de estar contractualmente obligado, acuerda y se compromete con el FACSiR y con cualquier Participante o Pensionado(a) de los Sistemas de Retiro o el FACSiR, y autoriza al FACSiR a incluir dicho compromiso en el convenio con el Gobierno del Estado Libre Asociado de Puerto Rico, a que:

(a)  los(as) Pensionados(as) de los Sistemas de Retiro mantendrán el cien (100) por ciento de las pensiones, las anualidades, los beneficios y demás acreencias que estuvieran vigentes contra los Sistemas de Retiro previo a la radicación de la petición de quiebra el 3 de mayo de 2017;

(b)  los(as) Participantes preservarán sus derechos de acumulación y otros beneficios a los que tuvieran derecho con su membresía a los Sistemas de Retiro, según estuvieran vigentes previo a la radicación de la petición de quiebra el 3 de mayo de 2017; y,

(c)  los(as) empleados(as) públicos(as) a quienes se les haya otorgado el beneficio del Seguro Social Federal posterior al 3 de mayo de 2017 continuarán gozando de este beneficio.

Artículo 3.10.-Restablecimiento de beneficios forzosamente eliminados y expansión de beneficios eliminados a Participantes y Pensionados(as)

Una vez alcanzado el Coeficiente de Financiación Adecuada, y según los estudios de valoración actuarial proyecten que ello no representará un riesgo de solvencia ni limitará la capacidad del FACSiR para sostener el Coeficiente de Financiación Adecuada, el Gobierno del Estado Libre Asociado de Puerto Rico, con la intención de estar contractualmente obligado, acuerda y se compromete con el FACSiR y con cualquier Participante o Pensionado(a) de los Sistemas de Retiro o el FACSiR, y autoriza al FACSiR

a incluir dicho compromiso en el convenio con el Gobierno del Estado Libre Asociado de Puerto Rico, a:

(a)   restablecer los derechos de acumulación en programas de beneficio definido para los(as) Participantes que los vieron eliminados o modificados perjudicialmente mediante la legislación de programas obligatorios y no voluntarios, o la modificación perjudicial retroactiva de los programas a los que fueran elegibles o de los que fueran participantes;

(b)   restablecer los derechos de ajuste por costo de vida, plan médico, bonos de verano, bonos de medicamento y bonos de Navidad a los(as) Pensionados(as) que los vieron eliminados o modificados perjudicialmente mediante la legislación de programas obligatorios y no voluntarios, o la modificación perjudicial retroactiva de los programas a los que fueran elegibles o de los que fueran beneficiarios(as);

(c)   expandir los derechos y las responsabilidades de los(as) Participantes de programas de aportaciones definidas o programas híbridos de beneficios y aportaciones definidas, que no hayan elegido transferirse a un programa de aportaciones definidas o programas híbridos de beneficio y aportaciones definidas, para que: (1) se les reduzca la edad de elegibilidad para acogerse al retiro; (2) se le otorgue un derecho irrevocable de participación en un programa de retiro de beneficios definidos cuya anualidad nunca sea inferior al uno y medio (1.5) por ciento de la retribución mediana, multiplicado por el número de años de servicios acreditados hasta veinte (20) años, más el dos (2) por ciento de la retribución mediana, multiplicado por el número de años de servicios acreditados en exceso de veinte (20) años; o, (3) se le otorgue una combinación de los beneficios (1) y (2);

(d)   expandir los derechos de ajuste por costo de vida, plan médico, bonos de verano, bonos de medicamento y bonos de Navidad a los(as) Pensionados(as) y Participantes cuyos programas de retiro a los cuales cotizaron durante sus años de servicios acreditables no los contemplaran;

(e)   expandir los derechos y las responsabilidades de los(as) Pensionados(as) acogidos(as) a un programa de aportaciones definidas, un programa híbrido de beneficio y aportaciones definidas, o un programa de beneficios definidos cuyos beneficios se hicieron inferiores a los vigentes al momento de comenzar sus años de servicios acreditados mediante la legislación de modificaciones perjudiciales obligatorias y no voluntarias, para que puedan realizar las aportaciones necesarias, si alguna, para cualificar para un programa de beneficios definidos similar o mejor al que estuviera vigente al momento de comenzar sus años de servicios acreditados;

