# Exhibit 8

**GOBIERNO DE PUERTO RICO**
Autoridad de Asesoría Financiera y
Agencia Fiscal de Puerto Rico

3 de febrero de 2021

**Hon. Domingo J. Torres García**
Presidente
Comisión de Asuntos Laborales y Transformación del Sistema de Pensiones para un Retiro Digno
**Cámara de Representantes de Puerto Rico**
El Capitolio
San Juan, Puerto Rico

*Proyecto de la Cámara 120*

Estimado Presidente:

Comparece la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico ("AAFAF") para emitir sus comentarios en torno al Proyecto de la Cámara 120 ("PC 120"), el cual se titula:

> *Para crear la "Ley para un Retiro Digno", a los fines de establecer y uniformar una política pública enérgica y vigorosa de cero recortes a las pensiones de los participantes de los sistemas de retiro y las personas jubiladas del servicio público de Puerto Rico; crear el andamiaje jurídico necesario para el eventual establecimiento de un Fideicomiso para la Administración Conjunta de los Sistemas de Retiro que asegure el pago de pensiones de servidores públicos; disponer la política pública que guiará las conversaciones y representaciones del Gobierno de Puerto Rico, sus municipios, instrumentalidades y agentes en cualquier proceso de reestructuración, ajuste, mediación o negociación de las acreencias contra los sistemas de retiro, sus participantes y pensionados; proponer un modelo para la constitución y el trato de diferentes clases de acreedores en un Plan de Ajuste de Deuda que se conforme a esta política pública; enmendar los Artículos 2, 3, 5 y 9 de la Ley 2-2017, según enmendada, conocida como "Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico", enmendar el Artículo 1-104 y añadir un nuevo Artículo 1-111 a la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como "Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico, enmendar el Artículo 1.1 y añadir un nuevo Artículo 2.6 a la Ley 160-2013, según enmendada, conocida como "Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico" y añadir un nuevo Artículo 1-A y enmendar el Artículo 2 de la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, conocida como "Ley de Retiro de la Judicatura", para*



> *atemperarlas a la política pública establecida en esta Ley; enmendar los Artículos 1.4 y 1.6 de la Ley 106-2017, según enmendada, conocida como "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos"; enmendar el Artículo 2 de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como "Ley de Reclamaciones y Demandas contra el Estado", para crear una herramienta judicial para el cumplimiento de esta política pública; y para otros fines relacionados.*

Según dispuesto en la Ley 2-2017, conocida como la *Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal* ("Ley 2"), la AAFAF fue creada con el propósito de actuar como agente fiscal, asesor financiero y agente informativo del Gobierno de Puerto Rico, sus agencias, instrumentalidades, subdivisiones, corporaciones públicas y municipios, asumiendo así las responsabilidades de agencia fiscal y asesoría anteriormente ejercidas por el Banco Gubernamental de Fomento para Puerto Rico.

Además, la Ley 2-2017 establece a la AAFAF como el ente gubernamental encargado de la colaboración, comunicación y cooperación entre el Gobierno de Puerto Rico y la Junta de Supervisión y Administración Financiera para Puerto Rico ("JSF"). A tales fines, la Ley 2-2017 dispone que la AAFAF: (i) estará encargada de la supervisión, ejecución y administración del Plan Fiscal aprobado y certificado a tenor con PROMESA (ii) velará por que todos los entes del Gobierno de Puerto Rico cumplan con el Plan Fiscal y (iii) supervisará todos los asuntos relacionados con la reestructuración, renegociación o ajuste de cualquier obligación existente o futura, y los planes de contingencia para cualquier obligación existente o futura del Gobierno de Puerto Rico. Véase Artículo 5 de la Ley 2-2017.

Cónsono con lo anterior, el peritaje y área medular de competencia de la AAFAF radica en la asesoría financiera y funciones de agente fiscal, en lo concerniente a medidas que impacten el cumplimiento con: (i) el Plan Fiscal para Puerto Rico, según enmendado, certificado el 27 de mayo de 2020, por la JSF; (ii) planes certificados para las instrumentalidades públicas declaradas cubiertas bajo PROMESA; y (iii) el Presupuesto certificado por la JSF para el presente año fiscal.

Según se desprende de su Exposición de Motivos, el PC 120 establece como cuestión de política pública, un rechazo del Gobierno de Puerto Rico a cualquier esfuerzo que busque adelantar un Plan de Ajuste de Deuda propuesto por la JSF mientras este implique recortes a las pensiones presentes o futuras. Por otra parte, la medida eestablece las circunstancias bajo las que el Gobierno de Puerto Rico podría colaborar con la JSF para la pronta resolución del proceso de restructuración de la deuda pública bajo el Título III de PROMESA. A tales fines, la medida crea la "Ley para un Retiro Digno", la cual establece los parámetros de lo que constituye un Plan de Ajuste de Deuda modelo, predicado en una política pública de cero recortes a las pensiones de los empleados gubernamentales.

