# Exhibit 14



**FINANCIAL OVERSIGHT & MANAGEMENT BOARD FOR PUERTO RICO**

David A. Skeel, Jr.
Chair

Members
Andrew G. Biggs
Arthur J. González
Antonio L. Medina
John E. Nixon
Justin M. Peterson
Betty E. Rosa

Natalie A. Jaresko
Executive Director

<u>**BY ELECTRONIC MAIL**</u>

March 25, 2021

Hon. Juan Zaragoza
Finance, Federal Affairs & Oversight Board Committee
Senate of Puerto Rico
El Capitolio
San Juan, Puerto Rico

Dear Senator Zaragoza:

We write in response to your letter dated March 16, 2021 in which you request certain information regarding House Bill 120 ("HB 120" or "the Bill") to calculate the funding ratio for the retirement trust created by the Bill ("FACSiR"). You explained you made this request because you believe the information provided by the Bill's proponents is insufficient to enable you to conduct a meaningful analysis of the financial impact of the Bill. Your letter also requests the Oversight Board to comment on the differences between (a) the assumptions upon which the proponents of the Bill have based their conclusion that FACSiR would be adequately funded to support the pension system HB 120 establishes, and (b) the Oversight Board's March 4, 2021 presentation of its own analysis. The Oversight Board appreciates the outreach from the Finance, Federal Affairs & Oversight Board Committee ("Senate Finance Committee") and remains deeply committed to working with the Government of Puerto Rico to ensure adequate funding for its pension systems.

As a preliminary matter, HB 120 is fundamentally flawed because it purports to dictate the treatment of billions of dollars of Commonwealth bond debt, and would prevent the Commonwealth government from taking any action to support a plan of adjustment that alters that treatment. Therefore, HB 120 seizes control over the Commonwealth's debt restructuring and usurps the exclusive power of the Oversight Board and the Court to confirm a plan of adjustment under PROMESA § 312. Because the Oversight Board has concluded that this would impair or defeat the purposes of PROMESA, the Governor and Legislature are prohibited from enacting HB 120 under PROMESA § 108(a)(2).

Regarding the House proponents' model, as we have previously discussed with your Committee staff, the Oversight Board's analysis shows that, even assuming conditions most favorable to the

Senator Zaragoza
March 25, 2021
Page 2 of 3

proponents of the Bill, FACSiR will become insolvent no later than 2053, and likely much sooner. The proponents of the Bill make several critical errors in concluding the proposed new pension trust will adequately fund the reinstated retirement benefits and that HB 120 would produce net Cash Flow Savings over the existing PayGo structure. For example:

- Most importantly, the House proponents' analysis relies on speculative and unrealistic funding sources for FACSiR.
    - The proponents' model assumes "Damages Awarded from Underwriters in Avoidance Suits" of $1.4 billion, which presumably relates to judgments from lawsuits brought by the Special Claims Committee of the Oversight Board. This assumption is highly speculative, at best. It is improper to assume this funding source will be available as it requires a favorable litigation outcome.
    - The Bill assumes without foundation that the Commonwealth can simply redirect a substantial portion of pre-petition debt service payments on "Contested Bonds" to fund FACSiR. The Bill fails to recognize the "Contested Bonds" could be deemed valid after litigation, in which case creditors would likely receive a reasonable level of recovery and further reduce the funds available to fund FACSiR. The Oversight Board's proposed Plan of Adjustment settles this dispute by imposing a large discount on all bonds, partly to settle the validity issues and partly to settle their claims to enforceable priorities in Title III. HB 120 imprudently assumes total victory over the "Contested Bonds" on all issues despite the legitimate risk of an adverse litigation outcome. Even assuming a total litigation victory over the "Contested Bonds," HB 120 would allocate 100% of that debt service to FACSiR, with no discount, effectively leaving the Commonwealth with no debt relief after spending four years in Title III.
    - The House proponents' model assumes initial funding from "Integration of Hybrid Accounts Employee Contributions" of $2.1 billion and "Recovery of Accumulated Notional Interest for Employee Contributions" of $200 million. It appears that these funding sources relate to money set aside to repay System 2000 participants whose contributions were used to pay benefits for participants under the Employees Retirement System ("ERS") prior to the petition date. Assuming that this is in fact the intent, this amount is not realistic as only $1.5 billion is set aside in the Plan of Adjustment, and only for reimbursement to System 2000 participants. Further, these funds were set aside to reimburse these participants for past mistakes of using current employee contributions to pay current retirement benefits.
- The discrepancies between the proponents' model and the Oversight Board's model are not due to the Oversight Board's model lacking a rate of return for FACSiR.

- The Oversight Board's analysis includes a similar rate of return on FACSiR as the 4.14% assumed in the proponent's model.

- The PayGo payments in the House proponents' model are based on old information that, importantly, erroneously fails to account for payment of benefits that would commence as soon as HB 120 is implemented, related to continued participation in, and the addition of new entrants to, the System 2000 program and the hybrid benefit plan under the Teachers Retirement System ("TRS"), even though HB 120 does not require FACSiR to be fully funded before such benefit payments commence. Including these benefits necessarily increases the cost of HB 120 and would likely produce asset levels consistent with the Oversight Board's analysis, which result in the FACSiR becoming insolvent.

- While the House proponents' model does not include incremental costs for shifting participants in the Act 106-2017 plan back into the hybrid plans under the ERS and TRS, it does include the value of their employee contributions as an assumed input to the plan assets. HB 120 would repeat the past failed policy of using current employee contributions to pay benefits to current retirees, which is a critical mistake that will only accelerate the proposed new system's insolvency.

- The proponents' model assumes that funding of FACSiR starts in 2020, but does not explain how expected funding could be available for the years 2020 and 2021, as at this point HB 120 could not be implemented until deep into Fiscal Year 2021.

- The proponents' model assumes in column E that FACSiR would receive 50% of debt service from defined "Uncontested Bonds." The Oversight Board understands that HB 120 provides that FACSiR would only receive 42% of debt service from "Uncontested Bonds," and it is unclear how they arrived at this 50% figure.

We are, as always, available to meet and discuss these issues, especially when resolving them is critical to ensuring the Commonwealth achieves fiscal stability and access to capital markets. We look forward to continuing to work together for the benefit of the people of Puerto Rico.

Sincerely,

*Natalie A. Jaresko*

Natalie A. Jaresko

CC: Mr. Nick Pastrana