# Exhibit 15

GOVERNMENT OF PUERTO RICO
PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY

Section 204(a) Certification for Act 7-2021
Enacted on June 9, 2021

---

I.     Introduction

This document should be considered for all intents and purposes a submission under Section 204(a) of PROMESA, 48 U.S.C. §2144(2)(B).

II.     Purpose of Legislation

Act 7-2021 ("Act 7"), officially titled the "Dignified Retirement Act" (*Ley para un Retiro Digno*"), establishes, among others, a public policy that rejects any efforts seeking to advance a Plan of Adjustment ("POA") proposed by the Financial Oversight and Management Board for Puerto Rico ("Oversight Board" or "FOMB"), if such POA includes cuts to present or future pensions.  Also, Act 7 defines the circumstances under which the Government of Puerto Rico ("Government") can collaborate with the Oversight Board for the prompt resolution of the public debt restructuring process under Title III of PROMESA. To that end, this new legislation sets forth the parameters of a model POA in accordance with the public policy of zero pension cuts to Government employees.

In addition, Act 7 prohibits the Government from cooperating with the Oversight Board if the POA includes pension cuts, and orders the Government to draft and submit to the Legislative Assembly a specific POA, as defined in Chapter 4 of the Act. Moreover, Act 7 orders the creation—under certain circumstances—of a pension trust for the joint administration of the Retirement Systems ("FACSiR"), and challenges the validity of certain bond issuances.

As explained in the Statement of Motives, the primary reason for enacting Act 7 is to establish mechanisms that ensure the payment of present pensions to retirees, as well as the future pensions of active government employees, while avoiding to continue penalizing and imposing cuts on the already affected government workforce. In support of said public policy, the Statement of Motives also outlines the context in which the POA has been developed, and subsequently amended as of May 11, 2021, maintaining the proposal to freeze

Roberto Sánchez Vilella (Minillas) Government Center, De Diego Ave. Stop 22, San Juan, PR 00907 I PO Box 42001, San Juan, PR 00940-2001

787.722.2525          contact@aafaf.pr.gov          aafaf.pr.gov

Section 204(a) Certification
Act 7-2021

benefits for participants of the Retirement Systems and a pension reduction of 8.5% applicable to beneficiaries that receive more than $1,500 per month.

Chapter 1 of Act 7 includes several general provisions, declares a state of financial emergency for the Government and the Retirement Systems, and provides certain definitions of terms used throughout the Act. Among said general provisions, Article 1.02 declares the primacy of this Act over any other state law and, in general, renders without effect any law or provision inconsistent with Act 7. Article 1.03 states that the provisions of Act 7 shall apply to the Government, public corporations, municipalities, and any other entity or public instrumentality created under the laws and the Constitution of the Commonwealth of Puerto Rico.

Pursuant to the definitions of the terms included in Article 1.05, a specific Trust is created for the joint administration of the Retirement Systems. Through this trust, the resources and obligations of the Retirement Systems would be consolidated, and their management and administration expenses would be centralized, after the confirmation of a viable, fair and equitable adjustment plan for the people and for the beneficiaries and participants of the Retirement Systems. Additional provisions pertaining to the FACSiR are included below in the discussion of Chapter 3.

Chapter 2 of Act 7 establishes as public policy that rejects any efforts seeking to advance a POA proposed by the Oversight Board if such POA includes present and future pension cuts. Also, this public policy rejects any POA or Restructuring Agreement that intends to use Section 1129 (c) of the Federal Bankruptcy Code to increase or establish regressive taxes that requires cuts to essential public services.

Furthermore, Chapter 2 states that no action may be taken by the Government to allow the confirmation of any POA that is incompatible with the public policy set forth in Act 7. Lastly, the public policy proposed in Chapter 2 of Act 7 grants pensioners and participants of the Retirement Systems a proprietary right over the assets and income of FACSiR to ensure the payment of their pensions.

Chapter 3 of Act 7 mandates the creation of FACSiR –under certain conditions-for the purpose of restructuring the public retirement systems under a new and sole defined benefit system. As part of the creation of the FACSiR, all powers and faculties of the ERS, the TRS and the JRS, (together, the "Retirement Systems"), are intended to form part of this new structure that will operate with complete

2

Section 204(a) Certification
Act 7-2021

independence from the Government, with its own Board of Directors as governing body.

FACSiR will assume the legitimate obligations of the Retirement Systems, including, without any limitation: pension payments, annuities, benefits and other claims from public servants, pensioners and participants of the Retirement Systems, without affecting prevailing pension structures, annuities, benefits, claims and responsibilities that were in place before submitting the bankruptcy petition under Title III of PROMESA on May 3rd, 2017.

Articles 3.11 and 3.12 establish that individuals will contribute in accordance to their salary, pursuant to progressive valuation. These individual contributions should produce to the FASCiR the equivalent of 10% of the average value of the ordinary expenses of the Government. Also, the Government will contribute in accordance with the salary of the employees at the time of withholding their individual contribution, and will submit to the FASCiR the employer contribution, which will be calculated taking into consideration progressive valuations.

Lastly, Article 3.13 also requires the Government to allocate the following quantities to the FASCiR as restitution for the individual contributions and as a recognition of the damages caused by the loss of interest under the Retirement Savings Account Program. These quantities can be described as follows:

- $2,063,376,000.00 as restitution for individual contributions withheld and not remitted to the individual accounts of Participants from defined contribution programs from January 1st, 2000 through the submission of the Title III petition on May 3rd, 2017;
- $232,163,000.00 to compensate for interest that should have been earned by individual contributions pursuant to System 2000;
- $1,400,000,000.00 allocated through Joint Resolution 46 of June 27th, 2019;
- $895,539,000.00 originating from unobligated resources from the Certified Budget for FY19 and FY20.

