# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- x

|   |   |
|---|---|
| In re: | : |
|   | : |
| THE FINANCIAL OVERSIGHT AND | : PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : Title III |
|   | : |
| as representative of | : Case No. 17-BK-3283 (LTS) |
|   | : |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | : (Jointly Administered) |
|   | : |
| Debtors.[1] | : |

---------------------------------------------------------------------- x

## LIMITED SUR-REPLY OF COMMITTEE OF UNSECURED CREDITORS WITH RESPECT TO BANKRUPTCY RULE 3013 ISSUES AND IN RESPONSE TO OVERSIGHT BOARD'S OMNIBUS REPLY IN SUPPORT OF <u>DISCLOSURE STATEMENT MOTION</u>

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**Page**

I.      JOINT CLASSIFICATION IS PERMISSIBLE ................................................................ 3

II.     *GRANADA WINES* IS CONTROLLING FIRST CIRCUIT AUTHORITY ON
        CLASSIFICATION ........................................................................................................... 6

        a.      *Granada Wines* Is Consistent With Bankruptcy Code ........................................... 7

        b.      *Granada Wines'* Strict Classification Rule Is Not *Dicta* ..................................... 9

        c.      *Granada Wines* Properly Relies on Bankruptcy Act Authority ........................... 11

        d.      *Granada Wines* Applies to Unsecured Claims ................................................... 12

        e.      Courts in First Circuit Do Not Deviate From *Granada Wines* ........................... 12

III.    NOTHING IN PROMESA OR CHAPTER 9 OVERRIDES CONTROLLING
        CASE LAW .................................................................................................................... 13

        CONCLUSION ................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 266 Washington Assocs.*,
141 B.R. 275 (Bankr. E.D.N.Y.), *aff'd sub nom. In re Washington Assocs.*,
147 B.R. 827 (E.D.N.Y. 1992) ................................................................................8

*In re 4th St. E. Investors, Inc.*,
2012 WL 1745500 (Bankr. C.D. Cal. May 15, 2012) ............................................5

*In re Barney & Carey Co.*,
170 B.R. 17 (Bankr. D. Mass. 1994) ......................................................................7

*Berhe v. Gonzales*,
464 F.3d 74 (1st Cir. 2006) ..................................................................................10

*In re Bjolmes Realty Tr.*,
134 B.R. 1000 (Bankr. D. Mass. 1991) ..................................................................6

*In re Bos. Post Rd. Ltd. P'ship*,
21 F.3d 477 (2d Cir. 1994) ...................................................................................11

*In re CGE Shattuck, LLC*,
254 B.R. 5 (Bankr. D.N.H. 2000) ...........................................................................7

*In re City of Detroit*,
524 B.R. 147 (Bankr. E.D. Mich. 2014) ......................................................3, 4, 16

*In re City of Stockton, California*,
542 B.R. 261 (B.A.P. 9th Cir. 2015) .......................................................................4

*In re Corcoran Hosp. Dist.*,
233 B.R. 449 (Bankr. E.D. Cal. 1999) ..................................................................16

*Dedham Water Co. v. Cumberland Farms Dairy, Inc.*,
972 F.2d 453 (1st Cir. 1992) ................................................................................10

*In re El Comandante Mgmt. Co., LLC*
2006 WL 3903593, at *5 (Bankr. D.P.R. Mar. 3, 2006) ...................................7, 13

*In re Fantastic Homes Enterprises, Inc.*,
44 B.R. 999 (M.D. Fla. 1984) ...............................................................................12

*Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*,
748 F.2d 42 (1st Cir. 1984) ........................................................................... *passim*

## <u>TABLE OF AUTHORITIES</u>
(continued)

<b>Page(s)</b>

*In re Hanish, LLC*,
  570 B.R. 4 (Bankr. D.N.H. 2017) ........................................................................6, 9

*In re Hardeman Cty. Hosp. Dist.*,
  540 B.R. 229 (Bankr. N.D. Tex. 2015)....................................................................16

*In re Los Angeles Land and Investments, Ltd.*,
  282 F. Supp. 448 (1968), *aff'd*, 447 F.2d 1366 (9th Cir.1971)................................12

*In re Mahoney Hawkes, LLP*,
  289 B.R. 285 (Bankr. D. Mass. 2002) .......................................................................7

*In re Manuel Mediaviavilla, Inc.*,
  No. 13-2800 (MCF), 2015 WL 3780463 (Bankr. D.P.R. June 16, 2015) .............13

*In re Nat'l Paper & Type Co. of P.R.*,
  120 B.R. 624 (D.P.R. 1990)....................................................................................13

*In re Nat'l/Northway Ltd. P'ship*,
  279 B.R. 17 (Bankr. D. Mass 2002) ..........................................................................6

*In re Old Cold LLC*,
  879 F.3d 376 (1st Cir. 2018)......................................................................................7

