**U.S. Bankruptcy Court**

**District of Puerto Rico**

*Exhibit #1*
*28 PAGES*
*9 PAGES*

Notice of Electronic Filing

The following transaction was received from Ramirez, Marian entered on 8/5/2020 at 2:50 PM AST and filed on 8/5/2020

**Case Name:** COMMONWEALTH OF PUERTO RICO, et al.
**Case Number:** 17-03283-LTS9
**Document Number:** 13990

**Docket Text:**
MEMORANDUM ORDER DENYING MOTION OF YASHEI ROSARIO FOR RELIEF FROM THE AUTOMATIC STAY (DOCKET ENTRY NO. [13597]). Signed by Judge Laura Taylor Swain on 8/5/2020. (mr)

*Exhibit #1*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO
et al.,

               Debtors.[1]

-----------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

MEMORANDUM ORDER DENYING MOTION OF YASHEI ROSARIO FOR
RELIEF FROM THE AUTOMATIC STAY (DOCKET ENTRY NO. 13597)

Before the Court is the *Motion of Stay Relief Based on Modern Legal Genocide*

(Docket Entry No. 13597 in Case No. 17-3283,[2] the "Motion"), filed by Yashei Rosario[3] (the

"Movant"), which the Court construes as a motion seeking relief from the automatic stay

imposed by the commencement of the above-captioned Title III case on the case captioned

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case
number and the last four (4) digits of each Debtor's federal tax identification number, as
applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth")
(Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii)
Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-
BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways
and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last
Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the
Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-
BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric
Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits
of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA")
(Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801)
(Title III case numbers are listed as Bankruptcy Case numbers due to software
limitations).

[2]     All docket entry references are to entries in Case No. 17-3283, unless otherwise noted.

[3]     It is unclear whether Development Socioeconomic Sustainable Fideicomiso of Vieques,
CODESU, Inc. is a movant with respect to the Motion.  For the avoidance of doubt, the
Motion is denied in its entirety.

Rosario v. Commonwealth of Puerto Rico, Case No. 17-cv-2320 in the United States District

Court for the District of Puerto Rico (the "2017 Civil Action"), and the appeal therefrom

currently pending before the United States Court of Appeals for the First Circuit, Case No. 18-

1782 (the "Appeal").

       The Court has considered carefully all of the parties' submissions. For the

following reasons, the Motion is denied.

## BACKGROUND

       On May 3, 2017, the Oversight Board commenced a debt adjustment proceeding

on behalf of the Commonwealth under Title III of the Puerto Rico Oversight, Management, and

Economic Stability Act ("PROMESA").[4]

       On November 27, 2017, Movant and the Development Socioeconomic

Sustainable Fideicomiso of Vieques, CODESU, Inc. (collectively, the "Plaintiffs") commenced

the 2017 Civil Action and named as defendants the Commonwealth of Puerto Rico (the

"Commonwealth") and certain elected leaders of the Commonwealth. Plaintiffs' complaint

(Docket Entry No. 2 in Case No. 17-2320, the "2017 Complaint") alleges that the island of

Vieques is a "double colony" because it is a "colony of Puerto Rico" which is itself a "colony of

the United States." (2017 Compl. ¶ 5.) As a result of that status, the 2017 Complaint alleges,

Vieques has suffered more than seventy-six years of "non-development," mismanagement,

neglect, and a lack of political rights and self-rule. (See, e.g., 2017 Compl. ¶¶ 1, 5, 36-41, 67,

75, 84.) As a remedy, the 2017 Complaint seeks a "Vieques Sovereignty Insular Referendum"

whereby the people of Vieques would be able to vote as to whether they will remain a

---

[4]     PROMESA is codified at 48 U.S.C. §§ 2101 et seq. References to "PROMESA" sections
herein are to the uncodified version of the statute.

Commonwealth municipality or become a separate United States territory. (2017 Compl. ¶ 6.)
The 2017 Complaint also requests that the court "establish the sum to be paid for the Vieques
Sovereignty Insular Referendum," and order the United States federal government to supervise
the plebiscite. (2017 Compl. ¶ 15, 45.)[5]

On June 29, 2018, Judge Cerezo entered an order dismissing the 2017 Civil
Action. (Docket Entry No. 16 in Case No. 17-2320.) Plaintiffs filed a notice of appeal on
August 3, 2018. (Docket Entry No. 21 in Case No. 17-2320.)

On September 24, 2018, the United States Court of Appeals for the First Circuit
entered an order directing the parties to the Appeal to "to show cause within fourteen days of the
date of this order whether the automatic stay applies to all or any part of this appeal." (See Doc.
No. 00117342930 in Case No. 18-1782.) On November 27, 2018, the First Circuit entered an
order staying the Appeal "[i]n view of the petition to restructure [the Commonwealth's] debts
filed by the Commonwealth of Puerto Rico." (See Doc. No. 00117369929 in Case No. 18-1782.)
On December 5, 2019, Plaintiffs filed a status report requesting that the First Circuit lift the stay.
(See Doc. No. 00117523690 in Case No. 18-1782.) On December 11, 2019, the First Circuit
denied that request and "directed [Plaintiffs] to the Title III court to seek stay relief if such relief

---

[5]     Although the Oversight Board is correct that the 2017 Complaint refers to "damages,"
including a "Non-Development Damage Claim," (see, e.g., Opp. ¶ 24 (quoting 2017
Compl. ¶ 96)), the 2017 Complaint does not appear to seek a monetary recovery.
Plaintiffs appear to be using the term "damages" to describe an alleged injury rather than
to describe the remedy sought for that injury. (See e.g., 2017 Compl. ¶ 5 ("76 years of
non-development damages are more than enough, to understand that the Commonwealth
does not have the capacity to manage 78 municipalities."); ¶ 14 (". . . Plaintiffs will raise
the funds to pay for the proceedings to the Electoral Commission of Puerto Rico."); ¶ 24
("[T]he petitioners pursue from the Honorable Court for a 'Non-Monetary Governmental
Redress of Grievances . . . , the Sovereignty Insular Referendum, as the settlement for the
76 years of Non-Development Damages."); see also Reply at 16 ("[C]ould the Honorable
Court consider granting the Community of Vieques . . . their Voting Rights . . . as long as
the Plaintiffs paid the proceedings . . . ?").)

is desired." (See Doc. No. 00117526563 in Case No. 18-1782.)  The First Circuit reiterated that

instruction on March 26, 2020, in response to Plaintiffs' request that the First Circuit reconsider

its ruling concerning the applicability of the automatic stay. (See Doc. No. 00117570613 in Case

No. 18-1782.)

On June 30, 2020, Movant commenced a civil action captioned Rosario v.

Financial Oversight and Management Board for Puerto Rico, Case No. 20-cv-1307 (the "2020

Civil Action") in the United States District Court for the District of Puerto Rico. The complaint

in the 2020 Civil Action (Docket Entry No. 3 in Case No. 20-cv-1307, the "2020 Complaint")

argues in relevant part that the 2017 Civil Action should not be stayed because (i) the length of

the stay applicable to actions against the Commonwealth has exceeded the amount of time

provided in PROMESA (2020 Compl. at 7-8), (ii) a stay of the 2017 Civil Action violates the

Voting Rights Act of 1965 and the Fifteenth Amendment to the United States Constitution (2020

Compl. at 1, 6-8), and (iii) Plaintiffs are not creditors or collection companies seeking a

monetary recovery from the Commonwealth.  (2020 Compl. at 7.)

