## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>        as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**JOINT STATUS REPORT OF AMBAC ASSURANCE CORPORATION, THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS SOLE REPRESENTATIVE OF THE COMMONWEALTH OF PUERTO RICO, THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE COMMONWEALTH OF PUERTO RICO APPOINTED IN THE COMMONWEALTH'S TITLE III CASE, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY REGARDING THE SCHEDULE FOR LITIGATION CONCERNING QUANTIFICATION OF PENSION-RELATED CLAIMS PURSUANT TO THE COURT'S JUNE 22, 2021 ORDER**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

To the Honorable United States District Judge Laura Taylor Swain:

Ambac Assurance Corporation ("Ambac"), the Financial Oversight and Management Board for Puerto Rico (the "Board"), as sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth" or "Debtor") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Official Committee of Retired Employees of the Commonwealth of Puerto Rico Appointed in the Commonwealth's Title III Case (the "Retiree Committee"), the Official Committee of Unsecured Creditors (the "UCC"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF")[2] respectfully submit this joint status report pursuant to the Court's Order dated June 22, 2021 (ECF No. 17140).[3]

## I.   BACKGROUND

1.     On June 3, 2021, Ambac filed the *Objection of Ambac Assurance Corporation, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claim Asserted by the Official Committee of Retired Employees of the Commonwealth of Puerto Rico Appointed in the Commonwealth's Title III Case* (ECF No. 16884, the "Claim Objection"), seeking to disallow the proof of claim filed by the Retiree Committee to the extent of its overstatement.

2.     On June 9, 2021, the Court ordered Ambac "to file an informative motion . . . [by June 23, 2021] stating when Ambac intends to either (i) provide notice of the Claim Objection in connection with an Omnibus Hearing, or (ii) request approval of an alternative briefing schedule . . . unless Ambac notices the Claim Objection or seeks approval of an alternative briefing schedule [before then]."  (ECF No. 16913 at 2.)

---

[2] Ambac, the Board, the Retiree Committee, the UCC, and AAFAF are collectively referred to as the "Parties."

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Claim Objection.

3.      On June 11, 2021, Ambac filed *Ambac Assurance Corporation's Urgent Motion for an Alternative Briefing Schedule With Respect to the Objection of Ambac Assurance Corporation, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claim Asserted by the Official Committee of Retired Employees of the Commonwealth of Puerto Rico Appointed in the Commonwealth's Title III Case* (ECF No. 16963, the "Scheduling Motion"), proposing a briefing schedule with respect to the Claim Objection.

4.      On June 17, 2021, the Board filed its response to the Scheduling Motion, arguing that the Claim Objection should be terminated because Ambac lacks standing and the treatment of pension claims under the Plan is not based on the Retiree Committee claim.  (ECF No. 17069.) The Retiree Committee also filed an objection to the Scheduling Motion, arguing that the Claim Objection violates the stay on contested matters related to claims that are a subject of the Retiree Committee PSA, that the Claim Objection was an objection to the Plan (not the Retiree Committee's claim), and that Ambac's proposed schedule was too abbreviated.  (ECF No. 17071.)

5.      On June 21, 2021, Ambac filed its reply in support of the Scheduling Motion, arguing that it is essential to determine the outstanding pension liability prior to confirmation of any plan, and noting that, in the alternative to litigating the Claim Objection, the Court could convert the Claim Objection to a motion to estimate under Section 502(c) of the Bankruptcy Code (incorporated by PROMESA § 301(a)).  (ECF No. 17121.)

6.      On June 21, 2021, the UCC filed a *Statement of Official Committee of Unsecured Creditors in Connection with (I) Ambac Assurance Corporation's Urgent Motion for Briefing Schedule With Respect to Objection of Ambac Assurance Corporation, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claim Asserted by the Official Committee of Retired Employees of the Commonwealth of Puerto Rico Appointed in the Commonwealth's Title*

*III Case and (II) Objections Thereto* (ECF No. 17120), arguing that the Claim Objection and the responses thereto raise important issues regarding the Commonwealth's pension obligations that need to be addressed, regardless of whether Ambac's Claim Objection was determined to be the proper and most efficient procedural vehicle to do so.

