# **<u>EXHIBIT A</u>**

# **Tab 1**

| AMBAC DEMONSTRATIVE EXHIBIT – PROPOSED CONFIRMATION PROCEDURES[1] | | | | |
|---|---|---|---|---|
| **Issue** | **Board's Confirmation Procedures Motion (ECF No. 16757)** | **Ambac/FGIC's Objection (ECF No. 16998) and the UCC's Objection (ECF No. 17017)** | **Board's Omnibus Reply (ECF No. 17189)** | **Ambac's Proposal** |
| REQUIREMENT TO FILE INITIAL CONFIRMATION OBJECTIONS | | | | |
| **Initial Confirmation Objections** | The Board asks the Court to condition a creditor's right to seek confirmation discovery on the filing of an "Initial Objection" no later than August 3, 2021 (three weeks after the DS hearing) that "set[s] forth the legal and factual basis in support" of each objection a creditor intends to raise in connection with Plan confirmation proceedings.  The Initial Objection would then limit the scope of the discovery that a creditor could seek from the Debtors or any third-party.  (Conf. Proc. Mot. ¶¶ 40-44, Ex. A ¶ 6.) | Making creditors' rights to propound discovery contingent on the filing of an Initial Objection prior to discovery is a significant departure from the Federal Rules of Civil Procedure, and would require creditors to file objections (which would then limit their ability to propound discovery requests) before they have even received any confirmation discovery.  Any discovery received in connection with the Rule 2004 process or the revenue bond adversary proceedings has been limited in scope (and does not address many confirmation issues), and most creditors have not conducted any discovery whatsoever.  The Board's proposal would unfairly shift the burden to creditors to prove the necessity of certain discovery and creates an unnecessary obstacle that serves no purpose other than limiting the amount of discovery that the Board has to provide.  (Ambac/FGIC Obj. ¶¶ 11-13.)  Moreover, the level of detail necessary to sufficient "set forth the legal and factual basis in support" of an Initial Objection is entirely unclear, and the Board's Reply does nothing to clarify the issue.  (Ambac/FGIC Obj. ¶ 14.)  In any event, the Board's proposed deadline for Initial Objections is far too early.  (Ambac/FGIC Obj ¶ 17.) | *No change proposed to address this objection.*  (Board Reply, Ex. 1 ¶ 8.) | The Court should eliminate the Initial Objection requirement.  A single set of Confirmation Objections should be filed after the close of fact discovery proposed by Ambac & FGIC in the proposed schedule.  Alternatively, the deadline for any Initial Confirmation Objections should be at least 30 days after the Board's service of notice of the times for filing objections to the Plan.  (Ambac/FGIC Obj. ¶¶ 15-16, 38.) |

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the *Objection of Ambac Assurance Corporation and Financial Guaranty Insurance Company to the Board's Disclosure Statement Approval Motion and Confirmation Procedures Motion* (ECF No. 16998).

| | | AMBAC DEMONSTRATIVE EXHIBIT – PROPOSED CONFIRMATION PROCEDURES[1] | | |
|---|---|---|---|---|
| **Issue** | **Board's Confirmation Procedures Motion (ECF No. 16757)** | **Ambac/FGIC's Objection (ECF No. 16998) and the UCC's Objection (ECF No. 17017)** | **Board's Omnibus Reply (ECF No. 17189)** | **Ambac's Proposal** |
| | | **GENERAL OBJECTIONS TO PROPOSED SCHEDULE** | | |
| **Proposed Schedule** | The Board proposes a schedule for plan confirmation proceedings that would have the confirmation hearing commence on November 8, 2021, less than four months after the Disclosure Statement hearing.<br><br>(Conf. Proc. Mot. ¶ 33.) | The Board's proposed confirmation schedule is far too compressed and is motivated (as the Board concedes) by the desire to jam through the Plan in time to meet the arbitrary December 15, 2021 plan effectiveness deadline in the PSAs, while limiting meaningful creditor-propounded discovery.<br><br>(Ambac/FGIC Obj. ¶ 2.)<br><br>The Board concedes that it may unilaterally extend the deadline for plan effectiveness in its PSAs, making the Board's proposed schedule unnecessary even in light of its own PSAs.<br><br>(Ambac/FGIC Obj. ¶ 4 n.8.)<br><br>The Board's current proposed schedule is significantly shorter than its February 2020 proposal.<br><br>(Ambac/FGIC Obj. ¶ 17.)<br><br>The proposed schedule ignores key gating issues in the Revenue Bond Adversary Proceedings that must first be decided before confirmation, including issues which the Board has contended are "gating" issues and are still the subject of a litigation stay.<br><br>(Ambac/FGIC Obj. ¶¶ 20-21.)<br><br>The proposed one-month period for pretrial proceedings (including the filing of "supplemental" objections to the Plan, full briefing of motions *in limine* and *Daubert* motions, service of exhibit lists, deposition designations, and objections, pretrial conferences, etc.) is far too compressed.<br><br>(Ambac/FGIC Obj. ¶¶ 34-35.) | *No change proposed to address this objection*, but the Board admits that the proposed discovery and confirmation timeline is intended to comply with the December 15, 2021 deadline in the PSAs, *and* that the Board may unilaterally extend the deadline to January 31, 2022.<br><br>(Board Reply ¶ 24, App'x A at 4.) | The Court should adopt Ambac & FGIC's proposed discovery and confirmation schedule, which balances the need for efficient proceedings with the need to protect creditor rights and to reduce strain on the limited resources of the Court and the parties. |

