## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re:** | PROMESA |
| | Título III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | |
| | Núm. 17 BK 3238- LTS |
| as representative of | |
| | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, et al., | |

**TO THE HONORABLE COURT:**

**COMES NOW** unsecured creditor, Rosa I. Orengo Rohena (*creditor*), through the undersigned counsel, and very respectfully states and prays as follows:

1. That on December 11th, 2018, the creditor filed an Amended Proof of Claim (*POC*) under claim number 167999 as secured.
2. On June 18th, 2021 the debtor The Commonwealth of Puerto Rico objected the *secured* classification of the claim.
3. After a review of the evidence, the creditor recognizes that her claim is wholly unsecured, and as such amended her POC. (See enclosure.)

**WHEREFORE**, the creditor requests from this Honorable Court to take notice of the preceding facts, take notice of the amendment to the claim and deemed the objection duly addressed.

**RESPECTFULLY SUBMITTED**

In Caguas, Puerto Rico, this 9th day of July 2021.

**CERTIFICATE OF SERVICE:** I CERTIFY that on this same date the foregoing document has been electronically filed WITH THE Clerk of the Court using the CM/ECF system which sends notified of such filing to all system's participants, including the United States District Judge.

**/s/ CARLOS ALBERTO RUIZ, ESQ.**
USDC-PR 210009
Attorney for Creditor(s)
**LCDO. CARLOS ABLERTO RUIZ CSP**
P.O. Box 1298
Caguas, PR 00726-1298
Phone: (787) 286-9775/ Fax: (787) 747-2174
carlosalbertoruizquiebras@gmail.com

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| Fill in this information to identify the case (Select only one Debtor per claim form). / Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación). | | |
|---|---|---|
| ☑ Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☐ Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☐ Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☐ Employees Retirement System of the Government of the Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☐ Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

Modified Official Form 410 / Formulario Oficial 410 Modificado

# Proof of Claim / Evidencia de reclamación

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.

Quienes presenten la documentación deben omitir o editar información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. No adjunte documentos originales, ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

Fill in all the information about the claim as of the Petition Date.

Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.

| Part 1 / Parte 1 | Identify the Claim / Identificar la reclamación |
|---|---|

1. **Who is the current creditor?**

   **¿Quién es el acreedor actual?**

   Rosa I. Orengo Rohena

   Name of the current creditor (the person or entity to be paid for this claim)
   Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación)

   Other names the creditor used with the debtor
   Otros nombres que el acreedor usó con el deudor _____

| 2. | Has this claim been acquired from someone else?<br><br>¿Esta reclamación se ha adquirido de otra persona? | ☑ No / No<br>☐ Yes. From whom?<br>Sí. ¿De quién? _____ | | |
|----|---|---|---|---|

**3.** Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

¿A dónde deberían enviarse las notificaciones al acreedor?

Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g)

| Where should notices to the creditor be sent?<br>¿A dónde deberían enviarse las notificaciones al acreedor? | Where should payments to the creditor be sent? (if different)<br>¿A dónde deberían enviarse los pagos al acreedor? (En caso de que sea diferente) |
|---|---|
| Lcdo. Carlos A. Ruiz Rodríguez, CSP<br>Name / Nombre | Rosa I. Orengo Rohena<br>Name / Nombre |
| PO BOX 1298<br>Number / Número     Street / Calle | Edif D Apto 908 Cond Villas del Parque Escorial<br>Number / Número     Street / Calle |
| Caguas       PR         00726-1298<br>City / Ciudad   State / Estado   ZIP Code / Código postal | Carolina     PR         00987<br>City / Ciudad   State / Estado   ZIP Code / Código postal |
| 787-286-9775<br>Contact phone / Teléfono de contacto | 787-481-3313<br>Contact phone / Teléfono de contacto |
| carlosalbertoruizquiebras@gmail.com<br>Contact email / Correo electrónico de contacto | rior72@hotmail.com<br>Contact email / Correo electrónico de contacto |

| 4. | Does this claim amend one already filed?<br><br>¿Esta reclamación es una enmienda de otra presentada anteriormente? | ☐ No / No<br>☑ Yes.   Claim number on court claims registry (if known)                 167999<br>Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)<br>Filed on / Presentada el  12/11/2018 _____ (MM /DD/YYYY) / (DD/MM/AAAA) |
|----|---|---|

| 5. | Do you know if anyone else has filed a proof of claim for this claim?<br><br>¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación? | ☑ No / No<br>☐ Yes. Who made the earlier filing?<br>Sí.  ¿Quién hizo la reclamación anterior?_____ |
|----|---|---|

**Part 2 / Parte 2:**   Give Information About the Claim as of the Petition Date

Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.

| 6. | Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?<br><br>¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico? | ☐ No / No<br>☑ Yes. Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)<br>Sí. Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/).<br><br>PR Corporation for Public Broadcasting (WIPR) |
|----|---|---|

| 7. | Do you supply goods and / or services to the government?<br><br>¿Proporciona bienes y / o servicios al gobierno? | ☑ No / No<br>☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:<br><br>Vendor / Contract Number | Número de proveedor / contrato: _____<br><br>List any amounts due after the Petition Date (listed above) but before June 30, 2017:<br>Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $ _____ |
|----|---|---|

**8. How much is the claim?**

**¿Cuál es el importe de la reclamación?**

$ 310,685.09

. Does this amount include interest or other charges?
¿Este importe incluye intereses u otros cargos?

