# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re: | ) |
|  | ) |
|  | ) PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) Title III |
| MANAGEMENT BOARD FOR PUERTO RICO | ) |
|  | ) Case No. 17-BK-03283 (LTS) |
| as representative of | ) |
|  | ) (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) |
|  | ) **Re: ECF No. 16756, 16757,** |
| Debtors.[1] | ) **16991, 17003** |
|  | ) |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES' MOTION TO INFORM REGARDING RESOLUTION OF ISSUES RAISED IN (A) LIMITED RESPONSE OF THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES TO THE AMENDED JOINT MOTION OF THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY FOR AN ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) FIXING VOTING RECORD DATE, (III) APPROVING CONFIRMATION HEARING NOTICE AND CONFIRMATION SCHEDULE, (IV) APPROVING SOLICITATION PACKAGES AND DISTRIBUTION PROCEDURES, (V) APPROVING FORMS OF BALLOTS, AND VOTING AND ELECTION PROCEDURES, (VI) APPROVING NOTICE OF NON-VOTING STATUS, (VII) FIXING VOTING, ELECTION, AND CONFIRMATION DEADLINES, AND (VIII) APPROVING VOTE TABULATION PROCEDURES [DKT. 17003]; AND (B) LIMITED RESPONSE AND REQUEST FOR CLARIFICATION OF THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES TO THE MOTION OF DEBTORS FOR AN ORDER ESTABLISHING, AMONG OTHER THINGS, PROCEDURES AND DEADLINES CONCERNING OBJECTIONS TO CONFIRMATION AND DISCOVERY IN CONNECTION THEREWITH [DKT 16991]**

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Retired Employees (the "**Retiree Committee**") hereby files this Motion to Inform in connection with the issues it raised in its: *Limited Response of the Official Committee of Retired Employees to the Amended Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [Dkt. 17003, **Disclosure Statement/Plan Solicitation Response**"] and *Limited Response and Request for Clarification of the Official Committee of Retired Employees to the Motion of Debtors for an Order Establishing, Among Other Things, Procedures and Deadlines*

2

*Concerning Objection to Confirmation and Discovery in Connection Therewith* [Dkt. 16991, the "**Hearing Procedures Response**"], and states:

## INTRODUCTION

1. On June 15, 2021, the Retiree Committee filed its Disclosure Statement/Plan Solicitation Response and its Hearing Procedures Response. As the Retiree Committee indicated in both of its filings, it intended to continue to work with counsel for the Oversight Board to resolve the open issues. It is pleased to report that its issues have been resolved, as set forth below. The Retiree Committee files this informative motion to provide the Court with copies of its Plan Support Letter, revised retiree ballots and voting instructions, Notice of Non-Voting Status (for unimpaired Retiree Claims), and an informational statement for retirees explaining in simplified terms the proposed treatment of pensions under the Debtors' Fourth Amended Plan (the "**Plan**").

2. In addition, in light of those resolutions and the supplemental filing made by the Official Committee of Unsecured Creditors (the "**UCC**") concerning classification of claims (*see* Dkt. 17223), the Retiree Committee further explains why separate classification of retiree claims is appropriate.

### I. Resolution Of The Disclosure Statement/Plan Solicitation Response

3. Since the filing of the Disclosure Statement/Plan Solicitation Response, the Retiree Committee and the Oversight Board have continued their discussions on the open issues noted by the Retiree Committee. An update of the status of those open items follows:

    a. **Classification**: Per agreement of the Oversight Board and the Retiree Committee, instead of placing all retirees into one class, the Plan now classifies retirees into six different classes (ERS Above-Threshold, ERS Below-Threshold, TRS Above-Threshold, TRS Below-Threshold, JRS Above-Threshold, and JRS Below-Threshold) that depend on the former retirement system that applied to the retiree and whether the retiree's Total Monthly Benefit is more than $1,500 (the "**Threshold**") and subject to a reduction under the Plan ("**Above-Threshold Retirees**") or $1,500 or less and not subject to

3

reduction (the "**Below-Threshold Retirees**"). This Plan amendment fully resolves the Retiree Committee's classification requests.

b. **Notice of Non-Voting Status**. The Oversight Board has agreed to provide a physical copy of a Notice of Non-Voting Status to the unimpaired Retirees in the ERS Below-Threshold and TRS Below-Threshold Classes, a copy of which is attached hereto as Exhibit A.[2][3]

c. **Plan Support Letter/Simplified Explanation of Retiree Treatment.** The Oversight Board has agreed to include a physical copy of a Plan Support Letter and an information sheet from the Retiree Committee, explaining how the Plan proposes to treat Retiree Claims, why the Retiree Committee supports the Plan, and providing Retirees with an overview of the voting process, and obtaining the Court's approval of this letter and an accompanying simplified explanation of the Plan pursuant to 11 U.S.C. §1125(d) as made applicable by PROMESA. These documents is attached hereto as Exhibit B.

d. **Simplified Ballot And Voting Instructions**. The Oversight Board has agreed to a simplified ballot and voting instructions for Retirees entitled to vote, copies of which are attached hereto as Exhibit C.

e. **Publication/Radio Announcements**. The Oversight Board has agreed to revised publication dates more strategically scheduled during the period for voting on the Plan and to additional radio spots.

f. **Additional Drop Box Sites**. The Oversight Board has agreed to add additional sites in Arecibo and Fajardo for hand delivery of ballots.[4]

g. **Weighed Voting**. Retirees holding impaired claims will receive ballots with bar code weighting of their vote based on the size of their monthly pension benefits.

