# **EXHIBIT P**

CERTIFIED COFINA FISCAL PLAN, CERTIFIED COFINA BUDGET, AND LATEST
AUDITED FINANCIAL STATEMENTS FOR COFINA



# FISCAL PLAN

## FOR COFINA

AS CERTIFIED BY THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO | May 27, 2021

DISCLAIMER

The Puerto Rico Fiscal Agency and Financial Advisory Authority (AAFAF), the Puerto Rico Sales Tax Financing Corporation (COFINA), the Government of Puerto Rico, its instrumentalities and agencies (collectively, the Government), and each of their respective officers, directors, employees, agents, attorneys, advisors, members, partners or affiliates (collectively, with AAFAF, COFINA and the Government, the Parties) make no representation or warranty, express or implied, to any third party with respect to the information contained herein and all Parties expressly disclaim any such representations or warranties. The Government has had to rely upon preliminary information and unaudited financials for 2018, 2019 and 2020.

The Parties do not owe or accept any duty or responsibility to any reader or recipient of this presentation, whether in contract or tort, and shall not be liable for any loss, damage (including without limitation consequential damages or lost profits) or expense of whatsoever nature of such third party that may be caused by, or alleged to be caused by, the use of this presentation or that is otherwise consequent upon the gaining of access to this document by such third party. The Parties do not undertake any duty to update the information contained herein.

This document does not constitute an audit conducted in accordance with generally accepted auditing standards, an examination of internal controls or other attestation or review services in accordance with standards established by the American Institute of Certified Public Accountants (CPA) or any other organization. Accordingly, the Parties do not express an opinion or any other form of assurance on the financial statements or any financial or other information or the internal controls of the Government and the information contained herein.

Any statements and assumptions contained in this document, whether forward-looking or historical, are not guarantees of future performance and involve certain risks, uncertainties, estimates, and other assumptions made in this document. The economic and financial condition of the Government are affected by various legal, financial, social, public health, economic, environmental, governmental, and political factors. These factors are very complex, may vary from one fiscal year to the next and are frequently the result of actions taken or not taken, not only by the Government, but also by the Financial Oversight and Management Board for Puerto Rico and other third-party entities such as the United States federal government. Examples of these factors include, but are not limited to:

– The effect of the Coronavirus Disease 2019 (COVID-19) on the health and well-being of the people of Puerto Rico.

– The short-term economic effects of COVID-19 on the global economy and the economies of the United States and Puerto Rico as they relate to Puerto Rico's tax revenue and budget.

– The longer-term economic ramifications of behavioral changes caused by COVID-19 (i.e., reduced travel, increased work from home, reduced activity in large gathering places, etc.).

– The amount of federal government aid provided to U.S. states and territories (including Puerto Rico) and the efficacy and speed of disbursement of such aid.

– The need to shift resources to create a more resilient structure to prevent or mitigate future pandemics.

– Any future actions taken or not taken by the United States federal government related to Medicaid.

– The amount and timing of receipt of any distributions from the Federal Emergency Management Agency (FEMA), U.S. Department of Housing and Urban Development (HUD)'s Community Development Block Grant-Disaster Recovery (CDBG-DR) Program and private insurance companies to repair damage caused by Hurricanes Irma and Maria and recent earthquakes in Puerto Rico.

– The amount and timing of receipt of any additional amounts appropriated by the United States federal government to address the funding gap described herein.

– The timeline for completion of the work being done by the Puerto Rico Electric Power Authority (PREPA) to repair PREPA's electric system and infrastructure and the impact of any future developments or issues related to PREPA's electric system and infrastructure on Puerto Rico's economic growth.

– The impact of the measures described herein on outmigration; and

– The timing and impact of the resolution of Puerto Rico's Title III cases and related litigation.

These factors are inherently unpredictable, complex, and largely novel. Accordingly, the assumptions and outputs based on these factors may materially change. Future events and actual results may differ materially from any estimates, projections, or statements contained herein. Nothing in this document should be considered an express or implied commitment to do or take, or to refrain from taking, any action by AAFAF, the Government, or public corporation within the Government, or an admission of any fact or future event. Nothing in this document shall be considered a solicitation, recommendation, or advice to any person to participate, pursue or support a particular course of action or transaction, to purchase or sell any security, or to make any investment decision.

By receiving this document, the recipient shall be deemed to have acknowledged and agreed to the terms of these limitations. This document may contain capitalized terms that are not defined herein or may contain terms that are discussed in other documents or that are commonly understood. You should make no assumptions about the meaning of capitalized terms that are not defined, and you should refer questions to COFINA or AAFAF should clarification be required.  Unless otherwise identified, all governmental departments and agencies refer to those of the Government of Puerto Rico.

**List of Acronyms and Key
Terms**

| | |
|---|---|
| AAFAF | Puerto Rico Fiscal Agency and Financial Advisory Authority (Spanish acronym) |
| BNYM | Bank of New York Mellon |
| COFINA | Puerto Rico Sales Tax Financing Corporation (Spanish acronym) |
| COVID-19 | Coronavirus Disease 2019 |
| CW | Commonwealth of Puerto Rico |
| DSA | Debt Sustainability Analysis |
| FAM | Municipal Administration Fund (Spanish Acronym) |
| FEMA | Federal Emergency Management Agency |
| FY | Fiscal-Year |
| MADS | Maximum Annual Debt Service |
| PSA | Plan Support Agreement |
| POA | Plan of Adjustment |
| PREPA | Puerto Rico Electric Power Authority |
| PROMESA | Puerto Rico Oversight, Management and Economic Stability Act |
| PSTBA | Pledged Sales Tax Base Amount |
| RSA | Restructuring Support Agreement |
| SUT | Sales and Use Tax |

3

# Table of Contents

*Executive Summary* ................................................................................................................ *5*

*Chapter 1. Sales & use tax description* .................................................................................. *6*

*Chapter 2. Plan of adjustment and the New COFINA Bonds* ................................................ *9*

    2.1    Filing and confirmation of the Plan of Adjustment ................................................... 9

    2.2    Effectiveness of the Plan of Adjustment and Issuance of the COFINA Bonds ............... 9

*Chapter 3.   COVID-19* ............................................................................................... *9*

*Chapter 4. Financial Projections* ....................................................................................... *11*

    4.1    COFINA Revenues ................................................................................................. 11

    4.2    Sales & Use Tax forecast ...................................................................................... 12

    4.3    COFINA Recurring Operating Expenses ................................................................. 13

*Chapter 5. Long-term projection and debt sustainability analysis (DSA)* ......................... *14*

*Appendix A: Summary of COFINA Bonds* ............................................................................. *18*

# EXECUTIVE SUMMARY

The Puerto Rico Sales Tax Financing Corporation (the "Corporation") is a public corporation and instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth") created pursuant to Act No. 91-2006, as amended (the "Puerto Rico Sales Tax Financing Corporation Act")[1]. It is an independent and separate legal entity from the Commonwealth and any other government entity, and its business and affairs are governed by and under the direction of its Board of Directors. The Corporation is also known by an acronym of its Spanish name — "COFINA." The Corporation is in compliance with its continuing disclosure obligations under that certain Continuing Disclosure Agreement dated as of February 12, 2019 (the "New CDA"). The New CDA was entered into by the Corporation in connection with the issuance of the COFINA Bonds pursuant to the Plan of Adjustment referenced below.

In February 2019, the Corporation completed a debt restructuring pursuant to a certain Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation [Case No. 13-3283, Docket No. 5053] (the "Plan of Adjustment"), confirmed under Title III of the Puerto Rico Oversight, Management and Economic Stability Act, Public Law 114 – 187 ("PROMESA"). The Plan of Adjustment reduced COFINA's bond debt from approximately $17.6 billion to $12 billion through a bond exchange and resolved the allocation of Sales and Use Tax (SUT) revenues between the Commonwealth and COFINA.

In connection with the consummation and effectiveness of the Plan of Adjustment, the Corporation issued its Puerto Rico Sales Tax Financing Corporation Restructured Sales Tax Bonds, Series 2019 Bonds (the "COFINA Bonds") under a certain Master Trust Indenture, dated as of February 12, 2019, as supplemented and amended (the "Indenture"). On August 1, 2019, (i) COFINA exchanged $3,108,661,000 aggregate principal amount of Series 2019A-2 Bonds and $45,570,000 aggregate principal amount of Series 2019B-2 Bonds and (ii) the amendments to the First Supplemental Indenture and the Second Supplemental Indenture became effective. **Exhibit 1** summarizes COFINA's economic obligations and restructured governance, including fiscal and operational independence, as summarized below:

---

[1] On November 15, 2018, Act No. 241-2018 was enacted to amend and restate Act No. 91-2006, as amended, to establish the legal framework for the restructuring of the Corporation's previously issued and outstanding bonds.  To this end, Act No. 241-2018, among other things, (i) modified the Corporation's corporate governance structure, (ii) authorized the issuance of the COFINA Bonds (as defined herein), (iii) confirmed the Corporation's ownership of the COFINA Revenues (as defined herein), (iv) created a statutory lien to secure the COFINA Bonds, and (v) enacted the covenants to secure further the repayment of the COFINA Bonds.

EXHIBIT 1: COFINA'S ECONOMIC OBLIGATIONS AND RESTRUCTURED GOVERNANCE

| Independent Corporate Governance Structure | ▪ COFINA is recognized as an independent and separate legal entity from the Commonwealth and any other instrumentality of the Commonwealth.<br>▪ COFINA shall be operated separately, and its business and affairs shall be governed by or under the direction of its independent Board of Directors. |
|---|---|
| Ownership of COFINA Revenues | ▪ Ownership interests and rights to the COFINA Revenues have been irrevocably transferred to COFINA.<br>▪ COFINA is the sole and exclusive owner of the COFINA Revenues.<br>▪ Absolute transfer of all legal and equitable right, title and interest, and not a pledge or other financing. |
| Establishment of Ownership Interest at Collection | ▪ Persons designated as withholding agents for purposes of the imposition and collection of the Sales Tax shall be deemed to collect any portion of the Sales Taxes in which COFINA has an ownership interest on behalf of the Corporation. |
| Statutory Lien | ▪ The COFINA Bonds are secured by a statutory first lien on all of the COFINA's right, title and interest in and to the Pledged Taxes (5.5% of Sales and Use Tax), including any moneys, income, revenues, accounts, contract rights or general intangibles derived therefrom, in favor of the Trustee for the benefit of the bondholders. |
| Settles Constitutional Issue on Available Resources/Revenues | ▪ The COFINA Revenues do not constitute "available resources" or "available revenues" of the Commonwealth as used in Section 8 of Article VI of the Puerto Rico Constitution or as otherwise used in the Puerto Rico Constitution. |

The COFINA Fiscal Plan incorporates the macroeconomic forecast utilized in the 2021 Commonwealth Certified Fiscal Plan. The use of the macroeconomic forecast of the Commonwealth Certified Fiscal Plan in the COFINA Fiscal Plan is made in order to comply with Section 201 of PROMESA and does not imply any representation by COFINA as to the assumptions included in said forecast.

# Chapter 1. SALES & USE TAX DESCRIPTION

The Commonwealth's SUT was originally imposed in 2006 pursuant to Act 117-2006. The SUT in turn replaced the prior 5.0% (effective 6.6%) general excise tax on imported goods and the 3.6% general excise tax on goods manufactured in Puerto Rico.

The SUT is imposed on the sale, use, consumption, and storage of taxable items, which include tangible personal property, taxable services, admission rights and certain other types of transactions covering separable and identifiable taxable items which are sold for a single price, subject to certain exceptions and limitations. Certain items, such as fuel, crude oil and petroleum products and vehicles, however, remain subject to the excise tax previously applicable to such items, and are not subject to the Commonwealth SUT.

The Commonwealth SUT had an original tax rate of 5.5%. Act 117-2006 also authorized each municipal government to impose a SUT of 1.5% (the "Municipal SUT"), which generally has the same tax base, exemptions (except for unprocessed foods) and limitations as those provided for the Commonwealth SUT. Act 18-2014 lowered the portion of the Municipal SUT allocated to the municipalities to 1.0%, increased the Commonwealth SUT to 6% and allocated the 0.5% increase in the Commonwealth SUT to the Municipal Administration Fund ("FAM"), a fund created to provide funds to finance the debt, special projects, and to meet budgeted expenses of the municipalities. The Municipal SUT is not owned or pledged to COFINA.

In 2013, Act 40-2013 eliminated various exemptions to the Commonwealth SUT, which broadened its base, Act 42-2013 broadened the scope under which a merchant may be deemed engaged in the business of selling taxable items in Puerto Rico via the Internet, and Act 46-2013 required the

declaration and payment of the Commonwealth SUT on imported goods at the time of their entry into Puerto Rico.

On May 29, 2015, the Commonwealth enacted Act 72-2015 that, among other things, (i) increased the total Commonwealth SUT rate to 10.5% by adding a 4.5% surtax to the existing SUT, (ii) eliminated several exemptions and (iii) imposed a new special Commonwealth SUT of 4% on services rendered between businesses and designated professional services, which were previously exempt.

**Exhibit 2** shows Commonwealth SUT collections since inception of the tax to FY2020. **Exhibit 3** shows the allocation of the SUT between FAM, COFINA, and the Government. **Exhibit 4** shows actual collections of SUT over the past 10 years by each SUT component as reported by Treasury.

EXHIBIT 2: SALES AND USE TAX HISTORICAL COLLECTIONS[2] (10.5%)

Historical SUT Revenues, $M



---

[2] SUT historical collections source:  COFINA Annual Financial Information and Operating Data Report Fiscal Year 2020 via Treasury

EXHIBIT 3: ALLOCATION OF SALES AND USE TAX

Allocation of Sales and Use Tax[1]



FAM
Government
COFINA[2]

0.50%

4.50%

5.50%

10.50%

Puerto Rico Sales and Use Tax

[1] $3.2 million of SUT revenues flow to Puerto Rico Motion Picture Arts, Sciences and Industry Development Corporation (CINE) every year.
[2] Up to an annual cap of $420 million in Fiscal Year 2019, which grows by 4.0% each year to a maximum of $993 million.

EXHIBIT 4: ACTUAL SALES AND USE TAX COLLECTIONS ($M)

| Year Ended June 30, | Pledged Sales Taxes[1] (5.5%) | FAM SUT[1] (0.5%) | SUT Surcharge (4.5%) | Total Base SUT and SUT Surcharge (10.5%) | Special SUT | Additional Collections[2] | Total Sales and Use Tax |
|---|---|---|---|---|---|---|---|
| 2010 | 1,094 | | | 1,094 | | | 1,094 |
| 2011 | 1,107 | | | 1,107 | | | 1,107 |
| 2012 | 1,138 | | | 1,138 | | | 1,138 |
| 2013 | 1,162 | | | 1,162 | | | 1,162 |
| 2014 | 1,242 | | | 1,242 | | | 1,242 |
| 2015 | 1,299 | 118 | | 1,417 | | | 1,417 |
| 2016 | 1,197 | 109 | 979 | 2,285 | 92 | | 2,377 |
| 2017 | 1,248 | 113 | 1,021 | 2,382 | 166 | | 2,548 |
| 2018 | 1,225 | 111 | 1,003 | 2,339 | 183 | | 2,522 |
| 2019 | 1,361 | 124 | 1,113 | 2,598 | 208 | | 2,806 |
| 2020 | 1,048 | 96 | 816 | 1,960 | 170 | 49 | 2,180 |
| **Total** | **$13,121** | **$670** | **$4,932** | **$18,724** | **$820** | **$49** | **$19,593** |

[1] Beginning on fiscal year 2016, excludes collections from the Special SUT. Such collections are reported in certain Treasury reports as part of the Base SUT, but they are reported herein separately as they are not part of the Pledged Sales Taxes. Therefore, amounts shown herein may vary from those previously reported by Treasury.

[2] Additional collections include 1% Municipal SUT, Film Fund, and Penalties, Interest and Others.

Source: Department of Treasury of the Commonwealth of Puerto Rico ("Treasury")

# Chapter 2. PLAN OF ADJUSTMENT AND THE NEW COFINA BONDS

## 2.1 Filing and confirmation of the Plan of Adjustment

Consistent with the terms outlined in the Plan Support Agreement (PSA), on October 19, 2018, COFINA filed the Plan of Adjustment with the Title III Court. On February 5, 2019, pursuant to the Confirmation Order, the Plan of Adjustment was confirmed in its entirety.

Pursuant to PROMESA, and in accordance with the Plan of Adjustment, the Settlement Order, the Findings and Conclusions and the Confirmation Order, the Title III Court made conclusive determinations that the new COFINA Bonds are legal, valid, binding and enforceable obligations of COFINA benefiting from protections, each of which is legal, valid, binding and enforceable against COFINA, the Commonwealth, and other persons and entities, as applicable, under Puerto Rico law and federal law.

Refer to the COFINA Plan of Adjustment, docket #5048, for the order and judgment confirming the third amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation. For any subsequent events or press releases, refer to the COFINA investor relations website: https://cofina.pr.gov/cofina-pr/i6094.

## 2.2 Effectiveness of the Plan of Adjustment and Issuance of the COFINA Bonds

On February 12, 2019, COFINA and the Oversight Board notified the Title III Court, creditors and parties of interest that the transaction contemplated in the Plan of Adjustment was consummated and that COFINA had issued approximately $12 billion of new sales tax revenue bonds (the "COFINA Bonds"). A summary of the new COFINA Bonds as of the Effective Date is set forth in **Appendix A, Exhibit 1**.

On March 2, 2021, the United States Court of Appeals for the First Circuit affirmed Judge Laura Taylor Swain's order confirming the COFINA Plan of Adjustment. As decided in a similar case on February 8, 2021, the Court again concluded that efforts to revoke the COFINA Plan of Adjustment were barred under the doctrine of equitable mootness because the plan had already been implemented.

Appellants have the right to file a petition for rehearing in the First Circuit and/or a petition for certiorari in the U.S Supreme Court. On April 2, 2021, a certain group of Junior Bondholders filed a petition for a writ of certiorari seeking Supreme Court review of the U.S Court of Appeals for the First Circuit's decision.

# Chapter 3. COVID-19

Since the outbreak of Coronavirus Disease 2019 ("COVID-19"), an upper respiratory tract illness first identified in Wuhan, China, it has spread throughout the globe, including the U.S. and Puerto Rico. COVID-19 was declared a pandemic by the World Health Organization and resulted in a declaration of a national emergency by the Federal Government on March 13, 2020.

The COVID-19 pandemic brought Puerto Rico—and the rest of the world—to a standstill. The effects have been far reaching and devastating – both as a humanitarian crisis and economically. Overnight, the economy shut down except for the most critical activities as the Government took prudent steps to mitigate the risk of a catastrophic public health crisis. The Government has issued executive orders in response to COVID-19 to address, among other things, the homeless, school and private sector closures, acquisition of goods and services, use of the National Guard, prompt diagnosis of COVID-19, special leave for public employees affected by COVID-19, the creation of a task force to advise Governor Pierluisi, and the state of emergency due to the pandemic. Taken together, these measures intended to protect the physical, mental, and economic health of the people of Puerto Rico, while preserving the social fabric of the Island's diverse communities.

Unemployment skyrocketed as many businesses were forced to close. In response, both the Federal Government and Puerto Rico Government launched major relief packages to contain and mitigate the spread of the pandemic, support residents and frontline workers, and help the Island's economy rebound. COVID relief/stimulus to Puerto Rico from the different federal and local initiatives is estimated at $45 billion, including the recently approved America Rescue Plan Act. Key relief programs include stimulus checks, increased unemployment insurance, small business support (PPP and EIDL loans), state and local aid, COVID-19 testing and education funding.

Many initial projections indicated that the economic shock due to COVID-19 would be worse than that of the Great Recession. Fortunately, the combined economic impact of the federal and local fiscal stimulus measures and the gradual reopening of the national and local economies mitigated the negative shock.

The pathway to economic recovery remains highly dependent on the overall public health response, including the rate at which the population is vaccinated and the Federal Government's ability to continue to provide economic support for those whose livelihoods are at risk. But more transmissible and potentially deadlier variants of COVID-19 are continuing to develop and spread, just as the rollout of vaccines had raised hopes for a broad-based economic recovery.

These new variants pose two threats to economic recovery. First, restrictions on activity could be extended or further tightened to counteract the higher risk of infection until a sufficient percentage of the population have been vaccinated, pushing some economies back into recession. Second, one or more of the new variants may become resistant to the immunity conferred by existing vaccines and past infections, potentially triggering a new cycle of restrictions and a new round of vaccinations. Much better infrastructure is needed to mitigate the ongoing COVID-19 threat, including: (i) more widespread genomic surveillance for dangerous variants; (ii) the capacity to quickly update and administer vaccines to the entire population; and (iii) widely available rapid testing to contain outbreaks.

### 3.1.1 Impact of COVID-19 on the Corporation

As was previously announced, on October 19, 2021, The Bank of New York Mellon ("BNYM"), as Trustee for the COFINA Bonds, had received SUT totaling $454,472,448, which equals the amount of the COFINA Revenues for fiscal year 2021. Consistent with the Plan of Adjustment, upon BNYM's receipt of the COFINA Revenues for fiscal year 2021, the Government is entitled to receive all collections from the Pledged Sales Taxes until the end of fiscal year 2021 (June 30, 2021). As a result, the above-described temporary measures have not had any effect on the Corporation's receipt of SUT collections for fiscal year 2021. On July 1st, 2021, BNYM will begin to receive collections from the Pledged Sales Taxes until it receives all COFINA Revenues for fiscal year 2022, which amount to $472,651,346

Because of the evolving nature of the COVID-19 pandemic and the federal and local responses thereto, the Puerto Rico Sales Tax Financing Corporation cannot predict the extent or duration of the outbreak or what impact it may have, if any, on the receipt of SUT collections for fiscal year 2022. While the effects

of COVID-19 may be temporary, we cannot predict the change in the behavior of businesses and people and how those changes may impact the global, national and local economies, including the collection of SUT.

