**Exhibit A**

**Committee Letter**

[July __], 2021

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE COMMONWEALTH OF PUERTO RICO, *ET AL.***

**c/o Paul Hastings LLP, 200 Park Avenue, New York, New York 10166**

To the Holders of Class 55 CW General Unsecured Claims, Class 51 Eminent Domain Claims, and/or Class 63 ERS General Unsecured Claims:

The Official Committee of Unsecured Creditors (the "Committee"),[1] appointed in the Title III cases of the Commonwealth of Puerto Rico and certain of its instrumentalities (collectively, the "Debtors"),[2] is writing to you in connection with the Debtors' solicitation of your vote with respect to the enclosed proposed *[____] Amended Title III Joint Plan Of Adjustment of the Commonwealth of Puerto Rico, et al.* dated [____], 2021 (the "Plan").[3] You should carefully read all the materials that accompany this letter (as it may be supplemented, the "Committee Letter"), including the instructions for completing and mailing your Ballot. All Ballots must be **received** by the Claims and Noticing Agent by **[October 4], 2021 at 5:00 p.m. (Atlantic Standard Time) (the "Voting Deadline")** to be counted.

**THE COMMITTEE HAS REACHED A GLOBAL SETTLEMENT WITH THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO (THE "OVERSIGHT BOARD") REGARDING THE TERMS OF THE PLAN. ACCORDINGLY, THE COMMITTEE SUPPORTS THE PLAN AND URGES ALL HOLDERS OF CLASS 55 CW GENERAL UNSECURED CLAIMS, CLASS 51 EMINENT DOMAIN CLAINS, AND CLASS 63 ERS GENERAL UNSECURED CLAIMS TO VOTE TO ACCEPT THE PLAN.**

**A. Introduction**

The Committee is a fiduciary to holders, like you, of unsecured claims[4] against the Debtors, and it has worked tirelessly during the Debtors' Title III cases to protect your interests.

---

[1] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[2] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[3] All capitalized terms used but not defined in this letter have the meanings set forth in the Plan.

[4] Unsecured claims are claims that are not secured by any collateral.

Among other things, the Committee has objected to billions of dollars of bond claims in an effort to free up more resources for the payment of unsecured claims and fought for more transparency and accountability in the Title III process.

The Committee's members were appointed by the United States Trustee, a unit of the United States Department of Justice, to represent, in a fiduciary capacity, the interests of all general unsecured creditors of the Commonwealth and ERS (and other debtors under Title III of PROMESA). These unsecured creditors include, for example, employees, vendors, suppliers, service providers, parties with court-awarded damages claims, and tax refund claimants. The Committee's seven members serve without pay and represent a broad cross-section of the general unsecured class. Committee members include, among others, suppliers of goods and services, litigation claimants, and labor unions.

B.  **Committee's Recommendation**

**The Committee is pleased to report that, as a result of the mediation process, it has reached a global settlement with the Oversight Board, which settlement is reflected in the Plan and related documents.**

The Plan takes into account the financial situation of the Commonwealth and, in that regard, provides significant recoveries for holders of allowed[5] CW General Unsecured Claims in Class 55 and holders of allowed Eminent Domain Claims in Class 51, as follows:[6]

- The Plan provides an aggregate consideration to or for the benefit of allowed CW General Unsecured Claims, allowed Eminent Domain Claims, and allowed Convenience Claims consisting of:
    - cash in the amount of $575 million;[7] and
    - the net recoveries from certain avoidance and recovery actions to be pursued by the Avoidance Action Trust.[8]

    This represents an **increase of approximately $414 million** in the aggregate cash consideration compared to earlier versions of the plans of adjustment filed

---

[5] The filing of a proof of claim does not automatically mean that you will receive a recovery under the Plan. Only claims that are <u>allowed</u> will be entitled to receive a recovery.

[6] The Committee notes that your ultimate percentage recovery will be determined by the aggregate amount of allowed CW General Unsecured Claims in Class 55, Eminent Domain Claims in Class 51, and ERS General Unsecured Claims in Class 63. The Committee cannot provide any assurances regarding the aggregate amount of CW General Unsecured Claims, Eminent Domain Claims, or ERS General Unsecured Claims that will ultimately be allowed, or the rate of recovery that will ultimately be realized by any holder of such a claim.

[7] The $575 million cash consideration will be made available to fund (a) distributions to holders of allowed CW General Unsecured Claims and allowed Eminent Domain Claims, (b) up to $15 million to fund the Avoidance Action Trust (which will pursue avoidance actions and other recovery actions for the benefit of CW General Unsecured Claims and Eminent Domain Claims), (c) expenses for claims-related work by the Avoidance Action Trust Board, and (d) cash required to satisfy allowed Convenience Claims.

[8] Eminent Domain Claims are also entitled to a distribution of monies on deposit with the Court of First Instance with respect to the condemned property.

(collectively, the "Prior Plan") (which provided an aggregate cash consideration of approximately $161 million).[9]

- Based on the Oversight Board's estimate of the aggregate amount of allowed CW General Unsecured Claims and allowed Eminent Domain Claims (*i.e.*, approximately $3.1 billion), **the aggregate cash consideration to be made available under the Plan represents an effective recovery rate of approximately 18.3%.**[10] Under the Prior Plan, the corresponding recovery percentage had been only 5.1%.

