Hearing Date: August 4, 2021 at 9:30 a.m. (Atlantic Standard Time)
Objection Deadline: July 20, 2021 at 4:00 p.m. (Atlantic Standard Time)

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## MOTION OF AMBAC ASSURANCE CORPORATION PURSUANT TO RULE 3018(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR TEMPORARY ALLOWANCE OF ITS CLAIMS FOR VOTING PURPOSES

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

To the Honorable United States District Judge Laura Taylor Swain:

Ambac Assurance Corporation ("Ambac") respectfully requests entry of an order temporarily allowing its claims against the Commonwealth of Puerto Rico (the "Commonwealth") solely for the purpose of voting on the Plan (as defined below) pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure ("Rule 3018(a)"), made applicable to this proceeding by sections 301 and 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").  In support of this motion, Ambac respectfully states as follows:

## FACTUAL BACKGROUND

1. On May 3, 2017, the Financial Oversight and Management Board (the "Board") filed a voluntary petition for relief pursuant to section 304(a) of PROMESA on behalf of the Commonwealth, commencing the above-captioned case under Title III thereof.

2. On May 11, 2021, the Board filed the Third Amended Title III Joint Plan of Adjustment of The Commonwealth of Puerto Rico, *et al.* (ECF No. 16740[2]) (since amended by the Fifth Amended Title III Joint Plan of Adjustment of The Commonwealth of Puerto Rico, *et al.* (ECF No. 17306), and as it may be further amended or modified, the "Plan") and the Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of The Commonwealth of Puerto Rico, *et al.* (ECF No. 16741) (since amended by the Disclosure Statement for the Fifth Amended Title III Joint Plan of Adjustment of The Commonwealth of Puerto Rico, *et al.* (ECF No. 17308), and as it may be further amended or modified, the "Disclosure Statement").  On May 13, 2021, the Board filed a motion seeking approval of the Disclosure Statement and of certain related deadlines and procedures (ECF No. 16756) (the "DS Approval Motion").

---

[2] Unless otherwise specified herein, ECF references shall be to Case No. 17-bk-3283-LTS.

3. Among other forms of relief, the DS Approval Motion seeks disallowance, for voting purposes, of any claim with respect to which an objection has been asserted at least twenty days before the Voting Deadline.[3] (*See* DS Approval Motion ¶ 96(i).) The DS Approval Motion also provides that any creditor may file and serve a motion, pursuant to Rule 3018(a), seeking temporary allowance of its claim "for purposes of voting to accept or reject the Plan." (*Id.* ¶ 98.)

4. Ambac is a monoline insurer that has guaranteed the principal and interest payments on, among other Puerto Rico obligations, certain bonds (the "Revenue Bonds") issued by certain of the Commonwealth instrumentalities, including the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Convention Center District Authority ("CCDA"), and the Puerto Rico Infrastructure Financing Authority ("PRIFA" and, together with HTA and CCDA, the "Instrumentalities"). As set forth more fully in the Proofs of Claim Nos. 50420, 83010 and 122277 timely filed by Ambac in this Title III Case (the "Proofs of Claim"), Ambac has numerous claims against the Commonwealth, under various legal theories, arising from the Commonwealth's failure to honor its obligations to transfer certain pledged taxes, fees, and other revenues (the "Pledged Revenues") to the Instrumentalities for payment of the Revenue Bonds (the "Clawback Claims"). The Plan classifies the Clawback Claims in Class 56 (with respect to the Revenue Bonds issued by HTA), Class 57 (with respect to the Revenue Bonds issued by CCDA), and Class 58 (with respect to the Revenue Bonds issued by PRIFA).[4]

5. On January 16, 2020, the Board filed three adversary proceedings against, among others, Ambac and other monoline insurers of the Revenue Bonds (Financial Guaranty Insurance Company ("FGIC"), Assured Guaranty Corp. and Assured Guaranty Municipal Corp.

---

[3] Capitalized terms not otherwise defined herein have the respective meanings ascribed to them in the Plan.

[4] The Plan does not address Ambac's claims against the Commonwealth arising from PROMESA § 407.

