**Hearing Date:  August 4, 2021 at 9:30 a.m. (AST)**
**Objection Deadline: July 20,2021, 4:00 p.m. (AST)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>            Debtors.[1] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### FINANCIAL GUARANTY INSURANCE COMPANY'S MOTION (I) ASSERTING THE RIGHT TO VOTE CERTAIN CLAIMS PURSUANT TO SECTION 301 OF PROMESA AND (II) SEEKING TEMPORARY ALLOWANCE OF THE CLAWBACK CLAIM FOR VOTING PURPOSES PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3018

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

FACTUAL BACKGROUND ............................................................................................. 1

    A.    GO Bonds and PBA Bonds ................................................................................. 3

          (i)    Public Improvement Bonds of 2002, Series A .................................... 3
          (ii)   Public Improvement Refunding Bonds, Series 2002A ...................... 4
          (iii)  Public Improvement Bonds of 2003, Series A .................................... 5
          (iv)  Public Improvement Refunding Bonds, Series 2003A ...................... 6
          (v)   Public Improvement Bonds of 2006, Series A .................................... 7
          (vi)  Public Improvement Refunding Bonds, Series 2007A-1 .................. 8
          (vii) Government Facilities Revenue Refunding Bonds, Series H ................. 9

    B.    HTA Bonds ...................................................................................................... 10

          (i)    Transportation Revenue Bonds, Series G, and Transportation
               Revenue Refunding Bonds, Series H ............................................... 11
          (ii)   Subordinated Transportation Revenue Bonds (Series 2003) .................. 12
          (iii)  Transportation Revenue Refunding Bonds, Series I, and
               Transportation Revenue Bonds, Series J .......................................... 14
          (iv)  Transportation Revenue Refunding Bonds, Series L ...................... 15
          (v)   Transportation Revenue Refunding Bonds, Series N .................... 16

    C.    PRIFA Bonds ................................................................................................. 17

          (i)    Special Tax Revenue Bonds, Series 2005A & 2005C ........................ 18

    D.    CCDA Bonds ................................................................................................. 19

          (i)    Hotel Occupancy Tax Revenue Bonds, Series A ..................................... 20

    E.    FGIC's Clawback Claim ................................................................................ 21

    F.    The Debtors proposed Voting Procedures ........................................................ 22

JURISDICTION AND VENUE ......................................................................................... 23

RELIEF REQUESTED ...................................................................................................... 23

ARGUMENT ..................................................................................................................... 24

    A.    FGIC is Authorized to Vote the FGIC Held Bond Claims Pursuant to
          Section 301(c)(3)(B) of PROMESA ............................................................. 24

    B.    FGIC is Entitled to Vote the Bonds It Holds Directly, by Virtue of
          Assignment, or Through Subrogation ............................................................. 26

    C.    The Clawback Claim Should be Temporarily Allowed for Voting Purposes
          in Full ............................................................................................................. 29

CONCLUSION .................................................................................................................. 33

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Avondale Gateway Ctr. Entitlement, LLC v. Nat'l Bank of Ariz. (In re Avondale Gateway Ctr. Entitlement, LLC)*,
2011 WL 1376997 (D. Ariz. Apr. 12, 2011) ............................................................ 28

*Bittner v. Borne Chem. Co.*,
691 F.2d 134 (3d Cir. 1982) ............................................................ 30

*In re Aerosol Packaging, LLC)*,
362 B.R. 43 (Bankr. N.D. Ga. 2006) ............................................................ 28

*In re Am. Solar King Corp.*,
90 B.R. 808 (Bankr. W.D. Tex. 1988) ............................................................ 30

*In re Amarex Inc.*,
61 B.R. 301 (Bankr. W.D. Okla. 1985) ............................................................ 29

*In re American Roads LLC*,
496 B.R. 727, (Bankr. S.D.N.Y. 2013) ............................................................ 28

*In re Armstrong*,
292 B.R. 678 (10th Cir. BAP 2003) ............................................................ 29, 32

*In re Armstrong*,
294 B.R. 344 (10th Cir. BAP 2003).  ............................................................ 29, 31

*In re Brints Cotton Mktg., Inc.*,
737 F.2d 1338 (5th Cir. 1984) ............................................................ 29

*In re Century Glove, Inc.*,
88 B.R. 45 (Bankr. D. Del. 1988) ............................................................ 28

*In re CGE Shattuck, LLC*,
No. 99-12287-JMD, 2000 WL 33679410 (Bankr. D.N.H. Nov. 30, 2000) ............................ 30

*In re Frascella Enterprises*,
360 B.R. 435 (Bankr. E.D. Penn. 2007) ............................................................ 29

*In re Gardinier, Inc.*,
55 B.R. 601 (Bankr. M.D. Fla.1985) ............................................................ 29

*In re Harmony Holdings, LLC*,
395 B.R. 350 (Bankr. D. S.C. 2008) ............................................................ 29

*Pension Ben. Guar. Corp. v. Enron Corp.*,
   No. 04 CIV. 5499 (HB), 2004 WL 2434928 (S.D.N.Y. Nov. 1, 2004) .................................. 29

**Statutes**

2 L.P.R.A. §§ 6402 ................................................................................................................ 19

2 L.P.R.A. § 6404 ................................................................................................................. 19

48 U.S.C. § 2161(c) .............................................................................................................. 22

11 U.S.C. § 1126(a) ........................................................................................................ 23, 26

Puerto Rico Oversight, Management, and Economic Stability Act § 301(3)(B) .................. 23, 26

Puerto Rico Oversight, Management, and Economic Stability Act § 306(a) ............................ 23

Puerto Rico Oversight, Management, and Economic Stability Act § 307(a) ............................ 23

**Rules**

Fed. R. Bankr. P. 3001(f) ...................................................................................................... 29

Fed. R. Bankr. P. 3018 ...................................................................................................... 1, 29

Fed. R. Bankr. P. 3018(a) ................................................................................................. 23, 28

Pursuant to Section 301(c)(3)(B) of the Puerto Rico Oversight, Management, and Economic Stability Act ("**PROMESA**")[2] and Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),[3] Financial Guaranty Insurance Company ("**FGIC**") hereby moves (the "**Motion**") this Court for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) establishing FGIC's right to vote the FGIC Insured Bond Claims (as defined below) and (ii) temporarily allowing the Clawback Claim (defined below) against the Commonwealth of Puerto Rico (the "**Commonwealth**") in full for the purpose of voting to accept or reject the *Fourth Amended Title III Joint Plan Of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 17194] (as may be amended of modified, the "**Plan**").  In support of this Motion, FGIC respectfully states as follows:

## FACTUAL BACKGROUND

1.     FGIC is a monoline insurer that provides financial guarantees to the U.S. public finance market.  FGIC insures approximately (i) $280,075,000 in aggregate principal amount of outstanding General Obligation Bonds (the "**GO Bonds**") issued by the Commonwealth of Puerto Rico (the "**Commonwealth**"), (ii) $2,303,554 in aggregate principal amount of Public Buildings Authority Bonds (the "**PBA Bonds**"), (iii) $446,905,000 in aggregate principal amount of HTA Bonds, (iv) $688,125,000 in aggregate principal amount of PRIFA Bonds, and (v) $97,075,000 in aggregate principal amount of CCDA Bonds (collectively, the "**FGIC Insured Bonds**" and the claims arising thereunder, the "**FGIC Insured Bond Claims**").  The Plan proposes to impair the claims arising out of the FGIC Insured Bonds.  To the extent that the Commonwealth, Puerto Rico

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3] The Bankruptcy Rules have been made applicable to this proceeding pursuant to section 310 of PROMESA.

Highways and Transportation Authority ("**HTA**"), Puerto Rico Infrastructure Financing Authority ("**PRIFA**"), or Puerto Rico Convention Center District Authority ("**CCDA**") fail to meet their obligations under their bonds, FGIC is required by the applicable bond insurance policies to pay the relevant bondholders principal and interest when due.  Additionally, under relevant provisions of the applicable bond documents, bond insurance policies, insurance agreements (collectively, the "**Bond Documents**"), and applicable law, FGIC is afforded certain rights with respect to the obligations that it insures and is treated as the holder of the bonds that it insures so long as FGIC is not in default of its obligations under the Bond Documents (which it is not).  A chart showing FGIC's voting rights and percentage ownership by CUSIP number is attached to the Proposed Order as **Schedule 1** (the "**Voting Right Chart**").

