**<u>Exhibit G</u>**

2006 GO Bond Insurance Policy

(3)

## CERTIFICATE OF THE SECRETARY OF THE
## TREASURY AS TO THE SERIES A BOND RESOLUTION

I, JUAN CARLOS MÉNDEZ TORRES, Secretary of the Treasury of the Commonwealth

of Puerto Rico, DO HEREBY CERTIFY that attached hereto is a true and correct copy of the

following resolution, duly adopted by the Secretary of the Treasury of Puerto Rico on August 2,

2006, and approved by the Governor of the Commonwealth of Puerto Rico on the same date:

**A RESOLUTION PROVIDING FOR THE ISSUANCE OF
$500,000,000 PUBLIC IMPROVEMENT BONDS OF 2006 OF
THE COMMONWEALTH OF PUERTO RICO, SERIES A;
AWARDING SAID BONDS TO THE UNDERWRITERS
THEREOF; AND DETERMINING AND PROVIDING FOR
CERTAIN OTHER MATTERS IN CONNECTION
THEREWITH.**

IN WITNESS WHEREOF, I have hereunto set my hand this 10th day of August, 2006.

_____
Secretary of the Treasury
of Puerto Rico

**COMMONWEALTH OF PUERTO RICO**

**BOND RESOLUTION**

Adopted August 2, 2006

Authorizing and Securing

$500,000,000
COMMONWEALTH OF PUERTO RICO
PUBLIC IMPROVEMENT BONDS OF 2006, SERIES A

NY1 5922800v.6 45964/43

# TABLE OF CONTENTS

<u>**Page**</u>

Section 1. Authorization, Designation and Details of Bonds ...................................................... 1
Section 2. Mandatory Redemption .................................................................................................. 3
Section 3. Optional Redemption ...................................................................................................... 3
Section 4. Notice of Redemption ..................................................................................................... 3
Section 5. Partial Redemption ......................................................................................................... 4
Section 6. Effect of Calling for Redemption ................................................................................. 4
Section 7. Payment of Bonds .......................................................................................................... 5
Section 8. Execution, Issuance, Form and Delivery of Bonds.................................................... 5
Section 9. Concerning the Registrar; Acceptance of Duties...................................................... 12
Section 10. Registrar Entitled to Indemnity ................................................................................... 12
Section 11. Registrar Not Liable for Failure of the Commonwealth to Act ............................. 12
Section 12. Compensation and Indemnification of Registrar ...................................................... 12
Section 13. Registrar May Be Bondholder ..................................................................................... 13
Section 14. Registrar Not Responsible for Recitals ...................................................................... 13
Section 15. Certain Rights of Registrar .......................................................................................... 13
Section 16. Exchange and Registration of Transfer of Bonds .................................................... 13
Section 17. Ownership of Bonds ...................................................................................................... 14
Section 18. Pledge of Good Faith and Credit ................................................................................ 14
Section 19. Approval of Purchase Contract ................................................................................... 15
Section 20. Award and Delivery of Bonds ..................................................................................... 15
Section 21. Application of Bond Proceeds ...................................................................................... 15
Section 22. Authorization to Act ..................................................................................................... 15
Section 23. Legal Opinion ................................................................................................................. 15
Section 24. Preliminary Official Statement .................................................................................... 15
Section 25. Official Statement .......................................................................................................... 16
Section 26. Continuing Disclosure ................................................................................................... 16
Section 27. Amendments .................................................................................................................. 18
Section 28. Parties Interested Herein .............................................................................................. 18
Section 29. Tax Covenant ................................................................................................................. 18
Section 30. Payments Due on Non-Business Day .......................................................................... 20
Section 31. Concerning the AGC Insured Bonds and the FGIC Insured Bonds. ..................... 20
Section 32. Approval of Confirmation............................................................................................. 30
Section 33. Severability of Invalid Provisions................................................................................ 31
Section 34. Effectiveness ................................................................................................................... 31

APPENDIX A ................................................................................................................... App.A-1
EXHIBIT A ................................................................................................................................. A-1
EXHIBIT B ................................................................................................................................. B-1

**A RESOLUTION PROVIDING FOR THE ISSUANCE OF $500,000,000 COMMONWEALTH OF PUERTO PUBLIC IMPROVEMENT BONDS OF 2006, SERIES A; AWARDING SAID BONDS TO THE UNDERWRITERS THEREOF; AND DETERMINING AND PROVIDING FOR CERTAIN OTHER MATTERS IN CONNECTION THEREWITH.**

**WHEREAS**, by virtue of Act No. 43 of the Legislature of Puerto Rico (the "Legislature"), approved August 1, 2005, as amended by Act No. 159 of the Legislature of Puerto Rico, approved December 21, 2005 (collectively, "Act No. 43"), the Secretary of the Treasury of Puerto Rico (the "Secretary") is authorized to sell and issue at any one time or from time to time, upon resolution for that purpose and with the approval of the Governor of the Commonwealth of Puerto Rico (the "Commonwealth"), bonds of the Commonwealth in a principal amount not to exceed Six Hundred Seventy-five Million Dollars ($675,000,000) for the purpose of covering the cost of certain necessary public improvements, including financing costs, and no bonds have heretofore been issued pursuant to Act No. 43; and

**WHEREAS**, the underwriters named in the Purchase Contract (hereinafter mentioned) have agreed to purchase the Bonds (hereinafter mentioned) of the Commonwealth in an aggregate principal amount of $500,000,000 as described below on the terms and conditions contained in the Purchase Contract, dated August 2, 2006 (the "Purchase Contract"), by and among the Commonwealth and said underwriters; and

**WHEREAS**, the Secretary has determined that it is desirable at this time to sell and issue general obligation public improvement bonds of the Commonwealth authorized under Act No. 43 in the principal amount of $500,000,000 (the "Bonds"), that it is desirable at this time to provide funds for the purpose of paying a portion of the cost of public improvements and has determined to accept the offer made by said underwriters to purchase such Bonds; now, therefore,

**I, JUAN CARLOS MÉNDEZ TORRES**, Secretary of the Treasury of Puerto Rico, DO HEREBY RESOLVE AND DETERMINE as follows:

Section 1.    <u>Authorization, Designation and Details of Bonds</u>. For the purpose of providing funds for covering a portion of the costs of certain necessary public improvements and other expenditures referred to in Act No. 43, reimbursing Government Development Bank for Puerto Rico for certain advances made to fund a portion of such improvements and other expenditures, and paying the expenses related to the issuance and sale of the Bonds, there shall be issued under the authority of an Act of the Senate and House of Representatives of the United States in Congress assembled entitled, "An Act to provide a civil government for Puerto Rico, and for other purposes," approved March 2, 1917, as amended, as continued in effect by Public Law 600, approved July 3, 1950, as amended, and now known as the "Puerto Rican Federal Relations Act," and the Constitution and laws of the Commonwealth, including Act No. 43, the Bonds in the aggregate principal amount of Five Hundred Million Dollars ($500,000,000). The Bonds shall be designated, "Public Improvement Bonds of 2006 of the Commonwealth of Puerto Rico, Series A", shall be issuable as registered bonds without coupons in denominations of

$5,000 or any multiple thereof, shall be numbered from RA-1 upwards, and shall be dated their date of delivery. The Bonds shall mature on July 1 of the years and in the principal amounts and shall bear interest at the rate or rates per annum, all as set forth below:

$244,765,000 aggregate principal amount of the Bonds are serial bonds maturing on July 1 of the years and principal amounts and shall bear interest at the rate or rates per annum as follows:

| Year of Maturity | Principal Amount | Interest Rate |
|---|---|---|
| 2017 | $  720,000 | 4 ½% |
| 2021 | 1,220,000 | 5 ¼ |
| 2022 | 35,475,000 | 5 ¼ |
| 2023 | 37,340,000 | 5 ¼ |
| 2024 | 39,300,000 | 5 ¼ |
| 2025 | 41,360,000 | 5 ¼ |
| 2026 | 43,530,000 | 5 ¼ |
| 2027 | 45,820,000 | 5 ¼ |

$126,725,000 aggregate principal amount of the Bonds are CPI Bonds (as defined in Appendix A hereto) consisting of $30,005,000 bonds maturing on July 1, 2018, $31,280,000 bonds maturing on July 1, 2019, $32,625,000 bonds maturing on July 1, 2020 and $32,815,000 bonds maturing on July 1, 2021. The CPI Bonds maturing July of the years 2018 through 2020 are insured by Assured Guaranty Corp. (the "AGC Insured Bonds") and the remaining CPI Bonds are insured by Financial Guaranty Insurance Company (the "FGIC Insured Bonds"; and collectively with the AGC Insured Bonds, the "Insured Bonds"). The CPI Bonds shall bear interest at a variable rate per annum determined as provided in Appendix A hereto and shall not be subject to redemption prior to maturity. The remaining Bonds are term bonds consisting of $128,510,000 bonds maturing on July 1, 2030, bearing interest at the rate of 5 ¼% per annum.

The interest to the payment of the Bonds shall be payable on January 1, 2007 and semi-annually thereafter on January 1 and July 1 in each year. Each Bond shall bear interest from the interest payment date next preceding the date on which it is authenticated, unless authenticated on an interest payment date, in which case it shall bear interest from such interest payment date, or unless authenticated prior to the first interest payment date, in which case it shall bear interest from its date; provided, however, that if at the time of authentication of any Bond interest is in default, such Bond shall bear interest from the date to which interest shall have been paid or duly provided for. Interest shall be computed on the basis of a 360-day year of twelve 30-day months.

The Amortization Requirements for the term Bonds which mature on July 1, 2030 shall be the following amounts on July 1 in the following years:

| Year | Amortization Requirement |
|---|---|

| 2028 | $48,225,000 |
| 2029 | 50,755,000 |

Section 2.    Mandatory Redemption.  The term Bonds due July 1, 2030 will be subject to redemption commencing on July 1, 2028, and on July 1 each year thereafter to the extent of the Amortization Requirements therefor at a redemption price equal to 100% of the outstanding principal amount thereof, together with accrued interest to the date fixed for redemption.

