**<u>Exhibit T</u>**

2005 SRTBS Resolution

60230033.v1

# CERTIFICATION

I, Olga L. Ortiz, Secretary of the Board of Directors of Puerto Rico Infrastructure Financing Authority DO HEREBY CERTIFY that attached hereto is a true and correct copy of Resolution 2005-17 duly adopted by the Board of Directors of said Authority at a meeting duly called and held on June 2, 2005, at which a quorum was present and acting throughout. Said resolution has not been repealed, revoked, rescinded or amended, and is in full force and effect on the date hereof.

**IN WITNESS WHEREOF, I SET** my hand and the corporate seal of Puerto Rico Infrastructure Financing Authority, this 16th day of June, 2005.

_____
Secretary

**(SEAL)**

# PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY

**Board of Directors**

### CERTIFICATE AS TO MEETING OF THE
### BOARD OF DIRECTORS OF PUERTO RICO
### INFRASTRUCTURE FINANCING AUTHORITY

I, Olga L. Ortiz, Secretary of the Puerto Rico Infrastructure Financing Authority (the "Authority"), DO HEREBY CERTIFY that the following is a true and correct copy of the pertinent extracts of the minutes of the meeting of Board of Directors of the Authority held on June 2, 2005 showing the adoption of Resolution 2005-17 by the Board of Directors of the Authority.

I FURTHER CERTIFY that such Resolution is the only Resolution of the Authority relating to the issuance of $309,102,577.35 in aggregate principal amount of Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005A, $324,625,000 in aggregate principal amount of Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005B and $699,235,338.80 in aggregate principal amount of Puerto Rico Infrastructure Financing Authority Special Tax Revenue Refunding Bonds, Series 2005C, and such Resolution has not been amended, annulled, rescinded or revoked in any way, and the same is still in full force and effect.

I FURTHER CERTIFY that each member of the Board of Directors of the Authority was furnished with notice of said meeting in compliance with the By-Laws of the Authority.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of Puerto

Rico Infrastructure Financing Authority this 16th day of June, 2005.

_____
Secretary
Puerto Rico Infrastructure
Financing Authority

[SEAL]

EXCERPTS FROM THE MINUTES OF THE MEETING OF THE BOARD OF DIRECTORS OF PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY HELD ON THE 2nd DAY OF JUNE, 2005 AT 1:45 PM, AT THE OFFICE OF PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY, SAN JUAN, PUERTO RICO.

The meeting of the Board of Directors of Puerto Rico Infrastructure Financing Authority was called to order at the office of Puerto Rico Infrastructure Financing Authority, San Juan, Puerto Rico, by Alfredo Salazar, who presided, and Olga L. Ortiz, who acted as Secretary at the meeting. Upon calling the roll the Secretary reported that the following members of the Board were present:

Alfredo Salazar-Conde, Vice President (acting as Interim President)
José F. Rodríguez-Perelló
Jorge Silva-Puras
Rafael Martínez-Margarida
Jorge Irizarry
Magda L. Aguiar Serrano

The following members of the Board were excused:

Hon. Juan C. Méndez-Torres
Ing. Ileana I. Fas-Pacheco

There was presented for consideration the following Resolution which, after full discussion, was unanimously adopted by all members of the Board present.

2

## RESOLUTION 2005-17

**RESOLUTION AUTHORIZING THE ISSUANCE OF $309,102,577.35 PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY SPECIAL TAX REVENUE BONDS, SERIES 2005A, $324,625,000 PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY SPECIAL TAX REVENUE BONDS, SERIES 2005B AND $699,235,338.80 PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY SPECIAL TAX REVENUE REFUNDING BONDS, SERIES 2005C, FIXING THE REDEMPTION TIMES AND PRICES FOR EACH SERIES OF SAID BONDS, FIXING THE AMORTIZATION REQUIREMENTS FOR SAID BONDS, AWARDING SAID BONDS, SPECIFYING THE INTEREST RATES FOR EACH SERIES OF SAID BONDS, AUTHORIZING THE EXECUTION AND DIRECTING THE AUTHENTICATION AND DELIVERY OF EACH SERIES OF SAID BONDS AND THE CONTRACT OF PURCHASE RELATING THERETO, DIRECTING THE APPLICATION OF THE PROCEEDS OF EACH SERIES OF SAID BONDS AND AUTHORIZING THE USE THEREOF, APPROVING THE FORM OF THE PRELIMINARY OFFICIAL STATEMENT RELATING TO SAID BONDS, AUTHORIZING THE EXECUTIVE DIRECTOR TO SIGN THE OFFICIAL STATEMENT RELATING TO SAID BONDS AND AUTHORIZING THE USE THEREOF, APPROVING THE FORM AND AUTHORIZING THE EXECUTION AND DELIVERY OF AN ESCROW DEPOSIT AGREEMENT, AUTHORIZING THE EXECUTION AND DELIVERY OF A SUPPLEMENTAL AGREEMENT TO THE TRUST AGREEMENT, PERMITTING THE INCLUSION OF THE LEGAL OPINION OF BOND COUNSEL ON EACH OF SAID BONDS, AUTHORIZING THE OFFICERS OF THE AUTHORITY AND ANY VICE PRESIDENT OF GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO TO EXECUTE SEPARATE INSURANCE COMMITMENTS RELATING TO SAID BONDS AND COVERING CERTAIN OTHER RELATED MATTERS.**

**BE IT RESOLVED** by the Board of Directors of Puerto Rico Infrastructure Financing Authority (the "Authority"):

Section 1.    For the purpose of providing funds for (a) repaying $26,331,792.08 advanced to the Authority by Government Development Bank for Puerto Rico ("GDB") under a line of credit evidenced by notes of the Authority issued to GDB and any additional amounts to be advanced to said Authority by GDB under such line of credit evidenced by additional notes of the Authority issued to GDB prior to the delivery of the 2005A Bonds (hereinafter mentioned) (the "Line of Credit Notes"), such Notes having been or being issued for the purpose of providing funds for paying the cost of certain capital improvements undertaken by the Authority or other government instrumentalities of the Commonwealth of Puerto Rico and (b) making a deposit to the credit of a special construction fund established in Section 12 below, and (c) paying certain expenses relating to the issuance thereof, the issuance of special tax revenue bonds of the Authority in the aggregate principal amount of Three Hundred Nine Million One

Hundred Two Thousand and Five Hundred Seventy-seven and 35/100 Dollars ($309,102,577.35) under and pursuant to the provisions of the Trust Agreement (hereinafter mentioned), is hereby authorized.

Section 2.    The bonds authorized by Section 1 of this Resolution (the "2005A Bonds") shall be issued under a trust agreement, dated as of October 1, 1988, as amended (the "Trust Agreement"), by and between the Authority and U.S. Bank Trust National Association, successor trustee (the "Trustee"). Said bonds shall be designated "Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005A", shall be dated their date of delivery and shall be issuable as registered bonds without coupons in denominations of $5,000 and any multiple thereof ($5,000 maturity amount and any multiple thereof with respect to the 2005A Capital Appreciation Bonds (hereinafter mentioned)).  $81,920,000 of such bonds shall be serial bonds maturing on July 1 in the years and in the amounts and bearing interest, as follows:

| Year of Maturity | Principal Amount | Interest Rate |
|---|---|---|
| 2014 | $ 3,890,000.00 | 4½% |
| 2015 | 4,065,000.00 | 4½ |
| 2016 | 4,245,000.00 | 4 |
| 2017 | 4,415,000.00 | 4 |
| 2018 | 4,600,000.00 | 4 |
| 2019 | 4,780,000.00 | 4 |
| 2020 | 4,970,000.00 | 5½ |
| 2021 | 5,240,000.00 | 5½ |
| 2022 | 5,525,000.00 | 5½ |
| 2023 | 5,835,000.00 | 5½ |
| 2024 | 6,155,000.00 | 5½ |
| 2025 | 6,495,000.00 | 5½ |
| 2026 | 6,850,000.00 | 5½ |
| 2027 | 7,230,000.00 | 5½ |
| 2028 | 7,625,000.00 | 5½ |

and $277,182,577.35 of such bonds shall be capital appreciation bonds (the "2005A Capital Appreciation Bonds") in the original principal amounts, maturing on July 1, in the years and maturity amounts with interest payable at maturity computed at the rates per annum as follows:

| Year of Maturity | Original Principal Amount | Amount Due at Maturity | Interest Rate |
|---|---|---|---|
| 2029 | $ 23,779,963.20 | $ 70,305,000 | 4.56% |
| 2030 | 22,510,254.90 | 70,305,000 | 4.60 |
| 2031 | 21,400,138.95 | 70,305,000 | 4.62 |
| 2032 | 20,336,424.30 | 70,305,000 | 4.64 |
| 2033 | 19,318,407.90 | 70,305,000 | 4.66 |
| 2034 | 18,448,735.05 | 70,305,000 | 4.66 |
| 2035 | 17,566,407.30 | 70,305,000 | 4.67 |
| 2036 | 16,774,069.95 | 70,305,000 | 4.67 |

2

| 2037 | 11,460,988.15 | 50,305,000 | 4.67 |
| 2042 | 15,001,840.00 | 86,000,000 | 4.77 |
| 2043 | 14,311,260.00 | 86,000,000 | 4.77 |
| 2044 | 13,651,640.00 | 86,000,000 | 4.77 |
| 2045 | 12,622,447.65 | 83,355,000 | 4.77 |

The amount due at maturity for each 2005A Capital Appreciation Bond shall equal the original principal amount of such 2005A Capital Appreciation Bond set forth above plus interest from its date of initial delivery compounded semi-annually on January 1 and July 1 of each year, commencing January 1, 2006, at the respective rates per annum set forth above.

The initial principal amount of a 2005A Capital Appreciation Bond plus the interest accrued to any given date, based upon the interest rates stated above, compounded semiannually on January 1 and July 1 of each year during the period from the original issue date to said date, represents its "Accreted Value". The Accreted Value of any 2005A Capital Appreciation Bond shall mean, as of any January 1 or July 1, the respective amounts set forth in Schedule A-1 hereto. The Accreted Value of such Bond as of any other date means the sum of (a) the Accreted Value of such Bond on the next preceding January 1 or July 1 and (b) the product of (i) a fraction, the numerator of which is the number of days having elapsed from such next preceding January 1 or July 1 and the denominator of which is the number of days from such next preceding January 1 or July 1 to the next succeeding January 1 or July 1 and (ii) the difference between the Accreted Value of such Bond on such next preceding and the next succeeding January 1 or July 1. The amount due at maturity of a 2005A Capital Appreciation Bond shall equal the Accreted Value of such Bond at maturity. For purposes of calculating Principal and Interest Requirements in the Trust Agreement, the Accreted Value of the 2005A Capital Appreciation Bonds shall be included as principal due and payable on the respective dates on which said Accreted Value is due and payable.

Interest on the 2005A Bonds (other than the 2005A Capital Appreciation Bonds) shall be payable semiannually on the 1st days of January and July in each year to maturity. The first such interest payment, representing six and one-half months' interest, shall be made on January 1, 2006. The 2005A Bonds shall be subject to the right of prior redemption, as hereinafter and in the Trust Agreement set forth, and shall be numbered R05A-1 and upwards. The 2005A Bonds maturing July 1 of the years 2014 through 2028, 2030 through 2033 and 2042 and 2045 (in such context, the "FGIC 2005A Insured Bonds") shall be insured by Financial Guaranty Insurance Company ("FGIC") pursuant to its municipal bond new issue insurance policy (the "FGIC 2005A Policy") and the remainder of the 2005A Bonds (in such context, the "AMBAC 2005A Insured Bonds") shall be insured by AMBAC Assurance Corporation ("AMBAC") pursuant to its financial guaranty insurance policy (the "AMBAC 2005A Policy").

Section 3. For the purpose of providing funds for (a) reimbursing the General Fund for advances made to the University of Puerto Rico, an instrumentality of the Commonwealth authorized to undertake infrastructure projects, for paying a portion of the cost of operations of said entity, and (b) paying certain expenses relating to the issuance thereof, the issuance of special tax revenue bonds of the Authority in the aggregate principal amount of Three Hundred Twenty-Four Million Six Hundred Twenty-five Thousand Dollars ($324,625,000) under and pursuant to the provisions of the Trust Agreement, is hereby authorized.

3

Section 4.    The bonds authorized by Section 3 of this Resolution (the "2005B Bonds") shall be issued under the Trust Agreement, shall be designated "Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005B", shall be dated their date of delivery, shall be issuable as registered bonds without coupons in denominations of $5,000 and any multiple thereof. $30,780,000 of such bonds shall be serial bonds maturing on July 1 of the years and in the amounts and bearing interest as follows:

| Year of Maturity | Principal Amount | Interest Rate |
|---|---|---|
| 2011 | $  3,455,000 | 4% |
| 2012 | 3,590,000 | 4 |
| 2013 | 3,735,000 | 4 |
| 2037 | 20,000,000 | 5 |

and the remaining bonds shall be term bonds in the principal amount of $293,845,000, bearing interest at a rate of 5% and maturing July 1, 2041.

Interest on the 2005B Bonds shall be payable semiannually on the 1st days of January and July in each year. The first such interest payment, representing six and one-half months' interest, shall be made on January 1, 2006. The 2005B Bonds shall be subject to the right of prior redemption as hereinafter and in the Trust Agreement set forth, and shall be numbered R05B-1 and upwards. The 2005B Bonds maturing July 1 of the years 2011 through 2013 (in such context, the "FGIC 2005B Insured Bonds") shall be insured by FGIC pursuant to its municipal bond new issue insurance policy (the "FGIC 2005B Policy").

The Amortization Requirements for the term 2005B Bonds maturing July 1, 2041 herein authorized, referred to and defined and subject to adjustment as provided in the Trust Agreement shall be as follows:

| Fiscal Year Ending June 30 | Amortization Requirements |
|---|---|
| 2038 | $  67,845,000 |
| 2039 | 71,500,000 |
| 2040 | 75,500,000 |

Section 5.    For the purpose of providing funds, with other available moneys, for (a) refunding all of the Authority's currently outstanding Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 1997A (the "Refunded Bonds") and (b) paying certain expenses relating to the issuance thereof, the issuance of special tax revenue refunding bonds of the Authority in the aggregate principal amount of Six Hundred Ninety-nine Million Two Hundred Thirty-five Thousand Three Hundred Thirty-eight and 80/100 Dollars ($699,235,338.80) under and pursuant to the provisions of the Trust Agreement, is hereby authorized.

4

Section 6.    The bonds authorized by Section 5 of this Resolution (the "2005C Bonds") shall be issued under the Trust Agreement and shall be designated "Puerto Rico Infrastructure Financing Authority Special Tax Revenue Refunding Bonds, Series 2005C", shall be dated their date of delivery, shall be issuable as registered bonds without coupons in denominations of $5,000 and any multiple thereof ($5,000 maturity amount and any multiple thereof with respect to the 2005C Capital Appreciation Bonds (hereinafter mentioned)). $685,700,000 of such bonds shall be serial bonds maturing on July 1 in the years and in the amounts and bear interest at the rate of 5½% per annum, as follows:

| Year of Maturity | Principal Amount |
|---|---|
| 2011 | $ 24,550,000.00 |
| 2012 | 25,900,000.00 |
| 2013 | 27,325,000.00 |
| 2014 | 28,825,000.00 |
| 2015 | 30,410,000.00 |
| 2016 | 32,085,000.00 |
| 2017 | 33,850,000.00 |
| 2018 | 35,705,000.00 |
| 2019 | 37,670,000.00 |
| 2020 | 39,745,000.00 |
| 2021 | 41,930,000.00 |
| 2022 | 44,240,000.00 |
| 2023 | 46,670,000.00 |
| 2024 | 49,235,000.00 |
| 2025 | 51,945,000.00 |
| 2026 | 54,800,000.00 |
| 2027 | 57,815,000.00 |
| 2028 | 23,000,000.00 |

and the remainder of such bonds shall be capital appreciation bonds (the "2005C Capital Appreciation Bonds") in the original principal amount of $13,535,338.80, maturing on July 1, 2028 in the maturity amount of $37,995,000 with interest payable at maturity computed at 4.53% per annum.

The amount due at maturity for the 2005C Capital Appreciation Bonds shall equal the original principal amount of such 2005C Capital Appreciation Bonds set forth above plus interest from its date of initial delivery compounded semi-annually on January 1 and July 1 of each year, commencing January 1, 2006, at the respective rates per annum set forth above.

