## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),

          Debtor[1].                        /

PROMESA
Title III

No. 17-04780 (LTS)

---

**ELEVENTH INTERIM FEE APPLICATION OF FILSINGER ENERGY PARTNERS FOR ALLOWANCE OF AN ADMINISTRATIVE CLAIM FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED AS CONSULTANTS TO PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA") FOR THE PERIOD FROM FEBRUARY 1, 2021 – MAY 31, 2021**

| | |
|---|---|
| Name of Applicant | Filsinger Energy Partners, Inc. |
| Authorized to Provide Professional Services to: | Puerto Rico Electric Power Authority |
| Period for which compensation and reimbursement is sought: | February 1, 2021 – May 31, 2021 |
| Amount of Compensation sought as actual, reasonable and necessary: | $11,019.00[2] |
| Amount of Expense Reimbursement sought as actual, reasonable, and necessary: | $8,901.50 |

---

[1] The last four (4) digits of PREPA's federal tax identification number are 3747.

[2] Of this amount, $11,019.00 is for fees incurred for work performed by Filsinger Energy Partners professionals outside of Puerto Rico and $0 is for fees incurred for work performed by Filsinger Energy Partners professionals in Puerto Rico. Per the terms of the contract, FEP reserves the right to no longer give PREPA a 10% discount on fees if PREPA fails to pay the previous fee statements and applications within the fourteen (14) day window after the conclusion of the objection period for the notice parties.

This is a ___ monthly _X_ interim __ final application.[3]

This is Filsinger Energy Partners' Eleventh Interim Fee Application in this case.

### Summary of Fees by Month for this Interim Fee Application Period (3)

| Type | Compensation Period | Fees Requested | Expenses Requested | Fees Approved | Expenses Approved | Amount Outstanding |
|---|---|---|---|---|---|---|
| 1st Interim (4) | 12/7/17 – 1/31/18 | $2,326,893.30 | $201,691.48 | $2,288,199.30 | $118,225.85 | $0 |
| 2nd Interim (5) | 2/1/18 – 5/31/18 | $5,072,116.80 | $333,333.15 | $5,071,015.20 | $333,333.15 | $0 |
| 3rd Interim (5) | 6/1/18 – 9/30/18 | $4,658,183.60 | $343,922.99 | $4,658,183.60 | $343,922.99 | $0 |

3 Notice of this Interim Fee Application shall be served in accordance with the 2nd Amended Interim Compensation Order and objections to the relief requested in this Interim Fee Application shall be addressed in accordance with the Amended Interim Compensation Order.

4 FEP submitted the First Interim Fee Application on March 18, 2018 and has reached an agreement with the Fee Examiner regarding reductions in fees and expenses. These amounts are shown in the Fees and Expenses Approved columns and were approved by the Fee Examiner on May 30, 2018. The amount paid by PREPA for the First Interim period includes approved write-offs totaling $17,321 and were taken after the final report by the Fee Examiner.

5 FEP filed the Second, Third and Fourth Interim Fee applications, docket #3526 on July 16, 2018, docket #4240 on November 16, 2018, and docket #5799 on March 18, 2019, respectively. The second interim period was approved by the Fee Examiner on December 19, 2018 (docket # 4508) and the Third and Fourth Interim Fee applications were approved by the Fee Examiner on June 12, 2019 (Ordered on June 26, 2019) (docket # 7670). PREPA deducted fees and expenses both before and after the Compensation order was approved by the Court. These deductions totaled $90,424.52 for the 2nd, 3rd, and 4th interim periods, of which $10,833.92 was detailed in the interim.

6 The Fifth Interim Fee application was approved by the Court on October 29, 2019 docket #9046. Upon payment of this interim application PREPA deducted an additional $60,079.65.

7. The Sixth Interim Fee Application was approved on March 6, 2020, docket # 12157-1. PREPA has reduced the expense reimbursement for the month of 6/2019 by $4,088.30; 7/19 by $1,305.89; 8/19 by $147.40; 9/19 by $5,541.48. FEP included fees related to fee app. activities in July, Aug. and Sept. FEP will waive these fees for a total of $20,522.16. PREPA made payment on 6/30/2019 including an additional deduction of $2,424.24.

8. The Seventh Interim Fee application was approved on July 24, 2020, docket # 13824. PREPA has deducted an additional $275.40 from the seventh interim fee statement. In the month of October, FEP filed the fee statement which included $7,363 for fee statement activities, in accordance with our contract. PREPA did not pay these fees and FEP agreed to the reduction. In the month of November 2019, FEP filed the monthly fee statement with fees at non-discounted rates due to slow payment in previous months. At the time PREPA did not provide FEP with payment details and we calculated PREPA had taken their normal fee discount. In 2021, FEP learned that PREPA paid the full amount billed and withheld taxes. Since the discounted rates were included in the 7th Interim fee statement, we are including the remainder of the fees to be approved in the 10th interim application. FEP is not seeking additional payment for this interim period.

9. The Eighth Interim Fee application was approved on October 21, 2020, docket # 14756 and paid by PREPA. The Ninth Interim fee application was approved on March 8, 2021, docket 2391-1. PREPA has just been billed for the 10% holdback the time this interim application was filed.

10. FEP has filed monthly fee statements for the referenced months and has received payment of 90% of fees with some additional outstanding amounts under investigation.

| Type Cont'd | Compensation Period | Fees Requested | Expenses Requested | Fees Approved | Expenses Approved | Amount Outstanding |
|---|---|---|---|---|---|---|
| 4th Interim (5) | 10/1/18 – 1/31/19 | $4,614,400.90 | $297,381.32 | $4,614,400.90 | $297,381.32 | $0 |
| 5th Interim (6) | 2/1/19 - 5/31/19 | $3,773,793.20 | $302,943.47 | $3,773,793.20 | $302,943.47 | $0 |
| 6th Interim (7) | 6/1 - 6/30/2019 and 7/16 - 9/30/2019 | $2,495,469.81 | $129,941.45 | $2,495,469.81 | $129,941.45 | $0 |
| 7th Interim (8) | 10/1/2019 – 1/31/2020 | $1,244,886.86 | $50,645.53 | $1,244,886.86 | $50,645.53 | $0 |
| 8th Interim (9) | 2/01/2020 – 5/31/2020 | $811,835.92 | $2,862.99 | $811,835.92 | $2,862.99 | $0 |
| 9th Interim (9) | 6/1/2020 – 6/30-2020 and 8/17/2020 – 9/30/2020 | $441,730.40 | $0 | $441,730.40 | $0 | $68,871.55 |
| Monthly (8) | 11/1/2019 – 11/30/2019 | $47,732.78 | $0 | $0 | $0 | $0 |
| Monthly (10) | 10/1/2020 – 10/31/2020 | $336,882.80 | $0 | $0 | $0 | $70,490.63 |
| Monthly (10) | 11/1/2020 – 11/14/2020 | $48,055.70 | $0 | $0 | $0 | $7,490.72 |
| Monthly (10) | 3/1/2021 – 3/31/2021 | $11,019.00 | $8,901.50 | $0 | $0 | $19,920.50 |
| | **TOTAL** | **$25,883,001.07** | **$1,671,623.88** | **$25,399,515.19** | **$1,579,256.75** | **$166,773.40** |

Dated: San Juan, Puerto Rico
     July 15, 2021

By: _____

Todd Filsinger
Senior Managing Director
Filsinger Energy Partners
90 Madison Street, Suite 500
Denver, Colorado 80206
Telephone: (303) 974-5884
todd@filsingerenergy.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),

           Debtor[1].

PROMESA
Title III

No. 17-04780 (LTS)

_____/

**ELEVENTH INTERIM FEE APPLICATION OF FILSINGER ENERGY PARTNERS
FOR ALLOWANCE OF AN ADMINISTRATIVE CLAIM FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED AS CONSULTANTS TO PUERTO
RICO ELECTRIC POWER AUTHORITY ("PREPA") FOR THE PERIOD FROM
FEBRUARY 1, 2021 – MAY 31, 2021**

The Eleventh Interim Fee Application ("**Application**") for Compensation and

Reimbursement of Expenses includes the period February 1, 2021 – May 31, 2021 ("**the Interim**

**Fee Period**") of Filsinger Energy Partners, Inc. ("**FEP**" or "**Applicant**"), Chief Financial Advisor

to the Puerto Rico Electric Power Authority ("**PREPA**"), by and through the Financial Oversight

and Management Board for Puerto Rico (the "**Oversight Board**"), as PREPA's representative

pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act

("**PROMESA**"), collectively the "Debtor", respectfully represents as follows:

---

[1] The last four (4) digits of PREPA's federal tax identification number are 3747.

**Introduction**

1.      By this application, FEP seeks allowance of compensation for professional services rendered as Consultants to the Debtor for the Interim Fee Period in the amount of $11,019.00 and actual and necessary out-of-pocket expenses of $8,901.50. In support of this application, Applicant represents as follows:

2.      The United States District Court for the District of Puerto Rico (the "**Court**") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

3.      Venue is proper pursuant to PROMESA section 307(a).

4.      The statutory bases for the relief requested herein are PROMESA section 317 and Bankruptcy Code section 105(a), made applicable in the Title III Case pursuant to PROMESA section 301(a).

**Background**

5.      On June 30, 2016, the Oversight Board was established under PROMESA section 101(b). On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

6.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title is the representative of the debtor" and "may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including filing a petition under section 304 of [PROMESA]…or otherwise generally submitting filings in relation to the case with the court."

7.      On September 30, 2016, the Oversight Board designated PREPA as a "covered territorial instrumentality" under PROMESA section 101(d).

8.      On June 29, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206. On July 2, 2017 (the "Petition Date"), the Oversight Board filed a voluntary petition for relief for PREPA pursuant to section 304(a) of PROMESA, commencing a case under title III thereof (the "Title III Case").

9.      Background information regarding PREPA and the commencement of this Title III Case is contained in the Notice of Statement of Oversight Board Regarding PREPA's Title III Case [ECF No. 2].

**Applicant's Interim Compensation**

10.      For the convenience of this Court and all parties-in-interest, the following exhibits are attached hereto:

i.      **Exhibit A** – Certification of Todd Filsinger;

ii.      **Exhibit B** – Summary of Total Hours and Fees by Task Code for the Interim Fee Period;

iii.      **Exhibit C** – Summary of Hours and Fees by Professional for the Interim Fee Period;

iv.      **Exhibit D** – Summary of Expenses by Category in the Interim Fee Period;

v.      **Exhibit E** – Monthly Fee Statement of Filsinger Energy Partners for Allowance of an Administrative Claim for Compensation and Reimbursement of Expenses Incurred from March 1, 2021 through March 31, 2021;

vi.      **Exhibit F**  – intentionally left blank;

vii.      **Exhibit G** – intentionally left blank;

viii.      **Exhibit H** – detailed timekeeping for fees for the period March 1, 2021 – March 31, 2021;

ix.     **Exhibit I** – PREPA contract dated December 7, 2017 and Filsinger Energy Partners Engagement Letter;

x.      **Exhibit J** – First Amendment to PREPA contract dated February 2, 2018;

xi.     **Exhibit K** – Side Letter to PREPA contract related to expense reimbursement agreement dated February 16, 2018;

xii.    **Exhibit L** – Second Amendment to PREPA contract dated June 18, 2018;

xiii.   **Exhibit M** – Third amendment to PREPA contract dated July 31, 2018;

xiv.    **Exhibit N** – Fourth amendment to PREPA contract dated August 15, 2018;

xv.     **Exhibit O** – Fifth amendment to PREPA contract dated March 15, 2019;

xvi.    **Exhibit P** – PREPA contract dated July 16, 2019; and,

xvii.   **Exhibit Q** – PREPA contract dated August 17, 2020.

11.     Consistent with the professional services agreement by and between Applicant and PREPA, Applicant will not seek payment of travel time which has been excluded from the billable fees included herein.

12.     Consistent with the professional services agreement by and between Applicant and PREPA, and the guidance provided by the Court and the fee examiner, Applicant has elected to institute certain restrictions with respect to out-of-pocket expenses and fees, specifically fee application matters (related to the contract dated December 7, 2017, its subsequent amendments and the contract dated July 16, 2019) and working more than 12 hours days.

13.     The PREPA contract dated July 16, 2019 expired on June 30, 2020.  Around this time FEP and PREPA were in negotiations to execute a new contract.  This contract was executed on August 17, 2020.  However, FEP consultants continued to work on deliverables for PREPA during the period of July 1, 2020 – August 16, 2020.  Due to the lapse in contract the Applicant is

unable to seek payment for those services which total $143,335.20 and the Applicant is not requesting reimbursement in the 9th interim application.   PREPA then deducted fees for an additional two days, August 17 and 18, in the amount of $6,261.40.

14.       The parties to the Original Professional Services Agreement ("PSA") recognized the risk that FEP's rendition of services thereunder subsequently would cause it to incur legal expense in litigation brought by a third party. The Original PSA expressly provides that PREPA would bear the risk of such expense, by providing, inter alia, that "PREPA shall defend, indemnify and hold harmless FEP . . . [and its] officers . . . from and against any and all . . . attorneys' fees, losses, and expenses of whatever . . . arising out of or resulting from the performance of or failure to perform the Work" to be performed by FEP under the Original PSA. Each of FEP and one of its officers, Todd Filsinger, has been served with subpoenas as a result of the Work, both as part of the litigation styled MasTec Renewables Puerto Rico LLC v. Mammoth Energy Services, Inc. and Cobra Acquisitions, LLC, Case No. 20-20263 (S.D. Fla.). FEP has worked closely with counsel for PREPA in responding to these subpoenas. Exhibits C and E set forth expenses incurred by FEP in this effort, all of which are reimbursable to FEP by PREPA under the Original PSA.

15.       There is no agreement or understanding between Applicant and any other person for the sharing of compensation to be received for services rendered in these Title III Cases.

**Summary of Services Provided**

1.   Throughout the Fee Period, FEP provided services as the Chief Financial Advisor pursuant to FEP's Professional Services Engagement Agreement, dated December 7, 2017. On February 2, 2018 FEP and PREPA executed the First Amendment to this Contract.  On February 16, 2018 FEP and PREPA entered into a side letter which established guidelines for expense

reimbursement and on June 18, 2018, FEP and PREPA executed the Second Amendment to the December 7, 2017 contract which extended the budget for this Professional Services Engagement. On July 31, 2018 FEP and PREPA executed the Third Amendment to the Professional Services Agreement which extended the expiration of the Contract to August 15, 2018. On August 15, 2018 FEP and PREPA executed the Fourth Amendment to the Professional Services Agreement which extended the term of the Contract to June 30, 2019 and amended the scope of the agreement.  On July 16, 2019 FEP and PREPA executed a new Professional Services Agreement that expired on June 30, 2020.  On August 17, 2020 FEP and PREPA executed a new professional services agreement with a 90-day term and an amended scope of work.  Among its numerous tasks and responsibilities, FEP professionals performed the following duties described in its Professional Services Engagement Agreement.

- Provide Strategic Advice during the Renewable PPOA's approval process with the Puerto Rico Energy Bureau, the Financial Oversight and Management Board for Puerto Rico and the Title III court;

- Transition of financial reporting and creditors report in the Title Ill process;

- Stakeholder management transition with PREPA executive team;

- Transition of financial reporting and ad hoc request form the PREPA Executive Team limited to Title III work streams, Renewable PPOA's approval process, and business operations;

- Provide to PREPA's Chief Executive Officer (CEO) with general financial and management support on such matters as budgeting, financial management, cash management, and expenses approval; and

- Provide advice and support to CEO on the implementation of the fiscal and operational restructuring reforms and initiatives outlined in the certifies Fiscal Plan and the implementation of the certifies Budget.

The FEP professional's summary time records, including descriptions of the nature of the services provided, are set forth in **Exhibit C and Exhibit H**.

Below, FEP provides a summary of fees for the four primary support areas which include, Restoration, Operations, Transformation, and support of the Title III case.

| | Restoration | Operations | Title III | Transformation (2) | Total (1) |
|---|---|---|---|---|---|
| December 2017 | $491,911.70 | $172,691.80 | $151,743.70 | $0 | **$816,347.20** |
| January 2018 | $596,488.50 | $525,909.90 | $388,147.70 | $0 | **$1,510,546.10** |
| February 2018 | $461,888.90 | $656,035.60 | $268,758.60 | $0 | **$1,386,683.10** |
| March 2018 | $468,359.70 | $531,330.60 | $218,502.70 | $0 | **$1,218,193.00** |
| April 2018 | $485,444.20 | $430,112.10 | $248,892.40 | $0 | **$1,164,448.70** |
| May 2018 | $495,836.70 | $550,260.40 | $256,694.90 | $0 | **$1,302,792.00** |
| June 2018 | $375,847.10 | $652,107.40 | $194,148.20 | $0 | **$1,222,102.70** |
| July 2018 | $314,536.90 | $727,255.80 | $194,148.20 | $0 | **$1,235,940.90** |
| August 2018 | $300,131.60 | $780,361.40 | $131,743.50 | $0 | **$1,212,236.50** |
| September 2018 | $134,993.80 | $661,786.40 | $101,926.80 | $89,196.50 | **$987,903.50** |
| October 2018 | $202,961.60 | $816,608.00 | $129,263.00 | $224,350.80 | **$1,373,183.40** |

| Cont'd | Restoration | Operations | Title III | Transformation (2) | Total (1) |
|---|---|---|---|---|---|
| November 2018 | $104,141.80 | $550,236.50 | $144,010.10 | $257,367.90 | **$1,055,756.30** |
| December 2018 | $94,622.90 | $582,006.40 | $140,852.40 | $151,608.50 | **$969,090.20** |
| January 2019 (3) | $171,370.40 | $658,125.80 | $215,933.00 | $170,941.80 | **$1,216,371.00** |
| February 2019 (3) | $149,737.70 | $704,382.60 | $125,601.60 | $183,956.10 | **$1,163,678.00** |
| March 2019 (3) | $95,872.90 | $548,406.70 | $311,031.20 | $140,647.00 | **$1,095,957.80** |
| April 2019 (3) | $63,551.20 | $523,874.30 | $173,062.20 | $123,508.40 | **$883,996.10** |
| May 2019 (3) | $33,360.90 | $429,566.70 | $56,956.30 | $110,277.40 | **$630,161.30** |
| June 2019 (3) | $59,029.40 | $584,161.50 | $51,948.80 | $91,530.00 | **$786,669.70** |
| July 2019 (3) | $21,865.33 | $271,520.11 | $35,102.89 | $40,290.44 | **$368,778.77** |
| August 2019 (3) | $18,587.00 | $443,166.11 | $68,424.78 | $130,398.44 | **$660,576.33** |
| September 2019 (3) | $17,875.00 | $466,256.22 | $68,764.11 | $126,549.67 | **$679,445.00** |
| October 2019 | $10,595.00 | $452,570.56 | $67,258.89 | $68,433.11 | **$598,857.56** |
| November 2019 | $5,005.01 | $357,753.22 | $34,180.22 | $60,787.33 | **$457,725.78** |
| December 2019 | $0.00 | $49,770.10 | $50,147.20 | $3,854.70 | **$103,772.00** |
| January 2020 | $6,523.10 | $43,974.50 | $40,190.00 | $41,576.70 | **$132,264.30** |
| February 2020 | $4,212.00 | $41,130.88 | $41,433.83 | $93,840.30 | **$180,617.02** |

| Cont'd | Restoration | Operations | Title III | Transformation (2) | Total (1) |
|---|---|---|---|---|---|
| March 2020 | $0 | $101,073.40 | $80,866.50 | $51,462.30 | **$233,402.20** |
| April 2020 | $0 | $103,214.70 | $76,956.50 | $48,261.50 | **$228,432.70** |
| May 2020 | $0 | $67,379.90 | $59,923.50 | $42,080.60 | **$169,384.00** |
| June 2020 | $0 | $26,376.50 | $62,468.50 | $8,246.60 | **$97,091.60** |
| July 2020 | $0 | $0 | $0 | $0 | $0 |
| August 17 – 31, 2020 | $0 | $17,108.80 | $33,432.80 | $15,895.80 | **$66,437.40** |
| September 2020 | $0 | $130,291.10 | $100,572.90 | $47,337.40 | **$278,201.40** |
| October 2020 | $0 | $258,616.30 | $39,661.40 | $38,605.10 | **$336,882.80** |
| November 1 – 14, 2020 | $0 | $44,273.70 | $2,357.20 | $1,424.80 | **$48,055.70** |
| March 2021 | $0 | $11,019.00 | $0 | $0 | **$11,019.00** |
| **Total** | **$5,184,750.34** | **$13,970,715.00** | **$4,365,106.52** | **$2,362,429.19** | **$25,883,001.07** |

(1) Reflect amounts prior to fee reductions agreed upon with the Fee Examiner and PREPA in all Interim Fee Application.

(2) Transformation was added as a fourth primary support category in September to more clearly identify activities related to privatization and other major grid and generation-related initiatives.

(3) A discount of 10% shall be applied to the fees for each invoice included in the Monthly Fee Statement at the time of submission provided that all prior invoices (including all invoices submitted pursuant to the Agreement for Independent Contractor Consulting Services made as of the December 7, 2017) have been timely paid in accordance with the Compensation Order.

The FEP professional's daily time records, including descriptions of the nature of the services provided, are set forth in **Exhibit H**.

A.      **Customary Billing Disclosures**.

FEP's hourly rates are set at a level designed to compensate FEP fairly for the work of its consultants and support staff and to cover fixed and routine expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

The hourly rates and corresponding rate structure utilized by FEP in these Title III cases are equivalent to the hourly rates and corresponding rate structure currently used by FEP for similar complex energy restructuring and litigation assignments, whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that such restructuring, litigation and other complex matters typically involve great complexity, high stakes, and severe time pressures. FEP takes care to ensure the proper tasks are assigned to consultants at the appropriate level.  When possible, junior FEP staff with lower billing rates were used to complete tasks such as reconciliations and meeting coordination.  In fact, FEP utilizes PREPA staff for many of these tasks and does not bill for administrative functions.  However, many functions such as meeting follow-ups, contract review, or data input and review related to our proprietary models require detailed industry knowledge and must be completed by senior consultants.

### Summary of Services by Matter / Project Category

**1.  Long-Range Forecasting**

This matter includes modeling, analysis, due diligence and independent assessment of the Debtors' long-range planning process and derivation of long-term EBITDA and cash flow forecasts.

FEP efforts included independent modeling of the Debtors' power-generating assets and retail operations. FEP utilizes its fundamental and stochastic market models, as well as its research on the Debtors operating conditions and the specific operating characteristics of all power-generating assets within the island, including operating characteristics such as:

- Generating unit heat rate
- Planned outage schedules

- Operational and seasonal de-rates of the generation units
- Emissions characteristics by emission type – NOx, SO2, Mercury, Carbon etc.
- Plant operating costs and capital expenditures
- Customer margin analysis for all segments

The results of FEP's analyses have been used to independently evaluate and assess the Debtors' long-range planning process, cash flow projections and economic dispatch.

### 2. Annual Fiscal Forecast

This matter includes development of the fiscal plan including meeting, analysis and review of the forecasted fiscal budget.

### 3. Financial Reporting

This matter includes general fiscal reporting issues including meetings and reports on current budgeting and fiscal status for different reporting groups (e.g., creditors, FOMB, AAFAF, etc.). Additionally, this reporting matter includes specific reports requested by the creditors for the operation of the company such as status of the grid, generation reports and AP/AR.

### 4. Financial Management

Financial Management matter description includes financial matter such as invoicing, billing, budgeting for contractors or other contracts and analysis and management of accounts involving monetary review.

### 5. Cash Management

This matter includes discussion, analysis, review and documentation around Debtors cash. As the CFA there is a responsibility to understand the working cash at PREPA. Having a knowledge of the current cash position as well as forecasting future accounts receivable and accounts payable is included in this matter.

### 6. Cash Flow Analysis

Cash flow analysis include discussion, analysis, review and documentation around the movement of the Debtors cash. Part of this includes the requested 13-week cash flow, meeting with creditors, government officials and other need-to-know entities to discuss cash positions, and drafting long-term cash flow projections. Additionally invoice processing, production cost modeling and review of customer billing are included in the cash flow analysis.

### 7. Accounts Receivable/Collections Analysis

This matter includes the understanding, analysis and conversations around all accounts receivable. Due to many entities being indebted to PREPA, there are meetings with AAFAF and customer service to develop payment plans. Other matter include invoicing review, billing updates and developing processing aging reports.

### 8. Business Process Analysis

This matter involves the analysis of administrative and operational processes within PREPA. Part of this includes departmental reviews at PREPA and working with each department to determine process improvements that benefit the company overall. Work Plan 180 (WP180) was developed to support the analysis and planning within the organization to allow key PREPA employees, with support of management, to suggest initiatives that could help benefit PREPA.

### 9.  Capital Planning

This matter includes review and analysis of the planned, proposed and potential capital projects associated with power plants, T&D system, and retail operations.  FEP evaluates these projects to assess their impact on the Debtors' financial and operational outlook of cash flows and operational capability.

### 10. Operational Planning

This matter includes the analysis of PREPA operations and suggested initiatives to improve operations. Sample matters include:

- Staffing analysis and planning
- Reviewing comparative benchmarked data
- Reporting on operations of PREPA
- Review plant reports for an understanding of generation operations
- WP180 initiative planning
- Planning for restoration activities to increase the level of energization to more clients

### 11. Restructuring Planning

Restructuring Planning includes working on matters related to the transformation of PREPA. Such matters include but are not limited to:

- Review of PPOAs
- Analysis of the current PREPA standards for the T&D system
- Review of new standards for the T&D system

### 12. Working Group Planning

Working group planning matter includes group planning to work through initiatives. For Work Plan 180 (WP180) there are working meetings where the necessary partying discuss, review and assess initiative improvements. Other working groups include generation and transformation-related working groups with FOMB and its advisors.

### 13. Organizational Review

This matter includes the reviews of PREPA operations and organizational structures. Such matters include, but are not limited to:

- Generation performance and dispatch
- Work Plan 180 initiatives
- HR initiatives and analysis
- Meetings on staffing structure

### 14. Competitor Analysis

This matter includes the analysis and review of other islands and utilities. This include research for possible planning for the creditors and providing examples of other operating utilities.

### 15. Emergency Restoration Initiatives

Due to the hurricanes that hit the island in September, 2017, this matter includes many of the restoration and resiliency efforts that FEP was involved with. A sampling of these efforts include:

- Working on FEMA Project Worksheets for the Emergency and for the Permanent work

- Analysis of the damage of the distribution and transmission
- Review of materials on the island
- Site visits of the damaged areas
- Unified Command Meetings with representatives of Puerto Rico, FEMA, and the US Army Corps of Engineers
- Working with FEMA, GAR, COR3, and other groups related to restoration efforts
- Working with the Energy Sector Office and advisors of COR3 for permanent work efforts

### 16. Generation Analysis

This matter includes historical analysis and projections related to the Debtors' power-generating assets, including analysis of the operating characteristics, outage schedules, fuel consumption, dispatch and operating and maintenance expenses individually for each of the generating units that the Debtors own and operate.

FEP also validated operating characteristics for each individual and unique generation unit.  These operating characteristics support modeling input assumptions for both the fundamental price forecasting process via AURORAxmp.  In preparing the input data for this model, FEP researched and compiled data, ran the models through an iterative process, and prepared the analysis of the model results. FEP utilized data provided by the Debtors, as well as market and other independent information developed and researched by FEP.

FEP developed specific models to capture the unique aspects of some of the Debtors' assets. These plant-specific models capture the unique operating characteristics and constraints of the Debtors' assets.

### 17. Generation Resource Planning

This matter includes forward-looking planning and analysis of the Debtors' generation including future operating planning, new resources, resource modernization, and potential investments. Market modeling using PROMOD and AURORAxmp are utilized to assist with the pricing and opportunity. In preparing for the planning, FEP researches and compiles information which includes, but is not limited to, analysis of generation reports, fuel research, site visits of current facilities, interacting with IRP team, power purchase agreement negotiations, etc.

### 18. Retail Rate Analysis

This matter includes historical-looking analysis of the Debtors' customer rate, including analysis of its customer portfolios, margins and operating costs.  This analysis includes residential, commercial and business segments and includes fuel rate adjustments and restoration reimbursements. Additional analysis includes assessment retail rates of comparable electric utilities on other islands.

### 19. Risk Management Analysis

This matter includes meetings, research and assessments into the Debtors' risk. Such matter includes interactions related to insurance and claims due to hurricane damage, mitigation of risk for future operations, and analysis of current risk.

### 20. Environmental Analysis

This matter This matter includes analysis and modeling of existing and potential environmental regulations, including the impacts of these regulations on power plant operations. This matter also includes analysis of the environmental controls that are or may be necessary at the Debtors' plants.  This task requires the modeling of complex regulations regarding federal rules for each of the generating units for items such as: air permit limits and potential operating constraints, NOx controls and trading

allowance constraints, SO2 controls and trading allowance constraints, mercury controls and constraints, and potential greenhouse gas regulations or legislation that could alter the productivity of the generation fleet.

### 21. Contract Management

This matter involves the review, analysis and documentation of contracts with PREPA. These matters include a sampling of the following:

- Analysis and review of a draft contract or contract amendment
- Review contract documents to support a contract
- Working with Office of Contract, Procurement and Compliance (OCPC)
- Working directly with contractors under PREPA (invoicing, payment processing, documentation)
- Review and assess PPOA and work with PPOA contract amendments

### 22. Wholesale Operations

This matter focuses on the analysis of the impacts on the Debtors' generation operations. Generation operations factors into the projections for the Debtors' power plant operations, including outage schedules, maintenance plans and operating and maintenance expenses. FEP evaluated these plans and schedules to assess their impact on the Debtors' financial and operational outlook. Additional operation activities include power purchase agreement assessment.

### 23. Retail Operations

This matter includes review and analysis of the Debtors' customer service operations, including customer-responsive activities, customer contact plan development (call center) and customer experience activities. FEP evaluated the Debtors' ongoing marketing activities, rate pricing calculations, and monthly performance. Due to restoration efforts, some of these activities include working directly with the Debtors' customers, understanding the billing and collections, working on initiatives to promote customer service operations call center. Additional initiatives under customer service include E-billing, smartmeters, CRU, etc.

### 24. T&D Operations

This matter includes review and analysis of the transmission and distribution ("T&D") activities of the Debtor, as well as the impact of the restoration efforts and the permanent work efforts. Analysis includes transmission, distribution, substations and activities related to the grid.

### 25. Long-Term Infrastructure Planning

Matter includes plans to assist PREPA with transformation planning for the long term. These plans include a sampling of the following (this list is not exhaustive):

- Providing input for a plan for FEMA 428 permanent work
- Request for Proposals (RFP) for projects for the long term
- Transition plans for PREPA's T&D and generation plan
- Integrated Resource Plan (IRP)

### 26. Short-Term Infrastructure Planning

Matter includes plans to assist PREPA with restoration and operational planning for the near term. These plans include a sampling of the following (this list is not exhaustive):

- Providing input for a plan for restoration
- Near term contracts for restoration
- Transition plans for PREPA coming out of restoration
- Transition plans for PREPA under a new management

**27. Procurement Compliance**

This matter includes write-up, review, follow up, meetings, and tasks assigned for procurement and project proposals. This matter includes examples of the following (this list is not exhaustive)
- Request for Proposals (RFP)
- PowerAdvocate
- Working with the Office of Contract Procurement and Compliance (OCPC)
- Restoration/FEMA 428 contracting
- Document procurement and review for proposals and contracts
- Meetings with government agencies to ensure necessary documentation
- Working with the Major Procurement Management Team (MPMT) at PREPA

**28. Sales, General & Administrative Analysis**

This matter includes historical review and forward-looking modeling and analysis of the Debtors' sales, general and administrative ("SG&A") operations and expenses. This analysis includes all areas of the Debtors' businesses, including their generation, customer service and T&D activities. FEP conducted extensive diligence and analysis to benchmark the Debtors' SG&A expenses against comparable business entities and competitors.

**29. Operational Reform Implementation**

FEP was assigned to assist with the operations and transformation of PREPA. As part of this matter, assessment into the different departments, processes and procedures, operations, etc. have been reviewed and, with PREPA's management support, implementation and review of improvements have been made. One major area of work that supports the operational reform is an overarching initiative called Work Plan 180 (WP80). The WP180 initiative is designed to work with all departments and help prioritize some important projects. WP180 is also tracked monthly by the FOMB.
Additional matter includes general procurement items that are targeting operational reform.

**30. Data Collection and Diligence**

This matter includes site visits, meetings, document reviews and other tasks associated with gathering and examining information and data received from the Debtors. The following is a sample list of the myriad of information that has been collected from the Debtors as well as third party sources:

- **Generation unit characteristics including operating heat rates, emission production levels, emission extraction rates, etc.**
- **Unit operating cost information**
- **Unit capital costs**
- **Customer rates and collection**
- **CRU and RTU operational data**
- **Restoration information**

- **Billing and invoicing**

Additionally this matter includes preparation and production of data in response to data requests from third parties in this Case.

### 31. Reports

This matter includes the development, review and publication of reports supporting the Debtors' operations, FEP analyses, court filings, weekly required reports for creditors, DIP supporting reports, etc.

### 32. Hearings

This matter includes preparation, attendance and participation in depositions and hearings supporting the Debtors' PREOMESA Title III case.

### 33. Claims and Settlement Issues

This matter includes FEP's analyses, support and litigation assistance work regarding third party claims against the Debtors' estate. FEP's efforts included extensive diligence, data collection and analysis of the claims, including modeling of various future or historical market scenarios or insight into regulatory actions that can materially affect the value of the claim. Additionally, FEP provided support for insurance claims related to the restoration efforts.

### 34. Performance Analysis

This matter includes the review and analysis of actual financial and non-financial operational metrics across the Debtors' businesses against the Debtors' own and FEP's independent forecasts and other market indicators.

### 35. Regulatory Analysis

This matter includes analysis of the multitude of proposed rulings, orders, or mandates, whether state, federal or local, that are proffered by regulatory agencies.  For example, the following is an exemplary listing (not all inclusive) of regulatory agencies that directly affect the results of operations of the entities:

- **Environmental Protection Agency (EPA)**
- **Puerto Rico Energy Commission (PREC or PREB)**
- **Federal Energy Regulatory Committee (FERC)**
- **Mercury and Air Toxins Standard (MATS)**

### 36. Project Management

This matter includes managing the risks, issues and tasks to ensure that deadlines are met for various projects on behalf of the Debtors. FEP's team members ensures that the combined efforts have been coordinated to produce the required analyses, reports, projections and various model results as requested. This matter includes efforts to define deliverables, set and monitor deadlines, coordinate and assign appropriate resources, skill-set and experience, and prepare timely analyses to support the Debtors' needs. This matter also includes the project managers' discussions with the Debtors on the nature of the work and tasks.

### 37. PREPA Meetings and Communications

Matter involves actions associated with the Debtors

### 38. Governing Board Meetings and Communications

Matter involves actions associated with the governing board of the Debtors

### 39. Creditor Meetings and Communications

Matter involves actions associated with the Creditors

### 40. Fiscal Agency and Financial Advisory Authority Communications

Matter involves actions associated with the Fiscal Agency and Financial Advisory Authority (AAFAF)

### 41. Commonwealth Government Meetings and Communications

Matter involves actions associated with the Puerto Rico Commonwealth Government

### 42. U.S. Federal Government Meetings and Communications

Matter involves actions associated with the US Federal Government

### 43. FOMB Meetings and Communications

Matter involves actions associated with the Federal Oversite and Management Board (FOMB)

### 44. Fee Application

This matter includes the preparation, review and compilation of the supporting data and documentation of interim fee applications and the monthly budget process.

### 45. FEMA: 1A - Sub-Applicant Site Identification

This matter includes identifying site information for the sub-applicant (PREPA) as it relates to FEMA

### 46. FEMA: 1B - Immediate Needs

This matter includes necessary information and meetings for FEMA related matters.

### 47. FEMA: 1C - Data Collection & Dissemination

This matter includes site visits, meetings, document reviews and other tasks associated with gathering and examining information and data received as it relates to FEMA related matter and FEMA Project Worksheets.

### 48. FEMA: 2A - Special Considerations

FEMA related matter

### 49. FEMA: 2B - Financial Compliance Reviews (PA)

FEMA related matter involving compliance and understanding of projects

### 50. FEMA: 2C - Other Funding Anticipation

Matter involves review of projects for potential FEMA reimbursement. This includes project assessment, contractor meetings, drafting of the procurement documents, etc. for a potential FEMA funded project

### 51. FEMA: 2D - Site Visits

Matter involves site visits as they relate to FEMA reimbursable projects

### 52. FEMA: 2E - Project Description Development

Matter involves developing the project descriptions for FEMA reimbursable projects and review of project detail updates.

### 53. FEMA: 2F - Project Scope Development

In the FEMA project worksheet process, detailed scoping, documentation and development of potential projects is necessary to begin the request for reimbursement.

**54. FEMA: 2G - Project Cost Estimation & Documentation**

Matter involves the assessment for cost reasonableness and documentation for FEMA project worksheets. FEP assisted with some of the specific documentation for continued invoicing as it relates to project worksheets. Additionally, cost reasonableness is included through procurement process

**55. FEMA: 2H - Alternate Site Project Request (if warranted)**

**56. FEMA: 2I - Site Improvement Project Request (if warranted)**

Matter involves documentation for FEMA to assess site specific details.

**57. FEMA: 2J - PW Writing**

Matter involves FEMA Project Worksheet (PW) writing which includes providing FEMA with the correct details to create the PW

**58. FEMA: 2K - PW Review & Final Approval**

Matter involves FEMA Project Worksheet (PW) follow up with FEMA to check for necessary obligations of PWs

**59. FEMA: 3A - Eligibility Review**

**60. FEMA: 3B - Program Funding Request Documentation**

Funding request from FEMA include specific requests for documentation to support the obligation, or funding of project worksheets

**61. FEMA: 3C - Program Funding Request Processing**

**62. FEMA: 3D - Additional FEMA/Grantee Documentation Requests**

Matter involves providing additional information to FEMA for restoration related reimbursement activities.

**63. FEMA: 3E - Alternate Projects Development (if warranted)**

Funding request from FEMA include specific requests for from FEMA to document projects that could be reimbursable from FEMA

**64. FEMA: 3F - Improved Projects Development (if warranted)**

**65. FEMA: 4A - Project Payment Requests**

Payment requests for specific project worksheets include the request for FEMA obligated, funded, or paid amounts. Additionally, this matter can include the follow up of invoice payments to sub-applicant's contractor.

**66. FEMA: 4B - Project Cost Reconciliations**

FEMA requires cost reasonableness for reimbursable projects. This matter includes various assessments of project costs including analysis, reasonableness and review of requested project worksheet.

**67. FEMA: 4C - Project Inspection Request**

For some FEMA related items, specific reports and inspections are required for proof of work of contractor or working party. This matter involves the work around the FEMA requested inspections for various projects

**68. FEMA: 4D - Evaluating/Estimating Cost Overruns**

**69. FEMA: 4E – Preparing PW versions for Cost Adjustments**
**70. FEMA: 4F – Other Program Management / Close out Activities**
**71. Procurement**
**72. Permanent Work Initiatives**

### Applicant's Requested Compensation and Expenses Should be Allowed

16.     Section 317 of PROMESA provides for interim compensation of professionals and incorporates the substantive standards of section 316 of PROMESA to govern the Court's award of such compensation. Section 316 of PROMESA provides that a court may award a professional employed by the debtor (in the debtor's sole discretion) "reasonable compensation for actual necessary services rendered…and reimbursement for actual, necessary expenses." Section 316 also sets forth the criteria for the award of such compensation and reimbursement:

In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, extent, and the value of such services, taking into account all relevant factors, including –

(a)     the time spent on such services;

(b)     the rates charged for such services;

(c)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;

(d)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(e)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and

(f)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under subchapter or Title 11.

17.     Applicant respectfully submits that the amounts applied herein for professional services, at the time rendered, on behalf of the Debtor in this proceeding are fair and reasonable given: (i) the novelty and complexity of issues presented and results achieved; (ii) the time and labor required; (iii) the skills required to properly perform the advisory services; (iv) the time constraints imposed by the urgency of the case; (v) the experience, reputation and ability of the professionals rendering services; (vi) the efficient administration of the Debtor; and (vii) the avoidance of duplicative fees.

18.     The time and labor expended by Applicant has been commensurate with the size, complexity and timeframe in which these cases proceeded. In rendering these services, Applicant made every effort to maximize the benefit to the Debtor and all parties-in-interest, to work effectively and efficiently with the other professionals employed in these cases and to leverage staff appropriately to minimize duplication of effort.

19.     During the Interim Fee Period, Applicant provided a focused range of professional services as requested by the Debtor. Applicant respectfully submits that these services: (i) were necessary and beneficial to the successful and prompt administration of these cases; and (ii) have been provided in a cost-efficient manner.

20.     As detailed above, the services Applicant provided to the Debtor have conferred substantial benefit on Debtor and its business operations.

21.     The services that have been provided by Applicant during these proceedings have been wholly consistent with the Debtor's intentions and have been undertaken with specific direction and guidance from the Debtor.

22.     These cases have necessitated the use of experienced advisors with specialized expertise in financial analysis to timely and thoroughly address the needs of the Debtor. The

persons who have worked on these cases have demonstrated the skill in their respective areas of expertise required to provide the services necessary to assist the Debtor.

23.     Based on the factors to be considered under sections 316 and 317 of the PROMESA, the Applicant believes that the services rendered during the Interim Fee Period on behalf of the Debtor are reasonable and the allowance of the requested fees and reimbursement of expenses is justified.

**<u>Reservation</u>**

24.     Although every effort has been made to include all fees and expenses incurred in the Interim Fee Period, some fees and expenses might not be included in this Interim Fee Application due to delays caused by accounting and processing during the Interim Fee Period. FEP reserves the right to supplement this Interim Fee Application to include fees and expenses not included herein or seek payment of such fees and expenses in subsequent fee statements.

**<u>Conclusion</u>**

25.     Applicant therefore requests an order: (i) approving interim compensation in the

sum of $11,019.00; (ii) approving interim reimbursement of out-of-pocket expenses in the sum of

$8,901.50; (iii) directing payment for all compensation and expenses for the Interim Fee Period;

and (iv) granting such other and further relief as may be just and proper.


Dated: San Juan, Puerto Rico
      July 15, 2021

                                  FILSINGER ENERGY PARTNERS, INC.


                                  By: _____

                                  Todd Filsinger
                                  Senior Managing Director
                                  Filsinger Energy Partners
                                  90 Madison Street, Suite 500
                                  Denver, Colorado 80206
                                  Telephone: (303) 974-5884
                                  todd@filsingerenergy.com

## EXHIBIT A

CERTIFICATION OF TODD FILSINGER

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),

             Debtor[1].                      /

PROMESA
Title III

No. 17-04780 (LTS)

**CERTIFICATION OF TODD FILSINGER IN SUPPORT OF THE ELEVENTH
INTERIM FEE APPLICATION OF FILSINGER ENERGY PARTNERS FOR
ALLOWANCE OF AN ADMINISTRATIVE CLAIM FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED AS CONSULTANT TO PUERTO
RICO ELETRIC POWER AUTHORITY FOR THE PERIOD FROM
FEBRUARY 1, 2021 – MAY 31, 2021**

      I, Todd Filsinger, have the responsibility for ensuring that the *Eleventh Interim Fee
Application of Filsinger Energy Partners for Allowance of an Administrative Claim for
Compensation and Reimbursement of Expenses Incurred as Consultant to Puerto Rico Electric
Power Authority ("PREPA") for the Period from February 1, 2021 – May 31, 2021* (the
"Application") complies with applicable provisions of PROMESA, the Bankruptcy Rules, the
Local Rules, the First Amended Interim Compensation Order, and the UST Guidelines.[2]

      I hereby certify the following:

1.      I am a Senior Managing Director of Filsinger Energy Partners, Inc. ("FEP").

---

[1] The last four (4) digits of PREPA's federal tax identification number are 3747.

[2] All capitalized terms have the meaning provided in the Application unless otherwise defined herein.

2.      I am the lead Senior Managing Director from FEP representing PREPA in connection with the above-captioned Title III Case. I am authorized to submit this certification in support of the Application. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3.      I have read the Application. The statements contained in the Application are true and correct according to the best of my knowledge, information, and belief.

4.      To the best of my knowledge, information, and belief, formed after reasonable inquiry, the fees and disbursements sought in the Application are permissible under PROMESA, the Bankruptcy Rules, the Local Rules, orders of this Court, and the UST Guidelines.[3]

5.      The fees and disbursements sought in the Application are billed at rates FEP employs and other FEP clients accept in matters of this nature.

6.      FEP does not make a profit on costs or expenses for which it seeks reimbursement, whether the service is performed by FEP in-house or through a third party.

7.      In accordance with Rule 2016(a) of the Bankruptcy Rules and 11 U.S.C. § 504, no agreement or understanding exists between FEP and any other person for the sharing of compensation to be received in connection with the above cases except as authorized by PROMESA, the Bankruptcy Rules, and the Local Rules.

8.      All services for which FEP seeks compensation were professional services rendered to PREPA and not on behalf of any other person.

---

[3] Filsinger Energy Partners reviewed the Memorandum submitted by the Fee Examiner and is endeavoring to comply with all requirements of the Interim Order and the UST Guidelines.

I hereby certify that no public servant of the Puerto Rico Electric Authority ("PREPA") is a party to or has any interest in the gains or benefits derived from the contract that is the basis of this invoice.  The only consideration for providing services under the contract is the payment agreed upon with the authorized representatives of PREPA.  The amount of this invoice is reasonable.  The services were rendered and the corresponding payment has not been made.  To the best of my knowledge FEP does not have any debts owed to the Government of Puerto Rico or its instrumentalities.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief formed after reasonable inquiry.

Executed on July 15, 2021

FILSINGER ENERGY PARTNERS, INC.

By: _____

Todd Filsinger
Senior Managing Director
Filsinger Energy Partners
90 Madison Street, Suite 500
Denver, Colorado 80206
Telephone: (303) 974-5884
todd@filsingerenergy.com

Filsinger Energy Partners
Exhibit B

February 1, 2021 - May 31, 2021

| Category Number | Category Name | Hours in Report | Amount |
|---|---|---|---|
| 1 | Long-Range Forecasting | - | $0.00 |
| 2 | Annual Fiscal Forecast | - | $0.00 |
| 3 | Financial Reporting | - | $0.00 |
| 4 | Financial Management | - | $0.00 |
| 5 | Cash Management | - | $0.00 |
| 6 | Cash Flow Analysis | - | $0.00 |
| 7 | Accounts Receivable/Collections Analysis | - | $0.00 |
| 8 | Business Process Analysis | - | $0.00 |
| 9 | Capital Planning | - | $0.00 |
| 10 | Operational Planning | - | $0.00 |
| 11 | Restructuring Planning | - | $0.00 |
| 12 | Working Group Planning | - | $0.00 |
| 13 | Organizational Review | - | $0.00 |
| 14 | Competitor Analysis | - | $0.00 |
| 15 | Emergency Restoration Initiatives | - | $0.00 |
| 16 | Generation Analysis | - | $0.00 |
| 17 | Generation Resource Planning | - | $0.00 |
| 18 | Retail Rate Analysis | - | $0.00 |
| 19 | Risk Management Analysis | - | $0.00 |
| 20 | Environmental Analysis | - | $0.00 |
| 21 | Contract Management | - | $0.00 |
| 22 | Wholesale Operations | - | $0.00 |
| 23 | Retail Operations | - | $0.00 |
| 24 | T&D Operations | - | $0.00 |
| 25 | Long-Term Infrastructure Planning | - | $0.00 |
| 26 | Short-Term Infrastructure Planning | - | $0.00 |
| 27 | Procurement Compliance | - | $0.00 |
| 28 | Sales, General & Administrative Analysis | - | $0.00 |
| 29 | Operational Reform Implementation | - | $0.00 |
| 30 | Data Collection and Diligence | - | $0.00 |
| 31 | Reports | - | $0.00 |
| 32 | Hearings | 16.5 | $11,019.00 |
| 33 | Claims and Settlement Issues | - | $0.00 |
| 34 | Performance Analysis | - | $0.00 |
| 35 | Regulatory Analysis | - | $0.00 |
| 36 | Project Management | - | $0.00 |
| 37 | PREPA Meetings and Communications | - | $0.00 |
| 38 | Governing Board Meetings and Communications | - | $0.00 |
| 39 | Creditor Meetings and Communications | - | $0.00 |
| 40 | Fiscal Agency and Financial Advisory Authority Communications | - | $0.00 |
| 41 | Commonwealth Government Meetings and Communications | - | $0.00 |
| 42 | U.S. Federal Government Meetings and Communications | - | $0.00 |
| 43 | FOMB Meetings and Communications | - | $0.00 |
| 44 | Fee Application | - | $0.00 |
| 45 | FEMA: 1A - Sub-Applicant Site Identification | - | $0.00 |
| 46 | FEMA: 1B - Immediate Needs | - | $0.00 |
| 47 | FEMA: 1C - Data Collection & Dissemination | - | $0.00 |
| 48 | FEMA: 2A - Special Considerations | - | $0.00 |
| 49 | FEMA: 2B - Financial Compliance Reviews (PA) | - | $0.00 |
| 50 | FEMA: 2C - Other Funding Anticipation | - | $0.00 |
| 51 | FEMA: 2D - Site Visits | - | $0.00 |
| 52 | FEMA: 2E - Project Description Development | - | $0.00 |
| 53 | FEMA: 2F - Project Scope Development | - | $0.00 |
| 54 | FEMA: 2G - Project Cost Estimation & Documentation | - | $0.00 |
| 55 | FEMA: 2H - Alternate Site Project Request (if warranted) | - | $0.00 |
| 56 | FEMA: 2I - Site Improvement Project Request (if warranted) | - | $0.00 |
| 57 | FEMA: 2J - PW Writing | - | $0.00 |
| 58 | FEMA: 2K - PW Review & Final Approval | - | $0.00 |
| 59 | FEMA: 3A - Eligibility Review | - | $0.00 |
| 60 | FEMA: 3B - Program Funding Request Documentation | - | $0.00 |
| 61 | FEMA: 3C - Program Funding Request Processing | - | $0.00 |
| 62 | FEMA: 3D - Additional FEMA/Grantee Documentation Requests | - | $0.00 |
| 63 | FEMA: 3E - Alternate Projects Development (if warranted) | - | $0.00 |
| 64 | FEMA: 3F - Improved Projects Development (if warranted) | - | $0.00 |
| 65 | FEMA: 4A - Project Payment Requests | - | $0.00 |
| 66 | FEMA: 4B - Project Cost Reconciliations | - | $0.00 |
| 67 | FEMA: 4C - Project Inspection Request | - | $0.00 |
| 68 | FEMA: 4D - Evaluating/Estimating Cost Overruns | - | $0.00 |
| 69 | FEMA: 4E - Preparing PW Versions for Cost Adjustments | - | $0.00 |
| 70 | FEMA: 4F - Other Program management/Close-out Activities | - | $0.00 |
| 71 | Procurement | - | $0.00 |
| 72 | Permanent Work Initiatives | - | $0.00 |
| | **Grand Total:** | **16.5** | **$11,019.00** |

**Filsinger Energy Partners**
**Exhibit C**

**February 1, 2021 - May 31, 2021**

The Filsinger Energy Partners professionals who rendered professional services during the case in the
Fee Period are:

| Employee | Title | Rate w/ 10% Discount | Hours in Report | Amount |
|---|---|---|---|---|
| Todd Filsinger | Senior Managing Director | $842 | 7.0 | $5,894.00 |
| Keturah Nelson | Managing Director | $666 | 1.5 | $999.00 |
| Laura Hatanaka | Director | $536 | 7.0 | $3,752.00 |
| Pam Morin | Consultant | $374 | 1.0 | $374.00 |
| | | **Grand Total:** | **16.5** | **$11,019.00** |

**EXHIBIT D**
**Summary of Disbursements for the period**
**February 1, 2021 - May 31, 2021**

Filsinger Energy Partners

| Expense Category | Amount | Description |
|---|---|---|
| Travel | | |
|     Airfare | $0.00 | |
|     Hotel | $0.00 | |
|     Other | $8,901.50 | Legal fees |
| | | |
| **Subtotal:** | **$8,901.50** | |
| | | |
|     Meal per diem | $0.00 | Travel meals |
|     Transportation per diem | $0.00 | Travel ground transportation |
| **Total** | **$8,901.50** | |

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17-04780 (LTS) |
| PUERTO RICO ELECTRIC POWER AUTHORITY<br>("PREPA"), | |
| Debtor[1]. _____ / | |

### THIRTY-SIXTH MONTHLY FEE STATEMENT OF
### FILSINGER ENERGY PARTNERS FOR ALLOWANCE OF AN ADMINISTRATIVE
### CLAIM FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED
### FROM MARCH 1, 2021 THROUGH MARCH 31, 2021

| | |
|---|---|
| Name of Applicant | Filsinger Energy Partners, Inc. |
| Authorized to Provide Professional Services to: | Puerto Rico Electric Power Authority |
| Period for which compensation and reimbursement is sought: | March 1, 2021 through March 31, 2021 |
| Amount of Compensation[2]: | $9,917.10  (90% of $11,019.00)[3] |
| Amount of Expense Reimbursement sought as actual, reasonable, and necessary: | $8,901.50 |

---

[1] The last four (4) digits of PREPA's federal tax identification number are 3747.

[2] Per the terms of the contract, the 10% labor discount will no longer apply if PREPA fails to pay within the fourteen (14) day pay window after the completion of the notice parties objection period per the FEP Professional Services Engagement Letter and the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* for the prior month billed.

[3] Of this amount $11,019.00 is for fees incurred for work performed by Filsinger Energy Partners professionals outside of Puerto Rico and $0 is for fees incurred for work performed by Filsinger Energy Partners professionals in Puerto Rico. In addition, fees have been attributed to the following functions: $0 related to Restoration work, $11,019.00 related to Operations, $0 related to Transformation work, and $0 related to Title III.

This is a **X** monthly ___ interim __ final application.[4]

On May 3, 2021 sent to:

**Counsel for the Oversight Board**

> Proskauer Rose LLP, Eleven Times Square, New York, NY 10036, Attn: Martin J. Bienenstock, Esq. (mbienenstock@proskauer.com) and Ehud Barak, Esq. (ebarak@proskauer.com), and Proskauer Rose LLP, 70 West Madison Street, Chicago, IL 60602, Attn: Paul V. Possinger, Esq. (ppossinger@proskauer.com);

> O'Neill & Borges LLC, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918, Attn: Hermann D. Bauer, Esq. (hermann.bauer@oneillborges.com);

**Counsel for the Puerto Rico Fiscal Agency and Financial Advisory Authority**

> O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, Attn: John J. Rapisardi, Esq. (jrapisardi@omm.com), Suzzanne Uhland, Esq. (suhland@omm.com), and Diana M. Perez, Esq. (dperez@omm.com);

> Marini Pietrantoni Muñiz LLC, MCS Plaza, Suite 500, 255 Ponce de León Ave, San Juan, PR 00917, Attn: Luis C. Marini-Biaggi, Esq. (lmarini@mpmlawpr.com) and Carolina Velaz-Rivero Esq. (cvelaz@mpmlawpr.com);

**Office of the United States Trustee for the District of Puerto Rico**

> Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901

**Counsel for the Official Committee of Unsecured Creditors**

> Paul Hastings LLP, 200 Park Ave., New York, NY 10166, Attn: Luc. A Despins, Esq. (lucdespins@paulhastings.com);

> Casillas, Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras Street, Ste. 1601, San Juan, PR 00901, Attn: Juan J. Casillas Ayala, Esq. (jcasillas@cstlawpr.com) and Alberto J.E. Añeses Negrón, Esq. (aaneses@cstlawpr.com);

---

[4] Notice of this Monthly Fee Statement shall be served in accordance with the 2nd Amended Interim Compensation Order and objections to the relief requested in this Monthly Fee Statement shall be addressed in accordance with the 2nd Amended Interim Compensation Order.

**Counsel for the Official Committee of Retired Employees**

Jenner & Block LLP, 919 Third Ave., New York, NY 10022, Attn: Robert Gordon, Esq. (rgordon@jenner.com) and Richard Levin, Esq. (rlevin@jenner.com), and Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654, Attn: Catherine Steege, Esq. (csteege@jenner.com) and Melissa Root, Esq. (mroot@jenner.com);

Bennazar, García & Milián, C.S.P., Edificio Union Plaza, PH-A, 416 Ave. Ponce de León, Hato Rey, PR 00918, Attn: A.J. Bennazar-Zequeira, Esq. (ajb@bennazar.org);

**The Puerto Rico Department of Treasury**

PO Box 9024140, San Juan, PR 00902-4140, Attn: Reylam Guerra Goderich, Deputy Assistant of Central Accounting (Reylam.Guerra@hacienda.pr.gov); Omar E. Rodríguez Pérez, CPA, Assistant Secretary of Central Accounting (Rodriguez.Omar@hacienda.pr.gov); Angel L. Pantoja Rodríguez, Deputy Assistant Secretary of Internal Revenue and Tax Policy (angel.pantoja@hacienda.pr.gov); Francisco Parés Alicea, Assistant Secretary of Internal Revenue and Tax Policy (francisco.pares@hacienda.pr.gov); and Francisco Peña Montañez, CPA, Assistant Secretary of the Treasury (Francisco.Pena@hacienda.pr.gov);

**Counsel to any other statutory committee appointed**

**Counsel for the Fee Examiner**

EDGE Legal Strategies, PSC
252 Ponce de León Avenue
Citibank Tower, 12th Floor
San Juan, PR 00918
Attn: Eyck O. Lugo (elugo@edgelegalpr.com);

Godfrey & Kahn, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Attn: Katherine Stadler (KStadler@gklaw.com)

Pursuant to PROMESA and applicable provisions of Chapter 11 of Title 11l of the United States Code, (the "<u>Bankruptcy Code</u>"), the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "<u>Local Rules</u>"), and the *First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals,* dated November 8, 2017 [Commonwealth Title III Proceeding Docket Entry No. 1715] (the "<u>Amended Interim Compensation Order</u>"), and the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals,* dated June 6, 2018 [Commonwealth Title III Proceeding Docket Entry No. 3269] (the "<u>2nd Amended Interim Compensation Order</u>") consulting firm of Filsinger Energy Partners, Inc. ("<u>FEP</u>"), Chief Financial Advisor for Puerto Rico Electric Power Authority ("<u>PREPA</u>"), hereby files this monthly fee statement (this "<u>Monthly Fee Statement</u>") for compensation in the amount of $9,917.10  for the reasonable and necessary consulting services FEP rendered to PREPA from March 1, 2021 through March 31, 2021 (the "<u>Fee Period</u>") (90% of $11,019.00) and expenses in the amount of $8,901.50. Filsinger Energy Partners has voluntarily waived $0 in expenses related to reductions taken for hotel, airfare and per diem meals and ground transportation and $0 in fee reductions related to fee application activities.

### <u>Itemization of Services Rendered and Disbursements Incurred</u>

1.     In support of this Monthly Fee Statement, attached are the following exhibits:

- **<u>Exhibit A</u>** is a schedule of the number of hours expended and fees incurred (on an aggregate basis) by FEP Consultants during the Fee Period with respect to each of the task code categories FEP established in accordance with its internal billing procedures. As reflected in <u>Exhibit A</u>, FEP incurred $11,019.00 in fees during the Fee Period. Pursuant to this Monthly Fee Statement, FEP seeks reimbursement for 90% of such fees ($9,917.10  in the aggregate).

- **Exhibit B** is a schedule providing certain information regarding the FEP Consultants for whose work compensation is sought in this Monthly Fee Statement. FEP consultants have expended a total of 16.5 hours in connection with services rendered to PREPA during the Fee Period.

- **Exhibit C** is a schedule of the necessary costs and expenses incurred by FEP in connection with these Title III cases during the Fee Period.

- **Exhibit D** sets forth FEP's detailed, daily time records which include: (i) a description of the professional or paraprofessional performing the services rendered by FEP during the Fee Period; (ii) the date the services were performed; (iii) a detailed description of the nature of the services and the related time expended; and (iv) a summary of the fees and hours of each professional and other timekeepers listed by project category.

- **Exhibit E** is a detailed description of the necessary costs and expenses incurred by FEP in connection with these Title III cases during the Fee Period.

## **Summary of Services Provided**

2.   Effective August 17, 2020, FEP and PREPA executed a new Professional Services Agreement for 90 days, expiring on November 14, 2020.   Among its numerous tasks and responsibilities, FEP professionals performed the following duties described in its Professional Services Engagement Agreement.

- Provide Strategic Advice during the Renewable PPOA's approval process with the Puerto Rico Energy Bureau, the Financial Oversight and Management Board for Puerto Rico and the Title Ill court.

- Transition of financial reporting and creditors report in the Title III process;

- Stakeholder management transition with PREPA executive team;

- Transition of financial reporting and ad hoc request form the PREPA Executive Team limited to Title III work streams, Renewable PPOA's approval process, and business operations.

- 5 -

- Provide to PREPA's Chief Executive Officer (CEO) with general financial and management support on such matters as budgeting, financial management, cash management, and expenses approval.

- Provide advice and support to CEO on the implementation of the fiscal and operational restructuring reforms and initiatives outlined in the certifies Fiscal Plan and the implementation of the certifies Budget.

3.   Previously, on July 16, 2019 FEP and PREPA executed a Professional Services Agreement that expired on June 30, 2020.

4.   Under a prior contract dated December 7, 2017 FEP provided services as the Chief Financial Advisor pursuant to FEP's Professional Services Engagement Agreement (as amended, "Original PSA").   On February 2, 2018 FEP and PREPA executed the First Amendment to this Contract.   On February 16, 2018 FEP and PREPA entered into a side letter which established guidelines for expense reimbursement and on June 18, 2018, FEP and PREPA executed the Second Amendment to the December 7, 2017 contract which extended the budget for this Professional Services Engagement.   On July 31, 2018 FEP and PREPA executed the Third Amendment to the Professional Services Agreement which extended the expiration of the Contract to August 15, 2018. On August 15, 2018 FEP and PREPA executed the Fourth Amendment to the Professional Services Agreement which extended the term of the Contract to June 30, 2019 and amended the scope of the agreement. On March 15, 2019 FEP and PREPA executed the Fifth Amendment which extended the budget for this Professional Services Engagement.

5.   The parties to the Original PSA recognized the risk that FEP's rendition of services thereunder subsequently would cause it to incur legal expense in litigation brought by a third party. The Original PSA expressly provides that PREPA would bear the risk of such expense, by providing, inter alia, that "PREPA shall defend, indemnify and hold harmless FEP . . . [and its] officers . . . from and against any and all . . . attorneys' fees, losses, and expenses of whatever . . . arising out of or resulting from the performance of or failure to perform the Work" to be performed by FEP under the Original PSA. Each of FEP and one of its officers, Todd Filsinger, has been served with subpoenas as a result of the Work, both as part of the litigation styled MasTec Renewables Puerto Rico LLC v. Mammoth Energy Services, Inc. and Cobra Acquisitions, LLC, Case No. 20-20263 (S.D. Fla.). FEP has worked closely with counsel for PREPA in responding to these subpoenas. Exhibits C and E set forth expenses incurred by FEP in this effort, all of which are reimbursable to FEP by PREPA under the Original PSA.

6.   The FEP professional's daily time records, including descriptions of the nature of the services provided, are set forth in **Exhibit D**.

## **Reservation**

1.   Although every effort has been made to include all fees and expenses incurred in the Fee Period, some fees and expenses may not be included in this Monthly Fee Statement due to delays caused by accounting and processing during the Fee Period. FEP reserves the right to supplement this Monthly Fee Statement to include fees and expenses not included herein or seek payment of such fees and expenses in subsequent fee statements.

**<u>Certification</u>**

I hereby certify that no public servant of the Puerto Rico Electric Power Authority ("PERPA") is a party to or has any interest in the gains or benefits derived from the contract that is the basis of this invoice.  The only consideration for providing services under the contract is the payment agreed upon with the authorized representatives of PREPA.  The amount of this invoice is reasonable.  The services were rendered, and the corresponding payment has not been made.  To the best of my knowledge FEP does not have any debts owed to the Government of Puerto Rico or its instrumentalities.

Filsinger Energy Partners, Inc.

By: _____

Todd W. Filsinger
Senior Managing Director
90 Madison Street #500
Denver, CO 80206
303-974-5884
todd@filsingerenergy.com

## Principal Certification

I, Fernando Padilla Padilla, Administrator Restructuring and Fiscal Affairs for Puerto Rico

Electric Power Authority ("PREPA").  I hereby certify that I have reviewed the *Thirty-sixth*

*Monthly Fee Statement of Filsinger Energy Partners, Inc. for an Allowance of an Administrative*

*Claim for Compensation and Reimbursement of Expenses incurred from March 1, 2021 – March*

*31, 2021* (the FEP monthly fee statement) and authorize the submission of the FEP Monthly Fee

Statement in accordance with the court approved interim compensation procedures.


Puerto Rico Electric Power Authority


By: _____

Fernando Padilla Padilla
Administrator Restructuring and Fiscal Affairs
Puerto Rico Electric Power Authority

**Filsinger Energy Partners**
**Exhibit A**

March 1, 2021 - March 31, 2021

| Category Number | Category Name | Hours in Report | Amount |
|---|---|---|---|
| 1 | Long-Range Forecasting | - | $0.00 |
| 2 | Annual Fiscal Forecast | - | $0.00 |
| 3 | Financial Reporting | - | $0.00 |
| 4 | Financial Management | - | $0.00 |
| 5 | Cash Management | - | $0.00 |
| 6 | Cash Flow Analysis | - | $0.00 |
| 7 | Accounts Receivable/Collections Analysis | - | $0.00 |
| 8 | Business Process Analysis | - | $0.00 |
| 9 | Capital Planning | - | $0.00 |
| 10 | Operational Planning | - | $0.00 |
| 11 | Restructuring Planning | - | $0.00 |
| 12 | Working Group Planning | - | $0.00 |
| 13 | Organizational Review | - | $0.00 |
| 14 | Competitor Analysis | - | $0.00 |
| 15 | Emergency Restoration Initiatives | - | $0.00 |
| 16 | Generation Analysis | - | $0.00 |
| 17 | Generation Resource Planning | - | $0.00 |
| 18 | Retail Rate Analysis | - | $0.00 |
| 19 | Risk Management Analysis | - | $0.00 |
| 20 | Environmental Analysis | - | $0.00 |
| 21 | Contract Management | - | $0.00 |
| 22 | Wholesale Operations | - | $0.00 |
| 23 | Retail Operations | - | $0.00 |
| 24 | T&D Operations | - | $0.00 |
| 25 | Long-Term Infrastructure Planning | - | $0.00 |
| 26 | Short-Term Infrastructure Planning | - | $0.00 |
| 27 | Procurement Compliance | - | $0.00 |
| 28 | Sales, General & Administrative Analysis | - | $0.00 |
| 29 | Operational Reform Implementation | - | $0.00 |
| 30 | Data Collection and Diligence | - | $0.00 |
| 31 | Reports | - | $0.00 |
| 32 | Hearings | 16.5 | $11,019.00 |
| 33 | Claims and Settlement Issues | - | $0.00 |
| 34 | Performance Analysis | - | $0.00 |
| 35 | Regulatory Analysis | - | $0.00 |
| 36 | Project Management | - | $0.00 |
| 37 | PREPA Meetings and Communications | - | $0.00 |
| 38 | Governing Board Meetings and Communications | - | $0.00 |
| 39 | Creditor Meetings and Communications | - | $0.00 |
| 40 | Fiscal Agency and Financial Advisory Authority Communications | - | $0.00 |
| 41 | Commonwealth Government Meetings and Communications | - | $0.00 |
| 42 | U.S. Federal Government Meetings and Communications | - | $0.00 |
| 43 | FOMB Meetings and Communications | - | $0.00 |
| 44 | Fee Application | - | $0.00 |
| 45 | FEMA: 1A - Sub-Applicant Site Identification | - | $0.00 |
| 46 | FEMA: 1B - Immediate Needs | - | $0.00 |
| 47 | FEMA: 1C - Data Collection & Dissemination | - | $0.00 |
| 48 | FEMA: 2A - Special Considerations | - | $0.00 |
| 49 | FEMA: 2B - Financial Compliance Reviews (PA) | - | $0.00 |
| 50 | FEMA: 2C - Other Funding Anticipation | - | $0.00 |
| 51 | FEMA: 2D - Site Visits | - | $0.00 |
| 52 | FEMA: 2E - Project Description Development | - | $0.00 |
| 53 | FEMA: 2F - Project Scope Development | - | $0.00 |
| 54 | FEMA: 2G - Project Cost Estimation & Documentation | - | $0.00 |
| 55 | FEMA: 2H - Alternate Site Project Request (if warranted) | - | $0.00 |
| 56 | FEMA: 2I - Site Improvement Project Request (if warranted) | - | $0.00 |
| 57 | FEMA: 2J - PW Writing | - | $0.00 |
| 58 | FEMA: 2K - PW Review & Final Approval | - | $0.00 |
| 59 | FEMA: 3A - Eligibility Review | - | $0.00 |
| 60 | FEMA: 3B - Program Funding Request Documentation | - | $0.00 |
| 61 | FEMA: 3C - Program Funding Request Processing | - | $0.00 |
| 62 | FEMA: 3D - Additional FEMA/Grantee Documentation Requests | - | $0.00 |
| 63 | FEMA: 3E - Alternate Projects Development (if warranted) | - | $0.00 |
| 64 | FEMA: 3F - Improved Projects Development (if warranted) | - | $0.00 |
| 65 | FEMA: 4A - Project Payment Requests | - | $0.00 |
| 66 | FEMA: 4B - Project Cost Reconciliations | - | $0.00 |
| 67 | FEMA: 4C - Project Inspection Request | - | $0.00 |
| 68 | FEMA: 4D - Evaluating/Estimating Cost Overruns | - | $0.00 |
| 69 | FEMA: 4E - Preparing PW Versions for Cost Adjustments | - | $0.00 |
| 70 | FEMA: 4F - Other Program management/Close-out Activities | - | $0.00 |
| 71 | Procurement | - | $0.00 |
| 72 | Permanent Work Initiatives | - | $0.00 |
| | **Grand Total:** | **16.5** | **$11,019.00** |

**Filsinger Energy Partners**
**Exhibit B**

**March 1, 2021 - March 31, 2021**

The Filsinger Energy Partners professionals who rendered professional services during the case in the
Fee Period are:

| Employee | Title | Rate w/ 10% Discount | Hours in Report | Amount |
|---|---|---|---|---|
| Todd Filsinger | Senior Managing Director | $842 | 7.0 | $5,894.00 |
| Keturah Nelson | Managing Director | $666 | 1.5 | $999.00 |
| Laura Hatanaka | Director | $536 | 7.0 | $3,752.00 |
| Pam Morin | Consultant | $374 | 1.0 | $374.00 |
| | | **Grand Total:** | **16.5** | **$11,019.00** |

**EXHIBIT C**
**Summary of Disbursements for the period**
**March 1, 2021 - March 31, 2021**

Filsinger Energy Partners

| Expense Category | Amount | Description |
|---|---|---|
| Travel | | |
|    Airfare | $0.00 | |
|    Hotel | $0.00 | |
|    Other | $8,901.50 | Legal fees |
| | | |
| **Subtotal:** | **$8,901.50** | |
| | | |
|    Meal per diem | $0.00 | Travel meals |
|    Transportation per diem | $0.00 | Travel ground transportation |
| **Total** | **$8,901.50** | |

**Filsinger Energy Partners**
**Exhibit D**

| Employee | Title | Date | Matter (1) | Hours | Narrative | Rate w/10% Discount | Fees with 10% Discount | On-Site | Fee Classification |
|---|---|---|---|---|---|---|---|---|---|
| HATANAKA, LAURA R. | Director | 01-Mar-21 | 32 | 0.30 | PPOA review in response to PREPA attorney request for litigation | $536 | $160.80 | No | Operations |
| HATANAKA, LAURA R. | Director | 01-Mar-21 | 32 | 0.70 | Response to deposition letter | $536 | $375.20 | No | Operations |
| HATANAKA, LAURA R. | Director | 02-Mar-21 | 32 | 0.20 | Discussion of PPOA review with PREPA external counsel | $536 | $107.20 | No | Operations |
| HATANAKA, LAURA R. | Director | 02-Mar-21 | 32 | 0.70 | Response to the deposition request | $536 | $375.20 | No | Operations |
| HATANAKA, LAURA R. | Director | 02-Mar-21 | 32 | 0.60 | Cost estimate for PPOA/litigation responses | $536 | $321.60 | No | Operations |
| HATANAKA, LAURA R. | Director | 03-Mar-21 | 32 | 0.50 | Cost estimate for PPOA/litigation responses | $536 | $268.00 | No | Operations |
| HATANAKA, LAURA R. | Director | 04-Mar-21 | 32 | 0.70 | Contract/future litigation call | $536 | $375.20 | No | Operations |
| HATANAKA, LAURA R. | Director | 04-Mar-21 | 32 | 0.30 | Pull requested email for PREPA external counsel | $536 | $160.80 | No | Operations |
| HATANAKA, LAURA R. | Director | 05-Mar-21 | 32 | 0.50 | Discussion of the notice letter | $536 | $268.00 | No | Operations |
| HATANAKA, LAURA R. | Director | 08-Mar-21 | 32 | 1.80 | drafting of Notice letter | $536 | $964.80 | No | Operations |
| HATANAKA, LAURA R. | Director | 08-Mar-21 | 32 | 0.70 | call with attorneys regarding deposition | $536 | $375.20 | No | Operations |
| MORIN, PAMELA S. | Consultant | 04-Mar-21 | 32 | 0.70 | call on deposition with attorney | $374 | $261.80 | No | Operations |
| MORIN, PAMELA S. | Consultant | 05-Mar-21 | 32 | 0.30 | call with attorneys on deposition | $374 | $112.20 | No | Operations |
| NELSON, KETURAH | Managing Director | 02-Mar-21 | 32 | 0.50 | Subpoena notifications | $666 | $333.00 | No | Operations |
| NELSON, KETURAH | Managing Director | 04-Mar-21 | 32 | 1.00 | discussion of continued litigation work under contract | $666 | $666.00 | No | Operations |
| | | | | | | | | | |
| | | | **Grand Total:** | **16.50** | | | **$11,019.00** | | |
| | | | | | | | | | |
| | | | | | | | | | |

(1) For matter descriptions see Exhibit A

**Filsinger Energy Partners**
**Exhibit E**
**March 1, 2021 - March 31, 2021**

| Date | Expense Type | Vendor | Amount | Notes: | File Name |
|------|--------------|--------|--------|--------|-----------|
| 01/15/2021 | Legal | Jester, Gibson & Moore LLP | 178.50 | Costs associated with FEP representation in MASTEC litigation | Stmt_21321.PDF |
| 03/16/2021 | Legal | Jester, Gibson & Moore LLP | 3,321.00 | Costs associated with FEP representation in MASTEC litigation | Stmt_22874.PDF |
| 3/1 - 3/24 | Legal | Jester, Gibson & Moore LLP | 5,402.00 | Costs associated with FEP representation in MASTEC litigation | Stmt_23377.PDF |
| | | | **8,901.50** | | |

**Filsinger Energy Partners**
**Exhibit H**

| Employee | Title | Date | Matter (1) | Hours | Narrative | Rate w/10% Discount | Fees with 10% Discount | On-Site | Fee Classification |
|---|---|---|---|---|---|---|---|---|---|
| FILSINGER, TODD W. | Senior Managing Director | 11-Mar-21 | 32 | 7.00 | Participate in deposition by Cobra in Mastec litigation on behalf of PREPA | $842 | $5,894.00 | No | Operations |
| HATANAKA, LAURA R. | Director | 01-Mar-21 | 32 | 0.30 | PPOA review in response to PREPA attorney request for litigation | $536 | $160.80 | No | Operations |
| HATANAKA, LAURA R. | Director | 01-Mar-21 | 32 | 0.70 | Response to deposition letter | $536 | $375.20 | No | Operations |
| HATANAKA, LAURA R. | Director | 02-Mar-21 | 32 | 0.20 | Discussion of PPOA review with PREPA external counsel | $536 | $107.20 | No | Operations |
| HATANAKA, LAURA R. | Director | 02-Mar-21 | 32 | 0.70 | Response to the deposition request | $536 | $375.20 | No | Operations |
| HATANAKA, LAURA R. | Director | 02-Mar-21 | 32 | 0.60 | Cost estimate for PPOA/litigation responses | $536 | $321.60 | No | Operations |
| HATANAKA, LAURA R. | Director | 03-Mar-21 | 32 | 0.50 | Cost estimate for PPOA/litigation responses | $536 | $268.00 | No | Operations |
| HATANAKA, LAURA R. | Director | 04-Mar-21 | 32 | 0.70 | Contract/future litigation call | $536 | $375.20 | No | Operations |
| HATANAKA, LAURA R. | Director | 04-Mar-21 | 32 | 0.30 | Pull requested email for PREPA external counsel | $536 | $160.80 | No | Operations |
| HATANAKA, LAURA R. | Director | 05-Mar-21 | 32 | 0.50 | Discussion of the notice letter | $536 | $268.00 | No | Operations |
| HATANAKA, LAURA R. | Director | 08-Mar-21 | 32 | 1.80 | drafting of Notice letter | $536 | $964.80 | No | Operations |
| HATANAKA, LAURA R. | Director | 08-Mar-21 | 32 | 0.70 | call with attorneys regarding deposition | $536 | $375.20 | No | Operations |
| MORIN, PAMELA S. | Consultant | 04-Mar-21 | 32 | 0.70 | call on deposition with attorney | $374 | $261.80 | No | Operations |
| MORIN, PAMELA S. | Consultant | 05-Mar-21 | 32 | 0.30 | call with attorneys on deposition | $374 | $112.20 | No | Operations |
| NELSON, KETURAH | Managing Director | 02-Mar-21 | 32 | 0.50 | Subpoena notifications | $666 | $333.00 | No | Operations |
| NELSON, KETURAH | Managing Director | 04-Mar-21 | 32 | 1.00 | discussion of continued litigation work under contract | $666 | $666.00 | No | Operations |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | **Grand Total:** | 16.50 | | | $11,019.00 | | |

(1) For matter descriptions see Exhibit A

2018-P00091

### AGREEMENT FOR INDEPENDENT CONTRACTOR CONSULTING SERVICES

This **AGREEMENT FOR INDEPENDENT CONTRACTOR CONSULTING SERVICES** ("Agreement") is made this 7th day of December, 2017 ("Effective Date") by and between:

AS FIRST PARTY: The Puerto Rico Electric Power Authority ("PREPA"), a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act of May 2, 1941, No. 83, as amended, represented in this act by its Acting Executive Director, Mr. Justo Luis González Torres, of legal age, married, engineer, and resident of Juana Díaz, Puerto Rico.

AS SECOND PARTY: Filsinger Energy Partners, Inc. ("FEP") a corporation formed and existing under the laws of the State of Colorado, United States of America, with a principal place of business in 290 Fillmore St, Ste 4 Denver, CO 80206, herein represented by its Senior Managing Director, Mr. Todd W. Filsinger, of legal age, married, and resident of, Denver, Colorado, who has authority to enter into this Agreement by virtue of Corporate Resolution, dated December 29, 2016.

PREPA and FEP are individually referred to herein as a "Party" and together as the "Parties."

PREPA desires FEP, as an independent contractor, to perform certain work and professional services for PREPA ("Work") as outlined in the Professional Services Engagement Letter between the Parties, which Professional Services Engagement Letter is attached hereto and incorporated herein by reference.

In consideration of the above recitals and the covenants and agreements contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, each intending to be legally bound, agree as follows:

1. **BILLING AND PAYMENT.** FEP shall be paid on the basis of actual time and expenses at the hourly rates outlined in the Professional Services Engagement Letter; provided, that FEP personnel shall not be compensated for hours spent on non-working travel time. FEP shall provide PREPA with an itemized invoice for its fees and accrued expenses on a monthly basis. FEP shall allocate any invoiced fees between (i) activities undertaken outside of Puerto Rico and (ii) activities undertaken inside of Puerto Rico.

FEP shall submit monthly invoices within the first thirty (30) days following the period invoiced that will include a description of the services rendered and the number of hours spent by each person. Each invoice for professional services shall be itemized and must be duly certified by an authorized representative of FEP. PREPA reserves the right to conduct the audits it deems necessary and it will not be subject to finance charges regarding invoice payments subject to an audit. FEP will comply with the terms of the Compensation Order in invoicing its fees and PREPA shall pay FEP in accordance with the Compensation Order.

Invoices must also include a written and signed certification stating that no officer or employee of PREPA, and their respective subsidiaries or affiliates, will personally derive or obtain any benefit or profit of any kind from this Agreement, with the acknowledgment that invoices that do not include this certification will not be paid. This certification must read as follows:

"We certify under penalty of nullity that no public servant of the Puerto Rico Electric Power Authority, their respective subsidiaries or affiliates, will derive or obtain any benefit or profit of any kind from the contractual relationship which is the basis of this invoice. If such benefit or profit exists, the required waiver has been obtained prior to entering into the Agreement. The only consideration to be received in exchange for the services provided is the agreed-upon price that has been negotiated with an authorized representative of the Puerto Rico Electric Power Authority. The total amount shown on this invoice is true and correct. The services have been rendered, and no payment has been received."

As compensation for the Work, PREPA and FEP agree that the total amount to be paid under this Agreement shall not exceed Five Million Dollars ($5,000,000.00) (the "Agreement Amount"). However, nothing herein shall preclude the Parties from agreeing to increase said amount. PREPA will only pay for services already rendered before the submitted invoice date.

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 2

FEP shall be entitled to reimbursement for expenses incurred (including reasonable expenses of counsel, if any) in connection with or arising out of activities under or contemplated by, this Agreement.  Reimbursable expenses shall not exceed eight percent (8%) of the Agreement Amount and will be reimbursed by PREPA through the presentation of acceptable evidence for such expenses.  Reimbursement for air travel expenses is restricted to economy class fares, including restricted fares. All expenses shall be subject to PREPA's internal expense limitation and requirements, and will be reimbursed pursuant to the Compensation Order.

Any travel and lodging expense for which a reimbursement is requested shall be reasonable and necessary, and any extraordinary travel and lodging expenses shall be authorized in writing and in advance by PREPA.  PREPA will not reimburse expenses that do not comply with this provision.  Under no circumstances will expenses for alcoholic beverages be reimbursed.

FEP shall promptly notify PREPA when the billing under the present Agreement amounts to seventy five percent (75%) of the Agreement Amount.  Once this notification has been issued, FEP, in coordination with PREPA, will ensure that no services will be rendered in excess of the Agreement Amount, except when a written amendment is agreed upon by both Parties.  In addition, FEP shall present a reasonably itemized list of the remaining billable work that is in progress under the Agreement.

**Appendix A** attached hereto provides a schedule of the professionals initially assigned to this matter. Should FEP assign another person not included in **Appendix A** to attend to PREPA's matters pursuant to this Agreement, FEP shall promptly send PREPA an amended schedule to include such person's name and/or position, and request approval of the Governing Board for such amended schedule.  Such approval from PREPA shall not be unreasonably withheld.

All payments performed under this Agreement will be charged to PREPA's budget account number 01-4019-92320-556-673.

FEP shall not request any payment for the Work until it has been registered by PREPA at the Office of the Comptroller of Puerto Rico. PREPA undertakes to register this Agreement pursuant to such Act as soon as practicable after the execution of this Agreement.

2.   **TERM.**  This Agreement shall be effective as of the Effective Date and shall continue in effect through June 30, 2018 unless earlier terminated pursuant to the terms of Sections 3 or 4 or renewed by the written, mutual agreement of PREPA and FEP.

3.   **TERMINATION FOR CONVENIENCE.**  Either Party may terminate this Agreement for any reason upon 30 days advance written notice to the other Party. In the event of such a termination and notwithstanding any other provision of the Agreement to the contrary, FEP shall be entitled to payment for (a) the portion of Work completed through the date of termination and (b) any expenses incurred through the date of termination, as well as any other expenses that FEP is not able to reasonably cancel by the date of termination. PREPA shall be entitled to receive the Work generated by FEP through the date of termination. Time is of the essence in this Agreement. If either Party terminates this Agreement, such termination shall not affect FEP's right to receive all amounts owed by PREPA to FEP or the accrued rights of PREPA to receive the Work generated by FEP through the date of termination.

4.   **TERMINATION FOR DEFAULT.**  If either Party materially breaches any term or provision of this Agreement and does not remedy such material breach within 72 hours after receipt of a prior written notice of default, the non-breaching Party may immediately terminate this Agreement upon written notice, and such termination shall be effective as of the date of such written notice. Time is of the essence in this Agreement. If either Party terminates this Agreement, such termination shall not affect FEP's right to receive all amounts owed by PREPA to FEP, or the accrued rights of PREPA to receive the Work generated by FEP through the termination date.

5.   **ACCESS/CONDUCT OF WORK.**  PREPA will provide access to its facilities and such other cooperation in working with FEP, as FEP may from time to time reasonably determine to be necessary for FEP to render the Work; provided, such access and cooperation shall not interfere with PREPA's operations.  PREPA also will provide all

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 3

documentation, including, but not limited to, all information, records, personnel, documents, and reports, necessary for FEP to perform the Work.

FEP and its officers, directors, employees, and agents shall conduct the Work in accordance with all applicable governmental laws, rules, regulations, and good standard industry practices, in a professional manner, and in accordance with the terms of this Agreement.

6.   **FORECASTS AND RECOMMENDATIONS FOR THE WORK.** All forecasts and recommendations made by FEP as part of the Work are based on the information available to FEP and certain analyses and will be made in good faith. However, forecasts are not a representation, undertaking, or warranty as to any outcome or achievable result. PREPA acknowledges (a) FEP is not making any representation or warranty concerning the Work (other than as expressly set forth in Section 5) and (b) FEP is not providing either an expressed or implied warranty for the Work. In addition, PREPA acknowledges FEP is not guaranteeing or promising that certain forecasts or recommendations by FEP with respect to the Work will take place or occur, and PREPA will not hold FEP to any such guarantees or promises concerning the Work. EXCEPT FOR THE EXPRESS WARRANTIES IN SECTION 5, FEP DISCLAIMS ALL WARRANTIES, EITHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, UNDER THIS AGREEMENT OR THE APPLICABLE LAW, INCLUDING, BUT NOT LIMITED TO, THE WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY.

7.   **CONFIDENTIALITY.** In performing the Work and all terms of this Agreement, each Party may have access to, and may provide the other Party with information or documentation that constitutes, confidential information ("Confidential Information"). Confidential Information includes, but is not limited to, any non-public information about customers or potential customers (regardless of whether it is personally identifiable or anonymous information), business and marketing plans, employee information, systems, manuals, policies and procedures, and products and services, including the disclosure of the engagements covered under this Agreement.



From the Effective Date through 3 years following the end of the term of this Agreement or termination of this Agreement (whichever is earlier), each Party shall hold all such Confidential Information in strict confidence and disclose such Confidential Information only to those officers, directors, employees or agents whose duties reasonably require access to such information. If receiving Party proposes to disclose Confidential Information, including the engagements covered under this Agreement, to a third party in order to perform under the Agreement or otherwise, the receiving Party must first obtain the consent of the disclosing Party to make such disclosure and enter into a confidentiality agreement with such third party under which that third party would be restricted from disclosing, using or duplicating such Confidential Information in a manner consistent with the terms of this Section 7. Receiving Party may use such Confidential Information only in connection with its performance under this Agreement or as otherwise required by applicable law. Receiving Party shall protect such Confidential Information using the same degree of care, but no less than a reasonable degree of care, to prevent the unauthorized use or disclosure of such Confidential Information as receiving Party uses to protect its own confidential information. Confidential Information shall be returned to the disclosing Party or destroyed upon disclosing Party's request once the Work contemplated by this Agreement has been completed or upon termination of this Agreement (whichever is earlier).



Receiving Party shall establish and maintain commercially reasonable policies and procedures to ensure compliance with this Section 7. Such policies and procedures shall include administrative, technical, and physical safeguards that are commensurate with the scope of the Work and the sensitivity of the Confidential Information. Receiving Party's policies will ensure the security and confidentiality of Confidential Information, protect against any anticipated threats or hazards to the security or integrity of such information, and protect against unauthorized access to or use of such information that could result in substantial harm or inconvenience to disclosing Party. In the event of any incident of unauthorized access to the Confidential Information or breach of the confidentiality obligations set forth herein, the receiving Party shall solely bear all costs and expenses incurred in notifying persons and entities affected by such breach. For the avoidance of doubt, the receiving Party shall obtain the disclosing Party's prior written approval of any oral or written notice or other communication proposed to be made to persons and entities affected by such breach. Receiving Party acknowledges the unauthorized use or disclosure of any such Confidential Information is likely to cause irreparable injury to disclosing Party for which there is no adequate remedy at law. Accordingly, receiving Party

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 4

hereby consents to the entry of injunctive relief against it to prevent or remedy any breach of the confidentiality obligation described herein without the disclosing Party being required to post bond.

The foregoing restrictions shall not apply to any such Confidential Information that is: (a) known by the receiving Party at the time of disclosure or publicly known or becomes publicly known through no fault of the receiving Party; (b) received from a third party that, to the knowledge of the receiving Party, is free to disclose the information to the receiving Party; (c) independently developed by the receiving Party without the use of information received from the disclosing Party; (d) communicated to a third party with the express prior written consent of the disclosing Party; or (e) either (i) required to be disclosed by law or pursuant to an order of court or other competent government or regulatory authority or (ii) disclosed due to a bona fide settlement, arbitration, or pre-litigation request; provided that in each case that the receiving Party notify the disclosing Party in writing of such disclosure as soon as commercially possible, and the receiving Party must use all commercially reasonable efforts to prevent or limit such disclosure and to ensure that any person to whom the Confidential Information is disclosed is aware of the confidential nature of the information and takes steps to prevent further disclosure of the same. The receiving Party shall indemnify the disclosing Party against any losses arising out of the unauthorized use or redistribution by a person of any Confidential Information provided pursuant to this Section 7.

Notwithstanding anything contrary in this Section 7, FEP may share Confidential Information with (i) AAFAF, (ii) representatives of the Commonwealth and its agencies and instrumentalities, and (iii) with the FOMB under a common interest privilege, or as PREPA's Title III representative. In furtherance of Mr. Filsinger's duties as CFA, Mr. Filsinger may also share Confidential Information with other stakeholders and parties in interest in his business judgment, provided that a confidentiality agreement is entered into between PREPA and such stakeholder or party in interest which Mr. Filsinger views as commercially reasonable.



8.   **INDEPENDENT CONTRACTOR.** PREPA and FEP agree that FEP's status hereunder, and the status of any agents, employees and subcontractors engaged by FEP, shall be that of an independent contractor only and not that of an employee, agent, director or officer of PREPA nor shall they be considered a public servant of PREPA or the Commonwealth of Puerto Rico. FEP, its subcontractors, and their officers, directors, and employees are not agents or employees of PREPA and have no authority to obligate or bind PREPA in any way; provided, however, Mr. Filsinger shall have the authority to bind PREPA, solely in his capacity as the CFA.

Consistent with the foregoing, PREPA and FEP acknowledge and agree that neither the role of CFA performed by Todd W. Filsinger, nor his role as Senior Managing Director and equity holder of FEP will render the certification required under Section 1 of this Agreement false or inaccurate,

FEP, its subcontractors, and their officers, directors, and employees are not eligible for PREPA's employee benefit programs, such as (without limitation) vacations, sick leave, retirement benefits and others because of its condition as an independent contractor. FEP is fully and solely responsible for all taxes, assessments, penalties, fines, and interest relating to wages and benefits paid to FEP's employees under this Agreement, pursuant to all federal, state and local laws, including required withholding from wages of employees, regardless of the characterization of those employees by the Parties, administrative agencies, or the courts.

9.   **NON-EXCLUSIVE NATURE OF AGREEMENT.** Nothing contained in this Agreement shall be construed as creating a partnership, joint venture, or similar relationship between the Parties. This Agreement is non-exclusive in nature, and FEP may perform other similar work for other entities or groups or individuals, in the sole and absolute discretion of FEP.

10. **DELAYS.** If FEP is unable to perform any Work by an act beyond FEP's reasonable control, FEP will give written notice to the PREPA as soon as practicable and such delay in Work shall not be deemed a material breach of this Agreement; provided that the foregoing shall not otherwise limit any right of PREPA to terminate the Agreement or specific Work pursuant to its rights in Section 2.

Professional Services Agreement -- Filsinger Energy Partners, Inc.
Page 5

11. **LIMITATION OF LIABILITY.** NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE WORK, WHETHER SUCH DAMAGES ARE FORESEEABLE, WHETHER SUCH PARTY WAS ADVISED OF SUCH LOSSES OR DAMAGES IN ADVANCE, AND WHETHER SUCH LIABILITY IS IN CONTRACT, TORT (INCLUDING NEGLIGENCE, BREACH OF STATUTORY DUTY OR OTHERWISE), AND BOTH PARTIES SPECIFICALLY AND EXPRESSLY WAIVE, ANY SUCH DAMAGES. THE PARTIES AGREE, TO THE FULLEST EXTENT PERMITTED BY LAW, TO LIMIT THE AGGREGATE LIABILITY OF FEP, ITS PARENT, AFFILIATES AND SUBCONTRACTORS, AND ITS AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS (THE "FEP PARTIES" AND INDIVIDUALLY, A "FEP PARTY"), TO THE COMPENSATION RECEIVED BY FEP FOR THE WORK PERFORMED PURSUANT TO THIS AGREEMENT (THE "LIABILITY CAP"). THIS LIMITATION OF LIABILITY IN FAVOR OF FEP SHALL APPLY TO ALL SUITS, CLAIMS, ACTIONS, LOSSES, COSTS AND DAMAGES OF ANY NATURE, INCLUDING ANY CLAIMED LEGAL FEES AND EXPENSES, ARISING FROM OR RELATED TO THIS AGREEMENT OR THE WORK AND WITHOUT REGARD TO THE LEGAL THEORY UNDER WHICH SUCH LIABILITY IS IMPOSED. IN THE EVENT EITHER PARTY ASSERTS A CLAIM, ACTION, PROCEEDING, LOSSES, COSTS, OR DAMAGES WAIVED IN THIS SECTION 11, THE OTHER PARTY MAY ASSERT THIS SECTION 11 AS A DEFENSE AND SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS INCURRED IN DEFENDING AGAINST SUCH CLAIM, ACTION, PROCEEDING, LOSS, COST, OR DAMAGE.

THE FEP PARTIES SHALL HAVE NO LIABILITY FOR ANY CLAIMS ARISING FROM, UNDER OR IN CONNECTION WITH SAFETY OR OPERATIONAL PROCEDURES.



THE FEP PARTIES SHALL NOT BE LIABLE TO PREPA OR ANY PARTY ASSERTING A CLAIM ON BEHALF OF PREPA, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL JUDGMENT TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH OR INTENTIONAL MISCONDUCT OF FEP. THE FEP PARTIES SHALL NOT BE LIABLE FOR CONSEQUENTIAL DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THIS LIMITATION OF LIABILITY IN FAVOR OF THE FEP PARTIES SHALL APPLY TO ALL SUITS, CLAIMS, ACTIONS, LOSSES, COSTS AND DAMAGES OF ANY NATURE BY ANY PARTY, INCLUDING ANY CLAIMED LEGAL FEES AND EXPENSES, ARISING FROM OR RELATED TO THIS AGREEMENT OR THE WORK AND WITHOUT REGARD TO THE LEGAL THEORY UNDER WHICH SUCH LIABILITY IS IMPOSED. THE LIABILITY CAP IS THE TOTAL LIMIT OF THE FEP PARTIES' AGGREGATE LIABILITY FOR ANY AND ALL CLAIMS OR DEMANDS BY ANYONE PURSUANT TO THIS AGREEMENT, INCLUDING LIABILITY TO PREPA, TO ANY OTHER PARTY MAKING CLAIMS RELATING TO THE WORK PERFORMED BY FEP PURSUANT TO THIS AGREEMENT. THIS PROVISION SHALL SURVIVE THE EXPIRATION OR TERMINATION OF THIS AGREEMENT.

12. **USE OF THE WORK.** PREPA shall not assert any suit, claim, action, or proceeding against FEP, its patent, affiliates, and subcontractors and its and their respective directors, officers, employees, or agents for any loss, cost, or damage loss sustained by PREPA arising out of or resulting from the Work or PREPA's use of the Work.

13. **DEFENSE, INDEMNIFICATION, AND SUBROGATION.** To the fullest extent permitted by the applicable law, PREPA shall defend, indemnify and hold harmless FEP, its patent, affiliates, and subcontractors and its and their respective directors, officers, employees, or agents ("Indemnitees") from and against any and all claims, liabilities, liens, costs, damages, citations, penalties, fines, attorneys' fees, losses, and expenses of whatever nature ("Indemnified Claim") arising out of or resulting from the performance of or failure to perform the Work, regardless of whether or not the Indemnified Claim is caused in part by one or more Indemnitees. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity, which would otherwise exist as to any Indemnitee. Such obligation shall not apply where the Indemnified Claim is caused by the gross negligence or intentional misconduct of the Indemnitees. PREPA's defense and indemnity obligations shall survive the end of the term of the Agreement or termination of the Agreement (whichever is earlier).



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 6

Notwithstanding any provision to the contrary in the applicable law, including any statute of limitations, an Indemnitee's claim for indemnification shall not accrue, and any applicable statute of limitations shall not begin to run, until Indemnitee's payment of a final judgment, arbitration award, or settlement arising out of any Indemnified Claim.

With respect to any matter to which PREPA's defense and indemnity obligations apply, the Indemnitee shall have the right to assume its own defense if, in its sole discretion, it determines that the defense being provided by PREPA is inadequate or where PREPA has a conflict of interest in defending the Indemnified Claim. If the Indemnitee assumes its own defense, or if the Indemnitee incurs expenses or fees in connection with a defense undertaken by PREPA, PREPA shall reimburse the Indemnitee for all reasonable attorneys' fees and other expenses related to the preparation and defense obligations to the Indemnitee, such payment to be made within 30 calendar days after PREPA's receipt of a statement of such fees and expenses. PREPA's obligations to defend the Indemnitee shall be independent of and in addition to PREPA's indemnity obligations and shall apply to the fullest extent permitted by law.

PREPA waives all rights against the Indemnitees for the recovery of losses, costs, or damages to the extent these losses, costs, or damages are covered by commercial general liability, commercial umbrella liability, business auto liability, workers compensation, employers' liability insurance, and any other insurance to be maintained pursuant to this Agreement.

In addition to the above indemnification, if Todd Filsinger is deemed by a court of competent jurisdiction an officer, director, employee or fiduciary of PREPA, PREPA hereby covenants and agrees to provide Todd Filsinger the most favorable indemnification provided by PREPA to its officers, directors, employees or fiduciaries, whether under PREPA's charter or by-laws, by contract or otherwise.

14. **OWNERSHIP OF INFORMATION.** All reports, recommendations, specifications, data or other information prepared or furnished by FEP to PREPA or prepared in performance of the Work shall be the sole and exclusive property of PREPA and may be used by PREPA as PREPA deems appropriate in any other fashion, or any other client or customer, and on any other project. Through this Agreement, PREPA grants to FEP a non-exclusive and non-transferable license to such reports, recommendations, specifications, data, and other information to the extent necessary for FEP's performance under this Agreement and the Work.

15. **SUBCONTRACT.** FEP shall not subcontract the Work to be provided under this Agreement, or contract firms or other services without the prior written authorization of the Executive Director of PREPA or any of its authorized representatives.

16. **CONFLICT CERTIFICATION.** FEP acknowledges that in executing the Work, it has an obligation of complete loyalty towards PREPA, including having no adverse interests. "Adverse interests" means representing clients who have or may have interests that are contrary to PREPA, but does not include rendering services to such clients that are unrelated to this engagement. This duty includes the continued obligation to disclose to PREPA all circumstances of its relations with clients and third parties which would result in an adverse interest, and any adverse interest which would influence FEP when executing the Agreement or while it is in effect. PREPA acknowledges FEP is a firm having multiple financial institutions and investors as clients, and with or without FEP's knowledge, any of such clients may from time to time acquire, hold or trade interests adverse to PREPA or its affiliates. FEP representations of those clients in unrelated matters shall not be deemed conflicts or undue influences on FEP or adverse interests held by FEP within the meaning of this Agreement.

Conduct by one of FEP's partners, members, directors, executives, officers, associates, clerks or employees shall be imputed to FEP for purposes of this prohibition. FEP shall endeavor to avoid even the appearance of the existence of a conflict of interest that has not otherwise been waived.

FEP acknowledges the power of the Governing Board to oversee the enforcement of the prohibitions established herein. If the Governing Board determines the existence or the emergence of adverse interest with FEP, he shall inform FEP of such findings in writing and his intentions to terminate the Agreement within a fifteen (15) day term.

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 7

Within such term, FEP can request a meeting with the Governing Board to present its arguments regarding the alleged conflict of interest. This meeting shall be granted in every case. If such meeting is not requested within the specified term, or if the controversy is not settled satisfactorily during the meeting, this Agreement shall be terminated at the end of said fifteen (15) day period.

FEP certifies that at the time of the execution of this Agreement, it does not have adverse interests that are in conflict with PREPA and that it does not maintain any claim, judicial or otherwise, against the Government of Puerto Rico, its agencies or instrumentalities. If such conflicting interests arise after the execution of this Agreement, FEP shall, to the extent consistent with its obligations to other clients, notify PREPA immediately. If FEP determines it does represent anyone who has adverse interests that are in conflict with PREPA, FEP shall notify PREPA and take all necessary and sufficient measures to safeguard PREPA's interests and ensure its Confidential Information remains confidential. Any employee of FEP representing anyone with adverse interests to PREPA shall be restricted access to any and all information regarding PREPA and FEP shall take all necessary measures to ensure the proper procedures are in place to protect PREPA's interests.

17. **CERTIFICATION OF ACT NO. 84 AND GOVERNMENT ETHICS LAW, ACT NO. 1.** FEP certifies that it has received copies of (a) Act No. 84, enacted on June 18, 2002, as amended, which establishes the Code of Ethics for Contractors, Suppliers and Applicants for Economic Incentives of the Executive Agencies of the Government of the Commonwealth of Puerto Rico and (b) the Government Ethics Law, Act No. 1, enacted on January 3, 2012, as amended from time to time, and its implementing regulations. FEP agrees that it, as well as all of its personnel providing services under this Agreement, will comply with such acts.



18. **PUBLIC OFFICIALS' INTEREST IN THE AGREEMENT.** The Parties hereby declare that, to the best of their knowledge, no public officer or employee of the Commonwealth of Puerto Rico, its agencies, instrumentalities, public corporations or municipalities or employee of the Legislative or Judicial branches of the Government has any direct or indirect interest in the present Agreement.

19. **FEP CERTIFICATION REGARDING FEP EMPLOYEES.** FEP certifies that neither it nor any of its partners, directors, executives, officers, and employees receives salary or any kind of compensation for the delivery of regular services by appointment in any agency, instrumentality, public corporation, or municipality of the Commonwealth of Puerto Rico.

20. **FEP CERTIFICATION REGARDING NO OUTSTANDING TAX OBLIGATIONS TO PUERTO RICO.** FEP certifies that at the execution of this Agreement it does not have, and has not had, to submit income tax returns, or Sales and Use tax returns, in Puerto Rico during the past five (5) years, and that it has no outstanding debts with the Commonwealth of Puerto Rico for income taxes, real or chattel property taxes.

FEP also certifies it does not have outstanding debts regarding its treatment of unemployment insurance premiums, workers' compensation payments, Social Security for chauffeurs in Puerto Rico or the Administration for the Sustenance of Minors (known by its Spanish acronym as ASUME).

Accordingly, all Government issued certificates that are applicable and that confirm the aforementioned information including, but not limited to those certifications issued by the Treasury Department, the Municipal Revenues Collection Center, the State Department, the Administration for the Sustenance of Minors and the Department of Labor and Human Resources of Puerto Rico, will be submitted by FEP within the fifteen days after the execution of this Agreement or according to the Executive Order OE-2017-053 that provides to all government entities 90 days after the state of emergency ceases to require all documentation.

It is expressly acknowledged that the certifications provided by FEP, pursuant to this Section 20, are essential conditions of this Agreement, and if these certifications are incorrect, PREPA shall have sufficient cause to terminate this Agreement immediately.

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 8

21. **TAX PAYMENTS.** Except as set forth in the next paragraph, no withholding or deductions shall be made from payments to FEP for income tax purposes. FEP shall be responsible for paying: (i) all applicable income taxes in accordance with any and all applicable income tax laws, and (ii) any corresponding contributions to the Social Security Administration. Payments due to FEP shall be paid into a bank account in the United States designated to FEP.

Income tax withholding – Section 1062.11 of the Puerto Rico Internal Revenue Code of 2011, as amended (the "PR Code"), provides for a 29% income tax withholding on payments of income generated in Puerto Rico by a corporation or partnership that is not engaged in a trade or business in Puerto Rico. By its terms, said withholding does not apply to corporations and partnerships that are engaged in a trade or business in Puerto Rico. Regulations 5901 issued by the Puerto Rico Treasury Department on December 31, 1998 (the "Regulations") provide further guidance with regards to this withholding. In particular, it provides under Article 1150-2 that a withholding agent will not be required to withhold when the taxpayer can provide written notification that it is not subject to this withholding, with an explanation of why the withholding does not apply and the address of the taxpayer's office or place of business in Puerto Rico signed by an officer of the corporation or by the managing partner of the partnership. The Regulations referred to in this paragraph are in full force and effect under the provisions of Section 6091.01 of the PR Code. Based on Section 1062.11 of the PR Code and Regulation 1150-2. If FEP will not provide the certification of the Puerto Rico Treasury Department, PREPA will be made the withholding of the 29% regarding the fees to be paid under this Agreement.

Notwithstanding the foregoing, PREPA shall deduct and withhold one point five percent (1.5%) of the gross amounts paid under this Agreement, in accordance with Article 1 of Act No. 48 of June 30, 2013. PREPA shall forward such amounts to the Department of Treasury of Puerto Rico.

During the term of this Agreement, any change in law, including, but not limited to, changes in applicable tax law, which causes an increase in FEP's costs when providing the services, shall be FEP's responsibility.

22. **NO DISCRIMINATION.** FEP agrees that it will not discriminate against any employee or applicant for employment on account of race, color, religion, sex, sexual orientation, disability or national origin.

23. **CFA APPROVAL RIGHTS OVER CONTRACTS IN EXCESS OF $2 MILLION.** All contracts or series of related contracts, inclusive of any amendments or modifications, with an aggregate expected value of $2 million or more must be submitted to the CFA for its approval before execution, unless otherwise provided by PREPA's Contracting and Procurement Procedures Protocol (once such protocols are adopted and implemented).

24. **INSURANCE.** FEP shall secure and maintain in full force and effect, during the term of this Agreement as provided herein policies of insurance covering all operations engaged in under this Agreement as follows: (1) FEP shall provide Workmen's Compensation Insurance as required by the Workmen's Compensation Act of the Commonwealth of Puerto Rico. FEP shall also be responsible for compliance with said Workmen's Compensation Act by all its subcontractors, agents and invitees, if any, or shall certify that such subcontractors, agents and invitees have obtained said policies on their own behalf. FEP shall furnish to PREPA a certificate from the Puerto Rico's State Insurance Fund showing that all personnel employed in the work are covered by the Workmen's Compensation Insurance, in accordance with this Agreement. (2) FEP shall provide a Commercial General Liability Insurance with limits of $1,000,000 per occurrence and $1,000,000 aggregate. (3) FEP shall provide a Professional Liability Insurance with limits of $1,000,000 per claim and $1,000,000 aggregate.

The Commercial General Liability Insurance required under this Agreement, shall be endorsed to include: (a) As additional Insured: Puerto Rico Electric Power Authority, PO Box 364267, San Juan, PR 00936-4267; (b) A thirty (30) day cancellation or nonrenewable notice to be sent to the above address by FEP.

All required policies of insurance shall be in a form acceptable to PREPA and shall be issued only by insurance companies authorized to do business in Puerto Rico. FEP shall furnish a certificate of insurance in original signed by an authorized representative of the insurer in Puerto Rico, describing the acquired coverage.

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 9

FEP may, at its option, purchase a separate D&O Insurance or similar insurance policy that will cover FEP employees and agents only. The cost of the policy shall be invoiced to PREPA as an out-of-pocket expense as set forth in this Agreement (but such expense shall not count against FEP's expense cap).

25. **GENERAL PROVISIONS.**

(a)  Governing Law; Venue.  THIS AGREEMENT AND ANY CLAIM, COUNTERCLAIM OR DISPUTE OF ANY KIND OR NATURE WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT OR THE WORK, WHETHER DIRECT OR INDIRECT ("CLAIM"), SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE COMMONWEALTH OF PUERTO RICO. NO CLAIM MAY BE COMMENCED, PROSECUTED OR CONTINUED IN ANY COURT OTHER THAN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO, WHICH COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF ANY CLAIM. PREPA AND FEP CONSENT TO THE EXCLUSIVE PERSONAL JURISDICTION OF SUCH COURT AND PERSONAL SERVICE WITH RESPECT THERETO. FEP AND PREPA WAIVE ALL RIGHT TO TRIAL BY JURY FOR ANY CLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE).

(b)  No Waiver.  The failure of either Party to insist, in any one or more instances, upon the performance of any of the terms of the Agreement shall not be construed as a waiver or relinquishment of such term as respects further performance.



(c)  Third-Party Beneficiaries.  AAFAF, in its capacity as fiscal agent for PREPA, is a third-party beneficiary to this Agreement and is entitled to rights and benefits hereunder and may enforce the provisions hereof as if it was PREPA. Except the foregoing, the Agreement is solely for the benefit of the Parties and shall not confer any rights, remedies or benefits upon anyone other than the Parties and their successors and assigns. In no event shall FEP incur any third party liability or responsibility by virtue of the Agreement or performance of the Work.

(d)  For purposes of this Agreement, tax debt shall mean any debt that FEP, may have with the Commonwealth of Puerto Rico for income taxes, excise taxes, real or chattel property taxes, including any special taxes levied, license rights, tax withholdings for payment of salaries and professional services, taxes for payment of interests, dividends and income to individuals, corporations and non-resident partnerships, for payment of interests, dividends and other earnings shares to residents, unemployment insurance premiums, workers' compensation payments, and Social security to chauffeurs.

(e)  Severable.  Each provision of this Agreement is intended to be severable, and if any portion of this Agreement is held invalid, illegal, unenforceable, or void for any reason, the remainder of this Agreement will remain in full force and effect. Any portion of the Agreement held to be invalid, unenforceable, or void will, if possible, be deemed amended or reduced in scope, but such amendment or reduction in scope will be made only to the minimum extent required for purposes of maximizing the validity and enforceability of this Agreement.

(f)  Mutual Preparation.  The Parties mutually contributed to the preparation of and have had the opportunity to review and revise this Agreement. Accordingly, no provision of this Agreement shall be construed against any Party to this Agreement because that Party, or its counsel, drafted or assisted in the drafting of the provision. This Agreement and all of its terms shall be construed equally as to both FEP and PREPA.



(g)  Headings.  Headings in this Agreement are for convenience only and will not be considered in the interpretation of this Agreement.

(h)  Notices.  Any notice or communication required or permitted to be given by a Party hereunder will be in writing and made by hand delivery, electronic transmission, facsimile transmission (with confirmation), or overnight delivery with a corresponding email, or at such other addresses as the Party may specify in writing. Any such notice or written communication will be deemed duly received (i) on the date of hand delivery, electronic transmission or transmission by facsimile (unless sent after 5 p.m. Eastern Standard time, in which case on the next business day) or (ii) the next

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 10

business day after sent by overnight delivery service. All notices or written communications hereunder shall be delivered to the addresses, facsimile numbers or email addresses set forth below:

if to FEP, to:

Filsinger Energy Partners, Inc.
290 Fillmore St, Ste 4
Denver, CO 80206
Attention: Controller
Email: accounts@filsingerenergy.com

if to PREPA, to:

Puerto Rico Electric Power Authority
PO Box 364267
San Juan, Puerto Rico 00936-4267
Attention: Mr. Justo L. González Torrez
Email: justo.gonzález@prepa.com

(i) Representation. Each Party represents it has authority to enter into this Agreement and to perform all terms of this Agreement, and neither the execution of this Agreement, nor the performance of any work under this Agreement will violate any agreement or obligation of any Party or violate any statute, regulation, or court order.



(j) Assignment. Neither Party may assign this Agreement or any rights or obligations hereunder without the prior written consent of the other Party.

(k) Mandatory Clauses Pursuant Act 3-2017 and Circular Letter 141-17 dated January 30, 2017.

(1) Both Parties acknowledge and agree that the contracted services herein may be provided to another entity of the Executive Branch which enters into an interagency agreement with PREPA or by direct disposition of the Secretariat of Government. These services will be performed under the same terms and conditions in terms of hours of work and compensation set forth in this Agreement. For the purpose of this clause, the term "entity of the Executive Branch" includes all agencies of the Government of Puerto Rico, as well as public instrumentalities, public corporations and the Office of the Governor.

(2) The Secretariat of the Executive Branch shall have the power to terminate this Agreement at any time.

(l) Act No. 458-2000, as amended. FEP certifies that, as of the effective date, neither FEP nor any of its chairperson, vice chairperson, directors, executive director, any member of its board of directors or board of officials, or any person performing equivalent functions for FEP; or its subsidiaries or alter egos has pled guilty to, has been convicted of, or is under judicial, legislative, or administrative investigation in Puerto Rico, the United States of America, or any other country for any of the crimes enumerated in Act of December 29, 2000, No. 458, as amended, 3 L.P.R.A. §928-928i, or its equivalent for purposes of this Act 458. In accordance with Article 6 of Act 458-2000, as amended, FEP acknowledges that its conviction or guilty plea for any of the crimes as enumerated in Article 3 of such Act shall entail, in addition to any other applicable penalty, the automatic rescission of this Agreement. In addition, but only to the extent required by Act 458-2000, PREPA shall have the right to demand the reimbursement of payments made pursuant to this Agreement that directly result from the committed crime.

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 11

(m) <u>Counterparts and Copies.</u> This Agreement may be executed in separate counterparts and upon execution by all Parties such counterparts will constitute one and the same instrument. The Parties further agree that electronic scans, photocopies or faxed copies of this Agreement and the signatures herein shall be as valid and effective as originals.

(n) <u>Interpretation.</u> Unless a clear contrary intention appears, (i) the singular includes the plural and vice versa; (ii) "include" or "including" means including without limiting the generality of the description preceding such term; (iii) the word "or" is not exclusive; (iv) the phrase "this Agreement" and the terms "hereof," "herein," "hereby," and derivatives or similar words refer to this entire Agreement; and (v) reference to any document, law, or policy means such document, law, or policy as amended from time to time.

(o) <u>Entire Agreement.</u> This Agreement is the final, complete, and exclusive statement of the Agreement between FEP and PREPA and supersedes all proposals, prior agreements, and all other communications between FEP and PREPA, oral or in writing, relating to the subject matter of the Agreement. Neither FEP, nor PREPA shall be bound by any terms, conditions, statements, warranties, or representations, oral or written, not contained in this Agreement. In entering into this Agreement, FEP and PREPA specifically and expressly disclaim any reliance upon any terms, conditions, statements, warranties, or representations, oral or written, made by the FEP and PREPA, together with any the FEP's and PREPA's predecessors, successors, assigns, shareholders, officers, directors, agents, attorneys, and personal representatives, that are not contained in this Agreement.



IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed and delivered as of the Effective Date.

**Filsinger Energy Partners, Inc.**

By: *Todd W. F*

Name:  Todd W. Filsinger
Title:    Senior Managing Director
EIN:  27-2567004

**Puerto Rico Electric Power Authority**

By: *Justo J. Gonzalez Torres*

Name:  Justo L. González Torres
Title:    Acting Executive Director
EIN:  66-0433747



## APPENDIX A

**Schedule of Filsinger Energy Partners Professionals who may be Assigned to this Matter**

| Professional | Title |
|---|---|
| Todd W. Filsinger | Senior Managing Director |
| Gary Germeroth | Managing Director |
| Stephen Kopenitz | Managing Director |
| Paul Harmon | Managing Director |
| Dave Andrus | Director |
| Norm Spence | Director |
| Carl Thomason | Director |
| Robert Monday | Director |
| Timothy Wang | Director |
| A. Scott Davis | Director |
| Mike Green | Director |
| Don Chambless | Managing Consultant |
| Nathan Pollak | Managing Consultant |
| Laura Hatanaka | Managing Consultant |
| Mashiur Bhuiyan | Managing Consultant |
| Samuel Schreiber | Managing Consultant |
| Jill Kawakami | Managing Consultant |
| L. Ben Russo | Managing Consultant |
| Sean Costello | Managing Consultant |
| Pamela Morin | Consultant |

### Discounted Rate Table (subject to biannual adjustment)



| Title | Discounted Hourly Rate |
|---|---|
| Senior Managing Director | $738 - $842 |
| Managing Director | $558 - $765 |
| Director | $455 - $612 |
| Managing Consultant | $365 - $549 |
| Consultant | $293 - $374 |
| Analyst and Technical Writer | $203 - $297 |

Hourly rates shown have been discounted by 10%, as described in Filsinger Energy Partners' Professional Services Engagement Agreement.

1



**FILSINGER ENERGY**
P A R T N E R S

November 29, 2017

Mr. Ernesto Sgroi
Chairman, PREPA Governing Board
Puerto Rico Electric Power Authority (via email)
ernesto@sgroi.net

**RE: Professional Services Engagement Agreement**

Dear Mr. Sgroi:

Filsinger Energy Partners ("FEP") is pleased to submit this proposal for the Puerto Rico Electric Power Authority ("PREPA") to designate Todd W. Filsinger as the Chief Financial Advisor ("CFA"). With the approval of the PREPA Governing Board (the "Governing Board") and after taking into account the existing resources, FEP may also provide additional personnel to support the engagement on the terms and conditions set forth herein.

**Scope of Work**



Mr. Filsinger and FEP will serve as CFA. Mr. Filsinger may be assisted in his duties by personnel from FEP so long as such additional personnel are approved by the Governing Board. Mr. Filsinger and FEP collectively will perform the duties of the CFA.

The CFA shall report to the Governing Board and shall:

- be responsible for the financial oversight, financial management and reporting of PREPA including the development of any budgets;

- be responsible for the cash management of PREPA including, without limitation, reviewing and approving (or establishing processes for review and approval of) expenditures and transfers of funds;

- develop plans for, recommend and, together with the Executive Director, implement operational reforms;

- work with the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") on restructuring, fiscal and transformation plans and related budgets;

- be responsible for PREPA for any issues related to the pending Title III process in which PREPA's management team is involved;

www.filsingerenergy.com

TEL 303.974.5884

290 FILLMORE ST, STE 9
DENVER CO 80206

*TCO 362790965v3*



- participate in the working group process regarding the transformation and fiscal plans and any related budgets;

- implement any approved transformation plan and/or certified fiscal plan;

- work with the Procurement Compliance Officer and Puerto Rico's Governor Authorized Representative ("GAR") on federal funding and overseeing compliance with the GAR's requirements or other requirements related to the federal funding;

- interface with the federal entities, the Procurement Compliance Officer and the GAR regarding grants and other reimbursements;

- recommend to the Governing Board personnel changes and changes to the organizational structure;

- communicate with constituents and other stakeholders including the Government of Puerto Rico and the Financial Oversight and Management Board (the "FOMB");

- work with the Executive Director on the emergency restoration and repair efforts to the extent requested by the Governing Board or the Executive Director; and

- perform such other duties as are agreed to by the Governing Board and the CFA.



Mr. Filsinger and the related FEP staff and employees will be on-site in Puerto Rico as necessary and will be provided space at PREPA's offices as throughout the engagement. Notwithstanding the foregoing, Mr. Filsinger, FEP and any FEP staff or employee shall have no responsibility for the implementation of safety or operational procedures relating, or connected in any way, to recovery efforts.

Schedule

This Agreement shall have an initial term from the Effective Date (as defined in the Agreement for Independent Contracting Consulting Service attached hereto) through June 30, 2018 and may be renewed by written, mutual agreement of PREPA and FEP.

**Commercial Terms**

FEP will conduct the above-described scope of work at the rates included in the table below discounted by 10% (subject to PREPA's timely payment of FEP's prior invoices in accordance with the Compensation Order (defined below)). Expenses will be billed at the costs actually incurred. Fees and expenses shall be billed and paid as outlined in the Agreement for Independent Contractor Consulting Services (attached hereto and incorporated herein by

2



reference) and pursuant to the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* that was entered in PREPA's Title III Case [Case No. 17-04780; ECF No. 252] (the "Compensation Order").

Rate Table (subject to biannual adjustment)

| Title | Hourly Rate |
|---|---|
| Senior Managing Director | $820 - $935 |
| Managing Director | $620 - $850 |
| Director | $505 - $680 |
| Managing Consultant | $405 - $610 |
| Consultant | $325 - $415 |
| Analyst and Technical Writer | $225 - $330 |

Additional Terms

This Professional Services Engagement Letter, together with the Agreement for Independent Contractor Consulting Services, make up the entire understanding and agreement between the Parties ("Agreement") and shall govern the transaction between the Parties. All capitalized terms used in this Professional Services Engagement Letter but not defined herein shall have the same meaning as set forth in the Agreement for Independent Contractor Consulting Services.

(Remainder of this Page Intentionally Left Blank)



## Summary

If you accept this Agreement, please sign and date below.
not hesitate to contact me directly at (303) 884-5948.

Sincerely,

Todd Filsinger
Senior Managing Director

Accepted:                                          Accepted:

Ernesto Sgroi                                      Todd Filsinger
Chairman, PREPA Governing Board                    Senior Managing Director
                                                   Filsinger Energy Partners
Date:                                              Date:

*TCO 362798965v3*



**Summary**

If you accept this Agreement, please sign and date below.  If you have any questions, please do not hesitate to contact me directly at (303) 884-5948.

Sincerely,

Todd Filsinger
Senior Managing Director

Accepted:                                                    Accepted:

Ernesto Sgroi
Chairman, PREPA Governing Board                              Todd Filsinger

Date:

*not signature Todd's Initials Only*

TCO 362798965v3



## APPENDIX A

**Schedule of Filsinger Energy Partners Professionals who may be Assigned to this Matter**

| Professional | Title |
|---|---|
| Todd W. Filsinger | Senior Managing Director |
| Gary Germeroth | Managing Director |
| Stephen Kopenitz | Managing Director |
| Paul Harmon | Managing Director |
| Dave Andrus | Director |
| Norm Spence | Director |
| Carl Thomason | Director |
| Robert Monday | Director |
| Timothy Wang | Director |
| A. Scott Davis | Director |
| Mike Green | Director |
| Don Chambless | Managing Consultant |
| Nathan Pollak | Managing Consultant |
| Laura Hatanaka | Managing Consultant |
| Mashiur Bhuiyan | Managing Consultant |
| Samuel Schreiber | Managing Consultant |
| Jill Kawakami | Managing Consultant |
| L. Ben Russo | Managing Consultant |
| Sean Costello | Managing Consultant |
| Pamela Morin | Consultant |

### Discounted Rate Table (subject to biannual adjustment)

| Title | Discounted Hourly Rate |
|---|---|
| Senior Managing Director | $738 - $842 |
| Managing Director | $558 - $765 |
| Director | $455 - $612 |
| Managing Consultant | $365 - $549 |
| Consultant | $293 - $374 |
| Analyst and Technical Writer | $203 - $297 |

Hourly rates shown have been discounted by 10%, as described in Filsinger Energy Partners' Professional Services Engagement Agreement.

1



## APPENDIX A

**Schedule of Filsinger Energy Partners Professionals who may be Assigned to this Matter**
Updated: January 12, 2018

| Professional | Title |
|---|---|
| Todd W. Filsinger | Senior Managing Director |
| Gary Germeroth | Managing Director |
| Stephen Kopenitz | Managing Director |
| Paul Harmon | Managing Director |
| Dave Andrus | Director |
| Norm Spence | Director |
| Robert Monday | Director |
| Timothy Wang | Director |
| A. Scott Davis | Director |
| Mike Green | Director |
| Nathan Pollak | Director |
| Don Chambless | Managing Consultant |
| Laura Hatanaka | Managing Consultant |
| Mashiur Bhuiyan | Managing Consultant |
| Samuel Schreiber | Managing Consultant |
| Jill Kawakami | Managing Consultant |
| L. Ben Russo | Managing Consultant |
| Sean Costello | Managing Consultant |
| Matt Lee | Managing Consultant |
| Chad Balken | Managing Consultant |
| Pamela Morin | Consultant |
| Allison Horn | Consultant |

### PUERTO RICO ELECTRIC POWER AUTHORITY

### FIRST AMENDMENT
### PROFESSIONAL SERVICES AGREEMENT
### 2018-P00091A

### APPEAR

AS FIRST PARTY:   The Puerto Rico Electric Power Authority ("PREPA"), a public

corporation and government instrumentality of the Commonwealth of Puerto Rico,

created by Act of May 2, 1941, No. 83, as amended, represented in this act by its Acting

Executive Director, mister Justo Luis González Torres, of legal age, married,

professional engineering, and resident of Juana Díaz, Puerto Rico.----------------------------





AS SECOND PARTY:  Filsinger Energy Partners, Inc. ("FEP"), a corporation formed

and existing under the laws of the State of Colorado, United States of America, with a

principal place of business in 290 Fillmore St. Ste 4 Denver, CO 80206, herein

represented by its Senior Managing Director, mister Todd W. Filsinger, of legal age,

married and resident of Denver, Colorado, who authority to enter into this Amendment

by virtue of Corporate Resolution, dated December 29, 2016.----------------------------------

PREPA and FEP are individually referred to herein as a "Party" and together as the

"Parties".--------------------------------------------------------------------------------------------------------

### WITNESSETH

In consideration of the mutual covenants hereinafter stated, the Parties agree

themselves, their personal representatives, and successors as follows:------------------------

### STATE

WHEREAS:   The appearing Parties executed a Professional Services Agreement

number 2018-P00091 ("Agreement") on December 7, 2017 ("Effective Date"), to

First Amendment Professional Services Agreement Filsinger Energy Partners (2018--P00091)
Page 2

designate Mr. Todd W. Filsinger as the Chief Financial Advisor ("CFA") of PREPA
with the following duties:   be responsible for the financial oversight and financial
management and reporting of PREPA, including the development of any budgets;
develop plans for, recommend and, together with the Executive Director, implement
operational reforms; work with the Puerto Rico Fiscal Agency and Financial Advisory
Authority ("AAFAF") on restructuring, fiscal and transformation plans and related
budgets; be responsible for any issues related to the pending Title III process in which
PREPA's management team is involved; participate in the working group process
regarding the transformation and fiscal plans and any related budgets; implement any
approved transformation plan and/or certified fiscal plan; work with the Procurement



Compliance Officer and Puerto Rico's Governor Authorized Representative ("GAR") on
federal funding and overseeing compliance with the GAR's requirements or other
requirements related to the federal funding; interface with the federal entities, the
Procurement Compliance Officer and the GAR regarding grants and other
reimbursements; approve certain hiring and firing decisions and organization structure
changes to the extent requested by the Governing Board; communicate with
constituents and other stakeholders including the Government of Puerto Rico and the
Financial Oversight and Management Board ("FOMB"); work with the Executive
Director on the emergency restoration and repair efforts to the extent requested by the
Governing Board or the Executive Director; and perform such other duties as are
agreed to by the Governing Board and the CFA.--------------------------------------------------

First Amendment Professional Services Agreement Filsinger Energy Partners (2018--P00091)
Page 3

WHEREAS: As per Article SECOND, the Agreement shall be in effect from the Effective date until June 30, 2018.------------------------------------------------------------------

WHEREAS: The APPENDIX A of the Agreement provides a Schedule of Filsinger Energy Partners Professionals ("Schedule of Professionals") assigned to render the Services and a Discounted Rate Table.----------------------------------------------------------

WHEREAS: Article 1 of the Agreement states that if FEP assigns another person not included in Appendix A to attend to PREPA's matters, FEP shall promptly send to PREPA an amended schedule to include such person's name and/or position, and request approval from the Governing Board for such amended schedule.--------------------



WHEREAS: On January 12, 2018, FEP requested PREPA to amend Appendix A to update the Schedule of Professionals.------------------------------------------------------------

WHEREAS: On January 4, 2018 the Government of Puerto Rico approved the Act No. 2-2018 that requires to all government contractors to comply with the Anti-Corruption Code for a New Puerto Rico.------------------------------------------------------------

WHEREAS: On January 31, 2018 by Resolution No. 4585 PREPA's Governing Board authorized the signature of the First Amendment of the Agreement.----------------------------

WHEREFORE: In accordance with PREPA's Governing Board Resolution No. _____, both Parties hereby agree, to:-----------------------------------------------------------------------

1. Supersede the existing Schedule of Professionals of Appendix A of the Agreement, and replace it with a new Schedule of Professionals which is included as annex of this First Amendment. The Discounted Rate Table of Appendix A remains unaltered.----------------------------------------------------------------------------------------------

First Amendment Professional Services Agreement Filsinger Energy Partners (2018–P00091)
Page 4

2. Include, in compliance with new Act No. 2-2018, the following certification:

> FEP hereby certifies that it has not been convicted in Puerto Rico or
> United States Federal court for under Articles 4.2, 4.3 or 5.7 of Act 1-2012,
> as amended, known as the Organic Act of the Office of Government
> Ethics of Puerto Rico, any of the crimes listed in Articles 250
> through 266 of Act 146-2012, as amended, known as the Puerto Rico
> Penal Code, any of the crimes typified in Act 2-2018, as amended, known
> as the Anti-Corruption Code for a New Puerto Rico or any other felony that
> involves misuse of public funds or property, including but not limited to the
> crimes mentioned in Article 6.8 of Act 8-2017, as amended, known as the
> Act for the Administration and Transformation of Human Resources in the
> Government of Puerto Rico. PREPA shall have the right to terminate the
> agreement in the event Contractor is convicted in Puerto Rico or United
> States Federal court for any of the crimes specified in this paragraph.
> Contractor shall promptly inform PREPA of any conviction or guilty plea for
> any of the aforementioned crimes during the term of this Contract.-----------

3. All other terms and conditions, established in the Agreement remain unaltered and
   fully enforceable.-----------------------------------------------------------------------------------

This is the agreement between the appearing Parties under this First Amendment and
so is hereby ratified.-----------------------------------------------------------------------------------

First Amendment Professional Services Agreement Filsinger Energy Partners (2018--P00091)
Page 5

In WITNESS WHEREOF, the Parties hereto have agreed to execute this First

Amendment in San Juan, Puerto Rico, on this 2nd day of February, 2018.------------------

Puerto Rico Electric Power Authority         Filsinger Energy Partners, Inc.

Justo Luis González Torres                   Todd W. Filsinger
Acting Executive Director                    Senior Managing Director
EIN:  66-0433747                             EIN:  27-2567004



## APPENDIX A

### Schedule of Filsinger Energy Partners Professionals who may be Assigned to this Matter
Updated: March 23, 2018

| Professional | Title |
|---|---|
| Todd W. Filsinger | Senior Managing Director |
| Gary Germeroth | Managing Director |
| Stephen Kopenitz | Managing Director |
| Paul Harmon | Managing Director |
| Dave Andrus | Director |
| Norm Spence | Director |
| Robert Monday | Director |
| Timothy Wang | Director |
| A. Scott Davis | Director |
| Mike Green | Director |
| Nathan Pollak | Director |
| Don Chambless | Managing Consultant |
| Laura Hatanaka | Managing Consultant |
| Mashiur Bhuiyan | Managing Consultant |
| Samuel Schreiber | Managing Consultant |
| Jill Kawakami | Managing Consultant |
| Matt Lee | Managing Consultant |
| Chad Balken | Managing Consultant |
| Pamela Morin | Consultant |
| Kyle Chamberlain | Consultant |
| Janalee Chmel | Consultant |

2018-P00091A

## SIDE LETTER

### AGREEMENT FOR INDEPENDENT CONTRACTOR CONSULTING SERVICES

This Side Letter (Agreement) is made and entered into as of __16__ of __February__, 2018 by and between:

As First Party:  The Puerto Rico Electric Power Authority (PREPA), a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act No. 83 of May 2, 1941, as amended, represented in this act by its Acting Executive Director, Mr. Justo Luis González Torres, of legal age, married, engineer, and resident of Juana Díaz, Puerto Rico.

As Second Party:  Filsinger Energy Partners, Inc. (FEP) a corporation formed and existing under the laws of the State of Colorado, United States of America, with a principal place of business in 290 Filmore St, Ste 4 Denver, CO 80206, herein represented by its Senior Managing Director, Mr. Todd W. Filsinger, of legal age, married, and resident of Denver, Colorado, who has authority to enter into this Agreement by virtue of Corporate Resolution, dated December 29, 2016.

PREPA and FEP are individually referred to herein as a Party and together as the Parties.

### WITNESSETH



In consideration of the mutual covenants and agreements hereinafter stated, the Parties agree themselves, their personal representatives, and successors as follows:

### STATE

WHEREAS:  The appearing Parties executed a Professional Services Agreement on December 7, 2017 (Effective Date), to designate Mr. Todd Filsinger as the Chief Financial Advisor (CFA) of PREPA.

WHEREAS:  The appearing Parties wish to amend the Agreement in order to clarify that the tariffs for reimbursable expenses set forth in the Article 1 of the Agreement.

WHEREAS:  The Parties consider necessary to amend the Contract in terms of the authorization of travel and lodging expenses.

NOW, THEREFORE, the appearing Parties hereby agree to the following amendments to the Agreement:

Side Letter  - Agreement for Independent Contractor Consulting Services
Page 2

1.  AMENDMENT TO THE LAST SENTENCE OF THE SIXTH PARAGRAPH OF THE
ARTICLE 1 OF THE AGREEMENT

All expenses shall be subject to the Reimbursement of Travel Expenses, as established
in the Appendix A of this Amendment.

2.  AMENDMENT TO THE SEVENTH PARAGRAPH OF THE ARTICLE 1 OF THE
AGREEMENT

Any travel and lodging expense for which a reimbursement is requested shall be
reasonable and necessary, and any extraordinary travel and lodging expenses shall be
notified previously in writing and in advance to either the Secretary or the President of
PREPA's Governing Board.  PREPA will not reimburse expenses that do not comply with
this provision.   Under no circumstances will expenses for alcoholic beverages be
reimbursed.

All other terms and conditions, established in the Agreement remain unaltered and fully
enforceable.

This is the agreement between the appearing Parties under this Side Letter and so is
hereby ratified.

In WITNESS WHEREOF, the Parties hereto have agreed to execute this Side Letter in
San Juan, Puerto Rico.

Puerto Rico Electric Power Authority             Filsinger Energy Partners, Inc.


Justo Luis González Torres                       Todd W. Filsinger
Acting Executive Director                        Senior Managing Director
EIN:  66-0433747                                 EIN:  27-2567004

**Appendix A**

**Reimbursement of Travel Expenses**

1. Travel expenses reimbursement applies for personnel providing the Services described in the Agreement; travel expenses for family members or guests are not chargeable to PREPA or reimbursable.

2. <u>Reimbursable Expenses</u>:

   a. Shall not exceed eight percent (8%) of the Agreement amount and will be reimbursed by PREPA through the presentation of acceptable evidence for such expenses.

   b. The cost of air travel will be reimbursed up to an amount of $750 per person per flight (including, seat assignment, applicable taxes, and other applicable fees). The Consultant shall submit a copy of the original airline ticket or paid invoice. Airfare may only be invoiced following completion of travel. In the event of a scheduled trip has to be cancelled by PREPA's order, PREPA will assume the cost of the penalty fee.

   c. Baggage fees will be reimbursed.  Evidence of incurred costs shall be submitted by the Consultant.  Excess baggage fees will not be reimbursed.

   d. The maximum per diem rates are as follows (No proof of payment will be required):

      o Meals: $58, per person for each traveling day.

      o Lodging (standard non-smoking room): $350.00 per person, per night.

   e. A fixed amount for ground transportation allowance of $30 per person, per

working day.  If a car is rented for the services to be provided, a fixed amount of $25.00 per day will be reimbursed for parking expenses, upon presentation of evidence of the car rental. (No proof of payment will be required).

3.  <u>Non-Reimbursable Expenses</u>:

Examples of expenses that will not be reimbursed include the following:

a.  Alcoholic beverages

b.  Entertainment

c.  Laundry, dry cleaning and pressing

d.  Travel insurance

e.  Parking fines

f.  Charges incurred because of indirect travel for personal reasons

g.  Family expenses

h.  Gratuities and tips paid to porters, waiters, bellboys, and hotel maids inside the lodging facility

i.  Any charges, fees, or other associated costs related to the making of reservations or other accommodations for travel.

# PUERTO RICO ELECTRIC POWER AUTHORITY

## SECOND AMENDMENT
## PROFESSIONAL SERVICES AGREEMENT
## 2018-P00091 B

### APPEAR

AS FIRST PARTY:  The Puerto Rico Electric Power Authority ("PREPA"), a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act of May 2, 1941, No. 83, as amended, represented in this act by its Chief Executive Officer/Executive Director mister Walter M. Higgins, of legal age, married, engineer, and resident of San Juan, Puerto Rico.---------------------------------------------------

AS SECOND PARTY:  Filsinger Energy Partners, Inc. ("FEP"), a corporation formed and existing under the laws of the State of Colorado, United States of America, with a principal place of business in 290 Fillmore St. Ste 4 Denver, CO 80206, herein represented by its Senior Managing Director, mister Todd W. Filsinger, of legal age, married and resident of Denver, Colorado, who authority to enter into this Amendment by virtue of Corporate Resolution, dated December 29, 2016.------------------------------------------------------------------

PREPA and FEP are individually referred to herein as a "Party" and together as the "Parties".--------------------------------------------------------------------------------------------------------

### WITNESSETH

In consideration of the mutual covenants hereinafter stated, the Parties agree themselves, their personal representatives, and successors as follows:-----------------------

Second Amendment Professional Services Agreement Filsinger Energy Partners
Page 2

## STATE

WHEREAS:   The appearing Parties executed Professional Services Agreement number 2018-P00091 ("Agreement") on December 7, 2017 ("Effective Date"), to designate M r . Todd W. Filsinger as the Chief Financial Advisor ("CFA") of PREPA –

WHEREAS:  The appearing Parties amended the Agreement on February 2, 2018 (the "First Amendment") to supersede the Schedule of Professionals of Appendix A of the Agreement, and replace it with a new Schedule of Professionals, and included a new language in compliance with Act No. 2-1018.----------------------------------------------------------

WHEREAS:   The appearing Parties executed a Side Letter Agreement on February 16, 2018 to include an Appendix for Reimbursement of Travel Expenses and to clarify the authorization process for travel and lodging expenses.-------------------------------

WHEREAS:  As per Article 2, the Agreement shall be in effect from the Effective Date until June 30, 2018.-------------------------------------------------------------------------------------

WHEREAS:   On April 20, 2018 by Resolution No. 4601, PREPA's Governing Board authorized the execution of the Second Amendment of the Agreement, subject to the approval of the Office of Management and Budget (OMB) and Fiscal Oversight Management Board (FOMB).---------------------------------------------------------------------------

WHREAS:  On June 5, 2018 the OMB approved the execution of this Second Amendment and on June 14, 2018 PREPA received the approval of FOMB.-----------------------------------

WHEREFORE: In accordance with PREPA's Governing Board Resolution No. 4601, both Parties hereby agree, to:--------------------------------------------------------------------------------

Second Amendment Professional Services Agreement Filsinger Energy Partners
Page 3

1. Amend the scope of services provided by FEP to include the following services:  act as a liaison to the Federal Emergency Management Agency (FEMA) and the Governor's Authorized Representatives (GAR) for restoration and recovery matters, and provide contract management and oversight of PREPA's restoration and recovery program managers and restoration contractors.----------------------------------------------------

2. The Parties agree to amend Article 1 to increase the Agreement amount by five million five hundred thousand dollars ($5,500,000), from five million ($5,000,000) to ten millions five hundred thousand dollars ($10,500,000).------------------------------------------

3. Supersede the existing Schedule of Professionals of Appendix A of the Agreement, and replace it with a new Schedule of Professionals which is included as annex of this Second Amendment.  The Discounted Rate Table of Appendix A remains unaltered.-

4. COMPLIANCE WITH THE COMMONWEALTH OF PUERTO RICO CONTRACTING REQUIREMENTS

   FEP will comply will all applicable State Law, Regulations or Executive Orders that regulate the contracting process and requirements of the Commonwealth of Puerto Rico.  Particularly:  Law Num. 237-2004, as amended, which establishes uniform contracting requirements for professional and consultant services for the agencies and governmental entities of the Commonwealth of Puerto Rico.  3 L.P.R.A. § 8611 et seq., and the Puerto Rico Department of Treasury Circular Letter Number 1300- 16-16.  CC Núm. 1300-16-16 (22/01/2016).

Second Amendment Professional Services Agreement Filsinger Energy Partners
Page 4

A. FEP shall provide:

1. Sworn Statement to the effect that neither FEP nor any president, vice president, executive director or any member of a board of officials or board of directors, or any person performing equivalent functions for FEP has been convicted of or has pled guilty to any of the crimes listed in Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico or any of the crimes included in Act 2-2018.

2. Sworn Statement in compliance with requirements established in Circular Letter No. 1300-16-16 of Puerto Rico Treasury Department certifying that, under penalty of perjury, FEP does not have tax liability in Puerto Rico and the execution of the agreement will not result in FEP being engaged in trade or business in Puerto Rico.

3. Puerto Rico Child Support Administration (ASUME):  FEP shall present, to the satisfaction of PREPA, the necessary documentation certifying that FEP nor any of its owners, affiliates of subsidiaries, if applicable, have any debt, outstanding debt, or legal procedures to collect child support payments that may be registered with the Puerto Rico Child Support Administration (known in Spanish as the Administración Para El Sustento de Menores (ASUME). FEP will be given a specific amount of time to deliver said documents. 3 L.P.R.A. § 8611 et seq.;

Second Amendment Professional Services Agreement Filsinger Energy Partners
Page 5

    4. Certificate of Incorporation or Certificate of Organization or Certificate of Authorization to do Business in Puerto Rico issued by the Puerto Rico Department of State; and Good Standing Certificate issued by the Puerto Rico Department of State.

B. Law Num. 127, May 31, 2004: Contract Registration in the Comptroller's Office of Puerto Rico Act:  Payment for services object of this Amendment will not be made until this Agreement is properly registered in the Office of the Comptroller of the Government of Puerto Rico pursuant to Law Number 18 of October 30, 1975, as amended.

C. Termination by the Chief of Staff of the Governor of Puerto Rico and Interagency agreements

Pursuant to Memorandum No. 2017-001, Circular Letter 141-17, of the Office of the Chief of Staff of the Governor of Puerto Rico (Secretaría de la Gobernación) and the Office of Management and Budget (Oficina de Gerencia y Presupuesto – OGP), the Chief of Staff shall have the authority to terminate this Agreement at any time.  If so directed by the Chief of Staff, PREPA will terminate this Agreement by delivering to FEP a notice of termination specifying the extent to which the performance of the work under this Agreement is terminated, and the effective date of termination.  Upon the effective date of termination, FEP shall immediately discontinue all services affected and deliver to PREPA all information, studies and other materials property of PREPA.  In the event of a termination by notice, PREPA



Second Amendment Professional Services Agreement Filsinger Energy Partners
Page 6

shall be liable only for payment of services rendered up to and including the effective date of termination.

Both Parties acknowledge and agree that the contracted services herein may be provided to another entity of the Executive Branch which enters into an interagency agreement with PREPA or by direct disposition of the Office of the Chief of Staff. These services will be performed under the same terms and conditions in terms of hours of work and compensation set forth in this Agreement. For the purpose of this clause, the term "entity of the Executive Branch" includes all agencies of the Government of Puerto Rico, as well as public instrumentalities, public corporations and the Office of the Governor.

D. Social Security and Income Tax Retentions: In compliance with Executive Order 1991 OE- 24; and C.F.R. Part 404 et. Seq., FEP will be responsible for rendering and paying the Federal Social Security and Income Tax Contributions for any amount owed as a result of the income, from this Agreement.

E. Law 168-2000: Law for the Strengthening of the Family Support and Livelihood of Elderly People: FEP will certify that if there is any Judicial or Administrative Order demanding payment or any economic support regarding Act No. 168-2000, as amended, the same is current and in all aspects in compliance. Act No. 168-2000 "Law for the Strengthening of the Family Support and Livelihood of Elderly People" in Spanish: "Ley para el Fortalecimiento del Apoyo Familiar y Sustento de Personas de Edad Avanzada", 3 L.P.R.A. §8611 et seq.

Second Amendment Professional Services Agreement Filsinger Energy Partners
Page 7

F.  Dispensation:  Any and all necessary dispensations have been obtained from any
government entity and that said dispensations shall become part of the contracting
record.

G.  Rules  of  Professional  Ethics:    FEP  acknowledges  and  accepts  that  it  is
knowledgeable  of  the  rules  of  ethics  of  his/her  profession  and  assumes
responsibility for his/her own actions.

H.  FEP hereby agrees to comply with the provisions of Act No. 2-2018, as the same
may be amended from time to time, which establishes the Anti-Corruption Code
for the New Puerto Rico. FEP hereby certifies that it does not represent particular
interests in cases or matters that imply a conflicts of interest, or of public policy,
between the executive agency and the particular interests it represents.

I.  FEP hereby certifies that it has not been convicted in Puerto Rico or United States
Federal court for under Articles 4.2, 4.3 or 5.7 of Act 1-2012, as amended, known
as the Organic Act of the Office of Government Ethics of Puerto Rico, any of the
crimes listed in Articles 250 through 266 of Act 146-2012, as amended, known as
the Puerto Rico Penal Code, any of the crimes typified in Act 2-2018, as amended,
known as the Anti-Corruption Code for a New Puerto Rico or any other felony that
involves misuse of public funds or property, including but not limited to the crimes
mentioned in Article 6.8 of Act 8-2017, as amended, known as the Act for the
Administration and Transformation of Human Resources in the Government of
Puerto Rico.



Second Amendment Professional Services Agreement Filsinger Energy Partners
Page 8

>PREPA shall have the right to terminate the Agreement in the event FEP is convicted in Puerto Rico or United States Federal court for any of the crimes specified in this paragraph.  FEP shall promptly inform PREPA of any conviction or guilty plea for any of the aforementioned crimes during the term of this Agreement.

J. The Parties hereby declare that, to the best of their knowledge, no public officer or employee of the Commonwealth of Puerto Rico, its agencies, instrumentalities, public corporations or municipalities or employee of the Legislative or Judicial branches of the Government has any direct or indirect economic interest in the present Agreement.

K. FEP certifies that neither it nor any of its shareholders, directors, executives, officers, and employees receives salary or any kind of compensation for the delivery of regular services by appointment in any agency, instrumentality, public corporation, or municipality of the Commonwealth of Puerto Rico.

L. The Parties certifies no officer, employee or agent of PREPA, or of the Government of the Commonwealth of Puerto Rico or Municipal Governments, shall be admitted to any share or part of this Contract or to any benefit that may arise there from, but this provision shall not be construed to extend to this Contract if made with a corporation for its general benefit.

In addition to the restrictions and limitations established under the provisions of Act 1-2012, as amended, retired or former officers or employees of PREPA, whose work was in any way related to the award or management of contracts, shall in no

Second Amendment Professional Services Agreement Filsinger Energy Partners
Page 9

way benefit from any contract with PREPA for a period of two (2) years after leaving

employment with or ceasing services to PREPA.

M. Termination: PREPA shall have the right to terminate this Agreement with thirty

(30) days prior written notice to FEP. Moreover, PREPA shall have the right to

terminate this Agreement immediately in the event of negligence, dereliction of

duties or noncompliance by FEP.

N. Consequences of Non-Compliance:  FEP expressly agrees that the conditions

outlined throughout this Section are essential requirements of this Agreement.

Consequently, should any one of these representations, warranties or certifications

be incorrect, inaccurate or misleading, in whole or in part, there shall be sufficient

cause for the PREPA to render this Agreement null and void, and FEP shall

reimburse the PREPA all moneys received under this Agreement.

5. The Parties agreed an Outside Advisors Expenses and Resources Guidelines that

become part of this amendment as Exhibit A.

6. The Parties are in the process of negotiating the extension of the Agreement for Fiscal

Year 2018-19.  In order to complete this procedure without adversely affecting or

interrupting the services provided by FEP, the Parties agree to extend the Agreement

for an additional 31 days, until July 31, 2018.  The Parties also agree that the services

provided by FEP until June 30, 2018 will be charged to the budget of the contract for

the Fiscal Year 2018 and the services provided as of July 1, 2018 will be charged to

the budget of the Agreement agreed by the Parties for Fiscal Year 2018-2019.  This

thirty-one day extension does not affect or change the scope of work nor the budget

Second Amendment Professional Services Agreement Filsinger Energy Partners
Page 10

assigned to the Agreement for Fiscal Year 2018.  This extension does not affect the approval made by OMB and FOMB. ---------------------------------------------------------------

7. All other terms and conditions, established in the Agreement remain unaltered and fully enforceable.---------------------------------------------------------------------------------------

This is the agreement between the appearing Parties under this Second Amendment and so is hereby ratified.------------------------------------------------------------------------------------

In WITNESS THEREOF, the Parties hereto have agreed to execute this Second Amendment in San Juan, Puerto Rico, on this __18__ day of June, 2018.----------------------

Puerto Rico Electric Power Authority

Filsinger Energy Partners, Inc.


Walter M. Higgins
Chief Executive Officer/Executive Director
EIN:  66-0433747

Todd W. Filsinger
Senior Managing Director
EIN:  27-2567004

Annex A

# PUERTO RICO ELECTRIC POWER AUTHORITY

## OUTSIDE CONSULTANTS/ADVISORS GUIDELINES

The purpose of these guidelines is to establish our mutual understanding and agreement as to our expectations with respect to your companies' representation of PREPA.

The scope of your engagement, your billable rate, and other case-or matter-specific information should be set forth by separate cover.  However, to the extent that an engagement letter or contract/agreement has been executed previously, contemporaneously with, or subsequent to your receipt of these guidelines, these guidelines will govern in the event of any inconsistency or ambiguity with the engagement letter or contract/agreement.

**Scope**

These guidelines are applicable to all matters referred to Consultant, absent express agreement or instructions from PREPA to the contrary.  A copy of these guidelines should be provided to all employees assigned to work in PREPA's matters before work begins.



PREPA is committed to making effective use of consultant's/advisor's resources.  *These guidelines are directed to all outside consultants/advisors to help us achieve high quality, efficient services that produces effective results for a reasonable economic value to PREPA*.  PREPA needs the cooperation and best efforts of outside consultants/advisors to achieve this objective, and evaluation of outside consultants/advisors will be based on your success in helping PREPA achieve this objective. Therefore, we expect outside consultants/advisors to consistently examine PREPA's matters in order to determine whether particular expenditures of time or money are truly necessary to reach our intended objective.

**Staffing**

You and your PREPA's contact should discuss the staffing of a matter at its outset.  Ultimately, staffing is PREPA's decision, and your PREPA's contact will provide input and review staffing to insure that it is optimal to achieve our objective.   Additions or changes to staffing are not to be made without PREPA's prior agreement.

Effective control and management of PREPA's matters requires the most efficient and effective use of all available resources.   We expect work of the highest quality at reasonable costs.

To promote effective utilization of time and skills, we request that you make every effort to provide for continuity in staffing and to assign the appropriate level of talent to our matters.  Therefore, we expect that you will avoid: overstaffing the matter, shifting personnel assigned to the matter except when absolutely necessary; holding inessential internal "conferences" about the matter; and handling specific tasks through persons who are either over-qualified or under- qualified.

1

## Management

We require that prompt matter management plans and budgets be made at the request of your PREPA's contact.   We would appreciate your responsiveness to considerations of cost effectiveness in making your estimates and evaluations.   A matter management plan should include, at a minimum, (a) an outline of the various phases of the project, (b) a timetable associated with them, (c) the person primarily responsible for conducting each activity, and (d) a forecast of the hours, fees, and expenses associated with each phase.   We expect you to review these matter management plans and budgets at least every quarter, and after the occurrence of a significant event, to re-assess strategy and status.  PREPA recognizes that revisions to matter management plans and budgets may be necessary from time to time, since actions are not always predictable or there may be unanticipated issues and problems during the course of a project.

## Weekly Work Plan

For each week, the Consultant/Advisor will present a table that will include the specific projects or tasks that will be working, including the personnel assigned to each task, and the dates on which the personnel will be traveling to and from Puerto Rico.  Should any matter arise that is not foreseeable, the Consultant/Advisor will notify your PREPA's contact and include the updated information on next week's work plan.

## Fees

PREPA expects to be charged a reasonable fee for all services rendered, and encourages outside consultants/advisors to be creative in proposing alternative fee arrangements where appropriate.  In a traditional hourly arrangement, however, the baseline for determining a reasonable fee should be the time appropriately and productively devoted to the matter, in essence, the "real" value of the services provided.  We also expect you to scrutinize and reduce billed time in situations involving: (a) internal conferences or consultations between members of the consultant/advisor; (b) research on basic or general principles; (c) assignments to inexperienced resources; or (d) work that is unnecessary or redundant or which should be shared with other clients.



PREPA should not be billed for (a) time spent in processing conflict searches, preparing billing statements, or in responding to our inquiries concerning your invoices; or (b) travel time during which you are billing another client for work performed while traveling.   Moreover, we require that only professional services be billed. Accordingly, PREPA should not be billed for the administrative tasks of creating, organizing, reviewing and/or updating files; routine or periodic status reports; receiving, reviewing, and/or distributing mail; faxing or copying documents; checking electronic mail or converting information to disk.

PREPA will only pay the Consultant/Advisors up to a maximum of 12 working hours daily.

## Expenses/Disbursements

PREPA will reimburse you for your actual costs and expenses related to matters assigned to you and for necessary and reasonable out-of-pocket disbursements, subject to the limitations and exceptions set forth below.  Consultant/Advisor is expected to have a system in place that ensures those who bill time and disbursements to PREPA matters do so promptly and accurately.

2

PREPA will not reimburse you for:  (a) costs included in a 'miscellaneous' or 'other' category of charges; (b) overhead costs and expenses-such as those relating to fees for time or overtime expended by support staff (secretaries, administrative/clerical personnel, internal messengers, and other similar services), word processing and/or proofreading, cost of supplies or equipment, and/or other similar costs of doing business; (f) time spent attending education seminars or training programs; or (h) mark-ups or surcharges on any cost or expense.  In addition, if communications are sent to PREPA through the use of more than one medium, PREPA does not expect to pay for the cost of both communications. For instance, if a piece of correspondence is sent to PREPA by email, we do not expect to pay for the cost of that same correspondence if it is also sent via regular or expedited mail.

PREPA will reimburse consultants/advisors for separately itemized expenses and disbursements in the following categories:

- <u>Messenger/courier service</u> – PREPA will reimburse actual charges billed to your firm for deliveries (including overnight deliveries) where this level of service is required because of time constraints imposed by PREPA or because of the need for reliability given the nature of the items being transported.  Appropriate summaries of messenger/courier expenses must reflect the date and cost of the service and the identity of the sender and the recipient or the points of transportation.  We do not expect all documents to be hand delivered or sent by overnight express; indeed, we do expect that decisions about modes of delivery, from by-hand messenger to electronic transmission, will be made with due regard for need, economy, and good sense.



- <u>Travel</u> – PREPA will reimburse actual charges for transportation and hotels reasonable and necessary for effective services to PREPA.  PREPA will not pay for any first-class or business-class travel.  Summaries of transportation expenses should reflect the identity of the user, the date and amount of each specific cost, and the points of travel.  Summaries of lodging and meals expenses should include the identity of the person making the expenditure, the date and amount, and the nature of the expenditure.  PREPA expects you to be reasonable and prudent both in selecting hotels and restaurants, if applicable, for which we are to be charged and in distinguishing between personal expenses and properly chargeable business expenses.

  Travel expenses reimbursement applies for personnel providing the services to PREPA, travel expenses for family members or guests are not chargeable to PREPA or reimbursable.

  **Air Travel**:  The cost of air travel will be reimbursed up to an amount of $650 per person per flight (including:  seat assignment, applicable taxes, and other applicable fees).  The Consultant shall submit a copy of the original airline ticket or paid invoice.  Airfare may only be invoiced following completion of travel.

  PREPA will pay up to two roundtrip airfares per month to Consultant/Advisor to their place of residence.  Airfare necessary to attend PREPA's official business will be pay by PREPA according to these guidelines.

  Consultant/Advisor shall buy and economic class ticket or equivalent, then if desired, he/she

3

may upgrade, but PREPA will only pay the amount corresponding to the economy class or equivalent airfare.

Baggage fees will not be reimbursed.

**Maximum Per Diem Rates** (no proof of payment will be required):

➢ Meals:  $57 per person for each traveling day for persons working "on-site" at PREPA.

➢ Lodging (standard not smoking room):  $250 per person, per night not including government fees and taxes  The Consultant will use the most economical alternative of lodging, including temporary rentals of apartments or rooms (Airbnb like rentals). For travel period longer than five days, temporary rentals shall be coordinated when this temporary rental is less expensive than hotel accommodation, and evidence of said temporary rental shall be provided.

➢ Ground Transportation:  $20 per person, per working day.  If a car is rented for the services to be provided, a fixed amount of $25 per day will be reimbursed for parking expenses, upon presentation of evidence of the car rental (no proof of payment will be required).

• Reimbursable expenses shall not exceed six percent (6%) of the Contract amount in one year and will be reimbursed by PREPA through the presentation of acceptable evidence for such expenses.

• Photocopying/printing – PREPA will reimburse actual charges for outside binding, and printing services and costs of outside photocopying services, which are not to exceed the actual five (5) cents per page for black and white copies, and twenty-five (25) cents per page for color copies.  Summaries of expenditures for copying should reflect both the number of copies made and the cost per copy.

• <u>Third-Party Services</u> – The approval of PREPA must be obtained in writing prior to retaining any third-party services.  You are responsible for ensuring that there are no conflicts of interest between any third party and PREPA or between any third party clients and PREPA.  In addition, all arrangements with third-party vendors should include an appropriate undertaking of confidentiality and data privacy.  Invoices from third-party vendors should be paid directly by Consultant/Advisors, incorporated into your invoice to PREPA and should include appropriate detail.  Copies of third-party invoices may be requested by PREPA and should be retained in accordance with PREPA's guidelines.

PREPA reserves the right to question the charges on any bill (even after payment) and to obtain a discount or refund of those charges that are disputed.  At PREPA's request, copies of bills and records reflecting reimbursable expenses must be provided to PREPA.

**Billing Statements**

PREPA and outside Consultant/Advisor must agree at the outset on the hourly rates for each person in the firm who will bill on a particular project or matter.  PREPA expects to be charged at no more than the consultant/advisor's hourly rate for employees assigned to its projects or matters.  Hourly rate increases and/or fee arrangement increases will not be allowed or reimbursed unless first approved by PREPA.

4

A detailed statement of your services to PREPA should be submitted on a monthly basis, within twenty (20) days after the last business day of the month in which the services were rendered, regardless of the type of fee arrangement that has been negotiated. Invoices payable by PREPA will be paid within thirty (30) days of receipt. Except as it pertains to matters on Title III that will be paid within fourteen (14) calendar days after the approval of the Title III fee examiner's approval To the extent PREPA exceeds the 14 days the labor discount will no longer apply. Notwithstanding, the Consultant/Advisor shall submit the invoices to PREPA, concurrently to the Title III fee examiner submittal. PREPA will not honor invoices that have been outstanding for services provided more than three (3) months before an invoice is received, as it is nearly impossible for such an invoice to be accurately reviewed and approved after such time has passed.

All invoices, must be prepared within the following framework. We cannot process invoices that do not include the items below. Please include in each invoice:

1. A brief description of the project or task to which the services relate.

2. A full chronological description of the services performed during the statement period, the name of the professional who performed such services and the hourly rates and the number of hours spent (by date) for each professional.

3. Reasonable detail of the reimbursable expenses and disbursements made on behalf of PREPA during the statement period.

4. Fees, disbursements and total charges during the statement period, fiscal year-to-date and since the commencement of the matter.

5. If reimbursement for third party services is to be made, a copy of the relevant third party invoice must be attached.

6. The name of PREPA's official that requested your services.

7. In the case of Title III consultants the fee statements suffice for the items above.

Please show clearly on the invoice the total current bill (without regard to prior balances). Prior balances or payment history should be shown separately, if at all, by invoice number, invoice date, and amount.

**Media Relations**

Any and all media inquiries regarding PREPA matter must be immediately referred to PREPA for review and response. Outside Consultant/Advisor may not make any statement to the media pertaining to matters related to PREPA or service performed on its behalf.

5



## APPENDIX A

**Schedule of Filsinger Energy Partners Professionals who may be Assigned to this Matter**
Updated: June 2018

| Professional | Title |
|---|---|
| Todd W. Filsinger | Senior Managing Director |
| Gary Germeroth | Managing Director |
| Stephen Kopenitz | Managing Director |
| Paul Harmon | Managing Director |
| Dave Andrus | Director |
| Norm Spence | Director |
| Robert Monday | Director |
| Timothy Wang | Director |
| A. Scott Davis | Director |
| Mike Green | Director |
| Nathan Pollak | Director |
| Rusty Evans | Director |
| Don Chambless | Managing Consultant |
| Laura Hatanaka | Managing Consultant |
| Mashiur Bhuiyan | Managing Consultant |
| Samuel Schreiber | Managing Consultant |
| Jill Kawakami | Managing Consultant |
| Matt Lee | Managing Consultant |
| Chad Balken | Managing Consultant |
| Marcus Klintmalm | Managing Consultant |
| Emilie Kelly | Managing Consultant |
| Pamela Morin | Consultant |
| Allison Horn | Consultant |
| Janalee Chmel | Consultant |
| Kyle Chamberlain | Analyst |
| McGlynn Nickel | Analyst |

## PUERTO RICO ELECTRIC POWER AUTHORITY

### THIRD AMENDMENT
### PROFESSIONAL SERVICES AGREEMENT
### 2018-P00091 C

### APPEAR

AS FIRST PARTY:  The Puerto Rico Electric Power Authority ("PREPA"), a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act of May 2, 1941, No. 83, as amended, represented in this act by its Chief Executive Officer/Executive Director mister José F. Ortiz Vázquez, of legal age, married, engineer, and resident of San Juan, Puerto Rico.------------------------------------------------------

AS SECOND PARTY:  Filsinger Energy Partners, Inc. ("FEP"), a corporation formed and existing under the laws of the State of Colorado, United States of America, with a principal place of business in 90 Madison Street, Denver, CO 80111, herein represented by its Senior Managing Director, mister Todd W. Filsinger, of legal age, married and resident of Denver, Colorado, who authority to enter into this Amendment by virtue of Corporate Resolution, dated April 17, 2018.------------------------------------------------------------------

PREPA and FEP are individually referred to herein as a "Party" and together as the "Parties".--------------------------------------------------------------------------------------------

### WITNESSETH

In consideration of the mutual covenants hereinafter stated, the Parties agree themselves, their personal representatives, and successors as follows:------------------------

### STATE

WHEREAS:   The appearing Parties executed Professional Services Agreement number 2018-P00091 ("Agreement") on December 7, 2017 ("Effective Date"), to designate M r. Todd W. Filsinger as the Chief Financial Advisor ("CFA") of PREPA; –

WHEREAS:  The appearing Parties amended the Agreement on February 2, 2018 (the "First Amendment") to supersede the Schedule of Professionals of Appendix A of the Agreement, and replace it with a new Schedule of Professionals, and included a new language in compliance with Act No. 2-1018;-----------------------------------------------------

Third Amendment Professional Services Agreement Filsinger Energy Partners
Page 2

WHEREAS:   The appearing Parties executed a Side Letter Agreement on
February 16, 2018 to include an Appendix for Reimbursement of Travel Expenses and to
clarify the authorization process for travel and lodging expenses;-------------------------------

WHEREAS:  On June 18, 2018 the Parties executed the Second Amendment to the
Agreement to expand the scope of work, increase the maximum amount of the Agreement
and update the Schedule of Professionals, and extend the Agreement for an
additional 31 days, until July 31, 2018, among others;----------------------------------------------



WHEREAS:  On June 20 2018 by Resolution No. 4612, PREPA's Governing Board
authorized the extension of the Agreement for the Fiscal Year 2018-2019, subject to the
approval of the Office of Management and Budget (OMB), and the Fiscal Oversight
Management Board (FOMB);---------------------------------------------------------------------------------

WHEREAS:  The Agreement expires on July 31, 2018 and the FOMB has not completed
the review process;--------------------------------------------------------------------------------------------

WHEREFORE:  In order to be able to continue uninterruptedly with FEP services, while
the FOMB and OMB approvals are received, both Parties hereby agree, to:-----------------

TERMS AND CONDITIONS

**First**: Amend Article 2, to extend the term of the Agreement for additional fifteen days,
from August 1 to August 15, 2018.-----------------------------------------------------------------------

**Second**:  All other terms and conditions, established in the Agreement remain unaltered
and fully enforceable.----------------------------------------------------------------------------------------

Third Amendment Professional Services Agreement Filsinger Energy Partners
Page 3

**Third**:  Compliance with the Commonwealth of Puerto Rico Contracting Requirements
FEP will comply will all applicable State Law, Regulations or Executive Orders that
regulate the contracting process and requirements of the Commonwealth of Puerto Rico.
Particularly:  Law No. 237-2004, as amended, which establishes uniform contracting
requirements for professional and consultant services for the agencies and governmental
entities of the Commonwealth of Puerto Rico.  3 L.P.R.A. §8611 et seq., and the Puerto
Rico Department of Treasury Circular Letter Number 1300- 16-16.  CC No. 1300-16-16
(22/01/2016).------------------------------------------------------------------------------------------------------

 A. FEP shall provide:

   1. Sworn Statement to the effect that neither FEP nor any president, vice
      president, executive director or any member of a board of officials or board of
      directors, or any person performing equivalent functions for FEP has been
      convicted of or has pled guilty to any of the crimes listed in Article 6.8 of
      Act 8-2017, as amended, known as the Act for the Administration and
      Transformation of Human Resources in the Government of Puerto Rico or any
      of the crimes included in Act 2-2018;--------------------------------------------------------

   2. Puerto Rico Child Support Administration (ASUME):  FEP shall present, to the
      satisfaction of PREPA, the necessary documentation certifying that FEP nor
      any of its owners, affiliates of subsidiaries, if applicable, have any debt,
      outstanding debt, or legal procedures to collect child support payments that
      may be registered with the Puerto Rico Child Support Administration (known in
      Spanish as the Administración Para El Sustento de Menores (ASUME).  FEP
      will be given a specific amount of time to deliver said documents. 3 L.P.R.A.
      §8611 et seq.;--------------------------------------------------------------------------------------

   3. Certificate of Incorporation or Certificate of Organization or Certificate of
      Authorization to do Business in Puerto Rico issued by the Puerto Rico
      Department of State; and Good Standing Certificate issued by Puerto Rico
      Department of State;------------------------------------------------------------------------------

Third Amendment Professional Services Agreement Filsinger Energy Partners
Page 4

B. Law No. 127-2004: Contract Registration in the Comptroller's Office of Puerto Rico
   Act:  Payment for services object of this Amendment will not be made until this
   Agreement is properly registered in the Office of the Comptroller of the
   Government of Puerto Rico pursuant to Law No. 18 of October 30, 1975, as
   amended;------------------------------------------------------------------------------------------

C. Termination by the Chief of Staff of the Governor of Puerto Rico and Interagency
   agreements------------------------------------------------------------------------------------------
   Pursuant to Memorandum No. 2017-001, Circular Letter 141-17, of the Office of
   the Chief of Staff of the Governor of Puerto Rico (Secretaría de la Gobernación)
   and the Office of Management and Budget (Oficina de Gerencia y Presupuesto –
   OGP), the Chief of Staff shall have the authority to terminate this Agreement at any
   time.  If so directed by the Chief of Staff, PREPA will terminate this Agreement by
   delivering to FEP a notice of termination specifying the extent to which the
   performance of the work under this Agreement is terminated, and the effective date
   of termination.  Upon the effective date of termination, FEP shall immediately
   discontinue all services affected and deliver to PREPA all information, studies and
   other materials property of PREPA.  In the event of a termination by notice, PREPA
   shall be liable only for payment of services rendered up to and including the
   effective date of termination.-------------------------------------------------------------------
   Both Parties acknowledge and agree that the contracted services herein may be
   provided to another entity of the Executive Branch which enters into an interagency
   agreement with PREPA or by direct disposition of the Office of the Chief of Staff.
   These services will be performed under the same terms and conditions in terms of
   hours of work and compensation set forth in this Agreement.  For the purpose of
   this clause, the term "entity of the Executive Branch" includes all agencies of the
   Government of Puerto Rico, as well as public instrumentalities, public corporations
   and the Office of the Governor.------------------------------------------------------------------

D. Social Security and Income Tax Retentions:   In compliance with Executive
   Order 1991 OE- 24; and C.F.R. Part 404 et. Seq., FEP will be responsible for



Third Amendment Professional Services Agreement Filsinger Energy Partners
Page 5

rendering and paying the Federal Social Security and Income Tax Contributions
for any amount owed as a result of the income, from this Agreement.-----------------

E. Law No. 168-2000:   Law for the Strengthening of the Family Support and
Livelihood of Elderly People:   FEP will certify that if there is any Judicial or
Administrative Order demanding payment or any economic support regarding Act
No. 168-2000, as amended, the same is current and in all aspects in compliance.
Act No. 168-2000 "Law for the Strengthening of the Family Support and Livelihood
of Elderly People" in Spanish: "Ley para el Fortalecimiento del Apoyo Familiar y
Sustento de Personas de Edad Avanzada", 3 L.P.R.A. §8611 et seq.-----------------

F. Dispensation:  Any and all necessary dispensations have been obtained from any
government entity and that said dispensations shall become part of the contracting
record.-------------------------------------------------------------------------------------------------

G. Rules of Professional Ethics:   FEP acknowledges and accepts that it is
knowledgeable of the rules of ethics of his/her profession and assumes
responsibility for his/her own actions.-----------------------------------------------------------

H. FEP hereby agrees to comply with the provisions of Act No. 2-2018, as the same
may be amended from time to time, which establishes the Anti-Corruption Code
for the New Puerto Rico.  FEP hereby certifies that it does not represent particular
interests in cases or matters that imply a conflicts of interest, or of public policy,
between the executive agency and the particular interests it represents.-------------

I. FEP hereby certifies that it has not been convicted in Puerto Rico or United States
Federal court for under Articles 4.2, 4.3 or 5.7 of Act 1-2012, as amended, known
as the Organic Act of the Office of Government Ethics of Puerto Rico, any of the
crimes listed in Articles 250 through 266 of Act 146-2012, as amended, known as
the Puerto Rico Penal Code, any of the crimes typified in Act 2-2018, as amended,
known as the Anti-Corruption Code for a New Puerto Rico or any other felony that
involves misuse of public funds or property, including but not limited to the crimes
mentioned in Article 6.8 of Act 8-2017, as amended, known as the Act for the

Third Amendment Professional Services Agreement Filsinger Energy Partners
Page 6

Administration and Transformation of Human Resources in the Government of Puerto Rico.----------------------------------------------------------------------------------------- PREPA shall have the right to terminate the Agreement in the event FEP is convicted in Puerto Rico or United States Federal court for any of the crimes specified in this paragraph.  FEP shall promptly inform PREPA of any conviction or guilty plea for any of the aforementioned crimes during the term of this Agreement.-----------------------------------------------------------------------------------------

J.  The Parties hereby declare that, to the best of their knowledge, no public officer or employee of the Commonwealth of Puerto Rico, its agencies, instrumentalities, public corporations or municipalities or employee of the Legislative or Judicial branches of the Government has any direct or indirect economic interest in the present Agreement.----------------------------------------------------------------------------------

K.  FEP certifies that neither it nor any of its shareholders, directors, executives, officers, and employees receives salary or any kind of compensation for the delivery of regular services by appointment in any agency, instrumentality, public corporation, or municipality of the Commonwealth of Puerto Rico.----------------------

L.  No public officer or employee authorized to contract on behalf of the executive agency for which he/she works may execute a contract between the agency for which he/she works and an entity or business in which he/she or any member of his/her family unit has or has had direct or indirect economic interest during the last four (4) years prior to his/her holding office.----------------------------------------------

M.  No executive agency may execute a contract in which any of its officers or employees or any member of their family units has or has had direct or indirect economic interest during the last four (4) years prior to their holding office, unless the Governor gives authorization thereto with the previous recommendation of the Secretary of the Treasury and the Secretary of Justice.----------------------------------

N.  No public officer or employee may be a party to or have any interest in any profits or benefits produced by a contract with any other executive agency or government

Third Amendment Professional Services Agreement Filsinger Energy Partners
Page 7

dependency unless the Governor gives express authorization thereto with previous recommendation from the Secretary of the Treasury and the Secretary of Justice.

O. No public officer or employee who has the power to approve or authorize contracts shall evaluate, consider, approve or authorize any contract between an executive agency and an entity or business in which he/she or any member of his/her family unit has or has had direct or indirect economic interest during the last four (4) years prior to his/her holding office.----------------------------------------------------------------------

P. No executive agency shall execute contracts with or for the benefit of persons who have been public officers or employees of said executive agency until after two (2) years have elapsed from the time said person has ceased working as such.-------

Q. The Parties certifies no officer, employee or agent of PREPA, or of the Government of the Commonwealth of Puerto Rico or Municipal Governments, shall be admitted to any share or part of this Agreement or to any benefit that may arise there from, but this provision shall not be construed to extend to this Agreement if made with a corporation for its general benefit.----------------------------------------------------------------- In addition to the restrictions and limitations established under the provisions of Act 1-2012, as amended, retired or former officers or employees of PREPA, whose work was in any way related to the award or management of contracts, shall in no way benefit from any contract with PREPA for a period of two (2) years after leaving employment with or ceasing services to PREPA.-------------------------------------------

R. Termination:  PREPA shall have the right to terminate this Agreement with thirty (30) days prior written notice to FEP.  Moreover, PREPA shall have the right to terminate this Agreement immediately in the event of negligence, dereliction of duties or noncompliance by FEP.-----------------------------------------------------------------

S. Consequences of Non-Compliance:  FEP expressly agrees that the conditions outlined throughout this Section are essential requirements of this Agreement. Consequently, should any one of these representations, warranties or certifications be incorrect, inaccurate or misleading, in whole or in part, there shall be sufficient

Third Amendment Professional Services Agreement Filsinger Energy Partners
Page 8

cause for the PREPA to render this Agreement null and void, and FEP shall reimburse the PREPA all moneys received under this Agreement.---------------------

**Fourth**:     The Parties also agree that the services provided by FEP until June 30, 2018, will be charged to the budget of the Agreement for the Fiscal Year 2018 and the services provided as of July 1, 2018 will be charged to the budget of the Agreement for Fiscal Year 2018-2019.  This fifteen days extension does not affect or change the scope of work nor the budget assigned to the Agreement for Fiscal Year 2018.----------------------------------------------------------------------------------

**Fifth**:   All other terms and conditions of the Agreement, not affected by this Third Amendment, shall remain in full force and effect.-----------------------------------------------------

This is the agreement between the appearing Parties under this Third Amendment and so is hereby ratified.---------------------------------------------------------------------------------

In WITNESS THEREOF, the Parties hereto have agreed to execute this Third Amendment in San Juan, Puerto Rico, on this 31th day of July, 2018.------------------------

Puerto Rico Electric Power Authority           Filsinger Energy Partners, Inc.

by: _____           _____
José F. Ortiz Vázquez                           Todd W. Filsinger
Chief Executive Officer                          Senior Managing Director
EIN:  66-0433747                                EIN:  27-2567004

# PUERTO RICO ELECTRIC POWER AUTHORITY

## FOURTH AMENDMENT
## PROFESSIONAL SERVICES AGREEMENT
## 2018-P00091D

### APPEAR

AS FIRST PARTY:  The Puerto Rico Electric Power Authority ("PREPA"), a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act of May 2, 1941, No. 83, as amended, represented in this act by its Chief Executive Officer/Executive Director mister José F. Ortiz Vázquez, of legal age, married, engineer, and resident of San Juan, Puerto Rico.-------------------------------------------------

AS SECOND PARTY:  Filsinger Energy Partners, Inc. ("FEP"), a corporation formed and existing under the laws of the State of Colorado, United States of America, with a principal place of business in 90 Madison Street, Suite 600, Denver, CO 80206, herein represented by its Senior Managing Director, mister Todd W. Filsinger, of legal age, married and resident of Denver, Colorado, who authority to enter into this Amendment by virtue of Corporate Resolution, dated April 17, 2018.-

PREPA and FEP are individually referred to herein as a "Party" and together as the "Parties".

### WITNESSETH

In consideration of the mutual covenants hereinafter stated, the Parties agree themselves, their personal representatives, and successors as follows:

### STATE



WHEREAS: PREPA, by virtue of its enabling Act No. 83, has the authority to engage those professional, technical and consulting services necessary and convenient to the activities, programs, and operations of PREPA;

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 2

WHEREAS:  Pursuant Section 205 (2) (d) of Act No. 83 competitive bidding shall not be

necessary when professional or expert services or work are required and PREPA deems

it in the best interests of good administration for such works or services to be contracted

without such announcements.

WHEREAS:   The appearing Parties executed Professional Services Agreement

number 2018-P00091 ("Agreement") on December 7, 2017 ("Effective Date"), to

designate Mr. Todd W. Filsinger as the Chief Financial Advisor ("CFA") of PREPA –

WHEREAS:  The appearing Parties amended the Agreement on February 2, 2018 (the

"First Amendment") to supersede the Schedule of Professionals of Appendix A of the

Agreement, and replace it with a new Schedule of Professionals, and included a new

language in compliance with Act No. 2-1018.

WHEREAS:   The appearing Parties executed a Side Letter Agreement on

February 16, 2018 to include an Appendix for Reimbursement of Travel Expenses and to

clarify the authorization process for travel and lodging expenses.

WHEREAS:  On June 18, 2018 the Parties executed the Second Amendment to the

Agreement to expand the scope of work, increase the maximum amount of the Agreement

and update the Schedule of Professionals, and extend the Agreement for an

additional 31 days, until July 31, 2018, among others.

WHEREAS:   On June 20, 2018 by Resolution No. 4612, PREPA's Governing

Board authorized the execution of the Third Amendment of the Agreement for the Fiscal

Year 2018-2019, subject to the approval of the Office of Management and Budget (OMB),

and Fiscal Oversight Management Board (FOMB).

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 3

WHEREAS:  The Agreement expires on July 31, 2018 and the OMB and FOMB has not completed the review process.

WHEREAS:  In order to be able to continue uninterruptedly with FEP services, while the FOMB and OMB approvals was received, on July 31, 2018 the Parties approved the Third Amendment to the Agreement to extend its term for additional fifteen days, from August 1 to August 15, 2018.

WHEREFORE:  In accordance with PREPA's Governing Board Resolution No. 4612 and the recommendations made by the FOMB in its letter of August 1, 2018, both Parties hereby agree, to the following:

## Terms and Conditions

1.  Amend the Agreement to specifically state that FEP and Mr. Todd Filsinger in the role of Chief Financial Adviser (CFA) shall report to PREPA's Chief Executive Officer (CEO), as directed by and in accordance with PREPA's revised Fiscal Plan, as revised and approved by the FOMB as of August 1, 2018 (Fiscal Plan).

2.  Amend the Scope of the Agreement, as directed by and in accordance with PREPA's revised Fiscal Plan, to state that FEP and the CFA in support of PREPA's CEO shall perform the following:

    a.  Provide the CEO with general financial and managerial support on such matters as budgeting, financial management, cash management, and expense approval.



Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 4

    b.  Provide advice and support the CEO on the implementation of the fiscal and operational restructuring reforms and initiatives outlined in the certified Fiscal Plan and the implementation of the certified Budget.

    c.  Provide assistance and support on any other matters as such shall be requested by the CEO.

No part of the CFA's role or scope, as redefined in the Fiscal Plan, shall be interpreted or construed to infringe on the CEO's responsibility or authority over PREPA's day-to-day operations; implementing financial, operational and administrative restructuring efforts and initiatives consistent with the approved PREPA Fiscal Plan and Budget; ensuring an effective and efficient interaction with FOMB; or supporting the implementation of the PREPA Transformation Plan, including the generation asset transaction and T&D concession, and collaborating with the working group established for the PREPA Transformation Plan.

3. PREPA's CEO and the CFA will establish, during the thirty (30) days after the execution of this Fourth Amendment, key performance metrics associated with the Scope of Work. Nothing related to the establishment and implementation of such metrics shall change the meaning of any other parts of this Agreement.

4. Amend Article 1, BILLING AND PAYMENT, to increase the Agreement amount by eleven million one hundred thirty thousand dollars ($11,130,000), including reimbursable expenses, from ten million five hundred thousand dollars ($10,500,000) to twenty-one millions six hundred thirty thousand dollars ($21,630,000).

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 5

Supersede APPENDIX A "Schedule of Filsinger Energy Partners Professional who may be Assigned to this Matter" with the revised APPENDIX A "Schedule of Filsinger Energy Partners Professional who may be Assigned to this Matter" dated August 6, 2018, attached hereto, and incorporated by reference.

Also, supersede paragraph eight of the Agreement to require email notification to PREPA's General Counsel for purposes of superseding the existing "Schedule of Professionals" of Appendix A, such that should FEP assign another person not included in Appendix A, to attend to PREPA's matters pursuant to this Agreement, FEP shall promptly send PREPA an amended "Schedule of Professionals", to include such person's name and position for incorporation into this Agreement, approval of which from PREPA shall not be unreasonably withheld. Unless PREPA objects in writing within five (5) business days upon receipt of the amended "Schedule of Professionals", the amended "Schedule of Professionals" shall be considered approved as submitted.  The Discounted Rate Table of Appendix A shall remain unchanged.

5. Amend Article 2, TERM, to extend the term of the Agreement for Fiscal Year 2018-2019, from August 16, 2018 to June 30, 2019.

6. Amend Article 8, INDEPENDENT CONTRACTOR, to include that as an independent contractor, neither FEP or its officers, directors, and employees shall have any supervision authority over PREPA, PREPA's employees, or PREPA's contractors. Additionally, amend Article 8 to delete the following language: "; provided, however,

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 6

Mr. Todd Filsinger shall have the authority to bind PREPA, solely in his capacity as the CFA", such that the entire Article 8 states as follows:

PREPA and FEP agree that FEP's status hereunder, and the status of any agents, employees and subcontractors engaged by FEP, shall be that of an independent contractor only and not that of an employee, agent, director or officer of PREPA nor shall they be considered a public servant of PREPA or the Commonwealth of Puerto Rico.  FEP, its subcontractors, and their officers, directors, and employees are not agents or employees of PREPA and have no authority to obligate or bind PREPA in any way. Neither FEP or its officers, directors, and employees shall have any supervision authority over PREPA, PREPA's employees, or PREPA's contractors.

Consistent with the foregoing, PREPA and FEP acknowledge and agree that neither the role of CFA performed by Todd W. Filsinger, nor his role as Senior Managing Director and equity holder of FEP will render the certification required under Section 1 of this Agreement false or inaccurate. FEP, its subcontractors, and their officers, directors, and employees are not eligible for PREPA's employee benefit programs, such as (without limitation) vacations, sick leave, retirement benefits and others because of its condition as an independent contractor.  FEP is fully and solely responsible for all taxes, assessments, penalties, fines, and interest relating to wages and benefits paid to FEP's employees under this Agreement, pursuant to all federal, state and local laws, including required withholding from wages of

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 7

employees, regardless of the characterization of those employees by the
Parties, administrative agencies, or the courts.

7. Supersede Article 23, CFA APPROVAL RIGHTS OVER CONTRACTS IN EXCESS
OF $2 MILLION, from the Agreement with the revised Article 23 that states "CFA shall
not have approval authority over contracts, expenditures, or transfers of funds in
excess of $2 million."

8. COMPLIANCE WITH THE COMMONWEALTH OF PUERTO RICO CONTRACTING
REQUIREMENTS

FEP will comply will all applicable State Law, Regulations or Executive Orders that
regulate the contracting process and requirements of the Commonwealth of
Puerto Rico.  Particularly:  Law Num. 237-2004, as amended, which establishes
uniform contracting requirements for professional and consultant services for the
agencies and governmental entities of the Commonwealth of Puerto Rico.  3 L.P.R.A.
§8611 et seq., and the Puerto Rico Department of Treasury Circular Letter
Number 1300- 16-16.  CC No. 1300-16-16 (22/01/2016).

A.  **Executive Order Num. OE-1991-24 of June 18, 1991 to require certification
of compliance with the Internal Revenue Services of the Commonwealth
of Puerto Rico:**  Pursuant to Executive Order Number OE-1991-24 of
June 18, 1991, the Contractor will certify and guarantee that it has filed all the
necessary and required income tax returns to the Government of Puerto Rico
for the last five (5) years.  The Contractor, further will certify that it has complied

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 8

and is current with the payment of any and all income taxes that are, or were due, to the Government of Puerto Rico.  The Contractor shall provide, to the satisfaction of PREPA, and whenever requested by PREPA during the term of this Contract, the necessary documentation to support its compliance with this clause.  The Contractor will be given a specific amount of time to produce said documents.  During the term of this Contract, the Contractor agrees to pay and/or to remain current with any repayment plan agreed to by the Contractor with the Government of Puerto Rico.

B.  **Executive Order Num. OE-1992-52 of August 28, 1992 to require certification of compliance with the Department of Labor of the Commonwealth of Puerto Rico**.  Pursuant to Executive Order Number 1992-52, dated August 28, 1992 amending OE-1991-24, the Contractor will certify and warrant that it has made all payments required for unemployment benefits, workmen's compensation and social security for chauffeurs, whichever is applicable, or that in lieu thereof, has subscribed a payment plan in connection with any such unpaid items and is in full compliance with the terms thereof.  The Contractor accepts and acknowledges its responsibility for requiring and obtaining a similar warranty and certification from each and every Contractor and Sub Contractor whose service the Contractor has secured in connection with the services to be rendered under this Contract and shall forward evidence to PREPA as to its compliance with this requirement.

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 9

C. **Government of Puerto Rico Municipal Tax Collection Center**:   The Contractor will certify and guarantee that it does not have any current debt with regards to property taxes that may be registered with the Government of Puerto Rico's Municipal Tax Collection Center (known in Spanish as *Centro de Recaudación de Ingresos Municipales* ("*CRIM*"). The Contractor further will certify to be current with the payment of any and all property taxes that are or were due to the Government of Puerto Rico. The Contractor shall provide, to the satisfaction of PREPA and whenever requested by PREPA during the term of this Contract, Certification issued by the Municipal Revenues Collection Center (MRCC), assuring that Contractor does not owe any tax accruing to such governmental agency. To request such Certification, Contractor will use the form issued by the MRCC (called "CRIM-Certificados, Radicación, Estado de Cuenta y Todos los Conceptos" in the website). The Contractor will deliver upon request any documentation requested by PREPA. During the Term of this Contract, the Contractor agrees to pay and/or to remain current with any repayment plan agreed to by the Contractor with the Government of Puerto Rico with regards to its property taxes.

The Contractor shall provide a Personal Property Tax Filing Certification, issued by the MRCC which indicates that Contractor has filed its Personal Property Tax Return for the last five (5) contributory terms or Negative Debt certification issued by the MRCC with respect to real and property taxes and a sworn statement executed by Contractor indicating that:  (i) its revenues are derived

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 10

from the rendering of professional services, (ii) during the last five (5) years (or the time in which it has been providing professional services) it has had no taxable business or personal property on the 1st of January of each year, (iii) that for such reasons it has not been required to file personal property tax returns, as required under Article 6.03 of Act 83-1991, as amended and (iv) that for such reason it does not have an electronic tax file in the MRCC's electronic system.

D.  The Contractor shall furnish a Certification issued by the Treasury Department of Puerto Rico which indicates that Contractor does not owe Puerto Rico Sales and Use taxes to the Commonwealth of Puerto Rico; or is paying such taxes by an installment plan and is in full compliance with its terms.

E.  The Contractor shall provide a Puerto Rico Sales and Use Tax Filing Certificate, issued by the Treasury Department of Puerto Rico assuring that Contractor has filed his Puerto Rico Sales and Use Tax for the last sixty (60) contributory periods.

F.  The Contractor shall provide a copy of Contractor's Certificate of Merchant's Registration issued by the Treasury Department of Puerto Rico.

G.  **Puerto Rico Child Support Administration (*ASUME*):**  The Contractor shall present, to the satisfaction of PREPA, the necessary documentation certifying that the Contractor nor any of its owners, affiliates of subsidiaries, if applicable, have any debt, outstanding debt, or legal procedures to collect child support payments that may be registered with the Puerto Rico Child Support

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 11

Administration (known in Spanish as the *Administración Para El Sustento de Menores* (*ASUME*).  The Contractor will be given a specific amount of time to deliver said documents. 3 L.P.R.A. § 8611 et seq.;

H.   The Contractor shall provide a Good Standing Certificate issued by the Department of State of Puerto Rico.

I.   The Contractor shall provide a Certification of Incorporation, or Certificate of Authorization to do business in Puerto Rico issued by the Department of State of Puerto Rico.

J.   **Special Contribution for Professional and Consulting Services:**  As required by Act No. 48-2013, as amended, PREPA will withhold a special contribution of one point five percent (1.5%) of the gross amounts paid under this Contract.

K.   **Social Security and Income Tax Retentions**:  In compliance with Executive Order 1991 OE- 24; and C.F.R. Part 404 et. Seq., the Contractor will be responsible for rendering and paying the Federal Social Security and Income Tax Contributions for any amount owed as a result of the income, from this Contract.

L.   **Income Tax Retention Law:**  PREPA shall deduct and withhold seven percent (7%) of any and all payments to residents of the Commonwealth of Puerto Rico as required by the Internal Revenue Code of Puerto Rico.  In case of US citizens and Non US citizens, which are nonresidents of the Commonwealth of Puerto Rico the Contractor will be retained twenty percent (20%) and twenty-nine percent (29%) respectively.   PREPA will remit such withholdings to the

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 12

Government of Puerto Rico's Treasury Department (known in Spanish as *Departamento de Hacienda de Puerto Rico*).   The Contractor will request PREPA not to make such withholdings if, to the satisfaction of PREPA, the Contractor timely provides a release from such obligation by the Government of Puerto Rico's Treasury Department. 3 L.P.R.A. § 8611 et seq., 2011 L.P.R. 232; 232-2011.

M. **Compliance with Act No. 1 of Governmental Ethics:**   The Contractor will certify compliance with Act No. 1 of January 3, 2012, as amended, known as the Ethics Act of the Government of Puerto Rico, which stipulates that no employee or executive of PREPA nor any member of his/he immediate family (spouse, dependent children or other members of his/her household or any individual whose financial affairs are under the control of the employee) shall have any direct or indirect pecuniary interest in the services to be rendered under this Contract, except as may be expressly authorized by the Governor of Puerto Rico in consultation with the Secretary of Treasury and the Secretary of Justice of the Government.  3 L.P.R.A. § 8611 et seq.;

N. **Law 168-2000: Law for the Strengthening of the Family Support and Livelihood of Elderly People:**  The Contractor will certify that if there is any Judicial or Administrative Order demanding payment or any economic support regarding Act No. 168-2000, as amended, the same is current and in all aspects in compliance.  Act No. 168-2000 *"Law for the Strengthening of the Family Support and Livelihood of Elderly People"* in Spanish: *"Ley para el*

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 13

*Fortalecimiento del Apoyo Familiar y Sustento de Personas de Edad
Avanzada"*, 3 L.P.R.A. §8611 et seq.

O.  **Law Num. 127, May 31, 2004: Contract Registration in the Comptroller's
Office of Puerto Rico Act:** Payment for services object of this Contract will not
be made until this Contract is properly registered in the Office of the Comptroller
of the Government of Puerto Rico pursuant to Law Number 18 of October 30,
1975, as amended.

P.  **Dispensation:** Any and all necessary dispensations have been obtained from
any government entity and that said dispensations shall become part of the
contracting record.

Q.  Articles extracted, produced, assembled, packaged or distributed in Puerto Rico
by enterprises with operations in Puerto Rico, or distributed by agents
established in Puerto Rico shall be used when the service is rendered, provided
that they are available.

R.  **Rules of Professional Ethics:** The Contractor acknowledges and accepts that
it is knowledgeable of the rules of ethics of his/her profession and assumes
responsibility for his/her own actions.

S.  **Prohibition with respect to execution by public officers: (3 L.P.R.A. 8615(c))**
No public officer or employee authorized to contract on behalf of the executive
agency for which he/she works may execute a contract between the agency for
which he/she works and an entity or business in which he/she or any member



Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 14

of his/her family unit has or has had direct or indirect economic interest during the last four (4) years prior to his/her holding office.

T. **Prohibition with respect to contracting with officers or employees: (3 L.P.R.A. 8615(d))**

No executive agency may execute a contract in which any of its officers or employees or any member of their family units has or has had direct or indirect economic interest during the last four (4) years prior to their holding office, unless the Governor gives authorization thereto with the previous recommendation of the Secretary of the Treasury and the Secretary of Justice.

U. **Prohibition with respect to contracts with officers and employees of other Government entities: (3 L.P.R.A. 8615(e))**

No public officer or employee may be a party to or have any interest in any profits or benefits produced by a contract with any other executive agency or government dependency unless the Governor gives express authorization thereto with previous recommendation from the Secretary of the Treasury and the Secretary of Justice.

V. **Prohibition with respect to evaluation and approval by public officers: (3 L.P.R.A. 8615(f))**

No public officer or employee who has the power to approve or authorize contracts shall evaluate, consider, approve or authorize any contract between an executive agency and an entity or business in which he/she or any member

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 15

of his/her family unit has or has had direct or indirect economic interest during the last four (4) years prior to his/her holding office.

W.  **Prohibition with respect to execution by public officers contracts with former public officers: (3 L.P.R.A. 8615(h))**

No executive agency shall execute contracts with or for the benefit of persons who have been public officers or employees of said executive agency until after two (2) years have elapsed from the time said person has ceased working as such.

X.  **Anti-Corruption Code for a New Puerto Rico**. Contractor agrees to comply with the provisions of Act No. 2-2018, as the same may be amended from time to time, which establishes the Anti-Corruption Code for a New Puerto Rico. The Contractor hereby certifies that it does not represent particular interests in cases or matters that imply a conflicts of interest, or of public policy, between the executive agency and the particular interests it represents.

Contractor shall furnish a sworn statement to the effect that neither Contractor nor any president, vice president, executive director or any member of a board of officials or board of directors, or any person performing equivalent functions for Contractor has been convicted of or has pled guilty to any of the crimes listed in Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico or any of the crimes included in Act 2-2018.

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 16

Contractor hereby certifies that it has not been convicted in Puerto Rico or United States Federal court for under Articles 4.2, 4.3 or 5.7 of Act 1-2012, as amended, known as the Organic Act of the Office of Government Ethics of Puerto Rico, any of the crimes listed in Articles 250 through 266 of Act 146-2012, as amended, known as the Puerto Rico Penal Code, any of the crimes typified in Act 2-2018, as amended, known as the Anti-Corruption Code for a New Puerto Rico or any other felony that involves misuse of public funds or property, including but not limited to the crimes mentioned in Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico.

PREPA shall have the right to terminate the agreement in the event Contractor is convicted in Puerto Rico or United States Federal court for under Articles 4.2, 4.3 or 5.7 of Act 1-2012, as amended, known as the Organic Act of the Office of Government Ethics of Puerto Rico, any of the crimes listed in Articles 250 through 266 of Act 146-2012, as amended, known as the Puerto Rico Penal Code, any of the crimes typified in Act 2-2018, as amended, known as the Anti-Corruption Code for a New Puerto Rico or any other felony that involves misuse of public funds or property, including but not limited to the crimes mentioned in Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico.

If any of the previously required Certifications shows a debt, and Contractor has requested a review or adjustment of this debt, Contractor will certify that it has

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 17

made such request at the time of the Contract execution.  If the requested review or adjustment is denied and such determination is final, Contractor will provide, immediately, to PREPA a proof of payment of this debt; otherwise, Contractor accepts that the owed amount be offset by PREPA and retained at the origin, deducted from the corresponding payments.

Y.  **Consequences of Non-Compliance**:  The Contractor expressly agrees that the conditions outlined throughout this Section are essential requirements of this Contract.  Consequently, should any one of these representations, warranties or certifications be incorrect, inaccurate or misleading, in whole or in part, there shall be sufficient cause for the PREPA to render this Contract null and void, and the Contractor shall reimburse the PREPA all moneys received under this Contract.

10.  Termination by the Chief of Staff of the Governor of Puerto Rico and Interagency agreements

Pursuant to Memorandum No. 2017-001, Circular Letter 141-17, of the Office of the Chief of Staff of the Governor of Puerto Rico (Secretaría de la Gobernación) and the Office of Management and Budget (Oficina de Gerencia y Presupuesto – OGP), the Chief of Staff shall have the authority to terminate this Agreement at any time.  If so directed by the Chief of Staff, PREPA will terminate this Agreement by delivering to FEP a notice of termination specifying the extent to which the performance of the work under this Agreement is terminated, and the effective date of termination.  Upon the effective date of termination, FEP shall immediately

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 18

discontinue all services affected and deliver to PREPA all information, studies and other materials property of PREPA.  In the event of a termination by notice, PREPA shall be liable only for payment of services rendered up to and including the effective date of termination.

Both Parties acknowledge and agree that the contracted services herein may be provided to another entity of the Executive Branch which enters into an interagency agreement with PREPA or by direct disposition of the Office of the Chief of Staff. These services will be performed under the same terms and conditions in terms of hours of work and compensation set forth in this Agreement.  For the purpose of this clause, the term "entity of the Executive Branch" includes all agencies of the Government of Puerto Rico, as well as public instrumentalities, and public corporations.

12. Termination: PREPA shall have the right to terminate this Agreement with thirty (30) days prior written notice to FEP. Moreover, PREPA shall have the right to terminate this Agreement immediately in the event of negligence, dereliction of duties or noncompliance by FEP.

All other terms and conditions, established in the Agreement remain unaltered and fully enforceable. This is the agreement between the appearing Parties under this Fourth Amendment and so is hereby ratified.

Fourth Amendment Professional Services Agreement - Filsinger Energy Partners
Page 19


In WITNESS THEREOF, the Parties hereto have agreed to execute this Fourth

Amendment in San Juan, Puerto Rico, on this ___15___ day of August, 2018.------------------


Puerto Rico Electric Power Authority          Filsinger Energy Partners, Inc.


_____          _____
José F. Ortiz Vázquez                                Todd W. Filsinger
Chief Executive Officer                              Senior Managing Director
EIN:  66-0433747                                       EIN:  27-2567004



**APPENDIX A**

**Schedule of Filsinger Energy Partners Professionals who may be Assigned to this Matter**
Updated: August 6, 2018

| Professional | Title |
|---|---|
| Todd W. Filsinger | Senior Managing Director |
| Gary Germeroth | Managing Director |
| Stephen Kopenitz | Managing Director |
| Paul Harmon | Managing Director |
| Dave Andrus | Director |
| Norm Spence | Director |
| Robert Monday | Director |
| Timothy Wang | Director |
| A. Scott Davis | Director |
| Mike Green | Director |
| Nathan Pollak | Director |
| Rusty Evans | Director |
| Don Chambless | Managing Consultant |
| Laura Hatanaka | Managing Consultant |
| Mashiur Bhuiyan | Managing Consultant |
| Samuel Schreiber | Managing Consultant |
| Jill Kawakami | Managing Consultant |
| Matt Lee | Managing Consultant |
| Chad Balken | Managing Consultant |
| Marcus Klintmalm | Managing Consultant |
| Emilie Kelly | Managing Consultant |
| David "Biff" Whitten | Managing Consultant |
| Pamela Morin | Consultant |
| Allison Horn | Consultant |
| Janalee Chmel | Consultant |
| Kyle Chamberlain | Analyst |
| McGlynn Nickel | Analyst |

## PUERTO RICO ELECTRIC POWER AUTHORITY

### FIFTH AMENDMENT
### PROFESSIONAL SERVICES AGREEMENT
### 2018-P00091 E

### APPEAR

AS FIRST PARTY:  The Puerto Rico Electric Power Authority ("PREPA"), a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act of May 2, 1941, No. 83, as amended, represented in this act by its Chief Executive Officer/Executive Director mister José F. Ortiz Vázquez, of legal age, married, engineer, and resident of San Juan, Puerto Rico.-------------------------------------------------------

AS SECOND PARTY: Filsinger Energy Partners, Inc. ("FEP"), a corporation formed and existing under the laws of the State of Colorado, United States of America, with a principal place of business in 90 Madison Street, Suite 600, Denver, CO 80206, herein represented by its Senior Managing Director, mister Todd W. Filsinger, of legal age, married and resident of Denver, Colorado, who authority to enter into this Amendment by virtue of Corporate Resolution, dated April 17, 2018.-------------------------------------------------------

PREPA and FEP are individually referred to herein as a "Party" and together as the "Parties".------------------------------------------------------------------------------------------------------

### WITNESSETH

In consideration of the mutual covenants hereinafter stated, the Parties agree themselves, their personal representatives, and successors as follows:-----------------------

### STATE

WHEREAS: PREPA, by virtue of its enabling Act No. 83, has the authority to engage those professional, technical and consulting services necessary and convenient to the activities, programs, and operations of PREPA;-------------------------------------------------------

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 2

WHEREAS:  Pursuant Section 205 (2) (d) of Act No. 83 competitive bidding shall not be

necessary when professional or expert services or work are required and PREPA deems

it in the best interests of good administration for such works or services to be contracted

without such announcements.--------------------------------------------------------------------------------

WHEREAS:    The  appearing  Parties  executed  Professional  Services  Agreement

number  2018-P00091  ("Agreement")  on  December  7,  2017  ("Effective  Date"),  to

designate M r . Todd W. Filsinger as the Chief Financial Advisor ("CFA") of PREPA.----

WHEREAS:  The appearing Parties amended the Agreement on February 2, 2018 (the

"First Amendment") to supersede the Schedule of Professionals of Appendix A of the

Agreement,  and replace it with a new Schedule of Professionals, and included a new

language in compliance with Act No. 2-1018.--------------------------------------------------------------

WHEREAS:    The  appearing  Parties  executed  a  Side  Letter  Agreement  on

February 16, 2018 to include an Appendix for Reimbursement of Travel Expenses and to

clarify the authorization process for travel and lodging expenses.--------------------------------



WHEREAS:  On June 18, 2018 the Parties executed the Second Amendment to the

Agreement to expand the scope of work, increase the maximum amount of the Agreement

and  update  the  Schedule  of  Professionals,  and  extend  the  Agreement  for  an

additional 31 days, until July 31, 2018, among others.---------------------------------------------------

WHEREAS:  On July 31, 2018, the Parties executed the Third Amendment to the

Agreement to extend its term from August 1 to August 15, 2018.---------------------------------

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 3

WHEREAS:  On August 15, 2018, the Parties executed the Fourth Amendment to the
Agreement.  By this Amendment, the Parties stated that FEP and Mr. Todd Filsinger in
the role of Chief Financial Adviser report to PREPA's Chief Executive Officer (CEO), in
accordance with PREPA's revised Fiscal Plan.  Also, the Parties amended the Scope in
accordance with PREPA's Fiscal Plan, extended the term until June 30, 2019 and
increased the amount of the Agreement to twenty one million six hundred thirty thousand
dollars ($21,630,000).--------------------------------------------------------------------------------------

WHEREAS:   By Resolution 4612, the PREPA's Governing Board and by letter of
August 1, 2018 the Financial Oversight and Management Board for Puerto Rico
authorized the Chief Executive Officer to amend the Agreement to increase its maximum
amount by $22,250,000, among others.   Although the approved increment was for
$22,250,000 for Fiscal Year 2018-2019, the Parties agreed to execute the Fourth
Amendment to the Agreement only for the additional amount of $11,130,000 and
extended its term until June 30, 2019.-------------------------------------------------------------------



WHEREAS:  FEP provides the CEO with general financial and managerial support on
matters such as budgeting, financial and cash management, expenses approval, advice
on the implementation of the fiscal and operational reforms and initiatives outlined in the
Certified Fiscal Plan, implementation of the Certified Budget, as well as assistance and
support on any other matters, as such shall be requested by the CEO.------------------------

WHEREAS:  The Agreement 2018-P00091 is about to reach its maximum amount.  In
order to continue receiving FEP's services, it is necessary to increase its maximum

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 4

amount by three million dollars ($3,000,000), for the payment of FEP's services until

June 30, 2019.  This additional amount is included in the Governing Board and FOMB

approved amount for the Fiscal Year 2018-2019 ($22,500,000).--------------------------------

WHEREAS:  The maximum amount of the Agreement after the execution of the proposed

Fifth Amendment will be $24,630,000 ($10,500,000 budgeted for Fiscal Year 2017-2018

and $14,130,000 budgeted for Fiscal Year 2018-2019).---------------------------------------------

WHEREFORE:  In order to continue receiving the services of FEP and Mr. Todd Filsinger,

both Parties hereby agree to the following:-----------------------------------------------------------

**Terms and Conditions**

1. Amend Article 1, BILLING AND PAYMENT, to increase the Agreement amount by

   three million dollars ($3,000,000), including reimbursable expenses, from twenty-one

   millions six hundred thirty thousand dollars ($21,630,000) to twenty-four millions six

   hundred thirty thousand dollars ($24,630,000).-----------------------------------------------------

2. COMPLIANCE WITH THE COMMONWEALTH OF PUERTO RICO CONTRACTING

   

   REQUIREMENTS-------------------------------------------------------------------------------------------

   FEP will comply will all applicable State Law, Regulations or Executive Orders that

   regulate the contracting process and requirements of the Commonwealth of

   Puerto Rico.  Particularly:  Law Num. 237-2004, as amended, which establishes

   uniform contracting requirements for professional and consultant services for

   the agencies and governmental entities of the Commonwealth of Puerto Rico.

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 5

3 L.P.R.A. §8611 et seq., and the Puerto Rico Department of Treasury Circular Letter Number 1300- 16-16.  CC No. 1300-16-16 (22/01/2016).-------------------------------------

A. **Executive Order Num. OE-1991-24 of June 18, 1991 to require certification of compliance with the Internal Revenue Services of the Commonwealth of Puerto Rico:**   Pursuant to Executive Order Number OE-1991-24 of June 18, 1991, FEP will certify and guarantee that it has filed all the necessary and required income tax returns to the Government of Puerto Rico for the last five (5) years.  FEP, further will certify that it has complied and is current with the payment of any and all income taxes that are, or were due, to the Government of Puerto Rico.  FEP shall provide, to the satisfaction of PREPA, and whenever requested by PREPA during the term of this Contract, the necessary documentation to support its compliance with this clause.  FEP will be given a specific amount of time to produce said documents.  During the term of this Contract, FEP agrees to pay and/or to remain current with any repayment plan agreed to by the FEP with the Government of Puerto Rico.--------------------



B. **Executive Order Num. OE-1992-52 of August 28, 1992 to require certification of compliance with the Department of Labor of the Commonwealth of Puerto Rico.**   Pursuant to Executive Order Number 1992-52, dated August 28, 1992 amending OE-1991-24, FEP will certify and warrant that it has made all payments required for unemployment benefits, workmen's compensation and social security for chauffeurs, whichever

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 6

is applicable, or that in lieu thereof, has subscribed a payment plan in connection

with any such unpaid items and is in full compliance with the terms thereof.  FEP

accepts and acknowledges its responsibility for requiring and obtaining a similar

warranty and certification from each and every Contractor and Sub Contractor

whose service FEP has secured in connection with the services to be rendered

under this Contract and shall forward evidence to PREPA as to its compliance

with this requirement.------------------------------------------------------------------------------

C.   **Government of Puerto Rico Municipal Tax Collection Center:** FEP will certify

and guarantee that it does not have any current debt with regards to property

taxes that may be registered with the Government of Puerto Rico's Municipal

Tax Collection Center (known in Spanish as *Centro de Recaudación de*

*Ingresos Municipales* ("*CRIM*").  FEP further will certify to be current with the

payment of any and all property taxes that are or were due to the Government

of Puerto Rico.  FEP shall provide, to the satisfaction of PREPA and whenever

requested by PREPA during the term of this Contract, Certification issued by the



Municipal Revenues Collection Center (MRCC), assuring that FEP does not

owe any tax accruing to such governmental agency.   To request such

Certification, FEP will use the form issued by the MRCC (called "CRIM-

Certificados, Radicación, Estado de Cuenta y Todos los Conceptos" in the

website).   FEP will deliver upon request any documentation requested by

PREPA.  During the Term of this Contract, FEP agrees to pay and/or to remain

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 7

current with any repayment plan agreed to by FEP with the Government of
Puerto Rico with regards to its property taxes.--------------------------------------------

FEP shall provide a Personal Property Tax Filing Certification, issued by the
MRCC which indicates that FEP has filed its Personal Property Tax Return for
the last five (5) contributory terms or Negative Debt certification issued by the
MRCC with respect to real and property taxes and a sworn statement executed
by FEP indicating that:  (i) its revenues are derived from the rendering of
professional services, (ii) during the last five (5) years (or the time in which it has
been providing professional services) it has had no taxable business or personal
property on the 1st of January of each year, (iii) that for such reasons it has not
been required to file personal property tax returns, as required under Article 6.03
of Act 83-1991, as amended and (iv) that for such reason it does not have an
electronic tax file in the MRCC's electronic system.-------------------------------------

D.  FEP shall furnish a Certification issued by the Treasury Department of
Puerto Rico which indicates that FEP does not owe Puerto Rico Sales and Use
taxes to the Commonwealth of Puerto Rico; or is paying such taxes by an
installment plan and is in full compliance with its terms.--------------------------------



E.  FEP shall provide a Puerto Rico Sales and Use Tax Filing Certificate, issued by
the Treasury Department of Puerto Rico assuring that FEP has filed his
Puerto Rico Sales and Use Tax for the last sixty (60) contributory periods.-------

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 8

F.   FEP shall provide a copy of FEP's Certificate of Merchant's Registration issued by the Treasury Department of Puerto Rico.----------------------------------------------

G.   **Puerto Rico Child Support Administration (_ASUME_):**  FEP shall present, to the satisfaction of PREPA, the necessary documentation certifying that FEP nor any of its owners, affiliates of subsidiaries, if applicable, have any debt, outstanding debt, or legal procedures to collect child support payments that may be registered with the Puerto Rico Child Support Administration (known in Spanish as the _Administración Para El Sustento de Menores_ (_ASUME_).  FEP will be given a specific amount of time to deliver said documents. 3 L.P.R.A. § 8611 et seq.-----------------------------------------------------------------------------------

H.   FEP shall provide a Good Standing Certificate issued by the Department of State of Puerto Rico.--------------------------------------------------------------------------------

I.   FEP shall provide a Certification of Incorporation, or Certificate of Authorization to do business in Puerto Rico issued by the Department of State of Puerto Rico.-

J.   **Special Contribution for Professional and Consulting Services:**  As required by Act No. 48-2013, as amended, PREPA will withhold a special contribution of one point five percent (1.5%) of the gross amounts paid under this Contract.----



K.   **Social Security and Income Tax Retentions**:  In compliance with Executive Order 1991 OE- 24; and C.F.R. Part 404 et. Seq., FEP will be responsible for rendering and paying the Federal Social Security and Income Tax Contributions for any amount owed as a result of the income, from this Contract.-----------------

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 9

L.  **Income Tax Retention Law:**  PREPA shall deduct and withhold ten percent
(10%) of any and all payments to residents of the Commonwealth of Puerto Rico
as required by the Internal Revenue Code of Puerto Rico.  In case of US citizens
and Non US citizens, which are nonresidents of the Commonwealth of
Puerto Rico FEP will be retained twenty percent (20%) and twenty-nine percent
(29%) respectively.  PREPA will remit such withholdings to the Government of
Puerto Rico's Treasury Department (known in Spanish as *Departamento de
Hacienda de Puerto Rico*).  FEP will request PREPA not to make such
withholdings if, to the satisfaction of PREPA, FEP timely provides a release from
such obligation by the Government of Puerto Rico's Treasury Department.
3 L.P.R.A. § 8611 et seq., 2011 L.P.R. 232; 232-2011.--------------------------------

M.  **Compliance with Act No. 1 of Governmental Ethics:**  FEP will certify
compliance with Act No. 1 of January 3, 2012, as amended, known as the Ethics
Act of the Government of Puerto Rico, which stipulates that no employee or
executive of PREPA nor any member of his/he immediate family (spouse,
dependent children or other members of his/her household or any individual
whose financial affairs are under the control of the employee) shall have any
direct or indirect pecuniary interest in the services to be rendered under this
Contract, except as may be expressly authorized by the Governor of
Puerto Rico in consultation with the Secretary of Treasury and the Secretary of
Justice of the Government.  3 L.P.R.A. § 8611 et seq.--------------------------------



Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 10

N.  **Law 168-2000: Law for the Strengthening of the Family Support and
Livelihood of Elderly People**:  FEP will certify that if there is any Judicial or
Administrative Order demanding payment or any economic support regarding
Act No. 168-2000, as amended, the same is current and in all aspects in
compliance.  Act No. 168-2000 "*Law for the Strengthening of the Family Support
and Livelihood of Elderly People*" in Spanish: "*Ley para el Fortalecimiento del
Apoyo Familiar y Sustento de Personas de Edad Avanzada*", 3 L.P.R.A. §8611
et seq.----------------------------------------------------------------------------------------------

O.  **Law Num. 127, May 31, 2004: Contract Registration in the Comptroller's
Office of Puerto Rico Act:**  Payment for services object of this Contract
will not be made until this Contract is properly registered in the Office of the
Comptroller of the Government of Puerto Rico pursuant to Law Number 18 of
October 30, 1975, as amended.------------------------------------------------------------

P.  **Dispensation:**  Any and all necessary dispensations have been obtained from
any government entity and that said dispensations shall become part of the
contracting record.------------------------------------------------------------------------------



Q.  Articles extracted, produced, assembled, packaged or distributed in Puerto Rico
by enterprises with operations in Puerto Rico, or distributed by agents
established in Puerto Rico shall be used when the service is rendered, provided
that they are available.------------------------------------------------------------------------

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 11

R. **Rules of Professional Ethics:**   FEP acknowledges and accepts that it is knowledgeable of the rules of ethics of his/her profession and assumes responsibility for his/her own actions.--------------------------------------------------------

S. **Prohibition with respect to execution by public officers: (3 L.P.R.A. 8615(c))**

No public officer or employee authorized to contract on behalf of the executive agency for which he/she works may execute a contract between the agency for which he/she works and an entity or business in which he/she or any member of his/her family unit has or has had direct or indirect economic interest during the last four (4) years prior to his/her holding office.-------------------------------------

T. **Prohibition with respect to contracting with officers or employees: (3 L.P.R.A. 8615(d))**---------------------------------------------------------------------------------

No executive agency may execute a contract in which any of its officers or employees or any member of their family units has or has had direct or indirect economic interest during the last four (4) years prior to their holding office, unless the Governor gives authorization thereto with the previous recommendation of the Secretary of the Treasury and the Secretary of Justice.



U. **Prohibition with respect to contracts with officers and employees of other Government entities: (3 L.P.R.A. 8615(e))**----------------------------------------------

No public officer or employee may be a party to or have any interest in any profits or benefits produced by a contract with any other executive agency or government dependency unless the Governor gives express authorization

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 12

thereto with previous recommendation from the Secretary of the Treasury and the Secretary of Justice.------------------------------------------------------------------------

V.   **Prohibition with respect to evaluation and approval by public officers: (3 L.P.R.A. 8615(f))**--------------------------------------------------------------------
No public officer or employee who has the power to approve or authorize contracts shall evaluate, consider, approve or authorize any contract between an executive agency and an entity or business in which he/she or any member of his/her family unit has or has had direct or indirect economic interest during the last four (4) years prior to his/her holding office.------------------------------------

W.   **Prohibition with respect to execution by public officers contracts with former public officers: (3 L.P.R.A. 8615(h))**---------------------------------------------
No executive agency shall execute contracts with or for the benefit of persons who have been public officers or employees of said executive agency until after two (2) years have elapsed from the time said person has ceased working as such.----------------------------------------------------------------------------------------



X.   **Anti-Corruption Code for a New Puerto Rico**.  FEP agrees to comply with the provisions of Act No. 2-2018, as the same may be amended from time to time, which establishes the Anti-Corruption Code for a New Puerto Rico.  FEP hereby certifies that it does not represent particular interests in cases or matters that imply a conflicts of interest, or of public policy, between the executive agency and the particular interests it represents.-------------------------------------------------

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 13

FEP shall furnish a sworn statement to the effect that neither FEP nor any president, vice president, executive director or any member of a board of officials or board of directors, or any person performing equivalent functions for FEP has been convicted of or has pled guilty to any of the crimes listed in Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico or any of the crimes included in Act 2-2018.----------------------------------------------------

FEP hereby certifies that it has not been convicted in Puerto Rico or United States Federal court for under Articles 4.2, 4.3 or 5.7 of Act 1-2012, as amended, known as the Organic Act of the Office of Government Ethics of Puerto Rico, any of the crimes listed in Articles 250 through 266 of Act 146-2012, as amended, known as the Puerto Rico Penal Code, any of the crimes typified in Act 2-2018, as amended, known as the Anti-Corruption Code for a New Puerto Rico or any other felony that involves misuse of public funds or property, including but not limited to the crimes mentioned in Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico.---------



PREPA shall have the right to terminate the agreement in the event FEP is convicted in Puerto Rico or United States Federal court for under Articles 4.2, 4.3 or 5.7 of Act 1-2012, as amended, known as the Organic Act of the Office of Government Ethics of Puerto Rico, any of the crimes listed in Articles 250

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 14

through 266 of Act 146-2012, as amended, known as the Puerto Rico Penal
Code, any of the crimes typified in Act 2-2018, as amended, known as the Anti-
Corruption Code for a New Puerto Rico or any other felony that involves misuse
of public funds or property, including but not limited to the crimes mentioned in
Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration
and Transformation of Human Resources in the Government of Puerto Rico.---
If any of the previously required Certifications shows a debt, and FEP has
requested a review or adjustment of this debt, FEP will certify that it has made
such request at the time of the Contract execution.  If the requested review or
adjustment is denied and such determination is final, FEP will provide,
immediately, to PREPA a proof of payment of this debt; otherwise, FEP accepts
that the owed amount be offset by PREPA and retained at the origin, deducted
from the corresponding payments.-------------------------------------------------------

Y.  **Consequences of Non-Compliance**:  FEP expressly agrees that the conditions
outlined throughout this Section are essential requirements of this Contract.
Consequently, should any one of these representations, warranties or
certifications be incorrect, inaccurate or misleading, in whole or in part, there
shall be sufficient cause for the PREPA to render this Contract null and void,
and FEP shall reimburse the PREPA all moneys received under this Contract.-

10.  **Termination by the Chief of Staff of the Governor of Puerto Rico and
Interagency agreements:**  Pursuant to Memorandum No. 2017-001, Circular

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 15

Letter 141-17, of the Office of the Chief of Staff of the Governor of Puerto Rico (Secretaría de la Gobernación) and the Office of Management and Budget (Oficina de Gerencia y Presupuesto – OGP), the Chief of Staff shall have the authority to terminate this Agreement at any time.  If so directed by the Chief of Staff, PREPA will terminate this Agreement by delivering to FEP a notice of termination specifying the extent to which the performance of the work under this Agreement is terminated, and the effective date of termination.  Upon the effective date of termination, FEP shall immediately discontinue all services affected and deliver to PREPA all information, studies and other materials property of PREPA.  In the event of a termination by notice, PREPA shall be liable only for payment of services rendered up to and including the effective date of termination.--------------------------
Both Parties acknowledge and agree that the contracted services herein may be provided to another entity of the Executive Branch which enters into an interagency agreement with PREPA or by direct disposition of the Office of the Chief of Staff.



These services will be performed under the same terms and conditions in terms of hours of work and compensation set forth in this Agreement.  For the purpose of this clause, the term "entity of the Executive Branch" includes all agencies of the Government of Puerto Rico, as well as public instrumentalities, and public corporations.------------------------------------------------------------------------------------------

12. **Termination:**  PREPA shall have the right to terminate this Agreement with thirty (30) days prior written notice to FEP. Moreover, PREPA shall have the right to

Fifth Amendment Professional Services Agreement - Filsinger Energy Partners, Inc.
Page 16

terminate this Agreement immediately in the event of negligence, dereliction of

duties or noncompliance by FEP.---------------------------------------------------------------

All other terms and conditions, established in the Agreement remain unaltered and

fully enforceable. This is the agreement between the appearing Parties under this Fifth

Amendment and so is hereby ratified.---------------------------------------------------------------

In WITNESS THEREOF, the Parties hereto have agreed to execute this Fifth Amendment

in San Juan, Puerto Rico, on this __15__ day of ____March of 2019_____.-------------------

Puerto Rico Electric Power Authority          Filsinger Energy Partners, Inc.


_____          _____
José F. Ortiz Vázquez                     Todd W. Filsinger
Chief Executive Officer                   Senior Managing Director
EIN:  66-0433747                          EIN:  27-2567004

2020–P00013

GOVERNMENT OF PUERTO RICO

PUERTO RICO ELECTRIC POWER AUTHORITY

**PROFESSIONAL SERVICES AGREEMENT**

-------------------------------------------------APPEAR---------------------------------------------------------

**AS FIRST PARTY**:  The Puerto Rico Electric Power Authority ("PREPA"), a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act No. 83 of May 2, 1941, as amended (Act 83), represented in this act by its Chief Executive Officer/Executive Director, José F. Ortiz Vázquez, of legal age, married, and resident of San Juan, Puerto Rico.-----------------------------------------------------

**AS SECOND PARTY**:  Filsinger Energy Partners, Inc. ("FEP"), a corporation formed and existing under the laws of the State of Colorado, United States of America, with a principal place of business in 90 Madison Street, Suite 600, Denver, CO 80206, and authorized to do business in Puerto Rico, herein represented by its Senior Managing Director, Todd W. Filsinger, of legal age, married and resident of Denver, Colorado, authorized to enter into this Agreement by virtue of Corporate Resolution dated June 30, 2019. ------------------------------------------------------------------------------------

Both PREPA and FEP are herein individually referred to as a Party and collectively referred to as the Parties. ----------------------------------------------------------------------



------------------------------------------**WITNESSETH**--------------------------------------------------

WHEREAS, PREPA, by virtue of Act 83 has the authority to engage those professional, technical and consulting services necessary and convenient to the activities, programs and operations of PREPA; ----------------------------------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 2

WHEREFORE:  In accordance with PREPA's Governing Board Resolution No. 4717 and the mutual covenants and agreements contained in this Agreement, hereinafter stated, the Parties agree themselves, their personal representatives, and successors to enter into this Agreement under the following: --------------------------------------------------------- --------------------------------------TERMS AND CONDITIONS--------------------------------------

## Article 1.  Scope of Services

1.1   Provide to PREPA's Chief Executive Officer ("CEO") with general financial and managerial support on such matters as budgeting, financial management, cash management, and expense approval. ---------------------------------------------------------------

1.2   Provide advice and support to the CEO on the implementation of the fiscal and operational restructuring reforms and initiatives outlined in the certified Fiscal Plan and the implementation of the certified Budget. ------------------------------------------------

1.3   Provide assistance and support on any other matters as such shall be requested by the CEO. -------------------------------------------------------------------------------

1.4   At the direction of PREPA, FEP may be required to work with other consulting, legal, investment, or other type of firms.  The Parties agree to discuss such tasking in advance, so that all the Parties have a clear understanding as to their responsibilities.  FEP is not responsible for work performed by others. ----------------

1.5  Appendix A attached hereto provides a schedule of the professionals assigned to this matter.  Should FEP assign another person not included in Appendix A to attend to PREPA's matters pursuant to this Agreement, FEP shall promptly send



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 3

PREPA an amended "Schedule of Professionals", to include such person's name and position for incorporation into this Agreement, approval of which by PREPA shall not be unreasonably withheld.  Unless PREPA objects in writing within (5) business days upon receipt of the amended "Schedule of Professionals", the amended "Schedule of Professionals" shall be considered approved as submitted.

1.6   Pryor to each week, FEP will provide PREPA a table summarizing the planned staffing support to be provided for each task. For the avoidance of doubt, the provided table will include the names of personnel planned to be assigned to each task and whether such personnel are planning to travel to Puerto Rico to provide "on-site" support. Nothing presented in the provided summary table shall prevent other personnel listed in the Appendix A schedule of professionals from supporting FEP's scope of work, as needed and determined by FEP. FEP will report a summary of activities to PREPA's Project Management Office ("PMO") monthly in a format mutually agreeable to FEP and the Administrator of the PMO. ----------------



**Article 2.  <u>Services Coordination</u>**

All the Services of FEP in relation to the terms and conditions of this Agreement will be coordinated through the CEO or the person delegated by him. ----------------------------------

**Article 3.  <u>Agreement Assignment or Subcontract</u>**

FEP shall not assign nor subcontract its rights and obligations under this Agreement, except in the event that PREPA gives written authorization for such actions.  Provided, that no subcontract shall be considered for PREPA's approval, except when the

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 4

following requirements are met:  (1) FEP delivers to PREPA a copy of the subcontract, not less than thirty (30) days prior to the effective date of the proposed subcontract; (2) the subcontract includes, as a condition for its legal validity and enforceability, a provision whereby PREPA has the right to substitute, subrogate or assume FEPs' rights under the subcontract, in the event that PREPA terminates the Agreement pursuant to Article 5.2; (3) the subcontract includes, as a condition for its validity and enforceability, a provision establishing for the subcontractor, the obligation to comply with all of FEPs' obligations under the Agreement *(mirror image clause),* except for such obligations, terms and conditions which are exclusively related to works or services not included under the subcontract.  A request for authorization to subcontract shall specify the issues or matters that will be referred to the subcontractor.  Unless otherwise expressly agreed, these services shall be paid as part of the Agreement Amount, as stated in Article 6, Payment. ------------------------------------------------------------------------------------------



**Article 4.  <u>Agreement Term</u>**

This Agreement shall be in effect from the date of its execution (the "Effective Date") until June 30, 2020 ("Agreement Period") unless earlier terminated pursuant to Articles 5.1, 5.2, 28 or 29.  The Agreement may be extended, for an additional annual fiscal period only by written amendment agreed upon by both Parties, at the exclusive option of PREPA, and subject to availability of funds ------------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 5

## Article 5.  <u>Agreement Termination</u>

5.1   Either Party shall have the right to terminate this Agreement, at any time, with thirty (30) days prior written notice by registered mail, return receipt requested, or overnight express mail to the other Party.  If notice is given, the Agreement shall terminate upon the expiration of the thirty (30) days ("Termination Date") and PREPA shall be obligated to pay all fees and expenses incurred up to the Termination Date, in accordance with the terms of this Agreement.  The rights, duties and responsibilities of the Parties shall continue in full force and effect during the thirty (30) day notice period.  In the event of termination, FEP shall have no further right to compensation except for what has been accrued for services rendered and expenses incurred under the Agreement until the Termination Date. - If either Party terminates this Agreement (whether pursuant to Article 5.1, 5.2, or 29), such termination shall not affect FEP's right to receive all amounts owed by PREPA to FEP or the accrued rights of PREPA to receive the work product generated by FEP pursuant to this Agreement (the "Work") through the date of termination.  The obligations of the Parties under Articles 6, 7, 8, 11, 13, 14, 20, 24 and 25 shall survive termination of this Agreement. -----------------------------------------

5.2   If either Party materially breaches any term or provision of this Agreement and does not remedy such material breach within 72 hours after receipt of a prior written notice of default, the non-breaching Party may immediately terminate this

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 6

Agreement upon written notice, and such termination shall be effective as of the date of such written notice. ------------------------------------------------------------------

5.3   The Parties acknowledge that PREPA is undergoing a transformation process, and therefore, both Parties agree that in the eventuality of the execution of a Partnership Contract, Sale Contract or any other PREPA Transaction (as these terms are defined in Act 120-2018), PREPA may sell, assign, convey, transfer, pledge, mortgage, sublease, delegate, hypothecate, or otherwise dispose (each, a "Transfer") any of its rights, title, or interest in this Agreement as permitted by applicable law and at any time, and without FEP's consent or cost, expense or incremental liability to PREPA, to any future operator of Puerto Rico's electric power transmission and distribution system or any of its affiliates, or to any governmental agency, body, public corporation or municipality of Puerto Rico; provided, that PREPA shall notify FEP no later than thirty (30) days before the effective date of any such Transfer.  FEP acknowledges that all its responsibilities and obligations under the Agreement, such as work to be performed and services to be provided, will continue in full force and effect until the expiration of the thirty (30) day period. ------------------------------------------------------------------------

**Article 6.  Payment**

6.1   In accordance with the terms and conditions contained herein, PREPA agrees and FEP accepts that the total amount to be paid under the Agreement shall not exceed seven millions four hundred twenty thousand dollars ($7,420,000),

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 7

including reimbursable expenses (the "Agreement Amount").  All payments to be made under this Agreement will be charged to account 01-4019-92319-556-673. PREPA will only pay for Services already rendered before the submitted invoice date and invoiced in accordance with Article 7.1.  PREPA will not be required to make advance payments for any future service to be rendered by FEP under the Agreement. --------------------------------------------------------------------------------------------

6.2   Nothing herein shall preclude the Parties from agreeing to increase the Agreement Amount, provided such agreement is in writing and signed by both Parties. ----------

6.3   FEP shall immediately notify PREPA when the billing under the Agreement amounts to seventy-five percent (75%) of the Agreement Amount.   Once this notification has been issued, FEP, in coordination with PREPA, will ensure that no services will be rendered in excess of the Agreement Amount, except in the event that a written amendment is agreed upon by both Parties.  In addition, FEP shall present an itemized list of the remaining billable Services under the Agreement. ----

**Article 7.  <u>Fees, Expenses and Disbursements</u>**

7.1   FEP shall be paid on the basis of actual time and expenses at the hourly rates set forth in Appendix A; provided, that FEP personnel shall not be compensated for hours spent on non-working travel time. FEP shall provide PREPA with an itemized invoice for its fees and accrued expenses on a monthly basis in accordance with the Compensation Order.   PREPA will only pay to FEP up to a maximum of 12 hours daily per FEP timekeeper. --------------------------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 8

7.2 FEP shall be entitled to reimbursement for expenses incurred (including reasonable expenses of counsel, if any) in connection with or arising out of activities under or contemplated by, this Agreement.  Reimbursable expenses shall not exceed six percent (6%) of the Agreement Amount and will be reimbursed by PREPA through the presentation of acceptable evidence for such expenses. Reimbursement for air travel expenses is restricted to economy class fares, including restricted fares.  All expenses shall be subject to PREPA's internal expense limitation and requirements, and will be reimbursed pursuant to the Compensation Order. ------------------------------------------------------------------------

7.3 Any travel and lodging expense for which a reimbursement is requested shall be reasonable and necessary, and any extraordinary travel and lodging expenses shall be authorized in writing and in advance by PREPA.  PREPA will not reimburse expenses that do not comply with this provision.  Under no circumstances will expenses for alcoholic beverages be reimbursed. -------------------

7.4 Summaries of transportation expenses should reflect the identity of the user, the date and amount of each specific cost, and the points of travel.  Summaries of lodging and meals expenses should include the identity of the person making the expenditure, the date and amount, and the nature of the expenditure.  PREPA expects you to be reasonable and prudent both in selecting hotels and restaurants, if applicable, for which we are to be charged and in distinguishing between personal expenses and properly chargeable business expenses. -----------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 9

Travel expenses reimbursement applies for personnel providing the services to PREPA, travel expenses for family members or guests are not chargeable to PREPA or reimbursable. --------------------------------------------------------------------------------



7.4.1   Air Travel - The cost of air travel will be reimbursed up to an amount of $500 per person per round trip (including:  seat assignment, applicable taxes, and other applicable fees).  FEP shall submit a copy of the airline ticket and paid invoice.  Airfare may only be invoiced following completion of travel.  FEP shall buy economy class ticket or equivalent, then if desired, he/she may upgrade, but PREPA will only pay the amount corresponding to the economy class or equivalent airfare. Baggage fees will not be reimbursed. --

7.4.2   Per Diem Rates (no proof of payment will be required): -----------------------------

Meals: - PREPA shall pay as an expense hereunder $57 per person per day for each traveling day for persons working "on-site" at PREPA. -----------------

Lodging (standard not smoking room): - $250 per person, per night, excluding fees and taxes.  FEP will use the most economical alternative of lodging, including temporary rentals of apartments or rooms (e.g., a rental agency such as Airbnb or VRBO).  For travel periods longer than five days, temporary rentals shall be coordinated when this temporary rental is less expensive than hotel accommodation, and evidence of said temporary rental shall be provided. --------------------------------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 10



> Ground Transportation: - PREPA shall pay as an expense hereunder $20 per person per working day for each person working "on-site" at PREPA for taxis or Uber type services, while in Puerto Rico or on official trips.  If a car is rented for the services to be provided, a fixed amount of $25 per vehicle, per day will be reimbursed for parking expenses, upon presentation of evidence of the car rental (no proof of payment will be required).----------------

7.5   PREPA reserves the right to question the charges on any bill (even after payment) and to request a discount or refund of those charges that are disputed in accordance with the Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Compensation Order").  At PREPA's request, copies of bills and records reflecting reimbursable expenses must be provided to PREPA. In no event shall PREPA delay payment of an FEP invoice beyond the date upon which such invoice is approved by order of the District Court pursuant to an Interim Fee Application filed pursuant to the Compensation Order. -------------------------------------------------------

**Article 8.  Invoices**

8.1   FEP shall submit all invoices for payment in accordance with the Compensation Order under the Title III case and PREPA's internal policies and procedures. PREPA shall pay such invoices in accordance with the Compensation Order.  All rights of PREPA to review and object to the FEP invoices as set forth in the Compensation Order are expressly preserved and nothing in this Agreement shall

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 11



alter PREPA's rights to review and object to FEP invoices as set forth in the
Compensation Order.  Provided, that invoices that are subject to the fee process in
the Title III proceedings shall be paid in accordance. with the Title III process.
Notwithstanding, FEP shall submit the invoices to PREPA, concurrently with the
Title III fee examiner submittal.  ------------------------------------------------------------------

8.2   All invoices must be prepared in corporate letterhead within the following
framework.   PREPA shall not process invoices unless and until such invoices
include the items below. ----------------------------------------------------------------------------

a.  Invoice Number. ---------------------------------------------------------------------------------

b.  A brief description of the project or task to which the services relate. --------------

c.  A full chronological description of the services performed during the statement
period, the name of the professional who performed such services and the
hourly rates and the number of hours spent (by date) for each professional. -----

d.  Reasonable detail of the reimbursable expenses and disbursements made on
behalf of PREPA during the statement period. -----------------------------------------------

e.  Fees, disbursements and total charges during the statement period, fiscal
year-to- date and since the commencement of the matter. ---------------------------

f.  If reimbursement for third party services is to be made, a copy of the relevant
third party invoice must be attached. -----------------------------------------------------------

g.  The name of PREPA's official that requested your services. ---------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 12



h.  Please show clearly on the invoice the total current bill (without regard to prior balances).  Prior balances or payment history should be shown separately, if at all, by invoice number, invoice date, and amount. ----------------------------------

8.3  The invoice for professional services must be duly certified by an authorized representative of FEP.  FEP shall allocate any invoiced fees between:  (i) activities undertaken outside of Puerto Rico; and (ii) those relating to activities undertaken within Puerto Rico.------------------------------------------------------------------------

8.4  FEP will conduct the above-described scope of work at the rates included in Appendix A.  A discount of 10% shall be applied to the fees for each invoice included in the Monthly Fee Statement at the time of submission provided that all prior invoices (including all invoices submitted pursuant to the Agreement for Independent Contractor Consulting Services made as of the December 7, 2017) have been timely paid in accordance with the Compensation Order.  Expenses will be billed at the costs actually incurred, except as provided in section 7.4.  There will be no reimbursement of alcohol.  Fees and expenses shall be billed and paid pursuant to the Compensation Order. ----------------------------------------------------------

8.5  PREPA will review the invoices upon receipt, and if they are in compliance with the requirements set forth in this Agreement, it will proceed with payment.  FEP will comply with the terms of the Compensation Order in invoicing its fees and PREPA shall pay FEP in accordance with the Compensation Order. ------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 13

8.6   All invoices submitted by FEP shall include the following Certification in order to proceed with its payment: ---------------------------------------------------------------------------

No Interest Certification:

*"We certify under penalty of nullity that no public servant of PREPA will derive or obtain any benefit or profit of any kind from the contractual relationship which is the basis of this invoice.  If such benefit or profit exists, the required waiver has been obtained prior to entering into the Agreement.   The only consideration to be received in exchange for the performance of the Services provided is the agreed-upon price that has been negotiated with an authorized representative of the PREPA.  The total amount shown on this invoice is true and correct.  The Services have been rendered, and no payment has been received".*



_____

*FEP's Representative Signature*

This is an essential requirement and those invoices without this Certification will not be processed for payment.   In order to comply with the certification requirements set forth above, FEP shall require that subcontractors, if any approved by PREPA, providing Services also make the certification set forth above in any invoices submitted in connection with the Services. ---------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 14

**Article 9.  Transfer of Funds**

9.1  If FEP decides to assign or transfer an amount, due or payable, to which it is entitled for services rendered or goods provided during the term of this Agreement, Consultant shall notify PREPA of such transfer of funds, in accordance to the provisions of Act 21-2012.  Said notice shall clearly indicate the rights granted, including a copy of the contract under which the assignment or transfer of funds is made, the exact amount of funds to be assigned or transferred, and specific identification information regarding the assignee (full name of the person or company), address and any other contact information. -------------------------------------

9.2  FEP acknowledges and agrees that PREPA's payment obligation under any assignment of funds will cease upon payment of the outstanding amounts under this Agreement.  PREPA shall not be required to make payments or transfer any funds for an amount that exceeds the payment to which FEP is entitled to under this Agreement. --------------------------------------------------------------------------------

9.3  FEP shall include with its notice of assignment of funds a cashier's check or money order for two hundred dollars ($200), payable to "Puerto Rico Electric Power Authority", to cover administrative costs in processing such assignment. --------------

**Article 10.  Information and Material Facts**

10.1  PREPA shall promptly provide to FEP all information under the control of PREPA and necessary for FEP to perform the Services under this Agreement and those material facts that FEP may reasonably require in order to provide its Services to

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 15

PREPA.   PREPA will ensure, to the best of its knowledge and belief, that the documents, data, and other information and material facts provided to FEP, which are under its control, are true and complete, and does not constitute misleading or inaccurate information and FEP shall be entitled to rely on the accuracy and completeness of the documents, data, and other information and material facts. ----

10.2   PREPA will advise in writing FEP of any developments of which PREPA becomes aware, and which PREPA considers may have a material effect with respect to the information and/or facts provided to FEP. -------------------------------------------------------

**Article 11.  <u>Information Disclosure and Confidentiality</u>**

11.1   In performing the services under this Agreement, each Party may have access to, and may provide the other Party with information or documentation that constitutes confidential information ("Confidential Information").   Confidential Information includes, but is not limited to, any non-public information about customers or potential customers (regardless of whether it is personally identifiable or anonymous information), business and marketing plans, employee information, systems, manuals, policies and procedures, and products and services, including the disclosure of the engagements covered under this Agreement.  The Parties shall take all reasonable steps to keep confidential and use only for the purposes contemplated by the terms of the Agreement the Confidential Information provided by PREPA and/or FEP, and take all reasonable



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 16

steps to ensure that such information is not disclosed or distributed by its employees or agents in violation of the terms of this Agreement. ----------------------

11.2   The Parties also agree that, except as agreed to in writing by both Parties, they will not, at any time, disclose any Confidential Information to any person whatsoever other than those officers, directors, employees or agents whose duties reasonably require access to such Confidential Information, or permit any person whatsoever other than officer, directors, employees or agents of the Parties to examine and/or make copies of any reports prepared by FEP or under its control by reason of its consulting services. Upon termination of this Agreement each Party will turn over to the other Party, upon request, all documents, papers, and other matters in its possession or under its control that relate to the other Party.  FEP may retain one file copy for its records. ---------------

11.3   Notwithstanding Article 11.2, if a Party receiving Confidential Information proposes to disclose such Confidential Information, including the engagements covered under this Agreement, to a third party in order to perform under the Agreement or otherwise, the receiving Party must first obtain the consent of the disclosing Party to make such disclosure and enter into a confidentiality agreement with such third party under which that third party would be restricted from disclosing, using or duplicating such Confidential Information in a manner inconsistent with the terms of this Article 11.  Receiving Party may use such Confidential Information only in connection with its performance under this

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 17

Agreement or as otherwise required by applicable law.  Receiving Party shall

protect such Confidential Information using the same degree of care, but no less

than a reasonable degree of care, to prevent the unauthorized use or disclosure

of such Confidential Information as receiving Party uses to protect its own

confidential information.   Confidential Information shall be returned to the

disclosing Party or destroyed upon disclosing Party's request once the work

contemplated by this Agreement has been completed or upon termination of this

Agreement (whichever is earlier). -------------------------------------------------------------

11.4   Notwithstanding anything contrary in this Article 11, FEP may share Confidential

Information with (i) AAFAF, (ii) representatives of the Commonwealth and its

agencies and instrumentalities, and (iii) with the FOMB under a common interest

privilege, or as PREPA's Title III representative subject to the same

confidentiality requirements under this agreement. -----------------------------------------

11.5   For the avoidance of doubt, the term "Confidential Information" shall include, but

not be limited to, all information provided to FEP by PREPA or at PREPA's

direction regarding its facilities or operations and any and all information

gathered or developed by FEP regarding the same.  The Parties further agree

that proprietary records and documents related to FEP's business operations are

confidential to FEP and will not be disclosed to PREPA or other Parties, except

as ordered by the court.  The Parties agree that PREPA will resist any attempt by

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 18

opposing counsel or other Parties to obtain FEP's proprietary information.   The
term "confidential information", however, will not include information that: ----------

(a)   known by the receiving Party at the time of disclosure or publicly known or
becomes publicly known through no fault of the receiving Party;

(b)   received from a third party that, to the knowledge of the receiving Party, is
free to disclose the information to the receiving Party;

(c)   independently developed by the receiving Party without the use of
information received from the disclosing Party;

(d)   communicated to a third party with the express prior written consent of the
disclosing Party; or



(e)   either (i) required to be disclosed by law or pursuant to an order of court or
other competent government or regulatory authority or (ii) disclosed due to a
bona fide settlement, arbitration, or pre-litigation request.

11.6   The Parties acknowledge that disclosure of any confidential information by either
Party will give rise to irreparable harm to the injured Party inadequately
compensable in damages.   Accordingly, either Party may seek and obtain
injunctive relief against the breach or threatened breach of the foregoing
undertakings, in addition to any other legal remedies, which may be available. ----

11.7   If this Agreement terminates for any reason, FEP shall maintain in strictest
confidence, both during the term of this Agreement and subsequent to

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 19

termination of this Agreement, and shall not during the term of this Agreement or thereafter disclose or divulge to any person, firm, or corporation, or use directly or indirectly, for its own benefit or the benefit of others, any Confidential Information except as provided in this Article 11,  including, without limitation, information relating to PREPA's operations or trade secrets relating to the business or affairs of PREPA which FEP may acquire or develop in connection with or as a result of the performance of the Services hereunder.  In the event of an actual or threatened breach by FEP of the provisions of this paragraph, PREPA shall be entitled to seek injunctive relief for such breach.  Nothing herein shall be construed as prohibiting PREPA from pursuing any other legal remedies available, including the recovery of damages from FEP. --------------------------------

11.8   The above provisions do not apply with respect to information which FEP is requested to disclose under applicable law and regulations, court order, subpoena or governmental directives, in which case FEP shall provide PREPA prompt notice of such request in order to procure for PREPA a reasonable opportunity to oppose such disclosure.  FEP agrees to expeditiously notify and submit to PREPA a copy of any court order or subpoena and to the extent possible provide any assistance to PREPA (in the form of documents) regarding the submission of such information. -----------------------------------------------------------

11.9   With respect to this Agreement and any information supplied in connection with this Agreement and designated by the disclosing Party as confidential, the

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 20

recipient agrees to: (i) protect the confidential information in a reasonable and appropriate manner and in accordance with applicable professional standards; (ii) use confidential information only to perform its obligations under this Agreement; and (iii) reproduce confidential information only as required to perform its obligations under this Agreement.-------------------------------------------

**Article 12.  Rights and Titles**

12.1    FEP will submit any reports reasonably required by PREPA regarding the Services performed under this Agreement.  If required by PREPA, at the completion of any assigned task, FEP will submit a final written report describing the work it has performed.  This requirement shall not be interpreted as a waiver by PREPA of FEP's ethical obligation and responsibility of keeping PREPA informed of the progress of the assigned matters. -----------------------------------------

12.2    All rights, titles and interest in any reports, documents, analyses, investigations and any other by-product conceived or developed by FEP exclusively for PREPA as a result of performing its obligations under this Agreement shall be the exclusive property of PREPA.  FEP shall retain all right, title, and interest in and to proprietary works of authorship, pre-existing or otherwise, that have not been created specifically for PREPA under this Agreement.  With the exception of items marked as "CONFIDENTIAL" by FEP, PREPA shall retain the right to use, refer, share, or provide to any third party, as PREPA may determine, the results

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 21

of any reports, documents, analyses, investigations or any other by-product of the Services performed by FEP under this Agreement. ------------------------------------

**Article 13.** <u>**Copyright**</u>



FEP and PREPA shall jointly defend any suit or action brought against either party based on a claim that any document, report, study, analysis, copyrighted composition, article or any by-product of those, either used in the performance of the Services by FEP or provided to PREPA by FEP as part of its Services, or used in the performance of this Agreement, including their use by PREPA, constitutes an infringement of any patents or copyrights of the United States.  The Party to this Agreement subject to the claim or that becomes aware of a potential claim shall promptly notify in writing the other Party to this Agreement, and give the authority, information, and assistance reasonable and necessary for the defense of such claim. --------------------------------------------------------

**Article 14.** <u>**Warranty**</u>

14.1   FEP and its officers, directors, employees, and agents shall conduct the work in accordance with all applicable governmental laws, rules, regulations, and good standard industry practices, in a professional manner, and in accordance with the terms of this Agreement.  ----------------------------------------------------------------------

14.2   No other warranty, express or implied, is made or intended by this Agreement, by furnishing oral or written reports of findings made, or by any other act of FEP. ----

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 22

**Article 15. <u>Responsibility for Damages</u>**

The appearing Parties agree that their responsibilities for damages under this Agreement will be governed by the terms of this Agreement, including Article 25 of this Agreement, and by the Puerto Rico Civil Code and its case law, as dictated by the Supreme Court of Puerto Rico. --------------------------------------------------------------------------

**Article 16. <u>Independent Contractor</u>**

16.1   FEP shall be considered as an independent contractor, for all purposes under this Agreement, and all persons engaged or contracted by FEP for the performance of its obligations herein, shall be considered as its employees or agents, and not as employees or agents of PREPA or public servants of the PREPA or the Commonwealth of Puerto Rico. ------------------------------------------------

16.2   As an independent contractor, FEP shall not be entitled to any fringe benefits, such as, but not limited to vacation, sick leave, and to which PREPA's employees are entitled. -------------------------------------------------------------------------------------

16.3   FEP is fully and solely responsible for all taxes, assessments, penalties, fines, and interest relating to wages and benefits paid to FEP's employees under this Agreement, pursuant to all federal, state and local laws, including required withholding from wages of employees, regardless of the characterization of those employees by the Parties, administrative agencies, or the courts. --------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 23

16.4   FEP, its subcontractors, and their officers, directors, and employees are not agents or employees of PREPA and have no authority to obligate or bind PREPA in any way. ------------------------------------------------------------------------------------------

**Article 17.   Employees not to Benefit**

No officer, employee or agent of PREPA, nor of the Government of the Commonwealth of Puerto Rico or its Municipal Governments shall be admitted to any share or part of this Agreement or to any benefit that may arise therefrom. ---------------------------------------

**Article 18.   Conflict of Interest**

18.1   FEP certifies that none of its representatives under this Agreement receive payment or compensation of any nature, for the services regularly rendered through an appointment as public official or public servant in another government agency, body, public corporation or municipality of Puerto Rico.   FEP also certifies that it may have other consulting services contracts with other governmental agencies or bodies, but such condition does not constitute a Conflict of Interest for FEP as such term is defined in Article 18.2. --------------------



18.2   FEP acknowledges that in executing its services pursuant to this Agreement it has a duty of complete loyalty towards PREPA which includes not having conflicts of interest.  "Conflict of Interest" means representing clients who have or may have interests that are contrary to PREPA, but does not include rendering services that are unrelated to the services covered in this Agreement.  Also, FEP shall have the continuous obligation to disclose to PREPA all information and

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 24

circumstances of its relations with clients and third persons that would result in a Conflict of Interest which would influence FEP when performing its responsibilities under this Agreement. If FEP is required to provide services to another entity of the Executive Branch under the provisions of Article 29 and such services could result in a Conflict of Interest, FEP will notify PREPA in writing as provided in this Article. ----------------------------------------------------------------

18.3   The Parties understand and agree that a Conflict of Interest exists when FEP must advocate a position or outcome on behalf of any existing or future client that is contrary to PREPA's interests. Also, any conduct defined in the Rules of Professional Conduct regarding conflicts of interests shall apply to FEP and its personnel. PREPA acknowledges FEP is a firm having multiple financial institutions and investors as clients, and with or without FEP's knowledge, any of such clients may from time to time acquire, hold or trade interests adverse to PREPA or its affiliates. FEP representations of those clients in unrelated matters shall not be deemed conflicts or undue influences on FEP or a Conflict of Interest within the meaning of this Agreement.--------------------------------------------------------

18.4   In the event that any of the partners, directors, agents or employees of FEP engaged in providing services under this Agreement should engage in the conduct described herein, said conduct shall constitute a violation of the prohibitions provided herein.------------------------------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 25

18.5   FEP's partners, directors, agents or employees and personnel shall endeavor to avoid even the appearance of the existence of conflicting interests that have not otherwise been waived. -------------------------------------------------------------------------

18.6   FEP acknowledges that PREPA's Chief Executive Officer shall have the power to intervene with the acts of FEP and/or its agents, employees, and subcontractors regarding the enforcement of the prohibitions contained herein.  In the event that the existence of adverse interests is discovered, PREPA's Chief Executive Officer shall inform FEP in writing of PREPA's intention to terminate this Agreement within a thirty (30) day period.  During said period, FEP may request a hearing with the Chief Executive Officer to present its arguments regarding the alleged conflict of interests.  In the event that FEP does not request such hearing during the specified thirty (30) day period or the controversy is not satisfactory settled during the hearing, this Agreement shall be terminated at the end of such thirty (30) day period. ------------------------------------------------------------------------------

18.7   FEP certifies that, at the time of the execution of this Agreement, it does not have a Conflict of Interest with PREPA and that it does not maintain any claim, judicial or otherwise, against the Government of Puerto Rico, its agencies or instrumentalities.  Also, FEP certifies that, to the best of its knowledge, at the time of the execution of this Agreement, none of its clients have a Conflict of Interest with PREPA, nor any of FEP's other contractual relationships represent a conflict of interests with PREPA.  If such conflicting interests arise after the

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 26

execution of this Agreement, FEP shall, to the extent consistent with its

obligations to other clients, notify PREPA immediately. If FEP determines it does

represent anyone who has adverse interests that are in conflict with PREPA,

FEP shall notify PREPA and take commercially reasonable measures to

safeguard PREPA's interests and ensure its Confidential Information remains

confidential. Any employee of FEP representing anyone with adverse interests

to PREPA shall be restricted access to any and all information regarding PREPA

and FEP shall take commercially reasonable measures to ensure the proper

procedures are in place to protect PREPA's interests. ----------------------------------



**Article 19. <u>Notices</u>**

All notices and other communications hereunder shall be in writing and shall be deemed

given when delivered personally or sent by telecopy, electronic transmission or postage

prepaid, by registered, certified or express mail (return receipt requested) or reputable

overnight courier service and shall be deemed given when so delivered by hand,

electronic transmission or telecopied, or if mailed, three days after mailing (one

business day in the case of express mail or overnight courier service) to the Parties to

the following addresses:--------------------------------------------------------------------------------

| | |
|---|---|
| To PREPA: | Puerto Rico Electric Power Authority<br>PO Box 364267<br>San Juan, Puerto Rico 00936-4267 |
| Attention: | José F. Ortiz Vázquez<br>Chief Executive Officer<br>Email: jose.ortiz@prepa.com |

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 27

|  | |
|---|---|
| To FEP: | Filsinger Energy Partners, Inc.<br>90 Madison St, Suite 600<br>Denver, CO 80206 |
| Attention: | Controller |
|  | Email:  accounts@filsingerenergy.com |

## Article 20.  Applicable Law and Venue

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Puerto Rico.  Also, the Parties expressly agree that only the United States District Court for the District of Puerto Rico will be the court of competent and exclusive jurisdiction to decide over the judicial controversies that the appearing Parties may have among them regarding the terms and conditions of this Agreement. ------------

## Article 21.  Change in Law

During the term of this Agreement, any change in applicable tax law which causes an increase in FEP's costs when providing the services, shall be FEP's responsibility and PREPA shall not be obligated to increase the Agreement Amount. ----------------------------

## Article 22.  Novation

22.1   The Parties expressly agree that no amendment or change order, which could be made to the Agreement during its term, shall be understood as a contractual novation, unless both Parties agree to the contrary, specifically and in writing.-----

22.2   The previous provision shall be equally applicable in such other cases where PREPA gives FEP a time extension for the compliance of any of its obligations under this Agreement, or where PREPA dispenses the claim or demand of any of its credits or rights under the Agreement. -------------------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 28

## Article 23.  <u>Severability</u>

If a court of competent jurisdiction declares any of the Agreement provisions as null and void or invalid, such holding will not affect the validity and effectiveness of the remaining provisions of this Agreement and the Parties agree to comply with their respective obligations under such provisions not included in the judicial declaration.----------------------

## Article 24. <u>Defense, Indemnification and Subrogation</u>

PREPA shall indemnify, hold harmless and defend FEP and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "FEP Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of FEP that is the subject of this Agreement; except that PREPA shall not have to indemnify, hold harmless and defend the FEP Parties if the claims liabilities, losses, expenses and damages arise out the gross negligence or willful misconduct of FEP in which case, if found in a final determination that the claims liabilities, losses, expenses and damages did arise out of the gross negligence or willful misconduct of FEP, FEP will indemnify and hold PREPA harmless from and against such claims liabilities, losses, expenses and damages.  PREPA shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.  The FEP Parties may, but are not required to, engage a single firm of separate counsel of their choice in connection with any of the matters to which these indemnifications and advancement obligations relate.  This provision shall survive the expiration or termination of this Agreement.  In addition to the above indemnification and

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 29

advancement, if Todd W. Filsinger were to be deemed by a court of competent jurisdiction an officer, director, employee or fiduciary of PREPA, PREPA hereby covenants and agrees to provide Todd W. Filsinger the most favorable indemnification and advancement provided by PREPA to its directors, officers and any equivalently placed employees, whether under PREPA's charter or by-laws, by contract or otherwise. ---------------------------------------------------------------------------------------------------------

**Article 25.  Limitation on Liability**

The FEP Parties shall not be liable to PREPA, or any party asserting claims on behalf of PREPA, except for direct damages found in a final determination to be the direct result of the gross negligence, bad faith, self-dealing or intentional misconduct of FEP.  The FEP Parties shall not be liable for incidental or consequential damages under any circumstances, even if it has been advised of the possibility of such damages.  The FEP Parties aggregate liability, whether in tort, contract or otherwise, is limited to the amount of fees paid to FEP for services under this agreement (the "Liability Cap").  The Liability Cap is the total limit of the FEP Parties' aggregate liability for any and all claims or demands by anyone pursuant to this agreement, including liability to PREPA, to any other parties hereto, and to any others making claims relating to the work performed by FEP pursuant to this agreement.   Any such claimants shall allocate any amounts payable by the FEP Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap.   Under no circumstances shall the aggregate of all such allocations or other claims against the



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 30

FEP Parties pursuant to this agreement exceed the Liability Cap.  This provision shall survive the expiration or termination of this agreement. -------------------------------------------

**Article 26. <u>Insurance</u>**

FEP shall secure and maintain in full force and effect during the life of this Agreement as provided herein, policies of insurance covering all operations engaged in by the Agreement as follows: ----------------------------------------------------------------------------------

1.   <u>Commonwealth of Puerto Rico Workmen's Compensation Insurance</u>:

FEP shall provide a Workmen's Compensation Insurance Policy as required by the Workmen's Compensation Act 45-1935 of the Commonwealth of Puerto Rico. FEP shall also be responsible for compliance with said Workmen's Compensation Act by all its sub-contractors, agents, and invitees, if any. ----------------------------------------

FEP shall furnish a certificate from the Puerto Rico State Insurance Fund showing that all personnel employed in the work are covered by the Workmen's Compensation Insurance, in accordance with this Agreement. ---------------------------

2.   Employer's Liability Insurance

FEP shall provide Employer's Liability Insurance with minimum bodily injury limits of $1,000,000 for each employee and $1,000,000 for each accident covering against the liability imposed by Law upon FEP as a result of bodily injury, by accident or disease, including death arising out of and in the course of employment, and outside of and distinct from any claim under the Workmen's Compensation Act of the Commonwealth of Puerto Rico. ----------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 31

3.  <u>Commercial General Liability Insurance</u>:

FEP shall provide a Commercial General Liability Insurance Policy with limits of at least $1,000,000 per occurrence and at least $ 1,000,000 aggregate. ------------------

4.  Commercial Automobile Liability Insurance

FEP shall provide a Commercial Automobile Liability Insurance Policy with limits of at least $1,000,000 combined single limit covering all owned or scheduled autos, non-owned and rented automobiles. ---------------------------------------------------------

5.  <u>Professional Liability Insurance</u>:

FEP shall provide a Professional Liability Insurance Policy with limits of at least $1,000,000 per claim and at least $ 1,000,000 aggregate. --------------------------------

6.  <u>Requirements under the Policies</u>:

FEP shall use best efforts to provide that the Commercial General Liability and Commercial Automobile Liability Insurance policies required under this Agreement be endorsed to include: ------------------------------------------------------------------------------



a. <u>As Additional Insured</u>:

Puerto Rico Electric Power Authority (PREPA)
Risk Management Office
PO Box 364267
San Juan, Puerto Rico 00936-4267

b. A 30 day cancellation or nonrenewable notice to be sent to the above address.

c. An endorsement including this Agreement under contractual liability coverage and identifying it by number, date and Parties to the contract. ----------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 32

    d. Waiver of subrogation in favor of Puerto Rico Electric Power Authority (PREPA). -------------------------------------------------------------------------------------

    e. Breach of Warranties or Conditions: --------------------------------------------------------

      *"The Breach of any of the Warranties or Conditions in this policy by the Insured shall not prejudice PREPA's rights under this policy."*-------------------------------

Furnishing of Policies:

All required policies of insurance shall be in a form acceptable to PREPA and shall be issued only by insurance companies authorized to do business in Puerto Rico.-------------------------------------------------------------------------------------------



FEP shall furnish a certificate of insurance including the endorsements in original signed by an authorized representative of the insurer in Puerto Rico, providing evidence of the aforementioned coverages within 30 days of the execution of this Agreement. --------------------------------------------------------------------------------------------

Article 27. **Compliance with the Commonwealth of Puerto Rico Contracting Requirements**

FEP will comply with all applicable State Law, Regulations and Executive Orders that regulate the contracting process and establish the requirements for governmental contracting in the Commonwealth of Puerto Rico, including but not limited to those mentioned in this Article. Also, FEP shall provide, before the execution of the Agreement the following documents and certifications: --------------------------------------------

A. Executive Order Num. OE-1991-24 of June 18, 1991 to require certification of compliance with the Internal Revenue Services of the Commonwealth of

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 33

Puerto Rico:  Pursuant to Executive Order Number OE-1991-24 of June 18, 1991,
FEP will certify and guarantee that it has filed all the necessary and required income
tax returns to the Government of Puerto Rico for the last five (5) years. FEP further
will certify that it has complied and is current with the payment of any and all income
taxes that are, or were due, to the Government of Puerto Rico. FEP shall provide, a
certification issued by the Internal Revenue Services of the Commonwealth of
Puerto Rico. During the term of this Agreement, FEP agrees to pay and/or to remain
current with any repayment plan agreed to by FEP with the Government of
Puerto Rico. -------------------------------------------------------------------------------------------

B. Executive Order No. OE-1992-52 of August 28, 1992 to require certification of
compliance with the Department of Labor of the Commonwealth of Puerto Rico.
Pursuant to Executive Order Number 1992-52, dated August 28, 1992 amending
OE-1991-24, FEP will certify and warrant that it has made all payments required for
unemployment benefits, workmen's compensation and social security for chauffeurs,
whichever is applicable, or that in lieu thereof, has subscribed a payment plan in
connection with any such unpaid items and is in full compliance with the terms
thereof.  FEP shall provide a Certification issued by Department of Labor of the
Commonwealth of Puerto Rico.  FEP accepts and acknowledges its responsibility for
requiring and obtaining a similar warranty and certification from each and every
consultant and sub-contractor, if any previously approved by PREPA, whose service
FEP has secured in connection with the services to be rendered under this

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 34

Agreement and shall forward evidence to PREPA as to its compliance with this
requirement. ------------------------------------------------------------------------------------------

C. Government of Puerto Rico Municipal Tax Collection Center: FEP will certify and
guarantee that it does not have any current debt with regards to property taxes that
may be registered with the Government of Puerto Rico's Municipal Tax Collection
Center (known in Spanish as *Centro de Recaudación de Ingresos Municipales*
("*CRIM*").  FEP further will certify to be current with the payment of any and all
property taxes that are or were due to the Government of Puerto Rico.  FEP shall
provide, a Certification issued by the Municipal Revenues Collection Center
("MRCC"), assuring that FEP does not owe any tax accruing to such governmental
agency.  During the Term of this Agreement, FEP agrees to pay and/or to remain
current with any repayment plan agreed to by FEP with the Government of
Puerto Rico with regards to its property taxes.----------------------------------------------------



FEP shall provide a Personal Property Tax Filing Certification, issued by the MRCC
which indicates that FEP has filed its Personal Property Tax Return for the last
five (5) contributory terms or Negative Debt certification issued by the MRCC with
respect to real and property taxes and a sworn statement executed by FEP
indicating that (i) its revenues are derived from the rendering of professional
services, (ii) during the last five (5) years (or the time in which it has been providing
professional services) it has had no taxable business or personal property on the 1st
of January of each year, (iii) that for such reasons it has not been required to file

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 35

personal property tax returns, as required under Article 6.03 of Act 83-1991, as amended, and (iv) that for such reason it does not have an electronic tax file in the MRCC's electronic system.--------------------------------------------------------------------------------

D. FEP shall furnish a Certification issued by the Treasury Department of Puerto Rico which indicates that FEP does not owe Puerto Rico Sales and Use taxes to the Commonwealth of Puerto Rico; or is paying such taxes by an installment plan and is in full compliance with its terms.----------------------------------------



E. FEP shall provide a Puerto Rico Sales and Use Tax Filing Certificate, issued by the Treasury Department of Puerto Rico assuring that FEP has filed his Puerto Rico Sales and Use Tax for the last sixty (60) contributory periods. -------------

F. FEP shall provide a copy of FEP's Certificate of Merchant's Registration issued by the Treasury Department of Puerto Rico. ------------------------------------------------------

G. Puerto Rico Child Support Administration (*ASUME*): FEP shall present, a certification issued by *ASUME* certifying that FEP nor any of its owners, affiliates of subsidiaries, if applicable, have any debt, outstanding debt, or legal procedures to collect child support payments that may be registered with the Puerto Rico Child Support Administration. ----------------------------------------------------------------------------

H. FEP shall provide a Good Standing Certificate issued by the Department of State of Puerto Rico. -------------------------------------------------------------------------------------

I. FEP shall provide a Certification of Incorporation, or Certificate of Authorization to do business in Puerto Rico issued by the Department of State of Puerto Rico. -------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 36

J. Special Contribution for Professional and Consulting Services: As required by Act 48-2013, as amended, PREPA will withhold a special contribution of one point five percent (1.5%) of the gross amounts paid under this Agreement. -------------------

K. Social Security and Income Tax Retentions: In compliance with Executive Order 1991 OE- 24; and C.F.R. Part 404 et. Seq., FEP will be responsible for rendering and paying the Federal Social Security and Income Tax Contributions for any amount owed as a result of the income, from this Agreement.------------------------

L. Income Tax Retention Law: PREPA shall deduct and withhold ten percent (10%) of any and all payments to residents of the Commonwealth of Puerto Rico as required by the Internal Revenue Code of Puerto Rico. In case of US citizens and Non-US citizens, which are nonresidents of the Commonwealth of Puerto Rico FEP will retain twenty percent (20%) and twenty-nine percent (29%) respectively. PREPA will remit such withholdings to the Government of Puerto Rico's Treasury. FEP will request PREPA not to make such withholdings if, to the satisfaction of PREPA, FEP timely provides a release from such obligation by the Government of Puerto Rico's Treasury Department. ---------------------------------------------------------------------------------



M. Compliance with Act No. 1 of Governmental Ethics: FEP will certify compliance with Act 1 of January 3, 2012, as amended, known as the Ethics Act of the Government of Puerto Rico, which stipulates that no employee or executive of PREPA nor any member of his/he immediate family (spouse, dependent children or other members of his/her household or any individual whose financial affairs are under the control of

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 37

the employee) shall have any direct or indirect pecuniary interest in the services to
be rendered under this Agreement, except as may be expressly authorized by the
Governor of Puerto Rico in consultation with the Secretary of Treasury and the
Secretary of Justice of the Government. 3 L.P.R.A. § 8611 et seq.;-----------------------

N. Law 168-2000: Law for the Strengthening of the Family Support and Livelihood of
Elderly People: FEP will certify that if there is any Judicial or Administrative Order
demanding payment or any economic support regarding Act 168-2000, as amended,
the same is current and in all aspects in compliance. Act 168-2000 *"Law for the
Strengthening of the Family Support and Livelihood of Elderly People"*. -----------------



O. Law 127-2004:  Agreement Registration in the Comptroller's Office of Puerto Rico
Act: Payment for services object of this Agreement will not be made until this
Agreement is properly registered in the Office of the Comptroller of the Government
of Puerto Rico pursuant to Law 18 of October 30, 1975, as amended. -------------------

P. Prohibition with respect to execution by public officers: 3 L.P.R.A. 8615(c): No public
officer or employee authorized to contract on behalf of the executive agency for
which he/she works may execute a contract between the agency for which he/she
works and an entity or business in which he/she or any member of his/her family unit
has or has had direct or indirect economic interest during the last four (4) years prior
to his/her holding office. ------------------------------------------------------------------------------

Q. Prohibition with respect to contracting with officers or employees: 3 L.P.R.A.
8615(d):  No executive agency may execute a contract in which any of its officers or

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 38

employees or any member of their family units has or has had direct or indirect
economic interest during the last four (4) years prior to their holding office, unless
the Governor gives authorization thereto with the previous recommendation of the
Secretary of the Treasury and the Secretary of Justice. ----------------------------------------

R. Prohibition with respect to contracts with officers and employees of other
Government entities:  3 L.P.R.A. 8615(e): No public officer or employee may be a
party to or have any interest in any profits or benefits produced by a contract with
any other executive agency or government dependency unless the Governor gives
express authorization thereto with previous recommendation from the Secretary of
the Treasury and the Secretary of Justice. ---------------------------------------------------------

S. Prohibition with respect to evaluation and approval by public officers:
3 L.P.R.A. 8615(f): No public officer or employee who has the power to approve or
authorize contracts shall evaluate, consider, approve or authorize any contract
between an executive agency and an entity or business in which he/she or any
member of his/her family unit has or has had direct or indirect economic interest
during the last four (4) years prior to his/her holding office. ---------------------------------

T. Prohibition with respect to execution by public officers' contracts with former public
officers: 3 L.P.R.A. 8615(h): No executive agency shall execute contracts with or for
the benefit of persons who have been public officers or employees of said executive
agency until after two (2) years have elapsed from the time said person has ceased
working as such. ----------------------------------------------------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 39

U. Dispensation:  Any and all necessary dispensations have been obtained from any government entity and that said dispensations shall become part of the contracting record. ------------------------------------------------------------------------------------------------

V. Rules of Professional Ethics:  FEP acknowledges and accepts that it is knowledgeable of the rules of ethics of his/her profession and assumes responsibility for his/her own actions. ----------------------------------------------------------------------

If any of the previously required Certifications shows a debt, and FEP has requested a review or adjustment of this debt, FEP will certify that it has made such request at the time of the Agreement execution. If the requested review or adjustment is denied and such determination is final, FEP will provide, immediately, to PREPA a proof of payment of this debt; otherwise, FEP accepts that the owed amount be offset by PREPA and retained at the origin, deducted from the corresponding payments. ----------------------------



**Article 28. <u>Anti-Corruption Code for a New Puerto Rico</u>**

FEP agrees to comply with the provisions of Act 2-2018, as the same may be amended from time to time, which establishes the Anti-Corruption Code for a New Puerto Rico. FEP hereby certifies that it does not represent particular interests in cases or matters that imply a Conflict of Interest, or of public policy, between the executive agency and the particular interests it represents. ----------------------------------------------------------------------

FEP shall furnish a sworn statement to the effect that neither FEP nor any president, vice president, executive director or any member of a board of officials or board of directors, or any person performing equivalent functions for FEP has been convicted of

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 40

or has pled guilty to any of the crimes listed in Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico or any of the crimes included in Act 2-2018.----------------------



FEP hereby certifies that it has not been convicted in Puerto Rico or United States Federal court for under Articles 4.2, 4.3 or 5.7 of Act 1-2012, as amended, known as the Organic Act of the Office of Government Ethics of Puerto Rico, any of the crimes listed in Articles 250 through 266 of Act 146-2012, as amended, known as the Puerto Rico Penal Code, any of the crimes typified in Act 2-2018, as amended, known as the Anti-Corruption Code for a New Puerto Rico or any other felony that involves misuse of public funds or property, including but not limited to the crimes mentioned in Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico. --------------------

PREPA shall have the right to terminate the Agreement in the event FEP is convicted in Puerto Rico or United States Federal court for under Articles 4.2, 4.3 or 5.7 of Act 1-2012, as amended, known as the Organic Act of the Office of Government Ethics of Puerto Rico, any of the crimes listed in Articles 250 through 266 of Act 146-2012, as amended, known as the Puerto Rico Penal Code, any of the crimes typified in Act 2-2018, as amended, known as the Anti-Corruption Code for a New Puerto Rico or any other felony that involves misuse of public funds or property, including but not limited to the crimes mentioned in Article 6.8 of Act 8-2017, as amended, known as the

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 41

Act for the Administration and Transformation of Human Resources in the Government

of Puerto Rico. --------------------------------------------------------------------------------------------

Consequences of Non-Compliance: FEP expressly agrees that the conditions outlined

throughout this Article are essential requirements of this Agreement. Consequently,

should any one of these representations, warranties or certifications be incorrect,

inaccurate or misleading, in whole or in part, there shall be sufficient cause for the

PREPA to render this Agreement null and void, and FEP shall reimburse the PREPA all

moneys received under this Agreement.------------------------------------------------------------



**Article 29. <u>Termination by the Chief of Staff of the Governor of Puerto Rico and
Interagency Agreements</u>**

Pursuant to Memorandum No. 2017-001, Circular Letter 141-17, of the Office of the

Chief of Staff of the Governor of Puerto Rico (*Secretaría de la Gobernación*) and the

Office of Management and Budget (*Oficina de Gerencia y Presupuesto* – OGP), the

Chief of Staff shall have the authority to terminate this Agreement at any time. If so

directed by the Chief of Staff, PREPA will terminate this Agreement by delivering to FEP

a notice of termination specifying the extent to which the performance of the work under

this Agreement is terminated, and the effective date of termination. Upon the effective

date of termination, FEP shall immediately discontinue all services affected and deliver

to PREPA all information, studies and other materials property of PREPA. In the event

of a termination by notice, PREPA shall be liable only for payment of services rendered

up to and including the effective date of termination. ------------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 42

Both Parties acknowledge and agree that the contracted services herein may be provided to another entity of the Executive Branch which enters into an interagency agreement with PREPA or by direct disposition of the Office of the Chief of Staff. These services will be performed under the same terms and conditions in terms of hours of work and compensation set forth in this Agreement. For the purpose of this clause, the term "entity of the Executive Branch" includes all agencies of the Government of Puerto Rico, as well as public instrumentalities, and public corporations. --------------------

**Article 30.  Non-Discrimination**



FEP agrees that it will not discriminate against any employee or applicant for employment on account of race, color, religion, sex, sexual orientation, disability or national origin in violation of applicable laws. ----------------------------------------------------------

**Article 31. Entire Agreement**

The terms and conditions contained herein constitute the entire agreement between PREPA and FEP with respect to the subject matter of this Agreement, and to the extent relating exclusively to this Agreement, supersede all communications, negotiations, and agreements of the Parties, whether written or oral, other than these, made prior to the signing of this Agreement. ---------------------------------------------------------------------------------

----------------------------------------------------------------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 43

IN WITNESS THEREOF, the Parties hereto sign this Agreement in San Juan,

Puerto Rico this $\sqrt{6}$ day of July, 2019. -----------------------------------------------------

Puerto Rico Electric Power Authority          Filsinger Energy Partners, Inc.

_____              _____
José F. Ortiz Vázquez                            Todd W. Filsinger
Chief Executive Officer                          Senior Managing Director



### APPENDIX A

**Schedule of Filsinger Energy Partners Professionals who may be Assigned to this Matter**
Updated: July 15, 2019

| Professional | Title | Hourly Rate | Discounted Hourly Rate |
|---|---|---|---|
| Todd W. Filsinger | Senior Managing Director | $936 | $842 |
| Gary Germeroth | Managing Director | $850 | $765 |
| Paul Harmon | Managing Director | $850 | $765 |
| Stephen Kopenitz | Managing Director | $806 | $725 |
| Alan Scott Davis | Director | $650 | $585 |
| Ronald "Rusty" Evans | Director | $650 | $585 |
| Mike Green | Director | $550 | $495 |
| Robert "Buck" Monday | Director | $680 | $612 |
| Brian Pauling | Director | $650 | $585 |
| Nathan Pollak | Director | $650 | $585 |
| Norm Spence | Director | $667 | $600 |
| Timothy Wang | Director | $650 | $585 |
| Chad Balken | Managing Consultant | $596 | $536 |
| Billy Michael Carter | Managing Consultant | $596 | $536 |
| Laura Hatanaka | Managing Consultant | $596 | $536 |
| Emilie Kelly | Managing Consultant | $416 | $374 |
| Marcus Klintmalm | Managing Consultant | $596 | $536 |
| Matt Lee | Managing Consultant | $610 | $549 |
| John Soward | Managing Consultant | $596 | $536 |
| David Wall | Managing Consultant | $596 | $536 |
| David "Biff" Whitten | Managing Consultant | $596 | $536 |
| Allison Horn | Consultant | $333 | $300 |
| Richa Karve | Consultant | $333 | $300 |
| Pamela Morin | Consultant | $416 | $374 |
| Jill Rennert | Consultant | $416 | $374 |



### Rate Table

| Title | Hourly Rate |
|---|---|
| Senior Managing Director | $820 - $936 |
| Managing Director | $620 - $850 |
| Director | $506 - $680 |
| Managing Consultant | $406 - $610 |
| Consultant | $326 - $416 |
| Analyst and Technical Writer | $226 - $330 |

GOVERNMENT OF PUERTO RICO

PUERTO RICO ELECTRIC POWER AUTHORITY

**PROFESSIONAL SERVICES AGREEMENT**

-------------------------------------------------APPEAR-------------------------------------------------------

**AS FIRST PARTY**:  The Puerto Rico Electric Power Authority (PREPA), a public corporation and government instrumentality of the Commonwealth of Puerto Rico, created by Act No. 83 of May 2, 1941, as amended (Act 83), represented in this act by its Acting Chief Executive Officer/Executive Director, Efran Paredes Maisonet, of legal age, married, and resident of Byamón, Puerto Rico.-------------------------------------------------

**AS SECOND PARTY**:  Filsinger Energy Partners, Inc. (FEP), a corporation formed and existing under the laws of the State of Colorado, United States of America, with a principal place of business in 90 Madison Street, Suite 500, Denver, CO 80206, and authorized to do business in Puerto Rico, herein represented by its Senior Managing Director, Todd W. Filsinger, of legal age, married and resident of Denver, Colorado, authorized to enter into this Agreement by virtue of Corporate Resolution dated July 8, 2020.  -------------------------------------------------------------------------------

Both PREPA and FEP are herein individually referred to as a Party and collectively referred to as the Parties. --------------------------------------------------------------------

-------------------------------------------**WITNESSETH**------------------------------------------------

WHEREAS, PREPA, by virtue of Act 83 has the authority to engage those professional, technical and consulting services necessary and convenient to the activities, programs and operations of PREPA;-------------------------------------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 2



WHEREFORE:  In accordance with the terms of PREPA's Governing Board Resolution No. 4804, dated June 24, 2020, as amended by Resolution 4819, dated July 29, 2020, and the mutual covenants and agreements contained in this Agreement, hereinafter stated, the Parties agree themselves, their personal representatives, and successors to enter into this Agreement under the following: --------------------------------------------------------------

----------------------------------------**TERMS AND CONDITIONS**------------------------------------------

### Article 1.  <u>Scope of Services</u>

1.1   Provide Strategic Advice during the Renewable PPOA's approval process with the Puerto Rico Energy Bureau, the Financial Oversight and Management Board for Puerto Rico and the Title III court. ------------------------------------------------------------------

1.2   Transition of financial reporting and creditors report in the Title III process. -----------

1.3   Stakeholder management transition with PREPA executive team. ----------------------

1.4   Transition of financial reporting and ad hoc request form the PREPA Executive Team limited to Title III work streams, Renewable PPOA's approval process, and business operations. -------------------------------------------------------------------------------

1.5   Provide to PREPA's Chief Executive Officer (CEO) with general financial and management support on such matters as budgeting, financial management, cash management, and expenses approval. ----------------------------------------------------------

1.6   Provide advice and support to CEO on the implementation of the fiscal and operational restructuring reforms and initiatives outlined in the certifies Fiscal Plan and the implementation of the certifies Budget. -----------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 3

1.7   Appendix A attached hereto provides a schedule of the professionals assigned to
this matter.   Should FEP assign another person not included in Appendix A to
attend to PREPA's matters pursuant to this Agreement, FEP shall promptly send
PREPA an amended "Schedule of Professionals", to include such person's name
and position for incorporation into this Agreement, approval of which PREPA shall
not be unreasonably withheld.   Unless PREPA objects in writing within (5)
business days upon receipt of the amended "Schedule of Professionals", the
amended "Schedule of Professionals" shall be considered approved as submitted.

1.8   Pryor to each week, FEP will provide PREPA a table summarizing the planned
staffing support to be provided for each task. For the avoidance of doubt, the
provided table will include the names of personnel planned to be assigned to each
task and whether such personnel are planning to travel to Puerto Rico to provide
"on-site" support. Nothing presented in the provided summary table shall prevent
other personnel listed in the Appendix A schedule of professionals from supporting
FEP's scope of work, as needed and determined by FEP. FEP will report a
summary of activities to PREPA's Project Management Office (PMO) monthly in a
format mutually agreeable to FEP and the Administrator of the PMO. ------------------

**Article 2.   <u>Services Coordination</u>**

All the Services of FEP in relation to the terms and conditions of this Agreement will be
coordinated through the CEO or the person delegated by him. ---------------------------------



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 4

**Article 3.  Agreement Assignment or Subcontract**

FEP shall not assign nor subcontract its rights and obligations under this Agreement, except in the event that PREPA gives written authorization for such actions.  Provided, that no subcontract shall be considered for PREPA's approval, except when the following requirements are met:  (1) FEP delivers to PREPA a copy of the subcontract, not less than thirty (30) days prior to the effective date of the proposed subcontract; (2) the subcontract includes, as a condition for its legal validity and enforceability, a provision whereby PREPA has the right to substitute, subrogate or assume FEPs' rights under the subcontract, in the event that PREPA terminates the Agreement pursuant to Article 5.2.  (3) the subcontract includes, as a condition for its validity and enforceability, a provision establishing for the subcontractor, the obligation to comply with all of FEPs' obligations under the Agreement *(mirror image clause),* except for such obligations, terms and conditions which are exclusively related to works or services not included under the subcontract.  A request for authorization to subcontract, shall specify the issues or matters that will be referred to the subcontractor.  Unless otherwise expressly agreed, these services shall be paid as part of the Agreement Amount, as stated in Article 6, Payment. ------------------------------------------------------------------------------------------

**Article 4.  Agreement Term**

This Agreement shall be in effect during ninety (90) days (Agreement Period) after its execution (the Effective Date) unless earlier terminated pursuant to Articles 5.1, 5.2,

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 5

or 28.  The Agreement may be extended only by written amendment agreed upon by

both Parties, at the exclusive option of PREPA, and subject to availability of funds. -------

**Article 5.  Agreement Termination**

5.1   Either Party shall have the right to terminate this Agreement, at any time, with

thirty (30) days prior written notice by registered mail, return receipt requested, or

overnight express mail to the other Party.  If notice is given, the Agreement shall

terminate upon the expiration of the thirty (30) days (Termination Date) and

PREPA shall be obligated to pay all fees and expenses incurred up to the

Termination Date, in accordance with the terms of this Agreement.  The rights,

duties and responsibilities of the Parties shall continue in full force and effect

during the thirty (30) day notice period.  In the event of termination, FEP shall have

no further right to compensation except for what has been accrued for services

rendered and expenses incurred under the Agreement until the Termination Date.--

If either Party terminates this Agreement (whether pursuant to Article 5.1, 5.2),

such termination shall not affect FEP's right to receive   all amounts owed by

PREPA to FEP or the accrued rights of PREPA to receive the work product

generated by FEP pursuant to this Agreement (the "Work") through the date of

termination.  The obligations of the Parties under Articles [6, 7, 8, 11, 13, 14, 20,

24 and 25] shall survive termination of this Agreement. -------------------------------------

5.2   If either Party materially breaches any term or provision of this Agreement and

does not remedy such material breach within 72 hours after receipt of a prior



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 6

written notice of default, the non-breaching Party may immediately terminate this Agreement upon written notice, and such termination shall be effective as of the date of such written notice. ------------------------------------------------------------------------------

5.3   The Parties acknowledge that PREPA is undergoing a transformation process, and therefore, both Parties agree that in the eventuality of the execution of a Partnership Contract, Sale Contract or any other PREPA Transaction (as these terms are defined in Act 120-2018), PREPA may sell, assign, convey, transfer, pledge, mortgage, sublease, delegate, hypothecate, or otherwise dispose (each, a "Transfer") any of its rights, title, or interest in this Agreement as permitted by applicable law and at any time, and without FEP's consent or cost, expense or incremental liability to PREPA, to any future operator of Puerto Rico's electric power transmission and distribution system or any of its affiliates, or to any governmental agency, body, public corporation or municipality of Puerto Rico; provided, that PREPA shall notify FEP no later than thirty (30) days before the effective date of any such Transfer.  FEP acknowledges that all its responsibilities and obligations under the Agreement, such as work to be performed and services to be provided, will continue in full force and effect until the expiration of the thirty (30) day period. -------------------------------------------------------------------------------

**Article 6.  <u>Payment</u>**

6.1   In accordance with the terms and conditions contained herein, PREPA agrees and FEP accepts that the total amount to be paid under the Agreement shall not



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 7

exceed one million dollars ($1,000,000), including reimbursable expenses (the "Agreement Amount"). All payments to be made under this Agreement will be charged to account 01-4019-92319-556-673. PREPA will only pay for Services already rendered before the submitted invoice date and invoiced in accordance with Article [7.1]. PREPA will not be required to make advance payments for any future service to be rendered by FEP under the Agreement.-------------------------------

6.2  Nothing herein shall preclude the Parties from agreeing to increase the Agreement Amount, provided such agreement is in writing and signed by both Parties.-----------

6.3  FEP shall immediately notify PREPA when the billing under the Agreement amounts seventy-five percent (75%) of the Agreement Amount. Once this notification has been issued, FEP, in coordination with PREPA, will ensure that no services will be rendered in excess of the Agreement Amount, except in the event that a written amendment is agreed upon by both Parties. In addition, FEP shall present an itemized list of the remaining billable Services under the Agreement.----

**Article 7.  Fees, Expenses and Disbursements**

7.1  FEP shall be paid on the basis of actual time and expenses at the hourly rates set forth in Appendix A; provided, that FEP personnel shall not be compensated for hours spent on non-working travel time. FEP shall provide PREPA with an itemized invoice for its fees and accrued expenses on a monthly basis in accordance with the Compensation Order. PREPA will only pay to FEP up to a maximum of 12 hours daily per FEP timekeeper. ------------------------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 8

7.2   FEP shall be entitled to reimbursement for expenses incurred (including reasonable expenses of counsel, if any) in connection with or arising out of activities under or contemplated by, this Agreement.   Reimbursable expenses shall not exceed six percent (6%) of the Agreement Amount and will be reimbursed by PREPA through the presentation of acceptable evidence for such expenses. Reimbursement for air travel expenses is restricted to economy class fares, including restricted fares.   All expenses shall be subject to PREPA's internal expense limitation and requirements, and will be reimbursed pursuant to the Compensation Order. --------------------------------------------------------------------------------

7.3   Any travel and lodging expense for which a reimbursement is requested shall be reasonable and necessary, and any extraordinary travel and lodging expenses shall be authorized in writing and in advance by PREPA.   PREPA will not reimburse expenses that do not comply with this provision.   Under no circumstances will expenses for alcoholic beverages be reimbursed.-------------------

7.4   Travel –.   Summaries of transportation expenses should reflect the identity of the user, the date and amount of each specific cost, and the points of travel. Summaries of lodging and meals expenses should include the identity of the person making the expenditure, the date and amount, and the nature of the expenditure. PREPA expects you to be reasonable and prudent both in selecting hotels and restaurants, if applicable, for which we are to be charged and in



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 9

distinguishing between personal expenses and properly chargeable business expenses. --------------------------------------------------------------------------------------------

Travel expenses reimbursement applies for personnel providing the services to PREPA, travel expenses for family members or guests are not chargeable to PREPA or reimbursable. -----------------------------------------------------------------------------

7.4.1   Air Travel - The cost of air travel will be reimbursed up to an amount of $500 per person per round trip (including: seat assignment, applicable taxes, and other applicable fees). FEP shall submit a copy of the airline ticket and paid invoice. Airfare may only be invoiced following completion of travel. FEP shall buy economy class ticket or equivalent, then if desired, he/she may upgrade, but PREPA will only pay the amount corresponding to the economy class or equivalent airfare. Baggage fees will not be reimbursed. --

7.4.2   Per Diem Rates (no proof of payment will be required): ---------------------------

Meals: - PREPA shall pay as an expense hereunder $57 per person per day for each traveling day for persons working "on-site" at PREPA.------------------

Lodging (standard not smoking room): - $250 per person, per night, excluding fees and taxes. FEP will use the most economical alternative of lodging, including temporary rentals of apartments or rooms (e.g., a rental agency such as Airbnb or VRBO). For travel periods longer than five days, temporary rentals shall be coordinated when this temporary rental is less



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 10

expensive than hotel accommodation, and evidence of said temporary rental shall be provided. -----------------------------------------------------------------

Ground Transportation: - PREPA shall pay as an expense hereunder $20 per person per working day for each person working "on-site" at PREPA for taxis or Uber type services, while in Puerto Rico or on official trips. If a car is rented for the services to be provided, a fixed amount of $25 per vehicle, per day will be reimbursed for parking expenses, upon presentation of evidence of the car rental (no proof of payment will be required).----------------

7.5 PREPA reserves the right to question the charges on any bill (even after payment) and to request a discount or refund of those charges that are disputed in accordance with the Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Compensation Order"). At PREPA's request, copies of bills and records reflecting reimbursable expenses must be provided to PREPA. In no event shall PREPA delay payment of an FEP invoice beyond the date upon which such invoice is approved by order of the District Court pursuant to an Interim Fee Application filed pursuant to the Compensation Order.---------------------------------------------------------

**Article 8. Invoices**

8.1 FEP shall submit all invoices for payment in accordance with the Compensation Order under the Title III case and PREPA's internal policies and procedures. PREPA shall pay such invoices in accordance with the Compensation Order. All

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 11



rights of PREPA to review and object to the FEP invoices as set forth in the
Compensation Order are expressly preserved and nothing in this Agreement shall
alter PREPA's rights to review and object to FEP invoices as set forth in the
Compensation Order.  Provided, that invoices that are subject to the fee process in
the Title III proceedings shall be paid in accordance with the Title III process.
Notwithstanding, FEP shall submit the invoices to PREPA, concurrently with the
Title III fee examiner submittal.  --------------------------------------------------------------

8.2  All invoices, must be prepared in corporate letterhead within the following
framework.   PREPA shall not process invoices unless and until such invoices
include the items below. --------------------------------------------------------------------------

a. Invoice Number. -----------------------------------------------------------------------

b. A brief description of the project or task to which the services relate. --------------

c. A full chronological description of the services performed during the statement
period, the name of the professional who performed such services and the
hourly rates and the number of hours spent (by date) for each professional. -----

d. Reasonable detail of the reimbursable expenses and disbursements made on
behalf of PREPA during the statement period. ---------------------------------------

e. Fees, disbursements and total charges during the statement period, fiscal
year-to- date and since the commencement of the matter. ----------------------------

f. If reimbursement for third party services is to be made, a copy of the relevant
third party invoice must be attached. -------------------------------------------------



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 12

    g.  The name of PREPA's official that requested your services. ------------------------

    h.  Please show clearly on the invoice the total current bill (without regard to prior

        balances).  Prior balances or payment history should be shown separately, if

        at all, by invoice number, invoice date, and amount. -----------------------------------

8.3  The invoice for professional services must be duly certified by an authorized
representative of FEP.  FEP shall allocate any invoiced fees between:  (i) activities
undertaken outside of Puerto Rico; and (ii) those relating to activities undertaken
within Puerto Rico.-----------------------------------------------------------------------------------

8.4  FEP will conduct the above-described scope of work at the rates included in
Appendix A.  A discount of 10% shall be applied to the fees for each invoice
included in the Monthly Fee Statement at the time of submission provided that all
prior invoices (including all invoices submitted pursuant to the Agreement for
Independent Contractor Consulting Services made as of the December 7, 2017)
have been timely paid in accordance with the Compensation Order.  Expenses will
be billed at the costs actually incurred, except as provided in section [7.6]. There
will be no reimbursement of alcohol.  Fees and expenses shall be billed and paid
pursuant to the Order Setting Procedures for Interim Compensation and
Reimbursement of Expenses of Professionals that was entered in PREPA's Title III
Case [Case No. 17-04780; ECF No. 252] (the "Compensation Order"). ----------------

8.5  PREPA will review the invoices upon receipt, and if they are in compliance with the
requirements set forth in this Agreement, it will proceed with payment.  FEP will



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 13

comply with the terms of the Compensation Order in invoicing its fees and PREPA shall pay FEP in accordance with the Compensation Order. ------------------------------

8.6   All invoices submitted by FEP shall include the following Certification in order to proceed with its payment:----------------------------------------------------------------------------

No Interest Certification:

*"We certify under penalty of nullity that no public servant of PREPA will derive or obtain any benefit or profit of any kind from the contractual relationship which is the basis of this invoice.  If such benefit or profit exists, the required waiver has been obtained prior to entering into the Agreement.  The only consideration to be received in exchange for the performance of the Services provided is the agreed-upon price that has been negotiated with an authorized representative of the PREPA. The total amount shown on this invoice is true and correct.  The Services have been rendered, and no payment has been received".*

_____

*FEP's Representative Signature*

This is an essential requirement and those invoices without this Certification will not be processed for payment.   In order to comply with the certification requirements set forth above, FEP shall require that subcontractors, if any approved by PREPA, providing Services also make the certification set forth above in any invoices submitted in connection with the Services. --------------------



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 14

**Article 9.  Transfer of Funds**

9.1  If FEP decides to assign or transfer an amount, due or payable, to which he is
entitled for services rendered or goods provided during the term of this Agreement,
Consultant shall notify PREPA of such transfer of funds, in accordance to the
provisions of Act 21-2012.  Said notice shall clearly indicate the rights granted,
including a copy of the contract under which the assignment or transfer of funds is
made, the exact amount of funds to be assigned or transferred, and specific
identification information regarding the assignee (full name of the person or
company), address and any other contact information.-------------------------------------

9.2  FEP acknowledges and agrees that PREPA's payment obligation under any
assignment of funds will cease upon payment of the outstanding amounts under
this Agreement.  PREPA shall not be required to make payments or transfer any
funds for an amount that exceeds the payment to which FEP is entitled to under
this Agreement. -----------------------------------------------------------------------------------

9.3  FEP shall include with its notice of assignment of funds a cashier's check or money
order for two hundred dollars ($200), payable to "Puerto Rico Electric Power
Authority", to cover administrative costs in processing such assignment.---------------

**Article 10.  Information and Material Facts**

10.1  PREPA shall promptly provide to FEP all information under the control of PREPA
and necessary for FEP to perform the Services under this Agreement and those
material facts that FEP may reasonably require in order to provide its Services to



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 15

PREPA.   PREPA will ensure, to the best of its knowledge and belief, that the documents, data, and other information and material facts provided to FEP, which are under its control, are true and complete, and does not constitute misleading or inaccurate information and FEP shall be entitled to rely on the accuracy and completeness of the documents, data, and other information and material facts.-----

10.2   PREPA will advise in writing FEP of any developments of which PREPA becomes aware, and which PREPA considers may have a material effect with respect to the information and/or facts provided to FEP.

**Article 11.   Information Disclosure and Confidentiality**

11.1   In performing the services under this Agreement, each Party may have access to, and may provide the other Party with information or documentation that constitutes confidential information ("Confidential Information").   Confidential Information includes, but is not limited to, any non-public information about customers or potential customers (regardless of whether it is personally identifiable or anonymous information), business and marketing plans, employee information, systems, manuals, policies and procedures, and products and services, including the disclosure of the engagements covered under this Agreement.   The Parties shall take all reasonable steps to keep confidential and use only for the purposes contemplated by the terms of the Agreement the Confidential Information provided by PREPA and/or FEP, and take all reasonable

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 16

steps to ensure that such information is not disclosed or distributed by its
employees or agents in violation of the terms of this Agreement. ----------------------

11.2   The Parties also agree that, except as agreed to in writing by both Parties, they
will not, at any time, disclose any Confidential Information to any person
whatsoever other than those officers, directors, employees or agents whose
duties reasonably require access to such Confidential Information, or permit any
person whatsoever other than officer, directors, employees or agents of the
Parties to examine and/or make copies of any reports prepared by FEP or under
its control by reason of its consulting services. Upon termination of this
Agreement each Party will turn over to the other Party, upon request, all
documents, papers, and other matters in its possession or under its control that
relate to the other Party.  FEP may retain one file copy for its records. --------------

11.3   Notwithstanding Article 11.2, a Party receiving Confidential Information proposes
to disclose such Confidential Information, including the engagements covered
under this Agreement, to a third party in order to perform under the Agreement or
otherwise, the receiving Party must first obtain the consent of the disclosing Party
to make such disclosure and enter into a confidentiality agreement with such
third party under which that third party would be restricted from disclosing, using
or duplicating such Confidential Information in a manner consistent with the
terms of this Article 11. Receiving Party may use such Confidential Information
only in connection with its performance under this Agreement or as otherwise

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 17

required by applicable law. Receiving Party shall protect such Confidential Information using the same degree of care, but no less than a reasonable degree of care, to prevent the unauthorized use or disclosure of such Confidential Information as receiving Party uses to protect its own confidential information. Confidential Information shall be returned to the disclosing Party or destroyed upon disclosing Party's request once the work contemplated by this Agreement has been completed or upon termination of this Agreement (whichever is earlier).

11.4    Notwithstanding anything contrary in this Article, FEP may share Confidential Information with (i) AAFAF, (ii) representatives of the Commonwealth and its agencies and instrumentalities, and (iii) with the FOMB under a common interest privilege, or as PREPA's Title III representative subject to the same confidentiality requirements under this agreement.----------------------------------------

11.5    For the avoidance of doubt, the term "Confidential Information" shall include, but not be limited to, all information provided to FEP by PREPA or at PREPA's direction regarding its facilities or operations and any and all information gathered or developed by FEP regarding the same.  The Parties further agree that proprietary records and documents related to FEP's business operations are confidential to FEP and will not be disclosed to PREPA or other Parties, except as ordered by the court.  The Parties agree that PREPA will resist any attempt by opposing counsel or other Parties to obtain FEP's proprietary information.  The term "confidential information", however, will not include information that: ----------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 18

(a)   known by the receiving Party at the time of disclosure or publicly known or becomes publicly known through no fault of the receiving Party;

(b)   received from a third party that, to the knowledge of the receiving Party, is free to disclose the information to the receiving Party;

(c)   independently developed by the receiving Party without the use of information received from the disclosing Party;

(d)   communicated to a third party with the express prior written consent of the disclosing Party; or

(e)   either (i) required to be disclosed by law or pursuant to an order of court or other competent government or regulatory authority or (ii) disclosed due to a bona fide settlement, arbitration, or pre-litigation request.

11.6   The Parties acknowledge that disclosure of any confidential information by either Party will give rise to irreparable harm to the injured Party inadequately compensable in damages.   Accordingly, either Party may seek and obtain injunctive relief against the breach or threatened breach of the foregoing undertakings, in addition to any other legal remedies, which may be available.----

11.7   If this Agreement terminates for any reason, FEP shall maintain in strictest confidence both; during the term of this Agreement and subsequent to termination of this Agreement, and shall not during the term of this Agreement or thereafter disclose or divulge to any person, firm, or corporation, or use directly

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 19



or indirectly, for its own benefit or the benefit of others, any Confidential Information except as provided in this Article 11, including, without limitation, information relating to PREPA's operations or trade secrets relating to the business or affairs of PREPA which FEP may acquire or develop in connection with or as a result of the performance of the Services hereunder. In the event of an actual or threatened breach by FEP of the provisions of this paragraph, PREPA shall be entitled to seek injunctive relief for such breach. Nothing herein shall be construed as prohibiting PREPA from pursuing any other legal remedies available, including the recovery of damages from FEP. --------------------------------

11.8    The above provisions do not apply with respect to information, which FEP is requested to disclose under applicable law and regulations, court order, subpoena or governmental directives, in which case FEP shall provide PREPA prompt notice of such request in order to procure for PREPA a reasonable opportunity to oppose such disclosure. FEP agrees to expeditiously notify and submit to PREPA a copy of any court order or subpoena and to the extent possible provide any assistance to PREPA (in the form of documents) regarding the submission of such information.-------------------------------------------------------------

11.9    With respect to this Agreement and any information supplied in connection with this Agreement and designated by the disclosing Party as confidential, the recipient agrees to: (i) protect the confidential information in a reasonable and appropriate manner and in accordance with applicable professional standards;

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 20

(ii) use confidential information only to perform its obligations under this Agreement; and (iii) reproduce confidential information only as required to perform its obligations under this Agreement.------------------------------------------------

**Article 12.  <u>Rights and Titles</u>**

12.1   FEP will submit any reports reasonably required by PREPA regarding the Services performed under this Agreement.  If required by PREPA, at the completion of any assigned task, FEP will submit a final written report describing the work it has performed.  This requirement shall not be interpreted as a waiver by PREPA of FEP's ethical obligation and responsibility of keeping PREPA informed of the progress of the assigned matters. ------------------------------------------

12.2   All rights, titles and interest in any reports, documents, analyses, investigations and any other by-product conceived or developed by FEP exclusively for PREPA as a result of performing its obligations under this Agreement shall be the exclusive property of PREPA.  FEP shall retain all right, title, and interest in and to proprietary works of authorship, pre-existing or otherwise, that have not been created specifically for PREPA under this Agreement.  With the exception of items marked as "CONFIDENTIAL" by FEP, PREPA shall retain the right to use, refer, share, or provide to any third party, as PREPA may determine, the results of any reports, documents, analyses, investigations or any other by-product of the Services performed by FEP under this Agreement. -----------------------------------



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 21

**Article 13.  Copyright**

FEP and PREPA shall jointly defend any suit or action brought against either party based on a claim that any document, report, study, analysis, copyrighted composition, article or any by-product of those, either used in the performance of the Services by FEP or provided to PREPA by FEP as part of its Services, or used in the performance of this Agreement, including their use by PREPA, constitutes an infringement of any patents or copyrights of the United States.  The Party of this Agreement subject to the claim or that becomes aware of a potential claim shall promptly notify in writing the other Party of this Agreement, and give the authority, information, and assistance reasonable and necessary for the defense of such claim. ---------------------------------------------------------

**Article 14.  Warranty**

14.1   FEP and its officers, directors, employees, and agents shall conduct the work in accordance with all applicable governmental laws, rules, regulations, and good standard industry practices, in a professional manner, and in accordance with the terms of this Agreement.  --------------------------------------------------------------

14.2   No other warranty, express or implied, is made or intended by this Agreement, by furnishing oral or written reports of findings made, or by any other act of FEP. ----

**Article 15.  Responsibility for Damages**

The appearing Parties agree that their responsibilities for damages under this Agreement will be governed by the Puerto Rico Civil Code and its case law, as dictated by the Supreme Court of Puerto Rico. --------------------------------------------------------------



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 22

**Article 16.  Independent Contractor**

16.1   FEP shall be considered as an independent contractor, for all  purposes under this Agreement, and all persons engaged or contracted by FEP for the performance of its obligations herein, shall be considered as its employees or agents, and not as employees or agents of PREPA or public servants of the PREPA or the Commonwealth of Puerto Rico --------------------------------------

16.2   As an independent contractor, FEP shall not be entitled to any fringe benefits, such as, but not limited to vacation, sick leave, and to which PREPA's employees are entitled. -------------------------------------------------------------------------

16.3   FEP is fully and solely responsible for all taxes, assessments, penalties, fines, and interest relating to wages and benefits paid to FEP's employees under this Agreement, pursuant to all federal, state and local laws, including required withholding from wages of employees, regardless of the characterization of those employees by the Parties, administrative agencies, or the courts. --------------------

16.4   FEP, its subcontractors, and their officers, directors, and employees are not agents or employees of PREPA and have no authority to obligate or bind PREPA in any way. ---------------------------------------------------------------------------

**Article 17.  Employees not to Benefit**

No officer, employee or agent of PREPA, nor of the Government of the Commonwealth of Puerto Rico or its Municipal Governments shall be admitted to any share or part of this Agreement or to any benefit that may arise therefrom.----------------------------------------



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 23

**Article 18.  <u>Conflict of Interest</u>**

18.1   FEP certifies that none of its representatives under this Agreement receive payment or compensation of any nature, for the services regularly rendered through an appointment as public official or public servant in another government agency, body, public corporation or municipality of Puerto Rico.   FEP also certifies that it may have other consulting services contracts with other governmental agencies or bodies, but such condition does not constitute a conflict of interest for FEP as such term is defined in Article 18.2. ---------------------

18.2   FEP acknowledges that in executing its services pursuant to this Agreement it has a duty of complete loyalty towards PREPA which includes not having conflict of interest.   "Conflict of Interest" means representing clients who have or may have interests that are contrary to PREPA, but does not include rendering services that are unrelated to the services covered in this Agreement.   Also, FEP shall have the continuous obligation to disclose to PREPA all information and circumstances of its relations with clients and third persons that would result in a conflict of interest which would influence FEP when performing its responsibilities under this Agreement. ---------------------------------------------------------------------------

18.3   The Parties understand and agree that a conflict of interest exists when FEP must advocate a position or outcome on behalf of any existing or future client that is contrary to PREPA's interests.   Also, any conduct defined in the Rules of Professional Conduct regarding conflict of interests shall apply to FEP and its



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 24

personnel.   PREPA acknowledges FEP is a firm having multiple financial institutions and investors as clients, and with or without FEP's knowledge, any of such clients may from time to time acquire, hold or trade interests adverse to PREPA or its affiliates.  FEP representations of those clients in unrelated matters shall not be deemed conflicts or undue influences on FEP or a conflict of interest within the meaning of this Agreement.---------------------------------------------------------

18.4   In the event that any of the partners, directors, agents or employees of FEP engaged in providing services under this Agreement should engage in the conduct described herein, said conduct shall constitute a violation of the prohibitions provided herein.---------------------------------------------------------------------

18.5   FEP's partners, directors, agents or employees and personnel shall endeavor to avoid even the appearance of the existence of conflicting interests that have not otherwise been waived. -------------------------------------------------------------------------

18.6   FEP acknowledges that PREPA's Chief Executive Officer shall have the power to intervene with the acts of FEP and/or its agents, employees, and subcontractors regarding the enforcement of the prohibitions contained herein.  In the event that the existence of adverse interests is discovered, the PREPA's Chief Executive Officer shall inform FEP in writing of PREPA's intention to terminate this Agreement within a thirty (30) day period.  During said period, FEP may request a hearing with the Chief Executive Officer to present its arguments regarding the alleged conflict of interests.  In the event that FEP does not request such hearing

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 25



during the specified thirty (30) day period or the controversy is not satisfactory

settled during the hearing, this Agreement shall be terminated at the end of such

thirty (30) day period. -------------------------------------------------------------------------------

18.7   FEP certifies that, at the time of the execution of this Agreement, it does not have

a conflict of interests with PREPA and that it does not maintain any claim, judicial

or otherwise, against the Government of Puerto Rico, its agencies or

instrumentalities.  Also, FEP certifies that, to the best of its knowledge, at the

time of the execution of this Agreement, none of its clients have a conflict of

interests with PREPA, nor any of FEP's other contractual relationships represent

a conflict of interests with PREPA.  If such conflicting interests arise after the

execution of this Agreement, FEP shall, to the extent consistent with its

obligations to other clients, notify PREPA immediately.  If FEP determines it does

represent anyone who has adverse interests that are in conflict with PREPA,

FEP shall notify PREPA and take commercially reasonable measures to

safeguard PREPA's interests and ensure its Confidential Information remains

confidential.  Any employee of FEP representing anyone with adverse interests

to PREPA shall be restricted access to any and all information regarding PREPA

and FEP shall take commercially reasonable measures to ensure the proper

procedures are in place to protect PREPA's interests.  -----------------------------------



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 26

**Article 19.  <u>Notices</u>**

All notices and other communications hereunder shall be in writing and shall be deemed given when delivered personally or sent by telecopy, electronic transmission or postage prepaid, by registered, certified or express mail (return receipt requested) or reputable overnight courier service and shall be deemed given when so delivered by hand, electronic transmission or telecopied, or if mailed, three days after mailing (one business day in the case of express mail or overnight courier service) to the Parties to the following addresses:--------------------------------------------------------------------------------

| To PREPA: | Puerto Rico Electric Power Authority<br>PO Box 364267<br>San Juan, Puerto Rico 00936-4267 |
| Attention: | Efran Paredes Maisonet<br>Acting Chief Executive Officer<br>Email: efran.paredes@prepa.com |
| To FEP: | Filsinger Energy Partners, Inc.<br>90 Madison St, Suite 600<br>Denver, CO 80206 |
| Attention: | Controller |
| | Email:  accounts@filsingerenergy.com |

**Article 20.  <u>Applicable Law and Venue</u>**

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Puerto Rico.  Also, the Parties expressly agree that only the United States District Court for the District of Puerto Rico will be the court of competent and exclusive jurisdiction to decide over the judicial controversies that the appearing Parties may have among them regarding the terms and conditions of this Agreement. -------------



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 27

**Article 21.  <u>Change in Law</u>**

During the term of this Agreement, any change in applicable tax law which cause an increase in FEP's costs when providing the services, shall be FEP's responsibility and PREPA shall not be obligated to increase the Agreement Amount. ----------------------------

**Article 22.  <u>Novation</u>**

22.1   The Parties expressly agree that no amendment or change order, which could be made to the Agreement during its term, shall be understood as a contractual novation, unless both Parties agree to the contrary, specifically and in writing.-----

22.2   The previous provision shall be equally applicable in such other cases where PREPA gives FEP a time extension for the compliance of any of its obligations under this Agreement, or where PREPA dispenses the claim or demand of any of its credits or rights under the Agreement. --------------------------------------------------

**Article 23.  <u>Severability</u>**

If a court of competent jurisdiction declares any of the Agreement provisions as null and void or invalid, such holding will not affect the validity and effectiveness of the remaining provisions of this Agreement and the Parties agree to comply with their respective obligations under such provisions not included in the judicial declaration.---------------------

**Article 24.  Limitation on Liability**

NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE WORK, WHETHER SUCH

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 28

DAMAGES ARE FORESEEABLE, WHETHER SUCH PARTY WAS ADVISED OF SUCH LOSSES OR DAMAGES IN ADVANCE, AND WHETHER SUCH LIABILITY IS IN CONTRACT, TORT (INCLUDING NEGLIGENCE, BREACH OF STATUTORY DUTY OR OTHERWISE), AND BOTH PARTIES SPECIFICALLY AND EXPRESSLY WAIVE, ANY SUCH DAMAGES. THE PARTIES AGREE, TO THE FULLEST EXTENT PERMITTED BY LAW, TO LIMIT THE AGGREGATE LIABILITY OF FEP, ITS PARENT, AFFILIATES AND SUBCONTRACTORS, AND ITS AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS (THE "FEP PARTIES" AND INDIVIDUALLY, A "FEP PARTY"), TO THE COMPENSATION RECEIVED BY FEP FOR THE WORK PERFORMED PURSUANT TO THIS AGREEMENT (THE "LIABILITY CAP"). THIS LIMITATION OF LIABILITY IN FAVOR OF FEP SHALL APPLY TO ALL SUITS, CLAIMS, ACTIONS, LOSSES, COSTS AND DAMAGES OF ANY NATURE, INCLUDING ANY CLAIMED LEGAL FEES AND EXPENSES, ARISING FROM OR RELATED TO THIS AGREEMENT OR THE WORK AND WITHOUT REGARD TO THE LEGAL THEORY UNDER WHICH SUCH LIABILITY IS IMPOSED. IN THE EVENT EITHER PARTY ASSERTS A CLAIM, ACTION, PROCEEDING, LOSSES, COSTS, OR DAMAGES WAIVED IN THIS SECTION 24, THE OTHER PARTY MAY ASSERT THIS SECTION 24 AS A DEFENSE AND SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS INCURRED IN DEFENDING AGAINST SUCH CLAIM, ACTION, PROCEEDING, LOSS, COST, OR DAMAGE.--------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 29

THE FEP PARTIES SHALL HAVE NO LIABILITY FOR ANY CLAIMS ARISING FROM,

UNDER OR IN CONNECTION WITH SAFETY OR OPERATIONAL PROCEDURES.

THE FEP PARTIES SHALL NOT BE LIABLE TO PREPA OR ANY PARTY

ASSERTING A CLAIM ON BEHALF OF PREPA, EXCEPT FOR DIRECT DAMAGES

FOUND IN A FINAL JUDGMENT TO BE THE DIRECT RESULT OF THE GROSS

NEGLIGENCE, BAD FAITH OR INTENTIONAL MISCONDUCT OF FEP. THE FEP

PARTIES SHALL NOT BE LIABLE FOR CONSEQUENTIAL DAMAGES UNDER ANY

CIRCUMSTANCES, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF

SUCH DAMAGES. THIS LIMITATION OF LIABILITY IN FAVOR OF THE FEP

PARTIES SHALL APPLY TO ALL SUITS, CLAIMS, ACTIONS, LOSSES, COSTS AND

DAMAGES OF ANY NATURE BY ANY PARTY, INCLUDING ANY CLAIMED LEGAL

FEES AND EXPENSES, ARISING FROM OR RELATED TO THIS AGREEMENT OR

THE WORK AND WITHOUT REGARD TO THE LEGAL THEORY UNDER WHICH

SUCH LIABILITY IS IMPOSED. THE LIABILITY CAP IS THE TOTAL LIMIT OF THE

FEP PARTIES' AGGREGATE LIABILITY FOR ANY AND ALL CLAIMS OR DEMANDS

BY ANYONE PURSUANT TO THIS AGREEMENT, INCLUDING LIABILITY TO PREPA,

TO ANY OTHER PARTY MAKING CLAIMS RELATING TO THE WORK PERFORMED

BY FEP PURSUANT TO THIS AGREEMENT. THIS PROVISION SHALL SURVIVE

THE EXPIRATION OR TERMINATION OF THIS AGREEMENT--------------------------------

With respect to any indemnity set forth in this Agreement, each indemnity shall give

prompt notice of its receipt of any threat, indication or other notice of any claim,



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 30

investigation or demand that might give rise to any losses required to be indemnified

hereunder and shall reasonably cooperate in the defense of such claim.   The

indemnifying party shall have the right to conduct defense of such action at its sole

expense. ----------------------------------------------------------------------------------------------------------

**Article 25.  Defense, Indemnification and Subrogation**

25.1   To the fullest extent permitted by the applicable law, PREPA shall defend,

indemnify and hold harmless FEP, its patent, affiliates, and subcontractors and

its and their respective directors, officers, employees, or agents ("Indemnitees")

from and against any and all claims, liabilities, liens, costs, damages, citations,

penalties, fines, attorneys' fees, losses, and expenses of whatever nature

("Indemnified Claim") arising out of or resulting from the performance of or failure

to perform the services provided under this Agreement, regardless of whether or

not the Indemnified Claim is caused in part by one or more Indemnitees. For the

avoidance of doubt, PREPA's indemnification obligation shall include any suit or

action referenced in Article [13] of this Agreement.   Such obligation shall not be

construed to negate, abridge, or otherwise reduce other rights or obligations of

indemnity, which would otherwise exist as to any Indemnitee. Such obligation

shall not apply where the Indemnified Claim is caused by the gross negligence or

intentional misconduct of the Indemnitees. PREPA's defense and indemnity

obligations shall survive the end of the term of the Agreement or termination of

the Agreement (whichever is earlier).   Notwithstanding any provision to the

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 31

contrary in the applicable law, including any statute of limitations, an Indemnitee's claim for indemnification shall not accrue, and any applicable statute of limitations shall not begin to run, until Indemnitee's payment of a final judgment, arbitration award, or settlement arising out of any Indemnified Claim.

25.2   With respect to any matter to which PREPA's defense and indemnity obligations apply, the Indemnitee shall have the right to assume its own defense if, in its sole discretion, it determines that the defense being provided by PREPA is inadequate or where PREPA has a conflict of interest in defending the Indemnified Claim. If the Indemnitee assumes its own defense, or if the Indemnitee incurs expenses or fees in connection with a defense undertaken by PREPA, PREPA shall reimburse the Indemnitee for all reasonable attorneys' fees and other expenses related to the preparation and defense obligations to the Indemnitee, such payment to be made within 30 calendar days after PREPA's receipt of a statement of such fees and expenses. PREPA's obligations to defend the Indemnitee shall be independent of and in addition to PREPA's indemnity obligations and shall apply to the fullest extent permitted by law.  -------

25.3   PREPA waives all rights against the Indemnitees for the recovery of losses, costs, or damages to the extent these losses, costs, or damages are covered by commercial general liability, commercial umbrella liability, business auto liability, workers compensation, employers' liability insurance, and any other insurance to be maintained pursuant to this Agreement.  ---------------------------------------------------



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 32

25.4   In addition to the above indemnification, if Todd Filsinger is deemed by a court of
competent jurisdiction an officer, director, employee or fiduciary of PREPA,
PREPA hereby covenants and agrees to provide Todd Filsinger the most
favorable indemnification provided by PREPA to its officers, directors, employees
or fiduciaries, whether under PREPA's charter or by-laws, by contract or
otherwise. --------------------------------------------------------------------------------------

## Article 26.  Insurance

FEP shall secure and maintain in full force and effect during the life of this Agreement
as provided herein, policies of insurance covering all operations engaged in by the
Agreement as follows: --------------------------------------------------------------------------------

1.   <u>Commonwealth of Puerto Rico Workmen's Compensation Insurance</u>:

FEP shall provide Workmen's Compensation Insurance as required by the
Workmen's Compensation Act 45-1935 of the Commonwealth of Puerto Rico.
FEP shall also be responsible for compliance with said Workmen's Compensation
Act by all its sub-contractors, agents, and invitees, if any. ---------------------------------

FEP shall furnish a certificate from the Puerto Rico State Insurance Fund showing
that all personnel employed in the work are covered by the Workmen's
Compensation Insurance, in accordance with this Agreement. ---------------------------

2.   Employer's Liability Insurance

FEP shall provide Employer's Liability Insurance with minimum bodily injury limits
of $1,000,000 for each employee and $1,000,000 for each accident covering

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 33

against the liability imposed by Law upon FEP as a result of bodily injury, by accident or disease, including death arising out of and in the course of employment, and outside of and distinct from any claim under the Workmen's Compensation Act of the Commonwealth of Puerto Rico. ----------------------------------

3. <u>Commercial General Liability Insurance</u>:

FEP shall provide a Commercial General Liability Insurance with limits of $1,000,000 per occurrence and $ 1,000,000 aggregate. ----------------------------------



4. Commercial Automobile Liability Insurance

FEP shall provide a Commercial Automobile Liability Insurance with limits of $1,000,000 combined single limit covering all owned or scheduled autos, non-owned and rented automobiles. ------------------------------------------------------------------

5. <u>Professional Liability Insurance</u>:

FEP shall provide a Professional Liability Insurance with limits of $ 1,000,000 per claim and $ 1,000,000 aggregate. ------------------------------------------------------------------

6. <u>Requirements under the Policies</u>:

The Commercial General Liability and Commercial Automobile Liability Insurance required under this Agreement shall be endorsed to include: ----------------------------

a. <u>As Additional Insured</u>:

Puerto Rico Electric Power Authority (PREPA)
Risk Management Office
PO Box 364267
San Juan, Puerto Rico 00936-4267

b. A 30 day cancellation or nonrenewable notice to be sent to the above address.

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 34



    c. An endorsement including this Agreement under contractual liability coverage and identifying it by number, date and Parties to the contract. ----------------------

    d. Waiver of subrogation in favor of Puerto Rico Electric Power Authority (PREPA). --------------------------------------------------------------------------------------

    e. Breach of Warranties or Conditions: ----------------------------------------------------

        *"The Breach of any of the Warranties or Conditions in this policy by the Insured shall not prejudice PREPA's rights under this policy."*-------------------------------

<u>Furnishing of Policies:</u>

All required policies of insurance shall be in a form acceptable to PREPA and shall be issued only by insurance companies authorized to do business in Puerto Rico.---------------------------------------------------------------------------------------

FEP shall furnish a certificate of insurance in original signed by an authorized representative of the insurer in Puerto Rico, describing the coverage afforded.----

**Article 27. <u>Compliance with the Commonwealth of Puerto Rico Contracting Requirements</u>**

FEP will comply with all applicable State Law, Regulations and Executive Orders that regulate the contracting process and establish the requirements for governmental contracting in the Commonwealth of Puerto Rico, including but not limited to those mentioned in this Article.  Also, the FEP shall provide, before the execution of the Agreement the following documents and certifications: --------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 35

A. Executive Order Num. OE-1991-24 of June 18, 1991 to require certification of compliance with the Internal Revenue Services of the Commonwealth of Puerto Rico:  Pursuant to Executive Order Number OE-1991-24 of June 18, 1991, FEP will certify and guarantee that it has filed all the necessary and required income tax returns to the Government of Puerto Rico for the last five (5) years.  FEP further will certify that it has complied and is current with the payment of any and all income taxes that are, or were due, to the Government of Puerto Rico.  FEP shall provide, a certification issued by the Internal Revenue Services of the Commonwealth of Puerto Rico.  During the term of this Agreement, FEP agrees to pay and/or to remain current with any repayment plan agreed to by FEP with the Government of Puerto Rico. -------------------------------------------------------------------------------------------------

B. Executive Order No. OE-1992-52 of August 28, 1992 to require certification of compliance with the Department of Labor of the Commonwealth of Puerto Rico.  Pursuant to Executive Order Number 1992-52, dated August 28, 1992 amending OE-1991-24, FEP will certify and warrant that it has made all payments required for unemployment benefits, workmen's compensation and social security for chauffeurs, whichever is applicable, or that in lieu thereof, has subscribed a payment plan in connection with any such unpaid items and is in full compliance with the terms thereof.  FEP shall provide a Certification issued by Department of Labor of the Commonwealth of Puerto Rico.  FEP accepts and acknowledges its responsibility for requiring and obtaining a similar warranty and certification from each and every

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 36

consultant and sub-contractor, if any previously approved by PREPA, whose service
FEP has secured in connection with the services to be rendered under this
Agreement and shall forward evidence to PREPA as to its compliance with this
requirement.---------------------------------------------------------------------------------------------

C. Government of Puerto Rico Municipal Tax Collection Center:  FEP will certify and
guarantee that it does not have any current debt with regards to property taxes that
may be registered with the Government of Puerto Rico's Municipal Tax Collection
Center (known in Spanish as *Centro de Recaudación de Ingresos Municipales*
("*CRIM*").  FEP further will certify to be current with the payment of any and all
property taxes that are or were due to the Government of Puerto Rico.  FEP shall
provide, a Certification issued by the Municipal Revenues Collection Center
(MRCC), assuring that FEP does not owe any tax accruing to such governmental
agency.  During the Term of this Agreement, FEP agrees to pay and/or to remain
current with any repayment plan agreed to by FEP with the Government of
Puerto Rico with regards to its property taxes.----------------------------------------------------

FEP shall provide a Personal Property Tax Filing Certification, issued by the MRCC
which indicates that FEP has filed its Personal Property Tax Return for the last
five (5) contributory terms or Negative Debt certification issued by the MRCC with
respect to real and property taxes and a sworn statement executed by FEP
indicating that (i) its revenues are derived from the rendering of professional
services, (ii) during the last five (5) years (or the time in which it has been providing

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 37



professional services) it has had no taxable business or personal property on the 1st of January of each year, (iii) that for such reasons it has not been required to file personal property tax returns, as required under Article 6.03 of Act 83-1991, as amended, and (iv) that for such reason it does not have an electronic tax file in the MRCC's electronic system.-------------------------------------------------------------------------

D. FEP shall furnish a Certification issued by the Treasury Department of Puerto Rico which indicates that FEP does not owe Puerto Rico Sales and Use taxes to the Commonwealth of Puerto Rico; or is paying such taxes by an installment plan and is in full compliance with its terms.----------------------------------------

E. FEP shall provide a Puerto Rico Sales and Use Tax Filing Certificate, issued by the Treasury Department of Puerto Rico assuring that FEP has filed his Puerto Rico Sales and Use Tax for the last sixty (60) contributory periods. -------------

F. FEP shall provide a copy of FEP's Certificate of Merchant's Registration issued by the Treasury Department of Puerto Rico. ----------------------------------------------------

G. Puerto Rico Child Support Administration (*ASUME*):   FEP shall present, a certification issued by *ASUME* certifying that FEP nor any of its owners, affiliates of subsidiaries, if applicable, have any debt, outstanding debt, or legal procedures to collect child support payments that may be registered with the Puerto Rico Child Support Administration. ----------------------------------------------------------------------------

H. FEP shall provide a Good Standing Certificate issued by the Department of State of Puerto Rico. ------------------------------------------------------------------------------------------

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 38

I. FEP shall provide a Certification of Incorporation, or Certificate of Authorization to do business in Puerto Rico issued by the Department of State of Puerto Rico. -------------

J. Special Contribution for Professional and Consulting Services:  As required by Act 48-2013, as amended, PREPA will withhold a special contribution of one point five percent (1.5%) of the gross amounts paid under this Agreement. --------------------

K. Social Security and Income Tax Retentions:  In compliance with Executive Order 1991 OE- 24; and C.F.R. Part 404 et. Seq., FEP will be responsible for rendering and paying the Federal Social Security and Income Tax Contributions for any amount owed as a result of the income, from this Agreement.------------------------

L. Income Tax Retention Law:  PREPA shall deduct and withhold ten percent (10%) of any and all payments to residents of the Commonwealth of Puerto Rico as required by the Internal Revenue Code of Puerto Rico.  In case of US citizens and Non-US citizens, which are nonresidents of the Commonwealth of Puerto Rico FEP will retain twenty percent (20%) and twenty-nine percent (29%) respectively.  PREPA will remit such withholdings to the Government of Puerto Rico's Treasury.  FEP will request PREPA not to make such withholdings if, to the satisfaction of PREPA, FEP timely provides a release from such obligation by the Government of Puerto Rico's Treasury Department. ----------------------------------------------------------------------------------

M. Compliance with Act No. 1 of Governmental Ethics:  FEP will certify compliance with Act 1 of January 3, 2012, as amended, known as the Ethics Act of the Government of Puerto Rico, which stipulates that no employee or executive of PREPA nor any

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 39

member of his/he immediate family (spouse, dependent children or other members

of his/her household or any individual whose financial affairs are under the control of

the employee) shall have any direct or indirect pecuniary interest in the services to

be rendered under this Agreement, except as may be expressly authorized by the

Governor of Puerto Rico in consultation with the Secretary of Treasury and the

Secretary of Justice of the Government.  3 L.P.R.A. § 8611 et seq.;-----------------------

N. Act 168-2000:  Law for the Strengthening of the Family Support and Livelihood of

Elderly People:  FEP will certify that if there is any Judicial or Administrative Order

demanding payment or any economic support regarding Act 168-2000, as amended,

the same is current and in all aspects in compliance.  Act 168-2000 *Law for the

Strengthening of the Family Support and Livelihood of Elderly People"*. ----------------

O. Act 127-2004:  Agreement Registration in the Comptroller's Office of Puerto Rico

Act: Payment for services object of this Agreement will not be made until this

Agreement is properly registered in the Office of the Comptroller of the Government

of Puerto Rico pursuant to Law 18 of October 30, 1975, as amended. -------------------

P. Prohibition with respect to execution by public officers:  3 L.P.R.A. §8615(c):  No

public officer or employee authorized to contract on behalf of the executive agency

for which he/she works may execute a contract between the agency for which

he/she works and an entity or business in which he/she or any member of his/her

family unit has or has had direct or indirect economic interest during the last four (4)

years prior to his/her holding office. -------------------------------------------------------------



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 40

Q. Prohibition with respect to contracting with officers or employees:  3 L.P.R.A.
§8615(d):  No executive agency may execute a contract in which any of its officers
or employees or any member of their family units has or has had direct or indirect
economic interest during the last four (4) years prior to their holding office, unless
the Governor gives authorization thereto with the previous recommendation of the
Secretary of the Treasury and the Secretary of Justice. --------------------------------------

R. Prohibition with respect to contracts with officers and employees of other
Government entities:  3 L.P.R.A. §8615(e):  No public officer or employee may be a
party to or have any interest in any profits or benefits produced by a contract with
any other executive agency or government dependency unless the Governor gives
express authorization thereto with previous recommendation from the Secretary of
the Treasury and the Secretary of Justice. -----------------------------------------------------

S. Prohibition with respect to evaluation and approval by public officers:
3 L.P.R.A. §8615(f):  No public officer or employee who has the power to approve or
authorize contracts shall evaluate, consider, approve or authorize any contract
between an executive agency and an entity or business in which he/she or any
member of his/her family unit has or has had direct or indirect economic interest
during the last four (4) years prior to his/her holding office. ---------------------------------

T. Prohibition with respect to execution by public officers' contracts with former public
officers:  3 L.P.R.A. §8615(h):  No executive agency shall execute contracts with or
for the benefit of persons who have been public officers or employees of said

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 41



executive agency until after two (2) years have elapsed from the time said person has ceased working as such. --------------------------------------------------------------------------

U. Dispensation:  Any and all necessary dispensations have been obtained from any government entity and that said dispensations shall become part of the contracting record. -----------------------------------------------------------------------------------------------------

V. Rules of Professional Ethics:  FEP acknowledges and accepts that it is knowledgeable of the rules of ethics of his/her profession and assumes responsibility for his/her own actions. -------------------------------------------------------------------------------

If any of the previously required Certifications shows a debt, and FEP has requested a review or adjustment of this debt, FEP will certify that it has made such request at the time of the Agreement execution.  If the requested review or adjustment is denied and such determination is final, FEP will provide, immediately, to PREPA a proof of payment of this debt; otherwise, FEP accepts that the owed amount be offset by PREPA and retained at the origin, deducted from the corresponding payments. ----------------------------

**Article 28.  <u>Anti-Corruption Code for a New Puerto Rico</u>**

FEP agrees to comply with the provisions of Act 2-2018, as the same may be amended from time to time, which establishes the Anti-Corruption Code for a New Puerto Rico. FEP hereby certifies that it does not represent particular interests in cases or matters that imply a conflicts of interest, or of public policy, between the executive agency and the particular interests it represents. -----------------------------------------------------------------------



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 42

FEP shall furnish a sworn statement to the effect that neither FEP nor any president,

vice president, executive director or any member of a board of officials or board of

directors, or any person performing equivalent functions for FEP has been convicted of

or has pled guilty to any of the crimes listed in Article 6.8 of Act 8-2017, as amended,

known as the Act for the Administration and Transformation of Human Resources in the

Government of Puerto Rico or any of the crimes included in Act 2-2018.----------------------

FEP hereby certifies that it has not been convicted in Puerto Rico or United States

Federal court for under Articles 4.2, 4.3 or 5.7 of Act 1-2012, as amended, known as the

Organic Act of the Office of Government Ethics of Puerto Rico, any of the crimes listed

in Articles 250 through 266 of Act 146-2012, as amended, known as the Puerto Rico

Penal Code, any of the crimes typified in Act 2-2018, as amended, known as the Anti-

Corruption Code for a New Puerto Rico or any other felony that involves misuse of

public funds or property, including but not limited to the crimes mentioned in

Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration and

Transformation of Human Resources in the Government of Puerto Rico. --------------------

PREPA shall have the right to terminate the Agreement in the event FEP is convicted in

Puerto Rico or United States Federal court for under Articles 4.2, 4.3 or 5.7 of

Act 1-2012, as amended, known as the Organic Act of the Office of Government Ethics

of Puerto Rico, any of the crimes listed in Articles 250 through 266 of Act 146-2012, as

amended, known as the Puerto Rico Penal Code, any of the crimes typified in

Act 2-2018, as amended, known as the Anti-Corruption Code for a New Puerto Rico or

Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 43



any other felony that involves misuse of public funds or property, including but not limited to the crimes mentioned in Article 6.8 of Act 8-2017, as amended, known as the Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico. -------------------------------------------------------------------------------------------------

<u>Consequences of Non-Compliance</u>: FEP expressly agrees that the conditions outlined throughout this Article are essential requirements of this Agreement. Consequently, should any one of these representations, warranties or certifications be incorrect, inaccurate or misleading, in whole or in part, there shall be sufficient cause for the PREPA to render this Agreement null and void, and FEP shall reimburse the PREPA all moneys received under this Agreement.----------------------------------------------------------------------

### Article 29. **Non-Discrimination**

FEP agrees that it will not discriminate against any employee or applicant for employment on account of race, color, religion, sex, sexual orientation, disability or national origin in violation of applicable laws. ---------------------------------------------------------

### Article 30. **Entire Agreement**

The terms and conditions contained herein constitute the entire agreement between PREPA and FEP with respect to the subject matter of this Agreement, and to the extent relating exclusively to this Agreement, supersede all communications, negotiations, and agreements of the Parties, whether written or oral, other than these, made prior to the signing of this Agreement.



Professional Services Agreement – Filsinger Energy Partners, Inc.
Page 44

IN WITNESS THEREOF, the Parties hereto sign this Agreement in San Juan,

Puerto Rico this  17   day of August, 2020. ------------------------------------------------------------

Puerto Rico Electric Power Authority          Filsinger Energy Partners, Inc.

_____ 19 - August - 2020        _____

Efran Paredes Maisonet                        Todd W. Filsinger
Acting Chief Executive Officer                Senior Managing Director
Tax ID: 660-433747                            Tax ID:  27-2567004



**APPENDIX A**

**Schedule of Filsinger Energy Partners Professionals who may be Assigned to this Matter**
Updated: July 23, 2020

| Professional | Title | Hourly Rate | Discounted Hourly Rate |
|---|---|---|---|
| Todd W. Filsinger | Senior Managing Director | $936 | $842 |
| Gary Germeroth | Managing Director | $850 | $765 |
| Paul Harmon | Managing Director | $850 | $765 |
| Stephen Kopenitz | Managing Director | $806 | $725 |
| Keturah Nelson | Managing Director | $740 | $666 |
| Alan Scott Davis | Director | $650 | $585 |
| Ronald "Rusty" Evans | Director | $650 | $585 |
| Mike Green | Director | $550 | $495 |
| Laura Hatanaka | Director | $596 | $536 |
| Robert "Buck" Monday | Director | $680 | $612 |
| Brian Pauling | Director | $650 | $585 |
| Nathan Pollak | Director | $650 | $585 |
| Norm Spence | Director | $667 | $600 |
| Timothy Wang | Director | $650 | $585 |
| Sujit Bhattacharya | Senior Managing Consultant | $610 | $549 |
| Chad Balken | Managing Consultant | $596 | $536 |
| Billy Michael Carter | Managing Consultant | $596 | $536 |
| Emilie Kelly | Managing Consultant | $416 | $374 |
| Marcus Klintmalm | Managing Consultant | $596 | $536 |
| Matt Lee | Managing Consultant | $610 | $549 |
| John Soward | Managing Consultant | $596 | $536 |
| Laura Walker | Managing Consultant | $596 | $536 |
| David Wall | Managing Consultant | $596 | $536 |
| David "Biff" Whitten | Managing Consultant | $596 | $536 |
| Parker Cohn | Consultant | $333 | $300 |
| Allison Horn | Consultant | $333 | $300 |
| Richa Karve | Consultant | $333 | $300 |
| Pamela Morin | Consultant | $416 | $374 |
| Jill Rennert | Consultant | $416 | $374 |
| Caitlin Sicard | Consultant | $333 | $300 |
| Jamie Schafer | Consultant | $333 | $300 |
| Kevin Helenurm | Analyst | $330 | $297 |
| Tom Puhr | Analyst | $226 | $203 |

**Rate Table**

| Title | Hourly Rate |
|---|---|
| Senior Managing Director | $820 - $936 |
| Managing Director | $620 - $850 |
| Director | $506 - $680 |
| Managing Consultant | $406 - $610 |
| Consultant | $326 - $416 |
| Analyst and Technical Writer | $226 - $330 |