**Hearing Date**: October 6, 2021 at 9:30am (AST)
**Objection Deadline**: August 4, 2021 at 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

----------------------------------------------------------------------- x

In re:                                                      :
                                                            :
THE FINANCIAL OVERSIGHT AND                                 : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                           : Title III
                                                            :
As representative of                                        : Case No. 17-BK-3283 (LTS)
                                                            :
THE COMMONWEALTH OF PUERTO RICO, *et al.*,                  : (Jointly Administered)
                                                            :
Debtors.[1]                                                 :
----------------------------------------------------------------------- x

## TWELFTH INTERIM APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM FEBRUARY 1, 2021 THROUGH MAY 31, 2021

### SUMMARY COVER SHEET

Name of Applicant: Casillas, Santiago & Torres, LLC

Authorized to Provide Professional Services to: Official Committee of Unsecured Creditors of all Title III Debtors (other than PBA and COFINA) (the "Committee")

Date of retention: July 20, 2017

Period for which compensation and reimbursement is sought: February 1, 2021 through and including May 31, 2021 (the "Application Period")

Amount of interim compensation sought as actual, reasonable, and necessary: $233,198.00

Amount of interim expense reimbursement sought as actual, reasonable, and necessary: $4,646.56

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Are your fee or expense totals different from the sum of previously served monthly statements?
_ Yes X No

Blended rate in this application for all attorneys: $253.65/hour

Blended rate in this application for all timekeepers: $252.52/hour

This is an *interim* application.

The total time expended for fee application preparation for the Interim Fee Period is approximately 16 hours, and the corresponding compensation requested is approximately $4,240.00.

### MONTHLY FEE REQUESTS TO DATE

| Date Submitted | Monthly Period Covered | Fees | Requested Fees (90%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 10% Fee Holdback |
|---|---|---|---|---|---|---|---|
| **First Interim Fee Period (July 20, 2017 through August 31, 2017)** | | | | | | | |
| 12/15/2017 | 07/21/2017 - 08/31/2017 | $169,523.00 | $152,570.70 | $6,320.62 | $173,440.00 | $6,320.62 | $0.00 |
| **Total** | | **$169,523.00** | **$152,570.70** | **$6,320.62** | **$173,440.00** | **$6,320.62** | **$0.00** |
| **Second Interim Fee Period (September 1, 2017 through January 31, 2018)** | | | | | | | |
| 03/19/2018 | 09/01/2017 - 01/31/2018 | $444,580.00 | $400,122.00 | $21,160.13 | $444,580.00 | $21,160.13 | $0.00 |
| **Total** | | **$444,580.00** | **$400,122.00** | **$21,160.13** | **$444,580.00** | **$21,160.13** | **$0.00** |
| **Third Interim Fee Period (February 1, 2018 through May 31, 2018)** | | | | | | | |
| 6/25/2018 | 02/01/2018 - 02/28/2018 | $93,937.50 | $84,543.75 | $1,172.10 | $93,937.50 | $1,172.10 | $0.00 |
| 6/25/2018 | 03/01/2018 - 03/31/2018 | $75,088.00 | $67,579.20 | $4,782.51 | $75,088.00 | $4,782.51 | $0.00 |
| 7/18/2018 | 04/01/2018 - 05/31/2018 | $125,095.00 | $112,585.50 | $6,097.48 | $125,095.00 | $6,097.48 | $0.00 |

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| **Total** | | $294,120.50 | $264,708.45 | $12,052.09 | $294,120.50 | $12,052.09 | $0.00 |
| **Fourth Interim Fee Period (June 1, 2018 through September 30, 2018)** | | | | | | | |
| 8/27/2018 | 06/01/2018 - 06/30/2018 | $31,792.00 | $28,612.80 | $983.12 | $31,792.00 | $983.12 | $0.00 |
| 10/8/2018 | 07/01/2018 - 07/31/2018 | $55,587.50 | $50,028.75 | $6,831.08 | $55,587.50 | $6,831.08 | $0.00 |
| 11/16/2018 | 08/01/2018 - 09/30/2018 | $163,382.50 | $147,044.25 | $4,654.42 | $163,267.50 | $4,654.42 | $0.00 |
| **Total** | | **$250,762.00** | **$225,685.80** | **$12,468.62** | **$250,647.00** | **$12,468.62** | **$0.00** |
| **Fifth Interim Fee Period (October 1, 2018 through January 31, 2019)** | | | | | | | |
| 12/21/2018 | 10/01/2018 - 10/31/2018 | $43,871.50 | $39,484.35 | $1,109.10 | $43,871.50 | $1,109.10 | $0.00 |
| 1/22/2019 | 11/01/2018 - 11/30/2018 | $31,164.00 | $28,047.60 | $3,465.35 | $31,164.00 | $3,465.35 | $0.00 |
| 2/26/2019 | 12/01/2018 - 12/31/2018 | $73,432.50 | $66,089.25 | $1,046.62 | $73,432.50 | $1,046.62 | $0.00 |
| 3/15/2019 | 01/01/2019 - 01/31/2019 | $88,809.00 | $79,928.10 | $1,069.00 | $87,704.00 | $1,069.00 | $0.00 |
| **Total** | | **$237,277.00** | **$213,549.30** | **$6,690.07** | **$236,172.00** | **$6,690.07** | **$0.00** |
| **Sixth Interim Fee Period (February 1, 2019 through May 31, 2019)** | | | | | | | |
| 5/15/2019 | 02/01/2019 - 02/28/2019 | $93,967.00 | $84,570.30 | $4,332.02 | $92,930.00 | $4,332.02 | $0.00 |
| 6/4/2019 | 03/01/2019 - 03/31/2019 | $100,412.00 | $90,370.80 | $9,970.50 | $100,412.00 | $9,970.50 | $0.00 |
| 7/3/2019 | 04/01/2019 - 04/30/2019 | $143,421.00 | $129,078.90 | $1,046.31 | $141,534.00 | $1,046.31 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/15/2019 | 05/01/2019 - 05/31/2019 | $160,296.50 | $144,266.85 | $970.49 | $160,296.50 | $970.49 | $0.00 |
| **Total** | | **$498,096.50** | **$448,286.85** | **$16,319.32** | **$495,172.50** | **$16,319.32** | **$0.00** |
| **Seventh Interim Fee Period (June 1, 2019 through September 30, 2019)** | | | | | | | |
| 8/22/2019 | 06/01/2019 - 06/30/2019 | $184,904.50 | $166,414.05 | $4,880.90 | $184,745.00 | $4,880.90 | $0.00 |
| 9/27/2019 | 07/01/2019 - 07/31/2019 | $174,819.50 | $157,337.55 | $4,727.49 | $174,819.50 | $4,727.49 | $0.00 |
| 11/5/2019 | 08/01/2019 - 08/31/2019 | $142,114.00 | $127,902.60 | $892.94 | $142,114.00 | $892.94 | $0.00 |
| 11/14/2019 | 09/01/2019 - 09/30/2019 | $168,111.50 | $151,300.35 | $2,428.26 | $167,571.50 | $2,428.26 | $0.00 |
| **Total** | | **$669,949.50** | **$602,954.55** | **$12,929.59** | **$669,250.00** | **$12,929.59** | **$0.00** |
| **Eighth Interim Fee Period (October 1, 2019 through January 31, 2020)** | | | | | | | |
| 12/20/2019 | 10/01/2019 - 10/31/2019 | $190,159.00 | $171,143.10 | $6,048.82 | $189,873.76 | $6,048.82 | $0.00 |
| 1/10/2020 | 11/01/2019 - 11/30/2019 | $137,688.50 | $123,919.65 | $4,921.19 | $137,481.97 | $4,921.19 | $0.00 |
| 2/28/2020 | 12/01/2019 - 12/31/2019 | $108,319.50 | $97,487.55 | $269.24 | $108,157.02 | $269.24 | $0.00 |
| 3/12/2020 | 01/01/2020 - 01/31/2020 | $123,391.00 | $111,051.90 | $1,760.40 | $123,205.91 | $1,760.40 | $0.00 |
| **Total** | | **$559,558.00** | **$503,602.20** | **$12,999.65** | **$558,718.66** | **$12,999.65** | **$0.00** |
| **Ninth Interim Fee Period (February 1, 2020 through May 31, 2020)** | | | | | | | |
| 4/23/2020 | 02/01/2020 - 02/29/2020 | $135,274.50 | $121,747.05 | $715.53 | $133,245.59 | $715.53 | $0.00 |

