Hearing Date:  August 18, 2021

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
-----------------------------------------------------------x
```
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

```
-----------------------------------------------------------x
```

PROMESA

Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**Re:  ECF No. 17221**

# OBJECTION OF FINANCIAL OVERSIGHT
# AND MANAGEMENT BOARD FOR PUERTO RICO TO MOTION FOR
# <u>AN ORDER APPOINTING A COMMITTEE FOR MODEST-SIZED BONDHOLDERS</u>

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 2

OBJECTION............................................................................................................ 10

I.      The "Retail Investor" Classes are Adequately Represented Without a
Statutory Committee ................................................................................. 10

        A.     The GO Bondholders and PBA Bondholders Have Substantially
Participated in the Title III Cases........................................................ 11

        B.     The Motion's Specific Concerns with Respect to the Retail
Investors Classes Do Not Raise Issues of Adequate Representation
and/or Have Already Been Addressed .................................................. 14

        C.     Granting the Motion will Result in Additional Cost and Delay at a
Critical Point in the Title III Cases ...................................................... 17

II.     Even if the Court Determines the Retail Investor Classes are not
Adequately Represented, the Court Should Deny the Motion in its
Discretion ................................................................................................. 18

CERTIFICATE OF SERVICE ................................................................................. 22

i

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*In re Beker Indus. Corp.*,
    55 B.R. 945 (Bankr. S.D.N.Y. 1985) ......................................................................13

*In re Dana Corp.*,
    344 B.R. 35 (Bankr. S.D.N.Y. 2006) ..............................................................11, 17

*In re Dewey & LeBoeuf LLP*,
    No. 12-12321 MG, 2012 WL 5985325 (Bankr. S.D.N.Y. Nov. 29, 2012) ..............9

*In re Diversified Cap. Corp*,
    89 B.R. 826 (Bankr. C.D. Cal. 1988) ............................................................13, 14

*In re Dow Corning Corp.*,
    194 B.R. 121 (Bankr. E.D. Mich. 1996), *rev'd on other grounds,* 212 B.R. 258
    (E.D. Mich. 1997) ..............................................................................................19

*In re Eastman Kodak Co.*,
    No. 12-10202 (ALG), 2013 WL 4413300 (Bankr. S.D.N.Y. Aug. 15, 2013) ........11

*In re Enron Corp.*,
    279 B.R. 671 (Bankr. S.D.N.Y. 2002) ................................................................19

*In re Garden Ridge Corp.*,
    No. 04-10324 (DDS), 2005 WL 523129 (Bankr. D. Del. Mar. 2, 2005) ...............20

*In re Grant Broad. of Phila., Inc.*,
    71 B.R. 655 (Bankr. E.D. Pa. 1987) ..............................................................17, 19

*In re Hills Stores*,
    137 B.R. 4 (Bankr. S.D.N.Y. 1992) ................................................................10, 12

*In re McLean Indus., Inc.*,
    70 B.R. 852 (Bankr. S.D.N.Y. 1987) ..................................................................13

*In re Pub. Serv. Co. of New Hampshire*,
    89 B.R. 1014 (Bankr. D.N.H. 1988) ..................................................................19

*In re Residential Cap., LLC*,
    480 B.R. 550 (Bankr. S.D.N.Y. 2012) ................................................................17

*In re Sharon Steel Corp.*,
    100 B.R. 767 (Bankr. W.D. Pa. 1989) ............................................................16, 20

*In re SunEdison, Inc.*,
  556 B.R. 94 (Bankr. S.D.N.Y. 2016) ...................................................................10

*In re Wang Lab'ys, Inc.*,
  149 B.R. 1 (Bankr. D. Mass. 1992) ........................................................10, 18, 19

*In re Winn-Dixie Stores, Inc.*,
  326 B.R. 853 (Bankr. M.D. Fla. 2005) ........................................................18, 20

*Mirant Ams. Energy Mtkg., L.P. v. Official Comm. of Unsecured Creditors of
  Enron Corp.*,
  No. 02 Civ. 6274 (GBD), 2003 U.S. Dist. LEXIS 18149 (S.D.N.Y. Oct. 10,
  2003) ......................................................................................................17, 18, 20

STATUTES

11 U.S.C. § 1102 ..........................................................................................................7, 8

11 U.S.C. § 1102(a)(2) ...........................................................................................2, 5, 10

11 U.S.C. § 1102(a)(4) .............................................................................................5, 10

11 U.S.C. § 1102(b)(1) .................................................................................................13

11 U.S.C. § 1102(b)(2) .................................................................................................13

11 U.S.C. § 1125 ...........................................................................................................15

48 U.S.C. §§ 2101–2241 ................................................................................................1

**To the Honorable United States District Court Judge Laura Taylor Swain:**

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Public Buildings Authority ("PBA" and, together with the Commonwealth, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtor's sole Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection (the "Objection") to the *Motion of Individual Bondholder for an Order Directing the Appointment of a Committee to Represent Retail Investors in the Eight Retail Investor Classes in connection with the Proposed Plan and in Proceedings Related to Confirmation* [ECF No. 17221] (the "Motion") filed by Peter C. Hein ("Hein").  In support of this Objection, the Debtors respectfully represent as follows:

## **PRELIMINARY STATEMENT[3]**

1.      In the Motion, Hein seeks to revisit this Court's prior ruling denying his motion for appointment of an official committee of small GO Bondholders, and requests the Court appoint an official committee to represent the interests of individual GO Bondholders and PBA Bondholders holding claims equal to or less than $1,000,000 of such bonds.  Hein does not cite any authority that would support this Court reconsidering its prior denial; instead, the Motion is based on certain provisions of the Plan relating to retail bondholders and the proposed Plan confirmation process, each of which Hein finds objectionable.

