**IF YOUR CLAIM IS LISTED HERE, ONE OR MORE OF THE DEBTORS ARE SEEKING TO DISALLOW YOUR CLAIM FOR THE REASON LISTED BELOW.**

| NAME | CLAIM # | DATE FILED | DEBTOR | ASSERTED CLAIM AMOUNT |
|---|---|---|---|---|
| COLON TORRES, NEYSHA | 121773 | 6/29/2018 | Employees Retirement System of the Government of the Commonwealth of Puerto Rico | $16,800.00 |
| Reason: | The claimant failed to provide prima facie evidence to support a secured claim. | | | |

**SI SU RECLAMO ESTÁ INCLUIDO AQUÍ, UNO O MÁS DE LOS DEUDORES SOLICITAN QUE SU RECLAMO SEA RECHAZADO POR LA RAZÓN INDICADA AQUÍ ABAJO.**

| NOMBRE | N.º DE RECLAMACIÓN | FECHA DE PRESENTACIÓN | DEUDOR | MONTO DE LA RECLAMACIÓN ALEGADA |
|---|---|---|---|---|
| COLON TORRES, NEYSHA | 121773 | 6/29/2018 | Employees Retirement System of the Government of the Commonwealth of Puerto Rico | $16,800.00 |
| Base para: | El demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. | | | |

*Véanse evidencias y escrit adjunto*

RECEIVED AND FILED
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

**IF YOUR CLAIM IS LISTED HERE, ONE OR MORE OF THE DEBTORS ARE SEEKING TO DISALLOW YOUR CLAIM FOR THE REASON LISTED BELOW.**

| NAME | CLAIM # | DATE FILED | DEBTOR | ASSERTED CLAIM AMOUNT |
|---|---|---|---|---|
| COLON TORRES, NEYSHA | 121773 | 6/29/2018 | Employees Retirement System of the Government of the Commonwealth of Puerto Rico | $16,800.00 |
| Reason: | | Proof of Claim asserts liability associated with pension adjustments that claimant asserts are payable by ERS. However, pursuant to the Post-Petition Legislation, the Commonwealth assumed any obligation to make payment to pensioners or other beneficiaries of ERS. | | |

**SI SU RECLAMO ESTÁ INCLUIDO AQUÍ, UNO O MÁS DE LOS DEUDORES SOLICITAN QUE SU RECLAMO SEA RECHAZADO POR LA RAZÓN INDICADA AQUÍ ABAJO.**

| NOMBRE | N.º DE RECLAMACIÓN | FECHA DE PRESENTACIÓN | DEUDOR | MONTO DE LA RECLAMACIÓN ALEGADA |
|---|---|---|---|---|
| COLON TORRES, NEYSHA | 121773 | 6/29/2018 | Employees Retirement System of the Government of the Commonwealth of Puerto Rico | $16,800.00 |
| Base para: | | La Evidencia de Reclamo reclama una obligación asociada a ajustes de jubilación que el demandante señala que es adeudada por el ERS. Sin embargo, de acuerdo con la Legislación posterior a la petición, el Estado Libre Asociado asumió cualquier obligación de efectuar pagos a jubilados u otros beneficiarios del ERS. | | |

Véanse    evidencias    y
escrito    adjunto

**IF YOUR CLAIM IS LISTED HERE, ONE OR MORE OF THE DEBTORS ARE SEEKING TO DISALLOW YOUR CLAIM FOR THE REASON LISTED BELOW.**

| NAME | CLAIM # | DATE FILED | DEBTOR | ASSERTED CLAIM AMOUNT |
|---|---|---|---|---|
| COLON TORRES, NEYSHA | 129809 | 6/29/2018 | Commonwealth of Puerto Rico | $45,760.89 |
| Reason: | The claimant failed to provide prima facie evidence to support a secured claim. | | | |

**SI SU RECLAMO ESTÁ INCLUIDO AQUÍ, UNO O MÁS DE LOS DEUDORES SOLICITAN QUE SU RECLAMO SEA RECHAZADO POR LA RAZÓN INDICADA AQUÍ ABAJO.**

| NOMBRE | N.º DE RECLAMACIÓN | FECHA DE PRESENTACIÓN | DEUDOR | MONTO DE LA RECLAMACIÓN ALEGADA |
|---|---|---|---|---|
| COLON TORRES, NEYSHA | 129809 | 6/29/2018 | Commonwealth of Puerto Rico | $45,760.89 |
| Base para: | El demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. | | | |

Véanse evidencias y escrito
Adjunto ⟶

**IF YOUR CLAIM IS LISTED HERE, ONE OR MORE OF THE DEBTORS ARE SEEKING TO DISALLOW YOUR CLAIM FOR THE REASON LISTED BELOW.**

| NAME | CLAIM # | DATE FILED | DEBTOR | ASSERTED CLAIM AMOUNT |
|---|---|---|---|---|
| COLON TORRES, NEYSHA | 127701 | 6/29/2018 | Employees Retirement System of the Government of the Commonwealth of Puerto Rico | $45,760.89 |
| Reason: | | Duplicate liability filed against Debtor Employees Retirement System of the Government of the Commonwealth of Puerto Rico.  All asserted liabilities, if any would be between the Claimant and the Commonwealth of Puerto Rico. | | |

**SI SU RECLAMO ESTÁ INCLUIDO AQUÍ, UNO O MÁS DE LOS DEUDORES SOLICITAN QUE SU RECLAMO SEA RECHAZADO POR LA RAZÓN INDICADA AQUÍ ABAJO.**

| NOMBRE | N.º DE RECLAMACIÓN | FECHA DE PRESENTACIÓN | DEUDOR | MONTO DE LA RECLAMACIÓN ALEGADA |
|---|---|---|---|---|
| COLON TORRES, NEYSHA | 127701 | 6/29/2018 | Employees Retirement System of the Government of the Commonwealth of Puerto Rico | $45,760.89 |
| Base para: | | Reclamo de una obligación duplicada interpuesto contra el Sistema de Retiro de Empleados del Gobierno del Estado Libre Asociado de Puerto Rico.  Todas las responsabilidades invocadas, si las hubiere, tendrían lugar entre el Reclamante y el Estado Libre Asociado de Puerto Rico. | | |

Véanse  evidencias  y escrit
adjunt

**IF YOUR CLAIM IS LISTED HERE, ONE OR MORE OF THE DEBTORS ARE SEEKING TO DISALLOW YOUR CLAIM FOR THE REASON LISTED BELOW.**

| NAME | CLAIM # | DATE FILED | DEBTOR | ASSERTED CLAIM AMOUNT |
|------|---------|------------|--------|----------------------|
| Colon Torres, Neysha M | 139753 | 6/29/2018 | Commonwealth of Puerto Rico | $16,800.00 |
| Reason: | The claimant failed to provide prima facie evidence to support a secured claim. | | | |

**SI SU RECLAMO ESTÁ INCLUIDO AQUÍ, UNO O MÁS DE LOS DEUDORES SOLICITAN QUE SU RECLAMO SEA RECHAZADO POR LA RAZÓN INDICADA AQUÍ ABAJO.**

| NOMBRE | N.º DE RECLAMACIÓN | FECHA DE PRESENTACIÓN | DEUDOR | MONTO DE LA RECLAMACIÓN ALEGADA |
|--------|--------------------|-----------------------|--------|--------------------------------|
| Colon Torres, Neysha M | 139753 | 6/29/2018 | Commonwealth of Puerto Rico | $16,800.00 |
| Base para: | El demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. | | | |

*Véanse evidencias y escrito adjunto*

Three Hundred and Forty-First Omnibus Objection
Exhibit A - Claims to Be Disallowed

| | CLAIMS TO BE DISALLOWED | | | | | REMAINING CLAIMS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | NAME | DATE FILED | CASE NUMBER / DEBTOR | CLAIM # | CLAIM AMOUNT | NAME | DATE FILED | CASE NUMBER / DEBTOR | CLAIM # | CLAIM AMOUNT |
| 15 | COLON TORRES, NEYSHA URB EL COMANDANTE 872 CALLE MARIA GIUSTI SAN JUAN, PR 00924 | 06/29/18 | 17 BK 03566-LTS / Employees Retirement System of the Government of the Commonwealth of Puerto Rico | 127701 | $ 45,760.89* | COLON TORRES, NEYSHA URB EL COMANDANTE 872 CALLE MARIA GIUSTI SAN JUAN, PR 00924 | 06/29/18 | 17 BK 03283-LTS / Commonwealth of Puerto Rico | 129809^ | $ 45,760.89* |

Reason: Duplicate liability filed against Debtor Employees Retirement System of the Government of the Commonwealth of Puerto Rico. All asserted liabilities, if any would be between the Claimant and the Commonwealth of Puerto Rico.

^ Claim #129809 also contained on Exhibit A to the 345th Omnibus Claims Objection for Misclassified Claims

| 16 | CORDERO VELEZ, CLARA M. PO BOX 9281 HUMACAO, PR 00792 | 05/30/18 | 17 BK 03566-LTS / Employees Retirement System of the Government of the Commonwealth of Puerto Rico | 40934 | Undetermined* | CORDERO VELEZ, CLARA M PO BOX 9281 HUMACAO, PR 00791 | 05/30/18 | 17 BK 03283-LTS / Commonwealth of Puerto Rico | 41573^ | Undetermined* |

Reason: Duplicate liability filed against Debtor Employees Retirement System of the Government of the Commonwealth of Puerto Rico. All asserted liabilities, if any would be between the Claimant and the Commonwealth of Puerto Rico.

^ Claim #41573 also contained on Exhibit A to the 351st Omnibus Claims Objection for Partially Duplicative Claims

| 17 | CORTES GARCIA, NELIDA 175 CALLE NUEVA COMUNIDAD ISRAEL SAN JUAN, PR 00917 | 05/08/18 | 17 BK 03566-LTS / Employees Retirement System of the Government of the Commonwealth of Puerto Rico | 12511 | $ 68,745.12* | GARCIA, NELIDA CORTES 175 CALLE NUEVA COM ISRAEL SAN JUAN, PR 00917 | 05/08/18 | 17 BK 03283-LTS / Commonwealth of Puerto Rico | 12503^ | $ 68,745.12* |

Reason: Duplicate liability filed against Debtor Employees Retirement System of the Government of the Commonwealth of Puerto Rico. All asserted liabilities, if any would be between the Claimant and the Commonwealth of Puerto Rico.

^ Claim #12503 also contained on Exhibit A to the 345th Omnibus Claims Objection for Misclassified Claims

| 18 | CORTIJO SANCHEZ, EDITH URB COUNTRY CLUB QM5 CALLE 246 CAROLINA, PR 00982-1895 | 05/25/18 | 17 BK 03566-LTS / Employees Retirement System of the Government of the Commonwealth of Puerto Rico | 29821 | Undetermined* | CORTIJO SANCHEZ, EDITH URB COUNTRY CLUB QM5 CALLE 246 CAROLINA, PR 00982-1895 | 05/25/18 | 17 BK 03283-LTS / Commonwealth of Puerto Rico | 43457^ | Undetermined* |

Reason: Duplicate liability filed against Debtor Employees Retirement System of the Government of the Commonwealth of Puerto Rico. All asserted liabilities, if any would be between the Claimant and the Commonwealth of Puerto Rico.

^ Claim #43457 also contained on Exhibit A to the 351st Omnibus Claims Objection for Partially Duplicative Claims

Three Hundred and Thirty-Seventh Omnibus Objection
Exhibit A - Claims to Be Reclassified

| | NAME | CLAIM# | ASSERTED | | | CORRECTED | | |
|---|---|---|---|---|---|---|---|---|
| | | | DEBTOR | PRIORITY STATUS | AMOUNT | DEBTOR | PRIORITY STATUS | AMOUNT |
| 104 | COLON QUINTANA, JUAN #215 CALLE EVARISTO HERNANDEZ BO MOGOTE CAYEY, PR 00736 | 163310 | Employees Retirement System of the Government of the Commonwealth of Puerto Rico | Unsecured | $48,119.21* | Commonwealth of Puerto Rico | Unsecured | $48,119.21* |

Reason: Proof of Claim asserts liability associated with pension adjustments that claimant asserts are payable by ERS. However, pursuant to the Post-Petition Legislation, the Commonwealth assumed any obligation to make payment to pensioners or other beneficiaries of ERS.

| | NAME | CLAIM# | DEBTOR | PRIORITY STATUS | AMOUNT | DEBTOR | PRIORITY STATUS | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 105 | COLON RODRIGUEZ, RAFAEL A. HC 01 BOX 5727 SALINAS, PR 00751 | 136381 | Employees Retirement System of the Government of the Commonwealth of Puerto Rico | Unsecured | Undetermined* | Commonwealth of Puerto Rico | Unsecured | Undetermined* |

Reason: Proof of Claim asserts liability associated with pension adjustments that claimant asserts are payable by ERS. However, pursuant to the Post-Petition Legislation, the Commonwealth assumed any obligation to make payment to pensioners or other beneficiaries of ERS.

| | NAME | CLAIM# | DEBTOR | PRIORITY STATUS | AMOUNT | DEBTOR | PRIORITY STATUS | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 106 | COLON SANTIAGO, JESSICA CALLE GUAMANI # 41 CIUDAD CENTRO PR CAROLINA, PR 00987 | 87320^ | Employees Retirement System of the Government of the Commonwealth of Puerto Rico | Unsecured | $68,960.00 | Commonwealth of Puerto Rico | Unsecured | $68,960.00 |

Reason: Proof of Claim asserts liability associated with pension adjustments that claimant asserts are payable by ERS. However, pursuant to the Post-Petition Legislation, the Commonwealth assumed any obligation to make payment to pensioners or other beneficiaries of ERS.

^ Claim #87320 also contained on Exhibit A to the 351st Omnibus Claims Objection for Partially Duplicative Claims

| | NAME | CLAIM# | DEBTOR | PRIORITY STATUS | AMOUNT | DEBTOR | PRIORITY STATUS | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 107 | COLON TORRES, NEYSHA URB EL COMANDANTE 872 CALLE MARIA GIUSTI SAN JUAN, PR 00924 | 121773^ | Employees Retirement System of the Government of the Commonwealth of Puerto Rico | Secured | $16,800.00* | Commonwealth of Puerto Rico | Secured | $16,800.00* |

Reason: Proof of Claim asserts liability associated with pension adjustments that claimant asserts are payable by ERS. However, pursuant to the Post-Petition Legislation, the Commonwealth assumed any obligation to make payment to pensioners or other beneficiaries of ERS.

^ Claim #121773 also contained on Exhibit A to the 345th Omnibus Claims Objection for Misclassified Claims

| | NAME | CLAIM# | DEBTOR | PRIORITY STATUS | AMOUNT | DEBTOR | PRIORITY STATUS | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 108 | CONCHITA E COX SCHUCK URB UNIVERSITY GARDENS 322A CALLE CLEMSON SAN JUAN, PR 00927 | 1845^ | Employees Retirement System of the Government of the Commonwealth of Puerto Rico | 503(b)(9) | $91,000,000.00* | Commonwealth of Puerto Rico | 503(b)(9) | $91,000,000.00* |
| | | | | | | Commonwealth of Puerto Rico | Secured | Undetermined* |
| | | | Employees Retirement System of the Government of the Commonwealth of Puerto Rico | Secured | Undetermined* | | Subtotal | $91,000,000.00* |
| | | | | Subtotal | $91,000,000.00* | | | |

Reason: Proof of Claim asserts liability associated with pension adjustments that claimant asserts are payable by ERS. However, pursuant to the Post-Petition Legislation, the Commonwealth assumed any obligation to make payment to pensioners or other beneficiaries of ERS.

^ Claim #1845 also contained on Exhibit A to the 345th Omnibus Claims Objection for Misclassified Claims
Claim #1845 also contained on Exhibit A to the 351st Omnibus Claims Objection for Partially Duplicative Claims

* Indicates claim contains unliquidated and/or undetermined amounts

Tricentésima Cuadragésima Quinta Objeción Global

Anexo A: Reclamos a ser reclasificados

| | NOMBRE | N.º DE RECLAM ACIÓN | ALEGADOS | | | CORREGIDOS | | |
|---|---|---|---|---|---|---|---|---|
| | | | DEUDOR | ESTADO DE PRIORIDAD | IMPORTE | DEUDOR | ESTADO DE PRIORIDAD | IMPORTE |
| 35 | CHEVERE FRAGUADA, ZORAIDA JARD DE COUNTRY CLUB R1 CALLE 12 CAROLINA, PR 00983-1759 | 20773^ | El Estado Libre Asociado de Puerto Rico | Garantizada | $35,000.00* | El Estado Libre Asociado de Puerto Rico | No Garantizada | $35,000.00* |
| | Base para: El demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. | | | | | | | |
| | ^ Reclamo n°. 20773 también incluido en el Anexo A a la Objeción Global n° 337 por reclamos clasificados erróneamente | | | | | | | |
| 36 | CHEVERE FRASUADA, ZORAIDA CALLE 12 R-1 JARDINES DE COUNTRY CLUB CAROLINA, PR 00983 | 24315 | El Estado Libre Asociado de Puerto Rico | Garantizada | $35,000.00* | El Estado Libre Asociado de Puerto Rico | No Garantizada | $35,000.00* |
| | Base para: El demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. | | | | | | | |
| 37 | COLLADO SANTIAGO, SANDRA URB. VALLE 4D8 SAN GERMAN, PR 00683 | 54541 | El Estado Libre Asociado de Puerto Rico | Garantizada | $15,000.00 | El Estado Libre Asociado de Puerto Rico | No Garantizada | $15,000.00 |
| | Base para: El demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. | | | | | | | |
| 38 | COLLAZO ROSADO, MONICA COND QUINTANA 614 APT A SAN JUAN, PR 00917 | 16256 | El Estado Libre Asociado de Puerto Rico | Garantizada | $29,000.00 | El Estado Libre Asociado de Puerto Rico | No Garantizada | $29,000.00 |
| | Base para: El demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. | | | | | | | |
| 39 | COLON ALICEA, HERIC BO. GUAVATE 22908 CAYEY, PR 00736 | 20453 | El Estado Libre Asociado de Puerto Rico | Garantizada | $29,000.00 | El Estado Libre Asociado de Puerto Rico | No Garantizada | $29,000.00 |
| | Base para: El demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. | | | | | | | |
| 40 | COLON TORRES, NEYSHA URB EL COMANDANTE 872 CALLE MARIA GIUSTI SAN JUAN, PR 00924 | 121773^ | El Estado Libre Asociado de Puerto Rico | Garantizada | $16,800.00* | El Estado Libre Asociado de Puerto Rico | No Garantizada | $16,800.00* |
| | Base para: El demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. | | | | | | | |
| | ^ Reclamo n°. 121773 también incluido en el Anexo A a la Objeción Global n° 337 por reclamos clasificados erróneamente | | | | | | | |



* Indica que la reclamación contiene montos por liquidar o indeterminados

Tricentésima Cuadragésima Quinta Objeción Global

Anexo A: Reclamos a ser reclasificados

| | NOMBRE | N.º DE RECLAMACIÓN | ALEGADOS | | | CORREGIDOS | | |
|---|---|---|---|---|---|---|---|---|
| | | | DEUDOR | ESTADO DE PRIORIDAD | IMPORTE | DEUDOR | ESTADO DE PRIORIDAD | IMPORTE |
| 41 | COLON TORRES, NEYSHA<br>URB EL COMANDANTE<br>872 CALLE MARIA GIUSTI<br>SAN JUAN, PR 00924 | 129809 | El Estado Libre Asociado de Puerto Rico | Garantizada | $45,760.89* | El Estado Libre Asociado de Puerto Rico | No Garantizada | $45,760.89* |
| | Base para: El demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. | | | | | | | |
| 42 | COLON TORRES, NEYSHA M<br>URB. EL COMANDANTE<br>872 CALLE MARIA GIUSTI<br>SAN JUAN, PR 00924 | 139753 | El Estado Libre Asociado de Puerto Rico | Garantizada | $16,800.00* | El Estado Libre Asociado de Puerto Rico | No Garantizada | $16,800.00* |
| | Base para: El demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. | | | | | | | |
| 43 | CONCEPCIÓN-FELICIANO, ELSIE<br>HC 03 BOX 33358<br>AGUADA, PR 00602 | 58656 | Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico | Garantizada | $7,000.00* | El Estado Libre Asociado de Puerto Rico | No Garantizada | $7,000.00* |
| | Base para: El demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. | | | | | | | |
| 44 | CONCHITA E COX SCHUCK<br>URB UNIVERSITY GARDENS<br>322A CALLE CLEMSON<br>SAN JUAN, PR 00927 | 1845^ | El Estado Libre Asociado de Puerto Rico | 503(b)(9) | $91,000,000.00* | El Estado Libre Asociado de Puerto Rico | No Garantizada | $91,000,000.00* |
| | | | El Estado Libre Asociado de Puerto Rico | Garantizada | Indeterminado* | | | |
| | | | | Subtotal | $91,000,000.00* | | | |
| | Base para: El Demandante reclamó una prioridad administrativa en virtud del título 11 del Código de los Estados Unidos, sección 503(b)(9), pero la evidencia de reclamo no corresponde a bienes vendidos y, por lo tanto, el demandante no tiene derecho ella. Además, el demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. En consecuencia, el reclamo se reclasificó en su totalidad como un reclamo no asegurado general. | | | | | | | |
| | ^ Reclamo n°. 1845 también incluido en el Anexo A a la Objeción Global n° 337 por reclamos clasificados erróneamente<br>Reclamo n°. 1845 también incluido en el Anexo A a la Objeción Global n° 351 por reclamos parcialmente duplicados | | | | | | | |
| 45 | COTTO SERRANO, ANA C.<br>CARR. 176 K5H3 CAMINO DON DIEGO<br><br>CUPEY ALTO<br>SAN JUAN, PR 00926-9740 | 137545^ | El Estado Libre Asociado de Puerto Rico | Garantizada | $30,000.00 | El Estado Libre Asociado de Puerto Rico | No Garantizada | $30,000.00 |
| | Base para: El demandante omitió proporcionar pruebas evidentes para apoyar un reclamo asegurado. | | | | | | | |
| | ^ Reclamo n°. 137545 también incluido en el Anexo A a la Objeción Global n° 337 por reclamos clasificados erróneamente | | | | | | | |

* Indica que la reclamación contiene montos por liquidar o indeterminados

30 Mayo 2018

Commonwealth of PR
Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, Po Box 4708
New York, NY 10163-4708

Re: Proof of claim en re The
Commonwealth of Puerto Rico case
no. BK 3283 LTS Promesa Title III

Estimado funcionario (a)

Saludos Cordiales,
    Mediante el presente documento
la suscribiente Neysha Milagros Colón Torres
mayor de edad ( con # seguro Social
xxx-xx-xxxx actualmente retirada del
Dept de la Familia hago constar
que formo parte de los reclamantes
que figuran como demandantes
en el caso Hilda A. Agosto Maldonado
y otros, civil num K P E 2005-0608
y que versa sobre dinero adeudado
en concepto salarios con sentencia
del 16 Septiembre 2010 ordenando

ou may also submit your claim electronically by visiting http://cases.primeclerk.com/puertorico/EPOC-Index

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL
DISTRITO DE PUERTO RICO

**Fill in this information to identify the case (Select only one Debtor per claim form). /
Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación).**

MMLID: 1124855
EPOC ID: 170356600173456

| | | |
|---|---|---|
| ☐ Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☐ Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☐ Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☒ Employees Retirement System of the Government of the<br>Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado<br>Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☐ Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

**RECEIVED**

**JUN 2 9 2018**

Debtor Employees Retirement System of the Government of the Commonwealth of Puerto Rico has listed your claim in their Creditor List on
Schedule E -- Pension Obligations as a Contingent, Unliquidated general unsecured claim in an Undetermined amount. You must timely file a proof
of claim or be forever barred from participating or sharing in any distribution or being treated as a claim for purposes of voting or distribution.

