# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

In re:

**THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,
as representative of**

**PROMESA
TITLE III
Case No. 17-BK-3283**

**THE COMMONWEALTH OF PUERTO RICO, et al.,
Debtors[1]**

**(LTS)**

---

## MOTION SUBMITTING CERTIFIED TRANSLATION OF THE JUDGMENT DATED APRIL 22, 2016, ENTERED BY THE COURT OF FIRST INSTANCE OF PUERTO RICO

**To the Honorable United States District Court Judge Laura Taylor Swain**:

**COME NOW,** Movants, forty-four Correction Officers ( "44 COs" ) of the Department of Corrections and Rehabilitation of the Commonwealth of Puerto Rico (the "DCR"), by and through the undersigned attorney, to respectfully state, allege and pray:

1. The appearing 44COs filed a Motion for Allowance and Payment of an Administrative Expense Priority at ECF number 17134.

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

2. The 44COs filed a motion at ECF number 17147 requesting leave to file the Judgment entered by the Court of First Instance of Puerto Rico on April 22, 2016, in the Spanish language and requested a 30- day term to file the certified translation.

3. In compliance with PR-Local District Court Rule 5, the 44COs hereby submit the certified translation of the Judgment entered by the Court of First Instance of Puerto Rico dated April 22, 2016.

**WHEREFORE**, the appearing 44COs respectfully pray for this Honorable Court to take notice of the filing of the certified translation of the Judgment entered by the Court of First Instance of Puerto Rico dated April 22, 2016.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 22 th day of July 2021.

I HEREBY CERTIFY, in accordance with Fed. R. Bankr. P. 9014(b), Fed. R. Bankr. P. 7004(b), and the Court's Fourteenth Amended Notice, Case Management and Administrative Procedures Order [ECF 15894-1] (the "CMP Order"), that we electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the parties appearing in said system including the US Trustee in addition, to all those parties registered to receive notice within the electronic notification service, as well as sent a true and exact copy of the foregoing was sent by electronic mail upon all the parties listed in the Master Service UST and by U.S. mail upon all the Standard Parties listed in the CMP Order.

**ATTORNEY FOR THE 44 CORRECTION OFFICERS**

By: *ISl IVONNE GONZALEZ-MORALES*
IVONNE GONZALEZ-MORALES
USDC NUM: 202701
PO BOX 9021828
SAN JUAN, PR 00902-1828
Tel. (787) 410-0119
E-mail: ivonnegm@prw.net

EXHIBIT 1

Certified  translation   Judgment
Court of  First Instance of Puerto Rico
dated April 22, 2016
re: Docket 17134 [Master Claim 12265]

.

PAG. 01        COMMONWEALTH OF PUERTO RICO     EXHIBIT 1
COURT OF FIRST INSTANCE
AGUADILLA PART

TOMASSINI, NORBERTO         CASE: A MI2003-0143
         PLAINTIFF         ROOM: 404
        VS.
E L A DE PUERTO RICO       MISCELLANEOUS CRIMINAL MATTERS
         DEFENDANT         MANDAMUS
                    CAUSE/CRIME

ATTY. GONZALEZ MORALES IVONNE
PO BOX 9021828
SAN JUAN, PR 00902-1828

NOTIFICATION OF JUDGMENT

     THE UNDERSIGNED CLERK NOTIFIES YOU THAT THIS COURT HAS ISSUED
JUDGMENT IN THE ABOVE CAPTIONED CASE ON THE DATE OF APRIL 22, 2016,
WHICH HAS BEEN DULY RECORDED AND FILED IN THE RECORD OF THIS CASE,
FROM WHICH YOU MAY FIND OUT IN DETAIL THE TERMS OF THE SAME.

     AND, SINCE YOU ARE OR REPRESENT THE PARTY PREJUDICED BY THE
JUDGMENT, AS TO WHICH A REQUEST FOR APPEAL MAY BE FILED, I ADDRESS
THIS NOTIFICATION TO YOU, HAVING FILED A COPY OF THE SAME IN THE
RECORD OF THIS CASE ON THE DATE OF APRIL 27, 2016.

DIAZ LUGO MANUEL
PO BOX 9020192
SAN JUAN, PR 00902-0192

MARI ROCA AIDA A

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

2

213 JUAN MARI RAMOS STREET
MAYAGUEZ, PR 00680

RIVERA TORRES CORAL M
MANSIONES DE COAMO
511 IMPERIO STREET
COAMO, PR 00769

MR. RONALDO M. SANABRIA, JR.
VILLA LISSETTE
BENITEZ, A-15
GUAYNABO, PR 00969

IN AGUADILLA, PUERTO RICO, TODAY APRIL 27, 2016.

ROSA B. SANCHEZ ACEVEDO
CLERK

BY:     s/A Guzmán Pabón
ARLENE GUZMAN PABON
DEPUTY CLERK

O.A.T. 704-NOTIFICATION OF JUDGMENT

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

COMMONWEALTH OF PUERTO RICO
General Court of Justice
**COURT OF FIRST INSTANCE**
SUPERIOR PART OF AGUADILLA

| | |
|---|---|
| **NORBERTO TOMASSINI et al**<br>Plaintiff | **CIVIL NO.: A MI2003-0143** |
| VS. | |
| **COMMONWEALTH OF PUERTO RICO, ADMINISTRATION OF CORRECTIONS** and **ATTY. MIGUEL PEREIRA, in his capacity as Secretary,** Defendant | **RE:**<br><br>**SALARY CLAIM** |

| | |
|---|---|
| **IVÁN MANUEL AYALA MARRERO et al**<br>Plaintiff | **CIVIL NO.: A PE2005-0049** |
| VS. | |
| **COMMONWEALTH OF PUERTO RICO,** through the Secretary of Justice **ATTY. ROBERTO SÁNCHEZ RAMOS,** to the **ADMINISTRATION OF CORRECTIONS**, through its Secretary, **ATTY. MIGUEL PEREIRA CASTILLO** Defendant | **RE:**<br><br>**SALARY CLAIM** |

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

2

**JUDGMENT**

The case before our consideration started with the presentation on August 1, 2003 of a Petition for Mandamus and salary claim filed by a group of Corrections Officers of the Administration of Corrections.   In synthesis there is claimed in the complaint the payment of overtime hours, the payment for working during the meal period and a salary adjustment in their regular monthly pay, based on the lack of compliance of the regulations of retribution, since the salary scale, to which said officials were assigned was not adjusted to the 8 hours a day that they worked.

Shortly thereafter, on November 13, 2003, an amended complaint was filed to accumulate other plaintiffs.

On February 9, 2004, the Administration of Corrections filed its responsive allegation.

This being the case, the plaintiffs made an ample discovery of evidence where they sent interrogatories and production of documents.

On its part, during 2005, Iván Ayala Marrero and another group of Corrections Officers filed a complaint regarding a salary claim, where they formulated an identical claim.

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

3

After this, we designated Mr. Ronaldo Sanabria as the expert of the court in both cases, and it was provided that the report that he rendered would be binding for both parties.

