## UNITED STATES DISTRICT COURT
## DISTTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA <br> TITLE III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of <br> THE COMMONWEALTH OF PUERTO RICO, *et al.* | (Jointly Administered) |
| Debtors. | |

**SUIZA DAIRY'S REPLY TO OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO URGENT MOTION REQUESTING A RULING OR ENTRY OF COMFORT ORDER AS TO THE NON-APPLICABILITY OF THE AUTOMATIC STAY TO A LIMITED CONTROVERSY WITH THE COMMONWEALTH OF PUERTO RICO ARISING POST-PETITION AND HAVING POST-PETITION EFFECTS BUT PARTIALLY BASED ON A PRE-PETITION JUDGMENT INCORPORATING MILK REGULATIONS ESTABLISHED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO AND NOT INVOLVING PROPERTY OF THE DEBTOR OR ITS ESTATE**

## **TABLE OF CONTENTS**

I. **PRELIMINARY STATEMENT**……………………………………………………..1-4

II. **ARGUMENT**……………………………………………………………………………4-11

III. **CONCLUSION**………………………………………………………………………11

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*American Builders & Contractors Supply Co., Inc. v. Precision Roofing and Consulting, LLC*, 2017 WL 2240366, M.D. Ala. 2017............................................................................................6
*Atiles-Gabriel v. Commonwealth of Puerto Rico,* 256 F.Supp.3d 122 (D.P.R. 2017)…………….7
*Bellini Imports, Ltd. v. Mason and Dixon Lines, Inc.,* 944 F.2d 199, 201 (1991)…......................6
*Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770 (1stCir. 1981) ................................5, 10
*Guadalupe-Baez v. Pesquera,* 269 F.Supp.3d 1 (D.P.R. 2017)…………………………………...7
*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985)…..........................6
*In re Anderson,* 23 B.R. 174, 175 (Bankr.N.D.Ill.1982) ................................................................ 6
*In re Curtis,* 40 B.R. 795 (Bankr.D. Utah 1984) ........................................................................... 7
*In re Gull Air, Inc.*, 890 F.2d 1255, 1263 (1989)…......................................................................6
*In re Powell,* 27 B.R. 146, 147 (Bankr.W.D.Mo.1983) ................................................................ 6
*In re Sonnax Indus.,* 907 F. 2d 1280 (2d Cir. 1990), ...................................................... 7, 8, 9, 10
*In re York,* 13 B.R. 757, 758 (Bankr.D.Me.1981) ........................................................................ 5
*Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.,* 33 B.R. 996, 999-1000 (N.D.Ga.1983)6
*U.S. v. Gumbaytay*, 2009 WL 605275 (M.D. Ala. 2009)…..........................................................6
*Vazquez-Carmona v. Department of Education of PR,* 255 F.Supp.3d, 298 (D.P.R. 2017)..…… 7
*Wal-Mart Puerto Rico, Inc. v. Zaragoza-Gomez*, 834 F.3d 110, 123 (1st Cir. 2016)…………..6-7

**FEDERAL STATUTES**

Bankruptcy Code section 101 (5), 11 U.S.C § 101 ....................................................................... 5
Bankruptcy Code section 362 (a), 11 U.S.C. § 362 ........................................................ 4, 5, 6, 11
Bankruptcy Code section 362 (b), 11 U.S.C. § 362 .......................................................................5
Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101, et seq ................................................................................................................................... 4


**PUERTO RICO RULES AND REGULATIONS**
Regulation No. 12 of October 29, 2013……………………….…………………….………1, 3, 4


**ADMINISTRATIVE ORDERS**
Administrative Order 2021-18……....…………………………………………………………..3, 4

COMES NOW, creditor Suiza Dairy Corp. ("Suiza"), represented by the undersigned attorneys, and very respectfully avers and prays as follows:

I. **PRELIMINARY STATEMENT**

As established in Suiza's *Urgent Motion Requesting a Ruling or Entry of Comfort Order As to the Non-Applicability of the Automatic Stay to a Limited Controversy with the Commonwealth of Puerto Rico Arising Post-Petition and Having Post-Petition Effects But Partially Based on a Pre-Petition Judgment Incorporating Milk Regulations Established by the United States District Court for the District of Puerto Rico and Not Involving Property of the Debtor or its Estate* (the "Urgent Motion for Comfort Order"), the remedy Suiza seeks to pursue is not intended to and cannot, in any way whatsoever, result in a monetary award on account of amounts due to Suiza. The only remedy Suiza seeks is to enforce the regulation that is part of a federal judgment that sets up the rules for establishing the price of fluid milk in a way that protects Suiza's constitutional rights. The comfort order requested by Suiza can easily provide for that limited action scope.

