UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

           Debtors.

----------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

**[Supplemental Response to Docket #17518 and #17517]**

**SUPPLEMENTAL RESPONSE AND OBJECTION OF INDIVIDUAL BONDHOLDER
TO ADEQUACY OF DEBTORS' FURTHER REVISED DISCLOSURE STATEMENT
FILED JULY 27, 2021**

Dated: July 28, 2021

## TABLE OF ABBREVIATIONS AND CITATIONS

**#\_\_\_**  **Docket entries are referred to in the form of "#\_\_"**

**SUPPLEMENTAL RESPONSE AND OBJECTION OF INDIVIDUAL BONDHOLDER TO ADEQUACY OF DEBTORS' FURTHER REVISED DISCLOSURE STATEMENT FILED JULY 27, 2021**

Peter C. Hein, pro se, submits this Supplemental Response and Objection to the adequacy of the further revised Disclosure Statement filed July 27, 2021 (#17517 and #17518).

In the very limited time I have had to review FOMB's further revised disclosure statement (#17517) and red line (#17518), filed July 27, 2021, I noted issues and questions that bear upon whether FOMB's revisions are in compliance with this Court's order (#17387). To facilitate focus on the new material, page references herein are to the red line version (#17518-2).

    A.    **Issues and questions on "Summary of New GO Bond Distributions" (section beginning #17518-2-page-39-of-663).**

    1.    What is not provided, but is critical to Retail Investors, is a breakdown in chart form of what a holder of bonds in each "Bond Recovery Category" will receive. For example, if someone is in the "Vintage CW Bond Claims" Bond Recovery Category, what is the breakdown per 100,000 par (or 50,000 par or some other round number) of the amount of cash, the par amount of each of the 12 specific New GO Bonds, and the amount of CVIs, such a holder will receive. Investors need this breakdown per 100,000 par of existing bonds (or other round number of existing bonds) so that investors understand how large the pieces of each of the 12 New Go Bonds they will be receiving will be.

The COFINA disclosure statement actually had a table to show the breakdown of what would be received per 50,000 par (#4364-page-19-to-23-of-263), but there are no comparable tables in the current disclosure statement. Use of a round number of par amount of existing bonds, whether 100,000 par, or 50,000 par, in an example, allows an investor to see an illustrative breakdown and the investor can then do simple math to determine (based on the par amount of each of the investor's existing positions) the size of the pieces the investor will receive. My objection identified the need for a specification of the "par amount per existing 100,000 par" to be received in each of the new maturities — the fourth column in the illustrative

1

chart in my objection (#16908-page-26-to-27-of-178). I reiterated the need for this information in #16977-page-8-of-20.

The Court's order called for FOMB to "[i]llustrate in plain language the different maturities and other relevant features of the bonds to be issued … in a manner that would be comprehensible to hypothetical creditors of the relevant class" (#17387-page-4-of-7). The table provided at #17518-2-page-39-to-43-of-663 presents what will be issued in the aggregate, as the issuer (Commonwealth) might look at it. This table does not tell Retail Investors what they need to know about how much cash, what par amount of each of the 12 New GO Bonds, and how many CVIs they will receive per 100,000 par (or other round number) of existing holdings. In other words, for every 100,000 par of existing Vintage CW Bond Claims, what is the quantity of 2023 maturity CIBs, what is the quantity of 2025 CIBs, what is the quantity of 2027 CIBs, and so forth. FOMB (as noted) had charts in the COFINA disclosure statement that showed such a breakdown (#4364-page-19-to-23-of-263); in the COFINA case there were a total of 11 new CIBs and CABs (albeit it ended up as 14). There is no reason FOMB cannot present a similar breakdown in this case.

2. Questions on the subject of issuance of fractional bonds that FOMB does not answer include:

(a) If (as stated) the New GO Bonds will be issued in $1.00 nominations (#17518-2-page-39-of-663), will individuals be permitted to keep the bonds thus issued or will there be forced sales of positions of less than $1000 bond increments, as occurred in the COFINA situation? This is an important issue that I identified (#16908-page-30-of-178, #16977-page-9-of-20) but that has not been addressed.

(b) Why is what is being issued "rounded down" as opposed to using a convention (such as used by the IRS) where fractions of .50 or greater are rounded up and fractions of .49 or below are rounded down to the nearest $1.00? A fair and evenhanded method of rounding is particularly important to Retail Investors who receive numerous splintered bonds.

