# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE<br>EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO, AND THE PUERTO RICO PUBLIC<br>BUILDINGS AUTHORITY,<br><br>                        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## OMNIBUS REPLY OF THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY TO OBJECTIONS TO SIXTH AMENDED DISCLOSURE STATEMENT

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

as Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the

Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"),

and the Puerto Rico Public Buildings Authority ("PBA"), pursuant to section 315(b) of the *Puerto*

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Rico Oversight, Management, and Economic Stability Act* ("<u>PROMESA</u>")[2] (the Oversight Board, in its capacity as Title III representative of the Commonwealth, ERS, and PBA, is referred to as the "<u>Debtors</u>"), respectfully submits this supplemental omnibus reply (the "<u>Omnibus Reply</u>") to the responses interposed to the *Disclosure Statement for the Sixth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 17308], filed on July 27, 2021.[3] In support of this Omnibus Reply, the Debtors respectfully state as follows:

### <u>Background</u>

1.      On July 13 and 14, 2021, the Court held a hearing to consider, among other things, approval of the Disclosure Statement Motion and the adequacy of information in the Disclosure Statement.  At the July 14, 2021 Disclosure Statement Hearing, the Oversight Board announced it had reach an understanding, subject to definitive documentation and the filing of an amended Plan, with Ambac Assurance Corporation ("<u>Ambac</u>") and Financial Guaranty Insurance Company ("<u>FGIC</u>") regarding the treatment of certain claims. Accordingly, the Court continued the Disclosure Statement Hearing to Tuesday, July 27, 2021 at 9:30 a.m., Atlantic Standard Time to permit the parties to finalize their understanding and file an amended Plan and Disclosure Statement.

2.      On July 16, 2021, the Court entered an *Order Regarding Rulings Made on the Record at the July 13-14, 2021, Hearing Concerning the Proposed Disclosure Statement and Plan*

---

[2]    PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3]    Capitalized terms not defined herein shall have the meaning ascribed to them in the *Amended Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [ECF No. 16756] (the "<u>Disclosure Statement Motion</u>").

*of Adjustment* [ECF No. 17387] (the "July 16 Order") directing the Debtors to amend the Disclosure Statement and order approving the Disclosure Statement in accordance with the July 16 Order.

3.       Pursuant to the *Order Approving Urgent Motion to Reschedule the Continued Disclosure Statement Hearing* [ECF No. 17501] (the "July 20 Order"), the Court rescheduled the Disclosure Statement Hearing for July 29, 2021 at 10:30 a.m., Atlantic Standard Time, and established July 27, 2021, at 9:00 a.m. (AST) as the deadline for the Debtors to file revised versions of the Disclosure Statement and proposed order approving the Disclosure Statement, and established July 28, 2021, at 12:00 p.m. (AST), as the deadline to file objections, if any, to the Disclosure Statement revisions made in response to the Court's July 16 Order.

4.       On July 27, 2021 the Debtors filed:

(i)       the *Sixth Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico, et al.* [ECF No. 17307] (the "Sixth Amended Plan"),[4]

(ii)      the *Disclosure Statement for the Sixth Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico, et al*. [ECF No. 17308], and

(iii)     the *Second Revised Proposed Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [ECF No. 17309-1].

---

[4]   On the same date, the Debtors posted on EMMA, the PRIFA Related Plan Support Agreement, dated as of July 27, 2021, the terms of which have been incorporated into the Sixth Amended Plan.

5.     The following five responses were interposed to the amended Disclosure Statement:[5]

| ECF No. | Date Filed | Objection | Party |
|---|---|---|---|
| 17526 | 7/27/21 | *Motion Reaffirming [sic] Objection to Sixth Amended Disclosure Statement and/or the Sixth Amended Plan of Adjustment at Dkt. No. 17517* (the "Suiza Objection") | Suiza Dairy Corp. ("Suiza") |
| 17536 | 7/28/21 | *Supplemental Response and Objection of Individual Bondholder to Adequacy of Debtors' Further Revised Disclosure Statement Filed July 27, 2021* (the "Hein Objection") | Peter C. Hein, *pro se* |
| 17540 | 7/28/21 | *Reservation of Rights of Assured Guaranty Corp. and Assured Guaranty Municipal Corp., with Respect to the Disclosure Statement for the Sixth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "Assured Objection") | Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "Assured") |
| 17543 | 7/28/21 | *Objection to: "Disclosure Statement for the Sixth Amended Tittle [sic] III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al."* (the "Finca Objection") | Finca Matilde, Inc. ("Finca") |
| 17545 | 7/28/21 | *Limited Objection of the DRA Parties to the Disclosure Statement for the Sixth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "DRA Objection") | AmeriNational Community Services, LLC, as servicer for the GDB Debt Recovery Authority; and Cantor-Katz Collateral Monitor LLC (collectively, the "DRA Parties") |

## Omnibus Reply to the Objections

6.     Certain objectors repeat their arguments the Plan is patently unconfirmable because certain claims based on the Constitution's Takings Clause or federal law cannot be discharged pursuant to the Plan. *See* Suiza Obj.; Finca Obj. The Debtors have rebutted these arguments in detail in their June 29 Reply, and the Court overruled such objections at the July 14, 2021 hearing. *See* June 29 Reply ¶¶ 78-82; July 14, 2021 Hr'g Tr. at 81:19-82:08. As set forth therein, because

---

[5]   The categories, organization, and summary of the responses below are solely for convenience and not intended, and should not be construed or deemed, to be a waiver of any of the Oversight Board's arguments, defenses, or other rights.

