# EXHIBIT A

📄 KeyCite Yellow Flag - Negative Treatment

Distinguished by Acevedo Rivera v. Hospital Interamericano De Medicina Avanzada San Pablo De Caguas, TCA, January 29, 2019

186 D.P.R. 365, 2012 WL
3655336 (P.R.), 2012 TSPR 126

Daniel Fraguada Bonilla, et al. appellees, v.
Hospital Auxilio Mutuo, Dr. Manuel
Anguita, et al., petitioners.

In the Supreme Court of Puerto Rico.
Docket Number: CC-2009-918

**Synopsis**

Writ of Certiorari of an Order entered by Guillermo Arbona Lago, Andrés E. Salas Soler, and Luisa M. Colom García, Judges of the Court of Appeals denying certiorari basing their ruling on the norm established in Arroyo v. Hospital La Concepción, 130:596. *The writ of certiorari is hereby issued and the norm established in Arroyo v. Hospital La Concepción, supra, on the suspension of the statute of limitations in claims under Art. 1802 of the Civil Code, 31 L.P.R.A. § 5141, in cases with multiple tortfeasors, as well as any other pronouncement incompatible with the rulings herein, is hereby revoked. Furthermore, the adopted norm is made prospective and, therefore, the Order issued by the Court of Appeals is hereby upheld. The case is hereby remanded to the Trial Court for continued proceedings.*

*Maritza López Camuy* and *Ricardo A. Ramírez Lugo*, counsel for the petitioner; *Wilfredo Zayas Nieves*, counsel for the appellee.

Senior Associate Judge Estrella Martínez issued the Court's opinion.

We have the opportunity today to evaluate our *369 standards governing the suspension of the statute of limitations in situations of non-contractual damages caused by multiple tortfeasors. To this end, we must determine whether it is appropriate to distinguish between the effects of joint and several liability by agreement or that which is based on a pre-existing relationship, and effects of joint and several liability that arises in situations with multiple tortfeasors.

**I**

On May 2, 2002, Ms. Hilda Pérez's family members filed a complaint for damages and injury against the Hospital Auxilio Mutuo and Dr. Manuel Anguita. [1] The Complaint also named John Doe and Richard Roe as unknown defendants. The complaint alleged that the defendants were jointly and severally liable in the event that it were determined that they acted negligently [2] The Complaint was subsequently amended to include certain allegations.

The plaintiffs jointly alleged that, on January 14, 2000, Dr. Manuel Anguita performed surgery on Ms. Pérez and found an intestinal obstruction. After the surgery, the hospital staff nasogastrically intubated the sixty-year-old patient. *370 A nurse proceeded to perform a test known as Turner and injected a liquid into the patient's tube, presumably without confirming that the tube was, in fact, in the stomach. The plaintiffs alleged that Ms. Pérez began to scream at that time.

She subsequently developed respiratory difficulties and had to be intubated. Months later, on July 1, 2000, the patient died. Along with these allegations, the plaintiffs indicated that Ms. Pérez passed away due to the negligent acts of the Hospital Auxilio Mutuo and its staff, as they had filed to provide her appropriate medical treatment. [3]

Six years after the lawsuit was initiated, the plaintiffs filed an application to amend the complaint to include other alleged tortfeasors. Specifically, they requested to name Dr. Noel Totti and Dr. Octavio Mestre in the lawsuit. [4] After the trial court granted the request for an amendment, on May 21, 2008, the plaintiffs amended the complaint. It was at that time that Dr. Mestre Morera and Dr. Totti found out that they, as well as their respective conjugal estates, were co-defendants in a litigation initiated over half a decade earlier. According to the plaintiffs' allegation, the doctors placed Ms. Pérez's nasogastric tube in a negligent manner.

Dr. Mestre Morera filed an answer to the amended complaint. Thereafter, and within the course of the litigation, *371 the doctor filed a motion for summary judgment. In his motion, he argued that the claim was barred because the plaintiffs had prior knowledge of his identity and participation in the event. [5]

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*30/JULY/2021 - Andrea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Thus, the doctor emphasized that, although the plaintiffs had standing to bring their claim, it was not until six years after the initial complaint was filed that they brought the action against him. He claimed that said delay constituted a gross lack of diligence on the part of the plaintiffs in exercising their cause of action and, therefore, the claim against him should be dismissed.

The plaintiffs filed opposition to Dr. Mestre Morera's motion for summary judgment. They did not provide any justification for the delay in naming him in the complaint for six years, but indicated that, although his participation was less significant than that of the other doctors, from the moment when they filed the initial complaint, the statute of limitations to file against any other doctor that may have been negligent in providing treatment to Ms. Pérez, was suspended. [6]

Having evaluated the parties' positions, the Trial Court entered an order denying the motion for summary judgment. Unsatisfied with said *372 ruling, Dr. Mestre Morera filed an appeal for *certiorari* before the Court of Appeals. The intermediate appellate court subsequently entered an order denying *certiorari*. The court based its findings on the norms established in *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596 (1992).

Unsatisfied once again, Dr. Mestre Morera Dr. Mestre Morera appealed to us by way of a writ of certiorari. In the relevant part of his filing, he pointed out that the Court of Appeals erred in concluding that the claim filed six years after the initial complaint was not barred. He argued that, under the cognitive theory of damages, the time period to bring the claim had expired, being that the plaintiffs had prior knowledge of his identity and the rest of the elements necessary to exercise their cause of action. The doctor questioned how a mere procedural formality without any other subsequent proceedings could relieve the plaintiffs of their duty to act in a diligent and timely manner in claiming their rights.

He inevitably calls for us to revoke the norms established in Arroyo v. Hospital La Concepción, supra, regarding the automatic indefinite suspension of the statute of limitations against alleged joint and severally liable co-tortfeasors who were not included in the original complaint. He proposes, instead, that we adopt the doctrine of in solidum obligations.

On April 16, 2010, we issued an order for plaintiffs to show cause as to why we should not issue the writ of certiorari and overturn the ruling of the Court of Appeals. The parties appeared. Having the benefit of both positions, we proceed to rule on the matter.

## II

[1–2] A. The statute of limitations is an element of law that extinguishes a right due to a party's inaction in exercising it *373 for a specified period of time. We have repeatedly explained that extinguishment of a claim by statute of limitations is an element that is substantive and not procedural in nature, and is governed by our Civil Code.. *S.L.G. Serrano-Báez v. Foot Locker*, 182 D.P.R. 824 (2011); *COSSEC et al. v. González López et al.*, 179 D.P.R. 793, 805 (2010); *Santos de García v. Banco Popular*, 172 D.P.R. 759, 766 (2007). This applies as a matter of law with the passing of time, unless one of the situations foreseen by our legal system occurs. *COSSEC et al. v. González López et al.*, supra, pp. 805–806; *Santos de García v. Banco Popular*, supra, p. 766. To this effect, Art. 1873 of the Civil Code, 31 L.P.R.A. § 5303, sets forth that "the statute of limitations for actions is suspended as they are brought before the courts, by an extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." [7]

[3] The statutes of limitations seek to punish inaction and encourage expeditiousness in bringing cases. *COSSEC et al. v. González López et al.*, supra, p. 806; *Campos v. Cía. Fom. Ind.*, 153 D.P.R. 137, 143 (2001). The objective is to promote confidence in the legal process and stability in legal relationships. Id. The objective is to promote confidence in the legal process and stability in legal relationships. *Campos v. Cía. Fom. Ind.*, supra, p. 143. Thus, we avoid surprises generated by old claims being resuscitated, as well as the inevitable consequences of the passage of time, such as loss of evidence, imprecise memory, and difficulty finding witnesses. Id., p. 144. This legal concept is based on "the human experience that valid claims are acted upon immediately and not abandoned." *374 *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943, 950 (1991). In this respect, once the period of time established by law has passed without any claim being filed by the rightsholder, there is a legal presumption of abandonment of the claim.

Certified to be a correct and true translation from the source text in Spanish to the target language English.
30/JULY/2021 - Andrea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365 (2012)

2012 TSPR 126

Case:17-03283-LTS Doc#:17623-1 Filed:07/30/21 Entered:07/30/21 16:36:49 Desc:
Exhibit A Certified Translation Fraguadas Case Page 4 of 22

See Zambrana Maldonado v. E.L.A., 129 D.P.R. 740, 752 (1992).

[4] As is well known, obligations arising from fault or negligence are governed by the provisions of Art. 1802 of the Civil Code, 31 L.P.R.A. § 5141, which sets forth that a person who "by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." The statute of limitations for such causes of action is of one year, in accordance with the provisions of Art. 1868 of the Civil Code, 31 L.P.R.A. § 5298. The brevity of this period is in line with the fact that no prior legal relationship existed between the plaintiff and the defendant. *Culebra Enterprises Corp. v. E.L.A.*, supra, pp. 951–952. Specifically, the referenced statute of limitations seeks to promote the timely filing of actions, in order to ensure that the passage of time does not confuse or blur the clarity of the truth as to the aspects of liability and quantifying the damages. *Campos v. Cía. Fom. Ind.*, supra, p. 143; *Culebra Enterprises Corp. v.E.L.A.*, supra, p. 950.

[5] In accordance with the cognitive theory of damages, this statute of limitations begins to run from the moment when a claimant knew or should have known that damages were incurred, who caused the damages, and the necessary elements in order to effectively exercise the cause of action. See: *COSSEC, et al. v. González López et al.*, supra; *Toledo Maldonado v.*

*Cartagena Ortiz*, 132 D.P.R. 249, 254–255 (1992); *Colón Prieto v. Géigel*, 115 D.P.R. 232, 247 (1984). Notwithstanding, we have repeatedly expressed that "if the lack of knowledge is due to a lack of diligence, these considerations as to the statute of limitations do not apply." *COSSEC et al. v. González López et al.*, supra, p. 806. **\*375**

[6] B. Obligations can be classified based on the subjects that make up the relationship. Thus, there are joint or joint and several obligations. In joint obligations, the debt can be divided and each debtor must fulfill their part independently. J. Castán Tobeñas, *Derecho civil español, común y foral* [*Spanish Civil Law, Common and Local*], 10th ed., Madrid, Ed. Reus, 1967, T. III, p. 107. In situations of joint and several liability, each creditor has the right to demand and each debtor has the duty to fully fulfill the obligation owed. Id.

