# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |
| AMERINATIONAL COMMUNITY SERVICES, LLC, as Servicer for the GDB Debt Recovery Authority and CANTOR-KATZ COLLATERAL MONITOR LLC,<br>    Plaintiffs,<br>    -v-<br>AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY, PEAJE INVESTMENTS | Adv. Proc. No. 21-00068-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| |
|---|
| LLC, and THE BANK OF NEW YORK MELLON, as Fiscal Agent,<br>                        Defendants. |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO as representative of THE COMMONWEALTH OF PUERTO RICO,<br>                        Movants,<br><br>v.<br><br>AMERINATIONAL COMMUNITY SERVICES, LLC, as Servicer for the GDB Debt Recovery Authority and CANTOR-KATZ COLLATERAL MONITOR LLC,<br>                        Respondents. |

**REPLY IN SUPPORT OF URGENT MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR LEAVE TO INTERVENE AS DEFENDANT, ON BEHALF OF COMMONWEALTH AND HTA, IN DRA ADVERSARY PROCEEDING WITH RESPECT TO COUNTS I, II, AND <u>IV OF COMPLAINT, WITH FULL PARTY RIGHTS</u>**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 5

    I.    THE DRA PARTIES' IMPROPER ATTEMPT TO DENY THE CONTENTS OF THEIR COMPLAINT DOES NOT DIMINISH THE OVERSIGHT BOARD'S ABSOLUTE ENTITLEMENT TO INTERVENE AS A MATTER OF RIGHT, WITH FULL PARTY RIGHTS AND WITHOUT LIMITATION ............................................................. 5

    II.    THE OVERSIGHT BOARD HAS FULLY DISCLOSED THE SCOPE OF THE PROPOSED INTERVENTION ................................................................ 9

    III.    THE LIMITATIONS ON INTERVENTION URGED BY THE DRA PARTIES ARE WHOLLY INAPPROPRIATE, INCONSISTENT WITH THE OVERSIGHT BOARD'S FULL INTERVENTION RIGHTS AND SHOULD BE REJECTED ...................................................................................... 10

CONCLUSION ............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.)*,
   285 B.R. 848 (Bankr. S.D.N.Y. 2002) ................................................................................. 7

*Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight
   & Mgmt. Bd. for P.R.)*,
   872 F.3d 57 (1st Cir. 2017) ................................................................................................ 3, 4

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
   440 F.3d 541 (1st Cir. 2006) .................................................................................................. 8

*Delgado-Caraballo v. Hosp. Pavia Hato Rey, Inc.*,
   889 F.3d 30 (1st Cir. 2018) .................................................................................................... 8

*Ford Motor Co. v. Transp. Indem. Co.*,
   45 B.R. 843 (E.D. Mich. 1984) ............................................................................................. 8

*Golden v. Stein*,
   No. 4:18-cv-331, 2021 WL 3087861 (S.D. Iowa Feb. 3, 2021) ............................................ 3

*In re Best Payphones, Inc.*,
   523 B.R. 54 (Bankr. S.D.N.Y. 2015) ..................................................................................... 8

*In re DVR, LLC*,
   582 B.R. 507 (Bankr. D. Colo. 2018), *aff'd*, 606 B.R. 80 (D. Colo. 2019) ........................... 9

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   478 F. Supp. 3d 190 (D.P.R. 2020) ....................................................................................... 3

*In re Presque Isle Apartments, L.P.*,
   118 B.R. 331 (Bankr. W.D. Pa. 1990) .................................................................................. 8

*In re Wash. Mfg. Co.*,
   118 B.R. 555 (Bankr. M.D. Tenn. 1990) .............................................................................. 8

*In re Werth*,
   29 B.R 220 (Bankr. D. Col. 1983) ........................................................................................ 8

*RWNIH-DL 122nd Street 1 LLC v. Futterman (In re Futterman)*,
   No. 17-01223, 2019 WL 2553614 (Bankr. S.D.N.Y June 20, 2019) .................................... 9

*Williams v. Bankhead*,
   86 U.S. 563 (1873) ............................................................................................................ 6, 7

