UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
|     as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO<br><u>et al.</u>, | (Jointly Administered) |
|     Debtors.[1] | |

------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
|     as representative of | No. 17 BK 3567-LTS |
| PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY, | |
|     Debtor. | |

------------------------------------------------------------x

ORDER CONCERNING THE GOVERNMENT PARTIES' OBJECTION TO THE
DRA PARTIES' STANDING TO SEEK RELIEF FROM THE AUTOMATIC STAY
<u>OR IN THE ALTERNATIVE, ORDERING PAYMENT OF ADEQUATE PROTECTION</u>

---

[1] The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Before the Court is *The DRA Parties' Amended Motion and Memorandum of Law in Support of their Request for Adequate Protection or Relief from the Automatic Stay* (Docket Entry No. 16276 in Case No. 17-3283 and Docket Entry No. 998 in Case No. 17-3567, the "Motion") filed by AmeriNational Community Services, LLC, as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC (together, the "DRA Parties"). By agreement of the parties, the issue to be determined by the Court at this juncture is whether the DRA Parties have standing to bring the Motion. (See Docket Entry No. 16698 in Case No. 17-3283 and Docket Entry No. 1014 in Case No. 17-3567.) The Court has considered carefully the parties' submissions in connection with the Motion and the arguments made by the parties during the August 4, 2021, omnibus hearing (the "Hearing"). During the Hearing, the Court rendered an oral decision overruling in part the *Government Parties' Objection to the DRA Parties' Standing to Seek Relief from the Automatic Stay or in the Alternative, Ordering Payment of Adequate Protection* (Docket Entry No. 16518 in Case No. 17-3283 and Docket Entry No. 1009 in Case No. 17-3567, the "Objection"), filed by the Financial Oversight and Management Board for Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority (together, the "Government Parties"). This Order memorializes the Court's ruling.

As a threshold issue, the Court rejects the DRA Parties' argument that the Objection should not be considered by the Court because it does not address issues of standing. The Government Parties' objection concerns whether the terms of a contract bar the DRA Parties from seeking relief, which may be construed as a standing issue. See Black's Law Dictionary (11th ed. 2019) (defining standing as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right"). While the question of whether the DRA Parties have a "colorable claim" could also implicate issues of standing insofar as it inquires as to the nature

and ownership of the alleged collateral, that standard is applicable to the Court's ultimate review of the merits of the Motion, and not to the threshold issue of standing as framed here, which is whether there is a contractual bar to the DRA Parties' pursuit of the relief sought in the Motion.

Additionally, it is worth noting that the parties have already spent substantial time briefing the Government Parties' objections, after having continuously pushed out the applicable briefing schedule since July 2019. Moreover, the Court has spent time reviewing those submissions in preparation for this hearing. There is no benefit to be gained from postponing consideration of the arguments raised by the Government Parties to another day, and no prejudice will result if those issues are addressed today.

Accordingly, the Court will address the Government Parties' objections to the Motion that turn on the issue of standing to pursue the motion practice.

This aspect of the parties' instant dispute focuses principally on section 1(b) of the Master Transfer Agreement, dated November 29, 2018 (the "Transfer Agreement") and a related definition in that Agreement. Section 1(b) provides, in relevant part, that "the Issuer shall comply, and shall direct the Servicer to comply, with the Asset Restrictions with respect to the Transferred Property . . . ." Accordingly, the DRA Parties are required to comply with the Asset Restrictions, which are defined in Schedule 1 to the Transfer Agreement. Subparagraphs (b)(ii) and (b)(iii) of the "Asset Restriction" definition, which applies in pertinent part to the Non-Municipal Loans at issue in the instant motion practice, will be referred to herein as the "Transfer Agreement Asset Restrictions," and the Court will refer to these specific subparagraphs as "Clause 2" and "Clause 3," respectively.

