# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>     Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br>(Jointly Administered) |
| ANTONIO J. AMADEO MURGA, *et al.*,<br><br>     Movants,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>     Respondent. | |

## OPPOSITION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO MOTION FOR CLASS COUNSEL ATTORNEYS' FEES

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND .................................................................................................3

ARGUMENT ......................................................................................................6

    I.    Movants Are Not Entitled to Payment or Allowance of Alleged Attorneys'
        Fees. ..........................................................................................6

        A.    Movants Traded Away Their Claims to Additional Attorney's Fees
            in Connection with the Lift Stay Motion. ......................................6

        B.    Movants' Requested Fees and Expenses are Not Entitled to
            Administrative Expense Status .....................................................8

        C.    Any Payment Request Cannot Be Compelled Pursuant to
            PROMESA Section 305 ...............................................................9

CONCLUSION .................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ambac Assurance Corp. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
927 F.3d 597 (1st Cir. 2019), *cert. denied*, 140 S. Ct. 856 (2020) .......................................10

*Aurelius Cap. Master, Ltd. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
919 F.3d 638 (1st Cir. 2019) ..............................................................................................10

*Gladys García Rubiera, et al., v. Asociación de Suscripción Conjunta, et al.*,
Civil No. KDP2001-1441 ........................................................................................................1

*Gladys García Rubiera, et al. v. Hon. Luis G. Fortuño, et al.*,
Case No. 02-1179 (GAG) .......................................................................................................1

*Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
939 F.3d 340 (1st Cir. 2019) .............................................................................................3, 4

*In re Abercrombie*,
139 F.3d 755 (9th Cir. 1998) .................................................................................................8

*In re Am. Plumbing & Mech., Inc.*,
327 B.R. 273 (Bankr. W.D. Tex. 2005) ................................................................................9

*In re Best Prods. Co.*,
173 B.R. 862 (Bankr. S.D.N.Y. 1994) ..................................................................................9

*In re Hemingway Transp., Inc.*,
954 F.2d 1 (1st Cir. 1992) ......................................................................................................8

*In re Jeans.com*,
491 B.R. 16 (Bankr. D.P.R. 2013) ....................................................................................8, 9

STATUTES

11 U.S.C. § 330 .........................................................................................................................8

11 U.S.C. § 331 .........................................................................................................................8

11 U.S.C. § 503(b) .................................................................................................................8, 9

42 U.S.C. § 1983 .......................................................................................................................7

42 U.S.C. § 1988 ........................................................................................................7

PROMESA § 305 ...................................................................................................9, 10

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7023 ...............................................................................................8

Fed. R. Bankr. P. 7054 ...............................................................................................8

Fed. R. Civ. P. 23(h) ..................................................................................................8

Fed. R. Civ. P. 54(d)(2) ..............................................................................................8

To the Honorable United States District Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Commonwealth's sole representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] hereby files this objection (the "Objection") to the *Motion for Class Counsel Attorney's Fees* [ECF No. 17523][2] (the "Fee Motion") and the *Complementary Motion as to the Fees and Expenses Incurred in Relation to Lift of Stay Proceedings Resulting in the Stipulation and Order Granting Remedy to Plantiffs Class* [ECF No. 17523-1] (the "Complementary Motion" and, together with the Fee Motion, the "Motions"),[3] filed by the certified class in the case captioned *Gladys García Rubiera, et al. v. Hon. Luis G. Fortuño, et al.*, Case No. 02-1179 (GAG) (the "Federal Action"), before the United States District Court for the District of Puerto Rico, and its attorney, Antonio J. Amadeo Murga (collectively, "Movants").  In support of this Objection, the Oversight Board respectfully states as follows:

## PRELIMINARY STATEMENT

1.     Movants seek payment of $75,111.08 in attorney's fees and expenses for prosecuting their Lift Stay Motion (as defined below) seeking stay relief to enforce two prepetition settlement agreements (the "Prepetition Settlement Agreements") entered in connection with the Federal Action and the case captioned *Gladys García Rubiera, et al., v. Asociación de Suscripción Conjunta, et al.*, Civil No. KDP2001-1441, (the "Commonwealth Action" and together with the Federal Action, the "Prepetition Actions") before the Puerto Rico Court of First Instance.  Because

---

[1]   PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

[2]   References to the docket are to Case No. 17-BK-3283-LTS, unless otherwise specified.

[3]   Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Fee Motion.

the Commonwealth's plan of adjustment contemplated the Prepetition Settlement Agreements would be assumed,[4] the Oversight Board determined settlement of the Lift Stay Motion would conserve the Commonwealth's limited resources and avoid unnecessary litigation, including litigation over attorney's fees.  On October 15, 2020, Movants and the Commonwealth entered into the *Stipulation Resolving Motion Requesting Relief of Stay under 362(d)(1) of the Bankruptcy Code [ECF No. 2434]* [ECF No. 14588-1] (the "Stipulation"), attached hereto as **Exhibit 1**, which settled Movants' request for stay relief and provided, among other things, the Commonwealth would seek assumption of the Prepetition Settlement Agreements.[5]

2.      Notably, pursuant to Section 2 the Stipulation, Movants agreed payment of Movants' attorney's fees and expenses pursuant to the terms of the Prepetition Settlement Agreements would satisfy, among other things, any claims for fees and expenses in connection the Commonwealth's Title III case including the Lift Stay Motion:

> Payment of attorneys' fees pursuant to this Section 2 and the terms of the [Prepetition Settlement Agreements] shall be in full satisfaction of the Commonwealth's obligations to pay Movants' attorneys' fees in connection with the Settlement Agreements ***and all matters in connection with the Commonwealth's Title III case, including, without limitation, the Motion [defined as the Lift Stay Motion].***

Stipulation § 2 (emphasis added).

3.      The bottom line is Movants agreed to a settlement sparing them the time, expense, and uncertainty of litigating the Lift Stay Motion in exchange for the Commonwealth's agreement to assume the Prepetition Settlement Agreements.  In their settlement, Movants agreed payment of the attorney's fees already embedded in the Prepetition Settlement Agreements would satisfy

---

[4]  *Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 8765].

[5]  On June 29, 2021, the Court granted the Commonwealth's request to assume the Prepetition Settlement Agreements. [ECF No. 17185].

their claims to additional attorney's fees in connection with the Title III case.  But, in spite of their agreement, Movants request additional attorney's fees.

4.      Movants fail to, and cannot, provide any legal basis for the payment of their attorney's fees and expenses in connection with prosecuting the Lift Stay Motion.  While Movants raise issues such as whether their attorney's fees in connection with the Title III case are administrative expenses, that issue is beside the point.  Movants traded away their claims to more attorney's fees.  The same applies to any contention that they made substantial contributions. Movants' claims to administrative expenses on the ground of substantial contribution or any other ground are exactly what Movants traded away in their settlement.

5.      For these reasons, as more fully detailed below, the Motions should be denied.

## **BACKGROUND**

6.      On February 7, 2018, Movants filed the *Motion Requesting Relief of Stay Under 362(d)(1) of the Bankruptcy Code* [ECF No. 2434] (the "Lift Stay Motion") seeking stay relief to enforce the Prepetition Settlement Agreements.

7.      After the Court originally granted in part and denied in part the Lift Stay Motion, Movants appealed.  In *Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 939 F.3d 340 (1st Cir. 2019) (the "First Circuit Opinion"), the First Circuit remanded for a "preliminary determination of the parties' respective property interests in" certain premium funds received by the Commonwealth from the Compulsory Liability Joint Underwriting Association of Puerto Rico (JUA) which had been segregated by the Commonwealth, "taking into consideration both the prima facie showing made by the plaintiffs and the plaintiffs' ultimate burden on the issue of the debtor's equity in the disputed funds . . . and to reapply the *In re Sonnax*

3

factors to these funds in light of that preliminary determination." *Id.* at 352 (citations and quotation marks omitted).[6]

8.      On October 15, 2020, Movants entered into the Stipulation sparing them a trial on remand. Under the Stipulation, Movants agreed as quoted above in respect of their attorney's fees, and the Oversight Board agreed to seek the Court's approval of the assumption of the Prepetition Settlement Agreements comprised of: (i) the *Joint Motion on Partial Agreement and Stipulation*, dated March 29, 2016, filed in Commonwealth court (the "PR Court Settlement Agreement"), attached to the Stipulation as Exhibit A, and (ii) the *Stipulation for Permanent Injunction*, dated February 29, 2016, filed in a Federal Action, attached to the Stipulation as Exhibit B (the "Federal Court Settlement Agreement").

9.      Movants agreed under the Stipulation not to file any renewed or supplemental papers in connection with the Lift Stay Motion, to withdraw the Lift Stay Motion within five days of entry of the Assumption Order, to adjourn the Lift Stay Motion pending such entry, and to consent to expungement of certain proofs of claim upon payment of certain claims and attorneys' fees. *See* Stipulation ¶¶ 4-6.

10.     Section 2 of the Stipulation provides for attorneys' fees as follows:

> Within thirty (30) days after the entry of an order granting the relief in the Assumption Motion (the "Assumption Order"), the Commonwealth shall make one payment to Movants' counsel, A.J. Amadeo Murga, in the aggregate amount specified in, and in satisfaction of the Commonwealth's obligation pursuant to, Paragraph 6.F.ii.2, 6.F.ii.3, and 6.F.ii.4 of the PR Court Settlement Agreement. All other payments of attorneys' fees shall be made pursuant to Paragraph 6.F of the PR Court Settlement Agreement. Payment of attorneys' fees pursuant to this Section 2 and the terms of the Settlement Agreements shall be in full satisfaction

---

[6] Movants' argument "that the opinion intimated that Plaintiffs' Class had a right to receive the funds as they did not belong to the Commonwealth" is wrong. Fee Mot. at 3. The First Circuit remanded for the Court to make this determination, not that First Circuit had already made it. Movants' predictions about how this Court would rule on the issue is obviously hypothetical and self-serving. In any event, Movants are now re-litigating an issue they agreed was settled. *See* Stipulation ¶¶ 4-5 (agreeing not to file supplemental papers in connection with the Lift Stay Motion and agreeing to withdraw the Lift Stay Motion within five days of the Assumption Order).

of the Commonwealth's obligations to pay Movants' attorneys' fees in connection
with the Settlement Agreements and all matters in connection with the
Commonwealth's Title III case, including, without limitation, the [Lift Stay]
Motion.

Stipulation ¶ 2.  Thus, under Section 2, Movants' attorneys were to be paid a lump sum of

$750,000.00 within thirty days after entry of the Assumption Order, and further advances up to a

total of $1,375,000.00 advanced in connection with the Commonwealth Action, plus the portion

of 20% of reimbursements and credits received by class members to the extent such 20% is in

excess of the $1.375 million advance, in accordance with the PR Court Settlement Agreement.

11.     On September 27, 2019, the Commonwealth, together with certain other Title III

debtors, filed a *Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF

No. 8765] (as may be amended, the "Plan"), which proposed that the Commonwealth will assume

the Prepetition Settlement Agreements upon the occurrence of the effective date of the Plan.  The

Plan also provided for the payment in full of "Allowed Convenience Claims," which included, at

the time, claims equal to or less than $10,000.00.[7]

12.     At the request of Movants, who did not want to wait until confirmation of the Plan,

the Commonwealth filed on November 17, 2020 a motion to approve the assumption of the

Prepetition Settlement Agreements [ECF No. 15171] (the "Assumption Motion").   After

overruling objections, the Court entered an order [ECF No. 17185] (the "Assumption Order") on

June 29, 2021 approving the Assumption Motion.  More than five days have passed since entry of

the Assumption Order.  As of the date hereof, Movants have not withdrawn the Lift Stay Motion

as required by the Stipulation.  *See* Stipulation ¶ 5.[8]

---

[7]   Even the amount of the Allowed Convenience Claims threshold at the time would have been enough to pay members
of the class in full.

[8]   The Oversight Board reserves all its rights under the Stipulation, including enforcement of its rights thereunder.

13.     On July 27, 2021, Movants filed the Fee Motion and the Complementary Motion.

## ARGUMENT

14.     Movants seek payment of $75,111.08 in attorneys' fees and expenses for, among other things related to the Title III case, prosecuting the Lift Stay Motion.  Fee Mot. at 5; Complementary Mot. at 6.  For the reasons set forth herein, Movants' requests should be denied.

I.   **Movants Are Not Entitled to Payment or Allowance of Alleged Attorney's Fees.**

   A.   **Movants Traded Away Their Claims to Additional Attorney's Fees in Connection with the Lift Stay Motion.**

15.     Movants are not entitled to attorneys' fees pursuant to the terms of the Stipulation, which provides that payment of attorneys' fees pursuant to the Prepetition Settlement Agreements would also satisfy any claims for attorney's fees in connection with the Commonwealth's Title III case and the Lift Stay Motion.  Section 2 of the Stipulation ("Section 2") specifies that attorneys' fees eligible for payment are the ones listed in paragraph 6.F of the PR Court Settlement Agreement:

> Within thirty (30) days after the entry of an order granting the relief in the Assumption Motion (the "Assumption Order"), the Commonwealth shall make one payment to Movants' counsel, A.J. Amadeo Murga, in the aggregate amount specified in, and in satisfaction of the Commonwealth's obligation pursuant to, **Paragraph 6.F.ii.2, 6.F.ii.3, and 6.F.ii.4 of the PR Court Settlement Agreement. All other payments of attorneys' fees shall be made pursuant to Paragraph 6.F of the PR Court Settlement Agreement.**

Stipulation ¶ 2 (emphasis added).  Paragraph 6.F of the PR Court Settlement Agreement, in turn, identifies certain enumerated fees (all related to the prepetition claim outlined in the PR Court Settlement Agreement), subject to certain procedures, as eligible: 1) a percentage of reimbursements or credits granted to members of the class pursuant to the PR Court Settlement Agreement, and 2) a percentage of specified dollar amounts on the schedule therein.  *See* PR Court Settlement Agreement ¶ 6.F.i-iv.  Under the Stipulation, this amounts to a $750,000 lump sum

6

following entry of the Assumption Order, plus future payments such that Movants' attorneys will have received at least $1,375,000 on account of the Commonwealth Action. This does **not** require additional fees and expenses related to the Lift Stay Motion.

16. In addition, Movants agreed in Section 2 that the enumerated permitted payments already satisfied the Commonwealth's obligations (if any) with respect to Movants' attorneys' fees in any way related to the Title III case, including the Lift Stay Motion:

> Payment of attorneys' fees pursuant to this Section 2 and the terms of the Settlement Agreements *shall be in full satisfaction of the Commonwealth's obligations to pay Movants' attorneys' fees in connection with the Settlement Agreements and all matters in connection with the Commonwealth's Title III case, including, without limitation, the [Lift Stay] Motion*.

Stipulation ¶ 2 (emphasis added).[9] Accordingly, Section 2 operates as a waiver of what is not specifically enumerated therein.

17. Movants' Complementary Motion, which identifies Movants' counsel's fees and expenses being sought, concedes the requested fees and expenses are not compensable fees under Section 2—but rather reimbursement of its other efforts relating to the Title III case, including prosecution and settlement of the Lift Stay Motion and preparation of the present Motions. *See* Complimentary Motion at 2–6 (listing hours and tasks). Nor do Movants attempt to establish how the asserted attorneys' fees fall within paragraph 6.F of the PR Court Settlement Agreement.[10]

---

[9] No attorneys' fees can be eligible pursuant to the Federal Court Settlement Agreement because that agreement specified an amount certain and finite, which satisfied all attorneys' fees in connection with that action. *See* Federal Court Settlement Agreement ¶ IV.1.

[10] The Title III stay does not affect the merits of the underlying action, and therefore 42 U.S.C. §§ 1983 and 1988 are inapplicable to lift stay proceedings. Prosecuting a Lift Stay Motion and Movants' general Title III efforts do not fall within any of the enumerated statutes that potentially entitle compensation of attorney fees under section 1988 subsection (b) (the only relevant portion). Movants were not the prevailing party and all the First Circuit did was to ask the Court to make a preliminary determination regarding property interests in particular funds and to reapply the *Sonnax* factors to those funds. In any case, whether Movants are a "prevailing party" with respect to the Lift Stay Motion is of no consequence because Movants' Title III efforts do not fall within the ambit of section 1988. And even if they did, Movants have traded away all such claims in the Stipulation.

18.     Simply put, Movants are not entitled to reimbursement of the asserted attorneys'
fees and expenses by the Commonwealth under the Title III Stipulation itself.

## B.     Movants' Requested Fees and Expenses are Not Entitled to Administrative Expense Status

19.     In addition to having waived their claims for attorney's fees in connection with the
Title III case, their claims fail as administrative expenses in any event.  Movants articulate no legal
basis for an entitlement to payment in full, even if such a claim is allowed.[11]   To the extent
Movants' request for the Court to "grant" the asserted fees is a request for allowance of an
administrative expense, Movants fail to establish the basis for such priority.   Administrative
expense priority is permitted only for certain categories of obligations enumerated in Bankruptcy
Code section 503(b).  Movants' asserted fees do not fall into any of these categories and therefore
are not eligible for administrative expense treatment.[12]

20.     *First*, Movants have not established they are being compensated for "actual,
necessary costs and expenses of preserving" the Commonwealth or its assets.  *See* 11 U.S.C.
§ 503(b)(1)(A).  In the First Circuit, the consideration supporting an administrative expense claim
"must have benefitted the estate in some demonstrable way".  *In re Jeans.com*, 491 B.R. 16, 24
(Bankr. D.P.R. 2013) (quoting *In re FBI Distrib. Corp.*, 330 F.3d 36, 42 (1st Cir. 2003)).   The

---

[11] At most attorneys' fees associated with the enforcement of a pre-petition agreement could only be treated as non-priority unsecured claims.  *See In re Abercrombie*, 139 F.3d 755, 758–59 (9th Cir. 1998) (denying administrative expense for debtor-in-possession's postpetition decision to continue defending trial court judgment in which fees were awarded because "the source of the estate's obligation remains the prepetition fee provision."); *In re Hemingway Transp., Inc.*, 954 F.2d 1, 7 (1st Cir. 1992) ("A chapter 7 trustee's lawsuit may indeed impose burdensome litigation expense upon successful and unsuccessful defendants alike, yet its prepetition genesis ultimately distinguishes it from the postpetition losses accorded priority . . . .").

[12] Bankruptcy Code sections 503(b)(2), 330, and 331 are not applicable because PROMESA does not incorporate Bankruptcy Code sections 330 and 331.  The subsections of 503(b)(3) not discussed herein and subsections 503(b)(5)–(9) are simply not applicable and Movants do not contend otherwise.  Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedures are inapplicable because they apply only to adversary proceedings pursuant to Bankruptcy Rules 7023 and 7054.

benefit conferred must be from the point of view of the debtor, not the creditor.  *See id.* ("The pertinent inquiry is the actual benefit to the estate, not the loss sustained by the creditor.").

21.     *Second*, Movants have not provided a "substantial contribution" to the case.  *See* 11 U.S.C. §§ 503(b)(3)(D), 503(b)(4).  An alleged contribution must provide tangible, clearly demonstrable benefits to the Commonwealth or other parties in interest.  *See, e.g.*, *In re Best Prods. Co.*, 173 B.R. 862, 866 (Bankr. S.D.N.Y. 1994) ("The integrity of section 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to tangible benefits to the creditors, debtor or estate.").  Here, Movants expressly traded away that claim and their current motion is the opposite of a substantial contribution.

22.     Notably, Movants' claims would have been paid in full as a "convenience claim" pursuant to the Commonwealth's proposed plan of adjustment.  Stipulation at 4 n.3.  By prosecuting the Lift Stay Motion and entering into the Stipulation, Movants' counsel did not achieve results even for their own clients that would not have been achieved under the plan of adjustment.  If an attorney is entitled to reimbursement of fees as an administrative expense for favorable rulings or settlement in bankruptcy, that would make virtually every effort of creditors' counsel compensable.  For this reason, such efforts are not a "substantial contribution" under section 503.  *See, e.g.*, *In re Am. Plumbing & Mech., Inc.*, 327 B.R. 273 (Bankr. W.D. Tex. 2005) (denying substantial contribution claim of the indenture trustee for bondholders finding that protecting the rights of the bondholders in plan negotiations and litigation was not a contribution that benefitted the estate).

**C.     Any Payment Request Cannot Be Compelled Pursuant to PROMESA Section 305.**

23.     To the extent Movants' requests to "grant" attorneys' fees is a request to compel payment, it directly contravenes PROMESA section 305 because it seeks to mandate how the

Commonwealth uses its property (to pay Movants' counsel).  *See* PROMESA § 305 (prohibiting interference with "any of the property or revenues of the debtor" unless the Oversight Board consents or it is provided for by a plan).  The Court's and the First Circuit's prior rulings are clear on this issue.  *See e.g.*, *Aurelius Cap. Master, Ltd. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.),* 919 F.3d 638, 648 (1st Cir. 2019) (affirming District Court's holding that it was barred by PROMESA section 305 from entering declaratory judgment that "would have directed the Commonwealth about how it must handle and disburse" certain revenues to pay creditors); *Ambac Assurance Corp. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 927 F.3d 597, 602-03 (1st Cir. 2019) (court cannot grant declaratory judgment stating debtor's use of funds was unlawful under PROMESA section 305), *cert. denied*, 140 S. Ct. 856 (2020)*.  Indeed, Movants' action, if successful, can start a dangerous trend that will interfere with the Commonwealth's limited resources and disrupt its coordinated restructuring and recovery efforts, especially as the Commonwealth is focused on prosecuting its proposed plan of adjustment at this time.

24.     Movants do not mention, let alone make any attempt to address PROMESA section 305 in the Motions.  Significantly, this is not even a situation where another court could order payment.  Movants are requesting allowance of a claim in a Title III case which no non-federal court has subject matter jurisdiction to grant.  Movants have made no *prima facie* factual or legal case for the relief they request.

[*Remainder of Page Left Intentionally Blank*]

## CONCLUSION

25.     For the reasons set forth herein, the Oversight Board requests the Court deny the

Motions in their entirety.

Dated: August 11, 2021                          Respectfully submitted,
        San Juan, Puerto Rico


**O'NEILL & BORGES LLC**

By: /s/  *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944
Email: hermann.bauer@oneillborges.com


**PROSKAUER ROSE LLP**

By: /s/  *Ehud Barak*
Martin J. Bienenstock*
Brian S. Rosen*
Ehud Barak*
Eleven Times Square New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email:  mbienenstock@proskauer.com
        brosen@proskauer.com
        ebarak@proskauer.com

* admitted *pro hac vice*

*Attorneys for the Financial Oversight and
Management Board, as Representative of the
Commonwealth*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record and CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer

## Exhibit 1

**Stipulation**