**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>     as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br>          Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>     as representative of<br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br>          Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

**JOINT STATUS REPORT PURSUANT TO ORDER DATED AUGUST 9, 2021 [ECF NO. 17725] IN RESPECT OF DRA PARTIES' LIFT STAY MOTION**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**To the Honorable United States District Judge Laura Taylor Swain:**

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of debtors the Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways and Transportation Authority ("HTA") (collectively "Debtors") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF" and, together with the Oversight Board, the "Government Parties"), AmeriNational Community Services, LLC (the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC, which serves as the collateral monitor for Wilmington Trust, N.A. in connection with the new bonds issued by the DRA[2] (the "Collateral Monitor," and together with the Servicer, collectively, the "DRA Parties" and together with the Government Parties, collectively, the "Parties") respectfully submit this joint status report (the "Joint Status Report") in response to the Court's directive issued at the August 4, 2021 omnibus hearing (the "Hearing"), memorialized in the August 9, 2021 *Order Concerning the Government Parties' Objection to the DRA Parties' Standing to Seek Relief from the Automatic Stay or in the Alternative, Ordering Payment of Adequate Protection* (ECF No. 17725 in Case No. 17-03283-LTS) (the "Order on Standing").[3]

---

[2] The DRA bonds were issued pursuant to the *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as amended by Act No. 147-2018.

[3] Unless otherwise specified, all ECF references are to Case No. 17-03283-LTS.

**JOINT STATUS REPORT**

*Movants' Position and Proposed Timeline*

1. On June 25, 2019, the DRA Parties filed *The DRA Parties' Motion and Memorandum of Law in Support of Their Motion for Relief from the Automatic Stay, or in the alternative, Ordering Payment of Adequate Protection* (ECF No. 7643).

2. On March 31, 2021, the DRA Parties filed *The DRA Parties' Amended Motion and Memorandum of Law in Support of Their Request for Adequate Protection or Relief From the Automatic Stay* (ECF No. 16276) (the "Lift Stay Motion").

3. At the Hearing, addressing only "standing" issues with respect to the Lift Stay Motion, the Court ruled the "Asset Restrictions" did not bar the DRA Parties from bringing the Lift Stay Motion as it relates to seeking adequate protection, but deferred its consideration of whether the "Asset Restrictions" barred the claims and remedies that the DRA Parties would pursue if the Court ordered relief from the automatic stay, as described more fully at the Hearing and in the Order on Standing. The Court held:

> The premise of the [DRA Parties' Lift Stay Motion] is that the Commonwealth 'has continuously depleted the value of the DRA's collateral and has indicated that it will continue to do so for the duration of the Commonwealth's Title III cases' (Mot. 2), and the Motion is thus framed as one that seeks to exercise the DRA's 'rights, remedies and powers' by requesting adequate protection pursuant to section 361 of the Bankruptcy Code. The Government Parties disagree with the merits of the Motion and dispute whether the revenues at issue are the DRA's collateral. They also contend that the Commonwealth's retention and use of the disputed revenues is not unlawful. But those are merits issues and, as presented in the Motion, the DRA Parties' request for adequate protection seeks a remedy for the alleged diversion of collateral. As such, the Government Parties have failed to demonstrate that the DRA Parties are prohibited by the Asset Restrictions from seeking adequate protection.
>
> (…)

> Accordingly, the **Court overrules the Government Parties' standing objection insofar as it relates to aspect of the Motion that seeks adequate protection**, . . .

Order on Standing, at 7-8 (emphasis added).

4. The Court directed the Parties "to meet and confer concerning the next steps with respect to litigation of the [Lift Stay] Motion, and to submit a joint status report by August 11, 2021, including, to the extent possible, a stipulation or agreed proposed order addressing the nature and timing of such litigation, and the scope of activity for which the DRA parties seek authorization by way of the request for relief from the automatic stay." Aug. 4, 2021 Omnibus Hr'g Tr. at 53:11–18.

5. On August 9, 2021, the Court memorialized its ruling at the Hearing in the Order.

6. On August 9, 2021, the Parties met and conferred, as requested by the Court. After good faith efforts, the Parties were unable to reach a consensual agreement with respect to scheduling further proceedings regarding the Lift Stay Motion.[4]

7. The DRA Parties, as movants here, request that the Court move forward with the merits of the DRA Parties' request for adequate protection (the "Adequate Protection Issue"). Doing so is reasonable and necessary, efficiently resolves the Adequate Protection Issue, and is consistent with the Court's Order on Standing as well as the parties previously agreed scheduling orders

---

[4] As an initial matter, the DRA Parties do not believe it is appropriate for the Government Parties to use this status report as a means to litigate the underlying merits of the DRA Parties' Lift Stay Motion. The DRA Parties will be prepared to brief the merits of their Motion at the appropriate time. However, to avoid an inaccurate recitation of the Court's prior rulings, the DRA Parties observe that the monolines' failure to establish a *prima facie* case for stay relief has no bearing here, and significantly, the Court did not decide whether HTA possesses a property interest in the excise tax revenues, much less find that the Commonwealth is the sole owner of these revenues. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 618 B.R. 619, 636 (D.P.R. 2020). This Court explained that the "specific resolutions govern[ing] the relationship between HTA *and the Bondholders*" and the excise tax statutes' "commitments to transfer certain of the Revenues to HTA *for the benefit of the Bondholders*" do not purport to grant bondholders property rights in Excise Tax Revenues. 618 B.R. at 636 (emphasis added). Therefore, "[n]either the Bond Resolutions nor the Excise Tax Statutes promise *the Bondholders* that the Commonwealth will pay them." *Id.* (emphasis added).

- 4 -

which bifurcated the "standing issue" on which the Court has now ruled, from the merits. *See* ECF Nos. 14407, 17463, 16866, 16698.

8. To that end, the DRA Parties request that the Court move forward in the following manner:

a. The Court should permit the Adequate Protection Issue to immediately move forward to the merits phase, which shall include the DRA Parties propounding reasonable discovery as soon as the Court enters a scheduling order;

b. The Court should permit for the Adequate Protection Issue to be decided on a timeline substantially consistent with the following: (1) the Government Parties shall file their opposition to the merits of Lift Stay Motion, solely as to the Adequate Protection Issue, by no later than September 22, 2021, (2) the DRA Parties shall file a reply in support of the Lift Stay Motion, solely as to the Adequate Protection Issue, by no later than October 13, 2021, and (3) a hearing before the Court on the Adequate Protection Issue shall occur on either October 20, 2021 or November 3, 2021 (subject to the Court's availability); and

c. The Court should hold the DRA Parties' alternate request for relief from the automatic stay (the "Stay Relief Issue") in abeyance pending the Court's adjudication of the Adequate Protection Issue for the reasons detailed below.

9. The DRA Parties disagree with the Government Parties' position detailed herein. The Government Parties' position is contrary to the Court's Order on Standing, which made clear that the Adequate Protection Issue should proceed to the merits now. In the Order on Standing, the Court held that "the question of whether the DRA Parties have a 'colorable claim'" is "applicable to the Court's ultimate review of the *merits* of the Motion[.]" DRA Scheduling Order at 1-2 (emphasis added). To fully brief the merits of the Adequate Protection Issue, the DRA Parties

- 5 -

must be afforded the opportunity to take reasonable discovery. To be clear, the DRA Parties will only seek modest discovery that is not duplicative of discovery already requested or provided to them in the context of the Plan Confirmation process or otherwise.

10. As the Court is aware, the Government Parties' position is also contrary to the previously agreed scheduling order approved by this Court in which the parties agreed to bifurcate standing and merits. Now, for the first time, the Government parties are proposing another interim step prior to a determination of the merits. This would not promote efficiency of adjudication. The Government Parties could, and should, have raised their "property interest" argument at the same time as the standing issue (Asset Restrictions), but they chose **not** to do so. It appears that the decision not to bring these arguments at the same time was meant to create delays in the resolution of the Adequate Protection Issue.

11. The DRA Parties believe that addressing the merits of the Adequate Protection Issue as soon as possible is critical because, with confirmation scheduled for November of 2021, a contested hearing only on secured status would leave the Court or parties with insufficient time to consider the merits of the Adequate Protection issue prior to confirmation, which could adversely impact the timeline for Plan Confirmation. As set forth herein, the DRA Parties are willing to proceed on an expedited basis to have the Adequate Protection Issue determined within the timeframe the Government Parties established with respect to Plan confirmation.

12. However, even if the Court believes the Government Parties' proposed approach – with a focus on the DRA Parties' security interest to be contested as a threshold issue – should generally prevail, the Court should revise their proposal to permit the DRA Parties to take factual discovery on issues including: (a) the use and/or current location of Act 30-31 revenues including whether any of such revenues were transferred to HTA, and if so, for what purposes, and (b) factual

issues regarding the mechanism/flow of funds through which the Act 30-31 revenues were allocated or transferred to the Commonwealth, or to any other Government instrumentality, including HTA as well as any other appropriate discovery to be determined by the parties or this Court. The Monolines were permitted similar discovery in connection with the preliminary hearing on their request for relief from the automatic stay. *See* ECF No. 11057.

13. ***Proposed Scope of DRA Stay Relief.*** Finally, in response to the Court's request to address "the scope of activity for which the DRA Parties seek authorization by way of the request for relief from the automatic stay," DRA Standing Order at 8, the DRA Parties will request stay relief to the extent the Court finds that the DRA has satisfied the requirements to receive adequate protection under Bankruptcy Code section 361 (as incorporated into PROMESA). The DRA Parties would only need to seek stay relief if the Government Parties refuse to follow a court order with respect to the provision of adequate protection – which the DRA Parties would not expect. Only then would the DRA Parties need to pursue stay relief.

14. If stay relief is granted, the DRA Parties would then move to enforce the assignment of, and security interest on, the DRA's collateral, wherever located, pursuant to applicable law (including, but not limited to, 19 P.R. Laws Ann. § 2361(a)), which is consistent with the scope of the DRA's lien in its collateral as detailed in the Assignment and Security Agreement, dated as of August 28, 2013 between HTA and the GDB (as amended). The DRA Parties submit that such action is consistent with the Court's ruling permitting the DRA to "preserve, protect or defend any security or other pledge rights" as set forth in Clause 2 of the Transfer Agreement Asset Restrictions (as such term is defined in the DRA Standing Order). DRA Standing Order at 6-8. The DRA Parties submit they would be acting consistent with their rights under Bankruptcy Code

section 362(d)(1), which permits stay relief when the debtor fails to adequately protect a secured creditor's interest in its collateral.[5]

### *Government Parties' Position*

15. On June 25, 2019, the DRA Parties filed *The DRA Parties' Motion and Memorandum of Law in Support of Their Motion for Relief from the Automatic Stay, or in the Alternative, Ordering Payment of Adequate Protection* (ECF No. 7643).

16. On March 31, 2021, the DRA Parties filed the Lift Stay Motion.

17. On June 15, 2021, the DRA Parties filed *The DRA Parties' Motion for Allowance of an Administrative Expense Claim* (ECF No. 17009) (the "Administrative Expense Claim Motion").

18. On June 26, 2021, the DRA Parties commenced an adversary proceeding against certain HTA bondholders, but not the Commonwealth or HTA, captioned *AmeriNational Community Services, LLC, et al. v. Ambac Assurance Corporation, et al.*, Adv. Proc. No. 21-00068 (the "DRA Adversary Proceeding") through the filing of a complaint (the "DRA Complaint") (ECF No. 1 in Adv. Pro. No. 21-00068).

19. On July 23, 2021, the Parties filed the *Joint Status Report Pursuant to Court Order Dated July 16, 2021, [ECF No. 17387] With Respect to (I) DRA Parties Administrative Expense Claim Motion and (II) DRA Adversary Proceeding* (ECF No. 17499) setting forth the Parties' respective positions concerning the Administrative Expense Claim Motion and the DRA

---

[5] While the Government Parties assert below that the DRA Parties must provide more detail as to against whom it would seek to lift the stay, that can only be determined after confirming the location of the DRA's collateral. However, the DRA expects such motion would apply to HTA and the Commonwealth at minimum – again, provided the Government Parties refuse to comply with a court order, which the DRA Parties do not expect will occur.

Adversary Proceeding. The Court subsequently entered an order setting forth the briefing scheduling in connection with such actions (the "Scheduling Order") (ECF No. 17529).

20. At the Hearing, addressing only "standing" issues with respect to the Lift Stay Motion, the Court ruled the "Asset Restrictions" did not bar the DRA Parties from bringing the Lift Stay Motion as it relates to moving to lift the stay for lack of adequate protection, as described more fully at the Hearing and in the Order on Standing. The Court directed the Parties "to meet and confer concerning the next steps with respect to litigation of the [Lift Stay] Motion, and to submit a joint status report by August 11, 2021, including, to the extent possible, a stipulation or agreed proposed order addressing the nature and timing of such litigation, and the scope of activity for which the DRA parties seek authorization by way of the request for relief from the automatic stay." Aug. 4, 2021 Omnibus Hr'g Tr. at 53:11–18.

21. On August 9, 2021, the Court memorialized its ruling at the Hearing in the Order on Standing (the "Order") (ECF No. 17725).

22. On August 9, 2021, the Parties met and conferred, as requested by the Court. After good faith efforts, the Parties were unable to reach a consensual agreement with respect to scheduling further proceedings regarding the Lift Stay Motion. In brief, the Government Parties believe the threshold issue of whether the DRA Parties hold an interest in property should be determined before discovery and trial on the issue of adequate protection.

23. As the Court required in connection with the monoline insurance companies' prior requests for adequate protection and/or stay relief, the Government Parties submit the Lift Stay Motion should be stayed until there is a determination of the threshold issue as to whether the DRA Parties hold an interest in property entitled to adequate protection. That issue is already intended to be briefed in the context of the Government Parties' motions to dismiss Counts I, II and IV of

the DRA Complaint and the Administrative Expense Claim Motion. Specifically, the issue is whether the DRA Parties have any security interest in the Act 30-31 Revenues (as defined in the DRA Complaint) retained by the Commonwealth and not transferred to HTA. If that issue is not resolved by the Court through those two proceedings, that very determination can be made on the merits in connection with the confirmation hearing on the Oversight Board's *Seventh Amended Joint Title III Plan of Adjustment* (as it may be amended, supplemented, or modified from time to time, the "Plan") (ECF No. 17627) (unless otherwise resolved consensually by the Parties).[6] Indeed, the Court has already directed the Parties:

> with respect to all unresolved issues raised in the DRA Adversary Proceedings, the Dispositive Motions, and/or the Administrative Expense Claim Motion, make the necessary submissions and take all necessary actions in compliance with the Court's scheduling and procedure orders concerning the confirmation proceedings relating to the [Plan], including the filing of objections to the Plan (and replies thereto) relating to such issues

Scheduling Order ¶ 5. Thus, there is no reasoned basis, as the DRA Parties suggest, to have the Parties engage in discovery and trial on the issue of adequate protection through a fourth procedural vehicle—the Lift Stay Motion, which issue will be moot if the DRA Parties lack any property interest in the first place. The litigations already scheduled will resolve this issue on the merits. Moreover, it would be a particular waste of judicial resources here to allow costly discovery on adequate protection to proceed when this Court has already concluded that the revenues subject to the "Excise Tax Statutes," which include 9 L.P.R.A. § 5681 ("Act 30") and Act 31-2013, L.P.R.A. § 31751 ("Act 31"),[7] are not available to HTA creditors to the extent the

---

[6] "There is no reason the confirmation would be delayed due to the pendency of the Lift Stay Motion. The property interest is critical for confirmation."

[7] *See In re Financial Oversight and Management Board for Puerto Rico*, 618 B.R. 619 (D.P.R. 2020) (defining the Excise Tax statutes as "L.P.R.A. § 31751; 9 L.P.R.A. §§ 2021, 5681").

Commonwealth has chosen not to make such revenues available. *See* 618 B.R. 619, 635 (D.P.R. 2020) ("Put another way, section 2015 establishes that Commonwealth assets are only available to be pledged to satisfy debts to HTA's Bondholders to the extent that the Commonwealth makes such assets "available" to HTA. Thus, any rights conferred on the HTA Movants by the Excise Tax Statutes do not extend to Excise Tax Revenues that the Commonwealth has not chosen to transfer to make available to HTA.").

24. Pursuant to the Scheduling Order, the deadline for the Government Parties to file their motions to dismiss is August 26, 2021, and briefing will be concluded by October 8, 2021. Scheduling Order at 3. Among other things, the Government Parties will move to dismiss Count I of the DRA Complaint, under which the DRA Parties seek a declaration that "the DRA is the only creditor with a valid, perfected first priority lien on and right to collect from the Act 30-31 Revenues." DRA Complaint at 1–2.

25. If the DRA Parties do not have a security interest in the Act 30-31 Revenues before the Commonwealth transfers them to HTA, the Lift Stay Motion and the relief requested therein will be moot,[8] and the Court may issue an order denying the Lift Stay Motion upon such finding.[9] The Government Parties submit it would be duplicative and wasteful of both judicial and party resources to continue litigating the Lift Stay Motion prior to the Court's threshold determination as to whether the DRA Parties have a perfected security interest in Act 30-31 Revenues retained

---

[8] During the meet and confer, the DRA Parties indicated they currently intend only to seek relief (i) pursuant to Bankruptcy Code section 362(d) with respect to adequate protection, and (ii) from the automatic stay to foreclose on their alleged collateral, to which they might be entitled *if* they have a property interest that is diminishing in value as a result of the automatic stay. Of course, in the absence of any property interest, the DRA Parties would not be entitled to adequate protection.

[9] The Government Parties also believe the Administrative Expense Claim Motion will be mooted upon a finding the DRA Parties lack a security interest in the Act 30-31 Revenues.

by the Commonwealth. Critically, such a determination can be made based on the pleadings in the DRA Adversary Proceeding alone and without discovery, given that the issues raised turn on unambiguous documents and statutes. Even though the DRA Parties only have a pledge from HTA, they claim they have a security interest in the Act 30-31 Revenues assessed and collected by the Commonwealth because (i) HTA's pledge of Act 30-31 Revenues includes revenues "whether presently held or hereafter acquired and wherever located" and (ii) the statutes pursuant to which the Commonwealth undertakes to take the fees it collects (the Act 30-31 Revenues) and cover them over (i.e., deposit them) for the benefit of HTA somehow transfers a property interest to HTA in such revenues, to which the DRA Parties' security interest attaches. Lift Stay Motion at 2. This gating issue can and should be decided first, and it can be decided as a matter of law.

26. Indeed, this is the course of action the Court ordered in the Monolines' lift stay motions: determining first whether the Monolines had a security interest in the excise taxes (which included, among others, the Act 30-31 Revenues) and only then turning to balance of the lift stay requested relief. *Amended Interim Case Management Order for Revenue Bonds* (ECF No. 10595 at 5). The First Circuit further endorsed this course of action in affirming the Court's decision and explaining that "the Title III court will eventually decide on a final basis whether the Monolines have a property interest in the Revenue Bond Adversary Proceedings." *In re Fin. Oversight and Mgt. Bd. for Puerto Rico*, 989 F.3d 170, 182 (1st Cir. 2021). We are unaware of any new argument by the DRA Parties explaining why the Court should read Act 30-31 differently now from its prior reading. The statutory words, at most, obligate the Commonwealth to take taxes it collects in each successive year and transfer them to HTA in those successive years. The statutory words contain no words purporting to currently transfer future collections.

27. Significantly, because of the arguments that determinations in the context of stay relief motions are not final, it makes the least sense to proceed as the DRA Parties request. Rather, the Court should be allowed to issue final rulings in the context of an adversary proceeding.

28. The DRA Parties' proposed schedule ensures inefficiencies, duplication of effort, multiple overlapping pleadings and briefings, and the potential for wasteful discovery. Indeed, during the meet and confer process, the DRA Parties indicated they intend to seek discovery with respect to adequate protection, even prior to any determination as to whether they have the security interest they claim to have—and notwithstanding the fact that the DRA Parties also intend to participate fully in Plan confirmation discovery. (ECF Nos. 17714 and 17715).

29. Holding the Lift Stay Motion in abeyance pending adjudication of this gating issue would conserve party and judicial resources. Further, the Government Parties submit this proposed schedule would not prejudice the DRA Parties, who originally filed their Lift Stay Motion on June 25, 2019 (ECF No. 7643) and have continued it several times by agreement before and after amending it in March 2021. (ECF Nos. 9622, 12285, 13703, 13922, 14132, 14132-1). Moreover, the DRA Parties expressly waived any right to an earlier hearing pursuant to Bankruptcy Code section 362(e). (*See, e.g.*, ECF Nos. 14132, 14132-1 at ¶ 8). Moreover, as a practical matter, because the DRA Parties request adequate protection first, and stay relief only if they do not get adequate protection, we submit Bankruptcy Code section 362(e) does not apply.

30. If the Court allows the DRA Parties to proceed with the Lift Stay Motion at this time, the Government Parties request the Court set a briefing and argument schedule to determine if the relief the DRA Parties may seek pursuant to Bankruptcy Code section 362(d)(1) is barred by the Asset Restrictions. Additionally, the Government Parties request the Court again direct the DRA Parties to disclose the actions for which they request stay relief.. *See* Order at 8 (the Court . . .

- 13 -

defers consideration of the standing objection insofar as the [Lift Stay] Motion requests relief from the automatic stay, pending further clarification of the nature and scope of the stay relief that the DRA Parties seek."). The DRA Parties have failed in this report to specify who they want to sue to foreclose their alleged liens. This is not surprising because if they claim they want to sue the Commonwealth, they will be admitting the Commonwealth still owns the revenues they seek and the Commonwealth did not grant them any security interests.

[*Remainder of Page Intentionally Left Blank*]

Dated: August 11, 2021.
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*/s/ Michael A. Firestein*
Martin J. Bienenstock
Brian S. Rosen
Jeffrey Levitan
Ehud Barak
Admitted *Pro Hac Vice*
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

Michael A. Firestein
Lary Alan Rappaport
Admitted *Pro Hac Vice*
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 557-2900
Fax: (310) 557-2193
Email: mfirestein@proskauer.com
lrappaport@proskauer.com

***Attorneys for the Financial Oversight and Management Board as representative for the Debtors***

/s/ *Draft*
John J. Rapisardi
(Admitted *Pro Hac Vice*)
Matthew P. Kremer
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Tel: (949) 823-6900
Fax: (949) 823-6994

***Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority***

/s/ *Draft*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com
Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com
**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave.
Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

***Co-Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority***

**MCCONNELL VALDÉS LLC**

270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
PO Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: 787-250-5632
Facsimile: 787-759-9225

By: /s/*Arturo J. García-Solá*
Arturo J. García-Solá
USDC No. 201903
Email: ajg@mcvpr.com

By: /s/*Alejandro J. Cepeda-Diaz*
Alejandro J. Cepeda-Diaz
USDC No. 222110
Email: ajc@mcvpr.com

By: /s/*Nayuan Zouairabani*
Nayuan Zouairabani
USDC No. 226411
Email: nzt@mcvpr.com

*Attorneys for AmeriNational Community Services, LLC as servicer for the GDB Debt Recovery Authority*

**C. CONDE & ASSOC. LAW OFFICES**

By: */s/ Carmen D. Conde Torres*
Carmen D. Conde Torres
(USDC No. 207312)
*/s/ Luisa S. Valle Castro*
Luisa S. Valle Castro
(USDC No. 215611
254 San José Street, Suite 5
San Juan, PR 00901-1523
Tel. 787-729-2900
Fax. 787-729-2203
E-Mail: condecarmen@condelaw.com

**SCHULTE ROTH & ZABEL LLP**

By: */s/ Douglas S. Mintz*
Douglas S. Mintz (admitted *pro hac vice*)
901 Fifteenth Street, NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 729-7470
Facsimile: (202) 730-4520
E-mail: dmintz@orrick.com

-and-

Douglas Koff (admitted pro hac vice)
Abbey Walsh (admitted pro hac vice)
Peter J. Amend (admitted pro hac vice)
919 Third Avenue
New York, N.Y. 10022
Tel: 212-756-2000
Fax: 212-593-5955
E-mail: douglas.koff@srz.com
abbey.walsh@srz.com
peter.amend@srz.com

*Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for GDB Debt Recovery Authority*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 11, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer

| | |
|---|---|
| **Summary report:** **Litera® Change-Pro for Word 10.8.1.6 Document comparison done on 8/11/2021 9:12:35 PM** ||
| **Style name:** Standard - Color ||
| **Intelligent Table Comparison:** Inactive ||
| **Original DMS:** iw://NYDMS/NEWYORK/36953374/3 ||
| **Modified DMS:** iw://NYDMS/NEWYORK/36953374/4 ||
| **Changes:** ||
| **Add** | 62 |
| ~~Delete~~ | 48 |
| ~~Move From~~ | 38 |
| **Move To** | 38 |
| **Table Insert** | 0 |
| ~~Table Delete~~ | 0 |
| **Table moves to** | 0 |
| ~~Table moves from~~ | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 186 |