UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br>Debtors.1 | PROMESA<br>Title III<br><br>No. 17 BK 3283<br><br>( Jointly Administered) |

MOTION FOR THE RECONSIDERATION OF THE ORDER
ENTERED ON AUGUST 4, 2021, AT THE OMNIBUS HEARING
CONSERNING THE "THREE HUNDRED FORTY-FIFTH OMNIBUS
OBJECTION"

To the Honorable United States District Court Judge Laura Taylor Swain:

---

1  The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

**NOW COME**: Cabrera - Torres, Signa (Claim No. 12337); Calderón- ILarraza, Carmen (Claim No. 36519); Camacho-Pérez, Judith (Claim No. 29885); Cantres-Aponte, Carmen S. (Claim No. 10442); Cheveres- Fraguada, Zoraida (Claim No. 20773); Colon-Torres, Neysha M. (Claim No. 129809); Cruz-Barreto, Miriam (Claim No. 136186); Gonzalez-Benitez, Rosa M. (Claim No. 90365); González De León, Ivette (Claim No. 12312); Hernández-Cedeño, María (Claim No. 9223); Medina De Reyes, Nitza (Claim No. 12345); Normandía- Rodríguez, Myrna (Claim No. 2252); Rodríguez-López, Raquel (Claim No. 28152); Rodríguez-Sanfeliz, Ernesto (Claim No. 4821); Rosado- Vélez, María A. (Claim No. 2414); Rosario-Rosario, Sonia L. (Claim No. 145627); Santiago-Díaz, Evelyn (Claim No. 39906); Vélez-Bonilla, Rosa E. (Claim No. 27602); Vizcarrondo-Flores, Evelyn (Claim No. 45321); Vizcarrondo-Fernández, Nitza G. (Claim No. 41069 ); who are judgment claimants in the case of Nilda Agosto-Maldonado Plaintiffs Group, case no. K PE 2005-0608;[1] Caraballo –Maimy, Arminda, t/cp Caraballo- de Rivera, Arminda (claim No. 35710); Rodriguez Montalvo, Irvin (Claim No. 703), judgement claimants in the case of Jeanette Abrams- Diaz, Case No. K AC 2005-5021( Master Claim No, 50221 ) and Conchita E.Cox Schuck (claim no, 1845), who is accumulated in the Francisco Beltran Cintron et als. case no 2021-05-0345 (Master Claim No. 179140), through the undersigned attorney and respectfully state and pray:

---

[1] For the complete list of the names and amounts owed to the plaintiff accumulated in the reference judgment see FRBP 2019 ( Docket No. 13534).

The appearing creditors file this Motion for Reconsideration of the August 4, 2021, Order entered by this Honorable Court reclassifying administrative expense claims as general unsecured claims.

## FACTUAL BACKGROUND

1. On August 4, 2021, this Court held an Omnibus Hearing to reclassify as "unsecured", 223 individual claims, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(8) and the Amended Omnibus Objection Procedures, claims that supposedly assert an incorrect or improper classification. (Docket No. 17108).

2. On May 3, 2017, the Commonwealth of Puerto Rico, filed a voluntary petition under the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA).

3. The Judgments referenced in the proof of claims and in the Opposition to the FOMB's Objection to Claim stems from litigation involving Commonwealth entities that led to final Judgments as explained herein. The Department of Transportation and Public Works (DTOP) and The Family Department and respective Administrations known as ADSEF; ADFAN. ACUDEN; ASUME and ARV are instrumentalities of the Commonwealth of Puerto Rico included in the Title III petition filed by the Commonwealth.

4. In 2005, Nilda Agosto Maldonado together with a group of 729 employees, including the above identified 20 claimants, and former employees of the Family Department and its Administration Secretariado, ADFAN, ADSEF, ACUDEN, ASUME, brought pursuant to Rule 59 of P.R. Rules of Civil Procedure (Declaratory

3

Judgment) to request a declaration as to the illegality of General Memorandum 5-86 of OCAP (Central Office for the Administration of Personnel), dated April, 23, 1986, that established a null and *ultra* vires method of salary adjustments for the implementation of the federal minimum wage. Particularly allegedly that, the formula provided in the mentioned Memorandum, violated express dispositions of the Uniform Retribution Law and its Regulation and the public policy which guarantee equitable wages, and which incorporated -- Art II, section sixteen of the Commonwealth Constitution and has been used repeatedly, to illegally adjust Movant's salaries, in order to evade full application of the state and federal minimum wages laws increases.

5. As a direct consequence of the application of the objected Memorandum, the pay scale was made inoperable and resulted that employees assigned up to pay scale 17 of the Retribution Plan and that perform more complex tasks and have more responsibility and who are required to have higher level of education and experience, received the same salary of janitors and workers, in clear disregard of the dispositions established in the Uniform Retribution Law of 1979, and its Regulation, and the public policy that promote equitable and just assignment of wages to government employees, above stated.

6. In reference cause of action, it was also contended that by applying the illegal wage adjustment method established in General Memorandum # 5-86 the Government obtained an unjust enrichment, by disregarding the express dispositions and guidelines established by Law No. 5 of November 20, 1975, which established the

mechanism for shift reduction, which was less onerous, if determined that the Family Department and Administrations did not have the funds needed to implement the federal minimum wage.

7. In 2005, Jeanette Abrams Diaz and a group of 1,084 employees and former employees of the Department of Transportation and Public Works (DTOP), including the two claimants above identified, and under the same cause of action filed at the CFI, case no. K AC 2005- 5021.

8. On 2010 the CFI entered a judgment adopting the prior judgment entered in the case of <u>Carmen Socorro Cruz Hernández y otros v. Departamento de la Familia</u>, Civil Núm. KAC1991-0665 were the court determined that the plaintiffs were injured when the Family Department and Administrations implemented the federal minimum wage law and violated the right of plaintiffs to receive equal pay for equal work ,guaranteed by the Const. P.R., art. II § 16, the Uniform Retribution law, Law No. 89 of July 12, 1979, 3 L.P.R.A. §§ 760, *et seq.*, and the pertinent Regulation, No. 3109 of June 7, 1984.

9. The CFI Judgement granted the plaintiffs, including the appearing 20 claimants back pay for the shortfall amount for the unpaid portion of the regular salaries due. Although the Judgment mandates the FD to correct the plaintiff's regular rate of pay, instead of complying with the CFI Judgment, the Commonwealth prompted extensive appeals processes that concluded in 2012.

10. On October 26, 2011, the Appellate Court entered Judgment, dismissing certain claims of employees that entered an early retirement program, and affirming

the CFI Judgement, case no. KLAN 2010-01703. The Commonwealth then appealed to the Puerto Rico Supreme Court. (Case no. AC 2012- 0015) Certiorari was denied on March 20, 2012, The Commonwealth filed a reconsideration before the Puerto Rico Supreme Court. Certiorari was denied for a second time, on June 29, 2012. The term to appeal to the United States Supreme Court elapsed without action by the Commonwealth. Therefore, the CFI Judgment in the case of Nilda Agosto Maldonado is final and unappealable.

11. In regard to the case of Jeanette Abrams Diaz v DTOP, judgment was entered by stipulation on June 6, 2011, and under the same terms and conditions, as stated in the case Carmen Socorro Cruz Hernández y otros v. Departamento de la Familia, Civil Núm. KAC1991-0665 of Nilda Agosto, supra. and Juan Pérez Colon y otros 324 v. DTOP, Civil Núm. KAC1990-0665.

12. The Family Department and Administrations, and the DTOP, through the Title III Commonwealth Debtor, must comply with the terms and mandates of the respective CFI Judgements.

13. Although in the present case is clear that appearing creditors' claims derives from a pre-petition final judgment, also is clear that the court determined that the Debtor illegally incurred in a pattern of wage violations, when illegally retained a portion of the plaintiff's regular pay every month, and therefore, the wage shortfall accrues every month.

6

14. Consequently, and due to the particular facts applicable to the instant claims and, given the policies and statutory structures of Title III, and avoid immediate and irreparable harm to appearing creditors, in order to ensure that the claims, rights, remedies and causes of actions hold by the group claimants are decided and resolved properly under the Title III case, request the reconsideration of the August 4, 2021 Order, for the following reasons:

## LEGAL ARGUMENT

### Rule 59(e)

15. The appearing creditors file this Motion for Reconsideration under Fed Rule of Civil Procedure 59(e) within the 14 days from the Honorable Court August 4, 2021 Order granting the FOMB's Omnibus Objection to Claims to reclassify the claims filed by the appearing creditors as general unsecured claims instead of the administrative claim classification asserted by the claimants in their proof of claims.

16. The legal issues raised by the Order merit the Court to reconsider the reclassification of the claims. Therefore, the appearing creditors respectfully move the Court to revisit the legal grounds upon which the August 4, 2021 Order was entered. The Order entered was a bench Order without specifying the legal grounds and facts that warranted the Order in favor of a general unsecured classification.

17. Rule 59 (e) of the Fed. Rules of Civ Procedure is used as the alternative grounds to support a motion for reconsideration because there is no procedural rule that specifically promotes a motion for reconsideration. Therefore, Rule 59( e) which

construed to alter or amend motions in this context, is made applicable in bankruptcy by Bankruptcy Rule 9023.

18. The reconsideration under Rule 59(e) and the standard was discussed in an Opinion by the Bankruptcy Appellate Panel for the First Circuit. The Court in the case of Nieves vs Wiscovitch, BAP 16-045, May 17, 2017, cites the applicable case law of the burden and standards of a motion for reconsideration. Under Rule 59(e), "the granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006). Rule 59(e) does not state the grounds on which relief may be granted, and courts have "considerable discretion" in deciding whether to grant or deny a motion under the rule. ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008).

19. It is relying on this Honorable Court's discretion that the appearing creditors with the greatest respect, deference and admiration request the Court to reconsider its interpretation and revisit section 503(b)(1)(A)(i) and (ii) of the Bankruptcy Code.

20. In this particular situation, the Court's discretion is a matter of first impression regarding the interpretation of the word *attributable* as included in the statute.

**Section 503(b)(1)(A)(ii) of the Bankruptcy Code**

20. The statute provides as follows:

**(b)** After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section **502(f)** of this title, including—

⌐ (1)

⌐ **(A)** the actual, necessary costs and expenses of preserving the estate including—

(i)...

**(ii)** wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title; See Section 503(b)(1)(A)(ii) of the Bankruptcy Code.

21. This is an issue first impression in this Title III case and in the Bankruptcy Appellate Court for the First Circuit and in the First Circuit. There is limited case law by bankruptcy Courts in other Circuits. Claimants have identified case law that discusses 503 (b)(1)(A) and its subsections (i) and (ii).

22. There are a total of eleven cases that discuss the section 503(b)(1)(A)(ii). Eight of them are mentioned or discussed in In re Philadelphia Newspapers, LLC., 433 B.R. 164 (2010).

23. The Philadelphia Newspaper Bankruptcy Court details the eight cases.

"Based on this Court's research, there are only eight decisions to date citing § 503(b)(1)(A)(ii). In five of them, the courts only mention the provision in passing and do not interpret or apply it. *See Sanchez v. Northwest Airlines,*

9

*Inc.*, 432 B.R. 803, 810-11 n. 9 (D.Minn.2010); *Scoggin v. Weinman (In re Adam Aircraft Industries, Inc.)*, 2010 WL 717841, at *1 (D.Colo. Feb. 23, 2010); *Kettell v. Bill Heard Enterprises, Inc. (In re Bill Heard Enterprises, Inc.)*, 400 B.R. 795 (Bankr. N.D.Ala.2009); *In re Yellowstone Mountain Club, LLC.*, 2009 WL 3790207, at *5 (Bankr.Mont. Nov.12, 2009); *Johnson v. First NLC Financial Services (In re First Financial Services, LLC)*, 410 B.R. 726 (Bankr.S.D.Fla.2008).

24. In the three decisions wherein the courts discuss the provision, the claims at issue arise under the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101 *et seq. See Binford v. First Magnus Financial Corp. (In re First Magnus Financial Corp.)*, 403 B.R. 659 (D.Ariz. 2009); *In re Powermate Holding Corp.*, 394 B.R. 765 (Bankr.D.Del. Oct.10, 2008); *In re First Magnus Financial Corp.*, 390 B.R. 667 (Bankr.D.Ariz.2008), aff'd, *Binford v. First Magnus Financial Corp. (In re First Magnus Financial Corp.)*, 403 B.R. 659 (D.Ariz.2009). Two of the decisions arise out of the bankruptcy case of First Magnus Financial Corporation." See Philadelphia Newspaper.

25. The ninth case is the Philadelphia Newspapers Court Opinion where the Court follows the determination of the Powermate Court agreeing that the word *and* between the two subsections of section 503 (b)(1)(A) do not have to be both met for a favorable administrative expense determination.

26. After Philadelphia Newspapers, the tenth case is *In re 710 Long Ridge Rd. Operating Co. 505 B.R. 163 (Bankr. D.N.J. 2014)*, where the Court discusses the

preponderance burden that must be met for an administrative expense determination.

27. The eleventh and most recent case is the case of *In Re Truland Group, Inc. 520 B.R. 197 (November 2014).* The Truland bankruptcy Court discusses the requirements of sections 503(b)(1)(A)(i) and (ii) of the Bankruptcy Code and follows the ruling of Powermate and Phila Newspapers finding that the word **and** as included between the subsections allows each subsection to exist independently from the other.

28. The Truland Court concludes that even though the legislative intent behind the BAPCPA 2005 amendments incorporating the two subsectons of section 503(b)(1)(A), is scarce, the plain language of the statute and the subsections convey it was Congresses intent to expand the availability of 503(b)(1)(A) for wage claimants. The section creates two categories, two prongs and compliance with either (i) or (ii) is enough to request an administrative expense classification under 503(b)(1)(A). Truland, 520 B.R. 197.

29. The referenced cases examine section 503(b)(1)(A)(i) and (ii) as to the provisions of the statute but openly disregard to discuss the attributable requirement stated in 503 (b)(1)(A)(ii).

30. The appearing creditors assert the word attributable is the crux of the issue in this statute that will provide a statutory framework that will allow the Court to reconsider the Order dated August 4, 2021.

31. Upon review of the provisions of subsection 503(b)(1)(A)(ii), the statute establishes certain requirements for the determination of an administrative expense under this subsection. The 503 (b)(1)(A)(ii) test requires the existence of these prongs:

1) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board
2) as back pay attributable to any period of time occurring after commencement of the case under this title
3) as a result of a violation of Federal or State law by the debtor,
4) without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered,
5) if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title;

32. The FOMB's reply to the appearing claimant's opposition to the Omnibus Objection Three Hundred and Forty Five specified the Court should focus on subsection 503 (b)(1)(A)(ii) requires *occurring after the commencement of the case.* The FOMB persuaded the Court to rely on an incomplete portion of the statute. The requirement is more specific and clearly establishes *that the award is for back pay* ***attributable*** *to any period of time occurring after commencement of the case under this title.* This section is applicable to PROMESA Title III.

33. The word attributable is not defined in the statute or in the Bankruptcy Code. Nor do we have Legislative History that provides a framework of the word attributable. Hence, in the absence of a statutory definition, the Court must give "the words used [in a statute] their ordinary meaning." United States v. Diallo, 575 F.3d 252, 257 (3d Cir. 2009). The word attributable is the core of this subsection and in its plain meaning, attributable is defined as owning, identifiable or expected, as in the form of payment or accountable.

34. Therefore, the statute provides that attributable requirement is when the payment is accountable as owed, or expected to be paid. So, the statutory mandate is that the payment is attributable, owed, accountable and payable after the commencement of the case but there is no requirement as to occurring after the case is filed. The question is attributable to the Debtor, can the computations be done and the amounts ascertained post filing of the case? That is the definition of attributable in the context of this section.

35. Any other conclusion would lead to ignoring an additional provision of this section that specifies *without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered.*

35. If Congresses intention had been to limit the provisions of this section to post filing, it would not have included attributable and it would have not included the total disregard of when the unlawful conduct happened or took place.

36. So, section 503 (b)(1)(A)(ii) does not have a post commencement requirement, the section is segregated from subsection (i), and it only requires that the amount due is accountable, attributable after the commencement of the case.

37. these are the grounds that allow the appearing creditors to claim their classification as an administrative expense, and justify the reconsideration of the August 4, 2021 Order.

38. However, the Movants sustain and as an alternative reason to reconsider the August 4, 2021 Order, that this Court cannot overlooked that PROMESA establish significant differences, as to the government employee's claims recovery, as opposed to the general unsecured creditors, under the standard bankruptcy procedures.

39. To said effect, appearing creditors submits that this Court most consider that Title III of PROMESA, 48 U.S.C. § 2161-2177 (Title III), provides the Commonwealth a reservation of powers under the 10th Amendment to the Constitution, where the debtor's political powers, governmental powers, property, or revenues, were reserved See, 48 U.S.C. § 2165.

40. Therefore, and due to the unique characteristic of PROMESA, and being an undisputed fact that when the Commonwealth filed the Title III petition, in the Exhibit A –at schedule E – of Global Notes and Statements of limitations Methods and Disclaimers [Docket 1215-1, at pag 7], the Debtors' established the public policy, that was going to continue the practice of paying employees' wages, under the regular course of business, the appearing creditors contends

that the Order reclassifying appearing creditors' claims, as general unsecured, must be reconsidered, since conflicts with the mentioned policy determination [2]

41. Particularly, because creates an unfair discriminatory treatment in the classification of the appearing creditor's claims, when compared with the proposed plan classification scheme, that violates 11 U.S.C. § 1129. Said effects and unreasonable situation, is fully explained in our previous Motions, and that we herein adopt by reference, since establish that debtors classification of employees claims, violates and is inconsistent with principle of 11 U.S.C. § 1123(a)(4) that "provide for the same treatment for each claim or interest of a particular class"[3]

42. Under mentioned circumstances, claimants submits that, once the Commonwealth adopted the wage payment policy, Title III provide claimants protection for the payment of the back pay awards, as determined by the judgments entered in their favor, and must be paid in full, under the ordinary course of business.[4]

---

[2] Schedule E – Employee Obligations states:
"34. The Commonwealth has sought to identify all employees who are or were employed by the Commonwealth or one of the Commonwealth's component units as of the Petition Date, as set forth on Schedule E. The respective employee status includes and is not limited to (a) active, (b) terminated, (c) retired, or (d) on leave.
35. Since the Petition Date, the Commonwealth has paid, and intends to continue to honor and pay, all accrued obligations for wages and salaries, including earned vacation, severance and sick-leave pay, and contributions to employee benefit plans. Accordingly, except as specifically identified elsewhere in Creditor List, the Commonwealth believes that it has satisfied or will satisfy all prepetition claims of active employees for current liabilities. The Commonwealth also continues to file and pay severance in the ordinary course.
36. Schedule E is not intended to represent claims related to retirement plans or Other Postemployment Benefits-related liabilities".
[3] See Docket no. 17021
[4] For an excellent discussion of allowance and payment of Administrative Claim, see In re Fin. Oversight & Mgmt. Bd. for P.R. 621 B.R. 289 (D.P.R. 2020). Also see legislative history supporting administrative priority to employees wage claims, H.R. Rep. No. 95-595, at 357 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6313 were Congress simultaneously amended § 507(a)(3) and added § 507(a)(4)-(5) with the express intent of providing employees greater priority treatment for their direct

43. This because given the manner, in which the reclassification issue has been presented here, distorts "One of the cardinal principles of bankruptcy law that proposes the equality of treatment of similarly situated creditors." 7 Collier on Bankruptcy P 1122.03.

44. Also, because by disallowing appearing creditors back pay claims and reclassifying the claims as general unsecured, not only this Court lack legal basis, since does not set out the specific factual findings or legal basis on which support its determination —are all absent here. *See* In *re Cont'l Airlines, test,* 203 F.3d 203, 214 (third Cir. 2000), but will effectively turn upside down the bankruptcy and the Commonwealth government reorganization efforts " due to the fact that the payment of the wages owed to claimants, is critical to maintain positive employee morale and retain its currently working employees, in view of the years of discomfort and insatisfaction among employees in general, on account of Debtor's illegal wage practices.

45. In addition, because by the Order entered, **claimant's would suffer hardship, if the Reconsideration Motion were either denied without prejudice or adjourned,** since have met their burden of showing that the issue presented to the Court, is ripe for adjudication, even considering the pending challenges to proposed plan of adjustment.

46. In this regards, appearing creditors objects Debtors' Reply to response of group claimants at 15 [docket 17561] were alleges, that the issue of improper

---

wages and "all other forms of employee compensation that is not in the form of wages[,]" and fringe benefits, as fourth and fifth priority,

16

classification or whether the group wage claims have been improperly classified or are unfairly discriminated against, are properly raised in connection with forthcoming hearings to confirm the Debtor's proposed plan of adjustment.

47. To the contrary, appearing creditors submits that in the present case, the critical issues pertaining to the plan classification of claims, an artificial classification of a claim, or whether the plan unfairly discriminates against a class of claims, most not wait to the proposed plan confirmation hearing and thus, "Submitting the debtor to the attendant expense of soliciting votes and seeking court approval on a clearly fruitless venture that would be costly and would unduly delay any possibility of a successful reorganization". In re Pecht, 53 B.R. 768, 769-70 (Bankr. E.D. Va. 1985)

48. Particularly because, this Court has the authority to allow types of administrative expenses and/or priority payments, that are not expressly listed in the statute to carry out the purposes of Title III, since under Section **105(a)** has broad the courts flexibility in tailoring its orders to meet a wide variety of circumstances. *In re Lionel Corp.*, 722 F.2d 1063, 1069 (second Cir.1983)[5].

**49. In view of the above, claimants submits that** although the facts are different, in the present case apply the Supreme Court ruling in *Reading,* 391 U.S. at 473, 88 S. Ct. 1759, where was determined that as a result of the receiver's negligence, claimants were entitled to priority as an administrative expense even though, as the Third Circuit noted in *Tri-State*

---

[5] See In re Fin. Oversight & Mgmt. Bd. for P.R. 621 B.R. 289 (D.P.R. 2020), where the Court determined, that the list of the code recognize priority is not exclusive.

17

*Clinical Laboratories,"* the tort judgment "was not technically a cost of preserving the estate." *Tri-State Clinical Laboratories,* 178 F.3d at 690.

50. **The Supreme Court based its decision, according to the Third Circuit, on "the considerations of fairness and practicality which underlie the purposes of the bankruptcy laws."** *Id.* at 691.

51. More so here, where creditors hold claims that arise from back pay judgments, for debtors violation of state or federal laws, and fits the traditional test for administrative priority **under section 305 (b) (1) (A)(ii), since as establish above,** subsection (ii) allows an administrative expense "without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, In Re Truland Group, Inc. 520 B.R. 197 (2014).

## CONCLUSION

52. For the reasons above stated, the Court should reconsider the Order dated August 4, 2021 and classify creditors' claims as an administrative expense priority.

**WHEREFORE,** pursuant to governing law, it is respectfully requested that this Honorable Court Reconsider the August 4, 2021 Order reclassifying as general unsecured claims, the claims identified in the Three Hundred Forty-Fifth Omnibus Objection, concerning the appearing judgment creditors included in the case of Nilda Agosto Agosto-Maldonado, Plaintiffs Group; collectively Agosto Maldonado, Nilda A. y/o K PE 2005-0608; and instead, enter an order directing the Prime Clerk to correct the priority designations on the employee claims register in the Title III case,

Case:17-03283-LTS Doc#:17892 Filed:08/18/21 Entered:08/18/21 22:38:04 Desc: Main
Document Page 19 of 19

to a section 503 (b) (1 (A) (ii) and under an administrative expense category, in order to guarantee group claimant classification, and payment with a 100% recovery of their respective wage claims, as provided for the other Commonwealth employee's claims. Also, and to the same effect, Order to correct the Priority designations regarding Caraballo –Maimy, Arminda, t/cp Caraballo- de Rivera, Arminda (claim No. 35710); and Rodriguez Montalvo, Irvin (Claim No. 703), who are judgement claimants in the case of Jeanette Abrams- Diaz, Case No. K AC 2005-5021(Master Claim No, 50221) and Conchita E.Cox Schuck (claim no, 1845), who is accumulated in the Francisco Beltran Cintron et. als. case no 2021-05-0345 (Master Claim No. 179140).

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, on August 18, 2021.

**IT IS HEREBY CERTIFIED**, that on this same date we have electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsels of record.

By    /s/ Ivonne González Morales
Ivonne González - Morales
RUA 3725 USDC-PR 202701
P.O. BOX 9021828
San Juan, P.R. 00902-1828
Telephone: 787-410-0119
Email- ivonncgm@prw.net

*Attorney for the Group Creditors*