Response Deadline: September 20, 2021 at 4:00PM (Atlantic Standard Time)
Hearing Date: October 6, 2021, at 9:30AM (Atlantic Standard Time)

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                          Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth and ERS.** |

---

**THREE HUNDRED EIGHTY-NINTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO AND THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO CLAIMS ARISING FROM PERSONAL LOAN AGREEMENTS**

---

The Commonwealth of Puerto Rico (the "Commonwealth") and the Employees Retirement

System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Commonwealth, the "Debtors"), by and through the Financial Oversight and Management Board

for Puerto Rico (the "Oversight Board"), as the sole representative of the Debtors pursuant to

Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*

("PROMESA"),[2] file this omnibus three hundred eighty-ninth omnibus objection (the "Three

Hundred Eighty-Ninth Omnibus Objection") seeking to disallow in their entirety claims arising

from personal loan agreements between ERS participants and certain Cooperativas, as to which

neither the Commonwealth nor ERS is liable, as set forth on **Exhibit A** hereto (collectively, the

"Claims to Be Disallowed").  In support of the Three Hundred Eighty-Ninth Omnibus Objection,

the Debtors respectfully represent as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA

section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders in the Commonwealth Title III Case**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof

(the "Commonwealth Title III Case").   On May 21, 2017, the Oversight Board issued a

restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary

petition for relief for ERS pursuant to PROMESA section 304(a), commencing a case under Title

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

III thereof (the "ERS Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases").  On June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.  ECF No. 537.

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").[3]  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.      Operations of and Reforms to ERS**

5.      ERS is a trust established by the Commonwealth in 1951 for the economic well-being of public employees.  ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities. *See* 3 L.P.R.A § 775. ERS was established to administer the payment of pensions and other benefits to officers and employees of the Commonwealth government, members and employees of Puerto Rico's Legislative Assembly, and officers and employees of public corporations and municipalities. *See* 3 L.P.R.A § 761.

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

6.      Puerto Rico's public pension system is and has been in crisis for many years.  In 2017, then-Governor Rosselló and the Oversight Board moved to address the financial crisis at ERS and safeguard retirement benefits.  On August 23, 2017, the Legislature passed and Governor Rosselló signed into law Act 106, 2017 L.P.R. 106.  Act 106 provides that "the General Fund would assume responsibility and cover [] payments" to pensioners.  Together with the Joint Resolution for Other Allocations for Fiscal Year 2017-2018 ("Joint Resolution 188," and together with Act 106, the "Post-Petition Legislation"), Act 106 reformed Puerto Rico's retirement systems by having the Commonwealth assume ERS's obligations to pay pensioners as they come due under a pay-as-you-go system.  As part of these reforms, and in partial exchange for the Commonwealth's assumption of ERS's obligation to pay retirement benefits, ERS was required to liquidate its assets and transfer the proceeds, in addition to any existing available funds, to the Puerto Rico Department of Treasury's general fund to offset a portion of the Commonwealth's assumed pension liabilities.  *See* Act 106, § 1.4; Joint Resolution 188, § 2.  The Post-Petition Legislation also terminated the obligation of employees (and employers) to make contributions to ERS to pay retiree benefits.  Act 106, § 2.4(d) ("Beginning July 1, 2017, Participants shall make no individual contributions or payments to the Accumulated Pension Benefits Payment Account or additional contributions to their respective Retirement Systems").

## C.      Cooperativas and ERS Participants Execute Personal Loan Agreements

7.      In 2011, the Puerto Rico legislature enacted 2011 L.P.R. 196, which allowed certain financial services entities to enter into individual loan agreements with individuals who participated in ERS.  Pursuant to 2011 L.P.R. 196, each of the claimants subject to this Three Hundred Eighty-Ninth Objection (collectively, the "Cooperativas"), who are each financial services entities, purport to have entered into individual loan agreements with ERS participants

4

(each, an "ERS Participant").  By statute, any ERS Participant who entered into loan agreements could pledge up to 65% of the participant's ERS contributions, or $25,000, whichever was less, as a "guarantee" for their individual loans.  2011 L.P.R. 196.  ERS Participants who entered into a loan agreement with a Cooperativa executed an "Assignment Agreement for Pensioners" (the "Assignment Agreement").  Each Assignment Agreement states that the associated ERS Participant "assigns and grants" [*cede y otorga*] to the Cooperativa a "lien" [*gravamen*] or security interest upon a specified amount of money, which may not exceed a specified percentage "of the pension or benefit [the participant] receives" from the relevant pension system.  The Assignment Agreement further states that the Agreement "creates a valid lien [*gravamen válido*] in favor of the [Cooperativa] in relation to the pension/benefits of the [ERS Participant] to the System [ERS]."

8.     Additionally, in connection with execution of the Assignment Agreement, each ERS Participant executed a "Notification of Assignment" (the "Notification").  The Notification provides notice to ERS that the ERS Participant "accepts and agrees that the amounts they receive by Annuities . . . have been assigned" to a Cooperativa "in guarantee of a loan as collateral to" the Cooperativa.  ERS then executed a "Certificate of Estoppel and Recognition of Assignment of the Product of Contributions" (the "Certificate").  The Certificate states that ERS "has been notified that the interest of the [ERS participant] in the amounts of contributions made by way of deductions from wages or compensation, including interest, have been assigned in favor of" each Cooperativa.[4]

9.     In the event that any ERS Participant defaulted on a loan received from a Cooperativa pursuant to this program, the Cooperativa must give the ERS Participant "a term of 30 days through a written notice . . . warning him/her that if he/she fails to pay or make the

---

[4] Notwithstanding the language in the Certificate, the Assignment Agreement, and not the Certificate, grants the lien.

necessary arrangement with . . . [the Cooperativa] such debt shall become due in its entirety, and the individual contributions of the [ERS Participant], or the balance in their savings account shall be garnished and . . . applied to the debt." 3 L.P.R.A. § 785a. Further, "the application, garnishment, and payment to the [Cooperativa] shall be carried out by [ERS] within 60 days as of the request of the [Cooperativa], [and] such request shall include a certification of [the Cooperativa] stating that 30 days have elapsed since the date on which the borrower . . . was notified that the full payment of the amounts due has not been received." *Id.*

10.     Following execution of the Assignment Agreements, Notifications, and Certificates, certain ERS Participants defaulted on their loans. The Cooperativas filed claims against ERS and/or the Commonwealth in the amounts owed by defaulting ERS Participants on their personal loans.

**D.      Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections**

11.     To date, approximately 180,483 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC. Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

12.     Of the proofs of claim filed, approximately 117,009 have been filed in relation to, or reclassified to be asserted against, the Commonwealth. Approximately 53,214 have been filed in relation to, or reclassified to be asserted against, ERS. In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

13.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

14.     In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

15.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, the Court has held over 15 hearings and entered orders on over 310 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Public Buildings Authority ("PBA"), and/or ERS.  Based upon rulings and orders of the Court to date, approximately 100,649 claims asserting approximately $43.0 trillion in liability against the Commonwealth, HTA, COFINA, PREPA, PBA, and ERS have been disallowed and expunged from the claims registry in the Title III proceedings.

16.     This Three Hundred Eighty-Ninth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

17.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

18.     The Three Hundred Eighty-Ninth Omnibus Objection seeks to disallow, in accordance with the Amended Omnibus Objection Procedures, claims that seek recovery from the Commonwealth and/or ERS for amounts allegedly owed to the Cooperativas by the Commonwealth and/or ERS arising from the ERS Participants' defaults, and that the applicable claimants contend are secured by the ERS Participants' retirement funds.

19.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  Each of the Claims to Be Disallowed purports to assert liabilities against the Commonwealth and/or ERS arising out

8

of the ERS Participants' defaults on personal loan agreements entered into between the Cooperativas and the ERS Participants. According to the Cooperativas, the statutory scheme established by 2011 L.P.R. 196, and effectuated by the Assignment Agreement, the Notification, and the Certificate, give rise to a claim against the Commonwealth and/or ERS in respect of the defaulting ERS Participants' individual employee contributions, which the Cooperativas assert are held by either ERS or the Commonwealth. However, neither 2011 L.P.R. 196, the Assignment Agreement, the Notification, nor the Certificate grant the Cooperativas an enforceable lien or claim against either the Commonwealth or ERS, and accordingly, neither the Commonwealth nor ERS are liable for the ERS Participants' default on their personal loan agreements.

20.     Under the statutory scheme creating the personal loan program, the ERS Participants granted the Cooperativas a lien, with specific statutory enforcement procedures, over the ERS Participants' employee contributions and pension benefits. The Cooperativas do not have an independent right to demand ERS repay the ERS Participants' debt. Pursuant to 2011 L.P.R. 196, the Cooperativas' sole recourse upon an ERS Participant's default is the right to demand that ERS apply, garnish, and pay to the Cooperativas either "the individual contributions of the participants, or the balance in their savings accounts." 2011 L.P.R. 196, § 4-110. It does not grant the Cooperativas a right to seek repayment of the loans directly from ERS. Further, the statute does not provide the Cooperativas any enforcement rights against the Commonwealth.

21.     The Cooperativas contend they have received either an assignment of the ERS Participants' property rights in their individual retirement contributions, or a lien on the ERS Participants' retirement contributions. They have received neither. Although the Assignment Agreement, Notification, and Certificate reference the ERS Participants' "assignment" of a percentage of their retirement benefits as security for the loan, the Spanish-language documents

make clear that the ERS Participants have in fact only granted the Cooperativas a lien—*gravamen*—on a percentage of their pension or benefit payments *when paid*. *See, e.g.*, *In re Builders Grp. & Dev. Corp.*, 502 B.R. 95, 120-21 (Bankr. D.P.R. 2013). There is no provision in the Assignment Agreement, the operative document that purports to establish the lien, granting the Cooperativas an interest in an employee's contributions. Even if the ERS Participants had assigned their rights to payment from ERS to the Cooperativas, that assignment would not give the Cooperativas a right to immediate payment of the ERS Participants' retirement contributions. It is a general principle of assignment that an assignor (the ERS Participant) can assign no greater right than he or she has; nor can an assignee (the Cooperativas) obtain a greater right than the right held by the assignor. *FDIC v. Arrillaga-Torrens*, 212 F. Supp. 3d 312, 352 (D.P.R. 2016) ("A general principle of assignment provides that the assignee steps into the shoes of the assignor upon assignment of the interest, taking the assignment subject to the defenses assertable against the assignor") (citation omitted); *see also* 6 AM. JUR. 2D ASSIGNMENTS § 108 (an assignee "action generally acquires no greater right than was possessed by the assignor, and simply stands in the shoes of the assignor. The assignee cannot recover more than the assignor could recover, and the assignee has no greater rights than the assignor."); *Drouin v. Am. Home Mortg. Servicing, Inc.*, No. 11-CV-596-JL, 2012 WL 1850967, at *3 (D.N.H., May 18, 2012) ("if the right of the assignor would be voidable by the obligor or unenforceable against him if no assignment had been made, the right of the assignee is subject to the infirmity") (citing RESTATEMENT (SECOND) OF CONTRACTS § 336(1) (1981)); UCC 9-404(a)(1) "the rights of an assignee [Cooperativa] are subject to: (1) all terms of the agreement between the account debtor [ERS] and assignor [participant] and any defense or claim in recoupment arising from the transaction that gave rise to the contract"), 19 L.P.R.A. § 2304(a)(1). The ERS Participants have no right to demand immediate

repayment of their retirement contributions from ERS—rather, they have, at best, a right to receive future benefits from ERS upon retirement.  The Cooperativas, therefore, also have no right to demand immediate repayment of the ERS Participants' retirement contributions.  At best, they have the right to demand the attachment or garnishment of the ERS Participants' future pension benefits if and when paid or payable to an individual ERS Participant.  The claims have alleged no basis for liability against the Commonwealth.

22.    The language of the Certifications does not change this conclusion.  Despite reference to retirement contributions in the Certifications, the Cooperativas do not have an enforceable lien against the individual ERS Participants' retirement contributions.  If there is no property to which a lien can attach, no lien is created.  *In re Yates,* 47 B.R. 460, 462 (Bankr. D. Colo. 1985) (citing *In re Ashe,* 668 F.2d 105, 108 (3d Cir. 1982) (concluding that a lien as defined in 11 U.S.C. § 101(28) can only be created if there is a *res* to which the lien can attach.").  As previously explained, ERS maintained individual accounts for accounting purposes that reflected the notional value of each employee's contributions and accredited investment earnings, but no segregated funds corresponding to such retirement accounts existed or were maintained or required to be maintained by ERS.  *See Declaration of Luis M. Collazo Rodriguez in Support of Objection of the Employees Retirement System to Motion for Lift of Stay Filed by the Cooperativa de Ahorro y Crédito Vegabajeña and in Compliance with Order [ECF No. 4194]*, ECF No. 4238-1. Contributions made by or on behalf of the ERS Participants, to the extent any remain at ERS, were held by ERS as general funds, and are not traceable to the specific ERS Participants or their contributions and thus the employees are, at most, "general creditors" of ERS.  *Restatement (Third) of Restitution and Unjust Enrichment* § 60(3) ("A claimant who is entitled to restitution but who is unable to identify specific property from which restitution is available has a remedy via money

11

judgment that ranks equally with the claims of general creditors."). Further, under the Uniform Commercial Code, even if the Cooperativas held a security interest in the contributions themselves, that security interest is not enforceable if the collateral is no longer traceable. UCC §§ 9-315(a)(2), 9-315(b)(2); 19 L.P.R.A. §§ 2265(a)(2), 2265 (b)(2). As explained above, the alleged collateral is not and never was traceable, and accordingly, the Cooperativas' alleged liens fail.

23.    For the foregoing reasons, the Cooperativas have no enforceable claims against either the Commonwealth or ERS, the Commonwealth and ERS respectfully request that the Claims to Be Disallowed be disallowed in their entirety.

24.    In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Three Hundred Eighty-Ninth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Claims Arising From Personal Loan Agreements*, dated August 20, 2021, attached hereto as **Exhibit B**.

## NOTICE

25.    In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Debtors are providing notice of this Three Hundred Eighty-Ninth Omnibus Objection to (a) the individual creditors subject to this Three Hundred Eighty-Ninth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Fifteenth Amended Case Management Procedures* [ECF No. 17127-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico. The notice for this Three Hundred Eighty-Ninth Omnibus Objection is attached hereto as **Exhibit C**. Spanish translations of the Three Hundred Eighty-Ninth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **RESERVATION OF RIGHTS**

26.     This Three Hundred Eighty-Ninth Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors or the rights of any other party in interest in the Title III Cases to object to the Claims to Be Disallowed or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

27.     No prior request for the relief sought in this Three Hundred Eighty-Ninth Omnibus Objection has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Debtors such other and further relief as is just.

Dated: August 20, 2021
     San Juan, Puerto Rico

Respectfully submitted,

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ Martin J. Bienenstock
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico*

**Fecha límite para responder: 20 de septiembre de 2021 a las 4:00 p.m. (AST)**
**Fecha de la vista: 6 de octubre de 2021, a las 9:30 a.m. (AST)**

> **REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>    como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,<br><br>                    Deudores.[1] | PROMESA<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA y el SRE.** |

### TRICENTÉSIMA OCTOGÉSIMA NOVENA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DEL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES SURGIDAS DE ACUERDOS DE PRÉSTAMO PERSONAL

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA") y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE", y junto con el ELA, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de los Deudores conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican esta tricentésima octogésima novena objeción global (la "Tricentésima octogésima novena objeción global") en la que se solicita que se rechacen en su totalidad determinadas reclamaciones surgidas de acuerdos de préstamo personal suscritos entre los participantes en el SRE y ciertas Cooperativas, con respecto a las cuales ni el ELA ni el SRE son responsables, según se establece con más detalle en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas"). En apoyo de la Tricentésima octogésima novena objeción global, los Deudores manifiestan respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

A.      **Órdenes de Fecha Límite en el Caso de Título III del ELA**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso
conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de
2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones
104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el SRE conforme a
la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal
(el "Caso de Título III del SRE", y junto con el Caso de Título III del ELA, los "Casos de Título
III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración
conjunta de los Casos de Título III únicamente con fines procesales. ECF núm. 537.

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije
fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y
la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite").[3] Conforme a la
*Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B)
aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha
Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas
límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de
Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los
Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar
evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160]
(conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo
dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia
a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

**B.      Operación y reformas del SRE**

5.      El SRE es un *trust* establecido por el ELA en 1951 para fomentar el bienestar económico de los empleados públicos. El SRE es una agencia gubernamental, aparte e independiente del Gobierno del ELA y de sus demás instrumentalidades. *Véase* 3 L.P.R.A § 775. El SRE fue creado para administrar el pago de las pensiones y otros beneficios a funcionarios y empleados del Gobierno del ELA, miembros y empleados de la Asamblea Legislativa de Puerto Rico y funcionarios y empleados de corporaciones públicas y municipios. *Véase* 3 L.P.R.A § 761.

6.      El sistema de pensiones públicas de Puerto Rico está, y ha estado, en crisis desde hace muchos años.  En 2017, el que fuera Gobernador en ese momento (Rosselló) y la Junta de Supervisión solicitaron abordar la crisis financiera que afectaba al SRE y así garantizar los beneficios de retiro. El 23 de agosto de 2017, la Asamblea Legislativa adoptó, y el Gobernador Rosselló sancionó, la Ley 106 de 2017, L.P.R. 106. La Ley 106 dispone que "el Fondo General asumiría responsabilidad y cubriría [] pagos" a los pensionados. En combinación con la Resolución conjunta relativa a otras asignaciones para el ejercicio fiscal 2017-2018 (la "<u>Resolución conjunta 188</u>", y junto con la Ley 106, la "<u>Legislación posterior a la petición</u>"), la Ley 106 reformó el sistema de retiro puertorriqueño al hacer que el ELA asumiera las obligaciones del SRE consistentes en pagar a los pensionados conforme a que tales pagos vencieran en virtud del sistema "*pay-as-you-go*". Como parte de dichas reformas, y a modo de un intercambio parcial por la asunción por parte del ELA de las obligaciones del SRE consistentes en pagar los beneficios de retiro, el SRE tenía la obligación de liquidar sus activos y transferir los ingresos obtenidos, además de cualquier fondo disponible ya existente, al fondo general del Departamento de Hacienda de Puerto Rico para compensar por una parte de las responsabilidades relativas a pensiones asumidas por el ELA. *Véase* la Ley 106, § 1.4; Resolución Conjunta 188, § 2. La Legislación posterior a la

4

petición también canceló la obligación de los empleados (y de los patronos) de realizar aportaciones al SRE para pagar los beneficios de retiro. La Ley 106, § 2.4(d) ("A partir del 1 de julio de 2017, los Participantes dejarán de realizar aportaciones o pagos individuales a la Cuenta para el pago de beneficios de pensiones acumuladas o aportaciones adicionales a sus respectivos Sistemas de retiro").

**C.     Cooperativas y participantes en el SRE suscriben acuerdos de préstamo personal**

7.     En 2011, el poder legislativo de Puerto Rico adoptó la L.P.R. 196 de 2011, que permitió a determinadas entidades de servicios financieros celebrar acuerdos de préstamo individuales con personas participantes en el SRE. De conformidad con la L.P.R. 196 de 2011, cada una de las reclamantes objeto de esta Tricentésima octogésima novena objeción global (conjuntamente, las "Cooperativas"), cada una de las cuales constituye una entidad de servicios financieros, alega haber suscrito acuerdos de préstamo individuales con los participantes en el SRE (cada uno, un "Participante en el SRE"). Por ley, cualquier Participante en el SRE que haya suscrito acuerdos de préstamo podría pignorar hasta un 65% de las aportaciones de los participantes al SRE, o $25,000, el monto que resulte menor, como "garantía" por sus préstamos individuales. L.P.R. 196. Los Participantes en el SRE que suscribieron un acuerdo de préstamo con una Cooperativa formalizaron un "Acuerdo de cesión para pensionados" (el "Acuerdo de Cesión"). Cada Acuerdo de Cesión dispone que el Participante en el SRE relacionado "cede y otorga" a la Cooperativa "un gravamen" o garantía prendaria sobre un monto específico de dinero, que no podrá exceder de un porcentaje especificado "de la pensión o el beneficio [que el participante] reciba" del correspondiente sistema de pensiones. Dicho Acuerdo de Cesión dispone además que el Acuerdo "crea un gravamen válido" a favor de la [Cooperativa] en relación con las pensiones/beneficios de los [Participantes en el SRE] respecto al Sistema [SRE]".

8.      Además, en relación con la formalización del Acuerdo de cesión, cada Participante en el SRE llevó a cabo una "Notificación de cesión" (la "Notificación"). La Notificación proporciona un aviso al SRE de que el Participante en el SRE "acepta y consiente en que los montos que reciban en concepto de Anualidad . . . han sido cedidos" a una Cooperativa "como garantía de un préstamo" a la Cooperativa. A continuación, el SRE suscribió un "Certificado de acción innegable y reconocimiento de cesión de los frutos de las aportaciones" (el "Certificado"). El Certificado establece que el SRE "ha sido notificado de que el interés del [participante en el SRE] por los montos de las aportaciones realizadas por medio de las deducciones de los salarios o compensación, incluidos intereses, ha sido cedido a favor de" cada Cooperativa.[4]

9.      Si algún Participante en el SRE no paga un préstamo recibido de la Cooperativa conforme a este programa, la Cooperativa debe conceder al Participante en el SRE "un plazo de 30 días mediante una notificación por escrito . . . advirtiéndole de que si no paga o no llega a un acuerdo pertinente con . . . [la Cooperativa], dicha deuda vencerá en su totalidad y las aportaciones individuales del [Participante en el SRE], o el saldo en su cuenta de ahorros, quedarán embargados y . . . se aplicarán a la deuda". 3 L.P.R.A. § 785a. Además, "la aplicación, el embargo y el pago a la [Cooperativa] se llevarán a cabo por el [SRE] en un plazo de 60 días desde la solicitud remitida por la [Cooperativa], [y] dicha solicitud incluirá una certificación de [la Cooperativa] en la que conste que han pasado 30 días desde la fecha en la que el prestatario . . . recibió notificación de que no se ha recibido el pago completo de los montos vencidos". *Id*.

10.     Tras la formalización del Acuerdo de Cesión, Notificaciones y Certificados, algunos Participantes en el SRE impagaron sus préstamos. Las Cooperativas radicaron

---

[4]Sin perjuicio de lo que dispongan el Certificado, será el Acuerdo de Cesión, y no el Certificado, el que otorgue el gravamen.

6

reclamaciones contra el SRE y/o el ELA por los montos adeudados por los Participantes en el SRE que impagaron sus préstamos personales.

**D.     Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

11.     Hasta la fecha, se han radicado aproximadamente 180,483 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

12.     De las evidencias de reclamaciones radicadas, aproximadamente 117,009 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Aproximadamente 53,214 han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no deberían haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

13.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a objeciones globales, b) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y c) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales

mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

14.     En aras del interés constante por resolver eficazmente cualquier evidencia de reclamación innecesaria, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

15.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado más de 15 vistas y ha dictado órdenes sobre más de 310 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"), la Autoridad de Edificios Públicos de Puerto Rico (la "AEP") y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 100,649 reclamaciones que reivindicaban aproximadamente $43.0 billones en responsabilidad contra el ELA, la ACT, COFINA, la AEE, la AEP y el SRE fueron rechazadas y retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III.

16.     Esta Tricentésima octogésima novena objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

17.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

18.     La Tricentésima octogésima novena objeción global pretende que se desestimen, de acuerdo con los Procedimientos Enmendados relativos a Objeciones Globales, reclamaciones que pretenden recuperar del ELA y/o del SRE montos supuestamente adeudados a las Cooperativas por el ELA y/o el SRE que surgen de los incumplimientos de los Participantes en el SRE, y que los reclamantes pertinentes alegan que están garantizados por los fondos de retiro de los Participantes en el SRE.

9

19.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Cada una de las Reclamaciones que han de ser rechazadas pretende alegar responsabilidades contra el ELA y/o el SRE que surgen de los incumplimientos por parte de los Participantes en el SRE de los acuerdos de préstamo personal celebrados entre las Cooperativas y los Participantes en el SRE. Según las Cooperativas, el esquema legal establecido por la L.P.R. 196 de 2011, y llevado a cabo por el Acuerdo de Cesión, la Notificación y el Certificado, da lugar a una reclamación contra el ELA y/o el SRE en relación con las aportaciones en mora de los empleados individuales de los Participantes en el SRE, las cuales, según afirman las Cooperativas, están en posesión del SRE o del ELA. Sin embargo, ni la L.P.R. 196 de 2011 ni el Acuerdo de cesión, la Notificación o el Certificado otorgan a las Cooperativas un gravamen o una reclamación ejecutables contra el ELA o el SRE, por lo que ni el ELA ni el SRE son responsables por el incumplimiento por parte de los Participantes en el SRE de sus acuerdos de préstamo personal.

20.     En virtud del esquema legal que crea el programa de préstamos personales, los Participantes en el SRE otorgaron a las Cooperativas un gravamen, con procedimientos específicos de ejecución legalmente establecidos, sobre las aportaciones de empleados y los beneficios de pensiones de los Participantes en el SRE. Las Cooperativas no tienen un derecho independiente a exigir al SRE que reembolse la deuda de los Participantes en el SRE. De conformidad con la L.P.R. 196 de 2011, el único recurso de las Cooperativas con respecto al incumplimiento de los Participantes en el SRE es el derecho a exigir que el SRE aplique, embargue y pague a las Cooperativas o bien "las aportaciones individuales de los participantes o bien el saldo que figure en sus cuentas de ahorro". L.P.R. 196 de 2011, § 4-110. No otorga a las Cooperativas un derecho

a solicitar reembolso de los préstamos directamente del SRE. Además, la disposición legal no

otorga a las Cooperativas ningún derecho de ejecución contra el ELA.

21.    Las Cooperativas sostienen que han recibido la cesión de derechos de propiedad de

los Participantes en el SRE sobre sus aportaciones individuales por retiro, o un gravamen sobre las

aportaciones por retiro de los Participantes en el SRE. No han recibido ninguna de las dos cosas.

Aunque el Acuerdo de Cesión, la Notificación y la Certificación hacen referencia a la "cesión" por

parte de los Participantes en el SRE de un porcentaje de sus beneficios de retiro como garantía

para el préstamo, los documentos en español dejan claro que los Participantes en el SRE en realidad

solo han otorgado a las Cooperativas un *gravamen* sobre un porcentaje de los pagos de sus

pensiones o beneficios *una vez pagado*. *Véase, por ejemplo*, *In re Builders Grp. & Dev. Corp.*,

502 B.R. 95, 120-21 (Bankr. D.P.R. 2013). El Acuerdo de Cesión (el documento operativo que

pretende establecer un gravamen) no contiene ninguna disposición que conceda a las Cooperativas

una participación en las aportaciones de un empleado. Incluso si los Participantes en el SRE

hubieran cedido sus derechos a pago del SRE a las Cooperativas, dicha cesión no habría otorgado

a estas últimas un derecho al pago inmediato de las aportaciones por retiro de los Participantes en

el SRE. Según el principio general de cesiones, el cedente (el Participante en el SRE) solo puede

ceder un derecho que no exceda al que posea; y el cesionario (las Cooperativas) tampoco puede

obtener un derecho superior al que posea el cedente. *FDIC c. Arrillaga-Torrens*, 212 F. Supp. 3d

312, 352 (D.P.R. 2016) ("Conforme a un principio general de cesiones, el cesionario ocupa el lugar

del cedente tras la cesión del título, asumiendo la cesión con sujeción a los recursos oponibles

contra el cedente") (se omite cita); *véase también* 6 AM. JUR. 2D ASSIGNMENTS § 108 ("por

lo general, la acción [del cesionario] no obtiene un derecho superior al que poseía el cedente, por

lo que el cesionario simplemente ocupa el lugar del cedente. El cesionario no puede recuperar más

11

de lo que podría recuperar el cedente, por lo que el cesionario no goza de un mayor derecho que el cedente".); *Drouin c. Am. Home Mortg. Servicing, Inc.*, No. 11-CV-596-JL, 2012 WL 1850967, at *3 (D.N.H., 18 de mayo de 2012) ("si el derecho del cedente fuera anulable por el deudor o inejecutable contra él si no se hubiera realizado ninguna cesión, el derecho del cesionario será objeto de invalidez") (citando RESTATEMENT (SECOND) OF CONTRACTS § 336(1) (1981)); UCC 9-404(a)(1) "los derechos de un cesionario [la Cooperativa] quedan sujetos a lo siguiente: 1) la totalidad de los términos del acuerdo entre el deudor de la cuanta [el SRE] y el cedente [el participante] y cualquier recurso o reclamación por recuperación que surja de la transacción que originó el contrato", 19 L.P.R.A. § 2304(a)(1). Los Participantes en el SRE no tienen derecho a exigir un reembolso inmediato de sus aportaciones por retiro, si no que máximo tienen un derecho a recibir futuros beneficios del SRE una vez que se retiren. En consecuencia, las Cooperativas tampoco tienen derecho a exigir un reembolso inmediato de las aportaciones por retiro de los Participantes en el SRE. Máximo tienen el derecho a exigir el embargo o la incautación de futuros beneficios de pensiones de los Participantes en el SRE cuando estos se paguen o sean pagaderos a un Participante individual en el SRE. Las reclamaciones no han proporcionado ningún fundamento para alegar responsabilidad contra el ELA.

22.     El texto contenido en las Certificaciones no cambia esta conclusión. A pesar de la mención que hacen las Certificaciones de las aportaciones por retiro, las Cooperativas no tienen un gravamen exigible contra las aportaciones por retiro de los Participantes individuales en el SRE. Si no existe ninguna propiedad sobre la cual se pueda constituir un gravamen, no se genera ningún gravamen. *In re Yates,* 47 B.R. 460, 462 (Bankr. D. Colo. 1985) (que cita *In re Ashe,* 668 F.2d 105, 108 (3d Cir. 1982) (que concluye que un gravamen según la definición en el título 11 U.S.C., § 101(28) "solo podría crearse si existe una *cosa* sobre la que el gravamen se podría constituir".).

12

Como se ha explicado anteriormente, el SRE mantuvo cuentas individuales con fines contables que reflejan el valor nominal de las aportaciones de cada empleado y la rentabilidad de inversión acreditada, pero no existieron ni se mantuvieron (ni era necesario que existieran o se mantuvieran) fondos segregados correspondientes a tales cuentas de retiro mantenidas por el SRE. *Véase Declaración de Luis M. Collazo Rodríguez en apoyo de la Objeción del Sistema de Retiro de los Empleados a la Moción para levantar la paralización radicada por la Cooperativa de Ahorro y Crédito Vegabajeña y en cumplimiento de la Orden [ECF núm. 4194], ECF núm.* 4238-1. Las aportaciones realizadas por los Participantes en el SRE, o que se realizaran en nombre de tales Participantes en el SRE (en la medida en que alguna de dichas aportaciones todavía esté en el SRE), estaban en posesión del SRE como fondos generales, por lo que no son vinculables a Participantes en el SRE concretos ni a sus aportaciones; en consecuencia, los empleados son (en el mejor de los casos) "acreedores generales" del SRE. *Reformulación (Tercera) de Restitución y Enriquecimiento Injusto* § 60(3) ("Un reclamante que tenga derecho a una restitución pero que no pueda identificar bienes específicos con respecto a los cuales se pueda realizar la restitución tendrá un remedio mediante una sentencia monetaria que estará al mismo nivel que las reclamaciones de acreedores generales"). Además, conforme al Código Comercial Uniforme, si las Cooperativas tuvieran una garantía prendaria sobre las propias aportaciones, dicha garantía prendaria no sería exigible si la garantía ya no estuviera localizable. UCC §§ 9-315(a)(2), 9-315(b)(2); 19 L.P.R.A. §§ 2265(a)(2), 2265 (b)(2). Como se ha explicado anteriormente, la supuesta garantía no está localizable ni lo ha estado nunca, por lo que los supuestos gravámenes de las Cooperativas no se sostienen.

23.     Por los motivos mencionados, las Cooperativas no tienen reclamaciones ejecutables contra el ELA o el SRE, estos últimos solicitan respetuosamente que las Reclamaciones que han de ser rechazadas sean rechazadas en su totalidad.

24.     En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Tricentésima octogésima novena objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico a Reclamaciones radicadas por AEELA*, de fecha 20 de agosto de 2021, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

25.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores notifican la presente Tricentésima octogésima novena objeción global a) a los acreedores individuales objeto de esta Tricentésima octogésima novena objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 15* [ECF núm. 17127-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación de esta Tricentésima octogésima novena objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Tricentésima octogésima novena objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

26.     Esta Tricentésima octogésima novena objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los

Deudores, o de los derechos de cualesquiera otras partes interesadas en dichos Casos de Título III, a objetar a las Reclamaciones que han de ser rechazadas o a cualesquiera otras reclamaciones sobre la base de los motivos que fueren. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas en los Casos de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fueren; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas en los Casos de Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## **AUSENCIA DE SOLICITUDES PREVIAS**

27.     No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima octogésima novena objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente*]

15

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

Fecha: 20 de agosto de 2021
      San Juan (Puerto Rico)

Respetuosamente sometida,

*[Firma en la versión en inglés]*
Hermann D. Bauer
USDC núm. 215205
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

*[Firma en la versión en inglés]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico.*