Response Deadline:  September 20, 2021 at 4:00PM (Atlantic Standard Time)
Hearing Date:  October 6, 2021, at 9:30AM (Atlantic Standard Time)

<div style="border:1px solid">

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

</div>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth and ERS.** |

**THREE HUNDRED EIGHTY-EIGHTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO AND THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO CLAIMS FILED BY AEELA**

The Commonwealth of Puerto Rico (the "Commonwealth") and the Employees Retirement

System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Commonwealth, the "Debtors"), by and through the Financial Oversight and Management Board

for Puerto Rico (the "Oversight Board"), as the sole representative of the Debtors pursuant to

section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*

("PROMESA"),[2] file this three hundred eighty-eighth omnibus objection (the "Three Hundred

Eighty-Eighth Omnibus Objection") seeking to disallow in their entirety claims filed by the

Asociación de los Empleados del ELA ("AEELA"), as to which neither the Commonwealth nor

ERS is liable, as set forth on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed").  In

support of the Three Hundred Eighty-Eighth Omnibus Objection, the Commonwealth respectfully

represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA

section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

A.      **The Bar Date Orders in the Commonwealth Title III Case**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof

(the "Commonwealth Title III Case").   On May 21, 2017, the Oversight Board issued a

restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary

petition for relief for ERS pursuant to PROMESA section 304(a), commencing a case under Title

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

III thereof (the "ERS Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases").  On June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.  ECF No. 537.

4.     On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").[3]  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.     AEELA**

5.     AEELA is an association for government employees that was created by Act No. 133 of June 28, 1966, as amended.  AEELA was created "to stimulate savings among the employees and covered pensioned members of the Association; establish insurance plans including life insurance; grant loans, provide employees and pensioned members with homes and hospital facilities where they can obtain medical treatment for themselves and their families; and seek, through any available means and resources, the financial, moral, and physical betterment and

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

progress of its members, both individually and collectively . . . ." 3 L.P.R.A. § 9002.  In accordance

with its mandate, AEELA offers its members financial products, including life insurance policies,

savings and loan accounts, IRA accounts, personal loans, mortgage loans, credit cards, and other

similar financial services.  *See* 3 L.P.R.A. § 9004; aeela.com.  AEELA is a separate and distinct

legal entity that "shall retain its legal personality and its capacity to sue and be sued."  3 L.P.R.A.

§ 9002.

## C.     ERS and Its Operational Reforms

6.     ERS is a trust established by the Commonwealth in 1951 for the economic

wellbeing of public employees. ERS is an agency of the government, separate and apart from the

Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A. § 775.  ERS was

established to administer the payment of pensions and other benefits to officers and employees of

the Commonwealth government, members and employees of Puerto Rico's Legislative Assembly

(the "Legislature"), and officers and employees of public corporations and municipalities.  *See*

3 L.P.R.A. § 761.

7.     More than 260,000 retirees and active employees participated in ERS and relied on

it for retirement and other benefits.  Many of these beneficiaries relied on payments from ERS as

their primary source of income in retirement.

8.     Under Act 447 of May 15, 1951 (codified, as amended, at 3 L.P.R.A. §§ 761–788)

(the "Enabling Act"), all government employees whose retirement benefits were administered by

ERS were to receive defined benefits calculated based on a statutory formula that considered

factors including the employee's salary and years of service.  *See* 3 L.P.R.A. § 761, et seq.

9.     ERS was funded primarily by contributions from employers ("Employers'

Contributions"), the amount of which was determined by statute pursuant to a formula based on

the amount of active employee payroll of participating public employers from time to time (and

not based on payments made or to be made to retirees).  Employers covered by ERS included the

Commonwealth, its instrumentalities, and municipalities, excluding, among others, PREPA, UPR,

the Department of Education, and the judiciary.  AEELA was a participating employer in ERS and

was responsible for making contributions on behalf of employees covered by it.

10.     ERS was underfunded from its inception, and, after many attempts at its reform

failed to return ERS to solvency, ERS filed a petition under Title III of PROMESA on May 21,

2017.  *See supra* ¶ 3.

11.     After ERS filed for Title III, on June 25, 2017, the Legislature passed the Joint

Resolution for Other Allocations for Fiscal Year 2017-2018 ("Joint Resolution 188"), and on

August 23, 2017 Governor Rosselló signed Act 106-2017 ("Act 106") into law.  At the time of Act

106's passage, ERS was "on the edge of insolvency, which means that the payment of pensions to

our retirees is seriously threatened if we do not act promptly."  Act 106, Statement of Motives, at

10.  Accordingly, Act 106 declared ERS "in a state of financial emergency," as a result of which

"it is estimated that by August 2017 [ERS] will have no liquid funds with which to meet its

obligations."  *Id.* § 1.3.  After having "carefully analyzed" "all available viable options for dealing

with the current crisis in [ERS]," the Government determined it was "reasonable and necessary

that the General Fund would assume responsibility to cover the payments that [ERS is] unable to

make to our pensioners. . . . To do otherwise would deprive our retirees of their pensions, with all

the consequences this would involve for them, as well as for the Government and society in

general."  *Id.*  Accordingly, Act 106 "establishes a 'pay as you go' system whereby disbursements

will continue to be made for all current pensions in [ERS], using resources from the General Fund."

*Id.*, Statement of Motives at 11; *see also id.* § 1.5.

12.     Together, Act 106 and Joint Resolution 188 (collectively, the "Legislation")
reformed Puerto Rico's retirement systems by (a) having the Commonwealth assume ERS's
obligations to pay pensioners, (b) having non-Commonwealth employers reimburse the
Commonwealth for payments (the "PayGo Payments") actually made by the Commonwealth to
these employers' current pensioners, and (c) because ERS would no longer be responsible for
paying benefits, eliminating employers' obligations to contribute to ERS. *See* Act 106, §§ 2.1(b),
2.4(e); J.R. 188, § 4. While employer contributions to ERS were eliminated, "the Municipalities,
Legislative Branch, Public Corporations, the Government and the Court Administration shall be
required to pay the 'PayGo' Fee, according to each one to support the Accumulated Pensions
Payment Account." *See* Act 106, § 1.4. The "PayGo" Fee is "established and imposed by the
AAFAF and paid by the Government, Municipalities, Judicial Branch, Legislative Branch and the
Public Corporations, and other entities considered employers under" ERS, and "shall be equal to
the amount actually paid to Pensioners and Beneficiaries from each covered entity." *Id.* § 1.6(g),
2.1(b).

13.     Act 106 also repealed Law 211-2015, known as the "Voluntary Pre-Retirement
Program Act," which offered a "pre-retirement" opportunity to certain eligible employees. *Id.* §
7.1(a). The Voluntary Pre-Retirement Program was enacted "for the purpose of achieving
significant savings in government expenditures on account of payroll and fringe benefits, as well
as carrying out an organizational and systematic turnaround that will allow for the allocation of
resources to maximize services . . . ." 3 L.P.R.A. § 9262. Pre-retirees were entitled to receive,
*inter alia*, (1) sixty percent (60%) of their average compensation as of December 31, 2015, until
the age of sixty-one; (2) payout of unused vacation and sick leave as of the time of enrollment in
the program; and (3) employer contributions on account of the employee's pension, Social

Security, and Medicare. *Id.* at § 9625. AEELA participated in the Voluntary Pre-Retirement Program, and certain of its employees availed themselves of the program's pre-retirement opportunity. Although Act 106 repealed the program, Act 106 also guaranteed "all rights and obligations created under [the Voluntary Pre-Retirement Program Act]" to participants in the program. *See* Act 106, § 7.1(a).

14.     Act 106 also contains a supremacy clause which expressly provides that its provisions "shall prevail over any other legal provision, regulation, or rule that is not in harmony" with it. *Id.* § 7.10; *see also* § 1.2 (because Act 106 was enacted "in the exercise of the reasoning power of the State" and as an exercise of the power "to pass laws for the protection of the life, health and wellbeing of the People, and in cases of serious emergencies when the health, public safety or essential government services are clearly in jeopardy . . . this Act will enjoy supremacy over any other State law.").

15.     As a result of the Legislation, ERS stopped receiving Employers' Contributions as of July 1, 2017, and was relieved of the obligation to pay retiree benefits.

16.     As part of these reforms, and in partial exchange for the Commonwealth's assumption of ERS's obligation to pay retirement benefits, ERS was required to sell its assets and transfer the proceeds, in addition to any existing available funds, to the Puerto Rico Department of Treasury's general fund to offset a portion of the Commonwealth's assumed pension liabilities. *See* Act 106, § 1.4; J.R. 188, § 2. Consistent therewith, in 2017, ERS transferred approximately $190 million of deposit account assets to the Commonwealth.

**D.     Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections**

17.     To date, approximately 180,483 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

18.     Of the proofs of claim filed, approximately 117,009 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  Approximately 53,214 have been filed in relation to, or reclassified to be asserted against, ERS.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

19.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "<u>Omnibus Procedures Motion</u>").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "<u>Initial Omnibus Objection Procedures</u>").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "<u>Notice Order</u>").

20.    In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

21.    Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, the Court has held over 15 hearings and entered orders on over 310 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Electric Power Authority ("PREPA") and/or ERS. Based upon rulings and orders of the Court to date, approximately 100,649 claims asserting approximately $43.0 trillion in liability against the Commonwealth, HTA, COFINA, PREPA, and ERS have been disallowed and expunged from the claims registry in the Title III proceedings.

22.    This Three Hundred Eighty-Eighth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

### OBJECTIONS TO PROOFS OF CLAIM

23.    The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of

Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

24.     The Three Hundred Eighty-Eighth Omnibus Objection seeks to disallow, in accordance with the Amended Omnibus Objection Procedures, claims that seek recovery from the Commonwealth and/or ERS for amounts allegedly owed to AEELA by the Commonwealth and/or ERS arising from the enactment of Act 106 and the transition to PayGo.  Specifically, AEELA asserts the following liabilities: (1) $252,740.49 for AEELA's contributions to ERS pursuant to the Voluntary Pre-Retirement Program, because AEELA alleges it will be obligated to pay the full cost of its pre-retirees' benefits notwithstanding its prior contributions; (2) $1,701,304.00 for the actuarial cost to be paid by AEELA under the Voluntary Pre-Retirement Program, as amended, for the pensions to be received by its pre-retired employees at age 61, which AEELA alleges it will be obligated to pay pursuant to Act 106; (3) $153,340.85 for individual pension contributions made by AEELA on behalf of certain pre-retired employees pursuant to the Voluntary Pre-Retirement Program while the employees were active AEELA employees, and whose pensions AEELA alleges it will be obligated to pay pursuant to Act 106; (4) $2,044,792.64 for individual contributions made by pre-retired employees under the Voluntary Pre-Retirement Program while they were active AEELA employees, and whose pensions AEELA alleges it will be obligated to pay pursuant to Act 106; (5) $2,108,592.00, which AEELA contends represents its "participation in the sale of ERS's assets," and which AEELA claims it is owed because its contributions purchased ERS's assets; and (6) $17,397,441.18 for individual contributions by pre-retired employees pursuant to the Voluntary Pre-Retirement Program while the employees were active AEELA employees, and whose pensions AEELA alleges it will be obligated to pay pursuant to Act 106.

25.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim.  *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

26.     The Claims to Be Disallowed seek to recover from the Debtors (*i*) employer contributions paid by AEELA on behalf of active and pre-retired employees; (*ii*) individual employee contributions paid by active and pre-retired AEELA employees; and (*iii*) what AEELA contends is its pro rata share of the sale of ERS's assets, which AEELA contends it is owed because ERS's assets were purchased, in part, using its contributions.  AEELA further contends that these alleged liabilities should be credited to AEELA under the PayGo system.  But AEELA has not identified any statutory basis pursuant to Act 106, or any other basis in Puerto Rico law, for its assertion of a claim against the Debtors in respect of either AEELA's or its employees' prior contributions to ERS, or in AEELA's alleged "share" of the sale of ERS' assets.

27.     Act 106 does not provide that the conversion to PayGo gives rise to a claim against the Commonwealth held by either AEELA or any other participating employer in ERS in respect of their prior contributions to ERS.  Act 106 also does not grant AEELA—or any other employer that formerly participated in ERS—the right to deduct prior employer and employee contributions from their PayGo Fee.  *See, e.g.*, *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 27 (1st Cir. 1990)

11

(dismissing a claim for contribution in a case seeking contribution pursuant to the Commodity Exchange Act because "[t]here is no statutory right to sue for contribution" pursuant to that act). Rather, Act 106 specifies how each participating employer's PayGo Fee is calculated: the PayGo Fee "shall be equal to the amount actually paid to Pensioners and Beneficiaries from each covered entity," Act 106 § 2.1(b), and it will be "established and imposed by AAFAF." *Id.* § 1.6(g).

28.     There is likewise no basis in Puerto Rico's Civil Code for AEELA to assert claims against the Debtors for its prior employee or employer contributions. The Claims to Be Disallowed and their supporting documentation contend that, because AEELA purports to be private entity and is not supported by the General Fund, it is entitled to claims against the Debtors for its prior contributions. But AEELA does not explain why either its alleged private status or the fact that it does not receive funds from the General Fund entitle it to recover contributions made to ERS by it or its employees while ERS functioned as a defined benefit plan. AEELA also does not explain why its prior employee and employer contributions give it any property interest in ERS assets that would give rise to a claim against ERS for its "participation" in the sale of those assets. Even if AEELA could articulate a basis under Puerto Rico law for its claims, any such claims would be preempted by Act 106's supremacy provision. Permitting participating employers (such as AEELA) to retain credits for prior contributions made to ERS, to be reimbursed for their prior contributions to ERS, or to "participate" in the sale of ERS's assets would be contrary to the goals of Act 106. Act 106 was enacted because, notwithstanding the prior contributions made by participating employees and employers, ERS lacked funds sufficient to continue to pay its obligations to retirees as they came due. The PayGo program addressed ERS's insolvency by establishing a "pay as you go" system for the payment of pension benefits as they came due. If participating employers retained credits in respect of their prior participation in ERS, those credits

would destabilize the PayGo program, substantially increasing the cost to the Commonwealth of maintaining the program, and thereby impeding the Government's ability to continue meeting its obligations to retirees as required by Act 106. Accordingly, even if AEELA could articulate a basis for a claim against the Commonwealth or ERS under Puerto Rico law arising from the conversion to PayGo and the establishment of the PayGo Fee, that claim would be preempted by Act 106. Finally, it is important to note that the prior contributions of AEELA and its employees were used to pay retirees in the ERS plan, including retirees from AEELA. Allowing AEELA to recover prior contributions or its alleged share of ERS's assets would effectively constitute reimbursement by the Commonwealth to AEELA for the cost of funding pensions for AEELA's own retirees. This would result in an unfair windfall to AEELA, at the expense of a Title III debtor.

29.     Because AEELA does not have enforceable claims against either ERS or the Commonwealth in respect of its prior payments of individual and employer contributions, the Commonwealth and ERS respectfully request that the Claims to Be Disallowed be disallowed in their entirety.

30.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Three Hundred Eighty-Eighth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Claims Filed by AEELA*, dated August 20, 2021, attached hereto as **Exhibit B**.

## NOTICE

31.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Debtors are providing notice of this Three Hundred Eighty-Eighth Omnibus Objection to (a) the individual creditors subject to this Three Hundred Eighty-Eighth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Fourteenth*

*Amended Case Management Procedures* [ECF No. 15894-1]), which is available on the Debtors'
case website at https://cases.primeclerk.com/puertorico. The notice for this Three Hundred
Eighty-Eighth Omnibus Objection is attached hereto as **Exhibit C**. Spanish translations of the
Three Hundred Eighty-Eighth Omnibus Objection and all of the exhibits attached hereto are being
filed with this objection and will be served on the parties. The Debtors submit that, in light of the
nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

32.     This Three Hundred Eighty-Eighth Omnibus Objection is limited to the grounds
stated herein. Accordingly, it is without prejudice to the rights of the Debtors or the rights of any
other party in interest in the Title III Cases to object to the Claims to Be Disallowed or any other
claims on any ground whatsoever. The Debtors expressly reserve all further substantive or
procedural objections. Nothing contained herein or any actions taken pursuant to such relief is
intended or should be construed as: (a) an admission as to the validity of any claim against the
Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases
to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request
or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of
the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in
the Title III Cases under PROMESA, the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

33.     No prior request for the relief sought in this Three Hundred Eighty-Eighth Omnibus
Objection has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Debtors such other and further relief as is just.

Dated: August 20, 2021
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Ricardo Burgos Vargas*
Ricardo Burgos Vargas
USDC núm. 218210
**A&S LEGAL STUDIO, PSC**
434 Ave. Hostos
San Juan, PR 00918
Tel.:  (787) 751-6764
Fax:  (787) 763-8260

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico*

15

**Fecha límite para responder: 20 de septiembre de 2021 a las 4:00 p.m. (AST)**
**Fecha de la vista: 6 de octubre de 2021, a las 9:30 a.m. (AST)**

> **REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS**
**PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*: | PROMESA |
| | Título III |
| JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, | Núm. 17 BK 3283-LTS |
| como representante del | (Administrado Conjuntamente) |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*., | **La presente radicación guarda relación con el ELA y el SRE.** |
| Deudores.[1] | |

**TRICENTÉSIMA OCTOGÉSIMA OCTAVA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DEL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES RADICADAS POR AEELA**

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA") y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE", y junto con el ELA, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de los Deudores conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican esta tricentésima octogésima octava objeción global (la "Tricentésima octogésima octava objeción global") en la que pretenden que se rechacen en su totalidad reclamaciones radicadas por la Asociación de los Empleados del ELA ("AEELA"), con respecto a las cuales ni el ELA ni el SRE son responsables, como se establece en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas"). En apoyo de la Tricentésima octogésima octava objeción global, el ELA manifiesta respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

A.      **Órdenes de Fecha Límite en el Caso de Título III del ELA**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

2

conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el SRE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del SRE", y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de los Casos de Título III únicamente con fines procesales. ECF núm. 537.

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite").[3]  Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

B.      **AEELA**

5.      AEELA es una asociación de empleados del Gobierno y fue creada por la Ley núm. 133 de 28 de junio de 1966, según enmendada. AEELA fue creada "para fomentar el ahorro en los empleados y miembros pensionados cubiertos de la Asociación; establecer planes de seguro, incluido seguro de vida; conceder préstamos, brindar a empleados y miembros pensionados viviendas y centros hospitalarios donde dichas personas pueden recibir tratamiento para sí y para sus familias; y perseguir (a través de todos los medios y recursos) la mejora y el progreso físicos, moral y financiero de sus miembros, tanto de manera individual como colectivamente . . . ." 3 L.P.R.A. § 9002. De acuerdo con su mandato, AEELA ofrece a sus miembros productos financieros, lo que incluye pólizas de seguro de vida, cuentas de ahorro y préstamo, cuentas individuales de retiro, préstamos personales e hipotecarios, tarjetas de crédito y otros servicios financieros similares. *Véase* 3 L.P.R.A. § 9004; aeela.com. AEELA es una entidad aparte con su propia personalidad jurídica que "retendrá su personalidad jurídica y capacidad para demandar y ser demandada". 3 L.P.R.A. § 9002.

C.      **El SRE y sus reformas operativas**

6.      El SRE es un *trust* establecido por el ELA en 1951 para fomentar el bienestar económico de los empleados públicos. El SRE es una agencia gubernamental, aparte e independiente del Gobierno del ELA y de sus demás instrumentalidades. *Véase* 3 L.P.R.A. § 775. El SRE fue creado para administrar el pago de las pensiones y otros beneficios a funcionarios y empleados del Gobierno del ELA, miembros y empleados de la Asamblea Legislativa de Puerto Rico (la "Legislatura") y funcionarios y empleados de corporaciones públicas y municipios. *Véase* 3 L.P.R.A. § 761.

7.     Más de 260,000 retirados y empleados activos han participado en el SRE y dependido de él en cuanto a sus beneficios de retiro y otros beneficios. Muchos de esos beneficiarios han dependido de los pagos del SRE como su principal fuente de ingresos de retiro.

8.     Conforme a la Ley 447 del 15 de mayo de 1951 (codificada, según enmienda, en 3 L.P.R.A. §§ 761–788) (la "Ley Habilitante"), todos los empleados públicos cuyos beneficios de retiro fueran administrados por el SRE debían recibir beneficios definidos calculados sobre la base de una fórmula legal que tomaba en consideración factores que incluían el salario y los años de servicio del empleado. *Véase* 3 L.P.R.A. § 761, *et seq*.

9.     El SRE estuvo financiado principalmente por aportaciones patronales (las "Aportaciones Patronales"), cuyo monto se determinaba por ley conforme a una fórmula basada sobre el monto de la nómina del empleado activo que los patronos públicos participantes pagaran a lo largo de cierto período de tiempo (y no sobre la base de pagos realizados, o por realizarse, a los retirados). Los patronos cubiertos por el SRE incluían al ELA, sus instrumentalidades y municipios, pero excluían, entre otros, a la AEE, la UPR, el Departamento de Educación y la judicatura. AEELA era un patrono participante en el SRE y se encargaba de realizar aportaciones en nombre de los empleados cubiertos por el SRE.

10.     Desde un principio, el SRE estuvo infrafinanciado y, tras muchos intentos fallidos de reforma, el SRE no ha vuelto a ser solvente, por lo que el 21 de mayo de 2017 radicó una petición conforme al Título III de PROMESA. *Véase supra* ¶ 3.

11.     Tras la radicación por el SRE conforme al Título III, el 25 de junio de 2017, la Legislatura adoptó la Resolución conjunta relativa a otras asignaciones para el año fiscal 2017-2018 (la "Resolución Conjunta 188") y el 23 de agosto de 2017 el Gobernador Rosselló autorizó la promulgación de la Ley 106-2017 (la "Ley 106"). En el momento de la aprobación de la Ley

106, el SRE estaba "al borde de la insolvencia, lo cual quiere decir que el pago de las pensiones a nuestros retirados peligra gravemente si no actuamos con celeridad". Ley 106, Exposición de motivos, en 10. En consecuencia, la Ley declaró al SRE "en un estado de emergencia financiera", a consecuencia del cual "se estima que para agosto de 2017 [el SRE] dejará de tener la liquidez necesaria para cumplir con sus obligaciones". *Id.* § 1.3. Tras haber "analizado cuidadosamente" "todas las opciones disponibles y viables para atender la crisis actual del [SRE]", el Gobierno determinó que sería "razonable y necesario que el Fondo General asumiera la responsabilidad de cubrir los pagos que [el SRE fuera] incapaz de realizar a nuestros pensionados. . . . De lo contrario, nuestros retirados se verían privados de sus pensiones, con todas las consecuencias que esto supondría tanto para ellos como para el Gobierno y la sociedad en general". *Id.* En consecuencia, la Ley 106 "establece un sistema conocido en inglés como '*pay-as-you-go*' (pago por uso), por medio del cual se seguirán realizando desembolsos para todas las pensiones actuales del [SRE] utilizando recursos del Fondo General". *Id.*, Exposición de motivos, en 11; *véase también id.* § 1.5.

12.    Juntas la Ley 106 y la Resolución Conjunta 188 (conjuntamente, la "Legislación Posterior a la Petición") reformaron el sistema de retiro de Puerto Rico al a) hacer que el ELA asumiera las obligaciones del SRE en cuanto al pago de pensiones, b) hacer que los patronos no relacionados con el ELA reembolsaran al ELA los pagos (los "Pagos PayGo") efectivamente realizados por el ELA a los pensionados actuales de dichos patronos, y c) eliminar las obligaciones de los patronos de realizar aportaciones al SRE (puesto que el SRE ya no sería responsable de pagar beneficios). *Véase* la Ley 106, §§ 2.1(b), 2.4(e); J.R. 188, § 4. Aunque las aportaciones patronales al SRE fueron eliminadas, "los municipios, la Rama Legislativa, las Corporaciones Públicas, el Gobierno y la Administración de los Tribunales tendrán la obligación de pagar la

6

Cuota "PayGo" según corresponda a cada uno de ellos para mantener la Cuenta de Pago de Pensiones Acumuladas". *Véase* la Ley 106, § 1.4. La Cuota "PayGo" la "crea e impone la AAFAF y la pagan el Gobierno, los Municipios, la Rama Judicial, la Rama Legislativa, las Corporaciones Públicas y otras entidades que sean consideradas patronos en virtud del" SRE, y "equivaldrá al monto efectivamente pagado a los Pensionados y Beneficiarios de cada entidad cubierta". *Id.* § 1.6(g), 2.1(b).

13.     La Ley 106 también derogó la Ley 211 de 2015, conocida como la "Ley del Programa de Preretiro Voluntario", que ofrecía la oportunidad de "preretiro" a determinados empleados elegibles. *Id.* § 7.1(a). La Ley del Programa de Preretiro Voluntario se aprobó "con el fin de lograr ahorros importantes en los gastos gubernamentales por concepto de nómina y beneficios marginales, así como para llevar a cabo una reestructuración organizacional y sistemática que permita la concentración de recursos para maximizar los servicios . . . ." 3 L.P.R.A. § 9262. Los preretirados tenían derecho a recibir, entre otras cosas, 1) el sesenta por ciento(60%) de su retribución promedio al 31 de diciembre de 2015, hasta alcanzar la edad de 61 años; 2) el pago de vacaciones y licencias por enfermedad no utilizadas desde la afiliación al programa; y 3) aportaciones patronales a las pensiones del empleado, al Seguro Social y a Medicare. *Id.* en § 9625. AEELA era participante en el Programa de Preretiro Voluntario, y algunos de sus empleados aprovecharon la oportunidad de preretiro que les brindaba el programa. Aunque la Ley 106 derogó el programa, dicha Ley también garantizó "todos los derechos y obligaciones establecidos conforme a [la Ley del Programa de Preretiro Voluntario]" para los participantes en el programa. *Véase* la Ley 106, § 7.1(a).

14.     La Ley 106 también contiene una cláusula de prevalencia que estipula expresamente que sus disposiciones "prevalecerán sobre cualquier otra disposición de ley,

reglamento o norma que no estuviere en armonía" con los primeros. *Id.* § 7.10; *véase también* §
1.2 (ya que la Ley 106 fue aprobada "en el ejercicio del poder de discrecionalidad del Estado" y
como un ejercicio del poder de "aprobar leyes para la protección de la vida, la salud y el bienestar
de las Personas, y en casos de emergencias graves cuando la salud, la seguridad pública o los
servicios gubernamentales esenciales estén en un claro peligro . . . esta Ley gozará de prevalencia
sobre cualquier otra norma legal del estado".).

15.     Como consecuencia de la Legislación, a partir del 1 de julio de 2017 el SRE dejó
de recibir Aportaciones Patronales y fue liberado de la obligación de pagar beneficios de retiro.

16.     Como parte de dichas reformas, y a modo de un intercambio parcial por la asunción
por parte del ELA de las obligaciones del SRE consistentes en pagar los beneficios de retiro, el
SRE tenía la obligación de vender sus activos y transferir los ingresos obtenidos, además de
cualquier fondo disponible ya existente, al fondo general del Departamento de Hacienda de Puerto
Rico para compensar por una parte de las responsabilidades relativas a pensiones asumidas por el
ELA. *Véase* la Ley 106, § 1.4; J.R. 188, § 2. De acuerdo con ello, en 2017 el SRE transfirió al
ELA aproximadamente $190 millones de activos de cuentas de depósito.

**D.     Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones
        globales y objeciones a reclamaciones**

17.     Hasta la fecha, se han radicado aproximadamente 180,483 evidencias de
reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas
evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones
radicadas contra los Deudores, además de los montos no liquidados reclamados.

18.     De las evidencias de reclamaciones radicadas, aproximadamente 117,009 han sido
radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA.

Aproximadamente 53,214 han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no deberían haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

19.    Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a objeciones globales, b) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y c) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

20.     En aras del interés constante por resolver eficazmente cualquier evidencia de reclamación innecesaria, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

21.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado más de 15 vistas y ha dictado órdenes sobre más de 310 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 100,649 reclamaciones que reivindicaban aproximadamente $43.0 billones en responsabilidad contra el ELA, la ACT, COFINA, la AEE y el SRE fueron rechazadas y retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III.

10

22.     Esta Tricentésima octogésima octava objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

23.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

24.     La Tricentésima octogésima octava objeción global pretende que se rechacen, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, reclamaciones que pretenden recuperar del ELA y/o del SRE montos supuestamente adeudados a AEELA por el ELA y/o el SRE surgidos de la aprobación de la Ley 106 y de la transición hacia el sistema PayGo. Más concretamente, AEELA alega las siguientes responsabilidades: 1) $252,740.49 en concepto de aportaciones de AEELA al SRE conforme al Programa de Preretiro Voluntario, puesto que AEELA alega que tendrá la obligación de pagar el costo completo correspondiente a los beneficios de sus preretirados sin perjuicio de sus aportaciones anteriores; 2) $1,701,304.00 en concepto del costo actuarial a pagar por AEELA conforme al Programa de Preretiro Voluntario, según enmendada, correspondientes a pensiones a recibir por sus empleados preretirados a la edad de 61 años, que AEELA alega que estará obligada a pagar conforme a la Ley 106; 3) $153,340.85 en concepto de aportaciones individuales a pensiones realizadas por AEELA en nombre de determinados empleados preretirados conforme al Programa de Preretiro Voluntario mientras los empleados eran empleados activos de AEELA, y cuyas pensiones AEELA alega que estará obligada a pagar conforme a la Ley 106; 4) $2,044,792.64 en concepto de aportaciones individuales realizadas por empleados preretirados conforme al Programa de Preretiro Voluntario

mientras eran empleados activos de AEELA, y cuyas pensiones AEELA alega que estará obligada a pagar conforme a la Ley 106; 5) $2,108,592.00 que AEELA alega que representan su "participación en la venta de los activos del SRE", y que AEELA alega que se le adeudan porque sus aportaciones compraron los activos del SRE; y 6) $17,397,441.18 en concepto de aportaciones individuales por empleados preretirados conforme al Programa de Preretiro Voluntario mientras eran empleados activos de AEELA, y cuyas pensiones AEELA alega que estará obligada a pagar conforme a la Ley 106.

25.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Las Reclamaciones que han de ser rechazadas pretenden recuperar de los Deudores *i*) las aportaciones patronales pagadas por AEELA en nombre de empleados activos y preretirados; *ii*) las aportaciones de los empleados individuales pagadas por empleados de AEELA activos y preretirados; y *iii*) lo que, según sostiene AEELA, consiste en su cuota prorrateada de la venta de los activos del SRE, que AEELA alega que se le adeuda porque los activos del SRE se compraron, en parte, con sus aportaciones. AEELA alega además que esas presuntas responsabilidades se le deben abonar en virtud del sistema PayGo. Sin embargo, AEELA no ha identificado ningún fundamento legal con forme a la Ley 106, ni ningún otro fundamento en virtud de la legislación de Puerto Rico, para sostener su alegación de una reclamación contra los Deudores en relación con sus propias aportaciones anteriores, o las de sus empleados, al SRE, o con respecto a su supuesta "cuota" de la venta de los activos del SRE.

26.     Las Reclamaciones Rechazadas buscan recuperar de los Deudores (i) las contribuciones del empleador pagadas por AEELA en nombre de los empleados activos y prejubilados; (ii) las contribuciones individuales de los empleados pagadas por los empleados

activos y prejubilados de AEELA; y (iii) lo que AEELA sostiene es su participación prorrateada en la venta de los activos de ERS, que AEELA sostiene que se le debe porque los activos de ERS fueron comprados, en parte, usando sus contribuciones. AEELA sostiene, además, que estas supuestas obligaciones deben acreditarse a AEELA bajo el sistema PayGO. Sin embargo, AEELA para su reclamación no ha identificado ninguna base estatutaria de conformidad con la Ley 106, o cualquier otra base en la ley de Puerto Rico, para su afirmación de reclamo contra los Deudores con respecto a las contribuciones anteriores de AEELA o sus empleados a ERS, o en las supuestas "participación" de la venta de activos de ERS.

27.     La Ley 106 no dispone que la conversión a PayGo conceda una reclamación contra el ELA por parte de AEELA o cualquier otro patrono participante en el SRE en relación con sus aportaciones anteriores al SRE. La Ley 106 tampoco otorga a AEELA (ni a ningún otro patrono que haya participado en el SRE) el derecho a deducir aportaciones patronales y de los empleados previamente realizadas de su Cuota PayGo. *Véase, por ejemplo*, *Fleming c. Lind-Waldock & Co.*, 922 F.2d 20, 27 (1st Cir. 1990) (que desestima una reclamación por una aportación en el marco de un caso en el que se reclamaba una aportación conforme a la Ley de Intercambio de Productos Básicos (*Commodity Exchange Act*) puesto que "[n]o existe ningún derecho legal a demandar por una aportación" conforme a dicha ley). En su lugar, la Ley 106 especifica la forma en la que se calcula la Cuota PayGo de cada patrono participante: la Cuota PayGo "será equivalente al monto efectivamente pagado a los Pensionados y Beneficiarios de cada entidad cubierta", Ley 106, § 2.1(b), y dicha Cuota la "establecerá e impondrá la AAFAF". *Id.* § 1.6(g).

28.     El Código Civil de Puerto Rico tampoco proporciona ningún fundamento para que AEELA alegue reclamaciones contra los Deudores por sus aportaciones patronales o de los empleados anteriores. Las Reclamaciones que han de ser rechazadas y su documentación

justificativa alegan que, como AEELA dice ser una entidad privada y no recibe montos del Fondo

General, tiene derecho a reclamaciones contra los Deudores por sus aportaciones anteriores. Sin

embargo, AEELA no explica por qué su supuesto estatus privado o el hecho de que no reciba

montos del Fondo General le dan derecho a recuperar aportaciones que AEELA o sus empleados

hayan realizado al SRE cuando este último operaba como un plan de beneficios definidos. AEELA

tampoco explica por qué sus aportaciones patronales o de los empleados anteriores le otorgan una

participación patrimonial en los activos del SRE que dieran derecho a una reclamación contra el

SRE por su "participación" en la venta de dichos activos. Sin embargo, incluso si AEELA pudiera

proporcionar un fundamento para sus reclamaciones conforme a la legislación de Puerto Rico,

cualquiera de dichas reclamaciones se vería impedida por la disposición de prevalencia de la Ley

106. Permitir a los patronos participantes (por ejemplo, a AEELA) que retengan créditos

correspondientes a aportaciones anteriores realizadas al SRE, que se les reembolsen sus

aportaciones anteriores al SRE o que "participen" en la venta de los activos del SRE sería contrario

a los objetivos de la Ley 106. Dicha Ley se aprobó porque, sin perjuicio de las aportaciones

anteriores realizadas por los empleados y patronos participantes, el SRE carecía de fondos

suficientes para seguir afrontando sus obligaciones de pago a los retirados cuando dichos pagos

vencieran. El programa PayGo abordó la insolvencia del SRE al crear un sistema "PayGo" para el

pago de los beneficios de pensiones cuando estos vencieran. Si los patronos participantes

retuvieran créditos en relación con su participación anterior en el SRE, dichos créditos

desestabilizarían el programa PayGo, incrementando sustancialmente el costo del ELA para

mantener el programa, e impediría al Gobierno seguir cumpliendo con sus obligaciones frente a

los retirados conforme a lo exigido por la Ley 106. En consecuencia, incluso si AEELA

proporcionada un fundamento para una reclamación contra el ELA o el SRE en virtud de la

14

legislación de Puerto Rico que surgiera de la conversión a PayGo y del establecimiento de la Cuota PayGo, la Ley 106 impediría tal reclamación. Por último, es importante señalar que las aportaciones anteriores de AEELA y sus empleados se utilizaron para pagar a los retirados participantes en el plan del SRE, incluidos los retirados procedentes de AEELA. Permitir que AEELA recupere aportaciones anteriores o su supuesta cuota de los activos del SRE constituiría efectivamente un reembolso por parte del ELA a favor de AEELA del costo de financiamiento de las pensiones para los retirados de la propia AEELA. Ello resultaría en un enriquecimiento injusto para AEELA a expensas de un deudor de Título III.

29.     Puesto que AEELA no tiene reclamaciones ejecutables contra el SRE o el ELA en relación con sus pagos anteriores de las aportaciones individuales y patronales, el ELA y el SRE solicitan respetuosamente que las Reclamaciones que han de ser rechazadas se rechacen en su totalidad.

30.     En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Tricentésima octogésima octava objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico a Reclamaciones radicadas por AEELA*, de fecha 20 de agosto de 2021, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

31.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores notifican la presente Tricentésima octogésima octava objeción global a) a los acreedores individuales objeto de esta Tricentésima octogésima octava objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 14* [ECF núm. 15894-1]), disponibles en el sitio web de casos de los Deudores, en

15

https://cases.primeclerk.com/puertorico. La notificación de esta Tricentésima octogésima octava objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Tricentésima octogésima octava objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

32.     Esta Tricentésima octogésima octava objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas en dichos Casos de Título III, a objetar a las Reclamaciones que han de ser rechazadas o a cualesquiera otras reclamaciones sobre la base de los motivos que fueren. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas en los Casos de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fueren; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas en los Casos de Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

16

## **AUSENCIA DE SOLICITUDES PREVIAS**

33.     No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima

octogésima octava objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente*]

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

Fecha: 20 de agosto de 2021
      San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Ricardo Burgos Vargas
USDC núm. 218210
**A&S LEGAL STUDIO, PSC**
434 Ave. Hostos
San Juan, PR 00918
Tel.:  (787) 751-6764
Fax:  (787) 763-8260


[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900
*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico.*