**Hearing Date: October 6, 2021, at 9:30 AM (Atlantic Standard Time)**
**Response Deadline: September 20, 2021, at 4:00 PM (Atlantic Standard Time)**

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO
TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                         Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

---

## THREE HUNDRED SIXTY-FIFTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO MISCLASSIFIED AND OVERSTATED CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth," or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801)  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Case:17-03283-LTS   Doc#:17932   Filed:08/20/21   Entered:08/20/21 18:46:22   Desc: Main
Document   Page 2 of 22


as sole Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this three hundred sixty-fifth omnibus objection (the "Three Hundred Sixty-Fifth Omnibus Objection") to the misclassified and overstated proofs of claim listed on **Exhibit A** hereto, and in support of the Three Hundred Sixty-Fifth Omnibus Objection, respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth of Puerto Rico pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case" or the "Title III Case").

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion").  By the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3]  All ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

2

requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

**B.      Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

5.      To date, approximately 180,483 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

6.      Of the proofs of claim filed, approximately 117,009 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, failing to provide information necessary for the Debtors to determine whether the claim is valid, or asserting an incorrect or improper priority or classification.

7.      To efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B)*

*Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").   On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

8.      In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, to approve additional forms of notice, and to object to claims asserting an improper or incorrect priority or classification.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

9.      Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 15 hearings and entered orders on over 310 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Public Buildings Authority ("PBA"), and/or the Employees Retirement System of the Government of the Commonwealth of Puerto Rico

("ERS").  Based upon rulings and orders of the Court to date, approximately 100,649 claims asserting $43.0 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, PBA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

10.     This Three Hundred Sixty-Fifth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## **OBJECTIONS TO PROOFS OF CLAIM**

11.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

12.     The Three Hundred Seventy-Sixth Omnibus Objection seeks to reclassify, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(8) and the Amended Omnibus Objection Procedures, claims that assert an incorrect or improper classification and that, as a result of the manner in which Prime Clerk, LLC, records and logs proof of claim, are overstated on the claims registry in the Title III Cases.

13.     As set forth in Exhibit A hereto, the claims identified in the column titled "Claims to be Reclassified" (each a "Claim to Be Reclassified," and collectively, the "Claims to Be Reclassified")[4] incorrectly or improperly assert that they are secured and/or that they are entitled

---

[4] Certain of the Claims to Be Reclassified were previously transferred into the court-approved ADR Procedures (as defined in the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief*, as amended [ECF No. 12576, 15505]), and the Debtors are currently in the process of attempting to settle the validity and amount of such claims.  This Three Hundred Sixty-Seventh Omnibus Objection seeks solely to reclassify the Claims to Be Reclassified.  The Debtors will continue to seek to resolve the validity and amount of those claims subject to the ADR Procedures in accordance with the ADR Procedures.

to administrative expense priority pursuant to 11 U.S.C. § 503(b)(9).  Upon a reasonable review

of the Commonwealth's books and records, the Commonwealth has concluded that the Claims to

Be Reclassified are not entitled to either administrative expense priority or secured status, and

should appropriately be classified as general unsecured claims.

14.     Certain of the Claims to Be Reclassified assert entitlement to administrative

expense priority pursuant to 11 U.S.C. § 503(b)(9) (the "Incorrect Administrative Expense

Claims"), but the proof of claim and supporting documentation do not demonstrate claimant's

entitlement to such priority.  Only creditors who sold goods to the Debtors within twenty days of

the commencement of the Debtors' Title III Cases are entitled to administrative expense priority

pursuant to 11 U.S.C. § 503(b)(9).   Based on the supporting documentation submitted with the

proofs of claim, however, none of the Incorrect Administrative Expense Claims were filed by

creditors who sold goods within the required statutory time frame of twenty days prior to

commencement of the Debtors' Title III Cases.   For example, certain of the Incorrect

Administrative Expense Claims were filed by individual employees of the Commonwealth, its

agencies, or its instrumentalities, or unions representing Commonwealth employees, asserting

liabilities arising from the individual employees' employment by the Commonwealth.   Other

Incorrect Administrative Expense Claims were filed by providers of goods, but the goods

identified in the supporting documentation were received outside of the statutorily prescribed 20-

day period.

15.     Another Claim to Be Reclassified asserts entitlement to secured status (the

"Incorrect Secured Status Claims"), but the proof of claim and supporting documentation provide

no basis for the asserted secured status.   Rather, the Incorrect Secured Status Claim asserts

liabilities associated with allegedly unpaid obligations arising from a lease agreement between the

claimant and the Department of Health.  The Incorrect Secured Status Claim provides no basis, however, for its assertion that the claim is secured.

16.      In addition, because of the manner in which Prime Clerk, LLC records and logs proofs of claim, each of the Claims to Be Reclassified is overstated on the claims registry. Box 8 of the proof of claim form requests claimants provide the total amount of the claim. Other portions of the claim form allow claimants to indicate whether they believe all or a portion of their claims are entitled to secured status or priority. For example, Box 7 of the proof of claim form allows claimants to indicate whether they supply goods and/or services to the government, and if so, whether any amounts were due to claimant for the period between the Debtors' petition date and June 30, 2017; Box 10 allows claimants to indicate whether they believe all or a part of their claim is secured, and if so, the amount of the claim that is secured and the amount that is unsecured; and Box 13 allows claimants to indicate whether all or part of the claim is entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9), and if so, the amount of the claim entitled to administrative priority treatment.  In each instance of the Claims to Be Reclassified, the claimant entered the total amount they believe is owed in Box 8, but also entered the total amount owed in Boxes 7, 10, and/or 13. When Prime Clerk, LLC logged the Claims to Be Reclassified on the Title III claims registry, it interpreted each amount entered in Boxes 7, 8, 10, and/or 13 as a separate assertion of liability. As a result, the claims registry reflects that each of the Claims to Be Reclassified assert an amount that is double or triple the actual liabilities asserted in the proof of claim, as demonstrated by the total amount identified by the applicable claimant in Box 8. Accordingly, the Debtors request the Court reduce the Claims to Be Reclassified such that they assert only the total liabilities identified by the applicable claimant, as set forth in Exhibit A hereto. Failure to reduce the Claims to Be Reclassified will prejudice other claimants in these Title III

Case, as holders of the Claims to Be Reclassified may receive an unwarranted excess recovery above the liabilities actually asserted.  Further, holders of the Claims to Be Reclassified will not be prejudiced by the requested relief, because they will retain a claim against the Debtors in the total amount indicated by claimants on their proofs of claim

17.     Accordingly, because the Claims to Be Reclassified do not provide a basis for either their asserted administrative expense priority or their asserted secured status, the claims should be reclassified as general unsecured claims, each as set forth in **<u>Exhibit A</u>** hereto.  Reclassification of the Claims to Be Reclassified is necessary to avoid prejudicing other holders of general unsecured claims.  The holders of the Claims to Be Reclassified will retain a modified claim against the Debtors, as set for the in the column entitled "<u>Modified Claim</u>" on **<u>Exhibit A</u>** hereto.  Because this Three Hundred Sixty-Fifth Omnibus Objection to the Claims to Be Reclassified does not constitute an objection to the validity or amount of the Claims to Be Reclassified, the Debtors reserve their right to object to the Claims to Be Reclassified on any other grounds whatsoever.

18.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Three Hundred Sixty-Fifth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Misclassified and Overstated Claims*, dated August 20, 2021, attached hereto as **<u>Exhibit B</u>**.

### <u>NOTICE</u>

19.     In accordance with the Omnibus Objection Procedures and the Court's Notice Order, the Debtor has provided notice of this Three Hundred Sixty-Fifth Omnibus Objection to (a) the individual creditors subject to this Three Hundred Sixty-Fifth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Fifteenth Amended Case Management Procedures* [ECF No. 17127-1]), which is available on the Debtor's case website at https://cases.primeclerk.com/puertorico.  A copy of the notice for this Three Hundred Sixty-Fifth

Omnibus Objection is attached hereto as Exhibit C. Spanish translations of the Three Hundred

Sixty-Fifth Omnibus Objection and all of the exhibits attached hereto are being filed with this

objection and will be served on the parties.  The Debtors submit that, in light of the nature of the

relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

20.     No prior request for the relief sought in this Three Hundred Sixty-Fifth Omnibus

Objection has been made to this or any other court.


*[Remainder of page intentionally left blank.]*

9

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Debtors such other and further relief as is just.

Dated: August 20, 2021
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
for Puerto Rico, as representative
for the Commonwealth of Puerto
Rico*

**Fecha de la vista: 6 de octubre de 2021, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 20 de septiembre de 2021 a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>　　como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,<br><br>　　　　　　　　　　　　　Deudores. [1] | PROMESA<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA.** |

### TRICENTÉSIMA SEXAGÉSIMA QUINTA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES ERRÓNEAMENTE CLASIFICADAS Y SOBREESTIMADAS

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica esta tricentésima sexagésima quinta objeción global (la "Tricentésima sexagésima quinta objeción global") a las evidencias de reclamaciones erróneamente clasificadas y sobreestimadas que aparecen en el **Anexo A** del presente documento, y en apoyo de la Tricentésima sexagésima quinta objeción global manifiestan respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

**A.**    **Órdenes de Fecha Límite**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y presentó una petición voluntaria de remedio para el Estado Libre Asociado de Puerto Rico conforme a la sección 304(a)

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA" o el "Caso de Título III").

4.       El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255][3] (la "Moción de Fecha Límite"). Por la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.       Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

5.       Hasta la fecha, se han radicado aproximadamente 180,483 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

---

[3]  Todas las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

6.     De las evidencias de reclamaciones radicadas, aproximadamente 117,009 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones, no aportar información necesaria para que los Deudores determinen si la reclamación es válida o alegar una prioridad o clasificación incorrecta o indebida.

7.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y*

*en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la
"Orden de Notificación").

8.      En aras del interés constante de resolver eficazmente cualesquiera evidencias de
reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a
procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar
objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que
pudieran incluirse en una objeción, aprobar formas de notificación adicionales y objetar a las
reclamaciones que afirmen una prioridad o clasificación indebida o incorrecta. *Notificación de
vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a
Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de
Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado*
[ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio
de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B)
exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas
de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los
"Procedimientos Enmendados relativos a Objeciones Globales").

9.      Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los
Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal celebró hasta la fecha
más de 15 vistas y ha dictado órdenes sobre más de 310 objeciones globales radicadas por el ELA,
la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la Autoridad de
Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad de Energía Eléctrica de
Puerto Rico (la "AEE"), la Autoridad de Edificios Públicos de Puerto Rico (la "AEP") y/o el
Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el

"SRE"). Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 100,649 reclamaciones que reivindicaban $43.0 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE, la AEP y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

10.     Esta Tricentésima sexagésima quinta objeción global se radica de conformidad con la Orden relativa a Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

11.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

12.     La Tricentésima sexagésima quinta objeción global pretende que se reclasifiquen reclamaciones que afirman una clasificación incorrecta o indebida, de conformidad con la regla 3007(d)(8) de las Reglas Federales del Procedimiento de Quiebra y los Procedimientos Enmendados relativos a Objeciones Globales, y que, como resultado de la forma en la que Prime Clerk, LLC anota y registra evidencias de reclamaciones, están sobreestimadas en el registro de reclamaciones en el marco de los Casos de Título III.

13.     Como se indica en el Anexo A del presente documento, las reclamaciones identificadas en la columna titulada "Reclamaciones que han de ser reclasificadas" (cada una denominada una "Reclamación que ha de ser reclasificada" y conjuntamente, las "Reclamaciones

que han de ser reclasificadas")[4] alegan incorrecta o indebidamente que están garantizadas y/o que tienen derecho a la prioridad de gastos administrativos de conformidad con el Título 11. U.S.C., § 503(b)(9). Tras una revisión razonable de los libros y registros del ELA, este último ha llegado a la conclusión de que las Reclamaciones que han de ser reclasificadas no tienen derecho ni a la prioridad de gastos administrativos ni al estatus garantizado, y deben ser clasificadas apropiadamente como reclamaciones generales no garantizadas.

14.    Algunas de las Reclamaciones que han de ser reclasificadas alegan tener derecho a la prioridad de gastos administrativos de acuerdo con el Título 11 U.S.C., § 503(b)(9) (las "Reclamaciones incorrectas de gastos administrativos"), pero la evidencia de reclamación y la documentación justificativa no demuestran el derecho del reclamante a dicha prioridad. Solo los acreedores que vendieron bienes a los Deudores dentro de un plazo de 20 días antes del inicio de los Casos de Título III de los Deudores tienen derecho a la prioridad de gastos administrativos de acuerdo con el Título 11 U.S.C., § 503(b)(9). Sin embargo, según la documentación justificativa sometida con la evidencia de reclamación, ninguna de las Reclamaciones incorrectas de gastos administrativos fue radicada por acreedores que vendieron bienes dentro del plazo legalmente establecido de 20 días antes del inicio de los Casos de Título III de los Deudores. Por ejemplo, algunas de las Reclamaciones incorrectas de gastos administrativos fueron radicadas por empleados individuales del ELA, sus agencias o sus instrumentalidades, o por sindicatos que

---

[4] Determinadas Reclamaciones que han de ser reclasificadas fueron transferidas anteriormente a los Procedimientos alternativos de resolución de controversias ("ADR", por sus siglas en inglés) aprobados por el tribunal (según se define en la *Orden que A) autoriza procedimientos alternativos de resolución de controversias, B) aprueba formas de notificación adicionales y C) concede el remedio relacionado, según enmendada* [ECF núms. 12576 y 15505]), por lo que en la actualidad los Deudores se encuentran en el proceso de tratar de acordar la validez y el monto de dichas reclamaciones. Esta Tricentésima sexagésima quinta objeción global únicamente pretende reclasificar las Reclamaciones que han de ser reclasificadas. Los Deudores seguirán buscando resolver la validez y el monto de esas reclamaciones sujetas a los Procedimientos alternativos de resolución de controversias de conformidad con dichos Procedimientos.

representan a los empleados del ELA, alegando responsabilidades derivadas del empleo de los empleados individuales en el ELA. Otras Reclamaciones incorrectas de gastos administrativos fueron radicadas por proveedores de bienes, pero los bienes identificados en la documentación justificativa fueron recibidos fuera del plazo legalmente establecido de 20 días.

15.     Otra Reclamaciones que ha de ser reclasificada alega tener derecho a un estatus garantizado (las "Reclamaciones incorrectas de estatus garantizado"), pero la evidencia de reclamación y la documentación justificativa no proporcionan fundamento alguno para el estatus garantizado que se alega. En su lugar, la Reclamación incorrecta de estatus garantizado alega responsabilidades vinculadas con unas obligaciones supuestamente no pagadas surgidas de un contrato de arrendamiento entre el reclamante y el Departamento de Salud. Sin embargo, la Reclamación incorrecta de estatus garantizado no proporciona ningún fundamento para apoyar su alegación de que la reclamación está garantizada.

16.     Además, debido a la forma en la que Prime Clerk, LLC anota y registra las evidencias de reclamaciones, cada una de las Reclamaciones que han de ser reclasificadas está sobreestimada en el registro de reclamaciones. La Casilla 8 del formulario de la evidencia de reclamación pide que los reclamantes proporcionen el monto total de la reclamación. Otras partes del formulario de reclamación permiten a los reclamantes indicar si consideran que toda o parte de sus reclamaciones tienen derecho al estatus garantizado o a la prioridad. Por ejemplo, la Casilla 7 del formulario de la evidencia de reclamación permite a los reclamantes indicar si proveen productos y/o servicios al Gobierno, y de ser así, si se adeudaba algún monto al reclamante por el período entre la fecha de petición de los Deudores y el 30 de junio de 2017; la Casilla 10 permite a los reclamantes indicar si consideran que toda o parte de su reclamación está garantizada, y de ser así, el monto de la reclamación que está garantizado y el monto que no lo está; y la Casilla 13

permite a los reclamantes indicar si toda o parte de la reclamación tiene derecho a prioridad administrativa conforme al Título 11 U.S.C., § 503(b)(9), y de ser así, el monto de la reclamación que tiene derecho al tratamiento de prioridad administrativa. En cada caso de las Reclamaciones que han de ser reclasificadas, el reclamante introdujo en la Casilla 8 el monto total que consideraba que se le adeudaba, pero también introdujo el monto total adeudado en las Casillas 7, 10 y/o 13. Cuando Prime Clerk, LLC registró las Reclamaciones que han de ser reclasificadas en el registro de reclamaciones de Título III, interpretó cada monto introducido en las Casillas 7, 8, 10 y/o 13 como alegaciones de responsabilidad aparte. En consecuencia, el registro de reclamaciones refleja que cada una de las Reclamaciones que han de ser reclasificadas alega un monto que está duplicado o triplicado con respecto a las responsabilidades reales alegadas en la evidencia de reclamación, según se demuestra por el monto total que el reclamante en cuestión identifica en la Casilla 8. Por lo tanto, los Deudores solicitan que el Tribunal reduzca las Reclamaciones que han de ser reclasificadas de tal manera que solo aleguen las responsabilidades totales identificadas por el reclamante en cuestión, según se establece en el Anexo A del presente documento. Si las Reclamaciones que han de ser reclasificadas no se reducen, ello perjudicaría a otros reclamantes en el marco de estos Casos de Título III, puesto que los titulares de las Reclamaciones que han de ser reclasificadas podrían recibir una recuperación excesiva no justificada por encima de las responsabilidades realmente alegadas. Además, los titulares de las Reclamaciones que han de ser reclasificadas no se verán perjudicados por el remedio solicitado, ya que mantendrán una reclamación contra los Deudores por el monto total indicado por los reclamantes en sus evidencias de reclamaciones.

17.    En consecuencia, puesto que las Reclamaciones que han de ser reclasificadas no proporcionan fundamento alguno para la prioridad de gastos administrativos o para el estatus

garantizado que alegan, las reclamaciones deben ser reclasificadas como reclamaciones generales no garantizadas, cada una de ellas como se establece en el **Anexo A** del presente documento. La reclasificación de las Reclamaciones que han de ser reclasificadas es necesaria para no perjudicar a otros titulares de reclamaciones generales no garantizadas. Los titulares de las Reclamaciones que han de ser reclasificadas mantendrán una reclamación modificada contra los Deudores, tal y como se establece en la columna titulada "Reclamación modificada" del **Anexo A** del presente documento. Puesto que esta Tricentésima sexagésima quinta objeción global a las Reclamaciones que han de ser reclasificadas no constituye una objeción a la validez o al monto de las Reclamaciones que han de ser reclasificadas, los Deudores se reservan el derecho a oponerse a las Reclamaciones que han de ser reclasificadas sobre la base de cualesquiera otros motivos que fueren.

18.     En apoyo de lo anterior, los Deudores invocan la Declaración de Jay Herriman en apoyo de la Tricentésima sexagésima quinta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones erróneamente clasificadas y sobreestimadas, de fecha 20 de agosto de 2021, adjunta al presente como **Anexo B**.

## **NOTIFICACIÓN**

19.     De conformidad con los Procedimientos relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el Deudor ha notificado la presente Tricentésima sexagésima quinta objeción global a) a los acreedores individuales objeto de esta Tricentésima sexagésima quinta objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 15* [ECF núm. 17127-1]), disponibles en el sitio web de casos del Deudor, en https://cases.primeclerk.com/puertorico. Una copia de la notificación relativa a esta Tricentésima sexagésima quinta objeción global se adjunta al presente como Anexo C. Las traducciones al español de la Tricentésima sexagésima quinta

10

objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con esta

objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza del remedio

solicitado, no es necesario enviar ninguna otra notificación.

## <u>AUSENCIA DE SOLICITUDES PREVIAS</u>

20.     No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima

sexagésima quinta objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente.*]

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la Orden Propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

Fecha: 20 de agosto de 2021
     San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico*