**NATBONY DECLARATION**
**EXHIBIT 11**

# LOAN AGREEMENT

This **LOAN AGREEMENT**, dated as of August 27, 2010 by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender"),

## W I T N E S S E T H

**WHEREAS**, the Authority is in need of obtaining an emergency financing to pay collateral posting requirement on fixed payer swaps associated to its Floating Rate Notes (FRNs), Series N;

**WHEREAS**, on February 15, 2007 the Authority issued Series N consisting of $389,060,000 in FRNs, subject to an interest rate of 67% of three month LIBOR plus 0.53%, and maturing in 2041 and 2045 (the "Authority FRNs"). As of today, the market value of the Authority FRNs is significantly below par due to the historically low levels of LIBOR and lack of liquidity in this particular product;

**WHEREAS**, on August 25, 2010 the Authority received a collateral posting requirement from Citibank, the Counterparty, demanding the amount of $21,495,904 due on August 30, 2010;



**WHEREAS**, as a result of the above mentioned the Authority has requested that the Bank provide such financing on an interim basis to cover any collateral posting requirement on the fixed payer swaps associated to the Authority FRNs and costs related to the financing;

**WHEREAS**, the Authority intends to repay this interim financing with the proceeds of a future bond issuance of the Authority, or any other available resources of the Authority;

**WHEREAS**, the Bank is willing to provide such financing, but in an amount not to exceed $45,000,000 in accordance with the terms and conditions herein below set forth, which the Bank understands will be enough to cover the immediate and urgent need of funds of the Authority;

**WHEREAS**, the Borrower and the Lender intend that this Loan Agreement and the Loan be subject to the terms of the Fiscal Oversight Agreement, dated as of July 6, 2009, as may be amended from time to time, between the Lender and the Borrower (the "Fiscal Oversight Agreement");

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Subject to the terms and conditions contained herein, the Lender hereby agrees to make non-revolving advances to the Borrower (each, an "Advance") under a non-revolving line of credit in an aggregate principal amount not to exceed **FORTY FIVE MILLION**

**DOLLARS ($45,000,000)** (the "Loan") for the sole purpose of paying collateral posting requirements on the fixed payer swaps associated to the Authority FRNs and to cover costs related to this financing.

2. The Loan shall be evidenced by a Promissory Note in an aggregate principal amount of not to exceed **FORTY FIVE MILLION DOLLARS ($45,000,000)**. The Promissory Note shall be substantially in the form attached hereto as <u>Exhibit A</u>, subscribed on this same date by the Borrower and payable to the order of the Lender. Each borrowing made by the Borrower under Section 1 above (a "Borrowing") shall reduce the amount of the Loan by the principal amount of such Borrowing.

3. Unless otherwise agreed to by the Lender, the Borrower may request an Advance in writing by not later than 11:00 a.m. (Puerto Rico time) at least three (3) Banking Days prior to the date of the proposed Advance by an authorized representative of the Borrower. The Lender shall fund the requested Advance on the date requested in such notice (which must be a Banking Day) and indicate under which Note the Advance is been funded. Each request for an Advance given by the Borrower to the Lender shall be in the form attached hereto as <u>Exhibit B</u>. A request for an Advance from the Borrower, once received by the Lender, shall be irrevocable and binding on the Borrower. For the purposes of this Loan Agreement, "Banking Day" means any day on which commercial banks are open for business in San Juan, Puerto Rico.



4. The principal amount of the Loan shall mature and be due and payable on August 27, 2011. or upon the termination of the swap agreement. Said principal amount shall be payable solely from proceeds of bonds to be issued by the Authority pursuant to the provisions of the respective sections of the Resolutions; or from any available resources of the Authority. Each Advance shall bear interest daily from the date of disbursement until paid in full at a fluctuating annual rate of interest equal to one and one half percent (1.5%) over and above the Prime Rate, as determined from time to time in good faith by the Lender, or, upon written notice to the Borrower, at a variable rate of interest, which interest rate may be revised quarterly, per annum equal to the Lender's cost of funding for variable rate loan transactions or the cost of any other obligations or source of funds used to fund the Advance. For purposes of the preceding sentence, the cost of funding shall mean the applicable cost of any source of funds used to fund the Loan, plus in either case, a required margin cost. Initially, this required margin cost will be equal to 150 basis points. The required margin cost may be revised from time to time by the Lender to such an extent that when added to the applicable cost of funds, the interest rate so determined and applicable to an Advance will provide for a total coverage of what the Lender determines to be its "all-inclusive" funding costs. For purposes of this Loan Agreement, the applicable interest rate shall not exceed twelve (12) percent and shall not be less than six (6) percent.

Anything hereunder to the contrary notwithstanding, and without prejudice to any remedies of the Lender provided hereunder or at law or in equity, the interest rate applicable to the outstanding principal amount of each Advance during any period when an Event of Default shall have occurred and be continuing shall be four percent (4.0%) over the otherwise applicable interest rate (the "Default Rate").

26522

Interest shall be payable monthly in arrears not later than the tenth Banking Day following receipt from the Bank of the statement referred to in the next sentence of this paragraph, from any available moneys of the Authority. Each month the Bank shall furnish to the Authority a written statement showing the amount of interest due and payable by the Authority on all outstanding Advances for the preceding month. The Loan shall be junior and subordinate to outstanding bonds of the Authority and shall be subject to certain other terms and conditions, as set forth in this Loan Agreement. Payment of principal and interest on the Loan shall be made in any coin or currency of the United States of America, which at the time of payment shall be legal tender for the payment of public and private debts.

5. The Borrower will pay a fee equal to .25% of the principal amount of the Loan on or prior the closing date.

6. If there is no disbursement activity on this Loan for a period of six months after its approval by the Board of Director of the Bank, the loan shall be cancelled automatically.

7. If the Borrower (i) issues and sells bonds, notes or other evidences of indebtedness; or (ii) enters into a concession agreement or other form of public-private partnership with respect to any of its assets pursuant to the provisions of Act 29 of June 8, 2009, the Public Private Partnerships Act; in each case in one or more transactions yielding aggregate net proceeds in an amount equal to or greater than the amount of then outstanding Advances, the Borrower shall on the day of such sale (or if a series of sales, on the day of each such sale), prepay all then outstanding advances; provided, however, that no prepayment shall be required in connection with the refunding of indebtedness existing on the date hereof and set forth in <u>Schedule 9</u> and extensions, renewals or replacement of such indebtedness that do not increase the outstanding principal amount thereof.

The Borrower shall use reasonable commercial efforts to issue and sell bonds, notes or other evidences of Indebtedness in one or more transactions yielding aggregate net proceeds sufficient to require the Borrower to prepay the outstanding principal amount of Loan as set forth above, as soon as practical but no later than the Maturity Date without the Lender's consent.

8. The Borrower shall have the right at any time and from time to time to prepay any Borrowing in whole or in part, without penalty or premium, subject to prior notice in accordance with the next sentence. The Borrower shall notify the Lender by telephone (confirmed by fax) of any prepayment hereunder not later than 11:00 a.m., Puerto Rico time, five (5) Business Days before the date of prepayment. Each such notice shall be irrevocable and shall specify the prepayment date and the principal amount of each Borrowing or portion thereof to be prepaid. Each prepayment of a Borrowing shall be made to the Lender and applied ratably to the Advances included in the prepaid Borrowing. Prepayments shall be applied first to interest due and payable if any, and then to principal of the Loan.

9. This Loan Agreement and the Loan are subject to the terms of the Fiscal Oversight Agreement. The Lender and the Borrower agree to execute any required amendments to the Fiscal Oversight Agreement to evidence their agreement. The Borrower shall from time to

26522

time, upon request by the Lender, promptly provide the Lender with such information as to its finances and operations as the Lender shall reasonably request pursuant to the terms of the Fiscal Oversight Agreement.

10. No amendment or waiver of any provisions of this Agreement or consent to any departure by the Borrower herefrom shall be effective unless the same shall be in writing and signed by the Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

11. The representations and warranties made by the Borrower to the Lender under that certain Credit Agreement, dated as of July 6, 2009 (the "Credit Agreement"), by and between the Borrower and the Lender, as lender and administrative agent are hereby incorporated into this Loan Agreement as made on the date hereof.

12. If any of the following events ("Events of Default") shall occur:

(a) the Borrower shall fail to pay any principal of any Advance or any interest on any Advance when and as the same shall become due and payable, whether at the due date thereof or otherwise;

(b) the Borrower shall fail to pay any fee or any other amount (other than an amount referred to in clause (a) of this Article) payable under this Loan Agreement when and as the same shall become due and payable, and such failure shall continue unremedied for a period of three (3) Business Days;

(c) the Borrower shall become unable, admit in writing its inability or fail generally to pay its debts as they become due;

(d) the Borrower shall have defaulted in its obligations under the Fiscal Oversight Agreement, but only for so long as the Bank continues to be a lender hereunder; or

(e) the occurrence of an event of default under the Credit Agreement, the Indenture or any Bond Resolution (as defined in the Credit Agreement); or any other financing provided by the Lender

then, and in every such event, and at any time thereafter during the continuance of such event, the Lender shall, by notice to the Borrower, take either or both of the following actions, at the same or different times:  (i) terminate the Loan immediately, and (ii) declare the Advances then outstanding to be due and payable in whole (or in part, in which case any principal not so declared to be due and payable may thereafter be declared to be due and payable) and thereupon the principal of the Advances and other amounts so declared to be due and payable, together with accrued interest thereon and all fees and other obligations of the Borrower accrued hereunder, shall become due and payable immediately, without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Borrower.

26522

In case of recourse to the courts by the Lender in order to collect the whole or any portion of the principal or interest due, the Borrower agrees to pay a liquidated sum equal to 10% of the amount of the Loan to cover expenses of such proceedings, court costs, disbursements and attorney's fees, which amount will become immediately due and payable upon the filing of such judicial proceedings.

13. The Borrower waives the requirements of demand, presentment, protest, notice of dishonor, and, in general, any other legal formality.

14. Any notices which may be given to either party hereunder shall be in writing, and if addressed to the Lender, sent to the offices of the Lender located at Roberto Sánchez Vilella Government Center, de Diego Avenue, San Juan, Puerto Rico, 00940, Attention: Executive Vice President of Financing and Treasury, or to such other address or person as the Lender may hereafter notify the Borrower in writing, and if addressed to the Borrower, sent to the address of the Borrower: Puerto Rico Highway and Transportation Authority, Roberto Sánchez Vilella Government Center, de Diego Avenue, San Juan, Puerto Rico, 00940, Attention: Executive Director, or such other address or person as the Borrower may hereafter notify the Lender in writing. Any such notice, if delivered personally or by facsimile transmission, shall be effective on the date when given, and if sent by mail, shall be effective three (3) Banking Days after posting.

15. This Loan Agreement, together with the Note, the authorizing resolutions and the other documents delivered by the parties in connection with the closing of the Loan, expresses the entire agreement of the parties with respect to the transactions contemplated hereby.

16. This Loan Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns. The Lender may assign to any other financial institution all or any part of, or any interest in, the Lender's right hereunder and in the Advances, and to the extent of such assignment, such assignee shall have the same rights against the Borrower hereunder as does the Lender. The Borrower may not assign any of its rights nor delegate any of its obligations hereunder without the Lender's prior written consent. This Loan Agreement shall be governed by, and the rights and obligations of the parties hereunder shall be construed in accordance with, the laws of the Commonwealth of Puerto Rico.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

26522

**IN WITNESS THEREOF**, the Borrower and the Lender have caused this Agreement to be executed and delivered by their respective officers thereunto duly authorized, as of the date first above written.

GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO

By: _____
Fernando L. Batlle
Executive Vice President of Financing and Treasury

PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY

By: _____
Rubén A. Hernández Gregorat
Secretary of Transportation and Public Works and Executive Director

Affidavit No. 177

Acknowledged and subscribed before me by Rubén A. Hernández Gregorat as Secretary of Transportation and Public Works and Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on August 27, 2010.

_____
Notary Public

Affidavit No. 413

Acknowledged and subscribed before me by Fernando L. Batlle Hernaiz, as Executive Vice President of Financing and Treasury of Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on August 27, 2010.



_____
Notary Public

26522

## FIRST AMENDMENT TO LOAN AGREEMENT

This **FIRST AMENDMENT TO LOAN AGREEMENT**, dated August 25th 2011 by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender").

### WITNESSETH

**WHEREAS**, on August 27, 2010 the Authority and the Bank executed a Loan Agreement (the "Loan Agreement"), and corresponding promissory note, for the principal non revolving amount of **FORTY FIVE MILLION DOLLARS ($45,000,000)** (the "Loan"), for the purpose of obtaining an emergency financing to pay collateral posting requirement on fixed payer swaps associated to its Floating Rate Notes (FRNs), Series *N* issued on February 15, 2007;

**WHEREAS**, the Authority has requested an amendment to the Loan Agreement to increase the amount of the Loan to cover: (a) payment of additional collateral as a result of continuous volatility in the market; (b) interests on the Loan until its maturity; and, (c) the financial services fee payable to the Lender. Also, the Authority has requested the extension of the maturity date of the Loan;

**WHEREAS**, pursuant to Resolution 9520, adopted by the Board of Directors of the Bank on June 15, 2011, and Resolution 9589, adopted by the Board of Directors of the Bank on August 17, 2011, the Bank has authorized the increase of the Loan by the sum of $32,011,799.88, for a total amount not to exceed $77,011,799.88, and the extension of the maturity date, subject to certain terms and conditions;



**WHEREAS**, pursuant to Resolution 2011-49 and Resolution 2011-50, both issued by the Secretary of the Puerto Rico Department of Transportation and Public Works on August 25,2011, the Authority has been authorized to agree to the increase in the amount of the Loan and the extension of the maturity date of the Loan, and accept all other terms and conditions required by the Bank;

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The Sections 1 and 2 of the Loan Agreement are amended to read as follows:

"1. Subject to the terms and conditions contained herein, the Lender hereby agrees to make non-revolving advances to the Borrower (each, an "Advance") under a non-revolving line of credit in an aggregate principal amount not to exceed **SEVENTY SEVEN MILLIONS ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($77,011,799.88)** (the "Loan") for the sole purpose of paying collateral posting

requirements on the fixed payer swaps associated to the Authority FRNs and to cover costs related to this financing, included the payment of accrued interests on the Loan until its maturity date.

2. The Loan shall be evidenced by a Promissory Note in an aggregate principal amount of not to exceed **SEVENTY SEVEN MILLIONS ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($77,011,799.88)**. The Promissory Note shall be subscribed on this same date by the Borrower and payable to the order of the Lender. Each borrowing made by the Borrower under Section 1 above (a "Borrowing") shall reduce the amount of the Loan by the principal amount of such Borrowing."

2. Section 4 is amended in the following manner:

"4. The principal amount of the Loan shall mature and be due and payable on January 31, 2013 or upon the termination of the swap agreement, whichever occur first. Said principal amount shall be payable solely from proceeds of bonds to be issued by the Authority pursuant to the provisions of the respective sections of the Resolutions; or from any available resources of the Authority. Each Advance shall bear interest daily from the date of disbursement until paid in full at a fluctuating annual rate of interest equal to one and one half percent (1.5%) over and above the Prime Rate, as determined from time to time in good faith by the Lender, or, upon written notice to the Borrower, at a variable rate of interest, which interest rate may be revised quarterly, per annum equal to the Lender's cost of funding for variable rate loan transactions or the cost of any other obligations or source of funds used to fund the Advance. In view of the preceding sentence, the cost of funding shall mean the applicable cost of any source of funds used to fund the Loan, plus in either case, a required margin cost. Initially, this required margin cost will be equal to 150 basis points or 1.5%. The required margin cost may be revised from time to time by the Lender to such an extent that when added to the applicable cost of funds, the interest rate so determined and applicable to an Advance will provide for a total coverage of what the Lender determines to be its "all-inclusive" funding costs. For purposes of this Loan Agreement, the applicable interest rate shall not exceed twelve (12) percent and shall not be less than six (6) percent.

Anything hereunder to the contrary notwithstanding, and without prejudice to any remedies of the Lender provided hereunder or at law or in equity, the interest rate applicable to the outstanding principal amount of each Advance during any period when an Event of Default shall have occurred and be continuing shall be two percent (2.0%) over the otherwise applicable interest rate (the "Default Rate").

Interest shall be due and payable on maturity date, as above mentioned. Each month the Bank shall furnish to the Authority a written statement showing the amount of the accrued interest due and payable by the Authority on all outstanding Advances for the preceding month. The Loan shall be junior and subordinate to outstanding bonds of the Authority and shall be subject to certain other terms and conditions, as set forth in this Loan Agreement. Payment of principal and interest on the Loan shall be made in any coin or currency of the United States of America, which at the time of payment shall be legal tender for the payment of public and private debts."

3. If Borrower does not pay the principal amount of the Loan when it becomes due and payable, or does not pay interest when due, Lender may, at its sole option, without notice to Borrower and to the fullest extent allowed by law, set off and apply any other available moneys (including deposits of any kind) of the Borrower against any such unpaid principal amount or unpaid accrued interest.

4. Prior to any disbursement from the Loan, Borrower will provide Lender a duly executed Notice of Drawing, as established in Section 3 of the Loan Agreement, and made part of this Agreement as Exhibit A. This Exhibit A substitutes the form to request Advances attached as Exhibit B of Loan Agreement.

Borrower also agrees to provide any additional information, including copy of invoices, among other documents, as shall be required by Lender in order to process the disbursement or Advance.



5. To effect the foregoing amendment to the Loan Agreement, a First Allonge to Promissory Note is executed by the Authority, on this same date.

6. The Authority agrees to pay the Lender an amount equal to $19,005.08 as financial services fee in connection with this First Amendment to Loan Agreement, with a portion of the proceeds of the Loan.

7. All other terms and conditions of the Loan Agreement shall remain in full force and effect. The parties agree that this First Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement, and its related Promissory Note, and that all provisions not inconsistent with this First Amendment to Loan Agreement, and Promissory Note shall remain unchanged, binding and in full force and effect.

8. In the event that any provision of this First Amendment to Loan Agreement shall be held to be invalid in any circumstance, such invalidity shall not affect any other provisions or circumstances.

**[SIGNATURE PAGE FOLLOWS]**

-4-

**IN WITNESS WHEREOF,** the Borrower and the Lender have caused this First Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico.

**GOVERNMENT DEVELOPMENT BANK
FOR PUERTO RICO**

**PUERTO   RICO   HIGHWAY   AND
TRANSPORTATION AUTHORITY**

By: _____

José R. Otero Freiría
Executive Vice President

By: _____

Rubén A. Hernández Gregorat
Secretary of Transportation and
Public Works and Executive
Director   of   the   Puerto   Rico
Highway   and   Transportation
Authority

Affidavit No. 388

Acknowledged and subscribed before me by Rubén A. Hernández Gregorat as Secretary of Transportation and Public Works and Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, of legal age, married and resident of Guaynabo, Puerto Rico, and by José R. Otero Freiría, as Executive Vice President for Financing of the Government Development Bank for Puerto Rico, of legal age, married and resident of Dorado, Puerto Rico, both personally known to me.

In San Juan, Puerto Rico, on August 25, 2011.



_____
Notary Public

## SECOND AMENDMENT TO LOAN AGREEMENT

**SECOND AMENDMENT TO LOAN AGREEMENT** by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender").

## W I T N E S S E T H

**WHEREAS**, on August 27, 2010, the Authority and the Bank executed a Loan Agreement (the "Loan Agreement"), and corresponding promissory note, for the principal non revolving amount of **FORTY FIVE MILLION DOLLARS ($45,000,000)** (the "Loan"), for the purpose of obtaining an emergency financing to pay collateral posting requirement on fixed payer swaps associated to its Floating Rate Notes (FRNs), Series *N* issued on February 15, 2007;

**WHEREAS,** on August 25, 2011, the Authority and the Bank executed a First Amendment to Loan Agreement to increase the amount of the Loan to **SEVENTY SEVEN MILLIONS ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($77,011,799.88),** to cover: (a) payment of additional collateral as a result of continuous volatility in the market; (b) interests on the Loan until its maturity; and, (c) the financial services fee payable to the Lender; as well as to extend the maturity date of the Loan;

**WHEREAS,** pursuant to Resolution 9604, adopted by the Board of Directors of the Bank on September 21, 2011, the Bank authorized the conversion of the Loan from non revolving to revolving, subject to certain terms and conditions;

**WHEREAS,** pursuant to Resolution Number 2011-62 issued by the Secretary of the Puerto Rico Department of Transportation and Public Works on September 27, 2011, the Authority has been authorized to consent to the terms and conditions required by the Bank as set forth in referenced Resolution 9604;

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The Loan Agreement, as amended, is further amended to convert the Loan from a non revolving Loan to a revolving Loan.

2. To effect the foregoing amendment to the Loan Agreement, as amended, a Second Allonge to Promissory Note is executed by the Authority on this same date.

3. The Authority agrees to pay the Lender an amount equal to $37,500 as financial services fee in connection with this Second Amendment to Loan Agreement, with a portion of the proceeds of the Loan.

4. The parties agree that this Second Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement, as amended, and its related Promissory Note, as amended, and that all provisions thereof not inconsistent with this Second Amendment to Loan Agreement, and Second Allonge to Promissory Note, shall remain unchanged, binding and in full force and effect.

5. In the event that any provision of this Second Amendment to Loan Agreement shall be held to be invalid in any circumstance, such invalidity shall not affect any other.

6. Pursuant to Resolution Number 9604, adopted by the Board of Directors of the Bank on September 21, 2011, this Third Amendment to Loan Agreement is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

**[Reminder of page intentionally left blank]**
**[Signature page follows]**





-3-

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this Second Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized.

In San Juan, Puerto Rico, on September 27, 2011.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

_____
José R. Otero Freiría
Executive Vice President

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

_____
Rubén A. Hernández Gregorat
Secretary of Transportation and Public
Works and Executive Director of the
Puerto Rico Highway and
Transportation Authority

Testimony No. 276

Acknowledged and subscribed before me by Rubén A. Hernández Gregorat as Secretary of Transportation and Public Works and Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on September 27, 2011.

_____
Notary Public

Testimony No. 614 —

Acknowledged and subscribed before me by José R. Otero Freiría, as Executive Vice President for Financing of the Government Development Bank for Puerto Rico, of legal age, married and resident of Dorado, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on September 28, 2011.

_____
María de Lourdes Rodríguez
Notary Public

# THIRD AMENDMENT TO LOAN AGREEMENT

**THIRD AMENDMENT TO LOAN AGREEMENT** by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender").

## W I T N E S S E T H

**WHEREAS**, on August 27, 2010, the Authority and the Bank executed a Loan Agreement (the "Loan Agreement"), and corresponding promissory note, for the principal non revolving amount of **FORTY FIVE MILLION DOLLARS ($45,000,000.00)** (the "Loan"), for the purpose of obtaining an emergency financing to pay collateral posting requirement on fixed payer swaps associated to its Floating Rate Notes (FRNs), Series *N* issued on February 15, 2007;



**WHEREAS**, on August 25, 2011, the Authority and the Bank executed a First Amendment to Loan Agreement to increase the amount of the Loan to **SEVENTY SEVEN MILLIONS ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($77,011,799.88),** to cover: (a) payment of additional collateral as a result of continuous volatility in the market; (b) interests on the Loan until its maturity; and, (c) the financial services fee payable to the Lender; as well as to extend the maturity date of the Loan;

**WHEREAS**, on September 27, 2011, the Authority and the Bank executed a Second Amendment to Loan Agreement to convert the Loan from a non-revolving Loan to a revolving Loan;

**WHEREAS**, on December 21, 2011, the Executive Committee of the Board of Directors of the Bank adopted Resolution Number CE-2011-107, authorizing an increase to the principal amount of the Loan by the sum of **THIRTY MILLION DOLLARS ($30,000,000.00)**, to the maximum amount of **ONE HUNDRED SEVEN MILLIONS ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($107,011,799.88),** subject to certain terms and conditions;

**WHEREAS**, pursuant to Resolution Number 2011-72 issued by the Secretary of the Puerto Rico Department of Transportation and Public Works on December 29, 2011, the Authority has been authorized to consent to the terms and conditions required by the Bank as set forth in referenced Resolution Number CE-2011-107;

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The Loan Agreement, as amended, is further amended to increase the principal amount by the sum of **THIRTY MILLION DOLLARS ($30,000,000.00)**, to the maximum amount of **ONE HUNDRED SEVEN MILLIONS ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($107,011,799.88)**.

2. To effect the foregoing amendment to the Loan Agreement, as amended, a Third Allonge to Promissory Note is executed by the Authority on December 30, 2011.

3. The Authority agrees to pay the Lender an amount equal to $15,000.00 as financial services fee in connection with this Third Amendment to Loan Agreement, with a portion of the proceeds of the Loan.

4. The parties agree that this Third Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement, as amended, and its related Promissory Note, as amended, and that all provisions thereof not inconsistent with this Third Amendment to Loan Agreement, and Third Allonge to Promissory Note, shall remain unchanged, binding and in full force and effect.

5. In the event that any provision of this Third Amendment to Loan Agreement shall be held to be invalid in any circumstance, such invalidity shall not affect any other.

6. Pursuant to Resolution Number CE-2011-107, adopted by the Executive Committee of the Board of Directors of the Bank on December 21, 2011, this Third Amendment to Loan Agreement is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

**[Reminder of page intentionally left blank]**
**[Signature page follows]**

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this Third Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized. This Third Amendment to Loan Agreement shall be effective on December 30, 2011.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

_____

José R. Otero Freiría
Executive Vice President for Financing

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

_____

Rubén A. Hernández Gregorat
Secretary of Transportation and Public Works and Executive Director of the Puerto Rico Highway and Transportation Authority

Testimony No. -544-

Acknowledged and subscribed before me by José R. Otero Freiría, as Executive Vice President for Financing of the Government Development Bank for Puerto Rico, of legal age, married and resident of Dorado, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on December 29, 2011.

_____
Notary Public

Testimony No. 545-

Acknowledged and subscribed before me by Rubén A. Hernández Gregorat as Secretary of Transportation and Public Works and Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on December 30, 2011.

_____
Notary Public

# FOURTH AMENDMENT TO LOAN AGREEMENT

**FOURTH AMENDMENT TO LOAN AGREEMENT** by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender").

## W I T N E S S E T H

**WHEREAS**, on August 27, 2010, the Authority and the Bank executed a Loan Agreement (the "Loan Agreement"), and corresponding promissory note, for the principal non revolving amount of **FORTY FIVE MILLION DOLLARS ($45,000,000.00)** (the "Loan"), for the purpose of obtaining an emergency financing to pay collateral posting requirement on fixed payer swaps associated to its Floating Rate Notes (FRNs), Series *N* issued on February 15, 2007;

**WHEREAS**, on August 25, 2011, the Authority and the Bank executed a First Amendment to Loan Agreement to increase the amount of the Loan to **SEVENTY SEVEN MILLIONS ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($77,011,799.88),** to cover: (a) payment of additional collateral as a result of continuous volatility in the market; (b) interests on the Loan until its maturity; and, (c) the financial services fee payable to the Lender; as well as to extend the maturity date of the Loan;

**WHEREAS**, on September 27, 2011, the Authority and the Bank executed a Second Amendment to Loan Agreement to convert the Loan from a non-revolving Loan to a revolving Loan;

**WHEREAS**, the Authority and the Bank executed a Third Amendment to Loan Agreement, effective as of December 30, 2011, to increase the amount of the Loan by **THIRTY MILLION DOLLARS ($30,000,000),** to the maximum amount of **ONE HUNDRED SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($107,011,799.88),** subject to certain terms and conditions;

**WHEREAS**, on December 28, 2012, the Executive Committee of the Board of Directors of the Bank adopted Resolution CE-2012-87, authorizing an increase to the principal amount of the Loan by the sum of **FORTY MILLION DOLLARS ($40,000,000),** to the maximum amount of **ONE HUNDRED FORTY SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($147,011,799.88),** in order to cover payment of additional collateral, subject to certain terms and conditions;

**WHEREAS,** pursuant to Resolution Number 57 issued by the Secretary of the Puerto Rico Department of Transportation and Public Works on December 27, 2012, the Authority has been authorized to consent to the terms and conditions required by the Bank as set forth in referenced Resolution CE-2012-87.

**NOW, THEREFORE,** in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The Loan Agreement, as amended, is further amended to increase the principal amount by the sum of **FORTY MILLION DOLLARS ($40,000,000),** to the maximum` amount of **ONE HUNDRED FORTY SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($147,011,799.88)**.

2. To effect the foregoing amendment to the Loan Agreement, as amended, a Fourth Allonge to Promissory Note is executed by the Authority on December 28, 2011.

3. The Authority agrees to pay the Lender an amount equal to $20,000 as financial services fee in connection with this Fourth Amendment to Loan Agreement, with a portion of the proceeds of the Loan.

4. The parties agree that this Fourth Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement, as amended, and its related Promissory Note, as amended, and that all provisions thereof not inconsistent with this Fourth Amendment to Loan Agreement, and Fourth Allonge to Promissory Note, shall remain unchanged, binding and in full force and effect.

5. In the event that any provision of this Fourth Amendment to Loan Agreement shall be held to be invalid in any circumstance, such invalidity shall not affect any other.

6. Pursuant to Resolution CE-2012-87, adopted by the Executive Committee of the Board of Directors of the Bank on December 28, 2012, this Fourth Amendment to Loan Agreement is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

**[Signature page follows]**

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this Fourth Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized.

In San Juan, Puerto Rico, on December 28th 2012.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

_____

Ignacio Canto
Executive Vice President and Treasurer

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

_____

Harold Cortés Laclaustra
Acting Executive Assistant Director

Testimony No. _437_

Acknowledged and subscribed before me by Ignacio Canto, as Executive Vice President and Treasurer the Government Development Bank for Puerto Rico, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on December _28_, 2012.

EXENTO DEL PAGO DE ARANCEL LEY 47 DE 4 DE JUNIO DE 1982

_____
Notary Public

Testimony No. _438_

Acknowledged and subscribed before me by Harold Cortés Laclaustra as Acting Executive Assistant Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, engineer and resident of San Lorenzo, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on December _28_, 2012.

EXENTO DEL PAGO DE ARANCEL LEY 47 DE 4 DE JUNIO DE 1982

_____
Notary Public

29215

## FIFTH AMENDMENT TO LOAN AGREEMENT

**FIFTH AMENDMENT TO LOAN AGREEMENT** by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender").

### W I T N E S S E T H

**WHEREAS**, on August 27, 2010, the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") and corresponding promissory note, for the principal non revolving amount of **FORTY FIVE MILLION DOLLARS ($45,000,000.00)** (the "Loan"), for the purpose of obtaining an emergency financing to pay collateral posting requirement on fixed payer swaps associated to its Floating Rate Notes (FRNs), Series *N* issued on February 15, 2007;

**WHEREAS**, on August 25, 2011, the Authority and the Bank executed a First Amendment to Loan Agreement to extend the maturity date of the Loan up to January 31, 2013, and increase the amount of the Loan to **SEVENTY SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($77,011,799.88)** to cover: (a) payment of additional collateral as a result of continuous volatility in the market; (b) interests on the Loan until its maturity; and, (c) the financial services fee payable to the Lender;

**WHEREAS**, the Authority and the Bank executed a Second Amendment to Loan Agreement, effective as of September 28, 2011, to convert the Loan from a non-revolving Loan to a revolving Loan;

**WHEREAS**, the Authority and the Bank executed a Third Amendment to Loan Agreement, effective as of December 30, 2011, to increase the amount of the Loan by **THIRTY MILLION DOLLARS ($30,000,000)**, to the maximum amount of **ONE HUNDRED SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($107,011,799.88)**, subject to certain terms and conditions;

**WHEREAS**, on December 28, 2012, the Authority and the Bank executed a Fourth Amendment to Loan Agreement to increase the principal amount of the Loan by **FORTY MILLION DOLLARS ($40,000,000)**, to the maximum amount of **ONE HUNDRED FORTY SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($147,011,799.88)**, in order to cover payment of additional collateral, subject to certain terms and conditions;



29237

**WHEREAS**, on January 17, 2013, the Board of Directors of the Bank adopted Resolution 9953, authorizing to further extend the maturity date of the Loan and the payment of accrued interest up to January 31, 2014, subject to certain terms and conditions;

**WHEREAS**, pursuant to Resolution 2013-06 issued by the Secretary of the Puerto Rico Department of Transportation and Public Works on January 31, 2013, the Authority has been authorized to consent to the terms and conditions required by the Bank as set forth in the above referenced Resolution 9953.

**NOW**, **THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  The first sentence of Section 4 of the Loan Agreement, as amended, is amended so that it states as follows:

    "4. The principal amount of the Loan shall mature and be due and payable on January 31, 2014 or upon the termination of the swap agreement, whichever occur first."

2.  To effect the foregoing amendment to the Loan Agreement, as amended, a Fifth Allonge to Promissory Note is executed by the Authority on this same date.

3.  The Authority agrees to pay the Lender an amount equal to $55,670.60 as financial services fee in connection with this Fifth Amendment to Loan Agreement, with a portion of the proceeds of the Loan.

4.  The parties agree that this Fifth Amendment to Loan Agreement does not constitute a novation of the obligations set forth in the Loan Agreement, as amended, and its related Promissory Note, as amended, and that all provisions thereof not inconsistent with this Fifth Amendment to Loan Agreement, and Fifth Allonge to Promissory Note, shall remain unchanged, binding and in full force and effect.

5.  In the event that any provision of this Fifth Amendment to Loan Agreement shall be held to be invalid in any circumstance, such invalidity shall not affect any other.

6.  Pursuant to Resolution 9953, adopted by the Board of Directors of the Bank on January 17, 2013, this Fifth Amendment to Loan Agreement is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

29237

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this Fifth Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized.

In San Juan, Puerto Rico, on February __8__, 2013.

**GOVERNMENT DEVELOPMENT BANK     PUERTO   RICO   HIGHWAY   AND
FOR PUERTO RICO                                           TRANSPORTATION AUTHORITY**

Ian J. Figueroa Toro
Executive Vice President
and Director of Financing

Javier E. Ramos Hernández
Executive Director

Testimony No. 760

Acknowledged and subscribed before me by Ian J. Figueroa Toro, as Executive Vice President and Director of Financing of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on February __1__, 2013.

**EXENTO DEL PAGO DE ARANCEL**
**LEY 47 DE 4 DE JUNIO DE 1982**

Testimony No. 758

Acknowledged and subscribed before me by Javier E. Ramos Hernández as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, engineer and resident of Bayamón, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on February __8__, 2013.

Notary Public

29237

**EXENTO DEL PAGO DE ARANCEL**
**LEY 47 DE 4 DE JUNIO DE 1982**

## SIXTH AMENDMENT TO LOAN AGREEMENT

This **SIXTH AMENDMENT TO LOAN AGREEMENT** (the "Sixth Amendment") dated as of January 31, 2014, by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender").

### WITNESSETH

**WHEREAS**, on August 27, 2010, the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") and corresponding promissory note, for the principal non revolving amount of **FORTY FIVE MILLION DOLLARS ($45,000,000.00)**, for the purpose of obtaining an emergency financing to pay collateral posting requirement on fixed payer swaps associated to its Floating Rate Notes (FRNs), Series N issued on February 15, 2007 (the "Loan");

**WHEREAS,** on August 25, 2011, the Authority and the Bank executed a First Amendment to Loan Agreement to extend the maturity date of the Loan up to January 31, 2013, and increase the amount of the Loan to **SEVENTY SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($77,011,799.88)** to cover: (a) payment of additional collateral as a result of continuous volatility in the market; (b) interests on the Loan until its maturity; and, (c) the financial services fee payable to the Lender;

**WHEREAS**, the Authority and the Bank executed a Second Amendment to Loan Agreement, effective as of September 28, 2011, to convert the Loan from a non-revolving Loan to a revolving Loan;

**WHEREAS**, the Authority and the Bank executed a Third Amendment to Loan Agreement, effective as of December 30, 2011, to increase the amount of the Loan by **THIRTY MILLION DOLLARS ($30,000,000)**, to the maximum amount of **ONE HUNDRED SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($107,011,799.88)**, subject to certain terms and conditions;

**WHEREAS**, on December 28, 2012, the Authority and the Bank executed a Fourth Amendment to Loan Agreement to increase the principal amount of the Loan by **FORTY MILLION DOLLARS ($40,000,000)**, to the maximum amount of **ONE HUNDRED FORTY SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($147,011,799.88)**, in order to cover payment of additional collateral, subject to certain terms and conditions;

**WHEREAS**, on February 8, 2013, the Authority and the Bank executed a Fifth Amendment to Loan Agreement to extend the maturity date of the Loan and the payment of accrued interest up to January 31, 2014, subject to certain terms and conditions;

WHEREAS, by October 31, 2013, the Loan had an outstanding principal balance of $33,902,726.62, and accrued interests for the amount of $115,915.28;

WHEREAS, the Authority has requested, and the management of the Bank has recommended, to amend de Loan Agreement with the purpose of extending the maturity date.

WHEREAS, on November 20, 2013, the Board of Directors of the Bank adopted Resolution 10197, authorizing to extend the maturity date of the Loan and the payment of accrued interest up to January 31, 2015, subject to certain terms and conditions;

WHEREAS, pursuant to Resolution Number 2014-04, adopted by the Secretary of Transportation and Public Works on January 30, 2014, the Authority accepted the terms and conditions established by the Bank as set forth in above referenced Resolution 10197.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The first sentence of Section 4 of the Loan Agreement, as amended, is amended so that it states as follows:

    "The principal amount of the Loan shall mature and be due and payable on January 31, 2015 or upon the termination of the swap agreement, whichever occurs first."

2. To effect the foregoing amendment to the Loan Agreement, as amended, a Sixth Allonge to Promissory Note is executed by the Authority on this same date.

3. The Authority agrees to pay the Lender an amount equal to $55,670.60 as financial services fee in connection with this Sixth Amendment.

4. The parties agree that this Sixth Amendment does not constitute a novation of the obligations set forth in the Loan Agreement, as amended, and its related Promissory Note, as amended, and that all provisions thereof not inconsistent with this Sixth Amendment, and Sixth Allonge to Promissory Note, shall remain unchanged, binding and in full force and effect.

5. In the event that any provision of this Sixth Amendment shall be held to be invalid in any circumstance, such invalidity shall not affect any other.

6. Pursuant to Resolution 10197, adopted by the Board of Directors of the Bank on November 20, 2013, this Third Amendment is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

**[SIGNATURE PAGE FOLLOWS]**

-3-

IN WITNESS WHEREOF, the Borrower and the Lender have caused this Sixth Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized.

In San Juan, Puerto Rico, on January _31_, 2014.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

_____

Jorge A. Clivillés Díaz
Fiscal Agent

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

_____

Javier E. Ramos Hernández
Executive Director

Testimony No. _576_

Acknowledged and subscribed before me by Javier E. Ramos Hernández as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, engineer and resident of Bayamón, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on January _31_, 2014.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

_____
Notary Public

Testimony No. _577_

Recognized and subscribed before me by Jorge A. Clivillés Díaz as Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on January _31_, 2014.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

_____
Notary Public

30275

## SEVENTH AMENDMENT TO LOAN AGREEMENT

This **SEVENTH AMENDMENT TO LOAN AGREEMENT** (the "Seventh Amendment") dated as of February 6, 2014, by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender").

### W I T N E S S E T H

**WHEREAS**, on August 27, 2010, the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") and corresponding promissory note, for the principal non revolving amount of **FORTY FIVE MILLION DOLLARS ($45,000,000.00)**, for the purpose of obtaining an emergency financing to pay collateral posting requirement on fixed payer swaps associated to its Floating Rate Notes (FRNs), Series *N* issued on February 15, 2007 (the "Loan");

**WHEREAS**, on August 25, 2011, the Authority and the Bank executed a First Amendment to Loan Agreement to extend the maturity date of the Loan up to January 31, 2013, and increase the amount of the Loan to **SEVENTY SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($77,011,799.88)** to cover: (a) payment of additional collateral as a result of continuous volatility in the market; (b) interests on the Loan until its maturity; and, (c) the financial services fee payable to the Lender;

**WHEREAS**, the Authority and the Bank executed a Second Amendment to Loan Agreement, effective as of September 28, 2011, to convert the Loan from a non-revolving Loan to a revolving Loan;

**WHEREAS**, the Authority and the Bank executed a Third Amendment to Loan Agreement, effective as of December 30, 2011, to increase the amount of the Loan by **THIRTY MILLION DOLLARS ($30,000,000)**, to the maximum amount of **ONE HUNDRED SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($107,011,799.88)**, subject to certain terms and conditions;

**WHEREAS**, on December 28, 2012, the Authority and the Bank executed a Fourth Amendment to Loan Agreement to increase the principal amount of the Loan by **FORTY MILLION DOLLARS ($40,000,000)**, to the maximum amount of **ONE HUNDRED FORTY SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS ($147,011,799.88)**, in order to cover payment of additional collateral, subject to certain terms and conditions;

**WHEREAS**, on February 8, 2013, the Authority and the Bank executed a Fifth Amendment to Loan Agreement to extend the maturity date of the Loan and the payment of accrued interest up to January 31, 2014, subject to certain terms and conditions;

**WHEREAS**, on January 31, 2014, the Authority and the Bank executed a Sixth Amendment to Loan Agreement to extend the maturity date of the Loan and the payment of accrued interest up to January 31, 2015, subject to certain terms and conditions;

**WHEREAS**, the Authority has requested, and the management of the Bank has recommended, to further amend the Loan Agreement to authorize additional purposes under the Loan in order to cover the deficiencies of collateral swaps negotiated with Morgan Stanley and UBS.

**WHEREAS**, on March 20, 2013, the Board of Directors of the Bank adopted Resolution 10002, authorizing to cover the deficiencies of collateral swaps associated with the 2007 Series *N* and 2008 Series *A* negotiated with Morgan Stanley, and the 2008 Series *A* negotiated with UBS under the authorized purposes of the Loan, subject to certain terms and conditions;

**WHEREAS**, pursuant to Resolution Number 2014-06, adopted by the Secretary of Transportation and Public Works on February 5, 2014, the Authority accepted the terms and conditions established by the Bank as set forth in above referenced Resolution 10002.

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The Loan Agreement, as amended, is further amended to cover the deficiencies of collateral swaps associated with the 2007 Series *N* and 2008 Series *A* negotiated with Morgan Stanley, and the 2008 Series *A* negotiated with UBS under the authorized purposes of the Loan.

2. The Authority agrees to pay the Lender an amount equal to $55,670.60 as financial services fee in connection with this Seventh Amendment.

3. The parties agree that this Seventh Amendment does not constitute a novation of the obligations set forth in the Loan Agreement, as amended, and that all provisions thereof not inconsistent with this Seventh Amendment, shall remain unchanged, binding and in full force and effect.

5. In the event that any provision of this Seventh Amendment shall be held to be invalid in any circumstance, such invalidity shall not affect any other.

6. Pursuant to Resolution 10002, adopted by the Board of Directors of the Bank on March 20, 2013, this Seventh Amendment is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this Seventh Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

Jorge A. Clivillés Díaz
Executive Vice-President
and Fiscal Agent

**PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

Javier E. Ramos Hernández
Executive Director

Testimony No. _9I9_

Acknowledged and subscribed before me by Javier E. Ramos Hernández as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, engineer and resident of Bayamón, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on February _6_, 2014.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982    Notary Public

Testimony No. _920_

Recognized and subscribed before me by Jorge A. Clivillés Díaz as Executive Vice-President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on February _6_, 2014.

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

30354 v.2

## EIGHTH AMENDMENT TO LOAN AGREEMENT

This **EIGHTH AMENDMENT TO LOAN AGREEMENT** (the "Eighth Amendment") dated as of February 18, 2014, by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender").

### WITNESSETH

**WHEREAS**, on August 27, 2010, the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") and corresponding promissory note, for the principal non revolving amount of **FORTY FIVE MILLION DOLLARS** ($45,000,000), for the purpose of obtaining an emergency financing to pay collateral posting requirement on fixed payer swaps associated to its Floating Rate Notes (FRNs), Series *N* issued on February 15, 2007 (the "Loan");

**WHEREAS**, on August 25, 2011, the Authority and the Bank executed a First Amendment to Loan Agreement to extend the maturity date of the Loan up to January 31, 2013, and increase the amount of the Loan to **SEVENTY SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS** ($77,011,799.88) to cover: (a) payment of additional collateral as a result of continuous volatility in the market; (b) interests on the Loan until its maturity; and, (c) the financial services fee payable to the Lender;

**WHEREAS**, the Authority and the Bank executed a Second Amendment to Loan Agreement, effective as of September 28, 2011, to convert the Loan from non-revolving Loan to a revolving Loan;

**WHEREAS**, the Authority and the Bank executed a Third Amendment to Loan Agreement, effective as of December 30, 2011, to increase the amount of the Loan by **THIRTY MILLION DOLLARS** ($30,000,000), to the maximum amount of **ONE HUNDRED SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS** ($107,011,799.88), subject to certain terms and conditions;

**WHEREAS**, on December 28, 2012, the Authority and the Bank executed a Fourth Amendment to Loan Agreement to increase the principal amount of the Loan by **FORTY MILLION DOLLARS** ($40,000,000), up to the maximum amount of **ONE HUNDRED FORTY SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS** ($147,011,799.88), in order to cover payment of additional collateral, subject to certain terms and conditions;

1

**WHEREAS,** on February 8, 2013, the Authority and the Bank executed a Fifth Amendment to Loan Agreement to extend the maturity date of the Loan and the payment of accrued interest to January 31, 2014, subject to certain terms and conditions;

**WHEREAS,** on January 31, 2014, the Authority and the Bank executed a Sixth Amendment to Loan Agreement to extend the maturity date of the Loan and the payment of accrued interest up to January 31, 2015, subject to certain terms and conditions;

**WHEREAS,** on February 6, 2014, the Authority and the Bank executed a Seventh Amendment to Loan Agreement to authorize additional purposes under the Loan in order to cover deficiencies of collateral swaps associated with the 2007 Series *N* and 2008 Series A negotiated with Morgan Stanley and the 2008 Series *A* negotiated with UBS, subject to certain terms and conditions;

**WHEREAS,** on August 28, 2013 the Authority and the Bank executed a Loan Agreement for $61,830,000, pursuant to which they executed an Assignment and Security Agreement whereby the Authority pledged and granted in favor of the Bank the revenues allocated to it by Act No. 30 and Act No. 31 of June 25, 2013, as a source of repayment for the loan (the "Act 30 and 31 Pledge").

**WHEREAS**, the Authority has requested, and the management of the Bank has recommended to further amend the Loan Agreement to authorize additional purposes under the Loan in order to cover termination payments associated with the 2007 Series *N* and 2008 Series A swap agreements and to add an additional source of repayment from the Act 30 and Act 31 Pledge.

**WHEREAS**, on February 12, 2014, the Board of Directors of the Bank approved by unanimous consent Resolution 10243 to authorize additional purposes under the Loan in order to cover the termination payments associated with the 2007 Series *N* and 2008 Series A swap agreements, subject to certain terms and conditions and to add an additional source of repayment for the loan from the Act 30 and 31 Pledge;

**WHEREAS**, pursuant to Resolution 2014-09, adopted by the Secretary of Transportation and Public Works on February 10, 2014, the Authority accepted the terms and conditions established by the Bank set forth in above referenced Resolution 2014-09.

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agrees as follows:

1. The Loan Agreement, as amended, is further amended to authorize termination payments related to the 2007 Series *N* and 2008 Series *A* swap agreements.

2

2. The Loan Agreement, as amended, is further amended to add as an additional source of repayment, the revenues allocated by Act No. 30 and Act No. 31 of June 25, 2013, pledged and granted in favor of the Bank pursuant to that certain Assignment and Security Agreement between the Authority and the Bank dated as of August 28, 2013.

3. The parties agree that this Eighth Amendment does not constitute a novation of the obligations set forth in the Loan Agreement, as amended, and that all provisions thereof not inconsistent with this Eight Amendment, shall remain unchanged, binding and in full force and effect.

4. In the event that any provision of this Eighth Amendment shall be held to be invalid in any circumstances, such invalidity shall not affect any other.

5. Pursuant to Resolution 10243 approved by Unanimous Consent of the Board of Directors of the Bank on February 12, 2014, this Eight Amendment is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this Eighth Amendment to Loan Agreement to be executed and delivered by their respective officers to be duly authorized.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO AUTHORITY**

Jorge A. Clivillés Díaz
Executive Vice President
and Fiscal Agent

**PUERTO RICO HIGHWAY AND TRANSPORTATION**

Javier E. Ramos Hernández
Executive Director

3

Affidavit No. 449

Acknowledged and subscribed before me by Javier E. Ramos Hernández, as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married, engineer and resident of Bayamón, Puerto Rico, whom I have identified according to Article 17(c) of the Puerto Rico Notarial Act.

In San Juan, Puerto Rico, this 18ᵗʰ day of February 2014.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Affidavit No. 550

Acknowledged and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married, and resident of San Juan, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, this 18th day of February 2014.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

4

# NINTH AMENDMENT TO LOAN AGREEMENT

This **NINTH AMENDMENT TO LOAN AGREEMENT** (the "Ninth Amendment") dated as of May 20, 2015, by and between the **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Borrower") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank" or the "Lender").

## WITNESSETH

**WHEREAS**, on August 27, 2010, the Authority and the Bank executed a Loan Agreement (the "Loan Agreement") and corresponding promissory note, for the principal non revolving amount of **FORTY FIVE MILLION DOLLARS** ($45,000,000), for the purpose of obtaining an emergency financing to pay collateral posting requirement on fixed payer swaps associated to its Floating Rate Notes (FRNs), Series *N* issued on February 15, 2007 (the "Loan");

**WHEREAS**, on August 25, 2011, the Authority and the Bank executed a First Amendment to Loan Agreement to extend the maturity date of the Loan up to January 31, 2013, and increase the amount of the Loan to **SEVENTY SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS** ($77,011,799.88) to cover: (a) payment of additional collateral as a result of continuous volatility in the market; (b) interests on the Loan until its maturity; and, (c) the financial services fee payable to the Lender;

**WHEREAS**, the Authority and the Bank executed a Second Amendment to Loan Agreement, effective as of September 28, 2011, to convert the Loan from non-revolving Loan to a revolving Loan;

**WHEREAS**, the Authority and the Bank executed a Third Amendment to Loan Agreement, effective as of December 30, 2011, to increase the amount of the Loan by **THIRTY MILLION DOLLARS** ($30,000,000), to the maximum amount of **ONE HUNDRED SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS** ($107,011,799.88), subject to certain terms and conditions;

**WHEREAS**, on December 28, 2012, the Authority and the Bank executed a Fourth Amendment to Loan Agreement to increase the principal amount of the Loan by **FORTY MILLION DOLLARS** ($40,000,000), up to the maximum amount of **ONE HUNDRED FORTY SEVEN MILLION ELEVEN THOUSAND SEVEN HUNDRED NINETY NINE DOLLARS AND EIGHTY EIGHT CENTS** ($147,011,799.88), in order to cover payment of additional collateral, subject to certain terms and conditions;

**WHEREAS**, on February 8, 2013, the Authority and the Bank executed a Fifth Amendment to Loan Agreement to extend the maturity date of the Loan and the payment of accrued interest to January 31, 2014, subject to certain terms and conditions;

**WHEREAS**, on January 31, 2014, the Authority and the Bank executed a Sixth Amendment to Loan Agreement to extend the maturity date of the Loan and the payment of accrued interest up to January 31, 2015, subject to certain terms and conditions;

**WHEREAS**, on February 6, 2014, the Authority and the Bank executed a Seventh Amendment to Loan Agreement to authorize additional purposes under the Loan in order to cover deficiencies of collateral swaps associated with the 2007 Series *N* and 2008 Series *A* negotiated with Morgan Stanley and the 2008 Series *A* negotiated with UBS, subject to certain terms and conditions;

**WHEREAS**, on February 18, 2014 the Authority and the Bank executed an Eighth Amendment to Loan Agreement to authorize additional purposes under the Loan in order to cover termination payments associated with the 2007 Series *N* and 2008 Series A swap agreements and to add an additional source of repayment from the revenues allocated by Act No. 30 and Act No. 31 of June 25, 2013, pledged and granted in favor of the Bank pursuant to that certain Assignment and Security Agreement between the Authority and the Bank dated as of August 28, 2013;

**WHEREAS**, by December 31, 2014, the Loan had an outstanding principal balance of $115,440,889.93, and accrued interests for the amount of $6,015,770.98;

**WHEREAS**, the management of the Bank has recommended to further amend the Loan Agreement, as amended, with the purpose of extending the maturity date;

**WHEREAS**, on December 17, 2014, the Board of Directors of the Bank adopted Resolution 10554, authorizing to extend the maturity date of the Loan up to January 31, 2016, subject to certain terms and conditions; and

**WHEREAS**, pursuant to Resolution Number 2015-07, adopted by the Board of Directors of the Authority on January 15, 2015, the Authority accepted the terms and conditions established by the Bank as set forth in above referenced Resolution 10554.

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. The first sentence of Section 4 of the Loan Agreement, as amended, is amended so that it states as follows:

"The principal amount of the Loan shall mature and be due and payable on January 31, 2016."

2. The Executive Director of the Authority and the Secretary of the Department of Transportation and Public Works shall make a presentation to Lender's Board of Directors regarding the Authority's finances and the progress in the implementation of their medium and long term plans to expeditiously and effectively address the fiscal situation of the Authority, in addition to the new revenues that have been already enacted. This presentation shall take place prior to the disbursement by the Bank of any amount under the Loan Agreement, as amended, if there are still Loan funds available for disbursement.

3. To effect the foregoing amendment to the Loan Agreement, as amended, a Seventh Allonge to Promissory Note is executed by the Authority on this same date.

4. The Authority agrees to pay the Lender an amount equal to Fifty Five Thousand Six Hundred Seventy Dollars and Sixty Cents ($55,670.60) as financial services fee in connection with this Ninth Amendment.

5. The parties agree that this Ninth Amendment does not constitute a novation of the obligations set forth in the Loan Agreement, as amended, and that all provisions thereof not inconsistent with this Ninth Amendment shall remain unchanged, binding and in full force and effect.

6. In the event that any provision of this Ninth Amendment shall be held to be invalid in any circumstance, such invalidity shall not affect any other.

7. The President, the Executive Vice President of Financing or any Executive Vice President of the Bank, are authorized to direct the resources and revenues of the Authority allocated under Act No. 30 and Act No. 31 of June 25, 2013 for the repayment of existing loans and any other amounts that the Bank charges regarding the outstanding obligations of the Authority.

8. Pursuant to Resolution 10554, adopted by the Board of Directors of the Bank on December 17, 2014, this Ninth Amendment is intended as a declaration of intent under U.S. Treasury Department Regulation Section 1.150-2.

**[SIGNATURE PAGE FOLLOWS]**



31271

-4-

**IN WITNESS WHEREOF**, the Borrower and the Lender have caused this Ninth Amendment to Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized.

In San Juan, Puerto Rico, on May _20_, 2015.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**                     **PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY**

_____
Jorge A. Clivillés Díaz
Executive Vice President and
 Fiscal Agent

_____
Carmen A. Villar-Prados
Executive Director

Testimony No. _731_

Acknowledged and subscribed before me by Carmen A. Villar-Prados, as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, engineer and resident of Guaynabo, Puerto Rico and by Jorge A. Clivillés Díaz as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married, executive and resident of San Juan, Puerto Rico, both personally known to me.

In San Juan, Puerto Rico, on May _20_, 2015.

_____
Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

31271