**NATBONY DECLARATION**
**EXHIBIT 24**

# SDL

## Certification of Translation

State of New York  )
                   )  ss:
County of New York )

_____

This document is being provided by SDL to certify the documents listed below have been translated in accordance with SDL's terms and conditions for language services, available at https://www.sdl.com/about/terms-and-conditions/language-services.html ("Agreement").

The translations have been verified by a member of the Language Services division of SDL as being complete, created in a professional and workmanlike manner, and in accordance with the translation requirements of the Agreement.

Notwithstanding anything to the contrary in any confidentiality agreement between SDL and Client, SDL grants Client permission to make a reasonable number of copies of this certification and to: (i) retain and use these within client's organisation and within any entity owning, owned by or on common ownership with client's organisation; (ii) deliver this certification to any pertinent regulatory authority as required or requested by that authority; and/or (iii) deliver this certification to any clinical organisation with which client engages or may wish to engage concerning the provision or undertaking of clinical research studies to which the Document(s) relate.

On behalf of _____                    _____ SDL Plc
                                                                        SDL Entity

_Paul M. Martinez_ (signature)                          Paul M. Martinez
            Signature                                          Name

Team Lead                                               25 October, 2019
            Title                                              Date

**Client Name:** Wachtell, Lipton, Rosen & Katz
**Project Name/Code:** Bco. Central Corp. v. Yauco Homes, Inc., 1994 JTS/304531

| Source Document Title | Translated Document Title | Source Language | Target Language |
|---|---|---|---|
| Bco Central Corp v Yauco Homes Inc.pdf | Bco Central Corp v Yauco Homes Inc_eng-US.docx | Spanish | English |
|  |  |  |  |

Sworn to and signed before me this 25th day of October, 2019

_____
Notary Public

JENISE MUKTADIR
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01MU6292221
Qualified in Queens County
Commission Expires November 4, 2021

Page **1** of 1

1994 *JTS* [SCD] 67, 135 DPR 858, 1994 WL 909247 (P.R.)

*BANCO CENTRAL CORP.* (formerly *BANCO CENTRAL Y ECONOMÍAS*), plaintiff and appellant,

vs.

YAUCO HOMES, INC., ETC.,

defendants and appellees.

**In the Supreme Court of Puerto Rico.**

*Number:* RE-87-133

*Resolved:* May 9, 1994.

May 9, 1994.

1. CONTRACTS — IN GENERAL — REQUIREMENTS AND VALIDITY — NATURE AND REQUIREMENTS — IN GENERAL — IN GENERAL.
As a general rule, contracts only affect the parties involved, in accordance with the provisions of Art. 1209 of the Civil Code of Puerto Rico, 31 LPRA [Laws of Puerto Rico Annotated] section 3374. However, contracts are not completely void of implications for third parties.

2. ID. - ID. - INTERPRETATION - PARTIES - STIPULATIONS IN FAVOR OF THIRD PARTIES - IN GENERAL.
Article 1209 of the Civil Code, 31 LPRA. section 3374, states that a contract may contain any stipulation in favor of a third party, which may demand the performance thereof, provided that it has informed the obligor of its acceptance prior to the stipulation being revoked.

3. CONTRACT — ID. —ID. —ID. —ID. —ID.
Contracts in favor of third parties "are those that are entered into in order to directly or indirectly attribute a right to a third party that has neither directly nor indirectly participated in entering into the transaction and is not obligated nor bound by it. It is necessary for the parties to have intended to ascribe the third party with the right to demand the performance of the promise.

4. ID. —ID. —ID. —ID. —ID. STATEMENTS IN CONTRACTS REGARDING THIRD PARTIES - BINDING EFFECT IN REGARDS TO SAID THIRD PARTIES.
With regards to contracts in favor of a third party, the third-party is not required to accept it, in order to acquire the right stipulated in its favor. The third party acquires this right prior to acceptance. However, the acceptance of the third party is relevant insofar as it prevents the stipulation that is in its favor, from being subsequently revoked.

5. ID — ID. —ID. —ID. —ID. —ID. IN GENERAL.

As a general rule, the grantor is entitled to revoking the provision in favor of a third party, while the said third party has not accepted it.

6. ID. —ID. —ID. —ID. —ID. —ID.
The third party may expressly or tacitly accept a contractual provision that is in its favor. In order for full acceptance to be obtained, the obligor must be notified. The full acceptance of the third party is obtained once the grantor has been notified by the third party. **\*859**

7. ID — ID. —ID. —ID. —ID. — IN GENERAL.
To determine whether there is a contract in favor of the third party, it is not necessary for the third party to be specified upon entering into the contract. What is essential is for there to be sufficient elements in the contractual provisions to subsequently determine the respective identity.

8. ID. —ID. —ID. —ID. —ID. —ID.
The existence of a contractual provision in favor of a third party is a question of fact.

9. OBLIGATIONS — CANCELLATION — TERMINATION— RECIPROCAL OBLIGATIONS.
Art. 1077, of the Civil Code [of P.R.], 31 LPRA, section 3052, establishes the right to terminate reciprocal obligations as a result of breach on behalf of one of the obligors.

10. MORTGAGES — PROPERTIES — INTERPRETATION — LIENS AND PRIORITY — MORTGAGE POSTPONEMENT CLAUSE — IN GENERAL.
Compliance with a clause that obligates the sellers to postpone and subordinate their mortgage in favor of another, which would be subsequently constituted in favor of a third party, cannot be subject to the tacit condition subsequent for non-payment of the principal amount of the debt.

**Synopsis**
JUDGMENT of J. *Felipe Ortiz Ortiz* (Ponce), which dismisses a certain cause of action of the plaintiff. *Overturned and the case is returned to the court of instance for the continuation of the proceedings in accordance with the opinion.*

*Néstor Durán*, from *McConnell, Valdés, Kelly, Sifre, Griggs & Ruiz Suria*, and *Hermán Cestero*, from *Sweeting, González & Cestero*, lawyers of the appellant; *Rubén T. Nigaglioni* and *Maria*

Case:19-00396-LTS Doc#:51-1 Filed:11/11/19 Entered:11/11/19 23:23:01 Desc:
Exhibit A Page 4 of 11

Bco. Central Corp. vs. Yauco Homes, Inc., 1994 JTS[SCD-Supreme Court Decision] 67 (1994)

135 *DPR* [Decisions of Puerto Rico] 858

*Soledad Piñero*, from *Ledesma, Palou & Miranda*, lawyers of the appellees.

MR. ASSOCIATE JUSTICE HERNÁNDEZ DENTON delivered the opinion of the Court.

Plaintiff Banco Central Corp. (hereinafter, the Bank) appeals before us to review the part of the Superior Court decision dismissing the second cause of action of the complaint, for the purposes of demanding the specific performance of a contractual obligation concerning mortgage postponement from the defendants José Antonio Olivari Antongiorgi and María Luisa Olivari Antongiorgi (hereinafter, the Sellers). We must resolve whether the Sellers *860 must subordinate their mortgage, which is held by the bank as the pledge. [1] We hereby dismiss.

**I**

The sellers, through Deed No. 89 of June 18, 1973, certified by the notary public Carlos M. Franco Soto, sold to Villa Olimpia Development Corp. (hereinafter, the Developer) [2] the property subject to this litigation for the approximate price of three hundred and sixty thousand dollars ($360,000). Villa Olimpia paid a down payment of approximately sixty thousand dollars ($60,000) and undertook to pay the remaining three hundred thousand dollars ($300,000) in four annual installments, beginning in June 1974 and ending in June 1977.

In this same Deed of Sale, the Developer mortgaged the property as collateral against the Sellers' loan (hereinafter, the lesser mortgage). In the said deed, the Sellers also undertook to subordinate this mortgage in favor of the one that would be placed in the name of the financial institution lending the money to the developer, in order to build-out the property. The postponement clause states the following:

> "The purpose of the Buyer VILLA OLIMPIA DEVELOPMENT CORPORATION is to build-out and develop the land subject to this purchase/sale, for which they must obtain a loan from Continental Resources Corporation-P.R., or assignee, for an amount not yet determined, in order to finance the development and construction *861 of residential units therein, for the purposes of which, the Sellers hereby and henceforth postpone and subordinate the mortgage hereby constituted, in favor of the one to be constituted by VILLA OLIMPIA DEVELOPMENT CORPORATION or its successors in title or interests, to develop and urbanize the land, *in favor of Continental Resources Corporation-P.R. or assignee*, provided that the profits of the said mortgage loan are used solely and exclusively for the development of the land subject to this purchase/sale."[3] (Emphasis added.) Appendix, page 64.

On the same day that the deed of sale and the lesser mortgage was certified, a deed of mortgage was also certified, through which the developer guaranteed a promissory note, endorsed by it in favor of Continental Resources Corporation-P.R. (hereinafter, the Financial Institution) in the approximate amount of $9.2 million dollars (hereinafter, the first mortgage). This amount would be used by the developer to build-out the land. Subsequently, the financial institution endorsed the promissory note to make it payable to the holder.

On March 11, 1974, the Deed No. 34 was certified so as to amend the deed of the first mortgage. The developer, the financial institution and *Banco Economías* [the Bank] were listed on this deed.[4] It was stated therein that the developer had given the bank, as the pledge, the promissory note guaranteed by the first mortgage in order to guarantee certain advances of money made by the bank to the developer. In addition, the due date of the promissory note was eliminated, making it payable on demand. To conform to the fact that the promissory note had become a bearer note, the deed of the first mortgage was amended so that it was no longer constituted *862 in favor of the financial institution or subject to the loan agreement between the financial institution and the developer.

Despite both mortgage deeds having been presented to the Property Registry simultaneously, due to matters not related to the controversy in the instance case, the lesser mortgage was effectively registered on August 14, 1975 while the first mortgage was registered on September 15 of that year.

Case:19-00396-LTS Doc#:51-1 Filed:11/11/19 Entered:11/11/19 23:23:01 Desc:
Exhibit A Page 5 of 11

Bco. Central Corp. vs. Yauco Homes, Inc., 1994 JTS[SCD - Supreme Court Decision] 67 (1994)

**135** *DPR* [Decisions of Puerto Rico] 858

When the Clerk recorded the first mortgage, it was annotated so that it would have a secondary position, pending the presentation of a clarification record, pertaining to the intention of the parties.[5] This record was never granted.

In 1982, the Bank filed a lawsuit against the Developer and against the Sellers. In their first cause of action, the amount owed by the developer was claimed. The developer was duly summoned, but upon failing to enter a plea, it was declared to be in default. In its second cause of action, it demands that the sellers comply with the contractual obligation undertaken in the lesser mortgage deed to subordinate it in favor of the first mortgage.

Conversely, the sellers filed a cross-claim against the developer to claim the balance owed for the purchase price of the property, while requesting the foreclosure of their lesser mortgage, if their loan is not otherwise satisfied.

The developer was duly summoned, and upon failing to appear, its default of appearance was recorded. The court of first instance rendered a judgment by default against it, with respect to the first cause of action of the plaintiff-bank and with respect to the cross-claim filed by the sellers. In addition, the court dismissed the second ***863** cause of action against the sellers and consequently ordered the foreclosure of the mortgages in the order in which they were recorded in the Property Registry. The bank has come before us to appeal this opinion.

## II

Before us, the Bank, which has as the pledge, the promissory note guaranteed by the first mortgage, hereby requests this court to order the sellers fulfill the specific performance pertaining to the mortgage postponement clause contained in the lesser mortgage deed. It argues that this clause was a provision in favor of a third party from which the bank, as beneficiary, can benefit from without having to rely on the developer. It claims to be the beneficiary of an agreement in favor of a third-party, in which the developer was the signatory and the sellers, the committed seller or obligor. The sellers deny that the agreement is for the benefit of a third party.

**[1-2]** As a general rule, contracts only affect those that are party to the respective agreement. Art. 1209 of the Civil Code [of P.R.], 31 LPRA. section 3374. However, it must be taken into account that "a contract, as a phenomenon that is forged and implemented in legal reality, is never absolutely void of implications for third parties," L. Diez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. *Tecnos*, 1979, Vol. 1, page 265. See, in general, id., pages 264[sic]269. The *supra* Article 1209 of the Civil Code [of Puerto Rico] states that a contract may contain any stipulation in favor of a third party, and that the third party may demand the respective performance, provided that it had informed the obligor of its acceptance, before the stipulation has been revoked. *A.L. Arsuaga vs. La Hood Const., Inc.*, 90 DPR 104, 109 (1964). This type of contract is entered into between the obligor, bound by the provision, and the signatory, which grants a certain advantage to the third-party beneficiary in order to convert it into a ***864** direct creditor of the obligor, with respect to the performance undertaken. J. Puig Brutau, *Fundamentos de Derecho Civil*, 3rd Ed., Barcelona, Bosch, 1988, T. II, Vol. I, pages 274[sic]276. In a contract in favor of a third party, the intention of the contracting parties is to grant the beneficiary the right to legally demand the compliance with the provisions. Puig Brutau, *op. cit.*, page 262. However, it does not constitute a stipulation in favor of a third party — as contemplated by the *supra* Article 1209, — those contracts in which "the parties enter into taking into account the interest of a third person that grant that person, directly or indirectly, any advantage or benefit." Diez-Picazo, *op. cit.*, page 269.

[3] Contracts in favor of third parties "are only those that the parties enter into in order to directly or indirectly grant a right to a third party, which, nonetheless, had neither direct nor indirect participation in the transaction and is therefore neither obligated nor bound by it." Diez-Picazo, *op. cit.*, page 269. See also, *id.*, pages 269[sic]271, and Puig Brutau, *op. cit.*, page 262. It is necessary for it to have been intended to ascribe the third party with the right to demand the performance of the promise. Diez-Picazo, *op. cit.*, page 270; Puig Brutau, *op. cit.*, page 262.

"The purpose of the stipulation in favor or for the benefit of the third party lies in the existence of an interest held by the signatory, for the agreement to be established and for the promise to be complied with for the beneficiary." Diez-Picazo, *op. cit.*, page 274. This interest is the reason for the stipulation and does not necessarily have to be financial in nature. *Id*. "The signatory may enter into the contract in favor of the third party in order to make a concession (*causa donandi*), to fulfil a pre-existing obligation (*causa solvendi*) or in order to receive counter-performance from it (*causa credendi*)." *Id.*, page 276. Therefore, the cause may be an agreement to be entered into by the third party and the signatory. ***865** Puig Brutau, *op. cit.*, page 275. It is due to the nature of the signatory's interest that it is also entitled to require that the obligor complies with the performance agreed upon in favor of the third party.

Case:19-00396-LTS Doc#:51-1 Filed:11/11/19 Entered:11/11/19 23:23:01 Desc: Exhibit A Page 6 of 11

Bco. Central Corp. vs. Yauco Homes, Inc., 1994 JTS [SCD - Supreme Court Decision] 67 (1994)

135 *DPR* [Decisions of Puerto Rico] 858

L. Diez-Picazo and A. Gullón, *Sistema de Derecho Civil*, 6th Ed., Madrid, Ed. Tecnos, 1989, Vol. II, page 96; J. Castán Tobeñas, *Derecho Civil español, común y foral*, 16th ed., Madrid, Ed. Reus, 1992, T. 3, page 755.

[4] The third-party is not required to accept it, in order to acquire the right stipulated in its favor. Diez-Picazo, *op. cit.*, pages 274[sic]275; Castán Tobeñas, *op. cit.*, page 753. The third party acquires the right, before accepting it. The acceptance by the third-party is only relevant insofar as it prevents the stipulation in its favor from being subsequently revoked. Diez-Picazo, *op. cit.*, page 275.

[5] As a general rule, the signatory has the sole power to revoke a provision in favor of a third party. F. Puig Peña, *Tratado de Derecho Civil Español*, 2nd Ed., Madrid, Ed. Rev. Der. Privado, 1973, T. IV, Vol. II, page 82. As long as the beneficiary has not accepted, it must be understood that the signatory has the right to revoke the stipulation. Castán Tobeñas, *op. cit.*, page 755.

[6] This acceptance "may be express or implied, by word or by actions." Q.M. Scaevola, *Código Civil Comentado*, 2nd ed., Madrid, Ed. *Reus*, 1958, T. /B page 630. In order for full acceptance to be obtained, the obligor must be notified. It has also been held that it is necessary to also notify the signatory, since the signatory has the power to revoke the stipulation and therefore, be affected by the act of acceptance. [6] **\*866**

[7] In order to consider if this agreement is in favor of a third party, we must first examine whether the bank can be considered to be the beneficiary of the stipulation. By the clause in the deed of the lesser mortgage, the sellers undertook, before the developer, to postpone and subordinate their mortgage "in favor of the one to be constituted by [the developer] ...in favor of Continental Resources Corporation-P.R. (the financial institution) or assignee." Request for review, page 9. Although the stipulation does not refer to the bank, "it is not necessary for the third party to be specified upon entering into the contract, as it is sufficient for it to be determinable, that is, provided that there are sufficient elements in the contractual provisions to be able to determine it at a later time." J.M. Manresa, *Comentarios al Código Civil Español*, 6th ed., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, page 429.

In the case before us, the first mortgage was constituted in favor of the financial institution, thus being the initial beneficiary of the stipulation. Subsequently, the mortgage was modified so that its creditor was the bearer of the guaranteed promissory note. When the bank obtained this promissory note from the bearer as the pledge guaranteeing the loan against the developer, it became the third-party beneficiary of the stipulation. This is because the stipulation allows the third party to be a successor (assignee) of the financial institution and also because the bank, as holder of the pledged promissory note, may "exercise the actions which pertain to the owner of the pledged asset, in order to claim it or defend it against a third-party." Art. 1768, of the Civil Code [of P.R.], 31 LPRA, section 5027.

[8] Determining whether the stipulation gives the third party the right to claim fulfillment of the promise, is a question of fact. Manresa, *op. cit.*, page 432. All the **\*867** evidence in the case before us consists of documents submitted by stipulation, thus we are in the same position as the court of instance to evaluate it.

The nature of this transaction and the text of the contractual clause convinces us that the intention of the contracting parties was to grant the bank the right to demand the subordination of the lesser mortgage, directly from the sellers. The clause obligates the sellers to postpone and subordinate their mortgage in favor of the one to be constituted "in favor of Continental Resources Corporation-P.R. (the financial institution) or assignee." Request for review, page 5. This provision clearly grants a right to the third party to demand the performance thereof.

Otherwise, one would have to affirm that it is the responsibility of the developer to demand the postponement by the sellers. This is not consistent with the nature of the transaction, since both mortgage deeds were certified on the same day, so, upon satisfaction of the developer's interest, it was not to be expected that they would be diligent in processing the postponement in favor of the bank.

Lastly, the sellers had to know that they had undertaken to subordinate their mortgage and that under the terms of the contract itself, the said subordination could be demanded by the Bank, the party directly benefited by the contractual provision.

In addition, in more questionable cases, a stipulation in favor of a third party has been deemed to exist. It has been resolved that when A lends to B, agreeing that B would return the money to a third party, it was the intention of the parties to give the third party a right to claim that which is due directly from B.

Case:19-00396-LTS Doc#:51-1 Filed:11/11/19 Entered:11/11/19 23:23:01 Desc:
Exhibit A Page 7 of 11

Bco. Central Corp. vs. Yauco Homes, Inc., 1994 JTS[SCD-Supreme Court Decision] 67 (1994)

**135** *DPR* **[Decisions of Puerto Rico] 858**

Puig Brutau, *op. cit.*, pages 263[sic]264.

In view of the foregoing, we hereby conclude that the obligation pertaining to the mortgage postponement is enforceable by the bank directly against the sellers. There are no facts that **\*868** would provide the grounds for concluding that the developer had revoked the said stipulation.[7]

### III

[9] Lastly, the sellers sustain that they are not obligated to comply with the obligation to subordinate their mortgage because the developer failed to comply with the obligation to pay them the purchase price of the property. They invoke Article 1077 of the Civil Code [of P.R.] 31 L.P.R.A. section 3052, which provides the right to rescind mutual obligations when one of the obligors fails to comply with what is incumbent upon it. The sellers argue that because the developer has not paid them the sale price, they now cannot be required to comply with their obligation to subordinate the mortgage. The sellers are mistaken.

[10] The nature of the agreement in this case precludes the application of the general rule mentioned above. It cannot be interpreted that the compliance on the behalf of the sellers with the postponement clause is subject to the tacit condition subsequent of non-payment by the developer of the guaranteed debt. It would simply be absurd to state that the sellers undertook to subordinate the guarantee of their loan, but if this is not paid, then their obligation to subordinate would be waived. It is precisely that the risk of this clause arises when the seller is not paid: as a consequence of the clause, it will have its **\*869** guarantee, except it will be subordinated. If it were otherwise, the seller would not be obligated to do anything: either it is paid, or its guarantee would be in first position. We therefore conclude that due to the particular nature of this clause, the defense of the tacit condition subsequent with respect to the consideration represented by paying the principal amount of the debt, is not applicable.[8]

Due to the mortgage postponement clause being a stipulation in favor of a third party, which allows the bank to demand compliance by the sellers, the court of instance erred in dismissing the second cause of action of the plaintiff-bank, demanding the said postponement.

*Judgment will be rendered accordingly.*

The Associate Justice, Mr. Negrón García delivered a dissenting opinion.

--O--

Dissenting Opinion of the Associate Justice, Mr. Negrón García.

The correct judicial award for this appeal requires more than the doctrine of third-party beneficiaries in contracts. We hereby exhibit the facts as they arose from the multiple transactions executed.

### I

José A. Olivari Antongiorgi and María L. Olivari Antongiorgi were the owners of five (5) properties that Villa Olimpia Development Corp. (hereinafter, Villa Olimpia) was interested **\*870** in acquiring to build homes. To this end, on June 18, 1973, they executed the Deed No. 89 for the sale, consolidation and mortgage, before the Notary Public Carlos M. Franco Soto. The mortgage on the entire land was the guarantee that Villa Olimpia endorsed in favor of the sellers Olivari Antongiorgi for the unpaid balance of the price, by virtue of two (2) promissory notes for $147,849.28 and $153,583.23, respectively, to be paid in four annual installments beginning in June 1974. Given Villa Olimpia's interest in developing the property, it was specifically agreed upon in the deed, that:

> "The purpose of the Buyer VILLA OLIMPIA DEVELOPMENT CORPORATION is to build-out and develop the land subject to this purchase/sale, for which they must obtain a loan from Continental Resources Corporation-P.R., or assignee, for an amount not yet determined, in order to finance the development and construction of residential units therein, for the purposes of which, the Sellers hereby and henceforth postpone and subordinate the mortgage hereby constituted, in favor of the one to be constituted by VILLA OLIMPIA DEVELOPMENT CORPORATION or its successors in title or interests, to develop and urbanize the land, in favor of Continental Resources Corporation-P.R. or assignee, provided that the profits of the said mortgage loan are used solely and exclusively for the development of the land subject to this purchase/sale."

Case:19-00396-LTS Doc#:51-1 Filed:11/11/19 Entered:11/11/19 23:23:01 Desc: Exhibit A Page 8 of 11

Bco. Central Corp. vs. Yauco Homes, Inc., 1994 JTS[SCD_Supreme Court Decision] 67 (1994)

135 *DPR* [Decisions of Puerto Rico] 858

Appendix, page 64.

That same day, Villa Olimpia endorsed the Deed No. 116 before Notary Public Manuel Correo Calzada constituting a mortgage in favor of Continental Resources Corporation - P.R. (hereinafter Continental) in the amount of $9,201,600.00. As a guarantee, Villa Olimpia endorsed a mortgage promissory note in favor of Continental, which was due on June 30, 1976.

On March 11, 1974, Villa Olimpia - which had changed its corporate name to Bertelix Development Corporation - together with Continental and *Banco Central y Economías* (hereinafter, the Bank), endorsed the Deed No. 34 before Notary Public Hermán Cestero Rodríguez **871** in order to amend Deed No. 116 and its mortgage promissory note, which became payable either upon presentation or on demand. In that deed it was amended so that it was no longer in favor of Continental, and also, the clause that specified that the money of the mortgage was lent for the development and construction of the land. It so happens that the Bank participated as holder of the mortgage promissory note as the pledge, in order to guarantee an advance of money made to Bertelix.

On July 23, 1974, Bertelix and the Bank entered into a collateral loan agreement in which the Bank would provide financing for the construction of the project up to an aggregate amount of $6,038,865.00, without the principal amount loaned ever exceeding $3,818,690.00. In exchange, the Bank received as the pledge, the mortgage promissory note included in Deed No. 116.

On July 29, 1974, the Property Registry of San Germán suspended the recording of the original Deed No. 89 because the selling price had not been divided among the grouped properties; this caused the Deed No. 116 not to be recorded as well.

On August 1, 1975, the attorney Franco Soto retrieved the deeds, corrected the defect and presented them once again. Deed No. 89 was recorded on August 14, 1975 and Deed No. 116 on September 15, 1975, with the following note from the Property Registry:

> "By virtue thereof, I hereby register in favor of Continental Resources Corporation de Puerto Rico, or its order or assignee, its expressed mortgage right acquired on this property being denied in regards to the first position until reference of the position stated in this registration is corrected, therefore clarifying it.

Request for Review, page 5.

The margin note of the registration of Deed No 116 reads: "Clarification record and ratification of the Titleholders and Continental Resources and it is duly defined, that **872** one is in first position and the other, in second position." Request for review, page 5 section 5.

This being so, inexplicably San Juan Abstract Company, Inc., at the Bank's request, performed a title search dated April 5, 1976 in which it stated that the "mortgage (included in Deed No. 116) had first position, because it had been subordinated for its benefit, that which is indicated under number 3 of this lien section (in Deed No. 89)...." (Emphasis in the original.) Appendix, page 180.

On April 12, 1976, Yauco Homes acquired the property through Deed No. 214 endorsed before Notary Public Baldomero Collazo Salazar.

On April 13, 1976, the Olivari-Antongiorgi party, creditors of the mortgage included in Deed No. 89, Yauco, and the Bank endorsed Deed No. 218 with Special Power of Attorney, before Notary Public Baldomero Collazo Salazar. In it, the Olivari-Antongiorgi party and Yauco modified the due dates of the promissory notes pertaining to the Olivari loan. They also agreed to release the plots of land and houses with liens on them through the said mortgage in order to facilitate the sale thereof. As consideration, the Bank would send them the payment for one thousand sixty dollars ($1,060) per unit released. For this purpose, they executed an irrevocable Power of Attorney authorizing the Bank to perform the releases. Nothing was recorded regarding the mortgage postponement recorded in favor of the Olivari-Antongiorgi party.

On May 3, 1976, Bertelix, Yauco and the Bank entered into a supplementary agreement modifying the pledge and loan agreement that Bertelix and the Bank had entered into on July 23, 1974. Yauco assumed and undertook the joint and several liability

Case:19-00396-LTS Doc#:51-1 Filed:11/11/19 Entered:11/11/19 23:23:01 Desc: Exhibit A Page 9 of 11

Bco. Central Corp. vs. Yauco Homes, Inc., 1994 JTS[SCD - Supreme Court Decision] 67 (1994)

**135** *DPR* [Decisions of Puerto Rico] 858

with Bertelix for the loan disbursed until then and extended the pledge agreement in favor of the Bank. The Bank increased the financing to $8,890,048.12 for the construction of one hundred ninety-eight (198) residential units. **\*873**

On May 1, 1977, Yauco and the Bank signed a second complementary agreement, whereby the number of units to be built was reduced from one-hundred ninety-eight (198) to eighty-three (83). The Bank increased the financing advanced for the development by $1,583,767.43.

On December 7, 1978, Yauco and the Bank endorsed Deed No. 59 before Notary Public Noel González Miranda, in which Yauco gave 26 residential units to the Bank as Dation in Partial Payment for the amount of $799,279.33 of the $4,400,000.00 owed in principal. The Bank released the said properties from the mortgage constituted in its favor.

On May 31, 1979, the Bank sent a letter to the Olivari-Antongiorgi party indicating that in accordance with the power of attorney granted to it, it released sixteen (16) segregated plots of land from the mortgaged property. It included a check for this purpose in the amount of eight thousand eight hundred and forty dollars ($8,480). It resigned as agent of the Olivari-Antongiorgi party by deciding not to provide additional financing to the project.

When Yauco failed to repay the construction loan, the Bank declared the unpaid balance to be due and payable. It sued Yauco in foreclosure proceedings. It also sued the Olivari-Antongiorgi party, while demanding that they subordinate their mortgage to the existing one in favor of Continental.

The Superior Court, Ponce Panel (Hon. Felipe Ortiz Ortiz) granted the complaint against Yauco, but not the action against the Olivari- Antongiorgi party. The Bank appealed this ruling and today this Court overturns it. *We dissent.* **\*874**

## II

It is well known that in order for mortgages to be validly constituted, it must be recorded in a public deed and registered with the Property Registry. Art. 188 of the Mortgage Law and the Property Registry, 30 LPRA section 2607; *Martínez vs. Colón Franco, Concepción*, 125 D.P.R. 15 (1989); *Rosario Pérez vs. Registrador*, 115 D.P.R. 491, 493 (1984). Its position is determined by strict order of presentation according to the rule of first-in-time, first-in-law. The exception to this rule is when the parties expressly agree on a different order. This requires the consent of mortgage creditors existing at the time the change in the position is agreed upon.[1] In the same manner, it is presumed that the registered rights exist and belong to the respective owner in the manner determined by the respective position. 30 L.P.R.A. section 2354. The positions — as well as the records — must be deemed valid until declared null and void by a court of law. *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538 (1991).

The positioning given by the Property Registry is not intended to declare the existence or non-existence of a doubtful or controversial right between the disputing parties. RM Roca Sastre, *Derecho Hipotecario*, 7th ed., Barcelona, Ed. Bosch, 1979, T. II, page 265; *Ramírez Lebrón vs. Registrador*, 131 D.P.R. 76 (1992). *Cabassa vs. Registrador*, 116 D.P.R. 861, 864 (1986). These rights will have to be clarified through a regular judicial action, and the party disputing the content of the Registry will have the burden of rebutting the presumption of correctness affecting it. **\*875**

## III

In this case, we must determine if the Bank may require that the position of the mortgage be subordinated in favor of the Olivari-Antongiorgi party, in light of the negotiations that took place for the development of the project. The remedy requested by the Bank is enforceable only through a regular action demonstrating the existence of the agreement and that its actions subsequent to the denial do not show its conformity with the positioning of the Property Registry.

The Bank's actions, following the positioning of the Property Registrar show that it was aware[2] and in agreement that the mortgage in its favor had a second position.

The evidence presented by the Bank in support of Olivari-Antongiorgi's obligation to subordinate their mortgage consisted of the deed of sale, consolidation and mortgage (Deed No. 89) executed by the Olivari-Antongiorgi party and Villa Olimpia. That document included the postponement clause which the Bank bases this on.

It is important to point out that the Olivari-Antongiorgi party *did not undertake to eventually postpone their loan.* The postponement was applied expressly from the date on which the deed was endorsed. The Property Registries delay in recording it was the reason why

*Bco. Central Corp. vs. Yauco Homes, Inc.*, 1994 JTS [SCD- Supreme Court Decision] 67 (1994)

**Case:19-00396-LTS Doc#:51-1 Filed:11/11/19 Entered:11/11/19 23:23:01 Desc: Exhibit A Page 10 of 11**

**135** *DPR* **[Decisions of Puerto Rico] 858**

the postponement did not become effective. The Property Registry's refusal to acknowledge the postponement of the mortgage could have been remedied by means of an administrative appeal before this Court[3] or by submitting a clarification and ratification record ***876** from the titleholders according to the margin note in the registration. At the time of filing the lawsuit, both alternatives had lapsed.

When Deed No. 218 of Special Power of Attorney was executed before Notary Public Baldomero Collazo Salazar on April 13, 1976, the debt of the developer Yauco Homes with the Olivari-Antongiorgi party was due and payable, as a result of the foreclosure of the mortgage in their favor. The Bank agreed to remit the amount of one thousand sixty dollars ($1,060.00) for each release made in accordance with the power granted to it, while it managed to modify the due date of the Olivari-Antongiorgi party's promissory notes and thus avoided the execution of the mortgage that guaranteed them. It is clear that the intention of the parties in entering into this agreement was to settle the debts owed to the Olivari-Antongiorgi party without having to resort to foreclosure. If the Bank understood that it had a mortgage loan with a greater position than that of the Olivari-Antongiorgi party, there would have been no need to reach this type of agreement, since its loan would have been duly protected. The modification of the due date shows that the Bank knew that its mortgage had a second position. If the mortgage in favor of the Olivari-Antongiorgi party had a second position, there would have been no need to modify the due date, as even though the obligation had expired, they would not have been able to collect the loan because they were after a first mortgage of $9,201,600.00.

As can be seen, from the moment the Special Power of Attorney was granted, the Bank incurred a personal obligation with the Olivari-Antongiorgi party. The payment of $1,060.00 per release was intended to guarantee the payment of its loan.

It should be noted that upon granting the ***877** Power of Attorney, it was estimated that the project would consist of about 200 residential units. Proof of this is the second complementary agreement signed on March 1, 1977, whereby Yauco and the Bank, *without the consent of the Olivari-Antongiorgi party*, reduced the number of units to be built from one-hundred nighty-eight (198) to eighty-three (83). Obviously, the amount that the Olivari-Antongiorgi party would receive for the releases would be substantially reduced by this change. Their consent was necessary for this because each release reduced their guarantee.

The Bank cannot compel the Olivari-Antongiorgi party to subordinate the position of their mortgage when it is crystal clear that before the Special Power of Attorney was executed, it knew that its position was lower than theirs. The Olivari-Antongiorgi party accepted the Bank's proposal in order to avoid foreclosure on their mortgage, while trusting that the Bank would pay off the amount due to them. The Bank not only breached its obligation by granting an irrevocable power of attorney, but also undermined the Olivari-Antongiorgi party's guarantee. The actions taken by the Bank itself prevent it from compelling the Olivari- Antongiorgi party to subordinate their mortgage position. *Meléndez Piñero vs. Levitt & Sons of PR*, 129 DPR 521 (1991); *Int. General Electric vs. Concrete Builders*, 104 DPR 871, 878 (1976). Doing so is an injustice; we would affirm.

## Footnotes

1. The parties agree that the mortgage deed in favor of the sellers was registered on August 14, 1975 and the mortgage in favor of the bank on September 15 of that year.
2. Villa Olimpia Development Corp. later changed its name to Bertelix Development Corporation. In addition, at some point prior to April 1976, Yauco Homes Inc. agreed with Bertelix to be responsible for all of Bertelix's obligations with the Bank, in relation to the financing of the land development project. In May 1976, Yauco fulfilled this commitment by taking on all the debt that Bertelix owed to the Bank. When it is not necessary to specify which developer we are referring to, we will generically refer to it as "the developer."
3. Exhibit No. 8 - certified copy of Deed No. 89 certified by notary public Carlos M. Franco Soto on June 18, 1973, page 16.
4. Subsequently, this bank changed its name to Banco Central Corp. Except when necessary, we will refer to this institution as the "Bank", regardless of the name it had.
5. As a result of the Request for Review, page 5, a note from the Property Registry Clerk states:

> "By virtue thereof, I hereby register in favor of *Continental Resources Corporation de Puerto Rico*, or its order or assignee, its expressed mortgage right acquired on this property being denied in regards to the first position until reference of the position stated in this registration is corrected, therefore clarifying it..."

6. L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. *Tecnos*, 1979, Vol. 1, page 275, states that the signatory must be notified, as the acceptance functions as a limit on the power to revoke the stipulation. J. Puig Brutau, *Fundamentos del Derecho Civil*, 3rd ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. 1, pages 273[sic]274, agrees that the third party must make its acceptance known to the party that has stipulated in its favor.

7. There was documentary evidence, consisting of a statement by the husband of one of the sellers that on April 13, 1976, the day on which Deed No. 218 under the special power of attorney was executed (to which the bank, the developer, and the sellers appeared), authorized representatives of the bank and the developer led the sellers to believe that they would provide the funds needed to guarantee payment of the sellers' credit. Regardless of whether this could constitute a cancellation by the developer of the stipulation in favor of the bank and whether the bank had already previously accepted the stipulation, making it irrevocable, the truth is that we find the testimony of the notary who certified the deed more credible, who stated that such representations were not made and whose statement, in general, directly contradicts the assertion made by the husband of one of the sellers.

8. We do not have to comment on the general applicability of this defense when the obligor, by way of a stipulation in favor of a third party, invokes it against the respective party, due to the breach of the signatory of the obligation that was undertaken before the obligor.

1 Under Mortgage and Property Registry Act of 1979, it specifies the requirements for the exchange or postponement of the mortgage position. See 30 L.P.R.A. section 2608. The former Mortgage Act, in force when Deed No. 89 was executed, did not regulate the exchange or postponement of position, which was therefore governed by the Civil Code.

2 Since the Property Registry is public for those interested in finding out about the legal status of real estate or real property registered, knowledge of the records is attributed to fiction of law. *Garcia Larrinua vs. Lichtig*, 118 DPR 120, 137 (1986). The fact that the Bank relied on the title search carried out by a private company could give rise to a claim against it, but it has no impact on the content of the Property Registry.

3 The administrative appeal would have been to determine whether, based on the documents submitted for its registration, the ratification by the titleholders was required; not in order to establish the existence of a right.

---

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.