**NATBONY DECLARATION**
**<u>EXHIBIT 25</u>**

2013 WL 2299366 (TCA)

Iván BENÍQUEZ DÍAZ y Su Esposa
María De Los ángeles Martínez, Apelante
v.
AUTORIDAD DE ACUEDUCTOS Y
ALCANTARILLADOS, et al., Apelados.

EN EL TRIBUNAL DE APELACIONES
CASO NÚM. K DP2009–1039
KLAN201201418
En San Juan, Puerto Rico, a 16 de abril de 2013.
April 16, 2013.

Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan
Sobre: Daños y Perjuicios

Panel integrado por su presidenta, la Jueza Fraticelli Torres, el Juez Hernández Sánchez y el Juez Ramos Torres

**SENTENCIA**

FRATICELLI TORRES, JUEZA PONENTE

**\*1** Los apelantes, señor Iván Beníquez Díaz, señora María de los Ángeles Martínez y la sociedad de gananciales constituida entre ellos, nos solicitan la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, que desestimó con perjuicio la demanda de daños que incoaron contra el Municipio de San Juan, por falta de la notificación dispuesta en el artículo 15.003 de la Ley de Municipios Autónomos, *infra.* El Tribunal de Primera Instancia no consideró como factor eximente de tal notificación que en este caso la demanda original fue presentada directamente contra la aseguradora del municipio, Admiral Insurance Company, que luego de conversaciones transaccionales adelantadas, les notificó a los apelantes que el límite del agregado combinado acordado en el contrato de seguro se había agotado, por lo que el municipio se haría cargo de la reclamación.

Atendidas las circunstancias del caso y evaluados los méritos del recurso, resolvemos revocar la sentencia recurrida.

Veamos los antecedentes fácticos y procesales que fundamentan esta determinación.

**I.**

El 16 de septiembre de 2008 el señor Iván Beníquez Díaz sufrió daños graves al caer en el hueco de una alcantarilla ubicada en una acera perteneciente al Municipio de San Juan. Por tal razón, el 31 de julio de 2009 el señor Beníquez, su esposa y la sociedad de gananciales que tienen constituida (en adelante Beníquez) presentaron una acción directa por daños contra Admiral Insurance Company (en lo sucesivo "Admiral"), la aseguradora del Municipio.

Luego de varios incidentes procesales y de serias negociaciones transaccionales entre las partes, el 8 de abril de 2011 Admiral anunció a los municipios asegurados que el límite del agregado combinado de la póliza expedida a su favor se había agotado, por lo que les emitió un aviso de cancelación de la póliza, efectivo el 1 de julio de 2011. Posteriormente, el 5 de julio de 2011 Admiral informó a Beníquez que estaban impedidos de continuar con las negociaciones transaccionales en proceso debido a que el Departamento de Hacienda estaba auditando los casos del Municipio de San Juan y, mientras se llevara a cabo la auditoría, no tenían autorización de sus clientes para transigir ningún caso.[1] A raíz del aviso de cancelación emitido por Admiral, el Departamento de Hacienda presentó una querella contra la aseguradora ante la Oficina del Comisionado de Seguros (OCS). Como resultado de la querella, el 1 de julio de 2011 *el Comisionado emitió una orden provisional de cese y desista,* **para mantener la póliza vigente** *hasta que se dilucidaran las controversias ante dicho foro, en protección de los municipios asegurados.*[2] No obstante, dicha orden fue dejada sin efecto el *8 de diciembre de 2011* y Admiral fue liberada de responsabilidad ante la OCS. Los abogados que ostentaban la representación legal del Municipio de San Juan para ese entonces presentaron su moción de renuncia de representación ante el tribunal *a quo.*

**\*2** El 23 de febrero de 2012 Admiral presentó una moción de sentencia sumaria en este caso y alegó, en síntesis, que bajo el contrato de seguro suscrito con el Municipio de San Juan, ella era responsable de investigar, defender y administrar las reclamaciones cubiertas por la póliza, y pagar las indemnizaciones provistas para dichas reclamaciones. No obstante, tales obligaciones estaban sujetas a un límite de responsabilidad, la cual terminaría una vez se agotara el monto máximo fijado en la póliza (agregado combinado) para el pago total de las reclamaciones procesadas y otros gastos pagados por Admiral. Esta alegó que, a tenor del contrato de seguro, una vez se agotara el agregado combinado y se cancelara la póliza, la obligación de pago de las reclamaciones instadas y pendientes, tanto en contra del Municipio *como en contra de Admiral,* correspondía al asegurado, en este caso, al Municipio de San Juan. De esta manera, la extinción del

agregado producía dos efectos inmediatos: el cese de toda responsabilidad de Admiral por la defensa, ajuste y pago de reclamaciones, y la reversión de esas responsabilidades al municipio o asegurado.[3] El 18 de abril de 2012 el Tribunal de Primera Instancia emitió varias órdenes, entre ellas, declaró ha lugar la moción de sentencia sumaria a favor de Admiral. El 1 de marzo de 2012, Beníquez, *autorizado por el tribunal,* presentó una segunda demanda enmendada mediante la cual dirigió la causa de acción en contra del Municipio de San Juan, para exigirle el cumplimiento de la obligación contractual contraída con Admiral en el contrato de seguro. El 1 de mayo de 2012 el Municipio de San Juan presentó su contestación a la segunda demanda enmendada y una moción de desestimación por falta de la notificación que requiere el artículo 15.003 de la Ley de Municipios Autónomos, 21 L.P.R.A. § 4703.[4]

El 14 de mayo de 2012 Beníquez presentó su oposición a la moción de desestimación, mediante la cual alegó que la causa de acción contra el Municipio de San Juan es de naturaleza contractual y no exige la notificación al Alcalde, según lo dispuesto en el artículo 15.003 de la Ley de Municipios Autónomos. Argumentó Beníquez que la obligación del Municipio de asumir responsabilidad por su reclamación surgió al agotarse el límite del agregado combinado y cancelarse la póliza por esa razón, según sus términos y condiciones.[5]

El 30 de mayo de 2012 el Tribunal de Primera Instancia dictó la sentencia que desestimó la reclamación de Beníquez en contra del Municipio de San Juan. Expresó como fundamento que, para poder reclamarle al Municipio el cumplimiento de sus obligaciones contractuales, el demandante tenía que haber cumplido el requisito de notificación al Alcalde dentro del plazo de 90 días que establece la ley. Concluyó, además, que la validez del contrato de seguro estaba condicionada al cumplimiento de dicho requisito de notificación, si no, sería "contrario a la ley, a la moral y al orden público", supuesto prohibido por el artículo 1207 del Código Civil, 31 L.P.R.A. § 3372.

**\*3** De esta determinación acude la parte apelante ante este tribunal y alega que el foro apelado erró: (1) al concluir que cuando se demanda a un municipio exigiéndole el cumplimiento de una obligación contractual, se tiene que dar notificación previa al Alcalde al igual que en las acciones de daños y perjuicios, según lo dispuesto en el Art. 15.003 de la Ley de Municipios Autónomos; y(2) al concluir que la validez del contrato de seguro entre el Municipio de San Juan y su aseguradora Admiral está condicionada a que se cumpla con el requisito de notificación al Alcalde de conformidad con el Art. 15.003, *supra.* De lo contrario, ese contrato violaría la referida ley especial a tenor del Art. 1207 y el Art. 12 del Código Civil.

Por entender que ambos errores son aspectos de una misma controversia, procedemos a analizarlos conjuntamente.

## II

### -A-

El artículo 1802 del Código Civil de Puerto Rico dispone que "[e]l que por acción u omisión causare daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." 31 L.P.R.A. § 5141. Es decir, una persona incurre en responsabilidad por daños y perjuicios cuando el perjudicado y demandante demuestra, mediante preponderancia de la prueba, (1) que ha habido una acción u omisión de parte de la persona demandada; (2) que ha mediado negligencia en esa conducta; y(3) que existe un nexo causal entre la acción u omisión de la parte demandada y el daño sufrido por el perjudicado. *García Gómez v. E.L.A. et al.,* 163 D.P.R. 800, 809 (2005); *Toro Aponte v. E.L.A.,* 142 D.P.R. 464, 473 (1997); *Vélez Rodríguez v. Amaro Cora,* 138 D.P.R. 182, 189 (1995).

El Estado y sus agencias no estarían sujetos al reclamo de responsabilidad civil por los actos sancionados por el artículo 1802 citado, por aplicación del principio de inmunidad soberana, pero renunciaron parcialmente a tal inmunidad al permitir que los ciudadanos demanden la reparación económica de los agravios causados por su propia culpa o negligencia o la de sus empleados y funcionarios. Así, el Estado y otros organismos gubernamentales, entre ellos, los municipios, están sujetos a una acción civil por daños en los términos establecidos por la legislación especial que así lo autoriza. *Defendini Collazo et. al. v. E.L .A., Cotto,* 134 D.P.R. 28, 40–59 (1993); *Berríos Román v. E .L.A.,* 171 D.P.R. 549, 555–556 (2007).[6]

Las demandas contra el Estado Libre Asociado se rigen por la Ley de Reclamaciones y Demandas contra el Estado, Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 L.P.R.A. §§ 3077 *et seq.* En el caso de los municipios, la Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. § 4001 *et seq.,* provee el marco normativo para tales acciones. En ambas instancias el perjudicado debe notificar su intención de demandar al Estado o a sus organismos en un plazo determinado y en los términos expresamente dispuestos por el texto de la ley. Aunque tal legislación constituye una renuncia a la inmunidad soberana, la realidad es que limitan el derecho de un ciudadano a solicitar la reparación debida al gobierno, por lo que su texto y propósito deben interpretarse restrictivamente en favor de

la reparación. *Vázquez Negrón v. E.L.A.,* 109 D.P.R. 19, 25 (1979).

**\*4** En lo que atañe al caso de autos, el artículo 15.003 de la Ley de Municipios Autónomos, dispone:

> Toda persona que tenga reclamaciones de cualquier clase contra un municipio *por daños personales o de la propiedad, ocasionados por la culpa o negligencia del municipio,* deberá presentar al alcalde una notificación escrita, haciendo constar en forma clara y concisa la fecha, lugar, causa y naturaleza general del daño sufrido. En dicha notificación se especificará, además, la cuantía de la compensación monetaria o el tipo de remedio adecuado al daño sufrido, los nombres y direcciones de sus testigos y la dirección del reclamante, y en los casos de daño a la persona, el lugar donde recibió tratamiento médico en primera instancia.
>
> [ ... ] La referida notificación escrita deberá presentarse al alcalde dentro de los noventa (90) días siguientes a la fecha en que el reclamante tuvo conocimiento de los daños reclamados [ ... ]

21 L.P.R.A. § 4703.

En acciones contra el Estado o los municipios, *por daños ocasionados por la culpa o negligencia de estos,* el requisito de notificación debe aplicarse de manera rigurosa, según ha reiterado la jurisprudencia sobre el tema. *López v. Autoridad de Carreteras,* 133 D.P.R. 243, 246 (1993); *Ortiz v. Gobierno Municipal de Ponce,* 94 D.P.R. 472, 476 (1967); *Mangual v. Tribunal Superior,* 88 D.P.R. 491, 498–499 (1963). Dicho requisito responde a un fin público concreto, proteger al Estado y a los municipios de acciones ajenas a su conocimiento. La jurisprudencia señala otros propósitos específicos de la notificación: (1) proporcionar a estos cuerpos políticos la oportunidad de investigar los hechos que dan origen a la reclamación; (2) desalentar las reclamaciones infundadas; (3) propiciar un pronto arreglo de las mismas; (4) permitir la inspección inmediata del lugar del accidente antes de que ocurran cambios; (5) descubrir el nombre de las personas que tienen conocimiento de los hechos y entrevistarlos mientras su recuerdo es más confiable; (6) advertir a las autoridades municipales de la existencia de la reclamación para que provea la reserva necesaria en el presupuesto anual; y(7) mitigar el importe de los daños sufridos mediante la oportuna intervención, el ofrecimiento de tratamiento médico adecuado y hospitalización al perjudicado. *Mangual v.. Tribunal Superior,* 88 D.P.R., en la pág. 494.

En todo caso, la doctrina jurisprudencial vigente establece que la situación que el legislador tuvo en mente cuando ordenó el requisito de notificación previa dentro de 90 días es la siguiente: (1) cuando existe una reclamación de daños por responsabilidad extracontractual; (2) la reclamación se funda en la supuesta culpa o negligencia del municipio; (3) la reclamación se inicia por el reclamante; (4) **la reclamación va directamente contra el municipio;** y(5) el municipio no tiene forma de conocer los detalles esenciales del daño por el cual se reclama si no media alguna notificación adecuada por el reclamante. *López v. Autoridad de Carreteras,* 133 D.P.R., en la pág. 252. (Énfasis nuestro).

**\*5** No obstante, el requisito de previa notificación al soberano en casos de demandas contra el Estado o los municipios, "aunque de cumplimiento estricto, [ ... ] no es un requisito estrictamente jurisdiccional". *Insurance Co. of Puerto Rico v. Ruiz,* 96 D.P.R. 175, 179 (1968). Tampoco su cumplimiento es absoluto, pues permite excepciones. Esta norma *"libera al tribunal de un automatismo dictado por el calendario y salva su fundamental facultad para conocer del caso y proveer justicia según lo ameriten las circunstancias del caso".* (Énfasis nuestro.) *Loperena Irizarry v. E.L.A.,* 106 D.P.R. 357, 359–360 (1977); *Rivera de Vincenti v. E.L.A.,* 108 D.P.R. 64, 69 (1978).

Entre los supuestos excepcionales ante los cuales el requisito de notificación al Estado no será requerido se han identificado los siguientes: (1) *la ausencia de notificación no se debe a razones imputables al reclamante;* (2) *cuando es mínimo el riesgo de que la prueba pueda desaparecer;* (3) *cuando hay constancia de la identidad de testigos;* o(4) *cuando el Estado pueda fácilmente investigar los hechos alegados. Passalaqua v. Mun. de San Juan,* 116 D.P.R. 618, 631 (1985). (Énfasis nuestro.)

Sobre este mismo asunto, la jurisprudencia ha expresado:

> [D]onde el riesgo de que la prueba objetiva pueda desaparecer es mínimo, donde hay constancia efectiva de la identidad de los testigos y donde el Estado, por tanto, puede fácilmente investigar y corroborar los hechos alegados en la demanda que se radique—no es de aplicación inexorable [el requisito de la notificación previa] [ ... ] por cuanto el objetivo que se persigue mediante la aplicación de la referida disposición legal no tiene razón de ser.

*Meléndez Gutiérrez v. E.L.A.,* 113 D.P.R. 811, 815 (1983).

> Insistir en una notificación una vez "agotada toda [su] virtualidad y propósito, es trasladar la controversia justiciable a los predios de lo académico y ficticio' ". Tenemos el deber de hacer que el Derecho sirva propósitos útiles sociales, no esquemas teóricos abstractos que arrojan resultados prácticos absurdos; tales como consagrar la pérdida de derechos por darle vitalidad a una condición o requisito que ya ha perdido su propósito, su razón de ser.

*Passalaqua v. Mun. de San Juan,* 116 D.P.R., en la pág. 632, que cita con aprobación a *Rivera de Vicentí v. E.L.A.,* 108 D.P.R., en la pág. 70.

Por otro lado, el artículo 20.030 del Código de Seguros le provee a una persona que haya sufrido algún daño o perjuicio por algún acto culposo o negligente, tres alternativas para dirigir el curso de acción legal a seguir. Estas son: (1) dirigirse directa y únicamente contra el asegurado; (2) *dirigirse directa y únicamente contra el asegurador;* o(3) dirigirse en contra de ambos, entiéndase asegurador y asegurado. 26 L.P.R.A. § 2003.

**\*6** Es decir, es norma establecida que la acción directa en daños contra la compañía aseguradora del causante del daño *es distinta y separada de la acción que se inicie contra el asegurado.* Por aplicación de este principio, cuando el perjudicado decide dirigir su causa de acción directamente contra la aseguradora, aquel no tiene que notificar al alcalde del municipio en el plazo estatutario. Esto es así porque a la compañía aseguradora de un municipio no le aprovecha el requisito de la notificación al alcalde en el plazo de noventa días. *García v. Northern Assurance, Co.,* 92 D.P.R. 245, 254 (1965);[7] *Torres Pé rez v. Colón García,* 105 D .P.R. 616, 627 (1977).

### -B-

En este caso, la falta de una notificación oportuna no puede atribuirse al reclamante, ya que este inició la acción directa en contra de Admiral, a tenor de lo dispuesto en el Código de Seguros, que no requiere una notificación previa al asegurado. De igual manera, en este pleito, el riesgo de que la prueba pueda desaparecer es mínimo, pues puede examinarse el expediente judicial y el de sus previos abogados para ver en qué situación se encuentra el caso y qué produjo el descubrimiento de prueba realizado. Resolver lo contrario acarrearía conllevaría un menoscabo en la administración de la justicia y sería contrario al principio general del derecho de no causar daño a nadie, y al resarcimiento de daños que emana del artículo 1802 del Código Civil.

Además, como reseñado arriba, así salvamos la "fundamental facultad [del Tribunal de Primera Instancia] para conocer del caso y proveer justicia *según lo ameriten las circunstancias del caso* ". (Énfasis nuestro.) *Loperena Irizarry v. E.L.A.,* 106 D.P.R., en la pág. 360. De ese modo, logramos "que el Derecho sirva propósitos útiles sociales, no esquemas teóricos abstractos que arrojan resultados prácticos absurdos; tales como consagrar la pérdida de derechos por darle vitalidad a una condición o requisito que ya ha perdido su propósito, su razón de ser" en este caso específico. *Passalaqua v. Mun. de San Juan,* 116 D.P.R., en la pág. 632.

Ahora bien, si no fueran suficientes estos fundamentos para resolver la cuestión planteada, otro argumento de igual peso nos lleva a un mismo resultado. La obligación del Municipio de San Juan no surge únicamente de la fuente legal constituida por los artículos 1802 y 1803 del Código Civil, que es la que exige la aludida notificación. También surge de una fuente contractual, como bien argumenta la parte apelante, para la cual no es indispensable ese aviso. Veamos.

### III

### -A-

El Tribunal Supremo ha expresado que el requisito de notificación previa de 90 días en contra de un municipio no es de aplicación cuando se trata de una reclamación contractual. Dicha norma jurisprudencial establece que "ni del lenguaje usado en ese artículo ni de su historial legislativo se deduce que esa hubiera sido la intención del legislador". Por el contrario hay indicaciones convincentes de que tales disposiciones se incorporaron a la ley especial "para aplicarse a aquellas reclamaciones de daños y perjuicios *ex delictu* que nacen de los Arts. 1802 y 1803 del Código Civil". *Rosario Quiñones v. Mun. de Ponce,* 92 D.P.R. 586, 591, 593 (1965). Y eso es así aunque en el quebrantamiento de un contrato medie acción torticera de la corporación municipal. Ese hecho no convierte la acción del reclamante de daños y perjuicios en una acción torticera que requiera del demandante la notificación previa por escrito al jefe ejecutivo del municipio. *Id.,* 92 D.P.R., en la pág. 591 .[8] Es esta la teoría de la parte apelante en este caso. Le asiste la razón sobre este particular.

**\*7** En cuanto a la contratación de un particular con el Estado, el Alto Foro ha expresado que su interpretación deberá hacerse como si se tratara de un contrato entre dos personas particulares. Esto significa que, una vez el Estado o municipio suscribe un contrato con una persona privada, ambos están sujetos a las normas generales relativas a las obligaciones y los contratos. *De Jesús González v. Autoridad de Carreteras,* 148 D.P.R. 255, 257 (1999).

El artículo 1044 del Código Civil dispone que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos. 31 L.P.R.A. § 2994. Los contratos obligan no solo a lo expresamente pactado, sino también a las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley. Cód. Civil P.R., Art. 1210, 31 L.P.R.A. § 3375.

Un principio esencial de la teoría general de la contratación es el de la relatividad de los contratos. Este principio, acogido en el artículo 1209 del Código Civil, postula que "[l]os contratos sólo producen efecto entre las partes que los otorgan

y sus herederos; salvo en cuanto a éstos, el caso en que los derechos y obligaciones que proceden del contrato no sean transmisibles, o por su naturaleza, o por pacto, o por disposición de la ley". Cód. Civil de P. R., Art. 1209, 31 L.P.R.A. § 3374. Esto quiere decir que los acuerdos suscritos por determinadas personas solo las obligan a ellas y a sus causahabientes, pues nadie puede comprometer ni obligar a otro sin su consentimiento. *Beiró v. Vázquez,* 52 D.P.R. 601 (1938).

No obstante, hay una excepción a este principio, reconocida en el mismo artículo 1209, y es la llamada cláusula de estipulación a favor de tercero. El segundo párrafo de esa disposición provee: "*Si el contrato contuviere alguna estipulación en favor de un tercero, éste podrá exigir su cumplimiento, siempre que hubiese hecho saber su aceptación al obligado antes de que haya sido aquélla revocada.*" (Énfasis nuestro).

La estipulación a favor de tercero en un contrato está condicionada a que esta sea aceptada por el tercero. Dicha aceptación puede darse en forma expresa o tácita, por palabras o por hechos que reflejen la voluntad del tercero de aceptar el beneficio estipulado a su favor. *La interposición de una demanda por un tercero, para reclamar un derecho basado en una estipulación a su favor, contenida en un contrato en el que no intervino, constituye una aceptación de la estipulación y obliga a quien la suscribió a actuar en los términos acordados* . *A.L. Arzuaga v. La Hood Constructors Inc.,* 90 D.P.R. 104, 105 (1964).

En el contrato a favor de tercero o con una estipulación a favor de tercero concurren necesariamente tres sujetos o partes, dos de los cuales suscriben el contrato y otro que recibe el efecto de la estipulación a su favor. La doctrina los describe como el *estipulante o promisario,* que es quien provoca u origina el beneficio; el *promitente,* que es el que queda obligado a realizar la prestación en favor del tercero; y el *beneficiario o tercero.* En cualquier caso, el acuerdo que crea la estipulación, conocida como *relación de cobertura,* tiene que ser válido. La *relación de valuta,* que es la que justifica que el estipulante provoque o genere el beneficio al tercero, también debe tener causa lícita, la que se presume que existe y que es válida. Cód. Civil de P. R., Art. 1229, 31 L.P.R.A. § 3434.

*\*8* En Puerto Rico se ha reconocido la figura de la estipulación a favor de tercero y su utilidad para el tráfico jurídico. Dicho esto, cualquier transacción entre ciertas partes que reconozca el derecho de un tercero a exigir determinado beneficio económico, participa de la naturaleza de una estipulación a favor de tercero, y el beneficiado tiene acción directa contra el obligado o promitente para hacerla valer, al concretarse las condiciones para su reclamo. Véase KLCE201001725, *Hernández Soler, Et al. v. Oliveras Báez, Et al,* sentencia de 10 de febrero de 2011.

Cabe destacar la postura de la profesora Soler Bonnin sobre este resultado, cuando expresa: "El tercero, aun cuando no esté representado en el contrato en virtud de esta estipulación quedará incorporado al contrato como acreedor de la prestación. Por lo tanto, el tercero no se convierte en parte sino en un acreedor de la prestación estipulada en su favor." Olga Soler Bonnin, *Manual para el estudio de los Contratos en el Derecho Civil Puertorriqueño* 58–60 (Editorial Revista de Derecho Puertorriqueño 2012).

-B-

Analicemos el contrato de seguro suscrito por el Municipio de San Juan y Admiral para ver si de alguna manera arroja luz sobre las obligaciones subsistentes del Municipio hacia los apelantes.

En el caso de autos, Beníquez presentó una acción directa en contra de la aseguradora del Municipio de San Juan, a tenor del artículo 20.030 del Código de Seguros, ya citado. Al momento de iniciarse el pleito de Beníquez contra Admiral, esta contaba con un agregado combinado de $74,000,000. Admiral fue emplazada, recibió la demanda y la contestó. La causa de acción se litigó por varios años y se encontraba en avanzada etapa de negociación, con conocimiento del tribunal, con el fin de disponer del caso por medio de una transacción judicial. En medio de tales trámites, Admiral notificó al Municipio de San Juan la cancelación de la póliza porque se había agotado el agregado combinado o límite de responsabilidad pactada. Surge de los autos que el contrato de seguro tenía el efecto directo de cesar la responsabilidad de Admiral frente a Beníquez y de revertir o dirigir esa responsabilidad al municipio asegurado. Así surge de su texto. Las referidas cláusulas disponen lo siguiente:

> [I]t is also understood and agreed that Admiral Insurance Company's duty to investigate, defend and settle covered "claims" or "suits" **shall cease at the time when either the applicable COVERAGE LIMIT of LIABILITY of the individual policy Contract or the Combine Overall Aggregate Limit–All payments amount of $74,000,000 has been exhausted** by reason of Admiral Insurance Company's payment(s) for damages, medical payment or "other expenses".
>
> In the event that the Combined Overall Aggregate Limit–All Payments amount of $74,000,000 has been exhausted by reason of Admiral Insurance Company's payment(s) for damages, medical payment or "other expenses" that where covered and validly paid under the Policy–Contracts **the Named–Insured *shall assume,* as of the date of such**

> exhaustion, Admiral's duty to investigate, defend and settle "claims" or "suits" as covered under the terms of this Policy–Contract.

*9 Apéndice, págs. 70–71. (Énfasis nuestro.)

Además, bajo el endoso, el asegurado también se obligó a indemnizar y liberar a Admiral de toda responsabilidad y gastos, incluidos los gastos legales, relacionados con cualquier reclamación o litigio presentado y pendiente en contra de Admiral. En específico, el endoso dispone lo siguiente:

> [Y]ou hereby agree to hold harmless and indemnify us for any liabilities, costs, or expenses, including our legal expenses, in connection with any claim or legal action against us including, but not limited to, any claim or action against us seeking to recover damages, liabilities or expenses for which any of you may be held liable but that are not covered by the terms of this Policy–Contract (e.g., extra-contractual obligations), or that are in excess of either of the applicable COVERAGE LIMIT of LIABILITY under above listed Policy–Contracts or the Combined Overall Aggregate Limit All Payments amount of $74,000,000.

Apéndice, págs. 70–71. (Énfasis nuestro.)

En virtud de estas cláusulas, el Tribunal de Primera Instancia autorizó a Beníquez a traer al pleito al Municipio de San Juan. No obstante, el tribunal sujetó la causa de acción a los criterios adoptados para una acción basada en los artículos 1802 y 1803 del Código Civil. Por eso requirió la notificación dentro del plazo de 90 días, cuya omisión produjo la desestimación de la demanda enmendada.

El Municipio expresa ante nos que Beníquez no puede exigir el cumplimiento específico de ese contrato debido a que no fue parte en la mencionada obligación contractual. No le asiste la razón.

En el presente caso estamos ante la figura de un contrato con estipulación a favor de tercero. Debido a que las mencionadas cláusulas en cuestión tienen el efecto de salvaguardar las causas de acción directas, aún pendientes, en contra de Admiral, como aseguradora, y el Municipio consintió en asumir su responsabilidad frente a esos demandantes en caso de que se agotara el agregado combinado de su aseguradora, como en efecto sucedió, Beníquez puede exigirle que asuma esa responsabilidad por su reclamación. Esta fue presentada en tiempo hábil, fue investigada y aquilatada por Admiral y quedó pendiente de transacción o resolución judicial por causa de la liberación anticipada de Admiral, al agotarse el agregado combinado de la póliza. Si tal acción en contra del Municipio surge de las cláusulas transcritas, es una de naturaleza contractual, mediante la cual un tercero beneficiado, el apelante perjudicado, exige el cumplimiento específico de la cláusula suscrita a su favor entre Admiral y el Municipio.

Aceptada la estipulación a su favor, con la presentación de la demanda enmendada en la que incluyó al Municipio como demandado, Beníquez puede exigir su cumplimiento especifico. Al activarse las mencionadas cláusulas, el Municipio de San Juan quedó subrogado en la posición de Admiral con respecto a la reclamación de Beníquez. Por consiguiente, a pesar de que Beníquez no fue parte en la relación contractual entre Admiral y el Municipio, puede exigir el cumplimiento de la obligación asumida a su favor por el Municipio de San Juan.

*10 Si las circunstancias del caso de autos no fueran eximentes de la notificación que exige la Ley de Municipios Autónomos al Alcalde cuando se trata de acciones derivadas de la responsabilidad civil del Municipio, resolvemos que en este pleito la responsabilidad del Municipio de San Juan también surge de la estipulación a favor de tercero contenida en el contrato de seguro.

Por tratarse de una causa de acción de origen contractual, distinta de la acción extracontractual incoada contra Admiral, erró el Tribunal de Primera Instancia al desestimar la demanda enmendada presentada por los apelantes contra el Municipio de San Juan, por falta de una notificación que no era necesaria. Resolver lo contrario iría en contra del principio establecido en el artículo 1044 del Código Civil, el cual supone que, una vez vinculadas las partes contratantes, quedan sujetas a la ley del contrato y no pueden desligarse o modificar esa relación jurídica unilateralmente.

También erró el Tribunal de Primera Instancia al determinar que la validez del contrato de seguro está condicionada a que se cumpla con el requisito de notificación al Alcalde, pues bajo el principio de la autonomía de la voluntad, el Municipio podía asumir una obligación válida que no representaba menoscabo alguno a sus prerrogativas soberanas, pues su responsabilidad quedó limitada a las causas de acción pendientes o *sub judice* a la fecha en que se notificó el agotamiento del agregado combinado, en las que hay un récord judicial disponible y una memoria histórica perpetuada en los archivos de su anterior aseguradora. Tales salvaguardas permiten concluir que ese contrato no es contrario a la ley, la moral ni el orden público, pues la estipulación en controversia era parte de la causa del contrato de seguro para la aseguradora, cuya cobertura era y es indispensable en la administración de la cosa pública municipal.

Liberar al Municipio de tal obligación tendría el efecto de frustrar el derecho de un ciudadano de recibir reparación por sus agravios, por un subterfugio procesal, aun cuando fue

diligente en reclamarla a quien se hizo responsable de su pago, pero previó para su subrogación en caso de quedar liberado de su cumplimiento. Si el Municipio no cumple como deudor principal por el agravio, tiene que hacerlo como subrogado de su responsabilidad.

**IV**

Por los fundamentos expresados, se revoca la sentencia apelada y se ordena que continúen los procedimientos contra el Municipio de San Juan.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada

Secretaria del Tribunal de Apelaciones

Footnotes

1   Apéndice, págs. 1–10.
2   Apéndice, pág. 2.
3   Apéndice, pág. 68.
4   Apéndice, págs. 267–273.
5   Apéndice, págs. 90, 157, 158.
6   En 1913, el Tribunal Supremo federal reconoció la inmunidad soberana del Estado Libre Asociado de Puerto Rico en *People of Porto Rico v. Rosaly y Castillo,* 227 U.S. 270 (1913). Esto propició que la Asamblea Legislativa aprobara una serie de estatutos que, a través de los años, han autorizado cierto tipo de demandas contra el Estado.
7   En este caso se interpretó el artículo 96 de la Ley Municipal de 1960, similar al artículo 15.003 de la Ley de Municipios Autónomos.
8   En algunas jurisdicciones estatales estadounidenses, al interpretar un lenguaje similar al de nuestro estatuto, se ha decidido también que en las acciones en reclamación de daños y perjuicios por la culpa o negligencia de la corporación municipal el requisito de la notificación previa no se aplica a las acciones fundadas en la violación de un contrato. *Lund v. Village of Princeton,* 85 N.W.2d 197; 18 McQuillen, *Municipal Corporations* 563, § 53–155; 2 Antieau, *Municipal Corporation Law* 83, § 11.17.

**End of Document**                                  © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 2299366 (TCA)

Iván BENÍQUEZ DÍAZ and his wife
María De Los Angeles Martínez, Appellant

v.

WATER AND SEWAGE AUTHORITY

IN THE COURT OF APPEALS
CASE NO. K DP2009-1039
KLAN201201418
In San Juan, Puerto Rico, April 16, 2013. April 16,
2013.

Appeal from the Court of First Instance, Superior Chamber of San Juan
ON: Damages and Losses

Panel composed of its president, Judge Fraticelli Torres, Judge Hernández Sánchez, and Judge Ramos Torres

### JUDGMENT

FRATICELLI TORRES, REPORTING JUDGE

**\*1** The appellants, Mr. Iván Beníquez Díaz, Mrs. María de los Ángeles Martínez and the community property company constituted among them, request the revocation of a judgment issued by the Court of First Instance, Superior Chamber of San Juan, which dismissed with prejudice the claim for damages filed against the Municipality of San Juan, due to the lack of notification provided in Article 15,003 of the Autonomous Municipalities Act, *infra*. The Court of First Instance did not consider as an exempting factor from such notification that in this case the original claim was filed directly against the city's insurer, Admiral Insurance Company, that after advanced transactional conversations, it notified the appellants that the combined aggregate limit agreed in the insurance contract had been exhausted, so the city would be responsible for the claim. Having addressed the circumstances of the case and assessed the merits of the appeal, we resolved to revoke the appealed judgment.

Let's look at the factual and procedural background that supports this decision.

### I.

On September 16, 2008, Mr. Iván Beníquez Díaz suffered serious damage when he fell into the recess of a sewer located on a sidewalk belonging to the Municipality of San Juan. For this reason, on July 31, 2009, Mr. Beníquez, his wife and the community property company that they have incorporated (hereinafter Beníquez) filed a direct action suit for damages against Admiral Insurance Company (hereinafter "Admiral"), the City's insurer.

After several procedural incidents and serious transactional negotiations between the parties, on April 8, 2011, Admiral announced to the insured municipalities that the combined aggregate limit of the policy issued to them had been exhausted, so it issued them a policy cancellation notice, effective July 1, 2011. Subsequently, on July 5, 2011, Admiral informed Beníquez that they were prevented from continuing with the transactional negotiations in process because the Treasury Department was auditing Municipality of San Juan cases and, while the audit was being carried out, they did not have their clients' authorization to settle any case.[1] As a result of the cancellation notice issued by Admiral, the Treasury Department filed a complaint against the insurer with the Office of the Insurance Commissioner (OCS). As a result of the complaint, on July 1, 2011, *the Commissioner issued a provisional cease and desist order,* **to keep the policy in force** *until the disputes were settled before said forum, to protect the insured municipalities.*[2] However, said order was left ineffective on *December 8, 2011,* and Admiral was released from liability by the OCS. The lawyers who were the legal representatives of the Municipality of San Juan at that time filed their motion to withdraw from representation before the *a quo court.*

**\*2** On February 23, 2012, Admiral filed a motion for summary judgment in this case and claimed, in summary, that under the insurance contract signed with the Municipality of San Juan, it was responsible for investigating, defending, and administering the claims covered by the policy and paying the compensation provided for such claims. However, such obligations were subject to a liability limit, which would end once the maximum amount set in the policy (combined aggregate) is exhausted for the total payment of claims processed and other expenses paid by Admiral. This alleged that, under the insurance contract, once the combined aggregate was exhausted and the policy was canceled, the obligation to pay the filed and pending claims, both against the City *and against Admiral,* corresponded to the insured, in this case, the Municipality of San Juan. In this way, the extinction

of the aggregate produced two immediate effects: the cessation of all liability of Admiral for the defense, adjustment and payment of claims, and the reversal of those liabilities to the municipality or insured.[3] On April 18, 2012, the Court of First Instance issued several orders, among them, declaring admissible the motion for summary judgment in favor of Admiral. On March 1, 2012, Beníquez, *authorized by the court,* filed a second amended lawsuit by means of which he directed the cause of action against the Municipality of San Juan, to demand compliance with the contractual obligation it had with Admiral in the insurance contract. On May 1, 2012, the Municipality of San Juan filed its response to the second amended lawsuit and a motion to dismiss due to lack of notification required by Article 15,003 of the Autonomous Municipalities Act, 21 LPRA § 4703.[4]

On May 14, 2012, Beníquez filed its opposition to the motion to dismiss, through which it alleged that the cause of action against the Municipality of San Juan is contractual in nature and does not require notification to the Mayor, as provided in Article 15,003 of the Autonomous Municipalities Act. Beníquez argued that the City's obligation to assume responsibility for its claim came when the combined aggregate limit was exhausted and the policy was canceled for that reason, according to its terms and conditions.[5]

On May 30, 2012, the Court of First Instance issued the judgment that dismissed Beníquez' claim against the Municipality of San Juan. It stated as a basis that, in order to be able to file a claim against the City to fulfill its contractual obligations, the plaintiff had to have fulfilled the notification requirement to the Mayor within the 90 days established by law. It also concluded that the validity of the insurance contract was conditioned upon compliance with said notification requirement, if not, it would be "contrary to the law, morality and public order", a case prohibited by Article 1207 of the Civil Code, 31 LPRA § 3372.

**\*3** The appellant in this decision appears before this court and alleges that the appellate court erred upon: (1) concluding that when a municipality is sued demanding compliance with a contractual obligation, it is necessary to give prior notice to the Mayor as well as in the actions for damages, pursuant to Art. 15003 of the Autonomous Municipalities Act; and (2) concluding that the validity of the insurance contract between the Municipality of San Juan and its insurer Admiral is conditioned upon compliance with the notification requirement to the Mayor in accordance with Art. 15003, *supra.* Otherwise, that contract would violate the aforementioned special law in accordance with Art. 1207 and Art. 12 of the Civil Code.

As we understand that both errors are aspects of the same dispute, we proceed to analyze them together.

II

-A-

Article 1802 of the Civil Code of Puerto Rico provides that "[w]ho, by action or omission, causes damage to another, involving fault or negligence, is required to repair the damage caused." 31 LPRA § 5141. In other words, a person incurs liability for damages and losses when the injured party and plaintiff demonstrate, through a preponderance of evidence, (1) that there has been an action or omission on the part of the defendant; (2) that there has been negligence in that conduct; and (3) that there is a causal link between the action or omission of the defendant and the damage suffered by the injured party. *García Gómez v. ELA et al.,* 163 DPR 800, 809 (2005); *Toro Aponte v. ELA,* 142 DPR 464, 473 (1997); *Vélez Rodríguez v. Amaro Cora,* 138 DPR 182, 189 (1995).

The State and its agencies would not be subject to the civil liability claim for the acts sanctioned by the aforementioned Article 1802, by application of the principle of sovereign immunity, but partially waived such immunity by allowing citizens to demand economic reparation of the grievances caused by their own fault or negligence or that of their employees and officials. Thus, the State and other government agencies, including municipalities, are subject to civil action for damages under the terms established by the special legislation that authorizes it. *Defendini Collazo et al.* v. *ELA, Cotto,* 134 DPR 28, 40-59 (1993); *Berríos Román* v. *ELA,* 171 DPR 549, 555-556 (2007).[6]

The lawsuits against the Commonwealth are governed by the Law of Claims and Lawsuits against the State, Law No. 104 of June 29, 1955, as amended, 32 LPRA §§ 3077 *et seq.* In the case of municipalities, the Puerto Rico Autonomous Municipalities Act, Law No. 81 of August 30, 1991, 21 LPRA § 4001 *et seq.,* provides the regulatory framework for such actions. In both instances, the injured party must notify their intention to sue the State or its bodies within a certain period and under the terms expressly provided by the text of the law. Although such legislation constitutes a waiver of sovereign immunity, the reality is that they limit the right of a citizen to request reparation due to the government, so its text and purpose must be restrictively interpreted in favor of reparation. *Vázquez Negrón* v. *ELA,* 109 DPR 19, 25 (1979).

**\*4** As regards the case at hand, Article 15003 of the Autonomous Municipalities Act provides:

> Any person who has claims of any kind against a municipality *for personal or property damages, due to the fault or negligence of the municipality,* must submit a written notification to the mayor, clearly and concisely stating the date, place, cause and general nature of the damage suffered. Said notification will also specify the amount of monetary compensation or the type of suitable remedy for the damage suffered, the names and addresses of its witnesses and the address of the claimant, and in cases of harm to a person, the place where he/she received medical treatment in the first instance.
>
> [ ... ] The aforementioned written notification must be submitted to the mayor within ninety (90) days following the date on which the claimant became aware of the damages claimed [... ]

21 LPRA § 4703.

In actions against the State or municipalities, *for damages caused by their fault or negligence,* the notification requirement must be strictly applied, as jurisprudence has reiterated on the subject. *López* v. *Highway Authority,* 133 DPR 243, 246 (1993); *Ortiz* v. *Municipal Government of Ponce,* 94 DPR 472, 476 (1967); *Mangual* v. *Superior Court,* 88 DPR 491, 498-499 (1963). This requirement responds to a specific public purpose, protecting the State and municipalities from actions without their knowledge. Case law indicates other specific purposes for the notification: (1) provide these political bodies with the opportunity to investigate the facts giving rise to the claim; (2) discourage unfounded claims; (3) foster a prompt remedy of the same; (4) allow immediate inspection of the accident site before changes occur; (5) discover the names of the people who have knowledge of the facts and interview them while their memory is more reliable; (6) advise the municipal authorities of the existence of the claim to provide the necessary reserve in the annual budget; and (7) mitigate the amount of the damages suffered through timely intervention, offering appropriate medical treatment and hospitalization to the injured party. *Mangual* v. *Superior Court,* 88 DPR, p. 494.

In any case, case law in force establishes that the situation that the legislator had in mind when he ordered the prior notification requirement within 90 days is the following: (1) when there is a claim for damages for non-contractual liability; (2) the claim is based on the alleged fault or negligence of the municipality; (3) the claim is initiated by the claimant; (4) **the claim is directly against the municipality;** and (5) the municipality has no way of knowing the essential details of the damage for which it is being sued if there is no appropriate notification by the claimant. *López v. Highway Authority,* 133 DPR, 252. (Emphasis ours.)

**\*5** However, the requirement of prior notification to the sovereign in cases of lawsuits against the State or municipalities, "although strictly enforced, [ ... ] is not a strictly jurisdictional requirement." *Insurance Co. of Puerto Rico* v. *Ruiz,* 96 DPR 175, 179 (1968). Nor is its compliance absolute, as it allows for exceptions. This rule "*releases the court from an automatism dictated by the calendar and saves its fundamental power to hear the case and provide justice as the circumstances of the case merit*". (Emphasis ours.) *Loperena Irizarry* v. *ELA,* 106 DPR 357, 359-360 (1977); *Rivera de Vincenti v. ELA,* 108 DPR 64, 69 (1978).

Among the exceptional cases in which the requirement to notify the State will not be required, the following have been identified: (1) *the absence of notification is not due to reasons attributable to the claimant;* (2) *when the risk of the evidence disappearing is minimal;* (3) *when there is documentary evidence of the identity of witnesses;* or (4) *when the State can easily investigate the alleged facts. Passalaqua v. Mun. of San Juan,* 116 DPR 618, 631 (1985). (Emphasis ours.)

On this same matter, case law has expressed:

> [W]here the risk that the objective evidence may disappear is minimal, where there is effective proof of the identity of the witnesses and where the State, therefore, can easily investigate and corroborate the facts alleged in the lawsuit filed—it is not inexorable [the requirement of the prior notification] [ ... ] inasmuch as the objective pursued through the application of the aforementioned legal provision has no reason to be.

*Meléndez Gutiérrez v. ELA,* 113 DPR 811, 815 (1983).

> Insist on a notification once "all [its] virtuality and purpose is exhausted is to transfer the justiciable dispute to the realms of the academic and fictitious." We have the duty to make the Law serve useful social purposes, not abstract theoretical schemes that yield absurd practical results; such as enshrining the loss of rights by giving vitality to a condition or requirement that has already lost its purpose, its reason for being.

*Passalaqua v. Mun. of San Juan,* 116 DPR, on p. 632, which cites with approval *Rivera de Vicentí v. ELA,* 108 DPR, p. 70. On the other hand, Article 20030 of the Insurance Code provides a person who has suffered any damage or harm due to a culpable or negligent act, three alternatives to manage the course of legal action to be taken. These are: (1) direct it directly and only against the insured; (2) *direct it directly* and *only against the insurer;* or (3) direct it against both, understood as insurer and insured. 26 LPRA § 2003.

**\* 6** That is, it is established that direct action for damages against the insurance company in the cause of the damage *is different* and *separate from action initiated against the insured.* By applying this principle, when the injured party decides to direct its cause of action directly against the insurer, the latter does not have to notify the mayor of the municipality within the statutory term. This is because the insurance company of a municipality does not take advantage of the requirement of notifying the mayor within ninety days. *García* v. *Northern Assurance, Co.,* 92 DPR 245, 254 (1965);[7] *Torres Pérez v. Colón Garcia,* 105 DPR 616, 627 (1977).

-B-

In this case, the lack of timely notification cannot be attributed to the claimant since the claimant initiated direct action against Admiral in accordance with the provisions of the Insurance Code, which does not require prior notification to the insured. Similarly, in this lawsuit, the risk of the evidence disappearing is minimal since the court file and that of their previous lawyers can be examined to see the status of the case and what produced the discovery of evidence made. Resolving to the contrary would lead to an undermining in the administration of justice and would be contrary to the general principle of the right not to cause harm to anyone and the compensation for damages arising from Article 1802 of the Civil Code.

In addition, as outlined above, we thus save the "fundamental power [of the Court of First Instance] to hear the case and provide justice *as the circumstances of the case merit*." (Emphasis ours.) *Loperena Irizarry* v. *ELA,* 106 DPR, p. 360. Thus, we achieve "that the Law serves social useful purposes, not abstract theoretical schemes that produce absurd practical results; such as enshrining the loss of rights by giving vitality to a condition or requirement that has already lost its purpose, its reason for being" in this specific case. *Passalaqua v. Mun. of San Juan,* 116 DPR, on p. 632.

However, if these grounds were not sufficient to resolve the question raised, another argument of equal weight leads us to the same result. The obligation of the Municipality of San Juan does not arise solely from the legal source constituted by Articles 1802 and 1803 of the Civil Code, which is the one that requires the aforementioned notification. It also arises from a contractual source, as the appellant argues, for which that notice is not indispensable. Let us consider the argument.

III

-A-

The Supreme Court has stated that the requirement of prior notification of 90 days against a municipality is not applicable in the case of a contractual claim. This jurisprudence rule establishes that "neither from the language used in that article nor from its legislative background is it deduced that that might have been the legislator's intention." On the contrary, there are convincing indications that such provisions were incorporated into the special law "to apply to those claims for damages and losses *ex delictu* arising from Arts. 1802 and 1803 of the Civil Code." *Rosario Quiñones v. Municipality of Ponce,* 92 DPR 586, 591, 593 (1965). And that is the case even though in the breach of a contract there is tortious action by the municipal corporation. This fact does not convert the claimant's action for damages and losses into a tortious action that requires the plaintiff to give prior written notice to the mayor of the municipality. *Id.,* 92 DPR, p. 591.[8] This is the theory of the appellant in this case. He is in the right on this matter.

**\* 7** As regards the contracting of a private party with the State, the High Court has stated that it must be interpreted as if it were a contract between two private parties. This means that, once the State or municipality signs a contract with a private person, both are subject to the general rules relating to obligations and contracts. *De Jesús González* v. *Highway Authority,* 148 DPR 255, 257 (1999).

Article 1044 of the Civil Code provides that the obligations arising from the contracts have the force of law between the contracting parties and must be fulfilled in accordance therewith. 31 LPRA § 2994. The contracts oblige not only what is expressly agreed, but also the consequences that, according to their nature, are in accordance with good faith, use, and the law. P.R. Civil Code, Art. 1210, 31 LPRA § 3375.

An essential principle of the general theory of contracting is that of the relativity of contracts. This principle, as set out in Article 1209 of the Civil Code, postulates that "[c]ontracts only have an effect between the parties granting them and their

heirs; except as regards them, in the event that the rights and obligations arising from the contract are not transferable, or by their nature, or by agreement, or by provision of the law." P.R. Civil Code Art. 1209, 31 LPRA § 3374. This means that the agreements signed by certain persons only bind them and their successors, since no one can oblige or bind another without their consent. *Beiró* v. *Vázquez,* 52 DPR 601 (1938).

However, there is an exception to this principle recognized in the same Article 1209 and it is the so-called stipulation clause in favor of a third party. The second paragraph of that provision provides: *"If the contract contains any stipulation in favor of a third party, it may require its compliance, provided that it made its acceptance known to the obligor before it has been revoked."* (Emphasis ours.)

The stipulation in favor of a third party in a contract is conditional on it being accepted by the third party. Such acceptance may be given expressly or tacitly, by words or by facts that reflect the willingness of the third party to accept the benefit stipulated in its favor. *The filing of a claim by a third party to claim a right based on a stipulation in its favor, contained in a contract in which it did not take part, constitutes an acceptance of the stipulation and obliges the person who signed it to act in the agreed terms.* A.L. Arzuaga v. Hood Constructors Inc., 90 DPR 104, 105 (1964).

In the contract in favor of a third party or with a stipulation in favor of a third party, three subjects or parties necessarily coincide, two of whom sign the contract and another who receives the effect of the stipulation in their favor. The doctrine describes them as the *stipulator or promissory,* which is who causes or originates the benefit; the *promisor,* which is the one that is obliged to carry out the provision in favor of the third party; and the *beneficiary or third party.* In any case, the agreement that creates the stipulation, known as the *liability relationship,* must be valid. The *valuta relationship,* which is what justifies that the stipulator causes or generates the benefit to the third party, must also have a lawful cause, which is presumed to exist and that is valid. P.R. Civil Code, Art. 1229, 31 LPRA § 3434.

**\* 8** In Puerto Rico, the figure of the stipulation in favor of a third party and its usefulness for consumer transactions has been recognized. That said, any transaction between certain parties that recognizes the right of a third party to demand a certain economic benefit, participates in the nature of a stipulation in favor of a third party, and the beneficiary has direct action against the obligor or promisor to enforce it, when the conditions for its claim are specified. See KLCE201001725, *Hernández Soler, Et al.* v. *Oliveras Báez, et al,* judgment of February 10, 2011.

It is worth highlighting the position of Professor Soler Bonnin on this result when she states: "The third party, even if it is not represented in the contract by virtue of this stipulation, will be incorporated into the contract as the creditor of the provision. Therefore, the third party does not become a party but a creditor of the provision stipulated in its favor." Olga Soler Bonnin, *Manual for the study of Contracts in Puerto Rican Civil Law* 58-60 (Editor Puerto Rican Journal of Law 2012).

-B-

Let us analyze the insurance contract signed by the Municipality of San Juan and Admiral to see if it somehow sheds light on the remaining obligations of the Municipality towards the appellants.

In the case at hand, Beníquez filed a direct action against the insurer of the Municipality of San Juan, in accordance with Article 20030 of the Insurance Code, already cited. At the time of initiating the Beníquez lawsuit against Admiral, it had a combined aggregate of $74,000,000. Admiral was summoned, received the lawsuit, and answered it. The cause of action was litigated for several years and was in an advanced stage of negotiation, with the knowledge of the court, in order to dispose of the case through a litigation settlement. In the midst of such procedures, Admiral notified the Municipality of San Juan of the cancellation of the policy because the combined aggregate or agreed liability limit had been exhausted. It arises from the proceedings that the insurance contract had the direct effect of ceasing Admiral's liability to Beníquez and of reversing or directing that liability to the insured municipality. This is how it arises from its text. The aforementioned clauses provide the following:

> [I]t is also understood and agreed that Admiral Insurance Company's duty to investigate, defend and settle covered "claims" or "suits" **shall cease at the time when either the applicable COVERAGE LIMIT of LIABILITY of the individual policy Contract or the Combine Overall Aggregate Limit-All payments amount of $74,000,000 has been exhausted** by reason of Admiral Insurance Company's payment(s) for damages, medical payment, or "other expenses".
>
> In the event that the Combined Overall Aggregate Limit-All Payments amount of $74,000,000 has been exhausted by reason of Admiral Insurance Company's payment(s) for damages, medical payment or "other expenses" that where covered and validly paid under the Policy-Contracts **the Named-Insured *shall assume,* as of the date of such exhaustion, Admiral's duty to investigate, defend and settle "claims" or "suits" as covered under the terms of**

this Policy-Contract.

**\* 9** Appendix, pp. 70-71. (Emphasis ours.)

In addition, under the endorsement, the insured also undertook to indemnify and release Admiral from all liability and expenses, including legal expenses, related to any claim or litigation filed and pending against Admiral. Specifically, the endorsement provides the following:

> [Y]ou hereby agree to hold harmless and indemnify us for any liabilities, costs, or expenses, including our legal expenses, in connection with any claim or legal action against us including, but not limited to, any claim or action against us seeking to recover damages, liabilities or expenses for which any of you may be held liable but that are not covered by the terms of this Policy-Contract (e.g., extra-contractual obligations), or that are in excess of either of the applicable COVERAGE LIMIT of LIABILITY under above listed Policy-Contracts or the Combined Overall Aggregate Limit All Payments amount of $74,000,000.

Appendix, pp. 70-71. (Emphasis ours.)

By virtue of these clauses, the Court of First Instance authorized Beníquez to take the lawsuit to the Municipality of San Juan. However, the court subjected the cause of action to the criteria adopted for an action based on Articles 1802 and 1803 of the Civil Code. That is why it requested the notification within a period of 90 days, the omission of which resulted in the dismissal of the amended claim.

The Municipality states before us that Beníquez cannot demand the specific fulfillment of that contract because it was not a party to the aforementioned contractual obligation. He is mistaken.

In this case, we are dealing with the concept of a contract with a stipulation in favor of a third party. Because the aforementioned clauses in question have the effect of safeguarding direct causes of action, still pending, against Admiral, as an insurer, and the Municipality consented to assume its liability to those plaintiffs in the event that the combined aggregate of its insurer is exhausted, as indeed happened, Beníquez may demand that it assume that liability for its claim. This was submitted in a timely manner, was investigated and assessed by Admiral and was pending transaction or judicial resolution due to the early release of Admiral, when the combined aggregate of the policy was exhausted. If such action against the Municipality arises from the transcribed clauses, it is one of a contractual nature, by means of which a beneficiary third party, the injured appellant, demands specific compliance of the clause signed in its favor between Admiral and the Municipality.

Having accepted the stipulation in his favor with the submission of the amended claim in which he included the Municipality as a defendant, Beníquez may demand its specific compliance. When the aforementioned clauses were activated, the Municipality of San Juan was subrogated in Admiral's position with respect to Beníquez's claim. Therefore, despite the fact that Beníquez was not a party to the contractual relationship between Admiral and the Municipality, he may demand compliance with the obligation assumed in its favor by the Municipality of San Juan.

**\* 10** If the circumstances of the case at hand were not exemptions from the notification required by the Autonomous Municipalities Act to the Mayor when dealing with actions arising from the civil liability of the Municipality, we resolve that in this lawsuit the responsibility of the Municipality of San Juan also arises from the stipulation in favor of a third party contained in the insurance contract.

Since it is a cause of action of contractual origin, other than the tort action brought against Admiral, the Court of First Instance erred by dismissing the amended claim filed by the appellants against the Municipality of San Juan due to the lack of a notification that was not necessary. To resolve to the contrary would go against the principle established in Article 1044 of the Civil Code, which supposes that, once the contracting parties are bound, they are subject to the law of the contract and cannot be unilaterally separated or modify that legal relationship.

The Court of First Instance also erred in determining that the validity of the insurance contract is conditioned on compliance with the notification requirement to the Mayor, because under the principle of the autonomy of will, the Municipality could assume a valid obligation that did not represent any impairment to its sovereign prerogatives, since its liability was limited to the pending causes of action or *sub judice* on the date on which the exhaustion combined aggregate was notified, in which there is a judicial record available and a historical perpetuity report in the files of its previous insurer. Such safeguards make it possible to conclude that this contract is not contrary to the law, morals or public order since the stipulation in dispute was part of the reason for the insurance contract for the insurer, whose coverage was and is indispensable in the municipal public administration.

Releasing the Municipality from such an obligation would have the effect of frustrating the right of a citizen to receive compensation for his grievances, by procedural subterfuge,

even when he was diligent in filing it against whoever was responsible for its payment, but it provided for its subrogation in case of being released from compliance. If the Municipality does not comply as principal debtor for the grievance, it must do so as a surrogate of its responsibility.

## IV

Due to the reasons explained, the appealed judgment is revoked and it is ordered that the proceedings against the Municipality of San Juan continue.

This was agreed and ordered by the Court and certified by the Clerk of the Court of Appeals.

Dimarie Alicea Lozada
Clerk of the Court of Appeals

Footnotes

1  Appendix, pp. 1–10.
2  Appendix, p. 2.
3  Appendix, p. 68.
4  Appendix, pp. 267–273.
5  Appendix, pp. 90, 157, 158.
6  In 1913, the U.S. Supreme Court recognized the sovereign immunity of the Commonwealth of Puerto Rico in *People of Puerto Rico v. Rosaly and Castillo,* 227 U.S. 270 (1913). This led the Legislative Assembly to approve a series of statutes that, over the years, have authorized certain types of claims against the State.
7  In this case, Article 96 of the Municipal Law of 1960 was interpreted similarly to Article 15003 of the Autonomous Municipalities Law.
8  In some US state jurisdictions, in interpreting language similar to that of our statute, it has also been decided that in actions claiming damages and loss due to the fault or negligence of the municipal corporation, the prior notification requirement does not apply to actions based on contract breaches. *Lund. v. Village of Princeton,* 85 N.W.2d 197; 18 McQuillen, *Municipal Corporations* 563, § 53–155; 2 Antieau, *Municipal Corporation Law* 83, § 11.17.

**End of Document**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**TRANSPERFECT**

| | |
|---|---|
| **DATE OF TRANSLATION:** | 26-Aug-21 |
| **ELECTRONIC FILE NAME:** | Beniquez Diaz v Autoridad de Acueductos y Alcantarillados (1) |
| **SOURCE LANGUAGE:** | Spanish |
| **TARGET LANGUAGE:** | English |
| **TRANSPERFECT JOB ID:** | US1078036 |

TransPerfect is globally certified under the standards ISO 9001:2015 and ISO 17100:2015. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

TCert v. 2.0