IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.<br><br>Debtors[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>  as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-4780 (LTS)<br><br>Re: ECF Nos. 16820, 16833, 16950 and 16952 in Case No. 17 BK 3283-LTS and ECF Nos. 2498, 2499, 2517 and 2521 in Case No. 17 BK 4780-LTS<br><br>Court Filing Relates Only to PREPA and Shall Only be Filed In Case No. 17-BK-4780 (LTS) |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

1

## **FOREMAN ELECTRIC SERVICES INC.'S RESPONSE TO PREPA'S OPPOSITION TO VERIFIED MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM**

Comes now FOREMAN ELECTRIC SERVICES INC. ("Foreman"), by and through the undersigned counsel, hereby respectfully states:

### I. Introduction

"[I]n order to be genuine, the public interest requires a high amount of honesty and fair play." Producciones Tommy Muniz Inc. v. COPAN, 108 D.P.R. 699,754 (1979).

On May 27, 2021, Foreman filed its *Verified Motion for Allowance of Administrative Expense Claim* ("Verified Motion"). *See* Case No. 17-04780-LTS, Docket No. 2498. In it, Foreman discussed, with specific facts and legal arguments, that its request for an administrative expense claim complies with the requirements set forth in 11 U.S.C. § 503 of the Bankruptcy Code as incorporated by section 301 of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA"). *See* 48 U.S.C. § 2161(a). Therefore, Foreman's claim should also enjoy administrative expense priority as allowed pursuant to 507 of the Bankruptcy Code.

On July 16, 2021, the Puerto Rico Electric Power Authority ("PREPA") filed its *Opposition to Verified Motion of Foreman Electric Services Inc. For Allowance of Administrative Expense Claim* ("Opposition") on July 16, 2021. *See* Case No. 17-03283-LTS, Docket No. 17403. In the Opposition, PREPA denies Foreman's arguments and essentially alleges that Foreman was not in compliance with the *Master Service Agreement* and, as such, does not meet the requirements to enjoy a post-petition right to payment in accordance with state law. In an attempt to confuse this Court, PREPA provided limited and one-sided arguments concerning the general state law of contracts.

2

In compliance with this Court's Scheduling Order as entered on Docket No. 2599, Case No. 17-04780-LTS, Foreman hereby submits its Response to PREPA's Opposition. Foreman reaffirms its discussion as stated in its Verified Motion and urges this Court to enter an order granting as an administrative expense claim the post-petition costs and expenses incurred by Foreman associated with the restoration of Puerto Rico's electric grid after the passing of hurricane María.

### II. Foreman has a valid administrative claim pursuant to section 503

In the First Circuit, "a request for priority payment of an administrative expense pursuant to Bankruptcy Code § 503(a) may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor." In re Hemingway Transp., Inc., 954 F.2d 1, 5 (1st Cir. 1992); In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 481 F. Supp. 3d 60, 64 (D.P.R. 2020). In turn, section 507 of the Code grants priority to administrative expenses under section 503(b). "Without an assurance of priority, third parties (…) entering contracts with Puerto Rico's instrumentalities, like PREPA, have no guarantee their claims to payment will be paid." In re Financial Oversight and Management Board for Puerto Rico, Case No. 20-2041, 1st Cir., August 12, 2021. In addition, a "right to payment" generally refers "to a right to payment recognized under state law." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 451 (2007).

PREPA argues that Foreman does not have a right to payment under Puerto Rico law, because it allegedly did not comply with the covenants of the Contract, thus failing to abide by Puerto Rico's government contracting laws and case law. Foreman disagrees with PREPA's conclusion. As it will be discussed below, Foreman has a right to payment under state law

3

emanating from contractual damages, as recognized by the Puerto Rico Civil Code. Furthermore, if PREPA intends for this Court to exclusively rule on Foreman's motion under state law, it should have provided a more comprehensive analysis of Puerto Rico's applicable law, particularly, those related to its binding nature and the general good faith requirement of contracts; this last one has to be considered from its initial states and during its execution.

### A. The RFP 77844 and Foreman's Master Service Agreement are post-petition transactions

In February 2018, PREPA initiated the Request for Proposal ("RFP") 77844 related to the restoration of electric utilities after the damage caused by Hurricane Maria. RFP 77844 required that the selected contractor "shall" provide certain "required resources," including but not limited to the following: (a) 100 transmission linemen, (b) 200 distribution linemen, (c) 20 civil workers, damage assessors, heavy equipment operators, 20 logistics, safety and others (with a minimum of sixty percent of the workforce being sourced from the contractor's own workforce), (d) transmission digger trucks, (e) distribution digger trucks, (f) auger trucks, (g) distribution bucket trucks, (h) transmission bucket trucks, (i) pickups, (j) dozer, semi tractors, (k) 60 and 30 ton cranes, (l) semi tractors and haul. *See* RFP, Appendix A – Technical Specifications, at 1.1 "Scope of Phase 2 and Phase 3 Restoration." Moreover, RFP 77844 unequivocally stated that "[t]hese resources *shall* be in addition to any available personnel or equipment on grounds," and that "[r]esources *must* be available to start working at the beginning of Phase 2: March 5, 2018." The contractor was then required to include in its proposal a "logistic plan for mobilization" along with an "estimated cost for mobilization." Id. The RFP also stated that "PREPA intends to pay Standby Pay as soon as the contractor is notified that their assistance is required for a specific storm." Appendix A at 1. "Scope." Last, but certainly not least, RFP 77844 stipulated that any awarded

4

contract "*shall* consist of PREPA's Contract together with the RFP Documents, including, but not limited to, the executed Proposal Documents, which shall be collectively referred to as the Contract Documents." ("Contract Documents[2]"). *See* RFP, Exhibit 1 – Scope of Services, at § 2.3.1.

As alleged in the Verified Motion, Foreman sought clarification on the start date of March 5, 2018, since it was before the project award date of March 12, 2018. *See* Verified Motion at p. 4. PREPA responded that the "start date will be two weeks after the contract is awarded." Addendum I of RFP 7784 at p. 3. In a subsequent question on the same topic, PREPA specified that contractor "crews *shall be mobilized* and *ready to start* works [sic] two weeks after contract is awarded." (Emphasis added) Id. at p. 5. As for any reimbursable costs, PREPA stated that it will reimburse for "[c]harges, at rates internally used by Contractor, for the use of transportation equipment and *other equipment requested*." Id. at pp. 3-4, 6. It is crucial to note that PREPA's statements detailed above are not superfluous. The statements were appended to the RFP, which is an essential component of the Contract between Foreman and PREPA, thereby rendering such statements as the law between the parties. S.L.G. Irizarry v. S.L.G. Garcia, 155 D.P.R. at 725 ("contracts have force of law between the parties, who must fulfill what was accorded as long as it does not contravene the law, morals or public order").

Ultimately, Foreman was selected for the contract with PREPA on March 29, 2018 and, in compliance with the Contract Documents, commenced mobilization efforts on April 12, 2018. This is to say, Foreman commenced mobilization within PREPA's expected two-week timeframe,[3] which required a significant amount of costs. Even though Foreman was selected for the contract

---

[2] The terms *Contract* and/or *Contract Documents* will be used indistinctively to refer to the Master Service Agreement executed between Foreman and PREPA.

[3] *See* Addendum I of RFP 7784 at p. 3.

5

with PREPA on March 2018, it was not until January 29, 2019 when PREPA and Foreman subscribed the Master Service Agreement ("MSA"). This delay was not caused by Foreman. The MSA and its amendments were duly registered before the Office of the Comptroller of Puerto Rico. The signing of the MSA almost a year later does not alter the fact that Foreman's proposal and the RFP constituted important components of the Contract Documents. Therefore, there is no doubt that the RFP Documents and subsequent Contract subscribed between Foreman and PREPA are documents containing the agreements between the parties and, as such, the parties consented to their binding effect.

### B. Puerto Rico's General Law of Contracts

It is well established that the contracts between the government, or related entities, and a private party, are subject to the same regulations and set of doctrines as if the contract were between private parties. *See* Municipio de Mayaguez v. Lebrón, 167 D.P.R. 713 (2006); Campos Ledesma v. Compañía de Fomento Industrial, 153 D.P.R. 137 (2001); De Jesús González v. A.C, 148 DPR 255 (1999). As such, the Contract subscribed between PREPA and Foreman should be review under this rationale.

Foremost, a valid contract is considered to have force of law between the parties. *See* S.L.G. Irizarry v. S.L.G. Garcia, 155 D.P.R. 713, 725, 2001 WL 1555664, _____ P.R. Offic. Trans. ___ (2001); *See also* 31 L.P.R.A. § 2994[4]. Generally speaking, "[a] contract exists the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or render some service." Article 1206, 31 L.P.R.A. § 3371. Parties to a contract can "establish the clauses and conditions which they may deem advisable, provided they are not in

---

[4] This is the reference to the Puerto Rico Civil Code.

6

contravention of law, morals, or public order." Article 1207, 31 L.P.R.A. § 3372. Furthermore, contractual good faith is an integral part of any contractual obligation between parties, **"[contracts] are binding, not only with regard to the fulfilment of what has been expressly stipulated, but also with regard to all the consequences which**, according to their character, are in accordance with good faith, use and law." (Emphasis ours). Article 1210, 31 L.P.R.A. § 3375. *See also* BPPR v. Sunc. Talavera, 174 D.P.R. 686 (2008); Adria Int'l Group, Inc. v. Ferré Dev., Inc., 241 F.3d 103, 108-09 (1st Cir. 2001) ("Puerto Rican law imposes the duty of good faith performance on contracting parties"). The duty of good faith performance

> imposes on the parties negotiating or attempting to negotiate, an archetype of social conduct, loyalty and fidelity to the word given . . . and consists in that every party to the contractual relation commits himself trustingly to the loyal conduct of the other party. Each confides in that the other will not defraud him . . . The parties are under the obligation to conduct themselves according to good faith in the sense that each is burdened by a reciprocal loyalty to observe conduct that is socially valuable and demandable.

Producciones Tommy Muniz, Inc. v. COPAN, 13 P.R. Offic. Trans. 664, 678, 113 D.P.R. 517 (1982).

Likewise, the Supreme Court of Puerto Rico has decreed that good faith necessitates that the parties act in accordance with a series of principles that the legal conscience considers them necessary **even if they have not been formulated in the exercise of rights and in the fulfillment of obligations**. (Emphasis ours). *See* Colón v. Glamorous Nails, 167 D.P.R. 33, 45 (2006). In light of the foregoing, Foreman emphatically sustains that good faith is a general principle of law that pervades and is deeply rooted in our entire legal order including contractual relationships. *See* Marcial v. Tomé, 144 D.P.R. 522, 542 (1997) ("The law demands the mutual respect of **good faith from the contracting parties at the time the binding relationship is formed, during the development of the relationship, and in executing the obligation**") (Emphasis added); Ramírez

7

v. Club Cala de Palmas, 23 P.R. Offic. Trans. 311, 123 D.P.R. 339 (1989); Catalytic Ind. Maint. Co. v. F.S.E., 21 P.R. Offic. Trans. 92, 121 D.P.R. 98 (1988); H.U.C.E. de Ame. v. V. & E. Eng. Const., 15 P.R. Offic. Trans. 937, 115 D.P.R. 711 (1984); Velilla v. Pueblo Supermarkets, Inc., 11 P.R. Offic. Trans. 732, 111 D.P.R. 585 (1981).

As it pertains to contractual hermeneutics, the Civil Code requires that "[i]f the terms of the contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." S.L.G. Irizarry v. S.L.G. Garcia, 155 D.P.R. at 725 (*quoting* 31 L.P.R.A. § 3471). Further, when a Court intervenes in contractual relations, it should balance the legal interests affected by its intervention. *See* Coop. Sabanena v. Casiano Rivera, 184 D.P.R. 169, 181-82 (2011). As a part of its analysis, the Court must consider the doctrine of the autonomy of the will, which governs contractual relations. *See* Coop. Sabanena v. Casiano Rivera, 184 D.P.R. at 182. The Court, in exercising its power to intervene and moderate the contractual autonomy of the parties, must exercise extreme care and its intervention must be clearly justified "because of its harmful effects on the stability of contracts and on legal certainty." López de Victoria v. Rodriguez, 113 D.P.R. 265, 271, 13 P.R. Offic. Trans. 341, 349 (1982). Indeed, intervening with the autonomy of the parties has the effect of modifying, or even annulling a law. See Coop. Sabanena v. Casiano Rivera, 184 D.P.R. at 182.

Therefore, and under state law, all contracts must be analyzed and scrutinized, first and foremost, under the good faith requirement at all times, not only since the time the relationship is formed, but during the development of the relationship and upon the execution of the terms of the agreements. This analysis is conveniently missing from PREPA's Opposition since it is damaging to its legal position. It is an uncontested fact that Foreman negotiated from a good faith position; Foreman dutifully complied with the terms of the RFP, and after the contract was awarded,

conducted itself in a good-faith manner, procuring its proper compliance. In turn, PREPA's good faith is questionable in light of its failure to provide Foreman with a Notice to Proceed, notwithstanding the fact that a restoration contract was awarded. As such, Foreman is entitled to a right to payment in accordance with state law.

### C. Foreman's Right to Payment Pursuant to PREPA's Breach of Contract

Foreman has a right to payment pursuant to state law due to PREPA's willful breach of the Contract as it conducted acts contrary to its contractual obligations with Foreman. Under Puerto Rico law, the elements of a cause of action for breach of contract are: (1) valid contract, (2) a breach of contract, and (3) resulting damages. First Medical Health Plan, Inc. v. Caremark PCS Caribbean, Inc., 681 F. Supp. 2d 111, 116 (D.P.R. 2010). Also, as argued above, when a governmental agency or municipality is a party to a contract and amendment thereto, the contract or amendment must be reduced to writing, executed by both parties, and registered with the Office of the Comptroller, Las Marías v. Municipio de San Juan, 159 D.P.R. 868 (2003).

In the present case, the Contract Documents subscribed between PREPA and Foreman were in writing, executed by both parties and duly registered with the Office of the Comptroller. Therefore, the Contract Documents comply with the state law requirements to ensure protection of the public funds and trust. Now, the second part of the analysis is to determine whether PREPA acted in accordance with the precepts of the contract's theory. It is Foreman's position that PREPA did not, that PREPA conducted acts contrary to its contractual obligations with Foreman and, thus, Foreman has a right to payment for damages.

Since the inception of the Contract, there is no doubt that it was, or should have been PREPA's intention to have a prompt and adequate response to assist the population of Puerto Rico

after the catastrophic natural event. "[T]he target in contractual interpretation is to determine what are the real and common intentions of the contracting parties." (translation ours) *See* Municipio Mayaguez v. Lebron, 167 D.P.R. 713 (2006). PREPA identified Foreman as an adequate contractor, with the capability, as it was demonstrated, to quickly mobilized assist in the restoration of electric grid. Indeed, Foreman always operated in good faith and under the impression that "[f]or every material requirement of this Contract, time is of the essence." RFP 77844, 2.14.20.

Pursuant to RFP 77844, Foreman was required to respond immediately to fulfill its obligations under the RFP and the MSA. *See* RFP 77844, 1.1.1. Therefore, as soon as Foreman was selected to be a contractor, on March 29, 2018, it mobilized its resources to be immediately available to PREPA in its efforts to restore and reconstruct Puerto Rico's sole electrical system. Foreman's equipment was thus ready and available as per the RFP and Contract pending PREPA's orders for further mobilization. Yet, PREPA purposely delayed the execution of the Contract, did not procure Foreman, and instead accelerated payments to Cobra and used Cobra in restoration tasks to the exclusion of other contractors such as Foreman. *See* United States of America v. Ahsha Nateef Tribble, Donal Keith Ellison, and Jovanda R. Patterson, Criminal Case No.19-00541 (FAB), Docket No. 3 ¶ 44. PREPA's failure to submit a Notice to Proceed to Foreman, contrary to the Contracts Documents and the parties' intention, while favoring another contractor whose former president was later accused of criminal conduct, constitutes a breach of contract under Puerto Rico law, causing considerable damages to Foreman.

Foreman suffered permanent financial damages as a result of keeping its equipment and other resources mobilized and obligated to PREPA for over twenty (20) months without receiving any payment. Foreman was unable to procure and obtain additional work orders in continental United States. Therefore, Foreman's possibilities of obtaining capital for future operations and

10

continue the corporation's ongoing concern have been severely impaired. Likewise, during the time period that Foreman's equipment sat idle in Puerto Rico, Foreman would have generated revenues and profits from electric work in the oil and gas industry in the continental United States.

Of no less importance, Article 3 of the MSA establishes that "PREPA will make payments for the work performed on a Time and Materials basis at the rates, and subject to the terms, set forth in this Contract, specifically under Appendix B and Appendix C." In turn, the MSA made it evidently clear that "in no event will Contractor's invoices be paid later than sixty (60) days after the date of the invoice." Article 3 of the MSA. Foreman submitted and resubmitted four separate invoices to PREPA for the costs incurred related to the mobilization and demobilization of Foreman's equipment. Still, PREPA has refused and continues to refuse to reimburse Foreman in direct contravention of its contractual obligations.

Based on the foregoing, Foreman met the requirements set forth by the Bankruptcy Code and the First Circuit for the allowance of its administrative expense claim. The RFP and the Contract subscribed between the parties were events that occurred after the filing of the petition under Title III of PROMESA and Foreman has a right to payment recognized under state law.

### III. In the Alternative, the Doctrine of Fundamental Fairness is Applicable Here

If this Court were to conclude that Foreman's administrative expense claim is without the required components, it may still qualify for administrative treatment. The fundamental fairness "exception," has been interpreted in the First Circuit to support administrative expense claims for two categories: (1) "when the debtor's postpetition operations occasion tortious injuries to third parties," or (2) "when the claim arises from postpetition actions that deliberately violate applicable law and damage others." In re Healthco Int'l, Inc., 272 B.R. 510, 513 (B.A.P. 1st Cir.), aff'd, 310 F.3d 9 (1st Cir. 2002), (citing Reading Co. v. Brown, 391 U.S. 471, 477 (1968) and In re

11

Charlesbank Laundry, 755 F.2d 200, 203 (1st Cir. 1985)). PREPA briefly argues that the fundamental fairness doctrine is inapposite because Foreman supposedly violated the terms of the MSA. For the reasons that follow, Foreman contends that the second category of the fundamental fairness doctrine is applicable here.

A. *PREPA's Actions Deliberately Violate Applicable Law and Damaged Foreman*

Foreman hereby incorporates and realleges paragraphs 39 and 40 of its Verified Motion. In them, Foreman exposed how PREPA favored a contractor which its former president is now part of a criminal proceeding for unlawful conduct, causing damages to Foreman. This resulted in loss of opportunities and Foreman's inability to pursue other jobs in continental United States since it sad idle for over a year and was contractually obligated to PREPA. Although the above in itself is enough to conclude that the second category of the fundamental fairness doctrine is applicable here, PREPA violated another applicable law: the good faith inherent in contractual relationships.

During the ten (10) months PREPA delayed the execution of the MSA, Foreman had mobilized all the necessary equipment needed to commence the restoration and reconstruction services it was hired to do. By April 12, 2018, PREPA knew Foreman had started mobilizing all the equipment necessary to perform the emergency work under the impression that time was of the essence and by their own admission that "crews shall be mobilized and ready to start works [sic] two weeks after contract is awarded." Addendum I of the RFP 77844 at p. 5. PREPA intentionally remained silent and did not procure Foreman nor did it order Foreman to demobilize. Not only did PREPA know of Foreman's mobilization efforts, but it also refused to pay for such efforts as required by Appendix B of the MSA, which states that mobilization and demobilization "shall be paid on a cost reimbursement basis." Thus, PREPA refused to pay and acted contrary to its contractual obligations. On the one hand, PREPA expected Foreman to be mobilized within

12

two weeks after the contract was awarded, yet on the other it has refused to pay Foreman for its performance of this expectation. It cannot be stressed enough how PREPA continuously represented to Foreman that time is of the essence and that Foreman needed to be ready to commence work immediately. Nonetheless, PREPA kept Foreman on standby for over one year, fully aware of Foreman's mobilization efforts. In the end, PREPA's post petition actions violated the implied covenant of good faith and caused damages to Foreman.

PREPA argues that if the Court were to apply the fundamental fairness doctrine it "would be validating an equitable remedy that, pursuant to Puerto Rico's case law, is not available to Foreman." PREPA's Opposition at p. 14. Yet, there are two crucial distinctions that defeat PREPA's contention. First, the case law cited in PREPA's Opposition deals with the *formalities* of contracts executed with the government. For example, Rodríguez-Ramos v. ELA, 190 D.P.R. 448 (2014) and Colón-Colón v. Mun. de Arecibo, 170 D.P.R. 718 (2007) both deal with the failure to execute the public contract in writing, which is a necessary formality for its execution.

Second, the application of the fundamental fairness doctrine should not be construed to mean an "application of any remedy in equity" under Puerto Rico law. When local courts employ remedies in equity, they do so through the powers conferred to them through Article 7 of the 1930 Civil Code: "When there is no statute applicable to the case at issue, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration." 31 L.P.R.A. § 7. In other words, remedies such as unjust enrichment can only be invoked in absence of applicable law. *See* Mun. de Quebradillas v. Corp. Salud Lares, 180 D.P.R. 1003, 1020 (2011) (noting that unjust enrichment occurs only when there is no legal provision that excludes its application).

But here, section 503 of the Bankruptcy Code is applicable law, and the fundamental fairness doctrine emanates from it. Indeed, the U.S. Supreme Court's analysis of relevant statutory provisions in Reading Co. v. Brown stated that "the words 'subsequent to filing the petition' refer to the period subsequent to the arrangement petition, and the words 'preserving the estate' **include the larger objective**, common to arrangements, of operating the debtor's business with a view to rehabilitating it." Reading Co. v. Brown, 381 U.S. at 475 (emphasis added). Hence, the fundamental fairness doctrine is a result of the statutory objective of section 503 of the Bankruptcy Code and not a "remedy in equity" as defined by Puerto Rico law. In light of the foregoing, the fundamental fairness doctrine is not inapposite as PREPA claims and its application is not inconsistent with Puerto Rico's case law.

### IV. Conclusion

Foreman incurred post-petition costs, after being awarded the restoration Contract and complying with the terms specified by PREPA, purportedly for the benefit of the Puerto Rican people. Between the years 2018 and 2019, 226 pieces of Foreman's equipment, including 117 bucket trucks and backyard machines and 50 digger derrick trucks, were mobilized to Puerto Rico. This equipment sat ready and "available"—per the terms of the RFP and contract—to be used for more than one (1) year, pending PREPA's orders for further mobilization, yet none were procured. It is notable that PREPA always conveyed a sense of urgency in restoring power to the people of Puerto Rico. Foreman was ready and available at the disposal of PREPA to be used and to assist in the restoration of the electrical grid. As such, Foreman's costs and expenses represented a benefit to the estate. Therefore, and as discussed above, Foreman's claim complies with the requirements of section 503 of the Bankruptcy Code, as incorporated by section 301 of

14

PROMESA. Consequently, Foreman respectfully urges this Court to enter an order granting the Verified Motion.

WHEREFORE it is respectfully requested that this Court enter an order determining that Foreman's claim be considered an administrative expense of Debtor, entitled to administrative priority pursuant to Section 503 and 507 of the Code and enter any other relief as is just and proper.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico, this 31st day of August 2021.

I HEREBY CERTIFY that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the participants in said record including the US Trustee, counsel for AAFAF, counsel for the Oversight Board, Counsel for the Creditor's Committee, and Counsel for the Retiree Committee.

**MCCONNELL VALDES LLC**
*Counsel for Foreman Electric Services, Inc.*
270 Munoz Rivera Avenue, Suite 900
Hato Rey, Puerto Rico 00918

P.O. Box 364225
San Juan, PR 00936
Tel. 787-759-9292
Fax. 787-759-8282

By: *s/Antonio A. Arias-Larcada*
Antonio A. Arias-Larcada
USDC PR 204906
aaa@mcvpr.com

**DUNLAP BENNETT & LUDWIG**

Appearing *Pro Hac Vice* for Foreman Electric Services, Inc.

6660 South Sheridan Road, Suite 250
Tulsa, Oklahoma 74133
(918) 998-9350 – Telephone
(918) 998-9360 – Facsimile

By: */s/ David R. Keesling*
David R. Keesling,
dkeesling@dbllawyers.com

15