# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>               Debtors.[1] | PROMESA<br>Title III<br><br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**OBJECTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE COMMONWEALTH OF PUERTO RICO, THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, AND THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, TO MOTION FOR THE RECONSIDERATION OF THE ORDER ENTERED ON AUGUST 4, 2021 AT THE OMNIBUS HEARING CONCERNING THE "THREE HUNDRED FORTY-FIFTH OMNIBUS OBJECTION"**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 4

ARGUMENT ........................................................................................................ 7

    A.    The Court Correctly Interpreted 11 U.S.C. 503(b)(1)(A)(ii) By Reclassifying the Group Wage Litigation Claims as General Unsecured Claims................................................. 8

    B.    The Court Correctly Rejected the Group Wage Claimants' Arguments regarding an Alleged Commonwealth "Policy" to Pay Pre-petition Wage-related Litigation Claims in Full. ........................................................................................................12

    C.    *Reading* Is Inapplicable Here. ....................................................................16

CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albarran v. Rivera (In re Rivera)*,
   627 B.R. 765 (1st Cir. 2021) ..............................................................7

*Banco Bilbao Vizcaya Argentaria P.R. v. Santiago Vázquez (In re Santiago
   Vázquez)*,
   471 B.R. 752 (1st Cir. B.A.P. 2012) ....................................................7

*Encanto Rests., Inc. v. Vidal (In re Cousins Int'l Food Corp.)*,
   553 B.R. 197 (Bankr. D.P.R. 2016),
   *aff'd in part, appeal dismissed in part sub nom. Cousins Int'l Food, Corp. v.
   Vidal*, 565 B.R. 450 (B.A.P. 1st Cir. 2017) .......................... 8, 13, 16

*Guzmán v. Rentas (In re Nieves Guzmán)*,
   567 B.R. 854 (1st Cir. B.A.P. 2017) ...............................................7, 13

*Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.)*,
   394 B.R. 765 (Bankr. D. Del. 2008)................................... 10-11, 12

*In re 710 Long Ridge Rd. Operating Co. II, LLC*,
   505 B.R. 163 (Bankr. D.N.J. 2014) ....................................................10

*In re Calumet Photographic, Inc.*,
   No. 14-08893, 2016 WL 3035468 (Bankr. N.D. Ill. May 19, 2016) ....................10

*In re Fin. & Oversight Mgmt. Bd. for P.R.*,
   481 F. Supp. 3d 60 (D.P.R. 2020) .................................................16-17

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   427 F. Supp. 3d 260 (D.P.R. 2019),
   *reconsideration denied*, 612 B.R. 821 (D.P.R. 2019)......................7, 8, 9

*In re Hemingway Transp.*,
   954 F.2d 1 (1st Cir. 1992) ...............................................................17

*In re Pecht*,
   53 B.R. 768 (Bankr. E.D. Va. 1985) .................................................14

*In re Philadelphia Newspapers, LLC*,
   433 B.R. 164 (Bankr. E.D. Pa. 2010) ............................................9, 10

*In re Trump Entm't Resorts, Inc.*,
   No. 14-12103, 2015 WL 1084294 (Bankr. D. Del. Mar. 9, 2015)......................11

*Jorge Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*,
  37 F.3d 25 (1st Cir. 1994) ..................................................................................7

*Marie v. Allied Home Mortg. Corp.*,
  402 F.3d 1 (1st Cir. 2005) ..................................................................................7

*Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC*,
  794 F.3d 200 (1st Cir. 2015) ..............................................................................7

*Reading Company v. Brown*,
  391 U.S. 471 (1968) ................................................................................ 3, 16, 17

## STATUTES

11 U.S.C. § 503 ...........................................................................................*passim*

11 U.S.C. § 1129 ..................................................................................................14

48 U.S.C. §§ 2101-2241 .......................................................................................1

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

as sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the

Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees Retirement

System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the

Commonwealth and HTA, the "Debtors") pursuant to section 315(b) of the *Puerto Rico Oversight,*

*Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this opposition to

the *Motion for the Reconsideration of the Order Entered on August 4, 2021, at the Omnibus*

*Hearing Conserning* [sic] *the "Three Hundred Forty-Fifth Omnibus Objection"* [ECF No. 17892]

(the "Reconsideration Motion"), filed by the Group Wage Litigation Claimants (as defined below),

and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      After full briefing and oral argument, on August 4, 2021, this Court ruled that

nineteen Group Wage Claims[3]—each filed by individual plaintiffs in pre-petition litigations

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3] The Group Wage Claims include: Proof of Claim No. 1845, filed by Conchita Cox Schuck ("Cox Schuck") against ERS on March 5, 2018 (the "Cox Schuck Claim"); Proof of Claim No. 136186, filed by Miriam R. Cruz Barreto ("Cruz Barreto") against ERS on July 9, 2018 (the "Cruz Barreto Claim"); Proof of Claim No. 39906, filed by Evelyn Santiago Díaz ("Santiago Díaz") against ERS on May 25, 2018 (the "Santiago Díaz Claim"); Proof of Claim No. 27602, filed by Rosa Velez Bonilla ("Velez Bonilla") against ERS on May 24, 2018 (the "Velez Bonilla Claim"); Proof of Claim No. 45321, filed by Evelyn Vizcarrondo Flores ("Vizcarrondo Flores") against ERS on May 31, 2018 (the "Vizcarrondo Flores Claim"); Proof of Claim No. 12337, filed by Signa Magaly Cabrera Torres ("Cabrera Torres") against the Commonwealth on May 8, 2018 (the "Cabrera Torres Claim"); Proof of Claim No. 36519, filed by Carmen Calderón Ilarraza ("Calderón Ilarraza") against the Commonwealth on May 29, 2018 (the "Calderón Ilarraza Claim"); Proof of Claim No. 29885, filed by Judith Camacho Perez ("Camacho Perez") against the Commonwealth on May 24, 2018 (the "Camacho Perez Claim"); Proof of Claim No. 10442, filed by Carmen S. Cantres Aponte ("Cantres Aponte") against the Commonwealth on May 3, 2018 (the "Cantres Aponte Claim"); Proof of Claim No. 35710, filed by Arminda Caraballo Rivera ("Caraballo Rivera") against the Commonwealth on May 23, 2018 (the "Caraballo Rivera Claim"); Proof of

seeking allegedly unpaid back pay and pension benefits earned nearly a decade or more ago—should properly be classified as general unsecured claims (the "August 4 Order"). The Reconsideration Motion provides no basis to revisit the August 4 Order. Reconsideration of an order is a rare remedy justified only where there is manifest error by the court or newly discovered evidence. Neither exists here.

2. Instead, the Reconsideration Motion—relying entirely on authorities available to it while briefing the Three Hundred Forty-Fifth Omnibus Objection (as defined below)—conjures several reasons why, according to the Group Wage Claimants, the Court should grant

---

Claim No. 129809, filed by Neysha Colón Torres ("Colón Torres") against the Commonwealth on June 29, 2018 (the "Colón Torres Claim"); Proof of Claim No. 90365, filed by Rosa M. González Benitez ("González Benitez") against the Commonwealth on May 31, 2018 (the "González Benitez Claim"); Proof of Claim No. 12312, filed by Ivette González de Leon ("González de Leon") against the Commonwealth on May 8, 2018 (the "González de Leon Claim"); Proof of Claim No. 12345, filed by Nitza Medina de Reyes ("Medina de Reyes") against the Commonwealth on May 8, 2018 (the "Medina de Reyes Claim"); Proof of Claim No. 2252, filed by Myrna Normandia Rodríguez ("Normandia Rodríguez") against the Commonwealth on March 13, 2018 (the "Normandia Rodríguez Claim"); Proof of Claim No. 28152, filed by Raquel Rodríguez López ("Rodríguez López") against the Commonwealth on May 22, 2018 (the "Rodríguez López Claim"); Proof of Claim No. 4821, filed by Ernesto Rodríguez Sanfeliz ("Rodríguez Sanfeliz") against the Commonwealth on March 19, 2018 (the "Rodríguez Sanfeliz Claim"); Proof of Claim No. 2414, filed by María Rosado Velez ("Rosado Velez") against the Commonwealth on March 19, 2018 (the "Rosado Velez Claim"); and Proof of Claim No. 145627, filed by Sonia Rosario Rosario ("Rosario Rosario") against the Commonwealth on June 29, 2018 (the "Rosario Rosario Claim"); and Proof of Claim No. 41069, filed by Nitza Vizcarrondo ("Vizcarrondo," and together with Cox Schuck, Cruz Barreto, Santiago Díaz, Velez Bonilla, Vizcarrondo Flores, Cabrera Torres, Calderon Ilarraza, Camacho Perez, Cantres Aponte, Caraballo Rivera, Colón Torres, González Benitez, González de Leon, Medina de Reyes, Normandia Rodríguez, Rodríguez López, Rodríguez Sanfeliz, and Rosado Velez, the "Group Wage Claimants") against the Commonwealth on May 29, 2018 (the "Vizcarrondo Claim," and together with the Cox Schuck Claim, the Cruz Barreto Claim, the Santiago Díaz Claim, the Velez Bonilla Claim, the Vizcarrondo Flores Claim, the Cabrera Torres Claim, the Calderon Ilarraza Claim, the Camacho Perez Claim, the Cantres Aponte Claim, the Caraballo Rivera Claim, the Colón Torres Claim, the González Benitez Claim, the González de Leon Claim, the Medina de Reyes Claim, the Normandia Rodríguez Claim, the Rodríguez López Claim, the Rodríguez Sanfeliz Claim, the Rosado Velez Claim, and the Rosario Rosario Claim, the "Group Wage Claims").

administrative expense status to their pre-petition claims. Each of these reasons are based on misinterpretations of relevant authority and, thus, fail.

3.      *First*, the Group Wage Claimants contend the Court misinterpreted the phrase "attributable to any period of time occurring after commencement of the case" in 11 U.S.C. § 503(b)(1)(A)(ii) to mean "claims arising from events occurring after the commencement of the case." The Court did not misinterpret section 503(b)(1)(A)(ii) of the Bankruptcy Code. On the contrary, the Court's interpretation is entirely consistent with both the statutory language and the case law interpreting such section.

4.      *Second*, the Group Wage Claimants contend that the Commonwealth established a supposed "policy"—which the Group Wage Claimants claim was established either by Section 305 of PROMESA or by the Commonwealth's creditor list—to continue paying its employees on an ongoing basis as part of its normal operations. In light of that "policy," the Group Wage Claimants assert that reclassification of their claims as general unsecured claims will unfairly discriminate against the Group Wage Claimants. But, neither Section 305 of PROMESA nor the Commonwealth's creditor list purport to establish a "policy," enforceable in the Title III court, to pay pre-petition employee wage litigation claims in full. And, as this Court has already explained in the August 4 Order, arguments relating to unfair discrimination are appropriately raised in connection with the ongoing Plan[4] confirmation proceedings.

5.      *Third*, the Group Wage Claimants further argue that *Reading Company v. Brown*, 391 U.S. 471 (1968), grants this Court the discretion to reclassify their claims as administrative expense claims. However, *Reading* does not authorize the broad discretion the Group Wage

---

[4] "Plan" refers to the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, ECF No. 17627.

Claimants allege.  Rather, it is well-settled in the First Circuit that the *Reading* doctrine is expressly limited to *post-petition* harms stemming from *post-petition* events.  It is thus irrelevant to the Group Wage Claimants' *pre-petition* litigation claims.

6.  Because the Group Wage Claimants do not come close to demonstrating any manifest error of law or fact in the August 4 Order sufficient to justify reconsideration, the Reconsideration Motion should be denied in its entirety.

## BACKGROUND

7.  The Reconsideration Motion seeks reconsideration of this Court's August 4 Order reclassifying the nineteen Group Wage Claims as general unsecured claims.  Each of the Group Wage Claims were filed by individual plaintiffs in the following litigations: *Jeannette Abrams Díaz, et al. v. Department of Transportation & Public Works*, Case No. KAC-2005-5021 (the "Abrams Díaz Litigation"); *Francisco Beltrán Cintrón, et al. v. Puerto Rico Department of Family Affairs*, Case No. KAC-2009-0809 (the "Beltrán Cintrón Litigation"); and *Nilda Agosto Maldonado, et al. v. Commonwealth of Puerto Rico*, Case No. KPE 2005-0608 (the "Agosto Maldonado Litigation and, together with the Abrams Díaz Litigation and the Beltrán Cintrón Litigation, the "Litigations").

8.  The Abrams Díaz Litigation and the Agosto Maldonado Litigation were filed in 2005, and the Beltrán Cintrón Litigation was filed in 2009.  Each of the Litigations allege the Commonwealth improperly implemented the federal minimum wage, and as a result, the Commonwealth allegedly owes plaintiffs unpaid adjustments to their wages and pension benefits. The Litigations therefore seek back wages and pension benefits allegedly owed for work performed nearly a decade or more prior to the filing of the Commonwealth's Title III petition. Notwithstanding the fact that each of the Group Wage Claims assert liabilities associated with

pre-petition wages and pension benefits, each of the Group Wage Claims asserted they were either secured or entitled to priority status pursuant to 11 U.S.C. § 503(b)(9).

9.      On June 18, 2021, the Debtors filed the *Three Hundred Forty-Fifth Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority, and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Misclassified Claims* [ECF No. 17108] (the "Three Hundred Forty-Fifth Omnibus Objection"). The Three Hundred Forty-Fifth Omnibus Objection sought to reclassify proofs of claim that assert an incorrect or improper classification, including the Group Wage Claims.

10.     On July 19, 2021, the Group Wage Claimants filed the *Opposition to Debtor's "Three Hundred Forty-Fifth Omnibus Objection, (Substantive) of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, and Employees Retirement System of the Government of the Commonwealth filed by The Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico, et al.* [ECF No. 17423] (the "Response").

11.     In the Response, the Group Wage Claimants acknowledged that they "are not requesting priority under § 503(b)(9), since [they] have not sold goods within the required statutory time frame of twenty days prior to commencement of the Debtors' Title III Cases" and that certain of the Group Wage Claims' "priority status are identified incorrectly in the register under § 503(b)(9)." Response at 4. The Response nevertheless opposed the reclassification of the Group Wage Claims as unsecured because reclassification "is in direct conflict with the literal language of 11 U.S.C. § 503(b)(1)(A) and § 507 of the Bankruptcy Code." Response at 4-5. The Response further alleged that "any determination changing [the Group Wage Claims] to an unsecure[d] status

5

would constitute an 'unfair discrimination' in the plan confirmation process, for purposes of a cram down under Bankruptcy code section 1129(b)(1)" because the Commonwealth "adopted a firm policy under [PROMESA] to continue paying employees' wages and benefits, under regular conduct of business."  Response at 5-6.

12.      On July 28, 2021, the Debtors filed the *Reply of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority, and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Responses Filed by Rosa I. Orengo Rohena [ECF No. 17290], Gisela Vazquez Rodriguez [ECF No. 17281], and Certain Group Wage Claimants [ECF No. 17423] to Three Hundred Forty-Fifth Omnibus Objection (Non-Substantive) to Misclassified Claims* [ECF No. 17561]  (the "Reply").  Therein, the Debtors argued that, because the Litigations all concerned pre-petition conduct and proceedings, they did not qualify for administrative expense status pursuant to 11 U.S.C. § 503(b)(1)(A)(ii).  The Debtors further argued that to the extent the Response alleged that the Group Wage Claims had been improperly classified or unfairly discriminated against, those arguments were properly raised in connection with forthcoming hearings to confirm the Plan.

13.      On August 4, 2021, the Court held a hearing to address, *inter alia*, the Three Hundred Forty-Fifth Omnibus Objection (the "August 4 Hearing").  After hearing argument, the Court overruled the Response and sustained the Three Hundred Forty-Fifth Objection and, subsequently, set forth such decision in the August 4 Order.  The Court held that the Group Wage Claims should be reclassified as general unsecured claims "because the claimant's asserted basis for [administrative] expense priority under section 503(b)(1)(A) of Title 11 only extends to claims arising from events that occur after the commencement of a bankruptcy case, and all of these claimants are asserting claims that long predate the debtors' Title III petitions."  Aug. 4 Hr'g. Tr.

6

at 113:18-24. The Court further held that any objections to the Plan's treatment of the Group Wage Claims in relation to other unsecured claims should be "pursued in the context of the confirmation proceedings." *Id.* at 113:25-114:2.

14.     On August 14, 2021, the Group Wage Claimants filed the Reconsideration Motion.

## ARGUMENT

15.     As a general matter, "it is very difficult to prevail on a Rule 59(e) motion." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005). "Rule 59(e) motions are aimed at *re*consideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued." *Jorge Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*, 37 F.3d 25, 29 (1st Cir. 1994); *see also In re Fin. Oversight & Mgmt. Bd. for P.R.*, 427 F. Supp. 3d 260, 263 (D.P.R. 2019) (recognizing that a motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures or to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment" (quoting *Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 208 (1st Cir. 2015))), *reconsideration denied*, 612 B.R. 821 (D.P.R. 2019). To succeed, "[t]he movant must either clearly establish a manifest error of law or fact or must present newly discovered evidence that could not have been discovered during the case." *Guzmán v. Rentas (In re Nieves Guzmán)*, 567 B.R. 854, 863 (1st Cir. B.A.P. 2017) (citing *Banco Bilbao Vizcaya Argentaria P.R. v. Santiago Vázquez (In re Santiago Vázquez)*, 471 B.R. 752, 760 (1st Cir. B.A.P. 2012)); *see also Albarran v. Rivera (In re Rivera)*, 627 B.R. 765, 775 (1st Cir. 2021) ("A manifest error of law is [a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law.").

16.     As Claimants themselves recognize, reconsideration of a judgment is an extraordinary remedy, *see* Reconsideration Motion ¶ 18, and "Rule 59(e) motions should be

granted sparingly because parties should not be free to relitigate issues a court has already decided." *Encanto Rests., Inc. v. Vidal (In re Cousins Int'l Food Corp.)*, 553 B.R. 197, 201 (Bankr. D.P.R. 2016), *aff'd in part, appeal dismissed in part sub nom. Cousins Int'l Food, Corp. v. Vidal*, 565 B.R. 450 (B.A.P. 1st Cir. 2017); *see also In re FOMB*, 427 F. Supp. 3d at 263 (holding that a motion for reconsideration "is an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scarce judicial resources").

17.     The Reconsideration Motion patently does not meet this demanding standard. There is no newly discovered evidence nor any manifest legal error that undermines the Court's reclassification of the Group Wage Claims.

A.     **The Court Correctly Interpreted 11 U.S.C. 503(b)(1)(A)(ii) By Reclassifying the Group Wage Litigation Claims as General Unsecured Claims.**

18.     In granting the Three Hundred Forty-Fifth Omnibus Objection, the Court correctly recognized that the Group Wage Claims assert liabilities associated with pre-petition Litigations seeking allegedly unpaid wages earned years prior to the filing of the Commonwealth's Title III case, and therefore, the Group Wage Claims are not entitled to treatment as an administrative expense. The Reconsideration Motion is premised on the Group Wage Claimants' contention that, based on the limited case law interpreting section 503(b)(1)(A) of the Bankruptcy Code, the term "attributable" in section 503(b)(1)(A)(ii) means "attributable to the Debtor, can the computations be done and the amounts ascertained post filing of the case." Reconsideration Mot. at 13. As the Group Wage Claimants failed to raise this argument, or the case law on which it relies, in their Response, their belated attempt to provide authority in the Reconsideration Motion is not a permissible basis for this Court to reconsider the August 4 Order. Each of the cases cited by the Group Wage Claimants was previously available to them, and their failure to cite those authorities does not mean the Court committed an error that requires reconsideration. *See In re FOMB*, 427

F. Supp. 3d at 263 (a motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures or to introduce new evidence or to advance arguments that could and should have been presented to the district court prior to judgment.").

19.     Nevertheless, the Group Wage Claimants' argument is meritless. The Group Wage Claimants purport to identify eleven cases discussing the application of section 503(b)(1)(A)(ii), and then contend that these cases "openly disregard to discuss the attributable requirement stated in 503(b)(1)(A)(ii)." Reconsideration Mot. ¶ 29. The Group Wage Claimants then supply their own interpretation of the "attributable requirement," arguing that "attributable" means "owning, identifiable, or expected, as in the form of payment or accountable." Reconsideration Mot. ¶ 33. For that reason, the Group Wage Claimants contend that the phrase "attributable to" in section 503(b)(1)(A)(ii) means "the payment is attributable, owed accountable and payable after the commencement of the case[,] but there is no requirement as to occurring after the case is filed. . . ." "[Section 503(b)(1)(A)(ii)] only requires that the amount due is accountable, attributable after commencement of the case." *Id.* ¶¶ 34, 36.

20.     This argument is nonsensical. Section 503(b)(1)(A)(ii) authorizes administrative expense treatment for:

> wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered . . . .

21.     Courts have routinely interpreted the phrase "back pay attributable to any period of time occurring after commencement of the case" to mean back pay accruing for work performed after the petition date. For example, *In re Philadelphia Newspapers, LLC*, the court interpreted the phrase "attributable to any period of time occurring after commencement of the case under this title" to require the claim accrue post-petition in order to be compensable as an administrative

expense. 433 B.R. 164, 174-77 (Bankr. E.D. Pa. 2010).  The claimant in *Philadelphia Newspapers* was a discharged employee whose claim was partially based on his post-petition payments of healthcare premiums.   The court held that, "if back pay is awarded for any period of time 'attributable to any time occurring after commencement of a case' *and* the back pay meets the other requirements listed in subsection (ii), then this Court holds that back pay constitutes an allowed, administrative expense[.]" *Id.* at 175.

22.      Other courts have likewise interpreted the phrase "attributable to" to refer to wages and benefits that accrue post-petition.   *See, e.g.*, *In re Calumet Photographic, Inc.*, No. 14-08893, 2016 WL 3035468, at *3 (Bankr. N.D. Ill. May 19, 2016) ("Basically, the plain meaning of [section 503(b)(1)(A)(ii)] requires a court to determine if a claim relates to a post-petition time period despite the fact that the violation timing is of no regard."); *In re 710 Long Ridge Rd. Operating Co. II, LLC*, 505 B.R. 163, 167 (Bankr. D.N.J. 2014) (granting administrative expense priority to portion of claims regarding lost wages for several post-petition days and were thus "attributable to" post-petition period).[5]  Nor does the phrase "without regard to the time of the occurrence of

---

[5] At least one court has adopted an even stricter approach, concluding that only employee claims that *vest* after the petition date are entitled to administrative expense treatment.   Thus, in *Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.)*, a group of discharged employees asserted claims against the debtor in respect of wages and benefits owed pursuant to a federal law and sought administrative expense priority for any damages awarded in the suit.   394 B.R. 765 (Bankr. D. Del. 2008).   The court noted that section 503(b)(1)(A)(ii) "describes two different times: the period to which back pay is *attributable* and the time of the *occurrence* of the unlawful conduct and/or when the services were rendered." *Id.* at 774.   The court then held that "the only relevant consideration is the former time, the time to which the back pay is attributable which is when the rights of claims *vest or accrue*, and how that time relates to the petition date." *Id.* at 775.   "If a claim vests pre-petition, then the back pay is attributable to the time occurring prior to the commencement of the case and therefor it is not an administrative expense claim." *Id.* Applying these principles to the claim, the court concluded that because the employees were terminated pre-petition, and their rights vested under the federal statute pre-petition, any damages from their suit would be "back pay attributable to" the pre-petition period and thus not eligible for administrative expense priority. *Id.* at 776.

unlawful conduct on which such award is based or to whether any services were rendered" alter the result: rather, that phrase brings within the statute wages owed for services rendered *post*-petition, when the illegal conduct for which wages were owed accrued *pre*-petition. *In re Trump Entm't Resorts, Inc.*, No. 14-12103, 2015 WL 1084294, at *4 (Bankr. D. Del. Mar. 9, 2015) ("Regardless of when the illegal conduct occurred, in order to qualify for administrative expense priority under section 503(b)(1)(A)(ii) the damages flowing therefrom must be attributable to sometime after the Petition Date[.]").

23.     Here, there is no question that the Group Wage Claims assert liabilities associated with Litigations filed years prior to the Commonwealth's Title III petition date, and that those Litigations seek allegedly unpaid wages for work performed nearly a decade or more prior to the filing of the Commonwealth's Title III case. This Court's interpretation of section 503(b)(1)(A)(ii) as extending only to "events that occur after the commencement of the bankruptcy case," Aug. 4 Hr'g. Tr. at 113:19-24, is therefore entirely consistent with the plain language of the statute and the authority interpreting the phrase "attributable to."

24.     Neither the statutory language nor any case law provide any basis for the Group Wage Claimants' expansive alternative reading. Indeed, if the phrase "attributable to any period of time occurring after commencement of the case" means only that a claim is due and owing after commencement of a bankruptcy case, then nearly every pending pre-petition wage litigation claim would be entitled to administrative expense treatment and payment in full. The sole support the Group Wage Claimants provide for this extraordinary argument is their own definition of the word "attributable." *Cf. In re Powermate*, 394 B.R. at 777 (noting that the claimant "advocates an application of [section 503(b)(1)(A)(ii)] which would drastically change the outcome of pre-petition employment terminations" and that if Congress intended for such a monumental shift

in the administration of estates under bankruptcy law, there would be significant legislative history, but the record is nearly silent). That strained definition is clearly insufficient to overcome the overwhelming authority interpreting the statute in a manner consistent with the August 4 Order, and accordingly, the Reconsideration Motion should be denied.

### B.   The Court Correctly Rejected the Group Wage Claimants' Arguments regarding an Alleged Commonwealth "Policy" to Pay Pre-petition Wage-related Litigation Claims in Full.

25.     The Group Wage Claimants also contend that "PROMESA establish[ed] significant differences, as to the government employee's claims recovery, as opposed to the general unsecured creditors, under the standard bankruptcy procedures," and that those "significant differences" entitle the Group Wage Claimants to treatment as an administrative expense. Reconsideration Mot. ¶ 38. As support for that position, the Group Wage Claimants cite (*i*) PROMESA Section 305, and (*ii*) schedule E to the Commonwealth's creditor list, which the Group Wage Claimants contend "established the public policy, that was going to continue the practice of paying employees' wages under the regular course of business." *Id*. ¶¶ 39-40. According to the Group Wage Claimants, as a result of this alleged "policy," failure to provide their Claims with administrative expense priority would unfairly discriminate against them.[6]

26.     The Group Wage Claimants raised this exact argument in their Response, and in granting the Three Hundred Forty-Fifth Omnibus Objection, this Court rejected that argument.

---

[6] The Group Wage Claimants also argue, without explanation, that (1) the Court's order "lack[ed] legal basis" because it did not "set out the specific factual findings or legal basis on which [it] support[s] its determination," and (2) they "would suffer hardship, if the Reconsideration Motion were either denied without prejudice or adjourned, since [they] have met their burden of showing that the issue presented to the Court, is ripe for adjudication, even considering the pending challenges to [the] proposed plan of adjustment." Reconsideration Mot. ¶¶ 44, 45. Claimants' first argument is plainly incorrect. On the contrary, the Court clearly explained the factual and legal basis for its ruling at the August 4, 2021 omnibus hearing. Aug. 4 Hr'g. Tr. 113:13-114:3. Claimants' second argument is irrelevant. The Debtors have not argued, and the Court has not held, that the issue whether the Group Wage Claims are unsecured creditors is not ripe.

*See* Response at 5 ("[t]he Commonwealth adopted a firm policy, under [PROMESA] to continue paying employees' wages and benefits, under regular conduct of business."). The Group Wage Claimants again rely on authority that was indisputably available to them when they filed their Response, and do not even attempt to make a showing that "clearly establish[es] a manifest error of law or fact[.]" *In re Nieves Guzmán*, 567 B.R. at 863. The Group Wage Claimants' attempt to rehash arguments already considered and rejected by the Court plainly does not provide grounds to revisit the August 4 Order. *See, e.g., Encanto Rests. Inc.*, 553 B.R. at 201 ("Rule 59(e) motions should be granted sparingly because parties should not be free to relitigate issues a court has already decided.").

27.     In any event, the Group Wage Claimants' contentions are plainly incorrect. Neither Section 305 nor the Commonwealth's Title III petition have any impact on whether the Group Wage Claimants' pre-petition claims are entitled to administrative expense priority. The Group Wage Claimants provide no basis for their contention Section 305 requires payment in full of pre-petition wage-related litigation claims—nor can they. Section 305 *limits* this Court's authority to interfere with either the Debtors' political or governmental powers, their property, or their revenues absent the Oversight Board's consent. It does not provide grounds for the Court to authorize payment of pre-petition employee wage claims as an administrative expense.

28.     Further, the Commonwealth's creditor list does not purport to establish a Commonwealth "policy" of payment in full of pre-petition wage litigation claims. The *Global Notes and Statement of Limitations, Methods, and Disclaimers Regarding the Creditor List for the Commonwealth of Puerto Rico* [ECF No. 1215-1] ("Creditor List") stated only that "[s]ince the Petition Date, the Commonwealth has paid, and intends to continue to honor and pay, all accrued obligations for wages and salaries . . . ." *Id.* at § 35. The Commonwealth's decision to continue

paying its employees in the ordinary course as part of its normal operations during the Title III cases has no bearing on the Commonwealth's payment of pre-petition claims arising from litigations brought by current and former Commonwealth employees.

29.    Even if the Creditor List somehow did establish a policy to pay all wage-related claims in full, which it does not, Claimants are incorrect that the payment of Commonwealth employees' wages and benefits in the ordinary course somehow "creates an unfair discriminatory treatment in the classification of the appearing creditor's claims, when compared with the proposed plan classification scheme" in violation of 11 U.S.C. § 1129. Reconsideration Mot. ¶ 41. Although the Group Wage Claimants argue that the reclassification of their claims is a "critical issue[]" which "[must] not wait to the proposed plan confirmation hearing . . . [in order to avoid] [s]ubmitting the debtor to the attendant expense of soliciting votes and seeking court approval on a clearly fruitless" plan of adjustment, Reconsideration Motion ¶ 47 (citing *In re Pecht*, 53 B.R. 768, 769-70 (Bankr. E.D. Va. 1985)), that argument misunderstands the law. *In re Pecht*, the sole authority cited by the Group Wage Claimants, discusses whether a court can deny approval of a disclosure statement describing a Chapter 11 plan that "by its terms is not confirmable." 53 B.R. at 769. If a plan is patently unconfirmable, then a court should not approve a disclosure statement for the plan, which would subject the debtors to the expense of soliciting votes and seeking court approval.

30.    Here, the Court has already approved the Disclosure Statement for the Commonwealth's Plan and established a schedule for litigating issues relating to confirmation thereof.[7]  *See Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III)*

---

[7] "Disclosure Statement" refers to the *Disclosure Statement for the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, ECF No. 17628.

*Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [ECF No. 17639] (the "DS Order"); *Order Establishing Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. 17640] (the "Confirmation Procedures Order").  In reaching the decision to approve the Disclosure Statement, this Court considered—and rejected—the Group Wage Claimants' objection thereto.  *See* DS Order; *Objection to the Third Oversight Board's Plan of Adjustment and Disclosure Statement Dated May 11, 2021 and Requesting for Entry of an Order Pursuant to Federal Rule of Bankruptcy Procedure 3013 to Reclassify together Employee Wage Claims Included in Class 55, with Class 49 AFSCME Employees Claims or in the alternative, Be Placed in a Separate Class, to Provide Group Wage Claim Holders Equal Treatment as that Provided to AFSCME Employees Grievance and Collective Bargaining Pre-Petition Wage Awards and Requesting Related Reliefs,* [ECF No. 17021].

31.     The Group Wage Claimants have not sought reconsideration of the DS Order. Further, pursuant to both the DS Order and the Confirmation Procedures Order, the Debtors have already begun soliciting votes on the Plan, and they are engaged in confirmation-related litigation with parties in interest.  As this Court has repeatedly instructed, to the extent the Group Wage Claimants wish to continue to press their arguments regarding the Plan's classification of their claims, those arguments are properly raised in connection with Plan confirmation and in accordance with the procedures and deadlines established by the Confirmation Procedures Order. *See* Aug. 4 Hr'g. Tr. at 113:25-114:3 ("Any objections  as to the treatment of these unsecured

claims in relation to other unsecured claims can be pursued in the context of the confirmation proceedings."); July 14 Hr'g Tr. at 84:4-17 ("Such arguments are properly raised in connection with plan confirmation as they concern issues that require factual development.").

### C. *Reading* Is Inapplicable Here.

32.  Lastly, the Group Wage Claimants contend the Court should reclassify their claims as administrative expense claims "because[] this Court has the authority to allow types of administrative expenses and/or priority payments, that are not expressly listed in the statute to carry out the purposes of the Title III, since under section 105(a) has broad [*sic*] the courts flexibility in tailoring its orders to meet a wide variety of circumstances." Reconsideration Mot. ¶ 48. The Group Wage Claimants cite the Supreme Court's *Reading* decision as the source of the Court's alleged authority to reclassify their pre-petition litigation claims as administrative expenses.

33.  Again, the Group Wage Claimants do not even attempt to identify any manifest error of law or fact or newly discovered evidence that would justify reconsideration of the August 4 Order. Indeed, the primary case on which they rely, *Reading*, was decided over fifty years ago, and thus was plainly available to the Group Wage Claimants when addressing the Three Hundred Forty-Fifth Omnibus Objection. The Group Wage Claimants' belated citation of this authority does not come close to meeting their burden to establish a manifest error of law requiring this Court to revisit the August 4 Order. *See, e.g.*, *Encanto Rests. Inc.*, 553 B.R. at 201.

34.  In any event, *Reading* is entirely inapplicable to the Group Wage Claimants' pre-petition claims. In *Reading*, the Supreme Court granted administrative expense priority to a claim for tort damages resulting from the post-petition negligence of a receiver in a Chapter 11 case. 391 U.S. at 483-85. But, the First Circuit has already held that the *Reading* doctrine "is not applicable to prepetition claims[.]" *In re Fin. & Oversight Mgmt. Bd. for P.R.*, 481 F. Supp. 3d 60, 65-66

16

(D.P.R. 2020).   In fact, "[t]he First Circuit has restricted the application of the 'fundamental fairness' exception to claims alleging *postpetition* harms that arise from *postpetition* events." *Id.* at 66 (citing *In re Hemingway Transp.*, 954 F.2d 1, 6-7 (1st Cir. 1992)) (emphasis added).   As explained previously, the Group Wage Claims are pre-petition claims that assert Litigations filed many years prior to the Commonwealth's Title III case.   *Reading* is therefore irrelevant, and the Court lacks the authority to classify the Group Wage Claimants' pre-petition claims as administrative expense claims.

## CONCLUSION

35.     For the foregoing reasons, the Court should deny the Reconsideration Motion in its entirety.

Dated: September 1, 2021
    San Juan, Puerto Rico

Respectfully submitted,


/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944


/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900


*Attorneys for the Financial
Oversight and Management Board
for Puerto Rico, as representative for
the Commonwealth of Puerto Rico,
the Puerto Rico Highways and
Transportation Authority, and the
Employees Retirement System of the
Government of the Commonwealth of
Puerto Rico*

18