**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**DRA PARTIES' MOTION IN RESPONSE TO THE ORDER CONCERNING SERVICE OF OPENING EXPERT REPORTS BY THE DRA PARTIES, REQUEST FOR EXTENSION OF TIME TO FILE REDACTED DRA EXPERT REPORTS, AND REQUEST FOR MODIFICATION OF CERTAIN TERMS OF THE CONFIRMATION PROCEDURES ORDER**

**COME NOW** AmeriNational Community Services, LLC (the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company (the "Collateral Monitor," and together with the Servicer, collectively, the "DRA Parties"), which serves as the collateral monitor for Wilmington Trust, N.A. in connection with the new bonds that the DRA issued pursuant to the *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as amended by Act No. 147-2018, and the approved qualifying modification for the Government Development Bank for Puerto Rico (the "GDB") under Title VI of the *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA")[2], by

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801).

[2] *See* Dkt. No. 270 of Civil Case No. 18- 01561 (LTS) (Nov. 7, 2018).

and through the undersigned legal counsel, and respectfully submit this motion (the "Motion") in compliance with the Court's *Order Concerning Service of Opening Expert Reports by the DRA Parties* [Dkt. No. 18118] (the "Order") and request for modification of certain requirements in the *Order Establishing Procedures and Deadlines Concerning Objection to Confirmation and Discovery in Connection Therewith* [Dkt. No. 17640] (the "Confirmation Procedures Order").

## BACKGROUND

1.     On May 13, 2021, the Financial Oversight and Management Board of Puerto Rico (the "FOMB"), in its capacity as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA", and jointly with ERS and the Commonwealth, the "Debtors") filed the *Motion of Debtors for an Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [Dkt. No. 16757] (the "Procedures Motion") requesting the setting of certain procedures and deadlines concerning discovery and objections in relation to the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Dkt. No. 17627] (the "Plan").

2.     On August 2, 2021, the Court granted the Procedures Motion (with certain revisions) and issued the Confirmation Procedures Order. *See* Dkt. No. 17640. The Confirmation Procedures Order sets forth the following schedule for opening expert reports: (a) **September 6, 2021** – "Deadline for all parties to serve opening expert disclosures ('Opening Expert Disclosures')." *Id.* at ¶ 3; (b) **September 13, 2021** – "Deadline for all parties to serve opening expert reports ('Opening Expert Reports')." *Id.*

3.     Paragraph 19 of the Confirmation Procedures Order provides, in pertinent part, that:

> …[E]ach Debtor and Eligible Creditor who has timely disclosed the identity of an expert witness in its Opening Expert Disclosures on or before **September 6, 2021**, shall disclose to the other Debtors and Eligible Creditors, with a copy to the Court and the PSA Parties, its Opening Expert Report(s) on or before **September 13, 2021**… *Id.* (Bold original).

2

4.      On September 6, 2021, the DRA Parties filed the disclosures of the identities of their opening expert witnesses and the subject matters on which they would be providing testimony. Specifically: (a) Michael Gardner and/or Douglas J. Brickley - the clawback conducted by the Commonwealth in purported reliance on Article VI Section 8 of the Puerto Rico Constitution (the "Clawback Report"); and (b) Lizette Martínez - the flow of funds from the Commonwealth to HTA (the "Flow of Funds Report", and jointly with the Clawback Report, the "DRA Expert Reports"). *See* Dkt. No. 18042.

5.      Significant portions of the analysis and conclusions in the DRA Expert Reports rely and refer to "Confidential Material" or "Confidential Information" (the "Confidential Data") as defined, and ordered by this Court in (i) the *Stipulation and Protective Order* [Dkt. No. 12912] (the "Monolines Lift Stay Protective Order"), as amended in the *Stipulation and Amended Protective Order* [Dkt. No. 76 of Adv. No. 20-0005 (LTS)] (the "Revenue Bond Adversary Protective Order"); (ii) the *Confidentiality Agreement and Order in Connection with (a) Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery under Bankruptcy Rule 2004 Concerning Commonwealth Assets [ECF No. 9022] and (b) Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis [ECF No. 9023]* [Dkt. No. 12920] (the Rule 2004 Protective Order"); and (iii) the Protective Order at Dkt. No. 16681-2, as amended by ¶ 6(c) and (d) of the Confirmation Procedures Order (the "Confirmation Protective Order", and collectively with the Monolines Lift Stay Protective Order, the Rule 2004 Protective Order, and the Revenue Bond Adversary Protective Order, the "Protective Orders").[3]

---

[3] More specifically, substantially all of analysis contained in the Flow of Funds Report is confidential under the Protective Orders, and the Clawback Report incorporates certain portions of such confidential analysis.

6.      The DRA Parties are signatories to the Protective Orders and are bound by their terms. To date, the Protective Orders have not been repealed, modified, or amended to allow disclosure of Confidential Data beyond the narrowly permitted uses identified therein.

7.      With the Protective Orders in mind, on September 13, 2021, the DRA Parties timely served copies of the DRA Expert Reports via e-mail to the Court (under seal) and to counsel for parties whom the DRA Parties knew were signatories to the Protective Orders[4]: (i) the FOMB, (ii) the Debtors, (iii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), (iv) the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA and PBA) (the "UCC"), and (v) the Monolines[5] (jointly with FOMB, AAFAF, and the UCC, the "Interested Parties").

8.      On September 15, 2021, the Court issued the Order requiring the DRA Parties to file "either (i) a statement as to how the DRA Parties have complied with paragraph 19 of the Confirmation Procedures Order, or (ii) a motion for modification of the disclosure requirements of the Confirmation Procedures Order with respect to the [DRA Expert Reports]." *See* Dkt. No. 18118.

## STATEMENT AND REQUESTED RELIEF

9.      The Protective Orders contain limitations and restrictions on the use and disclosure of Confidential Data, such as: (i) limiting the use of Confidential Data[6] to particular proceedings for specific purposes only[7]; (ii) requiring that any Confidential Data submitted to the Court be filed under

---

[4] The Official Committee of Retired Employees (the "Retiree Committee") requested a copy of the DRA Expert Reports shortly after the entry of the Order. The DRA Parties were unaware at the time that they had executed joinders to the Protective Orders and, upon counsel for the Retiree Committee presenting evidence to that effect on September 16, 2021, the DRA Parties submitted a copy of the DRA Expert Reports to the Retiree Committee. To date, the Retiree Committee has been the only party who has requested a copy of the DRA Expert Reports since the issuance of the Order.

[5] The term "Monolines" refers to: Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation and Financial Guaranty Insurance Company.

[6] This includes any information copied or extracted therefrom, as well as all copies, excerpts, summaries, compilations, and presentations derived from the Confidential Data.

[7] *See* Monolines Lift Stay Protective Order at ¶¶ 7-8 and Revenue Bond Adversary Protective Order at ¶¶ 7-8.

seal[8]; (iii) providing that the restrictions to Confidential Data can only be modified or terminated by written stipulation of the parties or order of the Court[9]; and (iv) requiring that any intended use of Confidential Data in the Title III cases be determined by "means of a separate order."[10] Furthermore, a violation of the Protective Orders would result in parties being able to seek injunctive and/or equitable remedies, as well as asserting evidentiary objections, to prevent the disclosure of Confidential Data.[11]

10.       The term "Eligible Creditor", as adopted in the Confirmation Procedures Order, is defined as "parties or parties in interest". *See* Dkt. 16757 at ¶ 40. This term is extremely broad and encompasses parties who are not signatories to, or have not joined, the Protective Orders, and whom the DRA Parties do not know their identity.

11.       The term "PSA Parties" is defined as "parties to the Plan Support Agreements." Dkt. No. 17640 ¶ 7.[12]  There are a great deal of signatories to the various Plan Support Agreements, many of whom have signed through joinders that have not been made public and for which the DRA Parties

---

[8] *See* Monolines Lift Stay Protective Order at ¶ 21, Rule 2004 Protective Order at ¶ 21, Revenue Bond Adversary Protective Order at ¶ 21, and Confirmation Protective Order at ¶ 6.

[9] *See* Monolines Lift Stay Protective Order at ¶ 22, Rule 2004 Protective Order at ¶ 22, and Revenue Bond Adversary Protective Order at ¶ 22.

[10] *See* Monolines Lift Stay Protective Order at ¶ 29, Rule 2004 Protective Order at ¶ 29, and Revenue Bond Adversary Protective Order at ¶ 29.

[11] *See* Monolines Lift Stay Protective Order at ¶ 22, Rule 2004 Protective Order at ¶ 22, Revenue Bond Adversary Protective Order at ¶ 22, and Confirmation Protective Order at ¶ 11.

[12] The term "Plan Support Agreement", as adopted in the Confirmation Procedures Order, is defined as "(a) the PSA, (b) the Plan Support Agreement ("Retiree Committee PSA"), dated as of June 7, 2019, by and between the Oversight Board, as representative of the Commonwealth, and the Official Committee of Retirees appointed in the Commonwealth's Title III Case, (c) the Plan Support Agreement ("AFSCME PSA"), dated as of June 7, 2019, by and between the Oversight Board, as representative of the Commonwealth, and the American Federation of State, County, and Municipal Employees International Union, AFL-CIO, (d) the HTA/CCDA PSA, and (e) the Amended ERS Stipulation . . . ." Dkt. No. 16757 at ¶ 24.  The term "PSA," in turn, is defined as "that certain Plan Support Agreement, dated as of February 22, 2021 (the "PSA"), among the Oversight Board, as representative of the Commonwealth, ERS, and PBA, certain holders of GO Bonds, certain holders of PBA Bonds, Assured Guaranty Corp. and Assured Guaranty Municipal Corp., solely in their capacities as insurers, and asserted holders, deemed holders, or subrogees with respect to GO Bonds and PBA Bonds, Syncora Guarantee Inc., as holder of, subrogee with respect to, or insurer of GO Bonds and PBA Bonds, and National Public Finance Guarantee Corporation, solely in its capacity as insurer and asserted holder, deemed holder, or subrogee with respect to GO Bonds and PBA Bonds." *Id.* ¶ 17.

5

have no way of identifying them. For this reason, the DRA Parties are not able to corroborate if they are also bound to the Protective Orders.

12.     While the Confirmation Procedures Order requires that Opening Expert Reports be "served" and "disclose[d]" to the Debtors, Eligible Creditors, and PSA Parties, it does not specify how said "service" or "disclosure" must be performed.  It also does not contemplate a process for disclosure of Opening Expert Reports that are significantly based on Confidential Data subject to the Protective Orders (like the DRA Expert Reports).

13.     Absent a repeal or amendment of the Protective Orders (which has not occurred to date), certain terms of the Confirmation Procedures Order are at odds with the Protective Orders.  This created a challenge for the DRA Parties who were faced with two choices on September 13, 2021– either serve the DRA Expert Reports to all Eligible Creditors and PSA Parties (to the extent identifiable) and risk exposure for unauthorized disclosure of Confidential Data under the Protective Orders; or comply with the Protective Orders and narrowly disclose the DRA Expert Reports to the Court, the Debtors, and those Eligible Creditors and PSA Parties that the DRA Parties knew at the time were signatories to the Protective Orders.

14.     The DRA Parties chose the latter option out of an abundance of caution as this was the most tenable way to comply, to the fullest extent possible, with the Confirmation Procedures Order without violating the Protective Orders.

15.     By performing service in this manner, the DRA Parties did their best to provide notice of the DRA Expert Reports to the parties who the DRA Parties knew have an interest in the contents of the same because the reports are tied to two legal issues central to the DRA parties' position in this case: (i) the Clawback Report addresses the propriety of the Commonwealth's withholding of the Act 30-31 Revenues[13] under the Puerto Rico Constitution, while the Flow of Funds Report quantifies said

---

[13] As such term is defined in *The DRA Parties' Amended Motion and Memorandum of Law in Support of their Request*

withholding; and (ii) the Flow of Funds Report relates to the controversy concerning on "whether the DRA Parties hold an interest in property with respect to the Act 30-31 Revenues"[14].

16.     Other than the DRA Parties, the Interested Parties are the most involved in litigation of these issues[15] and have substantial interest in the DRA Expert Reports. They are also signatories to the Protective Orders. It was for these reasons that the DRA Parties decided to serve copies of the DRA Expert Reports to the Interested Parties on September 13, 2021, and not any other Eligible Creditors or PSA Parties.

17.     Given the circumstances set forth above, the DRA Parties respectfully request that they not be penalized for their disclosure of the DRA Expert Reports on September 13, 2021, and they ask the Court to deem their disclosure to be appropriate and compliant with the Protective Orders.

18.     In any event, to cure any potential defects this situation may have caused due to a confusion or misunderstanding of the Confirmation Procedures Order, the DRA Parties respectfully request that they be allowed a brief extension of time under ¶ 3 of the Confirmation Procedures Order until today to file redacted copies of the DRA Expert Reports, which filing will be performed by attaching them as **Exhibits A** and **B** to this Motion and will be served alongside this Motion as indicated in the Certificate of Service below[16], to ensure all Eligible Creditors and PSA Parties (including those who are not signatories to, or have joined, the Protective Orders) obtain disclosure of the DRA Expert Reports.

---

for Adequate Protection or Relief from the Automatic Stay [Dkt. No. 16276] (the "Lift Stay Motion") and *The DRA Parties' Motion for Allowance of an Administrative Expense Claim* [Dkt. No. 17009] (the "Administrative Expense Motion").

[14] *Order Concerning Corrected Joint Status Report Pursuant to Order Dated August 9, 2021 [ECF NO. 17725] In Respect of DRA Parties' Lift Stay Motion*, Dkt. No. 17802 at ¶ 1.

[15] These issues are being litigated in the Lift Stay Motion, the Administrative Expense Motion, and Adversary Proceeding No. 21-0068 (LTS). These issues will also be raised in the DRA Parties' upcoming objection to the Plan.

[16] Should the Court instead require that the DRA Expert Reports be presented in a separate filing, the DRA Parties request that they be allowed until 24 hours after the Court grants the extension of time to file the redacted DRA Expert Reports in this case.

19.     Additionally, as a result of the issues discussed above, the DRA Parties request that the following disclosure requirements in the Confirmation Procedures Order be revised and modified to address procedural gaps on the potential use of Confidential Data in the discovery and confirmation proceedings of Debtors' Plan, including establishing a procedure compliant with the Protective Orders that will permit Eligible Creditors and PSA Parties to obtain <u>unredacted</u> copies of the DRA Expert Reports (additions in [bracketed and in *italics*], and deletions [bracketed and ~~struck through~~]):

a)  **Paragraph 3 [first item listed for September 13, 2021]**: "Deadline for all parties to [~~serve~~] [*file*] opening expert reports ('Opening Expert Reports')."

b)  **Paragraph 3 [first item listed for October 4, 2021]**: "Deadline for all parties to [~~serve~~] [*file*] rebuttal expert disclosures ('Rebuttal Expert Disclosures')."

c)  **Paragraph 13**: "Notwithstanding the deadline for Initial Deposition Notices set forth in the table above, Debtors or Eligible Creditors who have filed Objection Notices may file subsequent notices for depositions upon oral examination pursuant to Rule 30 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014 (a "Follow-Up Deposition Notice"); and <u>provided</u>, <u>further</u>, that all depositions, whether pursuant to an Initial Deposition Notice or a Follow-Up Deposition Notice, be completed by the Fact Discovery Deadline for fact witnesses and the Expert Discovery Deadline for expert witnesses; and <u>provided</u>, <u>further</u>, that an Eligible Creditor may participate at any such deposition telephonically or in-person. Any party in interest, other than an Eligible Creditor, that files an Objection to confirmation of the Plan during the period from **August 3, 2021**, up to and including the Objection Deadline, shall be entitled to attend (telephonically or in-person), solely as an observer, the deposition of the deponent designated in a Deposition Notice. [*With regards to depositions in which the witness will testify about confidential information subject to the*

8

*protective orders at Dkt. No. 12912, Dkt. No. 12920, Dkt. No. 16681-2, and Dkt. No. 76 of Adv. No. 20-0005 (LTS) (jointly, the "Protective Orders"), including Opening Expert Report(s) and/or Rebuttal Expert Report(s) that are based on or rely on confidential information subject to the Protective Orders, only Eligible Creditors and/or parties in interest that are signatories to the Protective Orders, or whom have executed and filed a Protective Orders Subscription Form annexed as* **Exhibit 4** *by* **September 24, 2021***, may attend said deposition.*]";[17]

d) **Paragraph 19**: "Notwithstanding the requirement under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7026, to disclose an expert report at the time of disclosure of the identity of expert witnesses, each Debtor and Eligible Creditor who has timely disclosed the identity of an expert witness in its Opening Expert Disclosures on or before **September 6, 2021**, shall [~~disclose to the other Debtors and Eligible Creditors, with a copy to the Court and the PSA Parties,~~] [*file*] its Opening Expert Report(s) on or before **September 13, 2021**. [*With respect to Opening Expert Report(s) that were submitted to the Court on or before September 13, 2021 but were not filed on or before such date, the parties that submitted such Opening Expert Report(s) must file the Opening Expert Report(s) on or before* **September 22, 2021***. With respect to Opening Expert Report(s) that rely on, reference, and/or are based on confidential information subject to the Protective Orders, such Opening Expert Report(s) may be filed with the confidential information redacted, with an unredacted copy of the same to be accessible and available to Eligible Creditors and PSA Parties through the Plan Depository by* **September 24, 2021***.*] Nothing in this paragraph is intended to

---

[17] A copy of the proposed Protective Orders Subscription Form is attached as Exhibit 1 to **Exhibits C** and **D**.

modify any other requirement of Rule 26(a)(2)(B) of the Federal Rules of Civil
Procedures."[18]

20.      Further, the DRA Parties take this opportunity to address additional disclosure
concerns caused by the Confirmation Procedures Order. These include, clarifying certain ambiguities
which require service in some instance and filing in others[19], and requiring that all deposition notices

---

[18] Should the Court not accept the DRA Parties' suggestion on this matter, the DRA Parties alternatively propose that
unredacted versions of the Opening Expert Reports be, instead, provided directly by the disclosing party but only to
those Eligible Creditors and PSA Parties who (i) request copies of the same; and (ii) are signatories to, or have
previously joined, the Protective Orders and/or who have executed and filed the Protective Orders Subscription Form.
The proposed revisions to ¶ 19 of the Confirmation Procedures Order under this alternative are as follows (additions
in [bracketed and in *italics*], and deletions [bracketed and struck through]):

> "Notwithstanding the requirement under Rule 26(a)(2)(B) of the Federal Rules of Civil
> Procedure, made applicable by Bankruptcy Rule 7026, to disclose an expert report at the
> time of disclosure of the identity of expert witnesses, each Debtor and Eligible Creditor
> who has timely disclosed the identity of an expert witness in its Opening Expert
> Disclosures on or before **September 6, 2021**, shall [disclose to the other Debtors and
> Eligible Creditors, with a copy to the Court and the PSA Parties,] [*file*] its Opening Expert
> Report(s) on or before **September 13, 2021**. [*With respect to Opening Expert Report(s)
> that were served on or before September 13, 2021 but were not filed on or before such
> date, the parties that submitted such Opening Expert Report(s) must file the Opening
> Expert Report(s) on or before* **September 22, 2021**. *With respect to Opening Expert
> Report(s) that rely on, reference, and/or are based on confidential information subject to
> the Protective Orders, such Opening Expert Report(s) may be filed with the confidential
> information redacted, with an unredacted copy of the same to be provided by the disclosing
> party to those Eligible Creditor(s) and PSA Parties who request a copy of the same directly
> to the disclosing party, but* <u>subject</u> *to the Eligible Creditor(s) and PSA Parties being able
> to evidence to the disclosing party that they are a signatory to, or have previously joined,
> the Protective Orders, or, alternatively, that they have executed and filed a Protective
> Orders Subscription Form annexed as* **Exhibit 4** *by* **September 24, 2021**.] Nothing in this
> paragraph is intended to modify any other requirement of Rule 26(a)(2)(B) of the Federal
> Rules of Civil Procedures."

The DRA Parties' caution that this alternative may be onerous to disclosing parties, as they could potentially be
inundated by hundreds of disclosure requests from Eligible Creditors and PSA Parties, and believe that the proposal
at ¶ 19(d) above is a more workable solution under the circumstances.

[19] For example, the Confirmation Procedures Order (i) does not require initial production requests to be filed, but does
require follow-up production requests be filed; (ii) does not require initial expert reports to be filed, but does require
rebuttal expert reports to be filed; and (iii) requires finalized witness lists, exhibit lists, and deposition designations to
be filed, but does not do so for counter-designations, objections to deposition designations, and objections to exhibit
lists. *See* Dkt. No. 17640 at ¶ 3. The DRA Parties propose that all such ambiguities be resolved in favor of filing.
Additionally, the DRA Parties propose further that all discovery requests and responses thereto be filed, as the FOMB
and AAFAF to date have refused the DRA Parties requests to share such materials despite the clear need for all parties
to have an understanding of what discovery is occurring pursuant to the Confirmation Procedures Order. The DRA
Parties suggest that the parties be required to file by **September 24, 2021** all such materials that have already been
served pursuant to the Confirmation Procedures Order.

that have been served pursuant to the Confirmation Procedures Order be filed immediately so that Eligible Creditors who have a right to participate and/or be allowed to attend the depositions receive notice of the same[20] [*see* Dkt. No. 17640 at ¶¶ 3, 13], among other issues. Accordingly, the DRA Parties request that the Confirmation Procedures Order be amended as proposed in the attached **Exhibit C**, and a redline of the changes is attached as **Exhibit D.**

       **WHEREFORE**, for the reasons above explained, the DRA Parties request and pray:

      a) That the Court deem the DRA Parties in compliance with the Order. *See* Dkt. No. 18118;

      a) That the DRA Parties' September 13, 2021 disclosure of the DRA Expert Reports be deemed to have not caused an undue harm or prejudice to parties in this case, and that such disclosure was proper and compliant under the Protective Orders. *See* Dkt. No. 12912, Dkt. No. 12920, Dkt. No. 16681-2, and Dkt. No. 76 of Adv. No. 20-0005 (LTS);

      b) That the DRA Parties are GRANTED an extension of time under ¶ 3 of the Confirmation Procedures until today to file redacted copies of the DRA Expert Reports, which filing of the reports shall be performed by attaching them as **Exhibits A** and **B** to this Motion; and

      c) That the Court GRANT the modifications and amendments to the Confirmation Procedures Order outlined at ¶¶ 19 – 20 and reflected in **Exhibits C** and **D**.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 20th day of September, 2021.

---

[20] For instance, the Monolines certified that they served their notices of deposition of the DRA Parties' experts "via electronic mail on counsel for the DRA Parties, the Financial Oversight and Management Board for Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority." Likewise, with respect to the FOMB's deposition notices, the FOMB's counsel certified that only counsel for the DRA Parties were served with such notices.

**WE HEREBY CERTIFY** that, in accordance with the Court's *Fifteenth Amended Notice, Case Management and Administrative Procedures Order* (the "CMP Order") [Dkt. No. 17127-1] on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case. We further certify that, on this same date, we served the foregoing upon all the Standard Parties as identified and defined in the CMP Order, as well as upon all of the parties identified in the Master Service List maintained at https://cases.primeclerk.com/puertorico/.

**MCCONNELL VALDÉS LLC**

270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
P.O. Box 364225
San Juan, PR 00936-4225
Tel:    787-250-5632
Fax:    787-759-9225

By:    */s/ Arturo J. García-Solá*
Arturo J. García-Solá
(USDC No. 201903)
E-mail: ajg@mcvpr.com

*/s/ Nayuan Zouairabani*
Nayuan Zouairabani
(USDC No. 226411)
E-mail: nzt@mcvpr.com

***Attorneys for AmeriNational Community Services, LLC, as Servicer for the GDB Debt Recovery Authority***

**C. CONDE & ASSOC. LAW OFFICES**

By:    */s/ Carmen D. Conde Torres*
Carmen D. Conde Torres
(USDC No. 207312)

*/s/ Luisa S. Valle Castro*
Luisa S. Valle Castro
(USDC No. 215611)

254 San José Street, Suite 5
San Juan, PR 00901-1523
Tel:    787-729-2900
Fax:    787-729-2203
E-mail: condecarmen@condelaw.com

-and-

**SCHULTE ROTH & ZABEL LLP**

By:    */s/ Douglas S. Mintz*
Douglas S. Mintz (admitted *pro hac vice*)
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
Tel:    202-729-7470
Fax:    202-730-4520
E-mail: douglas.mintz@srz.com

-and-

Douglas Koff (admitted *pro hac vice*)
Abbey Walsh (admitted *pro hac vice*)
Peter J. Amend (admitted *pro hac vice*)
919 Third Avenue
New York, NY 10022
Tel:    212-756-2000
Fax:    212-593-5955
E-mail: douglas.koff@srz.com
        abbey.walsh@srz.com
        peter.amend@srz.com

***Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for the GDB Debt Recovery Authority***