CONFIDENTIAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | § § § | **PROMESA** |
| **THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,** | § § § § | **Title III** |
| as representative of | § § | **No. 17 BK 3283-LTS** |
| **THE COMMONWEALTH OF PUERTO RICO, et al.,** | § § § | **(Jointly Administered)** |
| Debtors.[1] | § § | |

PRELIMINARY EXPERT REPORT OF
DOUGLAS J. BRICKLEY

Douglas J. Brickley

711 Louisiana Street
Suite 2100
Houston, Texas 77002

September 13, 2021

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801).

## NATURE OF ENGAGEMENT

The Claro Group, LLC ("**Claro**") was retained by McConnell Valdés LLC (**"Counsel"**) as counsel for, and on behalf of, AmeriNational Community Services, LLC ("**AmeriNat**"), the servicer for GDB Debt Recovery Authority ("**DRA**") in connection with new bonds issued by the DRA pursuant to the Government Development Bank for Puerto Rico Debt Restructuring Act, Act No. 109-2017, as amended by Act No. 147-2018, and the approved Qualifying Modification for the Government Development Bank for Puerto Rico ("**GDB**") under Title VI of the Puerto Rico Oversight, Management and Economic Stability Act ("**PROMESA**").

Claro was retained to review and analyze certain financial information, pleadings, discovery responses, and correspondence regarding the Commonwealth of Puerto Rico's (the "**Commonwealth**") annual budget and the Commonwealth's use of certain "clawback" funds for certain fiscal years in connection with the proceedings at Case No. 17 BK 3283-LTS; *In re: The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico, et al.;* pending in the United States District Court for the District of Puerto Rico (the "**Case**"). Specifically, we were asked to (i) identify and determine whether the Commonwealth properly activated and retained revenues in compliance with the constitutional "clawback" for select time periods, and (ii) identify and determine whether the "clawed back" revenues were transferred and used pursuant to the applicable waterfall and/or approved uses under the constitutional "clawback" provisions for select time periods. This report was prepared by professionals from Claro. I therefore use the pronouns "we," "us" and "our" to refer to the work performed by me or others at Claro.

This expert report ("**Preliminary Report**") presents our preliminary analyses to date on this matter based on the information that was made available to us at the time. Our analyses and opinions in this Preliminary Report focus on our independent assessment and investigation of the information and data that was publicly available to us, documentation that was made available to us by Counsel (some of which had been produced to Counsel as part of the discovery processes in the Case), and/or information contained on the docket of the Case. We are not providing any legal opinions or legal interpretation of the laws of the Government of Puerto Rico and, to the extent we discuss any statutes or legal issues in this Preliminary Report, the same are based on legal assumptions provided by Counsel. Claro has not independently verified any of the information or assumptions received from Counsel and/or their advisors, as applicable, nor does it take any independent position with respect to this information and these assumptions. Claro will provide its own assessment of the "clawback" issues identified above based on the information available to date.[2] A listing of the documents Claro relied upon in the course of performing this work is included as **Exhibit A** to this Preliminary Report.

---

[2] As of the date of the issuance of this Preliminary Report, Claro has not been provided any documents or information on how the Commonwealth, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("**AAFAF**") and/or the Fiscal Oversight and Management Board for Puerto Rico ("**FOMB**" or "**Oversight Board**", and together with the Commonwealth and AAFAF, the "**Government Parties**"), implemented the "clawback" and used the clawed back revenues.

*In re: The FOMB, Case No. 17 BK 3283-LTS* CONFIDENTIAL

Page 3

The opinions and analyses presented in this Preliminary Report are based on currently available information. Our work is ongoing, and we may supplement and update our findings and observations if additional relevant information is made available to us, which relevant information includes, but is not limited to, the type of documentation listed at **Exhibit B** of this Preliminary Report (the "**Remaining Information**"). Should Remaining Information be made available to Claro, Claro's analysis, conclusions, and/or assessment in this Preliminary Report may change or be further supplemented or substantiated, and Claro reserves the right to submit an updated report in the event the Remaining Information is produced to Claro in a timely fashion.

If called to testify in this matter, we may present analyses based on documents and information we have considered. Also, we may prepare graphical or illustrative exhibits based on the contents of this Preliminary Report, the documents relied upon, and our analysis of the documents relied upon.

## SUMMARY CONCLUSIONS

The Commonwealth had a budget surplus for Fiscal Year 2018 and projected surpluses for Fiscal Years 2019 through 2021.

The Commonwealth has not made any payments using clawed back funds on the General Obligation ("**GO**") debt since January 2016 and it has not made any such payments during the pendency of this Case.



The bases for my opinions are presented under the heading **Basis for Opinions and Conclusions** of this report.

## QUALIFICATIONS

I am currently a Managing Director of Claro located in the Houston, Texas office. I lead the Corporate Finance and Restructuring Services practices of the firm. I have more than 29 years of experience in financial advisory and investment banking services. I have been involved in numerous projects including, but not limited to, financial and operational restructurings, valuations, fairness opinions, solvency analyses and fraudulent transfer disputes, investment banking and corporate finance transactions, investigations of fraud and misconduct, asset divestitures and troubled company due diligence investigations for clients in numerous industries.

Prior to joining Claro, I was an investment banker in the Restructuring and Recapitalization Investment Banking Practice of a large, global investment banking firm. Prior to that, I worked in the restructuring practices of large boutique consulting companies, middle market investment banks and international public accounting firms. I assisted the clients of those firms in the implementation of rationalizations, turnarounds and investigations relating to underperforming companies in a variety of venues including in out-of-court restructurings, in Chapter 11 and

Chapter 7 bankruptcies and in other formal insolvency proceedings. I have been responsible for executing numerous transactions, including public and private debt and equity offerings, refinancing's and recapitalizations, mergers and acquisitions, fairness and valuation opinions, and several strategic financial advisory assignments, for middle market and emerging growth companies, in a variety of industries. I started my career in the management consulting practice of Price Waterhouse where I played a lead role in management consulting and change integration engagements for Fortune 100 clients. I received a BS in Political Science from Texas A&M University in 1990 and an MBA in Finance from Baylor University in 1992.

I hold the following professional certifications:

- CIRA – Certified Insolvency & Restructuring Advisor
- CTP – Certified Turnaround Professional
- Series 79 and 63 Securities Licenses

A more complete description of my qualifications, a list of my publications and presentations, and a list of my testimony for the past four years is provided in **Exhibit C**.

## COMPENSATION

Claro is paid for my time spent on this matter at a rate of $650 per hour. Claro is compensated for the time of other Claro personnel who have performed work under my direction at a range of hourly rates between $265 and $650. Compensation to Claro, or payment of Claro's fees and expenses, is not contingent upon the opinions or the conclusions I reach, the results of my testimony, or the outcome of the Case.

## DOCUMENTS RELIED UPON

In the course of this engagement, I have consulted with Counsel and reviewed documents. The documents that were made available to me or assisted in forming my opinions are set forth in **Exhibit A**. As indicated above, I may have to revise and/or supplement my report if the Government Parties produce information related to their implementation of the "clawback" and use of the clawed back revenues, which information has not been provided to me nor, as I understand from Counsel, has been produced in this Case to date. Among the information and/or documents that could be useful to complete this report is information related to the analyses made by the Government Parties to determine, on a year-by-year basis, whether the Commonwealth was running a deficit for any fiscal year since the "clawback" was implemented, and the uses that the Government Parties gave to the clawed back revenues, particularly any amounts that may have been paid to the debt service of the GO debt, and any other governmental expenses that may have been paid over the years with the clawed back funds. A non-exhaustive list of this Remaining Information is identified in **Exhibit B**.

The opinions expressed herein are based on my experience, the information I have reviewed and the work that I have done to date. Should additional documents or other information be provided

*In re: The FOMB, Case No. 17 BK 3283-LTS* CONFIDENTIAL
Page 5

to me, including, but not limited to, the Remaining Information listed in **Exhibit B**, my opinions as expressed herein could change, and therefore, I reserve the right to revise my report accordingly.

## BACKGROUND OF THE DISPUTE

I have reviewed *The DRA Parties' Motion for Allowance of an Administrative Expense Claim* [Docket No. 17009] (the "**Administrative Expense Motion**") for the background of this Case.

## BASIS FOR OPINIONS AND CONCLUSIONS

### The Commonwealth Ignores Requirement of Balanced Budget

We have been informed by Counsel, and have reviewed the relevant constitutional provision, that the Commonwealth may only utilize its clawback powers during that period when, after a balanced budget has been approved for a fiscal year, the Commonwealth's available resources turns out to be insufficient to cover the approved appropriations for that year (the "**Clawback Activation**").[3] *See* P.R. Const. art. VI, § 8 ("In case the available resources including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."). The requirement of a balanced budget is set forth in the Commonwealth's Constitution. Article VI, Section 7 of the Puerto Rico Constitution (the "**Constitution**") provides that "[t]he appropriations made for any fiscal year shall not exceed the total revenues, including available surplus, estimated for said fiscal year unless the imposition of taxes sufficient to cover said appropriations is provided by law." P.R. Const. art. VI, § 7. Section 7 requires the Commonwealth to increase tax revenues whenever necessary to provide sufficient funds to cover budgeted appropriations, including fiscal year operating expenses and general obligation debt service. *See id.* Section 7 also prohibits the Commonwealth from rolling budget shortfalls into successive fiscal years. *See id.*

We have been informed, and assume for purposes of our analysis that the Clawback Activation took place on December 1, 2015 by virtue of Executive Order OE-2015-046, dated November 30, 2015 ("**Executive Order**"). In this Case, the Government Parties have also informed that in developing certified budgets they did not follow the Constitution's requirement that there be a balanced budget prior to exercising the clawback powers. In a letter dated September 10, 2021, counsel for the Oversight Board stated that "[i]n developing the Commonwealth's certified budget, the Oversight Board does not perform specific analyses regarding 'whether or not the Commonwealth had a balanced budget,' 'whether or not the available revenues of the Commonwealth were sufficient to meet the appropriations for that fiscal year,' or 'the amount necessary to be retained for there to be sufficient revenues to meet the appropriations,' as requested in the September 3 Email."[4] Based on this statement by the Oversight Board, we have assumed that the analyses required by Article VI, Sections 7 and 8 of the Constitution have not been performed.

---

[3] P.R. Atty. Gen No. 10 of 2005, at p.6.

[4] Letter dated September 10, 2021 from M. Dale to T. Mott, *et al.*

**The Commonwealth Ignores the Requirement of a Deficit and the Priority Scheme for Use of Clawback Funds**

> *1,*     *There has been a surplus every year since 2017.*

We have also been informed, and have reviewed the relevant constitutional provision, that Article VI, Section 8 of the Constitution imposes an order as to how any "clawed back" revenues must be spent on an annual basis, with payments on GO debt as the first priority, by providing that "[i]n case the available resources including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law." P.R. Const. art. VI, § 8. Stated differently, we assume for purposes of our analysis herein that this means there should exist a deficit in the budget prior to the Commonwealth exercising its clawback powers. Further, Article VI, Section 9 of the Constitution states that "[p]ublic property and funds shall only be disposed of for public purposes . . . pursuant to law." P.R. Const. art. VI, § 9.

We have also reviewed Section 4(c) of the Management and Budget Office Organic Act, Act. No. 147 (June 18, 1980) (the "**OMB Act**"). We have been informed by counsel that this statutory provision creates a waterfall of the priorities of payment for "when the available funds for a specific fiscal year are not sufficient to cover the appropriations approved for that year" in compliance with Article VI, Section 8 of the Constitution. The OMB Act states that, when there are insufficient funds for the fiscal year, the Commonwealth should apply available funds in the following order:

> a.     First-priority status applies to the "payment of interest and amortizations corresponding to the public debt." 23 L.P.R.A. § 104(c)(1).

> b.     Second-priority status applies to the payment of "commitments entered into by virtue of legal contracts in force, judgments of the courts in cases of condemnation under eminent domain, and binding obligations to safeguard the credit, reputation and good name of the Government of the Commonwealth of Puerto Rico . . . ." 23 L.P.R.A. § 104(c)(2).

> c.     Third-priority status applies to the payment of "regular expenses" related to government operations, including payments for "[c]onservation of public health," "[p]rotection of persons and property," "[p]ublic education programs," "[p]ublic welfare programs", pension obligations and any "remaining public services." 23 L.P.R.A. § 104(c)(3).

> d.     Fourth priority status applies to expenditures for "construction of capital works or improvements" and fifth priority status applies to "contracts and commitments contracted under special appropriations." 23 L.P.R.A. § 104(c)(4)–(5).

*In re: The FOMB, Case No. 17 BK 3283-LTS* <span style="color:red">CONFIDENTIAL</span>
Page 7

Having reviewed the above-mentioned constitutional and legal provisions, we assume for purposes of this analysis that Article VI, Sections 7 through 8 of the Constitution and the OMB Act allow for the potential application of the "clawback" to certain revenue sources but only: (i) when the fiscal year begins with a balanced budget (*see* P.R. Const. art. VI, § 7); and (ii), when all other available resources for the fiscal year are insufficient to cover the GO debt service, to pay only interest and amortizations on such GO debt (*see* P.R. Const. art. VI, §§ 8; 23 L.P.R.A. § 104(c)(1)).

Based on the information we have been able to review to date, there has not been a deficit in the Commonwealth's budget since 2017. The audited financial statements of the Commonwealth dated June 30, 2018 reveal a surplus of $1,117,323.00 in 2018. While Claro does not have access to the Commonwealth's financial statements for years 2019-2020, the Commonwealth's 2021 Fiscal Plan for Puerto Rico dated April 23, 2021 (the "**Fiscal Plan**") shows a surplus for the years 2019 through 2021. Depitcted below is Exhibit 18 to the Fiscal Plan that projects a surplus of $3,380,000 in FY 2019, $1,351,000 in FY 2020 and $1,513,000 in FY 2021.



Projected deficit / surplus pre- and post-measures[1], $M

| | FY18 | FY19 | FY20 | FY21 | FY22 | FY23 | FY24 | FY25 | FY26 |
|---|---|---|---|---|---|---|---|---|---|
| Revenue pre-measures[2] | 22,335 | 23,844 | 21,377 | 22,202 | 21,048 | 20,010 | 19,798 | 20,137 | 20,455 |
| Expenditures pre-measures[2] | (20,118) | (20,464) | (20,026) | (20,688) | (20,822) | (20,570) | (20,775) | (21,066) | (21,339) |
| Surplus/deficit pre-measures | 2,217 | 3,380 | 1,351 | 1,513 | 226 | (560) | (977) | (929) | (883) |
| Measures | 87 | 845 | 242 | 321 | 1,490 | 1,880 | 2,048 | 2,194 | 2,217 |
| Surplus post-measures/SRs | 2,304 | 4,225 | 1,593 | 1,834 | 1,716 | 1,320 | 1,071 | 1,265 | 1,334 |

1 Values presented assume full and timely implementation of structural reforms and reflect GNP uplift due to these reforms
2 Revenues and expenditures excluding gross up adjustments; revenues do not include Earned Income Tax Credit

> 2. *The Commonwealth has not applied the "Clawback" funds to the GO debt.*

As stated above, we assume that the Constitution requires that the Commonwealth's annual appropriations not exceed its annual revenues, and, when the Commonwealth's resources are insufficient to cover its annual appropriations, it requires the Commonwealth to satisfy fiscal-year interest and amortization on GO bonds before it satisfies other obligations.

Further, AAFAF informed in its discovery responses in this Case (provided to us by Counsel) that the "Commonwealth has made one payment of General Obligation Debt using $163,940,875.30 worth of Clawback funds from the Clawback Account (GDB Account No. – 6048), in January

2016."[5]  AAFAF also informed that it "is public knowledge that no payments have been made to the General Obligation Debt since January 2016.[6]  Consistent with the AAFAF response, counsel for the FOMB stated that the "Commonwealth has been in Title III proceedings since May 2017, and it has not made debt service payments during the pendency of those proceedings."[7]

*3.*



As previously explained, we assume for purposes of our assessment that the Clawback Activation took place on December 1, 2015 by virtue of the Executive Order.  As it has been informed to us by Counsel, ███████████████████████████████████, we also assume for purposes of our analysis that the Executive Order clawed back the Acts 30 & 31 Incremental Revenues from December 1, 2015 to date.

---

[5] AAFAF's Responses and Objections to the DRA Parties' First Request for Production of Documents at pp. 25-26.
[6] *Id.* at 26.
[7] Letter dated September 10, 2021 from M. Dale to T. Mott, *et al.*
[8]
[9]
[10]

*In re: The FOMB, Case No. 17 BK 3283-LTS*   CONFIDENTIAL
Page 9

█████████████████████   were not used for payment of the waterfall priorities under Section 4(c) of the OMB Act.  Thus, based on the information we have been able to review to date, it is our opinion that ████████████████████████████████████████████ ████████████   the Commonwealth has failed to make the required GO debt payments under Article VI, Section 8 of the Constitution or comply with the waterfall priority payments outlined by the OMB Act.

## ADDITIONAL INFORMATION

This report was prepared to assist counsel in the resolution of the litigation styled on the cover page of this report and is intended solely for use in connection with this matter and is not to be used, referred to, or distributed for any other purpose.

If requested, I may prepare and utilize at trial a variety of charts and graphs to demonstrate my opinions and conclusions.

My analysis is ongoing, and I reserve the right to modify my opinions as additional information becomes available, such as the type of Remaining Information listed in **Exhibit B** which has not been provided to date and would be useful and/or necessary to complete the Report.

## <u>EXHIBITS</u>

| Exhibit No. | Description |
| --- | --- |
| A. | Considered Information |
| B. | Remaining Information |
| C. | Curriculum Vitae of Douglas J. Brickley |

| Document # | Document | Time Period |
|---|---|---|
| 1 | DRA Parties' Legal Arguments In Prior Filings 7th Amended Plan Of Adjustment | N/A |
| 2 | Analysis of Creditor Recoveries should the Title III Case be Dismissed for Creditors of the Commonwealth of Puerto Rico | N/A |
| 3 | Debtors' Preliminary List of Witnesses to be Offered in Support of Confirmation of Plan of Adjustment | N/A |
| 4 | Brief Summarizing Primary Proof That May be Offered in Support of Confirmation of Plan of Adjustment | N/A |
| 5 | The Dra Parties' Motion for Allowance of an Administrative Expense Claim | N/A |
| 6 | Disclosure Statement for the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, Et Al. | N/A |
| 7 | Commonwealth Puerto Rico Audited Financial Statements | 2016-2018 |
| 8 | Commonwealth Fiscal Plans | 2017-2021 |
| 9 | Commonwealth of Puerto Rico 2016 Operating Report | 2016 |
| 10 | Puerto Rico Highways and Transportation Authority Audited Financials | 2016-2019 |
| 11 | Puerto Rico Highways and Transportation Authority Certified Fiscal Plans | 2018-2021 |
| 12 | Historical Puerto Rico Highways and Transportation Authority Clawback Analysis: Fiscal Plan Figures | N/A |
| 13 | Constitution of the Commonwealth of Puerto Rico - Article VI - Section 2, Section 6, Section 7, Section 8 and Section 9 | N/A |
| 14 | Section 4(c) of the Management and Budget Office Organic Act, Act. No. 147 (June 18, 1980) | N/A |
| 15 | AAFAF's Responses and Objections to the DRA Parties' First Request for Production of Documents | N/A |
| 16 | 2021-09-10 - Letter from M. Dale to T. Mott et al. regarding DRA Parties' Discovery Requests | N/A |
| 17 | Expert Report of Lizette Martinez dated September 13, 2021 (the "Flow of Funds Report") | N/A |

| Document # | Document | Time Period |
|---|---|---|
| 1 | Detailed monthly financial statements including any relevant supporting documentation or meeting notes / minutes for the Commonwealth and HTA | FY2016 - Present |
| 2 | Any detailed monthly and / or annual budgets including any supporting documentation | FY2016 - Present |
| 3 | Balanced budget documents, analysis, discussions and meeting minutes | FY2016 - Present |
| 4 | Any budget to actual analysis and any associated notes, comments or documentation | FY2016 - Present |
| 5 | Unaudited or audited fiscal year end financial statements for the Commonwealth | 2019 - 2021 |
| 6 | Unaudited or audited fiscal year end financial statements for HTA | 2020 - 2021 |
| 7 | All documents concerning any analyses, discussion, or examination for each fiscal year from FY2016 to the present, of whether or not the available revenues of the Commonwealth were insufficient to meet the appropriations made for that fiscal year. | FY2016 - Present |
| 8 | All documents concerning any analyses, discussion, or examination, for each fiscal year from FY2016 to the present, evaluating the amounts to retain in order for there to be sufficient available revenue to meet the appropriations made for that fiscal year. | FY2016 - Present |
| 9 | Any analysis regarding any amounts retained, diverted, or collected from HTA under the Clawback | FY2016 - Present |
| 10 | Amounts of Clawback funds the Government Entities used for the payment of General Obligation Debt and where such amounts were taken from. | FY2016 - Present |
| 11 | Documents sufficient to identify, for each fiscal year from FY2016 to the present, the amounts of Clawback funds the Government Entities disbursed for uses other than the payment of General Obligation Debt, as well as documents sufficient to identify each such other uses and where such amounts were taken from. | FY2016 - Present |
| 12 | All documents concerning the criteria, requirements, and conditions for identifying or selecting which revenues would be subject to the Clawback, including but not limited to revenues due to HTA and the Act 30-31 Revenues, including but not limited to memoranda, policies, procedures, and guidelines. | FY2016 - Present |
| 13 | All documents concerning the treatment, use, classification, and financial recording of Clawback funds, including but not limited to all documents concerning the execution, implementation of, and compliance with Executive Orders 2015-46, 2016-30, and 2016-31, and including but not limited to memoranda, policies, procedures, and guidelines. | FY2016 - Present |
| 14 | HTA's monthly use of any Act 30-31 Revenues that were transferred to HTA. | FY2016 - Present |

**Note:** Relevant information includes but not limited to the type of documentation listed here.

Exhibit C



**Douglas J. Brickley**
Managing Director

**The Claro Group, LLC**
711 Louisiana St.
Suite #2100
Houston, TX  77002
P: 713.955.8406
F: 713.236.0033
C: 713.398.5088
dbrickley@theclarogroup.com

**EDUCATION**

MBA – Finance
Baylor University, 1992

Bachelor of Science
Texas A&M University, 1990

**ACTIVITIES & HONORS**

- Certified Insolvency and Restructuring Advisor (CIRA)
- Certified Turnaround Professional (CTP)
- Member of the Advisory Board of the Turnaround Management Association and former President (Houston Chapter)
- Member of the Association of Insolvency and Restructuring Advisors (AIRA)
- Member or the American Bankruptcy Institute (ABI)
- Member of the State Bar of Texas – Bankruptcy Section (non-lawyer professional)
- Series 79 and 63 Securities Licenses

**Douglas J. Brickley** is a managing director of The Claro Group, LLC located in Houston, TX.  Mr. Brickley leads the Corporate Finance and Restructuring Services practices of the firm.  Mr. Brickley has more than 29 years of experience in financial advisory and investment banking services. He has been involved in numerous projects including, but not limited to, financial and operational restructurings, valuations, fairness opinions, solvency analyses and fraudulent transfer disputes, investment banking and corporate finance transactions, investigations of fraud and misconduct, asset divestitures and troubled company due diligence investigations for clients in numerous industries.

Prior to joining The Claro Group, LLC, Mr. Brickley was an investment banker in the Restructuring and Recapitalization Investment Banking Practice of a large, global investment banking firm.  Prior to that, Mr. Brickley worked in the restructuring practices of large boutique consulting companies, middle market investment banks and international public accounting firms. He assisted the clients of those firms in the implementation of rationalizations, turnarounds and investigations relating to underperforming companies in a variety of venues including in out-of-court restructurings, in Chapter 11 and Chapter 7 bankruptcies and in other formal insolvency proceedings. Mr. Brickley has been responsible for executing numerous transactions, including public and private debt and equity offerings, refinancing's and recapitalizations, mergers and acquisitions, fairness and valuation opinions, and several strategic financial advisory assignments, for middle market and emerging growth companies, in a variety of industries.  Mr. Brickley started his career in the management consulting practice of Price Waterhouse where he played a lead role in management consulting and change integration engagements for Fortune 100 clients.

**Representative Experience**

- Serving as Chief Restructuring Officer for an offshore Oil & Gas exploration and production firm in a Chapter 11 bankruptcy proceeding.  Additionally, managing the project team that is serving as the financial advisor to the Debtor. The project team is assisting the company in completing a reorganization of its operations and its assets, marketing the assets for a sale of as portion of its assets in a 363 sale transaction. The team also is assisting the debtor in completing the statements and schedules and other bankruptcy reporting and budgeting requirements.

- Serving as Chief Restructuring Officer for an Engineering, Procurement and Consulting firm in a Chapter 11 bankruptcy proceeding.  Additionally, managing the project team that is serving as the financial advisor to the Debtor. The project team is assisting the company in completing a DIP financing, marketing the assets for a sale of substantially all of its assets in a 363 sale transaction and providing assistance to the management team in developing a long term business plan and Plan of Reorganization for the company.  Services include providing advice for the management of relationships with the debtors' key suppliers, secured lenders, and other parties in interest.  The team also is assisting the debtor in completing the

statements and schedules and other bankruptcy reporting and budgeting requirements.

- Serving as Chief Restructuring Officer for a leading manufacturer of oil country tubular goods for the oil and gas industry in an out-of-court restructuring process.  The company runs 5 locations with approximately 300 employees. The CRO is responsible for running all aspects of the restructuring process.  Additionally, the CRO is managing the project team that is serving as the financial advisor to the Debtor. The project team is assisting the company in managing the relationships with the debtors' key suppliers, secured lenders, and other parties in interest.  The team also is assisting the debtor in completing a comprehensive restructuring plan and all of the supporting financial and operational reports associated with that plan.

- Serving as Chief Restructuring Officer for a leading manufacturer and distributor of tubular products for the oil and gas industry in an out-of-court restructuring process.  The company runs 5 locations with approximately 150 employees. The CRO is responsible for running all aspects of the restructuring process.  The CRO is also managing the project team that is serving as the financial advisor to the Debtor. The project team is assisting the company in managing its relationships with key suppliers, secured lenders, and other parties in interest.  The team also is assisting the debtor in completing a comprehensive restructuring plan and all of the supporting financial and operational reports associated with that plan.

- Serving as Chief Restructuring Officer for a Veterinarian Care Services company in a Chapter 11 bankruptcy proceeding.  The company runs 24 animal care hospitals in 7 states with approximately 450 employees. The CRO is responsible for running the day to day operations of the company and all aspects of the bankruptcy restructuring process.  Additionally, The CRO is managing the project team that is serving as the financial advisor to the Debtor. The project team is assisting the company in completing a DIP financing, marketing the assets for a sale of substantially all of its assets in a 363 sale transaction and developing a Plan of Reorganization for the company.  Services include managing all operations of the debtor, managing the relationships with the debtors' key suppliers, secured lenders, and other parties in interest.  The team also is assisting the debtor in completing the statements and schedules and other bankruptcy reporting and budgeting requirements.

- Managing the project team that is serving as the financial advisor to a revenue oil and gas exploration and production company 1,200 shallow natural gas wells in Utah. The project team is assisting the company in executing a sales process for the sale of substantially all of their assets. Services include providing advice for the management of relationships with the debtors' key suppliers, secured lenders and other parties in interest.  The team also is assisting the debtor in completing the statements and schedules and other bankruptcy reporting and budgeting requirements.

- Managed the project team that served as the financial advisor to the Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 filing

of an oil and gas exploration and production company in Texas. Advisory services included analyzing, monitoring, and evaluating the debtor's operations on the behalf of the Committee and working with the debtor and its advisors toward a plan of reorganization.

- Managed the project team that served as the financial advisor to a $500 million revenue Beef Processor located in South Texas. The project team assisted the company in completing a sale of substantially all of its assets in a 363 sale transaction in a bankruptcy proceeding.  Services include providing advice for the management of relationships with the debtors' key suppliers, secured and second lien lenders.  The team also is assisting the debtor in completing the statements and schedules and other bankruptcy reporting and budgeting requirements. Now serving as the Plan Agent and Liquidating Trustee pursuant to the Plan of Reorganization.

- Managed the project term that served as forensic accountants to the board of directors of an oil services company.  Services included performing an evaluation and investigation of potentially fraudulent transfers and other potentially avoidable transactions conducted by the management team.

- Managed the project team that is served as the financial advisor to Chapter 11 Trustee for a company that runs special event centers in the Western United States. The project team assisted the Trustee in determining the potential for the debtors to reorganize and recapitalize.  Services included providing advice for the management of relationships with the debtors' secured and unsecured creditors.

- Managed the project team that is served as the financial advisor to the Chapter 11 trustee for a manufacturer of energy-efficient and reliable lighting products for the heavy industry and healthcare sectors.  The project team assisted the Trustee in conducting a marketing process to sell substantially all of the debtor's assets in a 363 sale transaction in a bankruptcy proceeding. Services included providing advice for the management of relationships with the debtors' key suppliers, secured and second lien lenders.  The team also is assisting the Trustee in completing the monthly operating reports and other bankruptcy reporting requirements.

- Managing the project term that is serving as forensic accountants to the Chapter 7 Trustee for a drilling services company.  Services include performing an evaluation and investigation of fraudulent transfer claims and other potential avoidance actions.

- Serving as a Texas state court receiver for a mothballed crude oil refinery located in Houston, TX.  Responsibilities include managing the efforts to sell the assets. Additionally, responsibilities include preparing and filing Court required reports and sale documents.

- Serving as the post confirmation trustee for a litigation trust relating to the Chapter 11 filing of an oil and gas exploration and production company in Texas. Responsibilities include holding and administering the causes of action, determining the strategy to litigate, settle or otherwise dispose of the

causes of action, make distributions from the Trust Assets, and to hire professionals (as necessary).

- Served as receiver, Chapter 11 trustee and currently serving as Chapter 7 trustee for a privately held internet hosting company. Services include running the day-to-day operations, restructuring the business to curtail negative cash flows, and taking the company through a Chapter 11 filing and a conversion to a Chapter 7 bankruptcy.

- Managed the project team that provided advice to an operator of an offshore Platform Supply Vessel Company located in Mexico.  The project team assisted the company in completing a $75 million recapitalization of its balance sheet.  Services included providing advice for the management of relationships with the secured and second lien lenders.  The team also assisted the debtor and the other retained professionals in the development and analysis of various potential sale, restructuring and refinancing scenarios.

- Managed the project team that provided buy side advisory services to a major multi-national oil & gas exploration and production company in the acquisition of assets located in the Gulf of Mexico for a purchase price in excess of $300 million. The assets were acquired from a debtor through a 363 bankruptcy sale process. Services included providing advice and analysis throughout the process.

- Participated as a member of the project team that assisted the management and board of directors through Chapter 11 reorganization process. Primary responsibilities included preparing a liquidation analysis for the company.

- Participated as a member of the project team that advised the management and the board of a bankrupt shipping company in the sale of its interests in a joint venture to a strategic buyer for in excess of $350 million. The members of the deal team identified potential acquirers and merger partners and provided strategic advisory and consulting services in support of the transaction, advised the company in the negotiations and provided expert testimony in the related bankruptcy proceeding as requested by counsel.

- Participated as a member of the project team that advised the management and the board of a publicly traded oil & gas exploration and production company in a financial recapitalization process. Responsibilities included analysis of and recommendations for improvements in restructuring its balance sheet.  Ultimately, the deal team assisted the company in successfully completing a $243,468,000 exchange offer for its senior and second lien notes.

- Served as the Chief Restructuring Officer and manager of a leading supplier of pipe, valve, fittings (PVF) and related products and services to the energy industry along the Gulf Coast and in the Rocky Mountains which filed for Chapter 11 Bankruptcy protection in Louisiana. Responsibilities included overseeing the day-to-day operations of all of these entities and leading the

efforts to reorganize these entities through a Court supervised restructuring process.

- Served as the financial advisor to the Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 filing of an oil and gas exploration and production company in Texas. Advisory services included analyzing, monitoring, and evaluating the debtor's operations on the behalf of the Committee and working with the debtor and its advisors toward a plan of reorganization or the sale of the debtor's operations. Additional services included performing an evaluation and investigation of fraudulent transfer claims and other potential avoidance actions.

- Served as a Texas state court receiver (and as the Debtor-in-possession) for a privately held hospital that operated in a Chapter 11 Bankruptcy proceeding in Texas. Responsibilities included managing the day-to-day business of the hospital, leading the efforts to sell the assets or refinance and restructure the estate through a Court supervised process and to maximize the recovery to the estate's creditors. Additionally, responsibilities included preparing and filing Court required reports, determining the value of the company's assets and working with the former operations management of the company to identify and prosecute litigation claims.

- Assisted the management of a private equity owned frozen food manufacturer through Chapter 11 reorganization process. Responsibilities included assisting the company in preparing and filing the court required schedules and statements of financial affairs and monthly operating reports.

- Served as the Chapter 11 and Chapter 7 Trustee for a privately held provider of supply chain management software and solutions include asset planning, scheduling and visualization systems for the oil & gas, LNG, petroleum downstream refining, petrochemical, metals & mining, and pulp & paper industries. Responsibilities included overseeing the day-to-day operations of all of the assets of the estate and leading the efforts to recapitalize these entities or to sell these assets through a Court supervised process. Additionally, responsibilities included preparing and filing Court required reports, determining the value of the company's assets and working with the operations management of the company to manage cash in order to fund the company's ongoing operations and appellant litigation involving a trade secrets lawsuit against the company. Ultimately, the assets were sold in a 363 sale and the company's remaining operations were wound down in a Chapter 7 proceeding.

- Served as the Chief Restructuring Officer of a chain of convenience stores in a Chapter 11 Bankruptcy proceeding in Texas. The chain consists of 28 stores located in South Texas. Responsibilities included overseeing the day-to-day operations of all of these entities and leading the efforts to reorganize these entities through a Court supervised restructuring process. Additionally, responsibilities included creating and implementing a strategic and financial plan including short-term and long-term financial projections, determining the value of these assets, preparing detailed reports of actual operating and

financial results as required by the secured lenders, unsecured creditors and assisting the management in the sale of substantially all of the assets of the debtor and the development and negotiation of a plan of reorganization for the debtor with all of the interested parties involved.  This transaction won the Turnaround Management Association's Mid-Market Transaction of the Year Award for 2016.

- Served as the post confirmation trustee for a litigation trust relating to the Chapter 11 filing of an oil and gas exploration and production company in Texas. Responsibilities included holding and administering the causes of action, determining the strategy to litigate, settle or otherwise dispose of the causes of action, make distributions from the Trusts, and to hire professionals (as necessary).

- Served as the financial advisor to the chapter 11 Trustee of an Acute Care Hospital. Services included assisting the Trustee with numerous matters for the case including analyzing the cash position of the debtor, developing cash forecasts, providing technical and analytical support, assisting with various operational items, preparing monthly operating reports, coordinating items relating to payroll and assisting with bank account and accounts receivable reconciliations.  Additionally, responsibilities included leading the team to assist the Trustee in evaluating the assets and preparing them for a potential 363 sale process.

- Served as a Texas state court receiver for a privately held health care company with operations in numerous states.  Responsibilities included leading the efforts to sell these assets through a Court supervised process and to pay creditors. Additionally, responsibilities included preparing and filing Court required reports, determining the value of the company's assets and working with the former operations management of the company to identify and prosecute potential future litigation claims.

- Served as the financial advisor of a Chapter 11 Trustee for a privately held health care company.  Responsibilities included leading the efforts to sell these assets through a Court supervised process. Additionally, responsibilities included preparing and filing Court required reports, determining the value of the company's assets and working with the operations management of the company to manage cash in order to fund the company's liquidation process and potential future litigation proceedings.

- Served as the financial advisor for the largest unsecured creditor of a privately held health care company.  Responsibilities included leading the efforts to assist this creditor in its negotiations with the debtor in its restructuring process.  Responsibilities included preparing and analyses to support the creditor in this process, determining the value of the company's assets and working with the debtors restructuring professionals and the management of the company to determine the best way to restructure the debtor's operations for the benefit of the creditors.

- Served as the Chapter 7 Trustee for a privately held oil and gas exploration and production company.   Previously served as the Chapter 11 trustee. Responsibilities included overseeing of all of the day-to-day operations of all of the assets of the estate and leading the efforts to recapitalize these entities or to sell these assets through a Court supervised process. Additionally, responsibilities included preparing and filing Court required reports, determining the value of the company's assets and working with the operations management of the company to manage cash in order to fund the estates' drilling program.

- Served as Chapter 11 trustee for a privately held hospitality company. Services included running the day-to-day operations of a hotel property, restructuring the business to curtail negative cash flows, and taking the company through a Chapter 11
Reorganization process.

- Served as the Chief Restructuring Advisor for an offshore oil and gas exploration and production company. Responsibilities included assisting management with overseeing the day-to-day operations of all of the company's properties and leading the efforts to recapitalize these entities through an out-of-court restructuring process to allow the company to pursue some very attractive opportunities in the Gulf of Mexico.  Additionally, responsibilities included creating and implementing a strategic and financial plan including short-term financial projections and budgets, determining the value of the company's assets and assisting the debtors in the development and implementation of a long-term restructuring plan.

- Served as the Chief Restructuring Officer of 4 related oil and gas exploration and production companies.  These entities owned leases in the shallow water Gulf of Mexico.   Responsibilities included overseeing the day-to-day operations of all of these entities and leading the efforts to reorganize these entities through an out-of-court restructuring process. Additionally, responsibilities included creating and implementing a strategic and financial plan including short-term and long-term financial projections, determining the value of these assets, preparing detailed reports of actual operating and financial results as required by the secured lenders, unsecured creditors and the parent corporation and leading the investigation of fraudulent transfer claims and other potential avoidance actions and assisting the debtors in the development  and negotiation of a plan of reorganization for each of these entities with all of the interested parties involved.

- Served as the Chief Restructuring Officer of 15 related real estate entities. These entities owned a variety of real estate assets including: office buildings, hotels, multi-family and single-family residential property, commercial property and raw land. Responsibilities included running the day-to-day operations of all of these entities in addition to leading the efforts to reorganize these entities through a Chapter 11 process. Additionally, responsibilities included creating and implementing a strategic and financial plan including short-term and long-term financial projections, determining the value of these assets and providing testimony to the Court regarding such

valuations, preparing detailed reports of actual operating and financial results as required by the secured lenders, unsecured creditors and the Bankruptcy Court, and leading the investigation of fraudulent transfer claims and other potential avoidance actions, negotiating all potential sales transactions of the assets of the debtors and developing and negotiating a plan of reorganization for each of these entities with all of the interested parties involved in these cases.

- Served as Examiner with expanded powers for two privately held oil and gas exploration and production entities. Responsibilities included investigating the affairs of the debtor and reviewing various transactions between the debtors and certain insiders and related parties and issuing two reports detailing the findings of such investigations.  Additionally, the expanded powers performed included approving all cash transactions, exercising full and complete authority over all receipts and disbursements of the debtor, exercising full and complete authority over all transactions of the debtors and exercising full responsibility to sell the assets of the debtors.

- Provided expert witness services to a large publicly traded oil and gas exploration and production company and to a large reserve engineering firm in a fraudulent transfer dispute with a Chapter 11 debtor. Managed the client service team that provided expert analysis of the value of the underlying assets, the facts and circumstances relating to the transactions in question and certain other strategic factors deemed relevant to the fraudulent transfer dispute.  Prepared an expert report detailing the findings and applying them to the relevant fraudulent transfer statutes.

- Provided consulting expert services to the former owner and CEO of a home builder involved in a fraudulent transfer dispute with a Chapter 7 trustee. Managed the client service team that provided expert analysis of the value of the underlying assets, the facts and circumstances relating to the transactions in question and certain other strategic factors deemed relevant to the fraudulent transfer dispute.

- Served as the post confirmation trustee for a post-confirmation trust of a real estate company in Texas. Responsibilities included liquidating the remaining assets, holding and administering the causes of action, determining the strategy to litigate, settle or otherwise dispose of the causes of action, make distributions from the Trusts, hire professionals (as required) and provide periodic reports to the Trust Committees as necessary.

- Served as Chapter 11 trustee for a privately held hospitality company. Services included running the day-to-day operations of a hotel property, restructuring the business to curtail negative cash flows, and taking the company through a Chapter 11 sale process.

- Served as the post confirmation trustee for two litigation trusts relating to the Chapter 11 filing of an oil and gas exploration and production company in Texas. Responsibilities included holding and administering the causes of action, determining the strategy to litigate, settle or otherwise dispose of the

causes of action, make distributions from the Trusts, hire professionals (as required) and provide periodic reports to the Trust Committees as necessary.

- Served as the post confirmation trustee for a post-confirmation trust of a building products distributor in Texas. Responsibilities included holding and administering the causes of action, determining the strategy to litigate, settle or otherwise dispose of the causes of action, make distributions from the Trusts, hire professionals (as required) and provide periodic reports to the Trust Committees as necessary.

- Served as the post confirmation trustee for a post-confirmation trust relating to the Chapter 11 filing of a manufacturer and distributor of building products and materials in Texas. Responsibilities included holding and administering the assets for the benefit of the unsecured creditors and monitoring the Company's performance and their adherence to the provisions of the plan of confirmation.

- Served as Chairman of the Board, Chief Financial Officer, post confirmation trustee, plan administrator for a high-tech manufacturer of reset relief valves for the oil field industry. Responsibilities included approving all cash transactions, exercising full and complete authority over all receipts and disbursements of the company, exercising full and complete authority over all transactions of the company, holding and administering the assets for the benefit of the unsecured creditors and monitoring the Company's performance and their adherence to the provisions of the plan of confirmation.

- Served as Chapter 11 trustee for a privately held chiropractic clinic. Services included running the day-to-day operations, restructuring the business to curtail negative cash flows and taking the company through a Chapter 11 bankruptcy process including investigating avoidance actions and fraudulent transfers.

- Advised the Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 filing of an oil and gas exploration and production company in Texas. Advisory services included analyzing, monitoring, and evaluating the debtor's operations on the behalf of the Committee and working with the debtor and its advisors toward a plan of reorganization or the sale of the debtor's operations as a going concern. Additional services included performing an evaluation and investigation of fraudulent transfer claims and other potential avoidance actions.

- Advised the Official Committee of Unsecured Creditors in the Chapter 11 filing of an operator of quick lube centers nationwide. Advisory services included analyzing the debtor's strategic alternatives for a financial and operational restructuring, analyzing potential fraudulent transfers and other avoidance actions, monitoring and evaluating the debtor's operations on the behalf of the Committee, and working with the debtor and its advisors toward a plan of reorganization.

- Assisted the management of one of the world's largest manufacturers of geosynthetic, concrete, furnishing, and industrial fibers and fabrics through Chapter 11 reorganization. Responsibilities included assisting the company in preparing and filing the court required schedules and statements of financial affairs and monthly operating reports.

- Advised the owners of a bankrupt real estate development firm in a fraudulent transfer dispute. Managed the client service team that provided expert analysis of the value of the underlying assets, the value of the various partnership interests, the facts and circumstances relating to the transactions in question and certain other strategic factors deemed relevant to the fraudulent transfer dispute. Analyzed the structures of the partnerships and prepared expert reports detailing the findings and applying them to the relevant fraudulent transfer statutes.

- Provided investigative services for the lenders of a distressed oil and gas exploration and production company. Investigated allegations of actual and constructive fraud on behalf of the lender group. Advisory services included analyzing and evaluating whether the disclosures made to the lender were adequate and accurately reflected the true state of the business and its underlying collateral. Provided subject matter expertise to the engagement team relative to bankruptcy and insolvency.

- Advised the Official Committee of Unsecured Creditors in the Chapter 11 filing of an operator of Mexican and Italian restaurant chains in Texas. Advisory services included analyzing, monitoring, and evaluating the debtor's operations on the behalf of the Committee and working with the debtor and its advisors toward a plan of reorganization or the sale of the debtor's operations as a going concern and the investigation of fraudulent transfer claims and other potential avoidance actions.

- Advised the Official Committee of Unsecured Creditors in the Chapter 11 filing of an operator of cafeteria restaurants in the Southern United States. Advisory services included analyzing, monitoring, and evaluating the debtor's operations on the behalf of the Committee and working with the debtor and its advisors toward a plan of reorganization or the sale of the debtor's operations as a going concern and the investigation of fraudulent transfer claims and other potential avoidance actions.

- Advised the owners of a specialty physician practice in a fraudulent transfer dispute. Managed the client service team that provided expert analysis of the financial and operational performance of the practice, the facts and circumstances relating to the transaction, and certain other strategic factors deemed relevant to the fraudulent transfer dispute. Analyzed the fair market value of the assets acquired in the transaction and prepared an expert report detailing the findings and applying them to the relevant fraudulent transfer statutes.

- Advised the lenders to a bankrupt telecom company in a fraudulent transfer dispute. Managed the client service team that provided expert analysis of the

financial and operational performance of the practice, the facts and circumstances relating to the transaction and certain other strategic factors deemed relevant to the fraudulent transfer dispute. Analyzed the fair market value of the assets acquired in the transaction, and the company's underlying solvency, and prepared an expert report detailing the findings and applying them to the relevant fraudulent transfer statutes.

- Advised the secured lenders of a large distressed manufacturer of retail store fixtures. Provided advice on the current status of the lender's collateral position, the viability of the company's business plan, the company's ongoing cash management activities, the going concern valuation of the business, the potential break-up value of the business, the management of the company's relationships with its vendors and assisted in the negotiations of a potential debt restructuring with the equity sponsor.

- Advised the secured lenders of a large distressed producer of specialty bread products. Provided advice on the current status of the lender's collateral position, the viability of the company's business plan, the company's ongoing cash management activities, the going concern valuation of the business, and assisted in the negotiations of all aspects of a potential debt restructuring.

- Managed the project team that provided advisory services to the secured lenders in the bankruptcy of a $300 million manufacturer and distributor of auto and truck parts. Advisory services included a review of the company's business plan and collateral position, analysis of the long-term viability of the company, analysis and review of the company's asset divestiture program, monitoring of the company's compliance with the reporting requirements and covenants of the DIP facility and analysis of the potential recovery to the secured lenders under various divestiture and restructuring scenarios.

- Advised the secured lenders of a distressed $50 million manufacturer and distributor of auto parts. Provided advice on the current status of the lender's collateral position, the company's cash management activities, and the company's long-term viability.

- Provided financial advisory services, on an out-of-court basis, to the secured creditors of a large midstream energy company. Managed the team of professionals in this monitoring engagement. Services included assessing and critiquing: the company's short-term cash flow projections, its current business plan, and the company's ability to service existing as well as proposed interest-bearing debt. Additionally, this team prepared a liquidation analysis and an estimate of the current enterprise valuation of the business. This analysis was based on an examination of the company's current financial projections, as well as, its assets and liabilities, schedule of off-balance sheet commitments, contingent liabilities, and hedging arrangements.

- Assisted the management of a retailer/distributor of all-terrain vehicles, scooters, mopeds, and motorcycles through Chapter 11 reorganization. Responsibilities included providing pre-bankruptcy planning, assisting in the preparation of a strategic and financial plan including short-term and long-

term financial projections, and the reporting of actual operating and financial results as required by the bankruptcy court and the investigation of fraudulent transfer claims and other potential avoidance actions.

- Managed the project team that provided advice to a $500 million chemical refiner in an out-of-court debt restructuring. Services included providing advice for cash management, the rationalization of the business, and the management of relationships with lenders and vendors. Assisted in the development and analysis of various restructuring and refinancing scenarios.

- Advised the board of directors and management of an underperforming publicly traded specialty retail (Women's apparel) company in a sale transaction. Identified potential acquirers and merger partners and provided strategic advisory and consulting services, conducted an auction and provided a fairness opinion in support of the ultimate sale of the company to a private equity buyer.

- Advised management and the board of a publicly traded specialty retail (men's apparel) company in a financial recapitalization and operational restructuring process. Responsibilities included analysis of and recommendations for improvements in short-term liquidity position, assisting management in identifying non-core operating assets and expense reductions, creating a business and expansion plan and arranging a private placement of a large block of the company's equity.

- Advised the shareholders and the board of a distressed online shopping and e-commerce company in the potential sale of the company to a strategic buyer. Identified potential acquirers and merger partners and provided strategic advisory and consulting services in support of a potential transaction.

- Advised the shareholders and the board of a distressed value-added reseller of computer equipment in the potential sale or recapitalization of the company. Identified potential investors, acquirers and merger partners and provided strategic advisory and consulting services in support of a potential transaction.

- Provided strategic financial advisory services to the board of directors of a distressed provider of outsourced training programs delivered to large corporations via satellite and the internet. Provided advisory services and evaluated strategic alternatives for the company and examined several potential recapitalization and refinancing alternatives for the company.

- Managed the team that provided advisory services and expert reports for the seller of three HMOs to a financial buyer. Advisory services included analyzing and evaluating whether the disclosures made to the state insurance regulators were adequate and accurately reflected the terms of the transaction. Additionally, the team evaluated the evidence relative to allegations of fraud made against the seller subsequent to the transaction.

These services were provided in the context of two lawsuits being brought in state court by the receivers of the three HMOs.

- Provided financial advisory services to one of the world's largest aluminum producers. Assisted the client in assessing the business of an aluminum facility that was being considered as a potential acquisition candidate. These financial advisory services included analyzing the business of the seller and the market it is operating in, the company's historical financial performance and its financial projections. Performed a sensitivity analysis on the key drivers of the seller's business plan and provided the client with an estimate of the current enterprise valuation of the business. Analyzed the potential upside of various restructuring scenarios and assisted the client in its negotiations with the seller.

- Provided sell-side M&A services to the stakeholders of a distressed inbound and outbound telemarketing company in an out-of-court workout situation. Prepared marketing materials contacted potential buyers and coordinated due diligence on late stage competitive bids.

- Providing strategic financial advisory services to the estate of the late chairman/CEO of a distressed direct mail services company. Provided advisory services and evaluated strategic alternatives for the company and the estate. Contacted potential buyers and arranged a private investment in public equity (PIPE) transaction involving the estate's block of shares.

- Provided M&A consulting services for an acquisition of a distressed Midwestern graphics and promotions company. Conducted due diligence, contacted lenders and investors, and arranged financing package for the transaction.

- Provided investigative services for the secured lender of a distressed value-added reseller of computer equipment. Investigated allegations of bank fraud on behalf of the secured lender. Advisory services included analyzing and evaluating whether the disclosures made to the lender were adequate and accurately reflected the true state of the underlying collateral. Provided subject matter expertise to the engagement team relative to bankruptcy and insolvency.

- Assisted in the development of an asset divestiture plan for a $1 billion value-added processor and distributor of specialty metals. Provided advice on the development of the overall marketing plan for the assets and assisted in the preparation of the offering memoranda and other related materials. Additionally, managed the team in the preparation of a valuation for the purposes of determining the reorganization value of the company.

- Managed the project teams that performed numerous business plan reviews and collateral analyses for the secured lending groups of numerous distressed companies in a variety of industries.

**Testimony Experience**

- Testified in the role of Chief Restructuring Officer for the Debtor "Castex Energy 2005 Holdco, LLC et al." in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 21-30710)

- Testified in the role of Financial Advisor for the Debtor "Buzzards Bench, LLC and Buzzards Bench Holdings, LLC" in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 20-32391)

- Testified in the role of Chief Restructuring Officer for the Debtor "Veterinary Care, Inc. and TVET Management LLC d/b/a VitalPet" in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 19-35736)

- Testified in the role of Chief Restructuring Officer for the Debtor "KP Engineering L.P." in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 19-34698)

- Testified in the role of Receiver and Responsible Party for the Debtor "Cleveland Imaging & Surgical Center" in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 14-34974)

- Testified in the role of financial advisor to the Official Committee of Unsecured Creditors for the matter of  "Goldking Holdings, LLC." in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 13-37200)

- Testified in the role of financial advisor for the Debtor "ASR Parkway One & Two, L.P. Case Number 14-30176, ASR Fountainview Place, L.P. Case Number 14-14-30175, ASR-8 Centre, L.P. and Case Number 14-30174" in the United States Bankruptcy Court for the Southern District of Texas, Houston Division

- Testified in the role of Chapter 11 Trustee for the Debtor "M3 Technology Incorporated." in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 12-34444)

- Testified in the role of Chief Restructuring Officer for the Debtor "Aziz Convenience Stores, LLC." in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 14-70427)

- Testified in the role of Chapter 11 Trustee for the Debtor "Tulsi Lodging LLC." in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 12-30603)

- Testified in the role of Chapter 11 Trustee for the Debtor "TexLA Hotels, LLC." in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 12-32005)

- Testified in the role of Chapter 11 Trustee for the Debtor "H&M Oil & Gas, LLC" in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 12-32785)

- Testified in the role of Financial Advisor to the Debtor "CoolSports, Inc." in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (Case No. 07-35729)

- Testified in the role of Receiver, Chapter 11 and Chapter 7 Trustee for the Debtor "Alpha Red, Inc." in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 08-37782)

- Testified in the role of Chapter 11 Trustee for the Debtor "Bazille Spine Center, LLC." in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 08-37782)

- Testified in the role of Examiner with Expanded Powers, appointed by the Bankruptcy Court, for the Debtors "BNP Petroleum Corporation and BNP Oil & Gas Properties, Ltd." in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (Case No. 09-20206)

- Testified in the role of Chief Restructuring Officer of the Debtor "Amidee Capital Group, Inc. et al." in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (Case No. 10-20041)

- Testified in an expert witness role for the plaintiff, "Seven Seas Petroleum, Inc." in the United States District Court for the Southern District of Texas, Houston Division (Case No. 4:08-cv-03048)

- Testified in an expert witness role for the defendant in the Arbitration styled, "White Rock Advisors, LLC, Gregory W. Hext, and Southwest Group, Inc., vs. The Richardson Trident Company" Case No. 70 148 Y 00362 11

## Publications

- Co-Authored Chapter 7, "The Impact of Evolving Bankruptcy Law on Strategy and Practice", of the book Adapting to Changes in Bankruptcy Law.