## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of (LTS) THE COMMONWEALTH OF PUERTO RICO, et al.,**<br>Debtors[1] | **Case No. 17-BK-3283**<br><br>**PROMESA TITLE III** |

## URGENT MOTION REQUESTING ORDER FOR ALLOWANCE AND IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE PRIORITY CLAIM FILED BY JUDGMENT CLAIMANTS OF THE DEPARTMENT OF TRANSPORTATION AND PUBLIC WORKS OF THE COMMONWEALTH OF PUERTO RICO

**To the Honorable United States District Court Judge Laura Taylor Swain**:

NOW COME, the group creditors in the litigation captioned: *Juan Perez Colon et al. v. Puerto Rico Department of Transportation & Public Works*, Case No. KAC1990-0487 (the "Perez Colon Master Claim no. 30851 ") and the group creditors in the litigation captioned: *Jeanette Abrams Diaz et al. v. a Department of Transportation & Public Works*, Case No. KAC-2005-5021 (the "Abrams Diaz Master Claim No.50221") by and through

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the undersigned attorney, to respectfully state, allege and pray

## I. PRELIMINARY STATEMENT

1. Movants are a group of active and former employees of the Department of Transportation and Public Works of the Commonwealth of Puerto Rico (the "DTOP"), that have back pay awards, pursuant to final judgments entered by the Commonwealth First Instance Court (CFI), as a result of the Debtor's violation of Federal and State law and pursuant to sections 507(a)(2) and 503(b)(1)(A) (i) and (ii) of the United States Bankruptcy Code (the "Bankruptcy Code"), made applicable by Title III of the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2161(a) ("PROMESA").

2. By this Motion, appearing Movants seek an Order allowing and mandating immediate payment in Cash, and as an administrative expense priority: (a) the shortfall of claimants regular rate of pay accrued pre and post-Petition Date, and consistent with prepetition practices and upon further order of the Court; and (b) continue the payment policy for payment of the correct the respective claimants monthly regular rate, for work performed for those claimants that have continued working post-petition on the ordinary course of business and consistent with judgements entered and (c). the payment of the attorney's fees awarded, pursuant to the final judgment entered in the case of Juan Perez Colon.

3. In support of this Request, the Group claimants states as follows:

2

## II. **JURISDICTION**

4.     The United States District Court has subject matter jurisdiction over this matter under PROMESA section 306(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 et seq.

5.     Venue is proper under section 307(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 et seq.

6.     The statutory basis for relief are sections 503 (b) (1) (A) (i) and (ii) and 507 (a) (2) of the Bankruptcy Code, as applicable to this Title III proceeding under section 301 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 et seq.

## III. **BACKGROUND**

7.     The pertinent facts here are straightforward and undisputed and are as follows.

8.     On May 3, 2017, the Oversight Board filed a petition in this Court commencing a case under Title III of PROMESA on behalf of the Commonwealth of Puerto Rico.

9.     The Department of Transportation and Public Works is an instrumentality of the Commonwealth of Puerto Rico included in the Title III petition filed by the Commonwealth.

10.     In 1990 Juan Perez Colon and other 324 employees of the Department of Transportation and Public Works (DTOP) initiated a Declaratory Judgment action in the Puerto Rico first Instance Court, (CFI)under case no, K AC no. 1990-0487

11.    In the complaint, briefly summarized, among others,  was requested a declaration regarding the illegality of Memorandum General 5 -86 issued by the Central Office of Personnel,  (OCAP), because it made the pay scale inoperable, to escape enforcing the federal minimum wage law increases  and by so acting, made the pay scales inoperable, in violation of Claimants terms and conditions of the employment contract and the Puerto Rico Uniform Retribution law, and corresponding regulations.

12.    On 2003, and after more than a decade of litigation, the CFI finally issued a Judgment ("CFI Judgment") in favor of all plaintiffs included in the case of *Juan Perez Colon*, et als.[2]

13.    The Court of First Instance's decision begins with a lengthy and detailed recitation of stipulated facts. Among the findings, it was determined, that the method of wage adjustment used by DTOP to implement the federal minimum wage resulted in the payment of employees assigned up to the pay scale 19, the same wage received by janitors and workers, as the pay scale was left inoperable. [See findings of facts including pretrial stipulations numbers 11-14 transcribed in the judgment]. Also because under the Court's findings, these adjustments were performed, without taking into consideration that the employees jobs functions, responsibilities and job requirements were more complex, and without taking into account the years of services, or prior salaries increases. In this way, management, administrative, supervisors and specialized personnel and office clerks and workers, received the same salary. [Findings of facts no. 9, 10, 14]

---

[2] A copy of the judgment was.included with the Proof of Claim no. 30851, and  is made a part hereof Since the CFI Judgment is in Spanish, on this same date, Movants have filed a Motion for Leave to file the CFI Judgment in Spanish and  other pertinent documents and Requesting a Thirty Day Extension to file the Certified Translation.

4

14. Pursuant to said judgment, the CFI declared Null the General Memorando 5-86 adopted by the co-defendant, Commonwealth Central Personnel Office (OCAP) to implement the federal minimum wage, since the method of wage adjustments, violated the dispositions of the Uniform Retribution Law of 1979 and its Regulations. Also, it was determined that claimants had to be compensated for all work performed, in accordance to up to date pay scales, in compliance with the federal minimum wage statutory hourly wage rate and the Court awarded plaintiff employees back pay, and attorney's fees, pursuant to section 3115 of the Puerto Rico, Code of Civil Procedure (in Spanish *Código de Enjuiciamiento Civil).* In addition, the judgment ordered the DTOP, to make the pertinent wage corrections, using pay scales developed by OCAP, in order to comply with the diverse increases of the federal minimum wage. Lastly, a permanent injunction was issued to protect employees from further violations.

15. In 2005, *Jeanette Abrams Diaz and other 1,084 plaintiffs* sued the DTOP at the CFI under case number K AC 2005-5021, alleging the same operational facts and cause of action, since claimants were similarly situated as the employees of the *Juan Perez Colon* case, and as such, they were subjected to the same illegal wage practices.

16. In mentioned litigation, and because the DTOP adopted in February, 2005 new pay scales to correct the Perez Colon Plaintiff's regular rate of pay, the claimants in the case of *Jeanette Abrams Diaz,* requested the issuance of an order, pursuant to the Supreme court decision in *Santiago Declet v Family Department, 153 DPR 208 (2001),* directing the DTOP to correct group plaintiff's regular rate of pay, since claimants were

similarly situated, as they were subjected to the same illegal wage practices, as the employees that prevailed in the case of Juan Perez Colon et als.

17.    Six years later, on 2011 the CFI in the case of Jeanette Abrams Diaz issued consented Judgements. Under the agreement, the DTOP have to correct the plaintiff's regular rate of pay, and pay the corresponding accrued wage shortfall, under the same terms established in the case of *Juan Perez Colon*.[3]

18.    On May 3, 2017 (the Petition Date") 321 employees accumulated in the identified litigation were still working full-time with the DTOP. Therefore, items of unpaid Compensation were due and owing on the Petition Date because, claimants Employees have not yet been corrected their regular base pay of their salaries and wages for services performed prior to the Petition Date, because the Debtor has obviated his obligation.

19.    For the purpose of this Motion, and because the extraordinary number of claims and help to identify the individual claimants work history, and the respective back pay accrued, we have divided the claims in pre-Title III administrative expense priority claims and post-Title III administrative expense priority claims, as follows

A.    CASE JUAN PEREZ COLON

| | |
|---|---|
| Regular wages shortfall until petition date (Including interest) | $ 2,435,987.21[4] |
| Post – petition accrued regular wage shortfall | $ 82,915.00[5] |
| Attorney's fees | $ 608,996.80[6] |
| Total: | $ 3, 127,899.00 |

---

[3]  A copy of the judgment was.included with the Proof of Claim no. 50221, and  is made a part hereof Since the CFI Judgment is in Spanish, on this same date, Movants have filed a Motion for Leave to file the CFI Judgment in Spanish and  other pertinent documents and Requesting a Thirty Day Extension to file the Certified Translation.

[4]  See Proof of Claim 30851

[5]  See Exhibit IV

[6]  See Proof of Claim No. 29725

B. Case JEANETTE ABRAMS DIAZ

| Regular wage shortfall accrued until petition (Including Interest) | $43,400,081.58[7] |
| Post – petition accrued regular wage shortfall | $ 1,596,335.00[8] |
| Total: | $44,996,416.58 |

21. However, it must be clarified, regarding the amounts indicated in EXHIBITS 4 and 5 (post-petition amounts) are preliminary, because to this date, the DTOP, hence, the Commonwealth, has failed to practice the pertinent adjustments to the claimants regular monthly salaries, and thus, the unpaid portion of the claimant's regular salaries, for work performed continue to accrue on a monthly basis. Therefore, the unpaid monthly wage shortfall, after July 31, 2021 will continue to accumulate, during the course of the identified claimant's employment, as applicable.

22. **Pursuant to the *Fifteenth Amended Notice, Case Management and Administrative Procedures* (ECF No. 17127-1) Claimants hereby certifies** that prior to filing the instant Motion, the subscribing attorney made a bona fide effort to resolve the matter without a hearing; and made reasonable, good-faith communications and conferred with Debtor attorneys telephonically and thru emails, without being able to reach an agreement with Debtor.

## IV. RELIEF REQUESTED

23. By this Application claimants respectfully request the Court enter an order allowing the immediate payment of the total pre and post-petition unpaid portion of regular

---

[7] See proof of claim No. 50221 were is included a Schedule identifying the names of the 1,084 claimants and the corresponding estimated back pay owed until the Petition Date to each individual, and is made a part hereof.

[8] See Exhibit V including a Schedule with the names of 307 claimants that have continued working and "rendered" services for the DTOP after the petition date and including the estimated amounts of the back pay owed to each individual, from the petition date until June 30, 2021 and is made a part hereof.

wages for services rendered by the Juan Perez Colon and Jeannette Abrams group claimants, to the Debtor, including the payment of the attorney's fees awarded in favor of the plaintiffs in the case of Juan Perez Colon, since their claims are within the specific category of administrative expenses allowable under § 503(b)(1)(A),(i) and (ii), which gives them priority in a bankruptcy distribution and immediate payment, under the provisions of § 507(a)(2) of the Bankruptcy Code.

## V. BASIS FOR RELIEF REQUESTED

## The Applicable Law for the Allowance of Administrative Expenses

1.      The DTOP, through the Title III Commonwealth Debtor, must comply with the terms and mandates of the CFI Judgements above identified as administrative expense priority claims under Section 503(b) of the Bankruptcy Code, which governs the allowance of administrative expenses.

**2.**      The present request is supported under section 301(a) of the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA) and which incorporates section 503 of the Bankruptcy Code in its entirety into Title III proceedings. See In re Fin. Oversight & Mgmt. Bd. for P.R. 621 B.R. 289 (D.P.R. 2020).

3.      As pertinent to the present Motion, section 507 (a) of the Bankruptcy Code grands priority to administrative expense claims that are allowed under section 503 (b) of the Bankruptcy Code. See 11 U,S.C. § 507 (a) (2). Section 503(b) (1) (A) provides that

" …After notice and a hearing, the Court can allow administrative expenses for (1)(A) "the actual, necessary costs and expenses of preserving the estate including—

(i) Wages, salaries, and commissions for services rendered after the commencement of the case; and

8

(ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title.

**A.** **Regarding the claimants identified in Exhibits IV and V** and that have continued providing "services to the DTOP as regular employees, after the commencement of the case, Claimants submits that. ..." the back pay accruing after the petition date (Post-Petition), represents a priority administrative expense under the first clause of 11 U.S.C. § 503(b) (1) (A) (i), and Section 507(a) of the Bankruptcy Code, and therefore, they are entitle to administrative expense priority status.

4. Because the courts that have considered active employees claims for wages owed for services rendered, have uniformly determined that the post-petition claims qualify as administrative expense, the logic of this cases should be extended to the claims at bar and therefore, grant the pertinent claims the administrative status. *See e.g., Pennsylvania Department of Environmental Resources v. Tri-State Clinical Laboratories, Inc.,* 178 F.3d 685, 689-690 (3d Cir.1999); *In re Roth American, Inc.,* 975 F.2d 949, 958 (3d Cir.1992). *Cumberland Farms v. Fla. Dep't of Envtl. Prot.,* 116 F.3d 16, 22 (1st Cir. 1997) at 21, Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.), 755 F.2d 200, 202 (1st Cir. 1985), In re Mammoth Mart, Inc., 536 F.2d 950, 952 (1st Cir. 1976).

9

**B. Under applicable case law and pursuant to the second clause of 11 U.S.C. § 503(b)(1)(A)(ii), and § 507(a)(2) of the Bankruptcy Code, claimants are also Entitled to an Administrative Claim for the Pre- Petition back pay accrued, awarded to them by judgment as Administrative Expense Priority.**

5. Concerning the wages owed to claimants, for the services rendered prior the filling of the Title III petition, is important to bring to the Court consideration, that subsection (ii) was added in 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). This new subsection **(ii) only applies to wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay, resulting from an employer's violation of Federal or State law.**

6. Therefore, for a better understanding of how the litigation arising under section 503 (b) have been considered, must be emphasized that, before passing the 2005 "BAPCPA" Amendment, the prevailing view under employment laws, was that claims for pre-termination wages and benefits, like severance pay, were only entitled to priority as administrative expenses, only if the wages and benefits were earned post-petition.

7. However, the prevailing view Post-BAPCPA is to the effect that claims for pre- petition wages and benefits are entitled to priority as administrative expenses, since subsection (ii) provides an additional category of administrative claims, separated from subsection (i). See Matthews *v. Truland Group., Inc.* (In re Truland Group., Inc.), 520 B.R. 197 (2014) see also, *In re World Mktg. Chi., LLC*, 564 B.R. 587, 594-97, 603 (Bankr. N.D. Ill. 2017) (same); and *In re Philadelphia Newspapers, LLC*, 433 B.R. 164, 170-75 (Bankr.E.D.Pa.2010)

8. Consequently, a majority of courts have convincingly determined that, the focus on the timing of vesting, is inconsistent with the plain language of subsection (ii) of

Section 503(b) (1) (A)—that the employees are entitled to an administrative expense "without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered See Matthews *v. Truland Group., Inc.* (In re Truland Group., Inc.), 520 B.R. 197 (2014) see also, *In re World Mktg. Chi., LLC*, 564 B.R. 587, 594-97, 603 (Bankr. N.D. Ill. 2017) (same); and *In re Philadelphia Newspapers, LLC,* 433 B.R. 164, 170-75 (Bankr.E.D.Pa.2010)

9.    Consequently, Claimants submit that they are entitled to administrative priority payment for the full amounts of wages owed for services rendered, since their claim satisfy the four elements required by subsection (A) (ii), that allows an administrative expense priority for pre-petition wages and benefits, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees… [9]

10.    Specifically, because Movants claims are for wages, and the back pay was awarded pursuant to a judicial procedure, based on an unlawful conduct that arises "as a result of a violation of Federal or State law by the debtor, and because subsection (ii), does not require employee performed post-petition services.

11.    As to the forth element of subsection (ii), Claimants submits that they comply with all the requirements of subsection (A)(ii). Particularly, because from the analysis of

---

[9]    The requirements are as fallows: (1) the wages, salaries or commissions, were awarded pursuant to a judicial proceeding or a proceeding of the National Labor;(2) they were awarded as back pay attributable to a period of time occurring after commencement of the debtor's bankruptcy case, without regard to the time of the occurrence of unlawful conduct on which such award is based, or the date when the wages were earned and whether there was any concrete benefit to the estate or whether the claimant performed any work at all;(3) the back pay was awarded as a result of a violation of Federal or State law by the debtor; and(4) the court determines that payment of the wages and benefits will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the debtor's bankruptcy case.

Debtor's financial records, as included in the Seventh Amended Disclosure Statement
(Docket 17628), and the evidence provided in the report of the Puerto Rico Fiscal
Agency and Financial Advisory Authority (FAFAA), dated September 3, 2021, as to the
Commonwealth deposits and Cash Flow report, clearly  establish that the Debtor has
sufficient cash funds available, for the immediate payment of the claimants full wage
obligation, now, and therefore, is unlikely to substantially increase the probability of layoff
or termination of current employees.[10]

12.    To said effect, claimants request this Honorable Court to take judicial notice
of the content of the docket of the present case.[11] Specifically, the GUC Reserve created
under Article LXII Provisions for Treatment of GW General Unsecure Claims (CLASS 58)
were a fund of $200,000,000.00 to satisfy General Unsecured Claims.[12]

13.    Also, and although at this date the Commonwealth have not filed certified
financials for fiscal 2019 and 2020, is requested this Court to take judicial notice of the
most recent TSA cash flow statement (as of 9-3-2021) and were establish that the
Commonwealth has currently  a cash account balance of $11.4 billion of unrestricted cash
that under Puerto Rico's Constitution can and should, at least a substantial part, be used
for debt adjustment  purpose.[13] These amount is just part of the over $25.335 billion in
cash Commonwealth currently holds.[14] Therefore, the Commonwealth literally having
more than enough cash in the bank to pay the priority claims now of appearing creditors.

---

[10]  See Docket no. 17628 ..

[11]  *See Levine v. Egidi,* Case No. 93C188, 1993 WL 69146, at *2 (N.D. III. Mar. 8, 1993) (authorizing a
bankruptcy court to take judicial notice of its own docket); *In re Brent,* 458 B.R. 444, 455 n.5 (Bankr. N.D.
III. 2011) (Goldgar, J.) (recognizing it).

[12]  An  excerpts is attached as Exhibit VI (see page 477 to 480 Disclosure Statement Docket 17628)

[13]  See Exhibit VII, at page 5

[14]  See Exhibit VII, at page 4.

14. In view of the above facts, claimants submits that they qualify for the corresponding payment of the full wages owed, as an administrative expense, since when Congress added the subsection (ii), clearly gave careful consideration to the extent to which claims based upon an employee's relationship with the debtor should be given priority vis-a-vis the claims of other creditors. *See In re Truland; In re Philadelphia Newspapers, LLC,* 433 B.R. 164, 170-75 (Bankr.E.D.Pa.2010); *In re Powermate Holding Corp.,* 394 B.R. 765, 771-74 (Bankr.D.Del.2008). Also because, the payment of the Employee Wages and Benefits in the ordinary course of business should neither prejudice general unsecured creditors nor materially affect the Debtor's estate, because section 507(a)(4) and section 507(a)(5) priority claims are already entitled to payment in full under a reorganization plan. See 11 U.S.C. § 1129(a) (9) (B).

## C. Allowance For Payment of Attorney's Fees

15. As part of the requested relief, in the present Motion Claimants also seeks the allowance and priority treatment of the attorney's fees award in the case of *Juan Perez Colon,* since this claim also qualify as an administrative expense, under *Reading Company v. Brown,* fundamental fairness doctrine (391 U.S. 471 (1968)), Also, based on the *Barnett v. Jamesway Corp. (In re Jamesway Corp.),* 242 B.R. 130 (Bankr. S.D.N.Y.1999), since in mentioned case, was determined that the basis for the attorney's fees priority determination, was the prepetition conduct of the debtor. In addition, because the Jamesway court ruled that the associated attorneys' fees should receive administrative status, since they are awarded pursuant to a fee-shifting statute. *Id.* at 134.

16. The fees at issue here, which amount by judgment to 25% of each claimants' compensation, were granted pursuant to section 3115 of the Puerto Rico Code of Civil

Procedure ("Código de Enjuiciamiento Civil"), and fee shifting statute, and may be treated as administrative expenses, since they are directly attributable to litigating the Debtors' intentional violation of state and federal minimum wage laws.

17. Consequently, is important to bring to the consideration of this Honorable Court that, following Reading, courts have applied Reading more broadly, as a matter of fundamental fairness. For example, in cases of damages, as the result of the operation of a debtor's business during bankruptcy, the resulting claim will often allow attorney's fees, as an administrative expense as a matter of fundamental fairness. See, In *In re Charlesbank Laundry Inc.,* 755 F.2d 200, 203 (1st Cir. 1985), the debtor laundromat filed for chapter 11 bankruptcy protection shortly after a state court entered an order enjoining it from committing a nuisance. The bankruptcy court granted stay relief, and the state court ordered that a civil compensatory fine be entered against the debtor for violating the injunction. The First Circuit ruled that the fine should be allowed as an administrative expense as a matter of fairness. See also, *In re Cumberland Farms v. Fla. Dep't of Envtl. Prot.*, 116 F.3d 16, 22 (1st Cir. 1997) at 21, where the First Circuit Court having first examine *Reading Co. v. Brown,* and based the opinion of Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.), 755 F.2d 200, 202 (1st Cir. 1985), answered the question as to a civil penalty imposed for a violation of a state environmental law, including attorney's fees, and squarely held that "a penalty can be given priority status." In said case, the Court determined (quoting Reading Co., 391 U.S. at 483), that "**it would be fundamentally unfair to allow Cumberland Farms to flout Florida's environmental protection laws and escape paying a penalty for such behavior"** (emphasis added). *In In re Healthco Intern. Inc.*, 272 B.R. 510, 513 (1st Cir. BAP 2002), a claimant

14

incurred costs when it successfully defended an action to set aside a pre-petition leveraged buy-out as a fraudulent conveyance. The case was filed post-petition by the chapter 7 trustee. The court held that despite the fact that the leveraged buyout occurred pre-petition and that fundamental fairness did not apply, the claimant's costs should nevertheless be allowed an administrative expense. In doing so, it held that the express provisions of §503(b) and §507(a) (1) of the Code and 28 U.S.C. §1920[7] required allowance. In *In re American Preferred Prescription Inc.,* 218 B.R. 680, 688-89 (Bankr. E.D.N.Y. 1998), a debtor filed frivolous litigation against the trustee's accountants post-petition to prevent them from being paid for work performed. It was held that the accountants' attorneys' fees were entitled to administrative priority as a matter of fundamental fairness since the claimant suffered injury at the hands of the debtor.

18.    Consequently , since in the present case , the attorney's fees are based on debtors' violation of state and federal minimum wage laws, fits the historic remedy for unlawful labor practices and thus qualify for priority treatment under section 503 (b) (1) (A) (ii).

19.    Additionally, must be consider that Art. II, section 16, of the Puerto Rican Constitution, provides protection against the payment of lower salary rates as establish by law.[15] As here is immediately clear that claimants were not duly compensated, since were paid a substantial inferior minimum salary, by itself, said violation establish

---

[15]    Art. II, sec. 16 of the Commonwealth of Puerto Rico Constitution provides as follows:

Section 16. The right of every employee to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, to protection against risks to his health or person in his work or employment, and to an ordinary-workday, which shall not exceed eight hours. An employee may work in excess of this daily limit only if he is paid extra compensation as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed.

an independent reason and persuasive argument for the allowance of priority payment of the awarded attorney's fees, under the exception recognized by the Supreme Court in *Reading Co. v. Brown, 391 U.S.* 471, 88 S. Ct. 1759, 20 L. Ed. 2d 751 (1968).

20. In this context, the Court must consider that the claimants here were subjected to a loss of a part of their regular salaries, because of Debtors intentional violation of state and federal minimum wage laws. As a matter of fundamental fairness, based upon *Reading*, they are entitled to be made whole and should be allowed an administrative claim to implement that result." See In Re: Healthco International, Inc.,3310 F 3d 9 (2st Cir 2002) citing In.re G.I.C. Gov't Secs.,121 B.R. at 649.

21. Also, because being the attorney's fees a "compensatory penalty "awarded to the Perez Colon Claimants, as part of the violation by the Commonwealth government of its own regulations and wage statutes, qualify to be treated as administrative expenses under subsection (A)(ii).

22. In the alternative, Claimants request this Honorable Court to declare the Attorneys fee claim as not dischargeable, on the basis that the debt arise out of a labor law litigation statutory "fee shifting" provision, and Debtors violations of state and federal wages laws. See Schwertner Backhoe Serv., Inc. v. Kirk (In re Kirk), 525 B.R. 325, 330 (Bankr. W.D. Tex. 2015) and Cohen v. de la Cruz, 523 U.S. 213, 223 (1998).

23. Also because here is highly persuasive that the Supreme Court in Cohen since held that no dischargeable "debt" encompasses not only the debt created by a misrepresentation, but also punitive damages and an award of attorney's fees. 523 U.S. at 223. Specifically, because in Cohen the Supreme Court reasoned, that the language "[d]ebt for" as written in § 523 includes not only the nondischargeable judgment amount ,

16

but also the "debt arising from" and "debt on account of . . ." the misconduct giving rise
to the judgment. Id. at 220. In other words, the word "debt" includes any form of loss or
damage that can be causally linked to the conduct that gives rise to the "debt" that is
exempted from discharge. Light v. Whittington (In re Whittington), Adv. No. 13-01121,
2014 WL 4163589, at *14–15 (Bankr. W.D. Tex. Aug. 20, 2014. ). See also, In re Muhasen
I. DEB a/k/a Case No. 11-30951 -5 (Chapter 7) (Northern District NY), May 11, 2012 (
concerning attorney's fees in a civil contempt action and were the court determined that
Plaintiff is entitled to nondischargeability of its claim under Bankruptcy Code § 523(a)(6)
as a matter of law) and In Trentadue v. Gay, No. 15-3142, slip op. (7th Cir. September 14,
2016), a case with an interesting interplay between family law and bankruptcy law, were
the Seventh Circuit held that an award of attorney's fees resulting from a debtor's over trial,
was a non-dischargeable, domestic support obligation entitled to priority in the debtor's
bankruptcy proceedings.

24.    In this regards, Claimants submits, that since the attorney's fees can be
causally linked to the conduct that gives rise to the "debt", are exempted from discharge.
Courts have the discretion as to whether to provide for immediate payment of an allowed
administrative claim. See In re Jeans.com, 491 B.R. 16, 23 (Bankr. D.P.R. 2013) (citation
omitted); In re Shihai, 392 B.R. 62, 68 (Bankr. S.D.N.Y. 2008); In re Baptist Medical Ctr.
of New York, Inc., 52 B.R. 417, 421 (E.D.N.Y. 1985), aff'd, 781 F.2d 973 (2d Cir. 1986);
In re HQ Global Holdings, Inc., 282 B.R. 169, 173 (Bankr. D. Del. 2002) .

## VI. CONCLUSION

25.    For the reasons stated, factually and legally, the appearing creditors have
demonstrated that they are entitled to an Order, in the terms stated in the enclosed

proposed Order, allowing the payment of the full unpaid portion of their salaries, for the
pre and post-petition services they render to the Title III debtor as an administrative
expense priority claim and for the amounts that are currently accruing, mandating the full
payment for these services under the provisions of section 503(b)(l)(A)(i) and (ii) of the
Bankruptcy Code, pursuant to the Judgments issued by the CFI, and including for the
corresponding attorney's fees, as determined by the CFI Perez Colon judgment, as an
administrative expense priority.

## VII.    RESERVATION OF RIGHTS

26.    Notwithstanding the above, Movants expressly reserve all (and do not
hereby waive any) of its (a) rights, claims, counterclaims, defenses, interests, actions and
remedies related to (i) assumption or rejection of any to which it is a counterpart, (ii) any
claim or proof of claim that has been filed or may be filed in the future, (iii) any
administrative expense claim as may be asserted hereinafter, including without limitation
the (A) right to a judicial determination of the amount(s) due and owing with regard to any
claim against the Debtor that may arise in these cases after the day of this request, (B)
the right to resolution of all issues implicated by Movants claims, (C) the right to amend,
update or supplement this Request at any time and in any respect , in response to, or as
a result of, any submission by any party-in-interest and (D) the right to adopt any other
pleadings filed by any other party related to Movant's claims or this Motion (collectively,
the "Reservation of Rights").

**WHEREFORE**, the group wage creditors respectfully pray this Honorable the
Court to enter an order substantially in the form attached hereto as EXHIBIT I, granting
the relief requested and awarding the allowance and payment of the Juan Perez Colon

and Jeannette Abrams Diaz claims, in the total amount (Collectively) of $48, 124,313.58, and ordering Debtor to pay such administrative expense within sixty (60) business days after entry of the Administrative Expense Order, and that considering that the wage shortfall amounts will continue to accrue during the entire period of claimants' employment, as identified in Exhibits IV and V. Therefore, it is hereby prayed that the Court orders the DTOP continue issuing payment of corresponding shortfall amounts on a monthly basis, as applicable to the individual claimants that continue working for the DTOP. This, without prejudice to Movant's right to request payment from the Debtor upon further application to this Court, approving the Reservation of Rights, and granting such additional relief as this Court deems just and necessary.

## VIII. NOTICE OF TIME TO RESPOND

Pursuant to the terms set forth in the Court's Fourteenth Amended Notice, Case Management and Administrative Procedures Order [ECF 15894-1] the following terms shall apply with regards to the present Motion:

a. The Government Parties will file any objection to the Motion (on an individual or joint basis), concerning the request for priority payment at issue, no later than October 7, 2021, at 4:00 pm.

b. The Claimants will file their Response in support of the Motion, concerning the Standing Issue, no later than October 18, 2021;

c. The Government Parties will file a reply (on an individual or joint basis) to the Claimant's Response by no later than- October 25, 2021;

d. Further take notice that, after the Objection deadline has passed, and no Objection had been filed or served in accordance with the set procedures set forth herein,

counsel to the entity that has filed the request for relief may file a CNO indicating that no

Objection has been filed or served on the party who has filed the request for relief and

submit an order granting the relief requested and in the alternative,

e. The Court will hear argument on the Motion, solely concerning the Standing

Issue, at a date and location to be determined by the Court.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, on September 23,

2021.

**IT IS HEREBY CERTIFIED**, that on this same date we have electronically filed the

foregoing motion with the Clerk of the Court using the CM/ECF System, which will send

notification of such filing to all counsels of record.

By      /s/ Ivonne González Morales
        Ivonne González - Morales
        RUA 3725 USDC-PR 202701
        P.O. BOX 9021828
        San Juan, P.R. 00902-1828
        Telephone: 787-410-0119
        Email- ivonnegm@prw.net

*Attorney for the Group Creditors*

and Jeannette Abrams Diaz claims, in the total amount (Collectively) of $48, 124,313.58, and ordering Debtor to pay such administrative expense within sixty (60) business days after entry of the Administrative Expense Order, and that considering that the wage shortfall amounts will continue to accrue during the entire period of claimants' employment, as identified in Exhibits and 5. Therefore, it is hereby prayed that the Court orders the DTOP continue issuing payment of corresponding shortfall amounts on a monthly basis, as applicable to the individual claimants that continue working for the DTOP. This, without prejudice to Movant's right to request payment from the Debtor upon further application to this Court, approving the Reservation of Rights, and granting such additional relief as this Court deems just and necessary.

## VIII. NOTICE OF TIME TO RESPOND

Pursuant to the terms set forth in the Court's Fourteenth Amended Notice, Case Management and Administrative Procedures Order [ECF 15894-1] the following terms shall apply with regards to the present Motion:

a. The Government Parties will file any objection to the Motion (on an individual or joint basis), concerning the request for priority payment at issue, no later than October 12, 2021, at 4:00 pm.

b. The Claimants will file their Response in support of the Motion, concerning the Standing Issue, no later than October 20, 2021;

c. The Government Parties will file a reply (on an individual or joint basis) to the Claimant's Response by no later than- October 27, 2021;

d. Further take notice that, after the Objection deadline has passed, and no Objection had been filed or served in accordance with the set procedures set forth herein,

19

counsel to the entity that has filed the request for relief may file a CNO indicating that no

Objection has been filed or served on the party who has filed the request for relief and

submit an order granting the relief requested and in the alternative,

e. The Court will hear argument on the Motion, solely concerning the Standing

Issue, at a date and location to be determined by the Court.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, on September 24,

2021.

**IT IS HEREBY CERTIFIED**, that on this same date we have electronically filed the

foregoing motion with the Clerk of the Court using the CM/ECF System, which will send

notification of such filing to all counsels of record.


By      /s/ Ivonne González Morales
Ivonne González - Morales
RUA 3725 USDC-PR 202701
P.O. BOX 9021828
San Juan, P.R. 00902-1828
Telephone: 787-410-0119
Email- ivonnegm@prw.net

*Attorney for the Group Creditors*

17 BK-03283        **LIST OF EXHIBITS**

**Motion for allowance of administrative Expense**

| EXHIBIT | |
|---|---|
| I | Proposed Order |
| | |
| II | Juan Perez Colon et als , Claim no. 30851  & 29725 |
| | |
| III | Jeanette Abrams Diaz et als Claim no. 50221 |
| | |
| IV | Schedule identifying 14 claimants **of the case of Juan Perez Colon** that continued working for the DTOP after petition date, and including back pay owed, from the petition date until June 30, 2021 |
| | |
| V | Schedule identifying 307 claimants **of the case of Jeanette Abrams Diaz**, that have continued working at the DTOP after the petition date and including  back pay owed to each individual from petition date until June 30, 2021 |
| | |
| VI | Pertinent part of the Seventh Amended Disclosure Statement (Docket No. 17628) ( pages 478 – 480). |
| | |
| VII | FAFAA September 3, 2021, Commonwealth Cash Flow Report |
| | |
| | |

# EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>**THE FINANCIAL OVERSIGHT AND**<br>**MANAGEMENT BOARD FOR PUERTO**<br>**RICO, as representative of (LTS)**<br>**THE COMMONWEALTH OF PUERTO RICO,**<br>**et al.,**<br><br>        **Debtors**[1] | **Case No. 17-BK-3283**<br><br>**PROMESA**<br>**TITLE III** |

## [PROPOSED] ORDER GRANTING MOTION FOR ALLOWANCE AND INMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE PURSUANT TO SECTION 503(b)(1)(A)(i) AND (ii) OF THE BANKRUPTCY CODE FILED BY GROUP WAGE CREDITORS IN THE LITIGATION CAPTION JUAN PEREZ COLON V DTOP, CASE NO. K AC 1990-0487 AND JEANETTE ABRAMS DIAZ V DTOP, CASE NO. K AC 2005-5021,

Upon consideration of Group Wage Creditors Motion for Allowance and Payment

of Administrative Expense Pursuant to Section 503(b) (1) ( A) (i) and (ii ) of the

Bankruptcy Code (the "Motion"); and the Court having jurisdiction to consider the Motion

and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration

of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.B.

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

§ 157(b); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been given under the particular circumstances; and after due deliberation and sufficient cause appearing therefore, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as provided herein.

2. Movants are hereby allowed an administrative expense claim pursuant to 11 U.S.C. § 503(b) (1) (A) (i) and (ii) in the amount (collectively) of \$. 48,124,313.58 (the "Administrative Expense Claim").

3 The Debtor DTOP in these Title III case shall pay the Administrative Expense Claim within sixty (60) business days after the entry of this Order.

4. The Reservation of Rights (as defined in the Motion) is approved.

5. This Order is without prejudice to the right of Movants to assert a claim for any further administrative expenses for amounts owed by the Debtors and arising after the Petition Date.

6. This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.


Dated: _____ , 2021

                          HONORABLE LAURA TAILOR SWAIN
                          UNITED STATES BANKRUPTCY JUDGE

EXHIBIT II