## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | PROMESA - TITLE III |
| as representative of | Case No. 17-3283-LTS (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO | |
| Debtor [1] | |

## URGENT MOTION FOR ALLOWANCE AND INMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE PURSUANT TO SECTION 503(b)(1)(A) (i) AND (ii) OF THE BANKRUPTCY CODE FILED BY GROUP WAGE CREDITORS IN THE LITIGATION CAPTION NILDA AGOSTO MALDONADO ET. ALS. CASE NO. K PE 2005-0608

**To the Honorable United States District Court Judge Laura Taylor Swain**:

**COME NOW** AGOSTO MALDONADO, NILDA A. (CLAIM No. 9421); ALAMO, ANA E. (CLAIM No. 9121); CALO BIRRIEL, MILAGROS (CLAIM No. 9253); CASTRO RODRIGUEZ, ELIZABETH (CLAIM No. 9657); CLAUDIO ROSADO, EDUARDO (CLAIM No. 10163); CUEVAS GONZALEZ, ROBERT (CLAIM No. 10176); CHICO AVILES, LYDIA (CLAIM No.10061); FEBO COLON, LAURA E. (CLAIM No. 9626); FIGUEROA CRUZ, IRIS M. (CLAIM No. 10194); GONZALEZ DIAZ, RUTH Z. (CLAIM No. 10175); NIEVES VARGAS, MILTON (CLAIM No.9309);

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

NUÑEZ CORDOVA, JUANITA (CLAIM No. 9645); PIZARRO QUIÑONES, YOLANDA (CLAIM No. 82818); RIOS CALZADA, WANDA T. (CLAIM No. 17058); RIVERA AYALA, MARIA I. (CLAIM No. 9306); RODRIGUEZ DE JESUS, ESTHER (CLAIM No.#10178); ROMERO ROMERO, MAGDALENA (CLAIM No. 10022); SOTO MARQUEZ, ANELISA (CLAIM No. 9184); VAELLO BERMUDEZ, YADIRA (CLAIM No. 9451); VALDERRAMA RODRIGUEZ, CARMEN M. (CLAIM No. 3093), AND THAT ARE ACTIVE EMPLOYEES OF ADFAN, BY THEMSELF AND ON BEHALF AND IN REPRESENTATION OF ALL OTHERS SIMILARLY SITUATED CLAIMANTS INCLUDED AS PLAINTIFFS IN THE JUDGMENT ENTERED BY CFI IN THE CASE NILDA AGOSTO MALDONAO ET ALS V FAMILY DEPARTMENT ET ALS, CASE No. K PE 2005-0608[2], BY AND THOUGH THE UNDERSIGNED ATTORNEY, AND RESPECTFULLY STATE, ALLEGE AND PRAY:

## I.    PRELIMINARY STATEMENT

1.    The appearing Claimants are a group of 20 active employees that have continued working for the Family with Children Administration (ADFAN), and as will be explained in further detail in this Motion, have back pay awards in their favor, together with the employees identified in the judgment included as Exhibit II, entered by the Commonwealth First Instance Court (CFI) of San Juan, in the case of Nilda Agosto Maldonado et als v FD et als case No. K PE 2005- 0608, because of Debtor's violation of the Commonwealth wage law. Therefore, Movants sustain that their claims and the claims of the other employees or former employees, similarly situated herein represented, are entitled to administrative expense status, pursuant to § 503(b) (1) (A) Subsections (i)

---

[2]  See Exhibit 2, at pags 16 to 26, for the complete list of plaintiffs included in Nilda Agosto judgment and whom appearing claimants herein seek to represent under FRCP 23, since have similar questions of law and facts. Also see FRBP 2019 (Docket 13534).

and (ii) which gives them priority in a bankruptcy distribution and immediate payment pursuant to a confirmed plan provisions. 11 U.S.C. § 507(a) (2).

2.    In support of this Motion, the Movants represent as follows:

## II. JURISDICTION

3.    The United States District Court has subject matter jurisdiction over this matter under PROMESA section 306(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 et seq.

4.    Venue is proper under section 307(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 et seq.

5.    The Court has jurisdiction under sections 507 and 503 of Title 11 of the United States Code, applicable to this Title III proceeding under section 301 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 et seq.

## III. BACKGROUND

6.    The pertinent facts here are straightforward and undisputed and are as follows.

7.    On May 3, 2017, the Oversight Board filed a petition in this Court commencing a case under Title III of PROMESA on behalf of the Commonwealth of Puerto Rico.

8.    The Family Department and its Administrations (ADFAN, ADSEF, ACUDEN, ASUME and SECRETARIADO) and the Vocational Rehabilitation Administration (ARV), are instrumentalities of the Commonwealth of Puerto Rico included in the Title III petition filed by the Commonwealth.

3

9. In 2005 Nilda Agosto Maldonado, and other 729 employees of the Family Department (FD) and ARV, initiated a Declaratory Judgment action in the Puerto Rico first Instance Court, (CFI) under case no, K PE no. 2005-0608.

10. In the complaint, briefly summarized, among others, was requested a declaration regarding the illegality of Memorandum General 5 -86 issued by the Central Office of Personnel, (OCAP), to escape enforcing the federal minimum wage law increases and by so acting, made the pay scales inoperable, in violation of Claimants terms and conditions of the employment contract and the Puerto Rico Uniform Retribution law, and corresponding regulations.

11. On 2010, the CFI issued a Judgment ("CFI Judgment") in favor of all plaintiffs included in the case of Nilda Agosto Maldonado et als. **A copy of the judgment is attached hereto as Exhibit 2, and is made a part hereof.**[3]

12. The Court of First Instance decision begins with a lengthy and detail recitation of stipulated facts, and that are the same operational facts of the case of Carmen Socorro Cruz Hernandez et als v Family Department, case No. K AC 1991-0665.[4] Among the findings of facts was determined, that the method of wage adjustment used by FD to implement the federal minimum wage resulted in the payment of employees assigned up to the pay scale 19, the same wage received by janitors and workers, as the pay scale was left inoperable.[5]

---

[3] The judgment of reference is in Spanish. However, on this same date, the Movants have filed a Motion for Leave to file the CFI Judgment in Spanish and Requesting a Thirty Day Extension to file the Certified Translation.

[4] See Exhibit 2 determination at pag 2 judgment.

[5] See Findings of facts at. 5, 7, 8, 18, 25, 26, 41 and 42

13.    Also and under the Court's findings, these adjustments were performed, without taking into consideration that the employee's jobs functions, responsibilities and job requirements were more complex, and without taking into account the years of services, or prior salaries increases. In this way, management, administrative, supervisors and specialized personnel and office clerks, received the same salary as janitors and workers.[6]

14.    By virtue of said judgment, the CFI declared Null the General Memorando 5-86 adopted by the co-defendant, Commonwealth Central Personnel Office (OCAP) to implement the federal minimum wage, since the method of wage adjustments, violated the dispositions of the Uniform Retribution Law of 1979 and its Regulations. Also determined that claimants must be compensated for all work performed, in accordance to up to day pay scales in compliance with the federal minimum wage statutory hourly wage rate and awarded plaintiffs employees back pay. In addition, judgment ordered the DF, to make the pertinent wage corrections, using pay scales developed by OCAP, in the case of *Carmen Socorro Cruz Hernandez et als v Family Department, et. als.* case No. K AC 1991- 0665, in order to comply with the diverse increases of the federal minimum wage.[7]

15.    The CFI Judgment is final and unappelable, and the FD and ARV, through the Title III Commonwealth Debtor, must comply with the terms and mandates of the CFI Judgement. And although to this date, have made partial payments, have not

---

[6]  Id.

[7]  See  Exhibit 2  at pages 12 to 14

completed the pertinent payments of the wages owed and/or interest accrued, to the group included in the case of Nilda Agosto Maldonado.

16. Consequently, in the present case all claimants, collectively, pursue the allowance and payment of the full back pay owed by Debtor and /or legal interest accrued, pursuant of the judgement they have in their favor, as an administrative expense priority.

17. For the purpose of this Motion, we have divided the claims in pre-Title III claims and post-Title III administrative expense priority claims:

a) Exhibit 3, includes a Schedule with the names of the 20 appearing claimants, and that continue working for ADFAN after the Title III petition date and the individual estimate of the unpaid salary shortfall accrued post –petition and that qualify for payment, as administrative expense under subsection (A)(i) [8]

b). Exhibit 4, includes a Schedule with the names all the Claimants accumulated in the judgment of Nilda Agosto, (including the 20 appearing claimants), with the estimate of the accrued unpaid wages, calculated until the Title III petition date, ( the pre-petition amounts) and that qualify for administrative expense priority under subsection (A)(ii).

18. Collectively, the claims amounts in the case at bar, are as follows:

Regular unpaid base salary shortfall accrued until petition date
(Including interest)                                                    $ 34,095,466.57 [9]
Post – petition accrued unpaid  salary shortfall    $    148,498.00 [10]
                                                         Total:    $ 34,243,964.57

---

[8] Is important to bring into consideration of the Court that the FD (Secretariado, ADSEF, ACUDEN and ASUME) and ARV, prior the petition date, made the pertinent wage adjustment to the active employees . Therefore, a significant number of claimants with pre- petition claims,  are still  working for the Family Department or at the ARV.

[9] See Exhibit 4. (the pre-petition amounts).

[10] See Exhibit 3, (the post-petition amounts).

19.    However, must be clarified, regarding the amounts indicated in Exhibit 3
(the post-petition amounts) are preliminary, because to this date, ADFAN hence, the
Commonwealth, has failed to practice the pertinent adjustments to the 20 appearing
claimants regular monthly salaries, and thus, the unpaid portion of their base regular
salaries, continue to accrue on a monthly basis. Therefore, the unpaid monthly wage
shortfall, after July 31, 2021 will continue to accumulate, during the course of their
employment, as applicable.

20.    **Pursuant to the *Fifteenth Amended Notice, Case Management and
Administrative Procedures* (ECF No. 17127-1) Claimants hereby certifies** that prior
to filing the instant Motion, the subscribing attorney made a bona fide effort to resolve the
matter without a hearing; and made reasonable, good-faith communications and
conferred with Debtor attorneys telephonically and thru emails, without being able to
reach an agreement with Debtor.

## IV. RELIEF REQUESTED

21.    By this Application the claimants request, for themselves and claimants
identified in Exhibit 4, the issuance of an Order, allowing the payment in full, as
administrative expense, of the total unpaid portion of their respective regular wages for
services rendered to the Debtor, since their claims are within the specific category of
administrative expenses allowable under § 503(b)(1)(A),(i) and (ii). Specifically,
because they have a back pay award, pursuant to a judicial proceeding, as a result of
a violation of Federal or State law by the debtor.

In support of the present Motion for relieve, claimants states as follows

## V. GROUNDS FOR GRANTING RELIEF

1.    Section 503 of the Bankruptcy Code in the pertinent part provides for

administrative treatment for wages, salaries and commissions for services rendered, and

states as follows:

(a) An entity may.... File a request for payment of an administrative expense" and

(b) "After notice and a hearing, the Court can allow administrative expenses....including

(1)(A) The actual, necessary costs and expenses of preserving the estate including—

(i) Wages, salaries, and commissions for services rendered after the commencement of the case; and

(ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title.

..................
. ..................

2.    As a preliminary point to set the framework for the correct understanding of

the Bankruptcy Code priority designations, is important to consider that Section 507(a)

of the Bankruptcy Code, provide a nonexclusive list of nine categories of administrative

priority allowed under section 503(b).

3.    Said status is important, since unlike other bankruptcy claims, in actuality,

Section 507(a)(2) provides an order of priority and lists "administrative expenses allowed

under section 503(b) of the Bankruptcy Code as second in line and are paid before all

other unsecured creditors.

8

4.    Therefore, courts have determined that section 503(b) (1) (A) only requires

that claimants satisfy only one of the subsections to receive and qualify for priority status.

In re Fin. Oversight & Mgmt. Bd. for P.R. 621 B.R. 289 (D.P.R. 2020). See also, Matthews

v. Truland Group., Inc. (In re Truland Group., Inc.), 520 B.R. 197 (2014)

**A. Allowance For Payment as Administrative priority for services rendered after the Title III petition date, under subsection (A) (i).**

5.    Firstly, and  regarding  the  post-petition accrued wages, and which

concerns the application made by the  20  appearing claimants, as individually identified

in Exhibit 3, it is herein submitted  that the back pay accrued represents a priority

administrative expense under Section 507(a)(2) of the Bankruptcy Code. Therefore, and

interpreting the plain language of subsection (i) the courts that have considered the post-

petition claims for wages owed for services rendered to Debtors, have uniformly

determined that said claims qualify as administrative expenses and by applying the logic

of this cases, the appearing Creditors' petition should be granted. *E.g.  In Re: Craig

County Hospital Authority,* 572 B.R. 340 (2017) and In re Mammoth Mart, Inc., 536 F.2d

950, 952 (1st Cir. 1976).

6.    The forgoing rule for the priority payment of post-petition owed wages,  is

sound bankruptcy policy— and it is a fair result to provide these counterparties with

administrative priority for the benefit they provide to the estate. This result incentivizes

active employees to continue performing their duties—and, thus, providing a debtor's

operations with much needed support—by providing some security to counterparties that

they will be compensated for their efforts.

.

7. Therefore, under applicable and binding First Circuit case law, as identified above, claimants submits that their post-petition claim qualify as administrative expense, and the priority status, should be granted as a matter of law.

8. Moreover, because this Court need not extend its analysis further, since the result is clear—The claimants here, as regular ADFAN employees are entitled to an administrative claim for the shortfall of the unpaid portion of their monthly base regular salary, for services rendered post-petition. Even if the Court were to look further (which it need not and should do, given the parties' employment contract) and consider independently whether the group claimants ought to receive an administrative claim, the result should remain unchanged—with being granted an administrative claim for the post-petition services provided to the Debtor. This is because a ruling to the contrary would produce an illogical outcome and establish precedent antithetical to the goals of the Bankruptcy Code. Also, because this Court has recognized administrative claims in the Title III cases, in similar terms of the type of post petition services, though its Utilities Order, Bar Date Order, DIP Order, and LUMA Opinion, and the oversight Board have acknowledged the importance of paying allowable administrative claims promptly.

**B. Allowance for pre - petition back pay award as Administrative Expenses**

9. In regards the Application for payment in full, as administrative expense for the wages owed for the services performed by claimants, prior the filling of the Title III petition, is important to emphasize that subsection (ii) was added in 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),

10. Therefore, the priority treatment under employment law, occurring during corporate reorganizations, has varied in the federal courts. For example, before passage,

of the 2005 BAPCPA "the prevailing view, was that Claims for pre-termination wages

and benefits, like severance pay, were only entitled to priority as administrative expenses,

if the wages and benefits were earned post-petition. *See, e.g.,* In re Mammoth Mart, Inc.,

536 F.2d 950, 952 (1st Cir. 1976).

  11. However, the prevailing view Post the 2005 BAPCPA, is to the effect of

recognizing administrative status to wage claims, **regardless of the date when the**

**wages were earned and whether there was any concrete benefit to the estate or**

**whether the claimant performed any work at all**. See Matthews v. Truland Group., Inc.

(In re Truland Group., Inc.), 520 B.R. 197 (2014) in relation to WARN claims; see also, In

re World Mktg. Chi., LLC, 564 B.R. 587, 594-97, 603 (Bankr. N.D. Ill. 2017) (same); *In re*

*Philadelphia Newspapers, LLC,* 433 B.R. 164, 170-75 (Bankr.E.D.Pa.2010)

  12. Consequently, the focus on the timing of vesting, in the Truland Court's

view, is inconsistent with the plain language of subsection (ii) of Section 503(b) (1) (A)—

that the employees are entitled to an administrative expense "without regard to the time

of the occurrence of unlawful conduct on which such award is based or to whether any

services were rendered [.]" 11 U.S.C. § 503(b) (1) (A) (ii).

  13. In view of the above, Claimants here rely in subsection (ii), plain language.

United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, (1989); when the words of a

statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'

Rubin v. United States, 449 U.S. 424, (1981).

  14. Also, because they meet all the requirements for the application of

subsection 503 (b) (1) (A) (ii), since the back pay was awarded to them, pursuant to a

judicial procedure, based on an unlawful conduct that arises "as a result of a violation of Federal or State law by the debtor.

15. Furthermore, because claimants can establish, from the analysis of Debtor's own financial records, as included in the Seventh Amended Disclosure Statement, and from the evidence provided in the report of the Puerto Rico Fiscal Agency and Financial Advisory Authority (FAFAA), dated September 3, 2021, as to the Commonwealth deposits and Cash Flow report, that the Debtor has sufficient cash funds available, for the immediate payment of the claimants full wage obligation, now, and therefore, is unlikely to substantially increase the probability of layoff or termination of current FD or ARV employees.

16. To this effect, Claimant's request this Honorable Court to take judicial notice of the contents of the docket of the present case, and Disclosure Statement. [11] Particularly, the information included in the Disclosure Statement filed by the Debtor concerning the GUC Reserve created under Article LXII Provisions for Treatment of GW General Unsecure Claims (CLASS 58) were a fund of $200,000,000.00 has been established to satisfy General Unsecured Claims.[12]

17. Also, and although at this date the Commonwealth have not filed certified financials for fiscal 2019 and 2020, is requested this Court to take judicial notice of the most recent TSA cash flow statement (as of 9-3-2021) and were establish that the Commonwealth has currently a cash account balance of $11.4 billion of unrestricted cash

---

[11] The court can take judicial notice of matters in its own records. *Griffin v. United States,* 109 F.3d 1217, 1218 n. 1 (7th Cir.1997) *See also Levine v. Egidi,* Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket)

[12] An excerpts is attached as Exhibit 5 (see page 477 to 480 Disclosure Statement Docket 17628)

12

that, under Puerto Rico's Constitution can and should, at least a substantial part, be used for debt adjustment purposes.[13] These amount is just part of the over \$25.335 billion in cash Commonwealth currently holds.[14] Therefore, the Commonwealth literally having more than enough cash in the bank to pay the priority claims now of appearing creditors.

18.    In view of the above, all claimants qualify for the application of  an administrative expense priority,  since when Congress added the subsection (ii), clearly gave careful consideration to the extent to which claims based upon an employee's relationship with the debtor should be given priority vis-a-vis the claims of other unsecured creditors.

19.    Also, because the payment of the Employee Wages under the specific facts herein, should neither prejudice general unsecured creditors nor materially affect the Debtor's estate, because section 507(a) (2) and (4)  priority claims are already entitled to payment in full under a reorganization plan. See 11 U.S.C. § 1129 (a) (9) (B).

## C. Applying the Fundamental Fairness Exception in this Case

20.    Additionally, claimants submits that in the present case, this Bankruptcy Court must consider that PROMESA's Section 201(b) (1) (N) provides that the fiscal plan shall "respect the relative lawful priorities or lawful liens as may be applicable in the constitution, other laws, or agreements of a covered territory" 48 U.S.C § 2141.

21.    In view of the mentioned disposition and as an independent basis to support the payment of the pre-petition claims as an administrative expense, claimants submits that under Art. II, section 16, of the Puerto Rican Constitution, they have

---

[13] See Exhibit 6, at page 5
[14] See Exhibit 6, at page 4.

13

protection against the payment of lower rates as establish by law, for work performed.[15] Therefore, and being here immediately clear, that claimants were not duly compensated, since were paid a substantial inferior minimum salary, in violation of Art II, section 16 of the P.R. Constitution and applicable local law, by itself, establish a persuasive argument for the allowance of priority payment of back pay seek, under the exception recognized by the Supreme Court in *Reading Co. v. Brown, 391 U.S.* 471, 88 S. Ct. 1759, 20 L. Ed. 2d 751 (1968),

22. In this context is important this court consider that the claimant's were subjected to a loss of a part of their regular salaries, as a result of Debtors intentional violation of state and federal minimum wage laws, and as a matter of fundamental fairness, based upon *Reading*, they are entitled to be made whole and should be allowed an administrative claim to implement that result." See In Re: Healthco International, Inc., 3310 F 3d 9 (second Cir 2002) citing In.re G.I.C. Gov't Secs., 121 B.R. at 649.

23. Also, because is critical to understand that the Bankruptcy Code incorporated in section 503 nine basic priority provisions and authorizes priority payments under several essential policies underlying the priority for administrative expenses: to encourage activities that will benefit the estate; to advance reorganization efforts which would be hampered by the necessity of advance payments for supplies of the estate; to compensate those injured by the estate; and to prevent unjust enrichment

---

[15] Art. II, sec. 16 of the Commonwealth of Puerto Rico Constitution provides as follows:

Section 16. The right of every employee to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, to protection against risks to his health or person in his work or employment, and to an ordinary-workday, which shall not exceed eight hours. An employee may work in excess of this daily limit only if he is paid extra compensation as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed.

of the estate at the expense of its creditors." Nancy C. Dreher, Joan N. Feeny and Michael J. Stepan, Bankruptcy Law Manual, Volume 1, § 6.32 (5th ed. 2018-2). **One of these fundamental policies precisely, is to prevent unjust enrichment of the estate at the expense of its creditors."** p. 1124.

24.    More so, when the concept of fundamental fairness, (under which *Reading* is premised), does not require an affirmative post-petition act by the debtor to justify the allowance of an administrative expense claim. *In re MEI Diversified Inc.,* 106 F.3d 829, 832 (8th Cir. 1996). Therefore, courts have apply the *Reading* exception where they deem it appropriate and/or fundamentally fair.

25.    To the extent employees here were induced to continue working and provide necessary and essential services for the benefit of the government operation, claimants must be assured they will be paid first, the full back pay accrued for services rendered, and according to the order of priority determined in the Bankruptcy Code and before other unsecured claims. Otherwise, as determined in *In re Mammoth Mart,* 536 F.2d at 953   dilutes the value of the priority scheme Congress intended.

26.    Under mentioned circunstances, this Court should consider subsection (ii)'s place in the Bankruptcy Code's overall statutory scheme—and find that  a claim under § 503 (b) (1) (A) (ii)  is an  administrative expense  claim, and therefore,  the pre-petition claims hold by group claimants must be treated equally and rateably with all other administrative expense claims, and be paid in full and in cash, prior to the effective date of a confirm plan of adjustment,  since this is  an specifically confirmation requirement, (in a Chapter 9 or Title III that provides — unless the creditor agrees

otherwise — claims specified in 11 U.S.C. § 507(a) (2) must be paid in full on the effective date of any confirmed plan of adjustment of debts. See 11 U.S.C. § 943(b) (5); 48 U.S.C. § 2174(b) (4).

27. In view of the above, this Court in determining on whether priorities are paid, must evaluate the totality of circunstances, and address the issue of Debtor's conduct, including the circunstances under which contracted its debts and determine whether has dealt fairly with its employees, since here is critical the Supreme Court decision in Reading be applied, for failure of adequate protection, due to debtor's wrongdoings.

## VI. CONCLUSION

28. Factually and legally, the appearing creditors have demonstrated that they are entitled to an Order in the terms stated in the enclosed proposed Order, allowing the unpaid portion of their base salaries for the pre and post-petition services they provided to the Title III debtor as an administrative expense priority claim, under section 503(b) (l) (A) (i) and (ii) of the Bankruptcy Code, pursuant to the Judgment issued by the CFI, in the Case of Nilda Agosto Maldonado et. als.

## VII. RESERVATION OF RIGHTS

29. Notwithstanding the foregoing, Movants expressly reserves all (and does not hereby waive any) of its (a) rights, claims, counterclaims, defenses, interests, actions and remedies related to (i) assumption or rejection of any to which it is a counterpart, (ii) any claim or proof of claim that has been filed or may be filed in the future, (iii) any administrative expense claim as may be asserted hereinafter, including without limitation the (A) right to a judicial determination of the amount(s) due and owing with regard to any

16

claim, (B) the right to resolution of all issues implicated by Movants claims, (C) the right to amend, modify or supplement this Motion in response to, or as a result of, any submission by any party-in-interest and (D) the right to adopt any other pleadings filed by any other party related to Movant's claims or this Motion (collectively, the "Reservation of Rights").

        **WHEREFORE**, the group wage creditors in above identified litigation respectfully pray this Honorable the Court to enter an order awarding the allowance and payment of the Administrative Claim submitted, collectively, in the total amount of $34,243,964.57 (The "Administrative Expense Claim"), ordering Debtor (FD and Administrations and ARV), pursuant to section 503 (b) (1) (A) (i) (ii) and 507 (a) to pay such administrative expense within sixty (60) business days after entry of the Administrative Expense Order, and grand such other and further relief as the Court deems just and proper and granting such additional relief as this Court deems just and necessary. This, without prejudice to Movant's right to request payment from the Debtor upon further application to this Court, approving the Reservation of Rights.

## VIII. NOTICE OF TIME TO RESPOND

        Pursuant to the terms set forth in the Court's Fifteenth Amended Notice, Case Management and Administrative Procedures Order [ECF 17127] the following terms shall apply with regards to the present Motion:

    a. The Government Parties will file any objection to the Motion (on an individual or joint basis), concerning the request for priority payment at issue, no later than October 13, 2021;

b. The Claimants will file their Response in support of the Motion, concerning the Standing Issue, no later than October 21, 2021;

c. The Government Parties will file a reply (on an individual or joint basis) to the Claimant's Response by no later than October 28, 2021;

d. Further take notice that, after the Objection deadline has passed, and no Objection had been filed or served in accordance with the set procedures set forth herein, counsel to the entity that has filed the request for relief may file a CNO indicating that no Objection has been filed or served on the party who has filed the request for relief and submit an order granting the relief requested and in the alternative.

e. The Court will hear argument on the Motion, solely concerning the Standing Issue, at a date and location to be determined by the Court.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, on September 28, 2021.

**IT IS HEREBY CERTIFIED**, that on this same date we have electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsels of record.

By /s/ Ivonne González Morales
Ivonne González - Morales
RUA 3725 USDC-PR 202701
P.O. BOX 9021828
San Juan, P.R. 00902-1828
Telephone: 787-410-0119
Email- ivonnegm@prw.net

***Attorney for the Group Creditors***

**Table of Exhibits in support of Motion for allowance of Payment of pre and post petition accrued wages as Administrative Expenses in connection with the Judgment entered by the Court of First Instance of San Juan in Case of Nilda Agosto Maldonado et als v Family Department, Civil Case Num. K PE 2005- 0608 (the "Judgment")**

<u>**Exhibit ID**</u>

**EXHIBIT 1 -** PROPOSED ORDER

**EXHIBIT 2 -** 2010 judgment case No. K PE 2005-0608

**EXHIBIT 3 -** Schedule including the names of the **appearing** 20 judgment claimants that are still working for ADFAN, with the estimate of the post – petition Regular base salary shortfall owed to each claimant, for a total of $ 148,498.00

**EXHIBIT 4 -** Schedule including the names of all plaintiffs included in the Nilda Agosto Maldonado judgment, with the estimate of the total pre petition base salary shortfall owed to each claimant, for a total of $ 34,095,466.57

**EXHIBIT 5 - Seventh Amended Disclosure Statement, pags. 477- 480**

**EXHIBIT 6 - FAFAA Cash Flow repot September 3, 2021**

19

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

In re:
**THE FINANCIAL OVERSIGHT AND**
**MANAGEMENT BOARD FOR PUERTO RICO,**
**as representative of**
**(LTS)**
**THE COMMONWEALTH OF PUERTO RICO, et al.,**
        **Debtors**[16]

**PROMESA**
**TITLE III**
**Case No. 17-BK-3283**

---

**[PROPOSED] ORDER GRANTING MOTION FOR ALLOWANCE AND INMEDIATE**
**PAYMENT OF ADMINISTRATIVE EXPENSE PURSUANT TO SECTION 503(b)(1)(A)**
**(i) AND (ii) OF THE BANKRUPTCY CODE FILED BY GROUP WAGE CREDITORS**
**IN THE LITIGATION CAPTION NILDA AGOSTO MALDONADO et, als.**
**CASE No. K PE No. 2005-0608**

Upon consideration of the Creditors included in the judgment entered in the Nilda

Agosto Maldonado et als. case No. K PE 2005-0608 and the Motion for Allowance and

Payment of Administrative Expense Pursuant to Section 503(b) (1) ( A) (i) and (ii ) of the

Bankruptcy Code (the "Motion"); and the Court having jurisdiction over this matter

pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a); the Court determining that venue

of this proceeding in this District is proper under 28 U.S.C. § 1391(b) and 48 U.S.C. §

2167(a); notice of the Motion being adequate and proper under the circumstances; and

after due deliberation and having determined that there is good and sufficient cause for

the relief set forth in this Order, IT IS HEREBY ORDERED THAT:

---

[16] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780- LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1.  The Request is GRANTED, as provided herein.

2. Movants are hereby allowed an administrative expense claim pursuant to 11 U.S.C. §
503 (b) (1) (A) (i) (ii) in the amount (collectively) of $ 34,243,964.57 (The "Administrative
Expense Claim").

3 The Debtor FD and its administrations (ADFAN. ADSEF, ACUDEN, ASUME and
SECRETARIADO)  and ARV, in these Title III case shall pay the Administrative Expense
Claim within sixty (60) business days after the entry of this Order.

4. The Reservation of Rights (as defined in the Motion) is approved.

5. This Order is without prejudice to the right of Movants to assert a claim for any further
administrative expenses for amounts owed by the Debtors and arising after the Petition
Date.

6. This Court shall retain jurisdiction over all matters arising from or related to the
implementation or interpretation of this Order.


Dated: _____ , 2021

                              HONORABLE LAURA TAILOR SWAIN
                              UNITED STATES BANKRUPTCY JUDGE