## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

In re:

| | |
|---|---|
| **THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of (LTS)** | **PROMESA TITLE III Case No. 17-BK-3283** |

**THE COMMONWEALTH OF PUERTO RICO, et al.,**
                    **Debtors[1]**

---

## URGENT  SUPPLEMENTAL MOTION REQUESTING ORDER FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE PRIORITY CLAIM AND REQUEST FOR IMMEDIATE PAYMENT FILED BY  CORRECTION OFFICERS OF THE DEPARTMENT OF CORRECTIONS AND REHABILITATION OF THE COMMONWEALTH OF PUERTO RICO

**To the Honorable United States District Court Judge Laura Taylor Swain**:

NOW COMES the group creditors in the consolidated judgment dated April 22,

2016 in the litigation captioned Norberto Tomassini et als case no.  A MI2003-0143 and

Ivan Ayala et als. case no. A PE2005-0049, against the Department of Correction and

Rehabilitation of the Commonwealth of Puerto Rico (the "DCR"), by and through the

undersigned attorney, to respectfully state, allege and pray:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Movants are a group of active and former Correctional Officers (CO) of the
Department of Corrections and Rehabilitation of the Commonwealth of Puerto Rico (the
"DCR"), that have back pay awards, pursuant of a consolidated judgment entered by the
Commonwealth First Instance Court (CFI) of Aguadilla, as a result of a the Debtor's
violation of the Commonwealth wage law. They sustain that their claims are entitled to
administrative expense status, pursuant to § 503(b)(1)(A), which gives them priority in a
bankruptcy distribution and immediate payment pursuant to § 507(a)(2) of the Bankruptcy
Code.

In support of this Motion, the Movants represent as follows:

## I.    PRELIMINARY STATEMENT

1.    As will be explained in further detail in this Motion, the Movants are active
or former full-time career employees at the DCR. They have provided custodial and
security services to the DCR, an instrumentality of the Title III Commonwealth and prior
to the filling of the Title III petition have a back pay judgment in their favor entered by the
Superior Court of First Instance of the Commonwealth of Puerto Rico, Aguadilla Division
("CFI") against the DCR, dated April 22, 2016, in the consolidated judgments in the case
of Norberto Tomassini, case number A MI2003-0143,  and the case of Ivan Ayala
Marrero, case number A PE2005-0049.

**2.**    In said Judgment the court dictates that the regular monthly salary must be
corrected to compensate for the 40 hours workweek; instead of the one based on the
37.5-hour workweek, they are currently being paid. These services include pre and post-
petition services provided to the Title III debtor.

2

3.    The Judgment further mandates the DCR to pay the COs as overtime, the work performed during the 30 minutes allotted for mealtime periods.  Particularly, because they are under the obligation to perform their duties uninterrupted during their regular 8-hour shift and are confined to the station and required to remain at their work posts during the 30 minutes mealtime period and are prohibited to ingest their meal at any other location.

4.    Prior to the present Motion, a group of 44CO's of the appearing  claimants, and that continued working  at the DCR after the Title III petition date, filed a Motion in the instant case, requesting  the  payment of the unpaid salaries,  for services rendered and that were accrued after the filling of the Title III petition.  (Docket no. 17134 ).

5.    Therefore, the present Motion, supplement the previously filed, and were Movants expressly reserved all the rights to file separately the corresponding petition for an Order allowing the payment of the full unpaid portions corresponding to the pre-petition custodial and security services rendered at the DCR and to request for an order for the immediate payment of these pre- petition priority administrative expenses.

## II.  JURISDICTION

6.    The United States District Court has subject matter jurisdiction over this matter under PROMESA section 306(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 et seq.

7.    Venue is proper under section 307(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 et seq.

8.    The Court has jurisdiction under sections 507 and 503 of Title 11 of the United States Code, applicable to this Title III proceeding under section 301 of the Puerto

Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §
2101 et seq.

### III. FACTUAL BACKGROUND

9.      The relevant facts are undisputed, since prior to the Petition Date (defined
below)[2], the Movants have in their favor a judgment entered On April 22, 2016, by the
Court of First Instance of Aguadilla to include (collectively) the following amount: Total:
$ 4,909,667.10. **A copy of the judgment is attached hereto as Exhibit 1 and is made
a part hereof.**

10.      The Department of Corrections and Rehabilitation is an instrumentality of
the Commonwealth of Puerto Rico included in the Title III petition filed on behalf of the
Commonwealth.

11.      The Movants are full-time /or former career employees of the DCR seeking
an Order allowing the unpaid salary shortfalls of the pre-petition services rendered and
work performed during the 30-minute mealtime periods, as an administrative expense
priority and for the immediate payment of the full amounts owed. The CFI Judgment
mandates the payment of these salary shortfalls.

12.      In the Findings of Facts determined by the CFI in the April 22, 2016
Judgment, the Court concluded that regarding the overtime claim for working during the
30 minutes meal time period, upon review of the evidence in the case and the testimonies,
it is established that the plaintiffs performed custodial services during uninterrupted eight
hours, irrespective of being allowed a half hour to take their meal at the work location. No

---

[2] May 3, 2017, the Oversight Board filed a petition under Title III of PROMESA on
behalf of the Commonwealth of Puerto Rico.

Correctional Officer is authorized to leave the specific perimeter assigned in their respective shift for custodial services and if they do so, they are subject to charges for abandonment of services. *See CFI April 2016 Judgment at Page 5 ¶7*

13. The CFI also found factual grounds to establish that the DCR wrongly calculated the plaintiff's regular monthly salary, since was based on a pay scale developed for a 37.5 hours workweek, instead of 40 hours workweek. *See CFI April 2016 Judgment Page 5 ¶ 8*

14. Therefore, the CFI determined on the facts in the case that the CO's monthly regular salary have to be corrected, to include the additional half hour worked on the daily shift, since they work on a regular 40 hour workweek. Consequently, the regular monthly salary paid to the plaintiffs, at the time of their appointment and subsequent increases for merit and years of service granted, was erroneously established on the base of a 37.5-hour workweek and contrary to the provisions of the applicable local wage laws and regulations and ordered its payment. See CFI April 2016 Judgment Page 5 ¶ 9 and pages 27 to 32.

15. The CFI Judgement granted all plaintiffs back pay for the shortfall amount for the unpaid portion of their monthly regular salaries. Although the Judgment mandates the DCR to pay, the Plaintiffs cash payments for the unpaid portion of the regular salaries, on the basis of a 40-hour workweek, they are still being paid under a 37.5-hour weekly schedule. . See CFI April 2016 Judgment Page 5 ¶ 9 and pages 32 to 39.

16. In regards the thirty-minute overtime, for work performed during mealtime periods, the CFI Judgment also granted the COs the corresponding overtime and ordered the Commonwealth the payment of the corresponding shortfall. However, the DCR continuously ignores this obligation.

17. Instead of complying with the CFI Judgment to correct the CO's regular pay rate, the Commonwealth prompted extensive appeals processes. The CFI entered a Judgement dated April 22, 2016, on behalf of the plaintiffs, the CO's. On September 12, 2016, the Commonwealth appealed the CFI Judgement to the Puerto Rico Court of Appeals Judicial District of Bayamon.

18. On November 13, 2019, the Appellate Court entered Judgment affirming the CFI Judgement. The Commonwealth then appealed to the Puerto Rico Supreme Court. Certiorari was denied. The Commonwealth filed a reconsideration before the Puerto Rico Supreme Court. Certiorari was dismissed for a second time. The term to appeal to the United States Supreme Court elapsed without action by the Commonwealth. Therefore, the CFI Judgment is final and unappealable, and most importantly, collectable.

19. To this date, the DCR, hence, the Commonwealth, has failed to pay the pre-and post - petition debt.

20. Since the salary shortfalls continue to accumulate, on June 23 , 2021, a group of 44 OC of appearing Movants and that have continued working for the DCR, filed a motion with the Court seeking allowance of an administrative expense claim, for the accrued post petition, pursuant to Section 503 (b) (1) (A) (i) (the "Administrative Expense Motion"), in which requests immediate allowance and payment of the accrued post-petition unpaid wages (the " Administrative Claim") ( Docket 17134).

6

21.   The above-identified Motion is still pending, since the Debtors filed several
Motions of extension of time to the Administrative Expense Motion.

22.   The present Motion Supplements the June 23, 2021 Motion, as
previously indicated, since the DCR, through the Title III Commonwealth Debtor, have
not complied with the terms and mandates of the CFI Judgement dated April 22, 2016.
The COs, have divided their claims in pre-Title III claims[3] and post-Title III administrative
expense priority claims. [4]

23.   By the present Motion, the CO's pursue the allowance and payment of the
full back pay of amounts accumulated until the Title III petition date, as an administrative
expense priority under subsection (A) (ii).

24.   Included as Exhibit 3 and 4, are two schedules identifying, in the respective
case, each CO by name with the corresponding individual an actualized estimate of the
pre-petition wages shortfall, including the legal interest, computed until May 3rd, 2017,
and is made a part hereof.

25.   The last four digits of the social security numbers of each CO have been
redacted from Exhibit C but will be included in an identical list that will be sent to counsel
AAFAF to be forwarded to the DCR to issue payment pursuant to the Proposed Order.

26.   **Pursuant to the *Fifteenth Amended Notice, Case Management and
Administrative Procedures* (ECF No. 17127-1) Claimants hereby certifies** that prior
to filing the instant Motion, the subscribing attorney made a bona fide effort to resolve the
matter without a hearing; and made reasonable, good-faith communications and

---

[3] In the previous Motion, the COs reserve the right to present this request in a contemporaneous
independent motion.
[4] See Docket No. 17134

conferred with Debtor attorneys telephonically and thru emails, without being able to reach an agreement with Debtor.

## IV. RELIEF REQUESTED

27.    By this Application the claimants request the issuance of an Order, allowing the immediate payment in full, as administrative expense, of the total unpaid portion of the back pay wages accumulated until the Title III petition date, since their claim is within the specific category of administrative expense priority under § 503(b)(1)(A), subsection (ii), and as such, are entitled to priority in the bankruptcy distribution and payment, pursuant to § 507(a)(2) of the Bankruptcy Code.

## V. GROUNDS FOR GRANTING RELIEF

### A. Section 503—Administrative Expense

1.    Section 503 of the Bankruptcy Code establishes what types of claims are accorded administrative status. In general, these types of claims relate to the services rendered to a bankruptcy estate in its general administration. Wages are among the most common types of administrative expenses, since are considered a cost of preserving the bankruptcy estate. *See, e.g.,* § 503(b)(1)(A).

The pertinent text of the statute at issue is as follows:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate including—
 (i) wages, salaries, and commissions for services rendered after the commencement of the case; and
 (ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any

8

services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title;

2.    Under this purview, is clear that **subsection (A) (ii) provides the** legal grounds that should persuade the Court to enter an Order allowing the claims by the COs as administrative expenses with a priority classification, since pursuant to the April 22, 2016 judgment entered in favor of the OC" there is no controversy from the findings of facts, at Page 5 at paragraphs 7, 8, and 9 the specific violations incurred by the DCR of state and federal wage laws and upon this findings, the CFI, Order the payment of the salary shortfalls.

3.    Also and as a preliminary point to set the framework for the correct understanding of the Bankruptcy Code priority designations, is important to consider that Section 503 (b) of the Bankruptcy Code, provides an nonexclusive list of nine categories of administrative expenses. See In re Fin. Oversight & Mgmt. Bd. for P.R. 621 B.R. 289 (D.P.R. 2020) and In re Truland Grp., Inc., 520 B.R. 197, 203 (Bankr. E.D. Va. 2014).

4.    This list, "must be analyzed together, with Section 507 since in actuality, Section 507(a) (2) establish an order of priority and lists "administrative expenses allowed under section 503(b) of the Bankruptcy Code as second in line and are paid before all other unsecured creditors.

5.    Also, and for a better understanding of how the litigation arising under section 503 (b) have been considered, is important to bring to the consideration of this Honorable Court, that subsection (A) (ii) was added in 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

6. Therefore, is important to consider that the priority treatment under employment law, occurring during corporate reorganizations, has varied in the federal courts. For example, before passage of the "BAPCPA "2005" Amendment, the prevailing view, was that claims for pre-termination wages and benefits, like severance pay, were only entitled to priority as administrative expenses, if the wages and benefits were earned post-petition. *See, e.g.,* In re Mammoth Mart, Inc., 536 F.2d 950, 952 (1st Cir. 1976).

7. However, the prevailing view Post the 2005 BAPCPA, is to the effect, of recognizing administrative status to wage claims, "**regardless of the date when the wages were earned and whether there was any concrete benefit to the estate or whether the claimant performed any work at all"**. See Matthews v. Truland Group., Inc. (In re Truland Group., Inc.), 520 B.R. 197 (2014) in relation to WARN claims; see also, In re World Mktg. Chi., LLC, 564 B.R. 587, 594-97, 603 (Bankr. N.D. Ill. 2017) (same); *In re Philadelphia Newspapers, LLC,* 433 B.R. 164, 170-75 (Bankr.E.D.Pa.2010) ( that a claim's "vesting date" is immaterial and that a back pay claim can constitute an administrative expense even if it is awarded for services rendered before the commencement of a bankruptcy case).

8. Consequently, and considering that text of subsection (A) (ii) is clear, the COs submits that their pre petition claim qualify as administrative priority since the interpretation of subsection (A) (ii) must be construed to the plain language of the statute. As stated by the United States Supreme Court, "In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated repeatedly that courts must presume that a legislature says in a

10

statute what it means and means in a statute what it says there. <u>United States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, (1989); when the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.' <u>Rubin v. United States</u>, 449 U.S. 424, (1981).

9.     Based on the  plain language approach of subsection (A) (ii), and the reasoning applied in *Truland*, the CO's submits that they have sustained their burden, for the application for administrative expense priority, since they comply with all the requirements of subsection (A)(ii). Specificaly, because  here, not only the CO's have established their claims are for wages o salaries but  they were awarded pursuant to a judicial proceeding, based on an unlawful conduct that arises "as a result of a violation of Federal or State law by the debtor, but also because their request for the application for priority payment,  will not substantially increase the probability of layoff or termination of current DCR employees.

10.     In this regards, claimants submits that  from the  analysis of Debtor's financial records, as included in the Seventh Amended Disclosure Statement (Docket 17628), and  the data provided in the  Puerto Rico Fiscal Agency and Financial Advisory Authority (FAFAA), cash flow report, dated September 3, 2021, can be determined that the Commonwealth banks deposits establish, that the Debtor has  sufficient cash funds available, for the immediate payment of the claimants full wage obligation, now.

11.     Therefore, the CO's clearly comply with section (ii) last element, since by the payment of the seek obligation is unlikely to substantially increase the probability of layoff or termination of current DCR's employees.[4]

---

[4]  See Docket no. 17628 ..

11

12. Consequently, claimants request this Honorable Court to take judicial notice of the content of the docket of the present case.[5] Specifically, the GUC Reserve created under Article LXII Provisions for Treatment of GW General Unsecure Claims (CLASS 58) were a fund of $200,000,000.00 to satisfy General Unsecured Claims.[6]

13. Also, and although at this date the Commonwealth have not filed certified financials for fiscal 2019 and 2020, is requested this Court to take judicial notice of the most recent (TSA) cash flow statement (as of 9-3-2021) and were establish that the Commonwealth has currently in banks deposits, a cash account balance of $11.4 billion of unrestricted cash that under Puerto Rico's Constitution can and should, at least a substantial part, be used for debt adjustment purpose.[7] These amount is just part of the over $25.335 billion in cash Commonwealth currently holds.[8] Therefore, the Commonwealth continues to operate with sufficient cash literally having more than enough cash in the bank to immediately pay the priority claims now, in cash to appearing creditors.

14. In view of the above facts, The CO's insist in that they qualify for the corresponding payment of the full wages owed, as an administrative expense, since when Congress added the subsection (ii), clearly gave careful consideration to Debtors conduct towards their employee's and determined to give priority to back pay judgments vis-a-vis the claims of other creditors. *See In re Truland; In re Philadelphia Newspapers, LLC,* 433 B.R. 164, 170-75 (Bankr.E.D.Pa.2010). Also because, the payment of the

---

[5] *See Levine v. Egidi,* Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent,* 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing it).

[6] An excerpts is attached as Exhibit V (see page 477 to 480 Disclosure Statement Docket 17628)

[7] See Exhibit VI, at page 5

[8] See Exhibit VI, at page 4.

Employee Wages and Benefits in the ordinary course of business should neither prejudice general unsecured creditors nor materially affect the Debtor's estate, because section 507(a)(4) and section 507(a)(5) priority claims are already entitled to payment in full under a reorganization plan. See 11 U.S.C. § 1129(a) (9) (B).

15. In addition, because in the present case is critical, this Bankruptcy Court consider that PROMESA's Section 201(b) (1) (N) provides that the fiscal plan shall "respect the relative lawful priorities or lawful liens as may be applicable in the constitution, other laws, or agreements of a covered territory" 48 U.S.C § 2141,

16. Therefore, and as an independent basis to support the payment of the pre-petition claims as an administrative expense priority, this Honorable Court must consider that under Art. II, section 16, of the Puerto Rican Constitution, provides employee's a Constitutional protection against the payment of lower base rates as establish by law, for work performed, [9]

17. Further, because these provision mean that in the present case, is immediately clear, pursuant to the judgment entered, that the DCR violated Art. II, sec.16 of the P.R. Constitution, when paid the COs lower salaries, as required by the Commonwealth laws. This establish a persuasive argument for the allowance of priority payment of back pay award, under the exception recognized by the Supreme Court in *Reading Co. v. Brown, 391 U.S.* 471, 88 S. Ct. 1759, 20 L. Ed. 2d 751 (1968),

---

[9] Art. II, sec. 16 of the Commonwealth of Puerto Rico Constitution provides as follows:

Section 16. The right of every employee to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, to protection against risks to his health or person in his work or employment, and to an ordinary-workday, which shall not exceed eight hours. An employee may work in excess of this daily limit only if he is paid extra compensation as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed.

18.    In this context, is important that this court also considers that the claimants here, were subjected to a loss of a part of their regular base salaries, as a result of Debtors intentional violation of state and federal wage laws, and as a matter of fundamental fairness, based upon *Reading*, the CO's are entitled to be made whole and should be allowed an administrative claim to implement that result." See In Re: Healthco International, Inc.,3310 F 3d 9 (2st Cir 2002) citing In.re G.I.C. Gov't Secs.,121 B.R. at 649.

19.    Also, because  is critical to understand that the Bankruptcy Code incorporated in section 503 several essential policies underlying the priority for administrative expenses: to encourage activities that will benefit the estate; to advance reorganization efforts which would be hampered by the necessity of advance payments for supplies of the estate; to compensate those injured by the estate; and to prevent unjust enrichment of the estate at the expense of its creditors." Nancy C. Dreher, Joan N. Feeny and Michael J. Stepan, Bankruptcy Law Manual, Volume 1, § 6.32 (5th ed. 2018-2). **One of these fundamental policies precisely, is to prevent unjust enrichment of the estate at the expense of its creditors."** p. 1124.

20.    Precisely, because the concept of fundamental fairness, (under which *Reading* is premised), does not require an affirmative post-petition act by the debtor to justify the allowance of an administrative expense claim, courts are willing to apply the *Reading* exception where they deem it appropriate and/or fundamentally fair. See *In re MEI Diversified Inc.,* 106 F.3d 829, 832 (8th Cir. 1996).

21.    Therefore, in the present case, this Court should consider subsection (ii)'s place in the Bankruptcy Code's overall statutory scheme—and find that the

14

claims submitted by the CO's under § 503 (b) (1) (A) (ii) is an administrative expense claim, and must be treated equally and rateably with all other administrative expense claims, and be paid in full and in cash, prior to the effective date of a confirm plan of adjustment, since this is an specifically confirmation requirement, (in a Chapter 9 or Title III that provides — unless the creditor agrees otherwise — claims specified in 11 U.S.C. § 507(a) (2) must be paid in full on the effective date of any confirmed plan of adjustment of debts. See 11 U.S.C. § 943(b) (5); 48 U.S.C. § 2174(b) (4).

22.    Furthermore, because this Bankruptcy Court should be mindful "that, in determining on whether priorities are paid, must evaluate the totality of circunstances, and address the issue of Debtor's conduct, including the circunstances under which contracted its debts and determine whether has dealt fairly with its employees. Particularly, because here is critical the Supreme Court decision in Reading be applied, for failure of adequate protection, due to debtor's wrongdoings. Otherwise, as determined in *In re Mammoth Mart,* 536 F.2d at 953 dilutes the value of the priority scheme Congress intended.

## VI. **CONCLUSION**

23.    Factually and legally, the appearing COs have demonstrated, under the plain language of section 503(b) (1) (A) (ii), that they are entitled to an Order allowing the unpaid portion of their salaries for the pre-petition services they rendered to the Title III debtor, as an administrative expense priority claim, "**regardless of the date when the wages were earned and whether there was any concrete benefit to the estate or whether the claimant performed any work at all." Also,** because under the particular

facts of the present case, apply the *Reading* fundamental fairness doctrine.[10] And as such, claimants are entitled to priority in the bankruptcy distribution and payment, pursuant to § 507(a)(2) of the Bankruptcy Code.

## VII. **RESERVATION OF RIGHTS**

24. Notwithstanding the foregoing, CO's expressly reserves all (and does not hereby waive any) of its (a) rights, claims, counterclaims, defenses, interests, actions and remedies related to (i) assumption or rejection of any to which it is a counterpart, (ii) any claim or proof of claim that has been filed or may be filed in the future, (iii) any administrative expense claim as may be asserted hereinafter, including without limitation the (A) right to a judicial determination of the amount(s) due and owing with regard to any claim, (B) the right to resolution of all issues implicated by Movants claims, (C) the right to amend, modify or supplement this Motion in response to, or as a result of, any submission by any party-in-interest and (D) the right to adopt any other pleadings filed by any other party related to Movant's claims or this Motion (collectively, the "Reservation of Rights").

**WHEREFORE**, the CO's respectfully pray for this Honorable Court to grant this Motion and enter an Order in the terms stated in the enclosed proposed Order, awarding the allowance and payment of the Administrative Claim submitted, (collectively), in the total amount of $ 5,832,721.95 (The "Administrative Expense pre-petition Claim"), and ordering Debtor (DCR), pursuant to subsection 503 (b)(1) (A) (ii) and 507 (a) to pay such administrative expense within sixty (60) business days after entry of the Administrative

---

[10] Section 105 (a) empowers the Court to "issue any order, or process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C.A. SEC. 105 (Westlaw through P.L. 116-164),

Expense Order, and grand such other and further relief as the Court deems just and proper and granting such additional relief as this Court deems just and necessary. Also, **consider the previous Motion filed by the 44CO's, as to the post-petition shortfall, and consolidate both petitions, to make claimants whole.** This, without prejudice to Movant's right to request payment from the Debtor upon further application to this Court, approving the Reservation of Rights.

For purpose of this Motion, the CO's informs this Honorable Court, that on this date they have filed an amended Proof of Claim, to include the accrued estimated amounts of the back wages owed, until the date of the filling of the Title III petition. Also included in the amended Proof of Claim, the corresponding estimate of the post-petition accrued wages owed to the 44OC's that have continued working for DCR, as regular employees.

## VII. NOTICE OF TIME TO RESPOND

Pursuant to the terms set forth in the Court's Fifteenth Amended Notice, Case Management and Administrative Procedures Order [ECF 15894-1] the following terms shall apply about the present Motion:

a. The Government Parties will file any objection to the Motion (on an individual or joint basis), concerning the request for priority payment at issue, no later than October 13, 2021;

b. The CO's Parties will file their Response in support of the Motion, concerning The Standing Issue, no later than October 21, 2021;

c. The Government Parties will file a reply (on an individual or joint basis) to the CO's Response by no later than October 28, 2021;

17

d. Further take notice that, after the Objection deadline has passed, and no Objection had been filed or served in accordance with the set procedures set forth herein, counsel to the entity that has filed the request for relief may file a CNO indicating that no Objection has been filed or served on the party who has filed the request for relief and submit an order granting the relief requested and in the alternative,

e. The Court will hear argument on the Motion, solely concerning the Standing Issue, at a date and location to be determined by the Court.

**I HEREBY CERTIFY,** in accordance with Fed. R. Bankr. P. 9014(b), Fed. R. Bankr. P. 7004(b), and the Court's Fourteenth Amended Notice, Case Management and Administrative Procedures Order [ECF 15894-1] (the "CMP Order"), that we electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all CM/ECF participants in this case. I further certify that, on this same date, I served the foregoing upon all the Standard Parties as identified and defined in the Court's CMP Order, as well as upon all of the parties identified in the Master Service List maintained at https://cases.primeclerk.com/puertorico/.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 28 day of September 2021.

**ATTORNEY FOR THE CORRECTION OFFICERS**

**By: /s/ IVONNE GONZALEZ-MORALES**
IVONNE GONZALEZ-MORALES
USDC NUM: 202701
PO BOX 9021828
SAN JUAN, PR 00902-1828
Tel. (787) 410-0119
E-mail: ivonnegm@prw.net

18

**Table of  Exhibits in support of Motion for allowance of Payment of pre-petition
accrued wages as Administrative Expenses in connection with the consolidated
Judgment entered on April 22, 2016 by the Court of First Instance of Aguadilla in
Cases of Norberto Tomassini et al v Adm. Correccion and Ivan Ayala et al v Adm.
De Correccion, Civil Case Nums. A MI 20030143 and A PE2005-0049  (the
"Judgment")**

<u>**Exhibit ID**</u>

**EXHIBIT  1  -   PROPOSED ORDER**

**EXHIBIT  2  -    The April 22, 2016 judgment**

**EXHIBIT 3  -**    Schedule  including an actualized estimate of the total pre  petition
wage s**hortfall owed to individual CO's**, in the case Norberto
Tomassini,  for total  $ 3,468,245.96

**EXHIBIT 4  -**    Schedule  including an actualized estimate of the total    pre –
petition wage  s**hortfall owed to individual CO**, in the case Ivan
Ayala,  for  total $ 1,416,262.56

**EXHIBIT  5  -    Seventh Amended Disclosure Statement, pags 478 - 480**

**EXHIBIT  6  -    FAFAA   Cash Flow repot September 3, 2021**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

In re:

**THE FINANCIAL OVERSIGHT AND**
**MANAGEMENT BOARD FOR PUERTO RICO,**
**as representative of**
**(LTS)**

**PROMESA**
**TITLE III**
**Case No. 17-BK-3283**

**THE COMMONWEALTH OF PUERTO RICO, et al.,**
**Debtors[11]**

---

## [PROPOSED] ORDER GRANTING SUPPLEMENTAL MOTION FOR ALLOWANCE AND INMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE PURSUANT TO SECTION 503(b)(1)(A) (ii) OF THE BANKRUPTCY CODE FILED BY CORRECTION OFFICERS OF THE DEPARTMENT OF CORRECTIONS AND REHABILITATION OF THE COMMONWEALTH OF PUERTO RICO

Upon consideration of the Creditors included in the consolidated judgment dated April 22, 2016 entered by the Court of First Instance of Aguadilla, Puerto Rico, in the litigation captioned Norberto Tomassini et als case no. A MI2003-0143 and Ivan Ayala et als. case no. A PE2005-0049, against the Department of Correction and Rehabilitation of the Commonwealth of Puerto Rico (the "DCR") and the Supplemental Motion for Allowance and Payment of Administrative Expense Pursuant to Subsection 503(b) (1) ( A) (ii ) of the Bankruptcy Code (the "Motion"); and the Court having jurisdiction over this

---

[11] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780- LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

matter pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a); the Court determining that

venue of this proceeding in this District is proper under 28 U.S.C. § 1391(b) and 48 U.S.C.

§ 2167(a); notice of the Motion being adequate and proper under the circumstances; and

after due deliberation and having determined that there is good and sufficient cause for

the relief set forth in this Order, and proper under the circumstances; and after due

deliberation and sufficient cause appearing, is   HEREBY ORDERED THAT:

1. The Motion is GRANTED as provided herein.

2. Movants are hereby allowed an administrative expense claim pursuant to 11 U.S.C. §

503 (b) (1) (A) (ii) in the amount (collectively) of $ 5,832,721.95  (The "Administrative Pre-

Petition Expense Claim").

3 The Debtor,  Department of Correction and Rehabilitation (DCR)  in these Title III case

shall pay the Administrative Expense Claim within sixty (60) business days after the entry

of this Order.

4. The Reservation of Rights (as defined in the Motion) is approved.

5. This Order is without prejudice to the right of Movants to assert a claim for any further

administrative expenses for amounts owed by the Debtors and arising after the Petition

Date.

6. This Court shall retain jurisdiction over all matters arising from or related to the

implementation or interpretation of this Order.

Dated: _____ , 2021

HONORABLE LAURA TAILOR SWAIN
UNITED STATES BANKRUPTCY JUDGE