**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re:* <br><br> JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, <br><br> como representante del ESTADO LIBRE ASOCICADO DE PUERTO RICO *et al.*, <br><br> Deudores. <br><br> En el asunto de: <br><br> Maira Ivet Feliciano Rosado <br> N.º DE RECLAMACIÓN 10547 <br> 503 (9) - INDETERMINADO | PROMESA <br> Título III <br><br> Núm. 17 BK 3283-LTS <br><br> (Administrada Conjuntamente) <br><br> **La presente radicación guarda relación con el ELA, la ACT y el SER.** |

**RÉPLICA**

Comparece, ante la honorable Laura Taylor Swain, en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, para remitir a la Secretaría (Clerk's Office), los Abogados de la Junta de Supervisión Proskauer Rose LLP (Counsel for the Oversight Board) y los Abogados del Comité de Acreedores, Paul Hastings LLP (Counsel of the Creditor's Committee), en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (en adelante la autoridad federal concernida), la parte reclamante como acreedor individual y titular de Reclamación, compuesta por la Sra. Maira Ivet Feliciano Rosado (en adelante Sra. Feliciano Rosado), maestra y consejera escolar, con jubilación prematura por incapacidad no relacionada al empleo del Sistema de Retiro Para Maestros (SRM), también abogada (aunque sin revalidar aún el título), y vecina del Pueblo de Mayagüez, para incluir como reclamante y en representación de su hijo unigénito, el menor L.A.R.F., hoy de 16 años (mi única riqueza y esperanza de vida).

Dicha comparecencia tiene el objetivo principal de presentar una Réplica, aunque fuera del término prescrito por

1

esta Corte por mediar justa causa para la demora por quebrantamiento de salud (Ver Anejos 1 (a-m)). A la luz de la totalidad de las circunstancias del caso de marras, la parte reclamante no ha incurrido en incuria ni temeridad, por lo que **«RUEGA»** se le conceda legitimación activa para comparecer a la vista del próximo miércoles, 6 de octubre de 2021, a las 9:30 a.m.

Por tanto, la parte reclamante interpone la presente Réplica, sujeta a la total discreción del tribunal, a fin de traer ante la consideración de esta Corte Federal los asuntos siguientes:

1) Que, la réplica es respecto a la clasificación como importe **«INDETERMINADO»** de su reclamo N.º 10547, con fecha de presentación de 3 de mayo de 2018, tras haberse determinado que el mismo no corresponde a **«VENTAS DE CONSUMO»**. (Ver Anejos 2(a)). En efecto, tal determinación establece que la parte peticionaria no demostró que su reclamación justifique la concesión de un remedio. Nada más lejos de la verdad, pues esto no es criterio por sí solo. En estricta justicia, este caso es atípico, habida cuenta que presenta nuevas modalidades de ventas de consumo por actos constitutivos de una actividad de crimen organizado, y que violan crasamente la "Racketeer Influenced and Corrupt Organization Act", 28 U.S.C. 1962 et seq. (RICO Act o Ley contra el crimen organizado), entre otras leyes estatales y federales.

2) Como consecuencia de la clasificación anterior, la parte reclamante aparentemente no tiene derecho a una prioridad administrativa, según se constata en la tabla del Anejo A de la página 27, el inciso 97, en virtud del número del caso 17 BK 3283-LTS, intitulado *"Tricentésima Sexagésima Segunda Objeción Global (Sustantiva) del Estado Libre Asociado de Puerto Rico, de la Autoridad de Carreteras y*

2

*Transportación de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico a Reclamaciones Erróneamente Clasificadas"*. Añádase que también se determinó que la documentación adjuntada a la reclamación original, sometida por la parte reclamante, no constituye evidencia *prima facie* (Ver Anejos 1 (a-m)).

3) Precisa destacar que la reclamación del Acreedor individual consistió originalmente en la petición legítima a la Asociación de Maestros de Puerto Rico (en adelante Asociación) del descuento de las cuotas pagadas ilegalmente, más intereses al tipo legal, a la Federación de Maestros de Puerto Rico (en adelante Federación), contando desde el 1ro de agosto de 1999 hasta el 3 de diciembre de 2014, en virtud del caso. *Asoc. De Maestros v. Comisión de Relaciones del Trabajo*, 159 DPR 47 (2003). A ese momento, el Comisionado había determinado que la Federación le debía a los maestros $3,612,270 millones, más otros $1,209,312 millones que se encontraban depositados en el Tribunal de San Juan, en caso Civil Núm. KAC1999-1679. A renglón seguido, el Tribunal Supremo de Puerto Rico, en Asoc. *De Maestros v. Depto. Educ.*, 171 DPR 640 (2007), resolvió lo siguiente:

> "[…] *Declaramos ilegales los descuentos por concepto de cargos por servicio efectuados a los maestros que notificaron su interés en no afiliarse a la Federación de Maestros y fueron eximidos de pagar cargos por servicio en virtud de la legislación anterior. Resolvemos que la Ley Núm. 96[1] sólo aplica prospectivamente a los empleados que opten por no afiliarse a la organización obrera después de su vigencia. Se dictará Sentencia de conformidad*". [Id].

4) Así las cosas, desde el 29 de julio de 2014, la Sra. Feliciano Rosado interpeló a la Asociación, por conducto de la Sra. Aracelis Rivera, y otros, luego de haber sido eliminada arbitrariamente de la lista de los 17,866 maestros

---

[1] Ley Núm. 45 de 25 de febrero de 1998 para integrar, mediante la Ley Núm. 96 de 7 de agosto de 2001, un nuevo articulado denominado "Opción de no afiliarse y cargo por servicio"

del D.E. que recibirían las cuotas adeudadas, por un total de $6,699.622.63 millones. En esencia, el criterio que determinó tal negación fue la enmienda a la Ley 45 de 25 de febrero de 1998, que entró en vigor el 7 de agosto de 2001, aduciéndose que la Sra. Feliciano Rosado había recibido su permanencia en fecha posterior. No obstante, en este caso en particular, la reclamante obtuvo su permanencia desde el 14 de abril de 2000. Esto significa que de la "Forma 409 Informe de Cambio-Personal Docente" ya surgía, para el 1 de agosto de 2001, que el "Status Empleado Contrato" de la Sra. Feliciano Rosado era **«PERMANENTE»** (Ver Anejos 2 (d-f)). Es forzoso concluir que, a la luz de la evidencia, esta educadora ya ostentaba la permanencia antes del 7 de agosto de 2001, por tanto, <u>es acreedora de la devolución de las cuotas pagadas ilegalmente a la Federación, y que nunca le rembolsaron.</u>

5) Así y todo, y habiendo entregado en tiempo hábil los documentos que le fueron requeridos, los representantes de la Asociación no ayudaron en el proceso de reclamar lo que le pertenece a la Sra. Feliciano Rosado, según su promesa en ese sentido, tal y como se constata en su carta del 6 de septiembre de 2011 (Ver Anejos 2(p)). Por el contrario, obstinadamente la Asociación ha insistido en menospreciar el derecho **«comprado»** de la reclamante mediante aportaciones provenientes de su salario, a partir de agosto de 2011, a cambio del pago por concepto de las cuotas por afiliación. Una vez el empleado era admitido, se activaba su derecho a que la Asociación procediera a sufragar los gastos legales incurridos en el pleito de clase, conducente a la desafiliación y devolución de las cuotas robadas a la clase magisterial por la Federación de Maestros.

6) Es más, la certificación de la baja de la Sra. Feliciano Rosado de la Asociación y del Programa de Servicios

4

de Salud Médica (PROSSAM), con número de Socio 52472, se hizo efectiva el 31 de agosto de 2012. Su correspondiente notificación fue remitida a ésta el 5 de septiembre de 2012, a través de la Sra. Ivonne Díaz Rodríguez, Dir. De Admisiones y Archivo Central. Pero, la misma no fue efectiva hasta octubre de 2012. Así y todo, el 7 de febrero de 2013 todavía se reflejaba el descuento indebido de las cuotas mensuales por afiliación en el talonario de cheque de esta reclamante. Mientras que el 20 de febrero de 2013 le fue notificada la liquidación de su baja total de la EDUCOOP (Ver Anejos 2r).

7) Por tanto, la parte reclamante presenta hoy su Réplica adjuntada a otra evidencia de los hechos esenciales para los que tiene la carga de alegar, y que no habían sido presentados anteriormente. La solicitud de este foro fiscalizador federal consistente en requerir evidencia *prima facie* respecto a una causa de acción en ventas de consumo, insoslayablemente, obliga a la Sra. Feliciano Rosado a remontar su caso atípico del efecto a la causa de su jubilación prematura y forzada, cuya pensión y beneficios no llegan ni a $1,500 al mes. De ahí que sigue estando en estado de indefensión en el caso Número BK-3283-LTS presentado ante el Tribunal de Distrito de los Estado Unidos para el Distrito de Puerto Rico.

8) Esto es debido a que el Estado, en el ejercicio de su función judicial y ejecutiva ha sitiado, despojado y hambreado violenta e injustamente a la Sra. Feliciano Rosado en represalias por sus denuncias fundadas y continuas contra la **«CORRUPCIÓN JUDICIAL»**, un **«MONSTRUOS ALIEN» QUE ROBA NIÑOS** y destruye a sus **«MADRES JUSTAS»**[2]. Ello ha desembocado en la actuarial e insostenible **«INCAUTACIÓN ILEGAL DE SU JUBILACIÓN**

---

[2] https://www.periodicolaperla.com/declaraciones-del-colegio-de-abogados-y-abogadas-sobre-reciente-sucesos-de-violencia-de-genero-y-el-suicidio-de-una-mujer-sorda/

**DEL SRM»**[3], como la punta del "iceberg", que señala a gritos otros delitos de extrema gravedad que configuran crímenes de lesa humanidad. Por lo que mi hijo y yo, **¡PEDIMOS AUXILIO!**

9) Más que una mera reclamación por menoscabo severo a la susodicha jubilación, la parte reclamante comparece ante la Corte Federal y la autoridad concernida federal para llamar su atención al delito que se está cometiendo contra el menor L.A.R.F. usando de mamparra, de cortina de humo, de "*tapadera*" la **«SENTENCIA DE ALIMENTOS»**, con la cual subvierten la justicia *ad infinitum* contra las víctimas genuinas de violencia doméstica concomitante con maltrato infantil, que "*salta a la vista y hiere la retina*". *<u>Habida cuenta que se le está dando un giro delictivo, a nivel de crimen organizado, al cobro de dinero por concepto de la pensión alimentaria del menor L.A.R.F. contra la Sra. Feliciano Rosado, la supuesta madre-alimentante, a raíz de la orden de retención de ingresos de dudosa procedencia (Ver Anejos 2017, 30 de diciembre de 2017), destinándose tal pago a un paradero totalmente desconocido por ésta. Lo cierto es que esta madre-denunciante todavía desconoce el lugar donde tienen a hijo, a quien logró ver por última vez, por breves instantes, el 13 de mayo de 2013. Ciertamente, la jubilación de un empleado público no pude usarse para la realización de actos de una actividad de crimen organizado.</u>

10) Dicha sentencia nos retrotrae, insoslayablemente, al procedimiento judicial nulo de los días 7, 14, 20 y 21 de diciembre de 2011. (Ver Anejos 2011 del 14 al 30 de diciembre

---

[3] "*Una vez un empleado del Gobierno se ha retirado, su pensión no está sujeta a cambios o menoscabos ya que los participantes del Sistema de Retiro del Gobierno tienen un derecho adquirido de naturaleza contractual que surge con el ingreso del empleado al Sistema, independientemente de que su participación sea voluntaria o compulsoria. Bayron Toro v. Serra, 119 DPR 605 (1987). Entre el Estado y el empleado hay un acuerdo de ambas partes. [Id.] Ello, lógicamente, hace que el plan de retiro...sea parte de ese contrato. La Asamblea Legislativa no tiene facultad para menoscabar ese derecho adquirido de naturaleza contractual, o que ha sido "comprado", por ese participante mediante aportaciones compulsorias provenientes de su salario*".

6

de 2011). (Ver Anejos 2013, Acta del 2 de enero, Resolución del 17 de enero de 2013, Moción de Privación de Patria Potestad del 1 de marzo de 2013, Querella a puño y letra de petición de auxilio en el Depto. de Justicia, del 16 de mayo de 2013, Moción en Solicitud de Remedio Urgente del 10 de junio de 2013, Orden de Alejamiento del Menor del 12 de junio del 2013, Resolución de **PRIVACIÓN DE PATRIA POTESTAD,** 12 de julio de 2013, y copia de la Declaración Jurada ante la O.A.T. del 31 de diciembre de 2013 ¡**PIDIENDO AUXILIO!**).

11) Bajo órdenes *ultra vires* de la **Jueza Lynette Ortiz Martínez**, la **Jueza Angie Acosta Irizarry** y el **Juez Edwin Nieves Troche** del Tribunal de Mayagüez y adláteres del Tribunal, la Fiscalía y la Comandancia de la Policía de Mayagüez (el Fiscal Esteban Miranda Valentín y el Agente William Lugo Sepúlveda), y, recientemente, de la **Jueza Mariluz Cruz Morales** del Tribunal de Humacao (2017), entre otros corruptos influenciados respectivamente por el cruel poderío de la **Lcda. Olga Longoria Vélez,** quien logra jinetear a la canalla al poder opresor dominante de los Tribunal de Mayagüez y Humacao, como la mujer ramera[4] a la **Bestia de Apocalipsis 17**[5], *han torturado, perseguido, ridiculizado y extorsionado a la Sra. Feliciano Rosado con el rapto de su hijo, y dos (2) encarcelaciones arbitrarias que destrozan nervios y estigmatizan, mediante cargos falsos y fabricados, y sobre la base de una «**SENTENCIA INVENTADA**». Una «MONSTRUOSIDAD» jurídica que todos acogieron acanalladamente hasta hoy día, con tal de reducir a las víctimas a la

---

[4]*In re Franco Soto,* 115 DPR 740 (1984)- *"Incendiar, falsificar, robar y asesinar serían pecadillos veniales si se les comparaba con aquel encanallamiento; la prostitución pública resultaría sublimada en el parangón, pues al cabo, la mujer que vende su cuerpo puede ampararse en la protesta de su alma, mientras que el abogado vendería el alma para nutrir el cuerpo".*
[5]Apocalipsis 17:4,5- *"4Y la mujer estaba vestida de púrpura y escarlata, y adornada de oro de piedras preciosas y de perlas, y tenía en la mano un cáliz de oro lleno de abominaciones y de la inmundicia de su fornicación; 5y en su frente un nombre escrito, un misterio: BABILONIA LA GRANDE, LA MADRE DE LAS RAMERAS Y DE LAS ABOMINACIONES DE LA TIERRA".*

7

impotencia. La práctica mafíode de la Lcda. Longoria Vélez fue contratada con planes maduros por el agresor y evasor alimentario, el **Sr. Aníbal Rodríguez García,** el padre del menor y el ex esposo de la Sra. Feliciano Rosado, que también tiene un perfil de psicópata. Sus imperio de terror y tráfico de influencias burlan el tiempo y la distancia de la 100 x 35 de la Isla de Puerto Rico, y es increíble lo lejos que puede llegar su práctica mafíode, tal y como el asqueroso ácido verde que escupe por la boca el MONSTRUO ALIEN. Es una asesina.

12) Y, esto es a lo que llamamos **«LA MAFIA» (la mafia-longoriana)** que se erigió ya en un MONSTRUO ALIEN depredador y despiadado, operando total y absolutamente al margen de la ley o convención internacional, y con cuyos actos de CORRUPCIÓN, tráfico de influencias, arbitrariedad, despotismo y "*amiguismo*" se titula infalible y **«HONORABLE»**[6]. Pero esta factura profana se la están pasando a los niños, quienes pagan con su propia viva el mantenimiento de la honorabilidad de estos corruptos e intocables. ¿Cuánto cuesta mantener a un **«HONORABLE»**, preguntó Nicolás Nogueras[7], quien en vida fuera el Fiscal del Pueblo (1995). –**"LA VIDA DE MI HIJO L.A.R.F.",** le responde esta madre-denunciante, ya convertida en mártir, y en lo pertinente citamos:

> "*¿Qué residuo de honor queda en tanto* **«HONORABLE»** *que* ***TRAFICA*** *con la felicidad y bienestar de nuestro* ***PUEBLO****? ¿Cuánto honor puede haber en los honorables que con su mezquindad, su servilismo, sus ambiciones y sus debilidades se creen dueños de la vida y hacienda de los demás?"* (Los Honorables I, Id., p. 55).

13) La cuestión medular de la presente controversia que es de complicada sencillez y tan provocadora de una tempestad

---

[6]Nogueras, Nicolás (1995), Lcdo., alias "El Fiscal del Pueblo", escritor del libro "Los Honorables I" (1995), Ramallo Bros. Printing, Inc., P.R. Su "*libro adquiere visos de texto canónico sobre la corrupción en Puerto Rico*", dijo Oscar J. Serrano (2019), https://www.noticel.com/english/noticel-desde-adentro/opiniones/top-stories/20191007/el-lince-y-los-honorables-rajieros/
[7]Op. cit. Nogueras, Nicolás (1995).

8

de indignación que causa un "*shock*" a la **CONCIENCIA** del Pueblo Puertorriqueño, puesto que ya no es un "*caso*" sino una "*causa*" de «**LIBERACIÓN Y DERECHOS HUMANOS**». En particular, por "*reflejar una gravedad que trastoca violentamente los pilares de integridad y justicia propios de nuestro MAGISTERIO*", *Pueblo v. Álvarez*, 108 DPR 112 (1978), el cual goza de «**HONORABILIDAD**»[8] e impunidad para mantener aún como **REHÉN** y bajo **DESAPARICIÓN FORZADA**[9] **AL MENOR L.A.R.F.**, <u>sin que a nadie se le importe algo</u>, **POR EXPLOTACIÓN CON FINES DE SERVIDUMBRE INVOLUNTARIA POR DEUDA AJENA DE PENSIÓN ALIMENTARIA CONTRA SU MADRE POR RAZÓN DE REPRESALIAS, <u>PARA UNA NUEVA MODALIDAD RENTABLE DE LA TRATA DE MENORES</u> EN EL TERRITORIO DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO O E.L.A** (en adelante **TRÁFICO INFANTIL O TRATA DE MENORES POR PENSIÓN ALIMENTARIA**), judicializada como Derecho bajo una **SENTENCIA DE ALIMENTOS** y a raíz de un repudiable «**ESQUEMA DE CORRUPCIÓN JUDICIAL**». **¡El crimen perfecto!** Tan siniestro que supera la capacidad de derramar lágrimas o hallar palabras para describirlo. Las víctimas no tenemos adónde ir. Es una pesadilla interminable. *Town of Castle Rock v. Jessica Gonzales*, 545 US 748 (2005). *Gutiérrez-Rodríguez v. Cartagena*, 882 F.2d 553 (1989).

14) Un crimen horroroso por donde se mire que, por su extrema gravedad, subraya la urgencia de elevarse a un crimen de lesa humanidad en el derecho internacional bajo la norma *ius cogens*. Por cuanto al cautiverio silencioso del menor L.A.R.F. se lo invisibiliza y, en efecto, se le priva arbitrariamente del derecho de libertad y propiedad no sólo

---

[8] Nogueras, Nicolás (1995), Lcdo., alias "El Fiscal del Pueblo", escritor del libro "Los Honorables I" (1995), Ramallo Bros. Printing, Inc., P.R. "El libro que adquiere hoy visos de texto canónico sobre la corrupción en Puerto Rico", dijo Oscar J. Serrano (2019), Editor Jefe de NotiCel. https://www.noticel.com/english/noticel-desde-adentro/opiniones/top-stories/20191007/el-lince-y-los-honorabl es-rajieros/

[9] 30 de agosto de 2021, Día Internacional de las Víctimas de Desapariciones Forzadas: la CIDH el Comité de Naciones Unidas contra las Desapariciones Forzadas y el Grupo de Trabajo sobre las desapariciones forzadas o involuntarias llaman a los Estados a adoptar e implementar estrategias de búsqueda e investigación en el marco de una política integral en materia de desapariciones https://www.oas.org/es/CIDH/jsForm/?File=/es/cidh/prensa/comunicados/2021/224.asp

9

dentro del espíritu de las leyes locales aplicables a los delitos de **SECUESTRO CON CIRCUNSTANCIAS AGRAVANTES**, por cometerse contra un menor con **«IMPEDIMENTO POR DÉFICIT DE ATENCIÓN E HIPERACTIVIDAD», PARA LA SERVIDUMBRE INVOLUNTARIA O ESCLAVITUD POR SU PENSIÓN ALIMENTARIA,** contado desde el 14 de diciembre de 2011, sino también de los convenios internacionales por su primera (1era) **DESAPARICIÓN FORZADA** dentro del país, contada desde el 15 de mayo de 2013 hasta el año 2017. Año en que aparentemente terminaría la pesadilla de la **DESAPARICIÓN FORZADA DEL MENOR L.A.R.F.**, en virtud de la interpelación por cobro de dinero de la Administración para el Sustento de los Menores (ASUME) por concento de pensión alimentaria acumulada. Para entonces, la Sra. Feliciano Rosado ya no ostentaba ni la custodia ni la patria potestad del menor, ni tenía conocimiento del paradero de su hijo, como cuestión de hecho.

15) En verdad, nadie hizo nada para ayudar a la Sra. Feliciano Rosado a recuperar a su hijo. Toda vez que dichos crímenes de lesa humanidad están siendo perpetrados por unos jueces corruptos del Tribunal de Mayagüez (2011-2021) y el Tribunal de Humacao (2017-2021), valiéndose de *"una **CORRUPCIÓN INSTITUCIONALIZADA** [que] usa como uno de sus mecanismos, la discreción judicial"*, *In re López*, 184 DPR 334 (2012). Es más, la mafia del Tribunal del Mayagüez, actuando en contubernio con la mafia del Tribunal de Humacao, ordenó el traslado del expediente del caso de marras, a partir del 30 de agosto de 2015, pero sin notificárselo a la Sra. Feliciano Rosado. Ello con la intención criminal de ocultar el paradero del hijo a su madre. Esto dio lugar, andando el tiempo, a la segunda (2da) etapa de la **DESAPARICIÓN FORZADA DEL MENOR L.A.R.F.**, intensificada por un complot judicial de los tribunales a quo para sacarlo fuera del E.L.A. y sus

10

territorios, contada desde el 2017 y hasta que no se conozca su paradero actual[10]. ¡**NO SÉ DÓNDE ESTÁ MI HIJO!**

16) Así visto, y como cuestión de hecho, mi hijo sigue estando bajo cruel **DESAPARICIÓN FORZADA** *"cometida por agentes del Estado o por personas o grupos de personas que actú[a]n con el apoyo, la autorización o la aquiescencia del Estado, seguida de la falta de información o de la negativa a reconocer dicha privación de libertad o de informar sobre el paradero de la persona, con lo cual se impide el ejercicio de los recursos legales y las garantías procesales pertinentes"*[11].

17) Más aquí se deja ver una nueva manifestación de la **TRATA DE MENORES POR PENSIÓN ALIMENTARIA** sobre la base de la «**Sentencia de Alimentos**» del 21 de diciembre de 2011, que no mueve a sentimiento o pensamiento de compasión alguna hacia las víctimas y se la sigue usando como instrumento de persecución y encarcelación arbitraria contra la Sra. Feliciano Rosado. El entronque común de tan espantosas crueldades es la «**SENTENCIA INVENTADA**» de 90 días de servicios comunitarios del 7 de septiembre de 2011 (Ver Anejos 2011) y que, por tanto, es **NULA** por ser contraria a derecho y provocar un claro descalabro de la justicia para la parte peticionaria. Razón por cual <u>la Sra. Feliciano Rosado ha solicitado su revocación en los foros judiciales y la **DEVOLUCIÓN DE SU HIJO**</u>, pero todos cierran filas contra la madre-denunciante y el menor negándoles la justicia acanalladamente.

18) Por más explicación que adelante la peticionaria, siempre señalan las incomparecencias como resultado de todos

---

[10] El Artículo III de la Convención Interamericana sobre Desaparición Forzada de Personas, adoptada el 9 de junio de 1994, reza así: *"Dicho delito será considerado como continuado o permanente mientras no se establezca el destino o paradero de la víctima"*.
[11] Id. El Art. II reza así: *"Para los efectos de la presente Convención, se considera desaparición forzada la privación de la libertad a una o más personas, cualquiera que fuere su forma, cometida por agentes del Estado, o persona o grupos de personas, [...] autorización del Estado"*.

**11**

las calamidades que les han hecho sufrir. Es más, a esta madre que lucha por su hijo la demonizan principalmente porque, buscando que alguien fuera movido a ayudarla tras la traición de 8 abogados, colocó los **10 CRUZACALLES Y 5 PANCARTAS** en el pueblo de Mayagüez, allá para principios de marzo de 2012, para denunciar **la toma del menor como rehén**. Ningún argumento puede desdecir tal evidencia de que esta madre **SÍ** tenía interés de recuperar a su hijo que los cruzacalles, que finalmente marcaron la lucha por su **LIBERACIÓN**. Esta madre **NO** abandonó a su hijo, sino que para evitar que la volvieran a arrestar con cargos falsos se vio en la necesidad de huir cuando la persecución ardía. Hacían como si procurasen darle la oportunidad de recuperar a su hijo, según obra del récord del cado de auto, mientras por lo debajo hacían cuanto podían para evitar **DEVOLVÉRSELO**. (Ver Anejos 2011 y 2012, el tracto de órdenes para exámenes mentales y visitas materno-filiales para un uso prosecutorial, como ya se dijo).

En su defecto, la peticionaria dejó de comparecer al tribunal para pedir auxilia y regresar con refuerzos que nunca encontró por el Imperio de Terror que desencadenan las mafias. En su defecto, no hay tales incomparecencias por la nulidad de los procedimientos judiciale, *Ríos v. Municipio de Isabela*, 159 DPR 839 (2003). Toda vez que *"una actuación nula es inexistente, […] no genera consecuencias jurídicas"*. *Brown III v. J.D. Cond. Playa Grande*, <u>154 DPR 225</u> (2001). *"(...). Lo nulo nunca tuvo eficacia alguna, nunca nació en derecho, nunca existió"*. Id. *Suárez et al. v. C.E.E.*, 163 DPR 347 (2004); *Brown III v. J.D. Cond. Playa Grande,* 154 DPR 225 (2001); *Acevedo v. Municipio de Aguadilla,* 153 DPR 788, 811 (2001); *Montañéz v. Policía de P.R.,* 150 DPR 917, 921 (2000). (Casos citados en *Velázquez v. Municipio de San Juan*, 24 de noviembre de 2008, Apelativo). Es mandatorio concluir que <u>*"lo*</u>

*nulo nunca tuvo eficacia alguna, nunca 'nació' en Derecho, nunca existió"*. En su defecto, *"…es necesario que el funcionario o empleado público que está cumpliendo con su deber lo haga dentro del ámbito del mismo de manera lícita, de no ser así la **RESISTENCIA** estaría justificada"*. *Pueblo v. Ortiz*, 123 DPR 865, 873 (1989). (Ver Anejos 2011), según obra del expediente voluminoso del caso de autos que data del 2006 hasta el 2017, y que ya fue alterado por destrucción de prueba. (Dicha prueba fabricada consistió en un contrato falso para inducir a error a la peticionaria, que creado por el entonces Decano Académico de la FDEMH, el Lcdo. Carlos Rodríguez Sierra, actuando en contubernio con la Lcda. Stephanie Cabrera Hernández, la abogada *ad hoc* del Programa Clara Lair, ubicado en el foro aquo, donde enviaron a la bulleada a ejecutar la pena de servicios comunitarios bajo un patrón de humillaciones).

19) En las secuelas de tal dictamen nulo, el tracto de las órdenes, resoluciones y minutas de los foros aquo, siguen siendo terroríficas, incluso más aún, ya que evidencian que cualquier crítica expresada contra los entes del Gobierno de Puerto Rico, se paga con represión, violencia, la cárcel y la «**MUERTE**»[12]. Los autos de este caso están saturados de represalias, **TORTURAS**, tratos crueles y múltiples violaciones de derechos humanos, fabricación de cargos, *"bullying"* de los tribunales, encarcelaciones arbitrarias para silenciar las denuncias, investigaciones incompletas, ineficaces y exonerantes, remoción de prueba del expediente de autos, juicios fraudulentos y carpeteo por la peticionaria denunciar actos de **CORRUPCIÓN JUDICIAL** a raíz de una **SENTENCIA INVENTADA** de 90 días de servicios comunitarios por "añangotamiento".

---

[12]Viudo vincula a Sagardía en crimen de fiscal Francelis Ortiz: Metro, https://www.metro.pr/pr/noticias/2016/10/12/viudo-vincula-a-sagardia-en-crimen-de-fiscal-francelis-ortiz.html

13

Al actuar así, la Jueza Ortiz Martínez abrió la puerta a toda pretensión de autoridad desmedida y extravagancia opresiva para que los más fanáticos y desequilibrados del Tribunal de Mayagüez, de por sí ya dados al obedecimiento dogmático y la crueldad insultante, pudieran a su antojo ridiculizar y perseguir a la Sra. Feliciano Rosado durante la ejecución de su pena de servicios comunitarios. Acto seguido, fue a pedir auxilio a la autoridad concernida (la Oficina de la Procuradora de la Mujer (el 23 de septiembre de 2011), la Oficina de Administración de Tribunales (el 7 de octubre de 2011) y la Oficina del Juez Presidente (el 5 de diciembre de 2011), pero todos la dejaron, a ella y a su hijo, en manos de la venganza de sus verdugos del tribunal.

Para completar el dolor y humillación, y aumentarle innecesariamente el escarnio del escándalo público a la Sra. Feliciano Rosado, la mafia-asesina contaminó su ambiente laboral al llamar por la vía telefónica a la Administración de su trabajo de entonces, la Escuela Superior Vocacional Dr. Pedro Perea Fajardo de Mayagüez, con la intención criminal de dañar su reputación informando que su Consejera Escolar estaba siendo trasladada a la cárcel de mujeres de Vega Alta. Así fue comenzó el carpeteo.

Puesta aparte, la Sra. Feliciano fue sacada de carrera como consecuencia del desprestigio provocado. Una mujer productiva, con ganas de vivir y de ver crecer a su hijo, ha sido objeto de injustas sospechas tras el despojo de la custodia y patria potestad sobre su hijo, a pesar de que ésta sea una abogada íntegra. *"Lo verdaderamente triste de esta situación -por aquello de que "cuando el río suena es porque algo trae"- es que siempre habrá quien entienda que esta íntegra y respetada profesional del derecho "algo malo tiene que haber hecho" [para que le quitaran su hijo]. Nada más*

14

*injusto y lejos de la realidad"*. (Citando a *In re Vicenty Nazario I*, 169 DPR 194 (2006).

Incluso convirtieron en un calvario su lucha para hacerse recomendable en el campo laboral, al dañar su récord maliciosamente con datos de todo punto impertinentes, y la huella digital de ex-presidiaria que estigmatiza. En la esfera de intimidad, aplastaron sus esperanzas de casarse bien. Mirada con espanto tras haber pisado la cárcel, los mejores partidos no querían tener nada que ver con esta desventurada mujer, pese a ser una abogada y educadora con dos maestrías en Educación y un *Juris Doctor*, quedando sola con el corazón de una madre angustiada para batallar contra el MONSTRUO SOCIAL[13]. Nadie quiso creer su historia. *Permanentemente dependía de la fe en las verdades penetrantes de las Sagradas Escrituras, y los libros de Elena White que impidieron <u>su suicidio</u>. Entendiendo duramente que *"muchas veces nuestros planes fracasan para que los de «DIOS» respecto a nosotros tengan éxito"*[14].

20) Esto es debido a que la Sr. Feliciano Rosado, durante los pasados diez (10) años (2011-2021), ha estado haciendo las mismas denuncias fundadas contra la **«CORRUPCIÓN JUDICIAL»** que medió para arrebatarle a su hijo por represalias, ante todos los foros fiscalizadores del E.L.A. y los foros federales del Distrito de Puerto Rico (Ver Anejos 2011-2021). Trágicamente, el menor L.A.R.F. ha sido partícipe de los sufrimientos de su madre, a quien no ha visto desde el 13 de mayo de 2013. También a él le han causado un sufrimiento inenarrable por los traumas de separación de la figura

---

[13]Término utilizado en la Exposición de Motivos de la Ley Número 77 de 9 de julio de 1986, según enmendada conocida como la **"Ley para la Protección de Testigos y Víctimas"**.
[14]E.W., El Ministerio de Curación, p. 376.

15

materna, y el «INFIERNO» que le han hecho vivir desde que lo arrebataron de los brazos de su madre, sin razón legal.

21) Ciertamente, **NO** se puede aducir una sola prueba de la ley que justifique que, a esta madre, por demás excelente, la privaran de la custodia y patria potestad de su hijo, que no sea el "*yo mando aquí*" de la **«LA MAFIA TRAFICANTE DE NIÑOS POR SU PENSIÓN ALIMENTARIA»**. En verdad, me robaron a mi hijo en un procedimiento revanchista y prejuzgado de terminación de los derechos maternales sin mediar "*causas de inhabilidad materna (unfit)*", *Santosky v. Kramer*, 455 U.S. 745, 753 (1981), págs. 748-749, 762, 759-760, *Depto. Familia v. Cacho González*, 188 DPR 773 (2013), sin existir "*prueba clara, robusta o convincente*", *Santosky v. Kramer*, 455 U.S. 745, 753 (1981), para su remoción del hogar materno, a modo de una **INCAUTACIÓN ILEGAL**, *Calabretta v. Floyd*, 189 F 3rd 808 (9th Cir. 1999). Estos hechos que coinciden con un esquema de corrupción judicial en el que el victimario, el **Sr. Aníbal Rodríguez García**, participó para quedar liberado de su obligación alimentaria.

22) Las instrumentalidades del Gobierno del E.L.A. tienen una lógica aplastante contra las víctimas de delito. A título de ejemplo, la **Administración para el Sustento de Menores (ASUME)**, adscrita al **Departamento de la Familia de Puerto Rico** y que es parte del **Departamento de Justicia**, los únicos con poder para poner fin al grave crimen de **SECUESTRO Y DESAPARICIÓN FORZADA DEL MENOR** revelando su paradero actual a su madre zozobrante y desolada, insisten en soslayar su deber ministerial, que no admite excusas ni discreción, de proteger a los menores y jóvenes de esta país y, por ende, al menor **L.A.R.F.**, liberándolo de sus secuestradores. Por el contrario, dichos organismos, dándole pleno vigor y efecto al

16

MONSTRUO PROCESAL de la Sentencia de Alimentos con efecto de "*cosa juzgada*", *Don Quixote Hotel v. Tribunal Superior*, 100 DPR 19, 30 (1971), *González v. Rodríguez*, 124 DPR 593 (1989), normalizan la violencia del Estado mediante un tracto de interpelaciones de cobro *so* pena de prisión, resoluciones que hambrean a la alegada madre-alimentante y actos de impugnación, intimidación, indolencia y trato preferencial hacia el victimario, que reducen a la impotencia a las víctimas. (Ver Anejos 2015, Moción Informativa del 27 de julio), (Anejos 2016, Moción a puño y letra de **PETICIÓN DE AUXILIO** a la Procuradora de la ASUME del 11 de mayo de 2016, Moción en Auxilio de Jurisdicción de la ASUME de Mayagüez del 21 de diciembre), (Ver Anejos 2017 y Anejos 2021).

23) Por su parte, la **ASUME** de Humacao se ha erigido como un ente agresor contra las víctimas por prestarse al juego de la aplicación automatizada y encanallada al caso de autos de leyes que no fueron pensadas, creadas, ni legisladas para judicializar crímenes de lesa humanidad y que, en efecto, burlan "*el "mens" legislativa al aprobar el estatuto*", *Milán v. Muñoz*, 110 DPR 610 (1981). No obstante haber confiscado arbitrariamente la aportación de pensión por jubilación de la Sra. Feliciano Rosado, para el pago directo de la pensión alimentaria del menor L.A.R.F., el ente Administrativo de ASUME no tiene intención alguna de revelarle a esta madre el PARADERO ACTUAL de su hijo, a los efectos de ponerla en posición de recuperarlo. La agencia protege a los corruptos e intocables no al menor, razón por la cual no da crédito alguno al testimonio y a la prueba documental de la madre-denunciante.

24) Así las cosas, la extremada maldad de los «secuestradores honorables» del menor L.A.R.F. abre la puerta a sus víctimas acorraladas y reducidas a la impotencia durante

17

los pasados diez (10) años, a las garantías de la Ley de 30 de junio de 2016, mejor conocida como "*Puerto Rico Oversight, Management, and Economic Stability Act*" o (PROMESA), 48 U.S.C. §§ 2101-2241, promulgada por el Congreso de los Estados Unidos al amparo del Artículo IV, Sección 3, de la Constitución Federal. Esperanzadamente, la parte reclamante se ampara en la LEY PROMESA, toda vez que dicha legislación prevalece ante un conflicto con alguna ley del estado o territorio, o cualquier otra regulación. Maxime cuando las siglas de la Ley «**PROMESA**» encarnan las esperanzas y aspiraciones de un Pueblo oprimido, esclavizado y sitiado por los más déspotas y despiadados del Gobierno del E.L.A., ya que "*[…] según su «**PROMESA**», nosotros esperamos nuevos cielos y nueva tierra, en los cuales mora LA JUSTICIA*" [que, en sí misma, **\*LA JUSTICIA ES «CRISTO». ¡Gloria a Dios! ¡Aleluya!**]. [Corchetes nuestros].

25) Con ansiosa expectación de hallar justicia, la parte reclamante comparece hoy para invocar las garantías y poderes inherentes de la «**Junta de Control Fiscal**» (JCF) creada, entre otras razones, para remediar un grave mal social con motivo de la emergencia provocada por la depresión económica por robo y malversación de caudales de fondos federales y el erario público, por razón de la tamaña tiranía del Gobierno del E.L.A. Sumada a la **CORRUPCIÓN JUCIAL** devastadora, a la impunidad de los responsables del **SECUESTRO Y DESAPARICIÓN FORZADA DEL MENOR** y a la negación oficial de tales delitos. El consiguiente daño psicológico a las víctimas es devastador, por lo que pedimos **¡AUXILIO A LA JUNTA!** para que **RESCATE A MI HIJO Y LO REGRESE A LOS BRAZOS DE SU MADRE**, además de proveernos el remedio que proceda. Toda vez que en esta marco jurídico y político novel que tiene efectos insospechados, la Ley Promesa es tan abarcadora que, además

de la paralización automática de los procesos judiciales o administrativos, también "*opera para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra*". (PROMESA, supra, sec. 2161;11 U.S.C. secs. 362(a) y 922(a)), *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 490-491 (2010).

26) No cabe duda de que este caso sienta un mal precedente para la Rama Judicial de Puerto Rico. Señala que hay graves dificultades en la sociedad puertorriqueña que no salen a la luz, por la represión, el "*bullying*", las torturas, la encarcelación, **«LA QUITA DE NIÑOS A SUS MADRES JUSTAS»** por el dogmatismo fanático y violento del tribunal en su afán de imponer a la fuerza la utopía totalitaria y «MONSTRUOSA» del **«RÉGIMEN DE LA CUSTODIA COMPARTIDA»**, y la violencia y represalias que se ejerce contra los denunciantes de la CORRUPCIÓN del Gobierno del E.L.A., sus agencia e instrumentalidades, y que precisan una solución, aunque la JCF y su PROMESA, en su defecto, no sean el foro adecuado. Por favor, ¡**DEVUÉLVANME A MI HIJO**!

27) Como un **«GRITO DE AUXILIO»**, este ruego de prórroga para recibir la presente Réplica equivale a la nota de auxilio que Otto Kimons (1942) arrojó por la ventana de uno de los trenes de muerte que iban hacia los campos de exterminio nazi en el Holocausto Judío. La carta llegó a manos de su esposa cuando ya era muy tarde. Decía así: -"*Queridos míos, nos dirigimos a Polonia. NADA HA SERVIDO. ME LO HAN QUITADO TODO. Sed fuertes y valientes, yo también lo seré*".

POR LO QUE la parte reclamante solicita respetuosamente que se dicte una orden de autorización para prórroga, esencialmente para que se acepte su Réplica, y 1) pueda ésta comparecer a defender sus argumentos en la vista del 6 de

19

octubre de 2021, y 2) que se conceda a estos Acreedores individuales, que ya han sufrido bastante su separación involuntaria de diez (10) años sin saber nada el uno del otro, cualesquiera otros remedios que se consideren justos.

Respetuosamente sometida,

*Maira I. Feliciano Rosado*

Maira Ivet Feliciano Rosado
Calle Elena Segarra #154
Sector El Maní
Mayagüez, P.R. 00682
mfeducderec@yahoo.com
(787) 242-1302
(786) 371-6770
(787) 242-1063

Fecha: 27 de septiembre de 2021
Mayagüez (Puerto Rico)

Con copia a la autoridad concernida:

Secretaría (Clerk's Office)
Tribunal de Distrito de los Estados Unidos (*United States District Court*)
Sala 150 Edificio Federal (Federal Building),
San Juan (Puerto Rico) 00918-1767

Abogados de la Junta de Supervisión (Counsel for the Oversight Board)
Proskauer Rose LLP,
Eleven Time Square Nueva York, Nueva York 10036-8299
Attn. Martin J. Bienenstock
Brian S. Rosen

Abogados del Comité de Acreedores (*Counsel for the Creditors' Committee*)
Paul Hastings LLP
200 Park Avenue
Nueva York, Nueva York 100166
Attn: Lue A. Despins
James Bliss
James Worthington
G. Alexander Bongartz