# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>     Debtor. | PROMESA<br>Title III<br><br><br>Case No. 17 BK 4780-LTS<br>(Jointly Administered) |

*[Caption continued on next page]*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

PUERTO RICO ELECTRIC POWER AUTHORITY, by and through THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,

       Movant,

       v.

WINDMAR RENEWABLE ENERGY, INC.,

       Respondent.

**Re: ECF Nos. 2577, 2578, & 2591**

## REPLY IN SUPPORT OF PREPA'S ASSUMPTION OF POWER PURCHASE OPERATING AGREEMENTS

To the Honorable United States District Judge Laura Taylor Swain:

      The Puerto Rico Electric and Power Authority ("PREPA" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as PREPA's sole Title III representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this reply (the "Reply") to the *Objection to Assumption of Power Purchase Operating Agreement* [Case No. 17 BK 4780-LTS, ECF No. 2591] (the "Objection") filed by Windmar Renewable Energy, Inc. ("Windmar"), and in support of the *Notice of Assumption of Power Purchase Operating Agreement* [Case No. 17 BK 4780-LTS, ECF No. 2577] (the "Xzerta Notice") and the *Notice of Assumption of Power Purchase Operating Agreement* [Case No. 17 BK 4780-LTS, ECF No. 2578] (the "CIRO Notice," collectively the "Notices"):

## **PRELIMINARY STATEMENT**[3]

      1.    The scope of the Court's review of an assumption motion is whether the debtor exercised sound business judgment in deciding to assume the subject executory contract. PREPA's assumption of the Xzerta PPOA and CIRO PPOA (together, the "PPOAs") on amended and improved terms as summarized in the Notices would provide PREPA with economic benefits in the form of increased savings over the original terms, and the procurement of renewable energy to support PREPA's compliance with its renewable power requirements.

      2.    Windmar does not argue PREPA did not exercise business judgment, or the PPOAs are not beneficial to PREPA, or PREPA fails any standard for assumption of the PPOAs. Its sole objection is the PPOAs are allegedly not compliant with Puerto Rico law.  Windmar is wrong as a

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

[3] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Notices.

matter of Puerto Rico law, but even if this were true, it would not preclude assumption of the PPOAs. Moreover, the PPOAs have been approved by Puerto Rico's energy regulator, the Puerto Rico Energy Bureau ("PREB"), and it is clear that Windmar's objection is simply an attempt to overturn PREB's prior approval.

3.       Finally, Windmar has not alleged any form of injury or interest in the assumption of the PPOAs that would afford it standing in this proceeding. Windmar is not a party to the PPOAs, and has not asserted how the assumption of the PPOAs will effect it in any way. Its bald, and erroneous, assertion the PPOAs cannot be assumed because they violate Puerto Rico law is, at best, a mere allegation of a generalized harm that would be widely shared by the people of Puerto Rico and not by Windmar specifically, and thus Windmar lacks standing under this Court's precedent.[4]

4.       For the foregoing reasons, more fully discussed below, the Court should overrule Windmar's objection and approve PREPA's assumption of the PPOAs.

## LEGAL STANDARD

5.       Under Bankruptcy Code section 365(a), a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a); PROMESA § 301 (incorporating 11 U.S.C. § 365). Section 365 of the Bankruptcy Code is intended to enable a debtor to "force others to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so" to "make[] the debtor's rehabilitation more likely." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir. 1985) (*per curiam*). It is expected that "if anyone objects to the debtor's assumption of the contract it will be the other

---

[4] *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 2021 WL 2071094, *4 (D.P.R. 2021) (discussed below).

party to the executory contract, not the debtor's creditors who are strangers to the transaction." *Id.* at 1310–11.

6.     In considering a motion to assume an executory contract under section 365(a), a court sits as an "overseer of wisdom" to ensure proper management of the debtor's estate, "and not, as it does in other circumstances, as the arbiter of disputes between creditors and the estate." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 9 F.4th 1, 9 (1st Cir. 2021) (quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir. 1993)).  Accordingly, a motion to assume an executory contract "should be considered a summary proceeding," and "the only issue properly before a court is whether the assumption or rejection of the subject contract is based upon a debtor's business judgment." *In re BankVest Capital Corp.*, 290 B.R. 443, 447–48 (B.A.P. 1st Cir. 2003), *aff'd*, 360 F.3d 291 (1st Cir. 2004).

7.     Under this standard, "a debtor must simply put forth a showing that assumption or rejection of the executory contract or unexpired lease will benefit the Debtor's estate." *In re Vent Alarm Corp.*, No. 15-09316-MCF11, 2016 WL 1599599, at *3 (Bankr. D.P.R. Apr. 18, 2016). "A court will generally not second-guess a debtor's business judgment regarding whether the assumption or rejection of a contract will benefit the debtor's estate." *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 463 (Bankr. S.D.N.Y. 2014).  Significantly, the "scope of [a court's] inquiry regarding the business judgment standard . . . does not include an evaluation of whether the Debtors made the best or even a good business decision but merely that the decision was made in an exercise of the Debtors' business judgment." *In re Old Carco LLC*, 406 B.R. 180, 196 (Bankr. S.D.N.Y. 2009); *see also In re Fin. Oversight & Mgmt. Bd. for P.R.*, 618 B.R. 349, 361 (D.P.R. 2020) ("A debtor's decision to reject an executory contract must be summarily affirmed

unless it is the product of 'bad faith, or whim or caprice.'") (*In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001)).

8.      Such considerations are amplified in Title III, where the Oversight Board's governmental discretion is afforded deference beyond considerations such as returns for creditors,[5] and the Court's ability to interfere with the debtor's property is limited.  *See* PROMESA § 305.

## ARGUMENT

### A.      The PPOAs will benefit PREPA

9.      The assumption by PREPA of the PPOAs will benefit PREPA through (i) the economic benefits to PREPA of the PPOAs as amended, particularly as compared with the prior terms, and (ii) the procurement of renewable energy to support the supply of power to customers and meet the Renewable Energy Portfolio target earlier than it otherwise could.

10.      PREPA bears the responsibility to supply and secure reliable electric power to ratepayers in Puerto Rico at the most affordable rates available, while contributing to the general welfare and sustainable future of the people of Puerto Rico, maximizing benefits and minimizing social, environmental, and economic impacts.  It is also responsible for carrying out the energy policy established by the Government of Puerto Rico and the Oversight Board pursuant to PROMESA.  Act 17-2019,[6] one of the key pillars of Puerto Rico's energy policy, requires that 40% of the energy production in Puerto Rico come from renewable sources by 2025 (the "Renewable Energy Portfolio").

11.      The PPOAs are both amended agreements that were renegotiated to reduce the price

---

[5] *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17 BK 3283-LTS, 2020 WL 114518, at *3 (D.P.R. Jan. 7, 2020), *aff'd*, 954 F.3d 1 (1st Cir. 2020) ("The Oversight Board has been given the responsibility of balancing and prioritizing the relevant issues and concerns in developing fiscal arrangements and plans of adjustment, and it is entitled to a measure of deference in carrying out this responsibility.").

[6] Puerto Rico Energy Public Policy Act, Act No. 17 of April 11, 2019, 22 L.P.R.A. §§ 1141-1141f ("Act 17").

per kilowatt-hour (kWh) of energy to be provided under the agreements. *See* CIRO Notice at ¶¶2–3; Xzerta Notice at ¶¶2–3.  The amended terms of the PPOAs provide improved terms for PREPA that allow PREPA to provide the Commonwealth with renewable energy at sustainable rates.

12.     Valid execution of the amendments to the PPOAs was dependent on certain approvals.  PREB issued Resolutions and Orders approving the Xzerta PPOA as amended on May 11, 2021 [7] and the CIRO PPOA as amended on December 10, 2020.[8]  In addition, the Oversight Board approved the PPOAs pursuant to its Contract Review Policy[9] on March 1, 2021.[10]

13.     The reduced rates under the PPOAs as amended provide clear benefits to PREPA and its ratepayers through savings on the cost of power as compared to the original PPOAs, and the added renewable energy generation advances compliance with PREPA's renewable energy goals, including the Renewable Energy Portfolio requirements.  Moreover, the counterparties to the PPOAs agree they have adequate assurance of future performance from PREPA, and there are no cure costs PREPA would be required to pay upon assumption of the PPOAs pursuant to section 365(b) of the Bankruptcy Code.

**B.     Windmar's sole objection to the PPOAs is incorrect and irrelevant to PREPA's assumption of the contracts**

14.     Windmar's "sole objection," is "the contracts, as modified, fails [*sic*] to comply

---

[7] *See* Resolution and Order entered in Case No. NEPR-AP-2021-0002, *In Re: Enmiendas a Contrato de Compraventa de Energía Renovable: Proyectos No-Operacional (Xzerta-Tec Solar I, LLC)* available at https://energia.pr.gov/wp-content/uploads/sites/7/2021/05/20210511-AP20210002-Xzerta-Resolucion-y-Orden.pdf (Last visited on Sept. 21, 2021).

[8] *See* Resolution and Order entered in Case No. NEPR-AP-2020-0008, *In Re: Enmiendas a Contratos de Compraventa de Energía Renovable: Proyectos No-Operacionales (CIRO One Salinas, LLC)* available at https://energia.pr.gov/wp-content/uploads/sites/7/2020/12/Resolucio%CC%81n-y-Orden-NEPR-AP-2020-0008-1.pdf (Last visited on Sept. 21, 2021).

[9] Contract Review, THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as amended, *available at:*  https://oversightboard.pr.gov/contract-review/ (last visited Sept. 21, 2021).

[10] Ciro One Salinas Inc; Xerta Tech Solar LLC, THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as amended, *available at:*  https://oversightboard.pr.gov/contract-review/ (last visited Sept. 21, 2021).

with Puerto Rico Laws."  That has no bearing on whether assumption of the PPOAs satisfies the standard for assumption under section 365(a).  Objection at ¶5.  Windmar contends that bundling the price of energy sold under the PPOAs with the price of Renewable Energy Certificates ("RECs") also supplied under the PPOAs, into a single price for both, violates Puerto Rico Law by destroying the independence of the RECs, and that contracts must segregate the energy price from the REC price.   Objection at ¶7.

15.    Windmar draws this contention solely from a definition.  Law 17 of 2019, section 4.1(8), defines Renewable Energy Certificate:

> "Renewable Energy Certificate or REC" - means a personal property that constitutes a tradeable and negotiable asset or commodity that may be purchased, sold, assigned, and transferred between persons for any lawful purpose, which is integrally and inseparably equal to one (1) megawatt-hour (mwh) of electricity generated from a sustainable renewable energy source or alternative renewable energy source in Puerto Rico (issued and registered pursuant to this Act) and, in turn, represents all environmental and social attributes, as defined in this Act."

16.    Windmar's argument fails for two reasons. *First*, the law cited by Windmar does not require the price of a REC to be explicitly stated in renewable energy contracts or separated from the cost of power.   Contracts often bundle assets or services to be provided without distinguishing the amount of the total price attributable to each individual component.  Moreover, bundling property (here, energy and RECs) together in this manner does not destroy the individual value or nature of each specific piece of property.  Windmar does not cite any provision of Puerto Rico law to the contrary.

17.    The PPOAs require PREPA to make a monthly payment that includes several different components.  One component is the rate applied to (i) energy produced or that could have been produced during a billing period and (ii) renewable energy certificates (the "Contract Rate").  *See* CIRO Notice at ¶3 ("The CIRO PPOA, as amended, now includes the sale of both renewable

8

energy and renewable energy certificates, at a cost of $ 0.0989/kWh."); Xzerta Notice at ¶3 ("The
Xzerta PPOA, as amended, now includes the sale of both renewable energy and renewable energy
certificates, at a cost of $ 0.099 / kWh").  The Contract Rate covers the sale of both renewable
energy and renewable energy certificates.  The monthly payment, and through it the Contract Rate,
is an all-in payment for production under the PPOAs, including ancillary services, RECs, and the
costs to the PPOA counterparties of complying with the PPOA.  In other words, PREPA is paying
CIRO and Xzerta for RECs.  That the exact cost of this component is not separately expressed in
the PPOAs does not change this fact.  At bottom, Windmar fails to cite any provision of Puerto
Rico law or regulation that would require RECs to be priced or sold separately from renewable
power under these or any other PPOAs.

18.     *Second*, even assuming Windmar's interpretation of Puerto Rico law were correct,
the PPOAs' compliance with nonbankruptcy law is irrelevant to consideration of a debtor's
assumption of a contract.  As the First Circuit recently held, "a corporation may adopt a potentially
invalid contract if, in the exercise of business judgment, it determines that the benefits of the
contract outweigh the risk that the contract will later be found unenforceable."  *In re Fin. Oversight
& Mgmt. Bd. for P.R.*, 9 F.4th 1, 16 (1st Cir. 2021).  Moreover, a court's ruling on a motion to
assume is "[i]n no way ... a formal ruling" on legal issues related to the contracts."  *Id.* at 9 (quoting
*In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir. 1993)).

19.     PREB is the regulatory entity in charge of regulating, supervising, and ensuring
compliance and implementation of the public energy policy in Puerto Rico, and has reviewed and
approved both PPOAs.[11]  The Objection is nothing more than an attempt to challenge the findings
of PREB, and a contract assumption proceeding is neither the appropriate forum nor process for

---

[11] Puerto Rico Energy Transformation and RELIEF Act, Act 57-2014, 22 L.P.R.A. § 1054(b).

such a challenge.

### C.   Windmar lacks standing to object to PREPA's assumption of the PPOAs

20.     Windmar objects to assumption of the PPOAs without even attempting to show the assumption of the PPOAs would cause it any kind of harm, pecuniary or otherwise, sufficient to afford it standing.   Windmar is a competitor self-appointing itself to act as a private attorney general.

21.     Bankruptcy Code section 1109(b) provides "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."   A "'party in interest,'" however, does not mean "'anyone who might be affected by the bankruptcy proceedings'; rather, a party in interest is one who has a '*legally protected interest* that could be affected by a bankruptcy proceeding.'"   *In re Tower Park Properties, LLC*, 803 F.3d 450, 457 (9th Cir. 2015) (quoting *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992)) (emphasis added); *see also In re Global Indus. Techs.*, 645 F.3d 201, 210 (3d Cir. 2011).   Thus, an entity "that may suffer collateral damage" (here, from competition) but does not have a legally protected interest does not have standing under § 1109(b).   *In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014).

22.     Moreover, "the right to raise an issue and to appear and be heard is not the same as standing."   *In re Sw. Equip. Rental*, 152 B.R. 207, 209 (Bankr. E.D. Tenn. 1992).   According to Collier, "only a party who is aggrieved has standing to object to the assumption" of a contract under section 365(a).   *3 Collier on Bankruptcy* ¶ 365.03.   As Judge Posner recognized in *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992):

> [W]e do not think that [section 1109] was intended to waive other limitations on standing, such as that the claimant be within the class of intended beneficiaries of the statute that he is relying on for his claim, although a literal reading of section 1109(b)

would support such an interpretation. We think all the section means is that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains, thus making explicit what is implicit in an *in rem* proceeding—that everyone with a claim to the *res* has a right to be heard before the *res* is disposed of since that disposition will extinguish all such claims. *Cf.* 5 *Collier on Bankruptcy* ¶ 1109.02, at pp. 1109–16 to 1109–32 (Lawrence P. King ed., 15th ed. 1991); *United States v. Tit's Cocktail Lounge,* 873 F.2d 141, 143 (7th Cir.1989) (per curiam)…

23.    In that case, a creditor attempted to enforce a rule in section 365(d)(1) that gives a debtor a fixed amount of days to assume a nonresidential lease, otherwise the lease would be considered rejected.  The Seventh Circuit denied the motion, holding that "we find it very difficult to see who might be an intended beneficiary of this provision other than the lessor, and we therefore side with the First Circuit[12] . . . . If as here the lessor is content to allow the lease to continue, no other creditors suffer a harm of the kind that the provision was intended to head off."  *Id*.

24.    To demonstrate standing, prudential concerns require a party to show its claim "is premised on his own legal rights (as opposed to those of a third party), that his claim is not merely a generalized grievance, and that it falls within the zone of interests protected by the law invoked." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 2021 WL 2071094, *4 (D.P.R. 2021) (quoting *Pagan v. Calder*on, 448 F.3d 16, 27 (1st Cir. 2006)) (rejecting on standing grounds plaintiffs' attempt to nullify the LUMA operation and maintenance agreement as violative of Puerto Rico and federal law).  This Court has explained "[a] 'generalized grievance' that alleges an injury which is shared in substantially equal measure by all or a large class of citizens, does not justify the exercise of the court's jurisdiction.   Injuries that are too 'widely shared' or are 'comparable to the common concern for obedience to law' may fall into the category of generalized grievances about the

---

[12] The First Circuit case the Seventh Circuit sided with is *In re Dein Host, Inc*., 835 F.2d 402 (1st Cir. 1987).  There, a shareholder of the lessor attempted to object to the assumption of the lease on the basis that the time to assume the least had expired.  The First Circuit ruled that the shareholder was not a "person aggrieved" by bankruptcy court's order to assume the lease because his injury is "indirect."  *Id.* at 405.

conduct of government." *Id.*  Any other ruling would be impracticable because Windmar does not speak for the class of citizens.  It only speaks for itself, and even there identifies no personal injury.

25.    These cases demonstrate section 1109(b) status alone is insufficient to confer standing.  Windmar must make some showing as to how it is aggrieved by the assumption and what, if anything, its interest is in the *res* affected by assumption of the PPOAs.  Moreover, simply asserting the PPOAs allegedly violate Puerto Rico law raises only a generalized grievance regarding concern for the law insufficient to confer standing.  Without a showing of a concrete harm, Windmar has no standing to oppose the assumption of the PPOAs.  Indeed, all the other residents of Puerto Rico may disagree with Windmar.

26.    To the extent Windmar's objection is animated by its concern for the future of solar energy development, or as a competitor to Xzerta and CIRO, such motives are insufficient to confer it standing to object.  *See In re ANC Rental Corp., Inc*., 277 B.R. 226, 229 (Bankr. D. Del. 2002) (holding Avis and Hertz did not have standing to object to an assumption motion by National and Alamo because they were not asserting injury based on a contractual relationship with the debtor, but were merely asserting grievances as competitors in the same industry.).

### <u>CONCLUSION</u>

27.    For the reasons set forth herein and the Notices, the Objections should be overruled and the Proposed Orders should be entered.


*[Remainder of Page Intentionally Left Blank]*

WHEREFORE PREPA respectfully requests the Court (1) to overrule the Objection and

(2) to enter the Proposed Order (a) approving assumption of the Xzerta and CIRO PPOAs, and (b)

granting PREPA such other and further relief as is just.


Dated:  September 29, 2021                                    Respectfully submitted,
        San Juan, Puerto Rico


**LUIS F. DEL VALLE-EMMANUELLI**                             /s/  *Martin J. Bienenstock*
                                                             Martin J. Bienenstock
/s/ *Luis F. del Valle-Emmanuelli*                           Paul V. Possinger
Luis F. del Valle-Emmanuelli                                 Ehud Barak
USDC-PR No. 209514                                           Daniel S. Desatnik
P.O. Box 79897                                               (Admitted *Pro Hac Vice*)
Carolina, Puerto Rico 00984-9897                             **PROSKAUER ROSE LLP**
Tel. 787.647.3503                                            Eleven Times Square
Fax N/A                                                      New York, NY 10036
dvelawoffices@gmail.com                                      Tel: (212) 969-3000
                                                             Fax: (212) 969-2900
OF COUNSEL FOR                                               Email: mbienenstock@proskauer.com
A&S LEGAL STUDIO, PSC                                               ppossinger@proskauer.com
434 Avenida Hostos                                                 ebarak@proskauer.com
San Juan, PR 00918                                                 ddesatnik@proskauer.com
Tel. (787) 751-6764/763-0565
Fax (787) 763-8260                                           *Attorneys for the Financial*
                                                             *Oversight and Management Board*
                                                             *as representative for PREPA*


*Attorney for the Financial Oversight and*
*Management Board as representative of PREPA*


13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

<u>/s/ *Luis F. del Valle-Emmanuelli*</u>
Luis F. del Valle-Emmanuelli