# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>                         Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>                         Movant,<br><br>v.<br><br>AMERINATIONAL COMMUNITY SERVICES, LLC, as servicer for the GDB Debt Recovery Authority, and CANTOR-KATZ COLLATERAL MONITOR LLC<br><br>                         Respondents. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEBTORS' MOTION *IN LIMINE* FOR ORDER EXCLUDING EXPERT TESTIMONY OF LIZETTE MARTINEZ

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .................................................................................................................4

    A.    HTA, the DRA Loans, and Acts 30 and 31 ..........................................................4

    B.    The Plan and the Martinez Report ........................................................................7

JURISDICTION AND VENUE ...........................................................................................8

RELIEF REQUESTED .........................................................................................................8

ARGUMENT .......................................................................................................................8

    A.    Testimony Relating to the Commonwealth's Retention of Act 30-31
        Revenues is Irrelevant to Confirmation. The DRA Parties' Purported Lien
        Against the Act 30-31 Revenues and Claim Against the Commonwealth Is
        the Subject of a Separate Adversary Proceeding. ................................................10

    B.    Testimony Relating to the Commonwealth's Retention of Act 30-31
        Revenues is Irrelevant, Because the DRA Parties have no Valid Lien
        Against the Act 30-31 Revenues or Claim Against the Commonwealth..............11

    C.    Testimony Relating to the Commonwealth's Retention of Act 30-31
        Revenues is Irrelevant, Because the Act 30-31 Excise Tax Statutes Have
        Been Preempted by PROMESA ..........................................................................14

    D.    Testimony Relating to HTA's "Potential Uses" of the Collections of Act
        30-31 Revenues Purportedly Transferred to HTA Is Irrelevant to Whether
        the Commonwealth Plan Should be Confirmed....................................................15

NOTICE...............................................................................................................................16

CONCLUSION.....................................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*American Mercantile Exchange v. Blunt*,
  102 Me. 128 (Me. 1906) ........................................................................................14

*Arizona v. United States*,
  567 U.S. 387 (2012)............................................................................................15

*Arkison v. Frontier Asset Mgmt., LLC (In re Skagit Pac. Corp.)*,
  316 B.R. 330 (B.A.P. 9th Cir. 2004).....................................................................12

*Bradley v. Sugarbaker*,
  809 F.3d 8 (1st Cir. 2015).................................................................................8, 9

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)..........................................................................................8, 9

*Financial Oversight & Mgmt. Bd. for Puerto Rico v. Andalusian Glob.
  Designated Activity Company (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
  948 F.3d 457 (1st Cir. 2020),
  *cert. denied*, 141 S. Ct. 844 (2020) ......................................................................12

*In re Fin. Oversight & Mgmt. Bd.*,
  478 F. Supp. 3d 190 (D.P.R. 2020).......................................................................11

*In re Fin. Oversight & Mgmt. Bd.*,
  618 B.R. 619 (D.P.R. 2020)............................................................................11, 12

*Kenney v. Head*,
  670 F.3d 354 (1st Cir. 2012)..................................................................................9

*Pages-Ramirez v. Ramirez-Gonzales*,
  605 F.3d 109 (1st Cir. 2010)..................................................................................9

*Parent v. Teamsters Local 677 Health Servs. & Ins. Fund*,
  155 B.R. 310 (Bankr. D. Conn. 1993) ...................................................................14

*Plaza-Torres v. Rey*,
  2006 WL 6884391 (D.P.R. Apr. 21, 2006)..............................................................9

*Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*,
  161 F.3d 77 (1st Cir. 1998)....................................................................................9

*United States use of Caldwell Foundry & Machine Co. v. Texas Constr. Co.*,
224 F.2d 289 (5th Cir. 1955) ................................................................................................13

**STATUTES**

7 L.P.R.A. § 3171 ..............................................................................................................5

9 L.P.R.A. §§ 2001-2035 ...................................................................................................5

9 L.P.R.A § 2002 ................................................................................................................5

9 L.P.R.A. § 2004 ...........................................................................................................5, 11

9 L.P.R.A. § 2015 ..............................................................................................................5

9 L.P.R.A. § 5681 ..........................................................................................................6, 13

13 L.P.R.A. § 31751 ......................................................................................................6, 13

11 U.S.C. § 1129 .............................................................................................................13

28 U.S.C. § 1391 ..............................................................................................................8

48 U.S.C. §§ 2101–2241 ...................................................................................................1

PROMESA § 4 ...............................................................................................................3, 14

PROMESA § 101 .............................................................................................................15

PROMESA § 106 ..............................................................................................................8

PROMESA § 202 ...........................................................................................................3, 14

PROMESA § 306 ..............................................................................................................8

PROMESA § 307 ..............................................................................................................8

**OTHER AUTHORITIES**

Fed. R. Evid. 104 ...........................................................................................................8, 9

Fed. R. Evid. 401 ..............................................................................4, 8, 9, 10, 14, 16

Fed. R. Evid. 402 .................................................................................4, 8, 9, 14, 16

Fed R. Evid. 702 .................................................................................4, 8, 9, 14, 16

P.R. Const. art. VI, § 8 ......................................................................................................6

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of Debtors the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Public Buildings Authority ("PBA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the Commonwealth and PBA, the "Debtors"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] hereby submits this memorandum of law in support of Debtors' *Motion In Limine for an Order Excluding Expert Testimony of Lizette Martinez* filed concurrently herewith (together with this Memorandum "the "Motion").

## PRELIMINARY STATEMENT

1.      The Oversight Board is seeking confirmation of a joint plan of adjustment for the Commonwealth, ERS and PBA.[2]  To confirm the Plan, the Court must determine it satisfies the confirmation requirements set forth in PROMESA § 314(b) and the sections of the Bankruptcy Code incorporated in PROMESA by PROMESA § 301(a).  The confirmation standards do not require any evidence regarding how another Title III debtor (the Puerto Rico Highways and Transportation Authority ("HTA")), which has not filed a plan of adjustment, spent money historically transferred to it.  Nor do they require evidence of the amount of revenues collected and retained by the Commonwealth that are not subject to a security interest.  Indeed, such evidence is wholly immaterial and irrelevant.

2.      Notwithstanding this indisputable principle, AmeriNational Community Services, LLC (the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-

---

[1]  PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[2]  The Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. [ECF No. 17627] (as it may be amended, modified, or supplemented, the "Plan").

Katz Collateral Monitor LLC, a Delaware limited liability company (the "Collateral Monitor," and together with the Servicer, collectively, the "DRA Parties") announced their intention to present precisely such irrelevant evidence in support of their forthcoming confirmation objection, even though the confirmation hearing is not a hearing on the allowability of their claim, an issue which is being litigated separately. Specifically, on September 13, 2021, the DRA Parties served the *Expert Report of Lizette Martinez* (the "Martinez Report") in which Ms. Martinez purports to (i) trace the amounts of Act 30-31 Revenues[3] either collected and retained by the Commonwealth or collected by the Commonwealth and transferred to HTA since 2016, and (ii) analyze how HTA allegedly used the amounts it purportedly received.

3.    At confirmation, the Court only needs to determine whether the DRA Parties' claims are treated in a confirmable manner if the claims are ultimately allowed. Ms. Martinez's testimony is irrelevant to that issue, and should therefore be excluded. To the extent that, pursuant to paragraph 5 of the Court's July 27, 2021 *Order on Joint Status Report* [ECF No. 17529], or for other reasons, the Court considers the allowability of any of the DRA Parties' secured or unsecured claims at the confirmation hearing, the Martinez Report, and any testimony by Ms. Martinez, should be barred because the claims cannot be allowed for several independently sufficient reasons that render the Martinez Report immaterial and irrelevant.

4.    Fundamentally, Ms. Martinez's testimony is irrelevant because the DRA Parties have no security interest against Act 30-31 Revenues collected and retained by the Commonwealth. Their own security agreement is signed by HTA, not the Commonwealth. On this basis alone, evidence concerning what the Commonwealth may have done with its collections is irrelevant. Moreover, evidence relating to how HTA may have used collections of Act 30-31

---

[3]   All capitalized terms not defined herein have the meaning ascribed to them below.

Revenues purportedly transferred to it can have no bearing on whether a Plan *that does not adjust HTA's debts* should be confirmed. The Plan the Oversight Board is asking the Court to confirm does not resolve (or otherwise affect) claims against HTA.

5.    Specifically, as the Oversight Board argued in detail in its motion to dismiss the DRA Parties' adversary complaint [Case No. 21-68-LTS, ECF No. 40] (the "Motion to Dismiss"), the DRA Parties were not and could not be granted by HTA a security interest against Act 30-31 Revenues collected by the Commonwealth and not transferred to HTA. The only party that granted the DRA Parties a security interest is HTA. The Commonwealth is not a party to any security agreement with the DRA Parties. Because HTA has no property interest in collections of Act 30-31 Revenues before they are actually transferred to HTA, HTA could not grant a security interest in them. The DRA Parties have no lien against collections of the Act 30-31 Revenues retained by the Commonwealth, and, as a result, Ms. Martinez's testimony is irrelevant and should be excluded.

6.    The doctrine of preemption further confirms HTA has no property interest in Act 30-31 revenues. *See* Motion to Dismiss at 31–38; Oversight Board's objection to the DRA Parties' motion for allowance of an administrative expense claim [Case No. 17-BK-3283-LTS, ECF No. 18065] (the "Administrative Expense Motion Objection") at 20–24. The Act 30-31 Excise Tax Statutes purport to require the transfer to HTA of Commonwealth revenues without regard to the budget certified by the Oversight Board. PROMESA § 202, however, gives the Oversight Board the sole authority to certify budgets controlling all spending of Commonwealth funds. The Act 30-31 Excise Tax Statutes are therefore inconsistent with PROMESA and preempted by it. *See* PROMESA § 4. The DRA Parties can have no claims arising from preempted statutes, and thus

3

testimony relating to the Commonwealth's purported failure to comply with the preempted appropriation provisions of the Act 30-31 Excise Tax Statutes is irrelevant and inadmissible.

7.      The final segment of the Martinez Report is dedicated to calculating how HTA "potential[ly]" may have used Act 30-31 Revenues she opines were transferred to HTA.  Martinez Report at 25–32.  Any testimony by Ms. Martinez relating to these matters is irrelevant to confirmation proceedings relating to the Plan adjusting the debts of the Commonwealth, ERS, and PBA—but *not HTA*.  Any testimony relating to HTA's use of money possessed by HTA has no bearing on confirmation of the Plan.  Ms. Martinez's proposed testimony should be excluded as irrelevant because it does not relate to facts "of consequence in determining the action"—that is, whether the Plan for the Commonwealth, ERS, and PBA should be confirmed.

8.      By this motion, the Oversight Board seeks to avoid wasting scarce resources litigating issues having no relevance to whether the Plan should be confirmed.  Confirmation proceedings relating to the Plan will involve many multifaceted and complicated issues, and both the parties and the Court will be required to devote extensive time and energy to resolve them.  To ensure confirmation proceedings proceed as efficiently as possible, and, to the extent that, pursuant to paragraph 5 of the *Order on Joint Status Report*, or for other reasons, the Court considers the allowability of any of the DRA Parties' secured or unsecured claims at the confirmation hearing, the Oversight Board respectfully requests the Court exclude this irrelevant testimony now under Federal Rules of Evidence 702, 401, and 402.

## BACKGROUND

**A.      HTA, the DRA Loans, and Acts 30 and 31**

9.      DRA is a statutory public trust and public governmental instrumentality of the Commonwealth and is independent from any other governmental entity.  It was created under the Government Development Bank for Puerto Rico Debt Restructuring Act, to help give effect to the

4

terms of the Government Development Bank's ("GDB") PROMESA Title VI restructuring. 7 L.P.R.A. § 3171.  GDB's claims against HTA were transferred to the DRA Parties pursuant to GDB's Title VI restructuring.

10.     HTA is a public corporation established pursuant to Act No. 74-1965, which is codified as 9 L.P.R.A. §§ 2001-2035 (the "HTA Enabling Act").  HTA is separate from the Commonwealth. 9 L.P.R.A. § 2015. HTA is responsible for the construction, operation, and maintenance of the Commonwealth's transportation system. 9 L.P.R.A § 2002. The HTA Enabling Act authorizes HTA to issue bonds and to secure their repayment by granting a security interest in certain property "made available" to HTA. 9 L.P.R.A. § 2004(l).

11.     The DRA Parties allege that between March 2008 and January 2014, GDB extended loans to HTA pursuant to 15 loan agreements, which loans were memorialized by 23 promissory notes (the "Loan Claims"). *See* Case No. 21-00068-LTS, ECF No. 1 ("DRA Complaint"), ¶ 48. The Loan Claims are payable from "any available moneys and resources of HTA," including the "incremental revenues implemented through Acts 30 and 31 and allocated to HTA . . . ." (the "Act 30-31 Revenues").  DRA Complaint ¶ 46.  Act 30 is "Act No. 30-2013" and Act 31 is "Act 31-2013."  DRA Complaint ¶¶ 40, 49.

12.     Act 30 amended Section 23.01 of Act No. 22-2000 to remove a $15 "cap" on vehicle license fees the Commonwealth would "cover[] into" a special deposit for the benefit of HTA. DRA Complaint ¶¶ 42, 43.  Act 31 amended Section 3060.11 of Act No 1-2011 by removing a previously existing cap on excise taxes collected on crude oil, and partially finished and finished oil by-products and any other hydrocarbon mixture, which excise taxes the Commonwealth conditionally appropriated to HTA and "covered into" a special deposit in favor of HTA.  DRA Complaint ¶¶ 44, 45.  Act 31 also conditionally appropriated $20 million per year in cigarette

5

excise taxes to HTA, which funds were to be covered into a special deposit in favor of HTA. DRA Complaint ¶ 45.

13.     Act 30, codified by a modification to 9 L.P.R.A. § 5681, increased the amount of vehicle license fees conditionally appropriated to HTA for HTA's corporate purposes.  DRA Complaint ¶¶ 40, 43.   Act 31 was codified through (i) modifications to 13 L.P.R.A. § 31751(a)(1)(C) to remove the cap on petroleum excise taxes conditionally appropriated to HTA for its corporate purposes, and (ii) the addition of § 31751(a)(3)(C) to appropriate $20 million per year in cigarette taxes to HTA for its corporate purposes (*see* DRA Complaint ¶¶ 40, 45) (9 L.P.R.A. § 5681 and 13 L.P.R.A.  §§ 31751(a)(1)(C), 31751(a)(3)(C) are collectively referred to as the "Act 30-31 Excise Tax Statutes").

14.     Act 30-31 Revenues are expressly subject to retention by the Commonwealth under Section 8 of Article VI of the Puerto Rico Constitution and are "available resources" of the Commonwealth. *See* 9 L.P.R.A. § 5681 and 13 L.P.R.A. §§ 31751(a)(1)(C), 31751(a)(3)(C).

15.     The DRA Parties allege that, on August 28, 2013, GDB and HTA executed a security agreement by which HTA assigned as security to GDB, HTA's "rights, title, obligations and interest in" Act 30-31 Revenues (the "Security Agreement"). *See* DRA Complaint ¶ 50; Case No. 21-68-LTS, ECF No. 1-6 (Security Agreement at 1.1 at pp. 1-2).  Section 1.2 of the Security Agreement assigns, pledges and grants "a continuing security interest, which shall be junior, inferior and subordinate in all respects to the outstanding bonds of [HTA] issued pursuant to the Bond Resolutions, in all of the right, title and interest of [HTA] in the revenues allocated to it by Acts No. 30-2013 & 31-2013 approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013, whether presently held or hereafter acquired and wherever located . . . ." *Id*. The DRA Parties refuse to acknowledge that HTA could not pledge an interest it did not own, and it

6

does not own any interests in the Act 30-31 Revenues until the Commonwealth transfers (covers over) the revenues to HTA.

16.     On May 21, 2017, the Oversight Board filed a petition for relief under PROMESA Title III for HTA.   The Oversight Board has not filed a plan of adjustment for HTA.

### B.     The Plan and the Martinez Report

17.     In July 2021, the Oversight Board proposed the Plan to adjust the Debtors' debts. ECF No. 17627.

18.     This Court has scheduled the confirmation hearing with respect to the Plan to start on November 8, 2021.  *See* ECF No. 17640 (the "Confirmation Discovery Procedures Order"). Pursuant to the Confirmation Discovery Procedures Order, parties intending to rely upon expert reports were required to serve them by September 13, 2021.  *Id.* at 3.  Any motions *in limine* must be filed by no later than September 30, 2021.   *Id*. at 3.  On September 13, 2021, the DRA Parties served the Oversight Board with the Martinez Report.   Ms. Lizette Martinez was retained to analyze certain financial and accounting issues related to the DRA Parties' claims to certain revenues collected by the Commonwealth.  *See* Martinez Report at 1.  The Martinez Report contains various calculations and conclusions as to the amount of Act 30-31 Revenues collected by the Commonwealth, and whether the Commonwealth retained those revenues or transferred them to HTA.  Martinez Report at 5–25.  The Martinez Report also calculates HTA's "potential uses" of the Act 30-31 Revenues purportedly transferred to HTA during certain periods of time. Martinez Report at 25–32.

19.     Pursuant to the July 27, 2021 *Order on Joint Status Report* [ECF No. 17529], two potentially dispositive motions—the Motion to Dismiss and the  Administrative Expense Motion Objection will be fully briefed by October 8, 2021—after the deadline for filing motions *in limine*. The Oversight Board submits this motion *in limine* to request that, to the extent that, pursuant to

paragraph 5 of the *Order on Joint Status Report*, or for other reasons, the Court considers the

allowability of any of the DRA Parties' secured or unsecured claims at the confirmation hearing,

the Martinez Report, and any testimony by Ms. Martinez, is precluded as immaterial and irrelevant.

## JURISDICTION AND VENUE

20.     The Court has subject-matter jurisdiction over this motion pursuant to PROMESA

§ 306(a)(1).

21.     Venue is appropriate in this District under PROMESA §§ 106(a) and 307, and 28

U.S.C. § 1391.

## RELIEF REQUESTED

22.     The Oversight Board hereby requests entry of an order pursuant Federal Rules of

Evidence 104, 401, 402 and 702 excluding the testimony of Ms. Martinez (including the Martinez

Report) as irrelevant to confirmation of the Plan.

## ARGUMENT

23.     Federal Rule of Evidence 702 governs the admission of expert testimony and

permits experts qualified by their "knowledge, skill, experience, training, or education" to testify

where their "scientific, technical, or other specialized knowledge will help the trier of fact to

understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702; *see, e.g.*, *Bradley v.

Sugarbaker*, 809 F.3d 8, 16–17 (1st Cir. 2015).  Rule 702 requires that "the testimony be (1) based

upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) that the

witness apply the principles and methods reliably to the facts of the case."  *Id.* at 17 (quotation

omitted).

24.     Under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), "when

determining the admissibility of expert testimony, 'the trial judge must determine at the outset,

pursuant to [Federal Rule of Evidence] 104(a), whether the expert is proposing to testify to (1)

scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.'" *Bradley*, 809 F.3d at 19 n.10 (quoting *Daubert*, 509 U.S. at 592).  Rule 104, in turn, requires that the court "must decide any preliminary question about whether evidence is admissible," and "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."  Fed. R. Evid. 104(a), (b).  The Court, therefore, may make preliminary factual determinations to determine relevance before admitting expert testimony under Rule 702.  *Bradley*, 809 F.3d at 19 n.10.

25.     Like all evidence, expert testimony must be relevant to warrant admission. *See* Fed. R. Evid. 402; *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) (holding expert evidence is subject to both Rule 402 *and* Rule 702's requirements); *see also, Plaza-Torres v. Rey*, 2006 WL 6884391, at *2 (D.P.R. Apr. 21, 2006) (granting motion *in limine* to exclude irrelevant expert evidence pursuant to Rule 401).  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotation and citation omitted).  Evidence is relevant only if it has "any tendency to make a fact" that is "of consequence in determining the action" "more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see Kenney v. Head*, 670 F.3d 354, 358 (1st Cir. 2012) (affirming exclusion of evidence that did not "go to a fact of consequence"); *see also Pages-Ramirez v. Ramirez-Gonzales*, 605 F.3d 109, 115 (1st Cir. 2010) (holding expert testimony must comply with requirements of Rule 401).

26.     For the reasons set forth below, any expert or other testimony offered by Ms. Martinez is inadmissible because it does not bear on any fact of consequence to confirmation of the Plan and will not assist the Court to understand or determine any fact in issue.

**A.**     **Testimony Relating to the Commonwealth's Retention of Act 30-31 Revenues is Irrelevant to Confirmation. The DRA Parties' Purported Lien Against the Act 30-31 Revenues and Claim Against the Commonwealth Is the Subject of a Separate Adversary Proceeding.**

27.     The Martinez Report, which frames the issues about which Ms. Martinez will offer expert testimony, dedicates most of its discussion to a calculation of the amount of Act 30-31 Revenues collected by the Commonwealth, and the amount of those revenues purportedly transferred to HTA in the period beginning December 1, 2015 and ending June 30, 2020.  *See* Martinez Report 5–25.  The Martinez Report concludes that, between December 1, 2015 and June 30, 2020, the Commonwealth collected $1,012.5 million in Act 30-31 Revenues, and that HTA received $711.4 million of those revenues, with the Commonwealth retaining $301.1 million.  *Id.* at 6.  The Martinez Report goes on to (i) calculate the amounts collected and transferred during specific periods of time, (ii) resolve apparent inconsistencies between different documents relied on in the report, and (iii) explain the calculations and methodologies used to generate those numbers.  Martinez Report at 7–25.

28.     Any testimony of Ms. Martinez relating to these issues should be excluded because it is irrelevant.  Specifically, testimony relating to the Commonwealth's collection of Act 30-31 Revenues, or their transfer to HTA or retention does not pertain to any fact "of consequence in determining the action." Fed. R. Evid. 401(b).  The allowability of the DRA Parties' purported liens and claims against the Commonwealth is the subject of a separate adversary proceeding—it is not the proper subject of Plan confirmation proceedings.  At the confirmation hearing, the Court only needs to determine whether the DRA Parties' claims and liens—assuming they are ultimately allowed by the Court—are treated in a confirmable manner by the Plan.  The testimony of Ms. Martinez has no possible bearing on this issue.  As a result, it is irrelevant to Plan confirmation proceedings and should be excluded under Fed. R. Evid. 401(b).

**B. Testimony Relating to the Commonwealth's Retention of Act 30-31 Revenues is Irrelevant, Because the DRA Parties have no Valid Lien Against the Act 30-31 Revenues or Claim Against the Commonwealth**

29.     Ms. Martinez's proposed testimony is also irrelevant because, even if the Court were to determine the allowability of the DRA Parties' claims at confirmation, as the Oversight Board argued in detail in an adversary proceeding,[4] the DRA Parties do not have any security interest against Act 30-31 Revenues or amounts collected and retained by the Commonwealth. *See* Motion to Dismiss at 12–31.  Most fundamentally, the Commonwealth has not executed any security agreement or other document purporting to grant the DRA Parties a security interest in Commonwealth revenues.  Motion to Dismiss at 12–13.  The only party that granted a security interest to the DRA Parties was HTA, but HTA can only grant a security interest in collections of Act 30-31 Revenues actually transferred to it.  Motion to Dismiss at 13.  As this Court has determined already twice before, the Act 30-31 Excise Tax Statutes simply provide for the conditional appropriation of collections made pursuant to Act 30-31 Excise Tax Statutes to HTA, and they do not give HTA any property interest in the collections of Act 30-31 Revenues until those amounts are actually transferred to HTA.  *See In re Fin. Oversight & Mgmt. Bd.*, 478 F. Supp. 3d 190, 195–96 (D.P.R. 2020); *In re Fin. Oversight & Mgmt. Bd.*, 618 B.R. 619, 634–35 (D.P.R. 2020); Motion to Dismiss at 13-21.  HTA therefore could not have granted a security interest in the collections of Act 30-31 Revenues retained by the Commonwealth.  And, indeed, HTA's Enabling Act only allows HTA to grant a security interest in Act 30-31 Revenues actually "made available" to HTA by the Commonwealth.  *See* 9 L.P.R.A. § 2004(l); Motion to Dismiss 21–23.  As this Court has already determined, Act 30-31 Revenues retained by the Commonwealth

---

[4]  To avoid needlessly overburdening the Court by repeating arguments in full in this Motion that the Oversight Board made elsewhere, the Oversight Board incorporates by reference its Motion to Dismiss and the arguments contained therein as if they were set forth herein.  Similarly, the Oversight Board incorporates by reference the Administrative Expense Motion Objection.  Administrative Expense Motion Objection at 20–24.

have not been "made available" to HTA, and thus cannot be pledged by HTA. *In re Fin. Oversight & Mgmt. Bd.*, 618 B.R. at 634–35. HTA therefore could not have granted a security interest in Commonwealth revenues to the DRA Parties.

30.     Moreover, even if HTA could have granted a security interest in Act 30-31 Revenues collected and retained by the Commonwealth, the Security Agreement did not do so, as it limited any security interest to revenues "held" or "acquired" by HTA—which does not include Act 30-31 Revenues or amounts collected and not transferred to HTA. *See* Motion to Dismiss at 23–24; Security Agreement § 1.2. Furthermore, the DRA Parties do not have any control of the Commonwealth's deposit accounts, and thus any security interest would be unperfected and unenforceable. *See* Motion to Dismiss at 24–25.[5]

31.     As a matter of law, therefore, the DRA Parties do not have any security interest in Act 30-31 Revenues collected and retained by the Commonwealth. Given the DRA Parties' lack of rights to the Act 30-31 Revenues possessed by the Commonwealth, testimony pertaining to the Commonwealth's transfer or retention of the collections of those revenues has no bearing on any objection of the DRA Parties to confirmation of the Plan. The Commonwealth could have retained all the Act 30-31 Revenues it collected, or transferred them all to HTA, but either way the DRA

---

[5]  Moreover, the DRA Parties cannot possess a security interest in any Act 30-31 Revenues that have not yet been collected, or that were collected postpetition. This is because postpetition (including as yet uncollected) Act 30-31 Revenues are not proceeds of property that existed prepetition. Until collected, Act 30-31 Revenues are predicated on variable and contingent fuel purchases and licensing of vehicles, which are simply expectancies that may never occur. *See Financial Oversight & Mgmt. Bd. for Puerto Rico v. Andalusian Glob. Designated Activity Company (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 948 F.3d 457, 468-69 (1st Cir. 2020), *cert. denied*, 141 S. Ct. 844 (2020) (holding future employers' contributions to the retirement system based on future employee labor, not determinable until the labor was performed, were "merely an expectancy". An expectancy is not a property right to which a security interest can attach, or that could produce postposition proceeds. *Id.* Act 30-31 Revenues collected postpetition were neither due and owing nor calculable prepetition, and "not payable until they are determined postpetition," and they are not "proceeds" of prepetition property. *Id.* at 470. Indeed, legions of cases hold postpetition payments not generated until after the petition date are not proceeds of prepetition property. *See* Motion to Dismiss ¶¶ 57–58; *see also Arkison v. Frontier Asset Mgmt., LLC (In re Skagit Pac. Corp.)*, 316 B.R. 330, 336 (B.A.P. 9th Cir. 2004) ("[W]here it is only post-petition acts which generate an account receivable, those post-petition receivables will not be considered proceeds because there is no interest in, or connection to, the right in the account receivable created prepetition.").

Parties cannot complain, because they lack any rights in those revenues while they are at the Commonwealth or any right to contest the Commonwealth's use of those revenues.

32.     Similarly, the DRA Parties do not even have unsecured claims against the Commonwealth relating to the Commonwealth's actions in connection with the Act 30-31 Revenues.  As the Oversight Board argued elsewhere, a breach of the Act 30-31 Excise Tax Statutes would not give rise to a claim in favor of the DRA Parties—at most, such a breach could give rise to a claim in favor of HTA against the Commonwealth.  Administrative Expense Motion Objection at 15–16.  This is because the Act 30-31 Excise Tax Statutes provide simply for the transfer of the Act 30-31 Revenues collected by the Commonwealth to HTA for HTA's "corporate purposes," *see* 9 L.P.R.A. § 5681, 13 L.P.R.A. § 31751(a)(1)(C), (a)(3)(C), not to any particular creditor, and certainly not to the DRA Parties, who are not mentioned in any operative section of the Act 30-31 Excise Tax Statutes.  The Commonwealth never promised the DRA Parties anything, let alone that it would continue transferring the Act 30-31 Revenues it collected to HTA.  Thus, the DRA Parties do not have any unsecured claim against the Commonwealth relating to the Commonwealth's retention of the Act 30-31 Revenues.[6]  *See also* Administrative Expense Motion Objection at 24–34 (any claim against the Commonwealth would not be entitled to administrative expense status).[7]

---

[6]  Even if the DRA Parties did have an unsecured claim against the Commonwealth relating to the Commonwealth's retention of collections of Act 30-31 Revenues (they do not), Ms. Martinez's testimony would remain irrelevant. This is because the DRA Parties can put forward no meritorious objection to confirmation of the Plan based solely on possession of an unsecured claim against the Commonwealth. The only viable confirmation objection that could possibly be raised here is that the DRA Parties hold secured claims that are not being treated consistently with 11 U.S.C. § 1129(b). But, as discussed in the text, the DRA Parties do not have such secured claims.

[7]  Moreover, even if the Commonwealth did promise the DRA Parties it would continue transferring the Act 30-31 Revenues to HTA (it did not), that promise is unenforceable and does not give the DRA Parties a valid claim, because performance was rendered impossible by a supervening change in federal law. Specifically, when Congress enacted PROMESA, it removed the Commonwealth's ability to appropriate the Act 30-31 Revenues to HTA, rendering it impossible for the Commonwealth to comply with any promise to appropriate those funds. This change in federal law discharged the Commonwealth from any promise to appropriate those moneys to HTA. *See, e.g.*, *United States use of Caldwell Foundry & Machine Co. v. Texas Constr. Co.*, 224 F.2d 289, 292 (5th Cir. 1955) ("where the performance

33.     Any testimony of Ms. Martinez relating to the Commonwealth's retention or transfer of those funds therefore does not pertain to any fact of consequence in determining whether the Plan should be confirmed, and as a result should be excluded, due to its irrelevance, under Rules 702, 401 and 402.

### C.     Testimony Relating to the Commonwealth's Retention of Act 30-31 Revenues is Irrelevant, Because the Act 30-31 Excise Tax Statutes Have Been Preempted by PROMESA

34.     Any testimony of Ms. Martinez relating to the purported retention or transfer of the Act 30-31 Revenues collected by the Commonwealth is similarly irrelevant because, as the Oversight Board detailed elsewhere, the Act 30-31 Excise Tax Statutes are preempted by PROMESA.  *See* Motion to Dismiss at 31–38; Administrative Expense Motion Objection at 20–24.  As the Oversight Board previously explained, the Act 30-31 Excise Tax Statutes are both expressly and impliedly preempted by Titles II and III of PROMESA.  *Id.*  Under PROMESA, all power over the appropriation of Commonwealth revenues (including Act 30-31 Revenues) is conferred to the Oversight Board by requiring that any expenditures be made pursuant to an Oversight Board-certified budget. PROMESA § 202. All inconsistent Commonwealth laws are expressly preempted. *See* PROMESA § 4. As the Act 30-31 Excise Tax Statutes purport to appropriate Commonwealth revenues without regard to the Oversight Board's certified budget, they are expressly preempted by PROMESA §§ 4 and 202.  *See* Motion to Dismiss at 31, 33–35. The Act 30-31 Excise Tax Statutes are similarly preempted by Title III of PROMESA because

---

becomes impossible by a change in the law, the promisor is discharged."); *Parent v. Teamsters Local 677 Health Servs. & Ins. Fund*, 155 B.R. 310, 314 (Bankr. D. Conn. 1993) ("Performance by a party may be excused where the law intervenes to prohibit such performance."); *American Mercantile Exchange v. Blunt*, 102 Me. 128, 133 (Me. 1906) ("It is a general principle of law that where a contract is lawful when made and a law afterwards renders performance of it unlawful, neither party to the contract shall be prejudiced and the contract is to be considered at an end . . . The law . . . excuses the plaintiff from performing its contract and releases it from liability to damages for non-performance . . . .") (quotation omitted).

they would require the Commonwealth to pay 100% of the Act 30-31 Revenues it collected to HTA, effectively creating a specifically enforceable, non-dischargeable obligation against the Commonwealth in favor of HTA—contrary to the express provisions of the Bankruptcy Code incorporated into PROMESA.  Motion to Dismiss at 35.

35.    Moreover, the Act 30-31 Excise Tax Statutes are preempted because (i) it would be impossible to comply with them and also with PROMESA, and (ii) continued application of the Act 30-31 Excise Tax Statutes would undermine the Oversight Board's mission to enable Puerto Rico to regain fiscal responsibility and access to capital markets, PROMESA § 101(a), by significantly hampering the Oversight Board's ability to control the Commonwealth's spending. The Act 30-31 Excise Tax Statutes are thus preempted because they are an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *See, e.g.*, *Arizona v. United States*, 567 U.S. 387 (2012).  Motion to Dismiss at 35–36.

36.    As the Act 30-31 Excise Tax Statutes are preempted by PROMESA, any testimony relating to whether and to what extent the Commonwealth complied with the requirements of the Act 30-31 Excise Tax Statutes is irrelevant to Plan confirmation.  The DRA Parties can have no claims arising from preempted statutes, and the Commonwealth's compliance or not with statutes that are no longer in force can have no bearing on whether the Plan should be confirmed.  Ms. Martinez's proposed testimony should therefore be excluded.

D.    **Testimony Relating to HTA's "Potential Uses" of the Collections of Act 30-31 Revenues Purportedly Transferred to HTA Is Irrelevant to Whether the Commonwealth Plan Should be Confirmed**

37.    Finally, the Martinez Report contains various hypotheses on HTA's "potential" use of funds received by it from the Commonwealth.  Martinez Report at 25–32.  The DRA parties seemingly propose to introduce testimony by Ms. Martinez on these issues in an attempt to show HTA misused the funds the Commonwealth purportedly transferred to it.   This testimony,

however, is also irrelevant to the present contested matter.  As discussed above, the Plan does not

deal with HTA's debt—it only relates to the Commonwealth, ERS and PBA.  Testimony relating

to HTA's "potential" uses of certain funds has no bearing on whether a Plan for these three

Debtors, which are all separate legal entities distinct from HTA, should be confirmed.  A plan

involving HTA will, eventually, be put forward for confirmation, and, at that time, the DRA Parties

will be able to put forward relevant, admissible evidence relating to HTA.  But the upcoming

hearing on the Commonwealth's Plan is not the place for the DRA parties to voice their complaints

on how HTA may have used its own funds.  Because this testimony is not relevant to whether the

Commonwealth's Plans should be confirmed, it is not helpful to the trier of fact (the Court), and it

should be excluded.  Fed R. Evid. 702, 402.

38.     For all of the foregoing reasons, the Oversight Board requests that any expert or

other testimony of Ms. Martinez be excluded as inadmissible pursuant to Rule 702 401, and 402

of the Federal Rules of Evidence.

### NOTICE

39.     In accordance with the Court's standing orders, the *Fifteenth Amended Case

Management Procedures* (the "Case Management Procedures") [ECF No. 17127-1], and the

Confirmation Discovery Procedures Order, the Oversight Board has provided notice of this

motion, in the form of paper copies thereof sent by first class mail or digital copies sent by email,

to (a) all creditors who filed notices of intent to participate in discovery in connection with

confirmation proceedings, (b) all creditors who have filed objections to confirmation, (c) all

creditors who filed notices of correspondence, and (d) the Master Service List (as defined in the

Case Management Procedures), which is available on the Debtors' case website at

https://cases.primeclerk.com/puertorico.  The Oversight Board submits that, in light of the nature

of the relief requested, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE the Oversight Board respectfully requests that the Motion be granted, the

Court enter the proposed order attached hereto as **Exhibit A**, and the Court grant the Oversight

Board such other and further relief as is just.


Dated:  September 30, 2021                         Respectfully submitted,
　　　　San Juan, Puerto Rico

　　　　　　　　　　　　　　　　　　　　　　 */s/   Martin J. Bienenstock*
　　　　　　　　　　　　　　　　　　　　　　 Martin J. Bienenstock
　　　　　　　　　　　　　　　　　　　　　　 Brian. S. Rosen
　　　　　　　　　　　　　　　　　　　　　　 (Admission *Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　　　 **PROSKAUER ROSE LLP**
*/s/   Hermann D. Bauer*                            Eleven Times Square
Hermann D. Bauer                                   New York, NY 10036
USDC No. 215205                                    Tel:  (212) 969-3000
**O'NEILL & BORGES LLC**                           Fax:  (212) 969-2900
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181                               Timothy W. Mungovan
Fax:  (787) 753-8944                               Elliot R. Stevens
　　　　　　　　　　　　　　　　　　　　　　 (Admission *Pro Hac Vice*)
*Co-Attorneys for the Financial Oversight and*     **PROSKAUER ROSE LLP**
*Management Board as representative for the*       One International Place
*Debtors*                                          Boston, MA  02110
　　　　　　　　　　　　　　　　　　　　　　 Tel: (617) 526-9600


　　　　　　　　　　　　　　　　　　　　　　 Michael A. Firestein
　　　　　　　　　　　　　　　　　　　　　　 Lary Alan Rappaport
　　　　　　　　　　　　　　　　　　　　　　 (Admission *Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　　　 **PROSKAUER ROSE LLP**
　　　　　　　　　　　　　　　　　　　　　　 2029 Century Park East
　　　　　　　　　　　　　　　　　　　　　　 Suite 2400
　　　　　　　　　　　　　　　　　　　　　　 Los Angeles, CA 90067


　　　　　　　　　　　　　　　　　　　　　　 *Attorneys for the Financial Oversight and*
　　　　　　　　　　　　　　　　　　　　　　 *Management Board as representative for the*
　　　　　　　　　　　　　　　　　　　　　　 *Debtors*

17