# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE<br>EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO, AND THE PUERTO RICO PUBLIC<br>BUILDINGS AUTHORITY,<br><br>                       Debtors.[1] | PROMESA<br>Title III<br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, as<br>representative of THE COMMONWEALTH OF<br>PUERTO RICO, THE EMPLOYEES RETIREMENT<br>SYSTEM OF THE GOVERNMENT OF THE<br>COMMONWEALTH OF PUERTO RICO, AND THE<br>PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>                Movant,<br><br>v.<br><br>AMERINATIONAL COMMUNITY SERVICES, LLC,<br>as servicer for the GDB Debt Recovery Authority, and<br>CANTOR-KATZ COLLATERAL MONITOR LLC<br><br>           Respondents. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEBTORS' MOTION FOR ORDER EXCLUDING EXPERT TESTIMONY OF DOUGLAS J. BRICKLEY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 5

    A.    HTA, the DRA Loans, and Acts 30 and 31 ......................................... 5

    B.    The Plan and the Brickley Report ...................................................... 8

JURISDICTION AND VENUE .............................................................................................. 9

RELIEF REQUESTED............................................................................................................. 9

ARGUMENT ......................................................................................................................... 10

I.      MR. BRICKLEY'S TESTIMONY IS PROPERLY EXCLUDABLE UNDER
        RULE 702 BECAUSE IT DOES NOT CONSTITUTE ADMISSIBLE EXPERT
        TESTIMONY THAT WILL HELP THE TRIER OF FACT ........................................... 10

II.    MR. BRICKLEY'S TESTIMONY IS ALSO INADMISSIBLE BECAUSE IT
        DOES NOT PRESENT EVIDENCE RELEVANT TO CONFIRMATION OF
        THE PLAN ................................................................................................................... 14

    A.    Testimony Relating to the Commonwealth's Retention of Act 30-31
        Revenues is Irrelevant to Confirmation. The DRA Parties' Purported Lien
        Against the Act 30-31 Revenues and Claim Against the Commonwealth Is
        the Subject of a Separate Adversary Proceeding. ................................................. 14

    B.    The Act 30-31 Excise Tax Statutes Have Been Preempted by PROMESA ......... 15

    C.    The OMB Act and the Retention Provisions of Section 8 of Article VI of
        the Commonwealth Constitution Have Been Satisfied Without
        Consideration of Mr. Brickley's Testimony ......................................................... 17

NOTICE.................................................................................................................................. 20

CONCLUSION....................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arizona v. United States*,
567 U.S. 387 (2012)................................................................17

*Bradley v. Sugarbaker*,
809 F.3d 8 (1st Cir. 2015)........................................................10

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)...........................................................10, 14

*In re Oakwood Homes Corp.*,
449 F.3d 588 (3d Cir. 2006).....................................................18

*In re Quality Interiors, Inc.*,
127 B.R. 391 (Bankr. N.D. Ohio 1991) ....................................16

*Kenney v. Head*,
670 F.3d 354 (1st Cir. 2012)....................................................14

*Moreira v. Digital Employees Fed. Credit Union (In re Moreira)*,
173 B.R. 965 (Bankr. D. Mass. 1994) ......................................18

*Nieves-Villanueva v. Soto-Rivera*,
133 F.3d 92 (1st Cir. 1997)......................................................13

*P.R. Tel. Co. v. San Juan Cable Co.*,
196 F. Supp. 3d 248 (D.P.R. 2016),
*aff'd*, 874 F.3d 767 (1st Cir. 2017) .........................................13

*Pages-Ramirez v. Ramirez-Gonzales*,
605 F.3d 109 (1st Cir. 2010)....................................................14

*Plaza-Torres v. Rey*,
2006 WL 6884391 (D.P.R. Apr. 21, 2006)................................14

*Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
330 F. Supp. 3d 685(D.P.R. 2018).............................................20

*Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*,
161 F.3d 77 (1st Cir. 1998).......................................................14

*Shults & Tamm v. Brown (In re Hawaiian Telcom Communs., Inc.)*,
2012 Bankr. LEXIS 380 (Bankr. D. Haw. 2012)........................16

*United States v. Montas,*
   41 F.3d 775 (1st Cir. 1994) ........................................................................11

*United States v. Navedo-Ramirez,*
   781 F.3d 563 (1st Cir. 2015) ......................................................................11

*United States v. Salimonu,*
   182 F.3d 63 (1st Cir. 1999) ........................................................................11

*United States v. Weiner,*
   3 F.3d 17 (1st Cir. 1993) .....................................................................11, 12

STATUTES

7 L.P.R.A. § 3171 ..........................................................................................5-6

9 L.P.R.A. §§ 2001-2035 ..................................................................................6

9 L.P.R.A § 2002 ..............................................................................................6

9 L.P.R.A. § 2004 ............................................................................................6

9 L.P.R.A. § 2015 ............................................................................................6

9 L.P.R.A. § 5681 ............................................................................................7

13 L.P.R.A. § 31751(a)(1)(C) ..........................................................................7

11 U.S.C. § 362 ..............................................................................................16

28 U.S.C. § 1391 ..............................................................................................9

48 U.S.C. §§ 2101–2241 ..................................................................................1

PROMESA § 4 ................................................................................................15

PROMESA § 101 ............................................................................................17

PROMESA § 106 ..............................................................................................9

PROMESA § 202 ............................................................................................15

PROMESA § 305 ............................................................................................16

PROMESA § 307 ..............................................................................................9

PROMESA § 405 ............................................................................................20

**OTHER AUTHORITIES**

Fed. R. Evid. 104 ......................................................................................................10, 20

Fed. R. Evid. 401 ..............................................................................................5, 14, 15, 20

Fed. R. Evid. 402 ................................................................................................5, 9, 14, 20

Fed. R. Evid. 702 ................................................................................................... *passim*

P.R. Const. art. VI, § 8 ..............................................................................................18, 19

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),
as the sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"),
the Puerto Rico Public Buildings Authority ("PBA"), and the Employees Retirement System of
the Government of the Commonwealth of Puerto Rico ("ERS," and together with the
Commonwealth and PBA, the "Debtors") pursuant to section 315(b) of the *Puerto Rico Oversight,
Management, and Economic Stability Act* ("PROMESA"),[1] hereby submits this memorandum of
law in support of the Debtors' *Motion for an Order Excluding Expert Testimony of Douglas J.
Brickley* filed concurrently herewith (together with this Memorandum, the "Motion").

## PRELIMINARY STATEMENT

1.      The Oversight Board is seeking confirmation of a joint plan of adjustment for the
Commonwealth, ERS and PBA.[2]  To confirm the Plan, the Court must determine it satisfies the
confirmation requirements set forth in PROMESA § 314(b) and the sections of the Bankruptcy
Code incorporated in PROMESA by PROMESA § 301(a).  The confirmation standards do not
require any evidence regarding whether and to what extent the Commonwealth historically
complied with currently preempted statutes and the Puerto Rico Constitution.

2.      Notwithstanding this, however, AmeriNational Community Services, LLC (the
"Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz
Collateral Monitor LLC, a Delaware limited liability company (the "Collateral Monitor," and
together with the Servicer, collectively, the "DRA Parties") served the *Preliminary Expert Report
of Douglas J. Brickley* (the "Brickley Report"), in which Douglas J. Brickley ("Mr. Brickley")

---

[1]  PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[2]  *The Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 17627]
(as it may be amended, modified, or supplemented, the "Plan").

proffers his opinion on the Commonwealth's compliance with preempted Commonwealth statutes and the Puerto Rico Constitution.

3.      At confirmation, the Court only needs to determine whether the DRA Parties' claims are treated in a confirmable manner if the claims are ultimately allowed.  To the extent that, pursuant to paragraph 5 of the Court's July 27, 2021 *Order on Joint Status Report* [ECF No. 17529], or for other reasons, the Court considers the allowability of any of the DRA Parties' secured or unsecured claims at the confirmation hearing, any testimony by Mr. Brickley, and the Brickley Report, should be barred because the claims cannot be allowed and Mr. Brickley's testimony is inadmissible for independently sufficient reasons.

4.      First, any testimony along the lines of the opinions contained in the Brickley Report does not meet the requirements for expert testimony under Rule 702 of the Federal Rules of Evidence as it would be of absolutely no benefit to the trier of fact in understanding the facts.

5.      Specifically, the testimony of Mr. Brickley proposed to be offered by the DRA Parties is not based on "scientific, technical, or other specialized knowledge" that will help the Court understand the evidence or determine anything of consequence.  Fed. R. Evid. 702(a).  Any testimony of Mr. Brickley will derive from the Brickley Report, which, far from containing any useful scientific or technical analyses, simply reports what a variety of other documents say about the Commonwealth and its finances, such as the Commonwealth's certified fiscal plan and financial statements, *id.* at 7, statements made by counsel to AAFAF or the Oversight Board, *id.* at 7–8, or statements made in the DRA Parties' other expert report, the Expert Report of Lizette Martinez (the "Martinez Report").  *Id.* at 8–9.  Indeed, the Brickley Report acknowledges some of its conclusions are "public knowledge."  *Id.* at 7.  In sum, the Brickley Report merely compiles publicly known conclusions in one document, and adds nothing to them.  The DRA Parties can

proffer any admissible documents and identify which parts they rely on.  If they are not admissible, stuffing them into an 'expert' report does not make them admissible.  The Court is perfectly capable of reading admissible documents itself—it certainly does not need an "expert" to read them and tell the Court what they say.  Moreover, to the extent the Brickley Report could be read to contain Mr. Brickley's own opinions he would offer at the confirmation hearing, such opinions solely relate to legal questions, such as whether the Commonwealth violated the Puerto Rico Constitution or not.  *See, e.g.,* Brickley Report at 9 ("the Commonwealth has failed to make the required GO debt payments under Article VI, Section 8 of the Constitution . . . .").  Mr. Brickley— a non-lawyer—is not qualified to provide testimony on legal questions, and, in any event, such questions are not the proper subject of expert testimony.

6.      Second, the Brickley Report is immaterial and irrelevant.  The DRA Parties cannot have allowable claims against the Commonwealth for its failure to have transferred the Act 30-31 Revenues to HTA because (i) PROMESA Title III, not the Commonwealth, authorizes the non-payment of claims (if the appropriations give rise to claims, which they do not) during the Commonwealth Title III case, (ii) PROMESA Title II preempts the Commonwealth statutes providing appropriations to HTA, and (iii) Article VI, Section 8 of the Puerto Rico Constitution, together with the credit agreements, eliminated the Commonwealth's appropriations to HTA to the extent necessary to pay GO debt and the GO debt will not be paid in full under the Plan even after all the relevant appropriations are applied to GO debt payments under the Plan.

7.      The doctrine of preemption confirms Mr. Brickley's proposed testimony is irrelevant.  *See* the Oversight Board's motion to dismiss the DRA Parties' adversary complaint [Case No. 21-0068-LTS, ECF No. 40] (the "Motion to Dismiss") at 31–38; the Oversight Board's objection to the DRA Parties' motion for allowance of an administrative expense claim [ECF No.

18065] (the "Administrative Expense Motion Objection") at 20–24.  The Act 30-31 Excise Tax Statutes purport to require the transfer to HTA of Commonwealth revenues without regard to the budget certified by the Oversight Board.  PROMESA § 202, however, gives the Oversight Board the sole authority to certify budgets controlling all spending of Commonwealth funds.  The Act 30-31 Excise Tax Statutes are therefore inconsistent with PROMESA and preempted by it.  *See* PROMESA § 4.  The DRA Parties can have no claims arising from preempted statutes, and thus testimony relating to the Commonwealth's purported failure to comply with the preempted appropriation provisions of the Act 30-31 Excise Tax Statutes is irrelevant and inadmissible.

8.     Even setting aside preemption, the proposed testimony of Mr. Brickley is irrelevant, and should be excluded.  Mr. Brickley ignores the fact that the filing of the Commonwealth's Title III petition eliminated any requirement for the Commonwealth to make present payments on its debt, and imposed an automatic stay prohibiting creditors from seeking to compel such payments.  Testimony regarding whether Commonwealth law required the Commonwealth to pay its GO debt or transfer to HTA revenues from the Act 30-31 Excise Tax Statutes is clearly irrelevant: PROMESA Title III itself provided the legal authority to stop making such payments.

9.     The Brickley Report reveals Mr. Brickley also intends to present evidence as to whether the Commonwealth complied with the DRA Parties' interpretation of the retention provisions of section 8 of Article VI of the Puerto Rico Constitution.  The DRA Parties' interpretation, however, is based on the faulty legal premise that because the Commonwealth ran budgetary surpluses or made payments on its GO debt within specific fiscal years the Puerto Rico Constitution did not permit retention of collections of Act 30-31 Revenues.  However, even if applicable, the retention power contained in the Puerto Rico Constitution is satisfied whenever the Commonwealth does not have sufficient resources to make all required payments on its debt, a

fact certified by Congress when it passed PROMESA. The Commonwealth retained collections of
the Act 30-31 Revenues (and various other revenues conditionally allocated to HTA and other
instrumentalities), and is now proposing to use collections of those revenues to pay GO debt
pursuant to the Plan.  Even so, the total GO debt is still not being paid in full under the Plan.  In
those circumstances, the Commonwealth's retention was and is permissible under the Puerto Rico
Constitution as a matter of law.  Testimony as to whether the Commonwealth's budget ran a
surplus post-petition, at a time when the Commonwealth was not required to make debt payments
due to PROMESA Title III, is of no moment and should be excluded as irrelevant.

10.     The Oversight Board seeks to avoid wasting scarce resources litigating issues
having no relevance to whether the Plan should be confirmed.  Confirmation proceedings relating
to the Plan will involve many multifaceted and complicated issues, and both the parties and the
Court will be required to devote extensive time and energy to resolve them.  To ensure
confirmation proceedings proceed as efficiently as possible, and, to the extent that, pursuant to
paragraph 5 of the *Order on Joint Status Report*, or for other reasons, the Court considers the
allowability of any of the DRA Parties' secured or unsecured claims at the confirmation hearing,
the Oversight Board respectfully requests that the Court exclude this irrelevant evidence now under
Federal Rules of Evidence 702, 401, and 402.

## BACKGROUND

A.     **HTA, the DRA Loans, and Acts 30 and 31**

11.     DRA is a statutory public trust and public governmental instrumentality of the
Commonwealth and is independent from any other governmental entity.  It was created under the
Government Development Bank for Puerto Rico Debt Restructuring Act, to help give effect to the
terms of the Government Development Bank's ("GDB") PROMESA Title VI restructuring. 7

L.P.R.A. § 3171.  GDB's claims against HTA were transferred to the DRA Parties pursuant to GDB's Title VI restructuring.

12.    HTA is a public corporation established pursuant to Act No. 74-1965, which is codified as 9 L.P.R.A. §§ 2001-2035 (the "HTA Enabling Act").  HTA is separate from the Commonwealth. 9 L.P.R.A. § 2015. HTA is responsible for the construction, operation, and maintenance of the Commonwealth's transportation system. 9 L.P.R.A § 2002. The HTA Enabling Act authorizes HTA to issue bonds and to secure their repayment by granting a security interest in certain property "made available" to HTA. 9 L.P.R.A. § 2004(l).

13.    The DRA Parties allege that between March 2008 and January 2014, GDB extended loans to HTA pursuant to 15 loan agreements, which loans were memorialized by 23 promissory notes (the "Loan Claims"). *See* Case No. 21-00068-LTS, ECF No. 1 ("DRA Complaint"), ¶ 48. The Loan Claims are payable from "any available moneys and resources of HTA," including the "incremental revenues implemented through Acts 30 and 31 and allocated to HTA . . . ." (the "Act 30-31 Revenues").  DRA Complaint ¶ 46.  Act 30 is "Act No. 30-2013" and Act 31 is "Act 31-2013."  DRA Complaint ¶¶ 40, 49.

14.    Act 30 amended Section 23.01 of Act No. 22-2000 to remove a $15 "cap" on vehicle license fees the Commonwealth would "cover[] into" a special deposit for the benefit of HTA. DRA Complaint ¶¶ 42, 43.  Act 31 amended Section 3060.11 of Act No 1-2011 by removing a previously existing cap on excise taxes collected on crude oil, and partially finished and finished oil by-products and any other hydrocarbon mixture, which excise taxes the Commonwealth conditionally appropriated to HTA and "covered into" a special deposit in favor of HTA.  DRA Complaint ¶¶ 44, 45.  Act 31 also conditionally appropriated $20 million per year in cigarette

excise taxes to HTA, which funds were to be covered into a special deposit in favor of HTA. DRA Complaint ¶ 45.

15.    Act 30, codified by a modification to 9 L.P.R.A. § 5681, increased the amount of vehicle license fees conditionally appropriated to HTA for HTA's corporate purposes.  DRA Complaint ¶¶ 40, 43.   Act 31 was codified through (i) modifications to 13 L.P.R.A. § 31751(a)(1)(C) to remove the cap on petroleum excise taxes conditionally appropriated to HTA for its corporate purposes, and (ii) the addition of § 31751(a)(3)(C) to appropriate $20 million per year in cigarette taxes to HTA for its corporate purposes (*see* DRA Complaint ¶¶ 40, 45) (9 L.P.R.A. § 5681 and 13 L.P.R.A.  §§ 31751(a)(1)(C), 31751(a)(3)(C) are collectively referred to as the "Act 30-31 Excise Tax Statutes").

16.    Act 30-31 Revenues are expressly subject to retention by the Commonwealth under Section 8 of Article VI of the Puerto Rico Constitution and are "available resources" of the Commonwealth. *See* 9 L.P.R.A. § 5681 and 13 L.P.R.A. §§ 31751(a)(1)(C), 31751(a)(3)(C).

17.    The DRA Parties allege that, on August 28, 2013, GDB and HTA executed a security agreement by which HTA assigned as security to GDB, HTA's "rights, title, obligations and interest in" Act 30-31 Revenues (the "Security Agreement"). *See* DRA Complaint ¶ 50; Case No. 21-68-LTS, ECF No. 1-6 (Security Agreement at 1.1 at pp. 1-2).  Section 1.2 of the Security Agreement provides HTA assigns, pledges and grants "a continuing security interest, which shall be junior, inferior and subordinate in all respects to the outstanding bonds of [HTA] issued pursuant to the Bond Resolutions, in all of the right, title and interest of [HTA] in the revenues allocated to it by Acts No. 30-2013 & 31-2013 approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013, whether presently held or hereafter acquired and wherever located . . . ." *Id*.  The DRA Parties refuse to recognize that HTA could only pledge property interests it

owned, and HTA did not own any interests in the Act 30-31 revenues until the revenues were actually transferred to HTA.

18. On May 21, 2017, the Oversight Board filed a petition for relief under PROMESA Title III for HTA. The Oversight Board has not filed a plan of adjustment for HTA.

B. **The Plan and the Brickley Report**

19. In July 2021, the Oversight Board filed the Plan to adjust the debts of the Commonwealth, ERS, and PBA. ECF No. 17627.

20. This Court has scheduled the confirmation hearing with respect to the Plan to start on November 8, 2021. *See* ECF No. 17640 (the "Confirmation Discovery Procedures Order"). Pursuant to the Confirmation Discovery Procedures Order, parties intending to rely upon expert reports were required to serve them by September 13, 2021. *Id.* at 3. Any motions *in limine* must be filed by no later than September 30, 2021. *Id.*

21. On September 6, 2021, the DRA Parties filed their expert disclosure, stating that they intended to rely upon expert testimony of either Michael Gardner or Douglas J. Brickley "regarding the clawback the Commonwealth conducted in purported reliance on article VI section 8 of the Puerto Rico Constitution." ECF No. 18042 at 2.

22. On September 13, 2021, the DRA Parties served the Brickley Report. According to his Report, Mr. Brickley was retained to review and analyze certain financial information, pleadings, discovery responses and correspondence regarding the Commonwealth's annual budget and the use of certain retained revenues in certain fiscal years. Brickley Report at 2. Based on various legal assumptions provided by counsel (Brickley Report at 5), the Commonwealth's audited financial statements (*id.* at 6–7), a review of the Commonwealth's certified fiscal plans (*id.*), certain statements made by counsel to AAFAF and the Oversight Board (*id.* at 7), and the Martinez Report, also commissioned by the DRA Parties (*id.* at 8), the Brickley Report concludes

(i) the Commonwealth's budgets have contained surpluses in all years since 2017 (*id.* at 7), (ii) the Commonwealth has not made payments on its GO bonds since January 2016 (*id.* at 7–8), and (iii) some of the collections of Act 30-31 Revenues were transferred to HTA (*id.* at 8–9).

23.     Pursuant to the July 27, 2021 *Order on Joint Status Report* [ECF No. 17529], two potentially dispositive motions—the Motion to Dismiss and the Administrative Expense Motion Objection will be fully briefed by October 8, 2021—after the deadline for filing motions *in limine*. The Oversight Board submits this motion *in limine* to request that, to the extent that, pursuant to paragraph 5 of the *Order on Joint Status Report*, or for other reasons, the Court considers the allowability of any of the DRA Parties' secured or unsecured claims at the confirmation hearing, the Brickley Report, and any testimony by Mr. Brickley, is precluded because it does not meet the requirements for expert testimony under Rule 702 of the Federal Rules of Evidence and, further, because such testimony and the Brickley Report are immaterial and irrelevant.

## JURISDICTION AND VENUE

24.     The Court has subject-matter jurisdiction over this motion pursuant to PROMESA § 306(a)(1).

25.     Venue is appropriate in this District under PROMESA §§ 106(a) and 307, and 28 U.S.C. § 1391.

## RELIEF REQUESTED

26.     By this Motion, the Oversight Board requests the Court to enter an order excluding any testimony of Mr. Brickley under both (i) Rule 702 of the Federal Rules of Evidence, as it is not based upon "scientific, technical, or other specialized knowledge" that will help the trier of fact, and (ii) Rule 402 of the Federal Rules of Evidence, because it is immaterial and irrelevant to confirmation of the Plan.

## ARGUMENT

I.   **MR. BRICKLEY'S TESTIMONY IS PROPERLY EXCLUDABLE UNDER RULE
     702 BECAUSE IT DOES NOT CONSTITUTE ADMISSIBLE EXPERT
     TESTIMONY THAT WILL HELP THE TRIER OF FACT**

27.     Federal Rule of Evidence 702 governs the admission of expert testimony and
permits experts qualified by their "knowledge, skill, experience, training, or education" to testify
where their "scientific, technical, or other specialized knowledge will help the trier of fact to
understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see, e.g.*, *Bradley v.
Sugarbaker*, 809 F.3d 8, 16–17 (1st Cir. 2015). Rule 702 requires that "the testimony be (1) based
upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) that the
witness apply the principles and methods reliably to the facts of the case." *Id.* at 17 (quotation
omitted).

28.     Under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), "when
determining the admissibility of expert testimony, 'the trial judge must determine at the outset,
pursuant to [Federal Rule of Evidence] 104(a), whether the expert is proposing to testify to (1)
scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.'"
*Bradley*, 809 F.3d at 19 n.10 (quoting *Daubert*, 509 U.S. at 592). Rule 104, in turn, requires that
"[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced
sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b). The Court, therefore,
may make preliminary factual determinations to determine relevance under Rule 702. *Bradley*,
809 F.3d at 19 n.10.

29.     As noted in *Daubert*, Rule 702 also requires an expert to provide testimony that
"will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid.
702(a). Testimony does not qualify under Rule 702 where it would not help the trier of fact in that
scientific or expert knowledge is not required to understand the evidence or determine the fact in

issue.  *See, e.g., United States v. Navedo-Ramirez*, 781 F.3d 563, 568 (1st Cir. 2015) ("If a layperson is capable of understanding an issue without the aid of an expert, a district court may properly decline to admit expert testimony on that issue on the ground that it would not be helpful to the jury."); *United States v. Salimonu*, 182 F.3d 63, 74 (1st Cir. 1999) (expert testimony properly excluded where "ordinary lay person" could adequately sift the evidence and come to factual conclusion); *United States v. Montas*, 41 F.3d 775, 784 (1st Cir. 1994) (expert testimony properly excluded where "an average juror [could] assess" the evidence "intelligently" without expert assistance); *United States v. Weiner*, 3 F.3d 17, 21-22 (1st Cir. 1993) (error to admit expert testimony of "a routine inference that the jury could draw on its own").

30.     Any testimony of Mr. Brickley should be excluded by the Court pursuant to Rule 702 because it is not based upon "scientific, technical, or other specialized knowledge" and will not help the trier of fact understand the evidence or determine any facts in issue.  Fed. R. Evid. 702(a).  The Brickley Report demonstrates Mr. Brickley's testimony will be composed solely of the regurgitation, summarization, or compilation of the contents of other documents, which the Court is more than able to read itself and does not need an "expert" to summarize.  To begin with, the Brickley Report makes clear Mr. Brickley's conclusions are predicated upon legal assumptions provided by counsel for the DRA Parties.  *See, e.g.*, Brickley Report at 5.  Based on those legal assumptions, the Brickley Report reiterates various provisions of the Puerto Rico Constitution and Section 4(c) of the Management and Budget Office Organic Act, Act. No. 147, approved June 18, 1980 (the "OMB Act"), and then reports what (a) the publicly available, audited financial statements of the Commonwealth, dated June 30, 2018, state about the Commonwealth's budget that year, and (b) the publicly available, currently certified fiscal plan for the Commonwealth states about the Commonwealth's budget in succeeding years.  Brickley Report at 6–7.  The Brickley

Report then includes a chart taken directly from the fiscal plan. *Id.* at 7. The Brickley Report concludes, based on specific statements contained in the Commonwealth's audited financial statements and the fiscal plan, that the Commonwealth ran a budgetary surplus since 2018. *Id.*

31.     According to the Brickley Report, Mr. Brickley will testify he read a discovery objection drafted by counsel to AAFAF, which informed Mr. Brickley that it "is public knowledge" the Commonwealth has not made payments on its GO debt since January 2016. Based on this, and another document drafted by counsel to the Oversight Board, the Brickley Report concludes the Commonwealth has not made payments on its GO debt since January 2016. *Id.* at 7–8. Finally, the Brickley Report summarizes the Martinez Report (which is the subject of a separate motion to exclude), repeats various conclusions reached therein, and opines that, *assuming* the Martinez Report is correct, "the Commonwealth has failed to make the required GO debt payments under Article VI, Section 8 of the Constitution or comply with the waterfall priority payments outlined by the OMB Act." Brickley Report at 9.

32.     Clearly, the Brickley Report, and any testimony Mr. Brickley may offer derived from his report, is not based upon "scientific, technical, or other specialized knowledge" that will assist the Court. The Brickley Report, and the testimony Mr. Brickley intends to offer, simply repeats various statements and conclusions contained in other documents, drawing, on occasion, "routine inference[s]" the Court "could draw on its own" without Mr. Brickley's testimony. *Weiner*, 3 F.3d at 21-22. Expert testimony is simply unnecessary for the Court to understand what the Commonwealth's fiscal plan provides, or what counsel to AAFAF said in a discovery objection. As a result, Mr. Brickley's proposed testimony does not satisfy the requirements for expert testimony laid down by Rule 702 of the Federal Rules of Evidence, and should be excluded.

33.     Moreover, experts (and certainly non-lawyer experts) cannot give opinions about the substance of the law.  *See, e.g.*, *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1997) (expert testimony on legal issues is "rarely admissible" because "the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial"); *see also P.R. Tel. Co. v. San Juan Cable Co.*, 196 F. Supp. 3d 248, 321 (D.P.R. 2016) (excluding expert testimony regarding questions of law and objective reasonableness), *aff'd*, 874 F.3d 767 (1st Cir. 2017).

34.     Mr. Brickley's testimony should also be excluded because, though Mr. Brickley is not a lawyer,[3] the Brickley Report indicates he intends to offer testimony regarding whether certain legal requirements were met and others were violated.    For example, the Brickley Report (at 6) opines on whether  the Oversight Board performed "the analyses required by Article VI, Sections 7 and 8 of the Constitution" when it certified the Commonwealth's budgets.   Similarly, the Brickley Report (at 9) offers Mr. Brickley's opinion regarding whether the Commonwealth violated Article VI, Section 8 of the Constitution, as well as the OMB Act, in transferring collections of Act 30-31 Revenues to HTA.   Not only is Mr. Brickley unqualified to offer such legal opinions, they are outside the purview of allowable expert testimony. Whether the Oversight Board's or the Commonwealth's actions complied with the provisions of the Puerto Rico Constitution or the OMB Act are quintessential legal determinations to be made by the Court. Expert testimony as to those legal questions "cannot properly assist the trier of fact," and thus may not be admitted under Rule 702.  *See Nieves-Villanueva v. Soto-Rivera*, 133 F.3d at 100 ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact . . . .") (quotation omitted).  Mr. Brickley's testimony should be excluded in its entirety under Fed. R. Evid. 702.

---

[3]  Mr. Brickley does hold serval professional certifications, Brickley Report at 4, none of which include a law degree.

II.     **MR. BRICKLEY'S TESTIMONY IS ALSO INADMISSIBLE BECAUSE IT DOES NOT PRESENT EVIDENCE RELEVANT TO CONFIRMATION OF THE PLAN**

35.     Like all evidence, expert testimony must be relevant to warrant admission. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible"); *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) (holding expert evidence is subject to both Rule 402 *and* Rule 702's requirements); *see also Plaza-Torres v. Rey*, 2006 WL 6884391, at *2 (D.P.R. Apr. 21, 2006) (granting motion *in limine* to exclude irrelevant expert evidence pursuant to Rule 401). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotation omitted).  Evidence is relevant only if it has "any tendency to make a fact" that is "of consequence in determining the action" "more or less probable than it would be without the evidence." Fed. R. Evid. 401(b); *see Kenney v. Head*, 670 F.3d 354, 358 (1st Cir. 2012) (affirming exclusion of evidence that did not "go to a fact of consequence"); *see also Pages-Ramirez v. Ramirez-Gonzales*, 605 F.3d 109, 115 (1st Cir. 2010) (holding expert testimony must comply with requirements of Rule 401).

36.     For the reasons set forth below, any expert or other testimony offered by Mr. Brickley is inadmissible because it does not bear on any fact of consequence to confirmation of the Plan and will not assist the Court to understand or determine any fact in issue.

A.      **Testimony Relating to the Commonwealth's Retention of Act 30-31 Revenues is Irrelevant to Confirmation. The DRA Parties' Purported Lien Against the Act 30-31 Revenues and Claim Against the Commonwealth Is the Subject of a Separate Adversary Proceeding.**

37.     The proposed testimony of Mr. Brickley is inadmissible because it is irrelevant and does not present evidence that pertains to any fact of consequence regarding confirmation of the Plan.  The allowability of the DRA Parties' purported liens and claims against the Commonwealth is the subject of a separate adversary proceeding (Case No. 21-68-LTS)—it is not the proper subject of Plan confirmation proceedings.  At the confirmation hearing, the Court only needs to

14

determine whether the DRA Parties' claims and liens—assuming they are ultimately allowed by the Court—are treated in a confirmable manner by the Plan. The testimony of Mr. Brickley has no possible bearing on this issue. As a result, it is irrelevant to Plan confirmation proceedings and should be excluded under Fed. R. Evid. 401(b).

B.   **The Act 30-31 Excise Tax Statutes Have Been Preempted by PROMESA**

38.   Testimony relating to the requirements for retention by the Commonwealth under Section 8 of Article VI of the Commonwealth Constitution is also irrelevant because, as the Oversight Board detailed elsewhere, *see* Motion to Dismiss at 31–38; Administrative Expense Motion Objection at 20–24, the Act 30-31 Excise Tax Statutes have been preempted by PROMESA and thus the retention conditions specified in the Puerto Rico Constitution did not have to be met for the Commonwealth to retain collections of the Act 30-31 Revenues.[4] As the Oversight Board previously explained, *id.*, the Act 30-31 Excise Tax Statutes are both expressly and impliedly preempted by Titles II and III of PROMESA. Under PROMESA, all power over the appropriation of Commonwealth revenues (including Act 30-31 Revenues) is conferred to the Oversight Board by requiring that any expenditures be pursuant to an Oversight Board-certified budget. PROMESA § 202. All inconsistent Commonwealth laws are expressly preempted. *See* PROMESA § 4. As the Act 30-31 Excise Tax Statutes purport to appropriate Commonwealth revenues without regard to the Oversight Board's certified budget, they are expressly preempted by PROMESA §§ 4 and 202. *See* Motion to Dismiss at 31, 33–35. The Act 30-31 Excise Tax Statutes are similarly preempted by Title III of PROMESA because they would require the Commonwealth to pay 100% of the Act 30-31 Revenues to HTA, effectively creating a specifically

---

[4] To the extent the Court grants the Motion to Dismiss the DRA Complaint for reasons relating to preemption, the arguments relating to preemption in this Motion will be established as a matter of law.

enforceable, non-dischargeable obligation against the Commonwealth in favor of HTA—contrary to the express provisions of the Bankruptcy Code incorporated into PROMESA. Motion to Dismiss at 35.

39. Indeed, the very premise of Mr. Brickley's testimony—that the Commonwealth had to continue making payments to HTA and to GO bondholders due to Commonwealth legal prescriptions—is clearly made irrelevant by the fact PROMESA Title III independently authorizes the Commonwealth not to make payments on its prepetition debts. Pursuant to PROMESA Title III, the Commonwealth is not required to make present debt payments on any of its debts— including both GO bond debts and debt arising from the Act 30-31 Excise Tax Statutes.[5] Not only that, but the automatic stay under 11 U.S.C. § 362 prohibits creditors from seeking to compel such payment, and PROMESA § 305 specifically enjoins the Court from entering any order interfering with the Debtors' use of their property—which, as this Court has held before, precludes the Court from ordering the Debtors to make payments on its debts. *See* Case No. 17-BK-3283-LTS, ECF No. 8886 at 2–3 ("the Court is not empowered to require [] payment [of administrative expense claims]" pursuant to PROMESA § 305). As a result, the Commonwealth's purported failure to pay the Act 30-31 Revenues to HTA, or GO bondholders, is permissible without regard to Puerto Rico constitutional or statutory requirements, and testimony relating to whether those requirements were met is therefore irrelevant.

---

[5] Indeed, in chapter 11 cases postpetition payments on prepetition debt are prohibited and any unauthorized payments made to prepetition creditors are avoidable under Bankruptcy Code section 549. *See, e.g.*, *Shults & Tamm v. Brown (In re Hawaiian Telcom Communs., Inc.)*, 2012 Bankr. LEXIS 380, at *13 (Bankr. D. Haw. 2012) ("Allowing post-petition payment of pre-petition unsecured debts would so frustrate the goals of the Bankruptcy Code."); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("The payment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code, and such transfers are recoverable."). As section 363 is not incorporated in to PROMESA, PROMESA Title III does not prohibit payments to prepetition creditors, but a Title III debtor is under no obligation to make payments on prepetition debt during the pendency of the case.

40.     Moreover, the Act 30-31 Excise Tax Statutes are impliedly preempted because (i) it would be impossible to both comply with them and with PROMESA, and (ii) continued application of the Act 30-31 Excise Tax Statutes would undermine the Oversight Board's mission to enable Puerto Rico to regain fiscal responsibility and access to capital markets, PROMESA § 101(a), by significantly hampering the Oversight Board's ability to control the Commonwealth's spending.  Motion to Dismiss at 35–36.  The Act 30-31 Excise Tax Statutes are thus preempted as an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See, e.g., Arizona v. United States*, 567 U.S. 387 (2012).  Motion to Dismiss at 35–36.

41.     As the Act 30-31 Excise Tax Statutes have been preempted by PROMESA, evidence relating to whether and to what extent the Commonwealth complied with Section 8 of Article VI of the Puerto Rico Constitution when it stopped transferring collections of the Act 30-31 Revenues to HTA is irrelevant.  Preemption means that the Commonwealth's retention was legal—indeed, it was required by PROMESA and the budgets certified by the Oversight Board.  Whether the Commonwealth complied with other conditions under preempted Commonwealth law is of no consequence, because the Commonwealth complied with supervening federal law when it retained the Act 30-31 Revenues it collected.  Mr. Brickley's testimony should therefore be excluded as irrelevant.

C.      **The OMB Act and the Retention Provisions of Section 8 of Article VI of the Commonwealth Constitution Have Been Satisfied Without Consideration of Mr. Brickley's Testimony**

42.     Mr. Brickley's proposed testimony is also irrelevant because, as a matter of law, based on indisputable facts, the retention conditions laid out by Section 8 of Article VI of the Puerto Rico Constitution have been satisfied.[6]  When the Commonwealth filed for relief under

---

[6]  Section 8 of Article VI of the Puerto Rico Constitution provides:  "In case the available revenues including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."  P.R. Const., art. VI, § 8.

PROMESA Title III, the entire principal amount due on its debt accelerated and became payable.[7]
As a result of this acceleration, the Plan has to provide treatment for the entire GO debt, not simply
for the amount that matured or the interest payments missed during the pendency of the Title III
case.  The principal on GO bond debt amounts to approximately $13 billion; guaranteed debt that
has been asserted to have the same constitutional priority adds at least another $4 billion.  *See* Case
No. 17-BK-3283-LTS, ECF No. 17628 at 86, 90.  It is indisputable that the Commonwealth has
not once, during the pendency of the Title III cases, had sufficient "available resources" to make
more than $17 billion in payments to the GO bondholders.  And, indeed, the Plan does not provide
for their full payment—rather, Articles 5-16 and 19-50 of the Plan propose to pay varying amounts
to holders of GO and guaranteed debt, but in no case do the payments equal 100% of such claims.
And the payments being made to holders of GO and guaranteed bond claims under the Plan are
being funded by collections of the revenues (including the Act 30-31 Revenues) retained by the
Commonwealth and subject to Section 8 of Article VI of the Puerto Rico Constitution.  *Id.* at 42
(specifying that revenues retained pursuant to Section 8 of Article VI of the Puerto Rico
Constitution are being used to pay GO bond debt under Plan).  The Commonwealth has thus
retained the Act 30-31 Revenues (and other conditionally appropriated revenues) during the Title
III case in order to pay the GO and guaranteed bonds in the Plan.  This is permitted by Section 8
of Article VI of the Puerto Rico Constitution—other "available revenues" plainly are "insufficient"
to satisfy GO bond debt and other debt with constitutional priority.

43.     The Brickley Report suggests that the DRA Parties' legal counsel are of the opinion
that the retained revenues must be spent the same fiscal year they are retained to pay GO bond

---

[7]  *In re Oakwood Homes Corp.*, 449 F.3d 588, 602 n.19 (3d Cir. 2006) ("'bankruptcy operates as the acceleration of the
principal amount of all claims against the debtor.' H.R. Rep. No. 95-595, at 352-54."); *Moreira v. Digital Employees
Fed. Credit Union (In re Moreira)*, 173 B.R. 965, 969 (Bankr. D. Mass. 1994) (same).

debt, otherwise the retention conditions of the Puerto Rico Constitution and OMB Act are violated. *See, e.g.,* Brickley Report at 5. This contention is wrong, however—neither Article VI, Section 8 nor the Act 30-31 Excise Tax Statutes state that disbursements to pay GO debt must be made during a particular fiscal year.[8] Section 8 of Article VI merely provides for an "insolvency test" ("[i]n case the available revenues including surplus . . . are insufficient to meet the appropriations . . . ."). It basically states the obvious: if revenues are insufficient to pay for expenses, then the Commonwealth can retain the monies and distribute them "in accordance with the order of priorities established by law." It does not state those disbursements have to be made within any particular "fiscal year." Moreover, any purported fiscal year limitation ignores the implications of the Commonwealth filing for relief under PROMESA Title III: during the pendency of the case, the Commonwealth does not have an obligation to make present payments on its GO bond debt.[9] The Commonwealth can thus retain collections of the Act 30-31 Revenues year after year in order to pay GO bond debt when the Plan eventually goes effective.

44.     Moreover, it is clear that retention under Section 8 of Article VI of the Commonwealth Constitution, if applicable, is permissible because PROMESA makes manifest that the Commonwealth retention power has been triggered. Congress inserted findings into PROMESA § 405(m) stating there is a "fiscal emergency" in Puerto Rico that has made the Commonwealth "unable to provide its citizens with effective services," and that necessitates a fair and orderly "restructur[ing]" of the Commonwealth's debts. PROMESA § 405(m)(1), (m)(2), (m)(4). Congress's findings demonstrate what is clear from the facts—the Commonwealth does

---

[8]   Section 8 of Article VI allows for retention if "the available revenues including surplus *for any fiscal year* are insufficient to meet the appropriations *made for that year* . . . ." P.R. Const. art. VI, § 8 (emphasis added). Notably, while the section limits the "available revenues including surplus" and "appropriations" to those made within a particular "fiscal year," it does not qualify when disbursements have to be made.

[9]   *See supra* n. 5.

not have the funds necessary to pay its debt and continue performing the basic governmental services.  Section 8 of Article VI requires nothing more.  In any case, PROMESA leaves the determination of what are the available resources and whether there is sufficient money to pay all appropriations to the Oversight Board.  *See, e.g.*, *Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 330 F. Supp. 3d 685, 704 (D.P.R. 2018) ("Since a certified budget is in full effect as of the first day of the covered period, ***means and sources of government spending are necessarily rendered unavailable if they are not provided for within the budget***.") (emphasis added).

45.  As is clear from the Plan and the Commonwealth's budgets, the Oversight Board has determined the Commonwealth has insufficient money to continue appropriations to HTA. Retention of collections of the Act 30-31 Revenues is therefore permissible as a matter of law, without regard to any testimony from Mr. Brickley.  Mr. Brickley's testimony should be therefore be excluded as irrelevant, as it does not bear on any fact of consequence to whether the retention conditions under Section 8 of Article VI were triggered—they were.

46.  For the reasons stated above, the Oversight Board requests the testimony of Mr. Brickley be excluded under Rules 104(b), 401, 402 and 702 of the Federal Rules of Evidence.

## NOTICE

47.  In accordance with the Court's standing orders, the *Fifteenth Amended Case Management Procedures* ( the "Case Management Procedures") [ECF No. 17127-1], and the *Order Establishing Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. 17640], the Oversight Board has provided notice of this motion, in the form of paper copies thereof sent by first class mail or digital copies sent by email, to (a) all creditors who filed notices of intent to participate in discovery in connection with confirmation proceedings, (b) all creditors who have filed objections to confirmation, (c) all

creditors who filed notices of correspondence, and (d) the Master Service List (as defined in the Case Management Procedures), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  The Oversight Board submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE the Oversight Board respectfully requests that the Motion be granted, that the Court enter the proposed order attached hereto as **Exhibit A** and the Court grant the Oversight Board such other and further relief as is just.

*[Remainder of Page Intentionally Left Blank]*

Dated: September 30, 2021
      San Juan, Puerto Rico

Respectfully submitted,

*/s/   Martin J. Bienenstock*

Martin J. Bienenstock
Brian. S. Rosen
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*/s/   Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

Timothy W. Mungovan
Elliot R. Stevens
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
One International Place
Boston, MA  02110
Tel: (617) 526-9600

Michael A. Firestein
Lary A. Rappaport
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*