**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

------------------------------------------------------------------ x
                                          :

*In re*                                     :

                                     :   PROMESA
THE FINANCIAL OVERSIGHT AND       :   Title III
MANAGEMENT BOARD FOR PUERTO RICO,   :

                                     :
      as representative of                 :   Case No. 17-BK-3283 (LTS)

                                     :
THE COMMONWEALTH OF PUERTO RICO,     :   (Jointly Administered)
*et al.*,[1]                                    :

            Debtors.                    :

                                     :
------------------------------------------------------------- x

## *AMICUS CURIAE* AND LEGAL BRIEF OF THE OFFICE OF THE COURTS ADMINISTRATION OF THE COMMONWEALTH OF PUERTO RICO

*[Space left blank intentionally]*

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II.  REQUIREMENTS FOR AN *AMICUS CURIAE* ...................................................... 2

III. SUMMARY OF THE PERTINENT PROVISIONS OF THE PLAN OF ADJUSTMENT AND
     DISCLOSURE STATEMENT ................................................................................ 4

   A. CONSTITUTUIONAL AND LEGAL FRAMEWORK THAT WOULD BE AFFECTED BY
   THE   IMPLEMENTATION OF THE PERTINENT PROVISIONS .......................................7

   B. EFFECT OF THE PROPOSED JRS REFORM OVER THE OPERATIONS OF THE
   PUERTO RICO JUDICIARY SYSTEM ............................................................... 10

IV. CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Alliance of Auto. Mfrs. v. Gwadowsky*,
297 F.Supp.2d 305, 306 (D.Me.2003). ........................................................................ 2

*Booth v. U.S.,*
291 U.S. 339, 352 (1934). ........................................................................................ 8

*Brau Linares v. Commonwealth, et al.,*
190 D.P.R. 315 [90 PR Offic. Trans. 24 at 25-26] (2014) ................................ 1,6,8,12

*Fin. Oversight & Mgmt. Bd. For P.R.,*
330 F.Supp.3d. 685, 701, 702 (D.P.R. 2017).  ..................................................... 10,13

*García Martínez v. Gobernador*,
109 D.P.R. 294, 297−298 [9 PR Offic. Trans. 385 at 390] (1979) .............................. 9

*Neonatology Assocs. P.A. v. Comm'r,*
293 F.3d 128, 131,133 (3d Cir. 2002),.................................................................... 3,4

*Noriega Rodríguez v. Gobernador,*
120 D.P.R. 267 (1988) ............................................................................................. 5

*Resort Timeshare Resales, Inc. v. Stuart*,
764 F.Supp. 1495, 1500–01, 1501, 1591 (D.Me.1991) ............................................. 2

*Strasser v. Doorley,*
432 F.2d 567, 569 (1st Cir. 1970) ............................................................................ 3

*U.S. v. Hatter,*
U.S. 557, 577 (2001)................................................................................................ 8

*Voices for Choices v. Illinois Bell Tel. Co.,*
339 F.3d 542, 545 (7th Cir. 2003) ............................................................................3

## Constitutional Provisions

<u>P.R. Const.</u> Art. V, § 7 ......................................................................................... 2

<u>P.R. Const.</u> Art. V, § 10 ..................................................................................... 8

<u>P.R. Const.</u> Art. VI, § 10 ................................................................................... 8

US Const. art. III, § 1, LPRA tit. 1, at 165. ...................................................... 8

## Statutes

PR ST T. 4 § 24n. ............................................................................................. 2

4 L.P.R.A. § 25b............................................................................................... 5

4 L.P.R.A. § 24v............................................................................................... 5

Fed. R. App. P. 29 ............................................................................................ 2

## Other Authorities

*A.B.A., Standards for State Judicial Retirement Plans,*

   *Standard 4.70 (1985)* ............................................................................... 12

*Ed R. Haden & Kelly Fitzgerald Pate,*

   *The Role of Amicus Briefs, 70 Ala. Law. 114, 116 (2009)*........................ 3

*James Madison, Alexander Hamilton, and John Jay,*

   *The Federalist Papers, 472−473*.............................................................. 7

**TO THE HONORABLE COURT:**

COMES NOW, the Office of the Courts Administration of the Commonwealth of Puerto

Rico (the "OAT," for its Spanish acronym), through the undersigned legal counsel, and respectfully

submits this legal brief as *amicus curiae* in relation to the Seventh Amended Title III Joint Plan of

Adjustment of the Commonwealth of Puerto Rico ("Plan of Adjustment"), *see* Docket Entry No.

17627, and the "Disclosure Statement for the Seventh Amended Title III Joint Plan of Adjustment

of the Commonwealth of Puerto Rico, et al." (the "Disclosure Statement"), *see* Docket Entry No.

17628, particularly, as it relates to the Judiciary Retirement System (the "JRS").

**I. INTRODUCTION**

> *[T]he history of the Constitutional Assembly debates shows that not even a budget
> crisis in the Government treasury would justify affecting the protection afforded to
> the judges against a reduction in their salary and emoluments, inasmuch as this
> would affect judicial independence.*
>
> *Brau, Linares v. Commonwealth*, et al., 190 D.P.R. 315 [90 PR Offic. Trans. 24, at
> 23] (2014).

On July 30, 2021, the Financial Oversight and Management Board for Puerto Rico

("FOMB") filed the Plan of Adjustment and the Disclosure Statement.  Both documents include

pension reform measures that will impact the JRS, a constitutionally mandated public pension

trust system for members of the judiciary.  Among the proposed modifications, there is a freeze

in the accumulation of benefits for participants of the JRS, both retirees and current judges, as

well as monthly benefit reductions.  The OAT in particular, and the judiciary in general, are deeply

concerned about the adverse effects that will result from these modifications.  These effects go

well beyond affecting the financial well-being of the judges, as they also threat the stability and

functionality of the Judicial Branch.  As will be further explained below, the OAT respectfully

requests that it be allowed as *amicus curiae* to represent the special interests of the Puerto Rico

judiciary and aid this Court in understanding the pertinent issues that impact the same.

The Constitution of the Commonwealth of Puerto Rico bestows upon the Chief Justice of

the Puerto Rico Supreme Court the authority to direct the administration of the judiciary system

1

and provides for the appointment of an Administrative Director to assist in such functions. *See* PR CONST. Art. V, § 7 ("The Chief Justice shall direct the administration of the courts and shall appoint an administrative director who shall hold office at the will of the Chief Justice."). Whereas the Puerto Rico Constitution creates the position of the Administrative Director of the judiciary system, the Puerto Rico Judiciary Act of 2003, organized the OAT. Pursuant to Section 24n of the Judiciary Act, the Administrative Director shall "direct the Courts Administration Office [… which] shall perform such duties that will expedite the judiciary process, shall establish measures to achieve the evaluation, efficiency and excellence in the rendering of services and any other similar duties directed by the Chief Justice, for the best functioning of the judiciary system." PR ST T. 4 § 24n. Given the OAT's key role in the administration of Puerto Rico's judicial system, as *Amicus*, the OAT can provide a unique perspective on the impact the proposed modifications to the JRS would have on the operation of the Commonwealth's judiciary and the rendering of services which, we respectfully submit, adds value and helps this Court receive a broader, more balanced view of the pertinent issues.

## II. REQUIREMENTS FOR AN *AMICUS CURIAE*

Rule 29 of the Federal Rules of Appellate Procedure allows for a party to file an *amicus* brief only by leave of the court, or if all the parties have consented to its filing. *See* Fed. R. App. P. 29. Although there are rules governing the participation of *amicus curiae* on appeal, there is no provision in the Federal Rules of Civil Procedure "as to the conditions under which a trial court should permit *amicus* appearances and the restrictions, if any, that should attend its appearance." *Alliance of Auto. Mfrs. v. Gwadowsky,* 297 F.Supp.2d 305, 306 (D.Me.2003). Nevertheless, "the district court retains 'the inherent authority' to appoint *amicus curiae* 'to assist it in a proceeding.'" *Id*. (quoting *Resort Timeshare Resales, Inc. v. Stuart,* 764 F.Supp. 1495, 1500–01 (D.Me.1991)). An *amicus* is not a party and "does not represent the parties but participates only for the benefit of the court." *Resort Timeshare,* 764 F.Supp. at 1501.

2

The acceptance of *amicus* briefs is within the sound discretion of the courts. *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970); *All. of Auto. Mfrs. v. Gwadowsky*, 297 F. Supp. 2d 305, 307 (D. Me. 2003). The First Circuit has stated that, when allowing *amicus* briefs, the party in interest must demonstrate a special interest:

> [W]e believe that a district court lacking joint consent of the parties should go slow in accepting ... an *amicus* brief **unless**, as a party, although short of a right to intervene, **the *amicus* has a special interest that justifies his having a say**, or unless the court feels that existing counsel may need supplementing assistance.

*Strasser*, 432 F.2d at 569 (emphasis added).

The following criteria has been established regarding the decision to allow the filing of *amicus* briefs: "whether the brief will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs." Ed R. Haden & Kelly Fitzgerald Pate, *The Role of Amicus Briefs*, 70 Ala. Law. 114, 116 (2009) (citing *Voices for Choices v. Illinois Bell Tel. Co.,* 339 F.3d 542, 545 (7th Cir. 2003)). These would more likely be met, according to the court, when "a party is inadequately represented; or ... the would-be *amicus* has a direct interest in another case that may be materially affected by a decision in this case; or ... the *amicus* has a unique perspective or specific information that can assist the court beyond what the parties can provide." *Id.* (citing *Voices for Choices v. Illinois Bell Tel. Co.,* 339 F.3d 542, 545 (7th Cir. 2003)).

In the case of *Neonatology Assocs. P.A. v. Comm'r*, 293 F.3d 128, 131 (3d Cir. 2002), Judge Alito took a more liberal stand regarding *amicus* briefs. When examining Rule 29 of the Federal Rules of Appellate Procedure, he noted that within Rule 29 are the requirements of "(a) an adequate interest, (b) desirability, and (c) relevance." Justice Alito explained that under modern practice an *amicus* is required to have an interest in the case, instead of being impartial. *Id*. He rejected the argument that a restrictive approach to allowing *amicus* briefs is more protective of the court's time and lessens its workload. The open approach to *amicus* briefs provides that "motions for leave to file *amicus* briefs [should be granted] unless

it is obvious that the proposed briefs do not meet Rule 29's criteria as broadly interpreted." *Neonatology Assocs.,* 293 F.3d at 133.

We urge this Court to grant the present request since the *Amicus'* participation will allow the Court to consider the pertinent issues that impact the operation of the judiciary system in Puerto Rico.  The OAT, as the entity that oversees the efficient functioning of the judiciary in Puerto Rico, can provide a unique perspective and information to assist this Court in examining the Disclosure Statement, as it pertains to the proposed reform measures for the JRS.

As will be further discussed, if approved, the proposed reforms to the JRS would impact the stability and strength of the judiciary system and could significantly change the fabric and the role that Puerto Rico's judiciary has always served.  The proposed freeze in the accumulation of benefits for participants of the JRS, as well as the monthly benefit reductions, are already causing, and will continue to cause, the resignation of experienced jurists who have served the judiciary for many years and whose experience and expertise will not be easily replaced or replicated.  The uncertainty of the future of the JRS is forcing many experienced and dedicated judges to make a choice between their economic stability and a judicial career, to the detriment of the Puerto Rico Judicial Branch and the people it serves.

## III. SUMMARY OF THE PERTINENT PROVISIONS OF THE PLAN OF ADJUSTMENT AND DISCLOSURE STATEMENT

In the pertinent part, both the Plan of Adjustment and the Disclosure Statement identify the Judiciary Retirement System as *JRS* and define a *JRS Participant Claim* as a Claim on account of being or having been a Participant in JRS for (a) retiree benefits accrued as of May 3, 2017, and (b) any right to accrue additional retiree benefits in the JRS from and after the Effective Date.  *See* Sections 1.318 and 1.319, respectively, of the Plan of Adjustment. The JRS Participant Claims, in turn, are classified under Article LV Provisions for Treatment of Active and Retired Employee Retirement Benefit Claims, Class 51H, section 55.8, and the proposed adjustments to Class 51H is described as follows:

4

(a) <u>Adjustment of Benefits</u>. Each holder of an Allowed JRS Participant Claim shall be entitled to receive on account of such Allowed Active JRS Participant Claim (i) his or her benefits that accrued as of May 3, 2017, as modified pursuant to the Monthly Benefit Modification and the terms set forth on Exhibit "E" hereto, including, without limitation, the elimination of any cost of living adjustments from and after the Effective Date, subject to the Benefit Restoration, and (ii) such additional benefits for service on or after May 4, 2017, frozen as of the date as set forth on the term sheet attached as Exhibit "E" hereto, as applicable, to such holder of an Allowed Active JRS Participant Claim, including the social security benefits defined therein.

(b) <u>Rejection</u>. To effectuate the freeze of contractual rights of Active JRS Participants to accrue pension benefits under Puerto Rico law as set forth on Exhibit "E" hereto, the contractual obligations of the Commonwealth to accrue such benefits, including without limitation, pursuant to the statutes set forth in Part III of Exhibit "K" hereto, shall be deemed rejected pursuant to section 365(a) of the Bankruptcy Code.

(c) <u>Preemption</u>. All provisions of the Commonwealth Constitution, Commonwealth statutes, including, without limitation, statutes set forth in Part III of Exhibit "K" hereto, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require, or enforce employee pension and other benefits that are modified and/or preserved Participant Claims hereunder, are preempted as inconsistent with PROMESA.

*See* Plan of Adjustment, Section 55.8, page 123, and Disclosure Statement, page 82.

Exhibit "E" of the Plan of Adjustment provides a "*summary* of modifications with respect to outstanding benefits of the Judiciary Retirement System", pursuant to "modifications to JRS legislation."  *See* pages 209-10. (Emphasis added). It is not clear whether a more *detailed* document will be filed later by the FOMB to describe the proposed changes to JRS retirement benefits.  Note, for example, that the summary "applies to judges serving without a fixed tenure", which in Puerto Rico refers to only 8 Justices currently serving in the Supreme Court.[2] Although "[t]he Plan … provides that … JRS … will undergo extensive legislative modifications," it is uncertain whether that implies further legislative action or an act of this Court alone. *See* Disclosure Statement, page 82.

---

[2] *See Noriega Rodríguez v. Gobernador*, 120 D.P.R. 267, 1988 WL 580869, 20 P.R. Offic. Trans. 285 (noting "lifetime appointment of the Supreme Court justices"); 4 L.P.R.A. § 25b (Superior Court Judges shall hold office for a term of sixteen (16) years. Municipal Judges shall hold office for a term of twelve (12) years); 4 L.P.R.A. § 24v ("Court of Appeals …  judges … shall hold office for a term of sixteen (16) years").

5

Currently, JRS Members are accruing benefits pursuant to Puerto Rico law, which establishes a defined benefit pension plan for judges, although hybrid for certain members hired on July 1, 2014 or later. *See Brau, Linares v. Commonwealth*, et al., 190 D.P.R. 315 [90 PR Offic. Trans. 24] (2014), discussing that the retirement system for Puerto Rico judges is constitutional in nature, and thus holding that any legislative reform must be prospective.

The Plan of Adjustment, in turn, provides for an "adjustment of [said] benefits". Plan of Adjustment, Section 55.8, page 123. Specifically, according to the Plan, "benefits accrued up to and including May 3, 2017 shall be subject to the Monthly Benefit Modification[.] ... Benefits accrued from and after the Effective Date shall be based on contributions and earnings in new segregated DC retirement accounts funded by employee contributions." Plan of Adjustment, page 210. In other words, the Plan of Adjustment provides for a benefit accrual freeze and subsequent transition to a defined contribution plan.

Additionally, the Plan of Adjustment includes the following pension reform measures, among others:

1. <u>Elimination of Bonuses</u> - Christmas, Summer, and Medicine bonus will no longer be paid to JRS members who retire after the freeze date. Further, the Medical Insurance Plan contribution will also be eliminated for retirements taken after the freeze date.

2. <u>Delay in Retirement Eligibility</u> – For judges who do not meet certain criteria, retirement eligibility will be delayed.

3. Elimination of Cost-of-Living Adjustment - The three percent (3%) Cost-of-Living Adjustment (COLA), which has been granted every three years since 2002, will be eliminated.

4. <u>Implementation of a defined contribution account</u> – the minimum employee contribution shall be eight and one-half percent (8.5%), adjusted for Social Security withholdings, which the FOMB mandatorily contemplates for certain judges.

*See* Disclosure Statement, pages 461-464.

As noted, the Plan provides that the JRS will undergo "extensive legislative modifications." As will be discussed below, the enactment of such legislation would directly contravene Article

6

VI, Section 10 of the Puerto Rico Constitution, and applicable Puerto Rico Supreme Court jurisprudence.

### A.   CONSTITUTUIONAL AND LEGAL FRAMEWORK THAT WOULD BE AFFECTED BY THE IMPLEMENTATION OF THE PERTINENT PROVISIONS

Article VI, Section 10 of the Puerto Rico Constitution specifically provides that no law shall diminish the salary or emoluments of any public officer after his election or appointment.  This prohibition is premised on the doctrine of separation of powers, which is central to our democratic system.  Our Framers adopted the separation of powers doctrine as it was developed and established in the United States Constitution.  In view of the vulnerability of the Judiciary, the framers of the United States Constitution deemed it necessary to provide specific guarantees to judges to secure their independence and protect the citizens. In The Federalist No. 79, Alexander Hamilton stated:

> Next to permanency in office, nothing can contribute more to the independence of the judges than a fixed provision for their support . . .  **In the general course of human nature, a power over a man's subsistence amounts to a power over his will. And we can never hope to see realized in practice the complete separation of the judicial from the legislative power, in any system which leaves the former dependent for pecuniary resources on the occasional grants of the latter** . . .  The plan of the convention accordingly has provided that the judges of the United States "shall at stated times receive for their services a compensation which shall not be diminished during their continuance in office."
>
> .     .     .     .     .     .     .     .     .     .     .
>
> A man may then be sure of the ground upon which he stands, and can never be deterred from his duty by the apprehension of being placed in a less eligible situation . . .  **The salaries of judicial officers may from time to time be altered, as occasion shall require, yet so as never to lessen the allowance with which any particular judge comes into office, in respect to him**.

James Madison, Alexander Hamilton, and John Jay, *The Federalist Papers*, 472−473. (Emphasis added.)  Accordingly, the federal Constitution included, in Section 1 of Article III, the so-called "compensation clause," which provides that "[t]he Judges, both of the supreme and inferior Courts, shall hold their Offices during good behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." US

7

Const. art. III, § 1, LPRA tit. 1, at 165.  When determining whether this constitutional provision has been violated, it suffices that the statute in question reduces the compensation of the judges, **regardless of the purpose of Congress in enacting the law**. *U.S. v. Hatter*, 532 U.S. 557, 577 (2001).  In its interpretation of this constitutional provision, the federal Supreme Court has held that the word "compensation" includes the salary of judges as well as other benefits, such as their retirement pensions and that **Congress cannot retroactively diminish the pensions of federal judges**.  *Booth v. U.S.*, 291 U.S. 339, 352 (1934).  Likewise, many state courts have concluded that the compensation of judges includes their pensions and cannot be retroactively diminished.[3]

Based on the same principles embodied in the federal Constitution, Article VI, Section 10 of the Puerto Rico Constitution expressly provides that no law shall diminish the salary or emoluments of any public officer after his election or appointment.  The inclusion of the word "emoluments" clarified that the constitutional protection includes, besides the income, other benefits, such as pensions.  In furtherance of the concept of judicial independence, the Constitution of Puerto Rico went beyond the compensation clause.  The Constitution also requires the Legislative Assembly to "establish a retirement system for judges."  PR CONST. Art. V, § 10. Accordingly, **the JRS is the only government retirement system that is constitutionally mandated**.  Thus, in Puerto Rico, the prohibition against the reduction in salary and emoluments for the judiciary, as well as the judiciary retirement system, are both constitutionally guaranteed.

The Puerto Rico Supreme Court has acknowledged this fact in *Brau, Linares v. Commonwealth, et al.*, 190 D.P.R. 315 [90 PR Offic. Trans. 24 at 25-26] (2014) ("In sum, the

---

[3] *See, e.g. DePascale v. State*, 47 A.3d 690, 705 (NJ 2012); *Voorhees v. Sagadahoc County*, 900 A.2d 733, 736−738 (Me. 2006); *Lee v. State Bd. of Pension Trustees*, 739 A.2d 336, 344−345 (Del. 1999); *White v. Com., Employees' Retirement System*, 565 A.2d 839, 842−843 (Pa. 1989); *Board of Trustees of Public Employees' Retirement Fund v. Hill*, 472 N.E.2d 204, 209 (Ind. 1985); *Hudson v. Johnstone*, 660 P.2d 1180, 1184−1185 (Alaska 1983); *Wagoner v. Gainer*, 279 S.E.2d 636, 640−643 (W.Va. 1981); *Marvel v. Dannemann*, 490 F. Supp. 170, 176−177 (D. Del. 1980); *McKenna v. Com. State Emp. Retirement Bd.*, 421 A.2d 1236, 1243 (Pa. 1980); *Olson v. Cory*, 636 P.2d 532, 539 (Cal. 1980); *Betts v. Board of Administration*, 582 P.2d 614, 617 (Cal. 1978); *Stiftel v. Carper*, 378 A.2d 124, 131 (Del. Ch. 1977), *aff'd, Carper v. Stiftel*, 384 A.2d 2, 57 (Del. 1977); *Miles v. Tennessee Consol. Retirement System*, 548 S.W.2d 299, 304−305 (Tenn. 1976); *Sylvestre v. State*, 214 N.W.2d 658, 666−667 (Minn. 1973).

protection against the retroactive reduction in the income and emoluments of judges, which seeks to safeguard judicial independence, also applies to their retirement pensions and other financial benefits related to their office."); and *García Martínez v. Gobernador*, 109 D.P.R. 294, 297−298 [9 PR Offic. Trans. 385 at 390] (1979) ("The judicial retirement system has constitutional standing. […] This mechanism is structured so the judges of the Commonwealth of Puerto Rico may accumulate reserves for their old age, disability, separation from service or death, thus guaranteeing the independence of the judicial power. We should always bear in mind the purpose of the Constitutional Convention of guaranteeing the independence of the judiciary. […] In this way, the judges while in office, would not have to worry about financial problems when they retire, and their widow and minor children will be well protected in case of death.").

The FOMB's proposals for the JRS are in clear conflict with the above cited constitutional clauses and Puerto Rico Supreme Court precedent.  Not only would the proposal have the effect of vacating these specific constitutional clauses, but also it would require the preemption of several current laws, and the enactment of new ones to regulate the JRS, a situation that has been expressly recognized by the FOMB in both the Disclosure Statement and the proposed Plan of Adjustment.  Nevertheless, and as previously determined by this Court, the FOMB does not have the power to enact or modify state legislation.  While analyzing a request for dismissal from a complaint filed by the Governor of Puerto Rico against the FOMB concerning certain budget provisions of the proposed fiscal plan, this Court categorically concluded that PROMESA did not grant the FOMB the authority to legislate:

> **[T]he Oversight Board has not been given power to affirmatively legislate**. Thus, with respect to policy measures that would require the adoption of new legislation or the repeal or modification of existing Commonwealth law, the Oversight Board has only budgetary tools and negotiations to use to elicit any necessary buy-in from the elected officials and legislators. Elected officials and legislators, on the other hand, have the ability to obstruct implementation altogether, or complicate it in such a way as to cripple Puerto Rico's ability to use it to promote the needed return to fiscal responsibility and access to capital markets.

*In re Fin. Oversight & Mgmt. Bd. For P.R.*, 330 F.Supp.3d. 685, 701 (D.P.R. 2017).  (Emphasis added.)   Furthermore, this Court described PROMESA as an "awkward power-sharing arrangement and (…) is 'fraught with potential for mutual sabotage.'" *Id*. Thus, and against this backdrop, the Puerto Rico legislature would be required to modify actual legislation or enact new legislation, which it lacks the power to enact under the Puerto Rico Constitution, as has been determined by clear Puerto Rico Supreme Court precedent prohibiting the reduction of the salary and pension benefits of judges after they are in office.

**B.  EFFECT OF THE PROPOSED JRS REFORM OVER THE OPERATIONS OF THE PUERTO RICO JUDICIARY SYSTEM**

The OAT is deeply concerned about the effect that the proposed changes to the JRS will have on its ability to attract and retain qualified professionals for the judiciary system.  This Court must take into consideration that the compensation of judges in the Puerto Rico judiciary is significantly lower than that of judges in similar positions in other U.S. jurisdictions.  For example, the yearly salary for Municipal Judges in Puerto Rico is $69,600, while Superior Judges make $89,600. In contrast, the median salary for trial court judges in other U.S. jurisdictions is $161,829. For Court of Appeals Judges, the median salary is $178,762, compared to $105,000 in Puerto Rico. Judges in Puerto Rico make approximately $70,000 less than judges in comparable categories in other U.S. jurisdictions, or sometimes much less as is the case for Municipal Judges.[4]  Additionally, judge salaries in Puerto Rico have remained the same since 2003, without any increase to account for inflation.  Contrary to other jurisdictions, in Puerto Rico, judges' salaries are not subject to periodic revisions or increases based on seniority.  These conditions raise concerns that additional financial insecurity resulting from the proposed JRS reform measures will cause experienced judges to step down and seek other professional opportunities in the private sector or in other U.S. jurisdictions.

---

[4] Data obtained from the 2021 National Council of States Courts Survey of Judicial Salaries, at https://www.ncsc.org/__data/assets/pdf_file/0022/66307/Survey-of-Judicial-Salaries-July-2021.pdf.

As of August 30, 2021, the Puerto Rico judiciary system was composed of 78 Municipal Judges, 242 Superior Judges, 34 Appeals Judges, and 8 Supreme Court Justices, for a total of 362 judges. Until 2018, judicial resignations averaged 15 per year, on a five-year data trend.[5]  In 2019, the year when the FOMB filed its first Plan of Adjustment,[6] judicial resignations increased dramatically, with 32 judges resigning; a 213% increase from the prior five-year average of 15. During the first 8 months of this year (2021) alone, when the Plan of Adjustment's discussions were resumed,[7] 20 judges have resigned, which represents 2.5 resignations per month.

After experiencing this increase in resignation rates, only forty per cent (40%) of current members of the judiciary (148 of 362 judges) have more than 12 years on the bench.  It is worth noting that judges in Puerto Rico courts are not elected officials, but rather, are appointed by the Governor with the advice and consent the Puerto Rico Senate.

To keep these numbers in perspective, it is worth bearing in mind that total incoming cases in trial courts on average exceed 160,000 per year, on a five-year data trend.  As this Court knows, a sudden increase in judicial resignation rates can have a serious and negative impact on the stability and functionality of a judicial system, and its ability to administer justice in thousands of cases.

For decades, the tradition of a long judicial career has served Puerto Rico well. Unfortunately, when you combine the dismantling of judicial pensions, with the already extremely low salaries that judges receive, the judicial career – which provides the opportunity for continuous learning, the building of judicial empathy and instincts, and the fair administration of justice – is put in great peril.

To be clear, the Puerto Rico judiciary has experienced pension reforms, although prospective in nature, pursuant to the American Bar Association' standards. *See* A.B.A.,

---

[5] Resignations include retirements from office.
[6] *See* Docket Entry No. 8765.
[7] *See* Docket Entry No. 15849, extending deadlines to file a proposed plan of adjustment up to March 8, 2021.

*Standards for State Judicial Retirement Plans*, Standard 4.70 (1985) ("There should be no reduction in benefits, either during active service or after retirement.")  Accordingly, as a result of Act 162 of 2013, as construed by a 2014 decision of the Puerto Rico Supreme Court,[8] the judges appointed on or after July 1, 2014, experienced:

(i)      an increase in the contribution to the retirement system;

(ii)     an increase in retirement age;

(iii)    an increase in the minimum number of years of judicial service required for retirement;

(iv)     a change in the base period previously used to calculate the pension, so that it would no longer be the highest salary earned as judge, but the average salary earned during the last five years;

(v)      a Hybrid Program, which replaced the possibility of receiving a pension amounting to 75% of the highest salary earned as judge;

(vi)     the elimination of certain bonuses upon retirement; and

(vii)    the elimination of credit for other services rendered to the Government in any capacity other than as judge. [9]

This shows that members of the judiciary have been experiencing reductions in their pension benefits since 2013.  The proposed reform measures would significantly add to these reductions. The younger, more recently appointed judges that have less than 12 years on the bench, which represent 60% of all the judiciary, would have an even greater incentive to resign, given that their pension benefits are the lowest.  As a result, the Government's investment in their skills formation and development will not be returned.   Under these adverse circumstances, the OAT also anticipates a diminished ability to attract and retain the best candidates for the judiciary.

All of the above would be detrimental to the best interests of the people of Puerto Rico, without a significant macroeconomic benefit for the Island as "JRS participants … represent less than 3% of the cumulative projected benefit payments."  Disclosure Statement, page 1926 (FOMB Report on Pensions).  Cases will take longer to see their course, as vacancies will increase, and

---

[8] *See Brau Linares v. Commonwealth, et al.*, 190 D.P.R. 315 [90 PR Offic. Trans. 24] (2014)
[9] *Id.*

12

the judiciary will have less and less senior, experienced judges available to attend to an increased workload.  The proposed JRS reform, no doubt, will have a negative impact on the general operation and services rendered by the Puerto Rico judiciary.  Accordingly, it is the OAT's position that any solution being contemplated to address the Government's fiscal challenges should instead promote an independent, strong, and capable judiciary to convey stability, and the rule of law, in Puerto Rico.

## VI. CONCLUSION

This Court does not need to be lectured on the importance of a strong, stable, and experienced judiciary for the adequate administration of justice.  As explained above, the mere filing of the proposal, which, as drafted, will adversely affect a constitutionally mandated retirement program for judges, already is impairing the stability of the Judicial Branch of Puerto Rico.  Setting aside the FOMB's lack of authority to preempt well-settled constitutional and legal provisions through the proposed JRS reform, and the legislature's lack of authority to approve unconstitutional legislation, the detrimental impact on the stability of Puerto Rico's judicial system should be reason enough to reject the proposed reform.  For the foregoing reasons, the OAT urges this Court to deny the proposed JRS reform as detailed in the Disclosure Statement and the proposed Plan of Adjustment. The approval of the Disclosure Statement and the potential confirmation of the Plan of Adjustment would be detrimental to one of the three branches of Puerto Rico's democratic form of government, the judiciary. While the FOMB attempts to promote access to capital markets, the access to justice for the people of Puerto Rico should not be severed nor sacrificed.  The balance of interests, both of paramount importance, "should motivate the parties to work together, quickly, for positive change within the statutory structure in which neither of them holds all the cards." *In re Fin. Oversight & Mgmt. Bd. For P.R.*, 330 F.Supp.3d. at 702.

**Certificate of Service**

IT IS HEREBY CERTIFIED that on this date the foregoing was electronically filed with the

Clerk of the Court using the CM/ECF System which will send notification of such filing to the

participants in said record.

**RESPECTFULLY SUBMITTED.**

This 1st day of October 2021, in San Juan, Puerto Rico.

        **MCCONNELL VALDÉS LLC**
        *Attorneys for the OAT*
        270 Muñoz Rivera Avenue
        San Juan, Puerto Rico 00918
        P.O. Box 364225
        San Juan, Puerto Rico 00936-4225
        Tel: (787) 759-9292
        Fax: (787) 759-8282

        By: s/ *Juan A. Marqués-Díaz*
        Juan A. Marqués-Díaz
        USDC-PR No. 211803
        jam@mcvpr.com

        By: s/ *Isabel Torres Sastre*
        Isabel Torres Sastre
        USDC-PR No. 229114
        its@mcvpr.com