UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

---------------------------------------------------------------x

PROMESA

Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**Re: ECF No. 17221**

# OBJECTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO MOTION OF INDIVIDUAL BONDHOLDER FOR AN ORDER FURTHER EXTENDING THE VOTING DEADLINE FOR RETAIL INVESTORS SEVEN DAYS AND FOR ADDITIONAL RELIEF TO REMEDY PROBLEMS IN THE SOLICITATION PACKAGES AND PROCESSES

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................................. 1
BACKGROUND ............................................................................................................................ 2
OBJECTION .................................................................................................................................. 5
    I.    The Extension of the Plan Supplement Deadline Does Not Require an Extension of the Voting Deadline for Retail Investors ........................................... 5
    II.    The Solicitation Packages Were Properly Served ..................................................... 7
    III.    The Additional Relief Requested Is Unwarranted .................................................... 8
CERTIFICATE OF SERVICE .................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Banco Bilbao Vizcaya Argentaria P.R. v. Santiago Vázquez*,
   471 B.R. 752, 760 (1st Cir. B.A.P. 2012) ................................................................................. 9

*Caraballo-Cecilio v. Marina PDR Tallyman LLC*,
   Case No. 14-1454 (PAD), 2016 WL 7174615 (D.P.R. Dec. 8, 2016) ....................................... 9

*Guzmán v. Rentas*,
   567 B.R. 854, 863 (1st Cir. B.A.P. 2017) ................................................................................. 9

*Marie v. Allied Home Mortg. Corp.*,
   402 F.3d 1, 7 n.2 (1st Cir. 2005) ............................................................................................... 9

**To the Honorable United States District Court Judge Laura Taylor Swain:**

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Public Buildings Authority ("PBA" and, together with the Commonwealth, the "Debtors") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection (the "Objection") to the *Motion of Individual Bondholder for an Order Further Extending the Voting Deadline for Retail Investors Seven Days and for Additional Relief to Remedy Problems in the Solicitation Packages and Processes* [ECF No. 18306] (the "Motion"), filed by Peter C. Hein ("Mr. Hein"). In support of this Objection, the Oversight Board respectfully represents as follows:

### PRELIMINARY STATEMENT[3]

1. This Court has already granted, with the Oversight Board's consent, a limited extension of the Voting Deadline—from October 4, 2021, to October 18, 2021—in response to concerns raised by several parties regarding delays in receipt of Solicitation Packages. Now, Mr. Hein seeks an additional seven-day extension of the Voting Deadline, solely for Retail Investors, to ensure they have adequate time to review the Plan Supplement, which the Plan requires be filed no less than seven (7) days prior to the Voting Deadline, *i.e.*, October 11, 2021. But, the Disclosure Statement and Solicitation Procedures Order, both of which were previously approved by this Court (including over the objection of Mr. Hein), already contemplated a seven-day window

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

[3] Capitalized terms used but not defined in this Preliminary Statement have the meanings set forth below.

between the filing of the Plan Supplement and the Voting Deadline. Mr. Hein provides no basis to alter this procedure now.

2. Mr. Hein also raises several additional objections to the content of the Solicitation Packages, and on those grounds, seeks miscellaneous additional relief. Specifically, he contends the Solicitation Packages did not comply with the terms of the Solicitation Procedures Order, that additional disclosures are required, and that Retail Investors should have the opportunity to deliver their bonds through the ATOP system without being required to simultaneously vote to accept or reject the Plan. As an initial matter, Mr. Hein's contention that the Solicitation Packages did not comply with the Solicitation Procedures Order is incorrect. Mr. Hein's remaining allegations are equally meritless because they raise no new points justfying the modification or reconsideration of the existing Solicitation Procedures Order, and, accordingly, there is no basis for either modifying the voting procedures or requiring additional disclosures.

3. For the reasons set forth below, the Motion should be denied.

## BACKGROUND

4. On July 30, 2021, the Oversight Board proposed the Plan.[4] *See* ECF No. 17627. Among other things, the Plan provides for the filing of a Plan Supplement "as soon as practicable (but in no event later than seven (7) days prior to the Ballot Date)." Plan § 1.395. The Plan further defines the "Ballot Date" as "[t]he deadline(s) established by the Title III Court . . . for the submission of Ballots/Election Forms and the election of alternative treatments pursuant to the terms and provisions of the Plan." *Id.* § 1.110. The Plan provides that the Plan Supplement include, among other things, "forms of the New GO Bonds and the CVIs and, if not previously

---

[4] "Plan" refers to the *Seventh Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.*, ECF No. 17627, dated July 30, 2021, as it may be amended, supplemented, or modified.

2

enacted, the draft of the New GO Bonds Legislation and the CVI Legislation . . . ." *Id.* § 1.395. The applicable deadline for filing the Plan Supplement was set forth in both the Plan and the Disclosure Statement.[5] *See* Plan § 1.395; Disclosure Statement at v.

5. Following submission of the Plan, the Court established a schedule and procedures relating to solicitation of creditor votes upon the Plan. *See Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [ECF No. 17639] (the "Solicitation Procedures Order"). Among other things, the Solicitation Procedures Order established October 4, 2021 as the deadline for submission of votes on the Plan (the "Voting Deadline").

6. Pursuant to the Solicitation Procedures Order, on or before August 30, 2021, the Debtors mailed Solicitation Packages (as defined in the Solicitation Procedures Order) to creditors eligible to vote on the Plan. *Id.* at 8.

7. On September 23, 2021, the Retiree Committee filed the *Motion of the Official Committee of Retired Employees to Extend the Voting Deadline for Holders of Claims in Classes 51B, 51D, 51E, 51F, and 51L*, ECF No. 18214, seeking a fourteen (14) day extension of the Voting Deadline, to and including October 18, 2021 at 5:00 p.m. (Atlantic Time), solely for creditors entitled to vote in Classes 51B, 51D, 51E, 51F, and 51L (the "Retiree Classes"). *See id.* at ¶ 18.

---

[5] "Disclosure Statement" refers to the *Disclosure Statement for the Seventh Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.*, ECF No. 17628, dated July 30, 2021.

3

8. Also on September 23, 2021, the UCC filed the *Joinder of Official Committee of Unsecured Creditors with Respect to (I) Motion of the Official Committee of Retired Employees to Extend the Voting Deadline for Holders of Claims in Classes 51B, 51D, 51E, 51F, and 51L and (II) Urgent Motion of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico for Expedited Consideration of Its Motion to Extend the Voting Deadline for Holders of Claims in Classes 51B, 51D, 51E, 51F, and 51L* "and to request that any extension of the Voting Deadline also be made applicable to holders of" claims in Classes 54, 58, and 66. ECF No. 18228.

9. On September 24, 2021, Mr. Hein filed the *Motion of Individual Bondholder for an Order Extending the Voting Deadline for Retail Investors* [ECF No. 18237], requesting a commensurate fourteen-day extension of the Voting Deadline for Retail Investors (as defined in the Plan).

10. In response to the aforementioned motions and joinder, on September 24, 2021, the Oversight Board filed the *Financial Oversight and Management Board for Puerto Rico's (A) Response to the Retiree Committee Motion to Extend Voting Deadline, UCC Joinder to Retiree Motion, and Motion of Individual Bondholder for an Order Extending the Voting Deadline for Retail Investors, and (B) Cross-Motion to Modify Certain Deadlines in Solicitation Procedures Order and Confirmation Procedures Order* [ECF No. 18243] (the "Oversight Board Response"), wherein the Oversight Board consented to the fourteen-day extension of the Voting Deadline, provided that the Court also extend the deadline for submission of the Voting Tabulation Declaration (as defined in the Oversight Board Response). The Oversight Board further noted that the fourteen-day extension of the Voting Deadline would extend the deadline for filing the Plan Supplement to and including October 11, 2021. *Id.* ¶ 6.

11. On September 27, 2021, the Court entered the *Order Granting Modification of Certain Deadlines in Solicitation Procedures Order and Confirmation Procedures Order* [ECF No. 18258], extending the Voting Deadline by fourteen (14) days, to and including October 18, 2021, and extending the deadline for filing the Voting Tabulation Declaration by nine (9) days, to and including November 3, 2021. By application of the dates set forth in the Plan, the deadline for filing the Plan Supplement was likewise extended by fourteen (14) days, to and including October 11, 2021 (the "Plan Supplement Deadline").

## OBJECTION

### I. The Extension of the Plan Supplement Deadline Does Not Require an Extension of the Voting Deadline for Retail Investors

12. Mr. Hein requests the Voting Deadline be extended by an additional week—from October 18, 2021 to October 25, 2021—in order to provide Retail Investors with sufficient time to review the Plan Supplement, contending this additional time is necessary because one of his two brokers "appear[s]" to require submission of votes "six days before [the] voting deadline set by the Court," and therefore, Retail Investors may have only one day to review the Plan Supplement prior to the deadline for submitting their votes on the Plan. Mot. at 4. Mr. Hein's requested relief is unnecessary.

13. The Plan and Disclosure Statement have always contemplated that the Plan Supplement will be filed seven days prior to the Voting Deadline. That deadline was clearly set forth in both the Plan, § 1.395, and the Disclosure Statement, at v. Mr. Hein filed an objection to the Disclosure Statement, *see Response and Objection of Individual Bondholder to Debtors' Application for Approval of Disclosure Statement*, [ECF No. 16908], but did not object to the provision requiring the filing of the Plan Supplement seven days prior to the Voting Deadline. Further, the Solicitation Procedures Order provides that "[h]olders of Claims in the Bond Classes

5

must deliver their voting instructions to the Nominee according to the instructions in the applicable Notice in sufficient time for the Nominee to receive and effectuate the creditor's vote through ATOP in accordance with the procedures of DTC by the Voting Deadline." Solicitation Procedures Order ¶ 32. Mr. Hein also filed an objection to the Oversight Board's request for entry of the Solicitation Procedures Order. *See (1) Response and Objection of Individual Bondholder to Debtors' Motions for Orders Establishing Confirmation Procedures, and (2) Cross-Motion to Establish a Committee to Represent Retail Investors in the Confirmation Process*, [ECF No. 16909]. But, Mr. Hein did not address any potential conflict between the timing for filing the Plan Supplement and for submission of voting instructions in that objection, either.

14. Mr. Hein now complains that a further extension is necessary because it "appear[s]"—based upon information distributed by his broker, Merrill Lynch, with respect to the original voting deadline of October 4, 2021—that one of his two brokers may require the submission of votes several days in advance of the Voting Deadline. Mot. at 4. But, as explained above, the Plan, the Disclosure Statement, and the Solicitation Procedures Order always contemplated that the Plan Supplement would be filed no later than seven days before the Voting Deadline, and that holders of Bond Claims might be required to submit instructions to their Nominees (as defined in the Solicitation Procedures Order) in advance of that Voting Deadline. Mr. Hein provides no basis to depart from this procedure now.

15. In any event, whether Mr. Hein's broker establishes procedures to submit voting instructions in advance of the Voting Deadline is outside the control of the Debtors. Regardless, the Oversight Board respectfully submits that, to the extent Mr. Hein's broker does so, that is an issue to be addressed between Mr. Hein and his broker.

6

**II.     The Solicitation Packages Were Properly Served**

16.     Mr. Hein contends the Solicitation Packages he received did not comply with the terms of the Solicitation Procedures Order because they did not contain either a ballot or a Notice of Voting and Election Instructions (as defined in the Solicitation Procedures Order), and on that basis, seeks an order requiring the Oversight Board to mail paper ballots and Notices of Voting and Election Instructions.  Mot. at 2-3, 5.[6]  Mr. Hein's request is based on a misunderstanding of the Solicitation Procedures Order.

17.     The Solicitation Procedures Order does not require that every creditor receive a paper ballot or a Notice of Voting and Election Instructions in their Solicitation Packages, as Mr. Hein contends.  Mot. at 5.  Rather, the Solicitation Procedures Order requires the Debtors to mail solicitation packages containing "the appropriate form of Ballot or Notice, ***if any***, with instructions for voting and/or making an applicable election . . . ."  Solicitation Procedures Order ¶ 13.  As a member of the Bond Classes, Mr. Hein will vote through his Nominees, who in turn will vote electronically via the Automated Tender Offer Program ("ATOP").  Because Mr. Hein's Nominees will have the opportunity to cast his vote on the Plan using ATOP, he does not require a paper ballot.  For that reason, no paper ballot was included in the Solicitation Packages served to Mr. Hein through his Nominees.

18.     With respect to the Notice of Election and Voting Instructions (as defined in the Solicitation Procedures Order), the Solicitation Procedures Order provides as follows:

---

[6] Mr. Hein also contends the solicitation package he received directed him to a link titled "'Bondholder Solicitation Materials' located on the left-hand navigation panel of the web page," but when he went to the Prime Clerk webpage, he saw only links titled "Commonwealth Solicitation Materials," "Commonwealth Flash Drive Materials," and "Noteholder Solicitation Materials."  Mot. at 2-3.  The Prime Clerk website has been updated so that the link titled "Noteholder Solicitation Materials" now reads "Bondholder Solicitation Materials."

7

> "if it is a Nominee's (or Nominee's agent's) customary and accepted practice to forward the solicitation information to (and collect votes or elections from) Beneficial Owners by voter information form, email, telephone, or other customary means of communications, as applicable, the Nominee (or Nominee's agent's) may employ that method of communication in lieu of sending the paper notice, and/or Solicitation Package. Moreover, if it is the Nominee's (or Nominee's agent's) customary internal practice to provide to Beneficial Owners an electronic link to the solicitation materials (including, but not limited to, the Disclosure Statement and the Plan), the Nominee (or Nominee's agent's) may follow such customary procedures in lieu of forwarding the flash drive or paper copies containing the Disclosure Statement and Plan."

Solicitation Procedures Order ¶ 14.

19. That is precisely what transpired here. As required by the Solicitation Procedures Order, the Debtors' Balloting Agent served solicitation packages to Nominees.[7] Those Nominees then forwarded the Solicitation Packages to holders of bonds, including Mr. Hein, using their customary internal practices. To the extent Mr. Hein's Nominee's customary internal practices included the transmittal of certain information—such as the Notice of Voting and Election Instructions for Holders—electronically, the Notice of Voting and Election Instructions for Holders would have been served in that manner.

20. Accordingly, the Solicitation Packages sent by the Oversight Board complied with the Solicitation Procedures Order. Mr. Hein's request for the remailing of ballots and Notices of Voting and Election Instructions, which would be prohibitively expensive and technically impractical, should therefore also be denied.

## III. The Additional Relief Requested Is Unwarranted

21. Mr. Hein raises several additional concerns with the adequacy of the Solicitation Packages he received and with the voting process, and on that basis, seeks miscellaneous additional

---

[7] Because the Debtors do not have access to the account information for beneficial owners at each Nominee, it is not possible for the Debtors to send the Solicitation Packages directly to each beneficial owner.

8

relief. As an initial matter, to the extent Mr. Hein's concerns relate to the contents of the Solicitation Package distributed by the Debtors' Balloting Agent to the Nominees, they should have been raised in connection with the motion for entry of the Solicitation Procedures Order, and are therefore waived. *See, e.g.*, *Caraballo-Cecilio v. Marina PDR Tallyman LLC*, Case No. 14-1454 (PAD), 2016 WL 7174615, at *1 (D.P.R. Dec. 8, 2016) (finding "argument [] deemed waived at this stage" because "argument was available . . . [y]et defendant failed to proffer any reason for not having raised it earlier"). And, to the extent Mr. Hein seeks reconsideration of the Solicitation Procedures Order, he has presented no valid basis for doing so. Motions for reconsideration are granted sparingly. *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005) ("it is very difficult to prevail on a Rule 59(e) motion"). To demonstrate entitlement to reconsideration, a movant must "clearly establish a manifest error of law or fact or [] present newly discovered evidence that could not have been discovered during the case." *Guzmán v. Rentas (In re Nieves Guzmán)*, 567 B.R. 854, 863 (1st Cir. B.A.P. 2017) (citing *Banco Bilbao Vizcaya Argentaria P.R. v. Santiago Vázquez (In re Santiago Vázquez)*, 471 B.R. 752, 760 (1st Cir. B.A.P. 2012)). Mr. Hein does not even attempt to meet this burden.

22. None of the purported concerns Mr. Hein raises have any merit in any event. *First*, Mr. Hein contends the solicitation packages are insufficient because they do not include "a clear and prominent statement that the Retail Investor must deliver his or her bonds before the voting deadline to the Automatic Tender Offer Program at DTC to be eligible to receive a share of the Retail Support Fee," Mot. at 6; and they do not explain "that to qualify for the Retail Support Fee [Retail Investors] must have their bonds delivered through the Automatic Tender Offer Program at DTC with a certification that such holder is a Retail Investor." Mot. at 7.

9

23. As Mr. Hein acknowledges, however, this requirement is clearly set forth in the Disclosure Statement. Disclosure Statement at 513. This requirement is also clearly set forth in the Plan, which provides that "distribution of the Retail Support Fee, if any, to a holder of an [allowed eligible Bond Claim] is subject to the delivery, on [or] prior to the Ballot Date, of such holder's applicable bonds through the Automatic Tender Offer Program at The Depository Company with a certification that such holder is a Retail Investor." *See* Plan §§ 77.1(a), (b). Retail Investors have therefore received more than sufficient disclosure regarding the requirement to tender their bonds through ATOP.

24. Mr. Hein also contends that ATOP "improperly" requires Retail Investors who tender their bonds through ATOP to vote to "accept" or "reject" the Plan. Mot. at 8-9. According to Mr. Hein, the requirement to affirmatively cast a vote on the Plan when delivering bonds through ATOP places additional requirements on Retail Investors "that are not provided for in the Plan or disclosed in the Disclosure Statement," and on that basis, Mr. Hein seeks an order requiring ATOP to allow investors to deliver their bonds without voting on the Plan. Mot. at 8-9. Mr. Hein's requested relief is nonsensical. ATOP is specifically designed to facilitate acceptances and rejections of the Plan. Authorizing Retail Investors to deliver their bonds to ATOP *without* also voting on the Plan is contrary to the purpose of utilizing ATOP. Further, requiring Retail Investors to vote to accept or reject the Plan in order to participate in the Retail Support Fee is also consistent with the purpose of the fee. The Debtors incorporated the Retail Support Fee into the Plan in order to ensure that Retail Investors have the opportunity to receive a PSA Fee, or a fee in return for their agreement to support the Plan. Disclosure Statement at 43. That requires Retail Investors to make a determination whether to accept or reject the Plan.

10

25. *Second*, Mr. Hein contends the September 24, 2021 Voluntary Corporate Action notice (the "Voluntary Corporate Action Notice") "improperly coerces an 'accept' vote and is also not an accurate statement of Plan provisions" because the Voluntary Corporate Action Notice states that "if you do meet the definition of Retail Investor and do not vote to accept the Plan you risk not receiving your pro rata portion of the Retail Support Fee." Mot. at 8-9. As an initial matter, the Voluntary Corporate Action Notice was prepared by Mr. Hein's Nominee, not by the Oversight Board or its agents, and it is therefore inappropriate to seek relief from the Oversight Board regarding the notice. In any event, the Voluntary Corporate Action Notice does not improperly coerce accepting votes. Rather, the Voluntary Corporate Action Notice simply notifies Retail Investors of the risk that, if they vote to reject the Plan, and if their *class* as a whole votes to reject, they will therefore not receive a pro rata share of the Retail Support Fee. This has been clearly set forth in the Plan and the Disclosure Statement. There is nothing improper about the Nominees' decision to disclose this risk to Retail Investors.

26. *Third*, Mr. Hein objects there was no "clear statement in the hard copy notice" Mr. Hein received "of the bondholder's right to request a hard copy of the full materials," Mot. at 9. But, the Solicitation Procedures Order contained no such requirement—and Mr. Hein provides no new evidence supporting modification of that order now. In fact, as explained above, the Solicitation Procedures Order *authorized* the Nominees to provide solicitation packages by their customary procedures—regardless of whether those customary procedures involve the distribution of materials via electronic means. Solicitation Procedures Order ¶ 14. Nonetheless, the Confirmation Hearing Notice included in the Solicitation Package distributed to Nominees clearly provides that hard copies of the Plan and Disclosure Statement may be obtained by contacting the Balloting Agent (Prime Clerk, LLC). Confirmation Hearing Notice at 2.

11

27. *Lastly*, Mr. Hein contends the notice provided to Retail Investors "does not tell Retail Investors the internal date set by the brokerage firm for instructions may be much sooner." Mot. at 9. That is also incorrect. The Solicitation Procedures Order, which was included in the solicitation packages, provides that "[h]olders of Claims in the Bond Classes must deliver their voting instructions to the Nominee according to the instructions in the applicable Notice in sufficient time for the Nominee to receive and effectuate the creditor's vote." Solicitation Procedures Order ¶ 32. In any event, the Debtors are not aware of, nor have control over, the internal procedures of the brokers and other nominees responsible for distributing solicitation packages to beneficial owners of bonds. The Debtors are therefore not in a position to provide more specific disclosure regarding the Nominees' requirements for submission of voting instructions and the timing thereof.

28. For the foregoing reasons, the Motion should be denied.

*[Remainder of page intentionally left blank]*

WHEREFORE the Commonwealth respectfully requests that the Court (a) sustain the Objection, (b) deny the Motion, and (c) grant the Debtors such other and further relief as is just.

Dated: October 04, 2021
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Jeffrey W. Levitan (*pro hac vice*)
Joshua A. Esses (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as Representative for the Commonwealth*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Munoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as Representative for the Commonwealth*

13

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/ *Hermann D. Bauer*
Hermann D. Bauer

14

15