UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,
Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

-----------------------------------------------------------------x

## STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD IN CONNECTION WITH OCTOBER 6–7, 2021 OMNIBUS HEARING

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this Status Report in connection with

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the October 6–7, 2021 omnibus hearing and in response to this Court's order, dated September 28, 2021 [ECF No. 18269].

I. **General Status and Activities of the Oversight Board, Including Measures Taken in Response to the COVID-19 Pandemic**

1. The Oversight Board and the Government of Puerto Rico (the "Government") continue to collaborate to protect the health and welfare of the people of Puerto Rico from the COVID-19 virus and to effectively utilize federal funding related to the COVID-19 pandemic.

2. The Oversight Board remains focused on achieving its mandates under PROMESA so that fiscal responsibility, access to capital markets, and economic prosperity and growth can return to Puerto Rico. To those ends, the Oversight Board (a) continued its attempts to procure settlements with creditors not currently supporting the proposed plan of adjustment and (b) engaged in extensive discussions with the elected leaders of Puerto Rico, Senate President José Luis Dalmau Santiago, Speaker of the House Rafael Hernández Montañez, and Governor Pedro R. Pierluisi regarding the proposed plan of adjustment.

3. On September 17, 2021, the Oversight Board held a Public Board Meeting, during which it gave a presentation on the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. [ECF No. 17627] (the "Plan") explaining the Plan's benefits.

II. **General Status of Relations Among the Oversight Board and Commonwealth and Federal Governments**

4. The Oversight Board's relationship with the Government continues to be collaborative and, notwithstanding differences on several critical issues, the Oversight Board is working closely with Puerto Rico Governor Pedro R. Pierluisi and the rest of the Commonwealth administration. The Oversight Board and Government remain in agreement that the health, safety, and economic welfare of the people of Puerto Rico must be the priority. Governor Pierluisi is

serving as his own *ex officio* representative on the Oversight Board, which affords more opportunity for direct interactions, and sharing of viewpoints and insights on important issues.

5. The Oversight Board has been working closely with Governor Pierluisi and the Commonwealth administration towards confirmation of the Plan. Specifically, the Oversight Board and the Government's discussions have focused on legislation for the Plan, which would authorize the issuance of the new general obligation bonds and contingent value instruments. Following these extensive discussions, on September 27, 2021, the Oversight Board announced that, if the Puerto Rico Legislature enacts the necessary legislation for the Plan, it would agree to (i) increase the threshold for retirees exempt from any reduction in benefits from $1,500 per month to $2,000 per month; (ii) support restoring any reduction in pension benefits, if Puerto Rico receives federal Medicaid funds exceeding the anticipated amounts in the Commonwealth's 2021 Certified Fiscal Plan that generate enough savings in the general fund budget to permit such restoration; and (iii) share the benefits resulting from the debt service reduction with municipalities, if the Commonwealth obtains and maintains adequate Medicaid funding. On September 30, 2021, the Puerto Rico House of Representatives voted to approve House Bill 1003, which contains the necessary authorizations for the issuances contemplated by the Plan. However, the approved version of House Bill 1003 differs significantly from the Bill that was originally proposed. The version of House Bill 1003 approved by the Puerto Rico House of Representatives eliminates all of the pension-related language that was initially included in the proposed Bill and expressly conditions the authorization for the issuances contemplated by the Plan upon the Oversight Board not including any cuts to retired government employees' pensions in the Plan. The Puerto Rico Senate will now consider the Bill. The Oversight Board hopes that final

legislation passed by the Senate, and, to the extent that differences exist, upon conference, the House, will reflect the discussion between the Oversight Board and the Legislature.

6. At present, and in view of the continuing propounding of legislation imposing financial conditions inconsistent with accomplishing the Oversight Board's statutory mandates, the Oversight Board is uncertain whether the currently proposed plan of adjustment can be confirmed without modification, but is continuing to work towards that end.

7. The Oversight Board is also committed to ensuring the Government's compliance with PROMESA in proposing and enacting legislation. On July 2, 2021, the Oversight Board commenced an action against the Governor of Puerto Rico, Pedro R. Pierluisi Urrutia, in his official capacity; AAFAF; the Honorable José Luis Dalmau, in his official capacity as a representative of the Puerto Rico Senate; and the Honorable Rafael Hernández Montañez, in his official capacity as a representative of the Puerto Rico House of Representatives, in the U.S. District Court for the District of Puerto Rico to enjoin the enforcement and nullify Act 7, which bars the Government from using any money or other resources to "enable" or "achieve" any plan of adjustment that is not the plan of adjustment Act 7 requires [Adv. Proc. No. 21-00072, ECF No. 1]. Act 7 would undo the freeze on pensions, thereby increasing liabilities by over $5 billion and undermining pension settlements already in the proposed plan of adjustment. Act 7 also imposes limits on distributions to GO bondholders and bars the settlement of contested GO bonds embedded in the Oversight Board's proposed plan of adjustment. Act 7 bars any distribution to contested GO bonds unless the distribution is preceded by litigation and judgment. On August 13, 2021, the Oversight Board filed a motion for summary judgment in the adversary proceedings on the basis that Act 7 (i) impairs or defeats the purposes of PROMESA, as determined by the Oversight Board; (ii) is significantly inconsistent with the Commonwealth's Fiscal Plan; (iii)

reprograms funds without the required Oversight Board certification; (iv) modifies debt without the required Oversight Board approval; and (v) violates the Supremacy Clause of the U.S. Constitution. A ruling on the Oversight Board's summary judgment motion has not yet been entered.

8. Since Act 7's enactment, the Government has continued to pursue policies inconsistent with the Plan. On July 8, 2021, Governor Pedro R. Pierluisi filed two bills, the "Zero Pension Cut Law" and the "Law to Guarantee the Right to a Fair Pension," both of which impose pension obligations inconsistent with the Plan and the Commonwealth's Certified Fiscal Plan. The Zero Pension Cut Law mandates that pensions not be reduced through the Plan and instead be addressed through the Commonwealth's fiscal plans and budgets. The Law to Guarantee the Right to a Fair Pension guarantees a defined pension for certain government employees. On September 16, 2021, Governor Pedro R. Pierluisi, signed House Bill 959, which repeals Act 33 of 1942, a statute that the Oversight Board previously cited as permitting new bond issuances without legislation expressly providing for such issuances. On September 21, 2021, Governor Pierluisi announced that he signed into law Senate Bill 181 (now called "Act 46"), which limits AAFAF's ability to take actions with respect to debt restructurings and public pensions. The Oversight Board advised the Government that Act 46 impairs or defeats PROMESA's purposes because it effectively bars AAFAF from supporting any plan of adjustment that does not comply with the Act's mandates. The Oversight Board remains committed to preventing the Government from imposing a plan of adjustment undermining fiscal responsibility, market access, and arm's length settlements negotiated by retirees and financial creditors.

9. These examples of governmental attempts to undermine and change plans of adjustment has informed the Oversight Board as to the protections it must request in the proposed confirmation order and otherwise.

### III. General Status of Work Toward Substantially Consensual Plans of Adjustment

10. In the Status Report for the August omnibus hearing, the Oversight Board noted that it had reached an agreement in principle with the American Federation of Teachers ("AFT") and its local affiliates, Asociacion de Maestros de Puerto Rico, and Asociacion de Maestros de Puerto Rico – Local Sindical (collectively, "AMPR"), which was subject to ratification by AMPR's members. On September 28, 2021, AMPR announced that its members voted against ratifying this agreement. The Oversight Board is concerned members of AMPR may have voted down the agreement in reliance on Act 7 or other legislation being touted as providing greater benefits, and without realizing the agreement provides greater benefits than will otherwise be available. On September 29, 2021, a variety of union leaders testified at a House Treasury and Budget Committee public hearing against approving House Bill 1003 as proposed, due to its inclusion of pension restitution language, maintaining that the Government should continue litigating Act 7.

11. The Oversight Board is committed to continuing negotiations with creditors not currently supporting the proposed plan of adjustment in an effort to reach consensus with more creditors and continues to work towards plan confirmation hearings in November.

### IV. General Status of ADR and ACR Processes, Anticipated Number of Matters Directed into ADR, and Anticipated Timetable for Initiation of ADR Procedures with Respect to Such Matters

12. Pursuant to the *Order (A) Authorizing Administrative Resolution of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12274] (the

6

"ACR Order"), the Debtors have filed eighteen notices transferring claims into Administrative Claims Reconciliation (as defined in the ACR Order), see *First Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 13603] (the "First ACR Transfer Notice"), *Second Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 14182] (the "Second ACR Transfer Notice"), *Third Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 14785] (the "Third ACR Transfer Notice"), *Fourth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15027] (the "Fourth ACR Transfer Notice"), *Fifth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15086] (the "Fifth ACR Transfer Notice"), *Sixth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15116] (the "Sixth ACR Transfer Notice"), *Seventh Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15534] (the "Seventh ACR Transfer Notice"), *Eighth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15721] (the "Eighth ACR Transfer Notice"), *Ninth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15948] (the "Ninth ACR Transfer Notice"), *Tenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 16259] (the "Tenth ACR Transfer Notice"), *Eleventh Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 16514] (the "Eleventh ACR Transfer Notice"), *Twelfth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 16677] (the "Twelfth ACR Transfer Notice"), *Thirteenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 16926] (the "Thirteenth ACR Transfer Notice"), *Fourteenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 17128] (the "Fourteenth ACR Transfer Notice"), *Fifteenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 17212] (the "Fifteenth ACR Transfer Notice"), *Sixteenth Notice of*

*Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 17320] (the "Sixteenth ACR Transfer Notice"), *Seventeenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 17968] (the "Seventeenth ACR Transfer Notice"), *Eighteenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 18364] (the "Eighteenth ACR Transfer Notice," and collectively, the "ACR Transfer Notices"), and have transferred approximately 44,840 claims (collectively, the "ACR Designated Claims"), into Administrative Claims Reconciliation. The ACR Designated Claims will be resolved utilizing the Pension/Retiree Procedures, the Tax Refund Procedures, the Public Employee Procedures, and/or the Grievance Procedures (each as defined in the ACR Order), as set forth in the ACR Transfer Notices.

13. Subsequent thereto, the Debtors have filed notices, see *Notice of Filing of First Administrative Claims Resolution Status Notice* [ECF No. 14515] and accompanying *First Administrative Claims Resolution Status Notice* [ECF No. 14515-1] (the "First ACR Status Notice"), *Notice of Filing of Second Administrative Claims Resolution Status Notice* [ECF No. 15367] and accompanying *Second Administrative Claims Resolution Status Notice* [ECF No. 15367-1] (the "Second ACR Status Notice"), *Notice of Filing of Third Administrative Claims Resolution Status Notice* [ECF No. 15812] and accompanying *Third Administrative Claims Resolution Status Notice* [ECF No. 15812-1] (the "Third ACR Status Notice"), *Fourth Administrative Claims Reconciliation Notice* [ECF No. 16322] (the "Fourth ACR Status Notice"), *Fifth Administrative Claims Reconciliation Notice* [ECF No. 16888], *Sixth Administrative Claims Reconciliation Notice* [ECF No. 16888] (the "Sixth ACR Status Notice"), and *Seventh Administrative Claims Reconciliation Notice* [ECF No. 18363] (the "Seventh ACR Status Notice"), wherein the Debtors reported the successful resolution of over 23,680 ACR Designated Claims. The Debtors' next ACR Status Notice (as defined in the ACR Order) is scheduled to be

8

filed on November 30, 2021, and the Debtors anticipate reporting the successful resolution of hundreds of additional ACR Designated Claims.

14. With respect to certain ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants that the administrative files for their claims are incomplete, and requesting additional information in order to enable the Debtors to reconcile their claims. Certain claimants have provided responses to these mailings, and the Debtors are evaluating the additional information received and determining whether the information received is sufficient to complete the claimants' administrative file; the Debtors continue to await responses from additional claimants. In many instances, the Debtors have re-sent mailings to claimants who did not respond to the Debtors' initial letter, reiterating their request for information sufficient to complete the claimants' administrative file. With respect to additional ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants of the initiation of the ACR process and the timetable for the resolution of their ACR-related claims.

15. As of July 13, 2021, the Commonwealth, ERS, and PBA had transferred into ACR all outstanding claims which they understood, as of that date, were eligible for such transfer. The Debtors' analysis of outstanding claims remains ongoing, however. Accordingly, the Debtors identified additional claims suitable for transfer into ACR which were transferred pursuant to the Seventeenth ACR Transfer Notice and the Eighteenth ACR Transfer Notice. To the extent the Commonwealth, ERS, and PBA identify additional claims eligible for ACR, they will be transferred into the ACR Procedures. The Debtors' next ACR Transfer Notice (as defined in the ACR Order) is scheduled to be filed on October 29, 2021. The Debtors may transfer additional claims into Administrative Claims Reconciliation on or before that date.

16. Pursuant to the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [ECF No. 12576] (the "ADR Order"), the Debtors have filed sixteen notices transferring claims into the ADR Procedures (as defined in the ADR Order), see *First Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 13609] (the "First ADR Notice"), *Second Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14090] (the "Second ADR Notice"), *Third Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14521] (the "Third ADR Notice"), *Fourth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14786] (the "Fourth ADR Notice"), *Fifth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15085] (the "Fifth ADR Notice"), *Sixth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15113] (the "Sixth ADR Notice"), *Seventh Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15217] (the "Seventh ADR Notice"), *Eighth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15533] (the "Eighth ADR Notice"), *Ninth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15720] (the "Ninth ADR Notice"), *Tenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15861] (the "Tenth ADR Notice"), *Amended Eleventh Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 16540] (the "Eleventh ADR Notice"), *Twelfth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 16517] (the "Twelfth ADR Notice"), *Thirteenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 16767] (the "Thirteenth ADR Notice"), *Fourteenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 17208] (the "Fourteenth ADR Notice"), *Fifteenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 17832] (the "Fifteenth ADR Notice"), and *Sixteenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 18259] (the

"Sixteenth ADR Notice," and collectively, the "ADR Notices"), and have transferred approximately 357 claims into the ADR Procedures.

17. Subsequent thereto, the Debtors have filed notices, see *First Alternative Dispute Resolution Status Notice* [ECF No. 14185] (the "First ADR Status Notice"), *Second Alternative Dispute Resolution Status Notice* [ECF No. 15028-1] (the "Second ADR Status Notice"), *Third Alternative Dispute Resolution Status Notice* [ECF No. 15551-1] (the "Third ADR Status Notice"), *Fourth Alternative Dispute Resolution Status Notice* [ECF No.15958-1] (the "Fourth ADR Status Notice"), *Fifth Alternative Dispute Resolution Status Notice* [ECF No. 16684] (the "Fifth ADR Status Notice"), *Amended Sixth Alternative Dispute Resolution Status Notice* [ECF No. 17267] (the "Sixth ADR Status Notice"), *Seventh Alternative Dispute Resolution Status Notice* [ECF No. 17997[ (the "Seventh ADR Status Notice") indicating one (1) claim was settled in Evaluative Mediation (as defined in the ADR Order), thirteen (13) claims have been resolved, four (4) claims were currently in Evaluative Mediation, well over one hundred claims are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures and have received either an Offer or an Information Request (as defined in the ADR Order), and approximately eleven (11) claimants have accepted the Debtors' offers. Since the filing of the Seventh ADR Status Notice, the Debtors have reached an agreement in principle with the four claims in Evaluative Mediation. The Debtors are in the process of documenting the resolution of claims as to which offers have been accepted or agreements in principle have been reached.

18. The Debtors are also evaluating all responses received to Information Requests and Offers, and attempting to engage claimants in the hopes of achieving a consensual resolution of the remaining claims currently in the Offer-Exchange procedures. In addition, the Debtors are in the process of preparing offers or making Information Requests to additional ADR Designated

Claimants. The Debtors' next ADR Transfer Notice (as defined in the ADR Order) is due October 29, 2021, and the Debtors anticipate transferring additional claims into the ADR Procedures on or before that date.

19. The Debtors' review and analysis of the claims filed to date remains ongoing. At present, the Debtors continue to estimate conservatively that the maximum number of claims that might be transferred into the ADR Procedures is 7,000, while the actual number transferred might be as low as 1,000 claims. At this time, the Debtors cannot predict with certainty the timing for the initiation of ADR Procedures with respect to this population of claims, but anticipate additional accounts payable and litigation-related claims will be transferred into the ADR Procedures in the near term.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: October 5, 2021<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>*/s/ Martin J. Bienenstock*<br>Martin J. Bienenstock (*pro hac vice*)<br>Brian S. Rosen (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br>Email: mbienenstock@proskauer.com<br>brosen@proskauer.com<br>ppossinger@proskauer.com<br>ebarak@proskauer.com<br><br>-and-<br><br>*/s/ Hermann D. Bauer*<br>Hermann D. Bauer<br>USDC No. 215205<br>Ubaldo M. Fernández<br>USDC No. 224807<br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br><br>*Attorneys for the Financial Oversight and Management Board as Representative of the Debtor* |