United States District Court
District of Puerto Rico

| | |
|---|---|
| In re:<br><br>The Financial Oversight and<br>Management Board for Puerto Rico,<br><br>as representative of<br><br>The Commonwealth of Puerto Rico,<br>The Employees Retirement System of<br>the Government of the Commonwealth<br>of Puerto Rico, and the Puerto Rico<br>Public Buildings Authority,<br><br>Debtors | PROMESA Title III<br><br>No. 17 BK 3283 (LTS)<br><br>(Jointly Administered) |

**Objection to "Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al." by creditor PFZ Properties, Inc.**

To the Honorable Court:

PFZ Properties, Inc. ("PFZ"), a creditor of the Commonwealth of Puerto Rico ("the Debtor or the Commonwealth"), by and through its undersigned counsel, states as follows for its objection to the confirmation of Debtor's **"Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico"** (the Plan) and its constitutionality, insofar as the treatment of its claim for the taking of its property without just compensation, as required by the Fifth Amendment to the Constitution of the United States, is concerned.

### Introduction

PFZ, a Puerto Rico Corporation, has filed a Proof of Claim[1] against the Debtor on account of a just compensation claim originating in eminent domain proceedings brought by the Commonwealth, before a Commonwealth court, for the condemnation of real estate property belonging to PFZ (case #KEF-2008-0480 before the San Juan Court of First Instance). PFZ objects to the Plan because

---

[1] PFZ filed Proof of Claim 20351 in the amount of $75,550,000.00. The claim was marked as unsecured because it is not the result of a contractual relationship secured by an asset. However, the constitutional guarantee of the Fifth Amendment was invoked at the same time.

its claim for the taking of its property without just compensation is based on the Takings Clause of the Fifth Amendment[2] to the Constitution of the United States (and Section 9 of Article II of the Commonwealth Constitution) and therefore can not be discharged, impaired or otherwise adjusted or modified in bankruptcy. Under the Plan, the Debtor proposes to treat PFZ's claim as a general unsecured claim to be compensated with a maximum of 20% of the amount of the claim and  substantially impaired. PFZ, however, is constitutionally entitled to just compensation for its claim without any such impairment, reduction or adjustment on account of the Debtor's adjustment of its debts under PROMESA and the Bankruptcy Code provisions incorporated in PROMESA.

### Background and Description of PFZ's Claims

PFZ owned beachfront land (hereinafter, the Property) comprising approximately 1,345.83 cuerdas (each cuerda being equivalent to 0.97 acres) located in the Municipality of Loíza, which it held for tourism-related development. On August 13 of 2008 the Debtor exercised its sovereign right to

---

[2] There has been substantial argument as to whether the Bill of Rights of the Constitution of the United States applies to the Commonwealth directly or through the Fourteenth Amendment. The Supreme Court has stated that "Puerto Rico is subject to the Due Process Clause of either the Fifth or the Fourteenth Amendment" *Posadas de Puerto Rico Assoc. vs. Tourism Co. of Puerto Rico,* 478 US 328, 331 n.1 (1986). And in *Torres vs. Puerto Rico*, 442 US 465 (1979), Justice Brennan's concurrent opinion states that "whatever the validity of [the Insular Cases when] ...they were decided, these cases are clearly not authority for questioning the application of the Fourteenth Amendment, or any other provision of the Bill of Rights to the Commonwealth of Puerto Rico", *Torres*, 442 US at 475-476. In its most recent decision applying a provision of the Bill of Rights to a citizen in Puerto Rico, *Commonwealth of Puerto Rico vs. Sánchez Valle*, 136 S. Ct. 1863 (2016), the Court did not discuss this issue because both parties had accepted that the Double Jeopardy Clause applied to the Commonwealth. The federal Government, however, in its brief as *amicus curiae*, at page 10, n. 1, asserted that "...the Double Jeopardy Clause could not apply to Puerto Rico through the Due Process Clause of the Fourteenth Amendment, because the Fourteenth Amendment applies only to 'state[s]'. The Double Jeopardy Clause thus must apply to Puerto Rico based on its status as a territory belonging to the United States". There seems to be no question, in any case, that the fundamental guaranties of the Bill of Rights apply to all American citizens in Puerto Rico.

condemn the Property by filing the above-described eminent domain proceedings. Acting under the Commonwealth's quick-take statute, 31 LPRA 2907, the Debtor took the title to and the possesion of the Property upon the filing of the proceedings.[3]

PFZ withdrew the sum of $4,911,000.00 deposited with the Court by the Debtor as an estimate of just compensation, as required by the Puerto Rico quick-take statute, challenged the underlying appraisal relied upon by the Debtor for such a deposit, and submitted its own appraisal, prepared by an independent appraiser, for $75,550,000.00, claiming that was the amount it was entitled to receive as just compensation under the Takings Clause. Shortly before the condemnation pretrial conference was held on April 10 of 2012, the Debtor had the entire property reappraised by a different appraiser of Debtor's own choosing, who concluded that the Property was worth $32,561,003.00 at the time of the taking. At pretrial, the Court admitted the appraisal as evidence.

Asserting that it could not afford to pay the latter amount for the Property, on April 17, 2012 the Debtor filed a motion for voluntary dismissal of the expropriation proceedings, which it later withdrew and then refiled. After more than three years of other incidents concerning this motion, on December 16 of 2015, and over PFZ's objection that the Commonwealth could not legally dismiss the case after having taken title to and possession of the Property seven years before, the Commonwealth trial court finally allowed the Debtor to voluntarily dismiss it. By the time this decision became final PROMESA had been enacted, the Oversight Board had filed these Title III proceedings and PFZ's claim for just compensation for the temporary taking of the Property

---

[3] PFZ alleges that the taking occured earlier, on the basis of the Government's conduct regarding the Property before the formal filing of the proceedings.

3

before the Commonwealth courts[4] had been stayed by such filing. At that time the Debtor held (and still holds) title to and the possession of the Property.

After having commenced Adversary Proceeding No.18-0056 to pursue its just compensation claim for the temporary taking before this Court, PFZ and the Debtor filed a Stipulation executed on July 27, 2018 pursuant to which this Court dismissed the Adversary Proceeding without prejudice and the automatic stay was lifted to allow PFZ to pursue its claim for just compensation before the Commonwealth courts [5], under the Takings Clause and Section 9 of Article II of the Commonwealth Constitution, where it is still pending resolution before the San Juan Court of First Instance. PFZ claims that it is entitled to an award of $75,550,000.00 as just compensation for the temporary taking.

**Argument**

The Debtor has presented its Seventh Plan to adjust and modify its obligations to creditors whose claims are subject to impairment and reduction. The Plan does not provide adequately for full payment to PFZ of its claim when liquidated. Instead, PFZ's claim is included in Class 54, which treats all eminent domain claims against the Commonwealth (except those having a Final Order and monies deposited in Court, which is not PFZ's case) the same way that Class 58 treats all general unsecured claims, to whom the Debtor proposes to pay not more than 20% of the liquidated amount of each claim, and would thus be substantially impaired. Contrary to Debtor's proposal, PFZ's claim is not

---

[4] Commonwealth law provides procedures whereby just compensation will be determined for the temporary taking of title and possession of condemned property in those rare cases where voluntary dismissal of a taking is allowed. See Rule 58.8 (c)of the Puerto Rico Rules of Civil Procedure.

[5] See docket #16 of Adversary Proceeding No. 18-0056.

4

subject to impairment or reduction because it is a constitutional claim, under the Takings Clause, for the taking of property without just compensation[6], and therefore may not be affected by the bankruptcy power of Congress, under which Congress authorized the adjustment of Debtor's obligations[7].

**a.**

Supreme Court decisions going back to ***Louisville Joint Stock Land Bank vs. Radford***, 295 US 555 (1935), decided at the time of a national emergency created by the economic crisis of the Great Depression, make clear the rule that Congress may not pass laws under its bankruptcy powers that would effect a taking of private property without just compensation. In ***U.S. vs. Security Industrial Bank***, 459 US 70 (1982), the Court, citing ***Radford,*** summarized that rule:

> The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation. [Citation to ***Radford*** omitted.] Thus, however "rational" the exercise of the bankruptcy power may be, that inquiry is quite separate from the question whether the enactment takes property within the prohibition of the Fifth Amendment.

---

[6] The preeminence of this constitutional guarantee has been long recognized by the Supreme Court, which, as recently as last June stated that "The Takings Clause of the Fifth Amendment ... provides '[N]or shall private property be taken for public use, without just compensation.' The Founders recognized that the protection of property is indispensable to the promotion of individual freedom. As John Adams tersely put it, '[p]roperty must be secured, or liberty cannot exist.' This Court agrees ... When the Government physically acquires property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation." ***Cedar Point Nursery vs. Hassid***, – US –, 141 S Ct 2063, 2071 (2021)(Citations omitted).

[7] Titles III and VI of PROMESA provide for debt restructurings, similar to bankruptcy cases, for Puerto Rico and its instrumentalities, by incorporating many provisions of Title 11 of the United States Code (the 'Bankruptcy Code')into Title III of PROMESA, thus allowing for restructurings similar to those possible under chapters 9 and 11 of the Bankrupcty Code.

5

459 US at 75.

In *Radford*, the Frazier-Lemke Act, which added Section 75 to the Bankruptcy Act, had been challenged as unconstitutional insofar as it prevented banks from exercising rights over foreclosed properties that they enjoyed before the challenged provisions of the Act were passed. After announcing that "[t]he bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment"[8], 295 US at 589, and facing the question whether Frazier-Lemke as applied "has taken from the [petioner] bank without just compensation, and given to [respondent] Radford, rights in specific [foreclosed] property which are of substantial value", 295 US at 601, the Court decided that:

> [...] we must hold [the Act] void; for the Fifth Amendment commands that, however great the nation's need, private property shall not be thus taken for a wholly public use without just compensation. If the public interest requires and permits the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public.

295 US at 602.

Thus, although Congress may authorize the Debtor to impair contractual claims under its bankrupcy powers, it may not authorize the taking of private property without just compensation in violation of the Fifth Amendment. See *U.S. vs. Security Industrial Bank*, 459 US at 80.

After *Radford* [9], other constitutional challenges to legislation approved under the bankrupcy power, as contrary to the Takings Clause, have reached the Supreme Court. The Court has in each case reaffirmed the teachings of *Radford*, although it has avoided declaring the statutes unconstitutional by interpreting them in a way that reaching the constitutional question became unnecessary. *Blanchette vs. Connecticut*

---

[8] Thus, if indeed, as stated before, "[t]he bankruptcy power, *like the other great substantive powers of Congress*, is subject to the Fifth Amendment", *Radford,* 295 US at 589 (emphasis ours); and the power of Congress to legislate for the territories under Article IV, Section 4, under which PROMESA was approved, is also a substantive power of Congress, it is self evident that Congress may not legislate under the Territorial Clause in a manner inconsistent with the Fifth Amendment, either.

[9] Shortly after *Radford*, Congress amended the Frazier-Lemke Act to conform it to the Court's decision. In *Wright vs. Vinton Branch of Mountain Trust Bank,* 300 US 440 (1937), the Court found the Act as amended was constitutional.

6

*General Insurance Corp.*, 419 U.S. 102 (1974), involved several consolidated challenges to the Regional Rail Reorganization Act of 1973, enacted to supplement Section 77 of the Bankrupcy Act. The statute required several railroads in reorganization to transfer their assets to Conrail, a newly created private corporation, in exchange for securities to be issued by the new corporation and federally guaranteed obligations to be issued by the United States Railway Association, a Government corporation. Because the value of these securities could not be ascertained, at the time of the reorganization, to be equivalent to that of the railroad assets transferred to Conrail, it was claimed by some creditors that any deficiency would amount to a taking under the Fifth Amendment. The Court concluded that "any deficiency of constitutional magnitude in the compensation provided under the [Rail Reorganization] Act will indeed be a taking of private property for public use", 419 US at 155, but it declined to hold the statute unconstitutional, reasoning that the Rail Act was not meant by Congress to preclude an action under the Tucker Act for a cash award "to cover any constitutional shortfall" in the compensation required by the Takings Clause. *Id*.

*U.S. vs. Security Industrial Bank*, supra, involved several consolidated challenges to Section 522(f)(2) of the Bankruptcy Reform Act of 1978, 11 USC 522(f)(2), which allowed debtors to avoid nonpossessory, nonpurchase-money liens on household furnishings and appliances. Creditors who had loaned the debtors money and had perfected nonpossessory, nonpurchase-money liens on their household furnishings and appliances prior to the enactment of the statute claimed that it operated a taking of property, to wit, their liens, without just compensation under the Takings Clause. The Court, after reaffirming *Radford* and other decisions, recognized that "there is substantial doubt whether the retroactive destruction of the [creditor's] liens in this case comports with the Fifth Amendment", but turned to consider "whether, as a matter of statutory construction, [Sec.] 522(f)(2) must necessarily be applied in that manner [...] because of the cardinal principle that this Court will first ascertain whether

7

a construction of the statute is fairly possible by which the constitutional question may be avoided." 459 US at 78 (citations omitted). Facing this question, the Court then interpreted the statute and decided that it had not been the intention of Congress to retroactively "apply [Sec.] 522(f)(2) to property rights established before the enactment date ..." 459 US at 82 (footnote omitted). Thus, it "decline[d] to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the Takings Clause." *Id.* (citations omitted).

### b.

The doctrine set down by the Supreme Court in *Radford,* supra, and the other decisions discussed above, namely that Congress under its bankruptcy power may not pass laws that would effect a taking without just compensation in violation of the Takings Clause, has been applied in a context identical to the one at bar. In *In re: City of Detroit, Debtor*, **524 BR 147 (Bankr. E.D. Michigan 2014)** several creditors (hereinafter, the Takings Clause creditors), relying on the above-cited decisions, specifically claimed that the Plan of Adjustment presented by the City of Detroit in Chapter 9 Bankruptcy proceedings was unconstitutional insofar as it treated their eminent domain claims under the Takings Clause, for takings of property without just compensation, as general unsecured claims which were to be impaired under the plan. The Court agreed. After discussing *Radford* and *Blanchette*, and also citing *U.S. vs. Security Industrial Bank*, supra, it acknowledged, at page 269, that both "*Blanchette* and *Radford* establish that bankruptcy proceedings are subject to the Fifth Amendment's prohibition on public takings of private property without just compensation." Furthermore, rejecting the City's assertion that in the Supreme Court cases it was the statute itself that effected the taking, not the plan of adjustment, the Bankruptcy Court insisted, at

8

page 270 that " [] all that matters under the Fifth Amendment is that the owner of private property must be justly compensated if that property was taken for public use, whenever and however that taking occured", and the City's plan, "[i]f confirmed, [] would deny that just compensation. The plan would allow the City to impair the property owners' constitutional claim for just compensation after the City took their private property. That violates the Fifth Amendment."

The Court in *City of Detroit*, however, did not declare the Bankruptcy Code unconstitutional. It stated that the statute, if interpreted to allow impairment of the Takings Clause creditors' claims, would be contrary to the Fifth Amendment and acknowledged that such eminent domain claims were not dischargeable, but instead of invalidating the statute and the plan of adjustment decided to avoid the constitutional question by excepting the Takings Clause creditors' claims from the plan in the confirmation order, exercising its discretion under Section 944(c)(1) of the Bankruptcy Code, 11 USC 944(c)(1)[10] . The Court stated, at page 271, that "[t]his result harmonizes chapter 9 with the Fifth Amendment while giving full effect to the principle that the Court should avoid interpreting chapter 9 in such a way that renders it unconstitutional."

**c.**

In its reply to PFZ's Objection to the Disclosure Statement for the Plan (see Dkt 16969 for the Objection and Dkt 17187 for the Reply), the Debtor relies in *Cobb vs. City of Stockton*, 909 F.3d 1256 (2018), in support of its position that PFZ' eminent domain claim may be discharged, impaired, or otherwise adjusted by the Plan[11]. But that reliance is misplaced.

---

[10] Here the Court followed the advice of the Attorney General, appearing on behalf of the United States after the Court had issued a certification under 28 USC 2403(a) that the constitutionality of the Bankruptcy Code had been questioned in the case. See *City of Detroit*, page 200.

[11] The Debtor also cited *Poinsett* **Lumber Mfg. Co. vs. Drainage District**, 119 F2d 270 (8th Cir. 1941), which is inapposite, and *In re: City of Detroit*, discussed *supra* at pages 8-9, which is adverse to its position.

9

In *Cobb*, the Court of Appeals for the Ninth Circuit, over a strong dissent by Judge Friedland, let stand a plan of adjustment that had been challenged because it impaired a claim for just compensation under the Fifth Amendment. The Bankruptcy Court had rejected the challenge and the creditor succeeded in having his appeal heard directly by the Court of Appeals. He did not, however, seek a stay of plan confirmation before the Bankruptcy Court or the Court of Appeals and the plan was confirmed and became effective and was implemented while the appeal was pending. Because the plan had long been consummated the Court of Appeals decided to dismiss the appeal, invoking the doctrine of equitable mootness. *Cobb,* at 1259, 1266. Nevertheless, it ultimately reached the merits and concluded that the creditor's claim could be adjusted by the plan. Judge Friedland, in his lucid dissent, rejected the majority's views basing his own on the Takings Clause, the Supreme Court's decisions in *Radford, Blanchette and Security Industrial Bank,* and the Bankruptcy Court's decision in *City of Detroit. Cobb,* at 1271-1273 and n.7.

The Court of Appeals concluded that Cobb's claim was not worthy of the protection that the Takings Clause of the Fifth Amendment affords the condemnee when the condemnor files for bankruptcy because it reasoned, wrongly, that Cobb's claim was just a "money claim" that had somehow been detached from his property rights, even though he was at all times holding title to the property from which his claim had arisen[12]. But even assuming the Court's characterization of the claim as a "money claim" were absolutely correct, that would be of no consequence, because all eminent domain claims are ultimately reduced to money claims for the

---

[12]

This conclusion shows that the Court misapprehended Cobb's claim. At the time the City of Stockton filed its petition before the Bankruptcy Court, Cobb had a cause of action for inverse condemnation pending before the California courts, which was stayed automatically by the filing of the petition. An appelate court in California had recognized Cobb's inverse condemnation claim after it was dismissed by a trial court. From the factual accounts about Cobb's journey through the California courts by both the Ninth Circuit's majority opinion and the dissent it is evident that title to the property involved in the litigation, originally sought to be condemned by the City, remained Cobb's because the City's eminent domain proceedings were dismissed for lack of prosecution. See *Cobb,* supra, at 1266, 1274-1275.

payment of just compensation under the Takings Clause[13], although they originate in property rights taken by the Government for public use. The very definition of just compensation found in the Supreme Court's cases show this is true: just compensation, stated the Court in *Olson vs. United States*, 292 US 246, 255 (1934), means that the owner "...is entitled to be put in as good a condition pecuniarily as if his property had not been taken", pecuniarily, of course, meaning by the payment of money; and it further stated, in *Kirby Forest Indus. vs. United States*, 467 US 1 (1984), that just compensation is "the fair market value of the property on the date it is appropriated, which is what a willing buyer would pay in cash to a willing seller at the time of taking", payments in cash being of course, payments in money. In short, all judgements determining constitutional just compensation will ultimately be reduced to money and only in that sense could they be characterized as "money judgements", although their origin will always be a claim founded in property rights. The Ninth Circuit's characterization of the claim for just compensation in *Cobb* as a "money claim" therefore affords no basis to suggest that the *Radford*, *Blanchette*, and *Security Industrial Bank* decisions are not strictly applicable here and do not shield PFZ's claim from impairment by the Debtor.

d.

In any event, whatever doubts the Court in *Cobb* might have had about Cobb's claim, and the circumstances that moved a majority of the Court to deny him the protection of the Takings clause, mainly the claim's convoluted procedural history and the fact that Cobb allowed the City's plan of adjustment to be approved, become effective and be consummated without even asking that it be stayed pending his appeal, are not present here. PFZ's claim, on the contrary, is crystal clear both as to its nature and as to its origin: PFZ owned 1345.83 cuerdas of beachfront land

---

[13] The Takings Clause does not forbid the taking of property by the Government; it forbids the taking of property without the payment of just compensation. See: *Lingle vs. Chevron USA*, Inc., 544 US 528 (2005)(the plain language of the Takings Clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power."); *Joslin Mfg. Co. vs. Providence*, 262 US 668, 676 (1923)("It has long been settled that the taking of property for public use ... need not be accompanied or preceded by payment, but that the requirement of just compensation [is met] when the public faith and credit are pledged to a reasonably prompt ascertainment and payment, and there is adequate provision for enforcing the pledge.")

11 of

in Loíza; the Debtor filed a "quick take" petition to take it for public use and was invested with both its title and possession by the mere filing of the petition, all the time according to the Commonwealth "quick take" statute, see 32 LPRA 2709, which provides (as does its federal counterpart, see 40 USC 3115(a)), that the Commonwealth, by the filing of the petition, becomes "irrevocably commit[ed]" to the payment of the just compensation fixed by the court; furthermore, after withdrawing the Debtor's original "quick take" deposit, PFZ has diligently prosecuted its claim for greater just compensation before the Commonwealth courts, before and after the Debtor voluntarily dismissed its original petition and turned a permanent taking into a temporary taking, and before and after the filing of the petition herein; and has at all times asserted its claim in this proceedings as a claim arising under and guaranteed by the Takings Clause of the Fifth Amendment.

When ruling on PFZ's objection to the Plan, this Court is therefore bound to follow the Supreme Court precedents discussed above, which make no distinction as to the circumstances or the timing or other characteristics of the takings to which they must be applied. Once it is determined that there is a legitimate claim involving a taking without just compensation, the Supreme Court's pronouncements about the supremacy of the Takings Clause of the Fifth Amendment over Congress' powers under the Bankruptcy Clause must be followed[14]. As stated before, PFZ has unquestionably asserted such a claim herein in many occasions: in its Proof of Claim, in Adversary Proceeding No. 18-0056 (Docket 1), in its objections to the First and Third Plans of Adjustment (Docket 9223 and 16969) and the current objection to the Seventh Plan. This Court should therefore declare that PFZ's claim may not be discharged, impaired or otherwise modified or adjusted.

---

[14] This Court should also find persuasive strength in the reasoning of the Bankruptcy Court in *Detroit*, when applying those Supreme Court precedents to the Takings Clause creditors' objections therein to the plan propounded by the city of Detroit, supra at pages 8-9 which are germane to PFZ's in the present case.

12

## Prayer for Relief

Therefore, PFZ prays that its objection to Debtor's Plan of adjustment be allowed by this Court, because the provisions of the Bankruptcy Code on which the Plan relies for the treatment of PFZ's claim, made applicable to this case by PROMESA, are unconstitutional, as applied to that claim, because they are contrary to the Takings Clause of the Fifth Amendment. In the alternative, this Court may decide, exercising the discretion granted it by Section 944(c)(1) of the Code, to except PFZ's claim from discharge in the order approving the Plan, and declare that PFZ's constitutional claim may not be discharged, impaired, reduced or adjusted.

Respectfully Submitted.

In San Juan, Puerto Rico this 7 th day of October 2021.

/s/ DAVID CARRION BARALT
USDC PR 207214
Attorney for PFZ Properties
P.O. Box 364463
San Juan, P.R. 00936-4463
Tel. (787) 758-5050
E-mail: davidcarrionb@aol.com

/s/ RUSSELL A. DEL TORO SOSA
USDC PR 121302
Attorney for PFZ Properties
Cond. Condado Princess
#2 Calle Washington 304
San Juan, Puerto Rico 00907
Telephone (787) 529-6502
E-mail: rdeltoro@dtslaw.com
russell.deltoro.sosa@gmail.com

/s/ JOSE ÁNGEL REY
USDC PR 118103
Attorney for PFZ Properties
P.O. Box 10127
San Juan, P.R. 00908-1127
Tel. (787) 396-2600
E-mail: joseangelrey46@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing motion with the Clerk of the Court using the EM/ECF system, which will send a notification to all attorneys of record. In San Juan, Puerto Rico, this 7th day of October 2021.

/s/ DAVID CARRION BARALT
DAVID CARRION BARALT