```
 1                    UNITED STATES DISTRICT COURT

 2                     DISTRICT OF PUERTO RICO

 3
     In Re:                     )     Docket No. 3:17-BK-3283(LTS)
 4                              )
                                )     PROMESA Title III
 5   The Financial Oversight and )
     Management Board for        )
 6   Puerto Rico,               )     (Jointly Administered)
                                )
 7   as representative of        )
                                )
 8   The Commonwealth of         )
     Puerto Rico, et al.         )     October 6, 2021
 9                              )
                  Debtors,      )
10
     _____
11
12   In Re:                     )     Docket No. 3:17-BK-4780(LTS)
                                )
13                              )     PROMESA Title III
     The Financial Oversight and )
14   Management Board for        )
     Puerto Rico,               )     (Jointly Administered)
15                              )
     as representative of        )
16                              )
     Puerto Rico Electric Power  )
17   Authority,                 )
                                )
18                  Debtor,     )
     _____
19
20                        OMNIBUS HEARING

21    BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

22              UNITED STATES DISTRICT COURT JUDGE

23    AND THE HONORABLE U.S. MAGISTRATE JUDGE JUDITH GAIL DEIN

24              UNITED STATES DISTRICT COURT JUDGE

25   _____
```

```
 1 ‖  APPEARANCES:
 2 ‖
   ‖  ALL PARTIES APPEARING VIA VIDEOCONFERENCE OR TELEPHONICALLY
 3 ‖
   ‖  For The Commonwealth
 4 ‖  of Puerto Rico, et al.:  Mr. Martin J. Bienenstock, PHV
   ‖                          Mr. Brian S. Rosen, PHV
 5 ‖                          Mr. Daniel S. Desatnik, PHV
   ‖
 6 ‖  For Puerto Rico Fiscal
   ‖  Agency and Financial
 7 ‖  Advisory Authority:      Mr. Luis C. Marini Biaggi, Esq.
   ‖                          Mr. Madhu Pocha, PHV
 8 ‖
   ‖  For Peter Hein:          Mr. Peter Hein, Pro Se
 9 ‖
   ‖  For AmeriNational
10 ‖  Community Services:      Mr. Nayuan Zouairabani Trinidad, Esq.
   ‖
11 ‖  For Cantor-Katz
   ‖  Collateral Monitor:      Ms. Taleah Jennings, PHV
12 ‖                          Mr. Peter J. Amend, PHV
   ‖
13 ‖  For Windmar Renewable
   ‖  Energy, Inc.:            Mr. Fernando Agrait, Esq.
14 ‖
15 ‖
16 ‖
17 ‖
18 ‖
19 ‖
20 ‖
21 ‖
22 ‖
23 ‖
   ‖  Proceedings recorded by stenography.  Transcript produced by
24 ‖  CAT.
25 ‖
```

```
 1                        I N D E X

 2   WITNESSES:                                    PAGE

 3        None.

 4

 5   EXHIBITS:

 6        None.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                                San Juan, Puerto Rico

 2                                October 6, 2021

 3                                At or about 9:27 AM

 4                     *     *     *

 5          THE COURT:  Buenos dias.  Counsel and parties in

 6    interest, please turn your cameras on for these introductory

 7    remarks and instructions, and keep your microphones muted.

 8          Ms. Tacoronte, would you please call the case?

 9          COURTROOM DEPUTY:  In re: The Financial Oversight and

10    Management Board for Puerto Rico, as representative of the

11    Commonwealth of Puerto Rico, et al., PROMESA Title III, case

12    no. 2017-BK-3283, for Omnibus Hearing.

13          THE COURT:  Thank you.

14          Welcome, counsel, parties in interest, and members of

15    the public and press.

16          Oh, Ms. Tacoronte, did you also want to announce

17    who's presiding?

18          COURTROOM DEPUTY:  Absolutely, Your Honor.

19          The United States District Court for the District of

20    Puerto Rico is now in session.  The Honorable Laura Taylor

21    Swain presiding.  Also present, Magistrate Judge Judith Dein.

22    God save the United States of America and this Honorable

23    Court.

24          THE COURT:  Thank you.

25          Despite the great difficulties of this past year and
```

1    a half, with a cautious eye on the coming months, the Court is

2    encouraged by the recovery efforts and the continued attention

3    to public health measures, both in Puerto Rico and on the

4    mainland.  As evidence of that progress, it is a privilege to

5    join you virtually as I preside from the Clemente Ruiz Nazario

6    United States Courthouse in San Juan, Puerto Rico.

7              To ensure the orderly operation of today's virtual

8    hearing, once we turn to our Agenda items, all parties

9    appearing by Zoom must mute their microphones when they are

10   not speaking and turn off their video cameras if they are not

11   directly involved in the presentation or argument.  When you

12   need to speak, you must turn your camera on and unmute your

13   microphone on the Zoom screen.

14             I remind everyone that consistent with court and

15   judicial conference policies, and the orders that have been

16   issued, no recording or retransmission of the hearing is

17   permitted by anyone, including but not limited to the parties,

18   members of the press, and members of the public.  Violations

19   of this rule may be punished with sanctions.

20             I will be calling on each speaker during the

21   proceedings.  When I do, please turn your camera on, unmute

22   yourself, and identify yourself by name for clarity of the

23   record.  After the speakers listed on the Agenda for each of

24   today's matters have spoken, I may permit other parties in

25   interest to address briefly any issues raised during the

1  presentations that require further remarks.

2      If you wish to be heard under these circumstances,

3  please use the "raise hand" feature at the appropriate time.

4  That feature can be accessed by selecting the reactions icon

5  in the toolbar located at the bottom of your Zoom screen.  I

6  will then call on the speakers one by one.  After you have

7  finished speaking, you should select the "lower hand" feature.

8      Please don't interrupt each other or me during this

9  hearing.  If we interrupt each other, it's difficult to create

10  an accurate transcript, but as usual, and having said that, I

11  apologize in advance for breaking this rule, because I may

12  interrupt if I have questions or if you go beyond your

13  allotted time.  If anyone has any trouble hearing me or

14  another participant, please use the "raise hand" feature

15  immediately to let us know there's a problem.

16      The Agenda, which was filed at docket entry no. 18387

17  in case no. 17-3283, is available to the public at no cost on

18  Prime Clerk for those who are interested.  I encourage each

19  speaker to keep track of his or her own time.  The Court will

20  also be keeping track of the time, and will alert each speaker

21  when there are two minutes remaining with one beep and, when

22  time is up, with two beeps.  Here is an example of the beep

23  sound, which is different from the sound that we've been using

24  for our telephonic hearings.

25      (Sound played.)

1          THE COURT:  If your allocation is two minutes or

2    less, you'll just hear the final beeps.

3          If we need to take a break, I'll direct everyone

4    to -- well, I was going to say to disconnect and dial back in,

5    but that's what we do for Court Solutions.  So it may suffice

6    to just turn off the cameras and mute yourselves, and I'll

7    specify the time we should all come back.  This is a short

8    hearing, so I probably won't have to do that today.

9          So please turn your cameras off now, and turn your

10   camera back on when we reach your Agenda item or if I call on

11   you.  It is truly good seeing you all, so thank you.

12         The first Agenda item is, as usual, status reports

13   from the Oversight Board and AAFAF.  As I requested in the

14   Procedures Order, these reports have been made in writing in

15   advance of this video hearing and are available on the public

16   docket at docket entry nos. 18401 and 18399 in case no.

17   17-3283, respectively.

18         I thank the Oversight Board and AAFAF for the care

19   and detail reflected in the reports, which, as always, cover

20   very important matters.  I do not have further questions for

21   the parties in connection with these reports.  I will now give

22   the representatives of the Oversight Board and AAFAF an

23   opportunity to make any further remarks.

24         First, the representatives of the Oversight Board.

25   Mr. Bienenstock, good morning.

1          MR. BIENENSTOCK:  Good morning, Your Honor.  Martin

2    Bienenstock of Proskauer Rose, LLP, for the Oversight Board.

3    Thank you for the opportunity, but we have nothing to add to

4    the report we filed last evening.

5          THE COURT:  Thank you, Mr. Bienenstock.

6          Mr. Marini, representing AAFAF.

7          MR. MARINI BIAGGI:  Good morning, Your Honor.  Luis

8    Marini for AAFAF.  Your Honor, we don't have anything to add

9    as well to the report that we filed.

10         THE COURT:  Thank you.

11         If any counsel who are participating by Zoom have a

12   question or a comment they wish to make, please use the "raise

13   hand" function to indicate your request now, and then wait for

14   me to call on you to speak.

15         Are we seeing any raised hands?

16         COURTROOM DEPUTY:  No.

17         LAW CLERK:  (Shaking head from side to side.)

18         THE COURT:  All right.  It looks like no one has any

19   comment.  So thank you again for the status reports.

20         We'll turn to Item II on the Agenda, which is the Fee

21   Application submitted by the Fee Examiner and counsel to the

22   Fee Examiner, which is docket entry no. 18117 in case no.

23   17-3283.  Since the deadline to object to the Fee Application

24   has passed without objection, the application is unopposed and

25   no presentation is necessary.

1          The Court has reviewed the application and will enter

2   an order granting it.

3          The Court now turns to the third Agenda item, which

4   is Contested Matters.  The first contested matter is Windmar's

5   Objection to PREPA's Notices of Assumption of Power Purchase

6   Operating Agreement, and that is docket entry nos. 2577 and

7   2578 in case no. 17-4780.  My argument agenda begins with

8   Mr. Desatnik for the Oversight Board for seven minutes.

9          Good morning, Mr. Desatnik.

10         MR. DESATNIK:  Good morning, Your Honor.  Daniel

11  Desatnik of Proskauer Rose, LLP, on behalf of the Oversight

12  Board in its capacity as Title III representative of PREPA.

13         Your Honor, we're here today because PREPA seeks

14  approval of its assumption of two Power Purchase Operating

15  Agreements, or what I will refer to as PPOAs.  The first PPOA

16  with Ciro One Salinas was entered into in October 2010 to

17  provide PREPA with 90 megawatts of renewable energy from a

18  photovoltaic solar project.  The second PPOA with Xzerta Tec

19  was entered into in September 2012 to provide PREPA with 60

20  megawatts of renewable solar energy.

21         THE COURT:  Mr. Desatnik, would you speak just a

22  little bit more slowly?  That will be helpful to the court

23  reporter.  Thank you.

24         MR. DESATNIK:  Of course, Your Honor.

25         As I'll describe momentarily, both contracts have

1    subsequently been renegotiated and amended on approved terms

2    for PREPA.  The Court should approve PREPA's assumption of

3    these amended PPOAs for three reasons:  First, the amended

4    contracts confer numerous benefits on PREPA, demonstrating

5    that assumption is a sound exercise of PREPA's judgment.

6          Second, no party contests the benefit of these PPOAs.

7    The sole objection by Windmar alleges that despite being

8    approved by PREB, the PPOAs do not comply with Puerto Rico

9    law.  Windmar is mistaken.

10          Third, the Court does not need to resolve this

11   question of Puerto Rico law on the merits, because Windmar has

12   not demonstrated any harm to it as a creditor of PREPA, and,

13   therefore, lacks standing to raise its argument.

14          Beginning with the first point, the scope of this

15   Court's review on a motion under section 365 is whether PREPA

16   exercised sound judgment in assuming the PPOAs.  The

17   uncontested facts here show that PREPA's assumption clearly

18   meets the standard.

19          As relevant here, PREPA determined in 2019 to

20   renegotiate these PPOAs to bring them in line with market

21   prices and PREPA's fiscal plan targets.  These negotiations

22   were successful.  Both PPOAs were amended to include the sale

23   of renewable energy and renewable energy certificates at a

24   starting cost of 9.9 cents per kilowatt hour.  This is down

25   from 15 cents per kilowatt hour in the original contracts.

1   Both amended contracts only permit a modest annual escalation

2   of price of one to two percent annually; they cap the maximum

3   cost per kilowatt hour; and they would enter commercial

4   operation within two years.

5           Finally, there are no cure costs that are due or

6   payable.  According to PREB, these amendments result to

7   savings of 411 million over the life of the Ciro PPOA, and 170

8   million over the life of the Xzerta PPOA.  These substantial

9   savings enable PREPA to meet the savings targets in its

10  certified fiscal plan, and they also enable PREPA to meet its

11  renewable energy portfolio target earlier than it otherwise

12  could.

13          On the basis of these amended contracts, they were

14  approved by PREPA's governing board, they were approved by the

15  Oversight Board, and they were further approved by PREB as

16  compliant with Puerto Rico energy policy.  Your Honor, those

17  are the relevant facts here, and they amply demonstrate that

18  PREPA exercised sound judgment in assuming these contracts.

19          As I mentioned, there's only one objection to PREPA's

20  assumption.  That objection by Windmar raises one discrete

21  legal issue:  Whether the contracts failed to comply with

22  Puerto Rico law by bundling the sale of energy with the sale

23  of renewable energy certificates, or what I will refer to as

24  RECs.

25          Windmar does not argue that PREPA did not exercise

1    business judgment.  They do not argue that the contracts do

2    not benefit PREPA or that PREPA fails any standard for

3    assumption.  Windmar bases its contention on one sentence from

4    section 4.18 of Law 17-2019.  That sentence defines an REC as,

5    quote, a tradable asset that may be transferred for any lawful

6    purpose, which is integrally and inseparably equal to one

7    megawatt hour of electricity generated from a sustainable

8    renewable energy source.

9         On the basis of this sentence, Windmar erroneously

10   concludes that RECs must be independently exchanged of the

11   actual selling of electricity, but the definition that I just

12   read of RECs does not place any restrictions on how they are

13   sold.  It's actually the opposite.  Once commoditized as one

14   megawatt hour of renewable energy, RECs can be traded for any

15   lawful purpose.  Windmar doesn't articulate any policy reason

16   for why RECs must be separately bundled, or point to any case

17   or regulatory decision to support its misreading of the

18   statute.

19        While we submit that the Court can readily overrule

20   the objection on the face of Law 17, it need not reach the

21   merits of this dispute.  As a threshold matter, Windmar lacks

22   standing to raise this argument.  While Bankruptcy Code

23   Section 1109 enables a creditor to raise and be heard on any

24   issue, it must still demonstrate Article 3 standing.  Windmar

25   has failed to demonstrate any personalized harm to it from the

1     PPOAs.

2             (Sound played.)

3             MR. DESATNIK:  Its argument --

4             THE COURT:  You have two minutes.  Go ahead.

5             MR. DESATNIK:  Its argument is squarely the type of

6     generalized grievance comparable to the common concern for

7     obedience to law that this Court recently held in the *UTIER*

8     adversary proceeding is insufficient to grant standing.

9             Finally, Your Honor, even if Windmar did have

10    standing, its concern about compliance with Puerto Rico law is

11    insufficient to override PREPA's business judgment.  The First

12    Circuit recently rejected Windmar's attempt to defeat PREPA's

13    assumption of other PPOAs by arguing that those PPOAs did not

14    comply with Puerto Rico laws on competitive bidding.

15            It noted, and I quote, the fact that a course of

16    action poses some non-zero risk cannot by itself mean that a

17    decision to take an action must fail scrutiny under the

18    business judgment rule.  It went on to note that, Windmar

19    offers no reason to think that the risk they have identified

20    was so great that it rendered the Board's decision necessarily

21    unreasonable.  They have not identified a single case

22    invalidating a public utility contract on the laws they rely

23    on.  And, Your Honor, the pincite for that is 9 F.4th 16 (1st

24    Cir. 2021).

25            Your Honor, the First Circuit's reasoning there is

1   equally applicable here, and so, for those reasons, we

2   respectfully request that the Court overrule Windmar's

3   objection and approve PREPA's assumption of the PPOAs.  Unless

4   the Court has any questions, I rest.

5            THE COURT:  Thank you, Mr. Desatnik.

6            Next I have Mr. Agrait for Windmar, and we have

7   allocated ten minutes.

8            MR. AGRAIT:  Good morning, Your Honor.

9            THE COURT:  Good morning.  Would you please open your

10  camera, so that I can see you?

11           MR. AGRAIT:  Yes.  Now?

12           THE COURT:  Yes.  Now I see you.  Good morning.

13           MR. AGRAIT:  Attorney for the other party, Fernando

14  Agrait, for Windmar Renewable.

15           First, Windmar Renewable is a creditor of PREPA.

16  It's in economic competition with Ciro and Xzerta, and has

17  active PPOA contracts which separate the price of RECs and

18  energy.  If the PPOA's, as amended, assumed, it could affect

19  its rights as a creditor and change the rules of competition

20  with Xzerta and Ciro Salinas One.

21           THE COURT:  So how would you --

22           MR. AGRAIT:  What --

23           THE COURT:  May I ask you, sir, how would it change

24  Windmar's rights as a creditor?

25           MR. AGRAIT:  Well, the key here, Your Honor, from our

1    perspective, is that the separate price for the RECs is not

2    only an issue of separate price versus bundle price.  PREPA is

3    under the obligation to open up, together with the Bureau, the

4    Energy Bureau, an open RECs market, which doesn't exist in

5    Puerto Rico.  And it doesn't exist because PREPA has not been

6    acquiring RECs other than paying some PPOAs' separate price

7    for RECs.  And it's not opened up the information, making

8    available the information of the prices of RECs as a value

9    separate from the price of the energy it is acquiring in the

10   contracts.

11          As long as PREPA, who happens to be, for all

12   purposes, a public monopoly, in any way limits and reduces

13   access to the information concerning the price of RECs, it is

14   physically impossible for Puerto Ricans, producers of energy

15   and producers of the RECs, to participate in an open market,

16   which is ordered by the same law under which PREPA operates

17   its regular powers.  So the absence of that information makes

18   impossible the existence of a market that the Legislature of

19   Puerto Rico has established as a part of the energy regulation

20   scheme in Puerto Rico.

21          THE COURT:  So what gives you the right to litigate,

22   in this proceeding where PREPA simply wants to assume and

23   continue an agreement that it has negotiated with one of your

24   competitors, what gives you the right to litigate this

25   question of whether that particular contract is compliant with

1    Puerto Rico law?

2         I don't see a private enforcement provision in the

3    law that you've invoked; and PREPA argues that you don't have

4    standing to do that, you're not a party to the contract, and

5    there's not a direct harm to you from the contract.

6         MR. AGRAIT:  Well, Your Honor, as a participant in

7    the PPOA market, as a participant in the REC market to be

8    established as the law requires, I have standing to question

9    whether the way that PREPA is handling this matter makes

10   possible or impossible -- or makes impossible, sorry, the

11   development of such market.  The development of the RECs

12   market, it was not a decision of my client.  His right to

13   participate in that market is a right that it has because of

14   the law, of the Puerto Rico law.

15        So all we're saying is as long as PREPA decides that

16   it will not provide information concerning the price of the

17   RECs, it's impossible to have a private RECs market in Puerto

18   Rico, because they are a monopoly.  And if I don't have a

19   right to defend me being part of that market that the

20   Legislature ordered, then who would have standing for that?

21   That would mean that PREPA would just simply say, well, I'm

22   not going to comply with that; I don't want the market to

23   happen; and I won't give information that is pertinent and

24   necessary for the market to exist.

25        We don't want to enter into whether PREPA pays ten or

1    five or 13, and nine of that is energy, and three of that is

2    RECs, or one of that is RECs.  That is plainly a decision, a

3    business decision of PREPA that could easily be confirmed, the

4    assumption, by the Court.  But the problem is that it has a

5    consequence -- a consequence that goes beyond the decision of

6    bundling or unbundling.

7         In that sense, Your Honor, we are being marked out of

8    the market by the monopoly power decision not to share

9    information concerning the price of the RECs.

10        THE COURT:  Would you agree that the statute, section

11   365 of the Bankruptcy Code, gives the Court, this Court the

12   authority to decide whether PREPA has exercised proper

13   business judgment, or reasonable business judgment, in

14   deciding to continue on with this contract -- but I don't see

15   that the Bankruptcy Code gives me authority to make broader

16   determinations as to PREPA's impact in the PPOA market in the

17   context of this assumption question.

18        What gives me the authority to start ruling on what

19   Puerto Rico law requires by way of disclosure to competitors

20   and PREPA's actions within the PPOA market?

21        MR. AGRAIT:  Well, Your Honor, if the issue were

22   limited to does PREPA exercise business judgment in

23   determining that a particular price is going to be paid, and

24   it's a lower price than what they had negotiated before, then

25   I wouldn't be here to argue for my client.  But the question

1  of whether a business judgment by PREPA needs to incorporate

2  whether PREPA is compliant or not with its legal obligations,

3  I think it's pertinent, because PREPA is in Bankruptcy Court,

4  but PREPA does not cease to be a government entity regulated

5  by its own law and with its own public obligations.

6         And what we're arguing here is that by going through

7  the process of assuming the contracts with the bundled price,

8  it's affirmatively avoiding public responsibilities.  And I

9  think that it's reasonable to say --

10        (Sound played.)

11        MR. AGRAIT:  -- that a board of directors needs to

12  comply with its legal obligations as part of its business

13  judgment.

14        THE COURT:  Thank you.  You can continue your

15  argument.

16        MR. AGRAIT:  The Court would ask why did -- Windmar

17  did not go through the PREB to raise this issue.  Well, we

18  didn't go because the PREB decided that it was a

19  nonadjudicable proceeding, and, as such, it did not permit

20  participation by third parties.  And, also, PREB decided, upon

21  being asked by PREPA and Ciro and Xzerta, that the documents

22  of this contract were going to be confidential.  So Windmar

23  did not have access to the PREB process.

24        And then -- I mean, at the same time, somebody cannot

25  say you don't have a right to participate in the PREB process,

1   and at the same time you don't have a right to participate in

2   the bankruptcy proceeding, because then who protects --

3        COURT REPORTER:  I'm sorry, Counsel.  Can you -- I'm

4   sorry, Your Honor.  This is the court reporter.  If counsel

5   could repeat his last sentence, please.

6        MR. AGRAIT:  That Windmar was unable to go to the

7   PREB for the way the PREB handled this case, this matter.  And

8   if we are told now that we don't have a private cause of

9   action or that we don't have the standing to raise this issue

10  in the bankruptcy court, we will be -- will find ourselves

11  without access to the Puerto Rico legislative regulatory

12  scheme, which is PREB, and at the same time be outside the

13  realm of the bankruptcy court.  So there's nobody to even hear

14  the claim of Windmar.

15       (Sound played.)

16       THE COURT:  So that was the time's up signal, but I

17  did take a lot of your time in asking my questions, so I will

18  give you two more minutes, if you wish.

19       MR. AGRAIT:  I mentioned, Your Honor, that PREPA is a

20  public entity, one hundred percent of its powers come up from

21  public laws, and that nowhere, that I know, in the bankruptcy

22  applicable law it says that PREPA can move forward without

23  complying with its legislative obligations.  PREPA has to

24  comply with its legislative obligations, and receive the

25  benefits of the bankruptcy proceedings of course.  But here we

1   find ourselves that by merely saying "we are not going to say

2   what the price is," they are building a wall for the

3   development of the RECs market in Puerto Rico where my client

4   is a player.

5        So I say, why not?  Why doesn't PREPA do what it does

6   in all other PPOAs, which is say -- saying, I pay so much for

7   the energy, and I pay so much for the environmental and social

8   attributes.  That's the reality of the market in Puerto Rico.

9   But now PREPA is moving in the opposite direction, saying,

10  we're not going to bring that information to the market, so

11  the market cannot exist.

12       That's our position, Your Honor, with all due

13  respect.

14       THE COURT:  Thank you, Mr. Agrait.  Do you have

15  further remarks or is that it?

16       MR. AGRAIT:  That's all on my part, Your Honor.

17       THE COURT:  Thank you so much.

18       So I will return now to Mr. Desatnik for three

19  minutes.

20       MR. DESATNIK:  Yes, Your Honor.  I don't think I'll

21  need all three minutes.  I'd just like to briefly respond to a

22  few of the points made by counsel.  Primarily, they

23  effectively concede that they have no standing here.  While in

24  their first sentence they say they're a creditor, they do not

25  allege any harm as a creditor of PREPA.  In fact, Mr. Agrait

1    goes on to say that their true grievance is as a competitor of

2    Xzerta and Ciro, and that what they're really complaining

3    about is the economic competition and the effect that the

4    contracts have, in their view, on the REC market.

5         We cite to various opinions in our Reply, at

6    paragraphs 24 and 26, that demonstrate that competitors do not

7    have standing to object to contract assumption, and we feel

8    that those are definitive of the inquiry here.

9         Windmar is also conceding that their grievance is not

10   a bankruptcy or business judgment issue, but -- with PREPA's

11   governmental responsibilities outside of the bankruptcy, and

12   that's precisely our point.

13        (Sound played.)

14        MR. DESATNIK:  These are not bankruptcy arguments

15   that they're making.  They're not relevant to the assumption

16   inquiry under Bankruptcy Code section 365.  They're making

17   numerous arguments about PREPA being a monopoly, but they've

18   done that before in the -- PREPA's assumption of the

19   EcoElectrica contract.  And as I mentioned in my opening

20   remarks, that -- the First Circuit recently rejected those

21   arguments.

22        Counsel did not provide any reason to distinguish

23   those arguments today.  And what we really think is at bottom,

24   animating Windmar's objection is that they're trying to

25   overturn PREB's approval of these contracts.  And we believe

1   that an assumption motion is not the posture and this Court is

2   not the forum to collaterally attack PREB's approval.

3          Unless you have any questions, Your Honor, that

4   concludes my remarks.

5          THE COURT:  Thank you, Mr. Desatnik.  I don't have

6   further questions.  I would just ask you both to be patient

7   with me for a couple of minutes as I gather my thoughts,

8   because I will rule on the motion in just a moment.

9          Thank you for your patience.

10          Pending before the Court is the *Notice of Assumption*

11   *of Power Purchase Operating Agreement by and between PREPA and*

12   *Ciro One Salinas, LLC dated October 25, 2010, which I'll refer*

13   *to as the "Ciro Notice", and a Notice of Assumption of Power*

14   *Purchase Operating Agreement by and between PREPA and Xzerta*

15   *Tec Solar I, LLC dated September 19, 2012, which I'll refer to*

16   *as the "Xzerta Notice", and together with the CIRO Notice,*

17   *collectively "The Notices".*  This notice was filed in Case No.

18   17-4780 by PREPA.  The Notices seek entry of orders approving

19   the assumption of two executory agreements concerning the

20   purchase and sale of renewable energy, and the underlying

21   agreements I'll refer to as the "Contracts".  These remarks

22   constitute the Court's oral decision resolving the Motion.

23   The Motion is cued up by the Notices.  The Court reserves the

24   right to make non-substantive corrections in any transcription

25   of this oral decision.

1    For the following reasons, the Court overrules the
2  Objection and will enter orders approving the assumption of
3  the Contracts.

4    Section 365(a) of the Bankruptcy Code "advances one
5  of the core purposes of the Bankruptcy Code:  To give worthy
6  debtors a fresh start."  In re BankVest Capital Corp., 360
7  F.3d 291, 296 (1st Cir. 2004).  Although the Bankruptcy Code
8  does not prescribe a standard applicable to a court's review
9  of a motion under section 365(a), courts typically apply a
10  deferential business judgment standard.  In re Tempnology,
11  LLC, 879 F.3d 389, 394 (1st Cir. 2018).

12    Such a motion "should be considered a summary
13  proceeding, intended to efficiently review the trustee's or
14  debtor's decision to adhere to or reject a particular contract
15  in the course of the swift administration of the bankruptcy
16  estate.  It is not the time or place for prolonged discovery
17  or a lengthy trial with disputed issues."  In re Vent Alarm
18  Corp., No. 15-09316-MCF11, 2016 WL 1599599, at *3, (Bankr.
19  D.P.R. Apr. 18, 2016).  The scope of a court's inquiry "does
20  not include an evaluation of whether the Debtors made the best
21  or even a good business decision but merely" a determination
22  as to whether "the decision was made in an exercise of the
23  Debtors' business judgment."  In re Old Carco LLC, 406 B.R.
24  180, 196 (Bankr. S.D.N.Y. 2009).  Here, in its Notice, PREPA's
25  representative has described the Contracts and amendments to

1    be assumed, demonstrating that their terms are favorable to

2    PREPA, in compliance with the Court's procedures order for

3    approving the assumption of power purchase and operating

4    agreements.  See Docket Entry No. 1199.

5         The sole objector to the assumption of the Contracts

6    is Windmar Renewable Energy, Inc., which I'll refer to as

7    "Windmar".  The basis of the Windmar Objection is that the

8    Contracts are allegedly noncompliant with local Puerto Rico

9    Law, specifically Act 17 of 2019.  Windmar asserts that the

10   Contracts' provision for flat-rate bundled pricing of

11   Renewable Energy Certificates and renewable energy delivery

12   violates Act 17 of 2019, which, according to Windmar, requires

13   the prices of the Renewable Energy Certificates and the price

14   of energy to be separately stated in the terms of the PPOA.

15        The Oversight Board, representing PREPA, argues that

16   the objection should be overruled because Windmar has not

17   demonstrated that it is a party-in-interest with standing to

18   assert an Objection to the Contracts.  The Bankruptcy Code in

19   § 1109(b) broadly defines the term party-in-interest to

20   "include the debtor, the trustee, a creditors' committee, an

21   equity security holders' committee, a creditor, an equity

22   security holder, or any indenture trustee."  While Windmar is

23   an unsecured creditor of the Debtor, Windmar does not allege

24   that it will suffer any harm, including any infringement of a

25   right, in its capacity as a creditor as a result of the

1   assumption of the Contracts.  Rather, it complains that PREPA

2   is harming the competitive market in general.  Failure to

3   demonstrate that it has any particularized relationship to the

4   contract or that it will suffer a particular harm as a

5   creditor if the PPOAs are assumed, is fatal to Windmar's

6   attempt to establish that it has standing to object.  See

7   Pagan v. Calderon, 448 F.3d 16, 27 (1st Cir. 2006), in which

8   the Court said "prudential concerns ordinarily require a

9   plaintiff to show that his claim is premised on his own legal

10  rights, as opposed to those of a third party, that his claim

11  is not merely a generalized grievance, and that it falls

12  within the zone of interests protected by the law invoked."

13  Thus, Windmar's objection is overruled for lack of standing.

14        This Court has previously held, in a decision that

15  was affirmed by the First Circuit, that the business judgment

16  standard governs the resolution of a motion to assume or

17  reject a PPOA.  See In re The Fin. Oversight & Mgmt. Bd. for

18  Puerto Rico, 9 F.4th 1, 14 (1st Cir. 2021).  Here, the

19  Oversight Board's uncontroverted representations concerning

20  the beneficial terms of the PPOAs and PREPA's renegotiation

21  and approval of the PPOAs are sufficient to meet its burden of

22  demonstrating that the assumption of the Contracts is a

23  reasoned exercise of PREPA's business judgment.  PREPA has

24  determined that the projects contemplated by the amended

25  Contracts offer favorable terms and reduced prices in

1    comparison to the terms and pricing originally contemplated by

2    the original Contracts.  PREPA has concluded that the

3    Contracts are favorable and should be assumed.  The Court

4    finds, based on this uncontroverted record, that PREPA's

5    decision to assume the Contracts was the product of, and falls

6    within the exercise of, reasoned business judgment.

7          Accordingly, the Court will enter an order overruling

8    Windmar's Objection to the assumption of the Contracts and

9    approving PREPA's assumption of the PPOAs.

10          Thank you, Counsel.  That concludes the first

11   contested matter.  The second contested matter, which is Item

12   III.2 on the Agenda, is the Debtors' Motion in Limine

13   Regarding Evidence Whether the Proposed Plan of Adjustment is

14   Consistent with the Fiscal Plan.  That is docket entry no.

15   18116 in case no. 17-3283.

16          The first speaker will be Mr. Bienenstock for the

17   Oversight Board for ten minutes.

18          MR. BIENENSTOCK:  Thank you.  Good morning, Your

19   Honor.

20          THE COURT:  Good morning.

21          MR. BIENENSTOCK:  Your Honor, our motion raises a new

22   issue of first impression under a new statute.  We raise the

23   issue early, because your ruling may impact the evidence

24   prepared for and proffered at the confirmation hearing.

25          I want to be clear about the relief requested and

1    relief not requested.  The relief requested is that the Court

2    rule the only admissible evidence bearing on section 314(b)(7)

3    is the Oversight Board's certification under section 104(j),

4    because the Court lacks subject-matter jurisdiction over a

5    challenge to that certification that the Plan of Adjustment is

6    consistent with the fiscal plan.

7           Additionally, based on practicalities, the Board has

8    suggested that if the Court agrees with the Oversight Board's

9    position, parties should still be allowed to proffer the

10   evidence they would present, so if a reviewing court

11   disagrees, a remand may be unnecessary.

12          THE COURT:  Mr. Bienenstock, I --

13          MR. BIENENSTOCK:   Relief not -- yes, Your Honor.

14          THE COURT:  So in that alternative scenario, it seems

15   to me, at least in your opening papers, that you're asking

16   that the Court accept this evidence and make an alternative

17   advisory ruling just in case an appellate court would disagree

18   with me on the subject-matter jurisdiction point, but how

19   could I make such an advisory ruling and -- so please explain

20   that to me.

21          MR. BIENENSTOCK:  Sure, Your Honor.  We did not ask

22   for the Court to make an advisory ruling on the proffered

23   evidence.  We are simply suggesting that it be part of the

24   record so that, if necessary, the Court would have it and

25   could then subsequently make a ruling without reconvening the

1    hearing.

2          THE COURT:  So you want this evidence to be in the

3    record not addressed in case it comes back, and then the Court

4    would make a ruling if it came back?

5          MR. BIENENSTOCK:  Right.  And, Your Honor, we're

6    really tracking what, through experience, District Courts

7    often do when they sustain an evidentiary objection.  They

8    sometimes allow the party proffering the evidence to put it in

9    to maintain the record simply because it creates this

10   efficiency.

11         If the Court did not want to do that, so be it, but

12   we just wanted to provide the -- we're for efficiency, and we

13   thought it would help make the process more efficient.  That

14   was all.

15         The relief not requested is that the Court bar

16   evidence on the feasibility of the Plan of Adjustment.  If a

17   party-in-interest wants to show the Plan of Adjustment cannot

18   be carried out without further uncontemplated restructuring,

19   we're not opposing that.  The Board is only contending that to

20   the extent a party-in-interest wants to prove the Plan of

21   Adjustment is inconsistent with the fiscal plan, that would

22   undo its certification.

23         I also point out that, as a practical matter, no one

24   is contending the Plan of Adjustment pays creditors too much.

25   Even the government is contending so far that the Plan should

1    pay billions more to pensioners for various reasons.  The

2    parties opposing this motion are economically not helping

3    themselves.

4         On the merits, Your Honor, the facts are clear that

5    the Board certified the proposed Plan as being consistent with

6    the fiscal plan pursuant to PROMESA section 104(j)(3).

7    Notably, section 104(j)(3) provides the rule for certifying a

8    plan of adjustment, that it must be consistent with the fiscal

9    plan in the Oversight Board's sole discretion.

10        This is the same as PROMESA section 201(b), labeled

11   "requirements", listing the rules for certifying a fiscal

12   plan.  Section 201(c)(3) similarly grants the Oversight Board

13   sole discretion as to whether a fiscal plan satisfies section

14   201(b) requirements.  And, as I will mention in a moment, Your

15   Honor has ruled in accordance with what I've just said.

16        Some objectors argue section 106(e) does not apply in

17   Title III cases where section 306 grants subject matter

18   jurisdiction.  That argument is wrong for at least five

19   independent reasons.

20        First, section 106(e) has to apply to situations

21   where jurisdiction is granted by other statutes, such as

22   PROMESA section 306 or 28 U.S.C. 1331, because section 106

23   does not grant any jurisdiction.  Section 106(a) directs

24   actions under PROMESA and against the Oversight Board to be

25   brought in the United States District Courts.  It doesn't

1    grant any jurisdiction.

2         Second, section 106(e) says "there shall be no

3    jurisdiction in any United States District Court to review

4    challenges to the Oversight Board's certification

5    determinations under this Act."  The words "any United States

6    District Court" do not carve out District Courts presiding

7    over Title III cases.

8         Third, this Court issued an Opinion dated January 23,

9    2020, where it stated its jurisdictional source was 48 U.S.C.

10   2166, which is PROMESA section 306.  Then, this Court applied

11   section 106(e).  It ruled that when PROMESA grants the

12   Oversight Board discretion to determine something in its

13   certifications, such as that the budget is compliant with the

14   fiscal plan, an attack on that determination must be dismissed

15   for lack of jurisdiction.

16        The Court said, "however, PROMESA places discretion

17   as to whether a fiscal plan meets the requirements of section

18   201(b), and whether a budget is compliant with the fiscal

19   plan, and, therefore, whether such a budget and such a plan

20   shall be certified in the discretion of the Oversight Board.

21   Thus, to the extent that the petition seeks to challenge the

22   Oversight Board's determination that the budget is compliant

23   with the fiscal plan which meets the requirements of section

24   201(b)(1), it must be dismissed for lack of subject-matter

25   jurisdiction."

 1          This in limine motion is on all fours.  Just like the

 2   Oversight Board's certification that a budget complies with

 3   the fiscal plan is not open to attack, its certification that

 4   the Plan of Adjustment is consistent with the fiscal plan is

 5   equally outside the Court's jurisdiction to review.

 6          A fourth reason:  28 U.S.C., section 1331 grants all

 7   District Courts subject-matter jurisdiction over federal

 8   questions.  Section 314(b)(7) is a federal question.  If the

 9   objectors were correct, section 106(e) can never apply,

10   because of section 1331.

11          Fifth, if section 106(e) does not apply in Title III

12   cases, then it effectively does not apply at all.  As a Title

13   III debtor, the Commonwealth can only be sued under PROMESA

14   section 306.  Virtually all the litigation brought against the

15   Oversight Board has been in the context of the Commonwealth's

16   Title III case.

17          Moving on, Mr. Hein contends that section 314(b)(7)

18   requires the Court to determine whether the Plan of Adjustment

19   complies with section 201(b)(1)(n), which provides the fiscal

20   plan should respect lawful liens and priorities.  We agree

21   that, as part of confirmation, the Court can determine whether

22   allowable liens and priorities --

23          (Sound played.)

24          MR. BIENENSTOCK:  -- are treated properly under the

25   Title III Plan of Adjustment.  We submit Mr. Hein is wrong,

1    however, to contend section 314(b)(7) opens up whether the

2    fiscal plan respects the lawful liens and priorities.  That is

3    not the inquiry under section 314(b)(7).  As we've said

4    before, fiscal plans do not discharge debts, and extinguish

5    liens, and do not pay them.

6            Lucky for Mr. Hein, the payment provisions to the

7    Plan of Adjustment do not need to be consistent with the

8    fiscal plan, because the fiscal plan pays nothing to General

9    Obligation claims.  Rather, the fiscal plan provides a debt

10   sustainability analysis showing how much debt the Plan of

11   Adjustment can agree to pay.  Plans of adjustment do pay

12   claims.

13           Here, we expect Mr. Hein's class of GO claims will

14   overwhelmingly accept the Plan of Adjustment, but even if it

15   rejects the Plan, the test in Title III is the best interest

16   test and feasibility, not whether the Plan of Adjustment pays

17   general obligation claims more than the fiscal plan, which

18   pays them zero.

19           Similarly in Mr. Hein's contention that the fiscal

20   plan's population, revenue, and Medicaid projections are wrong

21   are not remotely implicated by section 314(b)(7).  And

22   Mr. Hein's complaint about lack of audited financial

23   statements is simply extraneous to this motion.

24           AAFAF claims in limine motions can only apply to

25   specific evidence, and it reserves its rights.  Mr. Hein's

1   objection actually demonstrates why all parties are better

2   served, however, by knowing sooner, rather than later, whether

3   evidence challenging the fiscal plan can be propounded at the

4   confirmation hearing.  Section 314(b)(7) does not remotely

5   suggest that is the case.

6           The DRA parties argue this in limine motion is

7   premature, but it was filed earlier and provided parties --

8           (Sound played.)

9           MR. BIENENSTOCK: -- ample time to respond.

10          Finally, it's important to recognize the purpose

11  served by section 314(b)(7).  What it does and what it did in

12  this case, as evidenced by all the fiscal plan litigation that

13  was brought early on, is to tell creditors the Plan of

14  Adjustment cannot issue more debt than the debt sustainability

15  analysis and the fiscal plan allows.

16          Many provisions in Title III protect creditors.

17  314(b)(7) is not one of them.  314(b)(7) protects the

18  Commonwealth from being saddled with more debt than the fiscal

19  plan says is sustainable.

20          That's all I had, Your Honor, unless the Court has

21  questions.

22          THE COURT:  Thank you, Mr. Bienenstock.  I don't have

23  questions.

24          So I will turn now to AAFAF, Mr. Pocha for AAFAF.

25          MR. POCHA:  Good morning, Your Honor.  Madhu Pocha of

1   O'Melveny & Myers for AAFAF.

2          And, Your Honor, I'll be extremely brief this

3   morning.  We just wanted to clarify that AAFAF filed a

4   reservation of rights to the extent the evidentiary issues in

5   the motion ever ripen as to AAFAF.  So we intend it as a pure

6   reservation.

7          And we actually don't have anything additional to add

8   beyond what's in our file, so unless the Court has any

9   questions, we have nothing further and can pass to counsel for

10  the DRA parties.

11         THE COURT:  Thank you, Mr. Pocha.

12         So we will pass to counsel for the DRA parties.  Who

13  will be speaking for DRA?

14         MR. ZOUAIRABANI TRINIDAD:  Yes.  Good morning,

15  Your Honor.  This is Attorney Nayuan Zouairabani from

16  McConnell Valdes on behalf of AmeriNational Community

17  Services, LLC --

18         THE COURT:  Good morning, Mr. Zouairabani.

19         MR. ZOUAIRABANI TRINIDAD:  -- and I'm joined by my

20  co-counsel, Peter Amend and Taleah Jennings, from Schulte Roth

21  & Zabel, on behalf of Cantor-Katz Collateral Monitor, LLC.

22  Together we represent the DRA parties.

23         I'll start, Your Honor, and then counsel for the

24  Collateral Monitor will follow.

25         THE COURT:  Very well.  Thank you.

1          MR. ZOUAIRABANI TRINIDAD:   Thank you, Your Honor.

2          Your Honor, the motion in limine faces a couple of

3   procedural hurdles, to put it this way.  For the first

4   procedural hurdle that it faces, in -- the Confirmation

5   Procedures Order that was approved by this Court laid out a

6   schedule for filing and responding to motions in limine.

7   These were September 30 for filing, and October 15 to respond.

8          The schedule was already compressed, as it was

9   without the FOMB attempting to short-circuit it by filing a

10  premature motion in limine and forcing parties to respond

11  almost a month before the September 15 deadline.  Despite

12  this, the FOMB asserts in their Reply that no parties were

13  prejudiced, because they had opportunity to file objections to

14  their motion in limine on time.  However, the FOMB's rationale

15  is of no merit, because, as my co-counsel will explain soon,

16  the issues raised in the motion in limine really go to

17  confirmation of the Plan and should require more than a week

18  to respond.

19         Failure to timely file a response to the motion in

20  limine would have waived the DRA parties' right to make any

21  section 314(b)(7) objections to the Plan.  Thus, even if we

22  filed a response on time, that does not mean that there was no

23  prejudice, because, first, it has caused parties to object to

24  the motion in limine before discovery has been completed and

25  all facts are on the table, and, two, it has forced parties to

1    make preliminary objections to the Plan.

2         We note for the record, Your Honor, that the Court

3    rejected FOMB's preliminary objection structure in adopting

4    the Confirmation Procedures Order.  However, by filing the

5    motion in limine, the FOMB has attempted to reestablish that

6    structure as far as section 314(b)(7) is concerned.

7         This then leads us to the next procedural hurdle,

8    which is that their motion in limine, there is no actual case

9    or controversy before the Court to adjudicate.  As the First

10   Circuit has recognized, motions in limine are meant for the

11   Court to determine whether to include or exclude particular

12   evidence.  The FOMB has failed to point to any specific

13   evidence it wished to exclude.  They cannot do it, because

14   none has been presented and, in fact, the discovery period has

15   not even concluded.  In fact, the FOMB essentially admits in

16   their allocution that this motion is preempted for evidence

17   that has not even been presented yet.

18        A different scenario would have been if evidence has

19   been presented and the FOMB wants to exclude it, but that is

20   not what has happened here, and this is not the proper use of

21   this type of motion practice.  The FOMB's real intent with the

22   motion in limine is to prejudge whether the Plan satisfies

23   section 314(b)(7) of PROMESA.  Accordingly, the motion in

24   limine is nothing more than a glorified advisory opinion on a

25   matter that must be addressed at confirmation.

 1          And with that, Your Honor, I yield the remainder of

 2   my time to my co-counsel.  Thank you, Your Honor.

 3          THE COURT:  Thank you, Mr. Zouairabani.

 4          So is it Mr. Amend who is next, or Ms. Jennings?

 5          MR. ZOUAIRABANI TRINIDAD:  Your Honor, I believe my

 6   co-counsel is on mute.

 7          THE COURT:  Whoever wishes to speak should be unmuted

 8   now.

 9          MR. AMEND:  Good morning, Your Honor.  Can you hear

10   me?

11          THE COURT:  Yes, I can now.  Good morning,

12   Mr. Amend.

13          MR. AMEND:  Good morning, Your Honor.  Peter Amend

14   from Schulte Roth & Zabel, and I'm also joined by Taleah

15   Jennings from Schulte, representing Cantor-Katz Collateral

16   Monitor, LLC.

17          Just to pick it up where Mr. Zouairabani left off,

18   what's even more troubling than the Oversight Board's attempt

19   to rush an already expedited process is that the motion,

20   although styled as a motion in limine, really seeks a pretrial

21   ruling that goes to the confirmability of the Plan itself,

22   that is, the debt adjustment plan's consistency with the

23   fiscal plan under section 314(b)(7).

24          The Board's motion makes this clear.  At paragraph 8,

25   the Board requests entry of an order determining there is no

1    subject-matter jurisdiction to consider challenges to the

2    Board's certification that the debt adjustment plan is

3    consistent with the fiscal plan.

4         As Mr. Zouairabani explained, this is an improper use

5    of a motion in limine.  Instead, this is an issue the Board

6    should address at confirmation.  Although the Court should

7    deny the motion on these procedural grounds, the motion should

8    also be denied on the merits.

9         I begin with two legal authorities that demonstrate

10   that the Court, and not the Oversight Board, decides whether a

11   debt adjustment plan satisfies section 314(b)(7).  First, the

12   text of 314(b) says "the Court shall confirm the plan" if all

13   the confirmation requirements are met.  The text of the

14   statute is clear.  The Court must make an independent inquiry

15   regarding whether all the confirmation requirements have been

16   satisfied.  And, second, case law from Chapter Nine, which we

17   cite to in paragraph 19 of our Objection, which provides that

18   even in the Court's more limited role in municipal

19   restructurings, its most significant responsibility is to

20   ensure that the Plan meets all of the confirmation

21   requirements.

22        Now, while Congress gave the Oversight Board a lot of

23   control over the Title III restructuring process, that stops

24   at confirmation.  At that point, Congress expressly gave this

25   Court, and not the Oversight Board, authority to determine

1   whether all the confirmation requirements have been satisfied.

2   And this is consistent with Your Honor's *Ambac* decision at 297

3   F. Supp. 3d 269, at 284.

4           And in that case Your Honor wrote that, while

5   Congress gave the Board a central and discretionary role, it

6   is at plan confirmation where the Court will determine whether

7   the debt adjustment plan complies with PROMESA's confirmation

8   requirements.  And that's why we'll be before you next month.

9           I'd also like to note that the limitations contained

10  in PROMESA sections 104(j) and 106(e) regarding the Court's

11  ability to review challenges to the Board's certification

12  decisions does not compel the Court to grant the relief

13  requested in the motion.  Section 104(j) says, among other

14  things, that the Oversight Board may certify a debt adjustment

15  plan only if it determines in the sole discretion that is

16  consistent with the applicable certified fiscal plan, and

17  106(e) makes the --

18          (Sound played.)

19          MR. AMEND:  -- Oversight Board's certification

20  decisions subject to challenge.  But, critically, these

21  sections do not mean that, in the context of confirmation, the

22  Court must find that section 314(b)(7) has been satisfied

23  because the Oversight Board simply certified the fiscal plan

24  or the debt adjustment plan.  The Oversight Board's proposed

25  scope of sections 104(j) and 106(e) would lead to absurd

1    results.

2         Under the Oversight Board's overbroad theory, these

3    sections would sanction a debt adjustment plan that is

4    premised on a certified fiscal plan that itself violates

5    PROMESA.  For example, let's say the certified fiscal plan is

6    contrary to section 201(b)(1)(n), because it does not respect

7    lawful priorities and lawful liens under Commonwealth law, and

8    the debt adjustment plan is based on that same fiscal plan.

9    In the Oversight Board's view of the world, creditors would be

10   forced to accept the consequences of an improper fiscal plan,

11   and the Court would have no say in the matter simply because

12   the Oversight Board certified the fiscal plan.

13        Clearly, this result should not stand at

14   confirmation.  And, also, it's contrary to this Court's ruling

15   in *Ambac*, where Your Honor stated at page 284 of that, section

16   106(e) does not deprive the Court of jurisdiction to decide

17   claims that the fiscal plan is invalid or unenforceable as

18   violative of a party's constitutional rights.

19        So with that, I have nothing further unless Your

20   Honor has questions for me.

21        THE COURT:  Well, if I were to agree with you on the

22   jurisdictional question, and I'm not here proposing to go into

23   what particular issues the Court could rule on, but just the

24   question of whether 106(e) precludes the Court from doing

25   anything other than checking whether the Board has certified

1    the fiscal plan or not, would you still consider this motion

2    practice premature?

3              (Sound played.)

4              MR. AMEND:  Yes.

5              THE COURT:  You would?

6              MR. AMEND:  Please continue.  Sorry.

7              THE COURT:  I'm sorry.  It seems to me that the

8    thrust of your objections, besides the structural timing ones,

9    is that this -- the Board is seeking, through the argument

10   that there is no jurisdiction, to preclude the introduction

11   and consideration of evidence, and that because discovery is

12   not finished yet and evidence hasn't been presented, the Court

13   shouldn't do that.

14             If, on the other hand, the Court were to say to the

15   Board, no, you're wrong, 106(e) doesn't preclude evidence can

16   be proffered and will be ruled on at the appropriate time,

17   because the Court has jurisdiction to make a determination on

18   the consistency with the fiscal plan, would you say that that

19   issue, that issue of jurisdiction is still improperly

20   addressed in advance of the opening of the confirmation

21   hearing?

22             MR. AMEND:  I would say yes.  I think that that is an

23   issue that needs to be decided in connection with

24   confirmation, because it goes essentially to what the Court

25   has to do at the hearing, and -- make its findings and

1   conclusions as to whether the confirmation requirements are

2   satisfied.

3           THE COURT:  Thank you.  There's a little bit of time

4   left for your colleague.

5           Ms. Jennings?  You have to unmute.

6           MR. AMEND:  Your Honor, nothing further from the DRA

7   parties.

8           THE COURT:  Thank you very much.

9           So now I will turn to Mr. Hein --

10          MR. AMEND:  Thank you.

11          THE COURT:  -- who has five minutes.

12          Good morning, Mr. Hein.

13          MR. HEIN:  Your Honor, can you hear me?

14          THE COURT:  Yes, I can.  Good morning.

15          MR. HEIN:  Thank you, Your Honor.  Peter Hein, pro

16  se.

17          PROMESA 306(a), the provision in Title III that

18  expressly provides subject-matter jurisdiction, provides

19  broadly for federal subject-matter jurisdiction of all cases

20  under Title III, and of all civil proceedings arising under or

21  arising in or related to cases under Title III.  There is no

22  exception to the grant of subject-matter jurisdiction in

23  section 306(a) for determinations under PROMESA 314(b)(7).

24          Turning to PROMESA 314(b)(7), the Oversight Board

25  skips over the prefatory language of 314(b).  The prefatory

1    clause in 314(b) is the phrase, quote, the Court -- the Court

2    shall confirm the plan.  If -- that prefatory clause applies

3    to all of the requirements for confirmation that follow in

4    each of the seven subdivisions of 314(b).  The prefatory

5    clause in 314(b) makes clear that all requirements of PROMESA

6    314(b) are to be determined by the Court.

7            The Oversight Board in its Reply, this is paragraph

8    12, acknowledges tacitly that it is the Court that determines

9    whether the first six requirements in 314(b) are met.  The

10   argument that there's no subject-matter jurisdiction for the

11   Court to judge whether the seventh of those requirements has

12   been met is at odds with both common sense and the Title III

13   statutory framework.  It just makes no sense to say that

14   Congress intended that the debtor prove that, to the

15   satisfaction of the Court, that (b)(1) through (b)(6) are met,

16   but that the seventh requirement is somehow immune from

17   judicial scrutiny.

18           To construe PROMESA as giving the Oversight Board the

19   ability to obtain confirmation of a plan that releases

20   priority for secured claimants against a debtor without any

21   judicial review of one of its stated requirements creates the

22   due process problem, making the Oversight Board a judge in its

23   own case that the Supreme Court just two months ago decried in

24   the *Chrysafis v. Marks* case that I cited in my opposition.

25           Also, contradicting the Oversight Board's claim on

1    reviewable discretion, the House Report on PROMESA, sections

2    201, 314, which I quoted in my brief, is express.  I'm now

3    quoting from the House Report.  By incorporating consistency

4    with the fiscal plan into the requirements of confirmation of

5    a plan of adjustment, the committee has ensured lawful

6    priorities and liens as provided for by the Territories'

7    Constitution Clause, and agreements --

8              (Sound played.)

9              MR. HEIN:  -- will be respected in any debt

10   restructuring that occurs.  And one of the cases the Oversight

11   Board cited arose in a situation where the Oversight Board was

12   seeking confirmation of a plan.  Mr. Amend has referred to the

13   *Ambac* case, Your Honor's opinion there, which recognized that

14   it would be at plan confirmation that compliance with the

15   statutory requirements and constitutional challenges would be

16   entertained.

17             If constitutional challenges to a fiscal plan may be

18   raised at the confirmation stage, as this Court ruled in the

19   *Ambac* case, it follows there has to be federal subject-matter

20   jurisdiction to entertain challenges to a fiscal plan at

21   confirmation.  And just I would further note that, in the

22   context of confirming the plan and in seeking releases of

23   claims by priority or secured bondholders, whether the fiscal

24   plan and, thus, the Plan of Adjustment, respects lawful

25   priorities and lawful liens cannot be within the sole

1  discretion of the Oversight Board, which is representing the

2  interests of the debtors that are seeking to procure those

3  releases.

4        Section 201(b)(1)(n) is mandatory.  The prefatory

5  clause of section 201(b)(1) spells out what a fiscal plan

6  shall provide.  The House Report that I've just referenced

7  makes clear that 314(b)(7) is to ensure lawful liens and

8  priorities will be respected in any debt restructuring.

9        At confirmation, the Court has jurisdiction under

10  section 306(a) to decide whether the Oversight Board has

11  complied with all provisions of PROMESA, including

12  201(b)(1)(n).  The fact that --

13        (Sound played.)

14        MR. HEIN:  -- the Oversight --

15        THE COURT:  You may --

16        MR. HEIN:  Thank you, Your Honor.

17        THE COURT:  -- wrap up.

18        MR. HEIN:  Yes.  I was just going to add that the

19  fact that this requirement imposed on the Oversight Board

20  under Title I, section 104(j), that the Oversight Board must

21  certify the submission for modification of a plan of

22  adjustment, and may do so only if it determines in its sole

23  discretion that the plan of adjustment is consistent with the

24  applicable fiscal plan, that requirement in Title I on the

25  Oversight Board does not mean that, at confirmation, the Court

1    is not also required to be satisfied that the Oversight Board

2    has complied with PROMESA.

3            Thank you, Your Honor.

4            THE COURT:  Thank you, Mr. Hein.

5            So I'll now return to Mr. Bienenstock.

6            MR. BIENENSTOCK:   Thank you, Your Honor.  I think

7    I'll go in reverse order.

8            To some extent, Mr. Hein's comments and mine, I think

9    we're two ships crossing in the night, but I want to identify

10   where I think we diverge, because it's important.   I

11   emphasized that nothing about the current in limine motion

12   suggests that the Court cannot determine at confirmation

13   whether liens and priorities asserted by any party in interest

14   are treated in accordance with Title III and the Constitution.

15   And I'm sure Mr. Hein doesn't mind that concession, and it's a

16   concession we've made throughout the case.

17           Mr. Hein, however, takes that to another level and

18   suggests that determining whether his liens and priorities are

19   treated properly under Title III is not the inquiry, or at

20   least the end of the inquiry.  He's saying does the -- the

21   Court should have a trial within confirmation on whether the

22   fiscal plan respects the liens and priorities he asserts, and

23   is essentially asking that the confirmation hearing be a

24   litigation over the entire fiscal plan.

25           His pleading, as I mentioned earlier, goes into

1   population projections, Medicaid, audited financials, the

2   kitchen sink.  We think there's nothing in the language of

3   314(b)(7) suggesting that, and he had no response for my

4   comment that since the fiscal plan does not discharge debt or

5   extinguish liens, or pay claims for that matter, it's,

6   frankly, easy to show that the Plan of Adjustment is

7   consistent in that it pays more, because the fiscal plan pays

8   nothing.

9         If we -- Your Honor knows, I think, all parties in

10  interest know how the Oversight Board believes the fiscal plan

11  is not, in effect, a litigable instrument based on section

12  106(e), and for a lot of policy reasons.  If we are wrong, I

13  think the parties should definitely know that now, because

14  that changes the confirmation hearing remarkably.  But I think

15  Mr. Hein's arguments, along all those lines, simply fail for

16  the reasons I previously mentioned.

17        In terms of the DRA parties' comments that this is

18  all premature, I think Your Honor demonstrated how it's not

19  premature, even though the --

20        (Sound played.)

21        MR. BIENENSTOCK:  -- DRA parties declined the

22  suggestion that Your Honor might want to rule in their favor

23  on the jurisdiction question.  We hope not.  But I think we

24  demonstrated why it's not premature, or a request for an

25  advisory ruling.

1              And as for the actual case or controversy argument,

2    it's not any particular type of evidence that we're talking

3    about.  We're talking about all evidence, other than the

4    certification.  So it is very specific, by inclusion, as to

5    what is involved here.

6              Unless the Court has questions, that's all I had,

7    Your Honor.

8              THE COURT:  Thank you, Mr. Bienenstock.  I don't have

9    further questions.

10             I'll again ask everyone's patience as I reflect for a

11   couple of minutes, because I believe I will be ruling on the

12   motion this morning.

13             Thank you for your patience.

14             Pending before the Court is the Debtors' Notice of

15   Motion in Limine in Respect of Evidence Concerning Whether the

16   Proposed Plan of Adjustment is Consistent with the Certified

17   Fiscal Plan that was filed at Docket Entry No. 18116 in Case

18   No. 17-3283, and I'll refer to it as the "Motion", filed by

19   the Financial Oversight and Management Board for Puerto Rico,

20   which I'll refer to as the "Oversight Board", in its role as

21   Title III representative of the Commonwealth of Puerto Rico,

22   the Employees Retirement System of the Government of the

23   Commonwealth of Puerto Rico, and the Puerto Rico Public

24   Buildings Authority, collectively referred to as the

25   "Debtors".

1          The Court has reviewed the pleadings carefully and

2    now makes its oral ruling as to the Motion.  The Court

3    reserves the right to make non-substantive corrections in the

4    transcript of this ruling. For the following reasons, the

5    Motion is denied.

6          The Oversight Board has requested entry of an order

7    making two determinations:  First, that because the Oversight

8    Board has certified that the proposed plan of adjustment is

9    consistent with the applicable fiscal plan under section

10   104(j) of PROMESA, section 106(e) of PROMESA deprives the

11   Court of jurisdiction to resolve any dispute as to whether the

12   plan of adjustment is, in fact, consistent with the applicable

13   fiscal plan -- I'll refer to this particular question as the

14   "Consistency Issue" -- even though section 314(b)(7) of

15   PROMESA calls for a judicial finding on the Consistency Issue

16   as a precondition to plan confirmation.  The Oversight Board's

17   second request is that parties in interest with standing

18   nonetheless be permitted to proffer evidence concerning the

19   Consistency Issue, in anticipation of any prospective need for

20   a complete record after an appeal.

21         Section 312(a) of PROMESA provides that "only the

22   Oversight Board, after the issuance of a certificate pursuant

23   to section 104(j) of this Act, may file a plan of adjustment

24   of the debts of the debtor."  48 U.S.C. § 2172(a). Section

25   104(j)(3) adds, as a condition of submitting or modifying a

1    plan of adjustment, that "the Oversight Board may certify a

2    plan of adjustment only if it determines, in its sole

3    discretion, that it is consistent with the applicable

4    certified fiscal plan.  48 U.S.C. § 2124(j)(3).

5          In general, this Court has subject-matter

6    jurisdiction under section 306(a) of PROMESA, of all cases

7    under Title III of PROMESA, and proceedings arising therein or

8    arising under PROMESA or relating to cases under Title III.

9    48 U.S.C. § 2166.  Section 106(e) of PROMESA carves a piece

10   out of that jurisdictional grant, however, providing that

11   "there shall be no jurisdiction in any United States district

12   court to review challenges to the Oversight Board's

13   certification determinations under this Act."  48 U.S.C. §

14   2126(e).  Section 314(b)(7), on the other hand, provides that

15   confirmation of a plan of adjustment requires a judicial

16   finding that "the plan is consistent with the applicable

17   fiscal plan certified by the Oversight Board under Title II."

18   48 U.S.C. § 2174(b)(7).  The Oversight Board posits that these

19   two provisions contemplate that the Court's finding as to the

20   Consistency Issue should be based solely on the Board's

21   certification, and that the Court cannot consider any

22   challenge to any determinations inherent in such

23   certification.  Those opposing the Motion argue that the

24   Court's general jurisdiction of Title III issues empowers it

25   to examine all questions relating to the Consistency Issue and

1    other matters that may implicate certification.

2         The task currently before the Court is to harmonize

3    the foregoing provisions so as to give due effect to all of

4    them, such that no provision eclipses the others, in assessing

5    whether the Court has subject matter jurisdiction to consider

6    anything other than the fact of the Oversight Board's

7    certification or determination on the Consistency Issue, in

8    making the Court's determination under section 314(b)(7) of

9    PROMESA.  The Court concludes that section 106(e) does not

10   deprive the Court of jurisdiction to consider evidence and

11   make findings as to the Consistency Issue under section

12   314(b)(7) of PROMESA.

13        The text of section 106(e) broadly precludes

14   jurisdiction to review the "Oversight Board's certification

15   determinations under this Act."  That language appears at 48

16   U.S.C. § 2126(e), and encompasses all certification

17   determinations provided for in PROMESA.

18        The First Circuit has confirmed that "Section 106(e)

19   is an exception to PROMESA's general grant of jurisdiction at

20   § 106(a)" that "insulates certification decisions from

21   judicial review."  Mendez-Nunez v. Financial Oversight and

22   Management Board for Puerto Rico, 916 F.3d 98, 112 (1st Cir.

23   2019).  The First Circuit has recently reiterated the general

24   rule:  "PROMESA insulates the Oversight Board's certification

25   determinations from judicial review in the federal courts."

1   UTIER v. Financial Oversight and Management Board, 7 F.4th 31,

2   40 (1st Cir. 2021).

3           The Oversight Board notes that this Court has

4   previously held in these Title III proceedings that section

5   106(e) insulated both the Oversight Board's certifications and

6   the determinations underlying the certifications from judicial

7   review.  For example, in Ambac Assurance Corp. v. Commonwealth

8   of Puerto Rico, this Court held that "PROMESA § 106(e) not

9   only grants the Oversight Board exclusive authority to certify

10  fiscal plans, but it also insulates the Oversight Board's

11  certification determinations, which necessarily rest on

12  determinations that certain requirements have been met, from

13  challenge by denying all federal district courts jurisdiction

14  to review such challenges."  297 F. Supp. 3d 269, 283 (D.P.R.

15  2018).  In that same decision, this Court stated that "Section

16  106(e) of PROMESA deprives the Court of subject matter

17  jurisdiction of plaintiff's claims in so far as they attack

18  the certification of the fiscal plan or Oversight Board

19  determinations that are inherent in the certification of a

20  fiscal plan."  Id. at 289, note 11.  Those earlier

21  determinations are not dispositive of the issue raised in this

22  motion practice, however, because none of the earlier

23  proceedings involved an express statutory requirement that the

24  Court rule on an issue on which the Oversight Board has issued

25  a certification.

1       Notwithstanding the Oversight Board's power and

2   obligation to certify both fiscal plans and the consistency of

3   a proposed plan of adjustment with the applicable fiscal plan,

4   section 314(b) of PROMESA expressly contemplates a judicial

5   determination as to such consistency, as well as other issues,

6   directing that "the Court shall confirm the plan" if a number

7   conditions are satisfied, including an independent

8   determination that "the plan is consistent with the applicable

9   fiscal plan certified by the Oversight Board under Title II."

10  48 U.S.C. § 2174(b)(7).  Nothing about this provision appears

11  to allow the Court to rely on the mere existence of a

12  certification determination on the Consistency Issue by the

13  Oversight Board.  Nor does the statute direct the Court to

14  consider whether the Oversight Board's certification should

15  stand.  Section 314(b)(7) must be harmonized with the rest of

16  the statute and cannot be construed in a manner that would

17  deprive it of meaning.  See Barnhart v. Sigmon Coal Co., 538

18  U.S. 438, 454 (2002), in which the Court said, "we refrain

19  from concluding here that differing language in the two

20  subsections has the same meaning in each.  We would not

21  presume to ascribe this difference to a simple mistake in

22  draftsmanship."

23      To reconcile section 314(b)(7) with section 106(e)

24  and its interpretive jurisprudence, the Court construes

25  section 314(b)(7) as requiring an independent determination by

1    the Court of the Consistency Issue, but not as authorizing

2    judicial examination or vacatur of the Oversight Board's

3    certification determination pursuant to section 104(j) on the

4    Consistency Issue.  PROMESA assigns functions to both the

5    Oversight Board and the Court.  The Oversight Board must make,

6    inter alia, a consistency determination before it can even

7    propose a plan of adjustment.  The Court, which has the sole

8    power to confirm a plan of adjustment, must make a consistency

9    determination as to the final iteration of the plan before the

10   Court can confirm it.

11          Accordingly, because the Court has subject matter

12   jurisdiction to consider the Consistency Issue under section

13   314(b)(7), and because the evidence-related relief sought in

14   the Motion is mooted by that determination, the Motion is

15   denied in its entirety.  The Court need not address the other

16   arguments made by the objectors except as follows.  The

17   jurisdictional element of the Oversight Board's Motion was not

18   a request for an advisory opinion, given the pendency of the

19   confirmation motion and the provisions of PROMESA section

20   314(b)(7), and, for the avoidance of doubt, the Court notes

21   that it has not, in rendering this decision, prejudged any

22   substantive issue.

23          The Court will enter an appropriate order denying the

24   Motion.  Thank you.

25          That concludes the Agenda that was announced in

1  advance of this hearing.  If anyone has any other matters that

2  need to be addressed today, please use the "hand raise"

3  function now.

4           No hands have been raised, and so this concludes the

5  hearing Agenda for this Omnibus Hearing.  The next scheduled

6  hearing is the plan confirmation pretrial conference, which is

7  currently scheduled for November 1, 2021, at 9:30 AM Atlantic

8  Standard Time.  As with today's hearing, that hearing will

9  occur over a combination of Zoom and a listen-only telephone

10 line.

11          The Court has already issued a notice of the proposed

12 procedures for that hearing and the confirmation hearing,

13 which can be found at docket entry no. 18276 in case no.

14 17-3283.  An appropriate procedural order for those hearings

15 will be issued in due course.

16          As always, I thank the court staff here in Puerto

17 Rico, in Boston, and in New York for their work in preparing

18 for and conducting today's hearing, and particularly in

19 sorting out the logistics for going to the Zoom platform.  I

20 also thank them for their outstanding ongoing support of these

21 cases.

22          Stay safe and keep well, everyone.  We are adjourned.

23          (At 10:59 AM, proceeding concluded.)

24                        *     *     *

25

1    U.S. DISTRICT COURT    )

2    DISTRICT OF PUERTO RICO)

3

4         I certify that this transcript consisting of 56 pages is

5    a true and accurate transcription to the best of my ability of

6    the proceedings in this case before the Honorable United

7    States District Court Judge Laura Taylor Swain, and the

8    Honorable United States Magistrate Judge Judith Gail Dein on

9    October 6, 2021.

10

11

12

13   S/ Amy Walker

14   Amy Walker, CSR 3799

15   Official Court Reporter

16

17

18

19

20

21

22

23

24

25