UNITED STATES DISTRICT COURT DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE COMMONWEALTH OF PUERTO RICO, et al., Debtors. | ) PROMESA Title III ) ) 17 BK 3283-LTS ) (Jointly Administered) ) [Related to Docket #17640] |

<u>Objection to Confirmation of Plan of Reorganization of the GO Bonds
(by Individual Bondholder Arthur Samodovitz)</u>

<u>Table of Contents:</u>

Summary                                                                 page 3

Detailed Analysis of Actual Debt Service                                page 4
Upon Issuance of 2014 GO Bonds.

Detailed Analysis of FOMB's Argument that                               page 9
if Debt Service on 2012 PBA Bonds is added,
then the Debt Service on the 2014 GO Bonds
exceeded the debt service limit.

Detailed Analysis of FOMB's Argument that                               page 10
the 2014 GO Bonds were invalid because they
were used to finance operating expenses of PR.

Conclusion                                                              page 11

Additional Objections                                                   page 11

<u>Table of Authorities:</u>

Puerto Rico Constitution                                                pages 3-11

PROMESA section 314(b)(6)                                               pages 3,4,11,12

Journal of Constitutional Convention at 104                             page 10.
(certified translation available at Dkt. No. 452-1
in Adv. Proc. No. 17-257-LTS) (Apr. 18, 2018).

Evidence
---

Exhibit A – "AAFAF CONF 0009291" (Projected Debt Service on Variable Rate GOs based on 12% maximum possible interest rate)

Exhibit B – "AAFAF CONF 0009290" (Actual Debt Service on Variable Rate GOs based on applicable index)

## Affidavit of Authenticity of Exhibit A and Exhibit B

I declare under penalty of perjury that Exhibit A and Exhibit B are true and correct copies of documents produced by the AAFAF on Friday, October 1, 2021 labeled "AAFAF CONF 0009291" for the Projected Debt Service on Variable Rate GOs based on 12% maximum possible interest rate (Exhibit A) and "AAFAF CONF 0009290" for Actual Debt Service on Variable Rate GOs based on applicable index (Exhibit B).

Dated: October 5, 2021

Arthur Samodovitz /s/ Arthur Samodovitz
Signature of Deponent

Sworn to before me this 5th day of October, 2021

_____, Notary Public



KINDRIA J NEILD
Notary Public, State of New York
Reg. No. 01NE6417350
Qualified Cayuga County
Commission Expires 05/10/2025

2

<u>Objection to Confirmation of Plan of Reorganization of the GO Bonds</u>

<u>Summary</u>

I own $200,000 of 2014 8% GO Bonds ("2014 GO Bonds") and object to the Plan and its restructuring of the 2014 GO bonds as not being in the best interest of the bondholders as required by PROMESA section 314(b)(6). This is because the challenges to the validity of these bonds are meritless and there has been no adjudication adverse to the 2014 GO Bonds. Other objections are also provided.

The FOMB challenged the validity of the 2014 GO Bonds as follows:

1. In FOMB's Docket 4784 and FOMB's opening brief Docket 17680 in support of the Plan, the FOMB challenged the validity of the 2014 GO Bonds as exceeding the 15% debt service limit established by Article VI Section 2 of the Puerto Rico ("PR") Constitution. The FOMB contended that use of the interest capitalization of the 2014 GO Bonds in the calculation of the total debt service was improper, and **without** the interest capitalization, the total debt service was 15.1% in FY 2016. **With** the "interest capitalization" some of the proceeds from the sale of the 2014 GO Bonds was used to subsidize the interest due on the 2014 GO Bonds in FYs 2014-2016, and the debt service was calculated without including the amount of the subsidy. The total interest due on the 2014 GO Bonds in FY 2016 was $280 Million (i.e., 8% X $3.5Billion), the interest subsidy was $75 Million, so only the difference, i.e., $205 Million, was included in the debt service calculation. As explained in more detail below, even if the interest capitalization is not used in the calculation of the debt service as urged by the FOMB, the (actual) debt service in FY 2016 still did not exceed the 15% debt service limit. **This calculation of actual debt service is based on information recently obtained from the AAFAF through discovery, i.e., Exhibits A and B. At the discovery hearing with Judge Dein, the AAFAF stated that it did not know if these documents still existed or could be found, so presumably these documents were not previously available for the defense of the 2014 GO Bonds or the settling GO Bond parties or other bondholders who voted in favor of the Plan.**

2. In FOMB's Docket 4784, the FOMB also contended that the 2014 GO Bonds were issued in excess of the 15% debt service limit if the debt service of the 2012 PBA bonds was included. However, the Offering Statement for the 2012 PBA bonds states that because PR is only a guarantor of these bonds, and there are separate viable funding sources for these bonds, that its debt service should not be included in the calculation of the debt service limit, and PR and its lawyers and accountants certified this. In fact, Article VI section 2 of the PR Constitution clearly states that only guarantees actually paid can be considered in a debt service calculation. Also, the FOMB contends that

3

the 2012 PBA bonds were issued in excess of the 15% debt service limit. Even if that was true, that would not add to the debt service calculation upon issuance of the 2014 GO Bonds.

3. In FOMB's Docket 4784, the FOMB also challenged the validity of the 2014 GO Bonds as allegedly being issued to pay operating expenses of PR allegedly in violation of the PR Constitution because proceeds from the sale of the 2014 GO Bonds were used to repay other outstanding bonds that allegedly were used to pay operating expenses of PR. As explained in more detail below, the PR Constitution does not prohibit use of bond proceeds to pay operating expenses of PR.

PROMESA section 314(b)(6) requires that the Plan be in the best interests of creditors, which requires the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan. In the present case, because there is no real challenge to the validity of the 2014 GO Bonds, the Plan is not in the best interest of the 2014 GO Bondholders, and they would have a greater recovery, i.e., 100% of principal and the original 8% interest, under the non-bankruptcy laws and constitution of PR. This is substantially more than the approximately 70% of principal and 5% future interest under the Plan.

1. Detailed Analysis of Actual Debt Service Upon Issuance of 2014 GO Bonds

The FOMB challenged the validity of the 2014 GO Bonds as allegedly being issued in excess of the 15% debt service limit when their debt service is combined with that of all other outstanding bonds subject to the 15% debt service limit:

> "Debt Related Objections. The Commonwealth's approximately $13 billion in outstanding GO Bonds is among the largest components of Puerto Rico's debt burden. As a result of investigations, **parties have prosecuted objections to bondholders' claims on the basis that certain GO bond issuances violated the limit established by the Commonwealth Constitution and accordingly were null and void** (such objections together, the "Bond Claim Objections")." Page 8 of the FOMB's Opening Brief Docket 17680in support of the Plan."

> "Even if PBA Bond debt service is not included in the calculation, **the 2014 GO Bonds were issued in violation of the Debt Service Limit when properly calculated to include interest on the 2014 GO Bonds payable from the proceeds of the 2014 GO Bonds themselves.**" Page 31 of Docket 4784.

4

The Offering Statement for the 2014 GO Bonds ("OS") calculated and reported a total debt service of 14.2% in FY 2016, the year of maximum debt service, and PR, its lawyers and accountants certified this OS for the 2014 GO Bonds:

> "The following ... sets forth the calculation of the Constitutional debt limit after giving effect to the issuance of the Bonds and the refunding of the Refunded Bonds. The calculation is based on the assumptions that variable rate bonds bear interest at the maximum legal rate of 12% per annum. Any potential termination payment (which is a good faith and credit obligation of the Commonwealth) payable by the Commonwealth (which would be based on the then applicable mark-to-market value) upon termination of the applicable interest rate exchange agreement is not included in the calculation of the 15% constitutional debt limitation, because it is not a payment of principal of or interest on general obligation debt of the Commonwealth (although the exclusion of such amounts from the debt limit has to this point never been ruled upon by any court).
>
> 1. Future maximum annual debt service for the Commonwealth's outstanding general obligation debt (after giving effect to the issuance of the Bonds and the refunding of the Refunded Bonds)     $1,161,777,697

[from the Table below for "FY 2016" row, "Total" column]

> 2. Amounts paid by the Commonwealth in the fiscal year ended June 30, 2013 on account of bonds or notes guaranteed by the Commonwealth   17,315,000

[not included in the Table because it is not interest or return of principal]

> 3. Sub-Total     $1,179,092,697
> 4. Average of the adjusted internal revenues for the fiscal year ended June 30, 2012 and preliminary internal revenues for the fiscal year ended June 30, 2013     $8,307,097,000

[reference revenue based on Article VI Section 2 of PR Constitution]

> 5. Percentage obtained by dividing the amount in 3. by the amount in 4. **14.2%"**    Pages 30-31 of the OS."

The following is the "Table" of debt service for each FY for (i) all outstanding bonds "Outstanding Bonds Debt Service" subject to the 15% debt service limit aside from the 2014 GO Bonds, and (ii) "Principal" and (iii) "Interest" for "The Bonds", i.e., the 2014 GO Bonds, and (iv) "Total" debt service for the "Outstanding Bonds" and "The Bonds":

5

**Commonwealth of Puerto Rico**
**Debt Service Requirements for**
**General Obligation Bonds**

| Fiscal Year Ending June 30 | Outstanding Bonds Debt Service | The Bonds Principal | The Bonds Interest | Total |
|---|---|---|---|---|
| 2014 | $ 838,313,627 | | $ 2,945,056 | $ 841,258,683 |
| 2015 | 883,734,818 | | 10,194,425 | 893,929,243 |
| 2016 | 956,777,697 | | 205,000,000 | 1,161,777,697 |
| 2017 | 881,685,132 | | 280,000,000 | 1,161,685,132 |
| 2018 | 818,799,188 | | 280,000,000 | 1,098,799,188 |
| 2019 | 840,224,437 | | 280,000,000 | 1,120,224,437 |
| 2020 | 864,647,823 | | 280,000,000 | 1,144,647,823 |
| 2021 | 717,806,226 | $ 15,900,000 | 280,000,000 | 1,013,706,226 |
| 2022 | 660,416,404 | 74,000,000 | 278,728,000 | 1,013,144,404 |
| 2023 | 581,696,991 | 158,200,000 | 272,808,000 | 1,012,704,991 |
| 2024 | 575,915,794 | 176,200,000 | 260,152,000 | 1,012,267,794 |
| 2025 | 627,867,118 | 137,900,000 | 246,056,000 | 1,011,823,118 |
| 2026 | 687,333,269 | 88,900,000 | 235,024,000 | 1,011,257,269 |
| 2027 | 605,711,718 | 177,200,000 | 227,912,000 | 1,010,823,718 |
| 2028 | 608,463,108 | 188,100,000 | 213,736,000 | 1,010,299,108 |
| 2029 | 565,331,439 | 245,900,000 | 198,688,000 | 1,009,919,439 |
| 2030 | 566,708,959 | 263,700,000 | 179,016,000 | 1,009,424,959 |
| 2031 | 551,873,573 | 299,200,000 | 157,920,000 | 1,008,993,573 |
| 2032 | 447,089,593 | 427,400,000 | 133,984,000 | 1,008,473,593 |
| 2033 | 548,174,695 | 360,000,000 | 99,792,000 | 1,007,966,695 |
| 2034 | 477,735,235 | 458,700,000 | 70,992,000 | 1,007,427,235 |
| 2035 | 543,968,686 | 428,700,000 | 34,296,000 | 1,006,964,686 |
| 2036 | 465,093,294 | - | - | 465,093,294 |
| 2037 | 464,623,295 | - | - | 464,623,295 |
| 2038 | 507,318,334 | - | - | 507,318,334 |
| 2039 | 506,846,991 | - | - | 506,846,991 |
| 2040 | 566,373,999 | - | - | 566,373,999 |
| 2041 | 565,901,044 | - | - | 565,901,044 |
| 2042 | 4,609,389 | - | - | 4,609,389 |
| 2043 | 1,882,313 | - | - | 1,882,313 |
| Total | $17,932,924,189 | $3,500,000,000 | $4,227,243,481 | $25,660,167,670 |

Page 34 of the OS.

When the 2014 GO Bonds were issued, $422 Million in proceeds from the sale of the 2014 GO Bonds were retained to subsidize the interest due on the 2014 GO Bonds in FYs 2014-2016, so the full amount of interest due on the 2014 GO Bonds would not be paid from revenue/taxes of PR as a burden on PR. This is called "interest capitalization" and is an accepted accounting principle. Therefore, the OS only counted the unsubsidized portion of the interest i.e., $205,000,000 instead of the full $280,000,000 interest on the 2014 GO Bonds in FY 2016, as part of the debt service, and PR, its lawyers and accountants certified this as proper in the OS. This resulted in the maximum debt service of 14.2% in FY 2016 as calculated above and reported in the

OS. The FOMB later challenged this certification arguing that all (subsidized and non-subsidized) interest i.e., $280 Million, due on the 2014 GO Bonds in FY 2016 should be considered in the debt service calculation, not just the non-subsidized $205 Million listed in the Table for FY 2016. This was their argument in Docket 4784 page 29 and its Appendix II pages 1-3. Without the interest capitalization/subsidy, **and if all other debt service considered in the OS for the Outstanding Bonds was correct**, the total debt service in FY 2016 plus the amount paid by PR in FY 2013 on its guarantees would be $1,161,777,697 [from 1. on Pages 30-31 of the OS or FY 2016 "Total" column in Table] + $75,000,000 [i.e., the omitted interest subsidy] =$1,236,777,697.
See also Docket 4784 pages 12-13 and its Appendix II for this argument of the FOMB:

2014 GO Bond Debt Limit Calculation (Including Interest Paid from Proceeds)

| FY Ending June 30 | Debt Service Prior to 2014 GO | 2014 GO Bonds | | | | | Max Annual Debt Service | Fiscal Year |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | Principal | 2014 GO Official Statement Interest | Excluded Interest | Total Interest Due on 2014 GO Bonds | Total | | |
| 2014 | 838,313,627 | - | 2,945,056 | 77,943,833 | 80,888,889 | 919,202,516 | 1,236,777,697 | 2016 |
| 2015 | 883,734,818 | - | 10,194,425 | 269,805,575 | 280,000,000 | 1,163,734,818 | | |
| 2016 | 956,777,697 | - | 205,000,000 | 75,000,000 | 280,000,000 | 1,236,777,697 | | |
| 2017 | 881,685,132 | - | 280,000,000 | - | 280,000,000 | 1,161,685,132 | | |
| 2018 | 818,799,188 | - | 280,000,000 | - | 280,000,000 | 1,098,799,188 | | |
| 2019 | 840,224,437 | - | 280,000,000 | - | 280,000,000 | 1,120,224,437 | | |
| 2020 | 864,647,823 | - | 280,000,000 | - | 280,000,000 | 1,144,647,823 | | |
| 2021 | 717,806,226 | 15,900,000 | 280,000,000 | - | 280,000,000 | 1,013,706,226 | | |

Docket 4784 Appendix II

Next, if the Amounts paid by the Commonwealth in the fiscal year ended June 30, 2013 on account of bonds or notes guaranteed by the Commonwealth of $17,315,000 is added to the projected debt service according to the debt service formula in the PR Constitution, the result is =$1,236,777,697 + $17,315,000 = $1,254,092,697.

$1,254,092,697 divided by the applicable PR revenue of $8,307,097,000 [from the calculation in 4. on Pages 30-31 of the OS] equals **15.1%**. See also Docket 4784 pages 12-13 and its Appendix II for this argument of the FOMB:

7

| Debt Limit Calculation | | |
|---|---|---|
| 1. | Future maximum annual debt service for the Commonwealth's outstanding general obligation debt (after giving effect to the issuance of the Bonds and the refunding of the Refunded Bonds) | $1,236,777,697 |
| 2. | Amounts paid by the Commonwealth in fiscal year ended June 30, 2013 on account of bonds or notes guaranteed by the Commonwealth | 17,315,000 |
| 3. | Sub-Total | $1,254,092,697 |
| 4. | Average of the adjusted internal revenues for the fiscal year ended June 30, 2012 and preliminary internal revenues for the fiscal year ended June 30, 2013 | $8,307,097,000 |
| 5. | Percentage obtained by dividing the amount in (3) by the amount in (4) | 15.1% |
| | **Conclusion - Debt Limit Exceeded** | |

Docket 4784 Appendix II

However, the debt service in FY 2016 included interest due on $126.725 Million of four variable rate GO bonds ("Variable Rate GOs"), and the interest considered in the OS was projected at the maximum rate allowed by PR law, i.e., 12%:

> "The ... calculation of the Constitutional debt limit after giving effect to the issuance of the Bonds and the refunding of the Refunded Bonds. **The calculation is based on the assumptions that variable rate bonds bear interest at the maximum legal rate of 12% per annum.**" Page 30 of the OS.

12% of $126.725 Million equals $15,207,000, and this was included in the (projected) debt service in the "Outstanding Bonds Debt Service" column in the Table. See also Exhibit A which was provided from the AAFAF as the projected debt service on these Variable Rate GOs in FY 2016. (There was no return of principal on the Variable Rate GOs in FYs 2014-2016, just interest.) However, the actual interest on the Variable Rate GOs was based on the CPI or LIBOR bond rates:

> "Variable rate debt shown under the column heading "Other Variable Debt" below consists of bonds that are not subject to optional or mandatory tender, **the interest rate on which bonds is tied to various indices (e.g., CPI bonds or LIBOR bonds). ... Other Variable Rate Debt - $126,725,000**". Page 29 of OS.

In fact, the actual debt service (just interest) in FY 2016 was only $2,162,617 for the Variable Rate GOs. See Exhibit B which was provided by the AAFAF that lists the actual debt service (just interest) on the Variable Rate GOs as follows for FY 2016 (i.e., from 7/1/2015 through 6/30/2016):

$396,666 interest on 7/1/2015 for Principal $30,005,000 due 7/1/2018
$416,649 interest on 7/1/2015 for Principal $31,280,000 due 7/1/2019

8

$437,828 interest on 7/1/2015 for Principal $32,625,000 due 7/1/2020
$420,688 interest on 7/1/2015 for principal $32,815,000 due 7/1/2021

$117,020 interest on 1/1/2016 for Principal $30,005,000 due 7/1/2018
$125,120 interest on 1/1/2016 for Principal $31,280,000 due 7/1/2019
$133,763 interest on 1/1/2016 for Principal $32,625,000 due 7/1/2020
$114,853 interest on 1/1/2016 for principal $32,815,000 due 7/1/2021
**$2,162,587**

So, the actual debt service (just interest) on the Variable Rate GOs in FY 2016 was over-projected in the OS by **$13,044,413**, i.e., $15,207,000 - $2,162,587.
Therefore, the actual debt service in FY 2016, without the interest capitalization, was ($1,161,777,697 [from FY 2016 row, "Total" column projection] - $13,044,413 [subtract the over-projection for the Variable Rate GOs]+ $75,000,000 [add back interest subsidy]) = $1,223,733,284. When the $17,315,000 paid on the guarantee by PR in FY 2013 is added, the total amount that should be considered in the calculation of the Constitutional debt service limit in FY 2016 is ($1,223,733,284 + $17,315,000) = $1,241,048,284 without the interest capitalization.
$1,241,048,284 divided by the applicable PR revenue of $8,307,097,000 [from the calculation in 4. on Pages 30-31 of the OS] = **14.94%** without the interest capitalization. This is less than the 15% debt service limit of Article VI Section 2 of the PR Constitution even if the interest capitalization is not used. Therefore, this FOMB challenge to the validity of the 2014 GO Bonds is completely without merit.

**As explained above, this is newly uncovered data regarding the actual debt service for the Variable Rate GOs.**

### 2. Detailed Analysis of FOMB's Argument that if Debt Service on 2012 PBA Bonds is added, then the Debt Service on the 2014 GO Bonds exceeded the debt service limit

In Docket 4784, the FOMB also contended that the 2014 GO Bonds were issued in excess of the 15% debt service limit if the debt service of the 2012 PBA bonds is included. The Offering Statement for the 2012 PBA bonds states that because PR is only a guarantor, not the obligor, of these bonds, and there are separate viable funding sources for these bonds, the debt service of these bonds should not be included in the calculation of the debt service limit, and PR and its lawyers and accountants certified this. Moreover, PR has challenged the validity of the 2012 PBA bonds as allegedly exceeding the debt service limit, so they could not add to the debt service calculation upon issuance of the later 2014 GO Bonds. Moreover, **the FOMB did not provide any calculations to support its contention that issuance of the 2012 PBA Bonds did not exceed the debt service limit and therefore were valid to add to the debt**

9

**service upon issuance of the later 2014 GO Bonds. So, the FOMB has not even made a prima facie case for this challenge.**

### 3. Detailed Analysis of FOMB's Argument that the 2014 GO Bonds were invalid because they were used to finance operating expenses of PR

In Docket 4784, the FOMB also argued the following:

"36. The 2014 GO Bonds were used to finance deficit spending as follows:

(i) $342.4 million in net proceeds were used to refund the COFINA BANs (the proceeds of which were used to pay operating expenses of the Commonwealth);

(ii) $1.7 billion in net proceeds were used to repay GDB notes that financed working capital needs of the Commonwealth and to repay GDB lines of credit that financed debt service on Commonwealth GO bonds; and

(iii) $466.6 million in net proceeds were used to refund other Commonwealth GO bonds, including GO bonds that indirectly financed deficit spending by paying a portion of $207 million of advances under a GDB line of credit that was used to pay debt service on Commonwealth GO bonds." Pages 12- 13 of Docket 4784

The closest provision of the PR Constitution to the FOMB's position is Article II Section 7. which states "The appropriations made for any fiscal year shall not exceed the *total resources*, including available surplus, estimated for said fiscal Year unless the imposition of taxes sufficient to cover said appropriations is provided by law." *As explained in pages 42-48 of GO Bondholder Docket 10702, the Spanish language version of the PR Constitution uses the term "recursos totales" (i.e., "total resources"), not "total revenue" which appears in the English translation. See Journal of Constitutional Convention at 104 (certified translation available at Dkt. No. 452-1 in Adv. Proc. No. 17-257-LTS) (Apr. 18, 2018). The Spanish language version controls over the English translation. Page 43 of GO Bondholder Docket 10702 recounts the history of this clause as follows:

> "The original Spanish text of that provision reads: "The appropriations made for any fiscal year shall not exceed the total resources [recursos totales], …." P.R. Const. art. VI, § 7 (emphasis added). During the drafting process, one of the delegates asked (in Spanish) about the meaning of "recursos totales" (total resources) in the Balanced Budget Clause. Diario de Sesiones Procedimientos y Debates de la Convencion Constituyente de Puerto Rico ("Journal of Constitutional Convention"), at 1090 (certified translation available at Dkt. No. 4785-26). In response, the president of the drafting committee explained (again, in Spanish) that the draft intentionally replaced "total revenues" … with the broader term "total resources… specifically including the

10

"resources that are generated by issuing bonds." Id. After … the official Spanish text was approved, an English translation … incorrectly used the narrower term "total revenues"."

There is no provision in the PR Constitution that prohibits use of bond proceeds to fund operating expenses even if the operating expenses exceed tax revenue (as long as there is enough total *resource* to pay expenses). See pages 42-48 of Docket 10702 for a more complete explanation which clearly debunks these objections of the FOMB (and UCC). In addition, Article II Section 7 implicitly states that PR shall not default on any of its obligations!

## Conclusion

Because there is no real challenge to the validity of the 2014 GO Bonds, the 2014 GO Bondholders would have a greater recovery under non-bankruptcy law and the PR Constitution. So, based on Promesa 314(b)6, the Plan should **NOT** be confirmed to the extent it restructures the 2014 GO Bonds.

Also, PROMESA section 314(b)(6) requires that the Plan be in the best interests of creditors, **which requires the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan. Accordingly, the Court must make a factual determination "whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan."** This is not satisfied by superficial statements that challenges were made to the validity of the 2014 GO Bonds, and the Plan settles those challenges.

The FOMB's Opening Brief in Docket 17680 does not provide any substantive information or legal argument on the foregoing issues.

## Additional Objections

Under Bankruptcy Rule 7001(2) an adversary proceeding was required against each bondholder "to determine the validity, priority, or extent of a lien or other interest in property". *Mansaray-Ruffin*, 530 F.3d 230, 234-43 (3d Cir. 2008); *Commercial Western Finance*, 761 F.2d 1329, 1336-38 (9th Cir. 1985). No such adversary proceeding was brought against anyone that resulted in an adjudication of the invalidity of the 2014 GO Bonds or undermined their priority or secured status under the PR Constitution.

The Plan violates the Bankruptcy Clause of the US Constitution which requires uniformity throughout the United States, and PROMESA is not uniform with Chapter 9

11

which requires insolvency as defined in 11 U.S.C. § 101(32)(C) as a pre-requisite to bankruptcy and prohibits bankruptcy of a State's GO Bonds.

The Plan also violates the Takings clause of the US Constitution because of the retroactive effect of Promesa and lack of just compensation for taking my property.

I also object to the scope of releases in the Plan to the extent, if any, the Plan releases COFINA or PR from liability for restructuring my Cofina bonds, because the Cofina Plan is not at issue here and such extent would cause me to relinquish rights that other bondholders in same GO class, who did not own Cofina bonds, would not relinquish.

October 5, 2021

Respectfully Submitted, /s/ Arthur Samodovitz, pro se.
Arthur Samodovitz
120 Lasa Commons Circle #213, St. Augustine, Fl 32084
904-878-4026  ArthurSsails@gmail.com

Certificate of Service

I, Arthur Samodovitz, swear under penalty of perjury that I have caused the foregoing "Objection to Confirmation of Plan of Reorganization of the GO Bonds (by Individual Bondholder Arthur Samodovitz)", Exhibit A and Exhibit B to be served by email on each attorney whose email address appears below.

Dated: October 5, 2021

/s/ Arthur Samodovitz, Arthur Samodovitz, deponent

Counsel for FOMB:
PROSKAUER ROSE LLP Eleven Times Square New York, New York 10036-8299 Attn: Martin J. Bienenstock Paul V. Possinger Ehud Barak Maja Zerjal E-Mail: mbienenstock@proskauer.com   ppossinger@proskauer.com   ebarak@proskauer.com   mzerjal@proskauer.com
O'NEILL & BORGES LLC 250 Muñoz Rivera Ave., Suite 800 San Juan, PR 00918-1813 Attn: Hermann D. Bauer, Esq. E-Mail: hermann.bauer@oneillborges.com

Counsel for AAFAF:
O'MELVENY & MYERS LLP 7 Times Square New York, NY 10036 Tel: (212) 326-2000 Fax: (212) 326-2061 Attn: John J. Rapisardi Peter Friedman E-Mail: jrapisardi@omm.com  pfriedman@omm.com
MARINI PIETRANTON MUNIZ LLC 250 Ponce de León Ave. Suite 900 San Juan, Puerto Rico 00918 Tel: (787) 705-2171 Fax: (787) 936-7494 Attn: Luis C. Marini-Biaggi Carolina Velaz-Rivero E-Mail: lmarini@mpmlawpr.com  cvelaz@mpmlawpr.com

Sworn to before me this 5th day of October, 2021

_____, Notary Public

KINDRIA J NEILD
Notary Public, State of New York
Reg. No. 01NE6417350
Qualified Cayuga County
Commission Expires 05/10/20__