## **EXHIBIT D**

ERS Trust Agreement

## ERS TRUST AGREEMENT

**ERS TRUST AGREEMENT**, dated as of [●], 2021 (this "Trust Agreement"), between the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole representative of the Commonwealth of Puerto Rico (the "Commonwealth"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico in the Title III Cases ("ERS" and together with the Commonwealth, the "Debtors"), and [●], as trustee (together with any successor or additional trustee appointed under the terms hereof, including qualifying as such pursuant to Section 2.4 or Article X hereof, the "Trustee") of the ERS Trust (the "ERS Trust"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al., dated July 30, 2021, including all exhibits thereto, as the same may be further amended, modified, or supplemented from time to time (the "Plan") and the ERS Stipulation.

## RECITALS

A.   On June 30, 2016, the President of the United States signed into law legislation passed by Congress, the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101 *et seq.*

B.   The Oversight Board commenced cases pursuant to Title III of PROMESA for the Commonwealth and ERS on May 3, 2017 and May 21, 2017, respectively, (the "Title III Cases") by filing petitions with the United States District Court for the District of Puerto Rico (the "Title III Court").

C.   On April 2, 2021, the Debtors and certain ERS bondholders filed with the Title III Court an Amended and Restated Stipulation (A) Allowing Claims of such ERS Bondholders, (B) Staying Pending Litigation, and (C) Providing for Treatment of Claims of such ERS Bondholders and Dismissal of Pending Litigation Pursuant to a Plan of Adjustment (the "ERS Stipulation").

D.   On July 30, 2021, the Commonwealth filed the Plan and the disclosure statement relating to the Plan with the Title III Court.

E.   On [●], 2021, the Title III Court entered an order confirming the Plan (the "Confirmation Order").

F.   Since April 2, 2021, monies totaling [●] have been distributed to ERS in connection with ERS's investment in the ERS private equity portfolio, and deposited into a segregated account established by the ERS that shall be used solely for the purposes set forth in the Plan, the ERS Stipulation and this Trust Agreement (the "Segregated Account").

G.   The Plan and the ERS Stipulation provide for the creation of an ERS Trust to hold the ERS's interests in the ERS private equity portfolio and pursuant to which ERS shall continue to manage such assets up to and including the purchase thereof in accordance with the terms and provisions of the Plan.

H.   The ERS Trust will be organized for the sole purpose of holding the ERS's interests

in the ERS Private Equity Portfolio up to and including the purchase thereof, with no objective to conduct a trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the ERS Trust.

I.      The Trustee shall have all powers necessary to implement the provisions of this Trust Agreement and administer the ERS Trust, including the power to:  (i) prosecute for the benefit of the ERS Trust Beneficiaries through Trust Professionals any causes of action that may from time to time be held by the ERS Trust; (ii) preserve, maintain and liquidate the ERS Private Equity Portfolio; (iii) distribute the ERS Trust proceeds to the ERS Trust Beneficiaries; and (iv) otherwise perform the functions and take the actions provided for in this Trust Agreement or permitted in the Plan and/or the Confirmation Order or in any other agreement executed pursuant to the Plan, in each case subject to the provisions of Article VIII hereof regarding limitation on the Trustee and the Title III Court as provided for herein.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements contained herein, the Debtors and the Trustee agree as follows:

## AGREEMENT

## ARTICLE I

## DEFINITIONS

1.1      Recitals.  The recitals set forth above are unincorporated by reference and are explicitly made a part of this Trust Agreement.

1.2      Definitions. The following definitions shall apply to and constitute part of this Trust Agreement and all schedules, exhibits and annexes hereto.

"**Administrative Funding**" shall mean funds set aside from the Segregated Account reasonably determined by the Debtors prior to the Effective Date to be necessary to fund the activities of the ERS Trust, which amount shall be Fifty Thousand Dollars ($50,000).

"**Allowed ERS Bond Claims**" shall mean Claims arising from or related to the ERS Bonds that are or have become allowed by the Title III Court.

"**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, as amended, to the extent codified in Title 11, United States Code, and made applicable to the Title III Cases.

"**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code, as applicable to the Title III Cases.

"**Beneficiary Closing Date**" shall mean April 20, 2023.

"**Beneficiary Election**" shall mean the option of each ERS Trust Beneficiary to purchase the ERS Private Equity Portfolio and the ERS Trust Interests in accordance with the terms of the Plan.

"**Beneficiary Election Purchase Price**" shall mean (a) Seventy Million Seven Hundred Fifty Dollars ($70,750,000.00) <u>plus</u> (b) such amount as may be necessary to reimburse the Commonwealth for any funded shortfall amounts in connection with the ERS Private Equity Portfolio during the period from April 2, 2021 up to and including the purchases thereof pursuant to the Beneficiary Election that have not been previously reimbursed to the Commonwealth.

"**Book Entry System**" shall mean an electronic book-entry system maintained either by the ERS Trust or an agent of the ERS Trust for the purpose of recording the ownership of ERS Trust Interests.

"**Business Day**" shall mean a day other than a Saturday, Sunday, or any other day on which commercial banking institutions in New York, New York and San Juan, Puerto Rico are required to close by law or executive order.

"**Cash**" shall mean lawful currency of the United States, including, but not limited to, bank deposits, checks representing good funds, and legal equivalents thereof.

"**Claims**" shall mean any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, Causes of Action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.

"**Commonwealth**" shall mean the Commonwealth of Puerto Rico.

"**Commonwealth Election**" shall mean the right of the Commonwealth to purchase the ERS Private Equity Portfolio in accordance with the terms and provisions of the Plan and <u>Section 4.1</u> hereof.

"**Commonwealth Mandatory Closing Date**" shall mean a date no later than April 25, 2023.

"**Commonwealth Option Closing Date**" shall mean April 25, 2023.

"**Confidential Party**" shall mean each of the Trustee and its employees, members, agents, professionals and advisors, including the Trust Professionals.

"**Debtors**" shall mean, collectively, the Commonwealth of Puerto Rico in the Title III cases, and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico.

"**Disclosure Statement**" shall mean that certain disclosure statement relating to the Plan filed by the Commonwealth, dated July 30, 2021.

"**Dispute Resolution**" shall mean, in connection with any conflicting claims or demands made or asserted with respect to an ERS Trust Interest, either (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Title III Court (or such other court of proper jurisdiction) or (b) all differences have been resolved by a written agreement among all of such parties and the Trustee, which agreement shall include a complete release of the ERS Trust and the Trustee.

"**Effective Date**" shall mean the first (1st) Business Day on which (i) all the conditions precedent to confirmation of the Plan specified in Section 85.1 of the Plan shall have been satisfied or waived, as provided in Section 85.2 of the Plan, and (ii) all the conditions precedent to the substantial consummation of the Plan and occurrence of the Effective Date specified in Section 86.1 of the Plan shall have been satisfied or waived as provided in Section 86.2 of the Plan.

"**Encumbrances**" shall mean interests that (i) are not free and clear of any and all mortgages or (ii) have pledges, security interests, options, rights of first offer, unmet capital calls, encumbrances or other restrictions or limitations of any nature whatsoever.

"**Entity**" shall mean A Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the office of the United States Trustee, or any other entity.

"**ERS Bondholders**" shall mean, collectively, holders of ERS Bonds as of the Effective Date.

"**ERS Bonds**" shall mean, collectively, (a) the non-recourse Senior Pension Funding Bonds, Series A, issued by ERS in the original principal amount of One Billion Five Hundred Eighty-Eight Million Eight Hundred Ten Thousand Seven Hundred Ninety-Nine Dollars and Sixty Cents ($1,588,810,799.60), (b) the non-recourse Senior Pension Funding Bonds, Series B, issued by ERS in the original principal amount of One Billion Fifty-Eight Million Six Hundred Thirty-Four Thousand Six Hundred Thirteen Dollars and Five Cents ($1,058,634,613.05) and (c) the non-recourse Senior Pension Funding Bonds, Series C, issued by ERS in the original principal amount of Three Hundred Million Two Hundred Two Thousand Nine Hundred Thirty Dollars ($300,202,930.00), which, as of the ERS Petition Date, inclusive of compounded amounts, were in the aggregate outstanding principal amount of Three Billion One Hundred Sixty-Eight Million Six Hundred Ninety-Eight Thousand Seven Hundred Seventy-Six Dollars and Fifty-Five Cents ($3,168,698,776.55).

"**ERS Portfolio Price**" shall mean Seventy Million Seven Hundred Fifty Thousand Dollars ($70,750,000.00).

"**ERS Private Equity Portfolio**" shall mean, collectively, the portfolio of private equity interests held by ERS as of the Effective Date.

"**ERS Trust Assets**" shall mean the ERS Private Equity Portfolio, the Segregated Account, and such other property held from time to time by the ERS Trust pursuant to this Trust Agreement and any earnings, including interest, on any of the foregoing.

"**ERS Trust Beneficiaries**" shall mean, collectively, the holders of Allowed ERS Bond Claims.

"**ERS Trust Interest**" shall mean an interest in the ERS Trust allocated to each ERS Trust Beneficiary in an amount equal to such beneficiary's pro rata share of the Allowed ERS Bond Claims as of the Effective Date.

"**Exchange Act**" shall mean the Securities Exchange Act of 1934, as amended.

"**Final Order**" shall mean an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari, remand proceeding, or other proceedings for a new trial, re-argument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, re-argument, or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed, reversed or remanded in part or in full, with no further proceedings on remand, by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, re-argument, or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the Local Bankruptcy Rules.

"**holder**" shall mean an ERS Trust Beneficiary that is "holder of record" of such ERS Trust Beneficiary's ERS Trust Interest.

"**Indemnified Party**" shall mean the Trustee or the Person(s) comprising the Trustee, as the case may be, and their respective employees, agents and professionals.

"**IRC**" shall means The United States Internal Revenue Code of 1986, as amended from time to time.

"**IRS**" shall mean the Internal Revenue Service, an agency of the United States Department of Treasury.

"**Net Allowed ERS Bond Claims**" shall mean collectively, (a) Allowed ERS Bond Claims minus (b) the amount of adequate protection payments received by a holder of such Allowed ERS Bond Claims from and after the ERS Petition Date, calculated on a CUSIP-by-CUSIP basis.

"**Permissible Investments**" shall mean, collectively, (i) short-term direct obligations of, or obligations guaranteed by, the United States of America or (ii) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof.

"**Person**" shall mean an individual, general partnership, limited partnership, corporation, limited liability company, limited liability partnership, cooperative, trust, unincorporated organization, association, joint stock company, joint venture, estate, government, or agency or political

5

subdivision thereof, or any other form of legal entity.

"**Privileges**" shall mean all attorney-client privileges, work product protections, and other immunities or protections from disclosure held by the Debtors.

"**Reorganized Debtor**" shall mean the Debtors, from and after the Effective Date.

"**SEC**" shall mean the Securities and Exchange Commission.

"**Title III**" shall mean Title III of PROMESA.

"**Trust Professionals**" shall mean employees, officers and independent contractors, including attorneys, accountants, appraisers, disbursing agents or other parties deemed by the Trustee to have qualifications necessary or desirable to assist in the proper administration of the ERS Trust.

## ARTICLE II

## DECLARATION OF TRUST

2.1     Creation of Trust.  The Debtors and the Trustee, pursuant to the Plan and the Confirmation Order, hereby constitute and create the ERS Trust, which shall bear the name "ERS Trust."  In connection with the exercise of the Trustee's power hereunder, the Trustee may use this name or such variation thereof as the Trustee sees fit.

2.2     Purpose of ERS Trust.  The sole purpose of the ERS Trust is to implement the Plan and the ERS Stipulation on behalf, and for the benefit, of the holders of Allowed ERS Bond Claims, and to serve as a mechanism for ERS converting to cash and distributing the ERS Private Equity Portfolio, or interest therein, in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the ERS purpose of the ERS Trust.

2.3     Transfer of ERS Private Equity Portfolio.

(a)     On the Effective Date, and in accordance with the Plan, the ERS Stipulation, and the Confirmation Order, ERS shall transfer to the ERS Trust, for the sole benefit of the ERS Trust Beneficiaries, the ERS Private Equity Portfolio, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other Persons to the maximum extent contemplated by and permissible pursuant to the Plan, the ERS Stipulation, the Confirmation Order and this Trust Agreement.

(b)     Prior to the Effective Date, ERS shall not transfer or liquidate the ERS Private Equity Portfolio; provided, however, that assets within the ERS Private Equity Portfolio may be liquidated in the ordinary course pursuant to applicable terms and conditions of the respective underlying agreements, with the proceeds thereof being deposited into the Segregated Account.

(c)      On the Effective Date, the Administrative Funding shall be set aside from the Segregated Account.  If there is insufficient cash in the Segregated Account necessary to satisfy the Administrative Funding on the Effective Date, the Commonwealth shall fund any cash shortfalls; provided, however, that, upon sufficient cash existing in the Segregated Account, including, without limitation, up to and including the Commonwealth Option Closing Date, the Beneficiary Closing Date or the Commonwealth Mandatory Closing Date, as applicable, the Trustee shall cause monies to be paid from the Segregated Account to reimburse the Commonwealth for such funded shortfall amounts. Under no circumstances shall the Trustee use any amounts of the Administrative Funding to settle capital calls associated with the ERS Private Equity Portfolio.

(d)      The transfer of the ERS Private Equity Portfolio shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code.

(e)      Any quarterly cash distributions or other proceeds from the ERS Private Equity Portfolio shall be deposited into the Segregated Account.  If there is insufficient cash in the Segregated Account from distributions made from the ERS Private Equity Portfolio necessary to satisfy any capital commitments with respect thereto, from and after the Effective Date, the Commonwealth shall fund any cash shortfalls; provided, however, that, upon sufficient cash existing in the Segregated Account, including, without limitation, up to and including the Commonwealth Option Closing Date, the Beneficiary Closing Date or the Commonwealth Mandatory Closing Date, as applicable, ERS shall cause monies to be paid from the Segregated Account to reimburse the Commonwealth for such funded shortfall amounts.

(f)      Upon delivery of the ERS Private Equity Portfolio to the ERS Trust, the Debtors shall be discharged and deemed released from all liability with respect to the delivery of such distributions, and exculpated for any and all claims and causes of action asserted with the ERS Private Equity Portfolio during the period up to and including delivery thereof into the ERS Trust.

(g)      The ERS Private Equity Portfolio and all other property held from time to time by the ERS Trust pursuant to this Trust Agreement and any earnings, including interest, on any of the foregoing shall be applied by the Trustee in accordance with the terms hereof, the Plan, the ERS Stipulation, and the Confirmation Order for the benefit of the ERS Trust Beneficiaries, and for no other party, subject to the further covenants, conditions and terms hereinafter set forth.

2.4     Appointment and Acceptance of Trustee.  As set forth in the Confirmation Order, the Debtors hereby designate [●] to serve as the initial Trustee of the ERS Trust.  The Trustee hereby accepts the ERS Trust created by this Trust Agreement and the grant, assignment, transfer, conveyance and delivery to the Trustee, on behalf, and for the benefit, of the ERS Trust Beneficiaries, by the Debtors of all of their respective right, title and interest in the ERS Trust Assets, upon the terms and subject to conditions set forth herein, in the Plan, the ERS Stipulation, and in the Confirmation Order.  The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the ERS Trust and not otherwise.  The Trustee shall have the authority to bind the ERS Trust within the limitations set forth herein, but shall for all purposes hereunder be acting solely in the capacity as Trustee, and not individually.

2.5     No Reversion to Debtors.  In no event shall any part of the ERS Trust Assets revert to or be distributed to any Debtor or Reorganized Debtor, except pursuant to the sale of the ERS Private Equity Portfolio as provided in Article IV hereof.

2.6     Incidents of Ownership.  Except as provided in the Plan, the Confirmation Order, and/or the ERS Stipulation, the ERS Trust Beneficiaries shall be the sole beneficiaries of the ERS Trust and the ERS Trust Assets, and the Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein, in the Plan and in the Confirmation Order, including those powers set forth in Section 8.2 hereof.

2.7     Privileges and Obligation to Respond to Ongoing Investigations.

(a)     All attorney-client privileges, work product protections, and other immunities or protections from disclosure held by the Debtors shall be transferred, assigned, and delivered to the ERS Trust, without waiver, and shall vest in the Trustee solely in its capacity as such (and any other Person whom the Trustee may designate, as well as any other Person designated in this Trust Agreement).

(b)     Pursuant to Federal Rule of Evidence 502(d) (to the extent Rule 502(d) is relevant, notwithstanding the fact that the Debtors and the Trustee are joint holders of certain attorney-client privileges, work product protections or other immunities or protections from disclosure), no Privileges shall be waived by disclosure between or to the Trustee of the Debtors' information subject to attorney-client privileges, work product protections, or other immunities or protections from disclosure, or by disclosure among the Debtors and the Trustee that is subject to attorney-client privileges, work product protections, or other immunities or protections from disclosure jointly held by the Debtors and the Trustee.  The Trustee shall be obligated to respond, on behalf of the Debtors, to all information demands with respect to the ERS Private Equity Portfolio and the ownership thereof from and after the Effective Date.  The Trustee may waive Privileges that are held solely by the Debtors and/or the ERS Trust in the event and to the extent the Trustee determines in good faith that doing so is in the best interests of the ERS Trust and its beneficiaries.

(c)     The Trustee may disclose information that is subject to attorney-client privileges, work product protections, or other immunities only (i) pursuant to an order of a court of competent jurisdiction, subject to the procedure described in the next sentence insofar as it applies, or (ii) as otherwise required by law, subject to the procedure described in the next sentence insofar as it applies.  If the Trustee receives a request from a third party to disclose information that is subject to attorney-client privileges, work product protections, or other immunities or protections from disclosure that are jointly held with the Trustee, the Trustee will (A) pursue all reasonable steps to maintain the applicable privileges, protections or immunities from disclosure, including, if necessary, to maintain the privileges, protections or immunities from disclosure by seeking a protective order against and/or otherwise objecting to the production of such material, and (B) unless required by law, not disclose the materials in question unless and until any objection raised by the Trustee is resolved in favor of disclosure.

## ARTICLE III

## ERS TRUST BENEFICIARIES

3.1     Conflicting Claims.  If any conflicting claims or demands are made or asserted with respect to an ERS Trust Interest, the Trustee shall be entitled, in its sole and absolute discretion, to refuse to comply with any such conflicting claims or demands.  In so refusing, the Trustee, at its sole election, may elect to make no payment or distribution with respect to the ERS Trust Interest subject to the claims or demands involved, or any part thereof, and the Trustee shall refer such conflicting claims or demands to the Title III Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands or such other court of competent jurisdiction. In so doing, the Trustee shall not be or become liable to any party for its refusal to comply with any of such conflicting claims or demands.  The Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Title III Court (or such other court of proper jurisdiction) or (b) all differences have been resolved by a written agreement among all of such parties and the Trustee, which agreement shall include a complete release of the ERS Trust and the Trustee.  Promptly after a Dispute Resolution is reached, the Trustee shall transfer the payments and distributions, if any, together with any interest thereon to be paid in accordance with Section 6.6 hereof, in accordance with the terms of such Dispute Resolution.  Any payment of any interest or income should be net of any taxes attributable thereto in accordance with Section 7.3 hereof.

3.2     Rights of ERS Trust Beneficiaries.  Each ERS Trust Beneficiary shall be entitled to participate in the rights and benefits due to an ERS Trust Beneficiary hereunder according to the terms of its ERS Trust Interest.  The interest of an ERS Trust Beneficiary is hereby declared and shall be in all respects personal property.  Except as expressly provided hereunder, an ERS Trust Beneficiary shall have no title to, right to, possession of, management of or control of the ERS Trust or the ERS Private Equity Portfolio or to any right to call for a partition or division of such assets or to require an accounting.

3.3     Evidence of ERS Trust Interest.  Ownership of an ERS Trust Interest will be evidenced by the recording of such ownership in the Book Entry System.  An ERS Trust Beneficiary shall be deemed the "holder of record" of such ERS Trust Beneficiary's ERS Trust Interest for purposes of all applicable United States federal and state laws, rules and regulations, including all applicable Commonwealth laws, rules and regulations.  The Trustee shall, upon the written request of a holder of an ERS Trust Interest, provide reasonably adequate documentary evidence of such holder's ERS Trust Interest, as indicated in the Book Entry System.  The expense of providing such documentation shall be borne by the requesting holder.

3.4     Transfers of ERS Trust Interests.

(a)     General.  ERS Trust Interests shall not be transferable or assignable except by will, intestate succession or operation of law.

(b)     Book Entry System.  Pursuant to the Book Entry System, the ERS Trust shall maintain, or cause the agent of the ERS Trust to maintain, a register (which may be electronic) setting forth the names and addresses of the ERS Trust Beneficiaries, and the amount and class of

9

their ERS Trust Interests from time to time.  Any transfer or assignment of an ERS Trust Interest by operation of law shall not be effective unless and until such transfer or assignment is recorded in the Book Entry System, which shall be completed as soon as practicable.  Subject to <u>Section 3.4(d)</u> hereof, the entries in the Book Entry System shall be conclusive absent manifest error, and the ERS Trust and the Trustee shall treat each person whose name is recorded in the Book Entry System pursuant to the terms hereof as the owner of ERS Trust Interests indicated therein for all purposes of this Trust Agreement, notwithstanding notice to the contrary.

(c)     <u>Registration</u>.  If the Trustee, upon advice of counsel, determines that any ERS Trust Interests may be subject to registration pursuant to Section 12 of the Securities Exchange Act of 1934, as amended, the Trustee shall pursue relief from such registration by obtaining either an exemptive order, a no-action letter or an interpretive letter from the Securities and Exchange Commission or its staff or, absent its ability to achieve that objective or in lieu thereof, shall register such class pursuant to Section 12 of such statute (it being understood and agreed that the Trustee shall be authorized, among other things, to register such class and to seek relief from one or more of the requirements then applicable subsequent to such registration and to de-register such class).  To the extent that any Administrative Funding is available, any expenses that are associated with such application for relief and/or registration shall first be deducted from the Administrative Funding.

(d)     <u>Further Limitations on Transfer</u>.  Notwithstanding any other provision to the contrary, the Trustee may disregard any purported transfer or assignment of ERS Trust Interests by operation of law if sufficient necessary information (as reasonably determined by the Trustee), including applicable tax-related information, is not provided by such purported transferee or assignee to the Trustee.

3.5     <u>Limited Liability</u>.  No provision of this Trust Agreement, the Plan or the Confirmation Order, and no mere enumeration herein of the rights or privileges of any ERS Trust Beneficiary, shall give rise to any liability of such ERS Trust Beneficiary solely in its capacity as such, whether such liability is asserted by any Debtor, by creditors, employees, or equity interest holders of any Debtor, or by any other Person, except to the extent of the ERS Trust Beneficiary's fraud, gross negligence, or willful misconduct.  ERS Trust Beneficiaries are deemed to receive the ERS Private Equity Portfolio in accordance with the provisions of this Trust Agreement, the Plan and the Confirmation Order in exchange for their Allowed Claims without further obligation or liability of any kind (except to the extent of the ERS Trust Beneficiary's fraud, gross negligence, or willful misconduct), but subject to the provisions of this Trust Agreement.

**ARTICLE IV**

**PURCHASE OF ERS PRIVATE EQUITY PORTFOLIO**

4.1     <u>Commonwealth Option to Purchase ERS Private Equity Portfolio</u>.  From the Effective Date up to and including April 10, 2023, the Commonwealth shall have the right, but not the obligation, to purchase the ERS Private Equity Portfolio in accordance with the following provisions:

(a)　　Purchase Price.  If the Commonwealth elects to purchase the ERS Private Equity Portfolio, the Commonwealth shall pay the ERS Portfolio Price, less such amount as may be necessary to reimburse the Commonwealth for any funded shortfall amounts related to the ERS Trust during the period from April 2, 2021 up to and including the purchase thereof pursuant to the Commonwealth Election that have not been previously reimbursed.

(b)　　Notice.  If the Commonwealth elects to purchase the ERS Private Equity Portfolio pursuant to Section 4.1 hereof, the Commonwealth shall provide written, unconditional, and irrevocable notice thereof to holders of Allowed ERS Bond Claims on or prior April 10, 2023.

(c)　　Closing.  Purchase of the ERS Private Equity Portfolio pursuant to the Commonwealth Election shall close on or prior to the Commonwealth Option Closing Date and the Commonwealth shall pay the ERS Portfolio Price by wire transfer of immediately available funds to the Trustee on the Commonwealth Option Closing Date.  At the closing of any purchase consummated pursuant to the Commonwealth Election, the Trustee shall deliver to the Commonwealth a certificate or certificates (or other appropriate instruments of transfer) representing the ERS Private Equity Portfolio, accompanied by all necessary stock transfer taxes paid and stamps affixed, if necessary, against receipt of the ERS Portfolio Price.

(d)　　Closing Representations and Warranties.  At the closing of any purchase consummated pursuant to the Commonwealth Election, the ERS Trust shall represent and warrant to the Commonwealth that:

(i)　the ERS Trust has good and valid title to the ERS Private Equity Portfolio;

(ii)　the ERS Trust has all the necessary power and authority and has taken all necessary action to sell the ERS Private Equity Portfolio as contemplated by this Section 4.1; and

(iii)　the ERS Private Equity Portfolio interests are free and clear of any and all mortgages, pledges, security interests, options, rights of first offer, unmet capital calls, encumbrances or other restrictions or limitations of any nature whatsoever, other than (A) Encumbrances arising under the securities laws, (B) Encumbrances arising under the constitutional documents of the Persons to which the ERS Private Equity Portfolio interests relate, including partnership agreements, limited liability corporation agreements, shareholder agreements, charters and bylaws, and other similar documents, agreements and instruments, and (C) Encumbrances created by, through, or under the Commonwealth.

(e)　　Cooperation.  The Trustee shall take all actions as may be reasonably necessary to consummate the Commonwealth Election contemplated by this Section 4.1, including entering into agreements and delivering certificates and instruments and consents as may be deemed necessary or appropriate.

(f)　　Distribution.  Upon consummation, the Trustee shall distribute the proceeds from the Commonwealth Election, without setoff or deduction for taxes, to the ERS Trust Beneficiaries pro rata in accordance with their respective beneficial interests in the ERS Trust; provided, however, that, for purposes of distribution, calculations shall be based upon the amount of

Net Allowed ERS Bond Claims after deduction of amounts as may be permitted to pay back the Commonwealth.

4.2     ERS Trust Beneficiary Option to Purchase ERS Private Equity Portfolio.  If the Commonwealth declines to exercise the Commonwealth Election option or fails to provide notice of its exercise of the Commonwealth Election by April 10, 2023, each ERS Trust Beneficiary shall have the option, but not the obligation, to exercise the Beneficiary Election in accordance with the following provisions:

(a)     Purchase Price.  The ERS Trust Beneficiaries that exercise the Beneficiary Election shall pay the Beneficiary Election Purchase Price.  The Trustee shall notify each ERS Trust Beneficiary that determines to exercise the Beneficiary Election of the full Beneficiary Election Purchase Price promptly following such ERS Trust Beneficiary's notice of Beneficiary Election, as provided in this Section 4.2.

(b)     Notice.  If one or more ERS Trust Beneficiaries determines to exercise the Beneficiary Election, the Trustee shall provide written, unconditional, and irrevocable notice thereof to the other ERS Trust Beneficiaries on or prior April 15, 2023.

(c)     Closing.  If more than one ERS Trust Beneficiary determines to exercise the Beneficiary Election, the purchasing ERS Trust Beneficiaries shall pay Beneficiary Election Purchase Price on a pro rata basis based upon the amount of such ERS Trust Beneficiaries' respective Allowed ERS Bond Claims, no later than the Beneficiary Closing Date.  The purchasing ERS Trust Beneficiaries shall pay the Beneficiary Election Purchase Price by wire transfer of immediately available funds to the Trustee on the Beneficiary Closing Date.  At the closing of any purchase consummated pursuant to the Beneficiary Election, the Trustee shall deliver to the purchasing ERS Trust Beneficiaries a certificate or certificates (or other appropriate instruments of transfer) representing the ERS Private Equity Portfolio, accompanied by all necessary stock transfer taxes paid and stamps affixed, if necessary, against receipt of the Beneficiary Election Purchase Price.

(d)     Closing Representations and Warranties.  At the closing of any purchase consummated pursuant to the Beneficiary Election, the ERS Trust shall represent and warrant to each purchasing ERS Trust Beneficiary that:

(i)     the ERS Trust has good and valid title to the ERS Private Equity Portfolio;

(ii)     the ERS Trust has all the necessary power and authority and has taken all necessary action to sell the ERS Trust Interests as contemplated by this Section 4.2; and

(iii)     the ERS Private Equity Portfolio and the ERS Trust Interests are free and clear of any and all Encumbrances, other than (A) Encumbrances arising under the arising under securities laws, (B) Encumbrances arising under the constitutional documents of the Persons to which the ERS Private Equity Portfolio and the ERS Trust Interests relate, including partnership agreements, limited liability corporation agreements, shareholder agreements, charters and bylaws, and other similar documents, agreements

and instruments, and (C) Encumbrances created by, through, or under the Commonwealth.

(e)  Cooperation.  The Trustee shall take all actions as may be reasonably necessary to consummate the Beneficiary Election contemplated by this Section 4.2, including entering into agreements and delivering certificates and instruments and consents as may be deemed necessary or appropriate.

(f)  Distribution.  The Trustee shall distribute proceeds from the Beneficiary Election, net of the amounts necessary to reimburse the Commonwealth for any funded shortfall amounts in connection with the ERS Trust that have not been previously reimbursed to the Commonwealth, and without setoff or deduction for taxes, to the ERS Trust Beneficiaries pro rata in accordance with their respective beneficial interests in the ERS Trust; provided, however, that, for purposes of distribution, calculations shall be based upon the amount of Net Allowed ERS Bond Claims.

4.3  Commonwealth Obligation to Purchase.  If neither the Commonwealth Election nor the Beneficiary Election is exercised, the Commonwealth shall purchase the ERS Private Equity Portfolio for the ERS Portfolio Price, less such amount as may be necessary to reimburse the Commonwealth for any funded shortfall amounts related to the ERS Trust during the period from April 2, 2021 up to and including the purchase thereof pursuant to the Commonwealth Election that have not been previously reimbursed to the Commonwealth, in accordance with the following provisions:

(a)  Notice.  The Trustee will deliver notice to the Commonwealth of its obligation to purchase the ERS Private Equity Portfolio no later than [April 24,] 2023.  When providing such notice, the Trustee, on behalf of the ERS Trust, shall represent and warrant that:

(i)   the ERS Trust has good and valid title to the ERS Private Equity Portfolio;

(ii)  the ERS Trust has all the necessary power and authority and has taken all necessary action to sell the ERS Private Equity Portfolio as contemplated by this Section 4.3; and

(iii) the ERS Private Equity Portfolio interests are free and clear of any and all Encumbrances other than (A) Encumbrances arising under the arising under securities laws, (B) Encumbrances arising under the constitutional documents of the Persons to which the ERS Private Equity Portfolio interests relate, including partnership agreements, limited liability corporation agreements, shareholder agreements, charters and bylaws, and other similar documents, agreements and instruments, and (C) Encumbrances created by, through, or under the Commonwealth.

(b)  Closing.  Purchase of the ERS Private Equity Portfolio pursuant to this Section 4.3 will close on a date no later than the Commonwealth Mandatory Closing Date.  The Commonwealth shall pay the ERS Portfolio Price by wire transfer of immediately available funds to the Trustee on the Commonwealth Mandatory Closing Date.  At the closing of any purchase consummated pursuant to the Commonwealth Mandatory Election, the Trustee shall deliver to the

Commonwealth a certificate or certificates (or other appropriate instruments of transfer) representing the ERS Private Equity Portfolio, accompanied by all necessary stock transfer taxes paid and stamps affixed, if necessary, against receipt of the ERS Portfolio Price.

(c)   Cooperation. The Trustee shall take all actions as may be reasonably necessary to consummate the purchase of the ERS Private Equity Portfolio contemplated by this Section 4.3, including entering into agreements and delivering certificates and instruments and consents as may be deemed necessary or appropriate.

(d)   Distribution.   The Trustee shall distribute the proceeds from the Commonwealth Mandatory Election, without setoff or deduction for taxes, to the ERS Trust Beneficiaries pro rata in accordance with their respective beneficial interests in the ERS Trust; provided, however, that, for purposes of distribution, calculations shall be based upon the amount of Net Allowed ERS Bond Claims.

**ARTICLE V**

**DURATION AND TERMINATION OF ERS TRUST**

5.1   Duration.  The ERS Trust shall become effective upon the Effective Date of the Plan and shall remain and continue in full force and effect until dissolved.

5.2   Dissolution of the ERS Trust.  The Trustee and the ERS Trust shall be discharged or dissolved, as the case may be, when all distributions required to be made by the Trustee under the Plan and this Trust Agreement have been made.

5.3   Continuance of ERS Trust for Winding Up.  After the dissolution of the ERS Trust and solely for the purpose of the ERS and winding up the affairs of the ERS Trust, the Trustee shall continue to act as such until its duties have been fully performed.  Upon purchase of the ERS Private Equity Portfolio as provided in Article IV hereof, the Trustee shall retain the books, records and files that shall have been delivered to or created by the Trustee.  At the Trustee's discretion, all of such records and documents may be destroyed at any time following the date that is six (6) years after the final distribution of proceeds from the sale of the ERS Private Equity Portfolio or the ERS Trust Interests, as the case may be, subject to any joint prosecution and common interests agreement(s) to which the Trustee may be party.

**ARTICLE VI**

**ADMINISTRATION OF ERS TRUST**

6.1   Payment of Expenses and Liabilities.  Except as otherwise provided herein, the Trustee shall use the Administrative Funding (i) to pay reasonable costs and expenses of the ERS Trust that are incurred (including any Taxes imposed on the ERS Trust, the actual reasonable out-of-pocket fees and expenses incurred by Trust Professionals in connection with the administration and sale of the ERS Private Equity Portfolio, as provided in Section 8.5 hereof, and the preservation of books and records of the ERS Trust), (ii) to satisfy other obligations or other liabilities incurred or assumed by the ERS Trust (or to which the ERS Private Equity Portfolio are otherwise subject) in accordance with the Plan, the ERS Stipulation, the Confirmation Order or

14

this Trust Agreement, including fees and costs incurred in connection with the protection, preservation, sale and distribution of the ERS Private Equity Portfolio and the costs of investigating, prosecuting, resolving and/or settling any Claims, (iii) as reasonably necessary to meet contingent liabilities and to maintain the value of the ERS Private Equity Portfolio during liquidation, and (iv) to satisfy any other obligations of the ERS Trust expressly set forth in the Plan, the ERS Stipulation, this Trust Agreement, and the Confirmation Order.   Under no circumstances shall the Trustee use any amounts of the Administrative Funding to settle capital calls associated with the ERS Private Equity Portfolio.

      6.2    <u>Distributions</u>.

      (a)    <u>Payment of Distributions</u>.  The Trustee shall distribute the proceeds from the sale of the ERS Private Equity Portfolio or ERS Trust Interests, as the case may be, arising from the Commonwealth Election, the Beneficiary Election, or the Commonwealth's mandatory purchase in accordance with <u>Article IV</u> hereof to the ERS Trust Beneficiaries (or their designees), without set off or deduction for taxes; provided, however, that, for purposes of distribution, calculations shall be based upon the amount of Net Allowed ERS Bond Claims.  Each ERS Trust Beneficiary's share of the ERS Trust Interests as determined pursuant to the Plan (including any Cash to be received on account of any ERS Trust Interests) shall be allocated and distributed in accordance with the terms and provisions of Article LXIX of the Plan.

      (b)    <u>De Minimis Distributions</u>.  No Cash payment shall be made to any holder of a ERS Trust Interest until such time, if ever, as the amount payable thereto, in any distribution from the ERS Trust, is equal to or greater than Ten Dollars ($10.00).  Any holder of an ERS Trust Interest on account of which the amount of Cash to be distributed pursuant to any distribution from the ERS Trust is less than Ten Dollars ($10.00) shall be deemed to have no claim for such distribution against the Debtors, the Reorganized Debtors, the ERS Trust or the ERS Private Equity Portfolio.  Any Cash not distributed pursuant to this <u>Section 6.2</u> shall be the property of the ERS Trust free of any restrictions thereon, and shall be available for distribution to the other ERS Trust Beneficiaries, in accordance with the Plan, the ERS Stipulation, and this Trust Agreement; <u>provided</u>, <u>however</u>, that, in connection with dissolution of the ERS Trust, any amounts remaining and not distributed to ERS Trust Beneficiaries shall be distributed to the Commonwealth.

      6.3    <u>Undeliverable Distributions</u>.  For purposes of this Trust Agreement, an "undeliverable" distribution shall include a check that is sent to a holder in respect of a distribution to such holder, which check has not been negotiated within [six (6) months] following the date on which such check was issued.  If any distribution to the holder of an ERS Trust Interest is undeliverable, no further distribution shall be made to such holder unless and until the Trustee (or its duly authorized agent) is notified, in writing, of such holder's then-current address. Undeliverable distributions shall remain in the possession of the Trustee (or its duly authorized agent) until such time as a distribution becomes deliverable or as set forth in <u>Section 6.4</u> hereof. All Persons ultimately receiving an undeliverable distribution shall not be entitled to any interest or other accruals of any kind on account of the delay in payment resulting from the undeliverable

status of such distribution.  Except as required by law, the Trustee (or its duly authorized agent) shall not be required to attempt to locate any holder of an ERS Trust Interest.

6.4     <u>Compliance with Laws</u>. Any and all distributions of the ERS Private Equity Portfolio shall be in compliance with applicable laws, including applicable federal and state tax and securities laws.

6.5     <u>Fiscal Year</u>.  Except for the first and last years of the ERS Trust, the fiscal year of the ERS Trust shall be the calendar year.  For the first and last years of the ERS Trust, the fiscal year of the ERS Trust shall be such portion of the calendar year that the ERS Trust is in existence.

6.6     <u>Books and Records</u>.  The Trustee shall retain and preserve the Debtors' books, records and files that shall have been delivered to or created by the Trustee.  Subject to the terms and provisions of <u>Section 5.3</u> hereof, the Trustee shall maintain, in respect of the ERS Trust and the ERS Trust Beneficiaries and all others to receive distributions under this Trust Agreement, books and records relating to the assets and the income of the ERS Trust and the payment of expenses of, liabilities of, and claims against or assumed by, the ERS Trust and the Trustee, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof in accordance with the provisions of this Trust Agreement and applicable provisions of law, including applicable tax, securities and other federal and state laws.  Except as otherwise provided herein or in the Plan, nothing in this Trust Agreement requires the Trustee to file any accounting or seek approval of any court with respect to the administration of the ERS Trust, or as a condition for making any payment or distribution out of the ERS Trust Assets.  ERS Trust Beneficiaries shall have the right upon thirty (30) days' prior written notice delivered to the Trustee to inspect such books and records; <u>provided</u>, <u>however</u>, that, if so requested, all costs associated with such inspection shall be paid in advance by such requesting ERS Trust Beneficiary and such ERS Trust Beneficiary shall have entered into a confidentiality agreement reasonably satisfactory in form and substance to the Trustee.

6.7     <u>Cash Payments</u>.  All distributions required to be made by the Trustee to the ERS Trust Beneficiaries shall be made in Cash denominated in United States dollars by checks drawn on a domestic bank selected by the Trustee or, at the option of the Trustee, by wire transfer from a domestic bank selected by the Trustee or as otherwise required or provided in applicable agreements; <u>provided</u>, <u>however</u>, that Cash payments to foreign holders of ERS Trust Interests may be made, at the option of the Trustee, in such funds as and by such means as are necessary or customary in a particular foreign jurisdiction.

6.8     <u>Insurance</u>.  The ERS Trust shall maintain customary insurance coverage for the protection of the Trustee, employees and any such other persons serving as administrators and overseers of the ERS Trust on and after the Effective Date.  The Trustee also may obtain insurance coverage it deems necessary and appropriate with respect to real and personal property which may become ERS Private Equity Portfolio, if any.

6.9     <u>Disputes</u>.  To the extent a dispute arises between the Trustee concerning the performance of any of the powers, duties, and/or obligations herein, the Trustee may file a motion and/or other pleadings with the Title III Court and obtain advice and guidance or such other relief as may be appropriate concerning a resolution of the matter(s) in dispute between the parties.  In

the event of a dispute, the Trustee shall have the right to engage legal counsel to advise it with respect to the matter(s) in dispute and the reasonable fees and expenses of such legal counsel shall be reimbursed by the Trustee from the Administrative Funding or, in the event the Administrative Funding has been spent, any other unrestricted Cash in the ERS Trust, subject to Section 8.12 hereof.

6.10    Reports.

(a)    From the Effective Date up to, but not including, the sale of the ERS Private Equity Portfolio in accordance with the terms and provisions of Article IV hereof, the Commonwealth shall provide quarterly portfolio summaries to the Trustee and to holders of Allowed ERS Bond Claims that execute and deliver a non-disclosure agreement.  Any information provided in such quarterly reports shall not be subject to public disclosure, except as may be required by law.

(b)    The Trustee shall timely prepare, file and distribute such additional statements, reports and submissions as may be necessary to cause the ERS Trust and the Trustee to be in compliance with applicable law.

(c)    Until such time as the ERS Trust is dissolved in accordance with this Agreement, the Trustee shall file with (or furnish to, as the case may be) the SEC such periodic reports as the ERS Trust is required to file pursuant to the Exchange Act.  In addition, until the Title III cases are closed, the ERS Trust shall file Post-Confirmation Quarterly Summary Reports for each of the Title III cases with the Title III Court and, thereafter, and until such time as the ERS Trust is dissolved in accordance with this Agreement, the ERS Trust shall file with (or furnish to, as the case may be) the SEC or otherwise make available to the ERS Trust Beneficiaries quarterly reports that are substantially similar to such Post-Confirmation Quarterly Summary Reports.

## ARTICLE VII

## TAX MATTERS

7.1    ERS Private Equity Portfolio Treated as Owned by ERS.  For all United States federal income tax purposes, all parties (including the Debtors, the Reorganized Debtors, the Trustee, and the ERS Trust Beneficiaries) shall treat the ERS as the owner of the ERS Private Equity Portfolio and the ERS Trust.  No items of taxable income, gain, loss or deduction attributable to the ERS Private Equity Portfolio or the ERS Trust, as the case may be, shall be allocated to the ERS Trust Beneficiaries. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

7.2    Tax Reporting.

(a)    The Trustee shall file tax returns for the ERS Trust treating the ERS Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Article VII.  The Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the ERS Trust that is required by any governmental unit.

17

(b)      Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Trustee), the Trustee shall (i) timely elect to treat any of the ERS Trust as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties (including the Trustee, the Debtors, and the ERS Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(c)      The Trustee shall be responsible for payment, out of the ERS Private Equity Portfolio, of any taxes imposed on the ERS Trust or its asset.

7.3      <u>Tax Withholdings by Trustee</u>.  The Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or distribution to the ERS Trust Beneficiaries.  All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed to such holders of ERS Trust Beneficiaries for all purposes of the Trust Agreement.  The Trustee shall be authorized to collect such tax information from the ERS Trust Beneficiaries (including social security numbers or other tax identification numbers) as in its sole discretion the Trustee deems necessary to effectuate the Plan, the Confirmation Order, and the ERS Trust Agreement.  In order to receive distributions, all ERS Trust Beneficiaries shall be required to identify themselves to the Trustee and provide tax information and the specifics of their holdings, to the extent the Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Trustee for these purposes.  This identification requirement generally applies to all ERS Trust Beneficiaries, including those who hold their Claims in "street name." The Trustee may refuse to make a distribution to any ERS Trust Beneficiary that fails to furnish such information in a timely fashion, and until such information is delivered may treat such ERS Trust Beneficiary's interests as disputed; <u>provided</u>, <u>however</u>, that, upon the delivery of such information by an ERS Trust Beneficiary, the Trustee shall make such distribution to which the ERS Trust Beneficiary is entitled, without additional interest occasioned by such beneficiary's delay in providing tax information; and, <u>provided</u>, <u>further</u>, that, if such information is not furnished to the Trustee within six (6) months of the original request to furnish such information, no further distributions shall be made to such ERS Trust Beneficiary; and, <u>provided</u>, <u>further</u>, <u>however</u>, that, if the Trustee fails to withhold in respect of amounts received or distributable with respect to any such beneficiary and the Trustee is later held liable for the amount of such withholding, such beneficiary shall reimburse the Trustee for such liability (to the extent such amounts were actually distributed to such beneficiary).

7.4      If the Trustee, acting in its reasonable discretion, determines that the Trust is not eligible to be characterized as a grantor trust, including as a result of a change in law or administrative guidance, the Trustee shall be authorized to take such actions to characterize the Trust as a partnership for U.S. federal, state, and local tax purposes that the Trustee determines are reasonably necessary, including the preparation of any forms and elections, establishment of capital accounts in accordance with the rules of Treasury Regulations Section 1.704 1(b)(2)(iv), and revisions to this Trust Agreement, and any related fees and expenses associated therewith

(including reasonable legal and accounting expenses) shall be a cost of the Trust. The Trust shall not elect to be treated as an association taxable as a corporation under Section 301.7701-3(a) of the Treasury Regulations for federal income tax purposes.

## ARTICLE VIII

## THE TRUSTEE

8.1   <u>Trustee</u>.

(a)      Subject to the terms and provisions of <u>Article IX</u> hereof, the Trustee shall hold office until the termination of the ERS Trust in accordance with the terms set forth herein. References herein to the Trustee shall refer to the Person or Persons serving as the Trustee solely in its or their capacity as trustees hereunder.

(b)      Subject to the express limitations set forth herein, any actions of the Trustee contemplated by this Trust Agreement shall be decided and conducted by the Trustee only.

8.2   <u>Powers of the Trustee</u>.

(a)      Pursuant to the terms of the Plan, the Confirmation Order and this Trust Agreement, the Trustee shall have various powers, duties and responsibilities concerning the prosecution of certain litigation claims, the disposition of assets, the resolution of claims, and numerous other obligations relating to the administration of the ERS Trust.

(b)      The Trustee shall have only such rights, powers and privileges expressly set forth in the Confirmation Order, the Plan, the ERS Stipulation and this Trust Agreement and as otherwise provided by applicable law.  Subject to the Confirmation Order, the Plan, the ERS Stipulation and the provisions of this Trust Agreement, including the oversight and approvals by and of the Title III Court provided herein, the Trustee shall be expressly authorized to undertake the following actions (and, except with respect to <u>Section 8.2(b)(vi)</u> hereof, to delegate such authority to such representatives or agents of the Trustee as the Trustee may nominate from time to time):

(i)      to open bank accounts, and to hold, manage, convert to Cash, and distribute the ERS Private Equity Portfolio;

(ii)      to hold the ERS Private Equity Portfolio for the benefit of the ERS Trust Beneficiaries, whether their interests are Allowed on or after the Effective Date;

(iii)      to timely notify the Commonwealth of all capital calls related to the ERS Private Equity Portfolio;

(iv)      to monitor and enforce the implementation of the Plan;

(v)      to file all tax and regulatory forms, returns, reports, and other documents required with respect to the ERS Trust;

(vi)     to take all actions and create any document necessary to implement the Plan;

(vii)    to hold, manage, and distribute Cash or non-Cash ERS Private Equity Portfolio interests obtained through the exercise of its power and authority; and

(viii)   to act as a signatory to the Debtors solely with the respect to the ERS Private Equity Portfolio.

(c)     In all circumstances, the Trustee shall comply with applicable law and shall otherwise act in the best interest of all ERS Trust Beneficiaries, and the Trustee shall act in furtherance of the purpose of the ERS Trust.

(d)     Except as otherwise provided in this Trust Agreement, the Trustee will not be required to obtain the order or approval of the Title III Court, or any other court of competent jurisdiction in, or account to the Title III Court or any other court of competent jurisdiction for, the exercise of any right, power or privilege conferred hereunder.  Notwithstanding the foregoing, where the Trustee determines, in its reasonable discretion, that it is necessary, appropriate or desirable, the Trustee will have the right to submit to the Title III Court any question or questions regarding any specific action proposed to be taken by the Trustee with respect to this Trust Agreement, the ERS Trust, or the ERS Private Equity Portfolio, including the administration and distribution of the ERS Private Equity Portfolio and the termination of the ERS Trust.  Pursuant to the Plan, the Title III Court has retained jurisdiction for such purposes and may approve or disapprove any such proposed action upon motion by the Trustee.

8.3     <u>Limitations on Trustee</u>.  The Trustee shall, on behalf of the ERS Trust, hold the ERS Trust out as a trust in the process of liquidation and not as an investment company.  The Trustee shall be restricted to holding the ERS Private Equity Portfolio on behalf, and for the benefit, of the ERS Trust Beneficiaries and the distribution and application of proceeds from the sale of the ERS Private Equity Portfolio or ERS Trust Interests, as the case may be, for the purposes set forth in, and the conservation and protection of the ERS Private Equity Portfolio and the administration thereof in accordance with, the provisions of this Trust Agreement, the ERS Stipulation, the Plan and the Confirmation Order.

8.4     <u>Actions Taken on a Day Other Than A Business Day</u>.  In the event that any payment or act under the Plan or this Trust Agreement is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.5     <u>Agents, Employees and Professionals</u>.

(a)     The ERS Trust may, but shall not be required to, from time to time enter into contracts with, consult with and retain Trust Professionals, on such terms as the Trustee deems appropriate. None of the professionals that represented parties-in-interest in the Title III Cases shall be precluded from being engaged by the Trustee solely on account of their service as a professional for such parties-in-interest prior to the Effective Date.

(b)     After the Effective Date, Trust Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Trustee, including in such invoices a description of the work performed, who performed such work, and if billing on an hourly basis, the hourly rate of such person, plus an itemized statement of expenses.  Subject to the approval of the Trustee, the Trustee shall pay such invoices thirty (30) days after such invoices are approved  In the event of any dispute concerning the entitlement to, or the reasonableness of any compensation and/or expenses of any Trust Professionals, either the Trustee or the affected party may ask the Title III Court to resolve the dispute.

(c)     All payments to Trust Professionals shall be paid out of the Administrative Funding or, if all of the Administrative Funding has been spent, any unrestricted Cash remaining in the Segregated Account.

8.6     <u>Investment of ERS Trust Monies</u>. All monies and other assets received by the Trustee as ERS Trust Assets (including the proceeds thereof as a result of investment in accordance with this <u>Section 8.6)</u> shall, until distributed or paid over as herein provided, be held in trust for the benefit of the ERS Trust Beneficiaries, in the Segregated Account, unless and to the extent required by the Plan.  The Trustee shall promptly invest any such monies (including any earnings thereon or proceeds thereof) as permitted by section 345 of the Bankruptcy Code, in the manner set forth in this <u>Section 8.6</u>, but shall otherwise be under no liability for interest or income on any monies received by the ERS Trust hereunder and held for distribution or payment to the ERS Trust Beneficiaries, except as such interest shall actually be received.  Investment of any monies held by the ERS Trust shall be administered in accordance with the general duties and obligations hereunder.  The right and power of the Trustee to invest the ERS Trust Assets, the proceeds thereof, or any income earned by the ERS Trust, shall be limited to the right and power to:  (a) invest such ERS Trust Assets (pending distributions in accordance with the Plan or this Trust Agreement) in Permissible Investments, or (b) deposit such assets in demand deposits at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000.

8.7     <u>Termination</u>.  The duties, responsibilities and powers of the Trustee shall terminate on the date the ERS Trust is wound up and dissolved in accordance with New York law pursuant to <u>Section 5.2</u> hereof; <u>provided</u>, <u>however</u>, that the duties, responsibilities and powers set forth in <u>Sections 8.8</u>, <u>8.9</u>, and <u>8.10</u> hereof shall survive such termination, dissolution and entry.

8.8     <u>Liability to Third Persons</u>.  No ERS Trust Beneficiary shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any Person in connection with the ERS Trust Assets or the affairs of the Trustee, except to the extent of the ERS Trust Beneficiary's fraud, gross negligence, or willful misconduct.  The Trustee and the Trust Professionals shall not be subject to any personal liability whatsoever, in tort, contract or otherwise, to any Person (including, in the case of the Trustee to any Trust Professionals retained by the Trustee in accordance with this Trust Agreement) in connection with the ERS Trust Assets or the affairs of the ERS Trust (except to the extent of the Trustee's or Trust Professional's fraud, gross negligence, or willful misconduct) and shall not be liable with respect to any action taken or omitted to be taken in good faith, and all such persons shall look solely to the ERS Trust Assets for satisfaction of claims of any nature arising in connection with affairs of the ERS Trust.  Other than as set forth in the Plan, the ERS Stipulation or in the Confirmation Order, nothing in this <u>Section 8.8</u> shall be

deemed to release any ERS Trust Beneficiary from any actions or omissions occurring prior to the Effective Date.

      8.9    <u>Nonliability of Trustee for Acts of Others</u>.  Except as provided herein, nothing contained in this Trust Agreement, the ERS Stipulation, the Plan or the Confirmation Order shall be deemed to be an assumption by the Trustee or the Trust Professionals of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by the Trustee to assume or accept any such liability, obligation or duty.  Any successor Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Trustee hereunder, and any statement or representation made as to the assets comprising the ERS Trust Assets or as to any other fact bearing upon the prior administration of the ERS Trust, so long as it has a good faith basis to do so.  The Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue.  The Trustee or any successor Trustee shall not be liable for any act or omission of any predecessor Trustee nor have a duty to enforce any claims against any predecessor Trustee on account of any such act or omission.  No provision of this Trust Agreement shall require the Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of its rights or powers hereunder if the Trustee has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to the Trustee.

      8.10    <u>Exculpation</u>.  As of the Effective Date, the Trustee and the Trust Professionals shall be and hereby are exculpated by all Persons, including ERS Trust Beneficiaries, holders of Claims and other parties-in-interest, from any and all claims, causes of action and other assertions of liability arising out of or related to the discharge of their respective powers and duties conferred by the Plan, this Trust Agreement, the ERS Stipulation or any order of the Title III Court entered pursuant to or in furtherance of the Plan, or applicable law or otherwise, except for actions or omissions to act that are determined by final order of the Title III Court to have arisen out of their own respective intentional fraud, criminal conduct, gross negligence or willful misconduct.  No ERS Trust Beneficiary, holder of a Claim or other party-in-interest shall have or be permitted to pursue any claim or cause of action against the Trustee, the ERS Trust, the employees, professionals or representatives of either the Trustee or the ERS Trust (including the Trust Professionals), for making payments in accordance with, or for implementing, the provisions of the Plan, the ERS Stipulation, the Confirmation Order and this Trust Agreement.  Any action taken or omitted to be taken with the express approval of the Title III Court shall conclusively be deemed not to constitute gross negligence or willful misconduct.

      8.11    <u>Limitation of Liability</u>.  The Trustees and the Trust Professionals will not be liable for punitive, exemplary, consequential, special or other damages for a breach of this Trust Agreement under any circumstances, except to the extent of the Trustees' or Trust Professionals' fraud, gross negligence, or willful misconduct.

      8.12    <u>Indemnity</u>.  Each Indemnified Party shall not be liable to the ERS Trust Beneficiaries for actions taken or omitted in their capacity as, or on behalf of the Trustee, except those acts arising out of their own willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement by the ERS Trust for fees and expenses in defending any and all actions or inactions in their capacity as, or on behalf of the Trustee, except for any actions

or inactions involving willful misconduct or gross negligence. Any indemnification claim of the Trustee and the other parties entitled to indemnification under this subsection shall be satisfied solely from the ERS Trust Assets and shall be entitled to a priority distribution therefrom, ahead of the ERS Trust Interests and any other claim to or interest in such assets. The Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.  The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.

8.13    <u>Compensation and Expenses</u>.

(a)    The Trustee (including the Person(s) serving as or comprising the Trustee) shall receive compensation for its services, to be paid out of the Administrative Funding.  In addition, the Trustee shall be entitled, subject to the approval of the Title III Court, to reimburse itself from the Administrative Funding on a monthly basis for all reasonable out-of-pocket expenses actually incurred in the performance of duties in accordance with this Trust Agreement and the Plan.

(b)    The annual compensation of the Trustee shall be [●].

## ARTICLE IX

## <u>SUCCESSOR ERS TRUSTEES</u>

9.1    <u>Resignation</u>.  The Trustee may resign from the ERS Trust by giving at least sixty (60) days' prior written notice thereof to the ERS Trust Beneficiaries.  Such resignation shall become effective on the later to occur of (a) the date specified in such written notice and (b) the effective date of the appointment of a successor Trustee in accordance with <u>Section 9.4</u> hereof and such successor's acceptance of such appointment in accordance with <u>Section 9.5</u> hereof.

9.2    <u>Removal</u>.  The Trustee may be removed by a majority vote of the ERS Trust Beneficiaries.  Such removal shall become effective on the date specified in such action.

9.3    <u>Effect of Resignation or Removal</u>.  The resignation, removal, incompetency, bankruptcy or insolvency of the Trustee shall not operate to terminate the ERS Trust or to revoke any existing agency created pursuant to the terms of this Trust Agreement, the Plan or the Confirmation Order or invalidate any action theretofore taken by the Trustee.  All fees and expenses properly incurred by the Trustee prior to the resignation, incompetency or removal of the Trustee shall be paid from the ERS Trust Assets, unless such fees and expenses are disputed by the successor Trustee, in which case the Title III Court shall resolve the dispute and any disputed fees and expenses of the predecessor Trustee that are subsequently allowed by the Title III Court shall be paid from the ERS Trust Assets.  In the event of the resignation or removal of the Trustee, such Trustee shall:  (i) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Trustee or directed by the Title III Court to effect the termination of such Trustee's capacity under this Trust Agreement; (ii) promptly deliver to the successor Trustee all documents, instruments, records and other writings related to the ERS Trust as may be in the possession of such Trustee; and (iii) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Trustee.

9.4     Appointment of Successor.   In the event of the death, resignation, removal, incompetency, bankruptcy or insolvency of the Trustee, a vacancy shall be deemed to exist and a successor shall be appointed by a majority of ERS Trust Beneficiaries; provided, however, that, under no circumstance, shall the successor Trustee be a director or officer of any Affiliate of the ERS Trust.  In the event that a successor Trustee is not appointed within thirty (30) days after the date of such vacancy, the Title III Court, upon its own motion or the motion of an ERS Trust Beneficiary, shall appoint a successor Trustee.

9.5     Acceptance of Appointment by Successor Trustee.   Any successor Trustee appointed hereunder shall execute an instrument accepting its appointment and shall deliver one counterpart thereof to the Title III Court for filing and to the ERS Trust Beneficiaries and, in case of the Trustee's resignation, to the resigning Trustee.  Thereupon, such successor Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges of its predecessor in the ERS Trust with like effect as if originally named Trustee and shall be deemed appointed pursuant to Bankruptcy Code section 1123(b)(3)(B).  The resigning or removed Trustee shall duly assign, transfer and deliver to such successor Trustee all property and money held by such resigning or removed Trustee hereunder and shall, as directed by the Bankruptcy Court or reasonably requested by such successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee upon the trusts herein expressed, all the liabilities, duties, powers, rights, title, discretion and privileges of such resigning or removed Trustee.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1     Governing Law.  This Trust Agreement shall be governed by the laws of the State of New York applicable to agreements made in and to be performed wholly within such jurisdiction, and the laws of the laws of the State of New York, without giving effect to principles of conflicts of laws, shall apply to any action or proceeding arising under this Agreement; provided, however, that the authorization of this Trust Agreement by Commonwealth shall be governed by the laws of the Commonwealth.

10.2     Jurisdiction.  Subject to the proviso below, the parties agree that the Title III Court shall have exclusive jurisdiction over the ERS Trust and the Trustee, including the administration and activities of the ERS Trust and the Trustee, and, pursuant to the Plan, the Title III Court has retained such jurisdiction; provided, however, that notwithstanding the foregoing, the Trustee shall have power and authority to bring any action in any court of competent jurisdiction (including the Title III Court) to prosecute any causes of action assigned to the ERS Trust.

10.3     Severability.  In the event any provision of this Trust Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Trust Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Trust Agreement shall be valid and enforceable to the full extent permitted by law.

10.4   <u>Notices</u>.   Any notice or other communication required or permitted to be made under this Trust Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally, sent by email, facsimile transmission, nationally recognized overnight delivery service or mailed by first-class mail:

(i)     if to the Trustee, to:

[●]

with a copy to:

[●]

(ii)     if to any ERS Trust Beneficiary, to the last known address of such ERS Trust Beneficiary according to the Debtors' Schedules, such ERS Trust Beneficiary's proof of claim or the lists of record holders provided to the Trustee; and

(iii)     if to the Debtors:

The Commonwealth of Puerto Rico
c/o Fiscal Agency and Financial Advisory Authority
Roberto Sánchez Vilella (Minillas) Government Center
De Diego Ave. Stop 22
San Juan, Puerto Rico 00907
Attn: Office of the Executive Director

and

The Employees Retirement System of the Government of the Commonwealth of Puerto Rico
PO Box 42003
San Juan, PR 00940-2203
Attn: Cecile Tirado Soto

with a copy to:

O'Melveny & Myers LLP
Seven Times Square
New York, NY 10036
Attn:   John Rapisardi, Esq.
        Peter Friedman, Esq.
        Maria J. DiConza, Esq.
Tel: (212) 326-2000
Fax: (212) 326-2061

and

Proskauer Rose LLP

Eleven Times Square
New York, NY 10036
Attn:   Martin J. Bienenstock, Esq.
         Brian S. Rosen, Esq.
Tel: (212) 969-3000
Fax: (212) 969-2900

10.5    Headings.   The headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

10.6    Relationship to the Plan.   The terms of this Trust Agreement are intended to supplement the terms provided by the Plan, the ERS Stipulation, and the Confirmation Order, and therefore this Trust Agreement incorporates the provisions of the Plan, the ERS Stipulation, and the Confirmation Order (which may amend or supplement the Plan).   Additionally, the Trustee may seek any orders from the Title III Court, upon notice and a hearing in furtherance of implementation of the Plan, the ERS Stipulation, the Confirmation Order and this Trust Agreement.   However, to the extent that there is conflict between the provisions of this Trust Agreement, the provisions of the Plan, the ERS Stipulation or the Confirmation Order, each document shall have controlling effect in the following rank order:  (a) *first*, this Trust Agreement, (b) *second*, the Confirmation Order, (c) *third*, the Plan, and (d) *forth*, the ERS Stipulation.

10.7    Entire Trust Agreement.   This Trust Agreement (including the recitals and annex hereto), the Plan and the Confirmation Order constitute the entire agreement and understanding by and among the parties and supersede all prior and contemporaneous agreements or understandings by and among the parties with respect to the subject matter hereof.

10.8    Cooperation.   The Debtors shall turn over or otherwise provide a copy to the Trustee at no cost to the ERS Trust or the Trustee, all books and records reasonably required by the Trustee to carry out its duties hereunder, and agree to otherwise reasonably cooperate with the Trustee in carrying out its duties hereunder, subject to the confidentiality provisions herein to preserve the confidential nature of the Debtors' books and records.

10.9    Amendment and Waiver.   Any provision of this Trust Agreement may be amended or waived by the Trustee.   Notwithstanding this Section 10.9, any amendment to this Trust Agreement shall not be inconsistent with the purpose and intention of the ERS Trust.

10.10   Confidentiality.   The Trustee and its employees, members, agents, professionals and advisors, including the Trust Professionals shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any Debtor to which any of the ERS Private Equity Portfolio relates; provided, however, that such information may be disclosed if:  (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties; or (b) such disclosure is required of the Confidential Parties pursuant to legal process, including to subpoena or other court order or other applicable laws or regulations. In the event that any Confidential Party is requested to divulge confidential information pursuant to this clause (b), such Confidential Party shall promptly, in advance of making such disclosure,

provide reasonable notice of such required disclosure to the Trustee to allow sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Trustee in making any such objection, including appearing in any judicial or administrative proceeding in support of any objection to such disclosure. The Trustee shall not disclose any non-public information to any ERS Trust Beneficiary unless and until such ERS Trust Beneficiary has executed a non-disclosure agreement relating to such information.

10.11   <u>Rules of Construction</u>.  Except where the context otherwise may require, (a) words of any gender include the other gender, and (b) words importing the singular number shall include the plural number and *vice versa*.   All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Trust Agreement.  The terms "hereof", "hereto", "herein" and words of similar import refer to this Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Trust Agreement.  The terms "include", "includes" and "including" shall be construed as if followed by the words "without limitation".

10.12   <u>Counterparts</u>.  This Trust Agreement may be executed with counterpart signature pages or in any number of counterparts, each of which counterparts shall be deemed an original, but all such counterparts shall together constitute but one and the same instrument.  A facsimile, portable document file (PDF) or other electronic transmission signature of any party shall be considered to have the same binding legal effect as an original signature.

[Remainder of Page Blank — Signature Page Follows]

**IN WITNESS WHEREOF**, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO


By: /s/_____

     Name:  Natalie Jaresko
     Title:   Executive Director


THE COMMONWEALTH OF PUERTO RICO


By: /s/_____

     Name:
     Title:

EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF
PUERTO RICO


By: /s/_____

     Name:
     Title:


[●]


By: /s/_____

     Name:
     Title:

**Annex A**

[CUSIP info]