## **EXHIBIT I**

Syncora Custodial Trust Documents

**DRAFT 10/11/2021**

[[NAME OF SERIES] SYNCORA CUSTODIAL TRUST]

TRUST AGREEMENT[1]

among

Estado Libre Asociado de Puerto Rico, whose name in English is COMMONWEALTH OF PUERTO RICO, as Depositor [and]

[Autoridad de Edificios Publicós de Puerto Rico, whose name in English is PUERTO RICO PUBLIC BUILDINGS AUTHORITY, as Depositor],

SYNCORA GUARANTEE INC,

[],
as Trustee

and

[],
as Delaware Trustee

DATED AS OF

[●]

---

[1] All provisions of this Trust Agreement remain subject to ongoing review and revision by Synora Guarantee Inc.

## TABLE OF CONTENTS

Page

SECTION 1.    STANDARD TERMS ................................................................................... 1

SECTION 2.    DEFINED TERMS ..................................................................................... 1

SECTION 3.    ORGANIZATION OF TRUST ................................................................... 2

SECTION 4.    NOTIONAL AMOUNT ............................................................................. 3

SECTION 5.    FORMS OF TRUST UNITS ...................................................................... 3

SECTION 6.    SCHEDULES ............................................................................................ 3

SECTION 7.    PATRIOT ACT .......................................................................................... 3

SECTION 8.    GOVERNING LAW; VENUE; JURY WAIVER ....................................... 3

SECTION 9.    FORCE MAJEURE ................................................................................... 4

SECTION 10.   INTENT OF PARTIES ............................................................................. 4

SECTION 11.   NON-PETITION ........................................................................................ 7

SECTION 12.   CERTAIN TERMS REGARDING THE DEPOSITOR[S] ........................... 7

TRUST AGREEMENT

THIS TRUST AGREEMENT, dated as of [●] (this "Agreement"), is hereby executed by and among Estado Libre Asociado de Puerto Rico, whose name in English is COMMONWEALTH OF PUERTO RICO (the "Commonwealth" [or the "Depositor"]) [and] [Autoridad de Edificios Publicós de Puerto Rico, whose name in English is PUERTO RICO PUBLIC BUILDINGS AUTHORITY ("PBA", and together with the Commonwealth, the "Depositors")], and SYNCORA GUARANTEE INC. ("Syncora"), [], a [national banking association], as trustee (the "Trustee") and [], [a national banking association,] as Delaware trustee (the "Delaware Trustee", and together with the Trustee, the "Trustees") under this Agreement and the Standard Terms to Trust Agreement, dated as of [●] (the "Standard Terms"), all the provisions of which are incorporated herein and shall be a part of this Agreement as if set forth herein in full (this Agreement with the Standard Terms so incorporated, the "Trust Agreement").

PRELIMINARY STATEMENT

The parties are entering into the Trust Agreement for purposes of forming the [Name of Series] Syncora Custodial Trust, a Delaware statutory trust (the "Trust"). In furtherance of the structure approved in the Commonwealth Plan and in order to facilitate the implementation thereof, the Trust is being established by the Depositor[s] and the Trustees solely for the benefit of and on behalf of the applicable Syncora Legacy Bondholders holding Syncora Legacy Bonds CUSIP [] that elected, or are deemed to have elected, Syncora Non-Commutation Consideration pursuant to the terms and provisions of the Commonwealth Plan. Except for the establishment of the Trust and the deposit therein pursuant to the Commonwealth Plan at the election (or deemed election) of the applicable Syncora Legacy Bondholders, the Depositor[s] shall have no other rights or obligations with respect to the Trust or with respect to any securities payable from the assets thereof. The Trustees shall file a Certificate of Trust of the Trust with the Office of the Secretary of State of the State of Delaware on the date hereof. The Trust shall issue beneficial ownership interests consisting of trust units to be known as the "Trust Units" and each holder of a Trust Unit, a "Trust Unit Holder" or "Holder".

**Section 1.**     **Standard Terms**.

The Trustees acknowledge that the Standard Terms prescribe certain obligations of the Trustees with respect to the Trust and the Trust Units. The Trustees agree to observe and perform such prescribed duties, responsibilities and obligations, and acknowledge that the Standard Terms (including without limitation, the rights, protections, indemnities and immunities afforded to the Trustees thereunder) are and shall be a part of this Agreement to the same extent as if set forth herein in full.

**Section 2.**     **Defined Terms**.

With respect to the Trust Units and in addition to the definitions set forth in the Standard Terms, the following provisions shall govern the defined terms set forth below. To the extent the meanings assigned to the defined terms set forth below are inconsistent with the meanings assigned to such terms in the Standard Terms, the meanings assigned herein shall control. Capitalized terms

used herein but not defined herein or in the Standard Terms shall have the meanings ascribed to them in the Commonwealth Plan.

"**Bankruptcy Code**": The Bankruptcy Reform Act of 1978, as amended from time to time, and as codified as 11 U.S.C. Section 101 et seq.

"**Delaware Trust Statute**": Chapter 38 of Title 12 of the Delaware Code, 12 Del. Code § 3801 *et seq.,* as the same may be amended from time to time.

"**Delaware Trustee**": [], not in its individual capacity but solely in its capacity as Delaware Trustee hereunder, its successor in interest or any successor Delaware Trustee appointed as herein provided.

"**Maturity Date**": [●], the original maturity date of the relevant Syncora Legacy Bonds (prior to acceleration).

"**Trustee**": [], in its capacity as Trustee hereunder, its successor in interest or any successor trustee appointed as herein provided.

"**Trustees**": The Delaware Trustee and the Trustee.

"**U.S.A. PATRIOT Act**": The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Title III of Pub. L. 107 56 (signed into law October 26, 2001) and its implementing regulations.

**Section 3.      Organization of Trust**.

The Trust is being created on the date hereof pursuant to the execution of this Agreement and the filing by the Trustees of a Certificate of Trust of the Trust (the "Certificate of Trust") with the Office of the Secretary of State of the State of Delaware (the "Secretary of State"), under the name "[[Name of Series] Syncora Custodial Trust]" in which name the Trust shall have power and authority and is hereby authorized and empowered, without the need for further action on the part of the Trust, and the Trustee shall have power and authority, and is hereby authorized and empowered, to conduct the activities of the Trust. It is the intention of the parties hereto that the Trust hereby created constitutes a statutory trust under the Delaware Trust Statute and that the Trust Agreement (including the Standard Terms) constitutes the governing instrument of the Trust. Notwithstanding any other provision of this Agreement to the contrary, the Trustees are hereby authorized and directed to, and shall, on the date hereof, execute and file the Certificate of Trust with the Secretary of State in the form attached as Exhibit B hereto. The Trustee shall have power and authority, and is hereby authorized and empowered to take all actions on behalf of the Trust as set forth in the Trust Agreement and each of the Trustees is authorized and empowered to execute and file with the Secretary of State any other certificate required or permitted under the Delaware Trust Statute to be filed with the Secretary of State. The office of the Trust shall be in the care of the Trustee at the Corporate Trust Office or at such other address as the Trustee may designate by written notice to the Trust Unit Holders and Syncora.

**Section 4.**     **Notional Amount**.

(a) The aggregate Notional Amount of the Trust Units that may be executed and delivered under this Agreement is limited to the Acceleration Price as of the Effective Date of the Syncora Legacy Bonds deposited into the Trust.

**Section 5.**     **Forms of Trust Units**.

The Trust Units shall be substantially in the form attached as Exhibit A hereto. Each Trust Unit shall be issued in global form.

**Section 6.**     **Schedules**.

Schedule I is attached hereto and incorporated herein by reference as contemplated herein or by the Standard Terms.

**Section 7.**     **Patriot Act**.

The parties hereto acknowledge that in accordance with Section 326 of the U.S.A. PATRIOT Act, the Trustees, like all financial institutions and in order to help fight the funding of terrorism and money laundering, are required to obtain, verify, and record information that identifies each person or legal entity that establishes a relationship or opens an account with the Trustees. The parties to this Trust Agreement agree that they will provide the Trustees with such information as they may request in order for the Trustees to satisfy the requirements of the U.S.A. PATRIOT Act.

**Section 8.**     **Governing Law; Venue; Jury Waiver**.

THIS AGREEMENT, THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT, AND ANY CLAIM OR CONTROVERSY DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT OF, OR LEADING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR ANY OTHER THEORY), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY OR PERFORMANCE, SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS. EACH PARTY HERETO HEREBY WAIVES THE RIGHT IT MAY HAVE TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, OR (B) IN ANY WAY IN CONNECTION WITH OR PERTAINING TO OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES WITH RESPECT TO THIS AGREEMENT OR IN CONNECTION WITH THIS AGREEMENT OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS AGREEMENT OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT, TORT OR

OTHERWISE.   EACH OF THE PARTIES IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY FEDERAL OR STATE COURTS SITTING IN THE STATE OF DELAWARE IN RESPECT OF ANY ACTION OR PROCEEDING ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.   EACH PARTY TO THIS AGREEMENT IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH PROCEEDINGS IN ANY SUCH COURT AND ANY CLAIM THAT ANY PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

**Section 9.**     <u>**Force Majeure**</u>.

In no event shall the Trustees be responsible or liable for any failure or delay in the performance of its obligations hereunder arising out of or caused by, directly or indirectly, forces beyond its control, including, without limitation, strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software and hardware) services; it being understood that the Trustee shall use reasonable efforts which are consistent with accepted practices in the banking industry to resume performance as soon as practicable under the circumstances.

**Section 10.**     <u>**Intent of Parties**</u>.

(a) The parties hereto intend that, for all purposes, the transfer to the Trust of the Trust Estate shall be, and shall be construed as, a transfer of such Trust Estate on behalf of the applicable Syncora Legacy Bondholders in lieu of a transfer of such assets to the Trust directly by the applicable Syncora Legacy Bondholders and shall constitute, in all respects, an absolute, irrevocable transfer, conveyance, and assignment, without recourse, of the Trust Estate to the Trust, and immediately after giving effect to the transfer contemplated hereby on the Effective Date, the Depositor[s] will have no further interest (legal or equitable) in the Trust Estate and the Trust Estate will not be property of the Depositor[s] or of the [Depositor's estate] [Depositors' respective estates] in the event of a liquidation, reorganization, or similar proceeding of the Depositor[s] and the Trust shall have the absolute right to take whatever action it may deem appropriate with respect to the Trust Estate.   The parties agree to treat the transfer contemplated hereby for all purposes (including financial accounting purposes) as an absolute transfer on all relevant books, records, financial statements and other documents.

(b) The Trust Estate will be held by the Trust free and clear of any lien or encumbrance of any Person claiming through or under the Depositor[s].

(c) Notwithstanding anything to the contrary in the Trust Agreement or in any other document governing the formation, management, or operation of the Trust, if and for so long as any Trust Unit remains outstanding, none of the Trust Unit Holders, Syncora, the Trustees, nor any other Person shall authorize, cause or permit the Trust to (and the Trust shall not and neither Trustee shall directly take any action that to its actual knowledge would constitute any of the following):

4

(i)      engage in any business or engage in any activity other than those activities expressly permitted under <u>Section 2.03</u> of the Standard Terms and will not have, incur, guarantee or become liable for any indebtedness or obligations except as expressly contemplated in the Trust Agreement;

(ii)     acquire or own any assets other than the Trust Estate or lease (as lessor) any assets;

(iii)    fail to preserve its existence as an entity duly formed, validly existing and in good standing (if applicable) under the laws of the State of Delaware, or fail to remain qualified to do business in each state in which such qualification is required, for any reason, including, but not limited to, in order to perform its obligations under the Trust Agreement;

(iv)     fail to observe at any time any necessary, appropriate and customary corporate, organizational, company and/or other legal formalities to maintain its separate existence;

(v)      fail to act solely in its own name or in the name of the Trustee on behalf of the Trust through duly authorized agents in the conduct of its activities;

(vi)     provide for the payment of its expenses, indebtedness or other obligations other than from its own separate assets;

(vii)    have its debts or other obligations guaranteed by any other person or hold itself out as responsible for the debts or other obligations of any other Person;

(viii)   commingle its assets or liabilities with those of any other Person;

(ix)     fail to maintain its own records, books of account, bank accounts, accounting records and other entity documents separate and apart from those of any other Person;

(x)      divert funds for any purpose other than as set forth in the Trust Agreement;

(xi)     enter into any contract, agreement or transaction with any Trust Unit Holders, the Depositor[s], Syncora, principal or other affiliate of the Trust, or any shareholder, general partner, member, principal or affiliate thereof, except as expressly authorized in the Trust Agreement;

(xii)    maintain its assets in such a manner that it will be costly or difficult to segregate, ascertain or identify its individual assets from those of any other Person;

(xiii)   incur, create or assume any indebtedness of or buy or hold evidence of indebtedness issued by any other Person (other than as contemplated by the Trust Agreement); guarantee or hold itself out to be responsible for the debts of another Person or otherwise pledge its assets to secure the obligations of any other Person, or hold out its credit or assets as being available to satisfy the obligations of any other Person or seek to incur, create or assume any indebtedness based upon the assets of any other Person;

(xiv)   perform any duties or obligations of the Depositor[s] or any other Person;

(xv)   make any loans or advances to any third party, including, without limitation, any Trust Unit Holder, Depositor or Affiliate of the Trust, or any principal or Affiliate thereof;

(xvi)   fail to file its own tax returns as and if required to do so by applicable law (subject to any permitted extensions and except to the extent the Trust is treated as a grantor trust for tax purposes) and to pay any taxes required to be paid by it under applicable law;

(xvii)   fail to hold itself out to the public as a legal entity separate and distinct from any other Person, fail to conduct its activities solely in its own name or in the name of the Trustee and as a separate and distinct entity, or fail to correct any known misunderstanding regarding its separate identity;

(xviii)   identify itself as a department or division of any other Person;

(xix)   fail to observe all formalities required of a Delaware statutory trust;

(xx)   fail to pay its expenses and liabilities only out of its own funds to the extent such funds are available and fail to hold its assets only in its own name; provided, however, the foregoing shall not require the Depositor[s] to sell any assets, or make any capital contribution, to the Trust;

(xxi)   conduct any oral or written communication, including, without limitation, letters, invoices, purchase orders, contracts, statements and applications, other than in its own name or in the name of the Trustee on behalf of the Trust;

(xxii)   (a) institute proceedings to have the Trust declared or adjudicated a bankrupt or insolvent, (b) consent to the institution of bankruptcy or insolvency proceedings against the Trust, (c) file a petition or consent to a petition seeking reorganization or relief on behalf of the Trust under any applicable federal or state law relating to bankruptcy, (d) consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or any similar official) of the Trust or a substantial portion of the property of the Trust, (e) make any assignment for the benefit of the Trust's creditors, (f) cause the Trust to admit in writing its inability to pay its debts generally as they become due or (g) take any action, or cause the Trust to take any action, in furtherance of any of the foregoing;

(xxiii)   supplement, modify, amend, restate, replace, waive or repeal this Section 10 or Sections [2.03, 2.04, 9.01 or 9.03] of the Standard Terms, or the definitions used in such Sections, in each case except for any supplement, modification, amendment or restatement of any such provision that (x) corrects any error and (y) would not (individually or together with other changes) be reasonably likely to cause the Trust to no longer be a "special purpose entity" in accordance with applicable law and standards; or

(xxiv) supplement, modify, amend, restate, replace, waive or repeal any portion of this Trust Agreement or the Standard Terms except as expressly permitted by <u>Section 9.01</u> of the Standard Terms.

(d) Failure of the Trust, the Depositor[s], Syncora, any Trust Unit Holder, any Trustee or any other Person on behalf of the Trust, to comply with any of the foregoing covenants set forth in this <u>Section 10</u> shall not affect the status of the Trust as a separate legal entity (unless in violation of the Delaware Trust Statute) nor cause the Trust to dissolve or terminate.

(e) To the extent that any provision of this <u>Section 10</u> conflicts with, violates or otherwise is in contravention with any other provision of the Trust Agreement or the Standard Terms, the parties hereto and each Trust Unit Holder agree that the terms set forth in this <u>Section 10</u> shall be controlling as expressly set forth herein.

**Section 11.     <u>Non-Petition</u>**. The Depositor[s], Syncora, the Trustee and the Delaware Trustee, by entering into this Agreement, and the Trust Unit Holders, by electing (or being deemed to elect) Syncora Commutation Consideration, hereby covenant and agree that they will not at any time institute against the Trust, or join in instituting against the Trust, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any federal or state bankruptcy or similar law; provided, however, that in the event a bankruptcy or similar proceeding is instituted against the Trust by another person, the Trustee may file appropriate proofs of claim. For the avoidance of doubt, no adequate remedy at law exists with respect to any breach this Section 11, and specific performance shall in all circumstances be available as a remedy for the enforcement of this Section 11.

**Section 12.     <u>Certain Terms Regarding the Depositor[s]</u>**. For the avoidance of doubt and notwithstanding any terms appearing herein or elsewhere to the contrary:

(i)      The obligations of the Trust under the Trust Units and this Trust Agreement are non-recourse obligations of the Trust payable solely from the Trust Estate, and following realization of the Trust Estate, and its reduction to zero, any claims of the Holders of the Trust Units shall be extinguished. The Trust Units are not obligations of, and are not guaranteed by, the Depositor[s], and no recourse shall be had against any Officer, director, manager, employee, security holder or incorporator of the Depositor[s], or its successors or assigns, for the payment of any amounts payable under the Trust Units or the payment or performance of any obligation of the Trust under or pursuant to this Trust Agreement.

(ii)      The recitals contained in this Trust Agreement and in the Trust Units, shall be taken as the statements of the Trust, and the Depositor[s] assume[s] no responsibility for their correctness. The Depositor[s] make[s] no representation as to the validity or sufficiency of this Trust Agreement, of the Trust, or of the Trust Units.

(iii)      In purchasing any Trust Units in certificated form, the purchaser shall be required to acknowledge, represent to and agree, and in purchasing any Book-Entry Beneficial Interests in the Trust Units the purchaser shall be deemed to acknowledge, represent and agree, that none of the Depositor[s] nor any of [its] [their] affiliates, is acting

7

as a fiduciary or a financial or investment advisor for such purchaser, and such purchaser is not relying (for purposes of making any investment decision or otherwise) upon any advice, representations or recommendations (in each case whether written or oral) of the Depositor[s] or any of [its] [their] affiliates.

(iv)     The Depositor[s] shall not be accountable for the use or application by the Trust of the Trust Units or the proceeds thereof or any amounts paid to the Trust pursuant to the provisions of this Trust Agreement.

**IN WITNESS WHEREOF**, the Depositor[s], Syncora, the Trustee and the Delaware Trustee have caused this Agreement to be duly executed by their respective officers thereunto duly authorized and all as of the date first set forth above.

**COMMONWEALTH OF PUERTO RICO,**
As Depositor

By: _____
Name: _____
Its: _____

[**PUERTO RICO PUBLIC BUILDINGS AUTHORITY,**
As Depositor

By: _____
Name: _____
Its: _____]

**SYNCORA GUARANTEE INC.**
By: _____
Name: _____
Its: _____

[],
As Delaware Trustee

By: _____
Name: _____
Its: _____

[],
As Trustee

By: _____
Name: _____
Its: _____

**<u>SCHEDULE I</u>**

## **<u>EXHIBIT A</u>**

FORM OF TRUST UNIT CERTIFICATE

## **EXHIBIT B**

FORM OF CERTIFICATE OF TRUST OF
[NAME OF SERIES] SYNCORA CUSTODIAL TRUST

# **EXHIBIT C**

FORM OF TRUSTEE CERTIFICATION - UNDERLYING INSURED SECURITY

## **EXHIBIT D**

PAYMENT SCHEDULE FOR SYNCORA LEGACY BONDS CUSIP []

**STANDARD TERMS**

**TO**

**TRUST AGREEMENT**[1]

Estado Libre Asociado de Puerto Rico, whose name in English is COMONWEALTH
OF PUERTO RICO, as Depositor,

Autoridad de Edificios Publicós de Puerto Rico, whose name in English is PUERTO
RICO PUBLIC BUILDINGS AUTHORITY, as Depositor,

SYNCORA GUARANTEE INC.,

[],
as Trustee,

and

[],
as Delaware Trustee,

Custodial Trust Units

Dated as of [●]

---

[1] All provisions of these Standard Terms to Trust Agreement remain subject to ongoing review and revision
by Syncora Guarantee Inc.

# TABLE OF CONTENTS

**Page**

RECITALS ..................................................................................................... 1

STANDARD PROVISIONS ............................................................................ 1

ARTICLE I  DEFINITIONS ............................................................................ 1
    Section 1.01.    Defined Terms. .................................................................. 1
    Section 1.02.    Other Definitional Provisions. ......................................... 9

ARTICLE II  TRUST ESTATE ....................................................................... 9
    Section 2.01.    Trust Assets. ..................................................................... 9
    Section 2.02.    Acceptance by the Trustee. ............................................ 11
    Section 2.03.    Purpose, Activities of the Trust. .................................... 11
    Section 2.04.    Limitations of the Trust. ................................................ 12
    Section 2.05.    Voting Rights. ................................................................. 13

ARTICLE III  ADMINISTRATION OF THE TRUST ................................. 13
    Section 3.01.    Accounts. ........................................................................ 13
    Section 3.02.    Distributions;  Prior to Maturity  Date or in Connection  with
                              Syncora Advancement Option. ..................................... 14
    Section 3.03.    Syncora Advancement Option. ...................................... 15
    Section 3.04.    Reserved. ........................................................................ 15
    Section 3.05.    Adjustments to Principal and Interest Amounts. ........... 17
    Section 3.06.    Payments on Syncora Insurance Policies; Prior to Maturity
                              Date. ............................................................................... 18
    Section 3.07.    Reserved. ........................................................................ 18
    Section 3.08.    Payments on Syncora Insurance Policies; Maturity Date. ............ 19

ARTICLE IV  REPORTING/REMITTING ................................................... 21
    Section 4.01.    Reports to Syncora and Trust Unit Holders. ................. 21
    Section 4.02.    Compliance with Withholding Requirements. ............... 21

ARTICLE V  TRUST UNITS .......................................................................... 21
    Section 5.01.    The Trust Units. .............................................................. 21
    Section 5.02.    Book-Entry Trust Units. ................................................. 22
    Section 5.03.    Registration of and Limitation  on Transfers and Exchanges
                              of Units. .......................................................................... 23
    Section 5.04.    No Obligation to Register. .............................................. 23
    Section 5.05.    Mutilated, Destroyed, Lost or Stolen Units. .................. 24
    Section 5.06.    Persons Deemed Owners. ............................................... 24
    Section 5.07.    Appointment of Trust Unit Paying Agent. ..................... 24

i

## TABLE OF CONTENTS
### (continued)

Page

ARTICLE VI  CONCERNING THE TRUSTEE............................................................ 25
    Section 6.01.    Duties of Trustee.................................................... 25
    Section 6.02.    Certain Matters Affecting the Trustee. ...................... 26
    Section 6.03.    Trustee Not Liable for Trust Units or Securities. ........ 28
    Section 6.04.    Trustee May Own Units. ....................................... 29
    Section 6.05.    Trustee's Fees and Expenses. .................................. 29
    Section 6.06.    Eligibility  Requirements for Trustee, Successor Trustee,
        and Trust Unit Paying Agent. .............................. 30
    Section 6.07.    Resignation and Removal of the Trustee. ................... 30
    Section 6.08.    Successor Trustee.................................................. 31
    Section 6.09.    Merger or Consolidation of Trustee. .......................... 32
    Section 6.10.    Reserved............................................................ 32
    Section 6.11.    Appointment of Custodians. .................................... 32
    Section 6.12.    Trustee May Enforce Claims Without Possession of Trust
        Units................................................................ 32
    Section 6.13.    Trustee Indemnity ................................................ 33

ARTICLE VII  TERMINATION OF TRUST............................................................ 33
    Section 7.01.    Termination; No Redemption Rights........................... 33
    Section 7.02.    Procedure for Termination. ...................................... 33

ARTICLE VIII  TAX PROVISIONS....................................................................... 34
    Section 8.01.    Grantor Trust Provisions. ........................................ 34
    Section 8.02.    Characterization. ................................................... 35
    Section 8.03.    Grantor Trust Administration.................................... 35
    Section 8.04.    Reports to Trust Unit Holders and Tax Authorities ....... 35

ARTICLE IX  MISCELLANEOUS PROVISIONS ..................................................... 37
    Section 9.01.    Amendment of Trust Agreement................................ 37
    Section 9.02.    Counterparts. ....................................................... 38
    Section 9.03.    Limitation on Rights of Trust Unit Holders. ................ 38
    Section 9.04.    Notices. .............................................................. 39
    Section 9.05.    Severability of Provisions........................................ 40
    Section 9.06.    Third-Party Beneficiaries. ....................................... 40
    Section 9.07.    Acts of Trust Unit Holders. ..................................... 40
    Section 9.08.    Headings.............................................................. 41
    Section 9.09.    No Waiver; Cumulative Remedies. ............................ 41
    Section 9.10.    Merger and Integration. .......................................... 41
    Section 9.11.    The Delaware Trustee ............................................ 41

## RECITALS

Estado Libre Asociado de Puerto Rico, whose name in English is COMMONWEALTH OF PUERTO RICO (the "Commonwealth"), Autoridad de Edificios Publicós de Puerto Rico, whose name in English is PUERTO RICO PUBLIC BUILDINGS AUTHORITY ("PBA", and together with the Commonwealth, the "Depositors"), and SYNCORA GUARANTEE INC. ( "Syncora") have entered into a Trust Agreement (the "Trust Agreement") with [], [a national banking association], as trustee (the "Trustee") and [], [a national banking association], as Delaware trustee (the "Delaware Trustee" and together with the Trustee, the "Trustees"), which Trust Agreement provides for the issuance of trust units ("Trust Units"), each evidencing a beneficial ownership interest in the property owned by the Trust created by the Trust Agreement. These Standard Terms are a part of, and are incorporated by reference into, the Trust Agreement.

## STANDARD PROVISIONS

NOW, THEREFORE, in consideration of the mutual promises, covenants, representations and warranties made in the Trust Agreement, the Depositors, Syncora and the Trustees agree as follows:

## ARTICLE I

## DEFINITIONS

### Section 1.01. *Defined Terms*.

Except as otherwise specified herein or in the Trust Agreement or as the context may otherwise require, whenever used herein, the following words and phrases shall have the meanings specified in this Article. Capitalized words and phrases used herein but not defined herein shall, when applied to a Trust, have the meanings set forth in or pursuant to the Trust Agreement.

"**Acceleration Price**": With respect to an Syncora Legacy Bond, an amount equal to the outstanding principal amount of such bond plus the accrued and unpaid interest thereon.

"**Adverse Trust Event**": has the meaning set forth in <u>Section 8.03</u> hereof.

"**Affiliate**": Any person or entity controlling, controlled by or under common control with the Depositor, Syncora or the Trustee, as the context may require. "Control" means the power to direct the management and policies of a person or entity, directly or indirectly, whether through ownership of voting securities, by contract or otherwise. "Controlling" and "controlled" shall have meanings correlative to the foregoing.

"**Beneficial Owner**": With respect to any Trust Unit, the Person who is registered as owner of that Trust Unit in the books of the Depository for that Trust Unit or in the books of a Depository Participant, or in the books of an indirect participant for which a Depository Participant acts as agent.

1

"**Bond Documents**": The bond resolutions, indentures, trust agreements, or similar agreements pursuant to which (i) the Syncora Legacy Bonds, (ii) the New GO Bonds, and (iii) the GO CVIs were issued.

"**Bonds**": Collectively, (i) the GO Bonds, (ii) the PBA Bonds, and (iii) the New GO Bonds.

"**Business Day**": Any day that is not a Saturday, Sunday, holiday, or other day on which commercial banking institutions in the City of New York, the city of San Juan, Puerto Rico or the State of Delaware or, if different, the city and state in which the Corporate Trust Office is located are authorized or obligated by law or executive order to be closed.

"**Cash Account**": As defined in Section 3.01(c) hereof.

"**Code**": The Internal Revenue Code of 1986, as amended.

"**Commonwealth Plan**": The Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al., Case No. 17-03284-LTS, ECF No. 17627, including as amended or superseded, but in all events solely to the extent in form and substance reasonably satisfactory to Syncora and otherwise consistent with the Commonwealth PSA.

"**Commonwealth Plan Cash Distributions**": Any cash distributions allocable to Syncora Legacy Bondholders on account of Syncora Legacy Bonds under the Commonwealth Plan, but, for the avoidance of doubt, excluding any Consummation Costs and PSA Restriction Fees payable to Syncora, each as defined in the Commonwealth Plan.

"**Commonwealth PSA**": That certain Amended and Restated Plan Support agreement, dated as of July 12, 2021, by and among (a) the Financial Oversight and Management Board for Puerto Rico and (b) Syncora, solely in its capacity as an insurer, and asserted holder, deemed holder, or subrogee with respect to GO Bonds and PBA Bonds, among other parties, including as amended or superseded, but in all events only to the extent Syncora remains a party thereto.

"**Confirmation Order**": The order of the United States District Court for the District of Puerto Rico confirming the Commonwealth Plan in accordance with Section 314(b) of PROMESA and section 1129 of the Bankruptcy Code.

"**Corporate Trust Office**": The principal corporate trust office of the Trustee at which at any particular time its corporate trust business shall be administered.

"**Custodian**": The Trustee or the agent for the Trustee which shall hold all or a portion of the Trust Estate, or documents relating thereto, with respect to a specific Trust.

"**CVI Account**": As defined in Section 3.01(d) hereof.

"**Depository**": The Depository Trust Company, or any successor organization or any other organization registered as a "clearing agency" pursuant to Section 17A of the Exchange Act and the regulations of the SEC thereunder.

2

"**Depository Participant**": A broker, dealer, bank, other financial institution or other Person for whom from time to time a Depository effects book-entry transfers and pledges of securities deposited with the Depository.

"**Distribution**": Any distribution to Trust Unit Holders made pursuant to Section 3.02.

"**Effective Date**": The effective date of the Commonwealth Plan.

"**EMMA**:" The Electronic Municipal Market Access system operated by the Municipal Securities Rulemaking Board, or, if not available for the purposes provided herein, a website specified by the Trustee. Any obligation to post a document to EMMA shall be understood as an obligation to post such document under the CUSIP for each Trust Unit to which such document relates.

"**Extraordinary Expenses**": As defined in Section 6.05(b) hereof.

"**Fee Agreement**": An agreement dated as of the date hereof providing for the Trustees' recovery from or reimbursement by the Trust of certain reasonable compensation, certain reasonable expenses, costs, and disbursements, and certain Extraordinary Expenses.

"**GO CVI**": As defined in the Commonwealth Plan.

"**GO Bonds**": As defined in the Commonwealth Plan.

"**GO Payments**": Payments received by the Trustee on account of GO CVI or GO Bonds.

"**Grantor Trust Provisions**": Subpart E of Subchapter J of Chapter 1 of the Code and Section 7701 of the Code, and final Treasury Regulations, published rulings, notices and announcement, promulgated thereunder, as the foregoing may be in effect from time to time.

"**Insurance Policy Account**": As defined in Section 3.01(e) hereof.

"**Insured Amount**": As of any date, the accrued and unpaid interest on, and outstanding principal amount of, such Legacy Syncora Bond as of such date.

"**Maturity Date**": As defined in the Trust Agreement.

"**Maturity Notice**": As defined in Section 3.08(a) hereof.

"**Maturity Shortfall**": As defined in Section 3.08(b) hereof.

"**New GO Bonds**": As defined in the Commonwealth Plan, and including the Taxable New GO Bonds and Tax-Exempt New GO Bonds.

"**New Securities**": Collectively, the New GO Bonds and the GO CVIs.

"**Notice of Nonpayment**": As defined in Section 3.08(b) hereof.

3

"**Notional Amount**": The amount of Trust Units issued as provided in the Trust Agreement.

"**Officer**": When used with respect to the Trustees, any senior vice president, any vice president, any assistant vice president, any assistant treasurer, any trust officer, any assistant secretary in the Corporate Trust Office of the Trustees, or any other officer of the Trustees customarily performing functions similar to those performed by the persons who at the time shall be such officers, and also to whom with respect to a particular corporate trust matter such matter is referred because of such officer's knowledge of and familiarity with the particular subject. With respect to any other Person, the chairman of the board, the president, a vice president (however designated), the treasurer or controller.

"**Opinion of Counsel**": A written opinion of either (a) nationally recognized counsel who is reasonably acceptable to the parties to whom it is delivered, or (b) internal counsel to Syncora or any of its Affiliates.

"**Original Scheduled Interest Payment Date**": With respect to a Legacy Syncora Bond, a date, other than the Maturity Date, on which a scheduled payment of interest is due in respect of such Legacy Syncora Bond in accordance with the terms of the applicable Syncora Insurance Policy.

"**Original Scheduled Payment Date**": An Original Scheduled Interest Payment Date or Original Scheduled Principal Payment Date, as applicable, and as set forth at Exhibit D to the applicable Trust Agreement.

"**Original Scheduled Principal Payment Date**": With respect to a Legacy Syncora Bond, a date, other than the Maturity Date, on which a scheduled payment of principal is due in respect of such Legacy Syncora Bond in accordance with the terms of the applicable Syncora Insurance Policy.

"**Paying Agent**": The paying agent for the GO Bonds.

"**Person**": Any individual, corporation, partnership, joint venture, association, joint stock company, trust (including any beneficiary thereof), unincorporated organization or government or any agency, instrumentality, or political subdivision thereof.

"**PBA Bonds**": As defined in the Commonwealth Plan.

"**PBA Fiscal Agent**": The fiscal agent for the PBA Bonds.

"**PROMESA**": The Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. No. 114-187, 130 Stat. 549 (2016), 48 U.S.C. §2101, et. seq.

"**pro rata**": Unless otherwise stated, any pro rata payment or distribution made to, or any pro rata allocation of any cost or expense borne by, (i) Holders of Trust Units for a particular Syncora Legacy Bonds CUSIP shall be calculated based on the Notional Amount of Trust Units issued with respect to such Syncora Legacy Bonds CUSIP, and (ii) all Holders of

4

Trust Units without regard to Syncora Legacy Bonds CUSIP shall be calculated based on the outstanding principal amount of the Syncora Legacy Bonds underlying such Trust Units.

"**Reorganized Debtors**": As defined in the Commonwealth Plan.

"**Requisite Trust Unit Holders**": With respect to any Trust, Holders of a majority (measured by outstanding principal amount), of Trust Units.

"**SEC**": The Securities and Exchange Commission.

"**Secondary Market Syncora Legacy Bonds**": The Syncora Legacy Bonds that are insured through Syncora Insurance Policies issued in the secondary market.

"**Securities**": Collectively, the Syncora Legacy Bonds and the New Securities.

"**Securities Act**": The Securities Act of 1933, as amended.

"**Shortfall**": As defined in Section 3.06(b) hereof.

"**Standard Terms**": These Standard Terms, as amended or supplemented, incorporated by reference into the Trust Agreement.

"**Syncora Acceleration Option**": Syncora's right, in accordance with the terms of the Syncora Insurance Policies and Section 75.3(c) of the Commonwealth Plan, to elect to discharge its payment obligations with respect to any Syncora Legacy Bonds CUSIP prior to the stated Maturity Date thereof by paying the applicable Acceleration Price to the holders thereof.

"**Syncora Advancement Option**": Either (a) the Syncora Acceleration Option or (b) the rights assigned by the Commonwealth or PBA to Syncora pursuant to Section 75.3(d) of the Commonwealth Plan to redeem and call the Syncora Insured Bonds and any related rights such that such rights may be exercised instead and exclusively by Syncora as if it were the Commonwealth or PBA for such purpose, such that any amounts due in connection with such redemption shall be equal to the lesser of the applicable redemption price and the Acceleration Price.

"**Syncora Non-Commutation Treatment**": As defined in the Commonwealth Plan.

"**Syncora Deferred Expenses**": Any Trustee Costs or Trust expenses paid in cash to the Trustee or the Trust by Syncora.

"**Syncora Insurance Policies**": The insurance policies, including insurance policies issued in the secondary market, pursuant to which Syncora insured payments of principal and interest with respect to the Syncora Legacy Bonds.

"**Syncora Insured Bonds**": As defined in the Commonwealth Plan.

5

"**Syncora Insurer Event**": A default by Syncora on its payment obligations under an applicable Syncora Insurance Policy, which default is continuing.

"**Syncora Legacy Bondholder**": The beneficial holder of an Syncora Legacy Bond.

"**Syncora Legacy Bond**": Any Syncora Insured Bond the beneficial holder of which has validly elected, or is deemed to have elected, Syncora Non-Commutation Treatment .

"**Syncora Legacy Bonds CUSIP**": Any maturity of Syncora Legacy Bonds that bears a unique CUSIP such that such maturity of Syncora Legacy Bonds is separately identifiable from other maturities of Syncora Legacy Bonds with unique CUSIPs.

"**Syncora Legacy Bonds Distribution**": The New GO Bonds, [the Commonwealth Plan Cash Distributions], the GO CVIs, and any other property allocable to Syncora Legacy Bondholders in their capacity as such under the Commonwealth Plan, but excluding (A) New GO Bonds, [Commonwealth Plan Cash Distributions], GO CVIs, and other property allocable to holders of Syncora Insured Bonds other than Syncora Legacy Bonds under the Commonwealth Plan, (B) New GO Bonds, [Commonwealth Plan Cash Distributions], GO CVIs, and other property allocable to Syncora as a beneficial owner of GO Bonds or PBA Bonds under the Commonwealth Plan, or (C) any other consideration that Syncora is entitled to receive in accordance with the terms of the Commonwealth Plan (including, without limitation, Consummation Costs and PSA Restriction Fees, each as defined in the Commonwealth Plan).

"**Syncora Reimbursement Amount**": An amount sufficient to reimburse Syncora for all payments made by Syncora under an Syncora Insurance Policy for a particular Syncora Legacy Bonds CUSIP, and payment of which to Syncora shall be a requirement of the Unit Exchange Election.

"**Tax Costs**": As defined in Section 8.04(c) hereof.

"**Taxable Bond Account**": As defined in Section 3.01(b) hereof.

"**Taxable New GO Bonds**": New GO Bonds that are not initially issued as tax-exempt bonds (if any).

"**Tax-Exempt Bond Account**": As defined in Section 3.01(a) hereof.

"**Tax-Exempt New GO Bonds**": New GO Bonds that are tax-exempt bonds.

"**Termination Notice**": As defined in Section 7.02 hereof.

"**Treasury Regulations**": Regulations, including proposed or temporary regulations, promulgated under the Code. References herein to specific provisions of regulations, including proposed or temporary regulations shall include analogous provisions of final Treasury Regulations as well as any successor or replacement Treasury Regulations.

"**Trust**": With respect to each Syncora Legacy Bonds CUSIP, the separate trust formed pursuant to the applicable Trust Agreement.

"**Trust Assets**": With respect to each Trust that is formed for the benefit of the beneficial holders of an Syncora Legacy Bonds CUSIP; (i) such Syncora Legacy Bonds CUSIP (including the related rights under the applicable Syncora Insurance Policy, or in the case of Secondary Market Syncora Legacy Bonds, the custody receipts evidencing a beneficial ownership interest in such Secondary Market Syncora Legacy Bonds and the related rights under the applicable Syncora Insurance Policy); (ii) the pro rata share of each asset comprising the Syncora Legacy Bonds Distribution that is allocable to beneficial holders of such Syncora Legacy Bonds CUSIP based on the Acceleration Price of such Syncora Legacy Bonds CUSIP as of the Effective Date and the Acceleration Price of all Syncora Legacy Bonds as of the Effective Date; (iii) any other property that Syncora may determine, in its sole discretion, to deposit in the applicable Trust for the benefit of the beneficial holders of the applicable Syncora Legacy Bonds CUSIP; and (iv) any proceeds of any of the foregoing.

"**Trust Unit Holder**" or "**Holder**": As applicable, (i) a Beneficial Owner of a Trust Unit, or (ii) Syncora, to the extent Syncora has been subrogated to the rights of a Beneficial Owner of a Trust Unit Holder.

"**Trust Unit Paying Agent**": The paying agent appointed pursuant to Section 5.07 hereof.

"**Trustee Costs**": As defined in Section 6.05(a) hereof.

"**Trust Estate**": Collectively, and with respect to any Trust, (a) the Trust Assets deposited and held in such Trust for the benefit of the beneficial holders of the applicable Syncora Legacy Bonds CUSIP, and (b) any other property deposited and held in such Trust for the benefit of the beneficial holders of the applicable Syncora Legacy Bonds CUSIP (if any).

"**Trust Unit**": With respect to each Trust that is formed for the benefit of the beneficial holders of an Syncora Insured Bonds CUSIP, the certificated trust unit(s) to be issued by such Trust to beneficial holders of such Syncora Insured Bonds CUSIP, as further defined in the Trust Agreement.

"**Unit Register**" and "**Unit Registrar**": The register maintained and the registrar appointed pursuant to Section 5.03 hereof.

"**U.S. Person**": A person who is a "United States person" within the meaning of Section 7701(a)(30) of the Code.

"**Voting Rights**": Any voting or control rights granted to holders of Securities.

**Section 1.02.** *Other Definitional Provisions.*

The words "hereof," "herein" and "hereunder" and words of similar import when used in these Standard Terms shall refer to these Standard Terms as a whole and not to any particular provision of these Standard Terms, and Section, subsection, Annex and Exhibit references are

to these Standard Terms unless otherwise specified.  The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.  The words "include" and "including" shall be deemed to be followed by the phrase "without limitation."   Any reference to any document in these Standard Terms shall be deemed to include any amendment, restatement, supplement or modification thereto.

# ARTICLE II

# TRUST ESTATE

**Section 2.01.** *Trust Assets.*

Pursuant to and in accordance with the Trust Agreement and the Commonwealth Plan, upon the Effective Date:

(a)      The Depositors shall, on behalf of each of the Syncora Legacy Bondholders holding a particular Syncora Legacy Bonds CUSIP, deposit the New GO Bonds allocable to such Syncora Legacy Bonds CUSIP into the Trust for that Syncora Legacy Bonds CUSIP.  The Trustee shall establish and maintain a Tax-Exempt Bond Account into which any such Tax-Exempt New GO Bonds shall be deposited, and a Taxable Bond Account into which any such Taxable New GO Bonds shall be deposited; provided, however, that the Trustee shall transfer any Taxable New GO Bonds that become Tax-Exempt New GO Bonds (if any) from the Taxable Bond Account to the Tax-Exempt Bond Account.[2]

(b)      The Depositors shall, on behalf of each of the Syncora Legacy Bondholders holding a particular Syncora Legacy Bonds CUSIP, deposit the Commonwealth

---

[2] ***Secondary Market Syncora Legacy Bonds*:** This footnote describes how the holders of Secondary Market Syncora Legacy Bonds will receive Trust Units under this Agreement and how assets distributed under the Plan on account of such ownership interests will be transferred from the custodian of the existing custodial arrangement to the Trustee under this Agreement.

This Agreement will be used to administer assets distributed under the Plan for the beneficial owners of interests in Syncora Legacy Bonds (including Secondary Market Syncora Legacy Bonds) that elect the Syncora Non-Commutation Treatment under the Plan.  By electing the Syncora Non-Commutation Treatment, each beneficial holder of custody receipts evidencing a beneficial ownership interest in the Secondary Market Syncora Legacy Bonds and the corresponding rights under the applicable Syncora Insurance Policy shall be deemed to have deposited such custody receipts into the respective Trust in exchange for Trust Units evidencing a pro rata beneficial ownership interest in the related Trust Assets, which shall include such custody receipts.

The custodian of the existing custodial arrangements will receive the distributions contemplated by the Plan on account of the existing custody receipts and will transfer those new assets and the applicable existing insurance policies to the Trustee of the newly created Trusts as part of the Trustee (as the holder of all such custody receipts) and Syncora collapsing the existing custodial arrangement.  The Trustee will then deposit those new assets and existing insurance policies into the appropriate Trust accounts described herein (and will hold the extinguished legacy bonds in its own account).  The Trustee will then receive payments and administer distributions in connection with the Trust Assets in accordance with this Agreement until the Trust is terminated.

The unique characteristics of certain of the Secondary Market Syncora Legacy Bonds and the attributes of their current custodial arrangements may require that the documentation establishing and implementing the Trusts for such interests be tailored to the specifics of such bonds/arrangements.

Plan Cash Distributions allocable to such Syncora Legacy Bonds CUSIP into the Trust for that Syncora Legacy Bonds CUSIP. The Trustee shall establish and maintain a Cash Account into which any such Commonwealth Plan Cash Distributions shall be deposited.

(c)     The Commonwealth shall, on behalf of each of the Syncora Legacy Bondholders holding a particular Syncora Legacy Bonds CUSIP, deposit the GO CVIs allocable to such Syncora Legacy Bonds CUSIP into the Trust for that Syncora Legacy Bonds CUSIP. The Trustee shall establish and maintain a CVI Account into which any such GO CVIs shall be deposited.

(d)     The Paying Agent and the PBA Fiscal Agent shall, on behalf of each of the Syncora Legacy Bondholders holding a particular Syncora Legacy Bonds CUSIP, transfer the Syncora Insurance Policy for that Syncora Legacy Bonds CUSIP and any and all agreements, documents and instruments relating to such Syncora Insurance Policy that are within their control to the Trustee, who shall be deemed to have deposited all corresponding rights of the applicable Syncora Legacy Bondholders into the applicable Trust.

(e)     The Depositors shall, on behalf of each of the Syncora Legacy Bondholders holding a particular Syncora Legacy Bonds CUSIP, transfer any and all agreements, documents and instruments relating to the Syncora Insurance Policy for that Syncora Legacy Bonds CUSIP that are within their control to the Trustee, who shall be deemed to have deposited all correspoding rights of the applicable Syncora Legacy Bondholders into the applicable Trust.

(f)     The Syncora Legacy Bondholders shall deposit their Syncora Legacy Bonds into the Trust for the applicable Syncora Legacy Bonds CUSIP, and, in the event any Syncora Legacy Bondholder fails to so deposit its Syncora Legacy Bond(s) as of the Effective Date, such Syncora Legacy Bondholder's Syncora Legacy Bond(s) shall be deemed deposited into the applicable Trust for the relevant Syncora Legacy Bonds CUSIP as of the Effective Date. The Trustee shall establish and maintain an Insurance Policy Account into which such Syncora Legacy Bonds CUSIP shall be deposited. Pursuant to Section 77.6 of the Plan, the Syncora Legacy Bonds deposited (or deemed deposited) into the Trust shall not be cancelled and all rights and remedies under the existing Syncora Legacy Bonds and the applicable Bond Documents (other than payment obligations of the Depositors and the continuation of any lien granted as security for such Syncora Legacy Bonds) shall remain in full force and effect solely to the extent necessary to preserve any claims relating to the Syncora Legacy Bonds deposited in the Trust under the applicable Syncora Insurance Policy. Such existing Syncora Legacy Bonds shall not form the basis for the assertion of any claim against the Depositors or the Reorganized Debtors. The Syncora Insurance Policies (other than as satisfied in accordance with these Standard Terms) shall be preserved and remain in full force and effect.

Section 2.02.   *Acceptance by the Trustee.*

(a)     By its execution of the Trust Agreement, the Trustee acknowledges and declares that it will hold or has agreed to hold all documents, instruments, and other property delivered to it or received by it from time to time with respect to the Trust Assets and all other assets included in the definition of Trust Estate, in each case in trust for the exclusive use and

benefit of all present and future Trust Unit Holders.  The Trustee represents and warrants that, except as expressly permitted by the Trust Agreement, (i) it has not and will not, other than in its capacity as trustee for the benefit of the Trust Unit Holders, assert any claim or interest in the Trust Estate and will hold (or its agent will hold) such Trust Estate and the proceeds thereof in trust pursuant to the terms of the Trust Agreement, and (ii) it has not encumbered or transferred, and will not encumber or transfer, its right, title or interest in the Trust Estate.

(b)      With respect to the Securities, the Trustee shall, on the Effective Date, deliver to the applicable Depositor(s) a certification substantially in the form of Exhibit [C] to the Trust Agreement certifying that it is either (i) in possession of a certificate evidencing the applicable Securities, or (ii) it has received confirmation from a depository of such Securities or a direct or indirect participant thereof that the Securities acquired by the Trust on such Effective Date are legally owned by the Trust for the benefit of the Trust Unit Holders.

(c)      Except as specifically provided herein, the Trustee shall not sell, pledge or assign any interest in the Trust Estate.

### Section 2.03.  *Purpose, Activities of the Trust.*

It is the intention of the parties hereto that the Trust shall not engage in any business or activities other than certain non-business activities in connection with, or relating to the following:

(a)      receiving, accepting, and holding in trust the Trust Estate;

(b)      creating one or more accounts or sub-accounts in accordance with the terms of the Trust Agreement (including these Standard Terms);

(c)      making claims and receiving payments under the Syncora Insurance Policies;

(d)      receiving payments pursuant to the Commonwealth Plan and the securities issued thereunder;

(e)      issuing one or more series of Trust Units to holders of Syncora Legacy Bonds in accordance with the terms of the Trust Agreement (including these Standard Terms);

(f)      making distributions to the Trust Unit Holders in accordance with the terms of the Trust Agreement (including these Standard Terms);

(g)      coordinating communications with Trust Unit Holders through the Depository;

(h)      following, accepting or acting upon any instruction or direction from Syncora or the Requisite Trust Unit Holders, as applicable, in each case only as expressly permitted in the Trust Agreement;

(i)      making public disclosures on EMMA and similar means of distribution;

10

(j)        making disclosures and sharing information with Bloomberg L.P. for disclosure on its trading platform and with other similar services; and

(k)        engaging in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto.

**Section 2.04.   *Limitations of the Trust.***

(a)        Except as otherwise provided herein, the affairs of the Trust will be managed by or under the direction of the Trustee.  None of the Depositors, the Reorganized Debtors, or Syncora, or any of their respective Affiliates will have authority to act for, or to assume any obligation or responsibility on behalf of, the Trust or the Trustee in its capacity as Trustee.

(b)        The Trust will keep correct and complete books and records of accounts and minutes of the meetings and other proceedings of the Trust.  Any resolutions, agreements and other instruments will be continuously maintained by the Trustee as official records of the Trust.

(c)        The Trust will provide for its own operating expenses and liabilities from the Trust Estate.  General overhead and administrative expenses of the Trust will not be charged or otherwise allocated to the Depositors, the Reorganized Debtors, or Syncora, or any of their respective Affiliates.

(d)        All oral and written communications, including letters, invoices, contracts, statements and applications, will be made solely in the name of the Trust if related to the Trust.

(e)        There will be no guarantees made by the Trust with respect to obligations of the Depositors, the Reorganized Debtors, or Syncora, or any of their respective Affiliates.  There will not be any indebtedness relating to borrowings or loans between the Trust, the Depositors, the Reorganized Debtors, or Syncora, or any of their respective Affiliates; underlined provided, that Syncora may own Trust Units.

(f)        The Trust will act solely in its own name, or in the Trustee's name on the Trust's behalf, and through its or the Trustee's duly authorized officers or agents in the conduct of its activities.  The Trust will not: (i) operate or purport to operate as an integrated, single economic unit with respect to the Depositors, the Reorganized Debtors, or Syncora, or any other affiliated or unaffiliated entity; (ii) seek or obtain credit or incur any obligation to any third party based upon the assets of the Depositors, the Reorganized Debtors, Syncora or any of their respective Affiliates; or (iii) induce any such third party to reasonably rely on the creditworthiness of the Depositors, the Reorganized Debtors, Syncora or any other affiliated or unaffiliated entity in its dealings with the Trust.

(g)        The Trust will maintain a Delaware Trustee with its office in the State of Delaware.

11

(h)    The Trust will not engage in any transaction with an Affiliate on any terms other than would be obtained in an arm's-length transaction with a non-Affiliate.

**Section 2.05.  *Voting Rights.***

Syncora shall be deemed the sole holder of the Voting Rights with respect to the Securities held by the Trust.

# ARTICLE III

# ADMINISTRATION OF THE TRUST

**Section 3.01.  *Accounts.***

The Trustee shall establish and maintain the following accounts for the Trust to be held in trust for the benefit of the Trust Unit Holders:

(a)    <u>Tax-Exempt Bond Account</u>. An account into which the Trustee shall deposit the Tax-Exempt New GO Bonds allocable to the applicable Syncora Legacy Bonds CUSIP (or any other securities, monies, proceeds or property received on account thereof or in exchange therefor) (the "**Tax-Exempt Bond Account**"), including any Taxable New GO Bonds that become Tax-Exempt New GO Bonds;

(b)    <u>Taxable Bond Account</u>. An account into which the Trustee shall deposit Taxable New GO Bonds allocable to the applicable Syncora Legacy Bonds CUSIP (or any other securities, monies, proceeds or property received on account thereof or in exchange therefor) (the "**Taxable Bond Account**");

(c)    <u>Cash Account</u>. An account into which the Trustee shall deposit the Commonwealth Plan Cash Distributions allocable to the applicable Syncora Legacy Bonds CUSIP (or any other securities, monies, proceeds or property received on account thereof or in exchange therefor) (the "**Cash Account**");

(d)    <u>CVI Account</u>. An account into which the Trustee shall deposit the GO CVIs allocable to the applicable Syncora Legacy Bonds CUSIP (or any other securities, monies, proceeds or property received on account thereof or in exchange therefor) (the "**CVI Account**"); and

(e)    <u>Insurance Policy Account</u>. An account into which the Trustee shall deposit the applicable Syncora Legacy Bonds CUSIP insured by the applicable Syncora Insurance Policy (or any other securities, monies, proceeds or property received on account of or in exchange therefor) (the "**Insurance Policy Account**").

**Section 3.02.  *Distributions; Prior to Maturity Date or in Connection with Syncora Advancement Option.***

(a)    <u>Tax-Exempt Distributions</u>.  Promptly following receipt thereof by the Trustee, the Trustee shall be required to and shall distribute, on a pro rata "pass-through" basis

to Trust Unit Holders, all income of the Trust, including payments of principal, interest or other cash received by the Trust on or prior to the Maturity Date, on account of the New GO Bonds deposited in the Tax-Exempt Bond Account (or on account of any other securities or property received on account thereof or in exchange therefor), net of the allocable portion of any outstanding Trustee Costs and Tax Costs as of the date of distribution.

(b)     <u>Taxable Distributions</u>.   Promptly following receipt thereof by the Trustee, the Trustee shall be required to and shall distribute, on a pro rata "pass-through" basis to Trust Unit Holders, all income of the Trust, including payments of principal, interest or other cash received by the Trust on or prior to the Maturity Date, on account of the New GO Bonds deposited in the Taxable Bond Account (or on account of any other securities or property received on account thereof or in exchange therefor), net of the allocable portion of any outstanding Trustee Costs and Tax Costs as of the date of distribution.

(c)     <u>CVI Distributions</u>.   Promptly following receipt thereof by the Trustee, the Trustee shall be required to and shall distribute, on a pro rata "pass-through" basis to Trust Unit Holders, all income of the Trust, including payments received by the Trust on or prior to the Maturity Date, on account of the GO CVIs deposited in the CVI Account (or on account of any other securities or property received on account thereof or in exchange therefor), net of the allocable portion of any outstanding Trustee Costs and Tax Costs as of the date of distribution.

(d)     <u>Insurance Policy Distributions</u>.   Promptly following receipt thereof by the Trustee, the Trustee shall, subject to <u>Section 3.06(b)</u>, be required to and shall distribute, on a pro rata "pass-through" basis to Trust Unit Holders, all income of the Trust, including payments received by the Trust on or prior to the Maturity Date, on account of the Syncora Insurance Policy insuring the Syncora Legacy Bonds CUSIP deposited in the Insurance Policy Account (or on account of any other securities or property received on account thereof or in exchange therefor), net of the allocable portion of any outstanding Trustee Costs and Tax Costs as of the date of distribution.

(e)     <u>Other Cash Distributions</u>.   Promptly following receipt thereof by the Trustee, the Trustee shall be required to and shall distribute, on a pro rata "pass-through" basis to Trust Unit Holders, all income of the Trust, including any Commonwealth Plan Cash Distributions, deposited in the Cash Account, net of of the allocable portion of any outstanding Trustee Costs and Tax Costs as of the date of distribution.

Section 3.03.   *Syncora Advancement Option.*

(a)     Syncora shall have the right to exercise the Syncora Advancement Option with ten (10) Business Days' prior written notice to the relevant Syncora Legacy Bond Holders and/or Trust Unit Holders.   Upon the exercise of any Syncora Advancement Option and the payment of the applicable Acceleration Price or redemption price with respect to any Syncora Legacy Bonds CUSIP, the Trustee shall be required to disburse such Acceleration Price or redemption price to the Trust Unit Holders of the relevant Trust as set forth in <u>Section 3.02</u> above, net of the allocable portion of any outstanding Tax Costs as of the date of distribution, and Syncora shall become fully subrogated to all of the rights of such Trust Unit

13

Holders, including, upon the termination of the relevant Trust, rights to any then remaining Trust Assets. Upon the disbursement of such Acceleration Price or redemption price to the relevant Trust Unit Holders as set forth above, the Trust Units of such Trust shall be retired, such Trust shall be terminated, and the Trustee shall deliver the remaining Trust Assets of such Trust to or at the direction of Syncora. At any time on or after the date of receipt of such Trust Assets, Syncora shall have the right to sell all or certain of the New Securities constituting part of such Trust Assets for value, including by (i) selling all or certain of the applicable Tax-Exempt New GO Bonds constituting part of such Trust Assets for value as tax-exempt bonds, (ii) selling all or certain of the Taxable New GO Bonds constituting part of such Trust Assets for value as taxable bonds, and (iii) selling all or certain of the GO CVIs constituting part of such Trust Assets.

(b)     Payment of the applicable Acceleration Price or redemption price with respect to any Syncora Insured Bond shall satisfy and discharge all of Syncora's obligations under the applicable Syncora Insurance Policy with respect to such Syncora Insured Bond.

Section 3.04. *Reserved.*

Section 3.05. *Adjustments to Principal and Interest Amounts.*

Each Distribution made on or prior to the Maturity Date to Trust Unit Holders shall result in a deemed simultaneous dollar-for-dollar reduction, first, of any accrued and unpaid interest on, and second, of the outstanding principal amount of, such Legacy Syncora Bonds. For the purposes of such reduction, any deduction from any Distribution in respect of Tax Costs and Trustee Costs shall be treated as if such amounts deducted were paid to the applicable Trust Unit Holders in cash as part of the Distribution and shall reduce the applicable accrued and unpaid interest amount, outstanding principal amount.

Section 3.06. *Payments on Syncora Insurance Policies; Prior to Maturity Date.*

(a)     Prior to the Maturity Date, after taking into account any adjustments made pursuant to Section 3.05, the Trustee shall make draws on the applicable Syncora Insurance Policy, by delivering notice to Syncora in the form of Exhibit A,[3] in order to make payment, from the Insurance Policy Account, of any accrued and unpaid interest due on an Original Scheduled Interest Payment Date or of any unpaid principal due on an Original Scheduled Principal Payment Date with respect to the relevant Syncora Legacy Bonds CUSIP as reflected on Exhibit D to the Trust Agreement. The Trustee is authorized to take all actions, and to provide all notices, necessary to draw on the Syncora Insurance Policies for such purposes, including actions that, under the applicable Syncora Insurance Policies and related agreements, would otherwise be taken by the Paying Agent or the PBA Fiscal Agent, and the Trustee shall have all powers and authority of the Paying Agent or the PBA Fiscal Agent, as applicable, for such purposes.

(b)     If the Trustee receives GO Payments, (i) after the Trustee draws on an Syncora Insurance Policy pursuant to Section 3.06(a), but (ii) prior to the Trustee using the

---

[3] [Exhibit G to reflect reductions in amounts owed as a result of ayments made or to be made by the Trust on a "pass-through" basis prior to, or contemporaneously with such notice being delivered.]

amounts drawn from the Syncora Insurance Policy to pay accrued and unpaid interest and/or unpaid principal due on that Original Scheduled Payment Date, then the Trustee shall (x) distribute and apply the GO Payments received in accordance with Sections 3.02 and 3.05, (y) only apply amounts drawn from the Syncora Insurance Policy to pay accrued and unpaid interest and/or unpaid principal to the extent the GO Payments received are insufficient (the amount of such insufficiency, the "**Shortfall**") to pay the accrued and unpaid interest and/or unpaid principal due on that Original Scheduled Payment Date such that the amounts so applied are not in excess of the Shortfall and (z) promptly return to Syncora any amounts drawn on the Syncora Insurance Policy that are in excess of such Shortfall.

**Section 3.07.   *Reserved.***

**Section 3.08.   *Payments on Syncora Insurance Policies; Maturity Date.***

Payments at Maturity Date. If, the outstanding principal amount or accrued and unpaid interest amount of the Syncora Legacy Bonds at the Maturity Date is expected to be greater than zero, no later than thirty (30) calendar days and no earlier than thirty-five (35) calendar days prior to the Maturity Date, Syncora shall direct the Trustee to deliver through the Depository a notice of maturity (the "**Maturity Notice**") in the form attached hereto as Exhibit B to all applicable Trust Unit Holders. The Maturity Notice will include (i) a statement identifying the Maturity Date and (ii) a statement regarding the right of each Trust Unit Holder to receive a Distribution (or multiple Distributions) in the aggregate amount of a pro rata share of the Insured Amount corresponding to the outstanding principal amount of, and accrued and unpaid interest on, such Syncora Legacy Bonds as of the Maturity Date, to be paid to the Trustee by Syncora and/or from the other Trust Assets. Notwithstanding anything herein to the contrary, Syncora's failure to direct the Trustee to deliver a Maturity Notice or the Trustee's or Depository's failure to deliver a Maturity Notice to Trust Unit Holders in accordance with this Section 3.08 shall not affect or delay the occurrence of the applicable Maturity Date, or affect the amounts to be paid to Trust Unit Holders on the Maturity Date.

(a)       At least five (5) Business Days prior to the Maturity Date (but not greater than ten (10) Business Days prior to the Maturity Date) the Trustee shall deliver a notice, in the form attached hereto as Exhibit C (a "**Notice of Nonpayment**"), to Syncora if there are insufficient funds (determined without taking into account any securities or other non-cash Trust Assets) in the Tax-Exempt Bond Account, the Taxable Bond Account, the Cash Account, the CVI Account, and the Insurance Policy Account to satisfy the Insured Amount after taking into account any adjustments made pursuant to Section 3.05 hereof (the amount of any such shortfall, the "**Maturity Shortfall**"). Syncora agrees that such notice provided by the Trustee shall constitute a valid notice of the type required under the applicable Syncora Insurance Policy in order for the Trustee to draw on the applicable Syncora Insurance Policy in the amount of the Maturity Shortfall.

(b)       On the Maturity Date, after giving effect to any Distribution made from other Trust Assets on the Maturity Date, Syncora shall pay to the Trustee, and the Trustee shall distribute to all Trust Unit Holders, a pro rata share of the Maturity Shortfall, if any, net of any Tax Costs, following which Syncora shall be entitled to any remaining non-cash Trust Assets

in the Tax-Exempt Bond Account, the Taxable Bond Account, the Cash Account, and/or the CVI Account, as applicable.

(c)     On the Maturity Date, after giving effect to any Distributions made on the Maturity Date (including the payment and distribution of any Maturity Shortfall (in accordance with Section 3.08(c) hereof)), (i) the applicable Trust Units shall be cancelled; (ii) all of Syncora's obligations under the applicable Syncora Insurance Policies and Syncora Legacy Bonds will be satisfied and discharged; (iii) the applicable Syncora Insurance Policies shall be indefeasibly cancelled; and (iv) the Trust shall terminate in accordance with the provisions of Article VII hereof.

(d)     For the avoidance of doubt, it is expressly understood and agreed that to the extent the principal amount of the applicable Syncora Legacy Bonds CUSIP is reduced to zero prior to the Maturity Date, as of the date the principal amount is reduced to zero: (i) the applicable Trust Units shall be cancelled; (ii) all of Syncora's obligations under the applicable Syncora Insurance Policies and Syncora Legacy Bonds will be satisfied and discharged; (iii) the applicable Syncora Insurance Policies shall be indefeasibly cancelled; and (iv) the Trust shall terminate in accordance with the provisions of Article VII hereof.

(e)     If and to the extent Syncora fails to make any payment at the time, in the amount and in the manner set forth herein, the Trustee shall take all necessary or desirable actions to enforce the applicable Syncora Insurance Policy (including, to the extent applicable, as and when directed by the Requisite Trust Unit Holders as set forth in Section 6.01 hereof).

(f)     For the purposes of drawing under the applicable Syncora Insurance Policy (and for all other purposes under the applicable Syncora Insurance Policy), Syncora acknowledges and agrees that:

(i)     the Trustee is authorized and directed to take such action and provide such documents, including, without limitation, a Notice of Nonpayment or similar notice, in order to make a demand for payment under the Syncora Insurance Policy; and

(ii)     the Requisite Trust Unit Holders have the right to direct the Trustee in writing to take, and the Trustee is authorized to take any actions under, provide such documents under, and to enforce, pursue, or recover claims under or in respect of, the applicable Syncora Insurance Policy as set forth in Section 6.01 hereof.

## ARTICLE IV

## REPORTING/REMITTING

**Section 4.01.**  *Reports to Syncora and Trust Unit Holders.*

No later than three (3) days after the date on which the Trustee make any Distribution to any Trust Unit Holder, the Trustee shall forward or cause to be forwarded to Syncora and each Trust Unit Holder a statement, substantially in the form attached hereto as Exhibit D, setting forth:

16

(a)     With respect to the Tax-Exempt Bond Account, the Taxable Bond Account, the Cash Account, the CVI Acccount, and the Insurance Policy Account, distributions made from each such account during the month and during the year to date (on an aggregate and per unit basis);

(b)     The accrued and unpaid interest on, and principal amount of, of the relevant Syncora Legacy Bonds CUSIP (or any other securities or property received in respect thereof or in exchange therefor) (on an aggregate and per unit basis);

(c)     Any other distributions made to Trust Unit Holders; and

(d)     Any required tax reporting for such period.

**Section 4.02. *Compliance with Withholding Requirements.***

Notwithstanding any other provisions of the Trust Agreement, the Trustee shall comply with all federal withholding requirements with respect to payments to Trust Unit Holders that the Trustee reasonably believes are applicable under the Code. The consent of Trust Unit Holders shall not be required for such withholding. In the event the Trustee does withhold any amount from payments to any Trust Unit Holder pursuant to federal withholding requirements, the Trustee shall indicate with any payment to such Trust Unit Holders the amount withheld. Any amounts withheld shall be treated as a distribution of cash to the Trust Unit Holder in the amount of the withholding and shall thereby reduce amounts otherwise distributable to such Trust Unit Holder. If an amount required to be withheld was not withheld, the Trust may reduce subsequent distributions by the amount of such required withholding.

## ARTICLE V

## TRUST UNITS

**Section 5.01. *The Trust Units.***

So long as a Syncora Insurer Event is not occurring under the applicable Syncora Insurance Policy, Syncora shall be deemed the sole holder of the New Securities deposited in the respective Trusts with respect to voting, amendment, acceleration, events of default and election and direction of rights and remedies, including, without limitation, in connection with insolvency proceedings. In addition, Syncora shall be fully subrogated to the rights of the respective Trust Unit Holders in respect of the New Securities deposited in the respective Trusts.

The Trust Units shall be designated in the Trust Agreement. Unless otherwise specified in the Trust Agreement, the Trust Units in the aggregate will represent the entire beneficial ownership interest in the Trust Estate. The Trust Units will be substantially in the forms annexed to the Trust Agreement. Unless otherwise provided in the Trust Agreement, the Trust Units will be issuable in book-entry form, in denominations of authorized Notional Amounts as described in the definition thereof. Each Trust Unit will share ratably in all Trust Assets of the applicable Trust and in all rights of the related Trust Unit Holders.

17

Upon original issue, the Trust Units shall be executed and delivered by the Trustee and the Trustee shall cause the Trust Units to be authenticated by the Unit Registrar upon receipt by the Trustee of the documents specified in Section 2.02. The Trust Units shall be executed by manual signature on behalf of the Trustee by an authorized Officer. Trust Units bearing the manual signatures of individuals who were at any time the proper Officers of the Trustee shall bind the Trustee, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Trust Units or did not hold such offices at the date of such Trust Units. No Trust Unit shall be entitled to any benefit under the Trust Agreement or be valid for any purpose, unless there appears on such Trust Unit a certificate of authentication as set forth on such certificate executed by manual signature on behalf of the Unit Registrar by a duly authorized Officer of the Unit Registrar, and such certificate of authentication shall be conclusive evidence, and the only evidence, that such Trust Unit has been duly authenticated and delivered hereunder. All Trust Units shall be dated the date of their execution.

**Section 5.02.   *Book-Entry Trust Units.***

(a)      The Trust Units will be represented initially by one or more book-entry certificates registered in the name designated by the Depository. Notwithstanding anything herein to the contrary, the Trustee may for all intents and purposes (including the making of payments on the Trust Units) deal with the Depository as the authorized representative of the Beneficial Owners of the Trust Units as if the Depository were the sole Trust Unit Holder for purposes of this Agreement for as long as those Trust Units are registered in the name of the Depository. The rights of Beneficial Owners of the Trust Units shall be limited to those established by law, the Trust Agreement and agreements between such Beneficial Owners and the Depository and Depository Participants. Requests and directions from, and votes of, the Depository, as Holder, shall not be deemed to be inconsistent if they are made with respect to different Beneficial Owners. Subject to Section 5.03 below, a Trust Unit may not be transferred by the Depository except to another Depository that agrees to hold the Trust Unit for the account of the respective Depository Participants and Beneficial Owners.

(b)      The Trustee will not have any liability to any person for any aspect of the records relating to or payment made on account of Beneficial Owners of the Trust Units held by the Depository, for monitoring or restricting any transfer of beneficial ownership in a Trust Unit or for maintaining, supervising or reviewing any records relating to such Beneficial Owners.

**Section 5.03.   *Registration of and Limitation on Transfers and Exchanges of Units.***

The Trustee shall cause to be kept at its Corporate Trust Office a Unit Register in which, subject to such reasonable regulations as it may prescribe, the Trustee shall provide for the registration of Trust Units and of transfers and exchanges of Trust Units as provided in the Trust Agreement (including these Standard Terms). The Trustee will initially serve as Unit Registrar for the purpose of registering Trust Units and transfers and exchanges of Trust Units as herein provided.

18

Subject to Section 5.04, upon surrender for registration of transfer of any Trust Unit at the Corporate Trust Office of the Trustee or at any other office or agency of the Trustee maintained for such purpose, the Trustee shall execute and the Unit Registrar shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Trust Units of a like aggregate Notional Amount.

At the option of the Trust Unit Holders, each Trust Unit may be exchanged for other Trust Units with a like aggregate Notional Amount and in authorized denominations, upon surrender of such Trust Unit to be exchanged at any such office or agency. Whenever any Trust Units are so surrendered for exchange, the Trustee shall execute and cause the Unit Registrar to authenticate and deliver the Trust Units which the Trust Unit Holder making the exchange is entitled to receive. Every Trust Unit presented or surrendered for transfer or exchange shall (if so required by the Trustee) be duly endorsed by, or be accompanied by a written instrument of transfer in the form satisfactory to the Trustee duly executed by the Holder thereof or his attorney duly authorized in writing.

No service charge to the Trust Unit Holders shall be made for any transfer or exchange of Trust Units, but the Trustee may require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any transfer or exchange of Trust Units.

All Trust Units surrendered for transfer and exchange shall be disposed of by the Unit Registrar in accordance with its customary procedures.

The Trustee will cause the Unit Registrar (unless the Trustee is acting as Unit Registrar) to provide notice to the Trustee of each transfer of a Trust Unit, and will provide the Trustee with an updated copy of the Unit Register on January 1 of each year.

### Section 5.04.  *No Obligation to Register.*

The Trustee is not obligated to register or qualify any Trust Unit under the Securities Act or any other securities laws.

### Section 5.05.  *Mutilated, Destroyed, Lost or Stolen Units.*

If (a) any mutilated Trust Unit is surrendered to the Trustee or the Unit Registrar, or the Trustee and the Unit Registrar receive evidence to their satisfaction of the destruction, loss or theft of any Trust Unit, and (b) there is delivered to the Trustee and the Unit Registrar such security or indemnity as may be required by them to save each of them harmless, then, in the absence of actual knowledge by the Trustee or the Unit Registrar that such Trust Unit has been acquired by a bona fide purchaser, the Trustee shall execute and deliver and the Unit Registrar shall authenticate, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Trust Unit, a new Trust Unit of like tenor. Upon the issuance of any new Trust Unit under this Section, the Trustee may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trust Unit Registrar) connected therewith. Any replacement Trust Unit issued pursuant to this Section shall constitute complete and indefeasible evidence of

19

ownership in the Trust, as if originally issued, whether or not the destroyed, lost or stolen Trust Unit shall be found at any time.

**Section 5.06. *Persons Deemed Owners*.**

Prior to due presentation of a Trust Unit for registration or transfer, the Trustee, the Unit Registrar and any agent of any of them may treat the person in whose name any Trust Unit is registered as the owner of such Trust Unit for the purpose of receiving distributions, and neither the Trustee, the Unit Registrar nor any agent of any of them shall be affected by notice to the contrary.

**Section 5.07. *Appointment of Trust Unit Paying Agent.***

The Trustee shall serve as the initial Trust Unit Paying Agent hereunder and thereafter, may appoint any other Trust Unit Paying Agent for the purpose of making distributions to Trust Unit Holders; provided, however, that any replacement Trust Unit Paying Agent shall be required to meet the eligibility requirement set forth in Section 6.06. The Trustee shall cause such Trust Unit Paying Agent to execute and deliver to the Trustee an instrument in which such Trust Unit Paying Agent shall agree with the Trustee that such Trust Unit Paying Agent will hold all sums held by it for the payment to Trust Unit Holders in trust for the benefit of the Trust Unit Holders entitled thereto until such sums shall be paid to the Trust Unit Holders. All funds remitted by the Trustee to any such Trust Unit Paying Agent for the purpose of making distributions shall be paid to Trust Unit Holders as soon as practicable following receipt thereof by the Trust Unit Paying Agent and any amounts not so paid shall be returned as soon as practicable to the Trustee.

# ARTICLE VI

## CONCERNING THE TRUSTEE

**Section 6.01. *Duties of Trustee*.**

Every provision of the Trust Agreement (including these Standard Terms) relating to the conduct of, affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Article VI.

The Trustee undertakes to perform such duties and only such duties as are specifically set forth in the Trust Agreement and no implied covenants or obligations shall be read into the Trust Agreements against the Trustee.

The Trustee shall (at the direction of the Requisite Trust Unit Holders) take all necessary or desireable actions to enforce the Syncora Insurance Policies as set forth herein.

The Trustee shall deliver to all Trust Unit Holders copies of all notices and written communications received from Depositors or the Reorganized Debtors as they relate to the Bonds and/or the GO CVIs.

Except as provided in <u>Section 6.02</u> hereof, no provision of the Trust Agreement shall be construed to relieve the Trustee from liability for its own grossly negligent action, grossly negligent failure to act or willful misconduct; *provided, however,* that:

(a)     The Trustee shall not be liable for an error of judgment made in good faith by an Officer of the Trustee, unless it shall be proved that the Trustee was grossly negligent in ascertaining the pertinent facts;

(b)     The Trustee shall not be personally liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the direction of Syncora or, in the event that the Voting Rights are held by a party other than Syncora, Holders of Trust Units entitled to a majority of the Voting Rights (or such other percentage as may be specified herein) relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee with respect to the New Securities or exercising any trust or power conferred upon the Trustee with respect to the New Securities, under the Trust Agreement;

(c)     The Trustee shall not be personally liable with respect to any action taken, suffered or omitted to be taken by it in good faith in accordance with the direction of the Requisite Trust Unit Holders relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee with respect to the Syncora Insurance Policies or exercising any trust or power conferred upon the Trustee with respect to the Syncora Insurance Policies, under the Trust Agreement; and

(d)     Any determination of gross negligence or bad faith of the Trustee shall be made only upon the rendering of a final judgment of a court of competent jurisdiction no longer subject to appeal or review.

### Section 6.02.   *Certain Matters Affecting the Trustee.*[4]

(a)     The Trustee may conclusively rely and shall be protected in acting or refraining from acting upon any resolution, certificate of auditors or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it in good faith to be genuine and to have been signed or presented by the proper party or parties. Further, the Trustee may accept a copy of the vote of the board of directors or equivalent governing body of any party certified by its clerk or assistant clerk or secretary or assistant secretary as conclusive evidence of the authority of any Person to act in accordance with such vote, and such vote may be considered as in full force and effect until receipt by the Trustee of written notice to the contrary;

(b)     The Trustee may, in the absence of bad faith on its part, conclusively rely upon an Opinion of Counsel or certificate of an Officer of the appropriate Person whenever in the administration of the Trust Agreement the Trustee shall deem it desirable that a matter

---

[4] All provisions related to the Trustee and the Delaware Trustee are subject to review by the prospective Trustee and Delaware Trustee, as applicable.

be proved or established (unless other evidence be herein specifically prescribed) prior to taking, suffering or omitting any action hereunder;

(c)     The Trustee may consult with counsel of its own selection and the advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered or omitted by it hereunder in good faith and in accordance with such advice or Opinion of Counsel;

(d)     The Trustee shall be under no obligation to exercise any of the trusts or powers vested in it by the Trust Agreement or to institute, conduct, defend or continue any litigation thereunder or in relation thereto at the request, order or direction of any of the Trust Unit Holders, pursuant to the provisions of the Trust Agreement, unless such Trust Unit Holders shall have offered to the Trustee security or indemnity reasonably satisfactory to it against the costs, expenses and liabilities which may be incurred therein or thereby;

(e)     The Trustee shall not be personally liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by the Trust Agreement (including these Standard Terms);

(f)     The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing to do so by Syncora, or in the event that the Voting Rights are held by a party other than Syncora, Trust Unit Holders entitled to a majority of the Voting Rights; *provided, however,* that if the payment within a reasonable time to the Trustee of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Trustee, not assured to the Trustee by the security afforded to it by the terms of the Trust Agreement, the Trustee may require indemnity against such expense or liability as a condition to taking any such actions;

(g)     The Trustee may execute any of the trusts or powers under the Trust Agreement or perform any duties hereunder either directly or by or through agents, attorneys, custodians or nominees and the Trustee shall not be responsible for the supervision of or any misconduct or negligence on the part of any agent or attorney appointed with due care by it under the Trust Agreement;

(h)     Whenever the Trustee is authorized herein to require acts or documents in addition to those required to be provided it in any matter, it shall be under no obligation to make any determination whether or not such additional acts or documents should be required unless obligated to do so under Section 6.01;

(i)     The Trustee shall not be deemed to have notice of any matter unless one of its Officers has actual knowledge thereof or unless written notice thereof is received by the Trustee at the Corporate Trust Office and such notice references the applicable Trust Units generally, the applicable Depositor(s), the Trust or the Trust Agreement;

(j)     None of the provisions of the Trust Agreement or these Standard Terms shall require the Trustee to expend or risk its own funds or otherwise to incur any liability,

financial or otherwise, in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers if it shall have reasonable grounds for believing that repayment of such funds or indemnity satisfactory to it against such risk or liability is not assured to it;

(k)　Notwithstanding anything herein to the contrary, in no event shall the Trustee be liable for special, indirect, punitive or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action;

(l)　The permissive rights of the Trustee to perform any discretionary act enumerated in the Trust Agreement or these Standard Terms shall not be construed as a duty or obligation, and the Trustee shall not be answerable in the performance of such act other than for its gross negligence or willful misconduct;

(m)　The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and each agent, custodian, co-trustee and other Person employed to act hereunder;

(n)　The Trustee shall have no duty (A) to see to any recording, filing, or depositing of the Trust Agreement or any agreement referred to herein or any financing statement or continuation statement evidencing a security interest, or to see to the maintenance of any such recording or filing or depositing or to any re-recording, re-filing or re-depositing of any thereof, (B) to see to any insurance, (C) to see to the payment or discharge of any tax, assessment, or other governmental charge or any lien or encumbrance of any kind owing with respect to, assessed or levied against, any part of the Trust Estate, or (D) to confirm or verify the contents of any reports or certificates delivered to the Trustee pursuant to the Trust Agreement (including these Standard Terms) believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties;

(o)　The Trustee shall have no liability or responsibility for the acts or omissions of any other party to any of the Trust Agreement, these Standard Terms or any related document;

(p)　The Trustee shall have no duty or obligation to obtain or solicit any collateral or any funds to be remitted in any of the accounts established under the Trust Agreement or these Standard Terms, and shall have a duty only to accept such collateral or funds delivered to it in accordance with the Trust Agreement (including these Standard Terms);

(q)　In connection with its preparation of any required tax reporting for Beneficial Owners of the Trust Units, the Trustee shall, if necessary, (i) on a quarterly basis for each calendar year, request one Depository participant list, (ii) on an annual basis, contact each Depository participant identified on the Depository participant lists and request such Beneficial Owner information as shall be necessary to permit the Trustee to prepare the applicable tax return for such calendar year, and (iii) to the extent that a participant provides partial or incomplete Beneficial Owner information, make a second and final attempt to contact the participant or such Beneficial Owner (to the extent such Beneficial Owner's contact

23

information has been provided to the Trustee) to obtain such additional information in order to permit the Trustee to prepare the applicable tax return for such Beneficial Owner for that calendar year;

(r)     The Trustee shall not be required to give any bond or surety in respect of the performance of its powers and duties hereunder;

(s)     The Trustee may request the delivery of a certificate setting forth the names of individuals and/or titles of officers authorized at such time to take specified actions pursuant to the Trust Agreement; and

(t)     All rights of action under the Trust Agreement or under any of the Trust Units, enforceable by the Trustee, may be enforced by it without the possession of any of the Trust Units, or the production thereof at the trial or other proceeding relating thereto, and any such suit, action or proceeding instituted by the Trustee shall be brought in its name for the benefit of all the Holders of such Trust Units, subject to the provisions of the Trust Agreement.

### Section 6.03.  *Trustee Not Liable for Trust Units or Securities.*

The Trustee assumes no responsibility for the correctness of the recitals contained in the Trust Agreement and in the Trust Units.  The Trustee makes no representations or warranties as to the validity or sufficiency of the Trust Agreement or of the Trust Units (other than the signature and authentication of the Trustee on the Trust Units) or of the Securities or related documents.  The Trustee shall not be accountable for the use or application of any of the Trust Units, or for the use or application of any funds in respect of the Securities or deposited in or withdrawn from the Trust in accordance with the Trust Agreement other than, in each case, any funds held by or on behalf of the Trustee in accordance with Sections 3.01 and 3.02.  The Trustee, in its capacity as Trustee hereunder, shall have no responsibility or obligation to comply with, or to monitor any other Person's compliance with, the Bond Documents.

### Section 6.04.  *Trustee May Own Units.*

The Trustee in its individual capacity or any other capacity may become the owner or pledgee of Trust Units with the same rights it would have if it were not Trustee.

### Section 6.05.  *Trustee's Fees and Expenses.*

(a)     Pursuant to the Fee Agreement, the Trustee shall be entitled to receive from the Trust (i) compensation agreed upon in writing (which shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust) for all services rendered by it in the execution of the trusts created under the Trust Agreement and in the exercise and performance of any of the powers and duties thereunder of the Trustee and (ii) reimbursement for (x) all reasonable fees, expenses, costs and disbursements (other than Extraordinary Expenses) incurred or made by the Trustee in accordance with any of the provisions of the Trust Agreement (including but not limited to the fees, expenses and disbursements of its counsel and of all persons not regularly in its employ), in each case to the extent set forth in such fee agreement and (y) Extraordinary Expenses reimbursable pursuant

24

to Section 6.05(b) (collectively, the "**Trustee Costs**"). All such Trustee Costs shall be paid pursuant to the terms of the Fee Agreement and may be reimbursed to the Trustee in accordance with the provisions of Section 3.02 hereof.

(b)     In addition, the Trustee (including in its capacities as the Unit Registrar and Paying Agent) shall be entitled to receive reimbursement for all reasonable out-of-pocket expenses which are properly documented and incurred or made by it, including costs of collection, payable as a result of or in connection with litigation, enforcement actions or other proceedings brought by Trust Unit Holders against the Depositors, the Reorganizd Debtors, the Trust, or the Trustee except for proceedings, litigation or enforcement actions that relate to the Trustee's grossly negligent action, grossly negligent failure to act or its own willful misconduct (the "**Extraordinary Expenses**"). The Trustee may make withdrawals from the Trust to pay or reimburse itself the amount of any Extraordinary Expenses, up to a payment limit of $150,000 in the aggregate for the Trusts of Extraordinary Expenses in any calendar year or pro rata portion thereof in the case of the initial and the final years of the Trust based upon the portion of the applicable calendar year in which the Trust exists; provided, however, that the Trustee shall not have any obligation to incur additional Extraordinary Expenses in excess of such annual limit unless it has received security or indemnity reasonably satisfactory to it for such additional Extraordinary Expenses; and provided, further, that if the Trustee does incur any additional Extraordinary Expenses in excess of such annual limit in any calendar year, nothing herein shall prohibit it from being reimbursed for such Extraordinary Expenses in any subsequent calendar year, to the extent of funds available for such reimbursement as provided hereunder and subject to the payment limit of $100,000 applicable for each such subsequent calendar year or such pro rata portion thereof in the case of the initial and final years of the Trust and provided further that the foregoing shall not limit the payment of any amounts to which the Trustee is entitled pursuant to its indemnification rights set forth in Section 6.13 with respect to defending the Trustee against any claim asserted by any Person.

(c)     For the avoidance of doubt, the Depositors shall not be liable for any Trustee Costs or Extraordinary Expenses.

**Section 6.06.** *Eligibility Requirements for Trustee, Successor Trustee, and Trust Unit Paying Agent.*

The Trustee, any successor Trustee, and any successor Trust Unit Paying Agent shall at all times be a corporation or national banking association that: (i) is not an Affiliate of the Depositors or Syncora; (ii) is neither affilliated with the Commonwealth or its instrumentalities, public corporations, or municipalities, nor located in the Commonwealth; (iii) is organized and doing business under the laws of any state or the United States of America; (iv) is authorized under such laws to exercise corporate trust powers; (v) is in good standing under the law of the jurisdiction in which it is organized; (vi) has a combined capital and surplus of at least $50,000,000; (vii) is subject to supervision or examination by federal or state authority; and (viii) is regularly acting as a trustee in the municipal finance market. If such corporation publishes reports of its conditions at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of conditions so published.

25

In case at any time any Trustee, successor Trustee, or successor Trust Unit Paying Agent shall cease to be eligible in accordance with the provisions of this Section, such Trustee, successor Trustee, or successor Trust Unit Paying Agent shall resign immediately in the manner and with the effect specified in Section 6.07.

**Section 6.07.  *Resignation and Removal of the Trustee.***

(a)     The Trustee may at any time resign and be discharged from the trusts created pursuant to a Trust Agreement by giving 60 days written notice, which shall be posted to EMMA by the Trustee. Upon receiving such notice of resignation, Syncora shall promptly appoint a successor trustee meeting the requirements set forth in Section 6.06 by written instrument, in duplicate, which instrument shall be delivered to the resigning Trustee and to the successor trustee. A copy of such instrument shall be delivered to the Trust Unit Holders and posted to EMMA by the successor trustee. If no successor trustee shall have been so appointed and have accepted appointment within 60 days after the giving of such notice of resignation, the resigning Trustee may petition any court of competent jurisdiction for the appointment of a successor trustee at the expense of the Trust.

(b)     If at any time the Trustee shall cease to be eligible in accordance with the provisions of Section 6.06 and shall fail to resign after written request therefor by Syncora, or if any time the Trustee shall become incapable of acting, or shall be adjudged bankrupt or insolvent, or a receiver of the Trustee or of its property shall be appointed, or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation, then Syncora may remove the Trustee and appoint a successor trustee by written instrument, in duplicate, which instrument shall be delivered to the Trustee so removed and to the successor trustee.

(c)     Syncora may at any time remove the Trustee and appoint a successor trustee by written instrument or instruments, in triplicate, one complete set of which instruments shall be delivered to the Trustee so removed and one complete set to the successor trustee so appointed.

Any resignation of the Trustee and appointment of a successor trustee pursuant to any of the provisions of this Section 6.07 shall not become effective until the acceptance of appointment by the successor trustee as provided in Section 6.08 hereof. The compensation and reimbursement for fees and expenses of any successor trustee appointed in connection with the resignation of the Trustee shall be the sole responsibility of the Trust, including without limitation, the costs and expenses incurred in connection with any such succession.

Any removal of the Trustee and appointment of a successor trustee pursuant to any of the provisions of this Section 6.07 shall not become effective until (i) acceptance of appointment by the successor trustee as provided in Section 6.08 hereof and (ii) payment of all costs, expenses and indemnities (other than Extraordinary Expenses) due and owing to the outgoing Trustee, including without limitation, the costs and expenses incurred in connection with any such succession. Notwithstanding the replacement of the Trustee pursuant to this Section 6.07, the rights, benefits, protections and indemnities afforded to the Trustee under this Article VI shall continue to the benefit of the retiring Trustee.

26

**Section 6.08.   *Successor Trustee.***

Any successor trustee appointed as provided in Section 6.07 shall execute, acknowledge and deliver to the Trust Unit Holders and to the predecessor trustee an instrument accepting such appointment under the Trust Agreement and thereupon the resignation or removal of the predecessor trustee shall become effective and such successor trustee, without any further act, deed or conveyance, shall become fully vested with all the rights, powers, duties and obligations of its predecessor thereunder, with the like effect as if originally named as trustee therein.   The predecessor trustee shall deliver to the successor trustee all related documents and statements held by it under the Trust Agreement and the Trust Unit Holders and the predecessor trustee shall execute and deliver such instruments and do such other things as may reasonably be required for more fully and certainly vesting and confirming in the successor trustee all such rights, powers, duties and obligations.

No successor trustee shall accept appointment as provided in this Section unless at the time of such acceptance such successor trustee shall be eligible under the provisions of Section 6.06 hereof.

Upon acceptance of appointment by a successor trustee as provided in this Section, the successor trustee shall (a) post to EMMA notice of the succession of such trustee under the Trust Agreement and (b) mail notice of the succession of such trustee under the Trust Agreement to all Holders of Trust Units at their addresses as shown in the Unit Register.

**Section 6.09.   *Merger or Consolidation of Trustee.***

Any corporation into which the Trustee may be merged or converted or with which it may be consolidated or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to all or substantially all of the corporate trust business of the Trustee, shall be the successor of the Trustee under the Trust Agreement provided such corporation shall be eligible under the provisions of Section 6.06, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

**Section 6.10.   *Reserved.***

**Section 6.11.   *Appointment of Custodians.***

The Trustee may appoint one or more Custodians to hold all or a portion of the Trust Estate as agent for the Trustee, by entering into a custodial agreement. The appointment of any Custodian may at any time be terminated and a substitute custodian appointed therefor by the Trustee.   Subject to Article VI, the Trustee agrees to comply with the terms of each custodial agreement and to enforce the terms and provisions thereof against the Custodian for the benefit of the Trust Unit Holders. Each Custodian shall be a depository institution or trust company subject to supervision by federal or state authority, shall have combined capital and surplus of at least $10,000,000 and shall be qualified to do business in the jurisdiction in which it holds any asset constituting part of the Trust Estate.   Any such Custodian may not be an Affiliate of the Depositors or Syncora.   The Trustee is responsible for the fees and expenses of any Custodian appointed hereunder.

**Section 6.12.** *Trustee May Enforce Claims Without Possession of Trust Units.*

All rights of action and claims under the Trust Agreement or the Trust Units may be prosecuted and enforced by the Trustee without the possession of any of the Trust Units or the production thereof in any proceeding relating thereto and any such proceeding instituted by the Trustee shall be brought in its own name or in its capacity as Trustee. Any recovery of judgment shall, after provision for the payment of the reasonable compensation, fees, expenses, disbursements and advances of the Trustee, its agents and counsel, be for the ratable benefit of the Trust Unit Holders in respect of which such judgment has been recovered.

**Section 6.13.** *Trustee Indemnity*

The Trustees' rights to claim indemnification for losses that they may incur with respect to the Trust Agreement (incorporating these Standard Terms) and each other document contemplated by the foregoing to which either of the Trustees is a party shall be as set forth in Annex I hereto, subject, with respect to Extraordinary Expenses, to the provisions of Section 6.05(b).

## ARTICLE VII

## TERMINATION OF TRUST

**Section 7.01.** *Termination; No Redemption Rights.*

Upon the indefeasible cancellation or other indefeasible termination of the relevant Syncora Insurance Policy, the Trust (including the respective obligations and responsibilities under the Trust Agreement of the Trustee and Syncora shall terminate upon (i) the distribution to Syncora or to Trust Unit Holders, as applicable, of any remaining Trust Assets held by or on behalf of the Trustee and required hereunder to be so distributed in accordance with the provisions of Section 3.03, 3.04, 3.07, or 3.08 hereof, (ii) payment in full of any Trustee Costs due and owing to the Trustee under the Trust Agreement (including these Standard Terms), (iii) payment in full of any Syncora Deferred Expenses due and owing to Syncora under the Trust Agreement (including these Standard Terms), (iv) payment in full of any known Tax Costs due and owing to any tax or governmental authority, and (v) receipt by the Trustee of an Opinion of Counsel stating that all conditions precedent herein relating to the satisfaction and discharge of the Trust Agreement have been complied with. In no event shall the Trust be terminated or the Securities be redeemed (except in the case of a redemption of the Securities permitted under the terms of the Bond Documents) or otherwise released from the Trust Estate [(except pursuant to, and in accordance with, Sections 3.04 and 3.07 hereof)] without the prior express written consent of Syncora if either (i) the relevant Syncora Insurance Policy has not been indefeasibly terminated or (ii) Syncora has not been indefeasibly paid in full for any amounts owed pursuant to the Commonwealth Plan.

Notwithstanding anything contained herein to the contrary, the merger or consolidation of the Trustee shall not cause a termination of the Trust.

**Section 7.02.** *Procedure for Termination.*

During the month in which the Trustee intends to make the final distribution from the Trust, the Trustee shall give notice by letter to the Trust Unit Holders specifying: (a) the anticipated final distribution date; (b) that the final payment of the Trust Units will be made upon presentation and surrender of Trust Units at the office of the Trustee therein designated on that date and the amount of any such final payment; (c) any amounts, or trust assets, remaining on deposit in the Trust will be distributed to the holders of record of the Trust Units on a pro rata basis; and (d) that the Trustee believes that, following the occurance of such final distributions, the conditions to termination of the Trust have been satisfied and that it intends to terminate the Trust (a "**Termination Notice**"). The Trustee shall provide a copy of the Termination Notice to the Unit Registrar at the time such Termination Notice is given to Trust Unit Holders.

If the Requisite Trust Unit Holders do not object in writing within thirty (30) days after the Trustee has provided the Termination Notice as set forth herein then, upon completion of final distributions as set forth in the Termination Notice, the Trust shall be dissolved, wound up, and terminated.

Upon the dissolution, wind up and termination of the Trust and the Trust Agreement, the Trustee or Delaware Trustee is authorized to file a certificate of cancellation with the Secretary of State.

## ARTICLE VIII

## TAX PROVISIONS

**Section 8.01.   *Grantor Trust Provisions.***

The Trustee, the Depositors, the Trust Unit Holders (by their acceptance of the Trust Units and Book-Entry Beneficial Interests) and Syncora each agree and acknowledge or have agreed and acknowledged that the Trust is intended to qualify for U.S. federal income tax purposes as an "investment trust" within the meaning of Treasury Regulation § 301.7701-4(c) that is a grantor trust, and it is neither the purpose nor the intent of the parties hereto to create a partnership, joint venture or association taxable as a corporation or to serve as associates in a joint enterprise for the conduct of business for profit. In furtherance of the foregoing, (a) the purpose of the Trust is and shall be to protect and conserve the assets of the Trust Estate, and the Trust shall not at any time engage in or carry on any kind of business or any kind of commercial or investment activity, (B) the Trust is formed to facilitate direct investment in the Trust Assets, and (c) the Trustee (at the direction of Syncora), shall take, or refrain from taking, all such action as is necessary to maintain the status of the Trust as an "investment trust" within the meaning of Treasury Regulation § 301.7701-4(c) that is a grantor trust. The Trustee shall not (i) acquire any assets or dispose of any portion of the Trust other than pursuant to the specific provisions of this Trust Agreement, (ii) vary the investment of the Trust within the meaning of Treasury Regulation § 301.7701-4(c), (iii) substitute new investments or reinvest so as to enable the Trust Estate to take advantage of variations in the market to improve the investment of any Trust Unit Holder or (iv) engage in any activity which may directly or indirectly, adversely affect the status of the Trust as an "investment trust" within the meaning of Treasury Regulation § 301.7701-4(c) that is a grantor trust. The Trustee shall not have any

29

authority to manage, control, use, sell, dispose of or otherwise deal with any part of the Trust Estate except as required by the express terms of this Trust Agreement in accordance with the powers granted to or the authority conferred upon the Trustee pursuant to this Trust Agreement. The Trustee and Syncora each agree that they shall not take any action that would result in the Trust failing to be characterized for U.S. federal income tax purposes as an "investment trust" within the meaning of Treasury Regulation § 301.7701-4(c) that is a grantor trust.

### Section 8.02. *Characterization.*

Each Trust Unit Holder acknowledges and agrees to treat the Trust Units and the Book-Entry Beneficial Interests as undivided interests in the Trust Estate.

### Section 8.03. *Grantor Trust Administration.*

Notwithstanding anything in this Trust Agreement to the contrary, and notwithstanding any direction or instruction by less than all the Trust Unit Holders, the Trustee shall not be authorized to take any action that would cause the Trust not to be treated as a grantor trust under the Code all of the distributions and income from which would be subject to the tax treatment described in Subpart J of Chapter 1 of the Code as to the Trust Unit Holders. The Trustee shall perform its duties hereunder so as to maintain the status of the Trust as a grantor trust under the Grantor Trust Provisions. The Trustee shall not (a) exercise any discretionary rights with respect to the Trust Assets, (b) acquire an interest in any additional Trust Assets (other than proceeds of a sale of Trust Assets permitted under the terms of this Trust Agreement), (c) knowingly take any other action or fail to take (or fail to cause to be taken) any other action that, under the Grantor Trust Provisions, if taken or not taken, as the case may be, could adversely affect the status of (i) the Trust as a grantor trust, (ii) the Trust as a U.S. trust, or (iii) the Trust Unit Holders as grantors with respect to the Trust under the Grantor Trust Provisions (any such adverse effect on trust status, an "**Adverse Trust Event**"), unless the Trustee has obtained or received an Opinion of Counsel from counsel nationally recognized as competent in matters relating to the U.S. federal income taxation of organizations such as the Trust (at the expense of the party requesting such action or at the expense of the Trust Estate if the Trustee seeks to take such action or to refrain from taking any action for the benefit of the Trust Unit Holders) to the effect that the contemplated action will not result in an Adverse Trust Event. None of the other parties hereto shall take any action or fail to take any action (whether or not authorized hereunder) as to which the Trustee has advised it in writing that the Trustee has received or obtained an Opinion of Counsel to the effect that an Adverse Trust Event could result from such action or failure to act. The Trustee may consult with counsel to make such written advice, and the cost of same shall be borne by the party seeking to take the action not permitted by this Trust Agreement, but in no event at the cost or expense of the Trust Estate or the Trustee.

### Section 8.04. *Reports to Trust Unit Holders and Tax Authorities*

(a)     The Trustee shall perform or cause to be performed on behalf of the Trust all reporting and other tax compliance duties that are required in respect thereof under the Code, the Grantor Trust Provisions or other compliance guidance issued by the Internal Revenue Service or any state or local taxing authority.

30

(b)        Consistent with the Trust's characterization for U.S. federal income tax purposes as a grantor trust, no U.S. federal income tax return shall be filed on behalf of the Trust unless either (i) the Trustee shall receive an Opinion of Counsel that, based on a change in applicable law occurring after the date hereof, the Code requires such a filing or (ii) the Internal Revenue Service shall determine that the Trust is required to file such a return. In the event that the Trust is required to file tax returns, the Trustee shall prepare or cause to be prepared, and sign and file when due with the appropriate tax authorities all of the tax returns in respect of the Trust.  In no event shall the Trustee, the Depositors, or Syncora be liable for any liabilities, costs, or expenses of the Trust or the Trust Unit Holders arising out of the application of any tax law, including federal, state, foreign or local income or excise taxes or any other tax imposed on or measured by income (or any interest, penalty or addition with respect thereto or arising from a failure to comply therewith) except, in the case of the Trustee, for any such liability, cost or expense attributable to any act or omission by the Trustee in breach of its obligations under this Trust Agreement.

(c)        If any tax, duty, assessment, or other governmental charge is imposed, levied or assessed on the Trust, or if the Trust becomes subject to deduction, withholding, or other charge or assessment from, or with respect to, any amounts received by the Trust or any distributions made by the Trust, such tax, duty, assessment or other governmental charge, together with all incidental costs and expenses (including, without limitation, penalties and reasonable attorneys' fees) (collectively, the "**Tax Costs**") shall be the sole responsibility of, charged to and payable by the Trust Unit Holders on a pro rata basis.  To the extent known prior to the termination of the Trust, all Tax Costs that are withheld, collected, charged, assessed, or levied shall be paid by the Trustee from the Trust Assets and income to the applicable taxing or governmental authority and any amounts so withheld, collected and/or paid to the applicable taxing or governmental authority shall be deemed to have been paid as distributions to the applicable Trust Unit Holders and treated in accordance with the provisions of the Trust Agreement applicable to Tax Costs. To the extent any Tax Costs become known after the termination of the Trust, the former Trust Unit Holders of such Trust shall remain responsible for such Tax Costs on a pro rata basis.

(d)        The Trustee shall, for U.S. federal income tax purposes, maintain books and records with respect to the Trust on a calendar year basis or such other basis as may be required under the Code.

(e)        All taxes due and payable on any amounts payable to a Trust Unit Holder with respect to a Trust Unit shall be that Trust Unit Holder's sole responsibility.

(f)        For the purposes of this Article VIII of these Standard Terms and any other provision of the Trust Agreement relating to the ownership of a Trust Unit for U.S. federal income tax purposes, including definitions, all references to Holder, Trust Unit Holder, or Beneficial Owner shall mean the beneficial owner of a Trust Unit for U.S. federal income tax purposes.  By acquiring an interest in a Trust Unit, a beneficial owner of the Trust Unit for U.S. federal income tax purposes shall be deemed to consent as a condition of acquiring such interest to comply with any requirements of such Articles, Sections, or provisions hereof.

(g)      Notwithstanding any other provision of the Trust Agreement (including these Standard Terms), Syncora makes no representations, warranties, or guarantees, and shall have no liability, with respect to the tax treatment of the Trust, the Trust Units, any payments made in connection with the Trust or the Trust Units, any Tax Costs, or any securities or other property held in the Trust or issued in connection with the Trust, including, without limitation, the Trust Units. By electing, or being deemed to elect, the Syncora Non-Commutation Treatment, all Trust Unit Holders expressly agree to hold Syncora harmless, and not to seek to impose any liabiltiy on Syncora, related to the tax treatment of the Trust, the Trust Units, any payments made in connection with the Trust or the Trust Units, any Tax Costs, or any securities or other property held in the Trust or issued in connection with the Trust, including, without limitation, the Trust Units.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

**Section 9.01.** *Amendment of Trust Agreement.*

Promptly following the execution of the Trust Agreement, the Trustee shall post full and complete copies of the Trust Agreement (including these Standard Terms) on EMMA. The Trust Agreement (including these Standard Terms) may not be amended, waived or supplemented without the prior written consent of Syncora. The Trust Agreement (including these Standard Terms) may be amended, waived or supplemented from time to time by Syncora and the Trustee without the consent of the Trust Unit Holders; provided, however, that no such amendment shall:

(a)      except as otherwise provided in the Trust Agreement (including these Standard Terms) reduce in any manner the amount of, or delay or accelerate the timing of, required distributions to any Trust Unit Holder without the written consent of such Trust Unit Holder;

(b)      compromise, waive, sell, forfeit, or otherwise diminish the rights of the Trust, the Trustee, or the Trust Unit Holders under any Syncora Insurance Policy without the written consent of each Holder of Trust Units affected;

(c)      [reserved];

(d)      amend this Section 9.01 without the consent of the Holder of each Trust Unit;

(e)      adversely affect in any other material respect the interests of the Trust Unit Holders in any manner other than as described in (a), (b), or (c) without the consent of the Trust Unit Holders evidencing at least a majority of such Trust Unit Holders holding Trust Units in the applicable Trust (measured by the outstanding par amount of the underlying Syncora Legacy Bonds), excluding, from both the numerator and the denominator, any Trust Units held by Syncora; or

(f)      reduce the aforesaid percentage of Trust Units the Holders of which are required to consent to any such amendment, without the unanimous written consent of such Holders of all Trust Units then outstanding.

Prior to executing any amendment permitted by this Article IX, (i) the Trustee shall be required to obtain an Opinion of Counsel that is nationally recognized as competent in matters relating to the federal income taxation of organizations such as the Trust to the effect that such amendment will not result in an Adverse Trust Event and (ii) the Trustee shall be entitled to receive, and shall be fully protected in relying upon an Opinion of Counsel and an Officer's Trust Unit stating that the execution of such amendment is authorized or permitted by the Trust Agreement and that all conditions precedent have been met. The Trustee may, but shall not be obligated to, enter into any such amendment that affects the Trustee's own rights, duties, liabilities, indemnities or immunities under the Trust Agreement, these Standard Terms or otherwise.

Promptly after the execution of any such amendment the Trustee shall furnish a copy of such amendment to each Trust Unit Holder and shall post a copy of such amendment to EMMA.

The manner of obtaining such consents and of evidencing the authorization of the execution thereof by Trust Unit Holders shall be subject to such reasonable regulations as the Trustee may prescribe.

### Section 9.02. *Counterparts.*

The Trust Agreement may be executed simultaneously in any number of counterparts, each of which counterparts shall be deemed to be an original, and such counterparts shall constitute but one and the same instrument.

### Section 9.03. *Limitation on Rights of Trust Unit Holders.*

The death or incapacity of any Trust Unit Holder shall not operate to terminate the Trust Agreement or the Trust, nor entitle such Trust Unit Holder's legal representatives or heirs to claim an accounting or to take any action or proceeding in any court for a partition or winding up of the Trust, nor otherwise affect the rights, obligations and liabilities of the parties hereto or any of them.

No Trust Unit Holder shall have any right to vote (except as expressly provided for herein) or in any manner otherwise control the operation and management of the Trust, or the obligations of the parties hereto, nor shall anything herein set forth, or contained in the terms of the Trust Units, be construed so as to constitute the Trust Unit Holders from time to time as partners or members of an association; nor shall any Trust Unit Holder be under any liability to any third person by reason of any action taken by the parties to the Trust Agreement pursuant to any provision hereof.

Except with respect to enforcement of the applicable Syncora Insurance Policies in accordance with the terms hereof, no Trust Unit Holder shall have any right by virtue of any provision of the Trust Agreement to institute any suit, action or proceeding in equity or at law

upon or under or with respect to the Trust Agreement, unless the Requisite Trust Unit Holders shall have made written request upon the Trustee to institute such action, suit or proceeding in its own name as Trustee under the Trust Agreement, and the Trustee, for 15 days after its receipt of such request shall have neglected or refused to institute any such action, suit or proceeding. It is understood and intended, and expressly covenanted by each Trust Unit Holder with every other Trust Unit Holder and the Trustee, that no one or more Holders of Trust Units shall have any right in any manner whatever by virtue of any provision of the Trust Agreement to affect, disturb or prejudice the rights of the Holders of any other Trust Units, or to obtain or seek to obtain priority over or preference to any other such Holder, or to enforce any right under the Trust Agreement, except in the manner therein provided and for the equal, ratable and common benefit of all Trust Unit Holders. For the protection and enforcement of the provisions of this Section, each and every Trust Unit Holder and the Trustee shall be entitled to such relief as can be given either at law or in equity.

In the event that an authorized officer of the Trustee receives a request for its consent to any amendment, modification or waiver of these Standard Terms, the Trust Agreement or any other document thereunder or relating thereto, or receives any other solicitation for any action with respect to the Securities or Syncora Insurance Policies, the Trustee shall mail a notice of such proposed amendment, modification, waiver, solicitation or action to each of the Trust Unit Holders within five (5) days of receipt thereof. The Trustee shall request instructions from the Trust Unit Holders as to whether or not to consent to or vote to accept such amendment, modification, waiver, solicitation or action.

The Trustee shall consent or vote proportionally in accordance with the written direction of the Trust Unit Holders; provided, however, that the Trustee shall not:

(a) without the prior written consent of any Trust Unit Holder, consent or affirmatively vote on behalf of such Trust Unit Holder on any matter that would: (i) terminate the Trust, (ii) except as expressly provided herein, sell some or all of the assets of the Trust; (iii) compromise, waive, sell, forfeit, or otherwise diminish the rights of the Trust, the Trustee, or the Trust Unit Holders under any Syncora Insurance Policy; and

(b) without the prior written consent of Syncora, consent or affirmatively vote on any matter that would amend, modify or waive any agreement in such a manner as to adversely impact Syncora. Any such determination as to whether any such amendment, modification or waiver adversely impacts Syncora shall be made in the sole and absolute discretion of Syncora and such determination shall be promptly provided by notice to the Trustee and the Trust Unit Holders. The Trustee shall not be liable to any Trust Unit Holder or any other Person for refusing to consent or affirmatively vote on such a matter in accordance with such written direction of Syncora.

**Section 9.04.** *Notices.*

All demands and notices under the Trust Agreement shall be in writing and shall be deemed to have been duly given if personally delivered at or mailed by first class mail, postage prepaid, or by express delivery service, to (a) in the case of the Trustee if the Trustee is [●], the notice address for the Trustee is [●]. If the Trustee is not [●], the notice address shall be

the address set forth in the Trust Agreement, or such other address or telecopy number as may hereafter be furnished to each party to the Trust Agreement in writing by the Trustee, (b) in the case of the Delaware Trustee, if the Delaware Trustee is [●], the notice address for the Delaware Trustee is [●].  If the Delaware Trustee is not [●], the notice address shall be the address set forth in the Trust Agreement, or such other address or telecopy number as may hereafter be furnished to each party to the Trust Agreement in writing by the Delaware Trustee, and (c) in the case of the Depositors, [●], or such other address or telecopy number as may hereafter be furnished to each party to the Trust Agreement in writing by the Depositors.  Any notice required or permitted to be mailed to a Trust Unit Holder shall be given by first-class mail, postage prepaid, or by express delivery service, at the address of such Trust Unit Holder as shown in the Unit Register.  Notice may also be delivered by email in accordance with a separate side letter agreement entered into between the parties.  Any notice so mailed within the time prescribed in the Trust Agreement shall be conclusively presumed to have been duly given, whether or not the Trust Unit Holder receives such notice.  A copy of any notice required to be telecopied hereunder also shall be mailed to the appropriate party in the manner set forth above.  A copy of any notice given hereunder to any other party shall be delivered to the Trustee.

### Section 9.05.  *Severability of Provisions.*

If any one or more of the covenants, agreements, provisions or terms of the Trust Agreement shall be for any reason whatsoever held invalid,  then to the fullest extent permitted by law such covenants, agreements, provisions  or terms shall be deemed severable from the remaining  covenants, agreements, provisions  or terms of the Trust Agreement and shall in no way affect the validity  or enforceability  of the other provisions  of the Trust Agreement or of the Trust Units or the rights of the Holders thereof.

### Section 9.06.  *Third-Party Beneficiaries.*

Syncora, the Trust Unit Holders and their successors and assigns shall be third-party beneficiaries of the provisions  of the Trust Agreement (inclding  these Standard Terms).  For the avoidance of doubt, beneficial holders of Trust Units are third party beneficiaries to the extent necessary to allow them to enforce the applicable  Syncora Insurance Policies as set forth herein.  Nothing  in these Standard Terms or the Trust Agreement, express or implied,  shall give to any Person, other than the parties hereto and their successors hereunder, and the Trust Unit Holders and Syncora, any benefit or any legal or equitable right, remedy or claim under the Trust Agreement (including  these standard terms).

### Section 9.07.  *Acts of Trust Unit Holders.*

Any request, demand, authorization,  direction, notice, consent, waiver or other action provided by the Trust Agreement (including  these Standard Terms) to be given or taken by Trust Unit Holders or a class of Trust Unit Holders may be embodied in and evidenced by one or more instruments of substantially  similar tenor signed by such Trust Unit Holders in person or by agents duly appointed in writing; and except as herein otherwise expressly provided such action shall become effective when such instrument or instruments  are delivered to the Trustee. Proof of execution of any such instrument or of a writing  appointing  any such agent shall be

sufficient for any purpose of the Trust Agreement (including these Standard Terms) and conclusive in favor of the Trustee. The fact and date of the execution by any Person of any such instrument or writing may be proved in any manner that the Trustee deems sufficient. The ownership of Trust Units shall be proved by the Unit Register.

### Section 9.08. *Headings.*

Section and subsection headings in these Standard Terms are included herein for convenience of reference only and shall not constitute a part of these Standard Terms for any other purpose or be given any substantive effect.

### Section 9.09. *No Waiver; Cumulative Remedies.*

No failure to exercise and no delay in exercising, on the part of any party of any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exhaustive of any rights, remedies, powers and privileges provided by law.

### Section 9.10. *Merger and Integration.*

These Standard Terms and the Trust Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and thereof, and all prior understandings, written or oral, are superseded by the Trust Agreement (including these Standard Terms).

### Section 9.11. *The Delaware Trustee*

(a) The Delaware Trustee is appointed to serve as the trustee of the Trust in the State of Delaware for the sole purpose of satisfying the requirement of Section 3807(a) of the Delaware Statutory Trust Act that the Trust have at least one trustee with a principal place of business in the State of Delaware. It is understood and agreed by the parties hereto that the Delaware Trustee shall have none of the duties or liabilities of the Trustee or any other trustees.

(b) The duties of the Delaware Trustee shall be limited to (i) accepting legal process served on the Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Delaware Secretary of State which the Delaware Trustee is required to execute under Section 3811 of the Delaware Statutory Trust Act. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Trust or the Trust Unit Holders, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Agreement. The Delaware Trustee shall have no liability for the acts or omissions of the Trustee or any other trustees.

(c) The Delaware Trustee may be removed by Syncora upon thirty days prior written notice to the Delaware Trustee. The Delaware Trustee may resign upon thirty days prior written notice to Syncora. No resignation or removal of the Delaware Trustee shall be effective except upon the appointment of a successor Delaware Trustee that (i) is reasonably

acceptable to Syncora, (ii) has a combined capital and surplus of at least $10,000,000 and (iii) is qualified to do business in the State of Delaware. If no successor has been appointed within such thirty (30) day period, the Delaware Trustee, Syncora or the Trust Unit Holders may petition a court to appoint a successor Delaware Trustee, which shall be at the expense of the party bringing the petition.

(d)  Any Person into which the Delaware Trustee may be merged or with which it may be consolidated, or any Person resulting from any merger or consolidation to which the Delaware Trustee shall be a party, or any Person which succeeds to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor Delaware Trustee under the Trust Agreement without the execution, delivery or filing of any paper or instrument or further act to be done on the part of the parties hereto, except as may be required by applicable law, provided that such resulting or successor entity otherwise satisfies the requirements set forth herein to serve as Delaware Trustee.

(e)  The Trust shall be responsible for the payment of any fees or expenses of the Delaware Trustee. The Delaware Trustee shall be entitled to all of the same rights, protections, indemnities and immunities under the Trust Agreement and with respect to the Trust as the Trustee; however, any such indemnification shall be made pursuant to the terms of a separate indemnification agreement and shall not be payable from the Trust Estate, except as expressly provided herein. No amendment or waiver of any provision of the Trust Agreement which adversely affects the Delaware Trustee shall be effective against it without its prior written consent.

# **ANNEX I**

INDEMNIFICATION PROVISIONS

## **EXHIBIT A**

NOTICE OF DRAW ON SYNCORA INSURANCE POLICY
[[NAME OF SERIES] SYNCORA CUSTODIAL TRUST]

## **EXHIBIT B**

FORM OF NOTICE OF MATURITY
[[NAME OF SERIES] SYNCORA CUSTODIAL TRUST]

## **EXHIBIT C**

FORM OF NOTICE OF NONPAYMENT
[[NAME OF SERIES] SYNCORA CUSTODIAL TRUST]

## **EXHIBIT D**

FORM OF DISTRIBUTION REPORTING NOTICE
[[NAME OF SERIES] SYNCORA CUSTODIAL TRUST]

STATEMENT AS OF [●], 20__