UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>        DEBTORS | PROMESA<br>TITLE III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA")<br><br>        DEBTOR | PROMESA<br>TITLE III<br><br><br>No. 17 BK 4780-LTS |

**OBJECTION TO THE "SEVENTH AMENDED TITLE III JOINT PLAN
OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO,
PUERTO RICO ELECTRIC POWER AUTHORITY, ET AL."**

TO THE HONORABLE COURT:

COMES NOW creditor, Ismael L. Purcell Soler, Alys Collazo Bougeois and the

community of property they compose (hereinafter "Movant"), in their own right and pursuant to

Fed. R. Bankr. P. 3020, present their objection to the Plan of Adjustment (the Plan) proposed by

the Financial Oversight and Management Board of Puerto Rico, filed on July 30, 2021 at Docket

No.17627. The Plan as filed is in contravention of the Taking Clause of the Constitution of the

United States and the Constitution of the Commonwealth of Puerto Rico as it impermissibly

subjects Movant's inverse condemnation claim by temporary condemnation to bankruptcy law

and unlawfully pretends to classify and treat their claim under the taking clause as subject to

discharge under Plan provisions. On those grounds, the Plan is unconfirmable under 11 U.S.C. §

944 as incorporated by Title III of PROMESA 48 U.S.C. §§2161-2177 and §314(3) of Title III

of PROMESA, 48 U.S.C. §2174, which requires that any plan of adjustment not be proposed in

contravention of any law. The Plan failed to classify "inverse condemnation claims by temporary

condemnation" and discriminates against Movant's temporary condemnation claim that is

pending valuation before state court since the plan pretends to treat said claim as unsecured

subject to discharge.

Ismael L. Purcell Soler, Alys Collazo Bougeois and the community of property they

compose are creditors of PREPAS's Title III proceedings under the Puerto Rico Oversight

Management and Economic Stability Act, "PROMESA" and states as follows for their objection

to PREPA's Seventh Amended Title III Joint Plan of Adjustment, filed on July 30, 2021 (the "Plan")

under PROMESA and the Bankruptcy Code provisions incorporated thereby, since the treatment of

their claim for the taking of its properties, without just compensation, as required by the Fifth

Amendment to the Constitution of the United States, is not dealt with under the Plan or otherwise

improperly dealt with there under. In support of its allegations, Movant most respectfully states,

alleges and prays as follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ismael L. Purcell Soler and Alys Collazo Bougeois, married to each other, acquired on

April 2004 the residential property located at Urb. Jacaranda, street C, C-5, Ponce, PR, 00730.

In the back of movant's residential property there was a retaining wall that collapsed in

1985 during the passage of a tropical storm. The collapsed retaining wall and the erosion of the

terrain in movant's residence caused property damage and exposure to PREPA's primary power

2

lines that resulted in a "State of Need or Emergency"; either the wall was rebuilt, and power lines removed or risk losing life and property.

The financial institution that financed the purchase of the property required the repair of the retaining wall. To that end, movant requested the corresponding construction permits and informed PREPA of a dangerous situation caused by several electric poles, transformer equipment and primary lines located on the same edge of the eroded slope of the terrain in the back of movant's residence. To deal with this situation, Mr. Purcell met with PREPA'S personnel and delivered letters, copies of drawing and permits for the construction work in PREPA's offices located in Ponce. Faced with the inaction of PREPA and the risk of loss of property during the approaching hurricane season, Mr. Purcell sought the assistance of former PREPA Southern Regional Director, Eng. Benjamín Morales. Mr. Morales instructed movant to send a copy of all relevant documents; letters, copy of plans, permits, insurance etc… to Eng. Iván Torres Torres, Administrator of Technical Operations for PREPA's Ponce Region.

In addition, Mr. Morales warned movant that conditions in their residence were of "extreme danger" and because of those circumstances; PREPA had to remove the primary lines, the electric pole and their equipment at its cost. Mr. Morales advised movant to request the intervention of the Office of the Citizen's Procurator (Ombudsman) in case PREPA refused to act.

On July 1, 2004, movant sent by certified mail to Engineer Iván Torres of PREPA a copy of the explanatory letters, blueprints, and specifications, in short, everything related to the reconstruction work. Several attempts of extortion by PREPA employees and the risk of loss of life and property led movant to request the intervention of the Office of the Citizen's Procurator.

The Office of the Procurator intervened and caused PREPA to appoint an employee to

3

inspect the situation alleged by movant. The lack of credibility of the report caused the Citizen Procurator's Office to require a joint ocular inspection with PREPA engineers. The ocular inspection was carried out on September 24, 2004 by Mrs. Antonia Rodríguez, of the Office of the Citizen's Procurator, and PREPA engineers, Mr. Eddie Oliveras and Mr. Héctor Colón.

As a result of the ocular inspection, PREPA finally acknowledged the situation of danger and agreed with Ms. Antonia Rodríguez Gómez, of the Office of the Procurator, as representative of petitioner pursuant to Law 134 of June 30, 1977, as amended (2 L.P.R.A. § 701-727), the following:

a) PREPA had to install a metal pole in a lower land lot located behind the new retaining wall.

b) PREPA would relocate the lines to the new electric pole prior commencement of work.

c) PREPA would contact Choice and PRTC to have them remove their lines and equipment from the pole prior to taking away the post from residence C-5.

d) Movant would modify the design of the retention wall and complete all work prior to removal of old electric pole by PREPA.

PREPA failed to comply with the agreements reached with the Office of the Citizen's Procurator.

In March 2011 movant was informed of PREPA's violation of the easement's limits and Movant's property rights.

The Office of the Procurator once again intervened, requiring PREPA to conclude and comply with the 2004 agreement. PREPA ignored the Office of the Procurator. In view of this situation, on October 18, 2011 a letter was sent to the PREPA by certified mail requesting compliance or in the alternative, notifying movant's intention to file a lawsuit.

On September 26, 2012, movant filed a civil action against PREPA, PRTC-CLARO and

4

CHOICE CABLE TV, civil case: JDP 2012-0406.

On December 12, 2012, PREPA presented its response to the complaint. As part of the discovery process, movant provided PREPA with a survey report confirming that their property contravened the "Access Easement" area that burdened movant's residence and **therefore constitutes an unauthorized occupancy or taking of movant's property**. In response, PREPA conducted an ocular inspection of the property and the easement in dispute. As a result of said inspection, Mr. Luis R. Soto Vega, prepared an expert report for PREPA dated January 30, 2014.

The report prepared by Eng. Luis R. Soto Vega acknowledged that **PREPA'S electric pole and equipment infringed the limits of the easement**. It concludes the said equipment was installed outside the ten-foot zone established in the deed of constitution of easement. However, Eng. Luis R. Soto Vega invoked as a defense or justification for PREPA'S actions, the acquisition of the area used in violation of the limits of the easement by "acquisitive prescription" pursuant to Law 143 of July 20, 1979, as amended, 27 L.P.R.A. § 2151-2155.

On April 12, 2014, PREPA filed a counterclaim against movant. PREPA alleged that movant had constructed a retaining wall in their residence without their knowledge and consent, depriving PREPA from the rights provided by the public service easement.

On May 5, 2015 movant received their expert's report prepared by Eng. Benjamin Morales. The report corroborated among other things, that PREPAS electric poles and its parts were substitutes located outside the access easement area, in contravention of movant's property rights. It points out that the access easement had been renounce by PREPA as result of the relocation of other electric poles and its equipment from their original locations in land lot C-2, C-3, C-5 and C-6. It also concluded that the twenty-year acquisitive prescription period required by Law 143 of July 20, 1979 never consummated in favor of PREPA and **more important, the**

5

**electric pole current location, its parts and equipment represents an infraction of
"clearance standards" set forth in the National Electric Security Code (NESC), adopted by
PREPA's regulation titled "Urban Distribution Standard Manual" or "Manual de Normas
de Distribución Urbana", specifically standard M 23-1**. Clearance standards refer to the
required separation or clear distance between distribution lines and other surfaces to ensure
public or general safety.

The report also indicates that installation of electric lines in the electric pole's current
location would create a trajectory that contravenes National Electric Security Code clearance
standards as well PREPA's own regulation, endangering the life of residents due to lack of
separation between the lines and existing structures in movant's as well as neighbor's residence.

During June 2015 movant received from the Ponce Construction Permit Office a copy of
a letter issued by PREPA, signed by Eng. Iván Torres Torres, directed to the permit's office
manager responsible for the approval of the construction of the retaining wall in movant's
residence. In this letter PREPA admits having relocated the original electric pole and its
equipment in 1985, knowing of the danger in movant's residence as result of a joint inspection
with the Ombudsman, requiring certain modifications to the drawings and consenting
construction of the retaining wall.

On August 26, 2015 movant filed a Motion requesting Summary Judgment.
Approximately one year and nine months elapsed without PREPA opposing the request for
summary judgment in accordance with Rule 36 of Civil Procedure on summary judgment.

On May 24, 2017, the Honorable Court issued a Partial Summary Judgment. The court's
partial judgment dismissed the counterclaimed filed by PREPA and denied judgment in favor of
movant until an evidentiary hearing for compensation takes place. The Court's conclusions of

6

fact and law established, among other, the following:

    - PREPA's electric pole, its parts and equipment were located outside the easement limits and its current location constitutes an illegal use of movant's property. - PREPA had knowledge of the dangerous circumstances and consented construction of the retaining wall. - PREPA admitted having relocated its property in 1985 in contravention of easement variation guidelines established in the deed of constitution of public easement. -PREPA did not acquire movant's property through "acquisitive prescription" established in Law 143 of July 20, 1979, as amended, 27 L.P.R.A. § 2151-2155. The twenty-year period had not elapsed in favor of PREPA.

    On June 1, 2017, PREPA filed a Motion for Reconsideration. On June 8, 2017, the Motion for Reconsideration was "Denied" by the Court of First Instance. On July 18, 2017 PREPA filed their appeal before the Puerto Rico Court of Appeals case no. KLAN 2017-01020.

    On June 30, 2016, Law114.187, known as the Puerto Rico Oversight Management and Economic Stability Act (PROMESA) was enacted, 48 USC § 2101 et seq.

    On July 2, 2017, Debtor, Puerto Rico Electric Power Authority by its representative and pursuant to section 315 of the Puerto Rico Oversight, Management, and Economic Stability Act (hereinafter "PROMESA"), the Financial Oversight and Management Board for Puerto Rico filed a voluntary petition in the United States District Court for the District of Puerto Rico under Title III of PROMESA seeking relief from creditors.

    On July 19, 2017, PREPA filed a motion before the Puerto Rico Court of Appeals requesting the automatic stay of the proceedings in case: KLAN2017-01020 pursuant to sections 362(a) and 922(a) of the Bankruptcy Code, as incorporated by reference under section 301(a) of PROMESA.

    On December 27, 2017 the Puerto Rico Court of Appeals, after consideration of several

motions for dismissal and request for continuation of the proceedings under the principles set

forth in Carley Capital Group, et al., Appellants, vs. Fireman's Fund Insurance Company, 889

F.2d 1126 (D.C. Cir. 1989) and Trans- Caribbean Lines vs. Tacor Marines, 49 B. R. 360 (Bankr.

S. D. Fla. 1985), issued a judgment staying the appeal process.

On June 5, 2018, in compliance with the case management order and pursuant to

Paragraphs III.Q and III.U of Section III (Scheduling) of the Case Management Procedures, as

amended by Order Further Amending Case Management Procedures (docket no. 1512), and

subject to Paragraphs III. F and III.T, Movant contacted counsel for the Oversight Board and

AAFAF by electronic mail to advise them of the movant's intent to seek relief from the

automatic stay provisions of Section 362 (a) of the Bankruptcy Code. On September 12, 2018

movant filed a "Motion for Relief from Stay".

On November 9, 2018 the Honorable Court entered an Order; the "Sixth Omnibus Order

Granting Relief from the Automatic Stay". Pursuant to the Sixth Omnibus Order, movant

requested the Puerto Rico Appeals Court to continue the appeal process.

On April 25 2019, the Appeals Court entered judgment ratifying the partial summary

judgment of the Court of First Instance dismissing PREPAS counterclaim, adopting the inferior

court determinations of fact and ratifying among other determinations that PREPA relocated its

equipment to movant's property without authorization, illegally occupying said property since

relocation remained outside the limits of the access easement and burdening movants property

rights with restrictions imposed by state and the National Electric Security Code regulations.

Finally, the court determined that PREPA in 2004, by admission of their Regional Supervisor,

Ing. Iván Torres, voluntarily and permanently abandoned the access easement. Tree Certioraris

were filed before the Supreme Court of Puerto Rico, all were denied by the Court.

8

The Appeals Court remanded the case to the inferior court for continuation of process and determination of just compensation. Determination of just compensation for the taking of private property is governed by section 2909 of Puerto Rico's Eminent Domain Law, 32 LPRA § 2909; which establishes the procedure and responsibilities that must be complied with when the State temporary occupies or takes possession of private property, known as "temporary condemnation".

On August 3, 2020 a status conference was held by the Court of First Instance. At that time movant requested permission to amend the complaint in compliance with the stipulation reached before the bankruptcy court and the order imparted by the Appeals Court instructing to adhere to the "Sixth Omnibus Order". The amendment reproduced the original allegations in the complaint with the exception that the amounts claimed were updated based on the Puerto Rico's Eminent Domain Law, 32 LPRA § 2909 contained in the stipulation approved by the "Sixth Omnibus Order".

On January 7, 2021 the Court of First Instance allowed the amendment to the Complaint.

On March 19, 2021 PREPA filed a CERTIORARI before the Puerto Rico Court of Appeals questioning the amendment to the complaint.

On June 2, 2021 the Appeals Court revoked the inferior court resolution granting the amendment to the complaint and referred movant to Bankruptcy Court for corresponding process. The Appeal Court reasoned that the lift of stay was granted by Hon. Judge Swain based on the information contained in the original complaint and the stipulation executed by the parties, hence since the amendment to the complaint contains different numbers or balances, the amendment should have been approved by the Bankruptcy Court before it was granted by the Court of First Instance.

9

On June 14, 2021 Movant filed a Motion for Reconsideration before the Puerto Rico
Court of Appeals.

On August 25, 2021 movant was notified of the "Fifteenth Notice of Transfer of Claims
to Alternate Dispute Resolution" filed August 13, 2021 before the District Court.

On September 29, 2021 movant was notified the "Sixteenth Notice of Transfer of Claims
to Alternate Dispute Resolution" filed September 27, 2021 before the District Court.

To this date we have not been contacted by any representative of PREPA in accordance
with the terms indicated in the ADR Procedures approved by Hon. Judge Sarah Taylor Swain.

## II.    SUMMARY OF THE ARGUMENT

This objection to the Plan of Adjustment seeks that the Court grants the objection and
denies confirmation of the Plan after a finding that the inverse condemnation claim for just
compensation owed by PREPA to Movant is non-dischargeable and unimpaired by the filing of
this Title III proceeding and the application of bankruptcy law incorporated by PROMESA.
Movant's claim should be excluded from the Plan of Adjustment since they involve judicially
adjudicated violations of Movant's "proprietary rights" through partial summary judgment
affirmed by the Puerto Rico Court of Appeal, subject to Certiorari denied tree times by the
Supreme Court of Puerto Rico and pending valuation of just compensation under the protection
afforded by the Takings Clause of the Fifth Amendment of the Constitution of the United States
and Article II Section 9 of the Constitution of Puerto Rico.

The Plan failed to classify "inverse condemnation actions", however it seems to pretend
to classify movant's claim as an unsecured Eminent Domain claim, Class 54, and proposes to
pay according to class 58, a percentage of the debt owed (50%) by PREPA for violation of
claimant's proprietary and constitutional rights under the Taking Clause of the Fifth Amendment

10

of the Constitution of the United States and Article II, Section 9 of the Constitution of Puerto

Rico. In light of the above the Plan of Adjustment proposed for the Commonwealth and PREPA

on July 30, 2021 cannot be confirmed by the Court unless it is amended to either exclude

Movant's inverse condemnation from the Plan; authorize payment in full or classify movant's

claim in a different class as a non-dischargeable claim surviving this proceedings to be paid in

full as required by Puerto Rico's Eminent Domain Law, 32 LPRA § 2909 which establishes the

procedure and responsibilities that must be complied with when the State temporary occupies or

takes possession of private property, known as "temporary condemnation".

### III. DISCUSSION:

**A. Movant's inverse condemnation action seeking just compensation from PREPA should
not be subject to the Plan of Adjustment under Title III of PROMESA since its inclusion is
contrary to the Fifth Amendment of the Constitution of the United States and Article II,
section 9 of the Constitution of the Commonwealth of Puerto Rico.**

The Takings Clause of the Fifth Amendment mandates that *"private property [shall not]*

*be taken for public use, without just compensation."* U.S. Const. amend. V. This amendment is

made applicable to the states, and thus to municipalities, through the Fourteenth Amendment.

U.S. Const. amend. XIV. *In re City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014)*

citing *Dolan v. City of Tigard, 512 U.S. 374, 383, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994)*

The Fourteenth Amendment of the United States Constitution provides that *"nor shall*

*any State deprive any person of life, liberty, or property, without due process of law."*

(Emphasis added). U.S. Const. amend. XIV. The limitations of the Fifth Amendment also apply,

through the Due Process Clause of the Fourteenth Amendment, to takings by state governments

and their subdivisions. See, e.g., *Lucas v. S.C. Coastal Council, 505 U.S. 1003(1992).*

11

The Supreme Court has stated that "Puerto Rico is subject to the Due Process Clause of either the Fifth or the Fourteenth Amendment". _Posadas de Puerto Rico vs. Tourism Co. of Puerto Rico,_ 478 US 328, 331 n.1 (1986). In _Torres vs. Puerto Rico_, 442 US 465 (1979), Justice Brennan's concurrent opinion states that "whatever the validity of [the Insular Cases when] ...they were decided, these cases are clearly not authority for questioning the application of the Fourteenth Amendment, or any other provision of the Bill of Rights to the Commonwealth of Puerto Rico", _Torres_, 442 US at 475-76.

Consequently, it is unquestionable that the Fifth Amendment is also applicable to the Commonwealth of Puerto Rico through the Fourteenth Amendment and that it mandates that private property shall not be taken for public use without just compensation. _Tenoco Oil Co.  Inc. v. Department of Consumer Affair_, 876 F.2d 1013, 1017 n.9 (1st Cir. 1989)

In _First English Evangelical Lutheran v. Los Angeles_, 482 U.S. 304, 315-16 (1987), the Supreme Court of the United States stated regarding the Fifth Amendment:

This basic understanding of the Amendment makes clear that it is designed not to limit the governmental interference with property rights _per se,_ but rather to secure _compensation_ in the event of otherwise proper interference amounting to a taking. Thus, government action that works a taking of property rights necessarily implicates the "constitutional obligation to pay just compensation." _Armstrong v. United States_, 364 U.S. 40, 49 (1960).

We have recognized that a landowner is entitled to bring an action in inverse condemnation as a result of "the self-executing character of the constitutional provision with respect to compensation." _United States v. Clarke_, 445 U.S. 253, 257 (1980), quoting 6 P. Nichols, Eminent Domain § 25.41 (3d rev. ed.1972).

The Supreme Court of the United States has addressed the takings issue in the context of bankruptcy on several occasions, holding each time that the bankruptcy power is limited by the Fifth Amendment; hence Congress under its bankruptcy powers may not pass laws effecting a

12

taking of property without just compensation in violation of the taking clause. See *United States vs. Security Indus. Bank*, 459 U.S. 70, 75, 78 (1982); *Wright v. Vinton Branch of Mtn. Trust Bank*, 300 U.S. 440, 456-58 (1937); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589 (1935).

The protections afforded by the Fifth Amendment are not abrogated by the Bankruptcy Code. The legislative history of the Bankruptcy Code indicates that the drafters of the Bankruptcy Code considered the Fifth Amendment to be a limitation upon the impairment of property rights in bankruptcy, and current bankruptcy law gives great deference to property rights. Julia Patterson Forrester, Bankruptcy Takings, 51 Fla. L. Rev. 851, 863 (Dec. 1999).

Congress may not pass laws under its bankruptcy power that would affect a taking of private property without just compensation. U.S. v Security Industrial Bank, 549 U.S. 70 (1982) (Citing Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, (1935). In Louisville Joint Stock Land Bank, Justice Brandeis stressed the importance of preserving the Fifth Amendment despite times of hardship.

Although Congress may authorize PREPA to impair obligations in its Title III bankruptcy, it may not authorize the taking of private property without just compensation in violation of the Fifth Amendment. U.S. v Security Industrial Bank, supra

The Supreme Court has frequently repeated the view that, in the event of a taking, the compensation remedy is required by the Constitution. *First English Evangelical Lutheran v. Los Angeles, supra.*

That is, the right to a just compensation is not merely a right that is enjoyed by the person whose property was taken, but a constitutional obligation to pay; a property owner has a

13

constitutional claim for just compensation. *Jacobs v. U.S.*, 290 U.S. 13, 16 (1933), *First English*

*Evangelical Lutheran v. Los Angeles, supra.*

As in the Constitution of the United States, the Constitution of the Commonwealth of

Puerto Rico in its Article II Section 9, provides that "private property will not be taken for public

use unless it is by the payment of just compensation".

The Civil Code of Puerto Rico, 31 LPRA § 1113 states:

"No person shall be deprived of his ownership except it be by a competent authority and for
justified purpose of public utility or social benefit, and upon payment of just compensation
which shall be fixed in the manner provided by law."


The only limitations to the power of expropriation of the State are to pay just

compensation and to act in the form provided by law. ELA v. Soc. Coop. Agrícola e Industrial

Sucesión J. Serrallés y otros, 104 DPR 392 (1975).

The Supreme Court has consistently held that bankruptcy laws are subject to the

Constitution, and thus to the prohibition against the government's taking of private property

without just compensation. The bankruptcy power, like the other great substantive powers of

Congress, is subject to the Fifth Amendment. In re City of Detroit, 524 B.R. 147, 268 (E.D. MI.

2014)

In the exercise of the power of eminent domain of the State, there are exceptional cases in

which the State can occupy or seize a real right without having initiated the compulsory

expropriation judicial procedure and without having paid the fair compensation. It is precisely

for these extraordinary cases of physical seizure or taking of a real right without previous deposit

of a just compensation that the action for "inverse condemnation" has been established. Heftler

International, Inc. v. Planning Board, 99 P.R.R. 454, 460 (1970)

On June 21, 2019, the Supreme Court in *Knick v. Township of Scott, Pennsylvania*, 588 U.S.;

14

139. S. Ct. 2162; 204 L. Ed. 558 (2019), Case No. 17—647, recognizing the applicability of the Fifth Amendment to inverse condemnation proceedings, categorically stated that a property owner has an actionable Fifth Amendment takings claim when the government, be it federal or state, takes his property without paying for it, the Fifth Amendment right to full compensation arising at the time of the taking, as held in the Judgment, regardless of post taking remedies that may be available to the property owner.

In the case at hand, PREPA occupied Movant's property and continues to do so to this date without following condemnation procedures set forth in Puerto Rico's Eminent Domain Law 32 L.P.R.A. § 2909. The Puerto Rico Court of Appeals (KLAN2017-01020) entered judgment ratifying the Court of First Instance's partial summary judgment and its determinations of fact establishing that PREPA relocated in 1985 its equipment into movant's property without authorization, illegally occupying said property to this date since relocation was executed outside the limits of the access easement, burdening movant's property rights with restrictions imposed by PREPA's and the National Electric Security Code regulations. Finally, the Appeals Court determined that PREPA in 2004, by admission of their Regional Supervisor Ing. Iván Torres, voluntarily and permanently abandoned the access easement in their favor.

Any final judgment after appeal that may be entered in case JDP 2012-04062, must be excluded from the plan of adjustment, and satisfied in full. Anything short of full payment thereof would deprive Movant of their constitutional right to just compensation in violation of the Fifth Amendment.

Therefore unless the Plan of Adjustment is amended to exclude Eminent Domain claims or Inverse Condemnation claims in compliance with the United States Supreme Court's stance holding each time that the bankruptcy power is limited by the Fifth Amendment and the legislative history of the Bankruptcy Code which indicates that the drafters of the Bankruptcy

15

Code considered the Fifth Amendment to be a limitation upon the impairment of property rights

in bankruptcy; the Plan of Adjustment must not be confirmed by the court since it is contrary to

the Fifth Amendment of the Constitution of the United States, Article II Section 9 the

Constitution of Puerto Rico and the constitutional rights of claimants.

**B)      Classification of Eminent Domain claims and any intention to include Inverse
Condemnation claims under Eminent Domain or any other definition contemplated by
PROMESA in the plan of adjustment, as unsecured dischargeable claims fail to comply
with the Constitutional mandate of just compensation rendering Movant inadequately
compensated, thus infringing the United States and the Commonwealth Constitution.**


It is unquestionable that PREPA through its interpretation of Law 143 of July 20, 1979,

as amended, 27 L.P.R.A. § 2151-2155 and relocation of its equipment in movant's property

without authorization and payment effectuated a taking of property within the scope of the Fifth

Amendment of the Constitution of the United States, Article II, Section 9, of the Constitution of

Puerto Rico and Puerto Rico's Eminent Domain Law, 32 L.P.R.A. § 2901 et seq.

Civil Code of Puerto Rico, 31 LPRA § 1113 commands that, however great the nation's

need, private property shall not be thus taken even for a wholly public use without just

compensation. 295 U.S. at 602.

The Civil Code of Puerto Rico, 31 LPRA § 1113 states:

"No person shall be deprived of his ownership except it be by a competent authority and for
justified purpose of public utility or social benefit, and upon payment of just compensation
which shall be fixed in the manner provided by law."

The only limitations to the power of expropriation of the State are to pay just

compensation and to act in the form provided by law. ELA v. Soc. Coop. Agrícola e Industrial

Sucesión J. Serrallés y otros, 104 DPR 392 (1975).

The Code of Civil Procedure of Puerto Rico, which encompasses Puerto Rico's Eminent

16

Domain Law, 32 L.P.R.A. § 2901 et seq., states at section 2901:

"No person shall be deprived of his property, either in whole or in part except in accordance with
the provisions of § 1113 of Title 21 and of § 2901- 2913 of this title."

Section 2909 of the Puerto Rico's Eminent Domain Law, applicable to the facts asserted

by Movant against PREPA, establishes the procedure and responsibilities that must be complied

with when the State temporary occupies or takes possession of private property, known as

"temporary condemnation". This section requires the State to pay just compensation for the

temporary occupancy from the day it took possession of the property. Section 2909 states:

"(1) In any proceeding heretofore or hereafter instituted in any court of Puerto Rico for
the condemnation of any property or any permanent or temporary interest or easement therein,
the plaintiff, upon the filing of the petition, or at any time while the proceeding is pending,
without regard to whether or not title has been taken under § 2907 of this title, may take
possession of the property or any part thereof to the extent of the interest to be acquired, and may
proceed with such use thereof or such works thereon or therewith as have been authorized by
law.

(2) Prior to the taking of such possession, provision shall have been made for the payment of just
compensation for said possession for such period as same shall continue, as estimated by said
plaintiff, either by previous appropriation by the Legislature, or, if funds are to be provided
otherwise than from the Treasury of Puerto Rico, by the deposit in court of moneys in such
amount as shall be estimated by the plaintiff to be just compensation for said possession. The
defendant or defendants may move at any time in the court to increase or change the amount of
said deposit and the court shall make such order as shall be just in the premises and as shall
adequately protect the defendant. The court shall have power to issue such orders as may be
necessary to enforce the right of the plaintiff to the possession.

(3) Compensation for use of the property in advance of or without taking title while the
proceeding is pending, shall be paid on a monthly or quarterly or other periodic rental basis as
long as such possession endures, or in a lump sum, and said compensation shall be subject to
abatement for any benefits, use, income, rents, or profits derived from the property by the owners
during the period of possession.

(4) The compensation for a period of possession without taking title may be fixed by agreement
or determined tentatively by the plaintiff and paid according to such agreement or determination,
and in the absence of agreement, just compensation for such period of possession shall be
ascertained and awarded in the proceeding, and established by the judgment therein, and may be
less or more than the amount tentatively determined, and an addition to or set-off against the
amount finally awarded as compensation for the taking may be made in order to adjust any

17

excess or deficiency in the amount paid for a period of temporary possession.

(5) No action shall be taken under the provisions of this section unless the head of the executive department or government agency, bureau, or instrumentality empowered to acquire the property, certifies that in his opinion the compensation definitely fixed under this section shall be within any limit prescribed by the Legislature of Puerto Rico in connection with the price or amount to be paid."

In the exercise of the power of eminent domain of the State, there are exceptional cases in which the State can occupy or seize a real right without having initiated the compulsory expropriation judicial procedure and without having paid the fair compensation. It is precisely for these extraordinary cases of physical seizure or taking of a real right without previous deposit of a just compensation that the action for "inverse condemnation" has been established. Heftler International, Inc. v. Planning Board, 99 P.R.R. 454, 460 (1970). It is called inverse because it is brought by the owner of the property against the State to obtain the compensation to which he is entitled. ELA. v. Northwestern Const., 103 D.P.R. 377 (1975).

The inverse action guarantees the State's compliance with the constitutional provisions that no one shall be deprived of his property without due process of law and without having mediated compensation. Demetrio Emilio Amador Roberts *et al.*, v. ELA de Puerto Rico, 191 DPR 268 (2014)

The Supreme Court in *Knick v. Township of Scott, Pennsylvania*, 588 U.S.; 139. S. Ct. 2162; 204 L. Ed. 558 (2019), Case No. 17—647, **recognized the applicability of the Fifth Amendment to inverse condemnation proceedings.** (Emphasis added)

It has been established at least since Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933), that claims for just compensation are grounded in the Constitution itself:

"The suits were based on the right to recover just compensation for property taken by the United States for public use in the exercise of its power of eminent

18

domain. *That right was guaranteed by the Constitution.* The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim. The form of the remedy did not qualify the right. It rested upon the Fifth Amendment. Statutory recognition was not necessary. A promise to pay was not necessary. Such a promise was implied because of the duty to pay imposed by the Amendment. *The suits were thus founded upon the Constitution of the United States.*" *Id.,* at 16, 54 S. Ct., at 27. (Emphasis added.)

In re City of Detroit, 524 B.R. 147,268 (E.D. MI. 2014), addressed, among other matters, an instance in which creditors claimed that their credit could not be discharged because its origin was a taking claim filed against the city. The court held that bankruptcy proceedings are subject to the Fifth Amendment and reasoned that if confirmed, the plan would deny just compensation allowing the City to impair the property owner's constitutional claim for just compensation after the City took their property. Thus, as was proposed, the confirmation of the City's plan would violate the Fifth Amendment. To avoid such constitutional violation, the Court in in re City of Detroit, supra, exercised its authority pursuant to 944 (c) (1) of the Code and excepted the payments pursuant to the Taking Clause from discharge upon confirmation of the plan.

*City of Detroit* decided prior to *Knick v. Township of Scott,* supra, must now be read in light of the unequivocal mandate of *Knick,* as discussed above, particularly when its reliance on *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172 (1985), is no longer good law as overruled by *Knick.*

Consequently, the alternative utilized in *City of Detroit* determining the Takings Clause claims as non-dischargeable is not available here, since *Knick* categorically holds that "Contrary to *Williamson County*", on which Judge Steven Rhodes relied, "a property owner has a claim for a

19

violation of the Takings Clause as soon as the government takes his property for public use without paying for it. The Takings Clause provides '[N]or shall private property be taken for public use, without just compensation'. It does not say 'Nor shall private property be taken for public use, without an available procedure that will result in compensation'. If a local government takes private property without paying for it, that government has violated the Fifth Amendment---just as the Takings Clause says---without regard to subsequent state court proceedings." …. *Knick* at page 3.

The Supreme Court in *Knick*, referring to the decision of *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304 (1987), decided two years after *Williamson County*, holding that a property owner acquires an irrevocable right to just compensation immediately upon a taking, assented to a position taken by Justice Brennan earlier while disserting in *San Diego Gas & Elec. Co. v. San Diego*, 450 U.S. 621 (1981), where Justice Brennan explained that "once there is a 'taking' compensation must be awarded" because "[a]s soon as private property has been taken, whether through final condemnation proceedings; occupancy, physical invasion, or regulation, the landowner has already suffered a constitutional violation". *Knick* at page 4.

In the case at hand, PREPA occupied Movant's property and **continues to do** so without following condemnation procedures set forth in Puerto Rico's Eminent Domain Law 32 L.P.R.A. § 2909.

The right to seek just compensation from PREPA for occupancy or taking of Movants property represents an inverse condemnation afforded protection by the Fifth Amendment, therefore should not be abrogated by the Bankruptcy Code.

As currently proposed, the Plan of Adjustment fails to exclude Eminent Domain claims and more important "inverse condemnation" claims from the Plan of Adjustment required by bankruptcy rules made applicable through section 301 of title III of PROMESA, fails to pay in

20

full Movant's inverse condemnation claims owed by PREPA and fails to classify claims under said category as non-dischargeable. The Plan classifies Eminent Domain claims as part of Class 54, is silent about inverse condemnation claims but proposes to pay according to class 58 only 50% of the debt owed to Movant by PREPA. Those claims under the Eminent Domain class 54 are treated as general unsecured claims against PREPA, subject to discharge under 11 U.S.C. § 944 (b) as incorporated by Section 301 of Title III of PROMESA, 48 U.S. C. §2161.

Moreover, Movant's Claim is not subject to be classified under Class 54 of the Plan to be paid according to General Unsecure Claim in view of the mandate of Section 1122(a) of the Bankruptcy Code as to Classification of Claims or Interests, made applicable to the captioned Title III Case by Section 301 of PROMESA, since Section 1122(a) states "except as provided in section (b) of this section (inapplicable here), a plan may place a claim... in a particular class **only if such claim... is substantially similar to the other claims... of such class**". The Claim does not fit this mold.

Different from General Unsecured Claims, Movant's claim is not subject to a discharge inasmuch as it constitutes a money award for a Takings Action under the Fifth Amendment

Through the proposed plan, Movant would not receive just compensation as required by Puerto Rico's Eminent Domain Law, 32 LPRA § 2909 and under Law 12 art. 9 section (e) enacted December 10, 1975, <u>for property taken and currently under illegal occupancy by PREPA.</u> Under the abovementioned constitutional amendments and statutes, Movant's are entitled to receive as just compensation a statutory percentage of the value of the occupied property, legal fees, cost and compensation for damages suffered by the property during the occupation. In fact, the proposed plan would leave Movant with inadequate compensation from PREPA in violation of the Fifth Amendment of the Constitution of the United States, the

21

Constitution of Puerto Rico and Puerto Rico's Eminent Domain Law, 32 LPRA § 2909.

Therefore, since the Constitution requires that the remedy be just compensation and the Plan precludes said remedy by allowing partial payments and discharge of amounts owed to Movant, the Plan of Adjustment infringes the Taking Clause of the Fifth Amendment of the Constitution of the United States, Art 9 of the Constitution of Puerto Rico, Puerto Rico's Eminent Domain Law, 32 LPRA § 2909 and as such, the Plan of Adjustment is unconfirmable under section 314(3) of PROMESA **which requires that any action proposed by a plan is not prohibited by law.** (48 USC § 2174)

**C) Insertion of Eminent Domain or Movant's inverse condemnation claim under said class in the Plan of Adjustment based on the Rules of Bankruptcy Procedures, as incorporated by Section 301 of Title III of PROMESA, represents a discriminatory action and deprivation of "equal protection" against Movant and any other American citizen whose property has been subject to a "taking" by PREPA.**

The Equal Protection Clause is part of the first section of the Fourteenth Amendment to the United States Constitution. Section 1 of the Fourteenth Amendment:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

As we indicated, the Supreme Court stated in Posadas de Puerto Rico, supra "Puerto Rico is subject to the Due Process Clause of either the Fifth or the Fourteenth Amendment". 478 US 328, 331n.1 (1986). Including eminent domain and inverse condemnation actions as a claim under the Adjustment Plan collides with the principles of the Fifth Amendment applied through the Fourteenth and the doctrine of the US Supreme Court that has recognized that Bankruptcy Law is limited by the protection of said amendment in accordance with the intention of Congress to exclude taking of property from the scope of the Bankruptcy Law.

These principles that protect citizens from "state action" in the Fifth and Fourteenth Amendment were fundamental for the Court to ratify the exclusion of inverse condemnation actions from the Plan of Adjustment in In RE Detroit, supra.

The plaintiffs 'case consists of a claim against PREPA for occupying movant's property without authorization as recognized by the Court of Appeals, case number: KLAN2017-01020 and without paying just compensation.

We have not found in PROMESA any provision that allows a conclusion that Congress intent with the application of the Bankruptcy Law and the Plan of Adjustment was to discriminate against American citizens who own property on the island subject to inverse condemnation actions. PROMESA does not provide an exception that allows the deprivation of the constitutional right to the "equal protection of the law" that is manifested by the constitutional amendments and the judicial doctrines discussed and that were available to American citizens in the Detroit case.

Including Eminent Domain or inverse condemnation actions in the Adjustment Plan results in unjustified and discriminatory treatment against Movant and any American citizen who owns property subject to a taking; especially when PREPA has included cases in its list of creditors subject to the Bankruptcy Law, as incorporated by PROMESA and then exempted from the plan after having paid just compensation. This was the case of Antonio Fuentes Gonzalez, María Ivonne Viguie Fernandez and the conjugal partnership constituted by them vs. Puerto Rico Electric Power Authority, claim 17737.

There is no cause or legal rationale to conclude that PROMESA, the Bankruptcy Law and the Adjustment Plan, allows for a different discriminatory treatment against Movant; owners of property subject to inverse condemnation, in violation of their constitutional rights under "equal

23

protection" of the Fourteenth Amendment, the fifth amendment of the Constitution of the United States and Article II, Section 9 the Constitution of Puerto Rico.

**WHEREFORE**, Ismael L. Purcell Soler, Alys Collazo Bougeois and the community of property they compose requests that its objection to the Plan, as set forth above, be granted by the Court and that its confirmation be denied, absent an amendment to the same to exclude Movant's inverse condemnation action from the Plan of Adjustment because the provisions of the Bankruptcy Code on which the Plan relies for the treatment of their Claim are contrary to the Constitution, as applied thereto, since they infringe the Fourteenth and Takings Clause of the Fifth Amendment. In the alternative, this Court may, pursuant to Section 1122(a) of the Bankruptcy Code direct the Commonwealth to classify the Claim in a different Class under the Plan providing for its full payment as an unimpaired claim, as is the case of the millions of dollars paid and to be paid in administrative expenses in the captioned case.

CERTIFICATE: I hereby certify that on this same date, I have filed the forgoing with the United District Court for the District of Puerto Rico, have notified the Office of the United States Trustee, as indicated in the "Notice of Approval of Disclosure Statement, (II) establishment of Record Dates, and procedures for Objection to confirmation of the Plan of Adjustment" and attorney of record Hermann D. Bauer, hermann.bauer@oneilborges.com.

RESPECTFULLY SUBMITTED.

In Ponce, Puerto Rico, this 12 of October 2021.

ISMAEL L. PURCELL SOLER
RUA- 12894
URB. JACARANDA
35271 CALLE CLAVELINA
PONCE, PUERTO RICO 00730
TEL. (787) 481-4540
E-mail: pfpurcell2000@yahoo.com

24