**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| AMERINATIONAL COMMUNITY SERVICES, LLC and CANTOR-KATZ COLLATERAL MONITOR LLC,<br>Movants,<br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>Respondent. | |

**FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO'S OPPOSITION TO DRA PARTIES' MOTION *IN LIMINE*
TO EXCLUDE CERTAIN OPINIONS OFFERED BY DEBTORS' EXPERT WITNESS
<u>MARTI P. MURRAY</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), for itself and as Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), pursuant to § 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this opposition to *The DRA Parties' Motion In Limine to Exclude Certain Opinions Offered by Debtors' Expert Witness Marti P. Murray* [ECF No. 18342] (the "Motion"), filed by Movants AmeriNational Community Services, LLC (the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company (the "Collateral Monitor" and, together with the Servicer, collectively, the "DRA Parties").

## PRELIMINARY STATEMENT

1. Expert reports allow the fact finder to better understand complex subjects before applying the law to the facts. The Federal Rules of Evidence permit experts to testify in the form of opinions, while other witnesses are generally confined to testifying to facts from personal knowledge or hearsay exceptions. In fact, the Court often *requests* that experts offer factual analysis and opinions to aid their legal determinations.

2. Ms. Murray was retained by the Oversight Board to draft a report (the "Report") [ECF No. 18097-1] analyzing financial implications of key details of the Oversight Board's *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "Plan") [ECF No. 17627]. Presumably disagreeing with portions of her opinion regarding settlements underlying the plan, the DRA Parties filed this Motion objecting to her statement that such settlements are reasonable, but dress up their complaints as an attempt to preserve the Court's dominion over determinations of law. Significantly, the DRA Parties ignore the distinction

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

between Ms. Murray's opinion on the one hand that the settlements are reasonable financial compromises among sophisticated financial creditors and the debtors, and the Court's ultimate legal determinations that the settlements are above the lowest level of the reasonableness range as a matter of law. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (enumerating factors that a bankruptcy judge should consider when forming "a full and fair assessment of the wisdom of the proposed compromise.").

3. Contrary to their claims, Ms. Murray did not "usurp" the Court. Her opinion is grounded in factual analysis and supported by her extensive experience in bankruptcy and restructuring. Instead of "cross[ing] the bounds of appropriate expert opinion," Motion at 7, Ms. Murray's expert analysis aids the Court's ability to draw its own legal conclusions. Nothing prohibits Ms. Murray from using the word "reasonable" in her assessment of whether the settlements are financially prudent or appropriate, and her opinion only provides context for the Court's eventual legal determination. As Ms. Murray's opinion is plainly within the scope of Federal Rules of Evidence 702 and 704, the DRA Parties' Motion should be denied.

## BACKGROUND

4. On July 30, 2021, the Oversight Board filed the Plan. [ECF No. 17627]. In anticipation of the Plan's confirmation hearing, the Oversight Board through its counsel engaged Ms. Murray to provide an expert opinion "as to whether implementation of the key financial elements of the Plan is consistent with the [certified] Fiscal Plan for Puerto Rico." Report at ¶ 17. Ms. Murray also was asked to provide an expert opinion as to three other issues,[3] including "whether certain settlements reached in connection with the Plan are reasonable." Report at ¶ 18.

---

[3] Ms. Murray also delivered opinions as to (i) "whether the proposed treatment of pension liabilities associated with [ERS, TRS, and JRS] is already reflected in the 2021 CFP, and will therefore not negatively impact Puerto Rico's ability to achieve the fiscal plan"; and (ii) "whether implementation of the Plan and achievement of the Fiscal Plan is dependent on new borrowings and, if so, whether those new borrowings would be in violation of the borrowing

3

5. On September 6, 2021, the Debtors designated Ms. Murray as an expert witness to provide testimony on, among other things, the Oversight Board's settlements with major stakeholder groups. [ECF No. 18044]. Ms. Murray's Report was submitted one week later on September 13, 2021. [ECF No. 18097-1]. In the Report, Ms. Murray reviewed the settlements[4] and underlying documents and concluded in Opinion #4, based on her "experience negotiating settlements in restructurings and bankruptcies," that the settlements reached between the Debtors and relevant stakeholders were reasonable. Report at ¶¶ 103-32.

6. On September 30, 2021, the DRA Parties filed the Motion asking the Court to exclude portions of Ms. Murray's testimony. Motion at 9. Without challenging Ms. Murray's qualifications as an expert and while conceding that her analysis is otherwise "properly within the scope of permissible expert testimony", the DRA Parties' motion is directed to a singular request that the "Court enter an Order precluding Ms. Murray from testifying that the Settlements underlying the Plan are reasonable" (*see id.*) on the erroneous ground that her reference to the term "reasonableness" constitutes an impermissible "ultimate legal conclusion."

## **LEGAL STANDARD**

7. Federal Rule of Evidence 702 states a qualified expert may testify in the form of an opinion if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. An expert's

---

restrictions incorporated into the Plan." Report at ¶ 18. Notably, the DRA Parties do not raise objections to Ms. Murray's findings on these issues.

[4] Ms. Murray acknowledges six "operative PSAs and/or stipulations with major stakeholder groups" as of the filing of the Plan on July 30, 2021: (1) the GO/PBA PSA dated July 12, 2021; (2) the HTA/CCDA PSA dated May 5, 2021; (3) the PRIFA PSA dated July 27, 2021; (4) the ERS Stipulation dated April 2, 2021; (5) the Retirees Committee PSA dated June 7, 2019; and (6) the AFSCME PSA dated June 7, 2019. Report at ¶ 107.

4

testimony need not be correct to be included, but merely must show the expert's conclusion "has been arrived at in a scientifically sound and methodologically reliable fashion." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998). Experts may also rely on the figures they are provided by the retaining party. *See Downeast Ventures, Ltd. v. Washington Cty.*, No. 05-87 BW, 2007 WL 679887, at *4 (D. Me. Mar. 1, 2007) (summarizing a case that held an "expert's reliance on financial figures supplied by the restaurant owner passed Rule 702 muster even though the expert did not independently verify the figures supplied.")

8. Rule 704 further clarifies "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. While experts cannot reach a legal conclusion, they may offer a "conclusion built upon the facts of the case, that does not directly answer the legal question for the [decider of fact]." *Perez-Garcia v. P.R. Ports Auth.*, 873 F. Supp. 2d 435, 442 (D.P.R. 2012).

**ARGUMENT**

9. Ms. Murray's expert analysis stems from her extensive experience and provides context for multiple factors to aid this Court's consideration of the Plan of Adjustment. Despite the DRA Parties' best efforts, they cannot show how Ms. Murray's opining on settlements is anything other than the type of assistance to the trier of fact the Federal Rules of Evidence intended through Rules 702 and 704.

10. There is no confirmation requirement – under PROMESA or the Bankruptcy Code it incorporates – that restricts an expert's inquiry into these settlements or review of their financial reasonableness. PROMESA section 314 lists the confirmation requirements.[5] 48 U.S.C. § 2174.

---

[5] **Sec. 314. CONFIRMATION**
(b) CONFIRMATION.—The court shall confirm the plan if—

5

Here, the financial treatment of many classes of claims is the product of settlements regarding the claims' allowability, priority, and secured status. In turn, the differences between the treatments of different classes hinges on the settlements of these issues and could be material to whether there is unfair discrimination against a class that rejects the Plan. Therefore, whether these settlements are financially reasonable may be material to the Court's rulings on confirmation. Financial reasonableness is not – as the DRA Parties' claim – a "threshold" issue such that Ms. Murray's testimony intrudes on this Court's prerogative to determine questions of law such as those mentioned above.

11. Rather than usurp the Court's power, Ms. Murray's testimony will aid the Court's understanding of the settlements and their financial underpinnings. She is eminently qualified to offer these opinions. As she noted in her Report, Ms. Murray has spent approximately 35 years in the bankruptcy and restructuring fields, and has for at least the last ten years "engaged as a financial advisor to debtors and stakeholders in connection with out-of-court restructurings and bankruptcies" and consulted on issues relating to, among other things, "industry custom and practice for debt restructurings, bankruptcy plans of reorganization, financial forecasting and projections." Report at ¶ 2. She served as a financial advisor for debtors and stakeholders in

---

(1) the plan complies with the provisions of title 11 of the United States Code, made applicable to a case under this title by section 301 of this Act;
(2) the plan complies with the provisions of this title;
(3) the debtor is not prohibited by law from taking any action necessary to carry out the plan;
(4) except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that on the effective date of the plan each holder of a claim of a kind specified in 507(a)(2) of title 11, United States Code, will receive on account of such claim cash equal to the allowed amount of such claim;
(5) any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan has been obtained, or such provision is expressly conditioned on such approval;
(6) the plan is feasible and in the best interests of creditors, which shall require the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan; and
(7) the plan is consistent with the applicable Fiscal Plan certified by the Oversight Board under title II.

bankruptcies and out of court restructurings, including in cases involving W Hotel and Condominiums in Boston, The Dolan Company, Component Hardware Group, Pulse Electronics, and Chesapeake Energy. In her former capacity as a principal investor, she has also served on numerous official and ad-hoc creditors' committees in bankruptcy and restructuring cases, including in the bankruptcies or restructurings of Dow Corning, Global Power Equipment Group, Inc., Werner Ladder, Evergreen International Aviation, Inc., Scotia Pacific Company LLC, and Satmex, among others. She has also served as a court-appointed Monitor and Receiver for Atlantic Asset Management, LLC ("AAM") for approximately 3.5 years, and was responsible for negotiating and seeking court approval for settlements in connection with the Plan of Distribution for AAM, which she co-sponsored with the Securities & Exchange Commission.

12. Further, Ms. Murray has previously offered these types of opinions numerous times before judicial and administrative bodies. Her CV, attached as Exhibit B to her Report, states that she has been retained by private parties and the federal government to provide expert analysis and testimony on a variety of bankruptcy and restructuring related topics, including, among others, offering her expertise by: (1) testifying in United States Bankruptcy Court for the Southern District of New York on the reasonableness of a creditor's conduct in connection with the case captioned *GSC Group, Inc., et al.*; (2) testifying in the Delaware Court of Chancery on the reasonableness of reserves to be established as part of the dissolution of Altaba (fka Yahoo!); (3) offering an opinion on reasonable conduct in the context of negotiations in complex debt restructurings in a case that settled prior to the filing of a report; (4) providing expert testimony in the bankruptcy captioned *In re Sears Holding Corporation*, *et. al.* in the United States Bankruptcy Court for the Southern District of New York with respect to provisions for adequate protection, the diminution in value of secured creditors' collateral, and associated administrative expense claims; (5) testifying in *In*

Document Page 8 of 12

*re WeWork Litigation* in the Delaware Court of Chancery on whether Softbank Vision Fund acted in a commercially reasonable manner in connection with the completion of a corporate roll-up and a tender offer; and (6) creating a plan of distribution and negotiating and seeking approval for settlements in a receivership alongside and at the behest of the Securities and Exchange Commission.

13. Ms. Murray has served as an expert witness and financial advisor in multiple matters that involved evaluating plans of reorganization based on agreements between the parties. When performing her duties, Ms. Murray has either directly or indirectly opined on the reasonableness of underlying agreements. Her subject matter expertise, gained from decades of practical experience, has enabled her to offer these expert opinions on the facts underpinning restructuring agreements.

14. Notably, the DRA Parties do not challenge Ms. Murray's credentials or qualifications, in fact stating her opinions regarding "whether the parties were represented by qualified legal counsel, . . . the downside risks for certain of the stakeholders, and . . . the impact of potential litigations. . . . are within the permissible scope of expert testimony that is used to assist the trier of fact." Motion at 7. Rather, they only challenge Ms. Murray's conclusion regarding the reasonableness of the Debtors' settlements with various stakeholders. Motion at 7-8.

15. But that objection falls flat. The DRA Parties argue Ms. Murray "crosses the bounds of appropriate expert opinion" but ignore the fact she offers the precise type of opinion the DRA Parties otherwise classify as "within the permissible scope of expert testimony that is used to assist the trier of fact." Motion at 7. In this context, her opinion regarding the sufficiency of settlements plainly falls within the purpose of Rule 702. "This rule grants all expert witnesses

testimonial latitude unavailable to other witnesses on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Bado-Santana v. Ford Motor Co.*, 364 F. Supp. 2d 79, 85 (D.P.R. 2005). Her conclusions here – the product of applying a fact pattern against a practitioner's wealth of experience in bankruptcy and restructuring – is precisely the type of testimony Rule 702 was created to bring before the court. *Town of Westport v. Monsanto Co.*, No. CV 14-12041, 2017 WL 1347671, at *8 n.3 (D. Mass. Apr. 7, 2017) (court admits proposed expert testimony under Rule 702 when expert "has grounded his opinion in relevant scientific data and drawn his conclusions from that data based on his relevant experience."), *aff'd*, 877 F.3d 58 (1st Cir. 2017).

16. The DRA Parties further obfuscate the issue by claiming Ms. Murray failed to consider "opposing arguments that the court must weigh," Motion at 8, such as the DRA Parties' planned argument that certain settlement terms are unreasonable and render the Plan "unconfirmable." Motion at 8 n.3. This argument is inconsistent: the DRA Parties complain Ms. Murray did not opine on confirmability, while complaining she opined on reasonableness. Moreover, whether Ms. Murray considered such arguments – and there is nothing in her report to suggest such is the case – the DRA Parties' argument would be pertinent to the reliability of her testimony, not its admissibility and thus irrelevant for purposes of the Motion. *Waters v. Town of Ayer*, No. CV 04-10521-GAO, 2009 WL 10728967, at *6 (D. Mass. Apr. 6, 2009) (finding allegations that an expert did not "consider facts that the defendants deem to be important may impact the weight of [their] testimony, but does not warrant a conclusion that the testimony lacks a reliable foundation and is inadmissible.").

17. The DRA Parties' arguments on Rule 704 are equally unavailing. The DRA Parties claim Ms. Murray's conclusion may not be admitted as Rule 704 "permits an expert to reach an

9

ultimate conclusion on an issue of fact, not law." Motion at 8 n.4. First, Ms. Murray's opinion goes to the fact of financial reasonableness. But, even if she opined on legal reasonableness, the fact that Ms. Murray's opinion "embraces an ultimate issue" is explicitly authorized by Rule 704. Second, Ms. Murray's opinion assists the Court's determination by providing factual analysis and context for these settlements. In her Report, Ms. Murray provides more than 15 pages of analysis detailing the facts, ranging from the specific negotiations and risks associated with each settlement to more general issues such as the sophisticated and qualified counsel and advisors that each stakeholder employed. Her analysis, as the DRA Parties admit, is permissible as it is fact-based and offers conclusions grounded in evidence and knowledge. *See Perez-Garcia v. P.R. Ports Auth.*, 873 F. Supp. 2d 435, 441 (D.P.R. 2012) ("The proper role of an expert is to provide his or her factual conclusions in order to help assist the jury, who can then accept or reject the factual conclusion."). This expert factual analysis will assist the trier-of-fact in determining whether the negotiated agreements were well-founded, and any arguments to the contrary are not grounded in Ms. Murray's Report.

## CONCLUSION

For the reasons set forth above, the Oversight Board respectfully requests the Court to deny the DRA Parties' motion *in limine* seeking an Order precluding Ms. Murray from testifying the settlements underlying the Plan are reasonable.

[*Remainder of Page Intentionally Left Blank*]

Dated: October 15, 2021
San Juan, Puerto Rico

Respectfully submitted,

/s/ Martin J. Bienenstock
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Margaret A. Dale (*pro hac vice*)
Chantel L. Febus (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board, as representative for the Debtors*

/s/ Hermann D. Bauer

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board, as representative for the Debtors*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/ *Hermann D. Bauer*
Hermann D. Bauer