IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.<br><br>Debtors.¹ | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**DRA PARTIES' OPPOSITION TO DEBTORS' MOTION FOR ORDER
EXCLUDING EXPERT TESTIMONY OF DOUGLAS BRICKLEY**

---

¹ The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801).


## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................2

STANDARD OF LAW................................................................................................................5

DISCUSSION ..............................................................................................................................8

        A.     Claro's Engagement and the Brickley Report.. .........................................8

        B.     The FOMB's arguments to exclude Mr. Brickley's testimony lack merit.. ..................................................................................................................9

CONCLUSION...........................................................................................................................15

CERTIFICATE OF SERVICE ............................... **ERROR! BOOKMARK NOT DEFINED.**5

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acevedo-Garcia v. Monroig*, 351 F.3d 547, 561-62 (1st Cir. 2003) ................................................6

*Allen v. City of New York*, 466 F.Supp.2d 545, 548 (S.D.N.Y. 2006) ............................................12

*Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) .............................................11

*Cruz v. Bristol–Myers Squibb Co., PR*, 699 F.3d 563, 572 (1st Cir. 2012) ....................................3

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993) ..........................................6, 7, 14

*Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) ....................................7

*Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) .........................................................................7

*Hernández Torres v. Hernández Colón*, 129 DPR 824, 861-63 (1992) ........................................14

*Lynch v. Merrell-National Laboratories*, 830 F.2d 1190, 1196-97 (1st Cir.1987) ........................8

*Mass. Mut. Life Ins. Co. v. DLJ Mortg. Capital, Inc.*, 2017 U.S. Dist. LEXIS 222650 (D. Mass. April 18, 2017) ..............................................................................................8

*Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d 11, 14 (1st Cir. 2011) ......................7

*Pages-Ramirez v. Ramirez-Gonzales*, 605 F.3d 109 (1st Cir. 2010) ..............................................8

*Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 86 (1st Cir.1998)...................................................................................................................7, 8

*Smith v. Ford Motor Co.*, 626 F.2d 784, 793 (10th Cir.1980) .......................................................11

*United States v. Cruz-Ramos*, 987 F.3d 27, 42 (1st Cir. 2021) ....................................................6,8

*United States v. Guzmán-Montañez*, 756 F.3d 1, 11 (1st Cir. 2014)...............................................6

**Puerto Rico Constitution**

P.R. Const. Art. VI, § 7................................................................................................................14, 15

P.R. Const. Art. VI, § 8........................................................................................................4, 5, 9, 14, 15

P.R. Const. Art. VI, § 9....................................................................................................................14

**Puerto Rico Statutes**

9 L.P.R.A. § 2021 ...................................................................................................................14

9 L.P.R.A. § 5681 ...................................................................................................................14

13 L.P.R.A. § 31751(a)(1)(C) .................................................................................................14

13 L.P.R.A. § 31751 (a)(3)(C)) ...............................................................................................14

23 L.P.R.A. § 104(c)(1) ..........................................................................................................14

**Rules of Evidence**

Fed. R. Evid. 401 .....................................................................................................................6

Fed. R. Evid. 402 .....................................................................................................................6

Fed. R. Evid. 702 ........................................................................................................3, 6, 7, 10

Fed. R. Evid. 703 ...................................................................................................................11

Fed. R. Evid. 705 ...................................................................................................................11

AmeriNational Community Services, LLC (the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company (the "Collateral Monitor," and together with the Servicer, collectively, the "DRA Parties"), which serves as the collateral monitor for Wilmington Trust, N.A. in connection with the new bonds that the DRA issued pursuant to the *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as amended by Act No. 147-2018, and the approved qualifying modification for the Government Development Bank for Puerto Rico (the "GDB") under Title VI of the *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA")[2], by and through the undersigned legal counsel, respectfully submit their opposition to *Debtors' Motion for Order Excluding Expert Testimony of Douglas Brickley* ("Motion in Limine") [Dft. No. 18331] filed by the Financial Oversight and Management Board for Puerto Rico (the "FOMB").

**PRELIMINARY STATEMENT**

The DRA Parties are challenging confirmation of the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Dkt. No. 17627] (the "Plan") on the basis that, among other things, the Plan violates Commonwealth of Puerto Rico (the "Commonwealth") law by providing for the illegal retention of Act 30-31 Incremental Revenues,[3] without complying with the pertinent constitutional requirements governing the clawback of funds assigned for a specific purpose by law; in this case, funds designated to pay the Highways and Transportation Authority's ("HTA") debts with the Government Development Bank ("GDB"), and

---

[2] *See* Dkt. No. 270 of Civil Case No. 18- 01561 (LTS) (Nov. 7, 2018).

[3] Terms used herein not otherwise defined in this document shall have the same meaning as in *the DRA Parties' Memorandum of Law in Opposition to Debtors' Motion in Limine for Order Excluding Expert Testimony of Lizette Martínez* [Dkt. No. 18519].

2

which revenues constitute the DRA's collateral in connection with the HTA Loans. *See Disclosure Statement for the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Dkt. No. 17628] (the "Disclosure Statement") at p. 88, fn. 114. This issue goes directly to the heart of the DRA Parties' argument that the Plan does not satisfy PROMESA § 314(b)(3), which requires that the Commonwealth "not [be] prohibited by law from taking any action necessary to carry out the [P]lan."

In support of such a challenge, the DRA Parties engaged The Claro Group, LLC ("Claro"), to provide expert testimony in connection with the clawback of the Act 30-31 Incremental Revenues, as well as Lizette Martínez, CPA, CFF, CFE, from Lighthouse Consulting Group, to provide expert testimony as to the flow of the Act 30-31 Incremental Revenues from the Commonwealth accounts to the HTA. *See* The DRA Parties' Opening Expert Disclosures [Dkt. No. 18042]. Both Douglas J. Brickley of Claro ("Mr. Brickley"), and Lizette Martínez submitted expert reports (the "Brickley Report" and the "Flow of Funds Report" respectively).

The FOMB has moved to exclude Mr. Brickley's testimony[4] pursuant to Fed. R. Evid. 702 because, in its view, it would not assist the trier of fact and is not based on scientific, technical, or other specialized knowledge. *See* Dkt. No. 18331.[5] In addition, the FOMB contends that Mr. Brickley's testimony is irrelevant for purposes of plan confirmation proceedings because the DRA Parties do not have an allowable claim against the Commonwealth for failure to transfer the Act 30-31 Incremental Revenues and, to this end, argues that (a) Title III authorizes the non-payment

---

[4] The FOMB also moved to exclude the Flow of Funds Report. *See* Dkt. No. 18328.

[5] The DRA Parties incorporate by reference the background section, paragraphs 9-22, in the *DRA Parties' Memorandum of Law in Opposition to Debtors' Motion in Limine for Order Excluding Expert Testimony of Lizette Martínez.*

3

of claims during the pendency of the Title III case,[6] (b) PROMESA preempts appropriations statutes such as Acts 30 and 31 and the DRA Parties cannot have claims over preempted statutes; and (c) Title III eliminated any requirement for the Commonwealth to make present payment of debt, including the General Obligation ("GO") debt, and the Commonwealth's retention of Act 30-31 Incremental Revenues to pay debt, in the future, satisfies the provisions of Section 8 of Article VI of the Puerto Rico Constitution. *Id.*

Notably, the FOMB does not challenge Mr. Brickley's credentials, background, and qualifications on complex financial matters, or his ability to serve as an expert here. Instead, the Motion in Limine rests on FOMB's relevance and materiality objections which are mere legal arguments currently pending adjudication in other proceedings. The Motion in Limine is not the proper avenue through which to raise such legal issues that have no bearing on a determination regarding the admissibility of Brickley's Report. That is why none of the cases it cited in its motion support its position. Currently, the issues surrounding the Commonwealth's illegal clawback of the Act 30-31 Incremental Revenues remains unresolved by the Court. Despite these open issues, the Motion in Limine asks the Court to exclude the Brickley Report based on the FOMB's views of how the Court should decide the underlying issues. Such improper use of a motion *in limine* should be rejected and the Brickley Report should not be excluded, as it clearly meets the threshold of relevance for all the reasons stated herein.

---

[6] The FOMB failed to develop this argument in the Motion in Limine and, for this reason, the Court should deem it as waived. *See Cruz v. Bristol–Myers Squibb Co., PR*, 699 F.3d 563, 572 (1st Cir. 2012) (deeming waived a "woefully undeveloped" argument that was "not supported by reference to either legal authority or evidence in the record"). Moreover, assuming that this argument refers to the *DRA Parties' Motion for Allowance of an Administrative Expense Claim* (the "Administrative Expense Motion")[Dkt. No. 17009], which is currently pending before the Court, the DRA Parties incorporate by reference all arguments raised in the Administrative Expense Motion and the *DRA Parties Reply to the Objection of Financial Oversight and Management Board for Puerto Rico to DRA Parties Motion for Allowance of Administrative Expense Claim* (the "Admin Reply") [Dkt. 18244].

The FOMB's relevance objections do not rise to the high bar courts have established for the exclusion of expert testimony. Under *Daubert*, the FOMB must establish that the expert's testimony has no tendency to make a fact more or less probable than it would be without it, or does nothing to assist the trier of fact to understand the evidence or to determine a fact in issue. The FOMB's Motion in Limine is devoid of any analysis on how the Brickley Report fails to make a fact more or less probable or fails to provide relevant background to assist the trier of fact to understand the issues in this case. Instead, the FOMB relies solely on re-arguing and raising new legal arguments on issues that were already briefed to the Court and have yet to be decided. Worse, the FOMB brazenly presumes that the Court will without a doubt decide those issues in its favor.

As will be further discussed, Mr. Brickley's testimony is relevant and material; it reflects that the Commonwealth clawed back Act 30-31 Incremental Revenues during relevant fiscal years (i.e., Fiscal Years 2016 – 2020); that the Commonwealth generated a surplus on Fiscal Year 2018, and is projected to have surpluses for Fiscal Years 2019 through 2021; and, that the conditions for the clawback under Article VI, Section 8 of the Puerto Rico Constitution have not been met. Those facts make the DRA Parties' position with respect to the Plan confirmation more (not less) probable: that the Plan is contrary to PROMESA § 314(b)(3).

For the reasons discussed below, none of the FOMB's arguments warrant the exclusion of Mr. Brickley's testimony and, thus, the Court should deny the Motion in Limine.

## STANDARD OF REVIEW

"All relevant evidence is admissible," except as otherwise provided by the Constitution, federal law, the federal rules of evidence, or the rules prescribed by the Supreme Court. *See* Fed. R. Evid. 402. Evidence is relevant under Rule 401 if "it has *any* tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining

the action." Fed. R. Evid. 401 (emphasis added). The threshold for relevance is "very low," as the evidence need not definitively resolve an issue in the case, but merely "move the inquiry forward to some degree." *United States v. Cruz-Ramos*, 987 F.3d 27, 42 (1st Cir. 2021) (citing *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010)); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993) (the "standard of relevance is thus a liberal one").

Evidence may be relevant under Rule 401 even if it "fails to prove or disprove the fact at issue-whether taken alone or in combination with all other helpful evidence on that issue." *United States v. Guzmán-Montañez*, 756 F.3d 1, 11 (1st Cir. 2014) (holding evidence not dispositive of the defendant's guilt was still relevant). This is also true of evidence that is background in nature, offered as an aid to understanding, even if such background evidence does not itself relate to a consequential fact. *See* Fed. R. Evid. 401 advisory committee's notes; *see e.g. Acevedo-Garcia v. Monroig*, 351 F.3d 547, 561-62 (1st Cir. 2003) (no abuse of discretion in admitting evidence regarding claims not at issue in the case because such background evidence demonstrated the "atmosphere" of the work place).

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. *See* Fed.R.Evid. 702.[7]

---

[7] The FOMB does not allege that the Report fails to meet any of the standards set forth in Rule 702(b)-(d), and therefore concedes that Mr. Brickley's testimony is based on sufficient facts and data, is the product of reliable principles and methods, and that Mr. Brickley has reliably applied the principles and methods to the facts of this case.

This rule requires that the Court act as a gatekeeper and ensure that an expert's proffered testimony both rests on a reliable foundation and is relevant to the task at hand. *See Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d 11, 14 (1st Cir. 2011) (citing *Daubert*). The law favors admission of expert reports, particularly in bench trials. *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) ("The 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial."); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in Daubert are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."). The task is a flexible one. Its focus is based solely on principles and methodology, not on the conclusions that expert testimony generates. *Daubert*, 509 U.S. at 580, 113 S.Ct. 2786.

*Daubert* and its progeny do not require a party who proffers expert testimony to carry the burden of proving that the expert's assessment of the situation is correct. *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 86 (1st Cir.1998). As long as the expert's testimony rests upon good grounds based on what is known, it should be tested by the adversarial process, rather than excluded for fear that jurors will not be able to handle the scientific complexities. *Milward*, 639 F.3d at 15 (citing *Daubert*, 509 U.S. at 590, 596, 113 S.Ct. 2786). Vigorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786. Ultimately, the admission of expert testimony is a matter reserved to the trial court's discretion. *Lynch v. Merrell-National Laboratories*, 830 F.2d 1190, 1196-97 (1st Cir.1987). Excluding expert testimony before the expert testifies at trial is disfavored, and "[d]eferring the *Daubert* analysis until after the expert testifies at trial is even more appropriate when the court will be holding a bench trial." *Mass. Mut. Life Ins. Co. v. DLJ Mortg. Capital,*

7

*Inc.*, 2017 U.S. Dist. LEXIS 222650 (D. Mass. April 18, 2017) (collecting Circuit cases in support of giving expert testimony even more leeway in bench trials).[8]

Precluding the admission of evidence based on "[a] relevancy-based argument is usually a tough sell." *Cruz-Ramos*, 987 F.3d at 42. It is an even tougher sell when the trial judge is acting as a fact-finder and not a gatekeeper. To exclude Mr. Brickley's testimony, the FOMB must demonstrate that the evidence does not move the inquiry forward to even *some* degree. *Id.* It has failed to do so. Instead, as described in greater detail below, Mr. Brickley's expected testimony "move[s] the inquiry forward to some degree" with respect to whether the Plan should be confirmed, and thus should not be excluded from the proceedings.

## DISCUSSION

### A. Claro's Engagement and the Brickley Report.

On September 13, 2021, and in compliance with the Confirmation Procedures Order [Dkt. 17640], as subsequently amended [Dkt. 18394], the DRA Parties produced the Brickley Report, where Mr. Brickley stated his expert conclusions as to (1) whether the Commonwealth properly activated and retained revenues in compliance with constitutional clawback requirements; and (2) whether the clawed back revenues were transferred and used pursuant to the applicable waterfall and/or approved uses under the relevant constitutional clawback provisions. *See* Dkt. 18163-1 at p. 2.

Consistent with the scope of Claro's engagement, Mr. Brickley analyzed certain financial documents, including the Commonwealth's and HTA's Audited Financial Statements for fiscal years 2016-2018 and 2016-2019, respectively; the Commonwealth and HTA Fiscal Plans for fiscal

---

[8] The DRA Parties recognize, as the FOMB does, that expert evidence is subject to both Rule 402 and Rule 702. *See Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77 (1st Cir. 1998); *Pages-Ramirez v. Ramirez-Gonzales*, 605 F.3d 109 (1st Cir. 2010). As discussed in this Opposition, the Brickley Report directly concerns Plan confirmation issues, and thus should not be excluded.

years 2017-2021 and 2018-2021, respectively; and the Flow of Funds Report. *See* Dkt. 18163-1 at pp. 3-4, and Exhibit A to the Brickley Report.[9] Mr. Brickley applied his technical and specialized knowledge in complex financial matters – as reflected in the Qualifications Section of the Brickley Report, which the FOMB does not challenge – and, upon doing so, reached three **factual** conclusions: (1) that the Commonwealth had a budget surplus for Fiscal Year 2018 and projected surpluses for Fiscal Years 2019 through 2021; (2) that the Commonwealth has not made payments using clawed back funds on the GO debt since January 2016; and, (3) that the Commonwealth transferred certain portions of the clawed back funds to HTA without having paid GO debt for each Fiscal Year (2016 to 2020) that the transfers were made. *See id.* at p. 3. Based on these conclusions, Brickley opined that the Commonwealth failed to comply with the requirements of Article VI, Section 8 of the Puerto Rico Constitution and with the waterfall payment list set forth in the Management and Budget Office Organic Act, Act No. 147 of June 18, 1980 (the "OMB Act"). In reaching these conclusions, Mr. Brickley partially relied on legal assumptions provided by counsel, as is customary in the context of expert reports.

B. **The FOMB's arguments to exclude Mr. Brickley's testimony lack merit.**

    i. **Mr. Brickley's Testimony is Proper under Fed. R. Evid. 702.**

The FOMB seeks to exclude the testimony of Mr. Brickley on various grounds, none of which have merit. First, the FOMB misleadingly states that, because Mr. Brickley's testimony will purportedly "be composed solely of the regurgitation, summarization, or compilation of the contents of other documents" then any such testimony should be excluded as not being "based

---

[9] Notably, Mr. Brickley asserted that the Brickley Report could be subject to changes in the event that additional information requested – but that the Commonwealth has yet to produce – became available, including information related to the analyses made by the Commonwealth to determine, on a year-by-year basis, whether the Commonwealth was running a deficit for any fiscal year following the clawback and the uses of the clawed back funds. See Dkt. 18163-1 at p. 3. In addition, Mr. Brickley asserted that, if called to testify, he could present "analyses based on documents and information … considered." *Id.*

9

upon scientific, technical, or other specialized knowledge." Dkt. No. 18331 at ¶ 30. The FOMB's self-serving reading of the Brickley Report is belied by the report itself. Indeed, while Mr. Brickley makes reference to several documents and legal provisions, the same were assessed to provide context and the foundations for the conclusions in the Brickley Report which, again, the FOMB does not challenge. These conclusions include that (a) there has not been a deficit in the Commonwealth's budget since 2018; (b) the Commonwealth clawed back Act 30-31 Incremental Revenues in Fiscal Years 2016 through 2020; (c) no payment of the GO debt has been made since January 2016; and (d) the Commonwealth failed to comply with the waterfall priority payments outlined in Section 4(c) of the OMB Act, despite transferring clawed back funds to HTA. *See* Brickley Report at pp. 5-9. These conclusions, in turn, allow the DRA Parties to establish, through expert testimony, the merits of their position that the Plan, among other things, does not satisfy PROMESA § 314(b)(3) due to the fact that the Commonwealth has unlawfully retained the Act 30-31 Incremental Revenues over which the DRA Parties possess a security interest with regards to their HTA loan and, by extension, assist the Court in adjudicating such claims.

Second, the FOMB contends that Mr. Brickley's conclusions "are predicated upon legal assumptions provided by counsel for the DRA Parties." Dkt. No. 18331 at ¶ 30. Tellingly, the FOMB fails to cite any caselaw in support of this assertion. In any event, the FOMB's argument fails. The FOMB does not challenge the conclusions nor the factual foundations of such conclusions, including the legal assumptions provided by counsel. And even if it had, such a challenge would not warrant the exclusion of Mr. Brickley's expert testimony because "[a]lthough expert testimony should be excluded if it is speculative or conjectural … or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith[,] … other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony."

10

*Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (citing cases) (internal citations omitted); *see also Smith v. Ford Motor Co.*, 626 F.2d 784, 793 (10th Cir.1980) (the effect of Fed. R. Evid. 703 and 705 is to "place the full burden of exploration of the facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination"), *cert. denied*, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981). Accordingly, the FOMB's request to exclude Mr. Brickley's testimony on this ground should be denied.

Finally, and contrary to the FOMB's allegations, none of the conclusions contained in the Brickley Report are legal in nature. Instead, they are factual conclusions made by Mr. Brickley by applying his specialized knowledge and background in interpreting the documents relied upon for his opinions, which will help the Court determine the ultimate legal question at issue here; namely, whether the clawback effected by the Commonwealth for several fiscal years was constitutional. *See e.g. Allen v. City of New York*, 466 F.Supp.2d 545, 548 (S.D.N.Y. 2006) (citing *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (noting that while an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts).

    **ii.**     **The Brickley Report is Relevant and Material.**

        **1.**     **The Report Details the Commonwealth's Clawback of Act 30-31 Incremental Revenues and Is Therefore Relevant to PROMESA § 314(b)(3).**

The FOMB requests that Mr. Brickley's testimony be excluded as irrelevant and immaterial, because the allowability of the DRA Parties' liens over the Act 30-31 Incremental Revenues is the subject of a separate adversary proceeding and, as such, not relevant to the Plan confirmation proceeding. *See* Dkt. No. 18331 at p. 19. However, notwithstanding the separate adversary proceeding (Adv. No. 21-0068 (LTS)), PROMESA § 314(b)(3) requires that the

11

Commonwealth "not [be] prohibited by law from taking any action necessary to carry out the [P]lan." As the Brickley Report shows, the Plan cannot satisfy this requirement because the Commonwealth has clawed back Act 30-31 Incremental Revenues corresponding to the HTA - from Fiscal Years 2016 to 2020 – and such clawed back revenues were not used to pay GO debt nor pursuant to the waterfall provisions of the OMB Act. The FOMB plainly admits that, in fact, the revenues were clawed back and that they have not been used to pay GO debt. *See* Motion in Limine, at ¶ 42.

While these issues are indeed raised in the DRA Parties' separate adversary proceeding, the Court is still required to make an "independent determination" on the confirmability of the Plan (*see* Hr'g Transcript of 10-6-21 at p. 53: 7-8, 25), including whether it satisfies section 314(b)(3) of PROMESA. As such, Mr. Brickley's testimony is relevant to help to Court determine whether the Commonwealth is be prohibited by law from carrying out aspects of the Plan

### 2.  PROMESA Has Not Preempted the Act 30-31 Excise Tax Statutes.

The FOMB asserts that the Court should preclude Mr. Brickley's testimony because Acts 30-31 have been preempted by PROMESA and, thus, the Commonwealth is no longer required to transfer any of Act 30-31 Incremental Revenues to HTA. Dkt. No. 18331 at ¶¶38 - 41. This argument is taken whole cloth from the FOMB's motion to dismiss in Adv. No. 21-0068 (LTS), which is still pending before the Court. Accordingly, the DRA Parties refer the Court to their opposition brief at Dkt. 60 of Adv. No. 21-0068 (LTS) at ¶¶ 79-114, where they discuss at length why Acts 30 and 31 are not preempted by PROMESA. Therefore, it is simply not accurate to raise, as an undisputed legal conclusion, that PROMESA preempted the transfer of Act 30-31 Incremental Revenues to HTA. Moreover, whether Acts 30 and 31 are preempted by PROMESA -- an issue that has yet to be resolved -- is not a proper ground to seek preclusion of Mr. Brickley's testimony.

12

### 3. A motion *in limine* is not the proper vehicle to raise new substantive legal arguments and, therefore, the FOMB's argument that the retention of the revenues satisfied Article VI, Section 8 of the Constitution is improper.

The FOMB also asserts in its Motion in Limine – for the first time ever in the four years this proceeding has been pending – that Mr. Brickley's testimony is irrelevant because the "conditions laid out by Section 8 of Article VI of the Puerto Rico Constitution have been satisfied." Dkt. No. 18331 at p. 22. In the FOMB's view, "neither Article VI, Section 8 nor [Acts 30 and 31] state that disbursements to pay GO debt must be made during a particular fiscal year. Id. at p. 23.

A motion *in limine* is not the appropriate procedural vehicle through which to assert a substantive argument regarding the legality of the clawback for the first time - especially when this issue is the object of the Administrative Expense Motion litigation, as to which motion practice concluded on September 24, 2021 and is now pending adjudication by the Court. The FOMB should not be allowed to raise a new argument through the Motion in Limine in order to supplement its position on the Administrative Expense Motion.[10] If anything, the FOMB's argument highlights precisely why Mr. Brickley's expert testimony should be allowed and, if anything, be subjected to "[v]igorous cross-examination [and] presentation of contrary evidence." Daubert, 509 U.S. at 596.

The fact remains that, as the FOMB freely admits, the Commonwealth has been retaining the Act 30-31 Incremental Revenues and, despite doing so for more than six years, has not made any GO debt payments. This is contrary to the requirements of the Puerto Rico Constitution and the waterfall provisions of the OMB Act, since the clawback is an extraordinary remedy that may *only* be exercised (i) when the fiscal year begins with a balanced budget, *see* P.R. Const. Art. VI,

---

[10] The DRA Parties reserve their rights to respond in full to these new arguments in either the DRA Adversary Proceeding, the Plan Confirmation Proceeding, or both, or to seek leave to supplement their position in the Administrative Expense Motion litigation.

13

§ 7; (ii) *available revenues for the fiscal year are insufficient to meet the appropriations made for that year*, see P.R. Const. art. VI, §§ 8-9; 23 L.P.R.A. § 104(c)(1); 9 L.P.R.A. §§ 2021, 5681; 13 L.P.R.A. §§ 31751(a)(1)(C), (a)(3)(C)); and, (iii) the funds can *only* be used to pay interest on and amortization of the GO debt.

Moreover, the FOMB's contention that the retained revenues do not have to be disbursed to pay GO debt during the fiscal year at issue is clearly inconsistent with the provisions of Article VI, Section 8 of the Puerto Rico Constitution. The Constitution specifically provides that until such payment is made, no other disbursements can be made under the waterfall of the OMB Act. See P.R. Const. art. VI, § 8 ("[i]n case the available resources including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."). As the DRA Parties have asserted in the Administrative Expense Motion, the Commonwealth has been using the improperly retained revenues to pay to lower priority creditors in the waterfall despite failing to make payments to GO debt. Such action is expressly violative of the clawback in the Constitution because the same cannot be invoked to cover budget shortfalls, which is exactly what the Commonwealth appears to have been doing for the past several years. [11]

---

[11] The Puerto Rico Supreme Court, through the voice of the former Puerto Rico Supreme Court Associate Justice Negrón García in his dissenting opinion at *Hernández Torres v. Hernández Colón*, 129 DPR 824, 861-63 (1992) (a case where the majority opinion does not resolve a dispute concerning clawback), explains that Article VI, Sections 7 and 8 of the Puerto Rico Constitution operate, jointly, as follows:

> What happens if, the budget appropriations —over time— exceed the resources? The question leads us to Art. VI, § 8 of the Constitution of the Commonwealth. . .
>
> On its own terms, *this section cannot be activated to remedy a situation in which the Legislature begins with a deficit budget, due to incurring in ab initio appropriations in excess of the total resources' calculations. The constitutional precept was conceived to remedy exceptional situations created by random and different circumstances, outside the legislative evolutionary scope, and of course, of the First Executive*. . .

14

## Conclusion

For the foregoing reasons, the DRA Parties respectfully request that the Court deny the relief sought by the FOMB.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 15th day of October, 2021.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case. We further certify that, on this same date, we served the foregoing upon all the Standard Parties as identified and defined in the Court's *Fourteenth Amended Notice, Case Management and Administrative Procedures Order* [Dkt. No. 15894-1] (the "CMP Order"), as well as upon all of the parties identified in the Master Service List maintained at https://cases.primeclerk.com/puertorico/.

*[Remainder of page intentionally left in blank]*

---

[T]he constitutional requirement of a balanced budget prevents the Legislative Assembly and the First Executive from approving the general budget if they know, based on the projections of all available resources, that they are limited and exceed the appropriations. *In that moment, neither of the branches can "balance" nor "complete" the budget with the use of the exceptional mechanism established by Art. VI, § 8 of the Constitution of the Commonwealth, supra, and the provisions of the Government Accounting Act [...]*. To reach another conclusion would mean artificially creating the impression that the budget is balanced, that is, that the expenditures do not exceed the estimated resources. In that initial stage, when the approved appropriations exceed the total calculated resources, the mechanism of imposing taxes must be used. In its absence, because the Governor is constitutionally prevented from endorsing a budget that contains a deficit, he must veto the items —Const. E.L.A., *supra*, Art. III, § 20— and downgrade or eliminate any appropriation that grants funds in excess. This is the only way to save the constitutional problem of a deficit budget.

It is impossible to argue that, during the process of approving the budget, the Governor can invoke the mechanism of priorities contained in Art. VI, § 8 of the Constitution of the Commonwealth, *supra*, and the provisions of the Government Accounting Law of Puerto Rico, Act No. 230, *supra*. This conception is totally foreign to the minimum constitutional plan of "maintaining the economic stability of the government". Journal of Sessions, *supra*, Vol. 4, page 2587. (Translation ours and emphasis added).

15

| | |
|---|---|
| **MCCONNELL VALDÉS LLC** | **C. CONDE & ASSOC. LAW OFFICES** |

270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
P.O. Box 364225
San Juan, PR 00936-4225
Tel: 787-250-5632
Fax: 787-759-9225

By: */s/ Arturo J. García-Solá*
Arturo J. García-Solá
(USDC No. 201903)
E-mail: ajg@mcvpr.com

*s/ Alejandro J. Cepeda-Diaz*
Alejandro J. Cepeda-Diaz
(USDC No. 222110)
E-mail: ajc@mcvpr.com

*/s/ Nayuan Zouairabani*
Nayuan Zouairabani
(USDC No. 226411)
E-mail: nzt@mcvpr.com

**Attorneys for AmeriNational Community Services, LLC, as Servicer for the GDB Debt Recovery Authority**

By: */s/ Carmen D. Conde Torres*
Carmen D. Conde Torres
(USDC No. 207312)

*/s/ Luisa S. Valle Castro*
Luisa S. Valle Castro
(USDC No. 215611)

254 San José Street
Suite 5
San Juan, PR 00901-1523
Tel: 787-729-2900
Fax: 787-729-2203
E-mail: condecarmen@condelaw.com

-and-

**SCHULTE ROTH & ZABEL LLP**

By: */s/ Douglas S. Mintz*
Douglas S. Mintz (admitted *pro hac vice*)
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
Tel: 202-729-7470
Fax: 202-730-4520
E-mail: douglas.mintz@srz.com

-and-

Douglas Koff (admitted *pro hac vice*)
Abbey Walsh (admitted *pro hac vice*)
Peter J. Amend (admitted *pro hac vice*)
919 Third Avenue
New York, NY 10022
Tel: 212-756-2000
Fax: 212-593-5955
E-mail: douglas.koff@srz.com
        abbey.walsh@srz.com
        peter.amend@srz.com

**Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for the GDB Debt Recovery Authority**

16