# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>THE COMMONWEALTH OF PUERTO RICO, THE<br>EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO, AND THE PUERTO RICO PUBLIC<br>BUILDINGS AUTHORITY,<br><br>                      Debtors.[1] | PROMESA<br>Title III<br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| AMERINATIONAL COMMUNITY SERVICES, LLC,<br>(AS SERVICER FOR THE GDB DEBT RECOVERY<br>AUTHORITY) AND CANTOR-KATZ<br>COLLATERAL MONITOR LLC,<br><br>                    Movants,<br>v.<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>THE COMMONWEALTH OF PUERTO RICO, THE<br>EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO, AND THE PUERTO RICO PUBLIC<br>BUILDINGS AUTHORITY,<br><br>                  Respondents. | Re: ECF No. 18340 in<br>Case No. 17-bk-3283-LTS |

## MEMORANDUM OF LAW OPPOSING DRA PARTIES' MOTION *IN LIMINE* TO EXCLUDE EXPERT WITNESSES OR TESTIMONY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 3

    A.    The Oversight Board's Retention of A&M, EY, and McKinsey ............................3

    B.    The Plan and Confirmation Discovery Procedures ....................................................4

ARGUMENT ...................................................................................................................... 11

I.    THE OVERSIGHT BOARD COMPLIED WITH THE CONFIRMATION
    PROCEDURES ORDER. ...............................................................................................11

II.    THE DEBTORS' OPENING EXPERT DISCLOSURES WERE NOT ONLY
    SUFFICIENT, BUT PROVIDED EXTRA – NOT LESS – DISCLOSURE TO
    CREDITORS. .................................................................................................................12

    A.    Legal Standard ................................................................................................12

    B.    Each of the Disclosures for the Challenged Witnesses' is Sufficient. ...................13

    C.    Movants Have Suffered No Prejudice. ................................................................17

CONCLUSION ..................................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Amezcua v. Jordan Transp., Inc.*,
  No. 2:13-cv-1608-APG-CWH, 2016 U.S. Dist. LEXIS 94127 (D. Nev. July
  18, 2016) ............................................................................................................16

*Burwell v. Mass. Bay Commuter R.R.*,
  No. 14-cv-10178-JCB, 2015 WL 13684874 (D. Mass. Sept. 4, 2015)...................................12

*Croy v. Ravalli Cnty.*,
  No. CV 19-77-M-DWM, 2020 WL 6111098 (D. Mont. Oct. 16, 2020) ..........................16, 17

*Curley v. Zuerner*,
  1:16-cv-00676-MSM-PAS, 2020 U.S. Dist. LEXIS 255269 (D.R.I. Apr. 20,
  2020) ..................................................................................................................17

*Estate of Leavitt Rey v. Marrero Gonzalez*,
  No. 16-cv-2769-RAM, 2020 WL 4464467 (D.P.R. Aug. 4, 2020) ..................................12, 13

*Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*,
  No. 2:09-CV-1081, 2015 U.S. Dist. LEXIS 29918 (S. D. Oh. Mar. 11, 2015)......................16

*Saucedo v. Gardner*,
  No. 17-cv-183-LM, 2018 WL 1175066 (D.N.H. Mar. 3, 2018).........................................12, 13

*SEC v. Nutmeg Grp., LLC*,
  No. 09 C 1775, 2017 U.S. Dist. LEXIS 180405 (N.D. Ill. Oct. 31, 2017) ..............................17

STATUTES

48 U.S.C. §§ 2101–2241 ...............................................................................................1

OTHER AUTHORITIES

Advisory Committee Notes on 2010 Amendment to Fed. R. Civ. P. 26 .......................................12

Fed. R. Bankr. P. 7026..................................................................................................11

Fed. R. Civ. P. 26 ................................................................................................. *passim*

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Public Buildings Authority ("PBA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the Commonwealth and PBA, the "Debtors") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] submit this memorandum in law in opposition to *The DRA Parties' Motion in Limine to Exclude Certain FRCP 26(a)(2)(C) Expert Witnesses or Testimony* [ECF No. 18340][3] (the "Motion" or "Mot.") filed by AmeriNational Community Services, LLC as servicer for the GDB Debt Recovery Authority, and Cantor-Katz Collateral Monitor LLC (collectively, "Movants").

## PRELIMINARY STATEMENT[4]

1.     Movants seek to exclude expert testimony from three individuals who have worked as critical advisors to the Oversight Board during the last several years.  Jay Herriman has overseen the team at Alvarez & Marsal ("A&M") handling the claims reconciliation process.  Gaurav Malhotra is a principal at Ernst & Young ("E&Y") who has been personally involved in analyses regarding the feasibility of the Plan.  And Ojas Shah is a partner at McKinsey & Company ("McKinsey") who led the team that prepared and had extensive personal involvement in the preparation of the 109-page reports filed with the Disclosure Statement (the "BIT Reports") concluding that the Plan is in the best interests of creditors as required by Section 314(b)(6) of PROMESA.  Movants do not seek to block Messrs. Herriman, Malhotra, or Shah (collectively, the

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[3]  All ECF references are to Case No. 17-bk-3283-LTS unless otherwise noted.

[4] Capitalized terms not defined herein have the meaning ascribed to them in the Background section below.

"Challenged Witnesses") from providing fact testimony, but instead contend they cannot provide expert testimony either because the Confirmation Procedures Order bars it or because the Rule 26(a)(2)(C) disclosures the Oversight Board provided were deficient.  Movants are wrong.

2.       *First*, a report about the subject of Mr. Shah's testimony *was* provided – the BIT Reports.  The Motion (at 16-17) admits as much and Movants filed a rebuttal expert report in response.

3.       In any case, nothing in the Confirmation Procedures Order suggests it was intended to or did abrogate Rule 26(a)(2)(C).  To the extent the Challenged Witnesses will offer opinion testimony, they are clearly non-reporting experts under Rule 26(a)(2)(C), not reporting experts under Rule 26(a)(2)(B).  Thus, they did not need to provide expert reports because they were not retained or specially employed to provide expert testimony..

4.       *Second*, the disclosures for the Challenged Witnesses provide the required summary of opinions and facts on which they may opine with the requisite level of detail.  None of the cases cited by Movants compel a contrary conclusion.  Further, although Movants complain Debtors' Rule 26(a)(2)(C) disclosures fail to make clear the testimony of the Challenged Witnesses will be about (and based on) the work they have done for the Oversight Board, the rule does not require any such disclosure.  Indeed, designating witnesses under Rule 26(a)(2)(C) necessarily means their opinions will be based on their work for the designating party (in this case, the Oversight Board).

5.       *Third*, even if there were some real question about the sufficiency of the disclosures for the Challenged Witnesses under Rule 26(a)(2)(C) – and there is not – Movants cannot claim any prejudice.  Movants had nearly two months after the Oversight Board identified the Challenged Witnesses as potential Rule 26(a)(2)(C) witnesses to object or seek clarification from the Oversight

Board or the Court.  Instead, Movants did nothing before filing the Motion in a strategic effort to manufacture delay.   Movants likewise cannot claim prejudice in view of the Disclosure Statement's detailed discussion of the issues about which each of the Challenged Witnesses intends to testify, the public record establishing the work the Challenged Witnesses have performed as advisors to the Oversight Board, and the Oversight Board's agreement to provide lists of the documents and information each of the Challenged Witnesses will rely on as the basis for any opinions they may give.  Movants' assertion they are not well equipped to take the depositions of the Challenged Witnesses is not credible.  In fact, Movants have withdrawn their request to take Mr. Herriman's deposition and have spent hours questioning Messrs. Shah and Malhotra at depositions.

## BACKGROUND[5]

### A.    The Oversight Board's Retention of A&M, EY, and McKinsey

6.    The Oversight Board retained A&M as of August 2, 2018,[6] EY as of February 15, 2017,[7] and McKinsey as of November 27, 2016.[8]   Each A&M, EY, and McKinsey have performed critical services for the Oversight Board and continue to perform work as advisors to the Oversight Board.   Their current contracts with the Oversight Board are available on the

---

[5] ECF references are to Case No. 17-bk-3283-LTS unless otherwise stated.

[6] Title III Claims Reconciliation Agent – 20180802.pdf,
   https://drive.google.com/file/d/1HuXTVFMQJC4POU_3judw1CCHdSPGhp8q/view.

[7] Ernst & Young Puerto Rico, LLC Contract.pdf,
   https://drive.google.com/file/d/1WWHcS_Uv8fLZ43J215KQRGZdOyzh88ai/view.

[8] McKinsey & Company Contract.pdf,
   https://drive.google.com/file/d/1qeH3RM1Ic0q0N0qLb8fa9o-s-la_3AZ3/view.

Oversight Board's website and have been there for years.[9]  Each of Messrs. Herriman, Malhotra, and Shah has worked as senior members of the Oversight Board's advisors for years.

      **B.**    **The Plan and Confirmation Discovery Procedures**

      7.    On July 30, 2021, the Oversight Board filed the proposed the *Seventh Amended Title III Joint Plan of Adjustment* to adjust the debts of the Commonwealth, ERS, and PBA.  [ECF No. 17627] (the "Plan").  The Oversight Board simultaneously filed the *Disclosure Statement for the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 17628] (the "Disclosure Statement").  Among other things, the Disclosure Statement includes (i) discussion of the feasibility of the Plan, explaining confirmation of the Plan would not require further financial reorganization of the Commonwealth and would enable it to repay its debts [Disclosure Statement at 569] (a prime subject of Mr. Malhotra's testimony); (ii) the BIT Reports analyzing what creditors of each Debtor might expect to recover if the Title III case for such Debtor were dismissed [ECF No. 17628-16] (the only subject of Mr. Shah's testimony);[10] and (iii) disclosure of the various procedures employed in the claims reconciliation process [Disclosure Statement at 290] (the only subject of Mr. Herriman's testimony).

      8.    On August 2, 2021, the Court entered the *Order Establishing Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. 17640] (the "Confirmation Procedures Order").[11]

---

[9] McKinsey (https://drive.google.com/file/d/14V26Ruh9zagaAcSwRlSkOAquyWj8dcDA/view); EY (https://drive.google.com/file/d/1U_AFWV_RT3JHCnKO3KWEX7GLXvKl4H1k/view); A&M (https://drive.google.com/file/d/1HuXTVFMQJC4POU_3judw1CCHdSPGhp8q/view).

[10] The Oversight Board filed an amended report for PBA on October 3, 2021 [ECF No. 18369].

[11] The Court amended the Confirmation Discovery Procedures Order on October 5, 2021 [ECF No. 18394].

9.      On August 3, 2021, the Oversight Board filed its preliminary fact witness list pursuant to the Confirmation Procedures Order.  [ECF No. 17679] (the "Debtors' Preliminary Witness List").  The list included Messrs. Herriman, Malhotra, and Shah as fact witnesses, and noted they also may provide opinion testimony pursuant to Fed. R. Civ. P. 26(a)(2)(C) and briefly identified the topics as to which they may testify.  *Id.* at 3-4.

10.      Each of the Challenged Witnesses' testimony will be about the work they have performed for the Oversight Board.  In that sense, the testimony of each will be factual in nature. However, in an abundance of caution and to ensure creditors received more notice than that provided in the descriptions in the Debtors' Preliminary Witness List, the Oversight Board committed to provide more detailed disclosures under Rule 26(a)(2)(C), particularly with respect to opinions the Challenged Witnesses might offer based on their work for the Oversight Board.  Movants did not register any objection to the identification of the Challenged Witnesses as potential Rule 26(a)(2)(C) witnesses.

11.      On September 6, 2021, the Oversight Board filed the *Debtors' Identification of Expert Witnesses* [ECF No. 18044] (the "Debtors' Identification of Experts") pursuant to the Confirmation Procedures Order.   Again, the Oversight Board expressly identified Messrs. Herriman, Malhotra, and Shah as witnesses who might present opinion testimony pursuant to Fed. R. Civ. P. 26(a)(2)(C).  *Id.* ¶ 2.  The Oversight Board also noted "the disclosures required for all witnesses listed in paragraph 2 [including Messrs. Herriman, Malhotra, and Shah] under Federal Rule of Civil Procedure 26(a)(2)(C) shall be served on September 13, 2021."  *Id.* ¶ 2 n.7.  Movants again did not register any objection to the identification of the Challenged Witnesses as potential Rule 26(a)(2)(C) witnesses.

12.      On September 13, 2021, the Oversight Board filed the *Debtors' Opening Expert Reports and Disclosures* [ECF No. 18097] (the "Debtors' Opening Expert Disclosures") pursuant to the Confirmation Procedures Order.  In accordance with Federal Rule of Civil Procedure

26(a)(2)(B), the Oversight Board served the expert reports of its retained experts, Ms. Marti Murray and Dr. Andrew Wolfe.   The Oversight Board also provided separate disclosures describing the opinions and bases for those opinions required under Fed. R. Civ. P. 26(a)(2)(C) for, among other witnesses, Messrs. Herriman, Malhotra, and Shah. *Id.* ¶¶ 2(c), (e), and (g).   Here too Movants did not register any objection to the identification of the Challenged Witnesses as potential Rule 26(a)(2)(C) witnesses.

13.   The Debtors' Opening Expert Disclosures for the Rule 26(a)(2)(C) witnesses included summaries of the opinions of each of the Challenged Witnesses, and the factual bases for those opinions. *Id.*   The disclosed opinions and bases tie directly to the work each has performed for the Oversight Board over the past several years:

- Mr. Herriman is expected to testify concerning "the claims reconciliation process undertaken by the Oversight Board, including, without limitation, the development and implementation of the ADR and ACR procedures and the status of outstanding claims as of the commencement of the hearing to consider confirmation of the plan of adjustment." *Id.* ¶ 2(c).   He is also expected to testify to "the reasonableness of the assumptions made with respect to the anticipated total amount of allowed unsecured claims." *Id.*   Mr. Herriman's testimony will be based on his work for the Oversight Board, including "(a) the review and analysis of the proofs of claim filed against such Debtors by the Oversight Board and its advisors, and (b) Mr. Herriman's extensive experience in complex restructuring, including claims reconciliation and analysis." *Id.*   Mr. Herriman's personal involvement with the claims reconciliation process, including leading the team that has reviewed over 140,000 proofs of claim filed in these Title III cases, is also evident from the ***hundreds*** of declarations he has filed in support of the Debtors' omnibus objections to proofs of claim.   [*See, e.g.*, ECF No. 8963-3 ¶¶ 1-2.]

6

- Mr. Malhotra is expected to testify concerning the Plan's feasibility, including (i) "that confirmation of the Plan is not likely to be followed by the need for further financial reorganization, (ii) the financial obligations provided for in the Plan are consistent with the debt sustainability analysis in the 2021 certified fiscal plan for the Commonwealth, and (iii) the financial impact of preempted Commonwealth statutes, or portions thereof, is inconsistent with the financial requirements of PROMESA." Debtors' Opening Expert Disclosures ¶ 2(e). Mr. Malhotra's testimony will be based on his work for the Oversight Board, including (a) forecasts of revenues, expenditures, budgets, and the amounts necessary for the Commonwealth to make payments that will be due pursuant to the Plan; (b) components of the Plan expected to mitigate the impacts of potential financial underperformance by the Commonwealth; (c) additional reforms and other measures not included in the Fiscal Plan that could be implemented to address projected revenue shortfalls in certain years, (d) Mr. Malhotra's experience in providing financial restructuring advisory services in public sector restructuring; (e) the restructured debt service and other financial obligations provided for in the Plan; (f) the debt sustainability analysis in the Commonwealth's 2021 certified Fiscal Plan; (g) the appropriations or the appropriations based on mathematical formulas described in each of the Commonwealth statutes at issue; (h) application of formula appropriations described in the statutes to the revenue sources identified in the statutes to estimate how much those specific appropriations would have been in Fiscal Years 2021 and 2022; and (i) the amounts calculated in (h) above are inconsistent with the Fiscal Plan. *Id.* Further, Mr. Malhotra's personal involvement with these subjects is evident from EY's scope of engagement,[12] and EY's interim fee applications [*see, e.g.*, ECF No. 18454].

---

[12] For example, EY's current engagement letter with the Oversight Board provides EY will advise the Oversight Board in connection with "the development of a Plan of Adjustment" including the creation of "[f]inancial analyses related to plan feasibility." Ind. Contractor

- Mr. Shah is expected to testify that creditors of each Debtor will receive recoveries pursuant to the Plan, in the aggregate, in a percentage of their claims as of the date of the filing of the Title III case not materially less than they would receive outside of Title III utilizing the "base case" of assumptions, and that the recoveries under the Plan are within the range of recoveries in other scenarios presented in the BIT Reports attached to the Disclosure Statement or that lower percentage recoveries are due to specific provisions of Title III that would not apply outside Title III. Debtors' Opening Expert Disclosures ¶ 2(g). Mr. Shah's testimony will be based on (a) his work as part of the Oversight Board's team of advisors, including his review and understanding of the classification and treatment of claims under the Plan, (b) his review and understanding of the assumptions made in connection with the BIT Reports, which were prepared by Mr. Shah with assistance from a team at McKinsey, including: (i) the resource envelope available for all creditors of the Debtors, (ii) the amount of unsecured claims, and the anticipated disposition of certain legal disputes which would require resolution outside of Title III, including, among others, the assumed treatment of holders of the DRA's claims and the PRIFA BANs claims, and (iii) the assumed treatment of GO Bonds and Commonwealth guarantees in light of the Commonwealth constitutional debt limit and priority and (c) Mr. Shah's extensive experience serving the FOMB over the past several years and other experience in providing financial advisory services. *Id.* Further, before the Motion was filed, Movants were advised by the Oversight Board's counsel that Mr. Shah "(i) was personally involved in the preparation of the BITs, (ii) led the team that was responsible for preparing the BITs, [and] (iii) reviewed and approved of all language in

---

Servs. Agreement, Ernst & Young P.R. LLC, at 32 (https://drive.google.com/file/d/1U_AFWV_RT3JHCnKO3KWEX7GLXvKl4H1k/view).

the BITs." [Mervis. Decl. Ex. 1 (9/30/2021 Email from M. Mervis to D. Koff)].[13]  Mr. Shah's

work for the Oversight Board is also evident from the scope of McKinsey's engagement,[14] and

from McKinsey's interim fee applications [*see, e.g.*, ECF No. 18003].

14.    On September 13, 2021, Movants noticed the depositions of the Challenged

Witnesses.  [*See* Exs. 2-4.]  In each notice, among other things, Movants specifically sought

testimony on the areas of expert testimony the Oversight Board identified in the Debtors' Opening

Expert Disclosures.  Movants sought to depose:

- Mr. Herriman concerning the "[r]easonableness of the assumptions made

with respect to the total amount of Allowed unsecured claims asserted against each of the Debtors"

[Ex. 2, Attachment A, ¶ 2];

- Mr. Malhotra concerning the "[c]onsistency of financial obligations

imposed by the Plan with the debt sustainability analyses in the certified fiscal plans for the

Debtors" [Ex. 3, Attachment A, ¶ 2]; and

- Mr. Shah concerning "[w]hether the Plan is in the best interest of the

creditors of each of the Debtors" [Ex. 4, Attachment A, ¶ 2].

15.    On September 16, 2021, Movants served discovery requests seeking, among other

things, all documents and communications exchanged with the Challenged Witnesses.  Movants

contended the disclosure of the Challenged Witnesses as Rule 26(a)(2)(C) witnesses waived

---

[13] All exhibit references are to exhibits to the *Declaration of Michael T. Mervis in Connection with the DRA Parties' Motion in Limine to Exclude Expert Witnesses or Testimony* ("Mervis Decl.") filed simultaneously herewith.

[14]  For example, McKinsey's current engagement letter with the Oversight Board provides McKinsey will, among other things, "[l]ead preparation of 'best interests' analysis in coordination with other Oversight Board advisors."  Ind. Contractor Servs. Agreement, McKinsey   &   Co.   P.R.   Consulting,   Inc.,   Attachment   1 (https://drive.google.com/file/d/1k4NDJdV-N9IJetocnX4F244FwIyy93Kw/view).

privilege and work-product protections and, on that basis, sought to compel "all communications" between them and the Oversight Board.  To resolve a dispute regarding Movants' privilege waiver argument, the Oversight Board agreed to provide Movants with facts, data or assumptions provided by counsel, if any, as well as a list of documents relied upon by the Challenged Witnesses in connection with their confirmation hearing testimony.[15]

16.     On October 6, 2021, the DRA Parties deposed Mr. Shah.  Among other things, Mr. Shah testified, in accordance with what Movants were told before they filed their Motion, that he personally led the team that prepared the BIT Reports [Ex. 5 Shah Depo. Tr. (Excerpts) at 50:9-19], was personally involved in the preparation of the BIT Reports [*id.* 50:20-23], signed off on the BIT Reports [*id.* at 52:12-14], is the person at McKinsey with the most knowledge concerning the BIT Reports [*id.* at 52:15-17], and that he personally wrote a substantial portion of the BIT Reports [*id.* at 52:21-24, 53:2-4].  Counsel to Movants had a full opportunity to examine Mr. Shah at length concerning the BIT Reports, including the information he used to prepare them [*e.g.*, *id.* at 64:16-24], whether McKinsey validated the information on which it relied [*id.* 68:6-9], and the assumptions underlying the BIT Reports [*e.g.*, *id.* at 72:6-73:24].

17.     On October 8, 2021, Movants filed a rebuttal report responding to the BIT Reports [ECF No. 18445].

18.     Mr. Herriman will not be deposed because Movants withdrew their notice of deposition to him.  Mr. Malhotra was deposed today for a number of hours.

---

[15] After the privilege waiver dispute was fully briefed before Magistrate Judge Dein, the dispute was resolved consensually.

## ARGUMENT

## I.   THE OVERSIGHT BOARD COMPLIED WITH THE CONFIRMATION PROCEDURES ORDER.

19.   Movants contend Paragraph 19 of the Confirmation Procedures Order required "all experts" to submit full written reports without exception and, on that basis, seek to exclude any expert testimony of the Challenged Witnesses on the grounds they, too, were required to file written expert reports. Mot. at 8. Movants are wrong.

20.   By its own terms, Paragraph 19 of the Confirmation Procedures Order only concerns Rule 26(a)(2)(B) specially retained experts, not "all" experts within the ambit of Rule 26. Paragraph 19 modifies the timing of disclosure under Rule 26(a)(2)(B) "[n]otwithstanding" the default requirement experts ordinarily must disclose their written reports at the time they are identified. Confirmation Procedures Order ¶ 19; *see also* Fed. R. Civ. P. 26(a)(2)(B) ("Unless . . . otherwise ordered by the court, this disclosure [of the identity of an expert witness] must be accompanied by a written report . . . .").

21.   Nothing in Paragraph 19 concerns Rule 26(a)(2)(C) experts. Further, nothing in the Confirmation Procedures Order as a whole refers to Rule 26(a)(2)(C), let alone purports to abrogate that part of Rule 26 or bar parties from presenting Rule 26(a)(2)(C) testimony.[16] Movants' only apparent attempt to address Paragraph 19's text is to ignore it, slyly quoting around the bookend references to Rule 26(a)(2)(B) to contend the Court "directed" that "all experts" must submit a written report. *See* Mot. at 8. That is simply not what the Order says.

22.   Movants had ***nearly two months*** following filing of the Debtors' Preliminary Witness List on August 3, 2021 to assert the Confirmation Procedures Order barred Rule

---

[16] Likewise, Fed. R. Bankr. P. 7026 incorporates Fed. R. Civ. P. 26 in its entirety, and does not purport to limit or eliminate Rule 26(a)(2)(C) experts, or to require written reports for all experts.

26(a)(2)(C) witnesses, including the Challenged Witnesses, and to seek any relief from the Court.

Instead, they did nothing.

## II.   THE DEBTORS' OPENING EXPERT DISCLOSURES WERE NOT ONLY SUFFICIENT, BUT PROVIDED EXTRA – NOT LESS – DISCLOSURE TO CREDITORS.

23.     Movants' assert the Oversight Board's Rule 26(a)(2)(C) disclosures are "insufficient" and not the "detailed disclosures" Rule 26(a)(2)(C) requires (Mot. at 12). Specifically, Movants contend the disclosures do not provide adequate summaries of the facts and opinions to which each of the Challenged Witnesses will testify.   Movants' arguments are misplaced, their authority is inapposite, and their claims of "prejudice" are unfounded.

### A.   Legal Standard

24.     Pursuant to Rule 26(a)(2)(C), experts not required to provide a written report must only disclose the subject matter and "a summary of the facts and opinions" to which they are expected to testify. Fed. R. Civ. P. 26(a)(2)(C).  Such disclosures are "considerably less extensive than the report required by Rule 26(a)(2)(B)" and should not contain "undue detail."  Advisory Committee Notes on 2010 Amendment to Fed. R. Civ. P. 26.  While such disclosures should not merely consist of "generic, high-level references to the subject matter of the entire case," *Saucedo v. Gardner*, No. 17-cv-183-LM, 2018 WL 1175066, at *2 (D.N.H. Mar. 5, 2018) (internal quotation marks omitted), or be "generic and conclusory," *Estate of Leavitt Rey v. Marrero Gonzalez*, No. 16-cv-2769-RAM, 2020 WL 4464467, at *6 (D.P.R. Aug. 4, 2020), a disclosure of subject matter, opinions, and factual topics to which the expert may testify is sufficient.  *See id.* at *7 (disclosure of areas of expert knowledge, resume, and professional qualifications sufficient); *see also Burwell v. Mass. Bay Commuter R.R.*, No. 14-cv-10178-JCB, 2015 WL 13684874, at *1, *3 (D. Mass. Sept. 4, 2015) (disclosure stating expert would testify "based upon the examination of plaintiff, history taken, review of medical records, including films and tests, that plaintiff

suffered injury to his shoulder on the job which prevented him from working full duty and required additional treatment, consistent with medical records previously provided" held sufficient). Further, Rule 26(a)(2)(C) disclosures may be supplemented by other materials. *Saucedo*, 2018 WL 1175066, at *3 (Rule 26(a)(2)(C) disclosure appropriately supplemented with documents and statistical data on which expert would rely); *Estate of Leavitt*, 2020 WL 4464467, at *7 (Rule 26(a)(2)(C) disclosure appropriately supplemented with resume and professional qualifications).

> **B.     Each of the Disclosures for the Challenged Witnesses' is Sufficient.**

25.     The disclosures for the Challenged Witnesses easily exceed the standard of Rule 26(a)(2)(C) because each provides a summary and some details of the opinions and factual topics to which they may testify.

26.     *First*, the summary of Mr. Herriman's opinions and factual topics to which he may testify does not consist of recycled, "generic, high-level references to the subject matter of the entire case," *Saucedo*, 2018 WL 1175066, at *3, but instead is targeted to his involvement in the claims reconciliation process in these Title III cases.  His disclosure expressly states the subject matter of his testimony, and that he will opine on the "reasonableness of the assumptions made with respect to the anticipated total amount of allowed unsecured claims," along with the specific dollar amounts he opines to be correct.  Debtors' Opening Expert Disclosures ¶ 2(c).  It then states the factual topics that form the basis of his testimony, namely his review of proofs of claim and his prior extensive experience.  *Id.*  This plainly meets the Rule 26(a)(2)(C) standard, and while Movants nevertheless assert this disclosure contains no opinions and no facts, Mot. at 13, the disclosure plainly contains both.  Moreover, Movants' complaints regarding the adequacy of the disclosures for Mr. Herriman are particularly misplaced given that the disclosed subject matter of his testimony is entirely factual and, arguably, does not involve any expert opinions at all.  Movants seek to punish the Oversight Board for opting, in an abundance of caution, to provide more

disclosure than may be required by the applicable rules.  That Movants ultimately chose not to even take Mr. Herriman's deposition speaks volumes as to their complaints concerning supposedly inadequate disclosure.

27.     *Second*, the summary of Mr. Malhotra's opinions and the factual topics to which he may testify is likewise sufficient.  Debtors' Opening Expert Disclosures ¶ 2(e).  The disclosure identifies the subject matter of his testimony and his opinions—namely, in brief, that (i) Plan confirmation will not require further financial restructuring, (ii) the Plan is consistent with the debt-sustainability analysis in the certified fiscal plan, and (iii) the financial impact of preempted statutes is inconsistent with PROMESA's financial requirements.  *Id.*  The disclosure then goes on to identify the bases for each of those opinions by number.  *Id.*  Again, this disclosure meets the requirements of Rule 26(a)(2)(C), and Movants' bald assertion the disclosure is not a summary of opinions and facts is plainly incorrect.  Further, while Movants complain they want more information about the "application of formulas" and other methodologies to which Mr. Malhotra may testify, Mot. at 15, Rule 26(a)(2)(C) only requires a summary of opinions and facts by its plain terms.

28.     *Third*, the summary of Mr. Shah's opinions and the factual topics to which he may testify is sufficient.  Debtors' Opening Expert Disclosures ¶ 2(g).  But, in Mr. Shah's case, his best interest reports were included in the Disclosure Statement.  Movants could not ask for more; but they do!  Like the others, this disclosure identifies the subject matter of his testimony; his opinions that "creditors of each Debtor will receive recoveries pursuant to the Plan, in the aggregate, in a percentage of their claims as of the date of the filing of the Title III case not materially less than they would receive outside of Title III," that "the recoveries under the Plan are within the range of recoveries in other scenarios presented in the [BIT Reports]" or "that lower percentage recoveries

14

are due to specific provisions of Title III that would not apply outside Title III." *Id.* The disclosure then goes on to specify the bases for his opinions. *Id.* Once again, there can be no question this meets the requirements of Rule 26(a)(2)(C), particularly in view of the extensive BIT Reports provided in the Disclosure Statement specifically identified in his Rule 26(a)(2)(C) disclosure. Debtors' Opening Expert Disclosures ¶ 2(g).

29.     Indeed, Movants do not seriously contest the disclosure for Mr. Shah is insufficient, *see* Mot. at 16-17, 11 (complaining about the adequacy of disclosure for the Challenged Witnesses "apart from Shah"), but instead concede they sought to challenge his disclosure preemptively depending on "the extent of his actual involvement with" the BIT Reports. *Id.* at 17. But Movants were told about Mr. Shah's detailed role in the preparation of the BIT Reports ***before they filed the Motion***, *see* Exhibit 1, and Mr. Shah confirmed it during his deposition testimony.  [Ex. 5, Shah Depo. Tr. 50:9-23, 52:12-17, 52:21-24, 53:2-4.]

30.     Movants additionally contend the disclosures for the Challenged Witnesses were insufficient because they do not specifically state the witnesses' opinions are based on their work for the Oversight Board.  Mot. at 11.  But designating the Challenged Witnesses as Rule 26(a)(2)(C) witnesses necessarily means that is the case, and Rule 26(a)(2)(C) does not require a specific disclosure that a witness' opinions will be based on his or her work for the disclosing party.  In any case, the notion that Movants did not appreciate the Challenged Witnesses' testimony will be about the work they performed for the Oversight Board, and they were not specially retained to provide expert testimony, is not credible.  What is described in the Oversight Board's Rule 26(a)(2)(C) disclosures mirrors what is said in the extensive public disclosures about the

nature of the work the Challenged Witnesses' firms have done and are doing for the Oversight Board mirrors.[17]

31.     Each of the Challenged Witnesses' disclosures therefore meets the requirement of Rule 26(a)(2)(C).  None of Movants' cases provides a basis for a contrary conclusion.

•      The *Amezcua* decision is inapposite.  There, a court found boilerplate disclosures that were "substantially duplicated" (Mot. at 10) for four treating physicians insufficient under Rule 26(a)(2)(C).  *Amezcua v. Jordan Transp., Inc.*, No. 2:13-cv-1608-APG-CWH, 2016 U.S. Dist. LEXIS 94127, at *2 (D. Nev. July 18, 2016).  Here, Movants do not assert any of the Challenged Witnesses' disclosures are boilerplate or duplicative of each other—nor could they, given they are targeted based on their different work for the Oversight Board.

•      The *Little Hocking* case likewise does not compel a different result.  There, the court held the summary of opinions must contain "a view or judgment regarding a matter" and the main factual points on which the expert would rely, *Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, No. 2:09-CV-1081, 2015 U.S. Dist. LEXIS 29918, at *32 (S. D. Oh. Mar. 11, 2015), which is precisely what the disclosures for the Challenged Witnesses do.  Movants suggest the Challenged Witnesses' summary of facts is deficient because it only consists of a "few sentences" (Mot. at 11 (italics removed)), but no court has imposed a sentence-length requirement for Rule 26(a)(2)(C) disclosures and, more importantly, Movants provide no analysis of the Challenged Witnesses' factual summary to explain why they are deficient.

•      The *Croy* case is inapposite.  There, a court found insufficient a disclosure stating the expert "may be asked to offer expert testimony regarding road building and road design,

---

[17] Movants plainly knew of those other public disclosures during the preceding 4 years, as they examined Mr. Malhotra at deposition on the scope of EY's work based on the publicly available contracts noted above.

and may offer opinion testimony regarding disputes regarding construction or design of particular roads," *Croy v. Ravalli*, No. CV 19-77-M-DWM, 2020 WL 6111098, at *3 (D. Mont. Oct. 16, 2020), which offers neither an opinion nor a viewpoint. Here, each of the Challenged Witnesses' disclosures summarizes their opinions and the main facts supporting them.

- Like *Croy*, the *Curley* case is inapposite because it concerned a disclosure that offered neither facts nor opinions. There, the disclosure only said the experts would testify "regarding their assessment of Mr. Curley and any opinions which they formed contemporaneous with their care and treatment of him," *Curley v. Zuerner*, 1:16-cv-00676-MSM-PAS, 2020 U.S. Dist. LEXIS 255269, at *3-4 (D.R.I. Apr. 20, 2020), which says nothing. In sharp contrast, the Challenged Witnesses' disclosures express opinions and bases.

- Movants' reliance on *Nutmeg* is also misplaced. There, the SEC failed to argue its witness was a Rule 26(a)(2)(C) witness at all—until it sought reconsideration after the witness was stricken. *SEC v. Nutmeg Grp., LLC*, No. 09 C 1775, 2017 U.S. Dist. LEXIS 180405 (N.D. Ill. Oct. 31, 2017). The court held the SEC's failure to make the Rule 26(a)(2)(C) argument was sufficient to deny reconsideration, *id.* at *8, and in any event refused to "inferentially cobble[] together" an appropriate disclosure after the fact, *id.* at *14. Here, the Oversight Board has been clear for months the Challenged Witnesses may qualify as Rule 26(a)(2)(C) witnesses.

### C. Movants Have Suffered No Prejudice.

32. Movants assert they have been placed in an "untenable situation" (Mot. at 4) because they wanted more information, sooner, to prepare for depositions and to mount further challenges to the Challenged Witnesses (Mot. at 12). But Movants' complaint rings hollow given the Oversight Board's repeated and timely disclosure of the Challenged Witnesses as Rule 26(a)(2)(C) witnesses who would not provide written reports. Movants had every opportunity to

ask the Court to require "all" experts to provide written reports as part of the Confirmation Procedures Order despite Rule 26(a)(2)(C), or to specify what other "fulsome disclosure" (Mot. at 15) in lieu of written reports they sought in advance of deposing the Challenged Witnesses.[18]

33.     Movants also cannot assert they are in the dark about the Challenged Witnesses' expected testimony because, among other things, the Disclosure Statement contains detailed disclosure on each of the subjects of their expected testimony.  In each instance, Movants have far *more* information about these subjects than would ordinarily be available under Rule 26(a)(2)(C).

34.     Further, Movants cannot assert prejudice in view of the Oversight Board's agreement to provide additional disclosure concerning the Challenged Witnesses to resolve a discovery dispute.  Specifically, although not required by Rule 26(a)(2)(C), the Oversight Board agreed to and did provide lists of the documents and information each of the Challenged Witnesses will rely on as the basis for any opinions they may give.

35.     Movants' actions since they filed the Motion also demonstrate they have no basis to assert prejudice.  Movants *withdrew* their notice of deposition to Mr. Herriman.  As for Mr. Shah, the Oversight Board confirmed his role with regard to the BIT Reports in advance of his deposition (and, indeed, before the Motion was filed).  And as for Mr. Malhotra, Movants deposed him today for a number of hours.

## CONCLUSION

36.     For at least the foregoing reasons, the Court should deny the Motion.

---

[18] Movants also could have sought expedited briefing and disposition of the Motion, but did not.

Dated: October 15, 2021
       San Juan, Puerto Rico

Respectfully submitted,

/s/ Martin J. Bienenstock

Martin J. Bienenstock
Brian. S. Rosen
Margaret A. Dale
Michael T. Mervis
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

/s/ Hermann D. Bauer

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*

Timothy W. Mungovan
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
One International Place
Boston, MA  02110
Tel: (617) 526-9600

Michael A. Firestein
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067

*Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*