**EXHIBIT 1**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

**Fill in this information to identify the case (Select only one Debtor per claim form). / Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación).**

| | | |
|---|---|---|
| [X] Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| [ ] Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| [ ] Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| [ ] Employees Retirement System of the Government of the Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| [ ] Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

Modified Official Form 410 / Formulario Oficial 410 Modificado

# Proof of Claim / Evidencia de reclamación

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

**Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.**

**Quienes presenten la documentación deben omitir o editar** información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. **No adjunte documentos originales,** ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

**Fill in all the information about the claim as of the Petition Date.**

**Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.**

| Part 1 / Parte 1 | Identify the Claim / Identificar la reclamación |
|---|---|

| | |
|---|---|
| 1. **Who is the current creditor?**<br><br>**¿Quién es el acreedor actual?** | Compañía de Fomento Industrial de Puerto Rico<br>—————————————————————————————————<br><small>Name of the current creditor (the person or entity to be paid for this claim)<br>Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación)</small><br><br><small>Other names the creditor used with the debtor</small>   Puerto Rico Industrial Development Company (PRIDCO)<br><small>Otros nombres que el acreedor usó con el deudor</small> |

**Claim Number: 20926**

**Claim Number: 20926**

| 2. | Has this claim been acquired from someone else?<br><br>¿Esta reclamación se ha adquirido de otra persona? | ☒ No / No<br>☐ Yes. From whom?<br>      Sí. ¿De quién? _____ |
|---|---|---|

| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)<br><br>¿A dónde deberían enviarse las notificaciones al acreedor?<br><br>Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g | Where should notices to the creditor be sent?<br>¿A dónde deberían enviarse las notificaciones al acreedor?<br><br>**Puerto Rico Industrial Development Company**<br>P.O. Box 362350<br>San Juan, PR 00936-2350<br><br><br>**(787) 764-6966**<br>Contact phone / Teléfono de contacto<br><br>**anabelle.centeno@pridco.pr.gov**<br>Contact email / Correo electrónico de contacto | Where should payments to the creditor be sent? (if different)<br>¿A dónde deberían enviarse los pagos al acreedor? (En caso de que sea diferente)<br><br><br><br><br><br><br><br><br>Contact phone / Teléfono de contacto<br><br><br>Contact email / Correo electrónico de contacto |

| 4. | Does this claim amend one already filed?<br><br>¿Esta reclamación es una enmienda de otra presentada anteriormente? | ☒ No / No<br>☐ Yes.  Claim number on court claims registry (if known)<br>      Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)_____<br>      Filed on / Presentada el _____(MM /DD/YYYY) / (DD/MM/AAAA) |
|---|---|---|

| 5. | Do you know if anyone else has filed a proof of claim for this claim?<br><br>¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación? | ☒ No / No<br>☐ Yes. Who made the earlier filing?<br>      Sí.  ¿Quién hizo la reclamación anterior?_____ |
|---|---|---|

**Part 2 / Parte 2:**   Give Information About the Claim as of the Petition Date

Complete toda la información acerca de la reclamación desde fecha en la que se presentó el caso.

| 6. | Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?<br><br>¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico? | ☒ No / No<br>☐ Yes.  Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)<br>      Sí.  Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/.)<br><br>      _____ |
|---|---|---|

| 7. | Do you supply goods and / or services to the government?<br><br>¿Proporciona bienes y / o servicios al gobierno? | ☒ No / No<br>☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:<br><br>      Vendor / Contract Number | Número de proveedor / contrato: _____<br><br>      List any amounts due after the Petition Date (listed above) but before June 30, 2017:<br>      Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $ _____ |
|---|---|---|

| | |
|---|---|
| **8. How much is the claim?**<br><br>**¿Cuál es el importe de la reclamación?** | $ 1,041,494.73 _____ . **Does this amount include interest or other charges?**<br>**¿Este importe incluye intereses u otros cargos?**<br>[X] No / No<br>[ ] Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).<br>Sí. Adjunte un balance con intereses detallados, honorarios, gastos u otros cargos exigidos por la Norma de Quiebras 3001(c)(2)(A). |

| | |
|---|---|
| **9. What is the basis of the claim?**<br><br>**¿Cuál es el fundamento de la reclamación?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.<br><br>Arrendamiento de propiedad inmueble<br>_____ |

| | |
|---|---|
| **10. Is all or part of the claim secured?**<br><br>**¿La reclamación está garantizada de manera total o parcial?** | [X] No / No<br>[ ] Yes. The claim is secured by a lien on property.<br>Sí. La reclamación está garantizada por un derecho de retención sobre un bien.<br><br>    **Nature of property / Naturaleza del bien:**<br>    [ ] Motor vehicle / Vehículos<br><br>    [ ] Other. Describe:<br>    Otro. Describir: _____<br><br>    **Basis for perfection / Fundamento de la realización de pasos adicionales:**<br>    _____<br>    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br>    Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.)<br><br>    **Value of property / Valor del bien:** $ _____<br><br>    **Amount of the claim that is secured /**<br>    **Importe de la reclamación que está garantizado:** $ _____<br><br>    **Amount of the claim that is unsecured /**<br>    **Importe de la reclamación que no está garantizado:** $ _____<br>    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br>    (La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)<br><br>    **Amount necessary to cure any default as of the Petition Date /**<br>    **Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso :**<br>    $ _____<br><br>    **Annual Interest Rate** (on the Petition Date)<br>    **Tasa de interés anual** (cuando se presentó el caso)_____%<br>    [ ] Fixed / Fija<br>    [ ] Variable / Variable |

| | |
|---|---|
| **11. Is this claim based on a lease?**<br><br>**¿Esta reclamación está basada en un arrendamiento?** | [ ] No / No<br>[X] Yes. **Amount necessary to cure any default as of the Petition Date.**<br>Sí. **Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso**<br>$ _____ 1,041494.73 |

| | |
|---|---|
| **12. Is this claim subject to a right of setoff?**<br><br>**¿La reclamación está sujeta a un derecho de compensación?** | ☒ No / No<br><br>☐ Yes. Identify the property /<br>Sí. Identifique el bien: _____ |
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**<br><br>**¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.?** | ☒ No / No<br><br>☐ **Yes. Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.**    $_____<br><br>Sí. **Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en el que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación.** |

## Part 3 / Parte 3:

### Sign Below / Firmar a continuación

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha. FRBP 9011(b).**

Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma.

*Check the appropriate box / Marque la casilla correspondiente:*

☐ I am the creditor. / Soy el acreedor.

☒ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.

I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.

**Signature:**   *Anabelle Centeno Berríos*
Anabelle Centeno Berríos (May 24, 2018)

Signature / Firma _____   **Email:**  anabelle.centeno@pridco.pr.gov

**Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:**

Name _____   **Anabelle Centeno-Berríos** _____
First name / Primer nombre      Middle name / Segundo nombre      Last name / Apellido

Title / Cargo   **Legal Counsel** _____

Company / Compañía **Compañía de Fomento Industrial** _____
Identify the corporate servicer as the company if the authorized agent is a servicer.
Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador.

Address / Dirección  **P.O. Box 362350** _____
Number / Número      Street / Calle

**San Juan** _____   **PR**   **00936-2350** _____
City / Ciudad                      State / Estado      ZIP Code / Código postal

Contact phone / Teléfono de contacto **(787) 764-6966** ___ Email / Correo electrónico anabelle.centeno@pridco.pr.gov

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

[x] **have supporting documentation.**
     **(attach below)**

[ ] I do **not** have supporting documentation.

Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                                          12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

## How to fill out this form

- **Fill in all of the information about the claim as of the petition date.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.** Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form or contact the Claims and Noticing Agent at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), or by email at puertoricoinfo@primeclerk.com. You may view a list of filed claims in the Title III cases by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/puertorico.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. § 503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the petition date, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the petition date. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy or confidential information. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

---

**Do not file these instructions with your form**

---

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

**If by first class mail:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4708
New York, NY 10163-4708

**If by overnight courier or hand delivery:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk, LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

# Instrucciones para la Evidencia de reclamación

Tribunal de Quiebras de los Estados Unidos                                                   12/15

**Estas instrucciones y definiciones explican la ley de forma general. En ciertas circunstancias, tales como casos de quiebra que los deudores no presentan de forma voluntaria, se pueden aplicar excepciones a estas normas generales. Debe considerar la posibilidad de obtener el asesoramiento de un abogado, en especial si no conoce el proceso de quiebra y las reglamentaciones de privacidad.**

## Cómo completar este formulario

- **Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.**

- **Complete el título en la parte superior del formulario.**

- **Si la reclamación se ha adquirido de otra persona, indique la identidad de la última parte** que fue propietaria de la reclamación o fue titular de la reclamación y que la transfirió a usted antes de que se presente la reclamación inicial.

- **Adjunte cualquier documento de respaldo a este formulario.**
  Adjunte copias editadas de cualquier documento que demuestre que la deuda existe, que un gravamen garantiza la deuda, o ambos. (Ver la definición de *edición* en la siguiente página).

  También adjunte copias editadas de cualquier documento que demuestre el perfeccionamiento de un derecho de garantía o cualquier cesión o transferencia de la deuda. Además de los documentos, puede agregarse un resumen. Norma federal del procedimiento de quiebra (denominada "Norma de quiebra") 3001(c) y (d).

- **No adjunte documentos originales, ya que es posible que los documentos adjuntos se destruyan luego de examinarlos.**

- **Si la reclamación se basa en la prestación de bienes o servicios de atención médica, no divulgue información de atención médica confidencial. Omita o edite la información confidencial tanto en la reclamación como en los documentos adjuntos.**

- **El formulario de *Evidencia de reclamación* y los documentos adjuntos solo deben mostrar los últimos 4 dígitos de un número de seguridad social, el número de identificación tributaria de una persona o un número de cuenta financiera, y solo el año de la fecha de nacimiento de una persona.** Ver la Norma de quiebra 9037.

- **En el caso de un menor, complete solamente las iniciales del menor y el nombre completo y la dirección del padre o madre o el tutor del menor.** Por ejemplo, escriba *A.B., un menor* (*John Doe, padre, calle 123, ciudad, estado*). Ver la Norma de quiebra 9037.

## Confirmación de que se ha presentado la reclamación

Para recibir una confirmación de que se ha presentado la reclamación, puede adjuntar un sobre autodirigido y estampillado y una copia de este formulario o comunicarse con el representante de reclamaciones y notificaciones al (844) 822-9231 (número gratuito para EE. UU. y Puerto Rico) o al (646) 486-7944 (para llamadas internacionales), o por correo electrónico a puertoricoinfo@primeclerk.com. Para ver una lista de las reclamaciones presentadas en los casos del Título III, visite el sitio web del representante de reclamaciones y notificaciones en https://cases.primeclerk.com/puertorico.

## Comprenda los términos utilizados en este formulario

**Gastos administrativos:** En términos generales, gastos que se generan luego de presentar un caso de quiebra en relación con el manejo, la liquidación o la distribución del patrimonio de la quiebra.
Título 11 § 503 del Código de los Estados Unidos (U.S.C.).

**Reclamación:** El derecho de un acreedor a recibir un pago por una deuda del deudor a la fecha en la que el deudor solicitó la quiebra. Título 11 §101 (5) del U.S.C. Una reclamación puede estar garantizada o no garantizada.

**Reclamación de conformidad con el Título 11 § 503(b)(9) del U.S.C.:** Una reclamación que surge del valor de cualquier bien recibido por el Deudor dentro de los 20 días anteriores a la fecha en la que se presentó el caso , en el que los bienes se han vendido al Deudor en el transcurso normal de los negocios del Deudor. Adjunte la documentación que respalde dicha reclamación.

**Acreedor:** Una persona, una sociedad anónima u otra entidad con la que el deudor tiene una deuda que se contrajo en la fecha en la que el deudor solicitó la quiebra o con anterioridad. Título 11 § 101 (10) del U.S.C.

**Deudor:** Una persona, una sociedad anónima u otra entidad que está en quiebra. Utilice el nombre del deudor y el número de caso tal como se muestran en el aviso de quiebra que recibió. Título 11 § 101 (13) del U.S.C.

**Prueba de pasos adicionales:** La prueba de la realización de pasos adicionales para hacer valer un derecho de garantía puede incluir documentos que demuestren que se ha presentado o registrado un derecho de garantía, tal como una hipoteca, un derecho de retención, un certificado de propiedad o una declaración de financiamiento.

**Información que debe mantenerse en privado:** El formulario de *Evidencia de reclamación* y los documentos adjuntos solo deben mostrar los últimos 4 dígitos de un número de seguridad social, el número de identificación tributaria de una persona o un número de cuenta financiera, y solo las iniciales del nombre de un menor y el año de la fecha de nacimiento de una persona. Si una reclamación se basa en la prestación de bienes o servicios de atención médica, limite la divulgación de los bienes o servicios a fin de evitar la incomodidad o la divulgación de información de atención médica confidencial. Es posible que, más adelante, se le solicite que brinde más información si el síndico u otra persona de interés se opone a la reclamación.

**Evidencia de reclamación:** Un formulario que detalla el monto de la deuda que el deudor mantiene con un acreedor a la fecha de la presentación. El formulario debe ser presentado en el distrito donde el caso se encuentra pendiente de resolución.

**Edición de información:** Ocultamiento, corrección, o eliminación de cierta información para proteger la privacidad o la información confidencial. Quienes presenten la documentación deben editar u omitir información sujeta a **privacidad** en el formulario de *Evidencia de reclamación* y en cualquier documento adjunto.

**Reclamación garantizada en virtud del Título 11 § 506(a) del U.S.C.:** Una reclamación respaldada por un derecho de retención sobre un bien en particular del deudor. Una reclamación está garantizada en la medida que un acreedor tenga el derecho a recibir un pago proveniente del bien antes de que se les pague a otros acreedores. El monto de una reclamación garantizada generalmente no puede ser mayor que el valor del bien en particular sobre el cual el acreedor mantiene un derecho de retención. Cualquier monto adeudado a un acreedor que sea mayor que el valor del bien generalmente se lo considera una reclamación no garantizada. Sin embargo, existen excepciones; por ejemplo, el Título 11 § 1322(b) del U.S.C., y la oración final de § 1325(a).

Algunos ejemplos de derechos de retención sobre bienes incluyen una hipoteca sobre un inmueble o un derecho de garantía sobre un automóvil. Un derecho de retención puede ser otorgado de manera voluntaria por un deudor o puede obtenerse a través de un procedimiento judicial. En algunos estados, una resolución judicial puede ser un derecho de retención.

**Compensación:** Ocurre cuando un acreedor se paga a sí mismo con dinero que pertenece al deudor y que mantiene en su poder, o cuando el acreedor cancela una deuda que mantiene con el deudor.

**Reclamación no garantizada:** Una reclamación que no cumple con los requisitos de una reclamación garantizada. Una reclamación puede no estar garantizada en parte en la medida que el monto de la reclamación sea mayor que el valor del bien sobre la cual un acreedor tiene un derecho de retención.

## Ofrecimiento de compra de una reclamación

Algunas entidades compran reclamaciones por un monto menor que su valor nominal. Estas entidades pueden contactar a acreedores para ofrecerles la compra de sus reclamaciones. Algunas comunicaciones por escrito de estas entidades pueden confundirse fácilmente con documentación judicial oficial o con comunicaciones del deudor. Estas entidades no representan al tribunal de quiebras, al síndico de la quiebra, ni al deudor. Un acreedor no tiene obligación alguna de vender su reclamación. Sin embargo, si decide hacerlo, cualquier transferencia de esa reclamación está sujeta a la Norma de Quiebras 3001(e), a las correspondientes disposiciones del Código de Quiebras (Título 11 § 101 y subsiguientes del U.S.C.) y a cualquier resolución del tribunal de quiebras que corresponda al caso.

## Envíe la(s) Evidencia(s) de reclamación completa(s) a:

**Si por correo de primera clase:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4708
New York, NY 10163-4708

**Si por el mensajero de una noche o la entrega de mensajero a mano:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk, LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

---

## No presente estas instrucciones con su formulario

PRDICO
CTB-177R
R-4-09

Estado Libre Asociado de Puerto Rico
COMPAÑIA DE FOMENTO INDUSTRIAL DE PUERTO RICO
San Juan, Puerto Rico

CERTIFICACION DE DEUDA

Certificamos que al _____ 16 _____ de _____ mayo _____ de _____ 2018 _____

La empresa **DEPARTAMENTO DE EDUCACION**

Numero de cliente **D3000**

Adeuda lo siguiente:

| Renta: | | |
|---|---|---|
| | L393080000 | $64.00 |
| | S096306800 | $472,116.71 |
| | T033505600 | $50,635.27 |
| | T103007000 | $167,477.22 |
| | T112207300 | $233,988.30 |

| Seguro: | | |
|---|---|---|
| | M006205103 | $485.17 |
| | M006205104 | $1,151.00 |
| | S096306800 | $20,760.00 |
| | T019605400 | $9,785.05 |
| | T033505600 | $38,417.88 |
| | T103007000 | $17,783.00 |
| | T112207300 | $46,258.29 |

Préstamo:
Principal — $0.00
Interesés — $0.00

Interés (se acumulan $ _____ por día) $0.00

Otros: OTHER REC. (RENT GUARANTEE DEPOSIT) $622.81
$0.00
$0.00

Total: **$1,059,544.70**

Depositos:
Renta: ($4,844.09)
Otros: $0.00

Total: **($4,844.09)**

Comentarios: Balance al 3/Mayo/2017, es $1,041,494.73

☐ No adeuda importe alguno.

PREPARADO POR:                     CERTIFICO CORRECTO:

Hector M. Reyes Colon              Jamille E. Muriente Díaz
Nombre del Contador                Nombre del Supervisor
                                   Oficina de Contraloria

Firma del Contador                 Firma del Supervisor
                                   Oficina de Contraloria

## Open Invoices

*At 5/16/2018*

| Customer ID | Account # | Account Name | Customer Name |
|---|---|---|---|
| D3000 | 0110901150019 | RENTALS UNDER LEGAL ACTION-BILLED | DEPARTAMENTO DE EDUCACION |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| L393080000 | 5/28/2014 | 110800156-03RR | $1.00 | | | RENT - 110800156-03 |
| L393080000 | 5/28/2014 | 120600161-03RR | $1.00 | | | RENT - 120600161-03 |
| L393080000 | 5/28/2014 | 120800166-03RR | $1.00 | | | RENT - 120800166-03 |
| L393080000 | 5/28/2014 | 121000167-03RR | $1.00 | | | RENT - 121000167-03 |
| L393080000 | 5/28/2014 | 131200165-01R | $1.00 | | | RENT - 131200165-01 |
| L393080000 | 5/28/2014 | 140100164-01R | $1.00 | | | RENT - 140100164-01 |
| L393080000 | 5/28/2014 | 100700150-03RR | $1.00 | | | RENT - 100700150-03 |
| L393080000 | 5/28/2014 | 110500156-03RR | $1.00 | | | RENT - 110500156-03 |
| L393080000 | 5/28/2014 | 120200158-03RR | $1.00 | | | RENT - 120200158-03 |
| L393080000 | 5/28/2014 | 120500160-03RR | $1.00 | | | RENT - 120500160-03 |
| L393080000 | 5/28/2014 | 120700162-03RR | $1.00 | | | RENT - 120700162-03 |
| L393080000 | 5/28/2014 | 130200167-03RR | $1.00 | | | RENT - 130200167-03 |
| L393080000 | 5/28/2014 | 130900167-01R | $1.00 | | | RENT - 130900167-01 |
| L393080000 | 5/28/2014 | 110100151-03RR | $1.00 | | | RENT - 110100151-03 |
| L393080000 | 5/28/2014 | 110400154-03RR | $1.00 | | | RENT - 110400154-03 |
| L393080000 | 5/28/2014 | 110900157-03RR | $1.00 | | | RENT - 110900157-03 |
| L393080000 | 5/28/2014 | 111000157-03RR | $1.00 | | | RENT - 111000157-03 |
| L393080000 | 5/28/2014 | 131100163-01R | $1.00 | | | RENT - 131100163-01 |
| L393080000 | 5/28/2014 | 140400162-01R | $1.00 | | | RENT - 140400162-01 |
| L393080000 | 5/28/2014 | 100800150-03RR | $1.00 | | | RENT - 100800150-03 |
| L393080000 | 5/28/2014 | 101000151-03RR | $1.00 | | | RENT - 101000151-03 |
| L393080000 | 5/28/2014 | 101100150-03RR | $1.00 | | | RENT - 101100150-03 |
| L393080000 | 5/28/2014 | 111200156-03RR | $1.00 | | | RENT - 111200156-03 |
| L393080000 | 5/28/2014 | 120300157-03RR | $1.00 | | | RENT - 120300157-03 |
| L393080000 | 5/28/2014 | 130500165-01RR | $1.00 | | | RENT - 130500165-01 |
| L393080000 | 5/28/2014 | 110700155-03RR | $1.00 | | | RENT - 110700155-03 |
| L393080000 | 5/28/2014 | 120100156-03RR | $1.00 | | | RENT - 120100156-03 |
| L393080000 | 5/28/2014 | 121200165-03RR | $1.00 | | | RENT - 121200165-03 |
| L393080000 | 5/28/2014 | 140300164-01R | $1.00 | | | RENT - 140300164-01 |
| L393080000 | 5/28/2014 | 101200149-03RR | $1.00 | | | RENT - 101200149-03 |
| L393080000 | 5/28/2014 | 110200151-03RR | $1.00 | | | RENT - 110200151-03 |
| L393080000 | 5/28/2014 | 110600157-03RR | $1.00 | | | RENT - 110600157-03 |
| L393080000 | 5/28/2014 | 120400159-03RR | $1.00 | | | RENT - 120400159-03 |
| L393080000 | 5/28/2014 | 120900166-03RR | $1.00 | | | RENT - 120900166-03 |
| L393080000 | 5/28/2014 | 121100168-03RR | $1.00 | | | RENT - 121100168-03 |

## Open Invoices

*At 5/16/2018*

| | | | | | |
|---|---|---|---|---|---|
| **Customer ID** | **Account #** | **Account Name** | **Customer Name** | | |
| D3000 | 0110901150019 | RENTALS UNDER LEGAL ACTION- BILLED | DEPARTAMENTO DE EDUCACION | | |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| L393080000 | 5/28/2014 | 130700164-01RR | $1.00 | | | RENT - 130700164-01 |
| L393080000 | 5/28/2014 | 100900151-03RR | $1.00 | | | RENT - 100900151-03 |
| L393080000 | 5/28/2014 | 130300167-01RR | $1.00 | | | RENT - 130300167-01 |
| L393080000 | 5/28/2014 | 130800166-01RR | $1.00 | | | RENT - 130800166-01 |
| L393080000 | 5/28/2014 | 110300157-03RR | $1.00 | | | RENT - 110300157-03 |
| L393080000 | 5/28/2014 | 111100157-03RR | $1.00 | | | RENT - 111100157-03 |
| L393080000 | 5/28/2014 | 130100167-03RR | $1.00 | | | RENT - 130100167-03 |
| L393080000 | 5/28/2014 | 130400164-01RR | $1.00 | | | RENT - 130400164-01 |
| L393080000 | 5/28/2014 | 130600166-01RR | $1.00 | | | RENT - 130600166-01 |
| L393080000 | 5/28/2014 | 140200166-01R | $1.00 | | | RENT - 140200166-01 |
| L393080000 | 5/28/2014 | 140500162-01R | $1.00 | | | RENT - 140500162-01 |
| L393080000 | 6/1/2014 | 140600161 | $1.00 | | | RENT - 140600161 |
| L393080000 | 7/1/2014 | 140700160 | $1.00 | | | RENT - 140700160 |
| L393080000 | 8/1/2014 | 140800158 | $1.00 | | | RENT - 140800158 |
| L393080000 | 10/1/2014 | 141000159 | $1.00 | | | RENT - 141000159 |
| L393080000 | 12/1/2014 | 141200155 | $1.00 | | | RENT - 141200155 |
| L393080000 | 1/1/2015 | 150100154 | $1.00 | | | RENT - 150100154 |
| L393080000 | 2/1/2015 | 150200153 | $1.00 | | | RENT - 150200153 |
| L393080000 | 4/1/2015 | 150400151 | $1.00 | | | RENT - 150400151 |
| L393080000 | 5/1/2015 | 150500152 | $1.00 | | | RENT - 150500152 |
| L393080000 | 6/1/2015 | 150600153 | $1.00 | | | RENT - 150600153 |
| L393080000 | 7/1/2015 | 150700153 | $1.00 | | | RENT - 150700153 |
| L393080000 | 8/1/2015 | 150800153 | $1.00 | | | RENT - 150800153 |
| L393080000 | 9/1/2015 | 150900152 | $1.00 | | | RENT - 150900152 |
| L393080000 | 10/1/2015 | 151000153 | $1.00 | | | RENT - 151000153 |
| L393080000 | 11/1/2015 | 151100153 | $1.00 | | | RENT - 151100153 |
| L393080000 | 12/1/2015 | 151200152 | $1.00 | | | RENT - 151200152 |
| L393080000 | 1/1/2016 | 160100151 | $1.00 | | | RENT - 160100151 |
| L393080000 | 2/1/2016 | 160200154 | $1.00 | | | RENT - 160200154 |
| | | Total L393080000 | $64.00 | $0.00 | $64.00 | |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| S096306800 | 5/28/2014 | 110600157-04RR | $11,541.56 | | | RENT - 110600157-04 |
| S096306800 | 5/28/2014 | 120300157-04RR | $11,541.56 | | | RENT - 120300157-04 |
| S096306800 | 5/28/2014 | 120600161-04RR | $11,541.56 | | | RENT - 120600161-04 |

## Open Invoices

*At 5/16/2018*

| Customer ID | Account # | Account Name | Customer Name |
|---|---|---|---|
| D3000 | 0110901150019 | RENTALS UNDER LEGAL ACTION-BILLED | DEPARTAMENTO DE EDUCACION |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| S096306800 | 5/28/2014 | 130400164-02RR | $11,541.56 | | | RENT - 130400164-02 |
| S096306800 | 5/28/2014 | 130700164-05RR | $11,541.56 | | | RENT - 130700164-05 |
| S096306800 | 5/28/2014 | 140300164-05R | $11,541.56 | | | RENT - 140300164-05 |
| S096306800 | 5/28/2014 | 140400162-05R | $11,541.56 | | | RENT - 140400162-05 |
| S096306800 | 5/28/2014 | 110500155-01RRR | $11,541.56 | | | RENT - 110500155-01 |
| S096306800 | 5/28/2014 | 111000157-04RR | $11,541.56 | | | RENT - 111000157-04 |
| S096306800 | 5/28/2014 | 121100168-04RR | $11,541.56 | | | RENT - 121100168-04 |
| S096306800 | 5/28/2014 | 130200167-04RR | $11,541.56 | | | RENT - 130200167-04 |
| S096306800 | 5/28/2014 | 130800166-05RR | $11,541.56 | | | RENT - 130800166-05 |
| S096306800 | 5/28/2014 | 110700155-04RR | $11,541.56 | | | RENT - 110700155-04 |
| S096306800 | 5/28/2014 | 110800156-04RR | $11,541.56 | | | RENT - 110800156-04 |
| S096306800 | 5/28/2014 | 131200165-05R | $11,541.56 | | | RENT - 131200165-05 |
| S096306800 | 5/28/2014 | 140500162-05R | $11,541.56 | | | RENT - 140500162-05 |
| S096306800 | 5/28/2014 | I201142710343RR | $14,577.16 | | | FACTURACION MISCELANEA PERIODO 03/24/2011 @ 04/30/2011. |
| S096306800 | 5/28/2014 | 111100157-04RR | $11,541.56 | | | RENT - 111100157-04 |
| S096306800 | 5/28/2014 | 120400159-04RR | $11,541.56 | | | RENT - 120400159-04 |
| S096306800 | 5/28/2014 | 121200165-04RR | $11,541.56 | | | RENT - 121200165-04 |
| S096306800 | 5/28/2014 | 130300167-02RR | $11,541.56 | | | RENT - 130300167-02 |
| S096306800 | 5/28/2014 | 131000165-05R | $11,541.56 | | | RENT - 131000165-05 |
| S096306800 | 5/28/2014 | 140200166-05R | $11,541.56 | | | RENT - 140200166-05 |
| S096306800 | 5/28/2014 | 110900157-04RR | $8,177.61 | | | RENT - 110900157-04 |
| S096306800 | 5/28/2014 | 120100156-04RR | $11,541.56 | | | RENT - 120100156-04 |
| S096306800 | 5/28/2014 | 120200158-04RR | $11,541.56 | | | RENT - 120200158-04 |
| S096306800 | 5/28/2014 | 130100167-04RR | $11,541.56 | | | RENT - 130100167-04 |
| S096306800 | 5/28/2014 | 120500160-04RR | $11,541.56 | | | RENT - 120500160-04 |
| S096306800 | 5/28/2014 | 120700162-04RR | $11,541.56 | | | RENT - 120700162-04 |
| S096306800 | 5/28/2014 | 121000167-04RR | $11,541.56 | | | RENT - 121000167-04 |
| S096306800 | 5/28/2014 | 130500165-05RR | $11,541.56 | | | RENT - 130500165-05 |
| S096306800 | 5/28/2014 | 130900167-05R | $11,541.56 | | | RENT - 130900167-05 |
| S096306800 | 5/28/2014 | 131100163-05R | $11,541.56 | | | RENT - 131100163-05 |
| S096306800 | 5/28/2014 | 111200156-04RR | $11,541.56 | | | RENT - 111200156-04 |
| S096306800 | 5/28/2014 | 120800166-04RR | $11,541.56 | | | RENT - 120800166-04 |
| S096306800 | 5/28/2014 | 120900166-04RR | $11,541.56 | | | RENT - 120900166-04 |
| S096306800 | 5/28/2014 | 130600166-05RR | $11,541.56 | | | RENT - 130600166-05 |
| S096306800 | 5/28/2014 | 140100164-05R | $11,541.56 | | | RENT - 140100164-05 |

## Open Invoices

*At 5/16/2018*

| Customer ID | Account # | Account Name | Customer Name |
|---|---|---|---|
| D3000 | 0110901150019 | RENTALS UNDER LEGAL ACTION-BILLED | DEPARTAMENTO DE EDUCACION |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| S096306800 | 6/1/2014 | 140600161 | $11,541.56 | | | RENT - 140600161 |
| S096306800 | 7/1/2014 | 140700160 | $11,541.56 | | | RENT - 140700160 |
| S096306800 | 8/1/2014 | 140800158 | $10,782.66 | | | RENT - 140800158 |
| | | **Total S096306800** | **$472,116.71** | **$0.00** | **$472,116.71** | |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| T033505600 | 5/28/2014 | 130500165-03RR | $432.51 | | | RENT - 130500165-03 |
| T033505600 | 5/28/2014 | 130700164-03RR | $432.51 | | | RENT - 130700164-03 |
| T033505600 | 5/28/2014 | 130800166-03RR | $432.51 | | | RENT - 130800166-03 |
| T033505600 | 5/28/2014 | 130300167-04RR | $432.51 | | | RENT - 130300167-04 |
| T033505600 | 5/28/2014 | 140300164-03R | $432.51 | | | RENT - 140300164-03 |
| T033505600 | 5/28/2014 | 130900167-03R | $432.51 | | | RENT - 130900167-03 |
| T033505600 | 5/28/2014 | 131000165-03R | $433.51 | | | RENT - 131000165-03 |
| T033505600 | 5/28/2014 | 131200165-03R | $432.51 | | | RENT - 131200165-03 |
| T033505600 | 5/28/2014 | 140200166-03R | $432.51 | | | RENT - 140200166-03 |
| T033505600 | 5/28/2014 | I201322715635RRR | $432.51 | | | FACTURACION MISCELANEA PERIODO 2/01/2013 @ 2/28/2013. |
| T033505600 | 5/28/2014 | 130400164-04RR | $432.51 | | | RENT - 130400164-04 |
| T033505600 | 5/28/2014 | 130600166-03RR | $432.51 | | | RENT - 130600166-03 |
| T033505600 | 5/28/2014 | 140500162-03R | $432.51 | | | RENT - 140500162-03 |
| T033505600 | 5/28/2014 | 120600161-02RR | $270.00 | | | RENT - 120600161-02 |
| T033505600 | 5/28/2014 | 131100163-03R | $432.51 | | | RENT - 131100163-03 |
| T033505600 | 5/28/2014 | 140100164-03R | $432.51 | | | RENT - 140100164-03 |
| T033505600 | 5/28/2014 | 140400162-03R | $432.51 | | | RENT - 140400162-03 |
| T033505600 | 6/1/2014 | 140600161 | $432.51 | | | RENT - 140600161 |
| T033505600 | 7/1/2014 | 140700160 | $432.51 | | | RENT - 140700160 |
| T033505600 | 8/1/2014 | 140800158 | $432.51 | | | RENT - 140800158 |
| T033505600 | 10/1/2014 | 141000159 | $432.51 | | | RENT - 141000159 |
| T033505600 | 12/1/2014 | 141200155 | $3,796.46 | | | RENT - 141200155 |
| T033505600 | 1/1/2015 | 150100154 | $432.51 | | | RENT - 150100154 |
| T033505600 | 2/1/2015 | 150200153 | $432.51 | | | RENT - 150200153 |
| T033505600 | 3/1/2015 | 150300154 | $433.51 | | | RENT - 150300154 |
| T033505600 | 4/1/2015 | 150400151 | $432.51 | | | RENT - 150400151 |
| T033505600 | 5/1/2015 | 150500152 | $432.51 | | | RENT - 150500152 |
| T033505600 | 6/1/2015 | 150600153 | $432.51 | | | RENT - 150600153 |
| T033505600 | 7/1/2015 | 150700153 | $432.51 | | | RENT - 150700153 |

## Open Invoices

*At 5/16/2018*

| Customer ID | Account # | Account Name | Customer Name |
|---|---|---|---|
| D3000 | 0110901150019 | RENTALS UNDER LEGAL ACTION-BILLED | DEPARTAMENTO DE EDUCACION |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| T033505600 | 8/1/2015 | 150800153 | $432.51 | | | RENT - 150800153 |
| T033505600 | 9/1/2015 | 150900152 | $432.51 | | | RENT - 150900152 |
| T033505600 | 10/1/2015 | 151000153 | $432.51 | | | RENT - 151000153 |
| T033505600 | 11/1/2015 | 151100153 | $432.51 | | | RENT - 151100153 |
| T033505600 | 12/1/2015 | 151200152 | $432.51 | | | RENT - 151200152 |
| T033505600 | 1/1/2016 | 160100151 | $432.51 | | | RENT - 160100151 |
| T033505600 | 2/1/2016 | 160200154 | $432.51 | | | RENT - 160200154 |
| T033505600 | 3/1/2016 | 160300153 | $432.51 | | | RENT - 160300153 |
| T033505600 | 4/1/2016 | 160400151 | $432.51 | | | RENT - 160400151 |
| T033505600 | 5/1/2016 | 160500151 | $432.51 | | | RENT - 160500151 |
| T033505600 | 6/1/2016 | 160600154 | $432.51 | | | RENT - 160600154 |
| T033505600 | 7/1/2016 | 160700154 | $432.51 | | | RENT - 160700154 |
| T033505600 | 8/1/2016 | 160800150 | $432.51 | | | RENT - 160800150 |
| T033505600 | 9/1/2016 | 160900151 | $432.51 | | | RENT - 160900151 |
| T033505600 | 10/1/2016 | 161000149 | $432.51 | | | RENT - 161000149 |
| T033505600 | 11/1/2016 | 161100146 | $432.51 | | | RENT - 161100146 |
| T033505600 | 12/1/2016 | 161200144 | $3,796.46 | | | RENT - 161200144 |
| T033505600 | 1/1/2017 | 170100145 | $432.51 | | | RENT - 170100145 |
| T033505600 | 2/1/2017 | 170200143 | $432.51 | | | RENT - 170200143 |
| T033505600 | 3/1/2017 | 170300143 | $432.51 | | | RENT - 170300143 |
| T033505600 | 4/1/2017 | 170400142 | $432.51 | | | RENT - 170400142 |
| T033505600 | 5/1/2017 | 170500142 | $432.51 | | | RENT - 170500142 |
| T033505600 | 6/1/2017 | 170600142 | $432.51 | | | RENT - 170600142 |
| T033505600 | 7/1/2017 | 170700145 | $432.51 | | | RENT - 170700145 |
| T033505600 | 8/1/2017 | 170800145 | $432.51 | | | RENT - 170800145 |
| T033505600 | 9/1/2017 | 170900143 | $432.51 | | | RENT - 170900143 |
| T033505600 | 10/1/2017 | 171000143 | $432.51 | | | RENT - 171000143 |
| T033505600 | 11/1/2017 | 171100144 | $432.51 | | | RENT - 171100144 |
| T033505600 | 12/1/2017 | 171200142 | $432.51 | | | RENT - 171200142 |
| T033505600 | 1/1/2018 | 180100142 | $3,796.46 | | | RENT - 180100142 |
| T033505600 | 2/1/2018 | 180200141 | $3,796.46 | | | RENT - 180200141 |
| T033505600 | 3/1/2018 | 180300142 | $3,796.46 | | | RENT - 180300142 |
| T033505600 | 4/1/2018 | 180400145 | $3,796.46 | | | RENT - 180400145 |
| T033505600 | 5/1/2018 | 180500145 | $3,796.46 | | | RENT - 180500145 |
| | | Total T033505600 | $50,635.27 | $0.00 | $50,635.27 | |

## Open Invoices

*At 5/16/2018*

| Customer ID | Account # | Account Name | Customer Name |
|---|---|---|---|
| D3000 | 0110901150019 | RENTALS UNDER LEGAL ACTION-BILLED | DEPARTAMENTO DE EDUCACION |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| T103007000 | 5/28/2014 | 120100156-05RR | $8,954.13 | | | RENT - 120100156-05 |
| T103007000 | 5/28/2014 | 120500160-05RR | $27.97 | | | RENT - 120500160-05 |
| T103007000 | 5/28/2014 | 120800166-05RR | $8,954.13 | | | RENT - 120800166-05 |
| T103007000 | 5/28/2014 | 130500165-02RR | $8,954.13 | | | RENT - 130500165-02 |
| T103007000 | 5/28/2014 | 130800166-02RR | $27.97 | | | RENT - 130800166-02 |
| T103007000 | 5/28/2014 | 130900167-02R | $27.97 | | | RENT - 130900167-02 |
| T103007000 | 5/28/2014 | 131200165-02R | $27.97 | | | RENT - 131200165-02 |
| T103007000 | 5/28/2014 | 140100164-02R | $27.97 | | | RENT - 140100164-02 |
| T103007000 | 5/28/2014 | 140300164-02R | $27.97 | | | RENT - 140300164-02 |
| T103007000 | 5/28/2014 | 111200156-05RR | $8,954.13 | | | RENT - 111200156-05 |
| T103007000 | 5/28/2014 | 121000167-05RR | $8,954.13 | | | RENT - 121000167-05 |
| T103007000 | 5/28/2014 | 130700164-02RR | $27.97 | | | RENT - 130700164-02 |
| T103007000 | 5/28/2014 | 140200166-02R | $27.97 | | | RENT - 140200166-02 |
| T103007000 | 5/28/2014 | 140500162-02R | $27.97 | | | RENT - 140500162-02 |
| T103007000 | 5/28/2014 | 120200158-05RR | $8,954.13 | | | RENT - 120200158-05 |
| T103007000 | 5/28/2014 | 120600161-05RR | $27.97 | | | RENT - 120600161-05 |
| T103007000 | 5/28/2014 | 130600166-02RR | $8,954.13 | | | RENT - 130600166-02 |
| T103007000 | 5/28/2014 | 131100163-02R | $27.97 | | | RENT - 131100163-02 |
| T103007000 | 5/28/2014 | I201172211067RR | $11,897.96 | | | FACTURACION MISCELANEA PERIODO 06/21/2011 @ 07/31/2011. |
| T103007000 | 5/28/2014 | 111000157-05RR | $8,954.13 | | | RENT - 111000157-05 |
| T103007000 | 5/28/2014 | 120700162-05RR | $8,954.13 | | | RENT - 120700162-05 |
| T103007000 | 5/28/2014 | 121100168-05RR | $6,780.33 | | | RENT - 121100168-05 |
| T103007000 | 5/28/2014 | 130300167-03RR | $27.97 | | | RENT - 130300167-03 |
| T103007000 | 5/28/2014 | 110900157-05RR | $27.97 | | | RENT - 110900157-05 |
| T103007000 | 5/28/2014 | 111100157-05RR | $27.97 | | | RENT - 111100157-05 |
| T103007000 | 5/28/2014 | 120300157-05RR | $8,954.13 | | | RENT - 120300157-05 |
| T103007000 | 5/28/2014 | 120400159-05RR | $8,954.13 | | | RENT - 120400159-05 |
| T103007000 | 5/28/2014 | 120900166-05RR | $8,954.13 | | | RENT - 120900166-05 |
| T103007000 | 5/28/2014 | 130100167-05RR | $8,954.13 | | | RENT - 130100167-05 |
| T103007000 | 5/28/2014 | 110800156-05RR | $8,954.13 | | | RENT - 110800156-05 |
| T103007000 | 5/28/2014 | 130200167-05RR | $8,954.13 | | | RENT - 130200167-05 |
| T103007000 | 5/28/2014 | 130400164-03RR | $27.97 | | | RENT - 130400164-03 |
| T103007000 | 5/28/2014 | 140400162-02R | $27.97 | | | RENT - 140400162-02 |
| T103007000 | 5/28/2014 | 121200165-05RR | $5,590.18 | | | RENT - 121200165-05 |
| T103007000 | 5/28/2014 | 131000165-02R | $27.97 | | | RENT - 131000165-02 |

## Open Invoices

*At 5/16/2018*

| Customer ID | Account # | Account Name | Customer Name |
|---|---|---|---|
| D3000 | 0110901150019 | RENTALS UNDER LEGAL ACTION-BILLED | DEPARTAMENTO DE EDUCACION |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| T103007000 | 6/1/2014 | 140600161 | $27.97 | | | RENT - 140600161 |
| T103007000 | 7/1/2014 | 140700160 | $27.97 | | | RENT - 140700160 |
| T103007000 | 8/1/2014 | 140800158 | $8,365.37 | | | RENT - 140800158 |
| | | **Total T103007000** | **$167,477.22** | **$0.00** | **$167,477.22** | |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| T112207300 | 5/28/2014 | 140300164-04R | $12,120.79 | | | RENT - 140300164-04 |
| T112207300 | 5/28/2014 | 130700164-04RR | $12,120.79 | | | RENT - 130700164-04 |
| T112207300 | 5/28/2014 | 140100164-04R | $12,120.79 | | | RENT - 140100164-04 |
| T112207300 | 5/28/2014 | 110700155-01RR | $0.06 | | | RENT - 110700155-01 |
| T112207300 | 5/28/2014 | 130800166-04RR | $12,120.79 | | | RENT - 130800166-04 |
| T112207300 | 5/28/2014 | 131000165-04R | $12,120.79 | | | RENT - 131000165-04 |
| T112207300 | 5/28/2014 | 130300167-05RR | $12,120.79 | | | RENT - 130300167-05 |
| T112207300 | 5/28/2014 | 130400164-05RR | $12,120.79 | | | RENT - 130400164-05 |
| T112207300 | 5/28/2014 | 130600166-04RR | $12,120.79 | | | RENT - 130600166-04 |
| T112207300 | 5/28/2014 | 130900167-04R | $12,120.79 | | | RENT - 130900167-04 |
| T112207300 | 5/28/2014 | 131100163-04R | $12,120.79 | | | RENT - 131100163-04 |
| T112207300 | 5/28/2014 | 140200166-04R | $12,120.79 | | | RENT - 140200166-04 |
| T112207300 | 5/28/2014 | 140500162-04R | $12,120.79 | | | RENT - 140500162-04 |
| T112207300 | 5/28/2014 | 131200165-04R | $12,120.79 | | | RENT - 131200165-04 |
| T112207300 | 5/28/2014 | 130500165-04RR | $12,120.79 | | | RENT - 130500165-04 |
| T112207300 | 5/28/2014 | 140400162-04R | $12,120.79 | | | RENT - 140400162-04 |
| T112207300 | 5/28/2014 | I201322715636RRR | $3,194.63 | | | FACTURACION MISCELANEA PERIODO 2/01/2013 @ 2/28/2013. |
| T112207300 | 6/1/2014 | 140600161 | $12,120.79 | | | RENT - 140600161 |
| T112207300 | 7/1/2014 | 140700160 | $12,120.79 | | | RENT - 140700160 |
| T112207300 | 8/1/2014 | 140800158 | $12,120.79 | | | RENT - 140800158 |
| T112207300 | 9/1/2014 | 140900159 | $498.60 | | | RENT - 140900159 |
| T112207300 | 10/1/2014 | 141000159 | $12,120.79 | | | RENT - 141000159 |
| | | **Total T112207300** | **$233,988.30** | **$0.00** | **$233,988.30** | |
| | | **Total for 0110901150019** | **$924,281.50** | **$0.00** | **$924,281.50** | |

## Open Invoices

*At 5/16/2018*

| Customer ID | Account # | Account Name | Customer Name |
|---|---|---|---|
| D3000 | 0111202100019 | OTHER RECEIVABLES  CURR | DEPARTAMENTO DE EDUCACION |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| | 4/4/2003 | 155200-A | | $26,141.86 | | Null Credit - 155200-A |
| | 11/1/2007 | 155200-A | $26,141.86 | | | Null Credit - 155200-A |
| | | Total | $26,141.86 | $26,141.86 | $0.00 | |
| | | Total for 0111202100019 | $26,141.86 | $26,141.86 | $0.00 | |

| Customer ID | Account # | Account Name | Customer Name |
|---|---|---|---|
| D3000 | 0111202150019 | OTHER RECEIVABLES- INSURANCE | DEPARTAMENTO DE EDUCACION |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| | 4/19/2011 | | | $26,141.86 | | Reclass Import |
| | | Total | $0.00 | $26,141.86 | ($26,141.86) | |
| | 4/20/2011 | I20146625958 | $26,141.86 | | | APPLY  TRANSACTION SEGUROS |
| | | Total | $26,141.86 | $0.00 | $26,141.86 | |
| M006205103 | 4/19/2011 | MISC04060002  R | $485.17 | | | |
| | | Total M006205103 | $485.17 | $0.00 | $485.17 | |
| M006205104 | 4/19/2011 | INSUR03060022  R | $1,151.00 | | | INS 2003-2004 FOR M0 |
| | | Total M006205104 | $1,151.00 | $0.00 | $1,151.00 | |
| S096306800 | 5/22/2012 | INS120300045-04 | $6,385.00 | | | INS - Insurance Billing |
| S096306800 | 5/24/2013 | INS130300051-03 | $7,066.00 | | | INS - Insurance Billing |
| S096306800 | 4/23/2014 | INS140300042-03 | $7,309.00 | | | INS - Insurance Billing |
| | | Total S096306800 | $20,760.00 | $0.00 | $20,760.00 | |
| T019605400 | 4/19/2011 | 060500241-01  R | $6,684.89 | | | INSR060500241 |
| T019605400 | 4/19/2011 | INSUR03060328  R | $3,100.16 | | | INS 2003-2004 FOR T0 |
| | | Total T019605400 | $9,785.05 | $0.00 | $9,785.05 | |
| T033505600 | 4/19/2011 | INSUR03060336  R | $1,218.56 | | | INS 2003-2004 FOR T0 |

**Open Invoices**

*At 5/16/2018*

| Customer ID | Account # | Account Name | Customer Name |
|---|---|---|---|
| D3000 | 0111202150019 | OTHER RECEIVABLES- INSURANCE | DEPARTAMENTO DE EDUCACION |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| T033505600 | 4/19/2011 | INS090300060-02R | $3,164.00 | | | Insurance Billing INS090300060-02 |
| T033505600 | 4/19/2011 | INSR020624401  R | $846.00 | | | INSR02060324 |
| T033505600 | 4/19/2011 | 060500247-01  R | $2,560.27 | | | INSR060500247 |
| T033505600 | 4/19/2011 | I070500229-01  R | $2,751.00 | | | Cargo anual Seguro 2 |
| T033505600 | 4/19/2011 | INS100300049-02R | $2,634.00 | | | INS - Insurance Billing |
| T033505600 | 4/19/2011 | INS080300063-02R | $2,914.05 | | | Insurance Billing 2008/2009 |
| T033505600 | 4/19/2011 | MISC04060288  R | $1,952.00 | | | |
| T033505600 | 6/13/2011 | INS110300046-02 | $2,634.00 | | | INS - Insurance Billing |
| T033505600 | 5/22/2012 | INS120300045-02 | $2,739.00 | | | INS - Insurance Billing |
| T033505600 | 5/24/2013 | INS130300051-01 | $3,030.00 | | | INS - Insurance Billing |
| T033505600 | 4/23/2014 | INS140300042-01 | $3,135.00 | | | INS - Insurance Billing |
| T033505600 | 6/5/2015 | INS150300038-01 | $3,465.00 | | | INS - INS150300038-01 |
| T033505600 | 5/19/2016 | INS160300029 | $2,607.00 | | | INS - INS160300029 |
| T033505600 | 6/1/2017 | INS170300040 | $2,768.00 | | | INS - INS170300040 |
| | | Total T033505600 | $38,417.88 | $0.00 | $38,417.88 | |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| T103007000 | 5/22/2012 | INS120300045-05 | $5,468.00 | | | INS - Insurance Billing |
| T103007000 | 5/24/2013 | INS130300051-04 | $6,055.00 | | | INS - Insurance Billing |
| T103007000 | 4/23/2014 | INS140300042-04 | $6,260.00 | | | INS - Insurance Billing |
| | | Total T103007000 | $17,783.00 | $0.00 | $17,783.00 | |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| T112207300 | 4/19/2011 | INS090300060-01R | $6,322.00 | | | Insurance Billing INS090300060-01 |
| T112207300 | 4/19/2011 | INS100300049-01R | $5,262.00 | | | INS - Insurance Billing |
| T112207300 | 4/19/2011 | I070500260-01  R | $2,894.00 | | | Cargo anual Seguro 2 |
| T112207300 | 4/19/2011 | INS080300063-01R | $6,322.00 | | | Insurance Billing 2008/2009 |
| T112207300 | 4/19/2011 | 060500282-01  R | $2,416.29 | | | INSR060500282 |
| T112207300 | 6/13/2011 | INS110300046-01 | $5,262.00 | | | INS - Insurance Billing |
| T112207300 | 5/22/2012 | INS120300045-01 | $5,467.00 | | | INS - Insurance Billing |
| T112207300 | 5/24/2013 | INS130300051-02 | $6,054.00 | | | INS - Insurance Billing |
| T112207300 | 4/23/2014 | INS140300042-02 | $6,259.00 | | | INS - Insurance Billing |
| | | Total T112207300 | $46,258.29 | $0.00 | $46,258.29 | |
| | | Total for 0111202150019 | $160,782.25 | $26,141.86 | $134,640.39 | |

## Open Invoices

*At 5/16/2018*

| Customer ID | Account # | Account Name | Customer Name | | | | |
|---|---|---|---|---|---|---|---|
| D3000 | 0125706750019 | UNAPPLIED PAYMENTS-FAS | DEPARTAMENTO DE EDUCACION | | | | |

| Property | Date | Invoice / CR | | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|---|
| | 12/5/2007 | | | | $24,341.85 | | CR# 22961-3 - Deposit Credit |
| | 12/5/2007 | 22961-3 | | $9,500.00 | | | Null Credit - 22961-3 |
| | 12/10/2007 | 22970-6 | | $6,727.90 | | | Null Credit - 22970-6 |
| | 12/26/2007 | 22986-5 | | $3,363.95 | | | Null Credit - 22986-5 |
| | 3/5/2008 | 23054-1 | | $4,750.00 | | | Null Credit - 23054-1 |
| | | | Total | $24,341.85 | $24,341.85 | $0.00 | |
| | | Total for 0125706750019 | | $24,341.85 | $24,341.85 | $0.00 | |

| Customer ID | Account # | Account Name | Customer Name | | | | |
|---|---|---|---|---|---|---|---|
| D3000 | 0111202180019 | OTHER RECEIVABLE (RENT GUARANTEE DEPOSIT) | DEPARTAMENTO DE EDUCACION | | | | |

| Property | Date | Invoice / CR | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|
| T033505600 | 5/17/2016 | I201651742187 | $622.81 | | | RENT GUARANTEE DEPOSIT. (PROYECTO:T-0335-0-56-00). |
| | | Total T033505600 | $622.81 | $0.00 | $622.81 | |
| | | Total for 0111202180019 | $622.81 | $0.00 | $622.81 | |

| | | | TOTAL (1) | $1,136,170.27 | $76,625.57 | $1,059,544.70 | |
|---|---|---|---|---|---|---|---|

Total (1) does not include OTHER DEPOSITS and RENT GUARANTEE DEPOSITS

| Customer ID | Account # | Account Name | Customer Name | | | | |
|---|---|---|---|---|---|---|---|
| D3000 | 0125906900019 | RENT GUARANTEE DEPOSITS & BOND | DEPARTAMENTO DE EDUCACION | | | | |

| Property | Date | Invoice | | Debit | Credit | Balance | Description |
|---|---|---|---|---|---|---|---|
| | 8/26/2003 | 156219 | | | $4,844.09 | | Null Credit - 156219 |
| | | | Total | $0.00 | $4,844.09 | ($4,844.09) | |
| | | Total for 0125906900019 | | $0.00 | $4,844.09 | ($4,844.09) | |

| | | | TOTAL (2) | $0.00 | $4,844.09 | ($4,844.09) | |
|---|---|---|---|---|---|---|---|

Total (2) only include OTHER DEPOSITS and RENT GUARANTEE DEPOSITS

**Open Invoices**

*At 5/16/2018*

| | | | |
|---|---|---|---|
| GRAND TOTAL (1) + (2) | $1,136,170.27 | $81,469.66 | $1,054,700.61 |

## ARTÍCULO I

### TÉRMINOS BÁSICOS DEL ARRENDAMIENTO

Las siguientes secciones contienen información básica pertinente a este Contrato, incluyendo, pero sin limitarse a, definiciones de los términos descritos a continuación:

**1.01   ARRENDADOR:** Compañía de Fomento Industrial de Puerto Rico (PRIDCO, por sus siglas en inglés).

**1.02   (a) DIRECCIÓN POSTAL DEL ARRENDADOR:**   P.O. Box 362350
San Juan, PR 00936-2350
Attn.: Division de Contratos

**(b) DIRECCIÓN FÍSICA DEL ARRENDADOR:**   355 Ave. F.D. Roosevelt
Hato Rey, PR  00936- 2350
Teléfono: (787) 758-4747
Fax: (787) 753-7367

**1.03   (a) ARRENDATARIO: DEPARTAMENTO DE EDUCACIÓN**

**1.04   (a)   DIRECCIÓN POSTAL DEL ARRENDATARIO:**   *Laforre*

**Dr. Jesús M. Rivera Sánchez / Lcdo. Rafael Blanco ~~La Torre~~**
Secretario                          **Sub-Secretario de Administración**
**P.O. Box 190759**
**San Juan, Puerto Rico 00919-0759**

**1.05   NUM. IDENTIFICACIÓN PATRONAL DEL ARRENDATARIO:** ████0533

**1.06   PROPIEDAD ARRENDADA:** Proyectos Núm. **T-1030-0-70**, según descrito en el Anejo A de este Contrato, consta de un solar en el cual enclava un edificio con un área bruta de construcción de **22,523.56 p/c** pies cuadrados (el "Edificio"), localizado en **Río Grande**, Puerto Rico. El área bruta de construcción del Edificio para propósitos de este Contrato comprende todo el área construida, incluyendo, pero sin limitarse a, baños, rampas, escaleras de acceso, plataformas de carga y descarga, extensiones y adiciones al Edificio, cobertizos exteriores, pasillos entre edificios o estructuras, y otras construcciones techadas en el solar así descritas en el Anejo A. Si la Propiedad Arrendada consiste de varios proyectos el término "Edificio" se entenderá que incluye todos y cada uno de los edificios descritos en el Anejo A.

**Solar Adicional**. N/A

**1.07   USO PERMITIDO:** La Propiedad Arrendada deberá ocuparse exclusivamente **para ubicar un almacén de equipo escolar.**

**1.08   NIVELES DE CAPITALIZACIÓN, INVERSIÓN Y EMPLEO:**  N/A

**1.09   TÉRMINO DEL ARRENDAMIENTO:** Un (1) año a partir del **1ro de junio de 2011** hasta el **31 de mayo de 2012**. Las renovaciones entrarán en vigor de forma automática a la expiración del término en curso, a menos que una de las partes, no más tardar de ciento ochenta días (180) con anterioridad a la fecha de la expiración del Término Inicial o de la extensión correspondiente, según sea el caso, notifique a la otra parte su decisión de dar por terminado el arrendamiento al expirar el término en curso.

**1.10   AÑO:** Un "Año" significa 365 días consecutivos a menos que se trate de un año bisiesto en cual caso "Año" significará 366 días consecutivos.

**1.11   FECHA DE ENTREGA DE POSESIÓN** La fecha en que el Arrendador entrega las llaves de la Propiedad Arrendada al Arrendatario.   Quedará evidenciado por el Certificado de Entrega de Llaves (según definido en la Sección 3.02; véase Anejo D, a ser suscrito por las partes.

INICIALES

O.I.M.                                                                  1

1.12   **FECHA DE COMIENZO DE PAGO DE RENTA:** La fecha en que comienza la obligación del Arrendatario de pagar la Renta Básica.  **El Arrendatario pagará Renta Básica a partir del 1 de junio de 2011.**

1.13   **RENTA BÁSICA:** La Renta Básica a pagarse por el Arrendatario será calculado a base del área bruta de construcción del Edificio según se expresa a continuación:

| Periodo | Renta por p/c | Renta Básica Mensual | Renta Básica Anual |
|---|---|---|---|
| 06/01/2011 – 5/31/2012 | $4.75 | $8,954.13 | $107,449.56 |
| Renovación | La Renta Básica para un período de renovación será la renta que esté cobrando el Arrendador a la fecha de la renovación. | | |

La obligación del Arrendatario de pagar Renta Básica comenzará en la fecha indicada el **1ro. de junio de 2011.**

1.14   **DEPÓSITO:** No se requiere depósito.

1.15   **GARANTIZADOR:**          N/A

1.16   **EFECTO DE REFERENCIA A TÉRMINO DEFINIDO EN EL ARTÍCULO 1.** Cada uno de los términos definidos en este Artículo I debe ser considerado, aplicado e interpretado en conjunto con cualquier referencia al mismo en cualquier otra sección de este Contrato y según dicho término sea usado o definido en dichas secciones.  En caso de conflicto entre alguno de los términos definidos en este Artículo I y el resto del Contrato, prevalecerá este último.

1.17   **ANEJOS.** Los anejos marcados a continuación corresponden a, y forman parte de este Contrato:

       [ x ]   **Anejo A - Descripción de la Propiedad Arrendada.**
       [   ]   **Anejo B - Arrendamiento de Solar Adicional**
       [   ]   **Anejo C - Certificado de Entrega de Solar en Arrendamiento**
                **(Formulario BRN-023A)**
       [   ]   **Anejo D - Certificado de Entrega de Llaves (Formulario BRN-033B)**
       [   ]   **Anejo E - Obras a ser Realizadas por el Arrendatario**
       [   ]   **Anejo F - Notificación de Entrega de Posesión**
       [   ]   **Anejo G - Garantía de Arrendamiento**
       [   ]   **Anejo H - Lista de Mejoras (Deficiencias)**
       [   ]   **Anejo I  - Reconocimiento de Zona Inundable**
       [ X ]   **Anejo K  - Cláusulas Adicionales (Permisos)**

ARTíCULO II

TíTULO, FACULTADES Y ARRENDAMIENTO

2.01   <u>Título de Propiedad y Facultades.</u> El Arrendador es dueño de la propiedad descrita en el Anejo A de este Contrato y, en dicho carácter, tiene el derecho y la capacidad legal para cederla en arrendamiento al Arrendatario y otorgar al Arrendatario todos los derechos que le sean conferidos en este Contrato con relación a la propiedad a arrendarse, sujeto a las cargas gravámenes y restricciones sobre la misma, si algunos, así como los términos y las condiciones de este Contrato y sus anejos.


INICIALES

O.I.M.

2

2.02 <u>Arrendamiento</u>. Sujeto a los términos, condiciones y acuerdos contenidos en este Contrato, el Arrendador cede en arrendamiento la propiedad descrita en el Anejo A (la "Propiedad Arrendada") al Arrendatario, y el Arrendatario acepta la misma en sus actuales condiciones, es decir **"as is"**.

## ARTÍCULO III
## TÉRMINO DEL ARRENDAMIENTO Y POSESIÓN

3.01 <u>Término</u>. El término de este Contrato (en adelante el "Término") comenzará en la Fecha de Entrega de Posesión (según se define en la Sección 1.11 de este Contrato) y expirará el último día del último Año del Término (incluyendo cualquier posible extensión, conforme la Sección 1.09 de este Contrato), a menos que el mismo sea terminado previamente a tenor con lo provisto en el Artículo XVIII de este Contrato.

3.02 <u>Entrega de Posesión de la Propiedad Arrendada</u>. La fecha exacta en que la Propiedad Arrendada será entregada al Arrendatario se establecerá en la Sección 1.11 de este Contrato o será evidenciada mediante un documento a ser suscrito por ambas partes, cuyo formato será substancialmente similar al Anejo D de este Contrato (el "Certificado de Entrega de Llaves").

## ARTÍCULO IV
## USO DE LA PROPIEDAD ARRENDADA,
## RESTRICCIONES Y REQUISITOS DE OPERACIÓN

<u>Cualquier disposición contractual de aplicación exclusiva a operaciones de manufactura NO APLICA, ya que no desarrollarán operaciones de manufactura a tono con el uso pactado.</u>

<u>Las partes contratantes son dos entidades gubernamentales, por lo que cualquier disposición contractual que no sea de aplicación a entidades gubernamentales se tendrá por no puesta.</u>

4.01 <u>Uso de la Propiedad Arrendada</u>. (a) <u>Uso Autorizado</u>. El Arrendatario deberá ocupar, destinar y utilizar la Propiedad Arrendada única y exclusivamente para los fines y propósitos descritos en la Sección 1.07 de este Contrato. Cualquier cambio en el uso deberá ser previamente aprobado por escrito por el Arrendador.

(b) <u>Reserva Sobre Derecho de Vuelo</u>. El Arrendador se reserva el derecho exclusivo sobre el vuelo de cualquier estructura o edificio que forme parte de la Propiedad Arrendada, para cualquier propósito.

## ARTÍCULO V
## RENTA

5.01 <u>Renta Básica</u>. El Arrendatario pagará al Arrendador la Renta Básica estipulada en la Sección 1.13 de este Contrato desde la fecha indicada en la Sección 1.12 de este Contrato. La Renta Básica para cualquier período de renovación será la renta que esté cobrando el Arrendador a la fecha de comienzo del nuevo término por propiedades similares en la zona en que esté ubicada la Propiedad Arrendada, disponiéndose, sin embargo, que la Renta Básica para un período de renovación no podrá ser menor que la estipulada para el término precedente. El Arrendatario pagará la Renta Básica indicada en la Sección 1.13 de este Contrato, en pagos mensuales por adelantado en o antes del primer día de cada mes calendario (la "Renta Mensual"); disponiéndose, sin embargo, que si la Fecha de Comienzo de Pago de Renta no es el primer día de un mes calendario, la renta correspondiente al mes parcial será prorrateada a razón de un mes de treinta (30) días y se incluirá con el primer pago de Renta Mensual pagadero el primer día del siguiente mes calendario.

5.02 <u>Renta Adicional</u>. Cualquier cantidad que el Arrendatario deba pagar o reembolsar al Arrendador bajo este Contrato que no sea Renta Básica se considerará como Renta Adicional.



INICIALES

O.I.M.

3

5.03  **Método de Pago.** La Renta Básica y la Renta Adicional (en adelante, conjuntamente, la "Renta") deberá ser pagada en moneda de curso legal de los Estados Unidos de América. Todo pago o cargo identificado en este Contrato como Renta Adicional deberá ser hecho en o antes del primer día del mes siguiente a la fecha del envío del requerimiento de pago por el Arrendador. Todo pago de Renta deberá ser enviado al Arrendador, personalmente o por correo a la dirección indicada en la Sección 1.02 de este Contrato, o cualquier otra dirección que el Arrendador notifique de tiempo en tiempo al Arrendatario, teniendo el Arrendatario el deber de tomar las medidas y precauciones necesarias para asegurarse que la Renta sea recibida por el Arrendador en o antes de la fecha límite aplicable para el pago de la partida correspondiente. El pago de Renta es independiente de cualquier otro acuerdo o compromiso estipulado en este Contrato, y deberá ser pagado sin necesidad de demanda o reclamo previo por el Arrendador y sin derecho a compensación ("setoff"), ajuste o reducción ("abatement") de tipo alguno, excepto que de otra forma sea provisto en este Contrato. El Arrendador podrá en cualquier momento requerir que todo pago del Arrendatario bajo este Contrato se haga mediante cheque de gerente o cheque oficial de banco.

### ARTÍCULO VI
### DEPÓSITO

6.01  **Depósito.** Simultáneamente con el otorgamiento de este Contrato, el Arrendatario entregará al Arrendador un cheque de gerente o cheque oficial de banco, para completar la cantidad indicada en la Sección 1.14 como el depósito de este Contrato (en adelante el "Depósito"), para garantizar el fiel cumplimiento de todas y cada una de las obligaciones del Arrendatario en este Contrato, incluyendo, pero sin limitarse a, el pago de toda la Renta y cualquier gasto que le corresponda al Arrendatario y la entrega de la Propiedad Arrendada al expirar el Término, o a la terminación de este Contrato, en el estado y condiciones requeridos por el Artículo XIX de este Contrato. El Arrendatario no tendrá derecho al pago de intereses sobre la cantidad del Depósito.

6.02  **Disponibilidad de Depósito.** El Arrendador podrá utilizar todo o parte del Depósito en cualquier momento para cubrir cualquier pago o gasto que, a tenor con los términos y condiciones de este Contrato, le corresponda al Arrendatario. Si el Arrendador en efecto se ve precisado a utilizar el Depósito a raíz de algún incumplimiento o violación del Contrato por parte del Arrendatario, el Arrendatario repondrá la cantidad utilizada por el Arrendador en un término máximo de quince (15) días a partir de la fecha del envío del requerimiento por el Arrendador.

6.03  **Entrega de Depósito.** A la terminación de este Contrato, el Arrendatario solicitará por escrito el Depósito (o el balance que quede del mismo luego del Arrendador haber utilizado cualquier porción del mismo que sea necesaria para cubrir cualquier deuda pendiente de Renta o por cualquier otro concepto permisible bajo este Contrato) una vez el Arrendador (i) haya inspeccionado la Propiedad Arrendada; (ii) confirme que la misma ha sido entregada en fiel cumplimiento con el Artículo XIX y demás términos y condiciones de este Contrato; y (iii) determine que no existen deficiencias ambientales atribuibles a o como consecuencia del uso y las operaciones del Arrendatario en la Propiedad Arrendada.

6.04  **Transferibilidad de Depósito.** En caso de venta, cesión o traspaso de la Propiedad Arrendada por el Arrendador a un tercero, el Arrendador podrá transferir el Depósito al nuevo adquirente, quedando éste como el único responsable de la devolución del Depósito. Una vez transferido el Depósito, el Arrendador quedará relevado de toda responsabilidad hacia el Arrendatario en cuanto al Depósito o su devolución luego de terminado este Contrato.

### ARTÍCULO VII
### ALTERACIONES Y MEJORAS

7.01  **Disposiciones Generales.** El Arrendatario, en la Fecha de Entrega de Posesión, tomará posesión y aceptará la Propiedad Arrendada, y las facilidades especiales descritas en el Anejo A, si algunas, en el estado actual que se encuentran ("as is"), reconociendo que dicha propiedad está en buenas condiciones al momento de su entrega



INICIALES

O.I.M.

4

**7.02** **Alteraciones y Mejoras.** Serán por cuenta y cargo del Arrendatario todas y cualesquiera alteraciones, cambios, adiciones o mejoras necesarias para que la Propiedad Arrendada pueda ser utilizada para los fines especificados en la Sección 1.07 de este Contrato. El Arrendatario no podrá llevar a cabo alteración, cambio, adición o mejora alguna sin el consentimiento previo por escrito del Arrendador. El Arrendatario no podrá llevar a cabo alteración, cambio, adición o mejora alguna sin el consentimiento previo por escrito del Arrendador con excepción de las obras descritas en el Anejo E, si alguna, las cuales se autorizan expresamente en este Contrato.

**7.03** **Acondicionador de Aire; Planta Eléctrica.** El Arrendatario podrá, por cuenta y cargo propio, instalar un sistema de acondicionador de aire y/o una planta eléctrica en la Propiedad Arrendada sujeto a la previa aprobación por escrito del Arrendador. Dichas instalaciones se harán en coordinación con el Arrendador.

**7.04** **Rociadores Contra Incendios.** El Arrendatario deberá proveer medidas de seguridad para evitar o reducir el peligro de incendio debido al almacenamiento de materiales y productos inflamables. Además, de ser requerido por ley el Arrendatario instalará, por cuenta y cargo propio, un sistema de rociadores contra incendios. Será responsabilidad del Arrendatario obtener el endoso y la aprobación del Cuerpo de Bomberos de Puerto Rico para dicha instalación.

**7.05** **Carga de Piso.** El Arrendatario reconoce y acepta que la carga máxima que puede sostener el piso del Edificio es de ciento cincuenta (150) libras por pie cuadrado. En caso de que el tipo de maquinaria y/o equipo a ser instalado, almacenado y/o utilizado por el Arrendatario en el Edificio para sus operaciones exceda tal carga máxima, el Arrendatario deberá realizar, por cuenta y cargo propio, las mejoras necesarias para permitir dicho exceso de carga sin que se vea afectada o perjudicada la solidez o estabilidad estructural del Edificio.

**7.06** **Gravámenes.** (a) El Arrendatario no podrá constituir ni permitirá que se constituya gravamen alguno sobre la Propiedad Arrendada.

(b) El Arrendatario certifica y garantiza que todo material que utilice en o para cualquier obra o trabajo en la Propiedad Arrendada estará libre de cargas y gravámenes al momento que se incorpore a la misma, lo cual certificará al Arrendador de forma fehaciente al momento de comenzar la obra o el trabajo.

(c) El Arrendatario se compromete a notificar de inmediato al Arrendador cualquier gravamen o embargo sobre materiales u objetos utilizados en obras o trabajos a la Propiedad Arrendada e incorporados a la misma. Si se trabase un embargo o se constituyera cualquier tipo de gravamen que afecte a la Propiedad Arrendada, el Arrendatario actuará rápidamente y realizará toda gestión necesaria para lograr la cancelación de dicho gravamen o de liberar la propiedad del gravamen en un término no mayor de treinta (30) días a partir de la fecha de la constitución del gravamen, incluyendo, pero no limitándose a, el pago de lo reclamado. En caso de que el gravamen no fuera cancelado dentro del término anteriormente provisto, entonces, además de cualquier otro derecho o remedio que pudiera tener el Arrendador, éste podrá, pero no estará obligado a, obtener la cancelación del gravamen mediante el pago de la cantidad reclamada, o mediante prestación de fianza suficiente o mediante cualquier otro procedimiento que el Arrendador entienda apropiado, y la cantidad así pagada, así como las costas y gastos, incluyendo honorarios de abogados, que incurra el Arrendador en dicha gestión serán cobrados al Arrendatario como Renta Adicional.

**7.07** **Titularidad de las Mejoras.** (a) Una vez expire el Término del Contrato, o termine el mismo, toda alteración, cambio, adición o mejora que haga el Arrendatario a la Propiedad Arrendada con incentivos, créditos o cualquier otra asistencia económica del Arrendador se considerará como parte del inmueble y será en propiedad del Arrendador sin consideraciones adicionales y sin derecho a compensación o reembolso por las mismas, a menos que el Arrendador requiera al Arrendatario su remoción al momento de expirar o de terminar el Contrato. Toda reclamación de mejoras se hará a cuenta y cargo del Arrendatario.

(b) Una vez expire el Término del Contrato, o termine el mismo, el Arrendatario removerá, a su cuenta y cargo, aquellas mejoras i) que por su cuenta y costo instaló en

INICIALES



O.I.M.

5

la Propiedad Arrendada o ii) que fueron instaladas por un arrendatario anterior y aceptadas por el Arrendatario como suyas, según descritas en el Anejo H de este Contrato, o iii) que no aparezcan identificadas como facilidades especiales en el Anejo A.

(c) Luego de haber removido cualquier mejora de la Propiedad Arrendada, el Arrendatario restaurará la Propiedad Arrendada a una condición similar a la que se encontraba cuando se entregó al Arrendatario.

7.08 **Planos y Especificaciones.** Cuando el Arrendatario solicite el consentimiento del Arrendador para cualquier alteración, cambio o mejora, sea o no de carácter permanente, el Arrendador podrá, a su opción y discreción, requerir del Arrendatario que someta para su aprobación planos y especificaciones para la obra propuesta. Dichos planos y especificaciones, deben haber sido previamente sometidos y aprobados por las entidades gubernamentales pertinentes antes del Arrendatario poder dar comienzo a cualquier obra.

## ARTÍCULO VIII
## MANTENIMIENTO Y REPARACIONES

8.01 **Deberes y Responsabilidades del Arrendatario.** (a) El Arrendatario, con excepción de las reparaciones que conforme la Sección 8.02 de este Contrato le correspondan al Arrendador, mantendrá, a cuenta y cargo propio, en buenas condiciones la Propiedad Arrendada, con todas sus mejoras, incluyendo, pero sin limitarse a, el solar, el Edificio, las facilidades especiales, rampas, escaleras, elevadores, aceras, encintados, calles, áreas verdes, el suelo y subsuelo de la Propiedad Arrendada, y las tuberías, líneas, ductos, cables o conductos que sirvan a la Propiedad Arrendada. Al Arrendatario le corresponde cualquier reparación, ordinaria o extraordinaria, sujeto a que la necesidad de llevar a cabo dicha reparación no sea como consecuencia de la negligencia o acto intencional por parte del Arrendador, sus agentes, empleados o contratistas. Cuando sea necesario, el Arrendatario deberá (i) reparar o reemplazar con la misma clase y calidad, puertas, ventanas y sus marcos; el sistema eléctrico; el sistema de acondicionador de aire y/o de extracción; la plomería, el sistema sanitario y de alcantarillado; y cualesquiera equipos, maquinarias, facilidades u objetos dentro de la Propiedad Arrendada o del cual se sirva la Propiedad Arrendada, y (ii) pintar el interior y exterior del Edificio.

(b) Será obligación del Arrendatario mantener la Propiedad Arrendada y sus alrededores (i) libre de insectos, roedores y sabandijas; (ii) libre de basura, deshechos, escombros y cualquier otro desperdicio; y (iii) libre de olores desagradables u ofensivos. El Arrendatario se compromete además, a mantener todos los sistemas de drenaje y desagüe de la Propiedad Arrendada libres de obstrucción.

(c) Si el Arrendatario deja de hacer alguna reparación o hace la misma de forma inadecuada, o no reemplaza un equipo cuando sea necesario, el Arrendador podrá, pero no estará obligado a, hacer dichas reparaciones o reemplazos, quedando en dicho caso el Arrendatario obligado a reembolsarle al Arrendador todos los gastos incurridos para hacer dicha reparación o reemplazo, más un cargo adicional de treinta porciento (30%) del costo de reparación o reemplazo, para cubrir gastos administrativos; disponiéndose, además, que cualquier partida a ser reembolsada por el Arrendatario en tal concepto y el cargo porcentual adicional anteriormente establecido serán considerados Renta Adicional, y como tal, pagado dentro del término provisto en el Artículo V de este Contrato. El Arrendador no será responsable por cualquier daño o inconveniencia que sufra el Arrendatario como consecuencia de los trabajos que el Arrendador haga conforme lo provisto en este párrafo, sin tener derecho el Arrendatario a ajuste o reducción en la Renta por tal motivo.

(d) El Arrendatario realizará todo trabajo de mantenimiento necesario para asegurarse que todo su equipo y facilidades cumplan fielmente con requisitos de prevención de incendios y requerimientos ambientales, legales o reglamentarios.

(e) Las disposiciones de esta Sección 8.01 no serán aplicables en el caso de daño o destrucción como consecuencia de un incendio o cualquier otra eventualidad cubierta en el Artículo XIII de este Contrato.



INICIALES

**8.02**  **Deberes y Responsabilidades del Arrendador.**  El Arrendador será responsable única y exclusivamente de aquellas reparaciones o correcciones requeridas por motivo de defectos en el diseño del Edificio o vicios ocultos de construcción, no aparentes al momento en que el Arrendatario inspeccionó el mismo para ocuparlo. Excepto por lo provisto en esta Sección 8.02, el Arrendador no vendrá obligado a realizar ningún tipo de reparación, reemplazo o mejora a la Propiedad Arrendada o a equipo, maquinaria, facilidades, mobiliario u objeto alguno dentro de la Propiedad Arrendada, todo lo cual será la responsabilidad del Arrendatario según provisto en la Sección 8.01 de este Contrato.

**8.03**  **Cuidado y Mantenimiento del Techo**. El Arrendatario no podrá, sin el consentimiento previo por escrito del Arrendador: (i) colocar accesorios, equipos o cualquier otra carga sobre el techo del Edificio; (ii) perforar el techo del Edificio; o (iii) utilizar el techo del Edificio para almacenamiento. El Arrendatario deberá tomar todas las medidas necesarias para mantener todos los sistemas de drenaje y desagüe del techo del Edificio libres de obstrucción y que se encuentren en condiciones buenas y operables en todo momento. Antes de proceder a hacer cualquier trabajo de reparación al techo del Edificio, el Arrendatario deberá someter por escrito al Arrendador una descripción detallada de los trabajos que se llevarán a cabo, y facilitará al Arrendador cualquier otra información relacionada con dichos trabajos que solicite el Arrendador.

### ARTÍCULO IX
### SERVICIOS BÁSICOS

**9.01**  **Deberes y Responsabilidades del Arrendatario.**  Será por cuenta del Arrendatario cualquier cargo por concepto del consumo de electricidad, agua, gas, teléfono o cualquier otro tipo de servicio básico a la Propiedad Arrendada durante la vigencia de este Contrato, incluyendo el período de tiempo entre la Fecha de Entrega de Posesión y la Fecha de Comienzo de Pago de Renta, si alguno. El Arrendatario deberá solicitar y coordinar la instalación de metros y otros mecanismos o sistemas necesarios para obtener los diferentes servicios básicos en la Propiedad Arrendada, y será responsable por cualquier depósito y/o cargo de instalación requerido por la agencia o entidad pertinente.

**9.02**  **Interrupción de Servicios.**  El Arrendatario no podrá hacer ajustes en la Renta ni imponer o atribuir responsabilidad al Arrendador por cualquier interrupción en alguno de los servicios básicos a la Propiedad Arrendada o por daños sufridos como consecuencia de lo anterior, irrespectivamente del motivo.

**9.03**  **Electricidad**. (a) Sistema Básico. La Propiedad Arrendada, como mínimo, está provista de un sistema eléctrico básico de alumbrado y receptáculos eléctricos conectados a una base de contador de 200 amperes, diseñado para un voltaje secundario de 120-208 voltios. El Arrendatario será responsable, a su cuenta y costo, de conectar la Propiedad Arrendada al sistema de distribución eléctrica de la Autoridad de Energía Eléctrica de Puerto Rico (en adelante la "AEE"), incluyendo la compra e instalación de cualquier equipo que sea necesario para poder hacer la conexión, la cual deberá ser hecha en cumplimiento con los requisitos de la AEE y en coordinación con el Arrendador.

(b)  Subestaciones Eléctricas. El Arrendatario podrá construir, instalar y mantener en coordinación con el Arrendador, a cuenta y cargo propio, una subestación de energía eléctrica y conectarla a las líneas de distribución de la AEE, conforme a los requisitos de la AEE. Bajo ninguna circunstancia el Arrendatario instalará una subestación eléctrica sin la aprobación previa del Arrendador en cuanto a la capacidad o potencia de dicha subestación, su ubicación dentro de la Propiedad Arrendada y la ruta de extensión de las líneas de energía.

(c)  Equipo Adicional. El Arrendatario se compromete a no instalar equipo alguno que exceda o que razonablemente podría exceder la capacidad de las líneas de servicio eléctrico a la Propiedad Arrendada, sin el consentimiento previo del Arrendador; disponiéndose, además, que si cualquier equipo requiriere mayor capacidad o rendimiento en la línea de servicio, la misma será instalada al costo del Arrendatario conforme los planos y especificaciones previamente aprobados por escrito por el

INICIALES

O.I.M. 

7

Arrendador. El Arrendatario viene obligado a construir su propia subestación eléctrica si sus necesidades de electricidad exceden 50 KVA.

9.04    **Agua.** (a) En caso de que el Arrendatario requiera un volumen y/o presión de agua mayor al existente en el área donde ubica la Propiedad Arrendada, la construcción y/o instalación de tales mejoras y/o estructuras, según sean necesarias, convenientes o requeridas por la Autoridad de Acueductos y Alcantarillados de Puerto Rico (en adelante la "AAA") para aumentar tal volumen y/o presión, serán por cuenta y costo del Arrendatario y se llevarán a cabo en coordinación y con la aprobación escrita del Arrendador.

(b) Si la AAA exige que la acometida de agua a la Propiedad Arrendada sea de un diámetro mayor al existente, el Arrendatario llevará a cabo la obra correspondiente a su cuenta y cargo y con la previa aprobación escrita del Arrendador.

## ARTÍCULO X
## USO Y DISFRUTE PACÍFICO

10.01   **Uso y Disfrute.** El Arrendador se compromete y garantiza brindar al Arrendatario el uso y disfrute pacífico de la Propiedad Arrendada durante el Término o hasta la terminación del Contrato a tenor con el Artículo XVIII de este Contrato, siempre que el Arrendatario cumpla con el pago de la Renta y los demás términos y condiciones de este Contrato.

## ARTÍCULO XI
## CONTRIBUCIONES, IMPUESTOS Y ARBITRIOS

11.01   **Contribuciones, Impuestos y Arbitrios.** El Arrendatario será responsable por el pago de toda contribución, impuesto, arbitrio, patente municipal, derecho o cualquier otra imposición por cualquier entidad gubernamental con autoridad de ley sobre bienes muebles e inmuebles y actividades directa o indirectamente relacionadas con las operaciones del Arrendatario en la Propiedad Arrendada, incluyendo, pero sin limitarse a contribuciones sobre equipo y maquinaria en la Propiedad Arrendada. El Arrendatario deberá pagar toda contribución, impuesto, arbitrio y patente municipal antes del vencimiento de la misma.

## ARTÍCULO XII
## AMBIENTAL

12.01   **Reglamentaciones Gubernamentales y Protección Ambiental** - El Arrendatario cumplirá con todas las leyes, reglamentos, permisos, órdenes ejecutivas, órdenes administrativas y requisitos locales y federales de las agencias gubernamentales que tengan jurisdicción sobre las operaciones que se lleven a cabo en la Propiedad Arrendada. El Arrendatario, de ser requerido por el Arrendador, deberá someter evidencia de su cumplimiento y de los permisos y endosos de agencias que tienen jurisdicción sobre la operación autorizada a desarrollarse en la propiedad arrendada.

El Arrendatario mantendrá la Propiedad Arrendada y las actividades que lleve a cabo allí en cumplimiento con los términos, condiciones y compromisos especificados i) en la Declaración de Impacto Ambiental, o en cualquier otro documento preparado para la evaluación de los aspectos ambientales de su operación en la Propiedad Arrendada y ii) en los permisos otorgados por las agencias gubernamentales con jurisdicción sobre sus actividades en la Propiedad Arrendada.

El Arrendatario instalará en la Propiedad Arrendada, a su cuenta y costo, los mecanismos necesarios para evitar que sus operaciones puedan afectar la integridad ambiental de la Propiedad Arrendada, o causar cualquier molestia a predios colindantes o a la comunidad en general.

Cualquier mejora o instalación de equipo de control de contaminantes a requerimiento de cualquier agencia o entidad gubernamental con jurisdicción se hará a cuenta y costo del Arrendatario y sujeto al Artículo VII de este Contrato. Además, sin que se entienda como una limitación de cualquier otro requisito ambiental aplicable, el



INICIALES

O.I.M.                                                            8

Arrendatario obtendrá los siguientes permisos y cumplirá con los siguientes reglamentos, cuando aplique:

(a) <u>Ruidos</u>. El Arrendatario no excederá el límite máximo de ruido permitido los reglamentos correspondientes.

(b) <u>Sustancias Químicas</u>. El Arrendatario, en cuanto a almacenamiento de cualquier sustancia química, establecerá todos los mecanismos de seguridad necesarios y requeridos por las agencias gubernamentales con jurisdicción para evitar cualquier escape o derrame que pueda contaminar la Propiedad Arrendada o propiedades colindantes.

(c) <u>Almacenamiento de Materiales Peligrosos</u>. El Arrendatario deberá cumplir estrictamente con las normas establecidas por la Administración de Salud y Seguridad Ocupacional (OSHA por sus siglas en inglés) para el almacenamiento de materiales peligrosos, según dispone la sub-parte H de la parte 1910 del Código Número 29 de Reglamentación Federal (29 CFR Part 1910 Sub-part H) así como con el Código para la Prevención de Incendios de Puerto Rico. El Arrendatario dará especial atención a las distancias mínimas establecidas en los códigos federales y locales para almacenamiento de materiales peligrosos, particularmente aquellos materiales que sean inflamables.

(d) <u>Sustancias Peligrosas</u>. El Arrendatario no tratará, ni almacenará substancia peligrosa alguna en la Propiedad Arrendada, excepto cuando posea los permisos necesarios de las agencias con jurisdicción y realice dichas actividades en cumplimiento con la reglamentación aplicable y con los términos y condiciones del permiso. El Arrendatario no podrá generar o almacenar substancia o desperdicio peligroso alguno en la Propiedad Arrendada sin haber obtenido previamente los permisos necesarios de las agencias locales y federales con jurisdicción. La generación y almacenamiento de substancias peligrosas tendrá que hacerse en cumplimiento con las leyes, reglamentos y permisos aplicables. Además, el Arrendatario no podrá almacenar substancias o desperdicios peligrosos en la Propiedad Arrendada, sin antes informar al Arrendador la ubicación del área del almacenaje y evidenciarle su cumplimiento con la reglamentación federal y estatal, y con aquellas medidas que el Arrendador estime necesarias para proteger la Propiedad Arrendada. En ningún momento el Arrendatario dispondrá en la Propiedad Arrendada substancias o desperdicios peligrosos.

(e) <u>Desperdicios Sólidos No Peligrosos</u>. Los desperdicios sólidos no peligrosos que se generen de las operaciones del Arrendatario en la Propiedad Arrendada deberán ser almacenados, manejados, transportados y desechados conforme a los reglamentos correspondientes. El Arrendatario deberá obtener a su vez todos los permisos y dar fiel cumplimiento a los reglamentos y leyes estatales o federales que sean de aplicación a la generación de desperdicios. El Arrendatario por su cuenta y costo, también deberá mantener limpio el solar libre de desperdicios sólidos, desechos, basura, escombros y otros.

(f) <u>Informes al Arrendador</u> - Además de cualquier otra información o documento que pueda serle requerido en virtud de este Contrato, el Arrendatario le proveerá al Arrendador lo siguiente:

(i) Notificación escrita, dentro de cuarenta y ocho (48) horas, de haber ocurrido cualquier evento que requiera notificación verbal o escrita, a la Agencia Federal de Protección Ambiental (EPA), la Junta de Calidad Ambiental o cualquier entidad designada por éstas, además de copia de cualquier orden, comunicación o informe relacionado con el evento. Esto incluye cualquier notificación requerida bajo las disposiciones del "Emergency Planning and Community Right to Know Act".

(ii) Notificación escrita dentro de cuarenta y ocho (48) horas de haber ocurrido un cambio en los materiales peligrosos que se utilizan en la Propiedad Arrendada, o si el Arrendatario observa o tiene conocimiento de cualquier problema ambiental en la



INICIALES

O.I.M.

9

Propiedad Arrendada, aún si dicho problema no es el resultado de las actividades del Arrendatario.

(iii)    Copia de cualquier permiso requerido por la operación autorizada que se desarrolle en la propiedad arrendada.

(g)    Auditorías y Acceso a la Propiedad Arrendada. El Arrendador se reserva el derecho de auditar la Propiedad Arrendada, y de permitir el acceso a la misma a las agencias reguladoras de tiempo en tiempo, o cuando sea necesario durante el Término de este Contrato según lo estime necesario, con el propósito de evaluar todos aquellos aspectos relacionados con la condición ambiental de la Propiedad Arrendada, el cumplimiento con la legislación y reglamentación ambiental federal y estatal, y con todo lo dispuesto en este Artículo XII. El Arrendatario, para estos propósitos, proveerá acceso al Arrendador, a las agencias reguladoras y a toda persona contratada por el Arrendador, a la Propiedad Arrendada, sus edificios y estructuras. El Arrendatario proveerá acceso a todos los libros, registros, documentos o instrumentos que el Arrendador estime necesarios para determinar la condición ambiental de la Propiedad Arrendada, o el cumplimiento con la legislación y reglamentación ambiental.

En caso de que el Arrendador entienda, a base de las auditorías que realice a la Propiedad Arrendada, que el Arrendatario está substancialmente incumpliendo con las disposiciones de la legislación y los reglamentos ambientales locales y federales aplicables, podrá requerir al Arrendatario que realice, a costo del Arrendatario, aquellos estudios ambientales que sean necesarios para determinar la existencia de contaminación en la Propiedad Arrendada, si alguna, su extensión y todas aquellas actividades de remoción, mitigación y remediación que sean necesarias para corregir cualquier situación ambiental que haya sido ocasionada por el Arrendatario a la Propiedad Arrendada. El Arrendatario, si el Arrendador lo estima necesario, deberá someter un estudio ambiental Fase I y/o Fase II sobre el estado ambiental de la Propiedad preparado por un consultor ambiental de probada experiencia al terminar por cualquier causa este Contrato. El estudio deberá incluir una relación de cómo las actividades llevadas a cabo afectaron la condición del Edificio y el solar. Los estudios tendrán que hacerse siguiendo las normas de preparación de dichos estudios establecidos por la comunidad científica (ASTM). Estos estudios deberán estar firmados y certificados por un ingeniero o un químico licenciado para ejercer la profesión en Puerto Rico.

En caso de que los estudios o inspecciones demuestren alguna deficiencia o condición ambiental en la Propiedad Arrendada que requiera remediación, el Arrendatario someterá un plan de acción para remediarla, con la correspondiente fianza o garantía que asegure el pago de la misma. El plan será revisado y su ejecución coordinada con el Arrendador.

(h)    Acciones en Respuesta a Emergencias y Remediación. En caso de cualquier derrame, escape, o filtración de contaminantes o sustancias peligrosas o cualquier otro evento que requiera la remoción de contaminantes o sustancias peligrosas o una remediación ambiental, el Arrendatario estará obligado a corregir la misma inmediatamente. El Arrendatario será responsable de contratar a su costo a aquellas compañías de probada experiencia y reputación para realizar tales actividades y todas las gestiones necesarias para dicha remediación. Antes de contratar a una compañía o consultor para el trabajo de remoción, remediación o limpieza, el Arrendatario informará el nombre de dicha compañía al Arrendador para su aprobación. El plan de trabajo ("scope of work") que prepare la compañía aprobada por el Arrendador deberá ser autorizado por el Arrendador. De existir una deficiencia o contaminación en la Propiedad Arrendada, el Arrendador podrá requerirle al Arrendatario que permanezca en la Propiedad Arrendada y continúe pagando la Renta, hasta tanto la Propiedad Arrendada sea remediada a niveles de cumplimiento con la legislación y reglamentación local y federal aplicable. No obstante lo anterior, el Arrendatario tendrá la obligación de notificar por escrito al Arrendador cuando ocurra un evento que requiera remoción de contaminantes o remediación ambiental y tendrá que coordinar con el Arrendador cualquier tipo de limpieza, remoción de contaminantes o remediación ambiental previo a comenzar la misma, excepto que el evento ocurra en horas o días no laborables, en cuyo caso, el Arrendatario tendrá que notificar inmediatamente al Arrendador el próximo día laborable. La notificación al Arrendador



INICIALES

por parte del Arrendatario en caso de algún derrame, escape o filtración de contaminantes no releva al Arrendatario de su obligación de notificar a las agencias gubernamentales pertinentes cuando así sea requerido por ley, reglamento, ordenanza municipal, orden judicial, orden ejecutiva, orden administrativa o mediante cualquier otra disposición legal.

En caso de que ocurra cualquier evento de carácter ambiental, tal como pero sin limitarse a derrames, escapes o filtraciones de contaminantes que constituyan un peligro inminente para la salud o el ambiente, el Arrendatario, además de tomar todas aquellas medidas de protección, respuesta ("response") y notificación que requieren las leyes, reglamentos y permisos ambientales, tendrá que interrumpir sus operaciones si estas son la causa directa de que haya ocurrido tal evento ambiental hasta tanto se haya controlado la situación y se hayan eliminado todos los riesgos de que se pueda afectar la salud o el ambiente.

      (i)    Responsabilidad ante Eventos Ambientales.  El Arrendatario será responsable de cualquier daño ambiental y la correspondiente acción remediativa que sea necesaria que surja como resultado de las operaciones del Arrendatario.  El Arrendatario será responsable e indemnizará al Arrendador por cualquier demanda, acción civil ó criminal, acción administrativa, multa, reclamación, acción remediativa y/o acción de respuesta a una condición ambiental ("response action"), limpieza y/o de remoción de cualquier contaminante, sustancia peligrosa ó desperdicio tóxico ó peligroso según estos se definen en las leyes y reglamentos ambientales locales y federales, y sus enmiendas, que surja como resultado de sus operaciones o durante su ocupación de la Propiedad Arrendada.  Entendiéndose, que el término contaminante incluye petróleo y sus derivados, asbesto y PCB.  De igual forma, el Arrendatario será responsable e indemnizará al Arrendador por cualquier demanda, acción civil ó criminal, acción administrativa, multa ó reclamación que surja como resultado de cualquier violación a cualquier ley, reglamento, regla, Orden Administrativa, Orden Ejecutiva o requisito ambiental de cualquier entidad gubernamental local o federal que surja como resultado de sus operaciones o durante el término en que ocupó la Propiedad Arrendada. La responsabilidad del Arrendatario ante el Arrendador y su obligación de indemnizarlo no prescribirán.

## ARTÍCULO XIII
## PERDIDA O DESTRUCCIÓN

13.01 **Notificación**. El Arrendatario, a menos que apliquen las disposiciones sobre notificaciones del Artículo XII o la Sección 13.06 de este Contrato, notificará inmediatamente al Arrendador de haber ocurrido cualquier incendio, explosión, derrame de sustancias peligrosas o contaminantes o cualquier otro tipo de accidente o evento fuera de lo ordinario que ocasione daño o que represente una amenaza de daño a la Propiedad Arrendada.

13.02 **Deber de Reparación del Arrendador.** El Arrendador deberá reparar o restablecer la Propiedad Arrendada a un estado y condición substancialmente similar al que prevalecía antes de ocurrir el incidente o evento mediante el cual la Propiedad Arrendada sufra daños por motivo de un incendio, explosión o cualquier otro incidente o evento cubierto por los seguros requeridos en este Contrato, sujeto a lo siguiente:

      (i)    que el Arrendador haya recibido la correspondiente compensación de la compañía aseguradora; y

      (ii)   que el accidente o evento que haya causado el daño no sea atribuible o haya ocurrido como consecuencia de la negligencia, alguna omisión o algún acto intencional del Arrendatario o alguno de sus empleados, agentes, visitantes o representantes, o como resultado de la violación por alguno de los anteriores de alguna ley, reglamento, orden u ordenanza, federal, estatal o municipal, o el incumplimiento de cualquier obligación o condición bajo este Contrato.

El Arrendatario reconoce que la responsabilidad del Arrendador en casos de daño o destrucción se limita a llevar a cabo los trabajos de reparación o reconstrucción



INICIALES

O.I.M.

11

con los fondos que se reciban de las compañías aseguradoras, entendiéndose que el Arrendatario será responsable de cubrir los deducibles y cualquier cantidad en exceso de la recibida de las compañías aseguradoras que sea necesaria para cubrir el costo de las obras de reparación, reconstrucción o reemplazo.

**13.03   Terminación de Contrato.**   No obstante lo dispuesto en la Sección 13.02 de este Contrato, si la Propiedad Arrendada es objeto de daño o destrucción, el Arrendador tendrá la opción de dar por terminado este Contrato en cualquiera de las siguientes circunstancias:

(i)   si los seguros requeridos en este Contrato no proveen cubierta para el accidente o evento ocurrido;

(ii)   el daño sufrido por la Propiedad Arrendada es de tal grado que excede el costo de reemplazo del Edificio y las otras estructuras en la Propiedad Arrendada;

(iii)   si el Edificio y las otras estructuras en la Propiedad Arrendada, en la opinión del Arrendador, no pueden ser reparados en un término de ciento veinte  (120) días del día en que ocurrió el accidente o evento;

(iv)   si el Edificio quedara tan deteriorado que el Arrendador decide demolerlo;  o

(v)   si el incidente o evento ocurre en cualquier momento durante los últimos dos (2) Años del Término de este Contrato.

En cualquiera de las anteriores circunstancias, el Arrendador podrá dar por terminado este Contrato  mediante notificación por escrito al Arrendatario dentro de los noventa (90) días a partir de la fecha que ocurrió el accidente o evento, en cuyo caso ambas partes quedarán relevadas de cualquier responsabilidad futura bajo el Contrato a partir de la fecha de efectividad de su terminación excepto aquellos que subsistan conforme al Artículo XII.

**13.04   Restauración.**   En el caso que el Arrendador tenga la obligación de reparar o reconstruir la Propiedad Arrendada conforme lo provisto en la Sección 13.02 de este Contrato, o si, a pesar de tener la opción de dar por terminado este Contrato conforme la Sección 13.03 de este Contrato, este decide reparar o reconstruir la Propiedad Arrendada, entonces el Arrendatario será responsable de la pérdida de artículos, equipo, maquinaria o cualquier otra propiedad que el Arrendatario haya unido, adherido, incorporado o instalado, o que el Arrendatario mantenga, en la Propiedad Arrendada.

**13.05   Ajuste en la Renta.**   Si la Propiedad Arrendada es objeto de daño o destrucción y el Arrendador decide reparar la misma (sujeto a que la causa del incendio o siniestro no sea por la negligencia, omisión o algún acto intencional del Arrendatario o alguno de sus empleados, agentes, visitantes o representantes, o la violación por alguno de los anteriores de alguna ley, reglamento, orden u ordenanza, federal, estatal o municipal, o el incumplimiento de cualquier obligación o condición bajo este Contrato), el Arrendatario tendrá derecho a un ajuste en la Renta Básica en proporción al área total de la Propiedad Arrendada que no podrá utilizar durante el período de reparación (i.e., desde la fecha del siniestro o evento hasta la fecha en que el Arrendador termine la reparación).   Si el Arrendador da por terminado el Contrato por alguna de las circunstancias indicadas en la Sección 13.03 de este Contrato, la Renta será pagada hasta la fecha del siniestro o evento.

**13.06   Informe de Daños.**   En caso de un desastre o siniestro, el Arrendatario preparará y entregará al Arrendador un informe de los daños dentro de las primeras dieciocho (18) horas de haber ocurrido el evento.



INICIALES

O.I.M

**12**

## ARTÍCULO XIV
### RENUNCIA A RECLAMACIONES; INDEMNIZACIONES

**14.01** **Indemnización.** El Arrendatario se compromete a defender, indemnizar y relevar al Arrendador, a sus directores, oficiales, empleados, agentes, representantes, sucesores y cesionarios de responsabilidad por cualquier daño, pérdida, reclamación, multa, penalidad, embargo, acción o demanda de cualquier clase o naturaleza, incluyendo cualquier gasto o costo incidental (incluyendo, pero sin limitarse a, costos de defensa, transacción y honorarios de abogado), con relación a o como consecuencia de (i) cualquier daño a un tercero (incluyendo muerte) o cualquier daño, pérdida o destrucción de la propiedad de un tercero, (a) dentro o en los alrededores de la Propiedad Arrendada ocasionado en todo o en parte por cualquier acto u omisión del Arrendatario o alguno de sus empleados (esté o no dicho acto dentro del ámbito de sus labores en el empleo), agentes, personas autorizadas, visitantes, sucesores o cesionarios, o (b) por motivo del uso o la ocupación de la Propiedad Arrendada por el Arrendatario, sus agentes, empleados, invitados o visitantes; (ii) la violación de alguna ley o reglamento, federal o estatal, o de alguna ordenanza municipal, o alguna orden administrativa o judicial, como consecuencia directa o indirecta de la ocupación del Arrendatario de la Propiedad Arrendada; o (iii) por el incumplimiento de cualquiera de sus obligaciones bajo este Contrato.

**14.02** **Renuncia a Reclamaciones.** El Arrendador no será responsable, y el Arrendatario releva al Arrendador y renuncia a cualquier reclamación contra el Arrendador, por cualquier daño a, o pérdida de, cualquier propiedad en la Propiedad Arrendada que pertenezca al Arrendatario, a sus empleados, agentes, visitantes, invitados, o cualquier otra persona, o por cualquier daño o pérdida que sufra el negocio del Arrendatario, por cualquier motivo o causa, incluyendo, pero no limitándose a, cualquier daño o pérdida como resultado de un incendio, vapor o humo; corto circuito; deficiencias en los servicios de agua, electricidad, gas u otro; lluvias, tormentas, huracanes u otras inclemencias del tiempo; inundaciones o filtraciones; o por defectos en tuberías, cables, equipos, plomería o el sistema de acondicionador de aire, independientemente que dicho daño o inconveniente sea como resultado de las condiciones o estado de la Propiedad Arrendada. El Arrendador no responderá al Arrendatario, o a sus agentes, empleados, invitados o visitantes, por daño o pérdida que sufra alguno de ellos, o su propiedad, como resultado de conducta criminal o actos intencionales, o por actos negligentes o intencionales de algún tercero o del Arrendatario, sus agentes, empleados, invitados y visitantes. El Arrendatario renuncia a cualquier reclamación contra el Arrendador por cualquier daño o pérdida en la Propiedad Arrendada o a cualquier persona o propiedad dentro de la Propiedad Arrendada a menos que el daño o la pérdida sea causada por negligencia crasa del Arrendador.

**14.03** **Arrendatario Responsable por Propiedad Mueble.** El Arrendatario reconoce que el Arrendador no será responsable por los daños que pueda sufrir cualquier propiedad mueble localizada en la Propiedad Arrendada o por el hurto o apropiación ilegal de la misma, correspondiéndole al Arrendatario todo el riesgo por cualquier daño o pérdida de dicha propiedad.

## ARTÍCULO XV
### SEGUROS

**15.01** **Seguros.** Durante el Término de este Contrato, el Arrendatario mantendrá en todo momento las siguientes pólizas de seguro:

(a) Responsabilidad pública comercial, incluyendo responsabilidad contractual, con límites no menores de $1,000,000 para daños corporales y $1,000,000 para daños a la propiedad, por evento ("occurrence"), asegurando al Arrendatario contra cualquier reclamación por incidentes en la Propiedad Arrendada o en sus inmediaciones como consecuencia de la ocupación de la Propiedad Arrendada por el Arrendatario, y que incluya al Arrendador y a sus agentes, oficiales, directores y empleados como asegurados adicionales, cuya póliza incluirá el endoso de "fire legal liability".

(b) Seguro de propiedad con cubierta "Contra todo Riesgo" ("All Risk"), por el cien por ciento (100%) del costo de reemplazo de la propiedad, incluyendo los

INICIALES



O.I.M

13

cimientos y con endoso de cubierta extendida, que nombre al Arrendador como beneficiario en caso de pérdida, cuyo formato deberá incluir, entre otros, cubierta contra incendios, huracanes, inundaciones, terremotos y otros siniestros de similar naturaleza, vandalismo y daños maliciosos, calderas y maquinaria (si aplica), en formato de edificio y contenido, incluyendo todo cambio, alteración, extensión y mejora hecha por el Arrendatario a la Propiedad Arrendada.

(c)     Póliza de responsabilidad contra contaminación, de requerirse por el Arrendador, si se estima necesario por razón del tipo de operaciones que lleve a cabo el Arrendatario.

(d)     Cualquier otro seguro sobre la Propiedad Arrendada y proveyendo cubierta contra aquellos riesgos asegurables que en cualquier momento sea común obtener en caso de propiedad similar a la Propiedad Arrendada, en las cantidades que requiera el Arrendador.

Los deducibles de las pólizas de seguro aquí exigidas serán asumidos por el Arrendatario, entendiéndose que de ocurrir un daño o pérdida y el Arrendador realizar las reparaciones, el Arrendatario reembolsará al Arrendador los deducibles contenidos en su póliza de seguros, además de los fondos que desembolse la compañía aseguradora.

15.02 **Seguros Durante Construcción.**   Durante cualquier periodo de construcción por el Arrendatario en la Propiedad Arrendada, incluyendo las mejoras descritas en el Anejo E, si alguno, el Arrendatario deberá mantener las siguientes pólizas de seguro:

(i)     Seguro "builder's risk" proveyendo cubierta sobre todas las mejoras que estén siendo construidas, equivalente al cien por ciento (100%) de su valor de reemplazo.

(ii)    Si el costo estimado de la obra supera los cinco mil dólares ($5,000), el Arrendatario, a su propio costo, someterá al Arrendador una fianza de cumplimiento ("performance bond") de una compañía reconocida y aprobada por el Arrendador, u otra garantía aceptable para el Arrendador, por una cantidad igual al costo estimado de la obra, que garantice la terminación de la misma en un tiempo razonable.  A solicitud del Arrendador, de estar llevando a cabo el Arrendatario más de una obra, el Arrendatario en lugar de obtener una fianza o garantía por separado para cada obra o proyecto, someterá una sola fianza o garantía por una cantidad suficiente para satisfacer al Arrendador por todas las alteraciones, cambios, adiciones o mejoras que llevará a cabo.

(iii)   Póliza de la Corporación del Fondo del Seguro del Estado por la suma requerida por ley,

15.03 **Aumento en Póliza de Seguro.**   El Arrendatario pagará cualquier aumento de prima de los seguros cubriendo la Propiedad Arrendada requerido por los riesgos adicionales que surjan de cualquier alteración, cambio, adición o mejora hecha por el Arrendatario a la Propiedad Arrendada.

15.04 **Requisitos Generales.**   El formato y el contenido de todas las pólizas de seguro que viene obligado a tener el Arrendatario bajo este Artículo XV deberán ajustarse a los requisitos del Arrendador, y deberán disponer lo siguiente:  (i) que la cubierta de la póliza no podrá ser reducida, cancelada o no renovada por la compañía aseguradora sin la notificación previa por escrito al Arrendador y al Arrendatario por lo menos sesenta (60) días antes (a menos que dicha cancelación sea por motivo de la falta de pago de la prima, en cuyo caso la notificación deberá ser enviada por lo menos treinta (30) días antes);  y (ii) que la póliza será renovada inmediatamente por el Arrendatario a la fecha de su expiración.  El Arrendatario deberá obtener dichas pólizas de compañías de seguro debidamente autorizadas a hacer negocios en Puerto Rico, aceptables para el Arrendador, con una clasificación no menor de "A" y categoría financiera de "IV" o superior, según el informe de seguros de A.M. Best and Company.



O.I.M

**15.05** **Certificado de Seguro.** Antes de la Fecha de Entrega de Posesión, el Arrendatario deberá someter al Arrendador todas las pólizas exigidas bajo este Artículo XV, con todos sus endosos (o copias certificadas de las mismas) y certificados de seguro evidenciando las cubiertas requeridas en las Secciones 15.01 y 15.02 de este Contrato. El Arrendatario reconoce expresamente el derecho del Arrendador a no entregar la Propiedad Arrendada al Arrendatario hasta dos (2) días después de que se hayan depositado con el Arrendador los originales de las pólizas (o copias certificadas) y los certificados de seguro, según requerido en esta sección.

**15.06** **Evidencia de Pago; Renovación de Pólizas.** El Arrendatario deberá enviar al Arrendador evidencia satisfactoria del pago de las primas dentro de los quince (15) días siguientes de sus respectivas fechas de renovación y someterá el correspondiente certificado de seguro o copia certificada de las pólizas para cada póliza renovada.

**15.07** **Reclamaciones.** El Arrendatario asistirá al Arrendador en el cobro de aquellas reclamaciones contra las correspondientes compañías aseguradoras en aquellos casos que el Arrendador lleve la reclamación, incluyendo la preparación del informe de daños y otros documentos que sean necesarios para la reclamación. En caso que el Arrendatario no provea tales documentos, el Arrendador como agente o apoderado del Arrendatario, podrá, además de utilizar cualquier otro medio que tenga disponible, preparar y someter cualquier evidencia de pérdida o cualquier otro documento necesario para el cobro de la compensación.

**15.08** **Revisiones Periódicas.** El Arrendador se reserva el derecho de revisar y exigir periódicamente aumentos en los límites de las cubiertas requeridas en este Contrato para ajustar las mismas a los efectos de inflación.

**15.09** **Penalidades.** No obstante lo previsto en la Sección 22.08 de este Contrato, si el Arrendatario incumple con su deber de mantener las pólizas requeridas en este Artículo XV, y el Arrendador se ve precisado a obtener las mismas en su lugar, el Arrendatario reembolsará la prima de dicha póliza al Arrendador y además, le pagará una cantidad equivalente al doce por ciento (12%) del costo de la póliza así obtenida por el Arrendador para cubrir los gastos administrativos del Arrendador.

**15.10** **Renuncia al Derecho de Subrogación.** (a) El Arrendador y el Arrendatario acuerdan que toda cubierta contra incendio y extensiones de dicha cubierta y cualquier seguro contra daños a la propiedad deberá incluir un endoso que provea que cualquier relevo de responsabilidad o renuncia de reclamación para recobrar de la otra parte, suscrito por el asegurador antes de ocurrir cualquier pérdida o daño, no afectará la validez de dicha póliza o el derecho del asegurado de cobrar cualquier compensación que proceda bajo la póliza, siempre que el asegurador renuncie a todo derecho de subrogación que tenga contra la otra parte. Cualquier renuncia o relevo de reclamación no operará en aquellos casos en que el efecto de dicha renuncia o relevo es invalidar la cubierta del seguro o invalidar el derecho del asegurado de recobrar bajo la póliza. Cuando la renuncia al derecho de subrogación resulte en un aumento en la prima del seguro, el Arrendatario en un término de diez (10) días luego de la notificación por escrito, deberá pagar dicho aumento para mantener vigente dicho relevo o renuncia.

(b) Ni el Arrendador ni el Arrendatario será responsable al otro ni a una compañía de seguros que haya provisto cubierta contra pérdidas o daños a edificios, estructuras o cualquier otra propiedad tangible, o por la pérdida de ingresos o cualquier otro daño o pérdida determinable, sea mediante subrogación o de cualquier otra forma, aún cuando la causa de dicha pérdida o daño sea, en todo o en parte, algún acto negligente u omisión de la otra parte, sus agentes, oficiales, directores o empleados, todo ello en la medida que dicha pérdida o daño sea objeto de cubierta por una póliza de seguro a favor de la parte afectada.

### ARTÍCULO XVI
### DERECHOS DEL ARRENDADOR

**16.01** **Acceso a la Propiedad Arrendada.** El Arrendador tendrá derecho a entrar a la Propiedad Arrendada para inspeccionar la misma, hacer cualquier reparación o trabajo que le corresponda conforme las disposiciones de este Contrato o las que el

INICIALES



O.I.M.

Arrendatario haya dejado de hacer a pesar de ser responsable por ellas bajo este Contrato, o con el propósito de mostrar la Propiedad Arrendada a personas interesadas en alquilar o adquirir la misma.  Dicho derecho de acceso estará sujeto a lo siguiente: (a) si es por motivo de alguna situación de emergencia, lo cual determinará el Arrendador a su discreción, el Arrendador tendrá libre acceso a la Propiedad Arrendada sin previo aviso;  (b) bajo cualquier otra circunstancia, el Arrendador tendrá acceso durante horas laborables;  y (c) el Arrendador deberá mantener al mínimo posible las interrupciones a las operaciones del Arrendatario.

ARTICULO XVII<br>
QUIEBRA DEL ARRENDATARIO- Intencionalmente omitida.

ARTICULO XVIII<br>
TERMINACIÓN POR INCUMPLIMIENTO

**18.01** <u>**Causales de Terminación por Incumplimiento del Arrendatario.**</u>  Además de, e independientemente de cualquier otra causal de terminación que haya sido identificada en este Contrato o disponible bajo cualquier ley aplicable, cada uno de los siguientes eventos o actos son causas de terminación por incumplimiento por las cuales el Arrendador podrá dar por terminado este Contrato, luego de notificación por escrito al Arrendatario:

      (a)    si el Arrendatario no paga la Renta Mensual al Arrendador dentro del término previsto en la Sección 5.01 de este Contrato, o deja de pagar cualquier otra suma cuyo pago le corresponde bajo este Contrato, y continúa sin pagar la misma diez (10) días después de la fecha de vencimiento del pago;

      (b)    si el Arrendatario no paga (i) la Renta Mensual al Arrendador en o antes del primer día del mes, o (ii) cualquier otra suma que adeude bajo este Contrato a su vencimiento, en dos o más ocasiones en un período de doce (12) meses consecutivos;

      (c)    si el Arrendatario abandona la Propiedad Arrendada, según se define el término "abandono" en la Sección 18.03 de este Contrato, una vez quede documentado y certificado el abandono mediante el procedimiento establecido en el inciso (b) de la Sección 18.03 de este Contrato;

      (d)    si este Contrato fuera gravado, cedido o de cualquier otra forma transferido, en todo o en parte, o por operación de ley o sucesión, se traspasara a un tercero, excepto según provisto de otra forma en este Contrato;

      (e)    si el Arrendatario hace una cesión general de sus activos en beneficio de sus acreedores; y

      (f)    si el Arrendatario no toma posesión física de la Propiedad Arrendada dentro de los diez (10) días siguientes a la Fecha de Entrega de Posesión.

**18.02** <u>**Otras Causales de Terminación.**</u>   Además de las causas de terminación por incumplimiento identificadas en la Sección 18.01 de este Contrato, el Arrendador podrá por terminado este Contrato si el Arrendatario no cumple con cualquier obligación principal bajo este Contrato, dentro de un término de quince (15) días a partir del envío de notificación por escrito del Arrendador requiriendo su estricto cumplimiento (disponiéndose, sin embargo, que dicho período de quince (15) días podrá extenderse, con el previo consentimiento del Arrendador, si el Arrendatario comienza las gestiones encaminadas a resolver la situación notificada dentro de dicho período de quince (15) días y continúa actuando diligentemente y llevando a cabo los esfuerzos razonables para resolver o subsanar dicha situación, por un período máximo de sesenta (60) días, según sea necesario para completar las gestiones con diligencia y continuidad). Obligaciones principales bajo este Contrato, incluyen, pero no se limitan a, lo siguiente:

            (i)    la obligación del Arrendatario de mantener los niveles de capitalización, inversión y empleo requeridos en la Sección 1.08 de este Contrato;



O.I.M.

(ii) la obligación del Arrendatario de no interrumpir sus operaciones en la Propiedad Arrendada sin haber notificado previamente al Arrendador conforme la Sección 4.02(b) de este Contrato; que dicha interrupción no se extienda por un período en exceso del indicado al Arrendador, el cual nunca podrá exceder tres (3) meses;

(iii) la obligación del Arrendatario de someter para la aprobación del Arrendador planos o cualquier otra información relacionada con las mejoras y alteraciones a ser hechas por el Arrendatario en la Propiedad Arrendada, cuando así le sea requerido en este Contrato;

(iv) el fiel cumplimiento por el Arrendatario de las cláusulas ambientales en el Artículo XII de este Contrato; y

(v) la prohibición de utilizar o permitir que la Propiedad Arrendada o cualquier parte de la misma sea utilizada para propósitos ilegales o para un uso que no sea aquél permitido en la Sección 1.07 de este Contrato.

**18.03 Abandono.** El Arrendatario admite y reconoce que la Compañía de Fomento Industrial de Puerto Rico fue creada con el fin público de fomentar la creación de empleos y el constante desarrollo industrial de Puerto Rico; que los niveles de capitalización, inversión y empleo, según detallados en las Sección 1.08 de este Contrato, y el requisito de continuidad de las operaciones en la Propiedad Arrendada, de conformidad con lo provisto en la Sección 4.02 de este Contrato, obedecen a dicho fin público; que para poder cumplir continua y consistentemente con dicho fin público, el Arrendador como política pública necesita mantener disponibles en inventario el mayor número posible de facilidades industriales para el desarrollo de nuevos proyectos o industrias; y que actos tales como los descritos en el inciso (a) de esta Sección 18.03 malogran el propósito de este Contrato, menoscaban la facultad del Arrendador de mantener el mayor número de facilidades industriales en operación y, por ende, impiden al Arrendador cumplir con el fin público enunciado. Por lo tanto, el Arrendatario reconoce que el envío o la entrega de las llaves de la Propiedad Arrendada al Arrendador constituirá admisión por parte del Arrendatario de su voluntad de abandonar la Propiedad Arrendada y cualquier equipo, maquinaria o mobiliario que el Arrendatario haya dejado en la misma. El Arrendatario también reconoce que el hecho de haber abandonado bienes en la Propiedad Arrendada de forma voluntaria mediante la entrega de las llaves es prueba fehaciente de su deseo de desprenderse de los mismos y renunciar al dominio sobre éstos, concediéndole al Arrendador el derecho absoluto de disponer de dicha propiedad, según contemplado en el inciso (b)(ii) a continuación.

(a) Se considerará para propósitos de este Contrato, que el Arrendatario ha abandonado la Propiedad Arrendada, de ocurrir cualquiera de los siguientes actos o eventos:

(i) el Arrendatario envía o entrega las llaves de la Propiedad Arrendada al Arrendador;

(ii) el Arrendatario cesa operaciones y clausura la Propiedad Arrendada, irrespectivamente de que deje en la misma equipo, maquinaria y mobiliario; o

(iii) el Arrendatario remueve o transfiere a otro lugar sus operaciones, personal o equipo que usualmente mantenía en la Propiedad Arrendada, sin el consentimiento del Arrendador.

(b) El siguiente procedimiento se adopta para confirmar el acto de "abandono" del Arrendatario para los actos o eventos identificados en el inciso (a) de esta Sección 18.03:

(i) Una vez el Arrendador haya verificado que el Arrendatario ha incurrido en algún acto de abandono descrito en la Sección


INICIALES

O.I.M.

17

18.03(a), el Arrendador enviará al Arrendatario, por correo certificado con acuse de recibo, una notificación donde describirá el acto de abandono que haya cometido el Arrendatario. A partir del envío de dicha notificación, el Arrendatario tendrá quince (15) días para descontinuar la práctica señalada o, de no estar de acuerdo con la apreciación del Arrendador, refutar la misma y aclarar la situación por escrito. Si el acto de abandono continua luego de transcurrido el término de quince (15) días anteriormente provisto, el Arrendador podrá cursar una segunda notificación confirmando el acto de abandono, la cual será efectiva a la fecha de su envío.

(ii)     Una vez confirmado el acto de abandono según lo provisto en el inciso (b)(i) anterior, el Arrendador podrá dar por terminado este Contrato mediante notificación al Arrendatario a esos efectos, la cual será efectiva en la fecha de su envío. En dicha notificación se exigirá al Arrendatario que retire en un término de diez (10) días todo el equipo, maquinaria, mobiliario u otra propiedad que permanezca en la Propiedad Arrendada, apercibiéndole al Arrendatario que de no retirar el mismo en el período de tiempo provisto, el Arrendador procederá a remover dicha propiedad y, a su discreción, almacenarla a cuenta y cargo del Arrendatario, o disponer de ella libremente según entienda conveniente, sin tener derecho el Arrendatario a reclamación o compensación alguna por el valor de la propiedad abandonada o por cualquier daño o pérdida incidental a la disposición de dicha propiedad por el Arrendador.

(c)     Sujeto al cumplimiento del procedimiento anteriormente descrito, el Arrendatario renuncia a cualquier reclamación, y releva al Arrendador de responsabilidad, por cualquier daño o pérdida que el Arrendatario pueda sufrir como consecuencia de la remoción y ulterior disposición de la propiedad que el Arrendatario haya abandonado en la Propiedad Arrendada.

**18.04  Terminación por Arrendatario.**  El Arrendatario podrá resolver este Contrato, sin penalidad alguna, de ocurrir lo siguiente:

(a)     si el Arrendatario relocaliza sus operaciones a otro local o edificio del Arrendador de mayor cabida con el propósito de aumentar sus operaciones de manufactura en términos de capitalización, inversión o empleo, y si al momento de la relocalización, el Arrendatario esté en cumplimiento con los términos y condiciones de este Contrato;  disponiéndose, sin embargo, que todo gasto inherente a o como consecuencia de dicha relocalización será por cuenta y cargo del Arrendatario; o

(b)     Si se le negara al Arrendatario la exención contributiva bajo la Ley de Incentivos Industriales de Puerto Rico, la cual ha solicitado o solicitará pronta y diligentemente a la Oficina de Exención Contributiva, para la manufactura de productos elegibles bajo la Ley de Incentivos Industriales de Puerto Rico;  disponiéndose, sin embargo, que el derecho de terminación bajo esta causal sólo podrá ejercitarse en un término de treinta (30) días a partir de la fecha de la notificación de la denegatoria y no podrá ejercitarse por Arrendatarios que conocían con anterioridad a la firma de este Contrato, que su proceso de manufactura no era elegible para los beneficios de exención contributiva.

**18.05  Opciones del Arrendador.**  (a) El Arrendador podrá dar por terminado este Contrato de incumplir el Arrendatario sus obligaciones bajo el mismo, o por aquellas causales de terminación identificadas en las Secciones 18.01 y 18.02, mediante notificación por escrito a esos efectos, por correo certificado con acuse de recibo, la cual será efectiva en la fecha indicada en dicha notificación.

(b)     No obstante lo anterior, el Arrendador siempre podrá exigir el estricto cumplimiento de los términos y condiciones de este Contrato, y exigir y proteger sus derechos bajo este Contrato, mediante acción judicial, en equidad o conforme la ley,



O.I.M.                                    **18**

exigiendo el fiel cumplimiento de los acuerdos y obligaciones, incluyendo el pago de toda cantidad adeudada bajo este Contrato.

(c)  El Arrendador tendrá los derechos y remedios anteriormente provistos, de ocurrir alguna causal de terminación. Estos serán independientes y acumulativos, y no tendrán como efecto excluir o privar al Arrendador de cualquier otro derecho o remedio disponible en ley.

(d)  Independientemente de que este Contrato se dé por terminado por parte del Arrendador, todas las obligaciones económicas, de responsabilidad ambiental y cualquier otra que el Arrendatario asuma en virtud de este Contrato, permanecerán vigentes, hasta tanto el Arrendatario dé estricto cumplimiento a las mismas, a satisfacción del Arrendador.

18.06  **Daños**.  Si el Arrendador decide dar por terminado este Contrato de conformidad con la Sección 18.05 de este Contrato, el Arrendatario será responsable y pagará al Arrendador lo siguiente:

(i)  toda partida de Renta Básica y de Renta Adicional vencida y no pagada hasta la fecha de la terminación de este Contrato;

(ii)  toda pérdida, daño y gasto del Arrendador como consecuencia de la terminación prematura de este Contrato, incluyendo, pero sin limitarse a, gastos por concepto de notificaciones al Arrendatario relacionados a la terminación de este Contrato y por gestiones de cobro; honorarios de abogado incurridos durante el proceso de notificación, la eventual terminación del Contrato y, los procedimientos judiciales incoados; el costo de las reparaciones necesarias para poner la Propiedad Arrendada en las condiciones en que debía ser entregada por el Arrendatario; y los gastos incurridos como consecuencia de las gestiones que el Arrendador lleve a cabo para alquilar nuevamente la Propiedad Arrendada de acuerdo a lo provisto en la Sección 18.07 de este Contrato; y

(iii)  daños equivalentes al total de Renta Básica correspondiente al balance del término en curso (i.e., la Renta Básica correspondiente al período entre la fecha de terminación y la fecha de expiración del término en curso de acuerdo a las Secciones 1.09 y 3.01 de este Contrato), que el Arrendador hubiera recibido de no haber sido por la terminación prematura de este Contrato.

18.07  **Derecho a Realquiler; Reembolsos**.  En cualquier momento que el Arrendador recupere la posesión de la Propiedad Arrendada, se haya terminado o no este Contrato conforme la Sección 18.05 de este Contrato, el Arrendador podrá, pero no estará obligado a, volver a alquilar la Propiedad Arrendada o parte de la misma, a nombre del Arrendatario (en forma de subarrendamiento) o a nombre propio, tantas veces como entienda conveniente.  El realquiler de la Propiedad Arrendada o parte de la misma podrá ser por el término de tiempo, condiciones y el uso que el Arrendador, a su discreción, entienda conveniente;  disponiéndose en particular que el término de cualquier realquiler podrá ser de mayor o menor duración que el período que restaba del Término al momento de la terminación de este Contrato y las condiciones podrán incluir concesiones especiales, tales como créditos contra el canon de renta estipulado, un canon de renta menor al estipulado bajo este Contrato o renta gratuita.  El Arrendatario admite y reconoce que la fórmula de daños bajo la Sección 18.06 de este Contrato no estará sujeta a ajustes por el hecho que el Arrendador decida mantener la Propiedad Arrendada fuera del mercado o por que la misma o parte de ella sea alquilada a un tercero a un canon mensual menor al estipulado con el Arrendatario bajo este Contrato.



INICIALES

O.I.M.

## ARTÍCULO XIX
## ENTREGA DE LA PROPIEDAD ARRENDADA

19.01 **Entrega de la Propiedad Arrendada.** El Arrendatario entregará la Propiedad Arrendada al Arrendador en la fecha de expiración del Término, o a la terminación de este Contrato, libre de todo equipo, maquinaria y mobiliario, en buen estado, sujeto al menoscabo por el mero transcurso del tiempo, con todas las mejoras, cambios o alteraciones que se hayan hecho a la misma con el consentimiento del Arrendador, y que el Arrendador no requiera sean removidas.

19.02 **Permanencia Luego del Término.** Si el Arrendatario permanece en posesión de la Propiedad Arrendada luego de expirado el Término, y sin haberse otorgado un nuevo contrato de arrendamiento entre las partes, el Arrendador, a su discreción, podrá considerar y declarar la ocupación del Arrendatario una de mes a mes con una renta mensual equivalente al ciento cincuenta porciento (150%) de la Renta Mensual aplicable al último mes bajo este Contrato, sujeto a todos los demás términos y condiciones de este Contrato, en la medida que sean consistentes con un arrendamiento de mes a mes. El Arrendatario indemnizará, defenderá y relevará al Arrendador por cualquier daño, responsabilidad o gasto (incluyendo, honorarios de abogado) que resulte del retraso del Arrendatario a entregar la Propiedad Arrendada, incluyendo, sin limitación, cualquier reclamación hecha por nuevos inquilinos o terceros con quienes se tenía comprometida la Propiedad Arrendada o parte de la misma. La aceptación de pagos por concepto de renta luego de la terminación de este Contrato no constituirá por sí solo una renovación o novación de este Contrato. Nada de lo antes provisto se entenderá o tendrá el efecto de renuncia por el Arrendador de su derecho a recuperar la Propiedad Arrendada o cualquier otro derecho o remedio que el Arrendador pueda tener en ley, en equidad o bajo este Contrato.

19.03 **Inspección de la Propiedad Arrendada.** Al expirar el Término o a la terminación de este Contrato, la Propiedad Arrendada será inspeccionada y evaluada por el Arrendador, quien deberá certificar mediante un informe de inspección el estado físico y ambiental de la Propiedad Arrendada antes de aceptar la misma. El informe de inspección deberá identificar cualquier deficiencia física o ambiental en la Propiedad Arrendada que deba ser corregida, reparada o remediada por el Arrendatario, a su costo, como condición previa a que el Arrendador pueda aceptar la Propiedad Arrendada. Si el Arrendatario no realiza el trabajo de reparación o remediación requerido en un tiempo razonable, el Arrendador podrá pero no estará obligado a realizar el mismo, y el Arrendatario será responsable por el costo de dicho trabajo.

19.04 **Equipo, Maquinaria y Mobiliario No Removido.** Cualquier equipo, maquinaria, mobiliario u otra propiedad que permanezca en la Propiedad Arrendada luego de la fecha de expiración del Término o la terminación de este Contrato, según sea el caso, podrá, a opción del Arrendador, ser removida de la Propiedad Arrendada y almacenada en otro lugar, siendo el Arrendatario responsable por el costo de remoción y almacenaje de dicha propiedad. Cualquier equipo, maquinaria, mobiliario u otra propiedad no reclamada por el Arrendatario en un término de treinta (30) días a partir de la fecha de expiración o terminación de este Contrato se considerará que ha sido abandonado intencionalmente por el Arrendatario y, a discreción del Arrendador, traspasado a favor del Arrendador, sin más formalidad que el otorgamiento de este Contrato, teniendo el Arrendador el derecho incondicional de disponer libremente de la misma según entienda conveniente, sin tener derecho el Arrendatario a compensación o crédito alguno por el valor de dicha propiedad.

19.05 **Responsabilidad del Arrendatario.** Ni la expiración o terminación de este Contrato, ni la reposesión de la Propiedad Arrendada o parte de la misma, ni el realquiler de la Propiedad Arrendada o cualquier parte de la misma conforme lo provisto en este Contrato, relevarán al Arrendatario de sus responsabilidades económicas y demás obligaciones bajo este Contrato, las cuales subsistirán luego de la expiración o terminación de este Contrato, así como la reposesión o realquiler de la Propiedad Arrendada.



INICIALES

O.I. 20

## ARTÍCULO XX
## REQUISITOS LEGALES

**20.01** **Cumplimiento con Requisitos Legales y de Seguros.** (a) El Arrendatario, a su costo, observará y cumplirá (i) todo requisito y/o condición bajo cualquier ley o reglamento, federal, estatal o municipal (incluyendo, cualquier orden ejecutiva u ordenanza municipal) aplicable a la Propiedad Arrendada en el presente o futuro, o al uso de la Propiedad Arrendada (incluyendo, pero sin limitarse a, toda ley, reglamento u ordenanza federal, estatal o local aplicable sobre calidad de aire y agua, materiales o sustancias tóxicas o peligrosas, disposición de desperdicios, emisiones y cualquier otro asunto ambiental); (ii) todo requisito y condición para obtener, mantener y en su momento renovar todos los permisos y endosos necesarios para poder utilizar la Propiedad Arrendada para los fines contemplados en este Contrato y el permiso de uso de ARPE; (iii) los requisitos de las compañías de seguro que provean cualquier tipo de cubierta para la Propiedad Arrendada de conformidad con el Artículo XV de este Contrato; (iv) cualquier condición real, carga o gravamen que afecte la Propiedad Arrendada; (v) todo requisito de zonificación y uso de terrenos; y (vi) cualquier requerimiento de un oficial permisos o público actuando conforme la autoridad que le confiera cualquier ley, que impone al Arrendador o al Arrendatario cualquier deber u obligación con respecto al uso o la ocupación de la Propiedad Arrendada.

(b)      Serán por cuenta y cargo del Arrendatario cualquier gasto necesario para el fiel y estricto cumplimiento de cualquier requisito o condición legal o contractual, según descritos en el párrafo anterior, incluyendo, pero sin limitarse a, cualquier gasto relacionado a mejoras o instalaciones requeridas por cualquier agencia o entidad gubernamental con jurisdicción como condición de la expedición o renovación de su permiso o endoso a la operación que el Arrendatario se propone llevar a cabo en la Propiedad Arrendada.

(c)      El Arrendatario, cuando le sea requerido por el Arrendador, someterá evidencia del cumplimiento con cualquiera de los anteriores requisitos o condiciones o de la vigencia de los endosos de agencias administrativas que necesita para sus operaciones en la Propiedad Arrendada.

## ARTÍCULO XXI
## CESIÓN Y SUBARRENDAMIENTO

**21.01** **Cesión y Subarriendo.** El Arrendatario no podrá (i) ceder este Contrato, subarrendar la Propiedad Arrendada o parte de la misma.

**21.02** **Cambio de Control.** N/A

**21.03** **Cesiones o Subarrendamientos Permitidos.** N/A

## ARTÍCULO XXII
## DISPOSICIONES GENERALES

**22.01** **Letreros y Anuncios.** El Arrendatario no podrá, sin el consentimiento previo por escrito del Arrendador instalar u ordenar que se instale o coloque ningún cartel, letrero, rótulo o anuncio o estructura de clase alguna en la azotea o en las paredes exteriores del Edificio o en alguna otra parte de la Propiedad Arrendada.

**22.02** **Estacionamiento.** Si el número de espacios de estacionamiento en la Propiedad Arrendada no es suficiente para las necesidades del Arrendatario, será responsabilidad del Arrendatario remediar dicha situación. El Arrendatario releva al Arrendador de cualquier reclamación en cuanto a número de espacios de estacionamiento disponibles en la Propiedad Arrendada.

**22.03** **Honorarios de Abogado.** El Arrendatario pagará todos los cargos y gastos, incluyendo las costas y honorarios de abogado, incurridos por el Arrendador para lograr que el Arrendatario cumpla con sus acuerdos y obligaciones bajo este Contrato, o incurridos por el Arrendador en cualquier acción que radique el Arrendatario en la cual prevalezca el Arrendador, o incurrida por el Arrendador en cualquier litigio, negociación



INICIALES



O.I.M.

21

o transacción en la que el Arrendatario requiera al Arrendador que intervenga o participe, cuando no ha mediado culpa o negligencia por parte del Arrendador.

**22.04** **Sucesores y Cesionarios.** Este Contrato obligará y beneficiará a cada una de las partes otorgantes, en sus respectivas capacidades como Arrendador y Arrendatario, y a sus respectivos sucesores, cesionarios y representantes legales; disponiéndose, sin embargo, que si en un futuro el título de la Propiedad Arrendada es transferido, voluntariamente o por operación de ley, la persona jurídica o natural que adquiera dicho título adquirirá libre de toda responsabilidad personal en lo que respecta al cumplimiento de este Contrato, a menos que expresamente asuma y acepte las obligaciones como Arrendador bajo este Contrato mediante documento en el que comparezca el nuevo titular y el Arrendatario. Se dispone que lo anterior no tiene el efecto de permitir traspaso, cesión, hipoteca, carga, gravamen, cargo o subarriendo alguno que sea contrario a lo provisto en otras secciones de este Contrato.

**22.05** **Obligación de Arrendar.** (a) La mera entrega de este documento al Arrendatario para su estudio y consideración no constituye un derecho de opción o de preferencia sobre la Propiedad Arrendada ni obliga de forma alguna al Arrendador a arrendar. La obligación del Arrendador para arrendar bajo este Contrato no se perfeccionará si no hasta que el Arrendatario haya entregado este Contrato firmado y el mismo sea aprobado por la Junta de Directores del Arrendador o su Director Ejecutivo, según corresponda.

(b) El Arrendatario tendrá treinta (30) días a partir de la entrega del contrato de arrendamiento preparado para la Propiedad Arrendada para firmarlo. Pasado los treinta (30) días sin que se devuelva firmado el contrato de arrendamiento al Arrendador, el Arrendador no tendrá obligación de arrendar, cancelándose automáticamente la reservación del Arrendatario sobre la Propiedad Arrendada.

**22.06** **Término "Arrendatario".** El término "Arrendatario" según utilizado en este Contrato será aplicado de forma tal que incluya a más de una persona o entidad de ser más de uno las personas o entidades que comparecen y firman este Contrato en calidad de Arrendatarios. En este sentido, deberán inferirse todos los cambios o ajustes gramaticales requeridos para que las disposiciones de este Contrato apliquen por igual a corporaciones, sociedades u otras entidades, o individuos, como si las mismas ya estuvieran incorporadas al texto del documento. En todo caso en que el Arrendatario sean dos o más personas o entidades, la responsabilidad de cada uno de ellos será solidaria.

**22.07** **Títulos.** Los títulos de los artículos y secciones de este Contrato son incluidos única y exclusivamente para facilitar la lectura de este documento y cualquier referencia al mismo, y no deben ser referidos para propósitos de interpretación de los términos y condiciones de este Contrato.

**22.08** **Cargos por Mora.** (a) Todo pago que el Arrendatario está obligado a hacer conforme lo provisto en este Contrato, incluyendo, sin limitación, el Depósito, la Renta Básica, la Renta Adicional, y cualquier ajuste en el Depósito o en la Renta, acumulará intereses a partir de la fecha de su vencimiento, hasta su pago total, a razón del uno por ciento (1%) sobre la tasa de interés prevaleciente cobrada por los principales bancos comerciales de la ciudad de Nueva York a la fecha de vencimiento del pago. Si fuera ilegal dicha tasa de interés, entonces se cobrará la tasa máxima permisible por la Junta Reguladora de Tasas de Interés y Cargos Financieros, creada bajo la Ley Núm. 1, aprobada el 15 de octubre de 1973, según enmendada (10 L.P.R.A. §998), o por cualquier estatuto o reglamento subsiguiente.

(b) Si el Arrendatario deja de pagar la Renta Básica o cualquier Renta Adicional dentro de los diez (10) días de su vencimiento, entonces el Arrendatario también deberá pagar al Arrendador una penalidad para cubrir gastos administrativos y de cobro, equivalentes a (i) Cien Dólares ($100.00), o (ii) por cada día de atraso, la mitad del uno por ciento (0.5%) de la cantidad adeudada, lo que sea mayor. Lo anteriormente provisto para el pago tardío de partidas no constituye ni deberá interpretarse como una extensión de la fecha límite del pago de cualquier cantidad que el Arrendatario debe pagar bajo este Contrato o como un relevo de la obligación del Arrendatario de pagar dichas cantidades al momento establecido en este Contrato.



O.I.M. 22

**22.09  Garantía de Arrendamiento.**  Simultáneamente con la firma y entrega de este Contrato, si fuese requerido por el Arrendador, el Arrendatario deberá entregar al Arrendador el documento de Garantía de Arrendamiento debidamente otorgado por el Garantizador identificado en la Sección 1.15 de este Contrato, si alguno, cuyo documento de garantía deberá ser otorgado en un formato substancialmente similar al que acompaña este documento como Anejo G. **(N/A)**

**22.10  Cumplimiento.**  Cuando en este Contrato se le imponga a cualquiera de las partes algún requisito, deber o responsabilidad, la parte a quien le corresponda cumplir o satisfacer dicho requisito, deber o responsabilidad lo hará a cuenta y cargo propio, a menos que específicamente se provea lo contrario.

**22.11  Totalidad del Acuerdo.**  Este Contrato, junto con sus anejos, contienen todos los términos, condiciones, acuerdos y compromisos entre las partes con respecto a la Propiedad Arrendada; sustituye y deja sin efecto cualquier otro contrato o acuerdo, verbal o escrito, entre las partes con relación a la ocupación y uso de la Propiedad Arrendada por el Arrendatario, incluyendo cualquier carta acuerdo que haya regulado la relación entre las partes previo a y durante la negociación de este Contrato; y sólo podrá ser modificado, enmendado, alterado o cancelado mediante documento suscrito por ambas partes.

**22.12  Fuerza Mayor.**  En la eventualidad que el Arrendador se vea impedido o se retrase en el cumplimiento de alguna de sus obligaciones o compromisos bajo este Contrato por motivo de actos o eventos de fuerza mayor, dicho cumplimiento será excusado por el período de tiempo que razonablemente se entienda que dicho acto o evento impida su cumplimiento.  Se entiende por acto o evento de fuerza mayor cualquier incidente o suceso fuera del control del Arrendador, incluyendo, pero no limitándose a, paros, huelgas, cierres o disputas laborales;  inhabilidad de obtener materiales necesarios; motines, actos de guerra e insubordinación;  incendios, explosiones, accidentes y actos de sabotaje; falta de electricidad o combustible;  inundaciones, terremotos, lluvias torrenciales y huracanes;  órdenes o interdictos judiciales, administrativos o gubernamentales;  leyes y reglamentos federales, estatales o municipales;  la revocación, modificación o suspensión de un permiso, licencia u otra autorización necesaria;  asuntos de seguridad nacional;  actos o situaciones directa o indirectamente causados por el Arrendatario (sus agentes, empleados, contratistas, o invitados);  o cualquier otra situación o evento razonablemente fuera del control del Arrendador.  En dicha situación, el término de tiempo para que el Arrendador cumpla con dicha obligación o compromiso se extenderá automáticamente por el período del retraso que resulte de dicho evento de fuerza mayor.

**22.13  Situaciones de Emergencia.**  El Arrendatario se compromete a cooperar, asistir y participar de los programas que implante el Arrendador para atender situaciones de emergencia y fuerza mayor.

**22.14  Certificado de Estoppel.**  Intencionalmente omitida

**22.15  Deberes del Arrendatario; Derecho del Arrendador.**  El cumplimiento de todo acuerdo y obligación del Arrendatario bajo cualquiera de los términos de este Contrato, será a cuenta y cargo exclusivo del Arrendatario, y sin derecho de ajuste o compensación contra la Renta.  Si el Arrendatario incumpliera o dejara de desempeñar cualquiera de los actos que le corresponde bajo este Contrato, y dicho incumplimiento persiste por diez (10) días de la entrega personal o el depósito en el correo de la notificación del Arrendador exigiendo el cumplimiento específico, el Arrendador tendrá derecho, pero no vendrá obligado a actuar según requerido para remediar dicha situación, sin liberar o relevar al Arrendatario de sus obligaciones con respecto a dicho compromiso.  Cualquier cantidad pagada o gasto incurrido por el Arrendador en dicha gestión, acumulará intereses conforme lo provisto en la Sección 22.08 de este Contrato y deberá ser pagada por el Arrendatario al Arrendador inmediatamente que le sea requerida.

**22.16  Relación entre las Partes.**  La relación existente entre las partes otorgantes es de Arrendador y Arrendatario exclusivamente, y nada de lo dispuesto en este Contrato


INICIALES

O.I.M.

23

deberá interpretarse como que crea una sociedad, empresa común, relación de principal y agente o cualquier otro tipo de relación entre las partes.

22.17 **Nulidad o Invalidez Parcial.** Si algún término, cláusula, sección o artículo de este Contrato, o la aplicación o exigibilidad del mismo, fuera declarado nulo, inválido o no exigible mediante orden o sentencia final, firme e inapelable de un tribunal de justicia con jurisdicción, el resto del Contrato, o la aplicación de dicho término, cláusula, sección o artículo a personas o circunstancias que no sean aquellas con respecto a las cuales se declaró la nulidad, invalidez o inexigibilidad, no será afectado por dicha orden o sentencia, y cada término y condición de este Contrato será válido y exigible hasta el extremo permitido por ley y consistente con dicha orden o sentencia.

22.18 **Pago en Finiquito.** Ningún pago por el Arrendatario, o el recibo del Arrendador de pago alguno por el Arrendatario, que sea menor a la cantidad estipulada para la Renta podrá ser considerado como otra cosa que no sea un abono a la cantidad de Renta adeudada, y ningún endoso o declaración hecha en un cheque, carta o cualquier comunicación acompañando un cheque o pago podrá tener el efecto de que dicho pago parcial constituya pago en finiquito de la Renta, teniendo el Arrendador el derecho de aceptar dicho cheque o pago sin perjuicio de su derecho de recobrar el balance adeudado de la Renta o solicitar cualquier otro remedio que tenga conforme a este Contrato o a la ley.

22.19 **Ley Aplicable.** Este Contrato se otorga, y sus términos y condiciones se interpretarán conforme a las leyes del Estado Libre Asociado de Puerto Rico.

22.20 **Jurisdicción y Competencia.** Las partes estipulan que cualquier acción, procedimiento, demanda, reconvención u otro tipo de acción judicial que cualquiera de las partes inicie contra la otra con relación a (i) cualquier asunto que surja de este Contrato, o de alguna forma relacionado con el mismo, (ii) la relación legal existente entre el Arrendador y el Arrendatario, (iii) el uso u ocupación de la Propiedad Arrendada por el Arrendatario, (iv) cualquier reclamación por daños, y (v) cualquier remedio estatutario, será radicado y litigado ante el Tribunal de Primera Instancia de Puerto Rico.

22.21 **Arrendamiento Neto.** Toda la Renta a ser pagada por el Arrendatario al Arrendador bajo este Contrato, deberá ser pagada al Arrendador, sin deducción, nivelación o compensación ("setoff")de tipo alguno, y todos y cualesquiera gastos incurridos con relación a la Propiedad Arrendada, o con relación a la operación del Arrendatario en la Propiedad Arrendada, incluyendo cualquier impuesto, contribución, patente municipal, cuota o derecho de licencia o permiso, prima de seguro, factura por servicio de electricidad, agua, gas, teléfono y otros similares, costos de reparación, mantenimiento y operación de la Propiedad Arrendada, junto con todo objeto incorporado, adherido, instalado o localizado en la Propiedad Arrendada, deberá ser pagado por el Arrendatario.

22.22 **Notificaciones.** Toda notificación, reclamación o comunicación entre las partes referente a o requerida en este Contrato deberá ser hecha por escrito y enviada por correo certificado con acuse de recibo a, o entregada personalmente en, las direcciones indicadas en las Secciones 1.02 y 1.04 de este Contrato. Cualquier cambio de dirección deberá ser notificado a la otra parte por escrito con no menos de treinta (30) días de antelación a la fecha en que dicho cambio entre en efecto.

22.23 **No Renuncia.** La omisión o decisión de una de las partes de no exigir el estricto cumplimiento de alguna de las disposiciones de este Contrato, no constituirá ni podrá ser interpretada como una renuncia o impedimento de dicha parte de requerir su cumplimiento en una ocasión futura de persistir dicho incumplimiento o si la otra parte vuelve a incumplir la misma obligación o condición posteriormente. El recibo o aceptación por el Arrendador del pago de la Renta Básica, la Renta Adicional o cualquier otra suma pagadera por el Arrendatario bajo este Contrato, con o sin conocimiento del incumplimiento del Arrendatario con alguna obligación o condición bajo este Contrato, no se considerará como un relevo por parte del Arrendador a favor del Arrendatario del cumplimiento de dicha obligación o condición o una renuncia de sus derechos o remedios bajo este Contrato con relación a dicho incumplimiento. El consentimiento o la aprobación concedida por el Arrendador para cualquier acto del

INICIALES



O.I.M.                                                                    **24**

Arrendatario que requiera dicho consentimiento o aprobación, se limitará única y exclusivamente al acto o evento con relación al cual se solicitó y se prestó dicho consentimiento o aprobación, por lo que no deberá entenderse como una renuncia al requisito de consentimiento o aprobación previa por el Arrendador para el mismo acto o evento en el futuro.

22.24 **Remedios Acumulativos.** Los derechos y remedios reconocidos a cada una de las partes en este Contrato son independientes, separados y acumulativos.   Ningún remedio, sea ejercido o no, podrá interpretarse o considerarse como que excluye o impide el ejercicio de cualquier otro remedio a disponibilidad de cualquiera de las partes bajo este Contrato o por disposición de ley o reglamento.

22.25 **Corredores.** Intencionalmente omitida.

22.26 **Incumplimiento Con Otros Contratos.** Si el Arrendatario incumple con otro Contrato que tenga con el Arrendador, dicho incumplimiento se considerará como un incumplimiento de este Contrato.

22.27 **Representaciones Expresas.** El Arrendatario expresamente reconoce que ni el Arrendador ni sus directores, oficiales, agentes, empleados o representantes le han hecho representación o promesa alguna con respecto a la Propiedad Arrendada, excepto por lo expresamente dispuesto en este Contrato.

22.28 **Estados Financieros.** Intencionalmente omitida

22.29 **Documentos Adicionales (N/A)**

22.30 **Responsabilidades Fiscales.   (N/A)**

22.31 **Certificación sobre Deudas.   (N/A)**

22.32 **Certificación Negativa de Conflicto de Intereses.** El Arrendatario certifica y garantiza al Arrendador que no existe conflicto de intereses, real o aparente, entre el Arrendador y alguno de los directores, oficiales, empleados y agentes del Arrendatario, ya sea por motivo de relaciones comerciales, laborales, económicas, de familia o por cualquier otra razón.   El Arrendatario por este medio se compromete, de así ser solicitado por el Arrendador en cualquier momento durante la vigencia de este Contrato, a obtener una declaración jurada de cualquiera de sus directores, oficiales, empleados y agentes certificando y confirmando la veracidad de lo anteriormente provisto.

**EN VIRTUD DE LO CUAL,** las partes suscriben este Contrato, en las fechas abajo indicadas.

**NOTA: Este arrendamiento se perfecciona entre dos (2) entidades gubernamentales, por lo que cualquier disposición contractual que no sea de aplicación a las entidades gubernamentales, se tendrá por no puesta.**

**Así mismo, cualquier disposición contractual relacionada con actividades de manufactura, se tendrá por no puesta.**

**ARRENDADOR:**                                            **ARRENDATARIO:**

**COMPAÑIA DE FOMENTO INDUSTRIAL**          **DEPARTAMENTO DE EDUCACIÓN**
**DE PUERTO RICO**                                       **DE PUERTO RICO**
**S.S.P.** ⬛⬛⬛⬛2871                                    **S.S.P.** ⬛⬛⬛⬛0533

Por:_____              Por:_____

Nombre:   Jorque A. Junquera _____       Nombre: Rafael Blanco La Torre _____

Título:_ Oficial Principal de Finanzas _____    Título: Sub-Secretario de Administración _

Fecha: _____              Fecha: _____

| INICIALES |
| --- |
|  |
|  |
|  |

ANEJO "K"

## Cláusulas Adicionales

Conforme a la Ley Núm. 161, toda actividad a desarrollarse, para la cual las agencias con jurisdicción sobre tal actividad requieran un permiso, el mismo se tramitará a través de la Oficina de Gerencia de Permisos, (OGPE). La referida entidad gubernamental se expresará en cuanto al cumplimiento ambiental, a tono con el Art. 4-b3 de la Ley Núm. 416, Ley Sobre Política Pública Ambiental. Una vez se obtengan los correspondientes permisos o endosos, el Arrendatario deberá enviar copia de los mismos al Arrendador, como evidencia de cumplimiento con el proceso ambiental correspondiente.

_____
Lcdo. Rafael Blanco La Torre Latorre
Sub-Secretario de Administración
Departamento de Educación de
Puerto Rico

_____
Jorge A. Junquera Amadeo
Principal Oficial de Finanzas
Compañía de Fomento Industrial de
Puerto Rico

| INICIALES |
|---|
|  |
|  |

O.I.M.

26

Estado Libre Asociado de Puerto Rico
Commonwealth of Puerto Rico
**OFICINA DEL CONTRALOR**
Office of the Comptroller
San Juan, Puerto Rico

# CERTIFICACIÓN
CERTIFICATION

SOBRE OTORGAMIENTO DE CONTRATO, ESCRITURA O DOCUMENTO RELACIONADO
REGARDING THE EXECUTION OF CONTRACTS, DEEDS AND OTHER RELATED DOCUMENTS

[1]Código de Entidad |3 |   |8 |0 |
Entity Code

[2]Número del Contrato |   |   |   |   |   |-|   |   |   |   |   |   |-|   |   |
Contract Number

[3]Fecha de Otorgamiento (dd/mm/aa) |   |   |-|   |   |-|   |   |
Date of execution (dd/mm/yy)

[4]Cuantía Total |   |   |   |   |,|   |   |   |   |,|   |   |   |.|   |   |
Total amount

[5]Código del Tipo de Contrato |/ |0 |
Contract Type Code

[6]Exento |7|
Exempt

[7]Orden (Aprobación o dispensa de algún organismo del Gobierno) _____
Authorization or waiver from another government entity

[8]Vigencia desde (dd/mm/aa) |0 |1 |-|0 |6 |-|   |   |   |     hasta (dd/mm/yy) |3 |1 |-|0 |5 |-|1 |2 |
Effective date from (dd/mm/yy)                                                to (dd/mm/yy)

[9]Seguro Social Personal o Patronal |~~   ~~|0 |5 |3 |3 | Social Security Number

[10] Contratista(s)   DEPARTAMENTO DE EDUCACION
Contractor

[11] Representante(s)de la(s) Entidad(es) Gubernamental(es) COMPAÑÍA DE FOMENTO INDUSTRIAL DE PUERTO RICO
Government Representative(s)

Se somete la presente certificación en cumplimiento con la Carta Circular promulgada por el Contralor de Puerto Rico y en cumplimiento con el Reglamento Núm. 33 Sobre Registro de Contratos, Escrituras y Documentos Relacionados y Envío de Copias a la Oficina del Contralor. (This certification is submitted in compliance with the instructions issued by the Comptroller of Puerto Rico and in accordance with Regulation No. 33, regarding the Registration of Contracts, Deeds and Other Related Documents and the Mailing of such Copies to the Comptroller's Office by the government entity.)

Los suscribientes certificamos haber otorgado hoy el contrato descrito en este documento.
The undersigned, certify having that the contract described in this document was executed on this date.

[12]En (ciudad) _____SAN JUAN_____, Puerto Rico, hoy (dd/mm/aa) |   |   |-|   |   |-|   |   |
In                                                               , Puerto Rico, today (dd/mm/yy)

[13]Firma(s) Contratista(s):                          [14]Firma(s) Funcionario(s) Gubernamental(es):
Signature of the Contractor(s):                       Signature of the Government Official(s):


Firma (Signature)                                     Firma (Signature)

Letra de molde (print)                                Letra de molde (print)

Firma (Signature)                                     Firma (Signature)

Letra de molde (print)                                Letra de molde (print)



*Vea instrucciones al dorso (See instructions on the reverse side of this form)



# Electronic Proof of Claim - 2-26-2018

Adobe Sign Document History                   05/24/2018

| | |
|---|---|
| Created: | 05/24/2018 |
| By: | Puerto Rico Claims (prclaims@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAKLXYXQ1LqthQhWh3wOsGY6IIdZwR0fC1 |

# "Electronic Proof of Claim - 2-26-2018" History

Widget created by Puerto Rico Claims (prclaims@primeclerk.com)
05/24/2018 - 4:16:44 PM EDT

Anabelle Centeno Berríos (anabelle.centeno@pridco.pr.gov) uploaded the following supporting documents:
Attachment
05/24/2018 - 4:34:40 PM EDT

Widget filled in by Anabelle Centeno Berríos (anabelle.centeno@pridco.pr.gov)
05/24/2018 - 4:34:40 PM EDT- IP address: 64.185.195.135

(User email address provided through API 2-26-2018, User-Agent: Mozilla/5.0 (Windows NT 6.1; WOW64; Trident/7.0; rv:11.0) like Gecko)
05/24/2018 - 4:34:42 PM EDT- IP address: 64.185.195.135

Signed document emailed to Anabelle Centeno Berríos (anabelle.centeno@pridco.pr.gov) and Puerto Rico Claims (prclaims@primeclerk.com)
05/24/2018 - 4:34:42 PM EDT