# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>**AS REPRESENTATIVE OF**<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>Debtors[1] | PROMESA<br><br>Title III<br><br>Case No. 17BK3283 (LTS) |

### OBJECTION OF MED CENTRO, INC. FORMERLY CONSEJO SALUD DE LA COMUNIDAD DE LA PLAYA DE PONCE, INC. TO "SEVENTH AMENDED TITLE III JOINT PAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET. AL."

By counsel, Med Centro, Inc., formerly Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. ("Med Centro"), a creditor of the Commonwealth of Puerto Rico (the "Commonwealth") in the Commonwealth's Title III proceedings under the Puerto Rico Management and Stability Act ("PROMESA"), filed by the Financial Oversight and Management Board of Puerto Rico (the "Oversight Board") on May 3, 2017, and states as follows for its objection to the Commonwealth's Seventh Amended Title III Joint Plan of Adjustment filed on July 30, 2021 (the "Plan") under PROMESA and the Bankruptcy Code provisions incorporated

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

thereby [**ECF No. 17627**], since the treatment of Med Centro's claim is not dealt with under the Plan or is otherwise improperly dealt with thereunder.

## I. INTRODUCTION

1. Beginning in 2003 federally qualified health centers ("FHQC") in Puerto Rico have taken their claims for supplemental payments owed thereto under the Medicaid program to the federal courts. Several FQHCs joined as co-plaintiffs and their claims were filed in the cases styled *Rio Grande Community Health Center, Inc., et. al. v. Commonwealth of Puerto Rico, et. al.,* 03-cv-1640 (GAG); *Gurabo Community Health Center, Inc. et. al. v. Secretary of Health,* 06-cv-1524 (GAG); and *Atlantic Medical Center, Inc. v. Commonwealth of Puerto Rico*, 06-cv-1291 (GAG).

2. Med Centro did not to join the other FQHCs in those cases and filed its claim in Case No. 06-1260 with the United States District Court for the District of Puerto Rico (the "District Court").

3. The cases proceeded along discrete tracks until the District Court consolidated them during February 2009 in Case No. 06-1260 and named Med Centro as the lead plaintiff. (**Docket No. 191** in Case No. 06-1260).

4. The First Circuit has issued at least nine opinions addressing the Commonwealth's failure to meet its statutorily required payments to the FQHCs. See: *Rio Grande Community Health Center, Inc. v. Rulla*n, 397 F.3d 56 (1st Cir. 2005); *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33 (1st Cir. 2006); *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 488 F.3d 11 (1st Cir. 2007); *Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10 (1st Cir. 2008); *Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 625 F.3d 15 (1st Cir. 2010); *Consejo de Salud v. Gonzalez-Feliciano*, 695 F.3d 83 (1st Cir. 2012); *Rio Grande Community Health Center, Inc. v. Armendariz*, 792 F.3d 229, n. 1 (1st Cir. 2015); *Municipality of San Juan v. Migrant Health Ctr., Inc.*, 919 F.3d 565 (1st Cir. 2019).

5. Prior to the filing of the Commonwealth's Title III proceedings by the Oversight Board, Med Centro, then Consejo de Salud de la Comunidad de la Playa de Ponce, on October 26, 2011, entered into a Confidential Settlement Agreement (the "Settlement Agreement") with the Commonwealth in Case No. 06-01260 (GAG) before the District Court. The Settlement Agreement was approved by the District Court on that same date (**Docket No. 987** in Case No. 06-01260), who entered judgment consistent therewith on October 7, 2011 (the "Judgment") (**Docket No. 989** in Case No. 06-1260).

6. The District Court retained enforcement jurisdiction for an original term of four (4) years. (**Docket No. 990** in Case No. 06-1260). Med Centro was the only FQHC to settle its claims with the Commonwealth, all others continued with their litigation. Therefore, Med Centro's claim against the Commonwealth is separate and distinct from other FQHC or Med Centers.

7. Noting the Commonwealth's continued non-compliance with the Settlement Agreement and federal law[2], on February 12, 2015, the District Court extended its enforcement jurisdiction for a term of five (5) additional years until October 7, 2020, indicating that this "term may be again extended" (**Docket No. 1281** in Case No. 06-1260), as it has.

8. On April 28, 2015, the District Court ordered the severance of cases 03-1640(GAG), 06-1524(GAG) and 06-1291(GAG) from Case No. 06-1260 noting that, as to Med Centro, it "retained its enforcement jurisdiction until October 7, 2020, and that the issues that arise as to Med Centro are unique to it, and pertain to non-compliance with the settlement, <u>as well as any collateral, related</u>

---

[2] In denying without prejudice Med Centro's petition to hold the Secretary of Health in contempt, the District Court ordered the immediate payment of all amounts owed stating that the "Court does not want to hear any excuses for non-compliance and expects the Commonwealth to comply with its obligation as per the terms of the settlement which it freely negotiated. The court further advances that it is contemplating its enforcement jurisdiction, given the pattern of delayed payments. To this effect, Med Centro is invited to file the corresponding motion." (Italics added.) (**Docket No. 1272** in Case No. 06-01260).

The Commonwealth did not comply with the District Court mandated deadline and sought an extension of time. The District Court denied the Commonwealth's request and added the following: "The Commonwealth has been on notice of the payments due and its unflagging obligation to comply with federal law. The Court also advances that it has no choice but to extend its enforcement jurisdiction." (**Docket No. 1278** in Case No. 06-01260).

issues that on occasion arise." (Underlined for emphasis.) (**Docket No. 1294** in Case No. 06-01260).

9. The Settlement Agreement and the Judgment refer to Med Centro's claim for Wraparound Payments under Title XIX of the Social Security Act, 42 U.S.C. § 1396 et. seq. (the "Medicaid Statute"). As an FQHC, Med Centro is entitled to reimbursement for services provided to Medicaid patients. 42 U.S.C. §1396a(bb)(1). Reimbursement payments owed by a participating State to FQHCs are assessed through statutorily-set calculations established by Medicaid, commonly known as Wraparound Payments, including a prospective payment system ("PPS") to adjust the preliminary payments to the FHQC. *Gonzalez-Feliciano*, 695 F.3d at 87. "[U]nder the PPS, the reimbursement for a given year is calculated by multiplying the number of visits by Medicaid patients to [an] FQHC in that year by the average cost per patient visit in fiscal years 1999 and 2000, adjusting to account for an FQHC's change in services **and** inflation." *Perez-Perdomo*, 625 F.3d at 17 (citing 42 U.S.C. §1396a(bb)(3)). (Underlined for emphasis.) The Wraparound Payments make up for the difference between what the managed care organization (the "MCO") pays the FHQC and what the FHQC is entitled to receive under the Medicaid Statute Act.

10. On May 1, 2019 Med Centro filed a motion for contempt with the District Court against the Secretary of Health for the Commonwealth for his failure to make the preliminary Wraparound Payment for the first quarter of 2019 as required by the Settlement Agreement the Judgment (**Docket No. 1413**).

11. The next day the District Court issued an order to show cause stating:

> Defendant [the Commonwealth] shall show cause … as to why plaintiff's [Med Centro's] motion should not be granted, and in the alternative, the court should not order any other remedy, such as a garnishment. If relying on PROMESA, defendant [the Commonwealth] must explain why up to present it has continued to make wraparound payments under the settlement agreement up to recently, even almost two years after PROMESA was enacted, and now has opted not to. In, turn, defendant [the Commonwealth] shall

4

explain why now it has taken a different posture, more so when the health and well-being of plaintiff's [Med Centro's] patients is at stake. Likewise, defendant [the Commonwealth] has paid other 330 centers. (**Docket No. 1415** in Case No. 06-1260)

12. After several procedural incidents, Med Centro and the Commonwealth agreed to file a Joint Notice to Seek Relief from the Automatic Stay in the captioned case (the "Stipulation") (**Docket No. 1434** in Case No. 06-1260) (**Exhibit A** hereto). Therein the Commonwealth agreed to the modification of the automatic stay "solely to the limited extent necessary to allow the Commonwealth to continue to issue the prospective quarterly Wraparound Payments … to Movant [Med Centro] pursuant to the Settlement Agreement <u>in the same manner the distributions have been made up to the fourth quarter of 2018… .</u>" (the "First Relief From Stay").

13. The Commonwealth's commitment to make future Wraparound Payments "in the same manner" as before meant that the Commonwealth would make preliminary payments pursuant to Section III(C)(1) of the Settlement Agreement based on the average of the two previous quarters. (**Docket No. 987-1** in Case No. 06-1260, p. 10)

14. The Settlement Agreement requires the Commonwealth to make reconciled payments within sixty (60) after issuing the preliminary quarterly payment. The reconciled payments are to calculate the total wraparound amount Med Centro is owed by inserting actual data into the statutorily-established calculations by Medicaid's Wraparound Payments and codified at 42 U.S.C. §1396a(bb)(5). In particular: Medicaid billable visits and a current PPS rate that takes into account inflation and changes in scope. (Docket No. 987-1, p. 10)

15. The *reconciled* payment bridges the gap between the *preliminary* payment and what Med Centro is entitled to receive under the PPS. The preliminary payment is just that – preliminary.

16. The Commonwealth has not issued a reconciled payment since the first quarter 2018, only issuing quarterly *preliminary* payments the same every quarter calculated as the average of the two previous equal payments –in violation of 42 U.S.C. §1396a(bb)(3) since they are not based on

5

actual Medicaid visits nor do they account for inflation and changes in the scope of services provided by Med Centro.

17. The Commonwealth's failure to *fully* compensate Med Centro magnifies and perpetuates the gap between what Med Centro receives and what it is entitled to receive. Med Centro estimates that, on the average, the Commonwealth has failed to compensate Med Centro for services rendered to Puerto Rico's Medicaid patients in an amount exceeding $1,200,000 per quarter since the first quarter of 2018.

18. Consequently, on July 23, 2020, Med Centro filed a motion for relief from the automatic stay with this Court in the captioned case (the "Second Relief From Stay") (**ECF No. 13748**) in order to proceed with Case No. 06-1260 and (1) seek the enforcement of the Settlement Agreement; (2) compliance with the Wraparound Payments provisions included in Medicaid Statute at 42 U.S.C. § 1396(a)(b)(b)(3) from the first quarter of 2018 onwards; and (3) for the District Court to extend its enforcement jurisdiction of the Settlement Agreement beyond October 7, 2020.

19. On September 17, 2020, this Court entered an order as to Med Centro's Second Relief From Stay at **ECF No. 14330** granting the same and lifting the automatic stay to the extent that Med Centro could:

   a) Apply for an extension of the enforcement jurisdiction of the District Court over the parties' Settlement Agreement (Docket Entry No. 987-2 in Case No. 06-1260 (GAG), without prejudice to the parties' respective positions as to whether such extension should be granted; and

   b) Invoke and pursue the dispute resolution process set forth in section III.D of the Settlement Agreement, provided that the stay would remain in place with respect to the execution and enforcement of any decision rendered through that process under paragraph 6 of the Eleventh Omnibus Order Granting Relief from the Automatic Stay (Docket Entry No. 8499).

20. On October 6, 2020, Med Centro filed an urgent motion for the District Court to expand

6

its jurisdiction over the Settlement Agreement and for leave to Med Centro to pursue the dispute resolution process of the Settlement Agreement for one year (**Docket No. 1441** in Case No. 06-1260), granted by the District Court on that same date (**Docket No. 1442** in Case No. 06-0612). On April 7, 2021, the District Court again extended its enforcement jurisdiction until October 6, 2024 (**Docket No. 1460** in Case No. 06-1260).

21. At present, the Commonwealth and Med Centro are pursuing the dispute resolution process provided for in the Settlement Agreement before the Special Master appointed in Case No. 06-1260 in reference to Med Centro's request for *reconciled* Wraparound Payments since January 1, 2018. The Special Master has scheduled an evidentiary hearing for November 29 – December 10, 2021.

22. Notwithstanding the preceding sequence of events, and in total disregard thereof, the Oversight Board has included Med Centro in the Plan, within the definition of Med Centers and under the Med Centers Class 56. While the Plan includes Med Centro is in Article IX, Med Centro it is not included in Exhibit H thereto as a recipient of distribution under the Plan, and improperly provides that Case No. 06-1260 is to be dismissed.

## II.   ARGUMENT

23. The dispute resolution process currently underway in Case No. 06-1260 doesn't involve any pre-petition claims by Med Centro against the Commonwealth, but a request for *post-petition reconciled* Wraparound Payments for services rendered from January 1, 2018 onwards pursuant to 42 U.S.C. § 139(a)(bb)(3), as authorized by this Court in the Second Relief From Stay, which to date constitutes an unliquidated post-petition claim not subject to the automatic stay.

24. In the Plan, the Commonwealth contradicts and intends to trump the remedies granted by this Court to Med Centro, including the dispute resolution process provided for in the Settlement Agreement approved by the District Court, which as indicated above is in process in Case No. 06-

7

Case:17-03283-LTS Doc#:18538 Filed:10/18/21 Entered:10/18/21 15:39:48 Desc: Main
Document Page 8 of 9

1260.

25. The remedies granted by this Court regarding the First and Second Motions for Relief From Stay constitute the law of the case regarding Med Centro's post-petition claim against the Commonwealth in Case No. 06-1260 and can't be contradicted or disregarded by the Plan or ignored by the Commonwealth, particularly when Med Centro's acquired rights thereunder refer to a post-petition period not covered by the stay provisions of Section 362(a).

26. As held in *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988), the law of the case doctrine expresses the practice of courts generally to refuse to reopen what has been decided. While a court has the power to revisit prior decisions of its own or of a coordinate court in any circumstances, as a rule court should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice, which is not the situation here. See *Arizona v. California*, 460 U.S. 605 (1983)

27. The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in the case in subsequent stages. *Harlow v. Children's Hosp.*, 432 F.3d 50 (1st Cir. 2005); *Musacchio v. United States*, 136 S. Ct. 709 (2016); *United States v. Wallace*, 573 F.3d 82 (1st Cir. 2009); *United States v. Almonte-Núñez*, 963 F.3d 58 (1st Cir. 2020). Finally, orders that are not appealed become the law of the case. *In re McGrahan*, 448 B.R. 611 (1st Cir. BAP 2011).

28. Moreover, the Plan can't affect Med Centro's right to continue to prosecute Case No. 06-1260 until its conclusion, as authorized by this Court, underscoring that Med Centro's t claim refers to post-petition periods not subject to the stay provisions of Section 362(a).

29. Med Centro has unsuccessfully attempted twice to resolve the aforesaid contradictory deficiency of the Plan with the representatives of the Oversight Board and the Commonwealth.

30. Med Centro submits that for the aforesaid reasons the Plan is unconfirmable unless

8

amended accordingly and therefor objects thereto.

## III. CONCLUSION

31. Med Centro should be excluded from the Plan's definition of Med Centers, Class 56 and Article IX, and the Plan provision dismissing Case No. 06-1260 excised.

**WHEREFORE**, Med Centro objects to the Plan as currently drafted.

**CERTIFICATE OF SERVICE:** We hereby certify that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing and to all CM/ECF participants.

San Juan, Puerto Rico, this 18th day of October 2021

| | |
|---|---|
| *s*/**Ignacio Fernández de Lahongrais**<br>Ignacio Fernández de Lahongrais<br>USDC - PR 211603<br>Bufete Fernández & Alcaraz CSP<br>Capital Center Sur, Suite 202<br>Avenida Arterial Hostos #239<br>San Juan, Puerto Rico 00918-1475<br>Tel. 787-923-5789<br>ignacio@bufetefernandezalcaraz.com | *s*/**Charles A. Cuprill Hernández**<br>**USDC-PR 114312**<br>Charles A. Cuprill, P.S.C. Law Offices<br>356 Fortaleza Street, Second Floor<br>San Juan, PR 00901<br>Tel: 787-977-0515<br>Fax: 787-977-0518<br>E-mail: ccuprill@cuprill.com |