# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re* <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br>   as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, *et al.*, <br><br> Debtors. | PROMESA <br> Title III <br><br> Case No. 17-BK-3283 (LTS) |

### LEGAL BRIEF OF THE "ASOCIACIÓN DE JUBILADOS DE LA JUDICATURA DE PUERTO RICO" ("AJJPR") AND HON. HECTOR URGELL CUEBAS, FORMER JUDGE OF THE PUERTO RICO COURT OF APPEALS AND PARTICIPANT OF THE JUDICIAL RETIREMENT SYSTEM IN SUPPORT OF MOTION TO SUBMIT OBJECTIONS TO THE MODIFICATION TO THE JUDICIAL RETIREMENT SYSTEM PROPOSED BY FOMB'S PLAN OF ADJUSTMENT AND DISCLOSURE STATEMENT

**TO THE HONORABLE COURT:**

COME NOW, the "Asociación de Jubilados de la Judicatura de Puerto Rico" ("AJJPR") and Hon. Hector Urgell Cuebas, Former Judge of the Puerto Rico Court of Appeals and Participant of the Judicial Retirement System, and very respectfully allege and pray as follows.

1.      The AJJPR's fundamental purpose is to represent the interest of the over 400 retired members of the Puerto Rico judiciary.  When compared to the other pensioners, the retired judges represent a negligible portion of all pensioners.  It is the only entity representing Puerto Rico's retired judges only.  And it is the only entity authorized by law to represent the retired judges.

2.      The Hon. Hector Urgell Cuebas is a Former Judge of the Puerto Rico Court of Appeals. Is now retired and is a participant of the Judicial Retirement System.  As such, it is a party with interest in this matter for the proposed modifications to the Judicial Retirement System directly impact his retirement vested rights.

3. On July 30th, 2021, the Financial Oversight and Management Board ("FOMB") filed the Plan of Adjustment and Disclosure Statement, including reform measures that with impact the Judicial Retirement System.

4. The appearing parties object to several of the proposed reform measures because they run counter to their vested rights. In specific the following modifications are objected: reduction of vested pension payments; elimination of Cost of Living Adjustment ("COLA"); elimination of bonuses (i.e. Christmas, Summer and Medicine Bonus); and other benefits.

5. In short, AJJPR's and Judge Urgel Cuebas's position is that, because the retired judges' interest in receiving benefits under Puerto Rico's public pension plan should be considered a property right, it cannot be altered by a federal bankruptcy court.

6. The bankruptcy court may modify public pension plans in two different ways: As executory contracts or through so-called cramdown provisions. But only executory contracts are subject to assumption or rejection. Although the term "executory contract" goes undefined, most courts have adopted the so-called Countryman standard. See, e.g., In re La Electronica, Inc., 995 F.2d 320, 323 (1st Cir. 1993). Under this standard, courts determine whether a contract is executory by asking whether performance is due from both parties. Stevens v. CSA, Inc., 271 B.R. 410, 413 (D.Mass. 2001) (quoting Verne Countryman, Executory Contracts in Bankruptcy; Part I, 57 Minn. L.Rev. 439, 460 (1973)). So viewed, the pension contracts of current employees—including the active judges—should fall within the scope of this definition. This is because performance is still due from current employees. After all, that current employees must continue to work and contribute to the plans, and the Commonwealth/Debtor must continue to pay them, and, for

2

those non-PayGo schemes, contribute to the plans. In short, then, contractual pension plans between current employees and the Commonwealth of Puerto Rico may end up being assumed or rejected. None of these alternatives are present here.

7. But, as relevant to the contractual pension plans between retirees—including the retired judges—and the Commonwealth are not subject to assumption or rejection. This is because those plans are not executory contracts. Certainly, performance is still due from the Commonwealth. Nevertheless, a retiree neither works for the Commonwealth nor funds the pension.

8. The Constitution of Puerto Rico and state law—here, Puerto Rico law—defines the nature of the interest and the protections available to a retiree in a public-pension plan. And the appearing parties submit that a retired judges' interest in receiving benefits under a public pension plan is a property right under the Constitution of Puerto Rico. See Brau, Linares v. ELA, 190 D.P.R. 315 [90 PR Official Trans. 24] (2014). No other pensioner has a similarly protected right under the Puerto Rico Constitution. And this should come as no surprise, given the enormous responsibility that judges have, which is enshrined in the federally recognized principle of judicial independence.

9. Indeed, several States have construed this interest as a property right because, as here, the applicable provisions lack language explicitly granting public employees a contractual right to pension benefits. Amy Monahan, Public Pension Plan Reform: The Legal Framework, 5 Educ. Fin. & Pol'y 617, 634 n. 27 (2010). Thus, because the New Mexico legislature did not expressly confer a contractual right to retirees, its Supreme Court found a "statutorily created property interest in receiving benefits" from its public pension. Pierce v. State, 910 P.2d 288, 299 (N.M.

1995). And the Connecticut Supreme Court has similarly held that the "statutory pension scheme establishes a property interest on behalf of all state employees in the existing retirement fund." Pineman v. Oechslin, 488 A.2d 803, 810, 195 Conn. 405, 416 (Conn. 1985). It did so because the text was silent about whether the interest was a contractual right.

10. In sum, in the absence of clear language granting public employees a contractual right to pension benefits, the modern trend among the States is to hold that the interest amounted to a property right or is otherwise protected by the Contracts Clause of the Constitution—imbued by the concomitant harm to the principle of judicial independence. See Leigh Anenson, Alex Slabaugh, Karen Eilers Lahey, Reforming Public Pensions, 33 Yale L. & Pol'y Rev. 1, 17 & 71 (2014) (noting that the "overwhelming majority of states, however, have transformed tradition and retreated from the notion of pensions as unprotected gratuities and adopted a modern view that is more protective of the retirement security of public employees").

11. The same should hold true here, where the Puerto Rico Constitution explicitly requires the establishment of a pension plan for judges. If more were needed, the vitality of judicial independence is at play here. The Puerto Rico judge's pension plan is required by Art. V of the Puerto Rico Constitution. Indeed, it is the only one required by the Puerto Rico Constitution. The Supreme Court of Puerto Rico has also recognized that a judge's right to a pension is a protected right that cannot be affected in a retroactive manner. See Brau, Linares v. ELA, supra.

12. So viewed, such a property right should be unalterable by the bankruptcy court. See, <u>Butner v. United States</u>, 440 U.S. 48 (1979) in which the Supreme Court held that property issues in bankruptcy are determined according to state law, compels this conclusion. See <u>Soto-Rios v. Banco Pop. de Puerto Rico</u>, 662 F.3d 112, 117 (1st Cir. 2011). And because the retired judges' interest in receiving pension benefits should be considered a property right, the appearing parties respectfully submit that the bankruptcy court should be required to respect that right. Indeed, Judge Rhodes in Detroit implied as much. See <u>In re City of Detroit</u>, 504 B.R. 97, 153 (Bankr. E.D. Mich. 2013). And Judge Rhodes also said that when (as in the case of the retired judges), pensions are in a preferential matter by a state constitution, that particularity "should lower the reasonable expectations of the other unsecured creditors in the case." <u>In re City of Detroit</u>, 524 B.R. 147, 257 (Bkrtcy. E.D. Mich. 2014). To be sure, though, this is a novel question. It appears that no bankruptcy court has dealt with a case in which a debtor seeks to modify a public pension plan when pensioners' interests plan is considered a property right.

13. Finally, it need not matter if the plan is unfunded. This is because the right extends to the full payment under the plan; it is not limited to the assets comprising it. Indeed, in <u>Ass'n of State Prosecutors v. Milwaukee County</u>, the Supreme Court of Wisconsin held that it was irrelevant whether the employee received benefits from an individual account or from a general pool of assets shared by other employees, because the retirees had "property interests in their retirement system" as a whole. 544 N.W.2d 888, 892 (Wis. 1996). And the Supreme Court of New Mexico in <u>Pierce v. State</u> stressed that retirees had a "statutorily

5

created property interest in receiving benefits." 910 P.2d 288, 299 (N.M. 1995). It also held that the New Mexico public pension system created "an expectancy" or property interest in receiving benefits." Id. Note that this line of cases has emphasized that the right was limited not to the funds contained within the plan, but to the right to receive payment of the promised pensions.

14. Because their interest in their pensions is a property right, the retired judges have a right to get the full amount of their promised pension payments. Their right is to payment under the plans, as opposed to being limited to the tangible assets funding the plans.

15. As we have seen, the Constitution of Puerto Rico requires the Legislative Assembly to establish a retirement system for judges. PR Const. Art. V, Section 10.

16. The Constitution of Puerto Rico was approved by Congress. Pub. L. No. 81-600, 64 Stat. 319 (1950) ("Law 600") Law 600 on its face specifies that the Constitutes of Puerto Rico "Shall provide a republic form of government". 42 U.S.C. Section 731c.

17. The Constitution of Puerto Rico was duly submitted to the President and Congress, Pub. L. No. 82-447, 66 Stat. 327 (1952).

18. Congress approved the proposed constitution conditioned to minor revisions to provisions addressing compulsory school attendance; the process for constitutional amendments, and the elimination of Section 20, recognizing a number of then novel human rights. See, Pub. L. No. 82-487, 66 Stat. 327.

19. Thus, the pension rights of judges unlike those pension rights any other public officials in Puerto Rico stem from a constitutional provision in turn approved by the President and Congress.

20. The pension rights of judges is not a matter of privileged but part and parcel of the concept of judicial independence Brau, Linares v. Commonwealth, et al, supra.

21. A long judicial career serves well the judicial system.

22. Attraction of talented, well prepared and experienced professionals is essential to a competent and reliable courts system. The promises and protections provided by the constitution served a purpose, to attract or entice what would become the now retired judiciary, that was made up of talented prepared and experience professionals. This is indispensable to maintaining a judicial branch of excellence to dispense justice to all.

23. As recognized in Choi, Gulati & Posner, "The Law and Policy of Judicial Retirement: An Empirical Study", University of Chicago. The Law School, Institute for Law & Economics Olin Research Paper No. 550, at pag. 38: "Judges respond to incentives, including financial incentives, just like everyone else. The empirical evidence of their response to this incentives created by the retirement systems confirms the claim". The Constitution of Puerto Rico mindful of said reality expressly mandated a judicial retirement system.

24. The modification to the Judicial Retirement System objected by the appearing parties would be detrimental to be judicial branch and would run counter to preserving an independent and competent judicial branch, so needed to guarantee uninhibited access to justice for the people of Puerto Rico.

25. As represented in the Federalist No. 78 the judicial branch lacks influence over neither the sword nor the pursue. Lacking neither force nor will, but merely judgment. For said reason the courts are entrusted to serve as an intermediate between the people and the government and as such its importance cannot be undercut. See also, A. Bickel, The Least Dangerous Branch (1962).

26. Preserving the integrity of the Judicial Retirement System insulated the judicial branch from any external influence.

27. Bottom line, whatever minimal economic impact the proposed modifications to the Judicial Retirement System are heavily outweighed by the importance of maintaining an independent, effective and competent judicial branch.

28. In short, we move the Court not to approve the following modifications to the Judicature Retirement System as proposed by the FOMB, to wit: reduction of vested pension payments; elimination of Cost of Living Adjustment ("COLA"); elimination of bonuses (i.e. Christmas, Summer and Medicine Bonus); and other benefits.

Wherefore me hereby move this Court not to approve the modifications to the Judicial Retirement System as proposed by the FOMB's Plan of Adjustment and Disclosure Statement.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 18th day of October 2021.

WE HEREBY CERTIFY that on this same date we notified a copy of this document be electronically notified through CM/ECF to all attorneys of record.

S/Enrique J. Mendoza Méndez
Enrique J. Mendoza Méndez
USDC-PR 202804

*MENDOZA LAW OFFICES*
P.O. Box 9282
San Juan, P.R. 00908-0282
Tel. (787) 722-5522; 722-5530; 722-5540
Fax. (787) 723-7057
E-mail: mendozalo@yahoo.com