# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>   Debtors.[1] | PROMESA<br><br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered)<br><br><br>Re: ECF No. 17627, 18394, 18447 |

## QUEST DIAGNOSTICS OF PUERTO RICO, INC.'S OMNIBUS OBJECTION TO (I) SEVENTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, *ET AL*. AND (II) NOTICE OF FILING OF PROPOSED ORDER CONFIRMING SEVENTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, *ET AL*.

In accordance with the *Amended Order Establishing Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. 18394], Quest Diagnostics of Puerto Rico, Inc. ("Quest"), by and through undersigned counsel, pursuant to section 314(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), hereby submits this omnibus objection (this "Objection") to the (i) *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. [ECF No.

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780- LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

17627] (the "Plan")[2] and (ii) *Notice of Filing of Proposed Order and Judgment Confirming Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 18447] (the "Initial Proposed Confirmation Order"). In support of this Objection, Quest respectfully states as follows:

## PRELIMINARY STATEMENT[3]

1. Quest is a named defendant in the Adversary Proceeding whereby the Special Claims Committee and the Committee seek to avoid and recover from Quest allegedly fraudulent transfers under the Bankruptcy Code and Puerto Rico law and to disallow Quest's related claims. While Quest does not generally oppose confirmation of a plan that maximizes recovery for creditors, the Plan and Initial Proposed Confirmation Order purport to eliminate certain of Quest's rights, remedies and defenses in the Adversary Proceeding—as well as the rights, remedies and defenses of other defendants in the vendor avoidance actions—through the inclusion of non-consensual third-party releases. Accordingly, Quest respectfully submits that the Court should deny confirmation absent modification of the Plan and Initial Proposed Confirmation Order consistent with this Objection.

## BACKGROUND

**A. The Adversary Proceeding**

2. As relevant here, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") initiated a Title III debt adjustment proceeding on behalf of the Commonwealth of Puerto Rico (the "Commonwealth") on May 3, 2017 (the "Petition Date").

---

[2] Capitalized terms used but not otherwise defined in this Objection shall have the meanings ascribed to them in the Plan.

[3] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them in the body of this Objection.

2

3. On October 23, 2019, (i) the Special Claims Committee (the "Special Claims Committee") of the Oversight Board, acting by and through its members, as representative of the Commonwealth, and (ii) the Official Committee of Unsecured Creditors of all Title III Debtors (except COFINA) (the "Committee") filed a complaint [Case No. 19-00440-LTS, ECF No. 1] (the "Complaint") commencing an adversary proceeding (the "Adversary Proceeding") against Quest.

4. Through the Complaint, the Special Claims Committee and the Committee seek to avoid and recover transfers totaling $4,695,037 (the alleged "Transfers") that the Commonwealth made to Quest on account of services provided within the two or four year period prior to the Petition Date. The Complaint asserts five causes of action against Quest: (i) return of purportedly unlawful disbursements pursuant to 2 PR Laws Ann. § 97 and 3 PR Laws Ann. § 283h ("Count I"); (ii) avoidance of allegedly constructive fraudulent transfers pursuant to section 548(a)(1)(B) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") ("Count II"); (iii) rescission of transfers pursuant to 31 PR Laws Ann. §§ 3491-3500 and section 544 of the Bankruptcy Code ("Count III"); (iv) recovery of avoided transfers pursuant to section 550 of the Bankruptcy Code ("Count IV"); and (iv) disallowance of all claims pursuant to section 502(d) and (j) of the Bankruptcy Code ("Count V").

5. Quest has not yet answered or otherwise formally responded to the Complaint because the Adversary Proceeding, like the other vendor avoidance actions, is subject to an informal resolution process. In accordance therewith, Quest has engaged with the Special Claims Committee and the Committee, and has identified certain deficiencies of the Complaint and presented certain defenses to liability.[4] Specifically, in connection with Count I, whereby the

---

[4] By not describing a defense herein, Quest does not waive, but explicitly preserves, such defense and all other substantive rights and defenses in the Adversary Proceeding.

3

Special Claims Committee and the Committee assert that the contract between Quest and the Commonwealth was null and void based on an alleged failure to comply with 2 PR Laws Ann. § 97, Quest contends that Puerto Rico law requires both parties to a null and void contract to return the benefits of the contract. Thus, even assuming that the Special Claims Committee and the Committee can make a *prima facie* showing of entitlement to relief, Quest would be entitled to recoupment or setoff of payment for the value of the services it provided to the Commonwealth if Quest was required to return the value of Transfers to the Commonwealth.

6. On July 30, 2021, the Oversight Board proposed the operative Plan.

7. On October 8, 2021, the Oversight Board filed the Initial Proposed Confirmation Order.

8. On August 26, 2021, upon the motion of the Oversight Committee [ECF No. 17717], the United States District Court for the District of Puerto Rico (the "Court") entered an order staying certain vendor avoidance actions, including the Adversary Proceeding, "until thirty (30) days following the Effective Date of the Plan, if the Plan is confirmed, or thirty (30) days following entry of a final, non-appealable order denying confirmation of the Plan" [ECF No. 17977] (the "Stay Order").

9. As further described below, the Plan and Initial Proposed Confirmation Order contain certain provisions that, whether or not intended, could eliminate Quest's rights, remedies and defenses in the Adversary Proceeding and thereby prejudice Quest in connection with its answer or response to the Complaint upon expiration of the Stay Order, if the informal resolution process is ultimately unsuccessful.

**B.     The Plan and Initial Proposed Confirmation Order**

10.     The Plan broadly defines "Releasing Parties" to include "all holders of Claims against the Debtors or their Assets." Plan § 1.426. "Claims" is broadly defined to include, among other things, Causes of Action. *Id.* § 1.135. "Causes of Action" include, among other things, claims, actions, causes of action, rights to payment, damages, remedies, rights of set-off, third-party claims, indemnity claims, counterclaims, and cross claims, "whether asserted or unasserted as of the Effective Date." *Id.* § 1.125.

11.     If the Plan is confirmed, Quest could be deemed to grant broad releases of all Claims and Causes of Action against the Released Parties[5]—including, as relevant here, the Debtors, the Reorganized Debtors, the Oversight Board, the Special Claims Committee, and the Committee. *See id.* § 92.2(a) (providing for the "settlement, discharge and release of, all Claims or Causes of Action against the Released Parties that arose, in whole or in part, prior to the Effective Date. . . ."); Initial Proposed Confirmation Order ¶ 49(a) ("[A]ll distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Released Parties that arose, in whole or in part, prior to the Effective Date[.]").

12.     This would include a complete release of Quest's potential counterclaims in the Adversary Proceeding based on the Debtors' conduct that arose prior to the Effective Date. *See* Plan § 92.2(a); *id.* § 92.9 (enjoining every Entity from "instituting, prosecuting, pursuing or litigating all Claims, demands, rights, liabilities . . . against any of the Released Parties, based

---

[5]     Plan § 1.425 (broadly defining "Released Parties"); *id.* § 1.275 (defining "Government Parties," as contemplated by the foregoing definition of "Released Parties").

5

upon, related to, or arising out of or in connection with any of the Released Claims"[6]); *id.* § 92.11 (prohibiting any action against any of the Released Parties with respect to any Released Claims "for the purpose of *directly or indirectly* collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the Effective Date") (emphasis added); Initial Proposed Confirmation Order ¶ 52 ("[A]ll Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 92.2 of the Plan or who have held, hold or may hold Claims or any other debt or liability discharged or released pursuant to Section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property. . . .").

13. These provisions would also strip Quest of its right to assert claims that are permitted by section 502(h) of the Bankruptcy Code, which is triggered upon the return of a fraudulent conveyance to the bankruptcy estate—even if Count V of the Complaint fails. Plan § 92.2(a) ("Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all . . . Claims of the kind specified in *section[] . . . 502(h) of the Bankruptcy Code*, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder of a Claim based upon such debt voted to accept the Plan.") (emphasis added).

---

[6] Plan § 1.424(b) (defining "Released Claims" to include "Claims and Causes of Action that arise in, are related to or have been or could have been asserted against the Debtors or their Assets in the Title III Cases.").

6

14. The Plan and Initial Proposed Confirmation Order are also unclear as to whether Quest's rights of setoff and recoupment are preserved. On the one hand, certain provisions purport to expressly preserve setoff and recoupment rights by carving out such rights from the "Injunction on Claims." *See* Plan § 92.3(d) (enjoining the assertion of Released Claims "(d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment"); *see also id.* § 77.11 ("nothing contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment; and provided further that nothing in this Section 77.11 shall affect the releases and injunctions provided in Article XCII of the Plan."); Initial Proposed Confirmation Order ¶ 28 ("nothing contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment").

15. On the other hand, the "Supplemental Injunction" in section 92.11(d) of the Plan states that "all Entities . . . shall be deemed to be, permanently stayed, restrained and enjoined from . . . asserting, implementing, or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim."). Plan § 92.11(d); *see also* Initial Proposed Confirmation Order ¶ 28 ("nothing contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment; and, provided, further, that *nothing in this decretal*

7

*paragraph or Section 77.11 of the Plan shall affect the releases and injunctions provided in Article XCII of the Plan or this Order.*") (emphasis added).

16. These provisions are detrimental to Quest because, as set forth above, the Special Claims Committee and the Committee seek to recover the value of the Transfers under the Bankruptcy Code and Puerto Rico law. As set forth above, Quest has engaged with the Special Claims Committee and the Committee, and has identified certain deficiencies of the Complaint and presented certain defenses to liability that could require the Reorganized Debtors to, among other things, return the value of the services that Quest provided to the Commonwealth during the operative prepetition period. Any such relief would be precluded by confirmation of the proposed Plan and entry of the Initial Proposed Confirmation Order.

## **OBJECTION**

**A. The Plan Cannot Be Confirmed to the Extent It Purports to Eliminate Quest's Defensive Rights.**

    *i. The Non-Consensual Third-Party Releases Are Overbroad*

17. Quest's defensive rights must survive discharge under section 524 of the Bankruptcy Code and Quest must be permitted to proceed against the reorganized debtors for purposes of reducing or otherwise eliminating Quest's alleged liability in the Adversary Proceeding, provided that doing so would not result in affirmative recovery against the reorganized debtors. *See, e.g., Nat'l Promoters & Servs. Inc. v. Multinational Life Ins. Co. (In re Nat'l Promoters & Servs. Inc.)*, Case No. 12-01076 (ESL), 2020 WL 1685755, at *5 (D.P.R. Apr. 6, 2020) (explaining that a creditor may assert a defense in an amount large enough to offset its debt); *see also* 4 COLLIER ON BANKRUPTCY ¶ 524.02 (16th 2021) (providing that a "creditor may not attempt to collect the debt as a personal liability by seeking money damages"); *Copper Kettle Marina, Inc. v. Dorner (In re Dorner)*, 125 B.R. 198, 202 (Bankr. N.D. Ohio 1991) (concluding

8

that modification of the discharge injunction was appropriate to permit the claimant to name the discharged debtor in the existing action because, without the requested apportionment, the claimant would be denied its statutory right "to setoff the noneconomic portion of damages attributable to Debtor's conduct."); *cf. Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992) (acknowledging that section 524 of the Bankruptcy Code does not bar a claimant from proceeding against a discharged debtor for purposes of recovering against a third-party insurer).

18. The Oversight Committee has not met its burden of demonstrating the requisite conditions for approval of the non-consensual third-party releases included in the Plan, to the extent they contemplate the release of Claims and Causes of Action.

19. Courts within the First Circuit have held that section 105(a) of the Bankruptcy Code provides the requisite authority to approve releases that enjoin non-debtor third parties when it is appropriate and necessary to carry out the chapter 11 plan. *In re Chi. Invs., LLC*, 470 B.R. 32, 95 (Bankr. D. Mass. 2012); *In re Mahoney Hawkes, LLP*, 289 B.R. 285, 300 (Bankr. D. Mass. 2002); *see In re Charles St. African Methodist Episcopal Church of Bos.*, 499 B.R. 66, 102 (Bankr. D. Mass. 2013) ("I do not hold that no nonconsensual release, however narrowly tailored and otherwise justified, can ever be approved. Certainly, however, no nonconsensual release can be approved where the plan does not replace what it releases with something of indubitably equivalent value to the affected creditor."); *accord In re Adelphia Commc'ns Corp*, 368 B.R. 140, 268 (Bankr. S.D.N.Y. 2007); *In re Wash. Mut., Inc.*, 442 B.R. 314, 351-52 (Bankr. D. Del. 2011).

20. To determine the necessity for the third-party release, courts within the First Circuit have applied the multi-factor test set forth in *In re Master Mortgage Investment Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994), which requires that:

> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the

9

> non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate.
>
> (2) The non-debtor has contributed substantial assets to the reorganization.
>
> (3) The injunction is essential to the reorganization. . . .
>
> (4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment.
>
> (5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*See, e.g.*, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 361 F. Supp. 3d 203, 254 (D.P.R. 2019) (subsequent history omitted); *accord Charles St.*, 499 B.R. at 100 (noting that *Master Mortgage* factors are useful considerations in assessing the propriety of a proposed release).

21. However, "[t]hese factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." *Chi. Invs*, 470 B.R. at 95 (quoting *Wash. Mut.*, 442 B.R. at 346).

22. Here, the non-consensual releases, as they apply the Claims and Causes of Action, do not satisfy the *Master Mortgage* factors because, among other reasons: (i) the defensive rights are intended only to reduce any potential liability in the Adversary Proceeding and cannot otherwise deplete assets of the estate; (ii) voting is not yet completed and/or the Oversight Committee has not yet filed the Voting Tabulation Declaration, so no creditors have yet agreed to the releases; and (iii) Quest has not and will not be provided with "indubitably equivalent value" in exchange for the releases. Accordingly, their inclusion renders the Plan unconfirmable.

    *ii.*    *The Plan Cannot Eliminate Quest's Setoff and Recoupment Rights*

23. In addition, "defenses to enforcement, such as recoupment, cannot be extinguished in bankruptcy—whether through a sale or discharged under a plan—because they are neither

10

'claims' nor 'debts' nor 'interests.'" *In re Ditech Holding Corp.*, 606 B.R. 544, 596 (Bankr. S.D.N.Y. 2019) (collecting cases); *see Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV,* 209 F.3d 252 (3d Cir. 2000) (affirmative defenses of recoupment and set-off were not extinguished by bankruptcy sale as interests in property sold); *see also* 5 COLLIER ON BANKRUPTCY ¶ 553.08[1] (majority view is that confirmation of a plan and the related discharge do not bar rights of setoff or recoupment). This is true even if a proof of claim asserting setoff rights or recoupment as affirmative defenses has not been filed. *Nat'l Promoters & Servs. Inc.,* 2020 WL 1685755, at *51.

24. Accordingly, the Plan cannot unilaterally extinguish Quest's defensive rights, including its rights of setoff or recoupment in connection with the Adversary Proceeding.

**B.  The Relevant Plan Provisions Are Not in the Best Interests of Creditors.**

25. To the extent the Plan would impair Quest's defensive rights, the Plan also cannot be confirmed because it would fail the "best interests" test.

26. Section 316(b)(6) of PROMESA provides that the "court shall confirm the plan if—the plan is feasible and in the best interests of creditors, which shall require the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for creditors than is provided by such plan[.]" 48 U.S.C. § 2174(b)(7).

27. The gravamen of the "best interests" test is whether creditors are in a worse position under the Plan than if no plan were confirmed.[7] Although there are no reported decisions of the

---

[7] The application of the best interests test varies between the chapter 9 and chapter 11 contexts. In the chapter 9 context, courts will apply the best interests test to creditors as a whole, rather than on an individual basis. *In re City of Detroit*, 524 B.R. 147, 149-70 (Bankr. E.D. Mich. 2014). Quest is not arguing that the Plan as a whole is not in the best interests of all creditors, but respectfully submits that the Court can resolve the Plan's infirmities with respect to Quest without impacting the interests of other creditors. In the chapter 11 context, a plan can only be confirmed if impaired creditors that have rejected the plan "will receive or retain under the plan on account of such claim or interest, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1129(a)(7). Although there is no liquidation alternative in PROMESA, *Ditech*, *Quigley* and *SunEdison* (the latter two of which

11

"best interests" test under PROMESA, several decisions in the chapter 11 context hold that a plan with non-consensual releases fails the best interest tests and cannot be confirmed.

28. In *In re Quigley Co., Inc.*, the court considered how distributions to impaired creditors would be impacted under the chapter 11 plan or in a liquidation. 437 B.R. 102, 144-147 (Bankr. S.D.N.Y. 2010). Noting that impaired creditors would retain certain litigation rights against third parties in a liquidation, the *Quigley* court held that the proposed plan failed the best interests test. *Id.* at 147. Several courts have followed *Quigley*'s reasoning and held that a plan that provides for the relinquishment of third-party litigation rights is unconfirmable because it fails the best interests test. *See*, *e.g.*, *Ditech*, 606 B.R. at 614 (holding that plan failed the best interests test because liquidation analysis should have accounted for impaired creditors' third-party litigation rights because those claims had "value"); *In re SunEdison, Inc.*, 576 B.R. 453, 457 n.4 (Bankr. S.D.N.Y. 2017) (plan that provided for nonconsensual releases of creditors deemed to reject the plan pursuant to 11 U.S.C. § 1126(g) "would violate the best interests test . . . and render the Plan unconfirmable").

29. Here, Quest's ability to defend itself in the Adversary Proceeding could be significantly impaired if the Plan were to be confirmed and interpreted in the manner Quest articulates herein, and yet Quest would receive nothing in exchange for the non-consensual releases in the Plan—leaving Quest worse off than if the Plan were not confirmed.

30. This infirmity also impacts any other defendants in the avoidance actions, the majority of which are subject to the informal resolution process and the Stay Order, such that they are unlikely to be litigated and resolved prior to confirmation.

---

are cited and discussed herein) are instructive and directly on point because they discuss application of the best interests test in the context of impairment of litigation rights.

12

31. Accordingly, the Plan fails the best interests test and cannot be confirmed with the non-consensual releases.

[*Remainder of Page Intentionally Left Blank*]

## **CONCLUSION**

WHEREFORE Quest respectfully requests that the Court deny confirmation absent modification of the Plan and Initial Proposed Confirmation Order consistent with this Objection, and grant such other and further relief as the Court deems just and proper.

Dated: October 19, 2021

**DLA PIPER (PUERTO RICO) LLC**

By: /s/*Mariana Muñiz Lara*
Mariana Muñiz Lara
PRDC Bar No. 231,706
Calle de la Tanca #500, Suite 401
San Juan, PR 00901-1969
Tel: (787) 945-9106
Fax: (939) 697-6141
mariana.muniz@dlapiper.com

*Counsel to Quest Diagnostics of Puerto Rico, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/*Mariana Muñiz Lara*
Mariana Muñiz Lara