IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of:<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEE'S RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY<br><br>Debtors | PROMESA<br>Title III<br><br>Case No. 17-bk-3283 (LTS)<br><br>(Jointly Administered)[1] |

## OBJECTION TO CONFRMATION OF SEVENTH JOINT PLAN OF ADJUSTMENT

Filed by:

**Finca Matilde, Inc.**
Holder of Claim No. 249-1 in Case No. 17-bk-3283 (LTS)

Represented by:

**Isabel M. Fullana-Fraticelli & Assocs. PSC**
The Hato Rey Center Bldg.
268 Ave. Ponce de León Ste. 1002
San Juan, PR 00918-2013
Tel. (787) 250-7242
Fax. (787) 756-7800

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 35(787)66-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

# Table of Contents

I.   PRELIMINARY STATEMENT ........................................................................4

II.  RELEVANT FACTUAL BACKGROUND .......................................................6

III.   THE PLAN VIOLATES THE TAKING CLAUSE OF THE FIFTH

AMENDMENMENT ...........................................................................................7

   A.   The Taking Clause of the Fifth Amendment...............................................7

   B.   Fifth Amendment protection is not limited to security interests..........................12

   C.   The Fifth Amendment protects all property interests, not just security interests.15

IV.   THE PLAN UNFAIRLY CLASSIFIES INVERSE CONDEMNATION CLAIMS AS

GENERAL UNSECURED CLAIMS.................................................................17

V.   CONCLUSION ................................................................................................19

# TABLE OF AUTHORITIES

## CASES

Albert Hanson Lumber Co. v. United States, 261 U.S. 581 (1923) --------------------- 8, 12

Balzac v. Porto Rico, 258 U.S. 29 (1922)------------------------------------------------------- 11

Cobb v. City of Stockton (In re: City of Stockton), 909 F.3d 1259 (9th Cir. 2018)------- 13

Downes v. Bidwell, 182 U.S. 244 (1901) ----------------------------------------------------- 11

In re: Buttonwood Partners, Ltd., 111 B.R. 57 (Bankr. S.D.N.Y 1990) ------------------- 18

In re: El Comandante Mgmt., 359 B.R. 410 (Bankr. D.P.R. 2006) ------------------------- 17

In re: Kennewick Pub. Hosp. Dist., 2017 Bankr. Lexis 3965 (Bankr. E.D. Wa. 2017) -- 10

In re: LightSquared, Inc., 513 B.R. 56 (Bankr. S.D.N.Y. 2014) ----------------------------- 17

In re: Sentinel Management Group. Inc., 398 B.R. 281 (Bankr. N.D. Ill. 2008) --------- 18

Monongahela Navigation Co. v. United States, 148 U.S. 312  (1983)----------8, 9, 14, 16

Pointsett Lumber Mfg. v. Drainage District No. 7, 119 F. 2d 270 (8th Cir. 1941 -------- 16

## STATUTES

32 LPRA § 2902 ------------------------------------------------------------------------------------- 18

48 U.S.C § 2141 ------------------------------------------------------------------------------------- 11

## TREATISES

7 Collier on Bankruptcy (16th ed. 2020) P 1122.03 ----------------------------------------- 17

7 Collier on Bankruptcy (16th ed. 2020) P 1122.03[3] -------------------------------------- 18

## CONSTITUTIONAL PROVISIONS

Fifth Amendment -------------------------------------------------------------------------------passim

TO THE HONORABLE COURT:

COMES NOW **Finca Matilde, Inc.** ("Finca Matilde"), a creditor in the captioned case, whom, through the undersigned legal counsel, very respectfully state, pray, and request that this Honorable Court denies confirmation of the *Seventh Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "Plan") filed by the Financial Oversight and Management Board for Puerto Rico ("Oversight Board") at Docket No. 17627, for the reasons stated herein below.

## I.    PRELIMINARY STATEMENT

On July 30, 2021, the Oversight Board filed the Plan and moved for confirmation of the same Finca Matilde hereby objects to the confirmation of the Plan and moves the Court to deny confirmation on three general issues: (1) the unconstitutionality of the sought discharge of Finca Matilde's Eminent Domain Claim; (2) the unconstitutionality of the Plan's impairment of Finca Matilde's Eminent Domain Claim; (3) and the unfair and artificial classification of Finca Matilde's claim in the Plan. As it will be discussed herein, the Plan was not proposed in good faith and cannot be considered legal as it violates the Takings Clause of the Fifth Amendment of the U.S. Constitution. Moreover, the Plan is not in the best interests of Eminent Domain Claimants, such as Finca Matilde, insofar the Constitution of the Commonwealth of Puerto Rico ("Debtor") would result in greater recovery for Finca Matilde.

Finca Matilde holds against the Commonwealth of Puerto Rico a claim for an eminent domain taking in the principal amount of $11,184,576.00 plus interests. This claim, as of the commencement of this case, was reduced to a final and unappealable judgment and Finca Matilde filed a claim in this case to participate in the distribution on this Tittle III case of the Debtor. Notwithstanding of Finca Matilde's claim against the Debtor, Disclosure Statement nor the Joint Plan provides for full distribution for eminent

domain claims. On the contrary, it seeks to limit distribution to holders of direct condemnation claim to a prorate share in a recovery fund (Class 54), and further seek to discharge any unpaid portion. With respect to holders of inverse condemnation claim, it seeks to limit distribution to prorate share in a recovery fund subject to the availability of funds (Class 58). Finca Matilde submits the Plan's classification and treatment of its claim under the plan renders the same unconfirmable as an issue of law.

The instant Title III case is a special bankruptcy proceeding set forth by the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") which incorporates certain provision of the Bankruptcy Code. PROMESA's Section 301, 48 USC § 2161, imposes on the Oversight Board certain obligations as the plan proponent such as that the plan may not unfairly (or artificially) classify holders of similar claim, 11 USC § 1122, and requires that the plan be proposed in good faith and not by any means prohibited by state law, 11 USC § 1129(a)(3).

Moreover, with respect to confirmation, PROMESA's Section 314 further provides that:

> "The court shall confirm the plan if –
>
> [...]
>
> (3) the debtor is not prohibited by law from taking any action necessary to carry out the plan;
>
> [...]
>
> (6) the plan is feasible and in the best interests of creditors, which shall require the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan;" 48 USC § 2174

As it will be explained herein, the Plan seeks to impair and discharge takings claim in contravention to the Takings Clause of the Fifth Amendment and by making an artificial classification between direct and indirect condemnation. Additionally, the Plan

makes an arbitrary and artificial distinction between types of Eminent Domain Claims that is neither justified nor reasonable. Therefore, the Plan was not proposed in good faith and its action are specifically prohibited by the Fifth Amendment of the United States Constitution.

## II.    RELEVANT FACTUAL BACKGROUND

1.      Finca Matilde is a corporation organized under the laws of the Commonwealth of Puerto Rico. It is the owner in fee simple absolute (*dominio* in Spanish) of a land parcel in the Ponce municipality of Puerto Rico.

2.      In 2008, the Commonwealth's General Assembly and Governor approved Puerto Rico Act No. 277-2008 which significantly impaired Finca Matilde's use of its real property.

3.      On October 25, 2010, Finca Matilde filed a lawsuit in the Puerto Rico Court of First Instance in Ponce (the "Ponce Court").  In this case, Finca Matilde alleged that Act No. 277-2008 constituted a taking and, as such, the Commonwealth was obligated to pay just compensation for such taking.

4.      After trial, on November 27, 2013, the Ponce Court entered judgment granting Finca Matilde's complaint; it determined that the Act No. 277-2008 constituted a taking and further determined that the just compensation amounted to $11,184,576.00 plus interest. This judgment was confirmed on appeal, and certiorari was denied by the Supreme Court of Puerto Rico. This judgment for just compensation has not been paid.

5.      The instant Tittle III case was filed on May 3, 2017, and Finca Matilde filed a timely proof of claim for said amount.

6.      On July 30, 2021, the Board filed its *Seventh Amended Joint Plan of Adjustment* [Docket No. 17627]. According to the Plan, an "Eminent Domain Claim" is defined as "a Claim arising from or related to an *Eminent Domain Proceeding* and a Final

Order entered therein for an amount in excess of the amount deposited by the condemnor in accordance with the terms and provisions of 32 L.P.R.A. §2907, including, without limitation, interest accrued with respect thereto." [Docket No. 17627, p. 54, § 1.211].

"Eminent Domain Proceeding" means "[a] condemnation action or proceeding commenced by the Commonwealth or an agency or entity thereof in the Court of First Instance in accordance with the terms and provisions of 32 L.P.R.A §2905 **to obtain title to real property** located on Puerto Rico." [Docket No. 17627, p. 54, § 1.212] [Emphasis was added]. As the Court can see, pursuant to these definitions, only direct condemnation claims are included in the plan as Eminent Domain Claims. While the Plan contain a class for eminent domain claims, neither of these documents provides for payment of Finca Matilde's eminent domain claim as a reverse or inverse taking.

Consequently, the Plan cannot be confirmed as seeks to impair and discharge Finca Matilde's takings claim in clear contravention of the Fifth Amendment. Moreover, the plan is neither fair nor equitable as it unfairly discriminates against Finca Matilde as a holder of an Eminent Domain Claim.

### III.    THE PLAN VIOLATES THE TAKING CLAUSE OF THE FIFTH AMENDENMENT

### A. The Taking Clause of the Fifth Amendment

The Fifth Amendment of the Constitution of the United Stated, ("<u>Takings Clause</u>") provides that:

> "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; **nor shall private property be taken for**

**public use, without just compensation**." (Emphasis was added).

The first ten amendments to the Constitution are a bill of rights. <u>Monongahgela Navigation Co. v. United States</u>, 148 U.S. 312, 324 (1983). Such amendments were adopted "in order to quiet the apprehension of many that without some declaration of rights the government would assume, and might be held to possess, the power to trespass upon those rights of persons and property which by the Declaration of Independence were affirmed to be unalienable rights." Id.

With the enactment of the Fifth and Fourteenth Amendment, "[t]he Founders recognized that the protection of private property is indispensable to the promotion of individual freedom. As John Adams tersely put it, "property must be secured, or liberty cannot exist." *Quoted* by <u>Cedar Point Nursery v. Hassid</u>, 141 S. Ct. 2063, 2021 US Lexis 3394, *12. The protection of property rights empowers persons to shape and plan their own destiny in a world where governments are always eager to do so for them. Id. Consequently, the right to just compensation is irrevocable, and the federal bankruptcy power cannot impair this obligation to pay just compensation.

"One of the specific purposes of the Takings Clause is to bar the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." <u>Dolan v. City of Tigard</u>, 512 U.S. 374, 383 (1994). Thus, "[t]he government **must** pay for what it takes." <u>Cedar Point Nursery v. Hassid</u>, 141 S. Ct. 2063, 2021 US Lexis 3394, 12 [Emphasis was added]. The power of eminent domain is not dependent of any specific grant; it is an attribute of sovereignty, limited and conditioned by the Fifth Amendment. <u>Albert Hanson Lumber Co. v. United States</u>, 261 U.S. 581, 587 (1923). A property owner is protected by the rule that property cannot be taken until just compensation has been ascertained or a reasonable expectation or provision of payment is granted. Id.  To this end, the Supreme Court has long held that

8

"the power to take property reaches back of all constitutional propositions"; moreover, the Supreme Court further held that it is "settled principle of universal law that the right to compensation is an incident to the exercise of that power." Monongahela Navigation Co. v. United States, 148 U.S. 312, 324-325 (1833). The government's power to take property is so inseparable connected with the right to just compensation, that one cannot exist without the other. Id. at 325.

The Supreme Court has further held that:

> "The Fifth Amendment commands that, however great the Nation's need, private property shall not be thus taken even for a wholly public use without just compensation. If the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public." United States v. Sec. Indus. Bank, 459 U.S. 70, 77 (1982).

The Fifth Amendment states the exact limitation on the power of the government to take private property, to pay just compensation. Monongahela Navigation Co. v. United States, 148 U.S. 312, 325 (1893). The noun 'just compensation,' standing by itself carries the idea of an equivalent. Id. at 326. Nevertheless, this compensation is not the equivalent of damages to the owner. The Supreme Court reasoned that by adding the adjective "just" to compensation, makes it evident that the compensation must be a full and perfect equivalent *for* the property taken. Id. In the words of Mr. Justice Brewer:

> "The language used in the Fifth Amendment in respect to this matter is happily chosen. The entire amendment is a series of negations, denials of right or power in the government, the last, the one in point here, being, nor shall private property be taken for public use without just compensation. The noun "compensation," standing by itself, carries the idea of an equivalent. Thus we speak of damages by way of compensation, or compensatory damages, as distinguished from punitive or exemplary damages, the former being the equivalent for the injury done, and the latter imposed by way of punishment. So that if the adjective "just" had been

omitted, and the provision was simply that property should not be taken without compensation, the natural import of the language would be that the compensation should be the equivalent of the property. And this is made emphatic by the adjective "just." There can, in view of the combination of those two words, be no doubt that the compensation must be a full and perfect equivalent for the property taken. **And this just compensation, it will be noticed, is for the property, and not to the owner**. Every other clause in this Fifth Amendment is personal. No person shall be held to answer for a capital, or otherwise infamous crime, etc. Instead of continuing that form of statement, and saying that no person shall be deprived of his property without just compensation, the personal element is left out, and the "just compensation" is to be a full equivalent for the property taken. This excludes the taking into account, as an element in the compensation, any supposed benefit that the owner may receive in common with all from the public uses to which his private property is appropriated, and leaves it, to stand as a declaration, that no private property shall be appropriated to public uses unless a full and exact equivalent for it be returned to the owner." Id. at 325-326.  [Emphasis was added].

If the Court were to confirm a Plan of Adjustment that provides less than this "a full and exact equivalent", the Plan would be in direct violation of the Takings Clause.  A bedrock of bankruptcy law is that, unlike the states, Congress may discharge a debtor's personal obligation and impair creditors contractual obligations. *See* Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589 (1935). This authority, however, is not without limits. While Congress, through the enactment of the Bankruptcy Code, may impair contractual rights through the bankruptcy system, it cannot discharge its Fifth Amendment obligations. "The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment." Id.  See also In re: Kennewick Pub. Hosp. Dist., 2017 Bankr. Lexis 3965, 10 (Bankr. E.D. Wa. 2017); In re: City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014); United States v. Sec. Indus. Bank, 459 U.S. 70 (1982); Brockett v. Terra Cotta Co., 81 F.2d 949 (1936).

Even though Puerto Rico is not a state, "Congress, in legislating for the territories would be subject to those fundamental limitations in favor of personal rights which are

founded in the Constitution and its amendments" <u>Balzac v. Porto Rico</u>, 258 U.S. 29, 312-313 (1922). Therefore, is has long been held that the people of Puerto Rico "are entitled under the principles of the Constitution to be protected in life, liberty and **property**", <u>Downes v. Bidwell</u>, 182 U.S. 244, 283 (1901),[2] and "[t]he guaranties of certain fundamental personal rights declared in the Constitution, as for instance that no person could be deprived of life, liberty or property without due process of law, had from the beginning full application in the Philippines and Porto Rico [*sic*]" <u>Balzac v. Porto Rico</u>, 258 U.S. 29, 312-313 (1922).

Now, prior to the commencement of the above captioned Tilled III case, the Commonwealth of Puerto Rico, approved a legislative act that the Ponce Court determined that the Commonwealth had taken Finca Matilde's use of its real property and, as such, Finca Matilde was entitled to a principal award of over $11 million in just compensation for the taking, plus interests. As this Honorable Court can see, unlike bondholders, suppliers, or other contractual creditors, Finca Matilde did not enter into a voluntary conventional obligation with the Debtor, nor is Finca Matilde's claim the result of a tortuous action taken by the government or its agents. Finca Matilde's claim arose out of the Debtor's exercise of its eminent domain power. Yet, the Oversight Board seeks to impair Finca Matilde's right to "just compensation" and to discharge the Debtor's obligation to pay such compensation. This makes Debtor's plan illegal as it is contrary to the Fifth and Fourteenth Amendment and the Court may not confirm it, not only because it would be unconstitutional, but also because it fails to comply with the good faith requirement of Section 1129(a)(3) as incorporated by PROMESAS's Section 301, 48 U.S.C.§ 2161, as well as PROMESA's Section 201(b)(1)(N) which provides that the fiscal

---

[2] Emphasis was added.

plan shall "respect the relative lawful priorities or lawful liens as may be applicable in the constitution, other laws, or agreements of a covered territory" 48 U.S.C § 2141.

**B.  Fifth Amendment protection is not limited to security interests**

Under the Fifth Amendment, a property owner is entitled to compensation for the loss of his property. To this end, the "government action that works a taking of property rights necessarily implicates the constitutional obligation to pay just compensation." Knicks v. Township of Scott, 558 U.S. ___ (2019), 139 S. Ct. 2162, 2171. This constitutional obligation to pay just compensation is only limited by the Constitution itself. Nevertheless, the Oversight Board seeks to limit this obligation to the recovery of certain avoidance actions. It, thus, follows that if recovery is insufficient, eminent domain claimant's such as Finca Matilde will not be able to collect on any unpaid portion of the takings claim. This impairment, however, does not pass muster of the Fifth Amendment. "The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." United States v. Sec. Indus. Bank, 459 U.S. 70, 74-75 (1982) [Internal citation omitted].

The Supreme Court has held, that "[t]he availability of any particular compensation remedy, such as an inverse condemnation claim under state law, cannot infringe or restrict the property owner's federal constitutional claim" Knicks v. Township of Scott, 558 U.S. ___ (2019), 139 S. Ct. 2162, 2171. It then follows that the debt adjustment process created by Congress in PROMESA, as a post taking remedy, cannot infringe Finca Matilde's right to just compensation, particularly when payment of just compensation is a condition for any type of taking. As previously mentioned, the power of eminent domain is not dependent of any specific grant; it is an attribute of sovereignty, limited and conditioned by the Fifth Amendment. Albert Hanson Lumber Co. v. United States, 261 U.S. 581, 587 (1923). A property owner is protected by the rule that property

cannot be taken until just compensation has been ascertained or a reasonable expectation or provision of payment is granted. Id. To confirm a plan that allows a debtor to impair Takings Claims would do, precisely, that which the Fifth Amendment forbids.

"A Takings Clause violation is defined by two elements: (1) the public taking of private property, and (2) the subsequent denial of just compensation for that taking." In re: City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014). The government's post-taking actions cannot impair the property owner's existing Fifth Amendment right insofar, under the Fifth Amendment, "where the government's activities have already worked a taking of all use of property, **no subsequent action by the government can relieve it of the duty to provide compensation**." Knicks v. Township of Scott, 558 U.S. ___ (2019), 139 S. Ct. 2162, 2171 [Emphasis was added]. Neither PROMESA nor Chapter 9 of the Bankruptcy Code can be construed as an exception to the government's duty to provide just compensation.  If the proposed Plan of Adjustment is confirmed it would violate the Fifth Amendment to the extent that it limits liability to a percentage of the recovered funds (if any), and any unpaid portion would be discharged or otherwise uncollectible. For this reason, the Plan is patently unfeasible as unconstitutional.

Now, the Oversight Board argues that Finca Matilde and all condemnation claims can be impaired and discharged because the same have been reduced to a money judgment, and bankruptcy courts have impaired, and discharged claims based on 42 U.S.C. § 1983. This position is mostly based on the case of Cobb v. City of Stockton (In re: City of Stockton), 909 F.3d 1259 (9th Cir. 2018). Finca Matilde submits that the Oversight legal argument erroneous and its reliance on the *Cobb* case is erroneous.

In the first place, the *Cobb* court dismissed the appeal because of equitable mootness, therefore, all discussion as to whether a Chapter 9 discharge was proper is *dicta*. Secondly, in such case Cobb requested additional remedies provided for by state

13

law which were not provided for in the Chapter 9 Plan of Adjustment, and to which the creditor did not raise a timely objection prior to confirmation. That is not the case before this Honorable Court. Here, Finca Matilde has raised a timely objection and merely requests that that the Debtor complies with its Fifth Amendment obligation to pay just compensation. Third, despite the specific statutory basis for seeking damages relief arising from harm caused by the violation of one's Constitutional rights pursuant 42 U.S.C. §1983, that statutory basis is simply a jurisdictional vehicle for federal courts to assert jurisdiction over state actors. **It is not the basis of the right itself.**

The right, and the remedy with which to enforce that right, originates with the Constitution, and the Constitution alone. In the case of claims against the Debtors for eminent domain, such claims are not just a money judgment against a tortfeasor, it is a claim safeguarded by the just compensation clause of the Fifth Amendment. Again, it is the compensation for the property, not the owner. <u>Monongahela Navigation Co. v. United States</u>, 148 U.S. 312, 325 (1983). If the government can take property without paying just compensation, it would be engaging in an action which the drafters of the Fifth Amendment sought to eradicate: the taking of private property without just compensation. Finca Matilde should NOT have to bear public burden of the government's eminent domain power, no matter the bankruptcy status of the Debtor. To impair or discharge Finca Matilde's just compensation claim would allow the government to take private property without complying with paying just compensation. Yet, the Supreme Court has never tolerated such outcome. See <u>Cedar Point Nursery v. Hassid</u>, 141 S. Ct. 2063, 2021 US Lexis 3394, 24.

In the Chapter 9 case of the City of Detroit, the bankruptcy court faced a similar controversy where the Chapter 9 debtor sought to impair and discharge certain Taking

Claims creditors as general unsecured creditors. The court in the City of Detroit case ruled:

> "The City argues that the Takings Clause creditors have no such property interest and that chapter 9 does not extinguish any such property right. The City cites several cases establishing the principle that an unsecured creditor's mere right to collect payment is not a property interest.
> The Court rejects this argument. The taken property here is not the creditor's unsecured claim in bankruptcy. Moreover, the source of the taking is immaterial. In the present case, the City took, or allegedly took, the creditors' property. In Radford and Security Industrial, the bankruptcy code itself resulted in the taking. Nevertheless, all that matters under the Fifth Amendment is that the owner of private property must be justly compensated if that property was taken for public use, whenever and however that taking occurred.
> If confirmed, this plan would deny that just compensation. The plan would allow the City to impair the property owners' constitutional claim for just compensation after the City took their private property. **That violates the Fifth Amendment**." In re: City of Detroit, 524 B.R. 147, 269-270 (Bankr. E.D. Mich. 2014) [Emphasis was added].

## C. The Fifth Amendment protects all property interests, not just security interests.

The Bankruptcy Code is, for the most part, a procedural statute. It "does not authorize bankruptcy courts to create substantive rights not otherwise available under applicable statutes" In re: Rose, 512 B.R. 790, 794 (Bankr. W.D.N.C. 2014). That is why it has been established by the Supreme Court of the United States that creditor's entitlement in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation. Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co., 549 U.S. 443, 450 (2007). It has also been stated that the basic federal rule in bankruptcy is that state law governs the substance of a claim. Butner v. United States, 440 U.S. 48, 57 (1979). Consequently, a creditor's interest, and the underlying rights to those interests which this Court ought to protect, is established by state law. See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 375 (1988). Conversely,

unless otherwise established by a specific provision of the Bankruptcy Code, the order for relief does not grant the Debtor greater rights over the substance of a claim filed against it. If federal courts recognize that under the Fifth Amendment a creditor's security interest is constitutionally protected against a bankrupt, so is a claimant's right to just compensation under the same amendment particularly when the compensation is for the property, not the owner. See Monongahgela Navigation Co. v. United States, 148 U.S. 312, 325 (1983).

Fifth Amendment protection or state law interests in real property have long been recognized by bankruptcy courts. Since Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935), the Supreme Court held that even the federal bankruptcy power must yield to the Fifth Amendment. See Id. at 589. Now, the Oversight Board seeks to persuade the Court that, pursuant to 11 U.S.C. § 944(b), only secured claims are shielded by the Fifth Amendment; that is, that the only constitutionally protected interests in property are security interests.[3] The Oversight Board further agues that, pursuant to the 9th Circuit *Cobb* case, *supra*, that all constitutional obligations seeking money judgments are routinely adjusted in bankruptcy [Docket No. 17187, p. 46, fn. 42]. Such argument is not only based on *dicta* as previously discussed,[4] *supra*, but also because it is based on the erroneous presumption that some interests in property have a higher rank under the Fifth Amendment. This contention in erroneous for several reasons.

---

[3] See Docket No. 171887, pp. 45-46, fn. 42.

[4] The Oversight Board also cites Pointsett Lumber Mfg. v. Drainage District No. 7, 119 F. 2d 270 (8th Cir. 1941) as a source of law to support its contention. Yet, such case distinguishable from the case at bar. The *Drainage District* did not involve a municipal debtor, it involved a two-party dispute in a composition proceeding under the revoked Bankruptcy Act. The controversy resolved by the 8th Circuit Court behooved a private party with a claim for damages against a private debtor. The creditor alleged that to stay its state court claim would constitute a taking, yet, that case was not involve an Eminent Domain Claim, as this case.

As a threshold matter, it is important to point out that it is a well settled principle of constitutional law that the Takings Clause does not just protect ownership interest in real property, but "any one stick" within the "bundle of rights" that ownership encompasses. That includes not only security interests, but also the right to exclude other, and the right to use one's property. See *e.g.,* Lucas v. S.C. Costal Council, 505 U.S. 1003, 1010 (1992), discussing Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922). Additionally, in the same light that the Fifth Amendment requires that a secured creditor be paid the indubitable equivalent of its collateral (a security property interest), a Chapter 9 or Title III debtor must pay for the property it took (ownership property interest).

## IV. THE PLAN UNFAIRLY CLASSIFIES INVERSE CONDEMNATION CLAIMS AS GENERAL UNSECURED CLAIMS

### A. The Oversight Board's distinction between types of Eminent Domain Claim unlawfully focuses on the circumstances of the claim rather than on their legal nature.

Relevant issues pertaining to the plan are the classification of claims, whether it be artificial classification of a claim, whether the plan unfairly discriminates against a class of claims, and the solicitation procedure. In re: El Comandante Mgmt., 359 B.R. 410 (Bankr. D.P.R. 2006)

"One of the cardinal principles of bankruptcy law is equality of treatment of similarly situated creditors." 7 Collier on Bankruptcy P 1122.03. Therefore, while the Bankruptcy Code allows plan proponents to make separate classifications, such is justified only when the plan proponent can articulate a reasonable justification for such separate classification. In re: LightSquared, Inc., 513 B.R. 56, 83 (Bankr. S.D.N.Y. 2014). However, separate classification of otherwise similar claim must not "offend one's sensibility of due process and fair play." Id.

According to case law the requirement that a Chapter 11 plan does not unfairly discriminate, applicable to this case pursuant to 48 U.S.C. § 2161, is intended to

complement the fair and equitable test and to compensate for complex priorities among classes. In re: Buttonwood Partners, Ltd., 111 B.R. 57 (Bankr. S.D.N.Y 1990). Pursuant to section 1122 of the Bankruptcy Code the debtor, or plan proponent, may classify similar claims or interests in a class only if they are substantially similar to the claims and interests of such class. In re: El Comandante Management Co., LLC, 2006 WL 3903593 (Bankr. D.P.R. 2006).

"[T]he term "substantially similar" must be construed to mean similar in legal character or effect as a claim as or effect as a claim against the debtor's assets or as an interest in the debtor." 7 Collier on Bankruptcy P 1122.03[3]. "This determination should focus on the nature or legal attributes of the claims and not on the status or circumstances of the claimants." In re: Sentinel Management Group. Inc., 398 B.R. 281 (Bankr. N.D. Ill. 2008).

In the case before this Court, the Plan of Adjustment filed by the Oversight Board makes an artificial distinction between two types of eminent domain claims that is not only unfair, but unsupported by any source of law. Direct and indirect condemnation both stem from the same constitutional provision the Fifth and Fourteenth Amendment of the Constitution.[5] Likewise, the procedural mechanism to collection of unpaid taking claims is the same for either form of governmental condemnation is 42 U.S.C. § 1983 under federal law;[6] and 32 LPRA §§ 2901-2913 under state law.[7] Consequently, the legal nature

---

[5] "The Fifth Amendment's provision that private property shall not be taken for public use without just compensation is applicable to the states through the Fourteenth Amendment." First English Evangelical Lutheran Church v. Cty. of L.A., 482 U.S. 304, 310 (1987).

[6] See Knicks v. Township of Scott, 558 U.S. ___ (2019), 139 S. Ct. 2162, 2171.

[7] State law defines a taking broadly as to include:

> "Private property and also that defined in the second paragraph of § 1025 of Title 31 as bienes patrimoniales and any interest or right of any person or entity as lessee, mortgage creditor, unsufructuary, annuity holder (censualista), or any other real right, may, in accordance with the provisions of §§ 2901-2913 of this title, be taken, damaged or destroyed in whole or in part, or a permanent or temporary easement or servitude

of both direct and indirect condemnation is the same. The Oversight Board's attempt to differentiate them is artificial, unlawful, and tantamount to a willful attempt to violate Finca Matilde's constitutional right to just compensation. If an obligation were to be a general unsecured claim for the mere fact that it can be awarded through a money judgment, then all unsecured bonds are general unsecured claims. Nevertheless, the Oversight Board proposes greater distribution to such bondholders while eminent domain claimants must share a pro rata share of a recovery fund.

## V.     CONCLUSION

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: Nor shall private property be taken for public use, without just compensation. The Founders recognized that the protection of private property is indispensable to the promotion of individual freedom. As John Adams tersely put it, property must be secured, or liberty cannot exist. The United States Supreme Court agrees, having noted that protection of property rights is necessary to preserve freedom and empowers persons to shape and to plan their own destiny in a world where governments are always eager to do so for them." Cedar Point Nursery v. Hassid, 141 S. Ct. 2063 (2021).

"The Supreme Court has consistently held that bankruptcy laws are subject to the prohibition against governmental taking of private property without just compensation." In re: City of Detroit, 524 B.R. 147, 268 (Bankr. E.D. Mich. 2014). Taking claims includes claims resulting from either a direct or indirect condemnation by the government. Eminent domain claims include actions that are substantially different from contractual or tort claims. Hence, Finca Matilde's claim for inverse condemnation cannot be lumped

---

may be imposed thereon for lawful purposes when declared of public utility by the Governor or the officer or agency designated by him." 32 LPRA § 2902.

with other general unsecured claims insofar, the first cannot be impaired while the second

can be impaired and discharged.  Moreover, there is no rational distinction between the

legal nature of a claim for direct and indirect condemnation; both claims arise from the

Fifth Amendment of the Constitution. To confirm the Plan would result in a violation of

Finca Matilde's constitutional right to just compensation. Therefore, neither PROMESA

nor Chapter 9 of the Bankruptcy Code should be read to allow the government to use its

sovereign power to take private property without paying just compensation in full, as

stated by the Supreme Court:

> "And with respect to constitutional provisions of this nature,
> it was well said by Mr. Justice Bradley, speaking for the court,
> in *Boyd v. The United States*, 116 U.S. 616, 635: "Illegitimate
> and unconstitutional practices get their first footing in that
> way, namely, by silent approaches and slight deviations from
> legal modes of procedure. This can only be obviated by
> adhering to the rule that constitutional provisions for the
> security of person and property should be liberally construed.
> A close and literal construction deprives them of half their
> efficacy, and leads to gradual depreciation of the right, as if it
> consisted more in sound than in substance. It is the duty of
> courts to be watchful for the constitutional rights of the
> citizen, and against any stealthy encroachments thereon.
> Their motto should be obsta principiis." Monongahela v.
> Navigation Co., 148 U.S. 312, 325 (1893).

**WHEREFORE** Finca Matilde requests that this Honorable Court entertains the

instant motion and moves Honorable Court deny the confirmation of the 7th Amended

Joint Plan of Adjustment.

**I HEREBY CERTIFY**, that on this same date I electronically filed the foregoing with the

Clerk of the Bankruptcy Court using the CM/ECF system, which will send electronic

notification to all participants. Pursuant to the Fourteenth Amended Notice, Case

Management and Administrative Procedures, the instant motion was served via First

Class Mail upon the (i) Office of the United States Trustee, Edificio Ochoa, 500 Tanca

Street, Suite 301, San Juan, P.R. 00901; (ii) Chambers of the Hon. Laura T. Swain; (iii)

AAFAF and its counsel; (iv) the Oversight Board and its legal counsel, (v) Counsel for the Creditors Committee, (vi) Counsel for the Retiree Committee, the 20 largest creditors.

**RESPECTFULLY SUBMITED,**

In San Juan, Puerto Rico, this 19th day of October of 2021.

ISABEL FULLANA-FRATICELLI & ASSOCS., P.S.C.
The Hato Rey Center Bldg.
268 Ave. Ponce de León Ste. 1002
San Juan, Puerto Rico 00918
Telephone: (787) 250-7242
Facsimile: (787) 756-7800

/s/Isabel M. Fullana
USDCPR No. 126802
ifullana@gaflegal.com

/s/Eduardo J. Capdevila
USDCPR No. 302713
ecapdevila@gaflegal.com