## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x
                             :

In re:                             :
                             :

THE FINANCIAL OVERSIGHT AND      :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,   :  Title III
                             :

       as representative of            :  Case No. 17-BK-3283 (LTS)
                             :

THE COMMONWEALTH OF PUERTO RICO *et al.*,   :  (Jointly Administered)
                             :

        Debtors.[1]                  :
------------------------------------------------------------------------ x

### OBJECTION OF ASOCIACIÓN DE MAESTROS DE PUERTO RICO AND ASOCIACIÓN DE MAESTROS DE PUERTO RICO-LOCAL SINDICAL TO CONFIRMATION OF THE SEVENTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET. AL.

Asociación de Maestros Puerto Rico and the Asociación de Maestros de Puerto Rico-Local Sindical (collectively, "AMPR"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to confirmation of the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Docket No. 17627] (the "Proposed Plan"), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), and in support thereof, respectfully state as follows:

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

## PRELIMINARY STATEMENT[2]

**"Teachers shape the knowledge of all members of our society.
They are the cornerstone of our educational system."[3]**

**"Our teachers, who with tremendous sacrifice and devotion share the bread
of learning in the hope of building the Puerto Rico we all dream of, deserve
more than being steamrolled by clearly unreasonable laws.  The path to our
socioeconomic progress cannot be paved at the expense of our teachers."[4]**

1.      On December 24, 2013, the Government of Puerto Rico enacted Act 160, which
called for (among other things) the elimination of Puerto Rico's teachers' defined benefit
pension plan based upon the unsubstantiated premise that such a draconian action was necessary
to address the financial woes of the island's pension systems.  AMPR, on behalf of the thousands
of its member teachers in Puerto Rico, contested the constitutionality of Act 160 with respect to
the teachers' pension plan and prevailed: the Puerto Rico Supreme Court ruled in favor of
AMPR and held that the teachers' defined benefit pension plan could not be eliminated.  *See*
TRS Pension Decision, [Offic. Trans. at 1].

2.      In the TRS Pension Decision, the Puerto Rico Supreme Court held that teachers
had a constitutional right to their retirement benefits and that the Government had "severely
impaired the contractual rights of thousands of teachers without even making certain that this
would advance the interest of ensuring the solvency of the TRS." TRS Pension Decision [Offic.
Trans. at 8].  The court struck down those portions of Act 160 that would have deprived the
teachers of such rights, finding that "it is our constitutional duty to guarantee the right of the

---

[2]    Capitalized terms used, but not defined, in the Preliminary Statement have the meanings given to
       them below. Capitalized terms used, but not defined, herein shall have the meanings ascribed to them
       in the Disclosure Statement or Plan, as applicable.

[3]    *Asociación de Maestros de PR v. Sistema de Retiro para Maestros de PR*, 190 DPR 854 [Offic.
       Trans. at 1] (2014) (the "TRS Pension Decision").

[4]    TRS Pension Decision, (J. Charneco, concurring), concurring opinion [Offic. Trans. at 1].

teachers affected by the statute to prevent the State from substantially impairing their contractual rights by failing to adhere to the applicable standards." *Id*.

3.     In 2017, Puerto Rico Act 106 was enacted into law, which (among other things) codified the teachers' rights to a Defined Benefit pension plan, in reliance upon the TRS Pension Decision.[5] As a result, thousands of teachers have since relied upon the certainty of receiving their pension benefits in remaining in Puerto Rico as teachers, in the face of extremely modest compensation (and better paying teaching opportunities in the mainland), and grueling working conditions occasioned by, among other things, the financial havoc wreaked upon Puerto Rico's educational system by two severe hurricanes, multiple earthquakes, and a global pandemic.  All the while, these dedicated public servants continued to weather the proverbial (and literal) storm in order to educate the island's youth.

4.     Now, seven years after AMPR's TRS Pension Decision victory, the Oversight Board is attempting in the Proposed Plan – through what it euphemistically calls a "freeze" –  to do exactly what the TRS Pension Decision held could not be done: eliminate the teachers' Defined Benefit pension plan.  The effect of the Freeze would be to force the teachers to fund their own retirement through a Defined Contribution plan, notwithstanding the requirement, as affirmed by the Puerto Rico Supreme Court, that such funding be provided by the Government through the Defined Benefit plan. Just as this modification was unconstitutional when it was proposed to be effectuated through Act 160, it is equally illegal here as intended to be enacted under the Proposed Plan.

---

[5]     Teachers hired on and after August 1, 2014 are excluded from participation in the Defined Benefit plans.

5.      More specifically, the Oversight Board, through the Proposed Plan, attempts to modify select aspects of the teachers' terms of employment, and in particular their constitutionally protected contractual right to retirement benefits under their Defined Benefit plan, through a largely unexplained "rejection" of that contractual right.  But, as a matter of law, the Oversight Board cannot impose the Freeze in the manner suggested in the Proposed Plan: first, the teachers' Defined Benefit pension rights cannot be "deemed" rejected pursuant to section 365(a) of the Bankruptcy Code as adopted in PROMESA; second, PROMESA does not preempt Act 106 or the TRS Pension Decision, which affirm the teachers' Defined Benefit pension rights; third, even if the Oversight Board can reject the teachers' contractual pension rights (it cannot), the Proposed Plan does not provide for the treatment or satisfaction of the TRS members' contract rejection claims; fourth, the Oversight Board has skirted PROMESA's requirement that it provides adequate funding to the TRS; and finally, the confirmation of the Proposed Plan is plainly not in the best interest of the teachers.

6.      The Oversight Board proposes to impose the Freeze but ignores the severity of harm it will cause to teachers, the Commonwealth's most critical public servants.  Indeed, as a practical matter, thousands of teachers are mid-career and do not have the remaining years of service needed to build value in the self-funded accounts that would replace the current Defined Benefit plan.  Moreover, the self-funded accounts for teachers currently in the Defined Benefit plan have not yet been created and, if history is any judge, there will be a significant delay before teachers can even contribute to these accounts.  And, making matters worse, teachers cannot fall back on the social security system because to date they have not been able to participate and, accordingly, no social security amounts are available for their retirements.  In the face of all this, the Proposed Plan puts teachers at risk of having no retirement benefits if the Freeze is

implemented and the Government refuses to cooperate in effectuating the Plan: "*the Oversight Board does not believe the government will deprive its citizens of participation in the Act 106 plan or social security once the defined benefits plans are frozen, as these individuals would otherwise have no retirement plan.*"  (Disclosure Statement at 589 (emphasis added).)

7.     Not only will this Freeze adversely affect the financial security of the teachers, but it will also undoubtedly have a significant impact on the quality of the education system as a whole, which has a history of significant underfunding.  The ability of the Commonwealth to attract and retain quality educators is now more important than ever, and reducing teachers' retirement benefits is anathema to the goal of attracting and retaining teachers.  The effects of the Freeze will impact the academic achievement and future outcomes of the students of Puerto Rico and reverberate throughout the island for years to come.

8.     The very premise of PROMESA (English translation meaning "promise") included that "Puerto Rico will be expressly prohibited from balancing its budget by short-changing pensions."[6] At bottom, the Proposed Plan, imposing the Freeze, is a fundamental breach of that promise.

---

6     *Puerto Rico's Fiscal Crisis: What You Need to Know*, The White House Blog, June 7, 2016 https://obamawhitehouse.archives.gov/blog/2016/06/07/puerto-ricos-fiscal-crisis-what-you-need-know ("In contrast to PROMESA, which protects pensions, a disorderly default puts pensions at serious risk. Without this legislation, Puerto Rico's workers do not have the protection they deserve.").

## BACKGROUND

### I.     THE TITLE III CASES

9.      The Asociación de Maestros Puerto Rico and the Asociación de Maestros de Puerto Rico-Local Sindical are the Commonwealth's largest public employee labor organizations, representing more than 24,000 active teachers and other public school employees.

10.     On May 3, 2017 (the "Petition Date"), the Commonwealth, by and through the Oversight Board as representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act, codified as title 48, chapter 20 of the United States Code ("PROMESA"), filed a petition with the United States District Court for the District of Puerto Rico (the "Court") under title III of PROMESA, commencing the Commonwealth's title III case (the "Title III Case").

11.     On April 23, 2021, the Oversight Board certified the 2021 fiscal plan for the Commonwealth (the "Fiscal Plan"), which is attached as Exhibit H to the Disclosure Statement (defined below).  This is the most recent of many certified fiscal plans issued by the Oversight Board since PROMESA was enacted.  (*See* Disclosure Statement at 229-57).

12.     On July 30, 2021, the Oversight Board filed the *Disclosure Statement for the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Docket No. 17628] (the "Disclosure Statement"). On August 2, 2021, the Court entered the *Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation*

*Deadlines, and (VIII) Approving Vote Tabulation Procedure* [Docket No. 17639]. Also on July

30, 2021, the Oversight Board filed the Proposed Plan.

13.     The Disclosure Statement indicates that the pension systems and other government

obligations of the Commonwealth are "materially underfunded." (Disclosure Statement at 113).

The Proposed Plan proposes to freeze the defined benefit components (the "Defined Benefit") of

the Puerto Rico Teachers Retirement System ("TRS") members' retirement plans (the "Freeze"),

and change the TRS members' retirement plan to a defined contribution system (the "Defined

Contribution"). (*See* Disclosure Statement Ex. H at 274). The Disclosure Statement asserts that the

Freeze will result in significant savings to the Commonwealth and will "play a significant role in

restoring long-term adequate funding." (*Id.* at 275).  The Disclosure Statement also includes a

recovery analysis for each class of claims, but notably does not include the impact that the Freeze

will have on the teachers' retirement claims or teachers' recoveries under the Proposed Plan. (*See*

Disclosure Statement at 22 n. 53).

14.     Pursuant to the Proposed Plan, active TRS members will have their pensions

impaired as follows: (i) their monthly benefits upon retirement will be subject to the same cuts as

those imposed upon all other government employees[7] and, (ii) benefits will be "frozen" as of the

Effective Date such that teachers will no longer be able to accrue pension benefits after such date.

(*See* Disclosure Statement at 464-67). Rather, after the Effective Date, teachers' ongoing pension

benefits will only accrue through their own contribution to self-funded individual Defined

Contribution accounts, which have yet to be established for those teachers currently in the Defined

---

[7]     This pension treatment may be amended in the Proposed Plan if certain negotiations between the
Oversight Board, the Legislature and Governor of Puerto Rico regarding enactment of legislation to
implement the Proposed Plan result in legislation.  Nevertheless, as of the filing of this Objection, no
deal had been finalized and the Proposed Plan had not been amended.

Benefit plan. In addition, pursuant to the Proposed Plan, teachers under age 45, and those older who choose to do so, will *for the first time* be enrolled in Social Security, although the timeline for when teachers will be able to participate in social security is also not yet established.

15. On September 28, 2021, AMPR's members voted against ratifying the treatment provided in the Proposed Plan set forth in Exhibit F-2, and did not authorize AMPR to enter into a Plan Support Agreement. Therefore, if the Proposed Plan is confirmed, AMPR's members will receive the far less favorable treatment provided in Exhibit F-1. The teachers so voted in the face of multiple public statements by Puerto Rico's political leaders that pension rights were sacrosanct and that the Government of Puerto Rico would not take the actions necessary to enforce the Freeze and other reductions in government employees' pension rights. Indeed, after first enacting Act 7-2021 in an effort to protect pension rights (*see* Disclosure Statement at 578), the Puerto Rico legislature has even more recently proposed legislation (H.B. 1003) to authorize the issuance of new general obligation bonds and contingent value instruments contemplated in the Proposed Plan on the express condition (among others) that there are no pension cuts to any government employees. Although there seems to be an agreement in principle between the Oversight Board and the Puerto Rico Legislature that would prevent pension cuts to retired government employees, that agreement in principle would not prevent the Freeze of teacher's retirement benefits set forth in the Proposed Plan. Indeed, the only government employees to be impaired by the Freeze would be the teachers and judges.

## II.    THE TRS PENSION DECISION

16. In 2013, the Commonwealth passed Act No. 160 of 2013 ("Act 160"), known as the Commonwealth of Puerto Rico Teachers Retirement Act. This legislation, in significant part, modified the TRS to "(1) freez[e] benefits accrued by active participants under Act No. 91, by

8

eliminating the accumulation of new benefits under the present defined benefit plan, yet honoring any benefit accrued by said participants to the present; (2) transferring active members under Act No. 91 to a defined contribution plan with a minimum benefit guaranteed for active participants as of July 31, 2014; (3) prospectively eliminating the merit pensions; (4) raising the retirement age for future teachers; (5) increasing the contribution of System participants; (6) increasing employer contributions, in addition to the increase previously legislated through Act No. 114-2011; (7) modifying the benefits granted by Special Laws to retired participants and eliminating said benefits prospectively; and (8) modifying the benefits for disability and for participant beneficiaries." Statement of Motives of Act No. 160, at 18.

17.   AMPR sought a preliminary injunction and requested a declaratory judgment declaring Act 160 unconstitutional and seeking to stay its effects immediately.  AMPR argued to the Puerto Rico Supreme Court that Act 160 was unconstitutional on a number of bases, including that it unconstitutionally impaired the Commonwealth's contractual obligations to the TRS' participants, violated substantive due process, the Equal Protection Clause, the delegation of powers doctrine and constituted a taking, unjust enrichment, and a violation of teachers' fundamental rights.

18.   In the TRS Pension Decision, the Puerto Rico Supreme Court discussed, in depth, the legal standard for the impairment of a contract between the Commonwealth and private parties, noting that there is a much stricter standard when a State obligation is being modified, and reasoning that this strict scrutiny is necessary as the Commonwealth could act in its own benefit. *See* TRS Pension Decision, [Offic. Trans. at 4]. The Supreme Court ultimately held that, in such circumstances, "the contractual impairment, aside from being reasonable, must be necessary to advance an important governmental purpose." *Id.* (also noting that the higher degree of severity of

9

the impairment, the stricter the court must be in its scrutiny) (citing *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245 (1978)). Stated differently, this standard requires that "there are no less burdensome measures to achieve [the end of furthering the TRS's actuarial solvency]." *Id.*, [Offic. Trans. at 5].

19.    The Supreme Court "inevitably conclude[d] that Act No. 160 of 2013 is unreasonable, and consequently unconstitutional under the constitutional clause that bars the impairment of contractual obligations insofar as it alters plaintiffs-petitioners' contractual right to their retirement pension under Act No. 91 of 2004." TRS Pension Decision, [Offic. Trans. at 6]. In arriving at its conclusion, the Supreme Court found that, based on the evidence, "Act No. 160 of 2013 does not foster the actuarial solvency of the TRS." To the contrary, actuarial analysis showed that Act 160 would "probably cause a retirement *en masse* of teachers that will exhaust the TRS assets sooner than foreseen." *Id.*  Consequently, the Supreme Court held that Act 160 not only failed to further "the important state interest required by our constitutional system in the case of retirement system reforms: to guarantee the very solvency of the system," but rather, "places it in an even more precarious state." *Id.*, [Offic. Trans. at 7].

## OBJECTION

## THE PROPOSED PLAN SHOULD NOT BE CONFIRMED

I.    **THE PURPORTED REJECTION OF AMPR'S MEMBERS' PENSION RIGHTS IS ILLEGAL AND INEQUITABLE**

   A. **The Teachers' Defined Benefit Pension Rights Cannot be Rejected Pursuant to 11 U.S.C. § 365**

20.    The Oversight Board purports to effectuate the Freeze as follows: "the contractual obligations of the Commonwealth to accrue such benefits, including, without limitation, pursuant to the statutes set forth in Part III of Exhibit "K" hereto, shall be *deemed rejected* pursuant to

10

section 365(a) of the Bankruptcy Code." Proposed Plan, § 55.9(b) at 99 (emphasis added). The Oversight Board does not specify in the Disclosure Statement or the Proposed Plan how it "deems" to reject these Defined Benefit pension benefits and what contract or contracts it is rejecting. More specifically, it is not clear whether and how the Oversight Board is purporting to reject the teacher's pension rights arising under Act 160, or Act 106.[8]  (*See* Disclosure Statement at 589 (quoted, *infra*, section 1C)). Either way, the Oversight Board's attempt to impose the Freeze fails because there is no statutory authority for a "deemed" rejection as set forth in the Proposed Plan. *Cf. In re Owens Corning*, 419 F.3d 195, 216 (3d Cir. 2005) (rejecting concept of a "deemed" substantive consolidation as not provided by law; "[s]uch "deemed" schemes we deem not Hoyle.").

21.     Here, the teachers' contractual Defined Benefit pension benefits arise by statute and were further sanctioned by the Puerto Rico Supreme Court in the TRS Pension Decision, which interpreted Act 160 as unconstitutionally impairing teachers' rights to their pensions: "A beneficiary of a retirement plan has a property interest of a contractual nature protected by the constitutional guarantee against impairment of contractual obligations." [9]  TRS Pension Decision, [Offic. Trans. at 4] (citing *Bayrón Toro v. Serra*, 119 D.P.R. 605, 607-08 [19 P.R. Offic. Trans.

---

[8]     The collective bargaining agreement ("CBA") between AMPR and the Commonwealth does not contain any references to pension rights and, accordingly, rejecting that CBA agreement would not effectuate the Oversight Board's goal of imposing the Freeze. Section 55.9, which falls within Article LV, is the treatment provision for AMPR's members (as Active TRS Participants), but it is silent as to any rejection of the CBA in order to impose the Freeze. In any event, the Oversight Board is not rejecting the CBA. The Proposed Plan provides in Section 76.10 that "[e]xcept as provided in Article LV and LVI hereof, none of the Debtors' collective bargaining agreements shall be treated as Executory Contracts and none shall be assumed or rejected or otherwise treated pursuant to the Plan . . . ." The Confirmation Order should, consistent with the Proposed Plan, expressly provide that all CBAs are neither being assumed nor rejected.

[9]     It is important to highlight that acquired rights, without relevance to whether granted by legislation, contract or common law, are entitled to the guarantees enjoyed by all constitutional rights. *See generally*, 16B Am. Jur. 2d. 670-720.

646, 661] (1987)).  The Oversight Board proposes to reject *only* the teachers' property interest of contractual nature to receive their Defined Benefit pension benefits.  This selective rejection is plainly improper and violative of law.

**B.  The Teachers' Defined Benefit Pension Rights are Not Subject to Preemption by PROMESA**

22.    The TRS Pension Decision makes crystal clear that the Puerto Rico Constitution precludes modification or reduction of teachers' pension benefits in these circumstances. The Oversight Board makes no attempt in the Proposed Plan or Disclosure Statement to describe how PROMESA permits it to impose the Freeze without violating the Puerto Rico Constitution.  Rather, the Oversight Board states in conclusory fashion that any laws that may be in effect would be preempted as necessary to impose the Freeze. (*See* Disclosure Statement at 451, 458, 466).  But, PROMESA would *not* preempt Puerto Rico law protecting teachers' pension rights.  Although courts have found that certain sections of PROMESA contain express preemption language (*see e.g., In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 297 F. Supp. 3d 269, 290 (D.P.R. 2018), aff'd, 927 F.3d 597 (1st Cir. 2019) (finding section 303(a) of PROMESA to be an "express preemption provision")), no such express preemption language exists in PROMESA governing employees' pension rights generally, and teachers' pension rights in particular.  PROMESA does *not* have the type of blanket preemptive effect that would allow the Freeze to be imposed in contravention of the TRS Pension Decision.  *See e.g., Altair Glob. Credit Opportunities Fund (A), LLC v. United States*, 138 Fed. Cl. 742, 758 (2018) (PROMESA does not preempt the Tucker Act); *Centro de Periodismo Investigativo v. Fin. Oversight & Mgmt. Bd. for Puerto Rico* (D.P.R. May 4, 2018) (PROMESA does not preempt the public's right to inspect public documents).

23.    Any conclusion that PROMESA could preempt Puerto Rico law and the TRS Pension Decision with respect to teachers' pension benefits would contradict Congress' intentions

in enacting PROMESA. The purpose of PROMESA is to "provide an oversight mechanism to assist the Government of Puerto Rico in reforming its fiscal governance and support the implementation of potential debt restructuring." PROMESA § 2194(n)(3). The Oversight Board does not have the power to legislate or to govern. "PROMESA's grant of trustee status to the FOMB [Oversight Board] thus does not empower the FOMB to sweep the elected government aside. . . . A feasible plan of adjustment must . . . be premised on a functioning and credible government structure that will execute the plan of adjustment long after the FOMB is dissolved. That is doubtless one reason that PROMESA leaves the elected government in place and does not suspend it in favor of direct management by the FOMB." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico* (D.P.R. 2017). It is only the Puerto Rico legislature, not the Oversight Board through the Proposed Plan, that may modify teachers' pension benefits.

### C. Even if the Teachers' Pension Rights Could be Rejected, the Proposed Plan Does Not Provide for Satisfaction of the Teachers' Rejection Damages Claim

24. Further, even if the Oversight Board could somehow reject the teachers' contractual Defined Benefit pension rights while leaving all other aspects of the teachers' terms of employment with the Commonwealth in place, there is yet another reason that the Proposed Plan cannot be confirmed. The Oversight Board acknowledges in the Proposed Plan, as it must, that should the Freeze be imposed, contract rejection is a breach of the Commonwealth's agreement with the teachers that will result in damages to teachers. (*See* Proposed Plan at § 55.9 (b) ("To effectuate the freeze of the contractual rights of Active TRS Participants to accrue pension benefits under Puerto Rico law as set forth on Exhibit "F-1"or "F-2" hereto, as applicable, the contractual obligations of the Commonwealth to accrue such benefits, including, without limitation, pursuant to the statutes set forth in Part III of Exhibit "K" hereto, shall be deemed rejected pursuant to

section 365(a) of the Bankruptcy Code."); Proposed Plan at § 76.6 (setting forth process for asserting rejection damages claims)).

25.    However, the Proposed Plan fails to acknowledge that the teachers' rejection damages claim would be *an administrative claim*, and the Proposed Plan does not provide for its satisfaction (nor does it account or provide for *any* claims resulting from the purported rejection, administrative or otherwise). The teachers' claim (which will be asserted at the appropriate time, consistent with the Proposed Plan, and only if the Proposed Plan is confirmed) would arise from the rejection of their contractual Defined Benefit pension rights, which are set forth in Act 106 of 2017 – the "Law to Guarantee Payment to our Pensioners and Establish a New Plan for Defined Contributions for Public Servants."[10]  Act 106, enacted post-petition, imposed a "Pay-Go" system for most government employees, but in recognition of the TRS Pension Decision, expressly exempted teachers and provided that:

> teachers who are contributing to the Teachers Retirement System under the provisions of Law 91-2004, as amended, known as the 'Teachers Retirement System Act of the Commonwealth of Puerto Rico,' shall continue to make contributions in accordance with the provisions of said statute. The Accumulated Pensions of said teachers shall be calculated based on the terms and conditions set forth in said law . . . It is expressly provided that said Accumulated Pensions, and the payment terms thereof, shall not be affected or modified in any way by the provisions of this Law.

Act 106 of 2017 at § 2.6.  The Oversight Board apparently intends to reject the contractual obligations set forth in Act 106, explaining in the Disclosure Statement that:

> The obligations of TRS and JRS to accrue future benefits to their participants (teachers and judges) were assumed by the Commonwealth under Act 106-2017. These obligations are contractual under Puerto Rico law, even though provided in

---

[10]    Act 106 was enacted "for the purpose of reforming the Puerto Rican Government Employee Retirement System, and the Teacher Retirement System, according to the economic and fiscal reality in Puerto Rico and the provisions of the Fiscal Plan for Puerto Rico, certified in accordance with the provisions of Public Law 114-187, known as the 'Puerto Rico Oversight, Management and Economic Stability Act' or 'PROMESA' . . . ."

statutes. As the Commonwealth is a debtor in a Title III, these contractual
obligations can be discharged as claims or rejected under section 365 of the
Bankruptcy Code.

(Disclosure Statement at 589).

26.     Accordingly, teachers' rights to their Defined Benefit pension plan benefits were

statutorily protected *after* enactment of PROMESA.  The services provided post-petition by

teachers in reliance on receiving those contractual benefits, to be breached by the Oversight Board

if rejected as set forth in the Proposed Plan, give rise to an administrative claim against the

Commonwealth.  *See In re Financial Oversight and Management Board for Puerto Rico*, 621 B.R.

289 (D.P.R. 2020) ("In the First Circuit, 'a request for priority payment of an administrative

expense pursuant to  Bankruptcy Code § 503(a) may qualify if (1) the right to payment arose from

a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the

debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the

debtor.'").

27.     The Proposed Plan does not seem to provide a means for satisfying an allowed

administrative claim filed upon rejection of the teachers' Defined Benefit retirement rights.[11]  The

Proposed Plan proposes for payment of administrative claims in full, in cash. (*See* Proposed Plan

at § 3.1).  Indeed, the Proposed Plan acknowledges the risk that it may not be confirmed if large

administrative claims, like that of the teachers, are asserted and allowed. (*See* Disclosure Statement

at 559 ("If any claimant is successful in prosecuting and obtaining an allowed (i) administrative

expense claim, (ii) priority claim, (iii) secured claim, or (iv) non-dischargeable claim, and any such

---

[11]    The amount of the teachers' rejection damages claim is being determined, but will almost certainly be
in an amount that would negate any estimated savings from the Freeze.  *See* PROMESA Section 211
Report on the Puerto Rico Retirement Systems, September 2019, Ex. 18 (noting that the present value
of the baseline PayGo costs for the TRS is $18.4 billion without the Freeze, and $14.6 billion with the
Freeze).

claim is not contemplated to be paid pursuant to the Plan, the Plan may not be confirmable.").)
Unless the Proposed Plan is amended to provide for payment of the teachers' administrative claim,
or amounts escrowed to satisfy the claim if allowed, the Proposed Plan, by the Oversight Board's
own admission, cannot be confirmed.[12]

## II.    THE PROPOSED FISCAL PLAN INCORPORATED IN THE PROPOSED PLAN FAILS TO PROVIDE ADEQUATE FUNDING

28.    The Proposed Plan is premised on a Fiscal Plan that fails to "provide adequate
funding." 48 U.S.C. § 2141(b)(1).  The Fiscal Plan, upon which the Proposed Plan is
fundamentally premised, falls short with respect to funding both pensions systems and essential
public services. Notwithstanding the certification of the Fiscal Plan by the Oversight Board, this
Court should not confirm the Proposed Plan when it is based on a Fiscal Plan that fails to comply
with this requirement.

### A.    Public Pension Systems

29.    PROMESA imposes the requirement that "a Fiscal Plan . . .  provide a method to
achieve fiscal responsibility and access to the capital markets, and— provide adequate funding for
public pension systems." 48 U.S.C. § 2141(b)(1)(C). The Proposed Plan, which purports to
accomplish this end by forcing AMPR's members from their Defined Benefit plan into a Defined
Contribution plan, merely results in the teachers funding their own retirements. (*See* Disclosure
Statement at 68; Proposed Plan Ex. F). Although the Oversight Board claims to provide such
funding by "reducing costs," the supposed costs that are being reduced are the very obligations

---

[12]   Even, assuming *arguendo*, that the teachers' rejection damages claim is not allowed as an
administrative claim by the Court, it will almost certainly even as an unsecured claim be in an amount
that will negate a significant amount of the estimated savings from the Freeze, and could even impair
the feasibility of the confirmation of the Proposed Plan, if each impaired participant of TRS, which
includes administrative personnel and teachers (26,967 as of March 2019 pursuant to TRS census),
opts into the convenience class incorporated in the Proposed Plan for unsecured claimants.

that PROMESA requires should be provided under the Fiscal Plan. Adequate funding is *not* being provided here, when pension benefits are actually being *taken away* from the very people PROMESA was intended to protect.

30. The Supreme Court of Puerto Rico noted in the TRS Pension Decision that "for a retirement system reform to be deemed constitutional, our legal system requires that it be reasonable and necessary to advance its actuarial solvency." *Asociación de Maestros de PR v. Sistema de Retiro para Maestros de PR*, 190 DPR 854 [Offic. Trans. at 10] (2014) (citing *Bayron Toro v. Serra*, 119 D.P.R. 605, 618 [19 P.R. Offic. Trans. 646, 660] (1987)). Absent such proof, the Oversight Board cannot enact the same type of pension reform that the Supreme Court found to be unconstitutional in the TRS Pension Decision. Indeed, the Freeze is not necessary because the Oversight Board has at its disposal many sources to fund the pension system, including the funds it is using under the Proposed Plan to settle with bondholders whose bond claims would otherwise be subject to constitutional challenge. Imposing the Freeze instead as the necessary measure, rather than some other source of savings, is as arbitrary as it is violative of PROMESA.

**B. Essential Public Services**

31. PROMESA also requires that the Fiscal Plan adequately fund "essential services." 48 U.S.C. § 2141(b)(1)(B). Although not defined in the Proposed Plan or Disclosure Statement, "[t]he Oversight Board takes the view that 'essential services' is a phrase used to refer, at a minimum, to services which, due to the police power, a court of competent jurisdiction can allow to be paid for from revenues to which a creditor has a priority claim or a valid, unavoidable secured claim." (Disclosure Statement at 195). There can be no dispute that teachers provide an "essential service" for purposes of PROMESA. In fact, by the Oversight Board's own admission, education is an "essential service," listed as a "critical investment" in the Disclosure Statement even before

"health" and "public safety." (*See* Disclosure Statement at 257 ("Critical investments in the certified Fiscal Year 2022 budget include funding for essential services such as Education, Health, Public Safety, Corrections, Economic Development, and Social Welfare.")  As the Puerto Rico Supreme Court noted, "[t]eachers shape the knowledge of all members of our society. They are the cornerstone of our educational system." TRS Pension Decision [Offic. Trans. at 1].

32.    This Court and others have recognized that public employees are the backbone of any municipal bankruptcy. *See In re The Financial Oversight And Management Board For Puerto Rico* Case No. 17 BK 3283 – LTS, Memorandum Opinion [Docket No. 763] ("Unlike the commercial focus of bankruptcy cases of private entities, the 'primary purpose' of governmental insolvency proceedings 'is not future profit, but rather continued provision of public services.'" (citing *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 34 (Bankr. D. Colo. 1999).)  "The goal of these PROMESA cases thus is not merely to maximize creditors' recoveries. Rather, these restructuring cases require a more holistic approach that focuses on the continuation and future of a government and its instrumentalities and their ability to meet the needs of the Commonwealth's residents as well as provide proper recompense of creditors." *Id.*  Ensuring that teachers are provided for in retirement goes hand-in-hand with continuing to provide the essential service of education. The Oversight Board admits as much in their 2019 fiscal plan. (*See Disclosure Statement for the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Docket No. 11947] Ex. E.) ("Improved education through enhanced teacher quality is critical to the long-term success of the children of Puerto Rico and will help to lift a new generation of Puerto Rican residents out of poverty.").

33.    Freezing the teachers' Defined Benefit plan will surely only lead to even greater difficulty in attracting and retaining qualified educators. (*See id.* ("As of FY2018, teachers in

Puerto Rico had not received a pay raise in nearly a decade, causing Puerto Rico to lose out on opportunities to attract and retain talent.").)   As of the 2018-2019 year, the number of undergraduate students enrolled in the University of Puerto Rico, Rio Piedras Campus, in what was the largest Pedagogy Curriculum, was merely 58 total students. In comparison, for the year 2008-2009 a total of 543 students were enrolled in that Pedagogy Curriculum -- a drastic reduction of almost 1,000% in a short span of ten (10) years. Not only is the intended Freeze and other pension reductions a slap in the face to the teachers who have dedicated their lives to educating our children, but it will result in unnecessary and drastic harm to the very system of education as an essential service and will exacerbate the already dismal numbers in undergraduate students willing to enroll and become teachers in the future.

### III.   THE PROPOSED PLAN VIOLATES THE BEST INTERESTS TEST

34.   Unlike the "best interests test" prescribed by section 1129 of the Bankruptcy Code, in a municipal bankruptcy there is no possibility of conversion into a liquidation. *See In re City of Stockton, California*, 542 B.R. 261, 284 (B.A.P. 9th Cir. 2015). In order to approve a plan of adjustment, a municipality must  "provide a better alternative for creditors than what they already have." *In re City of Detroit*, 524 B.R. 147, 213 (Bankr. E.D. Mich. 2014); *Matter of Sanitary & Imp. Dist.*, No. 7, 98 B.R. 970, 974 (Bankr. D. Neb. 1989) (the Court must "make a determination of whether or not the plan as proposed is better than the alternatives"). The Proposed Plan does not demonstrate how it provides teachers with anything resembling a "better alternative." Today, teachers have a constitutionally protected right to their Defined Benefit pension; if the Proposed Plan is confirmed, they do not.

35.   In addition to falling far short of the confirmation standards set forth in the Bankruptcy Code as adopted in PROMESA, the Proposed Plan fails the teachers as a humanitarian

matter.  Teachers in Puerto Rico, although consummate professionals, are paid meager wages.  As the Board acknowledged in its Fiscal Plan, as of 2019, the teachers had not received a raise in almost a decade. (*See Disclosure Statement for the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Docket No. 11947] Ex. E at 90).  Teachers are not compensated for the higher education courses and degrees they pursue to better serve the student population.  Teachers receive a mere $120 a month as a medical contribution from the government.  Unlike most of the other government employees in Puerto Rico, teachers have never been afforded social security benefits.  Even now, as the Oversight Board proposes to enroll the teachers in social security upon the Effective Date, it is with the knowledge that it is too late in the careers of many of the teachers for them to ever receive any appreciable benefit from the social security system.  Moreover, the prospect that the social security program will be up and running for teachers on the Effective Date is as remote as the notion that Defined Contribution accounts will be open for them then; indeed, it took *more than three years* to open such accounts for the rest of the government employees following the enactment of Act 106, and only after certain unions (including AMPR) commenced litigation to enforce that law. *See American Federation of Teachers, AFL-CIO et ano. v. The Commonwealth of Puerto Rico, et al.*, Adv. Pro. No. 17-BK-03283-LTS*, Joint Status Report [Docket No. 38] (noting that as of June 22, 2020, "the Retirement Accounts had *finally* been created" three years after the law went into effect) (emphasis added).  Thus, under the Proposed Plan, teachers who relied upon their retirement benefits as a sacred right in the face of their minimal other benefits and compensation will be deprived of that right on the Effective Date, with no valuable substitute then or in the foreseeable future. Even more egregious is that the teachers are being subjected not just to the onerous Freeze, but also, *in addition to the Freeze*, to the same cut in benefits as are all other classes of government employees.  (*See* Proposed Plan at § 55.9).

36.     There is a reason that the teachers have expressed their strong opposition to the Freeze: it is offensive to these dedicated public servants, who on their own cleaned debris from classrooms after Hurricane Maria and taught and tended to their students outside unstable schools following the earthquakes that hit the island two years ago. Imposing the Freeze is no way to show respect for these individuals who, for example, buy their own school supplies when none are available, and who educate the students above and beyond the call of duty.

37.     Lastly, the Oversight Board assumes in the forecast of savings from the Freeze in the Proposed Plan and Disclosure Statement that a large number of teachers that are currently eligible to retire either in December 2021 or May 2022 would continue to work after the Freeze is imposed, rather than retiring. As of September 2021, at least 6,241 teachers had already reach the retirement milestones of at least 25 years of service and 47 years of age and/or 60 years of age and 10 years of service (pursuant to TRS census of September 2021). If 5,000 teachers were to retire *en masse* upon implementation of the Freeze, not only would the forecasted savings from the Freeze be largely negated, but the *en masse* retirement would provoke an undue stress in the fragile education system of Puerto Rico and could prompt its collapse. Moreover, such an *en masse* retirement could not be mitigated with new graduates from what was the largest Pedagogy Curriculum, because the average number of enrolled students from the year 2016 to the year 2019 is less than 155 students per year. Confirmation of the Proposed Plan and implementation of the Freeze on the teachers' retirement benefits would mortgage Puerto Rico's youth for decades.

## IV.    THE CONFIRMATION ORDER SHOULD PROVIDE THAT TEACHERS' GRIEVANCE CLAIMS ARE TO BE PAID IN THE ORDINARY COURSE

38.     On March 12, 2020, this Court issued its *Order (A) Authorizing Administrative Reconciliation of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* (the "ACR Order", Docket No. 12274), providing that claims arising from certain grievance

proceedings brought by union members, including members of AMPR, will be paid in the ordinary course and not under the Proposed Plan. *See* Proposed Plan at §1.1777(u)(excluding from "CW General Unsecured Claim" definition those claims being administered through ACT); §82.7 (expressly referencing ACR Order and, among other things, excluding such claims from treatment as general unsecured claims). The draft Confirmation Order (Docket No. 18477), however, does not incorporate the ACR Order. Accordingly, to eliminate any potential confusion or ambiguity, the Confirmation Order should expressly incorporate the ACR Order and reference section 82.7 of the Proposed Plan, in order to ensure that nothing in the Confirmation Order is interpreted as contrary to the ACR Order or the Proposed Plan.

## **<u>RESERVATION OF RIGHTS</u>**

39.     To the extent that this Court confirms the Proposed Plan over this Objection, AMPR reserves the right to file proofs of claim on behalf of its members for any damages arising from the rejection of its contractual right to pension benefits and to fully litigate such claims to their conclusion.

**WHEREFORE**, AMPR respectfully requests that this Court deny confirmation of the Proposed Plan and grant AMPR such other and further relief as this Court deems just and proper.

*[Remainder of page intentionally left blank.]*

Dated: October 19, 2021

/s/ José Luis Barrios Ramos
Jośe Luis Barrios-Ramos, ESQ.
USDC No. 223611
PRESTIGE LEGAL SERVICES, LLC
278 Ave. César González
San Juan, Puerto Rico 00918
Telephone: (787) 593-6641
jbarrios@prestigelegalpr.com

*Counsel to Asociacion de Maestros de
Puerto Rico and Asociacion de Maestros de
Puerto Rico -Local Sindical*