## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-03283 (LTS)<br><br>(Jointly Administered) |

## JOINT OBJECTION OF THE UNDERWRITER DEFENDANTS TO THE PLAN AND PROPOSED CONFIRMATION ORDER

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 4

    A.   The Underwriter Actions. ...................................................................................... 4

    B.   The Seventh Amended Plan. ................................................................................... 5

    C.   The Proposed Confirmation Order. ......................................................................... 6

OBJECTION ........................................................................................................................... 7

I.    The Plan And Proposed Confirmation Order Cannot Bar The Underwriter Defendants'
Defenses. .............................................................................................................................. 8

II.   The Plan And Proposed Confirmation Order Cannot Bar Rights Of Setoff Or Recoupment. 8

III.  The Non-Consensual Releases Of Defensive Rights Fails The Test For Approval Of Third-
Party Releases. ................................................................................................................... 10

IV.  The Plan Fails The "Best Interests" Test If There Are Non-Consensual Releases Of
Defensive Rights. ............................................................................................................... 13

CONCLUSION ..................................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beaucage v. United States (In re Beaucage)*,
   334 B.R. 353 (Bankr. D. Mass. 2005) ...................................................................9

*Carolco Television Inc. v. Nat'l Broad. Co.*
*(In re De Laurentiis Entm't Grp. Inc.)*,
   963 F.2d 1269 (9th Cir. 1992) .........................................................................9

*In re Charles St. Afr. Methodist Episcopal Church of Bos.*,
   499 B.R. 66 (Bankr. D. Mass. 2013) ...........................................................10, 11

*In re Chi. Invs.*,
   *LLC*, 470 B.R. 32 (Bankr. D. Mass. 2012) ...............................................11

*In re City of Detroit*,
   524 B.R. 147 (Bankr. E.D. Mich. 2014) ...........................................................13

*Davidovich v. Welton (In re Davidovich)*,
   901 F. 2d 1533 (10th Cir. 1990) ...................................................................8, 9

*In re Ditech Holding Corp.*,
   606 B.R. 544 (Bankr. S.D.N.Y. 2019) ....................................................8, 9, 14

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   361 F. Supp. 3d 203 (D.P.R. 2019) .................................................................11

*In re Grove Instruments, Inc.*,
   573 B.R. 307 (Bankr. D. Mass. 2017) ...............................................................10

*Lee v. Schweiker*,
   739 F.2d 870 (3d Cir. 1984).............................................................................9

*In re Mahoney Hawkes, LLP*,
   289 B.R. 285 (Bankr. D. Mass. 2002) ...............................................................11

*In re Master Mortg. Inv. Fund, Inc.*,
   168 B.R. 930 (Bankr. W.D. Mo. 1994)....................................................10, 11, 12

*Nat'l Promoters & Servs. Inc. v. Multinational Life Ins. Co.*
*(In re Nat'l Promoters & Servs. Inc.)*,
   Case No. 12-01076 (ESL), 2020 WL 1685755 (Bankr. D.P.R. Apr. 6, 2020) .........................9

*In re Quincy Med. Ctr., Inc.*,
    No. 11-16394-MSH, 2011 WL 5592907 (Bankr. D. Mass. Nov. 16, 2011) .........................10

*In re Salem Suede, Inc.*,
    219 B.R. 922 (Bankr. D. Mass. 1998) ........................................................................7

*In re SunEdison, Inc.*,
    576 B.R. 453 (Bankr. S.D.N.Y. 2017) ........................................................................14

*United States v. Fleet Bank of Mass.*
*(In re Calore Express Co.)*,
    288 F.3d 22 (1st Cir. 2002) ........................................................................................8

*In re Wash. Mut., Inc.*,
    442 B.R. 314 (Bankr. D. Del. 2011) ...........................................................................11

## Statutes

11 U.S.C. § 506(a)(1) ...........................................................................................................9

11 U.S.C. § 524 ....................................................................................................................8

11 U.S.C. § 1126(g) ...........................................................................................................14

11 U.S.C. § 1129(a)(7) .......................................................................................................13

48 U.S.C. § 2174(b)(1) .........................................................................................................7

48 U.S.C. § 2174(b)(2) .........................................................................................................7

48 U.S.C. § 2174(b)(6) .......................................................................................................13

The Underwriter Defendants,[1] by and through their respective undersigned counsel, submit this joint objection (the "Objection") to the Debtors' Plan[2] and Proposed Confirmation Order.[3] In support of the Objection, the Underwriter Defendants respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Underwriter Defendants are certain banks, underwriters, and other professionals involved in the issuance and underwriting of certain PR Bonds.[4] The Underwriter Defendants support a Plan aimed at facilitating the Debtors' financial recovery that will benefit the millions of residents, employees, and retirees living in the Commonwealth and do not seek to hinder the significant progress that has been made in these Title III Cases.

2.      The Underwriter Defendants assert two objections herein that seek to preserve their Defensive Rights in litigation in the Title III Cases and Puerto Rico relating to the PR Bonds. Those "Defensive Rights" include the Underwriter Defendants' rights, remedies, and defenses in the four currently pending Underwriter Actions (defined below) and any Potential Future

---

[1] Each of the Underwriter Defendants that joins in this Objection is represented by separate counsel, and each hereby joins in the objections raised herein in its separate capacity.  Certain factual arguments raised herein do not apply to all Underwriter Defendants and each Underwriter Defendant joins in arguments only to the extent applicable to that Underwriter Defendant.  Other than as reflected in this Objection, no Underwriter Defendant acts, represents, or speaks on behalf of (or purports to act, represent or speak on behalf of) any other Underwriter Defendant or any other entities in connection with the Title III Cases.  Each Underwriter Defendant and the litigation(s) in which it has been named as a defendant are identified on **Exhibit A** attached hereto.

[2] *See Seventh Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico, Et Al.*, Docket No. 17627 (the "Plan"). Capitalized terms used but not defined in this Objection shall have the meanings ascribed to them in the Plan.

[3] Debtors filed a proposed *Order And Judgment Confirming Seventh Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico, Et Al.,* (the "Proposed Confirmation Order") attached as Exhibit A to the *Notice Of Filing Of Proposed Order And Judgment Confirming Seventh Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico, Et Al.*, Docket No. 18447.

[4] The "PR Bonds" are collectively certain bonds issued or guaranteed by the Commonwealth of Puerto Rico (the "Commonwealth") and its instrumentalities and agencies, including the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Public Buildings Authority ("PBA"), the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Infrastructure Financing Authority ("PRIFA"), and the Puerto Rico Convention Center District Authority ("CCDA").

Underwriter Actions (defined below), including rights of setoff and recoupment, reimbursement, apportionment of fault, and judgment reduction.  This Objection is necessary because the Plan and Proposed Confirmation Order are not consistent with the Debtors' statement to this Court in their Supplemental Disclosure Statement Reply that "***the Plan does not, and the Debtors do not intend to, limit the rights and defenses of the Underwriter Defendants***."[5]

3.      First, contradicting both the terms of the proposed Plan and their pledge not to limit the rights and defenses of the Underwriter Defendants, the Debtors included language in Paragraph 49(f) of the Proposed Confirmation Order[6] that may completely eviscerate the preservation of the Defensive Rights that the Debtors agreed to add in Section 92.2(f) of the Plan, without any consideration to the Underwriter Defendants or their consent.  Specifically, while Paragraph 49(f)

---

[5] *Supplement to Omnibus Reply of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority to Objections to Amended Joint Motion for Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures*, Docket No. 17277 (emphasis added).

[6] *See* Proposed Conformation Order ¶ 49(f) ("Underwriter Actions. Notwithstanding anything contained herein or in the Plan to the contrary, including, without limitation, Sections 92.2, 92.3 and 92.11 of the Plan, except as may be precluded pursuant to the provisions of PROMESA, nothing in the Plan, the Confirmation Order or any Plan-related document set forth in the Plan Supplement is intended, nor shall it be construed, to impair, alter, modify, diminish, prohibit, bar, restrain, enjoin, release, reduce, eliminate or limit the rights of the plaintiffs and defendants, including, without limitation, the parties to the Underwriter Actions, from asserting their respective rights, claims, causes of action and defenses in the Underwriter Actions, including, but not limited to, any Claims, defenses, Causes of Action, and rights of setoff or recoupment (to the extent available); ***provided, however, that, notwithstanding the foregoing, no party in the Underwriter Actions, including, without limitation, plaintiffs, defendants, and, to the extent named, third-party defendants, shall be permitted to assert: (i) against the Debtors or the Reorganized Debtors any Claim or Cause of Action that otherwise is barred or discharged pursuant to the Bar Date Orders, the Plan, and/or Confirmation Order; and/or (ii) against the Debtors, the Reorganized Debtors, PREPA, HTA, or any other party in the Underwriter Actions any Claims or counterclaims for indemnification, contribution, reimbursement, set-off or similar theories of recovery, which claims shall be deemed disallowed, barred, released and discharged in accordance with the terms and provisions of the Plan and the Confirmation Order. The parties in the Underwriter Actions shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting against the Debtors, the Reorganized Debtors, PREPA, and HTA any claims or counterclaims for indemnification, contribution, reimbursement, set-off or similar theories of recovery based upon, arising from or related to the Underwriter Actions, whether or not such Claim or counterclaim is or can be asserted in a court, an arbitration, an administrative agency or forum, or in any other manner***.")  Emphasis added to the language incorporated by the Debtors that is outside the terms agreed to by the Underwriter Defendants and the Debtors.

of the Proposed Confirmation Order initially tracks the agreed-upon language in Section 92.2(f) of the Plan, it then introduces a "provided, however, that notwithstanding the foregoing" clause that contradicts the Debtors' agreed-upon language in the Plan and appears to abrogate the Underwriter Defendants' Defensive Rights. As the insurer-plaintiffs in the Underwriter Actions seek to improperly shift liability onto the defendants in those Actions, preservation of the Defensive Rights in the Underwriter Actions is fair and appropriate (and necessary to ensure that the insurer-plaintiffs cannot unduly transfer their liabilities onto the Underwriter Defendants or seek double-recovery in contravention of the single satisfaction rule).

4.      The Proposed Confirmation Order should not contradict itself within the same sentence and prejudice the Underwriter Defendants' Defensive Rights. If the Debtors truly are seeking to break their pledge and impair the Underwriter Defendants' Defensive Rights, the Plan would impose improper non-consensual releases on the Underwriter Defendants, rendering the Plan unconfirmable. The Underwriter Defendants have proposed language to the Debtors that would both preserve their Defensive Rights and protect the Debtors against affirmative claims for monetary relief on discharged claims. The Debtors have not responded to that proposal.

5.      Second, the Underwriter Defendants object to the Plan because it does not preserve the Underwriter Defendants' Defensive Rights in Potential Future Underwriter Actions.[7] While Section 92.2(f) of the Plan does preserve the Underwriter Defendants' Defensive Rights in the existing Underwriter Actions,[8] for some undisclosed reason, the Debtors refuse to also explicitly preserve the Underwriter Defendants' Defensive Rights in Potential Future Underwriter Actions

---

[7] The "Potential Future Underwriter Actions" include future litigations (if any) against one or more of the defendants in the Underwriter Actions concerning or relating to debt or bonds underwritten for or on behalf of any Debtor, any Affiliate of any Debtor, or any Government Entity.

[8] As defined in Paragraph 7, *infra*.

that also relate to the PR Bonds. By failing to preserve the Defensive Rights in Potential Future Underwriter Actions, the Plan imposes an improper non-consensual release upon the Underwriter Defendants, rendering the Plan unconfirmable. The Underwriter Defendants have also proposed language to the Debtors that would address this concern, to which the Debtors have not responded.

6. As more fully set forth herein, the Court should deny confirmation of the Plan absent modifications to the Plan and the Proposed Confirmation Order (to clearly preserve the Defensive Rights), substantially in the form attached hereto as **Exhibit B** (changes to the Plan to address Potential Future Underwriter Actions), and **Exhibit C** (changes to the Proposed Confirmation Order to preserve the Defensive Rights).

## **BACKGROUND**

### A. **The Underwriter Actions**.[9]

7. Since 2019, the Underwriter Defendants have been named in one or more litigations that seek to hold them liable for alleged wrongdoing in connection with the issuance and underwriting of certain PR Bonds, including: (1) the SCC Action[10] filed on May 2, 2019 by the Special Claims Committee and the Creditors' Committee ("Committee Plaintiffs"); (2) the National Action[11] filed on August 8, 2019 by National Public Finance Guarantee Corporation and MBIA Insurance Corporation (together, "National"); (3) the Ambac Action[12] filed on February

---

[9] Further information regarding the Underwriter Actions is set forth in the *Joint Objection Of Underwriter Defendants To Debtors' Motion For An Order Approving Disclosure Statement* ("Disclosure Statement Objection") ¶¶ 7-12, Docket No. 16987.

[10] The "SCC Action" is the case captioned *Special Claims Committee v. Barclays Capital et al.*, Adv. Pro. No. 19-00280 (LTS) (D.P.R.).

[11] The "National Action" is the case captioned *National Public Finance Guarantee Corp. et al., v. UBS Financial Services, Inc. et al.*, Estado Libre Asociado de Puerto Rico, Sala Superior de San Juan, Civil No. SJ2019CV07932.

[12] The "Ambac Action" is the case captioned *Ambac Assurance Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc. et al.*, Estado Libre Asociado de Puerto Rico, Sala Superior de San Juan, Civil No. SJ2020CV01505. The Ambac Action was dismissed on July 30, 2021, and Ambac's motion for reconsideration was denied on August 16, 2021. *See id.* at Docket Nos. 164, 166. On September 16, 2021, Ambac appealed the dismissal of the Ambac Action. *See id.* at Docket No. 167.

19, 2020 by Ambac Assurance Corporation ("<u>Ambac</u>"); and (4) the FGIC Action[13] filed on

November 25, 2020 by Financial Guaranty Insurance Company ("<u>FGIC</u>") (together, the SCC

Action, the National Action, the Ambac Action, and the FGIC Action are the "<u>Underwriter</u>

<u>Actions</u>").[14]

> **B.**     **<u>The Seventh Amended Plan</u>.**

8.     On July 30, 2021, the Debtors filed the Plan.

9.     Section 92.2(f) of the Plan memorializes agreed upon language between the

Underwriter Defendants and the Debtors that was drafted to ensure that the Plan does not impede

the Defensive Rights.  Thus, Section 92.2(f) of the Plan states:

> [N]othing in the Plan, the Confirmation Order or any Plan-related document set
> forth in the Plan Supplement is intended, nor shall it be construed, to impair, alter,
> modify, diminish, prohibit, bar, restrain, enjoin, release, reduce, eliminate or limit
> the rights of the plaintiffs and defendants, including, without limitation, the parties
> to the Underwriter Actions, ***from asserting their respective rights, claims, causes
> of action or defenses in the Underwriter Actions, including, but not limited to,
> any Claims, defenses, Causes of Action, and rights of setoff or recoupment (to
> the extent available)***.

10.     However, Section 92.2(f) inexplicably creates a potential gap with respect to the

preservation of Defensive Rights in Potential Future Underwriter Actions.   Although the

Underwriter Defendants specifically requested that the Debtors add language to preserve those

Defensive Rights in the Plan in their Disclosure Statement Objection, and again repeatedly prior

to filing this Objection, the Debtors have neither agreed to do so nor explained their reasons for

refusing to do so.

---

[13] The "<u>FGIC Action</u>" is the case captioned *Financial Guaranty Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc. et al.*, Estado Libre Asociado de Puerto Rico, Sala Superior de San Juan, Civil No. SJ2020CV06383.  The FGIC Action was dismissed on July 9, 2021, and FGIC's motion for reconsideration was denied on August 19, 2021.  *See id.* at Docket Nos. 62, 66.  On September 20, 2021, FGIC appealed the dismissal of the FGIC Action.  *See id.* at Docket No. 67.

[14] **<u>Exhibit A</u>** attached hereto identifies which of the Underwriter Defendants are named in each Underwriter Actions.

11.     Without additional language preserving the Defensive Rights in Potential Future Underwriter Actions, Sections 92.2(a),[15] 92.2(b),[16] 92.3,[17] 92.9,[18] and 92.11[19] of the Plan may be read to impair improperly the Defensive Rights of the Underwriter Defendants in the Potential Future Underwriter Actions without the Underwriter Defendants' consent.

### C.     **The Proposed Confirmation Order**.

12.     On October 8, 2021, the Debtors filed the Proposed Confirmation Order.

13.     Paragraph 49(f) of the Proposed Confirmation Order bars the Underwriter Defendants from asserting "counterclaims for indemnification, contribution, reimbursement, set-off or similar theories of recovery"[20] against "Debtors, the Reorganized Debtors, PREPA, HTA, or any other party in the Underwriter Actions."[21]

14.     Contrary to the Debtors' commitment to preserve the Defensive Rights, as well as the agreed-upon language concerning existing Underwriter Actions in Section 92.2(f) of the Plan, the language in the Proposed Confirmation Order directly contradicts the Debtors' pledge, and may abrogate the Underwriter Defendants' Defensive Rights in the Underwriter Actions under Section 92.2(f) of the Plan.

15.     Indeed, the language in the Proposed Confirmation Order may impair the assertion of Defensive Rights in the National Action, Ambac Action, and FGIC Action.  As set forth herein, there is no basis for restricting the Underwriter Defendants' Defensive Rights in these Actions.

---

[15] Plan § 92.2(a) (Discharge and Release of Claims and Causes of Action)

[16] Plan § 92.2(b) (Discharge and Release of Claims and Causes of Action)

[17] Plan § 92.3 (Injunction of Claims)

[18] Plan § 92.9 (Bar Order)

[19] Plan § 92.11 (Supplemental Injunction)

[20] Proposed Conformation Order ¶ 49(f).

[21] Proposed Conformation Order ¶ 49(f).

16.     The Underwriter Defendants have no objection to the Debtors adding mutually acceptable language to the Proposed Confirmation Order clarifying that the Underwriter Defendants may not seek to obtain any affirmative monetary recovery from the Debtors, the Reorganized Debtors, PREPA and/or HTA.  However, as currently drafted Paragraph 49(f) of the Proposed Confirmation Order goes beyond that limitation, and may be read as a non-consensual unilateral release that impairs the Underwriter Defendants' Defensive Rights.

## **OBJECTION**

17.     To confirm the Plan, the Debtors must show that the Plan complies with the applicable provisions of title 11 of the Bankruptcy Code, made applicable to this case by Section 301 of PROMESA.  *See* 48 U.S.C. § 2174(b)(1).  Additionally, the Debtors must show that the Plan complies with the provisions of title III of PROMESA.  48 U.S.C. § 2174(b)(2).  The Debtors, as plan proponent, bear the burden of proving that the Plan satisfies all of these prerequisites by a preponderance of the evidence.  *See In re Salem Suede, Inc.,* 219 B.R. 922, 932 (Bankr. D. Mass. 1998).

18.     As it pertains to the Underwriter Defendants, the Debtors have not met this burden. The Plan, now augmented by the Proposed Confirmation Order, is unconfirmable as to the Underwriter Defendants for at least four reasons:  (i) the Plan may improperly seek to eliminate defenses that survive a bankruptcy discharge; (ii) the Plan seeks to bar impermissibly the Underwriter Defendants from asserting setoff or recoupment rights; (iii) the non-consensual releases of Defensive Rights fails to meet the standard required for approval of non-consensual third-party releases; and (iv) impairment of the Defensive Rights causes the Plan to fail the "best interests" test.

I.      **The Plan And Proposed Confirmation Order
        Cannot Bar The Underwriter Defendants' Defenses.**

19.      The Defensive Rights, which include rights of recoupment, setoff, and other

defenses and allocations of liability in the Underwriter Actions and Potential Future Underwriter

Actions, must survive discharge under Bankruptcy Code Section 524, provided that doing so

would not result in an affirmative recovery against the discharged debtor. *See e.g.*, *United States*

*v. Fleet Bank of Mass. (In re Calore Express Co.)*, 288 F.3d 22, 37-38 (1st Cir. 2002) (observing

that there is authority under the Bankruptcy Code to allow a creditor to exercise a pre-petition right

of setoff after the court has granted a discharge or confirmed a plan of reorganization) (citing

*Davidovich v. Welton (In re Davidovich)*, 901 F. 2d 1533, 1539 (10th Cir. 1990).

20.      Indeed, "defenses to enforcement, such as recoupment, cannot be extinguished in

bankruptcy—whether through a sale or discharged under a plan—because they are neither 'claims'

nor 'debts,' nor 'interests.'" *In re Ditech Holding Corp.*, 606 B.R. 544, 596 (Bankr. S.D.N.Y.

2019) (collecting cases).

21.      Here, the Plan and Proposed Confirmation Order as currently drafted may

improperly impair the Defensive Rights in contravention of the well-established principles of law

that defenses may not be extinguished under a plan.  Unless modified, this renders the Plan

unconfirmable.

II.     **The Plan And Proposed Confirmation Order
        Cannot Bar Rights Of Setoff Or Recoupment.**

22.      As noted above, Paragraph 49(f) of the Proposed Confirmation Order may bar the

Underwriter Defendants' ability to assert "counterclaims for indemnification, contribution,

reimbursement, set-off or similar theories of recovery" against "the Debtors, the Reorganized

Debtors, PREPA, HTA, or any other party in the Underwriter Actions."  Proposed Confirmation

Order ¶ 49(f).

23.     To the extent it bars Underwriter Defendants' rights in this way, the provision is incompatible with the majority view that confirmation of a plan does not bar rights of setoff or recoupment.  5 COLLIER ON BANKRUPTCY ¶ 553.08[1]; *accord Carolco Television Inc. v. Nat'l Broad. Co. (In re De Laurentiis Entm't Grp. Inc.)*, 963 F.2d 1269, 1276-77 (9th Cir. 1992) (holding that a creditor's setoff right against the debtor survives a discharge); *In re Davidovich*, 901 F.2d at 1539 ("[T]he right to assert a setoff against a mutual, prepetition debt owed the bankruptcy estate survives even the Bankruptcy Court's discharge of the bankrupt's debts."); *Ditech*, 606 B.R. at 596 (recoupment rights "cannot be extinguished in bankruptcy—whether through a sale or discharge under a plan—because they are neither 'claims' nor 'debts,' nor interests'").

24.     Under the Bankruptcy Code, rights of setoff are treated as secured claims that cannot be unilaterally stripped or rendered unsecured.  11 U.S.C. § 506(a)(1); *see Beaucage v. United States (In re Beaucage)*, 334 B.R. 353, 359 (Bankr. D. Mass. 2005) (recognizing holder of setoff claim is the equivalent of a secured creditor and is entitled to adequate protection of its interest); *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984) ("Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, prepetition claim against the creditor.").

25.     This is true even if a proof of claim asserting setoff rights or recoupment as affirmative defenses has not been filed.  *Nat'l Promoters & Servs. Inc. v. Multinational Life Ins. Co. (In re Nat'l Promoters & Servs. Inc.)*, Case No. 12-01076 (ESL), 2020 WL 1685755, at *15 (Bankr. D.P.R. Apr. 6, 2020).

26.     Accordingly, given the Proposed Confirmation Order may unilaterally extinguish rights of setoff or recoupment, it should be modified as set forth herein to clarify that the Underwriter Defendants' rights to setoff and recoupment are preserved.

### III.    The Non-Consensual Releases Of Defensive Rights
### Fails The Test For Approval Of Third-Party Releases.

27.    Whether the Plan may broadly eliminate all Defensive Rights on a potential reading of the Proposed Confirmation Order or if the impairment should instead be read as limited to the Potential Future Underwriter Actions, ***any*** non-consensual release of Defensive Rights must fail because the Debtors cannot establish that the conditions for approval of non-consensual third-party releases are met here.

28.    The First Circuit has not directly ruled on the permissibility of non-consensual third-party releases under a plan.  Tellingly, courts within the First Circuit have either denied such releases entirely or limited their scope.  *See In re Quincy Med. Ctr., Inc.*, No. 11-16394-MSH, 2011 WL 5592907, at *4 (Bankr. D. Mass. Nov. 16, 2011) ("[O]nly consensual releases are permissible."); *In re Charles St. Afr. Methodist Episcopal Church of Bos.*, 499 B.R. 66, 102 (Bankr. D. Mass. 2013) ("I do not hold that no nonconsensual release, however narrowly tailored and otherwise justified, can ever be approved.  Certainly, however, no nonconsensual release can be approved where the plan does not replace what it releases with something of indubitably equivalent value to the affected creditor.").  Courts advise that third-party releases should be allowed only in "extraordinary circumstances."  *In re Grove Instruments, Inc.*, 573 B.R. 307, 314 (Bankr. D. Mass. 2017) (collecting cases).

29.    In evaluating the propriety of a proposed non-consensual third party release, courts within the First Circuit have applied the multi-factor test set forth in *In re Master Mortg. Inv Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994), which requires that:

> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate.

10

(2) The non-debtor has contributed substantial assets to the reorganization.

(3) The injunction is essential to the reorganization. . . .

(4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment.

(5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*See, e.g.*, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 361 F. Supp. 3d 203, 254 (D.P.R. 2019) (observing that *Master Mtg. Inv. Fund, Inc.* enumerated various factors to consider in approving consensual third-party releases) (subsequent history omitted); *accord Charles St.*, 499 B.R. at 100 (noting that *Master Mortgage* factors are useful considerations in assessing the propriety of a proposed release).

30.   However, "'[t]hese factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness.'"  *In re Chi. Invs.*, *LLC*, 470 B.R. 32, 95 (Bankr. D. Mass. 2012) (quoting *In re Wash. Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011)).

31.   Here, the proposed non-consensual third-party releases do not satisfy *any* of the *Master Mortgage* factors, and the inclusion of these releases therefore renders the Plan unconfirmable.

32.   <u>First</u>, there is no identity of interests like an indemnity relationship between the non-Debtor plaintiffs in the Underwriter Actions or Potential Future Underwriter Actions and the Debtors.  Preservation of the Defensive Rights would not result in any affirmative recovery against the Debtors or deplete the Debtors' estates.  *See In re Mahoney Hawkes, LLP*, 289 B.R. 285, 300 (Bankr. D. Mass. 2002) (finding first *Master Mortgage* factor not met because a suit against

proposed released party would not deplete the debtor's estate).  Accordingly, the first *Master Mortgage* factor is not satisfied.

33.     Second, the Debtors have not demonstrated that the non-Debtor plaintiffs in Underwriter Actions or Potential Future Underwriter Actions have provided any consideration (or in the case of National's commitments under the Proposed Confirmation Order, sufficient consideration)[22] to the Debtors' estates in exchange for the Non-Consensual Releases.  Thus, the second *Master Mortgage* factor is not met.

34.     Third, the non-consensual third-party releases do not serve any apparent function other than potentially to impair the Defensive Rights.  The Defensive Rights have no conceivable effect that extends beyond the Underwriter Actions and Potential Future Underwriter Actions. They serve solely as an allocation and judgment reduction mechanism in the event that any defendant is found liable in, or agrees to pay judgment in, the Underwriter Actions or Potential Future Underwriter Actions.  Simply put, the non-consensual release of the Defensive Rights is not essential to the Plan, and therefore, the third *Master Mortgage* factor test is not satisfied.

35.     Fourth, the Underwriter Defendants unequivocally do not support the non-consensual third-party releases.  Therefore, the fourth *Master Mortgage* factor is not satisfied.

36.     Fifth, the Plan does not provide for any consideration in exchange for the non-consensual third-party releases of the Defensive Rights.  Accordingly, the fifth *Master Mortgage* factor is not satisfied.

---

[22] Pursuant to Paragraph 35 of the Proposed Confirmation Order, National agreed to "(A) indemnify and hold the CW Entities harmless to the extent of the CW Entities' liability pursuant to a Final Order or settlement as a result of the National Action, and (B) reimburse the relevant CW Entities for fees and expenses incurred in connection with the defense against such CW Entities' Claims, including without limitation, attorneys' fees and expenses incurred." Proposed Confirmation Order ¶ 35.  The Debtors have not argued that National's commitments under the Proposed Confirmation Order are sufficient consideration to justify the potential non-consensual release of the Defensive Rights, and respectfully National's contingent commitment is not a contribution of substantial assets to the reorganization justifying a non-consensual release of the Defensive Rights.

37.     In sum, there is no basis for this Court to approve the Plan or Proposed Confirmation Order containing non-consensual third-party releases of the Underwriter Defendants' Defensive Rights.  Unless modified as set forth herein, the Plan and Proposed Confirmation Order are fatally flawed.

### IV.     The Plan Fails The "Best Interests" Test If There Are Non-Consensual Releases Of Defensive Rights.

38.     To the extent that the Plan would impair the Underwriter Defendants' Defensive Rights, the Plan cannot be confirmed because it would not satisfy the "best interests" test as it relates to the Underwriter Defendants.

39.     Section 314(b)(6) of PROMESA provides that the "court shall confirm the plan if—the plan is feasible and in the best interests of creditors, which shall require the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for creditors than is provided by such plan[.]"  48 U.S.C. § 2174(b)(6).

40.     Although there are no reported decisions of the "best interests" test under PROMESA, several decisions in the chapter 11 context hold that a plan with non-consensual releases fails the best interests test and cannot be confirmed.[23]

41.     For example, in *In re Quigley Co., Inc.*, the court considered how distributions to

---

[23] The application of the best interests tests varies between the chapter 9 and chapter 11 contexts.  In the chapter 9 context, courts will apply the best interests test to creditors as a whole, rather than on an individual basis.  *In re City of Detroit*, 524 B.R. 147, 149-170 (Bankr. E.D. Mich. 2014).  The Underwriter Defendants are not arguing that the Plan as a whole is not in the best interests of all creditors, but respectfully submit that the Court can resolve the Plan's infirmities with respect to the Underwriter Defendants without impacting the interests of other creditors.  In the chapter 11 context, a plan can only be confirmed if impaired creditors that have rejected the plan "will receive or retain under the plan on account of such claim or interest, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date."  11 U.S.C. § 1129(a)(7).  Although there is no liquidation alternative in PROMESA, the principles found in *Quigley*, *Ditech*, and *SunEdison* are instructive and directly on point because all 3 cases discussed application of the best interests test in the context of impairment of litigation rights.

impaired creditors would be impacted under the chapter 11 plan or in a liquidation.  437 B.R. 102, 144-147  (Bankr. S.D.N.Y. 2010).  Noting that impaired creditors would retain certain litigation rights against third parties in a liquidation, the *Quigley* court held that the proposed plan failed the best interests test.  *Id*. at 147.

42.     Several courts have followed *Quigley*'s reasoning and held that a plan that provides for the relinquishment of third-party litigation rights is unconfirmable because it fails the best interests test.  *E.g.*, *Ditech*, 606 B.R. at 614 (holding that plan failed the best interests test because liquidation analysis should have accounted for impaired creditors' third-party litigation rights because those claims had "value"); *In re SunEdison, Inc.*, 576 B.R. 453, 457 n.4 (Bankr. S.D.N.Y. 2017) (plan that provided for nonconsensual releases of creditors deemed to reject the plan pursuant to 11 U.S.C. § 1126(g) "would violate the best interests test . . . and render the Plan unconfirmable").

43.     Here, the ability of the Underwriter Defendants to defend themselves in the Underwriter Actions and the Potential Future Underwriter Actions may be significantly impaired under the Plan and Proposed Confirmation Order as presently drafted.  As the Underwriter Defendants stand to receive nothing in exchange for the non-consensual releases of Defensive Rights, they are worse off than if the Plan were not confirmed.  Accordingly, the Plan fails the best interests test and cannot be confirmed with non-consensual releases of Defensive Rights.

## **CONCLUSION**

**WHEREFORE**, the Underwriter Defendants respectfully request this Court:  (i) deny confirmation of the Plan absent modifications to the Plan and Proposed Confirmation Order, substantially in the form provided on **Exhibits B and C** attached hereto; and (ii) grant such other

further relief as this Court deems just and proper.

Dated: October  19, 2021

**GOODWIN PROCTER LLP**

/s/ Douglas H. Flaum
Douglas H. Flaum (*Pro Hac Vice*)
Charles A. Brown (*Pro Hac Vice*)
Howard S. Steel (*Pro Hac Vice*)
Stacy A. Dasaro (*Pro Hac Vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
Fax: (212) 355-3333
E-mail: dflaum@goodwinlaw.com
E-mail: cbrown@goodwinlaw.com
E-mail: hsteel@goodwinlaw.com
E-mail: sdasaro@goodwinlaw.com

*Counsel for Goldman Sachs & Co. LLC*

**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP**

/s/ Julie E. Cohen
Julie E. Cohen (*Pro Hac Vice*)
Four Times Square
 New York, NY 10018
Telephone: (212) 735-3000
Fax: (212) 735-2000
E-mail: julie.cohen@skadden.com

*Counsel for Morgan Stanley & Co. LLC*

**SIMPSON THACHER & BARTLETT LLP**

/s/ David Elbaum
John K. Youngwood (*Pro Hac Vice*)
David Elbaum (*Pro Hac Vice*)
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2861
Fax: (212) 455-2502
E-mail: jyoungwood@stblaw.com
E-mail: david.elbaum@stblaw.com

*Counsel to J.P. Morgan Securities LLC*

**CROWELL & MORING LLP**

/s/ Daniel L. Zelenko
Daniel L. Zelenko (*Pro Hac Vice*)
Sarah M. Gilbert (*Pro Hac Vice*)
590 Madison Avenue, 20th Floor
New York, NY 10022
Telephone: (212) 223-4000
Fax: (212) 223-4134
Email: dzelenko@crowell.com
Email: sgilbert@crowell.com

*Counsel for Santander Securities LLC*

**FRIEDMAN KAPLAN SEILER & ADELMAN
LLP**

/s/ Eric Seiler
Eric Seiler (*Pro Hac Vice*)
Anne E. Beaumont (*Pro Hac Vice*)
Danielle E. Tepper (*Pro Hac Vice*)
7 Times Square
New York, NY  10036
Telephone:  (212) 833-1100
E-mail:  eseiler@fklaw.com

**McGUIREWOODS LLP**

/s/ E. Andrew Southerling
E. Andrew Southerling (*Pro Hac Vice*)
2001 K Street N.W., Suite 400
Washington, DC 20006-1040
Telephone: (202) 857-1700
Fax: (202) 857-1737
E-mail: asoutherling@mcguirewoods.com

-and-

E-mail:  abeaumont@fklaw.com
E-mail:  dtepper@fklaw.com

*Counsel for Sidley Austin LLP*

Aaron G. McCollough (*Pro Hac Vice*)
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
Telephone: (312) 849-8256
Fax : (312) 698-4522
E-mail: amccollough@mcguirewoods.com

*Counsel for BMO Capital Markets GKST, Inc.*

**GOODWIN PROCTER LLP**

/s/ Marshall H. Fishman
Marshall H. Fishman (*Pro Hac Vice*)
Meghan K. Spillane (*Pro Hac Vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
Fax: (212) 355-3333
E-mail: mfishman@goodwinlaw.com
E-mail: mspillane@goodwinlaw.com

*Counsel for Citigroup Global Markets Inc.*

**KAYSER & REDFERN, LLP**

/s/ Leo Kayser III
Leo Kayser III (*Pro Hac Vice*)
515 Madison Avenue
New York, NY 10022
Telephone: 212-935-5057
E-mail: lkayser@515law.com

*Counsel for Samuel A. Ramirez & Co., Inc.*

**CHAPMAN AND CUTLER LLP**

 /s/ James H. Heiser
James M. Heiser (*Pro Hac Vice*)
111 West Monroe Street
Chicago, IL 60603-4080
Tel.: (312) 845-3000
Fax: (312) 701-2361
E-mail:  heiser@chapman.com

*Counsel to Mesirow Financial, Inc.*

**MORELL, CARTAGENA &
DAPENA LLC**

/s/ Ramón E. Dapena
Ramón E. Dapena
USDC-PR No. 125005
Iván Lladó
USDC-PR No. 302002
PO Box 13399
San Juan, Puerto Rico 00908
Telephone: (787) 723-1233
Fax: (787) 723-8763
Email: ramon.dapena@mbcdlaw.com
Email: ivanllado@mbcdlaw.com

**WINSTON & STRAWN LLP**

 /s/Carrie V. Hardman
Carrie V. Hardman (*Pro Hac Vice*)
200 Park Avenue
New York, NY 10166
Tel.: (212) 294-6700
Fax: (212) 294-4700
E-mail: chardman@winston.com

-and-

Joseph L. Motto  (*Pro Hac Vice*)
35 W. Wacker Drive
Chicago, IL 60601
Tel.: (312) 558-5600
Email: jmotto@winston.com

*Counsel to Merrill Lynch, Pierce, Fenner & Smith
Inc. and Merrill Lynch Capital Services, Inc.*

*Counsel for Goldman Sachs & Co. LLC
and Citigroup Global Markets Inc.*

**COTO & ASSOCIATES**
/s/ Ramón Coto-Ojeda
Ramón Coto-Ojeda (USDC-PR No. 202006)
MCS Plaza, Suite 800
255 Ponce de León Avenue
San Juan, Puerto Rico 00917
PO Box 71449
San Juan, PR 00936-8549
Telephone: (787) 756-9640
Fax: (787) 756-9641
E-mail: rco@crlawpr.com

*Counsel to Mesirow Financial, Inc.*

**SARLAW LLC**
/s/Sergio A. Ramírez de Arellano
Sergio A. Ramírez de Arellano
USDC-PR #126804
Banco Popular Center, Suite 1022
209 Muñoz Rivera Ave.
San Juan, PR 00918-1009
Telephone: (787) 765-2988
E-mail: sramirez@sarlaw.com

*Counsel for Sidley Austin LLP*

**NELSON ROBLES-DIAZ LAW OFFICES,
P.S.C.**
/s/ Nelson Robles-Díaz
Nelson Robles-Díaz, Esq.
USDCPR NO. 204410
P. O. Box 192302
San Juan, Puerto Rico 00919-2302
Tel.: (787) 294-9518
Fax: (787) 294-9519
Email: nroblesdiaz@gmail.com

*Counsel for Santander Securities LLC*

**BOBONIS, BOBONIS & RODRIGUEZ
POVENTUD**
/s/ Enrique G. Figueroa-Llinás
Enrique G. Figueroa-Llinás USDC No. 201709
129 de Diego Ave.
San Juan, Puerto Rico 00911-1927
Tel: (787) 725-7941
Fax: (787) 725-4245
Email: efl@bobonislaw.com

*Counsel for Merrill Lynch, Pierce, Fenner & Smith
Inc. and Merrill Lynch Capital Services, Inc.*

**NAVARRO-CABRER LAW OFFICES**
/s/ Nilda M. Navarro-Cabrer
Nilda M. Navarro-Cabrer
USDC-PR No. 201212
El Centro I, Suite 206
500 Muñoz Rivera Ave.
San Juan, Puerto Rico 00918
Telephone: (787) 764-9595
Fax: F. 787.764.7575
E-mail: navarro@navarrolawpr.com

*Counsel to BMO Capital Markets GKST, Inc.*

**SALDAÑA, CARVAJAL & VÉLEZ-RIVÉ,
P.S.C.**
/s/ Ángel E. Rotger-Sabat
Luis N. Saldaña-Román
USDC-PR No. 208001
Ángel E. Rotger-Sabat
USDC-P.R. No. 208601
166 Avenida de la Constitución
San Juan, Puerto Rico 00901
Telephone: (787) 289-9250
Fax: (787) 289-9253
E-mail: lsaldana@scvrlaw.com
E-mail: arotger@scvrlaw.com

*Counsel for Morgan Stanley & Co. LLC*

17

**ANTONETTI, MONTALVO & RAMÍREZ-COLL**

/s/ José L. Ramírez-Coll
José L. Ramírez-Coll
USDC-PR No. 221702
P.O. Box 13128
San Juan, Puerto Rico 00908
Telephone: (787) 977-0303
Fax: (787) 977-0323
jramirez@amrclaw.com

*Counsel for J.P. Morgan Securities LLC*


**ORRICK, HERRINGTON & SUTCLIFFE LLP**

/s/ Robert Stern
Robert Stern (*Pro Hac Vice*)
Tiffany Rowe (*Pro Hac Vice*)
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-8400
RStern@orrick.com
TRowe@orrick.com

*Counsel for RBC Capital Markets, LLC*


**McCONNELL VALDÉS LLC**

/s/ Roberto C. Quiñones-Rivera
Roberto C. Quiñones-Rivera, Esq.
USDC-PR Bar No. 211512
270 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
Telephone: (787) 250-2631
Fax: (787) 759-9225
E-mail: rcq@mcvpr.com

*Counsel for Samuel A. Ramirez & Co., Inc., Barclays Capital Inc., RBC Capital Markets, LLC and Raymond James & Associates, Inc.*

## Exhibit A

| Defendant | SCC Action | FGIC Action | National Action | Ambac Action |
|---|:---:|:---:|:---:|:---:|
| Barclays Capital Inc. | ✓ | | | |
| BMO Capital Markets GKST Inc. | ✓ | | | |
| Citigroup Global Markets Inc. | ✓ | ✓ | ✓ | ✓ |
| Goldman Sachs & Co. LLC | ✓ | ✓ | ✓ | ✓ |
| J.P. Morgan Securities LLC | ✓ | ✓ | ✓ | ✓ |
| Merrill Lynch, Pierce, Fenner & Smith Inc. | | ✓ | ✓ | ✓ |
| Merrill Lynch Capital Services, Inc. | ✓ | | | |
| Mesirow Financial, Inc. | ✓ | | | |
| Morgan Stanley & Co. LLC | ✓ | ✓ | ✓ | ✓ |
| Raymond James & Associates, Inc. | ✓ | ✓ | | ✓ |
| RBC Capital Markets, LLC | ✓ | | | |
| Samuel A. Ramirez & Co., Inc. | ✓ | ✓ | | ✓ |
| Santander Securities LLC | ✓ | ✓ | ✓ | ✓ |
| Sidley Austin LLP | ✓ | | | |

*The Amended Complaint filed in the SCC Action misidentifies various legal entities and incorrectly names as defendants other parties that were not involved in the issuances, underwritings or other matters implicated in the Amended Complaint – including but not limited to BofA Securities, Inc., BMO Capital Markets, Citigroup Inc., and JPMorgan Chase & Co. The incorrectly named parties, as well as the Underwriter Defendants joining this Objection, reserve all rights and defenses relating to Plaintiffs' incorrect identifications in any of the Complaints, including but not limited to defenses based upon lack of personal jurisdiction.

## **Exhibit B**

## **Proposed Plan Language**

**Revise Definition of Underwriter Actions in the Plan**

➤ **Underwriter Actions**: Collectively, the Ambac Action, the FGIC Action, the National Action, the SCC Action, or any action brought in the future in any state, federal or Commonwealth court, agency or tribunal against any of the defendants named in such litigations ~~by~~ **concerning or relating to debt or bonds underwritten for** or on behalf of ~~the plaintiffs therein concerning the claims or cases of action asserted therein~~ **any Debtor, any Affiliate of any Debtor, or any Government Entity**.

**Exhibit C**

**Proposed Confirmation Order Language**

**Revise Paragraph 49(f) of the Proposed Confirmation Order**

➤ <u>Underwriter Actions</u>. Notwithstanding anything contained herein or in the Plan to the contrary, including, without limitation, Sections 92.2, 92.3 and 92.11 of the Plan, except as may be precluded pursuant to the provisions of PROMESA, nothing in the Plan, the Confirmation Order or any Plan-related document set forth in the Plan Supplement is intended, nor shall it be construed, to impair, alter, modify, diminish, prohibit, bar, restrain, enjoin, release, reduce, eliminate or limit the rights of the plaintiffs and defendants, including, without limitation, the parties to the Underwriter Actions, from asserting their respective rights, claims, causes of action and defenses in the Underwriter Actions, including, but not limited to, any Claims, defenses, Causes of Action, and rights of setoff or recoupment (to the extent available); provided, however, that, notwithstanding the foregoing, no party in the Underwriter Actions, including, without limitation, plaintiffs, defendants, and, to the extent named, third-party defendants, shall be permitted to assert: (i) against the Debtors or the Reorganized Debtors any Claim or Cause of Action that otherwise is barred or discharged pursuant to the Bar Date Orders, the Plan, and/or Confirmation Order; and/or (ii) against the Debtors, the Reorganized Debtors, PREPA, HTA, or any other party in the Underwriter Actions any Claims or counterclaims for indemnification, contribution, reimbursement, set-off or similar theories of recovery, which claims shall be deemed disallowed, barred, released and discharged in accordance with the terms and provisions of the Plan and the Confirmation Order. The parties in the Underwriter Actions shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting against the **(the "Underwriter Defensive Rights"). The Underwriter Defensive Rights may be used to (i) offset, set-off, recoup, allocate or apportion fault, liability or damages, or seek judgment reduction or otherwise defend against any claim asserted in the Underwriter Actions against the parties to the Underwriter Actions and (ii) shall in no case be used to seek or obtain any affirmative monetary recovery from** Debtors, the Reorganized Debtors, PREPA, and HTA any claims or counterclaims for indemnification, contribution, reimbursement, set-off or similar theories of recovery based upon, arising from or related to the Underwriter Actions, whether or not such Claim or counterclaim is or can be asserted in a court, an arbitration, an administrative agency or forum, or in any other manner**.**