# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| As representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEE'S RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY, | |
| Debtors. | |

## OBJECTION TO CONFIRMATIONOF THE SEVENTH PLAN OF ADJUSTMENT AT DKT. NO. 17,627

Dated:        October 19, 2021

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................................ii-iv

**I.**   **SUMMARY OF THE ARGUMENT** ........................................................ 1-4

**II.**   **INTRODUCTION** ..................................................................... 4-10

**III.**   **DISCUSSION**..................................................................... 11-25

  **A.**   **The Commonwealth is constitutionally bound to pay just compensation for taking Suiza's property** ....................................................... 11-20

   **1.**   **The Fifth Amendment requires the Commonwealth to pay just compensation**.............................................................. 11-13

   **2.**   **The District Court was very clear in that the regulatory accruual at issue here is the remedy for the regulatory taking**...........................13-17

   **3.**   **Through the Settlement Agreement, the Commonwealth agreed to pay just compensation. Failure to honor the Settlement Agreement would render Suiza inadequately compensated for the property that was taken by ORIL** ..................................................................... 17-20

  **B.**   **The payments contemplated in the settlement are non-dischargeable**……............................................................ 20-23

  **C.The Plan of Adjustment incorrectly depicts the debt owed to Suiza in nature and amount**……..............................................................23-25

**IV.**   **CONCLUSION** ................................................................. 25-26

# TABLE OF AUTHORITIES

## United States Supreme Court

Duquesne Light Co. Barasch, 488 U.S. 299 (1989)…………………..12, 13 & 14

Edmond v. United States, 520 U.S. 651 (1997).......................................................22

First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,

   482 U.S. 304 (1987)........................................................................... 2, 12, 13 & 18

Jacobs v. U.S., 290 U.S. 13 (1933) ....................................................... 12, 13, 18, 19

Knick v. Township of Scott, 139 S.Ct. 2162 (2019) ......... 2, 12, 13, 18, 19, 21 & 24

Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935).......................21

Palazzolo v. Rhode Island, 533 U.S. 606 (2001)......................................................11

U.S. v. Security Indus. Bank, 459 U.S. 70 (1982)....................................................21

## United States Constitution

Commerce Clause art. 1 § 8……………………………………………………… 3, 5

Fifth Amendment; Takings Clause of the Constitution of the

   United States…………………………………....11, 12, 13, 19, 20, 21, 22, 25 & 26

Fourteenth Amendment ........................................................................................... 5

## United States Circuit Court of Appeals for the First Circuit

Fideicomiso de la Tierra del Caño Martín Peña v. Fortuño, 604 F.3d 7 (1st Cir.

   2010) ......................................................................................................11

Puerto Rico Dairy Farmers Ass'n v. Pagán, 748 F.3d 13 (1st Cir. 2014) ...........9, 10

Tenoco Oil Co., Inc. v. Department of Consumer Affairs, 876 F.2d 1013 (1st Cir.
1989) ................................................................................. 11, 12, 14 & 16

Vaquería Tres Monjitas, Inc. v. Pagán, 748 F.3d 21 (1st Cir. 2014)...... 7, 9, 10 & 18


**United States District Court for the District of Puerto Rico**

Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014)......2, 4, 5,
6, 7, 8, 9, 14

Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 472 (1st. Cir. 2009)……...7

Vaquería Tres Monjitas, Inc. v. Laboy, 2007 U.S. Dist. LEXIS 98950 *38 (D.P.R.
2007) ................................................................................. 6, 7, 12, 17


**Federal Laws**

11 U.S.C. § 944 ....................................................................... 20 & 23

Section 301 of Title III of PROMESA, 48 U.S.C. § 2161 ......................................20

Title III of PROMESA 48 U.S.C. §§ 2161-2177......................................................1


**Puerto Rico Laws**

Milk Industry Regulation Act, Act No. 34 of June 11, 1957, 5 P.R. Laws Ann. §§
1092-1125 ................................................................................2


**Other Federal Case Law**

In re City of Detroit, 524 B.R. 147 (E.D. MI. 2014) ..................................... 21 & 22

**Puerto Rico Regulations**

Regulation No. 1 of June 11, 1957 (Milk Regulation No. 1) ....................................2

**Federal Rules of Bankruptcy Procedure**

Fed. R. Bankr. P. 3020 ................................................................................................1

**TO THE HONORABLE COURT:**

**COMES NOW** creditor Suiza Dairy Corp. ("Suiza"), through the undersigned counsel and, pursuant to Fed. R. Bankr. P. 3020, presents its objection to confirmation of the Seventh Amended Plan of Adjustment ("Plan") proposed by the Financial Oversight and Management Board of Puerto Rico, filed on June 30, 2021 at Docket No. 17,627. The Plan as filed, is in contravention of the Takings Clause of the Constitution of the United States in regards to Suiza's claim against the Commonwealth, inasmuch as it impermissibly and unlawfully classifies and treats Suiza's claim, which is based on a federal takings determination, as subject to discharge under the Plan provisions. On those grounds, the Plan is unconfirmable under 11 U.S.C. §944 as incorporated by Title III of PROMESA 48 U.S.C. §§ 2161-2177 and §314(3) of Title III of PROMESA, 48 U.S.C. §2174, which requires that any plan of adjustment not be proposed in contravention of any law.  In support of its allegations, Suiza most respectfully states, alleges and prays as follows:

## I.      SUMMARY OF THE ARGUMENT

This objection to the approval of the Commonwealth's Plan of Adjustment seeks a finding that Suiza's regulatory accrual claims owed by the Commonwealth, through "any of its instrumentalities", are non-dischargeable and unimpaired by the filing of this Title III proceeding, since they involve judicially adjudicated violations of Suiza's constitutionally protected property rights.  A plan of adjustment under

1

PROMESA may not affect the constitutionally protected property rights nor affect the constitutional right to just compensation.  First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 315 (1987) ("[T]he [Supreme] Court has frequently repeated the view that, in the event of a taking, the compensation remedy is required by the Constitution."). As stated by Justice Thomas in its concurring opinion in the case of Knick v. Township of Scott, 139 S.Ct. 2162 (2019), if the requirement of enforcing the Takings clause of the U.S. Constitution "makes some regulatory programs unworkable in practice, so be it". [internal quotations ommited].

Suiza successfully challenged the constitutionality, as implemented, of the laws and regulations that govern the milk industry in Puerto Rico, particularly the Milk Industry Regulation Act, Act No. 34 of June 11, 1957, 5 P.R. Laws Ann. §§ 1092-1125 (Act 34) and Regulation No. 1 of June 11, 1957 (Milk Regulation No. 1) as subsequently amended, under the Takings Clause of the Constitution of the United States. Suiza sought declaratory and injunctive relief before the United States District Court for the District of Puerto Rico Civil Case No. 04-01840 (DRD) Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014).  On July 13, 2007 (Dkt. No. 480[1]) the district court entered its Amended Opinion and Order Granting Preliminary Injunction and in which the District Court found violations by

---

[1] See, Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007.

the Commonwealth to the Takings Clause, the Dormant Commerce Clause, the Due Process Clause and the Equal Protection Clause of the Constitution of the United States. In essence, the District Court held that the Commonwealth, through one of its instrumentalities, effected a regulatory taking from Suiza.  Part of the remedy granted in favor of Suiza is what is called "regulatory accrual" which consists of an amount to be added to the regulatory rate to be recovered prospectively to compensate a previous regulatory taking. On September 23, 2013 (Dkt. No. 2289) the District Court entered its Amended Opinion and Order *Nunc Pro Tunc*, addressing certain regulatory accrual issues. *Exhibit 2*.

On October 29, 2013 (Dkt. No. 2322), the parties to the action filed their Final Settlement Agreement And Memorandum Of Understanding Between The Parties (the "Settlement Agreement"). The Settlement Agreement incorporated a detailed mechanism for the Commonwealth of Puerto Rico to monitor the level of regulatory accrual in favor of Suiza Dairy, as well as the methodology used for its calculation in compliance with the July 13, 2007 Amended Opinion and Order Granting Preliminary Injunction. Pursuant to par. 11 of the settlement incorporated into the judgment ("Judgment"), the Commonwealth agreed to pay part of the regulatory accrual in installments directly from Commonwealth funds. The amount owed Suiza by the government was supposed to be paid by December 31, 2017. It was not.

3

The Plan, classifies Suiza as part of Class 53 and proposes to pay only fifty-percent (50%) of the constitutional debt owed to Suiza by the Commonwealth for violation of the Takings Clause of the Constitution.  In light of the above, the Plan, as proposed by the Commonwealth on June 30th, 2021, cannot be confirmed by the Court unless it is amended to pay the claim in full and/or to classify Suiza's claim as a non-dischargeable claim surviving these proceedings to be paid by the Commonwealth in full as required by the U.S. Constitution.

In addition, the Plan fails to properly inform creditors as to the correct nature of Suiza's claim, a regulatory taking claim, and improperly states the amount owed to Suiza.

## II.    INTRODUCTION

As provided by Puerto Rico law,[2] the Office of the Milk Industry Regulatory Administration[3] ("ORIL" by its Spanish acronym) regulates the price of milk at all levels within Puerto Rico.[4] Thus, milk prices are not set by each individual market participant, but rather mandated by ORIL.

However, these prices were not always rational. Before 2013, ORIL was not implementing a rational, non-discriminatory price regulatory system. Instead,

---

[2] Act 34 of June 11, 1957 as amended, P.R. Las Ann. Tit. 5 § § 1092-1118. *See,* Dkt. 480 Finding of Fact ("FF") ¶ 11 - Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.
[3] An instrumentality of the Government of Puerto Rico.
[4] Dkt. 480 FF ¶ 1- Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.

ORIL's regulations and practices favored some market participants while burdening others, to the point of effectively taking their property.[5] Therefore, on August 13, 2004, Suiza and Vaquería Tres Monjitas, Inc. ("Vaquería"), the fresh milk processing plants of Puerto Rico (together the "Plants"), jointly filed a complaint[6] challenging ORIL's unconstitutional regulatory taking of their property.

Under the Takings Clause of the United States Constitution, the Plants' complaint challenged the constitutionality of the implementation of Puerto Rico's laws and regulations that governed the milk industry.[7] The complaint identified a multitude of ways in which the actions and regulatory policies of ORIL had created a scenario in which the Plants, the only fresh milk processing plants in Puerto Rico,[8] were denied the opportunity to cover their costs and much less earn a reasonable profit.[9] For example, operating costs, such as fuel, electricity, and resin costs, had experienced significant increases, while sales volumes decreased without these realities being addressed in the rates.[10] These increases in costs were not met by a corresponding increase in the price of fresh milk during price reviews due to ORIL's

---

[5] Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014)
[6] Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014).
[7] The Plants' complaint also alleged that ORIL's regulatory structure violated their Fourteenth Amendment due process and equal protection rights and the dormant Commerce Clause, amongst others, and constituted a regulatory taking under the Constitution.
[8] Dkt. 480 FF ¶ 9 - Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.
[9] For example, the Plants were forced to pay an excessively high price to dairy farmers for the raw milk they purchased in order to subsidize the much lower price, insufficient to cover the farmers' production costs, paid by a Government-owned milk processing plant, Indulac under control of the dairy farmers. Id., FF ¶ 18.
[10] Dkt. 480 FF ¶¶ 41-42 - Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.

use of stale figures, disallowance of legitimate costs, and application of a rate of return which had no scientific basis.[11]

Also, ORIL's mandated price discrimination created a competitive advantage for Indulac,[12] allowing it to sell UHT products at a reduced price due to its subsidized costs. As an imperfect substitute to fresh milk,[13] Indulac's UHT products were able to secure market share in the fluid milk market at the expense of Suiza and Vaquería which they would not have been able to achieve but for the discriminatory practices of Oril.

The increase in costs borne by the Plants, paired with an inadequate price of fresh milk meant that the Plants' margins were reduced to the point that they had no way to recover their costs and earn a reasonable profit.[14] Thus, ***ORIL's regulatory scheme, which precluded the Plants from recovering costs and making a reasonable profit in their milk business, constituted a taking of property in violation of the Takings Claus***e.[15]

Pursuant to these claims, the Plants moved for a preliminary injunction to preclude ORIL from continuing to implement the complained-of regulatory practices and orders. After conducting 51 intensive evidentiary hearings over the

---

[11] Id., FF ¶¶ 43-51 - Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.

[12] A government-owned milk processing plant.

[13] Dkt. 480 FF ¶ 7 - Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007;  *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.

[14] Vaquería Tres Monjitas, Inc. v. Laboy, 2007 U.S. Dist. LEXIS 98950 *38 (D.P.R. 2007).

[15] Id. *See* U.S. Const. amend. V. ("[…] nor shall private property be taken for public use, without just compensation.")

course of a year and a half, on July 13, 2007, the District Court granted the preliminary injunction,[16] ordering that: (1) all milk processors pay the same amount for raw milk; (2) ORIL develop and implement rational, non-discriminatory parameters for price regulation; and (3) ORIL adopt a temporary mechanism to allow the Plants to recover a fair rate of return **from the year 2003** until the implementation of the new regulatory regime.[17] The mechanism to recover a fair rate of return contemplated in point no. 3 is known as "**regulatory accrual**".[18] It is a prospective recovery of the amounts of the regulatory taking that occurred during the period in question. "The regulatory accrual [is a] mechanism designed to allow the [Plants] to recoup a fair rate of return on their products."[19]

In its amended opinion and order granting the preliminary injunction on July 13, 2007 the court spelled out the way in which the government was executing a regulatory taking of the plants property without due compensation and made it clear that the regulatory accrual was the adequate remedy for that constitutional violation.[20]

---

[16] The Preliminary Injunction granted by the District Court was challenged before the United States Court of Appeals for the First Circuit, which upheld the injunction. Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464 (1ˢᵗ Cir. 2009) reh'g en banc denied, 600 F.3d 1 (1st Cir.2010), cert. denied, 563 U.S. 1001 (2011).

[17] Vaquería Tres Monjitas, Inc. v. Laboy, *supra*, *48.

[18] Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 472 (1st. Cir. 2009).

[19] Vaquería Tres Monjitas, Inc. v. Pagán, 748 F.3d 21, 23 (1ˢᵗ Cir. 2014).

[20] See Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007; *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.

To effectuate the regulatory accrual, the District Court mandated the parties' economic experts to meet, and they agreed on implementing a mechanism to remedy the losses incurred by the Plants and the calculation of the return on equity necessary for the implementation of the nondiscriminatory, rational, and scientific regulatory standards ordered by the Court.[21] The regulatory accrual would be implemented by ORIL as a per quart charge added to the retail price of all fluid milk to be collected and remitted to the Plants for recovery of the regulatory taking they experienced.[22]

Despite the clear obligations set forth in the Preliminary Injunction, for more than 6 years (between 2007 and 2013) ORIL insisted on implementing unjust and discriminatory measures which continued the illegal taking of the Plants' property. Crucially, the District Court found that ORIL and its expert had "refused for years … to accept the inclusion of the regulatory accrual as one of the factors within the formula leading to compensation."[23] The continued noncompliance by ORIL culminated in a finding of contempt wherein "[t]he Court undoubtedly, without any hesitation whatsoever, conclude[d] that Defendant ORIL, all the administrators holding office as executives at ORIL, and the expert Dr. Ronald W. Cotterill, have incurred in serious, blatant, and continued violations to the [Preliminary

---

[21] Dkt. 1003 of Civil Case No. 3:04-cv-1840-DRD; Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014).

[22] While ORIL is responsible for facilitating the takings, which have cause damage to the Plants, it was ultimately the fluid milk consumers of Puerto Rico who enjoyed the low prices of milk and reaped the benefits of the illegal takings.

[23] Exhibit 2 - Dkt. 2289 p. 66 of Civil Case No. 3:04-cv-1840-DRD; Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014)

Injunction]."[24]   Consequently, the Court set a date for the contempt hearing to be

held on October 31, 2013.[25]

On October 29, 2013, the parties reached an agreement ("Settlement

Faced with the reality of a contempt hearing, the Government of Puerto Rico

began negotiations with Suiza to resolve the issue of the government caused

uncompensated losses suffered by the Plants.[26]

On October 29, 2013, the parties reached an agreement ("Settlement

Agreement")[27] which was approved and adopted by the District Court as an Order

and Judgment, dated November 6, 2013.[28] The stipulations set forth in the Settlement

Agreement were to be "equally binding an enforceable against all signatories of this

[Settlement] Agreement and the Government of Puerto Rico."[29] In its pertinent part,

the Settlement Agreement provided for the Government "to contribute funds over

four years to [the Plants] ***as part of a regulatory accrual mechanism*** designed to

allow the [Plants] to recoup a fair rate of return on their products."[30] *[Emphasis*

*added].* In particular, the Government and the Plants "settled and agreed that the

total amount of principal of regulatory accrual due to [the Plants] as of November 6,

---

[24] Id., p. 82. *See also* Puerto Rico Dairy Farmers Ass'n v. Pagán, 748 F.3d 13, 17 (1st Cir. 2014).
[25] Puerto Rico Dairy Farmers Ass'n v. Pagán, *supra*, 17 ("In a footnote [in the Order scheduling the contempt hearing], the court strongly recommended that the parties utilize the time [before] the Permanent Injunction Hearing to reach an extrajudicial resolution.")
[26] These negotiations were to determine how best to recover the property unwillingly taken from the Plants by the government for the benefit of the consumers, without excessively burdening the same with sudden milk price hikes.
[27] *See* Final Settlement Agreement and Memorandum of Understanding Between the Parties ("Settlement Agreement"), which is Dkt. 2322 of Civil Case No. 3:04-cv-1840-DRD; Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014).
[28] Dkt. 2351 of Civil Case No. 04-1840-DRD; Vaquería Tres Monjitas, Inc. v. Comas, 5 F.Supp 3d 179 (D.P.R. 2014).
[29] Settlement Agreement p. 5.
[30] Vaquería Tres Monjitas, Inc. v. Pagán, 748 F.3d 21, 23 (1st Cir. 2014).

2013 is $170,639,638, of which $123,289,024 belongs to Suiza".[31] The Government also agreed to pay $95,000,000 before December 31, 2017, to be credited as part of the regulatory accrual.[32] The Judgment adopting the Settlement Agreement was challenged and affirmed, and became firm and final.[33] Thus, the Government became a Takings Clause debtor.

However, to date, the Government has only paid $33,000,000 of the promised $95,000,000 to the Plants.[34] The Government still owes the Plants $62,000,000, of which $45,325,151.22 belongs to Suiza.[35]

---

[31] Settlement Agreement p. 3.
[32] Id., pp. 4-5. *See also* Exhibit 2 of the Settlement Agreement which shows that the Government's payment would take the place of the regulatory accrual charge that was applied to the price of milk until December 31, 2016. Once the Government's $95,000,000 payment was completed, then the regulatory accrual would again be borne directly by the consumer, starting on January 1, 2017.
[33] Vaquería Tres Monjitas, Inc. v. Pagán, *supra*; and Puerto Rico Dairy Farmers Ass'n v. Pagán, *supra*.
[34] *Exhibit 1 – Sworn Statement from Leonardo Giacchino.*

[35] See *Exhibit 1* - Correction of Mathematical Mistake & Exhibit attached to Unsworn Statement from Leonardo Giacchino.

## III.  DISCUSSION

### A.  The Commonwealth is constitutionally bound to pay just compensation for taking Suiza's property

#### 1.  The Fifth Amendment requires the Commonwealth to pay just compensation

The Takings Clause of the Fifth Amendment mandates that "private property [shall not] be taken for public use, without just compensation."[36] This amendment is applicable to the Commonwealth of Puerto Rico.[37]

While it is clear that a taking has occurred when the government takes or occupies private land for its own use, the Supreme Court has also recognized that other government actions which affect or limit the use of private property constitute a taking.[38] These affectations or limitations imposed upon private property are known as "regulatory takings".[39]

In the case at hand, the Court found that through a regulatory taking, the Plants' property had been taken by ORIL for public use without just compensation. "[T]he current milk price scheme clearly represents a taking of property of the

---

[36] U.S. Const. amend. V.

[37] *See* Tenoco Oil Co., Inc. v. Department of Consumer Affairs, 876 F.2d 1013, 1017 n. 9 (1ˢᵗ Cir. 1989). *See also* J. Torruella concurring opinion in Fideicomiso de la Tierra del Caño Martín Peña v. Fortuño, 604 F.3d 7, 20 n. 11 (1ˢᵗ Cir. 2010).

[38] Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001).

[39] Id.

[Plants] by not allowing them to recover their true costs and the allowance of a fair profit."[40]

The United States Supreme Court recently explained that "a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it."[41]  Moreover, the right to a just compensation is self-executing.[42]

> [...] **Because of the self-executing character of the Takings Clause with respect to compensation**, a property owner has a constitutional claim for just compensation <u>at the time of the taking</u>. The government's post taking actions [...] cannot nullify the property owner's existing Fifth Amendment right: **Where the government's activities have already worked a taking of all use of property, <u>no subsequent action by the government can relieve it of the duty to provide compensation</u>**.[43] [Emphasis added].

That is, the right to a just compensation is not merely a right that is enjoyed by the person whose property was taken, but a constitutional obligation to pay which the Government may not avoid by any means.[44]  "[T]he [Supreme] Court has frequently repeated the view that, in the event of a taking, *the <u>compensation</u> remedy*

---

[40] <u>Vaquería Tres Monjitas, Inc. v. Laboy</u>, 2007 U.S. Dist. LEXIS 98950 *38 (D.P.R. 2007) (The Court repeatedly held that the actions of the Commonwealth amounted to a taking: "The court finds, as more fully described *infra*, violations of Due Process, Equal Protection and the Takings Clause, a pattern of lack of standards, change in standards with unfettered discretion, use of stale figures, and lack of an appropriate standard as to fair rate of return in the regulations set by the regulator all pointing to a *taking* "pursuant" to <u>Duquesne Light Co.</u>, 488 U.S. at 307; <u>Tenoco Oil</u>, 826 F.2d at 1026-1027." "The court finds that said criteria has been reached since the two processing plants are losing market and have suffered for the periods from 2003 to 2007 a Due Process and Equal Protection violation reaching levels of a "*taking*"."") [Emphasis added.]

[41] <u>Knick v. Township of Scott</u>, *supra*, at 2167.
[42] <u>Id.</u>, 2171.
[43] <u>Id.</u>, (emphasis ours) (internal quotations omitted) quoting <u>First English Evangelical Lutheran Church of Glendale v. County of Los Angeles</u>, 482 U.S. 304, 321 (1987).
[44] <u>Jacobs v. U.S.</u>, 290 U.S. 13, 16 (1933).

*is required by the Constitution*."[45] [Emphasis added]   "[O]nce there is a taking, compensation must be awarded." [46]

The constitutionally valid remedy is just compensation; that is, the amount recovered by the property owner must be just.[47] An inadequate compensation will not suffice.[48] Once the Government pays just compensation the unconstitutional taking is remedied. However, the payment of just compensation does not mean that the violation did not take place.[49] "The violation is the only reason compensation was owed in the first place."[50]

> **2.   The District Court was very clear in that the regulatory accrual at issue here is the remedy for the regulatory taking.**

In its Amended Opinion and Order granting the Preliminary Injunction on July 13, 2007, the Court found "violations of Due Process, Equal Protection and the Takings Clause, a pattern of lack of standards, change in standards with unfettered discretion, use of stale figures, and lack of an appropriate standard as to fair rate of return in the regulations set by the regulator all pointing to a taking 'pursuant' to

---

[45] First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, *supra*, 316.
[46] Knick v. Township of Scott, *supra*, 2172 (*quoting*, First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, *supra* and San Diego Gas & Elec. Co. v. San Diego, 450 U. S. 621, 654, 657, 101 S. Ct. 1287, 67 L. Ed. 2d 551).
(1981)
[47] Jacobs v. U.S., *supra*, 16.
[48] Id.
[49] Knick v. Township of Scott, *supra*, 2172 ("A later payment of compensation may remedy the constitutional violation that occurred at the time of the taking, but that does not mean the violation never took place.")
[50] Id.

13

*Duquesne Light Co.*, 488 U.S. at 307; *Tenoco Oil*, 826 F.2d at 1026-1027."[51] Specifically, the Court found that "In sum, the current milk price scheme clearly represents a taking of property for the milk processors by not allowing them to recover their true costs and the allowance of a fair profit. The current situation of the milk price scheme is responsible for the dire financial situation of plaintiffs today."[52]

The Court further elaborated: "the two processing plants are losing market and have suffered for the periods from 2003 to 2007 a Due Process and Equal Protection violation reaching levels of a "taking." The record is abundant as to the continuous violations for said period, including a methodology deficiency in parameters and unlimited discretion of the Administrator in changing, adding, subtracting, from year to year, parameters. Further, there is no system for a regulatory accrual to recuperate interim losses that occur from year to year, yet a stale system to determine "fair rate of return" is in place. These deficiencies point to permanent loss in market and long-standing violations of constitutional rights for extensive protracted periods of time."[53]

---

[51] See, Dkt. 480, p.91 - Exhibit 3 – Opinion and Order at Dkt. 480 of case Num. 04-1840, July, 13, 2007; *See also*, Vaquería Tres Monjitas, Inc. v. Comas, *supra*.
[52] *Ibid*, p. 77.
[53] *Ibid*, p. 91.

The Preliminary Injunction established that: 1) all market participants using raw milk to process fluid milk shall pay the same amount for the milk; 2) in a period of no more than 30 days, the Administrator will put in effect non-discriminatory, rational, and scientific regulatory standards to determine costs and reasonable returns for all participants in the regulated market in Puerto Rico; and 3) the Administrator must establish a mechanism to provide mitigation to the fresh milk plants for their losses of regulatory accrual.[54]  Specifically, the Court ordered ORIL to "adopt a temporary mechanism that will allow the processors to recover the new rate of return they are entitled to…through regulatory accruals, special temporary rates of return ***or any other available mechanism of his choosing***."[55] [Emphasis added]

The regulatory accrual asset of the processing plants represents the amount of the accumulated losses and lost profits resulting from the illegal takings provoked by ORIL.  The regulatory accrual is a regulatory asset for the Plants, representing a receivables account.  It is also part of the Plants' basis to calculate regulated prices, for which the Plants can earn a return on that asset.  Regulatory assets such as the regulatory accrual are commonly used in regulated industries in a variety of circumstances including compensation for losses incurred as a result of regulatory

---

[54] *Ibid*, p. 94.
[55] *Ibid*, pp. 94-95.

actions.   Such  a  regulatory  asset  rebuilds  a  regulated  company's  capital  by
amortizing the losses incurred, including allowed profit, over time.[56]

In  the  Preliminary  Injunction,  the  Court  endorses  the  regulatory  accrual
mechanism: "the  regulatory  system  of  ORIL  has  created  for  the  fresh  milk
processors yearly losses that have consistently diminished their capital base.   The
normal regulatory way of dealing with this issue is by creating a capital account of
"regulatory  accrual"  that  would  add  to  the  capital  base  the  erosion  experienced
because of this regulatory system."[57]

On January 3, 2011, at Dkt. No. 1804, p2 the Court again summarized the
specific actions by ORIL that led to the unconstitutional taking of property:

> The District Court found due process and equal protection violations as to the
> establishment by the Administrator of a reasonable rate of return charged by
> the milk processors to the public through an infirm process, reaching a level
> of a "taking." "We think, therefore, that the issue of inadequacy of the rates
> here is best addressed under the Takings Clause." _Tenoco Oil_, 876 F.2d at
> 1022.  The court shall not once again enumerate all the factors which lead to
> its conclusion. Amongst others, however, the Court found lack of parameters
> being used, changes in parameters without any reasoning, elimination of
> parameters without notice, lack of equal treatment in the application of
> parameters, the application of new parameters at a whim, the sudden
> elimination of traditional parameters and the reiterated use of stale outdated
> parameters.

---

[56] Leonardo Giacchino, Ph.D., and Jonathan Lesser, Ph.D., _Fundamentals of Energy Regulation_, Third Edition,
Public Utilities Reports, Inc., 2019, pp. 163-165.
[57] Preliminary Injunction, pp. 37-38.

*See also*, the pricing language as it relates to taking at p. 2-3. *Id*. The Court

opined that the price for raw milk determined by ORIL was "one of the most severe

constitutional deficiencies established by the predecessor Administrator":

> Further, the raw milk price constituted a "taking" banned by the United States
> Constitution. *Vaquería Tres Monjitas*, 587 F.3d at 484… Hence, the price of
> raw milk paid by the milk processors did not constitute a mitigating measure
> of risk but on the contrary, constituted an aggravating factor.  It is the Court's
> opinion that the price of milk paid by the milk processors was precisely one
> of the most severe constitutional deficiencies established by the predecessor
> Administrator (pp. 26-27).

In the *Amended Opinion and Order Nunc Pro Tunc* of September 23, 2013

the Court makes a finding that the takings remedies of the 2007 preliminary

injunction had not been implemented. *See, Exhibit 2* - Dkt. No. 2289.  The Court

says "[t]he reality is that the Court still has … an Injunction Order that hast not been

fully complied with by the defendants."   *Id*, at p. 10.

> **3.     Through the Settlement Agreement, the Commonwealth
> agreed to partially pay just compensation. Failure to honor
> the Settlement Agreement would render Suiza inadequately
> compensated for the property that was taken by ORIL, thus
> infringing the Constitution.**

It is unquestionable that through ORIL's regulations and practices, the

Government took, for the benefit of the public, the Plants' property without paying

for it.[58] That is, ORIL effectuated a regulatory taking.

---

[58] *Vaquería Tres Monjitas, Inc. v. Laboy*, *supra*, at 38.

As indicated before, in response to the claims presented by the Plants and the Courts' decisions recognizing the existence of an unconstitutional taking, the Government of Puerto Rico decided to settle the claims becoming a Takings Clause debtor and promised to pay the Plants $95,000,000 towards the total amount of the remedy.[59] The rest of the regulatory accrual was to be paid by the consumer by order of ORIL as part of the Judgment, in the price of milk beginning in January 2017. Said settlement and the promise to pay was not really necessary, because "[s]uch a promise was implied because of the duty to pay imposed by the [Fifth A]mendment." *First English Evangelical Lutheran Church v. County of Los Angeles*, *supra*, at 315 (1987).  That is the self-executing nature of the compensation owed. Nevertheless, through the Settlement Agreement, a mechanism was established to provide the plants with just compensation to remedy the taking they suffered. Therefore, the Plants could dismiss with prejudice their claims. *See, Knick v. Township of Scott*, *supra*, at 2173 ("Certainly it is correct that a fully compensated plaintiff has no further claim, but that is because the taking has been remedied by compensation, not because there was no taking in the first place.").

In *Jacobs v. U.S.*, a suit was brought by the property owners demanding just compensation for property taken by the United States for public use.[60] In that case,

---

[59] In its pertinent part, the Settlement Agreement provided for the Government "***to contribute funds*** over four years to [the Plants] ***as part of a regulatory accrual mechanism*** designed to allow the [Plants] to recoup a fair rate of return on their products." Vaquería Tres Monjitas, Inc. v. Pagán, *supra* at 23. [Emphasis added]

[60] Jacobs v. U.S., *supra*, 16.

the Supreme Court explained that "[t]he fact that condemnation proceedings were
not instituted and that the right was asserted in suits by the owners did not change
the essential nature of the claim."[61] Moreover, the Court indicated that:

> [...] The form of the remedy did not qualify the right. It rested upon
> the Fifth Amendment. Statutory recognition was not necessary. A
> promise to pay was not necessary, such a promise was implied because
> of the duty to pay imposed by the amendment. The suits were thus
> founded upon the Constitution of the United States. [...][62]

Just like in _Jacobs v. U.S._, in the case at hand an agreement through which the
Government recognized the duty to provide just compensation to the Plants was not
necessary. Moreover, a promise to pay was not necessary either, as it is a duty
implied within the Fifth Amendment. "The Fifth Amendment right to full
compensation arises at the time of the taking, regardless of post-taking remedies that
may be available to the property owner."[63]  That is, the nature of the debt recognized
by the Government, identified as a partial payment of the regulatory accrual, has
always been part of the just compensation owed to the Plants. "The violation [of the
Fifth Amendment] is the only reason compensation was owed in the first place."[64]
Due to the self-executing character of the Takings Clause with respect to just

---

[61] Id.

[62] Id., citing references omitted.

[63] Knick v. Township of Scott, _supra_, 2170.

[64] Id., 2172.

compensation, the fact that the parties reached an agreement does not change the nature of the debt.

### B. The payments contemplated in the settlement are non-dischargeable.

As currently proposed, the Commonwealth's Plan fails to pay in full the unpaid portion of the monies owed to the Plants by the government pursuant to the Judgment and fails to classify that debt as "non-dischargeable". Those claims appear only as general unsecured claims against the Commonwealth, subject to discharge under 11 U.S.C § 944(b) as incorporated by Section 301 of Title III of PROMESA, 48 U.S.C. § 2161.

As a consequence, the Commonwealth's Plan results in an illegal taking, in violation of the Fifth Amendment. That is, it runs contrary to the Constitution, applicable law and case law as it pertains to Suiza's non-dischargeable Takings Clause claim.  As mentioned above and explained by Justice Thomas, if the requirement of compensating a citizen for a taking and enforcing the Takings Clause of the U.S. Constitution "makes some regulatory programs unworkable in practice, so be it".[65]  [internal quotations omitted].

The Supreme Court has consistently held that bankruptcy laws are subject to the Constitution, and thus to the prohibition against the government's taking of

---

[65] Id., 2180.

property without just compensation. "The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment."[66]  More so, when it comes to a mere "regulatory program" like PROMESA.[67]

In re City of Detroit addressed, among other matters, a nearly identical instance in which some creditors were claiming that their credit could not be discharged because its origin was a takings claim filed against the bankrupt city. After indicating that "the specific issue of whether a municipal debtor in a chapter 9 bankruptcy case may impair a creditor's claim for just compensation under the Fifth Amendment is one of first impression",[68] the court held that bankruptcy proceedings are subject to said amendment.[69] The court reasoned that "[i]f confirmed, th[e] plan would deny just compensation [allowing] the City to impair the property owners' constitutional claim for just compensation after the City took their private property."[70] Thus, as was proposed, the  confirmation of the City's Plan would violate the Fifth Amendment.[71]

---

[66] Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589 (1935). *See also* U.S. v. Security Indus. Bank, 459 U.S. 70, 75 (1982) ("The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation.")

[67] Knick v. Township of Scott, *supra*, 2180 ("A "purported exercise of the eminent-domain power" is therefore "invalid" unless the government "pays just compensation before or at the time of its taking." If this requirement makes some regulatory programs "unworkable in practice," Supp. Brief 5, so be it—our role is to enforce the Takings Clause as written.")  [*Internal citations omitted*]

[68] In re City of Detroit, 524 B.R. 147, 268 (E.D. MI. 2014).

[69] Id., 269.

[70] Id., 270.

[71] Id.

To avoid such constitutional violation, the Court in <u>In re City of Detroit</u> exercised its authority pursuant to Section 944(c)(1) of the Bankruptcy Code and excepted the payments pursuant to the Takings Clause from discharge, upon confirmation of the plan.[72]

The proposed "Plan would deny just compensation [to Suiza allowing] the [Commonwealth] to impair [Suiza's] constitutional claim for just compensation".[73] Suiza would not receive from the government the monies which was deemed to be just compensation for the property that was taken through ORIL's practices and regulations. The proposed Plan would leave Suiza with an inadequate compensation from the Commonwealth, in violation of the requirements of the Fifth Amendment.

Since the Constitution requires that the remedy be a just compensation and the Plan infringes upon the just compensation owed to Suiza, the regulatory accrual portion of the debt payable by the government contemplated in the Settlement Agreement cannot be discharged.

As such, the Plan is unconfirmable under §314(3) of PROMESA which requires that any action proposed by a plan is not prohibited by law.[74]

In the alternative, pursuant to §944(c)(1) of the Bankruptcy Code, 11 U.S.C. § 944 (c)(1), made applicable to this proceeding pursuant to §301(a) of

---

[72] <u>Id.</u>, quoting <u>Edmond v. United States</u>, 520 U.S. 651, 658 (1997) ("Courts should avoid 'interpreting [a statute] in a manner that would render it clearly unconstitutional … if there is another reasonable interpretation available.'")

[73] <u>Id.</u>, at 268.
[74] 48 USC § 2174.

PROMESA[75], this Honorable Court should except the regulatory accrual payments

constituting Suiza's claim from discharge.

### C.   The Plan of Adjustment incorrectly depicts the debt owed to Suiza in nature and amount.

The Plan filed by the Commonwealth classifies Suiza's debt as part of Class

53.  Class 53 is described as follows:

> **Classification**: Class 53 consists of claims of Suiza Dairy, Inc. and Vaqueria Tres Monjitas, Inc. arising from and relating to the Dairy Producer Settlement, which as of the Effective Date, will be (a) allowed in the aggregate amount of $61,999,999.00, and (b) allocated to Suiza Dairy, Inc. and Vaquería Tres Monjitas, Inc. in the amounts of $44,832,199.28 and $17,167,799.92, respectively.

> **Treatment**: On the Effective Date, each holder of a Dairy Producer Claim will receive, in full consideration, satisfaction, release and exchange of such holders' Allowed Dairy Producer Claim, an amount equal to 50% of such Allowed Dairy Producer Claim, with such amount being payable by the Commonwealth in five (5) equal installments commencing on the Effective Date and each subsequent payment thereof being made on July 1 of each FY.

> **Voting**: Class 53 is Impaired by the Plan. Class 53 and each holder of an Allowed Dairy Producer Claim are entitled to vote to accept or reject the Plan.

> **Allowed Amount of Claims**: $61,999,999.00
> **Projected Recovery from CW**: 50%

Section 1129(b) of the Bankruptcy Code, made applicable to these

proceedings pursuant to §301(a) of PROMESA[76], states the requirements for a plan

---

[75] 48 U.S.C.A. §2161
[76] 48 USC 2161.

to be fair and equitable with respect to a class. 11 U.S.C. §1129(b).  With respect to

unsecured creditors, Section 1129(b)(2)(B) requires "that each holder of a claim of

such class receive or retain on account of such claim property of a value, as of the

effective date of the plan, equal to the allowed amount of such claim." 11 U.S.C.

§1129(b)(2)(B).

In the first place, Suiza contends that the Plan fails to meet the requirement of

§1129(a)(2)(B), since it does not provide for full payment of its constitutionally

guaranteed claim in violation of the Takings Clause of the Constitution.  <u>Knick v.

Township of Scott</u>, *supra*; <u>In re: City of Detroit</u>, *supra*..   As such, it is not fair and

equitable towards Suiza and is unconfirmable.

Moreover, the Plan states that the current debt owed to Suiza is

$44,832,199.28, while the correct amount of the debt is $45,325,151.22.  Suiza filed

POC 1201-1 in the amount of $48,485,151.22.  This claim has since been reduced

to ***$45,325,151.22***.  POC 1201-1 has not been objected, and as such is deemed

allowed.

Pursuant to Rule 3007[77] and 11 U.S.C. §502(a), made applicable to these

proceedings by §310[78] and §301[79] respectively, a properly filed claim is deemed

---

[77] Bankruptcy Rule of Civil Procedure 3007.
[78] 48 USC 2161.
[79] 48 USC 2170.

allowed unless objected to.  In re Farmers' Co-op of Arkansas & Oklahoma, Inc., 43 BR 619 (Bankr. WD Ark, 1984).

The Plan provides for payment to Suiza of 50% of $44,832,199.28.  This violates §1129(a)(2)(B) in as much as it does not provide full compensation for the constitutionally guarantee claim and does not provide for payment of the allowed claim in the correct amount of $45,325,151.22.

## IV.   CONCLUSION

Through ORIL's practices and regulations, the Government took Suiza's property for public use without paying just compensation. Such actions are contrary to the Fifth Amendment.

To correct said Fifth Amendment violation, the Plants filed a complaint against the Commonwealth, demanding just compensation. After establishing that their property had in fact been taken for public use without just compensation, the Plants obtained injunctive relief, which provided, among other things, a regulatory accrual. That is, the Plants won a Court mandate to receive just compensation for their property.

After the Government was found to be in contempt of Court, the Government and the Plants reached a Settlement Agreement, which was adopted by the Court as a judgment, to effectuate how the Plants would receive their just compensation, pursuant to the Fifth Amendment. As part of that just compensation, the

Commonwealth agreed to pay the Plants $95,000,000.  The Commonwealth still owes the Plants $62,000,000, of which $45,325,151.22 is owed to Suiza.[80]

The Plan, as proposed, contemplates the discharge of the just compensation owed to Suiza. Such action would be unconstitutional, as it would permit the Government to take the Plants' property without having to pay just compensation. Since the Constitution requires that the remedy be a just compensation and the Plan infringes upon the just compensation owed to Suiza, the regulatory accrual contemplated in the Settlement Agreement cannot be discharged.  As such, the Plan is unconfirmable.

Moreover, the Plan mischaracterizes the nature and amount of Suiza's claim, thus misleading creditors and violating §1129(a)(2)(B).[81]

**WHEREFORE**, Suiza most respectfully prays that the court DENY confirmation of the Seventh Plan of Adjustment, absent an amendment to the same by the Commonwealth classifying Suiza's claim as a non-dischargeable claim subject to a 100% distribution under the Plan, and surviving these proceedings.

---

[80] See, Exhibit 1 – Unsworn Statement from Leonardo Giacchino, p. 4-5.
[81] 11 USC §1129(a)(2)(B).

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that this motion was electronically filed with the Court using the CM/ECF system which will notify the filing by electronic means to all parties of record.

By: /s/  *Rafael A. Gonzalez Valiente*

USDC NO. 225209
*Counsel for Suiza Dairy*

**Godreau & Gonzalez Law, LLC**
PO Box 9024176
San Juan, PR  00902-4176
Telephone:  787-726-0077
*rgv@g-glawpr.com*