**Hearing Date: December 15, 2021, at 9:30.m. (AST)**
**Objection Deadline: November 30, 2021, at 4:00 p.m. (AST)**

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>Hearing Date: December 15, 2021, at 9:30.m. (AST)<br><br>Objection Deadline: November 30, 2021, at 4:00 p.m. (AST) |

### COMMUNITY HEALTH FOUNDATION OF P.R. INC.'S
### MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE

TO THE HONORABLE COURT:

**COMES NOW**, Community Health Foundation of P.R. Inc. (hereinafter "CHF"), through the undersigned attorney and very respectfully states, alleges and prays:

**Preliminary Statement**

CHF hereby moves pursuant to 11 U.S.C. § 503(b), made applicable to these proceedings by Section 301 of PROMESA, 48 U.S.C. § 2161(a), for the allowance and payment of wraparound payments which it is entitled to as a Federally Qualified Health Center ("FQHC"), for the quarterly

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

periods beginning on the 4th quarter of 2017, up to and including the 3rd quarter of 2021. CHF submits that the wraparound payments it is owed by the Commonwealth, and which the latter is required to make by federal statute originated from post-petition health care services provided to residents of Puerto Rico as part of the Commonwealth's public health care system. The health care services were provided to the indigent, uninsured, under-insured, and/or otherwise medically under-served community. The health care services provided by CHF have benefitted the Commonwealth to the extent they have allowed the Commonwealth to receive federal funds and to comply with its health care obligations to the medically under-served community under the Medicaid Act. In fact, other FHQCs operating within the Commonwealth are receiving and/or have received post-petition wraparound payments from the Commonwealth.

In the alternative, should the Court determine that the wraparound payments owed to CHF do not fall within the purview of 11 U.S.C. § 503(b) (which CHF disagrees with), then such payments should, nonetheless, be treated as administrative expenses under the fundamental fairness doctrine. The fundamental fairness doctrine is applicable as CHF is owed wraparound payments which arose from the Commonwealth's post-petition operations and/or obligations under the Medicaid program and statute and because of the Commonwealth's continuous and deliberate violation of a said statute. Such continuous acts have caused a damage to CHF and put at risk the health care services provided to the most vulnerable community.

### I. Factual Background an Origin of Claim

In July 2017, the Health Resources and Services Administration ("HRSA") designated CHF as a Federally Qualified Health Center Look-Alike. CHF requested and received CMS approval to participate in the Medicare Program as a Federally Qualified Health Center ("FQHC") effective August 21, 2017. On October 2018, CHF was designated under the

Medicaid statute as a Federally Qualified Health Center ("FQHC").

The mission of FQHCs is to provide primary health care and treatment and related services to members of the low-income community. CHF has also been designated as a "Community Health Center" and, as such, is entitled to receive federal grants under Section 330 of the Public Health Service Act ("PHS"), 42 U.S.C. § 254b.

The Medicaid program was established by federal law, 42 U.S.C. § 1396 *et seq*. Medicaid was created to provide medical assistance to homeless families with underage dependents, disabled, blind, and elderly dependents. The program operates on federal and state funding. **States are not required to participate, but if they do, they are required to comply with the requirements established by federal law.**

The administration of funds for the payment of the program is, in the first instance, up to the states, who act under the supervision of the federal government. Puerto Rico participates in Medicaid, on the same terms as the states, 42 U.S.C. § 1301(a)(1). Medicaid funds are administered in our jurisdiction by the Puerto Rico Health Insurance Administration ("ASES" by its Spanish acronym), a public corporation created under Puerto Rico law, responsible for the implementation of the state health insurance program, 24 L.P.R.A. § 7003.

The health insurance system in Puerto Rico operates through private insurers operating under the concept of "Managed Care Organizations" (hereinafter "MCO's"). The Commonwealth pays the MCO's a fixed monthly amount to provide these services. As many of the MCOs do not operate health facilities, they outsource services to third parties. CHF is one of such parties.

As appropriate, another requirement that states must meet is the provision of services through federally qualified health centers, 42 U.S.C. § 1396a(a)(10)(A). FQHCs provide

these services through their own staff and facilities or through contracts or cooperation agreements entered with other providers.

Since 2001, the federal statute requires FQHCs to be periodically reimbursed 100% of the reasonable costs related to offering health services to Medicaid beneficiaries, calculated per visit, 42 U.S.C. § 1396(a)(bb).

Under the Medicaid Act, the Commonwealth is a state, 42 U.S.C. § 1301 (a)(1) and must therefore reimburse the total "reasonable" costs of FQHCs to provide Medicaid services. Id., §1396a(bb). As the Commonwealth operates its Medicaid program through MCOs, the Medicaid Act requires the Commonwealth to cover the difference between what FQHCs receive from MCOs directly and the "reasonable" costs that FQHCs receive under the Medicaid Act's default payment scheme. Id. These "supplementary payments", known as "wraparound payments" (hereinafter "full or supplementary payments" or "wraparound"), are due to FQHCs "in no case less frequently than every 4 months". Id. §1396a(bb)(5)(B).

In 1997, Congress determined that states must make these comprehensive payments through a specific calculation scheme, known as the prospective payment system (hereinafter "PPS"). Id., § 1396a(bb)(2)-(3) Congress made the PPS effective after fiscal year 2000. Id.

Section 10501(i)(3)(A) of the Affordable Care Act (Pub. L. 111–148 and Pub. L. 111–152) added Section 1834(o) of the Social Security Act to establish a payment system for the costs of FQHC services under Medicare Part B based on prospectively set rates. In the PPS for FQHC Final Rule published in the May 2, 2014, Federal Register (79 FR 25436), the Centers for Medicare & Medicaid Services (CMS) implemented a methodology and payment rates for FQHCs under the PPS beginning on October 1, 2014.

Health Care Reform Legislation mandated a transition from the cost-based

4

reimbursement system to prospective payment system where payment is based on a national rate. Under the FQHC PPS, Medicare pays FQHCs based on the lesser of their actual charges or the PPS rate for all FQHC services furnished to a beneficiary on the same day when a medically necessary face-to-face FQHC visit is furnished to a Medicare beneficiary. Beginning in 2017, CMS updates the FQHC PPS rate annually by the FQHC market basket. Per Section 1834(o)(1)(A) of the Social Security Act, the FQHC PPS base rate is adjusted for each FQHC by the FQHC GAF, based on the Geographic Practice Cost Indices (GPCIs) used to adjust payment under the Physician Fee Schedule (PFS).

The FHQC base rate as published by CMS for the years 2017 to 2021, as adjusted by the FQHC GAF for Puerto Rico is as follows:

| Year | PPS base rate | GAF PR | Adjusted PPS rate |
|------|---------------|--------|-------------------|
| 2017 | $163.49 | 0.933 | $152.54 |
| 2018 | $166.60 | 1.003 | $167.10 |
| 2019 | $169.77 | 1.003 | $170.28 |
| 2020 | $173.50 | 1.003 | $174.02 |
| 2021 | $176.45 | 1.003 | $176.98 |

Again, as the Commonwealth implements the Medicaid programs under a managed care model, an FQHC is entitled to supplemental payments – also known as "wraparound" payments – from the State to cover the difference, if any, between the amount the FQHC receives from a managed care organization ("MCO") and the FQHC's total Medicaid costs based on its PPS rate multiplied by Medicaid visits. *See* 42 U.S.C. § 1396a(bb)(5).

CHF has provided health care services to the medically underserved population since it received a designation as a FQHC Look-Alike in 2017 and up to the present. During this

5

time, CHF has only received payments from the MCO. CHF has submitted to the Commonwealth on a quarterly basis an invoice with the required information to request the wraparound payments due for each quarter from the 4th quarter of 2017 to the 3rd quarter of 2021. However, the Commonwealth has not made any wraparound payments to CHF since the latter received its FQHC designation in 2017. As per the attached **Exhibit 1**, which is made an integral part hereof, the Commonwealth owes CHF the amount of $20,032,477 for wraparound payments accumulated from the 4th quarter of 2017 up to an including the 3rd quarter of 2021. As discussed below, CHF submits that this claim should be allowed as an administrative expense under Section 301 of PROMESA and Section 503(b) of the Bankruptcy Code or, in the alternative, pursuant to the fundamental fairness doctrine.

 **II. Discussion**

  **A. Section 503**

Section 301 of PROMESA provides that Section 503 of title 11 applies in this case. 48 U.S.C.A. § 2161(a). In turn, Section 503 of the Bankruptcy Code provides, in relevant part, that:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.
> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate....

A party seeking priority payment of an administrative expense under Section 503(a) of the Bankruptcy Code must show that "(1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor. <u>Woburn Associates v. Kahn (In re Hemingway Transport, Inc.)</u>, 954 F.2d 1, 5 (1st Cir. 1992). The party asserting the administrative claim bears the burden of demonstrating the entitlement of its claim

to such treatment. *Id*.

The First Circuit has held that Section 503(b)(1)(A) allows "the debtor estate to acquire the requisite postpetition credit with which to preserve itself after the filing of the petition." Hemingway Transp., Inc., 954 F.2d at 5. To this end, the First Circuit has stated that "[p]reservation of the estate includes protection of the assets of the estate, as well as postpetition operation of the business of the debtor," *Id*., and (2) "the consideration supporting the claimant's right to payment [must be] supplied to and beneficial to the debtor-in-possession in the operation of the business." In re La Electronica, Inc., 995 F.2d 320, 322-23 (1st Cir. 1993) (*quoting* Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 954 (1st Cir. 1976)).

Here, CHF's right to payment clearly arose from postpetition transactions with the Commonwealth. CHF received its designation as a FQHC after the petition was filed. The wraparound payments owed to CHF arose from health care services provided by CHF after the petition was filed. These health care services were provided as part of the Commonwealth's health care system and its related postpetition operations conducted to provide health care services to underserved communities within the Commonwealth. As the Medicaid program in the Commonwealth is implemented under a manage care model, the Commonwealth was/is required to make the wraparound payments to CHF to cover the difference between what CHF received from the MCO and the reasonable cost as determined by Medicaid's prospective payment system.

There should be no doubt that the consideration supporting CHF's right to payment was beneficial to the Commonwealth. CHF provided health care services to the Commonwealth's most vulnerable population. These services were provided under the manage care model on behalf of and/or for the benefit of the Commonwealth and allowed the Commonwealth to comply with its obligations under the Medicaid statute, reason for which it has received federal funds.

7

### B. Fundamental Fairness Doctrine

The fundamental fairness doctrine, which has its origins in Reading Co. v. Brown, 391 U.S. 471 (1968), has been interpreted within the First Circuit to support administrative expense claim priority for two categories of claims that do not otherwise come within the plain language of section 503(b) of the Bankruptcy Code. *See* In re Healthco Intern., Inc., 272 B.R. 510, 513 (B.A.P. 1st Cir. 2002), aff'd, 310 F.3d 9 (1st Cir. 2002). The fundamental fairness exception is recognized when debtor's post-petition operations cause tortious injuries to third parties or when the claim arises from post-petition actions that deliberately violate applicable law and damage others. *Id*. (emphasis in original) (*citing* Reading, 391 U.S. 471; Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.), 755 F.2d 200, 203 (1st Cir. 1985)).

Here, there is no doubt that the Commonwealth has deliberately violated federal law by not making the wraparound payments to CHF. The Commonwealth is aware of its obligation to make wraparound payments to FQHCs. In fact, previously several courts have granted injunctions and/or other remedies requiring the Commonwealth to make wraparound payments. *See*, *e.g*., Río Grande Community HealthCenter, Inc. v. Rullán, 397 F.3d 56 (1st Cir. 2005) (affirming grant of preliminary injunction requiring the Commonwealth to make wraparound payments when due). These deliberate and continuous violations of federal law have occurred post-petition as CHF was designated as a FQHC in July 2017 and the Commonwealth's obligations to make wraparound payments to CHF arose from post-petition health care services. Finally, there is no doubt that the injury caused to CHF by the continuous violations of the Medicaid statute have caused a legally cognizable injury to CHF. *See* Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.), 755 F.2d 200, 203 (1st Cir. 1985) (*citing* In re Mammoth Mart, Inc., 536 F.2d 950, 955 (1st Cir. 1976) (where the First Circuit acknowledged that the Reading principle would accord first

8

priority to a claim for compensation where a debtor-in-possession accepts services from a third party without paying for them).

Accordingly, CHF's post-petition claim for wraparound payments due and owing for the quarterly periods beginning from the 4th quarter of 2017, up to and including the 3rd quarter of 2021, is entitled to administrative priority under the fundamental fairness doctrine to the extent such claim does not fall within the purview of Section 503.

WHEREFORE, Community Health Foundation of P.R. Inc. respectfully requests the Court (i) to allow and order the payment of the post-petition wraparound payments owed from the 4th quarter of 2017, up to and including the 3rd quarter of 2021, in the amount of $20,032,477; (ii) to order the Commonwealth to prospectively make all wraparound payments to Community Health Foundation of P.R. Inc., when due; and/or (iii) to grant any further relief in favor of Movant as the Court deems just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on this 19th day of October 2021.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify all parties registered through their attorneys of record.

**/s/ BEATRIZ HERNÁNDEZ TORO**
BEATRIZ HERNÁNDEZ TORO
USDC #228809

BEATRIZ HERNÁNDEZ TORO LAW
PO BOX 190291
SAN JUAN, PR 00919-0291
TEL. (787) 368-4610
E-MAIL: Beatriz.hernandezpr@gmail.com