# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                  Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## OBJECTION OF U.S. BANK, AS TRUSTEE FOR THE PUERTO RICO FINANCE CORPORATION BONDS, TO THE SEVENTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET AL.[2]

---

[1]    The Debtors in these Title III cases (the "**Title III Cases**"), along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "**Commonwealth**") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (the "**COFINA**") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (the "**HTA**") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "**ERS**") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (the "**PREPA**") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (VI) Puerto Rico Public Buildings Authority (the "**PBA**") (Bankruptcy Case No. 19 BK 5523-LTS (Last Four Digits of Federal Tax ID: 3801) (Title III Case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]    Counsel for the FOMB granted U.S. Bank a limited extension until October 21, 2021 to file this objection.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT BACKGROUND ...................................................................................... 3

    A.    PFC and the PFC Bonds; the GDB LOC's ...................................................... 3

    B.    Obligations of the Commonwealth and the OMB under the Appropriations Acts . 6

    C.    The Debt Moratorium Act and Moratorium Orders resulted in an ongoing breach
        by the Commonwealth of its affirmative obligations to seek and effectuate
        legislative Appropriations ............................................................................... 7

    D.    The Title III Cases and the Trustee's Claim ................................................... 8

OBJECTION .............................................................................................................. 10

    A.    The Plan improperly classifies the Trustee's Claims........................................ 10

        i.    Claims for Breach of Contract ................................................................. 11

        ii.    Claims for Dolo (Bad Faith) ................................................................... 13

        iii.    Claims for Breach of Duty of Good Faith ................................................ 14

        iv.    Claims for Tortious Interference............................................................... 14

        v.    Claims for Unjust Enrichment ................................................................. 16

        vi.    Claims Against the GDB/DRA/PET......................................................... 17

        vii.    Claims under the Contracts Clause ........................................................... 17

        viii.    Claims under the Takings Clause ............................................................. 19

    B.    The Plan unfairly discriminates against the rights and claims of the Trustee. ..... 20

    C.    The Plan improperly assumes that PROMESA precludes future Appropriations. 21

    D.    The Plan improperly constitutes a "back-door" liquidation of PFC. ................... 25

RESERVATION OF RIGHTS ...................................................................................... 26

CONCLUSION........................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Casco, Inc. v. John Deere Constr. & Forestry Co.*,
    Civ. No. 13-1325, 2015 WL 4132278 (D.P.R. July 8, 2015) ..................................14

*Century Packing Corp. v. Giffin Specialty Equip. Co., LLC*,
    438 F. Supp. 2d 16 (D.P.R. 2006) ..........................................................................14

*Fideicomiso De La Tierra Del Cano Martin Pena v. Fortuno*,
    604 F.3d 7 (1st Cir. 2010) ......................................................................................20

*In re Financial Oversight and Management Board for Puerto Rico*,
    330 F. 3d 685 (D.P.R. 2018) ..................................................................................23

*In re Financial Oversight and Management Board of Puerto Rico*,
    Case No. 17-BK-3283 (LTS), 2021 WL 2071094 (D.P.R. May 21, 2021).........................2, 15

*Granada Wines v. New England Teamsters & Trucking*,
    748 F.2d 42 (1st Cir. 1984)..........................................................................11, 21, 22

*JJ Water Works, Inc. v. San Juan Towing and Marine Services, Inc.*,
    59 F. Supp. 3d 380 (D.P.R. 2014) ..........................................................................15

*Lingle v. Chevron U.S.A. Inc.*,
    544 U.S. 528 (2005)................................................................................................20

*M.R. (Vega Alta), Inc. v. Caribe General Elec. Products, Inc.*,
    31 F. Supp. 2d 226 (D.P.R. 1998) ..........................................................................12

*Maine Educ. Ass'n Benefits Tr. V. Cioppa*,
    695 F.3d 145 (1st Cir. 2012)...................................................................................20

*Puerto Rico Telephone Co., Inc. v. SprintCom, Inc.*,
    662 F.3d 74 (1st Cir. 2011)................................................................................13, 16

*Punta Lima, LLC v. Punta Lima Development Company, LLC*,
    440 F. Supp. 3d 130 (D.P.R. 2020)..................................................................14, 15, 16

*R & T Roofing Contractor Corp. v. Fusco Corp.*,
    265 F. Supp. 3d 145 (D.P.R. 2017).........................................................................11

*In re Redondo Const. Corp.*,
    411 B.R. 114 (Bankr. D.P.R. 2009) ........................................................................12

*Replay, Inc. v. Sec. of the Treas. of Puerto Rico*,
   778 F.Supp.2d 207 (2011) ............................................................................20

*United Auto., Aerospace, Agr. Implement Workers of America v. Fortuno*,
   633 F.3d 37 (1st Cir. 2011) ...........................................................................19

*Universal Ins. Co. v. Department of Justice*,
   866 F. Supp.2d 49 (D.P.R. 2012) ...................................................................18

**Statutes**

11 U.S.C. § 1124 and 1129 ...............................................................................2

11 U.S.C. § 1129 ..................................................................................................2

11 U.S.C. § 362 ....................................................................................................9

11 U.S.C. § 1122 ................................................................................................21

11 U.S.C. § 1122(a) ...........................................................................................11

11 U.S.C. § 1123(a)(5) .......................................................................................27

11 U.S.C. § 1129(b) ...........................................................................................21

48 U.S.C. § 2142(b) ...........................................................................................23

48 U.S.C. §§ 2142(d)-(e) ...................................................................................23

48 U.S.C. § 2142(e)(1) .......................................................................................24

48 U.S.C. § 2103 ................................................................................................23

48 U.S.C. § 2141 ................................................................................................23

48 U.S.C. §§ 2142(c)-(e) ...................................................................................23

48 U.S.C. § 2142(d)(1)(A) .................................................................................24

48 U.S.C. § 2142(f) ............................................................................................24

48 U.S.C. §2149 .................................................................................................24

48 U.S.C. § 2161(a) .............................................................................................2

Debt Moratorium Act ................................................................................7, 19, 21

*Puerto Rico Oversight, Management, and Economic Stability Act Section*
   *601(m)(1)(D)* ..................................................................................................4

iv

Puerto Rico Oversight, Management, and Economic Stability Act Title III, 48
U.S.C. §§ 2101-2241 ...............................................................................1, 2, 3, 9

Puerto Rico Oversight, Management, and Economic Stability Act Title VI......................... *passim*

**Other Authorities**

Constitution of the Commonwealth of Puerto Rico Contracts Clause ...........................................18

Government Development Bank for Puerto Rico, http://www.gdb-
pur.com/investors_resources/prpfc.html (last visited Oct. 13, 2021) .......................................4

Hearing Notice and Confirmation Schedule (IV) ...........................................................................6

Puerto Rico Const. Art. II, § 7 .......................................................................................................18

Statement for the Third Amended Title III ......................................................................................6

U.S. Bank as Trustee for the Puerto Rico Public Finance Corporation Bonds to the
Amended Joint Motion of the Commonwealth of Puerto Rico, et al. for an
Order (I) .......................................................................................................................................6

U.S. Const. art. I, § 10, cl. 1 ..........................................................................................................18

U.S. Const. amend. V......................................................................................................................20

U.S. Const. amend. XIV .................................................................................................................20

U.S. Const. Contracts Clause .........................................................................................................18

U.S. Bank Trust National Association and U.S. Bank National Association (together, the "**Trustee**"), solely in their capacity as Trustee for outstanding bonds (the "**PFC Bonds**") issued by the Puerto Rico Public Finance Corporation (the "**PFC**"), by and through their undersigned counsel, hereby submit this objection (the "**Objection**") to confirmation of the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "**Plan**") [Docket No. 17627] proposed by the Financial Oversight and Management Board of Puerto Rico (the "**Oversight Board**") on behalf of the debtors (the "**Debtors**") in the above-captioned proceedings (the "**Title III Cases**") under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. §§ 2101-2241 ("**PROMESA**").   In support of this Objection, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT[3]

1.      In brief summary, the confirmation objections arising from the Plan's treatment of PFC-related claims outlined below preclude confirmation of the Plan under Sections 1124 and 1129 of Title 11 of the United States Code (the "**Bankruptcy Code**"):[4]

  a.      ***The Plan improperly classifies the Trustee's general unsecured claims as CW Appropriations Claims in Class 63*** - claims for damages arising from breaches of contract, bad faith, tortious interference, diversion of funds, unjust enrichment, and violations of the Contracts Clause and Takings Clause by the Commonwealth and the OMB – all of which are general unsecured claims that belong in Class 58 – are instead improperly classified under the Plan in Class 63, the same class as allegedly unenforceable appropriation claims.[5]

---

[3]     Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed such terms below.

[4]     Unless otherwise indicated, all citations to Bankruptcy Code provisions in this Objection refer to provisions made applicable in these Title III Cases by PROMESA, § 301(a), *codified at* 48 U.S.C. § 2161(a).

[5]     Section 1.173 of the Plan defines CW Appropriations Claims, in relevant part, as: "Collectively, the Claims against the Commonwealth arising from **or related to** indebtedness only payable from appropriations of the Commonwealth Legislature under existing loans or legislative resolutions, including, without limitation, (a)

1

 b. **The Plan unfairly discriminates against the rights of the Trustee on behalf of PFC creditors against the Commonwealth and the GDB** – the Plan improperly characterizes and disallows as "appropriation" debt – in contrast to the treatment of other general unsecured claims in the GUC class (i) the Trustee's unsecured damage claims against the Commonwealth and the OMB and (ii) non-appropriation based claims by the GDB against the Commonwealth (of which the Trustee and PFC are intended third-party beneficiaries), and appears to improperly interfere with the third party GDB LOC's of which the Trustee is the direct beneficiary.

 c. *PROMESA cannot preclude the availability of future legislative appropriations for payment of the PFC Bonds* – the Oversight Board's presumption that preemption eliminates all obligations for payment of the PFC Bonds and the GDB LOC's securing those payments is flawed. The Oversight Board has not established that PROMESA categorically preempts the right of all future Legislatures to fund the obligations incurred by PFC, the Authorized Debtors, and the GDB. Further, the Oversight Board has not addressed the economic impact on Puerto Rico of summarily eliminating the viability of appropriation obligations, which are a widely-used vehicle for public financing.

 d. **The Plan appears to discharge PFC and the Trustee's claims against the Authorized Debtors, most of which are not in insolvency proceedings** – it is not clear from the text of the Plan whether the Plan releases or discharges the claims of PFC or the Trustee against the Authorized Debtors (other than the Commonwealth and its departments and units), <u>none of whom are debtors</u> in Title III Cases. To the extent that it does, such release and discharge is inappropriate and impermissible.[6]

 e. *The Plan constitutes a "back-door" liquidation of PFC without due process* –PFC is <u>not a debtor</u> in these Title III Cases. There is no provision in the Plan for the dissolution of PFC, the treatment of its creditors, or the payment of its expenses of administration.

---

notes from the Commonwealth or its agencies or instrumentalities held by PFC for the repayment of PFC indebtedness…." (emphasis added)

[6] It remains unclear whether the Plan purports to release any claims that might be asserted by the Trustee on behalf of itself or the holders of the PFC Bonds against the Authorized Debtors (as defined below). Upon information and belief, the FOMB stated through counsel at the Disclosure Statement hearing that claims of creditors against third parties such as the Authorized Debtors are not released by operation of the Plan, but this should be expressly confirmed. For the avoidance of doubt, the Trustee objects to any limitation or discharge of claims it holds on behalf of itself or on behalf of the holders of the PFC Bonds against the Authorized Debtors or against PFC.

2

## RELEVANT BACKGROUND

### A.   PFC and the PFC Bonds; the GDB LOC's

2.      PFC, a subsidiary of the Puerto Rico Government Development Bank (the
"**GDB**"), was created in 1984 to issue funded debt, such as the PFC Bonds, to provide the
Commonwealth and its various government instrumentalities with alternate means of meeting
their financing requirements without directly issuing their own public debt.  The proceeds of this
financing were applied to infrastructure projects, schools, low-income housing, shipping, and
other significant services and capital projects provided by the Commonwealth and its various
instrumentalities.   The GDB describes PFC on its website as "an[] independent government
instrumentality of the Commonwealth."[7,8]

3.      Three tranches of PFC Bonds were issued in the retail markets in the United
States and Puerto Rico in 2011 and 2012 and remain outstanding: the Series 2011A, Series
2011B, and Series 2012A Commonwealth Appropriation Bonds, with an unpaid principal
balance of approximately $1.09 billion.   The Trustee serves as trustee for the PFC Bonds
pursuant to a trust agreement dated June 1, 2004, between PFC and the Trustee (the "**Trust**

---

[7]     The Government Development Bank for Puerto Rico, http://www.gdb-pur.com/investors_resources/prpfc.html
(last visited Oct. 13, 2021).

[8]     On August 10, 2018, the GDB commenced a proceeding under Title VI of the Puerto Rico Oversight,
Management, and Economic Stability Act ("**PROMESA**") by filing the *Application of the Government
Development Bank for Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority,
Pursuant to Section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and Economic Stability Act, for
Approval of the Qualifying Modification for GDB* [Docket No. 1], thereby commencing Case No. 18-1561
(LTS) in the United States District Court for the District of Puerto Rico (the "**Court**").

The Court subsequently entered its *Findings of Fact, Conclusions of Law, and Order Approving Qualifying
Modification for the Government Development Bank for Puerto Rico Pursuant to Section 601(m)(1)(D) of the
Puerto Rico Oversight, Management, and Economic Stability* [Docket No. 270], and approved the GDB's Title
VI Qualifying Modification (the "**GDB Title VI QM**").

3

**Agreement**").[9]   Upon information and belief, a substantial portion of the PFC Bonds are currently held by on-island individual retail investors, as well as fund investors.

4.      As set forth in the preamble to the Trust Agreement, the PFC Bonds are limited obligations of PFC, payable solely from payments of principal of and interest on certain promissory notes (the "**Notes**")[10] issued by various departments, agencies, and instrumentalities of the Commonwealth, including certain public corporations (the "**Authorized Debtors**").[11]   The Notes, by their terms, are payable solely from budgetary appropriations (the "**Appropriations**") to be made by the Commonwealth's legislature (the "**Legislature**") pursuant to certain Appropriation Acts (as defined in the Trust Agreement).

5.      The Appropriation Acts require the Office of Management and Budget of the Commonwealth (the "**OMB**") to include Appropriations in the annual operating budget of the Commonwealth for all amounts required to pay debt service on the Notes.   If these Appropriations are made on a timely basis by the Legislature, payments required to be made under the Notes would be sufficient to pay the principal and interest on the PFC Bonds as they come due.   Certain of PFC's payment obligations under the PFC Bonds are secured by hundreds of millions of dollars of letters of credit issued by the GDB (the "**GDB LOCs**").

6.      By their terms, the GDB LOCs, which were issued to the Trustee as additional credit support for the PFC Bonds, may be drawn if:  (i) "the Trustee has not received by the close

---

[9]      A certified copy of the Trust Agreement is annexed hereto as **Exhibit A**.

[10]     Copies of the 2011 and 2012 Notes are annexed hereto as **Exhibit B**.

[11]     The Authorized Debtors include (i) the Department of Health of the Commonwealth of Puerto Rico, (ii) the Department of the Treasury of the Commonwealth of Puerto Rico, (iii) the Puerto Rico Infrastructure Authority, (iv) the Puerto Rico Solid Waste Authority, (v) the Puerto Rico Aqueduct and Sewer Authority, (vi) the Puerto Rico Land Authority, (vii) the Puerto Rico Sugar Corporation, (viii) the Office for the Improvement of Public Schools, (ix) the Puerto Rico Maritime Shipping Authority, (x) the Housing Bank and Finance Agency of Puerto Rico and its successor in interest, the Puerto Rico Housing Finance Authority, (xi) the Hotel Development Corporation, and (xii) any other debtor of the Public Finance Corporation or the GDB for which the Corporation has issued prior bonds. Trust Agreement, § 101.

of business on the third Business Day preceding August 1 of any Fiscal Year … during the term

of the [2004 Series B Bonds] written notice signed by the President of the Corporation that an

operating budget for the Commonwealth of Puerto Rico for such Fiscal Year has been duly

adopted by the Legislature of Puerto Rico and approved by the Governor of Puerto Rico and is

then in effect," and (ii) "the Trustee has not otherwise received funds representing the full

amount of the principal and interest due with respect to the [2004 Series B Bonds] for the Bond

Year … commencing within such Fiscal Year."[12]  There are no other conditions to a draw.  The

clear purpose of the unambiguous language in the GDB LOCs is to protect the Trustee and the

holders of PFC Bonds in the event the Legislature fails to make the required Appropriations for

the relevant PFC Bonds.[13]

       7.      Even if, as the Oversight Board asserts, PROMESA fully preempts claims relating

to appropriation rights under Puerto Rican statutes, that does not invalidate the obligations of the

GDB, which have been explicitly recognized as contingent claims under the GDB Title VI QM,

and which are in fact liquidated in amount for purposes of the GDB Title VI QM.  To the extent

that the Plan purports to summarily interfere with or abolish (i) the Trustee's rights under the

third party GDB LOCs and also (ii) the liquidated claims established under the GDB Title VI

QM by classifying them in Class 63 simply because they are "related to" the PFC Bonds, that is

impermissible.

---

[12]    Identical conforming language is contained in the Letters of Credit applicable to each of the Series of Bonds.
Copies of the Series 2011 A LOC, Series 2011B LOC, and Series 2012 A LOC are annexed hereto as **Exhibit
C**.

[13]    *See Objection of U.S. Bank as Trustee for the Puerto Rico Public Finance Corporation Bonds to the Amended
Joint Motion of the Commonwealth of Puerto Rico, et al. for an Order (I) Approving the Disclosure Statement
for the Third Amended Title III Joint Plan of Adjustment, (II) Fixing Voting Record Date, (III) Approving
Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and
Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving
Notice of Non-Voting Status, (VII) Fixing Voting Deadlines, and (VIII) Approving Vote Tabulation Procedures*
(the "**Disclosure Statement Objection**") [Docket No. 16989], at pg. 3-15.  The allegations of the Disclosure
Statement Objection are expressly incorporated herein by reference.

B.   **Obligations of the Commonwealth and the OMB under the Appropriations Acts**

8.    PFC pledged the Notes, and pledged and assigned all revenues from the Notes (the "**Pledged Revenues**") to the Trustee to secure payment of PFC's obligations in connection with the PFC Bonds.[14]

9.    Each of the Appropriations Acts requires that (i) the Commonwealth honor its obligations under the Notes, (ii) the Commonwealth or the OMB, as applicable, include in each annual operating budget of the Commonwealth submitted to the Legislature the amounts necessary to pay principal and interest on the Notes, and (iii) the Appropriations made pursuant to the Appropriations Acts are to be used exclusively for payment of principal and interest on the Notes.[15]

10.    For instance, Act 164 of December 17, 2001 provides in pertinent part as follows (emphasis added):

> The Commonwealth of Puerto Rico shall honor, by means of budget appropriations made by the Legislative Assembly in the operating budgets of every fiscal year for the next thirty (30) years . . . the payments of the principal, the interest and any other payment allowed [under the Notes], as they are restructured and/or refinanced pursuant to the provisions of this subchapter.  Pursuant to this purpose, *the Director of the Office of Management and Budget shall include in the operating budgets of the Commonwealth of Puerto Rico* submitted annually by the Governor of the Commonwealth of Puerto Rico to the Legislature . . . the amount needed to meet the payment of the principal, the interest and any other payment related thereto. . . .

11.    The other Appropriation Acts contain similar directives.  Under the Appropriation Acts, the obligation to include the requisite Appropriations in the annual budget for the Commonwealth is not discretionary – it is a mandate.

---

[14]    Trust Agreement, at pg. 3-4 and § 601.

[15]    *See* Act 164 of December 17, 2001; Act 85 of June 13, 1998; Joint Resolution 523 of August 24, 2000; Act 113 of September 27, 1994, annexed hereto as **Exhibit D**.

**C.** **The Debt Moratorium Act and Moratorium Orders resulted in an ongoing breach by the Commonwealth of its affirmative obligations to seek and effectuate legislative Appropriations**

12.     On or about April 6, 2016, the Commonwealth adopted the Debt Moratorium Act (Act No. 21 of 2016) (the "**Debt Moratorium Act**")[16]. Section 201 of the Debt Moratorium Act authorized the Governor of Puerto Rico (the "**Governor**") to declare an "emergency period" for Puerto Rican government entities. Section 201 of the Debt Moratorium Act also authorized the Governor to suspend or modify any statutory or other obligation to transfer money to pay or secure any covered obligation during an emergency period.

13.     On or about June 30, 2016, the Governor issued Executive Order 2016-030. Subsequently, Section 10 of Executive Order 2016-031 (together with Executive Order 2016-030, the "**Moratorium Orders**")[17], among other actions, declared an emergency period for PFC and purported to suspend any obligation to request inclusion of Appropriations in the proposed budget for the payment of the PFC Bonds and any obligation to cause the Secretary of the Treasury to transfer such Appropriations to the Trustee. The Moratorium Orders also suspended certain obligations of PFC to provide written notice to the Trustee.

14.     PFC has not made any payments of debt service on the PFC Bonds to the Trustee since August 2015. Since 2016, the Commonwealth, the OMB, and at their direction, PFC, have repeatedly breached their obligations to request or otherwise include the Appropriations required to pay debt service on the Notes in the annual operating budget of the Commonwealth. PFC has failed to give the required notices to the Trustee, no operating budget for the Commonwealth of Puerto Rico for each Fiscal Year through 2021 has been duly adopted by the Legislature of Puerto Rico and approved by the Governor and put into effect. The budgets approved by the

---

[16] A copy of Act No. 21 of 2016, the Debt Moratorium Act, is annexed hereto as **Exhibit E**.
[17] A copy of Executive Order 2016-31 is annexed hereto at **Exhibit F.**

Oversight Board have been the effective budgets for Puerto Rico, but they were not approved by the Governor or the Legislature.

15.     The fact that the Moratorium Orders, the legality and enforceability of which have never been determined by any court, abrogated the obligations of PFC, the OMB, and the Commonwealth to (i) notify the Trustee of the adoption of an operating budget by the Legislature and (ii) seek Appropriations in the operating budgets of funding to allow non-debtor entities to pay the Notes pledged to the Trustee, cannot provide a basis for the elimination of claims for the breach of their duties and damages related to such breaches against the Commonwealth and the OMB, nor can they vitiate the enforceability of the third party GDB LOC's.

### D.     The Title III Cases and the Trustee's Claim

16.     The Oversight Board commenced these Title III Cases for (i) the Commonwealth on May 3, 2017; (ii) the COFINA on May 5, 2017; (iii) the ERS and HTA on May 21, 2017; (iv) PREPA on July 2, 2017; and (v) the PBA on September 27, 2019.  The commencement of the Title III Cases triggered the operation of the automatic stay under section 362 of the Bankruptcy Code, thereby providing the Commonwealth and the other Title III debtors with continued protection from enforcement action for the duration of these Title III Cases.

17.     PFC is not a debtor in these Title III Cases and is not otherwise a debtor in any other liquidation, bankruptcy, restructuring, or wind-down proceeding.  Certain of the Authorized Debtors are departments or units of the Commonwealth.  However, none of the

Authorized Debtors that are stand-alone entities are Debtors in these Title III Cases or are
otherwise debtors in liquidation, bankruptcy, restructuring, or wind-down proceedings.[18]

18.     On May 18, 2018, in accordance with the claims bar date order entered in the
Title III Cases on February 15, 2018, the Trustee timely filed a proof of claim (the "**Claim**")
[Claim No. 13374] against the Commonwealth and the OMB on behalf of itself and all holders
of PFC Bonds, asserting the following claims:[19]

- Claims against the Commonwealth and the OMB for the
  failure to include in the annual budget of the
  Commonwealth the amount necessary for the debt
  obligations of the Authorized Debtors that issued the Notes;

- Contingent, unliquidated claims against the Commonwealth
  and any of its divisions which have issued Notes to secure
  the PFC Bonds for all rights and entitlement that the
  Trustee has or may have of whatever nature or kind set
  forth in the Trust Agreement, or pursuant to other
  applicable documents or law, including for breach of
  covenants and for the potential diversion of revenues
  pledged for the payment of the PFC Bonds, whether in the
  past or in the future; and

- Claims for any and all amounts owed on account of any
  and all claims the Trustee has or may have relating to the
  outstanding PFC Bond obligations, whether known or
  unknown, against the Commonwealth and all those
  purporting to act on the Commonwealth's behalf, whether
  presently asserted or to be asserted, including without
  limitation claims for or based upon the breach or violation
  of the Trust Agreement or any covenants or other
  contractual obligations contained therein, or claims arising
  from the improper diversion of the Pledged Revenues or
  any other property securing the payment of the PFC Bonds,
  as a matter of relevant state law or federal law, including
  without limitation constructive trust, fraudulent conveyance

---

[18]  The Oversight Board recently filed a Title VI case for PRIFA to approve a Qualifying Modification relating to
PRIFA's rum tax bonds; however, this filing does not purport to modify PRIFA's obligations under the Notes
issued to PFC.

[19]  Proof of Claim at ¶¶ 13-15

or fraudulent transfer, failure to fulfill contractual and
fiduciary obligations and duties, breach of implied
covenants of good faith and fair dealing, or other legal or
equitable claim.

19.     On July 30, 2021, the Oversight Board filed the Plan and the disclosure statement

for the Plan (the "**Disclosure Statement**") [Docket No. 17628].  On August 2, 2021, the Court

entered an order approving the Disclosure Statement [Docket No. 17639].

## OBJECTION

### A.     The Plan improperly classifies the Trustee's Claims.

20.     The classification of the Trustee's damage claims asserting direct financial

obligations of the Commonwealth, breach of contract, diversion of funds, bad faith interference

with payment and, possibly, claims against the Authorized Debtors – all of which are non-

appropriation-based causes of action arising under constitutional, contract, and tort law –

together in Class 63 (appropriation claims), *see* Plan, Art. I.173 & LXVII, violates

section 1122(a) of the Bankruptcy Code.   Section 1122(a) expressly prohibits grouping

dissimilar claims – such as non-appropriation claims asserted in the proof of claim filed by the

Trustee and the appropriation-based contractual claims against PFC – together in a single class.

*See, e.g.*, *Granada Wines v. New England Teamsters & Trucking*, 748 F.2d 42, 46 (1st Cir. 1984)

("The general rule regarding classification is that 'all creditors of equal rank with claims against

the same property should be placed in the same class.'") (citation omitted).  The Trustee's claim

is a general unsecured claim, and must be classified and treated the same as other general

unsecured claims (currently in Class 58).

21.     Even if the duty to appropriate funds to pay the PFC Bonds were preempted, the

PFC bondholders through the Trustee nevertheless hold valid claims against the Commonwealth

on the various theories discussed below.   Those claims are general unsecured claims, are not

dependent on appropriations, and are not subordinated.  Classifying them separately and treating

them materially worse than other general unsecured claims violates sections 1122(a) and

1129(b)(1) of the Bankruptcy Code, and renders the Plan unconfirmable.

22.     Under any of the below theories, the Commonwealth is liable to the Trustee for

damages in an amount not less than the aggregate unpaid principal on the PFC Bonds

($1,090,740,000), plus accrued interest, Trustee fees and costs, legal fees, and other amounts due

under the Trust Agreement, as a general unsecured claim that properly belongs in Class 58.

### i.     Claims for Breach of Contract

23.     Pursuant to Puerto Rico law, a claim for breach of contract has three elements:

(i) a valid contract; (ii) a breach by one of the parties to the contract; and (iii) resulting damages.

*R & T Roofing Contractor Corp. v. Fusco Corp.,* 265 F. Supp. 3d 145, 154 (D.P.R. 2017)

(citation omitted).  When adjudicating controversies involving contracts, courts are directed to

determine "what are the real and common intentions of the contracting parties."  *In re Redondo*

*Const. Corp.,* 411 B.R. 114, 122 (Bankr. D.P.R. 2009) (citations omitted).  In *Marcial v. Tome,*

the Puerto Rico Supreme Court held that:

> [a]lthough the starting point of contract interpretation must be the
> expressions contained in the words, the trier cannot stop at the
> literal sense, but must *fundamentally investigate the intent of the*
> *parties and the spirit and purpose of the transaction*, as they are
> inferred from the overall conduct of the interested parties and from
> the concurring circumstances that may contribute to an adequate
> investigation of the will of the executing parties.

144 P.R. Dec. 522, 537 (1997) (citations omitted) (emphasis added).  "To judge the intention of

the contracting parties, all circumstances showing the will of the parties must be examined."  *Id.*

at 538 (citation omitted).  Specifically, special attention must be paid to "their acts, previous to,

contemporaneous with, *and subsequent to the execution of the contract*."  *Id.*  (emphasis added).

11

A court should consider "the occasion, the circumstances, the persons involved, and the agreement they intended to negotiate." *Id.*

24.     The Notes are valid contracts between the Authorized Debtors (including the Commonwealth) and PFC.  Although PFC is the nominal payee of each of the Notes, the Notes were made for the primary benefit of the Trustee, not PFC.  PFC served strictly as a conduit with respect to the Notes, having pledged and assigned all Pledged Revenues payable under the Notes to the Trustee and retained no economic interest in the Notes for its own account.  By virtue of that pledge and assignment, the Trustee indisputably is an intended third-party beneficiary of the Notes with standing to enforce the Authorized Debtors' respective obligations thereunder, including their obligations to seek Appropriations in each fiscal year to make debt service payments under the Notes.  *See M.R. (Vega Alta), Inc. v. Caribe General Elec. Products, Inc.,* 31 F. Supp. 2d 226, 238 (D.P.R. 1998) ("Puerto Rico law recognizes a cause of action in favor of a third-party beneficiary to a contract.") (citation omitted).

25.     Given that (i) debt service installments under the Notes are payable from Appropriations made by the Legislature in each budget year and (ii) the Appropriation Acts making issuance of the Notes possible require inclusion of adequate Appropriations in the budget of the Commonwealth, the Commonwealth/OMB, the Authorized Debtors (the Commonwealth and certain of its departments and other instrumentalities), or both, had not just an express statutory obligation, but also an implied contractual obligation to seek the inclusion of the requisite Appropriations in each annual operating budget of the Commonwealth;   failing to do so would frustrate the purpose of the Notes.  By failing even to take the essential step of requesting annual Appropriations, the Commonwealth, the OMB, and the Authorized Debtors

12

have repeatedly breached that obligation, resulting in significant damages in the form of unpaid
Pledged Revenues.

### ii.    **Claims for *Dolo* (Bad Faith)**

26.    Under Puerto Rico law, a party is liable for all damages that originate from its bad
faith in performing – or failing to perform – under a contract, a concept referred to as *dolo*.
*Puerto Rico Telephone Co., Inc. v. SprintCom, Inc.,* 662 F.3d 74, 99 (1st Cir. 2011) (citing 31
P.R.L.A. § 3024) (a party who engages in *dolo* in the performance of an obligation "shall be
liable for all those [damages] which clearly may originate from the nonfulfillment of the
obligation").  The imposition of damages for *dolo* "is broader than that resulting from a good
faith breach of a contract," where, in contrast, damages are limited to "those foreseen or which
may have been foreseen, at the time of constituting the obligation, and which may be a necessary
consequence of its nonfulfillment."  *Id.* (citation omitted).

27.    Contractual *dolo* "is a broad term that includes deceit, fraud, misrepresentation,
undue influence and other insidious machinations."   *Punta Lima, LLC v. Punta Lima
Development Company, LLC,* 440 F. Supp. 3d 130, 154 (D.P.R. 2020) (citation omitted).  *Dolo*
in the performance of contractual obligations occurs "where a party, knowingly and
intentionally, through deceitful means, avoids complying with a contractual obligation."  *Casco,
Inc. v. John Deere Constr. & Forestry Co.,* Civ. No. 13-1325, 2015 WL 4132278, at *2 (D.P.R.
July 8, 2015).  Stated differently, *dolo* is "the willful and conscious breach of a [contractual]
duty" causing damages to another party.  *Punta Lima,* 440 F. Supp. 3d at 155 (citation omitted).

28.    The recurring failure of the Commonwealth, the OMB and the Authorized
Debtors, as the case may be, to seek or request *any* Appropriations from the OMB and
Legislature to pay debt service on the Notes when due was and is a willful and conscious act of
bad faith that has resulted in significant damages – in the form of unpaid Pledged Revenues – to

13

the Trustee and, in turn, to the holders of the PFC Bonds.  Furthermore, the Commonwealth ordered that Authorized Debtor Notes could not be paid while at the same time being the maker of such Notes, essentially creating a rule that it would not be able to pay its own debt.

### iii.   Claims for Breach of Duty of Good Faith

29.   Puerto Rico law implies into contracts the covenant of good faith and fair dealing. *Id.* (citing 31 P.R.L.A. § 3375).  The duty of good faith applies to contract performance.  *Id.* (citation omitted).  Good faith performance of a contract emphasizes "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id.* (citation omitted).  The concept of "good faith" creates "special conduct responsibilities for each case in accordance with the [contractual] relationship and the end intended by the parties." *Century Packing Corp. v. Giffin Specialty Equip. Co., LLC,* 438 F. Supp. 2d 16, 26 (D.P.R. 2006). Liability for breach of the implied duty of good faith exists "if, in light of all the surrounding circumstances, the party's actions appear arbitrary, deceitful, or animated by some improper purpose." *Punta Lima,* 440 F. Supp. at 154 (citation omitted).

30.   The failure of the Commonwealth and OMB to seek, and the prevention of PFC from seeking, appropriations for payment of the Notes as they become due is a recurring breach of the implied duty of good faith, in that this conduct was arbitrary and inconsistent with the expectations of the holders of funded debt of PFC from which the Commonwealth and its affiliates and public corporations benefitted.

### iv.   Claims for Tortious Interference

31.   Puerto Rico law recognizes a cause of action for tortious interference with contractual relations. *JJ Water Works, Inc. v. San Juan Towing and Marine Services, Inc.,* 59 F. Supp. 3d 380, 397 (D.P.R. 2014) (citing 31 P.R.L.A. § 5141) ("A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the

damage so done.").  To prevail, a plaintiff must show (i) the existence of a contract, (ii) that the interfering party acted with intent and knowledge of the existence of a contract, (iii) that plaintiff suffered damages, and (iv) that there exists a causal link between the injury and the interfering party's actions.  *In re Financial Oversight and Management Board of Puerto Rico,* Case No. 17-BK-3283 (LTS), 2021 WL 2071094, at *8 (D.P.R. May 21, 2021) (citations omitted).  The "fault" element requires that the interfering party "intended to interfere with the contract, knowing that this interference would cause injury to the plaintiff." *JJ Water Works,* 59 F. Supp. 3d at 397-98 (citation omitted).

32.    The Commonwealth/OMB was aware of the existence of the Notes, the PFC Bonds, the Trust Agreement, and the statutory and contractual obligations of the Commonwealth, the OMB, and PFC in connection therewith, as well as the fact that Appropriations were a necessary pre-requisite to the Authorized Debtors' payment of debt service installments to PFC under the Notes and, in turn, payment of the PFC Bonds by PFC. Additionally, as discussed above, the OMB was expressly required under the Appropriation Acts to include in the annual operating budget of the Commonwealth the Appropriations necessary to pay the debt service on the Notes, which it repeatedly failed to do.

33.    Further, it should be noted that from 2016 until 2021, the Commonwealth has never approved a budget that was imposed on it by the Oversight Board.  Thus, the conditions precedent to GDB Letter of Credit draws have been and remain met.  By failing to include, or to even try to include, Appropriations in the Commonwealth's annual operating budget, the OMB interfered with PFC's ability to perform its contractual obligation to pay debt service on the Bonds pursuant to the terms of the Bonds and the Trust Agreement, causing significant damages to the Trustee and the holders of PFC Bonds.

15

v.    **Claims for Unjust Enrichment**

34.    Even if this Court were to find that the Trustee does not have contractual claims against the Commonwealth and the OMB, the Trustee nevertheless would prevail on a claim for unjust enrichment.  *See Puerto Rico Telephone Co., Inc. v. SprintCom, Inc.,* 662 F.3d 74, 97 (1st Cir. 2011) (citations omitted).  Puerto Rico law recognizes the doctrine of unjust enrichment. *Punta Lima,* 440 F. Supp. 3d at 151 (citation omitted).  There are five elements to an unjust enrichment action: (i) the existence of enrichment, (ii) a correlative loss, (iii) nexus between the loss and enrichment, (iv) lack of cause for enrichment, and (v) the absence of a contract governing the dispute at issue.  *Id.* (citation omitted).  The unjust enrichment doctrine seeks "to do justice to one party in the absence of a contractual or legal obligation from the other party." *Id.* (citation omitted).

35.    Here, the Commonwealth, via the Authorized Debtors, received more than $1 billion of proceeds from the PFC Bonds.  Those funds enabled the Commonwealth and its various units and other instrumentalities to continue operating and to provide health, infrastructure, educational, and housing services and benefits to residents of the Commonwealth. Permitting the Commonwealth to enrich itself by forcing a debt default by PFC and absconding with over $1 billion of funds raised through the sale of PFC Bonds is fundamentally unjust, particularly in light of the substantial benefit the PFC bondholders bestowed on the Commonwealth by purchasing the PFC Bonds.  Thus, even if there is no contractual relationship between the Commonwealth and the Trustee, the doctrine of unjust enrichment nevertheless obligates the Commonwealth to return its ill-gotten gains to the Trustee for the benefit of the PFC Bondholders.  Moreover, upon information and belief, the Commonwealth improperly diverted the funds that otherwise should have been appropriated for debt service under the Notes and used those funds to pay other, lower-priority creditors, further exacerbating the injustice

16

done to the Trustee and all holders of PFC Bonds.  The Commonwealth is obligated to compensate the Trustee and holders of PFC Bonds for their losses, and cannot simply erase such claims by improperly classifying them as appropriation debt under the Plan.

### vi.   Claims Against the GDB/DRA/PET

36.   Prior to the implementation of the GDB Title VI QM, the Trustee was the beneficiary of (i) hundreds of millions of dollars of GDB LOCs issued to the Trustee as credit support for the Notes and the PFC Bonds and (ii) a $28 million bank deposit claim held by PFC against the GDB.  Pursuant to the GDB Title VI QM, the Trustee and PFC have direct claims (the "**GDB Claims**") against the Debt Recovery Authority ("**DRA**") and Public Entity Trust ("**PET**") that were created to liquidate GDB's assets and incoming revenue streams and pay claims.  It is at best unclear whether the Plan intends to prejudice holders of such claims by, among other things, classifying claims based on the Notes and claims held by the GDB in Class 63, which receive no distribution.  Such would be impermissible and the Plan must clarify that nothing therein will prejudice the claims of the Trustee or PFC against the GDB, the DRA and the PET.

### vii.   Claims under the Contracts Clause

37.   The Contracts Clause of the United States Constitution declares that "[n]o State shall . . . pass any . . . Law impairing the Obligations of Contracts."  U.S. Const. art. I, § 10, cl. 1. Similarly, the Contracts Clause of the Constitution of the Commonwealth of Puerto Rico provides that "[n]o laws impairing the obligation of contracts shall be enacted."  Puerto Rico Const. Art. II, § 7.  The Contracts Clause protects individuals and legal entities who have freely entered into contracts from "legislative action that impairs the obligations under those contracts." *Universal Ins. Co. v. Department of Justice,* 866 F. Supp.2d 49, 67 (D.P.R. 2012) (citation omitted).  To prevail on a Contracts Clause claim, a plaintiff must meet a two-part test.  *Id.*

17

(citation omitted).  The first inquiry is whether a "change in state law has resulted in the substantial impairment of a contractual relationship."  *Id.* (citation omitted).  If a substantial impairment is found, the court must then address the second inquiry, which is "whether or not the impairment is nonetheless justified as reasonable and necessary to serve an important public purpose."  *Id.* (citations omitted).

38.     The first inquiry, whether a substantial impairment exists, is comprised of three elements: (i) whether there is a contractual relationship; (ii) whether a change in law impairs that contractual relationship; and (iii) whether the impairment is substantial.  *Id.* (citation omitted).  Generally, the "severity of the impairment measures the height of the hurdle the state legislature must clear."  *Id.* at 68 (citations omitted).  If there is severe impairment, there must be "a careful examination of the nature and purpose of the state legislation."  *Id.* (citation omitted).

39.     After finding that a contract has been substantially impaired by legislative action, courts next turn to the second question, whether the impairment was "reasonable and necessary to serve an important government purpose."  *United Auto., Aerospace, Agr. Implement Workers of America v. Fortuno,* 633 F.3d 37, 41 (1st Cir. 2011) (citation omitted).  Where the legislature is alleged to have impaired a public contract to which the government is a party, "less deference to a legislative determination of reasonableness and necessity is required, because the State's self-interest is at stake."  *Id.* (citation omitted).  The burden of proof on this issue rests with the state.  *Id.* at 43 (citation omitted).

40.     Three contractual relationships are at issue in connection with the PFC Bonds: (i) PFC's obligations to the Trustee under the Trust Agreement and the PFC Bonds themselves; (ii) the Authorized Debtors' obligations to PFC and the Trustee pursuant to the Notes; and (iii) the Commonwealth's obligations to the Authorized Debtors under the Notes.  The

18

Commonwealth's adoption of the Debt Moratorium Act and the Governor's issuance of the Moratorium Orders severely impaired all three of these contractual relationships by extinguishing the Pledged Revenues, precluding the Authorized Debtors from obtaining the Appropriations necessary to fund their debt service obligations under the Notes, and thereby preventing PFC from paying the PFC Bonds.

41.     Forcing an essentially irreversible debt default that is nearly certain to hinder the Commonwealth's ability to raise appropriation-type debt in the future (still a common form of municipal debt financings) serves no government purpose whatsoever, much less any important government purpose.   In permanently depriving the Trustee and holders of PFC Bonds of the benefit of receiving any Pledged Revenues ever in the future, the Debt Moratorium Act and the Moratorium Orders were unreasonable and unnecessary.  The burden of demonstrating otherwise rests with the Commonwealth and is a burden the Commonwealth has not satisfied.

### viii.    Claims under the Takings Clause

42.     The Takings Clause of the Fifth Amendment, which applies to the Commonwealth through the Fourteenth Amendment, *see Replay, Inc. v. Sec. of the Treas. of Puerto Rico*, 778 F.Supp.2d 207, 215 (2011), prohibits the taking of private property for public use without just compensation.  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005).  Puerto Rico's Constitution contains a corollary provision to the Takings Clause: "Private Property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law."  Art. II, § 9.

43.     The Takings Clause, and its analog in Puerto Rico's Constitution, sets two conditions on the government's constitutional authority to take private property: (i) the government may take private property for public use, but (ii) it must provide just compensation when it does so.  *See Fideicomiso De La Tierra Del Cano Martin Pena v. Fortuno,* 604 F.3d 7,

19

12 (1st Cir. 2010).  The Taking Clause's prohibition extends not only to a physical taking, but also to regulatory interference, which transpires when "some significant restriction is placed upon an owner's use of his property for which justice and fairness require that compensation be given."  *Maine Educ. Ass'n Benefits Tr. V. Cioppa,* 695 F.3d 145, 152 (1st Cir. 2012) (citation omitted).

44.     To assess the propriety of a regulatory taking claim, courts utilize a 3-pronged inquiry into (i) the extent to which the regulation interferes with the claimant's reasonable investment-backed expectations; (ii) the regulation's economic impact on the property owner; and (iii) the character of the government action.  *Id.* at 153 (citation omitted).  A regulation is considered a *per se* taking when it "completely deprive[s] an owner of all economically beneficial use" of the property. *Id.* (citation omitted).

45.     The Commonwealth's adoption of the Debt Moratorium Act and the Governor's issuance of Moratorium Orders thereunder amounts to a *per se* taking of the pledged Notes in that it has deprived, and continues to deprive, the Trustee and the holders of PFC Bonds of the value of the Notes and leaves the PFC Bonds without any compensation whatsoever.  This requires a remedy which in its mildest form would include an unsecured damage claim against the Commonwealth.

### B.     The Plan unfairly discriminates against the rights and claims of the Trustee.

46.     As discussed in detail above, the Trustee holds, among other rights and claims, general unsecured damage claims against the Commonwealth and the OMB and directly or indirectly through PFC,  liquidated GDB Claims against the DRA and PET (which, in turn, hold valid claims against the Commonwealth).   These claims are all valid and enforceable, are separate and distinct from the Trustee's contractual claims against PFC under the PFC Bonds themselves, and are not dependent on appropriations.  Yet, the Plan impermissibly attempts to

lump any and all claims against the Commonwealth related to the PFC Bonds – potentially including portions of other claims of DRA and PET against the Commonwealth – together in Class 63 and deprives them of any distribution.  In addition to violating section 1122 of the Bankruptcy Code (as discussed above), this improper classification also unfairly discriminates against the Trustee's claims (and the GDB's claims) by depriving them of the substantial treatment afforded to other general unsecured claims in the GUC class in violation of section 1129(b) of the Bankruptcy Code and, therefore, renders the Plan unconfirmable.

47.      Section 1129(b)(2)(B) permits confirmation of a plan "over the objection of an impaired class of creditors."  *Granada Wines*, 748 F.2d at 46.  "The provision allows confirmation of a plan if it does not unfairly discriminate against the dissenting impaired class; one aspect of fairness is that the dissenting class must receive no less on its claims than it would receive in a Chapter 7 liquidation."  *Id.*  The Trustee's non-appropriations-based claims are currently classified in Class 63 (which, as discussed above, is improper).  Class 63 is deemed to reject the Plan.  However, claims in Class 63 receive no distribution, while other general unsecured claims in the GUC class receive substantial treatment; moreover, the denial of *any* distribution to the Trustee's improperly classified claims (and possibly also to the GDB's claims) additionally results in a recovery by definition less than such claims would receive under a Chapter 7 liquidation in which such claims are correctly classified and paid.  Accordingly, the Plan violates section 1129(b) and section 1129(a)(7) and cannot be confirmed.

C.      **The Plan improperly assumes that PROMESA precludes *future* Appropriations.**

48.      As an initial matter, the Oversight Board has not established (and no court has determined) that PROMESA categorically preempts the right of all future Legislatures to ever fund the obligations incurred by PFC or the Authorized Debtors under the PFC Bonds and the

Notes, respectively, nor has it addressed how summarily abolishing a widely accepted vehicle for public financing would impact the Commonwealth's ability to access the public debt markets after emergence from the restructuring process.

49.     The current majority view of case law that considers the enforceability of appropriation-based debt, such as the Notes and the PFC Bonds, is that the contractual claims for repayment of such debt against the issuers become enforceable solely to the extent appropriations for payment are in fact made.  However, the treatment of appropriations-based claims under the Plan presumes that all contractual obligations under both the PFC Bonds and the Notes pledged as security for the PFC Bonds will never be satisfied by future appropriations and therefore currently *are and forever will be* unenforceable.  That legal conclusion has no support in this or any other jurisdiction.

50.     Put differently, the Oversight Board appears to believe PROMESA completely preempts the right of any future legislature to *ever* appropriate funds to pay the Notes (and, in turn, to fund debt service on the PFC Bonds).  The absolute default triggered by that view not only conflicts with norms in the public debt markets – as  investors and rating agencies generally do not question the likelihood of governmental bodies making good on debt requiring legislative appropriations – but also could adversely impact  Puerto Rico's future ability to raise capital for public purposes through this common mechanism.

51.     PROMESA grants the Oversight Board exclusive authority to certify budgets, including budgets that it has developed after determining in its discretion that a budget proposed by the Legislature is not compliant with an applicable fiscal plan.  *See* 48 U.S.C. §§ 2142(c)-(e). PROMESA also provides that its provisions "shall prevail over any general or specific

provisions of territory law . . . or regulation that is inconsistent" with PROMESA.  48 U.S.C. §
2103.

52.     Yet, as this Court has recognized, the power bestowed on the Oversight Board is
not so unrestrained as to render the Legislature "irrelevant or toothless."   *In re Financial
Oversight and Management Board for Puerto Rico,* 330 F. 3d 685, 701 (D.P.R. 2018).  Indeed,
"PROMESA *requires* that the Oversight Board look first to the elected government for fiscal
plan and budgetary direction, and requires extensive and specific commutations, with
opportunities for revision of proposals[.]"  *Id.* (emphasis added).  Under PROMESA's budgetary
procedures, the Oversight Board must first submit to the Governor and Legislature a forecast of
revenues for the budget period, (48 U.S.C. § 2142(b)), and then the Legislature develops and
presents its budget to the Oversight Board for approval (48. U.S.C. §§ 2142(d)-(e)).  If the
budget is compliant with the applicable fiscal plan under 48 U.S.C. § 2141, the Oversight Board
shall certify the budget for use by the Commonwealth (48 U.S.C. § 2142(e)(1)).  Alternatively,
the Oversight Board, Legislature, and Governor may jointly develop a budget for the
Commonwealth. 48 U.S.C. § 2142(f).  It is the Trustee's understanding that the Puerto Rico
Legislature never approved the Oversight's Boards budgets, which made no allocations for PFC
or the Authorized Debtors.

53.     Under either of these budgetary procedures, the Legislature may choose to fund
the obligations incurred by PFC or the Authorized Debtors under the PFC Bonds and the Notes.
So long as these appropriations are compliant with the applicable fiscal plan, the Oversight
Board is required to approve the budget.   *See* 48 U.S.C. § 2142(d)(1)(A) ("if the adopted
Territory Budget is a complaint budget, the Oversight Board *shall issue a compliance
certification* for such complaint budget[.]") (emphasis added).  In addition, the powers of the

23

Oversight Board to promulgate a fiscal plan and budget, and its pre-emption of the Legislature's right to do so, doesn't last forever. *See* 48 U.S.C. §2149. PROMESA thus does not completely preempt the Appropriation Acts and preclude future Legislatures from appropriating funds to pay the Notes (and, in turn, to fund debt service on the PFC Bonds).

54.     The Trustee seeks damages on behalf of itself and the holders of PFC Bonds from the Commonwealth, the OMB, and the Authorized Debtors in an amount up to the unpaid principal, interest, fees and other charges due and owing on the Notes.  Even if those obligations cannot be paid without Appropriations by the Legislature, which have not occurred, and as more fully set forth above, the Trustee asserts various claims and causes of action based upon, among other things, the breach of specific contractual and legislative obligations of the Commonwealth and the OMB, and for the Commonwealth's bad faith actions that have prevented PFC and the OMB from seeking Appropriations (or some portion of them) under the Moratorium Acts, as a matter of state and federal law, including improper diversion of funding to other purposes with a lower priority or right of payment.

55.     As previously detailed in the Trustee's Disclosure Statement Objection, the Oversight Board has provided no specific factual or legal justification (because none exists) for the Plan's proposed elimination of liability of the Commonwealth, the OMB, and the Authorized Debtors for non-payment of the PFC Bonds or damages relating to that non-payment, beyond the generalized assertion that all appropriation debt is unenforceable (the burden of proof of which rests with the Oversight Board).   As such, the Trustee objects to any provision of the Plan that would  extinguish (i) the Authorized Debtors' obligation to pay debt service payments to PFC under the Notes or (ii) the right of the Trustee to recover amounts owed under the PFC Bonds by preempting future legislative Appropriations to pay the Notes.

**D.**   **The Plan improperly constitutes a "back-door" liquidation of PFC.**

56.   PROMESA provides a number of tools for restructuring the debts of the Commonwealth and its varies agencies and instrumentalities, including separate entities such as PFC.  Congress carefully crafted each of these mechanisms to protect the due process rights of creditors through voting, collective action, and other procedural and substantive safeguards. Many of PROMESA's provisions that safeguard creditors' rights are incorporated by reference to Bankruptcy Code that have been interpreted by courts over a span of decades, providing creditors with further assurance that their rights will be protected.  For example, Title III provides a mechanism for adjusting public debts through a process akin to a Chapter 9 or Chapter 11 bankruptcy, incorporating concepts from both, and Title VI provides a mechanism for the negotiated restructuring of specific pools of debt in a largely out-of-court process.  Both of these procedures comport with fundamental notions of due process, providing creditors with notice, voting rights, and the ability to be heard before their rights may be prejudiced without their consent.

57.   With respect to PFC, the Plan ignores all of PROMESA's procedural safeguards and attempts to undertake a de facto liquidation.  The Plan classifies any and all claims against the Commonwealth relating to the PFC Bonds, potentially including portions of the claims of the GDB assigned to the DRA and the PET against the Commonwealth (which, in turn, would provide funds for the DRA and the PET to pay distributions on the Trustee's and/or PFC's claims against them pursuant to the GDB Title VI QM), in Class 63, deprives them of the right to vote on the Plan, and provides them with no distribution.  The Plan also does not specify what will happen to PFC's claims against the Authorized Debtors who are not departments of the Commonwealth (which, in any event, could only be done through a separate PROMESA

25

proceeding for such Authorized Debtors and/or PFC), and the Plan must be clarified to make clear it does not impair such claims.

58. The end result is that the Plan would leave PFC as a "zombie" entity – an empty shell with over $1.1 billion of liabilities but stripped of most or all of its assets, left with no ability to fund its administrative costs (including, among other things, over $150,000 of past-due Trustee fees under the Trust Agreement) and no orderly means of winding down.  All of that would occur, and would severely prejudice the Trustee and other creditors of PFC, without PFC's creditors having any meaningful due process of the sort that a separate proceeding under PROMESA for PFC would provide.  That result is wholly inconsistent with the fundamental purpose of PROMESA, and – at a bare minimum – the failure to provide an appropriate mechanism for the proper discharge of claims relating to the PFC Bonds – as was done for the PRIFA rum tax bonds under the Plan – and for the orderly wind-down of PFC, violates the adequacy requirement of section 1123(a)(5) of the Bankruptcy Code.  To the extent the failure to provide appropriate due process protections for creditors of PFC was intentional, the Plan likely also violates section 1129(a)(3), which requires a plan to be proposed in good faith. Accordingly, the Plan cannot be confirmed.

59. Finally, the releases and exculpations in the Plan do not provide a release for the PFC Trustee, and U.S. Bank thus seeks the establishment of a reserve for any indemnity claims for which the Commonwealth or PFC may be liable.

## **RESERVATION OF RIGHTS**

60. This Objection is based on the operative version of the Plan [Docket No. 17627] as of the date hereof.  To the extent the Plan is further amended between the filing of this Objection and the confirmation hearing, the Trustee reserves the right to supplement this

Objection and/or raise additional objections to the Plan, as may be further amended, at or prior to the confirmation hearing.  Moreover, the objections made herein also apply to any proposed confirmation order for the Plan (the "Confirmation Order") to the extent such Confirmation Order does not address the issues raised above, *provided* that the Trustee reserves the right to object to the Confirmation Order on any basis whatsoever, whether or not set forth in this Objection.

## CONCLUSION

61.     In its current form, the Plan cannot be confirmed without addressing the various issues set forth herein.  The Trustee objects to and opposes confirmation of the Plan unless and until the Oversight Board amends the Plan to (i) classify the Trustee's claims for damages arising from breaches of contract, bad faith, tortious interference, unjust enrichment, diversion of funds, and violations of the Contracts Clause by the Commonwealth and the OMB, all of which are general unsecured claims separate and apart from the Appropriations obligations of the Legislature, in the same class as other general unsecured claims, (ii) ensure that  the Trustee's claims against the Debt Recovery Authority and Public Entity Trust created in the Title VI Qualifying Modification of the GDB, and against Authorized Debtors who are not departments of the Commonwealth are not extinguished or otherwise enjoined, including without limitation by improper disallowance of the GDB Claim against the Commonwealth which is not appropriation debt, and (iii) ensure that the right of all future Legislatures to fund the obligations incurred by PFC and the Authorized Debtors, including under the PFC Bonds and Notes, is preserved.

*[ signature page follows]*

**WHEREFORE,** the Trustee respectfully requests that the Court decline to confirm the Plan unless the issues set forth in this Objection are addressed through appropriate modifications to the Plan.

In San Juan, Puerto Rico, on this 21st day of October, 2021.

Respectfully submitted,

By: *Iris J. Cabera-Gómez*

**IVERA, TULLA AND FERRER, LLC**
Eric A. Tulla
USDC-DPR No. 118313
Iris J. Cabrera-Gómez
USDC-DPR No. 221101
Rivera Tulla & Ferrer Building
50 Quisqueya Street
San Juan, PR 00917-1212
Tel: (787)753-0438
Fax:     (787)767-5784     (787)766-0409
etulla@ riveratulla.com
icabrera@riveratulla.com

and

**HOGAN LOVELLS US LLP**
Robin E. Keller, Esq.
Ronald J. Silverman, Esq.
Pieter Van Tol, Esq.
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
robin.keller@hoganlovells.com
ronald.silverman@hoganlovells.com
pieter.vantol@hoganlovells.com

*Counsel to the Trustee*

28

**CERTIFICATE OF SERVICE**

I hereby certify that this 21st day of October 2021 I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.  Further, a copy of this document will be served by email and/or mail as per the Case Management Procedures Order and a further Certificate of Service will be filed with the Court.


By: *Iris J. Cabrera-Gomez*
Iris J. Cabrera-Gomez