# **Exhibit D**

Copies of Appropriation Acts and Resolutions:
Act 164 of December 17, 2001;
Act 85 of June 13, 1998;
Joint Resolution 523 of August 24, 2000;
Act 113 of September 27, 1994

Case:17-03283-LTS   Doc#:18631-4   Filed:10/21/21   Entered:10/21/21 15:59:48   Desc:
Exhibit D- Appropriation Acts and Resolutions   Page 2 of 26

§ 607a What may be restructured, 7 L.P.R.A. § 607a

Laws of Puerto Rico Annotated <sup>Currentness</sup>

Title 7. Banking

Part III. Other Financial Institutions

Chapter 61. Government Development Bank for Puerto Rico

Subchapter IV. Debt Refinancing for Governmental Entities

7 L.P.R.A. § 607a

§ 607a What may be restructured

The advances, pledges, obligations and/or loans that may be executed, restructured and/or refinanced and the estimated amounts thereof to June 30, 2001, including accrued interest to be paid up to June 30, 2001, and the debt service for the Fiscal Year 2002, including therein the interest to be accrued from July 1, 2002 (effective date of the restructuring), are itemized in Columns B, C and D, respectively, of this section. The balance thereof and the annual payments corresponding to the principal and the interest and other expenses allowed under § 607 of this title to be paid or added to the principal may be greater or lesser than the amounts that appear in Columns C and D, respectively, of this section, provided the total annual payment of the principal, the interest and any other payment under said obligations does not exceed two hundred and twenty-five million dollars ($225,000,000). For those loans or obligations in process of being disbursed, the Government Development Bank shall establish segregated accounts in which the amounts pending disbursement shall be deposited for their future disbursement, without affecting the limit established by this subchapter regarding the maximum amount of the payment of the principal, the interest and other payments on all these debts.

ABCDDebt ServiceAmount toFiscal YearJune 30, 20012002EntityLine of Credit/Loan(000 omitted)(000 omitted)1. Land AdministrationNo. 2-20-1 for $10,000,000$ 3,480$ 8712. Health Facilities and Services Administration/Department of HealthNo. 2-16-8 for $204,000,000248,56722,080No. 2-16-9 for $250,000,000290,80725,832No. 2-16-7 for $332,000,000217,21019,2943. Department of HealthAdvance for 250,000,000 approved by GDB (BGF) Resolution No. 7576 of March 21, 2001250,00022,2074. Infrastructure Financing AuthorityNo. 2-69-3 for $10,000,000 (RC 725/2000)10,3331,5405. Land AuthorityNo. 2-21-12 for $8,000,00012,7331,8986. Housing BankNo. 2-53-10 for $20,000,00018,3862,7407. Tourism Company/Hotel Development CorporationNo. 2-49- for $165,200,000125,00011,1038. Sugar CorporationNo. 2-32-29 for $112,500,000107,9389,5889. Secretary of the TreasuryNo. 2-25-4 for

$23,587,27729,5734,407Budget Deficiency of Fiscal Year 2001268,000-0-Repayment Pledge related to the Sale of Tax Debts103,22215,38310. Solid Waste AuthorityNo. 2-23-8 for $21,400,00021,7453,24111. National Guard Institutional TrustNo. 2-48-I for $6,500,0003,44586312. Puerto Rico PoliceNo. 4-02-01 for $20,500,00022,1713,30413. Aqueduct and Sewer AuthorityNo. 2-14-21 for $22,060,0002,468618No. 2-14-27/28 for $150,000,000 (Act 95/2000)158,34414,065No. 2-14-25/26 for $180,000,000 (Act 179/2000)177,62215,778No. 2-14-20 for $30,000,000 (Act 179/2000)32,8214,891No. 2-14-22 for $32,000,000 (Act 179/2000)37,1245,533No. 2-14-32 for $68,000,000 (Act 179/2000)70,31610,479No. 2-14-19 for $100,000,000103,1359,161No. 2-14- for $112,000,000 (Collective Bargaining Agreement)27,4004,08314. Land AuthoritySeveral Loans*101,7389,037Total$2,443,578$217,996

* Includes several financings granted: No. 2-21-2 for $493,242.87, No. 2-21-7 for $17,216,155.85, No. 2-21-9 for $28,703,126.72, No. 2-21-10 for $2,549,877.39, No. 2-21-13 for $8,983,923.82, No. 2-21-14 for $19,117,909.1 sic], No. 2-21-16 for $8,295,531.94, No. 2-21-111 for $16,008,077.38, No. 2-21-18 for $369,717.13.

**Credits**

Dec. 17, 2001, No. 164, § 2.

7 L.P.R.A. § 607a, PR ST T. 7 § 607a

The Constitution, statutes, and court rules are current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to February 2018.

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

§ 607b Budget appropriations, 7 L.P.R.A. § 607b

Laws of Puerto Rico Annotated <sup>Currentness</sup>

Title 7. Banking

Part III. Other Financial Institutions

Chapter 61. Government Development Bank for Puerto Rico

Subchapter IV. Debt Refinancing for Governmental Entities

7 L.P.R.A. § 607b

§ 607b Budget appropriations

The Commonwealth of Puerto Rico shall honor, through budget appropriations made by the Legislature in the operating budgets for each fiscal year for the next thirty (30) years, beginning with fiscal year 2001-2002, the payments of the principal, the interest and any other payment allowed in § 607 of this title concerning the advances, pledges, obligations and loans identified in § 607a of this title, as they are restructured and/r refinanced pursuant to the provisions of this subchapter. Pursuant to this purpose, the Director of the Office of Management and Budget shall include in the operating budgets of the Commonwealth of Puerto Rico submitted annually by the Governor of the Commonwealth of Puerto Rico to the Legislature, beginning with the budget for fiscal year 2001-2002, the amount needed to meet the payment of the principal, the interest and any other payment related thereto. The budget appropriation may not exceed two hundred twenty-five million dollars ($225,000,000) each year, and said annual appropriation shall be made for the term that is necessary to settle the same, but said term shall not exceed thirty (30) fiscal years. The budget appropriations for the payment of the principal and the interest on the loan related to the budget deficiency for fiscal year 2001, which is included in § 607a of this title, shall be included in the operating budget beginning with fiscal year 2002-2003.

**Credits**

-Dec. 17, 2001, No. 164, § 3.

7 L.P.R.A. § 607b, PR ST T. 7 § 607b

Current through all acts translated by the Translation Office of the Puerto Rico

§ 607b Budget appropriations, 7 L.P.R.A. § 607b

Government through the 2011 Legislative Session and various acts from 2012 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version.

LAWS OF PUERTO RICO ANNOTATED Copyright; 1955-2018 by the Secretary of State of Puerto Rico and LEXISNEXIS of Puerto Rico, Inc. All rights reserved.

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case:17-03283-LTS Doc#:18631-4 Filed:10/21/21 Entered:10/21/21 15:59:48 Desc:
Exhibit D- Appropriation Acts and Resolutions Page 6 of 26

§ 401 Short title, 27 L.P.R.A. § 401

Laws of Puerto Rico Annotated Currentness
  Title 27. Public Service
    Part II. Communications
      Chapter 25. Telephone Authority

27 L.P.R.A. § 401

§ 401 Short title

This chapter may be cited as the 'Puerto Rico Telephone Authority Act'.

**Credits**

-May 6, 1974, No. 25, Part 1, p. 136, § 1.

**History**

**Transfer.**

Section 6 of Act Jan. 21, 1987, No. 7, p. 934, provides:

'If the transfer of the license issued by the Federal Communications Commission of the United States of America to operate public radio and television services takes place, the Public Radio and Television Services of the Department of Education established pursuant to Act No. 47 of June 15, 1985 1962, p. 105], as amended former §§ 1111a-1111d of Title 18], are hereby transferred to the Puerto Rico Telephone Authority.

'Once the transfer of the license takes place, all installations, properties, records and equipment in use or assigned to be used by the Department of Education or any other government entity with relation to the Public Radio and Television Services transferred by this Act are hereby transferred to the Authority which, in turn, shall transfer them to the Puerto Rico Public Broadcasting Corporation. In the same manner, all federal and Commonwealth of Puerto Rico funds are hereby transferred, subject to the conditions imposed for the granting of these funds which are in use or available for use in the administration thereof.'

### Codification.

Section 15(b)(1) of Act Aug. 23, 1990, No. 63, repealed, with exceptions, Act May 6, 1974, Part 1, No. 25-as amended by Act No. 7 of Jan. 21, 1987, and which had created the Puerto Rico Telephone Authority-contingent upon the sale of the Telephone Authority's assets. Act Apr. 10, 1990, No. 5, authorized the sale of those assets, and its § 16 provided that if the sale of assets were not completed within two years of April 10, 1990, then it, Act No. 5 of 1990, would be repealed automatically. As the conditions of the sale were not complied with during the time limit prescribed, Act Apr. 10, 1990. No. 5, was therefore automatically repealed, and thus Act May 6, 1974, No. 25, is presumed to remain in effect.

### Effectiveness.

Section 13 of Act Jan. 21, 1987, No. 7, provides: 'This Act which amended secs. 402, 407, 408, 409 and 412 of this title shall take effect immediately after its approval Jan. 21, 1987 to the sole effect for sic the Puerto Rico Telephone Authority and the Department of Education to initiate the proper steps and procedures needed to obtain the authorization to transfer the franchise and create the Transition Committee as provided in Section 9 of this Act see temporary provisions note under this section], and its remaining provisions shall take effect immediately after said authorization to transfer is granted.'

### Statement of motives.

May 6, 1974, No. 25, Part 1, p. 137.

### Separability.

Section 25 of Act May 6, 1974, No. 25, p. 136, renumbered as § 21 by Act June 24, 1998, No. 94, § 20, provides: 'The provisions of this Act this chapter are separable, and if any of its provisions are declared unconstitutional by a court of competent jurisdiction, said judgment shall not affect or impair any of the remaining provisions.'

Section 26 of Act May 6, 1974, No. 25, p. 136, renumbered as § 22 by Act June 24, 1998, No. 94, § 20, provides: 'Insofar as the provisions of this Act are in conflict with the provisions of any other law, or parts thereof, the provisions of this Act shall prevail.'

Section 15 of Act Aug. 23, 1990, No. 63, provides in part: '(a) Severing Clause.-The declaration of nullity of any part of this Act by a judicial determination shall not affect the validity of the remaining provisions.'

### Repealing clause.

Section 15 of Act Aug. 23, 1990, No. 63, provides in part:

§ 401 Short title, 27 L.P.R.A. § 401

'(b)(1) Repeal, Effectiveness of Agreements, Covenants, Claims, Contracts, Procedures and Regulations.-The Puerto Rico Telephone Authority Act, Act No. 25 of May 6, 1974, as amended §§ 401 et seq. of this title], with the exception of the provisions of Act No. 7 of January 21, 1987, which amended said Act that created the Puerto Rico Public Broadcasting Corporation, the provisions of the Puerto Rico Public Service Commission Act, Act No. 109 of June 28, 1962, as amended §§ 1001 et seq. of this title], with regard to the jurisdiction of the telecommunications companies subject to this Act, Section 14 of Act No. 5 of April 10, 1990 Laws of Puerto Rico, 1990, p. 68 and any other provision of law in contravention with the provisions of this Act, are hereby repealed, to be effective on the date of sale of the assets of the Puerto Rico Telephone Authority, as provided in Act No. 5 of April 10, 1990. The President of the Government Development Bank shall notify the Secretary of State the date in sic which the sale authorized by Act No. 5 of April 10, 1990, was carried out in order to compute the three (3) year period referred to in section 10(a) of this Act.

'(2) Notwithstanding the provisions of subsection (1), no provision of this Act shall be construed as modifying, altering or invalidating any agreement, covenant, claim, procedure or contract that is in force on the effective date of this Act, and that was originated by virtue of the Acts repealed in the preceding subsection.

'(3) The regulations, standards, procedures and all those other aspects regarding the regulation of the functioning and operation of the telecommunications companies that are in force on the effective date of this Act shall continue to apply until they are amended or repealed by the Commission, pursuant to these provisions.

'(c) Purchase-Sale Contract.- No purchase-sale contract granted by virtue of Act No. 5 of April 10, 1990, shall in any way limit, impair, reduce or alter the powers granted to the Puerto Rico Telecommunications Regulating sic Commission.

'The officials authorized to negotiate the terms and conditions of the sale of all the assets, of any nature, of the Telephone Authority, as provided in Act No. 5 of April 10, 1990, shall consult with the Commission and the latter, in the exercise of its powers and faculties, shall issue advisory opinions in those matters under its jurisdiction that must be incorporated in the purchase-sale contract and shall decide if said contract is in accordance with the provisions of this Act and the regulations approved hereunder.

'The sale authorized by Act No. 5 of April 10, 1990, is exempted from the requirements of Section 8 subsection (a) of this Act.

'(d) Public Notice of Constitution.-The Commission shall notify, in two (2) newspapers of general circulation, the date of its constitution, commencement of operations, the address of its physical location and any other information it deems pertinent.'

**Construction.**

Section 27 of Act May 6, 1974, No. 25, p. 136, renumbered as § 23 by Act June 24, 1998, No. 94, § 20, provides: 'This act, being a necessity for the welfare of the

Commonwealth and its inhabitants, shall be liberally construed to achieve the purposes thereof.'

**Temporary provisions.**

Section 5 of Act June 13, 1998, No. 85, provides:

'Transitory Measures.-For fiscal year 1997-98, the resources which the Telephone Authority of Puerto Rico contributed to the Telephone Authority Fund for Educational Excellence, created by Section 11 of Act No. 25 of May 6, 1974 § 411 of this title], as amended, may be used by the Department of Education together with the fifteen million (15,000,000) dollars from the General Fund designated for the payment of the debt of OMEP, in Joint Resolution No. 95 of June 27, 1997, to cover the operating expenses of its programs.

'As of fiscal year 1998-99, the Telephone Authority shall cover into the General Fund of the Commonwealth Treasury, an amount of not less than twenty million (20,000,000) dollars a year, on account of the payments in lieu of taxes, as provided in Section 11 of Act No. 25 of May 6, 1974, as amended. Provided, That, should the Telephone Authority become privately owned, it shall continue paying the corresponding taxes to the Commonwealth Treasury, until it is otherwise specified through a law to such effect.'

Sections 9 and 10 of Act Jan. 21, 1987, No. 7, p. 934, provide:

'(9) Transition Committee.-The Governor of Puerto Rico is hereby authorized to appoint a Transition Committee to adopt those transitory measures and make the necessary decisions to carry out the transfers directed by this act chapter without interrupting the administrative process, the rendering of services and the functioning of the transferred services. This Committee shall perform its duties keeping in mind the provisions of this Act and all applicable Federal Communications Commission regulations.

'The Transition Committee shall establish a consultation procedure to determine which employees attached to the Public Radio and Television Services of the Department of Education are interested in being employed by the new corporation.

'This Committee shall cease its functions when the Board of Directors of the Puerto Rico Public Broadcasting Corporation so determines. The Department of Education shall retain the responsibility for the administration of the Public Radio and Television Services until the transfer of the broadcasting facilities and services to the Puerto Rico Public Broadcasting Corporation is completed.

'(10) Pending procedures.-All claims or procedures pending before the Department of Education or before any court or agency on the date of approval of this Act which have been initiated pursuant to the provisions of the laws that govern the services transferred by this act will continue to be handled by said Department until a final

determination is reached in accordance with the laws and regulations in effect on the date such claims or procedures were filed or initiated. After a final and binding determination has been rendered thereon, the Secretary of Education shall transfer all files, documents and records related to said claims and procedures to the Puerto Rico Public Broadcasting Corporation.'

### Appropriations.

Section 3 of Act June 13, 1998, No. 85, provides: 'The Secretary of the Treasury shall deposit annually, on or before the 15th of July of each year, one of the fiscal years mentioned in Section 2 of this Act see special provisions note under this section], in a special account in the Government Development Bank for Puerto Rico, in the Puerto Rico Public Financing Corporation or in the entity acting as trustee of the bonds of said Corporation, the funds appropriated pursuant to Section 2 of this Act. Should it be necessary, the Secretary of the Treasury may advance from any available funds, those moneys needed to cover the payment of principal and interest on the obligations of the OMEP authorized by this Act.'

Section 12 of Act Jan. 21, 1987, No. 7, p. 934, provides: 'It is the public policy and commitment of the Government of the Commonwealth of Puerto Rico to continue to appropriate financial resources for the operation and functioning of the public broadcasting facilities owned by the people of Puerto Rico as it has to date. To these effects, an amount equal to that presently appropriated in the General Budget Joint Resolution to the Department of Education for the operation of the Public Radio and Television Services transferred hereby shall be appropriated to the Puerto Rico Public Broadcasting Corporation annually. These funds shall be consigned as a separate item in the Joint Resolution for Operating Expenses of the Government of Puerto Rico.'

### Special provisions.

Sections 1 and 2 of Act June 13, 1998, No. 85, whose § 4 repealed §§ 3, 4 and 5 and renumbered §§ 6 and 7 as 3 and 4, respectively, of Act Apr. 4, 1997, No. 7, which authorized OMEP to refinance its debts, provide:

'Financing.-Section 1.-The Office for the Improvement of Public Schools OMEP in Spanish is hereby authorized to obtain new financing for an amount of one hundred and forty million (140,000,000) dollars to be used to repair and beautify school facilities, purchase equipment and school supplies and for other programs and equipment for innovations and projects to direct the educational public policy of the country, and to restructure and refinance its outstanding debts incurred under the provisions of Act No. 34 of July 29, 1991 § 411 nt of this title], Act No. 175 of August 11, 1995 § 411 nt of this title], and Act No. 7 of April 4, 1997 § 411 nt of this title], amounting to approximately two hundred and forty-two million (242,000,000) dollars as of the 1st of March 1998. To such effect, the OMEP is hereby authorized to negotiate and execute with the Government Development Bank for Puerto Rico, its

subsidiary, the Puerto Rico Public Financing Corporation, and with other financial institutions, whatever agreements, notes and other financial contracts needed to obtain the new financing and carry out the restructuring and refinancing of the existing debts. As part of the new financing and said restructuring and refinancing, the OMEP is hereby authorized to place its notes, bonds and other obligations in the capital markets directly, or through a bond issue of the Puerto Rico Public Financing Corporation. It is also authorized that all expenses for the transactions related to said financing and the restructuring be added to the principal of the new financing and to the principal of the restructured and refinanced debt, including those expenses related to any bond issue of the Puerto Rico Public Financing Corporation, plus those amounts which would have to be deposited in the reserve accounts to be established to ensure the repayment of any bonds issued by the Puerto Rico Public Financing Corporation related to the restructuring and refinancing of said debts. The principal of the new financing and of the restructured and refinanced debt, including those charges for the transaction and the bond issue related thereto, and the amounts which would have to be deposited in the reserve accounts to secure said bonds, shall not exceed four hundred and twenty-five million (425,000,000) dollars. The new financing and the restructured and refinanced debt, pursuant to this Act this chapter], shall entail the payment of interest at an annual rate that shall not exceed eight percent (8% ) and shall become due no later than the 1st of August, 2026.

'Section 2.-The Commonwealth of Puerto Rico shall honor, through budgetary appropriations made by the Legislature in the operating budgets for each fiscal year for the next twenty-eight (28) fiscal years commencing in fiscal year 1998-99, the payment of principal and interest of the obligations incurred by the OMEP, pursuant to the authorization granted by Section 1 of this Act, including the payment of the amounts added to the principal of these obligations related to the costs of the transaction and the bond issue, plus the amounts deposited in the reserve accounts. For this purpose, the Office of Management and Budget shall include in each of the operating budgets of the Government of Puerto Rico submitted annually by the Governor of Puerto Rico to the Legislature, during the next twenty-eight fiscal years, commencing in fiscal year 1998-99 and ending in fiscal year 2025-26, the amounts needed to meet the annual payments of principal and interest on said obligations of the OMEP. The budgetary appropriations authorized herein shall be used exclusively for the payment of principal and interest on said obligations of the OMEP and for any other expense related thereto, and shall not be used for other purposes nor shall they be subject to claims by other creditors of the OMEP.'

Sections 1-3 of Act May 25, 1994, No. 24, provide:

'Early retirement.-Section 1.-Every employee of the Puerto Rico Telephone Authority or its subsidiaries, in its capacity as a public enterprise, as defined in § 3 of Act No. 447 of May 15, 1951, as amended, who are participants in the Retirement System of the Employees of the Government of Puerto Rico and its Instrumentalities, who on the effective date of the total or partial dissolution of the public enterprise have completed a minimum of twenty-four and a half (24 1/2) accredited years of service, shall be

Case:17-03283-LTS   Doc#:18631-4   Filed:10/21/21   Entered:10/21/21 15:59:48   Desc:
Exhibit D- Appropriation Acts and Resolutions   Page 12 of 26

§ 401 Short title, 27 L.P.R.A. § 401

entitled to receive a minimum pension from the Retirement System as provided herein.

'(a) Sixty-five (65% ) percent of the average salary, for those who have completed twenty-four and a half (24 1/2) years or more of creditable service and are not yet fifty-five (55) years of age.

'(b) Seventy-five (75% ) percent of the average salary, for those who have completed twenty-four and a half (24 1/2) years of creditable service and are fifty-five (55) years of age.

'(c) Seventy-five (75% ) percent of the average salary, for those who have completed thirty (30) or more years of creditable service and are not yet fifty-five (55) years of age.

'Section 2.-The actuarial cost of the pensions provided by this Act shall be paid by the Puerto Rico Telephone Authority to the Retirement System of Employees of the Government of Puerto Rico and its instrumentalities, provided there is an availability of funds for the payment of these early retirements. Said actuarial cost shall consist of the difference between the present value of the accelerated pension provided by this Act, and the present value of a pension for years of service under the provisions of Act No. 447 of May 15, 1951, as amended.

'Section 3.-All of the provisions of Act No. 447, supra §§ 761 et seq. of Title 3], that are not in conflict with this Act, shall be applicable to the early retirement plans contemplated under this Act.'

Act Apr. 10, 1990, No. 5, p. 44, which has a statement of motives, provides:

'Telephone Authority Sale of Assets.-Section 1.-Statement of purposes.-The Commonwealth of Puerto Rico has an urgent need to obtain sufficient funds to address successfully two historical and undeferrable commitments: the financing of its education reform and capital investment in its infrastructure and its agricultural development. To accomplish these aims, it is necessary to establish the Permanent Fund for the Development of Education and the Permanent Infrastructure Fund which will be funded by the total amount of the net proceeds from the sale of the communications system now operated by the Telephone Authority through its network of subsidiaries. This is the sole asset that the Commonwealth of Puerto Rico currently owns which is capable of generating, through its sale, enough resources to establish these two Funds.

'The sale authorized by this act does not constitute the declaration of public policy of selling government assets to the private sector. The purpose of this act is to empower officials of the Commonwealth of Puerto Rico and the agencies that will be responsible for negotiating the terms of the transaction, to take all necessary and convenient actions for the successful sale of the Communications System; to set forth public policy guidelines to direct and govern the transaction; to establish such proper guarantees as are needed for the protection of employees of the telephone system; and to provide for the creation of a body which will regulate the telecommunication

operations in the country, including the Communications System, so as to maintain the highest level of technological development.

'Section 2.-Definitions.-The following terms shall have the meanings stated hereinbelow, unless another meaning clearly arises from the context:

'(a) 'Authority' shall mean the Telephone Authority of Puerto Rico and its subsidiaries, created by Act No. 25 of May 6, 1974, as amended §§ 401 et seq. of this title], and the Puerto Rico Communications Authority as created by Act No. 212 of May 12, 1942, as amended former §§ 291 et seq. of this title].

'(b) 'Bank' shall mean the Government Development Bank for Puerto Rico, created by Act No. 17 of September 23, 1948, as amended §§ 551 et seq. of Title 7].

'(c) 'Buyer' shall mean the person or persons who purchase all, or a part of the Communications System, according to the terms, conditions and warranties established by this act.

'(d) 'Puerto Rico Telecommunications Regulatory Commission' shall mean the commission to be created by law for the purpose of regulating telecommunications in the Commonwealth of Puerto Rico, including the Communications System.

'(e) 'Executive Director' shall mean the Executive Director of the Puerto Rico Telephone Authority.

'(f) 'Employee' shall mean any person who is a career employee or an employee member of the union of the Authority.

'(g) 'Career Employee' shall mean any person who upon the date of the sale, is employed by the Authority and according to the rules and regulations of the Authority is a regular employee who is not a confidential employee ( empleado de confianza) and is not a member of a collective bargaining unit.

'(h) 'Employee' shall mean any person who, at the date of the sale, is employed by the Authority and is a member of a collective bargaining unit.

'(i) 'Date of Sale' shall mean the date when the Authority delivers the Communications System to the Buyer and the Buyer pays the Authority the agreed sales price.

'(j) 'Permanent Fund for the Development of Education' shall mean the fund to be created by law, into which there shall be deposited not less than one billion ($1,000,000,000) dollars from the proceeds of the sale of the Communications System. Net profits generated by this Fund shall be used to finance programs and projects directed to the improvement of education.

'(k) 'Permanent Infrastructure Fund' shall mean the fund to be created by law, into which there shall be deposited not less than one billion ($1,000,000,000) dollars from the proceeds of the sale of the Communications System. Net profits generated by this Fund shall be used to finance infrastructure projects.

'( l) 'Person' shall mean any natural or juridical person, including any agency, instrumentality or public corporation, cooperative, cooperative association, special employee-owned corporation, or any combination thereof, created, organized or existing under the laws of the Commonwealth of Puerto Rico, the United States of America, any state or foreign country.

'(m) 'Net Proceeds of the Sale' shall mean the total price paid by the Buyer for the Communications System, less the total amount of the Authority's debt at the date of the sale and the expenses incurred by the Authority and the Bank in connection with the sale of the Communications System.

'(n) 'Basic Services' shall mean those services provided through lines or telephone systems to the general public which allow communication between telephones located in the same local service area or between different geographic areas within Puerto Rico. These services include monthly charges for line rental, charges for line usage and non-recurring charges related to the installation of, and changes in, phone services to residences, business including government offices and public telephones.

'(o) 'Communications System' shall mean all the assets of any nature, owned by the Authority, including any issued and outstanding common shares of the Puerto Rico Telephone Company and any communications facilities, but not including the assets of whatever nature, owned by the Puerto Rico Corporation for Public Broadcasting.

'Section 3.-Authorization.-The sale of all the assets of whatever nature, whether real, personal or a combination thereof, related to the operation of the Communications System, excluding the assets of the Puerto Rico Corporation for Public Broadcasting is hereby authorized. Such authorization permits the sale of all or part of the communications system to one or several persons. The terms and conditions of this act shall bind the successors, assignees and heirs of the Buyer.

'The Bank is hereby authorized to take all the steps needed or convenient, before whatever forum or agencies, Commonwealth or Federal, to carry out the sale of the Communications System.

'Section 4.-Minimum Sale Price.-The net proceeds of the sale received by the Commonwealth of Puerto Rico will be no less than two billion ($2,000,000,000) dollars. These proceeds will be distributed as a deposit of no less than one billion ($1,000,000,000) dollars in the Permanent Fund for the Development of Education and one billion ($1,000,000,000) dollars in the Permanent Infrastructure Fund. The Legislature will determine, through legislation to such effects, the proportion of deposits in such Funds of any amount received in excess of the amounts set forth in this section.

'Section 5.-The Capital Funds.-The Capital Funds mentioned in the preceding section shall be created by law upon the consummation of the sale and income herefrom will be used exclusively for financing projects related to the development of education and to the revitalization of the infrastructure of Puerto Rico, including investments in

agriculture, as determined by the Legislature.

'The financial structure to be established for the Permanent Funds provided in this act will include viable alternatives and mechanisms to avoid the depletion of the principal of these funds.

'Section 6.-Terms and Conditions of the Sale.-The sale of the Communications System will be made subject to the inclusion of the following terms and conditions in the contract of sale.

'(a) No employee or ex-employee of the Authority participating in the Retirement system of Government Employees of Puerto Rico and its Instrumentalities, or in the Retirement System of the Puerto Rico Telephone Company, shall lose retirement benefits due to years of participation, percentages accumulated for years of service, and pensions granted up to the date of the sale. The Government of the Commonwealth of Puerto Rico and the Buyer or Buyers will agree to a plan which will comply with this provision so as to guarantee said benefits.

'(b) For a period of three years from the date of sale, there will be no increase in tariffs and charges in effect applicable to basic services which the Authority at the date of sale offers to its subscribers and users. This provisions will not apply to modifications of tariffs or charges imposed by bodies outside the jurisdiction of the government of the Commonwealth of Puerto Rico.

'(c) The Buyer will not be able to dismiss any employee as a direct result of the sale of the Communications System which shall mean any dismissal for the purpose of reducing the number of employees under circumstances substantially similar to those prevailing at the time of the date of sale.

'Section 7.-Protection of Employees.-

'(a) Dismissal of employees of the Authority as a direct result of the sale of the Communications System is hereby prohibited.

'(b)(1) Any employee dismissed in violation of this prohibition will have a cause of action against the Buyer in the courts of the Commonwealth of Puerto Rico.

'(2) The right granted herein shall be subject to a statute of limitation of six (6) months from the date of dismissal.

'(3) In all actions brought forth under this section by an employee for a dismissal which occurs during the two (2) years following the date of sale, the employer shall be obligated to set forth, in his answer to the complaint, the facts which gave rise to the dismissal and shall have the burden of proving that the dismissal was not a direct result of the sale in order to be exempt from complying with the provisions of clause (4) of this section. After the two years, the burden of proof shall be on the employee.

'(4) If it is determined that the employee was dismissed for the purpose of reducing

Case:17-03283-LTS    Doc#:18631-4    Filed:10/21/21    Entered:10/21/21 15:59:48    Desc:
Exhibit D- Appropriation Acts and Resolutions    Page 16 of 26

§ 401 Short title, 27 L.P.R.A. § 401

the number of employees and that the circumstances are similar to those prevailing at the time of the sale, the employee will have a right to: (a) back pay of all salaries and other benefits which were not received and (b) to be reinstated in the same position, or in another substantially equal position to that held immediately prior to dismissal.

'(5) All causes of action under this section shall be brought free of court costs to the employee-plaintiff, before the Superior Court now of First Instance of Puerto Rico, in the division which corresponds to the district in which the employee was working at the time of dismissal, or where the employee resides at the time the action is brought. Any claim that an employee has by virtue of this act can be brought in accordance with the provisions of Act No. 2 of October 17, 1961, as amended § 3118 of Title 32]. The Secretary of Labor and Human Resources may, motu proprio, or at the request of the employee, bring an action for the protection of the rights established in this act.

'(c) The cause of action provided in this section for the benefit of the employees shall be in addition to any other established by Commonwealth or Federal laws and in the collective bargaining agreement currently in effect.

'(d) Employees of the Communications Authority who have twenty-five (25) years of service shall have the option to obtain early retirement upon payment of an amount equal to the present value required to obtain a merit pension or to choose reassignment to another agency.

'Section 8.-Ad-honorem Advisory Committee.-The Government shall appoint an Advisory Committee which shall supervise the sale process of the Communication System and guarantee that the same shall be carried out in accordance with the provisions of this act. This Advisory Committee shall be composed of five (5) citizens of recognized moral standing and financial knowledge, who must not be related with any of the potential Buyers or with the Communications System. At least two (2) of these members shall not belong to the political party of the government.

'No ad-honorem members may, themselves or through associates, before, during and for one year after the end of their term, hold any position, nor have any pecuniary interest, in any entity which has been directly, or indirectly, related to the transaction or the negotiations of the sale of the Communications System.

'The President of the Bank and the Executive Director shall keep the Advisory Committee informed of the process of sale and of all the details of the negotiations. The Committee shall have the right to request from the Bank or the Authority whatever information or documents it deems necessary to carry out its functions. Said Committee shall be permitted to meet with potential Buyers to clarify data, obtain additional information or for any other legitimate reason related to the transaction.

'Section 9.-Sale Process.-

'(a) The President of the Bank will be responsible, jointly with the Executive Director, for the negotiation of the terms of the sale of the Communications System in

accordance with the provisions of this act.

'(b) The sale shall be carried out through a negotiated auction.

'(c) The President of the Bank, in coordination with the Executive Director and in consultation with the Advisory Committee, shall administratively establish, without being subject to the provisions of Act No. 170 of August 12, 1988, as amended §§ 2101 et seq. of Title 3], the procedures and guidelines which will govern the sale process in order to: obtain the greatest possible number of offers from potential Buyers; promote competition between potential Buyers; maintain the confidentiality of the process; and after consideration of all relevant factors, maximize the benefits to be received by the Commonwealth of Puerto Rico. The procedures and guidelines shall provide for the prompt execution of the sale.

'(d) In evaluating the proposals of potential Buyers, the following factors, among others shall be considered:

'(1) The price and conditions of the sale;

'(2) the Buyer's commitment to maintaining a telecommunications system that is techonologically advanced and efficient in serving consumers and the Buyer's commitment to carrying out continuing improvements and investments in the Communications System;

'(3) the commitment of the Buyer to include in the sale contract the benefits for employees established in this act;

'(4) the Buyer's financing plans and the Buyer's economic ability of carrying out these plans in a reasonable time to expedite the sale;

'(5) the probability that the buyer can obtain the permits and approvals needed to consummate the sale;

'(6) the commercial and financial reputation of the Buyer, and the Buyer's ability to conduct the telecommunications business, which shall be an essential requirement;

'(7) the probability that the Buyer will consummate the transaction; and

'(8) the plans of the Buyer to permit employee and consumer participation in the equity of the enterprise or enterprises which will acquire the communications System.

'(e) After the evaluation referred to in clause (d), the Bank shall submit a report to the Executive Director with specific information about the proposals received. The President of the Bank will recommend the proposal or proposals that best comply with factors (1) thru (8) of said clause (d) and which offer the best price to the Commonwealth of Puerto Rico.

'(f) The Executive Director shall submit this report to the Board of Directors of the Authority, which will examine it and decide whether it approves or disapproves said

proposal or proposals. If the Board of Directors of the Authority decides to approve the proposal or proposals, it will authorize the Executive Director to sign whatever documents are needed to consummate the transaction, which will be prepared by the President of the Bank or by the person to whom he delegates this task. The Board of Directors will inform the President of the Bank of its decision, who will, in turn, notify the Bank's Board of Directors. If this Board approves the proposal or proposals, the sale shall be deemed to be authorized. The Board of Directors shall instruct the President of the Bank to negotiate, prepare and sign whatever documents are necessary to consummate the transaction.

'(g) Once the sale has taken place, the President of the Bank will submit a report to the Legislature.

'Section 10.-Regulatory Commission.-A Telecommunications Regulatory Commission of Puerto Rico shall be created by legislation, to regulate telecommunications in Puerto Rico, including the entire Communications System operated by the Buyer, to adopt whatever criteria of quality it believes fair and reasonable and to establish tariffs applicable to said telecommunications system. Said legislation shall provide that, at least, one third (1/3) of the members of the Regulatory Commission shall not be members of the political party of the Governor who appoints them.

'Section 11.-Approval of Legislation.-The Legislature shall approve, as a prerequisite to the consummation of the sale provided in this act, the following legislation:

'(a) the Act creating the Permanent Fund for the Development of Education;

'(b) the Act creating the Permanent Infrastructure Fund;

'(c) the Act creating the Puerto Rico Telecommunications Regulatory Commission;

'(d) the Concurrent Resolution proposing a constitutional amendment for the purpose provided in § 12 of this Act.

'Section 12.-Guarantee of the Use of the Funds.-The Legislature has the intention of creating, in perpetuity, the Permanent Fund for the Development of Education and the Permanent Infrastructure Fund and their income, revenues and interests will be used exclusively for the development of education and infrastructure. To these ends, a Concurrent Resolution will be approved to consult the people of Puerto Rico on a constitutional amendment which will set forth and guarantee said purposes.

'Section 13.-Tax Laws.-The tax laws of the Commonwealth of Puerto Rico shall apply to the Buyer of the Communications System.

'Property taxes which are collected with respect to municipalities shall be covered into a special fund and the Legislature will distribute such fund annually to the municipalities of the Commonwealth of Puerto Rico in the manner and proportion corresponding to the formula which shall be established by law. The amounts which the municipalities receive pursuant to this formula will not be less than that received

by each of these as a contribution of the Authority during the year 1989.

'Section 14. Repealed. Act Aug. 23, 1990, No. 63, p. 258, § 15(b)(1), eff. as of date of sale of shares as provided by Act Apr. 10, 1990, No. 5, p. 258.

'Section 15.-Severance Clause.-If any provision of this act, or the application of such a provision to any person or circumstance, should be declared null and void, the remainder of this Act and its application will not be affected by this declaration of nullity.

'Section 16.-Automatic Repeal.-The sale of the Communications System authorized by this act must be completed within a period of two (2) years from the date this act is approved April 10, 1990]. If the sale is not completed during the period indicated, it will be understood that this act is repealed upon the expiration of said period.

'Section 17.-Effectiveness.-This act shall take effect immediately after its approval April 10, 1990].'

Sections 7 and 8 of Act Jan. 21, 1987, No. 7, p. 934, provide:

'Section 7. Personnel.-Once this act takes effect all employees attached to the Public Radio and Television Services of the Department of Education will retain all rights and prerogatives acquired under the laws and regulations in effect.

'The Board of Directors shall establish by regulations the positions to be created in the new Corporation, the requirements and qualifications to fill them as well as the criteria to evaluate the personnel, and shall determine which employees shall become part of it.

'The personnel attached to the Radio and Television Services of the Department of Education who have manifested their interest in being drafted by the new Corporation shall be evaluated by the Board of Directors using technical personnel specialized in personnel evaluation. Priority shall be given by the Corporation's Board of Directors to employees of the Radio and Television Services of Puerto Rico who meet the qualifications of the positions created and the previously established evaluation criteria when considering candidates to fill those positions with equivalent duties to those carried out by these employees.

'The Executive Director of the Puerto Rico Public Broadcasting Corporation shall participate, in coordination with the Board of Directors, in the selection of those employees who shall go on to the Puerto Rico Public Broadcasting Corporation.

'The present personnel of the Public Radio and Television Services which is not transferred to the Puerto Rico Public Broadcasting Corporation shall retain all their vested rights under the laws and regulations in effect, and shall be retained in the Department of Education, or subject to prior consultation and approval by the employee, shall be relocated in other agencies carrying out similar functions if available, or in any others that, at the discretion of the Secretary of the Department of

Education or the head of the corresponding agency are of at a proper level for the knowledge, technical ability, skills, background and reliability of the person being relocated in performing his duties.

'Section 8. No provision of this Act which amended §§ 402, 407, 408, 409 and 412 of this title shall be construed to modify, alter or invalidate any agreement, covenant, claim or contract granted by the responsible officials of the Public Radio and Television Services transferred by this Act which are in force when this act becomes effective.

'All the regulations that govern the procedures and operation of the Public Radio and Television Services transferred hereby which are in force when this Act takes effect shall continue to be applied until they are amended or repealed, pursuant to the provisions of this act and the prior approval of the Federal Communications Commission, if required.'

### Cross references.

Sale of Assets, see §§ 431 et seq. of this title.

Telecommunications, see §§ 265 et seq. of this title.

### ANNOTATIONS

### 1. Generally.

Although the Telephone Authority Act should be construed liberally, what is not stated therein cannot be included in said act by way of construction. ( Reiterating Ops. Sec. Just. of March 3, 1977, unpublished; No. 1975-19; March 11, 1974 and October 25, 1970, unpublished.) 1984 Op. Sec. Jus. No. 1.

Puerto Rico Telephone Authority falls within the scope of §§ 1001-1013 of Title 3. 1981 Op. Sec. Jus. No. 7.

27 L.P.R.A. § 401, PR ST T. 27 § 401

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2011 Legislative Session and various acts from 2012 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version.

§ 401 Short title, 27 L.P.R.A. § 401

LAWS OF PUERTO RICO ANNOTATED Copyright; 1955-2018 by the Secretary of
State of Puerto Rico and LEXISNEXIS of Puerto Rico, Inc. All rights reserved.

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S.
Government Works.

**(R. C. del S. 2547)**

# RESOLUCION CONJUNTA 523
# 24 DE AGOSTO DE 2000

Para aumentar a trescientos noventa millones de dólares ($390,000,000), incluyendo intereses, gastos de emisión y reservas requeridas, la autorización que tiene la Autoridad de Acueductos  y Alcantarillados de Puerto Rico para incurrir en obligaciones mediante las Resoluciones Conjuntas Núm. 138 del 7 de julio de 1997 y 479 del 14 de agosto de 1999, y extender la vigencia de dicha Resolución hasta el 30 de junio de 2001 o hasta la fecha en que se realice una emisión de bonos o se utilice cualquier otro mecanismo de financiamiento permanente para dicho proyecto.

## EXPOSICION DE MOTIVOS

El Superacueducto de la Costa Norte (SCN), proyecto desarrollado por la Autoridad de Acueductos y Alcantarillados para atender las necesidades actuales y futuras de abasto de agua potable en la costa norte del país, es el proyecto de infraestructura de acueducto más importante que se ha desarrollado en los últimos 30 años en Puerto Rico.

Cuando esté completada, tal estructura transferirá hasta 75 millones de galones diarios (MGD) de agua desde la ciudad de Arecibo hasta el Area Metropolitana de San Juan (AMSJ).  A lo largo de su trayectoria, de aproximadamente 42 millas, el SCN le suplirá agua potable a los municipios de la costa norte (Arecibo, Barceloneta, Manatí, Vega Baja, Vega Alta, Dorado, Toa Baja, Toa Alta, Bayamón, Cataño, San Juan, Guaynabo y Caguas).  De éstas, Barceloneta y Toa Alta serán conectadas posteriormente al SCN y se beneficiarán indirectamente los municipios de Carolina y Trujillo Alto.  El crecimiento poblacional de dicha región resultará en viviendas, comercios e industrias adicionales con un aumento proporcional en el uso de agua.  El SCN fue planificado tomando en cuenta las necesidades de los residentes de la región y las proyecciones sobre aumento poblacional.

Como es conocido la AAA y la Autoridad para el Financiamiento de la Infraestructura (AFI) desarrollan iniciativas de proyectos de mejoras permanentes para mejorar los sistemas de distribución de agua potable de la costa norte. El Superacueducto de la Costa Norte, desarrollado por la AAA, es la espina dorsal de dicho plan de mejoras.  Ambas iniciativas son un paso afirmativo y de avance en la rehabilitación y expansión de la infraestructura de acueductos en la región.

El Gobierno de Puerto Rico, ha realizado numerosos esfuerzos para proveer la asistencia económica necesaria y viabilizar aquellos programas de mejoras dirigidas a apoyar a la AAA en su encomienda de proveer al Pueblo de Puerto Rico sistemas confiables de acueductos y alcantarillados. Consistente con dicha política pública, esta Asamblea Legislativa ha aprobado asignaciones presupuestarias y autorizaciones para incurrir en obligaciones que han permitido el alto nivel de terminación actual del Superacueducto de la Costa Norte y hacerlo realidad.

Los fondos adicionales hasta la cantidad de $390 millones son necesarios para cubrir aumentos en varias partidas del Proyecto, los gastos de emisión y las reservas requeridas. Entre éstas se encuentran: adquisición de terrenos, tramitación de permisos, cumplimiento y mitigación ambiental, administración de contratos y consultoría, modificaciones al Proyecto para facilitar y viabilizar la distribución de agua en el futuro, costos de diseño y construcción reclamados por los diseñadores y contratistas, y costos de las extensiones a las pólizas de seguros.

La Legislatura de Puerto Rico mantiene su respaldo y compromiso con este importante proyecto, autorizando medidas fiscales adicionales como la presente, para hacer viable que la AAA pueda cumplir con las obligaciones fiscales correspondientes al Superacueducto de la Costa Norte.

**RESUELVESE POR LA ASAMBLEA LEGISLATIVA DE PUERTO RICO:**

Artículo 1.- Se enmienda la Resolución Conjunta 138 del 7 de julio de 1997, según enmendada por la Resolución Conjunta Núm. 479 de 14 de agosto de 1999, para aumentar el monto de las obligaciones en las cuales puede incurrir la Autoridad de Acueductos y Alcantarillados para la construcción del Superacueducto de la Costa Norte de trescientos cincuenta millones ($350,000,000) de dólares, como dispone al presente, a trescientos setenta y siete millones ($377,000,000) de dólares más intereses.  Además, se extiende la vigencia de la autorización para incurrir en dichas obligaciones hasta el 30 de junio de 2001 ó hasta la fecha en que se refinancien las obligaciones del proyecto mediante emisión de bonos o  mediante cualquier otro mecanismo de financiamiento permanente, lo que ocurra más tarde.

Artículo 2.- La Autoridad de Acueductos y Alcantarillados podrá reestructurar y refinanciar el balance de las obligaciones relacionadas con el Superacueducto de la Costa Norte con el Banco Gubernamental de Fomento para Puerto Rico, incluyendo todos los gastos relacionados a dicha transacción de reestructuración y refinanciamiento, y cualesquiera depósitos en cuentas de reserva que sean requeridos, hasta la cantidad máxima de principal de trescientos noventa millones de dólares ($390,000,000) según se hace referencia en el Artículo 2. La deuda reestructurada y refinanciada, conforme a esta Resolución, deberá pagarse en un término máximo de treinta (30) años a una tasa anual que no excederá de  ocho (8) porciento anual. En el caso de que se utilice una nota, bono u otra evidencia de deuda de la Autoridad de Acueductos y Alcantarillados que no devengue intereses o que constituyan un bono de incremento de capital ("capital appreciation bonds"), para propósitos de aplicar el límite de principal establecido en este Artículo, el principal de dicha deuda será la cantidad inicial del principal de la misma, según se establezca en el documento que evidencie dicha deuda o en la resolución que autorice la misma.

Artículo 3.- El  Gobierno de Puerto Rico  incluirá en su presupuesto anual el pago de principal y prima, si alguna, e intereses de las obligaciones en que incurra la Autoridad de Acueductos y Alcantarillados relacionadas con el Superacueducto de la Costa Norte, incluyendo cualquier refinanciamiento de dichas obligaciones. A tenor con dicho fin, el Director de la Oficina de Gerencia y Presupuesto incluirá en el presupuesto del Gobierno de Puerto Rico para los años fiscales 2001-2002 al 2031-2032 a ser sometido por el Gobernador de Puerto Rico a la Asamblea Legislativa, las cantidades necesarias para cumplir con el pago de las obligaciones o de las obligaciones refinanciadas, según sea el caso, hasta un máximo de treinta y cuatro

millones novecientos mil dólares ($34,900,000) anuales.  Al menos un día antes de las fechas de vencimiento del pago de principal e intereses de las obligaciones, el Secretario de Hacienda depositará en una cuenta especial en el Banco Gubernamental de Fomento para Puerto Rico a nombre de la Autoridad de Acueductos y Alcantarillados, la cantidad necesaria para cumplir con lo establecido en este Artículo. Las asignaciones realizadas por virtud de esta Resolución Conjunta, serán utilizadas exclusivamente para el pago de las obligaciones incurridas relacionadas con el Superacueducto de la Costa Norte y no podrán ser utilizadas para otros propósitos, ni estarán sujetas a reclamaciones por otros acreedores de la Autoridad de Acueductos y Alcantarillados.

Artículo 4.- Se autoriza a la Autoridad de Acueductos y Alcantarillados a parear los fondos asignados con aportaciones particulares, estatales, municipales o federales.

Artículo 5.- Esta Resolución Conjunta comenzará a regir inmediatamente después de su aprobación.

§ 3075 Payment of principal and interests by the..., 23 L.P.R.A. § 3075

Laws of Puerto Rico Annotated <sup>Currentness</sup>
Title 23. Public Planning and Development
Part IV. Navigation and Marine Trade
Chapter 105. Maritime Shipping Authority

23 L.P.R.A. § 3075

§ 3075 Payment of principal and interests by the Commonwealth of Puerto Rico

The Commonwealth of Puerto Rico shall honor the payment of principal and interest of the obligations to be restructured and/r refinanced. To such effects, the Director of the Office of the Management and Budget shall include the amounts needed to meet the payment of principal and interest of the debt restructuring plan of the Maritime Shipping Authority, in the operating budgets of the Commonwealth of Puerto Rico Government to be submitted annually by the Governor of Puerto Rico to the Legislature, starting in fiscal year 1995-96, pursuant to § 3074 of this title.

**Credits**

-Sept. 27, 1994, No. 113, § 2.

**History**

**Text references.**

'Office of the Budget and Management' was substituted with 'Office of the Management and Budget' pursuant to Act Aug. 3, 1995, No. 110.

**Codification.**

See note under § 3074 of this title.

**Statement of motives.**

Sept. 27, 1994, No. 113.

§ 3075 Payment of principal and interests by the..., 23 L.P.R.A. § 3075

23 L.P.R.A. § 3075, PR ST T. 23 § 3075

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2011 Legislative Session and various acts from 2012 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version.

LAWS OF PUERTO RICO ANNOTATED Copyright; 1955-2018 by the Secretary of State of Puerto Rico and LEXISNEXIS of Puerto Rico, Inc. All rights reserved.

**End of Document**
© 2021 Thomson Reuters. No claim to original U.S. Government Works.