UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br>                        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>                        Movant,<br><br>v.<br><br>AMERINATIONAL COMMUNITY SERVICES, LLC, as servicer for the GDB Debt Recovery Authority, and CANTOR-KATZ COLLATERAL MONITOR LLC<br><br>                        Respondents. | |

**REPLY IN SUPPORT OF DEBTORS' MOTION *IN LIMINE*
FOR ORDER EXCLUDING EXPERT TESTIMONY OF LIZETTE MARTINEZ**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................4

    I.      The DRA Parties Misstate the Legal Standard for This Motion..............................4

    II.     The DRA Parties' Own Arguments As to PROMESA § 314(b)
           Demonstrate Ms. Martinez's Testimony is Irrelevant ............................................6

    III.    The DRA Parties Do Not Have Any Valid Security Interest in the Act 30-
           31 Revenues Retained by the Commonwealth .........................................................8

    IV.    The Act 30-31 Excise Tax Statutes Are Preempted.................................................9

    V.     Testimony Relating to HTA's "Potential" Use of Act 30-31 Revenues
           HTA Received is Not Relevant...................................................................................9

CONCLUSION................................................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Acevedo-Garcia v. Monroig*,
   351 F.3d 547 (1st Cir. 2003) ................................................................................................11

*Andazola v. Logan's Roadhouse, Inc.*,
   2013 U.S. Dist. LEXIS 60541 (N.D. Ala. Apr. 29, 2013) ......................................................4

*Campos v. Safety-Kleen Sys., Inc.*,
   2016 WL 109884 (D.P.R. Jan. 8, 2016) .................................................................................5

*Caruso v. Solorio*,
   2020 U.S. Dist. LEXIS 245841 (E.D. Cal. Jan. 4, 2021) .......................................................4

*Deal v. Hamilton County Bd. of Educ.*,
   392 F.3d 840 (6th Cir. 2004) ..................................................................................................5

*FTC v. BurnLounge, Inc.*,
   753 F.3d 878 (9th Cir. 2014) ..................................................................................................5

*Gibbs v. Gibbs*,
   210 F.3d 491 (5th Cir. 2000) ..................................................................................................5

*In re City of Detroit*,
   524 B.R. 147 (Bankr. E.D. Mich. 2014) ................................................................................7

*Fin. Oversight & Mgmt. Bd. for P.R. v. Andalusian Glob. Designated Activity Co.
   (In re Financial Oversight & Mgmt. Bd. for P.R.)*,
   948 F.3d 457 (1st Cir. 2020),
   *cert. denied*, 141 S. Ct. 844 (2020) ........................................................................................8

*In re Salem*,
   465 F.3d 767 (7th Cir. 2006) ..................................................................................................5

*In re Sanitary & Improv. Dist. #7*,
   98 B.R. 970 (Bankr. D. Neb. 1989) .......................................................................................7

*Kenney v. Head*,
   670 F.3d 354 (1st Cir. 2012) ............................................................................................4, 6

*Lyons v. England*,
   307 F.3d 1092 (9th Cir. 2002) ..............................................................................................10

*Mass. Mut. Life Ins. Co. v. DLJ Mortg. Cap., Inc.*,
  2017 U.S. Dist. LEXIS 222650 (D. Mass. Apr. 18, 2017) ...................................................... 5

*Plaza-Torres v. Rey*,
  2006 WL 6884391 (D.P.R. Apr. 21, 2006) ............................................................................. 6

*Robledo v. Furiel Auto Corp.*,
  2015 WL 6473276 (D.P.R. Oct. 26, 2015) ........................................................................... 10

*Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*,
  161 F.3d 77 (1st Cir. 1998) .................................................................................................... 5

*United States v. Guzmán-Montañez*,
  756 F.3d 1 (1st Cir. 2014) .................................................................................................... 10

*United States v. Wood*,
  741 F.3d 417 (4th Cir. 2013) ................................................................................................. 5

**STATUTES**

11 U.S.C. § 502 ........................................................................................................................ 2, 9

11 U.S.C. § 943 ............................................................................................................................ 7

11 U.S.C. § 1126 ...................................................................................................................... 2, 9

48 U.S.C. §§ 2101–2241 .............................................................................................................. 3

**OTHER AUTHORITIES**

6 Collier on Bankruptcy ¶ 943.03 ................................................................................................ 7

Fed. R. Evid. 401 ....................................................................................................................... 10

Fed. R. Evid. 402 ..................................................................................................................... 4, 5

iii

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of Debtors the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Public Buildings Authority ("PBA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the Commonwealth and PBA, the "Debtors"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] hereby submits this reply (a) in support of the *Debtors' Motion In Limine for an Order Excluding Expert Testimony of Lizette Martinez* [ECF No. 18330] and *Memorandum of Law in Support of Debtors' Motion in Limine for an Order Excluding Expert Testimony of Lizette Martinez* [ECF No. 18328] (collectively, the "Motion" or "Mot."), and (ii) in response to the *DRA Parties' Memorandum of Law in Opposition to Debtors' Motion in Limine for Order Excluding Expert Testimony of Lizette Martinez* [ECF No. 18519] (the "Opposition" or "Opp.").[2]

## PRELIMINARY STATEMENT

1.  The Oversight Board's Motion demonstrates any testimony by Lizette Martinez ("Ms. Martinez") at Plan confirmation would be wholly irrelevant to Plan confirmation and thus inadmissible for two equally compelling reasons. First, her testimony is predicated on an alleged security interest in Commonwealth revenues that simply does not exist. As demonstrated through extensive briefing, and this Court's own prior decisions, the DRA Parties have no security interest in Act 30-31 Revenues collected and retained by the Commonwealth. Moreover, any obligation to transfer such revenues to HTA would be both expressly and impliedly preempted by PROMESA. Second, Ms. Martinez's testimony largely relates to how another debtor (HTA),

---

[1] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[2] Capitalized terms not expressly defined herein (many of which are defined *infra*) have the meaning ascribed to them in the Motion.

which has not filed a plan of adjustment, "potentially" spent money historically transferred to it. But, evidence as to how HTA may have used such revenues has no bearing on whether a Plan that does not adjust HTA's debt should be confirmed.

2. Far from giving the Court a reason to deny the Motion, the DRA Parties' Opposition confirms the Oversight Board is right: Ms. Martinez's testimony is irrelevant if the DRA Parties lack their asserted security interest and claim against the Commonwealth or the Act 30-31 Excise Tax Statutes are preempted. The Martinez Report reveals Ms. Martinez's testimony would revolve around (1) the quantification of the amount of Act 30-31 Revenues either retained by the Commonwealth or transferred to HTA since 2016, Martinez Report at 5–25, and (2) how HTA may have used Act 30-31 Revenues purportedly transferred to it. Martinez Report at 25–32. The DRA Parties argue the testimony is relevant to Plan confirmation both because (1) the Act 30-31 Revenues retained by the Commonwealth are subject to the DRA Parties' security interest, which they contend is not being properly treated by the Plan in purported violation of PROMESA § 314(b)(3) (Opp. ¶¶ 29–33, 38–39); and (2) the DRA Parties have an administrative expense claim that must receive appropriate treatment under PROMESA § 314(b)(4). Opp. ¶¶ 34–37. That is, the DRA Parties argue Ms. Martinez's testimony is relevant if—and only if—all the DRA Parties' legal arguments are accepted by the Court.

3. The DRA Parties ignore Bankruptcy Code section 502(a),[3] made applicable by PROMESA section 301(a). In short, a claim is not allowed when there is a pending objection to it. Bankruptcy Code section 1126(a) only permits allowed claims to vote. The DRA Parties concede their assertions of secured and administrative claims are subject to the debtors' objections.

---

[3] Bankruptcy Code section 502(a) provides: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." 11 U.S.C. § 502(a).

2

Unless and until the objections are overruled and the claims are allowed, the DRA Parties have no claims entitled to distributions under the Plan because only allowed claims can be paid. Therefore, their expert reports assuming the existence of allowed secured and/or administrative claims have no relevance in the absence of their claims' allowance.

4. Moreover, as the Oversight Board has demonstrated both in connection with the Motion to Dismiss and the Administrative Expense Motion Objection, as a matter of law the DRA Parties have no administrative expense claim against the Commonwealth or security interest in retained Act 30-31 Revenues, and the Act 30-31 Excise Tax Statutes have been preempted by PROMESA. As a result, Ms. Martinez's testimony has no relevance to Plan confirmation and should not be admitted.

5. The DRA Parties seek to avoid this conclusion by arguing the Motion is not the proper forum to adjudicate legal issues relating to the existence and scope of their security interest and claim. Opp. ¶¶ 5, 8, 39, 40. But this argument ignores the fact the DRA Parties put the shoe on the wrong foot. It is the DRA Parties who are not allowed to proffer expert testimony assuming allowed claims when they do not have allowed claims.

6. Unable to conjure a real basis for the relevance of Ms. Martinez's testimony, the DRA Parties fall back to arguing (i) the threshold to admit evidence is "very low," Opp. ¶ 25, (ii) the Court should lean in favor of admitting expert reports, Opp. ¶ 27, and (iii) evidence relating to HTA's eventual use of revenues transferred to it, while not actually relevant to any issue before the Court, may provide helpful "background" information. Opp. ¶¶ 7, 26, 41. But a "low" standard for relevance cannot get around the fact the DRA Parties have provided no basis for the admission of Ms. Martinez's testimony, besides the legally deficient assertion they have a security interest or claim against the Commonwealth. Moreover, none of the authorities the DRA Parties cite suggest

3

the Court should lean in favor of admitting irrelevant expert testimony—if anything, the jurisprudence suggests expert testimony is subject to a higher "relevance" hurdle than other evidence. Nor can the DRA Parties hide behind issues of "background" to avoid the fundamental irrelevance of Ms. Martinez's testimony as to HTA's purported use of its revenues. The DRA Parties' own authorities show background evidence is admissible only if the background evidence itself tends to prove or disprove a fact of consequence. Evidence on how a legally separate entity (HTA) may have "potentially" used revenues transferred to it has no bearing on whether a Plan that does not include HTA should be confirmed. Such evidence is irrelevant to Plan confirmation and cannot be admitted. The Oversight Board respectfully submits the Motion should be granted, and Ms. Martinez's testimony excluded in its entirety.

## ARGUMENT

I. **The DRA Parties Misstate the Legal Standard for This Motion**

7. While "all relevant evidence is admissible," *see* Opp. ¶ 25 (citing Fed. R. Evid. 402), the DRA Parties ignore the flipside of that statement: "evidence which is not relevant is not admissible." *Kenney v. Head*, 670 F.3d 354, 358 (1st Cir. 2012). Evidence relating only to claims that are not allowed, is irrelevant. Similarly, evidence about claims determined to be legally deficient is irrelevant and therefore inadmissible. *See, e.g.*, *Caruso v. Solorio*, 2020 U.S. Dist. LEXIS 245841, at *43 (E.D. Cal. Jan. 4, 2021) ("evidence or arguments relating to a dismissed claim is not relevant."); *Andazola v. Logan's Roadhouse, Inc.*, 2013 U.S. Dist. LEXIS 60541, at *26–27 (N.D. Ala. Apr. 29, 2013) ("In accordance with the federal prohibition on admission of irrelevant evidence, see Fed. R. Evid. 402, this court will grant the motion in limine to exclude evidence that is relevant only to plaintiff's dismissed claims."). As the Oversight Board demonstrated in the Motion, and as further discussed below, Ms. Martinez's proposed testimony relates only to an asserted security interest and claim, neither of which has any legal basis, and

4

thus Ms. Martinez's testimony must be excluded as irrelevant. Regardless of the DRA Parties' or the Oversight Board's contentions about the DRA Parties' claims, unless the Oversight Board's objections are overruled, the DRA Parties do not have allowed claims and cannot proffer relevant evidence about them.

8.  The DRA Parties contend the "law favors admission of expert reports, particularly in bench trials," in an apparent attempt to argue that normal rules of relevance do not apply to expert testimony, at least where the Court is the fact-finder. Opp. ¶ 27. The DRA Parties fail to cite a single authority for that proposition, which is wrong in any event. Notably, while the DRA Parties do cite cases suggesting the Court's gatekeeping function under *Daubert* is reduced in a bench trial (Opp. ¶ 27), none of those cases stand for the proposition that the Court should lean in favor of admitting expert testimony that has no relevance to the case. Instead, the DRA Parties' cases relate solely to the "reliability" prong of the *Daubert* inquiry—not relevance.[4] Cases on relevance, if anything, demonstrate the standard for relevance is actually higher in connection with expert testimony than other evidence, because "[t]o be admissible, the expert testimony must be relevant not only in the sense that all evidence must be relevant, *see* Fed. R. Evid. 402, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998); *see also Campos v. Safety-Kleen Sys., Inc.*, 2016 WL 109884, at *6 (D.P.R. Jan. 8, 2016) (excluding expert evidence regarding certain issues which were unrelated

---

[4] *See, e.g., Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) (making determination on admissibility under *Daubert* gatekeeping doctrine); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) (same); *United States v. Wood*, 741 F.3d 417, 425 (4th Cir. 2013); *FTC v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) (same, and stating that Court must ensure expert testimony is "relevant" before admitting it); *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) (same); *Mass. Mut. Life Ins. Co. v. DLJ Mortg. Cap., Inc.*, 2017 U.S. Dist. LEXIS 222650 (D. Mass. Apr. 18, 2017) (same).

5

to the outstanding legal claims).[5] Here, the DRA Parties have failed to establish Ms. Martinez's testimony is relevant in either respect: it does not go to a fact of consequence, and would not assist the trier of fact.

**II.   The DRA Parties' Own Arguments As to PROMESA § 314(b) Demonstrate Ms. Martinez's Testimony is Irrelevant**

9.     The DRA Parties first argue Ms. Martinez's testimony is relevant because PROMESA § 314(b)(3) requires the Commonwealth "not [be] prohibited by law from taking any action necessary to carry out the [P]lan," and the Plan cannot satisfy § 314(b)(3) because it "violates the DRA's rights under Commonwealth law and the Takings Clauses of the Constitutions of the United States and Puerto Rico" by diverting revenues "subject to the DRA's perfected liens" and because it "destroys the DRA's liens and priority designations." Opp. ¶¶ 30–31. The DRA Parties thus argue that Ms. Martinez's testimony is relevant because, they claim, they have a security interest in Act 30-31 Revenues retained by the Commonwealth. This argument only confirms the Oversight Board is right. The DRA Parties make plain their PROMESA § 314(b)(3) argument is predicated upon the DRA Parties' view of the law: they have a valid security interest and claim against the Commonwealth, and the Act 30-31 Excise Tax Statutes are not preempted. Even aside from the DRA Parties undisputably not having allowed claims, as the Oversight Board has shown in the Motion to Dismiss and Administrative Expense Motion Objection, (i) the Act 30-31 Excise Tax Statutes have been preempted by PROMESA, (ii) the Commonwealth's retention of the Act 30-31 Revenues is consistent with PROMESA's mandates, and (iii) the DRA Parties

---

[5] The DRA Parties' only response to *Ruiz-Troche* is simply to note that in that case, the expert's testimony was relevant. Opp. ¶ 27, n.8. Yet it is of no moment that a different expert in a different case had relevant things to say. The key point is that the expert was subjected to the relevancy standard—a standard the DRA Parties cannot surmount here. Similarly, the DRA Parties fail to meaningfully distinguish *Plaza-Torres v. Rey*, 2006 WL 6884391 (D.P.R. Apr. 21, 2006), and *Kenney v. Head*, 670 F.3d 354 (1st Cir. 2012). As the DRA Parties recognize (Opp. ¶ 27, n.8), in both cases the court excluded as irrelevant evidence that had no consequence on the ultimate question.

6

have no security interest in Commonwealth revenues or claim against the Commonwealth. As a result, Ms. Martinez's testimony is irrelevant.

10. Moreover, evidence relating to the Commonwealth's historical retention of Act 30-31 Revenues is not relevant to any PROMESA § 314(b)(3) challenge, because the jurisprudence is clear that PROMESA § 314(b)(3) only prohibits the Plan from providing for *future* violations of (non-preempted) territorial law—it does not prohibit the plan from discharging debts arising before confirmation. *See, e.g.*, 6 Collier on Bankruptcy ¶ 943.03 (under 11 U.S.C. § 943(b)(4) (the chapter 9 equivalent of PROMESA § 314(b)(3)) "the confirmation of a chapter 9 plan does not exempt a municipality from future compliance with state law."); *In re Sanitary & Improv. Dist. #7*, 98 B.R. 970, 974–75 (Bankr. D. Neb. 1989) (11 U.S.C. § 943(b)(4) does not prohibit plan from adjusting and discharging debts in contravention of state law, but does require that new bonds to be issued pursuant to the plan satisfy state law requirements relating to bond provisions); *In re City of Detroit*, 524 B.R. 147 (Bankr. E.D. Mich. 2014) (plan could be confirmed under 11 U.S.C. § 943(b)(4) even though it violated Michigan constitutional provisions prohibiting the impairment of pension and other claims). Notably, after the Plan is confirmed, the Act 30-31 Excise Tax Statutes will be explicitly preempted on a go forward basis by the Plan and the Court's confirmation order. *See* Plan, Art. 89.3 (providing for preemption of statutes that are inconsistent with PROMESA); Plan, Exhibit K (listing Act 30-31 Excise Tax Statutes as preempted). Ms. Martinez's testimony as to the potential size of a claim against the Commonwealth based on its pre-confirmation retention of Act 30-31 Revenues is thus irrelevant to any objection that could be raised under PROMESA § 314(b)(3) by the DRA Parties.

11. The DRA Parties' argument as to PROMESA § 314(b)(4) further demonstrates the Motion should be granted. The DRA Parties argue Ms. Martinez's testimony is relevant to

7

quantify their purported administrative expense claim, and that to be confirmed the Plan must provide for the full payment of that claim pursuant to PROMESA § 314(b)(4). Opp. ¶¶ 34–37. But once again, the DRA Parties merely prove Ms. Martinez's testimony is only relevant *if* the DRA Parties have an administrative expense claim against the Commonwealth. As the Oversight Board explained in the Administrative Expense Motion Objection, however, the DRA Parties do not have any such administrative expense claim. As a result, Ms. Martinez's proposed testimony is irrelevant to Plan confirmation proceedings. The DRA Parties do not provide a single reason suggesting Ms. Martinez's testimony is relevant in the event the DRA Parties lack their asserted security interest in retained Act 30-31 Revenues or claim against the Commonwealth.

### III. The DRA Parties Do Not Have Any Valid Security Interest in the Act 30-31 Revenues Retained by the Commonwealth

12. The DRA Parties assert they have a valid security interest in the Act 30-31 Revenues retained by the Commonwealth, largely just incorporating by reference arguments from briefing on the Motion to Dismiss. *See* Opp. ¶¶ 38–39.[6] For all the reasons explained in the Motion to Dismiss and the Oversight Board's reply in support of the Motion to Dismiss [Case No. 21-00068-LTS, ECF No. 67] (the "Adversary Reply"), the Oversight Board submits the DRA Parties have no valid security interest in Act 30-31 Revenues retained by the Commonwealth, and as a result, Ms. Martinez's testimony relating to the valuation of the DRA Parties' alleged security interest is irrelevant and should be excluded. Similarly, as the Oversight Board argued in the

---

[6] The DRA Parties raise, in a perfunctory manner, the arguments (1) that the Act 30-31 Excise Tax Statutes transfer a property interest to HTA because they contain mandatory language (Opp. ¶ 38); (2) that the Court has not previously determined that the Act 30-31 Excise Tax Statutes do not transfer a property interest to HTA (Opp. ¶ 38, n.9); and (3) that *Financial Oversight & Management Board for Puerto Rico v. Andalusian Global. Designated Activity Co. (In re Financial Oversight & Management Board for Puerto Rico*, 948 F.3d 457, 468-69 (1st Cir. 2020), *cert. denied*, 141 S. Ct. 844 (2020) does not apply. Opp. ¶ 38, n.9. The Oversight Board submits each of these arguments is mistaken and should be rejected for the reasons given in the Motion to Dismiss and the Adversary Reply. *See, e.g.*, Motion to Dismiss at 12–31[Case No. 21-00068-LTS, ECF No. 40]; Adversary Reply ¶¶ 25, 31–32, 39.

8

Administrative Expense Motion Objection, it is clear the DRA Parties do not have a valid administrative expense claim against the Commonwealth.

13. The DRA Parties argue this Motion is not the proper forum for the Court to determine the legal issues relating to the DRA Parties' security interest or claim. Opp. ¶¶ 5, 8, 39, 40. As explained above, the DRA Parties are the ones who are premature. They do not have allowable claims. The DRA Parties ignore that under Bankruptcy Code section 502(a) a claim is not allowed when there is a pending objection, and Bankruptcy Code section 1126(a) only permits allowed claims to vote. Unless and until the objections are overruled and the claims are allowed, the DRA Parties have no claims entitled to distributions under the Plan because only allowed claims can be paid. The only purpose of Ms. Martinez's testimony would be to quantify the value of the DRA Parties' asserted security interest or administrative claim. Such testimony is irrelevant in the absence of their claims' allowance.

### IV. The Act 30-31 Excise Tax Statutes Are Preempted

14. The DRA Parties also dispute the Act 30-31 Excise Tax Statutes have been preempted by PROMESA, incorporating by reference the arguments from their opposition to the Motion to Dismiss. Opp. ¶ 40. For the reasons explained in the Motion to Dismiss, Adversary Reply, and Administrative Expense Motion Objection, the Court should hold the Act 30-31 Excise Tax Statutes are preempted. Notably, the DRA Parties do not dispute that, if the Act 30-31 Excise Tax Statutes have been preempted, Ms. Martinez's testimony is irrelevant.

### V. Testimony Relating to HTA's "Potential" Use of Act 30-31 Revenues HTA Received is Not Relevant

15. The DRA Parties do not and cannot argue evidence relating to HTA's historical use of HTA's own revenues has any bearing on whether the Plan—which does not adjust HTA's debts—is confirmable or not. The DRA Parties nonetheless argue that such evidence should still

9

be admitted as "background" evidence to "provide[] the Court with a fuller, more complete picture" that could "aid the Court in understanding all the facts." Opp. ¶ 41; *see also* Opp. ¶¶ 7, 26. This argument is unavailing to the DRA Parties, however. The DRA Parties ignore that while "background" evidence may be admissible, the background evidence still has to be "relevant" to be admissible—that is, it still has to have a "tendency to make a fact more or less probable than it would be without the evidence," and that fact must be "of consequence in determining the action." Fed. R. Evid. 401; *see also, e.g.*, *Lyons v. England*, 307 F.3d 1092, 1110 (9th Cir. 2002) ("admissible background evidence must be relevant to determine 'the ultimate question'" in the case) (citation omitted); *Robledo v. Furiel Auto Corp.*, 2015 WL 6473276, at *2 (D.P.R. Oct. 26, 2015) (granting motion to exclude evidence and rejecting argument that it constituted "relevant background evidence"). Yet the DRA Parties do not provide any explanation whatsoever as to why evidence relating to HTA's "potential" use of certain revenues it allegedly received provides the Court with any assistance in understanding the facts of consequence to the Commonwealth's Plan. There is no reason why the Court would be aided in determining whether the Plan should be confirmed by considering such evidence. The DRA Parties' mere assertions that evidence as to HTA's "potential" use of revenues is relevant background, without any explanation as to why, cannot provide a basis for such testimony to be admitted.[7]

16. The DRA Parties' authorities (*see* Opp. ¶ 26) are not to the contrary. *United States v. Guzmán-Montañez*, 756 F.3d 1, 7 (1st Cir. 2014), for example, held the district court did not err in admitting evidence which, while not directly demonstrating the defendants' guilt, did directly

---

[7] The DRA Parties also argue Ms. Martinez's conclusions as to HTA's potential use of funds "also serve to confirm the accuracy comprehensiveness of the Report itself." Opp. ¶ 41. But they offer no meaningful explanation as to how providing additional detail regarding an irrelevant issue makes it any more admissible. Nor do they cite any case law supporting such a novel proposition.

10

"corroborate the government's theory" as to the defendant and his accomplice's actions while committing the charged crime. It was thus relevant to the ultimate question in the case. Similarly, *Acevedo-Garcia v. Monroig*, 351 F.3d 547 (1st Cir. 2003), does not support the DRA Parties. In that case, the First Circuit held it was not an abuse of discretion to admit evidence regarding previously dismissed political harassment claims because that evidence may still have been relevant to the defendant's "current practice," which was an issue relevant to the remaining claims. *Id.* at 561. That is, in *Acevedo-Garcia* the "background practice" *did* relate to a consequential fact—the atmosphere in which the plaintiffs brought their political discrimination claims. *Id.* Here, evidence relating to how a legally separate entity used its revenues received from the Commonwealth simply has no bearing or relevance on any fact at issue at Plan confirmation, and the DRA Parties do not conjure any reasoned argument to the contrary.

[*Remainder of page intentionally left blank.*]

**CONCLUSION**

WHEREFORE the Oversight Board respectfully requests the Motion be granted, the Court enter the proposed order attached to the Motion as **Exhibit A**, and the Court grant the Oversight Board such other and further relief as is just.

Dated: October 22, 2021
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Brian. S. Rosen
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

Timothy W. Mungovan
Elliot R. Stevens
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
One International Place
Boston, MA 02110
Tel: (617) 526-9600

Michael A. Firestein
Lary Alan Rappaport
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*