UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

          Debtors.

-------------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)


**[Response to Docket # 17627, # 18447]**

**OBJECTION TO PROPOSED ORDER AND JUDGMENT CONFIRMING SEVENTH
AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE
COMMONWEALTH OF PUERTO RICO, FILED BY INDIVIDUAL GO
BONDHOLDER (PETER C. HEIN)**


Dated:  October 22, 2021

## <u>TABLE OF CONTENTS</u>

I.   FOMB BEARS THE BURDEN OF PROVING EACH REQUIREMENT FOR
     CONFIRMATION IS MET ................................................................................................1

II.  SPECIFIC OBJECTIONS TO PROVISIONS IN THE PROPOSED ORDER
     AND JUDGMENT ............................................................................................................1

III. OBJECTION TO WAIVER OF RULE 3020(E) AUTOMATIC STAY, AND
     REQUEST FOR STAY OF CONSUMMATION UNTIL ANY TIMELY
     APPEAL IS ADJUDICATED ...........................................................................................11

IV.  RESERVATION OF RIGHTS TO RESPOND TO ANY REVISIONS TO THE
     PLAN, AND CONTINUED ASSERTION OF PRIOR OBJECTIONS ...........................11

**<u>TABLE OF ABBREVIATIONS AND CITATIONS</u>**

| | |
|---|---|
| # | Docket entries are referred to in the form of "#__" |
| "COFINA" | Puerto Rico Sales Tax Financing Corporation |
| "Commonwealth" | Commonwealth of Puerto Rico |
| GO bonds | General obligation bonds issued by the Commonwealth of Puerto Rico for which the full faith credit and taxing power of the Commonwealth is pledged |
| PBA bonds | Bonds issued by Puerto Rico Public Building Authority "secured by a pledge" of certain rentals and "further secured by the guaranty of the Commonwealth" |

Peter C. Hein, a GO and PBA bondholder who purchased in the 2009 through March 2012 time period, years before PROMESA was even in prospect, previously filed an objection to Confirmation (#18575) ("Objection"), and now files this Objection to Proposed Order and Judgment Confirming the Seventh Amended Plan (#18447).

The Court is respectfully referred to my Objection to Confirmation of Plan (#18575), as well as my response and objection to Debtor's Motion in Limine (#18181), and my objections to the Disclosure Statement (#16908, #16977 and #17536).  I will not repeat here the objections I have previously made, which I continue to maintain.

## I.    FOMB BEARS THE BURDEN OF PROVING EACH REQUIREMENT FOR CONFIRMATION IS MET

As set forth in my Objection (#18575), FOMB admits that it "has the burden of demonstrating each of the provisions of PROMESA Section 314 are satisfied."  #18471-page-3-of-4.  Thus, no proposed paragraph may be included in the Order and Judgment unless FOMB has satisfied its burden of proof as to the matter in question.

## II.    SPECIFIC OBJECTIONS TO PROVISIONS IN THE PROPOSED ORDER AND JUDGMENT

I object generally to the entire proposed order and judgment.  Without limiting my objections to the plan and any proposed order and judgment seeking to confirm the plan, I note the following specific objections to specific aspects of the proposed order and judgment.  The paragraphs that follow use the same paragraph numbers as are used in the proposed order and judgment.  Although I do not comment on each and every paragraph in the proposed order and judgment, in light of my overall position objecting to the proposed plan and to the proposed order and judgment as a whole, my failure to specifically comment on any particular provision is not an acceptance of it, but rather reflects my desire to focus my comments on specific issues that go beyond my overarching objection to the proposed plan and, thus, my overarching objection to any proposed order and judgment confirming the plan.

1

**#18447-page-10-to-11-of-77:**  Numerous certificates, affidavits and other papers are listed with no "Docket Entry No."  I reserve all rights to object to those materials, once docket entry numbers are supplied.

**Paragraph 1:**  Object for the reasons noted in #18575.

**Paragraph 2:**  Object for the reasons noted in #18575.

**Paragraph 3:**  I object generally, and to the following specifics as well:

   a.   I object to any provision preempting "Commonwealth good faith and credit pledge statutes" and statutes relating to "Commonwealth Guaranty – Public Building Authority Bonds" (listed in exhibit C, #18447-page-75-to-76-of-77).  I also object to the preemption of any other statutes appropriating Commonwealth revenues for payment of Commonwealth General Obligation or Public Building Authority debt.

   b.   I object to the proposed language in "II.I." in Exhibit C that would preempt 21 L.P.R.A. §§5002 and 5004 (and any related provisions).  21 L.P.R.A. §5002 provides for a special tax of 1.03% on the appraised value of all personal and real property in Puerto Rico not exempted from taxes "for the amortization and redemption of the general obligations of the Commonwealth."  21 L.P.R.A. §5004(a) provides that the proceeds of the 1.03% of property tax imposed by §5002 shall be deposited into a trust known as the "Commonwealth Debt Redemption Fund" to be applied "solely for the payment of principal and interest on the existing and future general obligation of the Commonwealth of Puerto Rico."  As discussed in #18575-page-23-of-303, these provisions provide part of the security for the GO bonds.

   c.   FOMB's proposal to include in the proposed order and judgment a provision to preempt the statutes pertaining to the 1.03% of property tax is particularly troubling because it is inconsistent with both the Plan (§74.1(e)) and the disclosure statement (#17628-page-56-of-654) both of which specifically provide

2

that payment of the New GO Bonds will come "first," from "the 1.03% property tax levied pursuant to Act 83-1991."

d.     I note that Article VI, Section 8 of the Puerto Rico Constitution is not listed on Exhibit C.  However, ¶3(B) speaks broadly about preempting Commonwealth laws, using phrases like "without in any way limiting the foregoing" and "include, without limitation."  And language in ¶3(B) – "all laws, rules, and regulations giving rise to obligations of the Debtors discharged by this Plan and this Order pursuant to PROMESA are preempted by PROMESA" – would arguably extend to Article VI §8 and §2, last paragraph.  As the disclosure statement acknowledges, some holders of GO and PBA bonds have taken the position that Article VI, Section 8, provides for a Constitutional lien for the benefit of GO and Commonwealth guaranteed bonds.  *See* #18575-page-23-of-303, referencing Article VI, §8 and §2, last paragraph, as well as 13 L.P.R.A. §41.  The Plan and disclosure statement further provide that "monies arising from the operation of Article VI, Section 8 of the [Puerto Rico] Constitution" shall be the "second" source of payment for the New GO Bonds.  Plan §74.1(e), #17628-page-56-of-654.  It would thus appear that, by tacitly proposing to preempt Article VI, Section 8 and Section 2, last paragraph, of the Puerto Rico Constitution, debtors are proposing an order and judgment inconsistent with both the plan and representations in the disclosure statement concerning the plan in this second respect as well.

e.     The foregoing underscores that extreme caution is required before the Court preempts a long list of statutes.  Each statute listed on Exhibit C must be read and the effect of each must be evaluated.  Tacit preemption of a Constitutional provision should not be adopted by the Court.  Preemption by sweeping "include, without limitation" and "without in any way limiting the foregoing" should not be adopted by the Court.  Just as the release and related injunction and bar order

3

provisions in the plan are overly broad and improper in scope (#18575-page-14-16-of-303), so too are the preemption provisions of the proposed order and judgment.

f.      Another statute proposed to be specifically preempted is Act 33-1942.  As noted in my Objection, one part of Act 33-1942, 13 L.P.R.A. §41, reinforcing Article VI, §8 and §2, last paragraph, of the Puerto Rico Constitution, provides statutorily for an irrevocable "pledge[ ] for the payment of the principal of, and the interest on" GO bonds "which …shall be paid with ….any available funds in the Commonwealth Treasury, which funds are appropriated as continuous appropriations without its being necessary to make new appropriations for said purpose."  #18575-page-23-of-303.  If this provision is preempted, per the proposed order and judgment, it appears there will be substituted a statutory lien only "over the funds deposited in the Debt Service Fund."  There had been a requirement for a Debt Service Reserve Fund aggregating $211,940,194, on which there would have been a statutory lien, in the plan filed as recently as June 29, 2021 (#17194-page-48-of-244, citing the then current plan §§1.186 and 1.187; #17191-page-163-of-245).  But the Debt Service Reserve Fund requirement was omitted from the Plan on the eve of the disclosure statement hearing (#17310-page-6-of-8; *see also* #17518-1-page-147,187,188-of-298).  Having such a Debt Service Reserve Fund would seem pretty important when (i) the obligor/issuer (here Commonwealth) unilaterally decided in 2015 to stop paying the debt that, under its Constitution, is its first priority to fund, and (ii) FOMB, which is supposed to supply "oversight", has refused to have Commonwealth pay any interest since January 1, 2016, although it continued to permit Commonwealth to pay over $2 billion in pensions each year out of operating revenue and Commonwealth could also have paid interest on an

ongoing basis.  *cf.* 48 U.S.C. §§2141(b)(1)(N), 2142, 2194(l).  I object to dropping the Debt Service Reserve Fund Requirement.

g.    I object to the proposed order and judgment to the extent it would limit or restrict the existing Constitutional and statutory priorities and liens on all Commonwealth revenues.  It is of little comfort to say there is an express statutory lien as defined in 11 U.S.C. §101(53) on the Debt Service Fund (#18447-page-15-of-77) when that Debt Service Fund is simply the fund in which Commonwealth deposits monthly amounts equal to 1/6th of the semi-annual obligation with respect to payment of interest and 1/12th of the annual obligation with respect to principal and accreted value on the New GO Bonds.  Plan §1.198 (#17627-page-52-of-291).

h.    **FOMB cannot meet its burden to prove that subdivision (N) of paragraph 3 is true, and subdivision (N) is demonstrably not true.**  As discussed in my Objection (#18575-page-19-to-20,25,-to-28,42,-to-46,56,-to-69-of-303), Commonwealth has the current capacity to pay all principal and interest due on GO and PBA debt, literally, today, and has ample capacity to pay all principal and interest due on its GO and GO guaranteed debt going forward.  It is not remotely necessary to discharge the debt that under Puerto Rico's Constitution has a "first claim" priority on its available revenues.  There are any number of steps that can be taken to address Puerto Rico's financial issues without disavowing its own Constitution.  Without limiting the points I previously made and cited to, just by way of example:

(i)    On the revenue side:

[A]    One could factor in the real population rather than an artificially low estimate (#18575-page-58-to-59-of-303).

[B]    One could use a more realistic estimation of revenues (rather than significantly underestimate)(#18575-page-59-of-303).

5

[C]     In particular, one could make a realistic assumption concerning future Medicaid funding, since there is every reason to believe additional federal funding will cover a substantial portion of the projected huge increase in the Medicaid expense (as it should)(#18575-page-59-to-60-of-303).

[D]     One could curtail the literally off-the-chart tax incentives (including curtail the many preferential tax rates, credits and grants) that FOMB admits are "far more generous" than other jurisdictions in the U.S. and – if one is not willing to cut back the rate of expenditures that have resulted in a 29% increase in total outlays since FY2018 – at least roll back at least some of the multiple reductions in tax rates and new preferences enacted in just the past three years (#18575-page-43-to-44-of-303).

[E]     The TSA cash flow report filed 10-20-2021 (as of 10-8-2021) (annexed as Exhibit NN hereto) notes that Puerto Rico has received $4.7 billion in coronavirus aid, monies that are "held in separate accounts outside the TSA."  However, payments are initially made out of the TSA and only later reimbursed.  Since "[t]hese reimbursements can lag disbursements" (Ex. NN p. 5 note 3) there is apparently another significant amount of money that Puerto Rico has available but that is not currently publicly quantified and publicly disclosed.

(ii)    On the expense side, there are also a host of steps that could be taken including

[A]     At least keep in place the modest reductions in pensions for higher-earning former public employees who are now pension recipients, who are currently being paid pensions in full on a PayGo basis,

6

even as FOMB and Commonwealth have refused to pay anything over the past five years in interest on Commonwealth's GO bonds that, under its Constitution, are required to be paid first. The Oversight Board itself had originally proposed modest reductions for higher-earning pension recipients before first scaling back the reductions, and then dropping the proposed reductions altogether, in order to purchase the support of Commonwealth officials for the plan. E.g., #18575-page-200-to-202-of-303.

[B]     Cut out, or at least cut back, the host of nonessential expenditures that are reasons why "total outflows" have increased over 29% since FY 2018. Does one really need to be spending hundreds of millions of dollars on "advertising, representation, and artistic services", "consulting services," Christmas bonuses, and the like, even while the Constitutionally mandated first priority of paying interest on GO debt is ignored? Should Commonwealth stop even reporting attendance (or, in many cases, nonattendance) of public employees who do not report to work yet continue to be paid?

(iii)   Commonwealth could implement the structural reforms recommended by FOMB (#18575-page-47-of-303; #18151-1-page-5-of-30). There is no justification for releasing Commonwealth from its Constitutional "first claim" priority debt when there is no willingness of its political leaders to make necessary decisions to honor obligations and make reforms. Releasing Commonwealth from its Constitutional "first claim" priority debt despite the unwillingness of its political leaders to honor obligations and to adopt necessary reforms just rewards and enables such refusals. FOMB's October 21, 2021 statement (Exhibit OO, annexed hereto)

7

underscores why it is essential that Puerto Rico's Constitutional
requirement to pay its "first claim" priority debt must be enforced.

(iv)     Paragraph 3(N) references PROMESA 209, 48 U.S.C. §2149, which
requires that – for the Oversight Board to terminate – Puerto Rico must
have "adequate access to short-term and long-term credit markets at
reasonable interest rates."  But who would ever loan money to Puerto Rico
again, when Commonwealth government officials have shown no
willingness to honor Puerto Rico's "first claim" priority obligations under
its Constitution, and even the FOMB has advocated release of debt that is
the "first claim" priority for payment under Puerto Rico's Constitution
(and preemption of laws requiring payment of such debt), and the reversal
of the priorities set under the Constitution, rather than insist on necessary
reforms and economies, and on payment of Commonwealth's "first claim"
priority obligations.

(v)     Proposed paragraph 3(N) is simply indefensible in light of the facts.  And
neither FOMB nor Commonwealth officials have the authority to disavow
Puerto Rico's own Constitution.  Under PROMESA, 48 U.S.C.,
2174(b)(3), this Court is precluded from approving the plan because
debtor is prohibited by law, beginning with its own Constitution, as well
as the U.S. Constitution and 48 U.S.C. §2141(b)(1)(N) and §2174(b)(7),
from disavowing and refusing to pay its Constitutional "first claim"
priority obligations.

**Paragraph 4:**  As stated in my objection (#18575), no compromise and settlement can bind
nonconsenting bondholders who did not negotiate or agree to it.  It is one thing to present a
settlement that parties to the settlement who are to be bound all agree to, and argue the settlement
all parties to be affected have agreed to is "reasonable."  It is a completely different matter to
impose a settlement negotiated by some parties – who allocated to themselves significant added

consideration not received by other parties (here Retail Investors like me) – and bind to such settlement those who did not agree or negotiate that unequal deal.  In addition, unclean hands precludes FOMB from exploiting its deals with major hedge funds to impose the resulting settlements on non-consenting bondholders.  #18575-page-34-of-303.

**Paragraph 5:**  Disputed and objected to.

**Paragraph 12:**  Disputed and objected to, to the extent a "cap" is used to justify failing to honor in full debt issued in the past that, under Puerto Rico's Constitution, has a "first claim" priority.

**Paragraphs 16, 17 and 18:**  Object.  These trusts should not be funded until the Constitutional "first claim" priority debt is first paid.

**Paragraph 22:**  Disputed and objected to.

**Paragraph 23:**  Disputed and objected to.

**Paragraph 40:**  As noted in my objection (#18575-page-16-to-19-of-303), the same 1.5% of par, and any other amounts to be paid to bondholders under this paragraph, should also be paid pro rata to all Retail Investors, as well as any other GO and PBA bondholders, irrespective of whether a particular individual successfully navigated the cumbersome and confusing DTC ATOP delivery and voting process employed in this case and irrespective of how they or their class voted.

**Paragraph 42:**  As noted in my objection (#18575-page-16-to-19-of-303), the same 1.321% of par, and any other amounts to be paid to bondholders under this paragraph, should also be paid pro rata to all Retail Investors, as well as any other GO and PBA bondholders, irrespective of whether a particular individual successfully navigated the cumbersome and confusing DTC ATOP delivery and voting process employed in this case, and irrespective of how they or their class voted.

**Paragraph 49:**  Disputed and objected to for the reasons set forth in my Objection, including my specific objections with respect to the improperly broad releases (#18575-page-14-to-16-of-303).

**Paragraph 51:**  Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 52:**  Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 53:**  Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 54:**  Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 55:**  Disputed and objected to.

**Paragraph 56:**  Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 57:**  Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 58:**  Disputed and objected to, including for reasons set forth in #18575-page-14-to-16-of-309.

**Paragraph 61:**  Object and assert that the provision with respect to CVIs – that payments or redemptions with respect to CVIs shall not be subject to any Commonwealth tax withholding obligation – should also extend to the New GO Bonds.  The existing GO bonds and GO guaranteed bonds were sold to investors in the 50 states free of any Puerto Rico tax and one should not leave any possible backdoor mechanism for a government that has disavowed its Constitutional obligations to attempt to undermine receipt by investors in the 50 states of the full amounts due to them.

**Paragraph 71:**  I object to this provision to the extent it contemplates that any release or "cancellation and extinguishment of …. existing claims" (#18470-11-page-46-of-54-Art.-104) may be effective prior to the exhaustion of all appellate rights.

**Paragraph 74:**  I object to providing the Oversight Board with authority to modify the plan without notice to all bondholders and court approval of the amendments.

**Paragraph 75:**  I object to this provision.

**Paragraph 80:**  I object to this provision.  *See* Point III, below.

III.   **OBJECTION TO WAIVER OF RULE 3020(E) AUTOMATIC STAY, AND
REQUEST FOR STAY OF CONSUMMATION UNTIL ANY TIMELY APPEAL
IS ADJUDICATED**

I object to including any waiver of the Rule 3020(e) automatic stay in the Plan (*see* Plan

§92.20) or in any order related to the Plan.  No particularized justification for this provision of

the Plan has been provided in #17680.  I also request a stay of the effective date of confirmation

pending the determination of any timely-filed appeal or, in the alternative, at least until the First

Circuit rules on any application for stay presented to it.

IV.   **RESERVATION OF RIGHTS TO RESPOND TO ANY REVISIONS TO THE
PLAN, AND CONTINUED ASSERTION OF PRIOR OBJECTIONS**

If FOMB submits revisions to the Plan of Adjustment or the Fiscal Plan, I hereby request

the opportunity to respond in writing.  I also reserve and preserve all objections to the Plan,

including my objections in #18575; my responses and objections in #18181; objections to the

proposed classification of claims; my objections to the Disclosure Statement #16908, #16977,

#17536 (to the extent not addressed thereafter by FOMB in response to the Court's directions);

and all my objections to procedures followed, including those set forth in prior filings referenced

at #16387-page-20-to-21-of-22 and in my filings thereafter.

October 22, 2021

Respectfully Submitted,


/s/ Peter C. Hein
Peter C. Hein, pro se
101 Central Park West, Apt. 14E
New York, NY  10023
917-539-8487
petercheinsr@gmail.com

Claim 10696 and 174229
GO Bonds:  500,000 par amount, plus
unpaid interest to date
[5 separate CUSIPS:   74514LVX2
                                       74514LWA1
                                       74514LWM5
                                       74514LWZ6
                                       74514LB63]
PBA Bonds:  200,000 par amount, plus
unpaid interest to date
[CUSIP:  745235M24]


### Declaration pursuant to 28 U.S.C. §1746


I declare under penalty of perjury that the factual statements in the foregoing objection are true
and correct to the best of my knowledge and belief.


Executed on this 22nd day of October 2021.


/s/ Peter C. Hein
Peter C. Hein

**<u>Certificate of Service</u>**

I, Peter C. Hein, certify that I have caused the foregoing "Objection to Proposed Order and
Judgment Confirming Seventh Amendment Title III Joint Plan of Adjustment of the
Commonwealth of Puerto Rico, filed by Individual GO Bondholder (Peter C. Hein)" to be served
via the Court's CM/ECF system.


October 22, 2021


_____/s/ Peter C. Hein_____
Peter C. Hein

GOVERNMENT OF PUERTO RICO
PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY

## Municipal Secondary Market Disclosure Information Cover Sheet
## Municipal Securities Rulemaking Board (MSRB)
## Electronic Municipal Market Access System (EMMA)

### Additional / Voluntary Disclosure
### Financial / Operating Data

**THIS FILING RELATES TO ALL OR SEVERAL SECURITIES ISSUED BY THE ISSUER, OR ALL OR SEVERAL SECURITIES OF A SPECIFIC CREDITOR:**

Issuer's Name: __Commonwealth of Puerto Rico__

Other Obligated Person's Name (if any): _____

Six-digit or Nine-Digit CUSIP number(s): _Commonwealth of PR - 745145, 74514L; PRASA (Guaranteed by the Commonwealth of PR) - 745160QD6, 745160QE4, 745160QF1, 745160PP0, 745160PQ8, 745160PR6; PRHTA - 745181, 745185, 745190; PRIFA - 745220; PBA - 745235; PR Convention Center District Authority - 745266; PRMFA - 745277._

### TYPE OF INFORMATION PROVIDED:

A. ☐ Quarterly / Monthly Financial Information

B. ☐ Change in Fiscal Year / Timing of Annual Disclosure

C. ☐ Change in Accounting Standard

D. ☐ Interim / Additional Financial Information / Operating Data

E. ☐ Budget

F. ☐ Investment / Debt / Financial Policy

G. ☐ Information Provided to Rating Agency, Credit / Liquidity Provider or Other Third Party

H. ☐ Consultant Reports

I. ☒ Other Financial / Operating Data: _Puerto Rico Department of Treasury, Treasury Single Account ("TSA") Fiscal Year 2022 Cash Flow as of October 8, 2021._

I represent that I am authorized by the issuer, obligor or its agent to distribute this information publicly.


_/s/ Manuel González del Toro_
Manuel González del Toro
Puerto Rico Fiscal Agency and Financial Advisory Authority,
    as Fiscal Agent for the Commonwealth

Dated: October 20, 2021

Roberto Sánchez Vilella (Minillas) Government Center, De Diego Ave. Stop 22, San Juan, PR 00907  |  PO Box 42001, San Juan, PR 00940-2001

 787.722.2525          contact@aafaf.pr.gov          aafaf.pr.gov

Exhibit NN



## *Puerto Rico Department of Treasury*

*Treasury Single Account ("TSA") FY 2022 Cash Flow*

*As of October 8, 2021*

## Glossary

| Term | | Definition |
|---|---|---|
| ACAA | - | Automobile Accident Compensation Administration, or Administración de Compensaciones por Accidentes de Automoviles, is a component unit of the Commonwealth of Puerto Rico. |
| Act 154 | - | Act 154 means Act No. 154-2010, which, inter alia, imposes a temporary excise tax on the acquisition by multinationals of certain property manufactured or produced in whole or in part in Puerto Rico and on the acquisition of certain manufacturing services carried out in Puerto Rico. The Act 154 temporary excise tax expires on December 31, 2027. |
| AFI / PRIFA | - | Infrastructure Financing Authority. |
| ASC | - | Compulsory Liability Insurance, private insurance company. |
| ASES | | Puerto Rico Health Insurance Administration, a public corporation and component unit of the Commonwealth of Puerto Rico. |
| CINE | - | Puerto Rico Cinema Fund, a recipient of certain assigned sales and use tax revenues. |
| COFINA | - | Puerto Rico Sales Tax Financing Corporation. |
| Deferred General Fund Receipts | - | Revenues pertaining to Fiscal Year 2020, such as individual and corporate income taxes, that are collected in subsequent fiscal years due to various executive orders and tax extensions in response to the COVID-19 pandemic. |
| DTPR | - | Department of the Treasury of Puerto Rico. |
| DTPR Collection System | - | This is the software system that DTPR uses for collections. |
| FAM | - | Municipal Fund Administration, a recipient of certain assigned sales and use tax revenues. |
| General Fund Collections | - | All gross tax collections received and deposited into the TSA from all Hacienda Collection Posts, through the Hacienda Colecturia Virtual (online), and/or SURI, as well as certain pass-through collections and others. |
| General Fund | - | General Fund (Operating Fund) means the Commonwealth principal operating fund; disbursements from such fund are generally approved through the Commonwealth's annual budgeting process. |
| Gross Payroll | - | Gross Payroll is equal to the sum of: (i) Net Payroll from the DTPR RHUM system; (ii) Other Payroll and (iii) Cash outlays for wage garnishments by Agency. |
| HTA | - | Puerto Rico Highways and Transportation Authority, a public corporation and a component unit of the Commonwealth of Puerto Rico. |
| Liquidity Plan (LP) | - | The Liquidity Plan is the translation of the Certified Fiscal Plan ("CFP") and Certified Budget ("Budget") into a cash flow projection. The TSA Liquidity Plan encompasses all cash flow activity within the TSA. Certain cash flow activity is contemplated in the CFP and Budget, but occurs outside the TSA. Cash flow bridges from the TSA to the CFP and Budget have been included to facilitate comparison. |
| NAP | - | NAP, or the Nutrition Assistance Program, also known as PAN, or Programa de Asistencia Nutricional is a federal assistance nutritional program provided by the United States Department of Agriculture (USDA) solely to Puerto Rico. |
| Other Payroll | - | Other Payroll expenses relate to employee withholdings, social security, insurance, and other deductions. |
| Other State Collections | - | Inflows related to various Health Department programs, the State Insurance Fund, the Commissioner of Financial Institutions, interest earned on TSA bank accounts and others. |
| PayGo | - | PayGo - Puerto Rico pension system that is funded through a pay-as-you-go system.  Retirement benefits expenses of government employers are paid by the central government and reimbursed by the employers, with such funds received by the TSA. |
| PREPA | - | Puerto Rico Electric Power Authority, a public corporation and a component unit of the Commonwealth of Puerto Rico. |
| PRITA | - | Puerto Rico Integrated Transport Authority, a public corporation and component unit of the Commonwealth of Puerto Rico. |
| PSTBA | - | The PSTBA is an amount established under Act 91-2006, as amended, and the Sales Tax Revenue Bond Resolution, as amended and restated on June 10, 2009 (the "Bond Resolution"), that currently must be received by COFINA from 5.5% of the SUT before the Commonwealth can receive any of the other 5.5% SUT. |
| Public Corporation | - | Public corporations are governmental authorities with autonomous structure separate from the central  government administration and with independent treasury functions. |
| RHUM System | - | This is the software system that DTPR uses for payroll. |
| SIFC | - | State Insurance Fund Corporation, a public corporation and a component unit of the Commonwealth of Puerto Rico. |
| Special Revenue Receipts | - | Collections made by central government agencies at collection posts for services rendered by the agencies as well as fees, licenses, permits, fines and others. |
| SURI | - | Sistema Unificada de Rentas Internas is the new digital tool of the Department of the Treasury that will allow integration and streamlining of the administration of taxes and revenues and eliminate the complexity of the current systems for the benefit of the Treasury and the taxpayers. |
| Sweep Account Transfers | - | Transfers of Fiscal Year 2020 collections in the SURI sweep account to the TSA during Fiscal Year 2021. The closing balance of the sweep account on June 30, 2020, was $1,024 million. |
| TSA | - | Treasury Single Account, the Commonwealth's main operational bank account (concentration account) in which a majority of receipts from Governmental funds are deposited and from which most expenses are disbursed. TSA receipts include tax collections, charges for services, intergovernmental collections, the proceeds of short and long-term debt issuances and amounts held in custody by the Secretary of the Treasury for the benefit of the Commonwealth's fiduciary funds. Only a portion of the revenues received by the TSA is included in the annual General Fund budget presented to the Puerto Rico Legislative Assembly for approval.  Other revenues are separately assigned by law to certain agencies or public corporations but still flow through the TSA. |

## Introduction

- Enclosed is the weekly Treasury Single Account ("TSA") cash flow report and supporting schedules with weekly YTD FY2022 actual results compared to the FY2022 Liquidity Plan and FY2021 actual results.

- TSA is the Commonwealth's main operational bank account (concentration account) in which a majority of receipts from Governmental funds are deposited and from which most expenses are disbursed.

- Receipts in the TSA include tax collections (including revenues assigned to certain public corporations and pledged for the payment of their debt service), charges for services, intergovernmental collections (such as reimbursements from Federal assistance grants), the proceeds of short and long-term debt issuances held in custody by the Secretary of Treasury for the benefit of the Government fiduciary funds, and other receipts. Only a portion of the revenues received by the TSA is included in the annual General Fund budget presented to the Puerto Rico Legislative Assembly for approval. Other revenues are separately assigned by law to certain agencies or public corporations but still flow through the TSA.

- Disbursements from the TSA include payroll and related costs, vendor and operational disbursements (including those reimbursed by Federal assistance grants and funded from Special Revenue Funds), welfare expenditures, capital outlays, debt service payments, required budgetary formulas and appropriation payments, pass-through payments of pledged revenues to certain public corporations, tax refunds, payments of current pension benefits and other disbursements.

- Federal funds related to disaster relief for hurricanes Irma and Maria are deposited in a separate bank account overseen by the Government Authorized Representative ("GAR"). Funds may be transferred to the TSA either: (i) after admissible disbursements (per approved Project Worksheets) have been made or (ii) once supporting documentation for an accrual or related expense are provided to and approved by FEMA.  Therefore, FEMA funding may also be received in advance of actual cash disbursement, as payments to vendors may occur subsequent to when the corresponding services are rendered / expenses are recorded.

- Data limitations and commentary:
  The government has focused on cash transaction information for which access to reliable, timely, and detailed data is readily available. The government continues to work with DTPR and other parties to access additional reliable data that would help to provide additional detail in the future.

As of October 8, 2021

**Puerto Rico Department of Treasury | AAFAF**

*Executive Summary - TSA Cash Flow Actual Results*

*(figures in Millions)*

| Bank Cash Position | Weekly Cash Flow | YTD Net Cash Flow | YTD Net Cash Flow Variance |
|:---:|:---:|:---:|:---:|
| $11,658 | ($141) | ($12) | $239 |

**Bridge from FY21 Liquidity Plan projected TSA Cash Balance to actual FY21 TSA Cash Balance as of October 8, 2021**

| | Cash Flow line item | Variance Bridge ($M) | Comments |
|---|---|---:|---|
| | Liquidity Plan Projected Cash Balance 10/8/21: | $ 11,420 | 1. State collections are ahead of plan. General fund collections drive $184M of the positive variance. The remaining $78M of outperformance pertains to SRF receipts, which are largely pledged to specific uses and expected to be cash flow neutral over the long term. |
| 1 | State Collections | 262 | |
| 2 | FY21 HTA CapEx Carryover Timing | 59 | 2. The FY21 GF budget included $59M of capex funds for HTA. These funds were not spent or transferred from the TSA during the prior fiscal year, and extended into FY22. The Liquidity Plan projected these funds would be transferred from the TSA by September 2021; however, they have not been sent yet. |
| 3 | Federal COVID-19 Programs Deficit | (67) | |
| | All Other | (15) | 3. Puerto Rico received $2.2 billion from the Coronavirus Relief Fund (CRF) established under the CARES Act and $2.5 billion of federal Coronavirus State & Local Fiscal Recovery funds (CSLFRF). These funds are held in separate accounts outside of TSA. Many initiatives funded by these accounts are initially paid out through TSA, and later reimbursed from the respective external account. These reimbursements can lag disbursements, especially for payments made by agencies with independent systems. |
| | **Actual TSA Cash Account Balance** | **$ 11,658** | |

Source: DTPR

Exhibit NN

5

**As of October 8, 2021**

**Puerto Rico Department of Treasury | AAFAF**
*YTD TSA Cash Flow Summary - Actual vs LP*



**YTD Actuals vs. Liquidity Plan**

YTD net cash flow is -$12M and cash flow variance to the Liquidity Plan is $239M, most of which is assumed to be temporary at this time.

Source: DTPR

Exhibit NN

6

**As of October 8, 2021**

**Puerto Rico Department of Treasury | AAFAF**
*YTD Cash Flow Summary - TSA Cash Flow Actual Results*

<u>Net Cash Flow - YTD Actuals</u>

1.) The primary cash driver of FY22 is state collections. Federal Fund inflows of $2,642M represent 43% of YTD inflows, but are largely offset by Federal Fund disbursements, with YTD net deficit of $37M (Refer to page 13 for additional detail).



<u>Net Cash Flow YTD Variance - LP vs. Actual</u>

1.) Year to date cash flow outperformance is mainly driven by variances in state collections.



Source: DTPR

**As of October 8, 2021**

**Puerto Rico Department of Treasury | AAFAF**
*TSA Cash Flow Actual Results for the Week Ended October 8, 2021*

| (figures in Millions) | FY22 Actual 10/8 | FY22 LP 10/8 | Variance 10/8 | FY22 Actual YTD | FY22 LP YTD | FY21 Actual YTD (a) | Variance YTD FY22 vs YTD FY22 LP |
|---|---|---|---|---|---|---|---|
| **State Collections** | | | | | | | |
| 1  General fund collections (b) | $106 | $110 | ($3) | $2,975 | $2,791 | $3,139 | $184 |
| 2  Other fund revenues & Pass-throughs (c) | 4 | 1 | 2 | 54 | 35 | 62 | 19 |
| 3  Special Revenue receipts | 8 | 4 | 4 | 115 | 92 | 115 | 22 |
| 4  All Other state collections (d) | 11 | 7 | 4 | 172 | 136 | 95 | 36 |
| 5  Sweep Account Transfers | – | – | – | – | – | 1,024 | – |
| 6  Subtotal - State collections (e) | $129 | $122 | $7 | $3,316 | $3,054 | $4,436 | $262 |
| **Federal Fund Receipts** | | | | | | | |
| 7  Medicaid | – | – | – | 714 | 582 | 1,057 | 132 |
| 8  Nutrition Assistance Program | 68 | 134 | (65) | 1,133 | 1,101 | 771 | 33 |
| 9  All Other Federal Programs | 39 | 96 | (57) | 535 | 793 | 427 | (258) |
| 10  Other | 41 | – | 41 | 260 | 157 | 236 | 103 |
| 11  Subtotal - Federal Fund receipts | $148 | $229 | ($82) | $2,642 | $2,632 | $2,491 | $10 |
| **Balance Sheet Related** | | | | | | | |
| 12  Paygo charge | 4 | 8 | (3) | 136 | 113 | 173 | 23 |
| 13  Other | – | – | – | – | – | – | – |
| 14  Subtotal - Other Inflows | $4 | $8 | ($3) | $136 | $113 | $173 | $23 |
| 15  **Total Inflows** | **$281** | **$359** | **($78)** | **$6,095** | **$5,800** | **$7,100** | **$295** |
| **Payroll and Related Costs (f)** | | | | | | | |
| 16  General fund (i) | (61) | (77) | 15 | (722) | (699) | (701) | (24) |
| 17  Federal fund | (8) | (27) | 19 | (191) | (282) | (118) | 92 |
| 18  Other State fund | (5) | (4) | (1) | (44) | (37) | (46) | (7) |
| 19  Subtotal - Payroll and Related Costs | ($74) | ($107) | $33 | ($957) | ($1,018) | ($866) | $61 |
| **Operating Disbursements (g)** | | | | | | | |
| 20  General fund (i) | (54) | (35) | (20) | (477) | (479) | (501) | 2 |
| 21  Federal fund | (31) | (69) | 38 | (467) | (510) | (549) | 43 |
| 22  Other State fund | (16) | (12) | (4) | (209) | (202) | (124) | (7) |
| 23  Subtotal - Vendor Disbursements | ($101) | ($115) | $14 | ($1,154) | ($1,192) | ($1,174) | $38 |
| **State-funded Budgetary Transfers** | | | | | | | |
| 24  General Fund (i) | (151) | (232) | 81 | (1,000) | (1,063) | (468) | 63 |
| 25  Other State Fund | (0) | – | (0) | (32) | (34) | (74) | 2 |
| 26  Subtotal - Appropriations - All Funds | ($152) | ($232) | $81 | ($1,033) | ($1,097) | ($542) | $64 |
| **Federal Fund Transfers** | | | | | | | |
| 27  Medicaid | – | – | – | (710) | (582) | (1,057) | (128) |
| 28  Nutrition Assistance Program | (70) | (134) | 63 | (1,140) | (1,101) | (776) | (39) |
| 29  All other federal fund transfers | (6) | – | (6) | (172) | (90) | (72) | (82) |
| 30  Subtotal - Federal Fund Transfers | ($76) | ($134) | $57 | ($2,021) | ($1,773) | ($1,905) | ($249) |
| **Other Disbursements - All Funds** | | | | | | | |
| 31  Retirement Contributions | (14) | (5) | (10) | (656) | (650) | (657) | (6) |
| 32  Tax Refunds & other tax credits (h) (i) | (4) | (4) | 0 | (207) | (207) | (287) | 0 |
| 33  Title III Costs | – | (4) | 4 | (61) | (54) | (59) | (7) |
| 34  State Cost Share | – | – | – | – | – | – | – |
| 35  Milestone Transfers | – | (0) | 0 | – | (3) | (2) | 3 |
| 36  Custody Account Transfers | – | – | – | (18) | (9) | – | (10) |
| 37  Cash Reserve | – | – | – | – | – | – | – |
| 38  All Other | – | – | – | – | (50) | (40) | 50 |
| 39  Subtotal - Other Disbursements - All Funds | ($18) | ($13) | ($5) | ($942) | ($971) | ($1,045) | $29 |
| 40  **Total Outflows** | **($422)** | **($601)** | **$180** | **($6,107)** | **($6,051)** | **($5,531)** | **($56)** |
| 41  **Net Operating Cash Flow** | **($141)** | **($242)** | **$102** | **($12)** | **($251)** | **$1,569** | **$239** |
| 42  Bank Cash Position, Beginning (j) | 11,799 | 11,662 | 137 | 11,671 | 11,671 | 7,701 | – |
| 43  **Bank Cash Position, Ending (j)** | **$11,658** | **$11,420** | **$239** | **$11,658** | **$11,420** | **$9,270** | **$239** |

*Note: Refer to the next page for footnote reference descriptions.*

Source: DTPR

8

Exhibit NN

As of October 8, 2021

**Puerto Rico Department of Treasury | AAFAF**

*FY21 TSA Cash Flow Actual Results - Footnotes*

Footnotes:

(a) Represents FY2021 actual results through October 9, 2020.

(b) Represents gross tax collections received and deposited from all Hacienda Collection Posts, through the Hacienda Colecturia Virtual (online) and/or SURI. Additionally, as of the date of this report, the "General Fund Collections" line item includes unreconciled collections due to DTPR transition to collecting various gross tax receipts through the new SURI system. The transition from the Hacienda Colecturia collections system to SURI is ongoing and as such, revenue concept detail for the general tax SURI collections is not available at this time for the portion of collections received by the new general tax SURI account. This resulted in timing-related unreconciled gross collections which will be retroactively allocated to "General Collections" as appropriate once this information becomes available.

(c) These revenues are collected by DTPR and immediately appropriated.

(d) Inflows related to the State Insurance Fund, the Department of Labor and Human Resources, the Commissioner of Financial Institutions, interest earned on TSA bank accounts and others. As of the date this report the TSA has received $2.7M in interest income in FY21 from earnings on the TSA cash balance.

(e) As of October 8, 2021, there are $213M in collections in the SURI sweep account pending reconciliation and transfer to the TSA.

(f) Represents total gross payroll. Gross payroll includes net payroll disbursed to government employees, cash transfers to the Police Department for payroll costs, and other payroll related costs (employee withholdings, social security, insurance, and other

(g) Includes payments to third-party vendors as well as intergovernmental payments to agencies with separate Treasuries.

(h) Includes Federally Funded Employee Retention Credits.

(i) These line items include transfers out of the TSA related to the COVID-19 Emergency Measures Support Package. Total TSA outflows related to the COVID-19 Emergency Measures Support Package are approximately $534M as of October 8, 2021. Of this amount, $459M was disbursed in FY2020, $75M in FY2021, and $562k in FY2022.

(j) Excludes BPPR Clawback Accounts (for clawback revenues prior to June 2016) of $147M.

Source: DTPR

9

**As of October 8, 2021**

**Puerto Rico Department of Treasury | AAFAF**
*General Fund Collections Summary*

Key Takeaways / Notes

1.) Accumulated collections into TSA sweep accounts are now consistently transferred to the TSA with a 7-10 day lag. As of the date of this report, there were $213M in collections in the SURI sweep account pending transfer to the TSA. Other General Fund revenue also includes receipts that have not been allocated to other concepts and this amount is approximately $161M. Due to the on-going transition of various gross tax collections from Hacienda Colecturia to SURI, revenue concept detail for general tax SURI collections from October 1, 2021, through the date of this report is not available at this time. This collections schedule will be updated as information becomes available.

**General Fund Collections Year to Date: Actual vs. Forecast ($M)**

| | Actual (a) YTD 10/8 | LP YTD 10/8 | Var $ YTD 10/8 | Var % YTD 10/8 |
|---|---|---|---|---|
| **General Fund Collections** | | | | |
| Corporations | $467 | $459 | $9 | *2%* |
| Current Year Collections | 464 | 400 | 64 | *16%* |
| Current Year CIT for FEDE (Act 73-2008) (b | 4 | 11 | (8) | *-68%* |
| FY20 Deferrals/Extensions | - | 48 | (48) | *-100%* |
| Individuals | 665 | 707 | (42) | *-6%* |
| Current Year Collections | 665 | 618 | 46 | *8%* |
| FY20 Deferrals/Extensions | - | 89 | (89) | *-100%* |
| Partnerships | 81 | 28 | 53 | *186%* |
| Act 154 | 401 | 482 | (81) | *-17%* |
| Non Residents Withholdings | 129 | 73 | 57 | *78%* |
| Current Year Collections | 127 | 70 | 56 | *80%* |
| Current Year NRW for FEDE (Act 73-2008) | 3 | 2 | 0 | *10%* |
| Motor Vehicles | 164 | 114 | 50 | *44%* |
| Rum Tax (c) | 142 | 107 | 35 | *33%* |
| Alcoholic Beverages | 71 | 62 | 9 | *15%* |
| Cigarettes (d) | 33 | 37 | (3) | *-9%* |
| HTA | 132 | 142 | (10) | *-7%* |
| Gasoline Taxes | 35 | 36 | (2) | *-5%* |
| Gas Oil and Diesel Taxes | 3 | 4 | (2) | *-36%* |
| Vehicle License Fees ($15 portion) | 7 | 8 | (1) | *-10%* |
| Vehicle License Fees ($25 portion) | 17 | 27 | (10) | *-36%* |
| Petroleum Tax | 57 | 57 | 1 | *2%* |
| Other | 12 | 9 | 3 | *33%* |
| CRUDITA | 25 | 51 | (25) | *-50%* |
| Other General Fund | 288 | 123 | 165 | *134%* |
| **Total** | **$2,598** | **$2,384** | **$215** | *9%* |
| | | | | |
| SUT Collections (f) | 377 | 408 | (31) | *-8%* |
| Current Year Collections | 377 | 343 | 33 | *10%* |
| FY20 Deferrals/Extensions | - | 64 | (64) | *-100%* |
| | | | | |
| **Total General Fund Collections** | $ 2,975 | $ 2,791 | $ 184 | *7%* |

**YTD General Fund Receipts Cumulative Variance Liquidity Plan vs. Actual Cumulative Variance by Category ($M)**



Footnotes:
(a) General Fund gross cash receipts by concept are approximated using net General Fund revenues adjusted for recurring monthly gross-ups and other adjustments.
(b) Relates to income tax reserves that are subsequently passed through to PRIDCO.
(c) Positive variance of +$31M relates to timing of cash transfers to the TSA
(d) Includes some cigarette tax collections that are subsequently passed through to HTA, PRMBA and other.
(e) This amount includes FY20 Income Tax from Partnerships.
(f) SUT collections excludes PSTBA, FAM & CINE, and only includes the amounts deposited into the TSA for General Fund use.

Source: DTPR

Exhibit NN

**As of October 8, 2021**

**Puerto Rico Department of Treasury | AAFAF**
*Other State Fund Collections Summary*

**Key Takeaways / Notes**

1.) Other state fund collections are ahead of the Liquidity Plan. "All Other" state collections positive variance is in part driven by $25M reimbursed to the TSA by the Department of Labor and Human Resources for payroll and operating costs from prior fiscal years. This represents a permanent positive variance relative to the Liquidity Plan. Remaining variance is mostly assumed to be temporary due to timing, as special revenues and other collections may be received with irregular cadence.

**Other State Fund Collections Year to Date: Actual vs. Forecast ($M)**

|  | Actual (a) YTD 10/8 | LP YTD 10/8 | Var $ YTD 10/8 | Var % YTD 10/8 |
|---|---|---|---|---|
| **Other State Fund Collections** |  |  |  |  |
| Other Fund Revenues & Pass-Throughs | $54 | $35 | $19 | *56%* |
| Electronic Lottery | - | - | - | *NA* |
| Cigarettes (PRITA) | 9 | 9 | (0) | *-5%* |
| ASC Pass Through | 4 | 6 | (2) | *-30%* |
| ACCA Pass Through | 23 | 19 | 4 | *19%* |
| Other | 18 | - | 18 | *NA* |
| Special Revenue Fund (Agency Collections) | 115 | 92 | 22 | *24%* |
| Department of Education | 7 | 6 | 1 | *13%* |
| Department of Health | 14 | 14 | 1 | *5%* |
| Department of State | 5 | 8 | (4) | *-44%* |
| All Other | 89 | 64 | 25 | *38%* |
| Other state collections | 172 | 136 | 36 | *27%* |
| Bayamón University Hospital | 1 | 1 | (0) | *-33%* |
| Adults University Hospital (UDH) | 13 | 8 | 4 | *51%* |
| Pediatric University Hospital | 5 | 4 | 1 | *12%* |
| Commisioner of the Financial Institution | 4 | 4 | 0 | *8%* |
| Department of Housing | 6 | 5 | 1 | *12%* |
| Gaming Commission | 60 | 69 | (8) | *-12%* |
| All Other | 84 | 44 | 39 | *88%* |
| **Total** | **$341** | **$263** | **$78** | ***30%*** |

**YTD Other State Fund Receipts Cumulative Variance Liquidity Plan vs. Actual Cumulative Variance by Category ($M) (a)**



Source: DTPR

Exhibit NN

11

**As of October 8, 2021**

**Puerto Rico Department of Treasury | AAFAF**

*Sales and Use Tax Collections Summary*

**Key Takeaways / Notes**

1.) The proceeds from the Puerto Rico 10.5% SUT rate are allocated as follows: Of the 10.5%, 5.5% is deposited into a COFINA BNY Mellon account until the PSTBA cap is reached, and 4.5% is deposited into the General Fund. The remaining 0.5% is remitted to FAM. The PSTBA cap for FY22 is $473 million.



YTD Gross SUT Collections - General Fund and PSTB ($M) (a) (b)

Footnotes
(a) This schedule reflects gross cash activity and is subject to revision based on periodic reconciliations and accounting adjustments.
(b) As of October 8, 2021 there is $52M in SUT collected pending verification and allocation. The verification process includes matching receipts with the appropriate returns and reconciling government account information. Once this process is complete, SUT funds are distributed in accordance with the COFINA Plan of Adjustment based on the ownership of funds and otherwise based on the limits on distributions established therein.

Source: DTPR

**As of October 8, 2021**

**Puerto Rico Department of Treasury | AAFAF**
*Federal Funds Net Cash Flow Summary (a)(b)*

**Key Takeaways / Notes**

1.) Receipts for the Nutritional Assistance Program (NAP) and Medicaid (ASES Pass-through) are received in advance of the subsequent pass through disbursements. Federal Funds received for Payroll and Vendor Payments are typically reimbursed following disbursement. Currently, there may be temporary surplus / (deficit) due timing differences relating to prior year carryover. Puerto Rico received $2.24 billion from the Coronavirus Relief Fund (CRF) established under the CARES Act and $2.5 billion of federal Coronavirus State & Local Fiscal Recovery funds (CSFRF). These funds are held in a separate account outside of TSA. Some of the measures funded by the accounts are initially paid out through TSA, and later reimbursed from the respective external account.

| **Weekly FF Net Surplus (Deficit)** | FF Inflows | FF Outflows | Net Cash Flow | LP Net Cash Flow | Variance |
|---|---|---|---|---|---|
| Medicaid (ASES) | $ - | $ - | $ - | $ - | $ - |
| Nutritional Assistance Program (NAP) | 68 | (70) | (2) | - | (2) |
| Payroll / Vendor Disbursements / Other Federal Programs | 39 | (34) | 4 | - | 4 |
| COVID-19 Federal Funds (CRF & CSFRF) | 41 | (11) | 30 | - | 30 |
| Federally Reimbursable Tax Credits | - | - | - | - | - |
| **Total** | **$ 148** | **$ (115)** | **$ 32** | **$ -** | **$ 32** |

| **YTD Cumulative FF Net Surplus (Deficit)** | FF Inflows | FF Outflows | Net Cash | LP Net Cash | Variance |
|---|---|---|---|---|---|
| Medicaid (ASES) | $ 714 | $ (710) | $ 4 | $ - | $ 4 |
| Nutritional Assistance Program (NAP) | 1,133 | (1,140) | (6) | - | (6) |
| Payroll / Vendor Disbursements / Other Federal Programs | 535 | (545) | (10) | - | (10) |
| COVID-19 Federal Funds (CRF & CSFRF) | 260 | (285) | (25) | 42 | (67) |
| Federally Reimbursable Tax Credits | - | - | - | 25 | (25) |
| **Total** | **$ 2,642** | **$ (2,679)** | **$ (37)** | **$ 67** | **$ (104)** |



**YTD Federal Funds Net Cash Flows ($M)**

Footnotes

(a) Please note that federal fund classification as represented here is based on the fund classification at the point of transaction. Agencies regularly review cash transactions and make accounting adjustments that result in fund reclassifications.

Source: DTPR

**As of October 8, 2021**

**Puerto Rico Department of Treasury | AAFAF**
*Payroll / Vendor Disbursements Summary*

**Key Takeaways / Notes : Gross Payroll**

1.) Gross payroll is mainly tracking FY22 forecasts to date. Most variance is driven by lower federally funded DOE payroll than projected. Negative variance for the Department of Correction and Rehabilitation is driven by $19.4M of COVID-related incentives. This represents a permanent variance relative to the FY22 LP; however, the TSA will be reimbursed for these distributions from CSLFRF funds held outside the TSA.

| Gross Payroll ($M) (a) Agency | YTD Variance |
|---|---|
| Department of Education | $ 112 |
| Department of Correction & Rehabilitation | (21) |
| Police | (10) |
| Department of Health | (14) |
| All Other Agencies | (5) |
| **Total YTD Variance** | **$ 61** |

**Key Takeaways / Notes : Vendor Disbursements**

1.) Total YTD vendor payments are largely in line with forecast, though there are various offsetting variances within. Disbursements on behalf of the Department of Health are $18M higher than forecast. This is primarily due to $45M of expenses that will be reimbursed from CRF and CSLFRF funds held outside the TSA.

| Vendor Disbursements ($M) Agency | YTD Variance |
|---|---|
| Department of Education | $ 118 |
| Department of Public Security | 25 |
| Department of Correction & Rehabilitation | (11) |
| Department of Health | (19) |
| All Other Agencies | (75) |
| **Total YTD Variance** | **$ 38** |



Cumulative YTD Variance - Payroll by Agency ($M) (a)



Cumulative YTD Variance - Vendor Disbursements by Agency ($M)

Footnotes
(a) Gross Payroll is equal to the sum of: (i) Net Payroll by Agency from the DTPR RHUM system; (ii) Other Payroll and (iii) Cash outlays for wage garnishments by Agency.

Source: DTPR

Exhibit NN

As of October 8, 2021

**Puerto Rico Department of Treasury | AAFAF**

*State Funded Budgetary Transfers Summary*

**Key Takeaways / Notes**

1.) General Fund appropriations are generally executed throughout the year on a consistent basis in the first week of a given month. The amount transferred each month is usually the sum of the receiving entity's budgeted amount for FY22 divided into twelve, subject to a 2.5% holdback through the first nine months of the fiscal year, to be disbursed during the fourth quarter following reconciliation of General Fund revenues to Fiscal Plan projections and subsequent approval and authorization for release by the Oversight Board and the Director of OMB. Other General Fund transfers and Other Fund transfers require the recognition of certain revenues within DTPR accounting records prior to sending funds to a receiving entity. The Liquidity Plan projected $59M of HTA Capex funds carried over from FY21 would be transferred during September 2021. These funds have not been transferred yet, driving the positive Other GF variance.

**YTD FY2022 Budgeted Appropriations Executed ($M)**



**Remaining Appropriation Budget ($M)**

| Entity Name | | Actual YTD | | Full Year Expectation | | Remaining |
|---|---|---|---|---|---|---|
| GF - UPR | $ | 204 | $ | 637 | $ | 433 |
| GF - CRIM | | 29 | | 88 | | 59 |
| GF - FOMB | | 19 | | 60 | | 40 |
| GF - ASEM | | 7 | | 22 | | 14 |
| GF - Other | | 741 | | 2,380 | | 1,639 |
| OF - Other | | 32 | | 137 | | 104 |
| **Total** | **$** | **1,033** | **$** | **3,323** | **$** | **2,290** |

**YTD Appropriation Variance ($M)**

| Entity Name | | Actual YTD | | Liquidity Plan YTD | | Variance |
|---|---|---|---|---|---|---|
| GF - UPR | $ | 204 | $ | 204 | $ | (0) |
| GF - CRIM | | 29 | | 29 | | (0) |
| GF - FOMB | | 19 | | 19 | | - |
| GF - ASEM | | 7 | | 7 | | (0) |
| GF - Other | | 741 | | 804 | | 63 |
| OF - Other | | 32 | | 34 | | 2 |
| **Total** | **$** | **1,033** | **$** | **1,097** | **$** | **64** |

Source: DTPR

Exhibit NN

**As of October 8, 2021**

**Puerto Rico Department of Treasury | AAFAF**
*Tax Refunds / PayGo and Pensions Summary*

**Key Takeaways / Notes : Tax Refunds**

1.) Tax refunds includes EITC distributions, refunds to individuals and seniors as well other tax credits.




**Key Takeaways / Notes : PayGo Receipts and Retirement Contributions**

1.) YTD PayGo Receipts are slightly higher than forecast. Further details on the status of PayGo can be found in the monthly PayGo Report on AAFAF's website.



Source: DTPR



**Financial Oversight and Management Board for Puerto Rico**

**STATEMENT**

*San Juan, PR – October 21, 2021* – The Financial Oversight and Management Board for Puerto Rico looks forward to the Puerto Rico Senate's upcoming vote on legislation to approve the issuance of the new general obligation (GO) bonds that are part of the 7th Amended Plan of Adjustment.

The stakes for Puerto Rico are incredibly high. Failure to pass this legislation means that Puerto Rico remains mired in a cloud of bankruptcy, stifling its ability to grow and attract needed investment. In addition, pensions will not be protected, and the Plan will not be amended to provide added support to the University of Puerto Rico and for municipalities.

If House Bill 1003, passed on October 19, 2021, is not enacted into law by 2 p.m. AST on Friday, October 22, 2021, the Oversight Board will be forced to seek adjournment of the confirmation hearing in the U.S. District Court for the District of Puerto Rico. As a result, Puerto Rico would remain in bankruptcy and the burden of unsustainable debt will remain on the shoulders of all Puerto Ricans, threatening economic progress on the island.

The consequences of failure could be severe, including:

- Puerto Rico remains in bankruptcy.
- Creditors may request that the moratorium on debt payment in place right now be lifted, leading to a chaotic demand for payment based on cash available and undermining the government's ability to function.
- Litigation would continue and massively increase costs and time to exit bankruptcy.
- The duration of the Oversight Board would be extended by the time lost in this process.
- Creditors would become eligible to receive $100 million as a termination fee if they exercise their right to terminate their agreement to support the Plan.
- Creditors could potentially make new, greater demands for repayment, based on the public statements regarding potentially available incremental funds.
- The benefits of the Plan on file in the U.S. District Court may be lost to all stakeholders.
- Teachers and judges would not be eligible for the U.S. government's Social Security benefits and would continue to depend on payments from the budget of a government that drove their pension plan into bankruptcy.

The Oversight Board and a diverse group of stakeholders ranging from unions, retirees, bondholders and other creditors, and bond insurers agreed on a Plan that is the best possible outcome given the difficult circumstances that Puerto Rico has had to manage for the past several years.

- The Plan reduces the Commonwealth's outstanding debt by 80%, from $33 billion to $7 billion.
- The Plan ensures the government would pay no more than $1.15 billion a year to repay the significantly reduced debt, including payments on the COFINA debt, rather than up to $3.9 billion of contractual debt payments without the debt restructuring. GO debt service averages approximately $440 million per year going forward.
- The Plan saves almost $50 billion in debt service that was otherwise due.
- The Plan enables the government to pay just over 7 cents of each tax dollar for debt service, as compared to up to 25 cents prior to any restructuring.
- The Plan provides considerable security to future pension recipients by establishing a pension trust funded with at least $175 million per year for the next several years and allocating the largest part of excess surplus to the pension trust.
- The Plan transfers more than $1.2 billion and restores employee contributions to Sistema 2000 that were used by previous governments.
- The Plan provides thousands of civil service employees up to $100 million in lieu of interest in their defined contribution accounts.
- The Plan would finally settle hundreds of litigation issues costing the government tens of millions of dollars in legal fees alone.
- The Plan would end bankruptcy and put Puerto Rico on the path to sustainable economic growth and prosperity.

Failure to enact House Bill 1003 passed on October 19, 2021, puts Puerto Rico at risk of losing a historic opportunity to sustainably recover from years of economic decline, governance failures, and fiscal recklessness.

The Oversight Board will continue its work to find a path out of bankruptcy – the people of Puerto Rico deserve no less.  But, without the current Plan of Adjustment the path will be longer, more cumbersome, and more expensive. Additionally, the Oversight Board's tenure in the Commonwealth will last longer.

### 

About the Financial Oversight and Management Board for Puerto Rico:

The Financial Oversight and Management Board for Puerto Rico was created under the bipartisan Puerto Rico Oversight, Management and Economic Stability Act (PROMESA) of 2016. The purpose of the Oversight Board is to provide a method for Puerto Rico to achieve fiscal responsibility and access to the capital markets.

Website: www.oversightboard.pr.gov

Contact:
Matthias Rieker
matthias.rieker@promesa.gov
787-641-0001

Sylvette Santiago
sylvette.santiago@promesa.gov
787-641-0001