# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**THE DRA PARTIES' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE CERTAIN TESTIMONY <u>OFFERED BY DEBTORS' PLAN EXPERT MARTI P. MURRAY</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

AmeriNational Community Services, LLC (the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company (the "Collateral Monitor" and, together with the Servicer, collectively, the "DRA Parties") respectfully submit this reply (the "Reply") in support of their motion *in limine* [ECF No. 18342] pursuant to Rules 702 and 704 of the Federal Rules of Evidence to exclude certain testimony offered by Ms. Marti P. Murray in her Expert Report ("Report") as expert for the Debtors. *See* ECF No. 18097-1.

## PRELIMINARY STATEMENT

The DRA Parties moved to preclude Ms. Marti P. Murray ("Ms. Murray") from offering inadmissible legal conclusions regarding the reasonableness of the settlements underlying the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "Plan") [ECF No. 17627]. In its opposition ("Opposition" or "Opp.") [ECF No. 18515], the Financial Oversight and Management Board for Puerto Rico (the "FOMB") does not dispute that expert testimony is not proper for issues of law. Rather, the FOMB attempts to recast Ms. Murray's improper legal opinions as those that go to the fact of financial, not legal, reasonableness. But there is no such distinction and rebranding a legal conclusion as a factual one, does not make it so.

Ms. Murray undertakes an analysis into several of the very factors that a court would weigh in making a reasonableness determination and then improperly reaches a legal conclusion. Simply characterizing that conclusion as a financial opinion does not make it admissible. Ultimately, it's the content of Ms. Murray's opinions, not the FOMB's misleading characterizations that govern admissibility. Ms. Murray's improper legal conclusions must be excluded.

## ARGUMENT

Although experts are granted latitude to give opinion testimony, that testimony must be limited to the facts *supporting* a legal conclusion, not the ultimate legal conclusion. *Ji v. Bose Corp.*, 538 F. Supp. 2d 354, 359 (D. Mass. 2008) (stating that an expert's testimony may be relevant to the factual analysis leading to a legal conclusion, but cannot encompass that conclusion). The FOMB does not, and cannot, argue that experts are permitted to offer legal conclusions at trial. *Carrelo v. Advanced Neuromodulation Sys., Inc.*, 777 F. Supp. 2d 315, 320 (D.P.R. 2011) (stating that although an expert may opine on an issue of fact, the expert may not give testimony stating ultimate legal conclusions based on those facts).

Instead, the FOMB tries to distinguish Ms. Murray's conclusions by reframing them as addressing the fact of financial reasonableness, rather than legal reasonableness. (Opp. at ¶ 17). But there is no factual or legal support in the FOMB's opposition for such a distinction.

The standards for settlement approval are well-settled and require the court, not an expert, to make a determination as to whether a settlement is reasonable. *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 758 (Bankr. S.D.N.Y. 1992); *In re Copperfield Invs., LLC*, 401 B.R. 87, 92 (Bankr. E.D.N.Y. 2009). In making such a determination, courts weigh and evaluate many of the same factors that Ms. Murray considered in her report: potential success of litigation versus future benefits of the settlement; likelihood of complex and protracted litigation; the competency and experience of counsel for the parties; and the extent to which the settlement is the product of arm's length bargaining. *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); (Report at 62-63).

The primary purpose of many of these factors is to evaluate the financial implications of a settlement. For example, in evaluating the likelihood of complex and protracted litigation, one of the key considerations is the cost associated with a drawn out legal battle, including whether it

- 2 -

makes financial sense to avoid incurring such a cost through settlement. *In re Iridium Operating LLC*, 478 F.3d 452 at 462 (citing the attendant expense of litigation as a consideration in evaluating reasonableness). In fact, the overall inclination towards settlement in bankruptcy is largely to avoid the expense of litigation. *In re K.G. IM, LLC*, 620 B.R. 469, 483 (Bankr. S.D.N.Y. 2020) (stating that settlements are favored in bankruptcy as they minimize costly litigation and further the parties' interest in expediting the administration of the estate.). Accordingly, there is no basis for the FOMB's argument that there is a "distinction between Ms. Murray's opinion on the one hand that the settlements are reasonable financial compromises . . . and the Court's ultimate legal determinations that the settlements are above the lowest level of the reasonableness range as a matter of law." (Opp. at ¶ 2).

Whether or not the settlements are reasonable financial compromises is precisely what the court is evaluating. *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723 at 758; *In re Copperfield Invs., LLC*, 401 B.R. 87 at 92. To that end, Ms. Murray's analysis and her expert opinion on whether the parties negotiated in good faith, the degree of risk associated with litigation; and any analysis on the Best Interests Test Reports are proper opinions. Her conclusion of reasonableness, delivered after weighing each of these factors, is not.

The FOMB's contention that "[n]othing prohibits Ms. Murray from using the word 'reasonable' in her assessment of whether the settlements are financially prudent or appropriate" completely misses the point. (Opp. at ¶ 3). This is not a question of semantics and Ms. Murray's use of the term is not happenstance. Ms. Murray followed a very specific process and itemized and weighed the very factors that a court considers as part of its reasonableness analysis. She then plainly stated that the settlements are reasonable. But reasonableness is determined as a matter of

law and the FOMB's effort to give a different meaning to the language in Ms. Murray's Report, does not change the Report's actual content and clear meaning.²

Moreover, the fact that Ms. Murray's opinions are "grounded in factual analysis" or "supported by her extensive experience" has no bearing on the admissibility of those opinions. (Opp. at ¶ 3). Inexplicably, the FOMB spends a large portion of the opposition bolstering Ms. Murray's expertise.³ This recitation of her alleged qualifications is a waste of the court's time.⁴ Regardless of any experts' qualifications, they are not permitted to testify as to legal conclusions, which is exactly what Ms. Murray is doing. Importantly, even though the opposition states that "Ms. Murray has previously offered these types of opinions numerous times before judicial and administrative bodies," (Opp. at ¶ 12), Ms. Murray testified that she was unsure whether she had in fact ever given testimony on whether a settlement is reasonable. Zouairabani Decl. Ex. A (Murray Dep. 112:3-5 ("**A.** I don't know that I've given testimony specifically on whether a settlement is reasonable.")). While Ms. Murray may be qualified to evaluate the factors that underpin reasonableness, that ultimate conclusion is left for the court. *Ji v. Bose Corp.*, 538 F. Supp. at 359.

Relatedly, the FOMB takes issue with the DRA Parties' contention that reasonableness of the settlements is a threshold issue for plan confirmation. Yet again, the FOMB's objection relies

---

² In a further attempt to delineate her opinion as something other than a legal conclusion, Ms. Murray testified during her deposition that she opined on commercial reasonableness, and is not providing a legal opinion. Such wordplay is of no consequence. Call it financial reasonableness or commercial reasonableness, Ms. Murray is drawing a legal conclusion about the equity of these settlements and that is the role of the court. Zouairabani Decl. Ex. A (Murray Dep. 110:1-5 ("**Q.** And if I understand your Opinions Number 4 correctly, your Opinion Number 4 is that the settlements reached by the debtors were reasonable – are reasonable; is that right? **A.** Commercially reasonable, yes.")). All exhibit references are to exhibits to the *Declaration of Nayuan Zouairabani in Support of the DRA Parties' Reply Memorandum of Law in Support of its Motion in Limine to Exclude Certain Testimony offered by Debtors' Plan Expert Marti P. Murray* ("Zouairabani Decl.") filed simultaneously herewith.
³ Notably, during her deposition Ms. Murray demonstrated little knowledge about her Report, stating, for many of the questions, that she would need to consult with her team in order to be confident in her responses. Zouairabani Decl. Ex. A (Murray Dep. 80:16-81:10; 84:8-16; 85:24-86:23; 92:2-17; 97:17-99:23).
⁴ The DRA Parties are not challenging Ms. Murray's qualifications to state opinions appropriately grounded in her expertise and based on facts.

largely on an invented distinction between legal and financial reasonableness; a distinction without a difference. The only way the Plan can be confirmed is if the settlements are found to be reasonable, an analysis that necessarily involves a determination of financial practicality. The very factors that the court must consider plainly implicate the financial effects of the settlements. Drawing this false distinction does not rescue Ms. Murray's improper opinion.

The FOMB's reliance on PROMESA § 314 and the Bankruptcy Code is likewise misguided. The Confirmation requirements under PROMESA § 314 have no relation to whether Ms. Murray's testimony is admissible under Federal Rule of Evidence 702. They are two completely separate issues. PROMESA § 314 simply lays out what the debtors have to prove in order to get the Plan confirmed. It does not list or identify the type of evidence that a debtor can rely on, much less convert an inadmissible legal conclusion into a proper expert opinion. Regardless, neither PROMESA nor the Bankruptcy Code are relevant to the admissibility standard set out in Federal Rule of Evidence 702.

The FOMB's remaining arguments are equally unavailing and misconstrue the DRA Parties' positions. First, the DRA Parties are not arguing that Ms. Murray's opinion is impermissible just because it embraces an ultimate issue, rather, the DRA Parties argue that Ms. Murray's opinion is impermissible because it reaches an ultimate conclusion on an issue of law, not fact, and must therefore be excluded under the Rule. *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997).

Finally, there is nothing inconsistent about the DRA Parties' position that Ms. Murray improperly reaches a conclusion on reasonableness without due consideration of opposing arguments. The DRA Parties are not suggesting that Ms. Murray should opine on confirmability, rather, the DRA parties are simply pointing out that Ms. Murray draws a legal conclusion she is

not authorized to make while relying on only part of the relevant information a court would consider.

The FOMB has provided no support for its position that Ms. Murray's opinions on reasonableness should be treated as factual rather than legal conclusions and simply characterizing them as such does not change the fact that her Report contains an improper legal conclusion.

## CONCLUSION

For the reasons set forth above, the DRA Parties respectfully request that the Court enter an Order precluding Ms. Murray from testifying as to legal conclusions at trial.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 22nd day of October, 2021

**CERTIFICATE OF SERVICE**: In accordance with Fed. R. Bankr. P. 9014(b), Fed. R. Bankr. P. 7004(b), and the Court's *Fifteenth Amended Notice, Case Management and Administrative Procedures Order* (Dkt. No. 17127-1) (the "CMP Order"), we hereby certify that a true and exact copy of the foregoing was sent by electronic mail upon all the parties listed in the Master Service List and by U.S. mail upon all the Standard Parties listed in the CMP Order.

| **MCCONNELL VALDÉS LLC** | **C. CONDE & ASSOC. LAW OFFICES** |
|---|---|
| 270 Muñoz Rivera Avenue, Suite 7<br>Hato Rey, Puerto Rico 00918<br>P.O. Box 364225<br>San Juan, PR 00936-4225<br>Tel:  787-250-5632<br>Fax:  787-759-9225<br><br>By:  */s/ Arturo J. García-Solá*<br>Arturo J. García-Solá<br>(USDC No. 201903)<br>E-mail: ajg@mcvpr.com<br><br>*/s/ Nayuan Zouairabani*<br>Nayuan Zouairabani<br>(USDC No. 226411)<br>E-mail: nzt@mcvpr.com | By:  */s/ Carmen D. Conde Torres*<br>Carmen D. Conde Torres<br>(USDC No. 207312)<br><br>*/s/ Luisa S. Valle Castro*<br>Luisa S. Valle Castro<br>(USDC No. 215611)<br><br>254 San José Street<br>Suite 5<br>San Juan, PR 00901-1523<br>Tel:  787-729-2900<br>Fax:  787-729-2203<br>E-mail: condecarmen@condelaw.com<br><br>-and- |

| | |
|---|---|
| ***Attorneys for AmeriNational Community Services, LLC, as Servicer for the GDB Debt Recovery Authority*** | **SCHULTE ROTH & ZABEL LLP**<br><br>By:  */s/ Douglas S. Mintz*<br>Douglas S. Mintz (admitted *pro hac vice*)<br>901 Fifteenth Street, NW, Suite 800<br>Washington, DC 20005<br>Tel:  202-729-7470<br>Fax:  202-730-4520<br>E-mail: douglas.mintz@srz.com<br><br>-and-<br><br>Douglas Koff (admitted *pro hac vice*)<br>Abbey Walsh (admitted *pro hac vice*)<br>Peter J. Amend (admitted *pro hac vice*)<br>919 Third Avenue<br>New York, NY 10022<br>Tel:  212-756-2000<br>Fax:  212-593-5955<br><br>E-mail:  douglas.koff@srz.com<br>abbey.walsh@srz.com<br>peter.amend@srz.com<br><br>***Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for the GDB Debt Recovery Authority*** |

- 7 -