## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## OBJECTION OF THE DRA PARTIES TO THE PROPOSED ORDER AND JUDGMENT CONFIRMING SEVENTH AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET AL.

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation  (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801).

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................1

OBJECTION .......................................................................................................................3

I.     The Proposed Findings and Conclusions ...........................................................4

       A.     Proposed Confirmation Order's Provisions Related to Preemption of
              Commonwealth Law Must Be Removed ....................................................4

       B.     The Proposed Confirmation Order's Provisions Related to the Issuance of
              New Debt Under the Plan Have Not Been Satisfied and Should Be Removed .......6

II.    The Proposed Confirmation Order's Discharge, Release, Exculpation and Injunction
       Provisions Need to Be Revised Because they are Overbroad and Impermissible
       Under Applicable Law ..........................................................................................8

III.   Provisions Disposing of Disputes and Approving Settlements Incorporated into the
       Plan Should Be Removed or Modified ...............................................................13

IV.    The Disputed Claims Holdback Must be Revised ..............................................15

V.     Treatment of PBA/DRA Secured Claims Must be Clarified ..............................17

VI.    The Proposed Confirmation Order's Administrative Claim Bar Date Provision Must
       be Revised ...........................................................................................................18

VII.   Interim Distribution of HTA Assets and Payment of Structuring Fees Are Not
       Permissible ..........................................................................................................18

VIII.  The Proposed Confirmation Order's Discharge of Commonwealth Liability Related
       to HTA Debt is Flawed .......................................................................................19

IX.    The Proposed Confirmation Order Must Provide for Takings Clause Claims to Be
       Unimpaired or Excepted from Discharge ...........................................................20

X.     Other Paragraphs of the Proposed Confirmation Order that Require Modification ..........21

       A.     PROMESA Section 407 Claims Should Not be Released ........................21

       B.     Parties in Interest Must Be Able to Enforce the Plan ..............................22

       C.     Conflicts Between Proposed Confirmation Order and Plan .....................23

RESERVATION OF RIGHTS .............................................................................................23

CONCLUSION..................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                       **Page(s)**

*In re City of Detroit,*
   524 B.R. 147 (Bankr. E.D. Mich. 2014) ...............................................................20

*In re Ditech Holding Corp.,*
   606 B.R. 544 (Bankr. S.D.N.Y. 2019) ...............................................................10

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV,*
   209 F.3d 252 (3d Cir. 2000)...............................................................................10

*Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight &*
   *Mgmt. Bd. for P.R.),*
   330 F. Supp. 3d 685 (D.P.R. 2018), *aff'd on other grounds*, 945 F.3d 3 (1st
   Cir. 2019), *cert. denied*, 141 S. Ct. 241 (2020).........................................................7

**United States Constitution**

U.S. Const. amend. V, cl. 5....................................................................................12, 20, 21

**Puerto Rico Constitution**

P.R. Const. art. II, § 9 ...........................................................................................12, 20, 21

**United States Statutes**

11 U.S.C. § 502...........................................................................................................16

11 U.S.C. § 502(h).........................................................................................9, 10, 11, 12

11 U.S.C. § 503(a) .......................................................................................................18

11 U.S.C. § 506(b) .......................................................................................................17

11 U.S.C. § 1123(a)(4)................................................................................................19

11 U.S.C. § 1129 .........................................................................................................17

48 U.S.C. §§ 2101-2241 ...............................................................................................1

48 U.S.C. § 2174(b)(1).................................................................................................19

48 U.S.C. § 2174(b)(3).................................................................................................19

48 U.S.C. § 2195(a) .....................................................................................................21

**Puerto Rico Statutes**

9 L.P.R.A. § 2021 ................................................................................................6, 21

9 L.P.R.A. § 5681 ...............................................................................................6, 21

13 L.P.R.A. § 31751(a)(1) ...................................................................................6, 21

13 L.P.R.A. § 31751(a)(3) ...................................................................................6, 21

*Government Development Bank for Puerto Rico Debt Restructuring Act* ("GDB
    Restructuring Act"),
    Act No. 109-2017, *as amended by* Act No. 147-2018 .............................................1

*Internal Revenue Code for a New Puerto Rico Act*
    Act No. 1-2011, as amended by Act No. 31 2013 ...................................................5

*Puerto Rico Vehicles and Traffic Act,*
    Act No. 22-2000, as amended by Act No. 30-2013 ................................................5

**Rules of Procedure**

Fed R. Bankr. P. 7001(2) .......................................................................................17

**Other Authorities**

5 Collier on Bankruptcy 553.08[1] (16th ed. 2021)................................................10

Press Release, Fin. Oversight & Mgmt. Bd. for P.R. Statement (Oct. 21, 2021)
    FOMB - Statement - POA.pdf - Google Drive ........................................................7

**COME NOW** AmeriNational Community Services, LLC (the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company (the "Collateral Monitor," and together with the Servicer, collectively, the "DRA Parties"), which serves as the collateral monitor for Wilmington Trust, N.A. in connection with the new bonds that the DRA issued pursuant to the *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as amended by Act No. 147-2018, and the approved qualifying modification (the "Qualifying Modification")[2] for the Government Development Bank for Puerto Rico (the "GDB") under Title VI of the *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA")[3], by and through the undersigned legal counsel, and respectfully submit this objection (this "Objection") to the *Proposed Order and Judgement Confirming Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et. al.* [Dkt. No. 18447] (the "Proposed Confirmation Order") filed by the Financial Oversight and Management Board for Puerto Rico (the "FOMB"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA" and, collectively with the Commonwealth and ERS, the "Debtors").[4]

## **INTRODUCTION**

1.     As detailed fully in the *Objection of the DRA Parties to the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Dkt. No. 18590] (the

---

[2]     *See* Dkt. No. 270 of Civil Case No. 18- 01561 (LTS) (Nov. 7, 2018).

[3]     PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[4]     Capitalized terms used but not otherwise defined herein  shall have the meanings assigned to such terms in the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Dkt. No. 17627] (the "Plan") or the Proposed Confirmation Order, as the context so requires.

"DRA Confirmation Objection"), the DRA rose from the ashes of the Qualifying Modification for the GDB.  Over the last nearly three years, the DRA Parties have worked to defend the DRA's claims and negotiate on its behalf.  But, as noted in the DRA Confirmation Objection, the DRA Parties have been cut out by the FOMB from any meaningful discussions regarding the Plan, including the discussions regarding the treatment of claims at, and distributions of assets of, HTA (of which the DRA is likely the single largest creditor)—leaving the DRA Parties with no alternative but to vigorously contest confirmation of the Plan.

2.      The Proposed Confirmation Order largely tracks the Plan.  As a result, many provisions of the Plan that the DRA Parties believe are objectionable and render the Plan unconfirmable have been incorporated into, or are otherwise reflected in, the Proposed Confirmation Order, making the Proposed Confirmation Order equally objectionable.

3.      The DRA Parties have extensively briefed their objections to the Plan in the DRA Confirmation Objection and will not rehash those arguments here.  Instead, the DRA Parties rely on those arguments to identify objectionable portions of the Proposed Confirmation Order and have cross-referenced the relevant paragraphs of the DRA Confirmation Objection to substantiate the bases for the DRA Parties' objection to the Proposed Confirmation Order.  Accordingly, the DRA Confirmation Objection is incorporated herein in its entirety and shall be deemed to have the same force and effect as if set forth in full herein.

4.      As with the Plan, the Proposed Confirmation Order contains a number of problematic provisions, including those identified below.  In particular, the Proposed Confirmation Order is objectionable because, among other things, it:

> (a) contains findings and determinations that broad swathes of Commonwealth law (including Acts 30 and 31) are preempted despite the fact that PROMESA explicitly limits its own preemptive powers;

(b) approves and grants overly broad and impermissible releases, exculpations and injunctions that may release, enjoin, settle and discharge an array of claims by and among non-Debtors in violation of applicable law; and

(c) approves settlements that would compromise ongoing, and currently unresolved, litigations among non-settling parties and/or non-Debtors.

5.      The Court should not confirm the Plan or enter the Proposed Confirmation Order for the reasons detailed in the DRA Confirmation Objection and herein.  However, to the extent the Court proceeds with confirmation, critical changes to the Proposed Confirmation Order must be made as described below.

## **OBJECTION**[5]

6.      As discussed in detail in the DRA Confirmation Objection, the DRA Parties object to the Plan because it fails to satisfy numerous confirmation requirements under PROMESA and the Bankruptcy Code.   Accordingly, the DRA Parties object to the entry of the Proposed Confirmation Order in its entirety, or any other order that proposes to approve the Plan.

7.      Without limiting the generality of the foregoing, the DRA Parties are filing this objection as required by the Court's *Amended Order Establishing Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [Dkt. No. 18394] to highlight key provisions in the Proposed Confirmation Order that are objectionable (identified below) and should be modified or stricken.[6]

---

[5]   As noted in the DRA Confirmation Objection, the DRA Parties reserve all of the DRA's rights with respect to the validity, extent, seniority and priority of its liens, security interests, rights and claims with respect to HTA.  *See* DRA Confirmation Objection ¶ 35 n.18.

[6]   By identifying those provisions, however, the DRA Parties are not conceding that modifications to such provisions would cure the DRA Parties' objections to the Plan, and nothing herein should be interpreted as limiting such objections.  Rather, the DRA Parties continue to contend the entire Plan remains unconfirmable and thus the Proposed Confirmation Order should be rejected.  Any failure to specifically highlight a particular objectionable paragraph of the Proposed Confirmation Order does not reflect the DRA Parties' acceptance of such paragraph.  Rather, it reflects the DRA Parties' intent to focus this Objection on the specific issues discussed herein.

## I.     The Proposed Findings and Conclusions

8.     Paragraph 3 of the Proposed Confirmation Order seeks to incorporate the "Court's Findings of Fact and Conclusions of Law" as though they are set forth in full in the Proposed Confirmation Order.  *See* Proposed Confirmation Order ¶ 3.  Those "Findings of Fact and Conclusions of Law" referenced in paragraph 3 have not been filed on the Court's docket or otherwise provided to the DRA Parties, or any other party in interest, and so those parties will not have an opportunity to review and weigh in on those findings and conclusions.  As noted in the DRA Parties' *Objection of the DRA Parties to The Motion of Debtors for an Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [Dkt. No. 16997] (the "<u>DRA Confirmation Procedures Objection</u>"), the DRA Parties should have an opportunity, and reserve their rights, to review and object to those findings and conclusions in connection with confirmation and *before they are adopted by the Court*.  *See* DRA Confirmation Procedures Objection ¶ 37.

9.     While the DRA Parties object broadly to their inability to review the full proposed findings and conclusions at this time, they further object to several specific provisions of paragraph 3 of the Proposed Confirmation Order.

### A.     *Proposed Confirmation Order's Provisions Related to Preemption of Commonwealth Law Must Be Removed*

10.     The Proposed Confirmation Order, through paragraph 3(B), seeks to broadly preempt "all laws, rules, and regulations giving rise to obligations of the Debtors discharged by the Plan and this Order."  Proposed Confirmation Order ¶ 3(B).  It further seeks to preempt "all laws . . . of the Commonwealth of Puerto Rico . . . inconsistent with PROMESA" to the extent such laws were not previously preempted, including "laws enacted prior to June 30, 2016, that

4

provide for transfers or other appropriations after the enactment of PROMESA, including transfers from the Commonwealth or one of its instrumentalities to any agency or instrumentality." *Id*.

11.    For the reasons set forth in the DRA Confirmation Objection, the Court should not countenance the FOMB's overbroad theory of preemption. *See* DRA Confirmation Objection ¶¶ 70-94. Not only does PROMESA not condone this theory, PROMESA expressly refutes it by limiting the preemption of Commonwealth law narrowly. *See id*. To that end, the Court should strike paragraph 3(B) of the Proposed Confirmation Order as being inconsistent with PROMESA for the reasons explained in the DRA Confirmation Objection.

12.    Should the Court agree that PROMESA preempts Commonwealth law broadly, then it must address the DRA Parties' particular concerns with respect to the FOMB's efforts to retain excise tax revenues (including the Act 30-31 Revenues[7]) in contravention of the Commonwealth Constitution, Acts 30 and 31, and other applicable law. If the Proposed Confirmation Order is adopted by the Court in its current form, it would expressly preempt Acts 30 and 31. *See id.* ¶ 3(B), Ex. C. The DRA Parties request that paragraph 3(B) of the Proposed Confirmation Order be revised to expressly carve-out Acts 30 and 31 from such preemption. To that end, if the Court determines to retain paragraph 3(B) in the Proposed Confirmation Order, the DRA Parties request that it be revised to read:

> This Order is a final order intended to be binding on all parties in interest, and shall not be subject to collateral attack or other challenge in any other court or other forum, except as permitted under applicable law. Confirmation of the Plan constitutes a judicial determination, pursuant to Section 4 of PROMESA, that all laws, rules, and regulations giving rise to obligations of the Debtors discharged by the Plan and this Order pursuant to PROMESA are preempted by PROMESA and such discharge shall prevail over any general or specific provisions of territory laws, rules, and regulations. Pursuant to PROMESA Section 4, to the extent not previously ruled preempted pursuant to an order of the Title III Court, all laws (or

---

[7]    The "Act 30-31 Revenues" are certain excise tax revenues allocated and assigned to HTA by the Commonwealth pursuant to Act No. 30-2013 approved by the Legislature of the Commonwealth on June 25, 2013 ("Act 30") and Act No. 31-2013 approved by the Legislature of the Commonwealth on June 25, 2013 ("Act 31").

such portions thereof) of the Commonwealth of Puerto Rico, other than budgets certified by the Oversight Board, inconsistent with PROMESA, have been preempted. Such preempted laws include, without limitation, laws enacted prior to June 30, 2016, that provide for transfers or other appropriations after the enactment of PROMESA, including transfers from the Commonwealth or one of its instrumentalities to any agency or instrumentality, whether to enable such agency or instrumentality to pay or satisfy indebtedness or for any other purpose, and such laws shall not be enforceable for any purpose, as well as all laws enacted from and after the commencement of the Title III Cases to the extent inconsistent with the transactions contemplated by the Plan. Without in any way limiting the foregoing, (a) the Commonwealth laws preempted by PROMESA include, without limitation, those listed on Exhibit C hereto and (b) all litigation in which any Government Party is a defendant, over whether Commonwealth law listed on Exhibit C hereto is preempted by PROMESA shall be dismissed, with prejudice, as of the Effective Date and the parties thereto shall provide the Oversight Board prompt notice of such dismissal. To avoid the future recreation of the debts and claims discharged herein, each of the preempted laws is preempted permanently. Notwithstanding the foregoing, (i) Act 9 approved August 12, 1982, (ii) 9 L.P.R.A. § 2021, (iii) 9 L.P.R.A. § 5681, (iv) 13 L.P.R.A. § 31751(a)(1), (v) 13 L.P.R.A. § 31751(a)(3), (vi) Act No. 30-2013 approved by the Legislature of the Commonwealth on June 25, 2013 and (vii) Act No. 31-2013 approved by the Legislature of the Commonwealth on June 25, 2013 are not preempted by PROMESA.

13.     Relatedly, if the Court elects to retain paragraph 3(B) in the Proposed Confirmation Order, including Exhibit C referenced therein, the DRA Parties request that Exhibit C be revised to remove any references to the following: (i) Act 9 approved August 12, 1982; (ii) 9 L.P.R.A. § 2021; (iii) 9 L.P.R.A. § 5681; (iv) 13 L.P.R.A. § 31751(a)(1); and (v) 13 L.P.R.A. § 31751(a)(3).

## B.     *The Proposed Confirmation Order's Provisions Related to the Issuance of New Debt Under the Plan Have Not Been Satisfied and Should Be Removed*

14.     There are a number of provisions in the Proposed Confirmation Order, including paragraphs 3(E)-(K) (containing certain findings and conclusions) and 11 (regarding monthly deposits of interest and principal relating to the New Go Bonds) that are premised on the passage of the New GO Bond Legislation and the CVI Legislation, which would authorize the Commonwealth to issue the New GO Bonds and CVIs under the Plan.  As of the date hereof, the Puerto Rico legislature has not passed either the New GO Bond Legislation or the CVI Legislation

(and it is unclear whether such legislation will be passed). *See* Proposed Confirmation Order
¶¶ 3(E)-(K), 11.

15.     As noted in the DRA Confirmation Objection, the passage of the New GO Bond
Legislation and the CVI Legislation is a critical component to the Plan's implementation, without
which the Plan cannot go forward. *See* DRA Confirmation Objection ¶¶ 151-52. Accordingly,
the inclusion of findings and conclusions in the Proposed Confirmation Order premised on such
legislation is, at best, premature.[8]

16.     Additionally, paragraph 9 of the Proposed Confirmation Order provides that the
new debt issued under the Plan is a valid legal obligation of the Debtor or Reorganized Debtor, as
applicable. *See* Proposed Confirmation Order ¶ 9. Paragraph 9 of the Proposed Confirmation
Order also contains bracketed language stating that (i) the new debt is enforceable regardless of
whether the Commonwealth enacts statutes authorizing such obligations, and (ii) any and each
Commonwealth law requiring legislative approval to authorize the new debt is preempted. *See id.*

17.     The Court should strike the FOMB's requested language in paragraph 9 because,
as noted above, at this time, the Commonwealth government has not approved the legislation
authorizing the issuance of this new debt. *See supra* ¶¶ 14-15. Moreover, the FOMB's attempt to
circumvent the need for this legislation through preemption is an overreach and cannot be

---

[8]     As indicated in the DRA Confirmation Objection, the legislation intended to give effect to the New GO Bonds
and the CVIs is House Bill 1003, the passage of which was questionable as of October 19, 2021. On October 21,
2021, the FOMB issued a Statement indicating that "[i]f House Bill 1003 . . . is not enacted into law by 2 p.m.
AST on Friday, October 22, 2021, the Oversight Board will be forced to seek adjournment of the confirmation
hearing". A copy of the Statement can be downloaded at:
https://drive.google.com/file/d/1d1_hH7aG8B9cvkuB90wr_20NzyOHTy0i/view.

As reported in the news, House Bill 1003 is currently in limbo due to the Puerto Rico Senate's shelving of the
bill because of lack of sufficient votes to approve it. Because the Puerto Rico Senate and House of Representatives
have recessed until Tuesday, October 26, 2021 without passage of House Bill 1003, the FOMB's deadline of
today at 2 PM was not met. *See* https://app.reorg.com/v3/#/items/intel/1869?item_id=158090. For this reason,
today the Court issued the *Order to Appear for Urgent Status Conference* [Dkt. No. 18643].

accepted.  This Court has previously ruled that the FOMB does not have the power to legislate, as

such power is the exclusive prerogative of the Commonwealth Legislature.  *See Rosselló Nevares*

*v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 330 F. Supp.

3d 685, 701 (D.P.R. 2018), *aff'd on other grounds*, 945 F.3d 3 (1st Cir. 2019), *cert. denied*, 141 S.

Ct. 241 (2020) ("[T]he Oversight Board has not been given power to affirmatively legislate.").[9]

## II.   The Proposed Confirmation Order's Discharge, Release, Exculpation and Injunction Provisions Need to Be Revised Because they are Overbroad and Impermissible Under Applicable Law

18.     Paragraphs 49-58 in the Proposed Confirmation Order largely track the Plan's

impermissible and overly broad discharge, release, exculpation and injunction provisions.  *See*

Proposed Confirmation Order ¶¶ 49-58.  As set forth in the DRA Confirmation Objection, these

provisions are problematic for several reasons and should not be approved.

19.     *First*, as set forth in the DRA Confirmation Objection, the DRA Parties contend

that these provisions are overbroad third-party releases that improperly discharge, release and

enjoin claims among non-Debtors in violation of applicable law.   *See* DRA Confirmation

Objection ¶¶ 144-150.   For example, as currently drafted in the Plan and the Proposed

Confirmation Order, these provisions may, among other things: (i) release the DRA's claims

against the Monolines and the other PSA Creditors[10], (ii) release the DRA's claims against HTA

---

[9]     *See* Disclosure Statement at 69 (The Commonwealth government asserts that legislative approval is needed to issue new debt under the Plan and that there is no case where a federal court, sitting in bankruptcy or territorial power jurisdiction, has successfully compelled a state or local legislature to legislate).

[10]    Paragraph 49 of the Proposed Confirmation Order states that "nothing contained in the Plan or this Order is intended, nor shall it be construed, to be a grant of a third-party release of the PSA Creditors."  *See* Proposed Confirmation Order ¶ 49.  However, this does not resolve the DRA's concerns with respect to its claims against the Monolines and the other PSA Creditors because there is language in the Plan and Proposed Confirmation Order that may be construed to impair the DRA's claims against the Monolines and the other PSA Creditors.  *See id*. (providing that "all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, [and] discharge . . . of, all Claims or Causes of Action against the Released Parties"); Plan § 92.2(a) (same).  At a minimum, the Proposed Confirmation Order must be revised to make that the following language in paragraph 49 "nothing contained in the Plan or this Order is

and CCDA, (iii) release HTA's and CCDA's respective claims against other Commonwealth agencies, the Monolines and the other PSA Creditors, (iv) enjoin the prosecution of the foregoing claims that are released under the Plan, and (v) exculpate HTA, CCDA, the Monolines and the other PSA Creditors.  *See id*. ¶¶ 126-143; *see also* Proposed Confirmation Order ¶¶ 49(a), 50-53, 54(a)-(b) & (f), 56, 57; Plan §§ 92.2(a), 92.3, 92.5, 92.6, 92.7(a)-(b) & (f), 92.9, 92.11.

20.     *Second*, it is inappropriate for the Plan to release parties for misconduct or bad acts.[11]  For example, the Monolines have argued that the DRA's claims should be equitably subordinated.  In the event this Court finds that bad acts have occurred—they would have been perpetrated by the GDB, which is not a Debtor here—the DRA may have claims against the FOMB, Commonwealth and GDB based on their participation in the misconduct and such claims of the DRA should not be released, discharged, compromised or settled under the Plan.  *See id.* ¶ 131.

21.     *Third*, while the DRA Parties do not believe it is intended for the Plan and Proposed Confirmation Order to release the DRA's Claims and Causes of Action with respect to the DRA's claims under the Takings Clauses (as defined below), the DRA Adversary Proceeding, the DRA Administrative Expense Claim and/or the DRA Amended Lift Stay Motion (as such terms are defined below), the Plan's release and related provisions (including the layers of defined terms embedded in such provisions) are so vague and ill-defined that they could be interpreted to discharge such Claims and Causes of Action.

---

intended, nor shall it be construed, to be a grant of a third-party release of the PSA Creditors" supersedes all other release, exculpation and injunction provisions.

[11]   Certain provisions of the Plan and paragraphs of the Proposed Confirmation Order seek to carve-out from the Plan's and Proposed Confirmation Order's discharge, release, exculpation and injunction provisions claims that arise from intentional fraud or willful misconduct.  *See* Plan §§ 92.5, 92.6, 92.7(a)-(b) & (f), 92.9, 92.11; Proposed Confirmation Order ¶¶ 50, 53, 54(a)-(b) & (f), 56, 57.  However, other discharge, release, exculpation and injunction provisions of the Plan and paragraphs of the Proposed Confirmation Order do not.  *See* Plan §§ 92.2(a), 92.3; Proposed Confirmation Order ¶¶ 49(a), 51-52.

22.     *Fourth*, the Plan's release provisions would also strip the DRA of its right to assert claims against the Commonwealth that are permitted by Bankruptcy Code section 502(h), which is triggered upon the return of avoidable transfers to a debtor.  *See* Plan § 92.2(a) ("Debtors and Reorganized Debtors shall be deemed discharged and released from any and all . . . Claims of the kind specified in section[] . . . 502(h) . . . of the Bankruptcy Code").

23.     *Fifth*, the Plan and Proposed Confirmation Order are unclear as to whether the DRA's rights of setoff and recoupment will be preserved.  The second proviso in paragraph 28 of the Proposed Confirmation Order states "<u>provided</u>, <u>further</u>, nothing contained [in the Proposed Confirmation Order] is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted" by various provisions of the Bankruptcy Code or under common law rights of recoupment.  Proposed Confirmation Order ¶ 28.  While paragraph 28 of the Proposed Confirmation Order appears to preserve setoff rights, section 92.11(d) of the Plan (under Article XCII) appears to contradict it.  That provision provides that "all Entities . . . shall be deemed to be, permanently stayed, restrained and enjoined from . . . asserting, implementing, or effectuating any setoff . . . recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party."  Plan § 92.11(d).  This would render the second proviso in paragraph 28 (that *expressly preserves* the creditors setoff and recoupment rights) meaningless.

24.     Courts have found that "defenses to enforcement, such as recoupment, cannot be extinguished in bankruptcy . . . because they are neither 'claims' nor 'debts' nor 'interests.'"  *In re Ditech Holding Corp.*, 606 B.R. 544, 596 (Bankr. S.D.N.Y. 2019) (collecting cases); *see Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252 (3d Cir. 2000) (affirmative defenses of recoupment and set-off were not extinguished by bankruptcy sale as interests in property sold);

*see also* 5 Collier on Bankruptcy ¶ 553.08[1] (16th ed. 2021) (majority view is that confirmation of a plan and the related discharge do not bar rights of setoff). Accordingly, the Plan and Proposed Confirmation Order cannot unilaterally extinguish DRA's defensive rights, including any rights of setoff or recoupment. Therefore, this Court should not use the Plan or Proposed Confirmation Order to extinguish these rights.

25.     *Sixth*, paragraph 56 of the Proposed Confirmation Order is overbroad and appears to improperly enjoin Claims arising even *after* the Effect Date. Specifically, paragraph 56 provides, in relevant part, that "every Entity is permanently enjoined . . . from . . . litigating in any manner any and all Claims . . . against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the Plan, the negotiation and consummation of the GO/PBA Plan Support Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Title III Cases." Proposed Confirmation Order ¶ 56. The injunction in this paragraph is not limited to Claims that arose before the Effective Date.

26.     To the extent the Court determines to enter the Proposed Confirmation Order approving the releases, injunctions and exculpations requested by the FOMB, the Proposed Confirmation, at a minimum, should be modified to make it clear that (1) the injunction set forth in paragraph 56 of the Proposed Confirmation Order does not apply to Claims arising on or after the Effective Date, and (2) nothing in the Plan, Proposed Confirmation Order or otherwise is intended to affect the various claims and causes of action among non-Debtors, including, but not limited, to: (a) the DRA's (x) claims and causes of action against (i) the Monolines, (ii) the other PSA Creditors, (iii) HTA, (iv) CCDA, (v) the FOMB, Commonwealth and/or GDB based on their allegedly inequitable conduct, (vi) Takings Clause claims, (vii) claims or rights relating to the

DRA Adversary Proceeding, DRA Administrative Expense Claim and DRA Amended Lift Stay Motion, and (viii) claims based on Bankruptcy Code 502(h), and (y) rights of setoff and recoupment; and/or (ii) HTA's and CCDA's respective claims and causes of action against other non-Debtor agencies or instrumentalities of any Debtor, the Monolines and the other PSA Creditors.

27.     Specifically, the Proposed Confirmation Order should be modified to add the following new provision:

> Notwithstanding anything to the contrary contained in the Plan, this Order or any other document related thereto, nothing contained in the Plan, this Order or any other document related thereto shall be construed or deemed to impair, alter, modify, diminish, prohibit, bar, restrain, enjoin, release, reduce, eliminate, settle, discharge, resolve, limit and/or impact in any way any existing or future Claims, Causes of Action, rights and/or remedies (i) the GDB or the Government Development Bank Debt Recovery Authority (the "DRA") may have against any of the Monolines, PSA Creditors, HTA and/or CCDA, (ii) HTA and CCDA may have against any non-Debtor agency or instrumentality of any Debtor, any of the Monolines and/or any of the PSA Creditors, (iii) the DRA may have against any of the FOMB, Commonwealth and/or GDB, to the extent such Claims, Causes of Action, rights and/or remedies are based on any such party's inequitable conduct, (iv) the DRA may have against the Commonwealth based on the Commonwealth's violation of the DRA's rights under U.S. Const. amend. V, cl. 5 and/or P.R. Const. art. II, § 9, (v) any Entity may have under Bankruptcy Code section 502(h), (vi) each of the DRA, HTA and CCDA may have based on its rights of setoff and/or recoupment, (vii) among any non-Debtors and/or (viii) in connection with, arising from or relating to (x) the DRA's adversary proceeding filed at Adv. Pro. No. 21-00068, (y) *The DRA Parties' Motion for Allowance of an Administrative Expense Claim* [Case No. 17-03283, Dkt. No. 17009] and/or (z) *The DRA Parties' Amended Motion and Memorandum of Law in Support of Their Request For Adequate Protection or Relief From The Automatic Stay* [Case No. 17-03283, Dkt. No. 16276].

28.     In addition, paragraph 56 of the Proposed Confirmation Order should be modified as follows:

> Bar Order. As of the Effective Date, to the limited extent provided in the Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all Claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether

asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the Plan, the negotiation and consummation of the GO/PBA Plan Support Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Title III Cases, in each case, arising prior to the Effective Date, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Title III Cases, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the related actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted). For the avoidance of doubt, nothing herein shall act as a bar to any Claims, demands, rights, liabilities or causes of action arising on or after the Effective Date.

## III. Provisions Disposing of Disputes and Approving Settlements Incorporated into the Plan Should Be Removed or Modified

29.     Paragraph 4 of the Proposed Confirmation Order contains an impermissibly broad provision that purports to "compromise" and settle "all Claims and controversies resolved pursuant to the Plan," including those relating to the rights of various claimholders as well as certain other disputes identified in paragraph 4. Proposed Confirmation Order ¶ 4. Among the "disputes" being settled and resolved as part of the Plan and Proposed Confirmation Order are those relating to: (i) litigation with respect to the Commonwealth's clawback of revenues from HTA (and other instrumentalities) under the Commonwealth Constitution, including the clawback of the Act 30-31 Revenues that collateralize the GDB HTA Loans (*see id.* ¶ 4(d)); (ii) the dispute "relating to the validity, priority, secured status and related rights attendant to the GDB HTA Loans" (*id.* ¶ 4(e)); and (iii) the issues "set forth in the Lift Stay Motions and the Clawback Actions relating to the . . . the CW/HTA Claims" (*id.* ¶ 4(h)).

30.     Paragraph 5 of the Proposed Confirmation Order approves and authorizes the
settlements and compromises contained in the Plan, including those contained in paragraph 4, and
determines them to be "fair and reasonable." *Id.* ¶ 5.

31.     The overbroad language in paragraphs 4 and 5 of the Proposed Confirmation Order
that seeks to unilaterally compromise and eliminate the DRA's and other creditors' rights and
claims, including any disputes among non-Debtors, is inappropriate and should be stricken from
the Proposed Confirmation Order.  For example, the Plan's settlement of litigation related to (i) the
Commonwealth's clawback of the Act 30-31 Revenues, and (ii) the validity, priority, secured
status and related rights with respect to the GDB HTA Loans stems from the settlements contained
in the HTA/CCDA Plan Support Agreement.  *See* DRA Confirmation Objection ¶¶ 36-37, 174.
As set forth in the DRA Confirmation Objection, the settlements contained in the HTA/CCDA
Plan Support Agreement are not fair and reasonable because, among other things, they (a) seek to
distribute HTA's assets outside of an HTA plan (including mandating HTA to pay-down $264
million of principal owed to holders of HTA 68 Bonds and HTA 98 Senior Bonds, in violation of
applicable law), and (b) impermissibly release and enjoin claims by and against HTA, in each case,
in violation of applicable law.  *See id.* ¶¶ 116-18.

32.     Moreover, they would settle and eliminate the litigation in which the DRA Parties
remain as parties—and which this Court has yet to rule on—including: (i) litigation concerning
the DRA's asserted administrative expense claim against the Commonwealth (the "DRA
Administrative Expense Claim") (*see* Case No. 17-03283, Dkt. No. 17009), which is based on the
Commonwealth's illegal post-petition retention of the Act 30-31 Revenue; (ii) the DRA's
adversary proceeding filed at Adv. Pro. No. 21-00068 (LTS) (the "DRA Adversary Proceeding")
against the Monolines, Peaje Investments LLC, and the Bank of New York Mellon seeking a

declaratory judgment regarding the validity, extent, seniority and priority of the liens, security interests, rights and claims of each of the DRA and the Defendants with respect to HTA; and (iii) the DRA Parties' amended motion seeking adequate protection or, in the alternative, relief from the automatic stay (the "DRA Amended Lift Stay Motion") (*see* Case No. 17-03283, Dkt. No. 16276).

33.     Accordingly, should the Court determine to enter the Proposed Confirmation Order, the DRA Parties request that it be revised to remove paragraphs 4(d), 4(e) and 4(h), or, at minimum, that paragraph 4 be revised to ensure that the (i) litigation with respect to the DRA Administrative Expense Claim (and such claim), (ii) pending DRA Adversary Proceeding and (iii) DRA Amended Lift Stay Motion are not being compromised, resolved or discharged. Additionally, paragraph 5 of the Proposed Confirmation Order should be modified as follows:

> Plan Settlement Approved. The Court hereby approves the compromises and settlements embodied in the Plan as fair and reasonable and, as of the Effective Date of the Plan, authorizes and directs the consummation thereof; provided, however, nothing in the Plan, this Order or otherwise shall approve or authorize (x) any compromises or settlements with respect to (i) any disputes raised by any holders of GDB HTA Loans asserting rights to receive revenues historically conditionally appropriated to HTA, and subject to "clawback" by the Commonwealth pursuant to the provisions of the Commonwealth Constitution, (ii) disputes relating to GDB HTA Loans (including the validity, priority, secured status and related rights attendant thereto), and (iii) *The DRA Parties' Amended Motion and Memorandum of Law in Support of Their Request For Adequate Protection or Relief From The Automatic Stay* [Case No. 17-03283, Dkt. No. 16276], and/or (y) the HTA/CCDA Plan Support Agreement.

## IV.   The Disputed Claims Holdback Must be Revised

34.     Paragraph 34 of the Proposed Confirmation Order approves the structure of the Disputed Claims Holdback. *See* Proposed Confirmation Order ¶ 34. This Disputed Claims Holdback provision, however, must be revised to make it clear that it is sufficient to cover the DRA Administrative Expense Claim and PBA/DRA Secured Claim. As discussed herein and in the DRA Confirmation Objection, the determination regarding the DRA Administrative Expense

Claim remains pending before the Court.  *See supra* ¶ 32; DRA Confirmation Objection ¶¶ 153-54.  Similarly, as discussed in the DRA Confirmation Objection, determination regarding the validity, priority, and extent of the PBA/DRA Secured Claim is the subject of a pending adversary proceeding before the Court.  *See* DRA Confirmation Objection ¶¶ 168-70.  Because these two claims are subject to pending litigation, the Proposed Confirmation Order should be revised to clarify that the Disputed Claims Holdback is sufficient to account for these claims in their asserted amount.  Accordingly, paragraph 34 should be revised to include the following:

> Disputed Claims Holdback. From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Title III Court in an amount constituting the allowed amount, or Allowed or Disallowed by Final Order of the Title III Court, Reorganized Debtors or the Disbursing Agent, as applicable, shall retain, for the benefit of each holder of a Disputed Claim, the distributions that would have been made to such holder if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claims have been estimated by the Title III Court pursuant to section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, and (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and Reorganized Debtors; provided, however, that the recovery by any holder of a Disputed Claim shall not exceed the lesser of (i), (ii) and (iii) above. To the extent the Disbursing Agent or any of the Reorganized Debtors, as the case may be, retains any New GO Bonds or CVIs on behalf of Disputed Claims holders, until such New GO Bonds or CVIs are distributed, the Disbursing Agent or such Reorganized Debtors, as the case may be, shall exercise voting or consent rights with respect to such obligations. In addition, notwithstanding anything to the contrary contained in the Plan or this Order, the Reorganized Debtors or the Disbursing Agent, as applicable, shall retain, for the benefit of the Government Development Bank Debt Recovery Authority, in cash, (x) not less than the amount needed to satisfy in full the Government Development Bank Debt Recovery Authority's (the "DRA") administrative expense claim (the "DRA Administrative Expense Claim") against the Commonwealth (as asserted in *The DRA Parties' Motion for Allowance of an Administrative Expense Claim* [Case No. 17-03283, Dkt. No. 17009]) in the event such claim is Allowed, (y) not less than the amount needed to satisfy in full the DRA's adequate protection claim pursuant to the DRA's amended motion seeking adequate protection or, in the alternative, relief from the automatic stay ([Case No. 17-03283, Dkt. No. 16276], the "DRA Amended Lift Stay Motion") in the event such motion is granted, and (z) not less than $68,653,297.69 to pay the DRA's PBA/DRA Secured Claim in the event the Court enters a Final Order in the Adv.

Pro. No. 21-00100 concluding that such claim is secured.  The DRA's recovery on account of the DRA Administrative Expense Claim, the DRA Amended Lift Stay Motion and its PBA/DRA Secured Claims shall not be limited by any of (i), (ii) and (iii) in the proviso of the first sentence of this paragraph.

**V.    Treatment of PBA/DRA Secured Claims Must be Clarified**

35.    As noted in the DRA Confirmation Objection, the FOMB, on behalf of PBA, commenced an adversary proceeding (the "PBA Adversary Proceeding") against the Servicer and Collateral Monitor with respect to the secured status of the PBA/DRA Secured Claim.  *See* Adv. Pro. No. 21-00100-LTS.  As of the date hereof, the PBA Adversary Proceeding remains pending before the Court.

36.    Under Bankruptcy Rule 7001(2) (as made applicable to these Title III cases through PROMESA section 310), the issue of whether the DRA holds a properly perfected security interest against PBA must be determined in the PBA Adversary Proceeding.  *See* Fed R. Bankr. P. 7001(2) (providing that an adversary proceeding is required to "determine the validity, priority, or extent of a lien or other interest in property").  Therefore, it is inappropriate for the Plan to treat the PBA/DRA Secured Claim as unsecured until a determination has been made as to the secured status of such claim in the PBA Adversary Proceeding.

37.    Accordingly, the Proposed Confirmation Order should modify the treatment of the PBA/DRA Secured Claim in section 16.1 of the Plan as follows to clarify that such treatment will change based on the outcome of the PBA Adversary Proceeding:

> **Treatment of PBA/DRA Secured Claims:**  On the Effective Date, each holder of an PBA/DRA Secured Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed PBA/DRA Secured Claim, the following: (i) to the extent the Court determines that any or all portion of the PBA/DRA Secured Claim is secured by property of PBA, the amount of which is equal to or less than the value of such property, (x) payment in full in Cash in full and final satisfaction of the secured portion of the Allowed PBA/DRA Secured Claim, payable within thirty (30) days from the date on which such portion of the PBA/DRA Secured Claim is Allowed, or as soon as reasonably practical thereafter, (y) delivery of the collateral securing the PBA/DRA Secured Claim and

17

payment of any interest required under section 506(b) of the Bankruptcy Code, or (z) such other treatment necessary to satisfy Bankruptcy Code section 1129; and (ii) to the extent that any or all portion of the Allowed PBA/DRA Secured Claim is not secured by property of PBA, payment, in Cash, in an amount equal to ten percent (10%) of such portion of the ~~holder's~~ Allowed PBA/DRA Secured Claim.

## VI. The Proposed Confirmation Order's Administrative Claim Bar Date Provision Must be Revised

38. Paragraph 38 of the Proposed Confirmation Order establishes an Administrative Claim Bar Date that is 90 days after the Effective Date. *See* Proposed Confirmation Order ¶ 38. However, this provision does not detail the procedure by which administrative expense claims will qualify as being timely filed. *See id.* Accordingly, the DRA Parties request that paragraph 38 be modified to make clear that, for the avoidance of doubt, any party that has sought allowance of an administrative expense claim by filing a motion in accordance with Bankruptcy Code section 503(a) on or before the Administrative Claim Bar Date shall be deemed to have timely filed such claim.

## VII. Interim Distribution of HTA Assets and Payment of Structuring Fees Are Not Permissible

39. Paragraphs 46 and 47 of the Proposed Confirmation Order would approve several key components of the HTA/CCDA Plan Support Agreement. Specifically, paragraph 46 would approve a $264 million distribution from HTA to holders of HTA 68 Bonds and HTA 98 Senior Bonds (*see supra* ¶ 35; Proposed Confirmation Order ¶ 46), and paragraph 47 would approve a $58.6 million payment to Assured and National in settlement "structuring fees." (*see id.* ¶ 47).

40. As set forth in greater detail in the DRA Confirmation Objection, the approval of the structuring fees and $264 million accelerated distribution under the Plan to certain holders of HTA bonds is improper because (i) it effectuates a distribution of HTA assets outside of an HTA Plan and in the absence of the rigors of a confirmation process at HTA (*see* DRA Confirmation Objection ¶¶ 110-14), and (ii) such payments are being provided as additional consideration on

18

account of the bondholders' CW/HTA Claims whereas the DRA's CW/HTA Claims in the same

class are not receiving the same treatment (*see* DRA Confirmation Objection ¶¶ 121-122).  These

provisions, among others, render the Plan as a *sub rosa* HTA plan and perpetuate the disparate

treatment of the DRA's GDB HTA Loan claims in Class 59 vis-à-vis the HTA Bond claims in

Class 59 in violation of Bankruptcy Code section 1123(a)(4) (and, by extension, PROMESA

section 314(b)(1)).  *See* DRA Confirmation Objection ¶¶ 119-125.  Accordingly, paragraphs 46

and 47 of the Proposed Confirmation Order should be removed.

## VIII.   The Proposed Confirmation Order's Discharge of Commonwealth Liability Related to HTA Debt is Flawed

41.     Paragraph 64 of the Proposed Confirmation Order discharges creditor claims

against the Commonwealth that are based on, among other things, debt issued by HTA.  *See*

Proposed Confirmation Order ¶ 64.  By its terms, paragraph 64 would discharge the

Commonwealth from liability related to its retention of clawed-back revenues, including the Act

30-31 Revenues.  *See id*.

42.     However, paragraph 64 cannot stand because it would ratify the Commonwealth's

illegal retention of the clawed-back revenues.  As detailed in the DRA Confirmation Objection,

the Plan cannot satisfy PROMESA section 314(b)(3)[12] because it sanctions the continued diversion

of these revenues in contravention of Commonwealth law.  *See* DRA Confirmation Objection ¶¶

58-94.  Therefore, paragraph 64 must be removed from the Proposed Confirmation Order.

43.     In the alternative, if the Court finds that the Commonwealth is entitled to receive a

discharge based on its retention of the clawed-back revenues, then the scope of the discharge must

---

[12]   PROMESA section 314(b)(3) requires that the debtor not be prohibited by law from taking any action necessary to carry out the plan.

be limited so that it does not apply to the DRA Administrative Expense Claim, which remains pending before the Court.[13]

44.     Accordingly paragraph 64 should be revised as follows:

<u>Claims Against the Commonwealth Based on Debt Issued by HTA, CCDA, PRIFA and MBA</u>. The Claims asserted against the Debtors or the Reorganized Debtors based on any bonds issued or guaranteed by or loans made to or guaranteed by HTA, CCDA, PRIFA, or MBA shall, to the extent allowed, be allowed as a Claim arising prior to the Petition Date and classified in Classes 59 through 62 (except Allowed ERS Bond Claims to the extent secured) and are hereby discharged and the Debtors and the Reorganized Debtors have no further liability on account of such Claims; <u>provided, however, nothing in paragraph shall be deemed to discharge any Claims and/or Causes of Action against any of the Debtors or Reorganized Debtors in *The DRA Parties' Motion for Allowance of an Administrative Expense Claim* [Case No. 17-03283, Dkt. No. 17009] or *The DRA Parties' Amended Motion and Memorandum of Law in Support of Their Request For Adequate Protection or Relief From The Automatic Stay* [Case No. 17-03283, Dkt. No. 16276].</u>

## IX.   The Proposed Confirmation Order Must Provide for Takings Clause Claims to Be Unimpaired or Excepted from Discharge

45.     As described in detail in the DRA Confirmation Objection, the Commonwealth's clawback of the Act 30-31 Revenues violates the DRA's rights under U.S. Const. amend. V, cl. 5 (the "<u>U.S. Constitution Takings Clause</u>") and P.R. Const. art. II, § 9 (the "<u>Puerto Rico Constitution Takings Clause</u>" and, together with the U.S. Constitution Takings Clause, the "<u>Takings Clauses</u>") by destroying the DRA's liens and priority designations with respect to HTA. *See* DRA Confirmation Objection ¶¶ 95-107.   Any claim arising under the Takings Clause is non-dischargeable and cannot be adjusted or compromised by a plan of adjustment in a manner that pays the creditor a fractional recovery. *In re City of Detroit*, 524 B.R. 147, 270 (Bankr. E.D. Mich. 2014) (finding that a plan violates the U.S. Constitution Takings Clause when it allows the debtor to impair the property owners' constitutional claim for just compensation after the debtor took

---

[13]   The legal basis for the DRA Administrative Expense Claim is that the Commonwealth illegally clawed-back the Act 30-31 Revenues post-petition and retained such revenues for its benefit. *See* Dkt. No. 17009 ¶¶ 23-47.

their private property). Accordingly, the Proposed Confirmation Order must be modified to either

exempt any claims under the Takings Clauses from discharge or leave them unimpaired. To that

end, the Proposed Confirmation Order should be modified to include the following language:

> Notwithstanding anything to the contrary contained in the Plan, this Order or any
> other document related thereto, nothing contained in the Plan, this Order or any
> other document related thereto shall be construed or deemed to discharge the
> DRA's rights under U.S. Const. amend. V, cl. 5 and P.R. Const. art. II, § 9.

46.      In the alternative, if the DRA's claims under the Takings Clauses are not exempted

from discharge, the Court should modify the Proposed Confirmation Order to include the

following:

> Notwithstanding anything to the contrary contained in the Plan, this Order or any
> other document related thereto, nothing contained in the Plan, this Order or any
> other document related thereto shall be construed or deemed to impair, alter,
> modify, diminish, prohibit, bar, restrain, enjoin, release, reduce, eliminate, settle,
> resolve, limit and/or impact in any way any of the DRA's rights or claims under
> U.S. Const. amend. V, cl. 5 and P.R. Const. art. II, § 9.

## X.     Other Paragraphs of the Proposed Confirmation Order that Require Modification

### A.     PROMESA Section 407 Claims Should Not be Released

47.      PROMESA section 407(a) prohibits the transfer of a territorial instrumentality's

property in violation of applicable law and makes the transferee liable for the value of such

property.[14] The Commonwealth is liable under PROMESA section 407(a) based on its unlawful

diversion of the excise tax revenues that should have been transferred to HTA pursuant to

applicable law. *See* DRA Confirmation Objection ¶¶ 58-60 (discussing the Commonwealth's

unlawful retention of excise tax revenues pledged to HTA); *see also* Act No. 9 (1982) (motor

---

[14]   PROMESA section 407(a) provides that "if any property of any territorial instrumentality of Puerto Rico is
transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or
lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable
law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then
the transferee shall be liable for the value of such property." 48 U.S.C. § 2195(a).

vehicle license fees); 9 L.P.R.A. §§ 2021, 5681 (motor vehicle license fees); 13 LPRA §
31751(a)(1) (gas oil, diesel oil and petroleum products taxes); 13 LPRA § 31751(a)(3) (cigarette
tax).

48.   Paragraph 66 of the Proposed Confirmation Order would cause the DRA's HTA
bond claims based on PROMESA section 407 to be released.  *See* Proposed Confirmation Order ¶
66.  Paragraph 66 provides, in relevant part, that "[a]ll Claims reserved by holders of bonds issued
by HTA . . . including, without limitation, any claim under PROMESA section 407 shall be
automatically released on the Effective Date with no further notice or action."  *Id.*

49.   The DRA should not be forced to release its section 407 claims because such claims
are based on the Commonwealth's unlawful diversion of the excise tax revenues from HTA—
which, as discussed above, cannot be settled or compromised.  *See supra* ¶ 47.

### B.   *Parties in Interest Must Be Able to Enforce the Plan*

50.   Paragraph 67 of the Proposed Confirmation Order, which addresses the FOMB's
termination and post-confirmation powers, provides, in relevant part, that "[a]t all times, each party
in interest may enforce Plan provisions *directly affecting the party in interest*."   Proposed
Confirmation Order ¶ 67 (emphasis added).  This language should be stricken because it is too
vague.  Any party in interest that is affected by the Plan should be able to enforce the Plan without
having to show, or worse, being forced to litigate, whether a particular Plan provision "directly
affect[s]" its interest.  This construct, if approved, would open the door to burdensome litigation,
straining the Court unnecessarily.  Accordingly paragraph 67 of the Proposed Confirmation Order
must be revised to strike the following language: "provisions directly affecting the party in
interest.".

### C.    *Conflicts Between Proposed Confirmation Order and Plan*

51.    Paragraph 73 of the Proposed Confirmation Order addresses conflicts between the Proposed Confirmation Order and Plan, and generally provides that if there is an irreconcilable inconsistency between the Plan and Proposed Confirmation Order, the terms of the Proposed Confirmation Order govern.  *Id.* ¶ 73.   Paragraph 73, however, contains a proviso stating that, when reconciling conflicts between the Confirmation Order and Plan, "nothing contained [in the Proposed Confirmation Order] is intended, nor shall be construed, to modify the economic terms of the Plan."  *Id.*  The proviso creates unnecessary ambiguity because it is unclear whether the Plan or the Proposed Confirmation Order would govern if changes made to the Proposed Confirmation Order (in response to objections or otherwise) affect the economic terms of the Plan.  To the extent the Proposed Confirmation Order contains terms that affect the economic terms of the Plan, those terms should govern and supersede any inconsistent provisions in the Plan.  Accordingly, paragraph 73 of the Proposed Confirmation Order should be revised to strike the following proviso:  "provided, further, that nothing contained herein is intended, nor shall be construed, to modify the economic terms of the Plan."

## RESERVATION OF RIGHTS

52.    The DRA Parties do not waive, and expressly reserve, all of their rights to assert further or additional objections to the Proposed Confirmation Order, confirmation of the Plan (or any other plan), and/or propound discovery related thereto, either prior to or at the confirmation hearing.

## CONCLUSION

**WHEREFORE**, based on the foregoing, the DRA Parties believe that the Court should not enter the Proposed Confirmation Order because the Plan that it seeks to approve is unconfirmable and the Proposed Confirmation Order suffers from the same deficiencies and violation as the Plan.

23

However, if the Court determines to proceed with confirmation of the Plan and enter the Proposed Confirmation Order, the DRA Parties hereby respectfully request that the Court (i) modify the Proposed Confirmation Order consistent with this Objection and (ii) make such other additional modifications thereto, and grant such other relief, as may be just and proper.

**RESPECTFULLY SUBMITTED**,

In San Juan, Puerto Rico, this 22nd day of October, 2021.

**WE HEREBY CERTIFY** that, in accordance with the Court's Fifteenth Amended Notice, Case Management and Administrative Procedures Order (the "CMP Order") [Dkt. No. 17127-1] on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case. We further certify that, on this same date, we served the foregoing upon all the Standard Parties as identified and defined in the CMP Order, as well as upon all of the parties identified in the Master Service List maintained at https://cases.primeclerk.com/puertorico/.

**MCCONNELL VALDÉS LLC**

270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
P.O. Box 364225
San Juan, PR 00936-4225
Tel:   787-250-5632
Fax:   787-759-9225

By:   */s/ Arturo J. García-Solá*
Arturo J. García-Solá
(USDC No. 201903)
E-mail: ajg@mcvpr.com

*/s/ Alejandro J. Cepeda-Díaz*
Alejandro J. Cepeda-Díaz
(USDC No. 222110)
E-mail: ajc@mcvpr.com

*/s/ Nayuan Zouairabani*
Nayuan Zouairabani
(USDC No. 226411)
E-mail: nzt@mcvpr.com

***Attorneys for AmeriNational Community Services, LLC, as Servicer for the GDB Debt Recovery Authority***

**C. CONDE & ASSOC. LAW OFFICES**

By:   */s/ Carmen D. Conde Torres*
Carmen D. Conde Torres
(USDC No. 207312)

*/s/  Luisa S. Valle Castro*
Luisa S. Valle Castro
(USDC No. 215611)

254 San José Street
Suite 5
San Juan, PR 00901-1523
Tel:   787-729-2900
Fax:   787-729-2203
E-mail: condecarmen@condelaw.com

-and-

**SCHULTE ROTH & ZABEL LLP**

By:   */s/ Douglas S. Mintz*
Douglas S. Mintz (admitted *pro hac vice*)
Noah N. Gillespie (admitted *pro hac vice*)
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
Tel:   202-729-7470
Fax:   202-730-4520
E-mail: douglas.mintz@srz.com
          noah.gillespie@srz.com

-and-

Douglas Koff (admitted *pro hac vice*)
Taleah Jennings (admitted *pro hac vice*)
Abbey Walsh (admitted *pro hac vice*)
Peter J. Amend (admitted *pro hac vice*)
919 Third Avenue

25

New York, NY 10022
Tel:    212-756-2000
Fax:    212-593-5955

E-mail:         douglas.koff@srz.com
                taleah.jennings@srz.com
                abbey.walsh@srz.com
                peter.amend@srz.com

***Attorneys for Cantor-Katz Collateral Monitor
LLC, as Collateral Monitor for the GDB Debt
Recovery Authority***