UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**DECLARATION OF JAY HERRIMAN IN RESPECT
OF CONFIRMATION OF SEVENTH AMENDED TITLE III JOINT PLAN
OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, *ET AL.*** 

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

I, Jay Herriman, hereby declare and state as follows:

1. I am a Managing Director of Alvarez & Marsal North America, LLC ("A&M"). The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth and ERS, the "Debtors"), retained A&M to assist with, *inter alia*, the claims reconciliation process for the Debtors' cases filed pursuant to the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA").

2. I submit this declaration (the "Declaration") in respect of the *Seventh Amended Title III Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Case No. 17 BK 3283, ECF No. 17627] (together with all exhibits, and as amended, modified, and supplemented, the "Plan"). My statements set forth in this Declaration are based on my personal knowledge except where I reference specific documents or communications as the basis of my statements. In those instances where I reference a specific document or communication, I am not offering the documents to prove the truth of the content in those documents, or, I am informed, the document is otherwise admissible because, for instance, it is a self-authenticating public record or can be otherwise authenticated and shown to be admissible. Where my Declaration provides opinion testimony, in addition to the above, the opinions set forth herein are based on (i) my understanding of information shared with me by other members of the A&M team working directly with me or under my supervision and direction; (ii) information provided by the Oversight Board and its advisors, and other interested parties and their respective advisors concerning the restructuring, and/or (iii) my experience in the industry as described below.

2

3. I joined A&M in 2009 and have over twelve years of restructuring experience advising on dozens of chapter 11 proceedings regarding a range of issues, including: pre-bankruptcy preparation and case administration, mortgage lien analyses, schedules and statements preparation, claims reconciliation and objections, complex claims waterfall estimates, solicitation for plans of reorganization, management reporting, emergence processes, plan disbursements, post-confirmation trust activities and preference and fraudulent conveyance calculations. These engagements span multiple industries including energy, aviation, automotive, manufacturing and technology. Personally, I have participated in the claims reconciliation process for over 25 company side engagements. Prior to joining A&M, I worked in the manufacturing industry for 20 years in various capacities including finance, information technology, and purchasing. In my last role, I served as Vice-President of Business Systems and Purchasing at MPI International, Inc. I received my Bachelor's degree in Computer Information Systems from Baker University.

4. In my capacity as a Managing Director at A&M, I am one of the persons responsible for overseeing the claims reconciliation and objection process in the Debtors' Title III cases. The Debtors' ongoing claims reconciliation process involves the collective effort of a team of A&M employees, as well as Proskauer Rose LLP and O'Neill & Borges LLC, counsel for the Oversight Board. I manage and lead a team that is responsible for, among other things, (i) reviewing, analyzing, and categorizing each of the proofs of claim filed against the Debtors, (ii) assisting the Oversight Board's legal counsel in identifying claims suitable for objection and preparing objections to claims, (iii) assisting the Oversight Board's legal counsel in identifying claims suitable for resolution utilizing the ACR Procedures and the ADR Procedures (each as defined below), (iv) providing ongoing claim estimates, including estimates of the anticipated total amount of allowed general unsecured claims, including, without limitation, periodic reports to the Official

Committee of Unsecured Creditors, and (v) tracking and auditing all claims to ensure final resolution of each.

5. In this role, I regularly communicate with the Oversight Board's counsel, as well as in-house counsel at the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the fiscal agent for the Debtors, and staff at Prime Clerk, LLC ("Prime Clerk"), the Debtors' claims and noticing agent. I and my team are also in regular contact with personnel at various Commonwealth agencies, including the Puerto Rico Department of Justice and the Puerto Rico Department of Treasury. I am familiar with all aspects of the Debtors' claims reconciliation process, including the Court's orders setting deadlines for the filing of proofs of claim,[2] the Court's orders authorizing the Debtors to file objections on an omnibus basis,[3] the Court's order authorizing the Debtors to resolve claims utilizing alternative dispute resolution procedures,[4] and the Court's order authorizing the Debtors to resolve claims utilizing their existing administrative

---

[2] *See* the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Commonwealth and ERS Initial Bar Date Order"), the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Commonwealth and ERS Initial Bar Date Order, the "Commonwealth and ERS Bar Date Orders"), the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 55 in 19-BK-5523-LTS] (the "PBA Initial Bar Date Order"), and the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 13403] (together with the PBA Initial Bar Date Order, the "PBA Bar Date Orders," and together with the Commonwealth and ERS Bar Date Orders, the "Bar Date Orders").

[3] *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures"); *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

[4] *See Order* (*A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12576] (the "ADR Order") and the accompanying *Alternative Dispute Resolution Procedures* [ECF No. 12576-1] (the "ADR Procedures").

processes.[5] I have participated in the preparation and filing of all omnibus objections filed by the Debtors, including, without limitation, submitting declarations in support thereof, the implementation of the ADR Procedures and the ACR Procedures, and the development of estimates of anticipated allowed general unsecured claims against the Debtors.

### The Bar Date Orders and the Filing of Proofs of Claim

6. Pursuant to the Bar Date Orders, the deadline for filing proofs of claim against the Commonwealth and ERS was June 29, 2018 at 4:00 pm (Atlantic Time) (the "Commonwealth and ERS Bar Date"), and the deadline for filing proofs of claim against PBA was July 29, 2020 at 4:00 pm (Atlantic Time) (the "PBA Bar Date," and together with the Commonwealth and ERS Bar Date, the "Bar Dates").

7. In total, approximately 180,483 proofs of claim have been filed against the Commonwealth, ERS, PBA, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Puerto Rico Electric Power Authority ("PREPA"[6]) and logged by Prime Clerk. Such proofs of claim total approximately $43.6 trillion in asserted claims against the Commonwealth, ERS, PBA, COFINA, HTA, and PREPA, in addition to unliquidated amounts asserted. Of those amounts, approximately 117,954 have been filed in relation to, or reclassified to be asserted against, the Commonwealth. Approximately 52,526 proofs of claim have been filed in relation to, or reclassified to be asserted against, ERS.

---

[5] *Order (A) Authorizing Administrative Reconciliation Of Claims, (B) Approving Additional Form Of Notice, and (C) Granting Related Relief* [ECF No. 12274] (the "ACR Order") and the accompanying Administrative Claims Reconciliation Procedures [ECF No. 12274-1] (the "ACR Procedures").

[6] A&M has a conflict of interest that precludes it from serving as claims reconciliation agent for PREPA. Accordingly, I am not involved in and not familiar with the reconciliation of PREPA claims. To the extent this declaration discusses reconciliation of PREPA claims, it is based solely on publicly-available filings.

Approximately 404 proofs of claim have been filed in relation to, or reclassified to be asserted against, PBA.

8. Based on our review and analysis of the proofs of claim filed against the Commonwealth, ERS, and PBA, many of the proofs of claim fell into categories that were exempted from filing pursuant to the Bar Date Order and, as a result of the Court's orders, were subsequently transferred into the ACR process, or warranted objections for the following reasons: (1) subsequent amendment, (2) not setting forth a claim for which the Debtors were liable, (3) duplicative of other filed proofs of claim, or (4) failing to provide information necessary for the Debtors to determine whether the claim is valid. In addition, numerous of these claims were filed after the applicable Bar Date.

**Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures**

9. The Initial Omnibus Procedures Order and the Amended Omnibus Procedures Order permitted the Debtors to streamline the process for creating exhibits to omnibus objections, expanded the number of proofs of claim that may be included on a single omnibus objection from 100 to 1000, and authorized the Debtors to file substantive omnibus objections to proofs of claim. For example, the Debtors are authorized to file omnibus objections to proofs of claim that are inconsistent with the Debtors' books and records, that seek recovery of amounts for which the Debtors are not liable, that are incorrectly or improperly classified, or that are filed against entities that are not Title III debtors.

10. To date, the Court has held over 16 hearings and entered orders on over 305 omnibus objections filed by the Commonwealth, COFINA, HTA, PBA, and ERS. Based upon rulings and orders of the Court to date, approximately 101,019 proofs of claim asserting $43.59 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, PBA, and ERS have been

disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders. In addition, 11 omnibus objections were orally granted at a hearing, but are awaiting entry of a final order, and 42 omnibus objections have been filed, but are still awaiting a hearing date.

### ADR Procedures

11. The ADR Procedures provide a multistep method for the resolution of general unsecured claims. The first step in the ADR Procedures is an Offer-Exchange Procedure (as defined in the ADR Order). Therein, the Debtors and the claimant engage in an exchange of settlement offers, together with supporting documentation necessary to substantiate their respective settlement offers. In advance of submitting an offer, the Debtors may make an Information Request (as defined in the ADR Order) for additional information from the creditor. While not directly involved in the settlements, I understand that to date, approximately thirteen (13) proofs of claim have been settled in the Offer-Exchange Procedure.

12. If the parties fail to agree on the validity and amount of the claim during the Offer-Exchange Procedure, the proof of claim moves on to the Evaluative Mediation Procedures (as defined in the ADR Order). There, the proof of claim is evaluated by a mediator appointed by the Title III Court. Based upon the information exchanged by the parties during the Offer-Exchange Procedure, together with mediation statements submitted by the parties, if any, the mediator provides a neutral evaluation (the "<u>Evaluation</u>") of the monetary value of the claim. After receipt of the Evaluation, the Debtors and the claimant must determine within twenty-one (21) days whether to accept or reject the Evaluation. If one or both parties rejects the Evaluation, the parties have an additional fourteen (14) days to negotiate a consensual resolution of the proof of claim. It

7

is my understanding that, to date, approximately five (5) proofs of claim have been settled via the Evaluative Mediation Procedures.

13. If the claim is not resolved during the Evaluative Mediation Procedures, the claim may be resolved using one of three processes: (1) if both the Debtors and the claimant consent, the proof of claim may be resolved through binding arbitration, (2) if both the Debtors and the claimant consent, the proof of claim may be resolved via litigation in the Commonwealth courts, or (3) if both the Debtors and the claimant have not consented to either binding arbitration or resolution of the proof of claim via litigation in the Commonwealth court, the proof of claim will be resolved before the Title III court.

14. To date, the Debtors have transferred 370 proofs of claim into the ADR Procedures. Currently, 342 proofs of claim are currently in the Offer-Exchange Procedures and have received either settlement offers or information requests. Additionally, ten (10) proofs of claim were recently transferred into the ADR Procedures, and the Debtors are either preparing offers or information requests. The Debtors anticipate making additional transfers of disputed claims into the ADR Procedures in the coming months.

## ACR Procedures

15. The ACR Procedures authorize the Debtors to resolve certain ordinary course Pension/Retiree Claims, Tax Refund Claims, Public Employee Claims, and Grievance Claims (each as defined in the ACR Order) utilizing the Debtors' existing administrative reconciliation processes. It is my understanding that the ACR Procedures were developed, in part, to reconcile the large number of ordinary-course claims that, pursuant to the terms of the Bar Date Orders, did not need to be filed. Claims submitted to the ACR Procedures that are determined to be valid will be paid in full in the ordinary course, and will therefore be treated outside the Plan. For that reason,

the ACR Order provides that any proof of claim transferred into the ACR Procedures shall be designated as "Subject to ACR" on the Title III claims registry maintained by Prime Clerk.

16. The Debtors have transferred a total of 44,843 proofs of claim into the ACR Procedures, including 25,457 Pension/Retiree Claims, 760 Tax Refund Claims, 18,454 Public Employee Claims, and 172 Grievance Claims (each as defined in the ACR Order). Of those, 23,699 proofs of claim have been resolved, and 4,648 proofs of claim are currently being evaluated by the Debtors pursuant to their administrative processes. In addition, with respect to 19,358 proofs of claim, the Debtors have requested from the claimants information necessary to complete their administrative files and are awaiting the claimants' responses.

## Anticipated Allowed General Unsecured Claims against the Debtors

17. Based upon the Creditor Lists, as defined below, the omnibus objections filed to date, the resolution of numerous proofs of claim using the ADR Procedures and the ACR Procedures, and the Debtors' ongoing review and analysis of the proofs of claim filed, I estimate the anticipated allowed amount of general unsecured claims against each of the Debtors will not exceed: $2,750,000,000 against the Commonwealth; $411,000,000 against PBA; and $338,000 against ERS.

18. To develop that estimate, I started by identifying the total population of claims against the Debtors. First, I identified the entire population of proofs of claim filed against each of the Debtors: 117,954 proofs of claim, asserting $33,246,304,741,177 amount, against the Commonwealth, 52,526 proofs of claim, asserting $10,163,812,997,575 amount, against ERS, and 404 proofs of claim, asserting $6,789,889,659 amount, against PBA. Second, I reviewed the *Notice of Filing of Creditor List for the Commonwealth of Puerto Rico* [ECF No. 1215] (the "Commonwealth Creditor List"), the *Notice of Filing of Creditor List for the Employees*

9

*Retirement System of the Government of the Commonwealth of Puerto Rico* [ECF No. 1316] (the "ERS Creditor List"), the *Notice of Filing of Amendments to Creditor List for the Commonwealth of Puerto Rico* [ECF No. 2582] (the "Commonwealth Creditor List Amendments"), and the *Notice of Filing of Creditor List for the Puerto Rico Public Buildings Authority* [ECF No. 10708] (the "PBA Creditor List," and together with the Commonwealth Creditor List, the ERS Creditor List, and the Commonwealth Creditor List Amendments, the "Creditor Lists"). Pursuant to the Bar Date Orders, creditors whose claim is listed in one of the Creditor Lists were not required to file a proof of claim *unless* the claim is listed on the Creditor Lists as "disputed," "contingent," or "unliquidated." I reviewed the Commonwealth Creditor List, the ERS Creditor List, and the Commonwealth Creditor List Amendments, and determined that, with the exception of certain bond claims, each claim was listed as "disputed," "contingent," or "unliquidated." I therefore determined that, since every creditor whose claims were listed on the Commonwealth Creditor List, the ERS Creditor List, and the Commonwealth Creditor List Amendments was required to file a proof of claim, I did not need to include the claims identified on those creditor lists in my estimates. In addition, I reviewed the PBA Creditor List and identified approximately 7 claims that were not listed as "disputed," "contingent," or "unliquidated." I then compared those claims to the proofs of claim filed against PBA to determine whether any proofs of claim were duplicative of the claims identified in the PBA Creditor List. I then added any claims that were (*i*) identified on the PBA Creditor List, (*ii*) not marked as "disputed," "contingent," or "unliquidated," and (*iii*) not duplicative of a proof of claim filed against PBA into my initial total population of claims. Next, I made a series of adjustments.

19. I removed from my estimate any proofs of claim that had been withdrawn by the claimant, marked as docketed in error by Prime Clerk, or expunged by entry of an order granting

10

an omnibus objection. I also removed from my estimates any proofs of claim that were filed on expungement objections, but for which the Court has not yet held a hearing on the expungement objection. In particular, due to the ongoing COVID-19 pandemic, the Court has held telephonic omnibus hearings since April 2020. It is my understanding that *pro se* individuals are unable to participate in such telephonic hearings because telephonic lines are only available to attorneys who have entered an appearance in the Title III cases. In order to have such *pro se* responses heard, the Court must schedule special *pro se* hearings at which *pro se* individuals may appear and speak from the courthouse or another centralized location using a telephonic line. For approximately 42 omnibus objections, *pro se* claimants filed responses, but the Court has not yet had an opportunity to hold a hearing as to those responses. I removed from my estimates any claims that were filed on expungement objections, but for which the Court has not yet had an opportunity to schedule a *pro se* hearing to consider pending *pro se* responses. I also removed from my estimates any proofs of claim identified for inclusion on an upcoming omnibus objection.

20. In addition, certain proofs of claim were filed against either the Commonwealth, ERS, or PBA, but, upon review thereof, were properly asserted against another Debtor. To the extent any proofs of claim were incorrectly asserted against the Commonwealth, ERS, PBA, PREPA, or HTA, I transferred the asserted liability to the correct debtor where appropriate. In addition, certain proofs of claim should have been asserted against the Commonwealth, ERS or PBA, but were incorrectly asserted against one of the other debtors. I transferred the asserted liability to either the Commonwealth, ERS, or PBA, as appropriate, and those proofs of claim were added to my estimates.

21. It is my understanding that, to date, two claims filed against the Commonwealth have been fully resolved in the ADR Procedures. Accordingly, I incorporated the agreed-upon allowed amount for those claims into my estimate.

22. I next removed all amounts associated with proofs of claim transferred to ACR, or flagged for future transfer, as they are not treated pursuant to the Plan.

23. Based upon my review of the Plan, I understand that certain unsecured claims are classified separately from general unsecured claims for the Commonwealth (Class 58), for ERS, (Class 66), and for PBA (Class 13). These include the following: (1) claims filed by certain health centers, which are classified in Class 56; (2) claims filed by certain dairy producers, which are classified in Class 53; (3) claims associated with the *Gracia-Gracia* litigation regarding compulsory payments of insurance premiums, which are classified in Class 67; (4) bond claims, which are classified in Classes 1-50 and 65; (5) claims asserting tax credits or credits associated with the Green Energy Fund created by the Puerto Rico Green Energy Incentives Act of 2010, which are classified in Classes 57 and 55, respectively; (6) claims filed by the federal government, which are classified in Class 69; and (7) claims asserting indebtedness that is only payable from appropriations, which are classified in Class 63. Because none of these claims will be classified as a general unsecured claim, I removed any claim fitting within these classes from my estimates. In addition, because I understand from my review of the Plan that pension claims will be treated pursuant to Class 51, I removed from my estimates claims filed by the Retiree Committee, Proofs of Claim Nos. 21533 and 21534, which purport to assert the Commonwealth's aggregate pension liability against the Commonwealth and ERS, respectively.[7] I also understand from my review of

---

[7] A number of individual claimants also filed claims asserting their right to receive pension benefits. As explained in paragraph 21, those claims were transferred to ACR, or flagged for future ACR transfers, and were therefore removed from my estimates.

12

the Plan that Claim No. 47658, which asserts liabilities arising from a loan between the Commonwealth's General Services Administration and Scotiabank de Puerto Rico for the lease of a helicopter, is classified in Class 44, and accordingly, I removed this claim from my estimate. Further, I understand from my review of the Plan and the Disclosure Statement[8] that claims filed by AFSCME will be treated pursuant to the plan support agreement between the Oversight Board and AFSCME, and, accordingly, I removed them from my estimates. I also removed from my estimates any claims filed by the Puerto Rico government or by Puerto Rico municipalities, because I had been told to assume that those claims will also be treated outside the Plan. In addition, I removed Proof of Claim No. 161091, which asserted a litigation related to alleged underpayment of salaries to members of the Puerto Rico Police, because I was informed that the liabilities asserted in the litigation had been partially satisfied and, accordingly, the remainder of the claim was to be paid outside of the Plan.

24. I also reviewed proofs of claim asserting entitlement to administrative or priority status pursuant to 11 U.S.C. § 503(b)(9), or another type of priority, to determine whether, based on the information provided by the claimant, they were entitled to the asserted priority. For the proofs of claim where I determined the claimant did not provide information necessary to support their assertion of priority, I included those claims in my general unsecured claims estimates. Other proofs of claim that assert administrative priority, if such claims are determined to be valid and entitled to administrative priority status, will be paid in full and will not be treated under the Plan. I removed from my estimates proofs of claim that clearly asserted claims entitled to administrative priority, such as proofs of claim asserting only post-petition amounts. Further, in order to ensure

---

[8] "Disclosure Statement" refers to the *Seventh Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.*, ECF No. 17628, dated July 30, 2021.

13

that my estimate reflected the possibility that proofs of claim asserting secured status may ultimately be determined to be unsecured, I added any claims asserting secured status into my estimates.

25. I identified numerous proofs of claim that were filled out in a manner that caused Prime Clerk to incorrectly docket them on the claims register. Box 8 of the proof of claim form requests claimants provide the total amount of the asserted claim. Other portions of the claim form allow claimants to indicate whether they believe all or a portion of their claims are entitled to secured status or priority.

26. For example, Box 7 of the proof of claim form allows claimants to indicate whether they supply goods and/or services to the government, and if so, whether any amounts were due to claimant for the period between the Debtors' petition date and June 30, 2017; Box 10 allows claimants to indicate whether they believe all or a part of their claim is secured, and if so, the amount of the claim that is secured and the amount that is unsecured; and Box 13 allows claimants to indicate whether all or part of the claim is entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9), and if so, the amount of the claim entitled to administrative priority treatment. In some instances, the claimant entered the total amount they believe is owed in Box 8, but also entered the total amount owed in Boxes 7, 10, and/or 13. When Prime Clerk logged those claims on the claims register, it interpreted each amount entered in Boxes 7, 8, 10, and/or 13 as a separate assertion of liability. As a result, the claims register overstates the actual liabilities asserted in the proof of claim, as demonstrated by the total amount recorded by the applicable claimant in Box 8. For purposes of my estimate, I estimated each of these claims at the amount identified in Box 8.

27. In addition, I reviewed accounts payable proofs of claim—claims asserted by trade creditors who allegedly provided goods or services to the Debtors—to determine whether any of

those claims had been paid, in whole or in part. Based on information provided by AAFAF or by the Commonwealth's agencies, I understand that a number of claims have been partially or fully paid. Accordingly, I reduced my estimates by the amount that each such claim had been paid.

28. I then reviewed litigation proofs of claim to determine whether any claims were duplicative or otherwise overstated. I identified numerous litigation proofs of claim that were duplicative of other proofs of claim, for one or more reasons. For example, I identified a number of instances in which each plaintiff in a multi-plaintiff litigation filed a proof of claim asserting the total amount for the cause of action, rather than each plaintiff's potential share of the recoveries associated with that litigation. For these instances, I adjusted the estimated proof of claim amount to reflect the estimated total recovery for the cause of action. In other instances, an attorney filed a master proof of claim on behalf of all plaintiffs in a litigation, but I also identified numerous proofs of claim filed by individual plaintiffs in the same litigation. Because those individual plaintiffs' proofs of claim are duplicative of the master proof of claim filed on behalf of all plaintiffs, I removed from my estimate the claimed amounts of the individual plaintiffs' claims.

29. Counsel for the Oversight Board also conducted their own evaluation of litigation claims. Additionally, based on counsel's assessment of the likely outcomes of certain litigations, I was told to assume that certain litigation claims should be estimated at lower amounts. I also evaluated Proof of Claim No. 29485 (the "PET Claim"), which was filed by the Public Entity Trust for $2,231,033,108. Based upon my review of the *Corrected Informative Motion Regarding Stipulation Resolving the Objection of the Official Committee of Unsecured Creditors of All Title III Debtors (Other than COFINA) to the Approval Application* [Case No. 3:18-cv-01561-LTS-JGD, ECF No. 185], I understand that the PET Claim "may not be allowed in an amount greater than $578 million." *Id*. at Exhibit A, ¶ 13. Further, based on counsel's assessment of the assets

held by the Public Entity Trust, I was told to assume that the PET Claim should be estimated at $100 million.

30. I also understand that the Plan includes a convenience class for general unsecured claims that are equal to less than $20,000, which are classified in Class 68. Accordingly, I removed from my estimate any general unsecured claims that asserted amounts of $20,000 or less.

31. Lastly, a number of claims against the Debtors remain disputed and as yet unreconciled. Based on my experience in prior cases, and my three years' experience reviewing and analyzing the claims filed against the Title III Debtors, it is my opinion that many of these claims will ultimately be allowed in an amount substantially lower than the amount asserted. Accordingly, I made a reasonable downward adjustment to account for that likelihood.

32. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 25, 2021
Marco Island, FL

_____
Jay Herriman
Managing Director,
Alvarez & Marsal North America,
LLC