## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>     as representative of<br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>                                        Debtors.[1] | PROMESA<br>Title III<br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| AMERINATIONAL COMMUNITY SERVICES, LLC, (AS SERVICER FOR THE GDB DEBT RECOVERY AUTHORITY) AND CANTOR-KATZ COLLATERAL MONITOR LLC,<br><br>                                        Movants,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>     as representative of<br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>                                        Respondents. | Re: ECF No. 18667 in<br>Case No. 17-bk-3283-LTS |

## MEMORANDUM OF LAW IN OPPOSITION TO DRA PARTIES' URGENT MOTION TO COMPEL COMPLIANCE WITH ORDER GRANTING URGENT JOINT MOTION REGARDING RULE 30(B)(6) DEPOSITION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................... 5

    A.    The Plan and Confirmation Discovery Procedures................................... 5

    B.    The Oversight Board Repeatedly States its Position on the Status of Act 30-31 Revenues and that No Further Discovery is Available................................. 5

    C.    Movants Serve the Brickley Report Based Entirely on Legal Assumptions and Publicly Available Documents........................................................... 7

    D.    The Deposition Notice of the Oversight Board ....................................... 8

    E.    Movants Refuse to Subpoena EY, and Reject the Oversight Board's Designated Witness on Topics 2-6. ........................................................ 9

    F.    Movants Agree to Subpoena EY for Testimony on the Subject-Matter of Topics 2-6. ........................................................................................ 10

    G.    Movants Twice Correct the Subpoena to EY to Make Clear the EY Representative is Not the Oversight Board's Designated Witness. ...................... 11

    H.    Movants Depose EY through EY's Designated Witness, Mr. Chepenik. ............ 13

    I.    Movants Sidestep the Amended Confirmation Procedures Order to File the Motion with Less Than 1 Hour of Notice. .............................................. 14

ARGUMENT ..................................................................................................... 15

I.    THE OVERSIGHT BOARD COMPLIED WITH THE PARTIES' AGREEMENTS, WHICH MOVANTS IMPROPERLY SEEK TO RECAST. .............. 15

    A.    Neither EY Nor Mr. Chepenik Were the Oversight Board's Designated Witness Pursuant to Rule 30(b)(6)........................................................ 15

    B.    The Oversight Board Fulfilled Its Agreement to Prepare the EY Representative to Testify as to EY's Knowledge Relating to Work EY Performed for the Oversight Board........................................................ 16

    C.    Mr. Chepenik Was Fully Prepared to Testify as to Topics 2-6, to the Extent They Sought Any Factual Testimony....................................... 19

II.    THE OVERSIGHT BOARD APPROPRIATELY CONFERRED WITH THE EY REPRESENTATIVE DURING ROUTINE BREAKS IN THE DEPOSITION.............. 21

III.    MOVANTS FAILED TO COMPLY WITH THE DISCOVERY DISPUTE PROCEDURES SET FORTH IN THE AMENDED CONFIRMATION PROCEDURES ORDER. ........................................................................... 25

CONCLUSION.................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*,
201 F.R.D. 33 (D. Mass. 2001)...................................................................................17, 18

*Cannon v. Time Warner NY Cable LLC*,
No. 13-02521, 2015 WL 2194620 (D. Colo. May 7, 2015) ......................................................23

*Carreras v. Sajo*,
No. 06-1037, 2006 U.S. Dist. LEXIS 111476 (D.P.R. Sept. 11, 2006)..................................23

*Few v. Yellowpages.com, LLC*,
No. 13-4107, 2014 WL 3507366 (S.D.N.Y. July 14, 2014)...................................................23

*Gibbs v. City of New York*,
No. 06-5112, 2008 U.S. Dist. LEXIS 22588 (E.D.N.Y. Mar. 21, 2008)................................24

*Hall v. Clifton Precision*,
150 F.R.D. 525 (E.D. Pa. 1993)...........................................................................................21, 22

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
No. MDL 721, 1989 WL 168401 (D.P.R. Dec. 2, 1988)....................................................23, 24

*In re Stratosphere Corp. Sec. Litig.*,
182 F.R.D. 614 (D. Nev. 1998).................................................................................................22

*McKinley Infuser, Inc. v. Zdeb*,
200 F.R.D. 648 (D. Colo. 2001) ................................................................................................23

*Murray v. Nationwide Better Health*,
No. 10-3262, 2012 U.S. Dist. LEXIS 120592 (C.D. Ill. Aug. 24, 2012) ...............................23

*Norwood v. United Parcel Serv., Inc.*,
No. 19-cv-2496, 2020 WL 2615763 (D. Kan. May 22, 2020) ...............................................23

*Odone v. Croda Int'l, PLC*,
170 F.R.D. 66 (D.D.C. 1997)....................................................................................................22

*Pia v. Supernova Media, Inc.*,
No. 2:09-840, 2011 WL 6069271 (D. Utah Dec. 6, 2011) ......................................................23

*Santiago Garcia v. Costco Wholesale Corp.*,
2020 WL 3669642 (D.P.R. July 6, 2020) .................................................................................18

*United States v. Fresenius Med. Care Holdings, Inc.*,
    No. 09-cv-10179-GAO, 2019 WL 1254554 (D. Mass. Mar. 19, 2019) ................................23

STATUTES

48 U.S.C. §§ 2101–2241 ................................................................................................1

PROMESA § 405(m) ........................................................................................................6

CONSTITUTIONAL PROVISIONS

P.R. Const. art. VI, §§ 7–9 ............................................................................................8

P.R. Const. art. VI, § 8 ...............................................................................................1, 6

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Public Buildings Authority ("PBA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS," and together with the Commonwealth and PBA, the "Debtors") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] submits this memorandum of law in opposition to the *DRA Parties' Urgent Motion to Compel Compliance with Order Granting Urgent Joint Motion Regarding Rule 30(b)(6) Deposition of the Financial oversight and Management Board for Puerto Rico* [ECF No. 18667][3] (the "Motion" or "Mot.") filed by AmeriNational Community Services, LLC as servicer for the GDB Debt Recovery Authority, and Cantor-Katz Collateral Monitor LLC (collectively, "Movants").

### PRELIMINARY STATEMENT[4]

1.     On September 13, 2021, Movants served a notice of a Rule 30(b)(6) deposition to the Oversight Board seeking testimony on an objectionable set of topics about legal issues concerning Movants' contention the Commonwealth lacked the legal right to "clawback" (or retain) certain revenues in which Movants claim to have an interest under Article VI, § 8 of Puerto Rico's constitution.  Rather than refuse to provide a witness for every topic in the notice (as the Oversight Board rightly could have), and in an effort to avoid needless motion practice, the Oversight Board told Movants the best source of any factual information about the topics was not

---

[2]     PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[3]     All ECF references are to Case No. 17-bk-3283-LTS unless otherwise noted.

[4]     Capitalized terms not defined herein have the meaning ascribed to them in the Background section below.

the Oversight Board itself, but its advisor, Ernst & Young LLP ("EY").  This was so because, to

the extent the topics implicate any factual information, they concerned budgetary issues.

2.     Movants initially refused to subpoena EY for that testimony, and, when given the

opportunity, refused to depose the Oversight Board's executive director on their 30(b)(6) topics

too.  But, despite the ancient adage that "no good deed goes unpunished," the Oversight Board

engaged in further discussions with Movants in an attempt to avoid Movants bringing yet another

discovery dispute to this Court.  The Oversight Board thought these efforts were successful when,

after a week of negotiations and Movants' rejection of all three dates EY was available for

deposition during the discovery period, the parties filed a Joint Motion outlining their agreements.

3.     The terms of the Joint Motion, which the Court adopted, are clear:  Movants would

subpoena EY to depose EY concerning the same subject-matter as the topics noticed to the

Oversight Board—not as the Oversight Board's designated witness, but to elicit testimony on

behalf of EY; the Oversight Board would adopt in full and without qualification EY's testimony

on those noticed topics; and the Oversight Board would ensure the EY witness was prepared to

testify about EY's work for the Oversight Board.  Movants thereafter served a subpoena on EY

that eliminated all references to EY being the Oversight Board's designated witness.  The EY

Representative, Mr. Adam Chepenik, was deposed on October 20, 2021 and, as agreed, the

Oversight Board adopts his testimony on the noticed topics.

4.     Now, Movants seek to recast the record and the parties' agreements in their

entirety—and to mislead the Court—to manufacture a dispute after the close of discovery.

Movants falsely characterize Mr. Chepenik as the Oversight Board's designated witness because

they have no legal basis to fault the Oversight Board without that falsehood.  Movants even go so

far as to omit from their exhibits the EY Subpoena pursuant to which Mr. Chepenik testified;

instead, they only attached the Deposition Notice to the Oversight Board to suggest Mr. Chepenik

was the Oversight Board's designated witness.  From that false premise, Movants now contend the

Oversight Board should have prepared him as its own designated witness—contrary to the parties'

prior agreements and actions.  Worse yet, Movants incorrectly claim they have no idea what the

Oversight Board's "positions" relating to their clawback arguments are.  Movants plainly seek to

upend the Joint Motion and, with it, press for yet more late discovery to delay the confirmation

process.

5.      The Court should deny the Motion in its entirety for three reasons.

6.      *First*, Movants' contention Mr. Chepenik was actually the Oversight Board's Rule

30(b)(6) designated witness is baseless.  Movants make this argument even though the EY

Subpoena makes clear he was not, the Joint Motion specifically provided the opposite, and

Movants specifically revised the EY Subpoena to eliminate all erroneous references suggesting

EY was testifying on behalf of the Oversight Board.  Perhaps realizing this false contention would

fail, Movants also contend the Oversight Board's agreement to prepare the witness was a "back

door" designation of Mr. Chepenik as the Oversight Board's own witness, a completely

unsupported argument.  Indeed, Movants fail to identify a single substantive area relating to EY's

work for the Oversight Board where Mr. Chepenik was ill-prepared to testify, and ignore the many

substantive answers he provided during his deposition.

7.      Further, Movants act blind to the record in these proceedings.  Movants now assert

the Oversight Board's "failure to prepare Mr. Chepenik in any meaningful way for the deposition

has put the DRA Parties in the 'untenable position of having no idea' of the FOMB's positions"

(Mot. ¶ 32 (citation omitted)), but that assertion ignores the Oversight Board's public filings

establishing its positions with respect to Movants' clawback arguments and making clear the

Oversight Board has no additional discoverable information to provide in response to Movants' requests.  As set forth in the Joint Motion, the Oversight Board fulfilled its agreement to ensure an EY witness was ready to testify about EY's work for the Oversight Board; doing so did not render Mr. Chepenik the Oversight Board's designee.

8.      *Second*, Movants contend they have a sweeping and unmitigated right to the disclosure of all discussions between Mr. Chepenik and counsel during deposition breaks, even though those breaks were taken when no question was pending and counsel to the witness did not demand a break in questioning.  Movants are wrong.  The great weight of authority permits and protects discussions between counsel and witnesses during routine breaks, and no authority supports the sweeping rule Movants would seek to impose requiring disclosure of all discussions (even concerning privilege issues).

9.      *Third*, the Court should deny the Motion because Movants violated the Amended Confirmation Procedures Order in a bald attempt to disrupt the confirmation process.  Despite following the "Discovery Dispute" procedures outlined therein twice before, Movants in this instance failed to notify the Court of a discovery dispute in aid of scheduling a conference with the Court, and failed to submit a letter to the Court in accordance with its procedures.  Movants instead filed the Motion to avoid these procedures (which were put in place to provide a streamlined method to address discovery disputes) and cause additional disruption to the Plan confirmation process.  Movants should not be rewarded for such tactics, and the Court should deny the Motion on that independent basis.

10.     In all events, Movants have not provided any basis for the relief they seek.  There are no grounds for adverse inferences or to preclude the presentation of evidence because Mr. Chepenik indisputably was not the Oversight Board's designated witness.  Nor is there any basis

to give Movants yet more discovery out of time, because Movants have delayed this process to the hilt: after refusing to depose the Oversight Board's witness and initially refusing to subpoena EY, Movants rejected all three dates during the discovery period EY was available to testify (including a Sunday), insisted on a late deposition date, and then spent nearly 5.5 hours on the record with Mr. Chepenik mainly asking questions designed to bring this Motion rather than asking about substance.

11.     The Motion should be denied in its entirety.

## BACKGROUND

A.     **The Plan and Confirmation Discovery Procedures**

12.     On July 30, 2021, the Oversight Board filed the proposed the *Seventh Amended Title III Joint Plan of Adjustment* to adjust the debts of the Commonwealth, ERS, and PBA. [ECF No. 17627] (the "Plan").

13.     On August 2, 2021, the Court entered the *Order Establishing Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. 17640].[5]

B.     **The Oversight Board Repeatedly States its Position on the Status of Act 30-31 Revenues and that No Further Discovery is Available.**

14.     In multiple litigated matters, Movants have asserted their claims are secured by so-called "Act 30-31 revenues," and that the Commonwealth should have transferred such revenues to HTA rather than retain them. *See, e.g.*, ECF No. 16276. In response, the Oversight Board has repeatedly stated its position on those arguments—namely, that Movants misunderstand the law,

---

[5]     The Court amended this order on October 5, 2021. *See Amended Order Establishing Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. 18394] (the "Amended Confirmation Procedures Order").

and that the only discoverable information relating to those arguments is publicly available.  The following specific examples make this clear.

15.    On September 9, 2021, the Oversight Board stated its position that Movants have no standing to assert rights for HTA, certain moratorium and clawback executive orders directed the retention of Act 30-31 revenues, and the Oversight Board provided for the Commonwealth's retention of those revenues in its certified fiscal plans and budgets.  [ECF No. 18065 ¶ 3]. Additionally, the Oversight Board stated Act 30-31 revenues expressly are subject to retention under Article VI, § 8 of the Puerto Rico Constitution and are "available resources" of the Commonwealth.  *Id.* ¶ 15.  The Oversight Board also explained that while deciding whether the "clawback" rights under Article VI, § 8 of Puerto Rico's constitution had been triggered was irrelevant in view of the Commonwealth's moratorium and clawback orders and the Oversight Board's certified fiscal plans and budgets, it was patent such rights had been triggered in view of Congress's finding there is a "fiscal emergency" in Puerto Rico rendering the Commonwealth "unable to provide its citizens with effective services," and necessitating a fair and orderly "restructur[ing]" of the Commonwealth's debts.  *Id.* ¶ 40 n.20 (citing PROMESA § 405(m)).

16.    On September 10, 2021, the Oversight Board again stated its position on clawback issues in response to Movants' discovery requests, and specifically noted it had no discoverable information in response to Movant's requests.  [Ex. 1, 9/10/2021 M. Dale Letter to T. Mott] (the "September 10 Letter").[6]  Specifically, Movants had requested all documents concerning (i) "whether or not the Commonwealth had a balanced budget for each fiscal year from FY2016 to

---

[6]    Unless otherwise noted, numbered exhibits are attached to the *Declaration of Margaret A. Dale in Connection with the DRA Parties' Urgent Motion to Compel Compliance with Order Granting Joint Urgent Motion Regarding Rule 30(b)(6) Deposition of the Financial Oversight and Management Board for Puerto Rico*, filed simultaneously herewith.

the present, including but not limited to any analyses, discussion, or examination of this issue"
(Request No. 7); (ii) "any analyses, discussion, or examination for each fiscal year from FY2016
to the present, of whether or not the available revenues of the Commonwealth were insufficient to
meet the appropriations made for that fiscal year" (Request No. 8); and (iii) "any analyses,
discussion, or examination, for each fiscal year from FY2016 to the present, evaluating the
amounts to retain in order for there to be sufficient available revenue to meet the appropriations
made for that fiscal year" (Request No. 9). *Id.* at 1-2. In other words, Movants' document requests
mirrored the subjects of their 30(b)(6) topics.

17. In the September 10 Letter, the Oversight Board also explained how Movants
misunderstood the budgeting process. Specifically, the Oversight Board made clear it "does not
perform specific analyses regarding 'whether or not the Commonwealth had a balanced budget,'
'whether or not the available revenues of the Commonwealth were insufficient to meet the
appropriations for that fiscal year,' or 'the amount necessary to be retained for there to be sufficient
revenues to meet the appropriations[.]" *Id.* at 2. Further, the Oversight noted the Commonwealth
has made no debt service payments since May 2017, and the Plan did not propose paying GO debt
in full. *Id.* The Oversight Board further explained that whatever internal documents that *might*
exist "would relate to the Oversight Board's policy deliberations regarding the development and
certification of the Commonwealth's certified budget" and would therefore be protected from
disclosure by the deliberative process privilege. *Id.*

**C.      Movants Serve the Brickley Report Based Entirely on Legal Assumptions and
          Publicly Available Documents.**

18. On September 13, 2021, Movants served the *Preliminary Expert Report of Douglas
J. Brickley*, which purported to "(i) identify and determine whether the Commonwealth properly
activated and retained revenues in compliance with the constitutional 'clawback' for select time

periods, and (ii) identify and determine whether the "clawed back" revenues were transferred and used pursuant to the applicable waterfall and/or approved uses under the constitutional 'clawback' provisions for select time periods."  [Ex. 2, ECF No. 18163-1, *Preliminary Expert Report of Douglas J. Brickley,* at 2] (the "Brickley Report").

19.    The Brickley Report bases its conclusions entirely on legal assumptions from counsel and publicly available documents.  *See id.* at 5 & Ex. A.  The Brickley Report acknowledges the Oversight Board's position it has no discoverable information pertaining to clawback issues, as stated in the September 10 Letter.  *Id.* at 5 & n.4 (quoting from and citing the September 10 Letter).  At deposition, Mr. Brickley testified his specific conclusion there has been a "surplus" in the Commonwealth since 2017 is based on the Commonwealth's audited financial statements for 2018-2021, [Ex. 3, Brickley Depo. Tr. 68:24-69:7], and upon a graph copied directly from the certified fiscal plan for the Commonwealth, *id.* at 69:11-21.

### D.    The Deposition Notice of the Oversight Board

20.    On September 13, 2021, Movants noticed the Rule 30(b)(6) deposition of the Oversight Board.  ECF No. 18667-1 (the "Deposition Notice of the Oversight Board").  Movants sought testimony on six topics, each of which relates to the clawback issues just discussed above:

- Topic 1:  Whether or not a valid Clawback was implemented by the Commonwealth under article VI, sections 7 through 9 of the Puerto Rico Constitution for each year from FY2016 to the present, including any efforts undertaken by FOMB to determine the validity of any Clawback.

- Topic 2:  Whether or not the Commonwealth had a balanced budget for each fiscal year from FY2016 to the present, including any efforts undertaken by FOMB to determine whether or not the Commonwealth had a balanced budget for each of those fiscal years.

- Topic 3:  Whether or not the available revenues of the Commonwealth were insufficient to meet the appropriations for each fiscal year from FY2016 to the present, including any efforts undertaken by FOMB to determine whether available revenues of the Commonwealth were insufficient.

- Topic 4:  Whether or not any revenues of the Commonwealth were diverted, retained, reallocated, or redirected in order for there to be sufficient available revenue to meet the appropriations made for each fiscal year from FY2016 to the present, including any efforts undertaken by FOMB to evaluate the amounts of revenues to divert, retain, reallocate, or redirect.

- Topic 5:  The amounts of Clawback funds disbursed for uses other than the payment of General Obligation Debt for each fiscal year from FY2016 to the present, including any efforts undertaken by FOMB to evaluate the amounts of Clawback funds to disburse for uses other than the payment of General Obligation Debt.

- Topic 6:  Whether or not the Acts 30 & 31 Incremental Revenues or any other revenues of or due to HTA were diverted, retained, reallocated, or redirected for each fiscal year from FY2016 to the present, including any efforts undertaken by FOMB to evaluate whether to divert, retain, reallocate, or redirect the Acts 30 &31 Incremental Revenues or other revenues of or due to HTA.

21.    On October 3, 2021, the Oversight Board objected to the Deposition Notice of the Oversight Board.  [Ex. 4].  Among other things, the Oversight Board objected to Topics 1, 5, and 6 in their entirety.  *Id.*  The Oversight Board also told Movants the witness best situated to address the subject-matter of Topics 2-6 would be someone from EY, not the Oversight Board, ECF No. 18667-2 at 7, and asked Movants to subpoena EY for that testimony.  *Id.*

### E.    Movants Refuse to Subpoena EY, and Reject the Oversight Board's Designated Witness on Topics 2-6.

22.    On October 5, 2021, Movants rejected the Oversight Board's request to subpoena EY for testimony concerning Topics 2-6.  *Id.* at 5-6.

23.    Also on October 5, 2021, only a few hours after Movants refused to subpoena EY, the Oversight Board designated its Executive Director, Natalie Jaresko, to testify concerning Topics 2-6 at her individual deposition scheduled to occur the next day (October 6), and withdrew its objections to Topics 5 and 6.  *Id.* at 5.  Movants refused the Oversight Board's offer, and did not depose Ms. Jaresko concerning Topics 2-6 at her deposition.  *Id.* at 4.

**F.      Movants Agree to Subpoena EY for Testimony on the Subject-Matter of Topics 2-6.**

24.      Over the next six days, the parties conferred numerous times concerning a potential subpoena to EY for testimony concerning the subject-matter of Topics 2-6.  *Urgent Joint Motion Regarding Rule 30(b)(6) Deposition of Financial Oversight and Management Board for Puerto Rico* [ECF No. 18482] (the "Joint Motion") ¶ 8.

25.      On October 8, 2021, Movants sent the Oversight Board a draft stipulation to memorialize these discussions.  [Ex. 5, 10/8/2021 Email from T. Jennings to M. Dale].  Later that day, the Oversight Board revised the draft to make clear that (1) the Oversight Board would not be designating an EY employee (the "EY Representative") as the Oversight Board's Rule 30(b)(6) witness, but (2) the Oversight Board would adopt a properly subpoenaed EY Representative's testimony as that of the Oversight Board for purposes of Rule 30(b)(6).  [Ex. 6, 10/8/2021 Email from J. Alonzo to T. Jennings].  Movants agreed with this change, noting that the only remaining area in dispute was with the Oversight Board's proposed language regarding whether counsel for EY or the Oversight Board would make objections during the EY Representative's deposition.  [Ex. 7, 10/8/2021 Email from T. Jennings to J. Alonzo].

26.      On October 9, 2021, the Oversight Board told Movants an EY Representative would be available, if Movants subpoenaed EY, to be deposed on October 15 or 18, 2021, on the same Topics 2-6 that had been noticed to the Oversight Board.  Joint Motion ¶ 8.  Movants rejected those dates "given the number of depositions" scheduled through the close of discovery (many of which Movants had noticed).  [Ex. 8, 10/10/2021 Email from T. Jennings to J. Alonzo].  To avoid a dispute, the Oversight Board informed Movants an EY Representative would be available on Sunday, October 17, 2021, on the same Topics 2-6 that had been noticed to the Oversight Board.  Joint Motion ¶ 8.  Movants again rejected the proposed date, and requested the EY Representative

10

be deposed after the close of discovery under the confirmation schedule on October 20, 2021; again to avoid a dispute, the Oversight Board agreed to accommodate Movants' request to take EY's deposition out of time (necessitating a motion, rather than a stipulation). *Id.* ¶¶ 8-9.

27.     On October 13, 2021, the parties filed the Joint Motion, seeking the Court's leave to allow a deposition of the EY Representative following the close of discovery. The Joint Motion also made clear the parties had agreed on the following:

- Movants would subpoena EY directly, and an EY Representative would testify on behalf of EY as to the subject-matter identified in Topics 2-6. Joint Motion ¶¶ 10-11.

- The Oversight Board agreed to adopt the testimony of EY through the EY Representative as binding on the Oversight Board. *Id.* ¶¶ 13-14.

- The Oversight Board agreed to prepare the EY Representative "in accordance with Rule 30(b)(6)," *id.* ¶ 15, even though the EY Representative (i) was testifying solely in response to Movants' subpoena to EY, (ii) was not the Oversight Board's designee pursuant to the Deposition Notice of the Oversight Board, and (iii) would be defended by EY's in-house counsel. *Id.* ¶¶ 15-16.

### G.     Movants Twice Correct the Subpoena to EY to Make Clear the EY Representative is Not the Oversight Board's Designated Witness.

28.     Also on October 13, 2021, Movants attempted to serve a subpoena on EY. [Ex. 9, 10/14/21 Email from A. DeCamp to A. Cepeda]. Counsel to EY refused to accept service in part because the subpoena (i) named the incorrect entity and (ii) incorrectly described the EY Representative "as 30(b)(6) designated witness of the Financial Oversight and Management Board for Puerto Rico." *Id.* Counsel to EY stated the EY Representative "will testify as the 30(b)(6) representative of Ernst & Young LLP, testifying as to matters within the knowledge of Ernst & Young LLP as relates to work performed by Ernst & Young LLP for the Board." *Id.*

29.     On October 14, 2021, counsel to Movants attempted to serve a new subpoena on EY, stating in the cover email that the revised subpoena "address[ed] the ***two fundamental problems*** identified in your [Ms. DeCamp's] previous email." [Ex. 10 at 2, 10/14/21 Email from

A. Cepeda to J. Alonzo at 6:54 p.m.] (emphasis added).  That evening, counsel to the Oversight Board noted the subpoena still incorrectly stated Movants would "take the deposition of Ernst & Young Global Limited ('EY'), as designated witness of the Financial Oversight and Management Board for Puerto Rico (the 'FOMB') pursuant to Rule 30(b)(6)."  *Id.* at 1 [Email from J. Alonzo to A. Cepeda at 8:39 p.m.].  Counsel to the Oversight Board asked Movants to revise the subpoena in accordance with the Joint Motion, in which the parties jointly had "deleted all references to the Oversight Board designating the EY representative as our witness for purposes of the subpoena" and instead agreed the Oversight Board "would be adopting the testimony after the fact."  *Id.*

30.    On October 15, 2021, Movants served a revised subpoena on EY that no longer asserted EY or the EY Representative had been designated by the Oversight Board to provide testimony on behalf of the Oversight Board pursuant to the Deposition Notice of the Oversight Board.  *Id.* at 1 [10/15/21 Email from A. Cepeda to J. Alonzo at 11:28 a.m.]; *see also* Ex. 11 [*Subpoena to Testify at a Deposition in a Civil Action* addressed to Ernst & Young LLP dated October 15, 2021] (the "EY Subpoena").[7]  Specifically, the EY Subpoena states Movants would "take the deposition of Ernst &Young LLP ("EY") pursuant to Rule 30(b)(6), through individuals designated to testify regarding the topics of examination attached hereto," and required EY to "designate one or more officers, directors, or other persons who consent to testify on its behalf **with respect to what is known or reasonably available to EY, as relates to work performed by EY for the FOMB**, concerning each of the topics of examination set forth in the attached Exhibit A." EY Subpoena, Attachment A at 2 (emphasis added).

---

[7]    Tellingly, Movants did not attach the EY Subpoena—pursuant to which Movants deposed Mr. Chepenik as the Rule 30(b)(6) designee of EY—to the Motion.

## H.     Movants Depose EY through EY's Designated Witness, Mr. Chepenik.

31.     On October 20, 2021, Movants deposed Mr. Chepenik as EY's Rule 30(b)(6) witness.  ECF No. 18667-4.  Counsel to Movants acknowledged Movants were "proceeding to take the deposition **of Ernst & Young** through the testimony of Mr. Adam Chepenik," and in view of "EY's acknowledgement that it will be presenting a witness today, i.e., Mr. Chepenik."  *Id.* at 9, 10 (emphasis added); *see also id.* at 20:15-17 ("Q:  So you understand that you are a witness designated by EY; correct?  A:  Correct.").  Mr. Chepenik likewise reiterated he was testifying "as a representative of EY pursuant to a subpoena that was issued to EY in connection with its work" for the Oversight Board.  *See, e.g.*, *id.* at 56, 75, 76.

32.     At deposition, Mr. Chepenik testified to his extensive preparation for the deposition.  He testified he spent 30-40 hours to prepare for the deposition over the course of several weeks, including through 10-12 preparation sessions.  ECF No. 18667-4 at 40, 210.  He met with counsel to the Oversight Board during at least three of those sessions.  *Id.* at 23, 80, 210.

33.     Mr. Chepenik also provided testimony on each of Topics 2-6 during the few times during the deposition Movants' counsel actually asked substantive questions about them.  For example, Mr. Chepenik provided testimony in response to Movants' questions on Topic 2 relating to whether the Commonwealth has a balanced budget (*see, e.g.*, *id.* at 123-40, 141-42, 143, 144-50); on Topic 3 concerning available revenues (*see, e.g.*, *id.* at 154, 155-56); on Topic 4 concerning revenues retained for appropriations (*id.* at 157, 159-65); on Topic 5 relating to clawback funds (*id.* at 166, 167-69); and on Topic 6 relating to Acts 30 and 31 (*id.* at 70-72, 91-93, 97-99, 111-22, 179-81).

34.     Following a routine break when no question was pending, counsel to Movants asked Mr. Chepenik to disclose the entirety of his conversations with counsel during the break.  *See, e.g.*, ECF No. 18667-4 at 181, 186-192.  Specifically, counsel to Movants asserted "**Whatever**

[Mr. Chepenik] discussed *with anybody* during the break is not a privileged conversation, especially since he's under oath" [ECF No. 18667-4 at 187:12-14 (emphasis added)]; that he specifically "disagree[d] . . . as to whether the conversation he may have had with you during the break is a privileged conversation" [*id.* at 188:6-9]; that he "[didn't] think there is any privilege to be waived during a discussion with the witness during a break in the deposition" [*id.* at 188:16-19]; and that he was "entitled for [Mr. Chepenik] to tell me what he discussed with you during any break in the middle of the deposition while he was under oath" [*id.* at 187:15-18].  Counsel to Mr. Chepenik instructed him not to disclose the content of those conversations, *id.* at 190:10-12, and counsel to the Oversight Board asked counsel to Movants to supply any authority demonstrating they had a right to such disclosure.  *Id.* at 192:8-13.

I.    **Movants Sidestep the Amended Confirmation Procedures Order to File the Motion with Less Than 1 Hour of Notice.**

35.    On October 22, 2021, at 4:10 p.m. Eastern Time, counsel to Movants asked counsel to the Oversight Board to consent no later than 4:45 p.m. Eastern Time to the public filing of Mr. Chepenik's transcript as part of a "court submission."  [Ex. 12, 10/22/2021 Email from J. Alonzo to T. Mott].  While the Oversight Board consented to filing the transcript without redaction, the Oversight Board specifically objected to the filing of any motion as it would be in violation of Paragraph 17 of the Amended Confirmation Procedures Order the parties had already followed in two prior disputes.  *Id.*  Movants did not respond to that email, and filed the Motion anyway.  Notably, before filing the Motion, Movants did not inform the Court of the existence of a discovery dispute, and did not submit a letter describing the dispute and legal support for their position.  *Cf.* Amended Confirmation Procedures Order ¶ 17.

## ARGUMENT

### I.   THE OVERSIGHT BOARD COMPLIED WITH THE PARTIES' AGREEMENTS, WHICH MOVANTS IMPROPERLY SEEK TO RECAST.

#### A.   Neither EY Nor Mr. Chepenik Were the Oversight Board's Designated Witness Pursuant to Rule 30(b)(6).

36.     The premise of Movants' argument that the Oversight Board failed to adequately prepare Mr. Chepenik is their baseless assertion he was actually *the Oversight Board's* designated witness.  Contrary to their written agreement with the Oversight Board, Movants now assert the Oversight Board "promised that Ernst & Young would be the FOMB's Rule 30(b)(6) designee" (Mot. ¶ 3), the Oversight Board told Movants "the EY Representative would be the FOMB's Rule 30(b)(6) designee" (*id.* ¶ 4), and that the EY Subpoena was solely "to facilitate the FOMB's designation of Ernst & Young as its Rule 30(b)(6) witness" (*id.* ¶ 11).  From that false premise, Movants seek relief as if Mr. Chepenik was the Oversight Board's designated witness:  they assert "Mr. Chepenik was clearly not adequately prepared to be the FOMB's Rule 30(b)(6) designee" (*id.* ¶ 19) even though he never was, and fault Mr. Chepenik for an alleged failure to "review *all* documents with any bearing on the Rule 30(b)(6) topics" (*id.* ¶ 28 (emphasis in original)) in the Oversight Board's control and for failing to speak with members of the Oversight Board.

37.     Movants' assertions are false in every respect, and are a blatant attempt to recast the parties' agreement after the fact to manufacture a dispute for some perceived strategic gain.  Indeed, Movants do not even attach the EY Subpoena to the Motion, which Movants drafted and served pursuant to the Joint Motion to elicit Mr. Chepenik's testimony on behalf of EY.  Instead, Movants attach only the Deposition Notice of the Oversight Board, apparently seeking to create the illusion that Mr. Chepenik was the Oversight Board's designee under that notice.  *See* ECF No. 18667-1.

38.     In actuality, the Oversight Board never designated EY or Mr. Chepenik as its Rule 30(b)(6) witness.   Indeed, there would have been no point to agreeing separately to adopt the testimony of EY as binding in full if the Oversight Board had designated a witness to testify on its behalf.  *Cf.* Joint Motion. ¶¶ 13, 14.  Movants expressly agreed to subpoena EY for its knowledge as a substitute for deposing the Oversight Board on Topics 2-6.  *Id.* ¶ 10; *see also* Exs. 6-8.  When Movants erroneously attempted to serve EY with a subpoena stating EY or the EY Representative was the Oversight Board's designated witness, Movants admitted that was a "***fundamental problem[]***" with the subpoena as drafted, *see* Ex. 10 at 2 [6:54 p.m. email] (emphasis added), and then revised the subpoena to remove that reference.  *See id.*  When Movants again erroneously included statements suggesting EY or the EY Representative was the Oversight Board's designated witness in a revised subpoena, Movants ***again*** revised the subpoena to remove all such references.  Exs. 9. 10.  After correcting those errors, the EY Subpoena pursuant to which Movants deposed Mr. Chepenik reflected the parties' agreement:  Movants would "take the deposition of Ernst &Young LLP ('EY') pursuant to Rule 30(b)(6), through individuals designated to testify regarding the topics of examination attached hereto," and required EY to "designate one or more officers, directors, or other persons who consent to testify on its behalf ***with respect to what is known or reasonably available to EY, as relates to work performed by EY for the FOMB***, concerning each of the topics of examination set forth in the attached Exhibit A."  EY Subpoena, Attachment A at 2 (emphasis added).

**B.     The Oversight Board Fulfilled Its Agreement to Prepare the EY Representative to Testify as to EY's Knowledge Relating to Work EY Performed for the Oversight Board.**

39.     Although neither EY nor Mr. Chepenik was the Oversight Board's designated witness, Movants attempt an end run around the clear record by asserting the Oversight Board's agreement it would "be responsible for preparing the EY Representative for the deposition in

16

accordance with Rule 30(b)(6)" (Joint Motion ¶ 15) made Mr. Chepenik the Oversight Board's designee. Specifically, Movants contend the Oversight Board should have provided Mr. Chepenik with "*all*" documents[8] that could relate to the subpoenaed topics, and should have arranged conversations between Mr. Chepenik and the Oversight Board, such that he would have been prepared **as the Oversight Board's** witness. *See* Mot. ¶¶ 28-29, 31-32. That is wrong, and yet another attempt to mischaracterize the parties' agreement after the fact.[9]

40.     The Oversight Board's agreement to prepare Mr. Chepenik was **not** a "back door" witness designation as Movants contend, but instead an agreement to ensure Mr. Chepenik, as the EY Representative, was adequately prepared to testify precisely as to what the subpoena sought— namely, "**with respect to what is known or reasonably available to EY, as relates to work performed by EY for the FOMB**, concerning each of the topics of examination set forth in the attached Exhibit A." EY Subpoena, Attachment A, at 2 (emphasis added). From the start, the Oversight Board has maintained the best source of testimony on the subject-matter of Topics 2-6 is not the Oversight Board itself but its advisor, EY, which performed work for the Oversight Board most closely related to those topics. As such, the Oversight Board agreed to adopt, without

---

[8]     Movants cite *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 37 (D. Mass. 2001), to assert Mr. Chepenik was required to review "*all*" documents over which the Oversight Board has legal custody that may pertain to Topics 2-6 (Mot. ¶ 28), but it is inapposite: Mr. Chepenik was subpoenaed to testify **on behalf of EY concerning its work for the Oversight Board**, not to testify on behalf of the Oversight Board itself.

[9]     Movants also emphasize the EY Subpoena was issued "in connection with" the Deposition Notice of the Oversight Board, evidently to suggest "in connection with" means Mr. Chepenik was designated as the Oversight Board's witness. *See* Mot. ¶ 17. That is plainly wrong, as the "connection" relates to the overlapping topics between the Deposition Notice of the Oversight Board and the EY Subpoena for which EY would testify (which testimony the Oversight Board agreed to adopt, and does adopt).

qualification and as binding, whatever testimony the EY Representative provided on those topics in response to the EY Subpoena.  Joint Motion ¶¶ 13-14.

41.     Movants falsely characterize Mr. Chepenik as the Oversight Board's designated witness because they have no legal basis to fault the Oversight Board without that falsehood.  If Mr. Chepenik is not the Oversight Board's designee, the Oversight Board's agreement to prepare him to testify is limited to ensuring he was fully prepared to testify as to *EY's* knowledge concerning *EY's* work for the Oversight Board—as the EY Subpoena requested.[10]  Unsurprisingly, Movants have not pointed to a single concrete example of Mr. Chepenik being ill-prepared to testify about *what EY knew* concerning its work for the Oversight Board relating to the noticed topics.  Instead, Movants hope this Court retroactively will find the Oversight Board designated a witness it did not designate, and is therefore retroactively obligated to prepare that non-designated witness to testify on its behalf.  Movants provide no authority to support such a result, and the Court should decline to create any.

42.     Further, the record makes clear the only "bait-and-switch strategy" (Mot. ¶ 1) in play here is Movants' own.  Movants demanded an Oversight Board witness; when the Oversight Board designated Ms. Jaresko, Movants refused to depose her, claiming there was not enough time to get prepared.  Then Movants agreed to subpoena EY for testimony from an EY Representative

---

[10]     Movants' reliance on *Calzaturficio* and *Santiago* to contend Mr. Chepenik was unprepared is likewise misplaced.  In *Calzaturficio*, the Fabiano company in fact designated two individuals as company witnesses but neither reviewed any company records before being deposed, claiming reviewing any documents was simply too voluminous.  *See Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33 (D. Mass. 2001).  No such situation exists here.  Conversely, in *Santiago*, the court denied a motion for sanctions where a designated witness met with the organization's attorney and spent hours collecting documents prior to the deposition.  *Santiago Garcia v. Costco Wholesale Corp.*, 2020 WL 3669642, at *2 (D.P.R. July 6, 2020).  Here, Mr. Chepenik testified he spent 30-40 hours preparing during 12 preparation sessions over the course of weeks, which is more than sufficient based on the analysis used in *Santiago*.

on the subject-matter of Topics 2-6, and even twice corrected their subpoena to EY after making

the "fundamental" error of saying EY was the Oversight Board's designated witness.   Now,

Movants contend the Oversight Board designated the EY Representative as a witness even though

that's precisely what the parties' agreements and actions show they did **not** do.   The Oversight

Board agreed to ensure Mr. Chepenik was adequately prepared to testify in response to the EY

Subpoena; now, Movants assert that agreement was a "back door" witness designation.   The Court

should reject Movants' gamesmanship.

### C.   Mr. Chepenik Was Fully Prepared to Testify as to Topics 2-6, to the Extent They Sought Any Factual Testimony.

43.    Movants also fail to identify what other information they need from the Oversight

Board, much less why it would matter.   Movants assert they are in an "untenable position" because

they do not know "the FOMB's positions" on the topics set forth in the EY Subpoena (Mot. ¶ 32

(citation omitted)), but that conclusory statement does not identify any substantive *factual*

information they seek or explain how it would bear on confirmation.   Instead, it appears Movants

want to continue sparring with fact witnesses over legal issues, after the close of discovery—an

inappropriate aim that is a waste of all parties' and the Court's time.   Movants' contention is also

demonstrably false for three reasons.

44.    *First*, Topics 2-6 do not seek any factual information, but instead seek testimony

about legal conclusions relating to clawback issues.   A fact witness cannot testify as to whether

any clawback rights were triggered as a matter of law through lack of a balanced budget, the lack

of sufficient available resources to meet appropriations for a given fiscal year, or whether any

revenues have been "diverted" or "retained" such that there was some effect on available resources.

While Mr. Chepenik was prepared to testify about EY's work for the Oversight Board pertaining

to budget issues, as a fact witness, he could not testify about legal arguments or legal conclusions

19

that are the province of the Court.  Moreover, Movants are very much aware of the Oversight

Board's position with respect to the clawback issues that are the subject of Topics 2-6.  In fact, the

Oversight Board's position has been clearly set forth in multiple pleadings, as described above

(*see supra* ¶¶ 14-17).  The notion that Movants are somehow still in the dark and can only learn

about the Oversight Board's "position" by taking another deposition is not credible.

45.     Further, over a month before Mr. Chepenik's deposition, the Oversight Board made

clear it had no discoverable information to provide concerning Topics 2-6.  The Oversight Board

specified it "does not perform specific analyses regarding 'whether or not the Commonwealth had

a balanced budget,' 'whether or not the available revenues of the Commonwealth were insufficient

to meet the appropriations for that fiscal year,' or 'the amount necessary to be retained for there to

be sufficient revenues to meet the appropriations,'" and that any internal discussions relating to

budget issues are protected from disclosure from the deliberative process privilege.  September 10

Letter at 2; *see also* Ex. 4 at 8-13 (Oversight Board's objections to each topic as cumulative of

publicly available documents and information already produced by the Oversight Board).  As such,

there is no factual information to provide in response to Topic 2 (whether the Commonwealth had

a balanced budget), Topics 3-4 (ability to meet appropriations), or Topics 5-6 (concerning the

amount necessary to meet appropriations).

46.     *Third*, putting all of that aside, it is plain Mr. Chepenik was fully prepared to

provide fact testimony when Movants' counsel asked proper factual questions.  From the start, the

Oversight Board directed Movants to EY for factual information on the subject-matter of Topics

2-6, based on the assumption Movants wanted the best available information on those topics from

the people actually doing budget-related work for the Oversight Board.  What the Motion makes

clear, however, is Movants have used this deposition as a means to create additional disputes

between the parties in the hope of slowing down the path toward confirmation.  Indeed, the Motion is completely silent on what information Movants could have received from Mr. Chepenik and how such information would be relevant to confirmation— particularly after Movants' own expert, Mr. Brickley, was satisfied he had sufficient information to render his opinions *on these very topics* based on publicly available financial information.

47.     Movants provide no basis for the Court to conclude Mr. Chepenik was insufficiently prepared to answer substantive questions in response to the EY Subpoena.  Mr. Chepenik was fully prepared to testify as to EY's work for the Oversight Board, spending 30-40 hours in 12 sessions over the course of several weeks to prepare for his testimony.  *See supra* ¶ 32. Mr. Chepenik also provided substantive answers on each of Topics 2-6 on the rare occasions when counsel to Movants asked substantive questions.  *See supra* ¶ 33.  As the transcript makes clear, Movants chose to spend the vast majority of the deposition asking about process, foundation, and preparation for the deposition, and very little time asking about substantive issues.  *See generally* ECF No. 18667-4.  The Oversight Board should not be penalized for Movants' decisions in that regard.

## II.     THE OVERSIGHT BOARD APPROPRIATELY CONFERRED WITH THE EY REPRESENTATIVE DURING ROUTINE BREAKS IN THE DEPOSITION.

48.     Movants also seek to compel disclosure of Mr. Chepenik's discussions with counsel during routine deposition breaks while no question was pending.  Movants assert the law prohibits such discussions "as a matter of course," and that any such conversations are discoverable because they are not protected by the attorney-client privilege or work-product doctrine.  Mot. ¶ 34. Movants are wrong.

49.     Movants rely chiefly on *Hall v. Clifton Precision*, 150 F.R.D. 525 (E.D. Pa. 1993), to support their sweeping argument, but their reliance is misplaced.  In *Hall*, counsel told the

witness he could "stop and talk to me" at "any time" for any reason, and then in fact stopped the

deposition mid-question to confer with the witness about a document just introduced as an exhibit.

*Id.* at 526.  After the parties contacted the court and adjourned the deposition pending resolution

of the dispute, the court imposed a blanket prohibition on conversations between counsel and the

witness, even during routine breaks, except to resolve privilege issues.  *Id.* at 528-29.

50.    But *Hall* has no bearing here.  As a threshold issue, *Hall* concerned a wholly

different scenario where counsel stopped an examination mid-question; no such situation exists

here, where the only discussions at issue occurred during routine breaks neither the witness nor

the witness's counsel initiated.[11]  There is nothing "particularly instructive" (Mot. ¶ 36) about *Hall*

for this case, where Movants have not even attempted to make a showing of improper "coaching."

51.    Further, in the ***decades*** since *Hall* was decided, the weight of authority runs

contrary to *Hall*'s draconian prohibitions, and instead permits conversations between witnesses

and counsel during routine breaks.  *See, e.g.*, *Odone v. Croda Int'l, PLC*, 170 F.R.D. 66, 68 nn. 4,

5 (D.D.C. 1997) (declining to apply *Hall*, noting cases that did apply *Hall* "involve an attorney

suggesting answers or otherwise interfering during direct examination by the opposing party

during a deposition," and distinguishing case because "the [witness's] attorney did not request a

recess or private moment during which to discuss the document prior to the questioning by the

opposing counsel" as in *Hall*); *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev.

1998) (criticizing *Hall* and declining to follow it, permitting conferences during normal breaks

unless counsel to the witness "demand[s] a break in the questions, or demand[s] a conference

---

[11]    Counsel to Movants initiated each of the breaks prior to Movants' attempt to discover the
substance of communications between Mr. Chepenik and counsel.  *See* ECF No. 18667-4 at 47:19-
21, 77:3-6, 93:19-22, 142:8-12, 165:15-18.  The one arguable exception was a break early in the
deposition to resolve a technical malfunction with the exhibit display software that prohibited the
witness from seeing the exhibit about which he was to be questioned.  *Id.* at 18:5-17.

between question and answers"); *United States v. Fresenius Med. Care Holdings, Inc.*, No. 09-cv-10179-GAO, 2019 WL 1254554, at *1 (D. Mass. Mar. 19, 2019) (denying motion to compel disclosure of substance of communications on break that preceded change in testimony).[12]

52.     Movants likewise fail to identify a single rule or binding precedent imposing the blanket prohibitions they wished existed in this District.  Movants cite two District of Puerto Rico cases to contend "federal courts in Puerto Rico have prohibited conversations between counsel and witness about deposition testimony" (Mot. ¶ 35), but that contention is misleading at best.  In both cases, the District Court issued a specific case management order at the outset prohibiting conferences between the witness and counsel except to determine whether to assert a privilege. *Carreras v. Sajo*, No. 06-1037, 2006 U.S. Dist. LEXIS 111476, at *17 (D.P.R. Sept. 11, 2006) (guidelines for discovery depositions); *In re San Juan Dupont Plaza Hotel Fire Litig.*, No. MDL 721, 1989 WL 168401, at *38 (D.P.R. Dec. 2, 1988) (amended case management order).  Those case-specific management orders have no bearing here, and this Court's own orders, including the Amended Confirmation Procedures Order, impose no such restrictions.  Further, if anything, *In re San Juan Dupont Plaza Hotel Fire Litigation* supports the Oversight Board's view:  while the case

---

[12]     *See also, e.g.*, *Few v. Yellowpages.com, LLC*, No. 13-4107, 2014 WL 3507366, at *2 (S.D.N.Y. July 14, 2014) (absent a showing of misconduct, conversations between counsel and the witness during deposition breaks are protected by the attorney-client privilege); *Cannon v. Time Warner NY Cable LLC*, No. 13-02521, 2015 WL 2194620, at *1 (D. Colo. May 7, 2015) ("[T]here is no bar on attorney consultation with a client during the client's deposition, as a general matter—so long as no question is pending."); *Pia v. Supernova Media, Inc.*, No. 2:09-840, 2011 WL 6069271 (D. Utah Dec. 6, 2011) (holding conversations during deposition breaks are protected by attorney-client privilege as long as no question was pending during the break); *Norwood v. United Parcel Serv., Inc.*, No. 19-cv-2496, 2020 WL 2615763, at *3 (D. Kan. May 22, 2020) (declining to apply *Hall* and noting courts in Tenth Circuit have not followed *Hall*); *McKinley Infuser, Inc. v. Zdeb*, 200 F.R.D. 648, 650 (D. Colo. 2001) (criticizing *Hall* and declining to apply it); *Murray v. Nationwide Better Health*, No. 10-3262, 2012 U.S. Dist. LEXIS 120592, at *12 (C.D. Ill. Aug. 24, 2012) (sustaining objection to order imposing *Hall* prohibition on conferring with witness on normal breaks that counsel did not request).

management order prohibited private conferences "during the conduct of the deposition" except to determine privilege, it specifically *allowed* private conferences "during normal recesses and adjournments," *id.* at *38, like the normal breaks at issue here.

53.    Movants also look to *Gibbs v. City of New York*, No. 06-5112, 2008 U.S. Dist. LEXIS 22588 (E.D.N.Y. Mar. 21, 2008), for the proposition that "questions concerning subject matter of deposition break conversations were required to be answered." Mot. ¶ 36.  *Gibbs* does not make such a blanket rule.  Rather, it involved a witness who changed his testimony after lunch, was asked whether he came to the conclusion himself prior to speaking with counsel that he had made an error, and was directed by the court to answer "yes" or "no" to two questions pertaining to his changed testimony (whether he came to the realization himself he had erred, and whether he discussed with counsel the subject about which he provided clarification).  *Id.* at *7.  Like *Hall*, *Gibbs* does not support Movants' contention that nothing discussed on a break could be privileged.

54.    Here, Movants do not contend Mr. Chepenik suddenly changed his testimony following a break, and do not seek non-privileged information concerning any changed testimony. Instead, they resort to the baseless assertion that counsel for the Oversight Board was "apparently intent" to "coach" the witness on breaks.  Mot. ¶ 34.  They then attempt to stuff this dispute into *Gibbs* by contending they only sought the "subject" of Mr. Chepenik's discussions with counsel (*id*. ¶ 36), but that, too, is false.  Counsel to Movants specifically asserted "***Whatever*** [Mr. Chepenik] discussed ***with anybody*** during the break is not a privileged conversation, especially since he's under oath" [ECF No. 18667-4 at 187:12-14 (emphasis added)]; that he specifically "disagree[d] . . . as to whether the conversation he may have had with you during the break is a privileged conversation" [*id.* at 188:6-9]; that he "[didn't] think there is any privilege to be waived during a discussion with the witness during a break in the deposition" [*id.* at 188:16-19]; and that

he was "entitled for [Mr. Chepenik] to tell me what he discussed with you during any break in the middle of the deposition while he was under oath" [*id.* at 187:15-18].  Movants' attempt to re-characterize the scope of their wholly inappropriate inquiry to fit the inapposite authority they found is belied by the record.

## III.   MOVANTS FAILED TO COMPLY WITH THE DISCOVERY DISPUTE PROCEDURES SET FORTH IN THE AMENDED CONFIRMATION PROCEDURES ORDER.

55.     The Court should also deny the Motion because Movants failed to comply with the process to resolve discovery disputes in the Amended Confirmation Procedures Order, which requires a party to inform the Court of the existence of a discovery dispute to request scheduling a chambers conference, and to provide the Court with a letter describing the dispute and legal support for its position within three business days.  Amended Confirmation Procedures Order ¶ 17.  Movants are well aware of this procedure because, as the Court knows, they have twice pursued relief under it.  Here, Movants failed to comply with the Confirmation Procedures Order in two ways.

56.     *First*, while Movants acknowledge the parties met and conferred on the record on October 20, 2021 (Mot. ¶ 27), Movants never told the Court a discovery dispute existed within one business day after that conference, and never sought a chambers conference in an attempt to resolve the dispute.  *Second*, Movants never provided a letter to the Court explaining the dispute and providing legal authority for their position.  Instead, Movants decided to bypass the Amended Confirmation Procedures Order, disrupting the Court's ability to seek resolution of the dispute without full motion practice.  There simply is no justification for Movants' tactics.  The Court

should deny the Motion on the independent basis Movants failed to comply with the Confirmation

Procedures Order.[13]

## **CONCLUSION**

57.     For at least the foregoing reasons, the Court should deny the Motion.


*[Remainder of Page Intentionally Left Blank]*

---

[13]     To the extent Movants suggest the Oversight Board's statement Movants should "take whatever steps [they] need to" somehow authorized bypassing the Amended Confirmation Procedures Order (*see* Mot. ¶ 27), that is plainly wrong.  Movants are bound by the Amended Confirmation Procedures Order, and the Oversight Board expected Movants' next steps—as in two other disputes during confirmation discovery—would be to comply with it.

Dated: October 26, 2021
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Margaret A. Dale*

Martin J. Bienenstock
Margaret A. Dale
Michael T. Mervis
Julia D. Alonzo
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*

William D. Dalsen
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
One International Place
Boston, MA  02110
Tel: (617) 526-9600

*Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*

27