# Exhibit 1

(To the October 26, 2021 Declaration of Margaret A. Dale)

**Proskauer»** Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

Margaret A. Dale
Member of the Firm
d +1.212.969.3315
f 212.969.2900
mdale@proskauer.com
www.proskauer.com

September 10, 2021

**By Email**

Thomas L. Mott
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022

Arturo J. García-Solá
MCCONNELL VALDÉS LLC
270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918

Carmen D. Conde Torres
C. CONDE & ASSOC. LAW OFFICES
254 San José Street, Suite 5
San Juan, PR 00901-1523

Re:   *In re: Commonwealth of Puerto Rico, et al.* **(D.P.R. Case No. 17-3283) – the DRA Parties' Discovery Requests Relating to the Seventh Amended Plan of Adjustment**

Dear Counsel,

    We write regarding: (*i*) the parties' August 31, 2021 telephonic conference regarding the DRA Parties' first set of document requests[1] (the "Requests," and each individually a "Request") in connection with confirmation of the Plan,[2] and the Oversight Board's responses thereto (the "Responses," and each individually a "Response"); and (*ii*) the DRA Parties' September 3, 2021 email (the "September 3 Email") following up on the August 31 teleconference.[3]

    A.  **Request Nos. 7-9**

    *Request No. 7 ("All documents concerning whether or not the Commonwealth had a balanced budget for each fiscal year from*

---

[1] The DRA Parties' *First Request for Production of Documents to the Financial Oversight and Management Board for Puerto Rico and the Puerto Rico Fiscal Agency and Financial Advisory Authority* were served August 6, 2021.

[2] "Plan" refers to the *Seventh Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.* [ECF No. 17627].

[3] Email from T. Mott to P. Friedman *et al.* (Sept. 3, 2021).

**Proskauer**

Thomas L. Mott, Esq.
September 10, 2021
Page 2

>  FY2016 to the present, including but not limited to any analyses, discussion, or examination of this issue.")
>
> *Request No. 8 ("All documents concerning any analyses, discussion, or examination for each fiscal year from FY2016 to the present, of whether or not the available revenues of the Commonwealth were insufficient to meet the appropriations made for that fiscal year.")*
>
> *Request No. 9 ("All documents concerning any analyses, discussion, or examination, for each fiscal year from FY2016 to the present, evaluating the amounts to retain in order for there to be sufficient available revenue to meet the appropriations made for that fiscal year.")*

Your September 3 Email contends that "analyses as to whether the budget is balanced and whether there are sufficient revenues or a surplus is directly relevant to the DRA Parties' case," and therefore "direct[s the Oversight Board] to please produce documents responsive to" Request Nos. 7-9 "as soon as possible." We disagree. As the Oversight Board and AAFAF explained on the August 31 meet and confer, Request Nos. 7-9 reflect a misunderstanding of the process by which the Commonwealth's budgets are created. In developing the Commonwealth's certified budget, the Oversight Board does not perform specific analyses regarding "whether or not the Commonwealth had a balanced budget," "whether or not the available revenues of the Commonwealth were insufficient to meet the appropriations for that fiscal year," or "the amount necessary to be retained for there to be sufficient revenues to meet the appropriations," as requested in the September 3 Email. In any event, the Commonwealth has been in Title III proceedings since May 2017, and it has not made debt service payments during the pendency of those proceedings. Further, the Plan does not propose to pay the Commonwealth's general obligation date in full. Accordingly, whether the Commonwealth's budget is balanced and whether sufficient revenues are available to meet appropriations is irrelevant.

On the August 31 teleconference, counsel for the DRA Parties speculated whether any internal documents might exist that discussed whether the Commonwealth's budget was balanced or whether there were sufficient revenues to meet appropriations. Even if any analyses regarding these issues were performed, those analyses would relate to the Oversight Board's policy deliberations regarding the development and certification of the Commonwealth's certified budget. They would therefore be protected by the deliberative process privilege and not subject to disclosure. Accordingly, the Oversight Board will not search for or produce documents responsive to Requests Nos. 7-9, and it will not agree to stipulate "that there were sufficient revenues in every fiscal year at issue." *See* September 3 Email.

**Proskauer**

Thomas L. Mott, Esq.
September 10, 2021
Page 3

B. <u>Request Nos. 22-23 and 25</u>

**Request No. 22** *("All documents related to the underlying cash flow projections used to develop the recoveries and assumptions in the best interest test analyses, including but not limited to drafts, models, calculations, work papers, and underlying data.")*

**Request No. 23** *("Documents, models, or work papers sufficient to show the financial models underlying the recovery conclusions in the best interest test analyses.")*

**Request No. 25** *("Documents, models, or work papers sufficient to show that the recoveries provided under the Plan constitute the maximum amount of distributable value that the Debtors can provide to each of their creditors.")*

Your September 3 Email purports to identify 18 documents in the Plan Depository that "are either blank or contain only logos," as well as four documents that "are in excel format but contain little to no content."

We investigated each of the documents you identified. The 18 documents that appear blank or contain only logos are "dummy" image files that were embedded in other documents within the Oversight Board's production. As you are no doubt aware, it is common for these embedded files to be extracted from the primary documents in which they are embedded during processing. Similarly, the four Excel files you identified are embedded Excel files that were likewise extracted from their primary documents during processing. Nevertheless, to the extent the embedded files contained any data, that data is reflected in the primary documents from which the embedded files were extracted. For ease of reference, please see below for a table identifying the primary document which corresponds to each of the embedded files you have identified.

| Bates Nos. Identified in Sept. 3 Email | Primary Document |
|---|---|
| FOMB_CONF_05172<br>FOMB_CONF_05173<br>FOMB_CONF_05174<br>FOMB_CONF_05175<br>FOMB_CONF_05176<br>FOMB_CONF_05177<br>FOMB_CONF_05178<br>FOMB_CONF_05179<br>FOMB_CONF_05180<br>FOMB_CONF_05181<br>FOMB_CONF_05182<br>FOMB_CONF_05183 | FOMB_CONF_05171 |

**Proskauer**

Thomas L. Mott, Esq.
September 10, 2021
Page 4

| Bates Nos. Identified in Sept. 3 Email | Primary Document |
|---|---|
| FOMB_CONF_05185<br>FOMB_CONF_05186<br>FOMB_CONF_05187<br>FOMB_CONF_05188<br>FOMB_CONF_05189<br>FOMB_CONF_05190 | FOMB_CONF_05184 |
| FOMB_CONF_05625<br>FOMB_CONF_05626<br>FOMB_CONF_05627<br>FOMB_CONF_05628 | FOMB_CONF_05624 |

To avoid any confusion, we will add a disclosure in the "FAQs" section of the Plan Depository explaining why a creditor might encounter these extracted files in the Plan Depository.

Your September 3 Email also requests native versions of the Fiscal Plan model and the Best Interest Test model. The Oversight Board will agree to produce both models. These materials will be uploaded to the "Best Interest Test" folder in the Plan Depository.

C. **Request No. 29** (*"All documents concerning the negotiation, drafting, or entering into the HTA Loan Documents, including but not limited to sections 1.2 and 3.2 of the Security Agreement and any language purporting to subordinate the obligations arising under the HTA loan agreements to the HTA Bonds, the priority of GDB's liens on the Act 30-31 Revenues, and the existence, identity, or absence of any third-party beneficiary to the Security Agreement."*)

Your September 3 Email requests the Oversight Board "confirm" whether it will "agree to search for and produce documents responsive to this Request." Your email, however, does not explain why documents responsive to this Request are relevant to the DRA Parties' analysis regarding whether the Plan is confirmable. Instead, your email simply contends this Request "is an important request item and that extrinsic evidence could be relevant," though you do not specify to what issue you believe extrinsic evidence could be relevant.

Notably, Judge Dein already held that equivalent materials relating to HTA bonds are beyond the scope of permissible discovery.[4] In addition, the operative governing documents for

---

[4] *See Order on Defendants' Motion to Compel Document Discovery from the Government in The Revenue Bond Adversary Proceedings* [ECF No. 16236], dated March 26, 2021.

4

**Proskauer»**

Thomas L. Mott, Esq.
September 10, 2021
Page 5

each of the HTA Loans should already be available to the DRA Parties, given these loans were transferred to the DRA Parties in connection with the GDB's Title VI proceeding. Nevertheless, those operative governing documents either have been or will be produced to the DRA Parties by AAFAF in response to this Request.

In any event, each of the HTA Loans were executed prior to the creation of the Oversight Board, and the requested documents therefore pre-date the Oversight Board's existence. Seeking documents concerning the negotiation of the HTA Loan Documents from the Oversight Board is, at best, highly inefficient and unduly burdensome.

Accordingly, the Oversight Board will not search for or produce documents responsive to this Request.


Sincerely,

/s/ *Margaret A. Dale*
Margaret A. Dale