```
 1                   UNITED STATES DISTRICT COURT

 2                     DISTRICT OF PUERTO RICO

 3
     In Re:                        )        Docket No. 3:17-BK-3283(LTS)
 4                                 )
                                   )        PROMESA Title III
 5   The Financial Oversight and )
     Management Board for          )
 6   Puerto Rico,                  )        (Jointly Administered)
                                   )
 7   as representative of          )
                                   )
 8   The Commonwealth of           )
     Puerto Rico, et al.           )        October 25, 2021
 9                                 )
                 Debtors,          )
10

11   _____

12   In Re:                        )        Docket No. 3:17-BK-3566(LTS)
                                   )
13                                 )        PROMESA Title III
     The Financial Oversight and )
14   Management Board for          )
     Puerto Rico,                  )        (Jointly Administered)
15                                 )
     as representative of          )
16                                 )
     The Employees Retirement      )
17   System of the Government      )
     of the Commonwealth of        )
18   Puerto Rico,                  )
                                   )
19               Debtors,          )

20   _____

21

22

23

24

25
```

```
 1

 2  _____

 3
    In Re:                        )        Docket No. 3:19-BK-5523(LTS)
 4                                 )
                                   )        PROMESA Title III
 5  The Financial Oversight and )
    Management Board for           )
 6  Puerto Rico,                   )        (Jointly Administered)
                                   )
 7  as representative of           )
                                   )
 8  The Puerto Rico Public         )
    Buildings Authority,           )
 9                                 )
                    Debtors,       )
10
    _____
11

12                      URGENT STATUS CONFERENCE

13    BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

14              UNITED STATES DISTRICT COURT JUDGE

15    AND THE HONORABLE U.S. MAGISTRATE JUDGE JUDITH GAIL DEIN

16              UNITED STATES DISTRICT COURT JUDGE

17  _____

18
    APPEARANCES:
19
    ALL PARTIES APPEARING TELEPHONICALLY
20
    For The Commonwealth
21  of Puerto Rico, et al.:  Mr. Martin J. Bienenstock, PHV
                             Mr. Brian S. Rosen, PHV
22                           Mr. Michael Firestein, PHV

23
    For Puerto Rico Fiscal
24  Agency and Financial
    Advisory Authority and
25  the Governor of
    Puerto Rico:             Mr. John Rapisardi, PHV
```

```
 1    APPEARANCES, Continued:

 2
      For The Official
 3    Committee of Retired
      Employees:                  Mr. Robert Gordon, PHV
 4
      For the Hon. Jose
 5    Luis Dalmau Santiago:    Mr. Luis Vega Ramos, Esq.
                               Mr. Edwin Quinones, Esq.
 6
      For the Hon. Rafael
 7    Hernandez Montanez:      Mr. Jorge Martinez Luciano, Esq.
                               Mr. Emil Rodriguez Escudero, Esq.
 8
      For the Lawful
 9    Constitutional Debt
      Coalition:               Mr. Susheel Kirpalani, Esq.
10
      For the DRA Parties
11    and AmeriNational
      Community Services:    Mr. Arturo J. Garcia Sola, Esq.
12
      For the Ad Hoc Group
13    of Constitutional
      Debtholders:           Mr. Gary S. Lee, PHV
14

15    Also present:

16        Honorable Bankruptcy Judge Barbara Houser, Mediation
              Team Leader
17
          Governor Pedro Pierluisi Urrutia, Governor of Puerto Rico
18
          Honorable Jose Dalmau Santiago, President of the Senate
19            of Puerto Rico

20        Honorable Rafael Hernandez Montanez, Speaker of the House
              of Representatives of Puerto Rico
21
          Ms. Natalie Jaresko, Executive Director of the Oversight
22               Board

23        Mr. David Skeel, Chairman of the Oversight Board

24

25    Proceedings recorded by stenography.  Transcript produced by
      CAT.
```

```
 1                              I N D E X

 2   WITNESSES:                                        PAGE

 3        None.

 4

 5   EXHIBITS:

 6        None.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                                    San Juan, Puerto Rico

 2                                    October 25, 2021

 3                                    At or about 9:00 AM

 4                          *     *     *

 5          THE COURT:  Good morning.  This is Judge Laura Taylor

 6   Swain.

 7          MS. NG:  Good morning, Judge.  This is Lisa Ng, your

 8   courtroom deputy.

 9          THE COURT:  Thank you, Ms. Ng.

10          Ms. Tacoronte, would you please call the case?

11          COURTROOM DEPUTY:  Good morning, Your Honor.

12          The United States District Court for the District of

13   Puerto Rico is now in session.  The Honorable Laura Taylor

14   Swain presiding.  Also present, Magistrate Judge Judith Dein.

15   God save the United States of America and this Honorable

16   Court.

17          Bankruptcy Case No. 2017-3283, In re: The Financial

18   Oversight and Management Board for Puerto Rico, as

19   representative of the Commonwealth of Puerto Rico, et al., for

20   Status Conference.

21          THE COURT:  Thank you, Ms. Tacoronte.

22          Buenos dias, everyone.  Welcome Counsel,

23   distinguished leaders of the elected Government and the

24   Oversight Board, parties in interest, and members of the

25   public and press.
```

1          To ensure the orderly operation of today's telephonic

2   conference, all parties on the line must mute their phones

3   when they are not speaking.  If you are accessing these

4   proceedings on a computer, please be sure to select "mute" on

5   both the Court Solutions dashboard and your phone.  When you

6   need to speak, you must unmute on both the dashboard and the

7   phone.

8          I remind everyone that consistent with court and

9   judicial conference policies and the orders that have been

10  issued, no recording or retransmission of the conference is

11  permitted by anyone, including but not limited to the parties,

12  members of the public, or the press.  Violations of this rule

13  may be punished with sanctions.

14         I will be calling on each speaker during the

15  conference.  Given the unusual nature of today's conference,

16  and the fact that not all participants are commonly before the

17  Court, it is especially important that all participants

18  clearly identify themselves for the record to ensure the

19  accuracy of the record.  So when I call on each speaker,

20  please identify yourself by name, and give either your title,

21  if you are an official, or the party you represent if you are

22  counsel.

23         Once I have completed calling on every party in

24  interest that I expect to hear from, I may permit other

25  parties in interest to address briefly any issues raised

1    during the course of the presentations that require further

2    remarks.  If you wish to be heard under these circumstances,

3    please state your name clearly at the appropriate time.  Do

4    not use the wave feature on the Court Solutions dashboard,

5    because I will not be able to see that.  I will call on the

6    speakers one by one if more than one person wishes to be

7    heard.

8           Please don't interrupt each other or me during the

9    hearing.  If we interrupt each other, it's difficult to create

10   an accurate transcript of the conference.  If anyone has any

11   difficulty hearing me or another participant, however, please

12   say something right away.  If there is a need to take a break,

13   I will direct everyone to disconnect and dial back in at a

14   specified time.

15          As to time, I have allocated 90 minutes in total for

16   this conference, so when you are called upon to speak, please

17   be as clear, to the point, and brief as possible, and I will

18   interrupt if I need to.

19          I convened today's conference on an urgent basis,

20   because at the end of last week, the Oversight Board stated

21   its intention to seek adjournment of the scheduled

22   confirmation hearing on the Seventh Amended Proposed Plan of

23   Adjustment if necessary legislation to which it had agreed was

24   not approved by the Senate by Friday, and the Senate reported

25   that it had deferred indefinitely any action on that

1   legislation.  Over the weekend, according to informative

2   motions filed in the past few hours, legislative leaders have

3   come up with further proposals.

4          At this moment, four and a half years of hard work by

5   the Oversight Board, the leaders and agencies of Puerto Rico's

6   Government and official committees, and despite devastating

7   hurricanes and earthquakes, we have a confirmation hearing

8   scheduled that is designed to let this Court consider whether

9   a significantly consensual Plan of Adjustment can be

10  confirmed.  While I cannot and I will not prejudge the

11  confirmability of the Plan that has been proposed, which is

12  subject to outstanding objections, it appears to me from the

13  press and from party submissions that the version of the Plan

14  to which the Oversight Board has agreed, and that the House --

15  and for which the House has passed legislation, puts Puerto

16  Rico in the closest position that it has been in years to

17  being able to restructure its debt, reducing that debt very

18  substantially, providing for payment over an extended period

19  of time, and conditioning significant parts of the repayment

20  obligations on outperformance of the current projections for

21  Puerto Rico's economy.

22          This proposal required extraordinary work over

23  several years from the unique mediation team of judges to

24  assist a multitude of parties in reaching the compromises that

25  are incorporated into the current Plan proposal.  The Plan as

1    proposed by the Oversight Board requires Commonwealth

2    legislation.

3             In the current circumstances, as I understand them

4    this morning, I will not get an opportunity to evaluate

5    whether that proposed Plan meets legal requirements unless the

6    conference legislation is passed.  The House has passed the

7    conference legislation, the Senate has not, and according to

8    the informative motions, Senate and House members are

9    proposing a new version with additional conditions.

10            I remind everybody that the confirmation hearing is

11   scheduled to commence on November 8th, 2021, at 9:30 in the

12   morning, Atlantic Standard Time.  The Oversight Board filed an

13   informative motion at the end of last week stating that it

14   wants to suspend the confirmation schedule, including the

15   three weeks that I have set aside and protected on my court

16   calendar for the confirmation hearing.  I'm not ready to do

17   that at this point.

18            Hundreds of millions of dollars of Puerto Rico's

19   money, and probably tens of millions of hours of the time of

20   the Court, the mediation team, and the parties have been

21   invested in getting to this point, where the lack of a

22   sufficient number of members supporting the conference version

23   in one house of the legislature appears to be the principal

24   obstacle to bringing the proposed Plan of Adjustment before

25   this Court for consideration as to whether it can be

1   confirmed.  Now there is another proposal that may require

2   further negotiations and delay.

3         I will be frank with you.  My patience is wearing

4   thin.  I'm not convinced that further delays are in the

5   interest of Puerto Rico.  Puerto Rico is at the risk of losing

6   an opportunity to cut its debt under the protection of Title

7   III and build a road forward.  None of us has another four or

8   five years for a do-over, and least of all the people of

9   Puerto Rico.

10        If there are no prospects for prompt consideration of

11  the Plan with a viable mechanism for implementation in the

12  near term, the Court may be forced to consider whether the

13  Title III PROMESA proceedings for the Commonwealth, ERS, and

14  the PBA, and the proposed Title VI proceedings -- well, the

15  Title VI proceedings that have been filed for PRIFA and CCDA

16  should be dismissed.  If that were to happen, the Oversight

17  Board would not go away, but the protection of the automatic

18  stay would be lost.  Creditors could commence proceedings in

19  countless courts, in chaotic efforts to collect the monies

20  that have not been paid, and the Commonwealth would be facing

21  hundreds of millions more in lawyers' fees and other expenses.

22  It is hard for the Court to see how that situation could

23  benefit Puerto Rico's citizens and retirees, moving the

24  Commonwealth to a better economic position in the near future.

25        Before I begin calling on the Oversight Board and the

1    elected government representatives for status reports and

2    information as to whether there are any viable alternative

3    courses of action to the currently proposed Plan and

4    conference version of the House Bill, I would like to take a

5    moment to verify that the principals whom I've invited to

6    participate in this conference are, in fact, with us.

7         Is Chairman Skeel of the Oversight Board present?

8    Would you please unmute and respond?  You have to unmute on

9    both your phone and the Court Solutions dashboard.

10         (No response.)

11         THE COURT:  Is Executive Director Jaresko of the

12    Oversight Board present?

13         MS. JARESKO:  Yes.  This is Natalie Jaresko, and I am

14    present, Judge.

15         THE COURT:  Good morning.

16         MR. SKEEL:  I'm David Skeel.  I'm present as well.

17    Sorry.  I was having trouble unmuting.

18         THE COURT:  Thank you both.  The unmuting can be

19    difficult.  Thank you for confirming that you are here.

20         Is the Honorable Governor Pierluisi present?

21         GOVERNOR PIERLUISI URRUTIA:  Good morning, Your

22    Honor.  I am present.  This is Pedro Pierluisi.

23         THE COURT:  Good morning, Governor.  Thank you for

24    being present.

25         Is the Honorable Senate President Dalmau Santiago

1    present?

2          You have to unmute both your telephone and the Court

3    Solutions dashboard if you're using the computer interface.

4          (No response.)

5          THE COURT:  Is the Honorable Speaker of the House

6    Hernandez Montanez present?

7          HON. HERNANDEZ MONTANEZ:  Good morning, Your Honor.

8    Speaker of the House of Representatives Rafael Hernandez

9    Montanez is present.

10          The COURT:  Good morning.  Thank you, sir.

11          Senate President Dalmau Santiago, are you present?

12          (No response.)

13          THE COURT:  At this point, I can't tell whether there

14   is trouble with the telephone or if he is not yet present.

15          Ms. Ng, can you tell from the appearance dashboard

16   that you have?

17          MS. NG:  Judge, what was the name again?  Martinez --

18          THE COURT:  No.  Dalmau Santiago.  That's the last

19   name.  So the first is D-a-l-m-a-u, and the last is Santiago.

20          MS. NG:  Give me a second.

21          I don't see anybody on with the last name of

22   Santiago.  Judge, I don't see anybody with the last name of

23   Santiago.

24          THE COURT:  Thank you.

25          I believe that his Informative Motion indicated that

1   he might be present with his attorneys.  Are counsel for the

2   Senate President on the line?

3           If someone representing the Senate President is on

4   the line, would you please unmute yourself and identify

5   yourself?

6           If you will be patient with me --

7           MS. NG:  Judge.

8           THE COURT:  -- the firm of -- yes?  Yes, Ms. Ng?

9           MS. NG:  I don't see anybody raising their hand or

10  trying to unmute themselves at all.

11          THE COURT:  All right.  The law firm of Quinones

12  Arbona & Candelario was indicated as the representative of the

13  President of the Senate.

14          MS. NG:  Judge.

15          THE COURT:  Is anyone from that --

16          MS. NG:  Judge, they're just getting on now.

17          THE COURT:  Pardon?

18          MS. NG:  They're just getting on now.

19          THE COURT:  All right.  Just getting on now.  Okay.

20          So who has just come on, Ms. Ng?

21          MS. NG:  Quinones.

22          THE COURT:  All right.

23          MS. NG:  Let me see if I can -- I unmuted them.

24  Maybe now --

25          THE COURT:  Mr. Edwin Quinones, are you on the line?

1           MR. QUINONES:  Yes, we are, Your Honor.  And the

2     President of the Senate, Jose Dalmau, is with us here at the

3     office.

4           THE COURT:  Okay.  Good morning, gentlemen.  I have

5     just made remarks, and I was verifying that the invited

6     officials were actually on the line.  Of course I've been

7     hopeful that our timing would be such that my remarks would

8     have been heard as well.

9           MR. QUINONES:  Your Honor, may I interject?  We did

10    hear your comments.  We got disconnected when the President of

11    the Senate was to introduce himself.  So we were able to hear

12    your remarks, Your Honor.

13          THE COURT:  Oh, thank you very much for confirming

14    that.  Was that Mr. Quinones speaking --

15          MR. QUINONES:  That is correct.

16          THE COURT:  -- just now?

17          All right.  Thank you very much.

18          So now I am going to begin by calling on the

19    representative of the Oversight Board.  Who will be speaking

20    as counsel for the Oversight Board?

21          MR. BIENENSTOCK:  Your Honor, this is Martin

22    Bienenstock.  I am joined by several colleagues, but at least

23    initially I'll be speaking for the Oversight Board.

24          THE COURT:  Thank you.  Good morning,

25    Mr. Bienenstock.  So my first question for you is where do

1   things stand from the Oversight Board's point of view, and

2   what are you seeking?

3       MR. BIENENSTOCK:   Okay.   Thank you, Judge.   And I

4   can't say strongly enough how much the Oversight Board

5   appreciates and endorses the comments Your Honor made at the

6   outset, because we see things -- the Board sees things the

7   same way.   While everyone wishes the currently proposed Plan

8   could be better, we do believe it is the best possible, and

9   any alternative is going to be worse for several reasons I

10  won't belabor the record with now given Your Honor's earlier

11  comments.

12      To answer Your Honor's question, I'll start with what

13  I think is the good news in the sense that the issues are very

14  narrow, and I just want to specify what we believe they are

15  and certainly what the Board has determined are essentials to

16  go forward with the currently proposed Plan of Adjustment.

17  And some of this I've explained and discussed in court,

18  especially in connection with the Disclosure Statement

19  Hearing, so Your Honor will probably find that you've heard

20  this, some of it before.

21      In connection with the pensions, which have been paid

22  in full for the last four to five years while other creditors,

23  many other creditors have not received a penny, the Oversight

24  Board did come to an understanding, first with the Retiree

25  Committee, and then its deal has actually been improved for

1   retirees through discussions with others, that if this

2   legislation is passed authorizing the new debt under the Plan,

3   which actually reduces debt by 70 to 80 percent, there would

4   be no further monthly benefit reduction.  And there hasn't

5   been a monthly benefit reduction.  So there will be none.

6          On the other hand, in the Enabling Acts and

7   subsequent legislation for TRS, the teachers, JRS, the judges,

8   there are accruals of further benefits.  We have referred to

9   eliminating those accruals as the freeze.

10         As I explained at the Disclosure Statement Hearing,

11  not freezing them imposes on the Commonwealth billions and

12  billions of dollars of future debt, which the Oversight Board

13  does not believe can be afforded and is sustainable, and was

14  one of the primary reasons that financial distress occurred in

15  the first place.  Now, if in the future things are better, you

16  know, that's another story, and future governments and boards

17  can deal with it.  But for now, the Oversight Board is firm

18  that there must be a freeze in order to go forward with a

19  feasible plan.  And, additionally, in some instances, there

20  are cost-of-living adjustments in the statutes which have to

21  be terminated.

22         Under Puerto Rico law, it's been our understanding

23  that those are all -- even though they're in statutes, they

24  are, according to the Puerto Rico courts, contractual

25  obligations, and we have dealt with them accordingly in our

1    Plan.

2            Now, there are two batches of issues, very brief,

3    that pertain to what I just discussed.  In terms of the

4    legislation, we need legislation that not only does not try to

5    eliminate the freeze, but is not ambiguous.  And we are not

6    sure, given how things are moving in real time, and everything

7    needs to be translated in real time, et cetera, we are not

8    sure whether there are still efforts afoot to eliminate the

9    freeze or simply to take out language in the legislation that

10   the House passed that makes crystal clear that the freeze is

11   in place.  And by taking it out, it creates the ambiguity

12   going forward of, well, it was taken out because maybe the

13   freeze will not be in place.

14           So the Oversight Board absolutely requires what the

15   House passed, which was language that makes crystal clear that

16   while there will be no monthly benefit reduction, the freeze

17   and the elimination of the cost-of-living adjustments will be

18   in place and is not subject to ambiguity.

19           Now, I mentioned there are two batches of issues.

20   I've just covered the first.  The second issue, which is not

21   an impediment to going forward with the Plan, is that some

22   parties have objected to the freeze as a matter of law, and

23   they've objected in the confirmation objections.  The Board is

24   not saying that it would not go forward unless those

25   objections are withdrawn.  They are legal objections, and the

1   Board totally understands that it will have to give the Court

2   good reason to overrule them at confirmation. So that is not

3   an issue. And people who want to challenge the freeze as a

4   matter of law, who have, you know, timely filed their

5   confirmation objections can obviously do so. We are not

6   taking issue with that.

7        So, to our knowledge, that is the big issue. Now, as

8   Your Honor mentioned earlier, the Board had asked for, or said

9   that it would be asking for an adjournment of the confirmation

10   hearing and the deadlines to go along with it. And one of the

11   primary reasons for that, until we know if we're going to have

12   the legislation we need, is that if we don't get the

13   legislation by November 8, or possibly an earlier time, there

14   are termination fees that will accrue in favor of some of the

15   PSA parties, the Plan Support Agreement parties.

16        We'd rather not, obviously, saddle the Commonwealth

17   with those fees if they can be avoided. And the only other

18   way we could protect the Board in the process is to withdraw

19   the Plan, which would trigger the fees. So that's why we

20   wanted to ask for an adjournment.

21        We also wanted to ask for an adjournment because our

22   read of the statements that were reported from the various

23   legislative leaders made it appear that it was -- in their

24   words, it was over, and, therefore, we wanted to immediately

25   shift to consulting with the parties who had agreed to the

1    Plan to see if we could all agree on an alternate not

2    requiring legislation.  And we did not want to waste any time

3    in doing that.

4         But that's -- and I just want to also add one or two

5    items.  We appreciate that everyone who is participating is

6    participating because, in their view, they are acting in the

7    best interests of their constituencies and the people who, in

8    many cases, are their constituencies, and the Board respects

9    that.

10        The Board, as Your Honor and all the parties know,

11   has its statutory mission of fiscal responsibility and market

12   access, and has weighed everything, and has certainly given

13   primary importance to the retirees and their dignified

14   retirements.  And that is why they have been paid without

15   reduction from the beginning, while the bondholders, as a for

16   instance, have not received one penny in the last four to five

17   years.  And we put together a plan to maintain no monthly

18   benefit reduction for the retirees, while everyone else is

19   suffering major reduction.

20        So, regrettably, we cannot satisfy everyone, but we

21   under -- but we truly believe that this is the best we'll be

22   able to offer for the retirees, because if we have to go back

23   and do it again, and compensate creditors for not having

24   legislation and for the further delay, et cetera, then the

25   money has to come from somewhere, and somehow or other the

1   Commonwealth is going to have that much less resources to

2   build its economy, et cetera.

3           So we are really at the point where we think the best

4   is on the table, and not going forward gives the Commonwealth

5   something less than what there is now, even though the people

6   currently standing in the way -- and we respect what they're

7   saying and their motives, that they want to do better, but we

8   don't think there is a better.  There's only a worse if we

9   don't go forward with the current Plan.

10          I just want to also mention that, as Your Honor knows

11  from the roll call, the Board's executive director, Natalie

12  Jaresko, has a live line and can respond, and is prepared to,

13  to any questions the Court has, as is the Board's chairman,

14  Professor David Skeel, and several board members.  Dr. Betty

15  Rosa, Antonio Medina, Andrew Biggs, possibly Justin Peterson

16  are on the listen-only lines, and Arthur Gonzalez, as soon as

17  he finishes his class, also plans to join.  This is of primary

18  importance obviously to the Oversight Board.

19          So the bottom line, Your Honor, getting back to the

20  Court's question, is we need unambiguous legislation, we need

21  what the House passed that does not even create an ambiguity

22  as to the freeze or the COLAs; and absent that, we reaffirm

23  our request to the Court to consider an adjournment so that --

24  of at least the deadlines for filing things, so that we don't

25  have to withdraw the Plan and trigger the termination fees I

1  mentioned.

2       And obviously I want to answer any Court -- questions

3  the Court has, but that was all that I had, Your Honor.

4       THE COURT:  Thank you.

5       I'd like you to explain further the relationship

6  between the requested adjournment or stay of deadlines and the

7  November 8th date in the PSA.  So one question is:  How does

8  an adjournment of the confirmation hearing affect the trigger

9  point for the fees; and the second question is, is there a

10  point that is related to confirmation of the agreed Plan at

11  which the Plan goes away with the agreed benefit reductions

12  and everything else, and the fees are also incurred, but

13  that's a different point in time?

14       MR. BIENENSTOCK:  Sure, Your Honor.  If it's okay, I

15  happen to be sharing this phone with my partner, Brian Rosen,

16  and if it's okay, he'll respond to both those questions.

17       THE COURT:  Thank you.

18       MR. ROSEN:  Your Honor, this is Brian Rosen.  I'm not

19  clicking on the dashboard, because Mr. Bienenstock is already

20  in.

21       Your Honor, pursuant to the GO-PBA Plan Support

22  Agreement, there are several opportunities for termination of

23  the Plan Support Agreement.  One of them is in the event that

24  the legislation that is required and acceptable to the Board

25  is not enacted prior to the commencement of the confirmation

1   hearing.  So, as Mr. Bienenstock said, if it were not done

2   prior to the commencement on November 8th, that would give

3   rise to a termination right, and thus the fees.

4        Another opportunity, Your Honor, would be if the Plan

5   of Adjustment effective date does not occur by December 15th.

6   However, the Oversight Board has the opportunity to extend

7   that date unilaterally to January 31st of 2022.

8        There is one other opportunity for termination by the

9   PSA creditors, and that would be arguably, Your Honor, if

10  there were a breach of the covenant in the Plan Support

11  Agreement itself, and one could argue, one could assert that

12  the withdrawal of a plan of adjustment that is currently on

13  file and consistent with the Plan Support Agreement were to be

14  withdrawn.

15       So that's why we believe it's in everyone's interest

16  that there be an adjournment of the commencement of the

17  confirmation hearing, so that none of those opportunities are

18  triggered, and all we are left with at that point, Your Honor,

19  is the back end date of January 31st, 2022.

20       THE COURT:  Thank you.

21       MR. ROSEN:  You're welcome.

22       THE COURT:  Is the Board -- if I were to ask Judge

23  Houser and the mediation team to have conversations with key

24  parties in an effort to avoid derailing the scheduled

25  confirmation proceedings, would the Oversight Board

1   participate in those conversations in good faith?

2           MR. BIENENSTOCK:  Your Honor, this is Martin

3   Bienenstock.  The answer is of course, but I want to add one

4   thing.  The Oversight Board does not have additional

5   consideration to put on the table, but subject to that, I

6   mean, if we're talking about wordsmithing, et cetera, or

7   things that the Oversight Board can do, I mean, it wants to do

8   anything it can to be able to ask Your Honor to confirm the

9   Plan.  Of course it will participate in good faith.

10          THE COURT:  Thank you.  Do you see any possibility of

11  confirming a plan without legislation and in the near future?

12          MR. BIENENSTOCK:  Your Honor, could you repeat the

13  question?  I'm not sure I caught every word.

14          THE COURT:  If legislation is not passed, do you see

15  any prospect for being able to bring a plan forward for

16  successful confirmation in the near future for these entities?

17          MR. BIENENSTOCK:  Your Honor, the answer is yes,

18  probably, and I say that because we have a firm belief, that I

19  believe parties are familiar with, that -- we know for a fact

20  that the only reason the legislative requirement is in the

21  Plan is creditors asked for it.  We would have liked to have

22  had it, but it's not critical.

23          Now, we know government parties take different

24  positions, and that would be litigated in confirmation, but we

25  do think there are alternative plans that will not require

1    legislation.  Obviously, because of the number of parties, and

2    Your Honor is familiar with the massive litigation that's been

3    stayed, you know, with the monolines, with the General

4    Obligation bondholders, and others in connection with this, it

5    will require considerable time speaking to all these parties.

6         So when Your Honor says "in the near term," it would

7    sort of be in the near term, but given that we all know we are

8    running up against Thanksgiving, Christmas, New Year's, we're

9    probably talking about the following year.

10        And I would also say, if I might double back for just

11   a second, while as I said, you know, the Board will

12   participate in whatever mediation in good faith, but we would

13   obviously ask the Court to adjourn the deadlines, starting

14   with today's, for filing declarations and things of that sort

15   pending any type of mediation or whatever process the Court

16   might direct at the end of this hearing.

17        THE COURT:  Well, if I were to do that, it seems to

18   me that would make impossible the schedule for confirmation in

19   the time frame that has been set aside, and believe me, I had

20   to put a lot of other court events with respect to other

21   matters in spaces around the place that I have preserved for

22   this.  So, you know, I am pushing to keep focus on the time

23   that is available, and to continue preparations so that we can

24   be ready at that time if everything else can be brought

25   together for that timetable.

1          So that is why, as of now, the Court is not only not

2   inclined to move the hearing date itself, but also not

3   inclined to change the deadlines in the run-up to the

4   confirmation hearing, with the possible exception of the

5   government's objection filing, which is the subject of an

6   application by AAFAF.  So I wanted to make that clear, that I

7   have concerns about both keeping the confirmation hearing date

8   and being able to be ready for it, which are, of course,

9   related.

10          MR. BIENENSTOCK:  Your Honor, this is Martin

11  Bienenstock.  If I may just provide one comment in respect of

12  that.

13          It might be possible to speak in terms of a very

14  short time for mediation, and -- in terms of a number of days,

15  and, also, if the hearing, the confirmation hearing doesn't

16  start on November 8 -- and I'm not saying it shouldn't or it

17  couldn't if we have a very short adjournment to accomplish

18  whatever might be accomplished to get the legislation over the

19  finish line -- probably if the confirmation hearing were to

20  start a few days or even a week later, we believe we could

21  probably put on the full case in the time Your Honor allotted.

22  I can't absolutely promise, but I think there's a large

23  likelihood that we could do that, if that's helpful.

24          THE COURT:  Thank you.  That is interesting to hear.

25          So I do not have specific questions at this point for

1  Professor Skeel or Executive Director Jaresko, but if either

2  of them would like to make a comment before I call on the

3  Governor and his representatives, this would be the

4  opportunity.

5        Professor Skeel, or Executive Director Jaresko, if

6  you would like to speak, please unmute and state your name.

7        MR. SKEEL:  This is David Skeel.  I don't think I

8  need to speak.  I suspect that our executive director, Natalie

9  Jaresko, will want to say at least a few words.

10        MS. JARESKO:  Thank you, Professor Skeel.

11        THE COURT:  Thank you.

12        MS. JARESKO:  Thank you, Judge Swain.  This is

13  Natalie Jaresko, the executive director of the Oversight

14  Board.

15        THE COURT:  Good morning.

16        MS. JARESKO:  I appreciate the opportunity to speak

17  this morning, and I appreciate your advice this morning.  I

18  think what is critical for the Board at this time is that we

19  have had weeks and weeks of discussions, negotiations in good

20  faith to achieve adequate legislation that would enable us to

21  effect the confirmation hearing, and eventually the Plan.

22        Unfortunately, at this point further discussions seem

23  to yield no improvements in those discussions, and we have

24  very little time left, as you yourself have noted.  So with

25  all due respect, one of the things the Board has sought in

1    terms of the adjournment is time to develop alternatives while

2    keeping the Plan alive, and even if mediation is one of those

3    alternatives in the short term, the time that that mediation

4    will take and the potential yield of success, from our

5    perspective, is uncertain at best.  And so we continue to ask

6    you to at least delay the deadlines for today, such that

7    whatever your -- whatever the decision is in terms of next

8    steps, we have the ability to pursue them without the pressure

9    of the costs and time and investment into the steps today that

10   are required on the calendar.

11          We would like to pursue this Plan, and we would like

12   to find a way to do so.  And we have done everything that the

13   elected leadership of the island has asked in the course of

14   these discussions, specifically because we understood how

15   important getting this done and getting it done on the basis

16   of this Plan that's in the court is for Puerto Rico.  And so

17   we ask your consideration in that respect.

18          Thank you.

19          THE COURT:  Thank you, Ms. Jaresko.

20          I will now turn to Governor Pierluisi and his

21   representatives.  Who will speak?

22          MR. RAPISARDI:  Yes.  Good morning, Your Honor.  It's

23   John Rapisardi of O'Melveny & Myers, and I am here on behalf

24   of the Governor and AAFAF.  And if I may, I'd like to make

25   some comments, Your Honor.

1          THE COURT:  Good morning, Mr. Rapisardi.  Please go

2    ahead.

3          MR. RAPISARDI:  Your Honor, I'd like to thank you for

4    the opportunity to address the Court on this most important

5    issue with respect to moving the Plan process forward, and I

6    couldn't agree more with the words of wisdom that you've

7    expressed at the outset of this hearing this morning.

8          As you noted, Your Honor, we filed an informative

9    motion last night summarizing the recent events and concerning

10   the status of House Bill 1003.  I'm not going to repeat

11   chapter and verse what we set forth in that motion other than

12   to say that the entire government, the executive branch and

13   the legislative branch, take this process extremely seriously,

14   and understand that time is of the essence, and that we all

15   are working tirelessly and in good faith to get the

16   legislation required by the Plan of Adjustment across the line

17   as quickly as possible, and to preserve the confirmation

18   hearing date of November 8th.  Your Honor, we don't want to

19   see that date moved.

20         Now, Your Honor, I'm pleased to report -- and you saw

21   the Informative Motion that was filed by the Speaker this

22   morning -- that the government parties have reached agreement

23   on various amendments to be included in the legislation.  I'm

24   not going to go through those amendments chapter and verse,

25   because I haven't had a chance to study them and how they've

1    been generally described by the Speaker.  And they need to be

2    translated.

3            If these amendments, though, Your Honor, as I

4    understand, are incorporated into the House Bill, the

5    government is confident the majority of votes in the House of

6    Representatives and the Senate will vote to approve the

7    measure as ultimately adopted.  This, Your Honor, will

8    represent an unique historic moment for Puerto Rico, as what

9    could be the most important piece of legislation in Puerto

10   Rico's constitutional history.

11           In light of the likely amendments, it is critical to

12   underscore that the proposed fees of the defined benefit plans

13   for Puerto Rico's teachers and judges remain outside the

14   purview of the House Bill.  The House Bill does not and will

15   not implement or block the fees in any way.  Instead, the

16   House and the Oversight Board is seeking -- as Mr. Bienenstock

17   alluded to, is seeking to implement the defined benefit freeze

18   under the terms of the Plan.  Now, whether it can do so

19   legally will be an issue decided by this Court in the face of

20   objections filed by the Union.

21           Now, I would caution Your Honor with respect to

22   Mr. Bienenstock's remarks about absolute certainty with

23   respect to the ultimate passage of legislation.  Your Honor,

24   it is very clear from what we've been saying that this bill

25   deals with pension cuts, that the bill is conditioned on no

1    pension cuts, period.  End of story.

2           The more we delve into what that constitutes, what it

3    could possibly mean, and there's a potential end run around

4    that Bill authorizing legislation, Your Honor, that's where we

5    get in trouble.  And I would submit, Your Honor, that

6    ultimately what is before this Court, and this Court is --

7    first of all, Your Honor, this government and the Governor is

8    not going to advocate a bill that, you know, ten minutes

9    later, after a confirmation order is signed, that it's going

10   to try to undermine that legislation.  Absolutely not.  Nor,

11   Your Honor, will I expect that when you see the legislation of

12   the Bill, you will be -- have to decide for yourself that that

13   Bill is enforceable, and you will have to make findings of

14   fact.

15          And, Your Honor, I submit that within those findings

16   of fact, we can get the Board comfortable that there will be

17   no end run around the legislation that is ultimately passed by

18   both houses and signed into law.  I just caution Your Honor

19   that when we get into this debate about absolute certainty,

20   that's going to get us in trouble, and I'd like to avoid that.

21   I'd like to think that we are all working tirelessly together

22   in good faith to push this along.

23          Your Honor, now is the time to end the Commonwealth's

24   Title III case without additional delay.  The legislative

25   process, Your Honor, must be duly respected, and all parties

1    should briefly pause until that process concludes before

2    making any abrupt decisions that will scuttle the important

3    progress made to date.  And what I mean, briefly pause, I'm

4    urging the Board not to withdraw the Plan, not to adjourn the

5    confirmation hearing date of November 8th, but allow the

6    legislature -- which yesterday leaders came together, which I

7    will say in an unprecedented way, to forge a consensus.

8           Although the Board has repeatedly advised the

9    legislature that it is not going to accept any change or

10   modification to the Bill, as initially accepted by the Bill --

11   I urge the Board to allow the legislature to express its will

12   within very short order.  And let's keep this November 8th

13   hearing in place, and let's avoid drawing lines in the sand

14   and demanding absolute certainties.

15          Once the final legislation is enacted and presented

16   to the Oversight Board, the Board can then determine how to

17   proceed.  It holds the ball here, Your Honor.  It's the only

18   party that can propose the Plan of Adjustment, and, therefore,

19   it is in its absolute discretion.

20          But as alluded to by Mr. Bienenstock, we have made so

21   much progress.  Your Honor, in the face of the battles we have

22   had with the Board in court before you, every step of the way

23   we have tirelessly -- at the urging and beckoning of the

24   government, we have tirelessly worked together to move this

25   Plan of Adjustment forward.  And if we had not done so, Your

1  Honor, we would not be at -- everyone is using the football

2  analogy -- on the one yard line.  And we are on the one yard

3  line, and we just can't fumble the ball, Your Honor.

4          In the meantime, Your Honor, we implore all sides to

5  continue the process of what has gotten us to the threshold of

6  confirmation, which is collaboration and cooperation.  Please,

7  Your Honor, and the Board, I implore the Board, allow the

8  legislature, with deep dispatch, to express its will at this

9  most crucial juncture, keeping in mind that we have to get the

10 confirmation hearing going on November 8th, and there should

11 be no delay of that hearing.

12          Thank you, Your Honor.

13          THE COURT:  Thank you.  Mr. Rapisardi, are you

14 suggesting that if there is to be additional engagement with

15 mediation, that that should not precede or go in tandem with

16 the legislative action given what the Board has said about

17 issues with respect to the legislation insofar as the Board

18 understands it right now?

19          MR. RAPISARDI:  Your Honor, can you just repeat that

20 again?  I'm not sure I understand the question.

21          THE COURT:  I was afraid you might ask me to repeat

22 it.

23          So the Board said that there are certain provisions

24 as to which it would want certainty that the legislation isn't

25 going to try to change, and that is the benefit freeze.  But

 1   then there may also be issues of language, and as you

 2   indicated yourself, Mr. Rapisardi, there may be concerns about

 3   deliberate ambiguities or possible end runs or whatever.

 4           You have asked me to let the legislative process go

 5   forward, and, as I hear you, you seem to be essentially

 6   saying, well, let's see what the legislature passes and then

 7   have the Oversight Board react.

 8           MR. RAPISARDI:  Yes.

 9           THE COURT:  I am asking you whether it would be

10   beneficial to, or whether you would oppose engagement of the

11   mediation team with the parties, including legislative

12   representatives, in the crafting of this Bill, so that -- so

13   as to seek to avoid a situation in which a bill is formalized

14   and passed that includes language to which the Oversight Board

15   will not agree.

16           MR. RAPISARDI:  Right.  I understand, Your Honor.

17           I think we are at the point now where I would

18   recommend -- and I know it's like saying no, but we are at the

19   point where the legislature has met, is very close, has agreed

20   on the terms and the elements.  That can happen within 24

21   hours, all right, Your Honor.  And at that point, then the

22   Board can take a look at this legislation, and, if need be, if

23   the Board has issues with it, then I would say of course we

24   would invite mediation to help resolve any issues the Board

25   has.  But I would rather let the legislature finish what it

1  has been charged to do.

2       My concern is that if we introduce the element of

3  mediation as of right now, it's just going to further delay

4  the process and confuse the process.  We're so close with

5  respect to proposing that legislation to the Board, and we

6  want to have more side bar, calls and conversations with the

7  Board and with Proskauer to get them comfortable with the

8  legislation.

9       THE COURT:  Thank you.

10      Does the Governor or any other representative of

11  AAFAF wish to speak further before I call on President Dalmau?

12      GOVERNOR PIERLUISI URRUTIA:  Your Honor, this is

13  Pedro Pierluisi, the Governor of Puerto Rico.  I'll be very

14  brief.

15      I basically support every word that Mr. Rapisardi

16  just uttered.  I will just add the following.  The legislative

17  process should be respected.  The democratic process should be

18  respected.  You are talking about two -- basically two parties

19  in Puerto Rico coalescing and coming up with bipartisan

20  legislation.  Take my word, that's not easy.  That, in and of

21  itself, shows the importance that Puerto Rico's political

22  leadership is giving to this matter.

23      And Mr. Rapisardi talked about 24 hours.  Actually,

24  it is until the end of the day tomorrow that I believe it is

25  very likely that you're going to have the legislation we all

1   need approved by both the House and the Senate.  It's also

2   very likely that I will be signing it.

3           And as I see this, and as I've been saying it in

4   meetings with the Board, as well as publicly, the crucial

5   component of this legislation is that it enables the issuance

6   of the restructured bonds in accordance with the proposed

7   Plan.  Let's not lose sight of that.

8           We acknowledge and thank the Board for finally saying

9   that there's not going to be any pension cuts, but let's not

10  cross the bridge until we get to it.  Once this legislation is

11  in place, as Mr. Rapisardi well said, there is still the

12  outstanding issue of whether the Court can impose the proposed

13  reform of the Teachers Pension Plan and the Judges Pension

14  Plan of Puerto Rico without legislation.

15          If it turns out that that can be done, we are a

16  society of law and order, but if it turns out that we need

17  legislation for that purpose, I envision that definitely there

18  will have to be either a formal or informal mediation process

19  to accomplish that goal.  But we don't need to cross that

20  bridge yet.

21          That's why I joined in Mr. Rapisardi's request for

22  you to just give a bit more time to our legislative assembly

23  before adjourning the case, the confirmation hearing.  It's

24  been too long.  And I agree, nobody should be drawing lines in

25  the sand, but, rather, we should all be coalescing within

1   reason.

2           Thank you so much, Your Honor.

3           THE COURT:  Thank you so much, Governor Pierluisi.

4           I will now turn to the President of the Senate and

5   his representatives.  Who will be speaking for the Honorable

6   Jose Luis Dalmau Santiago?  Remember, you need to unmute

7   yourself on the dashboard and your phone.

8           Mr. Quinones, are you there?  You need to unmute your

9   phone and your dashboard.  Thank you.  Mr. Quinones?

10          MR. VEGA RAMOS:  Hello.  Your Honor?  Your Honor, do

11  you hear me now?

12          THE COURT:  Yes, I do.

13          MR. VEGA RAMOS:   My name is Luis Vega Ramos.  I'm an

14  attorney represent -- part of the representative legal team of

15  the Senate president.  I'm here with Mr. Edwin Quinones,

16  Victor Candelario and Joseph Feldstein.  We're also part of

17  the legal team on behalf of Quinones Arbona & Candelario.  And

18  the Senate President is here.

19          So I will be presenting the statements that you asked

20  for, and of course my colleagues will interject if need be.

21          THE COURT:  Thank you.  Would you, just before you

22  begin, spell your name?  Because I don't think I have it on my

23  list, and I want to make sure that the transcript is correct.

24          MR. VEGA RAMOS:  My last name is Vega, V-e-g-a.

25          THE COURT:  Yes, and your first name is?

1          MR. VEGA RAMOS:  Luis, L-u-i-s.

2          THE COURT:  And you are of the Quinones Arbona &

3     Candelario firm?

4          MR. VEGA RAMOS:  I am an independent attorney, but we

5     are working jointly on behalf of the Senate President in this

6     case.

7          THE COURT:  Thank you.  You may proceed.

8          MR. VEGA RAMOS:  Thank you, Your Honor.

9          First of all, thank you for the opportunity to

10    address the Court, and for the important words that you began

11    the hearing with in terms of framing the relevance of what

12    we're trying to accomplish here, which we understand.

13          I want to be as respectful and economical with the

14    Court's time as possible.  However, there are some relevant

15    facts that we want to go over with -- go over, particularly

16    with the recent developments in terms of negotiations and

17    conversations within the leadership of the legislative bodies

18    and the executive branch regarding the legislation that we're

19    talking about.

20          But, first of all, I would like to point out the

21    informative motion that we presented yesterday, which

22    particularly presents a series of relevant facts that need to

23    be understood and considered as we move forward to produce a

24    solution that permits the political branches of Puerto Rico to

25    go through the process of enacting -- the constitutional

1    process of enacting legislation and present it to the Governor

2    of Puerto Rico so that he can consider that legislation.

3         As we presented in our motion, the Senate President,

4    Jose Luis Dalmau, who is also present in this meeting, in this

5    hearing, has been active with other key governmental players

6    for several months in trying to come up with the legislation

7    that can be passed.  And the exhibit that we presented with

8    our motion shows that he has been dealing in good faith in

9    trying to procure the best interests of this process and of

10   the people of Puerto Rico, including the particular classes

11   that are concerned, particularly retirees and the pensioners.

12        As part of that process, Senator Dalmau presented a

13   couple of letters to the Fiscal Board presenting his important

14   ten point agenda, and further on asking several procedural

15   questions of the Board before enacting legislation.  Remember,

16   both the House and the Senate are political bodies.  Even if

17   the president of the Senate is a leader of the institution,

18   each member of the Senate and also of the House has its

19   individual right to vote his or her conscience.  And each vote

20   is exactly presented by that member of each of the Houses of

21   Parliament, in this case, the Senate.

22        So what the Senate president has done has been to

23   procure a process which permits a version of the legislation

24   to obtain the majority needed to be passed.  And remember that

25   in the House of Representatives, there is an absolute majority

1   for one of the political parties, but in the Senate, the

2   situation is rather different, because even if the parties

3   agree that represents -- the Senate President is the majority

4   party in the Senate, the reality is that there's no absolute

5   majority.  No party, no single delegation has the 14 votes

6   needed to enact legislation on the Senate side.

7           So as the Governor and the Governor's representative

8   was saying, in order to pass legislation, in the Senate

9   particularly, more often than usual -- actually, all the time

10  coalitions are needed to reach the 14 votes necessary to pass

11  that legislation.  In that process it was that the Senate

12  president insisted on having a clear position from the Board

13  with regard of his ten point agenda and with regard to some

14  procedural questions that were put forth.

15          The answer that we received from the Board, quite

16  frankly, in our opinion, wasn't enough, wasn't enough

17  information.  Basically, we were offered an explanation that

18  we have all the necessary information to enact legislation.

19          So the Senate proceeded, on October 6, to approve

20  legislation, and we did by a majority of 19 votes.  And I want

21  to stress that, because 19 votes is more than two-thirds of

22  the membership of the Senate, so there is a political will.

23  And I'm talking political in terms of policy-making will, of a

24  majority of senators to try to reach out and -- to try to

25  reach an end to this process and to enact legislation.  And

1     that was proven October 6 when more than two-thirds of the

2     senators of the Senate of Puerto Rico voted to approve that

3     version of House Bill 1003.  That version would have the votes

4     again.

5          The version that clearly doesn't have the votes is

6     the conference committee version that is -- that was approved

7     by the House of Representatives, but the Senate president,

8     exercising his leadership faculties, has consulted with

9     diverse delegations and the independent senator on whether or

10    not that conference report can be approved.  And the fact of

11    the matter, as we said yesterday in our informative motion, is

12    that the votes are not there, Your Honor.  There will not be

13    14 votes for the conference report.

14         And as a matter -- as a matter of honesty, that's

15    what the Senate president told the people of Puerto Rico and

16    stated publicly after his consultations.  He is clear and he

17    thought correctly that everybody should know that, in the

18    foreseeable future, it's not likely that that version, the

19    committee report, the conference committee report version of

20    the Bill will get the 14 votes needed in the Senate of Puerto

21    Rico.

22         Having said that, we have been in continuous

23    negotiations.  The Senate president has been actively

24    conversing with the leadership of the Senate from the other

25    parties, has been speaking with prominent House members and

1   leadership, with the executive branch.  And after we filed our

2   motion, our informative motion yesterday, I mean, and in

3   supporting many other things that have been stated by the

4   executive branch representatives in this hearing, some

5   language has been agreed that would permit, in our opinion,

6   prompt passage of the Bill once those amendments are

7   introduced, because that language has been agreed upon by

8   leaders of both political parties who could make sure that we

9   get a majority both in the House and the Senate and the

10  executive branch.

11          So in that sense, what we would ask the Court to do

12  is to let the political process continue.  We seem to be very

13  close to getting legislation enacted in both houses.  The

14  Governor has already stated that he would be inclined to sign

15  that legislation.

16          So we do agree with the proposition that the

17  political process in Puerto Rico be respected; that you let

18  the Senate and the House finish their process, and see if we

19  can agree on a particular -- sorry, a particular language so

20  that the 14 votes needed, 14 plus votes needed in the Senate,

21  and the 26 votes plus needed in the House are there, and we

22  can present the Bill to the Governor of Puerto Rico for his

23  potential signature.

24          We believe the process is very advanced.  As I said,

25  there has been a lot of goodwill or total goodwill on the part

1   of the Senate president.  He has just been exercising the

2   realities of political leadership.  We have seen a legislative

3   body that is very divided and that needs coalitions to enact

4   legislation, and that's exactly what has been done in the last

5   couple of weeks.

6           So we want to reiterate that we are ready to continue

7   participating in the process, and that we feel very confident

8   that, with the language that was agreed upon by the executive

9   branch, both delegations of the House of Representatives that

10  are needed to approve legislation, and both delegations of the

11  Senate of Puerto Rico that are needed to approve legislation,

12  we can move this process forward and enact a legislation in

13  the next couple of days.

14          THE COURT:  And do you believe that that legislation

15  is consistent with the expressed views of the Oversight Board

16  as to what the Oversight Board would be prepared to propose?

17          MR. VEGA RAMOS:  We believe that legislation is

18  substantially close to what the Board has been proposing.  As

19  counsel for the Governor said, we should let the legislative

20  process finish, and the Board can always express its position

21  and have other alternatives.  But we do believe that the Bill,

22  as it would end up with proposed amendments that have been, in

23  principal, informally agreed upon by the legislative and the

24  executive branch, are in line to permit that this process

25  moves forward.

1              THE COURT:  Thank you.

2              Would the Senate president participate in

3     confidential work with the mediation team were the Court to

4     order that that take place in the near future?

5              HON. DALMAU SANTIAGO:  Yes, Your Honor.

6              THE COURT:  Yes?

7              HON. DALMAU SANTIAGO:  Yes, Your Honor.

8              THE COURT:  Thank you.  Is that President Dalmau

9     himself?

10             HON. DALMAU SANTIAGO: Yes, Your Honor.  Yes.  Jose

11    Luis Dalmau, President of the Senate.  I agree with what the

12    lawyer said to you, and agree to continue the process.

13             THE COURT:  Thank you.  Including confidential

14    mediation if the Court directs that?

15             HON. DALMAU SANTIAGO:  Yes.

16             THE COURT:  Thank you.  Is there anything further

17    that you would like to say before I call on the Speaker of the

18    House?

19             MR. VEGA RAMOS:  No, Your Honor, except thank you for

20    the opportunity to present our views.

21             THE COURT:  Thank you, sir.

22             I now turn to the Honorable Speaker of the House,

23    Rafael Hernandez Montanez, and his representatives.  Who will

24    be speaking for the Speaker of the House?

25             MR. MARTINEZ LUCIANO:  Good morning, Your Honor.

1   This is Jorge Martinez Luciano on behalf of the Speaker.  The

2   Speaker and co-counsel, Emil Rodriguez Escudero, are all on

3   the same line as I am.

4          THE COURT:  Excuse me, sir.

5          MR. MARTINEZ LUCIANO:  Yes.

6          THE COURT:  Excuse me, sir.  If you are all on the

7   same line, there is a problem of some interference.  Your

8   voice is not coming through clearly.  Is there a way for you

9   to speak into a receiver or something that might minimize

10  interference?

11         MR. MARTINEZ LUCIANO:  Yes, Your Honor.  I'm -- is it

12  better now?

13         THE COURT:  Yes.  Much better.  Would you start with

14  your name again, please?

15         MR. MARTINEZ LUCIANO:  Yes.  My name is Jorge

16  Martinez Luciano.  I am one of the attorneys for the Speaker

17  of the House.  I am here with the Speaker and my co-counsel,

18  Emil Rodriguez Escudero.

19         After listening to what the other --

20         THE COURT:  Sir, excuse me.  Sir.  Mr. Martinez, I'm

21  going to have to ask you to speak just a little bit slower,

22  because there still is -- this is better, but it's still

23  breaking up a little bit.  So if you would just slow down just

24  a bit, I think that would be helpful.

25         MR. MARTINEZ LUCIANO:  Sure, Your Honor.  It's just

1   that from our end, I don't get that interference, but sure

2   thing.  We will speak slower if that makes it better with the

3   interference that the Court is experiencing there.

4        What we wanted to restate is that as soon as the

5   October 14th letter was issued by the Oversight Board stating

6   what the Board's final offer on legislation they would consent

7   to would be, the Speaker immediately handed that letter and

8   discussed it with his delegation, as well with the minority

9   delegation, and moved swiftly with the legislation version of

10  House Bill 1003 which the Board has stated for the record that

11  they were amenable to its passing.

12       Of course we note that that Bill didn't have the

13  votes in the Senate.  Confronted with that, even though the

14  House had acted swiftly, we moved this weekend to try and meet

15  with Senate leadership coming from both major parties, as well

16  as with representatives from the executive branch.  And we

17  came up with the proposal that was filed as an attachment to

18  our informative motion of earlier this morning, which we can

19  pass within 24 hours.  We're ready to pass that, and that

20  version of the bill has the votes.  It should be passed in the

21  Senate as well.  And the Governor has already stated for the

22  record that he's inclined to sign the Bill.

23       So the House's position is that indeed it has already

24  acted swiftly on the Board's proposal.  It has acted swiftly

25  to try to seek consensus, and it's ready to go, ready to get

1   the Bill done as soon as possible, as soon as tomorrow.

2           THE COURT:  Thank you.  If this Bill were passed, and

3   if there still were not consensus with the Oversight Board, is

4   the Speaker willing to engage in confidential mediation?

5           MR. MARTINEZ LUCIANO:  If the Bill is passed and the

6   Board still has objections, yes, the Speaker would be willing

7   to engage in mediation, as ordered by the Court, of course.

8           THE COURT:  It does seem to me that the assent of the

9   Oversight Board, as the only party under PROMESA that can, in

10  fact, propose a Plan of Adjustment is a crucial factor here,

11  and I seem to be hearing that it is anticipated that the

12  legislation that has been devised is not fully responsive to

13  the concerns that have been laid out by the Oversight Board.

14          So while of course the Court respects the democratic

15  process and all of the work that has taken place by the

16  legislature and the executive branch, including through this

17  weekend, in terms of my scheduling and efforts to keep on

18  track a process for confirmation of this Plan, it sounds to me

19  as though you are not saying to me that, by the end of the day

20  tomorrow, you are necessarily confident that we can have a

21  schedule and a set of Plan and legislation that keeps us on

22  track.

23          Am I hearing you correctly?  It sounds like it's --

24          MR. MARTINEZ LUCIANO:  No.  Actually, the contrary.

25  No, Your Honor.  What we're saying is that we're ready to

1  move.  And I can speak for the House.  The House will pass

2  that tomorrow.  I cannot speak for the Senate.  Of course I

3  cannot speak for the Governor.  But I can speak for the House,

4  and the House's commitment is that if allowed to proceed, the

5  Bill will be approved tomorrow.

6       THE COURT:  All right.  Thank you.

7       Does the Speaker also wish to be heard himself?

8       MR. MARTINEZ LUCIANO:  Yes, Your Honor.  The Speaker

9  would like to be heard.

10       THE COURT:  Okay.  Mr. Speaker.

11       HON. HERNANDEZ MONTANEZ:  Thank you, Your Honor.

12  Speaker of the House of Representatives Rafael Hernandez

13  Montanez.  I just wanted to establish our clear position,

14  crystal clear.

15       Every time the House of Representatives, as an

16  institution, has compromised, we always deliver, and we will

17  deliver tomorrow a deal that's going to pass in the Senate and

18  in the House.  The way we see it, the amendments do not have

19  any fiscal impact.  They just clarify the doubts of the

20  members of the Senate.

21       And what we did during the weekend, we went -- after

22  we heard about the reality about there is not enough votes for

23  any delegation, we agree and we clarify the language with the

24  members of the New Progressive Party.  And then we went

25  directly to the President of the Senate and compromised with

1    them the amendments.  So they just -- the amendments just

2    establish the notifications that just have the clear -- the

3    clear position is there won't be any cuts to pensions.  That

4    is the issue.

5         There is a lot of doubts in the process.  We know

6    that, with the language that we pass, that will fix the

7    problem.  I believe these amendments do not affect the Fiscal

8    Plan, the Plan of Adjustment, and we'll finish this in at

9    least 24 hours.  So we will comply, we will grant our award

10   like always, and we are ready to pass this legislation in both

11   houses.

12        THE COURT:  Thank you very much, Speaker Hernandez

13   Montanez.

14        HON. HERNANDEZ MONTANEZ:  Thank you, Judge.

15        THE COURT:  Thank you.

16        Do representatives of any of the other parties in

17   interest wish to speak briefly before I turn to the mediation

18   team leader and then return to the Oversight Board?

19        MR. KIRPALANI:  Your Honor, Susheel Kirpalani.  If I

20   can be heard for the PSA creditors?

21        THE COURT:  Yes.  Good morning, Mr. Kirpalani.

22        MR. KIRPALANI:  Good morning, Your Honor.  Good

23   morning to everyone.  Judge, I'm going to be as brief as

24   possible.  And I've been asked to address the Court on behalf

25   of the initial PSA creditors.

1          Your Honor knows a year ago we filed a motion asking

2     this Court to impose a deadline on the Board to either

3     negotiate a new deal with us that's consistent with the PSA or

4     to dismiss the Title III cases.  We complied with Your Honor's

5     order.

6          We renegotiated the PSA consistent with the timetable

7     imposed, and our new Plan has been public since the spring of

8     this year.  It created a huge momentum for numerous other

9     creditors.  Meanwhile, the issues that continue to be

10    unresolved between the Board and Puerto Rico's elected

11    officials have been out there since May of 2017.

12         Judge, constitutional debtholders made their deal,

13    and we're prepared to live by it.  But there is only one deal

14    with the Board, and it has always been contemplated that it

15    would include legislation based on the model of the only Title

16    III Plan approved by this Court previously.

17         The Oversight Board and the Commonwealth need to

18    solve their issues.  None of them are new.  And they need to

19    come together through compromise, as we have done.  If they do

20    not, then there is no confirmable plan after all this time

21    over issues that have existed for years.

22         As Your Honor correctly noted at the outset of this

23    hearing, we would reserve the right to seek all available

24    relief under our bonds and applicable law, including the

25    alternatives outlined in our deadlines motion from last year.

1   With all due respect to the Board's concerns about paying

2   termination fees, I think this is a way to deflect attention

3   from the heart of what is before us all.  This is not what we

4   have been focusing on at all.  It is a tree and not the

5   forest, and we don't want to go down the road of

6   hypothetical scenario playing.

7        With respect to the Board's request for adjournment,

8   we do not support adjournment.  There is still two weeks

9   before the hearing was scheduled to start.  Deadlines exist

10  because they work.  All Your Honor's deadlines should hold.

11  They have resulted in people working around the clock to get

12  to here.

13       We have heard Mr. Rapisardi's comments and found them

14  most constructive.  I think he said, "we are at the one yard

15  line."  The only ones that can carry us across are the Board

16  and the elected officials.  The bondholders have not been part

17  of that discussion and have nothing to contribute to that

18  process.

19       Thank you, Your Honor.

20       THE COURT:  Thank you, Mr. Kirpalani.

21       Anyone else, speak your name promptly.

22       MR. GORDON:  Your Honor, Robert Gordon of Jenner &

23  Block on behalf of the Retiree Committee.  May I speak?

24       THE COURT:  Yes, Mr. Gordon.

25       MR. GORDON:  Thank you so much, Your Honor.  Thank

1   you for this opportunity to address the Court.  I will be very

2   brief.

3          Since reaching a Plan Support Agreement between the

4   Retiree Committee and the Oversight Board in June of 2019, the

5   Retiree Committee and its professionals have continued to work

6   collaboratively and diligently with not only the Oversight

7   Board, but also the Governor's office, AAFAF, and leaders of

8   the legislature to provide ideas and analyses for perhaps

9   amending and working within the structure of the Retiree

10  Committee's Plan Support Agreement, in an effort to bridge the

11  gap between the various parties and reach a consensual plan.

12         And we are grateful for the receptivity of the

13  legislative leaders to the input that we provided, which is

14  reflected extensively in the original House Bill 1003.  And we

15  are also grateful for the efforts that ensued thereafter that

16  have resulted in the version of House Bill 1003 that both the

17  Board and the House have indicated they would support.

18         I just want to, as the open issues -- just make one

19  point clear for the record, if I may.  The Retiree Committee's

20  mandate was to negotiate with respect to accrued pension

21  liabilities, and only accrued liabilities.  And that is what

22  we did.  In contrast to accrued pension liabilities is the

23  concept of a freeze, which deals with freezing prospective

24  pension benefits.  And this is, by definition, an issue that

25  affects active employees only, not retirees, and for that

1    reason, the Retiree Committee has never discussed or

2    negotiated the issue of pension freezes with the Oversight

3    Board or any other parties.

4         So that current issue, Your Honor, I just wanted to

5    make clear for the record, is not an issue that has been

6    advanced by the Retiree Committee at all.  We have nothing to

7    do with that issue, and have no position on that issue.  Our

8    only position is that we believe that the Board and the

9    legislature owe it to the retirees and other citizens of

10   Puerto Rico to work through the outstanding issues and come to

11   a solution that provides for a feasible plan that protects

12   retirees.  And we are happy to help all parties reach that

13   solution in any way we can.

14        Thank you, Your Honor.

15        THE COURT:  Thank you, Mr. Gordon.

16        In the interest of time, I am now going to turn to

17   Judge Houser and ask whether she wishes to make remarks.

18        HON. BANKRUPTCY JUDGE HOUSER:   I will only speak

19   very briefly, Judge Swain.  As you noted at the outset, and I

20   think must be emphasized, we have spent thousands of hours as

21   a mediation team working with the constituents to get Puerto

22   Rico to a place where a Plan of Adjustment has been proposed

23   that has significant support.  As Mr. Bienenstock did -- I do

24   not want to minimize the objections that have been filed, and

25   ultimately you will have to consider those objections, the

1  evidence presented, and make legal rulings with respect to the

2  confirmability of the Plan.

3        Virtually every agreement that is embodied in this

4  Plan was heavily mediated.  The parties perhaps, if they

5  could, would say that they were pushed mightily to see if we

6  couldn't be of assistance in getting the parties to the cusp

7  of what may be a confirmable Plan of Adjustment that has

8  significant benefit for the people of Puerto Rico.

9        As you've noted, there are significant debt

10  reductions, payment terms that are extended, with a not

11  insignificant portion of the debt that would be issued under

12  this Plan being done so on a contingent basis with respect to

13  the future performance of Puerto Rico.  It would be a shame,

14  in my opinion, for us not to be able to bring this Plan to you

15  for confirmation on the schedule that the parties requested

16  and that you have moved mountains to provide for them.

17        So the mediation team stands ready, as it has for the

18  last four and a half years, to be of assistance to the parties

19  in trying to resolve any last issues that remain before us.

20  So we are willing to do what the Court directs us to do, and

21  we are looking forward to being of assistance, if we can be of

22  assistance.

23        THE COURT:  First of all, I have to thank you, Judge

24  Houser, for all of the work of the mediation team, together

25  with all of the other parties over all of these years.  It has

1   been essential to getting us to this place of what

2   Mr. Rapisardi has characterized as the one yard line.  I

3   clearly believe that it would be beyond a shame for us not to

4   be able to go to a confirmation hearing on time where I will

5   be able to consider the merits of the parties' arguments and

6   evidence as to whether a significantly consensual Plan can be

7   confirmed.

8           The government and legislative parties who have

9   spoken have indicated that they are prepared to continue to

10  engage in discussions, including with the Oversight Board, and

11  produce legislation tomorrow.  It appears to me it is not at

12  all unexpected that there will -- that won't be conclusive of

13  the Oversight Board's concerns, and it is the Oversight Board

14  that has to determine whether the Plan will go forward.

15          And so in terms of a window for further work in the

16  most informed posture, and in light of the undertakings of all

17  those who have spoken today, including the political leaders,

18  to work with you, I am inclined to keep the current schedule

19  in place, with the possible exception of giving AAFAF until

20  noon on the 28th of October, which is this Thursday, to file

21  its objection or position paper, which would keep every other

22  aspect of the schedule in place pending word in a filing from

23  you, Judge Houser, on behalf of the mediation team on Tuesday,

24  the 2nd of November, as to whether you believe that after good

25  faith efforts, the confirmation hearing can move forward as

1   scheduled.

2          Is that an appropriate window, in your view, for the

3   work that you may need to do here?

4          HON. BANKRUPTCY JUDGE HOUSER:  Under the

5   circumstances, with confirmation scheduled to start on Monday,

6   November 8th, at 9:30, we'll certainly make that work, Judge

7   Swain.

8          MR. BIENENSTOCK:  Your Honor, may the Board be heard?

9          THE COURT:  In just a moment.  I do want to front my

10  thinking as to the next step after that.

11         If Judge Houser were to indicate that the hearing

12  cannot move forward as scheduled, then I would anticipate

13  requiring an informative motion from the Board setting forth

14  its position as to whether there can be a confirmation

15  proceeding with respect to a confirmable version of the Plan,

16  and what sorts of amendments, and whether resolicitation would

17  be necessary, and other potential alternative methods.

18         So I wanted to put that out front, and obviously that

19  would include the possibility of whether we would have to give

20  up and look at potential dismissal of the cases, which I

21  certainly don't want to have to do, but I think at this point,

22  four and a half years out, we need to have it on our radar

23  screens.

24         So, Mr. Bienenstock.

25         MR. BIENENSTOCK:  Thank you, Your Honor.

1           The comments from the Governor and the Senate confirm

2     the Board's worst fear, which is that they simply intend to

3     plow ahead with what they've been doing this weekend.  As I

4     mentioned earlier, the Board has tried to keep track of it in

5     real time and get translations.  It would be completely

6     unacceptable, if the Board's understanding is correct, and the

7     Board would not be able to advance the Plan, because it would

8     not be able to say that it believes it's feasible going

9     forward.

10          There's simply no change in what they're doing.  The

11    Board made a simple -- a request for legislative authorization

12    of debt, and it's being used instead to tell the Board that

13    there are other changes to the Plan, et cetera, which, as Your

14    Honor said, only the Board can propose a plan.  So we think

15    this is really wasted time.

16          Judge Houser and the mediation team have been

17    terrific.  As I said earlier, the Board really doesn't have

18    anything to add to the consideration on the table, but if

19    Judge Houser can come up with wordsmithing, et cetera, that

20    might work, let's do it in the next 24, 36 hours.  But, again,

21    I have to implore Your Honor to adjourn the deadlines for the

22    Board to file the declarations, et cetera, today, or else the

23    Board feels that there is such a tiny infinitesimal chance of

24    this Plan going forward that it would withdraw the Plan.

25          And also, Your Honor, the Executive Director of the

1   Board, Natalie Jaresko, has asked that she be allowed to add a

2   few words, a few comments to what I've said, if that's okay

3   with the Court.

4           THE COURT:  Yes, of course.

5           Ms. Jaresko.

6           MS. JARESKO:  Thank you, Your Honor.  I cannot

7   underline enough for you how concerned the Board is at this

8   point.  Every one of the members of the Board is on the

9   listening phase of this.  And we would like to first reiterate

10  our respect for the democratic process in Puerto Rico, but

11  that said, two months of good faith efforts, with the Board

12  agreeing to all of the key requests of the elected leadership

13  of Puerto Rico, has not yielded adequate legislation.  And

14  there is no reason to believe that the suggested next steps

15  will yield legislation adequate to the Board and legislation

16  adequate to effect the Plan before you.

17          The draft that's been proposed last night, this

18  morning, that we reviewed as quickly as possible, continues to

19  include at least two issues that make the legislation not

20  adequate.  First, it is our understanding that there is a

21  poison pill of sorts in the proposed language.  It makes "no

22  pension cuts" a condition precedent to the issuance of the

23  debt.  So although we've agreed already to no modification of

24  the benefit, no cut in pensions, if the Court were to find

25  that it is not acceptable and order a reduction in pensions,

1    the debt would then not be issued.

2           Second, with regard to the elimination of language in

3    the draft legislation that was adopted by the House previously

4    that provided clarity with regard to freeze and COLA

5    elimination, that clarification is very important.  We expect,

6    as public statements appear to confirm, that if the freeze or

7    the elimination of the COLA that we had sought under the Plan

8    is granted by the Court, an argument would be made that the

9    debt could not be issued because this is, quote, a potential

10   pension cut.  And based upon language that has been included,

11   that lack of clarity is something we would like to avoid.  It

12   would become a timely and costly litigation on the issue.

13          And in that light, Judge, we ask you again to allow

14   for an adjournment for at least 72 hours to allow for any

15   possibility of submission of a plan given the circumstances,

16   in this type of short adjournment, which would not minimize --

17   which would minimize disruption to your calendar.  And the

18   Board does not take this lightly, but if an adjournment is not

19   possible for at least a short period of time, the Board is

20   prepared to withdraw the Plan.

21          Thank you, Your Honor.

22          MR. FIRESTEIN:  Your Honor.

23          THE COURT:  Thank you.

24          MR. FIRESTEIN:  May I be heard?

25          THE COURT:  Who's that?

1          MR. FIRESTEIN:  Your Honor, it's Michael Firestein of

2   Proskauer.  If I could have 30 seconds to just indicate a

3   practical issue?

4          THE COURT:  Yes.  Yes.

5          MR. FIRESTEIN:  Thank you, Your Honor.

6          Just in response to what Ms. Jaresko and

7   Mr. Bienenstock and the rest of the folks have indicated, the

8   only thing that I would add to that is the reason why that

9   adjournment is important is because currently the declarations

10  are premised upon a plan that might change or might not be

11  feasible.  And if within 72 hours there is some progress

12  towards that end, in the off-chance that it occurs, it would

13  be declarations submitted in connection with a plan that is

14  either going to be changed or isn't going to be feasible.

15         So it doesn't disrupt the calendar, although I

16  respect the Court entirely with respect to its desire to have

17  the materials two weeks in advance, but even if we moved this

18  a few days -- we've heard comments from the House and the

19  Senate, and I respect that process as well, that they are

20  going to do things, whatever they're going to do, quickly.

21  And if they do it, fine.  If they don't do it, then there have

22  been a lot of discussions relative to that.

23         But I'm just looking at a practical issue with

24  respect to submitting evidence in connection with something

25  that is either going to change or isn't going to happen, and

1   so -- just based on the comments that I heard.  So in that

2   regard, I would urge the Court to consider that as an option

3   in connection with this, which does not disrupt, at least in

4   any material way, at least in my humble opinion, the calendar

5   that the Court is currently considering.  Thank you.

6           MR. RAPISARDI:  Your Honor, may I be heard?  It's

7   John Rapisardi.

8           THE COURT:  Yes, Mr. Rapisardi.

9           MR. RAPISARDI:  Your Honor, what I'm hearing from the

10  Board, and from Mr. Bienenstock, is that they are telling the

11  Court and they're telling the Government of Puerto Rico that

12  we, under no circumstance, can move ahead with the Plan of

13  Adjustment if there's any risk that this Court might find that

14  this Plan is not feasible.

15          Your Honor, I would like to point out that the

16  Teachers Union has filed an objection to the methodology by

17  which the Oversight Board is seeking to eliminate the defined

18  benefit provisions under Puerto Rico Law.  That is a complex

19  issue, Your Honor.  It is not a slam dunk.  And there is a

20  risk, Your Honor, that you may well find in favor of the

21  Union, and in that case, what happens?  The Plan falls apart,

22  because the Board has told us that the Plan is not feasible

23  without pension freezes being eliminated.

24          And, Your Honor, we're not suggesting that, in light

25  of that risk, that we not proceed.  We're saying, look,

1    there's a risk.

2         With respect to the legislation, and Ms. Jaresko's

3    comments concerning the wording of the legislation, Your

4    Honor, we just heard about -- you know, colloquy of about

5    seven to eight minutes by the legislative leader talking about

6    the legislative process, which I euphemistically call sausage

7    making.  And my concern, Your Honor, is that if we try to

8    delve into reopening whatever's passed by the legislature,

9    which I'm confident on its face will say there will be no

10   pension cuts, and this deal -- which we've always said is

11   conditioned on there being no pension cuts, that's it.

12        If other parties want to argue that -- well, what

13   does pension cuts include?  Does that include pension freezes?

14   Well, Your Honor, that can be taken care of for findings of

15   fact.  And we're prepared to sit down with Proskauer.  Rather

16   than having a mediation to try to reopen the legislation,

17   which carries potential of weeks of delay, I think the more

18   practical solution is to take a look at the legislation, sit

19   down with Proskauer, sit down with Judge Houser, work out

20   proposed findings of fact that gets everyone comfortable that

21   there cannot be any end run around the legislation as

22   ultimately passed.

23        Thank you, Your Honor.

24        MR. BIENENSTOCK:  Your Honor, this is Martin

25   Bienenstock.  That was not the Board's position, that it

1   wouldn't go forward if there's any risk of a finding of

2   unfeasibility, et cetera.  It's not.  And we don't think

3   Mr. Rapisardi's solution of findings of fact in a Federal

4   Court as to the meaning of territorial law solves any problem.

5          MR. RAPISARDI:  Well, Your Honor, with all due

6   respect, Your Honor, based upon what we went through in

7   COFINA, Your Honor is not going to sign an order confirming a

8   plan based upon legislation which you feel ultimately could be

9   undermined, and that's what I'm trying to get at.  That if we

10  have statements on the record, an agreement tying everyone's

11  hands, rather than reopening the legislative process, coming

12  to agreement as to what this legislation means, and there's

13  findings of fact and conclusions of law, then I think that

14  gets the Board where they want to be.

15         THE COURT:  Well, it seems to me that keeping the

16  current schedule is going to, at a minimum, concretize and

17  make plain for everyone what the Board considers necessary in

18  detail for confirmation of this Plan, and I am going to -- so

19  I'm not going to change the deadlines.  The government will

20  have to decide the degree to which it makes reservations

21  concerning the Plan in anticipation of the outcome of the

22  legislative efforts.

23         I am going to establish the schedule that I had

24  discussed with Judge Houser, in terms of a report by Judge

25  Houser by November 2nd as to whether the confirmation can go

1    forward within the timetable that has been set.  I am

2    directing the Board not to short-circuit that process by

3    withdrawing the Plan before Judge Houser has made her report.

4         So the request for adjournment of the deadlines is

5    denied.  The parties are directed to engage with the mediation

6    process as directed by Judge Houser, in the confidential

7    mediation process, in an effort to keep a potentially

8    confirmable plan on the table for confirmation hearings

9    beginning in the period that begins November 8th.

10        By November 2nd at 5:00, Judge Houser is to file a

11   report certifying whether she believes that the confirmation

12   hearing can go forward as scheduled.  If she indicates that

13   she does not believe that the hearing can go forward as

14   scheduled, the Oversight Board must file an informative motion

15   no later than November 4th at 2:00 in the afternoon setting

16   forth the Oversight Board's position as to whether the

17   proposed Plan can be confirmed in the absence of legislation

18   as contemplated by the proposed Plan.

19        A detailed description of and timetable for

20   proceedings with respect to a version of the Plan that the

21   Board would consider potentially confirmable, including

22   whether and to what extent amendments and resolicitation would

23   be required, and whether such proceedings can be concluded

24   before the relevant PSA deadlines, that's the first subject of

25   the report.  The second is what other alternative measures, if

1    any, the Board proposes to take to present for confirmation a

2    plan of adjustment without the contemplated legislation,

3    including relevant timetables, if the Board is unable to

4    describe at that point in detail timely steps that can

5    reasonably be expected to facilitate a confirmation hearing in

6    the near future, whether the Board would be moving to dismiss

7    the Title III proceedings for the entities that are the

8    subject of this Plan, and the Title VI proceedings for PRIFA

9    and CCDA.

10         The Court would reserve the right to issue an order

11   to show cause as to why such dismissal should not be

12   considered, and no deadlines pertaining to the confirmation

13   hearing will be amended until further order of the Court.

14         MR. BIENENSTOCK:  Your Honor, this is Martin

15   Bienenstock.  May I ask, can the Board file its declarations

16   under seal, and they can be unsealed at the confirmation -- if

17   the confirmation hearing goes forward?

18         THE COURT:  Now, if that is done, then the opposing

19   parties would not be in a position to evaluate whether and to

20   what extent the Board's witnesses would be requested for

21   cross-examination, correct?

22         MR. BIENENSTOCK:  Right, but it would be the same as

23   if the trial were all in person, where the testimony were

24   given in person on direct.  There they wouldn't know in

25   advance.  They've all taken extensive depositions for days and

1  days and days of all of our witnesses, and so it shouldn't

2  really prejudice them at all.  And it would be the same as if

3  it were a live trial and we didn't have declarations.

4          MR. GARCIA SOLA:  Your Honor.

5          THE COURT:  Who's that?

6          MR. GARCIA SOLA:  (Indiscernible) on behalf of the

7  DRA parties.  Can I be heard?

8          THE COURT:  Yes.  I just did not hear your name.  I

9  didn't hear your name.

10          MR. GARCIA SOLA:  Yes.  Mr. Arturo Garcia on behalf

11  of the DRA parties.  And I have just something very brief to

12  comment based on what I have heard, with authorization.

13          THE COURT:  Yes, you may.

14          MR. GARCIA SOLA:  Okay.  Thank you again.  For the

15  record, Arturo J. Garcia of McConnell Valdes on behalf of the

16  DRA parties, and particularly AmeriNat Community Services.

17          We have three concerns, main concerns about what's

18  been said, Your Honor, and especially in light of your ruling

19  that the Plan confirmation hearing will proceed as scheduled.

20  The first is, since we do not have the legislation, and likely

21  will not have it until sometime tomorrow afternoon, what

22  impact will the legislation that is finally approved have on

23  the Plan that is currently on schedule for confirmation?

24          We believe that until we know what the full impacts

25  of the legislation are with respect to the Plan scheduled for

1  confirmation, it is very difficult to prepare for a hearing

2  that's due to start less than ten days away, number one.

3      Number two, in light of the fact that, more likely

4  than not, as Mr. Bienenstock and Executive Director Jaresko

5  have said, the Plan will require changes in light of the

6  different positions in the legislation, what will be the

7  impact on the objections already on file, one of which is the

8  objection filed by the DRA parties for the confirmation of the

9  Plan.

10     We believe that if the legislation requires changes

11  on the Plan, we will have to review the Plan, the new Plan, to

12  determine whether our objections will have to be made or

13  changed or revised in any way, shape, or form before the Plan

14  confirmation begins.

15     Third, we believe that the parties who are in

16  opposition to the Plan, and to the Plan confirmation -- and

17  the DRA parties are but one, there are others -- will need

18  time to review what comes out of the legislative process and

19  any potential impacts on the Plan itself so that we can

20  prepare for the confirmation hearing.

21     Otherwise, Your Honor, we very respectfully submit

22  that there could be due process issues, because we would have

23  to prepare for a plan confirmation hearing when currently, at

24  this point in time, just again less than ten days away -- or a

25  little bit over ten days, sorry -- we don't know what the Plan

1    will say.  And how can you prepare for a confirmation process

2    when there may be changes to the Plan that we have been

3    preparing our objections to, and our witness declarations, and

4    everything else, when at the end of the day, as

5    Mr. Bienenstock has said, there may be changes that are

6    required to the Plan.

7            We fully agree that the mediation process should

8    continue.  By the way, a mediation process as to which we have

9    not been given the opportunity to fully participate in.  So we

10   have a lot of concerns about what -- the impact of this, you

11   know, legislation that is, you know, really kind of up in the

12   air as we speak, and Mr. Bienenstock confirmed that from his

13   perspective.  I haven't been privy to any of the

14   conversations, so I don't know what that's going to say other

15   than what I've read in the press.

16           But I just want to make clear for the record that we

17   have strong reservations about proceeding with a plan

18   confirmation process when we do not know what plan is going to

19   be confirmed and how to prepare, assuming that we will

20   continue to be on the objection side of the plan confirmation.

21           So that's it for now, Your Honor.  Thank you for

22   allowing us an opportunity to be heard, but we think that

23   these are serious concerns.

24           THE COURT:  Thank you, Mr. Garcia.

25           The declarations must be filed on the record subject

1   to specific requests for sealing in accordance with the

2   provisions of law that protect information that is recognized

3   as requiring higher protection, but the request to seal purely

4   on account of the uncertainty with respect to the process is

5   denied.

6        The remaining deadlines, as I say, will remain in

7   place pending further order of the Court and the filing of the

8   reports.  There is to be no withdrawal of the Plan before the

9   mediation team has made its report and the Oversight Board has

10   made its response.  That is the Court's ruling, which will be

11   followed up in a written order later today.

12        With that, I thank everyone for their engagement and

13   candor today, and for the hard work that will be necessary to

14   keep this process going, and to keep PROMESA a prospective

15   vehicle for restoration of the economic life and access to the

16   financial markets of Puerto Rico, for keeping Puerto Rico an

17   entity, a state, a community that can provide properly through

18   a vibrant economy and restructuring of debt as contemplated by

19   the statute, that will benefit its citizens, its retirees, and

20   be fair to all stakeholders and creditors.

21        So I am requiring good faith action by all concerned.

22   I believe that people are acting and have acted in good faith.

23   The confidential work with Judge Houser must also be in good

24   faith, and I will look forward to the further reports.

25        As always, I thank our staff for work that was done

1   to facilitate today's conference.

2           We are adjourned.

3           (At 11:00 AM, proceedings concluded.)

4                       *      *      *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1  U.S. DISTRICT COURT    )

 2  DISTRICT OF PUERTO RICO)

 3

 4       I certify that this transcript consisting of 70 pages is

 5  a true and accurate transcription to the best of my ability of

 6  the proceedings in this case before the Honorable United

 7  States District Court Judge Laura Taylor Swain, and the

 8  Honorable United States Magistrate Judge Judith Gail Dein on

 9  October 25, 2021.

10

11

12

13  S/ Amy Walker

14  Amy Walker, CSR 3799

15

16

17

18

19

20

21

22

23

24

25
```