*2018 - 000172*
*[24-2018-2172]*

# BANCO POPULAR DE PUERTO RICO
# FIDUCIARY SERVICES DIVISION
# CUSTODY AGREEMENT

This Custody Agreement (the "Agreement") is made and entered into this 22 day of December, 2017 (the "Effective Date") by and between:

**BANCO POPULAR DE PUERTO RICO**, Fiduciary Services Division, a bank organized under the laws of the Commonwealth of Puerto Rico, with principal offices at 209 Munoz Rivera Avenue, San Juan, Puerto Rico, 00918 hereinafter referred to as the "BANK", represented herein by Héctor Rivera Rivera in his capacity as Vice President of the BANK; and

The Puerto Rico Department of Treasury, a department of the Government of Puerto Rico created pursuant to Article IV, Section 6 of the Constitution of Puerto Rico, and under the laws of Puerto Rico, including, but no limited to, Act No. 3 of June 22, 1994, with principal offices located at 10 Paseo Covadonga, San Juan, P.R. 00901 (hereinafter referred to as the "CUSTOMER"), represented herein by its Secretary, Raúl Maldonado Gautier, CPA, Esq., of legal age, married, and resident of San Juan, Puerto Rico (the "PRTD").

## WITNESSETH

**WHEREAS**, the CUSTOMER desires to deposit with the BANK certain securities including the cash related to transactions with such securities;

**WHEREAS**, the CUSTOMER desires to retain the BANK, as the custodian of such securities in the manner and on the terms and conditions hereinafter set forth; and

**WHEREAS**, the BANK desires to provide the securities custody services CUSTOMER as provided herein.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants herein contained, it is agreed as follows:

1. **Designation of Custodian.** (a) The CUSTOMER hereby authorizes the BANK, and the BANK hereby accepts, to open an account under the following name: PR Department of Treasury Custody Account (the "Custody Account"); to receive in deposit those funds that CUSTOMER may deposit with the BANK from time to time (the "FUNDS") and to act as custodian of such FUNDS. The CUSTOMER also hereby authorizes the BANK to establish, as it deems appropriate, an account for the deposit and custody of cash or other proceeds, including interest or dividends which may be received from time to time in connection with the FUNDS (the

1

*[24-2018-2172]*

"Proceeds," and together with the FUNDS, the "Assets") in a separate cash account (the "Cash Account" and together with the Custody Account, the "Accounts"). The BANK, as Custodian, shall hold and safekeep the Assets in the Accounts subject at all times to the instructions of the CUSTOMER and to the terms and conditions set forth below, which shall remain in force and effect until expressly revoked or amended in writing. The BANK in its discretion may open additional sub-accounts, as the CUSTOMER may need to cover its needs.

(b) Any Proceeds shall be credited to the Cash Account or by wire transfer or ACH transfer to the following account:

BANK name: Banco Popular De Puerto Rico
Address: Hato Rey, Puerto Rico
ABA Routing Number: 021502011
Beneficiary name: Departamento de Hacienda
Beneficiary account number: 030-049458

The CUSTOMER will bear all risk with respect to losses that may arise from late or incorrect payment or collectability of any check, which pertains to any such income.

(c) Any Assets in the Custody Account shall be invested by the Bank in accordance with the instructions of the CUSTOMER. The CUSTOMER acknowledges that the BANK does not provide investment advice and that the BANK will not make recommendations, even if requested, with respect to the purchase or sale of any securities or the investment of the Assets in the Custody Account. In addition, CUSTOMER acknowledges that the BANK does not provide legal or tax advice.

*H.R.R.* 2. **Reporting.** The BANK shall provide the CUSTOMER with monthly statements of the Accounts for verification purposes. The monthly statements will include information about cash receipts and disbursements, interest and or dividend collections, principal collections, purchase and sales of securities, as applicable. CUSTOMER agrees that the monthly statement provided by BANK is an alternative form of notification under Regulation H (12 C.F.R. §208.34). The BANK shall presume that the CUSTOMER agrees with the correctness of the contents of any statement that the BANK provides pursuant to this Agreement unless the CUSTOMER notifies the BANK otherwise within fifteen (15) days after receipt thereof exclusive of Saturdays, Sundays, and legal holidays. CUSTOMER has the right to receive, at no additional cost, a written notification pursuant to applicable laws and regulations.

3. **Disbursements of Funds.** The BANK shall disburse any or all the FUNDS held hereunder to or upon the order of the CUSTOMER. All instructions from the CUSTOMER related

2

054

*[24-2018-2172]*

to the Securities must be received no later than 1:00 P.M. (EST). The BANK may change this schedule from time to time as circumstances may dictate. All instructions the BANK receives after 1:00 P.M. (EST) will be acted upon a best effort basis only.

4. **Taxation.** The CUSTOMER agrees that it shall be responsible for the payment of income taxes with respect to any income tax liability generated by any and all income, if any, that may be earned by the Assets. For purposes of tax reporting, the income generated in the Custody Account shall be reported to the CUSTOMER in applicable tax reporting forms as required under applicable law.

5. **FATCA Compliance.** Pursuant to Foreign Account Tax Compliance Act ("FATCA"), the CUSTOMER shall provide the appropriate form that may be required under FATCA. Failure to provide the corresponding form may lead to a withholding at source at the tax withholding rate in effect from time to time.

6. **Responsibilities and Indemnity.**

(a) The BANK will accept deposit and withdrawal of Assets in accordance with CUSTOMER'S instructions as per the requirements established in Section 8 of this Agreement. The BANK shall exercise reasonable care, prudence and diligence in the performance of its duties and obligations under this Agreement.

(b) The BANK, its officers, and employees will not be liable to the CUSTOMER or any third party for any losses or damages suffered due to any error of fact or judgment except in the event of gross negligence, bad faith, or willful misconduct. The BANK shall not be liable for any indirect, special or consequential damages, nor for any loss that the CUSTOMER suffers, caused by (1) the delay in the receipt of any instructions that the CUSTOMER may provide under this Agreement; (2) any event of force majeure or other event beyond the BANK's reasonable control, including a loss that arises directly or indirectly from adverse regulatory or tax changes. The BANK shall not be liable or responsible in any way for the genuineness, validity, collectability, guaranty or registration and legality of any security or document delivered, received, or held under this Agreement. In any case, the BANK will not be liable to CUSTOMER for any indirect, incidental, special, consequential, or punitive damages; or damages for loss of profits, revenue, business, savings, data, use, or cost of substitution, whether in an action in contract or tort, even if such damages are possible or foreseeable. THE BANK'S LIABILITY FOR ALL CAUSES OF ACTION UNDER THIS AGREEMENT SHALL BE LIMITED TO THE FEES PAID TO THE BANK UNDER THIS AGREEMENT DURING THE LAST 12 MONTHS PRECEDING THE CLAIM. CUSTOMER acknowledges that the fees and charges for the services reflect this allocation of risk and the limitation of liability specified herein.

(c) It is the CUSTOMER'S sole responsibility to file any tax returns, reports or

*H.R.R.*

3

*[24-2018-2172]*

filings on any transaction or on the Assets under custody that may be required under any applicable law or regulation and for the payment of all unpaid calls, taxes, duties or any liability or payment arising thereunder. The BANK is not under any duty of filing any tax report, paying any taxes due on the income and/or principal collected under the Accounts.

(d) The CUSTOMER will indemnify, defend and hold harmless the BANK and its principals, members, shareholders, directors, officers employees, affiliates and agents against any liability, loss, damage, cost or expense (including legal expenses) arising out of (i) any instruction provided by CUSTOMER to the BANK; (ii) any breach of any representation under this Agreement; (iii) any claim or controversy regarding the Assets deposited with the BANK or involving the Custody Account, including any claim regarding the ownership of the Assets; (iii) any reports, filings, expenses or payments done or omitted to be done by CUSTOMER related to the Assets or the income generated therefrom; (iv) any interpleader proceeding that may be filed by the Bank in connection with the Assets; or (v) the work and efforts required to be invested by the BANK in response to and in compliance with any subpoena or other binding request made against the Bank, for obtaining and/or producing any information, documents, or appearing or preparing any verbal or written testimony, or that in any manner requires or may require the BANK, to present evidence or appear in any judicial, arbitration or other proceeding against the CUSTOMER or any other Puerto Rico government agency. CUSTOMER'S obligations under this Section shall survive the termination of this Agreement.

(e) In the event of a dispute involving the Assets or the Accounts, the BANK will be entitled at the expense of the Assets deposited in the Accounts to tender the Assets or custody thereof to any court of competent jurisdiction, to initiate such legal proceedings as may be required at the expense of the Assets as it deems appropriate, and thereupon to be discharged from all further duties and liabilities under this Agreement. Any such legal action may be brought in any such court as the BANK determines to have jurisdiction over the Assets. The filing of any such legal proceedings will not deprive the BANK of its compensation hereunder earned prior to such filing. Additionally, in the event of a dispute involving the Assets or the Accounts or in the event that the BANK, in good faith, is in doubt as to what action it should take under this Agreement, the BANK may, at its option, refuse to comply with any claims or demands upon it, or refuse to take any other action hereunder, so long as any such disagreement, claim, demand or uncertainty continues or exists, and in any such event, the BANK shall not be or become liable in any way to any person for its failure to act, other than those arising from its gross negligence or willful misconduct. The BANK shall be entitled to continue to so refrain from acting until (i) the right of all parties shall have been fully and finally adjudicated by a court of competent jurisdiction or (ii) all differences shall have been adjusted and all doubts resolved by written agreement among all interested persons and BANK shall have been so notified in writing signed by all such persons. Alternatively, the BANK may, at the CUSTOMER's expense, resign and deliver the balance of the Accounts to a court of competent jurisdiction, upon which all obligation of the BANK under this Agreement

*H.P.R.*

4

056

*[24-2018-2172]*

shall cease and terminate.

(f) The BANK shall be entitled to obtain, at the expense of the Assets, the advice or opinion of Counsel, including in-house counsel, with respect to matters of law, upon prompt written notice to the CUSTOMER, for which the BANK has a reasonable question as to the rights and duties relating to the BANK hereunder, and the BANK will have no liability for any action taken or omitted in conformity with such advice or opinion.

(g) The CUSTOMER acknowledges that the BANK is not acting under this Agreement as manager or investment adviser and has no obligation to explain or warn of risks related to the Securities. CUSTOMER agrees that it is exclusively responsible for the selection, acquisition or disposal of securities.

7. **Fees.** The CUSTOMER agrees to pay the BANK, as compensation for its services, fees based on the Custodian Fee Schedule in effect from time to time. (See attached Exhibit B Custodian Fee Schedule). The BANK is hereby authorized to debit the Accounts or any other account of the customer with the BANK, for the amount due for fees and any out-of-pocket expenses the BANK incurs that arise out of or in connection with this Agreement. The BANK will not pay interest to the CUSTOMER on amounts in the Cash Account unless so agreed with CUSTOMER and then only at the rates and times established for the Bank's customers for the type of account opened.

8. **Authorized Persons and Instructions.**

*H.R.R.*

(a) **Instructions.** CUSTOMER will provide the BANK instructions to receive, invest and/or deliver Assets, and/or to deposit or withdraw funds from the Accounts (hereinafter, the "Instructions"). CUSTOMER must supply the BANK the list of the person(s) authorized to provide Instructions to the BANK (hereinafter, the "Authorized Persons"), which as of the date of this Agreement, is that included herein as Exhibit A. It is the CUSTOMER's responsibility to provide the BANK with an updated list of Authorized Persons in the form of Exhibit A each time an Authorized Person is added or deleted from the list. The BANK will rely upon and act on any Instruction(s) received that is (are) properly authenticated by a person included in the Authorized Persons list until CUSTOMER notifies the BANK that such person is no longer authorized to provide instructions.

(b) All Instructions to the BANK with respect to the Accounts shall be written and signed by the CUSTOMER or an Authorized Person. The CUSTOMER shall confirm to the BANK by fax or email each Instruction to receive or deliver securities on a daily basis. The Instruction will be deemed given upon acknowledgement of receipt by the BANK's designated person. Notwithstanding, the BANK shall not be liable for executing, delay executing, failing to execute, or for any mistake in the execution of any such orders, except in case of gross negligence

5

Case 1:17-03283-LTS Doc#:7961-1 Filed:07/12/19 Entered:07/15/19 10:43:30 Desc:
Declaration of Peter Heim Page 61 of 71

[24-2018-2172]

or willful misconduct. In addition, the BANK shall not be liable for failing to carry out any instructions received from the CUSTOMER should the BANK be served with a court order prohibiting or precluding it from complying with such instructions. The BANK shall have no duty to the CUSTOMER with respect to any Assets that may affected by such a court order and the BANK shall be entitled to refuse to act with respect to such Assets until any adverse claims affecting such securities shall have been finally determined in a court of competent jurisdiction or settled by agreement between the parties. In addition, the BANK shall have been furnished with written evidence satisfactory to its counsel of any such determination or settlement.

(c) The CUSTOMER hereby instructs the BANK not to disclose its name, and address, to any company that requests such information, except when the BANK is compelled to do so by an order of a court with competent jurisdiction or as may be required in the process of examinations and compliance with exigencies of its primary regulators. To the extent permitted by applicable law or rule, before disclosing any such information, the BANK will notify the CUSTOMER.

9. **CUSTOMER Representations and Warranties**. The CUSTOMER hereby makes the following representations and warranties, each of which is true and correct on the date hereof and each of which shall survive the transactions contemplated hereby:

*[handwritten: H. R.R.]*

a. That the CUSTOMER is, and will be, the sole owner, free and clear of any liens, pledges or claims whatsoever, of the Assets deposited in the Account(s) or have full legal rights to execute the transactions contemplated hereby.

b. The CUSTOMER has full right, power, and authority to execute and deliver this Agreement and to carry out the transactions contemplated hereby. The execution, delivery, consummation, and performance of this Agreement will not violate any provision of law or result in any conflict with, breach of, or default under any other instrument, agreement, order, judgment or decree of any court or other governmental agency to which the CUSTOMER is a party, by which the CUSTOMER is a party, or by which the CUSTOMER is bound.

c. The CUSTOMER has duly authorized, executed, and delivered this Agreement and is valid and binding upon its delivery in accordance with its terms.

d. The CUSTOMER acknowledges and represents that the BANK will not provide advice regarding the investments of the CUSTOMER and that the BANK will not make recommendations with respect to the purchase or sale of any securities or the investment of any funds.

6

*[24-2018-2172]*

10. **BANK Representations and Warranties.** The BANK hereby makes the following representations and warranties, each of which is true and correct on the date hereof and each of which shall survive the transactions contemplated hereby:

    a. The BANK has full right, power, and authority to execute and deliver this Agreement and to carry out the transactions contemplated hereby. The execution, delivery, consummation, and performance of this Agreement will not violate any provision of law or result in any conflict with, breach of, or default under any other instrument, agreement, order, judgment or decree of any court or other governmental agency to which the BANK is a party, by which the BANK is a party, or by which the BANK is bound.

    b. The BANK has duly authorized, executed, and delivered this Agreement and is valid and binding upon its delivery in accordance with its terms.

*H-P-P.*

11. **Record Examination.** The BANK will allow the CUSTOMER or any person the CUSTOMER so designates or by any regulatory authority with jurisdiction over the CUSTOMER to examine or verify, during regular banking hours, the securities the BANK holds on behalf of the CUSTOMER in the BANK's premises at its Hato Rey offices. Written authorization, in a form satisfactory to the BANK must accompany this type of request and the CUSTOMER will bear any cost related thereto. The CUSTOMER shall give written notice to the BANK at least five (5) work days prior to any such examination or verification, unless the request notified to the CUSTOMER is less than this, in which case, the CUSTOMER will notify BANK as soon as practicable after receipt.

12. **Notices.** Any and all notices, communications, requests, and demands that may be necessary, proper, or convenient under this Agreement, or any other related document, shall be conclusively deemed given, when given in writing, on the date it is personally received at the addresses set forth below:

To the BANK:                   BANCO POPULAR DE PUERTO RICO
                                    Fiduciary Services Division
                                    Popular Center North Building
                                    #209 Muñoz Rivera, Ave., 2nd Level
                                    Hato Rey, PR 00918
                                    Attention: Custodial Officer

059

[24-2018-2172]

To the CUSTOMER:  Raúl Maldonado Gautier
Secretary
Puerto Rico Treasury Department
P. O. Box. 9024140
San Juan, PR 00902-4140

Any of the parties may change the person authorized to receive any notice, demand and other communication and/or its mailing or physical address, by notifying the other party pursuant to this paragraph, as long as such person and the mailing address are within Puerto Rico or the United States of America.

13. **Successors and Assigns.** Any entity into which the BANK may be merged or with which it may be consolidated, or any corporation resulting from any merger or consolidation to which the BANK will be a party, or any entity succeeding to the business of the BANK, will be the successor to the BANK under this Agreement without the execution or filing of any paper or any further act on the party of any of the parties hereto.

*H.P.R.*

14. **Governing Law.** The laws of the Commonwealth of Puerto Rico shall govern this Agreement and any claim or cause of action that may be brought by any of the parties hereunder. The parties hereto agree that any and all claims asserted by or against the BANK arising under this Agreement or related thereto shall be heard and determined either in the courts of the United States located in San Juan, Puerto Rico or in the courts of the Commonwealth of Puerto Rico.

15. **Assignment.** The BANK may assign, sell, transfer, delegate, or otherwise dispose of, whether voluntarily or involuntarily, by operation of law or otherwise, this Agreement or any rights or obligations under this Agreement to any division, subsidiary or affiliate after written notice to CUSTOMER. CUSTOMER may not assign its rights and obligations under this Agreement without BANK's prior written consent, which consent may be withheld at BANK's sole option. In any event, the BANK will have the option of terminating its obligations as Custodian upon an event of assignment.

16. **Term and Termination.** The term of this Agreement commences on the Effective Date. Either the CUSTOMER or the BANK may terminate this Agreement at any time upon five (5) business days prior written notice to the other party. If CUSTOMER terminates this agreement, it shall include in the notice of termination the names of the person(s) to whom the BANK shall, at the expense of CUSTOMER, deliver the assets under custody of the BANK. The parties will agree on the method of the transfer. The BANK shall deliver or transfer the assets under custody

8

[24-2018-2172]

as soon as it has received payment of all amounts owed by CUSTOMER. The BANK shall be entitled to receive fees until the moment of delivery or transfer of the Assets under custody.

17. **Entire Agreement and Amendments.** This Agreement and any annex, schedule, appendix, exhibit, certificate, amendment or other document attached hereto and to which reference is made herein will be incorporated by reference as if fully set forth herein and will be subject to the terms and conditions hereof and together with this Agreement will constitute the entire contract between the parties, and supersedes all prior or contemporaneous agreements or understandings, written or oral, concerning the subject matter of this Agreement. The terms and conditions of any schedule will be complementary or in addition to those set forth in this Agreement. However, unless otherwise stated, if there is a conflict between the terms and conditions of any exhibit or schedule and the terms and conditions of this Agreement, the provisions set forth in this Agreement will prevail. This Agreement may not be modified, amended or supplemented in any manner except by mutual agreement of the parties and set forth in a writing signed by a duly authorized representative of each party.

18. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

*H.R.R.*

19. **Registry in the Office of the Comptroller of Puerto Rico.** No benefit or consideration that might be subject to this Agreement may be enforced until it has been duly submitted for registration in the Office of the Comptroller of Puerto Rico in accordance with the provisions of Act No. 18 of October 30, 1975, as amended.

IN WITNESS HEREOF, the parties have executed this Agreement on the date first above written.

BY: _____  
BANCO POPULAR DE PUERTO RICO  
NAME: Héctor Rivera Rivera  
TITLE: Vice President

BY: _____  
PUERTO RICO TREASURY DEPARTMENT  
NAME: Raúl Maldonado Gautier, CPA, Esq.  
TITLE: Secretary

9

*[24-2018-2172]*

## Exhibit A

## AUTHORIZED PERSONS

CUSTOMER hereby represents that the following officers have been duly authorized by all required corporate action to provide Instructions under that certain Custody Agreement with the BANK. All capitalized terms that are not otherwise defined herein shall have the meaning assigned to such term in the Custody Agreement.

F.P.P.

Francisco Peña Montañez
Assistant Secretary Treasury Area

Signature

---
Name of Officer or General Partner and Title
(Please Print)

Signature

---
Name of Officer or General Partner and Title
(Please Print)

Signature

---
Name of Officer or General Partner and Title
(Please Print)

Signature

062

[24-2018-2172]

## Exhibit B

## CUSTODIAN FEE SCHEDULE

| | |
|---|---|
| • Account Maintenance | $150.00 per account/per month |
| • Holdings (per ID/per month) | |
|     Physical | $ 4.50 |
|     Book Entry | $ 2.50 |
| • Principal Reduction/Interest (P&I) | $ 2.50 each payment |
| • Receive/Deliver (Book Entry) | $ 25.00 per cusip |
|     Receive/Deliver (Physical) | $ 35.00 per cusip |
|     Corporate Actions | $ 35.00 per cusip |
|     Redemption-Others | $ 25.00 per cusip |
| • Registration | $ 35.00 plus insurance & shipping expenses |
| • Global Custody is not included | |
| • Wire Transfers | $25.00 each |
| • Check Issuance | $8.00 per check |
| • ACH Transfer | $2.50 per transfer |

*H.P.R.* (handwritten initials in margin)

Other out of pocket expenses will be charges as incurred

Fees are payable in advance at closing. It is also understood that BANK will be reimbursed for all reasonable expenses, charges and out of pocket expenses. The fees are subject to change.

11

063