# ASSIGNMENT AND SECURITY AGREEMENT

This ASSIGNMENT AND SECURITY AGREEMENT dated as of August 28, 2013, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**, a public corporation and instrumentality of the government of the Commonwealth of Puerto Rico (the "Authority" or the "Assignor"); and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**, a public corporation and instrumentality of the government of the Commonwealth of Puerto Rico (the "Bank"), both parties to the Loan Agreement as of the date hereof (as modified, supplemented or amended from time to time, the "Loan Agreement"). All terms not otherwise defined hereof shall have the meanings ascribed to them in the Loan Agreement.

## WITNESSETH

**WHEREAS**, the Authority has requested and obtained from the Bank a non-revolving credit facility in an aggregate principal amount equal to Sixty One Million Eight Hundred Thirty Thousand Dollars ($61,830,000) (the "Loan") pursuant to a Loan Agreement to cover operational costs incurred by the Authority;

**WHEREAS**, pursuant to the Loan Agreement, the principal of and interest on the Loan will be paid from the revenues allocated to the Authority by Act No. 30 and Act No. 31, both approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013 ("Acts 30-2013 & 31-2013"), proceeds from future bond issuances and products of public-private partnerships, as well as revenues of the Authority;

**WHEREAS**, as a condition for the approval of the Loan, the Bank has required the Authority to execute and deliver this Agreement, granting a security interest to the Bank under the laws of Puerto Rico of the revenues generated by Acts 30-2013 & 31-2013 in order to secure the repayment of the Loan and any other amounts owed to the Bank;

**NOW, THEREFORE**, in consideration of the benefits to the Assignor, the receipt and sufficiency of which are hereby acknowledged, the Assignor hereby makes the following representations and warranties to the Bank and hereby covenants and agrees with the Bank as follows:

SECTION 1. **ASSIGNMENT OF REVENUES AND SECURITY INTERESTS**

1.1 Assignment of Revenues. The Assignor hereby absolutely, irrevocably, and unconditionally assigns, conveys and transfers without recourse, to the Bank, and the Bank hereby accepts and assumes without recourse all of the Assignor's rights, title, obligations and interest in the revenues allocated in favor of the Assignor

by Acts No. 30-2013 & 31-2013 approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013.

1.2 Grant of Security Interests. As security for the prompt and complete payment and performance when due of all of its Obligations, the Assignor does hereby assign, pledge and grant to the Bank a continuing security interest, which shall be junior, inferior and subordinate in all respects to the outstanding bonds of the Assignor issued pursuant to the Bond Resolutions, in all of the right, title and interest of the Assignor in the revenues allocated to it by Acts No. 30-2013 & 31-2013 approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013, whether presently held or hereafter acquired and wherever located (collectively, the "Collateral"):

1.3 Power of Attorney. The Assignor hereby constitutes and appoints the Bank as its true and lawful attorney, irrevocably, with full power (in the name of Assignor or otherwise) and in its sole discretion, to take any action and to execute any instrument which the Bank may deem necessary or advisable to accomplish the purposes of this Agreement, including to act, require, demand, receive, compound, and give acquaintance for all monies and claims for monies due or to become due to the Assignor under or arising out of the assigned revenues and security hereby granted, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute any proceedings which the Bank may deem to be necessary or advisable in the premises, which appointment as attorney is coupled with an interest.

## SECTION 2. GENERAL REPRESENTATIONS, WARRANTIES AND COVENANTS

The Assignor represents, warrants and covenants, which representation warranties and covenants shall survive execution and delivery of this Agreement, as follows:

2.1 Necessary Filings. Upon the filing of a duly completed financing statement in the Puerto Rico Department of State, all filings, registrations and recordings necessary or appropriate to create, protect, and perfect the security interest granted by the Assignor to the Bank hereby in respect of the Collateral have been accomplished and the security interest in the Collateral granted to the Bank pursuant to this Agreement will constitute a valid and enforceable perfected security interest therein, superior and prior to the rights of all other persons therein and subject only to the lien established in Section 1.2 hereof and shall be entitled to all the rights, priorities and benefits afforded to perfected security interests by the Uniform Commercial Code or other relevant law, as enacted in any relevant jurisdiction. The Assignor agrees that from time to time, at its expense, will promptly execute and



DRA Ex. 215

deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that the Bank may reasonably request, in order to perfect and/or protect any lien or security interest granted or purported to be granted hereby or to enable the Bank to exercise and enforce its rights and remedies hereunder or under the Loan Agreement with respect to the Collateral.

2.2 No liens. The Assignor is, and will at all times be, the legal and beneficial owner of the Collateral free and clear from any lien, security interest or other charge or encumbrance, except for the security interest created by this Agreement, and the Assignor shall defend the Collateral against all claims and demands of all persons at any time claiming the Collateral or any interest therein adverse to the Bank. No financing statement, assignment, or other document similar in effect covering all or any part of the Collateral is on file in any recording office.

2.3 Other Financing Statements. There is no financing statement (or similar statement or instrument of registration under the law of any jurisdiction) covering or purporting to cover any interest of any kind in the Collateral except those executed in favor of the Bank and those executed or to be executed as security under the Bond Resolutions.

2.4 Recourse. This Agreement is made pursuant to and upon all the warranties, representations, covenants and agreements on the part of the Assignor contained herein.

2.5 Valid Security Interest. This Agreement creates a valid and perfected security interest in the Collateral, securing the payment of the Obligations, and junior, inferior and subordinate in all respects only to the outstanding bonds of the Assignor issued pursuant to the Bond Resolutions. All filings and other actions necessary or desirable to perfect and protect such security interest have been duly taken, or are being taken contemporaneously with the execution hereof.

2.6. Consents. No consent of any other person and no authorization, approval or other action by, and no notice to or filing with, any Governmental Authority or regulatory body is required for (i) the grant by the Assignor of the lien and security interest granted hereby or for the execution, delivery and performance of this Agreement and the Loan Agreement by the Assignor, (ii) the perfection or maintenance of the security interest created hereby (including the first priority nature of such security interest), or (iii) the exercise by the Bank of its rights and remedies hereunder.

2.7. Due Authorization. The execution, delivery, and filing of and performance by the Assignor of this Agreement and the Loan Agreement have been duly authorized by all necessary action of the Assignor's Board of Directors (or equivalent body) and do not and will not (i) contravene any of the Assignor's

organizational or constituting documents, (ii) violate any provision of any applicable law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect, or (iii) result in a breach of or constitute a default under any indenture or loan or credit agreement or any other agreement, lease, or instrument to which the Assignor is a party or by which it or its properties may be bound or affected, and (iv) the Assignor, to its knowledge, is not in default under any such law, rule, regulation, order, writ, judgment, injunction, decree, determination or award or any such indenture, agreement, lease or instrument.

2.8. Valid Obligation. This Agreement is the legal, valid and binding obligation of the Assignor enforceable against the Assignor in accordance with its terms, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity, regardless of whether enforcement is sought in a proceeding in equity or at law.

SECTION 3. **REMEDIES AND APPLICATION OF PROCEEDS**

3.1 Remedies. The Assignor agrees that if any event of default shall have occurred and be continuing regarding the Loan, then and in every such case, subject to any mandatory requirements of applicable law then in effect, the Bank, in addition to any rights now or hereafter existing under applicable law, shall have all rights as secured creditor under the Uniform Commercial Code in all relevant jurisdictions.

3.2 Application of Revenues and Proceeds. The Revenues assigned and Proceeds acquired under the Collateral shall be applied by the Bank as follows:

(i) to the payment of the outstanding bonds of the Assignor issued pursuant to the Bond Resolutions;

(ii) any and all expenses and fees (including reasonable attorneys' fees) incurred by the Bank in obtaining the Collateral;

(iii) next, any surplus then remaining to the payment of the Obligations in the following order of priority:

(1) all interest accrued and unpaid owing on the Loan Agreement;
(2) the principal amount owing on the Loan Agreement;
(3) the fees then owing to the Bank; and
(4) all other outstanding Obligations then owing by the Assignor to the Bank;



DRA Ex. 215

(iii) if no other Obligation is outstanding, any surplus then remaining shall be paid to the Assignor, subject, however, to the rights of the holder of any then existing lien of which the Bank has actual notice (without investigation);

it being understood that the Assignor shall remain liable to the extent of any deficiency between the amount of the Proceeds and the aggregate amount of the sums referred to in clauses (i) and (ii) of this Section 3.2 with respect to the Bank.

3.3 Remedies Cumulative. No failure or delay on the part of the Bank in exercising any right, power or privilege hereunder or under any other Loan Document and no course of dealing between the Assignor and the Bank shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder or under the Loan Documents preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder or thereunder. The rights, powers and remedies herein or in the Loan Documents expressly provided are cumulative and not exclusive of any rights, powers or remedies which the Bank would otherwise have. No notice to or demand on the Assignor in any case shall entitle the Assignor to any other or further notice or demand in similar or other circumstances or constitute a waiver of the rights of the Bank to any other or further action in any circumstances without notice or demand.

3.4 Discontinuance of Proceedings. In case the Bank shall have instituted any proceeding to enforce any right, power or remedy under this Agreement, and such proceeding shall have been discontinued or abandoned for any reason or shall have been determined adversely to the Bank, then and in every such case the Assignor and the Bank shall be restored to their former positions and rights hereunder with respect to the Collateral, subject to the security interest created under this Agreement, and all rights, remedies and powers of the Bank shall continue as if no such proceeding had been instituted.

SECTION 4. **INDEMNITY**

4.1 The Assignor agrees to indemnify, reimburse and hold the Bank and its officers, directors, employees and representatives (hereinafter in this Section 4.1 referred to individually as "Indemnitee" and collectively as "Indemnitees") harmless from any and all liabilities, obligations, losses, damages, penalties, claims, actions, judgments, suits, costs, expenses or disbursements, including reasonable attorneys' fees and expenses (for the purposes of this Section 4.1 the foregoing are collectively called "expenses") of whatsoever kind or nature which may be imposed on, asserted against or incurred by any of the Indemnitees in any way relating to or arising out of (i) this Agreement, the Loan Agreement, the Loan Documents or any other document executed in connection herewith, or (ii) any investigation, litigation or other

proceeding (including any threatened investigation or proceeding) relating to the foregoing, and the Assignor shall reimburse each Indemnitee, upon demand for any expenses (including legal fees) reasonably incurred in connection with any such investigation or proceeding, but excluding any such losses, liabilities, claims, damages or expenses incurred by reason of (i) the gross negligence or willful misconduct of the person to be indemnified, or (ii) a breach of a material provision or this Agreement by the person to be indemnified. It is the express intention of the Assignor that each person to be indemnified hereunder shall be indemnified and held harmless against any and all losses, liabilities, claims or damages as limited in the preceding sentence arising out of or resulting from the ordinary, sole or contributory negligence of such person. Without prejudice to the survival of any other obligations of the Assignor hereunder, the obligations of the Assignor under this Section shall survive the termination of this Agreement.

(b) The Assignor agrees to pay to the Bank, within fifteen (15) Business Days after demand, the amount of any and all reasonable costs and expenses, including the fees and disbursements of its counsel and of any experts and agents, that the Bank may incur in connection with (i) the administration of this Agreement; (ii) the evaluation, appraisal, custody, preservation, use or operation of, or the sale of, collection from, or other realization upon, any of the Collateral, (iii) the exercise or enforcement of any of the rights of the Bank hereunder or (iv) the failure by the Assignor to perform or observe any of the provisions hereof. The Assignor agrees to pay interest on any expenses or other sums payable to the Bank hereunder that are not paid when due at a rate per annum equal to the Default Rate (as defined in the Loan Agreement).

(c) Without limiting the application of Section 4.1(a) or (b), the Assignor agrees to pay, indemnify and hold each Indemnitee harmless from and against any expenses which such Indemnitee may suffer, expend or incur in consequence of or growing out of any misrepresentation by the Assignor in this Agreement or the Loan Documents or in any statement or writing contemplated by or made or delivered pursuant to or in connection with this Agreement or the documents executed in connection herewith.

4.2 <u>Indemnity Obligations Secured by Equipment Survival</u>. Any amounts paid by any Indemnitee as to which such Indemnitee has the right to reimbursement shall constitute Obligations secured by the Collateral. The indemnity obligations of the Assignor contained in this Section 4 shall continue in full force and effect notwithstanding the full payment of the Note issued under the Loan Agreement and all of the other Obligations, and notwithstanding the discharge thereof.

SECTION 5. **DEFINITIONS**

5.1 The following terms shall have the meaning herein specified unless the context otherwise requires. Such definitions shall be equally applicable to the singular and plural forms of the terms defined.

"Agreement" shall mean this Security Agreement, as modified, supplemented or amended from time to time.

"Obligations" shall mean all indebtedness, obligations and liabilities (including, without limitation, guarantees and other contingent liabilities) of the Assignor to the Bank, including any amounts owned on account of outstanding obligations of the Assignor with the Bank and those arising under or in connection with the Loan Agreement, the Note or the Loan Documents.

"Proceeds" shall have the meaning assigned to that term under the Uniform Commercial Code as in effect in the Commonwealth of Puerto Rico on the date hereof or under other relevant law and, in any event, shall include, but not limited to (i) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Bank or the Assignor from time to time with respect to any of the Collateral, (ii) any and all payments (in any form whatsoever) made or due and payable to the Assignor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral by any governmental authority (or any person acting under color of governmental authority) and (iii) any and all other amounts from time to time paid or payable under or in connection with any of the Collateral.

"Revenues" shall mean all revenues allocated in favor of the Assignor by Acts No. 30-2013 & 31-2013 approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013 assigned to the Bank pursuant to this Agreement for the payment of outstanding bonds of the Assignor issued pursuant to the Bond Resolutions and other outstanding Obligations.

"Uniform Commercial Code" shall mean with respect to the Commonwealth of Puerto Rico, the Commercial Transactions Act of Puerto Rico, and with respect to any other jurisdiction, the version of the Puerto Rico Uniform Commercial Code in effect in such jurisdiction.

SECTION 6. **SECURITY INTEREST ABSOLUTE**.

Except as otherwise expressly provided herein, all rights of the Bank hereunder and the security interest created hereunder, and all Obligations of the

Assignor hereunder, shall be absolute and unconditional, and shall not be affected or released in any way, irrespective of:

(a) any lack of validity or enforceability of any Loan Document or any other agreement or instrument relating thereto but only to the extent permitted by applicable law;

(b) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations;

(c) any taking and holding of collateral (which term for purposes of this Agreement includes, but is not limited to, the Collateral) or additional guaranties for all or any of the Obligations; or any amendment, alteration, exchange, substitution, transfer, enforcement, waiver or subordination of any collateral or such guaranties; or the termination, release or non-perfection of any collateral (other than with respect to the Collateral) given by the Assignor to the Bank, or such guaranties or any consent to departure from any security agreement or guaranty with respect thereto;

(d) any manner of application of any of the Collateral, or proceeds thereof, to all or any of the Obligations, or the manner of disposition of any of the Collateral;

(e) any consent by the Bank to (A) the change, restructuring or termination of the corporate structure or existence of any Assignor, and (B) any corresponding restructuring of, or any other restructuring or refinancing of, the Obligations or any portion thereof;

(f) any modification, compromise, settlement or release by the Bank or, by operation of law or otherwise, collection or other liquidation of the Obligations or the liability of the Assignor, or of any Collateral, in whole or in part; or

(g) to the extent permitted by law, any other circumstance (including, but not limited to, any statute of limitations) that might otherwise constitute a defense available to, or a discharge of, the Assignor, other than indefeasible payment in full in cash of the Obligations.

SECTION 7. **MISCELLANEOUS**

7.1 Notices. All notices and other communications hereunder shall be made at the addresses, in the manner and with the effect provided in Section 20 of the Loan Agreement.

7.2 Waiver; Amendment. None of the terms or provisions of this Agreement may be altered, modified, waived or amended except by an instrument in writing, duly executed by the Bank and the Assignor.

7.3 Obligations Absolute. The obligations of the Assignor under this Agreement shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, suspended, discharged, terminated or otherwise affected by, any circumstance or occurrence whatsoever, including, without limitation: (i) any renewal, extension, amendment or modification of, or addition or supplement to or deletion from, any of the Loan Documents or any other instrument or agreement referred to therein, or any assignment or transfer of any thereof, (ii) any waiver, consent, extension, indulgence or other action or inaction under or in respect of this Agreement or any of the Loan Documents, or any exercise or non-exercise of any right, remedy, power or privilege under or in respect of this Agreement or any of the Loan Documents; (iii) any furnishing of any additional security to the Bank or any acceptance thereof or any sale, exchange, release, surrender or realization of or upon any security by the Bank; or (iv) any invalidity, irregularity or unenforceability of all or part of the Obligations or of any security therefor, to the extent permitted by law.

7.4 Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective successors and assigns of the parties hereto; provided, however, that the Assignor may not assign or transfer any of its rights or obligations hereunder without the prior written consent of the Bank. All agreements, statements, representations and warranties made by the Assignor herein or in any certificate or other instrument delivered by the Assignor or on its behalf under this Agreement shall be considered to have been relied upon by the Bank and shall survive the execution and delivery of this Agreement and the Loan Documents regardless of any investigation made by the Bank or on its behalf.

7.5 Headings Descriptive. The headings of the several sections and subsections of this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement.

7.6 Governing Law. This Agreement and the rights and obligations of the parties hereunder shall be construed in accordance with and be governed by the law of the Commonwealth of Puerto Rico.

7.7 Termination; Release. After the termination of all obligations under the Loan Agreement, and when all Obligations have been paid in full, this Agreement shall terminate, and the Bank, at the request and expense of the Assignor, will execute and deliver to the Assignor the proper instruments including Uniform



DRA Ex. 215

Commercial Code termination statements acknowledging the termination of this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed and delivered by their duly authorized officers on August 28, 2013.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

Jorge A. Clivillés Díaz
~~Executive~~ Vice President
and Fiscal Agent

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

Javier E. Ramos Hernández
Executive Director of the Puerto Rico Highway and Transportation Authority

Affidavit No. 868

Recognized and subscribed before me by Javier E. Ramos Hernández as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, engineer and resident of Bayamón, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico on August 28, 2013.

MARGUILEAN RIVERA AMILL ABOGADA-NOTARIO

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Affidavit No. 870

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me.

In ~~San Juan~~, Puerto Rico, on August 28, 2013.

MARGUILEAN RIVERA AMILL ABOGADA-NOTARIO

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

29914 v.8

DRA Ex. 215