# SIXTH AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT

This SIXTH AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT dated as of January 19, 2016, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Assignor") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), both public corporations and instrumentalities of the government of the Commonwealth of Puerto Rico and parties to the Assignment and Security Agreement executed on August 28, 2013 (as modified, supplemented or amended from time to time, the "Assignment and Security Agreement").

**All terms not otherwise defined hereof shall have the meanings ascribed to them in the Assignment and Security Agreement.**

## WITNESSETH

**WHEREAS,** the parties executed the Assignment and Security Agreement granting a security interest and assigning to the Bank the Revenues allocated by Acts 30-2013 & 31-2013, to secure the repayment of the outstanding bonds of the Authority issued under the Bond Resolutions, the Loan and any other amounts owed by the Authority to the Bank.

**WHEREAS,** on March 31, 2015, the parties executed a First Amendment to Assignment and Security Agreement (the "First Amendment") authorizing to transfer to the Authority 50% of the Revenues, up to a maximum monthly amount of $10,000,000, for a period of 3 months as of the date of the first transfer of funds, with the purpose of providing financial assistance to the Authority to cover its operational costs and expenses. The First Amendment was executed pursuant to Resolution Number 10610 adopted on March 18, 2015 by the Board of Directors of the Bank and Resolution Number 2015-18 adopted on March 30, 2015 by the Board of Directors of the Authority.

**WHEREAS,** on April 21, 2015, the parties executed a Second Amendment to Assignment and Security Agreement to establish that the transfer of funds to the Authority would be provided solely for the months of March, April and May of 2015, as authorized pursuant to Resolution Number 10655 adopted on April 15, 2015 by the Board of Directors of the Bank.

**WHEREAS,** on June 16, 2015, the parties executed a Third Amendment to Assignment and Security Agreement to withhold from the transfer of funds to the Authority corresponding to the month of May 2015, the amounts necessary to reimburse the Bank for the payment of FTI Capital Advisors, LLC's ("FTI") fees and

32157

DRA Ex. 221

expenses, among other terms and conditions established in Resolution Number 10686 adopted on May 20, 2015 by the Board of Directors of the Bank.

**WHEREAS**, pursuant to Resolution Number 10729 adopted on June 17, 2015 by the Board of Directors of the Bank and Resolution Number 2015-29 adopted on July 9, 2015 by the Board of Directors of the Authority ("Resolution 2015-29"), a Fourth Amendment to Assignment and Security Agreement was executed by the parties on July 30, 2015 to: (i) continue transferring to the Authority 50% of the Revenues, up to a maximum monthly amount of $10,000,000, to cover its operational costs and expenses until the totality of the Authority's Obligations are transferred to the Puerto Rico Infrastructure Financing Authority pursuant to Act 1-2015, as amended, and after the corresponding deductions are made for the payment of the outstanding commitments against such Revenues; and (ii) to withhold the necessary amounts from the monthly transfers to the Authority in order to repay in a period of 3 months the outstanding debt of approximately $6,558,566.21 due to the Bank for services rendered by FTI and Álvarez & Marsal Business Consulting, LLC in benefit of the Authority.

**WHEREAS**, on November 10, 2015, the parties executed a Fifth Amendment to Assignment and Security Agreement in order for the Bank to withhold a quarterly amount of $750,000 from the up to $10,000,000 monthly transfers to the Authority, to be applied for the payment of a portion of outstanding loans of the Authority in lieu of the payment that was previously received from the Authority's Transportation Revenue Refunding Bonds, Series N, among other terms established in Resolution Number 1083 adopted on October 28, 2015 by the Board of Directors of the Bank.

**WHEREAS**, in accordance to Executive Order 2015-046 approved on November 30, 2015 ("EO 2015-046"), the Secretary of Treasury was ordered to, among other dispositions, withhold funds from the revenues assigned to various public corporations for the payment of certain obligations in order to provide the necessary resources for the payment of the public debt, while continuing to provide essential services to protect the health, security, education and public welfare of the people of Puerto Rico. In addition, EO 2015-46 established that said withholding of revenues shall not affect the funds necessary for the operations of these public corporations.

**WHEREAS**, in accordance with the foregoing, the Secretary of Treasury withheld to the Authority the revenues corresponding to November 2015, which were assigned pursuant Section 3060.11 of Act 1-2001, as amended, and Section 2301 of Act 22-2000, as amended, and will continue with such withholdings while EO 2015-046 remains in effect ("Clawback").

**WHEREAS**, along with a portion of the pledged toll revenues generated and collected by the Authority, certain amounts of the monthly transfers to the Authority now retained under the Clawback disposition are, at the same time, used to contribute

monthly to the set asides for the payment of the outstanding bonds of the Authority issued pursuant Resolution No. 68-18, adopted by the Authority on June 13, 1968, and Resolution No. 98-06, adopted by the Authority on February 26, 1998, as amended (the "Set Asides").

**WHEREAS**, as a result of the Clawback, the Authority will have to send the trustee the totality of the toll revenues since the pledged portion alone is insufficient to meet the full amount of the Set Asides. Consequently, the Authority does not have its two main revenue sources to finance its operating costs and expenses.

**WHEREAS**, the Revenues allocated by Acts 30-2013 & 31-2013 transferred by the Treasury Department to the Bank, from which the Bank transfers to the Authority 50% of the funds, up to a maximum amount of $10,000,000 per month, constitutes the Authority's third main source of income not pledged for the payment of the Bonds issued on 1968 and 1998.

**WHEREAS**, as informed by the Authority to the Board of Directors of the Bank, its operating costs and expenses to provide essential services are approximately $19,700,000 per month. In accordance with the premises established in EO 2015-046 as not to affect the provision of essential services or the funds necessary for the operations of the Authority, as well as to only withhold the resources needed for payment of the public debt, it has been identified as a possible alternative to cover the Authority's operational costs and expenses with the Revenues allocated by Acts 30-2013 & 31-2013, which are transferred by the Department of Treasury to the Bank in accordance with the Assignment and Security Agreement.

**WHEREAS**, the Authority requested the Bank to amend the Assignment and Security Agreement in order to rescind the monthly amount limit of $10,000,000 for the transfers of funds made from the Revenues.

**WHEREAS**, by means of Resolution Number 10888 adopted on December 16, 2015 ("Resolution 10888"), the Board of Directors of the Bank has authorized to continue transferring to the Authority fifty percent (50%) of the Revenues to cover the operational costs and expenses that ensure the provision of essential services as provided in EO 2015-046. Furthermore, Resolution 10888 also authorized to amend the Assignment and Security Agreement in order to rescind the maximum monthly amount cap of $10,000,000, until the Board of Directors of the Bank determines otherwise.

**WHEREAS**, in addition, Resolution Number 2015-29 authorized the Executive Director of the Authority to execute all documents necessary to carry out its purposes, including any amendments to the Assignment and Security Agreement in accordance

DRA Ex. 221

with any resolution duly adopted by the Board of Directors of the Bank and subject to the Bank's financial advice.

**WHEREAS,** in accordance with the foregoing, the Bank and the Authority agree to further amend the Assignment and Security Agreement to include the abovementioned terms and conditions.

**NOW, THEREFORE,** in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank and the Authority execute this Sixth Amendment to Assignment and Security Agreement (the "Sixth Amendment") and agree as follows:

1. The Bank agrees to continue transferring monthly to the Assignor fifty percent (50%) of the Revenues allocated and sent by the Department of Treasury, in order to cover the Assignor's operational costs and expenses that guarantee the provision of essential services in accordance with Executive Order 2015-046. Until the Board of Directors of the Bank determines otherwise, the parties agree that the previous monthly cap of Ten Million Dollars ($10,000,000) established pursuant the Assignment and Security Agreement, as amended, shall be rescinded. Henceforth, the management of the Bank shall evaluate monthly the funding needs of the Authority to cover its operational costs and expenses, and will determine the amount to be transferred for such purposes.

2. The parties specifically agree that all other terms and conditions established in Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement, as amended, not inconsistent with the foregoing, shall remain unaltered and in full force and effect.

3. This Sixth Amendment does not constitute a novation of the obligations set forth in the Assignment and Security Agreement, the Loan Agreement and the Loan Documents, and all provisions of the Assignment and Security Agreement, as amended, the Loan Agreement and the Loan Documents, not inconsistent with this Sixth Amendment, shall remain in full force and effect.

4. In the event that any provision of this Sixth Amendment is declared to be void or unenforceable, the remainder of this Sixth Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

**[SIGNATURES ON THE NEXT PAGE]**

**IN WITNESS WHEREOF**, the Bank and the Authority have caused this Sixth Amendment to Assignment and Security Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, as of the date first written above.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

Jorge A. Clivillés Díaz
Executive Vice President
and Director of Administration,
Operations and Comptrollership

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

Carmen A. Villar Prados
Executive Director

Affidavit No. 1,058

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Director of Administration, Operations and Comptrollership of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, and Carmen A. Villar Prados, as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, both personally known to me.

In San Juan, Puerto Rico, on January 19, 2016.

MARGUILEAN RIVERA AMILL
ABOGADA-NOTARIO

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

32157

DRA Ex. 221

Case:17-03283-LTS Doc#:18782-14 Filed:10/27/21 Entered:10/27/21 02:37:01 Desc: Exhibit DRA Exhibit 221 Page 6 of 11

ESTADO LIBRE ASOCIADO DE
PUERTO RICO
Banco Gubernamental de Fomento para Puerto Rico

**CERTIFICACIÓN**

**YO, OLGA L. ORTIZ GUADALUPE**, Secretaria Auxiliar de la Junta de Directores del Banco Gubernamental de Fomento para Puerto Rico, **CERTIFICO** que la **Resolución 10888** es una copia fiel y exacta de la original que se encuentra bajo mi custodia. La misma fue adoptada por la Junta de Directores del Banco Gubernamental de Fomento para Puerto Rico, en reunión debidamente convocada y celebrada el 16 de diciembre de 2015.

**CERTIFICO, ADEMÁS**, que dicha Resolución no ha sido derogada, revocada o anulada y se encuentra en toda su fuerza y vigor.

**RESOLUCIÓN 10888**

**AUTORIZA AL BANCO GUBERNAMENTAL DE FOMENTO PARA PUERTO RICO (BGF) A ENMENDAR EL *ASSIGNMENT AND SECURITY AGREEMENT* SUSCRITO ENTRE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN (ACT) Y EL BGF PARA ELIMINAR TEMPORALMENTE LA LIMITACIÓN DE LA CANTIDAD MÁXIMA DE $10,000,000 MENSUALES A SER TRANSFERIDA A LA ACT POR CONCEPTO DE FONDOS RECIBIDOS BAJO LAS LEYES 30-2013 Y 31-2013**

**POR CUANTO**, el 28 de agosto de 2013, la Autoridad de Carreteras y Transportación (ACT) y el Banco Gubernamental de Fomento para Puerto Rico (BGF) suscribieron un *Assignment and Security Agreement*, mediante el cual la ACT cedió los recaudos recibidos bajo las Leyes 30 y 31 de 2013 (las "Leyes 30 y 31") para el pago de las deudas que la ACT mantiene, en primer orden, con *RBC Municipal Products, LLP* bajo la emisión de los *Bond Anticipation Notes Serie 2013A* (*BANs 2013A*) y, luego, con el BGF;

**POR CUANTO**, mediante la Resolución 10610 de 18 de marzo de 2015 (la "Resolución 10610"), la Junta de Directores del BGF autorizó transferirle a la ACT el 50% de los fondos transferidos por el Departamento de Hacienda al BGF por concepto de las Leyes 30 y 31, hasta un máximo de $10,000,000 mensuales, para cubrir sus costos y gastos operacionales. Las transferencias del BGF a la ACT serían por un período de tres (3) meses contados a partir de la fecha en que se realizara la primera transferencia. El 31 de marzo de 2015, el BGF y la ACT suscribieron la primera enmienda al *Assignment and Security Agreement*;

BGF
BANCO GUBERNAMENTAL DE FOMENTO PARA PUERTO RICO

DRA Ex. 221

**POR CUANTO**, la Junta de Directores del BGF, mediante la Resolución 10655 de 15 de abril de 2015, enmendó la Resolución 10610 para, entre otros fines, disponer que las referidas transferencias del BGF a la ACT serían únicamente para los meses de marzo, abril y mayo de 2015. De conformidad con lo aprobado, el 21 de abril de 2015, el BGF y la ACT suscribieron la segunda enmienda al *Assignment and Security Agreement* para incorporar las disposiciones adoptadas bajo la Resolución 10655;

**POR CUANTO**, la Junta de Directores del BGF, mediante la Resolución 10686 de 20 de mayo de 2015; Resolución 10729 de 17 de junio de 2015 y la Resolución 10837 de 28 de octubre de 2015, realizó ciertas modificaciones al *Assignment and Security Agreement,* que incluyó: (1) la retención de las transferencias mensuales a la ACT de ciertos fondos por concepto de reembolso de servicios profesionales pagados por el BGF en beneficio de la ACT y (2) la retención de la cantidad mensual que dejó de recibir el BGF como resultado de la cancelación de las Notas Serie N de la ACT. El 16 de junio, 30 de julio y 10 de noviembre de 2015, el BGF y la ACT suscribieron la tercera, cuarta y quinta enmienda al *Assignment and Security Agreement*, respectivamente, para incorporar las disposiciones bajo las mencionadas Resoluciones;

**POR CUANTO**, el 30 de noviembre de 2015, el Gobernador del Estado Libre Asociado de Puerto Rico, Hon. Alejandro García Padilla, firmó la Orden Ejecutiva 2015-046 (la "Orden Ejecutiva"), que ordena al Secretario de Hacienda, entre otras cosas, a retener los ingresos asignados a la ACT para el pago de ciertas obligaciones en virtud de la Sección 3060.11 de la Ley 1-2011, según enmendada, y la Sección 2301 de la Ley 22-2000, según enmendada;

**POR CUANTO**, conforme a la Orden Ejecutiva, el Departamento de Hacienda retendrá solamente aquellos recursos que sean necesarios para el pago correspondiente de la deuda pública, mientras se continúa la prestación de los servicios esenciales para proteger la salud, la seguridad, la educación y el bienestar público de los habitantes de Puerto Rico. Establece, además, que dicha retención no afectará aquellos fondos necesarios para la operación de las corporaciones públicas;

**POR CUANTO**, en cumplimiento con las disposiciones de la Orden Ejecutiva, el Departamento de Hacienda retuvo a la ACT ingresos correspondientes a noviembre de 2015, asignados en virtud de la Sección 3060.11 de la Ley 1-2011, según enmendada, y la Sección 2301 de la Ley 22-2000, según enmendada, y continuará dichas retenciones mientras la Orden Ejecutiva esté en vigor (*Clawback*);

**POR CUANTO**, ciertas cantidades de las transferencias mensuales a la ACT por parte del Departamento de Hacienda, se utilizan para contribuir mensualmente a la reserva de pago (*Set Asides*) de la deuda de la ACT, emitida conforme a las Resoluciones de Emisiones de Bonos de 13 de junio de 1968 y de 26 de febrero de 1998 ("Bonos '68/'98").

**POR CUANTO**, además de las transferencias efectuadas por el Departamento de Hacienda a la ACT, ésta recibe directamente ingresos propios por concepto de peajes, los cuales también están pignorados para contribuir mensualmente a los *Set Asides* de los Bonos '68/'98;

01014

**POR CUANTO**, los ingresos propios de la ACT por concepto de peajes son insuficientes para satisfacer el monto total mensual de los *Set Asides* y, al no recibir las transferencias mensuales

del Departamento de Hacienda como resultado del *Clawback*, la ACT tiene que enviar al *Trustee* dichos ingresos de los peajes en su totalidad;

**POR CUANTO**, la ACT no cuenta con sus dos fuentes principales de ingresos para financiar los costos y gastos operacionales, al no tener disponibles los ingresos propios por concepto de los peajes ni las transferencias del Departamento de Hacienda por virtud de la Sección 3060.11 de la Ley 1-2011, según enmendada, y la Sección 2301 de la Ley 22-2000, según enmendada;

**POR CUANTO**, la tercera fuente principal de ingresos para la ACT, la cual no está pignorada a los tenedores de los Bonos '68/'98, son los fondos transferidos por el Departamento de Hacienda al BGF por concepto de las Leyes 30 y 31, de los cuales, subsecuentemente, 50% son transferidos a la ACT hasta un máximo de $10,000,000 mensuales, conforme al *Assignment and Security Agreement*, según enmendado;

**POR CUANTO**, la gerencia de la ACT le representó a la Junta de Directores del BGF que los costos y gastos operacionales de la ACT para proveer servicios esenciales son aproximadamente $19,700,000 mensuales. Bajo la premisa de la Orden Ejecutiva de no afectar la prestación de servicios esenciales ni aquellos fondos que sean necesarios para la operación de la ACT, así como retener solamente aquellos recursos que sean necesarios para el pago correspondiente de la deuda pública, se identificó como una alternativa cubrir los gastos operacionales esenciales de la ACT con los fondos que sean transferidos por el Departamento de Hacienda al BGF por concepto de las Leyes 30 y 31;

**POR CUANTO**, la gerencia de la ACT solicitó al BGF que se enmiende el *Assignment and Security Agreement* para dejar sin efecto la limitación de la cantidad máxima de $10,000,000 mensuales para las transferencias de los fondos provenientes de las Leyes 30 y 31;

**POR CUANTO**, en consideración al historial de las transferencias mensuales efectuadas por el Departamento de Hacienda al BGF por concepto de las Leyes 30 y 31 durante el año calendario 2015, y ante la ausencia de alguna iniciativa que pueda alterar dicho comportamiento en un futuro cercano, no se prevé que dejar sin efecto la limitación de la cantidad máxima de las transferencias mensuales afectará significativamente el flujo de fondos destinados al pago de deudas de la ACT con el BGF; y

**POR TANTO, RESUÉLVASE** por la Junta de Directores del Banco Gubernamental de Fomento para Puerto Rico (BGF), autorizar lo siguiente:

1. Continuar la transferencia a la Autoridad de Carreteras y Transportación de Puerto Rico del cincuenta por ciento (50%) de los fondos que transfiera el Departamento de Hacienda al BGF por concepto de las Leyes 30 y 31 de 2013 para que la ACT cubra los costos y gastos operacionales que garanticen la prestación de los servicios esenciales, conforme a lo dispuesto en la Orden Ejecutiva 2015-046;

OK OH

2. Dejar sin efecto la limitación de la cantidad máxima de $10,000,000 mensuales a ser transferidos por el BGF a la ACT por concepto de las Leyes 30 y 31 de 2013 hasta que la Junta de Directores del BGF determine lo contrario. A esos efectos, se autoriza suscribir la sexta enmienda al *Assignment and Security Agreement* para incluir los términos aquí establecidos.

3. Los demás términos y condiciones de la Resolución 10610 de 18 de marzo de 2015, según enmendada por las Resoluciones 10655 de 15 de abril de 2015, 10686 de 20 de mayo de 2015, 10729 del 17 de junio de 2015 y 10837 de 28 de octubre de 2015 que no estén en contravención con las disposiciones aquí autorizadas, permanecerán inalterados y en pleno vigor.

**RESUÉLVASE, ADEMÁS**, autorizar a la Presidenta del BGF o cualquier vicepresidente ejecutivo o un vicepresidente designado por éstos a comparecer y suscribir los documentos legales correspondientes para enmendar el *Assignment and Security Agreement* con el propósito de incluir las disposiciones establecidas en la presente Resolución y negociar e incluir aquellos términos y condiciones adicionales que considere necesarios para proteger los intereses del BGF.

**Y PARA QUE ASÍ CONSTE**, suscribo y estampo el sello corporativo del Banco Gubernamental de Fomento para Puerto Rico. En San Juan, Puerto Rico, hoy, miércoles, 30 de diciembre de 2015.

**OLGA L. ORTIZ GUADALUPE**
**SECRETARIA AUXILIAR**

**(SELLO)**

43628

DRA Ex. 221

ESTADO LIBRE ASOCIADO DE PUERTO RICO
DEPARTAMENTO DE TRANSPORTACION Y OBRAS PUBLICAS

**RESOLUCION NUM. 2015-29**

**AUTORIZAR A LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN A ENMENDAR UN *ASSIGNMENT AND SECURITY AGREEMENT* CON EL BANCO GUBERNAMENTAL DE FOMENTO PARA PUERTO RICO CON EL FIN DE PODER RECIBIR UNA TRANSFERENCIA DE UN 50% DE LOS INGRESOS QUE SE PERCIBEN AL AMPARO DE LA LEYES 30-2013 Y 31-2013, HASTA UNA MÁXIMO DE $10,000,000 MENSUALES, MIENTRAS LA DEUDA DE LA AUTORIDAD CON EL BANCO GUBERNAMENTAL DE FOMENTO NO SE TRANSFIERA FUERA DEL BANCO**

**POR CUANTO**: Mediante la Ley Núm. 41-2014 se creó una Junta de Directores en la Autoridad de Carreteras y Transportación (en adelante la "Autoridad") y se dispuso que los poderes y deberes de la Autoridad serán ejercidos por dicha Junta.

**POR CUANTO**: La Autoridad le solicitó al Banco Gubernamental de Fomento para Puerto Rico (en adelante el "BGF") asistencia financiera para poder enfrentar su problema de flujo de efectivo y así poder seguir sufragando sus operaciones;

**POR CUANTO**: El 28 de agosto de 2013 la Autoridad y el BGF firmaron un *Assignment and Security Agreement* (Contrato de Cesión y Prenda) en virtud del cual la ACT le cedió al BGF los recaudos que ésta se supone perciba bajo las Leyes 30-2013 y 31-2013 (Leyes 30 y 31) en pago de las deudas que la Autoridad tiene con *RBC Municipal Products, LLP* y el BGF;

**POR CUANTO**: Debido a la precaria situación del flujo de efectivo por la cual atraviesa la agencia, ésta necesita ingresar dinero para cubrir los costos y gastos operacionales de la misma;

**POR CUANTO**: La Junta de directores del BGF autorizó enmendar el Contrato de Cesión y Prenda para transferir a la Autoridad el 50% de los fondos que el Departamento de Hacienda le transfiera al BGF de los ingresos de las Leyes 30 y 31, hasta un máximo de $10,000,000 mensuales mientras la deuda de la Autoridad con BGF no se transfiera fuera del Banco.

**POR CUANTO**: Para llevar a cabo dichas transferencias los asesores legales internos de ambas entidades gubernamentales entienden que es necesario enmendar el Contrato de Cesión y Prenda;

**POR CUANTO**: Habiendo evaluado los documentos sometidos, la Junta de Directores acogió los planteamientos esbozados en los mismos;

**POR TANTO: RESUÉLVASE POR ESTA JUNTA DE DIRECTORES:**

1) Aprobar enmendar el Contrato de Cesión y Prenda, firmado por la Autoridad y el BGF el 28 de agosto de 2013, para transferir a la Autoridad el 50% de los fondos que el Departamento de Hacienda le transfiera al BGF de los ingresos de las Leyes 30 y 31, hasta un máximo de $10,000,000 mensuales mientras la deuda de la Autoridad con el BGF no se transfiera fuera del Banco.
2) Autorizar a la Directora Ejecutiva de la Autoridad, Carmen A. Villar Prados, a firmar todos los documentos que sean necesarios para llevar a cabo los propósitos de la presente Resolución, incluyendo cualquier enmienda a los mismos conforme Resolución de la Junta de Directores del BGF a esos efectos y sujeto a su asesoría financiera.
3) Esta resolución tendrá vigencia inmediata.

**NOSOTROS, HON. MIGUEL A. TORRES DÍAZ**, Presidente de la Junta de Directores, y **LCDA. YASMÍN M. SANTIAGO ZAYAS**, Secretaria de la Junta de Directores de la Autoridad de Carreteras y Transportación, **CERTIFICAMOS** que la que antecede es una Resolución fiel y exacta aprobada por la Junta de Directores en reunión ordinaria celebrada en San Juan, Puerto Rico, a 9 de julio de 2015.

**HON. MIGUEL A. TORRES DIAZ**
Presidente de la Junta
Secretario, Departamento de Transportación y Obras Públicas

**LCDA. YASMIN M. SANTIAGO ZAYAS**
Secretaria de la Corporación

## CERTIFICACIÓN

Yo, Yasmín M. Santiago Zayas, Secretaria de la Corporación, CERTIFICO que los datos precedentes son copia fiel y exacta de la **Resolución Núm. 2015-29** aprobada por la Junta de Directores de la Autoridad de Carreteras y Transportación el **9 de julio de 2015,** y que la misma, al día de hoy, está en toda fuerza y vigor y no ha sido derogada ni enmendada, ni en todo ni en parte.

En testimonio de lo cual, firmo y estampo el Sello Oficial de la Autoridad de Carreteras y Transportación, hoy **11 de enero de 2016.**

**Yasmín M. Santiago Zayas**
Secretaria de la Corporación