# Debtors' Ex. 40

**Debtors' Ex. 40**

# Puerto Rico Revolving Fund



# Table of Contents

Introduction ...................................................................................................................................................3
   FEMA Public Assistance (PA) Program ......................................................................................................3
   FEMA Hazard Mitigation Grant Program (HMGP) .....................................................................................4
Revolving Fund .............................................................................................................................................4
   Overview ...................................................................................................................................................4
   Administration and Oversight ..................................................................................................................4
   Eligibility Criteria .......................................................................................................................................5
   Application Process ..................................................................................................................................5
   Risk Mitigation and Controls ....................................................................................................................7
   Repayment and Recoupment ...................................................................................................................8
   Reporting and Compliance ..................................................................................................................... 10
   Closeout .................................................................................................................................................. 11
   COR3 Reimbursement Process .............................................................................................................. 11
   Program Guidance Approval .................................................................................................................. 12

# Introduction

Puerto Rico has experienced historic and unprecedented disasters since 2017. The impacts of Hurricane Irma, Hurricane Maria, the earthquake swarm that began in December 2019, and the COVID-19 public health emergency have resulted in damage to the infrastructure, economy, and community. To aid its recovery and reconstruction, the Government of Puerto Rico ("GPR") has been awarded Federal assistance including, but not limited to, an estimated:

- $45 billion in Federal Emergency Management Agency ("FEMA") Public Assistance ("PA") program grants,
- $3 billion in FEMA Hazard Mitigation Grant Program ("HMGP") grants,
- $19.9 billion in Department of Housing and Urban Development ("HUD") Community Development Block Grant-Disaster Recovery ("CDBG-DR") grants, and

The GPR will use these funds to finance projects that will aid Puerto Rico in recovering from the damages caused by these disasters.

## FEMA Public Assistance (PA) Program

FEMA's PA program is the largest grant program providing funds to assist communities responding to and recovering from major disasters or emergencies declared by the President of the United States. The program provides funding for emergency assistance to save lives and protect property. It assists with funding for permanently restoring community infrastructure affected by federally declared incidents like those that have devastated Puerto Rico.

FEMA processes PA grant funding according to the type of work the applicant undertakes. Eligible work must be required as a result of the declared incident, be located in the designated area, be the legal responsibility of the applicant, and be undertaken at a reasonable cost. Eligible work is classified into the following categories:

| Emergency Work ("EW") | Permanent Work ("PW") |
|---|---|
| Category A: Debris removal | Category C: Roads and bridges |
| Category B: Emergency protective measures | Category D: Water control facilities |
|  | Category E: Public buildings and contents |
|  | Category F: Public utilities |
|  | Category G: Parks, recreational, and other facilities |

After a federal disaster declaration, states, territories, or tribes (collectively, "Recipients"), brief eligible applicants ("Subrecipients"), which include states, territories, and local governments. FEMA obligates funds to successful applicants up to the federal share paid for by the PA program. For Puerto Rico's PW projects resulting from Hurricanes Irma and Maria, this federal share ("Federal Share") is not to exceed 90 percent of the project cost; the remaining 10 percent share is borne by the Subrecipient ("Cost Share"). For other disaster recovery projects, the Federal Share is not to exceed 75 percent, while the Subrecipient bears the remaining 25 percent.

FEMA obligates funding to the Recipient and the sub recipient submits a Request for Reimbursement ("RFR") in order to drawdown the disaster assistance funding from the recipient. The RFR requires project documentation to support the project costs including proof of payment.

Applicants submit Requests for Reimbursements to COR3 in order to drawdown funds in the performance of the scope of work defined in the project. In some cases, the applicant can request advance funding to drawdown capital and meet cash needs in order to perform the work defined in the project.

## FEMA Hazard Mitigation Grant Program (HMGP)

FEMA's Hazard Mitigation Grant Program provides funds for disaster planning and reconstruction to reduce the risk to people and property from future disasters. The key purpose of HMGP is to ensure that the opportunity to take critical mitigation measures to reduce the risk of loss of life and property from future disasters is not lost during the reconstruction process following a disaster. The program also provides long-term, cost-effective solutions to help avoid repetitive damage and devasting impacts.

Similar to the PA program, eligible applicants include states, territories, and tribes ("Recipients"). Subapplicants ("Subrecipients") are state-level agencies, tribes, local governments, or other eligible entities that request FEMA assistance through the Recipient.

HMGP funds are limited and not all projects may be selected. For Hazard Mitigation funds the Federal Share is not to exceed 75 percent, while the Subrecipient bears the remaining 25 percent. The HMGP also has a determined period of performance (POP), 36 months from the opening of the application period, where award activity can take place and costs can be incurred.

# Revolving Fund

## Overview

To address liquidity constraints, on November 18, 2020 the GPR established a Revolving Fund ("RF") through Joint Resolution 85-2020, to provide short-term financing ("Advances") to the central government agencies, public corporations, instrumentalities, and municipalities of the Commonwealth of Puerto Rico ("Applicants") that are unable to secure such funding from Federally funded requests for advance funding or Requests for Reimbursement. Specifically, the financing will be used to advance the Federal Share of funds reimbursed for permanent work projects under FEMA's Public Assistance program and HMGP projects for incurred damages as a result of Hurricane Maria (DR- 4339-PR), Hurricane Irma (DR- 4336-PR), or the earthquakes declared in January 2020 under DR- 4473-PR.

Advances will be replenished by FEMA-funded reimbursements, insurance proceeds, as well as other sources of funds, including other funding[1] covering the Applicant Cost Share component.

The RF will expire on June 30, 2025, at which point it will no longer accept additional Recovery Advances ("RAs").[2] At that point, the RF will begin to wind down operations until such time as all outstanding Advances are repaid to the Fund in accordance with the terms of the program.

## Administration and Oversight

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") was established for the purpose of acting as fiscal agent, financial advisor and reporting agent of the Government of Puerto Rico, its agencies,

---

[1] Other sources of funds may include, but are not limited to, the Subrecipient's own capital, GPR allocated budget, and federally funded programs such as CDBG-DR.
[2] Joint Resolution 85-2020 will need to be revised to extend the June 30, 2025 program expiration and reflect the proposed plan of adjustment.

Case:17-03283-LTS   Doc#:18797-11   Filed:10/27/21   Entered:10/27/21 03:04:49   Desc:
Debtors Ex. 40   Page 6 of 13

instrumentalities, subdivisions, public corporations and/or municipalities, and to assist such entities in confronting the grave fiscal and economic emergency that Puerto Rico is currently experiencing.

The Governor of Puerto Rico authorized and ordered the creation of the Central Office of Recovery, Reconstruction, and Resiliency ("COR3") in October 2017, after the passage of Hurricane Maria through Puerto Rico. The mission of COR3 is to manage all aspects of the recovery and ensure that the Government of Puerto Rico can implement reconstruction efforts with efficiency, effectiveness and transparency. As part of that mission, COR3 has developed tools to monitor projects as they progress through the FEMA PA and HMGP workflow from formulation to obligation, execution and closeout.

AAFAF will administer the RF to ensure it has the tools and expertise required for its success.

## Eligibility Criteria

The RF will be made available to GPR agencies and municipalities with PA projects ("Projects") that:

- are related to incurred damages as a result of Hurricane Maria (DR-4339-PR), Hurricane Irma (DR-4336-PR), or the earthquakes declared in January 2020 under DR-4473-PR
- are Permanent Work projects (FEMA categories C - G),
- are obligated and successfully completed prior phases of the National Delivery Model framework for PA,
- have Project Worksheet estimated costs greater or equal to large project thresholds, and
- Applicant shall certify that Nonfederal Cost-share requirements will be covered from other source of funds. Other sources of funds may include, but are not limited to, the Applicant's own capital, GPR allocated budget, and other federally funded programs such as CDBG-DR.

The RF will be made available to eligible HMGP projects ("Projects") that:

- are related to incurred damages as a result of Hurricane Maria (DR 4339), Hurricane Irma (DR 4336), the earthquakes declared in January 2020 under DR-4473-PR,
- are obligated,
- Applicant shall certify that Nonfederal Cost-share requirements will be covered from other source of funds. Other sources of funds may include, but are not limited to, the Applicant's own capital, GPR allocated budget, and other federally funded programs such as CDBG-DR.

## Application Process

*Submission*

Eligible Applicants will submit an application ("Application") for an Advance via COR3's Disaster Recovery Solution ("DRS"). The DRS is an enterprise data management system that provides comprehensive and centralized data management across the financial, operational, and program management aspects of the recovery efforts on the Commonwealth side. To date, DRS has facilitated the transparent disbursement of over $16 billion in funding to Recipients, Subrecipients, and agencies. The public website (https://www.recovery.pr/en/home.aspx), set up by COR3, documents the status of Puerto Rico's recovery efforts while promoting transparency and mitigating waste, fraud, and abuse.

As part of the Application, Applicants will be required to submit an application package that will consist of:

- a RF Application Form, which includes information about the Applicant, the Project, and a set timeframe for Applicants to submit RFRs to COR3;

- reason for the Recovery Advance;
- a Project Spend Plan ("Plan"), estimating in detail the Project's scope of work, timeline, and costs; and
- any additional advance funding or other funding the Applicant has received in connection with the project.
- a certification to COR3 and AAFAF documenting that the applicant has already submitted a request for advance funding or a Request for Reimbursement (which could enable the subrecipient to secure a substantially higher percentage of funding faster and directly from Federal Funds), or a detailed explanation why those alternate sources of funding are not feasible or available to the applicant.

*Evaluation*

After an Application package is submitted via DRS an acknowledgement will be provided to AAFAF and COR3 of such submission. COR3 will oversee the initial review, leveraging its expertise in evaluating the risks associated with PA and HMGP projects. This initial review will comprise two components:

1. The Eligibility and Completeness – An application reviewer will verify that the Applicant is an eligible FEMA Subrecipient and that the Application package is complete in accordance to the Application Checklist to be developed for such purposes.
2. Risk Assessment and Mitigation – A risk assessment specialist will assess the project using COR3's proven risk assessment model, which considers factors including:
   - subaward amount,
   - Subrecipient financial statements,
   - single audit results,
   - Plan completeness and viability, and
   - qualitative factors, such as Project complexity, duration, and Subrecipient responsiveness and accuracy.

As part of its review, COR3 will from time to time consult with other GPR agencies, including the Office of Management and Budget and the Department of Housing.

Upon completion of its review, COR3 will submit to AAFAF a letter with its determination for funding or denying the Advance. AAFAF will request additional information or clarification from COR3 as necessary and, in its oversight role, will certify that COR3's determination complies with applicable RF guidelines and requirements.

Advances will be prioritized based upon, but not limited to, the following factors:

- availability of RF funds;
- alignment of projects with GPR's recovery plan;
- public need, benefit, and exposure; and
- determinations made by the Reconstruction Council[3] based upon recommendations provided by COR3 and AAFAF.

---

[3] On January 8, 2021, Governor Pedro R. Pierluisi Urrutia issued Executive Order number OE-2021-011 creating the Reconstruction Council, tasked with identifying and establishing a priority list of critical reconstruction projects.

*Disbursement of Funds*

Upon completion of the review of the Application, AAFAF will notify the Applicant of the determination. Applicants who are awarded funds will be required to sign an Advance Agreement ("Agreement"), which outlines the terms and conditions of the Advance, the specific point of contact of the Applicant who will manage and report on the funding agreement, as well as provisions holding the Applicant liable for repayment of the funds.

The Agreement will also require the Applicant maintain the Advance in a segregated account allowing AAFAF the visibility access to the activities into such account for monitoring purposes and comply with the program's reporting requirements, which are outlined in additional detail below.

*Fees*

To preserve the RF as a use of GPR's balance sheet, any unbudgeted costs incurred by the GPR in the course of making and/or collecting the Advance will be passed through to the Applicant and added to the principal payment due to repay the Advance.

# Risk Mitigation and Controls

GPR acknowledges that the RF inherently carries risks: the full and timely recoupment of Advances is not certain. Nevertheless, the risks can be mitigated through strict controls and diligent oversight.

The following sections outline primary risks and corresponding measures that will be taken to mitigate them.

*Project Completeness and Compliance Risks*

The applicant is responsible to complete and meet the compliance requirements of the subgrant under the applicable federal program (FEMA Public Assistance, FEMA Hazard Mitigation, or HUD Community Development Block Grant – Disaster Recovery programs). The failure to meet program requirements or maintain project eligibility will also impact the eligibility of the project under the RF for the purposes of the Recovery Advances. Moreover, the applicant should address the risk of questioned cost or deobligation of the projects as a result of this type of failure.

In case the applicant received a written notification from COR3 a questioned cost or a deobligation of funds, the applicant will have thirty (30) days to present a remediation action plan to AAFAF and COR3 which may include:

1. The submission of additional eligible expenses of the project for reimbursement.
2. The submission of a new PW project that meet the eligibility criteria and request a transfer of the Recovery Advances from the old project. In such cases, the Applicant will be subject to the application, evaluation, and approval process of the RF Program Guide.
3. The acknowledge and acceptance of the Applicant to initiate a repayment of the Recovery Advances.

*FEMA Reimbursement Risk*

The RF Eligibility Criteria limit Advances to those Projects that have been obligated by FEMA and therefore are eligible to receive reimbursement through PA or HMGP. Even after a project is obligated, it can be de-obligated by FEMA for noncompliance with the PA or HMGP program terms and conditions, such as environmental or historic preservation; duplication of benefits, including insurance; or evidence of fraud.

To mitigate risk, RF will implement several measures, including those applied by states that have successfully administered similar Revolving Funds.

First, Advances will be capped at amounts that limit exposure to riskier Projects that are larger in size and/or duration.  Additionally, other limits may be implemented from time to time by GPR as it may determine necessary.  Also, applicants will be limited to one advance per project.

| Maximum Advance as a % of Estimated Project Cost | |
|---|---|
| **Estimated Project Cost** | **Maximum Advance Percentage** |
| **$123,101* - $499,999** | 40% |
| **$500,000 - $999,999** | 35% |
| **$1M - $4,999,999** | 30% |
| **$5M and over** | 25% |

* greater than or equal to the applicable large project thresholds

Second, COR3 will comprise a dedicated team of designees to institutionalize familiarity with FEMA personnel, PA and HMGP program operations, and related regulations, such as the Stafford Act, implementing regulations, and program policy.

Third, a COR3 employee will continuously monitor the Recovery Advance, including through FEMA's Grant Portal system and direct communication with the Applicant.  This will enable COR3 to review all communications related to the account and the affiliated Project, monitoring deadlines, timelines, and other program requirements.  The direct communication will also allow for monitoring the usage of funds, expenditures, and status of RFR status.

Fourth, COR3 will validate all of the components of the RFRs pursuant to COR3 procedures. This requirement will ensure that the RFRs are timely and completed to the highest standard of technical accuracy and completeness, reducing the risk of rejection or de-Obligation.

Fifth, COR3 will maintain a standard file of the federal reports and supporting documentation required prior to an RFR being disbursed. Additionally, COR3 shall promptly notify AAFAF and the Puerto Rico Department of the Treasury ("Treasury") once an RFR related to an RA is disbursed to an Applicant. Upon receipt of the funds from COR3, the Applicant shall promptly replenish the RF pursuant to the terms and conditions stipulated in the Agreement.

### Concentration Risk

The RF will implement maximum caps for Applicants to reduce the Fund's exposure to any single entity or project. Applicants will be limited to having one (1) Advance per Project Worksheet at any given time, allowing the Applicant to submit RA for two (2) or more PW's. Applicants will not be eligible for an additional Advance on this project(s) until the project RA is repaid.

## Repayment and Recoupment

### Repayment

The applicant must repay the Recovery Advance in accordance with criteria addressed in the Program Guidance and RF Agreement.  The applicant may repay their Recovery Advances at any time by a direct electronic transfer to the bank account determined by Treasury.  If such advances are repaid in full, the repayment terms below will not apply.

The RF repayment terms are as follows:

1. The term of the RA's shall be for 180 days from the date the applicant received the Recovery Advance. Applicants may request two (2) additional extensions of 90 days each and under no circumstances shall exceed from one (1) year from the date the applicant received the Recovery Advance. Applicants must repay the Recovery Advance after the expiration of the term of this agreement, which under no circumstances shall exceed one (1) year.

2. The Applicant shall submit the first RFR to COR3 within 60 days from the date of receipt of the Recovery Advance. This term shall not exceed 120 days.

3. After the first RFR, the applicant will continue to submit RFR's to COR3 every 60 days to ensure cashflow and replenishment of the Recovery Advance.

4. When the applicant received a reimbursement from COR3 or from insurance claims, the Applicant will have five (5) business days to repay in full the Recovery Advances remaining balance or the total amount received from the reimbursement.

5. In cases where a portion of the Advance remains unspent or unallocated upon completion of the applicable purpose, the applicant must return the unused funds to the Treasury account within ten (10) calendar days of submitting the notification but not later than the term of the advance.

6. The applicant should include with the repayment the full amount of interest earned in the applicant's bank account as stated in the RF agreement.

As described in the Reporting and Compliance Section in this guide, the applicant should track and report the repayments made to the RF in the monthly report submission to AAFAF and COR3.

## *Recoupment*

The applicant is subject to the recoupment of any outstanding Recovery Advances for one or more of the following reasons:

1. Failure to complete and/or non-compliance of the project;
2. Deobligation or question costs of the project within 30 days; and/or
3. Failure to repay the Recovery Advance within five (5) business days of the receipt of reimbursement from COR3 or from insurance claims

AAFAF and COR3 are responsible for assessing the circumstances and conditions prior to notifying the Applicant the intention to initiate a recoupment of Recovery Advances. Before the recoupment actions take place, the Applicant will have thirty (30) days after receiving written notification to present a remediation action plan to AAFAF and COR3 for the repayment of the Recovery Advances related with the PW project. In any case, if the remedial plan is not submitted by the Applicant neither approved by AAFAF and COR3, the Applicant will be subject to:

1. Immediate repayment for the full amount of the questioned cost or the total advances, as applicable, within the 30 days from the determination of AAFAF and COR3. The repayment should be a direct electronic transfer to the bank account determined by Treasury.

2. If the Applicant fails to repay, the following corrective measures shall be taken:
   a. AAFAF has five (5) business days to notify to the Applicant, COR3 and Treasury, the stop any Recovery Advances for new PW projects. This action will be in place until the outstanding balance is paid in full.

    b. If a central government agency is the Applicant, AAFAF will notify to the Treasury and the Puerto Rico Office of Management and Budget ("OMB") within five (5) business days the amounts owed to the RF by the Applicant and require Treasury and the OMB to withhold all future appropriations available to the applicant as an offset and to repay this obligation. Treasury and OMB have ten (10) business days to respond to AAFAF and the Applicant with their final determination of the appropriation to offset or withhold

    c. If a municipality is the Applicant, AAFAF will notify the Municipal Revenue Collection Center (CRIM, in its Spanish acronym) and Treasury within five (5) business days of the amounts of the Recovery Advance owed by the municipality and require the withholding of any amount from the unencumbered balance of the property taxes, undisbursed portions of any remaining exoneration fund transfers due to the municipality, and remaining (unencumbered) revenues that the municipalities have the right to receive pursuant to Act 80-1991, as amended, known as the "Municipal Revenue Collection Center Act." CRIM must remit to the Treasury, within the seven (7) days following the written notice, any amount withholds to the municipality for these purposes. If necessary, a first priority, preferential lien over said unencumbered balance shall automatically and permanently be created in favor of the Treasury for the collection of Advances owed, without the need for any other act, possession or control thereof.

    d. If a public corporation or other instrumentality is the Applicant, AAFAF will notify Applicant, COR3 and Treasury within five (5) business days the amounts owed to the RF by the Applicant to require the Treasury to withhold and/or offset (i) any amounts appropriated by Central Government agencies and instrumentalities to the public corporation, and (ii) any amounts owed by the Commonwealth to the Applicant, followed by any other means necessary to recover the funds. Treasury and OMB have ten (10) business days to respond to AAFAF and the Applicant with their final determination of the appropriation to offset or withhold

3. If there is an outstanding balance at the end of the fiscal year for which a process to recoup the Recovery Advance was initiated, AAFAF will notify the Applicant, OMB, and Hacienda the amounts owed by the Applicant to being included and appropriate as a statutory debt in the following Applicant's fiscal year budget.

4. Also, AAFAF may set off against any debt or account it owns Applicant.

## Reporting and Compliance

Under the RF terms and conditions, Applicants will be required to submit a report to the AAFAF and COR3 on the 25th of each month for the prior month's activity related to all RF Advances received by the Applicant. These reports will comprise an update of the actual expenses incurred on the Project, Request for Reimbursements submission dates, amounts and disbursements received and a status of the submitted Spend Plan. These reports will be due every month until final repayment of the Advance is completed.

With each monthly progress report, the Applicant must certify that the Recovery Advance funding was used for the purposes outlined in the original application and also confirm that no additional funds have been borrowed in connection with the project. Applicants will be required to retain evidence of Project expenses for a period of five (5) years. Furthermore, by accepting an RA, the Applicant will be required to cooperate in any audit proceedings requested by the GPR or other governing entities responsible for the compliant use of funds.

## Closeout

Upon completion of the repayment of the total amount of the Recovery Advance, applicants will submit a certification that repayment was completed. Subsequently, AAFAF, Treasury and COR3 will confirm that repayment was completed and certify completion and document the closure of the Recovery Advance.

## COR3 Reimbursement Process

Applicants have multiple options to gain access to capital with approved PA or HMGP projects in addition to the Recovery Advance. These include (1) Request for Advance or (2) Request for Reimbursement.

The Government of Puerto Rico's (Government) Central Office for Recovery, Reconstruction, and Resiliency (COR3) Disaster Recovery Federal Funds Management Guide (DRFFMG), Chapter 7 – Payment and Disbursements, addresses COR3's governing policies, procedures, and related responsibilities for the disbursement of FEMA Public Assistance (PA) program and the Hazard Mitigation Grant Program (HMGP) disaster recovery federal funds to Subrecipients.

The Request for Reimbursement (RFR) and Request for Advance (RFA) Policies and Processes apply to FEMA PA and HMGP Subrecipient RFR/RFAs, which starts with the Subrecipient's submission of the RFR/RFA and ends with COR3's recommendation to fully or partially pay the RFR/RFA. Results are used to assess eligibility of project costs and to determine the amount of Federal funds disbursed for a Subrecipient's FEMA and Government approved Project Worksheet (PW). Applicants should consider Recovery Advances when the following options are not available:

**Request for Reimbursement**[4]

RFRs are the traditional process in drawing down funding from the recipient. Through the RFR process, COR3 provides payment for documented and compliant costs incurred by the Subrecipient. COR3 performs a Completeness Evaluation and a Compliance Assessment prior to payment and no retainage is held. The analysts assigned to the RFR will work with the Subrecipient to ensure all required documentation is submitted and all compliant costs are reimbursed. For the first RFR of a project, Subrecipients must consult with COR3 on options and requirements to draw down funding as a sub recipient may be able to drawdown a substantially higher percentage of the Federal share in the initial drawdown than the funding that would be available through a Recovery Advance. It is important to emphasize that all Subrecipients must first try and secure funding from the RFR approach because Subrecipients may be able to drawdown a higher percentage of the Federal share in the initial drawdown, with funds provided directly by the Federal Government, than the funding that would be available through a Recovery Advance.

**Request for Advance**[5]

The RFA process consists of funds being disbursed to Subrecipients prior to the submission of expense documentation. Advance payments are limited to the minimum amounts needed and are timed to be in accordance with the Subrecipient's actual, immediate cash requirements to carry out the purpose of the obligated PW. The timing and amount of advance payments are to be as close as is administratively feasible to the Subrecipient's actual disbursements (accounts payable cycle of the entity). The RFA is only considered with documentation to support the immediate need and only in the amount necessary to accomplish the requested task; required documents include procurement documentation, executed contract, and timeline for expected immediate cash needs. A Completeness and Compliance Review of the expenses is performed later once the Subrecipient submits the RFR and supporting documentation.

---

[4] https://recovery.pr/documents/CH7%20Payment%20and%20Cash%20Management%20FINAL%20V1.1.pdf
[5] Id.

## Program Guidance Approval

Program Guidelines development and approval have been made in coordination between AAFAF, COR3, Treasury and FOMB.