(f)     expandir la elegibilidad de los(as) Participantes del FACSiR para incluir empleados(as) públicos(as) transitorios(as), empleados(as) públicos(as) irregulares, empleados(as) de empresas del sector privado contratadas por el Gobierno del Estado Libre Asociado de Puerto Rico, el FACSiR y cualesquiera empresas del sector privado sean contratadas por el FACSiR, y cualesquiera empresas del sector privado cuenten con otras inversiones, subvenciones, exenciones, concesiones o participación del Gobierno del Estado Libre Asociado de Puerto Rico, y disponer las responsabilidades patronales en cada caso;

Artículo 3.11.-Aportaciones individuales de los(as) Participantes

Los(as) Participantes tendrán la responsabilidad de realizar aportaciones individuales a base del sueldo devengado al momento en que se le retiene la aportación individual. Las aportaciones individuales se harán conforme tasas progresivas, en las que aportarán una porción mayor de su sueldo quienes devenguen sueldos más altos y aportarán una porción menor de su sueldo quienes devenguen sueldos más bajos. Las aportaciones individuales, en el agregado, deberán producir al FACSiR un ingreso equivalente al valor promedio de diez (10) por ciento de los gastos ordinarios de nómina para el Gobierno del Estado Libre Asociado de Puerto Rico.

Artículo 3.12.-Aportaciones patronales del Gobierno del Estado Libre Asociado de Puerto Rico

El Gobierno del Estado Libre Asociado de Puerto Rico, en calidad de patrono, tendrá la responsabilidad de realizar aportaciones patronales para las pensiones de sus empleados(as) elegibles para cotizar en los Sistemas de Retiro, y las realizará a base del sueldo devengado por sus empleados al momento en que se les retiene su aportación individual y se remite al Fideicomiso la aportación patronal. La remesa de las aportaciones patronales ocurrirá simultáneamente con la remesa de las aportaciones individuales. Además de estar sujetos a demandas y otras acciones civiles por parte del Fideicomiso, los(as) Participantes y los(as) Pensionados(as), aquellos(as) funcionarios(as) públicos(as) que intencionalmente incumplan con la simultaneidad de las remesas de las aportaciones individuales y patronales, según aquí dispuesto, habrán cometido el delito de malversación de fondos públicos, según el mismo es definido en el Artículo 264 de la Ley 146-2012, según enmendada, conocida como "Código Penal de Puerto Rico".

Las aportaciones patronales se harán conforme a tasas progresivas, en las que el Gobierno del Estado Libre Asociado de Puerto Rico aportará una porción menor para quienes devenguen sueldos más altos y aportarán una porción mayor para quienes devenguen sueldos más bajos. Las aportaciones patronales, en el agregado, deberán producir al FACSiR un ingreso equivalente al valor promedio de diez (10) por ciento de

los gastos ordinarios de nómina para el Gobierno del Estado Libre Asociado de Puerto Rico.

Artículo 3.13.-Restitución de aportaciones individuales y reconocimiento de daños por intereses dejados de devengar bajo el Programa de Cuentas de Ahorros para el Retiro

El Gobierno del Estado Libre Asociado de Puerto Rico, con la intención de estar contractualmente obligado, acuerda y se compromete con el FACSiR y con cualquier Participante o Pensionado(a) de los Sistemas de Retiro o el FACSiR, y autoriza al FACSiR a incluir dicho compromiso en el convenio con el Gobierno del Estado Libre Asociado de Puerto Rico, a remitir al FACSiR inmediatamente luego de la aprobación de un Plan de Ajuste que se conforme a lo dispuesto en esta Ley, la cantidad de dos mil sesenta y tres millones trescientos setenta y seis mil (2,063,376,000) dólares por concepto de restitución de las aportaciones individuales retenidas y no remitidas a las cuentas individuales de los(as) Participantes de programas de aportaciones definidas desde el 1 de enero de 2000 hasta la radicación de la petición de quiebra el 3 de mayo de 2017. Además, el Gobierno del Estado Libre Asociado de Puerto Rico reconocerá un crédito para compensar por los intereses compuestos dejados de devengar en las cuentas individuales de los(as) Participantes de estos programas durante el período en cuestión, por la cantidad agregada de doscientos treinta y dos millones ciento sesenta y tres mil (232,163,000) dólares.

A estos fines se asignará al FACSiR la cantidad de mil cuatrocientos millones (1,400,000,000) de dólares consignados en la Resolución Conjunta 46-2019. Asimismo, se asignará, con cargo a los ingresos del Fondo General en exceso a la cuantía incluida en el Presupuesto Certificado para el año fiscal 2018-2019 y el año fiscal 2019-2020, depositados en los fondos no comprometidos del Tesoro Estatal según certificado por la AAFAF en los informes semanales de flujo de caja en la Cuenta Única de Tesorería, la cantidad de ochocientos noventa y cinco millones quinientos treinta y nueve mil (895,539,000) dólares. Se autorizará a la Oficina de Gerencia y Presupuesto, al Departamento de Hacienda y a la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico a llevar a cabo todos los actos necesarios y apropiados para implementar estas transferencias.

CAPÍTULO 4 - PLAN DE AJUSTE

Artículo 4.01.-Conformidad del Plan de Ajuste a la Política Pública

Las clases de acreedores, bajo un Plan de Ajuste de Deuda que se conforme a la Política Pública dispuesta en esta Ley, quedarían constituidas, de conformidad con la Sección 1122 del Código de Quiebras, de la siguiente manera:

(a)     Reclamaciones sobre Bonos Impugnados: Serían consolidadas bajo la misma clase de acreedores todas las personas, naturales o jurídicas, que

posean un derecho de acreencia sobre el servicio de deuda atribuible a cualesquiera de los Bonos Impugnados. Estas reclamaciones no tendrán recuperación alguna bajo las disposiciones de este Plan de Ajuste de Deuda. Esta clase de acreedores será perjudicada y se presumirá su oposición al Plan de Ajuste de Deuda, así como fue presumida la oposición de la clase de los(as) Acreedores No Asegurados bajo el Plan de Ajuste de la Deuda de la Corporación del Fondo de Interés Apremiante, confirmado el 4 de febrero de 2019 por el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico. El valor total de estas reclamaciones, previo a la radicación de la petición de quiebra el 3 de mayo de 2017, es por una cantidad no menor a veintiocho mil quinientos treinta y uno millones ciento veintiún mil quinientos cincuenta y ocho (28,531,121,558) dólares, distribuidos en el pago anual de principal e intereses desde el año fiscal 2016-2017, fecha de efectividad de la Sección 405 de PROMESA, y el año fiscal 2057-2058, última fecha de maduración de los Bonos Impugnados identificados en los incisos (i), (ii) y (iii) del apartado (e) de la Sección 1.05 de esta Ley.

(b)     Reclamaciones sobre Bonos No Impugnados: Serían distribuidas en dos clases las reclamaciones de todas las personas, naturales o jurídicas, que posean un derecho de acreencia sobre el servicio de deuda atribuible a cualesquiera de los Bonos No Impugnados. Estas reclamaciones tendrán una recuperación máxima agregada en el costo total de amortización de sus bonos equivalente al cincuenta y ocho (58) por ciento, distribuida de la siguiente manera:

(i)     Reclamaciones sobre Bonos No Impugnados pagaderos con ingresos generales del Tesoro Estatal para los cuales se empeñó la entera fe y el crédito del Gobierno del Estado Libre Asociado  de Puerto Rico: Serían consolidadas bajo la misma clase de acreedores todas las personas, naturales o jurídicas, que posean un derecho de acreencia sobre el servicio de deuda atribuible a cualesquiera de los Bonos No Impugnados de obligación general, o que de alguna otra manera sean pagaderos con ingresos generales legislados por el Gobierno del Estado Libre Asociado de Puerto Rico, los ingresos depositados en el Tesoro Estatal, o para los cuales se haya empeñado la entera fe y el crédito del Gobierno del Estado Libre Asociado de Puerto Rico. Estas reclamaciones no incluyen las de los Bonos No Impugnados de la AEP para cuyo repago se haya empeñado la entera fe y el crédito del Gobierno del Estado Libre Asociado de Puerto Rico, y tendrán una recuperación de setenta y ocho (78) por ciento si la clase vota para aceptar el Plan de Ajuste de Deuda. Si la clase no vota para aceptar, o vota para no aceptar, el Plan de Ajuste de Deuda, tendrán una recuperación de diecinueve (19) por ciento. El cumplimiento del

Gobierno del Estado Libre Asociado de Puerto Rico con la recuperación dispuesta en el Plan de Ajuste para esta clase se hará mediante una (1) nueva emisión de bonos en sustitución de los Bonos No Impugnados pagaderos con los ingresos generales del Tesoro Estatal, incluyendo con la devolución (clawback, en inglés) de cualesquiera ingresos generales se hubieran destinado para el servicio de la deuda pendiente de pago de la ACT, ADCC, AFI y el Fideicomiso de los Niños, aplicando la tasa de recuperación sobre el mismo flujo de efectivo que le hubiera correspondido bajo los términos y plazos de pago originalmente pactados para la amortización. El valor total de estas reclamaciones, previo a la radicación de la petición de quiebra el 3 de mayo de 2017, es por una cantidad no mayor de seis mil ciento ochenta y uno millones cuatrocientos cincuenta y ocho mil cuarenta y siete (6,181,458,047) dólares, distribuidos en el pago anual de principal e intereses desde el año fiscal 2016-2017, fecha de efectividad de la Sección 405 de PROMESA, y el año fiscal 2042-2043, última fecha de maduración de los Bonos No Impugnados pagaderos con los ingresos generales del Tesoro Estatal.

(ii)     Reclamaciones sobre Bonos No Impugnados pagaderos con ingresos propios de la Empresa Pública: Serían consolidadas bajo la misma clase de acreedores todas las personas, naturales o jurídicas, que posean un derecho de acreencia sobre el servicio de deuda atribuible a cualesquiera de los Bonos No Impugnados pagaderos con los ingresos propios generados por la Empresa Pública correspondiente en el desempeño ordinario de las actividades comerciales que le fueran autorizadas por ley. Estas reclamaciones tendrán una recuperación de veinticinco (25) por ciento si la clase vota para aceptar el Plan de Ajuste de Deuda de conformidad con la Sección 1126 del Código de Quiebras. Si la clase no vota para aceptar, o vota para no aceptar, el Plan de Ajuste de Deuda, tendrán una recuperación de diez (10) por ciento. El cumplimiento del Gobierno del Estado Libre Asociado de Puerto Rico con la recuperación dispuesta en el Plan de Ajuste para esta clase se hará mediante una (1) nueva emisión de bonos en sustitución de los Bonos No Impugnados pagaderos con los ingresos propios de la Empresa Pública correspondiente, aplicando la tasa de recuperación sobre el mismo flujo de efectivo que le hubiera correspondido bajo los términos y plazos de pago originalmente pactados para la amortización. El valor total de estas reclamaciones, previo a la radicación de la petición de quiebra el 3 de mayo de 2017, es por una cantidad no mayor de tres mil seiscientos setenta y ocho millones

trescientos setenta y cuatro mil cuatrocientos sesenta y dos (3,678,374,462) dólares, distribuidos en el pago anual de principal e intereses desde el año fiscal 2016-2017, fecha de efectividad de la Sección 405 de PROMESA, y el año fiscal 2040-2041, última fecha de maduración de los Bonos No Impugnados pagaderos con los ingresos propios de la AEP.

(c)   Reclamaciones de Pensionados(as) y Participantes de los Sistemas de Retiro: Serían distribuidas en dos clases las reclamaciones de todas las personas, naturales o jurídicas, que posean un derecho de acreencia por concepto de pensión, anualidad, beneficios u otras acreencias contra los Sistemas de Retiro y, por consiguiente, contra la Cuenta para el Pago de las Pensiones Acumuladas y la Cuenta de Aportaciones Definidas. Los Pensionados(as) y Participantes de los Sistemas de Retiro contribuyeron reducciones sustanciales para el ajuste de las deudas del Gobierno del Estado Libre Asociado de Puerto Rico, previo y posterior a la radicación de la petición de quiebra el 3 de mayo de 2017, por lo que se reconocerán sus reclamaciones perjudicadas y modificadas de la siguiente manera:

(i)   Reclamaciones de Pensionados(as) y Participantes de los Sistemas de Retiro con Cuentas de Ahorro para el Retiro: Serían consolidadas bajo la misma clase de acreedores todas las personas, naturales o jurídicas, que posean un derecho de acreencia por concepto de pensión, anualidad, beneficios u otras acreencias contra los Sistemas de Retiro, incluyendo anualidades o distribuciones correspondientes a su participación en cualesquiera de los programas de aportaciones definidas, programas híbridos de contribución definida, o programas de cuentas de ahorro para el retiro bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, o la Ley 160-2013, según enmendada. A cada persona que forme parte de esta clase se le reconocerán los recortes realizados forzosamente a sus derechos de pensiones, anualidades, bonificaciones, beneficios, acumulaciones, distribuciones y otras acreencias, previo a la radicación de la petición de quiebra el 3 de mayo de 2017, además de la pérdida de los ajustes por aumentos en el costo de vida luego del año fiscal 2006-2007, como perjuicio para los efectos del cumplimiento de este Plan de Ajuste de Deuda con la Sección 1124 y la Sección 1129(a)(10) del Código de Quiebras. Además, se reconocerán como perjuicios: (1) la liquidación de los Sistemas de Retiro y la consecuente degradación de aquella porción correspondiente a su reclamación, de asegurada contra los activos de los Sistemas de Retiro a no asegurada contra los ingresos generales del Tesoro Estatal a través de un esquema de *pay as you go*, sucedido posterior a la radicación de la petición de quiebra

con la aprobación de la Ley 106-2017 el 23 de agosto de 2017; y (2) la reducción en el rendimiento y la acumulación de intereses sobre aquellas aportaciones individuales realizadas bajo sus correspondientes programas de aportaciones definidas, programas híbridos de contribución definida, o programas de cuentas de ahorro para el retiro tras la congelación o liquidación de estos programas sin el consecuente reconocimiento de una distribución individual de los rendimientos que fueran a devengar en la cuenta bancaria segregada del Fondo General para el pago de las pensiones acumuladas, a la que fueron transferidas sus aportaciones y los intereses dejados de devengar con la aprobación de la Ley 106-2017; y (3) si votan para aceptar este Plan de Ajuste de Deuda, la conversión de su derecho de acreencia individual sobre sus aportaciones y el rendimiento de las mismas, asegurado contra una cuenta individual figurativa, a un derecho de acreencia colectiva que será prorrateado y asegurado contra los activos agregados del FACSiR. Ninguna persona incluida en esta clase verá reducciones adicionales a las reconocidas en este inciso a sus pensiones, anualidades, beneficios, distribuciones u otras acreencias o garantías. El cumplimiento del Gobierno del Estado Libre Asociado de Puerto Rico con la recuperación dispuesta en el Plan de Ajuste para esta clase se hará mediante: (1) el establecimiento del FACSiR y la relación contractual entre el Gobierno del Estado Libre Asociado de Puerto Rico y el FACSiR para la transferencia irrevocable de titularidad sobre los Ingresos del FACSiR, según modelado en el Capítulo 3 de esta Ley; y (2) la autorización a la AAFAF, OGP y el Departamento de Hacienda para desembolsar en efectivo, no más tarde del 1 de julio de cada año luego de la confirmación del Plan de Ajuste, las cantidades correspondientes a los Ingresos del FACSiR para ese año, y el desembolso en efectivo de las cantidades necesarias para resarcir las reclamaciones no recurrentes correspondientes a los Ingresos del FACSiR, no más tarde del 30 de junio del año fiscal en que sea confirmado el Plan de Ajuste de Deuda. Los desembolsos en efectivo se harán con cargo a los ingresos del Fondo General en exceso a la cuantía incluida en el Presupuesto Certificado para el año fiscal 2018-2019 y el año fiscal 2019-2020, y cualquier año fiscal subsiguiente, depositados en los fondos no comprometidos del Tesoro Estatal según certificado por la AAFAF en los informes semanales de flujo de caja en la Cuenta Única de Tesorería. El valor total de estas reclamaciones será provisto y certificado bajo juramento por los(as) Administradores(as) de los Sistemas de Retiro.

(ii)    Reclamaciones de Pensionados(as) y Participantes de los Sistemas de Retiro sin Cuenta de Ahorro para el Retiro: Serían consolidadas bajo la misma clase de acreedores todas las personas, naturales o jurídicas, que posean un derecho de acreencia por concepto de pensión, anualidad, beneficios u otras acreencias contra los Sistemas de Retiro, excluyendo anualidades o distribuciones correspondientes a la participación en cualesquiera de los programas de aportaciones definidas, programas híbridos de contribución definida, o programas de cuentas de ahorro para el retiro bajo la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, o la Ley 160-2013, según enmendada. A cada persona que forme parte de esta clase se le reconocerán los recortes realizados forzosamente a sus derechos de pensiones, anualidades, bonificaciones, beneficios, acumulaciones, distribuciones y otras acreencias, previo a la radicación de la petición de quiebra el 3 de mayo de 2017, además de la pérdida de los ajustes por aumentos en el costo de vida luego del año fiscal 2006-2007, como perjuicio para los efectos del cumplimiento de este Plan de Ajuste de Deuda con la Sección 1124 y la Sección 1129(a)(10) del Código de Quiebras. Además, se reconocerán como perjuicios la liquidación de los Sistemas de Retiro y la consecuente degradación de aquella porción correspondiente a su reclamación, de asegurada contra los activos de los Sistemas de Retiro a no asegurada contra los ingresos generales del Tesoro Estatal a través de un esquema de pay as you go, sucedido posterior a la radicación de la petición de quiebra con la aprobación de la Ley 106-2017 el 23 de agosto de 2017. Ninguna persona incluida en esta clase verá reducciones adicionales a las reconocidas en este inciso a sus pensiones, anualidades, beneficios, distribuciones u otras acreencias o garantías. El cumplimiento del Gobierno del Estado Libre Asociado de Puerto Rico con la recuperación dispuesta en el Plan de Ajuste para esta clase se hará mediante: (1) el establecimiento del FACSiR y la relación contractual entre el Gobierno del Estado Libre Asociado de Puerto Rico y el FACSiR para la transferencia irrevocable de titularidad sobre los Ingresos del FACSiR, según modelado en el Capítulo 3 de esta Ley; y (2) la autorización a la AAFAF, OGP y el Departamento de Hacienda para desembolsar en efectivo, no más tarde del 1 de julio de cada año luego de la confirmación del Plan de Ajuste, las cantidades correspondientes a los Ingresos del FACSiR para ese año, y el desembolso en efectivo de las cantidades necesarias para resarcir las reclamaciones no recurrentes correspondientes a los Ingresos del FACSiR, no más tarde del 30 de junio del año fiscal en que sea confirmado el Plan de Ajuste de Deuda. Los desembolsos en efectivo se harán con cargo a

los ingresos del Fondo General en exceso a la cuantía incluida en el Presupuesto Certificado para el año fiscal 2018-2019 y el año fiscal 2019-2020, y cualquier año fiscal subsiguiente, depositados en los fondos no comprometidos del Tesoro Estatal según certificado por la AAFAF en los informes semanales de flujo de caja en la Cuenta Única de Tesorería. El valor total de estas reclamaciones será provisto y certificado bajo juramento por los(as) Administradores(as) de los Sistemas de Retiro.

(d)   Reclamaciones generales de acreedores no asegurados: Serían consolidadas bajo la misma clase de acreedores todas las personas, naturales o jurídicas, que posean un derecho de acreencia no asegurada contra los ingresos generales del Tesoro Estatal, y que no se hayan incluido en las clases de acreedores enumeradas en los apartados (a), (b) y (c) de esta Sección. La AAFAF realizará un análisis de flujo de efectivo y sostenibilidad de deuda, de conformidad con lo dispuesto en la Política Pública de esta Ley, para determinar cuánta sería la recuperación que razonablemente se podría proveer para resarcir las reclamaciones generales de los acreedores no asegurados del Gobierno del Estado Libre Asociado de Puerto Rico, cuyas reclamaciones estén fundamentadas en la remuneración adeudada por concepto de bienes suplidos o servicios rendidos al Gobierno del Estado Libre Asociado de Puerto Rico, disputas obrero-patronales, y sentencias o causas de acción contra el Gobierno del Estado Libre Asociado de Puerto Rico.

Artículo 4.02.-Prohibición de imponer un Plan de Ajuste de Deuda a Pensionados y Participantes

Si el Plan de Ajuste no cumple con lo dispuesto en la Sección 1129(a)(8) del Código de Quiebras por no lograr un voto de aprobación de las clases de acreedores que agrupan las reclamaciones correspondientes a Pensionados(as) y Participantes de los Sistemas de Retiro, el Gobierno del Estado Libre Asociado de Puerto Rico estará impedido de entrar en conversaciones sobre diseñar, proponer, adelantar o implementar cualquier Plan de Ajuste que contemple el uso del mecanismo provisto en la Sección 1129(b) del Código de Quiebras en perjuicio de cualesquiera de las clases de acreedores que agrupen las reclamaciones de Pensionados(as) y Participantes.

## CAPÍTULO 5 - DISPOSICIONES MISCELÁNEAS

Artículo 5.01.-Separabilidad

Esta Ley se interpretará de acuerdo a la Constitución de Puerto Rico y la Constitución de los Estados Unidos de América. Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título,

capítulo, subcapítulo, acápite o parte de esta Ley fuera anulada o declarada inconstitucional, la orden a tal efecto dictada no afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto de dicha orden quedará limitado a la cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de la misma que así hubiere sido anulada o declarada inconstitucional. Si la aplicación a una persona o a una circunstancia de cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera invalidada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará ni invalidará la aplicación del remanente de esta Ley a aquellas personas o circunstancias en que se pueda aplicar válidamente. Es la voluntad expresa e inequívoca de esta Asamblea Legislativa que los tribunales hagan cumplir las disposiciones y la aplicación de esta Ley aunque se deje sin efecto, anule, invalide, perjudique o declare inconstitucional alguna de sus partes, o aunque se deje sin efecto, invalide o declare inconstitucional su aplicación a alguna persona o circunstancia. Si la declaración de inconstitucionalidad de cualquier apartado, cláusula, párrafo, inciso, subinciso, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley estuviera fundamentada en la doctrina de campo ocupado, la cláusula de supremacía o los poderes plenarios de la Constitución de los Estados Unidos manifestada a través de PROMESA, o de alguna otra manera invalidada por su inconsistencia con los poderes conferidos o delegados a la JSAF al amparo de los Títulos I, II, III y VI de PROMESA, quedará suspendida temporalmente la vigencia de aquellas partes de esta Ley así declaradas hasta que se materialice el Vencimiento de la JSAF, conforme la Sección 209 de PROMESA.

Artículo 5.02.-Supremacía

Las disposiciones de esta Ley prevalecerán sobre cualquier otra disposición general o específica de cualquier otra ley o reglamento del Gobierno del Estado Libre Asociado de Puerto Rico que sea inconsistente con esta Ley.

Artículo 5.03.-Vigencia.

Esta Ley comenzará a regir inmediatamente después de su aprobación.

..............................................
Presidente de la Cámara

..............................................
Presidente del Senado

Aprobada en 9 de junio de 2021

..............................................
Gobernador

Este P. de ____ C ____ Núm 120

Fue recibida por el Gobernador

Hoy __28__ de __mayo__

De 2021 A las __4:210.4__

_Carlos_

Asesor