La referida política pública busca crear un fideicomiso para la administración conjunta de los Sistemas de Retiro del gobierno central, de los maestros y de la judicatura (en adelante, FACSiR o Fideicomiso[1]), el cual será financiado con las aportaciones individuales y patronales correspondientes a sus participantes y por "los ahorros producidos mediante un Plan de Ajuste de Deuda que proteja el 100% de los beneficios existentes para los pensionados y participantes al momento de radicarse la petición de quiebra el 3 de mayo de 2017". Además, el FACSiR será financiado por los ahorros adquiridos mediante la eliminación del servicio a la deuda de cualesquiera bonos gubernamentales emitidos en violación a las leyes y la Constitución de Puerto Rico.

Por otro lado, el PC 120 propone: (1) devolver al Fideicomiso los ingresos correspondientes a las aportaciones individuales e intereses dejados de devengar a través de los diversos programas de contribución definida implementados durante las pasadas dos décadas; (2) perseguir el derecho a recuperar de las instituciones financieras responsables por el asesoramiento y la emisión ilícita de deuda pública, aquellas cantidades que hayan devengado en ganancias, comisiones o ventas relacionadas con esa deuda impugnada; y (3) otorgar a los pensionados y participantes de los Sistemas de Retiro un derecho propietario sobre los activos e ingresos del fideicomiso para asegurar el pago de sus pensiones, de manera análoga a como han sido aseguradas las obligaciones de Corporación del Fondo de Interés Apremiante y el Banco Gubernamental de Fomento en sus reestructuraciones.

Por último, el PC 120 propone enmendar la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, la cual crea el "Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico"; la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, conocida como la "Ley de Retiro de la Judicatura"; y la Ley 160-2013, según enmendada, conocida como "Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico", a los fines de atemperarlas a la política pública antes expuesta.

De entrada, podemos apreciar que esta medida es en gran medida idéntica al P. de la C. 2434, discutido durante la 18va. Asamblea Legislativa. En aquella ocasión, el proyecto se quedó pendiente en Comité de Conferencia, luego de que no prosperaran las negociaciones entre los cuerpos legislativos para aprobar el mismo.

---

[1] El FACSiR es el nuevo Sistema de Retiro propuesto en esta medida, constituyendo un nuevo fideicomiso en el cual se consolidan los recursos y las obligaciones del Sistema de Retiro de los Empleados del Gobierno de Puerto Rico, según establecido por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada; el Sistema de Retiro para la Judicatura, creado mediante la Ley Núm. 12 de 19 de octubre de 1954, según enmendada; y el Sistema de Retiro para Maestros de Puerto Rico, según establecido por la Ley 160-2013. Además, mediante el FACSir, se centraliza la gestión y los gastos de administración de dichos sistemas, tras la confirmación de un Plan de Ajuste viable (según definido en la medida), el cual dará trato preferente a los Pensionados y Participantes de los Sistemas de Retiro.

Debido a la complejidad de la medida, pormenorizaremos la discusión de aquellas secciones que, a nuestro criterio, sean de mayor impacto, según su capítulo correspondiente.

## I.

## CAPÍTULO 2 - POLÍTICA PÚBLICA

### A.

Mediante el Art. 2.01, el PC 120 establece una política pública del Gobierno de Puerto Rico, sus Corporaciones Públicas, los Municipios y los Sistemas de Retiro, predicada, en lo pertinente, en:

> [E]l más absoluto y enérgico rechazo a cualquier Plan de Ajuste o Acuerdo de Reestructuración que reduzca, perjudique, amenace, subordine o empeore las pensiones, las anualidades, los beneficios y otras acreencias actuales de servidores públicos Pensionados y los Participantes de los Sistemas de Retiro, más de lo que ya fueron reducidas, perjudicadas, amenazadas o empeoradas previo a la radicación de la petición de quiebra el 3 de mayo de 2017.[2]

Además, la referida política pública rechaza cualquier Plan de Ajuste o Acuerdo de Reestructuración que pretenda utilizar la Sección 1129(b) del Código de Quiebras de Estados Unidos, para imponer recortes adicionales a servidores públicos Pensionados y Participantes de los Sistemas de Retiro; junto con cualquier Plan de Ajuste o Acuerdo de Reestructuración (i) cuya viabilidad o garantía de pago para el servicio de deuda requiera aumentar o establecer impuestos regresivos, tarifas u otros mecanismos que encarezcan los servicios de agua, luz, transportación, educación y demás servicios públicos esenciales para recaudar ingresos públicos del bolsillo de las familias trabajadoras y pensionadas en Puerto Rico; y (ii) cuya viabilidad o garantía de pago para el servicio de deuda requiera recortes a servicios públicos esenciales provistos por el Gobierno de Puerto Rico.

Por otro lado, el mismo artículo expresa que no se tomará acción alguna que permita la confirmación de cualquier Plan de Ajuste que sea incompatible con la política pública antes expuesta, en aras de asegurar que cualquier Plan de Ajuste propuesto por la JSF cumpla con los requisitos dispuestos en la Sección 314(b)(3) y la Sección 314(b)(5) de PROMESA. Cónsono con lo anterior, el sub inciso (o) del Artículo 2.01 del PC 120 dispone para la creación del FACSiR, el cual tendrá la encomienda de custodiar, recaudar, administrar y garantizar "los recursos destinados al pago de la totalidad de pensiones y beneficios a los que actualmente tienen derecho nuestros servidores públicos, según

---

[2] Art.2.01 inciso (b), del Proyecto de la Cámara Número 120, radicado el 5 de enero de 2021. 19na Asamblea Legislativa de Puerto Rico, 1era Sesión Ordinaria.

detallado en el Capítulo 3 [de la medida], de modo que permita proteger, capitalizar y garantizar a perpetuidad los derechos y beneficios de retiro para los Pensionados y Participantes cubiertos por esta Ley".

Si bien estamos de acuerdo con promover una política pública de cero recortes en las pensiones, no es recomendable que se desautorice a la agencia fiscal del Gobierno de Puerto Rico, que tiene a su cargo la interacción del Ejecutivo con PROMESA, el mantener relaciones y comunicaciones con la JSF. La amplia prohibición propuesta en la medida podría tener el efecto de descarrilar aquellas gestiones que la AAFAF lleva a cabo día a día como agencia fiscal del Gobierno ante la JSF, las cuales incluyen luchar todos los días por evitar un recorte a las pensiones.

B.

El Art. 2.02 enmienda el Artículo 2 de la Ley 2-2017, conocida como "Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (AAFAF)" ("Ley 2-2017"), a los fines de cambiar sus propósitos de (i) recuperar la confianza de los inversionistas para tener el acceso a los mercados de capital; (ii) abordar el desequilibrio presupuestario entre ingresos y gastos; (iii) negociar los términos de repago de la deuda; y (iv) desacelerar el crecimiento de la deuda futura y reducir la deuda actual, por objetivos cónsonos con la política pública esbozada en el PC 120.

En lo concerniente a las pensiones y los beneficios de participantes, pensionados y pre-retirados que son beneficiarios de los Sistemas de Retiro, el sub inciso (b) del Art. 2.02 establece que la AAFAF deberá actuar:

> (1) [P]rotegiendo la totalidad de las pensiones, las anualidades, los beneficios y demás acreencias de servidores públicos, ya sean participantes, pensionados o pre-retirados, contra cualquier Plan de Ajuste o Acuerdo con Acreedores que reduzca, perjudique, amenace, subordine o empeore las pensiones, las anualidades, los beneficios y otras acreencias actuales de servidores públicos Pensionados y los Participantes de los Sistemas de Retiro, más de lo que ya fueron reducidas, perjudicadas, amenazadas, subordinadas o empeoradas previo a la radicación de la petición de quiebra al amparo del Título III de PROMESA el 3 de mayo de 2017;

> (2) planificando la creación de un Fideicomiso para la Administración Conjunta de los Sistemas de Retiro (FACSiR) que sea custodio, recaude, administre y garantice adecuadamente los recursos destinados al pago de la totalidad de pensiones y beneficios conforme a los mismos derechos que tenían nuestros servidores públicos al momento de radicarse la petición de quiebra al amparo del Título III de PROMESA el 3 de mayo de 2017, de modo que permita proteger, capitalizar y garantizar a perpetuidad los

derechos y beneficios de retiro para los Pensionados y Participantes de los Sistemas de Retiro;

(3) alcanzando y preservando un coeficiente de financiación adecuada para el FACSiR que nunca sea menor de 1.2, mediante el establecimiento de un fideicomiso independiente con el cual el Gobierno de Puerto Rico esté contractualmente obligado a:

(A) transferir la totalidad de los Ingresos del FACSiR oportunamente y según convenido;

(B) no tomar alguna acción que menoscabe el derecho del fideicomiso a recibir y administrar la totalidad de los Ingresos del FACSiR; y

(C) no tomar alguna acción que limite o altere los derechos y la autonomía del fideicomiso para cumplir con el pago de las pensiones, las anualidades, los beneficios y demás acreencias vigentes para los Pensionados y Participantes de los Sistemas de Retiro al momento de presentarse la petición de quiebra al amparo del Título III de PROMESA el 3 de mayo de 2017, y de los Participantes y Pensionados del FACSiR.

Además, el PC 120 enmienda los propósitos, facultades y poderes de la AAFAF dispuestos en el Art. 5 de la Ley 2-2017, con el fin de disponer que dicha entidad estará facultada para colaborar, junto con el Gobernador de Puerto Rico y sus representantes, en la creación, ejecución, supervisión y fiscalización de cualquier Plan Fiscal (*Fiscal Plan*) y de cualquier Presupuesto (*Budget*), así como de cualquier Plan de Ajuste (*Plan of Adjustment*) o Acuerdo de Reestructuración (*Restructuring Support Agreement*), según dichos términos se definen en PROMESA, que se conformen a la Política Pública pautada por el PC 120. Sin embargo, se dispone que la AAFAF:

[N]o estará facultada para colaborar en la creación, ejecución, supervisión y fiscalización de cualquier Plan Fiscal (*Fiscal Plan*), Presupuesto (*Budget*), Plan de Ajuste de Deuda (*Debt Adjustment Plan*) ni Acuerdo de Reestructuración (*Restructuring Support Agreement*), según dichos términos se definen en PROMESA, que sean contrarios a la Política Pública dispuesta en el Artículo 2 de esta Ley.

Se prohíbe, además, que la AAFAF proponga, avale, cree, recomiende o adelante cualquier Plan de Ajuste o Acuerdo de Reestructuración que (i) sea contrario a la Política Pública establecida por el PC 120 (ii) cuya viabilidad o garantía de pago para el servicio de deuda requiera aumentar o establecer impuestos, tarifas u otros mecanismos que produzcan un efecto regresivo, encarezcan o disminuyan los recursos disponibles para los servicios de agua, luz, transportación, educación y demás servicios públicos esenciales; o (iii) que incluya un reconocimiento o repago de alguna parte de los Bonos

Impugnados[3], sin la debida adjudicación de un tribunal con competencia de que dichos bonos fueron emitidos de conformidad con las leyes y los reglamentos correspondientes, incluyendo la Constitución de Puerto Rico.

Como mencionamos anteriormente, la medida pretende enmendar la ley orgánica de AAFAF, para -básicamente- desautorizar a esta corporación pública a colaborar en la confección de planes fiscales, presupuestos o planes de ajuste a nombre del Gobierno de Puerto Rico. La Ley PROMESA brinda ciertas facultades a la JSF, y es la AAFAF quien representa a nuestro Gobierno para asegurarnos que las prioridades de los funcionarios electos (quienes cargan el peso de la voluntad del pueblo expresada en las urnas) sean atendidas. Recordemos que es la JSF quien acudió al foro federal en el pleito de Título III. Prohibir a la principal agencia fiscal del Gobierno participar o colaborar en las negociaciones y los procesos bajo PROMESA conllevaría entregarle a la JSF (cuyos miembros el Pueblo de Puerto Rico no eligió ni tiene la posibilidad de elegir), a los acreedores y al Tribunal el control total sobre los destinos de Puerto Rico, sin representación alguna del Gobierno democráticamente electo.

De igual forma, el PC 120 obliga a transferir la administración de los sistemas de retiro a la FACSiR, que es una entidad jurídica aparte de la Junta de Retiro creada por la Ley 106-2017. Fue dicha Ley la que garantizó las pensiones de nuestros jubilados, y le devolvió el control de sus aportaciones a los participantes. El fideicomiso propuesto en esta medida revierte este sistema, creando un nuevo ente legal para manejar los sistemas de retiro, en contravención con la política pública establecida hace cerca de 3 años por ley.

### Observaciones de Estricta Técnica Legislativa

Es preciso puntualizar, que, como parte del esfuerzo para expresarnos sobre la medida en cuestión, y dadas las circunstancias de que se quiere enmendar parte de nuestra ley orgánica, notamos unos errores de estricta técnica legislativa. La Resolución de la Cámara Número 161 (RC 161), según aprobada el 25 de enero de 2021, dispone expresamente en la Sección 13.12 respecto a las "Enmiendas a la Ley Vigente" lo siguiente:

> En aquellos casos en que la medida presentada enmiende alguna legislación vigente, las partes que se eliminan del texto, si algunas, aparecerán en letras ennegrecidas y entre llaves "[negritas]". Aquellas partes que se añadan al texto

---

[3] Definidos en el PC 120 como:
colectivamente, todas las emisiones de bonos realizadas por el Gobierno de Puerto Rico cuyas garantías jurídicas, cuantías garantizadas, fuentes de pago comprometidas o autorizaciones legales hayan sido retadas ante el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico o ante el Tribunal General de Justicia por parte del Gobierno de Puerto Rico, la JSAF, los comités oficiales de acreedores y retirados, cualesquiera otras Partes Interesadas, según dicho término es definido en el Código de Quiebras de Estados Unidos, o personas con legitimación activa para intervenir mediante la presentación de petición de quiebra, memorando de derecho, moción, demanda, o procedimiento adversarial al amparo de algún caso presentado y pendiente de resolución final bajo del Título III de PROMESA.

> ya vigente, si algunas, aparecerán en letra cursiva "*itálica*". Se utilizará letra tipo simple "letra" para aquellas partes del texto en que la intención legislativa sea mantenerlas inalteradas.

De una lectura al PC 120 tal cual fue radicado y referido a esta Honorable comisión, en lo pertinente a la intención legislativa de enmendar los Artículos 2, 3, 5 y 9 de la Ley 2-2017, según enmendada, conocida como "Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico", es pertinente señalar que no se cumple con lo dispuesto procesalmente en Reglamento "[q]ue gobernará los procedimientos legislativos y el gobierno interno de la Cámara de Representantes de Puerto Rico que regirán durante la Decimonovena (19na.) Asamblea Legislativa" tal cual se exponen en la RC 161. Señalamos lo anterior para que esta Honorable Cámara de Representantes tome la acción correspondiente respecto a estos asuntos, por las consecuencias en estricta técnica legislativa que puede tener.

### C.

El Art. 2.12 enmienda el Art. 1.4 de la Ley 106-2017, según enmendada, conocida como "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos"("Ley 106-2017"), a los fines de cambiar su política pública, enfatizando que la eliminación de las aportaciones patronales que se realizaban a los tres Sistemas de Retiro, así como la Aportación Adicional Uniforme, sería provisional; por lo cual la responsabilidad de pago directo de las mismas impuesta al Gobierno de Puerto Rico permanecería en vigor "mientras se dilucida en el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico la controversia en torno a las garantías jurídicas y autorizaciones legales, o falta de ambas, de las tres emisiones de bonos realizadas por la Administración de los Sistemas de Retiro (ASR) en el 2008". En ese sentido, se pretende revertir el sistema "Pay as you Go" establecido por la Ley 106-2017, en favor del antiguo sistema fideicomisario sustentado por aportaciones patronales.

Para poner en perspectiva la magnitud del déficit actuarial en torno al pago de las pensiones para quienes dieron su vida productiva al servicio público, mencionamos que el Sistema de Retiro de Empleados del Gobierno de Puerto Rico cuenta con aproximadamente 120,000 participantes activos y 125,000 retirados y beneficiarios, a los cuales se les desembolsan aproximadamente $1.7 mil millones anuales en pensiones. El déficit actuarial de dicho sistema es aproximadamente $38 mil millones.[4]

---

[4] Por otro lado, el Sistema de Retiro para Maestros cuenta con aproximadamente 38,000 participantes activos y 42,000 retirados y beneficiarios, a los cuales se les desembolsan aproximadamente $800 millones anuales en pensiones. El

Ante ese cuadro, y para atender la crisis humanitaria que hubiese surgido si los pagos a nuestros pensionados se veían interrumpidos como consecuencia de la falta de activos líquidos del Sistema de Retiro, se aprobó la Ley 106-2017. Dicho estatuto adoptó un esquema de *"pay-as-you-go"* mediante el cual las agencias, corporaciones públicas, los municipios y las demás entidades consideradas patronos pagan un cargo "Pay Go" que es equivalente a la cantidad en efecto pagada a los Pensionados y Beneficiarios provenientes de cada entidad cubierta. Por su parte, el Fondo General garantiza que los retirados continúen recibiendo sus pagos como de costumbre. De esa forma, se creó un andamiaje legal nuevo que adelanta el bienestar y los mejores intereses de los retirados, pero también de los participantes activos que se retirarán en un futuro, cuyas aportaciones se están segregando de manera prospectiva conforme a la Ley 106-2017.

Con la adopción de dicho estatuto se adelantó una política pública que busca defender a los más vulnerables. A partir de la aprobación de este nuevo esquema se separan todos los años aproximadamente $2.3 mil millones para el pago de las pensiones de nuestros retirados. Naturalmente, ante la virtual insolvencia de los sistemas de retiro, para poder dirigir estos fondos al pago de las pensiones, el Gobierno ha realizado, y continúa realizando, múltiples ajustes en otras áreas del quehacer gubernamental. De no haberse tomado esta medida urgente, las consecuencias en las vidas de miles de familias puertorriqueñas hubiesen sido devastadoras.

## II.

## CAPÍTULO 3 - FIDEICOMISO PARA LA ADMINISTRACIÓN CONJUNTA DE LOS SISTEMAS DE RETIRO

Según se desprende de su título, este Capítulo se enfoca en el diseño y creación del FACSiR, el cual estará compuesto por el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico, creado por la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, el Sistema de Retiro para los Maestros de Puerto Rico, creado por la Ley 160-2013, según enmendada, y el Sistema de Retiro para la Judicatura del Estado Libre Asociado de Puerto Rico, creado por la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, junto con todos sus Programas y Planes. Se dispone, además, que los poderes y facultades conferidos a los tres Sistemas de Retiro en sus respectivas leyes habilitadoras serán consolidados en el FACSiR, aunque compartidos durante el período de transición.

---

déficit actuarial de ese sistema es de aproximadamente $18 mil millones. Finalmente, el Sistema de Retiro para la Judicatura tiene aproximadamente 370 participantes activos y 490 retirados y beneficiarios. El déficit actuarial de este sistema se ha estimado en $700 millones.

10

En esencia, el FACSiR existirá por virtud de su ley orgánica una vez legislada la autorización de un Plan de Ajuste, modelado conforme a lo dispuesto en el Capítulo 4 del PC 120 y:

> [A]sumirá todas las obligaciones legítimas de los Sistemas de Retiro, incluyendo, sin que se entienda como una limitación, la de pagar las pensiones, las anualidades, los beneficios y demás acreencias de servidores públicos pensionados y participantes de los Sistemas de Retiro, sin menoscabo alguno de las estructuras de pensiones, anualidades, beneficios, acreencias y responsabilidades que estuvieran vigentes previo a la radicación de la petición de quiebra bajo el Título III de PROMESA el 3 de mayo de 2017.

Por su parte, el Art. 3.03 dispone, en resumidas cuentas, que el Gobierno de Puerto Rico se comprometería a estar contractualmente obligado con el FACSiR y con cualquier Participante o Pensionado de los Sistemas de Retiro o el FACSiR, a no tomar cualquier acción que menoscabe, limite o altere tanto (i) el derecho del FACSiR a recibir los ingresos otorgados mediante la medida (sobre los cuales tendría plena y exclusiva titularidad) y distribuir los mismos a sus Participantes, como (ii) los derechos, remedios o colaterales de dichos Participantes, bajo cualquier Plan de Ajuste modelado conforme dispuesto en el Capítulo 4 de la medida. Además, el Art. 3.05 establece un gravamen estatutario sobre las pensiones, anualidades y beneficios de los Participantes de los Programas de Retiro, tras aprobarse el referido Plan de Ajuste; preservándose los beneficios existentes previo a la petición de quiebra presentada por el Gobierno de Puerto Rico el 3 de mayo de 2017 en su totalidad.

Como señalamos anteriormente, este nuevo andamiaje es diametralmente opuesto a la política pública establecida en la Ley 106-2017, la cual ha permitido pagar las pensiones de nuestros servidores públicos durante los pasados tres años.

Por otro lado, el Art. 3.10 propone obligar contractualmente al Gobierno a reestablecer los beneficios marginales eliminados a través de los últimos años, una vez se determine que ello "no representará un riesgo de solvencia ni limitará la capacidad del FACSiR para sostener el Coeficiente de Financiación Adecuada (según definido en la medida)". Además, dichos beneficios se expandirían "para incluir empleados públicos transitorios, empleados públicos irregulares, empleados de empresas del sector privado contratadas por el Gobierno de Puerto Rico, el FACSiR y cualesquiera empresas del sector privado sean contratadas por el FACSiR, y cualesquiera empresas del sector privado cuenten con otras inversiones, subvenciones, exenciones, concesiones o participación del Gobierno de Puerto Rico […]".

Por otra parte, el Art. 3.13, a su vez, obliga contractualmente al Gobierno a transferir las siguientes cuantías al Fideicomiso, en concepto de restitución de aportaciones individuales y reconocimiento de daños por intereses dejados de devengar bajo el Programa de Cuentas de Ahorros para el Retiro.

- dos mil sesenta y tres millones, trescientos setenta y seis mil (2,063,376,000) dólares por concepto de restitución de las aportaciones individuales retenidas y no remitidas a las cuentas individuales de los Participantes de programas de aportaciones definidas desde el 1 de enero de 2000 hasta la radicación de la petición de quiebra el 3 de mayo de 2017.
- doscientos treinta y dos millones, ciento sesenta y tres mil (232,163,000) dólares, en concepto de un crédito para compensar por los intereses compuestos dejados de devengar en las cuentas individuales de los Participantes de estos programas.
- Mil cuatrocientos millones (1,400,000,000) de dólares consignados en la Resolución Conjunta Número 46 del 27 de julio de 2019;
- ochocientos noventa y cinco millones, quinientos treinta y nueve mil (895,539,000) dólares, con cargo a los ingresos del Fondo General, en exceso a la cuantía incluida en el Presupuesto Certificado para el año fiscal 2018-2019 y el año fiscal 2019-2020, depositados en los fondos no comprometidos del Tesoro Estatal

Sobre esta particular, destacamos que el Plan de Ajuste presentado por la JSF dentro del proceso de restructuración de la deuda pública contempla un desembolso aproximado de $1.4 mil millones de dólares por concepto de restitución de aportaciones individuales requeridas por el "Sistema 2000". Además, habilita la creación de un fideicomiso para garantizar los beneficios de los pensionados y que los malos manejos del pasado no vuelvan a ocurrir.

### III.

### CAPÍTULO 4 - PLAN DE AJUSTE

En cuanto al Plan de Ajuste propuesto por este Capítulo, destacamos que PROMESA crea a la JSF con el propósito expreso de proveer los mecanismos mediante los cuales las entidades cubiertas logren la responsabilidad fiscal y el acceso a los mercados de capital.[5] Por otro lado, PROMESA establece que la JSF es el ente con la potestad *exclusiva* para someter un Plan de Ajuste ante el Tribunal que tramita el proceso de restructuración de

---

[5] SEC. 101. FINANCIAL OVERSIGHT AND MANAGEMENT BOARD.
   (a) PURPOSE.—The purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets.

deudas al amparo del Título III. Además, le compete a la JSF presentar dicho Plan de Ajuste, si determina a su sola discreción que el mismo cumple con el Plan Fiscal Certificado.[6] Por lo tanto, cualquier disposición estatal que provea para el desarrollo o presentación de un Plan de Ajuste pudiera tener el efecto de ser incompatible con disposiciones de PROMESA y pudiera ser impugnado por el ente local creado por dicho estatuto federal.

Debemos recordar que, en cuanto al proceso de presentación del Plan de Ajuste, PROMESA provee para que el mismo quede sujeto a la aprobación de la Corte de Título III, quien tendrá la potestad de confirmar el mismo, sujeto al cumplimiento de ciertas condiciones.

## IV.

## CONCLUSIÓN

Deseamos reafirmar nuestro apoyo a todo esfuerzo para proteger los beneficiarios de los sistemas de retiro del Gobierno de Puerto Rico, personas que dieron su vida productiva en beneficio del Pueblo de Puerto Rico. En el servicio público estamos llamados a no tomar decisiones que sean hijas de la irreflexión, y que puedan tener como efecto, intenciones opuestas al bienestar que todos deseamos para nuestro pueblo. Debe quedar meridianamente claro para el récord legislativo; la política pública del Gobernador Pedro Pierluisi y esta Administración es; no más recortes a las pensiones como resultado de los procesos de Título III.

---

[6] SEC. 104. POWERS OF OVERSIGHT BOARD.
(j) RESTRUCTURING FILINGS.—

(1) IN GENERAL.—Subject to paragraph (3), before taking an action described in paragraph (2) on behalf of a debtor or potential debtor in a case under title III, the Oversight Board must certify the action.
(2) ACTIONS DESCRIBED.—The actions referred to in paragraph (1) are—
(A) the filing of a petition; or
(B) **the submission or modification of a plan of adjustment.**
(3) CONDITION FOR PLANS OF ADJUSTMENT.—The Oversight Board may certify a plan of adjustment **only if it determines, in its sole discretion, that it is consistent with the applicable certified Fiscal Plan.**

SEC. 312. FILING OF PLAN OF ADJUSTMENT.
EXCLUSIVITY.—**Only the Oversight Board**, after the issuance of a certificate pursuant to section 104(j) of this Act, **may file a plan of adjustment of the debts of the debtor.**

SEC. 315. ROLE AND CAPACITY OF OVERSIGHT BOARD.
(a) ACTIONS OF OVERSIGHT BOARD.—For the purposes of this title, the Oversight Board may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including—

(1) filing a petition under section 304 of this Act;
(2) submitting or modifying a plan of adjustment under sections 312 and 313; or
(3) otherwise generally submitting filings in relation to the case with the court.

(b) REPRESENTATIVE OF DEBTOR.—The **Oversight Board in a case under this title is the representative of the debtor** (énfasis suplido).

Ahora bien, el PC 120 versa sobre asuntos sumamente complejos que actualmente están ante la consideración del Tribunal Federal como parte de los procesos de reestructuración de deuda. Como se sabe, dichos procesos ya entran en su cuarto año. No obstante, la Jueza Laura Taylor Swain ordenó a la JSF que en o antes del 10 de febrero de 2021, presente a ante su consideración un Plan de Ajuste enmendado o una hoja de términos para un futuro Plan de Ajuste. En su momento, esta Asamblea Legislativa podría ser llamada a expresarse en cuanto al contenido de un Plan de Ajuste enmendado. Ante ello, muy respetuosamente entendemos que las decisiones que afecten dicho proceso deben aguardar a que se presente un Plan de Ajuste enmendado, para entonces ser reevaluadas a la luz de las nuevas circunstancias que se presenten.

De otra parte, el pasado 29 de enero de 2021, la JSF se expresó sobre el PC 120. En dicha comunicación, la JSF indicó que la medida era inconsistente con el Plan Fiscal Certificado y múltiples disposiciones de PROMESA ya que, según la JSF, intenta interferir con los poderes exclusivos otorgados a la JSF para servir como el representante exclusivo de los deudores de Título III y formular, proponer y perseguir los respectivos Planes de Ajuste. A su juicio, la JSF entiende que dicha medida, violaba diversas disposiciones de PROMESA, incluyendo las Secciones 104(j)(1), 104(j)(3) y 312 (a). Así, la postura formal de la JSF es que esta medida no puede ser aprobada ya que sería inconsistente con el Plan Fiscal. Dicha comunicación fue remitida a los presidentes de las cámaras legislativas, así como al Gobernador de Puerto Rico.[7]

En vista de lo anterior, estimamos que, de continuar el trámite legislativo de esta medida, según redactada, el estatuto enfrentaría serios escollos si es retado por la JSF en los foros judiciales pertinentes. Precisa recordar que la Jueza Laura Taylor Swain ha decidido previamente que, bajo PROMESA, el tribunal federal ha permitido que la JSF invalide legislación local que sea inconsistente con el plan fiscal certificado.[8]

Si este Honorable cuerpo aprobase esta medida, según redactada, durante esta sesión, muy respetuosamente la AAFAF entiende que la Ley enfrentará retos irremediables si es retada por la JSF en los foros judiciales pertinentes. Insistimos en la comunicación recibida, tan reciente como la semana pasada, en la cual la JSF dejó saber que su postura formal es que esta medida no debe ser aprobada ya que sería inconsistente con el Plan Fiscal. Por ende, si esta medida es aprobada según redactada, muy probablemente sea objeto de litigio en el Tribunal Federal.

Además, es menester señalar que tan reciente como el 23 de diciembre de 2020, la Jueza Swain emitió una Opinión y Orden mediante la cual ordenó al Gobierno de Puerto Rico

---

[7] Véase Anejo.
[8] *Véase* determinación el caso sobre la Ley 29-2019, *The Fin. Oversight & Mgmt. Bod. For Puerto Rico v. Vázquez Garced (In re The Fin. Oversight & Mgmt. Bd. For Puerto Rico)* Adv. Proc No. 19-00393 (LTS), 2020 WL 1873380, en *7 (D.P.R. Apr. 15, 2020).

14

la paralización de la implantación y efectividad de cinco (5) estatutos recientemente aprobados por la Asamblea Legislativa de Puerto Rico.[9] Así pues, ante los claros precedentes del Tribunal de Título III, medidas como esta no pueden ser implementadas por nuestro gobierno sin el aval de la JSF. De lo contrario, se desembocaría en pleitos en los cuales el Gobierno de Puerto Rico tendrá que incurrir en gastos significativos en representación legal y que, como hemos discutido, podrían ser conflictivos con precedentes claros del Tribunal de Título III.

En conclusión, apoyamos el principio de cero recortes a las pensiones que aparenta permear toda la medida bajo análisis, pero nos vemos impedidos de avalar el P. de la C. 120 según redactado, por los fundamentos antes expresados.

Quedamos a su disposición para contestar cualquier pregunta sobre el particular.

Cordialmente,

Lcdo. Omar J. Marrero Díaz
Director Ejecutivo

---

[9] "Opinion and Order Denying the Government's Motions for Summary Judgment and Granting in Part the Oversight Board's Motions for Summary Judgment") en el caso PROMESA Title III No. 17 BK 3283-LTS, Adv. Proc. No. 20-080-LTS, Adv. Proc. No. 20-082-LTS. Dicha Opinión y Orden impactó los siguientes estatutos:
- Ley Núm. 82 - 2019 - "Ley Reguladora de los Administradores de Beneficios y Servicios de Farmacia"
- Ley Núm. 138 - 2019 - Para añadir un Artículo 31.031 y un Artículo 31.032 al Capítulo 31 de la Ley Núm. 77 de 1957, Código de Seguros de Puerto Rico
- Ley Núm. 181 - 2019 - "Ley de Ajuste Salarial para los Miembros del Negociado del Cuerpo de Bomberos de Puerto Rico"
- Ley Núm. 176 - 2019 - Para enmendar la Ley Núm. 8 de 2017, Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de P.R. y la Ley Núm. 26 de 2017, Ley de Cumplimiento con el Plan Fiscal.
- Ley 47-2020 que enmienda la Ley 60-2019, según enmendada, conocida como "Código de Incentivos de Puerto Rico".