Chapter 4 of Act 7 creates an alternative POA, states the priorities for the repayment of claims and creditors, according to the classes defined therein, the caps and levels of repayments, and other conditions of the POA for the Government of Puerto Rico, its public corporations and municipalities. Article 4.01 of Act 7 establishes classes of creditors and categories of claims in

3

Section 204(a) Certification
Act 7-2021

accordance with the Public Policy of Act 7, namely: (1) Claims on Contested Bonds, (2) Claims on Non-Contested Bonds, (3) Claims of Pensioners and Participants of the Retirement Systems, and (4) General Claims of Unsecured Creditors. Also, Article 4.01 requires the implementation of an alternative POA that must comply with Act 7's classification of bonds and creditors; provides no recovery for Claims on Contested Bonds; limits recoveries for Claims of Non-Contested Bonds; leaves Claims of Pensioners and Participants of the Retirement Systems unimpaired; redirects portions of pre-petition debt service payments of Contested Bonds to fund FACSiR, among other conditions.

According to the public policy established in Act 7, as it relates to the POA, Article 2.01 states that the Government: (1) rejects any POA or debt restructuring agreement that reduces or worsens the pensions, annuities, benefits and other current credits of public servants, Pensioners and Participants of the Retirement Systems; (2) rejects any POA that seeks to use Section 1129(b) of the United States Bankruptcy Code to impose additional cuts on Pensioners and Participants of Retirement Systems; (3) rejects any POA whose viability or guarantee of payment for debt service requires increasing or establishing regressive taxes, rates or other mechanisms that cause water, electricity, transportation, education and other essential public services to be more expensive; (4) rejects any PAO whose viability or guarantee of payment for the debt service requires cuts to essential public services provided by the Government of Puerto Rico, its public corporations and municipalities, including, without limitation, education, health, environmental protection, housing, sanitation and solid waste management, security and emergency management, sewage and water processing, electrical energy, road infrastructure and mass transportation; (5) states that no action may be taken that will allow the confirmation of any POA that is incompatible with the provisions of Act 7, including, without limitation, the enactment or repealing of legislation and regulations, or any necessary authorization; and (6) will guarantee that no funds and resources designated for Title III activities and procedures of the Government, its public corporations and municipalities, shall be used in relation to any POA incompatible with the provisions of Act 7.

In addition, Article 4.02 of Act 7 prevents the Government of Puerto Rico from designing, proposing, advancing or implementing any POA that requires the use of the mechanism provided in Section 1129(b) of the Bankruptcy Code to the detriment of any of the classes of creditors that group the claims of Pensioners and Participants of the Retirement Systems. In other words, this Article prohibits governmental cooperation with the Oversight Board for formulating and implementing any POA that fails to comply with Act 7.

Section 204(a) Certification
Act 7-2021

### III.    Analysis and Assumptions

Act 7 appears to be contrary to several provision of PROMESA. Specifically, Act 7 could be interpreted as contrary to Section 312 of PROMESA insofar as it could be read to interfere with the powers granted to the Oversight Board as the sole entity authorized to develop and submit a POA to the Title III Court. In addition, it is the responsibility of the Oversight Board to certify said POA, if it determines in its sole discretion that it complies with the applicable Certified Fiscal Plan. Hence, by requiring the development of an alternative that must comply with the new public policy established in Chapter 2 of Act 7, and by amending Act 2-2017 to assign to AAFAF the duty and authority to develop this alternative POA consistent with said public policy, Act 7 could be interpreted as contrary to Section 312 of PROMESA.

Also, several provisions of Act 7 could be interpreted as preventing the Oversight Board from  discharging its duties by barring government cooperation with the Oversight Board. Act 7 also amends AAFAF's Organic Act to, in essence, prevent collaboration in the preparation of fiscal plans, budgets or plans of adjustments on behalf of the Government if these documents are contrary to the public policy established in Act 7. This ban on implementation or collaboration in relation to any POA that departs from the model POA established in Act 7 could be interpreted as contrary to Section 108(a)(2) of PROMESA.

Some provisions of Act 7 could be interpreted as modifying public debt without prior Oversight Board consent. In that sense, claims of Pensioners and Participants of the Retirement Systems under the proposed POA, as set forth in Article 4.01 of Act 7, must receive recovery through the establishment of the FACSiR. This could be interpreted to be in conflict with Section 207 of PROMESA, and the Certified Fiscal Plan, since it modifies billions of dollars of debt to retirees without the approval of the Oversight Board.

Finally, Act 7 could also be interpreted to be in violation of the Commonwealth Certified Fiscal Plan. In that sense, Act 7 discards the pension reform measures contemplated by the Fiscal Plan certified on April 23, 2021 ("Certified Fiscal Plan"), through the amendments to the previously mentioned laws that established the Retirement Systems.

For purposes of this 204 Certification, the Government has assumed the potential cost of implementation of some provisions of Act 7. For example, it

Section 204(a) Certification
Act 7-2021

assumed that the FACSiR is to be created, even though some provisions of Act 7 could be interpreted to mean that the creation of FACSiR is contingent upon certain conditions being met, including the invalidation of Contested Bonds, as defined in the Act, and the approval of the POA proposed in Chapter 4 of the Act.

IV.    Fiscal Impact

Based on the analysis and assumptions discussed above, and as certified by the Department of Treasury and the OMB, the implementation of Chapter 2 has a significant yet, at this time, undetermined impact on the expenditures of the Government for the pertinent fiscal years covered by the Certified Fiscal Plan, particularly, to the extent that Chapter 2 of Act 7 discards the pension reform measures contemplated by the Fiscal Plan and establishes a new pension system that requires an initial funding not contemplated in the FY21 Certified Budget. **See Attachments A and B**. Therefore, implementation of some provisions of Act 7 might require reprogramming budgeted resources since the current Certified Budget and the Oversight Board's proposed budget for FY22 do not contemplate resources for the retirement structure established in Act 7.

It should be noted that the Certified Fiscal Plan states that restructuring the pension systems will achieve $198 million in savings from FY2022 to FY2026. Under Section 20.2 of the 2021 Fiscal Plan for Puerto Rico at 274. Therefore, the Government can assume, for purposes of this Section 204 Certification, that discarding these measures, as proposed in Act 7, would imply a fiscal impact equivalent to or greater than the savings projected of $198 million.  In addition, Chapter 3 of Act 7 requires an allocation of $4.5 billion not contemplated in the FY2021 Certified Budget (and not previously disbursed pursuant to previous Joint Resolutions):

- $2,063,376,000.00 for restitution concept of individual contributions withheld and not remitted to individual accounts of Participants from defined contribution programs since January 1st, 2000 through the submission of the Title III petition on May 3rd, 2017;
- $232,163,000.00 to compensate for interest that should have been earned by individual contributions pursuant to System 2000;
- $1,400,000,000.00 allocated through Joint Resolution 46 of June 27th, 2019;
- $895,539,000.00 originating from unobligated resources from the Certified Budget for FY19 and FY20.

For purposes of illustrating this potential fiscal impact for the covered years by the Certified Fiscal Plan, see Figure 1. It should be noted, however, that Act 7 may entail an additional fiscal impact on expenditures that at the moment remains undetermined.

## V.  Determination of Compliance or Non-Compliance with the Certified Fiscal Plan

Based on the above analysis and assumptions, and as required by Section 204(a)(2)(C) of PROMESA, the Government hereby notifies the Oversight Board that Act 7 is significantly inconsistent with the Certified Fiscal Plan.

The reformulation of Puerto Rico's pension system, as stated in Act 7, is contrary to the provisions of the Fiscal Plan and the assumptions of the POA currently filed before the Title III Court. Accordingly, its provisions could be interpreted as contrary to several provisions of PROMESA and to the powers granted to Oversight Board. See e.g., Sections 108(a)(2), 312 and 313 of PROMESA, 48 U.S.C. secs. 2128, 2172-73. In addition, Chapter 3 of Act 7 seeks to have debt of the Government of Puerto Rico issued, guaranteed and/or modified without the approval of the Oversight Board pursuant to Section 207 of PROMESA, 48 U.S.C. sec. 2147.

Concerning the Certified Fiscal Plan, Articles 3.02, 3.03, 3.05 and 3.09 of Act 7 require the following: (1) transfer all current legal obligations, pensions and annuities to the FACSiR; (2) establish a contractual obligation of the Government of Puerto Rico in favor of pensioners and the FACSiR; (3) create a statutory lien over all of the rights, titles, interest, assets and incomes of the FACSiR in an effort to secure pensions, annuities and benefits of the pensioners and (4) maintain the pension benefits that were in place before the Government filed a petition under Title III of PROMESA. This measures are significantly inconsistent with the reform measures established on Section 20.2 of Chapter 20 of the Certified Fiscal.

Section 204(a) Certification
Act 7-2021

### VI.    Appendix

Figure 1: Projected Fiscal Impact for Puerto Rico



Figure 2: Pension Reform Summary from the Certified Fiscal Plan
Exhibit 140: Pension reform summary of impact



Section 204(a) Certification
Act 7-2021

**VII.   Reports**

- Attachment A (Department of the Treasury)
- Attachment B (Office of Management and Budget)
- Attachment C (Letter related to Joint Resolution 46-2019)
- Attachment D (Signing Statement 2021-001 of the Governor of Puerto Rico)

# Attachment 1

# FORMULARIO UNIVERSAL[1]
## Certificación en Cumplimiento con la Sección 204 (a) de PROMESA y Boletín Administrativo OE 2019-57

☐ Previo a la aprobación de una Ley o Resolución

☒ Inmediatamente aprobada (firmada) la Ley o Resolución

### REQUISITO OBLIGATORIO PARA TODAS LAS AGENCIAS

Conforme es requerido por Sección 204 (a) la Ley federal denominada *Puerto Rico Oversight, Management, and Economic Stability Act*, conocida como PROMESA (por sus siglas en inglés), Pub. L. 114-187, hemos evaluado el/la **Ley Núm. 7 de 9 de junio de 2021** para determinar si la misma puede tener un potencial impacto fiscal sobre el Presupuesto de Gastos del Gobierno de Puerto Rico.

Luego de la evaluación y análisis correspondiente del estatuto de referencia, certificamos lo siguiente:

Certifico que, de firmarse el proyecto o resolución de referencia, su implementación tendría el siguiente impacto en la Agencia:  Departamento de Hacienda

1.  Que el estatuto ante nuestra consideración:

    ☒ **no conlleva impacto fiscal**
    ☐ **conlleva impacto fiscal** (En caso de que conlleve impacto cumplimentar parte 2)

2.  Que el estatuto ante nuestra consideración conlleva

    a.   un aumento en gastos de $_____.
    b.   una disminución en gastos de $_____.
    c.   un **aumento en ingresos** de $_____.
    d.   una **disminución en ingresos** de $_____.

Certifico que, de firmarse el proyecto o resolución de referencia, el impacto antes señalado ☐ se encuentra ☐ no se encuentra contemplado en el presupuesto certificado para el año fiscal 2020-2021 para la Agencia: _____, por lo que ☐ tendría ☒ no tendría un efecto incremental en el mismo.

En caso de tratarse de una reasignación, certifico que, los fondos a ser reprogramados mediante el presente estatuto provienen de: _____ del Año Fiscal _____

1.  Los fondos a ser reasignados:

---

[1] Los originales de documentos fiscales se conservarán por seis (6) años o hasta realizada una intervención del Contralor, lo que ocurra primero.  Véase Artículo IV del Reglamento 23-00-01, Para la Conservación de Documentos de Naturaleza Fiscal o Necesarios para el Examen y Comprobación de Cuentas y Operaciones Fiscales.

☐ **no están disponibles**
☐ **están disponibles** (En caso de que estén disponibles cumplimentar parte 2 y 3)

2.  Los fondos están en:

☐ PRIFAS (Cifra de Cuenta Número _____)
por $_____.
☐ Cuenta Fuera de PRIFAS (Cuenta Número _____)
por $_____.
☐ Otro _____

3.  Que los fondos a ser reasignados:

☐ **están obligados por $_____.**
☐ **no están obligados**

Certifico que, de firmarse el estatuto de referencia, ésta:

☐ **no es significativamente inconsistente con el Plan Fiscal Certificado**
☐ **es significativamente inconsistente con el Plan Fiscal Certificado.**

Comentarios:  Sugerimos que la medida sea evaluada por la Oficina de Gerencia y Presupuesto por posible impacto presupuestario y por la AAFAF para el cumplimiento con el Plan Fiscal.

Por lo cual, se expide la presente Certificación, el 11 de junio de 2021.

<u>Departamento de Hacienda</u>
Agencia

<u>Aixa Cruz Pol</u>
Nombre y Puesto                          Firma

# Attachment 2



GOBIERNO DE PUERTO RICO
OFICINA DE GERENCIA Y PRESUPUESTO
Director I Juan Carlos Blanco I juan.blanco@ogp.pr.gov

## CERTIFICACIÓN DE IMPACTO FISCAL
Ley Núm. 7 -2021

Conforme es requerido por la Ley federal denominada *Puerto Rico Oversight, Management, and Economic Stability Act*, conocida como PROMESA (por sus siglas en inglés), Pub. L. 114-187, hemos evaluado la Ley de reciente aprobación para determinar si la misma puede tener un potencial impacto fiscal sobre el Presupuesto de Gastos del Gobierno de Puerto Rico.  La Ley que incluye la presente certificación es la siguiente:

*"Ley Núm. 7 -2021 - (P. de la C. 120) –* Para crear la "Ley para un Retiro Digno", a los fines de establecer y uniformar una política pública enérgica y vigorosa de cero recortes a las pensiones de los(as) participantes de los sistemas de retiro y las personas jubiladas del servicio público de Puerto Rico; crear el andamiaje jurídico necesario para el eventual establecimiento de un Fideicomiso para la Administración Conjunta de los Sistemas de Retiro que asegure el pago de pensiones de servidores(as) públicos(as); disponer la política pública que guiará las conversaciones y representaciones del Gobierno del Estado Libre Asociado de Puerto Rico, sus municipios, instrumentalidades y agentes en cualquier proceso de reestructuración, ajuste, mediación o negociación de las acreencias contra los sistemas de retiro, sus participantes y pensionados(as); proponer un modelo para la constitución y el trato de diferentes clases de acreedores(as) en un Plan de Ajuste de Deuda que se conforme a esta política pública; enmendar los Artículos 2, 3, 5 y 9 de la Ley 2-2017, según enmendada, conocida como "Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico", enmendar el Artículo 1-104 y añadir un nuevo Artículo 1-111 a la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como "Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico", enmendar el Artículo 1.1 y añadir un nuevo Artículo 2.6 a la Ley 160-2013, según enmendada, conocida como "Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico" y añadir un nuevo Artículo 1-A y enmendar el Artículo 2 de la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, conocida como "Ley de Retiro de la Judicatura", para atemperarlas a la política pública establecida en esta Ley; enmendar los Artículos 1.4 y 1.7 de la Ley 106-2017, según enmendada, conocida como "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos"; enmendar el Artículo 2 de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como "Ley de Reclamaciones y Demandas contra el Estado", para crear una herramienta judicial para el cumplimiento de esta política pública; y para otros fines relacionados.

Página 2

De entrada, expresamos nuestro apoyo a todo esfuerzo dirigido a para proteger los beneficiarios de los sistemas de retiro del Gobierno de Puerto Rico, siendo ello parte de nuestros ciudadanos que dieron gran parte de su vida productiva en beneficio de nuestro Pueblo y con quienes esperamos contar a través de los programas de regreso incentivado. De igual forma, reiteramos el compromiso de nuestra Administración de cero recortes a las pensiones y de dotar a nuestros pensionados de un retiro digno.

Luego de la evaluación y análisis correspondiente de esta Ley es nuestra responsabilidad indicar que, además de ser significativamente inconsistente con el Plan Fiscal certificado, entendemos que la misma conllevaría un incremento para el presupuesto del Fondo General correspondiente al año fiscal **2021-2022** y presupuestos subsiguientes el cual no ha sido cuantificado, y cuyo aumento no está contemplado en la propuesta presupuestaria.

Se expide la presente Certificación, en San Juan, Puerto Rico a 14 de junio de 2021.

Cordialmente,

Juan Carlos Blanco Urrutia

Anejo

Carta Circular Núm.169-19, Carta Circular Núm. 2019-01; Carta Circular Núm.1300-070,
Oficina de Gerencia y Presupuesto, Autoridad de Asesoría Financiera y Agencia Fiscal
y Departamento de Hacienda
Anejo I - FORMULARIO UNIVERSAL
25 de noviembre de 2019
Página 1 de 2

# FORMULARIO UNIVERSAL[1]
## Certificación en Cumplimiento con la Sección 204 (a) de PROMESA y Boletín Administrativo OE 2019-57

☒ **Previo a la aprobación de una Ley o Resolución**

☐**Inmediatamente aprobada (firmada) la Ley o Resolución**

### REQUISITO OBLIGATORIO PARA TODAS LAS AGENCIAS

Conforme es requerido por Sección 204 (a) la Ley federal denominada *Puerto Rico Oversight, Management, and Economic Stability Act*, conocida como PROMESA (por sus siglas en inglés), Pub. L. 114-187, hemos evaluado el Proyecto de la Cámara Núm. 120 para determinar si la misma puede tener un potencial impacto fiscal sobre el Presupuesto de Gastos del Gobierno de Puerto Rico.

Luego de la evaluación y análisis correspondiente del estatuto de referencia, certificamos lo siguiente:

Certifico que, de firmarse el proyecto o resolución de referencia, su implementación tendría el siguiente impacto en la Agencia:  Junta de Retiro del Gobierno de Puerto Rico

1. Que el estatuto ante nuestra consideración:

   ☐no conlleva impacto fiscal
   ☒ conlleva impacto fiscal (En caso de que conlleve impacto cumplimentar parte 2)

2. Que el estatuto ante nuestra consideración conlleva
   a. un aumento en gastos de $ <u>Ver comentarios</u>.
   b. una disminución en gastos de $_____.
   c. un aumento en ingresos de $_____.
   d. una disminución en ingresos de $_____.

Certifico que, de firmarse el proyecto o resolución de referencia, el impacto antes señalado ☐ se encuentra  ☒ no se encuentra contemplado en el presupuesto certificado para el año fiscal 2020-2021 para la Agencia:  Junta de Retiro del Gobierno de Puerto Rico, por lo que ☒ tendría ☐ no tendría un efecto incremental en el mismo.

En caso de tratarse de una reasignación, certifico que, los fondos a ser reprogramados mediante el presente estatuto provienen de: _____ del Año Fiscal _____.

   1. Los fondos a ser reasignados:

---

[1] Los originales de documentos fiscales se conservarán por seis (6) años o hasta realizada una intervención del Contralor, lo que ocurra primero.  Véase Artículo IV del Reglamento 23-00-01, Para la Conservación de Documentos de Naturaleza Fiscal o Necesarios para el Examen y Comprobación de Cuentas y Operaciones Fiscales.

Carta Circular Núm.169-19, Carta Circular Núm. 2019-01; Carta Circular Núm.1300-070,
Oficina de Gerencia y Presupuesto, Autoridad de Asesoría Financiera y Agencia Fiscal
  y Departamento de Hacienda
Anejo I - FORMULARIO UNIVERSAL
25 de noviembre de 2019
Página  2 de 2

   ☐ no están disponibles
   ☐ están disponibles (En caso de que estén disponibles cumplimentar parte 2 y 3)

 2. Los fondos están en:

   ☐ PRIFAS (Cifra de Cuenta Número _____)
   por $_____.
   ☐ Cuenta Fuera de PRIFAS (Cuenta Número _____)
   por $_____.
   ☐ Otro _____

 3. Que los fondos a ser reasignados:

   ☐están obligados por $_____.
   ☐ no están obligados

Certifico que, de firmarse el estatuto de referencia, ésta:

   ☐no es significativamente inconsistente con el Plan Fiscal Certificado
   ☒ es significativamente inconsistente con el Plan Fiscal Certificado.

**Comentarios:** De firmarse el PC 120, su implementación tendría un impacto fiscal el cual no se encuentra contemplado en el presupuesto certificado para el año fiscal 2022 por lo que tendría un efecto incremental en el mismo. La cuantía exacta del impacto no puede determinarse en este momento ya que el proyecto de ley PC 120 no se redactó basado en algún estudio actuarial o de impacto económico. De igual forma, el PC 120 es vago e impreciso en lo referente a las fuentes de ingreso para financiar y nutrir el nuevo fideicomiso propuesto por lo que en este momento no es viable cuantificar el impacto fiscal de la medida. No obstante, cualquier deficiencia o insolvencia que enfrente el fideicomiso propuesto (FACSiR) tendría que ser suplida por el Fondo General. El estatuto ante nuestra consideración conlleva un aumento en gastos que no podemos cuantificar con exactitud en este momento debido a la forma en que está redactado el PC 120.

Por lo cual, se expide la presente Certificación, el 2 de Junio de 2021.

Junta de Retiro del Gobierno de Puerto Rico
Agencia

Cecile Tirado Soto
Directora de Contraloría
Nombre y Puesto      Firma

# Attachment 3

# GOVERNMENT OF PUERTO RICO

**Puerto Rico Fiscal Agency and Financial
Advisory Authority**

BY ELECTRONIC MAIL

October 29, 2019

**Natalie A. Jaresko**
Executive Director
Financial Oversight & Management Board
P.O. Box 192018
San Juan, PR 00919-2018

Dear Ms. Jaresko:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") is the government entity responsible for communication between the Government of Puerto Rico (the "Government") and the Financial Oversight and Management Board for Puerto Rico (the "Board") pursuant to the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017.

On August 1, 2019, former Governor Rosselló enacted Joint Resolution 46-2019 ("JR 46-2019"). The Joint Resolution purports to transfer 1.4 billion dollars of unallocated funds from Treasury Single Account ("TSA") to restore public sector employees' contributions to the System 2000 (*Sistema 2000*) retirement plan.

The Government acknowledges that the Plan of Adjustment recently filed by the Board in the Commonwealth Title III proceedings, intends to restore 1.3 billion dollars of public sector employees' contributions to System 2000. In light of this, the Government certifies it has not transferred the funds provided in JR 46-2019 and will await confirmation of the Plan of Adjustment to effectuate such transfer. In anticipation of the eventual confirmation of the Plan of Adjustment, the Retirement Board is currently auditing the System 2000 contributions. Such audit is expected to be completed in the upcoming months.

This letter is being sent in lieu of a certification pursuant to Section 204(a) of Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. sec. 2144.

The Government looks forward to continue working closely with the Board to restore the contributions of employees to System 2000 in a fiscally responsible process that is acceptable to all relevant parties.

Sincerely,

Omar Marrero Diaz
Executive Director

# Attachment 4



GOBERNADOR DE PUERTO RICO

Pedro R. Pierluisi



9 de junio de 2021


Hon. José Luis Dalmau Santiago
Presidente
Senado de Puerto Rico
El Capitolio
San Juan, Puerto Rico

Estimado señor Presidente Dalmau Santiago:

**Re: Declaración Explicativa del Gobernador de Puerto Rico 2021-001; sobre la firma del Proyecto de la Cámara 120**

La presente tiene el propósito de comunicarle que, a tenor con los poderes y facultades que me confiere la Sección 19 del Artículo II de la Constitución de Puerto Rico, le he impartido mi firma al **Proyecto de la Cámara 120** (en adelante, "PC 120"), convirtiéndolo en la Ley 7-2021. Esta medida fue aprobada por la Asamblea Legislativa, a los siguientes fines:

> Para crear la "Ley para un Retiro Digno", a los fines de establecer y uniformar una política pública enérgica y vigorosa de cero recortes a las pensiones de los(as) participantes de los sistemas de retiro y las personas jubiladas del servicio público de Puerto Rico; crear el andamiaje jurídico necesario para el eventual establecimiento de un Fideicomiso para la Administración Conjunta de los Sistemas de Retiro que asegure el pago de pensiones de servidores(as) públicos(as); disponer la política pública que guiará las conversaciones y representaciones del Gobierno del Estado Libre Asociado de Puerto Rico, sus municipios, instrumentalidades y agentes en cualquier proceso de reestructuración, ajuste, mediación o negociación de las acreencias contra los sistemas de retiro, sus participantes y pensionados(as); proponer un modelo para la constitución y el trato de diferentes clases de acreedores(as) en un Plan de Ajuste de Deuda que se conforme a esta política pública;





GOBERNADOR DE PUERTO RICO

Pedro R. Pierluisi

enmendar los Artículos 2, 3, 5 y 9 de la Ley 2-2017, según enmendada, conocida como "Ley de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico", enmendar el Artículo 1-104 y añadir un nuevo Artículo 1-111 a la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, conocida como "Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico", enmendar el Artículo 1.1 y añadir un nuevo Artículo 2.6 a la Ley 160-2013, según enmendada, conocida como "Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico" y añadir un nuevo Artículo 1-A y enmendar el Artículo 2 de la Ley Núm. 12 de 19 de octubre de 1954, según enmendada, conocida como "Ley de Retiro de la Judicatura", para atemperarlas a la política pública establecida en esta Ley; enmendar los Artículos 1.4 y 1.7 de la Ley 106-2017, según enmendada, conocida como "Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos"; enmendar el Artículo 2 de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como "Ley de Reclamaciones y Demandas contra el Estado", para crear una herramienta judicial para el cumplimiento de esta política pública; y para otros fines relacionados.

La firma de esta ley tiene la intención de reafirmar mi política pública de cero recortes a las pensiones del Gobierno y de proveerles un retiro digno y seguro a todos los servidores públicos de Puerto Rico. Los pensionados públicos dedicaron años de su vida al servicio de nuestro Pueblo y fueron el motor del desarrollo de nuestra sociedad moderna. Sin embargo, debido a irresponsabilidad administrativa y gerencial que se extendió por décadas, los sistemas de retiro fueron afectándose fiscalmente, al punto que para el 2017, se encontraban insolventes. Fue entonces que se legisló la Ley 106-2017, la cual, entre otros asuntos, creó el sistema de *Pay-Go*, que hoy permite pagar las pensiones directamente del fondo general.



La nueva amenaza que enfrentan nuestros pensionados se da en el proceso de restructuración de deudas bajo el Título III de la Ley PROMESA. El pasado 11 de mayo de 2021, la Junta de Supervisión y Administración Financiera para Puerto

2



GOBERNADOR DE PUERTO RICO

Pedro R. Pierluisi

Rico (JSF) presentó un tercer Plan de Ajuste enmendado ante el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico en la sala del Título III. En este, la JSF ha incluido un recorte a las pensiones de 8.5% para aquellos pensionados que reciban más de $1,500 al mes. Este recorte es innecesario e injusto, y así se lo he hecho saber a la JSF en innumerables ocasiones. Es innecesario porque el Gobierno de Puerto Rico reformó totalmente su principal sistema de pensiones en el 2013, afectando significativamente los beneficios de nuestros pensionados. No existe justificación fiscal o legal para los recortes adicionales propuestos por la JSF dado que ya los pensionados, como acreedores del Gobierno, recibieron ese ajuste extraordinario a sus acreencias. Además, el impacto fiscal de los recortes a las finanzas del Gobierno de Puerto Rico es inmaterial. Por otro lado, el recorte es injusto porque afecta las finanzas de miles de exservidores públicos que sufrirían otro golpe a sus pensiones, todo por un capricho legal de la JSF.

El PC 120 persigue el fin de enviar un mensaje a la JSF de que el Gobierno de Puerto Rico luchará por no dar paso a un recorte a las pensiones, con lo que estoy de acuerdo, y por eso hoy he estampado mi firma y convertido en Ley esta medida.

Sin embargo, como Gobernador, también soy consciente que juré defender la Constitución de Estados Unidos y la Constitución y las Leyes de Puerto Rico. Ese juramento no se da en un vacío, y tiene consecuencias legales. Ya nuestro Tribunal Supremo ha expresado que el Gobernador de Puerto Rico tiene un deber legal de analizar las leyes aprobadas por la Asamblea Legislativa y cerciorarse de su cumplimiento con el ordenamiento constitucional. *Véase,* Noriega v. Hernández Colón, 135 D.P.R. 406 (1994). Por lo tanto, es mi responsabilidad constitucional indicar que varias disposiciones de esta ley, según aprobada, son claramente inconsistentes con la Ley PROMESA y con el Plan Fiscal certificado del Gobierno de Puerto Rico, así como con los esfuerzos en curso para reestructurar nuestra deuda pública.

El PC 120 es significativamente inconsistente con el Plan Fiscal ya que, entre otros, elimina el sistema *Pay-Go* y ordena la creación de un fideicomiso de pensiones cuya fuente de ingresos no está provista en el Plan Fiscal. Además, el PC 120 rechaza el recorte a las pensiones, lo cual está incluido en el Plan Fiscal y en el



3



GOBERNADOR DE PUERTO RICO

Pedro R. Pierluisi

Plan de Ajuste de Deuda sometido por la JSF ante el Tribunal Federal. Por otro lado, el PC 120 viola varias disposiciones de PROMESA porque impide la cooperación del Gobierno y varias de sus agencias con la JSF, si el Plan de Ajuste de Deuda incluye un recorte a las pensiones. Ello contraviene la Sección 108(a)(2) de PROMESA. De otra parte, el PC 120 ordena que el Gobierno redacte y presente ante la Asamblea Legislativa un plan de ajuste de deuda en particular. Ello va en contra de la Sección 312(a) de PROMESA, la cual establece que solo la JSF pude presentar un plan de ajuste de deuda. Finalmente, el PC 120 impugna la validez de ciertas emisiones de bonos de Puerto Rico, lo cual puede tener repercusiones legales.

Las comunicaciones que la JSF envió al Gobierno tienen consecuencias legales, ya que el Tribunal de Título III ha resuelto varios casos en los que pautó que la JSF tiene la autoridad para solicitar la anulación de leyes de Puerto Rico que sean significativamente inconsistentes con el Plan Fiscal o que violen la Ley PROMESA. Por lo tanto, en cumplimiento con mi juramento como Gobernador de mantener y defender la Constitución de Estados Unidos y la Constitución y las leyes de Puerto Rico, y a tenor con la Sección 204(a) de PROMESA, el Gobierno de Puerto Rico le notificará a la JSF que el PC120 es significativamente inconsistente con el Plan Fiscal certificado.

No obstante, como he dicho, mi compromiso es honrar todas las pensiones del Gobierno de Puerto Rico y buscar todas las maneras de lograrlo. Por consiguiente, firmo el PC 120 en ánimo de que la JSF recapacite en su insistencia de hacer recortes a las pensiones, los cuales son innecesarios, tanto legal como fiscalmente. A su vez, mi administración continuará defendiendo a nuestros pensionados durante los procesos legales ante el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico en la sala del Título III en aras de evitar un recorte innecesario e injusto a sus pensiones.

Atentamente,

4

[Translation]

[Seal of the Governor of Puerto Rico]

<u>GOVERNOR OF PUERTO RICO</u>
Pedro R. Pierluisi

June 9, 2021

Hon. José Luis Dalmau Santiago
President
Senate of Puerto Rico
El Capitolio
San Juan, Puerto Rico

Dear Mr. President:

**Re: Explanatory Statement of the Governor of Puerto Rico 2021-001 on signing into law House Bill 120**

The purpose of this communication is to inform you that, pursuant to the powers and authorities conferred upon me by Section 19 of Article II of the Constitution of Puerto Rico, I have signed into law House Bill 120 (hereinafter, "HB 120"), which is now Act 7-2021. This bill was approved by the Legislative Assembly for the following purpose:

> To create the "Dignified Retirement Act" in order to establish and standardize a vigorous and strong public policy of zero cuts to the pensions of participants of the retirement systems and retirees from the public service of Puerto Rico; create the necessary legal framework for the eventual establishment of a Trust for the Joint Administration of the Retirement Systems that will guarantee the payment of pensions to public employees; provide the public policy that will guide the conversations and representations of the Government of the Commonwealth of Puerto Rico, its municipalities, instrumentalities and agents in any restructuring, adjustment, mediation or negotiation process involving the credits against the retirement systems, its participants and pensioners; propose a model for the creation and treatment of different classes of creditors in a Debt Adjustment Plan that complies with that public policy; amend Articles 2, 3, 5 and 9 of Act 2-2017, as amended, known as the "Puerto Rico Fiscal Agency and Financial Advisory Authority Act", amend Article 1-104 and add a new Article 1-111 to Law No. 447 of May 15, 1951, as amended, known as "Law of the Retirement System for Employees of the Government of the Commonwealth of Puerto Ric," amend Article 1.1 and add a new Article 2.6 to Act 160-2013, as amended, known as the "Commonwealth of Puerto Rico Teacher's Retirement System Act", and add a new Article 1-A and amend Article 2 of Law No. 12 of October 19, 1954, as amended, known as the "Law of the Retirement System for the Judiciary of the Commonwealth of Puerto Rico," to adjust them to the public policy

set forth in this Act; amend Articles 1.4 and 1.7 of Act 106-2017, as amended, known as the "Act to Guarantee the Payment of Pension Benefits to our Retirees, and to Establish a New Defined Contribution Plan for Public Employees", amend Article 2 of Law No. 104 of June 29, 1955, as amended, known as the "Claims and Actions Against the Commonwealth of Puerto Rico Act," to create a judicial tool to comply with this public policy, and for other related purposes.

My signature on this law is intended to reaffirm my public policy of zero cuts to Government pensions, as well as to provide a dignified and safe retirement to all public employees of Puerto Rico. Public pensioners dedicated years of their lives to serve our People and drove the development of our modern society. However, due to the administrative and management irresponsibility that went on for decades, the retirement systems were fiscally affected, to the point that by 2017, they were insolvent. At that time, Act 106-2017 was enacted, which among other matters, created the Pay-Go system that allows to pay pensions directly from the general fund.

The new threat facing our pensioners appears in the debt restructuring process under Title III of PROMESA. On May 11, 2021, the Financial Oversight and Management Board for Puerto Rico (FOMB) submitted a Third Amended Plan of Adjustment before the United States District Court for the District of Puerto Rico, in the Title III Court. The FOMB has included in this Third Amended Plan an 8.5% pension cut for pensioners that receive more than $1,500 per month. This cut is unnecessary and unfair as we have informed the FOMB on countless occasions. It is unnecessary because the Government of Puerto Rico completely reformed its principal pension system in 2013, significantly affecting the benefits of our pensioners. There is no fiscal or legal justification for the additional cuts proposed by the FOMB, since pensioners, as Government creditors, already received that extraordinary adjustment to their credits. Moreover, the fiscal impact of the cuts on the finances of the Government of Puerto Rico is of no consequence. On the other hand, the cut is unfair because it affects the finances of thousands of former public employees who would suffer another blow to their pensions, all due to a legal whim of the FOMB.

HB 120 seeks to send the message to the FOMB that the Government of Puerto Rico will fight to not allow pension cuts, and I agree with that; therefore, today, I have signed this bill into law.

Nevertheless, as Governor, I also know that I took an oath to defend the Constitution of the United States and the Constitution and the Laws of Puerto Rico. Such oath does not take place in a vacuum and there are legal consequences. Our Supreme Court has already stated that the Governor of Puerto Rico has a legal duty to analyze the laws approved by the Legislative Assembly and verify that they comply with the constitutional system. See Noriega v. Hernández Colón, 135 D.P.R. 406 (1994). Therefore, it is my constitutional responsibility to state that several provisions in this law, as enacted, are clearly inconsistent with PROMESA and with the certified Fiscal Plan of the Government of Puerto Rico, as well as with ongoing efforts to restructure our public debt.

HB 120 is significantly inconsistent with the Fiscal Plan because, among other reasons, it eliminates the Pay-Go system and orders the creation of a pension trust without a revenue source provided in the Fiscal Plan. In addition, HB 120 rejects the pension cuts, which are included in the Fiscal Plan and the Debt Adjustment Plan submitted before the Federal Court by the FOMB. On the other hand, HB 120 violates

[Translation]

several provisions of PROMESA because it prevents the Government and some of its agencies from collaborating with the FOMB if the Debt Adjustment Plan includes pension cuts. This violates Section 108(a) (2) of PROMESA. Moreover, HB 120 orders the Government to draft and submit to the Legislative Assembly a specific debt adjustment plan. This goes against Section 312(a) of PROMESA, which provides that only the FOMB may submit a debt adjustment plan. Finally, HB 120 challenges the validity of certain Puerto Rico bond issuances, which could have legal consequences.

The communications that the FOMB has sent to the Government have legal consequences because the Title III Court has ruled in a number of cases that the FOMB has the authority to request the annulment of Puerto Rico laws that are significantly inconsistent with the Fiscal Plan or violate PROMESA. Therefore, in compliance with the oath that I have taken as Governor to uphold and defend the Constitution of the United States and the Constitution and the laws of Puerto Rico and pursuant to Section 204(a) of PROMESA, the Government of Puerto Rico will notify the FOMB that HB 120 is significantly inconsistent with the certified Fiscal Plan.

This notwithstanding, as I have said, I am committed to honoring all the pensions of the Government of Puerto Rico and looking for all the ways to achieve this. Therefore, I am signing HB 120 with the intention that the FOMB will reconsider its insistence on making pensions cuts that are legally and fiscally unnecessary. In addition, my administration will continue to defend our pensioners in the legal processes before the U.S. District Court for the District of Puerto Rico in the Title III Court in order to prevent unnecessary and unfair pension cuts.

Very truly yours,


(Signed)
Pedro R. Pierluisi