*In re Rexford Properties LLC*,
  558 B.R. 352 (Bankr. C.D. Cal. 2016)......................................................................8

*In re Salem Suede, Inc.*,
  219 B.R. 922 (Bankr. D. Mass. 1998) .......................................................................7

*Sasen v. Spencer*,
  879 F.3d 354 (1st Cir. 2018)....................................................................................15

*Scherk v. Newton*,
  152 F.2d 747 (10th Cir. 1945) .............................................................................5, 12

*Sutton v. CHSPSC, LLC*,
  No. 116CV01318STAEGB, 2018 WL 3318961 (W.D. Tenn. July 5, 2018) ........10

*In re Tempnology, LLC*,
  542 B.R. 50 (Bankr. D.N.H. 2015), *aff'd sub nom. Old Cold, LLC,* 558 B.R.
  500 (B.A.P. 1st Cir. 2016) ........................................................................................7

*In re Thornwood Associates*,
  161 B.R. 367 (Bankr. M.D. Pa. 1993) *aff'd*, 162 B.R. 438 (M.D. Pa. 1993) ...........5

iii

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Lewis*,
517 F.3d 20 (1st Cir. 2008) ........................................................................ 6

*United States v. Moore-Bush*,
963 F.3d 29 (1st Cir.), *reh'g en banc granted, opinion vacated*, 982 F.3d 50
(1st Cir. 2020) ........................................................................................ 6

*United States v. Phillips*,
19 F.3d 1565 (11th Cir. 1994), *amended*, 59 F.3d 1095 (11th Cir. 1995) ............... 15

*United States v. Savoie*,
985 F.2d 612 (1st Cir. 1993) ...................................................................... 14

*In re W.R. Grace & Co.*,
729 F.3d 311 (3d Cir. 2013) ...................................................................... 4

**Statutes**

11 U.S.C.
§ 901 ................................................................................................ 16
§ 1122 ........................................................................................... *passim*
§ 1122(b) .......................................................................................... 9, 13
§ 1123(a)(4) ....................................................................................... 3, 4
§ 1129(a)(10) ...................................................................................... 8, 9
§ 1129(b) ........................................................................................ 2, 7, 9
§ 1129(b)(1) ...................................................................................... 7, 8, 9

Bankruptcy Act ............................................................................. 6, 7, 11, 12

Bankruptcy Act § 197 .............................................................................. 11

**Other Authorities**

Scott F. Norberg, *Classification of Claims Under Chapter 11 of the Bankruptcy
Code: The Fallacy of Interest Based Classification*, 69 Am. Bankr. L.J. 119,
137–38 (1995) .................................................................................... 11, 16

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee")[1] respectfully files this sur-reply (the "Sur-Reply")[2] in accordance with the Court's *Order Granting Urgent Motion of Official Committee of Unsecured Creditors for Leave to File Limited Sur-Reply with Respect to Bankruptcy Rule 3013 Issues and in Response to Oversight Board's Omnibus Reply in Support of Disclosure Statement Motion* [Docket No. 17200].  In support of its Sur-Reply, the Committee respectfully states as follows:

### PRELIMINARY STATEMENT

1.      In its Reply, the Oversight Board doubles down on its commitment to isolate CW General Unsecured Claims in a separate class, contrary to binding First Circuit case law, for the purpose of subjecting such claims to "special" Plan treatment far worse than the treatment being afforded to any other class.  Instead of engaging with the Committee on the relevant facts and law, the Oversight Board pushes a series of theories, old and new, to support its argument that it can "slice and dice" creditor classes practically without limits.  In advancing these theories, the Oversight Board pretends, as it must, that the First Circuit's decision in *Granada Wines* either does not exist or is somehow not binding on this Court.  All of the Oversight Board's arguments in support of the Plan's proposed classification scheme are inconsistent with the Bankruptcy Code, PROMESA, and applicable case law, and they should be rejected.

2.      First, contrary to the Oversight Board's contention, there is no obstacle, other than the Oversight Board's apparent animus toward local trade unsecured creditors, preventing joint classification of CW General Unsecured Claims and Retiree Claims.  All such claims are

---

[1]   The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Oversight Board's reply in support of the Disclosure Statement [Docket No. 17187] (the "Reply").

unsecured, non-priority claims that could easily receive the same treatment under the Proposed

Plan.  The Oversight Board insists upon separate classification only because it wishes to give

significantly worse treatment to local trade creditors.

3.      _Second_, the Oversight Board's numerous attacks against the strict classification

rule set out in the First Circuit's decision in _Granada Wines_ all miss the mark.  Contrary to the

Oversight Board's assertions: (a) _Granada Wines_ is consistent with the Bankruptcy Code and

preserves the functional role of section 1129(b) in cram-down scenarios[3]; (b) _Granada Wines_'

strict classification rule is binding on, and faithfully followed by, lower courts in the First

Circuit; (c) _Granada Wines_ relies appropriately on pre-Code authority given that the enactment

of section 1122 of the Bankruptcy Code did not change substantive law regarding classification;

and (d) _Granada Wines_ uses language applicable to unsecured claims, as confirmed by other

courts' decisions using the same language to address classification of unsecured claims.

4.      _Finally_, nothing in PROMESA or chapter 9 case law weakens the authority of

_Granada Wines_.  Section 301(e) of PROMESA represents a codification of the _Granada Wines_

holding.  Congress, which is presumed to know the applicable case law, chose to take the two

factors relevant to classification of claims under _Granada Wines_—secured status and priority—

and mandate that the Oversight Board consider those two factors (and only those two factors) in

formulating classes for a Title III plan of adjustment.  In any event, non-binding chapter 9 case

law from other circuits cannot override the clear command of the First Circuit Court of Appeals.

---

[3]     The Oversight Board's assertions to the contrary are based on having confused the operation of sections 1122 and 1129(b) of the Bankruptcy Code.  As discussed below, separate classification is a section 1122 issue, while section 1129(b) governs unfair discrimination in the cram-down context, a distinct concept.

# ARGUMENT

## I.     Joint Classification Is Permissible

5.     The Oversight Board's assertion that it is impossible to comply with binding First Circuit case law by classifying CW General Unsecured Claims together with Retiree Claims is wrong.  All the Oversight Board needs to do is place CW General Unsecured Claims and Retiree Claims into the same class and provide the creditors in that class with the same treatment consistent with section 1123(a)(4) of the Bankruptcy Code.[4]  There are numerous ways to accomplish this result, including by devising a formula to ensure that they all receive the same percentage recovery on their claims.[5]

6.     Apparently offended by the idea of treating Puerto Rico's small businesses, litigation claimants, and other holders of CW General Unsecured Claims the same as Retirees, the Oversight Board argues that joint classification and equal treatment are impossible because Retiree Claims are paid over individuals' lifetimes and CW General Unsecured Claims are not.[6] The Oversight Board goes so far as to suggest that equal treatment under these circumstances (*i.e.*, where some payments are made in installments and others in a lump sum) actually disadvantages Retirees because "the present value of what the retiree receives is far less than the

---

[4]     Section 1123(a)(4) requires that a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."

[5]     In attempting to falsely cast itself as protecting the Retirees from the Committee, the Oversight Board focuses on the "needs" of Retirees, *see* Reply ¶ 26 ("If the UCC has its way, Retiree Claims would . . . face a treatment incompatible with their needs."), though even cases cited by the Oversight Board explain that such concerns favoring sympathetic classes are legally irrelevant. *See In re City of Detroit*, 524 B.R. 147, 258 (Bankr. E.D. Mich. 2014) (explaining that the Court's judgment "necessarily excludes the relative needs of the creditors in the disparately treated classes" and "no case law in any of the rehabilitative chapters suggests that creditors' needs are an appropriate consideration in determining whether a plan unfairly discriminates").

[6]     To be clear, the Oversight Board's representation of CW General Unsecured Claims as all requiring lump sum payment is not correct.  The Oversight Board proposes such payment in its Proposed Plan, but the CW General Unsecured Claims include numerous claims that are entitled to alternative payment arrangements, including payment over time.

present value of what the other general unsecured claimants receive."[7]  But this alleged

disadvantage, arising from distinctions in the timing of payment that merely reflect creditors'

rights under Puerto Rico law, does not give rise to disparate treatment.  Contrary to the Oversight

Board's representations, distinctions in the timing and procedures of payments to creditors in the

same class do not necessarily violate the equal treatment requirement of section 1123(a)(4) of the

Bankruptcy Code.  *See e.g.*, *In re W.R. Grace & Co.*, 729 F.3d 311, 327–28 (3d Cir. 2013)

("Certain procedural differences, such as a 'delay in receipt of distributions' for some claims,

'do[ ] not alone constitute unequal treatment.'") (internal citations omitted).

7.      In any event, the Oversight Board's contention that the special nature of retiree

benefit claims demands their special treatment—which treatment, in turn, justifies separate

classification—is belied by the case law, as there is nothing about pensions or other post-

employment benefits that demands the treatment chosen by the Oversight Board.  For example,

and as the Committee explained in its Objection, in the *Stockton* bankruptcy case, the

Bankruptcy Appellate Panel for the Ninth Circuit upheld the joint classification of retiree health

benefit claims with other general unsecured claims, such as the unsecured deficiency claim of a

noteholder, affirming the bankruptcy court's ruling that these claims "were all in the same spot

and were properly included in Class 12."  *In re City of Stockton, California*, 542 B.R. 261, 281

(B.A.P. 9th Cir. 2015) (internal quotation marks omitted).  And in *Detroit*, the City paid other

post-employment benefit (OPEB) claims through new notes issued on the effective date of the

plan.[8]  The Oversight Board would have the Court believe that its treatment and classification

---

[7]   Reply ¶ 27.  The Oversight Board seems unperturbed by, or unaware of, the irony of claiming that its Proposed Plan—which provides retiree benefit claims recoveries of between 91.5% and 100% and Class 55 general unsecured claims recoveries of less than 4%—is necessary to avoid favoring unsecured creditors over retirees.

[8]   *See Fourth Am. Disclosure Statement with Respect to Fourth Am. Plan for the Adjustment of Debts of the City of Detroit,* at 40, *In re City of Detroit*, No. 13-53846 (Bankr. E.D. Mich. May 5, 2014) [Docket 4391], (paying OPEB claims using new notes).  In *Detroit*, OPEB claims were classified separately from other pension claims

4

scheme are the only options, yet this is demonstrably untrue—as is the assertion that a debtor can justify separate classification simply because it desires to treat certain claims differently than others. The timing of payments "problem" asserted by the Oversight Board is no problem at all.

8.    Consistent with this, the Oversight Board all but ignores the Committee's argument that how a debtor **chooses to treat** creditors does not control classification[9] and that classification is instead controlled by the **attributes of creditors' claims**. *See Scherk v. Newton*, 152 F.2d 747, 750 (10th Cir. 1945) ("Classification is simply a method of recognizing difference in rights of creditors which calls for difference in treatment"). A plan is not, as the Oversight Board apparently believes, constructed by first creating a list of treatments for different creditors and then dividing creditors by treatment regardless of the attributes of claims. Instead, the attributes of claims are the starting point from which a set of classes is constructed. Then, once the classes are determined, treatment must be proposed consistent with the Bankruptcy Code.

9.    Here, Retiree Claims and CW General Unsecured Claims share key common attributes under *Granada Wines*—they are all nonpriority unsecured claims—and therefore should be classified together. The Oversight Board's view—under which it can first dictate distinctive treatment to claims regardless of their attributes, classify claims separately by the treatment it has chosen, and then argue it is impossible to classify such claims together—gets the sequence backwards and allows the Oversight Board to impermissibly favor certain groups of creditors over others regardless of the similarities of their claims.

---

and had an estimated percentage recovery of 10-13%, *id.*, unlike here, where OPEB claims have been included within the Retiree Claims slated for recoveries between 91.5% and 100%.

[9]    *See* Committee's Disclosure Statement Obj. ¶¶ 147-148. *See In re Thornwood Associates*, 161 B.R. 367, 374 (Bankr. M.D. Pa. 1993) *aff'd*, 162 B.R. 438 (M.D. Pa. 1993) (classification based on treatment was improper because such a "difference is in a debtor's proposed treatment of a claim rather than in the nature of the claim as it relates to the assets of the estate. The latter constitutes the proper test for differential classification."); *see also In re 4th St. E. Investors, Inc.*, 2012 WL 1745500, at *6 (Bankr. C.D. Cal. May 15, 2012) ("No analysis or authority suggests that similarity of claims should be determined according to how they are treated in the plan.").

## II. *Granada Wines* Is Controlling First Circuit Authority on Classification

10.     The Oversight Board's insistence on dictating the treatment of creditors without regard to the nature of their claims cannot be reconciled with *Granada Wines*, which, as the Committee has explained, only permits separate classification of claims based on "a difference in [their] rank concerning rights against the debtor or its property." *In re Bjolmes Realty Tr.*, 134 B.R. 1000, 1003 (Bankr. D. Mass. 1991). *Granada Wines* is binding on this Court,[10] and the Oversight Board's citations to cases *in other circuits,* both under the Bankruptcy Code[11] and Bankruptcy Act,[12] do not alter this reality.

11.     Indeed, lower courts in the First Circuit uniformly recognize *Granada Wines* as the controlling decision in the circuit on the issue of plan classification.   *See, e.g.*, *In re Hanish, LLC*, 570 B.R. 4, 15 (Bankr. D.N.H. 2017) ("Given that the First Circuit applies the strictest approach to classification, it necessarily follows that other courts have accepted justifications for separate classification that are simply inconsistent with" First Circuit law.); *In re Nat'l/Northway Ltd. P'ship*, 279 B.R. 17, 30 (Bankr. D. Mass 2002) (explaining that while courts in other circuits may have "adopted a test less stringent than the strict approach of *Granada Wines* and permit[] separate classification of claims based upon the economic or business reasons advanced by a debtor . . . [t]he strict approach of *Granada Wines* carves out no such exemptions to the general rule for classifying claims in [the First C]ircuit"); *In re Barney & Carey Co.*, 170 B.R. 17, 22 (Bankr. D. Mass. 1994) ("[T]he First Circuit has adopted a strict approach, namely, that all

---

[10]     *See United States v. Moore-Bush,* 963 F.3d 29, 37 (1st Cir.), *reh'g en banc granted, opinion vacated*, 982 F.3d 50 (1st Cir. 2020) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." (quoting *Hutto v. Davis,* 454 U.S. 370, 375, 102 S. Ct. 703, 706, 70 L. Ed. 2d 556 (1982))); *United States v. Lewis,* 517 F.3d 20, 23 (1st Cir. 2008) ("'law of the circuit' rule binds a court within a particular circuit to follow circuit precedent directly or closely on point").

[11]     Reply ¶¶ 34-36, ¶ 35 n.16.

[12]     Reply ¶ 41 n.17.

claims of equal legal priority must be placed in the same class, subject to the administrative

convenience exception").[13]  The Oversight Board points to no lower court in the First Circuit that

has expressly declined to apply *Granada Wines*, and this Court should not be the first.

12.     Undeterred, the Oversight Board in its Reply attempts to discredit and distinguish

*Granada Wines* by arguing, among other things, that it is inconsistent with the Bankruptcy Code,

that its remarks concerning classification are *dictum*, that it improperly relies upon Bankruptcy

Act authority, that it does not apply to other unsecured claims, and that lower courts have

deviated from its holding.  These arguments all fail.

### a. *Granada Wines* **Is Consistent With Bankruptcy Code**

13.     The Oversight Board suggests that *Granada Wines* is inconsistent with the

Bankruptcy Code by alleging that section 1129(b)(1) (establishing the requirement that a cram-

down plan not unfairly discriminate against dissenting classes) and not section 1122 (governing

classification)[14] addresses separate classification.[15]  The Oversight Board further argues that the

addition of section 1129(b) to the Bankruptcy Code shows that "separate classification of

substantially similar claims is allowed as long as the discrimination in treatment is not unfair

discrimination."[16]  The Oversight Board contends that the Committee's interpretation of section

1122 would "bar[] the separate classification of similar claims" and "effectively read section

1129(b)(1) out of the Bankruptcy Code."[17]

---

[13]  *See also, e.g., In re Tempnology, LLC,* 542 B.R. 50, 66 (Bankr. D.N.H. 2015), *aff'd sub nom. Old Cold, LLC,*
558 B.R. 500 (B.A.P. 1st Cir. 2016); *aff'd sub nom. In re Old Cold LLC*, 879 F.3d 376 (1st Cir. 2018) (citing
classification rule from *Granada Wines*); *In re El Comandante Mgmt. Co.,* LLC, 2006 WL 3903593, at *5
(Bankr. D.P.R Mar. 3, 2006) (same); *In re Mahoney Hawkes, LLP*, 289 B.R. 285, 294 (Bankr. D. Mass. 2002);
*In re CGE Shattuck, LLC,* 254 B.R. 5, 11 (Bankr. D.N.H. 2000) (same); *In re Salem Suede, Inc*., 219 B.R. 922,
933 (Bankr. D. Mass. 1998) (same).
[14]  It is worth a reminder that section 1122 of the Bankruptcy Code is titled, simply, "Classification of claims or
interests," <u>not</u> "*Joint* classification of claims and interests").
[15]  Reply ¶ 33.
[16]  Reply ¶ 42.
[17]  Reply ¶ 33.

14.     The Oversight Board's belief that separate classification lies outside the domain

of section 1122 and is simply a matter of unfair discrimination has been rejected by multiple

courts.  As explained in a case cited repeatedly by the Oversight Board,[18] there is a "doctrinal

distinction between (1) whether the **_separate classification_** of substantially similar claims is

appropriate under Bankruptcy Code section 1122, and (2) whether the proposed treatment of

those claims **_unfairly discriminates_** for purposes of Bankruptcy Code section 1129(b)(1)."  _In re_

_Rexford Properties LLC,_ 558 B.R. 352, 365 (Bankr. C.D. Cal. 2016) (emphasis added).

15.     The Oversight Board's confusion on this point is the same as that of the debtor in

_In re 266 Washington Assocs._, 141 B.R. 275, 286 (Bankr. E.D.N.Y. 1992), where the court ruled

that two categories of claims could not be classified separately because the difference between

the two "does not amount to a dissimilarity warranting separate classification under 11 U.S.C. §

1122."  _Id._  In response to the debtor's argument (the same as the Oversight Board's here) that

"there is no issue of improper classification so long as a plan does not unfairly discriminate

between classes of similar claims," _id.,_ the court responded that the debtor "hopelessly confuses

two discrete legal issues by merging them into a seamless web. Unfair discrimination is a cram

down issue under 11 U.S.C. § 1129(b)(1). Classification of claims are 11 U.S.C. §§ 1122

and 1129(a)(10) issues, the propriety of which will determine whether cram down could even be

considered by a bankruptcy court."  _Id._

16.     Further, the Oversight Board's accusation that the _Granada Wines_ rule advocated

by the Committee would do away with all flexibility regarding separate classification and make

section 1129(b) a nullity is incorrect.   This argument inaccurately assumes that the Committee

seeks to prohibit the separate classification of similar claims of all types. That is not the case.  As

---

[18]    Reply at n. 32; Original Obj. ¶ 37.

8

explained in *Granada Wines*, separate classification may be appropriate where the claims are of different legal character, and separate classification of administrative convenience classes is allowed under section 1122(b).  *See In re Hanish, LLC*, 570 B.R. 4, 16 (Bankr. D.N.H. 2017) ("*Granada Wines*' strict approach does not apply to 11 U.S.C. § 1122(b), which statutorily authorizes the separate classification of small unsecured claims subject to court approval."). Therefore, in such limited circumstances, a plan may separately classify claims and provide disparate treatment across such classes, thus implicating section 1129(b)(1)'s prohibition on disparate treatment that rises to the level of unfair discrimination.  In other words, the First Circuit's strict approach to classification does not mean that unfair discrimination under 1129(b)(1) is no longer a meaningful and important creditor protection.[19]

### b. *Granada Wines'* Strict Classification Rule Is Not *Dicta*

17.     The Oversight Board also labels the holding of *Granada Wines* as *dicta*, arguing that it was unnecessary for the First Circuit to address the standard for separate classification, because in *Granada Wines* the debtor failed to separately classify the relevant claims.  According to the Oversight Board, the First Circuit could have simply affirmed the judgment of the district court on that basis.  This argument is mistaken at several levels.

18.     First of all, in *Granada Wines* the First Circuit had to—and did—directly address classification in response to the debtor's argument that, despite its failure to separately classify the claims, one claim "should nevertheless be treated as if it were in a separate class because the plan treated it differently by providing for reduced payment on it." *Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*, 748 F.2d 42, 46 (1st Cir. 1984).  Because

---

[19]    For example, unsecured claims may be split into multiple classes consistent with *Granada Wines* based on certain claims being entitled to priority, or for inclusion in an administrative convenience class under section 1122(b).  Thus, in a cram-down context, an unsecured class may argue that it is being unfairly discriminated against in relation to other unsecured classes.

the First Circuit's classification analysis was essential to the resolution of the legal question before it, it was not *dicta* under the definition of *dicta* proffered by the Oversight Board.[20]

19.     Second, the implication from *Dedham Water Company* that a court's observations must be "essential" so as to not constitute *dictum* is <u>not</u> the governing standard in the First Circuit.  In *Berhe v. Gonzales*, 464 F.3d 74, 83 (1st Cir. 2006), which post-dates *Dedham Water Company*, the First Circuit explained that a prior decision in which it had analyzed the hypothetical status of a criminal offense under federal law was not *dicta*, endorsing the view of *dicta* set forth by the Ninth Circuit, under which "when a federal appellate court 'confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, ***regardless of whether doing so is necessary in some strict logical sense***.'"  *Id.* (quoting *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc)) (emphasis added).  Under this view, which "removes the question of necessity for relevant questions that the appellate court resolves in its opinion," *Sutton v. CHSPSC, LLC*, 2018 WL 3318961, at *6 (W.D. Tenn. July 5, 2018), there can be no question that *Granada Wines*' holding with respect to classification is binding on this Court.

20.     Finally, the Oversight Board cannot explain why, if the strict classification rule in *Granada Wines* is *dicta*, no lower court has treated it as such.  Courts in the First Circuit unwaveringly follow *Granada Wines* as binding authority (despite the popularity in other circuits of more relaxed standards).  Even the Second Circuit, though in disagreement, recognized *Granada Wines* as "***holding*** that a plan *must* classify all substantially similar claims together." *In re Bos. Post Rd. Ltd. P'ship*, 21 F.3d 477, 482 (2d Cir. 1994) (emphasis added).

---

[20]     Reply ¶ 38 (citing *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 972 F.2d 453, 459 (1st Cir. 1992) (describing *dictum* as observations "relevant, but not essential, to the determination of the legal questions then before the court")).

### c. *Granada Wines* **Properly Relies on Bankruptcy Act Authority**

21.     The Oversight Board also attacks *Granada Wines* on the basis that it derived its
strict classification rule from pre-Bankruptcy Code case law.  The Oversight Board seems to find
this meaningful because section 197 of the Bankruptcy Act referred to the "nature" of claims
while section 1122 of the Bankruptcy Code does not, and because Congress rejected legislation
that would have expressly barred the separate classification of claims.  As an initial matter,
whether the *Granada Wines* court made a mistake in its use of pre-Bankruptcy Code authority
should be a matter for the First Circuit to correct, not this Court.

22.     In any event, the Oversight Board's argument here is flawed.  *Granada Wines*
does not prohibit the separate classification of claims; it merely establishes a stricter standard for
separate classification than other circuits.  In addition, the First Circuit was correct in relying on
Bankruptcy Act precedent given that, as explained by the same law journal article cited by the
Oversight Board, the enactment of section 1122 "'codifies current case law surrounding the
classification of claims and equity securities.  ***It requires classification based on the nature of
the claims and equity interests classified***.'"  Scott F. Norberg, *Classification of Claims Under
Chapter 11 of the Bankruptcy Code: The Fallacy of Interest Based Classification*, 69 Am. Bankr.
L.J. 119, 137–38 (1995) (internal citations to congressional reports omitted).[21]  This legislative
history shows that Congress intended "the nature of claims" to remain the basis for classification,
leaving courts the task of refining that concept, which is exactly what *Granada Wines* did.

---

[21]  The Oversight Board's positions in its Reply are inconsistent.  The Oversight Board challenges *Granada Wines*
based on its citation to pre-Code precedent, suggesting that *Granada Wines* failed to recognize a change in the
law.  But the Oversight Board also admits that Congress intended no substantive change in the law on
classification with the passage of the Bankruptcy Code, Reply ¶ 41, and in support of that argument in favor of
continuity, cites to a set of Bankruptcy Act cases from other circuits purportedly employing relaxed
classification standards. Reply ¶ 41 n.17.

### d. *Granada Wines* **Applies to Unsecured Claims**

23.     The Oversight Board's assertion that *Granada Wines* repeated a rule of law only applicable to secured claims is equally unavailing.  The First Circuit's reference to "creditors of equal rank with claims against the same property" applies equally to unsecured claims given that such claims can differ in rank even if there is no difference between unsecured claims with respect to their rights against particular assets.  Further, while the phrase "creditors of equal rank with claims against the same property" may have been used in reference to secured creditors in *Scherk v. Newton*, 152 F.2d 747, 750 (10th Cir. 1945) (ruling that secured bondholders entitled to parity of treatment were properly included in same class) the phrase was then quoted in cases involving unsecured claims, such as *In re Los Angeles Land & Invs., Ltd.,* 282 F. Supp. 448, 453 (1968), *aff'd*, 447 F.2d 1366 (9th Cir.1971)[22] and *In re Fantastic Homes Enterprises, Inc.*, 44 B.R. 999, 1000 (M.D. Fla. 1984) (quoting *Los Angeles Land*), as well as *Granada Wines*, in support of the imposition of rules regarding the classification of claims.

24.     Essentially, what the Oversight Board is arguing is that *Granada Wines* was wrongly decided, that the First Circuit should have adopted a more relaxed classification rule, and that this Court should, therefore, decline to apply *Granada Wines*.  No other court in the First Circuit has taken this position, and this Court should not be the first.

### e. **Courts in First Circuit Do Not Deviate From** *Granada Wines*

25.     As stated above and in prior Committee pleadings, cases from courts within the First Circuit uniformly follow *Granada Wines* and treat it as binding authority in connection with classification issues.  Refusing to address this body of case law, the Oversight Board cites, as it

---

[22]   "The test to be applied appears to be one directed toward a determination of the 'nature' of the claim. This would encompass an analysis of the legal character or the quality of the claim as it relates to the assets of the debtor. Basically, it is simply a method of recognizing the rights of creditors which call for difference in treatment. Generally, however, 'All creditors of equal rank with claims against the same property should be placed in the same class.'" *In re Los Angeles Land & Invs., Ltd.,* 282 F. Supp. at 453.

has in the past,[23] two cases—*In re Nat'l Paper & Type Co. of P.R.,* 120 B.R. 624, 626 (D.P.R.

1990) and *In re Manuel Mediaviavilla, Inc.,* 2015 WL 3780463, at *6 (Bankr. D.P.R. June 16,

2015)—for the proposition that courts in the District of Puerto Rico "routinely" adopt relaxed

classification rules.  Putting aside the Oversight Board's bizarre use of the word "routinely" to

describe two cases separated by 25 years,[24] the Oversight Board's reliance on these two cases is

suspect.  As the Committee explained the last time the Oversight Board cited these two cases,

both are inapposite:[25] *National Paper* dealt with an administrative convenience class explicitly

allowed by section 1122(b) of the Bankruptcy Code, and *Manuel Mediaviavilla* involved

unsecured claims against a different debtor.  The Oversight Board has no support within the First

Circuit for the relaxed classification rule it proposes this Court adopt.

### III.    Nothing in PROMESA or Chapter 9 Overrides Controlling Case Law

26.    PROMESA supports application of the strict classification rule in *Granada*

*Wines*.  Section 301(e) of PROMESA mandates that the Oversight Board "consider" only two

things when determining whether claims are substantially similar: (1) secured status and (2)

rank—*i.e.*, the exact same concepts relevant to classification under *Granada Wines*.

The Oversight Board attempts to dig itself out of this hole by arguing that the term "consider"

allows it to "consider other factors, and to afford those other factors greater weight,"[26] but the

Oversight Board's alleged freedom to consider a whole host of unnamed factors when

classifying claims is belied by the very case law it cites, *United States v. Savoie*, 985 F.2d 612,

618 (1st Cir. 1993).  In that case, the First Circuit concluded that the statute at issue "demands no

---

[23]    Oversight Bd. Obj. to Original 3013 Mot. ¶¶ 54-55 [Docket No. 12726].

[24]    The Oversight Board's description of "routine" district practice conveniently omits the case of *In re El Comandante Mgmt. Co*., LLC, 2006 WL 3903593, at *5, which cited to *Granada Wines* as providing the First Circuit's rule on classification.

[25]    Comm. Reply in Support of Original 3013 Mot. ¶¶ 48-50 [Docket No. 12872].

[26]    Reply ¶ 48.

more than that the district court 'consider' *the factors enumerated therein*"—here, the "factors

enumerated" in section 301(e) of PROMESA are (1) secured status and (2) rank.   And the

legislative history further clarifies that section 301(e) "*requires* the Oversight Board to determine

whether creditors within an entity are 'substantially similar' *based on whether the claims are*

*secured and whether such claims have priority over other claims*." *See* H.R. Rep. No. 114-

602(I) (2016), at 48 ("Section 301") (emphasis added).  Security and priority—that is the extent

of the "menu" of factors that the Oversight Board is permitted to consider in classifying claims.

27.      Further, under the doctrine of *inclusio unius est exclusio alterius*, Congress'

inclusion in section 301(e) of security and priority as the relevant considerations in determining

whether claims are "substantially similar" excludes consideration of other factors not identified

in the statute. *See Sasen v. Spencer*, 879 F.3d 354, 362, (1st Cir. 2018) ("[T]he venerable canon

of statutory construction *inclusio unius est exclusio alterius . . .* teaches that if one of a category

is expressly included within the ambit of a statute, others of that category are implicitly

excluded") (citing *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 68 (1st Cir. 2002)).

28.      "Congress is presumed to be knowledgeable about existing case law pertinent to

any legislation it enacts." *United States v. Phillips*, 19 F.3d 1565, 1581 (11th Cir.

1994), *amended*, 59 F.3d 1095 (11th Cir. 1995) (citing *Miles v. Apex Marine Corp.,* 498 U.S. 19,

32 (1990)).  Thus, in the absence of any indication otherwise, Congress, in enacting PROMESA

specifically for Puerto Rico (a First Circuit jurisdiction), is presumed to know that *Granada*

*Wines* establishes the classification rule in the First Circuit.  With Congress' knowledge of case

law established, its intent to codify *Granada Wines* becomes clear.  Knowing *Granada Wines* set

forth the rule in the First Circuit, Congress acted to ensure that *Granada Wines* was respected by

mandating that the Oversight Board consider the only two factors relevant to classification under

*Granada Wines*, secured status and rank.  In inviting this Court to turn its back on *Granada Wines*, the Oversight Board invites the Court to turn its back on Congress as well.[27]

29.     Finally, the Oversight Board's enthusiastic citation of chapter 9 cases from other circuits does nothing to prove that different classification rules apply in chapter 9.  These cases, rather, are fully consistent with the idea that, because section 901 of the Bankruptcy Code incorporates section 1122 into chapter 9, "application of § 1122 in chapter 9 cases should be essentially the same as in chapter 11 cases."  *In re Hardeman Cty. Hosp. Dist.*, 540 B.R. 229, 234 (Bankr. N.D. Tex. 2015) (citing Collier on Bankruptcy P 901.04).[28]  The reason the chapter 9 cases the Oversight Board has cited from other circuits applied more lenient classification rules is because those circuits had already developed such classification rules for chapter 11 cases.

30.     Here, this Court sits in the First Circuit and applies the law as developed in the First Circuit; simply because the Title III cases involve governmental debtors does not mean that the Court is free to apply the law from whatever circuit the Oversight Board prefers.  Thus, *Granada Wines* applies to these Title III cases and requires that CW General Unsecured Claims and Retiree Claims be classified together.

## **CONCLUSION**

31.     Based on the foregoing, the Court should deny the Oversight Board's motion to approve the Disclosure Statement based on the impermissible classification of CW General Unsecured Claims in the Proposed Plan.

---

[27]  The enactment of section 301(e) of PROMESA is another blow to the Oversight Board's argument, discussed above, that the strict classification rule in *Granada Wines* is mere *dicta* that need not be followed.  Even if *Granada Wines*' classification rule were mere *dicta*, the implantation of the *Granada Wines* rule into PROMESA via section 301(e) means that this Court must follow it.

[28]  *See also In re City of Detroit*, 524 B.R. 147, 246 (Bankr. E.D. Mich. 2014) (reciting law of section 1122 and citing to corporate cases); *In re Corcoran Hosp. Dist.*, 233 B.R. 449, 454 (Bankr. E.D. Cal. 1999) (same).

WHEREFORE, the Committee respectfully requests that the Court deny the Disclosure Statement Motion and grant such other relief as is just and proper.

Dated: July 6, 2021

By: _/s/ Luc A. Despins_

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: _/s/ Juan J. Casillas Ayala_

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
crernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*