On July 9, 2020, the judge presiding over the civil action entered an order

"constru[ing] the [2020] Complaint's request for stay relief as a motion for relief from the

automatic stay . . . , and transfer[ing] it to Case No. 17-3283 for consideration as a contested

matter in the Commonwealth's Title III case." (Docket Entry No. 3 in Case No. 20-cv-1307.)

The Oversight Board filed a response in opposition to the Motion on July 23,

2020 (Docket Entry No. 13816, the "Opposition").  In its response, the Oversight Board argues

that the automatic stay imposed by section 362 of the Bankruptcy Code applies to the 2017 Civil

Action.  The Oversight Board contends that the First Circuit has already determined that the

automatic stay is applicable (Opp. ¶ 22), and that the stay applies to judicial actions against

debtors regardless of whether the proceeding seeks a monetary recovery. (Opp. ¶¶ 23-26.)

Additionally, the Oversight Board argues that Movant has failed to demonstrate that cause exists

to lift the automatic stay. The Oversight Board contends that continuation of the 2017 Civil

Action would burden the Commonwealth and raise complex issues that present the potential for

interference with the Commonwealth's property and the administration of the Commonwealth's

Title III case. (Opp. ¶¶ 34-35.)

Movant filed a reply on July 24, 2020 (Docket Entry No. 13864, the "Reply").

The Reply reiterates Movant's allegations concerning the historical mistreatment and neglect of

Vieques and the political status underlying that history. The Reply provides specific examples of

individuals who allegedly died or were injured in Vieques as a result of inadequately developed

infrastructure or lack of medical facilities. (Reply at 10-12.) The Reply also reiterates Movant's

argument that the length of the stay has exceeded the length allowed by the terms of PROMESA

(Reply at 15) and that individuals have been deprived of their rights under the Voting Rights Act

and the Fifteenth Amendment to the United States Constitution. (Reply at 15-16.)

DISCUSSION

Applicability of the Automatic Stay

Movant's contention that the automatic stay does not apply to the Appeal has

already been rejected by the First Circuit in no fewer than three orders. (See Doc. No.

00117369929 in Case No. 18-1782 ("In view of the petition to restructure its debts filed by the

Commonwealth of Puerto Rico, this appeal is stayed."); Doc. No.  00117526563 in Case No. 18-

1782 (denying Plaintiffs' "request that this court lift the PROMESA-based stay of the appeal");

Doc. No. 00117570613 in Case No. 18-1782 (denying Plaintiffs' motion to reconsider order

denying request to lift stay).)

      "Whether the stay applies to litigation otherwise within the jurisdiction of a

district court or court of appeals is an issue of law within the competence of both the court within

which the litigation is pending . . . and the bankruptcy court supervising the reorganization." In

re Baldwin-United Corp. Litig., 765 F.2d 343, 347 (2d Cir. 1985); see Municipality of San Juan

v. Commonwealth of Puerto Rico, 919 F.3d 565, 575 (1st Cir. 2019) ("In the ordinary

bankruptcy context, a district court has concurrent jurisdiction with a bankruptcy court to decide

whether the automatic stay provision of Section 362 applies to its own proceedings. . . . And we

see no basis for concluding that the rule is otherwise with respect to the District Court, the Title

III Court, and the PROMESA automatic stay."). Here, the First Circuit has determined that the

stay is applicable. Although the First Circuit directed Movant to this Court to seek relief from

the automatic stay, there is no indication in the First Circuit's orders that it provided leave for

Movant to collaterally attack the determination that the automatic stay is applicable to the

Appeal.

      In any event, Movant's contention that the automatic stay imposed by Title III of

PROMESA has expired is incorrect. PROMESA incorporates by reference two automatic stay

provisions from the Bankruptcy Code into Title III. 48 U.S.C. § 2161(a). Those provisions of

the Bankruptcy Code impose broad stays of certain kinds of proceedings and actions against

Title III debtors and their property, and those stays remain in force following the commencement

of the Commonwealth's Title III case. See 11 U.S.C. §§ 362, 922. Movant's assertion that the

stay has expired appears to conflate those provisions with a separate and distinct stay that was

imposed by Section 405 of PROMESA upon enactment of the statute and establishment of the

Oversight Board. See 48 U.S.C. § 2194(b). The Section 405 stay expired more than three years

ago, pursuant to the terms of PROMESA. See 48 U.S.C. § 2194(d).

Movant's argument that the automatic stay does not apply because the 2017 Civil

Action does not seek a monetary recovery is incorrect as a matter of law. The automatic stay

operates as a stay of "the commencement or continuation . . . of a judicial, administrative, or

other action or proceeding against the debtor that was or could have been commenced before the

commencement of the case." 11 U.S.C.A. § 362(a)(1) (Westlaw through P.L. 116-150). The

2017 Civil Action is a judicial action that was commenced prior to the commencement of the

Commonwealth's Title III case, and it therefore falls within the scope of the automatic stay.

## Relief from the Automatic Stay

Section 362(d)(1) of the Bankruptcy Code, made applicable in these proceedings

by Section 301 of PROMESA, 48 U.S.C. § 2161, permits a court to grant relief from the

automatic stay "for cause." To determine whether cause exists to lift the automatic stay, courts

in this circuit examine the factors enumerated by the United States Court of Appeals for the

Second Circuit in In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990) ("Sonnax"). See

Autonomous Municipality of Ponce v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight

& Mgmt. Bd. for P.R.), 939 F.3d 356, 362 (1st Cir. 2019) ("The Title III court properly looked to

the Sonnax factors outlined by the Second Circuit as a helpful guide to granting or denying relief

from a stay."). Of particular relevance to the instant case are the following factors identified in

the Sonnax decision: "whether relief would result in a partial or complete resolution of the

issues," "lack of any connection with or interference with the bankruptcy case," "whether

litigation in another forum would prejudice the interests of other creditors," "the interests of

judicial economy and the expeditious and economical resolution of litigation," "whether the
parties are ready for trial in the other proceeding," and the "impact of the stay on the parties and
the balance of harms." Sonnax, 907 F.2d at 1286.

Movant has failed to demonstrate that the Sonnax criteria weigh in Movant's
favor. Lifting the automatic stay would not result in the resolution of issues that would aid the
Title III Cases. Instead, stay relief would require the Commonwealth to expend some of its
limited resources to litigate the 2017 Civil Action, including the Appeal. Moreover, other
litigants may seek to participate in that litigation (which is in its infancy) or may commence
separate litigation concerning the terms of the plebiscite or the outcome of the plebiscite. To the
extent that the plebiscite were to result in the secession of a municipality from the
Commonwealth, that outcome could complicate the Commonwealth's path forward in the Title
III cases and divert the Commonwealth's attention and resources from the Title III process. The
use of litigation resources in that manner, and the potential separation of a municipality from the
Commonwealth, may be prejudicial to the interests of the Commonwealth's creditors and other
stakeholders.

The Court understands that Movant's concerns regarding the political status of
Vieques and the quality of life on Vieques are of great importance to Movant and may be of
great concern to other residents on the island. Many of these concerns are principally political
concerns; Movant has not proffered facts or legal authority in support of the contention that the
operation of the automatic stay abridges residents' rights under the Voting Rights Act or the
Fifteenth Amendment to the Constitution of the United States. Significantly, moreover, the
automatic stay does not preclude Movant or other residents of Vieques from raising grievances
concerning the political status of Vieques and the economic development of the island through

Case:17-03283-LTS Doc#:17224-1 Filed:07/06/21 Entered:07/06/21 16:57:47 Desc:
Case:17-03283-LTS Doc#:13990 Filed:08/05/20 Entered:08/05/20 14:50:46 Desc: Main
Document Page 9 of 9

Exhibit Page 10 of 38

#1

established political processes. Movant is not precluded from raising the issues described in the 2017 Civil Action and the Motion with political officials at the local, Commonwealth, and national levels.

Maintenance of the automatic stay will delay resolution of the 2017 Civil Action and Movant's requests for judicial relief therein. However, the Court must weigh those considerations against the burden that stay relief would impose on the Commonwealth. The Court must consider that the Commonwealth's ability to restructure a broad range of its debt obligations successfully is essential to ensuring the overall fiscal health of Puerto Rico, addressing the renewal of critical infrastructure, and providing appropriate care for the population of Puerto Rico. Accordingly, while it is understandable that Movant wishes to resolve expeditiously the claims raised in the 2017 Civil Action, diversion of the resources that would be required to attend to separate litigation of all such claims would impede the Commonwealth's progress toward achieving financial stability.

Accordingly, the Court concludes that Movant has failed to demonstrate that cause exists for relief from the automatic stay.

## CONCLUSION

For the foregoing reasons, the Motion is denied in its entirety. This Memorandum Order resolves Docket Entry No. 13597.

SO ORDERED.

Dated: August 5, 2020

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

SRF 44376

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

--------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

      Debtors.[1]

--------------------------------------------------------------x

YASHEI ROSARIO, *et al.*

      Movants,

v.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,

      Respondent.

--------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 13597**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to
the Commonwealth and shall
only be filed in the lead Case No.
17 BK 3283-LTS.**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**OBJECTION OF FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO TO MOTION FOR RELIEF
FROM STAY FILED BY YASHEI ROSARIO AND DEVELOPMENT
SOCIOECONOMIC SUSTAINABLE FIDEICOMISO OF VIEQUES, CODESU, INC.**

Case:17-03283-LTS   Doc#:17224-1   Filed:07/06/21   Entered:07/06/21 16:57:47   Desc:
Case:17-03283-LTS   Doc#:13816   Filed:07/23/20   Entered:07/23/20 13:55:48   Desc: Main
Exhibit 1   Page 13 of 38
Document     Page 4 of 28

#1

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla,*
    217 F. Supp. 3d 508 (D.P.R. 2016)............................................................................13, 14

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.,*
    369 B.R. 87 (D.P.R. 2007)...........................................................................................13

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.),*
    28 B.R. 324 (Bankr. S.D.N.Y. 1983)............................................................................17

*Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin.*
    *Oversight & Mgmt. Bd.),*
    899 F.3d 13 (1st Cir. 2018).........................................................................................14

*Goya Foods v. Unanue-Casal (In re Unanue-Casal),*
    159 B.R. 90 (D.P.R. 1993), aff'd without opinion sub nom. Unanue v.
    *Unanue-Casal (In re Inanue-Casal),* 23 F.3d 395 (1st Cir. 1994) ...............................12, 13-14

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.),*
    2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug 4, 2006)..........................................17

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,*
    997 F.2d 581 (9th Cir. 1993) .....................................................................................11

*In re 234-6 West 22nd St. Corp.,*
    214 B.R. 751 (Bankr. S.D.N.Y. 1997). Bankruptcy ................................................12

*In re Birmingham Cosmetic Surgery, P.L.L.C.,*
    No. 14-58784, 2015 WL 1038801 (Bankr. E.D. Mich. Mar. 5, 2015) ....................14

*In re Breitburn Energy Partners LP,*
    571 B.R. 59 (Bankr. S.D.N.Y. 2017)..........................................................................14

*In re City of Stockton,*
    484 B.R. 372 (Bankr. E.D. Cal. 2012).........................................................................19

*In re Cummings,*
    221 B.R. 814 (Bankr. N.D. Ala. 1998) .......................................................................15

*In re Lahman Mfg. Co.,*
    31 B.R. 195 (Bankr. D.S.D. 1983)...............................................................................17

*In re Motors Liquidation Co.,*
    No. 09-50026, 2010 WL 4630327 (S.D.N.Y. Nov. 8, 2010)....................................19

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ............................................................................... 1

PROCEDURAL HISTORY ................................................................................... 3

ARGUMENT ......................................................................................................... 9

    I.     THE AUTOMATIC STAY APPLIES TO THE UNDERLYING
          PROCEEDING AND ITS APPEAL. ......................................................... 9

    II.    NO CAUSE EXISTS TO LIFT THE AUTOMATIC STAY. ............................. 11

CONCLUSION ..................................................................................................... 21

**TABLE OF AUTHORITIES**

(continued)

Page(s)

*In re Murrin*,
   477 B.R. 99 (D. Minn. 2012)...............................................................................................15

*In re Residential Capital, LLC*,
   2012 Bankr. LEXIS 3641 (Bankr. S.D.N.Y. Aug 8, 2012).......................................................17

*In re Taub*,
   413 B.R. 55 (Bankr. E.D.N.Y. 2009)....................................................................................15

*Mazzeo v. Lenhart (In re Mazzeo)*,
   167 F.3d 139 (2d Cir. 1999).................................................................................................14

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
   474 U.S. 494 (1986)..............................................................................................................12

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
   537 B.R. 128 (Bankr. D.P.R. 2015)......................................................................................10

*Peaje Invs. LLC v. Garcia-Padilla*,
   Nos. 16-2365 (FAB), 16-2384 (FAB), 16-2696 (FAB), 2016 U.S. Dist. LEXIS
   153711 (D.P.R. Nov. 2, 2016), *aff'd*, 845 F.3d 505 (1st Cir. 2017)........................................14

*Ramos v. Banco Popular de P.R. (In re Ramos)*,
   493 B.R. 355 (Bankr. D.P.R. 2013)......................................................................................11

*Soares v. Brockton Credit Union (In re Soares)*,
   107 F.3d 969 (1st Cir. 1997)................................................................................................12

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
   907 F.2d 1280 (2d Cir. 1990)...............................................................................................13

*Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty
   Prod., Inc.)*,
   311 B.R. 551 (Bankr. C.D. Cal. 2004)..................................................................................19

*United States v. Moore-Bush*,
   963 F.3d 29 (1st Cir. 2020)...................................................................................................9

**Statutes**

11 U.S.C. § 101(27).................................................................................................................11

11 U.S.C. § 362(a)...........................................................................................................10, 11

iii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

11 U.S.C. § 362(b) ..............................................................................................................11

11 U.S.C. § 362(d) .............................................................................................................12

48 U.S.C. §§ 2101-2241 .......................................................................................................1

52 U.S.C. § 10301 *et seq.* ...................................................................................................4

Foraker Act, Ch. 191, 31 Stat. 77 (1900) .............................................................................5

Jones Act - Puerto Rico Federal Relations Act, Ch. 145, 39 Stat. 951 (1917) ...................5

**Other Authorities**

P.R. Const. art. I, § 3...................................................................................................12, 21

P.R. Const. art. VII, § 1......................................................................................................21

P.R. Const. art. VIII, § 1..............................................................................................12, 21

3 Collier on Bankruptcy ¶ 362.05 (16th ed. 2020) ...........................................................11

P.R. Elections Code of 2020, Art. 11.1 of Act 58-2020 ....................................................21

iv

Case:17-03283-LTS  Doc#:17224-1  Filed:07/06/21  Entered:07/06/21 16:57:47  Desc:
Case:17-03283-LTS  Doc#:13816  Filed:07/23/20  Entered:07/23/20 13:55:48  Desc: Main
Document    Page 7 of 28
Exhibit  Page 17 of 38

#1

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial

Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the

Commonwealth's sole Title III representative pursuant to section 315(b) of the *Puerto Rico*

*Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this

objection (the "Objection") to the *Motion of Stay Relief Based on Modern Legal Genocide* [ECF

No. 13597] (the "Motion"), filed by Yashei Rosario ("Rosario") and Development Socioeconomic

Sustainable Fideicomiso of Vieques, CODESU, Inc. ("CODESU" and, together with Rosario,

"Movants"), who are parties in the case captioned *Rosario, et al. v. Commonwealth of Puerto Rico,*

*et al.*, Civil No. 17-2320 (the "Underlying Proceeding"), for an order requiring, among other

things, a territorial referendum be held on the secession of the municipality of Vieques from the

Commonwealth, dismissed by the United States District Court for the District of Puerto Rico (the

"District Court"), and thereafter appealed to the United States Court of Appeals for the First Circuit

(the "First Circuit"), Case No. 18-1782 (the "Appellate Proceeding"), which court determined the

appeal was automatically stayed and directed Movants to request stay relief if desired.  The

Commonwealth respectfully requests the Court deny the Motion for the reasons set forth below:

## SUMMARY OF ARGUMENT

1.      Movants are an individual and non-profit corporation requesting termination of the

automatic stay to pursue an appeal of the dismissal of the Underlying Proceeding, which litigation

sought at least two forms of relief: (1) an order compelling the Commonwealth to hold a

referendum on the political status of the island municipality of Vieques (the "Referendum") in

light of the Commonwealth's alleged mismanagement of Vieques, and (2) unspecified reparations

---

[2]      PROMESA has been codified at 48 U.S.C. §§ 2101-2241.

from the Commonwealth to remedy such alleged mismanagement.[3] On appeal of the District Court order dismissing the Underlying Proceeding, the First Circuit held the Title III stay applied and stayed the case. In reaching this decision, the First Circuit further ruled that, should Movants desire to proceed with the Appellate Proceeding, Movants should seek stay relief from the Title III Court. Thereafter, Movants filed another complaint in the District of Puerto Rico, which was construed as a motion for stay relief and transferred to the Title III Court for further consideration.[4] The Title III Court then ordered briefing on the Motion. Movants contend the stay should not apply to their claims (and, in particular, the Appellate Proceeding) because their action seeks the determination of the voting rights of the people of Vieques. Over Movants' opposition, the First Circuit already ruled the automatic stay applies after reviewing briefing from Movants and the Commonwealth on the issue. Thus, in the absence of showing appropriate "cause" (which Movants cannot demonstrate), the requested stay relief should be denied.

     2.    Movants have not established, or even attempted to demonstrate, that "cause" exists to lift the automatic stay. Although the Motion does not address the *Sonnax* factors, those factors weigh heavily against lifting the stay. The Underlying Proceeding threatens to interfere with the Commonwealth's property and the Title III restructuring because Movants' proposed Referendum, if approved, would potentially remove an entire municipality from the Commonwealth, and in addition, proposes that project approvals and federal funds assignments be conditioned on the approval of Plaintiffs' non-profit community board. Simply put, Movants can pursue their

---

[3] The procedural history of this matter is complicated and the Motion is unclear as to the precise relief sought from the Title III Court. However, as described herein, it does appear as if the relief sought should be limited to whether the automatic stay of the appeal of the dismissal of the Underlying Proceeding should be terminated.

[4] As discussed *infra* ¶ 20, this filing generally alleges the same grievances, and makes the same demands, as set forth in the complaint initiating the Underlying Proceeding.

interests through the political process, rather than through litigation, while the stay remains in place. Specifically, the stay does not prevent Movants from petitioning the Legislative Assembly of Puerto Rico to pass a resolution to hold a special referendum on the secession of Vieques, or pursuing any other proper political path they so choose to achieve their goal. Accordingly, for the reasons stated herein, the Motion should be denied in its entirety.

## PROCEDURAL HISTORY

### A. The Underlying Proceeding Seeks an Order Requiring a Referendum on the Political Status of the Municipal Island of Vieques, Puerto Rico.

3. On November 27, 2017, Movants filed a *pro se* complaint with the District Court against the Commonwealth, the President of the Puerto Rico House, Carlos Johnny Méndez, the President of the Puerto Rico Senate, Thomas Rivera-Schatz, and then-Governor Ricardo Rosselló. Underlying Proceeding, ECF No. 2 (the "Complaint").[5]

4. The Complaint asserts the Commonwealth has historically mismanaged the island municipality of Vieques and failed to represent its interests, and alleges, *inter alia*, the following:

     a. The use of a portion of the municipality as a United States naval training facility, operating from 1940 to 2003, occurred without the consent of the local population. Complaint ¶¶ 1-4;

---

[5] Movants previously filed a similar action with the District Court on July 11, 2017. *See Development Socioeconomic Sustainable Trust of Vieques v. Commonwealth of Puerto Rico*, Case No. 17-1940. Unlike the Underlying Proceeding, the previous action explicitly demanded $250,000 in addition to remedies similar to those sought here. On July 18, 2017, the Court, in a text-only order, "[took] judicial notice of Title III of PROMESA and its bankruptcy-like stay provisions" and administratively closed the case, noting that it may be reopened "upon the lifting of the stay or the conclusion of the bankruptcy proceedings, whichever shall first occur." ECF No. 6, Case No. 17-1940. It does not appear that Movants took further steps in that action along the lines suggested in the District Court's order.

3

    b.    Economic development and infrastructure improvements should have occurred in the municipality as recognition for hosting the naval training facility. *Id.* ¶¶ 3-4, 27-28, 53-57, 94;

    c.    The Commonwealth and its politicians have neglected the municipality of Vieques, ignored its needs, and as a result, it suffers from inadequate economic development and poor infrastructure. *Id.* ¶¶ 30-31, 66-72, 74. Consequently, Movants claim that Vieques residents must travel to the Main Island to go shopping and seek certain medical care by means of an inadequate ferry service. *Id.* ¶¶ 67-70; and,

    d.    The Commonwealth poorly administered disaster relief for the municipality. *Id.* ¶¶ 34, 36, 37, 40.

5.    Movants allege the Commonwealth is in violation of the Voting Rights Act, 52 U.S.C. § 10301 *et seq.* (*id.* ¶¶ 21, 32, 50, 82), and violated Movants' First Amendment rights, *id.* ¶ 46, by "abridg[ing] their voices in Congress," *id.* ¶ 4.

6.    To remedy those alleged violations, the Complaint seeks an order compelling the Commonwealth to hold the Referendum regarding the political status of the municipality of Vieques.[6]  As proposed therein,[7] the Referendum would present three options to voters:

---

[6]    In particular, Movants explain, "the Case is about requesting an amendment to the Foraker Law, for Vieques to pull apart of the Puerto Rico Territory, as earned for the 63 years to become the 6th Insular U.S. Territory." *Id.* ¶ 54.  They seek to accomplish this by holding the Referendum, which would offer separation as an option.  The Foraker Act, ch. 191, 31 Stat. 77 (1900), since superseded by the Jones Act - Puerto Rico Federal Relations Act, ch. 145, 39 Stat. 951 (1917), established a civil government in Puerto Rico.  Movants, however, do not specify as to which parts of the Foraker Act they seek to amend, or if those provisions still exist in the current body of law.

[7]    The precise options available to voters in the Referendum vary across the pleadings.  In each instance, however, the Referendum seeks a determination as to the political status of Vieques.

4

(1) Vieques would remain a municipality while "becoming State 51 with the Commonwealth of
P.R."; (2) Vieques would remain a municipality and become "State 51" along with the
Commonwealth, in addition to "[reactivating] the Naval Training Range" with benefits and
monetary compensation afforded to the residents and "Native Viequenses"; or (3) Vieques would
become a separate territory of the United States independent of the Commonwealth, and the
CODESU Governance Community Board[8] would have the power to approve or disapprove federal
funds and other government projects. *Id.* ¶ 43.

7.    The Complaint also seeks certain relief to facilitate the Referendum, as well as
monetary relief. Specifically, it seeks an order (i) "establish[ing] the sum to be paid for the Vieques
Sovereignty Insular Referendum," and (ii) ordering the acting U.S. Attorney for Puerto Rico and
"Federal Authorities" to supervise the Referendum because "Plaintiffs fear the Commonwealth's
politicians." *Id.* ¶¶ 15, 45. The Complaint also appears to request "reparations" to remedy the
Commonwealth's alleged neglect of the municipality, although no amount is specified. *See id.* ¶
96 ("Reparations may also be applied to other situations where one party must pay for damages
inflicted upon another party. 1940 - 2003 - 2017: Non-Development Damage Claim.").

8.    Furthermore, the Complaint alleges the relief it seeks is not related to the Title III
cases because Movants will "pay the Electoral Commission of Puerto Rico" for the Referendum's
costs. *Id.* ¶ 16. In furtherance of their intent to pay for the Referendum, Movants authorize the
Court to "place a lien on [Rosario's] Property Title for the Court fees $400.00 [] and the sum" that
the Court establishes must be paid for the costs of the Referendum. *Id.* ¶¶ 18-19.

9.    On December 8, 2017, Movants filed a motion requesting the District Court to issue
an order prohibiting Commonwealth agencies "holding properties in land in Vieques" from selling

_____

[8]    It is not clear what entities comprise the CODESU Governance Community Board.

that land. Underlying Proceeding, ECF No. 5. According to Movants, the requested order was necessary to prevent the Commonwealth from selling land that would otherwise be owned by the proposed, separate U.S. territory of Vieques. *Id.* at 2-3. If so ordered, Movants requested federal authorities "take charge" of the land until the Referendum could be held. *Id.* at 3. The District Court did not rule on this request.

10. On December 29, 2017, Movants filed a motion for class certification (although the Complaint was not styled as a class action). Underlying Proceeding, ECF No. 6. In support, Movants reference a petition attached to the Complaint containing 200 signatures of Vieques residents who, according to Movants, support the proposed Referendum. *Id.* at 2.

11. On April 20, 2018, and without any filed opposition, the District Court denied Movants' motion for class certification because Movants could not provide sufficient information to conduct the certification analysis. Underlying Proceeding, ECF No. 13. In so ruling, the Court observed Movants compiled 200 signatures but "ma[d]e no showing of how many of these individuals would have valid claims" and did not specify any common issues of law or fact. *Id.* at 2.

**B. The District Court Dismisses, and on Appeal the First Circuit Stays, the Underlying Proceeding.**

12. On June 29, 2018, the District Court dismissed the Complaint without prejudice for failing to file proofs of service. Underlying Proceeding, ECF No. 16. Movants subsequently appealed to the First Circuit. Underlying Proceeding, ECF No. 21.

13. On September 24, 2018, the First Circuit entered an order directing the parties to show cause whether the automatic stay, extant pursuant to the Commonwealth's filing of a Title III case, applied to all or any part of the appeal. Appellate Proceeding, Doc. No. 00117342930.

.    14.    On October 9, 2018, Movants responded to the order to show cause, asserting the

automatic stay does not apply to the case because the relief sought "does not involve any budgetary

nor financial request from the Commonwealth."  Appellate Proceeding, Doc. No. 00117349408

("Plaintiff Stay Response") at 12.  According to Movants, the Complaint does not affect the

Commonwealth's assets because Rosario has offered her "Property Title" "for all the fees that the

Electoral Commission . . . may establish."[9]  Id.  Subsequently, Movants filed a *Motion Requesting*

*90 days for Fundraising Events & Recognition of Property Title as Payment Guaranteed 2018*

*Freedom Revival 1865 Voting Right Act, 1965*.  Appellate Proceeding, Doc. No. 00117355080 (the

"Fundraising Motion").  The Fundraising Motion appears to request the First Circuit refrain from

issuing its ruling on the applicability of the stay for a period of 90 days, during which time Movants

would organize fundraising efforts in order to pay for the Referendum.

        15.    On October 16, 2018, the Commonwealth and Governor Rosselló filed their

response in compliance with the order to show cause.  Appellate Proceeding, Doc. No.

00117352678 ("Commonwealth Response").  In pertinent part, the Commonwealth Response

states:

> Although Plaintiffs framed their complaint as seeking merely an order to perform a
> referendum, their cause of action is in reality one for equitable and injunctive relief. In
> requesting such remedies, Plaintiffs are seeking to exercise at least some degree of control
> over the Commonwealth's resources, and litigation of the allegations of the Complaint
> force the Commonwealth to spend funds. Their complaint does not fall under any of the
> exceptions to the bankruptcy stay set forth in Section 362 (b). Accordingly, it is stayed by
> Section 362 of the Bankruptcy code, as incorporated by reference under Section 301(a) of
> PROMESA.

*Id.* ¶ 7.

---

[9]   Here, Movants' argument contradicts their demand for reparations.  Complaint ¶ 96.  Further,
.     the Referendum itself proposes to alter or remove the Commonwealth's property rights by, for
      example, relinquishing its control of Vieques.  *Id.* ¶ 43.

7

16.     On November 27, 2018, the First Circuit summarily ordered the appeal stayed "[i]n

view of the petition to restructure its debts filed by the Commonwealth of Puerto Rico . . . ."

Appellate Proceeding, Doc. No. 00117369929 (the "Stay Order"). The Stay Order also directed

the parties to file periodic status reports. *Id.*

17.     Following entry of the Stay Order, Movants filed a series of status reports and

motions for reconsideration that requested the First Circuit lift the stay. Appellate Proceeding,

Doc Nos. 00117375912, 00117423368, 00117465539, 00117478546, 00117476891,

00117487811, 00117502183, 00117523690, and 00117561412.

18.     The First Circuit denied Movants' various requests for reconsideration. Appellate

Proceeding, Doc. Nos. 00117392598, 00117526563, and 00117570613. In its most recent order

denying reconsideration, entered March 26, 2020, the First Circuit directed Movant to "the Title

III court to seek stay relief if such relief is desired." Appellate Proceeding, Doc. No. 00117570613.

**C.    Movants File the Motion Seeking Stay Relief.**

19.     On June 30, 2020, and presumably in response to the First Circuit's directive,

Movants filed a complaint with the District of Puerto Rico, which was styled as a "Motion of Stay

Relief Based on Modern Legal Genocide." Case No. 20-1307, ECF No. 3 (the "20-1307

Complaint"). On July 9, 2020, Chief Judge Gelpi entered an order explaining that it will "construe

the [20-1307] Complaint's request for stay relief as a motion for relief from the automatic stay"

and "transfer it to Case No. 17-3283 for consideration as a contested matter in the

Commonwealth's Title III case." Case No. 20-1307, ECF No. 7. The Motion was subsequently

docketed in the Title III case as ECF No. 13597. The Title III court then issued a briefing schedule

regarding the Motion. Case No. 17-3283, ECF No. 13598.

20.     In their Motion, Movants reiterate the allegations made in the Complaint that

Vieques's lack of autonomy violates Movants' "Voting Rights." Mot. at 1-6. Movants further

Case:17-03283-LTS  Doc#:17224-1  Filed:07/06/21  Entered:07/06/21 16:57:47  Desc:
Case:17-03283-LTS  Doc#:13816 Exhibit 07/23/20 Page 25 of 38 d:07/23/20 13:55:48  Desc: Main
Document    Page 15 of 28

#1

allege the stay interfered with those rights, and such interference is a "federal crime." *Id.* at 1.

Movants also claim this lack of autonomy infringes upon their rights under the First Amendment,

*id.* at 16, and the Fifteenth Amendment, *id.* at 6. According to Movants, these violations

necessitate implementing the Referendum. *Id.* at 6-7. The Motion states the stay should not apply

because Movants are not creditors and the Referendum will be paid for "by [the] Community." *Id.*

at 7.

## ARGUMENT

## I.  THE AUTOMATIC STAY APPLIES TO THE UNDERLYING PROCEEDING AND ITS APPEAL.

21.  Movants contend the automatic stay does not apply to the Underlying Proceeding

(and particularly the Appellate Proceeding) because (1) Movants are not creditors of the

Commonwealth, and (2) the Underlying Proceeding does not seek any monetary relief from the

Commonwealth. *See, e.g.*, Plaintiff Stay Response at 12. Movants are incorrect.

22.  As an initial matter, the First Circuit already determined the automatic stay applies

based on numerous motions and resulting orders regarding same. *See* Stay Order at 1. The First

Circuit's determination is binding. *United States v. Moore-Bush*, 963 F.3d 29, 37 (1st Cir. 2020)

("[C]ircuit court decisions control federal district courts in their circuits.").

23.  But, even if viewing this in the first instance, this Court should reach the same

conclusion. The automatic stay, made applicable here by PROMESA section 301, applies in all

of the circumstances enumerated in 11 U.S.C. § 362(a), including any actions seeking "the

commencement or continuation…of a judicial…action or proceeding against the debtor," "to

recover a claim against a debtor," "to obtain possession of property" of the debtor, or "to exercise

control over property of" the debtor. The automatic stay is "extremely broad and . . . 'applies to

almost any'" actions brought directly against the debtor. *Montalvo v. Autoridad de Acueductos y
Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citation omitted).

24.     The Underlying Proceeding falls within the ambit of 11 U.S.C. § 362(a) in at least
four respects. First, the Underlying Proceeding is a judicial action against the Commonwealth.
Second, the requested Referendum, if approved, could remove the entire municipality of Vieques
from the Commonwealth's control. Eliminating a municipality would unquestionably affect the
Commonwealth's revenues, impacting the Commonwealth's fiscal plan. Third, the Underlying
Proceeding asks the District Court to enjoin the Commonwealth's agencies from any dispositions
of land in Vieques, which would impair the Commonwealth's ability to make determinations as to
the use of its property. Underlying Proceeding, ECF No. 5.[10] There can be little doubt that such
requests are each an "act to obtain possession of property of the estate or of property from the
estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Fourth, the
Underlying Proceeding requests reparations for a "Non-Development Damage Claim" for the
period 1940–2017, (Complaint ¶ 96), clearly an "action or proceeding against the debtor . . . to
recover a claim against the debtor that arose before the commencement of the case under
[PROMESA]." 11 U.S.C. § 362(a)(1).

25.     Although the Bankruptcy Code incorporates certain limited exceptions to the
automatic stay, no such exception applies. Those exceptions, including the criminal proceeding
exception, (11 U.S.C. § 362(b)(1)), or the police and regulatory exception, (*id.* § 362(b)(4)), which
are set forth in Bankruptcy Code 362(b), are "precise and intentional and must be carefully

---

[10]   In addition to violating the automatic stay, Movants' requested relief may also violate
PROMESA section 305, which prohibits the court from issuing any stay, order, or decree
interfering with "(1) any of the political or governmental powers of the debtor; (2) any of the
property or revenues of the debtor; or (3) the use or enjoyment by the debtor of any income-
producing property."

Case:17-03283-LTS Doc#:17224-1 Filed:07/06/21 Entered:07/06/21 16:57:47 Desc:
Case:17-03283-LTS Doc#:13816 Exhibit Page 27 of 38 Filed:07/23/20 13:55:48 Desc: Main
Document Page 17 of 28

#1

considered in light of the inclusive nature of section 362(a)." 3 Collier on Bankruptcy ¶ 362.05

(16th ed. 2020). Accordingly, the exceptions are "read narrowly" and the precise wording of the

stay and its exceptions must be emphasized. *Ramos v. Banco Popular de P.R. (In re Ramos)*, 493

B.R. 355, 362 (Bankr. D.P.R. 2013) (citing *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*,

997 F.2d 581, 590 (9th Cir. 1993)).

  26. Here, although the Motion alleges criminal violations, there is no pending criminal

proceeding; the Underlying Proceeding is a civil case brought by an individual and non-profit

corporation seeking injunctive, equitable and monetary relief. Accordingly, the exception for

criminal actions is inapplicable. *See* 11 U.S.C. § 362(b)(1). The Underlying Proceeding likewise

does not fall within the police and regulatory power exception, because Movants are not a

"governmental unit." *See* 11 U.S.C. § 362(b)(4) (the automatic stay does not apply to "the

commencement or continuation of an action or proceeding by a *governmental unit* . . .") (emphasis

added); 11 U.S.C. § 101(27) (enumerating the entities that are a "governmental unit" including a

municipality and its instrumentalities, but not a non-profit corporation). No other enumerated

exception to the stay is applicable here. Accordingly, as the First Circuit already determined

(several times), the automatic stay applies.

## II. NO CAUSE EXISTS TO LIFT THE AUTOMATIC STAY.

  27. The Motion should also be denied because "cause" does not exist to lift the

automatic stay. *See* 11 U.S.C. § 362(d). As a practical matter, nothing prevents Movants from

petitioning the Legislature to hold the Referendum or take whatever steps might otherwise be

required to pursue Movants' apparent political agenda. Rather than pursue the political process,

however, Movants want a court to order the Legislature to do something the Puerto Rico

Constitution leaves to the will of the Legislature. Significantly, Article I, Section 3 of the Puerto

Rico Constitution establishes the political authority of the Commonwealth extends to the Island of

Puerto Rico and its "adjacent islands," including Vieques, and Article VIII, Section 1 of the Puerto

Rico Constitution places the municipality of Vieques in the senatorial district of Humacao (it has

since been relocated to the district of Carolina pursuant to the redistricting process established by

the Puerto Rico Constitution). Any change to the status of Vieques would thus need legislative

approval and a Constitutional amendment—a process which Movants seem to acknowledge.

28.     Movants also provide no authority for the proposition the territory of Puerto Rico

can tell the United States it will make itself into two territories, or declare statehood.

29.     "The automatic stay is among the most basic of debtor protections under

bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir.

1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503

(1986). Accordingly, an order lifting the automatic stay is an "extraordinary remedy." *In re 234-

6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section

362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief

from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the

Bankruptcy Code. *Goya Foods v. Unanue-Casal (In re Unanue-Casal)*, 159 B.R. 90, 95-96

(D.P.R. 1993), *aff'd without opinion sub nom. Unanue v. Unanue-Casal (In re Inanue-Casal)*, 23

F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts

examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. Tri*

*Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1)     whether relief would result in complete or partial resolution of the issues;

(2)     the lack of any connection with or interference with the bankruptcy case;

(3)     whether the foreign proceeding involves the debtor as fiduciary;

(4)     whether a specialized tribunal has been established to hear the cause of action at
        issue;

12

Case:17-03283-LTS   Doc#:17224-1   Filed:07/06/21   Entered:07/06/21 16:57:47   Desc:
Case:17-03283-LTS   Doc#:13816 Exhibit 07 Page 29 of 38 07/23/20 13:55:48   Desc: Main
Document     Page 19 of 28

#1

(5)   whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6)   whether the action essentially involves third parties rather than the debtor;

(7)   whether the litigation could prejudice the interest of other creditors;

(8)   whether a judgment in the foreign action is subject to equitable subordination;

(9)   whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10)  the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11)  whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12)  the impact of the stay on the parties and the "balance of harm."

*In re Sonnax Indus.,* 907 F.2d at 1286.

30.     Courts in the First Circuit have adopted the "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-95 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95-96; *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in Sonnax and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum."); *Peaje Invs. LLC v. Garcia-Padilla*, Nos. 16-2365 (FAB), 16-2384 (FAB), 16-2696 (FAB), 2016 U.S. Dist. LEXIS 153711, at \*13 (D.P.R. Nov. 2, 2016), *aff'd*, 845 F.3d 505 (1st Cir. 2017). "Application of the Sonnax factors is a matter within the bankruptcy court's discretion; not all of the factors are applicable in every case, nor are they entitled to equal weight."

13

*In re Birmingham Cosmetic Surgery, P.L.L.C.*, No. 14-58784, 2015 WL 1038801, at *2 (Bankr.

E.D. Mich. Mar. 5, 2015) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir.

1999)).

31.    No one factor is dispositive; instead, courts "engage in an equitable, case-by-case

balancing of the various harms at stake" and will lift the stay only if the harm engendered by

allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp.

3d at 518. Movants bear the burden of establishing cause, *id.*, and when the movant is not a secured

claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn*

*Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017).

32.    The Motion does not explain, nor attempt to establish, why "cause" exists to lift the

stay. Nevertheless, it is plain that the *Sonnax* factors squarely support maintaining the automatic

stay.

33.    **_Sonnax_ Factor 1:**    The first *Sonnax* factor—whether relief would result in

complete or partial resolution of the issues—weighs against modifying the automatic stay. This

factor asks whether the separate litigation would expeditiously resolve issues relevant to the

bankruptcy case. *See, e.g.*, *In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay

because non-bankruptcy litigation "would resolve significant open issues in the Debtor's

bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan").

Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding

would result in "the resolution of preliminary bankruptcy issues." *In re Murrin*, 477 B.R. 99, 109

(D. Minn. 2012). *See In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

34.    Here, Movants ask the Court to lift the automatic stay to resume the Appellate

Proceeding, and ultimately, continue the Underlying Proceeding, aimed at forcing the

14

Commonwealth to hold the Referendum. Mot. at 7. Resuming Movants' case would neither solve any open issues in the Debtor's case nor assist the Debtor in pursuing the confirmation of a plan. On the contrary, by raising the possibility that one of the Commonwealth's municipalities might secede, resumption of the case would only create a host of *additional* complexities. In the event the Underlying Proceeding results in an order compelling the Commonwealth to conduct the Referendum, the Commonwealth would then need to arrange its implementation. That process would necessarily raise additional, complex legal questions regarding the relative rights and legal status of contract counterparties, citizens, and governmental units. It is not hard to imagine significant additional litigation following. Because the Underlying Proceeding would only multiply, rather than resolve, the open issues in the Debtor's case, the first *Sonnax* factor weighs heavily against lifting the stay.

35. **Sonnax Factor 2**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support modifying the stay here. Movants' case could interfere with Commonwealth property and the management of its Title III Case. If the relief requested in the Underlying Proceeding were granted, the Commonwealth's ability to manage Vieques's affairs and to dispose of land on the island could be restricted, and the island of Vieques could be removed from the Commonwealth's control. Furthermore, the Referendum also proposes requiring CODESU's prior authorization for the use of federal funds and for project approval—a result that interferes with the Oversight Board's exclusive power of budgetary review and certification. *See* PROMESA § 202. Moreover, the Underlying Proceeding appears to pursue damages in the form of reparations. Although the amount of damages sought is not specified, any amount that the Commonwealth is ordered to pay as a result of the case would impact the orderly adjustment of the Commonwealth's debts. Such action would clearly have an impact on the

15

Commonwealth's property, over which this Court has exclusive jurisdiction. *See* PROMESA § 306. Lastly, if the stay were lifted, the Commonwealth would be required to devote resources to defend against Movants' claims, which would interfere with its Title III case and overall restructuring by diverting critical funds and government officers from its recovery efforts. *See, e.g., Memorandum Order Denying Eliezer Santana Báez's Motion For Relief From The Automatic Stay (Docket Entry No. 12516)*, ECF No. 13379 at 5-6. Thus, *Sonnax* factor 2 weighs in favor of denying the Motion.

36.     *Sonnax* Factor 4:[11] The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. This factor favors lifting the stay only where a specialized tribunal is needed (such as a tax court or an administrative law judge) to properly adjudicate the stayed proceedings. No specialized tribunal has been established, or will be needed, to hear the case. The District Court is neither a specialized tribunal, nor the type of court that is "highly experienced" in the particular issues raised by the Movants. *See In re Lahman Mfg. Co.,* 31 B.R. 195, 199 (Bankr. D.S.D. 1983) (finding *Sonnax* factor 4 did not support lifting the stay because the District Court was not a specialized tribunal "with particular expertise" in dealing with the issues present in the underlying action). Nor do Movants proffer any facts that would demonstrate otherwise. Because no specialized tribunal or highly experienced court exists, this factor weighs in favor of denying the Motion.

37.     *Sonnax* Factor 5: The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—also does not support

---

[11]     *Sonnax* factors 3 (whether the foreign proceeding involves the debtor as fiduciary); 8 (whether a judgment in the foreign action is subject to equitable subordination); and 9 (whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

Case:17-03283-LTS Doc#:17224-1 Filed:07/06/21 Entered:07/06/21 16:57:47 Desc:
Case:17-03283-LTS Doc#:13816 Exhibit 07/23/20 33 of 38 d:07/23/20 13:55:48 Desc: Main
Document Page 23 of 28

#1

granting the Motion. No insurer of the Commonwealth has assumed any financial responsibility in connection with Movants' claims, nor any eventual judgment related thereto, and Movants do not allege any facts to the contrary.

38.    ***Sonnax* Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather, whether the prepetition action primarily involves third parties *rather than* the debtor. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* Factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties.").

39.    Here, the case targets the Commonwealth and its elected officials directly, and will require them to expend their own funds to defend against Movants' claims. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate]."). There is no indication that any third parties are involved, let alone that such third parties' interests outweigh the interests of the debtor. Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion.

40.    ***Sonnax* Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion. The Underlying Proceeding seeks the ability, and therefore has the potential, to fundamentally alter the

17

Commonwealth's property rights and obligate it to divert scarce resources to implement the Referendum itself.

41.  Indeed, the Referendum's proposals would have a substantial impact on the rights of creditors. The Commonwealth's right to dispose of property would be diminished by the proposed installation of a new Vieques governance board that has the power to control federal funds and other projects. Mot. at 7. More fundamentally, the Referendum seeks to extinguish the Commonwealth's interests and property within Vieques, thereby diminishing the Commonwealth's assets and revenues, to the detriment of all Commonwealth creditors. *Id.*

42.  Furthermore, Movants' assertions to the contrary notwithstanding, the Commonwealth would be required to divert its scarce resources to fund the Referendum and ensure its compliance with relevant laws and regulations. The Motion vaguely asserts such costs will be borne by the "Community." *Id.* To the extent Movants are stating they will bear these costs, such a claim is unduly optimistic. Movant has stated that CODESU "has no bank account nor funds." Complaint ¶ 11. Additionally, Rosario has not presented sufficient evidence demonstrating she is able to personally fund the effort. As such, it is likely the Commonwealth itself would need to expend time, effort, and funds to implement the Referendum.

43.  Additionally, the Commonwealth's already limited resources available for Commonwealth creditors would be impacted if it were required to expend resources to defend against Movants' claims at this time. Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation. *See, e.g., Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prod., Inc.)*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the

interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09-50026, 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"); *see also In re City of Stockton*, 484 B.R. 372, 379 (Bankr. E.D. Cal. 2012) (declining to lift stay in part because it "will deplete the coffers of the City treasury"). Additionally, Movants' apparent pursuit of unspecified damages in the Underlying Proceeding would impact the rights of other creditors. Accordingly, *Sonnax* factor 7 weighs heavily against granting the Motion.

44.     ***Sonnax* Factor 10:**  The interest of judicial economy and the expeditious and economical determination of litigation for the parties favors denial of the Motion.  While lifting the stay might result in faster adjudication of Movants' claims (although there seem to be numerous pleading defects that would continue to delay any proceeding on the merits), Movants have identified no reason it is more economical or more efficient to proceed in litigating their claims at this time.  In fact, the opposite is true.  If certain of the Referendum's proposals are approved before the resolution of the Title III case, any rights and obligations the Debtor and creditors might have with respect to property or parties located in Vieques would be affected.  In particular, if Vieques separates from the Commonwealth, it could extinguish the Commonwealth's property rights within the municipality.  Additionally, the proposed conditioning of development plans and federal funds assignments on the approval of a new governance board would impair the Commonwealth's ability to direct the use of its funds.  These changes would force the parties in the Title III case to reassess their obligations or rights to recovery, causing significant delay and confusion.  Accordingly, *Sonnax* factor 10 does not support granting the Motion.

45. **_Sonnax_ Factor 11:** The Underlying Proceeding is still in its nascent stages— in fact, it has been dismissed before any responsive pleading was filed and remains on appeal regarding such dismissal —and the parties are far from being trial-ready. The pending procedural issue before the First Circuit is whether the District Court properly dismissed the case for Movants' failure to file proofs of service of the Complaint. As noted, in the Underlying Proceeding, an answer or motion to dismiss still has yet to be filed. As such, _Sonnax_ factor 11 favors denying the Motion.

46. **_Sonnax_ Factor 12:** Balancing of the harms clearly favors denial of the Motion. If the Motion were granted, the impact on the Commonwealth far outweighs any harm Movants would suffer if the automatic stay remains in place. As noted above, if the stay were lifted, the Commonwealth would be forced to divert resources to defend against Movants' claims at a time when the Commonwealth must continue to focus on progressing its restructuring objectives. And, if the Referendum were allowed, it is likely the Commonwealth would incur expenses related to its implementation. The Commonwealth would also face the risks associated with the Referendum itself, namely the extinguishment or modification of the Commonwealth's property and its subsequent impact on the Debtors' restructuring and rights of creditors. Accordingly, the Underlying Proceeding impacts the fiscal plan and the restructuring, and could easily have a domino effect.

47. The Commonwealth is mindful of the grievances Movants raise. Those grievances, however, are political in nature, and political processes through which Movants may seek redress remain available. Nothing prevents Movants from petitioning the Legislature to implement their proposed Referendum. At present, Article I, Section 3, of the Puerto Rico Constitution establishes the Commonwealth's political authority over the Island of Puerto Rico and "adjacent islands,"

20

Case:17-03283-LTS Doc#:17224-1 Filed:07/06/21 Entered:07/06/21 16:57:47 Desc:
Case:17-03283-LTS Doc#:13816 Exhibit 7 Page 37 of 38 d:07/23/20 13:55:48 Desc: Main
Document Page 27 of 28

#1

including Vieques, and Article VIII, Section 1 locates Vieques in the senatorial district of Carolina (it has since been relocated to the district of Carolina pursuant to the redistricting process established by the Puerto Rico Constitution). Pursuant to Article VII, section 1, the Puerto Rico Constitution may be amended via a process that starts with a resolution of the Legislature. P.R. Const. art. VII, § 1. Moreover, for a referendum to be held, the Legislature must approve a law ordering it. Article 11.1 of Act 58-2020, known as the Puerto Rico Elections Code of 2020 provides that, "[e]very referendum, consultation, or plebiscite held in Puerto Rico shall be governed by the special law approved to such purposes." Accordingly, Movants may petition the Legislature to pass a resolution to hold a special referendum on the political status of Vieques, while the automatic stay remains in place. Because political avenues that do not implicate the automatic stay are open to Movants, the harm to Movants is outweighed by the harm the Commonwealth will suffer if the stay is lifted and Movants are allowed to proceed in litigating their claims.

48. On balance, *Sonnax* factor 12 weighs in favor of denying the Motion.

## CONCLUSION

49. For the foregoing reasons, the Court should deny the Motion.

Dated: July 23, 2020
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181

21

Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com
Email: carla.garcia@oneillborges.com

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email: mbienenstock@proskauer.com
Email: tmungovan@proskauer.com
Email : brosen@proskauer.com


*Attorneys for the Financial Oversight and*
*Management Board for Puerto Rico, as*
*representative of the Commonwealth of Puerto Rico*