7.      On June 22, 2021, the Court entered an order denying the Claim Objection and the Scheduling Motion without prejudice.  (*Order Denying Assurance Corporation's Urgent Motion for Briefing Schedule With Respect to Objection of Ambac Assurance Corporation, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claim Asserted by the Official Committee of Retired Employees of the Commonwealth of Puerto Rico Appointed in the Commonwealth's Title III Case* (ECF No. 17140, the "Order").)  After stating that "the issues into which Ambac seeks to delve through the Claim Objection (namely, the methodology and result of the quantification of claims arising from pension obligations) may be relevant to confirmation determinations," the Court directed the Parties "to meet and confer to develop an appropriate schedule for litigation of the underlying issues concerning the quantification of pension-related claims in connection with the Court's adjudication of the [Board's] anticipated request to confirm" its proposed Plan, "including what, if any, further discovery is appropriate."  (*Id.*)

8.      The Parties met-and-conferred telephonically on June 29, 2021 (the "June 29 Meet-and-Confer").  During the June 29 Meet-and-Confer, Ambac shared its view that litigation concerning quantification of pension-related claims (the "Pension Quantification Litigation") should proceed as part of confirmation proceedings, with a standalone evidentiary hearing to be held as the first phase of the confirmation proceedings a few weeks before the rest of the confirmation hearings so that critical issues regarding the methodology and quantification of claims arising from pension obligations are addressed prior to the remaining confirmation issues.

Counsel for the Board informed Ambac that they would confer internally and inform Ambac of the Board's position at a later date.

9.      During the June 29 Meet-And-Confer, Ambac also stated that it believes additional discovery would likely be necessary, but that it was not in a position to detail its requests at this time, given the representation from the Commonwealth's actuary, Milliman, Inc. ("<u>Milliman</u>"), that it was going to produce approximately 200,000 pension-related documents in response to Ambac's Rule 2004 subpoena.  Ambac agreed that a deadline for such discovery was likely reasonable but that all Parties would benefit from allowing an initial review of the materials to be conducted before more documents were requested.  Ambac identified documents supporting the calculation of projections of PayGo expenses necessary to satisfy the pension obligations pursuant to the Retiree Committee PSA as one area where discovery would be necessary.  Counsel for the Board stated that it would consider independently whether there are pension-related materials that could be made available to Ambac.

10.     On July 2, 2021, the Board sent Ambac an email attached hereto as **<u>Exhibit A</u>** (the "<u>July 2 Email</u>") addressing the June 29 Meet-and-Confer.  The Board stated that it believes any litigation regarding the quantification of pension-related claims should proceed on the same schedule proposed by the Board for confirmation and heard as part of the confirmation hearing, not as a separate evidentiary hearing.  (*Id.*)  The Board also stated that it does not believe any litigation "concerning quantification of pension-related claims is relevant or necessary to confirmation" because the Board "only needs to establish the proposed plan of adjustment is consistent with the certified Commonwealth Fiscal Plan, and there is sufficient cash flow to carry out the plan of adjustment."  (*Id.*)

## II.   AMBAC'S POSITION AND PROPOSED SCHEDULE

11.   Consistent with the Court's directive that the Parties develop "a schedule for litigation of underlying issues concerning the quantification of pension-related claims" in connection with plan confirmation, Ambac sets forth below a proposed schedule in which these issues would be litigated in connection with plan confirmation, but on an accelerated track in which the Court would hold an evidentiary hearing on these issues a few weeks prior to the confirmation hearing on remaining issues.

12.   Ambac believes that given the critical need to determine the quantification of the Commonwealth's pension obligations, the Court should address these issues before it addresses other confirmation issues, in accordance with the Court's inherent power to manage its docket. *See Memorandum Regarding Confirmation Issues*, *In re PG&E Corp., et al.*, Case No. 19-30088 (Bankr. N.D. Cal. Dec. 10, 2019), ECF No. 4750 at 4 (inviting identification of confirmation issues to decide pre-confirmation); *Debtors' Disclosure Statement*, *In re W.R. Grace & Co., et al.*, Case No. 01-1139 (Bankr. D. Del. Feb. 27, 2009), ECF No. 20873 at 152 (providing that confirmation hearing would take place in two phases).  The Commonwealth's pension liability is by far the largest outstanding liability in these Title III proceedings, and if the Plan is not a consensual one, the Plan cannot be confirmed where the largest recovery to a single group of creditors has not been verified.  Moreover, the calculation of the Commonwealth's pension liability is a complex process, which, as the Retiree Committee has acknowledged, will require the Court to consider complex actuarial expert testimony from actuaries and auditors.  (*See* ECF No. 17071.)  Ambac's proposed schedule thus seeks to ensure that the Court has sufficient time to consider and evaluate the complex expert analyses and arguments presented to it in a focused process prior to the plan confirmation hearing on a multitude of other issues.  This process would also allow the Court the

opportunity to give guidance or rulings that would directly inform the remainder of the plan confirmation hearings.

13.     The Board's position ignores this Court's directive to "develop an appropriate schedule for litigation" of the pension quantification issues and instead reargues its position that the pension expenses and claim amounts are not relevant to confirmation.  The opposite is true. The Court must determine the amount of the Commonwealth's outstanding pension liability and how much it will cost the Commonwealth to meet its pension-related obligations in order for the Court to fulfill its obligation to determine whether the Plan satisfies the confirmation requirements set forth in Section 314 of PROMESA.

14.     In fact, the Board states below that the pension payments under the Commonwealth's PayGo program are projected using the ***same factors*** used to determine the pension claim amount, including demographic data and assumptions, employment information, and mortality assumptions.  Nowhere does the Board suggest that projected PayGo expenses are not directly tied to Milliman's actuarial work and its overall pension claim estimates.  Ambac posits that it is because the pension liability amounts included in the Fiscal Plan are drawn directly from Milliman's work and the estimated pension claim amount.  The Board has not provided relevant discovery that would allow Ambac to understand the nature of its PayGo projections, and despite undertaking independently on the meet and confer to consider whether such information could be provided to Ambac on an expedited basis to facilitate resolution of the issue, the Board now appears to be taking the position that it will not provide any information about that calculation or the relationship between the estimated pension claim amount and the projected pension liability.

15.     As stated in the Claim Objection, the limited discovery provided by the Government Parties underlying the buildup of the pension claim amount revealed significant

concerns regarding both the reliability of the data and the reasonableness of the assumptions used by Milliman in conducting its actuarial analysis. The Board cannot avoid quantification of the pension claim amount by saying that that the Fiscal Plan has a line item dedicated to PayGo expenses and that such expenses are therefore not subject to review.

16.     The Board again tries to avoid any review or judicial scrutiny of the pension amount and the actual cost of the pension treatment proposed under the Plan, now suggesting that because the cost of satisfying the settlement of the pension claims is an expenditure included in the Fiscal Plan, it is shielded from review under section 106(e) of PROMESA.  That provision only limits "challenges to the Oversight Board's certification determinations."  PROMESA § 106(e).  It has no bearing on whether a plan of adjustment satisfies section 314 of PROMESA.  Thus, the Board cannot avoid quantifying the Commonwealth's single largest outstanding liability by including the payments needed to satisfy the claims as Fiscal Plan expenses.

17.     The Board's position is inconsistent with PROMESA's actual instructions regarding plan confirmation—under the Board's theory, no party could *ever* challenge any element of confirmation that touches, in any way, on inputs to the Fiscal Plan.  The Board could moot any claim objection in any Title III proceeding by simply providing for payment of what it believes is the proper amount in a certified Fiscal Plan.  This would effectively prevent creditors from challenging (or the Court from making independent judgments on) the Plan's feasibility, or whether the Plan is in the best interests of creditors—determinations PROMESA explicitly directs the Court to make.  This cannot be so.  There is no suggestion in PROMESA that the provisions of Title I and II relating to the Commonwealth Fiscal Plan or budget preempted or otherwise mooted the standard claim objection and quantification procedures incorporated in Title III of PROMESA.  Moreover, Ambac, other creditors, and the Court are entitled to understand the

amount in real dollars needed to satisfy the allowed pension claims in accordance with the treatment proposed under the Plan on an annualized basis. If the Commonwealth's estimated pension liability is overstated, as Ambac maintains it is, then the amount allocated to satisfy such overstated claims in each fiscal year will be similarly overstated. Reducing the pension claims, and the corresponding amounts necessary to satisfy such claims in real dollars, will result in additional money available for other creditors, another factor the Court must consider in connection with confirmation.

18.     Accordingly, as set forth below, Ambac has proposed that these issues be heard in connection with plan confirmation proceedings, but with an evidentiary hearing on quantification of pension-related claims a few weeks before the rest of the plan confirmation hearing. Similarly, discovery on the pension quantification issues would occur as part of plan confirmation discovery, but on a slightly accelerated track. In addition, Ambac proposes that, following discovery, it would submit briefing on these issues as part of its objections to the Board's motion seeking confirmation of the Plan; however, it would submit such objections a few weeks before submitting any other objections to confirmation of the Plan.

19.     Because the Court has not yet adopted a schedule or procedures for plan confirmation, Ambac sets forth its proposal under two different scenarios. One such scenario (set forth in the far-right column) is if the Court adopts the proposed plan confirmation schedule set forth by the Board in its *Motion of Debtors for an Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* (ECF No. 16757, "Confirmation Procedures and Scheduling Motion"). As the Court is aware, however, Ambac and numerous other creditors have objected to the Board's proposed confirmation procedures and schedule on the grounds that the proposed schedule is far too

compressed and that its proposed procedures include restrictions that would severely prejudice creditors, including a requirement to file initial plan confirmation objections three weeks after the Disclosure Statement hearing that would then restrict creditors' ability to propound discovery, and its limitations or elimination of various discovery devices that are provided by the Federal Rules of Civil Procedure and essential to Due Process.  (*See Objection of Ambac Assurance Corporation and Financial Guaranty Insurance Company to The Board's Disclosure Statement Approval Motion and Confirmation Procedures Motion* (ECF No. 16998, "Confirmation Procedures and Scheduling Objection").)   The need to address the critical pension quantification issues only further underscores the impractical and unworkable nature of the Board's proposed schedule—a fact that is only compounded by Milliman's recent production of approximately 200,000 documents.  Accordingly, Ambac sets forth below (in the middle column) its proposed schedule for the Pension Quantification Litigation in connection with plan confirmation proceedings under the proposed schedule set forth by Ambac in its Confirmation Procedures and Scheduling Objection.[4]  (*See id.* ¶ 38.)

---

[4] The Board's assertions below that Ambac's proposal "would delay the conclusion of the confirmation hearing by almost five months" (*infra* ¶¶ 24, 26) reflects a misunderstanding or misrepresentation of Ambac's position.  As explained herein, Ambac's proposal is tied to whatever confirmation schedule is adopted by the Court.  As set forth in Ambac's Confirmation Procedures and Scheduling Objection, due to the inherently unworkable nature of the Board's proposed confirmation schedule set forth in its Confirmation Procedures and Scheduling Motion, Ambac has proposed a plan confirmation schedule with a confirmation hearing commencing approximately 3.5 months later than the Board's proposal (and concluding approximately 4.5 months later than the Board's proposal due to the additional days proposed by Ambac for the confirmation hearing).  (*See* ECF No. 16998 ¶ 38.)  Ambac's proposed schedule set forth in its Confirmation Procedures and Scheduling Objection is independent of the litigation of the pension issues discussed herein, and Ambac has simply sought to propose herein a schedule for litigation of pension quantification issues in two different scenarios based on the fact that the Court has not yet adopted a schedule for plan confirmation proceedings: one for if the Court were to adopt Ambac's proposed confirmation schedule, and another for if the Court were to adopt the Board's proposed confirmation schedule.

20.     Ambac respectfully requests that the Court adopt the version of Ambac's schedule

that most closely corresponds with the confirmation schedule adopted by the Court.

| Proposed Schedule for Pension Quantification Litigation in Connection with Plan Confirmation Proceedings | | |
|---|---|---|
| **Deadline/Event** | **Ambac's Proposed Pension Schedule Under Ambac's Confirmation Schedule Proposal[5]** | **Ambac's Proposed Pension Schedule Under Board's Confirmation Schedule Proposal[6]** |
| Commencement of Discovery | July 6, 2021 | July 6, 2021 |
| Deadline to Serve Notices of Deposition to Parties | September 30, 2021 | August 20, 2021 |
| Deadline to Serve Notices of Third-Party Document and Deposition Subpoenas | October 15, 2021 | August 23, 2021 |
| Fact Witness Depositions | October 18, 2021 – October 29, 2021 | August 25, 2021 – September 3, 2021 |
| Deadline to Serve Requests for Admission and Interrogatories (All Parties) | November 5, 2021 | September 6, 2021 |
| Deadline to Serve Responses and Objections to Requests for Admission and Interrogatories (All Parties) | November 19, 2021 | September 13, 2021 |
| Opening Expert Reports Due | October 29, 2021 | August 27, 2021 |
| Rebuttal Expert Reports Due | November 24, 2021 | September 17, 2021 |
| Expert Depositions | November 29, 2021 – December 3, 2021 | September 20, 2021 – September 29, 2021 |
| Close of Discovery | December 3, 2021 | September 29, 2021 |
| Deadline to File Plan Confirmation Objections Relating to Pension Quantification and Methodology Issues | December 10, 2021 | October 4, 2021 |
| Deadline to File Replies to Plan Confirmation Objections Relating to Pension Quantification and Methodology Issues | December 30, 2021 | October 18, 2021 |
| Deadline to File Plan Confirmation Objections (other than those relating to | January 7, 2022 | October 8, 2021 |

[5] (*See* Obj. Conf. Proc. Mot., ECF No. 16998 ¶ 38.)

[6] (*See* Conf. Proc. Mot., ECF No. 16757 ¶ 33.)

| Proposed Schedule for Pension Quantification Litigation in Connection with Plan Confirmation Proceedings | | |
|---|---|---|
| **Deadline/Event** | **Ambac's Proposed Pension Schedule Under Ambac's Confirmation Schedule Proposal[5]** | **Ambac's Proposed Pension Schedule Under Board's Confirmation Schedule Proposal[6]** |
| Pension Quantification and Methodology Issues) | | |
| Deadline to File Replies to Plan Confirmation Objections (other than those relating to Pension Quantification and Methodology Issues) | February 11, 2022 | October 25, 2021 |
| Pension Quantification and Methodology Evidentiary Hearing | January 24–28, 2022 | October 25–29, 2021 |
| Confirmation Hearing | February 28, March 1–4, 7–11, 14–18, 21–25, 28–31, April 1, 4–8 (2022) | November 8–10, 12, 15–18, 22–23 (2021) |

## III.   THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' POSITION

21.     The Committee agrees with Ambac that the extent of the Commonwealth's retiree obligations is a critically important issue the Court should consider in advance of the confirmation hearing.  The Committee also generally supports Ambac's proposed discovery and briefing schedule.  The Committee writes separately to further address the Board's argument that, at confirmation, the Board "only needs to establish the proposed plan of adjustment is consistent with the certified Commonwealth Fiscal Plan, and there is sufficient cash flow to carry out the plan of adjustment." *See* Ex. A.

22.     In addition to the many infirmities in the Board's position that Ambac has highlighted above (in which the Committee joins), the Board's position fails at the outset because it conflates two distinct issues.  Although the Board attempts to frame the issue before the Court as involving solely what Commonwealth resources are available under the Fiscal Plan to pay retiree claims, the issue the Court must first decide is the allowed amount of such

claims.  Obviously, the allowed amount of retiree claims has an impact on what Commonwealth resources can or should be made available under any fiscal plan to satisfy such claims, but allowance is a threshold issue that cannot be swept under the fiscal plan rug.  There can be no doubt that claims allowance is a core bankruptcy court function that cannot be removed from the court's jurisdiction through the inclusion of expenditures on account of such claims in a fiscal plan or otherwise.  If that were not the case, the Board could elect to remove all claims allowance issues from this Court's hands by simply providing for the use of Commonwealth resources to satisfy such claims in whole or in part in the Fiscal Plan.

23.    Accordingly, the Board's argument that it "only needs to establish the proposed plan of adjustment is consistent with the certified Commonwealth Fiscal Plan" lacks merit and should not affect any scheduling order entered by the Court.

## IV.    THE BOARD'S POSITION AND PROPOSED SCHEDULE

24.    To deal with an ordinary confirmation discovery issue that we identify in the next paragraph, Ambac has seized on the Court's direction to agree on pension discovery and cascaded pension claims into a separate litigation requiring that confirmation be delayed five months.  By explaining what the issue is the Oversight Board submits it will be clear no delay is required.

25.    The Oversight Board's proposed Plan provides for pension payments under the Commonwealth's PayGo program which pays pensions as part of each year's budget.  The pension payments projected for future years are based on such factors as the number and ages of former and present public employees, the number of years each past and present employee will have worked for the government, the projected number of years until each present employee retires and is entitled to pension payments, each employee's pension entitlement under the Commonwealth's laws and contracts, and the mortality assumptions assigned to the population of employees.  The

Commonwealth has provided and is providing Ambac the same data its actuary and pension specialist uses to project future pension payments.  With that data, Ambac can make its own projections.  Presumably, Ambac will attempt to show the Commonwealth has overestimated each future year's pension obligations.  Whether the Court has jurisdiction to allow Ambac to challenge the projected pension payments in the certified fiscal plans will be determined later.  Likewise, the Court will determine later whether it is a judicial function to determine whether future pension payments should be projected with more risk they will be understated or overstated.  For now, Ambac will have the data and there is no need for a separate litigation or delay.  It is that simple.

26.     Ambac asks the Court to enter a special schedule to litigate quantification of pension-related claims on a separate track relative to the schedule proposed by the Oversight Board in connection with confirmation of the Plan that, if Ambac had its way, would delay the conclusion of the confirmation hearing by almost five months past the Oversight Board's schedule.  The Court should not do so.  Ambac supplies no reason why pension claims should be litigated in a separate, standalone proceeding that would add substantial cost and likely substantial delay to the confirmation process.  Ambac supplies no reason why it may need yet more discovery beyond what it already has from Milliman and what the Oversight Board has agreed to produce.  The Court should therefore reject both of Ambac's proposed schedules,[7] and enter the Oversight Board's proposed schedule and global procedures in connection with confirmation of the Plan [ECF No. 17189-1].

---

[7] The Oversight Board did not propose or agree to either of the schedules in Ambac's chart in Paragraph 20 above for any separate litigation of pension issues.  The proposal in the far-right column reflects Ambac's attempt to shoehorn its pension claim litigation into the Oversight Board's schedule for litigating all issues in connection with the confirmation of the Plan.

27.     Ambac ignores that  Congress made clear the Plan must be consistent with the certified Fiscal Plan, PROMESA § 314(b)(7), and made equally clear creditors cannot negotiate or litigate certified Fiscal Plans.  Creditor challenges to fiscal plans are beyond the jurisdiction of this Court. *Id.* §§ 101(a), 106(e); *see also In re Fin. Oversight & Mgmt. Bd. for P.R.*, 916 F.3d 98, 112 (1st Cir. 2019) ("PROMESA grants the Board exclusive authority to certify Fiscal Plans and Territory Budgets for Puerto Rico. It then insulates those certification decisions from judicial review in § 106(e)[.]"); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 435 F. Supp. 3d 377, 385 (D.P.R. 2020) (where petition "seeks to challenge the Oversight Board's determination that the Budget is compliant with a fiscal plan which meets the requirements of Section 201(b)(1), it must be dismissed for lack of subject matter jurisdiction"), *aff'd* 985 F.3d 122 (1st Cir. 2021); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 404 F. Supp. 3d 536, 551 (D.P.R. 2019) (challenges to "unspecified financial decisions reflected in one or more fiscal plans certified by the Oversight Board" beyond jurisdiction pursuant to PROMESA § 106(e)).

28.     Ambac asserts the Oversight Board raises the Court's jurisdiction "to avoid any review or judicial scrutiny" of the Plan (*supra* ¶ 16), but that is false:  the Oversight Board seeks to align review and scrutiny of the Plan with PROMESA's terms, not Ambac's wish to avoid confirmation of any plan at all.[8]

29.     Fundamentally, the issue Ambac seeks to litigate is the projected pension liability over a 30-year period.  That various people forecasting pension liabilities using different mortality assumptions will arrive at different results is unremarkable and does not call into question whether

---

[8] Nor has the Oversight Board "ignore[d]" the Court's directive to confer (*cf. supra* ¶ 13).  Ambac's assertion is particularly hollow given that, after the Oversight Board conferred with Ambac on June 29 and stated its position in the July 2 Email (*see* Ex. A), Ambac waited three days to send its pre-drafted response—sending, on July 5, its draft joint status report titled "Milbank Draft 7/2/2021" with the two new proposals in Paragraph 20, above.

the Plan can be confirmed.  While Ambac will no doubt attempt to show the mortality assumptions are too optimistic (i.e., people will live longer), no one can account for advances in medical science over time and how they may affect mortality rates, and no amount of litigation will give any party the gift of foresight.  As such, second-guessing the Oversight Board's determinations in the certified Fiscal Plan as to projected pension liabilities would only result in the Court choosing whose crystal ball will be less incorrect.

30.     In any event, Ambac supplies no reason to litigate the quantification of pension-related claims on a separate and accelerated track.  Ambac asserts "the critical need to determine the quantification of pension obligations" as the basis to address those issues ahead of others (*supra* ¶ 12), but that "need" is not a basis to litigate some issues weeks in advance of others on a special track.  Ambac's requested schedule also makes little sense given it complains it has too little time to review recent productions from Milliman and cannot specify other discovery, if any, it believes it needs until it completes that review (*see supra* ¶ 9).  Further, Ambac's clear aim is to obtain two opportunities to fight confirmation—first, as part of its schedule to litigate quantification of pension benefits, and second, as part of the broader confirmation process.  Ambac's push-pull strategy—to accelerate consideration of its own issues ahead of other confirmation issues in a process it ultimately seeks to delay by months, and to delay telling the Oversight Board what it wants produced on an accelerated basis for its own proposed schedule above—even if not outright intended to disrupt the confirmation process and ultimately cause delay, will nevertheless have that effect.

31.      With one exception,[9] Ambac has not identified any additional discovery it needs
beyond what it already has from Milliman and what the Oversight Board has agreed to provide
(*see* Ex. A), let alone why any such unidentified additional discovery should proceed on a special
accelerated track.  In addition to Milliman's productions to Ambac, and without conceding further
discovery beyond the Milliman valuation reports and project files is relevant, the Oversight Board
has committed to gathering any additional underlying factual source materials relating to its
projections of pension expenditures and to make such materials available in the confirmation
depository in line with the confirmation schedule the Court orders.  *See* Ex. A.  Ambac complains
the Oversight Board has not provided discovery (*supra*  ¶ 14), but the Oversight Board has agreed
to provide discovery, as just noted and as Ambac knows.  Ambac either does not understand or is
pretending not to understand what the Oversight Board has explained many times before—namely,
the present value of the pension claim has nothing to do with confirmation.  The Plan pays a
specified percentage of each pension obligation as it accrues monthly, and Ambac is receiving the
data AAFAF has to project each future month's payment obligation.  Nothing more is available or
required.  If Ambac wants to contend the data lead to smaller annual pension payments under the
Plan than the Oversight Board projects, Ambac can do that, subject to all of the Oversight Board's
defenses to be determined at confirmation.

32.      Ambac also says it cannot identify what other discovery would be appropriate "at
this time" because it recently received "approximately 200,000 pension-related documents" from
Milliman (*supra* ¶ 9), but that is somewhat misleading.  As Ambac knows, those 200,000
documents are Milliman's project files Ambac's experts will analyze to replicate Milliman's

---

[9] Ambac has requested "documents supporting the calculation of the projections of the PayGo expense
necessary to satisfy the pension obligations pursuant to the PSA with the Retiree Committee," and the
Oversight Board will provide them.

analysis in the draft 2018 actuarial reports Milliman produced to Ambac.  Ambac's suggestion its

lawyers are wading through hundreds of thousands of documents to identify other categories of

documents is incorrect and, in any event, it was incumbent on Ambac to identify what it needed

now (*see* Order at 2)—particularly if it wanted a special schedule.

33.     In sum, Ambac seeks to litigate an issue contrary to PROMESA's plain text, on a

separate track, for no reason other than to seek to obtain a second means to delay confirmation,

and has not identified any additional discovery it may need in any event.  The Court should

therefore enter the Oversight Board's proposed schedule and global procedures in connection with

confirmation of the Plan.  (ECF No. 17189-1.)

## V.      THE RETIREE COMMITTEE'S POSITION

34.     The Retiree Committee supports the schedule proposed by the Oversight Board.

Ambac's position that individual objectors to the plan of adjustment should be allowed to advance

their selected objections to the front of the queue—so that these plan objections are heard in

advance of the confirmation hearing—makes little sense.

35.     Ambac has offered no valid procedural basis (or cited any relevant Rule or decision)

for its unique procedural suggestion that this Court should decide the present value of future

pension obligations in a vacuum before voting on the plan is even concluded.  Instead, Ambac

focuses on the merits of the issue, attempting to justify its right to raise the issue and its importance

to the plan of adjustment. But those are not reasons to decide this question in advance of the

confirmation hearing (assuming for the sake of argument, it is even a relevant question). Just as

appellate courts decline to hear interlocutory appeals because future matters in a case may make a

decision unnecessary, waiting to resolve confirmation issues until after voting and in one

consolidated hearing avoids unnecessary work for the Court and the parties and ensures that any

questions this Court resolves are relevant to whether the Oversight Board's Plan should be confirmed. *See, e.g.*, *Caraballo-Seda v. Municipality of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005) (exercising discretion to deny interlocutory appeal and noting "policy preference against piecemeal litigation as well as policy concerns about mootness, ripeness, and lengthy appellate proceedings" (internal citations omitted)); *In re Heddendorf*, 263 F.2d 887, 889 (1st Cir. 1959) (the final decision rule "is beneficial in most applications, because piecemeal appeals would result in even greater hardships and tremendous additional burdens on the courts and litigants which would follow from allowing appeals from interlocutory orders on issues that might later become moot.").

36.     Accordingly, the Retiree Committee supports the Oversight Board's position on scheduling.

## VI.   AAFAF'S POSITION

37.     AAFAF intends to fully participate in all matters related to the litigation over pension claims in the context of the proposed plan of adjustment, and reserves all rights with respect to the appropriate legal and factual classification of pension claims, including the nature of the Commonwealth's obligations, and to whom such obligations are owed, under Act 106 and other applicable Puerto Rico law. AAFAF does not believe this status report is an appropriate vehicle for arguments with respect to the nature of those obligations, and believes the Court should order legal and factual issues related to pension claims to be determined in connection with, and on the same schedule as, plan confirmation. AAFAF also notes that it has produced tens of thousands of documents regarding pensions, including the census data that Milliman uses for its actuarial valuations, to Ambac and other creditors over the past four years.

Dated:  July 6, 2021
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile:  (787) 766-7001
    Email:  rcamara@ferraiuoli.com
          scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile:  (212) 530-5219
    Email: ddunne@milbank.com
          amiller@milbank.com
          gmainland@milbank.com
          jhughes2@milbank.com
          johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

**PROSKAUER ROSE LLP**

By: /s/ *Martin J. Bienenstock*
     Martin J. Bienenstock
     Margaret A. Dale
     Michael T. Mervis
     Julia D. Alonzo
     Laura Stafford
     (Admitted *Pro Hac Vice*)
     Eleven Times Square
     New York, NY 10036
     Tel: (212) 969-3000
     Fax: (212) 969-2900

**O'NEILL & BORGES LLC**

By: /s/ *Hermann D. Bauer*
     Hermann D. Bauer (USDC No. 215205)
     250 Muñoz Rivera Ave., Suite 800
     San Juan, PR 00918-1813
     Tel: (787) 764-8181
     Fax: (787) 753-8944

*Attorneys for the Financial Oversight and Management Board as representative of the Commonwealth*

**JENNER & BLOCK LLP**

By: /s/ *Robert Gordon*

Robert Gordon (admitted *pro hac vice*)
Richard Levin (admitted *pro hac vice*)
919 Third Avenue
New York, New York 10022-3908
rgordon@jenner.com
212-891-1600 (telephone)
212-891-1699 (facsimile)

Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)
Landon Raiford (admitted *pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
steege@jenner.com
mroot@jenner.com
lraiford@jenner.com
312-222-9350 (telephone)

**BENNAZAR, GARCÍA & MILIAN, C.S.P.**

By: s/ *A.J. Bennazar-Zequeira*

A.J. Bennazar-Zequeira
Héctor M. Mayol Kauffmann
Francisco del Castillo Orozco
Edificio Union Plaza,
1701 Avenida Ponce de León #416
Hato Rey, San Juan
Puerto Rico 00918
ajb@bennazar.org
hector.mayol@bennazar.com
787-754-9191 (telephone)
787-764-3101 (facsimile)

*Counsel for the Official Committee of Retired Employees of Puerto Rico*

**PAUL HASTINGS LLP**

By: /s/ *Luc A. Despins*

PAUL HASTINGS LLP
Luc A. Despins, Esq. (*Pro Hac Vice*)
G. Alexander Bongartz, Esq. (*Pro Hac Vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
alexbongartz@paulhastings.com

**CASILLAS, SANTIAGO & TORRES LLC**

By: /s/ *Juan J. Casillas Ayala*
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggermann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434

***Counsel to the Official Committee of Unsecured Creditors***

**O'MELVENY & MYERS LLP**

/s/ *Peter Friedman*

John J. Rapisardi (*pro hac vice*)
Peter Friedman (*pro hac vice*)
Madhu Pocha (*pro hac vice*)

7 Times Square
New York, New York 10036
Tel:  (212) 326-2000
Fax:  (212) 326-2061

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

**MARINI PIETRANTONI MUÑIZ LLC**

/s/ *Luis C. Marini-Biaggi*

Luis C. Marini-Biaggi
USDC No. 222301
lmarini@mpmlawpr.com
Carolina Velaz-Rivero
USDC No. 300913
cvelaz@mpmlawpr.com

250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00917
Tel:  (787) 705-2171
Fax:  (787) 936-7494

*Co-attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

- 22 -