| AMBAC DEMONSTRATIVE EXHIBIT – PROPOSED CONFIRMATION PROCEDURES[1] | | | | |
|---|---|---|---|---|
| **Issue** | **Board's Confirmation Procedures Motion (ECF No. 16757)** | **Ambac/FGIC's Objection (ECF No. 16998) and the UCC's Objection (ECF No. 17017)** | **Board's Omnibus Reply (ECF No. 17189)** | **Ambac's Proposal** |
| **IMPROPER DISCOVERY RESTRICTIONS** | | | | |
| **Follow-Up Requests** | The Board's proposal would require creditors to propound ***all*** discovery requests at the outset of fact discovery, with no opportunity for follow-up requests. (*See* Conf. Proc. Mot. ¶¶ 33, 49-52, 55.) | The Board's proposal would preclude creditors from serving follow-up requests based on information learned during the discovery process. (Ambac/FGIC Obj. ¶¶ 24, 26.) | *No change proposed to address this objection.* | Creditors should have the opportunity to serve limited, targeted follow-up requests before the end of the discovery period, just as they were permitted to do in the Revenue Bond Adversary Proceedings, in which Magistrate Judge Dein rejected a similar proposal by the Board. (*See Order Setting Discovery Schedule* (ECF No. 15809), ¶ 1.) |
| **Document Production Certification** | Under the Board's proposal, creditors would be required to submit a certification "stating the relationship of [a] Production Request to the Initial Objection . . . and setting forth why the additional Production is reasonably necessary given the availability of information in the Depository." (Conf. Proc. Mot. Ex. A ¶ 12.) | The Board's proposal improperly seeks to require creditors to provide a certification, which serves no purpose other than to require creditors to jump through even more hoops and to give the Board another basis for denying discovery, potentially resulting in further disputes before the Court. (Ambac/FGIC Obj. ¶ 25.) | *No change proposed to address this objection.* (Board Reply, Ex. 1 ¶ 15.) | The Court should reject this improper certification requirement. |

| | AMBAC DEMONSTRATIVE EXHIBIT – PROPOSED CONFIRMATION PROCEDURES[1] | | | |
|---|---|---|---|---|
| **Issue** | **Board's Confirmation Procedures Motion (ECF No. 16757)** | **Ambac/FGIC's Objection (ECF No. 16998) and the UCC's Objection (ECF No. 17017)** | **Board's Omnibus Reply (ECF No. 17189)** | **Ambac's Proposal** |
| **Privilege Log** | The Board's proposed confirmation procedures do not contemplate that the Debtors would produce a privilege log of withheld documents. | As the UCC points out in its objection, the Debtors should be required to prepare a privilege log, which should be populated into the Plan Depository by a specified date. (UCC Obj. ¶ 177.) | *No change proposed to address this objection.* (Board Reply, App'x A at 6-7.) | The Board should prepare a privilege log for withheld documents, in accordance with the FRCP, so that creditors can evaluate any claims of privilege. |
| **Requests for Admission** | The Board's proposal would require that creditors propound all requests for admission at the outset of the discovery process, and that such requests be limited to "the authentication of documents intended to be offered as exhibits" at the plan confirmation hearing. (*See* Conf. Proc. Mot. ¶¶ 33, 49.) | Requests for admission should not be limited to authentication of documents and should be allowed to be served towards the end of the discovery period. (Ambac/FGIC Obj. ¶¶ 27-28.) | The Debtors have amended the proposed procedures to include a deadline of September 7, 2021 for requests for admission for the sole purpose of authenticating documents produced in response to Production Requests. (Board Reply, App'x A at 3-4, Ex. 1 ¶ 15.) | The Board's proposal is insufficient.  In accordance with the FRCP, requests for admission should not be limited to admissions for authenticity, and creditors should be permitted to serve them toward the end of the discovery period. |

| AMBAC DEMONSTRATIVE EXHIBIT – PROPOSED CONFIRMATION PROCEDURES[1] | | | | |
|---|---|---|---|---|
| **Issue** | **Board's Confirmation Procedures Motion (ECF No. 16757)** | **Ambac/FGIC's Objection (ECF No. 16998) and the UCC's Objection (ECF No. 17017)** | **Board's Omnibus Reply (ECF No. 17189)** | **Ambac's Proposal** |
| **Interrogatories** | Under the Board's proposal, parties are not permitted to serve interrogatories. | The Board's proposal does not contemplate the use of interrogatories, which is provided for under the FRCP. (Ambac/FGIC Obj. ¶ 29.) | *No change proposed to address this objection.* The Board claims that interrogatories are an "inefficient" discovery mechanism compared to document requests and depositions. (Board Reply ¶ 13.) | The Board's characterization of the usefulness of interrogatories should not affect the ability of creditors to serve them, as permitted under the Federal Rules of Civil Procedure (incorporated into these proceedings by the Federal Rules of Bankruptcy Procedure).  Indeed, interrogatories were useful in the Revenue Bond Adversary Proceedings.  The Court should permit creditors to serve interrogatories as long as they are served sufficiently in advance of the completion of fact discovery to obtain a response, just as they were in the Revenue Bond Adversary Proceedings. (*Order Setting Discovery Schedule* (ECF No. 15809), ¶ 3.) |

| AMBAC DEMONSTRATIVE EXHIBIT – PROPOSED CONFIRMATION PROCEDURES[1] | | | | |
|---|---|---|---|---|
| **Issue** | **Board's Confirmation Procedures Motion (ECF No. 16757)** | **Ambac/FGIC's Objection (ECF No. 16998) and the UCC's Objection (ECF No. 17017)** | **Board's Omnibus Reply (ECF No. 17189)** | **Ambac's Proposal** |
| **Fact Witness Identification** | The Board's proposal would require all creditors' fact witnesses for the confirmation hearing to be identified at the beginning of the discovery period (seven days after the deadline for serving discovery requests), *while preventing creditors from supplementing their fact witness lists, and reserving for the Debtors* the ability to supplement their fact witness list for any reason after it has been served. (Conf. Proc. Motion ¶¶ 45-46, Ex. A ¶ 2.) | The Board's proposal provides inadequate time to identify witnesses, particularly before any confirmation discovery has been received. (Ambac/FGIC Obj. ¶ 30.) This one-sided proposal, in which creditors have no ability to supplement their fact witness lists based on information learned during discovery, while Debtors have that ability, is inconsistent with principles of fundamental fairness and Due Process. (Ambac/FGIC Obj. ¶ 32.) | *No change proposed to address this objection.* (Board Reply, Ex. 1 ¶ 3.) | All parties should serve their fact witness lists after the close of discovery, by January 10, 2022, in accordance with Ambac & FGIC's proposed schedule. |
| **Deposition Notices** | The Board's proposed schedule would require creditors to serve all deposition notices at the beginning of the discovery period (11 days after the deadline for serving discovery requests). (*See* Conf. Proc. Mot. ¶¶ 33, 45-48, Ex. A ¶ 12.) | The proposal provides no time to review any produced discovery and to identify potential deponents. (Ambac/FGIC Obj. ¶¶ 30-31.) | *No change proposed to address this objection.* (Board Reply, Ex. 1 ¶ 15.) | The Court should adopt Ambac & FGIC's proposal regarding the service of Deposition Notices after creditors have received and had the opportunity to review produced discovery, similar to the approach taken by Magistrate Judge Dein in the Revenue Bond Adversary Proceedings, in which she rejected a similar proposal by the Board. *Order Setting Discovery Schedule* (ECF No. 15809), ¶¶ 5-6.) |

| AMBAC DEMONSTRATIVE EXHIBIT – PROPOSED CONFIRMATION PROCEDURES[1] | | | | |
|---|---|---|---|---|
| **Issue** | **Board's Confirmation Procedures Motion (ECF No. 16757)** | **Ambac/FGIC's Objection (ECF No. 16998) and the UCC's Objection (ECF No. 17017)** | **Board's Omnibus Reply (ECF No. 17189)** | **Ambac's Proposal** |
| **Certification to Depose** | Under the Board's proposal, creditors would not have the opportunity to depose any witness not included on the ***Debtors'*** fact witness list unless they certify "why the additional person's testimony is reasonably necessary, and not duplicative, given the availability of testimony from persons" hand selected by the Board. (*See* Conf. Proc. Mot., Ex. A ¶ 12.) | Requiring creditors to submit such a certification improperly limits creditors' discovery rights. (Ambac/FGIC Obj. ¶ 31) | *No change proposed to address this objection.* (Board Reply, Ex. 1 ¶ 15.) | The Court should eliminate the requirement that creditors make such a certification, and require the Board to follow normal procedures if it believes any deposition is unnecessary or duplicative. |
| **Third-Party Discovery** | The Board's proposal makes no reference to third-party discovery except that parties not filing an Initial Objection would be prohibited from seeking discovery "of the Debtors or ***any other entity/individual*** by any method in connection with confirmation of the Plan and the global compromise and settlements underlying the Plan." (Conf. Proc. Mot., Ex. A ¶ 7 (emphasis added).) | Third-party discovery is not clearly permitted under the Board's proposal. (Ambac/FGIC Obj. ¶ 33.) | *No change proposed to address this objection*, but the Board advised that its proposal does not affirmatively preclude third-party discovery. (Board Reply, App'x A at 5, Ex. 1 ¶ 9.) | The Court should clarify that third-party discovery is both permitted and not tied to Initial Objections, similar to the Court's order regarding Rule 56(d) discovery in the Revenue Bond Adversary Proceedings, which permitted third-party document requests and deposition subpoenas to be served sufficiently in advance of the fact discovery deadline. (*Order Setting Discovery Schedule* (ECF No. 15809), ¶¶ 2, 6.) |

| AMBAC DEMONSTRATIVE EXHIBIT – PROPOSED CONFIRMATION PROCEDURES[1] | | | | |
|---|---|---|---|---|
| **Issue** | **Board's Confirmation Procedures Motion (ECF No. 16757)** | **Ambac/FGIC's Objection (ECF No. 16998) and the UCC's Objection (ECF No. 17017)** | **Board's Omnibus Reply (ECF No. 17189)** | **Ambac's Proposal** |
| CONFIRMATION HEARING PROCEDURES | | | | |
| **Length of Confirmation Hearing** | The Board's proposal contemplates a ten-day confirmation hearing.<br><br>(Conf. Proc. Mot. ¶¶ 27, 33.) | The Court should set aside thirty days for the confirmation hearing, which is similar to the time allocated in the Detroit bankruptcy.<br><br>(Ambac/FGIC Obj. ¶¶ 36-37.) | *No change proposed to address this objection.* The Board states that if the parties submit witness lists necessitating more than ten days for the hearing, the parties may discuss at a pretrial conference whether additional days are necessary.<br><br>(Board Reply, App'x A at 9.) | It is important that the Court and the parties set aside the days for the confirmation hearing now, to avoid scheduling conflicts in the future.  The Court should adopt Ambac & FGIC's proposal that the confirmation hearing be held on: February 28, March 1–4, 7–11, 14–18, 21–25, 28–31, April 1, 4–8 (2022). |
| **Motions *in Limine*** | The Board proposes to limit all motions *in limine* and objections thereto to 5 pages, and all replies to 3 pages.<br><br>(Conf. Proc. Mot. ¶ 33.) | There is no reason to preemptively limit motions *in limine* in such a drastic manner prior to any discovery and without knowing the complexity of the issues that will be the subject of such motions.<br><br>(Ambac/FGIC Obj. ¶ 43.) | *No change proposed to address this objection.* | The Court should reject the Board's proposal to impose such drastic page limits on motion *in limine* briefing. |

| | AMBAC DEMONSTRATIVE EXHIBIT – PROPOSED CONFIRMATION PROCEDURES[1] | | | |
|---|---|---|---|---|
| **Issue** | **Board's Confirmation Procedures Motion (ECF No. 16757)** | **Ambac/FGIC's Objection (ECF No. 16998) and the UCC's Objection (ECF No. 17017)** | **Board's Omnibus Reply (ECF No. 17189)** | **Ambac's Proposal** |
| **Proffer of Testimony** | Under the Board's proposal, the Debtors and other parties would be entitled to present testimony at the confirmation hearing by proffer (in addition to presenting testimony by direct examination, use of deposition testimony in accordance with Bankruptcy Rule 7032, or the submission of a declaration).<br><br>(Conf. Proc. Mot. ¶¶ 47-48, Ex. A ¶¶ 4-5.) | Testimony should be by direct testimony, through the submission of a declaration, or the use of deposition testimony in accordance with Bankruptcy Rule 7032, not by proffer.<br><br>(UCC Obj. ¶ 177.) | *No change proposed to address this objection.*<br>(Board Reply, Ex. 1 ¶¶ 6-7.) | Presenting testimony by proffer should not be permitted. Proffers are no substitute for sworn testimony by the witness. |
| **Cross-Examination Informative Motion** | The Board's proposed procedures would require creditors to file an informative motion before conducting any cross-examination (and before the confirmation hearing even starts), setting forth the nature of the intended cross-examination.<br><br>(Conf. Proc. Mot. ¶¶ 47-48, Ex. A ¶ 4.) | This proposed requirement should be stricken. Neither the Board nor any other party is entitled to a preview of opposing parties' cross-examinations.<br><br>(UCC Obj. ¶ 177.) | *No change proposed to address this objection.*<br>(Board Reply, App'x A at 5-6, Ex. 1 ¶ 6.) | This proposed requirement should be stricken.  It would be particularly inappropriate to require such a submission before the hearing has commenced. |

# **<u>Tab 2</u>**

| AMBAC DEMONSTRATIVE EXHIBIT – PROPOSED CONFIRMATION SCHEDULE | | |
|---|---|---|
| **Deadline/Event** | **Board's Proposal[1]** | **Ambac & FGIC's Proposal[2]** |
| Conversion of Disclosure Statement Depository to Plan Depository | On or after July 13, 2021 | On or after July 13, 2021 |
| Deadline to File Initial Objections to Confirmation | August 3, 2021 | N/A |
| Deadline for Eligible Creditors to Serve Requests for Production of Non-Depository Documents | August 6, 2021 | August 6, 2021 |
| Deadline for the Debtors to Serve Requests for Production | August 6, 2021 | August 6, 2021 |
| Deadline to Serve Responses and Objections to Requests for Production (All Parties) | August 16, 2021 | August 16, 2021 |
| Deadline for Substantial Completion of Document Production (All Parties) | N/A | September 17, 2021 |
| Serve Opening Expert Disclosures (All Parties) | August 30, 2021 | September 17, 2021 |
| Opening Expert Reports Due (All Parties) | September 3, 2021 | September 24, 2021 |
| Deadline to Serve Notices of Deposition, Topics, and Requested Times for Depositions (All Parties) | August 17, 2021 | October 8, 2021 |
| Status Conference on Deposition Notices | August 23, 2021 | October 15, 2021 |
| Serve Rebuttal Expert Disclosures (All Parties) | September 24, 2021 | October 15, 2021 |
| Filing of Deposition Schedule | August 25, 2021 | October 18, 2021 |
| Serve Rebuttal Expert Reports (All Parties) | October 1, 2021 | October 22, 2021 |

---

[1] (*See* Conf. Proc. Mot. (ECF No. 16757) ¶ 33.)

[2] (*See* Ambac/FGIC's Obj. (ECF No. 16998) ¶ 38.)

| Deadline/Event | Board's Proposal[1] | Ambac & FGIC's Proposal[2] |
|---|---|---|
| Witness Depositions | September 13, 2021– October 4, 2021 | November 1, 2021– December 3, 2021 |
| Deadline for Notice of Third-Party Document and Deposition Subpoenas (All Parties) | N/A | November 10, 2021 |
| Deadline to Serve Requests for Admission (All Parties) | August 6, 2021 | December 10, 2021 |
| Deadline to Serve Interrogatories (All Parties) | N/A | December 10, 2021 |
| Deadline to Serve Responses and Objections to Requests for Admission (All Parties) | August 16, 2021 | December 20, 2021 |
| Deadline to Serve Responses and Objections to Interrogatories (All Parties) | N/A | December 20, 2021 |
| Close of Discovery | N/A | December 22, 2021 |
| Deadline to File Objections to Confirmation | October 8, 2021 (Supplemental) | January 7, 2022 |
| Deadline to File Fact Witness List and Topics (All Parties) | August 13, 2021 | January 10, 2022 |
| Deadline to Serve Exhibit Lists and Deposition Designations (All Parties) | October 11, 2021 | January 10, 2022 |
| Deadline to File *Daubert* Motions (All Parties) | October 8, 2021 | January 11, 2022 |
| Deadline to File Motions *in Limine* (All Parties) | October 8, 2021 | January 14, 2022 |
| Deadline to File Objections to *Daubert* Motions (All Parties) | October 15, 2021 | January 25, 2022 |
| Deadline to Exchange Objections to Exhibit Lists, Counter-Designations, Objections to Deposition Designations, and Designation of Witnesses for Cross-Examination (All Parties) | October 18, 2021 | January 26, 2022 |

| Deadline/Event | Board's Proposal[1] | Ambac & FGIC's Proposal[2] |
|---|---|---|
| Deadline to File Objections to Motions *in Limine* (All Parties) | October 15, 2021 | January 28, 2022 |
| Deadline to Exchange Objections to Counter-Designations (All Parties) | October 25, 2021 | February 4, 2022 |
| Deadline to File Replies to *Daubert* Motions (All Parties) | October 25, 2021 | February 8, 2022 |
| Deadline to File Replies to Motions *in Limine* (All Parties) | October 25, 2021 | February 11, 2022 |
| Deadline for the Debtors to File Affidavits, Replies to Objections to Confirmation of Plan of Adjustment, and Proposed Order and Findings of Fact. | October 25, 2021 | February 11, 2022 |
| Deadline to File Witness Declarations (All Parties) | October 25, 2021 (Deadline for Objectors to File Witness Declarations)[3] | February 11, 2022 |
| Hearing on Motions *in Limine* | October 29, 2021 | February 15, 2022 |
| Status Report on Remaining Objections to Declarations, Designations, Witnesses, and Exhibits | November 1, 2021 | February 18, 2022 |
| Confirmation Hearing | November 8–10, 12, 15–18, 22–23 (2021) | February 28, March 1–4, 7–11, 14–18, 21–25, 28–31, April 1, 4–8 (2022) |

---

[3] The Board's proposed deadlines for objectors to file witness declarations, as reflected in the Motions, are inconsistent. (*Compare* Conf. Proc. Mot. (ECF No. 16757) ¶ 33 (proposing an October 25, 2021 deadline for objectors to file witness declarations), *with* Prop. DS Approval Order (ECF No. 16756), Sched. 2 ¶ 7 (proposing a November 1, 2021 deadline for objectors to file witness declarations).) Regardless of which date constitutes the Board's actual proposal, it is far too early in the confirmation process.

# **Tab 3**

## AMBAC DEMONSTRATIVE EXHIBIT – DISCLOSURE ISSUES[1]

| DS Objection | Ambac's Proposed Disclosure/Change | Board's Changes to the DS in Response[2] | Reasons Why Changes are Sufficient / Insufficient |
|---|---|---|---|
| **Section 407 Liability** | ***Creditors may assert claims against the Commonwealth under Section 407 of PROMESA, which could result in significant liability that threatens the Plan's feasibility.***<br><br>Section 407(a) of PROMESA makes a transferee liable for the value of transferred property if, while the Oversight Board is in existence, the property of any territorial instrumentality is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors. Section 407(b) grants a private right to any qualifying creditor to bring a direct action against the transferee of such property unless a stay under Title III is in effect.<br><br>Following the close of the Commonwealth's Title III case, creditors may bring claims seeking to hold the Commonwealth liable under Section 407 for transferring funds from certain territorial instrumentalities (including HTA, CCDA, and PRIFA) or retaining funds that Commonwealth law required be transferred to those entities. Although the Oversight Board disagrees that these creditors would have viable claims under Section 407, there is risk that, if creditors are successful in securing judgments on account of such claims, the Commonwealth may face significant post-confirmation monetary liability. This significant liability of the Commonwealth would call into question the Plan's feasibility.<br><br>(Ambac Obj. Ex. A pg. 3) | ***NO CHANGE TO DS*** | **INSUFFICIENT.**<br><br>The Disclosure Statement does not address a potentially massive back-end liability on the other side of confirmation that could make the Plan unviable. |

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Objection of Ambac Assurance Corporation to the Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. (ECF No. 17008), filed by Ambac on June 15, 2021 ("Ambac Obj.").

[2] All references to page numbers refer to the *Disclosure Statement for the Fourth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 17192), filed by the Board on June 29, 2021.

## AMBAC DEMONSTRATIVE EXHIBIT – DISCLOSURE ISSUES[1]

| DS Objection | Ambac's Proposed Disclosure/Change | Board's Changes to the DS in Response[2] | Reasons Why Changes are Sufficient / Insufficient |
|---|---|---|---|
| **Ambac/ Monoline Voting Rights** | The Disclosure Statement must be amended to accurately reflect the voting rights of monoline insurers with respect to claims arising from bonds they insure.  At present, only the voting rights of those monoline insurers who are party to PSAs with the Board are expressly recognized; the rights of other monoline insurers to vote the claims arising from their insured bonds must be recognized, as well<br><br>(Ambac Obj. ¶¶ 102-08) | [78] Ambac and FGIC assert they are entitled to vote the Claims in Classes 4, 18, 24, and 56-58 corresponding to the Allowed Claims insured by such insurer.<br><br>(Pg. 54 & n.78)<br><br>However, ~~solely~~ for purposes of Article LXXIII of the Plan and section 1126 of the Bankruptcy Code, (a) National shall constitute the "holder" of any National Bond Insured Claims and any National CW/HTA Bond Claims in accordance with Section 301(c)(3) of PROMESA and the law and governing documents applicable to the National Insured Bond Claims and the National CW/HTA Bond Claims, (b) Assured shall constitute the "holder" of any Assured Insured Bond Claims, any Assured CW/Convention Center Claims, any Assured CW/HTA Bond Claims, and any Assured CW/PRIFA Rum Tax Claims in accordance with Section 301(c)(3) of PROMESA and the law and governing documents applicable to the Assured Insured Bond Claims, the Assured CW/Convention Center Claims, the Assured CW/HTA Bond Claims, and the Assured CW/PRIFA Rum Tax Claims, and (c) the "holder" of any other Insured Bond Claims will be determined in accordance with Section 301(c)(3) of PROMESA and any law or governing documents applicable to such Bond Claims.<br><br>(Pg. 473) | **MOSTLY SUFFICIENT.**<br><br>While Ambac appreciates these additions, Ambac believes that the disclosure should make clear that Ambac is in fact entitled to vote those claims. |
| **CCDA PSA Fees** | The Board must amend the Disclosure Statement to identify the source of cash that will be used to fund certain fees payable to CCDA bondholders that have signed a PSA, as it appears the Plan may contemplate the improper use of CCDA bondholder collateral to make such payments.<br><br>(Ambac Obj. ¶¶ 109-13) | [318] The CCDA Consummation Costs are anticipated to be paid from a Puerto Rico Tourism Company account.<br><br>[319] The CCDA Restriction Fee is anticipated to be paid from a Puerto Rico Tourism Company account.<br><br>(Pg. 374 & n.318-19) | **INSUFFICIENT.**<br><br>It is not disclosed whether this is the "Debt Service Escrow" account in which this Court has found CCDA bondholders have established a colorable claim to a security interest (which IS a Tourism Company account), but the fact that Tourism Company funds appear to be contemplated for this payment is cause for concern. |

**AMBAC DEMONSTRATIVE EXHIBIT – DISCLOSURE ISSUES[1]**

| DS Objection | Ambac's Proposed Disclosure/Change | Board's Changes to the DS in Response[2] | Reasons Why Changes are Sufficient / Insufficient |
|---|---|---|---|
| **Definition of "Essential Services"** | The Disclosure Statement expressly declines to define what "essential public services" the Commonwealth will provide post-confirmation, despite the relevance of this information to whether the plan is in the best interests of creditors, among other factors creditors will consider in making a voting decision.<br><br>(Ambac Obj. ¶¶ 123-26) | _____<br>177   Certain parties assert that "essential services" must be specifically identified.<br><br>(pg. 169 & n.177) | **INSUFFICIENT.**<br><br>Creditors cannot determine whether the Plan is in their best interests without proper disclosure of the scope of "essential public services"—as the Fiscal Plan intends to allocate significant resources to "essential public services," creditors need this information to compare their hypothetical return under non-bankruptcy laws and the CW constitution, as required under section 314(b)(6) of PROMESA. |
| **Financial Projections** | The Disclosure Statement does not provide adequate information concerning the Commonwealth's financial condition.  The Commonwealth has not released audited financial statements for 2019 or 2020, and the Board has not attested to the accuracy of any financial information in the Disclosure Statement or Fiscal Plan.  In addition, the Disclosure Statement does not provide, and the Board has resisted efforts to take discovery regarding, the data and assumptions underlying the Disclosure Statement, the Plan, and the Fiscal Plan.<br><br>(Ambac Obj. ¶¶ 127-29) | *NO CHANGE TO DS* | **INSUFFICIENT.**<br><br>If it is not "reasonably practicable" for the Board to provide audited financial statements, that does not give the Board an excuse to withhold ALL financial information that IS available. |

## AMBAC DEMONSTRATIVE EXHIBIT – DISCLOSURE ISSUES[1]

| DS Objection | Ambac's Proposed Disclosure/Change | Board's Changes to the DS in Response[2] | Reasons Why Changes are Sufficient / Insufficient |
|---|---|---|---|
| **Cash/ Non-Cash Assets** | The Disclosure Statement does not adequately disclose information regarding the cash and non-cash assets of the Commonwealth or its agencies, instrumentalities, and public corporations.<br><br>(Ambac Obj. ¶¶ 130-35) | *NO CHANGE TO DS* | **INSUFFICIENT.**<br><br>At bare minimum, if the Board will not provide creditors additional information regarding these cash and non-cash assets, the Disclosure Statement should reflect that creditors have questioned whether billions of dollars in potentially available resources are not being made available to creditors. |
| **Value of ERS Assets** | While the Disclosure Statement discusses the ERS Stipulation, it does not disclose sufficient information regarding a key feature of the settlement underlying that agreement—the value of the ERS assets that the Board purports to purchase on behalf of the Commonwealth in exchange for funding cash distributions to ERS bondholders.  This information will enable voting creditors to assess the reasonableness of one of the settlements of which the Plan "is the product" (DS at i), as well as make an informed judgment with respect to the "good faith" of the process by which the "[P]lan has been proposed[.]"  11 U.S.C. § 1129(a)(3).<br><br>(Ambac Obj. ¶¶ 136-39) | *NO CHANGE TO DS* | **INSUFFICIENT.**<br><br>Creditors are entitled to information that would enable them to cast an informed vote on the Plan, and whether the Commonwealth is receiving reasonable value in exchange for half a billion dollars earmarked for ERS bondholders is relevant to that determination.  If the Board declines to provide this information, the DS should, at a minimum, note that creditors have raised questions regarding the reasonableness of this settlement. |

**AMBAC DEMONSTRATIVE EXHIBIT – DISCLOSURE ISSUES[1]**

| DS Objection | Ambac's Proposed Disclosure/Change | Board's Changes to the DS in Response[2] | Reasons Why Changes are Sufficient / Insufficient |
|---|---|---|---|
| **Effective Date Risk** | *The Effective Date may not occur due to creditor challenges to any confirmation order or the failure of applicable conditions precedent to occur under certain plan support agreements.*<br><br>Article LVIII of the Plan provides for certain conditions that must be satisfied (or waived) prior to the occurrence of the Effective Date. Many of the conditions are outside of the control of the Debtors. As of the date of this Disclosure Statement, there can be no assurance that any or all of the conditions to effectiveness of the Plan will be satisfied (or waived). **Certain creditors have indicated an intent to object to any attempt to waive or shorten the automatic 14-day stay of confirmation orders under Federal Rule of Bankruptcy Procedure 3020(e) (made applicable to the Title III Cases by PROMESA Section 310).** Accordingly, even if the Plan is confirmed by the Title III Court, there can be no assurance that the Plan will be consummated and the adjustment of the Debtors' debts completed. *See* Section VI.R. of this Disclosure Statement, entitled "Conditions Precedent to the Effective Date" (description of the conditions to the effectiveness of the Plan).<br><br>In addition, certain plan support agreements impose conditions that must be satisfied as of the Effective Date. **If the Effective Date does not occur by January 31, 2022, parties to the GO/PBA PSA may terminate the GO/PBA PSA and claim entitlement to a $100 million termination fee.** There can be no assurance that such conditions will be timely satisfied or waived.<br><br>(Ambac Obj. Ex. A pg. 6) | If the Effective Date does not occur by January 31, 2021, parties to the GO/PBA PSA may terminate the GO/PBA PSA and assert payment of the PSA Restriction Fee and Consummation Costs in an aggregate amount of $100,000,000.00 as an administrative expense claim.<br><br>Certain creditors have indicated an intent to object to the waiver or shortening of the automatic 14-day stay of confirmation orders under Federal Rule of Bankruptcy Procedure 3020(e) (made applicable to the Title III Cases by PROMESA Section 310).<br><br>(pg. 513) | **MOSTLY SUFFICIENT.**<br><br>Ambac notes and appreciates that the Board has added disclosure of the Effective Date-related risks that Ambac requested. However, there appears to be a typo—p. 513 says "January 31, **2021**" instead of "January 31, **2022**". |
| **Revenue Bond Litigation Risk** | *If any claimant is successful in prosecuting and obtaining an allowed (i) administrative expense claim, (ii) priority claim, (iii) secured claim, or (iv) non-dischargeable claim, and any such claim is not contemplated to be paid pursuant to the Plan, the Plan may not be confirmable.*<br><br>Various parties have asserted claims against the Debtors that they assert may be administrative expense claims, priority claims, secured claims, or non-dischargeable and that are not contemplated to be paid pursuant to the Plan.<br><br>**Certain litigation concerning such claims, including the Revenue Bond Litigation identified in Section V.F.5 of the Disclosure Statement, is continuing, and may not be completed by the time the Confirmation Hearing is scheduled to begin. If this litigation is not resolved prior to the Confirmation Hearing, the Confirmation Hearing and Effective Date may be significantly delayed to allow for resolution of these disputed claims. Alternatively, the Oversight Board may be required to establish an appropriate reserve to ensure adequate recoveries on the claims sought to be disallowed in the Revenue Bond Litigation if the Oversight Board is unsuccessful.**<br><br>If such and other similar claims are ultimately allowed, **or if the Oversight Board is required to establish an appropriate reserve in respect of such disputed claims pending their resolution,** the Plan ~~may~~ **will** not ~~be~~ confirmable without ~~substantial~~ amendments that ~~may~~ **will** materially change its proposed distributions.<br><br>(Ambac Obj. Ex. A pg. 7) | Certain litigation concerning such claims, including the Revenue Bond Litigation identified in Section V.F.5 of the Disclosure Statement, is continuing, and may not be completed by the time the Confirmation Hearing is scheduled to begin. The Court scheduled a hearing on September 15, 2021 on certain summary judgment motions. See ECF No. 17137. If this litigation is not resolved prior to the Confirmation Hearing, the Confirmation Hearing and Effective Date may be delayed to allow for resolution of these disputed claims. Alternatively, the Oversight Board ____<br><br>may be required to establish an appropriate reserve to ensure adequate recoveries on the claims sought to be disallowed in the Revenue Bond Litigation if the Oversight Board is unsuccessful.<br><br>If such and other similar claims are ultimately allowed, or if the Oversight Board is required to establish an appropriate reserve in respect of such disputed claims pending their resolution, the Plan may not be confirmable without amendments that may materially change its proposed distributions, but material changes would be subject to new votes by the affected claimholders.<br><br>(Pg. 512-13) | **SUFFICIENT.**<br><br>Ambac notes and appreciates that the Board has added substantially all of Ambac's requested disclosures of risks regarding the ongoing Revenue Bond Litigation, including the possibility that an appropriate reserve may need to be created. |

## AMBAC DEMONSTRATIVE EXHIBIT – DISCLOSURE ISSUES[1]

| DS Objection | Ambac's Proposed Disclosure/Change | Board's Changes to the DS in Response[2] | Reasons Why Changes are Sufficient / Insufficient |
|---|---|---|---|
| | | ***The outcome of certain litigation may affect the accuracy of Fiscal Plan projections.***<br><br>The Fiscal Plan assumes the Commonwealth's retention of funds historically allocated to HTA, CCDA, and PRIFA to pay revenue bonds issued by the aforementioned Commonwealth instrumentalities was a valid exercise of its authority and the Commonwealth will continue to have access to the Pledged Revenues. Should the parties challenging the Commonwealth's retention of such funds prevail in the revenue bond litigation described in section V.F.5 of this Disclosure Statement, the accuracy of Fiscal Plan projections will be impacted.<br><br>(Pg. 527) | |