☐ No / No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other
charges required by Bankruptcy Rule 3001(c)(2)(A).
Sí. Adjunte un balance con intereses detallados, honorarios,
gastos u otros cargos exigidos por la Norma de Quiebras
3001(c)(2)(A).

**9. What is the basis of the claim?**

**¿Cuál es el fundamento de la reclamación?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit
disclosing information that is entitled to privacy, such as health care information.

Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u
homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la
reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que
reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.

Unpaid salaries for the period of 71 months plus legal expenses as per judgement of March 18, 2015.

**10. Is all or part of the claim secured?**

**¿La reclamación está garantizada de manera total o parcial?**

☑ No / No

☐ Yes. The claim is secured by a lien on property.
Sí. La reclamación está garantizada por un derecho de retención sobre un bien.

Nature of property / Naturaleza del bien:
☐ Motor vehicle / Vehículos

☐ Other. Describe:
Otro. Describir: _____

Basis for perfection / Fundamento de la realización de pasos adicionales: _____

_____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for
example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has
been filed or recorded.)

Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales
para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un
certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha
presentado o registrado un derecho de retención.

Value of property / Valor del bien:      $_____

Amount of the claim that is secured /
Importe de la reclamación que está garantizado: $_____

Amount of the claim that is unsecured /
Importe de la reclamación que no está garantizado: $ 310,685.09
(The sum of the secured and unsecured amounts should match the amount in line 7.)
(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)

Amount necessary to cure any default as of the Petition Date /
Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso : $_____

_____

Annual Interest Rate (on the Petition Date)
Tasa de interés anual (cuando se presentó el caso)_____%

☐ Fixed / Fija
☐ Variable / Variable

**11. Is this claim based on a lease?**

**¿Esta reclamación está basada en un arrendamiento?**

☑ No / No

☐ Yes. Amount necessary to cure any default as of the Petition Date.
Sí. Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso$ _____

| 12. Is this claim subject to a right of setoff? <br><br> ¿La reclamación está sujeta a un derecho de compensación? | ☑ No / No <br><br> ☐ Yes. Identify the property / <br> Sí. Identifique el bien: _____ |
| --- | --- |
| 13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)? <br><br> ¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.? | ☑ No / No <br><br> ☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.    $_____ <br><br> Sí. Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en el que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación. |

## Part 3 / Parte 3:

### Sign Below / Firmar a continuación

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha. FRBP 9011(b).

Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma.

Check the appropriate box / Marque la casilla correspondiente:

☐ I am the creditor. / Soy el acreedor.

☑ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.

I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.

Executed on date / Ejecutado el ___7/9/2021___ (MM/DD/YYYY) / (DD/MM/AAAA)

Signature / Firma

Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:

Name   __Lcdo. Carlos A. Ruiz Rodríguez__
       First name / Primer nombre    Middle name / Segundo nombre    Last name / Apellido

Title / Cargo   __Creditor's attorney__

Company / Compañía   __Lcdo. Carlos A. Ruiz Rodríguez, CSP__
       Identify the corporate servicer as the company if the authorized agent is a servicer.
       Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador.

Address / Dirección   __PO BOX 1298__
       Number / Número          Street / Calle

       __Caguas__                                          __PR__          __00726-1298__
       City / Ciudad                              State / Estado    ZIP Code / Código postal

Contact phone / Teléfono de contacto __787-286-9775__    Email / Correo electrónico __carlosalbertoruizquiebras@gmail.com__

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| JENNIFER BLEST QUIROZ; ROSA ORENGO ROHENA; ADA N. LÓPEZ SANTIAGO; ANÍBAL ARROYO BOLERÍN y ARINDA COLÓN COLÓN<br>Parte Demandante<br><br>v.<br><br>CORPORACIÓN DE PUERTO RICO PARA LA DIFUSIÓN PÚBLICA ET ALS.<br>Parte Demandada | CIVIL NÚM.: KDP2010-1453  (805)<br><br><br>SOBRE:<br><br>DAÑOS Y PERJUICIOS |

**SENTENCIA**

**I.   INTRODUCCIÓN**

El 4 de noviembre de 2010, la parte demandante, Jennifer Blest Quiroz (Blest Quiroz), Rosa Orengo Rohena (Orengo Rohena), Ada N. López Santiago (López Santiago), Aníbal Arroyo Bolerín (Arroyo Bolerín), y Arinda Colón Colón (Colón Colón), presentó Demanda en contra de la Corporación de Puerto Rico para la Difusión Pública (Corporación).  En la misma, los demandantes alegaron que se les cesanteó de sus respectivos puestos de trabajo indebidamente y en violación del debido proceso de ley.  Por tal razón, solicitaron a este Tribunal que se ordenara su reinstalación a la Corporación.  También alegaron que tienen derecho a recibir indemnización por los daños sufridos a raíz de las cesantías, además del pago de los haberes dejados de recibir durante el tiempo transcurrido desde entonces.

Luego de cierto tiempo, y habiéndose diligenciado los emplazamientos pertinentes, los demandados presentaron una Moción de Desestimación.  En dicha moción, alegaron que aplicaban al caso las doctrinas de cosa juzgada y de incuria.  En resumen, los demandados solicitaron a este Honorable Tribunal que se desestimara sin perjuicio la demanda instada.



Luego de varios trámites procesales, se dictó Sentencia Parcial el 4 de mayo de 2015, en la que se declararon nulas las cesantías de los demandantes por no haberse llevado a cabo el procedimiento requerido en el propio reglamento de la Corporación y por la falta de la observación del debido proceso de ley. Por tal razón, ordenamos a que se reinstalara a los demandantes a sus respectivos puestos y a que se les pagara los haberes dejados de percibir. Finalmente, y luego de la celebración de un juicio en su fondo, en los días 8, 9 y 10 de junio de 2015, consideramos la prueba admitida y los testimonios vertidos en sala por lo que procedemos a resolver el aspecto de los daños y perjuicios que reclaman los demandantes.

## II.   DETERMINACIONES DE HECHOS

**En general**

(1)   Para la fecha de los eventos relacionados a éste caso, el Presidente de la Corporación era el señor Cruz Santiago.

(2)   Entre los meses de mayo de 2009 y febrero de 2010, la Corporación emitió varias notificaciones a los empleados gerenciales, en las que les cesanteaba de manera indebida o se les volvía a reinstalar a sus trabajos.

(3)   De ningún Plan de Cesantía surge la especificación del cómputo de antigüedad a considerarse para determinar la eliminación de puestos.

(4)   El 6 de agosto de 2009, la Corporación informó a los empleados gerenciales que de acuerdo con la Sección 11.4 del Reglamento Núm. 6839, la Corporación tomaría en cuenta decretar un Plan de Cesantías. Al próximo día, el 7 de agosto de 2009, se le notificó a los demandantes que sus puestos se encontraban entre los eliminados en el Plan de Cesantías, a base del criterio de antigüedad.

(5)   Más adelante, el 28 de agosto de 2009, la Corporación informó, a través de Carta, que las cesantías del 7 de agosto de 2009 quedaban sin efecto y que se les entregaría a los empleados que habían sido

2



cesanteados, entre ellos los demandantes, una copia del Plan de Cesantías junto a una nueva notificación de cesantía.

(6) Así las cosas, el día 25 de septiembre de 2009, la Corporación notificó a todos los empleados gerenciales los puestos que permanecerían en la Corporación, según el nuevo Organigrama. Los puestos de los demandantes no figuraban entre los mismos.

(7) El 28 de septiembre de 2009, la Corporación notificó al señor Arroyo Bolerín y a las señoras, Blest Quiroz, López Santiago y Orengo Rohena, que sus cesantías serían efectivas en 30 días y que podrían solicitar una concesión de vista informal dentro de 15 días. Además, se les informó que tendrían un periodo de 30 días para presentar un recurso de apelación ante el Comité de Apelaciones (Comité).

(8) Así pues, el 20 de octubre de 2009, el señor Arroyo Bolerín, las señoras Blest Quiroz, Orengo Rohena y López Santiago, presentaron una Demanda de Injunction preliminar y permanente, KPE2009-4445 (904), solicitando al Tribunal que ordenara a la Corporación a dejar sin efecto sus cesantías, pues no se habían cumplido con el Reglamento ni con el debido proceso de ley.

(9) El 27 de octubre de 2009, el señor Cruz Santiago notificó a la señora Colón Colón que su puesto había sido incluido entre los eliminados en el Plan de Cesantías y que la misma sería efectiva en 30 días, con posibilidad de solicitar una vista informal en 15 días. También se le concedió un periodo de 30 días para presentar un recurso de apelación frente al Comité.

(10) Por otro lado, el señor Arroyo Bolerín y las señoras Blest Quiroz, López Santiago y Orengo Rohena, fueron cesanteados nuevamente el 20 de octubre de 2009.

(11) En la demanda de Injunction preliminar y permanente, KPE2009-4445 (904), el Tribunal determinó que las notificaciones de cesantía habían sido defectuosas, dejándolas sin efecto (5 de noviembre de 2009).



3

Luego, el 30 de noviembre de 2009, el Tribunal de Apelaciones revocó la Sentencia, provocando que las cesantías estuvieran nuevamente en vigor.

(12) El 2 de diciembre de 2009, el señor Cruz Santiago les informó al señor Arroyo Bolerín y las señoras Blest Quiroz, López Santiago y Orengo Rohena, que sus cesantías habían sido validadas y que seguían activas.

(13) Las cesantías de los demandantes se hicieron efectivas y finales a principios del mes de febrero de 2010, mediante la Carta que recibieron a principios de enero de 2010.

(14) En ningún momento la Corporación ordenó el readiestramiento de los demandantes para poder ubicarlos en otras áreas de trabajo. Además, los puestos de los demandantes fueron eliminados sin que se realizara un estudio de necesidades de la Corporación.

**Sra. Blest Quiroz**

(15) La señora Blest Quiroz consta con un Bachillerato en Ciencias Políticas, de la Universidad de Puerto Rico, Recinto de Río Piedras. Además, tomó cursos de maestría, en el campo de la Sociología. Posteriormente, cursó estudios de Derecho en la Universidad Interamericana, obteniendo el título de Juris Doctor en el 1997.

(16) Su experiencia laboral comenzó en el 1998 y se ha concentrado en su totalidad en el servicio público. La señora Blest Quiroz ha trabajado para el Municipio de Caguas, para el Cuerpo de Bomberos, entre otros. En el año 2005, comenzó a trabajar en un puesto de confianza como Vicepresidente de Recursos Humanos en la Corporación. Estuvo en dicho puesto hasta febrero de 2009, pues comenzó a trabajar en un puesto gerencial en el servicio de carrera clasificado como Abogado en la Corporación y con un sueldo de $5,742.00 mensual.



4

(17)   Más adelante, y sin aparente razón, se le notificó por Carta a la señora Blest Quiroz sobre la fecha de comienzo en el servicio público que constaba en los expedientes.  En ese momento no se le expresó el motivo de dicha certificación.  La.señora Blest Quiroz entendía que dicha Carta no le advertía nada.  Más allá de informar su antigüedad, no daba ningún indicio de una futura cesantía.

(18)   La señora Blest Quiroz recibió la primera Carta de cesantía el 7 de agosto de 2009.  Se le indicó que tenía 30 días para apelar ante un Comité de Apelaciones que no se configuró hasta el 26 de agosto de 2009.

(19)   Eventualmente, el 28 de agosto de 2009, la Corporación envió una Carta a los gerenciales cesanteados notificando que dejaba sin efecto la cesantía del 7 de agosto, pero aclarando que habría una cesantía en el futuro.

(20)   El 23 de septiembre de 2009, el señor Cruz Santiago notificó a los empleados, que la Junta de Directores le había instruido a implantar un Plan de Cesantías de posiciones gerenciales.  Así las cosas, el 28 de septiembre de 2009, le envió la segunda notificación de cesantía, la cual sería efectiva en 30 días.

(21)   El señor Cruz Santiago notificó, el 2 de diciembre de 2009, que las cesantías continuaban vigentes.

(22)   Finalmente, el día 4 de enero de 2010 se realizó la tercera cesantía, la cual sería efectiva a principios del mes de febrero de 2010.

(23)   En resumen, la señora Blest Quiroz fue cesanteada en tres ocasiones de su trabajo, en solo cinco meses.  Esto sin contar el resto de las notificaciones que le informaban de una posible cesantía futura.

(24)   Todo este proceso provocó que la señora Blest Quiroz tuviera que asistir al psicólogo en varias ocasiones, pues sentía gran angustia, desesperación e incertidumbre ante la situación que había creado la Corporación a través del absurdo proceso que llevó a cabo.  Le



5

deprimió el tener que decirle a su hija de 11 años lo que estaba sucediendo. Incluso, a causa de las dificultades económicas, tuvo la necesidad de pedirle al padre de su hija, quien residía en los Estados Unidos, que asumiera la custodia de la menor.

(25) Durante el proceso de interrogatorio, la señora Blest Quiroz lloraba al recordar todo el proceso de cesantía al que fue sometida. Testificó que sintió coraje durante el mismo y que aun se siente dolida con todo lo acontecido.

(26) La señora Blest Quiroz, para poder cumplir con sus obligaciones económicas, solicitó Desempleo y utilizó aproximadamente $50,000.00 de su dinero de retiro para poder subsistir. Además, ha recibido ayuda económica de su madre, hasta que esta fue diagnosticada con cáncer en enero de 2013. A partir del diagnóstico, la señora Blest Quiroz ha tenido que hacerse cargo de su madre.

(27) Al día de hoy, la señora Blest Quiroz se encuentra desempleada. Las gestiones que ha hecho para conseguir empleo no han tenido éxito. Muchas de esas gestiones han sido en el Gobierno, pero no ha podido obtener los puestos por el conflicto que representaría a causa de este pleito.

**Sra. Orengo Rohena**

(28) La señora Orengo Rohena consta con un Bachillerato y una Maestría en Comunicaciones. Desde que cursaba estudios en la universidad, comenzó a trabajar como asistente de cátedra.

(29) La señora Orengo Rohena comenzó a trabajar en la Corporación cuando se iban a trasmitir por el canal los Juegos Centroamericanos de 1993.

(30) Al momento de la cesantía del 3 de febrero de 2010, la señora Orengo Rohena ocupaba un puesto gerencial en el servicio de carrera



6

clasificado como Supervisora de Promoción en la Corporación con un sueldo de $2,666.00.

(31) Luego de la cesantía, en febrero de 2010, la señora Orengo Rohena tuvo la oportunidad de trabajar en Ballet Concierto, pero al eliminarse su plaza, perdió el trabajo.   Luego de eso, fue beneficiaria de Desempleo, agotando el periodo que tenía para recibirlo.

(32) Cuando a la señora Orengo Rohena se le entregó la primera carta de cesantía, en el mes de agosto, no la leyó completamente para poder continuar haciendo su trabajo ese día.  Cuando tuvo la oportunidad de leerla, no entendía porqué la habían incluido entre el grupo de empleados cesanteados.  Desde ese momento, hasta el día de hoy, siente tristeza, humillación y desprecio.  Entre lágrimas, testificó que siempre había sentido un cariño especial por su lugar de trabajo, pues comenzó a trabajar en un momento en que había mucha necesidad de sus conocimientos.   Además, había tenido la oportunidad de trabajar en la Corporación por sus méritos, cosa que la enorgullecía mucho.

(33) Desde el día de la cesantía, Orengo Rohena no siente paz.  No puede pasar por su antiguo trabajo sin que los sentimientos de tristeza y de vergüenza le invadan.  Todavía siente enojo por la manera en que sucedió todo.

(34) La señora Orengo Rohena padecía, desde antes de la cesantía, de alopecia.  Dicha condición se encontraba controlada gracias a los tratamientos a los que se había sometido, pero con la ansiedad que le produjo el proceso de cesantía se le comenzó a agravar la enfermedad nuevamente.   Debido a las prioridades de otras responsabilidades económicas que tiene, no ha podido pagar por los tratamientos para mejorar su condición y tiene que vivir con la situación de no tener cabello en ciertas partes de su cabeza, cosa que le avergüenza.



(35) Además, padece de espasmos musculares y debe recibir ajustes quiroprácticos periódicamente para sentirse mejor.

(36) Al momento de su cesantía, y al día de hoy, la señora Orengo Rohena vivía con sus hermanas. Olga, la hermana mayor de la señora Orengo Rohena, sufre de esquizofrenia desde los 17 años, por tal razón recibe Seguro Social. Orengo Rohena y su hermana menor se encargan de Olga, pero la demandante es su tutora oficial. Además, comparte con su hermana menor las responsabilidades económicas del hogar en donde viven, pero desde su cesantía ha tenido dificultades para cumplir con su mitad de los gastos.

(37) La señora Orengo Rohena ha hecho varias gestiones para conseguir trabajo. Ha solicitado empleo en varios lugares y ha acudido a un sinnúmero de entrevistas, pero no ha tenido éxito. Además, ha tomado cursos para diversificar y aumentar su conocimiento.

## Sra. López Santiago

(38) La señora López Santiago tiene un Bachillerato en Cine y Video, el cual adquirió mientras estudiaba en el estado de Nueva York.

(39) Al momento de la cesantía del 3 de febrero de 2010, la señora López Santiago ocupaba un puesto gerencial en el servicio de carrera clasificado como Oficial Administrativo en la Corporación con un sueldo de $3,188.00.

(40) Al recibir la primera carta de cesantía (7 de agosto de 2009), la señora López Santiago recuerda haberse sentido muy impresionada y triste. Cuando la recibió comenzó a llorar junto a algunos de sus compañeros cesanteados.

(41) En ese momento, la señora López Santiago residía sola en el pueblo de Caguas. No es hasta luego de la cesantía, que se casa y procrea un hijo, el cual actualmente tiene dos años de edad.



8

(42) La señora López Santiago padecía, desde antes de la cesantía, de Crohn's Disease y se trataba con una gastroenteróloga.

(43) Al recibir tantas notificaciones distintas, siendo cesanteada y luego reinstalada, solo sentía confusión. Esta situación no le permitía dormir bien, pues no tenía certeza de lo que estaba sucediendo. Cada notificación que recibía le causaba que aumentara su frustración.

(44) La señora López Santiago comenzó a tomar pastillas relajantes y para poder dormir, recetadas por su médico de familia, la Dra. Mildred Díaz.

(45) En cada ocasión que salía del canal, por haber sido cesanteada, se sentía humillada. Tenía que nuevamente recoger sus cosas y salir con ellas al terminar su jornada.

(46) La señora López Santiago entiende que nunca se le dio una explicación clara de los criterios para cesantearla. Además, de sentir que el proceso fue sumamente atropellado y hasta un poco burlón.

(47) Luego de la cesantía final de febrero de 2010, la señora López Santiago ha tenido la oportunidad de trabajar en varios lugares. Algunos han sido de manera temporera o como servicio profesional. Primero, tuvo la oportunidad de trabajar unos meses para el Censo de Puerto Rico. Dicho trabajo era por etapa, le llamaban cuando la necesitaban, no se trataba de algo fijo y/o permanente. Luego, tuvo la oportunidad de trabajar por un periodo de tiempo con una compañía de mercadeo, pero en ella devengaba un sueldo menor al que recibía en la Corporación, por lo que se le hacía difícil cumplir con todas sus obligaciones económicas. Finamente, comenzó a trabajar con la Universidad Interamericana en Ponce para preparar unos cursos en línea, se trataba de un trabajo temporero y como servicio profesional. Con el tiempo, se le dio la oportunidad de comenzar en una plaza regular, la que conserva hasta el día de hoy.

9



(48)   En los momentos en que no tuvo ningún tipo de ingreso por empleo, se benefició del Desempleo y del Plan de Salud del Estado.

### Sra. Colón Colón

(49)   La señora Colón Colón ocupaba un puesto gerencial en el servicio de carrera clasificado como Administradora de Sistemas de Oficina en la Corporación, con un sueldo de $1,956.00 mensual.

(50)   Desde el 14 de mayo de 2009, la Corporación había notificado a sus empleados sobre la crisis fiscal por la que atravesaba.

(51)   La señora Colón Colón recibió la primera Carta de cesantía el 7 de agosto de 2009. Se le indicó que tenía 30 días para apelar ante un Comité de Apelaciones que no se configuró hasta el 26 de agosto de 2009.

(52)   Eventualmente, el 28 de agosto de 2009, la Corporación envió una Carta a los gerenciales cesanteados notificando que dejaba sin efecto la cesantía del 7 de agosto, pero aclarando que habría una cesantía en el futuro.

(53)   El día 28 de septiembre de 2009, se le informó a la señora Colón Colón, su antigüedad en el servicio público y su derecho a impugnar la determinación.

(54)   Por otro lado, el 27 de octubre de 2009, el señor Cruz Santiago notificó a la señora Colón Colón que, su puesto estaba incluido entre los eliminados por el Plan de Cesantías, la cual sería efectiva en 30 días.   Además, le confería un periodo de 15 días para apelar la decisión ante el Comité.   Al día siguiente, la señora Colón Colón, presentó una Carta señalando los errores cometidos en el proceso de cesantía.

(55)   El señor Astondoa Rivera (Vicepresidente de Recursos Humanos), a petición de la señora Colón Colón, le concedió a la misma, una vista



10

administrativa informal a cual fue celebrada el 30 de diciembre de 2009.

(56) El 7 de febrero de 2010 se hizo efectiva y final la cesantía de la señora Colón Colón.

(57) La señora Colón Colón, al recibir la primera Carta de cesantía, se sintió molesta.  Justo la semana antes había comenzado los trámites de su divorcio.  Se sentía insegura, pues su hija tenía cuatro años en ese momento, y no sabía que iba a suceder con su trabajo ni con su matrimonio.

(58) Al momento de la cesantía, la señora Colón Colón residía con sus padres, por la situación del divorcio.

(59) El sentimiento de frustración estuvo presente desde el día en que la señora Colón Colón recibió la primera Carta de cesantía.   Confesó haberse sentido en el "limbo", pues nada era seguro o final.

(60) Además, la señora Colón Colón, expresó que se sentía sumamente preocupada, porque no sabía como mantendría a su hija y a sus padres.  También le preocupaba el asunto del divorcio y de cómo le pagaría a su abogado; sentía que no tenía salida.

(61) La señora Colón Colón estuvo cesanteada los meses de noviembre y diciembre y, al enterarse de que se estaban confiriendo vistas informales, solicitó una, la cual le fue otorgada de un día para otro.

(62) Luego de la cesantía final de principios de febrero, la señora Colón Colón consiguió trabajo en el Municipio de Juncos (marzo 2010).  Al día de hoy, sigue empleada en Juncos, pero le es difícil porque vive en Trujillo Alto; el gasto de gasolina y peaje es alto.

(63) La señora Colón Colón expresó que sintió que el proceso de cesantías no fue justo.  Se cesanteó a padres y madres de familia de manera atropellada e injusta.



**Sr. Arroyo Bolerín**

(64) El señor Arroyo Bolerín consta con un Bachillerato en Administración Comercial y Finanzas, una Maestría en Finanzas y la certificación de Contador Público Autorizado (C.P.A.).

(65) En lo que a experiencia laboral consta, el señor Arroyo Bolerín, ha tenido la oportunidad de laborar en el Departamento de la Vivienda, en la práctica privada como C.P.A., en el Municipio de Carolina y en la Autoridad Metropolitana de Autobuses.   En el año 2003, tuvo la oportunidad de comenzar a trabajar en la Corporación.

(66) Desde el año 2005, el señor Arroyo Bolerín, ocupaba un puesto gerencial en el servicio de carrera clasificado como Gerente de Finanzas y Presupuesto en la Corporación, con un sueldo de $5,943.00. Este fue el puesto que ocupó hasta el 3 de febrero de 2010.

(67) El señor Arroyo Bolerín recibió la primera Carta de cesantía el 7 de agosto de 2009.  Se le indicó que tenía 30 días para apelar ante el Comité de Apelaciones.  Dicha cesantía quedó sin efecto a través de la Carta del 28 de agosto de 2009, pero se especificó que habría una cesantía en el futuro.

(68) Así las cosas, el 28 de septiembre de 2009, el señor Arroyo Bolerín recibió la segunda notificación de cesantía, la cual sería efectiva en 30 días.

(69) El señor Cruz Santiago, notificó, el 2 de diciembre de 2009, que las cesantías continuaban vigentes.

(70) Luego de varias comunicaciones y procesos en la Corporación, el señor Arroyo Bolerín, recibió la tercera notificación de cesantía, 4 de enero de 2010, la cual sería efectiva a principios del mes de febrero de 2010.



Apéndice II - 000036

(71)   El proceso de cesantías provocó que el señor Arroyo Bolerín sintiera coraje y frustración, pues su esposa y dos hijas dependían de él económicamente.

(72)   Para poder subsistir, el señor Arroyo Bolerín tuvo que retirar $40,000.00 de su fondo de retiro. Su madre también le ayudó económicamente durante este proceso.

(73)   Desde que fue cesanteado, el señor Arroyo Bolerín hizo gestiones para encontrar trabajo y generar ingresos. Primero, decidió comenzar, junto a otros compañeros cesanteados, un negocio de gomas importadas. El mismo no tuvo éxito y en poco tiempo lo tuvieron que vender. Luego, mientras continuaba en la búsqueda de trabajo, prestó sus servicios de C.P.A. de manera independiente. Finalmente, consiguió un empleo con el Departamento de la Familia, como Director de Finanzas. Dicho puesto era de carácter transitorio, con fecha de culminación el 30 de junio de 2015.

(74)   En su testimonio, el señor Arroyo Bolerín, confesó que una vez quede cesanteado nuevamente solo le resta seguir haciendo gestiones para conseguir un empleo. Aunque ya sus hijas no residen con él y su esposa trabaja como Técnico de Farmacia, necesita recibir un ingreso para poder cumplir con sus responsabilidades económicas.

(75)   Para el señor Arroyo Bolerín, el proceso de cesantía no se llevó a cabo de la manera debida. Las justificaciones de la eliminación de su puesto no fueron detalladas, de manera que él pudiera entender las razones con claridad.

### III.   DERECHO APLICABLE

**Responsabilidad Extracontractual**

Nuestro Código Civil rige sobre las materias civiles de derecho en nuestra jurisdicción. Por tal razón, cuando se evalúa un caso de daños acudimos a dicha fuente primaria. El Artículo 1802 del Código, 31 LPRA §5141, establece



que, "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.  La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización".  Nuestra jurisprudencia ha elaborado en cuanto a la aplicación de dicho Artículo, tomando en cuenta los elementos a considerar al momento de aplicarlo.  En varias opiniones del Tribunal Supremo se han reiterado los tres elementos principales para que exista responsabilidad civil:

(1)  que ocurra un daño;

(2)  que haya una acción u omisión culposa o negligente, y

(3)  que exista una relación causal entre el daño y la conducta culposa o negligente.[1]

Por otro lado, es necesario estar consiente de la amplitud del concepto de culpa al que se refiere el artículo 1802.  Se trata de un concepto que puede ser tan abarcador como la conducta humana.[2]  Es decir, puede existir culpa por infinidad de causas, lo que provoca que constantemente se puedan evaluar casos que se alejan de la norma.

Por otro lado, el deber de indemnización, supone la existencia de un nexo entre el daño causado y la acción u omisión.  Se ha establecido claramente que solo se indemnizaran los daños que han sido causados por el acto u omisión negligente.[3]  Por lo tanto, para generar responsabilidad "es imperativo un nexo causal entre el daño y el acto culposo o negligente".[4]  Por lo tanto, si un daño no concurre con la causa, no se podrá indemnizar de ninguna forma.

**Determinación de los daños**

La determinación de los daños nunca ha sido tarea fácil.[5]  Cada caso es distinto y por lo tanto, es necesario evaluar la prueba desfilada para poder llegar a  una determinación justa, "procurando siempre que la indemnización no



[1] García v. E.L.A., 163 DPR 800 (2005); Toro Aponte v. E.L.A., 142 DPR 464 (1997); Gierbolini v. Employers Fire Ins. Co., 104 DPR 853 (1976).
[2] Reyes v. Sánchez, 98 DPR 305 (1970).
[3] Estremera v. Inmobiliaria Rac., Inc., 109 DPR 852 (1980).
[4] Tormos Arroyo v. D.I.P., 140 DPR 265, 274 (1996).
[5] Escobar Galarza v. Banuchi Pons, 114 DPR 138 (1983).

14

se convierta en una industria y que no lesione la economía"[6]. El agraviado, debe probar "que no se trata de una simple pena pasajera, sino que, en alguna medida apreciable ... realmente quedó afectado en su salud, bienestar y felicidad...".[7] Por lo tanto, el juzgador tiene una gran responsabilidad de evaluar cada caso en su totalidad, considerando la prueba, para poder llegar a una determinación balanceada, en la que indemnice debidamente a quien lo merezca y, a su vez, tome en cuenta las consecuencias de otorgar la indemnización.

Además, a través de la jurisprudencia, se ha reiterado que le toca a los Tribunales de Primera Instancia determinar los daños que sufren las distintas personas que así lo solicitan. Solo intervendrá un tribunal de más jerarquía, cuando "las sumas de dinero concedidas sean o exageradamente altas o ridículamente bajas".[8] Queda claro que es preferible que el Tribunal de Primera Instancia, que es quien tiene contacto directo con la prueba y los testigos, sea quien determine la cantidad que se otorgará como indemnización.

### IV.   CONCLUSIONES DE DERECHO

En el presente caso, nos encontramos, a grandes rasgos, con un caso en el que varios empleados (los demandantes) fueron cesanteados de sus plazas de trabajo de carrera en la Corporación. Luego de una evaluación extensa de la situación y considerada la prueba presentada ante este Tribunal, se dictó una Sentencia Parcial, en la que se declararon nulas dichas cesantías. Esta declaración de nulidad, obliga a la Corporación a reinstalar a los demandantes a sus empleos. Este, en teoría, es el fin principal de la Responsabilidad Civil Extracontractual, colocar a la persona que haya sufrido el daño al lugar en el que se encontraba antes de sufrirlo. A pesar de que la Sentencia Parcial hace exactamente eso, los demandantes han pedido que se les indemnice económicamente por los daños que han sufrido desde que recibieron la primera carta de cesantía. Reclaman por los sueldos dejados de devengar en el periodo



---

[6] Admor v. McClurg, 87 DPR 865 (1963).
[7] Moa v. E.L.A., 100 DPR 573 (1972)
[8] Escobar Galarza v. Banuchi Pons, supra.

Apéndice II - 000039

que han permanecido cesanteados y, además, solicitan indemnización por las angustias mentales sufridas durante el proceso de cesantía.

Como la prueba desfilada deja ver, la Corporación fue negligente en la manera en que llevó a cabo las cesantías de sus empleados gerenciales. En más de una ocasión envió cartas a sus empleados notificándoles que quedaban cesanteados y, en otros momentos los volvía a reinstalar. En fin, se demostró que fue un proceso atropellado en el cual se violó el debido proceso de los empleados.

Durante espacio de aproximadamente cinco meses, la Corporación se mantuvo notificándoles a los demandantes que iban a ser cesanteados en consideración a una antigüedad que nunca fue explicada, por lo que los demandantes se sintieron burlados. Como si ello fuera poco, los demandantes Arroyo, Blest, López y Orengo fueron cesanteados tres veces durante este periodo. Ello ocasionó que en tres ocasiones distintas tuvieran que recoger sus cosas y salir de las facilidades físicas de la Corporación. Mientras que la codemandante Colón fue cesanteada durante el periodo de Acción de Gracias sin tan siquiera contestar su carta para mostrar causa por la cual no debía eliminarse su puesto. Todos los demandantes fueron cesanteados y privados de sus sueldos al menos en una ocasión antes de que se celebrara una vista administrativa informal que garantiza el propio Reglamento 6859.

A causa de las cesantías, los demandantes sufrieron angustia y ansiedad, pues no entendían las razones ni los criterios de las cesantías. Algunos de los demandantes, entre ellos las señoras López Santiago y Orengo Rohena, vieron como condiciones de salud que previamente tenían se agravaban. Además, los demandantes expresaron, algunos entre lágrimas, lo tristes que se sentían de haber sido cesanteados. El coraje, la confusión, la frustración y la incertidumbre son solo algunos de los sentimientos que expresaron los demandantes mientras testificaban. Además expresaron la dificultad que han tenido para cumplir con sus obligaciones económicas. Algunos recurrieron a retirar los fondos de Retiro para poder subsistir, mientras que otros han



16

utilizado sus respectivas líneas de crédito. Esto ha provocado que los demandantes sientan que no tienen un futuro seguro.

De los testimonios surge que todos los demandantes han hecho gestiones para conseguir trabajo (unos mas que otros, naturalmente), y han mostrado lo difícil del proceso de búsqueda. Algunos han logrado conseguir empleos, pero con una paga mucho menor que la que tenían en la Corporación. Otros viven como pueden, pues no han podido conseguir empleo a pesar de los esfuerzos realizados.

La inestabilidad económica que ha experimentado, y que aun vive, cada uno de los demandantes, se debe al proceso de cesantías que llevó a cabo la Corporación. De haberse llevado a cabo el proceso como era debido, los demandantes hubiesen tenido mayor oportunidad de proyectarse al futuro y pensar qué hacer una vez estuvieran cesanteados. El proceso atropellado que se llevó a cabo, no permitió que los demandantes pudieran actuar rápidamente y gestionar la búsqueda de otro empleo. La inestabilidad del proceso, que un día los cesanteaba y otro les daba esperanzas de que no serían cesanteados, fue un acto negligente y culposo por parte de la Corporación. Este Tribunal está plenamente convencido de que la preocupación de confrontar sus necesidades económicas sin contar con sus respectivos salarios provocó en los demandantes gran perturbación y les afectó en su felicidad.

## V.   SENTENCIA

Por los fundamentos expuestos, se declara la Demanda ha lugar y este Tribunal ordena que la parte demandada indemnice a los demandantes por sus sufrimientos y angustias mentales por las siguientes sumas:

1. Jennifer Blest Quiroz $90;000.00

2. Rosa Orengo Rohena $60,000.00

3. Ada N. López Santiago $70,000.00

4. Arinda Colón Colón $70,000.00

5. Aníbal Arroyo Bolerín $90,000.00



17

Este Tribunal además determina que la Corporación fue temeraria en la tramitación y defensa de la reclamación de daños de los demandantes. A tales efectos, este Tribunal condena a la parte demandada al pago de honorarios de abogados a favor de los demandantes por la cantidad de $10,000.00.

REGÍSTRESE Y NOTIFÍQUESE.

En San Juan, Puerto Rico, a 18 de marzo de 2015.

*Maria M. Cabrera Torres*

MARÍA M. CABRERA TORRES
JUEZA SUPERIOR

CERTIFICO:

_____
Secretaria Regional

-or: Sonia I. Rodríguez Otero
_____
Secretaria Auxiliar



18

Apéndice II - 000042

Aumentos de salarios concedidos a los empleados gerenciales durante los años 2010 -2015

ANEJO 1

| NOMBRE | FECHA DESTITUCION | SALARIO DEVENGADO FEB. 2010 | ALIMENTO CONCEDIDO 1 JULIO 2011 | ALIMENTO CONCEDIDO 1 OCT. 2012 | ALIMENTO CONCEDIDO 1 JULIO 2013 | SALARIO MENSUAL DEJADO DE DEVENGAR | SALARIO DEJADO DE DEVENGAR POR 71 MESES |
|---|---|---|---|---|---|---|---|
| JENNIFER BLEST | 3 FEB. 2010 | $ 5,742.00 | 95.00 | 50.00 | 85.00 | 5,972.00 | 424,012.00 |
| ANIBAL ARROYO | 3 FEB. 2010 | $ 5,943.00 | 95.00 | 50.00 | 85.00 | 6,173.00 | 438,283.00 |
| ROSA ORENGO | 7 feb. 2010 | $ 2,668.00 | 95.00 | 50.00 | 85.00 | 2,896.00 | 205,616.00 |
| ARINDA COLON | 3 FEB. 2010 | $ 1,956.00 | 95.00 | 50.00 | 85.00 | 2,186.00 | 155,206.00 |
| ADAN, LOPEZ | 3 FEB. 2010 | $ 3,188.00 | 95.00 | 50.00 | 85.00 | 3,418.00 | 242,678.00 |

Aportación patronal para el pago del Plan Medico y Bono de Navidad concedidos 2010-2015

ANEJO 2

| PERIODO | APORTACION PATRONAL MENSUAL PLAN MEDICO | APORTACION PATRONAL MENSUAL PLAN MEDICO | BONO DE NAVIDAD |
|---|---|---|---|
| Feb. a Dic. 2010 | 464.50 | 5,109.50 | 1,350.00 |
| Año Natural 2011 | 464.50 | 5,574.00 | 1,685.00 |
| Año Natural 2012 | 464.50 | 5,574.00 | 1,480.00 |
| Año Natural 2013 | 464.50 | 5,574.00 | 1,480.00 |
| enero a julio 14 | 442.37 | 3,251.50 | |
| agosto a dic. 14 | 443.52 | 2,217.60 | 600.00 |
| enero a feb. 15 | 443.52 | 887.04 | |
| marzo a dic. 15 | 443.43 | 4,435.20 | 600.00 |
| | | 32,622.84 | 7,175.00 |
| | | | 39,797.84 |