4. In accordance with the terms of the Retiree Committee's PSA, the Retiree Committee will also be disseminating information to retirees through various methods that may include the Retiree Committee's website and social media, direct mailings, radio and printed

---

[2] The exhibits are filed here in English, but a Spanish translation will be filed on the docket.

[3] The JRS Below-Threshold Retirees are currently impaired under the Plan and entitled to vote. However, the Retiree Committee reserves all rights and arguments regarding this impairment.

[4] The Oversight Board and Retiree Committee are finalizing the precise addresses for these two additional locations. Once those are finalized, the Retiree Committee will update the Voting Instructions in Exhibit C to reflect these additional options.

media, phone banks and/or in-person meetings to explain the voting process, how to fill out a ballot and ensure it is timely submitted, as well as the Retiree Committee's support for the Plan and the reasons for that support, consistent with the information in the Plan Support Letter. The Retiree Committee also requests that its efforts in doing so be generally approved by the Court pursuant to 11 U.S.C. §1125(d) as made applicable by PROMESA.

## II. Updates on the Hearing Procedures Response

5. In its Hearing Procedures Response, the Retiree Committee requested certain changes be made to the Oversight Board's proposed order that would make it clear that the Retiree Committee was entitled to be a full participant in both discovery leading up to plan confirmation and the plan confirmation hearing itself.

6. On June 29, 2021, the Oversight Board submitted a revised order that granted greater participation rights to a "PSA Party," which is defined as "parties to the Plan Support Agreements." [Dkt. 17189-2.] These changes satisfy the Retiree Committee's concern that it be allowed to participate in discovery.

7. The Oversight Board also has agreed that the definition of Eligible Creditor in paragraph 8 of the Order includes the Retiree Committee resolving the other concern of the Retiree Committee.

## III. The Court Should Reject the UCC's Efforts to Create a Single Class Containing All Unsecured Claims

8. While the Retiree Committee and the Oversight Board have been working to create a plan classification system that recognizes and protects the voting interests of retirees based on both the applicable retirement system to which a retiree belongs as well as how that retiree's benefits are treated under the Plan, the UCC argues that the Court must create a single, massive class containing all unsecured creditors. [*See* Dkt. 17017 ¶¶ 126-155; Dkt. 17223]. In so doing, the

UCC argues that the First Circuit's decision in *Granada Wines, Inc. v. New England Teamsters & Trucking Industry Pension Fund*, 748 F.2d 42 (1st Cir. 1984) compels the facially bizarre result that in the largest municipal bankruptcy in American history all unsecured creditors must be placed in the same class.[5]

9. The Oversight Board has once again laid out why these arguments are wrong and the Retiree Committee joins those arguments here. [Dkt. 17187 ¶¶26-62]. Moreover, while the Oversight Board lays out examples of where courts in this Circuit have not followed the UCC's misinterpretation of *Granada Wines*, the number of cases that prove this fact are legion. A sample of recently confirmed plans where the courts have not followed the UCC classification scheme include: *In re Manuel Mediavilla, Inc.*, No. 13-02800, Dkt. 571, Plan Art. II.A, Classes 5-6 (Bankr. D.P.R. Nov. 14, 2017) (confirmed plan separately classified different types of general unsecured claims on the basis of a "legitimate business justification"); *In re Desarrolladoes Del Caribe, S.E.*, No. 14-02855, Dkt. 39, Plan Art. II.A (Bankr. D.P.R. Sept. 5, 2014) (confirmed plan separately classified general unsecured claims and unsecured loan claims); *In re Coco Beach Golf & Country Club, SE*, No. 15-05312, Dkt. 223, Plan Art. II.A (Bankr. D.P.R. Mar. 3, 2016) (confirmed plan separately classified general unsecured claims and unsecured intercompany claims); *In re KCST USA, Inc.*, No. 17-40501, Dkt. 301, Plan Art. III.1 (Bankr. D. Mass. June 18, 2019) (confirmed plan separately classified general unsecured claims and unsecured note claims); *In re Cashman Equip. Corp.*, No. 17-12205, Dkt. 588, Plan Art. III.1 (Bankr. D. Mass. Nov. 2, 2018) (confirmed plan separately classified general unsecured claims and unsecured litigation claims); *In re Lincoln*

---

[5] While the UCC focuses on placing retiree claims and general unsecured claims in the same class, what these arguments would compel is the placing of all unsecured claims (retiree, trade, bond, *etc*.) in one giant class. In fact, the UCC acknowledges that under its proposed rule an unsecured claim only may be separately classified if it is "entitled to priority, or for inclusion in an administrative convenience class under section 1122(b)." [Dkt. 17233 ¶ 16, n.19].

6

*Paper & Tissue, LLC*, No. 15-10715, Dkt. 1257, Plan Art.II (Bankr. D. Me. Jan. 12, 2018) (confirmed plan separately classified general unsecured claims and governmental unsecured claims); *In re Clark-Cutler-McDermott Co.*, No. 16-41188, Plan Art. III.A (Bankr. D. Mass. Feb. 24, 2017) (confirmed plan separately classified general unsecured claims and individual trade creditor's unsecured claim); *In re Bucksport Generation LLC*, No. 15-10802, Dkt. 122, Plan Art.II (Bankr. D. Me. Mar. 22, 2016) (confirmed plan separately classified general unsecured claims and trade creditor's unsecured litigation claims); *In re GT Advanced Techs., Inc.*, No. 14-11916, Dkt. 3297, Plan Art. III.1 (Bankr. D.N.H. Feb. 17, 2016) (confirmed plan separately classified general unsecured claims and senior unsecured notes claims); *In re Montreal Maine & Atlantic Railway, Ltd.*, No. 13-10670, Dkt. 1791, Plan Art.III (Bankr. D. Me. Oct. 8, 2015) (confirmed plan separately classified general unsecured claims and unsecured wrongful death claims); *In re City of Central Falls Rhode Island*, No. 11-BK-13105, Dkt. 572-1, Plan Art. III.G-L (Bankr. D.R.I. Sept. 11, 2012) (confirmed plan separately classified general unsecured claims and unsecured retiree claims).

10. Further, while the Oversight Board is correct that *Granada Wines* has no applicability here, it is also true that even if *Granada Wines* were controlling, the Plan's separation of retiree claims from other unsecured claims still would be appropriate. At most, *Granada Wines* requires a difference in "legal character" for separate classification.[6] That standard plainly is satisfied here. The UCC has no answer for how a retiree's claim that is paid in a monthly pension

---

[6] The UCC incorrectly argues that *Granada Wines* requires a "different in rank concerning rights against the debtor or its property"; *i.e.*, either secured or entitled to priority. [Dkt. 17017 ¶134 (quoting *In re Bjolmes Realty Tr.*, 134, B.R. 1000, 1003) (Bankr. D. Mass. 1991).] That language is found nowhere in the First Circuit's decision. But even if a showing of a different priority were required, retiree claims would meet that test as well given that PROMESA mandates that the Fiscal Plan and, in turn, the Plan of Adjustment "provide adequate funding" for retiree claims—a directive nowhere found for general unsecured claims. 48 U.S.C. § 2141(b)(1)(C); 48 U.S.C. § 2174(b)(6).

check for life and is based on a complicated statutory scheme is not of a different "legal character" than the claim of a commercial creditor who is paid a lump sum from the Commonwealth's general coffers in accordance with negotiated rates for goods provided or services rendered.

11. Indeed, the clear distinction between a retiree's claim and a trade creditor's claim is why the substance of the UCC's requested relief continues to be on the difference in *treatment* between retiree claims and general unsecured claims, not the separate classification. In its Disclosure Statement Objection, the UCC proposes language that would put general unsecured claims and retiree claims in the same class. In so doing, the UCC complains about the Oversight Board's "unwillingness to treat general unsecured claims in Class 55 as well as retiree benefit claims" and then proposes language that provides general unsecured claims to the exact same treatment of retiree claims. [Dkt. 17017 ¶¶ 152, 154]. And, in its recently filed sur-reply, the UCC continues to lament the treatment of general unsecured claims under the Plan. [Dkt. 17223 ¶¶ 2, 5-9]. In short, the UCC's classification argument continues to be a smoke screen for its true argument—an unfair discrimination argument, which should only be brought and considered in connection with plan confirmation.

Dated: July 12, 2021

| JENNER & BLOCK LLP | BENNAZAR, GARCÍA & MILIÁN, C.S.P. |
|---|---|
| By: | By: |
| */s/ Robert Gordon* | */s/ A.J. Bennazar-Zequeira* |
| Robert Gordon (admitted *pro hac vice*) | A.J. Bennazar-Zequeira |
| Richard Levin (admitted *pro hac vice*) | Héctor M. Mayol Kauffmann |
| 919 Third Ave | Francisco del Castillo Orozco |
| New York, NY 10022-3908 | Edificio Union Plaza, |
| rgordon@jenner.com | 1701 Avenida Ponce de León #416 |
| rlevin@jenner.com | Hato Rey, San Juan |
| 212-891-1600 (telephone) | Puerto Rico 00918 |
| 212-891-1699 (facsimile) | ajb@bennazar.org |

|  |  |
|---|---|
| Catherine Steege (admitted *pro hac vice*)<br>Melissa Root (admitted *pro hac vice*)<br>Landon Raiford (admitted *pro hac vice*)<br>353 N. Clark Street<br>Chicago, IL 60654<br>csteege@jenner.com<br>mroot@jenner.com<br>lraiford@jenner.com<br>312-222-9350 (telephone) | hector.mayol@bennazar.com<br>787-754-9191 (telephone)<br>787-764-3101 (facsimile)<br><br>*Counsel for The Official Committee of Retired Employees of Puerto Rico* |

9