# Chapter 4. FINANCIAL PROJECTIONS

## 4.1  COFINA Revenues

COFINA Revenues are made up of the COFINA Pledged Taxes and all rights thereto, including the right to receive the COFINA Pledged Taxes pursuant to the First Dollars Funding, in an amount up to 53.65% of the Pledged Sales Tax Base Amount ("PSTBA") in any given fiscal year until the COFINA Bonds and COFINA Parity Bonds have been paid or satisfied in full in accordance with their terms. The PSTBA represents the annual dollar amount determined for each fiscal year of the Commonwealth in accordance with Section 3 of Act No. 91-2006 of the Commonwealth, as amended. COFINA Pledged Taxes represent the present and future revenues and collections generated by the portion of the Sales Tax that corresponds to a tax rate of 5.5%. COFINA revenues for the next 40 years are as follows:

EXHIBIT 5: COFINA Revenues

| Fiscal Year | COFINA Revenues | Fiscal Year | COFINA Revenues |
|---|---|---|---|
| 2019 | $420,185,325 | 2039 | $920,677,791 |
| 2020 | 436,992,738 | 2040 | 957,504,902 |
| 2021 | 454,472,448 | 2041 | 992,525,000 |
| 2022 | 472,651,346 | 2042 | 992,525,000 |
| 2023 | 491,557,399 | 2043 | 992,525,000 |
| 2024 | 511,219,696 | 2044 | 992,525,000 |
| 2025 | 531,668,483 | 2045 | 992,525,000 |
| 2026 | 552,935,223 | 2046 | 992,525,000 |
| 2027 | 575,052,631 | 2047 | 992,525,000 |
| 2028 | 598,054,737 | 2048 | 992,525,000 |
| 2029 | 621,976,926 | 2049 | 992,525,000 |
| 2030 | 646,856,003 | 2050 | 992,525,000 |
| 2031 | 672,730,244 | 2051 | 992,525,000 |
| 2032 | 699,639,453 | 2052 | 992,525,000 |
| 2033 | 727,625,032 | 2053 | 992,525,000 |
| 2034 | 756,730,033 | 2054 | 992,525,000 |
| 2035 | 786,999,234 | 2055 | 992,525,000 |
| 2036 | 818,479,203 | 2056 | 992,525,000 |
| 2037 | 851,218,371 | 2057 | 992,525,000 |
| 2038 | 885,267,106 | 2058 | 992,525,000 |

Between the time SUT is deposited into the COFINA account and when COFINA pays its debt service, the amount deposited within the COFINA account accrues interest which is used to fund operating expenses. During fiscal year 2020 and 2021 through March, the Corporation received $2.95M and $0.05M, respectively, in interest earnings. Interest is assumed to accrue at the latest reported DIRXX monthly yield of 0.01% in fiscal year 2021 and 2022, 0.63% (the average of the DIRXX monthly yield

and the DIRXX 3-year annual average return) in fiscal year 2023, and the DIRXX 3-year average annual return of 1.25% for the rest of the forecast period[3].

In addition to these funds, there are amounts on deposit in the SUT clearing and aggregation account, which is jointly owned by COFINA and the Commonwealth, that are allocated and distributed to COFINA and the Commonwealth upon receipt of taxpayers' returns.  Accrued interest on this account with respect to the portion corresponding to COFINA is allocated and distributed to COFINA. Interest on this account is assumed to accrue at a lower interest rate than at the COFINA account (approximately 1.0% lower than the DIRXX 3-year average annual return) starting in fiscal year 2024. Interest is not assumed to accrue on this account for fiscal years 2021 – 2023 given the forecasted lower interest rate environment.

In the event that there is insufficient investment interest earned on the SUT deposits to pay for all the Corporation's operating expenditures, prior year surplus will be used to cover the shortfall.

## 4.2   Sales & Use Tax forecast

SUT outperformed relative to GNP in FY2018 and FY2019, likely boosted by the increased economic activity resulting from the post-disaster reconstruction process (including through the replacement of lost inventory), as well as higher SUT compliance by those larger firms less impacted by the storm. The 2021 Fiscal Plan incorporates this incremental tax collection as disaster recovery continues in future years.

SUT Tax collections during fiscal year 2020 were affected by several factors. In October 2019, the SUT rate over prepared food sales was reduced from 11.5% to 7%, through the elimination of the SUT Surcharge on those items. At the end of December 2019 and the first weeks of January 2020, Puerto Rico experienced a series of earthquakes which led to an emergency declaration by the Governor and administrative determinations by Treasury that provided certain temporary exemptions over the SUT imposed on prepared foods and certain other drink and confectioned food products that were in effect until February 29, 2020. In March 2020, the outbreak and onset of the COVID-19 led to the issuance of several executive orders implementing significant social and economic restrictions and administrative determinations by Treasury that provided certain Sales and Use Tax exemptions and provided for the deferral of certain SUT payments until June 30, 2020.

Near-term SUT collections consider performance year to date in FY2021 as well as the impacts of COVID-19 related adjustments and continued disaster recovery spend. The long-term sales and use forecast is aligned with year-over-year changes in Puerto Rico nominal GNP. On average, sales and use taxes from FY2022-FY2039 reflect 3.9% of nominal GNP, which is slightly above the 4-year historical average of 3.6%. This difference relative to historical percentages is consistent with developing trends, given that the hurricanes resulted in a supply side shift in the informal/formal economies. Smaller retailers, which tend to be less tax compliant, are more negatively impacted by the storms, and therefore are more prone to closure as a result of the of the catastrophe. This pushes consumers to the formal economy where retailers are more SUT compliant.

Additionally, the first seven months of fiscal year 2021 reflect an increase in Sales and Use Tax collections partly attributable to the gradual loosening of the restrictions on economic activity imposed to address the COVID-19 pandemic, the expiration of the various temporary exemptions and deferrals and the impact of the different federal programs put in place to mitigate the negative effects of COVID-19.

**Exhibit 6** shows the SUT forecast from the May 27, 2020 Certified Fiscal Plan compared to the Government Fiscal Plan presented on March 26, 2021. Please refer to the Government Fiscal Plan presented on March 26, 2021 for a detailed discussion on the macroeconomic, demographic, and SUT forecasts.

---

[3] Mar 31, 2021 report: https://im.bnymellon.com/us/en/documents/compliancedocs/factsheet/monthly/0761.pdf

EXHIBIT 6: PROJECTED SUT FORECAST COMPARISON ($M)



## 4.3  COFINA Recurring Operating Expenses

Under the direction of its independent Board of Directors, COFINA has established a new and effective operational structure that enables the corporation to carry out its statutory mandate and contractual obligations of receiving and remitting COFINA Revenues to the Bond Trustee pursuant to its Plan of Adjustment. However, as of today COFINA like other public corporations, is still leveraging AFAAF's ERP as part of the share service MOU. Operating expenses are composed of the following categories:

1. Board of Director Fees
2. Operating Expense
3. Professional Services
4. Trustee Fees
5. Financial Services Implementation
6. Other miscellaneous operating expenses

As of the Effective Date, COFINA received $15 million, available for its operating expenses. An additional $7.25 million was remaining in COFINA accounts prior to closing. The cumulative balance for FY2020 per the Fiscal Year 2020 Audited Financials was $21.72 million and the current balance as of March 31st, 2021 was $20.2 million.

In addition to the funds described above, operating expenses will be covered by investment earnings derived from interest income generated by funds deposited in the COFINA bond trustee accounts held for the benefit of COFINA at BNYM prior to distribution. Pursuant to Section 5.10 of the Master trust Indenture, on 11/30/20, at the request of the Secretary of the Treasury, $8.48M was transferred from the Trustee to the Secretary of the Treasury.

EXHIBIT 7: COFINA PROJECTED DEFICIT/SURPLUS[4]



1 Figures represent debt service post August 2019 Tax Exchange
2 Transfer of excess COFINA Revenue, which is the difference between the COFINA Revenues and Debt Service.
3 To keep surplus neutral, prior year surplus available will be used.

# Chapter 5. LONG-TERM PROJECTION AND DEBT SUSTAINABILITY ANALYSIS (DSA)

The DSA provides a framework to assess COFINA's long-term debt capacity and a framework for future market access.

Sales tax bonds are evaluated on the basis of taxable base and pledge, the legal structure of the proposed financing and financial metrics of the revenue pledge.

EXHIBIT 8: CREDIT STRENGTH OF SUT

| Credit Strengths of SUT | |
|---|---|
| 1 | Puerto Rico's economy is reasonably diverse. |
| 2 | SUT is very broad with minimal exceptions. |
| 3 | Senior bonds benefit from a closed lien. |
| 4 | First (annual/quarterly) dollar flow of funds is stronger than usual monthly equal collection for various tax backed credits. |
| 5 | Strong revenue trend and minimal revenue volatility. |

---

[4] Pursuant to the Indenture, Amounts deposited in the Remainder Fund shall be free and clear of the Statutory Lien and shall promptly be paid to the Commonwealth of Puerto Rico.

EXHIBIT 9: CHALLENGES OF THE SUT CREDIT

| | Challenges of the SUT Credit |
|---|---|
| 1 | Puerto Rico's per capita income and median household income are significantly below national medians. |
| 2 | Impact of long-term demographic and economic projections on discretionary expenses and personal consumption. |

The Settlement Order grants COFINA an ownership interest in 53.65% of the PSTBA, which will be used to fund debt service payments on the new COFINA Bonds that were issued pursuant to the Plan of Adjustment. COFINA also receives "first dollars" collected from the Pledged SUT until it has received an amount equal to 53.65% of the PSTBA (unless certain conditions are satisfied on a quarterly basis after 2024). **Exhibit 10** illustrates the debt service on the COFINA Bonds in conjunction with the 53.65% of the PSTBA that COFINA bondholders will be entitled to per the terms of the Plan of Adjustment. The chart illustrates that debt service fits within the 53.65% of the PSTBA throughout the forecast period and final maturity of the bonds. It also includes the FY2021 COFINA Fiscal Plan projected SUT compared to the FY19 and FY20 SUT figures assuming no growth and compared to FY20 SUT figures assuming 1.0% growth.

EXHIBIT 10: DEBT SERVICE COVERAGE AND SUT REVENUES ($M)



Using FY20 SUT collections as the base[5], **Exhibit 11** shows debt service coverage under three scenarios: Case 1 assuming the 2021 Fiscal Plan projected Pledged SUT, Case 2 showing no growth in SUT and Case 3 showing 1% growth rate of SUT. Under a no growth scenario, COFINA's MADS coverage ranges from 2.44x in 2021 to 1.10x in 2058.

---

[5] Fiscal Year 2020 revenues reflect actual collections excluding B2B revenues as COFINA has no rights to the B2B revenues.

As the COFINA indenture states, COFINA may issue Subordinated Lien Bonds if it meets coverage requirement of: 1)  Projected Pledged Sales Taxes equal or exceed one and one-half times (1.5x), in any succeeding Fiscal Year, the annual aggregate debt service due on the Bonds and Subordinated Lien Bonds to remain outstanding after the issuance of such Subordinated Lien Bonds (including the Subordinated Lien Bonds to be issued), 2) the preceding Fiscal Year's collections from the Pledged Sales Taxes is equal to or greater than one and one-tenth times (1.10x) coverage of the maximum annual aggregate debt service due in any succeeding Fiscal Year on all Bonds and Subordinated Lien Bonds to remain outstanding after the issuance of such Subordinated Lien Bonds (including the Subordinated Lien Bonds to be issued).

## EXHIBIT 11: DEBT SERVICE COVERAGE

| Case 1: Projected FP SUT | | Case 2: No SUT Growth | | Case 3: Assume 1% Growth | |
|---|---|---|---|---|---|
| FY20 Pledged SUT | 1,092.6 | FY20 Pledged SUT | 1,092.6 | FY20 Pledged SUT | 1,092.6 |
| Growth Rate | FP | Growth Rate | 0.000% | Growth Rate | 1.000% |

($ millions)

| | FY20 Pledged SUT | Debt Service[1] | Coverage | | FY20 Pledged SUT | Debt Service[1] | Coverage | | FY20 Pledged SUT | Debt Service[1] | Coverage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | 1,469.4 | 447.5 | 3.28x | 2021 | 1,092.6 | 447.5 | 2.44x | 2021 | 1,103.5 | 447.5 | 2.47x |
| 2022 | 1,425.5 | 465.7 | 3.06x | 2022 | 1,092.6 | 465.7 | 2.35x | 2022 | 1,114.6 | 465.7 | 2.39x |
| 2023 | 1,425.0 | 484.6 | 2.94x | 2023 | 1,092.6 | 484.6 | 2.25x | 2023 | 1,125.7 | 484.6 | 2.32x |
| 2024 | 1,433.1 | 504.3 | 2.84x | 2024 | 1,092.6 | 504.3 | 2.17x | 2024 | 1,137.0 | 504.3 | 2.25x |
| 2025 | 1,464.4 | 524.7 | 2.79x | 2025 | 1,092.6 | 524.7 | 2.08x | 2025 | 1,148.3 | 524.7 | 2.19x |
| 2026 | 1,496.7 | 546.0 | 2.74x | 2026 | 1,092.6 | 546.0 | 2.00x | 2026 | 1,159.8 | 546.0 | 2.12x |
| 2027 | 1,543.7 | 568.1 | 2.72x | 2027 | 1,092.6 | 568.1 | 1.92x | 2027 | 1,171.4 | 568.1 | 2.06x |
| 2028 | 1,579.9 | 591.1 | 2.67x | 2028 | 1,092.6 | 591.1 | 1.85x | 2028 | 1,183.1 | 591.1 | 2.00x |
| 2029 | 1,603.2 | 615.0 | 2.61x | 2029 | 1,092.6 | 615.0 | 1.78x | 2029 | 1,195.0 | 615.0 | 1.94x |
| 2030 | 1,623.2 | 639.9 | 2.54x | 2030 | 1,092.6 | 639.9 | 1.71x | 2030 | 1,206.9 | 639.9 | 1.89x |
| 2031 | 1,644.8 | 665.8 | 2.47x | 2031 | 1,092.6 | 665.8 | 1.64x | 2031 | 1,219.0 | 665.8 | 1.83x |
| 2032 | 1,651.9 | 692.7 | 2.38x | 2032 | 1,092.6 | 692.7 | 1.58x | 2032 | 1,231.2 | 692.7 | 1.78x |
| 2033 | 1,662.1 | 720.7 | 2.31x | 2033 | 1,092.6 | 720.7 | 1.52x | 2033 | 1,243.5 | 720.7 | 1.73x |
| 2034 | 1,670.8 | 749.8 | 2.23x | 2034 | 1,092.6 | 749.8 | 1.46x | 2034 | 1,255.9 | 749.8 | 1.68x |
| 2035 | 1,679.5 | 780.1 | 2.15x | 2035 | 1,092.6 | 780.1 | 1.40x | 2035 | 1,268.5 | 780.1 | 1.63x |
| 2036 | 1,674.6 | 812.2 | 2.06x | 2036 | 1,092.6 | 812.2 | 1.35x | 2036 | 1,281.2 | 812.2 | 1.58x |
| 2037 | 1,683.1 | 845.6 | 1.99x | 2037 | 1,092.6 | 845.6 | 1.29x | 2037 | 1,294.0 | 845.6 | 1.53x |
| 2038 | 1,698.7 | 880.5 | 1.93x | 2038 | 1,092.6 | 880.5 | 1.24x | 2038 | 1,306.9 | 880.5 | 1.48x |
| 2039 | 1,718.0 | 916.8 | 1.87x | 2039 | 1,092.6 | 916.8 | 1.19x | 2039 | 1,320.0 | 916.8 | 1.44x |
| 2040 | 1,739.3 | 954.6 | 1.82x | 2040 | 1,092.6 | 954.6 | 1.14x | 2040 | 1,333.2 | 954.6 | 1.40x |
| 2041 | 1,762.7 | 990.8 | 1.78x | 2041 | 1,092.6 | 990.8 | 1.10x | 2041 | 1,346.5 | 990.8 | 1.36x |
| 2042 | 1,786.5 | 990.8 | 1.80x | 2042 | 1,092.6 | 990.8 | 1.10x | 2042 | 1,360.0 | 990.8 | 1.37x |
| 2043 | 1,811.3 | 990.8 | 1.83x | 2043 | 1,092.6 | 990.8 | 1.10x | 2043 | 1,373.6 | 990.8 | 1.39x |
| 2044 | 1,836.6 | 990.8 | 1.85x | 2044 | 1,092.6 | 990.8 | 1.10x | 2044 | 1,387.3 | 990.8 | 1.40x |
| 2045 | 1,862.9 | 990.8 | 1.88x | 2045 | 1,092.6 | 990.8 | 1.10x | 2045 | 1,401.2 | 990.8 | 1.41x |
| 2046 | 1,890.0 | 990.8 | 1.91x | 2046 | 1,092.6 | 990.8 | 1.10x | 2046 | 1,415.2 | 990.8 | 1.43x |
| 2047 | 1,918.4 | 990.8 | 1.94x | 2047 | 1,092.6 | 990.8 | 1.10x | 2047 | 1,429.4 | 990.8 | 1.44x |
| 2048 | 1,947.5 | 990.8 | 1.97x | 2048 | 1,092.6 | 990.8 | 1.10x | 2048 | 1,443.7 | 990.8 | 1.46x |
| 2049 | 1,977.7 | 990.8 | 2.00x | 2049 | 1,092.6 | 990.8 | 1.10x | 2049 | 1,458.1 | 990.8 | 1.47x |
| 2050 | 2,009.4 | 990.8 | 2.03x | 2050 | 1,092.6 | 990.8 | 1.10x | 2050 | 1,472.7 | 990.8 | 1.49x |
| 2051 | 2,042.2 | 990.8 | 2.06x | 2051 | 1,092.6 | 990.8 | 1.10x | 2051 | 1,487.4 | 990.8 | 1.50x |
| 2052 | 2,075.4 | 990.8 | 2.09x | 2052 | 1,092.6 | 990.8 | 1.10x | 2052 | 1,502.3 | 990.8 | 1.52x |
| 2053 | 2,109.2 | 990.8 | 2.13x | 2053 | 1,092.6 | 990.8 | 1.10x | 2053 | 1,517.3 | 990.8 | 1.53x |
| 2054 | 2,143.5 | 990.9 | 2.16x | 2054 | 1,092.6 | 990.9 | 1.10x | 2054 | 1,532.5 | 990.9 | 1.55x |
| 2055 | 2,178.4 | 991.2 | 2.20x | 2055 | 1,092.6 | 991.2 | 1.10x | 2055 | 1,547.8 | 991.2 | 1.56x |
| 2056 | 2,213.9 | 991.5 | 2.23x | 2056 | 1,092.6 | 991.5 | 1.10x | 2056 | 1,563.3 | 991.5 | 1.58x |
| 2057 | 2,249.9 | 991.8 | 2.27x | 2057 | 1,092.6 | 991.8 | 1.10x | 2057 | 1,578.9 | 991.8 | 1.59x |
| 2058 | 2,286.5 | 992.2 | 2.30x | 2058 | 1,092.6 | 992.2 | 1.10x | 2058 | 1,594.7 | 992.2 | 1.61x |

1 Figures represent debt service post August 2019 Tax Exchange

### Sensitivity Analysis

Using FY20 SUT actual collections as the base, we look at the constant annual rate of reduction in sales tax collections such that debt service is still fully covered by the 5.5% SUT pledge. Based on the debt service schedule provided, sales tax would need to decrease by more than 0.14% a year for SUT collections to be insufficient to cover debt service obligations. A sensitivity analysis is provided in **Exhibit 12.**

EXHIBIT 12: THE COFINA DEBT SENSITIVITY ANALYSIS



- 2028 P&I payments can withstand a 6.91% annual reduction in Pledged SUT
- 2038 P&I payments can withstand a 0.96% annual reduction in Pledged SUT
- 2048 P&I payments can withstand a 0.20% annual reduction in Pledged SUT
- 2058 P&I payments can withstand a 0.14% annual reduction in Pledged SUT

17

# APPENDIX A: SUMMARY OF COFINA BONDS

EXHIBIT 1: Summary of the COFINA Bonds as of the Effective Date

| Series | Tax Status | CUSIP | Maturity Value | Initial Value | Interest Rate | Coupon/Accretion Rate | Maturity | Initial Price |
|--------|-----------|-------|----------------|---------------|---------------|----------------------|----------|---------------|
| 2019A-1 | TE | 74529JPU3 | 370,347,000.00 | 370,347,000.00 | 4.500% | 4.500% | 7/1/2034 | 100.000 |
| 2019A-1 | TE | 74529JPV1 | 187,553,000.00 | 187,553,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019A-1 | TE | 74529JPW9 | 1,375,772,000.00 | 1,375,772,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019A-1 | TE | 74529JPX7 | 3,479,051,000.00 | 3,479,051,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019A-2 | TX | 74529JQY4 | 865,919,000.00 | 865,919,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019A-2 | TX | 74529JPY5 | 1,905,085,000.00 | 1,905,085,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019A-2 | TX | 74529JPZ2 | 57,021,000.00 | 57,021,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019A-2 | TX | 74529JQA6 | 763,784,000.00 | 763,784,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019A-1 | TE | 74529JQB4 | 211,244,000.00 | 164,709,059.24 | 0.000% | 4.250% | 7/1/2024 | 77.971 |
| 2019A-1 | TE | 74529JQC2 | 357,783,000.00 | 243,231,616.89 | 0.000% | 4.375% | 7/1/2027 | 67.983 |
| 2019A-1 | TE | 74529JQD0 | 348,709,000.00 | 217,406,113.14 | 0.000% | 4.375% | 7/1/2029 | 62.346 |
| 2019A-1 | TE | 74529JQE8 | 449,395,000.00 | 252,923,999.95 | 0.000% | 4.500% | 7/1/2031 | 56.281 |
| 2019A-1 | TE | 74529JQF5 | 505,783,000.00 | 260,417,551.04 | 0.000% | 4.500% | 7/1/2033 | 51.488 |
| 2019A-1 | TE | 74529JQG3 | 4,813,682,000.00 | 1,094,968,244.54 | 0.000% | 5.375% | 7/1/2046 | 22.747 |
| 2019A-1 | TE | 74529JQH1 | 3,921,460,000.00 | 631,551,133.00 | 0.000% | 5.625% | 7/1/2051 | 16.105 |
| 2019B-1 | TE | 74529JQJ7 | 4,743,000.00 | 4,743,000.00 | 4.500% | 4.500% | 7/1/2034 | 100.000 |
| 2019B-1 | TE | 74529JQK4 | 2,402,000.00 | 2,402,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019B-1 | TE | 74529JQL2 | 17,619,000.00 | 17,619,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019B-1 | TE | 74529JQM0 | 44,554,000.00 | 44,554,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019B-2 | TX | 74529JQN8 | 35,156,000.00 | 35,156,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019B-2 | TX | 74529JQP3 | 723,000.00 | 723,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019B-2 | TX | 74529JQQ1 | 9,691,000.00 | 9,691,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019B-1 | TE | 74529JQR9 | 2,706,000.00 | 2,109,895.26 | 0.000% | 4.250% | 7/1/2024 | 77.971 |
| 2019B-1 | TE | 74529JQS7 | 4,582,000.00 | 3,114,981.06 | 0.000% | 4.375% | 7/1/2027 | 67.983 |
| 2019B-1 | TE | 74529JQT5 | 4,466,000.00 | 2,784,372.36 | 0.000% | 4.375% | 7/1/2029 | 62.346 |
| 2019B-1 | TE | 74529JQU2 | 5,755,000.00 | 3,238,971.55 | 0.000% | 4.500% | 7/1/2031 | 56.281 |
| 2019B-1 | TE | 74529JQV0 | 6,477,000.00 | 3,334,877.76 | 0.000% | 4.500% | 7/1/2033 | 51.488 |
| 2019B-1 | TE | 74529JQW8 | 61,648,000.00 | 14,023,070.56 | 0.000% | 5.375% | 7/1/2046 | 22.747 |
| 2019B-1 | TE | 74529JQX6 | 50,220,000.00 | 8,087,931.00 | 0.000% | 5.625% | 7/1/2051 | 16.105 |
| **2019A** | | | **19,612,588,000** | **11,869,739,718** | | | | |
| **2019B** | | | **250,742,000** | **151,582,100** | | | | |
| **Total** | | | **19,863,330,000** | **12,021,321,817** | | | | |

18

EXHIBIT 2: Summary of the COFINA Bonds as of August 1,2019 (Post-Tax Exchange)

| Series | Tax Status | CUSIP | Maturity Value | Initial Value | Interest Rate | Coupon/Accretion Rate | Maturity | Initial Price |
|---|---|---|---|---|---|---|---|---|
| 2019-1 | TE | 74529JPU3 | 370,347,000.00 | 370,347,000.00 | 4.500% | 4.500% | 7/1/2034 | 100.000 |
| 2019-1 | TE | 74529JPV1 | 187,553,000.00 | 187,553,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019-1 | TE | 74529JPW9 | 1,375,772,000.00 | 1,375,772,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019-1 | TE | 74529JPX7 | 3,479,051,000.00 | 3,479,051,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019-2 | TX | 74529JQY4 | 409,357,000.00 | 409,357,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019-2 | TX | 74529JPY5 | 53,291,000.00 | 53,291,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019-2 | TX | 74529JPZ2 | 827,000.00 | 827,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019-2 | TX | 74529JQA6 | 19,673,000.00 | 19,673,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019-2 | TE | 74529JRJ6 | 456,562,000.00 | 456,562,000.00 | 4.329% | 4.329% | 7/1/2040 | 100.000 |
| 2019-2 | TE | 74529JRH0 | 1,851,794,000.00 | 1,851,794,000.00 | 4.329% | 4.329% | 7/1/2040 | 100.000 |
| 2019-2 | TE | 74529JRK3 | 56,194,000.00 | 56,194,000.00 | 4.536% | 4.536% | 7/1/2053 | 100.000 |
| 2019-2 | TE | 74529JRL1 | 744,111,000.00 | 744,111,000.00 | 4.784% | 4.784% | 7/1/2058 | 100.000 |
| 2019A-1 | TE | 74529JQB4 | 211,244,000.00 | 164,709,059.24 | 0.000% | 4.250% | 7/1/2024 | 77.971 |
| 2019A-1 | TE | 74529JQC2 | 357,783,000.00 | 243,231,616.89 | 0.000% | 4.375% | 7/1/2027 | 67.983 |
| 2019A-1 | TE | 74529JQD0 | 348,709,000.00 | 217,406,113.14 | 0.000% | 4.375% | 7/1/2029 | 62.346 |
| 2019A-1 | TE | 74529JQE8 | 449,395,000.00 | 252,923,999.95 | 0.000% | 4.500% | 7/1/2031 | 56.281 |
| 2019A-1 | TE | 74529JQF5 | 505,783,000.00 | 260,417,551.04 | 0.000% | 4.500% | 7/1/2033 | 51.488 |
| 2019A-1 | TE | 74529JQG3 | 4,813,682,000.00 | 1,094,968,244.54 | 0.000% | 5.375% | 7/1/2046 | 22.747 |
| 2019A-1 | TE | 74529JQH1 | 3,921,460,000.00 | 631,551,133.00 | 0.000% | 5.625% | 7/1/2051 | 16.105 |
| 2019B-1 | TE | 74529JQJ7 | 4,743,000.00 | 4,743,000.00 | 4.500% | 4.500% | 7/1/2034 | 100.000 |
| 2019B-1 | TE | 74529JQK4 | 2,402,000.00 | 2,402,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019B-1 | TE | 74529JQL2 | 17,619,000.00 | 17,619,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019B-1 | TE | 74529JQM0 | 44,554,000.00 | 44,554,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019B-2 | TE | 74529JRM9 | 35,156,000.00 | 35,156,000.00 | 4.329% | 4.329% | 7/1/2040 | 100.000 |
| 2019B-2 | TE | 74529JRN7 | 723,000.00 | 723,000.00 | 4.536% | 4.536% | 7/1/2053 | 100.000 |
| 2019B-2 | TE | 74529JRP2 | 9,691,000.00 | 9,691,000.00 | 4.784% | 4.784% | 7/1/2058 | 100.000 |
| 2019B-1 | TE | 74529JQR9 | 2,706,000.00 | 2,109,895.26 | 0.000% | 4.250% | 7/1/2024 | 77.971 |
| 2019B-1 | TE | 74529JQS7 | 4,582,000.00 | 3,114,981.06 | 0.000% | 4.375% | 7/1/2027 | 67.983 |
| 2019B-1 | TE | 74529JQT5 | 4,466,000.00 | 2,784,372.36 | 0.000% | 4.375% | 7/1/2029 | 62.346 |
| 2019B-1 | TE | 74529JQU2 | 5,755,000.00 | 3,238,971.55 | 0.000% | 4.500% | 7/1/2031 | 56.281 |
| 2019B-1 | TE | 74529JQV0 | 6,477,000.00 | 3,334,877.76 | 0.000% | 4.500% | 7/1/2033 | 51.488 |
| 2019B-1 | TE | 74529JQW8 | 61,648,000.00 | 14,023,070.56 | 0.000% | 5.375% | 7/1/2046 | 22.747 |
| 2019B-1 | TE | 74529JQX6 | 50,220,000.00 | 8,087,931.00 | 0.000% | 5.625% | 7/1/2051 | 16.105 |
| **2019A** | | | **19,612,588,000** | **11,869,739,718** | - | - | | |
| **2019B** | | | **250,742,000** | **151,582,100** | - | - | | |
| **Total** | | | **19,863,330,000** | **12,021,321,817** | - | - | | |

THE GOVERNMENT OF PUERTO RICO

30 June 2021

**Puerto Rico Sales Tax Corporation Budget**

The amount of $1,400,000 is budgeted for the expenditures of Puerto Rico Sale Tax Corporation ("COFINA" by its Spanish acronym") herein for the fiscal year ending 30 June 2022.

[INTENTIONALLY LEFT BLANK]

**Section 1.-** The following amounts are authorized for the expenditures of COFINA set forth herein for the fiscal year ending 30 June 2022 ("FY2022"):

[INTENTIONALLY LEFT BLANK]

| 1 | **1. Puerto Rico Sales Tax Financing Corporation (COFINA)** | | | |
|---|---|---|---|---|
| 2 | A. | Payroll | | 166,000 |
| 3 | i | Salaries | 132,000 | |
| 4 | ii | Salaries for trust employees | - | |
| 5 | iii | Overtime | - | |
| 6 | iv | Christmas bonus | - | |
| 7 | v | Healthcare | - | |
| 8 | vi | Other benefits | 34,000 | |
| 9 | vii | Early retirement benefits & voluntary transition program | - | |
| 10 | viii | Other payroll | - | |
| 11 | B. | Payments to PayGo | | - |
| 12 | C. | Facilities and utility payments | | 18,000 |
| 13 | i | Payments to PREPA | - | |
| 14 | ii | Payments to PRASA | - | |
| 15 | iii | Payments to PBA | 18,000 | |
| 16 | iv | Other facility costs | - | |
| 17 | D. | Purchased services | | 362,400 |
| 18 | i | Shared services provided by AAFAF | 72,000 | |
| 19 | ii | Directors and officers insurance policy | 290,400 | |
| 20 | E. | Transportation | | 20,000 |
| 21 | F. | Professional Services | | 556,500 |
| 22 | i | Legal professional services | 100,000 | |
| 23 | ii | Finance and accounting professional services | 216,500 | |
| 24 | iii | Trustee fees - BNYM | 30,000 | |
| 25 | iv | Financial services implementation | 170,000 | |
| 26 | v | Website expense | 30,000 | |
| 27 | vi | Other professional services | 10,000 | |
| 28 | G. | Other operating expenses | | 277,100 |
| 29 | i | Board of director director fees | 225,000 | |
| 30 | ii | Other Ooperating expenses | 52,100 | |
| 31 | **Total Puerto Rico Sales Tax Financing Corporation (COFINA)** | | | **1,400,000** |

**Section 2.-** Any expenditure cannot exceed the lower of: (1) the amount authorized in this budget for the corresponding government entity and concept of expenditure or (2) the corresponding resources available to COFINA in FY2022.

**Section 3.-** All authorized budget amounts, for any prior fiscal year that are not authorized or certified in this joint resolution, are eliminated and no carry over of such funds may be used, except for the following which the Oversight Board redeploys as current appropriations, subject to Oversight Board adjustment at any time: (1) appropriations authorized in the fiscal year to carry out capital expenditures that have been encumbered, accounted for and kept on the books, but not exceeding two fiscal years on the books; (2) appropriations in the certified budget for equipment with procurement cycles that extend beyond the end of the fiscal year, which are encumbered on or before June 30, 2021 and (3) the portion of the appropriations authorized for the fiscal year that have been encumbered on or before June 30 of such fiscal year which shall be kept in the books for 60 days after the termination of that fiscal year and after those 60 days no amount shall be drawn against such portion for any reason. This restriction on the use of unused authorized prior fiscal year amounts shall not apply to orders by the United States district court with jurisdiction over all matters under Title III of PROMESA.

**Section 4.-** COFINA is authorized to use prior year surpluses to the extent investment earnings are not sufficient to fund the FY2022 operating budget appropriations.

**Section 5.-** The appropriations approved in this budget may only be reprogrammed with the prior approval of the Oversight Board. For the avoidance of doubt, this prohibition includes any reprogramming of any amount, line item or expenditure provided in this budget, regardless of whether it is an intra-agency reprogramming. Reprogramming, also known as reapportionments, may be made into spend concepts and/or objects not explicitly listed in the FY2022 certified budget resolution as long as such requests are submitted to and approved by the Oversight Board.

**Section 6.-** Pursuant to Section 203 of PROMESA, COFINA must submit to the Oversight Board, no later than 15 days after the last day of each quarter of FY2022, a budget to actual report, along with an explanation of relevant variances as provided in the certified Fiscal Plan. The Oversight Board may determine to provide COFINA a template to be used for such reporting, in which case any quarterly budget to actual reports submitted by COFINA must be submitted consistent with such reporting template.

**Section 7.-** In conjunction with the reports required by Section 6, a certification to the Oversight Board must be included stating that no authorized budget amount of any previous fiscal year (except for those covered by the exceptions mentioned herein) has been used to cover any expenditure unless authorized by the approval of the Oversight Board.

**Section 8.-** The Executive Director of COFINA shall be responsible for not spending or encumbering during FY2022 any amount that exceeds the authorized budget amounts. This prohibition applies to every budget amount authorized herein, including amounts for payroll and related costs. The Executive Director of COFINA shall also certify to the Oversight Board by September 30, 2021 that no amount was spent or encumbered that exceeded the authorized budget amount in the certified budget for fiscal year 2021.

**Section 9.-** The Oversight Board reserves the right to, in its sole discretion, issue a notice to the Governor, pursuant to PROMESA Section 202(a), setting forth a schedule for revising COFINA's budget.

**Section 10.-** The COFINA budget shall be adopted in English and Spanish. If in the interpretation or application of the budget a conflict arises between the English and Spanish texts, the English text shall govern.

**Section 11.-** The COFINA budget for FY2022 shall take effect on July 1, 2021.

**PUERTO RICO SALES TAX FINANCING CORPORATION**

(A Component Unit of the Commonwealth of Puerto Rico)

Basic Financial Statements and
Required Supplementary Information

June 30, 2020

(With Independent Auditors' Report Thereon)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

**Table of Contents**

|  | Page |
|---|---|
| Independent Auditors' Report | 1–2 |
| Management's Discussion and Analysis (Unaudited) | 3–9 |
| Basic Financial Statements: | |
|     Governmental Funds Balance Sheets and Statement of Net Position (Deficit) | 10 |
|     Reconciliation of Governmental Funds Balance Sheets to the Statement of Net Position (Deficit) | 11 |
|     Governmental Funds Statements of Revenues, Expenditures, and Changes in Fund Balance and Statement of Activities | 12 |
|     Reconciliation of the Governmental Funds Statements of Revenues, Expenditures, and Changes in Fund Balance to the Statement of Activities | 13 |
|     Notes to Basic Financial Statements | 14–44 |



KPMG LLP
American International Plaza
Suite 1100
250 Muñoz Rivera Avenue
San Juan, PR 00918-1819

## Independent Auditors' Report

The Board of Directors
Puerto Rico Sales Tax Financing Corporation:

We have audited the accompanying financial statements of the governmental activities, and each major fund, of the Puerto Rico Sales Tax Financing Corporation (the Corporation), a component unit of the Commonwealth of Puerto Rico, as of and for the year ended June 30, 2020, and the related notes to the financial statements, which collectively comprise the Corporation's basic financial statements as listed in the table of contents.

### Management's Responsibility for the Financial Statements

Management is responsible for the preparation and fair presentation of these financial statements in accordance with U.S. generally accepted accounting principles; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

### Auditors' Responsibility

Our responsibility is to express opinions on these financial statements based on our audit. We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditors' judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinions.

### Opinions

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of the governmental activities, and each major fund, of the Puerto Rico Sales Tax Financing Corporation, as of June 30, 2020, and the respective changes in financial position for the year then ended in accordance with U.S. generally accepted accounting principles.

KPMG LLP is a Delaware limited liability partnership and the U.S. member
firm of the KPMG network of independent member firms affiliated with
KPMG International Cooperative ("KPMG International"), a Swiss entity.



**Other Matter**

*Required Supplementary Information*

U.S. generally accepted accounting principles require that the management's discussion and analysis on pages 3–9 be presented to supplement the basic financial statements. Such information, although not a part of the basic financial statements, is required by the Governmental Accounting Standards Board who considers it to be an essential part of financial reporting for placing the basic financial statements in an appropriate operational, economic, or historical context. We have applied certain limited procedures to the required supplementary information in accordance with auditing standards generally accepted in the United States of America, which consisted of inquiries of management about the methods of preparing the information and comparing the information for consistency with management's responses to our inquiries, the basic financial statements, and other knowledge we obtained during our audit of the basic financial statements. We do not express an opinion or provide any assurance on the information because the limited procedures do not provide us with sufficient evidence to express an opinion or provide any assurance.

*KPMG LLP*

San Juan, Puerto Rico
September 23, 2020

Stamp No. E419678 of the Puerto Rico
Society of Certified Public Accountants
was affixed to the record copy of this report.

**PUERTO RICO SALES TAX FINANCING CORPORATION**

(A Component Unit of the Commonwealth of Puerto Rico)

Management's Discussion and Analysis (Unaudited)

June 30, 2020

As management of the Puerto Rico Sales Tax Financing Corporation (the Corporation or COFINA), we offer readers of the Corporation's financial statements this narrative overview and analysis of its financial performance during the fiscal year ended June 30, 2020. Please read it in conjunction with the Corporation's basic financial statements, including the notes thereto, which follow this section.

**Financial Highlights**

- The Corporation's net deficit in the statement of net position (deficit) increased to $4,961 million at June 30, 2020 from $4,367.9 million at June 30, 2019, an increase of approximately $593 million or 13.6%. The increase in net deficit is because the Corporation recorded interest on its bonds payable of approximately $585.2 million, of which $154.5 million represent the accretion of interest on capital appreciation bonds during year ended June 30, 2020. Also, during the year ended June 30, 2020, the Corporation accrued the amount of $8.5 million representing the remaining sales and use tax (SUT) collections deposited free and clear of the statutory lien and that will be paid to the Commonwealth of Puerto Rico in accordance with Section 5.10 of the Master Trust Indenture.

- COFINA Revenues increased to $437 million in fiscal year 2020 from $420 million in fiscal year 2019, an increase of approximately $16.8 million or 4%.  This increase was due to a statutory rate increase of 4% provided by Act No.91, as amended.  For further information, refer to Note 7 to the basic financial statements. The term "COFINA Revenues" refers to the first funds up to an amount equal to fifty-three and sixty-five one hundredths percent (53.65%) of the Fixed Income Amount for each fiscal year, which is a statutorily determined amount that increases by four percent each fiscal year.  See Note 10 to the basic financial statements.

- On August 1, 2019 certain taxable COFINA Bonds were exchanged for tax-exempt COFINA Bonds (i.e., interest on such bonds is excluded from gross income for federal tax purposes under Section 103 of the Internal Revenue Code of 1986 (the Tax Code)), through an invitation to exchange discussed in the Note 10 to the basic financial statements.  At that date, COFINA exchanged $3,108,661,000 aggregate principal amount of Series 2019A-2 Bonds and $45,570,000 aggregate principal amount of Series 2019B-2 Bonds. The term "COFINA Bonds" refers to the Corporation's Restructured Sales Tax Bonds, issued on February 12, 2019.

- On February 5, 2019, the Title III Court confirmed COFINA's Third Amended Plan of Adjustment (Plan). The Plan became effective in accordance with its terms of February 12, 2019, and COFINA emerged from Title III of the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA).  For additional information, refer to Note 4 to the basic financial statements.

**Overview of the Financial Statements**

These basic financial statements include management's discussion and analysis section, the independent auditor's report, and the basic financial statements of the Corporation. The basic financial statements also include notes that provide additional information that is essential to a full understanding of the data provided in the basic financial statements.

These basic financial statements and notes thereto should be read in conjunction with certain public documents concerning the Corporation. These basic financial statements provide a description for the readers' convenience and are qualified in their entirety by reference to the provisions of Act 241-2018 (discussed in Note 1 to the basic financial statements), and the COFINA Plan of Adjustment, the Findings and Conclusions, and the Confirmation Order (each as defined and discussed in Note 4 to the basic financial statements and below under the heading "COFINA's Emergence from Title III of PROMESA" in this section). The COFINA Plan of Adjustment, the

3

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Management's Discussion and Analysis (Unaudited)

June 30, 2020

Findings and Conclusions, and the Confirmation Order are available without charge at https://cases.primeclerk.com/puertorico/Home-DocketInfo. To the extent there is any discrepancy between the description contained herein and the terms set forth in each of these documents (the Operative Documents), the terms set forth in the Operative Documents control.

**Required Financial Statements**

- The statement of net position (deficit) provides information about the nature and amounts of resources (assets) and the Corporation's obligations (liabilities).

- Current year revenues and expenses are accounted for in the statement of activities. This statement measures the results of the Corporation's operations over the past year.

- Governmental funds' financial statements present the financial position and results of operations of the Corporation's two governmental fund types using a current financial resources measurement focus. The statement of revenues, expenditures, and changes in fund balance can be used to determine, for example, whether and how the Corporation met its debt service requirements for the year.

**Financial Analysis**

In evaluating the Corporation's finances, in addition to the Corporation's assets and liabilities, various non-financial factors, such as changes in economic conditions, and new or changed legislation should be considered. Due to the nature of the Corporation's activities, the Corporation's financial strength and ability to repay its obligations is solely dependent on the portion of the SUT collected and used to fund the debt service fund. The confirmation of the COFINA Plan of Adjustment ended the Corporation's restructuring under Title III of PROMESA and included sweeping changes to its financial situation.  It should be noted that certain issues and disputes related to the Corporation's Title III process remain ongoing (as discussed in Note 15 to the basic financial statements).

**PUERTO RICO SALES TAX FINANCING CORPORATION**

(A Component Unit of the Commonwealth of Puerto Rico)

Management's Discussion and Analysis (Unaudited)

June 30, 2020

**Government-Wide Financial Analysis**

The following is a condensed summary of the assets, liabilities and net position (deficit) for the Corporation at June 30, 2020 and 2019 (in thousands) presented from an accounting perspective:

|  | June 30 | | Change | |
|  | 2020 | 2019 | Amount | Percent |
|---|---|---|---|---|
| Assets: | | | | |
| Future sales and use tax receivable | $ 7,301,400 | $ 7,738,396 | $ (436,996) | (5.6)% |
| Other assets | 259,222 | 224,417 | 34,805 | 15.5% |
| Total assets | 7,560,622 | 7,962,813 | (402,191) | (5.1)% |
| Liabilities: | | | | |
| Accounts payable and other | 220,687 | 173,736 | 46,951 | 27.0% |
| Due to Commonwealth of Puerto Rico | 8,483 | - | 8,483 | 100.0% |
| Liabilities payable from restricted assets | 12,291,953 | 12,157,012 | 134,941 | 1.1% |
| Total liabilities | 12,521,123 | 12,330,748 | 190,375 | 1.5% |
| Net deficit – unrestricted | $ (4,960,501) | $ (4,367,935) | $ (592,566) | 13.6% |

Future SUT collections are recognized as revenue in the fund financial statements upon the Corporation's receipt of such collections but in the government-wide financial statements, these payments reduce the future sales and use tax receivable. The Corporation's receipt of COFINA Revenues for fiscal year 2020 of approximately $437 million reduced the balance of the future SUT receivable as of June 30, 2020. Also, at June 30, 2020, the Corporation had $12,292 million of bonds payable issued and outstanding, an increase of approximately $134.9 million (or 1.10%) from $12,157 million at June 30, 2019. The net increase of $134.9 million was the result of the accretion of interest on capital appreciation bonds of $154.5 million reduced by scheduled principal debt service payments of $19.6 million for fiscal year 2020.

The accounts payable increased because the Corporation incurred certain expenses related to the establishment of an independent operational structure that allows it to be fully independent from other governmental entities. Such expenses included the establishment of its board of directors, director and management compensation, directors' and officers' liability insurance, website subscription, among other expenses.

Finally, pursuant to Section 5.10 of the Master Trust Indenture, dated as of February 12, 2019 (the Master Trust Indenture), by and between the Corporation and The Bank of New York Mellon (BNYM), as trustee (the Trustee), remaining amounts deposited free and clear of the statutory lien in the Remainder Fund will be paid to the Commonwealth of Puerto Rico. As of June 30, 2020, the Corporation established an accrual due to the Commonwealth of $8,483,004 in accordance with this provision of the Master Trust Indenture.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Management's Discussion and Analysis (Unaudited)

June 30, 2020

Condensed revenues, expenses, and change in net position (deficit) for the year ended June 30, 2020 and 2019, are presented below (in thousands):

|  | | June 30 | | Change | |
| --- | ---: | ---: | ---: | ---: | ---: |
|  | | **2020** | **2019** | **Amount** | **Percent** |
| Expenses: | | | | | |
| Payments to the Commonwealth | | | | | |
| of Puerto Rico | $ | (8,483) $ | (49,455) $ | 40,972 | (82.8)% |
| Interest on long-term debt | | (585,181) | (1,161,892) | 576,711 | (49.6)% |
| Other | | (1,945) | (6,274) | 4,329 | (69.0)% |
| Total expenditures | | (595,609) | (1,217,621) | 622,012 | (51.1)% |
| Program revenues: | | | | | |
| Investment earnings | | 3,040 | 21,233 | (18,193) | (85.7)% |
| Other | | 3 | 775 | (772) | (99.6)% |
| Total revenues | | 3,043 | 22,008 | (18,965) | (86.2)% |
| Extraordinary item: | | | | | |
| Gain on PROMESA Title III transaction | | — | 6,260,592 | (6,260,592) | 100.0% |
| Total extraordinary item | | — | 6,260,592 | (6,260,592) | 100.0% |
| Change in net deficit | $ | (592,566) $ | 5,064,979 $ | (5,657,545) | (111.7)% |

The confirmed COFINA Plan of Adjustment signified the end of the Corporation's restructuring under the PROMESA Title III process and included sweeping changes to its financial situation. The completion of the Corporation's restructuring under the PROMESA Title III process, the settlement of the Commonwealth-COFINA Dispute, other settlements and the discharge of claims under the COFINA Plan of Adjustment resulted in an aggregated extraordinary gain of approximately $6.3 billion for fiscal year 2019.

On February 5, 2019, the Title III Court confirmed the COFINA Plan of Adjustment, which provided for the allocation of certain disputed funds interplead by BNYM from June 2017 to February 12, 2019. The amount of $49.4 million, which was paid from the interpleaded funds, was presented as payments to the Commonwealth of Puerto Rico in the 2019 statement of revenues, expenditures and changes in fund balance and statement of activities in the general fund.

Total interest expense on long-term debt for the fiscal year ended June 30, 2020 was approximately $585.2 million, a decrease of $576.7 million (or 49.6%) when compared to 2019. Upon confirmation of the COFINA Plan of Adjustment by the Title III Court, the pre-petition liabilities subject to the plan were discharged and the Corporation was bound to the new and lower debt repayment terms set forth in the COFINA Plan of Adjustment.

During the year ended June 30, 2019, the Corporation recorded approximately $4.2 million to cover any unfavorable outcome related to an administrative claim dispute with the Internal Revenue Service which seeks the return of post-petition direct subsidy payments with respect of certain pre-petition bonds (discussed in Note 11 to the basic financial statements). During the year ended June 30, 2020, management accrued interest of $538,737 that the IRS asserted would be owed if its claim is successful, increasing the contingent liability to $4,740,693.

Interest income on investments decreased in fiscal year 2020 when compared to the previous fiscal year due to the accumulation in 2019 of funds transferred by the Corporation to the Trustee for debt service which were

**PUERTO RICO SALES TAX FINANCING CORPORATION**

(A Component Unit of the Commonwealth of Puerto Rico)

Management's Discussion and Analysis (Unaudited)

June 30, 2020

invested until the Title III Court determined the timing and manner in which interpleaded funds were distributed on February 12, 2019.

**Governmental Fund Financial Analysis**

A fund is a fiscal and accounting entity with a self-balancing set of accounts that the Corporation uses to keep track of specific sources of funding and spending for a particular purpose. Governmental fund financial statements provide more detailed information about the Corporation's most significant funds and not the Corporation as a whole. The Corporation maintains two governmental funds which are considered major funds: the general fund and the debt service fund. Information is presented separately in the governmental funds balance sheets and in the governmental funds statements of revenues, expenditures, and changes in fund balances. Governmental funds are used to account for essentially the same functions reported as governmental activities in the government-wide financial statements. Governmental fund financial statements focus on current inflows and outflows of expendable resources, as well as on balances of expendable resources available at the end of the fiscal year. This information may be useful in evaluating the Corporation's current financing requirements.

Because the focus of governmental funds is narrower than that of the government-wide financial statements, it is useful to compare the information presented for governmental funds with similar information presented for governmental activities in the government-wide financial statements. By doing so, readers may better understand the long-term impact of financial decisions related to the Corporation's governmental activities. Both the governmental fund balance sheet and the governmental fund statement of revenues, expenditures and changes in fund balances (deficit) provide a reconciliation to facilitate this comparison between governmental funds and governmental activities.

The Corporation's governmental funds reported a total fund balance as of June 30, 2020 and 2019, of $249.8 million and $223.6 million, respectively.  At the Plan of Adjustment's effective date, the Corporation's general fund received $15 million, available for its operating expenses, plus additional funds remaining prior to the closing date that was held at the Corporation.  The current balance as of June 30, 2020 was approximately $21.7 million, of which $15 million is currently on deposit in an operational account at a Puerto Rico banking institution (the Operations Account), and the remainder is on deposit in the Corporation's general account. In addition to these funds, operating expenses will be covered by investment earnings derived from interest income generated by funds deposited in the Corporation's bond trustee accounts held for the benefit of the Corporation prior to distribution.  These amounts will be transferred to the Corporation's Operations Account, subject to the annual operating account cap amount of $15 million. Pursuant to the Master Trust Indenture, remaining amounts deposited in the Remainder Fund free and clear of the statutory lien will be paid to the Commonwealth of Puerto Rico.  A subsequent payment of approximately $8.5 million to the Commonwealth was accrued as of June 30, 2020.  The debt service fund is funded with the receipts of sales and use tax and interest thereon.  For the years ended June 30, 2020 and 2019, the receipts of sales and use tax amounted to approximately $437.0 million and $420.2 million, respectively.

**Debt Administration**

As of June 30, 2020, the Corporation's outstanding bonds balance was approximately $12,292 million compared to $12,157 million as of June 30, 2019. The net increase of $134.9 million was the result of the accretion in the discount on capital appreciation bonds of $154.5 million reduced by scheduled principal debt service payments of $19.6 million for fiscal year 2020.

**PUERTO RICO SALES TAX FINANCING CORPORATION**

(A Component Unit of the Commonwealth of Puerto Rico)

Management's Discussion and Analysis (Unaudited)

June 30, 2020

The New COFINA Bonds (as used herein, the term "New COFINA Bonds" will have the same meaning as the term "COFINA Bonds" in the COFINA Plan of Adjustment) include: (i) current interest bonds (CIB) entitled to cash interest and (ii) capital appreciation bonds (CAB), for which interest is added to principal and paid at maturity. The Corporation has made its scheduled payments on its newly issued fixed-rate sales tax revenue bonds since February 12, 2019.

In June 2019, COFINA invited holders of the Series 2019A-2 Bonds and the Series 2019B-2 Bonds (the Invited Bonds) to exchange those bonds for bonds of the Corporation the interest on which is excluded from gross income for federal tax purposes under Section 103 of the Tax Code with a yield that is no more than twenty-five (25) basis points lower than the Invited Bond so exchanged (the Converted Bonds) and to consent to certain amendments of the First Supplemental Indenture and the Second Supplemental Indenture.  On August 1, 2019, (i) COFINA exchanged $3,108,661,000 aggregate principal amount of Series 2019A-2 Bonds and $45,570,000 aggregate principal amount of Series 2019B-2 Bonds and (ii) the amendments to the First Supplemental Indenture and the Second Supplemental Indenture became effective.

The newly issued bonds are payable on various dates through fiscal year 2058. The New COFINA Bonds do not have a debt service reserve fund nor rights of acceleration.

**COFINA's Credit Ratings**

During previous years, COFINA was subject to certain credit downgrades by the major credit rating agencies and currently, the outstanding bonds of the Corporation are not rated.  With respect to the Plan of Adjustment's ratings covenant on the New COFINA Bonds, the Corporation has determined that it is not in the best interests of the Corporation to obtain a rating on the bonds at this time. In making this determination, the Corporation considered, among other things, the current instability in the macroeconomic environment, the pending restructuring of the Commonwealth's public debt under Title III of PROMESA and ongoing litigation.

**COFINA's Emergence from Title III of PROMESA**

The Corporation completed a judicially supervised restructuring proceeding under Title III of PROMESA.  On February 5, 2019, the Title III Court issued the Confirmation Order, which confirmed the Corporation's Title III Plan of Adjustment (the COFINA Plan of Adjustment, as defined in Note 4 to the basic financial statements) and thereby quieted the Corporation's title to the COFINA Revenues, definitively resolving as a legal matter all questions of title to those revenues and the Corporation's sole and exclusive ownership of them.  The Confirmation Order is full, final, complete, conclusive, and binding regarding the Corporation's ownership of the COFINA Revenues and shall not be subject to collateral attack or other challenge in any court or other forum, except as permitted under applicable law.  The Confirmation Order is the subject of various appeals before the United States Court of Appeals for the First Circuit that the Corporation believes are non- meritorious. Management's position is that ownership of the COFINA Revenues is a purely legal question, and nothing in the accounting and reporting policies is intended to modify, displace, amend or alter any finding of fact or conclusion of law as to any issue determined in any of the Operative Documents (as defined previously).

On February 12, 2019, the Corporation emerged from its case under Title III of PROMESA. On that date, the Corporation consummated the COFINA Plan of Adjustment.  Consummation of the COFINA Plan of Adjustment, together with the enactment of Act No. 241 of 2018 (Act 241-2018), provided for the restructuring of COFINA's bonds, quieted the Corporation's title to the COFINA Revenues, definitively resolving as a legal matter all questions of title to those revenues and the Corporation's sole and exclusive ownership of them, and established a board of directors with financial and operating independence from the Commonwealth and corporate governance consistent with such independence.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Management's Discussion and Analysis (Unaudited)

June 30, 2020

In February 2019, COFINA's existing senior and subordinated bondholders received new senior lien bonds with a face value of approximately $12 billion on account of their approximately $18 billion in claims, which are secured by a statutory lien on the COFINA Revenues. The Corporation has made its scheduled payments on its newly issued fixed-rate sales tax revenue bonds since February 12, 2019.

For more information on PROMESA and the Corporation's Title III proceedings, please refer to Notes 3 and 4 of the basic financial statements.  The COFINA Plan of Adjustment can be found at: www.cofina.pr.gov.

**Currently Known Facts and Events**

**Coronavirus Pandemic**

The outbreak of a new strain of coronavirus named SARS-CoV-2 and the disease caused thereby ("COVID-19"), an upper respiratory tract illness first identified in Wuhan, China, has spread to numerous countries across the globe, including the U.S. and Puerto Rico.  COVID-19 has been characterized as a pandemic by the World Health Organization and resulted in a declaration of a national emergency by the Federal Government on March 13, 2020.

As a result of the COVID-19 pandemic, the Federal Government and the Government of Puerto Rico have implemented numerous measures to address the pandemic.  For example, on March 15, 2020, the Governor issued Executive Order 2020-20 to implement the closure of governmental and private sector operations in order to combat the effects of COVID-19 in Puerto Rico.  Although the Governor has modified this order several times, the government and private sector continue to be affected by partial closures, limitations on group activities, limited operating hours and limitations on the number of consumers that may patronize an establishment.

As a result of the COVID-19 emergency, the Secretary of Treasury has also issued several related administrative determinations.  Most of these determinations provided or currently provide SUT exemptions on certain items, including items necessary to prevent the spread of COVID-19 and certain foods.

As the Corporation had previously announced, on November 21, 2019, the Trustee had received sales and use taxes totaling $436,992,738, which equals the amount of the COFINA Revenues for fiscal year 2020. Consistent with the Plan of Adjustment, upon BNYM's receipt of the COFINA Revenues for fiscal year 2020, the Government is entitled to receive all collections from the Pledged Sales Taxes until the end of fiscal year 2020 (June 30, 2020). As a result, the above-described temporary measures did not have any effect on the Corporation's receipt of SUT collections for fiscal year 2020.

**Request for Information**

This financial report is designed to provide those interested with a general overview of the Corporation's finances and to enhance the Corporation's accountability for the funds it receives. Questions about this report or requests for additional information should be addressed to Puerto Rico Sales Tax Financing Corporation, PO Box 42001, San Juan, Puerto Rico, 00940-2001.  Additional information can also be found at: www.cofina.pr.gov.

**PUERTO RICO SALES TAX FINANCING CORPORATION**

(A Component Unit of the Commonwealth of Puerto Rico)

Governmental Funds Balance Sheets and Statement of Net Position (Deficit)

June 30, 2020

| | Governmental Funds Balance Sheets | | | | |
| --- | --- | --- | --- | --- | --- |
| | General Fund | Debt Service Fund | Total | Adjustments | Statement of Net Position (Deficit) |
| Assets: | | | | | |
| Deposits placed with commercial bank | $ 21,720,030 | $ - | $ 21,720,030 | $ - | $ 21,720,030 |
| Cash held by trustee | - | 1,009,364 | 1,009,364 | - | 1,009,364 |
| Future sales and use tax receivable | - | 7,301,399,666 | 7,301,399,666 | - | 7,301,399,666 |
| Prepaid expenses and other assets | 149,230 | - | 149,230 | - | 149,230 |
| Investments | - | 236,343,882 | 236,343,882 | - | 236,343,882 |
| Total assets | 21,869,260 | 7,538,752,912 | 7,560,622,172 | - | 7,560,622,172 |
| Liabilities: | | | | | |
| Accounts payable and accrued liabilities | 918,517 | - | 918,517 | 4,740,693 | 5,659,210 |
| Accrued interest payable | - | - | - | 215,028,009 | 215,028,009 |
| Due to Commonwealth of Puerto Rico | 8,483,004 | - | 8,483,004 | - | 8,483,004 |
| Unearned revenue - sales and use tax | - | 7,301,399,666 | 7,301,399,666 | (7,301,399,666) | - |
| Bonds payable | | | | | |
| Due within one year | - | - | - | 17,479,550 | 17,479,550 |
| Due in more than one year | - | - | - | 12,274,473,793 | 12,274,473,793 |
| Total liabilities | 9,401,521 | 7,301,399,666 | 7,310,801,187 | 5,210,322,379 | 12,521,123,566 |
| Fund balance/net position (deficit): | | | | | |
| Fund balance: | | | | | |
| Restricted | - | 237,353,246 | 237,353,246 | (237,353,246) | - |
| Unassigned | 12,467,739 | - | 12,467,739 | (12,467,739) | - |
| Total fund balance | 12,467,739 | 237,353,246 | 249,820,985 | (249,820,985) | - |
| Total liabilities and fund balance | $ 21,869,260 | $ 7,538,752,912 | $ 7,560,622,172 | | |
| Net deficit: | | | | | |
| Unrestricted | | | | (4,960,501,394) | (4,960,501,394) |
| Net deficit | | | | $ (4,960,501,394) | $ (4,960,501,394) |

See accompanying notes to basic financial statements.

10

**PUERTO RICO SALES TAX FINANCING CORPORATION**

(A Component Unit of the Commonwealth of Puerto Rico)

Reconciliation of Governmental Funds Balance Sheets to the
Statement of Net Position (Deficit)

June 30, 2020

| | | |
|---|---|---:|
| Total fund balances - governmental funds: | $ | 249,820,985 |
| Amounts reported for governmental activities in the statement of net deficit are different because: | | |
| Accrued interest payable is not due and payable in the current period, and, therefore, is not reported in the fund financial statements | | (215,028,009) |
| Contingent liabilities are not due and payable in the current period, and, therefore, are not reported in the fund financial statements | | (4,740,693) |
| Bonds and notes payable are not due and payable in the current period, and, therefore, are not reported in the fund financial statements | | (12,291,953,343) |
| Future sales and use tax receivable does not constitute current financial resources, and, therefore, is unearned in the fund financial statements | | 7,301,399,666 |
| Net deficit of governmental activities | $ | (4,960,501,394) |

See accompanying notes to basic financial statements.

11

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Governmental Funds Statements of Revenues,
Expenditures, and Changes in Fund Balance and Statement of Activities

June 30, 2020

| | Statements of Governmental Funds Revenue, Expenditures, and Changes in Fund Balances | | | | |
| --- | --- | --- | --- | --- | --- |
| | General Fund | Debt Service Fund | Total | Adjustments | Statement of Activities |
| Expenditures/expenses: | | | | | |
| General government: | | | | | |
| Payments to the Commonwealth of Puerto Rico | $ 8,483,004 | $ - | $ 8,483,004 | $ - | $ 8,483,004 |
| Other | 1,406,202 | - | 1,406,202 | 538,737 | 1,944,939 |
| Debt service: | | | | | |
| Principal | - | 19,606,660 | 19,606,660 | (19,606,660) | - |
| Interest | - | 384,330,290 | 384,330,290 | 200,850,746 | 585,181,036 |
| Total expenditures/expenses | 9,889,206 | 403,936,950 | 413,826,156 | 181,782,823 | 595,608,979 |
| Program revenues: | | | | | |
| Collections of sales and use tax | - | 436,996,352 | 436,996,352 | (436,996,352) | - |
| Investment earnings | 94,250 | 2,944,709 | 3,038,959 | - | 3,038,959 |
| Other income | 3,471 | - | 3,471 | - | 3,471 |
| Total revenues | 97,721 | 439,941,061 | 440,038,782 | (436,996,352) | 3,042,430 |
| Net program revenue (expenses) | (9,791,485) | 36,004,111 | 26,212,626 | (618,779,175) | (592,566,549) |
| Other financing sources (uses): | | | | | |
| Transfers (out) in | 833,500 | (833,500) | - | - | - |
| Total other financing sources (uses) | 833,500 | (833,500) | - | - | - |
| (Deficiency) excess of revenues and other financing sources over expenditures and other financing uses | (8,957,985) | 35,170,611 | 26,212,626 | (26,212,626) | - |
| Change in net deficit | - | - | - | (592,566,549) | (592,566,549) |
| Fund balance/net deficit: | | | | | |
| At beginning of year | 21,425,724 | 202,182,635 | 223,608,359 | (4,591,543,204) | (4,367,934,845) |
| At end of year | $ 12,467,739 | $ 237,353,246 | $ 249,820,985 | $ (5,210,322,379) | $ (4,960,501,394) |

See accompanying notes to basic financial statements.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Reconciliation of Governmental Funds Statements of Revenues, Expenditures, and Changes in
Fund Balance and Statement of Activities

June 30, 2020

| | | |
|---|---|---:|
| Net changes in fund balances - total governmental funds: | $ | 26,212,626 |
| Amounts reported for governmental activities in the statement of activities are different because: | | |
| Some expenses reported in the statement of activities do not require the use of current financial resources and, therefore, are not reported as expenditures in the governmental funds | | (538,737) |
| Repayment of long-term debt is reported as an expenditure in the governmental funds, but the repayment reduces long-term liabilities in the statement of net position (deficit) | | 19,606,660 |
| Net change in interest payable reported in the statement of activities does not require the use of current financial resources and, therefore, is not reported as expenditure in the governmental funds | | (46,303,170) |
| Accretion on capital appreciation bonds does not require the use of current financial resources and, therefore, is not reported as expenditure in the governmental funds | | (154,547,576) |
| Collections of sales and use tax provide current financial resources to governmental funds; however, represent repayments of the future sales and use tax receivable in the statement of activities | | (436,996,352) |
| Change in net deficit of governmental activities | $ | (592,566,549) |

13

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

**(1)  Reporting Entity**

The Puerto Rico Sales Tax Financing Corporation (the Corporation or COFINA) is a public corporation and instrumentality of the Commonwealth of Puerto Rico (Commonwealth), constituting a corporate and political entity independent and separate from the Commonwealth. The Corporation was created by the Legislative Assembly under Act No. 91 of May 13, 2006; as amended by Act No. 291, approved on December 26, 2006; Act No. 56, approved on July 6, 2007; Act No. 1, approved on January 14, 2009; Act No. 7, approved on March 9, 2009; Act No. 18, approved on May 22, 2009; Act No.133, approved July 12, 2012; Act No. 116, approved October 10, 2013; Act No. 101, approved July 1, 2015; Act No. 84, approved July 22, 2016; and Act No. 241, approved November 15, 2018. Act No. 241 of 2018, which amended and restated Act No. 91 of 2006, established the legal framework for the restructuring of COFINA's issued and outstanding bonds by, among other things, authorizing the issuance of New COFINA Bonds necessary to complete the transactions contemplated under the COFINA Plan of Adjustment (collectively, Act No. 91).

The Corporation is an independent and separate legal entity from the Government of Puerto Rico and any other government entity of the Commonwealth. The Corporation is operated independently, and its business and affairs are governed by or under the direction of its board of directors. The Corporation was originally created for the purpose of financing the payment, retirement or defeasance of certain debt obligations of the Commonwealth outstanding as of June 30, 2006 (the 2006 Appropriation Debt). During 2009, the Legislative Assembly expanded the purposes of the Corporation to assist in funding operational expenses and other uses of the Commonwealth from 2009 through 2012 to the extent included in the annual budget of the Commonwealth in addition to the 2006 Appropriation Debt.

For more information on the sales and use tax (SUT) and COFINA's ownership rights over certain portions of the SUT, see Note 7 to the basic financial statements.

**(2)  Summary of Significant Accounting Policies**

The preparation of basic financial statements in conformity with U.S. generally accepted accounting principles (U.S. GAAP) requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements, and the reported amounts of changes in net position (deficit) during the reporting period. Actual results could differ from those estimates.

The accounting and reporting policies of the Corporation conform to accounting principles generally accepted in the United States of America, as applicable to governmental entities. The Corporation follows Governmental Accounting Standards Board (GASB) under the hierarchy established by Statement No. 55, *The Hierarchy of Generally Accepted Accounting Principles for State and Local Governments*, in the preparation of its basic financial statements.

Following is a description of the Corporation's most significant accounting policies:

*(a)  Basis of Presentation*

The financial activities of the Corporation consist only of governmental activities. For its reporting purposes, the Corporation has combined the fund and government-wide financial statements using a columnar format that reconciles individual line items of fund financial data to government-wide data in a separate column.

14

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

Government-Wide Financial Statements – The statement of net position (deficit) and the statement of activities report information on all activities of the Corporation. The effect of interfund balances has been removed from the statement of net position (deficit). Governmental activities are financed through revenue of the SUT deposited in the COFINA Revenues Fund, which is the segregated fund owned by the Corporation into which the COFINA Revenues are deposited and held by the Trustee (COFINA Revenues Fund), and other financing sources.

The statement of net position (deficit) presents the Corporation's assets and liabilities, with the difference reported as net position (deficit). Net position (deficit) is reported in two categories:

- Restricted Net Position – Results when constraints placed on net position use are either externally imposed by creditors, grantors, contributors, and the like, or imposed by law through constitutional provisions or enabling legislation.

- Unrestricted Net Position – Consist of net position that does not meet the definition in the preceding category. Unrestricted net position often is designated in order to indicate that management does not consider them to be available for general operations. Unrestricted net position often has constraints on use that are imposed by management, but such constraints may be removed or modified.

The statement of activities demonstrates the degree to which direct expenses of a given function or segment are offset by program revenues. Direct expenses are those that are clearly identifiable within a specific function. Program revenues consist of investment earnings. Other items not meeting the definition of program revenues are reported as general revenues.

Governmental Funds Financial Statements – The accounts of the Corporation are organized on the basis of funds, each of which is considered a separate accounting entity. Separate financial statements are provided for governmental funds. Major individual governmental funds are reported as separate columns in the fund financial statements. All funds of the Corporation are major funds.

Fund Accounting – The financial activities of the Corporation are recorded in individual funds, each of which is deemed to be a separate accounting entity. Fund accounting is designed to demonstrate legal compliance and to aid financial management by segregating transactions related to certain government functions or activities. A fund is a separate accounting entity with a self-balancing set of accounts. The financial activities of the Corporation that are reported in the accompanying basic financial statements have been classified into the following major governmental funds:

- General Fund – The general fund of the Corporation is used to account for all financial resources, except those required to be accounted for in another fund.

- Debt Service Fund – The debt service fund is used to account for the SUT deposited in the COFINA Revenues Fund for the payment of interest and principal on long-term obligations.

Fund balances for each governmental fund are displayed in the following classifications depicting the relative strength of the spending constraints placed on the purposes for which resources can be used:

- Non-spendable – amounts that cannot be spent because they are either not in a spendable form (such as inventories and prepaid amounts) or are legally or contractually required to be maintained intact. The Corporation did not have any non-spendable resources as of June 30, 2020.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

- Restricted – amounts that can be spent only for specific purposes because of constraints imposed by external providers (such as grantors, bondholders, and higher levels of government), or imposed by constitutional provisions or enabling legislation. Effectively, restrictions may be changed or lifted only with the consent of the resource provider or by constitutional provisions or enabling legislation.
- Committed – amounts that can be spent only for specific purposes determined by a formal action of the Corporation's highest level of decision-making authority. The Corporation's highest decision-making level of authority rests with the board of directors. The Corporation did not have any committed resources as of June 30, 2020.
- Assigned – amounts the Corporation intends to use for specific purposes that do not meet the criteria to be classified as restricted or committed (generally executive orders approved by the Corporation's Executive Director).
- Unassigned – amounts that are available for any purpose.

*(b)* **Measurement Focus, Basis of Accounting and Financial Statement Presentation**

The accounting and financial reporting treatment is determined by the applicable measurement focus and basis of accounting. Measurement focus indicates the type of resources being measured such as current financial resources or economic resources. The basis of accounting indicates the timing of transactions or events for recognition in the financial statements.

Government-Wide Financial Statements – Government-wide financial statements are reported using the economic resources measurement focus and the accrual basis of accounting. Revenue is recorded when earned and expenses are recorded when a liability is incurred, regardless of the timing of related cash flows.

Governmental Funds Financial Statements – The governmental fund's financial statements are reported using the current financial resources measurement focus and the modified accrual basis of accounting. Revenues are recognized when they become measurable and available. Revenue is considered to be available when it is collectible within the current period or soon enough thereafter to pay liabilities of the current period. For this purpose, the Corporation considers revenues to be available if they are collected within 30 days of the end of the current fiscal year-end. Expenditures generally are recorded when a liability is incurred as under accrual accounting, except that interest on general long-term obligations is generally recognized when paid, and debt service principal expenditures and claims and judgments are recorded only when payment is due. Revenue arising from pledged sales and use tax is recognized on an annual basis, upon collection or when the Commonwealth is obligated to make the payments.

*(c)* **Budgetary Accounting**

The Corporation is not required to submit a budget for approval by the Legislative Assembly; consequently, no formal budgetary accounting procedures are followed.

*(d)* **Investments**

Investments are reported at fair value, except for money market instruments with a remaining maturity at the time of purchase of one year or less and investment positions in 2a7 (Securities and Exchange Commission Rule 2a7 of the Investment Company Act of 1940) like external investment pools, which are carried at amortized cost pursuant GASB Statement No. 79, *Certain External Investment Pools and Pool Participants*.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

There are no limitations nor restrictions on withdrawals related to the external investment pools held by the Corporation.  Fair value is determined based on quoted market prices and quotations received from independent broker/dealers or pricing service organizations.

GASB Statement No. 72, *Fair Value Measurement and Application*, defines fair value as the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date. This Statement requires a government to use valuation techniques that are appropriate under the circumstances and for which sufficient data are available to measure fair value. The techniques should be consistent with one or more of the following approaches; the market approach, the cost approach, or the income approach. GASB Statement No. 72 also establishes a hierarchy of inputs to valuation techniques used to measure fair value. That hierarchy has three levels.

Level 1 - inputs whose values are based are quoted prices (unadjusted) in active markets for identical assets or liabilities.

Level 2 - inputs other than quoted prices, included within Level 1 that are observable for the assets or liability, either directly or indirectly.

Level 3 - inputs are unobservable inputs for asset or liability and may require a degree of professional judgment.

*(e)* **Future Sales and Use Tax Receivable**

Collections of SUT are recognized as revenue in the fund financial statements upon collection. In the government-wide financial statements, these payments reduce the future sales and use tax receivable. Refer to Note 7 to the basic financial statements for further information regarding the future sales and use tax receivable.

*(f)* **Bond Issue Costs and Premium/Discount on Bonds**

Premium (discounts) on bonds are amortized in a systematic manner over the life of the debt in the government-wide financial statements. Premium (discounts) are recognized in the period when the related long-term debt is issued in the governmental funds' financial statements, and therefore are not accounted for in subsequent periods. Bond issue costs are expensed as incurred in both government-wide and governmental fund financial statements.

*(g)* **Interfund Transactions**

Transfers represent flows of assets (such as cash or goods) without equivalent flows of assets in return and without a requirement for repayment. In governmental funds, transfers are reported as other financing uses in the fund making transfers and as other financing sources in the funds receiving transfers.

*(h)* **Refundings**

Refundings involve the issuance of new debt whose proceeds are used to repay immediately (current refunding) or at a future time (advance refunding) previously issued debt. The difference between the reacquisition price and the net carrying amount of the old debt is deferred and amortized as a component of interest expense over the remaining life of the old debt or the life of the new debt, whichever is shorter. The deferred amount is recorded on the statement of net position (deficit) as either a deferred inflow or deferred outflow of resources.  *See* Note 16 for discussion of Advance Refunding and Deceased Debt.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

*(i)*    ***New Accounting Pronouncements Issued but Not Yet Effective***

- *GASB Statement No. 84, Fiduciary Activities*. The objective of this Statement is to improve guidance regarding the identification of fiduciary activities for accounting and financial reporting purposes and how those activities should be reported. The requirements of this Statement are effective for reporting periods beginning after December 15, 2018.

  However, GASB Statement No. 95 Postponement of the effective dates of Certain Authoritative Guidance, postponed by one year the implementation of GASB Statement No. 84, Fiduciary Activities.  See additional information below.

- *GASB Statement No. 87, Leases*.  The objective of this Statement is to better meet the information needs of financial statement users by improving accounting and financial reporting for leases by governments. This Statement increases the usefulness of governments' financial statements by requiring recognition of certain lease assets and liabilities for leases that previously were classified as operating leases and recognized as inflows of resources or outflows of resources based on the payment provisions of the contract.  It establishes a single model for lease accounting based on the foundational principle that leases are financings of the right to use an underlying asset.  Under this Statement, a lessee is required to recognize a lease liability and an intangible right-to-use lease asset, and a lessor is required to recognize a lease receivable and a deferred inflow of resources, thereby enhancing the relevance and consistency of information about governments' leasing activities. The requirements of this Statement are effective for reporting periods beginning after December 15, 2019. Earlier application is encouraged.

- *GASB Statement No. 91, Conduit Debt Obligations*. The primary objectives of this Statement are to provide a single method of reporting conduit debt obligations by issuers and eliminate diversity in practice associated with (i) commitments extended by issuers, (ii) arrangements associated with conduit debt obligations, and (iii) related note disclosures. This Statement achieves those objectives by clarifying the existing definition of a conduit debt obligation; establishing that a conduit debt obligation is not a liability of the issuer; establishing standards for accounting and financial reporting of additional commitments and voluntary commitments extended by issuers and arrangements associated with conduit debt obligations; and improving required note disclosures.

  This Statement also addresses arrangements-often characterized as leases that are associated with conduit debt obligations. In those arrangements, capital assets are constructed or acquired with the proceeds of a conduit debt obligation and used by third-party obligors in the course of their activities. Payments from third-party obligors are intended to cover and coincide with debt service payments. During those arrangements, issuers retain the titles to the capital assets. Those titles may or may not pass to the obligors at the end of the arrangements.

  This Statement requires issuers to disclose general information about their conduit debt obligations, organized by type of commitment, including the aggregate outstanding principal amount of the issuers' conduit debt obligations and a description of each type of commitment. The requirements of this Statement are effective for reporting periods beginning after December 15, 2020. Earlier application is encouraged.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

- *GASB Statement No. 92, Omnibus 2020.* The objectives of this Statement are to enhance comparability in accounting and financial reporting and to improve the consistency of authoritative literature by addressing practice issues that have been identified during implementation and application of certain GASB Statements. This Statement addresses a variety of topics and includes specific provisions about the following: The effective date of Statement No. 87, Leases, and Implementation Guide No. 2019-3, Leases, for interim financial reports; reporting of intra-entity transfers of assets between a primary government employer and a component unit defined benefit pension plan or defined benefit other postemployment benefit (OPEB) plan; the applicability of Statements No. 73, Accounting and Financial Reporting for Pensions and Related Assets That Are Not within the Scope of GASB Statement 68, and Amendments to Certain Provisions of GASB Statements 67 and 68, as amended, and No. 74, Financial Reporting for Postemployment Benefit Plans Other Than Pension Plans, as amended, to reporting assets accumulated for postemployment benefits; the applicability of certain requirements of Statement No. 84, Fiduciary Activities, to postemployment benefit arrangements; measurement of liabilities (and assets, if any) related to asset retirement obligations (AROs) in a government acquisition; reporting by public entity risk pools for amounts that are recoverable from reinsurers or excess insurers; reference to nonrecurring fair value measurements of assets or liabilities in authoritative literature; and terminology used to refer to derivative instruments. The requirements of this Statement are effective for reporting periods beginning after June 15, 2020. Earlier application is encouraged.

- *GASB Statement No. 93 Replacement of Interbank Offered Rates (IBOR).* The objective of this Statement is to address accounting and financial reporting implications that result from the replacement of an IBOR most notably the London Interbank Offered Rate (LIBOR).  As a result of global reference rate reform, LIBOR is expected to cease to exist in its current form at the end of 2021, prompting governments to amend or replace financial instruments for the purpose of replacing LIBOR with other reference rates, by either changing the reference rate or adding or changing fallback provisions related to the reference rate.

This statement achieves its objective by:

  - Providing exceptions for certain hedging derivative instruments to the hedge accounting termination provisions when an IBOR is replaced as the reference rate of the hedging derivative instrument's variable payment.
  - Clarifying the hedge accounting termination provisions when a hedged item is amended to replace the reference rate.
  - Clarifying that the uncertainty related to the continued availability of IBORs does not, by itself, affect the assessment of whether the occurrence of a hedged expected transaction is probable.
  - Removing LIBOR as an appropriate benchmark interest rate for the qualitative evaluation of the effectiveness of an interest rate swap.
  - Identifying a Secured Overnight Financing Rate and the Effective Federal Funds Rate as appropriate benchmark interest rates for the qualitative evaluation of the effectiveness of an interest rate swap.
  - Clarifying the definition of reference rate, as it is used in Statement 53, as amended.

19

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

- Providing an exception to the lease modifications guidance in Statement No. 87, as amended, for certain lease contracts that are amended solely to replace an IBOR as the rate upon which variable payments depend.

  The removal of LIBOR as an appropriate benchmark interest rate is effective for reporting periods ending after December 31, 2021. All other requirements of this Statement are effective for reporting periods beginning after June 15, 2020. Earlier application is encouraged. The exceptions to the existing provisions for hedge accounting termination and lease modifications in this Statement will reduce the cost of the accounting and financial reporting ramifications of replacing IBORs with other reference rates. The reliability and relevance of reported information will be maintained by requiring that agreements that effectively maintain an existing hedging arrangement continue to be accounted for in the same manner as before the replacement of a reference rate. As a result, this Statement will preserve the consistency and comparability of reporting hedging derivative instruments and leases after governments amend or replace agreements to replace an IBOR.

- *GASB Statement No. 95 Postponement of the effective dates of Certain Authoritative Guidance.* The primary objective of this Statement is to provide temporary relief to governments and other stakeholders considering the COVID-19 pandemic. That objective is accomplished by postponing the effective dates of certain provisions in Statements and Implementation Guides that first became effective or are scheduled to become effective for periods beginning after June 15, 2018, and later.

  The effective dates of certain provisions contained in the following pronouncements are postponed by one year:

  - *Statement No. 83, Certain Asset Retirement Obligations*
  - *Statement No. 84, Fiduciary Activities*
  - *Statement No. 88, Certain Disclosures Related to Debt, including Direct Borrowings and Direct Placements*
  - *Statement No. 89, Accounting for Interest Cost Incurred before the End of a Construction Period*
  - *Statement No. 90, Majority Equity Interests*
  - *Statement No. 91, Conduit Debt Obligations*
  - *Statement No. 92, Omnibus 2020*
  - *Statement No. 93, Replacement of Interbank Offered Rates*
  - *Implementation Guide No. 2017-3, Accounting and Financial Reporting for Postemployment Benefits Other Than Pensions (and Certain Issues Related to OPEB Plan Reporting)*
  - *Implementation Guide No. 2018-1, Implementation Guidance Update—2018*
  - *Implementation Guide No. 2019-1, Implementation Guidance Update—2019*
  - *Implementation Guide No. 2019-2, Fiduciary Activities.*

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

The effective dates of the following pronouncements are postponed by 18 months:

- *Statement No. 87, Leases*
- *Implementation Guide No. 2019-3, Leases*

Earlier application of the provisions addressed in this Statement is encouraged and is permitted to the extent specified in each pronouncement as originally issued.

The requirements of this Statement are effective immediately.

Management is evaluating the impact that these Statements will have on the Corporation's basic financial statements.

**(3) Puerto Rico Oversight, Management, and Economic Stability Act**

On June 30, 2016, the then-President of the United States signed into law the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA). In general terms, PROMESA seeks to provide the Commonwealth, its instrumentalities, and public corporations with fiscal and economic discipline through, among other things: (i) the establishment of the Oversight Board (as defined above), whose responsibilities include the certification of fiscal plans and budgets for the Commonwealth and its related entities; (ii) a temporary stay of all creditor lawsuits under Title IV of PROMESA; and (iii) two alternative methods to adjust unsustainable debt: (a) a voluntary debt modification process under Title VI of PROMESA, which establishes a largely out-of-court debt restructuring process through which modifications to financial debt can be accepted by a supermajority of creditors; and (b) a quasi-bankruptcy proceeding under Title III of PROMESA, which establishes an in-court debt restructuring process substantially based upon incorporated provisions of Title 11 of the United States Code (U.S. Bankruptcy Code). Each of these elements are divided among PROMESA's seven titles, as briefly discussed below.

*Title I – Establishment of Oversight Board and Administrative Matters*

Upon PROMESA's enactment, the Oversight Board was established for Puerto Rico. As stated in PROMESA, "the purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets." On August 31, 2016, the then-President of the United States announced the appointment of the Oversight Board members. Each Oversight Board member is required to have "knowledge and expertise in finance, municipal bond markets, management, law, or the organization or operation of business or government." The Oversight Board was "created as an entity within the territorial government for which it was established" and is expressly not an entity of the federal government, but it was also established to act independently from the Commonwealth government, such that neither the Governor nor the Legislature may (i) exercise any control, supervision, oversight, or review over the Oversight Board or its activities; or (ii) enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of PROMESA, as determined by the Oversight Board.

*Title II – Fiscal Plan and Budget Certification Process and Compliance*

Title II sets forth the requirements for proposing and certifying fiscal plans and budgets for the Commonwealth and its instrumentalities. "Each fiscal plan serves as the cornerstone for structural reforms the Oversight Board

21

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

deems necessary to ensure the territory, or instrumentality, will be on a path towards fiscal responsibility and access to capital markets." According to the legislative history, a fiscal plan should "provide for a sustainable level of debt, improve governance, provide for capital expenditures that promise economic growth, and respect the relative priorities that different classes of bondholders have vis-à-vis one another under Puerto Rico law."

Only after the Oversight Board has certified a fiscal plan may the Governor submit a fiscal year Commonwealth budget and fiscal year budgets for certain Commonwealth instrumentalities (as approved by the Oversight Board) to the Legislature. In furtherance of the foregoing duties, PROMESA contains a provision that grants the Oversight Board powers to monitor compliance with certified fiscal plans and budgets and undertake certain actions, including spending reductions and the submission of recommended actions to the Governor that promote budgetary compliance. On June 18, 2020, the Oversight Board certified the 2020 Corporation's fiscal plan.

## Title III – In-Court Restructuring Process

Title III of PROMESA establishes an in-court process for restructuring the debts of Puerto Rico and other United States territories that is modeled after the process under Chapter 9 of the U.S. Bankruptcy Code. The Oversight Board has sole authority to file a voluntary petition seeking protection under Title III of PROMESA.

In a Title III case, the Oversight Board acts as the debtor's representative and is authorized to take any actions necessary to prosecute the Title III case. Immediately upon filing the Title III petition, Bankruptcy Code section 362 (which is incorporated into Title III cases under PROMESA) applies to automatically stay substantially all litigation against the debtor (the Title III Stay). A Title III case culminates in the confirmation of a plan of adjustment of the debts of the debtor. The Oversight Board has the exclusive authority to file and modify a plan of adjustment prior to confirmation.

On May 5, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for the Corporation by filing a petition for relief under Title III of PROMESA in the Title III Court. On February 5, 2019, the Title III Court confirmed the COFINA Plan of Adjustment. On February 12, 2019, the COFINA Plan of Adjustment was substantially consummated and became effective, thereby quieting the Corporation's title to the COFINA Revenues, and definitively resolving as a legal matter all questions of title to those revenues and the Corporation's sole and exclusive ownership of them.  For additional information on the COFINA Plan of Adjustment, refer to Notes 4 and 15.

## Title IV – Temporary Stay of Litigation, Government Reporting, and Other Miscellaneous Provisions

Title IV of PROMESA contains several miscellaneous provisions, including a temporary stay of litigation related to "Liability Claims," relief from certain wage and hour laws, the establishment of a Congressional Task Force on Economic Growth in Puerto Rico (the Task Force), the requirement that the Comptroller General of the United States submit two reports to Congress regarding the public debt levels of the U.S. territories, and expansion of the federal government's small business HUB Zone program in Puerto Rico.

Pursuant to PROMESA section 405, the enactment of PROMESA immediately and automatically imposed a temporary stay (the Title IV stay) from June 30, 2016 (the date of PROMESA's enactment) through February 15, 2017, of all "Liability Claim" litigation commenced against the Commonwealth and its instrumentalities after December 18, 2015.  A "Liability Claim" is defined as any right to payment or equitable

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

remedy for breach of performance related to "a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness for borrowed money, including rights, entitlements, or obligations whether such rights entitlements, or obligations arise from contract, statute, or any other source of law related [thereto]" for which the Commonwealth or one of its instrumentalities was the issuer, obligor, or guarantor and such liabilities were incurred prior to June 30, 2016. The Title IV Stay was subject to a one-time 75-day extension by the Oversight Board or a one-time 60-day extension by the United States District Court. On January 28, 2017, the Oversight Board extended the Title IV Stay by 75 days to May 1, 2017, at which time the Title IV Stay expired.

Title IV of PROMESA also required several federal government reports. First, PROMESA established the Task Force within the legislative branch of the U.S. federal government. The Task Force submitted its report to Congress on December 20, 2016.

Second, PROMESA required the U.S. Comptroller General, through the Government Accountability Office (GAO), to submit a report to the House and Senate by December 30, 2017 regarding: (i) the conditions that led to Puerto Rico's current level of debt; (ii) how government actions improved or impaired its financial condition; and (iii) recommendations on new fiscal actions or policies that the Commonwealth could adopt. The GAO published this report on May 9, 2018.

Third, PROMESA required the U.S. Comptroller General, through the GAO, to submit to Congress by June 30, 2017 a report on public debt of the U.S. territories. In addition to its initial report, the GAO must submit to Congress updated reports on the public debt at least once every two years. The GAO published its initial report on October 2, 2017 and its first updated report on June 28, 2019.

*Title V – Infrastructure Revitalization*

Title V of PROMESA established the position of the Revitalization Coordinator under the Oversight Board and provides a framework for infrastructure revitalization through an expedited permitting process for "critical projects" as identified by the Revitalization Coordinator.

*Title VI – Consensual, Out-of-Court Debt Modification Process*

Title VI of PROMESA established an out-of-court process for modifying Puerto Rico's debts. Under PROMESA section 601(d), the Oversight Board is authorized to establish "pools" of bonds issued by each Puerto Rico government-related issuer based upon relative priorities. After establishing the pools, the government issuer or any bondholder or bondholder group may propose a modification to one or more series of the government issuer's bonds. If a voluntary agreement exists, the Oversight Board must issue a certification and execute a number of additional processes in order to qualify the modification.

As of the date hereof, the Government Development Bank for Puerto Rico (GDB) has completed a restructuring under Title VI of PROMESA. As discussed in Note 6 below, pursuant to the terms of the GDB's Title VI Qualifying Modification, any deposit claims of the Corporation at GDB were extinguished in exchange for interests in the Public Entity Trust (PET). As such, the recovery to the Corporation on account of its deposit claim will depend upon the recovery ultimately received by the PET on account of the PET Assets.

23

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

*Title VII – Sense of Congress*

Title VII of PROMESA sets forth the sense of Congress that "any durable solution for Puerto Rico's fiscal and economic crisis should include permanent, pro-growth fiscal reforms that feature, among other elements, a free flow of capital between possessions of the United States and the rest of the United States."

**(4)   COFINA Title III Case and Confirmation of the COFINA Plan of Adjustment**

On May 3, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for the Commonwealth by filing a petition for relief under Title III of PROMESA in the Title III Court. On May 5, 2017, the Oversight Board, at the request of the Governor, followed with a similar filing for the Corporation in the Title III Court.

Questions regarding the Commonwealth and COFINA's respective ownership interests in the SUT revenue pledged as collateral for the then-existing COFINA bonds were at the center of the Title III cases since their commencement in May 2017. Resolution of this Commonwealth-COFINA Dispute was essential in order for Puerto Rico's debt restructuring to move forward.

On January 9, 2019, the Oversight Board filed its *Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3283, Docket No. 4652] (the COFINA Plan of Adjustment). The COFINA Plan of Adjustment proposed, among other things, to release the Commonwealth from all liability from claims and causes of action held by any creditor of COFINA (solely in its capacity as a creditor of COFINA) arising from or relating to the relationship of the Commonwealth and COFINA.

On January 16 and 17, 2019, the Title III Court held a hearing to confirm the COFINA Plan of Adjustment and to approve *Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3283, Docket No. 4067] (the Settlement Motion), which proposed a settlement of the Commonwealth-COFINA Dispute pursuant to a settlement agreement (the Settlement Agreement), attached to the Settlement Motion as Exhibit A Proposed Order, Schedule I.  The Settlement Agreement was consistent with the Agreement in Principle (as defined above). On February 4, 2019, the Title III Court entered an order granting the Settlement Motion and approving the Settlement Agreement.

On February 5, 2019, the Title III Court entered (i) the *Amended Memorandum of Findings of Fact and Conclusions of Law in Connection with Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [Case No. 13-3283, Docket No. 5053] (the Findings and Conclusions) and (ii) the *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3283, Docket No. 5055] (the Confirmation Order). Pursuant to the Findings and Conclusions and the Confirmation Order, the Title III Court confirmed the COFINA Plan of Adjustment.  On February 12, 2019 (the Effective Date), the COFINA Plan of Adjustment was substantially consummated and became effective, thereby quieting the Corporation's title to the COFINA Revenues, and definitively resolving as a legal matter all questions of title to those revenues and the Corporation's sole and exclusive ownership of them.

Pursuant to the Settlement Motion approved in the Commonwealth's Title III case by the Settlement Order and through the COFINA Plan of Adjustment confirmed in the Title III Case, the Title III Court found the split of the Pledged Sales Tax Base Amount into a 53.65% portion (i.e., the COFINA Revenues), which the Corporation receives, and a 46.35% portion, which the Commonwealth receives, to be consistent with the

**PUERTO RICO SALES TAX FINANCING CORPORATION**

(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

Agreement in Principle.  Moreover, pursuant to articles 1.4 and 2.1(c) of the COFINA Plan of Adjustment, several litigation actions and claims and causes of action asserted therein have been dismissed with prejudice on the Effective Date of the COFINA Plan of Adjustment (February 12, 2019) pursuant to the Settlement Order and the Confirmation Order.

The Confirmation Order and Findings and Conclusions confirmed the COFINA Plan of Adjustment, which authorized the issuance of approximately $12 billion in principal amount of the New COFINA Bonds, cancelled the Corporation's then-outstanding bonds, and discharged the related liability. The Confirmation Order and Findings and Conclusions also provided the following enumerated protections for the New COFINA Bonds.  Specifically, the Confirmation Order provisions include: (i) the New COFINA Bonds "constitute valid, binding, legal and enforceable obligations of" COFINA; (ii) the COFINA Revenues are property of the new issuer "free and clear of all liens, claims, encumbrances, and any other interests of creditors of the old issuer, the new issuer, the Commonwealth, or any instrumentality of the Commonwealth, other than the liens granted" hereunder; (iii) the COFINA Revenues shall not be "available resources" or "available revenues" of the Commonwealth; and (iv) retention of Title III Court jurisdiction to ensure protection and enforcement of legal framework and security pledges.

Consummation of the COFINA Plan of Adjustment together with the enactment of Act No. 241-2018 quieted the Corporation's title to the COFINA Revenues, definitively resolving as a legal matter all questions of title to those revenues and the Corporation's sole and exclusive ownership of them.

The COFINA Plan of Adjustment and Act No. 241-2018 provide for the reduction of the principal amount of the Corporation's bonds and clarify the Corporation's ownership of the COFINA Revenues.  They further provide for the Corporation's financial and operating independence from the Commonwealth by establishing independent standing for the Corporation's operations.

Certain parties whose objections were overruled in confirming the COFINA Plan of Adjustment filed Notices of Appeal in the Title III Court. Accordingly, there are ongoing legal challenges to the Confirmation Order that, if resolved adversely to COFINA, could, among other things, affect the validity of the amendments made by Act No.241-2018 and the validity or enforceability of the Master Trust Indenture and the New COFINA Bonds.

The completion of the Corporation's restructuring under the PROMESA Title III process, the settlement of the Commonwealth-COFINA Dispute, other settlements and the discharge of claims under the COFINA Plan of Adjustment resulted in an aggregated extraordinary gain of approximately $6.3 billion during fiscal year 2019.

For more information regarding ongoing legal challenges to the Confirmation Order, see Note 15 to the basic financial statements.

**(5)  Deposits and Custodial Credit Risk**

Custodial credit risk is the risk that, in the event of a bank failure of a depository financial institution, the Corporation will not be able to recover deposits or will not be able to recover collateral securities that are in possession of an outside party. The Commonwealth requires that public funds deposited in commercial banks in Puerto Rico must be fully collateralized for the amounts deposited in excess of federal depository insurance. All securities pledged as collateral are held by banks in the Corporation's name.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

Deposits maintained as of June 30, 2020 by the Corporation represent the balance of interest and non-interest bearing accounts in commercial banks and cash held by the Trustee under the Master Trust Indenture. The table presented below discloses the level of custodial credit risk assumed by the Corporation at June 30, 2020. As of June 30, 2020, $759,364 of the depository bank balance of $22,729,394 was uninsured as follows:

|  | Carrying amount | Depository bank balance | Amount uninsured and uncollateralized |
|---|---|---|---|
| Deposits placed with bank | $ 21,720,030 | $ 21,720,030 | — |
| Cash held by trustee | 1,009,364 | 1,009,364 | 759,364 |
| Total | $ 22,729,394 | $ 22,729,394 | $ 759,364 |

## (6) Deposits Claim Receivable from Public Entity Trust (PET)

On August 10, 2018, GDB commenced an action to restructure certain of its indebtedness pursuant to a Qualifying Modification (the Qualifying Modification) under Title VI of PROMESA. The United States District Court for the District of Puerto Rico approved GDB's proposed restructuring on November 6, 2018 and the Qualifying Modification went effective on November 29, 2018.

Pursuant to Act No. 109-2017, also known as the *Government Development Bank for Puerto Rico Debt Restructuring Act* (the GDB Restructuring Act) and the terms of the Qualifying Modification, claims on account of deposits held by the Commonwealth and other public entities, including COFINA, were exchanged for beneficial units in the "Public Entity Trust" created pursuant to the GDB Restructuring Act. Specifically, under the provisions of the GDB Restructuring Act, on the closing date of the Qualifying Modification (the Closing Date), *i.e.*, November 29, 2018, the balance of liabilities owed between the Commonwealth and its agents, instrumentalities and affiliates, including COFINA (each a Non-Municipal Government Entity) and GDB was determined by applying the outstanding balance of any deposits held at GDB in a Non-Municipal Government Entity's name against the outstanding balance of any loan of such Non-Municipal Government Entity owed to GDB or of any bond or note of such Non-Municipal Government Entity held by GDB as of such date. Those Non-Municipal Government Entities having net claims against GDB, after giving effect to the foregoing adjustment, which included COFINA, received their pro rata share of interests in the Public Entity Trust (or PET), which was deemed to be in full satisfaction of any and all claims such Non-Municipal Government Entity may have had against GDB. The assets of the PET (the PET Assets) consist of, among other items, a claim in the amount of approximately $580 million against the Commonwealth, which is the subject of a proof of claim filed in the Commonwealth's Title III case.

The Corporation held deposits at GDB of approximately $26.1 million. A custodial credit loss on these deposits was recorded in previous years resulting in a reserve of the entire balance at June 30, 2019. As of June 30, 2020, the deposits balance and the custodial credit loss were reclassified to deposits claim receivable from PET and into an allowance for doubtful accounts, respectively, with a net carrying amount of zero. As a result of the Qualifying Modification, the Corporation's recovery on account of this deposit claim will depend upon the recovery ultimately received by the Public Entity Trust on account of the PET Assets.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

(7)   **Future Sales and Use Tax Receivable**

The Commonwealth imposes a sales and use tax (SUT) on a broad range of goods and services. As of June 30, 2020, the total SUT imposed was 11.5% and was allocated as follows: 5.5% for the benefit of the Commonwealth (the 5.5% Sales Tax), 0.5% for the benefit of the Municipal Administration Fund, 4.5% as a sales and use tax surcharge for the benefit of the Commonwealth and 1.0% for the municipalities of the Commonwealth.

Over the course of fiscal year 2020, the future sales and use tax receivable was reduced by the fiscal year 2020 collections of the COFINA Revenues. As collections for fiscal year 2020 amounted to approximately $437 million, the Corporation's future sales and use tax receivable is approximately $7.301 billion. The COFINA Revenues that the Corporation receives every fiscal year will reduce the future sales and use tax receivable until it equals $0. Based on the schedule of the COFINA Revenues presented in Note 10 to the basic financial statements, the Corporation should reach in fiscal year 2033 the outstanding future sale and use tax receivable balance of $7,301 billion as of June 30, 2020. After that, the COFINA Revenues that the Corporation receives each fiscal year will be recorded as revenue.

Act No.91, as amended, provides for the establishment of the COFINA Revenues Fund, which is held in the name of the Trustee for the benefit of the holders of the New COFINA Bonds and may not be owned or controlled in any way by the Commonwealth or any government entity other than the Corporation. The COFINA Revenues Fund is maintained in one or more mainland U.S. banks.

Any and all ownership interests and rights to the COFINA Revenues were or have been transferred to the Corporation. The transfer described is an absolute transfer of all legal and equitable right, title and interest, and not a pledge or other financing. By the Confirmation Order, the Title III Court determined that the Corporation has title to the COFINA Revenues and definitively resolved as a legal matter all questions of title to those revenues and the Corporation's sole and exclusive ownership of them. The Corporation is and will be sole and exclusive owner of the COFINA Revenues until such time as the New COFINA Bonds, together with any interest thereon, and all amounts and obligations under all ancillary agreements, have been completely paid in cash in full or have otherwise been discharged in accordance with their terms.

Persons designated as withholding agents for purposes of the imposition and collection of the sales tax pursuant to Act No. 1-2011, as amended, also known as the *Internal Revenue Code for a New Puerto Rico*, shall be deemed to collect any portion of the sales taxes in which the Corporation has an ownership interest on behalf of the Corporation. Any such withholding agent will continue to be subject to any and all obligations and responsibilities imposed by the Internal Revenue Code for a New Puerto Rico on withholding agents in relation to the imposition and collection of sales taxes. The COFINA Revenues do not constitute "available resources" or "available revenues" of the Government of Puerto Rico as used in Section 8 of Article VI of the Puerto Rico Constitution or as otherwise used in the Puerto Rico Constitution.

As of June 30, 2020, in each fiscal year, the first collections of the 5.5% SUT are deposited in the COFINA Revenues Fund and applied to fund the COFINA Revenues. The COFINA Revenues are the first funds up to an amount equal to fifty-three and sixty-five one hundredths percent (53.65%) of the Fixed Income Amount for each fiscal year and all legal and equitable rights, title and interest thereto. The Fixed Income Amount for the fiscal year ended June 30, 2020, was $814,525,141 and, pursuant to the provisions of Act 91, it increases each fiscal year at a statutory rate of 4.0% up to $1.85 billion. Regardless of the level of 5.5% SUT collections, Act 91 requires that in each fiscal year all collections of the 5.5% SUT be deposited

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

in the COFINA Revenues Fund until an amount equal to the COFINA Revenues is deposited before any collections of the 5.5% SUT are deposited in the Commonwealth's General Fund.

Collections of SUT are recognized as revenue in the fund financial statements upon collection. In the government-wide financial statements, these payments reduce the future sales and use tax receivable.

**(8)   Investments**

At June 30, 2020, as provided by Act No. 241-2018, the Corporation may invest the funds on deposit with the Trustee as provided for in the Ancillary Agreements, which include the Master Trust Indenture. Any other funds are held by the Corporation in bank accounts and may not be otherwise invested.

Investments held by the Trustee are made in Eligible Investments in accordance with the provisions of Section 6.02 of the Master Trust Indenture, which include interest-bearing general obligations of the United States of America; United States treasury bills and other non-interest bearing general obligations of the United States of America and certain short-term discount United States government obligations that, in each case, mature no later than the next Monthly Disbursement Date in the case of investments held in the Revenue Fund and not later than the date required to pay principal and interest when due on the New COFINA Bonds in the case of moneys held in the Debt Service Fund.

*Interest Rate Risk –* Interest rate risk is the risk that changes in interest rates will adversely affect the fair value of an investment. At June 30, 2020, the Corporation's board of directors is responsible for implementing and monitoring the interest rate risk policies and strategies. At June 30, 2020, the practice of the board of directors was to meet on a regular basis to coordinate and monitor the interest rate risk management of interest sensitive assets and interest sensitive liabilities, including matching of their anticipated level and maturities, consistent with the corresponding laws and the board of directors' objectives.

The following table summarizes the type and maturities of investments held by the Corporation at June 30, 2020:

| Investment type | | Due within one year | Credit Risk Rating |
|---|---|---|---|
| Debt securities: | | | |
| U.S. Treasury State and Local Government Series (SLGs) | $ | 12,832,869 | AAA |
| External Investment Pools: | | | |
| Dreyfus Government Cash Management | | 223,511,013 | AAAm |
| Total investments | $ | 236,343,882 | |

At June 30, 2020, investments in external investments pools consisted of $223,511,013 invested in Dreyfus Government Cash Management (Dreyfus) with BNYM, which is an external investment pool registered with the Securities and Exchange Commission.

*Credit Risk –* Credit risk is the risk that an issuer or other counterparty to an investment will not fulfill its obligations. The Corporation's investment policies provide that investment transactions shall be entered into

28

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

only with counterparties that are rated BBB+/A-1 or better by Standard & Poor's or equivalent rating by Moody's or Fitch, depending on the type and maturity of the investment and the counterparty to the transaction. Any exceptions must be approved by the Corporation's board of directors. The investment policies also provide that purchases and sales of investment securities shall be made using the delivery versus payment procedures.

Investments in U.S. Treasury SLGs carry the explicit guarantee of the U.S. government. As of June 30, 2020, the credit rating of Dreyfus was "AAAm" by Standard & Poor's as shown in the table above. The "AAAm" is the Standard & Poor's highest rating defined as extremely strong capacity to maintain principal stability and limit exposure to principal losses due to credit market and liquidity risks. The investment in Dreyfus were held by BNYM, as trustee, in the name of the Corporation.

***Concentration of Credit Risk*** – The Corporation places no limits on the amount it may invest in any one issuer. As of June 30, 2020, 5% of the Corporation's investments are in debt securities, 95% are in external investment pools. The following table shows the investments by fair value level held by the Corporation at June 30, 2020:

| | | | Fair Value Measurement Levels | | |
|---|---|---|---|---|---|
| Investments by fair value level | | Level 1 | Level 2 | Level 3 | Total |
| Debt securities: | | | | | |
| U.S. Treasury State and Local Government Series (SLGs) | $ | — | 12,832,869 | — | 12,832,869 |
| Total investments by fair value level | $ | — | 12,832,869 | — | 12,832,869 |
| Investments not measured at fair value: | | | | | |
| External Investment Pools: | | | | | |
| Dreyfus Government Cash Management | | | | | 223,511,013 |
| Total investments | | | | $ | 236,343,882 |

The debt securities classified in Level 2 of the fair value hierarchy are valued using inputs other than quoted prices under Level 1 that are observable for the assets, either directly or indirectly on the measurement date.

**(9)  Relationship with FAFAA and the Commonwealth of Puerto Rico**

**FAFAA**

The Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, Act No. 21-2016 (the Moratorium Act), as amended, created FAFAA as an independent public corporation to assume GDB's role as fiscal agent, financial advisor and reporting agent for the Commonwealth and its instrumentalities. Act No. 2 of 2017 subsequently repealed and replaced the provisions of the Moratorium Act regarding FAFAA. FAFAA has also been assigned the tasks of overseeing matters related to the restructuring or adjustment of the Commonwealth's financial liabilities, coordinating liability management or other transactions with respect to such obligations, and ensuring compliance with fiscal plans and budgets approved by the Oversight Board pursuant PROMESA. During the year ended June 30, 2020, FAFAA provided certain management and administrative services to the Corporation under a memorandum of understanding. FAFAA charged the Corporation $108,000 as management and administrative services during the year ended June 30, 2020.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

**Commonwealth of Puerto Rico**

Pursuant to Section 5.10 of the Master Trust Indenture, remaining amounts deposited free and clear of the statutory lien in the Remainder Fund will be paid to the Commonwealth. As of June 30, 2020, the Corporation established an accrual of $8,483,004 in accordance with this provision of the Mater Trust Indenture. This amount is presented as Due to Commonwealth of Puerto Rico in the fund financial statements as it was due and payable as of June 30, 2020.

**(10) Bonds Payable**

As of June 30, 2020, bonds payable of the Corporation consists of the following (in thousands)[12]:

| Description | Face/Effective interest rate | | Amount |
|---|---|---|---|
| New COFINA Bonds, Series 2019A-1: | | | |
| Current Interest Bonds due from July 1, 2033 to July 1, 2058 | 4.50%–5.00% | $ | 5,412,723 |
| Capital Appreciation Bonds due from July 1, 2019 to July 1, 2051 | 4.250%–5.625% | | 3,132,417 |
| New COFINA Bonds, Series 2019A-2, Series 2019A-2A: | | | |
| Current Interest Bonds due from July 1, 2035 to July 1, 2058 | 4.329%–5.00% | | 3,591,809 |
| New COFINA Bonds, Series 2019B-1: | | | |
| Current Interest Bonds due from July 1, 2033 to July 1, 2058 | 4.50%–5.00% | | 69,318 |
| Capital Appreciation Bonds due from July 1, 2019 to July 1, 2051 | 4.250%–5.625% | | 40,116 |
| New COFINA Bonds, Series 2019B-2: | | | |
| Current Interest Bonds due from July 1, 2035 to July 1, 2058 | 4.329%–4.784% | | 45,570 |
| Bonds payable - net | | $ | 12,291,953 |

All current interest bonds have fixed interest rates.

---

[12] For purposes of this Statement, the term "New COFINA Bonds" has the same meaning as "Restructured Sales Tax Bonds" as used in the COFINA bond documents.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

Bonds payable activity for the year ended June 30, 2020 is as follows (in thousands):

| Description | | Balance at June 30, 2019 | Additions | Reductions | Balance at June 30, 2020 | Due within one year |
|---|---|---|---|---|---|---|
| Bonds payable | $ | 9,119,420 | — | — | 9,119,420 | — |
| Capital appreciation bonds – principal | | 9,638,251 | — | (19,607) | 9,618,644 | 17,480 |
| Discount on capital appreciation bonds | | (6,600,659) | 154,548 | — | (6,446,111) | — |
| Bonds payable – net | $ | 12,157,012 | 154,548 | (19,607) | 12,291,953 | 17,480 |

In February 2019, the consummation of the COFINA Plan of Adjustment together with the enactment of Act 241-2018 provided for the restructuring of COFINA's then-existing bonds. COFINA's existing senior and subordinated bondholders received New COFINA Bonds worth approximately $12 billion on account of their approximately $18 billion in claims discharged by the Plan.

The New COFINA Bonds are secured by a statutory lien on the COFINA Pledged Taxes subject to the Commonwealth's right to substitute "New Collateral" (as defined) in accordance with the terms of the COFINA Plan of Adjustment. The "New Collateral" is all or a portion of a tax of general applicability throughout Puerto Rico that is enacted in full substitution of the COFINA Pledged Taxes or otherwise constitutes like or comparable security for the COFINA Plan of Adjustment.

The New COFINA Bonds include (i) current interest bonds (CIB) entitled to cash interest and (ii) capital appreciation bonds (CAB), for which interest is added to principal and paid at maturity. Notwithstanding the timing of the effective date of the COFINA Plan of Adjustment, interest on the New COFINA Bonds commenced to accrue or accrete, as the case may be, as of August 1, 2018. Interest payments and interest accretion terms for current interest bonds and capital appreciation bonds, respectively, are as follows:

(a)     The current interest bonds or CIBs will bear interest from August 1, 2018 until paid (whether at maturity, prior to redemption or after maturity following payment default by the Corporation), payable on the effective date and semiannually thereafter on each payment date at the corresponding interest rates. Interest on current interest bonds will be computed on the basis of a 360-day year consisting of twelve 30-day months. Interest will accrue on overdue interest and principal at the corresponding interest rate and will compound on each interest payment date. All overdue interest and principal (and any interest accruing thereon) will remain due and payable until paid.

(b)     Interest on capital appreciation bonds or CABs will accrue and accrete from August 1, 2018 until paid (whether at maturity, prior to redemption or after maturity following payment default by the Corporation). Interest on capital appreciation bonds will not be paid on a current basis, but will be added to the principal thereof in the form of accretion on the effective date and semiannually thereafter on each valuation date, and will be treated as if accruing on the basis of a 360-day year consisting of twelve 30-day months between valuation dates, until paid (whether at maturity, prior to redemption or after maturity following payment default by the Corporation).

The New COFINA Bonds will be subject to redemption at the option of the Corporation, in whole or in part, in any order of maturity, at par plus accrued interest thereon or accreted value as applicable, upon thirty (30) days prior to written notice as follows:

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

***Current Interest Bonds (CIBs)***

| Maturity | Optional Redemption |
|---|---|
| 2034 | Redeemable at Par commencing July 1, 2025 |
| 2040 | Redeemable at Par commencing July 1, 2028 |
| 2053 | Redeemable at Par commencing July 1, 2028 |
| 2058 | Redeemable at Par commencing July 1, 2028 |

***Capital Appreciation Bonds (CABs)***

| Maturity | Optional Redemption |
|---|---|
| 2024 & 2027 | Not subject to redemption prior to maturity |
| 2029 | Redeemable at 103% of Accreted Value ("AV") commencing July 1, 2028 |
| 2031 | Redeemable at 105% of AV commencing July 1, 2028 and at 103% of AV commencing on July 1, 2029 |
| 2033 | Redeemable at 107.5% of AV commencing July 1, 2028, at 105% of AV commencing July 1, 2031 and 103% of AV commencing July 1, 2032 |
| 2046 & 2051 | Redeemable at 107.5% of AV commencing July 1, 2028, at 105% of AV commencing July 1, 2038, at 103% of AV commencing July 1, 2038 and at 100% of AV commencing July 1, 2043 |

The New COFINA Bonds are also subject to mandatory redemption prior to their respective maturity dates from sinking fund installments. All such mandatory redemptions of CIBs will be at a redemption price equal to par and mandatory redemptions of CABs will be at a redemption price equal to 100% of the then current accreted value.

The New COFINA Bonds do not have a debt service reserve fund nor rights of acceleration.

On June 10, 2019, COFINA launched an invitation to exchange and consent to amendments, towards bondholders owning aggregate principal amount of approximately $3.6 billion of Series 2019 A-2 and $45.6 million of Series 2019 B-2 of its New COFINA Bonds (collectively, the Invited Bonds) originally issued on February 12, 2019 as part of the COFINA Plan of Adjustment. COFINA provided the opportunity to exchange all or a portion of the Invited Bonds to bondholders for an equal aggregate principal amount of Converted Bonds that will have the same terms as the Invited Bonds, except for: (1) interest rate on Converted Bonds is 25 basis points lower than the Invited Bonds exchanged and (2) interest on Converted Bonds is excluded from gross income for federal tax purposes under Section 103 of the Tax Code.

On August 1, 2019 (settlement date), COFINA exchanged aggregate principal amount of approximately $3.1 billion of Series 2019 A-2 and $45.6 million of Series 2019 B-2 and accrued interest of approximately $12.1 million and $177 thousand, respectively, with bondholders who accepted the exchange. Also, bondholders who accepted the invitation consented to certain amendments to certain documents described in the invitation.

As a result of the exchange described above, the Series 2019A-2 consisted of (i) $3,108,661,000 aggregate principal amount series 2019A-2 converted bonds and (ii) $483,148,000 aggregate principal amount of Series 2019A-2 unconverted bonds.

In November 2019, COFINA received communication from FAFAA notifying that the Puerto Rico Infrastructure Financing Authority (PRIFA), a public corporation and instrumentality of the Commonwealth, intended to sell a portion of the $139,355,000 aggregate principal amount of the Series 2019 A-2 maturing on July 1, 2040, it held (the PRIFA Series 2019A-2 Bonds) and requested to qualify interest on a portion of such bonds ($81,670,000) to be excluded from gross income for federal income tax purposes under Section 103 of the Tax Code.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

COFINA, after consultation with bond counsel, clarified and amended certain provisions of the First Supplemental Indenture to reflect the new tax status of the portion of PRIFA Series 2019A-2 Bonds that qualified to be sold such that the interest thereon is excluded from gross income for federal income tax purposes under Section 103 of the Tax Code.  All terms and conditions of the PRIFA Series 2019A-2 Bonds, including interest rate and maturity, remained equal to the Invited Bonds except that they were dated July 1, 2019.

As of June 30, 2020, debt service requirements for bonds outstanding were as follows:

| Year ending June 30 | Principal | Interest | Total |
|---|---|---|---|
| 2021 | $ 17,479,550 | $ 430,056,019 | $ 447,535,569 |
| 2022 | 35,660,811 | 430,056,019 | 465,716,830 |
| 2023 | 54,565,877 | 430,056,019 | 484,621,896 |
| 2024 | 74,225,000 | 430,056,019 | 504,281,019 |
| 2025 | 94,674,754 | 430,056,019 | 524,730,773 |
| 2026-2030 | 809,911,029 | 2,150,280,094 | 2,960,191,123 |
| 2031-2035 | 1,478,021,662 | 2,131,017,394 | 3,609,039,056 |
| 2036-2040 | 2,629,230,000 | 1,780,505,323 | 4,409,735,323 |
| 2041-2045 | 3,543,672,026 | 1,410,164,489 | 4,953,836,515 |
| 2046-2050 | 3,543,673,607 | 1,410,164,489 | 4,953,838,096 |
| 2051-2055 | 3,754,080,000 | 1,200,356,261 | 4,954,436,261 |
| 2056-2058 | 2,702,870,000 | 272,599,412 | 2,975,469,412 |
| | 18,738,064,316 | $ 12,505,367,557 | $ 31,243,431,873 |
| Less: Unaccreted interest | (6,446,110,973) | | |
| | $ 12,291,953,343 | | |

The scheduled principal payment of approximately $17.5 million for year ending June 30, 2021, is payable on July 1, 2021 (fiscal year 2022) from the COFINA Revenue Fund deposited during fiscal year 2021. Therefore, the principal balance of $17.5 million cannot be added to the approximately, $465.7 million in total debt service payments due during fiscal year ending June 30, 2022 when compared to the COFINA Revenues (below) for such ending year.

The first collections of the 5.5% SUT ultimately are deposited in the COFINA Revenues Fund and applied to fund the Fixed Income Amount. The Fixed Income Amount for the fiscal year ended June 30, 2020, was $814,525,141 ($847,106,147 for fiscal year 2021).  Under Act No. 91, as amended, as of June 30, 2020, the Fixed Income Amount increases each fiscal year at a statutory rate of 4.0% up to $1.85 billion. COFINA Revenues are the first funds up to an amount equal to fifty-three and sixty-five one hundredths percent (53.65%) of the Fixed Income Amount for each fiscal year is as follows:

**PUERTO RICO SALES TAX FINANCING CORPORATION**

(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

| Year ending June 30 | | Amount |
|---|---|---|
| 2021 | $ | 454,472,448 |
| 2022 | | 472,651,346 |
| 2023 | | 491,557,399 |
| 2024 | | 511,219,696 |
| 2025 | | 531,668,483 |
| 2026-2030 | | 2,994,875,520 |
| 2031-2035 | | 3,643,723,996 |
| 2036-2040 | | 4,433,147,373 |
| 2041-2045 | | 4,962,625,000 |
| 2046-2050 | | 4,962,625,000 |
| 2051-2055 | | 4,962,625,000 |
| 2056-2058 | | 2,977,575,000 |
| | $ | 31,398,766,261 |

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

**(11)  Contingent Liability - *Internal Revenue Service Administrative Claim Dispute***

Under former sections of the Tax Code, COFINA was permitted to issue Build America Bonds (BABs) during 2009 and 2010. Under applicable Tax Code sections, with respect to each interest payment date, holders of BABs are entitled to a tax credit equal to 35 percent of the interest payable by the issuer of the BABs (i.e., COFINA) with respect to the interest payment date. In lieu of bondholders receiving a tax credit, however, the Tax Code permitted issuers of BABs such as COFINA to instead elect to receive with respect to each interest payment date a direct subsidy payment from the Internal Revenue Service (the IRS) equal to 35 percent of the interest payable to the holder under that BAB for that date. Under applicable rules issued by the IRS, issuers of direct payment BABs are required to submit to the IRS requests for payment of the direct subsidy.

Similarly, the Tax Code permitted COFINA to issue recovery zone economic development bonds (RZEDBs) during 2009 and 2010. RZEDBs were similar to BABs except that the IRS's direct subsidy payments were established at 45 percent of the interest payable, rather than 35 percent. RZEDBs, like BABs, provided the issuer with the ability to elect to receive direct subsidies from the IRS.

On June 30, 2010, COFINA issued both BABs and RZEDBs and elected to treat those bonds as direct payment bonds. For each interest payment date on the BABs, through and including February 1, 2019, COFINA submitted the request for the direct payment, and the IRS made all requested payments except for the February 1, 2019 payment. For each interest payment date on the RZEDBs, COFINA submitted the request for the direct payment, but the IRS ceased making payments to COFINA beginning with the May 1, 2018 payment. The direct payments that COFINA requested, but which the IRS did not pay, total $2.6 million (the Unpaid Subsidies).

After the commencement of COFINA's Title III Case on May 5, 2017, the Title III Court ordered BNYM, as trustee, to hold the pledged sales taxes used to pay interest on the bonds and not pay them to the COFINA bondholders, including holders of the COFINA BABs and RZEDBs. As a result, throughout the pendency of COFINA's Title III Case, all required interest payments, including with respect to the BABs and RZEDBs, were deposited by the Corporation into the appropriate BNYM accounts. BNYM, however, was ordered not to distribute those interest payments to the COFINA bondholders, although the order decreed the Corporation not to be in payment default.

By letter dated February 14, 2019, the IRS notified the Corporation that it was examining Form 8038-CP for the August 1, 2017 interest payment date of its Sales Tax Revenue Bonds, First Subordinate Series 2010D (Issuer Subsidy Build America Bonds) (the Series 2010D). By letter dated March 18, 2019, the IRS notified the Corporation that it was examining Form 8038- CP for the August 1, 2017 interest payment date of its Sales Tax Revenue Bonds, First Subordinate Series 2010E (Issuer Subsidy Recovery Zone Economic Development Bonds) (the Series 2010E). Subsequently, the IRS expanded the examinations to include all interest payment dates occurring after the Petition Date. The Corporation responded and intends to respond to all correspondence from the IRS and intends to cooperate with the IRS in connection with the examinations.

The Corporation is not aware of any potential violation of the Form 8038-CP related to the Series 2010D and 2010E or federal taxes and/or events that may negatively impact the holders' tax status of such bonds or any other bonds. As of the date hereof, neither the IRS nor any other entity has asserted that the Corporation has committed any such violation. The Corporation has been advised by counsel that the IRS examination for which notices were recently received will have no negative impact on the tax-exempt status of the Restructured Sales Tax Bonds issued as tax-exempt bonds by the Corporation.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

On April 10, 2019, the IRS filed an administrative expense claim against the Corporation seeking the return of $2,520,731 in post-petition direct subsidy payments made to COFINA in connection with the Series 2010D Bonds and $1,677,625 in post-petition direct subsidy payments related to the Series 2010E Bonds, totaling $4,198,357. Specifically, the claim seeks the return of direct subsidy payments made to COFINA for August 2017, November 2017, February 2018, May 2018, August 2018, and November 2018 (collectively, the Paid Subsidies). In June 2019, the IRS administrative expense claim was amended to total $4,201,956.

On June 12, 2019, FAFAA, on its own behalf and on behalf of the Corporation, filed an objection to the IRS's request for an administrative expense claim, arguing that the IRS is not entitled to a refund of the payments as COFINA had fully complied with its obligations under the applicable bond documents and tax laws, and thus the claims should be disallowed and expunged in their entirety.

On July 30, 2019, FAFAA, on its own behalf and on behalf of the Corporation, responded directly to the IRS' letter of February 12, 2019 of COFINA stating that the $4,201,956 was properly paid and that the IRS had improperly failed to pay COFINA direct subsidy payments with respect to post-petition interest in the amount of $2,663,705 with respect to the Series 2010D Bonds and the Series 2010E Bonds and requested that the IRS pay these amounts to the Corporation (collectively the Direct Subsidy Underpayments).

The current dispute between the Corporation and the IRS concerns the IRS's claim for return of the Paid Subsidies through both the filing of an administrative expense claim and an IRS audit, and a potential demand by COFINA that the IRS pay the Unpaid Subsidies.

On October 25, 2019, the IRS responded to COFINA's objection. On December 24, 2019, the Corporation filed its reply to the IRS's response. Negotiations between the Corporation and the IRS regarding settlement of the IRS claim are ongoing. A hearing before the Title III Court is scheduled for October 28, 2020.

On March 24, 2020, the IRS sent to the Corporation with respect to each of the Series 2010D Bonds and the Series 2010E Bonds, Form 886-A, Explanation of Items, and Form 4549-T, Adjustments to Credits Under Section 6431 (collectively, the 30 Days Letters).  The 30-Day Letters contain the IRS's conclusions that the post-petition direct subsidy payments described above (i.e., the $4,201,956) is required to be returned to the IRS. In addition, the IRS determined that it was not required to pay COFINA the Direct Subsidy Underpayments. Under the applicable IRS procedures, the Corporation had the ability to appeal these determinations to the IRS Office of Appeals not later than August 14, 2020, which it did on that date. FAFAA, on behalf of itself and the Corporation, intends to appeal these IRS determinations.  During last year, the Corporation established an accrual of $4.2 million for the potential loss related to this matter. During the year ended June 30, 2020, management accrued interest of $538,737 for the interest that would be owed to the IRS if its claim is successful, increasing the contingent liability to $4,740,693.  This amount is presented as accounts payables and accrued liabilities in the accompanying statement of net position (deficit).  The Corporation intends to vigorously defend itself.

**(12) Uncertainties and Other Contingencies**

***Recent Temporary Changes to the Sales and Use Tax***

***Seismic Activity***

During the last weeks of December 2019 and the first weeks of January 2020, Puerto Rico experienced a sequence of seismic events, the most significant of which was a 6.4 magnitude earthquake in the early

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

morning hours of January 7, 2020. As a result, the Governor declared a state of emergency and, on January 9, 2020, the Secretary of the Puerto Rico Department of Treasury (the Secretary of Treasury) issued Administrative Determination 20-01 providing an exemption to natural persons on the payment of sales and use taxes imposed on prepared foods and certain other drink and confectioned food products. This exemption was in effect until January 31, 2020.

On January 31, 2020, the Secretary of Treasury issued Administrative Determination 20-02 extending the sales and use tax exemption on prepared foods. This exemption, however, was limited to certain municipalities in the south of Puerto Rico that were principally affected by the seismic activity. This exemption was in effect until February 29, 2020.

### COVID-19

The outbreak of a new strain of coronavirus named SARS-CoV-2 and the disease caused thereby ("COVID-19"), an upper respiratory tract illness first identified in Wuhan, China, has spread to numerous countries across the globe, including the U.S. and Puerto Rico. COVID-19 has been characterized as a pandemic by the World Health Organization and resulted in a declaration of a national emergency by the Federal Government on March 13, 2020.

As a result of the COVID-19 pandemic, the Federal Government and the Government of Puerto Rico have implemented numerous measures to address the pandemic. For example, on March 15, 2020, the Governor issued Executive Order 2020-20 to implement the closure of governmental and private sector operations in order to combat the effects of COVID-19 in Puerto Rico. Although the Governor has modified this order several times, the government and private sector continue to be affected by partial closures, limitations on group activities, limited operating hours and limitations on the number of consumers that may patronize an establishment.

As a result of the COVID-19 emergency, the Secretary of Treasury has also issued several related administrative determinations. Most of these determinations provided or currently provide SUT exemptions on certain items, including items necessary to prevent the spread of COVID-19 and certain foods.

### Impact on the Corporation

On November 21, 2019, BNYM, as trustee for the COFINA Bonds, had received sales and use taxes totaling $436,996,352, which equals the amount of the COFINA Revenues for fiscal year 2020. Consistent with the COFINA Plan of Adjustment, upon BNYM's receipt of the COFINA Revenues for fiscal year 2020, the Government is entitled to receive all collections from the COFINA Pledged Taxes until the end of fiscal year 2020 (June 30, 2020). As a result, the above-described temporary measures have not had any effect on the Corporation's receipt of sales and use tax collections for fiscal year 2020. On July 1, 2020, BNYM began to receive collections from the COFINA Pledged Taxes until it receives all COFINA Revenues for fiscal year 2021, which amount to $454,472,448.

Because of the evolving nature of the COVID-19 pandemic and the federal and local responses thereto, the Corporation cannot predict the extent or duration of the outbreak or what impact it may have, if any, on the Corporation's receipt of sales and use tax collections for fiscal year 2021. While the effects of COVID-19 may be temporary, they may alter the behavior of businesses and people in a manner that may have negative

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

impacts on global, national and local economies, including the collection of sales and use taxes by the Commonwealth.

**(13)   The Operating Reserve Fund Cap**

At the Plan of Adjustment's effective date, the Corporation's general fund received $15 million, available for its operating expenses, plus additional funds remaining prior to the closing date that were held at the Corporation.  In addition to these funds, operating expenses will be covered by investment earnings derived from interest income generated by funds deposited in the Corporation's bond trustee accounts held for the benefit of the Corporation prior to distribution.  In each fiscal year, an authorized officer of the Corporation will certify in writing to the Trustee the necessary amounts to deposit in the operating reserve fund established pursuant to the Trust Agreement, which amounts may not exceed the operating reserve fund cap of $15 million established in the Trust Agreement.  During the year ended June 30, 2020, the amount of $833,500 was transferred to the general fund from the debt service fund to comply with this requirement. The aggregate current balance as of June 30, 2020 of deposits placed with commercial banks was approximately $21.7 million, of which $15 million are currently on deposit in an operational account at a Puerto Rico banking institution (the Operations Account), and the remainder is on deposit in the Corporation's general account.

**(14)   Inter-fund Transfers**

The following table includes the inter-fund transfers for the year ended June 30, 2020.  This inter-fund transfers were made to comply with the requirements of the Master Trust Indenture, refer to Note 13 to the basic financial statements for further information.

| Transfer out | Transfer in | Transfer for | Amount |
|---|---|---|---|
| Debt Service Fund | General Fund | Deposit to COFINA Operating Reserve Fund | $ 833,500 |

**(15)   Litigation Related to or Resolved by the COFINA Title III Case**

**a.   *Oversight Board Commencement of Title III Cases, Mediation in the Title III Case, and Key Contested Matters in the Title III Case***

On May 3, 2017, the Oversight Board, at the request of the Governor, commenced a Title III case for the Commonwealth by filing a petition for relief under Title III of PROMESA in the Title III Court. On May 5, 2017, the Oversight Board, at the request of the Governor, followed with a similar filing for the Corporation in the Title III Court.

***Bank of New York Mellon v. COFINA, et al.*, Adv. Proc. No. 17-00133 (D.P.R.)**

On May 16, 2017, plaintiff BNYM, in its capacity as trustee for the sales tax revenue bonds issued by COFINA, commenced an adversary proceeding against COFINA and certain creditors in COFINA's Title III case (the Interpleader Action) for interpleader to preserve the funds generated from the Pledged Sales Tax held by BNYM in trust pending resolution by the Title III Court of all disputes with respect

38

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

to ownership of the funds (the Disputed Funds).  On May 30, 2017, the Title III Court issued an order [Adv. Proc. No. 17-133, Docket No. 110] (the Interpleader Order) in which it ordered BNYM, commencing with the $16.3 million bond payment due on June 1, 2017, to interplead and hold all disputed funds in the accounts into which they had been deposited, on behalf of the party or parties ultimately determined by the Court to be entitled to such funds.  The Title III Court's order allowed creditors to litigate competing claims to the funds held by BNYM.  Through the Interpleader Action, parties and parties in interest asserted claims to the Disputed Funds based on, among other things, the existence or non-existence of an uncured default arising from certain actions of the Commonwealth and COFINA, including the passage of a fiscal plan compliance law enabling the Governor to use Pledged Sales Taxes to cover deficiencies in the Commonwealth's cash flow under certain circumstances.

From June 2017 to September 2017, several parties and parties in interest, including BNYM and certain creditors, served document requests and deposition subpoenas on various Puerto Rico Government entities, affiliates, and officials, including COFINA, GDB, the Commonwealth, FAFAA, and the Oversight Board. The subpoenaed entities and individuals produced documents, but FAFAA and the Oversight Board (on behalf of itself and COFINA) each agreed to a set of stipulated facts in lieu of depositions. On November 6, 2017, several parties in interest, including BNYM and certain creditors, filed motions for summary judgment. Briefing on the summary judgment motions was completed on January 5, 2018. On September 27, 2018, in light of the agreements and compromises under the Amended PSA (discussed above), the Title III Court, *sua sponte*, entered an order terminating the pending summary judgment motions without prejudice to restoration of the motions on or after October 1, 2018. [Adv. Proc. No. 17-00133, ECF. No. 518]. On November 27, 2018, BNYM moved to reinstate its motion for partial summary judgment, in which BNYM requested declaratory relief relating to the existence or non-existence of a default or an event of default under the Corporation's bond resolution (the Motion to Reinstate).

On February 5, 2019, the Title III Court confirmed the COFINA Plan of Adjustment.  On February 12, 2019, the COFINA Plan of Adjustment was substantially consummated and became effective, thereby quieting the Corporation's title to the COFINA Revenues, and definitively resolving as a legal matter all questions of title to those revenues and the Corporation's sole and exclusive ownership of them.  The Disputed Funds have been distributed in accordance with the terms and provisions of the COFINA Plan of Adjustment.  On February 19, 2019, the parties that have appeared in the Interpleader Action filed the Stipulation and Agreed Order of Dismissal of Interpleader Action (the Stipulation of Dismissal) [Adv. Proc. No. 17-00133, ECF No. 549], in which they stipulated and agreed that the Motion to Reinstate is withdrawn by BNYM and that the Interpleader Action and all claims and causes of action asserted or that could have been asserted in the Interpleader Action be dismissed, with prejudice, effective as of February 12, 2019; provided, however, that the dismissal of certain claims, counterclaims or causes of action for gross negligence, willful misconduct, or intentional fraud asserted or that could have been asserted by BNYM against Ambac, or by Ambac against BNYM, is without prejudice; and provided, further, that the dismissals without prejudice shall have no effect under Rule 41(a)(1) of the Federal Rules of Civil Procedure in the Ambac Action (as defined in the COFINA Plan of Adjustment). On February 20, 2019, the Title III Court issued an order in accordance with the Stipulation of Dismissal.

As discussed in Note 4 to the basic financial statements, there are ongoing legal challenges to the Confirmation Order that, if resolved adversely to COFINA, could, among other things, affect the validity

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

of the amendments made by Act No. 241-2018 and the validity or enforceability of the COFINA Plan of Adjustment, including the dismissal of this adversary proceeding.

***Cooperativa de Ahorro y Crédito Abraham Rosa v. Commonwealth of Puerto Rico*, Case No. 18-00028-LTS (D.P.R.)**.

On March 22, 2018, several credit unions chartered under Puerto Rico law, known as the cooperativas (the Cooperativas), filed an adversary complaint against the Commonwealth, the Oversight Board, and other Commonwealth's instrumentalities (including COFINA), seeking a declaratory judgment that their Puerto Rico debt holdings are not dischargeable and seeking monetary damages for alleged fraud in issuing and encouraging local credit unions to purchase Puerto Rico debt service instruments. On August 6, 2018, the Oversight Board, for itself and as representative of COFINA, the Commonwealth and certain other instrumentalities, moved to dismiss the complaint. Also, on August 6, 2018, GDB filed a separate motion to dismiss. In addition, several parties filed joinders to the motions to dismiss or were granted leave from the Title III Court to file joinders.

On February 5, 2019, the Title III Court issued its Confirmation Order, confirming the COFINA Plan of Adjustment. On February 12, 2019, the COFINA Plan of Adjustment was substantially consummated and became effective, thereby quieting the Corporation's title to the COFINA Revenues, and definitively resolving as a legal matter all questions of title to those revenues and the Corporation's sole and exclusive ownership of them. Pursuant to paragraph 30 of the Confirmation Order, "the plaintiffs in that certain adversary proceeding before the Title III Court, captioned *Cooperativa de Ahorro y Credito Abraham Rosa, et al. v. Commonwealth of Puerto Rico, et al.*, Adv. Proc. No. 18-00028, shall be entitled to continue pursuit of such litigation against all parties other than COFINA and Reorganized COFINA, subject to all available rights and defenses with respect to claims and causes of action asserted therein."

The Cooperativas filed a Notice of Appeal in the Title III Court and amended their previously filed adversary complaint in response to the confirmation of the COFINA Plan of Adjustment and after their motion to reconsider the confirmation of the COFINA Plan of Adjustment was denied by the Title III Court. The appeal is docketed with the First Circuit under case number 19-1391 (the Cooperativas Appeal). On June 28, 2019, FAFAA and the Oversight Board filed a motion to dismiss the Cooperativas Appeal as equitably moot on a similar basis as argued in the motion to dismiss the Initial Appeals (as defined below). On October 4, 2019, the First Circuit denied the motion to dismiss the Cooperativas Appeal without prejudice to reconsideration by the First Circuit panel that will decide the appeal on the merits. On December 4, 2019, the Cooperativas filed its opening brief, which was refiled on December 23, 2019, in compliance with a First Circuit order to file a conforming brief. The Oversight Board and FAFAA filed an opening brief on February 21, 2020. The Cooperativas filed its reply brief on April 30, 2020. On July 31, 2020, the First Circuit heard oral argument on the Cooperativas Appeal and the other COFINA Appeals (as defined below).

On July 22, 2019, defendants filed motions to dismiss the amended complaint. On December 6, 2019, plaintiffs filed their Motion for Leave to File Second Amended Complaint, which the defendants objected to on February 4, 2020. The plaintiffs filed their reply to the defendants' objection on February 21, 2020. The Title III Court considered the motion for leave to amend on submission, and on April 14, 2020 entered an order granting the plaintiffs' motion. On April 16, 2020, the plaintiffs filed their Second Amended Complaint. On April 20, 2020, the defendants filed motions to dismiss. On April 24, 2020, AAFAF filed a joinder to the Oversight Board's motion to dismiss. On May 21, 2020, the Oversight

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

Board filed a supplemental memorandum of law in support of the motion to dismiss, to which AAFAF joined the same day. On August 11, 2020 and 12, 2020 the plaintiffs filed oppositions to the motions to dismiss. The defendants' replies in support of the motions to dismiss are due on October 20, 2020.

*Manuel Natal-Albelo, et al. v. The Fin. Oversight and Mgmt. Bd. for Puerto Rico*, **Case No. 19-00003-LTS (D.P.R. Jan. 14, 2019) and the appeals of the COFINA Plan of Adjustment (***Pinto Lugo, et al v. Commonwealth of Puerto Rico, et al***, Case No. 19-1181 (1st Cir. 2019); ***Elliott, et al v. Commonwealth of Puerto Rico, et al***, Case No. 19-1182 (1st Cir. 2019); ***Coop. de Ahorro y Cred. de Rin, et al v. COFINA, et al***, Case No. 19-1391 (1st Cir. 2019); ***Hein v. FOMB, et al***, Case No. 19-1960 (1st Cir. 2019))**

On December 6, 2018, Manuel Natal Albelo, at-large independent representative of the House of Representatives of Puerto Rico, Rene Pinto-Lugo, and others, including VAMOS and various unions (collectively, the Pinto-Lugo Plaintiffs), filed a complaint in the Commonwealth of Puerto Rico Court of First Instance, San Juan Superior Court (the Superior Court) (Civil No. SJ2018cv01569), against the Commonwealth and Carlos Mendez Nunez, in his official capacity as President of the House of Representatives of Puerto Rico (the Civil Action).

On December 17, 2018, the complaint was served on the Puerto Rico Department of Justice. The complaint contains two causes of action. The first cause of action alleges that the legislative process leading to the passage of Puerto Rico House Bill 1837 and the enactment of Act 241-2018, which created the legal structure necessary to execute the Corporation's restructuring, was flawed and violated Puerto Rico House regulations as well as Natal's constitutional and civil rights under the Puerto Rico and United States Constitutions because he was not allowed to participate in debate prior to the bill's approval. The first cause of action seeks a declaration that Act 241 is unconstitutional. The second cause of action alleges that Act No. 91 (the COFINA legislation, as amended) and Act No. 241-2018 (which is an amendment to the COFINA legislation, and which was signed into law by the Governor on November 15, 2018), violate the debt-limit and balanced-budget provisions of the Commonwealth Constitution.

On January 14, 2019, the Oversight Board, on behalf of the Commonwealth and the Corporation, filed a notice of removal of the Civil Action to the Title III Court, where the Civil Action was docketed as Adversary Proceeding No. 19-00003-LTS (D.P.R.), captioned *Manuel Natal-Albelo, et al. v. Financial Oversight and Management Board for Puerto Rico, et al.* (the Adversary Proceeding). On January 15, 2019, the Title III Court referred the Adversary Proceeding to Magistrate Judge Judith Dein for general pre-trial management.

On February 5, 2019, the Title III Court issued its Confirmation Order, confirming the COFINA Plan of Adjustment, and its Findings and Conclusions. In Paragraph 3 of the Findings and Conclusions, the Title III Court took judicial notice of Act 241 (defined as the New Bond Legislation; see Exhibit A of the Findings and Conclusions) and found that the Act "has been duly enacted." *See also* Paragraph 120 of the Findings and Conclusions (concluding that "[t]he Commonwealth's Legislative Assembly passed, and its Governor signed, the New Bond Legislation" and that "pursuant to Puerto Rico case law, legislation of the Commonwealth is presumed to be valid if enacted by the Legislative Assembly of Puerto Rico and signed into law by the Governor."); n.14 of the Findings and Conclusions (overruling the objections by Manuel Natal-Albelo and his co-objectors to the constitutionality of the New Bond Legislation under the United States and Commonwealth's Constitutions). On February 12, 2019, the COFINA Plan of Adjustment became effective and was substantially consummated, thereby quieting

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

the Corporation's title to the COFINA Revenues, and definitively resolving as a legal matter all questions of title to those revenues and the Corporation's sole and exclusive ownership of them.

On March 21, 2019, the Pinto-Lugo Plaintiffs filed motions to remand the Adversary Proceeding to the Superior Court, asserting that (i) the Title III Court lacks subject matter jurisdiction over the complaint because it pertains solely to violations of the Commonwealth's Constitution and Puerto Rico statutory law—not federal law—and such violations do not involve rights created by Title III of PROMESA, and (ii) the Title III Court lacks subject matter jurisdiction over the complaint because the Oversight Board itself is unconstitutional. As a result, the Pinto-Lugo Plaintiffs claim that the complaint can only be adjudicated by a local Puerto Rico court.  On March 24, 2019, the Oversight Board moved to strike the Pinto-Lugo Plaintiffs' remand motions.  On April 18, 2019, Magistrate Judge Dein allowed the Oversight Board's motion to strike and permitted the Pinto-Lugo Plaintiffs to file one consolidated motion to remand, which they filed on May 10, 2019.  The Oversight Board filed an opposition brief on May 31, 2019.  Also, on May 31, 2019, AAFAF filed a motion to intervene in the Adversary Proceeding and an opposition to the pending remand motion.  On July 31, 2019, Magistrate Judge Dein denied the Pinto-Lugo Plaintiffs' motion to remand. On August 13, 2019, Magistrate Judge Dein took note of the agreement among the parties and ordered that the stay of the Adversary Proceeding is continued in effect until the final resolution of the COFINA Appeals (as described below).

On February 18, 2019, the Pinto-Lugo Plaintiffs filed a Notice of Appeal in the Title III Court [Case No. 17-03283, ECF No. 5155]. On February 22, 2019, the appeal was docketed with the United States Court of Appeals for the First Circuit (the First Circuit) under case number 19-1181.  An additional appeal of the confirmation of the COFINA Plan of Adjustment, brought by certain COFINA's junior bondholders, including Mark Elliott, Peter Hein, Lawrence Dvores, was docketed with the First Circuit under case number 19-1182 (together with case number 19-1181, the Initial Appeals, and the appellants in 19-1181 and 19-1182, the Initial Appellants).

On April 12, 2019, FAFAA and the Oversight Board filed a motion to dismiss the Initial Appeals as equitably moot, arguing that because the appellants failed to seek a stay of the COFINA Plan of Adjustment pending appeal and the COFINA Plan of Adjustment was substantially consummated on February 12, 2019, it would be unfair to innocent third parties to unwind the hundreds of transactions completed to adjust approximately $17.64 billion of COFINA's debt. On August 7, 2019, the First Circuit denied the motion to dismiss the Initial Appeals without prejudice to reconsideration by the panel that will decide the appeal on the merits. The Initial Appellants filed their opening briefs on November 7, 2019.  Peter Hein, one of the Initial Appellants, also filed an individual appeal, docketed with the First Circuit under case number 19-1960 (the Hein Appeal).  Mr. Hein filed his opening brief on December 16, 2019.  The Oversight Board and FAFAA filed an opening brief on February 14, 2020.  The Initial Appellants filed their reply briefs on April 30 and May 1, 2020.  Mr. Hein also filed a reply brief in the Hein Appeal on April 30, 2020. On July 31, 2020, the First Circuit heard oral argument on the Cooperativas Appeal and the other COFINA Appeals.

Accordingly, there are ongoing legal challenges to the Confirmation Order that, if resolved adversely to COFINA, could, among other things, affect the validity of the amendments made by Act No. 241-2018 and the validity or enforceability of the Indenture and the New COFINA Bonds.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

*b.  Appointments Clause Litigation*

On August 7, 2017, a group of GO bondholders led by Aurelius Investment, LLC, Aurelius Opportunities Fund, LLC, and Lex Claims, LLC (collectively, Aurelius) filed a motion to dismiss the Title III petitions. In the motion, Aurelius argued that the appointment of the Oversight Board members violated the "Appointments Clause" of the United States Constitution, which requires that "principal officers" of the United States be appointed by the President and confirmed by the Senate. The Title III Court denied Aurelius' motion to dismiss, and Aurelius appealed to the United States Court of Appeals for the First Circuit. On February 15, 2019, the First Circuit reversed the Title III Court, holding that the Oversight Board members' appointment process violated the Appointments Clause.  On June 1, 2020, the United States Supreme Court issued an opinion reversing the First Circuit.

*c.  The Oversight Board Investigation*

On August 2, 2017, the Oversight Board announced its intention, pursuant to its authority under PROMESA, to conduct an investigation to review the fiscal crisis and its contributors, and examine Puerto Rico's debt and its issuance, including disclosure and selling practices. To that end, the Oversight Board named a special investigation committee (the Special Investigation Committee) and conducted a competitive process to identify and select an independent firm to conduct the investigation. On September 13, 2017 the Oversight Board announced that the Special Investigation Committee retained an independent investigator to carry out a review of the Commonwealth's debt and its connection to the current financial crisis. The Special Investigation Committee considers this investigation an integral part of the Oversight Board's mission to restore fiscal balance and economic opportunity and to promote the Commonwealth's reentry to the capital markets. The independent investigator's work concluded, and the Oversight Board published the independent investigator's final report on August 20, 2018 (the Debt Investigation Report). The Debt Investigation Report provides an analysis of the historical and more recent macroeconomic and political factors contributing directly and indirectly to the Commonwealth's fiscal and economic crisis, the Commonwealth's municipal bond issuance process, and legislative efforts to restructure the debt, as well as the Oversight's Board investigative findings, policy recommendations, and identification of potential claims and matters for regulatory attention.

The Debt Investigation Report presented findings and recommendations on the following areas:

- GDB
- Puerto Rico Public Utilities (PREPA and PRASA)
- The Corporation or COFINA
- Employee's Retirement System of the Commonwealth (ERS)
- Puerto Rico's Budgeting, External Reporting, and Accounting Functions
- Calculation of the Constitutional Debt Limit
- Credit Rating Agencies (CRAs)
- Selling Practices for Puerto Rico-Related Bonds
- Puerto Rico's Government Ethics Framework
- Issuers' Use of Interest Rate Swaps
- Puerto Rico's Lack of a Clear Mechanism for Validating Puerto Rico-Related Bonds Before They Issue

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2020

- Possession Tax Credit

Finally, the independent investigator presented an overview of potential causes of action. The Debt Investigation Report in its entirety can be found on the Oversight Board's website.

On August 28, 2018, the Oversight Board appointed its special claims committee (the Special Claims Committee) and delegated to the Special Claims Committee any and all authority of the Oversight Board to review the findings in the Debt Investigation Report and to take any appropriate steps, including, but not limited to, recommending and/or initiating the negotiation and/or prosecution of claims based on the findings in the Debt Investigation Report on behalf of the Title III debtors for the benefit of all creditors and parties in interest in the Title III cases. The Special Claims Committee is entitled, in its full discretion, to determine the scope of any further action, including, but not limited to, additional investigation, as well as claims to be pursued, and to retain such advisors, consultants, attorneys or other advisors as it in its sole discretion sees fit. On October 25, 2018, the Oversight Board requested proposals for counsel to assist the Special Claims Committee regarding consideration of potential claims described in the Debt Investigation Report. On November 28, 2018, the Special Claims Committee signed the contract with the firm that will provide those services. The Special Claims Committee did not pursue any claims related to COFINA bond issuances.

**(16) Advance Refunding and Deceased Debt**

On November 23, 2011, the Corporation issued $397.7 million Series 2011A-1 bonds. Part of the proceeds from the Series 2011A-1 bonds was used to advance part of the outstanding Series 2009A bonds aggregating $52,780,000 and bearing interest ranging from 4.00% to 6.125%. The Corporation used approximately $65,867,000 from the net proceeds of the issued Series 2011A-1 bonds and other funds to purchase U.S. government securities, which were deposited in an irrevocable trust fund with an escrow agent to provide for all future debt services payments of the refunded Series 2009A bonds. On November 23, 2011, the Corporation also issued its Series 2011 B bonds amounting to approximately $45.6 million to advance part of the outstanding Series 2009 B bonds aggregating $38,490,000 and bearing interest at 6.05%. The Corporation used the net proceeds of the issued Series 2011B bonds and other funds to purchase U.S. government securities, which were deposited in an irrevocable trust fund with an escrow agent to provide for all future debt services payments of the refunded Series 2009 B bonds. Accordingly, the Series 2009A and the Series 2009B refunded bonds were defeased and the liabilities were removed from the statement of net position. During the year ended June 30, 2020, the outstanding balance of the advance refunded bonds was paid in full.

**(17) Subsequent Events**

Subsequent events were evaluated through September 23, 2020, the date the basic financial statements were available to be issued, to determine if any such events should either be recognized or disclosed in the June 30, 2020 basic financial statements.