Moreover, as part of the Committee's efforts and the global settlement reached, the Committee was able to increase the threshold for Convenience Class treatment (which provides such creditors with a 100% recovery on account of their allowed claims (without post-petition interest)) from $10,000 per claim to **$20,000 per claim**.

The Plan also includes other modifications for the benefit of general unsecured creditors, including that **the Committee representatives on the Avoidance Action Trust Board**[11] will have an opportunity to participate in the ongoing claims reconciliation process.

Furthermore, the Plan provides that holders of allowed ERS General Unsecured Claims in Class 63 will receive their *pro rata* share of (i) cash in the amount of $500,000 and (ii) the net recoveries of certain avoidance actions. Based on the Oversight Board's estimate of the aggregate amount of ERS General Unsecured Claims (*i.e.*, approximately $1.5 million), **the estimated recovery for holders of such allowed claims is 33.18%**.[12]

**For all these reasons, the Committee recommends that you vote to <u>accept</u> the Plan.**

The Committee acknowledges that it was a difficult decision to enter into the global settlement with the Oversight Board, and the Committee is also aware that, even under the global settlement, the recovery percentage for holders of allowed CW General Unsecured Claims and allowed Eminent Domain Claims is not as high as the recovery percentages of other creditors of the Commonwealth.

However, the Committee determined that litigating confirmation of the Prior Plan was not preferable to accepting the global settlement. This is so because, even though the Committee believes that it had strong arguments in opposition of the Prior Plan, there could have been no assurances that the Committee would have prevailed with its challenges to the

---

[9] Under the Prior Plan, the aggregate cash consideration made available to or for the benefit of holders of allowed CW General Unsecured Claims, allowed Eminent Domain Claims, and allowed Convenience Claims consisted of (a) $125 million in cash distributions, (b) the Committee's estimate of approximately $26 million in distributions to Convenience Claims, and (c) $10 million of funding for the Avoidance Action Trust.

[10] The estimated recovery percentage does not account for (a) net recoveries of the Avoidance Action Trust and (b) in the case of Eminent Domain Claims, distribution of monies on deposit with the Court of First Instance with respect to the condemned property.

[11] Two of the three members of the Avoidance Action Trust Board will be selected by the Committee.

[12] The recovery percentage does not include any net recoveries from the litigation trust.

Prior Plan, and if its challenges had failed, the aggregate cash consideration to holders of allowed CW General Unsecured Claims, allowed Eminent Domain Claims, and allowed Convenience Claims would have been materially lower (*i.e.*, approximately $161 million) than the aggregate cash consideration to be made available under the global settlement (*i.e.*, $575 million). In light of the materially higher cash consideration under the Plan (compared to the Prior Plan), the Committee, as a fiduciary for all unsecured creditors of the Commonwealth, determined it would be preferable not to "roll the dice" and litigate confirmation of the Prior Plan.

C. <u>**Submitting Your Ballot**</u>

The Oversight Board has provided Ballots herewith for holders of claims in Classes 51, 55 and 63 to utilize in order to vote to accept or reject the Plan and return in accordance with the procedures set forth in the ballot instruction sheet and the Disclosure Statement. **Please read the directions on the Ballot carefully and complete your Ballot in its entirety before returning it. Your Ballot must be returned so as to be actually received by the Balloting Agent no later than the Voting Deadline, *i.e.*, 5:00 p.m. (Atlantic Standard Time) on [October 4], 2021**.

\* \* \*

The positions taken by the Committee in this Letter are those of the Committee and/or its advisors and have not been approved by or endorsed by the Bankruptcy Court. Each creditor (including individual members of the Committee) must make its own independent decision as to whether or not the Plan is acceptable to that creditor and should consult with its own legal and/or financial advisor(s) before voting to accept or reject the Plan.

**YOU ARE URGED TO CAREFULLY READ THE DISCLOSURE STATEMENT AND THE PLAN. THE DESCRIPTION OF THE PLAN IN THIS COMMITTEE LETTER IS INTENDED TO BE ONLY A SUMMARY.**

**THIS COMMITTEE LETTER MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE COMMITTEE'S VIEWS ON HOW TO VOTE ON THE PLAN, AND THE INFORMATION CANNOT BE RELIED UPON FOR ANY OTHER PURPOSE. THE COMMITTEE DOES NOT GUARANTEE ANY PARTICULAR RESULT IN THE DEBTORS' TITLE III CASES. THE COMMITTEE CANNOT PROVIDE ANY ASSURANCES REGARDING THE AGGREGATE AMOUNT OF CW GENERAL UNSECURED CLAIMS, EMINENT DOMAIN CLAIMS, OR ERS GENERAL UNSECURED CLAIMS THAT WILL ULTIMATELY BE ALLOWED, OR THE RATE OF RECOVERY THAT WILL ULTIMATELY BE REALIZED BY ANY HOLDER OF SUCH A CLAIM.**

**THIS COMMUNICATION DOES NOT CONSTITUTE, AND SHALL NOT BE CONSTRUED AS, A SOLICITATION BY ANY INDIVIDUAL MEMBER OF THE COMMITTEE.**

***THE OFFICIAL COMMITTEE OF***
***UNSECURED CREDITORS OF***
***THE COMMONWEALTH OF PUERTO RICO, ET AL.***