- 2 -

(collectively, "Assured"), and National Public Finance Guarantee Corporation ("National" and, together with Ambac, Assured, and FGIC, the "Monoline Insurers")), seeking, among other things, to disallow the Monoline Insurers' claims against the Commonwealth in their entirety (the "Revenue Bond Adversary Proceedings"). (*See* Case Nos. 20-ap-00003-LTS; 20-ap-00004-LTS, and 20-ap-00005-LTS.)

6. On May 5, 2021, the Board, as representative of the Commonwealth and certain other Debtors, entered into a Plan Support Agreement (the "HTA/CCDA PSA") with, among others, Assured and National, in their capacities as insurers, asserted holders, deemed holders, or subrogees with respect to HTA Revenue Bonds and/or CCDA Revenue Bonds. Among other things, the HTA/CCDA PSA purports to settle Assured's and National's claims corresponding to the Clawback Claims.

7. On May 26, 2021, upon the joint request of the Board, Assured, and National, the Court stayed the Revenue Bond Adversary Proceedings solely with respect to Assured and National. (*See* Case No. 20-ap-00003-LTS, ECF No. 195; Case No. 20-ap-00003-LTS, ECF No. 183; Case No. 20-ap-00003-LTS, ECF No. 208.) The Revenue Bond Adversary Proceedings have not been stayed with respect to Ambac's Clawback Claims or the corresponding claims of FGIC.

**RELIEF REQUESTED**

8. By this Motion, Ambac respectfully requests entry of an Order, substantially in the form attached hereto as **Exhibit A**, temporarily allowing Ambac's Clawback Claims, solely for the purpose of allowing Ambac to vote such claims to accept or reject the Plan, in the amounts of $521.5 million in Class 56, (ii) $136.2 million in Class 57, and $647.8 million in Class 58.

**JURISDICTION AND VENUE**

9. The Court has subject matter jurisdiction over this matter under PROMESA § 306(a), 48 U.S.C. § 2166(a). Venue is proper under PROMESA § 307(a), 48 U.S.C. § 2167(a).

**BASIS FOR RELIEF REQUESTED**

10. Rule 3018(a) provides that the Court "may temporarily allow the claim [subject to a pending objection] . . . in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a). The determination as to whether to temporarily allow a claim for voting purposes is committed to the sound discretion of the court. *See Pension Benefit Guar. Corp. v. Enron Corp.*, 2004 WL 2434928, at *5 (S.D.N.Y. Nov. 1, 2004). Rule 3018(a) serves two critical bankruptcy policy objectives.

11. Rule 3018(a) affords creditors holding disputed claims a voice in the reorganization process. *See In re Century Glove, Inc.*, 88 B.R. 45, 46 (Bankr. D. Del. 1988) (noting that Bankruptcy Rule 3018(a) "was designed to give all creditors, even those holding disputed claims, the opportunity to vote"). This objective is consistent with the Bankruptcy Code's preference for "encourag[ing] creditor vote and participation in the reorganization process." *In re Amarex, Inc.*, 61 B.R. 301, 303 (Bankr W. D. Okla. 1985).

12. Rule 3018(a) also provides a mechanism to avoid undue manipulation of the voting process and the strategic disenfranchisement of creditors. *See Armstrong v. Rushton (In re Armstrong)*, 294 B.R. 344, 354 (B.A.P. 10th Cir. 2003); *Stone Hedge Props. v. Phoenix Cap. Corp. (In re Stone Hedge Props.)*, 191 B.R. 59, 64 (Bankr. M.D. Pa. 1995); *In re Kellogg Square P'ship*, 160 B.R. 332, 335 (Bankr. D. Minn. 1993) ("As a general rule, creditors should be given the full benefit of their right of franchise . . . so long as they complied in the first instance with the ministerial rules governing that exercise.").

13. These policy objectives and the realities of the Revenue Bond Adversary Proceedings compel the conclusion that Ambac is entitled to the relief requested herein.

- 4 -

### A. Relief Under Rule 3018(a) Is Warranted

14. Ambac's Clawback Claims should be temporarily allowed under Rule 3018(a) for three reasons: temporary allowance will further the important policy objective of encouraging maximum creditor participation in the bankruptcy process; the uncertain merits of the Board's case for disallowance of the Clawback Claims militate in favor of their temporary allowance for voting purposes; and temporarily allowing Ambac's Clawback Claims protects against vote manipulation and gamesmanship.

15. *First*, allowing Ambac to vote its Clawback Claims comports with the bankruptcy policy objective of encouraging creditors' participation in the reorganization process. *See In re Intaco Puerto Rico, Inc.*, 494 F.2d 94, 100 (1st Cir. 1974) (recognizing "[t]he importance of active creditor participation in reorganization proceedings"); *In re Toy & Sports Warehouse, Inc.*, 38 B.R. 646, 648 (Bankr. S.D.N.Y. 1984) ("Manifestly, it is important that creditors be encouraged to participate in the reorganization process. . . ."). Ambac is, and will continue to be, a major participant in these Title III Cases. Preventing Ambac from voting on the Plan goes squarely against the bankruptcy policy objectives of full and constructive participation by creditors; instead, it would cause extreme prejudice to a creditor that has been extraordinarily diligent in preserving its claims.

16. Here, the fact that the dispute regarding the Clawback Claims has not yet been resolved is not in any way the result of dilatory action on Ambac's part. Since June 2018, when Ambac filed its Proofs of Claim, Ambac has done all within its power to resolve the allowance of the Clawback Claims. More than a year ago, the Board argued, over Ambac's objection, that the Revenue Bond Adversary Proceedings should progress only on certain key "gating" issues that, in the Board's opinion, needed to be resolved in advance of disclosure statement and plan proceedings. (*See* ECF No. 11492 ¶¶ 11-15.) The Court accepted the Board's identification of

these core issues as requiring early resolution and gave the Board exactly what it asked for by ordering the pending summary judgment motions to proceed only with respect to certain counts in the adversary complaints. Accordingly, to date, Ambac has filed hundreds of pages of briefing, pursued written discovery, taken numerous depositions, and participated in regular hearings on those "gating" issues. That the allowance of the Clawback Claims has not yet been resolved—despite proceeding on the path the Board advocated—is no fault of Ambac's. As Ambac has diligently acted to preserve, and to resolve disputes regarding, its Clawback Claims, these claims should be temporarily allowed for voting purposes to further the policy objective of full participation by creditors and to avoid prejudice to Ambac arising from the Board's chosen approach. *Cf. In re Frascella Enters., Inc.*, 360 B.R. 435, 457 (Bankr. E.D. Pa. 2007) (bankruptcy policy objectives served by temporary allowance of claims where resolution of claim allowance dispute could not occur prior to confirmation hearing).

17. *Second*, where a claim objection rests on questionable grounds, temporary allowance of the claim for voting purposes is warranted. *See In re Armstrong*, 294 B.R. at 354. Even assuming the Court were to resolve the pending partial summary judgment motions (concerning the *secured* nature of the Clawback Claims) in the Board's favor, the Court has acknowledged that the "substantive issues underlying" the Board's objections to the Clawback Claims to the extent such claims are *unsecured* will remain unresolved, and will need to be litigated "in connection with confirmation." (*See* ECF No. 16702 at 2.) There is no reason to believe that the Board will succeed in having the Clawback Claims disallowed at confirmation given that the statutes underpinning the Clawback Claims clearly provide bondholders with contractual and statutory rights (whether secured or unsecured) to the Pledged Revenues, including rights under the Commonwealth's statutory non-impairment covenants. *See* 3 L.P.R.A. § 1913; 13 L.P.R.A.

§§ 2271v, 31751(a)(1)(D); 9 L.P.R.A. §§ 2019, 2021, 5681. These rights are more than sufficient to provide Ambac with, at a minimum, unsecured claims against the Commonwealth. Given the remote prospect of the Board succeeding in obtaining *complete* disallowance of the Clawback Claims at confirmation, the Board's pending objections to the Clawback Claims are of "questionable merit," and Ambac's Clawback Claims should be temporarily allowed for voting purposes. *In re Armstrong*, 294 B.R. at 354 (internal citation omitted).

18. *Finally*, denying temporary allowance of Ambac's Clawback Claims would run contrary to Rule 3018(a)'s objective of guarding against vote manipulation. Courts recognize that claims should be temporarily allowed to prevent "abuse" or gamesmanship on the part of the plan proponent, including where the plan proponent strategically objects to claims. *In re Frascella Enters., Inc.*, 360 B.R. at 457. Yet exactly this kind of gamesmanship appears central to the Board's approach to the confirmation process.

19. The Disclosure Statement, the DS Approval Motion, and both the original[5] and revised[6] proposed orders for approval of Disclosure Statement fail to acknowledge Ambac's right to vote its Clawback Claims. But they do provide Assured and National the right to vote their identically situated claims. The Board's position is that Assured and National have acquired the right to vote their respective claims solely by virtue of the fact that they **have signed a Plan Support Agreement**. (*See* DS Approval Motion ¶ 80 (noting that "**as a result of extensive negotiations leading to the entry into the PSA and HTA/CCDA PSA**, which include Assured [and] National . . . [Assured and National] are entitled to vote to accept or reject the Plan on account of their [Clawback Claims] arising from securities insured by such parties") (emphasis added).)

---

[5] (*See* DS Approval Motion, Exhibit A)

[6] (*See* ECF No. 17309, Exhibit A (the "Revised Proposed DS Approval Order").)

Consistent with the DS Approval Motion, the Revised Proposed DS Approval Order provides that "Assured and National, as applicable, shall have the sole right to cast the votes to accept or reject the Plan on account of Claims in Classes 56, 57, and 58[,]" and, by omission, implies that Ambac lacks the same right. (Revised Proposed DS Approval Order ¶ 6.)

20. Ambac is identically situated to Assured and National as a Monoline Insurer, and its right to vote the Clawback Claims should not turn on whether it has struck a deal with the Board. There is no principled, lawful reason for this difference in treatment.[7] Rule 3018(a) is the answer to this outright discrimination, and requires temporary allowance of Ambac's Clawback Claims for voting purposes to circumvent this gamesmanship on the part of the Board.

  **B. Ambac's Clawback Claims Should Be Allowed in the Amounts Identified Herein**

21. Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure prescribe any method for determining the amount in which a claim may be temporarily allowed for voting purposes. Rule 3018(a), however, contemplates only a summary proceeding, not a full trial on the merits of the claim. *See In re Zolner*, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994). Courts have developed a flexible standard under which they use whatever method is best suited to the circumstances of the case. "In the end, any estimation should ensure that the voting power is commensurate with the creditor's economic interests in the case." *Pension Benefit Guar. Corp*. 2004 WL 2434928, at *5.

22. As supported in the Proofs of Claim, Ambac's Clawback Claims should be allowed in the following amounts, calculated based on the respective insurable amounts of the outstanding applicable Revenue Bonds as of the Commonwealth's petition date, including accreted amounts

---

[7] Ambac has sought clarification of this issue in its objection to the Disclosure Statement. (*See* ECF No. 17008, ¶¶ 102-08.)

for capital appreciation bonds and accrued but unpaid prepetition interest: (i) approximately $521.5 million in Class 56 (CW/HTA Claims); (ii) approximately $136.2 million in Class 57 (CW/Convention Center Claims); and (iii) approximately $647.8 million in Class 58 (CW/PRIFA Rum Tax Claims).

23. The Court should temporarily allow Ambac's Clawback Claims in these amounts for the purpose of Ambac's voting on the Plan.

## NO PRIOR REQUEST FOR RELIEF

24. Other than the filing of the Proofs of Claim, Ambac has made no previous request for the relief sought herein to this or any other court.

## CONCLUSION

25. WHEREFORE, Ambac respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as this Court deems just and proper.

[*Remainder of page intentionally left blank*]

Dated: July 13, 2021
       San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
           scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile: (212) 530-5219
    Email: ddunne@milbank.com
          amiller@milbank.com
          gmainland@milbank.com
          jhughes2@milbank.com
          johring@milbank.com

***Attorneys for Ambac Assurance Corporation***

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com