2.      On June 28, 2012, the Supreme Court of the State of New York (the "**N.Y. Court**") appointed the Superintendent of Financial Services of the State of New York as the rehabilitator of FGIC with the rehabilitation proceeding styled *In the Matter of the Rehabilitation of Financial Guaranty Insurance Company*, Index No. 401265/2012 (the "**Rehabilitation Proceeding**").  On June 11, 2013, the N.Y. Court issued an order approving the *First Amended Plan of Rehabilitation for FGIC*, dated June 4, 2013 (together with the Plan Supplement (as defined therein) and all exhibits thereto, including the Restructured Policy Terms (as defined therein) (the "**Plan of Rehabilitation**") and authorizing the implementation of the Plan of Rehabilitation.[4]  On August 19, 2013, the Plan of Rehabilitation became effective and, as provided in the Restructured Policy

---

[4] The summary and description of the Plan of Rehabilitation in this paragraph is qualified in its entirety by reference to the Plan of Rehabilitation.  A copy of the Plan of Rehabilitation is accessible at the following address: http://fgic.com/policyholderinfocenter/planrehadexibits.pdf.

Terms, modified each of FGIC's policies.[5] Generally, the Restructured Policy Terms provide that FGIC will pay a certain percentage of each permitted policy claim in cash with the remainder of the permitted policy claim treated as a deferred payment obligation, paid if and to the extent excess cash becomes available, in accordance with the terms of the Plan of Rehabilitation. Moreover, the Plan of Rehabilitation deemed any event of default then existing under any FGIC contract to be cured and not to have occurred.[6]

### A.   GO Bonds and PBA Bonds

3.    FGIC insures portions of the following series of GO Bonds and PBA Bonds, which are protected and secured by a first lien on all available resources of the Commonwealth and are backed by a pledge of the Commonwealth's good faith, credit, and taxing power:

(i)   *Public Improvement Bonds of 2002, Series A*

4.    The Commonwealth issued $455,000,000 in principal amount of Commonwealth of Puerto Rico Public Improvement Bonds of 2002, Series A (the "**2002 GO Bonds**") pursuant to Act No. 54, approved July 6, 2001, and that certain *Bond Resolution*, adopted by the Secretary of the Treasury and approved by the Governor as of October 11, 2001. As of the date hereof, FGIC insures the payment of principal of and interest on approximately $3,985,000 in principal amount

---

[5] *See* Restructured Policy Terms § 3.1 ("From and after the Effective Date, the Plan shall (i) become part of each Policy and shall supersede any provision of any Policy that is inconsistent with the Plan and (ii) govern treatment of all Claims under Policies that have not been paid in full as of the date of the Order of Rehabilitation."); *see also* Plan of Rehabilitation § 3.1 ("Effective as of the Effective Date, any and all Policies in force as of the Effective Date . . . automatically and without any further actions . . . shall be modified by the Plan. The Plan shall supersede any and all provisions of each Policy that are inconsistent with the Plan.").

[6] *Id*. § 3.5(a) ("Subject to [provisions not applicable here], from and after the date of the Order of Rehabilitation, any default, event of default or other event or circumstance relating to the FGIC Parties then existing (or that would exist with the passing of time or the giving of notice or both) under any FGIC Contract or Transaction Document, as a result of (whether directly or indirectly) the Rehabilitation or the Rehabilitation Circumstances shall be deemed to be cured and not to have occurred (including, for the avoidance of doubt, any default, event of default or other event or circumstance that has arisen (or that may otherwise arise with the passing of time or the giving of notice or both) due to a lack of payment or performance of or by the FGIC Parties under any FGIC Contract or Transaction Document).").

of the 2002 GO Bonds pursuant to those certain (i) *Municipal Bond Partial Maturity Secondary Market Insurance Policy*, Policy Number 02020067, (ii) *Municipal Bond Partial Maturity Secondary Market Insurance Policy*, Policy Number 02020079, attached hereto as **Exhibit B**, and (iii) *Municipal Bond Partial Maturity Secondary Market Insurance Policy*, Policy Number 03020072 ((i)-(iii) collectively, the "**2002 GO Bond Insurance Policies**").  As of the date hereof, FGIC has made required payments in the approximate amount of $499,856 in respect of claims submitted under the 2002 GO Bond Insurance Policies.

5.      Pursuant to 2002 GO Bond Insurance Policies, as the bond series mature and FGIC is required to make payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's right to receive payments of principal and interest paid by FGIC and is subrogated to the bondholder's rights with respect to each principal and interest payment that FGIC is required to make.[7]

(ii)      *Public Improvement Refunding Bonds, Series 2002A*

6.      The Commonwealth issued $837,960,000 in principal amount of Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2002A (the "**2002 GO Refunding Bonds**") pursuant to Act No. 33, approved December 7, 1942, and that certain *Bond Resolution*, adopted by the Secretary of the Treasury and approved by the Governor as of October 11, 2001. As of the date hereof, FGIC insures the payment of principal of and interest on $27,000,000 in principal amount of the 2002 GO Refunding Bonds pursuant to that certain *Municipal Bond Partial*

---

[7] Exhibit B, Municipal Bond Partial Maturity Secondary Market Insurance Policy, Policy Number 02020079 at 1 (FGIC "shall become the owner of the [2002 GO Bond], appurtenant coupon or right to payment of principal or interest on such [2002 GO Bond] and shall be fully subrogated to all of the Custodian's rights and the rights of the owner of the Transferable Custodial Receipt for Insured Bonds or the Holder of Insured Bonds, as the case may be, thereunder, including the right to payment thereof.").

*Maturity Secondary Market Insurance Policy*, Policy Number 03020060 (the "**2002 GO Refunding Bond Insurance Policy**"), attached hereto as **<u>Exhibit C</u>**.  As of the date hereof, pursuant to the Plan of Rehabilitation, FGIC has made required payments in the approximate amount of $4,377,688 in respect of claims submitted under the 2002 GO Refunding Bond Insurance Policy.

7.     Pursuant to 2002 GO Refunding Bond Insurance Policy, as the bond series mature and FGIC is required to make payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's right to receive payments of principal and interest paid by FGIC and is subrogated to the bondholder's rights with respect to each principal and interest payment that FGIC is required to make.[8]

(iii)   *Public Improvement Bonds of 2003, Series A*

8.     The Commonwealth issued $460,000,000 in principal amount of Commonwealth of Puerto Rico Public Improvement Bonds of 2003, Series A (the "**2003 GO Bonds**") pursuant to Act No. 100, adopted July 12, 2002, and that certain *Bond Resolution Authorizing and Securing $460,000,000 Commonwealth of Puerto Rico Public Improvement Bonds of 2003, Series A*, adopted July 18, 2002.  As of the date hereof, FGIC insures the payment of principal of and interest on $115,470,000 in principal amount of the 2003 GO Bonds pursuant to that certain *Municipal Bond New Issue Insurance Policy*, Policy Number 02010977 (the "**2003 GO Bond Insurance Policy**"), attached hereto as **<u>Exhibit D</u>**. As of the date hereof, pursuant to the Plan of

---

[8] Exhibit C, 2002 GO Refunding Bond Insurance Policy at 1 (FGIC "shall become the owner of the [2002 GO Refunding Bond], appurtenant coupon or right to payment of principal or interest on such [2002 GO Refunding Bond] and shall be fully subrogated to all of the Custodian's rights and the rights of the owner of the Transferable Custodial Receipt for Insured Bonds or the Holder of Insured Bonds, as the case may be, thereunder, including the right to payment thereof.").

Rehabilitation, FGIC has made required payments in the approximate amount of $52,837,309 in respect of claims submitted under the 2002 GO Refunding Bond Insurance Policy.

9.      Pursuant to 2003 GO Bond Insurance Policy, as the bond series mature and FGIC is required to make payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's right to receive payments of principal and interest paid by FGIC and is subrogated to the bondholder's rights with respect to each principal and interest payment that FGIC is required to make.[9]

(iv)   *Public Improvement Refunding Bonds, Series 2003A*

10.     The Commonwealth issued $89,610,000 in principal amount of Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2003A (the "**2003 GO Refunding Bonds**") pursuant to Act No. 33, adopted December 7, 1942, and that certain *Bond Resolution Authorizing and Securing $89,610,000 Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2003A*, adopted August 1, 2002.  As of the date hereof, FGIC insures the payment of principal of and interest on $27,770,000 in principal amount of the 2003 GO Refunding Bonds pursuant to that certain *Municipal Bond New Issue Insurance Policy*, Policy Number 02011035 (the "**2003 GO Refunding Bond Insurance Policy**"), attached hereto as **Exhibit E**. As of the date hereof, pursuant to the Plan of Rehabilitation, FGIC has made required payments in the approximate amount of $13,046,377 in respect of claims submitted under the 2003 GO Refunding Bond Insurance Policy.

---

[9] Exhibit D, 2003 GO Bond Insurance Policy at 1 (FGIC "shall become the owner of the [2003 GO Bond], appurtenant coupon or right to payment of principal or interest on such [2003 GO Bond] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the right to payment thereof.").

11.     Pursuant to 2003 GO Refunding Bond Insurance Policy, as the bond series mature and FGIC is required to make payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's right to receive payments of principal and interest paid by FGIC and is subrogated to the bondholder's rights with respect to each principal and interest payment that FGIC is required to make.[10]

(v)     *Public Improvement Bonds of 2006, Series A*

12.     The Commonwealth issued $500,00,000 in principal amount of Commonwealth of Puerto Rico Public Improvement Bonds of 2006, Series A (the "**2006 GO Bonds**") pursuant to Act No. 43, adopted August 1, 2005, as amended by Act No. 159, adopted December 21, 2005, and that certain *Bond Resolution Authorizing and Securing $500,000,000 Commonwealth of Puerto Rico Public Improvement Bonds of 2006, Series A*, adopted August 2, 2006 (the "**2006 GO Bond Resolution**"), attached hereto as **Exhibit F**.  As of the date hereof, FGIC insures the payment of principal of and interest on $32,815,000 in principal amount of the 2006 GO Bonds pursuant to that certain *Municipal Bond New Issue Insurance Policy*, Policy Number 06010316 (the "**2006 GO Bond Insurance Policy**"), attached hereto as **Exhibit G**.  As of the date hereof, pursuant to the Plan of Rehabilitation, FGIC has made required payments in the approximate amount of $16,598,058 in respect of claims submitted under the 2006 GO Bond Insurance Policy.

13.     Pursuant to section 31(c) of the 2006 GO Bond Resolution, so long as FGIC has not defaulted on its obligations under the 2006 GO Bond Insurance Policy, FGIC is recognized as

---

[10] Exhibit E, 2003 GO Refunding Bond Insurance Policy at 1 (FGIC "shall become the owner of the [2003 GO Refunding Bond], appurtenant coupon or right to payment of principal or interest on such [2003 GO Refunding Bond] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof.").

the registered owner of the bonds and has the right to exercise all right and privileges and direct remedies in lieu of the relevant bondholders.[11]  Additionally, pursuant to 2006 GO Bond Insurance Policy, as the bond series mature and FGIC is required to make payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's right to receive payments of principal and interest paid by FGIC and is subrogated to the bondholder's rights with respect to each principal and interest payment that FGIC is required to make.[12]

(vi)   *Public Improvement Refunding Bonds, Series 2007A-1*

14.   The Commonwealth issued $926,570,000 in principal amount of Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2077 A-1 (the "**2007 GO Refunding Bonds**") pursuant to Act No. 2, adopted October 10, 1985, joint resolution No. 57 of the legislature, approved July 12, 993, and that certain *Bond Resolution Authorizing and Securing $926,570,000 Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2007A*, adopted October 3, 2007 (the "**2007 GO Refunding Bond Resolution**").  As of the date hereof, FGIC insures the payment of principal of and interest on $73,035,000 in principal amount of the 2007 GO Refunding Bonds pursuant to that certain *Municipal Bond New Issue Insurance Policy*, Policy Number 07010415 (the "**2007 GO Refunding Bond Insurance Policy**"), attached

---

[11] *See* Exhibit F, 2006 GO Bond Resolution § 31(c)(viii) ("FGIC shall have the right to consent in lieu of the Owners of the FGIC Insured Bonds to all amendments to [the] Resolution to which the Registrar [Banco Popular de Puerto Rico] and the Owners of FGIC Insured Bonds have the right to consent. . . .  FGIC shall be recognized as the registered owner of each FGIC Insured Bond for the purposes of exercising all rights and privileges available to bondholders under this Resolution.  FGIC shall have the right to institute any suit, action, or proceeding at law or in equity under the same terms as a holder of a FGIC Insured Bond in accordance with the applicable provisions of this Resolution."); *Id*. at § 31(c)(ix) ("FGIC shall be entitled to control and direct the enforcement of all rights and remedies granted under the Constitution and laws of Puerto Rico to the Holders of the FGIC Insured Bonds or the Registrar for the benefit of the Holders of FGIC Insured Bonds under this Resolution.").

[12] Exhibit G, 2006 GO Bond Insurance Policy (FGIC "shall become the owner of the [2006 GO Bond], appurtenant coupon or right to payment of principal or interest on such [2006 GO Bond] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof.").

hereto as **Exhibit H**.  As of the date hereof, pursuant to the Plan of Rehabilitation, FGIC has made required payments in the approximate amount of $25,942,649 in respect of claims submitted under the 2007 GO Refunding Bond Insurance Policy.

15.    Pursuant to section 2 of that certain *Agreement Regarding Bond Insurance* by and between Commonwealth, Assured, FGIC, and Banco Popular de Puerto Rico, as Registrar, dated as of October 16, 2007 (the "**2007 GO Refunding Bond Insurance Agreement**"), attached hereto as **Exhibit I**, so long as FGIC has not defaulted on its obligations under the 2007 GO Refunding Bond Insurance Policy, FGIC has the right to direct remedies and to consent to all amendments of the bond resolution in lieu of the relevant bondholders.[13]   Additionally, pursuant to 2007 GO Refunding Bond Insurance Policy, as the bond series mature and FGIC is required to make payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's right to receive payments of principal and interest paid by FGIC and is subrogated to the bondholder's rights with respect to each principal and interest payment that FGIC is required to make.[14]

(vii)    *Government Facilities Revenue Refunding Bonds, Series H*

16.    The Puerto Rico Public Buildings Authority (the "**PBA**") is a public corporation created by Act No. 56 to assume responsibility for the administration and maintenance of building

---

[13] *See* Exhibit I, 2007 GO Refunding Bond Insurance Agreement § 2(b) ("So long as the FGIC Policy shall be in full force and effect, and FGIC is not in default thereunder, with respect to the FGIC Insured Bonds, the Secretary and the Registrar shall comply with the following provisions: . . . (b) FGIC shall be deemed to be the holder of all of the FGIC Insured Bonds for the purpose of granting any consent, direction or approval or taking any action permitted by or required under the Resolution to be granted or taken by the holders of such FGIC Insured Bonds.").

[14] Exhibit H, 2007 GO Refunding Bond Insurance Policy at 1 (FGIC "shall become the owner of the [2007 GO Refunding Bond], appurtenant coupon or right to payment of principal or interest on such [2007 GO Refunding Bond] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof.").

facilities leased to the Commonwealth and its departments, agencies, and municipalities. The PBA issued $272,717,418.10 in principal amount of Government Facilities Revenue Refunding Bonds, Series H (the "**PBA Refunding Bonds**") pursuant to Act No. 56, adopted June 19, 1958, and that certain *Resolution No. 468*, adopted by the PBA on June 22, 1995, as supplemented on October 10, 2002. As of the date hereof, FGIC insures the payment of principal of and interest on $2,303,553.55 in principal amount of PBA Refunding Bonds pursuant to that certain *Municipal Bond New Issue Insurance Policy*, Policy Number 0301007 (the "**PBA Refunding Bonds Insurance Policy**"), attached hereto as **Exhibit J**. As of the date hereof, pursuant to the Plan of Rehabilitation, FGIC has made required payments in the approximate amount of $1,025,081 in respect of claims submitted under the PBA Refunding Bonds Insurance Policy.

17.    Pursuant to the PBA Refunding Bonds Insurance Policy, as the bond series mature and FGIC is required to make payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's right to receive payments of principal and interest paid by FGIC and is subrogated to the bondholder's rights with respect to each principal and interest payment that FGIC is required to make. [15]

**B.    HTA Bonds**

18.    HTA is a public corporation created by Act No. 74-1965 (the "**HTA Enabling Act**") to assume responsibility for the construction of highways and other transportation systems in Puerto Rico. Pursuant to the HTA Enabling Act, HTA has issued revenue bonds pursuant to (i) that certain *Puerto Rico Highways and Transportation Authority Resolution No. 68-18*

---

[15] Exhibit J, PBA Refunding Bond Insurance Policy at 1 (FGIC "shall become the owner of the [PBA Refunding Bond], appurtenant coupon or right to payment of principal or interest on such [PBA Refunding Bond] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof.").

*Authorizing and Securing Highway Revenue Bonds,* adopted as of June 13, 1968 (the "**1968 HTA Resolution**") and (ii) that certain *Puerto Rico Highways and Transportation Authority Resolution No. 98-06 Authorizing and Securing Transportation Revenue Bonds*, adopted February 26, 1998 (the "**1998 HTA Resolution**" and, together with the 1968 HTA Resolution, the "**HTA Resolutions**").

19.     Under the HTA Resolutions, the HTA Bonds are secured by the gross lien on special revenues derived from (i) HTA's toll facilities; (ii) special excise taxes consisting of taxes on gasoline diesel, crude oil, and other special excise taxes collected by the Commonwealth of Puerto Rico (the "**Commonwealth**"); and (iii) special excise taxes consisting of motor vehicle license fees collected by the Commonwealth ((i)-(iii) collectively, the "**HTA Pledged Special Revenues**").  As described below, under its insurance agreements and policies insuring payment of principal and interest of certain of the HTA Bonds, FGIC is deemed to be the sole owner of the HTA Bonds that FGIC insures, or otherwise has control rights over consents and other bondholder actions.  HTA has issued the following series of HTA Bonds insured by FGIC (collectively, the "**FGIC HTA Bonds**"):

(i)     *Transportation Revenue Bonds, Series G, and Transportation Revenue Refunding Bonds, Series H*

20.     HTA issued $635,685,000 in principal amount of Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds, Series G (the "**Series G TRBs**"), and Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds, Series H (the "**Series H TRBs**" and together with the TRBs Series G (the ("**Series G & H TRBs**")) pursuant to the 1998 HTA Resolution and that certain *Resolution No. 2003-24*, adopted as of April 10, 2003 (the "**2003 HTA Resolution**").  As of the date hereof, FGIC insures the payment of principal of and interest on $19,625,000 in principal amount of Series G & H TRBs pursuant to

that certain *Municipal Bond New Issue Insurance Policy*, Policy Number 03010506 (the "**Series G & H TRBs Insurance Policy**"), attached hereto as **Exhibit K**.  As of the date hereof, pursuant to the Plan of Rehabilitation, FGIC has made required payments in the approximate amount of $5,470,585 in respect of claims submitted under the Series G & H TRBs Insurance Policy.

21.     Pursuant to section 2 of that certain *Agreement Regarding Bond Insurance* by and among PRHTA, JPMorgan Chase Bank and FGIC as of April 29, 2003 (the "**2003 HTA Bond Insurance Agreement**"), attached hereto as **Exhibit L**, so long as FGIC has not defaulted on its obligations under the Series G&H Insurance Policy, FGIC has the right to direct remedies and to consent to all amendments of the bond resolution in lieu of the relevant bondholders.[16] Additionally, pursuant to the Series G & H TRBs Insurance Policy, as the bond series mature and FGIC is required to make payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's right to receive payments of principal and interest paid by FGIC and is subrogated to the bondholder's rights with respect to each principal and interest payment that FGIC is required to make.[17]

(ii)     *Subordinated Transportation Revenue Bonds (Series 2003)*

22.     HTA issued $320,545,000 in principal amount of Puerto Rico Highways and Transportation Authority Subordinated Transportation Revenue Bonds (Series 2003)

---

[16] *See* Exhibit L, 2003 HTA Bond Insurance Agreement § 2(b) ("FGIC shall be included as a party in interest and as a party entitled to request the Fiscal Agent or receiver to intervene in judicial proceedings that affect the Bonds or the security therefor.  The Fiscal Agent or receiver shall be required to accept notice of default from FGIC."); 2003 Bond Insurance Agreement § 2(c) ("FGIC shall have the right to consent in lieu of the owners of Insured Bonds to all amendments to the Resolution to which the Fiscal Agent and the owners of Insured Bonds have the right to consent, as long as FGIC is not in default on its obligations under the FGIC Bond Insurance Policy.")

[17] Exhibit K, Series G & H TRBs Insurance Policy at 1 (FGIC "shall become the owner of the [Series G & H TRBs], appurtenant coupon or right to payment of principal or interest on such [Series G & H TRBs] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof.").

(the "**Subordinated TRBs**") pursuant to the 1998 HTA Resolution and the 2003 HTA Resolution. As of the date hereof, FGIC insures the payment of principal of and interest of $64,570,000 in principal amount of Subordinated TRBs pursuant to those certain (i) *Municipal Bond New Issue Insurance Policy, Policy Number 03010507*, attached hereto as **Exhibit M**; (ii) *Municipal Bond Whole Maturity Secondary Market Insurance Policy, Policy Number 03020048*; (iii) *Municipal Bond Partial Maturity Secondary Market Insurance Policy, Policy Number 03020049*; and (iv) *Municipal Bond Partial Maturity Secondary Market Insurance Policy, Policy Number 03020051* ((i)-(iv)  collectively, the "**Subordinated TRBs Insurance Policies**").  As of the date hereof, pursuant to the Plan of Rehabilitation, FGIC has made required payments in the approximate amount of $32,746,874 in respect of claims submitted under the Subordinated TRBs Insurance Policies.

23.     Pursuant to section 2 of the 2003 HTA Bond Insurance Agreement, so long as FGIC has not defaulted on its obligations under the Subordinated TRBs Insurance Policies, FGIC has the right to direct remedies and to consent to all amendments of the bond resolution in lieu of the relevant bondholders.[18]  Pursuant to the Subordinated TRBs Insurance Policies, as the bond series mature and FGIC is required to make payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's right to receive payments of principal and interest paid

---

[18] *See* Exhibit L, 2003 HTA Bond Insurance Agreement § 2(b) ("FGIC shall be included as a party in interest and as a party entitled to request the Fiscal Agent or receiver to intervene in judicial proceedings that affect the Bonds or the security therefor.  The Fiscal Agent or receiver shall be required to accept notice of default from FGIC."); 2003 Bond Insurance Agreement § 2(c) ("FGIC shall have the right to consent in lieu of the owners of Insured Bonds to all amendments to the Resolution to which the Fiscal Agent and the owners of Insured Bonds have the right to consent, as long as FGIC is not in default on its obligations under the FGIC Bond Insurance Policy.")

by FGIC and is subrogated to the bondholder's rights with respect to each principal and interest payment that FGIC is required to make. [19]

        (iii)    *Transportation Revenue Refunding Bonds, Series I, and Transportation Revenue Bonds, Series J*

24.     HTA issued $488,235,000 in principal amount of Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds, Series I (the "**Series I TRBs**"), and Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds, Series J (the "**Series J TRBs**" and together with the TRBs Series I (the ("**Series I & J TRBs**")) pursuant to the 1998 HTA Resolution and that certain *Resolution No. 2004-20*, adopted as of April 7, 2004.  As of the date hereof, FGIC insures the payment of principal of and interest on $89,125,000 in principal amount of Series I & J TRBs pursuant to that certain *Municipal Bond New Issue Insurance Policy*, Policy Number 04010258 (the "**Series I & J TRBs Insurance Policy**"), attached hereto as **Exhibit N**.  As of the date hereof, pursuant to the Plan of Rehabilitation, FGIC has made required payments in the approximate amount of $15,142,951 in respect of claims submitted under the Series I & J TRBs Insurance Policy.

25.     Pursuant to that certain *Agreement Regarding Bond Insurance* by and among PRHTA, JPMorgan Chase Bank and FGIC as of April 20, 2004 (the "**2004 HTA Bond Insurance Agreement**"), attached hereto as **Exhibit O**, so long as FGIC has not defaulted on its obligations under the Series I & J Insurance Policy, FGIC has the right to consent to all amendments of the

---

[19] *See, e.g.*, Exhibit M, Municipal Bond New Issue Insurance Policy, Policy Number 03010507 (FGIC "shall become the owner of the [Subordinated TRBs], appurtenant coupon or right to payment of principal or interest on such [Subordinated TRBs] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof.").

bond resolution in lieu of the relevant bondholders.[20] Additionally, pursuant to the Series I & J TRBs Insurance Policy, as the bond series mature and FGIC is required to make payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's right to receive payments of principal and interest paid by FGIC and is subrogated to the bondholder's rights with respect to each principal and interest payment that FGIC is required to make.[21]

(iv) *Transportation Revenue Refunding Bonds, Series L*

26.     HTA issued $598,285,000 in principal amount of Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds, Series L (the "**Series L TRBs**"), pursuant to the 1998 HTA Resolution and that certain *Resolution No. 2005-28, Adopted as of September 22, 2005*. As of the date hereof, FGIC insures the payment of principal of and interest on $30,270,000 in principal amount of Series L TRBs pursuant to that certain *Municipal Bond New Issue Insurance Policy*, Policy Number 05010655 (the "**Series L TRBs Insurance Policy**"), attached hereto as **Exhibit P**. As of the date hereof, pursuant to the Plan of Rehabilitation, FGIC has made required payments in the approximate amount of $12,026,698 in respect of claims submitted under the Series L TRBs Insurance Policy.

27.     Pursuant to that certain *Agreement Regarding Bond Insurance* by and between PRHTA and JPMorgan Chase Bank, N.A. as of October 4, 2005 (the "**2005 HTA Bond Insurance**

---

[20] *See* Exhibit O, 2004 HTA Bond Insurance Agreement § 2(c) ("FGIC shall have the right to consent in lieu of the owners of the Insured Bonds to all amendments to the [1998 HTA Resolution] to which the Fiscal Agent and the owners of Insured Bonds have the right to consent, as long as FGIC is not at that time in default on its obligations under the [Series I & J TRBs Insurance Policy].)

[21] Exhibit N, Series I & J TRBs Insurance Policy at 1 (FGIC "shall become the owner of the [Series I & J TRBs], appurtenant coupon or right to payment of principal or interest on such [Series I & J TRBs] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof.").

15

**Agreement**"), attached hereto as **Exhibit Q**, FGIC is recognized as the registered owner of the FGIC insured TRBs Series L for the purpose of exercising all rights and privileges available to the registered owners.[22]   Additionally, pursuant to the Series L TRBs Insurance Policy, as the bond series mature and FGIC is required to make payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's right to receive payments of principal and interest paid by FGIC and is subrogated to the bondholder's rights with respect to each principal and interest payment that FGIC is required to make.[23]

(v)     *Transportation Revenue Refunding Bonds, Series N*

28.     HTA issued $1,502,904,943.95 in principal amount of Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds, Series N (the "**Series N TRBs**"), pursuant to the 1998 HTA Resolution and that certain *Resolution No. 2007-09*, adopted as of February 15, 2007, as amended by *Resolution No. 2007-15,* adopted as of February 27, 2007. As of the date hereof, FGIC insures the payment of principal of and interest on $243,315,000 in principal amount of Series N TRBs pursuant to that certain *Municipal Bond New Issue Insurance Policy*, Policy Number 07010057 (the "**Series N TRBs Insurance Policy**"), attached hereto as **Exhibit R**.  As of the date hereof, pursuant to the Plan of Rehabilitation, FGIC has made required payments in the approximate amount of $25,580,010 in respect of claims submitted under the Series N TRBs Insurance Policy.

---

[22] *See* Exhibit Q, 2005 Bond Insurance Agreement § 5 ("[FGIC] shall be recognized as the registered owner of each [FGIC] Insured Bond for purposes of exercising all rights and privileges available to the registered owners of the [FGIC] Insured Bonds.")

[23] Exhibit P, Series L TRBs Insurance Policy (FGIC "shall become the owner of the [Series L TRBs], appurtenant coupon or right to payment of principal or interest on such [Series L TRBs] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof.").

29.     Pursuant to that certain *Agreement Regarding Bond Insurance* by and between PRHTA and The Bank of New York, as of March 6, 2007 (the "**2007 HTA Bond Insurance Agreement**"), attached hereto as **Exhibit S**, FGIC is recognized as the registered owner of the FGIC insured Series N TRBs for the purpose of exercising all rights and privileges available to the registered owners.[24]   Additionally, pursuant to the Series N TRBs Insurance Policy, as the bond series mature and FGIC is required to make payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's right to receive payments of principal and interest paid by FGIC and is subrogated to the bondholder's rights with respect to each principal and interest payment that FGIC is required to make.[25]

**C.     PRIFA Bonds**

30.     PRIFA is a public corporation created by Act No. 44-1988 (the "**PRIFA Enabling Act**"), for the purpose of providing financial and other types of assistance to political subdivisions, public agencies, and instrumentalities of the Commonwealth.   Pursuant to the PRIFA Enabling Act, PRIFA has issued certain special excise tax revenue bonds pursuant to that certain *Trust Agreement* by and between PRIFA and Citibank, N.A., as trustee, dated as of October 1, 1988 (the "**PRIFA Trust Agreement**").

31.     Pursuant to the PRIFA Trust Agreement, PRIFA Bonds are secured by a lien on a portion of federal special excise taxes imposed on rum and other items produced in the Commonwealth and sold in the United States (the "**PRIFA Pledged Tax Revenues**").   As

---

[24] *See* Exhibit S, 2007 HTA Bond Insurance Agreement § 5 ("FGIC] shall be recognized as the registered owner of each FGIC Insured Bond for purposes of exercising all rights and privileges available to the registered owners of the FGIC Insured Bonds.")

[25] Exhibit R, Series N TRBs Insurance Policy (FGIC "shall become the owner of the [Series N TRBs], appurtenant coupon or right to payment of principal or interest on such [Series N TRBs] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof.").

described below, under its insurance agreements and policies insuring payment of principal and interest of certain of the PRIFA Bonds, FGIC is deemed to be the sole owner of the PRIFA Bonds that FGIC insures, or otherwise has control rights over consents and other bondholder actions. PRIFA has issued the following series of PRIFA Bonds insured by FGIC (collectively, the "**FGIC PRIFA Bonds**"):

(i)     _Special Tax Revenue Bonds, Series 2005A & 2005C_

32.     PRIFA issued (i) $309,102,577.35 in principal amount of Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005A (the "**Series 2005A STRBs**") and (ii) $699,235,338.80 in principal amount of Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005C (the "**Series 2005C STRBs**" and together with the Series 2005A STRBs, the "***STRBs***") pursuant to the (x) PRIFA Enabling Act, as amended, (y) PRIFA Trust Agreement, and (z) that certain Resolution 2005-17 adopted as of June 2, 2005 (the "**2005 STRBs Resolution**"), attached hereto as **Exhibit T**.  As of the date hereof, FGIC insures the payment of principal of and interest on $688,125,000 in principal amount of STRBs pursuant to that certain _Municipal Bond New Issue Insurance Policy_, Policy Number 05010416 (the "**STRBs Insurance Policy**"), attached hereto as **Exhibit U**.  As of the date hereof, pursuant to the Plan of Rehabilitation, FGIC has made required payments in the approximate amount of $95,793,555 in respect of claims submitted under the STRBs Insurance Policy.

33.     Pursuant to the 2005 STRBs Resolution, FGIC is deemed the sole holder of the FGIC PRIFA Bonds for the purpose of exercising all rights and remedies for so long as FGIC

complies with its payment obligations under the STRBs Insurance Policy.[26]  Additionally,
pursuant to the STRBs Insurance Policy, as the bond series mature and FGIC is required to make
payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's
right to receive payments of principal and interest paid by FGIC and is subrogated to the
bondholder's rights with respect to each principal and interest payment that FGIC is required to
make. [27]

### D.   CCDA Bonds

34.    CCDA is a public corporation created by Act No. 351-2000, adopted
September 2, 2003 (the "**CCDA Enabling Act**"), for the purpose of developing and operating a
convention center located in San Juan, Puerto Rico, and related improvements and facilities.  *See*
2 L.P.R.A. §§ 6402, 6404.  Pursuant to the CCDA Enabling Act, CCDA has issued revenue bonds
pursuant to that certain *Trust Agreement* by and between Puerto Rico Convention Center District
Authority and JPMorgan Chase, N.A., as trustee, dated as of March 24, 2006, as supplemented
and amended (the "**CCDA Trust Agreement**").

35.    Pursuant to the CCDA Enabling Act, Act No. 272-2003, the Occupancy Tax Act
adopted September 9, 2003 (the "**Hotel Tax Act**"), and the CCDA Trust Agreement, the CCDA
Bonds are secured by a lien on certain special excise taxes consisting of hotel occupancy taxes
imposed by the Commonwealth and collected by the Puerto Rico Tourism Company pursuant to
the Hotel Tax Act (the "**CCDA Pledged Tax Revenues**").  As described below, under its

---

[26] *See* Exhibit T, 2005 SRTBS Resolution §24(b) ("FGIC shall be deemed to be the sole holder of the FGIC Insured
Bonds in lieu of the holders thereof for so long as it has not failed to comply with its payment obligations under the
FGIC Policy.").

[27] Exhibit U, STRBs Insurance Policy at 1 (FGIC "shall become the owner of the [STRBs], appurtenant coupon or
right to payment of principal or interest on such [STRBs] and shall be fully subrogated to all of the Bondholder's
rights thereunder, including the Bondholder's right to payment thereof.").

insurance agreements and policies insuring payment of principal and interest of certain of the CCDA Bonds, FGIC is deemed to be the sole owner of the CCDA Bonds that FGIC insures, or otherwise has control rights over consents and other bondholder actions.  CCDA has issued the following series of CCDA Bonds insured by FGIC (collectively, the "**FGIC CCDA Bonds**"):

(i)     *Hotel Occupancy Tax Revenue Bonds, Series A*

36.     CCDA issued $468,800,000 in principal amount of Puerto Rico Convention Center District Authority Hotel Occupancy Tax Revenue Bonds, Series A (the "**Series A HOTRBs**"), pursuant to the (i) CCDA Enabling Act, as amended, (ii) Hotel Tax Act, and (iii) CCDA Trust Agreement.  As of the date hereof, FGIC insures the payment of principal of and interest on $97,075,000 in principal amount of Series A HOTRBs pursuant to that certain *Municipal Bond New Issue Insurance Policy*, Policy Number 06010122 (the "**Series A HOTRBs Insurance Policy**"), attached hereto as **Exhibit V**.  As of the date hereof, pursuant to the Plan of Rehabilitation, FGIC has made required payments in the approximate amount of $14,897,380 in respect of claims submitted under the Series A HOTRBs Insurance Policy.

37.     Pursuant to that certain *First Supplemental Trust Agreement* by and between Puerto Rico Convention Center District Authority and JPMorgan Chase Bank, N.A., as trustee, dated as of March 24, 2006 (the "**CCDA Supplemental Trust Agreement**"), attached hereto as **Exhibit W**, FGIC is recognized as the sole holder of the FGIC CCDA Bonds for the purpose of exercising all rights and remedies for so long as FGIC complies with its payment obligations under the Series A HOTRBs Insurance Policy.[28]  Additionally, pursuant to the Series A HOTRBs

---

[28] *See* Exhibit W, CCDA Supplemental Trust Agreement § 17(d) ("For all purposes of the Trust Agreement provisions governing events of default and remedies, FGIC shall be deemed to be the sole holder of the FGIC Insured Bonds for so long as it has not failed to comply with its payment obligations under the FGIC Policy.")

Insurance Policy, as the bond series mature and FGIC is required to make payments under the insurance policy, FGIC receives an assignment of the applicable bondholder's right to receive payments of principal and interest paid by FGIC and is subrogated to the bondholder's rights with respect to each principal and interest payment that FGIC is required to make.[29]

### E. FGIC's Clawback Claim

38.    On June 28, 2018, FGIC filed Proof of Claim No. 101243 (the "**Clawback Claim**") in the Commonwealth's Title III case to protect its property interests in pledged revenues securing the FGIC HTA Bonds, FGIC PRIFA Bonds, and the FGIC CCDA Bonds (collectively, the "**Revenue Bonds**"), that have been unlawfully diverted and appropriated by the Commonwealth.  The property at issue include the HTA Pledged Special Revenues, the PRIFA Pledged Tax Revenues, and the CCDA Pledged Tax Revenues (collectively, the "**Pledged Revenues**").

39.    On January 16, 2020, the Commonwealth commenced adversary proceeding numbers 20-00003, 20-00004, 20-00005, and 20-00007 (collectively, the "**Adversary Proceedings**") in this Court, seeking, among other things, disallowance of the Clawback Claim. Currently, the Adversary Proceedings are stayed except for certain "gating issues," which are being litigated either in the lift stay litigation or through a limited summary judgment motion practice in the adversaries.  *See Final Case Management Order for Revenue Bonds* [ECF No. 12186].  The Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**") has filed partial summary judgment motions in each of the Adversary Proceedings, and, at the defendants'

---

[29] Exhibit V, Series A HOTRBs Insurance Policy at 1 (FGIC "shall become the owner of the [Series A HOTRBs], appurtenant coupon or right to payment of principal or interest on such [Series A HOTRBs] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof.").

request, the Court (defined below) permitted limited discovery into the factual disputes in the adversaries, which is subject to ongoing briefing.  A summary of the full procedural history of the Adversary Proceedings in set forth in *Financial Guaranty Insurance Company's Objection and Memorandum of Law in Response to the Motion of the Commonwealth of Puerto Rico, by an Through the Financial Oversight and Management Board, for Stay Relief Granting Leave to Prosecute Further Motions for Partial Summary Judgment* [ECF No. 149, Adv. Proc. 20-00003] and incorporated herein by reference.  The Court has not yet reached the merits of any of the issues raised in the Adversary Proceedings.

### F.    The Debtors proposed Voting Procedures

40.    On May 13, 2021, the Oversight Board filed the Amended Joint Motion of Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures [ECF No. 16756] (the "**DS Motion**") seeking, inter alia, to establish voting procedures for the Plan.[30]

41.    On June 29, 2021, 2021, the Oversight Board filed the (i) Plan and (ii) *Disclosure Statement for the Fourth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et. al*. [ECF No. 17192] (the **"Disclosure Statement"**).

---

[30] Certain provisions of the Bankruptcy Code, including § 1125, have been made applicable to this proceeding by section 301(a) of PROMESA.

42.     The Disclosure Statement acknowledges that pursuant to section 301(c)(3) of PROMESA monoline insurers are considered the "holder" of an insured Bond Claim for voting purposes if such insurer is granted the right to vote insured bonds "for purposes of directing remedies or consenting to proposed amendments or modifications as provided in the applicable documents."   PROMESA § 301(c)(3), 48 U.S.C. § 2161(c); *see also* Disclosure Statement § VI.A.3.  Although the Disclosure Statement concedes that the insurers who signed the CW PSA[31] (Assured, National, and Syncora) are authorized to vote their insured bonds, it fails to provide a mechanism for the other monoline insurers to assert their right to vote insured bonds or to provide a mechanism to resolve any disputes with respect to the determination of such voting rights. Additionally, the Debtors' proposed voting procedures preclude any claims that are the subject of a pending objection from voting on the Plan unless the claim has been temporarily allowed for voting purposes by Court order.  *See* DS Motion ¶ 98.  Accordingly, FGIC files this Motion seeking an order (i) allowing it to vote the FGIC Insured Bond Claims and (ii) allowance of its claims for voting purposes.

## JURISDICTION AND VENUE

43.     The United States District Court for the District of Puerto Rico (the "**Court**") has subject matter jurisdiction over this Motion pursuant to section 306(a) of PROMESA.

44.     Venue is proper in this district pursuant to section 307(a) of PROMESA.

## RELIEF REQUESTED

45.     By this Motion, FGIC seeks entry of an order (i) establishing FGIC's right to vote the FGIC Bonds Claims in the amounts set forth on Schedule 1 hereto as (x) a direct holder, (y) an

---

[31] Capitalized terms used but not otherwise defined in this paragraph shall have the meaning ascribed to such terms in the Disclosure Statement.

assignee and contractual subrogee of certain of the beneficial holders, and/or (z) a holder pursuant to section 301(3)(c)(B) and (ii) temporarily allowing the Clawback Claim in full for voting purposes pursuant to Bankruptcy Rule 3018(a).

## ARGUMENT

### A.   FGIC is Authorized to Vote the FGIC Held Bond Claims Pursuant to Section 301(c)(3)(B) of PROMESA

46.    Pursuant to section 1126(a) of title 11 of the United States Code (the "**Bankruptcy Code**"),[32] a "holder of a claim" may vote to accept or reject a plan of adjustment.  With respect to insured bonds, section 301(c)(3)(B) of PROMESA provides that the term "holder of a claim or interest" "shall mean the monoline insurer insuring such Insured Bonds for purposes of directing remedies or consenting to proposed amendments or modifications as provided in the applicable documents pursuant to which such Insured Bond was issued and insured."

47.    As described above, FGIC is the holder of all claims arising from the FGIC insured (i) 2006 GO Bonds, (ii) 2007 GO Refunding Bonds, (iii) Series G TRBs; (iv) Series H TRBs; (v) Subordinated TRBs; (vi) Series I TRBs; (vii) Series J TRBs; (viii) Series L TRBs; (ix) Series N TRBs; (x) Series 2005A STRBs; (xi) Series 2005C STRBs; and (xii) Series A HOTRBs ((i)-(xii) collectively, the "**FGIC Held Bonds**" and the claims arising thereunder, the "**FGIC Held Bond Claims**") pursuant to the applicable Bond Documents.  Although the operative language varies, each of the relevant Bond Documents for the FGIC Held Bond Claims provide FGIC with the right to either consent to proposed amendments or modifications or to direct remedies in lieu of the beneficial owners as follows:

---

[32] Certain provisions of the Bankruptcy Code, including § 1126, have been made applicable to this proceeding by section 301(a) of PROMESA.

- **2006 GO Bonds** –

  [viii] FGIC shall have the right to consent in lieu of the Owners of the FGIC Insured Bonds to all amendments to [the] Resolution to which the Registrar [Banco Popular de Puerto Rico] and the Owners of FGIC Insured Bonds have the right to consent. . . . FGIC shall be recognized as the registered owner of each FGIC Insured Bond for the purposes of exercising all rights and privileges available to bondholders under this Resolution. FGIC shall have the right to institute any suit, action, or proceeding at law or in equity under the same terms as a holder of a FGIC Insured Bond in accordance with the applicable provisions of this Resolution.

  (ix) FGIC shall be entitled to control and direct the enforcement of all rights and remedies granted under the Constitution and laws of Puerto Rico to the Holders of the FGIC Insured Bonds or the Registrar for the benefit of the Holders of FGIC Insured Bonds under this Resolution.

  2006 Bond Resolution § 31(c)(viii)-(ix).

- **2007 GO Refunding Bonds** – "FGIC shall be deemed to be the holder of all of the FGIC Insured Bonds for the purpose of granting any consent, direction or approval or taking any action permitted by or required under the Resolution to be granted or taken by the holders of such FGIC Insured Bonds." 2007 GO Refunding Bond Insurance Agreement.

- **Series G & H TRBs and the Subordinated TRBs–**

  [b] FGIC shall be included as a party in interest and as a party entitled to request the Fiscal Agent or receiver to intervene in judicial proceedings that affect the Bonds or the security therefor. The Fiscal Agent or receiver shall be required to accept notice of default from FGIC.;

  [c] FGIC shall have the right to consent in lieu of the owners of Insured Bonds to all amendments to the Resolution to which the Fiscal Agent and the owners of Insured Bonds have the right to consent, as long as FGIC is not in default on its obligations under the FGIC Bond Insurance Policy.

  2003 HTA Bond Insurance Agreement § 2(b)-(c).

- **Series I & J TRBs** – "FGIC shall have the right to consent in lieu of the owners of the Insured Bonds to all amendments to the [1998 HTA Resolution] to which the Fiscal Agent and the owners of Insured Bonds have the right to consent, as long as FGIC is not at that time in default on its obligations under the [Series I & J TRBs Insurance Policy]." 2004 HTA Bond Insurance Agreement § 2(c).

25

- **Series L TRBs –** "[FGIC] shall be recognized as the registered owner of each FGIC Insured Bond for purposes of exercising all rights and privileges available to the registered owners of the FGIC Insured Bonds." 2005 Bond Insurance Agreement § 5.

- **Series N TRBs –** "[FGIC] shall be recognized as the registered owner of each FGIC Insured Bond for purposes of exercising all rights and privileges available to the registered owners of the FGIC Insured Bonds." 2007 Bond Insurance Agreement § 5.

- **STRBs** – "FGIC shall be deemed to be the sole holder of the FGIC Insured Bonds in lieu of the holders thereof for so long as it has not failed to comply with its payment obligations under the FGIC Policy." 2005 SRTBS Resolution § 25(b).

- **Series A HOTRBs –** "FGIC shall be deemed to be the sole holder of the FGIC Insured Bonds for so long as it has not failed to comply with its payment obligations under the FGIC policy for all purposes of the Trust Agreement provisions governing events of default and remedies." CCDA Supplemental Trust Agreement §§ 17 (1) and 17(d).

48.     Each of the provisions enumerated above expressly grant FGIC the right to act as the sole holder of the FGIC Held Bonds so long as the relevant insurance policy remains in full force and effect for the purpose of directing remedies and/or consenting to proposed amendments or modifications in lieu of the bondholders.   Accordingly, pursuant to PROMESA section 301(c)(B), FGIC is the holder of the FGIC Held Bond Claims and has the right to vote the full amount of such claims.

**B.     FGIC is Entitled to Vote the Bonds It Holds Directly, by Virtue of Assignment, or Through Subrogation**

49.     Pursuant to section 1126(a) of the Bankruptcy Code, FGIC is entitled to vote any claims that it directly holds.  *See* 11 U.S.C. § 1126(a).  As of the date hereof, FGIC owns and is the sole holder of FGIC insured 2006 GO Bonds and the FGIC insured 2007 GO Bonds and is entitled to vote all of the claims arising thereunder.  *See* Voting Right Chart, Schedule 1.

50.     Additionally, FGIC either directly owns or has been assigned the ownership rights of some of the beneficial holders of the FGIC Insured Bonds in exchange for FGIC's payment of

its obligations under the relevant insurance policies.  (FGIC's relative ownership percentage with respect to each of the FGIC Insure Bonds is summarized in the Voting Rights Chart attached as Schedule 1.)  FGIC requires the assignment of the bondholder's rights prior to satisfying its obligations under the relevant insurance policies.  Generally, the assignment documents provide in relevant part that:

> FGIC may exercise any option, vote, right, power or the like (including, but not limited to, any such rights arising in context of a bankruptcy, insolvency, liquidation or other reorganization of the Issuer), the Custodian, or the owner of the Transferable Custodial Receipt for Insured Bonds or the Holder of Insured Bonds, as the case may be, may have to the extent of the Assigned Principal and, if applicable, the Assigned Interest for each Bond upon and after such payment by the Fiscal Agent or FGIC to the Custodian..

*See, e.g.*, Form of Assignment at 2, attached hereto as **Exhibit X**.  Accordingly, pursuant to such assignment, FGIC has the right to vote the claims arising under the FGIC Insured Bonds in the amounts set forth in Schedule 1.

51.    Finally, FGIC is also entitled to vote a portion of the FGIC Insured Bond Claims through its contractual subrogation rights.  As set forth above, each of the insurance policies expressly provide that upon FGIC's payment of its obligations under the policies, it is fully subrogated to the rights of the bondholders under the relevant documents.[33]  As the contractual

---

[33] *See, e.g.*, Municipal Bond Partial Maturity Secondary Market Insurance Policy, Policy Number 02020079 at 1 (FGIC "shall become the owner of the [2002 GO Bond], appurtenant coupon or right to payment of principal or interest on such [2002 GO Bond] and shall be fully subrogated to all of the Custodian's rights and the rights of the owner of the Transferable Custodial Receipt for Insured Bonds or the Holder of Insured Bonds, as the case may be, thereunder, including the right to payment thereof."); 2002 GO Refunding Bond Insurance Policy at 1 (FGIC "shall become the owner of the [2002 GO Refunding Bond], appurtenant coupon or right to payment of principal or interest on such [2002 GO Refunding Bond] and shall be fully subrogated to all of the Custodian's rights and the rights of the owner of the Transferable Custodial Receipt for Insured Bonds or the Holder of Insured Bonds, as the case may be, thereunder, including the right to payment thereof."); 2003 GO Bond Insurance Policy at 1 (FGIC "shall become the owner of the [2003 GO Bond], appurtenant coupon or right to payment of principal or interest on such [2003 GO Bond] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the right to payment thereof."); 2003 GO Refunding Bond Insurance Policy at 1 (FGIC "shall become the owner of the [2003 GO

subrogee of the beneficial holders of the FGIC Insured Bonds, FGIC is entitled to all rights and

benefits with respect to the FGIC Insured Bond Claims, including the right to vote such claims.

*See Avondale Gateway Ctr. Entitlement, LLC v. Nat'l Bank of Ariz. (In re Avondale Gateway Ctr.*

*Entitlement, LLC)*, 2011 WL 1376997, at *3 (D. Ariz. Apr. 12, 2011) ("Under the Subrogation

Clause, therefore, [the subrogee] steps into the shoes of [the subrogor] with respect to the claim

against [the debtor] and acquires all of [the subrogor's] rights with respect to that claim. [The

subrogor's] right to vote on [the debtor's] reorganization plan flows from its claim in bankruptcy

against [the debtor].  As a result, [the subrogee] succeeds to that right as subrogee of [the subrogor]

and as the effective holder of [the subrogor's] claim."); *cf. In re American Roads LLC*, 496 B.R.

---

Refunding Bond], appurtenant coupon or right to payment of principal or interest on such [2003 GO Refunding Bond] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof."); 2006 GO Bond Insurance Policy (FGIC "shall become the owner of the [2006 GO Bond], appurtenant coupon or right to payment of principal or interest on such [2006 GO Bond] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof."); 2007 GO Refunding Bond Insurance Policy at 1 (FGIC "shall become the owner of the [2007 GO Refunding Bond], appurtenant coupon or right to payment of principal or interest on such [2007 GO Refunding Bond] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof."); PBA Refunding Bond Insurance Policy at 1 (FGIC "shall become the owner of the [PBA Refunding Bond], appurtenant coupon or right to payment of principal or interest on such [PBA Refunding Bond] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof."); Series G & H TRBs Insurance Policy at 1 (FGIC "shall become the owner of the [Series G & H TRBs], appurtenant coupon or right to payment of principal or interest on such [Series G & H TRBs] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof."); Municipal Bond New Issue Insurance Policy, Policy Number 03010507 (FGIC "shall become the owner of the [Subordinated TRBs], appurtenant coupon or right to payment of principal or interest on such [Subordinated TRBs] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof."); Series I & J TRBs Insurance Policy at 1 (FGIC "shall become the owner of the [Series I & J TRBs], appurtenant coupon or right to payment of principal or interest on such [Series I & J TRBs] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof."); Series L TRBs Insurance Policy (FGIC "shall become the owner of the [Series L TRBs], appurtenant coupon or right to payment of principal or interest on such [Series L TRBs] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof.") STRBs Insurance Policy at 1 (FGIC "shall become the owner of the [STRBs], appurtenant coupon or right to payment of principal or interest on such [STRBs] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof."); Series A HOTRBs Insurance Policy at 1 (FGIC "shall become the owner of the [Series A HOTRBs], appurtenant coupon or right to payment of principal or interest on such [Series A HOTRBs] and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof.").

727, (Bankr. S.D.N.Y. 2013) (enforcing the plain language of the relevant financing documents which provided the insurer the right to enforce rights and remedies against the debtor and its collateral and holding that the bondholders did not have standing to appear in the bankruptcy proceeding); *In re Aerosol Packaging, LLC)* 362 B.R. 43 (Bankr. N.D. Ga. 2006) (enforcing the express terms of a subordination agreement between the parties and finding that Wachovia had the right to vote Blue Ridge's claim).  Pursuant to the Plan of Rehabilitation, FGIC has complied with its payment obligations under each of the relevant insurance policies and, accordingly, as of the date hereof, has the right to vote the claim amounts set forth on Schedule 1 as a subrogee.

**C.**   **The Clawback Claim Should be Temporarily Allowed for Voting Purposes in Full**

52.   Pursuant to Bankruptcy Rule 3018(a), "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."  Fed. R. Bankr. P. 3018(a).  Bankruptcy Rule 3018(a) "was designed to give all creditors, even those holding disputed claims, the opportunity to vote."  *In re Century Glove, Inc*., 88 B.R. 45, 46 (Bankr. D. Del. 1988). The policy behind temporarily allowing claims is "to prevent possible abuse by plan proponents" who attempt to ensure acceptance of a plan by gaming the system through objections to the claims of dissenting creditors.  *In re Armstrong*, 292 B.R. 678, 686 (10th Cir. BAP 2003); *see also In re Harmony Holdings, LLC*, 395 B.R. 350, 353–54 (Bankr. D. S.C. 2008) ("[O]ne can easily visualize a situation where it would be grossly unfair and unjust to disenfranchise any claim or interest just because a debtor interposed an objection to the allowance of the claim or interest. . . . To achieve justice, some discretion must be left to the court to deal with the problem just described." (quoting, *In re Gardinier, Inc*., 55 B.R. 601, 604 (Bankr. M.D. Fla.1985)).

53.     The decision to grant temporary allowance of a claim for voting purposes under Bankruptcy Rule 3018 is at the reasonable discretion of the bankruptcy court. *See Pension Ben. Guar. Corp. v. Enron Corp.*, No. 04 CIV. 5499 (HB), 2004 WL 2434928, at *5 (S.D.N.Y. Nov. 1, 2004).  There is, however, a presumption in favor of temporarily allowing a disputed claim for purposes of voting. *See In re Amarex Inc.*, 61 B.R. 301, 303 (Bankr. W.D. Okla. 1985) ("[T]o allow [the disputed claims] to vote on the plans, even though some may be eventually disallowed for purposes of distribution, is more in keeping with the spirit of chapter 11 which encourages creditor vote and participation in the reorganization process.").

54.     Because a properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim," Fed. R. Bankr. P. 3001(f), the burden falls to the objecting party to present rebuttal "evidence in support of its objection which must be of probative force equal to that of the allegations of the creditor's proof of claim." *In re Frascella Enterprises*, 360 B.R. 435, 458 n.49 (Bankr. E.D. Penn. 2007).  Temporary allowance of a claim is warranted if the evidence establishes that the claimant has "a colorable claim capable of temporary evaluation." *In re Armstrong*, 294 B.R. 344, 354 (10th Cir. BAP 2003).  To estimate  the claim, the court "should use whatever method is best suited to the circumstances"—but it is "bound by the legal rules which govern the ultimate value of the claim." *In re Brints Cotton Mktg., Inc*., 737 F.2d 1338, 1341 (5th Cir. 1984) (citation omitted).  *See also In re CGE Shattuck, LLC*, No. 99-12287-JMD, 2000 WL 33679410, at *4 (Bankr. D.N.H. Nov. 30, 2000) (evaluating the competing documentary evidence supporting the disputed claim to value it for voting purposes); *Bittner v. Borne Chem. Co*., 691 F.2d 134, 135 (3d Cir. 1982) (holding that a creditor is entitled to vote a claim in full if the claim is valid as shown by a preponderance of the evidence); *In re Am. Solar King Corp*., 90 B.R. 808, 829 n.39 (Bankr. W.D. Tex. 1988) ("In estimating a claim, the bankruptcy court should use

30

whatever method is best suited to the particular circumstances.  Although the bankruptcy court is bound by the legal rules which govern the ultimate value of the claim, there are no other limitations on the court's authority to estimate claims.").

55.     The Court should temporarily allow the Clawback Claim in full for voting purposes because there is no dispute as to the amount of the Clawback Claim and no party will be prejudiced by its allowance.  The Clawback Claim is based on the Commonwealth's unlawful diversion of the Pledged Revenues for its own uses.  Though FGIC, along with the other monoline insurers, filed mandamus and equitable actions seeking to restore the pledged revenue streams, such actions have been stayed by the Court and the lift stay litigation seeking authority to pursue such actions has also been stayed at the Oversight Board's request.  Though the Oversight Board ostensibly filed the Adversary Proceedings to avoid piecemeal litigation that flowed from the Commonwealth's diversion of the Pledged Revenues, the effect of the Adversary Proceedings has been to delay FGIC and the other monoline insurers from obtaining a ruling on the merits in advance of a confirmation hearing.

56.     Significantly, though the Oversight Board has objected to the Clawback Claim, no party disputes that the monoline insurers have valid claims with respect to the Revenue Bonds.  In fact, there is no dispute (i) as to the amount at issue, (ii) that the Revenue Bonds were validly issued, (iii) that the Revenue Bonds are secured bonds (although the extent of the security is disputed), and (iv) that the relevant Commonwealth legislation controlling the revenue stream was in effect at the time the Revenue Bonds were issued.  Factual disputes only exist over the extent of security pledged and whether special deposits, special funds, and special accounts control the Pledged Revenues.  Additionally, there is a legal dispute as to whether PROMESA preempts previous legislation and, effectively, validates the Commonwealth's unlawful diversion of funds.

57.     Limited fact discovery in the Adversary Proceedings has proved fruitful, and defendants have discovered additional evidence supporting their claims that the Pledged Revenues are segregated resources of the Commonwealth's instrumentalities and not property of the Commonwealth.  *See Summary Judgment Objection* ¶ 25.  As is apparent in the initial summary judgment briefing, though the parties are still in the early stages of litigation, at minimum FGIC's Clawback Claim is "colorable [and] capable of temporary evaluation."  *In re Armstrong*, 294 B.R. at 354.  Thus far, the Oversight Board has offered no evidence to show that the Clawback Claim should be fully disallowed.  Instead, the Oversight Board has acknowledged that there is a risk that it may lose the litigation and has chosen to enter into the HTA/CCDA PSA  (as defined in the Disclosure Statement)with certain holders of HTA Bonds, CCDA Bonds, Assured Guaranty Corp. and Assured Guaranty Municipal Corp., and National, purporting to settle, among other things, certain "clawback claims" against the Commonwealth.

58.     The Oversight Board's purported settlement of the clawback claims is significant because the settlement provides for recovery for the clawback claims that "reasonably reflect the [Commonwealth's] litigation risk related to the disputes in connection with the 'clawback claims' . . . ." Disclosure Statement § A.1.(b).  The Oversight Board has separately classified the clawback claims in the Plan as Class 56, and the only creditors currently able to vote in that class are the settling creditors whose claims arise from the same set of facts as the Clawback Claim. Accordingly. allowing FGIC to vote the Clawback Claim will not prejudice the rights of other creditors.  Indeed, considering the fact that FGIC's Clawback Claim is *pari passu* with the clawback claims of the settling creditors, allowing the settling creditors to vote their claims while simultaneously disallowing FGIC the right to vote the Clawback Claim would be inequitable. Given the status of the Adversary Proceedings and that no actual factual dispute exists regarding

32

the amount of the Clawback Claim, temporary allowance of the Clawback Claims in full for purposes of voting on the Plan is appropriate. *See, e.g.*, *In re Armstrong*, 292 B.R. at 686 (10th Cir. BAP 2003*)*.

## **CONCLUSION**

WHEREFORE FGIC respectfully request an order (i) granting the relief sought  herein, and (ii) granting such other and further relief as may be just and proper.

Dated:  July 13, 2021
          San Juan, Puerto Rico

.                                          Respectfully submitted,

                                           **REXACH & PICÓ, CSP**


                                           By: */s/ María E. Picó*
                                                María E. Picó
                                                USDC-PR 123214
                                                802 Ave. Fernández Juncos
                                                San Juan PR 00907-4315
                                                Telephone: (787) 723-8520
                                                Facsimile: (787) 724-7844
                                                E-mail: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*

    Martin A. Sosland (*pro hac vice*)
    2911 Turtle Creek, Suite 1400
    Dallas, TX 75219
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    E-mail: martin.sosland@butlersnow.com

    James E. Bailey III (*pro hac vice*)
    Adam M. Langley (*pro hac vice*)
    6075 Poplar Ave., Suite 500
    Memphis, TN  38119
    Telephone: (901) 680-7347
    Facsimile: (615) 680-7201
    E-mail: jeb.bailey@butlersnow.com
    adam.langley@butlersnow.com

*Attorneys for Financial Guaranty Insurance
Company*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify case participants.

Dated:  July 13, 2021.

By: */s/ Martin A. Sosland*

    Martin A. Sosland

*Attorney for Financial Guaranty Insurance
Company*