The Secretary shall on or before July 1, 2028 in respect of the term Bonds due July 1, 2030 and on or before each July 1 thereafter for which there is an Amortization Requirement, apply to the retirement, by purchase or redemption, of term bonds of each such maturity an amount at least equal to the Amortization Requirement for such bonds for such date.  The Secretary shall endeavor to purchase Bonds or portions of Bonds secured hereby and then outstanding, whether or not such Bonds or portions thereof shall then be subject to redemption, at the most advantageous price obtainable with reasonable diligence, such price not to exceed the principal of such Bonds.

The Secretary shall call for redemption on each July 1 on which term Bonds are subject to redemption a principal amount of such bonds equal to the aggregate principal amount of such bonds to be redeemed pursuant to the respective Amortization Requirements therefor less the aggregate principal amount of such Bonds purchased by the Secretary in accordance with this Section.

No such purchase shall be made by the Secretary within the period of forty-five (45) days immediately preceding any July 1 on which such Bonds are subject to call for redemption under the provisions of this Section except from moneys other than the moneys set aside or deposited for the redemption of such Bonds.

Section 3.    Optional Redemption.  The outstanding Bonds (except the outstanding CPI Bonds) shall be subject to redemption prior to their maturity, at the option of the Secretary, at any time from any moneys that may be available for that purpose (other than moneys set aside in respect of an Amortization Requirement), on or after July 1, 2016, either in whole or in part (and if in part, in such order of maturity as directed by the Secretary), at the principal amount of the Bonds to be redeemed, together with the interest thereon to the date fixed for redemption, without premium.

Section 4.    Notice of Redemption.  At least thirty (30) days prior to the date upon which any such redemption is to be made, a notice of such redemption, signed by the Registrar (hereinafter mentioned), designating the redemption date and the principal amount, redemption premium, if any, and accrued interest on the Bonds to be paid and, if less than all of the Bonds then outstanding shall be called for redemption, the particular Bonds or portions of Bonds to be redeemed, and otherwise complying with Securities Exchange Act of 1934 Release No. 34-23856, dated December 3, 1986 (the "Redemption Release"), shall be given by registered or certified mail, postage prepaid, to all registered owners of Bonds or portions thereof to be redeemed, at their addresses as they appear on the registration books hereinafter provided for.  In addition, the Registrar shall send a copy of the above notice of redemption to the persons

3

specified in Sections B and D of the Redemption Release at least two business days before notice is given in the preceding sentence. Any defect in or the failure to mail such notice to the owner of any Bond designated for redemption shall not affect the validity of the proceedings for the redemption of any other Bonds. Any failure to comply with the requirements of the Redemption Release or any failure to send such notice to the persons specified in said Sections B and D shall not affect the validity of the proceedings for the redemption of any Bonds. In case any Bond is to be redeemed in part only, the notice of redemption which relates to such Bond shall state also that on or after the redemption date, upon presentation and surrender of such Bond at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico, a new Bond or Bonds of the same maturity, bearing interest at the same rate, of authorized denominations and in principal amount equal to the unredeemed portion of such Bond will be issued. All Bonds so presented and surrendered shall be cancelled by the Registrar.

Section 5.     Partial Redemption. If less than all of the Bonds of any one maturity shall be called for redemption, the particular Bonds to be redeemed shall be selected by the Registrar by such method as it shall deem fair and appropriate; provided, however, that the portion of any Bond to be redeemed shall be in the principal amount of $5,000 or a multiple thereof, and that, in selecting Bonds for redemption, the Registrar shall treat each Bond as representing that number of Bonds which is obtained by dividing the principal amount of such Bond by $5,000.

In case part but not all of an outstanding Bond shall be selected for redemption, the registered owner thereof or such owner's attorney or legal representative shall present and surrender such Bond for payment of the principal amount thereof so called for redemption at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico. Thereupon, the Commonwealth shall execute in the manner provided in Section 8 of this Resolution and the Registrar shall authenticate and deliver to or upon the order of such registered owner or such owner's legal representative, without charge therefor, for the unredeemed portion of the Bond so surrendered, a Bond or Bonds, at the option of such registered owner or such owner's attorney or legal representative, of the same maturity, bearing interest at the same rate, of authorized denominations and in principal amount equal to the unredeemed portion of such Bond so surrendered.

Section 6.     Effect of Calling for Redemption. Notice having been given in the manner and under the conditions hereinabove provided, the Bonds or portions of Bonds so called for redemption shall, on the redemption date designated in such notice, become and be due and payable at the principal amount, redemption premium, if any, and accrued interest provided for redemption of such Bonds on such date. On the date so designated for redemption, notice having been given and moneys for payment of the principal of and the redemption premium, if any, and accrued interest on the Bonds so called for redemption being held by the Registrar, interest on the Bonds or portions of Bonds so called for redemption shall cease to accrue. Bonds and portions of Bonds which have been duly called for redemption under the provisions of this Resolution, or with respect to which irrevocable instructions to call for redemption or to pay at or prior to maturity have been given to the Registrar in form satisfactory to it, and for the payment of the principal of and the redemption premium, if any, and the accrued interest on which, sufficient available moneys or investments permitted by law which investments shall not contain provisions permitting redemption thereof at the option of the issuer, the principal of and interest on which when due, and without any reinvestment thereof, will provide sufficient moneys, shall

4

be held in trust for the owners of the Bonds or portions thereof to be paid or redeemed, shall not be deemed to be outstanding under this Resolution, and the registered owners thereof shall have no rights in respect thereof except to receive payment of the principal of and the redemption premium, if any, and the accrued interest on such Bonds or portions thereof and in the case of a Bond to be redeemed in part only, to receive a Bond for any unredeemed portion thereof as herein provided.

Section 7.     Payment of Bonds. The principal of each Bond is payable only to the registered owner or its registered assigns at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico, upon the presentation and surrender of such Bond, in any coin or currency of the United States of America which, at the date of payment thereof, is legal tender for the payment of public and private debts. Payment of the interest on any Bond shall be made to the person appearing on the registration books of the Commonwealth hereinafter mentioned as the registered owner thereof (or the previous Bond or Bonds evidencing the same debt as that evidenced by such Bond) at the close of business on the record date for such interest, which shall be the June 15 or December 15 (whether or not a business day) next preceding the applicable interest payment date in respect of the Bonds, such interest to be paid in like coin or currency by check mailed to such person at his address as it appears on such registration books, all as provided in this Resolution.

Section 8.     Execution, Issuance, Form and Delivery of Bonds. The Bonds authorized by this Resolution shall bear the facsimile signatures of the Governor of Puerto Rico and the Secretary, and a facsimile of the official seal of the Commonwealth shall be imprinted upon each of the Bonds and attested by the facsimile signature of the Secretary of State of Puerto Rico.

Subject to provisions of Section 6 of Act No. 20 of the Legislature of Puerto Rico, approved May 22, 1956, in case any officer of the Commonwealth whose signature or whose facsimile signature shall appear on any Bonds shall cease to be such officer before the delivery of such Bonds, such signature or such facsimile shall nevertheless be valid and sufficient for all purposes the same as if he had remained in office until such delivery, and also any Bond may be executed by such persons as at the actual time of the execution of such Bond shall be the proper officers to sign such Bond although at the date of such Bond such persons may not have been such officers.

The Bonds shall be executed substantially in the form and manner hereinbelow set forth and delivered to the Registrar for authentication.

When the Bonds shall have been executed and authenticated as required by this Resolution, the Registrar shall deliver the Bonds as directed by the Secretary but only upon receipt of written notice from the Secretary of receipt of the purchase price of the Bonds. The Registrar shall be entitled to rely conclusively upon such notice as to the names of the purchasers and the amount of such purchase price.

The Secretary shall apply the proceeds received from the sale of the Bonds in accordance with the provisions of Section 21 hereof.

NY1 5922800v.6 45964/43

No Bond shall be entitled to any benefit under this Resolution or be valid or become obligatory for any purpose, unless there appears on such Bond a certificate of authentication substantially in the form provided for herein, executed by the Registrar, and such executed certificate upon any Bond shall be conclusive evidence that such Bond has been duly authenticated and delivered hereunder. The Registrar's certificate of authentication on any Bond shall be deemed to have been duly executed if signed by an authorized officer of the Registrar, but it shall not be necessary that the same officer sign the certificate of authentication on all of the Bonds that may be issued hereunder at any one time.

The Bonds and the certificate of authentication to appear thereon shall be in substantially the following forms:

[Form of Bond]

No. RA-___                                                                       $_____

United States of America
Commonwealth of Puerto Rico

PUBLIC IMPROVEMENT BOND OF 2006
OF THE COMMONWEALTH OF PUERTO RICO, SERIES A

Maturity Date:                     Interest Rate:                     CUSIP No.:

July 1, ____

Registered Owner:

Principal Amount:                                        Dollars

The Commonwealth of Puerto Rico is justly indebted and for value received hereby promises to pay to the Registered Owner set forth above or registered assigns or legal representatives, on the Maturity Date specified above (or earlier as hereinafter referred to), upon the presentation and surrender hereof, the Principal Amount set forth above and to pay interest thereon from the date hereof or from the interest payment date next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is an interest payment date, in which case from such date, at the [Interest Rate per annum specified above] [in respect of the CPI Bonds insert: CPI Rate as defined and determined in the Resolution (hereinafter mentioned)] until payment of such Principal Amount, such interest to the payment hereof being payable on January 1, 2007 and semi-annually thereafter on the 1st days of January and July of each year.  The Principal Amount of this bond is payable upon presentation and surrender hereof at the corporate trust office of Banco Popular de Puerto Rico, Registrar, in the Municipality of San Juan, Puerto Rico.  Payment of the interest on this bond to the payment hereof shall be paid by check mailed to the person appearing on the registration books of the

6

Commonwealth of Puerto Rico (kept at the above office of the Registrar) as the registered owner hereof (or of the previous bond or bonds evidencing the same debt as that evidenced by this bond) at the close of business on the record date for such interest, which shall be the June 15 or December 15 (whether or not a business day) next preceding such interest payment date.  Both the principal of and interest on this bond are payable in such coin or currency of the United States of America which, at the respective dates of payment thereof, is legal tender for the payment of public and private debts.   The good faith, credit and taxing power of the Commonwealth of Puerto Rico are irrevocably pledged for the prompt payment of the principal of and the interest on this bond.

This bond is one of a duly authorized issue of bonds of the Commonwealth of Puerto Rico known as "Public Improvement Bonds of 2006 of the Commonwealth of Puerto Rico, Series A" issued under the authority of and in full compliance with an Act of the Senate and House of Representatives of the United States in Congress assembled entitled, "An Act to provide a civil government for Puerto Rico, and for other purposes," approved March 2, 1917, as amended, as continued in effect by Public Law 600, approved July 3, 1950, as amended, and now known as the "Puerto Rican Federal Relations Act," and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 43 of the Legislature of Puerto Rico, approved August 1, 2005, as amended by Act No. 159 of the Legislature of Puerto Rico, approved December 21, 2005 (collectively, the "Act"), and pursuant to a resolution of determination to issue said bonds (the "Resolution") duly adopted by the Secretary of the Treasury of Puerto Rico (the "Secretary") and approved by the Governor of Puerto Rico, for the purpose of covering the cost of certain improvements and paying other costs authorized by the Act and paying any expenses related to the issuance and sale of the bonds and, by the acceptance of this bond, the owner hereof assents to all the provisions of the Resolution.

The bonds are issuable as registered bonds without coupons in denominations of $5,000 or any multiple thereof.  At the corporate trust office of the Registrar, in the Municipality of San Juan, Puerto Rico, in the manner and subject to the limitations and conditions provided in the Resolution and without cost except for any tax or other governmental charge, bonds may be exchanged for an equal  aggregate principal amount of bonds of the same maturity, of authorized denominations and bearing interest at the same rate.

The outstanding bonds of this issue (except for the outstanding CPI Bonds (as defined in the Resolution) of this issue) may be redeemed prior to their maturity, at the option of the Secretary, from any moneys that may be available for that purpose (other than moneys set aside in respect of an Amortization Requirement), on or after July 1, 2016, on any date either in whole or in part (and if in part, in such order of maturity as directed by the Secretary), on any date at the principal amount of the bonds to be redeemed, together with the interest thereon to the date fixed for redemption, without premium if redeemed thereafter.

In addition, the bonds of this issue maturing July 1, 2030 in principal amount equal to the Amortization Requirement for such bonds, as defined in the Resolution, shall be redeemed, to the extent provided in the Resolution, commencing on July 1, 2028 and on July 1 in each year thereafter at par plus accrued interest, without premium.

NY1 5922800v.6 45964/43

Any such redemption, either in whole or in part, may be made upon at least thirty (30) days' prior notice by registered or certified mail to all registered owners and otherwise as provided in the Resolution, and shall be made in the manner and under the terms and conditions provided in the Resolution. On the date designated for redemption, notice having been given as provided in the Resolution and available moneys for payment of the principal of and the redemption premium, if any, and accrued interest on the bonds so called for redemption being held by the Registrar, interest on the bonds so called for redemption shall cease to accrue. Bonds and portions of bonds which have been duly called for redemption under the provisions of the Resolution, or with respect to which irrevocable instructions to call for redemption or to pay at or prior to maturity have been given to the Registrar in form satisfactory to it, and for the payment of the principal of and the redemption premium, if any, and the accrued interest on which sufficient available moneys or investments permitted by law (determined in accordance with the Resolution) shall be held in trust for the owners of the bonds or portions thereof to be paid or redeemed, shall not be deemed to be outstanding under the Resolution, and the registered owners thereof shall have no rights in respect thereof except to receive payment of the principal of and the redemption premium, if any, and the accrued interest thereon. If a portion of this bond shall be called for redemption, a new bond or bonds in principal amount equal to the unredeemed portion hereof will be issued to the registered owner upon the surrender hereof in accordance with the provisions of the Resolution.

If less than all of the bonds of any one maturity shall be called for redemption, the particular bonds or portions thereof to be redeemed from such maturity shall be selected by such manner as the Registrar deems fair and appropriate as provided in the Resolution.

The transfer of this bond is registrable by the registered owner hereof in person or by such owner's attorney or legal representative at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico, but only in the manner and subject to the limitations and conditions provided in the Resolution and upon surrender and cancellation of this bond. Upon any such registration of transfer the Commonwealth of Puerto Rico shall execute and the Registrar shall authenticate and deliver in exchange for this bond a new bond or bonds registered in the name of the transferee or transferees, of the same maturity, bearing interest at the same rate, of any authorized denominations and in principal amount equal to the principal amount of this bond.

This bond shall be governed and construed in accordance with the laws of the Commonwealth of Puerto Rico.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit under the Resolution until this bond shall have been authenticated by the execution by the Registrar of the certificate of authentication endorsed hereon.

It is hereby certified and recited that all acts, conditions and things required to happen, exist and be performed precedent to and in the issuance of this bond have happened, exist and have been performed in due time, form and manner as required by the Constitution and laws of the Commonwealth of Puerto Rico, and the total indebtedness of the Commonwealth of Puerto Rico, including this bond, does not exceed any debt or other limitation prescribed by law.

8

**IN WITNESS WHEREOF,** the Commonwealth of Puerto Rico has caused this bond to be executed with the facsimile signatures of the Governor of Puerto Rico and the Secretary and a facsimile of the official seal of the Commonwealth of Puerto Rico to be imprinted hereon and attested by the facsimile signature of the Secretary of State of the Commonwealth of Puerto Rico, all as of the __ day of _____, 2006.

_____ [Facsimile signature] _____
Governor of Puerto Rico

_____ [Facsimile signature] _____
Secretary of the Treasury of Puerto Rico

(SEAL)

Attest:

_____ [Facsimile signature] _____
Secretary of State of Puerto Rico

NYI 5922800v.6 45964/43

CERTIFICATE OF AUTHENTICATION
(to be endorsed on all bonds)


This is one of the bonds issued under the provisions of the Resolution mentioned herein.



Banco Popular de Puerto Rico
as Registrar



By: _____
Authorized Officer


Date of authentication: _____

NYI 5922800v.6 45964/43

## [FORM OF ASSIGNMENT]

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto

_____

[please print or type name and address of Transferee]

the within Bond and all rights thereunder, and hereby irrevocably constitutes and appoints

_____

attorney to register the transfer of the within Bond on the books kept for registration thereof, with full power of substitution in the premises.

Signature:    _____

Dated: _____    Guaranteed by:    _____

NOTICE: The signature to this assignment must correspond with the name as it appears upon the face of the within Bond in every particular, without alteration or enlargement or any change whatever and must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Registrar which requirements will include membership or participation in the Securities Transfer Agents Medallion Program or such other "signature guarantee program" as may be determined by the Registrar in addition to, or in substitution for the Securities Transfer Agents Medallion Program, all in accordance with the Securities Exchange Act of 1934, as amended.

Section 9.     Concerning the Registrar; Acceptance of Duties. Banco Popular de Puerto Rico, in the Municipality of San Juan, Puerto Rico, is hereby appointed as Registrar under this Resolution.  Prior to the issuance of Bonds under the provisions of this Resolution, the Secretary shall obtain from a duly authorized officer of said bank a written acceptance of the duties, obligations and trusts imposed upon said bank by this Resolution.

The Registrar undertakes to perform such duties and only such duties as are specifically set forth in this Resolution, and no implied covenants or obligations shall be read into this Resolution against the Registrar.

Section 10.     Registrar Entitled to Indemnity. The Registrar shall be under no obligation to do anything in its judgment proper to be done by it as such Registrar without indemnity, and in such case the Commonwealth shall reimburse the Registrar for all costs and expenses, outlays and counsel fees and other reasonable disbursements properly incurred in connection therewith.

Section 11.     Registrar Not Liable for Failure of the Commonwealth to Act. The Registrar shall not be liable or responsible because of the failure of the Commonwealth or of any of its employees or agents to make any collections or deposits or to perform any act herein required of the Commonwealth or because of the loss of any moneys arising through the insolvency or the act or default or omission of any other depositary in which such moneys shall have been deposited under the provisions of this Resolution.  The Registrar shall not be responsible for the application of any moneys deposited with it and paid out, withdrawn or transferred hereunder if such application, payment, withdrawal or transfer shall be made in accordance with the provisions of this Resolution.  The immunities and exemptions from liability of the Registrar hereunder shall extend to its directors, officers, employees and agents.

None of the provisions of this Resolution shall be construed to relieve the Registrar from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that

(a)     the Registrar shall not be liable for any error of judgment made in good faith by any one of its officers, unless it shall be established that the Registrar was negligent in ascertaining the pertinent facts;

(b)     no provision of this Resolution shall require the Registrar to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it; and

(c)     this paragraph shall not be construed to limit the effect of Sections 10 and 12 hereof.

Section 12.     Compensation and Indemnification of Registrar. The Commonwealth shall pay to the Registrar compensation as agreed upon between the Registrar and the Commonwealth for all services performed by it hereunder (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust) and

12

also all its reasonable expenses, disbursements and advances and those of its attorneys, agents and employees incurred in and about the administration and execution of the trusts hereby created and the performance of its powers and duties hereunder, and, subject to the provisions of Section 11 hereof, the Commonwealth shall indemnify and save the Registrar harmless against any loss, liability or expenses which it may incur without negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of the trusts hereunder, including the costs and expenses of defending itself against any claim or liability in connection with the exercise and performance of its powers and duties hereunder.

Section 13.   <u>Registrar May Be Bondholder</u>. The Registrar, and its directors, officers, employees or agents, may buy, sell, own, hold and deal in any of the Bonds, may engage, as principal or agent, or be interested, in any financial or other transaction with the Commonwealth, may maintain any and all other general banking and business relations with the Commonwealth with like effect and in the same manner as if the Registrar were not Registrar under this Resolution, and may act as depositary, trustee or agent for any committee or body of holders of the Bonds issued under and secured by this Resolution or other obligations of the Commonwealth with like effect and in the same manner as if the Registrar were not Registrar under this Resolution; and no implied covenant shall be read into this Resolution against the Registrar in respect of such matters.

Section 14.   <u>Registrar Not Responsible for Recitals</u>. The recitals contained herein and in the Bonds, except the certificate of authentication endorsed thereon, shall be taken as the statements of the Commonwealth, and the Registrar assumes no responsibility for their correctness. The Registrar makes no representations as to the validity or sufficiency of this Resolution or of the Bonds.

Section 15.   <u>Certain Rights of Registrar</u>. The Registrar may rely and shall be protected in acting or refraining from acting upon any resolution, order, notice, request, direction, consent, waiver, certificate, statement, instrument, requisition, bond or other paper or document believed by it to be genuine and to have been adopted or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of this Resolution, or upon the written advice of any attorney, accountant or other expert believed by the Registrar to be qualified in relation to the subject matter, and the Registrar shall be under no duty to make any investigation or inquiry as to any statements contained or matters referred to in any such document. Except as expressly provided herein, the Registrar shall not be under any obligation to see to the recording or filing of this Resolution or any other document or otherwise to the giving to any person of notice of the provisions hereof or thereof.

The Registrar may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys, and the Registrar shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

Section 16.   <u>Exchange and Registration of Transfer of Bonds</u>. The Commonwealth shall cause books (collectively, the "Bond Register") for the exchange and for the registration of transfers of Bonds as provided in this Resolution to be kept at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico.

13

Bonds, upon surrender thereof to the Registrar, together with an assignment duly executed by the registered owner or such owner's attorney or legal representative in such form as shall be satisfactory to the Registrar, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of Bonds of the same maturity, of any denomination or denominations authorized by this Resolution, and bearing interest at the same rate.

The transfer of any Bond may be registered upon the Bond Register only upon surrender thereof to the Registrar together with an assignment duly executed by the registered owner or such owner's attorney or legal representative in such form as shall be satisfactory to the Registrar. Upon any such registration of transfer the Commonwealth shall execute in the manner provided by Section 8 of this Resolution and the Registrar shall authenticate and deliver in exchange for such Bond a new Bond or Bonds registered in the name of the transferee or transferees, of any denomination or denominations authorized by this Resolution, in an aggregate principal amount equal to the principal amount of such Bond, of the same maturity and bearing interest at the same rate.

In all cases in which Bonds shall be exchanged or the transfer of Bonds shall be registered hereunder, the Commonwealth shall execute in the manner provided by Section 8 of this Resolution and the Registrar shall authenticate and deliver at the earliest practicable time Bonds in accordance with the provisions of this Resolution. All Bonds surrendered in any such exchange or registration of transfer shall forthwith be cancelled by the Registrar. The Registrar may make a charge for every such exchange or registration of transfer of Bonds sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer, but no other charge shall be made to any bondholder for the privilege of exchanging or registering the transfer of Bonds under the provisions of this Resolution. The Registrar shall not be required to make any such exchange or registration of transfer of Bonds during the fifteen (15) days immediately preceding the date of mailing of notice of redemption, or after such Bond or any portion thereof has been selected for redemption.

Section 17.  Ownership of Bonds. As to any Bond, the person in whose name the same shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes and payment of or on account of the principal of or interest on any such Bond shall be made only to or upon the order of the registered owner thereof or such owner's registered assigns or his legal representative, and neither the Commonwealth nor the Registrar shall be affected by any notice to the contrary.

Section 18.  Pledge of Good Faith and Credit. The good faith, credit and taxing power of the Commonwealth are irrevocably pledged for the prompt payment of the principal of and the interest on the Bonds authorized by this Resolution. The Secretary is authorized and directed to pay the principal of and the premium, if any, and the interest on the Bonds as the same shall fall due from any funds in the Treasury of the Commonwealth available for such purpose in the fiscal year for which said payment is required. Such funds in the Treasury of the Commonwealth available for such purpose shall be deposited by the Secretary in trust with the Registrar in the amounts required for payment of the interest on any Bonds by the Registrar on any interest payment date and the principal of and premium, if any, on any Bonds by the Registrar on any principal payment date.

14

Section 19.   <u>Approval of Purchase Contract</u>. The form of the Purchase Contract relating to the Bonds (the "Purchase Contract") presented to me this day attached hereto as Exhibit A, is hereby approved.  The Purchase Contract shall be executed and delivered by the Secretary with such appropriate changes as I may approve, such execution and delivery to be conclusive evidence of my approval of such changes.

Section 20.   <u>Award and Delivery of Bonds</u>. The offer submitted by Morgan Stanley and Co. Incorporated, as the representative of the underwriters named in the Purchase Contract, in the Purchase Contract, presented to me on the date hereof offering to purchase the Bonds at a purchase price equal to $510,545,544.41, without accrued interest, is hereby accepted, and the Bonds are hereby awarded to said underwriters (which underwriters have been recommended by management and approved by the Board of Directors of Government Development Bank for Puerto Rico) (the "Underwriters"), subject to the terms and conditions of said Purchase Contract.

Section 21.   <u>Application of Bond Proceeds</u>. The proceeds from the sale of the Bonds shall be applied as authorized under Act No. 43, as set forth in one or more certificates signed by the Secretary and filed with the Registrar prior to or concurrently with the delivery of the Bonds, except that moneys received as accrued interest on the Bonds shall be deposited in the Commonwealth Debt Redemption Fund (formerly, the Special Fund for the Amortization and Redemption of General Obligations Evidenced by Bonds and Promissory Notes).  Pending such application, such proceeds may be invested by the Secretary in investments authorized for the investment of public funds.

Section 22.   <u>Authorization to Act</u>. The Secretary and the officers and agents of the Commonwealth, the Registrar and Government Development Bank for Puerto Rico, in its capacity as Fiscal Agent for the Commonwealth, are hereby authorized and directed to do all acts and things required of or deemed advisable by them for the full, punctual and complete performance of all the terms, covenants, provisions and agreements of the Bonds, this Resolution and any other documents executed and delivered in connection with the issuance of the Bonds.

Section 23.   <u>Legal Opinion</u>. In the event the Bonds are no longer registered in the name of a securities depository or its nominee, there shall be printed on the reverse of each Bond the legal opinion of Sidley Austin LLP, Bond Counsel to the Commonwealth, with respect to the validity of the Bonds, and immediately following such legal opinion a certificate signed with the facsimile signature of the Secretary of State of Puerto Rico substantially as follows:

"I HEREBY CERTIFY that the foregoing is a true and correct copy of the legal opinion upon the bonds therein described which was manually signed by Sidley Austin LLP, New York, New York, and was dated the date of delivery of and payment for said bonds.

[Facsimile signature]
Secretary of State of Puerto Rico".

Section 24.   <u>Preliminary Official Statement</u>. The Preliminary Official Statement, dated July 27, 2006, of the Commonwealth in connection with the issuance of the Bonds is hereby approved and the distribution and use of said Preliminary Official Statement by the Underwriters

15

in connection with the offering of the Bonds are hereby in all respects ratified, confirmed and approved.

Section 25.   Official Statement. The Official Statement, dated August 2, 2006, of the Commonwealth in connection with the issuance of the Bonds, in the form presented to me or to the President or any Vice President of Government Development Bank for Puerto Rico acting as my agent on the date of the adoption of this Resolution and attached hereto as Exhibit B, is hereby approved with such appropriate changes, insertions and omissions as may be approved by me as evidenced by my signing said Official Statement, and the Underwriters are hereby authorized to distribute said Official Statement in connection with the offering and sale of the Bonds.

Section 26.   Continuing Disclosure. (a) In accordance with the requirements of Rule 15c2-12, as amended (the "Rule"), promulgated by the Securities and Exchange Commission (the "Commission"), the Commonwealth hereby covenants for the benefit of the persons who from time to time are the owners of the Bonds for federal income tax purposes (the "beneficial owners"):

1.   to file, within 305 days after the end of each fiscal year, commencing with the fiscal year ending June 30, 2006, with each nationally recognized municipal securities information repository ("NRMSIR") and with any Commonwealth state information depository ("SID") core financial information and operating data for the prior fiscal year, including (i) the Commonwealth's audited financial statements, prepared in accordance with generally accepted accounting principles in effect from time to time, and (ii) material historical quantitative data (including financial information and operating data) on the Commonwealth and revenues, expenditures, financial operations and indebtedness generally found in the Official Statements; and

2.   to file, in a timely manner, with each NRMSIR or with the Municipal Securities Rulemaking Board (the "MSRB") and with each Commonwealth SID notice of any failure of the Commonwealth to comply with the requirements of paragraph (1) above and of the occurrence of any of the following events with respect to the Bonds, if material:

a.   principal and interest payment delinquencies;

b.   non-payment related defaults;

c.   unscheduled draws on debt service reserves reflecting financial difficulties;

d.   unscheduled draws on credit enhancements reflecting financial difficulties;

e.   substitution of credit or liquidity providers, or their failure to perform;

f.   adverse opinions or events affecting the tax-exempt status of the Bonds;

g.   modifications to rights of the holders (including beneficial owners) of the Bonds;

h.   Bond calls;

16

i.   defeasances;

j.   release, substitution, or sale of property securing repayment of the Bonds; and

k.   rating changes.

The Commonwealth does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the Bonds, unless the Commonwealth applies for or participates in obtaining the enhancement.

The Commonwealth does not undertake to provide the above-described event notice of a mandatory scheduled redemption, not otherwise contingent upon the occurrence of an event, if the terms, dates and amounts of redemption are set forth in detail in the Official Statements, the only open issue is which Bonds will be redeemed in the case of a redemption of less than all of the Bonds and notice of redemption is given in accordance with the terms of this Resolution and the Bonds being redeemed.

The Commonwealth may from time to time choose to provide notice of the occurrence of certain other events in addition to those listed above if, in the judgment of the Commonwealth, such other events are material with respect to the Bonds, but the Commonwealth does not undertake to provide any such notice of the occurrence of any material event except those events listed above.

The Commonwealth acknowledges that its undertaking pursuant to the Rule is intended to be for the benefit of the Beneficial Owners of the Bonds, and shall be enforceable by any such Beneficial Owners, provided that the right to enforce the provisions of its undertaking shall be limited to a right to obtain specific performance of the Commonwealth's obligations hereunder.

(b)     No beneficial owner may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of the foregoing covenant (the "Covenant") or for any remedy for breach thereof, unless such beneficial owner shall have filed with the Commonwealth written notice of any request to cure such breach, and the Commonwealth shall have refused to comply within a reasonable time.  All Proceedings shall be instituted only in a Commonwealth of Puerto Rico court located in the Municipality of San Juan for the equal benefit of all beneficial owners of the outstanding Bonds benefited by the Covenant, and no remedy shall be sought or granted other than specific performance of the Covenant at issue.

(c)     Notwithstanding the provisions of Section 27 hereof, the Covenant may only be amended if:

1.     the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the Commonwealth, or type of business conducted; the Covenant, as amended, would have complied with the requirements of the Rule at the time of award of the Bonds, after taking into account any amendments or change in circumstances; and the amendment does not materially impair the interest of beneficial owners, as determined by parties unaffiliated with the Commonwealth; or

17

2.      all or any part of the Rule, as interpreted by the staff of the Commission at the date of the adoption of such Rule, ceases to be in effect for any reason, and the Commonwealth elects that the Covenant shall be deemed amended accordingly.

The Commonwealth further agrees in conjunction with any such amendment that the annual financial information containing the amended operating data or financial information will explain, in narrative form, the reasons for the amendment and the impact of the change in the type of operating data or financial information being provided.

(d)      Any assertion of beneficial ownership must be filed, with full documentary support, as part of the written request described above.

Section 27.      Amendments. Subject to the limitations contained in Section 26 hereof, without the consent of any bondholders, the Secretary, with the approval of the Governor of Puerto Rico, may, from time to time and at any time, adopt such resolutions supplemental hereto as shall not be inconsistent with the terms and provisions hereof (which supplemental resolutions shall thereafter form a part hereof):

(a)      to cure any ambiguity or formal defect or omission to correct or supplement any provision herein which may be inconsistent with any other provision herein or to make any other provisions with respect to matters or questions arising under this Resolution which may not be inconsistent with the provisions of this Resolution, provided such action shall not adversely affect the interests of the holders of the Bonds, or to correct any inconsistent provisions or errors in this Resolution; or

(b)      to modify, amend or supplement this Resolution or any supplement or amendment hereto in such manner as to permit the Bonds to be rated by any nationally recognized securities rating service.

Section 28.      Parties Interested Herein. Nothing in this Resolution expressed or implied is intended or shall be construed to confer upon, or to give to, any person, other than the Commonwealth, the owners of the Bonds and the Underwriters any right, remedy or claim under or by reason of this Resolution or any covenant, stipulation, obligation, agreement or condition herein. All the covenants, stipulations, obligations, promises and agreements in this Resolution by and on behalf of the Commonwealth shall be for the sole and exclusive benefit of the Commonwealth, the owners of the Bonds and the Underwriters.

Section 29.      Tax Covenant. The Commonwealth shall comply with the requirements of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, to the extent permitted by the Constitution and laws of the Commonwealth, so that interest on the Bonds shall remain excludable from gross income for federal income tax purposes of the recipients thereof to the same extent that such interest was excludable on the date of initial delivery of the Bonds.

(a)      General. The Commonwealth hereby covenants with the holders of the Bonds that, notwithstanding any other provisions of this Resolution, it shall not take any action, or fail to take any action, if any such action or failure would adversely affect the exclusion from gross

18

income of interest on the Bonds under Section 103 of the Internal Revenue Code of 1986, and the regulations issued thereunder, as the same may be amended from time to time, and any successor provisions of law (the "Code"). The Commonwealth shall not, directly or indirectly, use or permit the use of proceeds of the Bonds or any of the property financed or refinanced with proceeds of the Bonds, or any portion thereof, by any person other than a governmental unit (as such term is used in Section 141 of the Code) in such manner or to such extent as would result in the loss of exclusion from gross income for federal income tax purposes of interest on the Bonds.

(b)     Use of Proceeds.  The Commonwealth shall not take any action, or fail to take any action, if any such action or failure would cause the Bonds to be "private activity bonds" within the meaning of Section 141 of the Code, and in furtherance thereof, shall not make any use of the proceeds of the Bonds or any of the property financed or refinanced with proceeds of the Bonds, or any portion thereof, or any other funds of the Commonwealth, that would cause the Bonds to be "private activity bonds" within the meaning of Section 141 of the Code.  So long as any Bonds are outstanding, the Commonwealth, with respect to such proceeds and property and such other funds, will comply with applicable requirements of the Code and all regulations of the United States Department of the Treasury issued thereunder.  The Commonwealth shall establish reasonable procedures necessary to ensure continued compliance with the Code and the continued qualification of the Bonds as "governmental bonds."

(c)     Arbitrage.  The Commonwealth shall not, directly or indirectly, use or permit the use of any proceeds of the Bonds, or of any property financed or refinanced thereby, or other funds of the Commonwealth, or take or omit to take any action, that would cause the Bonds to be "arbitrage bonds" within the meaning of Section 148 of the Code.  The Commonwealth shall comply with all requirements of Section 148 of the Code and all regulations of the United States Department of the Treasury issued thereunder to the extent such requirements are, at the time, in effect and applicable to the Bonds.

(d)     Federal Guarantee.  The Commonwealth shall not make any use of the proceeds of the Bonds or any other funds of the Commonwealth, or take or omit to take any other action, that would cause the Bonds to be "federally guaranteed" within the meaning of Section 149(b) of the Code.

(e)     Compliance with Tax Certificate.  The Commonwealth covenants that it will comply with the provisions of the Tax Certificate of the Commonwealth executed in connection with the issuance of the Bonds, which is incorporated herein by reference as if fully set forth herein.  These covenants shall survive payment in full or defeasance of the Bonds.

(f)     Compliance by Benefited Entities.  The Commonwealth will advance the proceeds of the Bonds to certain entities consisting of Commonwealth departments, agencies and public corporations (collectively, the "Benefited Entities") in order to finance capital improvements for such entities.  The Commonwealth covenants to require each Benefited Entity to covenant that it shall not take any action, or fail to take any action, if any such action or failure would adversely affect the exclusion from gross income of interest on the Bonds under Section 103 of the Code and to comply with such other requirements set forth in this Section 29.

Section 30.   <u>Payments Due on Non-Business Day</u>. In any case where the date of maturity of interest or principal of the Bonds shall not be a business day, then payment of interest or principal need not be made on such date but may be made on the next succeeding business day with the same force and effect as if made on such date of maturity, and no interest on such payment shall accrue for the period after such date.  The Commonwealth shall not be required to take any action on any day which is a public holiday in the Commonwealth but may take such action on the next day which is not a public holiday.

Section 31.   <u>Concerning the AGC Insured Bonds and the FGIC Insured Bonds</u>.

(a)   The commitment to issue financial guaranty insurance policy, dated August 1, 2006, from Assured Guaranty Corp. ("AGC") to the Commonwealth, relating to the AGC Insured Bonds (the "AGC Insurance Commitment"), and the commitment for municipal bond insurance, dated August 1, 2006, from Financial Guaranty Insurance Company ("FGIC") to the Commonwealth, relating to the FGIC Insured Bonds (the "FGIC Insurance Commitment"; and together with the AGC Insurance Commitment the "Insurance Commitments") are hereby approved and shall be substantially in the respective forms presented to me this day and shall be executed in the manner therein set forth, with such appropriate changes, insertions and omissions as may be approved by me or the other person executing the same, my or his or her execution of the Insurance Commitments to be conclusive evidence of any such approval.

The Commonwealth shall include on each of the Insured Bonds the respective statements of insurance set forth in the Insurance Commitments with only such changes as shall be approved by the applicable Insurer.

(b)   So long as the municipal bond insurance policy issued by AGC (the "AGC Insurance Policy") shall be in full force and effect with respect to the AGC Insured Bonds, and if AGC shall not be in default thereunder, the following provisions of this Section shall apply:

(i)   The Commonwealth will allow AGC or its agent access to all non-confidential records and will provide to AGC such records and notices as reasonably may be requested by AGC, including without limitation the following:  financial reports, operational statistics and strategic plans, if any, and any records or notices to be provided to the Registrar pursuant to the terms of this Resolution;

(ii)   Without the prior consent of AGC, no AGC Insured Bonds shall be purchased by the Commonwealth, or any of its affiliates, in lieu of redemption, unless such AGC Insured Bonds are redeemed, defeased or cancelled;

(iii)   The Commonwealth will furnish to AGC:

(a)   the fiscal year General Fund budget prior to the beginning of each fiscal year;

(b)   annual audits prepared by an independent certified public accountant within three hundred five (305) days of the completion of the Commonwealth's fiscal year; and

NY1 5922800v.6 45964/43

(c)     within thirty (30) days following any litigation or investigation that may have a material adverse affect on the financial position of the Commonwealth notice of such litigation.

(iv)    1.    Any notice that is required to be given to the holders of the AGC Insured Bonds or to each nationally recognized municipal securities information repositories or state information depositories pursuant to Rule 15c2-12(b) (5) adopted by the Commission or to the Registrar pursuant to this Resolution shall also be provided to AGC, simultaneously with the sending of such notices. In addition, all information furnished pursuant to Section 26, to the extent not otherwise provided in this paragraph, shall also be provided to AGC, simultaneously with the furnishing of such information.  All notices required to be given to AGC shall be in writing and shall be sent by registered or certified mail addressed to Assured Guaranty Corp., 1325 Avenue of the Americas, New York, New York 10019, Attention: General Counsel, with a copy to Assured Guaranty, Attention: Risk Management Department – Public Finance Surveillance.

2.    AGC shall have the right to receive such additional information as it may reasonably request.

3.    The Commonwealth will permit AGC to discuss the affairs, finances and accounts of the Commonwealth or any information AGC may reasonably request regarding the security for the AGC Insured Bonds with appropriate officers of the Commonwealth, will use best efforts to enable AGC to have access to the facilities, books and records of the Commonwealth on any business day upon reasonable prior notice, and will provide immediate notice to AGC if any long-term rating on the Commonwealth's outstanding public debt falls below "investment grade" as such term is commonly understood in relation to ratings on such debt.

4.    The Registrar shall notify AGC of any failure of the Commonwealth to provide notices, certificates and other information under this Resolution.

(v)    In the event that the principal and/or interest due on the AGC Insured Bonds shall be paid by AGC pursuant to the AGC Insurance Policy, the AGC Insured Bonds shall remain outstanding for all purposes, not be defeased or otherwise satisfied and not be considered paid by the Commonwealth, and the assignment and pledge of the trust estate and all covenants, agreements and other obligations of the Commonwealth to the registered owners thereof shall continue to exist and shall run to the benefit of AGC, and AGC shall be subrogated to the rights of such registered owners including, without limitation, any rights that such owners may have in respect of securities law violations arising from the offer and sale of the AGC Insured Bonds.

In addition, there shall be delivered to AGC the following items:

1. An opinion of counsel that the defeasance will not adversely affect the exclusion from gross income for federal income tax purposes of interest on the AGC Insured Bonds or the applicable refunding bonds.

2. An escrow agreement and an opinion of counsel regarding the validity and enforceability of the escrow agreement.

3. The escrow agreement shall provide that:

(a) Any substitution of securities shall require verification by an independent certified public accountant and the prior written consent of AGC.

(b) The Commonwealth will not exercise any optional redemption of AGC Insured Bonds secured by the escrow agreement or any other redemption other than mandatory sinking fund redemptions unless (i) the right to make any such redemption has been expressly reserved in the escrow agreement and such reservation has been disclosed in detail in the official statement for the refunding bonds, and (ii) as a condition of any such redemption there shall be provided to AGC a verification of an independent certified public accountant as to the sufficiency of escrow receipts without reinvestment to meet the escrow requirements remaining following such redemption.

(c) The Commonwealth shall not amend the escrow agreement or enter into a forward purchase agreement or other agreement with respect to rights in the escrow without the prior written consent of AGC.

(vi) 1. AGC shall receive prior written notice of any name change of the Registrar or the resignation or removal of the Registrar.

2. No removal, resignation or termination of the Registrar shall take effect until a successor, acceptable to AGC, shall be appointed.

3. The Registrar may be removed at any time, at the request of AGC, for any breach of its obligations under the financing documents.

(vii) With respect to amendments or supplements to this Resolution which do not require the consent of the holders of the AGC Insured Bonds, AGC must be given notice of any such amendments or supplements. With respect to amendments or supplements to this Resolution which require the consent of the holders of the AGC Insured Bonds, AGC's prior written consent will be required in lieu of the consent of such holders. Copies of any such amendments or supplements which are consented to by AGC shall be sent to the rating agencies that have assigned a rating to the AGC Insured Bonds. Notwithstanding any other provision hereof, in determining whether the rights of holders will be adversely affected by any action taken pursuant to the terms and provisions thereof, the Registrar shall consider the effect on such holders as if there were no AGC Insurance Policy.

(viii) To the extent that this Resolution confers upon or gives or grants to AGC any right, remedy or claim under or by reason hereof. AGC is explicitly recognized as being a

third party beneficiary hereunder and may enforce any such right, remedy or claim conferred, given or granted hereunder.

(ix)     AGC shall be deemed to be the holder of all of the AGC Insured Bonds for purposes of granting any consent, direction or approval or taking any action permitted by or required hereunder, to be granted or taken by the holders of such AGC Insured Bonds.

(x)     Any provision hereof expressly recognizing or granting rights in or to AGC may not be amended in any manner that affects the rights of AGC hereunder without the prior written consent of AGC.

(xi)     1.     At least two (2) business days prior to each payment date on the AGC Insured Bonds, the Registrar, will determine whether there will be sufficient funds to pay all principal of and interest on the AGC Insured Bonds due on the related payment date and shall immediately notify AGC or its designee on the same business day by telephone or electronic mail, confirmed in writing by registered or certified mail, of the amount of any deficiency. Such notice shall specify the amount of the anticipated deficiency, the AGC Insured Bonds to which such deficiency is applicable and whether such AGC Insured Bonds will be deficient as to principal or interest or both. If the deficiency is made up in whole or in part prior to or on the payment date, the Registrar shall so notify AGC or its designee.

2.     The Registrar, shall after giving notice to AGC as provided above, make available to AGC and, at AGC's direction, to any Fiscal Agent, the Bond Register.

3.     The Registrar shall provide AGC and any Fiscal Agent with a list of registered owners of AGC Insured Bonds entitled to receive principal or interest payments from AGC under the terms of the AGC Insurance Policy, and shall make arrangements with AGC, the Fiscal Agent or another designee of AGC to (i) mail checks to the registered owners of AGC Insured Bonds entitled to receive full or partial interest payments from AGC and (ii) pay principal upon AGC Insured Bonds surrendered to AGC, the Fiscal Agent or another designee of AGC by the registered owners of AGC Insured Bonds entitled to receive full or partial principal payments from AGC.

4.     The Registrar, shall, at the time it provides notice to AGC of any deficiency pursuant to clause 1. above, notify registered owners of AGC Insured Bonds entitled to receive the payment of principal or interest thereon from AGC (i) as to such deficiency and its entitlement to receive principal or interest, as applicable, (ii) that AGC will remit to them all or a part of the interest payments due on the related payment date upon proof of its entitlement thereto and delivery to AGC or any Fiscal Agent, in form satisfactory to AGC, of an appropriate assignment of the registered owner's right to payment, (iii) that, if they are entitled to receive partial payment of principal from AGC, they must surrender the related AGC Insured Bonds for payment first to the Registrar, which will note on such AGC Insured Bonds the portion of the principal paid by the Registrar and second to AGC or its designee, together with an appropriate assignment, in form

NYI 5922800v.6 45964/43

satisfactory to AGC, to permit ownership of such AGC Insured Bonds to be registered in the name of AGC, which will then pay the unpaid portion of principal, and (iv) that, if they are entitled to receive full payment of principal from AGC, they must surrender the related AGC Insured Bonds for payment to AGC or its designee, rather than the Registrar, together with the an appropriate assignment, in form satisfactory to AGC, to permit ownership of such AGC Insured Bonds to be registered in the name of AGC.

5.      In addition, if the Registrar has notice that any holder of the AGC Insured Bonds has been required to disgorge payments of principal or interest on the AGC Insured Bonds previously Due for Payment pursuant to a final non-appealable order by a court of competent jurisdiction that such payment constitutes an avoidable preference to such holder within the meaning of any applicable bankruptcy laws, then the Registrar shall notify AGC or its designee of such fact by telephone or electronic notice, confirmed in writing by registered or certified mail.

6.      The Registrar will be hereby irrevocably designated, appointed, directed and authorized to act as attorney-in-fact for holders of the AGC Insured Bonds as follows:

(a)     If and to the extent there is a deficiency in amounts required to pay interest on the AGC Insured Bonds, the Registrar shall (a) execute and deliver to AGC, in form satisfactory to AGC, an instrument appointing AGC as agent for such holders in any legal proceeding related to the payment of such interest and an assignment to AGC of the claims for interest to which such deficiency relates and which are paid by AGC, (b) receive as designee of the respective holders (and not as Registrar) in accordance with the tenor of the AGC Insurance Policy payment from AGC with respect to the claims for interest so assigned, and (c) disburse the same to such respective holders; and

(b)     If and to the extent of a deficiency in amounts required to pay principal of the AGC Insured Bonds, the Registrar shall (a) execute and deliver to AGC, in form satisfactory to AGC, an instrument appointing AGC as agent for such holder in any legal proceeding related to the payment of such principal and an assignment to AGC of the Obligation surrendered to AGC in an amount equal to the principal amount thereof as has not previously been paid or for which moneys are not held by the Registrar and available for such payment (but such assignment shall be delivered only if payment from AGC is received), (b) receive as designee of the respective holders (and not as Registrar) in accordance with the tenor of the AGC Insurance Policy payment therefore from AGC, and (c) disburse the same to such holders.

7.      Payments with respect to claims for interest on and principal of AGC Insured Bonds disbursed by the Registrar from proceeds of the AGC Insurance Policy shall not be considered to discharge the obligation of the Commonwealth with respect to such AGC Insured Bonds, and AGC shall become

24

the owner of such unpaid Obligation and claims for the interest in accordance with the tenor of the assignment made to it under the provisions of this subsection or otherwise.

8.     Irrespective of whether any such assignment is executed and delivered, the Commonwealth and the Registrar hereby agree for the benefit of AGC that:

(a)     they recognize that to the extent AGC makes payments directly or indirectly (*e.g.,* by paying through the Registrar), on account of principal of or interest on the AGC Insured Bonds, AGC will be subrogated to the rights of such holders to receive the amount of such principal and interest from the Commonwealth, with interest thereon as provided and solely from the sources stated in the financing documents and the AGC Insured Bonds; and

(b)     they will accordingly pay to AGC the amount of such principal and interest, with interest thereon as provided in the financing documents and the AGC Insured Bonds, but only from the sources and in the manner provided herein for the payment of principal of and interest on the AGC Insured Bonds to holders, and will otherwise treat AGC as the owner of such rights to the amount of such principal and interest.

9.     The Commonwealth hereby agrees to pay or reimburse AGC (A) for all amounts paid by AGC under the terms of the AGC Insurance Policy, and (B) any and all charges, fees, costs and expenses which AGC may reasonably pay or incur, including, but not limited to, fees and expenses of attorneys, accountants, consultants and auditors and reasonable costs of investigations, in connection with (i) any accounts established to facilitate payments under the AGC Insurance Policy, (ii) the administration, enforcement, defense or preservation of any rights in respect of this Resolution including defending, monitoring or participating in any litigation or proceeding (including any bankruptcy proceeding in respect of the Commonwealth or any affiliate thereof) relating to this Resolution or the transactions contemplated hereby, (iii) the pursuit of any remedies under this Resolution or (iv) any amendment, waiver or other action with respect to, or related to, this Resolution whether or not executed or completed; costs and expenses shall include a reasonable allocation of compensation and overhead attributable to time of employees of AGC spent in connection with the actions described in clauses (ii) - (iv) above.  In addition, AGC reserves the right to charge a reasonable fee as a condition to executing any amendment, waiver or consent proposed in respect of this Resolution.  The Commonwealth will pay interest on the amounts owed in this paragraph from the date of any payment due or paid, at the per annum rate of interest publicly announced from time to time by JP Morgan Chase Bank, National Association, at its principal office in New York, New York as its prime lending rate (any change in such prime rate of interest to be effective on the date such change is announced by JPMorgan Chase Bank, National Association) plus three percent (3%) per annum (the "Reimbursement Rate").  The Reimbursement Rate shall be calculated on the basis of the actual

number of days elapsed in a 360-day year. In the event JPMorgan Chase Bank ceases to announce its prime rate publicly, the prime rate shall be the publicly announced prime rate or base lending rate of such national bank, as AGC shall specify.

10.    In addition to any and all rights of reimbursement, subrogation and any other rights pursuant hereto or under law or in equity, the Commonwealth agrees to pay or reimburse AGC any and all charges, fees, costs, claims, losses, liabilities (including penalties), judgments, demands, damages, and expenses which AGC or its officers, directors, shareholders, employees, agents and each Person, if any, who controls AGC within the meaning of either Section 15 of the Securities Act of 1933 or Section 20 of the Securities Exchange Act of 1934 may reasonably pay or incur, including, but not limited to, fees and expenses of attorneys, accountants, consultants and auditors and reasonable costs of investigations, of any nature in connection with, in respect of or relating to the transactions contemplated by this agreement or any other financing document by reason of:

(a)    any omission or action (other than of or by AGC) in connection with the offering, issuance, sale, remarketing or delivery of the AGC Insured Bonds;

(b)    the negligence, bad faith, willful misconduct, misfeasance, malfeasance or theft committed by any director, officer, employee or agent of the Commonwealth in connection with any transaction arising from or relating to this agreement or any other financing document;

(c)    the violation by the Commonwealth of any law, rule or regulation, or any judgment, order or decree applicable to it;

(d)    the breach by the Commonwealth of any representation, warranty or covenant under this agreement or any other financing document or the occurrence, in respect of the Commonwealth, under this agreement or any other financing document of any "event of default" or any event which, with the giving of notice or lapse of time or both, would constitute any "event of default"; or

(e)    any untrue statement or alleged untrue statement of a material fact contained in any official statement, if any, or any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein not misleading, except insofar as such claims arise out of or are based upon any untrue statement or omission in information included in an official statement, if any, and furnished by AGC in writing expressly for use therein.

11.    AGC shall be entitled to pay principal or interest on the AGC Insured Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Commonwealth (as such terms are defined in the AGC

26

Insurance Policy) and any amounts due on the AGC Insured Bonds as a result of acceleration of the maturity thereof in accordance with this agreement, whether or not AGC has received a Notice (as defined in the AGC Insurance Policy) of Nonpayment or a claim upon the AGC Insurance Policy.

12.    In addition, AGC shall to the extent it makes any payment of principal or interest on the AGC Insured Bonds become subrogated to the rights of the recipients of such payments in accordance with the terms of the AGC Insurance Policy, and to evidence such subrogation (i) in the case of claims for interest, the Registrar shall note AGC's rights as subrogee on the registration books of the Commonwealth maintained by the Registrar, upon receipt of proof of payment of interest thereon to the registered holders of the AGC Insured Bonds, and (ii) in the case of claims for principal, the Registrar, if any, shall not AGC's rights as subrogee on the registration books of the Commonwealth maintained by the Registrar, upon surrender of the AGC Insured Bonds together with receipt of proof of payment of principal thereof.

(c)    So long as the municipal bond insurance policy issued by FGIC (the "FGIC Insurance Policy") shall be in full force and effect with respect to the FGIC Insured Bonds, and if FGIC shall not be in default thereunder, the following provisions of this Section shall apply:

(i)    If, on the third day preceding any interest payment date for the FGIC Insured Bonds there is not on deposit with the Registrar sufficient moneys available to pay all principal of and interest on the FGIC Insured Bonds due on such date, the Registrar shall immediately notify FGIC and U.S. Bank Trust National Association, New York, New York or its successor as its Fiscal Agent ("FGIC's Fiscal Agent") of the amount of such deficiency. If, by said interest payment date, the Commonwealth has not provided the amount of such deficiency, the Registrar shall simultaneously make available to FGIC and to FGIC's Fiscal Agent the registration books for the FGIC Insured Bonds maintained by the Registrar.

(ii)    The Registrar shall provide FGIC with a list of the Bondholders entitled to receive principal or interest payments from FGIC under the terms of the FGIC Insurance Policy and shall make arrangements for FGIC and its FGIC's Fiscal Agent (1) to mail checks or drafts to the Holders of FGIC Insured Bonds entitled to receive full or partial interest payments from FGIC and (2) to pay principal of the FGIC Insured Bonds surrendered to FGIC's Fiscal Agent by the Holders of said Bonds entitled to receive full or partial principal payments from FGIC; and

(iii)    The Registrar shall, at the time it makes the registration books available to FGIC pursuant to (i) above, notify the Holders of FGIC Insured Bonds entitled to receive the payment of principal of or interest on the FGIC Insured Bonds from FGIC (1) as to the fact of such entitlement, (2) that FGIC will remit to them all or part of the interest payments coming due subject to the terms of the FGIC Insurance Policy, (3) that, except as provided in paragraph (b) below, in the event that any Holder of a FGIC Insured Bond is entitled to receive full payment of principal from FGIC, such Holder of Bonds must tender his FGIC Insured Bond with the instrument of transfer in the form provided on the Bond executed in the name of FGIC, and (4) that, except as provided in paragraph (iv) below, in the event that such Holder is entitled to receive partial payment of principal from FGIC, such Holder must tender his FGIC Insured Bond

27

for payment first to the Registrar, which shall note on such Bond the portion of principal paid by the Registrar, and then, with an acceptable form of assignment executed in the name of FGIC, to FGIC's Fiscal Agent, which will then pay the unpaid portion of principal to the Holder of such FGIC Insured Bond, subject to the terms of the FGIC Insurance Policy.

(iv)    In the event that the Registrar has notice that any payment of principal of or interest on a FGIC Insured Bond has been recovered from a Holder of FGIC Insured Bonds pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with the final, nonappealable order of a court having competent jurisdiction, the Registrar shall, at the time it provides notice to FGIC, notify each Holder of FGIC Insured Bonds that in the event that any such Holder's payment is so recovered, such Holder of FGIC Insured Bonds will be entitled to payment from FGIC to the extent of such recovery, and the Registrar shall furnish to FGIC its records evidencing the payments of principal of and interest on the FGIC Insured Bonds which have been made by the Registrar and subsequently recovered from Holders of FGIC Insured Bonds, and the dates on which such payments were made.

(v)    FGIC shall, to the extent it makes payment of principal of or interest on the FGIC Insured Bonds, become subrogated to the rights of the recipients of such payments in accordance with the terms of the FGIC Insurance Policy and, to evidence such subrogation, (i) in the case of subrogation as to claims for past due interest, the Registrar shall note FGIC's rights as subrogee on the registration books maintained by the Registrar upon receipt from FGIC of proof of the payment of interest thereon to the Holders of such FGIC Insured Bonds and (ii) in the case of subrogation as to claims for past due principal, the Registrar shall note FGIC's rights as subrogee on the registration books for the FGIC Insured Bonds maintained by the Registrar upon receipt of proof of the payment of principal thereof to the Holders of such FGIC Insured Bonds. Notwithstanding anything in this Resolution or the FGIC Insured Bonds to the contrary, the Registrar shall make payment of such past due interest and past due principal directly to FGIC to the extent that FGIC is a subrogee with respect thereto.

(vi)    FGIC shall receive immediate notice of any payment default and notice of any other default known to the Registrar or the Secretary within 30 days of the Registrar's or the Secretary's knowledge thereof.

(vii)    FGIC shall be included as a party in interest and as a party entitled to request the Registrar or receiver to intervene in judicial proceedings that affect the FGIC Insured Bonds or the security therefor. The Registrar or receiver shall be required to accept notice of default from FGIC.

(viii)    FGIC shall have the right to consent in lieu of the Owners of FGIC Insured Bonds to all amendments to this Resolution to which the Registrar and the Owners of FGIC Insured Bonds have the right to consent, as long as FGIC is not in default on its obligations under the FGIC Insurance Policy. Copies of any such amendments which have been consented to by FGIC shall be sent to Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. FGIC shall be recognized as the registered owner of each FGIC Insured Bond for the purposes of exercising all rights and privileges available to bondholders under this Resolution. FGIC shall have the right to institute any suit, action, or proceeding at law

28

or in equity under the same terms as a holder of a FGIC Insured Bond in accordance with applicable provisions of this Resolution.

(ix)    FGIC shall be entitled to control and direct the enforcement of all rights and remedies granted under the Constitution and laws of Puerto Rico to the Holders of FGIC Insured Bonds or the Registrar for the benefit of the Holders of FGIC Insured Bonds under this Resolution.

(x)    FGIC shall receive notice of the resignation or removal of the Registrar and the appointment of any successor thereto.

(xi)    Only cash, direct non-callable obligations of the United States of America and securities fully and unconditionally guaranteed as to the timely payment of principal and interest by the United States of America, to which direct obligation or guarantee the full faith and credit of the United States of America has been pledged, Refcorp interest strips, CATS, TIGRS, STRPS, or defeased municipal bonds rated AAA by S&P or Aaa by Moody's (or any combination of the foregoing) shall be used to effect defeasance of the FGIC Insured Bonds unless FGIC otherwise approves. In the event of an advance refunding, the Secretary shall cause to be delivered a verification report of an independent nationally recognized certified public accountant. If a forward supply contract is employed in connection with the refunding, (1) such verification report shall expressly state that the adequacy of the escrow to accomplish the refunding relies solely on the initial escrowed investments and the maturing principal thereof and interest income thereon and does not assume performance under or compliance with the forward supply contract, and (2) the applicable escrow agreement shall provide that in the event of any discrepancy or difference between the terms of the forward supply contract and the escrow agreement (or the authorizing document, if no separate escrow agreement is utilized), the terms of the escrow agreement or authorizing document, if applicable, shall be controlling.

(xii)    FGIC shall be provided with the following information:

1.    notice from the Commonwealth of the downgrading by any rating agency of the Commonwealth's underlying public rating to "non-investment grade";

2.    notice from the Registrar of the redemption, other than mandatory sinking fund redemption, of any of the FGIC Insured Bonds, or of any advance refunding of the FGIC Insured Bonds, including the principal amount, maturities and CUSIP numbers thereof;

3.    notice from the Commonwealth of any material events pursuant to the Rule; and

4.    such additional information as FGIC may reasonably request from time to time.

(xiii)    The Commonwealth shall not purchase any FGIC Insured Bonds for any purpose other than retiring such Bonds.

29

(xiv)   All reports, notices and correspondence to be delivered to FGIC shall be delivered at the following address: Financial Guaranty Insurance Company, 125 Park Avenue, New York, New York 10017, Attention: Risk Management.

Section 32.   <u>Approval of Confirmation</u>. The execution and delivery by me of a confirmation, dated August 1, 2006 (the "Confirmation"), with Morgan Stanley Capital Services, Inc. ("MSCS") evidencing another Transaction, as that term is defined in the master agreement and related schedule and credit support annex, each dated as of June 21, 2006, by and between the Commonwealth and MSCS are hereby authorized, and the Confirmation shall be in the form presented to me on the date of this Resolution and attached hereto as Exhibit D and shall be executed in the manner therein set forth, subject to such changes, insertions and omissions as may be approved by me, my execution of the Confirmation to be conclusive evidence of any such approval.

NY1 5922800v.6 45964/43

Section 33.   <u>Severability of Invalid Provisions</u>. If any one or more of the provisions, covenants or agreements in this Resolution on the part of the Commonwealth to be performed should be contrary to law, then such provision or provisions, covenant or covenants or agreement or agreements shall be deemed separable from the remaining provisions, covenants and agreements herein, and shall in no way affect the validity of the other provisions of this Resolution or of the Bonds.

Section 34.   <u>Effectiveness</u>. This Resolution shall take effect upon its approval by the Governor of Puerto Rico.

Adopted on August 2, 2006

_____
Secretary of the Treasury of Puerto Rico

The foregoing Resolution and the issuance of the bonds authorized thereby as therein set forth are hereby approved this 2nd day of August, 2006.

_____
Governor of the Commonwealth of Puerto Rico

Attest:

_____
Secretary of State

_____
Acting Secretary of State

31

**APPENDIX A**

Section 1.01 <u>Definitions</u>. For purposes of this Appendix A, the following terms when used herein shall have the meanings given to them below:

"BLS" means the Bureau of Labor Statistics of U.S. Department of Labor or any successor providing substantially similar information.

"Business Day" means a day other than (i) a Saturday and Sunday, (ii) a day on which the Registrar, the Calculation Agent or banks and trust companies in The City of New York are authorized or required to remain closed, or (iii) a day on which the New York Stock Exchange is closed.

"Calculation Agent" means, initially, Morgan Stanley Capital Services Inc., or such other person as may be selected by the Secretary or the holders of a majority in principal amount of outstanding CPI Bonds, to perform the duties ascribed to the Calculation Agent in this resolution, its successors or assigns.

"Consumer Price Index" or "CPI" means the non-seasonally adjusted U.S. City Average All Items Consumer Price Index for All Urban Consumers, published monthly by BLS and reported on the Reporting Service.

"CPI Bonds" means Public Improvement Bonds of 2006 the Commonwealth of Puerto Rico, Series A, maturing on July 1 of the years 2018, 2019, 2020 and 2021 and having CUSIP Numbers 74514L JR 9, 74514L JS 7, 74514L JT 5, and 74514L JU 2.

"CPI Rate" means the annual rate that the Calculation Agent determines as of each Interest Reset Date, for the Interest Period beginning on such Interest Reset Date, pursuant to the following formula:

$$[(CPI_t — CPI_{t-12}) / CPI_{t-12}] + Spread$$

Where:

$CPI_t$     = CPI for the applicable Reference Month;

$CPI_{t-12}$ = CPI for the twelfth month prior to the applicable Reference Month; and

Spread  = 0.98% in respect of the CPI Bonds maturing July 1, 2018; 1% in respect of the CPI Bonds maturing July 1, 2019; 1.02% in respect of the CPI Bonds maturing July 1, 2020; and 0.9% in respect of the CPI Bonds maturing July 1, 2021.

In calculating $CPI_t$ and $CPI_{t-12}$, the Calculation Agent will use the most recently available value of the CPI, determined as described in the preceding paragraph, on the applicable Interest Reset Date, even if such value has been adjusted from a prior reported value for the relevant month. However, if any Initial CPI Value is subsequently revised by BLS, the Calculation Agent

will continue to use the Initial CPI Value for all purposes hereunder, and the interest rate for the related Interest Period, as determined based upon the Initial CPI Value, will not be revised.

"Initial CPI Value" means the value of $CPI_t$ and $CPI_{t-12}$ used by the Calculation Agent on any Interest Reset Date to determine the interest rate on the CPI Bonds.

"Initial Interest Rate" means 5.191% per annum in respect of the CPI Bonds maturing July 1, 2018, 5.211% per annum in respect of the CPI Bonds maturing July 1, 2019, 5.231% per annum in respect of the CPI Bonds maturing July 1, 2020, and 5.111% per annum in respect of the CPI Bonds maturing July 1, 2021.

"Initial Interest Period" means the period from and including the date of the delivery of the CPI Bonds to but excluding the initial Interest Reset Date.

"Interest Payment Date" means (i) with respect to the Initial Interest Period, January 1, 2007, and (ii) with respect to any Interest Period, the first Business Day immediately following that Interest Period.

"Interest Period" means each period (other than the Initial Interest Period) from and including one Interest Reset Date to but excluding the next Interest Reset Date; provided that the final Interest Period shall end on but exclude the maturity date for the CPI Bonds.

"Interest Reset Dates" means each January 1 and July 1, beginning January 1, 2007.

"Maximum Interest Rate" means the maximum rate permitted by applicable law.

"Reference Month" means, with respect to an Interest Reset Date, the third calendar month preceding that Interest Reset Date.

"Reporting Service" means Bloomberg CPURNSA or any successor service providing substantially similar information.

"Treasury Inflation-Indexed Securities Regulation" means the latest twelve-month change in the CPI available and announced by the Department of Treasury for its Inflation-Indexed Securities as described at 62 Federal Register 846-874 (January 6, 1997).

Section 1.02. Interest on the CPI Bonds; Method of Calculation; Minimum and Maximum Rates. The CPI Bonds will bear interest at the Initial Interest Rate during the Initial Interest Period. Thereafter, the CPI Bonds will bear interest at the CPI Rate until maturity or prior redemption.

The interest accruing on the CPI Bonds during the Initial Interest Period and each Interest Period will be computed on the basis of a 360-day year, consisting of twelve (12) thirty-day months. If, for any Interest Period, the CPI Rate is zero or a negative number, the interest rate for the CPI Bonds for that Interest Period will be 0%. In no event will the CPI Rate be greater than the Maximum Interest Rate. All calculations and determinations by the Calculation Agent will be final, absent manifest error.

NY1 5922800v.6 45964/43

Section 1.03 <u>Calculation of CPI Rate</u>. At or prior to 12:00 noon, New York time, on each Interest Reset Date (or, if such Interest Reset Date is not a Business Day, on the next succeeding Business Day), the Calculation Agent will calculate the CPI Rate applicable to that Interest Reset Date and shall notify the Secretary and the Registrar of the CPI Rate so determined in writing or by electronic communication promptly confirmed in writing.

If the CPI is not reported on the Reporting Service for the required month by 11:00 a.m., New York time, on an Interest Reset Date, but the CPI has otherwise been published by the BLS, the Calculation Agent will determine the CPI as published by BLS for such month using a source it deems to be accurate and appropriate. If the CPI is not published by BLS for a required month by 11:00 a.m., New York time, on an Interest Reset Date, the Calculation Agent will determine the CPI with reference to the Treasury Inflation-Indexed Securities Regulation or, if no such index number is announced, in accordance with general market practice at the time.

If, while the CPI Bonds are outstanding, the CPI is rebased to a different year or period, the base reference period for the CPI Bonds will continue to be the 1982-1984 reference period as long as the 1982-1984 CPI continues to be published. If the 1982-1984 CPI is not published, the Calculation Agent will determine the percentage change in inflation in accordance with general market practice at the time.

If, while the CPI Bonds are outstanding, the CPI is discontinued or substantially altered, as determined in the sole discretion of the Calculation Agent, the Calculation Agent will determine the CPI Rate with reference to an applicable substitute index chosen by the Secretary of the Treasury for the Department of Treasury's Inflation-Indexed Securities as described in the Treasury Inflation-Indexed Securities Regulation or, if no such securities are outstanding or no such substitute index is chosen, in accordance with general market practice at the time.

Section 1.04 <u>Rounding of Calculations</u>. All values used in the interest rate formula for the CPI Bonds will be truncated by the Calculation Agent to six decimal places and rounded to the nearest fifth decimal place (one-one hundred thousandth of a percentage point), rounding upwards if the sixth decimal place is five or greater (for example, 9.876555% (or .09876555) would be rounded up to 9.87656% (or .0987656) and 9.876554% (or .09876554) would be rounded down to 9.87655% (or .0987655)). All percentages resulting from any calculation of the interest rate will be truncated by the Calculation Agent to four decimal places and rounded to the nearest third decimal place (one thousandth of a percentage point), rounding upwards if the fourth decimal place is five or greater (for example, 9.8765% (or .098765) would be rounded up to 9.877% (or .09877) and 9.8764% (or .098764) would be rounded down to 9.876% (or .09876)). All dollar amounts used in or resulting from such calculation on the CPI Bonds will be rounded by the Calculation Agent to the nearest cent (with one-half cent being rounded upward).

**EXHIBIT A**

PURCHASE CONTRACT

(See Tabs No. 12 of this transcript)

NY1 5922800v.6 45964/43

**EXHIBIT B**

OFFICIAL STATEMENT

(See Tab No. 14 of this transcript)

NY1 5922800v.6 45964/43