The initial principal amount of a 2005C Capital Appreciation Bond plus the interest accrued to any given date, based upon the interest rates stated above, compounded semiannually on January 1 and July 1 of each year during the period from the original issue date to said date, represents its "Accreted Value". The Accreted Value of any 2005C Capital Appreciation Bond shall mean, as of any January 1 or July 1, the respective amounts set forth in Schedule A-2 hereto. The Accreted Value of such Bond as of any other date means the sum of (a) the Accreted

5

Value of such Bond on the next preceding January 1 or July 1 and (b) the product of (i) a fraction, the numerator of which is the number of days having elapsed from such next preceding January 1 or July 1 and the denominator of which is the number of days from such next preceding January 1 or July 1 to the next succeeding January 1 or July 1 and (ii) the difference between the Accreted Value of such Bond on such next preceding and the next succeeding January 1 or July 1. The amount due at maturity of a 2005C Capital Appreciation Bond shall equal the Accreted Value of such Bond at maturity. For purposes of calculating Principal and Interest Requirements in the Trust Agreement, the Accreted Value of the 2005C Capital Appreciation Bonds shall be included as principal due and payable on the respective dates on which said Accreted Value is due and payable.

Interest on the 2005C Bonds (other than the 2005C Capital Appreciation Bonds) shall be payable semiannually on the 1st days of January and July in each year. The first such interest payment, representing 15 days' interest, shall be made on July 1, 2005. The 2005C Bonds shall be numbered R05C-1 and upwards. The 2005C Bonds maturing July 1, 2011 through 2018 and 2023 through 2028 (in such context, the "2005C AMBAC Insured Bonds" and collectively with the AMBAC 2005A Insured Bonds the "AMBAC Insured Bonds") shall be insured by AMBAC pursuant to its financial guaranty insurance policy (the "AMBAC 2005C Policy" and collectively with the AMBAC 2005A Policy, the "AMBAC Policy") and the remainder of the 2005C Bonds (in such context, the FGIC 2005C Insured Bonds and collectively with the FGIC 2005A Insured Bonds and the FGIC 2005B Insured Bonds, the "FGIC Insured Bonds") shall be insured by FGIC pursuant to its municipal bond new issue insurance policy (the "FGIC 2005C Policy" and collectively with the FGIC 2005A Policy and the FGIC 2005B Policy, the "FGIC Policy").

Section 7.     The 2005A Bonds and the 2005C Bonds shall not be subject to redemption prior to maturity. The 2005B Bonds maturing July 1 of the years 2037 and 2041 may be redeemed prior to their maturity, at the option of the Authority, either in whole or in part, and if in part, as directed by the Authority, on any date not earlier than July 1, 2015, from any moneys which may be provided for that purpose and deposited with the Trustee on or before the date fixed for redemption, other than moneys deposited in the Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds Sinking Fund, a special fund established under the Trust Agreement (the "Sinking Fund"), in respect of an Amortization Requirement. Any such redemption may be made upon at least thirty (30) days' prior notice as provided in the Trust Agreement, at the principal amount of the bonds to be redeemed, together with the interest accrued thereon to the date fixed for redemption, without premium; provided, however, that the term 2005B Bonds shall be redeemed in part from moneys in the Redemption Account of the Sinking Fund, at par plus accrued interest without premium, beginning July 1, 2038, and on each July 1 thereafter in the principal amount of the respective Amortization Requirements therefor set out in Section 4 of this Resolution.

Any redemption described in this Section 7 shall be made in the manner and under the terms and conditions provided in the Trust Agreement.

Section 8.     The bonds authorized by the provisions of this Resolution shall be executed in the respective forms set forth below and in the manner provided in the Trust Agreement. Said bonds, the certificate of authentication by the Trustee and the statement of

6

insurance relating to the Insured Bonds shall be, respectively, substantially in the following forms:

[FORM OF 2005A BOND OTHER THAN 2005A CAPITAL APPRECIATION BOND]

No. R05A-____                                                    $_____

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY
SPECIAL TAX REVENUE BOND, SERIES 2005A

| <u>Maturity Date</u> | <u>Interest Rate</u> | <u>CUSIP No.</u> |
|---|---|---|

REGISTERED HOLDER:

PRINCIPAL AMOUNT:                                                   Dollars

   Puerto Rico Infrastructure Financing Authority (herein sometimes called the "Authority"), a public corporation and instrumentality of the Commonwealth of Puerto Rico, constituting an independent body corporate and politic, is justly indebted and for value received hereby promises to pay to the Registered Holder shown above or registered assigns or legal representative on the Maturity Date specified above (or earlier as hereinafter described), from the special fund described herein, upon the presentation and surrender hereof, at the principal corporate trust office of the Trustee (hereinafter mentioned), the Principal Amount shown above, and to pay to the Registered Holder hereof, from the special fund described herein, by check mailed to the Registered Holder at his address as it appears on the bond registration books of the Authority, interest on such Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1 to which interest shall have been paid, in which case from such date, such interest to the maturity hereof being payable on January 1 and July 1 in each year, commencing January 1, 2006, at the Interest Rate per annum specified above, until payment of such Principal Amount.   The interest so payable and punctually paid, or duly provided for, on any interest payment date will be paid to the person in whose name this bond is registered at the close of business on the fifteenth (15th) day (whether or not a business day) of the calendar month next preceding such interest payment date.   Any such interest not so punctually paid or duly provided for shall forthwith cease to be payable to the Registered Holder on such date, and may be paid to the person in whose name this bond is registered at the close of business on a special record date for the payment of such defaulted interest to be fixed by the

7

Trustee, on a date established by the Trustee, notice thereof being given to the holders not less than ten (10) days prior to such special record date, or may be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which the bonds of this series may be listed and upon such notice as may be required by such exchange. Such payment of interest shall be by check mailed to the Registered Holder at his address as it appears on the bond registration books of the Authority maintained by the Trustee. All such payments shall be made in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts. Interest on this bond shall be computed on the basis of a year of three hundred and sixty (360) days consisting of twelve (12) thirty (30) day months.

This bond shall not be deemed to constitute an indebtedness of the Commonwealth of Puerto Rico or of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable therefor, and this bond shall be payable solely out of those funds pledged for the payment thereof.

This bond is one of a duly authorized series of bonds designated "Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005A" issued by the Authority in the aggregate principal amount of Three Hundred Nine Million One Hundred Two Thousand Five Hundred Seventy-seven and 35/100 Dollars ($309,102,577.35) for the purpose of providing funds for repaying certain notes issued by the Authority, making a deposit to a special construction fund to pay all or a portion of the cost of certain capital improvements of said Authority and paying certain expenses of issuance. This bond is issued under and secured by a trust agreement, dated as of October 1, 1988, as amended (said agreement, as so amended, together with any supplemental agreements therein permitted, being herein called the "Agreement"), by and between the Authority and U.S. Bank Trust National Association, successor trustee (said successor trustee and any other successor trustee under the Agreement being herein called the "Trustee"). An executed counterpart of the Agreement is on file at the principal corporate trust office of the Trustee in the Borough of Manhattan, City and State of New York. By the acceptance of this bond, the Registered Holder hereof assents to all of the provisions of the Agreement.

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, particularly the Puerto Rico Infrastructure Financing Authority Act (Act No. 44 of the Legislature of Puerto Rico, approved June 21, 1988, as amended, said Act being herein called the "Authority Act") and under and pursuant to a resolution duly adopted by the Authority (the "Resolution").

The Agreement provides for the issuance of additional series of bonds and for the incurrence of other indebtedness under the conditions, limitations and restrictions therein set forth. The Agreement also provides for the creation of a special fund designated "Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds Sinking Fund" (the "Sinking Fund") and for the deposit to the credit of said special fund of a sufficient amount of the Pledged Revenues (as defined in the Agreement) to pay the principal of and interest on all bonds issued under the Agreement as the same become due and payable and in respect of all bonds issued under the Agreement prior to November 1, 1997 and still outstanding to provide a reserve

8

therefor, which special fund is pledged to and charged with the payment of such principal and interest.

The bonds of this series consist of bonds maturing on July 1 of the years 2011 to 2028, inclusive and of bonds maturing on July 1 of the years 2028 through 2045 (the "Capital Appreciation Bonds").

The bonds of this series are not subject to redemption prior to maturity.

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Agreement in the manner provided in the Agreement.

If less than all of the bonds of any one series and maturity shall be called for redemption, the particular bonds or portions of bonds to be redeemed shall be selected by the Trustee by such method as it shall deem fair and appropriate.

At least thirty (30) days before the redemption date of any bonds to be redeemed, in whole or in part, the Trustee shall cause a notice of such redemption to be mailed, by first class mail, postage prepaid, to all Registered Holders of bonds to be redeemed in whole or in part at their last addresses appearing upon the registration books of the Authority. The failure to mail such notice to any Registered Holder of bonds or any defect in any notice so mailed shall not affect the validity of the proceedings for the redemption of bonds of other Registered Holders. On the date fixed for redemption, notice having been given as aforesaid, the bonds or portions thereof so called for redemption shall be due and payable at the redemption price provided for the redemption of such bonds or portions thereof on such date, and, if sufficient moneys and certain securities which may consist of (i) direct or guaranteed obligations of the United States of America (and evidences of ownership of proportionate interests in future interest or principal payments on such obligations), (ii) certain municipal obligations irrevocably secured by direct or guaranteed obligations of the United States of America (and evidences of ownership of proportionate interests in future interest or principal payments on such obligations), or (iii) obligations issued by Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Farm Credit System, Federal Home Loan Banks or Student Loan Marketing Association, the principal of and interest on which obligations when due will provide sufficient moneys for payment of the redemption price and the accrued interest on the bonds to be redeemed are held by the Trustee, as provided in the Agreement, interest on the bonds or the portions thereof so called for redemption shall cease to accrue on such redemption date, such bonds or portions thereof shall cease to be entitled to any benefit or security under the Agreement, and the Registered Holders thereof shall have no rights in respect of such bonds except to receive payment of the redemption price thereof and the accrued interest thereon. If a portion of this bond shall be called for redemption, a new bond or bonds in an aggregate principal amount equal to the unredeemed portion hereof will be issued to the Registered Holder hereof or his legal representative upon the surrender hereof.

The Registered Holder of this bond shall have no right to enforce the provisions of the Agreement, or to institute action to enforce the covenants therein, or to take any action with

respect to any default under the Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereof, except as provided in the Agreement.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made only to the extent and in the circumstances permitted by the Agreement.

The bonds of this series are issuable as fully registered bonds in the denomination of $5,000 and any multiple thereof ($5,000 maturity amount and any multiple thereof in the case of the Capital Appreciation Bonds). At the designated corporate trust office of the Trustee, in the manner and subject to the conditions provided in the Agreement and without cost to the Registered Holders thereof except for any tax or other governmental charge, bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The Trustee is required to keep at its principal corporate trust office the books of the Authority for the registration of and for the registration of transfers of bonds. The transfer of this bond may be registered only upon such books and as otherwise provided in the Agreement upon the surrender hereof to the Trustee together with an assignment duly executed by the registered owner hereof or his attorney or legal representative in the form set forth on this bond or such other form as shall be satisfactory to the Trustee. Upon any registration of transfer, the Trustee shall deliver in exchange for this bond a new bond or bonds, registered in the name of the transferee, of authorized denominations, in an aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

The Trustee shall not be required to exchange or register any transfer of this bond during the fifteen (15) days immediately preceding the date of mailing of notice of any redemption of bonds of this series, or after this bond has been selected for redemption.

This bond, notwithstanding the provisions for the registration of transfer contained in the Agreement, shall have all the qualities and incidents, including negotiability, of negotiable instruments under the laws of Puerto Rico.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of Puerto Rico, including the Authority Act, and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the execution and delivery of the Agreement, have happened, exist and have been performed as so required.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Agreement unless and until this bond shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

IN WITNESS WHEREOF, Puerto Rico Infrastructure Financing Authority has caused this bond to bear the facsimile signature of its Executive Director and a facsimile of the corporate

seal to be imprinted  hereon and attested to by its Secretary by facsimile signature, all as of the
_____ day of June, 2005.

[Facsimile of                           PUERTO RICO INFRASTRUCTURE
Corporate Seal]                         FINANCING AUTHORITY


                                        By:[Facsimile Signature]
                                            Executive Director



Attest:



    [Facsimile Signature]
            Secretary


## CERTIFICATE OF AUTHENTICATION
(to be endorsed on all bonds)


        This is one of the bonds of the series designated herein and issued under and secured by
the provisions of the within mentioned Agreement.


                                        U.S. Bank Trust National Association
                                        Successor Trustee

                                        By: _____
                                            Authorized Signatory


Date of authentication: _____

## ASSIGNMENT

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto
_____
the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ attorney to register the transfer of the within bond on the
books kept for registration thereof with full power of substitution in the premises.

Dated:_____

---

NOTICE: The signature of this assignment must correspond with the name as it appears on the face of the within bond in every particular, without alteration or enlargement or any change whatever.

Social Security Number or
Employee Identification Number
of Transferee:_____

Signature:_____

Signature Guaranteed:

_____

NOTICE: Signatures must be guaranteed by member firm of the New York Stock Exchange or a commercial bank or a trust company.

12

**[Form of 2005A Capital Appreciation Bond]**
Same as Form of 2005A Bond except as follows:

1.    Substitute the following for the caption and the first paragraph:

No. R05A-___                                                         $_____

United States of America
Commonwealth of Puerto Rico

PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY
SPECIAL TAX REVENUE BOND, SERIES 2005A

| Interest Rate: | Maturity Date: | Original Issue Date: | CUSIP No. |
|---|---|---|---|
| | July 1, ____ | | |

Registered Owner:

Original Principal Amount:                                          Dollars

Amount Due at Maturity:                                            Dollars

Puerto Rico Infrastructure Financing Authority (herein sometimes called the "Authority"), a public corporation and instrumentality of the Commonwealth of Puerto Rico, constituting an independent body corporate and politic, is justly indebted and for value received hereby promises to pay to the Registered Owner shown above or registered assigns or legal representative on the Maturity Date specified above (or earlier as hereinafter described) from the special fund described herein, upon the presentation and surrender hereof, at the principal corporate trust office of the Trustee (hereinafter mentioned), the Amount Due at Maturity stated above, being the Accreted Value (as herein defined) on said date, consisting of the Original Principal Amount set forth above and interest thereon based upon the Interest Rate set forth above from the Original Issue Date set forth above, compounded on January 1 and July 1 of each year during the period from the Original Issue Date to the Maturity Date. The Original Principal Amount of this bond plus the interest accrued to any given date is its "Accreted Value". The Amount Due at Maturity of this bond is payable in any coin or currency of the United States of America as at the time of payment is legal tender for the payment of public and private debts.

NY1 5692234v.9 45967/87

[FORM OF 2005B BOND]

No. R05B-___                                       $_____

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY
SPECIAL TAX REVENUE BOND, SERIES 2005B

<u>Maturity Date</u>                    <u>Interest Rate</u>                    <u>CUSIP No.</u>

REGISTERED HOLDER:

PRINCIPAL AMOUNT:                                              Dollars

     Puerto Rico Infrastructure Financing Authority (herein sometimes called the "Authority"), a public corporation and instrumentality of the Commonwealth of Puerto Rico, constituting an independent body corporate and politic, is justly indebted and for value received hereby promises to pay to the Registered Holder shown above or registered assigns or legal representative on the Maturity Date specified above (or earlier as hereinafter described), from the special fund described herein, upon the presentation and surrender hereof, at the principal corporate trust office of the Trustee (hereinafter mentioned), the Principal Amount shown above, and to pay to the Registered Holder hereof, from the special fund described herein, by check mailed to the Registered Holder at his address as it appears on the bond registration books of the Authority, interest on such Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1 to which interest shall have been paid, in which case from such date, such interest to the maturity hereof being payable on January 1 and July 1 in each year, commencing January 1, 2006, at the Interest Rate per annum specified above, until payment of such Principal Amount.  The interest so payable and punctually paid, or duly provided for, on any interest payment date will be paid to the person in whose name this bond is registered at the close of business on the fifteenth (15th) day (whether or not a business day) of the calendar month next preceding such interest payment date.  Any such interest not so punctually paid or duly provided for shall forthwith cease to be payable to the Registered Holder on such date, and may be paid to the person in whose name this bond is registered at the close of business on a special record date for the payment of such defaulted interest to be fixed by the Trustee, on a date established by the Trustee, notice thereof being given to the holders not less than ten (10) days prior to such special record date, or may be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which the bonds of this series may be listed and upon such notice as may be required by such exchange.

14

Such payment of interest shall be by check mailed to the Registered Holder at his address as it appears on the bond registration books of the Authority maintained by the Trustee. All such payments shall be made in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts. Interest on this bond shall be computed on the basis of a year of three hundred and sixty (360) days consisting of twelve (12) thirty (30) day months.

This bond shall not be deemed to constitute an indebtedness of the Commonwealth of Puerto Rico or of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable therefor, and this bond shall be payable solely out of those funds pledged for the payment thereof.

This bond is one of a duly authorized series of bonds designated "Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005B" issued by the Authority in the aggregate principal amount of Three Hundred Twenty-four Million Six Hundred Twenty-five Thousand Dollars ($324,625,000) for the purpose of providing funds for repaying certain notes issued by Puerto Rico Aqueduct and Sewer Authority and paying certain expenses of issuance. This bond is issued under and secured by a trust agreement, dated as of October 1, 1988, as amended (said agreement, as so amended, together with any supplemental agreements therein permitted, being herein called the "Agreement"), by and between the Authority and U.S. Bank Trust National Association, successor trustee (said successor trustee and any other successor trustee under the Agreement being herein called the "Trustee"). An executed counterpart of the Agreement is on file at the principal corporate trust office of the Trustee in the Borough of Manhattan, City and State of New York. By the acceptance of this bond, the Registered Holder hereof assents to all of the provisions of the Agreement.

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, particularly the Puerto Rico Infrastructure Financing Authority Act (Act No. 44 of the Legislature of Puerto Rico, approved June 21, 1988, as amended, said Act being herein called the "Authority Act") and under and pursuant to a resolution duly adopted by the Authority (the "Resolution").

The Agreement provides for the issuance of additional series of bonds and for the incurrence of other indebtedness under the conditions, limitations and restrictions therein set forth. The Agreement also provides for the creation of a special fund designated "Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds Sinking Fund" (the "Sinking Fund") and for the deposit to the credit of said special fund of a sufficient amount of the Pledged Revenues (as defined in the Agreement) to pay the principal of and interest on all bonds issued under the Agreement as the same become due and payable and in respect of all bonds issued under the Agreement prior to November 1, 1997 and still outstanding to provide a reserve therefor, which special fund is pledged to and charged with the payment of such principal and interest.

The bonds of this series consist of serial bonds maturing on July 1 of the years 2011 through 2013 and 2037 and of term bonds maturing on July 1, 2041 (the "term bonds").

15

The bonds of this series maturing July 1 of the years 2037 and 2041 may be redeemed prior to their maturity, at the option of the Authority, either in whole or in part, and if in part, as directed by the Authority, on any date not earlier than July 1, 2015, from any moneys which may be provided for that purpose and deposited with the Trustee on or before the date fixed for redemption, other than moneys deposited in the Sinking Fund in respect of an Amortization Requirement (as defined in the Agreement), at the principal amount of the bonds to be redeemed, together with the interest accrued thereon to the date fixed for redemption, without premium; provided, however, that the term bonds are subject to redemption in part, from moneys in the Redemption Account of the Sinking Fund, at par plus accrued interest, without premium, beginning July 1, 2038 and on each July 1 thereafter in the principal amount of the respective Amortization Requirements therefor set out in the Resolution as such amounts may be adjusted pursuant to the Agreement.

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Agreement in the manner provided in the Agreement.

The Registered Holder of this bond shall have no right to enforce the provisions of the Agreement, or to institute action to enforce the covenants therein, or to take any action with respect to any default under the Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereof, except as provided in the Agreement.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made only to the extent and in the circumstances permitted by the Agreement.

The bonds of this series are issuable as fully registered bonds in the denomination of $5,000 and any multiple thereof. At the designated corporate trust office of the Trustee, in the manner and subject to the conditions provided in the Agreement and without cost to the Registered Holders thereof except for any tax or other governmental charge, bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The Trustee is required to keep at its principal corporate trust office the books of the Authority for the registration of and for the registration of transfers of bonds. The transfer of this bond may be registered only upon such books and as otherwise provided in the Agreement upon the surrender hereof to the Trustee together with an assignment duly executed by the registered owner hereof or his attorney or legal representative in the form set forth on this bond or such other form as shall be satisfactory to the Trustee. Upon any registration of transfer, the Trustee shall deliver in exchange for this bond a new bond or bonds, registered in the name of the transferee, of authorized denominations, in an aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

The Trustee shall not be required to exchange or register any transfer of this bond during the fifteen (15) days immediately preceding the date of mailing of notice of any redemption of bonds of this series, or after this bond has been selected for redemption.

16

This bond, notwithstanding the provisions for the registration of transfer contained in the Agreement, shall have all the qualities and incidents, including negotiability, of negotiable instruments under the laws of Puerto Rico.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of Puerto Rico, including the Authority Act, and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the execution and delivery of the Agreement, have happened, exist and have been performed as so required.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Agreement unless and until this bond shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

IN WITNESS WHEREOF, Puerto Rico Infrastructure Financing Authority has caused this bond to bear the facsimile signature of its Executive Director and a facsimile of the corporate seal to be imprinted  hereon and attested to by its Secretary by facsimile signature, all as of the _____ day of June, 2005.

[Facsimile of
Corporate Seal]

PUERTO RICO INFRASTRUCTURE
FINANCING AUTHORITY


By:[Facsimile Signature]
    Executive Director


Attest:


    [Facsimile Signature]
        Secretary


## CERTIFICATE OF AUTHENTICATION
(to be endorsed on all bonds)


This is one of the bonds of the series designated herein and issued under and secured by the provisions of the within mentioned Agreement.


17

U.S. Bank Trust National Association
Successor Trustee

By: _____
        Authorized Signatory

Date of authentication: _____

# ASSIGNMENT

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto

_____

the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints

_____ attorney to register the transfer of the within bond on the

books kept for registration thereof with full power of substitution in the premises.

Dated:_____

_____

|  |  |
|---|---|
|  | NOTICE:  The signature of this assignment must correspond with the name as it appears on the face of the within bond in every particular, without alteration or enlargement or any change whatever. |

Social Security Number or
Employee Identification Number
of Transferee:_____

Signature:_____

Signature Guaranteed:

_____

NOTICE: Signatures must be guaranteed by member firm of the New York Stock Exchange or a commercial bank or a trust company.

19

[FORM OF 2005C BOND OTHER THAN
2005C CAPITAL APPRECIATION BOND]

No. R05C-___                              $_____

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY
SPECIAL TAX REVENUE REFUNDING BOND, SERIES 2005C

Maturity Date                  Interest Rate                    CUSIP No.

REGISTERED HOLDER:

PRINCIPAL AMOUNT:                                              Dollars

Puerto Rico Infrastructure Financing Authority (herein sometimes called the "Authority), a public corporation and instrumentality of the Commonwealth of Puerto Rico, constituting an independent body corporate and politic, is justly indebted and for value received hereby promises to pay to the Registered Holder shown above or registered assigns or legal representative on the Maturity Date specified above (or earlier as hereinafter described), from the special fund described herein, upon the presentation and surrender hereof, at the principal corporate trust office of the Trustee (hereinafter mentioned), the Principal Amount shown above, and to pay to the Registered Holder hereof, from the special fund described herein, by check mailed to the Registered Holder at his address as it appears on the bond registration books of the Authority, interest on such Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1 to which interest shall have been paid, in which case from such date, such interest to the maturity hereof being payable on January 1 and July 1 in each year, commencing July 1, 2005, at the Interest Rate per annum specified above, until payment of such Principal Amount.  The interest so payable and punctually paid, or duly provided for, on any interest payment date will be paid to the person in whose name this bond is registered at the close of business on the fifteenth (15th) day (whether or not a business day) of the calendar month next preceding such interest payment date.  Any such interest not so punctually paid or duly provided for shall forthwith cease to be payable to the Registered Holder on such date, and may be paid to the person in whose name this bond is registered at the close of business on a special record date for the payment of such defaulted interest to be fixed by the Trustee, on a date established by the Trustee, notice thereof being given to the holders not less than ten (10) days prior to such special record date, or may be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which the bonds of this series

20

may be listed and upon such notice as may be required by such exchange. Such payment of interest shall be by check mailed to the Registered Holder at his address as it appears on the bond registration books of the Authority maintained by the Trustee. All such payments shall be made in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts. Interest on this bond shall be computed on the basis of a year of three hundred and sixty (360) days consisting of twelve (12) thirty (30) day months.

This bond shall not be deemed to constitute an indebtedness of the Commonwealth of Puerto Rico or of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable therefor, and this bond shall be payable solely out of those funds pledged for the payment thereof.

This bond is one of a duly authorized series of bonds designated "Puerto Rico Infrastructure Financing Authority Special Tax Revenue Refunding Bonds, Series 2005C" issued by the Authority in the aggregate principal amount of Six Hundred Ninety-nine Million Two Hundred Thirty-five Thousand Three Hundred Thirty-eight and 80/100 Dollars ($699,235,338.80) for the purpose of providing funds, with other available moneys, for refunding all of the Authority's Special Tax Revenue Bonds, Series 1997A and paying certain expenses of issuance. This bond is issued under and secured by a trust agreement, dated as of October 1, 1988, as amended (said agreement, as so amended, together with any supplemental agreements therein permitted, being herein called the "Agreement"), by and between the Authority and U.S. Bank Trust National Association, successor trustee (said successor trustee and any other successor trustee under the Agreement being herein called the "Trustee"). An executed counterpart of the Agreement is on file at the principal corporate trust office of the Trustee in the Borough of Manhattan, City and State of New York. By the acceptance of this bond, the Registered Holder hereof assents to all of the provisions of the Agreement.

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, particularly the Puerto Rico Infrastructure Financing Authority Act (Act No. 44 of the Legislature of Puerto Rico, approved June 21, 1988, as amended, said Act being herein called the "Authority Act") and under and pursuant to a resolution duly adopted by the Authority (the "Resolution").

The Agreement provides for the issuance of additional series of bonds and for the incurrence of other indebtedness under the conditions, limitations and restrictions therein set forth. The Agreement also provides for the creation of a special fund designated "Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds Sinking Fund" (the "Sinking Fund") and for the deposit to the credit of said special fund of a sufficient amount of the Pledged Revenues (as defined in the Agreement) to pay the principal of and interest on all bonds issued under the Agreement as the same become due and payable and in respect of all bonds issued under the Agreement prior to November 1, 1997 and still outstanding to provide a reserve therefor, which special fund is pledged to and charged with the payment of such principal and interest.

The bonds of this series consist of bonds maturing on July 1 of the years 2011 to 2028, inclusive and of bonds maturing on July 1, 2028 (the "Capital Appreciation Bonds")).

The bonds of this series shall not be subject to redemption prior to maturity.

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Agreement in the manner provided in the Agreement.

If less than all of the bonds of any one series and maturity shall be called for redemption, the particular bonds or portions of bonds to be redeemed shall be selected by the Trustee by such method as it shall deem fair and appropriate.

At least thirty (30) days before the redemption date of any bonds to be redeemed, in whole or in part, the Trustee shall cause a notice of such redemption to be mailed, by first class mail, postage prepaid, to all Registered Holders of bonds to be redeemed in whole or in part at their last addresses appearing upon the registration books of the Authority. The failure to mail such notice to any Registered Holder of bonds or any defect in any notice so mailed shall not affect the validity of the proceedings for the redemption of bonds of other Registered Holders. On the date fixed for redemption, notice having been given as aforesaid, the bonds or portions thereof so called for redemption shall be due and payable at the redemption price provided for the redemption of such bonds or portions thereof on such date, and, if sufficient moneys and certain securities which may consist of (i) direct or guaranteed obligations of the United States of America (and evidences of ownership of proportionate interests in future interest or principal payments on such obligations), (ii) certain municipal obligations irrevocably secured by direct or guaranteed obligations of the United States of America (and evidences of ownership of proportionate interests in future interest or principal payments on such obligations), or (iii) obligations issued by Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Farm Credit System, Federal Home Loan Banks or Student Loan Marketing Association, the principal of and interest on which obligations when due will provide sufficient moneys for payment of the redemption price and the accrued interest on the bonds to be redeemed are held by the Trustee, as provided in the Agreement, interest on the bonds or the portions thereof so called for redemption shall cease to accrue on such redemption date, such bonds or portions thereof shall cease to be entitled to any benefit or security under the Agreement, and the Registered Holders thereof shall have no rights in respect of such bonds except to receive payment of the redemption price thereof and the accrued interest thereon. If a portion of this bond shall be called for redemption, a new bond or bonds in an aggregate principal amount equal to the unredeemed portion hereof will be issued to the Registered Holder hereof or his legal representative upon the surrender hereof.

The Registered Holder of this bond shall have no right to enforce the provisions of the Agreement, or to institute action to enforce the covenants therein, or to take any action with respect to any default under the Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereof, except as provided in the Agreement.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made only to the extent and in the circumstances permitted by the Agreement.

The bonds of this series are issuable as fully registered bonds in the denomination of $5,000 and any multiple thereof ($5,000 maturity amount and any multiple thereof in the case of

the Capital Appreciation Bonds).   At the designated corporate trust office of the Trustee, in the manner and subject to the conditions provided in the Agreement and without cost to the Registered Holders thereof except for any tax or other governmental charge, bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The Trustee is required to keep at its principal corporate trust office the books of the Authority for the registration of and for the registration of transfers of bonds.  The transfer of this bond may be registered only upon such books and as otherwise provided in the Agreement upon the surrender hereof to the Trustee together with an assignment duly executed by the registered owner hereof or his attorney or legal representative in the form set forth on this bond or such other form as shall be satisfactory to the Trustee.  Upon any registration of transfer, the Trustee shall deliver in exchange for this bond a new bond or bonds, registered in the name of the transferee, of authorized denominations, in an aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

The Trustee shall not be required to exchange or register any transfer of this bond during the fifteen (15) days immediately preceding the date of mailing of notice of any redemption of bonds of this series, or after this bond has been selected for redemption.

This bond, notwithstanding the provisions for the registration of transfer contained in the Agreement, shall have all the qualities and incidents, including negotiability, of negotiable instruments under the laws of Puerto Rico.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of Puerto Rico, including the Authority Act, and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the execution and delivery of the Agreement, have happened, exist and have been performed as so required.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Agreement unless and until this bond shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

IN WITNESS WHEREOF, Puerto Rico Infrastructure Financing Authority has caused this bond to bear the facsimile signature of its Executive Director and a facsimile of the corporate seal to be imprinted  hereon and attested to by its Secretary by facsimile signature, all as of the ___ day of June, 2005.

23

[Facsimile of
Corporate Seal]

PUERTO RICO INFRASTRUCTURE
FINANCING AUTHORITY


By:[Facsimile Signature]
      Executive Director


Attest:


   [Facsimile Signature]
       Secretary


## CERTIFICATE OF AUTHENTICATION
(to be endorsed on all bonds)


     This is one of the bonds of the series designated herein and issued under and secured by the provisions of the within mentioned Agreement.


          U.S. Bank Trust National Association
          Successor Trustee

          By: _____
                 Authorized Signatory


Date of authentication: _____


24

## ASSIGNMENT

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto
_____
the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ attorney to register the transfer of the within bond on the
books kept for registration thereof with full power of substitution in the premises.

Dated:_____

_____

NOTICE:  The signature of this assignment must correspond with the name as it appears on the face of the within bond in every particular, without alteration or enlargement or any change whatever.

Social Security Number or
Employee Identification Number
of Transferee:_____

Signature:_____

Signature Guaranteed:

_____

NOTICE: Signatures must be guaranteed by member firm of the New York Stock Exchange or a commercial bank or a trust company.

[Form of 2005C Capital Appreciation Bond]
Same as Form of 2005C Bond except as follows:

1.  Substitute the following for the caption and the first paragraph:

No. R05C-___                                                              $_____

United States of America
Commonwealth of Puerto Rico

**PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY
SPECIAL TAX REVENUE BOND, SERIES 2005C**

| Interest Rate: | Maturity Date: | Original Issue Date: | CUSIP No. |
|---|---|---|---|
| | July 1, _____ | | |

Registered Owner:

Original Principal Amount:                                              Dollars

Amount Due at Maturity:                                                 Dollars

    Puerto Rico Infrastructure Financing Authority (herein sometimes called the "Authority"), a public corporation and instrumentality of the Commonwealth of Puerto Rico, constituting an independent body corporate and politic, is justly indebted and for value received hereby promises to pay to the Registered Owner shown above or registered assigns or legal representative on the Maturity Date specified above (or earlier as hereinafter described) from the special fund described herein, upon the presentation and surrender hereof, at the principal corporate trust office of the Trustee (hereinafter mentioned), the Amount Due at Maturity stated above, being the Accreted Value (as herein defined) on said date, consisting of the Original Principal Amount set forth above and interest thereon based upon the Interest Rate set forth above from the Original Issue Date set forth above, compounded on January 1 and July 1 of each year during the period from the Original Issue Date to the Maturity Date.  The Original Principal Amount of this bond plus the interest accrued to any given date is its "Accreted Value".  The Amount Due at Maturity of this bond is payable in any coin or currency of the United States of America as at the time of payment is legal tender for the payment of public and private debts.

**[Form of Statement of Insurance in respect of AMBAC Insured Bonds]**

Financial Guaranty Insurance Policy No.:24121BE (the "Policy") with respect to payments due for principal of and interest on this bond has been issued by Ambac Assurance Corporation ("Ambac Assurance"). The Policy has been delivered to The Bank of New York, New York, New York, as the Insurance Trustee under said Policy and will be held by such Insurance Trustee or any successor insurance trustee. The Policy is on file and available for inspection at the designated office of the Insurance Trustee and a copy thereof may be secured from Ambac Assurance or the Insurance Trustee. All payments required to be made under the Policy shall be made in accordance with the provisions thereof. The owner of this bond acknowledges and consents to the subrogation rights of Ambac Assurance as more fully set forth in the Policy.

**[Form of Statement of Insurance in respect of FGIC Insured Bonds]**

Financial Guaranty Insurance Company ("Financial Guaranty") has issued a policy containing the following provisions with respect to this bond, such policy being on file at the designated office of U.S. Bank Trust National Association, trustee (the "Paying Agent"):

Financial Guaranty hereby unconditionally and irrevocably agrees to pay for disbursement to the holder hereof that portion of the principal or accreted value (if applicable) of and interest on this bond which is then due for payment and which the Authority shall have failed to provide. Due for payment means, with respect to principal or accreted value (if applicable), the stated maturity date thereof, or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which the payment of principal or accreted value (if applicable) of this bond is due by reason of call for redemption (other than mandatory sinking fund redemption), acceleration or other advancement of maturity, and with respect to interest, the stated date for payment of such interest.

Upon receipt of telephonic or telegraphic notice, subsequently confirmed in writing, or written notice by registered or certified mail, from the holder hereof or the Paying Agent to Financial Guaranty that the required payment of principal, accreted value or interest (as applicable) has not been made by the Authority to the Paying Agent, Financial Guaranty on the due date of such payment or within one business day after receipt of notice of such nonpayment, whichever is later, will make a deposit of funds, in an account with U.S. Bank Trust National Association, or its successor as its agent (in such capacity, the "Fiscal Agent"), sufficient to make the portion of such payment not paid by the Authority. Upon presentation to the Fiscal Agent of evidence satisfactory to it of the holder's right to receive such payment and any appropriate instruments of assignment required to vest all of such holder's right to such payment in Financial Guaranty, the Fiscal Agent will disburse such amount to such holder.

As used herein the term "holder" means the person other than the Authority who at the time of nonpayment of this bond is entitled under the terms hereof to payment thereof.

The policy is non-cancellable for any reason.

## FINANCIAL GUARANTY INSURANCE COMPANY

Section 9.    (a) The proposal submitted by UBS Financial Services Inc., (the "Representative") acting on behalf of itself and each of the other underwriters mentioned in the Contract of Purchase, dated June 2, 2005 (herein collectively called the "Underwriters"), in the form of said Contract of Purchase, presented at this meeting, filed with the Secretary and marked Exhibit No. 1 to this Resolution, offering to purchase the 2005A Bonds, at the aggregate purchase price of $319,269,994.66, the 2005B Bonds at the aggregate purchase price of $334,462,942.53, and the 2005C Bonds, at an aggregate purchase price of $822,609,186.43, without accrued interest (said Contract of Purchase being herein called the "Contract of Purchase"), is hereby accepted and said bonds are hereby awarded to the Underwriters at said prices, respectively upon the terms and conditions set forth in the Contract of Purchase.

(b)    The Executive Director (as defined in the Trust Agreement) of the Authority or any Vice President of GDB, statutory agent for the Authority, is hereby authorized and directed, in the name of and on behalf of the Authority, to execute and deliver said Contract of Purchase in the form presented to this meeting, with such changes, insertions and omissions as may be approved by the person executing said Contract of Purchase, her execution of said Contract of Purchase to be conclusive evidence of her approval of any such changes, insertions and omissions.

Section 10.    The Executive Director of the Authority is hereby authorized and directed to cause the 2005A Bonds, the 2005B Bonds and the 2005C Bonds to be signed with her facsimile signature and the Secretary is hereby authorized and directed to cause a facsimile of the corporate seal of the Authority to be imprinted on each of said bonds and attested with a facsimile of her signature. After such execution, said bonds shall be delivered to the Trustee for authentication, and said Trustee is hereby authorized and directed to authenticate and deliver said bonds to or upon the order of the Underwriters upon payment therefor in accordance with and subject to the provisions of Section 208 or 209 of the Trust Agreement, as the case may be.

Section 11.    (a) The proceeds of the 2005A Bonds shall be applied by the Trustee as follows:

A.    such amount as may be specified in a certificate of the Executive Director filed with the Trustee prior to the delivery of the 2005A Bonds shall be paid to GDB to retire the Line of Credit Notes;

B.    such amount as may be specified in a certificate of the Executive Director filed with the Trustee prior to the delivery of the 2005A Bonds shall be paid to GDB for the payment of expenses incident to the financing described herein; and

C.    the balance, if any, of said proceeds shall be deposited to the credit of the special construction fund established in Section 12 of this Resolution.

In the event the amount initially paid to GDB pursuant to paragraph B. is insufficient to pay all expenses incident to the financing, the Executive Director will pay, or to cause to be paid,

to GDB from the Puerto Rico Infrastructure Fund established pursuant to the Act such additional amount as will be sufficient to pay such expenses. In the event any proceeds remain after the payment of such expenses, GDB is hereby directed to pay such remaining amount to the Authority for deposit to the credit of said special construction fund.

Of the amount deposited pursuant to paragraph C., $4,328,593.75 is hereby irrevocably set aside for the purpose of paying a portion of the interest on the 2005A Bonds through July 1, 2006.

(b)     The proceeds of the 2005B Bonds shall be applied by the Trustee as follows:

A.     such amount as may be specified in a certificate of the Executive Director filed with the Trustee prior to the delivery of the 2005B Bonds shall be deposited in a special account designated "Puerto Rico Infrastructure Financing Authority Series 2005B Special Tax Revenue Bonds Working Capital Account." Moneys in said account shall be disbursed to the Department of the Treasury or to the Office of Management and Budget on such terms and conditions as the Executive Director shall determine with the advice of counsel and of Government Development Bank, statutory fiscal agent to the Authority, will not cause the Authority to violate the covenant contained in Section 21 of this Resolution;

B.     $16,795,260.42 shall be irrevocably set aside with the Trustee for the purpose of paying a portion of the interest on the 2005B Bonds through July 1, 2006 and shall be transferred to the special construction fund established in Section 12 of this Resolution; and

C.     the balance, if any, of said proceeds shall be paid to GDB for the payment of expenses incident to the financing described herein.

In the event the amount initially paid to GDB pursuant to paragraph C. is insufficient to pay all expenses incident to the financing, the Executive Director will pay, or to cause to be paid, to GDB from the Puerto Rico Infrastructure Fund established pursuant to the Act such additional amount as will be sufficient to pay such expenses. In the event any proceeds remain after the payment of such expenses, GDB is hereby directed to pay such remaining amount to the Authority for deposit to the credit of said special construction fund.

(c)     The proceeds of the 2005C Bonds shall be applied by the Trustee as follows:

A.     such amount as may be specified in a certificate of the Executive Director filed with the Trustee prior to the delivery of the 2005C Bonds shall be deposited to the credit of a special redemption account within the Sinking Fund established by Section 13 of this Resolution;

B.     $1,571,395.83 shall be irrevocably set aside with the Trustee for the purpose of paying a portion of the interest on the 2005C Bonds on July 1, 2005 and shall be transferred to the special construction fund established in Section 12 of this Resolution; and

C.     the balance, if any, of said proceeds shall be paid to GDB for the payment of expenses incident to the financing described herein.

In the event the amount initially paid to GDB pursuant to paragraph C. is insufficient to pay all expenses incident to the financing, the Executive Director will pay, or to cause to be paid, to GDB from the Puerto Rico Infrastructure Fund established pursuant to the Act such additional amount as will be sufficient to pay such expenses. In the event any proceeds remain after the payment of such expenses, GDB is hereby directed to pay such remaining amount to the Authority for deposit to the credit of said special construction fund.

Simultaneously with the delivery of the Series 2005C Bonds, the Trustee shall withdraw from the Bond Service Account and the Redemption Account in the Sinking Fund an amount equal to the sum of the amounts deposited to the credit of such Accounts under the provisions of Section 401 of the Trust Agreement on account of the interest which is payable on the Refunded Bonds on the next interest payment date of such Bonds and on account of the next maturing installment of principal or the current Amortization Requirements for the Refunded Bonds, if any, and shall deposit such amount to the credit of said special redemption account.

Section 12.    (a) A special construction fund to the credit of which such amount as is specified in Section 11(a)C of this Resolution (together with any additional amounts as set forth in said Section 11) shall be deposited is hereby created and designated "Puerto Rico Infrastructure Financing Authority Series 2005A Special Tax Revenue Bonds Construction Fund". There may at the option of the Authority also be deposited to the credit of said Construction Fund moneys received from any other source for paying any portion of the cost of any Improvements (hereinafter mentioned). One or more separate accounts may be created in said Construction Fund for use for specified projects.

The moneys in said Construction Fund shall be held by a Qualified Depositary (as defined in the Trust Agreement) and shall be applied to the payment of the cost of any Improvements and to pay interest on the bonds authorized by this Resolution on the respective dates set forth in Section 11 and pending such application shall be continuously invested and reinvested, at the written direction of the Authority, in Investment Obligations (as defined in the Trust Agreement) that shall mature, or that shall be subject to redemption by the holder thereof at the option of such holder, not later than the respective dates when moneys held for the credit of said Construction Fund will be required for the purposes intended.

(b)    Payment of the cost of any Improvements shall be made from said Construction Fund as herein provided. Moneys in said Construction Fund shall be disbursed by check, voucher, order, draft, certificate or warrant signed by the Executive Director or by an officer or employee of the Authority designated by him for such purpose.

(c)    For the purposes of this Section, the cost of any Improvements shall embrace the cost of acquisition or construction and equipment and all other items of cost incident to such acquisition and construction and equipment and the financing thereof, and shall include, without intending thereby to limit or restrict any proper definition of such cost under any provisions of law, the following:

(i)    obligations incurred for labor and materials and to contractors, builders and materialmen in connection with the construction of any Improvements;

30

(ii)    the cost of acquiring by purchase, if such purchase shall be deemed expedient, and the amount of any award or final judgment in or any settlement or compromise of any proceeding to acquire by condemnation, such property, lands, rights, rights of way, franchises, easements and other interests in land constituting a part of, or as may be deemed necessary or convenient for the construction of any Improvements, options and partial payments thereon, the cost of filling, draining or improving any lands so acquired, and the amount of any damages incident to or consequent upon the construction of any Improvements;

(iii)   legal expenses and fees, fees and expenses of consultants, financing charges, taxes or other municipal or governmental charges lawfully levied or assessed during construction upon any Improvements, and premiums on insurance in connection with any Improvements during construction;

(iv)    fees and expenses of architects or engineers for making studies, surveys and testing, for preparing plans and specifications and supervising construction, as well as for the performance of all other duties of architects or engineers in relation to the construction of any Improvements;

(v)     expenses of administration properly chargeable to any Improvements and all other items of expense not elsewhere in this Section specified, incident to the acquisition or construction and equipment of any Improvements;

(vi)    interest on the bonds authorized by the provisions of this Resolution prior to and during construction of the Improvements financed by such bonds and for such period after completion of such construction as the Authority may determine, if then permitted by law; and

(vii)   any obligation or expense heretofore or hereafter incurred by the Authority or by Puerto Rico Aqueduct and Sewer Authority and any amounts heretofore or hereafter advanced by the Commonwealth of Puerto Rico or any agency or instrumentality thereof or by the United States Government, or from any other source, for any of the foregoing purposes.

(d)    For purposes of this Section, the term "Improvements" shall mean the PRASA Improvements and the Other Improvements; the term "PRASA Improvements" shall mean such betterments, renewals and replacements of the Systems or any part thereof, and such additions and extensions thereto, as may be necessary or desirable to keep the same in proper condition for the safe, efficient and economic operation thereof and for the interconnection thereof where feasible to integrate into the Systems any unit or part thereof, and shall include such water and sewer projects as may be authorized to be constructed or acquired under the provisions of Act No. 169 of the Legislature of Puerto Rico, approved May 3, 1949, as amended, and such betterments, renewals and replacements of such properties and such additions and extensions thereto as may be necessary or desirable for continuous and efficient service to the public; and the term "Systems" shall mean, collectively, the existing water supply, treatment and distribution system and the existing sewage collection, transmission, treatment and disposal system owned or

31

operated by or on behalf of Puerto Rico Aqueduct and Sewer Authority and together with any Improvements, and shall include any rights of service, leasehold interests or other contractual rights of Puerto Rico Aqueduct and Sewer Authority in said systems and any Improvements; and the term "Other Improvements" shall mean such public works projects as shall be set forth in Schedule A hereto.

(e)     Upon the issuance of the 2005A Bonds, the Authority may apply such portion of the amount specified in the last paragraph of Section 11(a) to the cost of any Improvements as will not cause the Principal and Interest Requirements on all Bonds then Outstanding under the Trust Agreement to exceed the Pledged Revenues (or such lesser amount as the Authority shall determine) in any fiscal year of the Authority.

Section 13.     A special redemption account in the Sinking Fund is hereby created and designated "Special Tax Revenue Bonds, Series 1997A Redemption Account" to the credit of which such amount as is specified in Section 11(c)A of this Resolution shall be deposited. Moneys held to the credit of said special redemption account shall be applied and invested in accordance with the provisions of the Escrow Deposit Agreement (hereinafter referred to).

(a)     Upon the issuance of the 2005B Bonds, the Authority may apply such portion of the amount specified in the last paragraph of Section 11(b) and the penultimate paragraph of Section 11(c) to the cost of any Improvements as will not cause the Principal and Interest Requirements on all Bonds then Outstanding under the Trust Agreement to exceed the Pledged Revenues (or such lesser amount as the Authority shall determine) in any fiscal year of the Authority.

Section 14.     The Preliminary Official Statement, dated May 23, 2005, of the Authority relating to the Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005A, Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds, Series 2005B and Puerto Rico Infrastructure Financing Authority Special Tax Revenue Refunding Bonds, Series 2005C, is hereby approved in the form presented at this meeting filed with the Secretary and marked Exhibit No. 2 to this Resolution, and the distribution of said Preliminary Official Statement by the Underwriters in connection with the offering of said bonds is hereby in all respects ratified, confirmed and approved.

Section 15.     The Executive Director is hereby authorized to sign and deliver one or more Official Statements, in the form of the Preliminary Official Statement, with such appropriate changes, insertions and revisions as may be approved by the Executive Director, her signing of said Official Statement or Official Statements to be conclusive evidence of her approval of such changes, insertions and omissions, and the Underwriters to which said bonds are awarded are hereby authorized to use said Official Statement or Official Statements in connection with the offering and sale of said bonds.

Section 16.     The Escrow Deposit Agreement relating to the Series 2005C Bonds is hereby approved in the form presented at this meeting, filed with the Secretary and marked as No. 3 to this Resolution, with such appropriate changes, insertions and omissions as may be approved by the Executive Director; the Executive Director is hereby authorized to execute and

deliver the Escrow Deposit Agreement on behalf of the Authority, her execution to be conclusive evidence of her approval of such changes, insertions and omissions.

The Executive Director is authorized in the name and on behalf of the Authority to employ one or more bidding agents on such terms as she shall determine, upon advice of counsel and Government Development Bank, statutory fiscal agent to the Authority, to facilitate the investment of some or all of the proceeds of the bonds authorized by the provisions of this Resolution, to approve any request for bids for the investment of such proceeds (the "Investments RFP"), substantially in the form of similar requests for bids utilized by the Authority in connection with the issuance of prior series of bonds under the Trust Agreement, with the necessary changes being made, and to approve, execute and deliver and any agreements regarding the investment of such proceeds as shall be negotiated by her with the winning providers under such Investments RFP (the "Investment Agreements").

Section 17.    A continuing disclosure agreement relating to the bonds authorized in this Resolution, executed by the Authority and the Secretary of the Treasury of Puerto Rico (the "CD Agreement"), is hereby approved in the form presented to this meeting, filed with the Secretary and marked as Exhibit No. 4 to this Resolution, with such appropriate changes, insertions and omissions as may be approved by the Executive Director or any person authorized to act on her behalf pursuant to the bylaws of the Authority; the Executive Director or any such person is hereby authorized to execute and deliver the CD Agreement on behalf of the Authority, her execution to be conclusive evidence of her approval of such changes, insertions and omissions.

Section 18.    If any series of bonds authorized by this Resolution shall no longer be held by a securities depository, there shall be included on each of the bonds of such series, the legal opinion of Sidley Austin Brown & Wood LLP, New York, New York, bond counsel, respecting the validity of such bonds and, immediately following such legal opinion, a certificate executed with the facsimile signature of the Executive Director, said certificate to be in substantially the following form:

"I HEREBY CERTIFY that the foregoing is a true and correct copy of the legal opinion upon the bonds therein described which was manually signed by Sidley Austin Brown & Wood LLP, New York, New York, and was dated the date of delivery of and payment for the bonds therein described.

<u>            [Facsimile Signature]</u>
Executive Director, Puerto Rico
Infrastructure Financing Authority".

Section 19.    The Executive Director of the Authority and any Vice President of GDB, statutory agent for the Authority, is hereby authorized and directed, in the name of and on behalf of the Authority, to execute (if necessary) insurance commitments with AMBAC and FGIC (the "Commitments") substantially in the respective forms presented to this meeting, filed with the Secretary and marked as Exhibit No. 5 to this Resolution, with such appropriate changes, insertions and omissions as may be approved by the Executive Director or any person authorized

33

to act on her behalf pursuant to the bylaws of the Authority, such execution to be conclusive evidence of the signer's approval of such changes, insertions and omissions. The Executive Director or any such person is hereby also authorized to execute and deliver the Commitments on behalf of the Authority, said signer's execution to be conclusive evidence of his approval of such changes, insertions and omissions; and to execute and file with the appropriate office such financing statements as the person signing such statements determines (with the advice of counsel) are necessary to preserve under applicable Puerto Rico law the lien on and pledge of Special Tax Revenues (as defined in the Trust Agreement) for the benefit of the holders of the bonds authorized by this Resolution and of any outstanding bonds issued under and secured by the Trust Agreement as said signer shall determine with the advice of counsel.

Section 20.   The following financial institutions are each designated a "Qualified Depositary" under the terms of and for the purposes provided in the Trust Agreement:

U.S. Bank Trust National Association
Government Development Bank for Puerto Rico

Section 21.   The Authority covenants that it will comply, to the extent permitted by Constitution and laws of the Commonwealth of Puerto Rico, with the provisions of the Internal Revenue Code of 1986, as amended, so that interest on the Bonds and the Bonds will remain exempt from existing Federal income taxes to which it is not subject on the respective dates of the issuance of such Bonds.

Section 22.   In accordance with the requirements of Rule 15c2-12, as amended (the "Rule"), promulgated by the Securities and Exchange Commission (the "Commission"), the authority covenants for the benefit of the persons who from time to time are the owners of the Bonds for federal income tax purposes (the "beneficial owners"):

(A)   to file within 305 days after the end of each fiscal year, beginning after its 2005 fiscal year, with each nationally recognized municipal securities information repository and to any Commonwealth state information depository, certain financial information for the prior fiscal year, including (i) the Authority's audited financial statements, prepared in accordance with generally accepted accounting principles in effect from time to time, and (ii) material historical quantitative data (including financial information and operating data) relating to the federal excise taxes and special tax revenues and rum consumption generally found in the Official Statement; and

(B)   to file in a timely manner, with each nationally recognized municipal securities information repository or with the Municipal Securities Rulemaking Board, and with any Commonwealth state information depository, notice of any failure of the Authority to comply with the requirements of paragraph (A) above and of any of the following events with respect to the Bonds, if material:

(i)   principal and interest payment delinquencies;

(ii)   non-payment related defaults;

34

(iii)  unscheduled draws on debt service reserves reflecting financial difficulties;

(iv)  unscheduled draws on credit enhancements reflecting financial difficulties;

(v)  substitution of credit or liquidity providers, or their failure to perform;

(vi)  adverse opinions or events, affecting the exclusion from gross income for Federal income tax purposes of interest on the bonds authorized by this Resolution;

(vii)  modifications to rights of security holders;

(viii)  Bond calls;

(ix)  defeasances;

(x)  release, substitution, or sale of property securing repayment of the bonds authorized by this Resolution; and

(xi)  rating changes.

The Authority does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the bonds authorized by this Resolution, unless the Authority applies for or participates in obtaining the enhancement.

The Authority may from time to time choose to provide notice of the occurrence of certain other events in addition to those listed above if, in the judgment of the Authority, such other events are material with respect to the bonds authorized by this Resolution, but the Authority does not undertake to provide any such notice of the occurrence of any material event except those events listed above.

(b)  No beneficial owner may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of any covenant in paragraph (a) of this Section ("Authority Covenant") or for any remedy for breach thereof, unless such owner shall have filed with the Authority written notice of and request to cure such breach, and the Authority shall have refused to comply within a reasonable time. All Proceedings shall be instituted only as specified herein, in the Federal or any Commonwealth court located in the Municipality of San Juan, and for the equal benefit of all beneficial owners of the outstanding bonds authorized by this Resolution benefited by the same or a substantially similar covenant, and no remedy shall be sought or granted other than specific performance of the Authority Covenant at issue. Notwithstanding the foregoing, no challenge to the adequacy of the information provided in accordance with the filings mentioned in said paragraph (a) may be prosecuted by any beneficial owner except in compliance with the remedial and enforcement provisions of Article VII of the Agreement.

(c)  Any amendment to this Section may only take effect if:

(1)     the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the Authority, or type of business conducted; this Section, as amended, would have complied with the requirements of the Rule at the time of award of the bonds authorized by this Resolution, after taking into account any amendments or interpretations of the Rule, as well as any change in circumstances; and the amendment does not materially impair the interests of beneficial owners, as determined by parties unaffiliated with the Authority (such as, but without limitation, the Authority's financial advisor or bond counsel); or

(2)     all or any part of the Rule, as interpreted by the staff of the Commission at the date of the adoption of this resolution, ceases to be in effect for any reason, and the Authority elects that this Section shall be deemed amended accordingly.

The Authority further agrees in conjunction with any such amendment that the annual financial information containing the amended operating data or financial information will explain, in narrative form, the reasons for the amendment and the impact of the change in the type of operating data or financial information being provided.

(d)     Any assertion of beneficial ownership must be filed, with full documentary support, as part of the written request described in paragraph (b) hereof.

Section 23.     So long as the AMBAC Policy shall be in full force and effect with respect to the AMBAC Insured Bonds, the Authority and the Trustee agree to comply with the following provisions:

(a)     Any provision of this Resolution expressly recognizing or granting rights in or to AMBAC may not be amended in any manner which affects the rights of AMBAC hereunder without the prior written consent of AMBAC.   AMBAC reserves the right to charge the Authority a fee for any such amendment while the AMBAC Policy is outstanding.

(b)     Unless otherwise provided in this Section, AMBAC's consent shall be required in lieu of the consent of the owners of the AMBAC Insured Bonds, when required, for the following purposes:  (i) execution and delivery of any agreement supplemental to the Trust Agreement; (ii) removal of the Trustee and selection and appointment of any successor trustee; and (iii) initiation or approval of any action not described in (i) or (ii) above which requires bondholder consent.

(c)     Any reorganization or liquidation plan with respect to the Authority must be acceptable to AMBAC.  In the event of any reorganization or liquidation, AMBAC shall have the right to vote on behalf of all AMBAC Insured Bonds absent a default by AMBAC under its Policy.

(d)     During the term of the AMBAC Policy, the Authority shall furnish to AMBAC (to the attention of the Surveillance Department, unless otherwise indicated):

    (i)     soon as practicable after the filing thereof, a copy of any financial statement of the as Authority and a copy of any audit and annual report of the Authority:

36

(ii)   a copy of any notice to be given to the registered owners of the AMBAC Insured Bonds, including, without limitation, notice of any redemption of or defeasance of AMBAC Insured Bonds, and any certificate rendered pursuant to the Trust Agreement relating to the security for the AMBAC Insured Bonds;

(iii)   to the extent that the Authority has entered into a continuing disclosure agreement with respect to the AMBAC Insured Bonds, AMBAC shall be included as party to be notified; and

(iv)   such additional information it may reasonably request.

(e)   The Trustee shall notify AMBAC of any failure of the Authority to provide relevant notices, certificates or other communication to the Trustee.

(f)   The Authority will permit AMBAC to discuss the affairs, finances and accounts of the Authority or any information AMBAC may reasonably request regarding the security for the AMBAC Insured Bonds with appropriate officers of the Authority. The Authority will permit AMBAC to have access to and to make copies of all books and records relating to the AMBAC Insured Bonds at any reasonable time.

(g)   AMBAC shall have the right to direct an accounting at the Authority's expense, and the Authority shall comply with such direction within thirty (30) days after receipt of written notice of the direction from AMBAC; provided, however, that if compliance cannot occur within such period, then such period will be extended so long as compliance is begun within such period and diligently pursued, but only if such extension would not materially adversely affect the interests of any registered owner of the AMBAC Insured Bonds.

(h)   The Authority shall immediately notify AMBAC if at any time there are insufficient moneys to make any payments of principal of or interest on the AMBAC Insured Bonds as required. Notwithstanding any other provision of this Resolution, the Trustee or the Authority shall immediately notify AMBAC if at any time there are insufficient moneys to make any payments of principal of or interest on the AMBAC Insured Bonds when due.

(i)   The Authority shall provide AMBAC with a copy of all reports and notices filed in accordance with the Continuing Disclosure Agreement.

(j)   For so long as the AMBAC Policy shall remain in effect for the AMBAC Insured Bonds, moneys in the various funds and accounts under the Trust Agreement may only be invested as follows (to the extent the following investments would otherwise constitute Investment Obligations as defined in the Trust Agreement):

(1) Obligations of any of the following federal agencies which obligations represent the full faith and credit of the United States of America, including:

___ Export-Import Bank
___ Rural Economic Community Development Administration
       (formerly the Farmers Home Administration)

37

    \_\_ General Services Administration
    \_\_ U.S. Maritime Administration
    \_\_ Small Business Administration
    \_\_ U.S. Department of Housing & Urban Development (PHA's)
    \_\_ Federal Housing Administration
    \_\_ Federal Financial Bank;

(2) Direct obligations of any of the following federal agencies which obligations are not fully guaranteed by the full faith and credit of the United States of America:

    \_\_ Senior debt obligations rated "Aaa" by Moody's and "AAA" by S&P issued by the Federal National Mortgage Association (FNMA) or Federal Home Loan Mortgage Corporation (FHLMC)
    \_\_ Obligations of the Resolution Funding Corporation (REFCORP)
    \_\_ Senior debt obligations of the Federal Home Loan Bank System
    \_\_ Senior debt obligations of other government sponsored Agencies approved by \_\_\_\_\_;

(3) U.S. dollar denominated deposit accounts, federal funds and bankers' acceptances with domestic commercial banks which have a rating on their short term certificates of deposit on the date of purchase of "A-1" or "A-1+" by S&P and "P-1" by Moody's and maturing no more than 360 days after the date of purchase. (Ratings on holding companies are not considered as the rating of the bank.);

(4) Commercial paper which is rated at the time of purchase in the single highest classification, "A-1+" by S&P and "P-1" by Moody's and which matures not more than 270 days after the date of purchase;

(5) Investments in a money market fund rated "AAAm" or "AAAm-G" or better by S&P;

(6) Any bonds or other obligations of any state of the United States of America or of any agency, instrumentality or local governmental unit of any such state which are not callable at the option of the obligor prior to maturity or as to which irrevocable instructions have been given by the obligor to call on the date specified in the notice; and

(A) which are rated, based on an irrevocable escrow account or fund (the "escrow"), in the highest rating category of S&P and Moody's or any successor thereto; or

(B) (i) which are fully secured as to principal and interest and redemption premium, if any, by an escrow consisting only of cash or Government Obligations, which escrow may be applied only to the payment of such principal of and interest and redemption premium, if any, on such bonds or other obligations on the maturity date or dates thereof or the specified redemption date or dates pursuant to such irrevocable instructions, as appropriate, and (ii) which escrow is sufficient, as verified by a nationally

38

recognized independent certified public accountant, to pay principal of and interest and redemption premium, if any, on the bonds or other obligations described in this paragraph on the maturity date or dates specified in the irrevocable instructions referred to above, as appropriate;

(7) General obligations of States or territories with a rating of at least "A2/A" or higher by both Moody's and S&P.

(8) Investment agreements approved in writing by AMBAC; and

(9) Other forms of investments (including repurchase agreements) approved in writing by AMBAC.

The value of the above investments shall be determined as of the end of each month as follows:

(1) investments credited to any fund shall be valued at fair market value. The Trustee shall determine the fair market value based on accepted industry standards and from accepted industry providers. Accepted industry providers shall include but are not limited to pricing services provided by Financial Times Interactive Data Corporation, Merrill Lynch, Salomon Smith Barney, Bear Stearns, or Lehman Brothers;

(2) as to certificates of deposit and bankers acceptances: the face amount thereof, plus accrued interest; and

(3) as to any investment not specified above: the value thereof established by prior agreement between the Authority and AMBAC.

(k)     Notwithstanding anything herein or in the Trust Agreement to the contrary, in the event that the principal and/or interest due on the AMBAC Insured Bonds shall be paid by AMBAC pursuant to the AMBAC Policy, such Bonds shall remain Outstanding for all purposes of the Trust Agreement, not be defeased or otherwise satisfied and not be considered paid by the Authority, and the pledge and all covenants, agreements and other obligations of the Authority to the registered owners shall continue to exist and shall run to the benefit of AMBAC, and AMBAC shall be subrogated to the rights of such registered owners.

(l)     As long as the AMBAC Policy shall be in full force and effect, the Authority and the Trustee agree to comply with the following provisions:

(i)     At least one (1) day prior to each Interest Payment Date, the Trustee, will determine whether there will be sufficient funds to pay the principal of or interest on the AMBAC Insured Bonds on such Interest Payment Date. If the Trustee, determines that there will be insufficient funds, it shall so notify AMBAC. Such notice shall specify the amount of the anticipated deficiency, the AMABC Insured Bonds to which such deficiency is applicable and whether such Bonds will be deficient as to principal or interest, or both. If the Trustee has not so notified AMBAC at least one (1) day prior to an Interest Payment Date, AMBAC will make payments of principal or interest due on the AMBAC Insured Bonds on or before the

39

first (1st) day next following the date on which AMBAC shall have received notice of such nonpayment from the Trustee.

(ii)     The Trustee shall, after giving notice to AMBAC as provided in (i) above, make available to AMBAC and, at AMBAC's direction, to the United States Trust Company of New York, as insurance trustee for AMBAC or any successor insurance trustee (the "Insurance Trustee"), the registration books of the Authority maintained by the Trustee, and all records relating to the funds and accounts maintained under the Trust Agreement.

(iii)    The Trustee shall provide AMBAC and the Insurance Trustee with a list of registered owners of AMBAC Insured Bonds entitled to receive principal or interest payments from AMBAC under the terms of the AMBAC Policy, and shall make arrangements with the Insurance Trustee (i) to mail checks to the registered owners of AMBAC Insured Bonds entitled to receive full or partial interest payments from AMBAC and (ii) to pay principal upon AMBAC Insured Bonds surrendered to the Insurance Trustee by their registered owners entitled to receive full or partial principal payments from AMBAC.

(iv)     The Trustee shall, at the time it provides notice to AMBAC pursuant to (i) above, notify registered owners of AMBAC Insured Bonds entitled to receive the payment of principal or interest thereon from AMBAC (I) as to the fact of such entitlement, (II) that AMBAC will remit to them all or a part of the interest payments next coming due upon proof of Bondholder entitlement to interest payments and delivery to the Insurance Trustee, in form satisfactory to the Insurance Trustee, of an appropriate assignment of the registered owner's right to payment, (III) that should they be entitled to receive full payment of principal from AMBAC, they must surrender their AMBAC Insured Bonds (along with an appropriate instrument of assignment in form satisfactory to the Insurance Trustee to permit ownership of such Bonds to be registered in the name of AMBAC) for payment to the Insurance Trustee, and not the Trustee, and (IV) that should they be entitled to receive partial payment of principal from AMBAC, they must surrender their AMBAC Insured Bonds for payment thereon first to the Trustee, who shall note on such Bonds the portion of the principal paid by the Trustee, and then, along with an appropriate instrument of assignment in form satisfactory to the Insurance Trustee, to the Insurance Trustee, which will then pay the unpaid portion of principal.

(v)      In the event that the Trustee, has notice that any payment of principal of or interest on an Insured Bond which has become Due for Payment (as defined in the AMBAC Policy) and which is made to a Bondholder by or on behalf of the Authority has been deemed a preferential transfer and theretofore recovered from its registered owner pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with the final, nonappealable order of a court having competent jurisdiction, the

40

Trustee, shall, at the time AMBAC is notified pursuant to (i) above, notify all registered owners of AMBAC Insured Bonds that in the event that any such registered owner's payment is so recovered, such registered owner will be entitled to payment from AMBAC to the extent of such recovery if sufficient funds are not otherwise available, and the Trustee, shall furnish to AMBAC its records evidencing the payments of principal of and interest on the AMBAC Insured Bonds which have been made by the Trustee, and subsequently recovered from the registered owners thereof and the dates on which such payments were made.

(vi)     In addition to those rights granted AMBAC under this Resolution, AMBAC shall, to the extent it makes payment of principal of or interest on AMBAC Insured Bonds, become subrogated to the rights of the recipients of such payments in accordance with the terms of the AMBAC Policy, and to evidence such subrogation (I) in the case of subrogation as to claims for past due interest, the Trustee, shall note AMBAC's rights as subrogee on the registration books of the Authority maintained by the Trustee, upon receipt from AMBAC of proof of the payment of interest thereon to the registered owners of the AMBAC Insured Bonds, and (II) in the case of subrogation as to claims for past due principal, the Trustee, shall note AMBAC's rights as subrogee on the registration books of the Authority maintained by the Trustee, upon surrender of the AMBAC Insured Bonds by the registered owners thereof together with proof of the payment of principal thereof.

(m)     AMBAC shall receive prior written notice of any Trustee resignation.

(n)     Notwithstanding any other provision of the Trust Agreement, in determining whether the rights of the holders of AMBAC Insured Bonds will be adversely affected by any action taken pursuant to the terms and provisions of the Trust Agreement, the Trustee shall consider the effect on such holders as if there were no AMBAC Policy.

(o)     Notwithstanding any other provision of the Trust Agreement, no removal, resignation or termination of the Trustee shall take effect until a successor, acceptable to AMBAC, shall be appointed.

(p)     To the extent that this Resolution confers upon or gives or grants to AMBAC any right, remedy or claim under or by reason of this Resolution, AMBAC is hereby explicitly recognized as being a third-party beneficiary hereunder and may enforce any such right remedy or claim conferred, given or granted hereunder.

Section 24.     So long as the FGIC Policy shall be in full force and effect with respect to the FGIC Insured Bonds, the Authority and the Trustee agree to comply with the following provisions:

(a)     FGIC shall receive prompt notice of any failure to pay principal of or interest on any of the FGIC Insured Bonds and notice of any other failure to comply with the terms of the

41

Trust Agreement known to the Trustee or the Authority within 30 days of the Trustee's or the Authority's knowledge thereof.

(b)     For all purposes of the Trust Agreement, except the giving of notice to the holders of FGIC Insured Bonds, FGIC shall be deemed to be the sole holder of the FGIC Insured Bonds in lieu of the holders thereof for so long as it has not failed to comply with its payment obligations under the FGIC Policy.

(c)     FGIC shall be included as a party in interest and as a party entitled to request the Trustee to intervene in judicial proceedings that affect the FGIC Insured Bonds or the security therefor.

(d)     Any rating agency rating the FGIC Insured Bonds must receive notice of each amendment or supplement to the Trust Agreement and a copy thereof at least 15 days in advance of its execution.  FGIC shall be provided with a full transcript of all proceedings relating to the execution of any such amendment or supplement.

(e)     FGIC shall be furnished with written notice of the resignation or removal of the Trustee and the appointment of any successor thereto.

(f)     (1) Only cash, direct non-callable obligations of the United States of America and securities fully and unconditionally guaranteed as to the timely payment of principal and interest by the United States of America, to which direct obligation or guarantee the full faith and credit of the United States of America has been pledged, Refcorp interest strips, CATS, TIGRS, STRPS, or defeased municipal bonds rated "AAA" by S&P or "Aaa" by Moody's (or any combination of the foregoing) shall (to the extent not inconsistent with the definition of Sufficient Government Obligations in Section 1101 of the Trust Agreement) be used to effect defeasance of the FGIC Bonds unless FGIC otherwise approves.  In the event of an advance refunding, the Authority shall cause to be delivered to FGIC a verification report of an independent nationally recognized certified public accountant.  If a forward supply contract is employed in connection with such refunding, (i) such verification report shall expressly state that the adequacy of the escrow to accomplish the refunding relies solely on the initial escrowed investments and the maturing principal thereof and interest income thereon and does not assume performance under or compliance with the forward supply contract, and (ii) the applicable escrow agreement shall provide that in the event of any discrepancy or difference between the terms of the forward supply contract and the escrow agreement (or the Trust Agreement and this Resolution, if no separate escrow agreement is utilized), the terms of the escrow agreement or Trust Agreement and this Resolution, if applicable, shall be controlling.

(2) For so long as the FGIC Policy shall remain in effect for the FGIC Insured Bonds, (except as provided in the preceding paragraph) moneys in the various funds and accounts under the Trust Agreement may only be invested as follows (to the extent the following investments would otherwise constitute Investment Obligations as defined in the Trust Agreement):

42

1. Direct obligations of the United States of America and securities fully and unconditionally guaranteed as to the timely payment of principal and interest by the United States of America ("U.S. Government Securities").

2. Direct obligations* of the following federal agencies which are fully guaranteed by the full faith and credit of the United States of America:

    (a) Export-Import Bank of the United States – Direct obligations and fully guaranteed certificates of beneficial interest

    (b) Federal Housing Administration – debentures

    (c) General Services Administration – participation certificates

    (d) Government National Mortgage Association ("GNMAs") – guaranteed mortgage-backed securities and guaranteed participation certificates

    (e) Small Business Administration – guaranteed participation certificates and guaranteed pool certificates

    (f) U.S. Department of Housing & Urban Development – local authority bonds

    (g) U.S. Maritime Administration – guaranteed Title XI financings

    (h) Washington Metropolitan Area Transit Authority – guaranteed transit bonds

3. Direct obligations of the following federal agencies which are not fully guaranteed by the faith and credit of the United States of America:

    (a) Federal National Mortgage Association ("FNMAs") – senior debt obligations rated Aaa by Moody's Investors Service ("Moody's") and AAA by Standard & Poor's Ratings Services ("S&P")

    (b) Federal Home Loan Mortgage Corporation ("FHLMCs") – participation certificates and senior debt obligations rated Aaa by Moody's and AAA by S&P

    (c) Federal Home Loan Banks – consolidated debt obligations

    (d) Student Loan Marketing Association – debt obligations

    (e) Resolution Funding Corporation – debt obligations

4. Direct, general obligations of any state of the United States of America or any subdivision or agency thereof whose uninsured and unguaranteed general obligation debt

---

* The following are explicitly excluded from the securities enumerated in 2 and 3:

    (i) All derivative obligations, including without limitation inverse floaters, residuals, interest-only, principal-only and range notes;

    (ii) Obligations that have a possibility of returning a zero or negative yield if held to maturity;

    (iii) Obligations that do not have a fixed par value or those whose terms do not promise a fixed dollar amount at maturity or call date; and

    (iv) Collateralized Mortgage-Backed Obligations ("CMOs").

43

is rated, at the time of purchase, A2 or better by Moody's and A or better by S&P, or any obligation fully and unconditionally guaranteed by any state, subdivision or agency whose uninsured and unguaranteed general obligation debt is rated, at the time of purchase, A2 or better by Moody's and A or better by S&P.

5. Commercial paper (having original maturities of not more than 270 days) rated, at the time of purchase, P-1 by Moody's and A-1 or better by S&P.

6. Certificates of deposit, savings accounts, deposit accounts or money market deposits in amounts that are continuously and fully insured by the Federal Deposit Insurance Corporation ("FDIC"), including the Bank Insurance Fund and the Savings Association Insurance Fund.

7. Certificates of deposit, deposit accounts, federal funds or bankers' acceptances (in each case having maturities of not more than 365 days following the date of purchase) of any domestic commercial bank or United States branch office of a foreign bank, provided that such bank's short-term certificates of deposit are rated P-1 by Moody's and A-1 or better by S&P (not considering holding company ratings).

8. Investments in money-market funds rated AAAm or AAAm-G by S&P.

9. State-sponsored investment pools rated AA- or better by S&P.

10. Repurchase agreements that meet the following criteria:

(a) A master repurchase agreement or specific written repurchase agreement, substantially similar in form and substance to the Public Securities Association or Bond Market Association master repurchase agreement, governs the transaction.

(b) Acceptable providers shall consist of (i) registered broker/dealers subject to Securities Investors' Protection Corporation ("SIPC") jurisdiction or commercial banks insured by the FDIC, if such broker/dealer or bank has an uninsured, unsecured and unguaranteed rating of A3/P-1 or better by Moody's and A-/A-1 or better by S&P, or (ii) domestic structured investment companies approved by Financial Guaranty and rated Aaa by Moody's and AAA by S&P.

(c) The repurchase agreement shall require termination thereof if the counterparty's ratings are suspended, withdrawn or fall below A3 or P-1 from Moody's, or A- or A-1 from S&P. Within ten (10) days, the counterparty shall repay the principal amount plus any accrued and unpaid interest on the investments.

(d) The repurchase agreement shall limit acceptable securities to U.S. Government Securities and to the obligations of GNMA, FNMA or FHLMC described in 2(d), 3(a) and 3(b) above. The fair market value of the securities in relation to the amount of the repurchase obligation, including principal and accrued interest, is equal to a collateral level of at least 104% for U.S. Government Securities and 105% for GNMAs, FNMAs or FHLMCs. The repurchase agreement shall require (i) the Trustee or the Agent to value the collateral securities no less frequently

than weekly, (ii) the delivery of additional securities if the fair market value of the securities is below the required level on any valuation date, and (iii) liquidation of the repurchase securities if any deficiency in the required percentage is not restored within two (2) business days of such valuation.

(e) The repurchase securities shall be delivered free and clear of any lien to the bond trustee (herein, the "Trustee") or to an independent third party acting solely as agent ("Agent") for the Trustee, and such Agent is (i) a Federal Reserve Bank, or (ii) a bank which is a member of the FDIC and which has combined capital, surplus and undivided profits or, if appropriate, a net worth, of not less than $50 million, and the Trustee shall have received written confirmation from such third party that such third party holds such securities, free and clear of any lien, as agent for the Trustee.

(f) A perfected first security interest in the repurchase securities shall be created for the benefit of the Trustee, and the issuer and the Trustee shall receive an opinion of counsel as to the perfection of the security interest in such repurchase securities and any proceeds thereof.

(g) The repurchase agreement shall have a term of one year or less, or shall be due on demand.

(h) The repurchase agreement shall establish the following as events of default, the occurrence of any of which shall require the immediate liquidation of the repurchase securities, unless Financial Guaranty directs otherwise:

   (i) insolvency of the broker/dealer or commercial bank serving as the counterparty under the repurchase agreement;

   (ii) failure by the counterparty to remedy any deficiency in the required collateral level or to satisfy the margin maintenance call under item 10(d) above; or

   (iii) failure by the counterparty to repurchase the repurchase securities on the specified date for repurchase.

11. Investment agreements (also referred to as guaranteed investment contracts) that meet the following criteria:

   (a) A master agreement or specific written investment agreement governs the transaction.

   (b) Acceptable providers of uncollateralized investment agreements shall consist of (i) domestic FDIC-insured commercial banks, or U.S. branches of foreign banks, rated at least Aa2 by Moody's and AA by S&P; (ii) domestic insurance companies rated Aaa by Moody's and AAA by S&P; and (iii) domestic structured investment companies approved by Financial Guaranty and rated Aaa by Moody's and AAA by S&P.

45

(c)    Acceptable providers of collateralized investment agreements shall consist of (i) registered broker/dealers subject to SIPC jurisdiction, if such broker/dealer has an uninsured, unsecured and unguaranteed rating of A1 or better by Moody's and A+ or better by S&P; (ii) domestic FDIC-insured commercial banks, or U.S. branches of foreign banks, rated at least A1 by Moody's and A+ by S&P; (iii) domestic insurance companies rated at least A1 by Moody's and A+ by S&P; and (iv) domestic structured investment companies approved by Financial Guaranty and rated Aaa by Moody's and AAA by S&P. Required collateral levels shall be as set forth in 11(f) below.

(d)    The investment agreement shall provide that if the provider's ratings fall below Aa3 by Moody's or AA- by S&P, the provider shall within ten (10) days either (i) repay the principal amount plus any accrued and interest on the investment; or (ii) deliver Permitted Collateral as provided below.

(e)    The investment agreement must provide for termination thereof if the provider's ratings are suspended, withdrawn or fall below A3 from Moody's or A- from S&P. Within ten (10) days, the provider shall repay the principal amount plus any accrued interest on the agreement, without penalty to the Issuer.

(f)    The investment agreement shall provide for the delivery of collateral described in (i) or (ii) below ("Permitted Collateral") which shall be maintained at the following collateralization levels at each valuation date:

    (i)    U.S. Government Securities at 104% of principal plus accrued interest; or

    (ii)    Obligations of GNMA, FNMA or FHLMC (described in 2(d), 3(a) and 3(b) above) at 105% of principal and accrued interest.

(g)    The investment agreement shall require the Trustee or Agent to determine the market value of the Permitted Collateral not less than weekly and notify the investment agreement provider on the valuation day of any deficiency. Permitted Collateral may be released by the Trustee to the provider only to the extent that there are excess amounts over the required levels. Market value, with respect to collateral, may be determined by any of the following methods:

    (i)    the last quoted "bid" price as shown in Bloomberg, Interactive Data Systems, Inc., The Wall Street Journal or Reuters;

    (ii)    valuation as performed by a nationally recognized pricing service, whereby the valuation method is based on a composite average of various bid prices; or

    (iii)    the lower of two bid prices by nationally recognized dealers. Such dealers or their parent holding companies shall be rated investment grade and shall be market makers in the securities being valued.

(h)     Securities held as Permitted Collateral shall be free and clear of all liens and claims of third parties, held in a separate custodial account and registered in the name of the Trustee or the Agent.

(i)     The provider shall grant the Trustee or the Agent a perfected first security interest in any collateral delivered under an investment agreement. For investment agreements collateralized initially and in connection with the delivery of Permitted Collateral under 11(f) above, the Trustee and Financial Guaranty shall receive an opinion of counsel as to the perfection of the security interest in the collateral.

(j)     The investment agreement shall provide that moneys invested under the agreement must be payable and putable at par to the Trustee without condition, breakage fee or other penalty, upon not more than two (2) business days' notice, or immediately on demand for any reason for which the funds invested may be withdrawn from the applicable fund or account established under the authorizing document, as well as the following:

   (i)     In the event of a deficiency in the debt service account;

   (ii)    Upon acceleration after an event of default;

   (iii)   Upon refunding of the bonds in whole or in part;

   (iv)    Reduction of the debt service reserve requirement for the bonds; or

   (v)     If a determination is later made by a nationally recognized bond counsel that investments must be yield-restricted.

Notwithstanding the foregoing, the agreement may provide for a breakage fee or other penalty that is payable in arrears and not as a condition of a draw by the Trustee if the issuer's obligation to pay such fee or penalty is subordinate to its obligation to pay debt service on the bonds and to make deposits to the debt service reserve fund.

(k)     The investment agreement shall establish the following as events of default, the occurrence of any of which shall require the immediate liquidation of the investment securities:

   (i)     Failure of the provider or the guarantor (if any) to make a payment when due or to deliver Permitted Collateral of the character, at the times or in the amounts described above;

   (ii)    Insolvency of the provider or the guarantor (if any) under the investment agreement;

   (iii)   Failure by the provider to remedy any deficiency with respect to required Permitted Collateral;

   (iv)    Failure by the provider to make a payment or observe any covenant under the agreement;

   (v)     The guaranty (if any) is terminated, repudiated or challenged; or

(vi) Any representation of warranty furnished to the Trustee or the issuer in connection with the agreement is false or misleading.

(l) The investment agreement must incorporate the following general criteria:

(i) "Cure periods" for payment default shall not exceed two (2) business days;

(ii) The agreement shall provide that the provider shall remain liable for any deficiency after application of the proceeds of the sale of any collateral, including costs and expenses incurred by the Trustee or Financial Guaranty;

(iii) Neither the agreement or guaranty agreement, if applicable, may be assigned (except to a provider that would otherwise be acceptable under these guidelines) or amended without the prior consent of Financial Guaranty;

(iv) If the investment agreement is for a debt service reserve fund, reinvestments of funds shall be required to bear interest at a rate at least equal to the original contract rate.

(v) The provider shall be required to immediately notify Financial Guaranty and the Trustee of any event of default or any suspension, withdrawal or downgrade of the provider's ratings;

(vi) The agreement shall be unconditional and shall expressly disclaim any right of set-off or counterclaim;

(vii) The agreement shall require the provider to submit information reasonably requested by Financial Guaranty, including balance invested with the provider, type and market value of collateral and other pertinent information.

12. Forward delivery agreements in which the securities delivered mature on or before each interest payment date (for debt service or debt service reserve funds) or draw down date (construction funds) that meet the following criteria:

(a) A specific written investment agreement governs the transaction.

(b) Acceptable providers shall be limited to (i) any registered broker/dealer subject to the Securities Investors' Protection Corporation jurisdiction, if such broker/dealer or bank has an uninsured, unsecured and unguaranteed obligation rated A3/P-1 or better by Moody's and A-/A-1 or better by S&P; (ii) any commercial bank insured by the FDIC, if such bank has an uninsured, unsecured and unguaranteed obligation rated A3/P-1 or better by Moody's and A-/A-1 or better by S&P; and (iii) domestic structured investment companies approved by Financial Guaranty and rated Aaa by Moody's and AAA by S&P.

(c) The forward delivery agreement shall provide for termination or assignment (to a qualified provider hereunder) of the agreement if the provider's ratings are suspended, withdrawn or fall below A3 or P-1 from

48

Moody's or A- or A-1 from S&P. Within ten (10) days, the provider shall fulfill any obligations it may have with respect to shortfalls in market value. There shall be no breakage fee payable to the provider in such event.

(d) Permitted securities shall include the investments listed in 1, 2 and 3 above.

(e) The forward delivery agreement shall include the following provisions:

(i) The permitted securities must mature at least one (1) business day before a debt service payment date or scheduled draw. The maturity amount of the permitted securities must equal or exceed the amount required to be in the applicable fund on the applicable valuation date.

(ii) The agreement shall include market standard termination provisions, including the right to terminate for the provider's failure to deliver qualifying securities or otherwise to perform under the agreement. There shall be no breakage fee or penalty payable to the provider in such event.

(iii) Any breakage fees shall be payable only on debt service payment dates and shall be subordinated to the payment of debt service and debt service reserve fund replenishments.

(iv) The provider must submit at closing a bankruptcy opinion to the effect that upon any bankruptcy, insolvency or receivership of the provider, the securities will not be considered to be a part of the provider's estate, and otherwise acceptable to Financial Guaranty.

(v) The agreement may not be assigned (except to a provider that would otherwise be acceptable under these guidelines) or amended without the prior written consent of Financial Guaranty.

13. Forward delivery agreements in which the securities delivered mature after the funds may be required but provide for the right of the issuer or the Trustee to put the securities back to the provider under a put, guaranty or other hedging arrangement, only with the prior written consent of Financial Guaranty.

14. Maturity of investments shall be governed by the following:

(a) Investments of monies (other than reserve funds) shall be in securities and obligations maturing not later than the dates on which such monies will be needed to make payments.

(b) Investments shall be considered as maturing on the first date on which they are redeemable without penalty at the option of the holder or the date on which the Trustee may require their repurchase pursuant to repurchase agreements.

(c) Investments of monies in reserve funds not payable upon demand shall be restricted to maturities of five years or less.

49

(g)    FGIC shall be provided with the following:

     (i)    Notice of the redemption, other than mandatory sinking fund redemption, of any of the FGIC Insured Bonds, or of any advance refunding of the FGIC Insured Bonds, including the principal amount, maturities and CUSIP numbers thereof;

     (ii)    Notice of the downgrading by any rating agency of the Authority's underlying public rating to "non-investment grade";

     (iii)    Notice of any material events pursuant to the Rule; and

     (iv)    Such additional information as FGIC may reasonably request from time to time.

(h)    The Authority shall pay or reimburse FGIC for any and all charges, fees, costs, and expenses that FGIC may reasonably pay or incur in connection with the following: (i) the administration, enforcement, defense, or preservation of any rights or security hereunder or under the Trust Agreement; (ii) the pursuit of any remedies hereunder, under the Trust Agreement, or otherwise afforded by law or equity, (iii) any amendment, waiver, or other action with respect to or related to the Trust Agreement or this Resolution whether or not executed or completed; (iv) the violation by the Authority of any law, rule, or regulation or any judgment, order or decree applicable to it; (v) any advances or payments made by FGIC to cure defaults of the Authority under the Trust Agreement; or (vi) any litigation or other dispute in connection with the Trust Agreement or this Resolution or the transactions contemplated hereby or thereby, other than amounts resulting from the failure of FGIC to honor its payment obligations under the FGIC Policy. FGIC reserves the right to charge a reasonable fee as a condition to executing any amendment, waiver, or consent proposed in respect of the Trust Agreement. The obligations of the Authority to FGIC shall survive discharge and termination of the Trust Agreement.

(i)    The notice addresses for FGIC and the Fiscal Agent (hereinafter mentioned) are: Financial Guaranty Insurance Company, 125 Park Avenue, New York, New York 10017, Attention: Risk Management; and U.S. Bank Trust National Association, 100 Wall Street, 16th Floor, New York, New York 10005, Attention: Cheryl L. Clarke.

(j)    If, on the third day preceding any interest payment date for the FGIC Insured Bonds, there is not on deposit with the Trustee sufficient moneys available to pay all principal of and interest on the FGIC Insured Bonds due on such date, the Trustee shall immediately notify FGIC and U.S. Bank Trust National Association, New York, New York or its successor as its Fiscal Agent (the "Fiscal Agent") of the amount of such deficiency to the Trustee. If, by said interest payment date, the Authority has not provided the amount of such deficiency to the Trustee, the Trustee shall simultaneously make available to FGIC and to the Fiscal Agent the registration books for the FGIC Insured Bonds maintained by the Trustee. In addition:

     (i)    The Trustee shall provide FGIC with a list of the Bondholders entitled to receive principal or interest payments from FGIC under the terms of the FGIC Policy and shall make arrangements for FGIC and the Fiscal Agent

(1) to mail checks to Bondholders of the FGIC Insured Bonds entitled to receive full or partial interest payments from FGIC and (2) to pay principal of the FGIC Insured Bonds surrendered to the Fiscal Agent by the Bondholders entitled to receive full or partial principal payments from FGIC; and

(ii)     The Trustee shall, at the time it makes the registration books available to FGIC pursuant to (i) above, notify Bondholders of the FGIC Insured Bonds entitled to receive the payment of principal of or interest on the FGIC Insured Bonds from FGIC (1) as to the fact of such entitlement, (2) that FGIC will remit to them all or part of the interest payments coming due subject to the terms of the FGIC Policy, (3) that, except as provided in paragraph (k) below, in the event that any Bondholder of the FGIC Insured Bonds is entitled to receive full payment of principal from FGIC, such Bondholder must tender his FGIC Insured Bonds with the instrument of transfer in the form provided on such FGIC Insured Bonds executed in the name of FGIC, and (4) that, except as provided in paragraph (k) below, in the event that such Bondholder is entitled to receive partial payment of principal from FGIC, such Bondholder must tender his FGIC Insured Bonds for payment first to the Trustee, which shall note on such FGIC Insured Bonds the portion of principal paid by the Trustee, and then, with an acceptable form of assignment executed in the name of FGIC, to the Fiscal Agent, which will then pay the unpaid portion of principal to such Bondholder subject to the terms of the FGIC Policy.

(k)     In the event that the Trustee has notice that payment of principal of or interest on a FGIC Insured Bond has been recovered from a Bondholder pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with the final, nonappealable order of a court having competent jurisdiction, the Trustee shall, at the time it provides notice to FGIC, notify all Bondholders of FGIC Insured Bonds that in the event that any such Bondholder's payment is so recovered, such Bondholder will be entitled to payment from FGIC to the extent of such recovery, and the Trustee shall furnish to FGIC its records evidencing the payments of principal of and interest on the FGIC Insured Bonds which have been made by the Trustee and subsequently recovered from such Bondholders, and the dates on which such payments were made.

(l)     FGIC shall, to the extent it makes payment of principal of or interest on the FGIC Insured Bonds, become subrogated to the rights of the recipients of such payments in accordance with the terms of the FGIC Policy and, to evidence such subrogation, (i) in the case of subrogation as to claims for past due interest, the Trustee shall note FGIC's rights as subrogee on the registration books maintained by the Trustee upon receipt from FGIC of proof of the payment of interest thereon to the Bondholders of FGIC Insured Bonds and (ii) in the case of subrogation as to claims for past due principal, the Trustee shall note FGIC's rights as subrogee on the registration books for the FGIC Insured Bonds maintained by the Trustee upon receipt of proof of the payment of principal thereof to the Bondholders of such Bonds. Notwithstanding anything in this Resolution or the FGIC Insured Bonds to the contrary, the Trustee shall make

51

payment of such past due interest and past due principal directly to FGIC to the extent that FGIC is a subrogee with respect thereto.

Section 25.    The execution and delivery of a supplemental agreement amending the Trust Agreement is hereby authorized by and between the Authority and the Trustee, and said supplemental agreement (the "Supplemental Agreement") shall be substantially in the form presented at this meeting and attached hereto, filed with the Secretary and marked Exhibit No. 6 to this Resolution and shall be executed in the manner therein set forth.

Section 26.    The officers and agents of the Authority and the officers and agents of the Trustee are hereby authorized and directed to do all acts and things required of them by the provisions of said bonds, the Trust Agreement, the Escrow Deposit Agreement, the CD Agreement, the Investments RFP, the Investment Agreement and said Contract of Purchase and to do all acts and things, including the execution and delivery of such other documents, for the full, punctual and complete performance of all the terms, covenants, provisions and agreements under the bonds, the Trust Agreement, the Escrow Deposit Agreement, the CD Agreement, the Investments RFP, the Investment Agreement and said Contract of Purchase and also to do all acts and things required of them by the provisions of this Resolution.

Section 27.    The provisions of this Resolution shall become effective immediately upon its adoption.

Adopted: June 2, 2005

52

## SCHEDULE A-1

### BOND ACCRETED VALUE TABLE
### PR Infrastructure Finance Authority
### New Money Series A

| Date | Series 2005 A CABs 07/01/2029 4.56% | Series 2005 A CABs 07/01/2030 4.6% | Series 2005 A CABs 07/01/2031 4.62% | Series 2005 A CABs 07/01/2032 4.64% | Series 2005 A CABs 07/01/2033 4.66% | Series 2005 A CABs 07/01/2034 4.66% | Series 2005 A CABs 07/01/2035 4.67% | Series 2005 A CABs 07/01/2036 4.67% | Series 2005 A CABs 07/01/2037 4.67% | Series 2005 A CABs 07/01/2042 4.77% |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/16/2005 | 1,691.20 | 1,600.90 | 1,521.95 | 1,446.30 | 1,373.90 | 1,312.05 | 1,249.30 | 1,192.95 | 1,139.15 | 872.20 |
| 07/01/2005 | 1,694.35 | 1,603.90 | 1,524.85 | 1,449.10 | 1,376.55 | 1,314.60 | 1,251.75 | 1,195.25 | 1,141.35 | 873.90 |
| 01/01/2006 | 1,733.00 | 1,640.80 | 1,560.05 | 1,482.70 | 1,408.65 | 1,345.20 | 1,280.95 | 1,223.15 | 1,168.00 | 894.75 |
| 07/01/2006 | 1,772.50 | 1,678.55 | 1,596.10 | 1,517.10 | 1,441.45 | 1,376.55 | 1,310.85 | 1,251.75 | 1,195.25 | 916.10 |
| 01/01/2007 | 1,812.95 | 1,717.15 | 1,632.95 | 1,552.30 | 1,475.05 | 1,408.65 | 1,341.50 | 1,280.95 | 1,223.15 | 937.95 |
| 07/01/2007 | 1,854.25 | 1,756.65 | 1,670.70 | 1,588.30 | 1,509.40 | 1,441.45 | 1,372.80 | 1,310.85 | 1,251.75 | 960.30 |
| 01/01/2008 | 1,896.55 | 1,797.05 | 1,709.30 | 1,625.15 | 1,544.60 | 1,475.05 | 1,404.85 | 1,341.50 | 1,280.95 | 983.20 |
| 07/01/2008 | 1,939.80 | 1,838.40 | 1,748.75 | 1,662.85 | 1,580.55 | 1,509.40 | 1,437.65 | 1,372.80 | 1,310.85 | 1,006.65 |
| 01/01/2009 | 1,984.00 | 1,880.65 | 1,789.15 | 1,701.45 | 1,617.40 | 1,544.60 | 1,471.25 | 1,404.85 | 1,341.50 | 1,030.70 |
| 07/01/2009 | 2,029.25 | 1,923.90 | 1,830.50 | 1,740.90 | 1,655.10 | 1,580.55 | 1,505.60 | 1,437.65 | 1,372.80 | 1,055.25 |
| 01/01/2010 | 2,075.50 | 1,968.15 | 1,872.80 | 1,781.30 | 1,693.65 | 1,617.40 | 1,540.75 | 1,471.25 | 1,404.85 | 1,080.45 |
| 07/01/2010 | 2,122.85 | 2,013.45 | 1,916.05 | 1,822.65 | 1,733.10 | 1,655.10 | 1,576.70 | 1,505.60 | 1,437.65 | 1,106.20 |
| 01/01/2011 | 2,171.25 | 2,059.75 | 1,960.30 | 1,864.90 | 1,773.50 | 1,693.65 | 1,613.55 | 1,540.75 | 1,471.25 | 1,132.60 |
| 07/01/2011 | 2,220.75 | 2,107.15 | 2,005.60 | 1,908.20 | 1,814.80 | 1,733.10 | 1,651.20 | 1,576.70 | 1,505.60 | 1,159.60 |
| 01/01/2012 | 2,271.40 | 2,155.60 | 2,051.90 | 1,952.45 | 1,857.10 | 1,773.50 | 1,689.75 | 1,613.55 | 1,540.75 | 1,187.25 |
| 07/01/2012 | 2,323.15 | 2,205.15 | 2,099.30 | 1,997.75 | 1,900.40 | 1,814.80 | 1,729.20 | 1,651.20 | 1,576.70 | 1,215.55 |
| 01/01/2013 | 2,376.15 | 2,255.50 | 2,147.80 | 2,044.10 | 1,944.65 | 1,857.10 | 1,769.60 | 1,689.75 | 1,613.55 | 1,244.55 |
| 07/01/2013 | 2,430.30 | 2,307.80 | 2,197.40 | 2,091.55 | 1,989.95 | 1,900.40 | 1,810.90 | 1,729.20 | 1,651.20 | 1,274.25 |
| 01/01/2014 | 2,485.75 | 2,360.85 | 2,248.20 | 2,140.05 | 2,036.35 | 1,944.65 | 1,853.20 | 1,769.60 | 1,689.75 | 1,304.65 |
| 07/01/2014 | 2,542.40 | 2,415.15 | 2,300.10 | 2,189.70 | 2,083.80 | 1,989.95 | 1,896.50 | 1,810.90 | 1,729.20 | 1,335.75 |
| 01/01/2015 | 2,600.35 | 2,470.70 | 2,353.25 | 2,240.50 | 2,132.35 | 2,036.35 | 1,940.75 | 1,853.20 | 1,769.60 | 1,367.60 |
| 07/01/2015 | 2,659.65 | 2,527.55 | 2,407.60 | 2,292.50 | 2,182.00 | 2,083.80 | 1,986.10 | 1,896.50 | 1,810.90 | 1,400.25 |
| 01/01/2016 | 2,720.30 | 2,585.65 | 2,463.25 | 2,345.65 | 2,232.85 | 2,132.35 | 2,032.45 | 1,940.75 | 1,853.20 | 1,433.65 |
| 07/01/2016 | 2,782.30 | 2,645.15 | 2,520.15 | 2,400.10 | 2,284.90 | 2,182.00 | 2,079.90 | 1,986.10 | 1,896.50 | 1,467.80 |
| 01/01/2017 | 2,845.75 | 2,706.00 | 2,578.35 | 2,455.80 | 2,338.10 | 2,232.85 | 2,128.50 | 2,032.45 | 1,940.75 | 1,502.85 |
| 07/01/2017 | 2,910.65 | 2,768.20 | 2,637.90 | 2,512.75 | 2,392.60 | 2,284.90 | 2,178.20 | 2,079.90 | 1,986.10 | 1,538.65 |
| 01/01/2018 | 2,977.00 | 2,831.90 | 2,698.85 | 2,571.05 | 2,448.35 | 2,338.10 | 2,229.05 | 2,128.50 | 2,032.45 | 1,575.35 |
| 07/01/2018 | 3,044.90 | 2,897.00 | 2,761.20 | 2,630.70 | 2,505.40 | 2,392.60 | 2,281.10 | 2,178.20 | 2,079.90 | 1,612.95 |
| 01/01/2019 | 3,114.30 | 2,963.65 | 2,824.95 | 2,691.75 | 2,563.75 | 2,448.35 | 2,334.35 | 2,229.05 | 2,128.50 | 1,651.40 |
| 07/01/2019 | 3,185.30 | 3,031.80 | 2,890.25 | 2,754.20 | 2,623.50 | 2,505.40 | 2,388.85 | 2,281.10 | 2,178.20 | 1,690.80 |
| 01/01/2020 | 3,257.95 | 3,101.55 | 2,957.00 | 2,818.10 | 2,684.65 | 2,563.75 | 2,444.65 | 2,334.35 | 2,229.05 | 1,731.15 |
| 07/01/2020 | 3,332.20 | 3,172.90 | 3,025.30 | 2,883.45 | 2,747.20 | 2,623.75 | 2,501.75 | 2,388.85 | 2,281.10 | 1,772.40 |
| 01/01/2021 | 3,408.20 | 3,245.85 | 3,095.20 | 2,950.35 | 2,811.20 | 2,684.65 | 2,560.15 | 2,444.65 | 2,334.35 | 1,814.70 |
| 07/01/2021 | 3,485.90 | 3,320.50 | 3,166.70 | 3,018.80 | 2,876.70 | 2,747.20 | 2,619.90 | 2,501.75 | 2,388.85 | 1,857.95 |
| 01/01/2022 | 3,565.40 | 3,396.90 | 3,239.85 | 3,088.85 | 2,943.75 | 2,811.20 | 2,681.10 | 2,560.15 | 2,444.65 | 1,902.30 |
| 07/01/2022 | 3,646.65 | 3,475.00 | 3,314.70 | 3,160.50 | 3,012.30 | 2,876.70 | 2,743.70 | 2,619.90 | 2,501.75 | 1,947.65 |
| 01/01/2023 | 3,729.80 | 3,554.95 | 3,391.25 | 3,233.85 | 3,082.50 | 2,943.75 | 2,807.75 | 2,681.20 | 2,560.15 | 1,994.10 |
| 07/01/2023 | 3,814.85 | 3,636.70 | 3,469.60 | 3,308.85 | 3,154.35 | 3,012.30 | 2,873.35 | 2,743.70 | 2,619.90 | 2,041.65 |
| 01/01/2024 | 3,901.85 | 3,720.35 | 3,549.75 | 3,385.60 | 3,227.85 | 3,082.50 | 2,940.40 | 2,807.75 | 2,681.70 | 2,090.35 |
| 07/01/2024 | 3,990.80 | 3,805.90 | 3,631.75 | 3,464.15 | 3,303.05 | 3,154.35 | 3,009.10 | 2,873.35 | 2,743.70 | 2,140.20 |

SA-1-1

BOND ACCRETED VALUE TABLE
PR Infrastructure Finance Authority
New Money Series A

| Date | Series 2005 A CABs 07/01/2029 4.56% | Series 2005 A CABs 07/01/2030 4.6% | Series 2005 A CABs 07/01/2031 4.62% | Series 2005 A CABs 07/01/2032 4.64% | Series 2005 A CABs 07/01/2033 4.66% | Series 2005 A CABs 07/01/2034 4.66% | Series 2005 A CABs 07/01/2035 4.67% | Series 2005 A CABs 07/01/2036 4.67% | Series 2005 A CABs 07/01/2037 4.67% | Series 2005 A CABs 07/01/2042 4.77% |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/01/2025 | 4,081.80 | 3,893.45 | 3,715.65 | 3,544.55 | 3,380.00 | 3,227.85 | 3,079.35 | 2,940.40 | 2,807.75 | 2,191.25 |
| 07/01/2025 | 4,174.85 | 3,983.00 | 3,801.45 | 3,626.75 | 3,458.75 | 3,303.05 | 3,151.25 | 3,009.10 | 2,873.35 | 2,243.50 |
| 01/01/2026 | 4,270.05 | 4,074.60 | 3,889.25 | 3,710.90 | 3,539.35 | 3,380.00 | 3,224.85 | 3,079.35 | 2,940.40 | 2,297.05 |
| 07/01/2026 | 4,367.40 | 4,168.35 | 3,979.10 | 3,797.00 | 3,621.80 | 3,458.75 | 3,300.15 | 3,151.25 | 3,009.10 | 2,351.80 |
| 01/01/2027 | 4,467.00 | 4,264.20 | 4,071.05 | 3,885.10 | 3,706.20 | 3,539.35 | 3,377.20 | 3,224.85 | 3,079.35 | 2,407.90 |
| 07/01/2027 | 4,568.85 | 4,362.30 | 4,165.05 | 3,975.25 | 3,792.55 | 3,621.80 | 3,456.05 | 3,300.15 | 3,151.25 | 2,465.35 |
| 01/01/2028 | 4,673.00 | 4,462.60 | 4,261.30 | 4,067.45 | 3,880.90 | 3,706.20 | 3,536.75 | 3,377.20 | 3,224.85 | 2,524.15 |
| 07/01/2028 | 4,779.55 | 4,565.25 | 4,359.70 | 4,161.80 | 3,971.35 | 3,792.55 | 3,619.35 | 3,456.05 | 3,300.15 | 2,584.35 |
| 01/01/2029 | 4,888.50 | 4,670.25 | 4,460.45 | 4,258.35 | 4,063.90 | 3,880.90 | 3,703.85 | 3,536.75 | 3,377.20 | 2,645.95 |
| 07/01/2029 | 5,000.00 | 4,777.65 | 4,563.45 | 4,357.15 | 4,158.55 | 3,971.35 | 3,790.35 | 3,619.35 | 3,456.05 | 2,709.10 |
| 01/01/2030 | | 4,887.55 | 4,668.90 | 4,458.25 | 4,255.45 | 4,063.90 | 3,878.85 | 3,703.85 | 3,536.75 | 2,773.70 |
| 07/01/2030 | | 5,000.00 | 4,776.75 | 4,561.70 | 4,354.60 | 4,158.55 | 3,969.40 | 3,790.35 | 3,619.35 | 2,839.85 |
| 01/01/2031 | | | 4,887.10 | 4,667.50 | 4,456.10 | 4,255.45 | 4,062.10 | 3,878.85 | 3,703.85 | 2,907.55 |
| 07/01/2031 | | | 5,000.00 | 4,775.80 | 4,559.90 | 4,354.60 | 4,156.95 | 3,969.40 | 3,790.35 | 2,976.90 |
| 01/01/2032 | | | | 4,886.60 | 4,666.15 | 4,456.10 | 4,254.00 | 4,062.10 | 3,878.85 | 3,047.90 |
| 07/01/2032 | | | | 5,000.00 | 4,774.85 | 4,559.90 | 4,353.35 | 4,156.95 | 3,969.40 | 3,120.60 |
| 01/01/2033 | | | | | 4,886.15 | 4,666.15 | 4,455.00 | 4,254.00 | 4,062.10 | 3,195.05 |
| 07/01/2033 | | | | | 5,000.00 | 4,774.85 | 4,559.00 | 4,353.35 | 4,156.95 | 3,271.25 |
| 01/01/2034 | | | | | | 4,886.15 | 4,665.45 | 4,455.00 | 4,254.00 | 3,349.25 |
| 07/01/2034 | | | | | | 5,000.00 | 4,774.40 | 4,559.00 | 4,353.35 | 3,429.15 |
| 01/01/2035 | | | | | | | 4,885.90 | 4,665.45 | 4,455.00 | 3,510.95 |
| 07/01/2035 | | | | | | | 5,000.00 | 4,774.40 | 4,559.00 | 3,594.65 |
| 01/01/2036 | | | | | | | | 4,885.90 | 4,665.45 | 3,680.40 |
| 07/01/2036 | | | | | | | | 5,000.00 | 4,774.40 | 3,768.20 |
| 01/01/2037 | | | | | | | | | 4,885.90 | 3,858.05 |
| 07/01/2037 | | | | | | | | | 5,000.00 | 3,950.05 |
| 01/01/2038 | | | | | | | | | | 4,044.25 |
| 07/01/2038 | | | | | | | | | | 4,140.75 |
| 01/01/2039 | | | | | | | | | | 4,239.50 |
| 07/01/2039 | | | | | | | | | | 4,340.60 |
| 01/01/2040 | | | | | | | | | | 4,444.10 |
| 07/01/2040 | | | | | | | | | | 4,550.10 |
| 01/01/2041 | | | | | | | | | | 4,658.65 |
| 07/01/2041 | | | | | | | | | | 4,769.75 |
| 01/01/2042 | | | | | | | | | | 4,883.50 |
| 07/01/2042 | | | | | | | | | | 5,000.00 |
| 01/01/2043 | | | | | | | | | | |
| 07/01/2043 | | | | | | | | | | |
| 01/01/2044 | | | | | | | | | | |
| 07/01/2044 | | | | | | | | | | |
| 01/01/2045 | | | | | | | | | | |
| 07/01/2045 | | | | | | | | | | |

SA-1-2

**BOND ACCRETED VALUE TABLE**

**PR Infrastructure Finance Authority**

**New Money Series A**

| Date | Series 2005 A CABs 07/01/2043 4.77% | Series 2005 A CABs 07/01/2044 4.77% | Series 2005 A CABs 07/01/2045 4.77% |
|---|---|---|---|
| 06/16/2005 | 832.05 | 793.70 | 757.15 |
| 07/01/2005 | 833.65 | 795.30 | 758.65 |
| 01/01/2006 | 853.55 | 814.25 | 776.75 |
| 07/01/2006 | 873.90 | 833.65 | 795.30 |
| 01/01/2007 | 894.75 | 853.55 | 814.25 |
| 07/01/2007 | 916.10 | 873.90 | 833.65 |
| 01/01/2008 | 937.95 | 894.75 | 853.55 |
| 07/01/2008 | 960.30 | 916.10 | 873.90 |
| 01/01/2009 | 983.20 | 937.95 | 894.75 |
| 07/01/2009 | 1,006.65 | 960.30 | 916.10 |
| 01/01/2010 | 1,030.70 | 983.20 | 937.95 |
| 07/01/2010 | 1,055.25 | 1,006.65 | 960.30 |
| 01/01/2011 | 1,080.45 | 1,030.70 | 983.20 |
| 07/01/2011 | 1,106.20 | 1,055.25 | 1,006.65 |
| 01/01/2012 | 1,132.60 | 1,080.45 | 1,030.70 |
| 07/01/2012 | 1,159.60 | 1,106.20 | 1,055.25 |
| 01/01/2013 | 1,187.25 | 1,132.60 | 1,080.45 |
| 07/01/2013 | 1,215.55 | 1,159.60 | 1,106.20 |
| 01/01/2014 | 1,244.55 | 1,187.25 | 1,132.60 |
| 07/01/2014 | 1,274.25 | 1,215.55 | 1,159.60 |
| 01/01/2015 | 1,304.65 | 1,244.55 | 1,187.25 |
| 07/01/2015 | 1,335.75 | 1,274.25 | 1,215.55 |
| 01/01/2016 | 1,367.60 | 1,304.65 | 1,244.55 |
| 07/01/2016 | 1,400.25 | 1,335.75 | 1,274.25 |
| 01/01/2017 | 1,433.65 | 1,367.60 | 1,304.65 |
| 07/01/2017 | 1,467.80 | 1,400.25 | 1,335.75 |
| 01/01/2018 | 1,502.85 | 1,433.65 | 1,367.60 |
| 07/01/2018 | 1,538.65 | 1,467.80 | 1,400.25 |
| 01/01/2019 | 1,575.35 | 1,502.85 | 1,433.65 |
| 07/01/2019 | 1,612.95 | 1,538.65 | 1,467.80 |
| 01/01/2020 | 1,651.40 | 1,575.35 | 1,502.85 |
| 07/01/2020 | 1,690.80 | 1,612.95 | 1,538.65 |
| 01/01/2021 | 1,731.15 | 1,651.40 | 1,575.35 |
| 07/01/2021 | 1,772.40 | 1,690.80 | 1,612.95 |
| 01/01/2022 | 1,814.70 | 1,731.15 | 1,651.40 |
| 07/01/2022 | 1,857.95 | 1,772.40 | 1,690.80 |
| 01/01/2023 | 1,902.30 | 1,814.70 | 1,731.15 |
| 07/01/2023 | 1,947.65 | 1,857.95 | 1,772.40 |
| 01/01/2024 | 1,994.10 | 1,902.30 | 1,814.70 |
| 07/01/2024 | 2,041.65 | 1,947.65 | 1,857.95 |
| 01/01/2025 | 2,090.35 | 1,994.10 | 1,902.30 |
| 07/01/2025 | 2,140.20 | 2,041.65 | 1,947.65 |
| 01/01/2026 | 2,191.25 | 2,090.35 | 1,994.10 |

SA-1-3

BOND ACCRETED VALUE TABLE

PR Infrastructure Finance Authority

New Money Series A

| Date | Series 2005 A CABs 07/01/2043 4.77% | Series 2005 A CABs 07/01/2044 4.77% | Series 2005 A CABs 07/01/2045 4.77% |
|---|---|---|---|
| 07/01/2026 | 2,243.50 | 2,140.20 | 2,041.65 |
| 01/01/2027 | 2,297.05 | 2,191.25 | 2,090.35 |
| 07/01/2027 | 2,351.80 | 2,243.50 | 2,140.20 |
| 01/01/2028 | 2,407.90 | 2,297.05 | 2,191.25 |
| 07/01/2028 | 2,465.35 | 2,351.80 | 2,243.50 |
| 01/01/2029 | 2,524.15 | 2,407.90 | 2,297.05 |
| 07/01/2029 | 2,584.35 | 2,465.35 | 2,351.80 |
| 01/01/2030 | 2,645.95 | 2,524.15 | 2,407.90 |
| 07/01/2030 | 2,709.10 | 2,584.35 | 2,465.35 |
| 01/01/2031 | 2,773.70 | 2,645.95 | 2,524.15 |
| 07/01/2031 | 2,839.85 | 2,709.10 | 2,584.35 |
| 01/01/2032 | 2,907.55 | 2,773.70 | 2,645.95 |
| 07/01/2032 | 2,976.90 | 2,839.85 | 2,709.10 |
| 01/01/2033 | 3,047.90 | 2,907.55 | 2,773.70 |
| 07/01/2033 | 3,120.60 | 2,976.90 | 2,839.85 |
| 01/01/2034 | 3,195.05 | 3,047.90 | 2,907.55 |
| 07/01/2034 | 3,271.25 | 3,120.60 | 2,976.90 |
| 01/01/2035 | 3,349.25 | 3,195.05 | 3,047.90 |
| 07/01/2035 | 3,429.15 | 3,271.25 | 3,120.60 |
| 01/01/2036 | 3,510.95 | 3,349.25 | 3,195.05 |
| 07/01/2036 | 3,594.65 | 3,429.15 | 3,271.25 |
| 01/01/2037 | 3,680.40 | 3,510.95 | 3,349.25 |
| 07/01/2037 | 3,768.20 | 3,594.65 | 3,429.15 |
| 01/01/2038 | 3,858.05 | 3,680.40 | 3,510.95 |
| 07/01/2038 | 3,950.05 | 3,768.20 | 3,594.65 |
| 01/01/2039 | 4,044.25 | 3,858.05 | 3,680.40 |
| 07/01/2039 | 4,140.75 | 3,950.05 | 3,768.20 |
| 01/01/2040 | 4,239.50 | 4,044.25 | 3,858.05 |
| 07/01/2040 | 4,340.60 | 4,140.75 | 3,950.05 |
| 01/01/2041 | 4,444.10 | 4,239.50 | 4,044.25 |
| 07/01/2041 | 4,550.10 | 4,340.60 | 4,140.75 |
| 01/01/2042 | 4,658.65 | 4,444.10 | 4,239.50 |
| 07/01/2042 | 4,769.75 | 4,550.10 | 4,340.60 |
| 01/01/2043 | 4,883.50 | 4,658.65 | 4,444.10 |
| 07/01/2043 | 5,000.00 | 4,769.75 | 4,550.10 |
| 01/01/2044 | - | 4,883.50 | 4,658.65 |
| 07/01/2044 | - | 5,000.00 | 4,769.75 |
| 01/01/2045 | - | - | 4,883.50 |
| 07/01/2045 | - | - | 5,000.00 |

SA-1-4

**SCHEDULE A-2**

BONDS ACCRETED VALUE TABLE

PR Infrastructure Finance Authority
Series C – Fixed Rate Uninsured Refunding

| Date | Series 2005 C CABs 07/01/2028 4.53% |
|---|---|
| 06/16/2005 | 1,781.20 |
| 07/01/2005 | 1,784.50 |
| 01/01/2006 | 1,824.95 |
| 07/01/2006 | 1,866.25 |
| 01/01/2007 | 1,908.55 |
| 07/01/2007 | 1,951.75 |
| 01/01/2008 | 1,996.00 |
| 07/01/2008 | 2,041.20 |
| 01/01/2009 | 2,087.45 |
| 07/01/2009 | 2,134.70 |
| 01/01/2010 | 2,183.05 |
| 07/01/2010 | 2,232.50 |
| 01/01/2011 | 2,283.05 |
| 07/01/2011 | 2,334.80 |
| 01/01/2012 | 2,387.65 |
| 07/01/2012 | 2,441.75 |
| 01/01/2013 | 2,497.05 |
| 07/01/2013 | 2,553.60 |
| 01/01/2014 | 2,611.45 |
| 07/01/2014 | 2,670.60 |
| 01/01/2015 | 2,731.10 |
| 07/01/2015 | 2,792.95 |
| 01/01/2016 | 2,856.20 |
| 07/01/2016 | 2,920.90 |
| 01/01/2017 | 2,987.05 |
| 07/01/2017 | 3,054.70 |
| 01/01/2018 | 3,123.90 |
| 07/01/2018 | 3,194.65 |
| 01/01/2019 | 3,267.05 |
| 07/01/2019 | 3,341.05 |
| 01/01/2020 | 3,416.70 |
| 07/01/2020 | 3,494.10 |
| 01/01/2021 | 3,573.25 |
| 07/01/2021 | 3,654.15 |
| 01/01/2022 | 3,736.95 |
| 07/01/2022 | 3,821.60 |
| 01/01/2023 | 3,908.15 |
| 07/01/2023 | 3,996.65 |
| 01/01/2024 | 4,087.20 |
| 07/01/2024 | 4,179.75 |
| 01/01/2025 | 4,274.45 |
| 07/01/2025 | 4,371.25 |
| 01/01/2026 | 4,470.25 |
| 07/01/2026 | 4,571.50 |
| 01/01/2027 | 4,675.05 |
| 07/01/2027 | 4,780.95 |
| 01/01/2028 | 4,889.25 |
| 07/01/2028 | 5,000.00 |

# Exhibit No.  1

# Contract of Purchase

# Exhibit No.  2

# Preliminary Official Statement

# Exhibit No.  3

# Escrow Deposit Agreement

# Exhibit No.  4

# Continuing Disclosure  Agreement

# Exhibit No.  5

## Insurance Commitments

# Exhibit No. 6

## Supplemental Agreement