| 5/14/2020 | 03/01/2020 - 03/31/2020 | $116,499.00 | $104,849.10 | $4,599.42 | $114,751.68 | $4,599.42 | $0.00 |
|---|---|---|---|---|---|---|---|
| 6/4/2020 | 04/01/2020 - 04/30/2020 | $71,601.50 | $64,441.35 | $773.90 | $70,487.58 | $773.90 | $0.00 |
| 7/9/2020 | 05/01/2020 - 05/31/2020 | $77,966.50 | $70,169.85 | $74.90 | $76,797.12 | $74.90 | $0.00 |
| **Total** | | **$401,341.50** | **$361,207.35** | **$6,163.75** | **$395,281.97** | **$6,163.75** | **$0.00** |
| **Tenth Interim Fee Period (June 1, 2020 through September 30, 2020)** | | | | | | | |
| 8/13/2020 | 06/01/2020 - 06/30/2020 | $74,223.50 | $66,801.15 | $42.20 | $73,110.14 | $42.20 | $0.00 |
| 9/11/2020 | 07/01/2020 - 07/31/2020 | $85,800.00 | $77,220.00 | $1,903.49 | $84,513.00 | $1,903.49 | $0.00 |
| 10/8/2020 | 08/01/2020 - 08/31/2020 | $62,341.50 | $56,107.35 | $402.92 | $61,406.38 | $402.92 | $0.00 |
| 10/29/2020 | 09/01/2020 - 09/30/2020 | $58,767.50 | $52,890.75 | $3,387.56 | $57,885.99 | $3,387.56 | $0.00 |
| **Total** | | **$281,132.50** | **$253,019.25** | **$5,736.17** | **$276,915.51** | **$5,736.17** | **$0.00** |
| **Eleventh Interim Fee Period (October 1, 2020 through January 31, 2021)** | | | | | | | |
| 12/10/2020 | 10/01/2020 - 10/31/2020 | $69,875.00 | $62,887.50 | $1,444.97 | $61,944.19 | $1,444.97 | $6,987.50 |
| 1/8/2021 | 11/01/2020 - 11/30/2020 | $56,839.00 | $51,155.10 | $3,798.94 | $50,387.77 | $3,798.94 | $5,683.90 |
| 2/11/2021 | 12/01/2020 - 12/31/2020 | $42,692.50 | $38,423.25 | $1,640.93 | $37,846.90 | $1,640.93 | $4,269.25 |
| 3/11/2021 | 01/01/2021 - 01/31/2021 | $46,599.00 | $41,939.10 | $335.33 | $41,310.01 | $335.33 | $4,659.90 |
| **Total** | | **$216,005.50** | **$194,404.95** | **$7,220.17** | **$191,488.87** | **$7,220.17** | **$21,600.55** |

| Twelfth Interim Fee Period (February 1, 2021 through May 31, 2021) | | | | | | |
|---|---|---|---|---|---|---|
| 4/12/2021 | 02/01/2021 - 02/28/2021 | $55,837.00 | $50,253.30 | $110.00 | $49,499.50 | $110.00 | $5,583.70 |
| 5/20/2021 | 03/01/2021 - 03/31/2021 | $45,348.00 | $40,813.20 | $3,951.70 | $40,201.00 | $3,951.70 | $4,534.80 |
| 6/24/2021 | 04/01/2021 - 04/30/2021 | $63,872.00 | $57,484.80 | $403.46 | $56,622.53 | $403.46 | $6,387.20 |
| 7/8/2021 | 05/01/2021 - 05/31/2021 | $68,141.00 | $61,326.90 | $181.40 | $0.00 | $0.00 | $6,814.10 |
| **Total** | | **$233,198.00** | **$209,878.20** | **$4,646.56** | **$146,323.03** | **$4,465.16** | **$23,319.80** |

### PRIOR INTERIM FEE APPLICATIONS

| Period | | Requested | | Approved | |
|---|---|---|---|---|---|
| **Date [Docket No.]** | **Interim Fee Period ("IFP") Covered** | **Fees** | **Expenses** | **Fees** | **Expenses** |
| 12/15/2017 [Docket No. 2079] | 07/21/2017 - 08/31/2017 | $169,523.00 | $6,320.62 | $173,440.00 | $6,320.62 |
| 03/19/2018 [Docket No. 2757] | 09/01/2017 - 01/31/2018 | $444,580.00 | $21,160.13 | $444,580.00 | $21,160.13 |
| 07/16/2018 [Docket No. 3562] | 02/01/2018 - 05/31/2018 | $294,120.50 | $12,052.09 | $294,120.50 | $12,052.09 |
| 11/16/2018 [Docket No. 4329] | 06/01/2018 - 09/30/2018 | $250,762.00 | $12,468.62 | $250,647.00 | $12,468.62 |
| 03/18/2019 [Docket No. 5818] | 10/01/2018 - 01/31/2019 | $237,277.00 | $6,690.07 | $236,172.00 | $6,690.07 |

| 07/15/2019 [Docket No. 8011] | 02/01/2019 - 05/31/2019 | $498,096.50 | $16,319.32 | $495,172.50 | $16,319.32 |
|---|---|---|---|---|---|
| 11/15/2019 [Docket No. 9220] | 06/01/2019 - 09/30/2019 | $669,949.50 | $12,929.59 | $669,250.00 | $12,929.59 |
| 03/16/2020 [Docket No. 12397] | 10/01/2019 - 01/31/2020 | $559,558.00 | $12,999.65 | $559,558.00 | $12,999.65 |
| 07/15/2020 [Docket No. 13684] | 02/01/2020 - 05/31/2020 | $401,341.50 | $6,163.75 | $401,301.50 | $6,163.75 |
| 11/16/2020 [Docket No. 15155] | 06/01/2020 - 09/30/2020 | $281,132.50 | $5,736.17 | $281,132.50 | $5,736.17 |
| 3/15/2021 [Docket No. 16064] | 10/01/2020 - 01/31/2021 | $216,005.50 | $7,220.17 | $0.00 | $0.00 |
| **Total fees and expenses approved by interim orders to date:** | | | | **$3,805,374.00** | **$112,840.01** |

Number of professionals with time included in this application: <u>12</u>

Number of professionals billing fewer than 15 hours to the case in this application: 6

If applicable, number of professionals in this application not included in a staffing plan approved by the client: <u>N/A</u>

If applicable, difference between fees budgeted and compensation sought for this period: <u>N/A</u>

Are any timekeeper's hourly rates higher than those charged and approved upon retention: <u>No</u>

**Hearing Date**: October 6, 2021 at 9:30am (AST)
**Objection Deadline**: August 4, 2021 at 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------ x

In re:                                                            :
                                                                  :
THE FINANCIAL OVERSIGHT AND                                       : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                 : Title III
                                                                  :
as representative of                                              : Case No. 17-BK-3283 (LTS)
                                                                  :
THE COMMONWEALTH OF PUERTO RICO, *et al.*,                        : (Jointly Administered)
                                                                  :
Debtors.[1]                                                       :
------------------------------------------------------------------ x

## TWELFTH INTERIM APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM FEBRUARY 1, 2021 THROUGH MAY 31, 2021

## TABLE OF CONTENTS

Preliminary Statement...................................................................................................4

Background ...................................................................................................................11

Compensation and Reimbursement Request ................................................................16

Summary of Services ....................................................................................................19

      General (Matter ID: 396-00002).........................................................................20
      PREPA (Matter ID: 396-00006).........................................................................23
      ERS (Matter ID: 396-00008) .............................................................................25
      Fee Application (Matter ID: 396-00015).............................................................26
      Commonwealth Claims Review (Matter ID: 396-00017) ...................................27
      Avoidance Actions (Matter ID: 396-00018)........................................................27

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Attendance at Hearings ...........................................................................................29

Report on Matters Jointly Pursued by Oversight Board and Committee......................................30

Actual and Necessary Disbursements ............................................................32

Requested Compensation Should be Allowed ...................................................33

Notice ...................................................................................................35

Conclusion ...........................................................................................35

2

## <u>SUPPORTING DECLARATION, EXHIBITS AND SCHEDULE</u>

**Supporting Declaration of Juan J. Casillas-Ayala, Esq.**

**Exhibits**

A.  Customary and Comparable Compensation Disclosures with Fee Applications

B.  Summary of Timekeepers Included in this Application for Fee Period

C.  Budgets and Staffing Plans for Application Period

       C-1.    Budgets

       C-2.    Staffing Plans

D.  Summary of Compensation Requested by Project Category as Compared to Budget

       D-1.    Summary of Compensation Requested by Project Category as Compared to Budget

               Further Breakdown of Compensation Requested by Project Category and by Matter

       D-2.    Summary of Expenses by Category

E.  Breakdown of Compensation and Expense Requested by Debtor

F.  List of Professionals by Matter

G.  Monthly Statements Covered in Application

**Schedule**

Proposed Order

To the Honorable United States District Judge Laura Taylor Swain:

Casillas, Santiago & Torres, LLC ("CST"), Local Counsel to the Official Committee of Unsecured Creditors (the "Committee"), for its twelfth application (the "Application"), pursuant to sections 316 and 317 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("PROMESA")[2], section 503(b) of Title 11, United States Code (the "Bankruptcy Code") as made applicable to these cases by Section 301(a) of PROMESA, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), for the interim allowance of compensation for professional services performed by CST for the period from February 1, 2021 through and including May 31, 2021 (the "Application Period"), and for reimbursement of its actual and necessary expenses incurred during the Application Period, respectfully represents:

### PRELIMINARY STATEMENT

1.     During the Application Period, CST continued to assist and collaborate with Paul Hastings in handling numerous matters that were of critical importance to the interests of the Debtors and their creditors, including with respect to the review, analysis and discussion of the Second and Third Amended Plan of Adjustment and Disclosure Statements filed by the FOMB and consideration of its impact upon the general pool of unsecured creditors.

2.     With respect to the ERS Bondholder litigation and related adversary proceedings, CST's scope of work continued to be much reduced as compared to its work prior to the onset of the COVID-19 pandemic and mainly limited to the review and analysis of Defendants' (Bank of NY Mellon, FOMB and ERS Bondholders) motions and proposed exhibits for hearing on Lien

---

[2] References to PROMESA are references to 48 U.S.C. §§2101 *et. seq.*

Scope and Ultra Vires Motions. During the Application Period, the Committee focused its attention on the litigation that continued to move forward, including the Committee's challenges to $3 billion of ERS bondholder claims on *ultra vires* grounds (the "ERS Claim Objections") and review and analysis of pleadings and exhibits in preparation for Hearing on Lien Scope issues.

3.      Similarly, during the Application Period CST provided assistance to Paul Hastings and represented the Committee with respect to PREPA's Title III case – albeit at a lower rate of activity compared to pre-COVID fee application periods. Following the Court's denial of the Committee's motion to terminate the PREPA RSA Motion, CST assisted Paul Hastings, as requested, with the preparation of the related appeal filed before the First Circuit. In connection with this appeal, CST collaborated with Paul Hastings in the review and discussion, as needed, of pleadings and appellate briefs filed by PREPA, AAFAF and the FOMB. During the Application Period CST also conducted extensive work in relation to the review and analysis of the Third Amended Complaint and Preliminary Injunction filed by UTIER challenging the constitutionality of the O&M Agreement between LUMA and PREPA, the responsive papers filed by PREPA, the Commonwealth and others, including O. Marrero, P. Pierluisi-Urrutia and F. Parés-Alicea and the Opinion & Order entered by the Court denying UTIER's Motion for Preliminary Injunction to enjoin the execution of the O&M Agreement. CST also collaborated with Paul Hastings and Genovese, as requested, with the review and analysis of dispositive motions in the Fuel Oil related case and with UTIER's motions *in limine* and evidentiary objections and related responses and pleadings filed by PREPA and others.

4.      Additionally, CST conducted research and collaborated with Paul Hastings in the drafting and revision of the objection to the LUMA Motion and conducted extensive analysis of the LUMA contract as part of ongoing efforts related to objections and UCC's request for deep

dive analysis of related local law issues. CST also reviewed and prepared a summary of the Final Report issued by the Committee on Economic Development, Planning, Telecommunications, Public-Private Partnerships and Energy of the House of Representatives of Puerto Rico concerning LUMA's contract.

5.      Additionally, given CST's particular insight into the related litigation and past work reviewing a significant portion of Proof of Claims submitted by unsecured creditors, CST collaborated and assisted Paul Hastings, as needed and as required, with extensive out-of-court outreach efforts to unsecured creditors in connection with the FOMB's 2nd and 3rd Amended Plan of Adjustment and Disclosure Statement. In connection with said efforts, CST continued reviewing select POCs to engage in out-of-court efforts with creditors, reviewed and analyzed pleadings, motions and notices regarding referrals / transfers to the ACR and ADR processes, and reviewed and analyzed pleadings, motions and notices related to Debtor's multiple Omnibus Objections to claims by unsecured creditors. In connection with the out-of-court outreach efforts, during the Application Period CST also reviewed objections and adversary complaints filed by unsecured creditors in connection with Plan of Adjustment and Disclosure Statement and reviewed relevant sections of the Plan of Adjustment, Disclosure Statement and accompanying Exhibits. CST also participated in confidential mediation sessions with the FOMB and AAFAF in efforts to maximize recovery by unsecured creditors and reviewed the report and analysis of claims prepared by advisors to the FOMB (A&M) in order to discuss and present challenges / arguments regarding the validity and substantial exposure of Debtor.

6.      During the Application Period, CST continued to assist Paul Hastings and advise the Committee on all issues bearing on the rights of unsecured creditors in these Title III cases and taken proactive steps to protect their rights, including by:

a. reviewing the Oversight Board's reports regarding the designation and status of claims in connection with the alternative dispute resolution process ("ADR") and the administrative claims reconciliation process ("ACR");

b. continuing to analyze the nature and extent of the unsecured claims pool, including conducting exhaustive research on matters related to local law, as well as reviewing omnibus claims objections and related responses, and engaging in out-of-court outreach efforts to multiple unsecured creditors in light of the FOMB's Plan of Adjustment and Disclosure Statement and disparate impact upon unsecured creditors;

c. attending Committee meetings and communicating regularly with Committee members regarding ongoing matters in the Title III cases;

d. monitoring hearings, pleadings filed, and orders entered in the Title III cases and related adversary proceedings;

e. continuing to represent the Committee as counsel in connection with the ongoing Informal Resolution Process while attempting to resolve a myriad of garden variety avoidance actions and tolling agreements while participating in multiple negotiations with vendors and counsel concerning 90-day preference claims, as stated below.

7.      Additionally, during the Application Period, CST continued to represent the Committee with respect to the "garden-variety" avoidance actions initiated against over 340 vendors of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority (HTA) and the Employee Retirement System (ERS) [Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and additional adversary proceedings commenced with respect to PREPA [Adv. Proc. Nos. 19-380 to 19-387] seeking to avoid certain fraudulent transfers and preferential payments made to fuel oil suppliers of PREPA and related parties.

8.      CST is counsel for the Committee and serves as primary attorney point of contact in the Informal Resolution Process established by the Oversight Board to resolve the Garden Variety Avoidance Actions without necessarily having to incur in litigation costs and expenses. In connection with the Informal Resolution Process, CST continued to work closely with DiCicco Gulman and Company LLC ("DGC"), the financial advisory firm to the Special Claims Committee, in the gathering of information and interfacing with vendors and their counsel and

reviewing and analyzing select documents (principally in the Spanish language) and data submitted by vendors and counsel to provide insight and recommendations from a local law perspective, while simultaneously responding to related communications and requests from vendors and their counsel and participating in meetings, videoconferences and telephone conferences with DGC and counsel in connection with the SCC and UCC's pursual of settlement negotiations in connection with 90-day preference claims involving multiple vendors, ultimately reaching settlement with at least 4 vendors during the Application Period. Additionally, during the Application Period CST continued to collaborate and work closely with Brown Rudnick, counsel for the Special Claims Committee, and Paul Hastings, when required, with analysis of local law matters pertaining to the Avoidance Actions, review of omnibus motions related to the Informal Resolution Process, including motions to extend litigation deadlines and pleadings and memoranda of law related to motions for default judgment as to non-responsive vendors, as requested, while continuing to review, analyze and discuss extensive memoranda prepared by Brown Rudnick recommending course of action with respect to multiple fraudulent transfer and 90-day preference claims. Paul Hastings and Zolfo Cooper continued to provide limited assistance in matters related to the analysis of the data submitted by vendors as part of the Informal Resolution Process and related issues concerning local statutes, regulations and case law, in order to recommend whether to pursue or dismiss the multiple garden variety avoidance actions as part of the Informal Resolution Process and to discuss analysis and settlement parameters concerning multiple 90-day preference claims, four (4) of which settled during the Application Period.

9.     CST has continued to perform these services in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. For example, the work performed by CST was carefully assigned to appropriate professionals or

paraprofessionals according to the experience and level of expertise required for each particular task. Moreover, whenever possible, CST sought to minimize the costs of CST's services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments and by delegating, to the extent practicable, questions of Puerto Rico law to local counsel. In addition, a small core group of CST attorneys was utilized for most of the work in these Title III cases to minimize the costs of intra-CST communication and education about the cases.

10.     Notably, just one CST attorney attended the various hearings held during the Application Period, thereby minimizing the time billed on these hearings. Likewise, CST professionals do not travel for Court appearances outside of PR and participate only through the remote video-conference service in San Juan.

11.     In addition, as further detailed below, CST along with Paul Hastings has taken numerous steps to provide services in the most efficient manner possible in connection with the adversary proceedings in which the Committee is acting as co-plaintiff with the Oversight Board or the Special Claims Committee. For example, the co-plaintiffs have sought, and obtained, temporary stays of numerous of these adversary proceedings, while the Committee is represented in the garden-variety avoidance actions by CST, and in certain other litigation by special litigation counsel, Genovese, Joblove & Battista, P.A. ("GJB").

12.     CST respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of these Title III cases. The results obtained to date have benefited not only the Committee but also the Debtors and their creditors. Accordingly, in light of the nature

and complexity of these Title III cases, CST's charges for professional services performed and expenses incurred are reasonable under applicable standards. For all these reasons, CST respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

13.     This Application is consistent with the Interim Compensation Order (as defined below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330 by Attorneys in Larger Chapter 11 Cases* (the "<u>U.S. Trustee Guidelines</u>"). To the extent necessary, CST requests a waiver for cause shown of any requirements not met by this Application.[3]

14.     In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits and Schedules:

- <u>Exhibit A</u> contains disclosures regarding "customary and comparable compensation."

- <u>Exhibit B</u> contains a summary of CST's timekeepers included in this Application.

- <u>Exhibit C-1</u> contains the budgets for CST's services during the application period

- <u>Exhibit C-2</u> contains the staffing plans for CST's services during the application period

- <u>Exhibit D-1</u> contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the application period, and (b) a further breakdown of the compensation requested by project category and matter number.

- <u>Exhibit D-2</u> contains a summary of the expenses requested by project. An itemized schedule of all such expenses is included in CST's monthly statements.

- <u>Exhibit E</u> contains a breakdown of compensation and expenses requested by Debtor.

---

[3] The Committee and CST reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

- <u>Exhibit F</u> contains a list of the professionals providing services during the application period by matter.

- <u>Exhibit G</u> includes the monthly fee statements covered in this application. Attached is copy of the monthly statements for CST's services during the Application Period, which include detailed time records and narrative descriptions of the services rendered by each timekeeper.

- <u>Schedule 1</u> includes the proposed order approving this application.

## BACKGROUND

15.     On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304 (a) of PROMESA (the "<u>Commonwealth Title III Case</u>"). Thereafter, the Oversight Board commenced a title III case for each of COFINA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS Title III Case</u>"), the Puerto Rico Highways and Transportation Authority ("<u>HTA Title III Case</u>"), and the Puerto Rico Electric Power Authority ("<u>PREPA Title III Case</u>") (and together with the Commonwealth Title III Case, the "<u>Title III Cases</u>").[4] By orders dated June 29, 2017 [Docket No. 537] and October 6, 2017 [Docket No. 1417], the Court approved the joint administration of the Title III Cases.

16.     On June 15, 2017, the Office of the United States Trustee for the District of Puerto Rico (the "<u>U.S. Trustee</u>") filed a *Notice Appointing Creditors Committee for Unsecured Creditors* [Docket No. 338]. On July 21, 2017, the Committee selected CST as local counsel to the Committee.

17.     On August 4, 2017, the Committee filed an application to retain and employ CST, effective July 21, 2017 [Docket No. 884] (the "<u>Retention Application</u>"). By order of this Court entered October 6, 2017 [Docket No. 1414] (the "<u>Retention Order</u>"), incorporated herein by this

---

[4] Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III Case.

reference, CST's retention as Local Counsel to the Committee was approved effective as of July 21, 2017.

18.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the <u>Interim Compensation Order</u>").[5]

19.     On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case. CST's retention extends to the representation of the Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.

20.     The Retention Order authorized CST to be compensated on an hourly basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to Sections 316 and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court may direct. The Retention Order further provides that "pursuant to Bankruptcy Code section 503(b)(1), made applicable by PROMESA Section 301(a), the fees and expenses of CST under this Order shall be an administrative expense." In addition, as provided in the Retention Order, the Oversight Board has consented to the Debtors' payment of CST allowed fees and expenses.

21.     On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing A Fee Examiner and Related Relief* (the "<u>Fee Examiner Order</u>") [Docket No. 1416]. The Court appointed Brady Williamson as the Fee Examiner in the Title III Cases.

---

[5] The Interim Compensation Order was amended on November 8, 2017, to reflect certain changes requested by the Fee Examiner.

22.     On December 15, 2017, CST filed its first interim fee application with respect to the period from July 21, 2017 through August 31, 2017 [Docket No. 2079] (the "First Interim Fee Application"). In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the First Interim Fee Application. On March 7, 2018, the court approved the First Interim Fee Application.

23.     On March 19, 2018, CST filed its second interim fee application with respect to the period from September 1, 2017 through January 31, 2018 [Docket No. 2757] (the "Second Interim Fee Application"). In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Second Interim Fee Application. On March 7, 2018, the court approved the Second Interim Fee Application.

24.     On June 6, 2018, the Court enter the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the Second Interim Compensation Order").

25.     On July 16, 2018, CST filed its third interim fee application, covering the period from February 1, 2018 through May 31, 2018 [Docket No. 3562]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Third Interim Fee Application. On March 14, 2019, the Court approved the Third Interim Fee Application.

26.     On November 16, 2018, CST filed its fourth interim fee application, covering the period from June 1, 2018 through September 30, 2018 [Docket No. 4329]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with

respect to the Fourth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[6] On March 14, 2019, the Court approved the Fourth Interim Fee Application, with the agreed-upon adjustments.

27.     On March 18, 2019, CST filed its fifth interim fee application, covering the period from October 1, 2018 through January 31, 2019 [Docket No. 5818]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fifth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[7] On June 26, 2019, the Court approved the Fifth Interim Fee Application, with the agreed-upon adjustments.

28.     On July 15, 2019, CST filed its sixth interim fee application, covering the period from February 1, 2019 through May 31, 2019 [Docket No. 8011]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Sixth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[8] On October 29, 2019, the Court approved the Sixth Interim Fee Application, with the agreed-upon adjustments.

29.     On November 15, 2019, CST filed its seventh interim fee application, covering the period from June 1, 2019 through September 30, 2019 [Docket No. 9220]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with

---

[6] The agreed-upon adjustment consisted of a fee reduction in the amount of $115.00.
[7] The agreed-upon adjustment consisted of a fee reduction in the amount of $1,105.00.
[8] The agreed-upon adjustment consisted of a fee reduction in the amount of $2,924.00.

respect to the Seventh Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[9] On March 6, 2020, the Court approved the Seventh Interim Fee Application, with the agreed-upon adjustments.

30.     On March 16, 2020, CST filed its eighth interim fee application, covering the period from October 1, 2019 through January 31, 2020 [Docket No. 12397]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Eighth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period.

31.     On July 15, 2020, CST filed its ninth interim fee application, covering the period from February 1, 2020 through May 31, 2020 [Docket No. 13684]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Ninth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[10] On October 26, 2020, the Court approved the Ninth Interim Fee Application, with the agreed-upon adjustments.

32.     On November 16, 2020, CST filed its tenth interim fee application, covering the period from June 1, 2020 through September 30, 2020 [Docket No. 15155]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Tenth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period.

---

[9] The agreed-upon adjustment consisted of a fee reduction in the amount of $699.50.
[10] The agreed-upon adjustment consisted of a fee reduction in the amount of $40.00.

33. On March 15, 2021, CST filed its eleventh interim fee application, covering the period from October 1, 2020 through January 31, 2021 [Docket No. 16064]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Eleventh Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period.

34. This is CST's twelfth interim fee application, covering the period from February 1, 2021 through May 31, 2021. All services for which compensation is requested were performed for or on behalf of the Committee.

## COMPENSATION AND REIMBURSEMENT REQUEST

35. By this Application, CST seeks from the Debtors (a) compensation for professional services rendered to the Committee during the Application Period in the aggregate amount of $233,198.00; and (b) expense reimbursements in the aggregate amount of $4,646.56. These amounts are allocated among the Commonwealth Title III Case, the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case, as follows:

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $180,879.00 | $4,493.16 | $185,372.16 |
| PREPA Title III Case | $47,141.00 | $153.40 | $47,294.40 |
| HTA Title III Case | $768.00 | $0.00 | $768.00 |
| ERS Title III Case | $4,410.00 | $0.00 | $4,410.00 |

| Total | $233,198.00 | $4,646.56 | $237,844.56 |
|---|---|---|---|

36.     The Committee has approved the amounts requested by CST for services performed and expenses incurred in each of the monthly statements submitted that were or are hereby being submitted concurrently to, among others, the Oversight Board, AAFAF, the Fee Examiner, and the U.S. Trustee, during the Application Period. All services for which compensation is requested herein were performed for or on behalf of the Committee. Moreover, as detailed on Exhibit D hereto, fees incurred by CST during the Application Period were well below the monthly budgets.

37.     As of today, CST has not been paid any amounts pertaining to its invoices for May 2021, for which it requests payment pursuant to this Fee Application.

38.     Also, to date, CST has received payments totaling $150,788.19 for services rendered during the Application Period excluding May 2021, which amount consists of $146,323.03 (representing 90% of the fees for services invoiced during the period of February 1, 2021 through May 31, 2021) and $4,465.16 (representing 100% of expenses invoiced for the same period). As of the date of this Application, the amount of $84,828.10 remains unpaid.

39.     Other than payments made in accordance with the Interim Compensation Order, CST has received no payments and no promises of payment from any source of services rendered during the Application Period.

40.     By this Application, CST requests payment of all outstanding fees and expenses for services rendered during the Application Period.

41.     There is no agreement or understanding between CST and any other person other than the attorneys, employees, and staff of CST, for the sharing of compensation to be received for services rendered in these cases.

42.     CST maintains computerized records, in the form of monthly statements, of the time spent by all of CST's attorneys and paraprofessionals in connection with its representation of the Committee. The monthly statements are in the same form regularly used by CST to bill its clients for services rendered, and include the date that the services were rendered, a detailed, contemporaneous narrative description of the services provided, the amount of time spent for each service, and the designation of the professional who performed the service.

43.     The fees charged by CST in the Title III Cases are billed in accordance with its existing billing rates and procedures in effect during the Application Period. The rates CST charges for the services rendered by its professionals and paraprofessionals in the Title III Cases are comparable to the rates CST charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters. Moreover, when CST's professionals and paraprofessionals work on non-bankruptcy matters, the firm generally charges their standard rate. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in the Puerto Rico legal market.

44.     CST's rates are set at a level designed to fairly compensate CST for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expense. CST operates in the Puerto Rico legal services market in which rates are driven by multiple factors relating to the individual lawyer, their area of specialization, the firm's expertise, performance and reputation, the nature of the work involved, and other factors. Accordingly, CST set its rates for attorneys and paraprofessionals within the firm by reference to market information and market adjustments by firms considered to be industry peers. Based on this and the reviews of contemporaneous time records and fee applications filed in other cases, CST endeavors to set the

hourly rates for its attorneys and paraprofessionals at levels comparable to those of its principal competitor firms.

45.     CST's professional services during the Application Period required an aggregate expenditure of 923.50 recorded hours by CST's attorneys and paraprofessionals, broken down as follows: Partners (642.40 hours), Members (4.80 hours), Counsels (11.50 hours), Junior Partners (109.10 hours), Senior Associates (110.20 hours), Associates (38.90 hours), and Paraprofessionals (6.60 hours). During the Application Period, CST's billing rates for attorneys rendering services in this matter ranged from $170.00 to $270.00 per hour.

46.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period but were not processed before the preparation of this Application, or CST has for any other reason not sought compensation or reimbursement with respect to such services or expenses, CST reserves the right to request additional compensation for such services, and reimbursement of such expenses, in a supplemental or future application.

## SUMMARY OF SERVICES

47.     During the Application Period, CST assisted and advised the Committee on a regular basis regarding legal matters relating to the restructuring of the Debtors, including related adversary proceedings, and all other matters arising in the performance of the Committee's duties. In addition, CST has prepared various motions, applications, proposed orders, and other pleadings submitted to the Court for consideration, and has performed the necessary professional services that are described below and in the monthly statements attached hereto as <u>Exhibit F</u>.[11] For ease of reference and transparency purposes, CST created several matter numbers for its

---

[11] The description of services in this Application is limited to those matters in which CST provided 5 or more hours of service during the Application Period.

representation of the Committee. The matter numbers are divided by Debtor and/or large tasks the Committee undertook, as follows:

| Matter ID | Matter Name |
|---|---|
| 396-00002 | General |
| 396-00006 | PREPA |
| 396-00007 | HTA |
| 396-00008 | ERS |
| 396-00015 | Fee Application |
| 396-00017 | Commonwealth Claims Review |
| 396-00018 | Avoidance Actions |

**I.      General (Matter ID: 396-00002)**

(a)      Case Administration (Task Code: B110)

Hours:      17.60          Fees:   $4,643.50

48.      During the Application Period, CST, along with Paul Hastings, continued to advise the Committee on general case administration. In order to efficiently track deadlines, organize documents, and manage work streams, CST maintained a global task list and case calendar, including a tracking chart for all adversary proceedings and non-Title III litigation. To minimize duplication of services, CST developed procedures for allocating responsibilities among various team members. CST continued implementing interim and long-term strategies to maximize recoveries for general unsecured creditors and held internal team conference calls and occasional meetings to discuss the status of the Title III Cases and to manage work streams.

49.      Furthermore, along with Paul Hastings, CST executed a variety of tasks related to case administration including, among other things, handling of filing logistics, research and analysis of extrajudicial matters that impact the Title III proceedings, creation of information packages for meetings and/or public dissemination, and provide status reports of current events and recent developments that affect the legal issues litigated and the Committee's interests.

(b)     Pleading Reviews (Task Code: B113)

      Hours:    126.40      Fees:  $31,405.00

50.     During the Application Period, CST reviewed various pleadings to be adequately prepared to provide services to the Committee. This in compliance with the applicable Rules of Professional Conduct. In doing so, CST took into account various crucial issues like the bond-trading practices litigation; dispositive motions; FRBP 2004 discovery motions; motions to compel discovery; the objection litigation related to significant Proofs of Claim; the various stay relief motions and their contested issues; motions for injunctions; motions for protective orders; class reclassification motions and their contentions; expense claim motions; and the ongoing developments as to the Board's Amended Plan of Adjustment and the Disclosure Statements related thereto.

51.     CST also kept abreast on the issues on appeal before the First Circuit Court of Appeals and the U.S. Supreme Court.

(c)     Meeting of and Communications with Creditors (Task Code: B150)

      Hours:    22.70      Fees:  $6,129.00

52.     During the Application Period, CST kept the Committee apprised of relevant developments in the Title III Cases, mediation process, out-of-court events that affect the Title III proceedings, plan voting procedures, and coordination of outreach for the Committee's constituents. Mainly, CST participated in various telephone conferences and communications, and assisted in the preparation of various documents and communiques for the Committee for the same purposes, particularly those that involve both English and Spanish languages.

(d)     Court Hearings (Task Code: B155)

      Hours:    20.50      Fees:  $5,412.50

53.     During the Application Period, CST attended as local counsel to all court and public hearings, and mediation sessions that Paul Hastings attended. To minimize costs, only one CST attorney appeared by telephone at the events.

(e)     Other Contested Matters (Task Code: B190)

        Hours:     48.60          Fees:   $12,244.00

54.     During the Application Period, CST aided Paul Hastings conducting research on various first-impression issues of Puerto Rico Law. Furthermore, CST assisted Paul Hastings in the analysis of a wide variety of matters in these Title III proceedings, such as: bond restructuring, recent local jurisprudence, and proposed legislation and outreach. CST's extensive research and analysis thereof was instrumental in developing the Committee's strategy, especially for the preparation of the Committee's response to contesting pleadings, such as the upcoming Plan voting procedures.

(f)     General Litigation (Task Code: B191)

        Hours:     150.40         Fees:   $38,679.50

55.     During the Application Period, CST aided Paul Hastings in various tasks, such as research and analysis of legal issues in connection with statutory covenants, pending litigation, eminent domains, and bond restructuring. All this in association with the revenue bond litigation, the claims reconciliation proceedings, the Committee's Renewed FRBP 3013 Motion for Reclassification and its Cross-Motion for Relief from Stay in response to the Board's own, and the proposed amended plan of adjustment with disclosure statement proceedings. CST provides unique specialized insight into the local issues that have an effect on these Title III litigations.

(g)     Claims Administration and Objections (Task Code: B310)

        Hours:     7.20           Fees:   $1,704.00

56.     During the Application Period, CST kept abreast of the Debtors' objections to Proofs of Claims, and the subsequent replies of the claimants. CST also paid close attention to the transfer of some of these claims, and the status of others going through Claims Reconciliation or Dispute Resolution. The valuable information gathered from this exercise was used to fight back against the Oversight Board's proposed plan of adjustment and dismal treatment of unsecured creditors. As part of CST's efforts assisting in the development of the Committee's strategy for this matter, CST performed tasks such as legal research and analysis utilized for the Committee's Renewed FRBP 3013 Motion for Reclassification of Claims and its Cross-Motion for Relief from Stay in response to the Board's own.

(h)     Plan and Disclosure Statement (Task Code: B320)

        Hours:     49.40        Fees:   $13,097.00

57.     During the Application Period, CST aided Paul Hastings in various tasks in connection with the Board's proposed amended plan of adjustment, and the disclosure statement procedures required prior to plan confirmation. Particularly, CST assisted with the analysis of the proposed fiscal plan, balance sheets, and of certain claims subject to ACR and ADR; in addition to appearing at mediation sessions and partaking in brainstorming meetings dedicated to delineating the Committee's strategy in fighting the treatment of the Committee's constituents.

**II.     PREPA (Matter ID 396-00006)**

58.     During the Application Period CST provided assistance to Paul Hastings and represented the Committee with respect to PREPA's Title III case – albeit at a lower rate of activity compared to pre-COVID fee application periods. Among others, CST assisted and collaborated with Paul Hastings in connection with the preparation of the related appeal filed before the First Circuit. In connection with this appeal, CST collaborated with Paul Hastings in the review and

discussion, as needed, of pleadings and appellate briefs filed by PREPA, AAFAF and the FOMB. During the Application Period CST also conducted extensive work in relation to the review and analysis of the Third Amended Complaint and Preliminary Injunction filed by UTIER challenging the constitutionality of the O&M Agreement between LUMA and PREPA, the responsive papers filed by PREPA, the Commonwealth and others, including O. Marrero, P. Pierluisi-Urrutia and F. Parés-Alicea and the Opinion & Order entered by the Court denying UTIER's Motion for Preliminary Injunction to enjoin the execution of the O&M Agreement. CST also collaborated with Paul Hastings and Genovese, as requested, with the review and analysis of dispositive motions in the Fuel Oil related case and with UTIER's motions *in limine* and evidentiary objections and related responses and pleadings filed by PREPA and others.

59.     Additionally, CST conducted research and collaborated with Paul Hastings in the drafting and revision of the objection to the LUMA Motion and conducted extensive analysis of the LUMA contract as part of ongoing efforts related to objections and UCC's request for deep dive analysis of related local law issues. CST also reviewed and prepared a summary of the Final Report issued by the Committee on Economic Development, Planning, Telecommunications, Public-Private Partnerships and Energy of the House of Representatives of Puerto Rico concerning LUMA's contract.

(a)     Pleadings Review (Task Code: B113)

Hours:     106.60        Fees:    $28,285.00

60.     During the Application Period, CST reviewed and analyzed various pleadings to be adequately prepared to provide a comprehensive legal analysis of the various matters litigated and to establish related strategy with Paul Hastings attorneys. This in compliance with the applicable Rules of Professional Conduct. In doing so, CST considered crucial and highly contested issues

24

like the Fuel Line Lenders' litigations, PREPA's continuing attempts at assuming and rejecting certain power purchase agreements, and the noteworthy LUMA Energy Administrative Expense Motion and its objection litigation.

61.  CST also kept abreast of various appellate procedures stemming from PREPA's Title III case. Specially, CST engaged in the Committee's appeal of the denial of its Motion to Terminate PREPA's FRBP 9019 Motion.

(b)  Other Contested Matters (Task Code: B190)

Hours:  43.50  Fees:  $8,408.00

62.  During the Application Period, CST aided Paul Hastings researching and analyzing various legal issues stemming from the PREPA-LUMA Operational and Maintenance agreement. CST's analysis was instrumental in developing the Committee's strategy and counterarguments in its position as to the highly contested LUMA motion.

(c)  General Litigation (Task Code: B191)

Hours:  38.70  Fees:  $9,781.00

63.  CST continued assisting Paul Hastings counsellors with analysis of PREPA's cash flow and of the PREPA-LUMA O&M contract itself under the scope of local law, as part of the development of the Committee's stance on the LUMA motion.

**III.  ERS (Matter ID: 396-00008)**

64.  During the Application Period, CST continued assisting Paul Hastings in general litigation matters related to the ERS bond challenges by analyzing relevant legal issues arising in the ERS-related litigation that continued to move forward, including the Committee's challenges to $3 billion of ERS bondholder claims on ultra vires grounds (the "ERS Claim Objections") and

review and analysis of pleadings and exhibits submitted by Defendants (Bank of NY Mellon, FOMB and ERS Bondholders) in preparation for hearing on Lien Scope and Ultra Vires motions.

(a)    <u>Pleadings Review (Task Code: B113)</u>

      Hours:    13.60        Fees:    $3,308.00

65.    During the Application Period, CST reviewed various pleadings to be adequately prepared to provide services to the Committee and assist Paul Hastings in its representation of the Committee. In particular, CST reviewed and analyzed numerous pleadings and Court rulings to provide the Committee a comprehensive legal analysis of the Lien Scope and Ultra Vires adversary proceedings and prepare for argument. This in compliance with the applicable Rules of Professional Conduct.

**IV.    Fee Application (Matter ID: 396-00015)**

(a)    <u>Fee / Employment Applications (Task Code: B160)</u>

      Hours:    16.80        Fees:    $4,466.00

66.    Pursuant to the Fee Examiner's request, CST has established a matter to keep track of the time incurred per the Fee Examiner's requests. The time spent in the Application Period pertains to the time spent in compliance with the Fee Examiner's requests including communications with the examiner, and the time it took to prepare the eleventh Interim Application.

(b)    <u>Budgeting (Task Code: B161)</u>

      Hours:    8.80        Fees:    $2,337.00

67.    During the Application Period, CST prepared budgets and staffing plans pursuant to Fee Examiner's request and conversed with the Committee and the Examiner regarding this matter.

V.   **Commonwealth Claims Review (Matter ID: 396-00017)**

(a)   General Litigation (Task Code: B191)

     Hours:   25.00   Fees:   $6,449.00

68.   During the Application Period, CST continued working closely with Paul Hastings in the review of claims filed against the Commonwealth and other Debtors. For the most part, this stage of the review process consisted of second and/or third-level assessment and claim valuation analysis to gain a better understanding of the claims against the Debtors, the size and nature of the claims pool, and assess the Debtors' exposure. The exercise served as a valuable tool during the mediation process. This information, in turn, was instrumental for the Committee in advocating for improvements to the treatment of its constituents in the Board's proposed amended plan.

(b)   Claims Administration and Objections (Task Code: B310)

     Hours:   15.60   Fees:   $4,072.00

69.   The new scope of review and analysis CST provided during the Application Period regarding potential liability and exposure, proved to be paramount in the Committee's strategy during the mediation process, while providing support with local outreach and groundwork.

VI.   **Avoidance Actions (Matter ID: 396-00018)**

70.   During the Application Period CST, who represents the Committee with respect to the garden variety avoidance actions and in the Informal Resolution Process, continued to be heavily involved in the review and resolution of garden-variety avoidance actions against hundreds of vendors of the Debtors, *i.e.* Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and Adv. Proc. Nos. 19-380 to 19-383. As local counsel to the Committee, CST continued to interface with the defendants in these actions and provided counsel with respect to the Information Exchange Process as part of the Informal Resolution Protocol ("IR Protocol") developed closely

with the law firm of Brown Rudnick ("BR"), counsel for the Special Claims Committee of the Oversight Board, to review and resolve the garden-variety avoidance actions.

71.     In connection with the Informal Resolution Process, CST continued to work closely with DiCicco Gulman and Company LLC ("DGC"), the financial advisory firm to the Special Claims Committee, in the gathering of information and interfacing with vendors and their counsel and reviewing and analyzing select documents (principally in the Spanish language) and data submitted by vendors and counsel to provide insight and recommendations from a local law perspective, while simultaneously responding to related communications and requests from vendors and their counsel and participating in meetings, videoconferences and telephone conferences with DGC and counsel in connection with the SCC and UCC's pursual of settlement negotiations in connection with 90-day preference claims involving multiple vendors, ultimately reaching settlement with at least 4 vendors during the Application Period. Additionally, during the Application Period CST continued to collaborate and work closely with Brown Rudnick, counsel for the Special Claims Committee, and Paul Hastings, when required, with analysis of local law matters pertaining to the Avoidance Actions, review of omnibus motions related to the Informal Resolution Process, including motions to extend litigation deadlines and pleadings and memoranda of law related to motions for default judgment as to non-responsive vendors, as requested, while continuing to review, analyze and discuss extensive memoranda prepared by Brown Rudnick recommending course of action with respect to multiple fraudulent transfer and 90-day preference claims. Paul Hastings and Zolfo Cooper continued to provide limited assistance in matters related to the analysis of the data submitted by vendors as part of the Informal Resolution Process and related issues concerning local statutes, regulations and case law, in order to recommend whether to pursue or dismiss the multiple garden variety avoidance actions as part of the Informal

Resolution Process and to discuss analysis and settlement parameters concerning multiple 90-day preference claims, four (4) of which settled during the Application Period.

(a.)    Avoidance Action Analysis (Task Code: B180)

      Hours:     183.40         Fees:   $45,349.50

72.    During the Application Period, most of the avoidance actions were being resolved or advanced to third-level analysis of the data and defenses asserted by the defendant vendors. Every case presents a set of circumstances that require individualized treatment to determine whether Plaintiffs will move for voluntary dismissal of the claims, for default, proceed with litigation or mediation, or negotiate a settlement. Notwithstanding, CST continued providing first-level review of new and supplementing data produced by vendors when requested for purpose of advancement of the litigation. Particularly, CST reviewed Spanish-language contracts, bidding documents, purchase orders, receipts, among others, to assist DGC in their assessment of the data. After DGC collected and analyzed the data provided by vendors, CST and co-counsel spent considerable amount of time assessing DGC's recommendations. Some of these cases presented circumstances that at times required more research as to the legal aspects involved.

73.    Considering the success of the IRP procedures, further extension to the litigation deadlines was needed for certain actions. The extension was requested and granted during the Application Period.

*****

74.    The foregoing professional services were necessary and appropriate to the administration of the Title III Cases and were incurred upon in the best interests of the Committee, the Debtors, the creditors, and other parties in interest.

**ATTENDANCE AT HEARINGS**

75.     In accordance with the presumptions set forth in the Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications [Docket No. 3932] (the "Presumptive Standards Order"), CST provides the following summary regarding the attendance of CST professionals at Court hearings, as local counsel to the Official Committee of Unsecured Creditors:

- February 1, 2021: Claim Objection hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- March 10, 2021: Omnibus Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- March 17, 2021: Hearing on discovery issues. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- April 28, 2021: Omnibus Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- April 29, 2021: Omnibus Hearing on the preliminary injunction motion. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- May 18, 2021: Hearing for LUMA injunction litigation filed by UTIER. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

### REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND COMMITTEE

76.     As requested by the Fee Examiner, we set forth below the status of the various proceedings and motions jointly commenced by the Oversight Board or its Special Claims Committee, on the one hand, and the Committee, on the other hand, pursuant to stipulations for the joint prosecution of causes of action or claims objections.

- Omnibus Objection of Oversight Board and Committee to Certain GO Bond Claims [Docket No. 4784] (the "Omnibus Claims Objection"): On March 10, 2020, the Court stayed the Omnibus GO Claim Objection pending a decision on confirmation of the Commonwealth plan of adjustment.

- Adversary Proceeding against Underwriters, etc.: CST, the Committee's local counsel, represents the Committee with respect to the adversary proceeding against various underwriters and other parties involved in the issuance of Commonwealth bonds [Adv. Proc. No. 19-280]. On March 10, 2020, the Court stayed the underwriter litigation pending a decision on confirmation on the Commonwealth plan of adjustment.

- Garden-Variety Avoidance Actions: CST, the Committee's local counsel, represents the Official Committee of Unsecured Creditors (UCC) with respect to various "garden-variety" avoidance actions initiated against vendors of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority (HTA) and the Employee Retirement System (ERS) [Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and additional adversary proceedings commenced with respect to PREPA [Adv. Proc. Nos. 19-380 to 19-387].

  CST is one of two (2) Puerto Rico law firms (the other being Estrella LLC) serving as primary attorney point of contact in the Informal Resolution Process established by the Oversight Board to resolve the Garden Variety Avoidance Actions without necessarily having to incur in litigation costs and expenses.

  CST, representing the UCC, continues to assist DGC, the financial advisory firm to the Special Claims Committee, in the gathering of information and interfacing with over 15 vendors and their counsel and analyzing select documents and data submitted by vendors and counsel, while simultaneously responding to related communications and requests from vendors and their counsel, and assisting Brown Rudnick with analysis of local law matters pertaining to the Avoidance Actions and ongoing discussions pertaining to over thirty (30) dismissal recommendations of certain Avoidance Actions and active settlement negotiations involving approximately twenty five (25) 90-day preference claims, as requested, while discussing select legal issues and dismissal / no-action recommendations with Paul Hastings and Zolfo Cooper.

- Other Stayed Co-Plaintiff Adversary Proceedings: Pursuant to the Final Stay Order, the following co-plaintiff adversary proceedings are stayed pending the Court's decision regarding confirmation of the Plan:

  o Eight adversary proceedings seeking to recover fraudulent transfers made on account of GO bonds that were not validly issued [Adv. Proc. No. 19-281, Adv. Proc. No. 19-282, Adv. Proc. No. 19-283, Adv. Proc. No. 19-284, Adv. Proc. No. 19-285, Adv. Proc. No. 19-286, Adv. Proc. No. 19-287, and Adv. Proc. No. 19-288]; and

  o Seven adversary proceedings challenging liens asserted by certain holders of GO bonds [Adv. Proc. No. 19-291, Adv. Proc. No. 19-292, Adv. Proc. No. 19-293, Adv. Proc. No. 19-294, Adv. Proc. No. 19-295, Adv. Proc. No. 19-296, and Adv. Proc. No. 19-297].

- o   Four adversary proceedings challenging liens asserted by certain holders of HTA bonds [Adv. Proc. No. 19-362, Adv. Proc. No. 19-363, Adv. Proc. No. 19-364, and Adv. Proc. No. 19-365].

- Co-Plaintiff Adversary Proceedings related to ERS:
  Pursuant to the Court's stay order dated April 12, 2021 [Docket No. 16385] (the "ERS Stay Order"), the following co-plaintiff adversary proceedings are stayed pending the Court's decision regarding confirmation of the Plan:

  - o   Six adversary proceeding related to ERS bond issues [Adv. Proc. No. 19-356, Adv. Proc. No. 19-357, Adv. Proc. No. 19-359, Adv. Proc. No. 19-361, Adv. Proc. No. 19-366, and Adv. Proc. No. 19-367].

- Adversary Proceedings Challenging Liens Aserted by Holders of GO Bonds ("GO Lien Challenges: On March 10, 2020, the Court stayed the Omnibus GO Lien Challenges pending a decision on confirmation of the Commonwealth plan of adjustment.

77.   The sub-budgets and staffing plans with respect to the jointly pursued matters described above are included as part of Exhibit C-1 and Exhibit C-2, respectively.

## ACTUAL AND NECESSARY DISBURSEMENTS

78.   As described in Exhibit D hereto, CST disbursed $4,646.56 as expenses incurred in providing professional services during the Application Period.

79.   Because CST believes that online legal research (e.g., LEXIS and WESTLAW) is far more cost-efficient than manual research using hard-bound volumes, CST encourages computerized legal research even though it is not a profit center for CST.

80.   The time constraints imposed by the circumstances of the matters handled by CST during the Application Period required its attorneys and other employees, at times, to devote substantial time during the evenings and on weekends to perform legal services on behalf of the Committee. These extraordinary services were essential to meet deadlines, timely respond to daily inquiries, and satisfy the Committee's needs and demands. CST's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to

charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the provision of legal services.

81.    CST believes the rates for charges incurred are the market rates that most law firms charge clients for such services. In addition, CST believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges as well as the Puerto Rico Code of Ethics.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

82.    Section 316 provides for the compensation of professionals. Specifically, section 316 provides that a Court may award a professional employed by a committee under Section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered… and reimbursement for actual, necessary expenses." PROMESA §316(a). Section 316 of PROMESA also sets forth the criteria for the award of such compensation and reimbursement:

> (a) In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:
>
> (i) the time spent on such services;
>
> (ii) the rates charged for such services;
>
> (iii) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (iv) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (v) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and

(vi) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code.

PROMESA §316(c). Further, section 317 of PROMESA provides that "a committee… may apply to the court not more than once every 120 days… for such compensation for services rendered…"

83.     In the instant case, CST respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, believed to be necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of the Title III Cases. The services rendered to the Committee were performed in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. The results obtained to date have benefited not only the Committee but also the Debtors and their stakeholders. Accordingly, the compensation requested herein is reasonable considering the nature, extent, and value of such services to the Committee, the Debtors, and all parties in interest.

84.     The work conducted was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Whenever possible, CST sought to minimize the costs of CST's services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments. A small group of the same CST's attorneys was utilized for the vast majority of the work in this case, to minimize the costs of intra- CST's communication and education about the Title III Cases. As demonstrated by this Application, CST spent its time economically and

34

without unnecessary duplication. Accordingly, approval of the compensation sought herein is warranted.

## NOTICE

85. In accordance with the Interim Compensation Order, CST will provide notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián, C.S.P.; (v) the Puerto Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson; and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC. In addition, the notice of hearing with respect to this Application will be served on all parties that have filed a notice of appearance in the Title III Cases.

## CONCLUSION

WHEREFORE, CST respectfully requests entry of an order, substantially in the form attached hereto as Schedule 1, (i) allowing interim compensation for professional services rendered during the Application Period in the amount of $233,198.00 and expense reimbursements in the amount of $4,646.56; (ii) authorizing and directing the Debtors' payment of the amounts allowed and; (iii) allowing such compensation and payment for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to CST's right to seek such further compensation and/or payment for the full value of services performed and expenses incurred, and (iv) granting CST such other and further relief as is just.

Date: July 15, 2021
          */s/Juan J. Casillas-Ayala*
          CASILLAS, SANTIAGO & TORRES LLC

Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Luis F. Llach Zúñiga, Esq. (USDC – PR 223112)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
lllach@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*