2.      As this Court previously observed, "tak[en] to its logical conclusion, Mr. Hein's rationale would require the Court to appoint committees to represent the interests of subgroups of

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

[3] Capitalized terms not defined herein shall have the meaning given to them below.

holders of practically every type of debt issued by any of the Title III debtors, and that outcome is just unworkable." Hr'g Tr. at 196:14–18 (Apr. 24, 2019). Consistent with the Court's prior rulings, adequate representation of the interests of holders of GO Bonds and PBA Bonds is provided through the zealous representation of such holders by ad hoc groups formed over the past several years. And, there is no different treatment of retail holders of bonds that would lead to such holders needing their own committee to "assure adequate representation of creditors." 11 U.S.C. § 1102(a)(2). Moreover, most of the issues raised by Hein in the Motion have been considered by the Court and addressed in its rulings on the various objections to the adequacy of information in the Disclosure Statement and related procedures with respect to Plan confirmation.

3.      For the reasons set forth below, the Motion should be denied.

## BACKGROUND

4.      On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth by filing a voluntary petition for relief pursuant to PROMESA section 304(a) (the "Commonwealth Title III Case"). Thereafter, the Oversight Board commenced Title III cases for each of the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Employees Retirement System for the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, COFINA, ERS, HTA, and PREPA the "Title III Debtors").

5.      On June 15, 2017, the Office of the United States Trustee (the "U.S. Trustee") appointed the UCC in the Title III cases of the Title III Debtors (other than COFINA). *See Appointment of Official Committee of Unsecured Creditors in the Commonwealth of Puerto Rico* [ECF No. 338]. On the same day, the U.S. Trustee appointed the Official Committee of Retirees

in the Commonwealth's Title III Case.  *See Appointment of Official Committee of Retirees in the Commonwealth of Puerto Rico* [ECF No. 340].

6.      In July of 2015, certain members of the Ad Hoc Group of General Obligation Bondholders (the "Ad Hoc GO Group") engaged Paul, Weiss, Rifkind, Wharton & Garrison LLP and Robbins, Russel, Englert, Orseck, Untereiner & Sauber LLP to represent their interests as holders of general obligation bonds ("GO Bonds" and, such holders thereof, the "GO Bondholders").  As of July 16, 2021, the Ad Hoc GO Group represents GO Bondholders holding approximately $137 million of GO Bonds.  *See Thirteenth Supplemental Verified Statement of the Ad Hoc Group of General Obligation Bondholders Pursuant to Bankruptcy Rule 2019* [ECF No. 17397].

7.      In or around August of 2015, certain members of the QTCB Noteholder Group (the "QTCB Noteholder Group") engaged Bracewell LLP[4] to represent their interests as holder of bonds issued by PBA (the "PBA Bonds" and, such holders thereof, the "PBA Bondholders") and guaranteed by the Commonwealth.  [ECF No. 1053].  In May 2017, the QTCB Noteholder Group retained Correa-Acevedo & Abesada Law Offices, P.S.C. as its Puerto Rico counsel.  *Id.*  As of July 10, 2021, the QTCB Noteholder Group represents PBA Bondholders holding approximately $800 million of PBA Bonds.  *See Tenth Supplemental Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019* [ECF No. 17296].

8.      On July 21, 2017, the Ad Hoc GO Group filed a motion seeking an order (i) directing the U.S. Trustee to change the membership of the UCC to include holders of general obligation bonds or (ii) in the alternative, appointing an additional committee of GO Bondholders

---

[4] On or before February 19, 2020, Bracewell LLP was replaced as counsel by Morgan, Lewis & Bockius LLP.  [ECF No. 11293].

[ECF No. 694] (the "Ad Hoc GO Group Committee Motion").   On August 11, 2017, the Court entered a *Memorandum Opinion and Order Denying the Motion of the Ad Hoc Group of General Obligation Bondholders to Reconstitute the Official Committee of Unsecured Creditors* [ECF No. 1010] (the "Memorandum Opinion"), denying the Ad Hoc GO Group Committee Motion in its entirety.

9.      On July 21, 2017, two additional motions requesting the appointment of official committees were filed by the University of Puerto Rico Retirement System Trust [ECF No. 692] and the Ad Hoc Puerto Rico Municipalities Committee [ECF No. 709].   On August 11, 2017, the Court denied the two motions [ECF Nos. 1013 and 1014].

10.      On May 14, 2018, the Retiree Committee filed a motion requesting the appointment of a committee comprised solely of PREPA retirees [ECF No. 3056].   On June 6, 2018, the Court denied the motion [ECF No. 3270].

11.      In August of 2018, the Ad Hoc Group of Constitutional Debtholders (the "Constitutional Debtholders Group") formed and retained Morrison & Foerster LLP and G. Carlo-Altieri Law Offices LLC to represent their interests as holders of GO Bondholders.   As of April 15, 2021, the Constitutional Debtholders Group represents GO Bondholders holding approximately $1.99 billion of GO Bonds.   *See Eleventh Supplemental Verified Statement of the Ad Hoc Group of Constitutional Debtholders Pursuant to Federal Rule of Bankruptcy Procedure 2019* [ECF No. 17342].   In October of 2018, another ad hoc group (the "Commonwealth Bondholder Group") engaged Davis Polk & Wardwell LLP to represent their interests, in part, as holders of GO Bondholders.   As of July 3, 2020, the Commonwealth Bondholder Group represents GO Bondholders holding approximately.   *See Third Supplemental Verified Statement of the*

*Commonwealth Bondholder Group Pursuant to Federal Rule of Bankruptcy Procedure 2019* [ECF No. 13549].

12.     In and around February 2019, the Lawful Constitutional Debt Coalition (the "LCDC" and, together with the Ad Hoc GO Group, Constitutional Debtholders Group, and Commonwealth Bondholder Group, the "GO Groups" and, together with the QTBC Noteholder Group, the "PBA Groups") formed and retained Quinn Emanuel Urquhart & Sullivan, LLP and Reichard & Escalera, LLC to represent their interests as GO Bondholders and PBA Bondholders. [ECF No. 16421].   As of April 14, 2021, the LCDC represents GO Bondholders holding approximately $584 million of GO Bonds and $613.9 million of PBA Bonds.  *See Twelfth Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedures 2019* [ECF No. 17382].

13.     By letter, dated March 1, 2019, Hein requested the U.S. Trustee to appoint an official committee comprised solely of GO Bondholders with "modest" holdings.  [ECF No. 6128] (the "First Hein Committee Motion"), Ex. A.  On March 4, 2019, the U.S. Trustee responded to Hein's letter, stating that, in pertinent part, "[o]ur office does not comment on the appointment or selection process for official committees beyond what appears on the public record.  We are not considering taking any action at this time."  First Hein Committee Motion, Ex. B.

14.     On April 4, 2019, Hein filed the First Hein Committee Motion seeking an order from the Court appointing an additional statutory committee comprised solely of GO Bondholders with modest holdings, pursuant to section 1102(a)(2) of Title 11 of the United States Code (the "Bankruptcy Code") or, in the alternative, reconstituting the UCC to include GO Bondholders pursuant to Bankruptcy Code section 1102(a)(4).  *See* First Hein Committee Motion at 4; 7–8.  In the First Hein Committee Motion, Hein asserted, among other things, that certain COFINA

creditors received favorable treatment at the expense of others and that the COFINA plan solicitation process was purportedly designed to confuse and hasten the creditor voting process. *See, e.g.*, *id.* at 7–8.  The Court denied the First Hein Committee Motion at the hearing thereupon, which denial was subsequently memorialized in a written [ECF No. 6534].  The Court found that Hein did "not me[e]t his burden of demonstrating that the appointment of the committee suggested is necessary, and in any event, the Court is not persuaded that it should exercise its discretion to order the appointment of such an official bondholders committee."  Omnibus Hr'g Tr. 196:19–24 (Apr. 24, 2019).  It acknowledged that "these cases are extraordinarily complex[,]" but that there are numerous parties, including bondholders and monoline insurers, as well as ad hoc groups of bondholders with sophisticated counsel and professionals that are aligned with the interests of General Obligation Bondholders like Mr. Hein."  *Id.* 195:24–196:4.

15.     On February 22, 2021, the Oversight Board entered into that certain *Plan Support Agreement* by and among the Oversight Board and certain holders of GO Bonds and PBA Bonds, among other parties.  That agreement was subsequently modified as set forth in that certain *Amended and Restated Plan Support Agreement*, dated as of July 12, 2021, by and among the Oversight Board and certain holders of GO Bonds and PBA Bonds (as amended and restated, the "GO/PBA Plan Support Agreement").  The GO/PBA Plan Support Agreement forms a foundation of the Plan which the Oversight Board will ask the Court to confirm.

16.     On May 11, 2021, the Commonwealth, ERS, and PBA filed the *Amended Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and*

*Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [ECF No. 16756] (the "<u>DS Approval Motion</u>") seeking, among other things, approval of the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. [ECF No. 16741] (as it may be amended, modified, or supplemented, including as set forth in the *Disclosure Statement for the Fifth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. [ECF No. 17308], the "<u>Disclosure Statement</u>") filed contemporaneously therewith. That same day, the Commonwealth, ERS, and PBA also filed the *Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. [ECF No. 16740] (as it may be amended, modified, or supplemented, including as set forth in the *Fifth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. [ECF No. 17306], the "<u>Plan</u>").  On May 13, 2021, the Commonwealth, ERS, and PBA also filed the *Motion of Debtors for an Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. 16757] (the "<u>Confirmation Procedures Motion</u>").

17.     On June 9, 2021, Hein filed his *[1] Response and Objection of Individual Bondholder to Debtors' Motions for Orders Establishing Confirmation Procedures, and [2] Cross-Motion to Establish a Committee to Represent Retail Investors in the Confirmation Process* [ECF No. 16909] (the "<u>Cross-Motion</u>").  In the Cross-Motion, Hein requested that the Court establish a statutory committee of "Retail Investors" pursuant to 11 U.S.C. § 1102.  Cross-Motion at 25–29.  That same day, Hein filed his *Notice of Hearing and Cross-Motion of Individual Bondholder to Establish a Committee to Represent Retail Investors in the Confirmation Process*

[ECF No. 16910], seeking to set forth a briefing schedule and hearing date in connection with the Cross-Motion.

18.     On June 10, 2021, the Court entered an order denying the notice of hearing on the Cross-Motion, without prejudice to re-noticing the Cross-Motion in accordance with applicable laws, rules, and orders.  [ECF No. 16918].

19.     On June 30, 2021, after conferring with the Oversight Board and the Court, Hein filed a motion seeking to set a briefing and hearing schedule in connection with a new, to-be-filed motion to establish a committee [ECF No. 17196], which the Court granted that same day [ECF No. 17199].

20.     On July 6, 2021, Hein filed the Motion seeking an order from the Court appointing an additional statutory committee to represent retail investors in the eight Retail Investor[5] classes. Motion at 13–14.[6]  The Motion argues that the Retail Investor classes are a significant group of creditors, but, unlike other groups of creditors—who have hired and paid for their own professionals, or are having their expenses paid by the Debtors as a section 1102 committee—are not being adequately represented in these Title III Cases.  *Id.* at 14.  Specifically, Hein argues that the Retail Investors are prejudiced by their lack of official committee in connection with confirmation of the Plan, which he argues "destroys value for Retail Investors who end up with at least 13 splintered securities in exchange for each single current bond position" and that Retail Investors do not share consummation costs earned by other stakeholders in connection with their support of, and cooperation in consummation of a confirmed Plan.  *Id.* at 16.  Hein also laments

_____

[5] The eight Classes comprising the "Retail Investors", as set forth in the Plan, are:  (1) Retail Vintage PBA Bond Claims; (2) Retail 2011 PBA Bonds Claims; (3) Retail 2012 PBA Bond Claims; (4) Retail Vintage CW Bond Claims; (5) Retail 2011 CW Bond Claims; (6) Retail 2011 CW Series D/E/PIB Bond Claims; (7) Retail 2012 CW Bond Claims; and (8) Retail 2014 CW Bond Claims.

[6] All page references of the Motion shall refer to the page of the pdf of ECF No. 17221 (*i.e.*, page xx/34).

that the UCC and official committee of retirees have incurred in the aggregate over $150 million in costs and expenses, while the Retail Investors do not have any official representation. *Id.* at 14–15.  Hein additionally objects to certain matters pertaining to the adequacy of the disclosure statement, including that it is difficult for Retail Investors to understand, and to the proposed confirmation procedures, including that the Oversight Board's use of a Plan confirmation data room and the attendant confidentiality requirements are prejudicial to Retail Investors. *Id.* at 19–23..

21.     On July 13, 2021 and July 14, 2021, the Court held a hearing to consider approval of the DS Approval Motion and the Confirmation Procedures Motion.  At the hearing, the Court made oral rulings requiring certain changes to the proposed order to the Confirmation Procedures Motion, which were memorialized in the *Order Directing the Oversight Board to File an Amended Confirmation Procedures Order* [ECF No. 17362] (the "<u>Confirmation Procedures Order</u>").  The Court also adjourned consideration of the DS Approval Motion until July 27, 2021 at the Oversight Board's and certain monoline insurers' request.  The Court also made oral rulings with respect to certain additional information it would like added to Disclosure Statement.  The Court specifically addressed certain of the concerns raised again by Hein in the Motion, and required the Oversight Board to, among other things, add a chart to the Disclosure Statement to set forth clear disclosure concerning the fragmentary bonds that will be issued to investors, and to explain the status of any rulings from the IRS on whether the bonds issued pursuant to the Plan will be tax-exempt, or any constraints on the Oversight Board's ability to request such rulings until the relevant Plan provisions are finalized.  DS Approval Motion Hr'g Tr. 52:16–53:4; 55:11–14 (July 14, 2021).  The Court entered an order memorializing its oral rulings with respect to the adequacy of the Disclosure Statement on July 16, 2021.  [ECF No. 17387] (the "<u>DS Approval Motion Order</u>").

## **OBJECTION**

**I.     The "Retail Investor" Classes are Adequately Represented Without a Statutory Committee**

22.     Bankruptcy Code section 1102(a)(2) provides that "the court may order the appointment of additional committees of creditors . . . if necessary to assure adequate representation of creditors . . . ." 11 U.S.C. § 1102(a)(2).   Similarly, Bankruptcy Code section 1102(a)(4) provides that "the court may order the United States Trustee to change the membership of a committee . . . if the court determines that the change is necessary to ensure adequate representation of creditors . . . ." *Id.* § 1102(a)(4).   As such, the standard which must be satisfied is, namely, that GO Bondholders and PBA Bondholders are not adequately represented in the Title III Cases.   The standard imposed by the Bankruptcy Code is a "high standard that is far more onerous than if the statute merely provided that a committee be useful or appropriate." *In re SunEdison, Inc.*, 556 B.R. 94, 103 (Bankr. S.D.N.Y. 2016) (citation omitted).   As illustrated below, Hein cannot satisfy the requisite legal standard, and the Motion should be denied as a result.

23.     The Bankruptcy Code does not define "adequate representation."   *See In re Wang Lab'ys, Inc.*, 149 B.R. 1, 2 (Bankr. D. Mass. 1992) ("'adequacy of representation' . . . must be determined by the facts of the case.") (citing *In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985)).   While the statute provides no bright-line test for adequate representation, *see In re Hills Stores*, 137 B.R. 4 (Bankr. S.D.N.Y. 1992), courts have considered the following criteria in determining whether a creditor is adequately represented:

> (1) The ability of the committee to function; (2) The nature of the case; (3) The standing and desires of the various constituencies; (4) The ability for creditors to participate in the case even without an official committee and the potential to recover expenses pursuant to section 503(b); (5) The delay and additional cost that would result if the court grants the motion; (6) The tasks that a committee or separate committee is to perform; and (7) Other factors relevant to the adequate representation issue.

*In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) (citations omitted).  Each such criterion demands denial of the Motion.[7]

24.     Further, the Court should give deference to the U.S. Trustee's determination not to appoint an additional committee.  The "U.S. Trustee's decision is entitled to due consideration." *In re Eastman Kodak Co.*, No. 12-10202 (ALG), 2013 WL 4413300, at *1 (Bankr. S.D.N.Y. Aug. 15, 2013); *see also* 7 Collier on Bankruptcy P 1102.07 (16th 2019) ("While the court is empowered to overrule the decision of the United States trustee not to appoint an additional committee, the court should afford some deference to that decision.").

### A.     The GO Bondholders and PBA Bondholders Have Substantially Participated in the Title III Cases

25.     There is simply no need for a separate official committee comprised only of members in the Retail Investor classes.  The members in those classes are adequately represented by the GO Groups and PBA Groups, which are massively well-funded groups of investment funds represented by very capable advisors.  They have actively participated in practically every aspect of the Title III Cases and have vigorously defended the positions of GO Bondholders and PBA Bondholders without the "official" status of a statutory committee.  As demonstrated by the execution of the GO/PBA Plan Support Agreement and the filing of the Plan, the holders of GO Bonds and PBA Bonds have been substantial participants in these Title III Cases.

26.     Hein's Motion rests on a presumption that, if the Retail Investors (who hold GO Bonds and PBA Bonds) have interests that are not completely coextensive with those GO Bondholders and PBA Bondholders represented by the various ad hoc committees, they are entitled to their own committee.  *See, e.g.*, Motion at 4.  That is not the standard for when a

---

[7] As certain of these factors overlap here, each factor is not addressed separately but all factors are addressed collectively herein.

committee shall be appointed by the Court.  "The fact that the [b]ondholders may not be able to
protect all their interests and achieve *all* their goals is not paramount, as the ultimate aim is to
strike a proper balance between the parties such that an effective and viable reorganization of the
debtor may be accomplished."  *In re Hills Stores Co.*, 137 B.R. at 7 (emphasis in original).  The
"smaller" GO Bondholders and PBA Bondholders have the same types of claims the GO Groups
and PBA Groups hold, and are therefore equally benefitted by such groups' vigorous pursuit of
their interests.  It is wholly inappropriate to suggest, as Hein does, that a new Retail Investor
committee should be constituted to, among other things, "defend[] the Constitutional and statutory
'first claim' and secured status of their bond holdings[,]" Motion at 29, when such interests are
entirely coextensive with those of all GO Bondholders and PBA Bondholders, and such issues are
being compromised pursuant to the Plan, without the all-or-nothing approach a fully litigated
resolution would entail.

27.    In addition to denying Hein's previous request for a small investors committee, this
Court previously denied the Ad Hoc GO Group Committee Motion, which also requested the
formation of an additional official committee comprised of GO Bondholders.  There, the Court
reasoned:

> the [GO Bondholders] have not established a lack of adequate
> representation as required by Section 1102 of the Bankruptcy Code.  The
> [GO Bondholders] have retained sophisticated counsel and have regularly
> and actively participated on a broad range of issues in these Title III cases.
> These actions demonstrate that they are already adequately represented and
> that the appointment of an additional statutory committee is unwarranted.

*Memorandum Opinion* [ECF No. 1010], at 3.  The Court issued its opinion on August 11, 2017
and the reasoning espoused by the Court at that time remains just as true today.  The GO Groups
and PBA Groups are extremely active participants in the Title III Cases, and they more than

adequately represent the interests of all GO Bondholders and PBA Bondholders such that no additional committee is warranted.

28.     The cases cited in the Motion do not support a different conclusion.  In *In re Beker Industries Corp.*, the bankruptcy court granted two motions to appoint a debenture committee and equity committee, respectively, under the unusual circumstances where (a) the Debtors claimed to be solvent, 55 B.R. at 950, and (b) the United States trustee supported both requests.  *Id.* at 947. *Beker* did not even relate to "whether a particular representation was adequate but whether public debt should be represented at all since no debentureholders were named to the unsecured creditors committee."  *In re McLean Indus., Inc.*, 70 B.R. 852, 861 (Bankr. S.D.N.Y. 1987).  Here, Hein does not even argue that the subject categories of debt are inadequately represented, but rather that certain denominations within such categories are not represented.  The Oversight Board has been unable to find any case law requiring the appointment of a statutory committee who represented only smaller-dollar claimants of a certain security, in particular where larger-dollar claimants of that same security were adequately represented.  In fact, the opposite is true; as a general matter, statutory committees consist of the seven largest constituents of the claimants or equity holders being represented by such committee.  11 U.S.C. §§ 1102(b)(1) and (b)(2).

29.     *In re Diversified Capital Corp*, 89 B.R. 826 (Bankr. C.D. Cal. 1988), is even further afield.  In *Diversified*, the bankruptcy court appointed a committee of secured creditors post-confirmation of a plan where it noted that "[t]he performance of the debtor under the plan of reorganization in this case has not been stellar."  *Id.* at 831.  Specifically, the debtor, which was to sell its property pursuant to the plan and distribute to the proceeds to the secured creditors, asserted it had been "tricked" into transferring its property and receiving nothing in return.  *Id.* Accordingly, the court saw fit to appoint a secured creditors' committee to "oversee the

performance of the plan by the debtor." *Id.* The secured creditors' committee was the first

statutory committee appointed in the bankruptcy case, which otherwise had proceeded largely

without oversight other than that provided by the United States trustee. *Id.* These Title III cases

do not suffer from a lack of oversight by interested parties.

> ### B. The Motion's Specific Concerns with Respect to the Retail Investors Classes Do Not Raise Issues of Adequate Representation and/or Have Already Been Addressed

30. The Motion was originally filed as an alleged cross motion filed

contemporaneously with Hein's objection to the Disclosure Statement, which underscores that his

Motion in practice rests on his objections to the Disclosure Statement, the Plan, and the Oversight

Board's treatment of his bond holdings throughout these Title III Cases. Hein has already had the

opportunity to litigate these objections before the Court in connection with the DS Approval

Motion, which objections the Court took into consideration. Hein will also be able to raise other

issues he discusses in the Motion in connection with Plan confirmation, including his resistance to

the "splintering" of his various bond positions.

31. Specifically, Hein raises the following arguments as justification for appointment

of a Retail Investor committee. None demonstrates any need for a Retail Investors committee.

> a) <u>The Plan contains provisions which are prejudicial to Retail Investors.</u>
> Motion at 16–18.

32. Throughout the Motion, Hein objects to certain Plan provisions, alleging, among

other things: that the Plan destroys value for Retail Investors by "splintering" individual bond

purchases into as many as thirteen separate positions, Motion at 16–17; that certain represented

creditors, such as the Initial GO/PBA PSA Creditors, will receive consummation costs and other

fees not available to Retail Investors, *id.* at 16; and that the "Retail Support Fee" in the Plan is

"coercive," "contingent" and "not predictable." *Id.* at 17–18.  Each of these objections is a Plan

objection, motivated by Hein's dissatisfaction with the Plan's proposed treatment of his claims.

33.     Such issues have no bearing on whether the Retail Investor classes have adequate

representation, but are instead Plan confirmation objections that Hein is able to raise at

confirmation.  The Retail Investors classes are the beneficiaries of—as are all claimholders in these

Title III Cases—the protections of PROMESA and Section 301(a)'s incorporation of certain

bankruptcy code requirements the Oversight Board will be required to satisfy in order to confirm

the Plan.

34.     In any event, Hein's specific objections fail on the merits.  All holders of GO Bonds

and PBA Bonds—not just the Retail Investors—may receive "splintered" bond positions pursuant

to the Plan.  The Oversight Board has offered Retail Investors the opportunity to share in a Retail

Support Fee, if their class votes in favor of the Plan.   And consummation costs are paid to

reimburse fees and expenses incurred by parties in interest that have worked to negotiate the terms

of the Plan and the various plan support agreements incorporated therein, and who are supporting

the Plan.  No consummation costs are to be paid to Retail Investors, such as Hein, who have not

worked to negotiate or support the Plan.

        b)     The Plan and Disclosure Statement presents other issues of special concern
to Retail Investors, including that they are too complex for a typical retail investor to understand.
Motion at 19–22.

35.     Hein asserts that the Plan and Disclosure Statement are complicated and difficult

to understand.  These concerns raise issue of adequate disclosure; in particular, the obligation of

the Commonwealth, ERS, and PBA to propound a disclosure statement that satisfies the statutory

requirement of "adequate information" under section 1125 of the Bankruptcy Code.  Hein raised

these same concerns in connection with the DS Approval Motion, and the Court required additional

disclosures in the Disclosure Statement in response thereto.  DS Approval Motion Hr'g Tr. 52:16–

53:6; 55:11–14 (July 14, 2021) (requiring additional charts showing the treatment of the Retail Investor classes, as well as that the Oversight Board provide updated tax information about the Plan's treatment of the Retail Investor classes); DS Approval Order at 3–5.  The adequacy of the disclosure in a Disclosure Statement has no bearing on the adequate representation of the Retail Investor classes.

    c)  <u>The Plan confirmation procedures are prejudicial to Retail Investors.</u> Motion at 22–25.

  36.  Hein makes a number of objections in his Motion to the confirmation procedures proposed by the Oversight Board, including that the Oversight Board misuses confidentially in connection with the Plan and Disclosure Statement data room, that mailed notices of case updates do not arrive to Retail Investors in a timely fashion, and that the confirmation procedures preclude meaningful participation by Retail Investors.  These objections were raised by Hein and other parties objecting to the Confirmation Procedures Motion, which objections the Court appropriately considered as reflected in its Confirmation Procedures Order.  Some—like the objection regarding the proposed confidentiality provision—affects all parties in interest equally.  Others—such Hein's complaint that case documents are not arriving through the mail quickly enough, are readily ameliorated by reviewing the up-to-date docket available for free on the Prime Clerk, and do not speak to the adequate representation of the Retail Investors whatsoever.  No such objection indicates that Retail Investors are not being adequately represented, nor does Hein explain how a Retail Investors committee might help solve the obstacles Hein enumerates in his objection.

  37.  As a general matter, official committees are not meant to advance the parochial interests of individual creditors, which is precisely what Hein seeks to do in the Motion.  *See In re Sharon Steel Corp.*, 100 B.R. 767, 770–71, 778–79 (Bankr. W.D. Pa. 1989) (noting consensus that additional committees are generally disfavored because, among other reasons, each committee

16

focuses on the parochial interests of one specific class of creditors, consequently "weaken[ing] the impetus to compromise" on which a successful reorganization depends); *Mirant Ams. Energy Mtkg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02 Civ. 6274 (GBD), 2003 U.S. Dist. LEXIS 18149, at *27–28 (S.D.N.Y. Oct. 10, 2003) ("because creditors would be balkanized into several independent committees, each furthering the interests of only certain groups, the consultation and balancing of interests necessary for a successful negotiation of a reorganization plan would be severely hampered, leading to increased costs and delays").  Such parochial interest is even more acute where, where the Motion seeks appointment of a subclass of the same creditor based on the dollar amount of such creditor's holdings.

### C. Granting the Motion will Result in Additional Cost and Delay at a Critical Point in the Title III Cases

38.      "[T]he large size of a bankruptcy case is not determinative of whether additional committees should be appointed."  *In re Dana Corp.*, 344 B.R. at 39; *see also Mirant Ams. Energy* 2003 U.S. Dist. LEXIS 18149, at *3 (affirming bankruptcy court's denial of motion to appoint additional creditors' committee in what was, at the time, the largest bankruptcy matter in history). Rather, appointment of one official creditors' committee is the norm in large and complex cases. *See In re Residential Cap.*, *LLC,* 480 B.R. 550, 558 (Bankr. S.D.N.Y. 2012) (single committee deemed sufficient "in the vast majority of . . . cases").

39.      An additional official committee in the Title III Cases will lead to unnecessary increases in professional fees and expenses for all parties, cause further delay and confusion, and could actually impair the prospects of a successful adjustment of Puerto Rico's debts.  *See, e.g.*, *In re Grant Broad. of Phila., Inc.*, 71 B.R. 655, 661 (Bankr. E.D. Pa. 1987) (rejecting the appointment of two creditor committees, reasoning "appointment of multiple Creditors' Committees should be the rare exception, because it is not the function of such a committee to provide a Court sanctioned

17

spokesman, at the cost and expense to the estate, to protect and advocate the interests of creditors in asserted rights against third persons.  This can be done, if necessary, by individual creditors on their own behalf.") (citation omitted); *see also Mirant Ams. Energy*, 2003 U.S. LEXIS 18149, at *27 (appointing additional committees simply because cases are large and complex with Intercreditor conflicts would lead to the "unnecessary proliferation of committees at an astronomical cost to the bankruptcy estates") (citation omitted); *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853, 857–58 (Bankr. M.D. Fla. 2005) ("The Court finds that the additional costs, especially those associated with the retention of experts, militate against the appointment of an additional committee."); *In re Wang Lab'ys, Inc.*, 149 B.R. at 4 (citation omitted) (noting the court's concern that the "appointment of additional committees is closely followed by applications to retain attorneys and accountants") (quoting *In re Beker Indus. Corp.*, 55 B.R. at 949).

40.    Indeed, as noted above, the Court has already denied at least five requests for an additional committee in the Title III Cases.  *See* [ECF Nos. 868, 1010, 1013, 1014, and 6534].  The Court should deny the Motion as well, particularly given the juncture at which Hein's request was made—as it is on the cusp of approving the Disclosure Statement and setting a schedule for confirmation of the Plan, after reaching agreements with the vast majority of its major creditor constituencies.  The Court should not risk a derailment of the Title III cases by the appointment of an additional, superfluous statutory committee, which would inevitably attempt to assert itself and justify its relevance while also engaging advisors that would need substantial time to learn the necessary background of the Title III cases and the intricacies of the Plan and related documents to be effective.

**II.    Even if the Court Determines the Retail Investor Classes are not Adequately Represented, the Court Should Deny the Motion in its Discretion**

18

41.     Even if the Court were to find that the above-cited factors pointed to inadequate representation, appointment of additional committees is not mandatory.  The Court must still "decide whether it should exercise its discretion and order such appointment."[8]  In considering whether to exercise its discretion to appoint additional committees even where there are questions of inadequate representation, courts consider (1) the cost associated with the appointment, (2) the time of the application, (3) the potential for added complexity, and (4) the presence of other avenues for creditor participation.[9]

42.     Assuming, for argument's sake, that the Retail Investor classes are not adequately represented, application of the Court's discretion demonstrates that it should not appoint an additional official committee.  The cost associated with an additional official committee is reason alone for the Court to decline to exercise its discretion.  As one court explained in declining to exercise its discretion, appointing an additional committee would "open [the court] to the otherwise justifiable criticism that we allowed two firms to tax the Debtors' estate, at the ultimate cost to the Debtors and the creditors, by appointing two Creditors' Committees, just because they could not resolve a squabble between themselves . . . appointment of multiple Creditors' Committees should be the rare exception."[10]

---

[8] *In re Dewey & LeBoeuf LLP*, No. 12-12321 MG, 2012 WL 5985325, at *3 (Bankr. S.D.N.Y. Nov. 29, 2012).  *See also In re Wang Lab'ys*, 149 B.R. at 2 (if appointment of additional committee is necessary to assure adequate representation, court must then consider whether it should exercise its discretion and make the appointment); *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002) (court can deny additional committee "even once inadequate representation is found"); *In re Pub. Serv. Co. of New Hampshire*, 89 B.R. 1014, 1019–20 (Bankr. D.N.H. 1988) (declining to appoint additional committee notwithstanding conclusion that "there is a question of adequate representation" and "[t]here accordingly is no question that [moving creditors] would 'benefit' from the appointment of a separate committee . . . .").

[9] *See In re Enron Corp.*, 279 B.R. at 685. Bankruptcy courts have "generally been reluctant to appoint additional committees and their decisions have placed considerable weight on these discretionary factors."  *In re Dow Corning Corp.*, 194 B.R. 121, 143 (Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258 (E.D. Mich. 1997).

[10] *In re Grant Broad. of Phila., Inc.*, 71 B.R. at 661.

19

43.    These concerns are particularly acute in the Title III cases.  An additional official committee would retain its own attorneys, financial advisors, and other experts.[11]  An additional official committee would also lead to an unnecessary duplication of effort, given the plethora of attorneys, advisors, and experts that are already heavily involved in the Title III cases.  Appointing an additional official committee would also make the Title III cases (which are complicated enough) even more complex and decrease the likelihood of a timely successful reorganization.[12] Multiple official committees, each focused on the parochial interests of one specific class of creditors, "will only weaken the impetus to compromise" on which a successful reorganization depends.[13]

44.    The various bondholder groups have been actively participating in the Title III cases and have been aggressively litigating the issues affecting Retail Investors for years.  Hein himself has also actively participated in these Title III Cases.  Official committee status is not necessary for their voices to be heard.[14]  For all of these reasons, no additional official committee should be appointed for the Retail Investors.

*[Remainder of page intentionally left blank]*

---

[11] *See In re Winn-Dixie*, 326 B.R. at 858 n.4 ("In light of the numerous experts retained by the Debtors and the Creditors' Committee, the Court has little doubt that an additional committee would seek to retain its own experts.").

[12] *See In re Sharon Steel Corp.*, 100 B.R. at 770–71 (describing consensus that appointment of additional committee was "met with general disfavor in view of the obvious complexities it would create, complicating negotiations of the [debtor, regulatory agencies, creditors], the union, and current lenders by a geometric progression; [and favoring] the 'one-stop shopping' expression of the preferability of one committee").

[13] *Id.* at 779; *see also Mirant Ams. Energy*, 2003 U.S. Dist. LEXIS 18149, at *27–28 ("because creditors would be balkanized into several independent committees, each furthering the interests of only certain groups, the consultation and balancing of interests necessary for a successful negotiation of a reorganization plan would be severely hampered, leading to increased costs and delays").

[14] *See In re Garden Ridge Corp.*, No. 04-10324 (DDS), 2005 WL 523129, at *4 (Bankr. D. Del. Mar. 2, 2005) (an "Official Committee is simply not intended to represent individual creditor interests").

WHEREFORE the Commonwealth respectfully requests that the Court (a) sustain the

Objection, (b) deny the Motion, and (c) grant the Debtors such other and further relief as is just.

Dated:  July 19, 2021
San Juan, Puerto Rico

Respectfully submitted,

*/s/Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Jeffrey W. Levitan (*pro hac vice*)
Joshua A. Esses (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as Representative for the
Commonwealth*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Munoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as Representative for the
Commonwealth*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/ Hermann D. Bauer
Hermann D. Bauer

22

23