El deudor Employees Retirement System of the Government of the Commonwealth of Puerto Rico ha listado su reclamación en la lista de acreedores
en el Schedule E -- Obligaciones de Pensión como un reclamo Contingente, Sin líquidez no-asegurado por un monto Indeterminado. Debe presentar
una prueba de reclamación oportunamente o se le prohibirá por siempre participar o compartir en cualquier distribución o ser tratado como un reclamo
para fines de votación o distribución.

Modified Official Form 410 / Formulario Oficial 410 Modificado

# Proof of Claim / Evidencia de reclamación
04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a
request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make
such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted
copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts,
judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not
available, explain in an attachment.

**Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en
virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los
requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de
conformidad con el Título 11 § 503 del U.S.C.**

Quienes presenten la documentación deben omitir o editar información que reúna los requisitos para ser tratada con privacidad o confidencialidad en
este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como
pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de
garantías. **No adjunte documentos originales,** ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los
documentos no estén disponibles, explique los motivos en un anexo.

Fill in all the information about the claim as of the Petition Date.

Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.

| **Part 1 / Parte 1** | **Identify the Claim / Identificar la reclamación** |
|---|---|

| | |
|---|---|
| 1. **Who is the current creditor?**<br><br>**¿Quién es el acreedor actual?** | NEYSHA COLON TORRES<br>―――――――――――――――――――――――――――――――<br>Name of the current creditor (the person or entity to be paid for this claim)<br>Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación)<br><br>Other names the creditor used with the debtor  *Neysha M. Colon Torres*<br>Otros nombres que el acreedor usó con el deudor |







8. **How much is the claim?** $ *45,760.89* *aproximadamente*

¿Cuál es el importe de la reclamación?

*Además me adeudan los intereses y aportaciones a Retiro y Seguro Social*

**Does this amount include interest or other charges?**
¿Este importe incluye intereses u otros cargos?

☑ No / No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).
Sí. Adjunte un balance con intereses detallados, honorarios, gastos u otros cargos exigidos por la Norma de Quiebras 3001(c)(2)(A).

9. **What is the basis of the claim?**

¿Cuál es el fundamento de la reclamación?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.

Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.

*Demanda pa ajuste Salarial*

10. **Is all or part of the claim secured?**

¿La reclamación está garantizada de manera total o parcial?

☐ No / No
☑ Yes. The claim is secured by a lien on property.
Sí. La reclamación está garantizada por un derecho de retención sobre un bien.

**Nature of property / Naturaleza del bien:**
☐ Motor vehicle / Vehículos

☐ Other. Describe:
Otro. Describir: *ajuste Salarial*

**Basis for perfection / Fundamento de la realización de pasos adicionales:** _____

_____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.

**Value of property / Valor del bien:** $_____

**Amount of the claim that is secured /**
Importe de la reclamación que está garantizado: $_____

**Amount of the claim that is unsecured /**
Importe de la reclamación que no está garantizado: $_____
(The sum of the secured and unsecured amounts should match the amount in line 7.)
(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)

**Amount necessary to cure any default as of the Petition Date /**
Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso : $_____

**Annual Interest Rate** (on the Petition Date)
Tasa de interés anual (cuando se presentó el caso)_____%
☐ Fixed / Fija
☐ Variable / Variable

11. **Is this claim based on a lease?**

¿Esta reclamación está basada en un arrendamiento?

☑ No / No

☐ Yes. Amount necessary to cure any default as of the Petition Date.
Sí. Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso $_____



Ver al dorso para detalles de los mecanismos de seguridad / See reverse side for complete security features.

**DEPARTAMENTO DE HACIENDA**
Edificio Intendente Ramírez
San Juan PR 00902-4140

**Estado Libre Asociado de Puerto Rico**
127 - Adm. Desarrollo Socio Económico

Cheque No.
06077230

Modelo SC 744
Nov. 07/2011

Fecha: 11/01/2012   Importe: $13,324.05 ****

Páguese A la Orden De:   ****TRECE MIL TRESCIENTOS VEINTICUATRO CON 05/100 DOLARES****

NEYSHA M COLON TORRES
URB. EL COMANDANTE
872 MARIA GUSTI
SAN JUAN PR 00924
Localización: Carolina 1

BGF

Secretario de Hacienda

No es válido seis meses después de su emisión

⑈06077230⑈ ⑆021502618⑆ 3250⑈0⑈6⑈

S2010

# Estado Libre Asociado de Puerto Rico
127 - Adm. Desarrollo Socio Económico

| Grupo de Pago: | SM -Quincenal | # Cheque: | 06077230 |
|---|---|---|---|
| Desde: | 12/01/2012 | | |
| Hasta: | 12/15/2012 | Fecha: | 11/01/2012 |

| NEYSHA M COLON TORRES | # Empleado: | XXXXX3009 | DATA IMP: | Federal | PR |
|---|---|---|---|---|---|
| URB. EL COMANDANTE | Dept: | 127050-Carolina | Estado Civil: | Single | Single |
| 872 MARIA GUSTI | Oficina: | Carolina 1 | Concesiones: | 0 | 0 +6 |
| SAN JUAN PR 00924 | Titulo: | Tecnico Servicios Sociales 1 | Pct. Adcl.: | | |
| SS    XXX-XX-3009 | Sueldo: | $1,992.00 Monthly | Cant. Adcl.: | | |

## HORAS E INGRESOS

| | | --------- Corriente --------- | | ----- Acumulado ----- | | IMPUESTOS | | |
|---|---|---|---|---|---|---|---|---|
| Descripcion | Sueldo | Horas | Ingresos | Horas | Ingresos | Descripcion | Corriente | Acumulado |
| Pago Retroactivo Regular | | | 15,253.63 | | 15,253.63 | Fed MED/EE | 221.18 | 221.18 |
| | | | | | | Fed OASDI/EE | 640.65 | 640.65 |
| | | | | | | PR Withholding | 1,067.75 | 1,067.75 |
| Total: | | | 15,253.63 | | 15,253.63 | Total: | 1,929.58 | 1,929.58 |

| DEDUCCIONES | | | DEDUCCIONES GENERALES | | | BENEFICIOS PATRONALES PAGADOS | | |
|---|---|---|---|---|---|---|---|---|
| Descripcion | Corriente | Acumulado | Descripcion | Corriente | Acumulado | Descripcion | Corriente | Acumulado |
| | | | | | | FSED Disability Plan | 511.00 | 511.00 |
| Total: | 0.00 | 0.00 | Total: | 0.00 | 0.00 | * Tributable | | |

| TOTAL BRUTO | | TOTAL IMPUESTOS | DEDUCCIONES TOTALES | PAGA NETA |
|---|---|---|---|---|
| Corriente: | 15,253.63 | 1,929.58 | 0.00 | 13,324.05 |
| Acumulado: | 15,253.63 | 1,929.58 | 0.00 | 13,324.05 |

| PTO HORAS | ACUM |
|---|---|
| Balance Inicial: | 0.0 |
| + Acumulado: | |
| - Utilizado: | |
| - Donada: | |
| + Ajustes: | |
| Balance Final: | 0.0 |

| DISTRIBUCION PAGA NETA | |
|---|---|
| Cheque #06077230 | 13,324.05 |
| Total: | 13,324.05 |

SF160022569 ©2012, HR Oneullity, All rights reserved.- 0667

SENTENCIA
K PE 2005-0608
PAGINA 17

| 73. | BETANCOURT RIVERA, GLENDA LIZ | 74. | BETANCOURT RODRÍGUEZ, ROSA E. |
|---|---|---|---|
| 75. | BIRRIEL URDAZ , NURI I. | 76. | BLANCO SOTO, MARIA A. |
| 77. | BONILLA CHISTIAN, ZAIDA | 78. | BORGOS DIAZ, MYRNA L. |
| 79. | BORGOS LEÓN LAURA | 80. | BORIA CLEMENTE, SAMUEL |
| 81. | BORIA GASTON, CARMEN R. | 82. | BOURDONY BAEZ, VICTOR M. |
| 83. | BRACERO RABASSA, RAFAEL | 84. | BRUNO RIVERA, GLADYS E. |
| 85. | BUNKER PEREZ, OSCAR | 86. | BURGOS MORALES, BRENDA LIZ |
| 87. | BURGOS RIVERA, JUAN JOSE | 88. | CABALLERO MAISONET, MYRNA |
| 89. | CABAN ACEVEDO, JULIA A. | 90. | CABAN ARROYO, HERIBERTO |
| 91. | CABEZA HERNANDEZ, ÁNGEL | 92. | CABEZUDO PEREZ, IVONNE |
| 93. | CABRERA TORRES, SIGNA MAGALY: | 94. | CALDERON CARRASQUILLO, CARMEN V. |
| 95. | CALDERON CRUZ, CARMEN B. | 96. | CALDERON CRUZ, ENRIQUE |
| 97. | CALDERON DAVILA, CARLOS | 98. | CALDERON ILARRAZA, CARMEN |
| 99. | CALO BIRRIEL, MILAGROS | 100. | CAMACHO GOMEZ, GLORIMY |
| 101. | CAMACHO PEREZ, JUDITH | 102. | CAMARERO COLON, JOSE L. |
| 103. | CANTRES APONTE, CARMEN S. | 104. | CARABALLO ORTIZ, LUIS A. |
| 105. | CARDONA MEDINA, WILSON | 106. | CARDONA SANTANA., GAMALIER |
| 107. | CARDONA SERRANO, ROSA I. | 108. | CARRASCO BAQUERO, MARIA L. |
| 109. | CARRASQUILLO DIAZ, YOLANDA | 110. | CARRASQUILLO MULERO, ROSITA |
| 111. | CARRASQUILLO PACHECO, LOYDA G. | 112. | CARRASQUILLO ROMAN , SONIA |
| 113. | CARRASQUILLO SANTIAGO, CARMEN R. | 114. | CARRERO LOPEZ, DAVID |
| 15. | CARRILLO FIGUEROA, ELIZABETH | 116. | CARRION CASTRO, MARGARITA I. |
| 117. | CARRION CEDEÑO, MARGARITA | 118. | CARRION SANTIESTEBAN, ARLENE |
| 119. | CARTAGENA MERCED, LUZ M. | 120. | CASTILLO ROMAN, SYLVIA |
| 121. | CASTRO CANALES, MIRTA | 122. | CASTRO CARRION, BLANCA I. |
| 123. | CASTRO LAGUERRA, ANA VEDA | 124. | CASTRO RODRÍGUEZ, ELIZABETH |
| 125. | CAY MORALES, MARIA | 126. | CEDEÑO ROMERO, EVELYN |
| 127. | CENTENO FONTANEZ, ROSA I. | 128. | CHEVERE FRAGUADA, ZORAIDA |
| 129. | CHEVERE IZQUIERDO, SANDRA | 130. | CINTRON DE BORRALI, LILLIAM |
| 131. | CINTRON DIAZ, ADELMA DEL C. | 132. | CINTRON MORALES, JOSE A. |
| 133. | CINTRON RODRÍGUEZ, ANGELITA | 134. | CINTRON SANTANA, JARVIS |
| 135. | CLAUDIO ROSADO, EDUARDO | 136. | COLLAZO GONZALEZ, CARMEN |
| 137. | COLON ARROYO, ANA A. | 138. | COLON DE OTERO, LETICIA |
| 139. | COLON DIAZ, RAFAEL | 140. | COLON ORTEGA, CARMEN |
| 141. | COLON RAMOS, RAMON L. | 142. | COLON RIVERA, ANA M. |
| 143. | COLON ROSARIO, MARGARITA | 144. | COLON SANTOS, KARITZA |
| 145. | COLON TORRES, NEYSHA M. | 146. | CONCEPCION LAGUER, MARGARITA |
| 147. | CONCEPCION QUIÑONES, JOSEFINA | 148. | CONCEPCION RODRIGUEZ, MARIA DEL C. |
| 149. | CORDERO AVILA, ÁNGEL G. | 150. | CORDERO FERNANDEZ, MARIA J. |

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE SAN JUAN

AGOSTO MALDONADO, NILDA A.
DEMANDANTE
vs.

E L P E

DEMANDADO

CASO:K PE2005-0608
SALON:0907

PROCEDIMIENTOS ESPECIALES
INJUNCTION - CLASICO
CAUSAL/DELITO

NOTIFICACION DE SENTENCIA

EL SECRETARIO QUE SUSCRIBE NOTIFICA A USTED QUE ESTE TRIBUNAL HA DICTADO
SENTENCIA  EN EL CASO DE EPIGRAFE CON FECHA 16 DE SEPTIEMBRE DE 2010  QUE HA
SIDO DEBIDAMENTE  REGISTRADA Y  ARCHIVADA EN LOS AUTOS DE ESTE CASO, DONDE
PODRA USTED ENTERARSE DETALLADAMENTE DE LOS TERMINOS DE LA MISMA.

Y, SIENDO O REPRESENTANDO USTED LA PARTE PERJUDICADA POR LA SENTENCIA,
DE LA CUAL PUEDE  ESTABLECERSE  RECURSO DE  APELACION, DIRIJO A  USTED ESTA
NOTIFICACION, HABIENDO  ARCHIVADO EN LOS AUTOS DE ESTE  CASO COPIA DE ELLA
CON FECHA  DE   17 DE SEPTIEMBRE DE 2010.

GONZALEZ MORALES IVONNE
PO BOX 9021828
SAN JUAN, PR 00902-1828

ACEVEDO COLON MILAGROS
COND COLINA REAL
2000 AVE FELISA RINCON
BOX 1405
SAN JUAN, PR 00926

DIAZ LUGO MANUEL
PO BOX 9020192
SAN JUAN, PR 00902-0192

SAN JUAN, PUERTO RICO, A 17 DE SEPTIEMBRE DE 2010

LCDA. REBECA RIVERA TORRES
- - - - - - - - - - - - - - - - - - - - - - - -
SECRETARIO
POR: VANESSA NIEVES MORALES
- - - - - - - - - - - - - - - - - - - - - - - -
SECRETARIO AUXILIAR

O.A.T.704-NOTIFICACION DE SE  NCIA
TELETRIBUNALES:(787)759-1886, LLA, LIBRE DE COSTO(787)1-877-759-1886



COPY



1 NOV - 2012
1:38 pm
M. Cruz



31 de octubre de 2012

Lic. Ivonne González Morales
      Milagros Acevedo Colón

RE: CASO: NILDA AGOSTO MALDONADO
      KPE2005-0608

Nosotros los abajo firmantes demandantes del caso en referencia solicitamos se nos entregue a la mayor brevedad posible, copia de los cómputos realizados para la determinación del caso.

cc: Hon. Yanitsia Irizarry
      Secretaria
      Departamento de la Familia

Pro-Sol
N. Tricoche De Jesús
   cel-787-942-9479
Argenita Hernández
   cel-787-340-4194
Igma M Cabrera Torres
   cel-939-207-7594
Margarita Correa Castro
Gonzaledy Serrano
[illegible] Alejandro
Mayda Rivera
Francisco Ramos Tays

María Cruz Mateo
Elizabeth Echevarría Laureano
Edith Aguilar
Carmen Estives
Alma Villegas
Zoraida Chévere
Juan Estives
Ramon Díaz
Myrna Rivera
[illegible] Peña

Carmen Román
Luette González
Zulma Sondra
Nitza Medina

y otros

LAW OFFICES
## IVONNE GONZALEZ MORALES

P.O. BOX 9021828
SAN JUAN
PUERTO RICO 009021828
TEL. (787) 724-5323
FAX (787) 200-5927

GALLARDO BLDG.
SUITE 305
301 RECINTO SUR ST.
OLD SAN JUAN, PUERTO RICO 00902

### MEMORANDO

**A**          TODOS LOS DEMANDANTES CASO NILDA AGOSTO Y OTROS VS. ELA K PE2005-0608

**DE:**        LCDA. IVONNE GONZALEZ MORALES Y LCDA. MILAGROS ACEVEDO COLON

**FECHA:**     14 de noviembre de 2012

**ASUNTO:**    PAGO PARCIAL SENTENCIA Y DE HONORARIOS DE ABOGADO

Como es de su conocimiento, todos los empleados demandantes suscribieron contrato de servicios profesionales con las abogadas suscribientes, para que lo representáramos en su reclamación salarial contra el Departamento de la Familia, y/o ARV, donde se acordó el pago de honorarios del 25% de las sumas que obtuviéramos en su beneficio.

Luego de haber trabajado más de 8 años en un pleito sumamente complejo y contencioso, donde inclusive, tuvimos que comparecer ante el Tribunal Supremo para oponernos a las pretensiones del Departamento para que se desestimara la demanda salarial radicada o en la alternativa, se aplicara lo dispuesto en la Ley 180, y solo se les pagara a ustedes un retroactivo de tres años, en julio de 2012, el Tribunal Supremo confirmó la Sentencia dándole a los empleados la razón.

El día 5 de noviembre de 2012, en vispera de las elecciones generales, el Departamento de la FAMILIA, en abierto desacato del procedimiento establecido en las Órdenes judiciales obtenidas, comenzó a entregar directamente y de forma selectiva a empleados demandantes pagos que, según dicha parte representan un 25% de lo que se les adeuda. Por lo que solicitamos la cooperación de todos nuestros clientes, para que lo más pronto posible, nos informen, si recibieron algún pago y nos remitan por correo copia de la carta, del comprobante y cheque recibido y el pago que corresponde a los honorarios de abogado del 25% de lo recibido, según acordado en el contrato de servicios profesionales que suscribieron con nuestra oficina.

De igual modo, necesitamos información sobre los nombres de los demandantes que no recibieron pago y ¿qué fue lo que le dijeron cuando fueron a preguntar por su cheque y el nombre del funcionario y de la agencia que lo atendió.

**Por lo tanto, recurrimos ahora a ustedes para que nos respalden, pues la realidad es que nosotras, a base de grandes sacrificios personales no hemos escatimado esfuerzos, tiempo y dinero para crear confusión y causarnos daños, y lograr que se les hiciera justicia salarial. Como comprenderán, necesitamos se nos pague los honorarios del adelanto recibido, no sólo para seguir operando, sino para pagar las deudas y compromisos contraídos y terminar el trabajo que nos queda por realizar.**

**A esos fines, les informamos que el lunes 19 de noviembre de 2012, que es día feriado, estaremos en nuestra oficina, localizada en el Edificio Gallardo, 301 calle Recinto Sur, Oficina 305, [frente Estacionamiento de Doña Fela, viejo San Juan], de 9:30 Am a 12:00 M. y de 1:30 a 3:00pm para recibir los pagos de honorarios e información solicitada y contestar cualquier pregunta que no haya sido explicada en el presente memorando.**

Por otra parte, hemos recibido llamadas telefónicas de demandantes informando sobre comentarios de personas malintencionadas, ajenas al caso, que están circulando para crear confusión y causarnos daños, sobre los cuales consideramos que la mejor forma de acreditar nuestra labor y compromiso, es remitiéndoles a ustedes un resumen de los trámites realizados ante los diversos tribunales que han entendido en el caso de Nilda Agosto y otros, supra, desde que advino final y firme la Sentencia y cuyo informe se aneja al presente Memorando.

1

ANEJO:

TRAMITES EFECTUADOS ANTE LOS TRIBUNALES DE JUSTICIA POR LAS LCDAS. IVONNE GONZALEZ MORALES Y MILAGROS ACEVEDO COLON EN EL CASO DE NILDA AGOSTO Y OTROS. VS. DEPARTAMENTO DE LA FAMILIA Y ARV

CASO NUM. KPE2005 – 0608     [TRIBUNAL PRIMERA INSTANCIA SALA DE SAN JUAN]
KLAN2010-001703   [TRIBUNAL DE APELACIONES]]
CA-2012-0015      [TRIBUNAL SUPREMO}
KLCE2012-01333    [TRIBUNAL DE ADELACIONES]

1. El **29 de junio de 2012**, el **TRIBUNAL SUPREMO** declara No Ha Lugar la segunda Moción de Reconsideración radicada por el DF y les advierte que se tiene que atener a lo resuelto en la Sentencia dictada. **[caso núm. CA-2012-0015]**.

2. El **19 de julio de 2012** nuestra oficina radica ante el **Tribunal de Primera Instancia [ TPI], sala de San Juan** en el caso **KPE2005-0608, Moción bajo la Regla 51.4 pidiendo cumplimiento de Sentencia,** al haber transcurrido el término para que la Sentencia adviniera final y firme.  Esta Moción se apoyó en la información que nos suministró uno de los demandantes, Sr Ariel Aulet, quien estuvo presente en las vistas públicas celebradas ante la Comisión de Hacienda del Senado en mayo del 2012, donde se discutió el presupuesto del Departamento de la Familia y donde la Secretaria, declaró bajo juramento que OPG tenia identificadas partidas en el presupuesto del Departamento para el pago de la Sentencia [O sea, 20 millones].

3. Conforme a nuestra solicitud, con fecha **20 de agosto de 2012**, el TPI dicta Orden de pago. Además, le ordena al Departamento de la Familia que consigne el pago en el tribunal o entregue a las abogadas de los demandantes los cheques correspondientes, asi como los informes finales de cómputos trabajados por los peritos, procesados en computadora, y los informes de nómina finales requeridos, para poder auditar los pagos y determinar su corrección.

4. El **29 de agosto de 2012** el DF, inconforme con la Orden de Pago, radica ante el TPI Moción de Reconsideración, para solicitar que **se dejara sin efecto la misma**, sin someter declaraciones juradas o documentos que acreditaran sus alegaciones sobre insuficiencia de fondos.  Entre otros, el Departamento acusa al TPI de indebida interferencia con el poder ejecutivo, por ser la Orden dictada contraria a las Normas sobre Administración Presupuestaria, y porque se le impondría al Departamento consecuencias de índole penal de la Ley 147, ya que al ser un año electoral, el Departamento plantea que no puede incurrir en gastos u obligaciones que excedan del cincuenta 50 % de la asignación presupuestaria de cada partida. Además, planteó que el único remedio que tienen los demandantes para obtener el pago de la Sentencia era esperar que se solicitara, en el próximo Presupuesto del 2013-14 y se asignen fondos por la legislatura, según resuelto en el caso de Librotex v AAA.

5. El **31 de agosto de 2012** y ante la evidente falta de prueba, el TPI declara NO HA LUGAR la Moción de Reconsideración del DF.

6. El **26 de septiembre de 2012** el DF, inconforme con el dictamen radica un recurso de CERTIORARI ante el **TRIBUNAL DE APELACIONES [TA]**, caso KLCE-2012-01333, donde el DF solicita que se revoque  la Orden de Pago y acompaña Moción en Auxilio de Jurisdicción.  **Ese mismo día**,  el Tribunal de Apelaciones dicta Resolución paralizando la Orden de Pago, hasta que se resuelva el caso.

7. El **2 de octubre de 2012** y para establecer la falta de méritos de la orden de paralización, nuestra oficina emplaza personalmente, a tenor con la Regla 51.4 de Procedimiento Civil, a la Secretaria de la Familia y la cita para que comparezca a una DEPOSICION en nuestra oficina, a celebrarse el 17 de octubre de 2012 y donde debía traer los documentos que acrediten que no tiene los fondos para cumplir con la Orden de pago dictada en cumplimiento de la Sentencia.

2

8.  El **11 de octubre de 2012**, nuestra oficina radica ante el TA, Comparecencia Especial solicitando prórroga bajo la Regla 72, y le incluye al tribunal la citación y producción de documentos tramitada e informa que la Producción de documentos está pautada para el día 17 de octubre de 2012.

9.  El **22 de octubre de 2012**, el TA autoriza a los demandantes prórroga de 10 días finales, para poder realizar el descubrimiento pautado.

10.  Mientras tanto, el DF radica el **15 de octubre de 2012** ante el TPI, Moción para informar sobre la Orden de Paralización que obtuvo de forma expedita e unilateralmente del tribunal de Apelaciones y a base de ello, solicita se le exima de presentarse a la DEPOSICION pautada para el 17 de octubre y no comparece a la misma. Por su parte, el TPI , el 18 oct expresa "que la Orden del Tribunal de Apelaciones habla por sí misma"

11.  Ante el incumplimiento del DF, el **26 de octubre de 2012** nuestra oficina radica Moción Urgente ante el TA, para informar que la Secretaria del DF no compareció a la Deposición y solicitamos Modificación de Orden y extensión prórroga, para que se nos permita deponer a la Secretaria y establecer la falta de mérito de su alegación sobre que no tiene dinero.

12.  Así las cosas, el **29 de octubre de 2012**, nuestra oficina nuevamente radica ante el TA Moción, respaldada por declaración jurada, donde hace la denuncia de que, a pesar de haberse planteado que el DF no tenía fondos, y solicitó la paralización de la Orden de pago, teníamos información de que el Departamento estaba preparando los cheques. También, se denunció que el DF no había cumplido con la Orden recurrida, de entregar a las abogadas de los demandantes los informes finales de cómputos preparados por los peritos, y el informe final de nómina.  Por lo que volvimos a solicitar que se emitiera una Orden, so pena de desacato, para que el DF cumpliera la Orden de Pago y procedimiento de entrega de cheques establecidos en la Orden recurrida.

13.  El **30 y 31 de octubre de 2012** el TA declara No Ha Lugar la Moción para que se permita Producción de Documentos y concede a los demandantes término de final de 5 días laborables para radicar la Oposición al CERTIORARI.

14.  El **5 de noviembre de 2012**, el DF comienza a entregar a empleados directamente, en abierto incumplimiento de los procedimientos establecidos en la Orden del 20 de agosto de 2012 y en violación a estatutos vigentes aplicables, cheques en pago parcial de la Sentencia.  Según la Secretaria: "OPG encontró las cuentas de economías" cuando paradójicamente nuestra OFICINA las había identificado previamente en la citación a la DEPOSICION que cursamos el 2 de octubre de 2012.

15.  El **7 de noviembre de 2012** y habiéndose recibido en nuestra oficina copia de algunos de los cheques entregados a los empleados el 5 de noviembre de 2012, radicamos ante el TA, Urgentísima Moción solicitando se le entregaran a las abogadas los cheques y los informes solicitados y se le impusieran severas sanciones al DF por desacato.  El 13 de noviembre el TA concede al DF 20 días para expresarse sobre el desacato.

16.  El **8 de noviembre de 2012**, nuestra oficina radica ante el TA Moción en Oposición al recurso de CERTIORARI.

RESUMEN SOBRE LOS ASUNTOS RELEVANTES PENDIENTES:

Como verán de la cronología de fechas y trámites realizados, fue luego que nosotras citamos a una deposición a la Secretaria del DF y le requerimos que nos produjera para el 17 de octubre de 2012 los informes fiscales donde se acreditara que dicha parte no tenía dinero, que no le quedó a la Secretaria otra alternativa que **admitir**, que OGP había identificado dentro del presupuesto del DEPARTAMENTO Y ADMINISTRACIONES "economías" y apresuradamente comienza a pagar parcialmente la deuda, para evitar se le encuentre en temeridad.  Precisamente, a consecuencia de nuestras estrategias y rápida acción, según acreditado, ustedes demandantes recibieron ANTES DE LOS SEIS MESES, de haber advenido final y firme la sentencia, un pago del 25% de la cantidad que se le adeuda.

3

También les informamos que al presente están pendientes de resolver algunos planteamientos individuales, que el Departamento de la Familia ha presentado contra un grupo pequeño de empleados donde, entre otros, se alega que éstos: (1) no tienen derecho al pago, por estar sus reclamaciones prescritas según dispuesto bajo el **Art. 1867 del Código Civil**, 31 L.P.R.A. sec. 5297, el cual establece un plazo trienal [tres años] para instar una reclamación salarial; (2) el empleado le "adeuda" al Departamento dinero, ya que devengaron salarios más altos que el mínimo reconocido en las nuevas escalas salariales que se adoptaron; (3) Los empleados voluntariamente renunciaron a cualquier reclamación, al acogerse al programa de renuncias y retiro incentivado bajo la Ley 7

Sin embargo, se les informa, que para poder resolver cualquier cuestionamiento sobre los pagos realizados, tenemos que esperar que el TA resuelva el CERTIORARI y la Moción sobre desacato que radicamos, y el DF entregue los documentos solicitados y rinda cuentas.

Esperamos que la información incluida les provea una idea clara sobre el trabajo intenso que ha realizado nuestra oficina. Además, recabamos **la importancia que tiene contar con la cooperación de todos, y nos remitan la información solicitada, con el pago de nuestros honorarios sobre las sumas que cada uno ha recibido, pues necesitamos con urgencia el dinero para poder seguir operando y cubrir gastos, según indicado.**

También le damos las gracias por la confianza depositada en nosotras y expresiones de apoyo y solidaridad que muchos de ustedes nos han manifestado.

4

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| NILDA A. AGOSTO MALDONADO Y OTROS<br>PARTE DEMANDANTE | CIVIL NUM. KPE 2005-0608<br>(907) |
| V. | SOBRE |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO,<br>DEPARTAMENTO DE LA FAMILIA Y OTROS<br>PARTE DEMANDADA | SENTENCIA DECLARATORIA;<br>Y RECLAMACIÓN DE SALARIOS |

## SENTENCIA

Los demandantes, que se detallan en el anejo de esta Sentencia, que se incorporan por referencia y se hace formar parte integra de ésta, son empleados que ocupan puestos con diferentes clasificaciones y trabajan o han trabajado en el Departamento de la Familia y sus administraciones: Secretariado, ADFAN, ADSEF, ASUME y ACUDEN.

Los empleados demandantes presentaron la demanda de epígrafe el 23 de febrero de 2005. Solicitaron una Sentencia Declaratoria que decretara la nulidad del Memorando General 5-86 de fecha 23 de abril de 1986, emitido por la Oficina Central de Administración de Personal (OCAP) hoy Oficina de Recursos Humanos del Estado Libre Asociado de Puerto Rico (ORHELA), por estar en conflicto con las disposiciones establecidas bajo la Ley de Retribución Uniforme, Ley 89 de 12 de julio de 1979, 3 L.P.R.A. § 760 *et seq.* (derogada) y con el principio de igual paga por igual trabajo garantizado por el Art. II, sección 16 de la Constitución del Estado Libre Asociado de Puerto Rico.

Los demandantes reclaman que sus salarios se afectaron cuando el Departamento de la Familia implantó el salario mínimo federal que entró en vigor el 15 de abril de 1986 y posteriores aumentos, ya que se dejó inoperante la estructura salarial existente y se adoptó un sistema de pago distinto e incompatible con las disposiciones de la Ley de Retribución Uniforme, *supra*. Arguyen que se violó su derecho a recibir una compensación acorde con las funciones que realizan y la jerarquía, niveles de responsabilidad y complejidad de sus respectivos puestos, a tono con el valor de su trabajo dentro del mercado de empleo.

SENTENCIA
K PE 2005-0608
PAGINA 2

Reclaman que esta situación se repitió cada vez que entraron en vigor nuevos aumentos de salario mínimo. Alegan que esa actuación constituye un acto negligente, temerario, fraudulento y de enriquecimiento injusto, por cuanto los demandados no proveyeron un trato justo, ni equitativo en la fijación de los salarios de los demandantes.

Además, plantean violaciones a la sección 218 de la Ley de Salario Mínimo "Federal Labor Standard Act of 1938", 29 USC 201, *et seq.*, al bajar las normas de trabajo o beneficios más altos existentes en nuestra jurisdicción, a la derogada Ley 5 de 20 de noviembre de 1975, 3 L.P.R.A. § 1338, conocida como Ley de Servicio Público y a la reglamentación de OCAP que imponían a las agencias del ELA la obligación de implantar un programa de reducción de jornada de no contar con los fondos necesarios para implantar el salario mínimo federal.




También reclaman que como resultado de los ajustes ilegales practicados, los demandantes sufrieron el menoscabo de los aumentos legislativos recibidos y de los aumentos por años de servicios.

El 27 de abril de 2005, la parte demandada sometió *Contestación Responsiva a Demanda*. El 20 de julio de 2005, la demanda fue enmendada para incluir nuevos demandantes y reformular alegaciones.

En cumplimiento de Orden dictada por el Tribunal, los demandantes sometieron los hechos sobre los cuales no existe controversia y las estipulaciones de las partes adoptadas en el caso de *Carmen Socorro Cruz Hernández y otros v. Departamento de la Familia*, civil número KAC1991-0665 del TPI, Sala de San Juan, incluyendo las escalas de retribución adoptadas por el Departamento de la Familia y ORHELA. Además, se sometió para adjudicación la aplicabilidad al caso de autos de lo resuelto por el Tribunal Supremo en *Santiago Declet y otros v. Departamento de la Familia*, 153 D.P.R.208 (2001).




El 27 de enero de 2006, los demandantes solicitaron al Tribunal que dictara Sentencia Sumaria Parcial basando su solicitud en los hechos sobre los cuales no existía controversia.

El 26 de abril de 2006, en atención al hecho de que las partes coinciden en que los reclamos son idénticos a los reclamos de *Carmen Socorro Cruz Hernández y otros v. Departamento de la Familia*, supra, el cual estaba en una etapa adelantada de los procedimientos, mediante *Moción Conjunta Solicitando Paralización Provisional de los*

SENTENCIA
K PE 2005-0608
PAGINA 3

*Procedimientos*, solicitaron la paralización provisional de los procedimientos y acordaron que una vez adviniera final y firme la Sentencia de ese caso (K AC1991-0665), la acatarían como norma para resolver el caso de autos.

El 13 de abril de 2007, la parte demandante mediante *Moción Solicitando Reapertura del Caso y que se Dicte Sentencia Parcial* notificó al Tribunal que se había dictado Sentencia en el caso de *Carmen Socorro Cruz Hernández y otros vs. Departamento de la Familia*, supra, y solicitó la reapertura de los procedimientos.

El 24 de agosto de 2007, las partes sometieron *Moción Conjunta Notificando Estipulaciones de Hechos y de Prueba Documental*. En esa fecha, se le ordenó a la parte demandada determinar, mediante los cómputos correspondientes, la cantidad que se adeuda a cada demandante.

Posteriormente se celebraron múltiples vistas de seguimiento donde se discutieron aspectos procesales del caso y el status de los cómputos sobre los salarios adeudados a cada demandante conforme a las nuevas escalas salariales adoptadas.

Con fecha 11 de marzo de 2010, la representación de los demandantes sometió el Informe Final de los peritos de las partes que es el resultado del consenso sobre las cantidades adeudadas a los demandantes de manera individual.

El 7 de abril de 2010, se concedió al Estado quince (15) días para que se expresara en cuanto a la *Moción Sometiendo Informe de Perito*. El 7 de junio de 2010, aprobamos el informe pericial.

En consideración a lo antes expuesto, acogemos las siguientes estipulaciones de hechos y documentos sometidos por las partes:

### ESTIPULACIONES DE HECHOS

1.  Todos los demandantes son empleados de carrera que trabajan o han trabajado como empleados del Departamento de Servicios Sociales, hoy Departamento de la Familia ocupando puestos de secretarias, oficinistas, funcionarios ejecutivos, técnicos de servicios sociales, recaudadores auxiliares, asistentes de servicios sociales, oficiales en contabilidad, etc. Estos puestos fueron asignados anualmente por el Director de la Oficina Central de Administración de Personal, en adelante OCAP, entre los años 1986 a 1996, a las escalas 1 a la 19 del Plan de Retribución de la Administración Central y posteriormente al adoptarse el Plan de Retribución creado por la agencia como Administrador Individual.

2.  El 15 de abril de 1986 comenzó a regir en el gobierno de Puerto Rico la Ley de Salario Mínimo Federal que establecía un salario mínimo de ($3.35) por hora trabajada.

*SENTENCIA*
*K PE 2005-0608*
*PAGINA 4*

3. Para el 15 de abril de 1986 existían 39 tipos de escalas salariales. De éstas, las primeras 11 escalas recibían sueldos por debajo del Salario Mínimo Federal.

4. Que al entrar en vigor el salario mínimo federal, el 15 de abril de 1986, el Departamento de Servicios Sociales, hoy Departamento de la Familia, equiparó el sueldo de los empleados asignados a estas primeras 11 escalas a base de $3.35 por hora, quedando inoperante el Plan de Retribución.

5. Que al efectuarse el ajuste, todos los empleados que pertenecían a dichas escalas se les pagó uniformemente el mismo salario que recibieron al conserje y el trabajador de acuerdo al salario mínimo federal de $3.35 por hora.

6. Que posteriormente, el Departamento de Servicios Sociales, hoy Departamento de la Familia, elaboró un Plan de Retribución Uniforme que estableció nuevas escalas salariales, al cual Plan se le dio fecha de vigencia de 1 de abril de 1996. Este plan contiene 33 escalas salariales, en lugar de 39 escalas salariales que existían en 1986. Este plan fue elaborado por el Departamento con la colaboración y consulta de la Oficina Central de la Oficina de Administración de Personal (OCAP).

7. Que la situación se volvió a producir en los años 1990, 1991, 1992, 1993, 1994 y cada vez que ocurría la implantación de nuevos aumentos en virtud de la Ley de Salario Mínimo Federal. Por lo que mientras se iba aumentando el salario mínimo federal, se continuaron alterando nuevas escalas adicionales. De esa forma, ya para el 1 de abril de 1996, fecha previa a que entrara en vigor el Plan de Retribución del Departamento de Servicios Sociales, hoy Departamento de la Familia, se habían afectado 19 escalas salariales.

8. En septiembre de 1997, cuando volvió a aumentar el salario mínimo de los empleados en el Departamento, queda inoperante el Plan de Retribución de 1996.

9. El 1 de abril de 1985, en su función de brindar asesoramiento a las agencias del gobierno, la OCAP emitió el Memorando Especial Núm. 8-85 donde informó a los Secretarios y jefes de agencia la decisión del caso García v. San Antonio Metropolitan Mass. Transit Authority.

"Como consecuencia de esa decisión, a los empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de sus Gobiernos Municipales se les debe pagar el salario mínimo federal y compensar el tiempo extra a razón de tiempo y medio mediante pago en efectivo".

10. El 18 de abril de 1985, el Director de la OCAP le remitió al entonces gobernador de Puerto Rico, Rafael Hernández Colón, un Memorando sobre el siguiente asunto: "Alternativas de estructuras salariales para proveer aumentos de sueldos a los empleados públicos bajo la Administración Central y cumplir con el mínimo federal".

La comunicación proponía un plan de mejoramiento salarial en cuatro etapas donde se sobrepasaba el salario mínimo federal para el 1988 e incluía como anejo las escalas de sueldos propuestas.

En relación al personal de confianza, la citada comunicación expone: .... "no es necesario tomar acción inmediatamente ya que la escala básica de la estructura de sueldo que se aplica $505 - 657 al presente no tiene clases asignadas. El sueldo más bajo en el Servicio de Confianza es el correspondiente a la clase de chofer que está asignada a la segunda escala: $549 - 714."

11. El 2 de julio de 1985, la OCAP emitió y circuló entre las agencias, el Memorando General 7-85, para informar a todos los jefes de agencias que la decisión del Hon Tribunal Supremo Federal García v San Antonio Metropolitan Mass Transit Authority, 469 US 528 fue confirmada e incluyó información general sobre la forma de compensar las horas extras.

*SENTENCIA*
*K PE 2005-0608*
*PAGINA 5*

12. El 5 de septiembre de 1985, la OCAP emitió y circuló el Memorando General Núm. 9-85 dirigido a todos los jefes de agencia sobre "La Interpretación de aspectos relativos a la retribución de los Empleados" que incluyó, en el inciso A, la norma de interpretación del Art. 3 de la Ley Núm. 3 de 30 de junio de 1977. Mediante esa directriz, se reconoció la intención legislativa, según expuesta al Art. 3 de "ampliar en esa misma proporción las escalas de retribución para los empleados que la reciben".

En lo que atañe a los empleados que no le hicieron efectivo el aumento por estar recibiendo sueldos máximo de la escala, se impartió instrucción a las agencias de "reevaluar los casos en conformidad a esa interpretación".

13. El 17 de septiembre de 1985, la OCAP le remitió al Lcdo. Guillermo Mojica Maldonado, comunicación relativa al efecto presupuestario que tendría la implantación de una nueva estructura salarial para el Servicio de Carrera de la Administración Central con el propósito de cumplir con la implantación del Salario Mínimo Federal.

14. El 14 de octubre de 1985, la OCAP emitió el Memorando Especial Núm. 25-85 dirigido a todos los jefes de agencias conteniendo la ULTIMA JURISPRUDENCIA RELACIONADA CON LA ADMINISTRACIÓN DE PERSONAL. Esta incluyó un resumen de la decisión del Honorable Tribunal Supremo Federal en García v. San Antonio Metropolitan Mass Transit Authority, 469 US 528. Dicha comunicación informa: "....el salario mínimo federal y el pago por razón de tiempo extra según se reconocen en éstos en la Ley Federal de Normas Razonables del trabajo, son de aplicación para los empleados del Estado Libre Asociado a partir del día 15 de abril de 1985".

15. El 20 de noviembre de 1985, el director de OCAP le remitió al entonces Gobernador de Puerto Rico, un Memorando sobre: "Aumento de sueldo a los Empleados Públicos" donde informa: " Al presente se hace necesario cumplir con el salario mínimo federal al 15 de abril de 1986, lo que posiblemente requiere que se efectúe en una sola etapa:"

16. Del contenido del documento surge que OCAP diseñó una nueva estructura salarial para el servicio de carrera de la Administración Central basada en una escala mínima de $545-736 que cumpliía con el salario mínimo federal vigente de $3.35 por hora además consigna: "Esta estructura la implantaríamos ajustando el sueldo actual de los empleados a la cuantía o tipo retributivo inmediato superior en la escala correspondiente en la nueva estructura para reducir su efecto presupuestario."

17. El 26 de marzo de 1986 la OCAP emitió el Memorando General 3-86 donde actualizó a los jefes de agencia la información sobre la aplicación de la Ley de Salario Mínimo remitida referente al caso de García, supra. Además les informó que el FLSA entraría en aplicación en el gobierno el 15 de abril de 1986, ofreciéndole más detalles sobre la aplicabilidad de esa Ley.

18. Que el 15 de abril de 1986 comenzó a regir en el gobierno de Puerto Rico la Ley de Salario Mínimo Federal que establecía un salario mínimo de $3.35 por hora trabajada. En esa fecha, el Departamento equiparó el sueldo de los empleados demandantes según consignado en las Estipulaciones número 3 4 y 5 que anteceden.

19. Luego de esto, el 15 de abril de 1986, se presentó el P. de la C. 493 para proponer una enmienda a los incisos (2) y (3) del Art. 7 de la Ley de Retribución Uniforme, convertido en la Ley Núm. 149 del 18 de julio de 1986. Esta ley tuvo el propósito de dotar a OCAP y su Director con mecanismos de mayor flexibilidad para practicar ajustes y extensiones a las escalas de retribución de la Administración Central y eliminó el requisito de obtener la aprobación previa del Gobernador para efectuar tales transacciones.

SENTENCIA
K PE 2005-0608
PAGINA 6

20. El 23 de abril de 1986, mediante el Memorando General 5-86, la OCAP informó a los jefes de agencia la aplicación del salario mínimo de 3.25 hr., efectivo al 15 de abril de 1986 e incluyó una directriz para practicar los ajustes salariales. Referente a los Municipios, les instruyó para que implantaran un plan de reducción de jornada diaria de trabajo si determinaban insuficiencia de fondos para implantar el salario mínimo.

21. Al emitir esa directriz, OCAP no consultó con el Secretario del Trabajo Federal para verificar si cumplía o no con los requerimientos de la Ley de Salario Mínimo. [Contestación de OCAP a Requerimiento Admisiones en el caso de Carmen Socorro Cruz y otros vs. ELA y otros Civil KAC 91-0665 (505)].

21. El 30 de junio de 1986, OCAP emitió el Memorando Núm. 3-86 informando la décima Asignación de Clases del Servicio de Carrera de la Administración Central: "Para este año fiscal no se han registrado cambios a las escalas salariales. No obstante, es mandatorio que las agencias cumplan con las disposiciones de la Ley de Normas Razonables del Trabajo referente al salario mínimo federal". El Anejo I del Memorando 3-86 incluye una relación de las enmiendas hechas a la anterior asignación de clases durante el transcurso del año asignando clases a escalas superiores.

23. Respecto a los empleados irregulares, regidos por la Ley 110 del 26 de junio de 1958, según enmendada y no obstante haber reconocido en el Memorando Núm. 3-86, supra, del 23 de abril, la aplicación del salario mínimo de $3.15 hr., la OCAP emitió con fecha de 22 de agosto de 1986, el Memorando General Núm. 12-86 sobre: "Enmienda a las escalas de Paga para el personal Irregular". En esa nueva escala, el sueldo ancla del Grupo I fue desarrollado a base de un sueldo de $3.00 hr., por lo que está por debajo del salario mínimo federal establecido.

24. El salario mínimo federal aumentó en Puerto Rico en las fechas y sumas que se indican a continuación:

| | | |
|---|---|---|
| 15 | abril de 1986 | a 3.25 hr. |
| 1 | abril de 1990 | a 3.55 hr. |
| 1 | abril de 1991 | a 3.70 hr. |
| 1 | abril de 1992 | a 3.90 hr. |
| 1 | abril de 1993 | a 4.05 hr. |
| 1 | abril de 1994 | a 4.25 hr. |
| 1 | abril de 1996 | a 4.45 hr. |
| 1 | sept. de 1997 | a 5.15 hr. |
| 1 | sept. de 2000 | a 5.80 hr.[1] |
| 24 | julio de 2007 | a 5.85 hr. |

25. La norma adoptada por el Departamento para implantar los ajustes salariales al entrar en vigor el salario mínimo y posteriores aumentos, según identificados en el apartado anterior, equiparó el sueldo de los demandantes al salario recibido por el trabajador y el conserje.

26. A consecuencia de lo anterior, en los años 1990, 1991, 1992, 1993 y 1994, 1997 y hasta el presente, con motivo de la implantación de nuevos aumentos en la Ley de Salario Mínimo Federal y mientras se ha estado aumentando el salario mínimo federal, se continuaron alterando nuevas escalas. De esa forma, ya para el 1 de abril de 1996, fecha previa a que entrara en vigor el Plan de Retribución del Departamento de Servicios Sociales, hoy Departamento de la Familia, se habían afectado 19 escalas salariales.

---

[1] Aumento de salario mínimo de Puerto Rico a $5.80 hora por Ley 320 de septiembre de 2000 efectivo a 1 septiembre de 2000.

SENTENCIA
K PE 2005-0608
PAGINA 7

27.   En el 1991, el Departamento de Servicios Sociales se constituyó  en un administrador individual mediante la Orden Ejecutiva Número OE-1991-46, firmada por el entonces Gobernador de Puerto Rico, Rafael Hernández Colón confiriendo al Secretario de ese Departamento facultad para adoptar su propio Plan de Clasificación y Retribución.

28.   Mediante el Memorando Especial Núm. 26-93, de 1 de julio de 1993, la OCAP reconoció y afirmó la obligación de los jefes de agencias Administradores Individuales, de atemperar el Plan de Retribución a la legislación federal aplicable al servicio público.

29.   El 3 junio de 1994, la OCAP emitió el Memorando Núm. 5-94  dirigido a los Señores Jefes de las Agencias Administradores Individuales del Sistema de Personal sobre: "Asignación de las clases de puestos a las escalas de retribución efectivo al comienzo de cada año fiscal actualización de las estructuras retributivas salario mínimo federal: En lo pertinente lee así:




      "Los administradores individuales que aún continúan utilizando los planes que regían para la Administración Central deben tomar conocimiento que por no estar en funcionamiento dicho sector del Sistema de Personal no es procedente efectuar la asignación de las clases a las escalas correspondientes en tales planes.  A éstas le reiteramos que es imperativo y prioritario que desarrollen e implanten estos instrumentos de trabajo. (Véase Memorando Especial Núm. 26-93 y Memorando Especial Núm. 13-94 que le cursamos sobre este asunto.)"

30.   El Memorando 5-94, supra, lee: "Actualización de las Estructuras Retributivas

      El inciso 1 del Artículo 2 de la Ley de Retribución Uniforme establece que es obligación de los Administradores Individuales mantener al día los planes de retribución que adopten para los servicios de carrera y de confianza.  Por esta razón, las agencias que tienen aprobados e implantados sus propios planes de clasificación y retribución que tienen vigentes responden a lo dispuesto en la Sección 4.6 del Reglamento de Retribución Uniforme, particularmente en los incisos (2), (3), (5), (6) y (8)."



31.   De otra parte, el Memorando 5-94 expresa:

      "Algunas agencias no están enviando anualmente la copia correspondiente a nuestra oficina, lo cual es indicativo de que no han puesto en observancia las mencionadas normas legales y reglamentarias".

32.   Mientras se mantenía inoperante por los demandados la escala de retribución del Departamento de la Familia, la OCAP continuó la práctica de autorizar la asignación de múltiples clases a escalas superiores.

33.   Para el 1994, OCAP redactó dos documentos titulados:

      A.   "Relación de la clase en el Servicio de Carrera que se han  impactado con la aplicación del Salario Mínimo Federal".

      B.   "Clases reasignadas a Escala de Retribución Superiores desde el primero de abril de 1986 hasta el presente".

34.   Así las cosas, en julio de 1996, el Departamento de la Familia adoptó un Plan de Clasificación y Retribución.  El apartado III, del Plan dispone:

      "Descripción de la estructura de salarios. La estructura salarial adoptada consiste de veintitrés (23) escalas de sueldos. El número de escalas necesarias para cubrir las doscientas diez (210) clases de puestos resultantes del estudio de clasificación,

*SENTENCIA*
*K PE 2005-0608*
*PAGINA 8*

se determinó a base de la agrupación de clases de puestos tomando en consideración los niveles de complejidad o dificultad del trabajo, la magnitud de la responsabilidad y el grado de autoridad, elementos que entre otros, constituyen las demandas de los puestos asignados a cada clase de puestos. También se tomó en consideración las dificultades en reclutamiento y retención existentes en algunas clases de puestos".

"El salario base de la estructura es de setecientos ochenta dólares ($780.00) mensual."

35. Cuando el Departamento practicó la correspondiente asignación de los puestos ocupados por los demandantes a las escalas del 1996, se re-estableció la diferencia salarial existente entre las diferentes categorías de puestos que habían quedado inoperantes desde abril de 1986.

36. En su mensaje ante la 5ta. Sesión Ordinaria de la Décima Segunda Asamblea Legislativa de Puerto Rico, al 24 de enero de 1995, el entonces Gobernador de Puerto Rico expresó:

"La situación del ELA y gobierno de Puerto Rico  tuvo una franca recuperación económica. Se instrumentaron dos reforma contributivas, se aprobó legislación para aumentar sustancialmente los salarios de los policías, bomberos, enfermeras, oficiales de custodia, maestros y otros  grupos de empleados públicos".

37. El 31 de enero de 1996, el periódico El Nuevo Día publicó que al cierre del presente año fiscal existía un excedente en caja de 300 millones.

38. El 1ro. marzo de 1996 se hizo efectiva una enmienda al Plan de Clasificación de Puestos según propuesto por el Departamento y aprobado por OCAP, para asignar varias clases de puestos a escalas superiores de retribución, quedando vigente el Plan de 1996.



39. Mediante el Memorando Especial #51-96 sobre: "Nuevo Salario Mínimo Federal efectivo el 1ro. de octubre de 1996 y el 1ro. de septiembre de 1997", la Directora de OCAP notificó:

"...que a partir del primero de octubre de 1996, los empleados del gobierno estatal, independientemente de su status o categoría, están cubiertos por el nuevo Salario Mínimo Federal de $4.75 la hora".  "A partir del 1ro. de septiembre de 1997 el Salario Mínimo Federal será de $5.15 la hora".

40. En junio de 1997 y mediante el Memorando Núm. 8-97, la OCAP enmendó la Guía de Clasificación de Funciones y Escalas de Paga del Reglamento para el Personal Irregular para conformarlas con el nuevo salario mínimo de $5.15 hr., efectivo al 1 de septiembre de 1997.

41. El 20 de marzo de 1998, el Departamento hizo efectivo su Tercera Asignación de Clases dejando sin cambios la estructura salarial del servicio de carrera que adoptó en el 1996. Con esta, se mantuvo inoperante el Plan de Retribución de referencia, visto el aumento habido en el Salario Mínimo.

42. El 25 de octubre de 1997, el Departamento realizó otra revisión de las asignaciones de clases a escalas superiores y creó nuevas clases, y ha mantenido hasta el presente el Plan de Retribución que adoptó en el 1996, sin cambios, excepto los reasignaciones y cambios antes identificados.

## PRUEBA DOCUMENTAL ESTIPULADA

EXHIBIT 1.    Memorando Núm. 8 – 85 del 1 de abril de 1985 de la OCAP decisión del Tribunal Supremo de Estados Unidos sobre la aplicabilidad de la Ley Federal de Normas Razonables del Trabajo. (2 folios).

*SENTENCIA*
*K PE 2005-0608*
*PAGINA 9*

EXHIBIT 2.  Memorando del 18 de abril de 1985 OCAP sobre la alternativa de estructuras salariales para proveer aumentos de sueldos a los empleados públicos bajo la Administración Central y cumplir con el mínimo federal (3 folios + 4 anejos).

EXHIBIT 3.  Memorando General Núm. 7-85 de 2 de julio de 1985 OCAP sobre disposiciones de pago por horas extras ordinarias trabajadas dispuestas por la Ley Federal de Normas Razonables del Trabajo y su aplicación a los empleados públicos. (4 folios).

EXHIBIT 4.  Núm. 25-85 14 de octubre de 1985 de la OCAP "Ultima Jurisprudencia Relacionada con la Administración de Personal". (7 folios).

EXHIBIT 5.  Memorando 5-86 del 23 de abril de 1986 de la OCAP "Aplicabilidad del Salario Mínimo Federal a los Empleados Públicos". (2 folios + 2 anejos).

EXHIBIT 6.  Memorando Núm. 12-86 del 22 de agosto de 1986 de la OCAP "Enmienda a las Escalas de Pago para el Personal Irregular". (8 folios).

EXHIBIT 7.  Memorando del 20 de noviembre de 1985 de la OCAP suscrito por Guillermo Mujica al Gobernador sobre los aumentos de sueldo a los empelados públicos. (3 folios).

EXHIBIT 8.  Memorando Núm. 3-86 del 30 de junio de 1986 OCAP "Décima Asignación de Clases del Servicio de Carrera de la Administración Central a las Escalas de Sueldo Establecidas la Ley 89". (2 folios + 37 anejos).

EXHIBIT 9.  Memorando Núm. 4-86 de 30 de junio de 1986, "Octava Asignación de Clases de Servicio Confianza a la Administración Central Sobre las Escalas de Sueldo Establecidas". (2 folios + 8 anejos).

EXHIBIT 10. Carta Normativa Especial Núm. 2-28 de 24 de marzo de 1988 OCAP "Aumento General a los empleados en Virtud Ley Núm. 1 del 9 de febrero de 1988". (6 folios + 2 anejos).

EXHIBIT 11. Memorando Núm. 7-90 del 3 de abril de 1990 OCAP "Salario Mínimo Federal" (3 folios + 5 anejos).

EXHIBIT 12. Carta 24 de mayo de 1990 de Angel Linera Escalera como Director Interino OCAP a Hon. Ramón García Santiago, Secretario Hacienda "Estudio Revisión Escalas". (2 folios).

EXHIBIT 13. Carta Normativa Especial 1-90 de 7 de junio de 1990 "Aumento General a los Empleados Públicos en virtud de la Ley Núm. 7 de 7 de mayo de 1989. (7 folios + 2 anejos).

EXHIBIT 14. Memorando 2-90 de 30 de junio de 1990 — OCAP "Decimocuarta Asignación de Clase del Servicio de Carrera a la Administración Central a las Escalas de Sueldo establecidos en la Ley 89. (2 folios + 6 anejos).

EXHIBIT 15. Memorando OCAP Núm. 3-91 de 22 de julio de 1991 décimo quinta asignación de clases del servicio carrera Administración Central a las escalas de sueldo establecidas en la Ley 89. (2 folios + 48 anejos).

EXHIBIT 16. Carta a secretarios y jefes agencias: "Orden Ejecutiva" de 5 de septiembre de 1991. (3 folios).

EXHIBIT 17. Memorando Especial Núm. 11-92 OCAP de 1 de abril de 1992 "enmienda a la 15ta Asignación de Clases para el Servicio Carrera de la Administración Central Vigente a partir de 1 de julio de 1991. (1 folio).

*SENTENCIA*
*K PE 2005-0608*
*PAGINA 10*

EXHIBIT 18.  Memorando OCAP Especial Núm. 12-93 de 24 de marzo de 1993 "Aumento en el Salario Mínimo Federal, Ley Pública Núm. 101-157 de 17 de noviembre de 1989. (2 folios).

EXHIBIT 19.  Memorando Especial Núm. 26-93 de 1 de julio de 1993 OCAP sobre preparación de planes de clasificación y retribución. Reglamentación de recursos humanos en el servicio público.

EXHIBIT 20.  Mensaje del Gobernador Rafael Hernández Colón de 24 de enero de 1995. (4 folios).

EXHIBIT 21.  Memorando Especial Núm. 13-94 de OCAP de 15 de abril de 1994 "Contratación de Consultores Privados para los Instrumentos de Trabajo para la Administración de Recursos Humanos". (2 folios).

EXHIBIT 22.  Memorando Núm. 5-94 de 3 de junio de 1994 OCAP asignación de las clases de puestos a las escalas de retribución efectivo al comienzo de cada año fiscal; actualización. (4 folios)

EXHIBIT 23.  Memorando Especial Núm. 17-94 OCAP de 3 de junio de 1994 "Salario Mínimo Federal, aumento efectivo 1 de abril de 1994. (2 folios).

EXHIBIT 24.  Portada periódico El Nuevo Día, mensaje del Gobernador Pedro Rosselló "La Situación del Estado" ante la 5ta Sesión Ordinaria de la Décima Asamblea Legislativa de 31 de enero de 1996. (1 folio).

EXHIBIT 25.  Artículo periódico El Nuevo Día sobre escenario favorable para el presupuesto, "Sobrante en Caja" (1 folio).

EXHIBIT 26.  Documentos pertinentes Plan de Clasificación de Puestos y Retribución de Servicios de Carrera efectivo a 1 de marzo de 1996 y aprobado por OCAP 11 de abril de 1996. (30 folios).

EXHIBIT 27.  Carta OCAP 19 de marzo de 1997 a Secretaria Departamento de la Familia. Aprobación a solicitud de enmienda a los planes de clasificación de puesto y retribución del servicio de carrera del Departamento. (2 folios + 9 anejos).

EXHIBIT 28.  Memorando Especial OCAP Núm. 51-96 de 8 de octubre de 1996 "Nuevo Salario Mínimo Federal efectivo el 1 de octubre de 1996 y el 10 de septiembre de 1997". (1 folio + 1 anejo).

EXHIBIT 29.  OCAP Memorando Núm. 8-96 de 9 de junio de 1997 "Enmiendas a la Guía de Clasificación de Funciones y las Escalas de Paga del Reglamento para el Empleo de Personal Irregular". (3 folios).

EXHIBIT 30.  Carta OCAP 20 de noviembre de 1997 a Secretaria Departamento de la Familia sobre algunas enmiendas al plan de clasificación implantado por la agencia efectivo el 1 de marzo de 1996. (2 folios + 12 anejos).

EXHIBIT 31.  Memorando 20 de marzo de 1998 de Luis Marcano, Director de Personal y Recursos Humanos "3ra Asignación de Clases y Estructuras Salariales Servicios de Carrera". (18 folios).

EXHIBIT 32.  Memorando de 3 de diciembre de 1999 Departamento de la Familia, "Extensión Escala Retributiva" efectiva 1 de julio de 1999. (1 folio).

SENTENCIA
K PE 2005-0608
PAGINA 11

De conformidad con las anteriores Estipulaciones de Hechos y Prueba Documental, el Tribunal formula las siguientes:

<u>CONCLUSIONES DE DERECHO</u>

Mediante la adopción de la Ley de Retribución Uniforme, Ley Núm. 89 del 12 de julio de 1979, 3 L.P.R.A 760 *et seq.* (actualmente derogada por la Ley Núm. 184 de 3 de agosto de 2004), se estableció en Puerto Rico un sistema de retribución con el principio de igual paga por igual trabajo. Este sistema propicia la uniformidad, la equidad y la justicia en la fijación de los sueldos de todos los empleados del servicio público, y persigue la aplicación de mecanismos que propendan y faciliten el reclutamiento y retención de personal mediante la concesión de incentivos adicionales. Para lograr ese objetivo, se le impuso la obligación a las agencias dentro del sistema, de adoptar planes de retribución conforme al reglamento que adoptara la Oficina Central de Administración de Personal (OCAP), para instrumentar esta ley a las normas generales sobre retribución que ésta emita. Art. 2 de la derogada Ley 89.



Para cumplir con los objetivos de la Ley 89, *supra*, en 1984 la OCAP aprobó el Reglamento de Retribución Uniforme. El Reglamento contenía disposiciones aplicables a todo el sistema de personal, lo que incluía a los administradores individuales (Art. 4 del Reglamento) y, algunas que aplican exclusivamente a las agencias bajo la Administración Central (Art. 5 del Reglamento).

En cuanto a la administración de las escalas salariales, se establecía en el Art. 9 de la Ley de Retribución Uniforme las normas relativas a la administración de salarios. De igual forma en la Sec. 4.5 (3) del Reglamento de Retribución Uniforme, se imponía la obligación a la OCAP y a cada Administrador Individual de asignar anualmente todas las clases de puestos de los planes de clasificación a las escalas contenidas en los planes de retribución que estuvieran vigentes, tanto para el servicio de carrera como para el de confianza, efectivo al comienzo de cada año fiscal.



La OCAP (ahora Oficina de Recursos Humanos del Estado Libre Asociado (ORHELA)) y los Administradores Individuales, están obligados a mantener al día los planes de retribución que adopten para los servicios de carrera y de confianza, en cumplimiento de las normas relativas a la administración y el mantenimiento de las estructuras retributivas, según establecido en los incisos 1 y 2 del Art. 2 de la Ley de

*SENTENCIA*
*K PE 2005-0608*
*PAGINA 12*

Retribución Uniforme y en la sección 4.6, incisos (2), (3), (5), (6) y (8) del Reglamento de

Retribución Uniforme.

En el presente caso, la parte demandante alega que los demandados incumplieron

con los deberes que hemos reseñado y que al hacerlo violaron las escalas salariales de

sus puestos, por lo que no reciben una justa paga por el trabajo realizado.

Como expresáramos previamente, las partes estipularon que lo resuelto en el caso

*Carmen Socorro Cruz Hernández y otros vs. Departamento de la Familia*, KAC1991-

0665, por tratarse de idénticas controversias entre las partes se hiciera extensivo al caso

de epígrafe.  En el aludido caso el Tribunal concluyó lo siguiente:



Considerando lo anteriormente expuesto, entendemos que la

selección del Departamento de la Familia de la fórmula de ajuste

recomendado por O.C.A.P. en el Memorando General 5-86, del 23 de

abril de 1986, no está conforme a las disposiciones requeridas por la

Ley de Retribución Uniforme, *supra*, al no mantener actualizada un

sistema de escalas salariales progresivas luego de implementar

enmiendas realizadas al salario mínimo.  Luego de un análisis de la

fórmula recomendada por O.C.A.P., puede observarse que su ejecución

resultó en remunerar equitativamente a conserjes, oficinistas (I, II, III y

IV), secretarias (I y II) y asistentes de instituciones sociales, entre otros

puestos asignados dentro de las primeras 11 escalas de la estructura

retributiva entonces vigente.  A consecuencia de que la parte

demandada realiza asignaciones de puestos al comienzo de cada año

fiscal, para la fecha de marzo de 1996 los empleados ubicados hasta la

escala 19 también habían sido afectados por el ajuste.  En Aulet Lebrón

v. Dpto. de Servicios Sociales, *supra*, a la página 24, señaló el Tribunal

Supremo:

Claro está, las cartas normativas que O.C.A.P. emita en el ejercicio

de sus funciones  cuasi legislativas no pueden estar en conflicto con la

ley o con la jurisprudencia vinculante en la materia que intente

reglamentar, pues el poder de reglamentación delegado a la agencia no

la faculta para sustituir el criterio legislativo o judicial plasmado en el

SENTENCIA
K PE 2005-0608
PAGINA 13

estado de derecho vigente. <u>A.P.I.A.U., Inc. v. Srio. de Hacienda</u>, 100 D.P.R. 173 (1971); <u>Rosario Mercado v. San Juan Racing Assn.</u>, 94 D.P.R. 634 (1967); <u>Rivera Maldonado v. Autoridad sobre Hogares</u>, 87 D.P.R. 453 (1963); <u>Ex parte Irizarry</u>, 66 D.P.R. 672 (1946).

Para evitar esto, la Ley de Retribución Uniforme, *supra*, estipula en su Art. 9, que "[e]fectivo al comienzo de cada año fiscal, el Director asignará todas las clases de puestos a las escalas contenidas en el Plan de Retribución adoptado para la Administración Central". 3 L.P.R.A. § 760h. Al no actualizarse anualmente, se dejó inoperante el sistema de escalas salariales, el cual requiere tomar en consideración la complejidad de los roles no diestros, administrativos, técnicos, especializados y de supervisión, para luego retribuir en proporción a la misma. Con esto el sistema de retribución ha resultado irracional, caprichoso o arbitrario para con los demandantes. *Véase*, <u>Aulet Lebrón v. Dpto. de Servicios Sociales</u>, *supra*, a la pág. 47. Cabe señalar que al momento de asignar un tipo de puesto a determinada escala de retribución, las agencias tomarán en consideración factores como años de servicios, preparación académica, experiencia o pasos por mérito concedidos al empleado de dicho puesto. *Véase*, Reglamento de Retribución Uniforme, *supra*, a la § 4.6, incisos (2), (3), (5), (6) y (8). En adición a esto, la Sec. 4.4 del Reglamento de Retribución dispone que los planes de retribución que se adopten han de estar en armonía con la política pública establecida en la Ley de Retribución Uniforme, *supra*, además de requerir la aplicación de escalas de sueldos uniformes para aquellas clases de puestos que sean equivalentes manteniendo así una correlación entre el valor relativo que se asigne a las clases en los respectivos planes de clasificación y el valor monetario que se asigna a éstas mediante escalas de sueldos.

El Tribunal Supremo de Puerto Rico ha expresado que la legislación de salario mínimo y la Ley Federal de Normas de Trabajo, no impiden que los estados legislen para conceder mayores beneficios.

*SENTENCIA*
*K PE 2005-0608*
*PAGINA 14*

*Véase*, 29 U.S.C.A. § 218(3) (2006); <u>Vega v. Yiyi Motors</u>, 146 D.P.R.

373, 381-2 (1998); <u>Olazagasti v. Easter Sugar Associates</u>, 79 D.P.R. 93,

106-7 (1956). Por lo tanto, el cumplimiento con el salario mínimo sólo

es uno de los requisitos para la observancia de la normativa laboral, que

en este caso exigía también la actualización y aplicación de escalas de

retribución.



Dado el ordenamiento jurídico esbozado, entendemos le asiste el

derecho a los demandantes y se declara Con Lugar la demanda

aprobando las escalas salariales marcadas en los Exhibits de la prueba

estipulada. A los efectos de resolver las diferencias surgidas entre las

partes en cuanto a la forma en que deben realizarse los cómputos de

los sueldos adeudados determinando las sumas específicas de cada

empleado, se celebrará el 26 de septiembre de 2006 una vista donde se

recibirá prueba pericial y documental pertinente.



La parte demandada preparará y radicará en el Tribunal,

suministrando copia a la representación legal de los demandantes, las

nóminas necesarias para efectuar el pago a los demandantes. Dichas

nóminas incluirán: (a) nombres y seguros sociales de los demandantes,

(b) total adeudado a cada demandante, (c) cantidad retenida para el

pago de retiro de cada demandante y (d) cantidad neta correspondiente

a cada demandante. El pago a los demandantes se efectuará durante

el año fiscal 2006-7, por lo que la parte demandada deberá consignar en

su presupuesto una partida para el pago de la Sentencia aquí dictada.

Las partes, en cumplimiento con la estipulación a la que han llegado,

deberán acatar la determinación judicial del caso *Carmen Socorro Cruz*

*Hernández y otros vs. Departamento de la Familia, supra,* y cuya parte dispositiva

hemos hecho formar parte de esta Sentencia.

En cuanto a los honorarios de abogado, habida cuenta de que ese asunto

en este momento se encuentra pendiente de resolución ante el Tribunal

Supremo de Puerto Rico en el caso *Carmen Socorro Cruz Hernández y otros vs.*

*Departamento de la Familia*, CC09-1074, donde se solicita la revisión de la

*SENTENCIA*
*K PE 2005-0608*
*PAGINA 15*

Sentencia de 24 de agosto de 2009 del Tribunal de Apelaciones que determinó

revocar la concesión de honorarios de abogado en ese caso, las partes se

atendrán a lo que disponga el Tribunal Supremo.

**REGISTRESE Y NOTIFIQUESE.**

En San Juan, Puerto Rico a 16 de septiembre de 2010.

*REBECCA DE LEON RIOS*
*JUEZA SUPERIOR*

CERTIFICO:

Lla. Rebecca Rivera Torres
Secretaria Regional

Por: _____
Secretaria Auxiliar

RECEIVED AND FILED
CLERK'S OFFICE

20 mayo 2018

Commonwealth of PR
Claims Processing Central
c/o Prime Clerk LLC
Grand Central Station  PO Box 4708
New York, NY  10163-4708

Re. Proof of Claim In re: The Commonwealth
of Puerto Rico, case no. BK 3283
LTS  Promesa  Title III.

Estimado  Funcionario (a)
Saludos Cordiales
Mediante  el  presente  documento  la
subscribente  Meysha M. Colón Torres  mayor de
edad  con  # ssocial xxx-xx-xxxx actualmente
retirada  del  Dept  de  la  Familia  hago
constar  que  formo  parte  de  un  laudo
caso  num.  K  AC 2013-0961  de la Comisión
apelativa  del  Servicio  Público  y  Tribunal
de  Primera  Instancia  Sala  de  San Juan.
① Laboré  por  30  años  en  Dept de la
Familia,  el  1  Octubre  2006  me acogí al
retiro
② Efectivo  el  1  Julio  2003  recibiría  aumento
Salarial  de  $100  por  convenio colectivo
Para  esa  fecha  no  lo  recibí  y por
todo  un  año  tampoco.
③ Para  Septiembre  2006  la  Agencia  pagó

You may also submit your claim electronically by visiting http://cases.primeclerk.com/puertorico/EPOC-Index

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

**Fill in this information to identify the case (Select only one Debtor per claim form). / Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación).**

MMLID: 1124855
EPOC ID: 170356600173456

RECEIVED
JUN 29 2018

| | | |
|---|---|---|
| ☒ Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☐ Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☐ Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☒ Employees Retirement System of the Government of the<br>Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado<br>Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☐ Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

Debtor Employees Retirement System of the Government of the Commonwealth of Puerto Rico has listed your claim in their Creditor List on Schedule E – Pension Obligations as a Contingent, Unliquidated general unsecured claim in an Undetermined amount. You must timely file a proof of claim or be forever barred from participating or sharing in any distribution or being treated as a claim for purposes of voting or distribution.

El deudor Employees Retirement System of the Government of the Commonwealth of Puerto Rico ha listado su reclamación en la lista de acreedores en el Schedule E – Obligaciones de Pensión como un reclamo Contingente, Sin liquidez no asegurado por un monto Indeterminado. Debe presentar una prueba de reclamación oportunamente o se le prohibirá por siempre participar o compartir en cualquier distribución o ser tratado como un reclamo para fines de votación o distribución.

Modified Official Form 410 / Formulario Oficial 410 Modificado

## Proof of Claim / Evidencia de reclamación

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.

Quienes presenten la documentación deben omitir o editar información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. **No adjunte documentos originales,** ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

Fill in all the information about the claim as of the Petition Date.

Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.

| Part 1 / Parte 1 | Identify the Claim / Identificar la reclamación |
|---|---|

| | |
|---|---|
| 1. Who is the current creditor?<br><br>¿Quién es el acreedor actual? | NEYSHA COLON TORRES<br>Name of the current creditor (the person or entity to be paid for this claim)<br>Nombre el acreedor actual (la persona o la entidad a la que se le pagará la reclamación)<br><br>Other names the creditor used with the debtor <br>Otros nombres que el acreedor usó con el deudor |

8. How much is the claim?   $16,800 _____. Does this amount include interest or other charges?

¿Cuál es el importe de la   *aproximadamente*   ¿Este importe incluye intereses u otros cargos?
reclamación?

☒ No / No

*además se adeudan*   ☐ Yes. Attach statement itemizing interest, fees, expenses, or other
charges required by Bankruptcy Rule 3001(c)(2)(A).

*los intereses y Seg. Social* (c)(2)(A).   Sí. Adjunte un balance con intereses detallados, honorarios,
gastos u otros cargos exigidos por la Norma de Quiebras

*aplacacion a Retiro y Seg Social* (c)(2)(A).

9. What is the basis of the claim?   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.

¿Cuál es el fundamento de la reclamación?   Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.

*Laudo por ajuste salarial*

10. Is all or part of the claim secured?   ☐ No / No
☒ Yes. The claim is secured by a lien on property.
Sí. La reclamación está garantizada por un derecho de retención sobre un bien.

¿La reclamación está garantizada de manera total o parcial?   Nature of property / Naturaleza del bien:
☐ Motor vehicle / Vehículos

☐ Other. Describe:   *ajuste salarial y pension*
Otro. Describir:

Basis for perfection / Fundamento de la realización de pasos adicionales: _____
*adjunto evidencias*

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.)

Value of property / Valor del bien:   $_____

Amount of the claim that is secured /
Importe de la reclamación que está garantizado: $_____

Amount of the claim that is unsecured /
Importe de la reclamación que no está garantizado: $_____
(The sum of the secured and unsecured amounts should match the amount in line 7.)
(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)

Amount necessary to cure any default as of the Petition Date /
Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso : $_____
_____

Annual Interest Rate (on the Petition Date)
Tasa de interés anual (cuando se presentó el caso)_____%
☐ Fixed / Fija
☐ Variable / Variable

11. Is this claim based on a lease?   ☐ No / No

☐ Yes. Amount necessary to cure any default as of the Petition Date.
Sí. Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso$_____

¿Esta reclamación está basada en un arrendamiento?

U0505 v.01 02.15.2018



PAG. 01

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE SAN JUAN

DEPARTAMENTO DE LA FAMILIA
DEMANDANTE
VS.

RIVERA, BETTY
DEMANDADO

CASO:K AC2013-0961
SALON:0902

ACCION CIVIL
IMPUGNACION DE LAUDO
CAUSAL/DELITO

NEYSHA COLON TORRES
URB EL COMANDANTE
872 CALLE MARIA GIUSTI
SAN JUAN PR 00924

NOTIFICACION DE SENTENCIA

EL SECRETARIO QUE SUSCRIBE NOTIFICA A USTED QUE ESTE TRIBUNAL HA DICTADO
SENTENCIA EN EL CASO DE EPIGRAFE CON FECHA 06 DE MARZO DE 2014      , QUE HA
SIDO DEBIDAMENTE REGISTRADA Y ARCHIVADA EN LOS AUTOS DE ESTE CASO, DONDE
PODRA USTED ENTERARSE DETALLADAMENTE DE LOS TERMINOS DE LA MISMA.

Y, SIENDO O REPRESENTANDO USTED LA PARTE PERJUDICADA POR LA SENTENCIA,
DE LA CUAL PUEDE ESTABLECERSE RECURSO DE APELACION, DIRIJO A USTED ESTA
NOTIFICACION, HABIENDO ARCHIVADO EN LOS AUTOS DE ESTE CASO COPIA DE ELLA
CON FECHA DE 10 DE MARZO DE 2014      .

SANTOS ORTIZ RICARDO
COND MIDTOWN
421 AVE MUNOZ RIVERA STE B-1
SAN JUAN,PR 00918

VILLANUEVA NIEVES LUIS
DEP DE JUSTICIA-LITIGIOS GENERALES
P O BOX 9020192
SAN JUAN,PR 00902-0192

BETTY RIVERA
ALTURAS DE PARQUE ECUESTRE
313 CALLE KELIMAR
CAROLINA PR 00987

PAG. 02

CASO NUM:K AC2013-0961
SALON:0902

COMISION APELATIVA DEL SERVICION PUBLICO
ARB SANTOS COLON QUIÑONES
PO BOX 41149
SAN JUAN PR 00940-1149

JOSE A RAMOS CRUZ
PO BOX 1374
LUQUILLO PR 00773-1374

MARIA B HERNANDEZ CASTRO
HC 4 BOX 15633
CAROLINA PR 00987

MYRNA MALDONADO CARDONA
URB COUNTRY CLUB
QE 20 CALLE 523
CAROLINA PR 00982

OLGA I VARGAS ENCARNACION
URB CASTELLANA GDNS
N 10 CALLE 14
CAROLINA PR 00983

PAULA FORTY ESCOBAR
PO BOX 332
PALMER PR 00721-0332

SAN JUAN, PUERTO RICO, A 10 DE MARZO DE 2014

LCDA. REBECCA RIVERA TORRES
------------------------------------------
SECRETARIO
POR: ALMODOVAR CABRERA, MARTHA
------------------------------------------
SECRETARIO AUXILIAR

O.A.T.704-NOTIFICACION DE SENTENCIA
WWW.RAMAJUDICIAL.PR/TELETRIBUNALES(787)759-1888/ISLA 1-877-759-1888 LIBRE DE COSTO

Estado Libre Asociado de Puerto Rico
Tribunal de Primera Instancia
CENTRO JUDICIAL DE SAN JUAN
Sala Superior

| | |
|---|---|
| DEPARTAMENTO DE LA FAMILIA | CIVIL NÚM. K AC2013-0961 |
| Recurrente | (Sala 902) |
| Vs. | SOBRE: |
| BETTY RIVERA, NEYSHA COLÓN, MARÍA B. HERNÁNDEZ, OLGA I. VARGAS, MYRNA MALDONADO, JOSÉ A. RAMOS, PAULA FORTY | REVISIÓN DE LAUDO |
| Recurridos | |
| SERVIDORES PÚBLICOS UNIDOS | |
| (Unión) | |

# S E N T E N C I A

I

El 2 de diciembre de 2013 el Departamento de la Familia presentó un recurso en el que impugna el Laudo emitido el 31 de octubre de 2013 por el Lcdo. Santos Colón Quiñones, árbitro de la Comisión Apelativa del Servicio Público.

El Árbitro describió la controversia que debía resolver de la siguiente manera:

> Determinar inicialmente si la querella es arbitrable, sustantiva o procesalmente. De no ser arbitrable, que el Árbitro desestime las querellas.

> De ser arbitrable las querellas, que se determine si se le debe computar dicho bono emitido por la Asamblea Legislativa al salario de los querellantes, con cualquier otro remedio que en derecho proceda.

> En adición, el Árbitro deberá considerar específicamente si la Agencia violó la Sección 9.1 (a) y (c) de la Ley Núm. 45 al:

> La Agencia otorgar a las empleadas, ahora pensionadas, como bonificación y no como sueldo con su debida aportación al Sistema de Retiro, la cantidad de $1,200.00 bruto el día 30 de octubre de 2006 cuando los empleados con status regular lo recibieron el 15 de octubre de 2006. Lo anterior, en violación al Artículo XXXV, Sección 1 del Convenio Colectivo. Además, que el aumento de $100.00 a partir de julio de 2005 hasta junio de 2006 se acredite

Sentencia

Civil Núm. K AC13-0961 (902)

según los salarios recibidos durante los meses a partir de
julio de 2006 hasta el presente.

Luego de aquilatar la evidencia que tuvo ante su consideración, el Árbitro
formuló las siguientes determinaciones de hechos:

1. La Sra. Betty Rivera Santana laboraba para el Departamento de la
   Familia. Trabajó en la Agencia por espacio de treinta y un años y medio
   (31 ½). Ocupaba un puesto de Técnico de Asistencia Social y Familiar
   III en el Departamento de la Familia, antes de acogerse a los beneficios
   del retiro. Estaba incluida dentro de la Unidad Apropiada B, para fines
   de negociación colectiva.

2. La Sra. María B. Hernández Castro laboraba para el Departamento de
   la Familia como Oficinista II.

3. La Sra. Olga I. Vargas Encarnación laboraba en la Agencia como
   Técnica de Asistencia Social y Familiar III.

4. La Sra. Myrna Maldonado Cardona laboraba en la Agencia como
   Auxiliar de Sistemas de Oficina III.

5. El Sr. José a. Ramos Cruz laboraba en la Agencia como Técnico de
   Asistencia Social y Familiar III.

6. La Sra. Paula Forty Escobar laboraba en la Agencia como Auxiliar de
   Sistema de Oficina IV.

7. La Sra. Wilda Ramos es Especialista en Recursos Humanos de la
   Agencia. Lleva laborando en el Departamento de la Familia desde 1989
   hasta el 1993, donde se trasladó a otra Agencia hasta el 2002. Desde el
   año 2002 regresó a laborar al Departamento de la Familia hasta el
   presente en la División de Recursos Humanos. Para el año 2005, era la
   Secretaria Auxiliar de Recursos Humanos.

8. El 26 de febrero de 2003, la Agencia y la Unión negociaron los
   Convenios Colectivos para las Unidades Apropiadas A y B. Eran
   vigentes desde el 26 de febrero de 2003 hasta la media noche del día
   25 de febrero de 2006, ambas fechas incluidas.

Civil Núm. K AC13-0961 (902)

9. En julio de 2005, hubo desacuerdos entre las ramas Ejecutivas y Legislativa, en cuanto a la aprobación del presupuesto de ese año fiscal. Al no aprobarse dicho presupuesto, la Agencia funcionó con el presupuesto del año fiscal anterior.

10. Para el 1 de julio de 2005, se esperaba que los empleados querellantes recibieran un aumento de sueldo, según pactado en el convenio, por la cantidad de cien (100.00) dólares. Dicho aumento nunca fue recibido por ellos.

11. El 28 de julio, la Secretaria del Departamento de la Familia para ese entonces, Sra. Yolanda Zayas y la Subdirectora Ejecutiva de la Unión en ese momento, Lic. Genoveva Valentín, suscribieron una Estipulación. En dicha estipulación, ambas partes reconocen que no se vio reflejado el aumento de salario pactado para el 1 de julio, por la cantidad de cien (100) dólares. Además reiteraron el deseo de cumplir con los acuerdos establecidos, por lo que acordaron extender los términos para la radicación de querellas hasta tanto fuese resuelta la aprobación del presupuesto.

12. El 29 de agosto de 2005, la Sra. Jenice M. Vázquez Pagán, Gerente de Relaciones Laborales de la Agencia, suscribió un documento titulado **Estipulación Sobre el Aumento Efectivo al 1ro de julio de 2005**. En su comunicado dirigido a los Administradores, Administradores Auxiliares y Directores Regionales, la Sra. Vázquez anejó copia de la estipulación y les indicó a estos que debían notificar la información contenida en la estipulación a las distintas Administraciones para evitar radicaciones de querellas a destiempo.

13. El 10 de julio de 2006, la Asamblea Legislativa aprobó la Resolución Conjunta Núm. 157, con vigencia desde el 1ro de julio de 2006. Esta resolución asignaba a las agencias e instrumentalidades para el año fiscal 2006 – 2007 la cantidad de ciento cuarenta millones novecientos cincuenta mil (140,950,000) dólares con cargo al Fondo Presupuestario y al Fondo General para llevar a cabo diferentes fines según se detalla

Sentencia                                                        Civil Núm. K AC13-0961 (902)

en la misma. En esa resolución se asignó la cantidad de veintiséis millones (26,000,000) dólares para el pago de convenios colectivos vigentes para varias agencias, entre esa el Departamento de la Familia y sus componentes.

14. Hasta el 30 de septiembre de 2006, la Sra. Betty Rivera Santana y los otros querellantes, estuvieron ejerciendo labores en la Agencia. A partir del 1 de octubre de 2006, se acogieron a los beneficios del retiro meritorio por años de servicio.

15. El 9 de octubre, el Secretario del Departamento de la Familia, Sr. Félix V. Matos Rodríguez, suscribió un documento titulado **Normas Para la Concesión de una Bonificación Especial No Recurrente Conforme a la Resolución Conjunta 157 Emitida por la Asamblea Legislativa de Puerto Rico el 10 de julio de 2006.** En ese documento, el Secretario estableció unas guías para el otorgamiento de la Bonificación Especial No Recurrente por la cuantía de $1,200.00 para cubrir el periodo del 1 de julio de 2005, hasta el 30 de junio de 2006 para los empleados miembros de ambas Unidades Apropiadas.

16. El 30 de octubre de 2006, los empleados pensionados recibieron la cantidad de 1,200.00 dólares correspondiente al aumento de sueldo para el año 2005. Pero ello lo recibieron como bonificación y los empleados regulares lo recibieron como un aumento de sueldo. Reflejado como parte en su sueldo regular mensual.

17. El 20 de julio de 2007, entró en vigor el siguiente Convenio Colectivo entre la Agencia y la Unión. Su vigencia era de tres (3) años, a partir desde el 20 de julio de 2007 hasta la media noche del 20 de julio de 2010.

A base de esas determinaciones el Árbitro concluyó que el llamado bono emitido por la Asamblea Legislativa debía pagarse a los querellantes como parte de su salario. El Árbitro también concedió, entre otros remedios, los siguientes:

Se ordena a la Agencia, Departamento de la Familia, que en un término no mayor de treinta (30) días calendario, a partir del recibo del presente Laudo, enmendar toda documentación existente

en los expedientes de personal de los empleados aquí querellantes, referente al salario que estos recibían para fines de cómputo de beneficio de retiro para la Administración de los Sistema de Retiro, estableciendo el salario correcto que les correspondía para el año 2005.

Se ordena a la Agencia que, en un término no mayor de cuarenta y cinco (45) días calendario, luego de enmendar toda documentación existente en los expedientes de personal de los querellantes referente al salario para fines de cómputo de beneficio por retiro, hacer las gestiones pertinentes y corregir el cómputo para fines de beneficio de retiro con la Administración de los Sistemas de Retiro, del salario que los empleados querellantes eran merecedores y no fue computado debidamente.

Se ordena a la Agencia que, luego de hacer las correcciones con la Administración de los Sistemas de Retiro y computársele a ellos el salario correcto, en un término no mayor de quince (15) días calendario notificarle por escrito a cada uno de los querellantes aquí incluidos, el cumplimiento de lo aquí ordenado. Deberá incluir con su escrito toda documentación o evidencia que sustente el cumplimiento de lo aquí ordenado.

No conforme con tal dictamen, el Departamento de la Familia solicita la revocación del Laudo y hace los siguientes señalamientos de error:

PRIMERO: Erró la Comisión Apelativa del Servicio Público al emitir un Laudo contrario a derecho al hacer una interpretación de la Resolución Conjunta Núm. 157 sin evidencia suficiente sobre la intención legislativa.

SEGUNDO: Erró la Comisión Apelativa del Servicio Público al ordenar a la agencia llevar a cabo una actuación ultra vires ante el texto claro de la Resolución Conjunta Núm. 157 y la deferencia que merecía la propia agencia en la aplicación de un estatuto que le compete administrar.

TERCERO: Erró la Comisión Apelativa del Servicio Público al ordenar a la agencia llevar a cabo la corrección del concepto del pago emitido para que se impute como un aumento de salario, sin ordenarle a la parte querellante que emita el pago correspondiente a las cuantías relacionadas a retiro, AEELA y cuota sindical, sin tampoco aclarar la cantidad a ser imputada como salario, emitiendo así un Laudo parcial y no final.

Por las razones que se explican a continuación, se confirma el Laudo.

II

En Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. Se entiende que el arbitraje es el medio menos técnico, más flexible, menos oneroso y, por tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral. *Martínez Rodríguez v. A.E.E.*, 133 D.P.R. 986 (1993). A través del arbitraje se pretende promover la resolución de las querellas y controversias que se suscitan dentro del marco obrero-patronal,

Sentencia 8 Civil Núm. K AC13-0961 (902)

habiéndose reconocido que el arbitraje pactado en el convenio constituye una herramienta ideal para fortalecer la negociación colectiva. *J.R.T. v. Junta Adm. Muelle Mun. Ponce*, 122 D.P.R. 318 (1988).

Las partes que firman un convenio colectivo que incluye un procedimiento de arbitraje deben comprender que, "...han sustituido al árbitro por las cortes para la determinación de todas las cuestiones de hecho y de derecho sustantivo." *J.R.T. v. New York and Porto Rico Steamship Company*, 69 D.P.R. 782, 800 (1949). Dicho de otra manera, un acuerdo en un convenio colectivo para utilizar el arbitraje como mecanismo de ajuste de controversias crea un foro sustituto a los tribunales de justicia. En efecto, ello representa una sustitución del juez por el árbitro. *Condado Plaza Hotel v. Asociación de Empleados,* 149 D.P.R. 347 (1999).

Ante un convenio de arbitraje lo más prudente es la abstención judicial, aunque la intervención no esté vedada. *U.C.P.R. v. Triangle Engineering Corp.*, 136 D.P.R. 133 (1994*). Cuando un tribunal intervenga, éste otorgará gran deferencia a la interpretación que el árbitro hace de lo acordado en el convenio. *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 D.P.R. 318 (1988). Los laudos de arbitraje son revisables ante los tribunales de manera análoga al procedimiento dispuesto para la revisión de las determinaciones de las agencias administrativas, las que gozan de gran deferencia por parte de los tribunales. *Corp. Créd. Des. Com. Agrícola v. U.G.T.*, 138 D.P.R. 490 (1995); *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, 116 D.P.R. 348 (1985).

"La función principal del árbitro, en el campo de las relaciones obrero-patronales, es interpretar las cláusulas de los convenios colectivos. Al ejercer esta función, el árbitro no está limitado exclusivamente al contenido del convenio, sino que puede hacer uso de otras fuentes siempre que no se aparten de la esencia del convenio. La libertad de interpretación del árbitro dependerá de la claridad de las cláusulas del convenio. Una cláusula, cuyo lenguaje parece ser claro, puede ser ambigua si admite que se le dé interpretaciones conflictivas. Dentro de estas limitaciones, el árbitro tiene flexibilidad para emitir su interpretación." *J.R.T. v. Junta Adm. Muelle Mun. Ponce*, *supra,* págs. 330-331.

Sentencia. · Civil Núm. K AC13-0961 (902)

"La autoridad del árbitro para atender una controversia queda definida por el lenguaje del convenio colectivo o por el acuerdo de sumisión sometido por las partes." *U.G.T. v. Corporación de Puerto Rico para la Difusión Pública*, 168 D.P.R. 674 (2006). El convenio colectivo es ley entre las partes siempre y cuando no sea contrario a las leyes o a la Constitución. Cuando existe un convenio válido, éste obliga a la unión y a sus miembros individualmente, y de igual forma al patrono. *Domingo Rivera Adorno v. Autoridad de Tierras de Puerto Rico*, 83 D.P.R. 258 (1961).

Según la norma establecida a través de la jurisprudencia, el laudo que emite un árbitro es final e inapelable por lo que no puede litigarse en los tribunales lo que válidamente se arbitró. *J.R.T. v. Otis Elevator Co.*, 105 D.P.R. 195 (1976). Si el convenio de arbitraje nada dice en cuanto a que el dictamen del árbitro sea conforme a derecho, éste puede declarar cuál es la ley, haciendo caso omiso de las reglas de derecho sustantivo. *Rivera v. Samaritano & Co., Inc., 108 D.P.R. 604 (1979),* citando a *J.R.T. v. New York and Porto Rico Steamship Company*, supra. De conformidad con tal norma, se ha expresado que un laudo de arbitraje no es ni un contrato ni una sentencia, pero disfruta de la naturaleza de ambos. Por ende, un laudo basado en una sumisión voluntaria puede ser impugnado sólo en casos de: 1) fraude, 2) conducta impropia, 3) falta del debido procedimiento en la celebración de la vista, 4) violación de la política pública, 5) falta de jurisdicción, o 6) que no resuelva todas las cuestiones en controversia que se sometieron. No puede anularse un laudo por meros errores de criterio ya sean éstos en cuanto a la ley o en cuanto a los hechos. *J.R.T. v. Otis Elevator,* supra. Si el laudo no es conforme a derecho, será sostenido por el tribunal aun cuando éste hubiese llegado a una conclusión distinta. Los árbitros tienen amplia discreción para diseñar un remedio adecuado. Estos incluso pueden variar una sanción disciplinaria si consideran que la misma es muy severa o drástica. *S.I.U. de P.R. v. Otis Elevator Co.*, 105 D.P.R. 832, 841 (1977).

La revisión judicial cambia cuando el procedimiento de arbitraje es conforme a derecho. Establecer como condición que un laudo sea "conforme a derecho" significa que el árbitro no puede pasar por inadvertidas las normas

Civil Núm. K AC13-0961 (902)

interpretativas de derecho sustantivo emitidas por los Tribunales Supremos de Estados Unidos y de Puerto Rico en el campo de derecho laboral y que serán persuasivas las decisiones de los tribunales de primera instancia y de las agencias administrativas, así como los laudos y escritos de reputados árbitros. *J.R.T. v. Hato Rey Psychiatric Hospital*, 119 D.P.R. 62 (1987).

Si un convenio colectivo dispone que los asuntos sometidos a arbitraje sean resueltos conforme a derecho, el árbitro no puede ignorar las normas de derecho sustantivo en el campo del derecho laboral y debe resolver las controversias a tenor con las doctrinas legales prevalecientes. *Rivera v. Samaritano & Co., Inc., 108 D.P.R. 604 (1979)*, citando a *J.R.T. v. New York and Porto Rico Steamship Company*, *supra*. Los tribunales pueden entonces revisar los méritos jurídicos del laudo. *U.C.P.R. v. Triangle Engineering Corp.*, *supra* a la nota al calce 7. Cuando las partes pactan que el laudo arbitral sea conforme a derecho, los tribunales podrán corregir errores jurídicos utilizando las normas de derecho aplicables. *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, *supra*; *S.I.U. de P.R. v. Otis Elevator Co.*, *supra*.

No empece lo anterior el Tribunal no debe inclinarse fácilmente a decretar la nulidad del laudo, a menos que efectivamente el mismo no haya sido resuelto conforme a derecho. Una discrepancia de criterio con el laudo no justifica la intervención judicial pues destruye el propósito fundamental del arbitraje que es resolver las controversias rápidamente, sin los costos y demoras del proceso judicial. *U.C.P.R. v. Triangle Engineering Corp.*, *supra* a la nota al calce 7.

III

La posición del Departamento de la Familia descansa esencialmente en que la Resolución Conjunta Núm. 157 utiliza el término "bono retroactivo". Este lenguaje, según la parte recurrente, es claro y libre de toda ambigüedad por lo que debe entenderse que los querellantes tenían que recibir los $1,200.00 a título de bonificación y no de salario. Esto es, existe "la presunción de que lo ordenado por el legislador fue el pago de un bono y no un salario más aun considerando que lo que impidió en su origen conceder el aumento fue la crisis fiscal y presupuestaria que se preveía ... Muy bien el legislador pudo querer dar el bono,

Sentencia                       Civil Núm. K AC13-0961 (902)

pero no perpetuarlo a través de un aumento de salario para no incrementar los costos operacionales prospectivos." (pág. 6 del <u>Recurso Judicial de Laudo</u>)

La pregunta obligada es la misma que formuló el Árbitro: ¿Por qué la Agencia trató la cantidad de $1,200 como bono en el caso de los querellantes mientras que al resto del personal se le adscribió al salario? ¿Es que el lenguaje utilizado en la Resolución Conjunta tiene dos significados, dependiendo de a quién se le iba a aplicar?

Aparte de lo anterior, y ya entrando en materia sustantiva, la propia Resolución Conjunta Núm. 157 en su Sección 1A (2) dispone que la partida asignada al Departamento de la Familia era para el pago del bono retroactivo <u>del convenio colectivo de los empleados</u>. Aunque se utilice el término bono, la realidad es que se alude a lo pactado en el Convenio Colectivo. En éste se acordó, en su Artículo XXXV, que el Departamento de la Familia concedería a los empleados cubiertos por el convenio ciertos <u>aumentos salariales</u>. En ningún lugar se habla de bonos. Así que nos parece que la utilización del término "bono", dentro del contexto de la Resolución Núm. 157, fue un error del legislador.

En conclusión, no vemos forma en que podamos coincidir con el análisis del Departamento de la Familia. En su consecuencia, el Tribunal dicta Sentencia y confirma el Laudo en su totalidad.

REGÍSTRESE Y NOTIFÍQUESE.

DADA en San Juan, Puerto Rico, a 6 de marzo de 2014.

ENID MARTÍNEZ MOYA
Juez del Tribunal Superior

CERTIFICO:

LCDA. REBECCA RIVERA
Secretaria General

POR: _Martha Almodóvar Cola_
Secretaria Auxiliar



**ESTADO LIBRE ASOCIADO DE**
**P U E R T O   R I C O**
Administración de Desarrollo
Socioeconómico de la Familia



8 de junio de 2015

Naysha M. Colón Torres
Urb. El Comandante
872 Calle María Giusti
San Juan, PR 00924

**Re: Ajuste de Sueldo**

La Oficina de Recursos Humanos de la Administración de Desarrollo Socioeconómico de la Familia, ha enmendado el salario que recibía cuando figuraba como empleada de esta Agencia, conforme a Laudo (KAC 2013-0961) emitido por la Comisión Apelativa del Servicio Público.

A continuación se detallan los cambios en salario:

| Fecha | Acción | Sueldo Antes del Cambio | Sueldo Después del Cambio |
|---|---|---|---|
| 1 de julio de 2005 | Laudo | $1,892 | $1,992 |
| 1 de julio de 2006 | Convenio Colectivo $100 | $1,992 | $2,092 |
| 30 de septiembre de 2006 | Jubilación | $1,992 | $2,092 |

La Sección de Servicio al Empleado de Nivel Central de la ADSEF, estará realizando los trámites correspondientes al reajuste de su pensión para ser enviados a la Administración de los Sistemas de Retiro.

Cualquier información adicional puede comunicarse con Jerimé Sánchez Figueroa, Analista de Recursos Humanos III a la División de Clasificación y Retribución al 787-289-7600 ext. 2267.

Arvin J. Santiago Sabat, MPA
Administrador Auxiliar
Oficina de Recursos Humanos

MIMA/JSF

Adjunto: Informes de Cambio



DEFAM-388
Rev. 3/08

Estado Libre Asociado de Puerto Rico
**DEPARTAMENTO DE LA FAMILIA**
Secretaría Auxiliar de Recursos Humanos y Relaciones Laborales
División de Nombramientos y Cambios

**INFORME DE CAMBIO**
(Ver instrucciones al dorso)

| | | 1. Número del Cambio |
|---|---|---|
| | | **15-15908** |
| | | 2. Número de Seguro Social del(de la) Empleado(a) |

| Cambio a efectuarse | Antes del Cambio | Después del Cambio |
|---|---|---|
| | Puesto Núm. **5750** | Puesto Núm. |
| 3.  Nombre del(de la) Empleado(a) | Neysha M. Colón Torres | |
| 4.  Agencia | **Departamento de la Familia** | |
| 5.  Secretariado o Administración | Administración Desarrollo Socioeconómico | |
| 6.  Programa | PAN | |
| 7.  Oficina, División o Sección | Oficina Local Carolina I | |
| 8.  Ubicación del Puesto | Región Carolina | |
| 9.  Categoría del(de la) Empleado(a) | De Carrera | |
| 10.  Status del(de la) Empleado(a) | Regular | |
| 11.  Título de Clasificación | Técnica de Asist. Soc. y Familiar III | |
| 12.  Unidad Apropiada / Excluido(a) | Unidad Apropiada B | |
| 13.  Sueldo | $1,892.00 | $1,992.00 |
| 13.a  Diferencial | | |
| 14.  Bonificación | | |
| 15.  Descuento Contribución sobre Ingresos | | |
| 16.  Descuento Seguro Social | | |
| 17.  Descuento Aportación Sistema de Retiro | | |
| 18.  Descuento Servicios Médicos | | |
| 19.  Descuento Ahorros (A.E.E.L.A.) | | |
| 20.  Descuento Seguro (A.E.E.L.A.) | | |
| 21.  Descuento Unión | | |
| 22.  Otros Descuentos | | |
| 23.  Clase | | |
| 24.  Escala | | |
| 25.  Fecha de Efectividad | | 1 de julio de 2005 |

| 26.  SÍMBOLOS DE CONTABILIDAD | Fondo | Org. | Prog. | Asig. | Cuenta | Año Pres. | Grant | Fondo | Org. | Prog. | Asig. | Cuenta | Año Pres. | Grant |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 111 | 1270000 | 1083 | 001 | E1110 | 2005 | | | | | | | 2006 | |

27. Indique si se trata de:  ☐ Ascenso  ☐ Aumento de Sueldo  ☐ Cambio de Categoría  ☐ Cambio de Status  ☐ Descenso  ☐ Traslado
☐ Diferencial  ☐ Nuevo Nombramiento  ☐ Reclasificación  ☐ Reinstalación  ☐ Transferencia  ☐ Otro

28. En caso de cambio a otra agencia indique Licencia a Transferir:
Compensatorio ____ días ____ horas ____ Min utos
Lic. Regular ____ días ____ horas ____ min.  Lic. Enfermedad ____ días ____ horas ____ min.

| | Fecha de Separación (Último día de Pago) | Licencia sin Paga | Fecha de Efectividad de la Separación |
|---|---|---|---|
| 29.  Renuncia ☐ | | | |
| 30.  Separación ☐ | | | |
| 31.  Destitución ☐ | | | |
| 32.  Cesantía ☐ | | | |

33. Suspensión de Empleo y Sueldo:  Duración: ____ De ____ Hasta ____

34. Muerte: ____ Hora: ____ Último día de pago: ____ Participante de Retiro ☐ Sí ☐ No
Fecha ____

35. Indique tipo de Licencia:  ☐ Militar sin Sueldo  ☐ Estudios  ☐ Especial con Paga  ☐ Sin Sueldo  ☐ Médico Familiar  ☐ Maternidad
Duración: ____ Desde ____ Hasta ____

36. Comentarios y Explicaciones (si necesita más espacio use el dorso)    Se concede aumento conforme al Laudo Caso: K AC2013-0961.  Aut. en Hoja de Evaluación Fiscal y Disponibilidad de Fondos #2015-852 del 12 de febrero de 2015 y por la Oficina de Gerencia y Presupuesto #2015-67029 del 10 de abril de 2015.

37. Si el cambio de puesto es por Certificación de Elegibles indique el número de Certificación de Elegibles: ____
Si el cambio es a otro puesto, indique el nombre del anterior incumbente: ____

| 38.  Si el cambio es a otra agencia, el jefe de la agencia donde se origine el cambio o su representante autorizado firma aquí: | 39.  Firma del(de la) empleado(a) de ser necesario |
|---|---|
| | 40.  Aprobado por: _____ |
| | **María I. Morales Alvarez, Adm Aux Int RH** |
| | Jefe de la Agencia o su Representante Autorizado |

PERIODO DE RETENCIÓN: Original – Expediente

JUN 04 2015

Analista:  AILF

*Estado Libre Asociado de Puerto Rico*
*Departamento de la Familia*
*ADMINISTRACIÓN DESARROLLO SOCIOECONÓMICO*
*Oficina de Recursos Humanos*

29 de mayo de 2015
*Fecha*

## NOTIFICACIÓN

*Nombre del Empleado:*  Neysha M. Colón Torres
*Número Seguro Social.*
*Programa:*  PAN-Ofic. Local Carolina I, Región Carolina
*Documento:*  Varios

*Acción:*  ( x ) *Enmendar*  ( ) *Cancelar*

*Hemos procedido a efectuar el siguiente cambio en el documento que se indica:*

Informe de Cambio Especial #21175
    Sueldo Mensual: Antes del Cambio $1,992.00
                    Después del Cambio $2,092.00

Informe de Cambio #21232
    Apartado 12.Sueldo Mensual: Antes del Cambio $2,092.00

Enmienda es conforme al Laudo del Caso: K AC2013-0961 con efectividad al 1 de julio de 2005.

*María I. Morales Álvarez*
*Administradora Auxiliar Interina*
*Oficina de Recursos Humanos*

JUN 04 2015

AILF/MP

**IMPORTANTE
INSTRUCCIONES:
LEA AL DORSO**

**Estado Libre Asociado de Puerto Rico
DEPARTAMENTO DE LA FAMILIA**
PO BOX 11398
SAN JUAN, PUERTO RICO 00910-1398

**INFORME DE CAMBIO**

1. Número del Cambio: **21232**

2. Número de Seguro Social del Empleado

JG/agt/25/octubre/06

| Cambio a Efectuarse | Antes del Cambio | Después del Cambio |
|---|---|---|
| | Puesto Núm. **5750** | Puesto Núm. |
| 3. Nombre del empleado: | NEYSHA M. COLÓN TORRES | |
| 4. Agencia, Administración o Secretariado | Adm. Des. Socioeconómico de la Fam. | |
| 5. Programa, División u Oficina | Programa Asistencia Nutricional | |
| 6. Unidad, División o Sección | Oficina Local de Carolina I | |
| 7. Ubicación geográfica del puesto | Región Carolina | |
| 8. Categoría del Empleado | De Carrera | |
| 9. Status del Empleado | Regular | |
| 10. Título de Clasificación | Técnica de Asist. Social y Fam. III | |
| 11. Unidad Apropiada / Exento | Unidad Apropiada B | |
| 12. Sueldo | ~~$1,992.00~~ $ 2,092.00 | |
| 12.a Diferencial (1) | | |
| 12.b Diferencial (2) | | |
| 13. Descuento para Contribución sobre Ingresos | | |
| 14. Descuento para Seguro Social | "VÉASE NOTIFICACIÓN DEL" | |
| 15. Descuento para Aportación Sistema de Retiro | | |
| 16. Descuento para Servicios Médicos | MAY 29 2015 | |
| 17. Descuento para Ahorros (A.E.E.L.A.) | | |
| 18. Descuento para Seguro (A.E.E.L.A.) | ADMINISTRACIÓN DE DESARROLLO | |
| 19. Descuento Unión | SOCIOECONÓMICO DE LA FAMILIA | |
| 20. Otros Descuentos | Oficina de Recursos Humanos | |
| 21. Clase | | |
| 22. Escala | | |
| 23. Fecha de Efectividad | | |

| 24. SIMBOLOS DE CONTABILIDAD | Fondo | Org. | Prog. | Asig. | Cuenta | Año Pres. | Grant | Cuenta | Fondo | Org. | Prog. | Asig. | Año Pres. | Grant |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 111 | 1270000 | 1083 | 001 | E1110 | 2007 | --- | | | | | | | |

25. Indique si se trata de : ☐ Ascenso ☐ Cambio de Categoría ☐ Cambio de Status ☐ Ascenso o Traslado Transitorio ☐ Diferencial ☐ Descenso ☐ Reclasificación ☐ Reinstalación ☐ Reubicación ☐ Traslado ☐ Nuevo Nombramiento ☐ Aumento de Sueldo

26. En Caso de cambio a otra agencia indique – Licencia a acreditarse: Compensatorio _____ días.
Licencia Enfermedad _____ días, Concedida _____ días, Licencia Regular _____ días, Concedida _____ días.

| | Fecha de Separación (Ultimo día de Pago) | Licencia sin Paga | Fecha de Efectividad de la Separación |
|---|---|---|---|
| 27. Renuncia | 30/septiembre/06 | | 30/septiembre/06 JUB-PRI |
| 28. Separación | | | |
| 29. Destitución | | | |
| 30. Cesantía | | | |

31. Suspensión de Empleo y Sueldo: Duración: _____ De _____ A _____

32. Muerte: _____ Ultimo día
Fecha: _____ Hora _____ de pago: _____   Participante de Retiro ☐ Si ☐ No

33. Clase de Licencia: ☐ Para estudio ☐ Especial con paga ☐ Maternidad
☐ Militar sin sueldo ☐ Sin sueldo

Duración: _____ DE _____ A _____

34. Comentarios y Explicaciones (si necesita más espacio use el dorso) Se le pagará la suma global de Lic. Regular: 48 días, 0 hr., 16 mins. desde el 2/octubre/2006 (8:00 AM) hasta el 12/diciembre/2006 (8:16 AM) y de Lic. por Enfermedad: 32 días, 2 hrs., 18 minutos desde el 12/diciembre/2006 (8:17 AM) hasta el 31/enero/2007 (10:34 AM). Se acompaña Carta de Renuncia.

35. Si el cambio de puesto es por Certificación de Elegibles indique: Certificación de Elegibles Núm. _____

Si el cambio es a otro puesto, indique el nombre del anterior incumbente: _____

| 36. Si el cambio es a otra agencia el jefe de la agencia donde se origine el cambio o su representante autorizado firmará aquí: | 37. Firma del empleado en casos que fuere necesario |
|---|---|
| 38. Aprobado por: **Carmen Mercedes Torres-Adm. Aux. Rec. Hums.** Jefe de la Agencia o su Representante | |

**ESTADO LIBRE ASOCIADO DE PUERTO RICO
DEPARTAMENTO DE LA FAMILIA**

INFORME DE CAMBIO ESPECIAL NUMERO ___21175___

Cifra de Cuenta _E1110-001-2007-111-1270000-1083_          Símbolo  _G-207-0_

Unidad Apropiada ☐ A
                 ☒ B               _(PAN)  CAROLINA I_
                                   Unidad de Trabajo

Se notifica el siguiente aumento de sueldo a empleados activos al 1 de julio de 2005 y que continúen en el servicio activo al 1 de julio de 2006, comprendidos en las Unidades Apropiadas A y B, conforme a la Resolución Conjunta 157 de 10 de junio de 2006 de la Asamblea Legislativa, equivalente a $100.00 mensuales efectivo el **primero de julio de 2006**.

**NEYSHA M. COLÓN TORRES**
Nombre del Empleado

| "VÉASE NOTIFICACIÓN DEL" | DE CARRERA  REGULAR |
| --- | --- |
| Número de Seguro Social | Status del Empleado |

MAY 29 2016   TÉCNICA ASISTENCIA SOCIAL Y
5750   ADMINISTRACIÓN DE DESARROLLO   FAMILIAR III
Número del Puesto SOCIOECONÓMICO DE LA FAMILIA   Título de Clasificación
Oficina de Recursos Humanos

| 10 | $1,173.00 | $1,835.00 |
| --- | --- | --- |
| Escala de Retribución | Mínimo | Máximo |

| ANTES DEL CAMBIO | | DESPUES DEL CAMBIO | |
| --- | --- | --- | --- |
| Sueldo Mensual (sin diferencial) | ~~$1,892.00~~ $1,992.00 | | ~~$1,992.00~~ $2,092.00 |

Observaciones: _____

CARNEN MERCEDES TORRES, ADM. AUX. REC. HUM.          **4 DE OCTUBRE DE 2006**
Firma de la Autoridad Nominadora o su                 Fecha
Representante Autorizado

sbr                                    3 1 OCT 2006

ESTADO LIBRE ASOCIADO DE PUERTO RICO
## COMISIÓN APELATIVA DEL SERVICIO PÚBLICO
SAN JUAN, PUERTO RICO
WWW.CASP.PR.GOV

|  |  |
|---|---|
| **DEPARTAMENTO DE LA FAMILIA (AGENCIA)**<br><br>-Y-<br><br>**BETTY RIVERA, NEYSHA COLÓN, MARÍA B. HERNÁNDEZ, OLGA I. VARGAS, MYRNA MALDONADO, JOSÉ A. RAMOS, PAULA FORTY (QUERELLANTES)** | **CASOS: AQ-07-273, AQ-07-381, AQ-07-382, AQ-07-455, AQ-07-593, AQ-07-669 CA-07-030**<br><br>**L-13-449**<br><br>**Sobre: Salarios**<br>Sra. Betty Rivera, Neysha Colón, Maria B. Hernández, Olga I. Vargas, Myrna Maldonado, José A. Ramos, Paula Forty<br><br>**Árbitro:**<br>Santos Colón Quiñones |

### LAUDO

**I.   Trasfondo Procesal**

El 18 de abril de 2007, la Sra. Betty Rivera Santana y la Sra. Neysha Colón Torres (Querellantes) radicaron por derecho propio el caso identificado como **AQ-07-273**. El 23 de mayo, la Sra. María B. Hernández Castro radicó el caso identificado como **AQ-07-381**. Ese 23 de mayo, la Sra. Olga I. Vargas Encarnación radicó el caso identificado como **AQ-07-382**. El 20 de junio, la Sra. Myrna Maldonado Cardona radicó el caso identificado como **AQ-07-465**.

El 13 de agosto de 2007, el Sr. José A. Ramos Cruz radicó el caso identificado como **AQ-07-593**. El 4 de septiembre, la Sra. Paula Forty Escobar radicó el caso identificado como **AQ-07-669**. En todos los casos radicados, los querellantes alegaron en esencia que el Departamento de la Familia (Agencia) violó el Convenio Colectivo en su Artículo XXXV, Sección 1 (*Salarios*) al otorgarle a los empleados de carrera un aumento de salario de cien (100.00) dólares que estos recibieron el 15 de octubre de 2006, mientras que a los empleados pensionados, aquí querellados, la Agencia

procedió a darle una bonificación por la cantidad de mil doscientos (1,200.00) dólares, recibido el 30 de octubre y no añadirlo al cómputo del salario que ellos recibían.

Luego de varios trámites procesales, finalmente se señaló la vista de arbitraje para el viernes 5 de octubre de 2012, ante el Árbitro que suscribe. Por la Agencia, Departamento de la Familia, compareció el Lic. Fernando R. Gattorno Jirau, abogado del Departamento de Justicia designado como representante legal y portavoz. Junto a él compareció la Sra. Wilda Ramos, Especialista en Recursos Humanos de la Agencia. Por la parte querellante compareció la Sra. Betty Rivera Santana, Sra. Neysha Colón, Sra. María B. Hernández Castro, Sra. Olga I. Vargas, Sra. Myrna Maldonado, Sr. José A. Ramos Cruz y la Sra. Paula Forty Escobar, todos querellantes en el caso de epígrafe. Antes de continuar con los procesos, éste Árbitro les pidió a los querellantes que designaran un portavoz para facilitar el proceso. Designaron a la Sra. Betty Rivera junto al Sr. José Ramos como portavoces en el proceso.

A ambas partes se les brindó amplia oportunidad de presentar evidencia, tanto testifical como documental, que sustentara sus correspondientes contenciones. El caso quedó sometido para fines de adjudicación ese 5 de octubre de 2012.

## II. Sumisión

No mediando un Acuerdo de Sumisión, las partes suministraron sus correspondientes Proyectos de Sumisión. El proyecto de sumisión de la Agencia lee como sigue:

1. *Que el Honorable Árbitro determine si la controversia es arbitrable a pesar de que los querellantes presentaron sus querellas ya luego de retirados, por lo cual no eran parte de la Unidad alguna y el Convenio Colectivo sobre el cual ellos alegan incumplimiento ya no estaba vigente para esas fechas.*

2. *Que el Honorable Árbitro determine si la controversia es arbitrable, aun cuando los querellantes presentaron su reclamación fuera de los términos establecidos por las partes.*

3. *Que el Honorable Árbitro determine si el Laudo de Arbitraje Número L-09-104, emitido en el caso AQ-06-750 por la Honorable Árbitro Binda Y. Santiago Cortés, es impedimento colateral para la controversia planteada por los querellantes.*

4. *Que el Honorable Árbitro determine, a tenor con los hechos probados, el Convenio Colectivo, conforme a derecho y a la jurisprudencia, si el*

*Departamento de la Familia violó el Artículo XXXV del Convenio Colectivo vigente para el 2005 a pesar de que SPU estipuló las dificultades fiscales por las cuales estaba pasando el Estado para esa fecha, es de conocimiento público que no se aprobó presupuesto nuevo para el año del 2005 por lo cual el Estado estuvo operando con el presupuesto constitucional del año previo, el mismo Convenio Colectivo establece que los aumentos estarán sujetos a la disponibilidad del presupuesto otorgado y aprobado para el Departamento por la Asamblea Legislativa y la legislatura expresamente determinó que la cantidad adeudada se iba a pagar en concepto de bono no recurrente mediante la Resolución Conjunta Número 157 del 10 de julio de 2006.*

5. *Que el Honorable Árbitro determine que si en efecto se le debe computar dicho bono emitido por la Asamblea Legislativa al salario de los querellantes cuanto de dicha cantidad es que los querellantes deben pagar para sus fondos de retiro.*

Por la parte querellante, el proyecto de sumisión lee como sigue:

*"El Árbitro deberá considerar específicamente si la Agencia violó la Sección 9.1 (a) y (c) de la Ley al:*

*La Agencia otorgar a las empleadas, ahora pensionadas, como bonificación y no como sueldo con su debida aportación al Sistema de Retiro, la cantidad de $1,200.00 bruto el día 30 de octubre de 2006 cuando los empleados con status regular lo recibieron el 15 de octubre de 2006. Lo anterior, en violación al Artículo XXXV, Sección 1 del Convenio Colectivo. Además, que el aumento de $100.00 a partir de julio de 2005 hasta junio de 2006 se acredite según los salarios recibidos durante los meses a partir de julio de 2006 hasta el presente."*

Por otro lado, mediante carta con fecha del 21 de mayo de 2007, la Comisión de Relaciones del Trabajo del Servicio Público,[1] como parte de sus poderes y facultades según se detalla en la Sección 11.15 de la Ley Núm. 45 – 1998, según enmendada, a través de la Directora de la División de Investigaciones para ese entonces, Lic. Marisol

---

[1] Nombre de la Agencia creada en virtud de la Ley Núm. 45 – 1998, según enmendada, 3 LPRA §1451 *et seq.* Posteriormente fue fusionada con la antigua *Comisión Apelativa del Sistema de Administración de Recursos Humanos* (CASARH) por el Plan de Reorganización Núm. 2 de 26 de julio de 2010, creando así a la *Comisión Apelativa del Servicio Público* (CASP). El Artículo 8, inciso (K) del Plan de Reorganización Núm. 2, supra, recogió similar disposición.

Laudo **L-13-449**
Casos **AQ-07-273, AQ-07-381, AQ-07-382, AQ-07-455, AQ-07-593, AQ-07-669** DF y Betty Rivera y otros
Página **4 de 18**

Díaz Guerrero, instruyó a este Árbitro a que considerara si la Agencia había violado la Sección 9.1 (a) y (c) de la Ley Núm. 45, *supra*, al:

> *La Agencia otorgar a las empleadas, ahora pensionadas, como bonificación y no como sueldo con su debida aportación al Sistema de Retiro, la cantidad de $1,200.00 bruto el día 30 de octubre de 2006 cuando los empleados con status regular lo recibieron el 15 de octubre de 2006. Lo anterior, en violación al Artículo XXXV, Sección 1 del Convenio Colectivo. Además, que el aumento de $100.00 a partir de julio de 2005 hasta junio de 2006 se acredite según los salarios recibidos durante los meses a partir de julio de 2006 hasta el presente.*

Presentados ambos proyectos de sumisión, luego de evaluar la prueba testifical y documental desfilada y admitida en sala, las cláusulas del Convenio Colectivo vigente, los argumentos presentados por los testigos, el Cargo contra la Agencia diferido por la Comisión y acorde con la Sección **711(b)** del Reglamento de la Comisión, la controversia a dilucidar es la siguiente:

> *Determinar inicialmente si la querella es arbitrable, sustantiva o procesalmente. De no ser arbitrable, que el Árbitro desestime las querellas.*

> *De ser arbitrable las querellas, que se determine si se le debe computar dicho bono emitido por la Asamblea Legislativa al salario de los querellantes, con cualquier otro remedio que en derecho proceda.*

> *En adición, el Árbitro deberá considerar específicamente si la Agencia violó la Sección 9.1 (a) y (c) de la Ley Núm. 45 al:*

> *La Agencia otorgar a las empleadas, ahora pensionadas, como bonificación y no como sueldo con su debida aportación al Sistema de Retiro, la cantidad de $1,200.00 bruto el día 30 de octubre de 2006 cuando los empleados con status regular lo recibieron el 15 de octubre de 2006. Lo anterior, en violación al Artículo XXXV, Sección 1 del Convenio Colectivo. Además, que el aumento de $100.00 a partir de julio de 2005 hasta junio de 2006 se acredite según los salarios recibidos durante los meses a partir de julio de 2006 hasta el presente.*

## III. Hechos

1. La Sra. Betty Rivera Santana laboraba para el Departamento de la Familia. Trabajo en la Agencia por espacio de treinta y un años y medio (31½). Ocupaba un puesto de Técnico de Asistencia Social y Familiar III en el Departamento de

la Familia, antes de acogerse a los beneficios del retiro. Estaba incluida dentro de la Unidad Apropiada B, para fines de negociación colectiva.

2. La Sra. María B. Hernandez Castro laboraba para el Departamento de la Familia como Oficinista II.

3. La Sra. Olga I. Vargas Encarnación laboraba en la Agencia como Técnica de Asistencia Social y Familiar III.

4. La Sra. Myrna Maldonado Cardona laboraba en la Agencia como Auxiliar de Sistemas de Oficina III.

5. El Sr. José A. Ramos Cruz laboraba en la Agencia como Técnico de Asistencia Social y Familiar III.

6. La Sra. Paula Forty Escobar laboraba en la Agencia como Auxiliar de Sistema de Oficina IV.

7. La Sra. Wilda Ramos es Especialista en Recursos Humanos de la Agencia. Lleva laborando en el Departamento de la Familia desde 1989 hasta el 1993, donde se trasladó a otra Agencia hasta el 2002. Desde el año 2002 regresó a laboral al Departamento de la Familia hasta el presente en la División de Recursos Humanos. Para el año 2005, era la Secretaria Auxiliar de Recursos Humanos.

8. El 26 de febrero de 2003, la Agencia y la Unión negociaron los Convenios Colectivos para las Unidades Apropiadas A y B. Eran vigentes desde el 26 de febrero de 2003 hasta la media noche del día 25 de febrero de 2006, ambas fechas incluidas.

9. En julio de 2005, hubo desacuerdos entre las ramas Ejecutiva y Legislativa, en cuanto a la aprobación del presupuesto de ese año fiscal. Al no aprobarse dicho presupuesto, la Agencia funcionó con el presupuesto del año fiscal anterior.

10. Para el 1 de julio de 2005, se esperaba que los empleados querellantes recibieran un aumento de sueldo, según pactado en el convenio, por la cantidad de cien (100.00) dólares. Dicho aumento nunca fue recibido por ellos.

11. El 28 de julio, la Secretaria del Departamento de la Familia para ese entonces, Sra. Yolanda Zayas y la Subdirectora Ejecutiva de la Unión en ese momento,

Lic. Genoveva Valentín, suscribieron una **Estipulación.**[2] En dicha estipulación, ambas partes reconocen que no se vio reflejado el aumento de salario pactado para el 1 de julio, por la cantidad de cien (100) dólares. Además reiteraron el deseo de cumplir con los acuerdos establecidos, por lo que acordaron extender los términos para la radicación de querellas hasta tanto fuese resuelta la aprobación del presupuesto.

12. El 29 de agosto de 2005,[3] la Sra. Jenice M. Vázquez Pagán, Gerente de Relaciones Laborales de la Agencia, suscribió un documento titulado **Estipulación Sobre el Aumento Efectivo al 1ro de julio de 2005.** En su comunicado dirigido a los Administradores, Administradores Auxiliares y Directores Regionales, la Sra. Vázquez anejó copia de la estipulación y les indicó a estos que debían notificar la información contenida en la estipulación a las distintas Administraciones para evitar radicaciones de querellas a destiempo.

13. El 10 de julio de 2006, la Asamblea Legislativa aprobó la **Resolución Conjunta Núm. 157,** con vigencia desde el 1ro de julio de 2006. Esta resolución asignaba a las agencias e instrumentalidades para el año fiscal 2006 – 2007 la cantidad de ciento cuarenta millones novecientos cincuenta mil (140,950,000) dólares con cargo al Fondo Presupuestario y al Fondo General para llevar a cabo diferentes fines según se detalla en la misma. En esa resolución se asignó la cantidad de veintiséis millones (26,000,000) dólares para el pago de convenios colectivos vigentes para varias agencias, entre esa el Departamento de la Familia y sus componentes.

14. Hasta el 30 de septiembre de 2006, la Sra. Betty Rivera Santana y los otros querellantes, estuvieron ejerciendo labores en la Agencia. A partir del 1 de octubre de 2006, se acogieron a los beneficios del retiro meritorio por años de servicio.

15. El 9 de octubre, el Secretario del Departamento de la Familia, Sr. Felix V. Matos Rodríguez, suscribió un documento titulado *Normas Para la Concesión de una Bonificación Especial No Recurrente Conforme a la Resolución Conjunta*

---

[2] Exhíbit Número 3 de los querellantes.

[3] Exhíbit Número 3 de la Agencia.

*157 Emitida por la Asamblea Legislativa de Puerto Rico el 10 de julio de 2006.* En ese documento, el Secretario estableció unas guías para el otorgamiento de la Bonificación Especial No Recurrente por la cuantía de $1,200.00 para cubrir el periodo del 1 de julio de 2005, hasta el 30 de junio de 2006 para los empleados miembros de ambas Unidades Apropiadas.

16. El 30 de octubre de 2006, los empleados pensionados recibieron la cantidad de 1,200.00 dólares correspondiente al aumento de sueldo para el año 2005. Pero ellos lo recibieron como bonificación y los empleados regulares lo recibieron como un aumento de sueldo. Reflejado como parte en su sueldo regular mensual.

17. El 20 de julio de 2007, entró en vigor el siguiente Convenio Colectivo entre la Agencia y la Unión. Su vigencia era de tres (3) años, a partir desde el 20 de julio de 2007 hasta la media noche del 20 de julio de 2010.

## IV. Planteamiento de Arbitrabilidad

### a. Agencia

La Agencia, a través del Lic. Gattorno, indicó para record que entiende que el caso no es arbitrable bajo dos planteamientos. En primer término que los empleados querellantes, al momento de su reclamo, estaban retirados de la Agencia. Por lo que no eran parte de la Unidad Apropiada ni estaban cobijados por el convenio colectivo suscrito entre las partes. En segundo término, indicó que el caso tampoco es arbitrable procesalmente. Esto ya que los querellantes no presentaron Paso I ni Paso II, según establece el Convenio Colectivo. Que esta actuación le priva de jurisdicción a este Árbitro para entrar a resolver los méritos de la controversia.

### b. Querellantes

Los querellantes argumentaron en sala, a través de sus portavoces, que para el año 2006, ya estaban jubilados. Que no había forma de hacer el trámite antes de que ocurriera el pago del dinero. Añadieron que en el Artículo XXXV, Sección (1) establece que efectivo al 1 de junio de 2005 recibirían un aumento salarial de $100.00. Que para esa fecha no lo recibieron. Dijeron además que por todo un año no recibieron dicho aumento.

Añadieron que, de no aprobarse por la Asamblea Legislativa un nuevo presupuesto, las Agencias tienen que continuar funcionando con el presupuesto anterior. Que esto no quiere decir que la Agencia funcionará con el dinero restante del presupuesto, sino que estarían funcionando con la misma cantidad que tenían asignado el año anterior. Mencionó la Sra. Rivera que su sueldo para el momento de los hechos era de $1,945.00 y que debía reflejarse el aumento de sueldo de 100.00 dólares retroactivo al 2005, pero que no fue así.

### c. Análisis sobre Arbitrabilidad

Corresponde determinar inicialmente si la querella es arbitrable, sustantiva o procesalmente. De no ser arbitrable, que el Árbitro desestime las querellas. Veamos.

En el arbitraje en la esfera federal, como en el arbitraje a nivel local, es doctrina claramente establecida que el cumplimiento estricto con las disposiciones contempladas en los convenios colectivos para el procesamiento de querellas es fundamental. *Rivera vs. Coop. Ganaderos de Vieques,* 110 DPR. 621 (1981). La Arbitrabilidad es una defensa levantada por una de las partes involucradas, usualmente el patrono, para indicar que el adjudicador o el foro donde se presentó la controversia no poseen facultad o competencia para entrar en los méritos y resolver la misma. En términos generales, es la jurisdicción que posee el Árbitro para resolver lo presentado. La Arbitrabilidad se divide en dos vertientes: la sustantiva y la procesal.

En el caso de la Arbitrabilidad Sustantiva, esta es una protección levantada donde se alega que la sustancia de la controversia no fue negociada, o la sustancia de la controversia presentada no es materia que pueda ser resuelta por el foro donde se presentó. En cuanto a la Arbitrabilidad Procesal, es una defensa alegando que no se siguieron los términos pactados en el convenio o no se siguieron los pasos acordados para la resolución de la controversia.

Según ha expuesto el Tribunal Supremo de los Estados Unidos, la obligación de arbitrar es una criatura del convenio colectivo y que una parte no puede ser obligada a arbitrar cualquier materia en ausencia de una obligación contractual. *Nolde Brothers v.*

*Bakery & Confectionery Workers Union, Local No. 358*, 430 US 243, 255 (1977).[4] Pero igualmente ha sido resuelto que arbitrar un agravio en particular no debe ser negado, a menos que pueda afirmarse, con clara seguridad, que la cláusula de arbitraje no es susceptible de una interpretación que cubra el conflicto presentado. Las dudas se deben resolver a favor de la arbitrabilidad. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 US 574, 582-583.[5] Contando con todo lo anterior como marco conceptual, veamos la jurisdicción que poseemos.

Primeramente la Agencia alegó que los empleados querellantes, al momento de su reclamo, estaban retirados de la Agencia, por lo que no eran parte de la Unidad Apropiada. Pero tenemos que los hechos que dan margen a la controversia eran el aumento de sueldo que les correspondía en el 2005 y en este año eran empleados activos aún. Que para el 10 de julio del año 2006, la Asamblea Legislativa finalmente lo concedió mediante una Resolución Conjunta, la Núm. 157, asignado una partida para esos propósitos. En ese momento que fue concedido, los querellantes eran empleados del Departamento de la Familia y eran parte de la Unidad Apropiada con todos los derechos y privilegios que les correspondía. Por tanto, eran acreedores de dicha remuneración. Remuneración que la Agencia les otorgó como bonificación y no lo computó al salario mensual de estas personas. Ellos se acogieron a los beneficios del retiro posterior a la resolución de la Asamblea Legislativa.

Segundo, alegó la Agencia que el caso tampoco es arbitrable procesalmente porque los querellantes no presentaron Paso I ni Paso II, según establece el Convenio Colectivo. Que esta actuación le priva de jurisdicción a este Árbitro para entrar a resolver los méritos de la controversia. Cabe preguntarse, ¿Qué poder decisional puede tener un empleado de menor jerarquía que revierta la decisión de la Autoridad Nominadora? En este tipo de caso, donde el jefe de la Agencia ya tomó una determinación, tal procedimiento no tiene que agotarse cuando su observancia rigurosa

---

[4] "Our prior decisions have indeed held that the arbitration duty is a creature of the collective-bargaining agreement and that a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so." *Nolde Brothers v. Bakery & Confectionery Workers Union, Local No. 358*, 430 US 243, 255 (1977).

[5] "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steel Workers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 582-583.

Laudo L-13-449
Casos AQ-07-273, AQ-07-381, AQ-07-382, AQ-07-455, AQ-07-593, AQ-07-669 DF y Betty Rivera y otros
Página 10 de 18

representa un acto fútil, un gesto vacío, un paso irreal o imposible. *Hermandad vs. Fondo del Seguro del Estado*, 112 DPR 051. Por tal razón no se tendría que radicar el caso en niveles inferiores, sino que pasaría a un foro de mayor jerarquía, jurisdiccionalmente hablando, donde pueda ventilarse la querella.

Cabe señalar que la Agencia, entre la evidencia suministrada, admitida e identificada como Exhíbit Número 1 y Número 2, entregó el Paso I y II de la Sra. Betty Rivera Santana. Nos preguntamos, ¿Cómo es posible que alegue el representante de la Agencia que no se siguieron los pasos del Convenio Colectivo y luego suministre como evidencia de la propia Agencia dichos formularios? Sobre todo, cuando el formulario identificado como Paso II tiene el sello de recibido por el Departamento de la Familia, Secretaria Auxiliar de Recursos Humanos y Relaciones Laborales el 4 de mayo de 2007.

Nosotros estamos llamados a velar por nuestra jurisdicción. *Sociedad de Bienes Gananciales vs. AFF*, 108 DPR 644 (1979). De carecer de jurisdicción, lo único que se puede hacer es así declararlo y desestimar el caso. *Vega Rodríguez vs. Telefónica*, 2002 TSPR 50. El término *"jurisdicción"*[6] es definido como [...] autoridad y poder inherente bajo los cuales los tribunales y funcionarios jurídicos consideran y resuelven los pleitos." En específico, la jurisdicción sobre la materia "se refiere a la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal". *Sola Gutiérrez vs. Bengoa Becerra*, 2011 DTS 119. Dado que la jurisdicción es el poder o autoridad que se posee para considerar y decidir un caso o controversia, reconocemos en el foro de arbitraje que la consecuencia de su ausencia no es susceptible de ser subsanada. *González Sotomayor vs. Mayagüez Resort & Casino*, 2009 DTS 140. Pero en el presente caso si tenemos jurisdicción.

Vemos claramente que ninguno de los planteamientos hechos por la Agencia muestra una falta de jurisdicción para resolver la controversia ante este Árbitro. Por tanto, las querellas presentadas en este foro son arbitrables, tanto sustantiva como procesalmente.

---

[6] Ignacio Rivera García (1989), *Diccionario de Términos Jurídicos*. 2da. Edición, Equity Publishing Corp.

## V. Alegatos

### a. Agencia

La Agencia, a través del Lic. Gattorno, esbozó en sala que la Agencia se mantiene firme en cuanto a la falta de jurisdicción. Añadió que la Agencia tomó en consideración a los empleados para el presupuesto del año 2005, los solicitó y los defendió ante la Asamblea Legislativa. Recalcó que, independientemente, la Agencia hizo las gestiones que estaba obligada a hacer según el convenio colectivo. Que el hecho de trabajar con el presupuesto del año anterior, sostiene la posición de que no había dinero para otorgar un aumento de sueldo.

Abundó que la Asamblea Legislativa decretó esos fondos para que se pudiera cumplir con los compromisos programáticos, establecidos en el convenio colectivo. Finalizó sustentando que la Agencia, en ningún momento ha violentado las disposiciones contractuales del convenio.

### b. Querellantes

Los querellantes, argumentaron en sala a través de sus portavoces, que la controversia es un aumento salarial para el periodo de julio de 2005 a junio de 2006. Que como tal, la Agencia tenía que procesarlo como un retroactivo salarial y no como bono de convenio colectivo. Que la Cámara hizo la resolución para cumplir con las obligaciones de convenio colectivo. Abundó el Sr. Cruz que en todo momento la resolución se trató como retroactivo salarial y no como bono de convenio, que fue la interpretación que le dio la Agencia.

Indicó además la Sra. Betty Rivera que para ese momento eran todos ellos empleados de la Agencia. Que en el presupuesto del año 2005 ellos fueron contabilizados como empleados activos. Entiende que el dinero asignado para su sistema de retiro estaba presupuestado en ese año. Finalizaron solicitando que se corrija el cómputo de las aportaciones al retiro y se incluya para ese año como parte de su salario.

## VI. Análisis

Antes de entrar en los méritos de la controversia, debemos discutir un planteamiento hecho por la Agencia. La Agencia alegó en su proyecto de sumisión que el Laudo de Arbitraje Número L-09-104, emitido en el caso AQ-06-750 por la Honorable

Árbitro Binda Y. Santiago Cortés, es impedimento colateral para la controversia planteada por los querellantes. Veamos.

La defensa de *impedimento colateral por sentencia* (*collateral estoppel by judgment*) es una doctrina con bases de índole económica y procesal. Por vía jurisprudencial se ha adoptado el impedimento colateral por sentencia como modalidad de la doctrina de cosa juzgada. *Fatach vs. Seguros Triple S, Inc.*, 1999 DTS 041. La defensa de impedimento colateral busca evitar, por quién la levanta, sujetarse a juicios repetidos sobre la misma controversia, promover economía judicial evitando litigios innecesarios y evitar sentencias inconsistentes. Esta puede plantearse en dos formas: defensiva u ofensivamente. *A&P General Contractors, Inc. vs. Asociación Cana, Inc.*, 110 DPR 753 (1981). La forma defensiva es cuando un demandado la invoca para impedir la litigación de un asunto ya planteado y perdido por el demandante en un pleito anterior. La manera ofensiva es cuando un demandante la invoca para impedir al demandado relitigar aquellos asuntos previamente litigados y perdidos frente a otra parte.

En el presente caso, la Agencia alegó, de manera defensiva, que el Laudo Número L-09-104[7] constituía un impedimento colateral. El laudo antes mencionado, radicado por la Unión, versaba en si procedía o no el pago de intereses acumulados desde julio de 2006 hasta octubre de 2006 por la dilación para el pago del referido aumento. En ese caso, la Árbitro determinó que no tenía facultad de conceder el pago de intereses como penalidad por realizarse el pago con demora. Vemos claramente que no es la misma controversia planteada ante éste Árbitro. Por tal razón, no le asiste la razón a la Agencia, ya que la defensa de impedimento colateral no es de aplicabilidad en el presente caso. Resuelto el punto anterior, veamos la controversia planteada en el presente caso.

Corresponde determinar si se le debe computar dicho bono emitido por la Asamblea Legislativa al salario de los querellantes, con cualquier otro remedio que en derecho proceda. En adición, considerar específicamente si la Agencia violó la Sección 9.1 (a) y (c) de la Ley Núm. 45 al otorgar la Agencia a las empleadas, ahora pensionadas, como bonificación y no como sueldo con su debida aportación al Sistema

---

[7] Con fecha del 4 de septiembre de 2009.

de Retiro, la cantidad de $1,200.00 bruto el día 30 de octubre de 2006 cuando los empleados con status regular lo recibieron el 15 de octubre de 2006. Lo anterior, en violación al Artículo XXXV, Sección 1 del Convenio Colectivo. Además, que el aumento de $100.00 a partir de julio de 2005 hasta junio de 2006 se acredite según los salarios recibidos durante los meses a partir de julio de 2006 hasta el presente. Veamos.

Ya en reiteradas ocasiones hemos expresado que en Puerto Rico existe una fuerte política pública a favor del arbitraje como método alterno para la solución de conflictos. *Crufon Const. vs. Aut. de Edif. Públicos,* 2002 TSPR 16; *Pagán vs. Hosp. Dr. Pila,* 114 DPR. 224 (1983). Se entiende que el arbitraje es el medio menos técnico, más flexible, menos oneroso y, por tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral. *Fondo vs. Unión de Médicos,* 2007 TSPR 35. Esta política pública se reafirma en el sector público con la aprobación de la Ley Núm. 45 del 1998, según enmendada.[8] Específicamente en su Artículo 2, Sección 2.5 de la ley.

En cuanto a la interpretación de las cláusulas de un Convenio Colectivo los Árbitros han sido consistentes adoptado disposiciones del Código Civil de Puerto Rico, en específico aquellas relacionadas a la norma de hermenéutica que dispone que "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá esta sobre aquellas". 31 LPRA § 3471. Así mismo, el Convenio Colectivo es la Ley entre las partes, siempre y cuando sus disposiciones no contravengan las leyes, la moral o el orden público. *Vélez Miranda vs. Servicios Legales,* 1998 TSPR 001. Cualquier disposición contractual en contravención a la ley, la moral y el orden público carece de toda eficacia. *Pagán vs. Fund. Hosp. Dr. Pila,* 114 DPR. 224 (1983). Es por esto que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos". Art. 1044. 31 LPRA § 2994.  Contando como marco conceptual con todo lo anterior, veamos que nos indica la letra del Convenio Colectivo.

---

[8] 3 LPRA §1451 *et seq.*

El Convenio Colectivo para el periodo del 2003 al 2006 indica en su Artículo XXXV (Salarios) lo siguiente:

### Artículo XXXV

### Salarios

**Sección 1.** Durante la vigencia del Convenio Colectivo el Departamento concederá a los empleados y empleadas cubiertos por este Convenio Colectivo los aumentos salariales mensuales que se indican a continuación, sujeto a la aprobación de la asignación presupuestaria de la Rama Legislativa, o los que otorguen por ley u orden ejecutiva.

$150.00 mensuales a ser efectivo el primero 1 de julio de 2003

$150.00 mensuales a ser efectivo el primero 1 de julio de 2004

$100.00 mensuales a ser efectivo el primero 1 de julio de 2005

**Sección 2.** El Departamento solicitará y defenderá el presupuesto correspondiente para implantar los aumentos aquí pactados. Sin embargo, la Unión reconoce que la facultad constitucional para la aprobación del presupuesto general recae sobre la Asamblea Legislativa por lo que los aumentos otorgados dependerán de la aprobación de la Asamblea Legislativa.

**Sección 3.** Si por legislación se conceden aumentos de sueldo a los empleados(as) públicos cubiertos por la Ley Núm. 45 de 25 de febrero de 1998, según enmendada, que sean mayores a los convenidos en este artículo, los aumentos aquí acordados se ajustarán a lo dispuesto mediante la legislación que se apruebe a esos efectos. Disponiéndose que los aumentos acordados en este artículo no serán adicionales a los concedidos mediante legislación. (Énfasis nuestro)

Vemos que de la letra del convenio surge la obligación de la Agencia de otorgar aumentos de sueldo, específicamente en ciertas fechas establecidas con una cantidad determinada. Además acordaron las partes que la Agencia solicitará y defenderá el presupuesto para implantar los aumentos pactados. De igual manera, la Unión reconoce la facultad de la Asamblea Legislativa para la aprobación del presupuesto.

En el presente caso, es un hecho que para el 1 de julio de 2005 no se pudo dar el aumento de sueldo a los empleados en el Departamento de la Familia. Esto por haber problemas en la aprobación del presupuesto solicitado. Ante la situación de no ser aprobado el presupuesto para ese año, la Agencia tuvo que operar con el presupuesto del año anterior. El presupuesto del año anterior no contemplaba el aumento para ese otro año, por lo que no pudo ser concedido.

Posteriormente, en el año 2006, la Asamblea Legislativa aprobó la *Resolución Conjunta Núm. 157 del 10 de julio de 2006*.[9] La mencionada resolución dice en lo pertinente lo siguiente:

> **Sección 1.** – Se asigna a las agencias e instrumentalidades públicas, durante el año fiscal 2006-2007, la cantidad de ciento cuarenta millones novecientos cincuenta mil (140,950,000) dólares, con cargo al Fondo Presupuestario, según dispuesto en la Ley Núm. 147 de 18 de junio de 1980, según enmendada, por la cantidad de ochenta y ocho millones novecientos cincuenta mil (88,950,000) dólares, y el restante con cargo al Fondo General, para llevar a cabo diferentes fines según se detalla a continuación:

| Agencia | Asignación |
|---|---|
| **A.** Administración de Familias y Niños | |
| 1. Para el Plan de Mecanización, para realizar pagos a hogares de crianza y proveedores de servicios | $5,000,000 |
| 2. Para el pago del bono retroactivo del convenio colectivo de los empleados del Departamento de la Familia | $8,900,000 |
| **Subtotal** | **13,900,000** |

Vemos que de la propia resolución, la Asamblea determinó una cuantía monetaria para que el Departamento de la Familia realizara un pago a los empleados de esta agencia, con un carácter retroactivo. Cabe señalar que, aunque hace mención a bono, sabido es que el nombre no hace la cosa. *Johnson & Johnson vs. Municipio de San Juan*, 2007 DTS 226. Por tanto, entendemos que la partida determinada estaba relacionada al salario de estos empleados que la Agencia estaba comprometida a conceder el año anterior y no el pago de una bonificación con carácter retroactivo.

Ahora bien, el 9 de octubre de 2006, el Secretario de la Agencia, Felix V. Matos Rodríguez, estableció y suscribió unas *Normas Para La Concesión de una Bonificación Especial No Recurrente Conforme a la Resolución Conjunta 157 emitida por la Asamblea Legislativa de Puerto Rico el 10 de julio de 2006*. Este documento tiene como propósito establecer unas guías uniformes para el otorgamiento

---

[9] Exhíbit Número 6 de la Agencia.

Laudo L-13-449
Casos AQ-07-273, AQ-07-381, AQ-07-382, AQ-07-455, AQ-07-593, AQ-07-669 DF y Betty Rivera y otros
Página **16 de 18**

de la Bonificación Especial No Recurrente por la cuantía de $1,200.00 que cubre el periodo del 1 de julio de 2005 hasta el 30 de junio de 2006 para todos los empleados de las unidades apropiadas, cubiertas por los convenios colectivos. En su Sección IV (***Guías para la elegibilidad y otorgamiento de la bonificación especial no recurrente***) indica lo siguiente:

1. Los(as) empleados(as) miembros de las Unidades Apropiadas A y B cubiertas por los Convenios Colectivos, entiéndase aquellos(as) empleados(as) de carrera regular o probatorio y que al 1 de julio de 2005 estuviere(n) prestando servicio activo para el Departamento de la Familia en puestos de carrera.

2. El pago de la Bonificación Especial No Recurrente de $1,200 a los(as) empleados(as) cubiertos por los Convenios Colectivos será en proporción al tiempo trabajado durante el periodo del 1 de julio de 2005 hasta el 30 de junio de 2006 y por el cual devengaban salarios por ello.

3. No serán acreedores(as) del pago de esta Bonificación Especial No Recurrente personal excluido de las Unidades Apropiadas A y B cubiertas en los Convenios Colectivos de la Agencia y funcionarios(as) gerenciales o de confianza.

A base de estas guías, los empleados aquí querellantes cumplían a cabalidad con todos los requisitos para la concesión del mismo. Eran (**1**) miembros de las Unidades Apropiadas y al 1 de julio de 2005 estaban prestando servicio activo en puestos de carrera, (**2**) laboraron todo el periodo entre el 1 de julio de 2005 hasta el 30 de junio de 2006 y por el cual devengaban salarios por ello y (**3**) no ocupaban puestos excluidos de las unidades apropiadas. Por tanto, si ellos cumplían con todos los requisitos establecidos por la propia Agencia para el otorgamiento de esto, ¿Por qué la Agencia se los concedió a ellos como bono y al resto del personal se lo incluyó en el salario mensual? Más aún, cuando ellos se acogieron a los beneficios de retiro por servicios meritorios posterior a la emisión de la Resolución de la Asamblea Legislativa.

Los querellantes establecieron que no recibieron la cantidad de $1,200.00 como parte de su salario, cuando ellos eran merecedores de dicha cuantía. La Agencia tenía el deber de presentar evidencia en sala que derrotara la presunción hecha por los querellantes. Únicamente se circunscribió a indicar que estos no eran empleados de la Agencia cuando radicaron los casos y que no se siguieron los pasos del convenio colectivo. La testigo de la Agencia, Sra. Wilda Ramos y a base de las preguntas hechas

por el representante legal de la Agencia, se delimitó a indicar lo ocurrido para la aprobación del presupuesto. No presentó evidencia que demostrara que estos empleados no eran empleados para el año 2005, que no eran miembros de las unidades apropiadas y que habían recibido dicha remuneración con su salario, no como bonificación. Debemos recordar que meras alegaciones no constituyen prueba. *Reece Corp., vs. Ariela Inc.,* 122 DPR 270 (1988). Por tanto, la Agencia no sustentó su posición con evidencia demostrativa de su perspectiva.

En cuanto a las prácticas ilícitas aquí diferidas, entendemos que la Agencia violó el Convenio Colectivo. Esto ya que los empleados querellantes, les era aplicable las disposiciones de ese convenio por ser ellos parte de las Unidades Apropiadas al momento de los hechos. En ese momento histórico determinado, eran merecedores de todos los beneficios y privilegios que otorgaba el Convenio Colectivo suscrito entre las partes. La Agencia no tenía facultad para enmendar el contrato de trabajo unilateralmente. Más aún, utilizar unas normas establecidas por una parte que nunca fueron negociadas para enmendar disposiciones contractuales.

Por los fundamentos antes expuestos, emitimos el siguiente

## LAUDO

Se le debe computar dicho bono emitido por la Asamblea Legislativa al salario mensual de los querellantes.

Se ordena a la Agencia, Departamento de la Familia, que en un término no mayor de treinta (**30**) días calendario, a partir del recibo del presente Laudo, enmendar toda documentación existente en los expedientes de personal de los empleados aquí querellantes, referente al salario que estos recibían para fines de cómputo de beneficio de retiro para la Administración de los Sistemas de Retiro, estableciendo el salario correcto que les correspondía para el año 2005.

Se ordena a la Agencia que, en un término no mayor de cuarenta y cinco (**45**) días calendario, luego de enmendar toda documentación existente en los expedientes de personal de los querellantes referente al salario para fines de cómputo de beneficio por retiro, hacer las gestiones pertinentes y corregir el cómputo para fines de beneficio de retiro con la Administración de los Sistemas de Retiro, del salario que los empleados querellantes eran merecedores y no fue computado debidamente.

Laudo L-13-449
Casos AQ-07-273, AQ-07-381, AQ-07-382, AQ-07-455, AQ-07-593, AQ-07-669 DF y Betty Rivera y otros
Página 18 de 18

Se ordena a la Agencia que, luego de hacer las correcciones con la Administración de los Sistemas de Retiro y computársele a ellos el salario correcto, en un término no mayor de quince (**15**) días calendario notificarle por escrito a cada uno de los querellantes aquí incluidos, el cumplimiento de lo aquí ordenado. Deberá incluir con su escrito toda documentación o evidencia que sustente el cumplimiento de lo aquí ordenado.

Se apercibe a la querellante, Sra. Betty Rivera Santana, que de no estar de acuerdo con el resultado de la determinación de éste Árbitro sobre las prácticas ilícitas de trabajo aquí diferidas, deberá así informárselo a la Comisión no más tarde de diez (**10**) días calendario después de haber sido notificado este **Laudo**. En su comunicación a la Comisión, la querellante deberá expresar en detalle las razones por las cuales entiende que el laudo no dispuso de las alegadas prácticas ilícitas diferidas en el presente cargo.

De igual forma, se le apercibe a la parte adversamente afectada por el presente Laudo que podrá presentar un recurso de revisión judicial ante el Tribunal de Primera Instancia[10] dentro del término jurisdiccional de treinta (**30**) días,[11] contados a partir de la fecha de archivo en autos de la notificación del presente **Laudo**. De igual forma, copia del recurso de revisión judicial deberá ser notificado a todas las partes en el presente caso. De no presentarse un recurso de revisión judicial dentro de los términos antes dispuestos, este Laudo advendrá final y firme.

**REGÍSTRESE Y NOTIFÍQUESE.**

En San Juan, Puerto Rico a 31 de octubre de 2013.

Santos Colón Quiñones
Árbitro

---

[10] *Hospital del Maestro vs. Unión Nacional*, 2000 DTS 130; 2000 TSPR 130.

[11] *UIL de Ponce vs. Dest. Serrallés Inc.*, 116 DPR 348 (1985).

## NOTIFICACIÓN

**Certifico**: Que en el día de hoy se ha enviado, vía correo ordinario, copia del presente **Laudo de Arbitraje** a:

**Lic. Fernando R. Gattorno Jirau**
**Departamento de Justicia**
Oficina de Litigios Generales
Subdivisión de Laboral
PO Box 9010192
San Juan, PR 00902-0192

**Sra. Paula Forty Escobar**
PO Box 332
Palmer, PR 00721-0332

**Sra. Betty Rivera Santana**
Alturas de Parque Ecuestre
Calle Kelimar 313
Carolina, PR 00987

**Sra. Neysha Colón Torres**
Urb. El Comandante
872 Calle María Giusti
San Juan, PR 00924

**Sra. María B. Hernández Castro**
HC 4 Box 15633
Carolina, PR 00987

**Sra. Olga I. Vargas Encarnación**
Urb. Castellana Gdns. N – 10
Calle 14
Carolina, PR 00983

**Sra. Myrna Maldonado Cardona**
Urb. Country Club
Calle 523 Bloque QE – 20
Carolina, PR 00982

**Sr. José A. Ramos Cruz**
PO Box 1374
Luquillo, PR 00773-1374

**Sr. Luis Madera Echevarría**
Servidores Públicos Unidos de P. R.
P. O. Box 13695
San Juan, Puerto Rico  00908-3695

En San Juan, Puerto Rico, a 31 de octubre de 2013



**REYNALDO GONZÁLEZ RODRIGUEZ**
Secretario de la Comisión

arg