During the process, we celebrated multiple follow-up hearings, where, among others, we were informed of the progress of audits performed.  The expert was ordered to notify to the parties the expert reports produced, with the individual breakdown detailing the extra hours worked and the total calculation of the different items raised for each plaintiff and to explain the methodology used.  With regard to the tables prepared by the expert, the Administration of Corrections and Rehabilitation was ordered to verify if these were the hours and if they coincided and that they validate said information, independent of the argument of whether it had to be left in reserve.[1]

On the date of February 27, 2015, the plaintiff filed a memorandum of law where it amply discussed the provisions of law and jurisdiction applicable to the different controversies to be adjudicated in this case.

Subsequently, on June 3, 2015, the parties, separately filed in the captioned cases a Joint Motion where, among others, they submitted stipulations

---

[1] See Minutes of May 19, 2014.

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

4

regarding the balances of Reserve State Hours. They also informed that the Administration of Corrections and Rehabilitation had adopted a Payment plan to liquidate the extra hours from the Federal Reserve Bank through a "Consent Judgment" in an action followed by the Federal Secretary of Labor, before the Federal District Court, case number: 02-2055 (PG).

Nevertheless, the parties informed and identified the names of 19 plaintiffs, with the balances of Federal compensatory time pending liquidation and where there existed controversies, since the Administration of Corrections did not include them in the Federal Payment Plan.

In view of the procedural course indicated, the plaintiff deemed as dismissed the claim regarding the payment of overtime hours accrued in the Federal Reserve Bank, except for the 19 plaintiffs that were omitted from the Consent Judgment, supra.

Insofar as what regards the balances of compensatory time that were not liquidated from the two Reserve Banks, the plaintiff filed the allegation regarding the fact that it is pertinent to make the liquidation of the aforementioned balances as of the date in which each plaintiff is dissociated from the service."

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

5

On November 21, 2014 a hearing was held on the merits with regard to the claim for payment for the meal period and we granted a simultaneous term to the parties so that they would state their position with regard to the merits of the remaining controversies. We requested that they specifically state the amount with regard to the following aspects:

1. Authority of the Law of the Administration of Corrections to not liquidate the balances of overtime accumulated in the State Reserve Bank.

2. Pay half an hour for lunch.

3. Legal procedure for the payment of half an hour of the salary scale.

Even though we were originally petitioned for the consolidation of the lawsuits, and we denied the petition since we understood it would delay the resolution of the same, in view of the procedure followed, and to follow procedural economy, we consolidated both cases in this Judgment.[2]

---

[2] During the proceeding, the plaintiff informed that the file of José L. Acevedo González was not produced by the Administration of Corrections to the expert, possibly because there are two plaintiffs with the same name. We order the AC to produce the documents and the registries to the expert, so that the calculations can be made. The corresponding report was rendered on the date of October 16, 2015.

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

6

After requesting several extensions of time, both parties have appeared with their respective allegations, wherefore we are in a position to resolve pursuant to the applicable law.

## I. FINDINGS OF FACT

1.    The plaintiffs work for the Administration of Corrections as Corrections Officers and, as of today, a few have been promoted to the rank of Sergeant.

2.    The work week of the Corrections Officers, plaintiffs herein, consists of five days of work with two consecutive days of rest.  It is the responsibility of the Corrections Officers to custody the inmates, conserve the order and the discipline in the penal institutions and protect persons and properties.  For this it is required to render services 24 hours a day, being covered with a rotating shift system.

3.    The daily work day of the Corrections Officers was established through a time schedule of eight (8) consecutive hours and without interruptions, which is divided into 3 daily shifts of work: Shift A, from 6:00AM to 2:00PM; Shift B, from 2:00PM to 10:00 PM, and Shift C, from 10:00PM to 5:00AM.

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

7

4.      Every day, and at the entry of each shift, the officials report to the supervisor who in turn assigns them the respective vigilance positions established.   Every 45 days the Officials are rotated in the shifts, and vigilance positions, in which case, they are required to work 16 consecutive hours, and/or until their relief enters into service.

5.      In relation to the compensatory time registries, the Administration of Corrections prior to December 31, 2011 had **two banks to accrue the overtime worked by the Corrections Officers, one State and the other Federal.   Nevertheless, on the indicated date, the two banks of Compensatory Time were eliminated,** and a new computerized system was adopted, identified as Kronos.   The plaintiffs worked extra hours over the maximum authorized to be accrued as CT, which have not been compensated.

6.      As to the number of extra hours worked, and compensatory time accrued and the monetary amount owed to each plaintiff from the State Reserve Bank there is no controversy, since it was Stipulated.   Nor is there any controversy about the hours accumulated and the amounts owed to the 19 plaintiffs that did not form part of the "Consent Judgment" in the action followed

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

8

by the Federal Secretary of Labor, before the Federal District Court Case No.: 02-2055 (PG) and which is identified in the two attachments included in this Judgment. Said calculations were determined by the expert designated by this Court, after making a detailed analysis of the daily attendance sheets, registries and the accrued CT reports, the license periods enjoyed and validated by the Administration of Corrections.

7.      With regard to the payment claimed for work during the meal period, pursuant to evidence in the record and testimonies received, it is established that the plaintiffs rendered vigilance services for 8 uninterrupted hours, regardless of whether they were allowed to use half an hour to ingest meals in the workplace. No Corrections Officer is authorized to leave the place and specific perimeter assigned in their respective vigilance shifts and if they do so, they are subject to the formulation of charges for abandonment of service. During the cross examination, the witness from the Administration of Corrections, Captain Ramón López López, admitted, that on one occasion he requested that the Corrections Officers be released from service during the period of ingesting meals. Nevertheless, the answer received from the agency was that there were no funds to provide for the reliefs.

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

9

8.     To establish the regular monthly salary under the salary scale system, there is considered, among other criteria, the work day established of 37.5 hours or 40 hours a week assigned to the employees, within the same class.

9.     In the present case the Administration of Corrections did not adjust the scale to which the Corrections Officers are assigned and which is developed for the employees who work 37.5 hours a week, to compensate the additional half hour that they work, since they have a different schedule of 40 hours a week. Therefore, the salary paid to the plaintiffs, at the time of their appointment and subsequent increases for merit and years of service granted,  was made in an erroneous manner and contrary to what is established by the applicable regulations and standards.

## II  CONCLUSIONS OF LAW

**A.   REGARDING THE RIGHT OF THE PLAINTIFFS TO BE PAID IN CASH THE OVERTIME HOURS THAT WERE LEFT PENDING LIQUIDATION WHEN THE STATE AND FEDERAL RESERVE BANKS WERE ELIMINATED.**

From the outset, it is important to leave established that in this case there exists no controversy of fact whatsoever with regard to the number of overtime hours accrued and the amounts that are owed to each plaintiff as of the date that

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

10

the Administration of Corrections eliminated the State and Federal Bank regarding compensatory time, since they were stipulated and validated.

The only thing that is required to resolve is if said agency can indefinitely defer the cash payment of said balances, so that the employee can enjoy them in compensatory time, by a private agreement between the parties and/or pay it when the employee disassociates himself from the service. We resolve in the negative.

For all purposes and after analyzing the applicable legal provisions, we determine that the basic issue raised and the position presented and proposed by the Administration of Corrections is unacceptable and contrary to law. Specifically, because our local law adopted the federal formula regarding the payment of overtime hours of the Fair Labor Standards Act (FLSA), 29 U.S.C. Sec. 207(o), which was made extensive to the local governments since 1986. Wherefore, the payment in cash of the excess that is authorized to accumulate and which correspond up to a maximum of 240 hours is mandatory in the case of regular employees and up to a maximum of 480 hours, in the case of public employees in charge of the security and emergency, such as are the plaintiffs herein.

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

11

In harmony with the above we emphasize that Law No. 184 of August 1,

2004, known as the "Law for the Administration of Human Resources in the

Public Service of the Commonwealth of Puerto Rico" 3 LPRA §§ 1461, et seq.,

incorporates the same parameters and standards of the federal statute, ante,

since Article 11.1 and 11.3 provides the following regarding the Work Day:

**Article 11 - Work Schedule**
Section 11.1

The standards regarding work schedule for the public employees are the
following:

1.    The regular weekly work schedule for the regular career employees
      will not exceed forty (40) hours nor will it be less than thirty seven
      (37-1/2), on the basis of five (5) work days, except provisions to
      the contrary of special laws.  The daily schedule will not exceed
      eight (8) hours.  The employees will be granted two (2) days of
      rest, for every regular weekly work schedule.

2.    The regular weekly schedule of the employee will consist of the
      number of hours that, within a period of seven (7) consecutive
      days, the employee is obligated to render services, pursuant to his
      regular work schedule.  Normally the regular weekly schedule will
      comprise the days of Monday to Friday, constituting Saturday and
      Sunday, the days of rest.  Nevertheless, due to the needs of the
      service the agencies may establish a regular weekly schedule, for
      all or part of its personnel, commencing and ending on any day of
      the week, provided said schedule comprises two (2) days of rest.

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

12

3.     The regular daily or weekly schedule of the employees may be reduced as an action to avoid redundancies.   When a reduced regular schedule has been established as a measure to avoid suspensions, said work schedule may be established on the basis of less than five work days.

4.     Every agency, within the limited previously indicated, will establish the work, week and daily schedule, applicable to its employees, taking into consideration the needs of the service.

5.     As a general rule, the regular daily work time will be established on the basis of a time to enter and a time to leave.   Nevertheless, the agencies may adopt through their internal regulation a work system of flexible, staggered, extended or rotating shifts.

6.     ....

7.     ....

8.     ....

9.     ....

**Section 11.2 - Work in Excess of the Regular Work Schedule**

1.     The work program of each agency will be formulate in such a manner that it reduces to the minimum the need to work in excess of the regular work schedule established at the Agency for the employees.   Nevertheless, the Nominating Authorities, due to the special nature of the services to be rendered or for any emergency situation, may require that their employees render services in excess of the daily or weekly work schedule, or on any day that the

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

13

services are suspended without charge to a license by the Governor. In these cases, there must exist a prior authorization from the supervisor of the employee, which must be approved by the nominating authority or by the official on whom the same delegates. The supervisor must take measures so that when an employee remains working it is always pursuant to an express authorization.

2. **The employees will be entitled to receive a compensatory license, at the rate of time and a half, for the services rendered in excess of their regular, daily or weekly schedule, the meal time and for the services rendered on holidays, on the days of rest, or on the days when the services are suspended without charge to a license by the Governor. This license must be enjoyed by the employee within the period of thirty days fro the date in which he has provided overtime work. If due to the needs of the service this is not possible, said license may be accrued up to a maximum of two hundred forty (240) hours. In the case of employees in security or health positions they can be accumulated up to four hundred eighty (480) hours. The compensation of overtime in compensatory time is not pertinent for the hours that the employee accumulates in excess of the limits mentioned.** [emphasis supplied]

3. There is excluded from the provisions of the preceding paragraph (2) any employee that performs functions of an administrative, executive or professional nature, as these terms are defined in the Fair Labor Standards Act.

Similarly, because what is established in Special Memorandum Number 27-

2004, dated August 6, 2004 of the Office of Human Resources of the

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

14

Commonwealth of Puerto Rico (ORHELA in Spanish) contributes to what is stated

above, in establishing, in its own terms, the responsibility of the payment in cash

of the time accrued in excess of what is permitted, when it indicates:

**III. Report on Overtime Hours**
**A.     ...**
**B.     Compensatory Time**
        The FLSA allows that the public employees accrue compensatory
time at the rate of time and a half, instead of receiving a cash payment for
the time worked.

        A governmental entity can provide compensatory time when it is
agreed through a collective bargaining agreement or established by law
or regulation, prior to the employment.  The public employees will accrue
up to a maximum of 240 hours of compensatory time, while the public
employees in charge of the amount of public security or of emergencies
will accrue up to a maximum of 480 hours.   **The additional time
worked in excess of the 240 or the 480 hours of compensatory
time, as pertinent, will be paid in cash within the payment period
when the work was performed or within the next period."
(Emphasis ours).**

        Therefore, it is clear that by providing the laws and Regulations identified

a clear expression on the public policy regarding work with regard to accelerated

payment of the overtime hours and the conditions therein established, we

determine that these expressions are considered incorporated into the work

contract.   JRT v. Junta Adm. Muelle Mun. de Ponce, 122 DPR 318 (1988);

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

15

<u>Beauchamp v. Dorado Beach Hotel</u>, 98 DPR 633 (1970); <u>Encarnación v. Jordán,</u>
78 DPR 505, 513 (1955).

The position of the Administration of Corrections is also not sustained with
regard to the fact that the hours of compensatory time accrued by the plaintiffs
in the "State Bank" and/or Federal, can be maintained on reserve indefinitely
pursuant to what was "negotiated in the Collective Bargaining Agreement of
2008, since an extremely careful analysis of the text of the aforementioned
Agreement, it is easy to accredit that the liquidations were left outside of the
same, by provided that they be made, pursuant to a private agreement between
the Administration of Corrections and the employees.[3]

Furthermore, because here we confront a clear legislative and regulatory
mandate, where the payment claimed cannot be made to depend on the
employee resigning to the job and also cannot depend on the will of the

_____

[3]  The specific clause provides as to Work Schedule, Overtime Hours and Meal Time,, in clause
5.3, as follows:

..."The compensation of overtime in a compensatory time is not pertinent for the hours that
the employee accrues in excess of the limit mentioned (480 hrs) which will be paid. It being
provided that **the compensatory time that the members of the appropriate unit
have accrued in excess of 480 hours, prior to the effectiveness of the agreement,
will be enjoyed in accordance between the employee and the Agency. The
Department may pay these hours to an employee for extraordinary
circumstances."**

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

16

employer, who as we can see has observed an intransigent position regarding said matter.

In view of the above, and since it is pertinent, this leads us to consider certain pronouncements and expressions of the decision issued by the Federal Supreme Court in Barrentine v. Arkansas - Best Freight Sys. Inc., 450 U.S. 728, 740-41, 101 S.Ct. 1437, 1445, 67 L.Ed.2d 641 (1961), since they are applicable to this case, in clearly determining that the employers cannot undermine the right that the law recognizes to the employees that they be liquidated those balances of leaves accrued over the limits established in the Fair Labor Standards Act (FLSA). Furthermore, because in the aforementioned opinion, it is established that there are statutes that are designed to provide the employees certain basic projections, id. at page 737, 101 S.Ct. at 1443. The FLSA, is one of the laws that provides the employees some fundamental protections with regard to the minimum salary and oppressive time schedules. See opinion cited, at page 739, 101 S.Ct. at 1444. So that, as resolved in Barrentine, supra, these rights granted under the FLSA cannot be renounced and cannot be impaired under a covenant or contract. See pages 740-41, 101 S.Ct. at pages 1444-45

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

17

and 1447.

There contributes to what is stated the fact that since there exists in Puerto Rico a firm and defined governmental interest of guaranteeing the accelerated payment of overtime hours to the personnel that conducts pubic security functions, such as are the Corrections Officers, we determine that the payment claimed is mandatory since, resolving pursuant to what the Administration of Corrections requests, it would be contrary to the public interest and, therefore, would destroy in great part the purpose that was proposed in the applicable laws and regulations.[4]

## B. REGARDING THE PAYMENT CLAIMED FOR WORKING DURING THE PERIOD FOR TAKING MEALS.

In this case it was established that the plaintiffs uninterruptedly work shifts of 8 consecutive hours, without being relieved of their functions and they have been required to take their meals in the workplace. The plaintiffs claim that they are entitled to the payment of time worked during the meal period. It is alleged that the Administration of Corrections, in requiring that the plaintiffs consecutively work schedules of 8 hours a day, without anybody relieving them,

---

[4]  See the amendment to Art. 5 of Law No. 56-2002 of April 11, 2002 where the Corrections Officers were included within the coverage of the aforementioned statute.

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

18

is violating the Law and its own regulations.

Since it is pertinent, it is applicable to emphasize that the "period for taking meals" and the terms to compensate the work performed during said period was established under Article 11, regarding Work Days of Law No. 184, supra, in the following manner:

> 1...
> 6.   Every agency will grant to every employee one (1) hour to take meals during their regular daily work schedule.  Said period must commence to be enjoyed by the employee not before the conclusion of the third hour and a half, nor after the end of the fifth consecutive hour of work.  Through a written agreement between the employee and an authorized representative of the agency, the meal time may be reduced to half (½) an hour due to the needs of the service of the convenience of the employee.  In the case of syndicated employees the agreement must be approved by the representative of the Union.
>
> 7.   The agencies may program their work in such a manner that the employee can enjoy their hour to take meals.  Nevertheless, in emergency situations, the employee may be required to render services during his meal period or portion of the same.
> ...
> 10.  **The hours worked will comprise all of the time during which an employee is required to render services or remain in the facility or in a specific work place and all the time during which the same is expressly ordered or authorized.**

In view of the clear text transcribed, and because it is fundamental to

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

19

resolve the controversy raised, it is pertinent to emphasize that from the evidence submitted it is established that due to the nature of the functions that the plaintiffs render, they are required to render continuous services during 24 hours a day.  For this, the Administration of Corrections designed a program of shifts to distribute the surveillance work in three shifts of 8 consecutive hours.

To that effect, when a careful analysis of the Personnel Regulations of the Administration of Personnel of the Administration of  Corrections of 1987, as amended, is made, we see that in its Art. 13 regarding work schedule and attendance, it establishes and defines the responsibilities assigned to the corrections officers as follows:

C.  Attendance, Guards and Others:

1.  They will attend work punctually within the work schedule established.

2.  They cannot abandon the institution before the termination of their work without the express authorization of their immediate supervisor:

3.  They cannot abandon their custody positions ("sentries") for any reason, until they are properly relieved or they obtain the permission of their supervisor;

4.  They must exclusively attend their tasks and not be distracted unduly and in a prejudicial manner from the service that they render; they are not

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

20

allowed to read newspapers, magazines or other material unrelated to the job;

5.   In situations declared as emergencies where the penal institutions are affected, every member of the Corps of Custody Officers on service will remain at the institution and it will be the duty of everyone outside of the service to return immediately to the penal institution of the Administration of Corrections closest to their residence to receive instructions.  It will be the duty of every officer that is not on service, on their free days, or on vacation to reintegrate immediately to the penal institution where they are assigned.

6.   Every custody officer that is relieved will deliver to the one that will substitute the same all of the equipment assigned to the position and the necessary information so that they can execute their tasks.

They will inform any order that they have received or any condition that requires notification.  The officer that receives the equipment will make sure that it is in good conditions or, otherwise, will notify his supervisor and make a report to that effect.

7.   The custody officers that are assigned to the surveillance towers, will wait to be relieved to be able to take their meals and will not ingest the meals while they remain in their position.

This being the situation, and it being undisputed that the plaintiffs are

required to render uninterrupted services and to not abandon their tasks and

workplace until their relief arrives, otherwise they will be subject to the

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

21

formulation of charges for abandonment of service, we determine that they

established their right  to be paid the half hour of lunch claimed in consideration

to the nature of their responsibilities and the services that they render.

It should be mentioned that the North American jurisprudence also

supports the determination, since as previously stated, the standards adopted

regarding overtime in our jurisdiction are based on the cited Fair Labor Standards

Act, supra, and the Respective regulation, 29 CFR 553.223 and they are a

persuasive authority in interpreting the corresponding regulation.

In conformity, it is emphasized that in Lamon v. City of Shawnee, 972 F.2d

1145 at 1157, [10th Cir.], where custody officers filed a claim for the payment of

the meal period similar to the one in this case, it was determined that the criteria

or norm recognized for the payment of the meal time is that the employee be

during said period completely relieved of his functions for purposes of what is

established in §553.223(b) supra.  Also, because in said case there is reiterated

the standard that if during the time that the employee uses to ingest meals he

performs activities that can be considered predominantly in benefit to the

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

22

employer, said time is compensable.  See to that same effect, <u>AFSCME local 889</u>

<u>v. Louisiana,</u> 145 F.3d. 280, 4WH cases 2d 1355 (5th Cir. 1998), where the

complaint on the payment of the meal period was granted, in a case where the

Corrections Officers were required to ingest meals in the cafeteria with the

inmates and they had to be prepared to act, if there arose situations that

required their intervention.  Inclusive, it has been determined that the standard

on the payment of the meal period applies with regard to officers that sustain the

rank of Sergeant.  <u>Raper v. Iowa Dept. Public Safety</u>, #86/03-0255, 688 N.W.2d

29, 2004 Iowa Sup. Lexis 277, 10 WH Cases2d (BNA) 76(2004).  (N/R)

Precisely, when we consider the nature of the services that the plaintiffs

render, it is clear that they are not free of displacing themselves to take their

meals and because they are also not relieved of the tension entailed by

continuing to render surveillance functions, since they have to be available to

attend emergency situations and other work requests while they have lunch,

wherefore said work period is for the benefit of the Administration of Corrections

and not of the employee, therefore, it is compensable.

**C.   REGARDING THE PAYMENT CLAIMED BY THE PLAINTIFFS OF THE**

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

23

**HALF HOUR WORKED DURING THEIR REGULAR SCHEDULE, SINCE THE SALARY SCALE TO WHICH THE CLASS OF CORRECTIONS OFFICER WAS ASSIGNED HAS BEEN ADJUSTED TO 40 HRS. A WEEK.**

From the outset, and to place this particular claim as of its just perspective, it is pertinent to leave established that the same is an issue that is totally distinct and distinguishable from the claim that the plaintiffs formulate regarding the payment of overtime worked, since different standards and principles apply.

It is pertinent also to leave established, in view of the allegation that the plaintiffs formulate with regard to the fact that the Corrections Administration did not pay the correct regular salary, pursuant to the 40 hour weekly schedule that they work as Corrections Officers, some of the basic principles of the system of retribution and salary scales applicable to the government employees.

We commence by emphasizing that since there is in effect as of the dates of the facts the Uniform Retribution Act, Law 89 of July 12, 1979, as amended, and the Uniform Retribution Regulation, No. 3109, the same is applicable to this controversy. Nevertheless, and despite the fact that this legislation was subsequently repealed by Law No. 184 of August 3, 2004, and as is established

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

24

hereinafter in greater detail, this law incorporates the public policy of the Uniform

Retribution Act as part of the same.  For said reason, the repeal of the Uniform

Retribution Act left validated, ratified in full force and effectiveness, in all its

terms, all of the decrees, orders, rules regulations enacted under the Uniform

Retribution Act repealed.  Among the most significant aspects,  said Law 184,

supra, left subsisted the provisions contained in the Retribution Regulation, until

there are adopted the corresponding new plans, pursuant to the new statute.

Furthermore, it specifically provided in its Art. 14, that "nothing" in this Law will

have the effect of impairing acquired rights in effect or approved as of the date

in which said Law entered into effect.

Therefore, it is extremely important to leave established that the new

personnel scheme does not establish changes insofar as what is required for the

obligation of the agencies to establish Classification Plans.  Wherefore there

continue applicable the same basic principles and concepts, insofar as they relate

to the creation of classes.  Wherefore there continues to be applicable the

principle that "those positions with duties that are substantially similar with

regard to responsibility, complexity and authority within the functional structure

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

25

of the agencies  and which to perform the same require analogous requirements of preparation, experience, knowledge, ability and the same capacity for the best execution of those duties, be grouped in a systematic manner, since the system requires guaranteeing a retributive equity.

It is precisely, pursuant to this same conceptual and regulatory concept that we can affirm, without fear of being mistaken, that the system of retribution applicable to the government employees, seeks that there can be applied with equity the same retribution scales to substantially similar jobs.  To achieve said objective, it has consistently been provided that the structure of retribution or salary scales, be numbered consecutively and be designed so that the employees receive the fair retribution that bears a proportion to the services that  they render.  Each salary scale contains a minimum type and a maximum type and several intermediate types.  The standards from which they are applied are part of said plan.  The assignment of the classes to the different salary scales intertwines the classification plan with the retribution plan.  Gladys Rivera Padilla v OAT, supra...

For said reason, when it is considered that the salary scales represent the

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

26

monetary value of the different classes of positions of the classification plans and which will serve to establish the direct retribution of every employee within the personnel system, we should not forget that the salary scales provide a minimum type and a maximum type of salary or payment and intermediate types, this has the purpose of providing to the employees a growth margin pursuant to the merit steps and years of service. Also because it is required, that in assigning and reassigning the classes of positions to the salary scales, there be maintained the correlation between the hierarchical level of the classes and the scales to which they are assigned. In this manner, positions and classes that have the same relative value within the classification plans of the respective services, are assigned to the same salary scale and, in said manner, to ensure the equity in the assignment of the retribution to the different positions.

From what is stated, it is fundamental not to lose sight that the application of the principles identified above imply, that even though a class of positions is located in the same scale of retribution there may be some employees who will be located in different types of the level of the scale, according to the individual history, since they reflect the increases received for years of service and

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

27

productivity, since the system in providing intermediate types within the same scale, allows that employees assigned to the same scale can receive a different salary to that of other employees of the same scale or class, to award the years of service and productivity. Nigaglioni v. Depto. de Salud, 149 D.P.R. 180 (1999) at page 193. Gladys Rivera Padilla v. OAT, supra.

It is precisely, in view of the basic standards of the system of retribution and salary scales, and insofar as what concerns us, that when the Regulation of Uniform Retribution is analyzed, and particularly Sec. 4.6 (7), we can verify that in said statutes there was contemplated the situation that there exist within an agency employees assigned to the same salary scale, but with different work schedules, since it was provided so that:

> **The types of retribution established in the different scales of salaries will be consigned based on dollars and will correspond to a monthly salary and to a regular work schedule of 37.5 or of 40 hours a week, as it corresponds, and it has the fundamental purpose of providing superior levels of retribution to make feasible the gratification of the employees pursuant to the respective individual levels of efficiency and productivity.**

Said provision also provided, in what is pertinent, so that:

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

28

When there is a need to make payments or deductions for short periods of service rendered that were not paid the corresponding amount will be determined taking into consideration the monthly salary of the employee and the regular work schedule. Similarly, when determining deductions in the salaries of the employees, their monthly salary will be considered based on their regular work schedule and independent of the days that are contained in the month.[5]

What is provided in the regulation, should not leave any doubt whatsoever, with regard to the responsibility that the agencies have to adjust the retribution of the employees that have been assigned to a specific scale of retribution, but that have a different work schedule, in order to guarantee that they be fairly compensated.

In the specific case of the plaintiffs herein, since it can be determined from the comparative analysis of the diverse scales of retribution presented and admitted into evidence and the salaries granted to the plaintiffs, on the date of their respective appointments, as accredited from the Certifications regarding the statement of salaries issued by the Administration of Corrections, there was

---

[5] Sec. 760(e) (c) Uniform Retribution Act 1979, supra.

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

29

assigned to the plaintiffs the same basic salary of the employees that work a schedule of 37.5 hours a week. Therefore it is clear that they were not paid the correct salary, pursuant to the weekly schedule of 40 hours a week that they work.

In view of this determination and the undisputed factual basis it is pertinent to point out that regardless of the powers that were delegated to the agencies to establish the work schedule of their employees, the Administration of Corrections cannot act in an arbitrary manner nor not comply with its own regulations. Carrero Gueits v. Departamento de Educación, 141 DPR 830 (1996).

Also, because it can be accredited from the records and from the long history of inaction incurred by the Administration of Corrections, that the situation remains without being corrected, since this is corroborated when we compare the new Retribution structure and which is identified as the "Uniform System of the Rank of the Corps of Corrections Officers" and which was submitted into evidence as Exhibit 13, since it can be concluded that there was maintained the same basic salary of $1,401.00 a month that the Corrections Officers had under the previous Scales of Retribution and which were in effect

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

30

between 2001 and 2004, and the same maximum monthly salary of $2,061.00 and with the same 10 intermediate types.

In view of what is stated, we resolve that the Administration of Corrections incurred in a clear act of arbitrary temerity and treatment, since, it intervene in an improper manner with the salary granted to the plaintiffs, by not taking into consideration the daily work schedule of eight (8) hours that they work. Furthermore, because regardless of the change of name that it provided to the salary scale of 2006, the truth is that the plaintiffs have been denied the correct salary, by failing to comply with its own regulations, since as previously indicated, their salary was not adjusted to the regular work schedule of eight (8) hours a day that they work and the type per individual hour that they earn, and the scale of retribution of the supplanted plan of 2001 remains unaltered. As to this particular, the Supreme Court has advised that the attack against a regulation will be successful if it is demonstrate that the standards are arbitrary because they rely on motives dissociated from the purpose of the regulation or where additional requirements to those established by the statutes that govern at the agency are imposed. Franco v. Departmento de Educación, 148 DPR 703, 709 (1999), T-JAC,

Certified to be a true and
correct translation from its original.
Aida Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

31

Inc. v. Caguas Centrum Limited, 148 DPR 70 (1999), García Cabán v. UPR, 120

DPR 696 (1987); Díaz Llovet v. Gobernador, 112 DPR 747 (1983).

Also, because the action of the Administration of Corrections, which affects

fundamental rights, is unreasonable and leads to the commission of injustices,

since it places the plaintiffs in a disadvantageous position, since they have to

work ½ hour more to receive the same salary as the employees that are assigned

to their same salary scale, but that only work 7.5 hours a day and a weekly

schedule of 37.5 hours.[6]

As a result of this, we determine that the arguments included in the

allegation of the defendants is not sustained, since the Administration of

Corrections did not contribute any evidence to establish that it adjusted the

salary of the plaintiff to the type per hour that corresponded to a work schedule

of 8 hours a day. On the contrary, what the evidence in the record accredits,

beyond any doubt, is that the salary of the plaintiffs increased due to the general

increases, steps for merits and/or years of service received. It does not involve

_____

[6] See also the corresponding assignments of classes to salary scales included and form part of
the Exhibits to identify the classes assigned to the same scale of the plaintiffs, but who work a
schedule of 7.5 hours a day.

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

32

an adjustment of the salary scale due to the additional half hour that the plaintiffs work.

Therefore, it is pertinent pursuant to law to order the payment of the half hour claimed, according to the calculations submitted by the designated expert, Mr. Ronaldo Sanabria in the two tables enclosed and which are attached to this Judgment. Especially when the Administration of Corrections incurred in a gross abuse of discretion, by not taking into consideration the different regular work schedule that the Corrections Officers perform.

## III. JUDGMENT

In view of the facts and the law previously stated we Grant the complaint and order the payment of the extra hours accrued in the State reserve bank, previously stipulated and te payment, to the employees that did not form part of the "Consent Judgment" in case no. 02-2055, supra, with regard to the  CT accrued in the Federal Reserve Bank.  There is also ordered the payment of the half hour of the meal period and for the half hour difference not paid since the salary scale of the corrections officers were not adjusted to the work schedule of 8 hours a day that they work.

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

33

The specific individual amounts to be paid to each plaintiff is established

in the tables submitted by Mr. Ronaldo Sanabria, as an expert of the Court and

which are enclosed hereinafter as part of this Judgment:

## LIQUIDATION OF PAYMENTS OWED AS OF THE DATE OF APPOINTMENT TO JANUARY 31, 2012
## FEDERAL COMPL. TIME AND UP TO DECEMBER 31, 2008
## STATE C.T. AND HALF AN HOUR OF THE SALARY SCALE
## AND HALF AN HOUR OF LUNCH
## UP UNTIL DECEMBER 31, 2011
## PLAINTIFFS TOMASSINO AND OTHERS V. ADM. OF CORRECTIONS

| Name | Social Security | Last Salary | Liquidation of State Compensatory Time from Date of Appt to December 31, 2011 (Stipulated) | Payment of compensatory Time does not appear in Federal Payment Plan since the date of Appointment January 31, 2012 | Liquidation of Half an Hour (½) of Salary Scale as of the date of Appointment until December 31, 2011 | Liquidation of half an hour of lunch as of the Date of Appointment to December 31, 2011 | Total Owed by Plaintiff, State Comp, Time, Federal Half Hour, Salary Scale and half an hour for lunch |
|---|---|---|---|---|---|---|---|
| Acevedo González, José M. | 5358 | $2,109.00 | $11,122.13 | | $21,479.75 | $21,479.75 | $54,081.63 |
| Acevedo González, José L. | 3812 | $2,281.00 | $19,566.65 | | $24,547.78 | $24,547.78 | $68,662.21 |
| Acevedo Soto, José | 5119 | $2,141.00 | $0.00 | | $0.00 | $0.00 | $0.00 |
| Arce Letriz, José M. | 7106 | $2,261.00 | $10,651.01 | | $19,467.64 | $19,467.64 | $49,588.29 |
| Babylonia Hernandez, Edgardo | 9875 | $2,109.00 | $20,335.69 | | $19,783.04 | $19,783.04 | $59,861.77 |
| Badillo Martinez, Roberto | 8023 | $2,109.00 | $18,012.36 | | $20,024.40 | $20,024.40 | $58,061.15 |
| Barreto Colón, Edwin | 8529 | $2,141.00 | $16,828.00 | | $23,091.60 | $23,091.60 | $83,011.20 |
| Caraballo Valentín, Juan 4 | 3678 | $2,141.00 | $24,133.09 | | $21,279.58 | $21,279.58 | $68,892.21 |
| Colón Villanueva, Daniel | 6111 | $2,175.00 | $13,807.28 | | $24,852.60 | $24,852.60 | $63,312.48 |
| Cordero Lasalle, José A. Resigned 5/1/2007 | 6792 | $2,071.00 | $0.00 | $5,958.52 | $22,303.20 | $22,303.20 | $50,582.92 |

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

34

| Name | | | | | | | |
|------|------|------|------|------|------|------|------|
| Cordero Varela, Eddie | 6704 | $2,271.00 | $2,837.18 | | $28,487.60 | $28,487.60 | $59,512.38 |
| Crespo Acevedo, Cándido | 9869 | $2,175.00 | $0.00 | | $0.00 | $0.00 | $0.00 |
| Cuba Méndez, Eligio | O880 | $2,109.00 | $0.00 | | $22,658.90 | $22,658.90 | $45,313.80 |
| Feliciano Serrano, William | O897 | $2,201.00 | $41,058.50 | | $21,909.40 | $21,909.40 | $84,877.30 |
| Galván Machado, Víctor | 7169 | $2,109.00 | $23,589.43 | | $21,649.20 | $21,649.20 | $68,887.83 |
| García González, Ramón | 5903 | $2,141.00 | $15,098.88 | | $22,415.20 | $22,415.20 | $59,929.28 |
| González Cabán, Felix | 3785 | $2,175.00 | $23,964.38 | | $24,628.80 | $24,628.80 | $73,221.96 |
| González Hernandez, Manuel | 6890 | $2,271.00 | $36,481.25 | | $28,631.80 | $28,631.80 | $83,744.85 |
| González Ríos, Juan R. | 9860 | $2,109.00 | $7,584.74 | | $21,777.60 | $21,777.60 | $51,123.94 |
| Grajales Domenech, Félix | 8736 | $2,175.00 | $0.00 | | $23,267.00 | $23,267.00 | $48,534.00 |
| Hernandez Pérez, Neftalí Separated position 8/11/08 | O828 | $1,915.00 | $2,214.59 | $11,244.59 | $16,108.00 | $16,108.00 | $45,675.18 |
| Hernandez Vargas, Raymond Resigned 06/15/07 | 6499 | $1,881.00 | $14,006.14 | $8,459.26 | $16,281.40 | $16,281.40 | $55,028.70 |
| Lao Rodríguez, Ruby | 4948 | $2,141.00 | $5,427.44 | | $22,069.80 | $22,069.80 | $49,566.64 |
| López González, Heriberto | 8559 | $2,141.00 | $21,342.25 | | $22,258.80 | $22,258.80 | $65,859.85 |
| López Loperena, Reynaldo | 9087 | $2,271.00 | $4,987.79 | | $26,312.20 | $26,312.20 | $57,612.19 |
| Lorenzo Lorenzo, Oscar Dismissed 12/28/04 | O878 | $1,881.00 | $10,358.85 | $10,475.14 | $11,020.00 | $11,020.00 | $42,871.99 |
| López Soto, Eliezer | 1346 | $2,141.00 | $8,666.73 | $14,645.37 | $21,567.40 | $21,567.40 | $68,446.90 |
| Machado Barretos, René | 6747 | $2,271.00 | $21,112.19 | | $28,539.00 | $28,539.00 | $78,190.19 |
| Montero Pellet, Miguel | 8542 | $2,109.00 | $12,167.32 | $9,619.29 | $18,439.20 | $18,439.20 | $58,665.01 |
| Morales González, Angel | O314 | $2,271.00 | $535.48 | | $16,697.00 | $16,697.00 | $33,920.48 |
| Muñíz Suarez, Luis A | O637 | $2,006.00 | $5,466.10 | $9,921.07 | $22,097.20 | $22,097.20 | $59,582.47 |
| Nieves Rosa, Pablo C | 2479 | $2,106.00 | $23,350.67 | | $18,913.45 | $18,913.45 | $61,177.57 |
| Nuñez Valle, Adrián Destituted 06/20/04 Reinstated04/15/08 without earnings | 5182 | $2,109.00 | $7,494.58 | $11,559.18 | $13,175.70 | $13,175.70 | $45,405.16 |
| Pérez Castro, William | 2771 | $2,141.00 | $0.00 | | $0.00 | $0.00 | $0.00 |
| Pérez Román, Rafael | 9737 | $2,271.00 | $61.04 | | $28,178.50 | $28,178.50 | $56,418.04 |
| Quiñones Colón, William | 4339 | $1,209.00 | $9,851.80 | | $18,149.60 | $18,149.60 | $48,151.00 |
| Ríos Lassalle, Euripides | 4310 | $2,141.00 | $20,01.49 | | $24,634.00 | $24,634.00 | $69,271,09 |
| Rivera Cabán José | O138 | $2,441.00 | $6,893.49 | | $29,446.80 | $29,446.80 | $65,787.09 |
| Rivera Torres, Francisco | 6986 | $2,141.00 | $13,056.05 | | $23,074.80 | $23,074.80 | $59,206.45 |

Certified to be a true and
correct translation from its original.
Alda Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

35

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Rivera Valentín, Jesús | 3136 | $2,175.00 | $17,783.16 | | $23,920.80 | $23,920.80 | $65,624.76 |
| Robles Feliciano, Sixto | 9417 | $2,271.00 | $16,150.72 | | $29,035.20 | $29,035.20 | $74,220.82 |
| Rodríguez Cortés, Francisco | 1414 | $2,109.00 | $14,278.66 | $19,735.48 | $20,915.20 | $20,915.20 | $75,844.74 |
| Rodríguez Echevarría, Emilio | 8071 | $2,109.00 | $24,588.78 | | $18,823.20 | $18,823.20 | $62,235.18 |
| Rodríguez Pérez, Israel | 3140 | $2,201.00 | $8,550.33 | | $20,874.60 | $20,874.60 | $50,899.53 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Rodríguez Torres, Angel | 6836 | $2,109.00 | $0.00 | | $0.00 | $0.00 | $0.00 |
| Roman Ferrer, Noel Dismissed 04/19/06 | 9546 | $2,561.00 | $4,018.21 | $12,627.64 | $26,968.50 | $26,968.50 | $74,583.45 |
| Samot Cruz, Omar Resigned 04/17/07 | 2681 | $1,849.00 | $9,113.74 | $3,274.95 | $12,768.30 | $12,768.30 | $37,925.39 |
| Santana Rodríguez, José M. | 4300 | $2,141.00 | $20,986.04 | | $22,948.40 | $22,984.40 | $68,882.54 |
| Santiago Concepción Getulio Resigned 11/08/04 | 5043 | $1,699.00 | $2,850.37 | $8,943.81 | $9,476.80 | $9,476.80 | $30,756.78 |
| Soto González, Alex L. dismissed 05/01/05 | 4846 | $1,765.00 | $0.00 | | $11,160.40 | $11,160.40 | $22,320.80 |
| Soto Roman, Juan A. | 2160 | $2,141.00 | $30,410.25 | | $23,110.80 | $23,110.80 | $76,631.85 |
| Tomassini Arce, Norberto | 7995 | $2,109.00 | $306.63 | $3,702.64 | $13,813.60 | $13,813.60 | $31,636.66 |
| Tubens Torres, Alejandro | O261 | $2,109.00 | $22,395.87 | $22,685.00 | $19,038.00 | $19,038.00 | $83,156.87 |
| Valentín Arvelo, Leonides Separated 10/30/09 | 8632 | $1,974.00 | $8,569.70 | $4,430.14 | $16,401.31 | $16,401.31 | $45,802.46 |
| Valentín Cabán, Javier | 8381 | $2,141.00 | $12,128.33 | | $21,988.20 | $21,988.20 | $56,104.73 |
| Valle Mendoza, Franco | 1711 | $2,108.00 | $21,236.77 | | $21,357.60 | $21,357.60 | $63,951.97 |
| Varela Jiménez, Samuel | 7704 | $2,175.00 | $3,757.51 | | $24,904.80 | $24,904.80 | $53,567.11 |
| Vargas Ramos, Edwin | 1922 | $2,271.00 | $23,501.64 | | $29,329.80 | $29,329.80 | $82,161.24 |
| Vázquez Arroyo, Armando | 8452 | $2,141.00 | $25,304.67 | | $22,350.80 | $22,350.80 | $70,006.27 |
| Vázquez Pérez, Angel T. | 7303 | $2,325.00 | $25,907.77 | $11,307.33 | $26,506.65 | $26,506.65 | $90,229.60 |
| Vázquez Pérez, Rigoberto | 9873 | $2,175.00 | $10,610.99 | $10,788.54 | $23,980.80 | $23,960.80 | $69,361.13 |
| Velázquez Nieves, Eliezer | 4013 | $2,211.00 | $0.00 | | $26,110.20 | $26,110.20 | $52,220.40 |
| | | TOTALS | $773,307.17 | $179,377.25 | $1,258,780.78 | $1,256,780.78 | $3,468,245.,96 |

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

36

**LIQUIDATION OF THE PAYMENTS OWED AS OF THE DATE OF THE
APPOINTMENT TO DECEMBER 31, 2011
(HALF AN HOUR SALARY SCALE, HALF AN HOUR LUNCH)
AND FEDERAL COMP. TIME DO NOT APPEAR IN PAYMENT PLAN SINCE
THE DATE OF APPOINTMENT TO JANUARY 31,2012 AND
STATE C.T. UNTIL DECEMBER 31, 2008
PLAINTIFFS IVAN AYALA ET AL V. CORRECTIONS ADM.**

| Name | Social Security | Last Salary | Liquidation of State Compensatory Time from Date of Appointment to December 31, 2011 (Stipulated) | Payment of Compensatory Time Does Not Appear in Federal Payment Plan since the Date of Appointment To January 31, 2012 | Liquidation of Half an Hour of Salary Scale as of Date of Appointment until December 31, 2011 | Liquidation of Half Hour of Lunch as of the Date of Appointment until December 31, 2011 | Total Owed by Plaintiff State, Federal Comp. Time, Half Hour Salary Scale and Half Hour for Lunch |
|---|---|---|---|---|---|---|---|
| Ayala Marrero, Iván M. | O577 | $2,299.00 | $1,430.60 | $0.00 | $21,945.46 | $21,945.46 | $45,321.52 |
| Colón Camacho, Marcial | 3119 | $2,109.00 | $10,903.28 | $0.00 | $21,492.80 | $21,492.80 | $53,888.48 |
| Cordero Vargas, Sandra M. | 5370 | $1,751.00 | $0.00 | $301.59 | $9,824.64 | $9,824.64 | $19,950.87 |
| Cruz Cubero, Efraín | 6493 | $2,331.00 | $1,061.73 | $0.00 | $28,268.00 | $28,268.00 | $57,597.73 |
| Del Valle Vendrell, Pedro A. | 6436 | $2,109.00 | $8,314.34 | $0.00 | $19,707.68 | $19,707.68 | $47,729.70 |
| Hernandez Avilés, Rafael | 1745 | $2,325.00 | $22,925.83 | $0.00 | $30,176.60 | $30,176.60 | $83,279.03 |
| Hernandez Méndez, Marcos | 3244 | $1,950.00 | $0.00 | $0.00 | $13,337.15 | $13,337.15 | $26,674.30 |
| Hernandez Rodríguez, Luis | 8425 | $2,151.00 | $0.00 | $2,054.33. | $20,487.20 | $20,487.20 | $43,028.73 |
| Hernandez Salas, Angel | 6511 | $1,849.00 | $0.00 | $583.98 | $13,998.68 | $12,998.68 | $28,581.34 |
| Jaime Vega, Wendell 5 | 3844 | $2,201.00 | $1,395.14 | $0.00 | $20,931.20 | $20,931.20 | $43,257.54 |
| Lopez Rosado, Julian(Law 70) | 6687 | $2,201.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| López Vélez, Mario | 9972 | $2,535.00 | $809.64 | $13,271.74 | $24,655.60 | $24,655.60 | $63,392.58 |
| Lorenzo Cordero, Carmen M. | 2351 | $2,011.00 | $3,588.71 | $0.00 | $15,696.00 | $15,696.00 | $34,980.71 |
| Manual Ugarte, José M. | 1305 | $2,109.00 | $8,091.02 | $0.00 | $14,341.80 | $14,341.80 | $36,774.62 |
| Matías Gerena, Carlos F. | 5523 | $2,141.00 | $23,123.68 | $0.00 | $23,105.60 | $23,105.60 | $69,334.88 |
| Medina Morales, Alexander (Law 70) | 3151 | $2,261.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Medina Morales, Else | 3722 | $2,109.00 | $23,254.23 | $0.00 | $20,709.00 | $20,709.00 | $64,672.23 |
| Medina Valentin, Carlos M. | 1135 | $1,649.00 | $18,674.81 | $8,045.39 | $8,449.00 | $8,449.00 | $43,617.90 |
| Nieves Rosa, Elvin | 5631 | $2,109.00 | $23,871.37 | $5,640.90 | $19,010.40 | $19,010.40 | $67,533.07 |

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

37

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Ramos Caro, Cesar | 1389 | $2,175.00 | $5,335.57 | $5,155.54 | $22,753.80 | $22,753.80 | $55,958.71 |
| Rivera Zabala, Miguel | 7909 | $1,849.00 | $1,855.47 | $367.70 | $7,921.60 | $7,921.60 | $18,066.37 |
| Roldán Cortés, José L. | 8225 | $2,109.00 | $30,590.34 | $0.00 | $21,285.09 | $21,285.09 | $73,160.52 |
| Roman Nieves, Otilio | 2245 | $2,325.00 | $22,520.17 | $0.00 | $28,725.20 | $28,725.20 | $79,970.57 |
| Romero Crespo, Elvin(Law 70) | 882 | $2,109.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Rosa Pellet, Loyola F. | 5858 | $2,109.00 | $0.00 | $0.00 | $14,178.60 | $14,178.60 | $28,357.20 |
| Seguí Román, Octavio | 5913 | $2,109.00 | $29,274.16 | $0.00 | $20,510.40 | $20,510.40 | $70,294.96 |
| Soto Vélez, William | 7037 | $2,325.00 | $15,711.15 | $0.00 | $24,269.60 | $24,269.60 | $64,250.35 |
| Torres Borrero, Thomas | 9191 | $2,201.00 | $19,501.82 | $0.00 | $18,074.40 | $18,074.40 | $55,650.62 |
| Valentín Cortés, Roberto | 7012 | $2,109.00 | $22,584.22 | $0.00 | $18,825.60 | $18,825.60 | $60,235.42 |
| Vega Mangual, José M | 5826 | $1,849.00 | $13,795.07 | $5,169.62 | $10,440.96 | $10,440.96 | $39,846.61 |
| Vélez Rosario. Awilda | 9772 | $2,210.00 | $0.00 | $0.00 | $20,408.00 | $20,408.00 | $40,816.00 |
| | | TOTALS | $308,612.05 | $40,590.79 | $533,529.86 | $533,529.86 | $1,416,262.56 |

Nevertheless, and since said calculations have not been updated with regard to the period comprised between January 1, 2012 to the present, the Administration of Corrections is ordered to update the same, according to the individual assistance records, to compensate the same for the meal periods worked, without being relieved of their respective shifts and doing what is proper to adjust the regular salary of the plaintiffs, to the work schedule of 8 hours a day that they work, for the period identified.

Also, the Administration of Corrections must correct, within the term of 90 days, and make the adjustments in the Kronos system, to include, as overtime

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

38

worked, the half hour of the meal period and until such time as the plaintiffs are

not provided the relief in the corresponding shifts. Similarly, and within the same

term, they must correct the salary scale applicable to the plaintiffs, so that they

will be provided the monthly compensation based on the work schedule of 8

hours a day that they work and provide for the corresponding salary

adjustments.

Furthermore, and since it is applicable to the plaintiffs as personnel that

works security functions, Law 98 of June 10, 2000, as amended, and which

provides for the expedited payment of overtime, the Administration of

Corrections is ordered that within the term of 60 days it submit to the court a

Certification regarding the availability of funds in the account that was consigned

through this law and/or other items that can be available in its budget for the

payment, and the corresponding petition to OMB to request the approval to make

the payment of the extra hours owed, during the present fiscal year and/or in the

alternative, of the funds that are consigned in the next budget. Furthermore,

and with regard to the aforementioned payment of overtime, there be practiced

any adjustment to the corresponding items, if any of the plaintiffs have received

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com

39

increases in their retribution, to cover the differences if any, between the salary identified by the expert in his report, which is enclosed as part of this Judgment, and the current salary, since it is an established standard that the liquidation be made pursuant to the salary earned by the employee, on the date that the payment is made.

On the other hand, insofar as the case of Norberto Tomassini Arce is concerned, we dismiss with prejudice the claims of José Acevedo Soto, Cándido Crespo Acevedo, William Pérez Castro and Ángel Rodríguez Torres and in the case of Iván Ayala Marrero the claims presented by Julián López Rosado, Alexander Medina Morales and Elvin Romero Crespo, since they are all subject to the benefits of Law 70 of July 2, 2010 regarding Incentivized Retirement.

**RECORD AND NOTIFY.**

In Aguadilla, Puerto Rico, today April 22, 2016.

s/illegible
**MIRIAM SANTIAGO GUZMAN**
SUPERIOR COURT JUDGE

Certified to be a true and
correct translation from its original.
Aída Torres, USCCI
Tel. 787-225-8218
aidatranslation@gmail.com