As this Honorable Court is aware by now,[1] Regulation No. 12, incorporated in the federal judgment in Civil Case No. 04-1840, covers many aspects of the milk industry, which the District Court found at the time to be in disarray due to discriminatory and arbitrary regulation. Those provisions were adopted after the District Court found that the Administrator of ORIL had created

---

[1] On August 3, 2020, Suiza filed with this Court an *Urgent Motion Requesting A Ruling Or Entry Of Comfort Order* [ECF No. 13938] requesting that this Honorable Court enter a "ruling or comfort order finding that Suiza [was] not acting in contravention of the automatic stay provisions […] nor [was] attempting to exercise control over or obtain possession over property of the estate in pursuing" a potential legal action to challenge the Administrative Order 2020-22 issued by the Administrator of ORIL in violation of Regulation No. 12. On March 26, 2021, because Administrative Order 2020-22 was nullified by the Puerto Rico Court of Appeals, this Honorable Court found that Suiza's argument no longer presented a live controversy, and, thus, Suiza's Motion for Comfort Order was denied as moot, "**without prejudice to requests for relief in connection with ongoing conduct.**" (emphasis added). Id., p. 10.

a price scheme wherein the then only local manufacturer of UHT, Indulac, purchased raw milk at below cost of production of the dairy farmers while the milk processors, including Suiza, to make up the economic deficit, paid substantially over cost and reasonable profit rates for the same raw milk.[2]

Because of this, for many years, the only two fresh milk producers in Puerto Rico, including Suiza, had been financing the low cost of raw milk paid by Indulac. Hence, the District Court found that it had to "strike the policy of establishing the discriminatory practice of purchasing raw milk by Indulac at below cost numbers of the dairy farmers as compared to over cost payment by the milk processors."[3] Said practice was prohibited by the District Court in any subsequent order of the Administrator of ORIL.[4]

At the same time, the Court found that ORIL lacked stability in the use of regulatory standards for the determination of allowable costs and reasonable prices, which provided the Administrator "unlimited discretion to arbitrarily allow and disallow costs and change the rules applicable to operating and costs' expenses at will, in order to keep milk prices low, while forcing the fresh milk processors to pay the excessively high price for raw milk to subsidize Indulac."[5]

The lack of regulatory rules, the District Court found, had been the instrument through which Suiza had been denied the recovery of its costs, as well as a fair profit in its fresh milk business.[6] Given that ORIL had "intentionally squeezed plaintiffs between the cap of a fixed regulated price and an irrational high price for raw milk",[7] the Court ordered the Administrator of ORIL to "put into effect non-discriminatory, rational and scientific regulatory standards that will

---

[2] See, Amended Opinion and Order Granting Preliminary Injunction, Docket No. 480, Civil Case No. 04-1840, July 13, 2007, p. 44.
[3] Id, p. 71-72.
[4] Id.
[5] Id, p. 73.
[6] Id, p. 74.
[7] Id.

2

allow him to determine costs and fair profits return for all the participants in the Puerto Rico regulated milk market."[8]

In addition to this, the Court ordered the Administrator to "establish a system or incorporate a system or provide for mitigation for regulator accrual for losses properly supported that occur between periods of yearly reviews" and that the "methodology of the parameters is to be consistent with [that] Opinion and Order."[9] Following the Court's order, as part of the Settlement Agreement reached by the parties in that case, a methodology was approved as to the regulatory accrual agreed upon and the return on equity ("ROE").

Those provisions incorporated in the Federal Judgment and Regulation No. 12 were violated once again by the Administrator with the issuance of the Administrative Order 2021-18. Because of this, on June 25, 2021, Suiza filed its Urgent Motion for Comfort Order seeking a ruling from this Honorable Court before initiating a proceeding in Civil Case No. 04-1840 <u>with the sole purpose of enforcing the Judgment and its regulations against the Commonwealth of Puerto Rico, to wit, maintaining the *status quo* in the case, not asserting, and much less enforcing its prepetition monetary judgement against the Commonwealth</u>.

On July 20, 2021, at DN 17432, the Commonwealth filed its *Objection to Suiza's Urgent Motion for Comfort Order* (the "Objection to Urgent Motion for Comfort Order"). As will be shown below, the Commonwealth misconstrues the nature of the relief being sought by Suiza. That is, by filing its Urgent Motion for Comfort Order, Suiza is not attempting to enforce a prepetition monetary judgment notwithstanding the pendency of the Commonwealth's Title III bankruptcy proceeding. To the contrary, Suiza is merely seeking to preserve the *status quo* on its pre-petition non-dischargeable Takings Clause claim against the Commonwealth.

---

[8] Id, p. 94.
[9] Id.

3

In other words, the specific remedy at issue, which Suiza wishes the District Court to uphold, would not affect the Government coffers in any way since the remedy sought by Suiza does not expose the Commonwealth to monetary liability and, therefore, PROMESA's stay provision does not apply here. Thus, the Objection to Urgent Motion for Comfort Order must be denied by this Honorable Court, and Suiza's Urgent Motion for Comfort Order should be granted.

**II.     ARGUMENT**

The Objection to Motion for Comfort Order mistakenly assumes, and as such erroneously argues, that Suiza is attempting to enforce its pre-petition non-dischargeable monetary judgment against the Commonwealth, in violation of the automatic stay provisions of 11 U.S.C. § 362(a). However, Suiza is solely and exclusively seeking to maintain the *status quo* as it pertains to Civil Case No. 04-1840 before the United States District Court for the District of Puerto Rico. Suiza seeks a ruling setting aside ORIL's pricing Administrative Order 2021-18, which follows a series of procedures and calculations that violate Regulation No. 12 and, therefore, the final Judgment entered in Civil Case No. 04-1840. The actions to be taken by Suiza in Civil No. 14-1840 do not constitute the enforcement of its pre-petition monetary judgment against the Commonwealth, as erroneously averred by the Commonwealth in its Objection to Motion for Comfort Order at DN 17432.

Suiza is not seeking the enforcement, against the debtor or against property of the estate, of the non-dischargeable monetary judgment in its favor obtained before the commencement of the case under this title. Suiza is not attempting to pursue collection of a pre-petition debt or pre-petition breach. It is not seeking to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. See, 11 U.S.C. § 362(a) (2) & (3). It is merely seeking to maintain the *status quo* in Civil No. 14-1840. Therefore, it is not acting in

4

contravention of the automatic stay statutes, and as such the entry of a Comfort Order or ruling by this Honorable Court, confirming the non-applicability of the automatic stay provisions to Suiza's request in the Urgent Motion for Comfort Order, is proper.

The Commonwealth's main arguments supporting its allegation as to the applicability of the automatic stay under 11 U.S.C. § 362(a) are that: "1) the automatic stay applies to the enforcement of the Prepetition Settlement Agreement, and 2) Movant has failed to show that "cause" exists to modify the automatic stay."[10] However, Suiza is not attempting to enforce a prepetition monetary claim against the Commonwealth through the relief it intends to seek in Civil 04-1840 with prior leave of this Court. Under 11 U.S.C § (101) (5), the term "claim" means:

> (A) ***right to payment,*** whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance ***if such breach gives rise to a right to payment,*** whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. (Emphasis ours).

As indicated, Suiza would not be seeking payment of any kind. Furthermore, a federal court may not award damages against the Commonwealth of Puerto Rico because of the 11th Amendment. See *Ezratty v. The Commonwealth of Puerto Rico,* 648 F. 2d 770 (1stCir. 1981).

Additionally, despite the broad reach of the automatic stay, the same it is not all encompassing. Section 362(b), for example, provides exemptions from the automatic stay. The Code requires that the proceeding stayed "was or could have been commenced" before filing or that the proceeding was based on a claim that arose pre-petition. Sec. 362(a)(1); see *In re York,* 13 B.R. 757, 758 (Bankr.D.Me.1981).

---

[10] See, Objection to Motion for Comfort Order at DN 17432, p. 7.

Proceedings or claims arising post-petition are not subject to the automatic stay. See, e.g., *Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.,* 33 B.R. 996, 999-1000 (N.D.Ga.1983); *In re Powell,* 27 B.R. 146, 147 (Bankr.W.D.Mo.1983); *In re Anderson,* 23 B.R. 174, 175 (Bankr.N.D.Ill.1982); *In re York,* 13 B.R. 757, 758-59 (Bankr.D.Me.1981). Although in its Objection to Motion for Comfort Order, the Commonwealth tried to distinguish the above-referenced cases from this one, there are plenty of other cases that support Suiza's petition. See, *American Builders & Contractors Supply Co., Inc. v. Precision Roofing and Consulting, LLC*, 2017 WL 2240366, M.D. Ala. 2017 ("Plaintiff's post-petition claims ought to be allowed to proceed, and that the stay in Sec. 362(a)(3) applies only if a judgment is sought to be enforced against property of [the Debtor's] bankruptcy estate"); *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985) (stating that section 362(a)'s stay provision "simply does not apply to post-bankruptcy events"); *U.S. v. Gumbaytay*, 2009 WL 605275 (M.D. Ala. 2009) ("Section 362(a) does not apply to conduct that occurs after the filing of a bankruptcy provision"); *In re Gull Air, Inc.*, 890 F.2d 1255, 1263 (1989) ("[P]roceedings or claims arising post-petition are not subject to the automatic stay of section 362(a)(1)"); *Bellini Imports, Ltd. v. Mason and Dixon Lines, Inc.,* 944 F.2d 199, 201 (1991) ("The stay is limited to actions that could have been instituted before the petition was filed or that are based on claims that arose before the petition was filed [citations omitted]. It does not include actions arising post-petition").

Moreover, the District Court for the District of Puerto Rico and the Court of Appeals for the First Circuit have decided that the automatic stay provisions do not apply when movant do not seek monetary damages. For example, in *Wal-Mart Puerto Rico, Inc. v. Zaragoza-Gomez*, 834 F.3d 110, 123 (1st Cir. 2016), the Court of Appeals for the First Circuit found that "[b]ecause this suit will not force Puerto Rico to pay any amount of money to Wal-Mart PR, section 405's stay

6

provision is inapposite." Similarly, in *Vazquez-Carmona v. Department of Education of Puerto Rico*, 255 F.Supp.3d, 298 (D.P.R. 2017), Plaintiff sought injunctive and declaratory relief to enforce a federally protected right. In that case, the District Court found that "PROMESA expressly contemplates that the temporary stay will not apply to suits to enforce federal rights. See Sec. 2106 ('nothing in this chapter shall be construed as …relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws…')." Therefore, the Court found that said action was not subject to the PROMESA stay. See also *Atiles-Gabriel v. Commonwealth of Puerto Rico*, 256 F.Supp.3d 122 (D.P.R. 2017) (finding that, because the requested relief did not seek a right to payment, the stay provisions did not apply); *Guadalupe-Baez v. Pesquera*, 269 F.Supp.3d 1 (D.P.R. 2017) (holding that Sec. 1983 claim did not seek to enforce a "claim against the debtor," and, thus, automatic stay granted by PROMESA in cases of commencement or continuation of proceedings against and officer or inhabitant of the debtor that sought to enforce a claim against the debtor did not apply).

Thus, due to the inapplicability of the automatic stay to the situation at bar, the factors contained in *In re Sonnax Indus.*, 907 F. 2d 1280 (2d Cir. 1990), for a lifting of stay analysis cited by the Commonwealth in support of its Objection to Motion for Comfort Order, are irrelevant to this case. In any case the Sonnax factors do not favor the position of the Commonwealth. *In re Sonnax Indus., supra,* cites the factors enumerated in *In re Curtis,* 40 B.R. 795 (Bankr.D. Utah 1984), which catalogued a dozen factors to be weighed in deciding whether litigation should be permitted to continue in another forum. These are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

7

(5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. See *id.* at 799-800.

Of the factors cited in *In re Sonnax, supra,* the Commonwealth relies on factors nos. 1, 2, 4, 5, 7, 10, 11 & 12. Even assuming, for the sole purpose of argument that the selected *In re Sonnax, supra,* factors cited by the Commonwealth were applicable to the situation at bar—which they are not—under such scenario lifting of the automatic stay would be proper.

**Sonnax Factor 1** cited by the Commonwealth focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. The answer to this proposition is yes. The court in Case No. 14-1840 is much more familiar with the issues involving the Suiza's non-dischargeable Takings Clause Claim against the Commonwealth, particularly those regarding applicability of milk regulations. It would be a needless duplication of judicial resources for this Honorable to relitigate the technical milk regulation issues decided in Case No. 14-1840, which was the subject of over a hundred (100) evidentiary hearings, extensive opinions entered by the court therein and by the Court of Appeals for the First Circuit.[11]

**Sonnax Factor 2** cited by the Commonwealth - the lack of connection with or interference with the bankruptcy case - also weighs in favor of granting the relief sought by Suiza. Contrary to

---

[11] *See*, *Vaqueria Tres Monjitas, Inc. v. Comas-Pagan,* 587 F.3d 464 (1st Cir. 2009); *Vaqueria Tres Monjitas, Inc. v. Comas-Pagan*, 772 F.3d 956 (1st Cir. 2014).

8

the Commonwealth's assertions, more resources from the Commonwealth would have to be used if the Commonwealth were to address the issues raised by Suiza within the Title III case, since it would be duplicating complex and extensive factual and legal issues which were duly litigated and adjudicated in Case No. 14-1840 within the span of several years. Therefore, the preservation of the *status quo* in Case No. 14-1840 would be more efficiently, expeditiously and cost-effectively handled by the court which entertained Case No. 14-1840, resulting in the conservation of valuable and limited judicial resources, and avoidance of extensive duplicative efforts by this Honorable Court.

**Sonnax Factor 4**—whether a specialized tribunal has been established to hear the cause of action at issue—also weighs heavily in allowing the court in Case No. 14-1840 to preserve the *status quo.* The fact that complex and extensive factual and legal issues which were duly litigated and adjudicated in Case No. 14-1840 within the span of several years clearly vests the court in Case No. 14-1840 with the specialized knowledge and familiarity with the issues that a specialized tribunal would have, again resulting in the conservation of valuable and limited judicial resources, and avoidance of extensive duplicative efforts by this Honorable Court.

**Sonnax Factor 6**—involvement of third parties—cited by the Commonwealth is not contrary to the relief being sought by Suiza. Even though the relief being sought by Suiza seeks to enforce the regulatory portions of the judgment in Civil Case No. 14-1840, Indulac and Vaqueria Tres Monjitas, Inc. would most likely intervene on any related proceeding. Therefore, Sonnax Factor 6 favors movant.

**Sonnax factor 7** cited by the Commonwealth actually supports the relief being sought by Suiza herein. Contrary to the assertions of the Commonwealth in citing Sonnax Factor 7, the Commonwealth would actually have to spend less resources addressing Suiza's action to maintain

the status quo in Case No. 14-1840, since as stated above, the fact that complex and extensive factual and legal issues which were duly litigated and adjudicated in Case No. 14-1840 within the span of several years clearly vests the court in Case No. 14-1840 with the specialized knowledge and familiarity with the issues that a specialized tribunal would have, again resulting in the conservation of valuable and limited judicial resources, and avoidance of extensive duplicative efforts by this Honorable Court and the litigants.

As to **Sonnax Factors 10 and 11** cited by the Commonwealth, again the interests of judicial economy favor the relief being sought by Suiza herein. The relief being sought before this forum does not involve, as the Commonwealth mistakenly asserts, pursuing a claim against the Commonwealth, but rather preserving the *status quo.* As explained above, this matter can be addressed in the most economical manner in Case No. 14-1840, with the preservation of valuable judicial resources. Therefore, Sonnax Factors 10 and 11 cited by the Commonwealth do not apply to the relief being sought by Suiza.

Lastly, as to **Sonnax Factor 12** cited by the Commonwealth, by the Commonwealth's own admissions therein, it is evident that the relief being sought by Suiza, to wit, the maintenance of the *status quo* involving only the milk regulatory aspects of its non-dischargeable Takings Clause claim against the Commonwealth, does not have any adverse effect in the structuring or implementation of the Commonwealth's Title III bankruptcy case. Therefore, Sonnax Factor 12 actually weighs in favor of conceding the remedy being sought by Suiza. Moreover, under the Eleventh Amendment of the Constitution of the United States, applicable to the Commonwealth of Puerto Rico pursuant to the ruling in *Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770 (1stCir. 1981), there is no right to request much less obtain any damages against the Commonwealth in Case No. 04-1480 under any of the two (2) scenarios mentioned above. Specific

performance of the milk regulation that is part of the judgment of Case No. 04-1840 is all that is sought here.

### III. CONCLUSION

Thus, the specific remedy at issue—which Suiza wishes the District Court to uphold—would not affect the Government coffers in any way since the remedy sought by Suiza does not expose the Commonwealth to monetary liability and, therefore, PROMESA's stay provisions under 11 U.S.C. § 362(a) are not applicable to the facts surrounding Suiza's Urgent Motion for Entry of Comfort Order. The purpose of the automatic stay is in no way compromised by the issuance of a Comfort Order. Moreover, the Commonwealth's fresh start protected by the Bankruptcy provisions is not carte blanche to violate a federal Judgment or Suiza's constitutional rights. As such, Suiza's Urgent Motion for Entry of Comfort Order should be granted by this Honorable Court.

WHEREFORE, in light of the above stated, Suiza most respectfully prays that this Honorable Court grant its Urgent Motion for Entry of Comfort Order, that the Court deny the Commonwealth's Objection to Motion for Comfort Order , and that the Court grant any other relief in favor of Suiza it deems proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on July 27th, 2021.

**REICHARD & ESCALERA, LLC**

*/s/ Rafael Escalera Rodríguez*
Rafael Escalera Rodríguez
USDC-PR No. 122609
*escalera@reichardescalera.com*

*/s/ Christopher A. Dávila*
Christopher A. Dávila
USDC-PR No. 304103
*cdavila@reichardescalera.com*

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties in the case.

*/s/ Christopher A. Dávila*