2

3. Nothing is said on the subject of the impact on marketability. That subject needs to be expressly and candidly discussed. This Court's order expressly required disclosure of "any effect on marketability of such bonds" (#17387-page-4-of-7-Item 10).

4. The first paragraph under the header "Summary of New GO Bond Distributions" states that "[a]ll of the [new] CABs and CIBs will have term bonds with mandatory sinking fund payments" in order "to optimize cash available to pay debt service" "because specific investors may purchase bonds in different parts of the maturity curve" (#17518-2-page-39-of-663). But the stated rationale does not address why, in the context of what is occurring here, 12 splinter bonds (10 CIBs and 2 CABs) are being distributed to investors outside of Puerto Rico, as opposed to distributing, for example, a single term bond with a sinking fund. This Court's order required a statement of "the rationale for structuring distributions in that [multiple kinds and maturities] manner" (#17387-page-4-of-7). However, FOMB has just side-stepped the question.

**B.    Issues and questions on new material regarding tax treatment (#17518-2-page-616-of-663)**

On quick review I noted the following issues and questions concerning the material added to the section regarding tax treatment (#17518-2-page-616-of-663):

1. If, in fact, "the tax status of the New GO Bonds" has still "not been determined" (#17518-2-page-616-of-663), there should be an express commitment by FOMB to provide timely updates as developments occur. We should not have a repeat of what occurred in the COFINA case where material new developments arose after the disclosure statement issued but nothing was said publicly to the parties or the Court about those developments, and the developments were first publicly disclosed after the confirmation hearing and just hours before the Effective Date. Timely supplementation could be provided at little or no cost through disclosures on Emma (and the disclosure statement could refer to the fact that interested investors can sign up for alerts on CUSIPs they hold on Emma to receive such updates). Such supplemental disclosures could also be issued through updates on the Oversight Board website or through Prime Clerk.

3

2. Paragraph 2 of the new material on #17518-2-page-616-of-663 refers to the need for guidance from the IRS "regarding the allocation of proceeds of the New GO Bonds between purposes eligible for tax-exempt financing and purposes not eligible for tax-exempt financing". (#17518-2-page-616-of-663). There needs to be an explanation of what the justification is for using proceeds of the New GO Bonds for some purpose not eligible for tax-exempt financing. All New GO Bonds are supposed to be going to existing bondholders. It is unclear how there could be "proceeds of the New GO Bonds".

3. New material added to paragraph 1 on #17518-2-page-616-of-663 states that "due diligence regarding the use of proceeds of the existing bonds must be completed by Section 103 Bond Counsel, among other matters. This diligence process has started but will take some time to complete." Since the first iteration of this Plan was proposed in September 2019, one would think that ample time has passed to figure out what the use of proceeds of the existing bonds has been. One is left wondering whether there is some issue that is being obscured. Furthermore, since the par amount of existing bonds is far larger than the par amount of the New GO Bonds, one would think that only the determination of the use of proceeds of a quantity of the existing bonds up to the amount of the New GO Bonds is necessary; is that in fact the case? The disclosure leaves this important question unanswered.

\* \* \*

This supplemental response and objection supplements my prior objections, including those I submitted at docket #16908, #16909, and #16977 and those I addressed during oral argument on July 13, 2021. I continue to assert my prior objections to the disclosure statement, only limited aspects of which have been addressed in #17517 and #17518.

4

July 28, 2021

                                                     Respectfully Submitted,

                                                   /s/ Peter C. Hein
                                                   Peter C. Hein, pro se
                                                   101 Central Park West, Apt. 14E
                                                   New York, NY 10023
                                                   petercheinsr@gmail.com
                                                   Claim 10696
                                                   GO Bonds: 500,000 par amount, plus unpaid interest to date
                                                   [5 separate CUSIPS: 74514LVX2
                                                                                 74514LWA1
                                                                                 74514LWM5
                                                                                 74514LWZ6
                                                                                 74514LB63]
                                                   Claim 174229
                                                   PBA Bonds: 200,000 par amount, plus unpaid interest to date
                                                   [CUSIP: 745235M24]

## Declaration pursuant to 28 U.S.C. §1746

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

Executed on this 28th day of July 2021.

                                                     /s/ Peter C. Hein
                                                       Peter C. Hein

## Certificate of Service

I, Peter C. Hein, certify that I have caused the foregoing "Supplemental Response and Objection of Individual Bondholder to Adequacy of Debtors' Further Revised Disclosure Statement filed July 27, 2021" to be served via the Court's CM/ECF system.

July 28, 2021

                                                         /s/ Peter C. Hein
                                                          Peter C. Hein