4

none of the objections establish that the Plan cannot be confirmed as a matter of law notwithstanding any evidentiary development, they should be overruled.

7.        Responses to the remaining objections, including those seeking additional information, are addressed in the Omnibus Reply Chart attached hereto as **Exhibit A** (the "Omnibus Reply Chart").

8.        In an effort to consensually resolve the various comments received since the filing of the Sixth Amended Plan and accompanying Disclosure Statement, the Oversight Board has made changes to the Disclosure Statement that are indicated in a redline, showing only the changed pages, attached hereto as **Exhibit B**, which revised Disclosure Statement will be included in a revised Disclosure Statement Order submitted to the Court following the Disclosure Statement Hearing.

9.        For the reasons set forth herein, in the Omnibus Reply Chart, and the June 29 Reply, the Objections should be overruled in their entirety.[6]

WHEREFORE the Debtors respectfully request the Court, (i) overrule the Objections, (ii) grant the Disclosure Statement Motion and approving the adequacy of the information contained in the Disclosure Statement, and (iii) grant the Debtors such other and further relief as the Court may deem just and proper.

Dated: July 28, 2021
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)

---

[6]    Failure of the Debtor to address other arguments made in the Objections does not constitute a waiver of the Debtor's rights to object to such arguments at the hearing(s) to consider approval of the Disclosure Statement or confirmation of the Plan.  The Debtor denies many of the factual and legal assertions and characterizations contained in the Objections.  Nothing contained herein shall be deemed an admission or acceptance of any statement contained in the Objections.

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*

/s/ Hermann D. Bauer

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*

## <u>Exhibit A</u>

**Omnibus Reply Chart**

| Party | Objection | Response |
|---|---|---|
| **Dischargeability** | | |
| Suiza | • Reasserts that Suiza's Claim is non-dischargeable and reiterates its objections raised at ECF No. 17013 and the oral arguments in the hearing of July 13, 2021. Suiza Obj. at 1-2. | Suiza's objection contains no new argument.  The Court overruled Suiza's same objection at the July 14, 2021 hearing, noting that such objections challenge the confirmability of the Plan, and do not pose a pure question of law that would render confirmation futile or unfeasible.  July 14, 2021 Hr'g Tr. at 81:19-82:08.<br><br>Suiza's objection to the discharge of its claims pursuant to the proposed Plan will be addressed at confirmation, as explained in the June 29 Reply at ¶¶ 78-82. |
| Finca | • Neither the Disclosure Statement nor the Plan contain a classification for inverse condemnation claims that were commenced by the claimant against the Commonwealth or its agencies, nor does the Disclosure Statement contain an explanation as to the reason a distinction is being made.  Finca Obj. ¶ 8.<br>• The Plan improperly impairs Finca's alleged takings claim. *Id.* ¶¶ 28-34.<br>• The Disclosure Statement fails to provide adequate information as to the effective date of distribution for members of classes 54 and 58. *Id..* ¶¶ 35-39. | Finca repeats the arguments made in its June 15, 2021 objection to the Disclosure Statement, *see* ECF No. 16996, which have been rebutted in the June 29 Reply at ¶ 81 n.43. The Court overruled Finca's objection at the July 14, 2021 hearing, noting that such objections challenge the confirmability of the Plan, and do not pose a pure question of law that would render confirmation futile or unfeasible.  July 14, 2021 Hr'g Tr. at 81:19-82:08.<br><br>The real issue is that Finca disapproves of the proposed treatment of its claim, which will be addressed at confirmation. |
| **Add'l Disclosures** | | |
| Hein | • Breakdown in chart form is required of what a holder of bonds in each "Bond Recovery Category" will receive. Hein Obj. ¶ A.1. | The Debtors are preparing, and will include in the Disclosure Statement, an illustrative chart of distributions of each maturity of the New GO Bonds and CVIs for each bond class. |
| | • If New GO Bonds will be issued in $1.00 nominations, whether individuals will be permitted to keep the bonds thus issued.  *Id.* ¶ A.2(a)  Why is what is being issued "rounded down" as opposed to using a convention (such as used by the IRS) where fractions of .50 or greater are rounded up and fractions of .49 or below are rounded down to the nearest $1.00? *Id.* ¶ A.2(b). | The issuance of the New GO Bonds in $1.00 denominations and rounding down of each bond delivered to the nearest dollar is intended to decrease the impact on holders, allowing holders to retain the New GO Bonds issued and ensuring that |

| Party | Objection | Response |
|---|---|---|
| | | sufficient consideration is available for distribution to all holders.<br><br>Mr. Hein objects to the means of implementing the Plan, which should be addressed at confirmation.  Nonetheless, because the New GO Bonds will be issued in $1.00 denominations, the Oversight Board anticipates the impact of rounding down will be, at most, less than $13 in the aggregate for each holder. |
| | • More information needed on the impact of marketability and the rationale for structuring distributions. *Id.* ¶¶ A.3-A.4. | The following language in the Disclosure Statement is intended to address the marketability of the New GO Bonds, explaining the practice in the municipal market for governments to issue amortizing debt, and that specific investors in the market may purchase bonds with a certain maturity.<br><br>"Municipal governments issue amortizing debt—*i.e.*, debt with principal maturities due on a regularly scheduled basis over a duration that varies generally between 20 and 40 years. The Commonwealth's New GO Bonds will mature over 25 years and will include both Capital Appreciation Bonds ("CABs") and Current Interest Bonds ("CIBs"). All of the CABs and CIBs will have term bonds with mandatory sinking fund payments. This is intended to optimize cash available to pay debt service *since the municipal market has a yield curve, and bonds are not priced to the average life as is the case in other markets, because specific investors may purchase bonds in differing parts of the maturity curve, including individual investors, corporations and mutual funds.*" (emphasis added).<br><br>Furthermore, the following language explains that the rationale for issuing multiple maturities—because existing bondholders owned outstanding bonds with differing maturities, and the Plan does not distinguish based upon existing maturity within |

| Party | Objection | Response |
|---|---|---|
| | | a Class, issuance of multiple maturities of New GO Bonds is intended to optimize creditor recoveries.<br><br>"Existing bondholders owned outstanding bonds with differing maturities. However, such holders' Claim as treated in the Plan is not distinguished based upon existing maturity. Thus, each existing holder will receive a pro-rata portion of all maturities to be issued listed below, allocated based upon the distribution provided to the applicable Class and such holder's Claim, ***which is intended to provide all bondholders similar recoveries and distributions of the New GO Bonds per Class***." (emphasis added) |
| | • Inclusion is needed of express continuing obligation by FOMB to provide timely updates. *Id.* ¶ B.1 | As noted in the Disclosure Statement, the information contained in the Disclosure statement is made as of the date set forth in the Disclosure Statement (July 27, 2021), and parties should not infer that facts set forth in the Disclosure Statement are unchanged since such date.  Mr. Hein does not provide a basis, including pursuant to the Bankruptcy Code section 1125 or Bankruptcy Rule 3016, nor is there any, for the Debtors' obligation to provide *continuing* disclosure after transmitting an approved disclosure statement to creditors.  *See* 11 U.S.C. § 1125(b) ("An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim . . . unless, at the time of or before such solicitation, ***there is transmitted*** to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." (emphasis added)).  Nonetheless, the Oversight Board will provide an update at the Confirmation Hearing as to the status of the Debtors' efforts to obtain tax-exempt status for the New GO Bonds. |
| | • Explanation of use of proceeds of the New GO Bonds. *Id.* ¶ B.2. | The Debtors have included the following footnote to clarify that "allocation of proceeds" references the use of proceeds from the Commonwealth's existing general obligation bonds, and that the New GO Bonds will not have proceeds. |

| Party | Objection | Response |
|-------|-----------|----------|
| | | "For the avoidance of doubt, the New GO Bonds will not have proceeds.  Due diligence will need to be conducted as to the use of proceeds of the Commonwealth's existing general obligation bonds, and whether such proceeds were used in accordance with applicable tax law." |
| | • Clarification needed of whether only determination of the use of proceeds of a quantity of the existing bonds up to the amount of the New GO Bonds is necessary. *Id.* ¶ B.2-3. | As noted in the Disclosure Statement, in order to determine the maximum amount of New GO Bonds that can be exempt from federal taxes under the IRC, due diligence regarding the use of proceeds of the existing bonds must be completed by Section 103 Bond Counsel.<br><br>The Debtors' initial filing of their plan of adjustment in September 2019 became subject to mediation and further negotiation.  Until such negotiations were concluded, the final terms of the Plan were unclear, and commencing the due diligence process at that time would not be an efficient use of the Debtors' limited resources.<br><br>Furthermore, there have been various intervening events that have delayed the diligence process and receiving necessary documentation, including earthquakes, hurricanes, and the COVID-19 pandemic. |
| DRA Parties | • Revise footnote 373 to make clear it represents only FOMB's views and add "The DRA Parties disagree with the Oversight Board's contentions and intend to address the legal merits of this issue in connection with confirmation of the Plan."  DRA Obj. | The applicable language has been revised as follows:<br><br>"The Oversight Board takes the position that the DRA Parties' claim is unsecured based on the Oversight Board's review of the applicable loan agreements and related documents in connection with the DRA Parties' asserted loan claim against PBA. The Oversight Board was able to identify only a security agreement and the filing of a UCC-1 in connection with the sale of two specific properties. However, it is the Oversight Board's position that perfection of a security interest in real property requires the proper execution and filing of a real estate mortgage—which there was none here. A security interest in personal property proceeds of real estate may be able to be perfected by a UCC-1 if properly described in the |

4

| Party | Objection | Response |
|---|---|---|
| | | financing statement, but, the Oversight Board maintains that is not the case here.  The DRA Parties disagree with the Oversight Board's view." |
| **Misc.** | | |
| U.S. Dep't of Justice | • Class 69 (Federal Claims) should be listed as impaired and entitled to vote. | Changes have been made to the Disclosure Statement and Disclosure Statement Order reflecting that creditors in Class 69 will receive a Solicitation Package and Ballot, and be entitled to vote to accept or reject the Plan. |
| Oversight Board | N/A | The following language was added to the Risk Factors Related to Legislative Action:<br><br>". . .  The Plan amendments may require the Oversight Board to request an adjournment of the Confirmation Hearing to allow time for supplemental disclosure and voting, if necessary. If the Commonwealth's existing legislation authorizing refinancings suffices, no adjournment may be necessary. The affected creditors will have opportunities to negotiate consensual amendments with the Oversight Board. If creditors and the Oversight Board do not reach consensus, the Oversight Board may request the Court to confirm such an amended Plan over the objections of classes of claims that do not accept the amended Plan. Neither the creditors holding those claims nor the Oversight Board will be bound to the settlements pertaining to those claims in the current Plan. The Oversight Board believes there are several means to satisfy confirmation requirements for an amended plan of adjustment that provides the substantive equivalent of the new bonds and contingent value instruments in the current Plan, but without the Legislation." |

**<u>Exhibit B</u>**

**Change-Pages Redline of Disclosure Statement**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## DISCLOSURE STATEMENT FOR THE SIXTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, *ET AL.*

| **PROSKAUER ROSE LLP** | **O'NEILL & BORGES LLC** |
|---|---|
| Eleven Times Square | 250 Muñoz Rivera Ave., Suite 800 |
| New York, New York 10036 | San Juan, PR 00918-1813 |

*Attorneys for the Financial Oversight and Management Board for Puerto Rico*
*as Representative for the Debtors in their Title III Cases*

Dated:  July 27, 2021

---

For inquiries regarding this Disclosure Statement, contact the Solicitation Agent, Prime Clerk LLC:
**Telephone** (available 10:00 a.m. to 7:00 p.m. AST):  (844) 822-9231 (toll free for U.S. and Puerto Rico)
(646) 486-7944 (for international callers)
**Email**: puertoricoballots@primeclerk.com (reference "Commonwealth Plan of Adjustment" in the subject line)
Please note that Prime Clerk LLC is not authorized to provide, and will not provide, legal advice.

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID:  3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).  The Oversight Board submits this Disclosure Statement in Cases No. 17 BK-1283-LTS (Commonwealth), 17 BK-3566-LTS (ERS), and 17 BK-5523-LTS (PBA).

| | Class | Ballot | Eligible for Election | Non-Voting Notice |
|---|---|---|---|---|
| Eminent Domain Claims | Class 54 | X | - | - |
| Energy Incentive Claims | Class 55 | - | - | X |
| Med Center Claims | Class 56 | X | - | - |
| Tax Credit Claims | Class 57 | - | - | X |
| CW General Unsecured Claims | Class 58 | X | X | - |
| CW/HTA Claims | Class 59 | X | - | - |
| CW/Convention Center Claims | Class 60 | X | - | - |
| CW/PRIFA Rum Tax Claims | Class 61 | X | - | - |
| CW/MBA Claims | Class 62 | X | - | - |
| CW Appropriations Claims | Class 63 | - | - | X |
| Section 510(b) Subordinated Claims | Class 64 | - | - | X |
| ERS Bond Claims | Class 65 | X | X | - |
| ERS General Unsecured Claims | Class 66 | X | X | - |
| Gracia-Gracia Claims | Class 67 | - | - | X |
| Convenience Claims | Class 68 | - | - | X |
| Federal Claims | Class 69 | -X | - | X- |

\* The Plan provides that, for voting purposes, the "holder" of an insured Bond Claim shall be determined in accordance with Section 301(c)(3) of PROMESA and any law or governing documents applicable to such insured Bond Claims.  Beneficial holders of Allowed Ambac Insured Bond Claims, Allowed Assured Insured Bond Claims, Allowed Assured CW/HTA Bond Claims, Allowed Assured CW/Convention Center Claims, Allowed Assured CW/PRIFA Rum Tax Claims, Allowed FGIC Insured Bond Claims, Allowed FGIC CW/HTA Bond Claims, Allowed National Insured Bond Claims, Allowed National CW/HTA Bond Claims, and Allowed Syncora Insured Bond Claims will not be entitled to vote to accept or reject the Plan.  Ambac, Assured, FGIC, National, and Syncora are entitled to vote on account of such claims, as applicable, under the Plan on behalf of beneficial holders thereof in accordance with Section 301(c)(3) of PROMESA and other applicable law and governing documents.

Holders of Allowed Claims in Classes 60 (CW Appropriations Claims) and 61 (Section 510(b) Subordinated Claims) will not receive a distribution pursuant to the Plan and shall be deemed to have rejected the Plan and are not entitled to vote.

Holders of ACR-eligible claims will not have the right to vote.

Holders of Allowed Claims in Classes 55 (Energy Incentive Claims), 67 (Gracia-Gracia Claims), and 68 (Convenience Claims, and 69 (Federal Claims)) are unimpaired pursuant to the Plan and shall be deemed to accept the Plan and are not entitled to vote.

Bankruptcy Code section 1126 defines "acceptance" of a plan of adjustment by a class of claims as acceptance by creditors in that class holding at least two-thirds in dollar amount and more than one-half in number of the allowed claims of such class held by creditors that voted to

63

|  | PBA Bond Recovery,[371] consisting of $154,899,902.23 in Cash, and (b) the Retail Support Fee,[372] consisting of $50,000,000.00 in Cash.<br><br>If Class 11 votes to reject the Plan, holders of Retail 2012 PBA Bond Claims in Class 11 will not receive the Retail Support Fee, which will be reallocated to the Initial GO/PBA PSA Restriction Fee Creditors and Retail Investors that are members of Classes that voted to accept the Plan.<br><br>*Voting*:  Class 11 is Impaired by the Plan.  Class 11 and each holder of an Allowed Retail 2012 PBA Bond Claim are entitled to vote to accept or reject the Plan.<br><br>***Allowed Amount of Claims***: (Amount Included in 2012 PBA Bond Claims)<br><br>***Projected Recovery from PBA***:  23.0%.<br><br>Total recovery on account of both (i) a Retail 2012 PBA Bond Claim, and (ii) an Allowed 2012 CW Guarantee Bond Claim or an Allowed 2012 CW Guarantee Bond Claim (Taxable Election), as applicable, is approximately 74.8%. |
| **Class 12:**<br>PBA/DRA<br>Secured Claims[373] | ***Classification:***  Class 12 consists of all claims against PBA on account of the loan allegedly made by GDB to PBA, which, as of the PBA Petition Date, were in the outstanding principal amount of $66,222,028.00, the repayment of which is asserted to be secured by the proceeds of the sale or disposition of certain PBA Property and subordinated to all rights and recoveries with respect to the PBA Bonds.<br><br>***Treatment:***  On the Effective Date, each holder of a PBA/DRA Secured Claims will receive payment, in cash, an amount equal to 10% of such holder's Allowed PBA/DRA Secured Claim.<br><br>***Voting***: Class 12 is Impaired by the Plan.  Class 12 and the holder of the |

---

[371] The 2012 PBA Bond Recovery is shared among the 2012 PBA Bond Claims and Retail 2012 PBA Bond Claims.

[372] The Retail Support Fee is shared among the Retail Vintage PBA Bond Claims, Retail 2011 PBA Bond Claims, Retail 2012 PBA Bond Claims, Retail Vintage CW Bond Claims, Retail 2011 CW bond Claims, Retail 2011 CW Series D/E/PIB Bond Claims, Retail 2012 CW Bond Claims, and Retail 2012 CW Bond Claims, to the extent the Class for such Claims votes to accept the Plan.

[373] The Oversight Board takes the position that the DRA Parties' claim is unsecured based on the Oversight Board's review of the applicable loan agreements and related documents in connection with the DRA Parties' asserted loan claim against PBA.  The Oversight Board was able to identify only a security agreement and the filing of a UCC-1 in connection with the sale of two specific properties.  However, perfection of a security interest in real property requires the proper execution and filing of a real estate mortgage—which there was none here.  A security interest in personal property proceeds of real estate may be able to be perfected by a UCC-1 if properly described in the financing statement, but, in the Oversight Board's view, that is not the case here.  The DRA Parties disagree with the Oversight Board's view.

| | |
|---|---|
| | PBA/DRA Secured Claim are entitled to vote to accept or reject the Plan.<br><br>*Allowed Amount of Claims*: $66,222,028.00<br><br>*Projected Recovery from PBA*: 10% |
| **Class 13:**<br>PBA General Unsecured Claims | *Classification:*  Class 13 consists of all claims against PBA that are not Vintage PBA Bond Claims, Vintage PBA Bond Claims (Assured), Vintage PBA Bond Claims (National), Vintage PBA Bond Claims (Ambac), Vintage PBA Bond Claims (FGIC),Vintage PBA Bond Claims (Syncora), Retail Vintage PBA Bond Claims, 2011 PBA Bond Claims, Retail 2011 PBA bond Claims, 2012 PBA Bond Claims, Retail 2012 PBA Bond Claims, PBA/DRA Secured Claims, or PBA/DRA Unsecured Claims.<br><br>PBA General Unsecured Claims include claims held by an employee of PBA related to ordinary course employment matters, including, a claim related to termination, holiday pay, vacation, sick leave, back-pay, or other similar claims, but do not include claims related to retiree benefits.<br><br>*Treatment:*  On the Effective Date, each holder of an Allowed PBA General Unsecured Claim will receive (a) payment, in cash, an amount equal to 10% of such holder's Allowed PBA General Unsecured Claim, or (b) such other treatment as may be mutually agreed to by and among such holder and Reorganized PBA.<br><br>*Voting*: Class 13 is Impaired by the Plan.  Class 13 and each holder of an Allowed PBA General Unsecured Claim are entitled to vote to accept or reject the Plan.<br><br>*Estimated Claim Amount*: $410,252,419<br><br>*Projected Recovery from PBA*: 10% |
| **Class 14:**<br>PBA/DRA Unsecured Claims[373] | *Classification:*  Class 14 consists of all claims against PBA on account of the subordinated loans allegedly made by GDB to PBA, which, as of the PBA Petition Date, were in the outstanding principal amount of $134,357,497.00.<br><br>*Treatment:*  On the Effective Date, each holder of a PBA/DRA Unsecured Claims will receive payment, in cash, an amount equal to |

[373] The Oversight Board takes the position that the DRA Parties' claim is unsecured based on the Oversight Board's review of the applicable loan agreements and related documents in connection with the DRA Parties' asserted loan claim against PBA.  The Oversight Board was able to identify only a security agreement and the filing of a UCC-1 in connection with the sale of two specific properties.  However, perfection of a security interest in real property requires the proper execution and filing of a real estate mortgage – which there was none here.  A security interest in personal property proceeds of real estate may be able to be perfected by a UCC-1 if properly described in the financing statement, but that is not the case here.

|  | *Estimated Allowed Amount of Claims*: $5,378,056 |
|---|---|
|  | *Projected Recovery from the Debtors*:  100% |
| **Class 69:** <br> Federal Claims | *Classification:*  Class 69 consists of any and all Claims of the United States of America, its agencies, departments or agents, including, without limitation, the United States Department of Housing and Urban Development, the United States Department of Homeland Security and the United States Department of Labor. <br><br> *Treatment:*  On the later to occur of (a) the Effective Date and (b) the date on which a Federal Claim shall become an Allowed Claim, the Reorganized Debtors shall (i) in their sole and absolute discretion, and in full consideration, satisfaction, release and exchange of an Allowed Federal Claim, (1) pay to each holder of an Allowed Federal Claim, in Cash, the full amount of such Allowed Federal Claim, (2) satisfy and discharge such Allowed Federal Claim in accordance with the terms and conditions of such documents evidencing such Allowed Federal Claims or (3) pay to each holder of an Allowed Federal Claim, in Cash, the full amount of such Allowed Federal Claim in forty (40) equal amount installments, with such payments commencing on the third (3rd) anniversary of the Effective Date and continuing on each anniversary thereafter, or (ii) satisfy and discharge such allowed Federal Claims on such terms as the Reorganized Debtors and the holder of any such Allowed Federal Claim shall agree. <br><br> *Voting*:  Class 69 is is ~~Unimpaired~~Impaired by the Plan.  Class 69 and each holder of an Allowed Federal Claim are ~~deemed to have accepted~~entitled to vote to accept or reject the Plan. <br><br> *Estimated Amount of Claims*: $1,109,741,657 <br><br> *Projected Recovery from the Debtors*:  100% |

**F.   Provisions Regarding the New GO Bonds, CVIs and Additional Indebtedness**

**THE NEW GO BONDS WILL BE ISSUED PURSUANT TO THE TERMS AND PROVISIONS OF THE NEW GO BONDS INDENTURE.   THE NEW GO BONDS INDENTURE CONSTITUTES PART OF THE PLAN SUPPLEMENT AND WILL BE FILED SEPARATELY WITH THE TITLE III COURT AS SOON AS PRACTICABLE (BUT IN NO EVENT LATER THAN SEVEN (7) DAYS) PRIOR TO THE VOTING DEADLINE, OR ON SUCH OTHER DATE AS THE TITLE III COURT ESTABLISHES, IN ACCORDANCE WITH THE DISCLOSURE STATEMENT ORDER.  PURSUANT TO THE GO/PBA PSA, THE NEW GO BONDS INDENTURE WILL BE CONSISTENT WITH THE GO/PBA PSA IN ALL RESPECTS AND OTHERWISE BE IN FORM AND SUBSTANCE REASONABLY SATISFACTORY TO EACH PARTY TO THE GO/PBA**

and after the Effective Date at the Assured Acceleration Price of 100% of the principal amount thereof plus accrued interest thereon (or, in the case of any capital appreciation bonds, the compounded amount thereof) to the date of payment.

(d) ***Assignment of Redemption Rights***.  On the Effective Date, the Commonwealth, PBA, and CCDA will be deemed to have assigned to Assured any rights to redeem and call the Assured Insured Bonds and any related rights such that such rights may be exercised directly and exclusively by Assured as if it were the Commonwealth, PBA, and CCDA for such purpose.  Any amounts due in connection with such redemption will be equal to the lesser of the applicable redemption price and the Assured Acceleration Price.

2.    **Treatment of National Insured Bond Claims**

If Classes 3, ~~17,~~18, and ~~23~~25 vote to accept the Plan, and all National Insurance Policies and related agreements related to National Insured Bonds are in full force and effect, with no outstanding payment defaults by National with respect to such National Insured Bonds up to and including the Effective Date, holders of National Insured Bond Claims will receive the following treatments.

(a) ***National Commutation Treatment***:  Each holder of an Allowed National Insured Bond Claim will have the option to elect on the Ballot/Election Form to receive, on the Effective Date, the National Commutation Consideration, distributable by or at the direction of National, and, if elected, (i) the beneficial holder thereof will have no other or further rights under or with respect to the applicable National Insurance Policy or any National Trust or National Escrow Account, and (ii) National will receive the National Plan Consideration that otherwise would be allocable or distributable to such holder of an Allowed National Insured Bond Claim.

A holder of an Allowed National Insured Bond Claim that does not validly elect to receive the National Non-Commutation Treatment will be deemed to have had, on or after the Effective Date, the National Insured Bonds, including the obligations of National under the related National Insurance Policies, underlying such holder's Allowed National Insured Bond Claim cancelled.

(b) ***National Non-Commutation Treatment***:  If a holder of an Allowed National Insured Bond Claim timely and validly elects not to receive the National Commutation Treatment, such holder of an Allowed National Insured Bond Claim will receive one or more of the treatments set out more fully in Section 75.2 of the Plan, at Nationals election, which will be exercised by National at or prior to the commencement of the Disclosure Statement Hearing.

501

(c) ***Acceleration of National Insured Bonds***.  To the extent there are no outstanding payment defaults by National with respect to National Insured Bonds up to and including the Effective Date, the payment of the principal of the National Insured Bonds will be accelerated as of the Effective Date. The National Insured Bonds will be due and payable form and after the Effective Date at an "acceleration price" of 100% of the principal amount thereof plus interest accrued thereon (or, in the case of capital appreciation bonds, the compounded amount thereof) to the date of payment.

(d) ***Assignment and Redemption Rights***.  On the Effective Date, to the extent permitted pursuant to applicable definitive documents and not inconsistent with the respective rights provided in accordance with the applicable National Insurance Policy, the Commonwealth and PBA will be deemed to assigned to National any and all rights to redeem and call the National Insured Bonds and any related rights such that such rights may be exercised directly and exclusively by National as if it were the Commonwealth or PBA, as applicable, for such purpose.  Any amounts due in connection with any such redemption will be equal to the lesser of the applicable redemption price and the National Acceleration Price.

3. **Treatment of Syncora Insured Bond Claims**

If Classes 5, 19, 6, 21, and 2528 vote to accept the Plan, holders of Syncora Insured Bond Claims will receive the following treatments.

(a) ***Acceleration of Syncora Insured Bonds***.  To the extent permitted pursuant to applicable definitive documents and not inconsistent with the respective rights provided in accordance with the applicable Syncora Insurance Policy, the payment of the principal of the Syncora Insured Bonds will be deemed accelerated as of the Effective Date.  The Syncora Insured Bonds will be due and payable from and after the Effective Date at an acceleration price equal to the principal amount thereof as of the Effective Date plus accrued interest to the date of payment.

(b) ***Assignment and Redemption Rights***.  On the Effective Date, the Commonwealth and PBA will be deemed to assigned to Syncora any and all rights to redeem and call the Syncora Insured Bonds and any related rights such that such rights may be exercised directly and exclusively by Syncora as if it were the Commonwealth or PBA for such purpose.  Any amounts due in connection with such redemption will be equal to the lesser of the applicable redemption price and the Syncora Acceleration Price.

502

amend the Plan to provide treatments of claims not requiring the Legislation. PROMESA section 301(a) incorporates Bankruptcy Code section 942 allowing plan modifications at any time before confirmation. The Plan amendments may require the Oversight Board to request an adjournment of the Confirmation Hearing to allow time for supplemental disclosure and voting, if necessary. If the Commonwealth's existing legislation authorizing refinancings suffices, no adjournment may be necessary. The affected creditors will have opportunities to negotiate consensual amendments with the Oversight Board. If creditors and the Oversight Board do not reach consensus, the Oversight Board may request the Court to confirm such an amended Plan over the objections of classes of claims that do not accept the amended Plan. Neither the creditors holding those claims nor the Oversight Board will be bound to the settlements pertaining to those claims in the current Plan. The Oversight Board believes there are several means to satisfy confirmation requirements for an amended plan of adjustment that provides the substantive equivalent of the new bonds and contingent value instruments in the current Plan, but without the Legislation.

Statutory Basis for Alternative to Legislation. The basis for the Oversight Board's belief an amended plan can be confirmed and implemented without the Legislation is primarily in three sections of the Bankruptcy Code, made applicable to the Debtors' PROMESA Title III cases, and one section of PROMESA.

1. Bankruptcy Code section 1123(a)(5)(J) provides a plan shall provide adequate means for its implementation such as the issuance of securities of the debtor. Therefore, the Oversight Board believes the Title III Court can and should confirm and approve issuance of the New GO Bonds, the GO CVIs, and the Clawback CVIs.

2. Bankruptcy Code section 1142(b) provides the Title III Court may direct the debtor and any other necessary party to execute or deliver any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act necessary for the consummation of the plan.

3. Bankruptcy Code section 105(a) provides the Title III Court may issue any order necessary or appropriate to carry out Title III, and the Title III Court may take any action or make any determination necessary or appropriate to enforce or implement its orders.

4. Finally, PROMESA section 305 provides the Title III Court can, by order, interfere with the political and governmental powers of the debtors, the property and revenues of the debtors, and the use or enjoyment by the debtors of any income-producing property, if the Oversight Board consents or the plan so provides.

Accordingly, the Title III Court may approve securities issued by the Reorganized Debtor under the Plan and may enforce the Plan and its implementation. All priorities granted to new securities issued under the Plan can be confirmed and enforced by the Title III Court. These provisions may be superior to any full faith and credit the Commonwealth can pledge.

### i.    Tax-Exempt New GO Bonds

The IRC imposes certain requirements that must be met subsequent to the issuance and delivery of the Tax-Exempt New GO Bonds for interest thereon to be and remain excluded from gross income for U.S. federal income tax purposes pursuant to Section 103 of the IRC. Noncompliance with such requirements could cause the interest on the Tax-Exempt New GO Bonds to be included in gross income for U.S. federal income tax purposes retroactive to the date of issue of the Tax-Exempt New GO Bonds.  When the Tax-Exempt New GO Bonds are issued on the Effective Date, Reorganized Commonwealth will, pursuant to the Definitive Documents, including the New GO Bonds Legislation, covenant to do and perform all acts and things permitted by law and reasonably necessary or desirable to assure that interest paid to the holders of any Tax-Exempt New GO Bonds shall be and remain excludable from gross income for U.S. federal income tax purposes pursuant to Section 103 of the IRC.  Interest on the New GO Bonds to be issued under the plan of adjustment is intended to be exempt from federal taxes to the maximum extent permitted under the IRC.  However, as noted above, the tax status of the New GO Bonds has not been determined as of the date of this Disclosure Statement.  In order to determine the maximum amount of New GO Bonds that can be exempt from federal taxes under the IRC, due diligence regarding the use of proceeds of the existing bonds must be completed by Section 103 Bond Counsel, among other matters. This diligence process has started but will take some time to complete.

In addition, a ruling or other guidance from the IRS regarding the allocation of proceeds of the New GO Bonds between purposes eligible for tax-exempt financing and purposes not eligible for tax-exempt financing will be sought in order to maximize the amount of New GO Bonds that can be issued as exempt from federal taxes under the IRC.[464] A ruling request has not yet been submitted to the IRS, but it is expected that the guidance from the IRS will be obtained before the Effective Date.  No assurance can be given that favorable guidance will be obtained from the IRS or the timing of such guidance.  If a ruling is not received, the amount of New GO Bonds that will be exempt from federal taxes will be less than if a ruling had been received and will be based on the percentage of existing bonds that were used for purposes that were and continue to be eligible for tax-exemption as determined by Section 103 Bond Counsel after a pro rata application of other consideration received by holders.  In order for Section 103 Bond Counsel to opine that any of the New GO Bonds are tax-exempt, it is necessary that those obligations are determined to be valid and binding legal obligations of the Commonwealth under legislation enacted by the Commonwealth or otherwise.

 Amounts allocable to pre-issuance accrued interest on the Tax-Exempt New GO Bonds will not be treated as tax-exempt interest under Section 103 of the IRC.

### ii.    Taxable New GO Bonds

If interest on the New GO Bonds (or a portion of them) is not treated as exempt from gross income for U.S. federal income tax purposes, then payments or accruals of "qualified stated interest" (as defined below) on such Taxable New GO Bonds (or the relevant portion of

---

[464] For the avoidance of doubt, the New GO Bonds will not have proceeds.  Due diligence will need to be conducted as to the use of proceeds of the Commonwealth's existing general obligation bonds, and whether such proceeds were used in accordance with applicable tax law.