[7] The governing rule in civil law is that joint and several liability is not presumed. Art. 1090 of the Civil Code,

31 L.P.R.A. § 3101, sets forth that the existence of two or more debtors to a single obligation does not imply that each one of them must fully fulfill the objects of said obligation. This article establishes joint liability as the rule, and joint and several liability as the exception, and it results that the latter only arises when the obligation so expressly states.

n matters of non-contractual liability, in Cruz et al. v. Frau, 31 D.P.R. 92, 100 (1922), we held that, when damages are caused by concurrent negligence of various individuals, their negligence is the proximate cause of the accident, and they are all responsible for remedying the harm caused. Then, in *Cubano v. Jiménez et al.*, 32 D.P.R. 167, 170 (1923), this Court expressed that "the tendency in case law has been to declare the liability of various defendants as *in solidum*."

Notwithstanding the foregoing statements, when faced with the question of existence of the right to contribution in our legal system, in *García v. Gobierno de la Capital*, 72 D.P.R. 138, 148–149 (1951), we extended juris prudentially extended the application of Art. 1094, 1098, and 1874 of the Civil Code, 31 L.P.R.A. §§ 3105, 3109, 5304, referring to the effects of joint and several liability on cases of damages and harm. As a preliminary step to said conclusion, **\*376** we expressed, perhaps with marginal clarity, that those who cause damages are jointly and severally liable to the injured party for a favorable judgment issued to said party in due course. *García v. Gobierno de la Capital*, supra, pp. 146–147.

[8] Thereafter, we had the opportunity to clarify our pronouncement on the doctrine of joint and several liability. In *Arroyo v. Hospital La Concepción*, supra, p. 605, we reiterated that "the provisions of Art. 1090 of the Civil Code, 31 L.P.R.A. § 3101, with respect to the non-presumption of joint and several liability, does not apply in matters of non-contractual liability" (Emphasis added). But even more importantly, mainly motivated by the Spanish doctrine of that time (1992), we preferred in that case to not distinguish between the different types of joint and several liability–perfect or imperfect, and we held as precedent that, within our legal system, joint and several liability was homogenous in nature, as primary effects, as well as secondary effects apply to it. Therefore, we ruled that the timely filing of a complaint by an aggrieved party towards a jointly and severally liable tortfeasor automatically suspends the statute of limitations against all other co-tortfeasors. We indicated that, by amending the complaint

**WESTLAW** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*30/JULY/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

or filing a third party complaint, the alleged co-tortfeasors that were not initially included can be incorporated into the lawsuit, and that the claimant needs only allege well and sufficiently that the new defendant is jointly and severally liable for the damages. Thus, in that case, we permitted the plaintiffs to name various co-defendants to the lawsuit four years after the initial complaint was filed.

We subsequently ruled on *García Pérez v. Corp. Serv. Mujer*, 174 D.P.R. 138, 155 (2008), which had the particularity that the plaintiff had prior knowledge of the identity and necessary elements to exercise her cause of action against an alleged joint and severally liable co-tortfeasor

*377 but did not include her in the initial complaint.[8] It was not until three years later that the prejudiced party amended the complaint to include her as a jointly and severally liable co-tortfeasor.[9] At that time, we reiterated the norm established by *Arroyo v. Hospital La Concepción*, supra, and found that, since the amended complaint alleged that the new co-defendant was jointly and severally liable for all of the damages caused, the statute of limitations was suspended by the filling of the initial complaint. Id., p. 159.

As we mentioned, in *Arroyo v. Hospital La Concepción*, supra, we adopted the interpretation of the Spanish doctrine and case law in force at that time. Time has passed and many changes have since intervened. The interpretation admitted in the case in question has been abandoned in Spain for various years now, having adopting, instead, the French doctrine which distinguishes between two types of joint and several liability (perfect v. imperfect).

### III

We must now find whether the established norm regarding the statute of limitations in tort damages cases must be kept in force; specifically, if the filing of a complaint for non-contractual liability against an alleged joint and severally liable co-tortfeasor suspends the statute of limitations against all other alleged co-tortfeasors. To this end, we analyze whether we must incorporate a distinction between cases of joint and several liability incurred by agreement, or that which involves a pre-existing relationship (known as proper or perfect joint and several liability), and cases of joint and several liability where there are various entities liable for tort damages (known as improper or imperfect joint and several liability). Should this *378 distinction be admitted, the suspending effect of Art. 1874 of the Civil Code, 31 L.P.R.A. § 5304, would apply to cases of proper joint and several liability, but would not extend to the realm of civil tort liability when there are various co-tortfeasors legally found liable.[10]

A thorough study of obligations derived from liability for tort damages requires a historical evaluation of its nature and scope.

[9] A. The word "solidaridad" [term for "joint and several liability in Spanish"] comes from the Latin in solidum, which is defined as the totality of a sum. A. Blánquez Fraile, Diccionario latino-español, español-latino [Latin-Spanish; Spanish-Latin Dictionary], Barcelona, Ed. Ramón Sopena, 1985, T. II, p. 1460. The legal element of in solidum liability itself originates from Roman law. Roman law recognized the division between joint and joint and several obligations to their full extent, whether or not there was distribution of liability between the parties. J.R. León Alonso, La categoría de la obligación "in solidum" [The "in solidum" Category of Obligations], Sevilla, Pubs. de la Universidad de Sevilla, 1978, p. 51. Obligations that involve a plurality of subjects were considered joint and several so long as there was not agreement between the parties. C. Gómez Ligüerre, Solidaridad y derecho de daños: los límites de la responsabilidad colectiva, [s.l.] [Joint and Several Liability and Damages Law: the Limits of Collective Liability], Thomson, Civitas, 2007, p. 79. Joint and several liability under Roman law permitted the creditor to demand full fulfillment of the obligation from any of the debtors.

Beginning in 286 B.C., by way of the Lex Aquilia, the Romans provided a framework for situations involving various tortfeasors having caused damages. Gómez Ligüerre, *op. cit.* p. 81. According to this framework, the victim could claim the totality of the compensation from any of those found liable. Id. *379

Under Roman Law, obligations were presumed joint and several. Joint liability was the exception, and applied when agreed-upon by the parties and when the obligation was divisible. Subsequently, this reasoning was overturned by Justinian Law (527-565 C.E.), which changed the presumption: it imposed the division of liability as the rule and established joint and several liability only when so agreed-upon. Gómez Ligüerre, *op. cit.*, p. 80. It was an indelible requirement that the claim had to be addressed to all debtors at the same time. Id., p. 81.

Since its inception, joint and several liability has been divided in accordance with the source from which it originates. Roman law proposed the idea of distinguishing between two types of plural obligations: joint obligations and in solidum obligations. See E. Petit, *Tratado elemental de Derecho Romano* [*Elementary Treatise on Roman Law*] (J. Fernández González, trad.), México, Editora Nacional, 1966, pp. 348-355. Although similar in appearance, the two types of obligations were differentiated based on their source or origin. J. Cubides Camacho, *Obligaciones* [*Obligations*], 5th ed.,

Certified to be a correct and true translation from the source text in Spanish to the target language English.
30/JULY/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

Bogotá, Ed. Pontificia Universidad Javeriana, 2007, p. 68. *In solidum* obligations were those that originated from natural causes, such as those deriving from an offense or common crime committed by the debtors, and joint obligations arose from voluntary causes. Petit, *op. cit.*, pp. 353–354. Likewise, *in solidum* obligations could only exist among debtors, while joint obligations may be established among debtors, as well as among creditors. Id.

The rule of non-presumption of joint and several liability in Roman law significantly influenced the creation of the Civil Codes of France and Spain. Nonetheless, these codes do not expressly establish how the co-tortfeasors shall be liable for non-contractual damages, therefore, both countries have filled this void through case law. In this aspect, our Civil Code is similar to that of France and Spain. **\*380**

B. Art. 1,202 of France's Civil Code states that joint and several liability is not presumed, but must rather be expressly agreed-upon. As we stated, the aforementioned code is silent regarding the obligation that must exist in cases where there is a plurality of tortfeasors.

With regard to matters of general liability, French doctrine distinguishes between two types of effects of joint and several liability: primary effects and secondary effects. The primary effects include unity of the debt and plurality of relationships. The secondary effects are suspension of the statute of limitations, suspension of default, and a promise of fulfillment on behalf of all joint and several debtors. Gómez Ligüerre, *op. cit.*, p. 127. This distinction is crucial to that doctrine, seeing as the secondary effects of joint and several liability do not apply to the scope of non-contractual liability.

This distinction is crucial to that doctrine, seeing as the secondary effects of joint and several liability do not apply to the scope of non-contractual liability. Due to the fact that joint and several liability may arise from law or from the will of the parties, in France, a distinction is made between cases of perfect joint and several liability and those in which the joint and several liability is imperfect. Joint and several liability is considered perfect when it is "among various persons joined by a common interest, that frequently interact or know each other." León Alonso, *op. cit.*, p. 32. In turn, it is imperfect when it is established by law "between individuals who do not know each other, who are not accidental co-debtors or when their relationships are sporadic." Id., pp. 32–33.

In cases of imperfect joint and several liability, an *in solidum* obligation arises.[11] In accordance with same, in cases involving a plurality of tortfeasors, each one of them is entirely liable, because the liability is autonomous. Á. Cristóbal Montes, Mancomunidad o solidaridad en la responsabilidad plural por acto ilícito civil [Joint Liability or Joint and Several Plural Liability in Civil Torts] , Barcelona, Ed. Bosch, 1985, p. 36. This is due to the fact that the relationships

**\*381**   from which each tortfeasor's obligation derives is independent. Id. Therefore, French doctrine does not consider such obligation as a regular joint and several obligation, but rather in solidum. Although each of the co-tortfeasors is liable for paying the entire amount, the secondary effects of traditional joint and several liability, among which, the suspension of the statute of limitations, do not apply. This means that actions involving non-contractual damages, the injured party must individually interrupt the statute of limitations with respect to each joint tortfeasor. Id., p. 38. That is to say, the timely filing of a complaint against a joint and severally liable co-tortfeasor does not suspend the statute of limitations as to the other alleged tortfeasors.

With regard to the suspension of the statute of limitations, Art. 1,206 of the French Civil Code, similar to Art. 1874 of our Civil Code, supra, sets forth that "actions brought against one of the joint and severally liable debtors suspend the statute of limitations with respect to all of them." *Civil Code francés* [*French Civil Code*] (Á. Núñez Iglesias, trad.), Madrid, Ed. Marcial Pons, 2005, p. 552. Now, French doctrine does not apply this article to the scope of tort liability. This is primarily due to the fact that France explains classic joint and several liability as an idea of mutual representation, that requires all of them to be acting based on common will. See Gómez Ligüerre, *op. cit.*, p. 99. This does not occur in cases of in solidum liability. In such cases, seeing as there is no mutual representation due to the absence of will of the co-participants to jointly bind each other, the obligation that arises between the co-tortfeasors for a damage is not considered comparable to its full extent as a proper joint and several obligation.

The exclusion of secondary effects of the joint and several liability of various tortfeasors in non-contractual damage cases is justified by the absence of a community of interests amongst the co-obligees. J. López Richart, Responsabilidad personal e individualizada [Personal and Individualized Liability], Madrid, Ed. Dikinson, 2003, p. \*382 40. There is no common interest, nor mutual representation because an in solidum obligation does not arise from a prior agreement or pact, but rather from an unconventional event. I. Sierra Gil de la Cuesta,

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*30/JULY/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Fraguada Bonilla v. Bosp. Aux. Mutuo, 186 DPR 365 (2012)

2012 TSPR 126

*Tratado de responsabilidad civil* [*Treatise on Civil Liability*], Spain, Ed. Bosch, 2008, T. II, p. 669.

In sum, within the non-contractual realm, French doctrine considers that, in non-contractual damages cases where there are various tortfeasors, an in solidum obligation arises, which does not give rise to the secondary effects of joint and several liability. In order for the injured party to converse their action against the alleged co-tortfeasors, the statute of limitations against each one of them must be suspended. Cristóbal Montes, *op. cit.*, p. 38.

C. Spain's Civil Code follows the model of the French Civil Code and does not expressly provide the obligational eventuality that governs in cases of non-contractual liability with various tortfeasors. Cristóbal Montes, *op. cit.*, p. 29. Art. 1,902 of the Spanish Civil Code, similar to Art. 1802 of our Civil Code, *supra*, picks up the element of non-contractual fault. Art. 1,137 of Spain's Civil Code of Spain sets forth that joint and several liability is not presumed. [12] However, based on to judicial interpretation, the co-tortfeasors are jointly and severally liable.

By the time that we ruled on Arroyo v. Hospital La Concepción, supra, the norms in force in Spain established homogeneous joint and several liability, which accepted that the timely filing of a complaint by an aggrieved party against a joint tortfeasor for damages and harm would suspend *383 the statute of limitations against those who would subsequently be found jointly and severally liable. This is due to the fact that there was no distinction between joint and several liability arising from an agreement and that arising as a product of damages caused by various tortfeasors. As we mentioned, this norm was abandoned in Spain. Instead, the dominant French interpretation was incorporated, which admits a distinction between proper and improper joint and several liability. In accordance with the modern norms in Spain, joint and several liability is proper when its nature derives from a legal norm or a conventional agreement, and improper when it is based on an order. See June 7, 2010 Order, No.521/2010.

The concept of improper joint and several liability presented "the solution to one of the problems posed by joint and several liability: the suspension of the statute of limitations." Gómez Ligüerre, *op. cit.*, p. 129. This is due to the fact that improper joint and several liability is an exception to the norm of suspension of the statute of limitations. The Spanish concept is very similar to the consolidated French doctrine in solidum, in force since the 19th century. Gómez Ligüerre, *op. cit.*, p. 125. Specifically, it was by way of the March 14, 2003 Order, March 14,

2003 Order, No. 3645/2003, that Spanish case law incorporated the referenced distinction. The facts surrounding that order are as follows: A laborer sued the company for which he worked as well as the site developer, and the lead architect for damages and injury. An order absolved the latter and ordered the first two to compensate the injured party. The injured party could not receive the compensation due to the insolvency of the defendants and proceeded to sue the technical architect and the technical architect's insurance companies. The lower courts found that the action was barred because Art. 1,974 of the Spanish Civil Code did not apply to that non-contractual cause of action. Spain's Supreme Court upheld the ruling after consulting the General Board *384 of Magistrates of the First Chamber of the Supreme Court, which adopted, by a wide majority of votes, the following agreement:

> The first paragraph of Article 1,974 of the Civil Code solely contemplates the suspending effect in the event that the joint and several obligations in their proper sense when such character derives from a legal norm or conventional agreement, *without being able to be extended to the realm of non-contractual liability when there are multiple tortfeasors judicially found liable.* (Emphasis added). March 14, 2003 Order, No. 3645/2003.

As we will see, Spanish jurisprudence, just as French doctrine, currently considers that the effect of suspending the statute of limitations established under Art. 1,974 applies only in cases of proper joint and several liability. See: March 14, 2003 Order, No. 3645/2003; June 4, 2007 Order, No. 662/2007. In Spain's case, this is when such nature arises from an agreement or by law. Id. Nonetheless, the suspension does not extend to improper joint and several liability as it is inexistent until the moment it arises by way of an order. Id. Such joint and several liability does not originate from a preexisting relationship, but rather from the tort producing the damages, which obtains recognition by way of the order so declaring it. Id. Therefore, the suspending acts operate individually. "[I]f joint and several liability does not arise by way of an order, which is the so-called improper joint and several liability, the suspension of the statute of limitations with respect to one of the debtors does not extend to the other, as the latter was not a joint debtor and only became so since the order so declaring, not before." June 4, 2007 Order. No.

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Certified to be a correct and true translation from the source text in Spanish to the target language English.
30/JULY/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365 (2012)
2012 TSPR 126

3645/2007; March 14, 2003 Order, No. 3612/2003.

This doctrine was consolidated in Spain (October 19, 2007 Order, No. 1086/2007), and has been uniformly applied since 2003. See: July 18, 2011 Order, No. 545/2011; October 19, 2007 Order, No. 1086/2007; May 8, 2007, Order, No. 466/2007; October 23, 2003 Order *385, No. 979/2003; June 5, 2003 Order, No. 534/2003.

## IV

We have closely examined the norm established in *Arroyo v. Hospital La Concepción*, supra. In that case, we faced the existence of two possible interpretations of joint and several liability within our legal system. One of these reiterated the homogeneous nature of joint and several liability and, therefore, the recognition of the full extent of its primary and secondary effects. The other admitted a distinction between proper and improper joint and several liability. According to the latter exegesis, the primary effects of joint and several liability would remain intact, each debtor would be liable to pay the totality of the debt, but the secondary effects of joint and several liability would not be recognized. In this case, that the suspension of the statute of limitations against a co-tortfeasor would indefinitely suspend the statute of limitation against the rest of the co-tortfeasors.

Given that situation, in *Arroyo v. Hospital La Concepción*, supra, e were inclined to appreciate the Spanish doctrine in force at that time, and abandoned in that jurisdiction almost a decade ago, and we interpreted that, in accordance with Article 1874 of our Civil Code, supra, whose first paragraph provides that "[t]he suspension of the statute of limitations in cases with joint and several obligations equally takes advantage of or harms all creditors or debtors," the timely filing of a claim for damages against a joint and severally liable co-tortfeasor would suspend the statute of limitations against all those who were jointly and severally liable. It was not the first time that we supplemented a void in the law on non-contractual liability, seeing as proper joint and several liability of the co-tortfeasors does not expressly arise *386 from law, but rather from a judicial interpretation of the provisions of our Civil Code. C.J. Irizarry Yunqué, *Responsabilidad Civil Extracontractual*, [Non-contractual Civil Liability], 6th ed., [s. l.], ed. del autor, 2007, p. 343. Thus, in *Arroyo v. Hospital La Concepción*, supra, we interpreted that, in our

legal system there was only one type of joint and several liability and we refused to make a distinction between perfect and imperfect joint and several liability, and admitted, in turn, the effects that this implied with regard to suspension of the statute of limitations.

The foregoing had the purpose of attaining a fair balance between the interests involved. In *Arroyo v. Hospital La Concepción*, supra, p. 608, we affirmed that the norm adopted therein "attained the best balance between all interests". It was the enunciation of a hypothesis to be proven. Two decades later, the joint body of experience requires us to conclude that the norm formulated therein did not attain the balance sought. Effectively, after *Arroyo v. Hospital La Concepción*, supra, we recognized that said norm, in fact, provides most protection to the plaintiff. See, as an example, *García Pérez v. Corp. Serv. Mujer*, supra, p. 151. Thus have shown the various effects of this norm when applied in practice.

The plaintiff can bring another person into the lawsuit as a co-defendant even when bringing such claim beyond the statute of limitations. In fact, even when having prior knowledge of the alleged joint tortfeasor, the defendant does not have to include same in the initial complaint. See *García Pérez v. Corp. Serv. Mujer*, supra. The aggrieved party does not even have to allege joint and several liability of the co-tortfeasors in that complaint, as same can be done after by way of an amendment to the complaint. Id. In such amendment, the injured party need only allege that the new defendant is jointly and severally liable for the damages claimed from the initial defendant, against whom the complaint was filed within the statute of limitations provided by the legal system. Thus, even if the plaintiff *387 has standing to exercise the cause of action against the alleged jointly liable co-tortfeasor, there is no limit for doing so. This is because the norm in Arroyo v. Hospital La Concepción, supra, provided an automatic and indefinite suspending effect, to the detriment of all those who might be joint and severally liable for the damages.

The alleged co-tortfeasor brought into the suit multiple years after the initial complaint was filed (in this case six years) has to employ, in many occasions, great effort to remember with marked certainty if any of the specific events motivated a claim against this co-tortfeasor. Furthermore, they are faced with an urgent search for documents created during that historical time, an issue which is complicated when these are under the custody of third parties with which there is little or no relationship, or a third party that no longer exists. Likewise, the more time that passes until this party is incorporated finally as a co-defendant, the greater the

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*30/JULY/2021 - Andrea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

likelihood that this party will face difficulties in finding witnesses. Likewise, the alleged joint tortfeasor shall have to incur costs related to litigation which would otherwise be barred, due to the brevity of the term for such claims within our Civil Code.

As we can advise, far from attaining a balance of opposing interests, this norm creates an imbalance of the situation in favor of the plaintiff. As a result of the foregoing, despite the *express and extensive* recognition of the substantive concept of the statute of limitations in Art. 1840 through 1874 of our Civil Code, 31 L.P.R.A. §§ 5261–5304, the severity characterizing the statutes of limitations considerably decreases. This is despite the fact that their existence is cemented in the search for stability in legal relationships and meant to encourage diligence in claiming rights.

We once again advise that the norms on joint and several liability in tort liability, edified **\*388** in *Arroyo v. Hospital La Concepción*, supra, do not expressly arise from our Civil Code. When the Civil Code alludes to "joint and several obligations," it does not specify whether we are facing the premise of a single joint and several obligation or various and, in this latter case, how many and which in particular. Very much in spite of this lack, we have jurisprudentially given precedence to the norm adopted therein regarding the substantive concept of statutes of limitations, which is expressly regulated within our Code. The problem with the construction of said norm is that it did not attain a solution that would be in harmony with the rest of our legal system. The result has been to undermine the statute of limitations as an institution, seeing as one party has an eternal right to bring a claim against the other for damages and harm. Equally dangerously, such norm has the unfortunate effect of rewarding inaction in claiming a right and of fostering the strategic use of inaction, seeing as the plaintiff can arbitrarily select the moment when it is most opportune to include a party in the litigation.

Another problem faced by the automatic suspension and the indefinite deferment of the cause of action is that the statute of limitations being of one year under Art. 1802 of the Civil Code, supra, is mainly in response to the lack of a prior legal relationship between the plaintiff and defendant. The liability for a tort does not arise from an agreement between the parties, therefore, there is no opportunity to negotiate the terms of the obligations, nor to freely consent, contrary to the contractual relationship. That is the reason for the brevity of the period of time provided by the legislature. Thus, a minimum level of certainty was imparted upon a relationship that lacked it. That minimum level of security somehow compensates for the lack of knowledge regarding the scope

of liability. It provides, therefore, a small safeguard that allows for preserving a just equilibrium between the parties. And it must not be circumvented. **\*389**

[10] Based on everything affirmed herein, we adopted *in solidum* liability in our jurisdiction in matters involving statutes of limitations in civil otrt actions involving more than one tortfeasor.[13]

According to same, the injured party may be able to recover from each defendant co-tortfeasor the totality of the debt due, therefore, the primary effects of joint and several liability are maintained. However, the statute of limitations will have to be suspended in regard to each co-tortfeasor separately, within the established term of one year under Art. 1868 of the Civil Code, supra, if there is an interest in preserving the cause of action against each one of them. This does not constitute a greater burden on the injured party, as said party need only exercise the same diligence required when bringing a claim against a tortfeasor. Thus, the timely filing of a claim against an alleged co-tortfeasor does not suspend the statute of limitations against the rest of the alleged co-tortfeasors, because such secondary effect of joint and several liability does not occur in *in solidum* obligations.[14] Therefore, Art. 1874 de our Civil Code, *supra*, does not apply to damages and harm under Art. 1802 of the Civil Code, supra.[15] **\*390**

[11] It is clear that the norm adopted today is also in consonance with the cognitive theory of harm, therefore the statute of limitations begins to run from the time when the injured party knew or should have known, if it had employed some degree of diligence, the existence of the damage and who caused it, as well as the elements necessary to be able to effectively exercise its cause of action. *CSMPR v. Carlo Marrero et als.*, 182 D.P.R. 411, 425–426 (2011); *COSSEC et al. v. González López et al.*, supra; *Vera v. Dr. Bravo*, 161 D.P.R. 308, 328 (2004); *Santiago v. Ríos Alonso*, 156 D.P.R. 181, 189 (2002). Therefore, if, through the discovery of evidence or other means, the aggrieved party becomes aware of the existence of another co-tortfeasor and of the rest of the elements necessary to file a claim against such party, the statute of limitations barring claims against that alleged co-tortfeasor shall begin to elapse at that time. This is because a statute of limitations whose effect is to require the plaintiff to present a cause of action before becoming aware of the existence of the cause of action, violates the due process of law. *COSSEC et al. v. González López et al.*, supra,

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 8

Certified to be a correct and true translation from the source text in Spanish to the target text in English.
30/JULY/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365 (2012)
2012 TSPR 126

pp. 821–822; *Vera v. Dr. Bravo*, supra, p. 327; *Vega v.J. Pérez & Cía, Inc.*, 135 D.P.R. 746, 754 (1994). **\*391**

Thus, we harmonize the norms when there are several co-tortfeasors causing the non-contractual damage with the cognitive theory of damages and with the substantive concept of the statute of limitations, while respecting the minimum of certainty granted by the legislator for this type of relationship. At the same time, by adopting improper joint and several liability, we are resolving the problem of uncertainty presented by the indefinite pendency of the non-contractual civil liability cause of action. The norm set forth herein allows us to keep distance from the dangerous line between the remedy for damages does not require any diligence, very much in spite of the express mandate of the provisions of our Civil Code. Diligence in bringing claims now becomes imperative.

We are aware that the foregoing doctrine is a consolidated one, but such circumstance does not impede harmonizing our legal system and remedying an injustice. If the doctrine of stare decisis sets forth that a court must follow its decisions in subsequent cases, this is not to the extreme of stating that a court's opinion becomes dogma that the Court must follow blindly. *Pueblo v. Díaz De León*, 176 D.P.R. 913, 921 (2009);

*Am. Railroad Co. v. Comisión Industrial*, 61 D.P.R. 314, 326 (1943). This is why when the reasoning of a decision no longer stands up to careful analysis, we are not obliged to follow it.

*Arizona v. Gant*, 556 U.S. 332, 348 (2009). Thus, the consistent development of legal principles is permitted.

*Pueblo v. Díaz de León*, supra; *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).

## V

The complaint in the case at bar was filed on May 2, 2002. Six long years passed during which the plaintiffs withheld their claim against Dr. Mestre **\*392** Morera, whom they finally incorporated into the lawsuit on May 21, 2008 by way of an amended complaint.

The statements of the defendants themselves demonstrate their knowledge of the identity and participation of Dr. Mestre Morera in the occurrence. Co-plaintiff Fraguada Pérez testified that she was in Ms. Pérez's room, watching the procedure being performed by the nurse. It was at that time that she observed that Ms. Pérez

began coughing repeatedly. Faced with the unforeseen event, Dr. Mestre Morera and another doctor rushed to the room. The co-plaintiff herself urged the doctors to do something, while she was firmly standing by her mother's side. Thus, she witnessed the alleged argument between Dr. Mestre Morera and the other doctor with respect to the placement of the nasogastric tube in the patient's lung and the warning that one of them addressed to his interlocutor regarding the potential danger of an embolism. The co-plaintiff remained at her mother's side and very close to the doctors who, according to her testimony, were alternatively arranging to remove the patient's tube. At that moment, before the gaze and in the presence of the co-plaintiff, the tube was withdrawn from Ms. Pérez.

It is precisely the alleged misplacement of the nasogastric tube and the alleged argument of Dr. Mestre Morera are the only two reasons why the plaintiffs name the doctor in their amended complaint filed six years later. From the testimony of the co-plaintiff during her deposition, it is clear that from the day of the event, the plaintiffs knew the identity of the doctor and his alleged responsibility in causing the alleged damage, which culminated months later with the death of Ms. Pérez Despite being aware of the foregoing, the plaintiffs did not include Dr. Mestre Morera in their initial complaint. On the contrary, they opted to do it six years later, which demonstrates their negligence towards and abandonment of **\*393** said claim. [16] Therefore, according to the norm adopted herein, plaintiffs had to individually bring a claim against Dr. Mestre Morera as an alleged joint and several co-tortfeasor within the one-year statute of limitations provided for in Article 1868 of our Civil Code, supra, which began to run from the moment that they became aware of the damages, the identity of the individual causing same, and the elements necessary to exercise their cause of action.

Notwithstanding the foregoing, upon evaluating the criteria established in order to declare the retroactive or prospective application of a judicial finding, the trust invested by the plaintiffs in the old norm; a purpose which pursues the new rule to determine whether its retroactivity advances it and the effect of the new norm on the administration of justice, we rule that our decision must have prospective effects. See: *Isla Verde Rental v. García*, 165 D.P.R. 499, 505 (2005); *Datiz v. Hospital Episcopal*, 163 D.P.R. 10, 18 (2004); *Gorbea Vallés v. Registrador*, 131 D.P.R. 10, 16 (1992); *Correa Vélez v. Carrasquillo*, 103 D.P.R. 912, 918 (1975). This is because this norm is

WESTLAW  © 2021 Thomson Reuters. No claim to original U.S. Government Works.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*30/JULY/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

new and its application to the present case would lead to substantially unfair results for the appellees, who relied on the previous norm, which was replaced by the new one being implemented today. This rule has prospective effects based on considerations of public policy and social order, since the objective being pursued is to grant fair and equitable remedies that respond to the best social coexistence. *López v. Porrata Doria*, 169 D.P.R. 135, 169 (2006); *Isla Verde Rental v. García*, supra. Hereinafter, any cause of action brought under Art. 1802 of the Civil Code, *supra*, shall be judged in accordance with the norms established herein. **\*394**

## VI

Wherefore, *we hereby issue the writ for certiorari and revoke the norm established in Arroyo v. Hospital La Concepción, supra, with regard to the suspension of the statute of limitations in claims under Art. 1802 of the Civil Code, supra, in cases involving multiple co-tortfeasors, as well as any other pronouncement incompatible with the rulings herein. In addition, we make the adopted rule prospective and, consequently, uphold the decision issued by the Court of Appeals. The case is remanded to the Trial Court for further proceedings.*

*An Order shall be entered accordingly.*

Associate Justice Pabón Charneco issued a written dissent, joined by Associate Justices Rivera García and Feliberti Cintrón. Associate Justice Fiol Matta expressed as follows:

I dissent from the decision of the Court revoking the norm formulated in *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596 (1992). The opinions in *Arroyo* and in *García Pérez v. Corp. Serv. Mujer*, 174 D.P.R. 138 (2008), as well as Associate Justice Pabón Charneco's dissenting opinion in this matter rand the article by Professor José Julián Álvarez González *Responsabilidad Civil Extracontractual*, 78 Rev. Jur. U.P.R. 457, 473 (2009) [*Non-contractual Civil Liability*], explain the reasons why the *in solidum* doctrine should not be adopted in our jurisdiction.

I agree with the majority Opinion as to the difficulties presented by a potential co-defendant being brought into a lawsuit years after it was filed, as a joint co-tortfeasor having caused the alleged damage, because the original lawsuit suspended the statutes of limitations for all co-tortfeasors. Nonetheless, the norm adopted in *Arroyo*

permitted us to adequately address this problem, as it did not absolutely impede the consideration, under the doctrine of negligence, of such extraordinary circumstances, such as those in the matter at hand, wherein a plaintiff sits with his or her arms crossed and is not diligent in finding out the identity of other possible co-tortfeasors **\*395** or, if having knowledge of them, bringing them into the lawsuit. To this end, there was no need to recur to the *in solidum* doctrine and divide the non-contractual joint and several liability between primary and secondary effects. What would have been appropriate would have been to rule out an inflexible application of the norms in *Arroyo* and temper them to address situations such as the one at bar without having to overturn twenty years of precedent and adopt a new interpretation of the Civil Code. The result in this case, without a doubt, would have been the dismissal of the complaint, not by application of the new doctrine, but rather because the plaintiffs incurred in negligence by sitting with their arms crossed and not amending the complaint once they were aware of the identity of the co-actors.

I am concerned that the new norm may cause more problems than it solves and may produce situations in which the victim shall be unnecessarily prejudiced. I think that the Court's Opinion partially acknowledges this reality and, therefore, finds itself obligated to establish numerous safeguards, thus creating an unnecessarily confusing and complicated scheme. According to *Arroyo*, our legal system gave priority to remedying the harm suffered by the victim, while protecting the defendants in the event of carelessness or lack of diligence on the part of the plaintiffs. Now, in order to protect potential co-defendants brought into lawsuits late, victims are deprived of one of the main tools for trying to obtain compensation for their damages: the simultaneous suspension of the statute of limitations for all joint co-tortfeasors, subject, of course, to basic rules of law, including diligence. I fear that this decision shall inevitably result in the eventual adoption of a norm of joint liability in cases of civil non-contractual liability, thus rendering ineffective almost a century of precedent of statutory interpretation which has not been modified by the Legislative Assembly.

I share many of the concerns of the majority Opinion. There is no doubt that an inflexible application of the *Arroyo* norm may produce situations that are patently unfair towards certain potential defendants who would then be subject to plaintiffs who sit with their arms crossed trusting that filing a complaint against a co-tortfeasor

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.

10

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365 (2012)

2012 TSPR 126

results in perpetual suspension of the statutes of limitations against the others. However, this can be addressed without touching the norms in force to date. That is why I respectfully differ from the solution adopted. **\*396**

--O--

Dissenting Opinion issued by Associate Justice Pabón Charneco, joined by Senior Associate Justice Rivera García and Senior Associate Justice Feliberti Cintrón.

I respectfully dissent from the majority Opinion. Same makes a normative change that is regressive in nature in the realm of non-contractual civil liability by *partially* adopting the doctrine of *in solidum* obligations. [1] Thus, the Opinion introduces a *tertium genus* between joint and joint and several obligations that our legal system does not recognize. [2] In turn, it simply dismisses the consolidated jurisprudence in order to limit the statute of limitations for co-tortfeasors who were not named in the original complaint.

Certainly, at times, the creditor of the damages omits to name one of the co-tortfeasors for a prolonged period of time, despite knowing their identity and, during the course of the litigation, amends the complaint to include such co-tortfeasor. This situation, which in principle conforms to the letter of the law, can be perceived as an abuse in the abnormal exercise of rights when it affects the defense of co-tortfeasors, as well as effective judicial economy. There is no doubt that our legal system provides the tools to deal with the difficulties to which this type of practice might bring about without the need to resort to a doctrine that does not fit within our system. **\*397**

Let us briefly examine the facts that gave rise to the present dispute.

**I**

On May 2, 2002, the appellees (consisting of Mr. Daniel Fraguada Bonilla, Mr. Héctor L. Fraguada Pérez, Ms. Ana Hilda Fraguada Pérez, Ms. María de los Ángeles Fraguada Pérez, Mr. Carlos Daniel Fraguada Pérez and Mr. Ángel G. Osorio Fraguada) filed a lawsuit for injury and damages against the Hospital Auxilio Mutuo, Dr. Manuel Anguita Alvarado, and two (2) other unknown physicians. In summary, the plaintiffs alleged negligence in rendering medical treatment to Ms. Hilda Pérez, who passed away on July 1, 2000. Moreover, the complaint made the caveat that "at the time of the filing of this complaint, not all of the details regarding same were known.

and same was being filed in order to suspend the statute of limitations." [3]

On October 25, 2006, the trial court entered a Partial Order for Amended Stipulation, approving the transaction and relieving the Hospital Auxilio Mutuo of liability. [4] The situation being thus, in April of 2008, the appellees requested authorization to amend the complaint and indicated that, as a result of their actions in the evidence discovery stage, they obtained information regarding two (2) other doctors who were negligent in rendering treatment to Ms. Pérez. On April 14, 2008, the appellees amended the complaint to include Dr. Octavio Mestre Morera (hereinafter, Dr. Mestre Morera, or petitioner), and Dr. Noel Totti as co-defendants.

On his behalf, Dr. Mestre Morera filed an Answer to the April 14, 2008 Complaint on February 10, 2009, raising the affirmative **\*398** defense that the statute of limitations had expired. Specifically, he stated that:

> The cause of action that the plaintiffs attempt to bring against him is proscribed. Our laws in force promote diligence in exercising rights and penalize negligence. The filing of the amended complaint in question to include him *six years* after the filing of the initial complaint denotes a gross lack of diligence on the part of the plaintiffs. (Emphasis in original) Appendix to the Petition for *certiorari*, p. 84.

On April 14, 2009, the Petitioner filed a Motion for Summary Judgment based on the Statute of Limitations. [5] In his motion he indicated that, based on a deposition of co-defendant María de los Ángeles Fraguada taken on June 11, 2005, that the appellees knew that Dr. Mestre Morera had intervened in Ms. Pérez's treatment. He added that, by that date, the appellees had an expert report in this regard. [6] Based on the foregoing, he moved for the dismissal of the cause of action due to lack of diligence on the part of the plaintiffs in exercising their action, as it had been three (3) years

Certified to be a correct and true translation from the source text in Spanish to the target language English.
30/JULY/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365 (2012)

2012 TSPR 126

that the plaintiffs had the necessary information. On the other hand, the apellees indicated that the filing of the initial complaint had suspended the statute of limitations as to the other co-tortfeasors and that these could be included in the lawsuit by way of an amended complaint, in accordance with the law in force. This motion was denied on July 9, 2009.

After the timely filing of a motion for reconsideration which was denied by the trial court, the petitioner filed for a writ of *certiorari* before the Court of Appeals. Same was denied. **\*399**

Unsatisfied, the appellant comes before us and points out the following error:

> The Court of Appeals erred in applying the doctrine of joint and several liability among alleged joint tortfeasors without taking into consideration the premise of negligence argued by the appearing party in support of the fact that the plaintiffs in this matter should not benefit from the liberal conditions of the statute of limitations, considering that the facts giving rise to the claim against him occurred eight years prior the filing of the amended complaint by which he was included in the litigation and that, according to the cognitive ftheory of damages, the plaintiffs had all of the elements necessary to bring a claim against Dr. Mestre Morera three years prior to the filing of the amended complaint[.] Writ for *certiorari*, p. 9.

## II A.

Non-contractual civil liability is essentially cemented in s Art. 1802 of the Civil Code, 31 L.P.R.A. § 5141. In its relevant part, this article states that "a person who by an act or omission causes damage to another through by fault or negligence, shall be obliged to repair the damage so done".

In turn, Art. 1868 of the Civil Code, 31 L.P.R.A. § 5298, provides for a statute of limitations of one (1) year for these actions. The statute of limitations begins to run when the party harmed discovers or can discover the harm done, the person causing it, as well as the necessary elements in order to effectively exercise his or her cause of action. [7] Art. 1869 of the **\*400** Civil Code, 31 L.P.R.A. § 5299. See also: *COSSEC et al. v. González López et al.*, 179 D.P.R. 793, 806 (2010); *Ojeda v. El Vocero de P.R.*, 137 D.P.R. 315, 325 (1994). This is because the passing of time leads to the loss of the exercise of rights in such a way as to avoid uncertainty in legal relationships and punish inaction on the part of the rightsholders in exercising their rights. *García Pérez v. Corp. Serv. Mujer*, 174 D.P.R. 138, 147 (2008). Therefore, it must be suspended in accordance with Art. 1873 of the Civil Code, 31 L.P.R.A. § 5303.

Despite these norms, new issues are constantly being presented requiring greater analysis and interpretation of same in order to respond to new situations that constantly arise in this area. A frequent situation involves a plurality of possible tortfeasors, for which no legal regime has been expressly established in our Civil Code. This, in turn, generates multiple substantive and procedural difficulties. Let us examine how we have addressed situations involving multiple parties liable for the damage.

### B.

Where there are multiple tortfeasors in cases involving damages by way of fault or negligence, there is no doubt that one is obliged to repair the harm caused. 🔖 *Cubano v. Jiménez et al.*, 32 D.P.R. 167 (1923). However, one of the difficulties we face due to the terse expressions of the Civil Code, though not posing an insurmountable obstacle, is whether the obligation to repair the damage among co-tortfeasors is joint or joint and several. Our Code, similar to the Spanish Code, does not expressly indicate this difference, as opposed to most foreign Civil Codes. [8] **\*401**

It is known that obligations involving a plurality of subjects can be *joint or joint and several*. In principle, Art. 1090 of the Civil Code, 31 L.P.R.A. § 3101, provides that, where there are two (2) or ore debtors, or two (2) or more creditors, joint and several liability is not presumed, but rather joint liability. In other words, the credit or debt is presumed divided in as many equal parts as there are creditors or debtors,

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*30/JULY/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

being considered credits or debts distinct from one another when the text of the obligation does not state otherwise. Art. 1091 of the Civil Code, 31 L.P.R.A. § 3102. This is due to the fact that the joint and several liability among debtors aggravates the burden that the debt represents insofar as it is possible that one of the debtors may satisfy its own debt and that of others in t event of insolvency of the co-obligees. Arroyo v. Hospital La Concepción, 130

D.P.R. 596, 602 (1992). As we shall explain below, we have already defined that Art. 1090 of the Civil Code, supra, applies only within the contractual realm; an interpretation that the majority opinion does not contradict either. [9]

On the other hand, a "joint and several obligation" is understood to be

> …that in which there are various joint creditors (active joint and several liability) or various debtors (passive joint and several liability), or various creditors, as well as various debtors (mixed joint and several liability) and in which each creditor has the right to demand, and each debtor has the duty or obligation to fully fulfill what is due. Arroyo v. Hospital La Concepción, supra, p. 600.

In cases where one jointly and severally liable debtor pays the totality of the debt, the obligation is extinguished, seeing as the creditor only has the right to receive compensation once. Nonetheless, the referenced debtor may be able to recover the excess amount paid from the others. Art. 1098 of the Civil Code, 31 L.P.R.A. § 3109. A contrario sensu, when the creditor is unable to recover *402 the debt completely by way of a claim filed against one (1) or multiple debtors, the creditor can subsequently address the remaining debtors. Art. 1097 of the Civil Code, 31 L.P.R.A.§ 3108.

With the passing of time and after careful analysis, we have developed a consolidated jurisprudence which requires that the legal framework for cases involving a plurality of tortfeasors causing an indivisible damage is joint and several liability. [10] Arroyo
v. Hospital La Concepción, supra, pp. 604–605. See also: García Pérez v. Corp. Serv. Mujer, supra; García v.

Gobierno de la Capital, 72 D.P.R. 138, 145 (1951).

Despite prior statements in Cubano v. Jiménez et al., supra, y García v. Gobierno de la Capital, supra, it was in Arroyo v. Hospital La Concepción, supra, that we clarified that the presumption of non-joint and several liability under Art. 1090, supra, does not apply in matters of non-contractual liability. This is because the reasoning for the applicability of this article in the contractual realm is different. In this respect, we indicated that "it is not the will of the parties that creates the obligation,

but rather it arises in a unilateral manner, in virtue of an act freely performed by a person in relation to another; and the law gives efficacy to and sanctions the natural obligation of repairing harm invoked." (Emphasis removed). Arroyo v. Hospital La Concepción, supra, p. 602, citing A. Borell Macía, Responsabilidades derivadas de culpa extracontractual civil [Liabilities derived from non-contractual civil fault], 2da ed., Barcelona, Ed. Bosch, 1958, p. 319. Moreover, in these cases, the obligation arises from Art. 1802 of the Civil Code, supra, itself, which requires the

obligee to repair the damage caused. [11] This is why we hae adopted the interpretation of the majority doctrine, *403

and at that time in Spanish case law, as far as legal joint and several liability exists under Art. 1802 when two (2) or more tortfeasors cause single and indivisible damage. See H.M. Brau, El término prescriptivo y su interrupción en acciones en daños por responsabilidad extracontractual solidaria en el derecho puertorriqueño [The Statute of Limitations and Its Suspension in Damages Cases Involving Joint and Several Tort Liability in Puerto Rican Law], 44 (No. 2) Rev. C. Abo. P.R. 203, 204–205 (1983). Thus, the guarantee to the aggrieved party is increased and protected more efficiently, in such a way that this party can receive the entire compensation in the event of insolvency of any of the tortfeasors. [12]

In accordance with these principles, we also established that such 'legal solidarity' has the same consequences as in the contractual realm. When joint and several liability is adopted between those who are jointly responsible for the same damage, it must be with all its effects, since different types of joint and several liability are not justified in our Civil Code. Arroyo v. Hospital La Concepción, supra, p. 606. See: J.J. Álvarez González, Responsabilidad civil extracontractual [Noncontractual Civil Liability], 78 (No. 2) Rev. Jur. U.P.R. 457, 504–505 (2009); L.F. Reglero Campos, La prescripción de la acción de reclamación de daños, en tratado de responsabilidad civil [Statute of Limitations on Claims for Damages, Treatise on Civil Liability], Ed. Aranzadi, 2008, T.I, p. 1280;
M. Albaladejo García, Interrupción o no de la prescripción frente a todos los deudores solidarios por reclamación a uno solo: comentario a la Sentencia del Tribunal Supremo de 14de marzo de 2003 [Suspension or Non-suspension of the Statute of Limitations as to All Other Joint Debtors by a Claim against a Single One: Remarks on the March 14, 2003 Order of the Supreme Court], Priv. L. Rev. 553 (2003); A. Cristóbal Montes, Mancomunidad o solidaridad en la responsabilidad plur por acto ilícito civil [Joint Liability or Joint and Several Liability in Cases with Plural Tortfeasors], Barcelona, Ed. Bosch, 1985, p. 42. As part of these effects, the suspension of the statute of limitations against one causes prejudice to the others in accordance with Art. 1874 of the Civil Code, 31 L.P.R.A. § 5304. Rivera Otero v. Casco Sales Co., 115 D.P.R. 662 (1984). Specifically, we ruled that [13] *404

> … the doctrine of joint and several liability [consecrated in García v. Gobierno de la Capital, supra,] permits bringing into a timely filed lawsuit a joint [co-tortfeasor] who was originally not included in the lawsuit …

WESTLAW  © 2021 Thomson Reuters. No claim to original U.S. Government Works.  13

Certified to be a correct and true translation from the source text in Spanish to the target language English.
30/JULY/2021 - Andrea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

by way of a third party complaint by the original defendant [or] by amendment of the complaint by the plaintiff…[I]t is only required to well and sufficiently allege in the complaint the fact that the new defendant, or third party defendant, as the case may be, is jointly and severally liable for the damages claimed with the original defendant, against whom the complaint *was filed* within the statute of limitations established by law (Brackets and emphasis in the original). *Arroyo v. Hospital La Concepción*, supra, pp. 607–608, citing H.M. Brau, *op. cit.*, p. 243. See also *García Pérez v. Corp. Serv. Mujer*, supra, p. 155.

In this regard, the majority Opinion reiterates that "the non-presumption of joint and several liability", does not apply in matters of non-contractual liability.[14] However, it eliminates the homogenous treatment of joint and several liability in accordance with the guidelines of the Civil Code itself, or at least partially by adopting this doctrine only in terms of the statute of limitations. Thus, it creates certain effects that were unknown until that time by our legal system and that should be adopted by the Legislative Assembly. To this end, it embraces the doctrine of *in solidum* obligations, as it explains, in order to "harmonize the norms governing situations with various tortfeasors with the cognitive theory of damages and with the substantive concept of the statute of limitations while also respecting the minimum level of certainty granted by the legislature for these types of relationships."[15] Therefore, let us examine what this doctrine holds.

C. Faced with the general rule that joint and several liability is not presumed, French doctrine has conveniently developed the doctrine of in solidum obligations. It attempts to justify the fact that each of those liable **\*405** is under the obligation to pay the entire debt without some of its effects, including the statute of limitations, the enforceability of the *res judicata* against other debtors and the appeal.[16] To this end, the opinion distinguishes between two (2) types of joint and several liability in the realm of passive joint and several liability: perfect and imperfect.

Our Civil Code does not contain these distinctions.[17]

In order to explain this distinction, the majority Opinion borrows the definition of obligations *in solidum* offered by José Ricardo León Alonso. "Joint and several liability is considered perfect when it is 'among various individuals joined by a common interest, that frequently interact or know each other,' " but it is "imperfect when it is established by law "between individuals who do not know each other, who are not accidental co-debtors or when their relationships are sporadic."[18]

See J.R. León Alonso, *La categoría de la obligación "in solidum"* [*In Solidum Obligations*], Sevilla, Pubs. de la Universidad de Sevilla, 1978, pp. 32–33, citing Mourlon, *Répétitions écrites sur le Code Civil* [*Written Restatements of the Civil Code*], Paris, T. III, 1896, no 1,260.

As Prof. Virginia Múrtula Lafuente clearly concludes, the doctrine of *in solidum* obligations

> …is based on the fact that certain cases involving a plurality of debtors, although each of them is fully liable, its liability is autonomous from that of the others, since the link from which it derives is an independent link, which arose on its own (part, therefore, of the principle of equivalence of **\*406** causes, all those who have participated in the harmful act must be considered the authors of the act). Unlike joint and several obligations, where each debtor owes the same remedy, in cases of in solidum obligations, identical remedies are owed. This is in an attempt to avoid certain consequences intrinsic to passive joint and several liability. Thus, the aggrieved party, in order to preserve its cause of action against each one of the co-authors, must suspend the statute of limitations in relation [to] each one of them; the order obtained as to one shall not be enforceable as to the others; and the appeal filed by one against a common order shall not benefit the others. However, the common effects of joint and several obligations are recognized: the creditor can claim compensation in full from any of the debtors and the payment made by one of them releases all. V. Múrtula Lafuente, *La responsabilidad civil por los daños causados por un miembro indeterminado de un grupo* [*Civil Liability for Damages Caused by an Undetermined Member of a Group*], Madrid, Ed. Dykinson, 2005, pp. 103–104.

This doctrine was accepted by Spanish jurisprudence. By way of March 14, 2003 Order, the Spanish Supreme Court examined the appeal filed. In that case, the plaintiff suffered a serious workplace accident while working at a construction site. The plaintiff filed a complaint for compensation for the harm suffered against the company for which he worked, the site developer, and the architect. Nonetheless, once the order was entered and, due to the insolvency of the defendants, the plaintiff filed a new lawsuit against the technical architect and two (2) insurance companies. The complaint was dismissed based on the statute of limitations. The Order indicated that:

> ... the doctrine has recognized alongside the "proper joint and several liability" ... another form of liability called "improper" or obligations "in solidum" that arise from the

© 2021 Thomson Reuters. No claim to original U.S. Government Works.                14

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*30/JULY/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

nature of the tort and the plurality of subjects involved in it, and which arises when it is not possible to individualize the respective liabilities. All of the rules provided for proper joint and several liability do not apply to this latter type of joint and several liability, and it is especially not appropriate to take into consideration the first paragraph of Art. 1974 of the Civil Code **\*407**

[Referring to the October 21, 2002, Order, the Opinion adds that] the source from which the joint and several liability arises is the judgment, and same is not previously in existence.[19] March 14, 2003 Order, No. 223/2003.

However, the doctrine continues to rule out obligations *in solidum*, since the legal system divides obligations with a plurality of subjects into joint and several, and in view of this establishes its legal framework. See: Múrtula Lafuente, *op. cit.*, p. 104; M. Martín-Casals y J. Solé, *Multiple Tortfeasors under Spanish Law*, en W.V.H. Rogers, *Unification of Tort Law: Multiple Tortfeasors*, The Hague, Ed. Kluwer Law International, 2004, p. 193.

### III

The fact that the doctrine of *in solidum* obligations has been adopted in Spain does not detract from the fact that our legal system only recognizes one type of joint and several liability. In light of the foregoing, the reasons why we interpret the obligations arising from the damage caused by a plurality of tortfeasors to be joint and several, with all the effects that joint and several liability entails, are still valid and correct. In essence, no distinctions that are not justified in the Civil Code can be introduced, the guarantee of the injured party is increased so that such party may receive full compensation for the damage incurred and in line with effective judicial economy. Similarly, by including through an amended lawsuit a co-defendant not originally brought to the lawsuit, the position of a joint and severally liable co-tortfeasor whose defense could be hindered by the passage of time is improved. However, this **\*408** does not eliminate a concern of considerable importance: is there no time limit for the creditor to include through an amended claim a co-author of the damage of whose identity the creditor is aware, as well as of all the elements necessary to be able to effectively exercise the cause of action?

It is certainly the creditor's prerogative to file a complaint against one or all of the co-tortfeasors whether according to our legal system in force or according to the proposed doctrine of *in solidum* obligations. Art. 1097 of the Civil Code, *supra*, states that

[t]he creditor's claim may be directed against any or all of the joint and several debtors simultaneously. Claims brought against one shall not preclude those subsequently directed against others, as long as the debt is not fully collected.

From this article the options for the creditor to direct his action are deduced: (1) against all the co-debtors; (2) against some of them; (3) against only one; or, (4) against one and then against others until the entire debt is collected, since only the payment of the debt in its entirety releases all the co-debtors. Art. 1098 of the Civil Code, *supra*. Moreover, we have acknowledged that the doctrine of joint and several liability also permits bringing a suit filed in due time against a co-tortfeasor who was not initially included by way of an amendment to the complaint. *Arroyo v. Hospital La Concepción*, supra, pp. 607–608. However, this right is not absolute or unlimited.

In this regard, Luis Puig y Ferriol illustrates the issue stating as follows:

[I]f it is thought that successive legal claims are possible in the Code system as long as the creditor's interest has not been fully satisfied, and without, on the other hand, requiring the creditor to notify the co-defendants of the various procedures it engages in, which could perhaps constitute a measure of sound prudence, in order to avoid unnecessary expenses. *In any case, some of* **\*409** *of these disadvantages can be averted by combining this "ius variandi" of the creditor ex article 1,144 C.c. with the principle of good faith (per Arts. 7–1 and 1.258 C.c.) and with the finding of the abuse of the right (art. 7–2 C.c.), 20 as would perhaps be the case in the case of successive litigations urged by the creditor with the sole purpose of accumulating judicial expenses or possible judgments in costs.*

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*30/JULY/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(Emphasis added). L. Puig y Ferriol, *Régimen jurídico de la solidaridad de deudores* [Legal Framework on Debtor Joint and Several Liability], in *Libro-homenaje a Ramón Ma. Roca Sastre*, Madrid, Gráficas Cóndor, 1976, Vol. II, p. 457.

Likewise, in Puerto Rico we have recognized the principle that rights must be exercise in good faith. *Soriano Tavárez v. Rivera Anaya*, 108 D.P.R. 663, 670 (1979). We have also indicated that the law does not protect the abuse of the law or its exercise against social norms. Id. That is to say, any right must be exercised in a reasonable manner without leading to the breakdown of the orderly social coexistence, either in its subjective aspect (by the exercise of the right with the intention of causing harm or without real interest) or objective (when the owner manifestly exceeds the limits imposed by good faith or by the social or economic purpose of that right). Id, pp. 670–671. See also: J. Roca, *Art. 7.2* in *Comentarios a las reformas of the Civil Code: el nuevo título preliminar y la Ley de 2 de mayo de 1975* [Remarks on the Reforms to the Civil Code: the New Preliminary Title and the Law of May 2, 1975], Madrid, Ed. Tecnos, Vol. I, p. 375. Furthermore, conduct in good faith is a general precept that encompasses all legal activity and extends to the entire legal system. *Velilla v. Pueblo Supermarkets,Inc.*, 111 D.P.R. 585 (1981). Therefore, **\*410** our legal system provides avenues for sanctioning diligence and avoiding excessive conduct. One of these is the principle of abuse of rights. [21]

The social and financial purpose of authorizing amendments to a complaint is to provide a greater guarantee so that the affected party may obtain full compensation for all of the damages caused, as well as promoting an efficient judicial economy. Nonetheless, the victim must exercise it in a reasonable and just manner, and not a careless one. Therefore, if it is believed that there was an abuse of rights by the judge, the adoption of judicial measures, such as the dismissal of the claim in respect to that co-defendant, must be allowed. [22] In such cases, the excess translates into affecting the balance between all of the interests involved and, in particular, the defendants' defense, as well as procedural economy; reasons why we have concluded that the legal framework of joint and several liability, along with all of its effects, applies in these types of cases. Therefore, the there is no such thing as the much-vailed "eternal right" that the majority opinion mentions. *A contrario sensu*, we can consider

something abusive when, after the complaint is filed, the creditor amends it to include a co-tortfeasor after an unreasonable period of time has passed since the creditor had knowledge of this tortfeasor's identity and other necessary elements. The exception is when the delay arises from actions or omissions attributable to the co-tortfeasor. In this respect, the Legislative Assembly has found the term of one year to be reasonable. However, **\*411** it is the responsibility of the co-debtor to raise a claim of such abuse of rights and point out the facts from which it is deduced.

In tone with the foregoing, the fact of a doctrine being consolidated does not preclude improvements being made to it or making it respond more efficiently to the challenges of a changing society. Our legal system provides the clarity and security necessary to address the consequences of an obligation arising from having multiple tortfeasors. Therefore, we do not have to resort to creations of other jurisdictions. Making distinctions that the Civil Code does not provide, such as acknowledging the existence of two (2) types of joint and several obligations (perfect and imperfect), in order to select between some effects and discard others, does nothing to contribute to the legal security of the parties. Therefore, we cannot rest on the idea that the harmony of the legal system is achieved through the partial introduction of a concept that is not recognized within it.

### IV

In the matter at bar, the appellee suspended the statute of limitations of one (1) year by way of judicial claim. At the same time, Plaintiffs made the caveat that, at the time, they did not know all the details related to the facts. Therefore, they also named two (2) unknown physicians. However, during the course of the proceedings, plaintiffs learned of the names of other doctors who intervened with Ms. Hilda Pérez, including Dr. Mestre Morera, and an expert report imputing faults in the diagnosis and treatment they provided. However, more than three (3) years have passed since the appellants became aware of all the elements and brought Dr. Mestre Morera into the lawsuit. On the other hand, the petitioner alleged and justified before the court of appeals the excess incurred by the appellees. In tune with the foregoing, the delay on the part of the **\*412** appellee is excessive and is not in accordance with the purposes of authorizing amendments to the Complaint. Nor can this delay be attributed to the petitioner's actions or omissions.

### V

Based on the foregoing arguments, I dissent from the majority Opinion. On the contrary, I would urge the victims of harm to file their action promptly against those who caused it once they know their identity, if it is in their interest to have greater guarantees of obtaining full compensation. Otherwise, they run the risk of their omission being considered an abusive attitude towards the tortfeasor.

---

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*30/JULY/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)
2012 TSPR 126

## Footnotes

1   The plaintiff relatives are: Mr. Daniel Fraguada Bonilla, Mr. Héctor L. Fraguada Pérez, Ms. Ana Hilda Fraguada Pérez, Ms. María de los Ángeles Fraguada Pérez, Mr. Carlos Daniel Fraguada Pérez, and Mr. Ángel G. Osorio Fraguada.

2   It is necessary to clarify that, in the matter at bar, Rule 15.4 of Civil Procedure of 1979 (32 L.P.R.A. Ap. III) on unknown defendants, does not apply. As it is known, the mere fact of including the mention of a fictitious name for a defendant in a complaint does not mean that this rule automatically applies. This rule requires that the specific claim be set forth and that the identity of the defendant be known.
Upon reviewing the allegation included in the complaint, we realized that it is extremely succinct; a claim was not specifically set forth as required by Rule 15.4, *supra*. We are facing a situation involving an unknown defendant, so the aforementioned rule does not apply. Even in the event that we were faced with a case of an unknown defendant, the plaintiffs failed to comply with the requirement of Rule 15.4, *supra*, and make the appropriate amendment promptly upon discovery of the true name.

3   A settlement agreement was concluded on May 18, 2006. The plaintiffs agreed to dismiss their claim against the Hospital Auxilio Mutuo and the latter agreed to pay them $70,000. On October 25, 2006 the Trial Court issued a partial order disposing of the matter per the settlement agreement reached between the parties.

4   In this application, the plaintiff alleged that, in the course of discovery, it was revealed that the above-mentioned doctors had been negligent in the medical treatment provided to Ms. Pérez.
The motion to amend the complaint filed in 2008 did not seek to substitute or indicate the names of the unknown defendants, but rather to name new defendants to the lawsuit. Moreover, the 2008 amended complaint still included the allegation of liability of defendants John Doe y Richard Roe which had been included in the initial complaint.

5   The allegation regarding the plaintiff's knowledge of the identity of the defendant doctors is based on a deposition taken of the co-plaintiff, Ms. María de los Ángeles Fraguada Pérez, on July 11, 2005. Appendix, p. 101. In this deposition, Ms. Fraguada Pérez, daughter of Ms. Pérez, provided a detailed chronological narrative of what occurred, according to her perception. Specifically, she testified that on the date of the alleged acts, Drs. Mestre Morera and Totti arrived at Ms. Pérez's room after she had asked the nurse to get a doctor, because her mother began coughing after she was administered a liquid through the nasogastric tube in order to perform a test. The co-plaintiff stated that she heard Drs. Mestre Morera and Totti ordering an alternative withdrawal of the tube, because it was in the lung and could cause an embolism. Id. Moreover, Dr. Mestre Morera noted that, regardless, since January 12, 2005, the plaintiffs had an expert report imputing deviations of the nasogastric tube. He argued that, if the date of the deposition were taken as the moment when the plaintiffs acquired knowledge of the elements in order to exercise their cause of action, that would still be three years after that point in time until the claim was finally brought.

6   In this opposition to the motion for summary judgment, the plaintiffs claimed that an alleged argument took place between Drs. Mestre Morera and Totti *in the presence of the family members*.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*30/JULY/2021 - Andrea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365 (2012)

2012 TSPR 126

7  As to the statute of limitations, Art. 1094, 1868, and 1874 of the Civil Code, 31 L.P.R.A.§§ 3105, 5298 y 5304, are also relevant.

8  Nor was the Commonwealth of Puerto Rico included as an alleged joint tortfeasor.

9  On that occasion, the Commonwealth was also incorporated as a co-defendant.

10  Art. 1874 of our Civil Code provides, in its relevant part, that in its relevant part, that "[t]he suspension of the statute of limitations for actions in joint and several obligations equally takes advantage of or causes prejudice to all creditors or debtors." 31 L.P.R.A. § 5304.

11  Some treatise writers have attributed the creation of *in solidum* obligations to French doctrine. J.R. León Alonso, *La categoría de la obligación "in solidum"* [*In Solidum Obligations*] Sevilla, Pubs. de la Universidad de Sevilla, 1978, p. 32.

12  Art. 1.137 of the Spanish Code, identical to our Art. 1090, *supra*, sets forth as follows:

"The concurrence of two or more creditors or of two or more debtors in a single obligation does not imply that each of them has the right to demand, nor does each of them have to fulfill in full the things that are the subject of the obligation."

13  We further reiterate that the provisions of Art. 1090 of the Civil Code, 31 L.P.R.A. § 3101, with regard to the non-presumption of joint and several liability, does not apply in matters of non-contractual liability. Likewise, we emphasize that we do not adopt the norm of in solidum obligations in its entirety, but only with respect to the suspension of the statute of limitation when several co-tortfeasors coincide under Article 1802 of the Civil Code, 31 L.P.R.A. § 5141.

14  Improper joint and several liability does not admit automatic and indefinite suspension of the statute of limitations in prejudice of other co-tortfeasors which, by their own fault, have an obligation to the aggrieved party. The liability of each of them is autonomous from that of the others, therefore, a plurality of independent ties arises. This plurality requires that the statute of limitations against each debtor be suspended individually, since imperfect joint and several liability does not arise from a pre-existing tie, but from the wrongful act producing the damage as recognized by the judgment declaring it so.

15  In Puerto Rico, just as it occurred in Spain, concerns have been raised regarding the adoption of this norm. The concerns mainly revolve around the fact that a solid precedent exists and the possible effect that this change in norms would have on legal certainty. Similarly, it has been pointed out that its adoption goes against the purpose of the application of joint and several liability in non-contractual liability cases. See J.J. Álvarez González, *Responsabilidad civil extracontractual* [*Non-contractual Civil Liability*] 78 (No. 2) Rev. Jur. U.P.R. 457 (2009). We differ from such an interpretation. As we pointed out, the fair balance that was sought to be achieved with the application of joint and several liability in actions for tort damages, actually resulted in greater protection for the plaintiff, indefinite deferrals of causes of action, among other effects that undermined legal stability. The norm that we adopted herein regarding the interruption of the prescriptive term when several co-tortfeasors coincide under Article 1802 of the Civil Code, supra, achieves a fair balance between the parties and harmonizes our legal system. Nor does it represent a greater burden on plaintiffs, who must only diligently exercise their cause of action against all possible co-tortfeasors of whose identity they have knowledge. That is to say, it is in total harmony with the cognitive theory of damages. Another concern expressed revolved around the fact that the rule we adopted today was contrary to Rule 51.7 of Civil Procedure of 1979 (32 L.P.R.A. Ap. III). The aforementioned rule was removed from the 2009 Rules of Civil Procedure precisely because it was "contrary to the legal system, as it would allow a judgment to be enforced against a person who was not a party to the lawsuit and over whom the court did not acquire jurisdiction." Informe de Reglas de Procedimiento Civil [Report on Civil Procedure], Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial y Notarial, March 2008, p. 583. We therefore believe that the need for a change in the rule surpasses the concerns expressed.

16  It should also be noted that plaintiffs had an expert report advising them of deviations in the placement of the nasogastric tube since 2005. Despite this, they did not file a claim against Mestre Morera until three years after they obtained the referenced report.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*30/JULY/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365 (2012)
2012 TSPR 126

1   The majority opinion adopts the doctrine of *in solidum* obligations  "only with respect to the suspension of the statute of limitations when several co-tortfeasors coincide under Art. 1802 of the Civil Code, 31 L.P.R.A. § 5141". Majority Opinion, p. 389 para. 13.

2   V. Múrtula Lafuente, *La responsabilidad civil por los daños causados por un miembro indeterminado de un grupo* [*Civil Liability for Damages Caused by an Undetermined Member of a Group*], Madrid, Ed. Dykinson, 2005, pp. 103–104; A. Cristóbal Montes, Mancomunidad o solidaridad en la responsabilidad plural por acto ilícito civil [Joint Liability or Joint and Several Liability in Tort Cases], Barcelona, Ed. Bosch, 1985, p. 41.

3   Appendix to the Writ of *certiorari*, p. 50.

4   Id., p. 64.

5   Id., pp. 85–94.

6   Id., pp. 99–101.

7   ""It is not necessary for the aggrieved party to know at that time the full magnitude and extent of the harmful consequences of bodily injury, since such extent can be determined at a later time ...". *Vera v. Dr. Bravo*, 161 D.P.R. 308, 330 (2004).  However,  since the extinguishing statute of limitations punishes the party's indolence, if the lack of knowledge is due to the complainant's lack of diligence, then the considerations as to the statute of limitations do not apply. *COSSEC et al. v. González López et al.*, 179 D.P.R. 793, 806 (2010).

8   For a succinct account, see: J. Santos Briz, *La responsabilidad por hecho de otro derivada de acto ilícito no penal*, en *Tratado de responsabilidad civil* [Treatise on Civil Liability](I. Sierra Gil de la Cuesta, cord.), Barcelona, Ed. Bosch, 2008, T. II, p. 670; J.J. Álvarez González, Responsabilidad civil extracontractual [Non-contractual Civil Liability], 78 (No. 2) L. Rev.U.P.R. 457, 478 (2009).

9   Majority Opinion, p. 389 para. 13.

10   This jurisprudence is also supported by the prevailing doctrine. M. Martín-Casals y J. Solé, *Multiple Tortfeasors under Spanish Law* en W.V.H. Rogers, *Unification of Tort Law: Multiple Tortfeasors*, The Hague, Ed. Kluwer Law International, 2004, p. 189.

11   "The legal norms governing joint and several liability must, of course, be subject to interpretation." L. Díez-Picazo, *Fundamentos del Derecho Civil patrimonial* [*Foundations of Civil Estate Law*], 6th ed., Madrid, Ed. Thompson, 2008, Vol. II, p. 200.

12   In this regard, we have  recognized the doctrinal debate. *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596 (1992).

13   This is after examining the French, German, Italian and Spanish doctrines regarding the statute of limitations in these cases.

14   Majority Opinion, p. 389 para. 13.

15   Majority Opinion, p. 391.

16   Álvarez González, *supra*, pp. 478 and 504 para. 206.

17   As José Ricardo León Alonso, one of the defenders of the doctrine of *in solidum* obligations, acknowledges:
"[i]n our law … *in solidum* obligations, have neither a doctrinal basis on which to settle, nor a specific norm from which to start; therefore, it will be helpful to study successively the possible location of *in solidum* obligations in the articles or in the spirit of our Civil Code, the terminological demarcation of particularly related concepts and, of course, the journey through the dark doctrinal panorama." J.R. León Alonso, *La categoría de la obligación "in solidum"* [*In Solidum Obligations*], Sevilla, Pubs. de la Universidad de Sevilla, 1978, p. 27.

18   Majority Opinion, p. 380.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*30/JULY/2021 - Andrea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 D.P.R. 365 (2012)

2012 TSPR 126

19    In this regard, the majority opinion accepts that "imperfect joint and several liability does not arise from a pre-existing conneciton, but from the unlawful act that caused the damage as recognized by the judgment declaring it so." Majority Opinion, p. 389 para. 14. This position is highly criticized. See M. Albaladejo García, *Interrupcióno no de la prescripción frente a todos los deudores solidarios por reclamación a uno solo: comentario a la Sentencia del Tribunal Supremo de 14 de marzo de 2003* [*Suspension or Non-suspension of the Statute of Limitations as to All Other Joint Debtors by a Claim against a Single One: Remarks on the March 14, 2003 Order of the Supreme Court*], Priv. L. Rev. 543, 554 (2003).

20    After considering the doctrine and the application of the case law, the Spanish legislators incorporated the abuse of rights into the Civil Code through a reform of the preliminary title of 1973–1974. Section 2 of Art. 7 of the Spanish Civil Code indicates as follows:
"1. Rights must be exercised in accordance with the demnds of good faith.
"2. The law does not protect the abuse of rights or the exercise of same against societal norms. Any act or omission which, by the intention of its author, its object or the circumstances in which it is carried out, manifestly exceeds the normal limits of the exercise of a right, causing harm to a third party, shall give rise to the corresponding compensation and to the adoption of judicial or administrative measures that prevent the persistence of the abuse." *Civil Code*, 8th ed., Madrid, Ed. Civitas, 1984, Art. 7, p. 54.
In Puerto Rico, we do not have an identical provision in the Civil Code.

21    Likewise, we have also acknowledged the Doctrine of Negligence in dismissing actions in which carelessness or negligence is shown in claiming a right. For this, the mere passage of time is not sufficient, but other circumstances must be assessed, including the justification for the delay, the damage it entails and the effect on the interests involved.. See: *Rivera v. Depto. de Servicios Sociales*, 132 D.P.R. 240 (1992); *Aponte v. Srio. de Hacienda, E.L.A.*, 125 D.P.R. 610 (1990). However, we consider the protection provided by the principle of abuse of rights and which is part of the civil tradition to be sufficient.

22    Nonetheless, we have pointed out that the ethical content of each act must be evaluated in light of its specific circumstances. *Velilla v. Pueblo Supermarkets, Inc.*, 111 D.P.R. 585 (1981). See also:
C. Lasarte Álvarez, *Principios de Derecho Civil* [*Principles of Civil Law*], Madrid, Ed. Trivium, 1992, T. 1, p. 171.

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*30/JULY/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*



W TargemTranslations.com
E projects@targemtranslations.com
A 185 Clymer St. Brooklyn, NY 11211

**TRANSLATOR'S CERTIFICATE OF TRANSLATION**

Translation from: Spanish (Puerto Rico) into English (US)
TARGEM Translations Inc.

I, Andreea I. Boscor, ATA-certified Spanish-English #525556, acting as translator at TARGEM Translations Inc., a NEW YORK City corporation, with its principal office at 185 Clymer Street, Brooklyn, NY, 11211, USA, certify that:

the English translated document is a true and accurate translation of the original Spanish and has been translated to the best of my knowledge.

Original Document Name: **Fraguada Bonilla v Hosp Aux Mutuo**

Signed this 30th day of July, 2021



Verify at www.atanet.org/verify



_____
Andreea I. Boscor