**STATUTES & RULES**

19 L.P.R.A. § 2233(b)(2) ........................................................................................................4

11 U.S.C. § 1109 ................................................................................................................1, 7

Fed. R. Civ. P. 12(b)(7) ......................................................................................................5, 7

Fed. R. Civ. P. 19(a)(1) ..........................................................................................................7

Fed. R. Civ. P. 24(a) ..........................................................................................................1, 7

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of Debtors the Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways and Transportation Authority ("HTA"), pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submits this reply (i) in support of the *Urgent Motion of Financial Oversight and Management Board for Leave to Intervene as Defendant, on Behalf of Commonwealth and HTA, in DRA Adversary Proceeding With Respect to Counts I, II, and IV of Complaint, with Full Party Rights* [ECF No. 26] (the "Urgent Motion") and (ii) in response to the *Opposition to Urgent Motion of Financial Oversight and Management Board for Leave to Intervene as Defendant, on Behalf of Commonwealth and HTA, in DRA Adversary Proceeding with Respect to Counts I, II, and IV of Complaint, with Full Party Rights* [ECF No. 30] (the "Opposition").[1]

**PRELIMINARY STATEMENT**

1. The DRA Parties agree the Oversight Board has a right to intervene in Counts I, II and IV of the Complaint pursuant to 11 U.S.C. § 1109 and Fed. R. Civ. P. 24(a). *Joint Status Report* [ECF No. 24] at ¶¶ 5, 11. The Opposition also does not contest the Oversight Board is an indispensable party to those counts. *See* Urgent Motion at ¶¶ 3, 5, 6, 17. Further, the DRA Parties consent not only to the Oversight Board's intervention in Counts I, II and IV, but also to the Oversight Board filing a motion to dismiss those counts or other dispositive motion. Joint Status Report at ¶¶ 6, 8. In this regard, consistent with the Parties' agreed briefing schedule, the Court set an August 26, 2021 deadline for the Oversight Board to file its motion to dismiss or other dispositive motion with respect to Counts I, II and IV—and has directed the Oversight Board to

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Urgent Motion.

respond as if it were a defendant. *See Order on Joint Status Report* [ECF No. 25] at ¶¶ 3a and 5. When coupled with the fact that the Complaint plainly and expressly requests judgments on the DRA Parties' claims they contend are secured by the debtors' property and would have a material impact on the HTA and Commonwealth restructuring, the right to full intervention as a party is unassailable.

2.  In the face of these overwhelming reasons supporting the Oversight Board's right to intervene fully as a defendant, and without engaging with any of them, the Opposition instead attempts to severely limit the scope of the Oversight Board's intervention in Counts I, II and IV by refusing to admit the relief the DRA Parties' Complaint seeks. It is clear, however, the DRA Parties fully understood their Complaint requests allowances of their claims against debtors, as, without citing any authority, they wrongly contend the debtors waived their rights to object to the DRA Parties' claims. *See* Opposition at 7. The DRA Parties' arguments are factually untrue and without legal support, and should be rejected.

3.  The DRA Parties claim their Complaint is a mere "priority dispute" between them and other HTA bondholders, arguing "none of [their] claims are directed at the Government Parties" (Opposition at 10), but allegedly only seek to determine the respective priority rights of the HTA bondholders and the DRA Parties. The DRA Parties' contentions contradict their own Complaint. It alleges a right to payment from HTA or a security interest in Commonwealth property (Complaint at ¶¶ 103-15, 141-45), without HTA or the Commonwealth being a full party on those issues. In the DRA Parties' own words, this lawsuit "involves disputes over property of the Commonwealth and/or HTA." Complaint at ¶ 14. The only count in the entire Complaint that seeks to determine the respective priority rights of the DRA Parties and the HTA bondholders is

Count III—a count in which the Oversight Board has not moved at this time for leave to intervene.² The DRA Parties' own admissions, and the fact they do not (and cannot) dispute the Oversight Board (as the Commonwealth's and HTA's sole Title III representative) is an indispensable party when debtor property is in dispute, mandate full party intervention by the Oversight Board as to Counts I, II and IV. Counts I, II and IV directly impact the DRA Parties' claims against the Commonwealth and HTA property, the Commonwealth's proposed plan of adjustment and settlements reached between the Oversight Board and other HTA bondholders—all of which require the Oversight Board's full participation.

4. Also untrue is the DRA Parties' second argument: that the Oversight Board purportedly has not disclosed the scope of its requested intervention. The Oversight Board has consistently stated, in the meet and confer process, the Joint Status Report and the Urgent Motion, it seeks to intervene as a defendant in Counts I, II and IV with full party rights, and will move to dismiss those counts on several grounds (that will be addressed yet again during the required pre-motion meet and confer process).³

5. Specifically, and for the avoidance of doubt, the Oversight Board will move to dismiss Count I because, among other reasons, the excise tax revenues retained by the Commonwealth (including Act 30 and 31 revenues) are not subject to a security interest claimed by the DRA Parties. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 478 F. Supp. 3d 190, 195-96 (D.P.R. 2020).⁴ Count I also should be dismissed because PROMESA preempts the statutes under

---

² The Oversight Board reserved its rights regarding intervention concerning Count III.

³ As discussed in the Urgent Motion (at n.5), intervention may be granted even when no pleading is attached. *See Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 872 F.3d 57, 65 (1st Cir. 2017); *Golden v. Stein*, No. 4:18-cv-331, 2021 WL 3087861, at *3-4 (S.D. Iowa Feb. 3, 2021).

⁴ Indeed, as this Court held, unless and until such revenues are transferred to HTA, HTA has no property interest in them. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 478 F. Supp. 3d at 195-96. The Court's ruling on this issue, while preliminary, applies equally to the DRA Parties. *See Joint Stipulation Regarding (I) The DRA Parties' Motion and Memorandum of Law in Support of Their Motion for Relief from the Automatic Stay, or in the Alternative, Ordering*

3

which the DRA Parties assert their claim. Counts II and IV should likewise be dismissed because, among other reasons, the DRA Parties are without standing to bring an action seeking to litigate other creditors' alleged rights against the Commonwealth or HTA, without leave of court, and especially when the very claims the DRA Parties seek to litigate are the subject of a settlement that forms an integral part of the Seventh Amended Plan scheduled for a confirmation hearing in November. None of this is news to the DRA Parties. However, none of those issues need to be adjudicated in connection with this Urgent Motion. It is enough to note that the Oversight Board has the undisputed right—indeed, the obligation—to participate fully in the counts for which intervention is sought to defend against the claims asserted against the debtors and their property, which the Complaint asserts.

6. Finally, the proposed limitations the DRA Parties seek to impose on the Oversight Board's intervention are so unjustifiably draconian they refute themselves. As the First Circuit has held, the scope of intervention is dependent on the particular facts and circumstances presented. *See Assured Guar. Corp.*, 872 F.3d at 64 (allowing for broad discretion regarding the scope of intervention). Here, where the Complaint is a ploy to bypass the claim objection process, the debtors' intervention should put the debtors in the same position they would have if they objected to the DRA Parties' claims. Otherwise, the debtors can simply file claim objections against the DRA Parties' claims. Thus, the circumstances here unequivocally demonstrate interests in at least hundreds of millions of dollars of Commonwealth and HTA property hang in the balance in this litigation. The Oversight Board, as the sole Title III representative of the Commonwealth and

---

*Payment of Adequate Protection [ECF No. 7643]; and (II) The DRA Parties' Motion and Memorandum of Law in Support of Their Notice That the DRA is a Party in Interest and can Participate in the Monolines' Amended Lift Stay Litigation [ECF No. 10835]* [ECF No. 11285 in Case No. 17-03283-LTS] and the Order thereon [ECF No. 12005]. As a matter of law, HTA cannot grant a security interest in collateral in which it has no rights. *See* 19 L.P.R.A. § 2233(b)(2) (a security interest is enforceable against a debtor and third parties only if "the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party . . .").

4

HTA, is not tangential to this fight or merely "interested" in what may happen. The Oversight Board is essential, and indispensable, to these counts—and, as a result, should be joined as a full defendant with unlimited intervention rights. Rule 12(b)(7) of the Federal Rules of Civil Procedure, which requires the dismissal of adversary proceedings where the plaintiff has failed to join indispensable parties (such as, here, the Oversight Board), demands no less.

## ARGUMENT

**I.     THE DRA PARTIES' IMPROPER ATTEMPT TO DENY THE CONTENTS OF THEIR COMPLAINT DOES NOT DIMINISH THE OVERSIGHT BOARD'S ABSOLUTE ENTITLEMENT TO INTERVENE AS A MATTER OF RIGHT, WITH FULL PARTY RIGHTS AND WITHOUT LIMITATION**

7.     The DRA Parties allege the Complaint "involves disputes over property of the Commonwealth and/or HTA." Complaint at ¶ 14. Counts I, II and IV assert a variety of claims, including that: (i) the DRA Parties have a perfected security interest in revenues retained by the Commonwealth (Count I); (ii) the security interest held by HTA bondholders is limited to revenues deposited by HTA in specified accounts, and does not include Act 30-31 revenues claimed by the DRA Parties as security (Count II); and, (iii) the DRA Parties have a recourse claim against HTA (Count IV). *See, e.g.*, Complaint at ¶¶ 2, 14, 23 and 51.

8.     The DRA Parties pretend these allegations and claims do not exist, and attempt to recast the Complaint as a mere "priority dispute" between creditors or a simple "intercreditor dispute." *See, e.g.*, Opposition at 6 (describing the Complaint as "nothing more than an intercreditor dispute"); *id*. at 7 ("The purpose of this complaint is to resolve [a] priority dispute . . . ."); *id*. ("[T]he instant action is an intercreditor dispute . . . ."). The juxtaposition between such characterizations versus what the DRA Parties actually pled in their Complaint is striking:

- "[T]his adversary proceeding . . . relates to the Commonwealth's underlying Title III case, and involves disputes over property of the Commonwealth and/or HTA." (Complaint at ¶ 14).

5

- "The DRA Parties are pursuing this Adversary Complaint to protect the rights and recoveries of the DRA bondholders under the Loan Claims . . . ." (Complaint at ¶ 23).

- The DRA Parties claim a security interest in "all of the right, title and interest of [HTA] in the [Act 30-31 Revenues], whether presently held or hereafter acquired and wherever located." (Complaint at ¶ 51).

- The DRA Parties "respectfully submit this Adversary Complaint for declaratory judgment seeking as a decree as to the validity . . . of the DRA . . . liens, security interests, rights and claims against [HTA]." (Complaint at 2).

9. Count III is the only count of the Complaint that addresses the priority dispute between the DRA Parties and HTA bondholders. And, as the DRA Parties know, the Oversight Board has not moved at this time for leave to intervene in Count III.

10. It is axiomatic that determinations concerning the existence and scope of claims, liens and any right to Commonwealth and HTA property must involve full participation by the debtors against whom the claims are asserted, the Commonwealth and HTA. *Williams v. Bankhead*, 86 U.S. 563, 570-71 (1873) (property owner is an indispensable party in an action determining property's ownership). This is certainly not a mere intercreditor priority dispute. Count I seeks a declaration concerning the DRA Parties' alleged interest in Commonwealth revenues. *See* Complaint at ¶¶ 103-15. Count IV seeks a declaration that the DRA Parties' claims against HTA are "payable and have a right to collect from" revenues not deposited by HTA in certain accounts and the DRA Parties hold a general recourse claim against HTA. *Id*. at ¶¶ 141-45. And, Count II seeks to force litigation concerning the scope of the security interest held by HTA bondholders (*see* Complaint at ¶¶ 116-29)—an issue settled by the Seventh Amended Plan and need not (and should not) be decided in this proceeding. Those counts do not even mention a "priority dispute" between creditors, nor are they claims where the owners of the property (the Commonwealth) or the alleged obligor (HTA) are mere bystanders.

11. The DRA Parties agree the Oversight Board has a right to intervene under 11 U.S.C. § 1109 and Fed. R. Civ. P. 24(a). Joint Status Report at ¶¶ 5, 11. The Opposition does not mention, much less challenge, the case law cited in the Urgent Motion establishing the Oversight Board is an indispensable party. *See, e.g., Williams*, 86 U.S. at 570-71. Instead, the entire Opposition is premised on the false construct that the First Circuit's *Assured* opinion requires the Court to impose limitations on all interventions. The First Circuit held no such thing. *Assured* simply held the scope of intervention is left to the Court's broad discretion—not that any particular limitation was required. The only other case the DRA Parties cite for the proposition that intervention should be restricted—*Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.)*, 285 B.R. 848 (Bankr. S.D.N.Y. 2002)—involved a request for intervention by committees, not the debtor. Not coincidentally, the *Adelphia* court noted the *debtor* in that case actually "owned" the causes of action at issue. *Id*. at 856. In short, *Assured* and *Adelphia* both confirm there is no mandate that intervention must be limited in some way. Indeed, this Court has granted full intervention rights in adversary proceedings with even less compelling facts. *See also* Case No. 19-405-LTS, ECF No. 30 at 9-10 (order permitting various bondholders to intervene in adversary proceeding with "full participation rights" where they had "significant economic interests at stake," even though a representative of the bondholders had already been named as a defendant). Full intervention is particularly important here, given that in substance the counts of the Complaint at issue here are simply requests for allowance of claims. The Oversight Board must be joined as a full party to avoid the necessity of dismissing the Adversary Proceeding pursuant to Rule 12(b)(7).[5]

---

[5] Once a court determines that an individual or entity qualifies as a "required party," such an individual or entity must be joined "as a party." *See* Fed. R. Civ. P. 19(a)(1) (indicating that once a party is determined to be a "required party" it must be joined "as a party") (emphasis added); *see also* Fed. R. Civ. P. 19 Advisory Committee Notes ("If a person as described in subdivision (a)(1)(2) is amenable to service of process and his joinder would not deprive the court of jurisdiction in the sense of competence over the action, he should be joined as a party; and if he has not been joined, the court should order him to be brought into the action."); *see also Delgado-Caraballo v. Hosp. Pavia Hato Rey, Inc.*, 889 F.3d 30, 37 (1st Cir. 2018) ("And if the judge identifies such [required] parties, he then looks to Rule 19(a)(2)—

7

12. The DRA Parties clearly know their Complaint is for the allowance of claims. They wrongly contend the debtors can no longer object to their claims because it objected to other claims earlier and did not include the DRA Parties' claims. *See* Opposition at 7. The law is clear that a debtor or the debtor's trustee (here the Oversight Board under PROMESA) does not have a deadline to object and therefore cannot have "waived" the right to do so. *See, e.g.*, *In re Best Payphones, Inc.*, 523 B.R. 54, 68 (Bankr. S.D.N.Y. 2015) (stating "bankruptcy law does not impose a statute of limitations on claims objections" and collecting cases*)*; *In re Presque Isle Apartments, L.P.*, 118 B.R. 331, 332 (Bankr. W.D. Pa. 1990) ("Bankruptcy Rule 3007 governs objections to claims. Rule 3007 provides no time limits for filing objections to claims. An objection against a claim in bankruptcy may be lodged at any time during the pendency of the case."); *In re Wash. Mfg. Co.*, 118 B.R. 555, 559 (Bankr. M.D. Tenn. 1990) ("a case trustee may object to a proof of claim at any time before the case is closed, assuming that the court has not set a prior bar date for objections."); *Ford Motor Co. v. Transp. Indem. Co.*, 45 B.R. 843, 845 (E.D. Mich. 1984) ("An objection against a claim in a bankruptcy proceeding may be lodged until the court has entered a direct or indirect order allowing the claim.") (citations omitted); *In re Werth*, 29 B.R 220, 222 (Bankr. D. Col. 1983) ("An objection to a claim may be made at any point in the bankruptcy proceeding, and the right to object is only limited by the doctrine of laches.") (citation omitted). Moreover, objecting to the DRA Parties' newly minted claims would be difficult given

---

a rule that says that if they have 'not been joined as required, the [judge] must order that [they] be made . . . part[ies].'" (quoting *Askew v. Sheriff of Cook Cnty, Ill.*, 568 F.3d 632, 634–35 (7th Cir. 2009))). Limiting the scope of a required party's participation would make no sense. If a required party is incapable of being joined because, for example, joinder would defeat subject matter jurisdiction and that party is determined to be indispensable, then the action must be dismissed. *See, e.g.*, *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544 (1st Cir. 2006) ("But, if Kellogg Caribbean (a Puerto Rico company) is entitled to intervene as a matter of right under Rule 24(a)(2) and is an indispensable party under Rule 19(b), the litigation must be dismissed because there would not be complete diversity.").

8

the DRA Parties did not file a proof of claim against the Commonwealth with respect to the Act 30 and 31 revenues.

13. For these reasons, the Oversight Board respectfully submits the Urgent Motion should be granted and the Oversight Board granted leave to intervene as a defendant in Counts I, II and IV with full party rights and without limitation.

## II. THE OVERSIGHT BOARD HAS FULLY DISCLOSED THE SCOPE OF THE PROPOSED INTERVENTION

14. The DRA Parties' contention that the Oversight Board purportedly has not disclosed the scope of its requested intervention is simply not true. The Oversight Board told the DRA Parties—in the meet and confer process, the Joint Status Report and the Urgent Motion— the Oversight Board seeks to intervene as a defendant in Counts I, II and IV with full party rights, and will move to dismiss those counts on several grounds. *See* Joint Status Report at ¶¶ 5, 6, 11, 12; Urgent Motion at ¶¶ 3, 5, 18-22.,

15. To be clear, the Oversight Board will move to dismiss Count I because, among other things: (i) the excise tax revenues retained by the Commonwealth (including Act 30 and 31 revenues) are not subject to a security interest granted by HTA to the DRA Parties; and (ii) PROMESA preempts the statutes under which the DRA Parties assert their claim. Counts II and IV should be dismissed because, among other reasons, the DRA Parties are without standing to bring an action seeking to litigate other creditors' alleged rights against the Commonwealth or HTA, without leave of court, and especially when the very claims the DRA Parties seek to litigate are the subject of a settlement that forms an integral part of the Seventh Amended Plan scheduled for a confirmation hearing in November. *See RWNIH-DL 122nd Street 1 LLC v. Futterman (In re Futterman)*, No. 17-01223, 2019 WL 2553614, *4 (Bankr. S.D.N.Y June 20, 2019); *In re DVR, LLC*, 582 B.R. 507, 522 (Bankr. D. Colo. 2018), *aff'd*, 606 B.R. 80 (D. Colo. 2019) (recognizing

9

a trustee must be empowered to settle claims objections, otherwise "the delay that litigation entails may hold up the trustee's distribution to creditors interminably," the estate may be deprived of "tangible benefits that rolling the dice in litigation would . . . jeopardize" and it "would permit a creditor to hold the estate hostage to protracted litigation"). As noted above, the Court need not address the issues that will be subsequently briefed in the coming motion practice. But to the extent the DRA Parties claim they were somehow unaware of the scope of what was forthcoming (which is hard to fathom on this record), those questions have been answered and should give the Court no pause in granting full intervention rights to the Oversight Board.

16. The Oversight Board has the undisputed right to participate fully as a defendant in the Counts for which intervention is sought and protect the rights and property of the debtors, which are certainly at issue. Indeed, nothing prevents the Oversight Board from objecting to the DRA Parties' claims. Accordingly, the Urgent Motion should be granted and the Oversight Board permitted to intervene in Counts I, II and IV with full party rights and without limitation.

### III. THE LIMITATIONS ON INTERVENTION URGED BY THE DRA PARTIES ARE WHOLLY INAPPROPRIATE, INCONSISTENT WITH THE OVERSIGHT BOARD'S FULL INTERVENTION RIGHTS AND SHOULD BE REJECTED

17. The DRA Parties have agreed that the Oversight Board has a right to intervene as a defendant in Counts I, II and IV and may file motions to dismiss those claims or other dispositive motions. The Court's Order incorporates the Parties' agreement and permits (indeed, directs) the Oversight Board to file such motions to dismiss or other dispositive motions on a specified briefing schedule as if it were a defendant. *See* Order on Joint Status Report at ¶ 3a. The after the fact limitations the DRA Parties ask the Court to impose on the Oversight Board's intervention in Counts I, II and IV are wholly inconsistent and divorced from any meaningful analysis of the actual claims at issue and the procedural posture of this matter, and should be rejected.

10

18. One example of the inappropriate limitations urged by the DRA Parties is their request that the Oversight Board's "filings" be limited "to arguments related to how the DRA Parties' claims specifically affect the Government Parties' interests, if any, in the funds they have earmarked to pay the DRA Parties and the HTA Bondholders in the Seventh Amended Plan." Opposition at 10. The Complaint alleges (at ¶ 14) it "involves disputes over property of the Commonwealth and/or HTA" and, in Counts I, II and IV, asserts, among other things: (i) the DRA Parties have a perfected security interest in revenues retained by the Commonwealth; (ii) the security interest held by HTA bondholders is limited to revenues deposited by HTA in specified accounts, and does not include Act 30-31 revenues claimed by the DRA Parties as security; and, (iii) the DRA Parties have a recourse claim against HTA. The Oversight Board has a right to litigate these issues as a party defendant without limitation—exactly as alleged—including the right to move to dismiss Counts I, II and IV on appropriate grounds. The DRA Parties cannot limit the debtors' rights to object to claims by referencing the proposed plan of adjustment.

19. Equally inappropriate is the DRA Parties' attempt to limit the Oversight Board to filing briefs of no more than 7 pages, and preclude the Oversight Board from participating in discovery if the Complaint survives the pleading stage. While it is reasonable to impose such limitations on interested non-parties permitted to intervene, they are wholly inappropriate here where the Oversight Board is an indispensable party, is intervening as a defendant (with the consent of the DRA Parties and direction of the Court) and has been allowed to file a motion to dismiss or other dispositive motion. Like any other defendant, the length of briefs filed by the Oversight Board will be governed by the Case Management Procedures and, if discovery is permitted, the Oversight Board should be allowed to participate with full party rights. The other limitations proposed by the DRA Parties are similarly illogical and unprincipled.

11

20. The DRA Parties do not, and cannot, provide authority for the inappropriate limitations they propose, or the absurd suggestion that the Oversight Board's intervention rights should be limited to avoid "burdening the DRA Parties." Opposition at 11. Of course, it is not a "burden" on a plaintiff to allow a defendant to defend against the plaintiff's claims and allegations, file appropriate motions and participate in discovery. That said, the Oversight Board fully supports the notion that *all* parties should be required to work collaboratively to avoid duplicative filings and unnecessary judicial labor. That is why the Oversight Board is requesting intervention rather than simply filing its own claim objections against the DRA Parties.

## **CONCLUSION**

For all these reasons, the Oversight Board requests that the Court grant the Urgent Motion, granting the Oversight Board, as representative of the Commonwealth and HTA, leave to intervene as a defendant in Counts I, II, and IV of the Adversary Complaint without limitation and with full participation rights.

Dated: August 5, 2021.
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*/s/ Michael A. Firestein*

Martin J. Bienenstock
Brian S. Rosen
Jeffrey Levitan
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900


Michael A. Firestein
Lary Alan Rappaport
(Admitted Pro Hac Vice)
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 557-2900
Fax: (310) 557-2193
Email: mfirestein@proskauer.com
    lrappaport@proskauer.com

***Attorneys for the Financial Oversight and Management Board as representative for the Debtors***

13