Combined with its prefatory stem, Clause 2 provides that, "with respect to any Non-Municipal Loan, rights, remedies and powers in respect of such Non-Municipal Loan may

be exercised solely to the extent necessary . . . to preserve, protect or defend any security or other pledge rights benefiting such Non-Municipal Loan." Combined with its prefatory stem, Clause 3 provides that "with respect to any Non-Municipal Loan, rights, remedies and powers in respect of such Non-Municipal Loan may be exercised solely to the extent necessary . . . in the case of a Non-Municipal Loan where the applicable Obligor is in a proceeding under Title III or Title VI of PROMESA and such Obligor has other creditors with the same legal priority, security or pledge rights as the Issuer, to ensure that the Issuer receives treatment in such proceedings that is the same as that provided to other creditors with the same legal priority, security or pledge rights."

The Government Parties' Objection argues first that, where an obligor such as HTA has commenced a Title III case, Clause 3 of the Transfer Agreement Asset Restrictions confines the DRA Parties' freedom of action such that they may only ensure that the DRA receives the same treatment as other creditors within that obligor's Title III case with the same legal priority, security or pledge rights. The Oversight Board further argues that no such other creditors exist, and that the DRA Parties are therefore barred from taking any action, even in the Commonwealth's separate Title III action or elsewhere, to preserve any rights that they claim arise out of the Non-Municipal Loans.

The DRA Parties contend that similar but different asset restrictions imposed by the GDB Restructuring Act (the "Statutory Asset Restrictions") overcome the Transfer Agreement Asset Restrictions such that the Court should reject the Government Parties' arguments entirely. The DRA Parties provide no textual basis for the argument that the Statutory Asset Restrictions govern notwithstanding any constraints imposed by the Transfer Agreement Asset Restrictions. Furthermore, as noted by the Government Parties, section 404 of the GDB

Restructuring Act specifically contemplates that additional terms and conditions may be imposed by the Transfer Agreement, and, as a practical matter, at the Hearing, the representatives of the DRA Parties took the position that, fundamentally, there is not a material difference between the effect that they contend the statutory provision has and the reading that they are proposing of the Transfer Agreement Asset Restrictions. Moreover, even if the GDB Restructuring Act permits the DRA to exercise certain rights, nothing precludes the DRA from agreeing to contractual limitations on such rights. As noted by the DRA Parties, the GDB Restructuring Act specifically permits the DRA to enter into contracts and to use its property in accordance with the ancillary agreements such as the Transfer Agreement.

Accordingly, the Court next turns to the proper interpretation of the Transfer Agreement Asset Restrictions. The parties agree that interpretation of the Transfer Agreement is governed by Puerto Rico law, and that, under Puerto Rico law, the plain text of a contract is controlling "[i]f the terms of a contract are clear and leave no doubt as to the intention of the contracting parties." 31 L.P.R.A. § 3471.

The Government Parties' interpretation of Clause 3 is not supported by the Transfer Agreement's plain text. The basic premise of the Government Parties' argument is that, when Clause 3 is triggered, the limited rights contained in Clause 3 are the sole rights that the DRA Parties may exercise. The Government Parties, however, focus their attention principally on the first condition of Clause 3, even though Clause 3 presents two conditions: Specifically, Clause 3 applies "where the applicable Obligor is in a proceeding under Title III or Title VI of PROMESA and such Obligor has other creditors with the same legal priority." Both the Government Parties and the DRA Parties appear to be in agreement that there are no other creditors in the HTA case with the same legal priority as the DRA, at least with respect to the

Non-Municipal loans at issue here. Accordingly, even if the Government Parties are correct that Clause 3 provides the exclusive remedy available to the DRA Parties when it is triggered, Clause 3 has not been triggered and it is therefore inapplicable to the present circumstances. There is no textual indication that the existence of the HTA Title III case in and of itself limits the DRA Parties' rights.

To be clear, the Court is not ruling on the Government Parties' contention that, if Clause 3's conditions are met, Clause 2 is no longer applicable. Rather, the parties agree that Clause 3's conditions have not been triggered, and the Court need not address what would happen if, hypothetically, Clause 3's conditions were satisfied.

The Government Parties' other arguments concerning Clause 3 would all have the Court attempt to discern the parties' intentions based on the circumstances in which the Transfer Agreement was executed or with reference to other extrinsic evidence, none of which is relevant in light of the Transfer Agreement's facial lack of ambiguity. As such, the Government Parties' standing objection based on Clause 3 is overruled.

The Government Parties' alternative argument for lack of standing is that Clause 2 of the Transfer Agreement Asset Restrictions bars filing the Motion because the Motion ultimately seeks authorization to collect on the proceeds of a security interest rather than "to preserve, protect or defend any security or other pledge rights."

The Government Parties' argument concerning Clause 2 ignores the fact that Clause 2 is not a complete sentence. The DRA Parties are not limited strictly to preserving, protecting or defending the DRA's rights; rather, the stem of the provision makes it clear that they are authorized to exercise "rights, remedies and powers" to "preserve, protect or defend" the

security or pledge rights "benefitting" the Non-Municipal loans.

The Government Parties have no textual basis for their claim that Clause 2 limits the DRA Parties' remedies so severely that the DRA Parties may "at most" seek "a determination that they have a property right or pledge." A determination of the existence of a property right or pledge is potentially only one aspect of a remedy capable of "preserv[ing], protect[ing] or defend[ing]" security or pledge rights. Section 361 of the Bankruptcy Code provides "a method by which a secured creditor may apply to the Bankruptcy Court to protect its interests against the diminution in value of [its] security during a bankruptcy proceeding." Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.), 600 F.3d 231, 257 (2d Cir. 2010) (quotation marks and internal citations omitted). The adequate protection contemplated by section 361 protects a "creditor's security interest so as to maintain the 'benefit of the bargain' that the secured creditor originally made with the debtors." In re Dynaco Corp., 162 B.R. 389, 393 (Bankr. D.N.H. 1993). Thus, adequate protection allows a secured creditor to protect the security or other pledge rights benefitting its claims against the diminution in value of the creditor's collateral.

The premise of the Motion is that the Commonwealth "has continuously depleted the value of the DRA's collateral and has indicated that it will continue to do so for the duration of the Commonwealth's Title III cases" (Mot. 2), and the Motion is thus framed as one that seeks to exercise the DRA's "rights, remedies and powers" by requesting adequate protection pursuant to section 361 of the Bankruptcy Code. The Government Parties disagree with the merits of the Motion and dispute whether the revenues at issue are the DRA's collateral. They also contend that the Commonwealth's retention and use of the disputed revenues is not unlawful. But those are merits issues and, as presented in the Motion, the DRA Parties' request for adequate

protection seeks a remedy for the alleged diversion of collateral. As such, the Government Parties' have failed to demonstrate that the DRA Parties are prohibited by the Asset Restrictions from seeking adequate protection.

The DRA Parties have also requested relief from the automatic stay pursuant to sections 362(d)(1) and 362(d)(2) of the Bankruptcy Code. The Motion presents that request as an alternative to adequate protection, and the pleadings so far have not described in much detail the claims and remedies that the DRA Parties would pursue if that aspect of the Motion were granted. Accordingly, the record is insufficient to enable the Court to determine whether the relief sought in that aspect of Motion exceeds the scope of the Transfer Agreement Asset Restrictions.

Accordingly, the Court overrules the Government Parties' standing objection insofar as it relates to the aspect of the Motion that seeks adequate protection, and defers consideration of the standing objection insofar as the Motion requests relief from the automatic stay, pending further clarification of the nature and scope of the stay relief that the DRA Parties seek.

The parties are directed (i) to meet and confer concerning the next steps with respect to litigation of the Motion, and (ii) to submit a joint status report by **August 11, 2021**, including, to the extent possible, a stipulation or agreed proposed order addressing the nature and timing of such litigation, and the scope of activity for which the DRA Parties seek authorization by way of the request for relief from the automatic stay.

SO ORDERED.

Dated: August 9, 2021

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge